**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------X
                                :

*In re*                          :

Nortel Networks Inc., *et al.*, [1]     :

            Debtors.       :

                                :
-------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**RE: D.I. 3832**

## ORDER AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF DEBTORS' MULTI-SERVICE SWITCH (FORMERLY KNOWN AS 'PASSPORT') BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS

Upon the motion (the "Motion")[2] of Nortel Networks Inc. ("NNI") and its affiliated

debtors, as debtors and debtors in possession in the above-captioned Chapter 11 Cases

(collectively, the "Debtors"), for entry of orders under Bankruptcy Code sections 105, 107(b)(1),

363 and 365, Bankruptcy Rules 2002, 6004, 6006, 9014 and 9018 and Local Rules 6004-1 and

9018-1 (I)(A) authorizing Debtors' entry into the Stalking Horse Agreement, (B) authorizing and

approving the Bidding Procedures and Bid Protections, (C) approving the Notice Procedures and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the Sale Agreement (as defined herein).

the Assumption and Assignment Procedures, (D) approving a Side Agreement, (E) authorizing the filing of certain documents under seal, and (F) setting a date for the sale hearing, and (II) authorizing and approving (A) the sale of certain assets of Debtors' Multi-Service Switch business (the "MSS Business") free and clear of all liens, claims and encumbrances and (B) the assumption and assignment of certain executory contracts [D.I. 3832]; and the Court having entered an order approving, among other things, the Bidding Procedures (the "Bidding Procedures Order") based upon the evidence presented at the bidding procedures hearing held on September 1, 2010 (the "Bidding Procedures Hearing"); and the Auction (as defined below) having been held in accordance with the Bidding Procedures Order; and at the conclusion of said Auction Telefonaktiebolaget LM Ericsson (publ) (the "Purchaser") was chosen as the Successful Bidder in accordance with the Bidding Procedures; and the Court having conducted a hearing on the Motion on September 30, 2010 (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the asset sale agreement attached hereto as Exhibit A (the "Sale Agreement"), by and among NNI, Nortel Networks Limited ("NNL"), Nortel Networks Corporation ("NNC") and certain other entities identified therein as sellers (collectively, the "Sellers"), and the Purchaser and the transactions contemplated thereby (the "Transactions"); and the Court having reviewed and considered the Motion, and the arguments of counsel made, and the evidence adduced, at the Bidding Procedures Hearing and the Sale Hearing; and upon the record of the Bidding Procedures Hearing and the Sale Hearing and these chapter 11 cases, and after due deliberation thereon, and good cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

---

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

2

A.       This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.       Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.       The statutory predicates for the relief sought in the Motion are sections 105, 107(b)(1), 363 and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9014 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 6004-1 and 9018-1.

D.       Notice of the Motion and the Sale Hearing has been provided (a) to (i) all entities reasonably known to have expressed an interest in a transaction with respect to the Assets (as defined in the Sale Agreement) during the past nine (9) months, (ii) all entities reasonably known to have asserted any claim, lien, encumbrance or interest in the Assets, (iii) the attorneys general for all states in which Purchased Assets (as defined below) owned by the Debtors are located, all federal and state taxing authorities, the Securities and Exchange Commission, the Environmental Protection Agency, state environmental protection agencies, the Internal Revenue Service, and the Department of Labor and similar state labor or employment agencies, (iv) all parties entitled to notice pursuant to Local Rule 2002-1(b), (v) all counterparties to the Assumed and Assigned Contracts, (vi) all known creditors of the Debtors, (vii) counsel to the Committee, and (viii) counsel to the Bondholder Group; and (b) through publication of the Publication Notice, all in accordance with and as provided by the Bidding Procedures Order.

E.       As evidenced by affidavits of publication filed with the Court D.I.'s 3932, 3931 and 3930, notice of the Sale Hearing was published in The Wall Street Journal (National Edition), The Globe and Mail (National Edition), and The Financial Times (International

Edition) on September 8, 2010.

F.      Based upon the affidavits of service and publication filed with the Court D.I.'s

3856, 3930, 3931, 3932 and 3950: (a) notice of the Motion and the Sale Hearing was adequate

and sufficient under the circumstances of these chapter 11 cases and these proceedings and

complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy

Rules and the Bidding Procedures Order, and (b) a reasonable opportunity to object and be heard

with respect to the Motion and the relief requested therein was afforded to all interested persons

and entities.

G.      The Assets sought to be transferred and/or assigned by the Debtors to the

Purchaser pursuant to the Sale Agreement (the "Purchased Assets") are property of the Debtors'

estates and title thereto is vested in the Debtors' estates.

H.      The Debtors and their professionals marketed the Purchased Assets and conducted

the marketing and sale process as set forth in and in accordance with the Motion.  Based upon

the record of these proceedings, all creditors and other parties in interest and all prospective

purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

I.      On August 26, 2010, NNI, NNL and NNC and PSP Holding LLC (the "Stalking

Horse Purchaser") entered into the Stalking Horse Agreement, subject to higher and better offers.

Simultaneously with the execution of the Stalking Horse Agreement, the EMEA Sellers, the

Joint Administrators, the Joint Israeli Administrators and the Stalking Horse Purchaser entered

into a separate agreement (the "EMEA Asset Sale Agreement") providing for the sale to the

Stalking Horse Purchaser of the EMEA Assets (as defined in the EMEA Asset Sale Agreement).

J.      The Bidding Procedures were substantively and procedurally fair to all parties and

all potential bidders.  The Debtors conducted the sale process (including the Auction) without

4

collusion and in accordance with the Bidding Procedures.

K.        After the conclusion of the auction held on September 24, 2010 (the "Auction"),
the Debtors determined in a valid and sound exercise of their business judgment that the highest
and best Qualified Bid (as defined in the Bidding Procedures Order) was that of the Purchaser.

L.        Subject to the entry of this Order, each Debtor that is a Seller (i) has full power
and authority to execute the Sale Agreement, the Ancillary Agreements (as defined in the Sale
Agreement) to which it is a party and all other documents contemplated thereby, (ii) has all of
the power and authority necessary to consummate the Transactions contemplated by the Sale
Agreement and (iii) has taken all company action necessary to authorize and approve the Sale
Agreement, the Ancillary Agreements, the sale of the Purchased Assets (the "Sale") and the
consummation by the Debtors of the Transactions.  No consents or approvals, other than those
expressly provided for in the Sale Agreement or this Order, are required for the Debtors to close
the Sale and consummate the Transactions.

M.        The Sale Agreement and the Transactions were negotiated and have been and are
undertaken by the Debtors and the Purchaser at arm's length without collusion or fraud, and in
good faith within the meaning of Bankruptcy Code section 363(m).  The Purchaser is purchasing
the Purchased Assets in good faith and has otherwise proceeded in good faith in connection with
these proceedings in that *inter alia*: (i) the Debtors were free to deal with any other party in
connection with the sale of the Purchased Assets; (ii) the Purchaser complied with the provisions
in the Bidding Procedures Order; (iii) the Purchaser agreed to subject its bid to the competitive
bidding process set forth in the Bidding Procedures Order; and (iv) no common identity of
directors or controlling stockholders exists between the Purchaser and any of the Debtors.  As a
result of the foregoing, the Debtors and the Purchaser are entitled to the protections of section

5

363(m) of the Bankruptcy Code.

N.    The total consideration provided by the Purchaser for the Assets and the EMEA

Assets is the highest and best offer received by the Sellers, and the Purchase Price constitutes (a)

reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer

Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably

equivalent value, fair consideration and fair value under any other applicable laws of the United

States, any state, territory or possession, or the District of Columbia, and may not be avoided

under section 363(n) of the Bankruptcy Code.  The Court's approval of the Motion, the Sale

Agreement, and the Ancillary Agreements is in the best interests of the Debtors, their estates,

their creditors and all other parties in interest.

O.    The transfer of the Debtors' right, title and interest in the Purchased Assets to the

Purchaser will be a legal, valid and effective transfer of the Purchased Assets, and will vest the

Purchaser with all of the Debtors' right, title and interest of, in and to the Purchased Assets, free

and clear of (i) all Claims and Interests (each as defined herein) of any kind or nature whatsoever

(other than the Assumed Liabilities and the Permitted Encumbrances (each as defined in the Sale

Agreement)), and (ii) all Excluded Liabilities (as defined in the Sale Agreement), claims as

defined in 11 U.S.C. § 101(5), rights or causes of action (whether in law or in equity),

obligations, demands, restrictions, interests and matters of any kind or nature whatsoever,

whether arising prior to or subsequent to the commencement of these cases, and whether

imposed by agreement, understanding, law, equity or otherwise (collectively, the "Claims"),

other than Assumed Liabilities and Permitted Encumbrances.

P.    The Purchaser would not have entered into the Sale Agreement and would not

consummate the Transactions if the sale of the Purchased Assets to the Purchaser was not free

and clear of all liens, claims and interests pursuant to Bankruptcy Code section 363(f), or if the Purchaser would, or in the future could, be liable for any of such liens, claims and interests. A sale of the Purchased Assets other than one free and clear of all Claims and Interests would yield substantially less value for the Debtors' estates, with less certainty, than the Sale. Therefore, the Sale as contemplated by the Sale Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

Q.      The Debtors may sell the Purchased Assets free and clear of all Claims and Interests, because, with respect to each creditor asserting a Claim or Interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of Claims and Interests who did not object or who withdrew their objections to the Sale or the Motion are deemed to have consented to the Motion and Sale pursuant to Bankruptcy Code § 363(f)(2). Those holders of Claims or Interests who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f).

R.      Neither the Debtors nor the Purchaser engaged in any conduct that would cause or permit the Sale Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

S.      The Sale Agreement and Ancillary Agreements were not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Debtors nor the Purchaser has entered into the Sale Agreement or the Ancillary Agreements or is consummating the Sale with any fraudulent or otherwise improper purpose.

T.      The Purchaser is not holding itself out to the public as a continuation of the

7

Debtors and is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between the Purchaser and any of the Debtors. Pursuant to the Sale Agreement, the Purchaser is not purchasing all of the Debtors' assets in that the Purchaser is not purchasing any of the Excluded Assets (as defined in the Sale Agreement), and the Purchaser is not holding itself out to the public as a continuation of the Debtors. The conveyance of the Purchased Assets pursuant to the Transactions does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtors and/or Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates. Upon the Closing (as defined in the Sale Agreement), the Purchaser shall be deemed to have assumed only the Assumed Liabilities. Except for the Assumed Liabilities, the Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing. The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Purchased Assets. The Court finds that the Purchaser would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

U.      The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed and Assigned Contracts to the Purchaser (or a Designated Purchaser (as defined in the Sale Agreement)) in connection with the consummation of the Sale, and the assumption, assignment and sale of the Assumed and Assigned Contracts to

8

the Purchaser is in the best interests of the Debtors, their estates, their creditors, and all parties in interest. The Assumed and Assigned Contracts being assigned to the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser, and accordingly, such assumption, assignment, and sale of the Assumed and Assigned Contracts are reasonable and enhance the value of the Debtors' estates. The Cure Costs required to be paid pursuant to Bankruptcy Code section 365(b) to the Counterparty to the applicable Assumed and Assigned Contract, or as mutually agreed, or as ordered to be paid by this Court pursuant to a final order, are deemed to be the entire cure obligation due and owing under the Assumed and Assigned Contracts under Bankruptcy Code section 365 and no further amounts will be required to be paid.

V.      Each and every provision of the Assumed and Assigned Contracts or applicable non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assumed and Assigned Contract have been satisfied or are otherwise unenforceable under Bankruptcy Code section 365.

W.      Upon the payment of the Cure Cost, if any, to the relevant Counterparty, there are no outstanding defaults of the Debtors and their estates under the Assumed and Assigned Contracts.

X.      The Purchaser has demonstrated adequate assurance of future performance of all Assumed and Assigned Contracts within the meaning of Bankruptcy Code section 365.

Y.      Upon the assignment and Sale to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

Z.      Entry into the Sale Agreement, the Ancillary Agreements and consummation of

9

the Transactions constitute the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest. The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale of the Purchased Assets to the Purchaser. Additionally, (i) the Sale Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Sale Agreement and the closing thereof will present the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets; (iii) there is risk of deterioration of the value of the Purchased Assets if the Sale is not consummated promptly; and (iv) the Sale Agreement and the closing thereof will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative.

AA. The sale and assignment of the Purchased Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan for the Debtors. The Sale does not constitute a *sub rosa* chapter 11 plan.

BB. Time is of the essence in consummating the Sale. In order to maximize the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Sale Agreement. Accordingly, there is a cause to lift the stay contemplated by the Bankruptcy Rules 6004(h) and 6006(d).

CC. The Schedules to the Sale Agreement contain substantial sensitive commercial information, which would be damaging to the Debtors and the Purchaser if it were to be disclosed to their competitors. Filing the Schedules to the Sale Agreement under seal is in the best interests of the Debtors, their estates, creditors and other parties-in-interest; and it is therefore:

10

**ORDERED ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Motion is **GRANTED**.

2.      All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, settled or otherwise dealt with as expressly provided herein or on the record at the Sale Hearing, are hereby overruled on the merits, with prejudice.

3.      Pursuant to Bankruptcy Code sections 105, 363 and 365, and subject to the approval of the Sale by the Ontario Superior Court of Justice in the Canadian Proceedings with respect to the Canadian Debtors, the Sale Agreement, the Ancillary Agreements, the Sale of the Purchased Assets, and consummation of the Transactions are hereby approved and the Debtors are authorized to comply with the Sale Agreement and the Ancillary Agreements; and the Alternate Bid submitted by the Alternate Bidder with a cash purchase price of $60,000,000 pursuant to the terms submitted therewith, is hereby approved and authorized as an Alternate Bid and shall remain open as an Alternate Bid pursuant to the terms of the Bidding Procedures Order and the bid terms submitted at the auction.

4.      Pursuant to section 365 of the Bankruptcy Code, notwithstanding any provision of any Assumed and Assigned Contracts or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contracts, the Debtors are authorized to assume and to assign the Assumed and Assigned Contracts to the Purchaser, which assignment shall take place on and be effective as of the Closing, or as otherwise provided by order of this Court.

5.      In the event that the Sale contemplated by the Sale Agreement cannot be consummated, the Alternate Bid shall be and is hereby approved, the execution of the asset sale agreement pursuant to the Alternate Bid by the Debtors is approved and the Debtors are

11

authorized to take such additional steps and execute such additional documents, including without limitation the ancillary agreements contemplated by the Alternate Bid, as may be necessary or desirable for the completion of the Sale and for the conveyance of the Debtors' right, title and interest in and to the Assets to the Alternate Bidder.

6.      The Debtors' assumption of the Assumed and Assigned Contracts is subject to the consummation of the Sale of the Assets to the Purchaser. To the extent that an objection by a Counterparty to any Assumed and Assigned Contract, including an objection related to the applicable Cure Amount, is not resolved prior to the Closing Date, subject to the terms and conditions of the Sale Agreement and without limiting the Debtors' obligations thereunder, the Debtors, in consultation with the Purchaser, may elect to (i) not assume such Assumed and Assigned Contract or (ii) postpone the assumption of such Assumed and Assigned Contract until the resolution of such objection. Any Cure Costs outstanding on the Closing Date shall be paid as provided in the Sale Agreement to the appropriate Counterparty as a condition subsequent to such assumption and/or assumption and assignment of the relevant Assumed and Assigned Contract.

7.      Upon the Closing, (a) the Debtors are hereby authorized and directed to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of the Debtors' right, title and interest in the Purchased Assets to the Purchaser free and clear of any and all interests, including (without limitation) all liens, including any lien (statutory or otherwise), mortgage, pledge, security interest, charge, right of first refusal, hypothecation, encumbrance on real property, easement, encroachment, right-of-way, restrictive covenant on real property, real property license, lease or conditional sale arrangement (collectively, including "Liens" as defined in the Sale Agreement, the "Liens") and debts,

12

liabilities and obligations, whether accrued or fixed, direct or indirect, liquidated or unliquidated, absolute or contingent, matured or unmatured or determined or undeterminable, known or unknown, including those arising under any Law or Action and those arising under any Contract or otherwise, including any Tax liability (other than Assumed Liabilities and the Permitted Encumbrances) (collectively, the "Liabilities" and together with the Liens, the "Interests"), with such Interests to attach to the sale proceeds in the same validity, extent and priority as immediately prior to the sale transactions, subject to any rights, claims and defenses of the Debtors and other parties in interest, and (b) except as otherwise expressly provided in the Sale Agreement, all such Interests (other than Assumed Liabilities and the Permitted Encumbrances) shall be and hereby are released, terminated and discharged as to the Purchaser and the Purchased Assets.

8.    The transfer of the Debtors' right, title and interest in the Purchased Assets to the Purchaser pursuant to the Sale Agreement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Debtors' right, title and interest in the Purchased Assets, and vests with or will vest in the Purchaser all right, title and interest of the Debtors in the Purchased Assets, free and clear of all Claims and Interests of any kind or nature whatsoever (other than the Permitted Encumbrances and the Assumed Liabilities), with any Interests attaching to the sale proceeds in the same validity, extent and priority as immediately prior to the transaction, subject to any rights, claims and defenses of the Debtors and other parties in interest.

9.    Upon the Closing, and except as otherwise expressly provided in the Sale Agreement, the Purchaser shall not be liable for any claims against, and Liabilities and obligations of, the Debtors or any of the Debtors' predecessors or affiliates. Without limiting the generality of the foregoing, and except as otherwise provided in the Sale Agreement, (a) the

13

Purchaser shall have no liability or obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans) or make any other payment to employees of the Debtors, (b) the Purchaser shall have no liability or obligation in respect of any employee pension plan, employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which any Debtors are a party (including, without limitation, liabilities or obligations arising from or related to the rejection or other termination of any such plan, program agreement or benefit), (c) the Purchaser shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, and (d) all parties to any such employee benefit, agreement, plan or program are enjoined from asserting against the Purchaser any Claims arising from or relating to such employee benefit, agreement, plan or program.

10.     As of the Closing, subject to the provisions of this Order, the Purchaser shall succeed to the entirety of Debtors' rights and obligations in the Assumed and Assigned Contracts first arising and attributable to the time period occurring on or after the Closing and shall have all rights thereunder.

11.     Upon Closing, (i) all defaults (monetary and non-monetary) under the Assumed and Assigned Contracts through the Closing shall be deemed cured and satisfied through the payment of the Cure Costs; (ii) other than Cure Costs payable in accordance with the Sale Agreement, no other amounts will be owed by the Debtors, their estates or the Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period before Closing with respect to the Assumed and Assigned Contracts, (iii) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtors, their estates, or

14

the Purchaser that any additional amounts are due or defaults exist under the Assumed and Assigned Contracts that arose or accrued, or relate to or are attributable to the period before the Closing.

12.     Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in the Assumed and Assigned Contracts, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contracts, the Debtors may assign the Assumed and Assigned Contracts to the Purchaser. Upon assumption of the Assumed and Assigned Contracts by the Debtors and assignment to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

13.     The Transactions have been undertaken by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Purchased Assets as that term is used in Bankruptcy Code section 363(m). The Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

14.     Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors and the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to: (i) consummate the Sale of the Purchased Assets to the Purchaser and the Closing of the Sale in accordance with the Motion, the Sale Agreement and this Order; (ii) assume and assign the Assumed and Assigned Contracts; (iii) enter into a Sublease (as defined in the Sale Agreement) of the Subleased Real Estate Leases (as defined in the Sale Agreement) to the extent permitted by, and in accordance with, the terms of the related Subleased Real Estate Leases and applicable Law (as defined in the Sale Agreement); and (iv) perform, consummate, implement and close fully the Sale Agreement together with all additional instruments and documents that may be

15

reasonably necessary or desirable to implement the Sale Agreement. The Debtors are hereby authorized to perform each of their covenants and undertakings as provided in the Sale Agreement and the Ancillary Agreements prior to or after Closing without further order of the Court.

15.    For the avoidance of doubt, the transactions authorized herein shall be of full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

16.    Subject to the terms of the Sale Agreement, the Purchaser is hereby authorized in connection with the consummation of the Sale to allocate the Purchased Assets, including the Assumed and Assigned Contracts, among its affiliates, designees, assignees and/or successors, including any Designated Purchaser, in a manner as it in its sole discretion deems appropriate and to assign, license, sublicense, transfer or otherwise dispose of any of the Purchased Assets, including the Assumed and Assigned Contracts, to its affiliates, designees, assignees and/or successors, including any Designed Purchaser, with all of the rights and protections accorded to the Purchaser under this Order and the Sale Agreement being afforded to such affiliate, designee, assignee and/or successor in such capacity, including any Designed Purchaser, and the Debtors shall use commercially reasonable efforts to cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing.

17.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions.  Except as provided in the Sale Agreement, no brokers were involved in consummation of the Sale or the Transactions, and no brokers' commissions are due to any Person in connection with the Sale or the Transactions.

18.    The consideration provided by the Purchaser for the Assets under the Sale

Agreement and the EMEA Assets under the EMEA Asset Sale Agreement shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar state laws.

19.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Debtors' right, title and interest in the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Purchaser on the Closing Date pursuant to the terms of the Sale Agreement, free and clear of all Claims and Interests (other than Assumed Liabilities and Permitted Encumbrances).

20.     Except as otherwise provided in the Sale Agreement and to the extent permitted by applicable law, any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier or employee of the Debtors shall be transferred to the Purchaser free and clear of all Liens, Claims and Interests (other than Assumed Liabilities and the Permitted Encumbrances) and shall be delivered at the time of Closing to the Purchaser.

21.     Upon the Closing, all creditors, employees and equity holders of the Debtors are permanently and forever barred, restrained and enjoined from asserting any Claims or Interests or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against the Purchaser or the Purchased Assets on account of any of the Claims, Interests, Excluded Liabilities or Excluded Assets (other than Assumed Liabilities and

17

Permitted Encumbrances). Except with respect to enforcing the terms of the Sale Agreement and this Order, absent a stay pending appeal, no person shall take any action to prevent, enjoin or otherwise interfere with the consummation of the Sale and the Transactions to the maximum extent permitted by law.

22.    The Transactions do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtor or the Debtors' estates. Upon the Closing, the Purchaser shall be deemed to have assumed only the Assumed Liabilities. Except for the Assumed Liabilities and Permitted Encumbrances, the Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the time of Closing. The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Assets purchased.

23.    This Order (a) is and shall be effective as a determination that other than Permitted Encumbrances and Assumed Liabilities, all Claims and Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) is and shall be binding upon and shall authorize all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be

18

required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to the Purchaser. All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Interests against the Purchased Assets from their records, official and otherwise.

24.     If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or other Interests in, the Purchased Assets shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens or other Interests which the person or entity has or may assert with respect to the Purchased Assets, the Debtors and the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

25.     All counterparties to the Assumed and Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Purchaser, and shall not charge the Debtors or the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transactions.

26.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Transactions contemplated by the Sale Agreement.

27.     No governmental unit may revoke or suspend any right, license, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

28.     To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Sale Agreement (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

29.     Except as expressly provided in the Sale Agreement or the Ancillary Agreements, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

30.     Any amounts that become payable by the Debtors to the Purchaser arising from, related to, or in connection with, the Sale Agreement or any of the documents delivered by the Debtors pursuant to or in connection with the Sale Agreement shall (a) constitute administrative expenses of the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, and (b) be paid by the Debtors in the time and manner as provided in the Sale Agreement without further order of this Court.

31.     This Order shall not be modified by any chapter 11 plan confirmed in these chapter 11 cases or subsequent order of this Court unless expressly consented to in writing by the Purchaser.

32.     This Order and the Sale Agreement shall be binding in all respects upon all creditors and interest holders of any of the Debtors, all non-debtor parties to the Assumed and Assigned Contracts, the Committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and the Sale Agreement shall not be subject to rejection or avoidance under any circumstances.

33.     The failure specifically to include or make reference to any particular provisions of the Sale Agreement or any Ancillary Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreement and the Ancillary Agreements are authorized and approved in their entirety.

34.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, including, without limitation, the authority to: (1) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the Sale Agreement, the Ancillary Agreements, all amendments thereto and any waivers and consents thereunder; (2) protect the Purchaser, or the Purchased Assets, from and against any of the Claims or Interests; (3) compel delivery of all Purchased Assets to the Purchaser; (4) compel the Purchaser to perform all of its obligations under the Sale Agreement; and (5) resolve any disputes arising under or related to the Sale Agreement, the Ancillary Agreements, the Sale or the Transactions.

35.     The Sale Agreement, the Ancillary Agreements and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the

21

Court; provided, however, that any such modification, amendment or supplement is neither material nor materially changes the economic substance of the transactions contemplated hereby (it being understood, for the sake of clarity, that no such modification, amendment or supplement shall be deemed to be material or shall be deemed to materially change the economic substance of the transactions to the extent that the impact does not exceed two percent of the Purchase Price); and provided further that no such modifications, amendments, or supplements may be made except following two (2) days written notice to, or with the prior consent of, the Committee, if one is still constituted, c/o Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Fred S. Hodara, Stephen Kuhn, and Kenneth Davis). The Debtors are hereby authorized to perform each of their covenants and undertakings as provided in the Sale Agreement and the Ancillary Agreements prior to or after closing without further order of the Court.

36.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

37.     Notwithstanding any provision in the Bankruptcy Rules or Local Rules to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

38.     The provisions of this Order are nonseverable and mutually dependent.

39.     This Order applies only to Assets owned by the Debtors. Consequently, notwithstanding any other provision of this Order or the Sale Agreement to the contrary, the

22

portions of this Order that approve the transfer of the Purchased Assets to the Purchaser free and clear of all liens and other encumbrances, or that modify, enjoin, release or otherwise limit the rights of creditors of entities transferring Purchased Assets, apply only to Purchased Assets owned by the Debtors and do not apply to any Purchased Assets owned by non-debtor entities.

40.    The Purchaser shall deposit proceeds of the Sale, subject to the price adjustments and Purchaser's rights under the Sale Agreement and less applicable transfer or value-added taxes incurred by the Sellers, and, to the extent agreed by the Sellers, any transaction costs, into an Escrow Account (as defined in the Interim Funding and Settlement Agreement, dated June 9, 2009 (the "IFSA")). In accordance with this Court's order approving and authorizing the transactions contemplated by the IFSA, the proceeds in the Escrow Account shall not be distributed in advance of either (a) agreement of all of the Selling Debtors (as such term is defined in the IFSA) as to the distribution of such proceeds (subject to the prior consent of the Committee and the Bondholder Group acting in good faith in accordance with Section 12.g of the IFSA) or (b) in the case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) in accordance with the terms of the Interim Sales Protocol (as such term is defined in the IFSA and subject to the requirements of Section 12.g of the IFSA), which Interim Sales Protocol shall be approved by the Court. The Debtors are hereby authorized to negotiate and enter into an escrow agreement, on terms and conditions reasonably satisfactory to the Committee and the Monitor acting in good faith, with an escrow agent to establish an Escrow Account without further order of this Court.

41.    The Schedules delivered to the Court by the Debtors shall be kept segregated and under seal by the Clerk of Court and shall not be made publicly available pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9081-1(b).

23

42.    Nothing in this Order authorizes or otherwise provides for the assumption, assignment or rejection, in whole or in part, of any Objecting Party Agreement. Other than the rights and obligations between the parties to the Sale Agreement, nothing herein or in the Sale Agreement shall affect the rights of any party to an Objecting Party Agreement, all of which rights are hereby preserved, including, without limitation, the right of any Objecting Party to seek, oppose or support (a) any assumption, assignment or rejection of an Objecting Party Agreement on any legal or factual basis, (b) adequate assurance of future performance, (c) the estimation or assertion of any proposed cure amounts, (d) the assumption by the Purchaser of all obligations and liabilities under any Objecting Party Agreement by virtue of the assumption and assignment of the Objecting Party Agreement under Section 365 and other applicable law, including, to the extent applicable, contingent, unmatured, or unliquidated claims, warranties, non-cash incentives, credits, indemnifications, requests to provide product support and maintenance services, and whether such arise or arose pre- or post-closing, (e) adequate assurance for payment of such obligations and liabilities, and (f) any right to challenge any rejection of or to preserve the intellectual property rights provided by a license under which the Debtors are licensors, whether pursuant to 11 U.S.C. section 365(n) or otherwise. For purposes of this Order, "Objecting Party Agreement" means any written contract, agreement, license or other document that creates binding contractual obligations between an Objecting Party and one or more of the Debtors; "Objecting Party" means OSS Nokalva, Inc., AT&T Services, Inc. and its subsidiaries and affiliates, the affiliates of Verizon Communications Inc. and Motorola, Inc. Nothing in this Order or the Sale Agreement shall prejudice, estop, bar, impair or otherwise limit in any respect any party's rights under Section 365 of the Bankruptcy Code with respect to the Objecting Party Agreements, including, without limitation, the rights set forth above in subparts

24

(a) through (f).

43.     Nothing in this Order shall be deemed to waive, release or extinguish any valid claim with respect to setoff that the affiliates of Verizon Communications Inc. may have against the Debtors.

44.     Nothing in this Order provides for the assumption and assignment of any contract or license with Qwest Communications Company, LLC ("Qwest") or SNMP Research International, Inc. ("SNMPRI") pursuant to section 365 of the Bankruptcy Code. If the Purchaser elects to have the Debtors assign to the Purchaser any contract or license with Qwest or SNMPRI relating to the Assets, in whole or in part, any rights Qwest or SNMPRI may have to object to such assignment are expressly preserved. Nothing in this Order or the Sale Agreement shall prejudice, estop, bar, impair or otherwise limit in any respect any party's rights under Section 365 of the Bankruptcy Code with respect to any contract or license between any of the Debtors and Qwest or SNMPRI.

DATED: September 30, 2010

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE