IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
                                 :

*In re*                            :      Chapter 11

Nortel Networks Inc., *et al.*,[1]         :      Case No. 09-10138 (KG)

               Debtors.     :      Jointly Administered

                                 :

                                 :      **Hearing date: October 14, 2010 10:00 AM (ET)**
                                 :      **Objections due: October 7, 2010 4:00 PM (ET)**

------------------------------------------------------------X

**MOTION FOR ENTRY OF AN ORDER (I) APPOINTING
LAYN R. PHILLIPS AS NEUTRAL MEDIATOR CONCERNING
ALLOCATION OF SALE PROCEEDS; (II) AUTHORIZING ENTRY
INTO AN ENGAGEMENT AGREEMENT WITH IRELL
& MANELLA LLP;  (III) APPROVING THE TERMS OF ENGAGEMENT
AGREEMENT; (IV) ALLOWING PAYMENT OF DEBTORS' SHARE
OF COST OF ENGAGEMENT; AND (V) GRANTING RELATED RELIEF**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors

in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry

of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and

363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 9019-2, 9019-3

and 9019-5 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) approving the

appointment of Layn R. Phillips as a neutral mediator concerning the allocation of sale proceeds,

pursuant to the terms of the engagement agreement by and among the Debtors, the Canadian

Debtors (as defined below) including Nortel Networks Limited ("NNL"), the EMEA Debtors (as

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

defined below), the Committee (as defined below),  the Bondholder Group (as defined below) and certain other interested parties, (collectively, the "Mediation Parties") and the Alternative Dispute Resolution Center at Irell & Manella LLP ("Irell & Manella"), the substantially final form of which is attached hereto as Exhibit B (the "Engagement Agreement"); (ii) authorizing the Debtors to enter into the Engagement Agreement; (iii) approving the terms of the Engagement Agreement; (iv) allowing payment of the Debtors' share of the cost of engagement; and (v) granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code, as supplemented by Rules 9019-2, 9013-3 and 9019-5 of the Local Rules.

### Background

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b), which provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

2

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement

Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

Proceedings").  The Canadian Debtors continue to manage their properties and operate their

businesses under the supervision of the Canadian Court.

7.      On January 14, 2009, the Canadian Court entered an order recognizing these

chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February

27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the

Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"),

this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings

under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of England and Wales placed nineteen of

Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the

control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  On

May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles,

France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A.,
Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel
Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks
B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel
Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks
Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

proceedings in respect of Nortel Networks S.A. ("NNSA"). NNSA was authorized to continue to operate as a going concern until completion of the sale of the GSM/GSM-R business. While NNSA's operations are now terminated, the French Proceedings are continuing and, in accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.    On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10.    On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI and itself one of the Debtors, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the other Debtors' chapter 11 cases [D.I. 1099]. From time

---

[4]    Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Limited (the "Israeli Companies"), filed an application with the Tel-Aviv-Jaffa District Court (the "Israeli Court"), pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Companies under the Israeli Companies Law (the "Joint Israeli Administrators").

4

to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.    Debtors' Corporate Structure and Business**

11.    Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers. Nortel's technologies spanned access and core networks and supported multimedia and business-critical applications. Nortel's networking solutions consisted of hardware, software and services. Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

12.    Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

**C.    Case Milestones**

13.    On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event it were unable to maximize value through sales. As described below, to date, Nortel has closed seven separate sale transactions and obtained court approval for an eighth. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14.    On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 p.m. (Eastern Time) as the general bar date for filing proofs of claim or interests against the Debtors (other than NN CALA) [D.I. 1280]. On December 3, 2009 this Court entered an order

---

[5]    Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

fixing January 25, 2010 at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

15.    On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580]. On September 3, 2010, the Debtors filed the Proposed Disclosure Statement for the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3874].

## Relief Requested

16.    By this Motion, the Debtors seek an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Local Bankruptcy Rules 9019-2(c), (e) and (f), Rule 9019-3 and 9019-5 (i) approving the appointment of Layn R. Phillips as the Mediator in connection with the allocation of sale proceeds, (ii) authorizing the Debtors (along with the other Mediation Parties) to enter into the Engagement Agreement with Irell & Manella to engage Layn R. Philips as the Mediator, (iii) approving the terms of the Engagement Agreement, (iv) allowing the Debtors to pay its share of the cost of Layn R. Phillips' compensation as set forth in the Engagement Agreement; and (v) granting related relief.

## Background

**A.    The Asset Sales and Other Transactions**

17.    Over the past two years the Debtors have undertaken substantial efforts to dispose of their operating businesses in coordination with their debtor and non-debtor affiliates in Canada, Europe, Africa, Asia, the Pacific, the Caribbean, Latin America and South America. Given the complexity of Nortel's corporate structure as well as the highly technical nature of the businesses, efforts to sell the businesses proved to be very complex undertakings – both for the Nortel sellers and the purchasers of these businesses.

18.    As a result of these efforts, to date the U.S. Debtors have entered into, and sought

approval for, eight separate sale transactions, which taken together relate to a substantial

majority of Nortel's operating businesses.[6]

a.    The sale of Nortel's Layer 4-7 assets to Radware Ltd. for $17.65 million closed on March 31, 2009 (the "Layer 4-7 Sale").

b.    The sale of certain of Nortel's CDMA and LTE-related assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") for $1.13 billion closed on November 13, 2009 (the "CDMA Sale").

c.    The sale of Nortel's Enterprise Solutions business to Avaya Inc. for $900 million closed on December 18, 2009 (the "Enterprise Sale").

d.    The sale of Nortel's Next Generation Packet Core Network Components business to Hitachi Ltd. for $10 million closed on December 8, 2009 (the "Next Generation Packet Core Sale").

e.    The sale of Nortel's GSM/GSM-R business to Ericsson and Kapsch Carriercom AG for $103 million closed on March 31, 2010 (the "GSM/GSM-R Sale").

f.    The sale of Nortel's Metro Ethernet Networks business to Ciena Corporation for $789 million closed on March 19, 2010 (the "MEN Sale").

g.    The sale of Nortel's Carrier VoIP and Application Solutions business to GENBAND Inc. for approximately $282 million (subject to certain adjustments) closed on May 28, 2010 (the "CVAS Sale").

h.    On September 30, 2010, the Court entered an order approving the sale of Nortel's Multi-Service Switch Business (formerly known as the 'Passport' business) (the "MSS Business") to Ericsson for $65 million.

**B.    The Allocation of Sale Proceeds**

19.    Prior to the CDMA Sale, on June 9, 2009, the U.S. Debtors, the Canadian

Debtors, the EMEA Debtors and the Joint Administrators entered into an Interim Funding and

Settlement Agreement (the "IFSA"), a key purpose of which was to permit the sale of Nortel's

global businesses without requiring, as a prerequisite to such sales, an agreement on the

---

[6]    Efforts continue to monetize Nortel's remaining assets, including, in particular, Nortel's substantial intellectual property assets.

allocation of the sale proceeds among the various Nortel sellers. The Court entered an order approving the IFSA on June 29, 2009 [D.I. 993].

20.    The IFSA required, among other things, (a) that the sale proceeds (less certain costs) be deposited in escrow accounts (IFSA, Section 12(b)); (b) that the "Selling Debtors" (as defined in IFSA, Section 12(a)) attempt to reach agreement on the allocation of the sale proceeds; and (c) that the "Selling Debtors" attempt to reach agreement on an "Interim Sales Protocol" to control a process to determine the allocation of the proceeds of the sale transactions, where the Nortel sellers are unable to reach agreement on allocation. (IFSA, Section 12(c)).

21.    Pursuant to the IFSA, the Debtors have sought and obtained approval from the Court to enter into escrow agreements that provide for the disposition of the sale proceeds from the CDMA and LTE Sale [D.I. 1889], the Next Generation Packet Core Sale [D.I. 2062], the Enterprise Sale [D.I. 2167], the MEN Sale [D.I. 2627], the CVAS Sale [D.I. 2632] and the GSM/GSM-R Sale [D.I. 2065] into escrow accounts pending the ultimate distribution of the sale proceeds to various Nortel sellers.[7] The proceeds of the sale transactions that have closed are being held in escrow. The various Nortel sellers expect to deposit proceeds of remaining monetization transactions into escrow upon closing.

22.    In addition to the allocation of the proceeds of the sale transactions, the U.S., Canadian and EMEA Debtors may have claims against each of the estates ("Inter-Estate Claims") related to, but not limited to: the various sale transactions that have occurred or may occur, divestitures that have occurred or are pending, research and development work, supplier settlements, employee or contractual obligations, pension related matters and avoidance actions.

---

[7]    The sale proceeds from the Layer 4-7 Sale were likewise placed in escrow in accordance with the Asset Sale Agreement for that sale. As the Layer 4-7 Sale was completed separately and prior to the negotiation of the IFSA, the Layer 4-7 sale proceeds will be allocated in accordance with the Asset Sale Agreement and independent of the process envisioned in the Allocation Protocol.

23.    Over the past several months, the Mediation Parties have attempted in good faith to reach agreement on a form of "Interim Sales Protocol" and met on several occasions in an attempt to agree on an allocation of the sales proceeds now held in escrow.  As a result of these efforts, the Mediation Parties have come to a unanimous decision that the allocation process, as well as the process for settling certain Inter-Estate Claims, would be aided by the appointment of a neutral mediator to review the positions and viewpoints of the various Mediation Parties.

24.    To this end, the Mediation Parties have selected Layn R. Phillips to serve as the neutral mediator pursuant to the terms of the Engagement Agreement, subject in the case of the Debtors, to approval by this Court.

### Basis for Relief

25.    The Debtors and the other Mediation Parties agree that mediation in this case is a means for achieving a consensual allocation of the sale proceeds and resolving all or substantially all of the disputed issues.  It is the unanimous view of the Mediation Parties that Mr. Phillips is an ideal candidate to serve in the role of neutral mediator.

26.    Local Bankruptcy Rule 9019-3 provides, "Notwithstanding any provision of the law to the contrary, the Court may refer a dispute pending before it to mediation...." Local Bankruptcy Rule 9019-5 provides, "The Court may assign to mediation any dispute arising…in a bankruptcy case." Local Bankruptcy Rule 9019-2 provides, "A mediator shall be selected from the Register of Mediators, unless the parties stipulate and agree to a mediator not on the Register of Mediators."

27.    Section 105(a) of the Bankruptcy Code provides this Court with the power to grant the relief requested herein by the Debtors.  Section 105(a) of the Bankruptcy Code states that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  Under

Section 105(a) of the Bankruptcy Code, the Court has broad equitable powers.    See In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105(a) of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings."); In re VII Holdings Co., 362 B.R. 663, 668 (Bankr. D. Del. 2007) (BLS) (noting that "[s]ection 105(a) bestows broad equitable powers on the Court.") (citing In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004)).

28.    Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease property of the estate outside of the ordinary course of business after notice and a hearing.  11 U.S.C.  § 363.  Section 363 applies when an agreement involves the disposition of the estate's assets in a way that ventures beyond an ordinary course transaction.  Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996).

29.    The use or transfer of estate property under section 363 of the Bankruptcy Code must be supported by a sound business purpose.  Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008).  A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike."  In re Montgomery Ward, 242 B.R. at 153-54 (quoting In re Lionel, 722 F.2d at 1071).  In addition, a

debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided, and that it is receiving fair and reasonable value in exchange. See In re Delaware & Hudson Ry. Co., 124 B.R. at 176; In re Decora Indus., Inc., 2002 WL 32332749, at *2.

30.    The Debtors believe that retention of a neutral mediator's services will be instrumental in resolving issues related to the allocation of sale proceeds and settlement of Inter-Estate Claims. As such, the appointment of Layn R. Phillips and engagement of Irell & Manella is necessary to move to the next step in the Debtors' bankruptcy cases – allocation and distribution of sale proceeds. Accordingly, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, their creditors and all other parties in interest. Moreover, the costs related to the engagement, which are to be shared among certain of the Mediation Parties, are justified by the need to have the neutral mediator available to advance the allocation process.

## Mediator and Scope of Services

31.    The Mediation Parties have selected Mr. Phillips, a former federal district court judge, former U.S. Attorney and nationally known arbitrator and mediator, based on his extensive experience in complex civil litigation and alternative dispute resolution. For over 15 years, Mr. Phillips has successfully mediated high stakes civil disputes for Fortune 500 companies and is considered pre-eminent in the resolution of multi-party matters, some involving as many as 150 parties. He has mediated hundreds of disputes referred by private parties and courts, and has been appointed a Special Master by various federal courts in complex civil proceedings. He has also served as special counsel to numerous corporations, conducting a

wide variety of internal investigations on sensitive issues. He has conducted matters under the CPR, AAA, and ICC rules, as well as the Federal Rules of Civil Procedure.

32.    Mr. Phillips has also been elected into, and now serves as, a Fellow in the International Academy of Mediators. In addition, he has also been nationally recognized as a mediator by the Center for Public Resources Institute for Dispute Resolution (CPR), serving on CPR's National Panel of Distinguished Neutrals.

33.    The Debtors submit that the terms of Mr. Phillips' Engagement Agreement are standard and appropriate under the circumstances.[8] Mr. Phillips and the Mediation Parties are in the process of agreeing on the procedures relating to the mediation and Mr. Phillips will keep all information received in connection with any mediation proceedings confidential. At the conclusion of the mediation, Mr. Phillips will either destroy or return to the Mediation Parties all materials provided to him during the course of the mediation, and shall destroy all other documents in his possession concerning the mediation with the exception of his personal notes.

34.    To the best of the Debtors' knowledge, and except as set forth herein and as otherwise disclosed in the Irell & Manella Disclosure Letter, attached hereto as Exhibit D, Mr. Phillips has not represented the Debtors, the Mediation Parties, their creditors, equity security holders or any other parties in interest in any matters relating to allocation of the sale proceeds.

35.    As disclosed in the Irell & Manella Disclosure Letter, Mr. Phillips has worked as a neutral mediator in a number of mediations involving entities affiliated with Ernst & Young, which is a worldwide organization of affiliated firms.[9] Mr. Phillips has also previously served as

---

[8]    The summary of the Engagement Agreement in this Motion is solely for the benefit of the Court and parties in interest. To the extent that the summary and the terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement shall control. Capitalized terms not defined in this Motion shall have the meanings given them in the Engagement Agreement.

[9]    As noted in Paragraphs 7 and 8, Ernst & Young Inc. serves as the Monitor in the Canadian proceedings and certain individuals from Ernst & Young LLP serve as Joint Administrators in the English proceedings.

12

ADR settlement counsel to Ernst & Young in connection with the Cendant Securities Litigation and the Health South Securities Litigation. The Debtors believe that Mr. Phillips' former role as a mediator in cases involving Ernst & Young will not in any way adversely affect his appointment and engagement as neutral mediator.

36.     Additionally, Irell & Manella has informed the Debtors and the other Mediation Parties of its ongoing representation of certain entities adverse to Ernst & Young. The Debtors and the other Mediation Parties have consented to Irell & Manella's continued representation of these entities in matters unrelated to these proceedings. The Debtors believe that Irell & Manella's current and future representation of these entities will not in any way adversely affect the engagement of Mr. Phillips as neutral mediator and, in light of the foregoing, Mr. Phillips does not hold or represent any interest adverse to the Debtors or their estates and is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and the Debtors' selection of Mr. Phillips is necessary and in the best interests of the Debtors and their estates.

37.     As discussed above in greater detail, Mr. Phillips will be providing services to the Debtors, as well as to the other Mediation Parties. The Debtors believe that Mr. Phillips' provision of services to all of the Mediation Parties as neutral mediator does not make Mr. Phillips' an interested party within the meaning of Section 101(14) of the Bankruptcy Code.

**Professional Compensation and Employment Terms**

38.     Pursuant to the Engagement Agreement, the Debtors and the other Mediation Parties are responsible for one hundred percent (100%) of Mr. Phillips' compensation and expense reimbursement. Once the Debtors and the other Mediation Parties have determined how

the costs will be shared, the Mediation Parties will communicate their decision in writing to Irell & Manella.

39.    In summary, the compensation as set forth in the Engagement Agreement (the "Fee Structure") provides that the Mediation Parties are obligated to pay the following retainer of $101,250.00 (the "Initial Retainer") to Irell & Manella for the services of Mr. Phillips.  The Initial Retainer will be allocated as follows:

a.    $55,000 for the mediation sessions requested by the Mediation Parties, including $10,000 per weekday session and $15,000 per weekend session;

b.    $24,000 for twenty-four (24) hours of preparation in connection with pre-mediation communications, review of case materials, exhibits and cited case law;

c.    $8,250 for out-of-pocket expenses that will be incurred by Mr. Phillips for travel and lodging;

d.    $14,000 for time necessary for Mr. Phillips to travel to and from the mediation sessions.

40.    Mr. Phillips will be compensated at his standard mediation rate of $1,000.00 per hour and his legal support staff will bill their hourly rates for assisting Mr. Phillips with any mediation related tasks.

41.    If additional time is required in excess of the anticipated twenty-four (24) hours preparation, and/or the ten (10) hours scheduled for each mediation day, or the out-of-pocket expenses, the Mediation Parties will be notified and an additional bill for the excess will be submitted and paid by the Mediation Parties within thirty (30) days of the date billed.

42.    The fees sought are reasonable and comparable to that generally charged by Mr. Phillips for similar engagements.  The Debtors believe the fees are in fact reasonable, market based, and designed to compensate Mr. Phillips fairly for work and to cover fixed and routine expenses.

43.     A true and correct copy of the proposed order is attached as <u>Exhibit A</u> and is incorporated herein by reference.   Additionally, the Engagement Agreement and Disclosure Letter are attached respectively as <u>Exhibits B</u> and <u>D</u>, and are incorporated herein by reference.

## <u>Notice</u>

44.     Notice of the Motion has been given via overnight mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases.   The Debtors submit that under the circumstances no other or further notice is necessary.

## <u>No Prior Request</u>

45.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this

Motion and the relief requested herein; (ii) enter the proposed mediation order attached hereto;

and (iii) grant such other and further relief as it deems just and proper.

Dated: October 6, 2010
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


___*Alissa T. Gazze*___
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa T. Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

16