# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X

|  |  |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
|  | **Hearing date: October 27, 2010 at 10:00 am (ET)** |
|  | **Objections due: October 20, 2010 at 4:00 pm (ET)** |

---------------------------------------------------------X

## DEBTORS' MOTION FOR AN ORDER AUTHORIZING AND APPROVING SETTLEMENT PROCEDURES TO SETTLE CERTAIN AVOIDANCE CLAIMS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving omnibus settlement procedures to settle certain avoidance claims; and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available http://dm.epiq11.com/nortel.

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are section 105(a) of the

Bankruptcy Code and Rule 9019(b) of the Bankruptcy Rules.

**Background**

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA

(defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant

to Bankruptcy Rule 1015(b), which provided for the joint administration of these cases and for

consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement

Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.     On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.     On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"). NNSA was authorized to continue to operate as a going concern until completion of the sale of the GSM/GSM R business. While NNSA's operations are now terminated, the French Proceedings are continuing and, in accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 26, 2009, this Court entered an order recognizing the

---

[3]     The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

3

English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.     On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI and itself one of the Debtors, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the other Debtors' chapter 11 cases [D.I. 1099].  From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.     Debtors' Corporate Structure and Business**

11.     Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers.  Nortel's technologies spanned access and core networks and supported multimedia

---

[4]       Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Limited (the "Israeli Companies"), filed an application with the Tel-Aviv-Jaffa District Court (the "Israeli Court"), pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Companies under the Israeli Companies Law (the "Joint Israeli Administrators").

and business-critical applications.  Nortel's networking solutions consisted of hardware, software and services.  Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

12.    Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

## C.    Case Milestones

13.    On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event it were unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632].  In addition, Nortel has obtained Court approval for the sale of

---

[5]    Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

certain assets of the Debtors' Multi-Service Switch (formerly known as "Passport") business to

Ericsson [D.I. 4054].  Efforts continue to be made with respect to the realization of value from

Nortel's remaining assets.

14.    On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00

p.m. (Eastern Time) as the general bar date for filing proofs of claim or interests against the

Debtors (other than NN CALA) [D.I. 1280].  On December 3, 2009 this Court entered an order

fixing January 25, 2010 at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim or

interests against NN CALA [D.I. 2059].

15.    On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks

Inc. and Its Affiliated Debtors [D.I. 3580].  On September 3, 2010, the Debtors filed the

Proposed Disclosure Statement for the Joint Chapter 11 Plan of Nortel Networks Inc. and Its

Affiliated Debtors [D.I. 3874].

<u>**Debtors' Avoidance Claims**</u>

16.    The Debtors' books and records reflect that, prior to the Petition Date, the Debtors

made numerous payments to third parties.  The Debtors have begun analyzing these transactions

and believe that a substantial number of such transfers are subject to avoidance and recovery as

preferential and/or fraudulent transfers pursuant to sections 547, 548 and 550 of the Bankruptcy

Code (the "<u>Avoidance Claims</u>").  The Debtors intend to pursue such Avoidance Claims against

third parties.  On October 4, 2010, the Debtors filed the first of the actions, 23 adversary

proceedings, alleging preferential transfers.   Many more such actions are expected to be filed in

the coming months.

17.    The Debtors may wish to enter into settlements of Avoidance Claims prior to or

after adversary proceedings are commenced (the "<u>Avoidance Settlements</u>").  Establishing

procedures under which the Debtors can settle Avoidance Claims within prescribed guidelines

will limit the costs and professional fees, and thereby maximize the value of the Debtors' estate

for the benefit of the Debtors' unsecured creditors.

## <u>Relief Requested</u>

18.     By this Motion, the Debtors seek an order pursuant to section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019(b) approving certain proposed procedures, as

described more fully below (the "<u>Settlement Procedures</u>"), under which the Debtors may, in their

discretion, compromise and settle the Avoidance Claims for de minimis amounts and limit the

notice to be served for other proposed settlements.[6]

19.     In proposing such Avoidance Settlements, the Debtors will be guided by several

factors, including the potential recovery on the Avoidance Claims, the asserted defenses and the

estimated litigation costs the Debtors would incur in pursuing or otherwise resolving such

claims.  Granting the authority requested herein will enable the Debtors to settle efficiently and

economically numerous Avoidance Claims.

20.     With respect to Avoidance Claims belonging to the Debtors' estates, the Debtors

are therefore seeking to implement a three-tier settlement procedure, as set forth below (the

"<u>Settlement Procedures</u>").  Specifically, the Debtors seek authorization to consensually resolve,

in their sole discretion, Avoidance Claims pursuant to the following Settlement Procedures,

which the Debtors believe will facilitate a fair, efficient and reasonable method of settling

Avoidance Claims:

> a.     No settlement of an Avoidance Claim will be agreed to unless such
> settlement would be in the reasonable business judgment of the
> Debtors, upon consideration of (i) the probability of success if the

---

[6]     The relief sought in this Motion is not intended to limit the Debtors' authority to settle claims granted under any prior orders entered by this Court.

claim is litigated or arbitrated, (ii) the complexity, expense and likely duration of any litigation or arbitration with respect to the claim, (iii) the difficulty in collection of any judgment, (iv) other factors relevant to assessing the wisdom of the settlement, and (v) the fairness of the settlement vis-à-vis the Debtors' estates and their creditors.

b.  No settlement will be effective unless it is executed by an officer of one of the Debtors or by counsel for the Debtors on behalf of the Debtors.

c.  The Debtors' employees or representatives responsible for negotiating or settling Avoidance Claims may attempt to resolve, mediate, compromise or otherwise settle any Avoidance Claim without further hearing or notice to this Court or other parties in interest in these proceedings.

d.  Subject to subparagraphs (a), (b) and (c) above, with respect to any Avoidance Claim where the asserted claim amount is equal to or less than $250,000, and the Debtors propose a settlement of the Avoidance Claim, including providing a release, the Debtors are not required to file or serve any advance notice of such settlement and may consummate the settlement of the claim without further notice or order of the Bankruptcy Court.

e.  Subject to subparagraphs (a), (b) and (c) above, with respect to any Avoidance Claim where the asserted claim amount is greater than $250,000 but equal to or less than $1,000,000, the Debtors shall notify (i) the U.S. Trustee, (ii) counsel to the Committee and (iii) counsel to the Bondholder Group (the "Notice Parties") in writing of a proposed settlement of an Avoidance Claim.  If no Notice Party objects in writing within ten (10) calendar days of receipt of notice under this paragraph, then the Debtors may immediately proceed with the settlement.[7]  If an objection is received within such period that cannot be resolved, such Avoidance Claim may not be settled except upon further order of the Court after notice and a hearing.

---

[7]  The Notice Parties shall be deemed to have received notice the day after such notice has been sent by a properly addressed facsimile, email or overnight delivery to the Notice Parties or their counsel or designated representative.  If such notice is made solely by U.S. mail, the deemed receipt date shall be three (3) days after mailing.

f.      No Avoidance Claim where the asserted claim amount is greater than $1,000,000 shall be settled without further approval by the Court.

g.      The Debtors, in their sole discretion, shall have the authority to exchange mutual releases as part of any settlement of an Avoidance Claim under subsections (d) or (e) hereof, provided, however, that to the extent the scope of such releases includes matters beyond the transactions and transfers that are the subject of an Avoidance Claim, the Debtors will include information concerning such releases in the notice provided to the Notice Parties under subsection (e) above.

h.      With respect to a proposed settlement reached and approved pursuant to the Settlement Procedures, such settlement shall be binding upon the parties to the settlement and all other parties in interest as if the settlement had been approved by the Court after notice and a hearing.  The Debtors shall periodically file with the Court a Notice of Settlement of Claims (the "Settlement Notice") that lists the Avoidance Claims settled pursuant to these Settlement Procedures and the amount of such settled Avoidance Claims.

i.       Nothing in the foregoing Settlement Procedures shall prevent the Debtors, in their sole discretion, from seeking the Court's approval at any time of any proposed settlement upon notice and a hearing.

j.       These Settlement Procedures will not apply to any compromise and settlement of an Avoidance Claim that involves an "insider," as that term is defined in section 101(31) of the Bankruptcy Code.

k.      Following the effective date of the chapter 11 plan for each debtor, the terms of the debtor's plan and any Plan Administration Agreement approved in connection with such plan, rather than these Settlement Procedures, shall govern the settlement of the Avoidance Claims, except to the extent these Settlement Procedures are incorporated into the plan.

21.    Entry of an order approving the Settlement Procedures described above will not in any way obligate the Debtors to settle, nor discuss the settlement, of any Avoidance Claim.  Nor will the aforementioned relief require the Debtors to settle any Avoidance Claims for amounts less than the amounts that the Debtors, in their sole discretion, believe to be reasonable and appropriate under the circumstances.

## Basis for Relief Requested

22.     The Debtors seek an order granting the relief sought in this Motion pursuant to

section 105(a) of the Bankruptcy Code and Rule 9019(b) of the Bankruptcy Rules.  Section

105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order .

. . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11

U.S.C. § 105(a).

23.     Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the

trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed.

R. Bankr. P. 9019(a).  Under this authority, the Third Circuit has emphasized that

"[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393

(3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).  In addition, the

District of Delaware has recognized that the approval of a proposed compromise and settlement

is committed to the sound discretion of the bankruptcy court.  See In re Coram Healthcare Corp.,

315 B.R. 321, 330 (Bankr. D. Del. 2004).

24.     Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re

Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005); In re Marvel Entm't Group, 222

B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997));

see also In re Nutritional Sourcing Corp., 398 B.R. 816, 833 (Bankr. D. Del. 2008).  Basic to the

process of evaluating proposed settlements is "the need to compare the terms of the compromise

with the likely rewards of litigation."  Protective Comm. for Independent Stockholders of TMT

Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).  The court's obligation is to

"canvass the issues and see whether the settlement falls below the lowest point in a range of

reasonableness." <u>Travelers Cas. & Sur. Co. v. Future Claimants Representative</u>, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing <u>In re Jasmine, Ltd.</u>, 258 B.R. 119 (D.N.J. 2000)); <u>Coram</u>, 315 B.R. at 330; <u>In re Pennsylvania Truck Lines</u>, 150 B.R. 595, 598 (E.D. Pa. 1992). The court need not be convinced that the settlement is the best possible compromise in order to approve it. <u>Coram</u>, 315 B.R. at 330.

25.     The Third Circuit has set out four criteria that a bankruptcy court should consider in determining whether a settlement proposal is within the range of reasonableness (the "<u>Martin Factors</u>"). The Martin Factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." <u>In re Martin</u>, 91 F.3d at 393; <u>see also</u> <u>Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)</u>, 283 F.3d 159, 165 (3d Cir. 2002); <u>In re eToys, Inc.</u>, 331 B.R. 176, 198 (Bankr. D. Del. 2005). The approval of the Settlement Procedures proposed herein supports the application of these criteria.

26.     Pursuant to Bankruptcy Rule 9019(b), the Court may authorize the Debtors to settle certain classes of controversies without requiring separate notice and hearing with respect to each separate controversy. Specifically, Rule 9019(b) provides that "the court may fix a class or classes of controversies and authorize the trustee [or debtor in possession] to compromise or settle controversies within such class or classes without further hearing or notice." Fed. R. Bank. P. 9019(b). As stated in the 1983 Advisory Committee Notes to Rule 9019, the rule "permits the court to deal efficiently with a case in which there may be a large number of settlements." Settlement procedures similar to those requested in this Motion have been established in comparable chapter 11 cases in this and other Districts. <u>See, e.g.</u>, <u>In re Pacific Energy Resources Ltd., et al.</u>, Case No. 09-10785 (Bankr. D. Del. April 19, 2010) (Order); <u>In re Lehman Brothers</u>

11

Holdings Inc., et al., Case No. 08-13555 (Bankr. S.D.N.Y. Mar. 31, 2010) (Order); In re Circuit

City Stores, Inc. et al., Case No. 08-35653 (Bankr. E.D. Va. Aug. 7, 2009) (Order); In re

Plassein International Corp. (n/k/a PL Liquidation Corp.) et al., Case No. 03-11489 (Bankr. D.

Del. May 15, 2005) (Order); In re Hayes-Lemmerz International Inc., Case No. 01-11490

(Bankr. D. Del. Sept. 2, 2003) (Order).

27.     The Debtors respectfully submit that the Settlement Procedures proposed in this

Motion are reasonable and in the best interests of the Debtors, their creditors and their estates.

Moreover, the Debtors believe that the implementation of the Settlement Procedures is an

appropriate exercise of the authority granted to the Court in Bankruptcy Rule 9019(b).  The

Debtors believe that, in view of the expected number of Avoidance Claims, many of which may

be resolved consensually without filing suit, the process of drafting, filing and conducting

hearings on each individual settlement of an Avoidance Claim, as otherwise required by

Bankruptcy Rule 9019(a), would be impractical and administratively burdensome for the Debtors

and the Court.

28.     The Settlement Procedures contemplated herein are an efficient means of

resolving Avoidance Claims while preserving notice and due process requirements where

necessary.  In addition, implementation of the Settlement Procedures will allow the Debtors to

avoid incurring the costs, administrative burden and delay associated with preparing separate

motions and obtaining separate court approval for each proposed settlement.  For the foregoing

reasons, the Debtors seek approval of the proposed Settlement Procedures in order to settle

Avoidance Claims within the parameters set forth herein in a cost-effective and streamlined

manner.

**Notice**

29.     Notice of the Motion has been given via first class mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) the general service list established in these chapter 11 cases; and (v) defendants in Avoidance Claims filed to date.  The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

30.     No prior request for the relief sought herein has been made to this or any other court.


*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  October 8, 2010          CLEARY GOTTLIEB STEEN & HAMILTON LLP
        Wilmington, Delaware

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Donna L. Culver (No. 2983)
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa T. Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors and Debtors in Possession*

14