IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X

| | |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | **Hearing date: November 8, 2010 at 12:30 p.m.** |
| | **Objections due: November 1, 2010 at 4:00 p.m.** |

---------------------------------------------------------------X

## APPLICATION OF THE DEBTORS PURSUANT TO 11 U.S.C. § 327(a) TO RETAIN AND EMPLOY BENESCH FRIEDLANDER COPLAN & ARONOFF LLP AS SPECIAL LITIGATION COUNSEL FOR THE DEBTORS *NUNC PRO TUNC* TO SEPTEMBER 17, 2010

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this court (the "Application") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 327(a), 328(a), 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) authorizing the employment and retention of Benesch Friedlander Coplan & Aronoff LLP ("Benesch") as special litigation counsel to the Debtors in connection with certain litigation matters, *nunc pro*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

1

*tunc* to September 17, 2010; (ii) approving the terms and conditions under which Benesch will be retained and compensated; and (iii) granting such other and further relief as the Court deems just and appropriate. In support of this Application, the Debtors rely upon the Declaration of Ray Lemisch (the "Lemisch Declaration"), attached hereto as Exhibit B. In further support of this Application, the Debtors respectfully represent as follows:

### Jurisdiction

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105(a), 327(a), 328(a), 330 and 331 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1.

### Background

**A.    Introduction**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b), which provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492)

---

[2]     The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]     The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"). NNSA was authorized to continue to operate as a going concern until completion of the sale of the GSM/GSM-R business. While NNSA's operations are now terminated, the French Proceedings are continuing and, in accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI and itself one of the Debtors, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the other Debtors' chapter 11 cases [D.I. 1099]. From time

---

[4]     Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Limited (the "Israeli Companies"), filed an application with the Tel-Aviv-Jaffa District Court (the "Israeli Court"), pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Companies under the Israeli Companies Law (the "Joint Israeli Administrators").

to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

B.  **Debtors' Corporate Structure and Business**

11. Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers. Nortel's technologies spanned access and core networks and supported multimedia and business-critical applications. Nortel's networking solutions consisted of hardware, software and services. Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

12. Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

C.  **Case Milestones**

13. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event it were unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the

---

[5] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632]. In addition, Nortel has obtained Court approval for the sale of certain assets of the Debtors' Multi-Service Switch (formerly known as "Passport") business to Ericsson [D.I. 4054]. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14. On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 p.m. (Eastern Time) as the general bar date for filing proofs of claim or interests against the Debtors (other than NN CALA) [D.I. 1280]. On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

15. On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580]. On September 3, 2010, the Debtors filed the Proposed Disclosure Statement for the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3874].

### Relief Requested

16. By this Application, the Debtors seek entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 327(a), 328(a), 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1: (i) authorizing the employment and retention of Benesch as lead and local counsel to the Debtors,

*nunc pro tunc* to September 17, 2010, to prosecute certain litigation disputes, including in circumstances where existing Debtors' counsel may have conflicts, including, *inter alia*, its representation as local counsel in Nortel Networks Inc. v. Communications Test Design, Inc., 10-53065 (KG) (Bankr. D. Del.), as well as lead counsel in an adversary proceeding that is likely to be commenced in the short term and as lead or local counsel in connection with additional litigation disputes (collectively, the "Litigation Matters"); (ii) approving the terms and conditions under which Benesch will be retained and compensated, as contained in that certain letter agreement, dated as of October 13, 2010 (the "Engagement Agreement"); and (iii) granting such other and further relief as the court deems just and proper.

### Basis For Relief

17. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

18. Under section 327 of the Bankruptcy Code, a debtor in possession may employ one or more professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons" to assist the debtor in possession in carrying out its duties under the Bankruptcy Code. 11 U.S.C. §327(a).

19. Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

20. Bankruptcy Rule 2014 requires that an application for retention of a professional include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a). Local Rule 2014-1 further requires that "[a]ny entity seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . . shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval." Del. Bankr. L. R. 2014-1(a).

21. By this application, the Debtors request that the Court approve the employment and retention of Benesch as set forth herein. The proposed retention of Benesch is beneficial to the Debtors' estates and the professional compensation arrangement provide certainty and proper inducement for Benesch to act expeditiously and prudently with respect to the matters for which it will be employed.

22. The Debtors also request approval of the employment of Benesch *nunc pro tunc* to September 17, 2010. Such relief is warranted by the extraordinary circumstances presented by these cases. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. See In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal dismissed, 909 F.2d 1476 (3d Cir. 1990). The complexity and intense activity that have characterized these cases have necessitated that the Debtors and their professionals focus their immediate attention on certain matters and promptly devote resources to the affairs of the Debtors pending submission and approval of this Application.

## Selection of Benesch and Scope of Services

23.  During the course of this bankruptcy proceeding, Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb") and Morris Nichols Arsht & Tunnell LLP ("Morris Nichols") (collectively, the "Firms") have acted as general bankruptcy counsel and Delaware bankruptcy counsel, respectively. The Debtors may commence certain litigation for which one or both Firms may be unable to act as counsel due to conflicts of interest or where it is more economical to utilize the services of Benesch. For such reasons, the Debtors file the instant Application.

24.  Benesch is well-suited to provide the type of legal services required by the Debtors. The Debtors seek to retain Benesch as their attorneys because of, among other reasons, the Firm's experience in and knowledge of business reorganizations, and in particular the Firm's knowledge of business reorganization litigation matters and adversary proceedings, such as the Litigation Matters. Benesch is well-suited to the type of representation required by the Debtors, as Benesch has extensive experience litigating bankruptcy disputes.

25.  Benesch will work with the Debtors and the Firms to ensure that legal services by each of the Firms as well as Benesch are provided in an efficient, cost-effective, non-duplicative manner, with Cleary Gottlieb being chiefly responsible for providing general bankruptcy counsel, and Benesch acting as special litigation counsel regarding certain discrete Litigation Matters. As of the filing of this Application, it is anticipated that Benesch shall be retained in connection with the discrete Litigation Matters. However, the Debtors (in consultation with the Firms and Benesch) may choose to use Benesch in additional matters, without further Order of the Court.

26.  Subject to the jurisdiction and further orders of this Court and pursuant to the Engagement Agreement, Benesch will render the following services to the Debtors:

   a.  Acting as lead counsel or Delaware counsel in the Litigation Matters;

   b.  Representing the Debtors before the Court or other state or federal courts in Delaware in the Litigation Matters; and

   c.  Negotiating settlements on behalf of the Debtors.

  27.  In order to pursue recovery in the Litigation Matters, it is essential and necessary that the Debtors retain counsel to render legal advice and provide legal services.

  28.  Benesch has indicated a willingness to act on behalf of the Debtors.

  29.  The Debtors propose to engage Benesch as lead litigation counsel and as local litigation counsel, as the case may be, in the Litigation Matters.

## Benesch's Disinterestedness

  30.  To the best of the Debtors' knowledge, and except as set forth herein and as disclosed in the Lemisch Declaration, annexed hereto as <u>Exhibit B</u>, the partners and associates of Benesch have not represented, and do not have any connection, with the Debtors, their creditors, their insiders, their shareholders, their respective attorneys or accountants, or any other parties in interest in any matters relating to the Debtors and their estates.

  31.  As disclosed in the Lemisch Declaration, Benesch currently represents certain of the Debtors' creditors and other parties in interest in matters wholly unrelated to these proceedings. Benesch has informed the Debtors of its ongoing representation of such entities, and the Debtors have consented to Benesch's continued representation of these entities in matters unrelated to these proceedings. The Debtors believe that Benesch's current and future representation of these entities will not in any way adversely affect Benesch's representation of the Debtors.

32. As further disclosed in the Lemisch Declaration, Benesch formerly represented (i) certain of the Debtors' creditors and other parties in interest in matters wholly unrelated to these proceedings and (ii) certain other clients in matters involving the Debtors. These matters are closed and Benesch no longer represents those clients in connection with those matters. Benesch has informed the Debtors of its past representation of such entities. The Debtors believe that Benesch's past representation of these entities will not in any way adversely affect their representation of the Debtors.

33. As set forth in the Lemisch Declaration:

    a. Neither Benesch nor any attorney at the Firm holds or represents an interest adverse to the Debtors' estates.

    b. Neither Benesch nor any attorney at the Firm is or was a creditor, an equity security holder or an insider of the Debtors.

    c. Neither Benesch nor any attorney at the Firm is or was, within two years before the Petition Date, a director, officer, or employee of the Debtors.

    d. No attorney at Benesch is related to any United States District Judge or United States Bankruptcy Judge for the District of Delaware or to the United States Trustee for such district or to any known employee in the office thereof.

34. To the best of the Debtors' knowledge and as disclosed in the Lemisch Declaration, Benesch does not hold or represent any interest adverse to the Debtors or their estates, Benesch is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and as required by

section 327(a) of the Bankruptcy Code, and Benesch's employment and retention by the Debtors is necessary and in the best interests of the Debtors and their estates.

35. Benesch will periodically review its files during the pendency of this retention to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Benesch will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration if needed, as required by Bankruptcy Rule 2014(a).

## Professional Compensation

36. Benesch intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of the Court, including this Court's February 4, 2009 Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and Reimbursement of Fees and Expenses for Professionals and Official Committee Members [Dkt. No. 222] (the "Interim Compensation Order"), and consistent with the proposed compensation arrangement set forth in the Engagement Agreement (the "Fee Structure").

37. Benesch and the Debtors have negotiated the terms of the Engagement Agreement, which reflect commercially reasonable compensation and employment terms. Thus, the Debtors request approval of the Engagement Letters, including the Fee Structure, and the expense reimbursement provisions pursuant section 328(a) of the Bankruptcy Code. The agreed-upon hourly rates for the Benesch professionals who will work on the Litigation Matters will initially include:

| | | |
|---|---|---|
| Partners: | Raymond H. Lemisch | $595.00 |
| | Michael J. Barrie | $395.00 |
| Associates: | Jennifer R. Hoover | $360.00 |
| | Jennifer Smith | $240.00 |
| | Matthew Samsa | $225.00 |
| Paralegal: | Elizabeth Hein | $230.00 |
| | Lisa Behra | $190.00 |

38. Benesch is customarily reimbursed for all expenses incurred by it in connection with the representation of a client in a given matter. Such expenses include, without limitation, travel costs, long distance calls, express mail, special or hand deliveries, copying costs, document processing, computerized legal research, court fees, expert fees, transcript costs and, in general, all identifiable expenses that would not have been incurred except for representation of a particular client. In addition, under the scope of its proposed employment, Benesch may require the retention of one or more experts who may or may not provide testimony in connection with the Litigation Matters.

## Notice

39. Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to (i) the U.S. Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

40. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court: (i) grant this Application and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: October 15, 2010
       Oakbrook Terrace, Illinois

By: /s/ John J. Ray, III
Title: Principal Officer, Nortel Networks Inc.

*For the Debtors and Debtors in Possession*