IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
: 
*In re*                                                   : Chapter 11
                                                          :
Nortel Networks Inc., *et al.*,[1]                        : Case No. 09-10138 (KG)
                                                          :
                Debtors.           : Jointly Administered
                                                          :
                                                          : Hearing date: November 23, 2010 at 10:00 p.m. (ET)
                                                          : Objections due: November 16, 2010 at 4:00 p.m. (ET)
----------------------------------------------------------X

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO ENTER INTO A SIDE AGREEMENT WITH RESPECT TO FEES PAYABLE TO LAZARD FRÈRES & CO. LLC AND (II) AUTHORIZING DEBTORS TO DIRECT THEIR ESCROW AGENTS TO RELEASE FUNDS TO NORTEL NETWORKS LIMITED FOR REIMBURSEMENT OF CERTAIN PROFESSIONAL FEES**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") for the entry of an order substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to enter into that certain Lazard Fees Side Agreement, the form of which is attached hereto as **Exhibit B** (the "Lazard Side Agreement"), by and among NNI, Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks UK Limited ("NNUK") and certain of their affiliates (together with NNI, NNC, NNL, NNUK and other parties to the Lazard Side Agreement, the "Parties") with respect to certain fees and expenses

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

owed to Lazard Frères & Co. LLC ("Lazard") by such Nortel entities, (ii) authorizing, but not directing, the Debtors to execute, jointly with other relevant parties, letters of direction to their escrow agents for certain escrow accounts holding sale proceeds, directing such agents to release funds to NNL for reimbursement of the Carve-out Financial Fees (as defined below), and (iii) granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## Background

A. **Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b), which provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL (together with NNC and their affiliates, including the Debtors,

"Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.  On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.  On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"). NNSA was authorized to continue to operate as a going concern until completion of the sale of the GSM/GSM-R business. While NNSA's operations are now terminated, the French Proceedings are continuing and, in

---

[2]  The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]  The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 26, 2009, this Court entered an order recognizing the English Proceedings of NNUK as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI and itself one of the Debtors, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural propose [D.I. 1098], and applying to NN CALA certain previously entered orders in the other Debtors' chapter 11 cases [D.I. 1099]. From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

---

[4]     Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Limited (the "Israeli Companies"), filed an application with the Tel-Aviv-Jaffa District Court (the "Israeli Court"), pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Companies under the Israeli Companies Law (the "Joint Israeli Administrators").

4

B.  **Debtors' Corporate Structure and Business**

11. Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers. Nortel's technologies spanned access and core networks and supported multimedia and business-critical applications. Nortel's networking solutions consisted of hardware, software and services. Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

12. Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

C.  **Case Milestones**

13. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event it were unable to maximize value through sales (such transactions, including without limitation the asset sale transactions listed herein, the "Sale Transactions"). To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the

---

[5] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632]. In addition, Nortel has obtained Court approval for the sale of certain assets of the Debtors' Multi-Service Switch (formerly known as "Passport") business to Ericsson [D.I. 4054]. From time to time the Debtors have and may continue to sell, transfer and assign their interests in other assets as efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14. On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 p.m. (Eastern Time) as the general bar date for filing proofs of claim or interests against the Debtors (other than NN CALA) [D.I. 1280]. On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

15. On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580]. On September 3, 2010, the Debtors filed the Proposed Disclosure Statement for the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3874].

### Relief Requested

16. By this Motion, the Debtors seek an order (i) authorizing, but not directing, the Debtors to enter into and to perform under the Lazard Side Agreement, (ii) authorizing, but not directing, the Debtors to execute, jointly with other relevant parties, letters of direction to their escrow agents for certain escrow accounts holding sale proceeds, directing such agents to release

funds to NNL for reimbursement of the Carve-out Financial Fees (as defined below), and (iii) granting them such other and further relief as the Court deems just and proper.

**Facts Relevant to this Motion**

A. **Lazard's Retention and Amended Fee Structure**

17. On February 13, 2009, the Debtors filed the Application for an Order Authorizing Employment and Retention of Lazard Frères & Co. LLC *Nunc Pro Tunc* to the Petition Date as Financial Advisor and Investment Banker for the Debtors and Debtors in Possession [D.I. 294] (the "Original Application").

18. On March 20, 2009, the Court entered an Order under Sections 327 and 328 of the Bankruptcy Code Authorizing Retention and Employment of Lazard Frères & Co. LLC as Financial Advisor and Investment Banker to the Debtors *Nunc Pro Tunc* to the Petition Date [D.I. 507] (the "Original Retention Order"). The Original Retention Order approved a fee structure, as set out in that certain letter agreement dated March 16, 2009, attached as Exhibit A thereto (the "Engagement Agreement"). The fee structure included a monthly fee of $250,000 (the "Monthly Fee") and certain other transaction fees as well as reimbursement of all reasonable expenses. The Engagement Agreement signatories include Lazard and NNC, on behalf of itself and its subsidiaries, including without limitation NNI.

19. On February 9, 2010, the Debtors filed an Application for Entry of an Order Approving an Amendment to the Terms of Compensation of Lazard Frères & Co. LLC as Financial Advisor and Investment Banker to the Debtors [D.I. 2397] (the "Amended Application").

20. On February 26, 2010, the Court entered an Order Approving an Amendment to the Terms of Compensation of Lazard Frères & Co. LLC as Financial Advisor and Investment Banker for the Debtors and Debtors in Possession [D.I. 2561] (the "Amended Retention Order").

The Amended Retention Order approved certain changes to Lazard's fee structure (as amended by the Amended Retention Order, the "Amended Fee Structure"). These changes include, but are not limited to:[6]

a. removing the Fee Cap;

b. authorizing the Debtors to pay either the Restructuring/Breakup Fee or the Sale Transaction Fee, but not both;

c. altering the Engagement Agreement to include a new Section 3(d)(C) to allow for a potential payment of the IP Transaction Fee to Lazard;

d. clarifying that multiple Minority Sale Transaction Fees may be paid and the aggregate amount of those Fees may exceed $15 million, but that the maximum amount of Minority Sale Transaction Fees that may be paid to Lazard in respect of transactions that have received the Court's approval prior to February 1, 2010 is $15 million; and

e. crediting the Monthly Fees as follows:

(i) One-half of each Monthly Fee that becomes payable on or after July 1, 2009 but before January 1, 2011, and is paid thereafter, will be credited against any Restructuring/Breakup Fee, Sale Transaction Fee, Minority Sale Transaction Fee or IP Transaction Fee that becomes due and payable under the Engagement Agreement, as amended by the Amended Retention Order; and

(ii) One-hundred percent of each Monthly Fee that becomes payable on or after January 1, 2011, and is paid thereafter, will be credited against any Restructuring/Breakup Fee, Sale Transaction Fee, Minority Sale Transaction Fee or IP Transaction Fee that becomes due and payable under the Engagement Agreement, as amended by the Amended Retention Order.

**B.    History of Payment and Allocation of Lazard's Fees**

21.    Since prior to the commencement of these chapter 11 cases, NNC and its subsidiaries, including the Debtors, have engaged Lazard as financial advisor and investment

---

[6] Capitalized terms used in this section but not defined herein have meanings ascribed to them in the Amended Application. The summary of the Amended Retention Order and Amended Fee Structure set forth in this Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied on as such. In the event there is inconsistency between this section and the Amended Retention Order, the Amended Retention Order shall control in all respects.

banker to assist with the evaluation of strategic alternatives and to render investment banking and financial advisory services to Nortel.

22. In the Original Application, the Debtors agreed to pay Lazard's fees and expenses, but the Debtors expressly reserved their rights to seek contribution or allocation of Lazard's fees and expenses from the other various Nortel entities that also benefited from Lazard's services. From January 2009 to July 2010, Lazard accumulated approximately $5,002,481.04 in approved Monthly Fees and reimbursable expenses, 100% of which has been paid by NNI. In addition, as described more fully below, Lazard filed its fee applications for the Minority Sale Transaction Fees with respect to five of the Sale Transactions, all of which have been approved by the Court.

23. Since the commencement of these chapter 11 cases, the Parties have contemplated an allocation among the various Nortel entities of Lazard's fees and expenses, as reiterated in the various Sale Side Agreements (as defined below). On August 4, 2009, the Court entered an Order approving the Enterprise Solutions Business Side Agreement [D.I. 1279]. On March 3, 2010, the Court entered an Order approving the Metro Ethernet Networks Side Agreement [D.I. 2627]. On May 24, 2010, the Court entered an Order approving the GSM/GSM-R Side Agreement [D.I. 3046] (together with the Enterprise Solutions Business Side Agreement and the Metro Ethernet Networks Side Agreement, the "Sale Side Agreements"). The Sale Side Agreements contemplate that Lazard's fees are part of the total payments that the Selling Parties (as defined in the respective Sale Side Agreements), including the Debtors, the Canadian Debtors, and the EMEA Debtors, will bear as a result of each of the respective Sale Transactions. The Sale Side Agreements anticipate that such fees will be paid out of the respective sale proceeds escrow accounts.

24. On February 25, 2010, Lazard filed: (i) the Eighth Monthly Application of Lazard Frères & Co. LLC for Allowance of Compensation and Reimbursement of Expenses for the Period November 1, 2009 through November 30, 2009 [D.I. 2548] (the "Eighth Monthly Application"); (ii) the Ninth Monthly Application of Lazard Frères & Co. LLC for Allowance of Compensation and Reimbursement of Expenses for the Period December 1, 2009 through December 31, 2009 [D.I. 2550] (the "Ninth Monthly Application"); and (iii) the Fourth Quarterly Application of Lazard Frères & Co. LLC for Allowance of Compensation and Reimbursement of Expenses for the Period of November 1, 2009 through January 31, 2010 [D.I. 2551]. As part of the Eighth Monthly Application and the Ninth Monthly Application, Lazard requested payment of the Minority Sale Transaction Fees for the sale of the Debtors' CDMA assets and Enterprise assets, respectively. Prior to the entry of the Fourth Omnibus Order Allowing Certain Professionals Interim Compensation for Services Rendered and Reimbursement of Expenses, Lazard agreed to adjourn the hearing on the Minority Sale Transaction Fees to allow the Debtors to confer with the various Nortel entities regarding the collective satisfaction of Lazard's fees and expenses. As a result of those discussions, the Parties agreed that the Minority Sale Transaction Fees for the CDMA and Enterprise sales should be paid from the escrow accounts holding the sale proceeds from the CDMA and Enterprise sale transactions, respectively.[7]

25. On March 31, 2010, the Court entered the Supplemental Fourth Omnibus Order Allowing Certain Professionals Interim Compensation for Services Rendered and

---

[7] The CDMA escrow was established pursuant to the *Order Pursuant to 11 U.S.C. § 105(a) and § 363(b) (a) Approving the Debtors' Entry into the CDMA Escrow Agreement and (b) Granting Related Relief* [D.I. 1889]. The Enterprise escrow was established pursuant to the *Order Pursuant to 11 U.S.C. §105(a) and §363(b) (a) Approving the Debtors' Entry into the Enterprise Solutions Business Escrow Agreement and (b) Granting Related Relief* [D.I. 2167].

10

Reimbursement of Expenses [D.I. 2812] (the "Supplemental Lazard Fees Order").[8]  By the Supplemental Lazard Fees Order, the Court authorized the Debtors:  (i) to direct J.P. Morgan Chase Bank N.A., the escrow agent for the CDMA Escrow, to release and pay to Lazard from the CDMA Escrow the amount of the CDMA Minority Sale Transaction Fee; and (ii) to direct J.P. Morgan Chase Bank N.A., the escrow agent for the Enterprise Escrow, to release and pay to Lazard from the Enterprise Escrow the amount of the Enterprise Minority Sale Transaction Fee.

26.    On June 3, 2010, Lazard filed:  (i) the Twelfth Monthly Application of Lazard Frères & Co. LLC for Allowance of Compensation and Reimbursement of Expenses for the Period March 1, 2010 through March 31, 2010 [D.I. 3140] (the "Twelfth Monthly Application"); and (ii) the Fifth Quarterly Application of Lazard Frères & Co. LLC for Allowance of Compensation and Reimbursement of Expenses for the Period of February 1, 2010 through April 30, 2010 [D.I. 3144].  As part of the Twelfth Monthly Application, Lazard requested payment of the Minority Sale Transaction Fees for the sale of the Debtors' MEN assets and GSM/GSM-R assets.

27.    On June 28, 2010, the Court entered the Fifth Omnibus Order Allowing Certain Professionals Interim Compensation for Services Rendered and Reimbursement of Expenses [D.I. 3217] (the "Fifth Omnibus Fees Order").[9]  By the Fifth Omnibus Fees Order, the Court authorized the Debtors:  (i) to direct J.P. Morgan Chase Bank N.A., the escrow agent for the MEN Escrow, to release and pay to Lazard from the MEN Escrow the amount of the MEN Minority Sale Transaction Fee; and (ii) to direct J.P. Morgan Chase Bank N.A., the escrow agent

---

[8]    Capitalized terms used in this paragraph but not defined herein have meanings ascribed to them in the Supplemental Lazard Fees Order.

[9]    Capitalized terms used in this paragraph but not defined herein have meanings ascribed to them in the Fifth Omnibus Fees Order.

for the GSM Escrow, to release and pay to Lazard from the GSM Escrow the amount of the GSM Minority Sale Transaction Fee.[10]

28. On September 10, 2010, Lazard filed: (i) the Fourteenth Monthly Application of Lazard Frères & Co. LLC for Allowance of Compensation and Reimbursement of Expenses for the Period May 1, 2010 through May 31, 2010 [D.I. 3917] (the "<u>Fourteenth Monthly Application</u>"); and (ii) the Sixth Quarterly Application of Lazard Frères & Co. LLC for Allowance of Compensation and Reimbursement of Expenses for the Period of May 1, 2010 through July 31, 2010 [D.I. 3920]. As part of the Fourteenth Monthly Application, Lazard requested payment of the Minority Sale Transaction Fees for the sale of the Debtors' CVAS business assets.

29. On September 30, 2010, the Court entered the Sixth Omnibus Order Allowing Certain Professionals Interim Compensation for Services Rendered and Reimbursement of Expenses [D.I. 4048] (the "<u>Sixth Omnibus Fees Order</u>").[11] By the Sixth Omnibus Fees Order, the Court authorized the Debtors, among other things, to pay Lazard the CVAS Minority Sale Transaction Fee upon the satisfaction of certain conditions set forth in the Amended Retention Order, without any further Court approval.

C.    **The Lazard Side Agreement**

30. As a result of the Amended Fee Structure and the fact that the allocation of proceeds from the various Sale Transactions has not yet been determined, the Parties negotiated

---

[10] The MEN Escrow was established with respect to the MEN sale transaction pursuant to the *Order Authorizing and Approving (A) Sale of Certain Assets of the Debtors' Metro Ethernet Networks Business Free and Clear of All Liens, Claims and Encumbrances and (B) Assumption of Assignment of Certain Executory Contracts* [D.I. 2070]. The GSM Escrow was established with respect to the GSM/GSM-R sale transaction pursuant to the *Order Authorizing and Approving Sale of Debtors' GSM/GSM-R Free and Clear of All Liens, Claims and Encumbrances* [D.I. 2065].

[11] Capitalized terms used in this paragraph but not defined herein have meanings ascribed to them in the Sixth Omnibus Fees Order.

the Lazard Side Agreement attached hereto as **Exhibit B**, to address certain issues among the Parties raised by the Lazard's fee structure and to allow Lazard's fees and expenses to be paid on a timely basis.

 31. The key terms of the Lazard Side Agreement are as follows: [12]

  a. <u>Monthly Fees and Expense Reimbursement to NNI</u>. On the Applicable Reimbursement Date, NNI will be reimbursed for the payment of the Monthly Fees and Lazard's expenses from the relevant Sale Proceeds Escrow Account as set forth in Schedule E attached to the Lazard Side Agreement, <u>provided</u> that in the event that a Reorganized IP Company is established, then the IP-Related Monthly Fees will be borne by each Party in proportion to such Party's IP Company Interest;

  b. <u>Minority Sale Transaction Fees</u>. On the Applicable Reimbursement Date, the relevant Parties to the Lazard Side Agreement will cause the escrow agent of the relevant Sale Proceeds Escrow Account to pay Lazard from such Escrow Account in accordance with Schedule F attached to the Lazard Side Agreement;

  c. <u>IP Transaction Fee</u>. The IP Transaction Fee (as defined in the Amended Retention Order), if any, will be borne by each Party in proportion to such Party's IP Company Interest; and

  d. <u>Other Lazard Payments</u>. The Other Lazard Payments will be borne by each Party on an overall weighted average basis in proportion to the amount of the aggregate sale proceeds allocated to such Party from each Global Sale.

**D.**   **Retention of PwC and KPMG**

 32. In anticipation of, and with respect to, the Sale Transactions, PricewaterhouseCoopers LLP ("<u>PwC</u>") and KPMG LLP ("<u>KPMG</u>") were retained by the Canadian Debtors to provide certain professional services necessary to facilitate the Sale Transactions.

---

[12]   Capitalized terms used in this section but not defined herein have meanings ascribed to them in the Side Agreement unless otherwise noted. To the extent there are inconsistencies between the description of the provisions of the Side Agreement contained in this Motion and the terms and conditions of the Side Agreement, the Side Agreement shall control in all respects.

33. In particular, PwC conducted audits, prepared carve-out financial statements, and provided other related services on a transaction-by-transaction basis with respect to (i) the sale of substantially all of Nortel's CDMA business and LTE Access assets, (ii) the sale of substantially all of the assets of Nortel's Enterprise Solutions business, (iii) the sale of substantially all the assets of Nortel's Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit, (iv) the sale of substantially all of Nortel's GSM/GSM-R business, (v) the sale of certain assets of Nortel's Carrier voice Over IP and Application Solutions business, and (vi) the sale of certain assets of Nortel's Multi-Service Switch business. This work, in particular the preparation of the carve-out financial statements, was required for each Sale Transaction to close. With respect to such services, PwC invoiced the Canadian Debtors, and the Canadian Debtors paid, a total of US$17,626,849.00 in professional fees and related expenses (such fees and expenses, the "PwC Fees"). A letter from Geoff Leverton, a partner of PwC, to David Glass of NNL, dated October 29, 2010, which provides a breakdown of the PwC Fees, is attached hereto as **Exhibit C**.[13]

34. KPMG conducted audits, prepared carve-out financial statements, and provided other related services on a transaction-by-transaction basis with respect to (i) the sale of substantially all of the assets of Nortel's Enterprise Solutions business, (ii) the sale of substantially all the assets of Nortel's Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit, and (iii) the sale of certain assets of Nortel's Carrier voice Over IP and Application Solutions business. This work, in particular the preparation of the carve-out financial statements, was required for each Sale Transaction to close. With respect to such services, KPMG invoiced the Canadian Debtors, and the Canadian Debtors

---

[13] Voluminous invoices providing backup to these letters from PwC and KPMG are available upon request, and will be provided to the U.S. Trustee.

paid, a total of US$12,553,529.00 in professional fees and related expenses (such fees and expenses, the "KPMG Fees," and together with the PwC Fees, the "Carve-out Financial Fees"). A letter from KPMG to Greg Boone at NNL, dated November 2, 2010, which provides a breakdown of the KPMG Fees, is attached hereto as **Exhibit D**.

E.   **Allocation of PwC and KPMG Fees**

35.   As set forth in certain of the Sale Side Agreements, the Parties contemplated that the Carve-out Financial Fees would be allocated in accordance with the overall allocation of the sale proceeds from the Sale Transactions. For example, the Metro Ethernet Networks Side Agreement and the GSM/GSM-R Side Agreement contemplate that the Carve-out Financial Fees are part of the total payments that the Selling Parties (as defined in the respective Sale Side Agreements), including the Debtors, the Canadian Debtors, and the EMEA Debtors, will bear as a result of the respective sale transaction. In addition, the Final Canadian Funding and Settlement Agreement approved by the Court by Order dated January 26, 2010 [D.I. 2347], contemplates that such Carve-out Financial Fees would be treated as part of the "M&A Costs" to be reimbursed out of the escrow accounts for the relevant Sale Transactions. Accordingly, the Debtors agreed, in agreements approved by this Court, that the Carve-out Financial Fees, similar to the fees and expenses owed to Lazard, would be paid or reimbursed out of the escrow accounts for the relevant Sale Transactions.

36.   The Debtors requested back-up information from each of PwC and KPMG to confirm the extent of the work performed on each Sale Transaction, the hours worked by the professionals, the seniority level of professionals involved in providing such services and the billing rates of the relevant professionals.

**F.      The Debtors' directive to the relevant escrow agent**

37.     Under the terms of each of the escrow agreements that the Debtors have entered into in connection with the Sale Transactions, the escrow agent for the escrow account holding the sale proceeds will release the sale proceeds from the escrow funds only if so instructed by a letter of direction jointly executed by the depositors, including the relevant Debtors, the Committee and the Monitor (with certain exceptions that are irrelevant for purposes of this Motion).  By this Motion, the Debtors request an order, among other things, authorizing, but not directing, the Debtors to execute, jointly with other relevant parties, letters of direction to the escrow agents for certain escrow accounts holding sale proceeds, directing such agents to release funds to NNL for reimbursement of the Carve-out Financial Fees, and execute other necessary or proper documents.

## Basis for Relief

38.     The relief requested in this Motion is authorized by sections 105(a) and 363(b) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.  See In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105(a) of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings."); In re VII Holdings Co., 362 B.R. 663, 668 (Bankr. D. Del. 2007) (BLS) (noting that "[s]ection 105(a) bestows broad equitable powers on the Court.") (citing In re Combustion Engineering, Inc., 391 F.3d at 236).

39.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease property of the estate outside of the ordinary course of business after notice and a hearing.  11

U.S.C. § 363. Section 363 applies when an agreement involves the disposition of the estate's assets in a way that ventures beyond an ordinary course transaction. <u>Myers v. Martin (In re Martin)</u>, 91 F.3d 389, 395 (3d Cir. 1996).

40.     The use or transfer of estate property under section 363 of the Bankruptcy Code must be supported by a sound business purpose. <u>Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 722 F.2d 1063, 1070-71 (2d Cir. 1983); <u>Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)</u>, 242 B.R. 147, 153 (D. Del. 1999); <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. 169, 176 (D. Del. 1991); <u>Travelers Cas. & Sur. Co. v. Future Claimants Representative</u>, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008); <u>In re Decora Indus., Inc.</u>, No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." <u>In re Montgomery Ward</u>, 242 B.R. at 153-54 (quoting <u>In re Lionel</u>, 722 F.2d at 1071). In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided, and that it is receiving fair and reasonable value in exchange. See <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. at 176; <u>In re Decora Indus., Inc.</u>, 2002 WL 32332749, at *2.

41.     The Debtors respectfully submit that both the Lazard Side Agreement and proposed reimbursement to NNL of the Carve-out Financial Fees meet each of the requirements under section 363 of the Bankruptcy Code. Both the Lazard Side Agreement and the proposed reimbursement of the Carve-out Financial Fees reflect a treatment of the fees and expenses owed to Lazard and the Carve-out Financial Fees previously agreed by the Debtors (and approved by

this Court) in accordance with their sound business judgment in order to facilitate cooperation amongst the Parties in working towards completion of the very successful Sale Transactions. To refuse to reimburse NNL for the Carve-out Financial Fees or to pay Lazard would constitute a breach of such agreements and would greatly impede the Debtors' ability to reach a resolution on the allocation of the proceeds from the Sale Transactions. Moreover, Lazard continues to play an important role in the Debtors' continued restructuring efforts and payment for their valuable services should occur before the year end.

## Notice

42. Notice of the Motion has been given via hand delivery or first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

43. No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto as **Exhibit A**; and (iii) grant such other and further relief as it deems just and proper.

Dated:  November 2, 2010
          Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*