## EXHIBIT B

**Lazard Side Agreement**

# LAZARD FEES SIDE AGREEMENT

This LAZARD FEES SIDE AGREEMENT (the "**Agreement**") is dated as of [●], 2010, and entered among the following parties:

(a)     Nortel Networks Corporation, a corporation organized under the laws of Canada ("**NNC**") and certain of its affiliates as set forth in Schedule A hereto (collectively, the "**Canadian Debtors**");

(b)     Nortel Networks Inc., a corporation organized under the laws of Delaware ("**NNI**") and certain of its affiliates as set forth in Schedule B hereto (collectively, the "**U.S. Debtors**");

(c)     Nortel Networks UK Limited (In Administration), a corporation organized under the laws of England and Wales ("**NNUK**") and certain of its affiliates as set forth in Schedule C hereto (collectively, the "**EMEA Debtors**"), which are acting by their joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP of 1 More London Place, London SE1 2AF (other than Nortel Networks (Ireland) Limited (In Administration) ("**NN Ireland**"), for which David Hughes of Ernst & Young Chartered Accountants of Harcourt Centre, Harcourt Street, Dublin 2, Ireland and Alan Robert Bloom serve as joint administrators) (collectively, the "**Joint Administrators**"), who act as agents for the EMEA Debtors without any personal liability whatsoever;

(d)     Nortel Networks Israel (Sales and Marketing) Limited (In Administration) ("**Nortel Israel**"), which is acting by its joint administrators Yaron Har-Zvi and Avi D. Pelossof (the "**Joint Israeli Administrators**"), who act as agents of Nortel Israel without any personal liability whatsoever;

(e)     Nortel Networks S.A. (In Administration) ("**NNSA**"), a corporation incorporated under the laws of France, represented by Maître Cosme Rogeau, 26, avenue Hoche, 78000 Versailles as the "Liquidateur Judiciaire" and Maître Franck Michel, partner of Selarl F. Michel – A. Miroitte – C. Gorins, 10 Allée Pierre de Coubertin, 78000 Versailles as the "Administrateur Judiciaire" (collectively, the "**NNSA Office Holders**"), who act as agents for NNSA without any personal liability whatsoever;

(f)     certain non-filed affiliates of NNC as set forth in Schedule D hereto (the "**Non-Filed Sellers**", and, together with the Canadian Debtors, the U.S. Debtors, the EMEA Debtors, Nortel Israel and NNSA, "**Nortel**");

(g)     the Joint Administrators;

(h)     the Joint Israeli Administrators; and

(i)     the NNSA Office Holders.  The Canadian Debtors, the U.S. Debtors, the EMEA Debtors, Nortel Israel, NNSA, the Non-Filed Sellers, the Joint Administrators, the Joint

Israeli Administrators and the NNSA Office Holders are referred to herein each as a "**Party**" and collectively as the "**Parties**").

The Joint Administrators, in their individual capacity, shall be party to this Agreement solely for the purposes of Sections 3.1, 3.8 and 3.9. The Joint Israeli Administrators, in their individual capacity, shall be party to this Agreement solely for the purposes of Sections 3.2, 3.8 and 3.9. The NNSA Office Holders, in their individual capacity, shall be party to this Agreement solely for the purposes of Sections 3.3, 3.8 and 3.9.

W I T N E S S E T H :

WHEREAS, on January 14, 2009 (the "**Petition Date**"), the Canadian Debtors commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**") under the Companies' Creditors Arrangement Act (Canada) (the "**CCAA**") (together with any formal insolvency proceedings commenced in Canada in respect of any Canadian Debtor, the "**Canadian Proceedings**"), in connection with which Ernst & Young Inc. was appointed as monitor (the "**Monitor**");

WHEREAS, the U.S. Debtors filed petitions in the United States Bankruptcy Court for the District of Delaware (the "**U.S. Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (respectively, the "**U.S. Bankruptcy Code**" and the "**US Proceedings**");

WHEREAS, the EMEA Debtors on the Petition Date filed applications with the High Court of Justice in London, England (the "**English Court**") pursuant to the Insolvency Act 1986 and the Insolvency Rules 1986 (as amended) (the "**Insolvency Act**") and the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings (the "**UK Proceedings**" and, together with the Canadian Proceedings, the US Proceedings and any other insolvency proceedings with respect to any other Nortel entity, the "**Creditor Protection Proceedings**") and the English Court appointed the Joint Administrators under the Insolvency Act;

WHEREAS, the Tel-Aviv-Jaffa District Court (the "**Israeli Court**"), on January 19, 2009, granted Nortel Israel with a stay of proceedings order and nominated the Joint Israeli Administrators as joint administrators of Nortel Israel. On November 24, 2009, as part of such stay of proceedings, the Israeli Court approved a creditors' arrangement in connection with Nortel Israel, and further approved at a later date, the continuation of all relevant rights, duties and obligations of the Joint Israeli Administrators pursuant to such stay of proceedings order;

WHEREAS, while the administration proceedings in respect of NNSA under the Insolvency Act are continuing, subsequent to the Petition Date, NNSA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which the NNSA Office Holders were appointed by the Versailles Commercial Court (the "**French Court**") (Docket No. 2009P00492) for NNSA;

WHEREAS, as of the date hereof, the Non-Filed Sellers are not subject to any insolvency, bankruptcy or other creditor protection proceedings;

WHEREAS, the Official Committee of Unsecured Creditors appointed in the US Proceedings (the "**Creditors' Committee**"), the members of the ad hoc group of bondholders that have executed confidentiality or non-disclosure agreements with NNL (the "**Bondholders Group**") and the Monitor each support the entry by the Canadian Debtors and the U.S. Debtors into this Agreement;

WHEREAS, subsequent to the commencement of the Creditor Protection Proceedings, Nortel, in consultation with its various creditor constituencies, has completed the CDMA Sale Transaction, the Enterprise Sale Transaction, the MEN Sale Transaction, the GSM/GSM-R Sale Transaction and the CVAS Sale Transaction, is in the process of completing the Passport Sale Transaction, and is considering the possibility of an IP Sale Transaction (each as defined below and each such transaction, a "**Global Sale**");

WHEREAS, pursuant to the Lazard Engagement Agreement, Nortel has retained Lazard Frères & Co. LLC ("**Lazard**") as its financial advisor and investment banker to assist with the Global Sales, where the "**Lazard Engagement Agreement**" means that certain letter agreement, dated March 16, 2009, among, inter alia, Lazard, NNC and NNI, as amended by that certain Order Approving an Amendment to the Terms of Compensation of Lazard Frères & Co. LLC as Financial Advisor and Investment Banker for the Debtors and Debtors in Possession, dated February 26, 2010, by the U.S. Bankruptcy Court, and as amended from time to time; and

WHEREAS, the Parties have agreed to share any Lazard Payments in accordance with the terms of this Agreement, where "**Lazard Payments**" means any and all payments made to Lazard in accordance with the terms of the Lazard Engagement Agreement.

NOW, THEREFORE, in consideration of the respective covenants made herein, and of the mutual benefits to be derived hereby (the sufficiency of which are acknowledged), the Parties hereto agree as follows:

ARTICLE I

INTERPRETATION

SECTION 1.1.  Definitions

(a)      To the extent capitalized words used herein (including in the recitals hereof) are not defined in this Agreement, those words shall have the meaning given to them in the Lazard Engagement Agreement.

(b)      The following capitalized terms shall have the meanings set forth below:

(i)      "**CDMA Sale Transaction**" means the sale of all or substantially all of Nortel's CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ).

3

(ii)    "**CVAS Sale Transaction**" means the sale of all or substantially all of Nortel's Carrier Voice Over IP and Application Solutions business to GENBAND, Inc.

(iii)    "**Enterprise Sale Transaction**" means the sale of all or substantially all of Nortel's Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd., to Avaya Inc.

(iv)    "**GSM/GSM-R Sale Transaction**" means the sale of all or substantially all of Nortel's GSM/GSM-R business to Telefonaktiebolaget LM Ericsson (publ) and Kapsch CarrierCom AG.

(v)    "**IP-Related Monthly Fee**" shall have the meaning ascribed to such term in Schedule E to this Agreement.

(vi)    "**IP Sale Transaction**" means the sale of all or substantially all of Nortel's intellectual property assets to a third party buyer (for the avoidance of doubt, the transfer of Nortel's intellectual property assets to the Reorganized IP Company shall not constitute an IP Sale Transaction).

(vii)    "**MEN Sale Transaction**" means the sale of all or substantially all of Nortel's Optical Networking and Carrier Ethernet businesses associated with Nortel's Metro Ethernet Networks business unit to Ciena Corporation.

(viii)    "**Passport Sale Transaction**" means the sale of all or substantially all of Nortel's Multi-Service Switch Business to a third party buyer.

SECTION 1.2.  Interpretation.

1.2.1.  Gender and Number.  Any reference in this Agreement to gender includes all genders and words importing the singular include the plural and vice versa.

1.2.2.  Certain Phrases and Calculation of Time.  In this Agreement, the words "including" and "includes" mean "including (or includes) without limitation" and the terms "hereof," "herein," and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement and not to any particular provision of this Agreement, and Section and Schedule references are to the Sections and Schedules to this Agreement unless otherwise specified.

1.2.3.  Headings, etc.  The division of this Agreement into Articles and Sections and the insertion of headings are for convenient reference only and are not to affect or be used in the construction or interpretation of this Agreement.

1.2.4.  Allocation under this Agreement.  To the extent that any other agreement or understanding by and among any or all of the Parities with respect to allocation of any Lazard

4

Payments is inconsistent with this Agreement, this Agreement shall govern, but only to the extent of such inconsistency.

ARTICLE II

COVENANTS

SECTION 2.1. <u>Monthly Fees</u>.  The Parties hereby acknowledge and agree that NNI, on behalf of Nortel, has paid and shall continue to pay the Monthly Fees and other expenses payable under section 3(h) of the Lazard Engagement Agreement ("**Expenses**") to Lazard as such fees and expenses become due and payable in accordance with the terms of the Lazard Engagement Agreement and as approved by the U.S. Bankruptcy Court.  On each Applicable Reimbursement Date (as defined below), NNI shall be reimbursed for the payment of the Monthly Fees and Expenses from the relevant escrow account holding the sale proceeds of the relevant Global Sale as set forth in <u>Schedule E</u> attached to this Agreement (each such escrow account, the "**Sale Proceeds Escrow Account**"), and the relevant Parties hereby agree to cause the escrow agent of the relevant Sale Proceeds Escrow Account to pay NNI from such Escrow Account in accordance with <u>Schedule E</u>, <u>provided</u> that in the event that a Reorganized IP Company (as defined below) is established, then the IP-Related Monthly Fee and related Expenses shall be borne by each Nortel entity in proportion to such Party's interest, if any and in whatever form such interest may take (the "**IP Company Interest**"), in the Reorganized IP Company and such payment shall be made to NNI on the date of the transfer of Nortel's intellectual property assets to the Reorganized IP Company.  In the event that the Passport Sale Transaction fails to consummate prior to the final allocation of proceeds from the consummated Global Sales pursuant to the terms of that certain Interim Funding and Settlement Agreement, dated June 9, 2009, then the Parties shall negotiate (acting in good faith and with the consent of the Monitor, the Creditors' Committee and the Bondholders Group) to revise the amounts set forth in <u>Schedule E</u>.  To the extent the Parties fail to agree to such revision of <u>Schedule E</u>, such revision of <u>Schedule E</u> shall be determined by the U.S. Bankruptcy Court and the Canadian Court (in a joint hearing conducted under the cross-border protocol adopted by such courts, as it may be in effect from time to time (the "**Cross-Border Protocol**")).  In the event that the term of the Lazard Engagement Agreement is terminated on a date later than December 31, 2010, then the Monthly Fees and Expenses attributable to the period after December 31, 2010, shall be added to the amount of $1,026,315.20 and constitute the "**IP-Related Monthly Fee**" as set forth on Schedule E.  For the purposes of this Agreement, the "**Applicable Reimbursement Date**," with respect to each Global Sale, means (a) for the Global Sales that have been consummated as of the date hereof, three (3) days from the date hereof, and (b) for all other Global Sales that have not been consummated as of the date hereof, on the date of the consummation of such Global Sale.

SECTION 2.2. <u>Minority Sale Transaction Fees</u>.  On the Applicable Reimbursement Date for each Global Sale, the relevant Parties hereby agree to cause the escrow agent of the relevant Sale Proceeds Escrow Account to pay Lazard from such escrow account in accordance with <u>Schedule F</u> attached to this Agreement.  The Parties further agree that the Minority Sale Transaction Fees so paid will be allocated among the Global Sales as further set forth in <u>Schedule F</u>.

5

SECTION 2.3.  IP Transaction Fee.  The IP Transaction Fee (if any) shall be borne by each Nortel entity in proportion to such Party's IP Company Interest in the Reorganized IP Company, where "**Reorganized IP Company**" means that certain reorganized entity provided for, utilized or relied upon by the confirmed plan of reorganization and/or sanctioned plan of compromise and arrangement in consummating a restructuring and reorganization around all or substantially all of Nortel's intellectual property assets.

SECTION 2.4.  Other Lazard Payments.  The Parties hereby agree that the aggregate Other Lazard Payments, shall be borne by each Nortel entity on an overall weighted average basis in proportion to the amount of the aggregate sale proceeds allocated to such Nortel entity from each Global Sale, where "**Other Lazard Payment**" means any Lazard Payment other than any payment relating to a Monthly Fee, Minority Sale Transaction Fee, IP-Related Monthly Fee and IP Transaction Fee, in each case, together with related Expenses.

ARTICLE III

MISCELLANEOUS

SECTION 3.1.  Exclusion of Liability and Acknowledgments re Joint Administrators and Directors of EMEA Non-Filed Sellers.

(a)    The Parties agree that (i) the Joint Administrators have negotiated and are entering into this Agreement as agents for the EMEA Debtors to which they are appointed and that none of the Joint Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any other Party to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations; and (ii) the directors of the EMEA Non-Filed Sellers shall not incur any personal liability whatsoever, in their capacity as such directors, in respect of the authorization, execution, delivery or performance of this Agreement, howsoever arising other than in respect of fraud by any such director.

(b)    The Joint Administrators are a party to this Agreement:  (i) as agents of each of the EMEA Debtors of which they are administrators; and (ii) in their own capacities solely for (1) taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the Insolvency Act, (2) obtaining the benefit of any provisions of this Agreement expressed to be conferred on them, (3) enforcing the obligations of the other Parties to this Agreement and (4) for the purposes of Sections 3.1, 3.8 and 3.9.

(c)    Notwithstanding anything in Section 3.8, any claim, action or proceeding against the Joint Administrators arising from or related to (i) the personal liability of the Joint Administrators, their firm or partners, employees, advisers, representatives or agents, (ii) their qualification to act as insolvency practitioners in accordance with Part XIII of the Insolvency Act or (iii) their appointment as joint administrators of the EMEA Debtors and their remaining as current joint administrators thereof under this Agreement shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English Court.

6

(d)     The Parties agree that any breach of this Agreement by the Joint Administrators shall be deemed to be a breach by them in their capacities as administrators of the EMEA Debtors, and, in such a case, each Party hereto shall have the right to make claims and assert its rights hereunder, against the EMEA Debtors and their respective successors and assigns.

SECTION 3.2.   Exclusion of Liability and Acknowledgments re Joint Israeli Administrators.

(a)     The Parties agree that the Joint Israeli Administrators have negotiated and are entering into this Agreement as agents for Nortel Israel and that none of the Joint Israeli Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any other Party to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations.

(b)     The Joint Israeli Administrators are a party to this Agreement:  (i) as agents of Nortel Israel; and (ii) in their own capacities solely for (1) obtaining the benefit of any provisions of this Agreement expressed to be conferred on them, (2) enforcing the obligations of the other Parties to this Agreement and (3) for the purposes of Sections 3.2, 3.8 and 3.9.

(c)     Notwithstanding anything in Section 3.8, any claim, action or proceeding against the Joint Israeli Administrators arising from or related to the personal liability of the Joint Israeli Administrators, their firm, partners, employees, advisers, representatives or agents (and not as agents for Nortel Israel) under this Agreement shall be governed exclusively by Israeli law and subject to the exclusive jurisdiction of the Israeli Court.

(d)     The Parties agree that any breach of this Agreement by the Joint Israeli Administrators shall be deemed to be a breach by them in their capacities as administrators of Nortel Israel and, in such a case, each Party hereto shall have the right to make claims and assert its rights hereunder against Nortel Israel and its respective successors and assigns.

SECTION 3.3.   Exclusion of Liability and Acknowledgments re NNSA Office Holders.

(a)     The Parties agree that the NNSA Office Holders have negotiated and are entering into this Agreement as agents for NNSA to which they are appointed and that none of the NNSA Office Holders, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any other Party to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations.

(b)     The NNSA Office Holders are a party to this Agreement:  (i) as agents of NNSA; and (ii) in their own capacities solely for (1) obtaining the benefit of any provisions of this Agreement expressed to be conferred on them, (2) enforcing the obligations of the other Parties to this Agreement, and (3) for the purposes of Sections 3.3, 3.8 and 3.9.

7

(c)    Notwithstanding anything in Section 3.8, any claim, action or proceeding against the NNSA Office Holders arising from or related to (i) the personal liability of the NNSA Office Holders, their firm or partners, employees, advisers, representatives or agents, or (ii) their appointment as joint administrators of NNSA and their remaining as current office holders thereof under this Agreement shall be governed exclusively by French law and subject to the exclusive jurisdiction of the French Court.

(d)    The Parties agree that any breach of this Agreement by the NNSA Office Holders shall be deemed to be a breach by them in their capacities as administrators of NNSA, and, in such a case, each Party hereto shall have the right to make claims and assert its rights hereunder, against NNSA and their respective successors and assigns.

SECTION 3.4.  <u>Remedies</u>.  No failure to exercise, and no delay in exercising, any right, remedy, power or privilege under this Agreement by any Party will operate as a waiver of such right, remedy, power or privilege, nor will any single or partial exercise of any right, remedy, power or privilege under this Agreement preclude any other or further exercise of such right, remedy, power or privilege or the exercise of any other right, remedy, power or privilege.

SECTION 3.5.  <u>No Third-Party Beneficiaries</u>.  Except as specifically set forth in this Agreement with regard to the Monitor, the Creditors Committee and the Bondholders Group, nothing in this Agreement, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

SECTION 3.6.  <u>Consent to Amendments; Waivers</u>.  No Party shall be deemed to have waived any provision of this Agreement unless such waiver is in writing, and then such waiver shall be limited to the circumstances set forth in such written waiver.  This Agreement, or any provision hereof, may be waived or amended, on no less than 5 days' notice, only by means of a writing signed by all Parties, and approved, in writing, by the Creditors' Committee, the Bondholders Group and the Monitor, which amendments, if material in the judgment of any one of the Parties, must be approved by the Canadian Court and the U.S. Bankruptcy Court.

SECTION 3.7.  <u>Successors</u>.  Except as otherwise expressly provided in this Agreement, all covenants and agreements set forth in this Agreement by or on behalf of the Parties hereto will be binding upon and inure to the benefit of such Parties and their respective successors.

SECTION 3.8.  <u>Governing Law; Submission to Jurisdiction; Waiver of Jury Trial</u>.

(a)    The Parties agree that this Agreement shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction; <u>provided</u>, that Section 3.1 shall be governed exclusively by English law, Section 3.2 shall be governed exclusively by Israeli law, and Section 3.3 shall be governed exclusively by French law.

(b)     To the fullest extent permitted by applicable law, each Party (i) agrees to submit to the non-exclusive jurisdiction of the U.S. Bankruptcy Court and the Canadian Court (in a joint hearing conducted under the Cross-Border Protocol), for purposes of all legal proceedings to the extent relating to the matters agreed in this Agreement, (ii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such action brought in such a court or any claim that any such action brought in such a court has been brought in an inconvenient forum, (iii) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by law shall be valid and sufficient service thereof notwithstanding Section 3.9 below, and (iv) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law; provided, that any claim, action or proceeding set forth in Section 3.1 shall be brought exclusively in the English courts, any claim, action or proceeding set forth in Section 3.2 shall be brought exclusively in the Israeli courts, and any claim, action or proceeding set forth in Section 3.3 shall be brought exclusively in the French courts.

(c)     EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION OR MATTER CONTEMPLATED HEREBY.  EACH PARTY (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 3.8.

SECTION 3.9.  Notices.  All demands, notices, communications and reports provided for in this Agreement shall be in writing and shall be either sent by facsimile transmission with confirmation to the number specified below or personally delivered or sent by reputable overnight courier service (delivery charges prepaid) to any Party at the address specified below, or at such address, to the attention of such other Person, and with such other copy, as the recipient Party has specified by prior written notice to the sending Party pursuant to the provisions of this Section 3.9.

**If to the U.S. Debtors:**
c/o Nortel Networks Inc.
Attention:  Christopher Ricaurte, President
Address:  2221 Lakeside Boulevard
          Richardson, Texas  75082-4399
          U.S.A.
Facsimile:  +1 615 432 4067

**With a copy to:**
Cleary Gottlieb Steen & Hamilton LLP
Attention:  James L. Bromley, Esq. and Lisa M. Schweitzer, Esq.
Address:  One Liberty Plaza
          New York, New York 10006
          U.S.A.
Facsimile:  +1 212 225 3999

**If to the Canadian Debtors:**
c/o Nortel Networks Limited
Attention:  Anna Ventresca
            Chief Legal Officer
Address:  5945 Airport Road, Suite 360
            Mississauga, Ontario L4V1R9
            Canada
Facsimile:  +1 905 863 8386

**With a copy to:**
Ogilvy Renault LLP
Attention:  Michael Lang, Esq.
Address:  Suite 3800
            Royal Bank Plaza, South Tower
            200 Bay Street, P.O. Box 84
            Toronto, Ontario M5J 2Z4
            Canada
Facsimile:  +1 416 216 3930

**If to the EMEA Debtors:**
c/o Ernst & Young LLP
Attention:  Alan Bloom
Address:  One More London Place
            London SE1 2AF
            United Kingdom
Facsimile:  +44 (0) 20 7951 1345

**With a copy to:**
Herbert Smith LLP
Attention:  Gavin Davies and Ben Ward, Esq.
Address:  Exchange House
            Primrose Street
            London EC2A 2HS
            United Kingdom
Facsimile:  +44 (0) 20 7098 4878

**If to the Joint Israeli Administrators or Nortel Israel:**
Avi D. Pelossof
Address:  Zellermayer, Pelossof & Co.
            The Rubenstein House
            20 Lincoln Street
            Tel Aviv
            67131
            Israel
Facsimile:  +972 3 6255500

**If to the Joint Administrators**
c/o Ernst & Young LLP
Attention:  Alan Bloom
Address:  One More London Place
            London SE1 2AF
            United Kingdom
Facsimile:  +44 (0) 20 7951 1345

**If to NNSA:**
c/o AJ Associés
Attention:  Franck Michel
Address:  10, allée Pierre de Coubertin, 78000
            Versailles, France
Facsimile:  + 33 1 39 50 87 52

**With a copy to:**
Foucaud, Tchekhoff, Pochet & Associés
Attention:  Antoine Tchekhoff & Edouard Fabre
Address:  1bis, avenue Foch, 75116
            Paris, France
Facsimile:  + 33 1 45 00 08 19

**If to the French Administrator**
c/o AJ Associés
Attention:  Franck Michel
Address:  10, allée Pierre de Coubertin, 78000
            Versailles, France
Facsimile:  + 33 1 39 50 87 52

**With a copy to:**
Foucaud, Tchekhoff, Pochet & Associés
Attention:  Antoine Tchekhoff & Edouard Fabre
Address:  1bis, avenue Foch, 75116
            Paris, France
Facsimile:  + 33 1 45 00 08 19

**If to the French Liquidator**
Attention:  Cosme Rogeau
Address:  26 avenue Hoche, 78000
           Versailles, France
Facsimile No.:  + 33 1 39 49 44 63

**With a copy to:**
Foucaud, Tchekhoff, Pochet & Associés
Attention:  Antoine Tchekhoff & Edouard Fabre
Address:  1bis, avenue Foch, 75116
           Paris, France
Facsimile No.:  + 33 1 45 00 08 19

**If to the Committee:**
Akin Gump Strauss Hauer & Feld LLP
Attention:  Fred S. Hodara, David H. Botter
and Stephen B. Kuhn, Esq.
Address:  One Bryant Park
           New York, New York 10036
           U.S.A.
Facsimile:  +1 212 872 1002

**With a copy to:**
Fraser Milner Casgrain LLP
Attention:  Michael J. Wunder, Ryan C. Jacobs
Address:  1 First Canadian Place
           100 King Street West
           Toronto, Ontario M5X 1B2
           Canada
Facsimile:  + 1 416 863 4592

**If to the Bondholder Group:**
Milbank, Tweed, Hadley & McCloy
Attention:  Roland Hlawaty, Esq.
Address:  One Chase Manhattan Plaza
           New York, New York 10006
           U.S.A.
Facsimile:  +1 212 822 5735

**If to the Monitor:**
Murray A. McDonald
Ernst & Young Inc.
Address:  Ernst & Young Tower
           222 Bay Street, P. O. Box 251
           Toronto, Ontario M5K 1J7
           Canada
Facsimile:  +1 416 943 3300

**With a copy to:**
Goodmans LLP
Attention:  Joseph Pasquariello
Address:  Bay Adelaide Centre
           333 Bay Street, Suite 3400
           Toronto, Ontario M5H 2S7
           Canada
Facsimile:  +1 416 979 1234

Any such demand, notice, communication or report shall be deemed to have been given pursuant to this Agreement when delivered personally, when confirmed if by facsimile transmission, or on the calendar day after deposit with a reputable overnight courier service, as applicable.

       SECTION 3.10.  <u>Counterparts</u>.  The Parties may execute this Agreement in three or more counterparts (no one of which need contain the signatures of all Parties), each of which will be an original and all of which together will constitute one and the same instrument.

       SECTION 3.11.  <u>Severability</u>.  If any provision, section, or part of this Agreement, or the application thereof under certain circumstances, is held invalid, illegal or incapable of being enforced in any jurisdiction, (i) as to such jurisdiction, the remainder of this Agreement or the application of such provision, section or part under other circumstances, and

11

(ii) as for any other jurisdiction, any provision of this Agreement, shall not be affected and shall remain in full force and effect, unless, in each case, such invalidity, illegality or unenforceability in such jurisdiction materially impairs the ability of the Parties to consummate the transactions contemplated by this Agreement. Upon such determination that any section or other provision is invalid, illegal or incapable of being enforced in such jurisdiction, the Parties shall negotiate in good faith to modify this Agreement, with the consent of the Monitor, the Creditors' Committee and the Bondholders Group, so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible even in such jurisdiction.

SECTION 3.12.  Effectiveness.

(a)     No provision of this Agreement (other than as set forth in Section 3.12(d)) shall be effective until each of the U.S. Bankrutpcy Court and the Canadian Court approves the entirety of this Agreement and all of the provisions hereof (the "**Court Approval Condition**").

(b)     All provisions of this Agreement shall be effective as of the date of the satisfaction of the Court Approval Condition.

(c)     Each Party hereto shall:

(i)     use commercially reasonable efforts to satisfy the Court Approval Condition as soon as possible, taking into account the availability of the respective Courts to address the matters set forth in this Agreement;

(ii)     keep all other Parties reasonably apprised of the progress of the satisfaction of the Court Approval Condition and provide such other information regarding the satisfaction of the Conditions as reasonably requested by other Parties; and

(iii)     use commercially reasonable efforts to allow any other Party, which so requests in writing, reasonable participation in connection with any proceedings in any Court related to the satisfaction of the Court Approval Condition.

(d)     Notwithstanding any of the foregoing, Article III of the Agreement shall be effective as of the date hereof.

(e)     No provision of this Agreement shall become effective so far as Nortel Israel is concerned until the Israeli Court approves this Agreement. The Parties shall use their commercially reasonable efforts to cause Nortel Israel to obtain such approval.

*[Remainder of this page intentionally left blank.  Signature pages follow.]*

IN WITNESS WHEREOF, the Parties have duly executed this Lazard Fees Side Agreement as of the date first written above.

**NORTEL NETWORKS LIMITED**

By: _____
Name:  John Doolittle
Title:  Senior Vice President, Corporate
      Services and Chief Financial Officer


By: _____
Name:  Anna Ventresca
Title:


**NORTEL NETWORKS CORPORATION**


By: _____
Name:  John Doolittle
Title:  Senior Vice President, Corporate
      Services and Chief Financial Officer


By: _____
Name:  Anna Ventresca
Title:


**NORTEL NETWORKS INC.**


By: _____
Name:  John J. Ray, III
Title:  Principal Officer

**NORTEL NETWORKS TECHNOLOGY
CORPORATION**


By:_____
Name:  Anna Ventresca
Title:


**NORTEL NETWORKS GLOBAL
CORPORATION**


By:_____
Name:  John Doolittle
Title:


By:_____
Name:  Anna Ventresca
Title:


**NORTEL NETWORKS INTERNATIONAL
CORPORATION**


By:_____
Name:  John Doolittle
Title:


**NORTEL ALTSYSTEMS, INC.**


By:_____
Name:  John J. Ray, III
Title:  Principal Officer

**NORTEL COMMUNICATIONS AND
HOLDINGS (1997) LIMITED**


By: _____
Name:  Simon Freemantle
Title:


**NORTEL NETWORKS (CALA) INC.**


By: _____
Name:  John J. Ray, III
Title:  Principal Officer


**NORTEL NETWORKS INTERNATIONAL
INC.**


By: _____
Name:  John J. Ray, III
Title:  Principal Officer


**NORTHERN TELECOM
INTERNATIONAL INC.**


By: _____
Name:  John J. Ray, III
Title:  Principal Officer


**ARCHITEL SYSTEMS (U.S.)
CORPORATION**


By: _____
Name:  John J. Ray, III
Title:  Principal Officer

**CoreTek, Inc.**


By _____
Name:  John J. Ray, III
Title:  Principal Officer


**NORTEL ALTSYSTEMS**
    **INTERNATIONAL INC.**


By _____
Name:  John J. Ray, III
Title:  Principal Officer


**NORTEL NETWORKS APPLICATIONS**
    **MANAGEMENT SOLUTIONS INC.**


By _____
Name:  John J. Ray, III
Title:  Principal Officer


**NORTEL NETWORKS CABLE**
    **SOLUTIONS INC.**


By _____
Name:  John J. Ray, III
Title:  Principal Officer

**NORTEL NETWORKS CAPITAL
CORPORATION**


By _____
Name:  John J. Ray, III
Title:  Principal Officer


**NORTEL NETWORKS HPOCS INC.**


By _____
Name:  John J. Ray, III
Title:  Principal Officer


**NORTEL NETWORKS OPTICAL
COMPONENTS INC.**


By _____
Name:  John J. Ray, III
Title:  Principal Officer


**QTERA CORPORATION**


By _____
Name:  John J. Ray, III
Title:  Principal Officer


**SONOMA SYSTEMS**


By _____
Name:  John J. Ray, III
Title:  Principal Officer

**XROS, INC.**


By _____
Name: John J. Ray, III
Title:  Principal Officer


**NORTEL NETWORKS DE MEXICO, S.A. DE C.V.**


By _____
Name:  Libardo Andres Ramirez Gracia
Title:


**NORTEL NETWORKS (ASIA) LIMITED**


By _____
Name:  John Doolittle
Title:


**NORTEL NETWORKS (CHINA) LIMITED**


By _____
Name:  John Doolittle
Title:


**NORTEL NETWORKS TELECOMMUNICATIONS EQUIPMENT (SHANGAI) CO LTD**.


By _____
Name:  John Doolittle
Title:

**Error! Unknown**

**NORTEL NETWORKS DE MEXICO S. DE R.L. DE C.V.**

By _____
Name:
Title:

**NORTEL DE MEXICO, S. DE R.L. DE C.V.**

By _____
Name:
Title:

**NORTEL NETWORKS DE ARGENTINA, S.A.**

By _____
Name:
Title:

**NORTEL NETWORKS DE CHILE S.A.**

By _____
Name:
Title:

**NORTEL NETWORKS DE PERU S.A.C.**


By _____
Name:
Title:


**NORTEL NETWORKS AUSTRALIAN PTY. LIMITED**


By _____
Name:  David Chapman
Title:


**NORTEL NETWORKS DE COLOMBIA, S.A.**

By _____
Name:
Title:


**NORTEL NETWORKS (INDIA) PRIVATE LIMITED**

By _____
Name:
Title:


**NORTEL TECHNOLOGY EXCELLENCE CENTRE PRIVATE LIMITED**

By _____
Name:  John Doolittle
Title:

Signature Page – Lazard Fees Side Agreement            **Error! Unknown**

**PT NORTEL NETWORKS INDONESIA**

By _____
Name:  Andrew Grant
Title:


**NORTEL NETWORKS KABUSHIKI KAISHA**

By _____
Name:  Nicholas Vreugdenhil
Title:


**NORTEL NETWORKS MALAYSIA SDN. BHD.**

By _____
Name:  Thum Sook Fun
Title:


**NORTEL NETWORKS NEW ZEALAND LIMITED**

By _____
Name:  John Doolittle
Title:


**NORTEL NETWORKS (THAILAND) LTD.**

By _____
Name:  John Doolittle
Title:

**NORTEL VIETNAM LIMITED**

By _____
Name:  Nicholas Vreugdenhil
Title:


**NORTEL NETWORKS SOUTH AFRICA (PTY) LIMITED**

By _____
Name:  Simon Freemantle
Title:


**NORTEL NETWORKS DE GUATEMALA LTDA.**

By _____
Name:
Title:


**NORTEL NETWORKS DE ECUADOR S.A.**

By _____
Name:
Title:


**NORTEL NETWORKS SINGAPORE PTE. LIMITED**

By _____
Name:  John Doolittle
Title:

**NORTEL NETWORKS (ASIA)
LIMITED – PAKISTAN BRANCH**

By _____
Name:  John Doolittle
Title:


**SHENYANG NORTEL
TELECOMMUNICATIONS CO., LTD.**

By _____
Name:
Title:


**NORTEL TRINIDAD & TOBAGO
LIMITED**

By _____
Name:
Title:


**NORTEL NETWORKS AS**

By _____
Name:  Simon Freemantle
Title:

**SIGNED** for and on behalf of **Nortel Networks** )    ...........................................................
**UK Limited** (in administration) by Christopher )    Christopher Hill
Hill as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )

Witness signature

...........................................................    )
Name:    )
Address:    )

**SIGNED** for and on behalf of **Nortel GmbH** )    ...........................................................
(in administration) by Christopher Hill as Joint )    Christopher Hill
Administrator (acting as agent and without )
personal liability) in the presence of: )

Witness signature

...........................................................    )
Name:    )
Address:    )

**SIGNED** for and on behalf of **Nortel Networks** )    ...........................................................
**SpA** (in administration) by Christopher Hill as )    Christopher Hill
Joint Administrator (acting as agent and without )
personal liability) in the presence of: )

Witness signature

...........................................................    )
Name:    )
Address:    )

Signature Page – Lazard Fees Side Agreement          **Error! Unknown**
**document property**

**SIGNED** for and on behalf of **Nortel Networks**        )        ..................................................................
**Hispania S.A.** (in administration) by        )        Christopher Hill
Christopher Hill as Joint Administrator (acting        )
as agent and without personal liability) in the        )
presence of:        )


Witness signature

...........................................................        )
Name:        )
Address:        )

**SIGNED** for and on behalf of **Nortel Networks**        )        ..................................................................
**B.V.** (in administration) by Christopher Hill as        )        Christopher Hill
Joint Administrator (acting as agent and without        )
personal liability) in the presence of:        )


Witness signature

...........................................................        )
Name:        )
Address:        )

**SIGNED** for and on behalf of **Nortel Networks**        )        ..................................................................
**N.V.** (in administration) by Christopher Hill as        )        Christopher Hill
Joint Administrator (acting as agent and without        )
personal liability) in the presence of:        )


Witness signature

...........................................................        )
Name:        )
Address:        )

**SIGNED** for and on behalf of **Nortel Networks (Austria) GmbH** (in administration) by Christopher Hill as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)

.................................................................
Christopher Hill

Witness signature

..........................................................
Name:
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **Nortel Networks Polska Sp. z.o.o.** (in administration) by Christopher Hill as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)

.................................................................
Christopher Hill

Witness signature

..........................................................
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **Nortel Networks s.r.o.** (in administration) by Christopher Hill as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)

.................................................................
Christopher Hill

Witness signature

..........................................................
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **Nortel Networks**
**Engineering Service kft** (in administration) by
Christopher Hill as Joint Administrator (acting
as agent and without personal liability) in the
presence of:

)
)
)
)

...........................................................
Christopher Hill

Witness signature

.....................................................
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **Nortel Networks**
**Slovensko s.r.o.** (in administration) by
Christopher Hill as Joint Administrator (acting
as agent and without personal liability) in the
presence of:

)
)
)
)

...........................................................
Christopher Hill

Witness signature

.....................................................
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **Nortel Networks**
**Romania Srl** (in administration) by Christopher
Hill as Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)

...........................................................
Christopher Hill

Witness signature

.....................................................
Name:
Address:

)
)
)

Signature Page – Lazard Fees Side Agreement

**Error!**
**Unknown**

**SIGNED** for and on behalf of **Nortel Networks**  )    ............................................................................
**France S.A.S.** (in administration) by Kerry    )    Kerry Trigg
Trigg acting as authorised representative for    )
Christopher Hill as Joint Administrator (acting    )
as agent and without personal liability) in the    )
presence of:    )


Witness signature


............................................................    )
Name:    )
Address:    )

**SIGNED for and on behalf of NORTEL**                )          .........................................................................
**NETWORKS OY (IN ADMINISTRATION)**        )          **CHRISTOPHER HILL**
**by CHRISTOPHER HILL as Joint**                     )
**Administrator (acting as agent and without**       )
**personal liability) in the presence of:**

**Witness signature**
**Name:**
**Address:**

**Error! Unknown document property**

**SIGNED for and on behalf of NORTEL**    )    ...........................................................
**NETWORKS AB (IN ADMINISTRATION)**    )    **CHRISTOPHER HILL**
**by CHRISTOPHER HILL as Joint**    )
**Administrator (acting as agent and without**    )
**personal liability) in the presence of:**

**Witness signature**
**Name:**
**Address:**


**SIGNED for and on behalf of NORTEL**    )    ...........................................................
**NETWORKS INTERNATIONAL**    )    **CHRISTOPHER HILL**
**FINANCE & HOLDING BV (IN**    )
**ADMINISTRATION)**    )
**by CHRISTOPHER HILL as Joint**
**Administrator (acting as agent and without**
**personal liability) in the presence of:**
**Witness signature**
**Name:**
**Address:**


**SIGNED for and on behalf of NORTEL**    )    ...........................................................
**NETWORKS PORTUGAL SA (IN**    )    **CHRISTOPHER HILL**
**ADMINISTRATION)**    )
**by CHRISTOPHER HILL as Joint**    )
**Administrator (acting as agent and without**
**personal liability) in the presence of:**
**Witness signature**
**Name:**
**Address:**

**SIGNED for and on behalf of Nortel**    )    ................................................................

**Networks (Ireland) Limited (in**    )    **David Hughes**

**administration) by David Hughes as Joint**    )

**Administrator (acting as agent and without**    )

**personal liability) in the presence of:**


**Witness signature**


................................................................    )

**Name:**    )

**Address:**    )

**SIGNED by Sergei Fishkin**     )    ..............................................................

**duly authorised for and on behalf of o.o.o.**  )    **Sergei Fishkin**

**Nortel Networks in the presence of:**    )

**Witness signature**

.............................................................  )

**Name:**    )

**Address:**    )

**SIGNED by Simon Freemantle**          )          ........................................................................
**duly authorised for and on behalf of Nortel**          )          **Simon Freemantle**
**Networks AG in the presence of:**          )


**Witness signature**

........................................................................          )
**Name:**          )
**Address:**          )

**SIGNED by Alan Bloom**                    )          ...............................................................
                                            )          **Alan Bloom**
**in his own capacity and on behalf of the Joint**    )
**Administrators without personal liability and**
**solely for the benefit of the provisions of this**
**Agreement expressed to be conferred on or**
**given to the Joint Administrators:**


**Witness signature**

...........................................................    )
**Name:**                                   )
**Address:**                                )

**SIGNED for and on behalf of NORTEL**    )    …………………………………………..
**NETWORKS SA (IN ADMINISTRATION)**  )    **Cosme Rogeau**
**by COSME ROGEAU as liquidator (acting**  )
**as agent and without personal liability) and**  )

**by FRANCK MICHEL as administrator**    )    …………………………………………..
**(acting as agent and without personal**     )    **Franck Michel**
**liability) in the presence of:**         )
                                      )

**Witness signature**

…………………………………………………

**SIGNED for and on behalf of Nortel**     )    …………………………………………..
**Networks Israel (Sales and Marketing)**  )
                                        )
                                        )

**Schedule A – Canadian Debtors**

Nortel Networks Corporation

Nortel Networks Limited

Nortel Networks Technology Corporation

Nortel Networks International Corporation

Nortel Networks Global Corporation

**Error! Unknown document property**

**Schedule B – U.S. Debtors**

Nortel Networks Inc.

Architel Systems (U.S.) Corporation

CoreTek, Inc.

Nortel Altsystems, Inc. (previously "Alteon WebSystems, Inc.")

Nortel Altsystems International Inc. (previously "Alteon WebSystems International, Inc.")

Nortel Networks Applications Management Solutions Inc.

Nortel Networks Cable Solutions Inc.

Nortel Networks Capital Corporation

Nortel Networks HPOCS Inc.

Nortel Networks International Inc.

Nortel Networks Optical Components Inc.

Xros, Inc.

Northern Telecom International Inc.

Qtera Corporation

Sonoma Systems

Nortel Networks (CALA) Inc.

**Schedule C – EMEA Debtors**

Nortel Networks UK Limited

Nortel Networks (Austria) GmbH

Nortel Networks s.r.o.

Nortel Networks S.p.A.

Nortel Networks NV

Nortel Networks Polska Sp. Z.o.o

Nortel GmbH

Nortel Networks B.V.

Nortel Networks Slovensko s.r.o.

Nortel Networks Romania Srl

Nortel Networks Portugal S.A.

Nortel Networks AB

Nortel Networks Hispania S.A.

Nortel Networks OY

Nortel Networks Engineering Service Kft.

Nortel Networks France S.A.S.

Nortel Networks (Ireland) Limited

Nortel Networks International Finance & Holding BV (In Administration)

**Schedule D – Non-Filed Sellers**

[To be confirmed]

Nortel Networks de Mexico, S.A. de C.V.

Nortel Networks (Asia) Limited

Nortel Networks (China) Limited

Nortel Networks Telecommunications Equipment (Shangai) Co Ltd.

Nortel Networks de Mexico S. De R.L. de C.V.

Nortel de Mexico, S. De R.L. de C.V.

Nortel Networks de Argentina, S.A.

Nortel Networks de Chile S.A.

Nortel Networks de Peru S.A.C.

Nortel Networks Australian Pty. Limited

Nortel Networks de Colombia, S.A.

Nortel Networks (India) Private Limited

Nortel Technology Excellence Centre Private Limited

PT Nortel Networks Indonesia

Nortel Networks Kabushiki Kaisha

Nortel Networks Malaysia Sdn. Bhd.

Nortel Networks New Zealand Limited

Nortel Networks (Thailand) Ltd.

Nortel Vietnam Limited

Nortel Networks South Africa (Pty) Limited

Nortel Communications and Holdings (1997) Limited

Nortel Networks de Guatemala Ltda.

Nortel Networks de Ecuador S.A.

**Error! Unknown
document property**

Nortel Networks Singapore Pte. Limited

Nortel Networks (Asia) Limited – Pakistan Branch

o.o.o. Nortel Networks

Nortel Networks AG

Shenyang Nortel Telecommunications Co., Ltd.

Nortel Trinidad & Tobago Limited

Nortel Networks AS

Nortel Networks Israel (Sales and Marketing)

Schedule D                                    **Error!
Unknown**

**Schedule E**

| Transaction Name | Amount of Monthly Fee Allocated[1] | Amount of Expenses Allocated[2] | Amount to be reimbursed to NNI |
|---|---|---|---|
| CDMA Sale Transaction | $631,580.80 | $49,027.48 | **$680,608.28** |
| Enterprise Sale Transaction | $789,473.60 | $61,284.16 | **$850,757.76** |
| MEN Sale Transaction | $947,368.00 | $73,540.96 | **$1,020,908.96** |
| GSM Sale Transaction | $868,420.80 | $67,412.56 | **$935,833.36** |
| CVAS Sale Transaction | $1,026,315.20 | $79,669.37 | **$1,105,984.57** |
| Passport Sale Transaction | $710,526.40 | $55,155.75 | **$765,682.15** |
| IP Sale Transaction | $1,026,315.20 plus all Monthly Fees and Expenses that become due and payable after December 31, 2010 (the "**IP-Related Monthly Fee**") | $79,669.37 | **$1,105,984.57** |

---

[1]     The allocated fees represent the Monthly Fees in the aggregate amount of $6,000,000 incurred or to be incurred through December 31, 2010 (except for the IP-Related Monthly Fees, which includes the Monthly Fees to be incurred after December 31, 2010). These numbers are calculated based on the chart attached to the Fourth Supplemental Fee Order of the U.S. Bankruptcy Court, and recalculated to reflect the Monthly Fees that will be actually paid by NNI.

[2]     The allocated expenses represent the expenses approved by the Court through July 31, 2010. The expenses that become payable for periods after July 31, 2010 and paid by NNI will be allocated among the Global Sales in the same proportion as the Monthly Fees.

**Schedule F**

1.      Payments of the Minority Sale Transaction Fees with respect to CDMA Sale Transaction, Enterprise Sale Transaction, MEN Sale Transaction and GSM/GSM-R Sale Transaction: the Minority Sale Transaction Fees, after taking into account the $15 Million cap and all available credits for the Monthly Fees, shall be paid from the relevant Sale Proceeds Escrow Accounts as follows:

| Transactions | Aggregate Sale Proceeds[1] | Minority Sale Transaction Fee | Allocable Monthly Fee Credits | Amount to be paid from the escrow account |
|---|---|---|---|---|
| CDMA Sale Transaction | $1,120,132,929.00 | $5,355,199.59 | $236,842.80 | $5,118,356.79 |
| Enterprise Sale Transaction | $932,583,480.00 | $4,721,298.49 | $296,052.60 | $4,425,245.89 |
| MEN Sale Transaction | $694,437,098.00 | $3,855,219.45 | $355,263.00 | $3,499,956.45 |
| GSM Sale Transaction | $112,498,097.00 | $1,068,282.47 | $325,657.80 | $742,624.67 |
| **Total** | | $15,000,000.00 | $1,213,816.20 | **$13,786,183.80** |

2.      Reallocation of Payments made to Lazard according to Paragraph 1: The Minority Sale Transaction Fees paid from the relevant Sale Proceeds Escrow Accounts according to paragraph 1 above shall be reallocated among CDMA Sale Transaction, Enterprise Sale Transaction, MEN Sale Transaction and GSM/GSM-R Sale Transaction according to their pro rata proportion of the aggregate sale proceeds of such Global Sales within a reasonable time period after the sale proceeds for such Global Sales have been finalized.

3.      Payments of Minority Sale Transaction Fees with respect to other Sale Transactions and IP Transaction Fee: The Minority Sale Transaction Fees for CVAS Sale Transaction, Passport Sale Transaction and IP Sale Transaction, or the IP Transaction Fee with respect to Reorganized IP Company, as the case may be, shall be paid from the relevant Sale Proceeds Escrow Account or by the relevant Parties, as the case may be, after taking into account any available Monthly Fee credit and upon necessary U.S. Bankruptcy Court and/or Canadian Court approval.

---

[1]      The aggregate sale proceeds listed in this chart are only for purposes of calculating the Minority Sale Transactions Fees to be paid to Lazard from the relevant Sale Proceeds Escrow Accounts.

**Error! Unknown document property**