IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
*In re*                                                       :    Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                            :    Case No. 09-10138 (KG)
:
           Debtors.                          :    Jointly Administered
:
:    Hearing date: November 23, 2010, 10:00 a.m. (ET)
:    Objections due: November 16, 2010, 4:00 p.m. (ET)
------------------------------------------------------------X

## APPLICATION PURSUANT TO 11 U.S.C. § 327(e) TO RETAIN AND EMPLOY TORYS LLP AS SPECIAL CANADIAN COUNSEL *NUNC PRO TUNC* TO OCTOBER 28, 2010

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this court (the "Application") for the entry of an order substantially in the form attached hereto as **Exhibit B**, pursuant to sections 327(e) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i) authorizing the retention and employment of Torys LLP ("Torys") as Special Canadian Counsel *nunc pro tunc* to October 28, 2010, (ii) approving the terms and conditions under which Torys will be retained and compensated and (iii) granting them such other and further relief as the Court deems just and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

proper. In support of this Application, the Debtors rely upon and incorporate by reference the Declaration of William F. Gray, Jr. in Support of Debtors' Application Pursuant to 11 U.S.C. § 327(e) to Retain and Employ Torys LLP as Special Canadian Counsel *Nunc Pro Tunc* to October 28, 2010 (the "Gray Declaration"), attached hereto as **Exhibit A**. In further support of this Application, the Debtors respectfully represent as follows:

## Jurisdiction

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 327, 328, 330 and 331 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1.

## Background

**A.     Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b), which provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

2

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "CCAA Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA (the "Recognition Proceedings" and together with the CCAA Proceedings, the "Canadian Proceedings"). On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"). NNSA was authorized to continue

---

[2]   The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]   The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

to operate as a going concern until completion of the sale of the GSM/GSM-R business. While NNSA's operations are now terminated, the French Proceedings are continuing and, in accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI and itself one of the Debtors, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the other Debtors' chapter 11 cases [D.I. 1099]. From time

---

[4] Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Limited (the "Israeli Companies"), filed an application with the Tel-Aviv-Jaffa District Court (the "Israeli Court"), pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Companies under the Israeli Companies Law (the "Joint Israeli Administrators").

to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.     Debtors' Corporate Structure and Business**

11.    Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers. Nortel's technologies spanned access and core networks and supported multimedia and business-critical applications. Nortel's networking solutions consisted of hardware, software and services. Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

12.    Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

**C.     Case Milestones**

13.    On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event it were unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of

---

[5]    Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632]. In addition, the Debtors have obtained Court approval for the sale of certain assets of the Debtors' Multi-Service Switch (formerly known as "Passport") business to Ericsson [D.I. 4054] (collectively with the other sale transactions, the "Sale Transactions"). From time to time the Debtors have and may continue to sell, transfer and assign their interests in other assets as efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14.     On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 p.m. (Eastern Time) as the general bar date for filing proofs of claim or interests against the Debtors (other than NN CALA) [D.I. 1280]. On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

15.     On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580]. On September 3, 2010, the Debtors filed the Proposed Disclosure Statement for the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3874].

## Relief Requested

16. By this Application, the Debtors seek entry of an order pursuant to sections 327(e) and 331 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1 (i) authorizing the retention and employment of Torys as Special Canadian Counsel *nunc pro tunc* to October 28, 2010, (ii) approving the terms and conditions under which Torys will be retained and compensated, and (iii) granting related relief.

## Basis For Relief

17. Section 327(e) of the Bankruptcy Code authorizes a debtor-in-possession to employ one or more attorneys to represent the debtor on specified special matters so long as those attorneys do not hold or represent an interest adverse to the estate with respect to the matters on which they are to be retained. See 11 U.S.C. §§ 327(e), 1106 and 1107.

18. The Debtors respectfully submit that it is necessary and appropriate for them to employ and retain Torys to provide, at the direction of the Debtors or their lead counsel, Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), advice, assistance and representation with respect to matters of Canadian law or process including, without limitation, to perform the following legal services:

   (a) advise the Debtors with respect to their rights, duties and powers in connection with the Canadian Proceedings;

   (b) assist and advise the Debtors in the Canadian Proceedings in relation to matters of Canadian law;

   (c) represent the Debtors at all hearings in the Canadian Proceedings as counsel of record;

   (d) review and analyze motions, applications, orders, reports, statements of operations and schedules filed with the Canadian Court, including without limitation all documents filed by the Canadian Debtors and reports filed by the Monitor, and advise the Debtors as to their propriety, and to the extent deemed appropriate by the Debtors, support, join or object thereto;

7

(e) advise and assist the Debtors with respect to any Canadian legislative, regulatory or governmental activities;

(f) assist the Debtors in preparing pleadings including, without limitation, motions, affidavits, facta, records, memoranda, complaints, adversary complaints, objections or comments as may be necessary in furtherance of the Debtors' interests in the Canadian Proceedings; and

(g) perform such other legal services as may be required or are otherwise deemed to be in the interests of the Debtors in accordance with the Debtors' powers and duties as set forth in the Bankruptcy Code, Bankruptcy Rules or other applicable law.

19. Prior to Torys' retention, the Debtors have been represented in the Canadian Proceedings by Ogilvy Renault LLP ("Ogilvy Renault"), lead counsel to the Canadian Debtors, particularly in connection with the recognition of certain orders of this Court under Section 18.6 of the CCAA. In addition, the Debtors have worked closely with Canadian counsel retained by the Committee on numerous matters of common interest. However, given that the interests of the Canadian Debtors and the Debtors may diverge on certain key issues, including without limitation the allocation of the proceeds of the Sale Transactions, the Debtors have concluded that it is appropriate to retain Torys as separate Canadian counsel. In light of the foregoing, the Debtors provided a limited waiver to Ogilvy Renault to permit that firm to terminate its relationship with the Debtors upon the engagement of replacement Canadian counsel, and to continue its representation of the Canadian Debtors in the CCAA Proceedings.

20. Torys has represented NNI and its affiliates prior to the Petition Date. In particular, in 2007, Torys acted as Canadian counsel to NNC, NNL and NNI in connection with the offering and sale by NNC of US$575,000,000 aggregate principal amount of its 1.750% Convertible Senior Notes due 2012 and US$575,000,000 aggregate principal amount of its 2.125% Convertible Senior Notes due 2014, which Senior Notes were guaranteed by NNL and NNI. The transaction closed on March 28, 2007.

21.     Later in 2007, Torys acted as Canadian counsel to NNC, NNL and NNI in connection with the exchange offer of SEC registered notes for notes previously issued in a private placement/offering pursuant to Rule 144A under the Securities Act of 1933, as amended, with respect to US$450,000,000 in aggregate principal amount of 10.75% Senior Notes due 2016, US$550,000,000 in aggregate principal amount of 10.125% Senior Notes due 2013, and US$1,000,000,000 in aggregate principal amount of Floating Rate Senior Notes due 2011, which Senior Notes were issued by NNL and guaranteed by NNC and NNI. The exchange offer closed on January 31, 2008.

22.     The Debtors believe that Torys possesses extensive knowledge and expertise in the areas of Canadian law relevant to these chapter 11 cases and the Canadian Proceedings, and that Torys is well qualified to represent the Debtors as Canadian counsel in the Canadian Proceedings. In selecting counsel to advise the Debtors with respect to the Canadian Proceedings, the Debtors sought Canadian counsel with experience in representing stakeholders in cross border CCAA reorganization cases and other debt restructurings. Torys has such experience, as Torys is currently representing and has previously represented parties in the following matters: the cross-border restructuring proceedings of the AbitibiBowater group of companies, leaders in the newsprint industry, as counsel to Fairfax Financial Holdings, a debtor-in-possession lender (a "DIP lender"), principal creditor and rights plan backstop party; the cross-border restructuring proceedings of the Fraser Papers group of companies, public North American pulp and paper producers, as counsel to Brookfield Asset Management, the companies' controlling shareholder and DIP lender, and the majority owner of the purchaser of a substantial portion of the companies' assets during their insolvency proceedings; and the cross-border

restructuring proceedings of TLC Vision, a leading North American eye care business, as Canadian counsel to the company.

23. In addition, Torys currently represents and has previously represented various stakeholders in significant other Canadian restructuring and insolvency proceedings, including the restructuring of General Motors, as Canadian counsel to both General Motors Acceptance Corp. and the Canada Development Investment Corporation, a Canadian Crown holding company that invested a substantial equity stake in the restructured General Motors; the restructuring of Chrysler Group, as Canadian counsel to the Canada Development Investment Corporation, a substantial equity investor in the restructured Chrysler; and the restructuring of Ainsworth Lumber, a leading North American strand board producer, as Canadian counsel to Tricap Partners, a leading bondholder and subsequent majority shareholder of the restructured company.

24. While certain of Torys' work may have some relation to the Debtors' reorganization process, Torys is not being retained for purposes of, and has not been asked to provide advice with respect to, the conduct of the Debtors' chapter 11 bankruptcy cases.

### Nunc Pro Tunc Retention

25. The Debtors request approval of the employment of Torys *nunc pro tunc* to October 28, 2010. The Third Circuit has identified "time pressure to begin service without court approval" and absence of prejudice as factors favoring *nunc pro tunc* retention. See In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), app. dismissed, 909 F.2d 1406 (3d Cir. 1990). These factors justify *nunc pro tunc* relief in these cases.

26. In the present case, there is time pressure for Torys to begin providing the Debtors with services in connection with the Canadian Proceedings as negotiations as to various matters

between and among the estates are proceeding and the need to put in place Canadian counsel that do not represent the Canadian Debtors.

27. Additionally, *nunc pro tunc* retention will not prejudice the Debtors' creditors. To the contrary, as set forth above, approval of this Application will benefit the Debtors' creditors by increasing the prospects of recovery for the Debtors' estates.

28. Accordingly, the Court should approve Torys' retention *nunc pro tunc* to October 28, 2010.

### Absence of Adverse Interest

29. To the best of the Debtors' knowledge and except as set forth in the Gray Declaration, Torys has no interest in or connection with any creditor or other party-in-interest in the Debtors' chapter 11 cases, nor to the best of the Debtors' knowledge does Torys hold any interest adverse to the interests of the Debtors or the Debtors' estates with respect to the matters on which Torys is to be employed.

### Compensation

30. Subject to this Court's approval and in accordance with sections 327(e) and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Orders of this Court, the Debtors propose to compensate Torys for professional services rendered at its normal and customary hourly rates in effect from time to time as set forth in the Gray Declaration, plus reimbursement of actual, necessary expenses incurred by Torys on the Debtors' behalf.

31. The Debtors understand that any compensation and expenses paid to Torys must be approved by this Court upon application, and as evidenced in the Gray Declaration, Torys understands such procedure.

32. It is the Debtors' understanding that Torys adjusts the hourly rates for its attorneys from time to time, usually at the beginning of each calendar year. Torys' hourly rates for Torys' Toronto office currently range as follows:

| Billing Category | Range (in Canadian dollars, or "Cdn$")[6] |
|---|---|
| Partners: | $475 - $995 |
| Associates: | $345 - $700 |
| Law Clerks (paralegals): | $315 - $450 |

33. Tony DeMarinis, a partner in Torys' Toronto office, will have primary responsibility for providing services to the Debtors and supervising such other professionals and paraprofessionals in the Toronto office that may provide such services to the Debtors. Tony DeMarinis' current hourly rate is Cdn$975. Other Torys professionals and paraprofessionals will also provide services to the Debtors from time to time. Should Torys' New York office provide any services to the Debtors, William F. Gray, Jr. will have primary responsibility for such services and supervising such other professionals and paraprofessionals in the New York office that may provide services to the Debtors. William F. Gray, Jr.'s current hourly rate is US$825. Torys' hourly rates for the New York office currently range as follows:

| Billing Category | Range (in U.S. dollars) |
|---|---|
| Partners: | $625 - $950 |
| Associates: | $375 - $600 |
| Paralegals: | $200 - $290 |

---

[6] The Debtors request that, to avoid the administrative burden of fluctuating exchange rates, payments made by the Debtors to Torys for services rendered and expenses incurred by its professionals in its Toronto office and denominated in Canadian currency be made in U.S. currency on the applicable exchange rate in effect on the date such payment is made to Torys. This request is being made in the interest of administrative convenience, but the Debtors consider this request to be subject to revision in the event of substantial movement in the exchange rate between Canadian currency and U.S. currency.

34.     It is Torys' policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, travel expenses, computerized research and transcription costs. Torys will charge the estates for these expenses in a manner and at rates consistent with charges made generally to Torys' other clients. The Debtors believe that it is equitable for Torys to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

### Notice

35.     Notice of the Motion has been given via first class mail or hand delivery to (i) the U.S. Trustee; (ii) counsel for the Committee; (iii) counsel for the Bondholder Group; and (iv) the general service list established in these cases. The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

36.     No prior application for the relief sought herein has been made to this Court or any other court.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Application and the relief requested herein authorizing the Debtors to retain and employ the firm of Torys LLP as Special Canadian Counsel, effective as of October 28, 2010; (ii) enter the proposed order attached as **Exhibit B** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: November 8, 2010
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*