## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X

|  |  |  |
|---|---|---|
| *In re* | : | Chapter 11 |
|  | : |  |
| Nortel Networks Inc., *et al.*, | : | Case No. 09-10138 (KG) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |
|  | : | **Hearing date: November 23, 2010 at 10:00 a.m. (ET)** |
|  | : |  |
|  | : | Re:  D.I. 3827 and D.I. 3901 |

-------------------------------------------------------- X

### NORTEL NETWORKS INC.'S RESPONSE IN OPPOSITION TO
### THE MOTION OF THE AFFILIATES OF VERIZON COMMUNICATIONS INC.
### FOR (A) MODIFICATION OF THE AUTOMATIC STAY; (B)
### DETERMINATION OF VERIZON'S PREPETITION RIGHTS OF SETOFF;
### AND (C) AN ORDER REQUIRING VERIZON'S SETOFF RIGHTS TO BE
### EFFECTUATED AND SATISFIED BY NORTEL NETWORKS INC.

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT .................................................................... 1

BACKGROUND ............................................................................................ 3

    A.    Procedural History ................................................................... 3

    B.    Debtors' Corporate Structure and Business ............................. 4

    C.    Case Milestones ...................................................................... 5

FACTS RELEVANT TO THE SETOFF MOTION....................................... 6

    A.    Certain Verizon Affiliates Withhold Payment of Amounts
           Due to NNI ............................................................................. 6

    B.    The Customer Order................................................................. 7

    C.    Proof of Claim Filed by the "Verizon Affiliates" .................... 7

    D.    Certain Verizon Affiliates Withhold Payment of Their
           Postpetition Obligations to NNI ............................................. 11

    E.    The Debtors' Motions Against Certain Affiliates of Verizon ... 11

    F.    Resolution of the Stay Motion and the 2004 Motion................ 12

MOVANTS' KEY ADMISSIONS ................................................................. 13

ARGUMENT.................................................................................................. 14

POINT I:  Movants Have No Right of Setoff Under Section 553 With Respect to the
Switch Claim and the Voxpath Indemnity Claim Because They Never Had a State Law
Setoff Right to Preserve ............................................................................... 14

    A.    Section 553 of the Bankruptcy Code Does Not Create a Setoff Right ....... 14

    B.    Contingent or Disputed Claims Cannot Be Setoff Under
           New York State Law................................................................. 16

    C.    The Switch Claim and the Voxpath Claim Were Contingent and Disputed
           On the Petition Date and the Date of Entry of the Customer Order ........... 18

i.      The Switch Claim ............................................................... 19

ii.     The Voxpath Indemnity Claim .......................................... 21

POINT II:  Movants are Not Entitled to Relief from the Automatic Stay ........................ 23

POINT III:  Movants are Not Entitled to the Requested Order Directing the
NNI Estate to Pay the Amount They Seek on the Switch Claim and an Estimated
Amount on the Voxpath Indemnity Claim ....................................................................... 23

CONCLUSION........................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## Rules and Statutes

11 U.S.C. § 553(a) (2010) ........................................................................14, 20, 23

Sections 105(a) and 363(b) of the Bankruptcy Code .........................................    7

Section 1102(a)(1) of the Bankruptcy Code........................................................    4

Sections 1107(a) and 1108 of the Bankruptcy Code...........................................    3

Rule 2004 of the Federal Rules of Bankruptcy Procedure ................................    11

Rule 1015(b) of the Federal Rules of Bankruptcy Procedure ...........................    3

Section 151 of the New York Debtor and Creditor Law......................................    17


## Cases

Citizens Bank of Maryland v. Strumpf,
516 U.S. 16 (1995)..........................................................................................    14

Cohen v. Sav. Bldg. & Loan Co. (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.),
896 F.2d 54 (3d Cir. 1990) .............................................................................    22

Correspondent Servs. Corp. v. J.V.W. Inv. Ltd.,
524 F.Supp.2d 412 (S.D.N.Y. 2007)...............................................................    18

Dunn v. Uvalde Asphalt Paving Co.,
67 N.E. 439 (N.Y. 1903) .................................................................................    16

Ferguson v. Lion Holding, Inc.,
312 F.Supp.2d 484 (S.D.N.Y. 2004)...............................................................    17-18

In re Czyzk,
297 B.R. 406 (Bankr. D.N.J. 2003)..................................................................    23

In re Delta Air Lines,
341 B.R. 439 (Bankr. S.D.N.Y. 2006) .............................................................    14-15

In re Garden Ridge Corp.,
338 B.R. 627 (Bankr. D. Del. 2006) ................................................................    15-16

In re Lason, Inc.,
314 B.R. 296 (Bankr. D. Del. 2004) ................................................................    15

In re SemCrude, L.P.,
399 B.R. 388 (Bankr. D. Del. 2009), aff'd, 428 B.R. 590 (D. Del. 2010) ........................14-16, 22

Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.),
181 B.R. 730 (Bankr. S.D.N.Y. 1995) ..............................................................................16-17, 19

In re WorldCom, Inc.,
304 B.R. 611 (Bankr. S.D.N.Y. 2004) ..............................................................................      15

New Haven Props. Ltd. v. Grinberg,
293 A.D.2d 386 (N.Y. App. Div. 2002)...........................................................................   17, 19

Spodek v. Park Prop. Dev. Assocs.,
263 A.D.2d 478 (N.Y. App. Div. 1999)...........................................................................      17

Termini v. John Arthur Exhibitions, Inc.,
9 Misc.2d 833 (N.Y. Sup. Ct. 1957) ................................................................................      17

Trojan Hardware Co. v. Bonacquisti Constr. Corp.,
141 A.D.2d 278 (N.Y. App. Div. 1988)...........................................................................      17

United States ex rel. IRS v. Norton,
717 F.2d 767 (3d Cir. 1983) ............................................................................................   14-15

Wallace v. Merrill Lynch Capital Servs., Inc.,
29 A.D.3d 382 (N.Y. App. Div. 2006)..............................................................................      16

Willett v. Lincolnshire Mgmt., Inc.,
302 A.D.2d 271 (N.Y. App. Div. 2003)...........................................................................   17-19


## Other Authorities

5 Collier on Bankruptcy § 553.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) .      20

5 Collier on Bankruptcy § 553.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) .      14

Nortel Networks Inc. ("NNI"), as a debtor and debtor in possession, by and through its undersigned counsel, hereby responds in opposition (the "Response") to the motion filed by "the affiliates of Verizon Communications Inc." (collectively, "Movants") for (a) modification of the automatic stay; (b) determination of their alleged prepetition rights of setoff; and (c) an order directing NNI to satisfy such alleged setoff rights [D.I. 3901] (the "Setoff Motion").  For its Response in Opposition to the Setoff Motion, NNI respectfully represents as follows:

## Preliminary Statement

1.     The question raised by the Setoff Motion is whether certain Verizon affiliates have met their burden of demonstrating that they had valid setoff rights against NNI as of the date on which NNI filed its chapter 11 petition in this Court (the "Petition Date"), and if so, whether they are entitled to effectuate those setoff rights today.  To the extent, if any, that such setoff rights existed as a matter of underlying non-bankruptcy law on the Petition Date – and only to that extent – those rights were preserved by the "Customer Order" (defined below), notwithstanding the payment by the Verizon affiliates of the prepetition amounts they owed to NNI.  To the extent such setoff rights did not exist on the Petition Date, the Setoff Motion must be denied.

2.     As the Setoff Motion itself makes clear, Movants have failed to meet their burden as to the two principal claims with respect to which they seek to enforce their purported setoff rights – the indemnity claim of Verizon Select Services Inc. ("VSSI") concerning an allegedly defective switch sold by NNI, in the amount of $3,461,301.00 (the "Switch Claim"), and the indemnity claim of unnamed Movants with respect to a pending patent litigation between certain Verizon affiliates and Voxpath Networks, Inc., in an unstated amount (the "Voxpath Indemnity

Claim"). Movants concede in the Setoff Motion, as they must, that these Claims were contingent and unliquidated on the Petition Date; under applicable New York law, such claims (as well as disputed claims, which these are as well), <u>do not</u> give rise to a right of setoff.[1]

3.　　　Movants do not challenge the contingent and disputed nature of these two Claims as of the Petition Date.  Nor do they argue that contingent and disputed claims are subject to setoff under the law of New York, which the parties agree is applicable.  Recognizing that under New York law their setoff claim fails, Movants conveniently ignore any discussion of New York law on contingent and disputed claims, and instead conclusorily assume that they had existing setoff rights on the Petition Date and the date of the Customer Order.  They further assume that such rights were preserved by the Customer Order, as well as the subsequent Orders approving various asset sales, and that the only issue on this Setoff Motion is whether their Claims satisfy the additional requirements imposed by section 553 of title 11 of the United States Code (the "Bankruptcy Code").  In so doing, Movants put the cart before the horse.  A threshold requirement for effecting a setoff against a debtor under section 553 is that the creditor have a valid setoff right under applicable nonbankruptcy law <u>on the petition date</u>.  As Movants had no such right under New York law as to these Claims, the analysis does not even reach the additional requirements imposed by section 553.

4.　　　It is no answer to contend, as Movants do, that the contingent Switch Claim became non-contingent subsequent to the Petition Date, and that as a result they can go back in

_____

[1]　　　The remaining claims with respect to which Movants seek to impose a setoff are a portion of non-contingent prepetition liquidated trade claims asserted by various Verizon affiliates against NNI (collectively, the "Telecom Charges").  Movants seek to impose a setoff in the amount of $251,798.05 with respect to the Telecom Charges (<u>see</u> Ex. A to the Setoff Motion).  As set forth in the Declaration of Richard Boris, dated November 8, 2010 (the "Boris Decl.") submitted herewith, and Exhibit 1 thereto, NNI concedes that $162,464.79 of such amount was owed by NNI to various Verizon affiliates as of the Petition Date, and agrees that such Verizon affiliates had prepetition setoff rights with respect to such amounts.  However, NNI disputes the remaining amount of Telecom Charges claimed as a setoff.

2

time and consider that Claim to be non-contingent as of the Petition Date.  This contention is not only legally baseless, but is also irrelevant because, as a matter of law, the claimed setoff rights are measured as of the Petition Date.

5.      In short, Movants have failed to meet their burden of establishing a valid setoff right under New York law with respect to their contingent and disputed Switch Claim and Voxpath Indemnity Claim on either of the relevant dates.  Accordingly, their request for an Order determining that they are entitled to "effectuate a setoff," and directing NNI to satisfy their alleged "setoff rights" with respect to those Claims, should be denied.

## Background

### A.      Procedural History

6.      On the Petition Date, January 14, 2009, NNI and certain of its affiliates (collectively, the "Debtors")[2], other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

---

[2]      The Debtors (defined below) in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

3

9.       On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10.      On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI and itself one of the Debtors, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the other Debtors' chapter 11 cases [D.I. 1099]. From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.      Debtors' Corporate Structure and Business**

11.      Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers. Nortel's technologies spanned access and core networks and supported multimedia and business-critical applications. Nortel's networking solutions consisted of hardware, software and services. Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

12.     Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[3]

C.     **Case Milestones**

13.     On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event it were unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632].  In addition, the Debtors have obtained Court approval for the sale of certain assets of the Debtors' Multi-Service Switch (formerly known as "Passport") business to Ericsson [D.I. 4054].  From time to time the Debtors have and may continue to sell,

---

[3]     Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

transfer or assign their interests in other assets as efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14.     On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 p.m. (Eastern Time) as the general bar date for filing proofs of claim or interests against the Debtors (other than NN CALA) [D.I. 1280].  On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

15.     On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580].  On September 3, 2010, the Debtors filed the Proposed Disclosure Statement for the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3874].

<u>**Facts Relevant to the Setoff Motion**</u>

**A.**     <u>**Certain Verizon Affiliates Withhold Payment of Amounts Due to NNI**</u>

16.     Shortly after the Petition Date, a number of customers of the Debtors, including various Verizon affiliates, demanded that they be permitted to apply existing customer credits to amounts owed to NNI.  In furtherance of such demand, on or about January 20, 2009, without seeking leave of the Court, certain affiliates of Verizon Communications Inc. withheld payments that were otherwise due and owing to NNI.  The outstanding amount owed by the withholding Verizon entities was in excess of $137,000,000, of which more than $72,000,000 was past due. According to Movants, at the time those Verizon affiliates withheld these payments (the amount of which they say was $131,000,000, rather than $137,000,000), NNI owed a total of "just under $3.98 Million" to various Verizon affiliates.  (Setoff Motion ¶ 6.)  Of that "$3.98 Million,"

however, by Movants' own admission, over $3.4 million was "contingent and unliquidated" at the time they withheld the payments.  (Setoff Motion ¶ 10.)

**B.    The Customer Order**

17.    At the Debtors' request, to clarify the rights of their customers such as various Verizon affiliates with respect to certain customer credits, on February 5, 2009 the Court entered an Order Clarifying Relief Granted Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code Authorizing Debtors to Honor Prepetition Obligations to their Customers [D.I. 237] (the "Customer Order").  The Customer Order included the following paragraph:  "All rights of Debtors' customers to assert rights of setoff or recoupment are expressly reserved notwithstanding any payments by such customers to the Debtors."  (Id. ¶ 5.)

18.    As reflected in correspondence between counsel, the parties understood that this language was added to ensure that any existing rights of setoff held by any customer at the time the Customer Order was entered were preserved.  (See Setoff Motion ¶¶ 16-17.)  Neither this language nor any other provision in the Order created setoff rights that did not otherwise exist at the time the Order was entered, or expanded such rights if they did exist at that time.

19.    During the first week of February 2009, the Verizon affiliates that had been withholding payments resumed making payments to NNI on outstanding invoices, and following the entry of the Customer Order continued making payments to NNI until early 2010.

**C.    Proof of Claim Filed by the "Verizon Affiliates"**

20.    On September 30, 2009, "The Affiliates of Verizon Communications Inc." filed a proof of claim against NNI that is listed on the Debtors' claim register as claim number 5521 (the "Proof of Claim").  (A copy of the Proof of Claim is attached hereto as **Exhibit A**.)  The

total amount of the claim "at Time Case Filed" recorded on the Proof of Claim was $11,207,760.90. The form notes that the claim is secured by "[r]ights of setoff."

21.    The attachment to the Proof of Claim (the "<u>Proof of Claim Attachment</u>") includes, <u>inter alia</u>, three distinct sections describing purported claims asserted by various Verizon affiliates against NNI.

22.    The first of these sections sets forth a claim for an aggregate amount of $516,674.97 in Telecom Charges, described as "liquidated amounts owed by Nortel Networks Inc. to Verizon." (Proof of Claim Attachment ¶ 2.) Movants claim $251,798.05 of this sum as a setoff. (<u>See</u> Setoff Motion Ex. A.)[4] NNI concedes that $162,464.79 of such amount was owed by NNI to various Verizon affiliates as of the Petition Date, and agrees that such Verizon affiliates had prepetition setoff rights with respect to such amounts. However, NNI disputes the remaining amount claimed as a setoff. (<u>See</u> Boris Decl. and Ex. 1 thereto.)[5]

23.    The second section of the Proof of Claim Attachment describes the Switch Claim as a purported prepetition sum of $10,691,085.93 allegedly owed by NNI to VSSI, under the "warranty and/or indemnification provisions" of a Global Business Partner Agreement between Verizon Network Integration Corporation and NNI (the "<u>GBPA</u>"), pursuant to which NNI supplied an allegedly faulty telecommunications switch to VSSI that was "incorporated into a project that VSSI performed for one of its customers." (Proof of Claim Attachment ¶ 5.) The GBPA is governed by New York law. (<u>See</u> Setoff Motion ¶ 27 n.4.)

24.    At the time the Proof of Claim was filed, the underlying dispute between VSSI and its customer regarding the project was still unresolved, such that, as Movants concede, the

---

[4]    This figure is calculated by subtracting from the "Net Setoff/Credit" amount in Exhibit A to the Setoff Motion ($3,713,099.05) the amount of the contingent and disputed Switch Claim in Exhibit A ($3,461,301.00).

[5]    NNI further reserves its right to object to the remainder of the Telecom Charges, as well as the Switch Claim and the Voxpath Indemnity Claim (each discussed below), on any and all grounds.

Switch Claim was contingent and unliquidated.  (Setoff Motion ¶ 10.)  According to Movants,

subsequent to the filing of the Proof of Claim, VSSI resolved its dispute with the customer,

reducing the Switch Claim to $3,461,301.00.[6]  (Id.)  As set forth below, however, VSSI does not

and cannot demonstrate that a postpetition act can transform a Claim that was indisputably

contingent as of the Petition Date and not eligible for setoff, into a claim that is so eligible.

25.     As will be detailed in the objection NNI intends to file with respect to the Proof of

Claim (the "Objection"), it disputes the Switch Claim in a variety of respects.  (Boris Decl. ¶ 7.)

For example, in footnote 3 on page 4 of the Setoff Motion, Movants enumerate the purported

problems with the CS2100 VoIP system that gave rise to the Switch Claim.  Not only does NNI

dispute that its performance was deficient or caused the CS2100 issues VSSI apparently had with

its "Customer X," but the documents Movants have produced to NNI demonstrate that if the

CS2100 did not function properly, the cause was not the Nortel product but was something else

in the system Movants sold to Customer X.[7]  Accordingly, Movants' allegations concerning this

Claim have no merit.

---

[6]     In Exhibit A to their Setoff Motion, Movants misleadingly list the Switch Claim as a prepetition receivable, just as the Telecom Charges, as though the amount of such Claim had been fixed and liquidated as of the Petition Date.  (See Setoff Motion Ex. A.)  By Movants' own admission, however, such Claim was "contingent and unliquidated" at that time, and did not become "non-contingent and fully liquidated" until after they filed the Proof of Claim.  (Setoff Motion ¶ 10.)

[7]     For example:

(1)     Movants assert that Simultaneous Ring ("SimRing"), one of the features Nortel provided in connection with the CS2100, only supported 10,000 users, rather than the larger number Customer X contemplated.  However, according to Movants' own records, SimRing worked properly for up to 10,000 end users, the number for which it was designed, and as reflected in the technical specifications Nortel provided to relevant Verizon entities.  While there was discussion about extending the capacity of SimRing to 25,000 end users, Movants' records note this would be "Custom development" "not part of any Plan of Intent or Plan of Record" and that it would "[r]equire[] funding."

(2)     Movants assert that Nortel's Secure RTP ("SRTP") was not fully functional.  NNI disputes this, and asserts that the SRTP firmware feature functioned as required by the relevant Statement of Work.  Customer X raised other security concerns with the system, but Nortel addressed these by providing a software patch.

(3)     Movants assert that Nortel's Geographic Redundancy ("GR") feature did not function properly.  In fact, Nortel never agreed to provide GR in all elements of the CS2100 or associated products delivered with the

26.     The third section of the Proof of Claim Attachment relates to the Voxpath Indemnity Claim, which is a purported indemnity claim arising out of a pending patent infringement action entitled <u>Voxpath Networks, Inc. v. Verizon Commc'ns, Inc. et al.</u>, No. 08-cv-127 (E.D. Tex), in which several Verizon entities are named as defendants (the "<u>Voxpath Litigation</u>"). (Proof of Claim Attachment ¶ 6.) The Proof of Claim Attachment states that "Verizon has procured certain products and services from Nortel, including, but not limited to, PBX devices and CS2K softswitches, that may be implicated in the Voxpath litigation." (<u>Id.</u>) Movants seek to recover "(i) costs and expenses associated with the defense of the Voxpath Litigation that relate to the Nortel products and services, and (ii) any awards, judgments and/or settlements of the Voxpath Litigation that relate to the Nortel products and services." (<u>Id.</u>)

27.     As admitted by Movants in the Setoff Motion, the Voxpath Litigation "has not proceeded to a point at which the fundamental facts are sufficiently developed," and, as of the date they filed the Setoff Motion, Movants were not even "able to identify the agreements with Nortel [if any] that are implicated" in that Litigation. (<u>See</u> Setoff Motion ¶ 12.) Indeed, Movants do not even identify which of the Verizon entities are asserting this contingent and disputed Claim.[8] As such, the Voxpath Indemnity Claim was and is contingent and unliquidated.

---

system, but only to the extent required by the relevant Statement of Work, and to that extent the feature functioned properly.

(4)     Movants assert that Customer X experienced ongoing technical deficiencies with Nortel's Meet-Me Audio Conferencing feature ("Meet-Me"). However, as VSSI concedes in documents it produced to NNI, the majority of such problems were attributable not to the Nortel equipment, but to certain third-party routers in Verizon's own transport network. Once Verizon replaced such routers, the problems virtually disappeared.

(5)     Movants assert that Nortel's Wireless Client Manager ("WiCM") feature did not work with the CS2100 system. However, when Customer X raised an issue regarding the functioning of this feature, Nortel offered an appropriate solution. Before the solution could be implemented, Customer X decided it no longer wanted the WiCM feature. Accordingly, NNI assisted in the incorporation of the WiCM hardware into another component of the system and refunded the cost of WiCM software to VSSI.

[8]     Accordingly, as discussed <u>infra</u> in footnote 14 on page 22, even if they otherwise had a setoff right, which they do not, Movants would fail to meet their burden of demonstrating "mutuality" as required to effect a setoff against a debtor under section 553 of the Bankruptcy Code.

10

It also has no merit, and NNI disputes that it has any liability to any Verizon affiliate whatsoever with respect to such Claim.  (Boris Decl. ¶¶ 8-9.)

**D.    Certain Verizon Affiliates Withhold
       Payment of Their Postpetition Obligations to NNI**

28.    On or about April 1, 2010, certain Verizon affiliates placed an "administrative hold" on payments due and owing to NNI.  As of May 20, 2010, the outstanding amount withheld by these Verizon entities was approximately $10,379,084.61, of which approximately $7,129,132.84 was past due.  These amounts all arose postpetition, and were fixed, liquidated, and undisputed.  Nevertheless, as they had previously, without seeking leave of Court, these Verizon affiliates took the unilateral and improper action of withholding payment of such undisputed amounts due and owing to NNI.

**E.    The Debtors' Motions Against Certain Affiliates of Verizon**

29.    In light of the wrongful withholding by certain Verizon affiliates of postpetition amounts due and owing to NNI, on May 21, 2010, the Debtors filed a Motion for Entry of an Order Enforcing the Automatic Stay Against Certain Affiliates of Verizon Communications Inc. [D.I. 3036] (the "Stay Motion").  In the Stay Motion, the Debtors requested an order enforcing the automatic stay against the Verizon affiliates with respect to any and all acts to collect, assess, or recover on any or all parts of the prepetition claims asserted by those entities against the Debtors in the Proof of Claim, including, without limitation, the wrongful withholding of payments on postpetition, liquidated trade amounts that were due and owing.

30.    Together with the Stay Motion, the Debtors filed a Motion for Entry of an Order Directing an Examination of and Production of Certain Documents by Verizon Communications Inc. and Its Affiliates Pursuant to Fed. R. Bankr. P. 2004 [D.I. 3034] (the "2004 Motion").  The 2004 Motion was necessitated by Movants' failure, despite repeated requests by the Debtors'

11

counsel, to provide information and documents in support of the Switch Claim and the Voxpath

Indemnity Claim.

**F.**    **Resolution of the Stay Motion and the 2004 Motion**

31.    On June 10, 2010, the Court entered an Agreed Protective Order between the

Debtors and the Affiliates of Verizon Communications Inc. [D.I. 3168] (the "Protective Order"),

to, inter alia, facilitate the disclosure of information and production of documents by Verizon

affiliates to NNI as requested in the 2004 Motion.  Thereafter, VSSI began to produce a

substantial number of documents relating to the Switch Claim.

32.    The parties later resolved the Stay Motion and the 2004 Motion by entering into a

Stipulation and Order Resolving Debtors' Motions Against Verizon, which was approved by the

Court on August 25, 2010 [D.I. 3827] (the "Stipulation and Order").

33.    Pursuant to the Stipulation, the Verizon affiliates were required, inter alia, to halt

the administrative hold, and to release all funds they had withheld with respect to invoices issued

by NNI.[9]  These Verizon entities have complied with the terms of the Stipulation and Order by

releasing all withheld funds to NNI.

34.    In addition, the Stipulation and Order required all Verizon affiliates claiming a

right of setoff and/or recoupment against any of the Debtors to file a motion requesting that the

Court determine, with respect to each moving Verizon affiliate:

>     (a)    whether such entity had a prepetition right of setoff and/or right of
>             recoupment against a particular Debtor as of the date of the Customer
>             Order, and if so, in what amount;
>
>     (b)    the extent to which, if at all, such entity preserved such right; and

---

[9]    The outstanding amount withheld, as of August 24, 2010, the date the Stipulation and Order was entered, was approximately $5,244,209.78, all of which arose postpetition and none of which was disputed.

(c)     whether such entity is currently entitled to exercise, enforce, implement and/or effectuate such right (a) through the withholding of payment of invoices by it or by another Verizon affiliate from the Debtor, (b) by recovering such amount from the Debtor's estate, or (c) by some other means.

(Stipulation and Order ¶ 3.)

35.     Issues (b) and (c) would only become relevant if the Court determined issue (a) in the affirmative, because in the absence of a prepetition setoff right, the moving Verizon affiliates would have had no right to preserve at the time the Customer Order was entered, and thus would have no right to enforce or effectuate now.

36.     Pursuant to the Stipulation and Order, the Debtors have withdrawn the Stay Motion and the 2004 Motion.

37.     On September 25, 2010, in accordance with the Stipulation and Order, Movants filed the Setoff Motion.

**Movants' Key Admissions**

38.     Movants have made a number of key admissions in the Setoff Motion that are highly relevant to the issues before the Court.  These include the following:

(a)     The Customer Order was not intended to create any right that Movants did not have at the time such Order was entered, or to expand any right that did exist.  (See Setoff Motion ¶¶ 15-16.)

(b)     The Switch Claim was contingent and unliquidated as of the Petition Date, at the time the Customer Order was entered, and at the time Verizon affiliates filed the Proof of Claim.  (Id. ¶ 10.)

(c)     The Voxpath Indemnity Claim was contingent and unliquidated as of the Petition Date, at the time the Customer Order was entered, at the time Verizon affiliates filed the Proof of Claim, and as of the date the Setoff Motion was filed with the Court.  (Id. ¶¶ 12-13.)

(d)     Both the Switch Claim and the Voxpath Indemnity Claim arise out of the GBPA.  (Id. ¶¶ 8 and 11.)  The applicable nonbankruptcy law for purposes

13

of determining the rights and obligations under the GBPA is New York
state law, which expressly governs that agreement.  (Id. ¶ 27 n.4.)

### Argument

### Point I

### Movants Have No Right of Setoff Under Section 553
### With Respect to the Switch Claim and the Voxpath Indemnity
### Claim Because They Never Had a State Law Setoff Right to Preserve

**A.**   **Section 553 of the Bankruptcy Code Does Not Create a Setoff Right**

39.    Section 553 of the Bankruptcy Code provides, in pertinent part, that "this title
does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor
that arose before the commencement of the case under this title against a claim of such creditor
against the debtor that arose before the commencement of the case."  11 U.S.C. § 553(a) (2010).

40.    It is well established that section 553 does not create rights of setoff, but merely
"preserves for the creditor's benefit any setoff right that it may have under applicable
nonbankruptcy law."  In re SemCrude, L.P., 399 B.R. 388, 393 (Bankr. D. Del. 2009) (citation
omitted), aff'd, 428 B.R. 590 (D. Del. 2010).  Where a creditor has such an existing right under
nonbankruptcy law, it is entitled to effect a setoff against a debtor only if it satisfies "additional
restrictions" imposed by section 553, id.; see also Citizens Bank of Maryland v. Strumpf, 516
U.S. 16, 18 (1995) ("Although no federal right of setoff is created by the Bankruptcy Code,
[section] 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists
is preserved in bankruptcy."); United States ex rel. IRS v. Norton, 717 F.2d 767, 772 (3d Cir.
1983) ("[T]his provision is not an independent source of law governing setoff[.]"); In re Delta
Air Lines, 341 B.R. 439, 445 (Bankr. S.D.N.Y. 2006) ("[I]f no right of setoff under state law
existed before commencement of the case, none exists under section 553"), and the Court

14

exercises its discretion to allow the setoff.  See Norton, 717 F.2d at 772; In re Garden Ridge Corp., 338 B.R. 627, 632 (Bankr. D. Del. 2006).[10]

41.     Accordingly, as a threshold matter, a party asserting a right of setoff against a debtor does not even reach the "additional" requirements imposed by section 553, In re SemCrude, L.P., 399 B.R. at 393, unless it has first met its burden to demonstrate that it had a valid state law (or, where applicable, federal common law) right of setoff at the time the debtor filed its bankruptcy petition.  See In re Garden Ridge, 338 B.R. at 632; In re Lason, Inc., 314 B.R. 296, 305 (Bankr. D. Del. 2004).  If it fails to meet its burden, it has no setoff rights, and there is no right to preserve under section 553.  See In re Garden Ridge, 338 B.R. at 633 (court rejects creditor's attempt to effect a setoff under section 553 because the creditor could not establish that it met the requirements for a state law setoff under Texas law); In re WorldCom, 304 B.R. at 619 (failure to meet state law requirements for setoff precludes assertion of setoff under section 553).

42.     Movants concede in the Setoff Motion, as they must, that the Customer Order, like section 553, did not create any setoff right that did not exist at the time the Order was entered, but merely preserved existing rights.  (See Setoff Motion ¶¶ 15-16.)  They also agreed in the Stipulation and Order that the central issue on the Setoff Motion is whether they "had a prepetition right of setoff and/or right of recoupment against NNI . . . as of the date of the Prepetition [Customer] Order."  (Stipulation and Order ¶ 3.)  Yet Movants make no effort to meet their burden to demonstrate the existence of such a right on such date.  Instead, they assume that they had such a state law right, addressing the issue only to the extent of this conclusory

---

[10]     Nor may a court employ section 553 to enlarge a party's right of setoff in bankruptcy.  See, e.g., Norton, 717 F.2d at 772; In re WorldCom, Inc., 304 B.R. 611, 619 (Bankr. S.D.N.Y. 2004); In re Delta Air Lines, 341 B.R. at 443; see also 5 COLLIER ON BANKRUPTCY ¶ 553.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

assertion: "Verizon's pre-petition setoff rights against Nortel . . . are plainly valid, [and] existed under non-bankruptcy law prior to the Petition Date in these cases . . . ." (Setoff Motion ¶ 32.) They then proceed to focus their argument solely on the additional requirements imposed by section 553.

43.    Movants have plainly failed to carry their burden of demonstrating that any moving Verizon affiliate had an existing state law right of setoff with respect to the Switch Claim or the Voxpath Indemnity Claim on the Petition Date and at the time the Customer Order was entered.  See, e.g., In re SemCrude, L.P., 399 B.R. at 393, In re Garden Ridge, 338 B.R. at 633.  Having failed to satisfy this threshold requirement to effect a setoff against NNI, Movants are not entitled to the requested relief, and the Setoff Motion should be denied.

**B.**       **Contingent or Disputed Claims Cannot Be Setoff Under New York State Law**

44.    The parties agree that the applicable state law is New York law.[11]  While New York law recognizes both a common law and statutory right to setoff, Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.), 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995), neither is available when the creditor's claim is contingent.  First, it has long been the common law of New York that a contingent claim – one that is "marked by uncertainty as to whether any obligation will ever arise," id. (citation omitted) – cannot be setoff against a debtor's non-contingent liquidated claim.  See, e.g., Dunn v. Uvalde Asphalt Paving Co., 67 N.E. 439 (N.Y. 1903) ("[T]here can be no such thing as a right to 'set off' a possible but unestablished liability unliquidated in amount, against a liquidated legal claim that is due and payable."); Wallace v.

---

[11]    See Setoff Motion ¶ 27 n.4 ("The substantive state law applicable to most, if not all, aspects of its [Verizon's] business relationship with Nortel is the law of the state of New York.").  Indeed, both the Switch Claim and the Voxpath Indemnity Claim are subject to the GBPA, which, as Movants concede, is expressly governed by New York law.  (Id.)

16

Merrill Lynch Capital Servs., Inc., 29 A.D.3d 382, 383 (N.Y. App. Div. 2006) (denying setoff
where plaintiff's claim against defendant was contingent on the principal obligor defaulting on
the underlying debt instrument); Willett v. Lincolnshire Mgmt., Inc., 302 A.D.2d 271, 271 (N.Y.
App. Div. 2003) (no setoff right under New York state law for a "possible, unliquidated liability
against a liquidated claim that is due and payable") (citation omitted); Spodek v. Park Prop. Dev.
Assocs., 263 A.D.2d 478, 478-79 (N.Y. App. Div. 1999) (confirming that under New York state
law, "there is no right to setoff a possible, unliquidated liability against a liquidated claim that is
due and payable").

45.    The law is no different under the New York statute giving rise to a setoff right,
section 151 of the New York Debtor and Creditor Law.[12]  See In re Westchester, 181 B.R. at
740; Trojan Hardware Co. v. Bonacquisti Constr. Corp., 141 A.D.2d 278, 281 (N.Y. App. Div.
1988).  Under this provision, just as with the common law, a contingent liability cannot be setoff
against another party's non-contingent claim.  See Trojan, 141 A.D.2d at 281-82 (rejecting an
attempt to setoff contingent liability under section 151 because language of the statute cannot be
read to include such a liability).

46.    Nor can a creditor setoff a disputed claim against a non-contingent, liquidated
obligation under New York law.  See Ferguson v. Lion Holding, Inc., 312 F.Supp.2d 484, 503
(S.D.N.Y. 2004); New Haven Props. Ltd. v. Grinberg, 293 A.D.2d 386, 387 (N.Y. App. Div.
2002) (no setoff allowed for disputed, unliquidated liability against liquidated, past due liability);
Termini v. John Arthur Exhibitions, Inc., 9 Misc.2d 833, 834-35 (N.Y. Sup. Ct. 1957) (denying

---

[12]    Section 151 of New York Debtor and Creditor Law provides, in pertinent part:

"Every debtor shall have the right upon . . . the filing of a petition under any of the provisions of the federal
bankruptcy act or amendments thereto . . . by or against a creditor, to set off and apply against any
indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount owing from such
debtor to such creditor . . ."

N.Y. Debt. & Cred. Law § 151 (2010).

setoff argument because the underlying claim was being litigated in another jurisdiction and was thus disputed); see also Correspondent Servs. Corp. v. J.V.W. Inv. Ltd., 524 F.Supp.2d 412, 424 (S.D.N.Y. 2007) (no right of setoff for "pending disputed and unliquidated claim against [the other party's] present entitlement to damages").

47.     In Ferguson, for example, the United States District Court for the Southern District of New York rejected the defendant's attempt – like Movants' here – to setoff its disputed indemnity claim against plaintiff's liquidated claim.  The court held that under New York law "there is no right to set off a possible, unliquidated liability against a liquidated claim that is due and payable[,]" and rejected defendant's setoff defense.  312 F.Supp.2d. at 503 (citation and internal quotation marks omitted).  Similarly, in Willett, the Appellate Division of New York Supreme Court denied defendant's setoff argument because "[t]he obligation purportedly owing from plaintiff to [defendant] is currently being disputed[.]"  302 A.D.2d at 271.

48.     Under New York law, then, a contingent and disputed claim such as the Switch Claim and the Voxpath Indemnity Claim cannot be setoff against an undisputed, fixed claim, such as NNI's claim for unpaid invoices against various Verizon entities.

**C.     The Switch Claim and the Voxpath Claim Were Contingent and Disputed
         On the Petition Date and the Date of Entry of the Customer Order**

49.     Here, as Movants admit in the Setoff Motion, both the Switch Claim and the Voxpath Indemnity Claim were contingent as of the Petition Date, and, in fact, at the time the Proof of Claim was filed, some eight months after the Petition Date for NNI and seven months after entry of the Customer Order.  (Setoff Motion ¶¶ 10-13.)

50.     Moreover, as will be discussed further in NNI's Objection to these Claims, the Claims are disputed.  These Claims are indemnity claims that depend on the moving Verizon

affiliate demonstrating that a Nortel product or service caused it to incur underlying damages to its customer.  Neither VSSI, with respect to the Switch Claim, nor whichever unidentified Verizon affiliate(s) is the claimant with respect to the Voxpath Indemnity Claim, has made such a showing.

   i.   *The Switch Claim*

51.     With respect to the Switch Claim, NNI disputes VSSI's contention that it bears responsibility for damages – now alleged to amount to $3,461,301.00 – incurred in VSSI's settlement with its Customer X.  (Boris Decl. ¶ 7.)  (Movants used a figure of $10,691,085.93 for the Switch Claim in the Proof of Claim.)  Indeed, as discussed <u>supra</u> in paragraph 25 and footnote 7, NNI denies VSSI's claim that it was a Nortel product that caused the CS-2100 system VSSI sold to its Customer X to malfunction.  VSSI has produced thousands of pages of documents to NNI relating to the Switch Claim, but they fail to demonstrate that there is any merit to that Claim.  To the contrary, the documents support NNI's position that the primary cause of the malfunction in that system was a non-Nortel component, for which neither NNI, nor any other Nortel entity for that matter, bears any responsibility.

52.     In contrast to VSSI's contingent and disputed Switch Claim, the prepetition liabilities VSSI owed to NNI against which VSSI claims a right of setoff were, by Movants' own admission, liquidated sums arising from undisputed prepetition invoices.  According to Movants, the amount VSSI owed NNI on these invoices was approximately $5,984,514.10 as of the Petition Date.  (<u>See</u> Setoff Motion Ex. A, "Verizon Accounts Payable to Nortel" column for Verizon Select Services Inc.)  As discussed above, under New York law, a party cannot setoff its contingent, disputed claims against such undisputed, liquidated sums.  <u>See, e.g.</u>, <u>In re Westchester</u>, 181 B.R. at 740; <u>Willett</u>, 302 A.D.2d at 271; <u>Grinberg</u>, 293 A.D.2d at 387.

53. Movants' arguments as to why VSSI had an enforceable right to setoff the contingent and disputed Switch Claim against the undisputed, liquidated sums it owed NNI on the Petition Date, as well as the date of entry of the Customer Order, are specious. First, notwithstanding their concession that the Switch Claim was contingent at the time VSSI purportedly "preserved" its setoff right, Movants argue that VSSI has an enforceable setoff right because, according to Movants, that Claim became "non-contingent and fully liquidated as a result of the settlement reached between Verizon and Customer X in December, 2009" (Setoff Motion ¶ 10). Movants cite no authority for this fanciful contention that under New York law a claim that is not subject to setoff on the Petition Date can, postpetition, retroactively become eligible for setoff. Indeed, the only New York cases on setoff that Movants cite are to support the undisputed proposition that "New York law, in turn, permits parties to setoff mutual debts." (Setoff Motion ¶ 27 n.4.)[13]

54. To bolster this unsupported argument, Movants misleadingly include the Switch Claim, at its now "liquidated," albeit disputed amount of $3,461,301, as part of Exhibit A to the Setoff Motion, entitled a "Liquidated Setoff Analysis." In that analysis, Movants purport to list

---

[13] Movants make no argument whatsoever concerning New York law on setoffs of contingent and disputed claims. Instead, in arguing that VSSI and other Movants meet the requirements of section 553(a) of the Bankruptcy Code, Movants state that "unliquidated claims are fully eligible for setoff in bankruptcy, either by being liquidated before the setoff is effectuated, (as occurred with the Switch Claim) or – as is necessary for the Voxpath Indemnity Claim . . . by being estimated for setoff purposes . . . . " (Setoff Motion ¶ 35.) In support, Movants cite and quote from the section of Collier on Bankruptcy that addresses the issue of what constitutes a creditor's "claim" for the purpose of applying section 553(a), 5 COLLIER ON BANKRUPTCY ¶ 553.03 (16th Ed. 2010). That section of Collier includes "disputed claims" in its definition of "claim." The issue here, of course, is not what constitutes a "claim" for purposes of section 553(a), but the threshold question whether any Verizon entity had an underlying prepetition right of setoff under New York law that could be preserved by the Customer Order, or for that matter, by section 553. The section of Collier that Movants cite does not address this threshold question, and is therefore inapposite. However, the next section of Collier, ¶ 553.04, entitled "Source of Right," is relevant to the threshold issue. That section states that "[s]ection 553 of the Bankruptcy Code does not create any setoff right; it merely preserves certain rights of setoff that exist under applicable nonbankruptcy law." Id. It further states that "the threshold question in every case involving an asserted right of setoff is the source and validity of the underlying right." Id. Here, the parties agree that the source of law applicable to Movants' claimed right of setoff is New York law. Pursuant to New York law, Movants never had a valid right of setoff with respect to any of the contingent and disputed claims.

non-contingent and liquidated receivables allegedly owed by NNI to certain Verizon affiliates prepetition, and the payables owed by such affiliates to NNI prepetition, contending that the combination of receivables and payables gave rise to setoff rights as of the Petition Date.  (Setoff Motion Ex. A.)  By Movants' own admission, however, as of the Petition Date, and in fact until December, 2009, the Switch Claim was contingent and unliquidated.  (Setoff Motion ¶ 10.)  Accordingly, under New York law it could not be the subject of a setoff.  It thus does not belong on a list of prepetition "liquidated" receivables and payables.

55.     The Customer Order preserved Verizon entities' existing prepetition rights, if any, for assertion later.  It did not allow any Verizon entity, including VSSI, to expand those rights retroactively based on postpetition factual developments, and thereby to transform a claim that was not subject to setoff on the Petition Date (or the date of entry of the Customer Order) into a claim that could become subject to setoff postpetition whenever such entity attempted to assert it.  If Movants believe otherwise, they have the burden of proving it, and they have utterly failed to do so.

56.     Second, Movants simply state, _ipse dixit_, that VSSI's setoff right is "plainly valid, existed under non-bankruptcy law prior to the Petition Date in these cases." (Setoff Motion ¶ 32.)  That Movants have chosen to make this unsupported conclusory assertion does not make it true.  As discussed above, under applicable New York law, VSSI had no setoff right as to the Switch Claim at the time it purported to preserve its existing right, and thus has no setoff right to assert or enforce with respect to that Claim now.

### ii.    *The Voxpath Indemnity Claim*

57.     With respect to the Voxpath Indemnity Claim, Movants not only admit in the Setoff Motion that the Claim was contingent as of the Petition Date and, in fact, at the time they

filed the Proof of Claim (Setoff Motion ¶¶ 11-13), they admit that the Claim is still contingent, as the underlying patent litigation between Verizon and Voxpath "has not proceeded to a point at which the fundamental facts are sufficiently developed."  (Setoff Motion ¶ 12.)

58.    Nor have Movants provided any evidence that their contingent, disputed, unliquidated Voxpath Indemnity Claim has any merit.  Indeed, by Movants' own admission, the Voxpath Litigation that they contend gives rise to an indemnity obligation is at such an early stage that there has not even been a determination of the scope of Voxpath's patent claims against the Verizon affiliates that are defendants in Litigation. (Setoff Motion ¶ 12.) Movants, in fact, cannot even "identify the agreements with Nortel that are implicated . . . ." (Id.)  Based on the facts available to it, NNI believes that neither it, nor any of its affiliates, has any liability on the Voxpath Indemnity Claim. (Boris Decl. ¶¶ 8-9.)[14]

59.    For the reasons stated above, Movants have fallen far short of satisfying their burden on the Setoff Motion.  They have failed to demonstrate that VSSI had a prepetition right of setoff under New York law with respect to the Switch Claim, or that any Verizon entity had such a right with respect to the Voxpath Indemnity Claim.  Accordingly, with respect to these

---

[14]    Even if the Voxpath Indemnity Claim were not contingent and disputed, Movants would not be entitled to the relief sought in the Setoff Motion as to that Claim because they would fail to meet their burden of satisfying the mutuality requirement under section 553.  Under section 553, no setoff can be effected against a debtor unless mutuality exists between the creditor's claim and the debt owed by the creditor to the debtor.  See Cohen v. Sav. Bldg. & Loan Co. (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.), 896 F.2d 54, 59 (3d Cir. 1990); In re Semcrude, 399 B.R. at 393.  For the purpose of section 553, debts are mutual only when "they are due to and from the same persons in the same capacity."  In re Semcrude, 399 B.R. at 393 (citation omitted).  With respect to the Voxpath Indemnity Claim, Movants fail to even identify which Verizon entity or entities are asserting such Claim and the setoff right.  The Amended Complaint filed in the Voxpath Litigation named four Verizon entities, Verizon Business Network Services Inc., Verizon Teleproducts Corp.,Verizon Select Services Inc., and MCI Communications Services Inc., the former two of which have not been identified by Movants as having had any outstanding payables to NNI as of the Petition Date.  (See Setoff Motion Ex. A.)  To the extent that the Voxpath Indemnity Claim is being asserted by entities that did not owe NNI a debt as of the Petition Date, there could be no enforceable setoff, for lack of mutuality.  In light of the fact that the Voxpath Litigation is at such an early stage that Movants cannot even "identify the agreements with Nortel that are implicated . . . ." (Setoff Motion ¶ 12), Movants are in no position to identify which of the Verizon entity defendants in that Litigation, if any, would incur liability, and thus would be asserting the Claim and the related setoff rights.  To the extent they cannot identify those entities, Movants fail to meet their burden to satisfy the mutuality requirement imposed under section 553.

Claims, Movants had no right of setoff that was preserved by the Customer Order, and thus they have failed to establish any right to effect a setoff against those Claims now.

## Point II

### Movants are Not Entitled to Relief from the Automatic Stay

60.    Movants correctly point out in the Setoff Motion that a creditor must first obtain relief from the automatic stay before it can exercise a right of setoff in a bankruptcy case. (Setoff Motion ¶ 38.)[15]  In order to modify the automatic stay to allow a creditor to exercise its setoff rights under section 553 of the Bankruptcy Code, the creditor must establish that:  (1) there is a debt owed by the creditor to the debtor that arose prior to the bankruptcy case; (2) there is a claim of the creditor against the debtor that arose prior to the bankruptcy case; (3) the debt and the claim are mutual obligations; and (4) the applicable non-bankruptcy law permits a right to set off the debts.  11 U.S.C. § 553(a) (2010); In re Czyzk, 297 B.R. 406, 409 (Bankr. D.N.J. 2003). As demonstrated above, under New York law, VSSI never had a setoff right with respect to the Switch Claim and Movants did not have such right with respect to the Voxpath Indemnity Claim against amounts owed NNI.  Accordingly, they are not entitled to relief from the automatic stay.

## Point III

### Movants Are Not Entitled to the Requested Order
### Directing the NNI Estate to Pay the Amount They Seek on the
### Switch Claim and an Estimated Amount on the Voxpath Indemnity Claim

61.    As part of the relief Movants seek in their Setoff Motion, they request an Order directing NNI to "pay Verizon, out of its Chapter 11 estate and before any distributions are made to creditors, the liquidated sum of $3,713,099.05, plus the estimated sum of the Voxpath

---

[15]    As discussed above, during the course of these cases Verizon affiliates have twice deliberately violated the automatic stay by unilaterally withholding payment of liquidated trade amounts owed to NNI without seeking, let alone obtaining, relief from the stay.

Indemnity Claim, in satisfaction of Verizon's pre-petition setoff rights." (Setoff Motion, Wherefore Clause ¶ (e).)

62.     This request must be rejected for at least two reasons. First, as described above (see supra ¶¶ 49-59), to the extent Movants seek to exercise "prepetition setoff rights" as to the Switch Claim or the Voxpath Indemnity Claim, they are not entitled to do so because they never had such rights under the applicable nonbankruptcy law. Second, as will be discussed in the Objection, NNI disputes these Claims on the merits. Indeed, by Movants' own admission, the Voxpath Indemnity Claim is so speculative and contingent that Movants do not even know the scope of Voxpath's claims against them (Setoff Motion ¶ 12), let alone have any basis to recover on an indemnity theory against NNI. Moreover, as discussed above in paragraph 25 and footnote 7, NNI also disputes VSSI's allegations in the Switch Claim, and its entitlement to the amount it seeks on that Claim. (Boris Decl. ¶ 7.)

63.     As to these Claims, there is no basis for the remedy Movants seek.

64.     Finally, with respect to the Telecom Charges, as discussed in the Boris Decl. ¶ 5, and as reflected in Exhibit 1 to that Declaration, NNI agrees that certain Verizon affiliates have setoff rights for the Telecom Charges in amounts totaling $162,464.79. NNI will work with such entities to devise an appropriate means to ensure that they receive full credit for such amounts. NNI disputes any other claimed setoff rights with respect to the Telecom Charges.

## Conclusion

65.    For the foregoing reasons, the Setoff Motion should be denied.


Dated:  November 8, 2010          CLEARY GOTTLIEB STEEN & HAMILTON LLP
        Wilmington, Delaware
                                  Deborah M. Buell (admitted *pro hac vice*)
                                  James L. Bromley (admitted *pro hac vice*)
                                  Lisa M. Schweitzer (admitted *pro hac vice*)
                                  Neil P. Forrest (admitted *pro hac vice*)
                                  One Liberty Plaza
                                  New York, New York 10006
                                  Telephone:  (212) 225-2000
                                  Facsimile:  (212) 225-3999

                                      - and -

                                  MORRIS, NICHOLS, ARSHT & TUNNELL LLP


                                  */s/ Ann C. Cordo*
                                  Derek C. Abbott (No. 3376)
                                  Eric D. Schwartz (No. 3134)
                                  Ann C. Cordo (No. 4817)
                                  Andrew R. Remming (No. 5120)
                                  1201 North Market Street
                                  P.O. Box 1347
                                  Wilmington, Delaware 19801
                                  Telephone:  (302) 658-9200
                                  Facsimile:  (302) 658-3989

                                  *Counsel for the Debtors*
                                  *and Debtors in Possession*