## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X

In re                                :       Chapter 11

                                      :

Nortel Networks Inc., *et al.*,[1]         :       Case No. 09-10138 (KG)

                                        :

                      Debtors.      :       Jointly Administered

                                        :

                                        :       **Hearing date:  December 8, 2010 at 10:00am (ET)**
                                        :       **Objections due:  December 1, 2010 at 4:00pm (ET)**

-------------------------------------------------------- X

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION RESOLVING THE PROOFS OF CLAIM FILED BY SYSELOG SA

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors' entry into and approving a stipulation (the "Stipulation") with Syselog SA ("Claimant"), attached hereto as **Exhibit B**, which resolves Claimant's proofs of claim against NNI; and granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and the cases were consolidated for procedural purposes only.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.     On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it were unable to maximize value through sales.  Since then, Nortel has sold many of its business units and assets to various purchasers.  Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Facts Relevant to this Motion**

7.     On March 11, 2004, Claimant commenced an action in the *Tribunal de Commerce de Paris* (the "French Court") against NNI and Gordon Technical Consultants, Inc. ("GTCI"), alleging, inter alia, breach of contract (the "French Action").  The claims asserted by Claimant in the French Action arose from the termination of a three-year master services agreement (the

---

[4]     The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

"MSA") concluded between NNI and Claimant on January 1, 2002, pursuant to which NNI

issued purchase orders for technical documentation (including, for example, instructional

brochures packaged with products sold by NNI) to Claimant, and Claimant arranged for the

production of such documentation by subcontractors (including co-defendant GTCI).  Effective

February 24, 2003, NNI terminated the MSA with Claimant on account of Claimant's failure to

perform its obligations under the MSA.  Thereafter, on March 11, 2004, Claimant commenced

the French Action, alleging that NNI's termination of the MSA was wrongful and breached the

terms of the MSA.

8.      On September 24, 2009, Claimant filed sixteen proofs of claim against the

Debtors, which are listed on the Debtors' claim register as claims number 3734, 4889, 4890,

4891, 4892, 4893, 4894, 4895, 4896, 4897, 4898, 4899, 4900, 4901, 4902 and 4903, each in the

amount of €3,254,237.01 (US$4,810,037.90) plus other amounts relating to the relief sought in

the French Action, and each listed as secured in the amount of  €70,000 by virtue of a

counterclaim filed by NNI in the French Action (together, the "Claims").  On November 4, 2009,

Claimant moved the French Court to stay the French Action pending resolution of its Claims by

the Bankruptcy Court, and by order of the French Court of the same date, the French Action was

stayed.

9.      Thereafter, in an effort to negotiate an expeditious resolution of the dispute

between the Debtors and Claimant, the parties entered into settlement discussions.  As a result of

these negotiations, the Debtors, subject to this Court's approval, have reached a compromise

with Claimant reducing and allowing its reduced Claim against NNI ("Claim No. 4902"), and

expunging its Claims against other Debtors, as memorialized in the Stipulation.  The Debtors

believe, in the exercise of their reasonable business judgment, that the resolution of the Claims

through the Stipulation is appropriate and in the best interest of both their estates and their creditors.

10.    Pursuant to the Stipulation[5] and subject to this Court's approval, the Debtors have agreed to reduce and allow Claim No. 4902 in the amount of $750,000.  In consideration of the partial allowance of its Claim against NNI, Claimant has agreed, subject to this Court's approval, to dismiss all claims against the Debtors in the French Action, and to release all claims against the Debtors other than the Claim No. 4902 as allowed.  Accordingly, pursuant to the Stipulation and following this Court's approval thereof, Claimant and the Debtors shall jointly move the French Court to dismiss all claims against the Debtors and Claimant in the French Action.

## Relief Requested

11.    By this Motion, the Debtors seek an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing the Debtors' entry into the Stipulation and approving the Stipulation, and (ii) granting them such other and further relief as the Court deems just and proper.

## Basis for Relief

12.    The Debtors seek authorization to enter into the Stipulation under section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

---

[5]    In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

13.     Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn. Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

14.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of

Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

15.    The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

16.    The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation and request that their entry into the Stipulation be authorized under Bankruptcy Rule 9019.  While the Debtors are prepared to litigate the Claims and believe that they would prevail in such litigation, certain legal and evidentiary issues expose the Debtors to risk and uncertainty were the Claims to be litigated.  NNI unsuccessfully challenged the French Court's jurisdiction over the French Action, based in part on the fact that the MSA is governed by New York law, whereas Claimant asserts claims under French law in the French Action, and the French Court's jurisdiction was affirmed on appeal.  French law appears to be more favorable to Claimant than New York law.  In addition, many witnesses necessary to NNI's defense are former NNI employees who are either unwilling or unavailable to testify, and many of these witnesses are located in France.  If the Claims were to be litigated before this Court, discovery in France would likely be required, which would be both difficult and costly to obtain.

17.    In addition, the Debtors recognize that litigation carries with it inherent uncertainties and that there can be no assurance that litigation of the Claims would achieve a

better result than the one agreed to by the parties and set forth in the Stipulation. The settlement reflected in the Stipulation eliminates sixteen purported claims against the Debtors' estates, each in an amount in excess of $4.8 million, by allowing one claim against NNI in the lesser amount of $750,000. This resolution fairly balances the Debtors' likelihood of success on the merits of the Claims against their interest in avoiding the uncertainty of litigation.

18.    Further, additional litigation of the Claims would result in the estates' expenditure of considerable additional legal fees. In the absence of a settlement, the Debtors' estates would be burdened with the time and costs of ongoing litigation requiring discovery and/or the development of facts going back to 2002 and 2003. This litigation would be protracted, and would either take place in a foreign court, or would involve costly foreign discovery should the Claims be litigated before this Court. In either case, the litigation would be disruptive of the estates' efforts to resolve the matters that are essential to the ultimate resolution of these cases.

19.    Finally, the interests of the creditors militate in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Claims and the avoidance of an uncertain outcome, and the substantial legal expenses that would be incurred, if the Claims were to be further litigated. The Debtors consulted the Creditors' Committee with regard to the Stipulation prior to the filing of this Motion, and the Creditors' Committee has expressed no objection to the Stipulation.

20.    In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

## Notice

21.    Notice of the Motion has been given via first class mail to (i) the Claimant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the

general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

22.    No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  November 17, 2010        CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware

Deborah M. Buell (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*