**EXHIBIT C**


**Disagreement Notice**



# N⊘RTEL

November 16, 2010

<u>VIA FACSIMILE</u>

GENBAND US LLC
GENBAND Inc.
3605 E. Plano Pkwy., Suite 100
Plano, Texas  75074
Attn:  General Counsel

Ladies and Gentlemen:

Reference is made to the Asset Sale Agreement by and among Nortel Networks Corporation ("<u>NNC</u>"), Nortel Networks Limited ("<u>NNL</u>"), Nortel Networks Inc. ("<u>NNI</u>"), the other entities identified therein as Sellers (together with NNC, NNL and NNI, "<u>Nortel</u>"), GENBAND Inc. ("<u>GB</u>") and the other Designated Purchasers that became parties thereto (together with GB, "<u>GENBAND</u>"), dated December 22, 2009, as amended from time to time (the "<u>ASA</u>").  Terms used but not defined in this letter have the meanings ascribed to them in the ASA, save that the terms "EMEA Non-Debtor Seller Directors", "Israeli Assets", "Israeli Company" and "Israeli Liabilities" have the meanings ascribed to them in the EMEA Asset Sale Agreement.

We are in receipt of the Closing Statement prepared by GENBAND dated September 15, 2010 (the "<u>GB Closing Statement</u>").  Pursuant to Section 2.2.3.1(b) of the ASA, please find attached hereto as <u>Annex A</u> a corrected Disagreement Notice from Nortel and the EMEA Sellers in respect of the GB Closing Statement.  We note that the disagreement with the Closing Deferred Profit Amount in the GB Closing Statement arises primarily from differences between GENBAND and Nortel in the interpretation of the definition of "Deferred Profit Amount" in the ASA, rather than differences over calculations.  Accordingly, any disagreement over the interpretation of the "Deferred Profit Amount" definition is a matter of contractual interpretation and we do not intend to waive and expressly reserve our right to pursue all available remedies to resolve any disputes over the Deferred Profit Amount, whether by recourse to judicial relief or otherwise.

In addition, NNI hereby reiterates its position as set forth in its letter to GENBAND dated August 13, 2010 (attached hereto as <u>Annex B</u> for your reference) with respect to the Verizon Receivables, as defined in such letter.

Notwithstanding that this letter shall have been signed by the Joint Administrators and the Joint Israeli Administrators both in their capacities as administrators of the EMEA Debtors for and on behalf of the EMEA Debtors and of the Israeli Company for and on behalf of the Israeli Company, respectively, and in their personal capacities, it is hereby expressly declared that no personal Liability, or any Liability whatsoever, under or in connection with this letter shall fall on the Joint Administrators, the Joint Israeli Administrators or their respective firm, partners, employees, agents, advisers or representatives whether such Liability would arise under paragraph 99(4) of schedule B1 to the Insolvency Act, or otherwise howsoever.

The Joint Administrators and the Joint Israeli Administrators are signatories to this letter in their personal capacities only for the purpose of receiving the benefit of the previous paragraph. Otherwise, for all purposes of this letter, the Joint Administrators and Joint Israeli Administrators act without personal liability as agents of the EMEA Debtors and the Israeli Company, respectively.

It is hereby expressly declared that no personal Liability, or any Liability whatsoever, under or in connection with this letter shall fall on any of the EMEA Non-Debtor Seller Directors howsoever such Liability should arise.

Very truly yours,

NORTEL NETWORKS INC.

By _____
     Name:   Lynn C. Egan
     Title:    Secretary


NORTEL NETWORKS CORPORATION


By _____
     Name:
     Title:


By _____
     Name:
     Title:


NORTEL NETWORKS LIMITED


By _____
     Name:
     Title:


By _____
     Name:
     Title:

Very truly yours,

NORTEL NETWORKS INC.

By _____
      Name:  Lynn C. Egan
      Title:    Secretary

**NORTEL NETWORKS CORPORATION**

By: _____
    Name:  John M. Doolittle
    Title:  Senior Vice-President, Corporate Services
           and Chief Financial Officer

By: _____
    Name:  Clarke E. Glaspell
    Title:  Controller

**NORTEL NETWORKS LIMITED**

By: _____
    Name:  John M. Doolittle
    Title:  Senior Vice-President, Corporate Services
           and Chief Financial Officer

By: _____
    Name:  Clarke E. Glaspell
    Title:  Controller

**SIGNED** for and on behalf of **Nortel Networks**　)
**UK Limited** (in administration) by　)　...................................................................
Alan Bloom　)　Alan Bloom
as Joint Administrator (acting as agent and　·　)
without personal liability) in the presence of:

Witness signature

...................................................................
Name:  RICHARD LAWTON　)
Address:  HERBERT SMITH LLP　)
　　EXCHANGE HOUSE
　　PRIMROSE ST
　　LONDON EC2A 2HS

**SIGNED** for and on behalf of **Nortel GmbH**　)　...................................................................
(in administration) by　)　Alan Bloom
Alan Bloom　)
as Joint Administrator (acting as agent and　)
without personal liability) in the presence of:

Witness signature

...................................................................
Name:  RICHARD LAWTON　)
Address:  HERBERT SMITH LLP　)
　　EXCHANGE HOUSE
　　PRIMROSE ST
　　LONDON EC2A 2HS

**SIGNED** for and on behalf of **Nortel Networks**　)　...................................................................
**SpA** (in administration) by　)　Alan Bloom
Alan Bloom　)
as Joint Administrator (acting as agent and　)
without personal liability) in the presence of:

Witness signature

...................................................................
Name:  RICHARD LAWTON　).
Address:  HERBERT SMITH LLP　)
　　EXCHANGE HOUSE
　　PRIMROSE ST
　　LONDON EC2A 2HS

**SIGNED** for and on behalf of Nortel Networks )
**Hispania S.A.** (in administration) by )        Alan Bloom
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )

Witness signature

Name:  RICHARD LAWTON )
Address:  HERBERT SMITH LLP )
EXCHANGE HOUSE
PRIMROSE ST
LONDON EC2A 2HS

**SIGNED** for and on behalf of Nortel Networks )
**B.V.** (in administration) by )              Alan Bloom
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )

Witness signature

Name:  RICHARD LAWTON )
Address:  HERBERT SMITH LLP )
EXCHANGE HOUSE
PRIMROSE ST
LONDON EC2A 2HS

**SIGNED** for and on behalf of Nortel Networks )
**N.V.** (in administration) by )              Alan Bloom
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )

Witness signature

Name:  RICHARD LAWTON )
Address:  HERBERT SMITH LLP )
EXCHANGE HOUSE
PRIMROSE ST
LONDON EC2A 2HS

**SIGNED** for and on behalf of Nortel Networks )
**(Austria) GmbH** (in administration) by )
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )

Alan Bloom

Witness signature

Name:  RICHARD LAWTON )
Address:  HERBERT SMITH LLP )
          EXCHANGE HOUSE
          PRIMROSE ST
          LONDON  EC2A 2HS

**SIGNED** for and on behalf of Nortel Networks )
**Polska Sp. z.o.o.** (in administration) by )
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )

Alan Bloom

Witness signature

Name:  RICHARD LAWTON )
Address:  HERBERT SMITH LLP )
          EXCHANGE HOUSE
          PRIMROSE ST
          LONDON  EC2A 2HS

**SIGNED** for and on behalf of Nortel Networks )
**Portugal S.A.** (in administration) by )
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )

Alan Bloom

Witness signature

Name:  RICHARD LAWTON )
Address:  HERBERT SMITH LLP )
          EXCHANGE HOUSE
          PRIMROSE ST
          LONDON  EC2A 2HS

SIGNED for and on behalf of **Nortel Networks**      )
**AB** (in administration) by      )      ...................................................
Alan Bloom      )      Alan Bloom
as Joint Administrator (acting as agent and      )
without personal liability) in the presence of:      )

Witness signature

...................................................................      )
Name:   RICHARD   LAWTON      )
Address:   HERBERT   SMITH LLP      )
    EXCHANGE HOUSE
    PRIMROSE ST LONDON EC2A 2HS
SIGNED for and on behalf of **Nortel Networks**      )
**Slovensko s.r.o.** (in administration) by      )      ...................................................
Alan Bloom      )      Alan Bloom
as Joint Administrator (acting as agent and      )
without personal liability) in the presence of:      )

Witness signature

...................................................................      )
Name:   RICHARD   LAWTON      )
Address:   HERBERT   SMITH LLP      )
    EXCHANGE HOUSE
    PRIMROSE ST
    LONDON EC2A 2HS
SIGNED for and on behalf of **Nortel Networks**      )
**s.r.o.** (in administration) by      )      ...................................................
Alan Bloom      )      Alan Bloom
as Joint Administrator (acting as agent and      )
without personal liability) in the presence of:      )

Witness signature

...................................................................
Name:   RICHARD   LAWTON      )
Address:   HERBERT   SMITH LLP      )
    EXCHANGE HOUSE
    PRIMROSE ST
    LONDON EC2A 2HS

**SIGNED** for and on behalf of **Nortel Networks** )
**Romania S.R.L.** (in administration) by )   ................................................
Alan Bloom )   Alan Bloom
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Witness signature
................................................ )
Name:  RICHARD  LAWTON )
Address:  HERBERT  SMITH LLP )
          EXCHANGE  HOUSE
          PRIMROSE  ST
          LONDON  EC2A 2HS

SIGNED for and on behalf of Nortel Networks )   ..............................................
France S.A.S. (in administration) by )   Kerry Trigg
Kerry Trigg )
acting as authorised representative for )
Christopher Hill )
as Joint Administrator (acting as agent and
without personal liability) in the presence of:


Witness signature
........................................................... )
Name:  SHARON PERLMUTTER
Address:  )


ERNST & YOUNG LLP
1 More London Place
London
SE1 2AF

SIGNED for and on behalf of Nortel Networks    )
(Ireland) Limited (in administration) by        )
DAVID HUGHES                                     )
as Joint Administrator (acting as agent and      )
without personal liability) in the presence of:

Witness signature

Name:       Nathan J Coveney
Address:    c/o Ernst + Young
            Harcourt Street
            Dublin 2.

**SIGNED** by Richard Banbury
duly authorised for and on behalf of Nortel
Networks o.o.o. in the presence of:

)
)
)

Richard Banbury

Witness signature

Name: _Svetlysheva GALiNA_
Address: _121609 Moscow Russia_
_Rublavskoye shosse_
_52. 377_

)
)
)

**SIGNED** by Simon Freemantle )
duly authorised for and on behalf of **Nortel** )
**Networks AG** in the presence of: )

Simon Freemantle

Witness signature

..........................................................  )
Name: Perihan Yuzcu )
Address: Nortel Networks UK Limited )
westacott Way
Maidenhead Office Park
SL6·3QH   Maidenhead

**SIGNED** for and on behalf of Nortel Networks )
Israel (Sales and Marketing) Limited (in )
administration) by Yaron Har-Zvi and Avi D. )
Pelossof as Joint Israeli Administrators (acting )
jointly and without personal liability) in )
connection with the Israeli Assets and Israeli )
Liabilities: )
                                               )
                                               )

הנאמן בהקפאת הליכים

....................................................................
Yaron Har-Zvi

הנאמן בהקפאת הליכים
....................................................................
Avi D. Pelossof

Witness signature

אַיתי לביא, עו"ד
מ.ר. 47667

_____

Name: Itay Lavi                          )
Address: 20 Lincoln st.                  )
Tel-Aviv, Israel                         )

**SIGNED** by Alan Bloom                )

in his own capacity and on behalf of the Joint
Administrators without personal liability and
solely for the benefit of the provisions of this
letter expressed to be conferred on or given to
the Joint Administrators:

)
)   Alan Bloom
)

Witness signature

Name:   RICHARD WALTON
Address: HERBERT SMITH LLP
EXCHANGE HOUSE
PRIMROSE ST
LONDON EC2A 2HS

SIGNED by Yaron Har-Zvi

)

)

קופאת הליכים

..............................................

Yaron Har-Zvi

in his own capacity and on behalf of the Joint
Israeli Administrators without personal liability
and solely for the benefit of the provisions of
this letter expressed to be conferred on or given
to the Joint Israeli Administrators:

Witness signature

איתי ליבס עו"ד

מ.ר 47667

..............................................

Name: _Itay Lavi_

Address: _20 Lincoln st._

_Tel Aviv, Israel_

SIGNED by Avi D. Pelossof

)

)

)

)

)

קופאת הליכים

..............................................

Avi D. Pelossof

in his own capacity and on behalf of the Joint
Israeli Administrators without personal liability
and solely for the benefit of the provisions of
this letter expressed to be conferred on or given
to the Joint Israeli Administrators:

Witness signature

איתי ליבס עו"ד

מ.ר 47667

..............................................

Name: _Itay Lavi_

Address: _20 Lincoln st._

_Tel Aviv, Israel_

cc:    Latham & Watkins LLP
    885 Third Avenue
    New York, New York 10002
    United States
    Attention: David S. Allinson, Esq.

    Baker Botts LLP
    2001 Ross Avenue, Suite 600
    Dallas, Texas 75201
    Attention:  Don J. McDermett, Jr., Esq.
                 Curt Anderson, Esq.

    Stikeman Elliott LLP
    445 Park Avenue, 7th Floor
    New York, New York 10022
    Attention: Ron Ferguson, Esq.

*For the companies listed below (the "Companies"), The Institute of Chartered Accountants in England and Wales authorises A R Bloom, S Harris and C Hill to act as Insolvency Practitioners under section 390(2)(a) of the Insolvency Act 1986 and the Association of Chartered Certified Accountants authorises A M Hudson to act as an Insolvency Practitioner under section 390(2)(a) of the Insolvency Act 1986.*

*The affairs, business and property of the Companies are being managed by the Joint Administrators, A R Bloom, S Harris, AM Hudson and C Hill who act as agents of the Companies only and without personal liability.*

*The Companies are Nortel Networks UK Limited; Nortel Networks SA; Nortel GmbH; Nortel Networks France SAS; Nortel Networks NV; Nortel Networks SpA; Nortel Networks BV; Nortel Networks Polska SP Zoo; Nortel Networks Hispania SA; Nortel Networks (Austria) GmbH; Nortel Networks sro; Nortel Networks Engineering Service Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko sro; Nortel Networks Oy; Nortel Networks Romania SRL; Nortel Networks AB; Nortel Networks International Finance & Holding BV.*

*The affairs, business and property of Nortel Networks (Ireland) Limited are being managed by the Joint Administrators, A R Bloom and D Hughes, who act as agents of Nortel Networks (Ireland) Limited only and without personal liability.*

## Annex A

**Disagreement Notice**

Reference is made to the Asset Sale Agreement by and among Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Inc. ("NNI"), the other entities identified therein as Sellers (together with NNC, NNL and NNI, "Nortel"), GENBAND Inc. ("GB") and the other Designated Purchasers that became parties thereto (together with GB, "GENBAND"), dated December 22, 2009, as amended from time to time (the "ASA"). Terms used but not defined in this Disagreement Notice have the meanings ascribed to them in the ASA.

Nortel has received the Closing Statement prepared by GENBAND dated September 15, 2010 (the "GB Closing Statement"). Pursuant to Section 2.2.3.1(b) of the ASA, Nortel and the EMEA Sellers notify GENBAND as follows:

- Nortel and the EMEA Sellers do not dispute the following line items within the Closing Adjusted Net Working Capital calculation in the GB Closing Statement: Closing Inventory Value, Closing Prepaid Expenses Amount, Closing Contractual Liabilities Amount, Closing Royalty Liability Amount, Closing Warranty Provision Amount and Closing Product Exposures Amount.

- Nortel and the EMEA Sellers dispute the line item Closing Unbilled Accounts Receivable Amount within the Closing Adjusted Net Working Capital calculation in the GB Closing Statement and, as a result, Nortel and the EMEA Sellers dispute the Closing Adjusted Net Working Capital in the GB Closing Statement. Specifically, Nortel and the EMEA Sellers disagree with GENBAND's deduction from Closing Unbilled Accounts Receivable of accounts receivable amounts of $191,515 and $28,960, which relate to certain customer contracts with Axtel and Telefonica Argentina, respectively.[1] As the contracts with Axtel and Telefonica Argentina were included in Assigned Contracts, the Closing Unbilled Accounts Receivable Amount should be increased by $220,475, resulting in Closing Unbilled Accounts Receivable being equal to $21,611,475 (rather than $21,391,000) and Closing Adjusted Net Working Capital being equal to $8,551,475 (rather than $8,331,000).

- Nortel and the EMEA Sellers do not dispute the following line items within the Final Purchase Price calculation in the GB Closing Statement: Base Purchase Price, Closing Aggregate EMEA Downward Adjustment, Closing Aggregate Downward Adjustment,

---

[1] The contracts are: EWP 2010 Support Plan between Nortel Networks de Argentina S.A. and Telefonia Moviles Argentina S.A. dated January 31, 2010; Designacion Proveedor Centralita Movil between Nortel Networks (CALA) Inc. and Telefonica Moviles Argentina S.A. dated September 30, 2008; Purchase and License Agreement for NGN among Nortel Networks Limited, Nortel Networks de Mexico S.A. de C.V. and Axtel S.A. de C.V. dated March 20, 2003; Purchase and License Agreement for Non-FWA Equipment among Nortel Networks Limited, Nortel Networks de Mexico S.A. de C.V. and Axtel S.A. de C.V. dated March 20, 2003; and Technical Assistance and Support Services Agreement for NGN Products and Services and for Non-FWA Equipment among Nortel Networks Limited, Nortel Networks de Mexico S.A. de C.V. and Axtel S.A. de C.V..

Closing Accrued Vacation Amount, Closing TFR Amount, Closing Excess ARD Employees Amount, Closing EMEA Holiday Downward Adjustment, Closing French Excess ARD Employees Amount and Closing Pre-Close Employment Payments Amount.

- Since Nortel and the EMEA Sellers dispute the line item Closing Unbilled Accounts Receivable Amount within Closing Adjusted Net Working Capital in the GB Closing Statement and, as a result, dispute Closing Adjusted Net Working Capital in the GB Closing Statement, Nortel and the EMEA Sellers dispute the line item in the Final Purchase Price calculation in the GB Closing Statement that is arrived at by subtracting the Target Working Capital, i.e., $73,000,000, from the Closing Adjusted Net Working Capital. Subtracting Target Working Capital from the Closing Adjusted Net Working Capital calculated by Nortel, i.e., $8,551,475, the resulting line item should be $(64,448,525) rather than $(64,669,000).

- Nortel and the EMEA Sellers dispute the line item Closing Deferred Profit Amount in the GB Closing Statement for two reasons: First, the Closing Deferred Profit Amount calculated by GENBAND improperly includes a negative deferred cost-of-sales balance of $1,629,132 with respect to Nortel Networks (Luxembourg) S.A. (NNLSA). As NNLSA is not an EMEA Seller or a Seller, the amount of $1,629,132 should not have been included in GENBAND's calculation of the Closing Deferred Profit Amount.

Second, GENBAND overstated the Closing Deferred Profit Amount by $34,656,476 as a result of incorrectly including in its calculations deferred revenues and associated deferred costs in respect of services performed and products delivered prior to the Closing Date. "Deferred Profit Amount," as defined in the ASA, means:

> ". . . as of the Closing Date, both short term and long term (i) deferred revenues for services to be performed or products to be provided by the Business after the Closing Date but for which an account receivable has been recorded or cash has been received prior to the Closing Date minus (ii) associated deferred costs to the extent incurred by the Business prior to the Closing Date in connection with such products or services, in each case, that would be required to be reflected on a balance sheet of the Business as of such date prepared in accordance with GAAP applied in a manner consistent with the Nortel Accounting Principles (to the extent consistent with GAAP). For the avoidance of doubt, the Deferred Profit Amount will include advance billings and deferred revenue consistent with Nortel Accounting Principles." (emphasis added)

The Closing Deferred Profit Amount in the GB Closing Statement should be reduced by (i) $34,656,476 due to GENBAND's improper inclusion of deferred revenues and associated deferred costs relating to services performed and products provided by the Business prior to the Closing Date and (ii) $1,629,132 due to GENBAND's improper inclusion of a negative deferred cost-of-sales balance with respect to NNLSA. Accordingly, the Closing Deferred Profit Amount should be reduced by $36,285,608 from $70,570,000 to $34,284,392.

- Nortel and the EMEA Sellers disagree with the Closing Specified Employee Liabilities Amount in the GB Closing Statement, which should be reduced by $98,662. The Closing Specified Employee Liabilities Amount in the GB Closing Statement included an Australian long-service leave amount of $1,131,689. For the calculation of the Australian long-service leave amount, GENBAND apparently did not recalculate the Australian Dollar amount into the U.S. Dollar amount using the exchange rate published in the *Wall Street Journal* (Eastern Edition) for the day in question (the Closing Date), as required under the ASA. Using the Australian Dollar/U.S. Dollar exchange rate published in the *Wall Street Journal* (Eastern Edition) for the Closing Date (i.e., 1.1755 Australian Dollars to one U.S. Dollar), Australian long-service leave amount in Australian Dollars of A$1,214,323 (according to Nortel's SAP accounting ledger) translates into $1,033,027. Accordingly, the Australian long-service leave amount of $1,131,689 used in GENBAND's calculation of the Closing Specified Employee Liabilities Amount in the GB Closing Statement is overstated by $98,662, which requires that the Closing Specified Employee Liabilities Amount in the GB Closing Statement be reduced from $1,487,000 to $1,388,338.

- Since Nortel and the EMEA Sellers dispute, in the GB Closing Statement, (i) the line item arrived at by subtracting the Target Working Capital from the Closing Adjusted Net Working Capital, (ii) the Closing Specified Employee Liabilities Amount and (iii) the Closing Deferred Profit Amount, all as described above, Nortel and the EMEA Sellers dispute the Final Purchase Price in the GB Closing Statement, which should be increased by $36,604,745 from $142,904,000 to $179,508,745.

For your reference, the GB Closing Statement, the adjustments set forth herein, and the Closing Statement, as adjusted herein, are set forth below.

**Revisions to CLOSING STATEMENT**

| | GB Closing Statement | Adjustments | Adjusted Closing Statement |
|---|---|---|---|
| **Closing Adjusted Net Working Capital:** | | | |
| Closing Inventory Value, plus | $ 13,747,000 | | 13,747,000 |
| Closing Unbilled Accounts Receivable Amount, plus | 21,391,000 | 220,475 | 21,611,475 |
| Closing Prepaid Expenses Amount, minus | 939,000 | | 939,000 |
| Closing Contractual Liabilities Amount, minus | 887,000 | | 887,000 |
| Closing Royalty Liability Amount, minus | 148,000 | | 148,000 |
| Closing Warranty Provision Amount, minus | 26,295,000 | | 26,295,000 |
| Closing Product Exposures Amount | 416,000 | | 416,000 |
| **Closing Adjusted Net Working Capital** | $ 8,331,000 | $ 220,475 | $ 8,551,475 |
| | | | |
| **Final Purchase Price:** | | | |
| Base Purchase Price, plus | $ 282,000,000 | | $ 282,000,000 |
| The difference, which may be positive or negative, equal to the Closing Adjusted Net Working Capital minus Target Working Capital, minus | (64,669,000) | $ 220,475 | (64,448,525) |
| Closing Aggregate EMEA Downwards Adjustment (if any), minus | - | | |
| Closing Aggregate Downward Adjustment (if any), minus | - | | |
| Closing Deferred Profit Amount, minus | 70,570,000 | ( 36,285,608) | 34,284,392 |
| Closing Accrued Vacation Amount, minus | 1,730,000 | | 1,730,000 |
| Closing Specified Employee Liabilities Amount, minus | 1,487,000 | (98,662) | 1,388,338 |
| Closing TFR Amount, minus | 402,000 | | 402,000 |
| Closing Excess ARD Employees Amount, minus | - | | |
| Closing EMEA Holiday Downward Adjustment, minus | 238,000 | | 238,000 |
| Closing French Excess ARD Employees Amount, minus | - | | |
| Closing Pre-Close Employment Payments Amount | - | | |
| **Final Purchase Price** | $ 142,904,000 | $ 36,604,745 | $ 179,508,745 |

**Annex B**

**FILED UNDER SEAL**