IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> NORTEL NETWORKS INC., *et al.* <br><br> Debtors. | ) Chapter 11 <br> ) <br> ) Case No. 09-10138 (KG) <br> ) <br> ) Jointly Administered <br> ) <br> ) **Objection Date: December 1, 2010 at 4:00 p.m.** <br> ) **Hearing Date: December 8, 2010 at 10:00 a.m.** |

**MOTION OF GENBAND INC. FOR ENTRY OF AN ORDER PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE GRANTING RELIEF FROM THE AUTOMATIC STAY TO COMPEL ARBITRATION**

GENBAND Inc. ("GENBAND"), by and through its undersigned counsel, hereby moves (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), granting relief from the automatic stay pursuant to Section 105 and 362(d) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to compel arbitration between Nortel Networks Corporation, Nortel Networks Limited, and Nortel Networks Inc. (collectively, "Nortel," and, together with its affiliate filing entities, the "Debtors") and GENBAND pursuant to the terms of the Asset Sale Agreement, dated as of December 22, 2009, by and among Nortel, GENBAND and the entities identified as sellers therein (the "ASA"),[1] attached hereto as Exhibit B. In support of this Motion, GENBAND respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      GENBAND seeks relief from the automatic stay to compel arbitration pursuant to Section 2.2.3.1(c) of the ASA (the "Mandatory Arbitration Provision") for the purpose of resolving a dispute with respect to the Purchase Price Adjustment (as defined below).

2. A dispute has arisen between GENBAND and Nortel regarding the Purchase Price Adjustment pursuant to the ASA. The Mandatory Arbitration Provision states that "any disagreement" relating to the Purchase Price Adjustment shall be submitted to arbitration. However, Nortel refuses to do so. GENBAND has therefore been forced to ask this Court to intervene and order Nortel to comply with the promise it made in return for the substantial consideration already paid by GENBAND.

3. This Court should enforce the Mandatory Arbitration Provision. Third Circuit precedent emphasizes the importance of arbitration provisions, finding that "[w]here an otherwise applicable arbitration clause exits, a bankruptcy court lacks the authority and discretion to deny its enforcement, *unless* the party opposing arbitration can establish congressional intent . . . to preclude waiver of judicial remedies for the statutory rights at issue." *Mintze v. Am. Gen. Fin. Serv., Inc. (In re Mintze)*, 434 F.3d 222, 231 (3d Cir. 2006) (emphasis in original).

4. The Mandatory Arbitration Provision was negotiated for and contemplated as part of the consideration under the ASA. Neither Nortel nor the Debtors' estate will be prejudiced if compelled to comply with the clear agreement provided for in the Mandatory Arbitration Provision. GENBAND, on the other hand, will suffer substantial hardship if it is denied the quick, efficient, and final process that is the part of the benefit of the bargain it made with Nortel when it entered into the ASA. The plain language of the Mandatory Arbitration Provision leaves no doubt that the parties agreed to arbitrate "*any disagreement*" regarding the Purchase Price Adjustment. It is therefore abundantly clear that GENBAND's claim is not frivolous, which is all GENBAND need show.

---

[1] All terms not otherwise defined herein shall have the meaning ascribed to them under the ASA.

5. For these reasons, the Court should lift the stay and compel arbitration pursuant to the Mandatory Arbitration Provision.

## JURISDICTION

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7. The statutory bases for the relief sought is Section 362 of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014.

## BACKGROUND

8. On December 22, 2009, Nortel and GENBAND entered into the ASA.

9. On September 15, 2010, and pursuant to Section 2.2.3.1(a) of the ASA, GENBAND timely delivered to Nortel a letter and written statement (the "Closing Statement"), attached hereto as Exhibit C, which declared GENBAND's position with regards to the purchase price adjustment (the "Purchase Price Adjustment") necessary to determine the final purchase price under the ASA (the "Final Purchase Price").

10. On October 13, 2010, and pursuant to Section 2.2.3.1(b) of the ASA, Nortel timely delivered to GENBAND a letter and written statement (the "Disagreement Notice"), attached hereto as Exhibit D, which provided Nortel's position with regards to the Purchase Price Adjustment, and which detailed the disputes that Nortel was raising with GENBAND's Closing Statement.

11. Section 2.2.3.1(b) of the ASA provides, in the event of disagreement between the parties with regards to the Closing Statement, the Disagreement Notice, or the Purchase Price Adjustment, that the parties would negotiate in good faith over a fifteen-day period to resolve such disagreement.

12. Section 2.2.3.1(c) of the ASA provides that if the parties "are unable to resolve *any disagreement* as contemplated by Section 2.2.3.1(b) within fifteen (15) days after delivery of a Disagreement Notice by [Nortel], the Independent Auditor shall serve as arbitrator . . . to resolve such disagreement."

13. The ASA requires, again under Section 2.2.3.1(c), that the parties use their "commercially reasonable efforts to cause the Accounting Arbitrator to deliver . . . as promptly as practicable (and in no event later than thirty (30) days after his or her appointment), a written report setting forth the resolution of any such disagreement." This provision was intended to ensure that a speedy, efficient and final process would be used to resolve any disputes over the Purchase Price Adjustment.

14. In the letter included in the Disagreement Notice, Nortel informed GENBAND that it did not intend to waive its right to pursue all available remedies, including judicial relief, in order to resolve disputes in connection with the Purchase Price Adjustment.

15. In a letter dated October 25, 2010 (the "October 25 Letter"), attached hereto as Exhibit E, GENBAND responded to Nortel's letter included with the Disagreement Notice and stated in no uncertain terms that refusing to arbitrate with regards to the dispute with regards to the Purchase Price Adjustment violated the agreed terms of the ASA. GENBAND notified Nortel, specifically, that pursuant to the express terms of Section 2.2.3.1(b) the ASA, arbitration is the exclusive procedure available for the resolution of *any disagreement* regarding the Purchase Price Adjustment.

16. Nortel did not respond to the October 25 Letter. In a letter to Nortel dated November 9, 2010 (the "November 9 Letter"), attached hereto as Exhibit F, GENBAND again emphasized its desire to initiate arbitration pursuant to the Mandatory Arbitration Provision.

GENBAND noted that Nortel had failed to provide any explanation as to why it was not prepared to begin the arbitration process, and that it could not point to any provision in the ASA that justified its position.

17. In a letter dated November 10, 2010 (the "November 10 Letter"), attached hereto as Exhibit G, Nortel finally responded to GENBAND and refused to submit to arbitration as required by the ASA.

18. Nortel has thus repudiated its obligations under the ASA.

## RELIEF REQUESTED

19. By this Motion, GENBAND respectfully requests that this Court enter an Order, pursuant to Section 362(d)(1) of the Bankruptcy Code, lifting the automatic stay and compelling Arbitration for the purpose of resolving the dispute with respect to the Purchase Price Adjustment.

## BASIS FOR RELIEF

20. When presented with a motion to compel arbitration, courts in this Circuit have considered the strong federal policy that favors the arbitration of disputes. *See In re Mintze*, 434 F.3d at 229 ("The FAA has established a strong policy in favor of arbitration . . . . To overcome enforcement of arbitration, a party must establish congressional intent to create an exception to the FAA's mandate with respect to the party's statutory claims."). "It is well established that arbitration is a favored mechanism for resolving disputes, especially where the parties previously agreed to utilize arbitration." *In the Matter of TEU Holdings, Inc.*, 287 B.R. 26, 36 (Bankr. D. Del. 2002); *see also In re Gurga, d/b/a Source Commcs.*, 176 B.R. 196, 200 (B.A.P. 9th Cir. 1994) (citing *Graham Oil Co. v. ARCO Products, Inc.*, 43 F.3d 1244, 1247 (9th Cir. 1994), for the proposition that "arbitration is a form of dispute resolution that finds favor in the courts").

21. The issues raised in the Arbitration are common state law issues. Where the arbitration is based upon state law claims, "neither the Bankruptcy Code nor its legislative history contain anything which would prevent a court of arbitration from determining whether [a claimant's] claims are valid." *In re Gurga*, 176 B.R. at 200.

22. In fact, the United States Supreme Court has held that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, establishes a federal policy favoring arbitration that requires courts to "rigorously enforce agreements to arbitrate." *Shearson/Am. Exp. v. McMahon*, 482 U.S. 220, 226 (1987) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *see also Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1156 (3d Cir. 1989) (citations omitted). The Court in *McMahon* held that when a dispute is subject to the terms of an arbitration agreement, the FAA requires a court to stay its proceedings and compel arbitration, except in limited circumstances. *McMahon*, 482 U.S. at 226. The Third Circuit, relying on *McMahon*, has held that "[w]here an otherwise applicable arbitration clause exits, a bankruptcy court lacks the authority and discretion to deny its enforcement, *unless* the party opposing arbitration can establish congressional intent . . . to preclude waiver of judicial remedies for the statutory rights at issue." *In re Mintze*, 434 F.3d at 231.

23. This Court may lift the stay pursuant to Section 362(d) of the Bankruptcy Code, which provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (A) of this section, such as by terminating, annulling, modifying or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d).

24. "Cause," undefined by the Bankruptcy Code, must be determined on a case-by-case basis. *See In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Int'l*

6

*Bus. Machines v. Fernstrom Storage and Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991)). The legislative history of Section 362 indicates that "cause may be established by a single factor such as 'a desire to permit an action to proceed . . . in another tribunal,' or 'lack of any connection with or interference with the pending bankruptcy case.'" *Id.* (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-44 (1977)).

25. In determining whether there is "cause" to modify the automatic stay, this Court has considered "whether: (a) [a]ny great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit, (b) the hardship to the [non-bankrupt party] by maintenance of the stay considerable outweighs the hardship of the debtor, and (c) the creditor has a probability of prevailing on the merits." *In re Rexene Prods. Co.*, 141 B.R. at 576. *See also In re Downey Fin. Corp*, 428 B.R. 595 (Bankr. D. Del. 2010).

26. Nortel will not be prejudiced by allowing the Arbitrator to resolve the dispute regarding the Purchase Price Adjustment. The arbitration contemplated by the mutually-agreed-to Section 2.2.3.1(c) of the ASA, would provide an efficient and final determination with regards to the disputes regarding the Purchase Price Adjustment. Such efficient and final resolution would inure to the benefit of Debtors' estate because Debtors would suffer with lengthy and expensive litigation in this Court, which could hinder the Debtors' reorganization efforts and reduce the value of Debtors' estate. The issues in dispute are insubstantial in number and complexity, and the correspondence between the parties demonstrates that little preparation time will be required to proceed to the Arbitration.

27. On the other hand, continued enforcement of the automatic stay would result in great hardship to GENBAND because it would be denied the benefit of the negotiated Mandatory Arbitration Provision of the ASA. The parties agreed to such provision with the sole

purpose of preventing the type of burdensome litigation that would ensue in the Bankruptcy Court if the stay were enforced. GENBAND would be forced to dedicate valuable time and resources to litigating an issue that it and Nortel expressly agreed to arbitrate, for these very reasons.

28. In order to demonstrate that it has a probability of prevailing on the merits, GENBAND must show only that its claim is not frivolous. *See In re Levitz Furniture Corp.*, 267 B.R. 516, 523 (Bankr. D. Del. 2000) (citing *In re Rexene Prods. Co.*, 141 B.R. at 578). This Court need not engage in an in-depth review of the merits of the claim because "one of the primary purposes in granting relief from the stay . . . is to economize judicial resources. To require a merits analysis in every case would in large part defeat this objective and frustrate the effort to resolve § 362(d) motions expeditiously." *Peterson v. Cundy (In re Peterson)*, 116 B.R. 247, 250 (D. Colo. 1990).

29. In this case, the mutually agreed upon Mandatory Arbitration Provision is a valid and enforceable provision of the type typically favored by this Court. GENBAND submits that the Mandatory Arbitration Provision meets the standard set forth in *In re Rexene Prods. Co.*; therefore, the Court should lift the automatic stay and compel arbitration.

### NOTICE

30. Notice of this Motion has been given to: (a) counsel for the Debtors; (b) counsel for the Committee; (c) counsel for the Office of the United States Trustee; and (d) those parties who have filed and served notices of appearance pursuant to Bankruptcy Rule 2002. No other or further notice is necessary.

### NO PRIOR REQUEST

31. No prior motion for the relief requested herein has been made to this Court or any other court.

## **CONCLUSION**

32. WHEREFORE, GENBAND respectfully requests that the Court enter an Order (i) lifting the automatic stay pursuant to Sections 105 and 362(d) of the Bankruptcy Code to allow arbitration to commence, (ii) compelling the commencement of arbitration pursuant to Section 2.2.3.1(c) of the ASA, and (iii) granting such further and other relief as the Court deems just.

Dated: November 18, 2010
      Wilmington, Delaware

Respectfully submitted,

    */s/ Michael R. Lastowski*
Michael R. Lastowski (No. 3892)
Sommer L. Ross (No. 4598)
DUANE MORRIS, LLP
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail:    mlastowski@duanemorris.com
           slross@duanemorris.com

and

Blair Connelly
Eli J. Kay-Oliphant
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1200
New York, New York 10022-4834
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
E-mail:   blair.connelly@lw.com
         eli.kay-oliphant@lw.com

*Counsel for GENBAND Inc.*