**Exhibit D**

**Disagreement Notice**



**N🌀RTEL**

October 13, 2010

<u>VIA FACSIMILE</u>

GENBAND US LLC
GENBAND Inc.
3605 E. Plano Pkwy., Suite 100
Plano, Texas 75074
Attn: General Counsel

Ladies and Gentlemen:

Reference is made to the Asset Sale Agreement by and among Nortel Networks Corporation ("<u>NNC</u>"), Nortel Networks Limited ("<u>NNL</u>"), Nortel Networks Inc. ("<u>NNI</u>"), the other entities identified therein as Sellers (together with NNC, NNL and NNI, "<u>Nortel</u>"), GENBAND Inc. ("<u>GB</u>") and the other Designated Purchasers that became parties thereto (together with GB, "<u>GENBAND</u>"), dated December 22, 2009, as amended from time to time (the "<u>ASA</u>"). Terms used but not defined in this letter have the meanings ascribed to them in the ASA, save that the terms "EMEA Non-Debtor Seller Directors", "Israeli Assets", "Israeli Company" and "Israeli Liabilities" have the meanings ascribed to them in the EMEA Asset Sale Agreement.

We are in receipt of the Closing Statement prepared by GENBAND dated September 15, 2010 (the "<u>GB Closing Statement</u>"). Pursuant to Section 2.2.3.1(b) of the ASA, please find attached hereto as <u>Annex A</u> a Disagreement Notice from Nortel and the EMEA Sellers in respect of the GB Closing Statement. We note that the disagreement with the Closing Deferred Profit Amount in the GB Closing Statement arises primarily from differences between GENBAND and Nortel in the interpretation of the definition of "Deferred Profit Amount" in the ASA, rather than differences over calculations. Accordingly, any disagreement over the interpretation of the "Deferred Profit Amount" definition is a matter of contractual interpretation and we do not intend to waive and expressly reserves our right to pursue all available remedies to resolve any disputes over the Deferred Profit Amount, whether by recourse to judicial relief or otherwise.

In addition, NNI hereby reiterates its position as set forth in its letter to GENBAND dated August 13, 2010 (attached hereto as <u>Annex B</u> for your reference) with respect to the Verizon Receivables, as defined in such letter.

Notwithstanding that this letter shall have been signed by the Joint Administrators and the Joint Israeli Administrators both in their capacities as administrators of the EMEA Debtors for and on behalf of the EMEA Debtors and of the Israeli Company for and on behalf of the Israeli Company, respectively, and in their personal capacities, it is hereby expressly declared that no personal Liability, or any Liability whatsoever, under or in connection with this letter shall fall on the Joint Administrators, the Joint Israeli Administrators or their respective firm, partners, employees, agents, advisers or representatives whether such Liability would arise under paragraph 99(4) of schedule B1 to the Insolvency Act, or otherwise howsoever.

The Joint Administrators and the Joint Israeli Administrators are signatories to this letter in their personal capacities only for the purpose of receiving the benefit of the previous paragraph. Otherwise, for all purposes of this letter, the Joint Administrators and Joint Israeli Administrators act without personal liability as agents of the EMEA Debtors and the Israeli Company, respectively.

It is hereby expressly declared that no personal Liability, or any Liability whatsoever, under or in connection with this letter shall fall on any of the EMEA Non-Debtor Seller Directors howsoever such Liability should arise.

2

Very truly yours,

NORTEL NETWORKS INC.

By _____
   Name: Lynn C. Egan
   Title:  Secretary


NORTEL NETWORKS CORPORATION

By _____
   Name:
   Title:



By _____
   Name:
   Title:


NORTEL NETWORKS LIMITED

By _____
   Name:
   Title:


By _____
   Name:
   Title:

Very truly yours,

NORTEL NETWORKS INC.

By _____
    Name:
    Title:


NORTEL NETWORKS CORPORATION

By _____
    Name: John Doolittle
    Title:  Senior Vice President,
          Corporate Services and
          Chief Financial Officer


By _____
    Name:  Clarke Glaspell
    Title:   Controller


NORTEL NETWORKS LIMITED

By _____
    Name:  John Doolittle
    Title:  Senior Vice President,
          Corporate Services and
          Chief Financial Officer


By _____
    Name:  Clarke Glaspell
    Title:   Controller

SIGNED for and on behalf of Nortel Networks )
UK Limited (in administration) by )
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Alan Bloom

Witness signature

Name:         WILMA GRAHAM
Address:      1 More London Place
              London
              SE1 2AF

SIGNED for and on behalf of Nortel GmbH )
(in administration) by )
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Alan Bloom

Witness signature

Name:         WILMA GRAHAM
Address:      1 More London Place
              London
              SE1 2AF

SIGNED for and on behalf of Nortel Networks )
SpA (in administration) by )
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Alan Bloom

Witness signature

Name:         WILMA GRAHAM
Address:      1 More London Place
              London
              SE1 2AF

SIGNED for and on behalf of Nortel Networks          )
Hispania S.A. (in administration) by                 )
Alan Bloom                                           )     Alan Bloom
as Joint Administrator (acting as agent and          )
without personal liability) in the presence of:      )

Witness signature

........ W. Graham ........                           )
Name:       WILMA GRAHAM                             )
Address:    [                        ]               )
            1 More London Place
            London
            SE1 2AF
SIGNED for and on behalf of Nortel Networks          )
B.V. (in administration) by                          )     Alan Bloom
Alan Bloom                                           )
as Joint Administrator (acting as agent and          )
without personal liability) in the presence of:      )

Witness signature

........ W. Graham ........                           )
Name:       WILMA GRAHAM                             )
Address:    [                        ]               )
            1 More London Place
            London
            SE1 2AF
SIGNED for and on behalf of Nortel Networks          )
N.V. (in administration) by                          )     Alan Bloom
Alan Bloom                                           )
as Joint Administrator (acting as agent and          )
without personal liability) in the presence of:      )

Witness signature

........ W. Graham ........                           )
Name:       WILMA GRAHAM                             )
Address:                                             )

            [                        ]
            1 More London Place
            London
            SE1 2AF

SIGNED for and on behalf of Nortel Networks    )
(Austria) GmbH (in administration) by          )
Alan Bloom                                     )
as Joint Administrator (acting as agent and    )
without personal liability) in the presence of:

Alan Bloom

Witness signature

..............  W. Graham ..............

Name:     WILMA GRAHAM                         )
Address:  ERNST & YOUNG LLP                    )
          1 More London Place                  )
          London
          SE1 2AF
SIGNED for and on behalf of Nortel Networks    )
Polska Sp. z.o.o. (in administration) by       )
Alan Bloom                                     )
as Joint Administrator (acting as agent and    )
without personal liability) in the presence of:

Alan Bloom

Witness signature

..............  W. Graham ..............

Name:     WILMA GRAHAM                         )
Address:  ERNST & YOUNG LLP                    )
          1 More London Place                  )
          London
          SE1 2AF

SIGNED for and on behalf of Nortel Networks    )
Portugal S.A. (in administration) by           )
Alan Bloom                                     )
as Joint Administrator (acting as agent and    )
without personal liability) in the presence of:

Alan Bloom

Witness signature

..............  W. Graham ..............

Name:     WILMA GRAHAM                         )
Address:                                       )
          ERNST & YOUNG LLP                    )
          1 More London Place
          London
          SE1 2AF

SIGNED for and on behalf of Nortel Networks    )
AB (in administration) by                       )    Alan Bloom
Alan Bloom                                      )
as Joint Administrator (acting as agent and     )
without personal liability) in the presence of: )


Witness signature

.............W. Graham..............    )
Name:      WILMA GRAHAM               )
Address:   ...................LLP    )
           1 More London Place
           London
SIGNED for and on behalf of Nortel Networks    )
Slovensko s.r.o. (in administration) by         )    Alan Bloom
Alan Bloom                                      )
as Joint Administrator (acting as agent and     )
without personal liability) in the presence of: )


Witness signature

.............W. Graham..............    )
Name:      WILMA GRAHAM               )
Address:   ...................LLP    )
           1 More London Place
           London
           SE1 2AF
SIGNED for and on behalf of Nortel Networks    )
s.r.o. (in administration) by                   )    Alan Bloom
Alan Bloom                                      )
as Joint Administrator (acting as agent and     )
without personal liability) in the presence of: )


Witness signature

.............W. Graham..............    )
Name:      WILMA GRAHAM               )
Address:                             )
           ...................LLP
           1 More London Place
           London
           SE1 2AF

**SIGNED** for and on behalf of Nortel Networks    )
Romania S.R.L. (in administration) by .    )    Alan Bloom
Alan Bloom    )
as Joint Administrator (acting as agent and    )
without personal liability) in the presence of:

Witness signature

Name:    WILMA GRAHAM    )
Address:    )
     1 More London Place
     London
     SE1 2AF

SIGNED for and on behalf of Nortel Networks    )
France S.A.S. (in administration) by           )        Kerry Trigg
Kerry Trigg                                    )
acting as authorised representative for        )
Christopher Hill                               )
as Joint Administrator (acting as agent and
without personal liability) in the presence of:


Witness signature,

Name:  SHARON PERLMUTTER                        )
Address:                                       )


ERNST & YOUNG LLP
1 More London Place
London
SE1 2AF

SIGNED for and on behalf of Nortel Networks   )
(Ireland) Limited (in administration) by   )
DAVID HUGHES   )
as Joint Administrator (acting as agent and   )
without personal liability) in the presence of:   )

Witness signature

Name:   Niamh O'Loughney   )
Address:   C/o Ernst & Young   )
Harcourt Centre
Harcourt St. Dublin 2

SIGNED by Richard Banbury
duly authorised for and on behalf of Nortel
Networks o.o.o. in the presence of:

)
)    Richard Banbury
)

Witness signature

)
Name: _Svetlyheva GALINA_ )
Address: _121609 Moscow Russia_
_Rublevskoye shosse_
_52·377_

SIGNED by Simon Freemantle          )
duly authorised for and on behalf of Nortel   )   Simon Freemantle
Networks AG in the presence of:        )

Witness Signature

Name: Anthony Platt          )
Address: 31 Heerwater DR        )
         Twyford        )
         Berks
         RG10 9HT

SIGNED for and on behalf of Nortel Networks )
Israel (Sales and Marketing) Limited (in )
administration) by Yaron Har-Zvi and Avi D. )
Pelossof as Joint Israeli Administrators (acting )
jointly and without personal liability) in )
connection with the Israeli Assets and Israeli )
Liabilities: )
)
)
)

נאמן בהקפאת הליכים

........................................

Yaron Har-Zvi

נאמן בהקפאת הליכים

........................................

Avi D. Pelossof

Witness signature: אילת לבני עו"ד

........................................

Name: Itay Levi )
Address: 10 Lincoln st. )
Tel-Aviv, Israel

**SIGNED by Alan Bloom**                    )

in his own capacity and on behalf of the Joint
Administrators without personal liability and
solely for the benefit of the provisions of this
letter expressed to be conferred on or given to
the Joint Administrators:

)
)                    Alan Bloom
)


Witness signature

Name:         WILMA  GRAHAM                    )
Address:                                        )
              1 Bmore London Place             )
              London
              SS1 2AF

הנאמן בהקפאת הליכים

**SIGNED** by Yaron Har-Zvi )

)

) Yaron Har-Zvi

in his own capacity and on behalf of the Joint
Israeli Administrators without personal liability
and solely for the benefit of the provisions of
this letter expressed to be conferred on or given
to the Joint Israeli Administrators:

Witness signature

Name: Itay Lavi
Address: 20 Lincoln St.
Tel Aviv, Israel

**SIGNED** by Avi D. Pelossof )

)

) Avi D. Pelossof

in his own capacity and on behalf of the Joint
Israeli Administrators without personal liability
and solely for the benefit of the provisions of
this letter expressed to be conferred on or given
to the Joint Israeli Administrators:

Witness signature

Name: Itay Lavi
Address: 20 Lincoln St.
Tel-Aviv, Israel

cc:    Latham & Watkins LLP
       885 Third Avenue
       New York, New York 10002
       United States
       Attention:  David S. Allinson, Esq.

       Baker Botts LLP
       2001 Ross Avenue, Suite 600
       Dallas, Texas 75201
       Attention:  Don J. McDermett, Jr., Esq.
                   Curt Anderson, Esq.

       Stikeman Elliott LLP
       445 Park Avenue, 7th Floor
       New York, New York 10022
       Attention:  Ron Ferguson, Esq.

*For the companies listed below (the "Companies"), The Institute of Chartered Accountants in England and Wales authorises A R Bloom, S Harris and C Hill to act as Insolvency Practitioners under section 390(2)(a) of the Insolvency Act 1986 and the Association of Chartered Certified Accountants authorises A M Hudson to act as an Insolvency Practitioner under section 390(2)(a) of the Insolvency Act 1986.*

*The affairs, business and property of the Companies are being managed by the Joint Administrators, A R Bloom, S Harris, AM Hudson and C Hill who act as agents of the Companies only and without personal liability.*

*The Companies are Nortel Networks UK Limited; Nortel Networks SA; Nortel GmbH; Nortel Networks France SAS; Nortel Networks NV; Nortel Networks SpA; Nortel Networks BV; Nortel Networks Polska SP Zoo; Nortel Networks Hispania SA; Nortel Networks (Austria) GmbH; Nortel Networks sro; Nortel Networks Engineering Service Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko sro; Nortel Networks Oy; Nortel Networks Romania SRL; Nortel Networks AB; Nortel Networks International Finance & Holding BV.*

*The affairs, business and property of Nortel Networks (Ireland) Limited are being managed by the Joint Administrators, A R Bloom and D Hughes, who act as agents of Nortel Networks (Ireland) Limited only and without personal liability.*

### Annex A

### Disagreement Notice

Reference is made to the Asset Sale Agreement by and among Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Inc. ("NNI"), the other entities identified therein as Sellers (together with NNC, NNL and NNI, "Nortel"), GENBAND Inc. ("GB") and the other Designated Purchasers that became parties thereto (together with GB, "GENBAND"), dated December 22, 2009, as amended from time to time (the "ASA"). Terms used but not defined in this Disagreement Notice have the meanings ascribed to them in the ASA.

Nortel has received the Closing Statement prepared by GENBAND dated September 15, 2010 (the "GB Closing Statement"). Pursuant to Section 2.2.3.1(b) of the ASA, Nortel and the EMEA Sellers notify GENBAND as follows:

- Nortel and the EMEA Sellers do not dispute the following line items within the Closing Adjusted Net Working Capital calculation in the GB Closing Statement: Closing Inventory Value, Closing Prepaid Expenses Amount, Closing Contractual Liabilities Amount, Closing Royalty Liability Amount, Closing Warranty Provision Amount and Closing Product Exposures Amount.

- Nortel and the EMEA Sellers dispute the line item Closing Unbilled Accounts Receivable Amount within the Closing Adjusted Net Working Capital calculation in the GB Closing Statement and, as a result, Nortel and the EMEA Sellers dispute the Closing Adjusted Net Working Capital in the GB Closing Statement. Specifically, Nortel and the EMEA Sellers disagree with GENBAND's deduction from Closing Unbilled Accounts Receivable of accounts receivable amounts of $191,515 and $28,960, which relate to certain customer contracts with Axtel and Telefonica Argentina, respectively.[1] As the contracts with Axtel and Telefonica Argentina were included in Assigned Contracts, the Closing Unbilled Accounts Receivable Amount should be increased by $220,475, resulting in Closing Unbilled Accounts Receivable being equal to $21,611,475 (rather than $21,391,000) and Closing Adjusted Net Working Capital being equal to $8,551,475 (rather than $8,331,000).

- Nortel and the EMEA Sellers do not dispute the following line items within the Final Purchase Price calculation in the GB Closing Statement: Base Purchase Price, Closing Aggregate EMEA Downward Adjustment, Closing Aggregate Downward Adjustment,

---

[1] The contracts are: EWP 2010 Support Plan between Nortel Networks de Argentina S.A. and Telefonia Moviles Argentina S.A. dated January 31, 2010; Designacion Proveedor Centralita Movil between Nortel Networks (CALA) Inc. and Telefonica Moviles Argentina S.A. dated September 30, 2008; Purchase and License Agreement for NGN among Nortel Networks Limited, Nortel Networks de Mexico S.A. de C.V. and Axtel S.A. de C.V. dated March 20, 2003; Purchase and License Agreement for Non-FWA Equipment among Nortel Networks Limited, Nortel Networks de Mexico S.A. de C.V. and Axtel S.A. de C.V. dated March 20, 2003; and Technical Assistance and Support Services Agreement for NGN Products and Services and for Non-FWA Equipment among Nortel Networks Limited, Nortel Networks de Mexico S.A. de C.V. and Axtel S.A. de C.V..

Closing Accrued Vacation Amount, Closing TFR Amount, Closing Excess ARD
Employees Amount, Closing EMEA Holiday Downward Adjustment, Closing French
Excess ARD Employees Amount and Closing Pre-Close Employment Payments Amount.

- Since Nortel and the EMEA Sellers dispute the line item Closing Unbilled Accounts
  Receivable Amount within Closing Adjusted Net Working Capital in the GB Closing
  Statement and, as a result, dispute Closing Adjusted Net Working Capital in the GB
  Closing Statement, Nortel and the EMEA Sellers dispute the line item in the Final
  Purchase Price calculation in the GB Closing Statement that is arrived at by subtracting
  the Target Working Capital, i.e., $73,000,000, from the Closing Adjusted Net Working
  Capital. Subtracting Target Working Capital from the Closing Adjusted Net Working
  Capital calculated by Nortel, i.e., $8,551,475, the resulting line item should be
  $(64,448,525) rather than $(64,669,000).

- Nortel and the EMEA Sellers dispute the line item Closing Deferred Profit Amount in the
  GB Closing Statement for two reasons: First, the Closing Deferred Profit Amount
  calculated by GENBAND improperly includes a negative deferred cost-of-sales balance
  of $1,629,132 with respect to Nortel Networks (Luxembourg) S.A. (NNLSA). As
  NNLSA is not an EMEA Seller or a Seller, the amount of $1,629,132 should not have
  been included in GENBAND's calculation of the Closing Deferred Profit Amount.

Second, GENBAND overstated the Closing Deferred Profit Amount by $34,875,868 as a
result of incorrectly including in its calculations deferred revenues and associated
deferred costs in respect of services performed and products delivered prior to the
Closing Date. "Deferred Profit Amount," as defined in the ASA, means:

> ". . . as of the Closing Date, both short term and long term (i) deferred revenues
> for <u>services to be performed or products to be provided by the Business after the
> Closing Date</u> but for which an account receivable has been recorded or cash has
> been received prior to the Closing Date minus (ii) associated deferred costs to the
> extent incurred by the Business prior to the Closing Date in connection with such
> products or services, in each case, that would be required to be reflected on a
> balance sheet of the Business as of such date prepared in accordance with GAAP
> applied in a manner consistent with the Nortel Accounting Principles (to the
> extent consistent with GAAP). For the avoidance of doubt, the Deferred Profit
> Amount will include advance billings and deferred revenue consistent with Nortel
> Accounting Principles." (emphasis added)

The Closing Deferred Profit Amount in the GB Closing Statement should be reduced by
(i) $34,875,868 due to GENBAND's improper inclusion of deferred revenues and
associated deferred costs relating to services performed and products provided by the
Business prior to the Closing Date and (ii) $1,629,132 due to GENBAND's improper
inclusion of a negative deferred cost-of-sales balance with respect to NNLSA.
Accordingly, the Closing Deferred Profit Amount should be reduced by $36,505,000
from $70,570,000 to $34,065,000.

- Nortel and the EMEA Sellers disagree with the Closing Specified Employee Liabilities Amount in the GB Closing Statement, which should be reduced by $98,662. The Closing Specified Employee Liabilities Amount in the GB Closing Statement included an Australian long-service leave amount of $1,131,689. For the calculation of the Australian long-service leave amount, GENBAND apparently did not recalculate the Australian Dollar amount into the U.S. Dollar amount using the exchange rate published in the *Wall Street Journal* (Eastern Edition) for the day in question (the Closing Date), as required under the ASA. Using the Australian Dollar/U.S. Dollar exchange rate published in the *Wall Street Journal* (Eastern Edition) for the Closing Date (i.e., 1.1755 Australian Dollars to one U.S. Dollar), Australian long-service leave amount in Australian Dollars of A$1,214,323 (according to Nortel's SAP accounting ledger) translates into $1,033,027. Accordingly, the Australian long-service leave amount of $1,131,689 used in GENBAND's calculation of the Closing Specified Employee Liabilities Amount in the GB Closing Statement is overstated by $98,662, which requires that the Closing Specified Employee Liabilities Amount in the GB Closing Statement be reduced from $1,487,000 to $1,388,338.

- Since Nortel and the EMEA Sellers dispute, in the GB Closing Statement, (i) the line item arrived at by subtracting the Target Working Capital from the Closing Adjusted Net Working Capital, (ii) the Closing Specified Employee Liabilities Amount and (ii) the Closing Deferred Profit Amount, all as described above, Nortel and the EMEA Sellers dispute the Final Purchase Price in the GB Closing Statement, which should be increased by $36,824,137 from $142,904,000 to $179,728,137.

For your reference, the GB Closing Statement, the adjustments set forth herein, and the Closing Statement, as adjusted herein, are set forth below.

**Revisions to CLOSING STATEMENT**

| | GB Closing Statement | Adjustments | Adjusted Closing Statement |
|---|---|---|---|
| **Closing Adjusted Net Working Capital:** | | | |
| Closing Inventory Value, plus | $ 13,747,000 | | 13,747,000 |
| Closing Unbilled Accounts Receivable Amount, plus | 21,391,000 | 220,475 | 21,611,475 |
| Closing Prepaid Expenses Amount, minus | 939,000 | | 939,000 |
| Closing Contractual Liabilities Amount, minus | 887,000 | | 887,000 |
| Closing Royalty Liability Amount, minus | 148,000 | | 148,000 |
| Closing Warranty Provision Amount, minus | 26,295,000 | | 26,295,000 |
| Closing Product Exposures Amount | 416,000 | | 416,000 |
| **Closing Adjusted Net Working Capital** | $ 8,331,000 | $ 220,475 | $ 8,551,475 |
| | | | |
| **Final Purchase Price:** | | | |
| Base Purchase Price, plus | $ 282,000,000 | | $ 282,000,000 |
| The difference, which may be positive or negative, equal to the Closing Adjusted Net Working Capital minus Target Working Capital, minus | (64,669,000) | $ 220,475 | (64,448,525) |
| Closing Aggregate EMEA Downwards Adjustment (if any), minus | - | | |
| Closing Aggregate Downward Adjustment (if any), minus | - | | |
| Closing Deferred Profit Amount, minus | 70,570,000 | ( 36,505,000) | 34,065,000 |
| Closing Accrued Vacation Amount, minus | 1,730,000 | | 1,730,000 |
| Closing Specified Employee Liabilities Amount, minus | 1,487,000 | (98,662) | 1,388,338 |
| Closing TFR Amount, minus | 402,000 | | 402,000 |
| Closing Excess ARD Employees Amount, minus | - | | |
| Closing EMEA Holiday Downward Adjustment, minus | 238,000 | | 238,000 |
| Closing French Excess ARD Employees Amount, minus | - | | |
| Closing Pre-Close Employment Payments Amount | - | | |
| **Final Purchase Price** | $ 142,904,000 | $ 36,824,137 | $ 179,728,137 |

**Annex B**

See attached



**NØRTEL**

August 13, 2010

Shauna Martin
General Counsel
Genband Inc.
3605 E. Plano Parkway
Plano, Texas 75074
Fax 972-265-3581

Re:    Verizon Receivables

Dear Shauna:

Pursuant to Section 2.1.1(b) of the Asset Sale Agreement ("ASA") dated December 22, 2009 as amended, executed by Nortel Networks Corporation and certain of its affiliates ("Nortel") and Genband Inc. ("Genband"), Nortel has transferred and assigned to Genband all of Nortel's right, title and interest in and to, among other things, Nortel's Unbilled Accounts Receivable relating to the CVAS business, defined in the ASA as amounts classified as Construction-in-Process accounts.   Other accounts receivable, either billed or unbilled, are an "Excluded Asset" pursuant to Section 2.1.2(a) of the ASA, and remain with Nortel.

Nortel Networks Inc. and Verizon Services Corp. ("Verizon") are parties to that certain General Product Purchase Agreement for Softswitch and TDM Products and Services, Contract no. C0404520, executed on or about 8/5/2004 ("GPPA"), which contract was assigned to Genband pursuant to the ASA. Under the GPPA, several years ago, Verizon purchased from Nortel DMS-100 and DMS-10 switches and Nortel licenses to certain software resident on such switches.  In 2009, Nortel conducted an audit of the switches and discovered that Verizon was using certain software resident on the switches for which Verizon had not purchased a license.  The value of such licenses was approximately $2,000,000.  Nortel provided such audit to Verizon in January 2010.

It has come to our attention that, following the closing of Genband's purchase of the CVAS business pursuant to the ASA on May 28, 2010, former Nortel employees who became Genband employees have continued to work with Verizon to resolve the dispute, and that Verizon and Genband have executed a settlement agreement under which Verizon has agreed to pay to Genband $1,817,100 for the Nortel licenses (the "Verizon Receivables").  We have been informed that Verizon has sent purchase orders to Genband with respect to amounts due under the Nortel licenses, and that Genband has invoiced Verizon for such amounts as the POs have been received.

Nortel Networks Inc.
220 Athens Way, Nashville, Tennessee 37228-1304 USA  nortel.com



Shauna Martin
Genband Inc.
August 13, 2010
Page 2 of 3

Since the Verizon Receivables do not constitute Construction-in-Process receivables, they are an Excluded Asset under the ASA and remain with Nortel. Furthermore, under Section 2.1.2(c) of the ASA, claims relating to any Excluded Liability as defined in the ASA (which includes liabilities relating to any Excluded Asset) also constitute an Excluded Asset. Finally, under Section 5.12 of the ASA, Genband has agreed to promptly deliver to Nortel any payment or instrument received by Genband that is for the account of Nortel under the terms of the ASA.

Therefore we ask that you promptly take the following actions:

- provide us with a copy of the settlement agreement and the name and contact information of representatives of Verizon with whom you have been in discussions with respect to the settlement agreement;

- deliver to Nortel an accounting of all purchase orders received and expected to be received by Genband from Verizon with respect to the Verizon Receivables, copies of such purchase orders, and the related invoices issued by Genband;

- deliver to Nortel any amounts received by Genband in payment for the Verizon Receivables as of the date hereof, and any purchase orders and amounts that you may receive from Verizon after the date hereof with respect to the Verizon Receivables; and

- fully cooperate with Nortel and Verizon in the resolution of this matter.

If you have questions regarding this matter, please contact me at 615-432-4289, LynnEgan@nortel.com.

Very truly yours,

Lynn C. Egan
Senior Counsel

cc:    Khush Dadyburjor
       Robert Fishman



Shauna Martin
Genband Inc.
August 13, 2010
Page 3 of 3

David S. Allinson, Latham & Watkins
Don J. McDermett, Jr., Baker Botts
Curt Anderson, Baker Botts
Ron Ferguson, Stikeman Elliott