IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------X
                          :

*In re*                              :

Nortel Networks Inc., *et al.,*       :

                          :

                 Debtors.    :

                          :

                          :
----------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Related Dkt. Nos. 3901, 4259**
**Hearing Date: Nov. 23, 2010**

**REPLY OF THE AFFILIATES OF VERIZON COMMUNICATIONS INC. IN SUPPORT
OF THEIR MOTION FOR (A) MODIFICATION OF THE AUTOMATIC STAY; (B)
DETERMINATION OF VERIZON'S PRE-PETITION RIGHTS OF SETOFF; AND (C)
AN ORDER REQUIRING VERIZON'S SETOFF RIGHTS TO BE EFFECTUATED
AND SATISFIED BY DEBTOR NORTEL NETWORKS, INC.**

The affiliates of Verizon Communications Inc. (collectively, "Verizon")[1] file this Reply

in support of their Motion, pursuant to 11 U.S.C. §§ 105(a), 362(d)(1) and 553(a), for

modification of the automatic stay, for a determination of the extent of Verizon's pre-petition

rights of setoff against Debtor Nortel Networks, Inc. ("Nortel"), and for an Order requiring

Verizon's setoff rights to be effectuated and satisfied by Nortel before it makes any distributions

to creditors pursuant to a confirmed Chapter 11 plan.  In further support of its Motion, Verizon

respectfully shows the Court as follows:

**PRELIMINARY STATEMENT**

    1.      In its Response to Verizon's Motion [Docket No. 4259] (the "Response"), Nortel

---

[1]      The definition of Verizon includes, without limitation, all wholly-owned subsidiaries of Verizon
Communications Inc. (including, without limitation, Verizon Corporate Services Group Inc., Verizon Services
Corp., Verizon Network Integration Corp., Verizon Business Network Services Inc., Verizon Select Services Inc.,
MCI Communications Services, Inc. d/b/a Verizon Business Services and the local operating telephone company
subsidiaries of Verizon Communications Inc.) and Cellco Partnership and its affiliates, collectively d/b/a Verizon
Wireless.

{09032}2921472v2

concedes that Verizon has, and is entitled to effectuate, rights of setoff with respect to its pre-petition Telecom Charges.[2] The only apparent dispute between the parties on this issue concerns the amount eligible for setoff. Verizon contends it is entitled to setoff and recover $251,798.05 of the funds it paid to Nortel pursuant to the Customer Order, while Nortel contends that Verizon is entitled to setoff only $162,464.79. In addition, Nortel seems to suggest that Verizon's rights can be effectuated by some means other than a return of previously-paid funds.[3] (Response at ¶¶ 22, 64.)

2.    With respect to the Telecom Charges, therefore, Verizon submits that the remaining disputes between the parties – including the roughly $89,000.00 discrepancy in their calculations of the sum that Verizon is entitled to setoff – should be addressed in further discussions between them and an account reconciliation by their respective business representatives, and submitted to this Court for decision only if the parties are unable to reach a mutual agreement within a reasonable period of time.

3.    The bulk of Nortel's Response is devoted to opposing Verizon's setoff rights with respect to two of Verizon's other pre-petition claims, the Switch Claim and the Voxpath Indemnity Claim. With respect to these two claims, Nortel's argument is relatively simple: Because the Switch Claim and the Voxpath Indemnity Claim were both contingent and disputed *as of the Petition Date*, and contingent and undisputed claims are ineligible for setoff under

---

[2]    Capitalized terms used in this Reply and not otherwise defined herein shall have the definitions assigned to them in Verizon's Motion and Nortel's Response.

[3]    Nortel ambiguously proposes to "work with [the Verizon] entities to devise an appropriate means to ensure that they receive full credit" for the pre-petition Telecom Charges that are subject to setoff. (Response at ¶¶ 22, 64.) Given that the parties are no longer conducting any significant volume of business with one another, however, Verizon submits that its setoff rights can only be effectuated at this point by requiring Nortel to disgorge and pay back to Verizon, from its Chapter 11 estate and before any distributions are made to creditors, a corresponding portion of the pre-petition funds that Verizon paid over at the outset of these cases, and pursuant to the Customer Order, on the condition that its setoff rights would be preserved.

applicable New York law, both claims are forever barred from being setoff under section 553 of the Bankruptcy Code, as a matter of law, despite the fact that they already have or eventually will become non-contingent and fully liquidated, and any disputed aspects of the claims can be fully and finally adjudicated in the course of this Chapter 11 case.

4.      With respect to the Switch Claim and the Voxpath Indemnity Claim, however, Nortel's position is based on a fundamental mischaracterization of the applicable law, and is simply and undeniably incorrect.  There is no support whatsoever, either under New York law or in the Bankruptcy Code, for the notion that the eligibility of a creditor's pre-petition claims for setoff under section 553 is irrevocably determined by the circumstances that existed on the date that a debtor unilaterally elected to file for bankruptcy protection, and remains immutable despite further developments or proceedings that occur during the course of the bankruptcy case.  In fact, and as demonstrated in detail below, the established law dictates precisely to the contrary.  Pre-petition claims that were contingent, unliquidated and/or disputed as of the petition date can, and routinely do, become non-contingent, fixed and/or fully adjudicated thereafter, and at that point are entirely eligible to be setoff under section 553 of the Code.

5.      Accordingly, Nortel's Response has no basis in the applicable law, and after any further proceedings necessary to adjudicate or otherwise resolve existing contingencies or disputes with respect to the Switch Claim and the Voxpath Indemnity Claim, Verizon is fully entitled to the relief requested in its Motion.

## ARGUMENT AND CITATION OF AUTHORITY

### A.      Nortel Is Simply Wrong On The Law.

6.      Nortel's Response to Verizon's Motion is in the nature of a motion to dismiss. Nortel essentially contends that the relief requested by Verizon is barred, on the facts admitted in

the Motion, as a matter of law. Indeed, and with respect to the Switch Claim and the Voxpath
Indemnity Claim, Nortel's entire opposition to the Motion is premised on its assertion that, in
order to be eligible for setoff under section 553, a creditor's pre-petition claim is required to have
been non-contingent, fully liquidated and entirely undisputed by the debtor, and therefore
eligible for immediate effectuation of setoff under the applicable state law, *as of the petition date
in the bankruptcy case.* (*See* Response at ¶¶ 1-5, 38, 41-43, 49, 53-57.)

7.      But this assertion is simply false. The eligibility of a pre-petition claim for setoff
is in no way fixed or conclusively determined by the circumstances that existed on the petition
date. Rather, claims that were contingent or disputed as of the petition date can later become
non-contingent, liquidated and/or fully adjudicated, and thereafter are eligible for setoff under
section 553.

8.      This is not a "fanciful" notion, as Nortel claims with no small measure of
presumption (Response at ¶ 53); it is the well-established law. As explained in a leading treatise
on bankruptcy law:

> [E]ven if state law does not permit a party to offset an unmatured or contingent
> obligation . . ., section 553 *does not* require that the creditor have a right of setoff
> that could be exercised under state law at the time the bankruptcy case is
> commenced. Rather, if the creditor has an unmatured or contingent claim when
> the bankruptcy case is commenced, and that claim matures or becomes fixed
> *during the case*, then giving rise to a right of setoff under state law, section 553(a)
> applies to recognize the right of setoff.

5 COLLIER ON BANKRUPTCY ¶ 553.03[1][i] (16th Ed. 2010) (emphasis added). *See also* Id. at ¶
553.03[1][h] ("[A] claim is eligible for setoff even though contingent at the time of the
commencement of the case"); id. at 553.03[1][h][i] ("Once a contingent prepetition claim
becomes fixed, the claim may then be applied through setoff to reduce the amount of the
creditor's debt to the debtor . . . .").

9.     In addition, and for decades, bankruptcy and appellate courts across the United States have repeatedly and consistently held creditor claims that were contingent or otherwise ineligible for setoff, as of the date the debtor filed for bankruptcy, to be pre-petition claims entirely eligible for setoff under section 553 based on events, proceedings or other changes of circumstance that occurred *after* the bankruptcy filing. *See, e.g.*, In re SNTL Corp., 571 F.3d 826, 844 (9th Cir. 2009) (a contingent pre-petition obligation to a creditor can become fixed post-petition if the creditor actually incurs liability covered by the obligation); In re Wesley Allen Myers, 362 F.3d 667, 673-674 (10th Cir. 2004) (a pre-petition debt exists and is eligible for setoff under section 553 regardless of whether it was contingent, unliquidated or unmatured when the bankruptcy petition was filed, and even if the debt "never would have come into existence except for post-petition events") (*citing* United States v. Gerth, 991 F.2d 1428, 1433 (8th Cir. 1993)); Braniff Airways, Inc. v. Exxon, Company, U.S.A., 814 F.2d 1030, 1035-1036 (5th Cir. 1987) (debt "not presently due when bankruptcy was filed," but liquidated post-petition by judgment of the bankruptcy court, was eligible for setoff under section 553; debt "does not have to be calculated prior to the filing of the bankruptcy petition in order for setoff to be available to a creditor"); In re Capital National Bank of Lansing, Michigan, 107 F.2d 101, 104 (6th Cir. 1940) (in a bankruptcy case, uncertainty over the amount owed by the respective parties will not prevent application of setoff; rather, the setoff will be suspended until the uncertainty is resolved and the amounts owed are liquidated); In re Wade Cook Financial Corp., 375 B.R. 580, 595-596 (B.A.P. 9th Cir. 2007) (claims that were contingent when debtor filed bankruptcy petition, and dependent on a post-petition event to become fixed or otherwise matured, were pre-petition claims eligible for setoff under section 553); In re Matthieson, 63 B.R. 56, 59 (D. Minn. 1986) ("Where an obligation exists prior to bankruptcy, it is irrelevant that the exact amount of

liability will not be determined until after the bankruptcy petition was filed."); In re Garden Ridge Corp., 338 B.R. 627, 633 (Bankr. D.Del. 2006) (court addressed eligibility of creditor claim for setoff under "mutuality" requirement of section 553 of Bankruptcy Code even though claim was disputed by debtor; resolution of dispute was deferred to a later time); In re Manhattan Industries, Inc., 224 B.R. 195, 200 (Bankr. M.D.Fla. 1997) ("It is not necessary that the debt sought to be set off be due when the case is commenced."); In re Affiliated Food Stores, Inc., 123 B.R. 747, 748 (Bankr. N.D.Tex. 1991) (the pre-petition character of a claim and its eligibility for setoff under section 553 "is not transformed . . . because it is contingent, unliquidated or unmatured when a debtor's petition is filed"); In re High Sierra Transport, Inc., 101 B.R. 432, 437 (Bankr. M.D. Pa. 1989) ("[Section] 553 does not prohibit setoff of a creditor's claim arising pre-petition, unliquidated or unmatured as of the petition date, against a creditor's pre-petition liability."); In re NTG Industries, Inc., 103 B.R. 195, 197 (Bankr. N.D.Ill. 1989) (creditor may assert right of setoff under section 553 even though, at the time the petition is filed, the debt is owing but not presently due, or the liability has accrued but is not yet liquidated); In re A&B Homes, Ltd., 98 B.R. 243, 248-249 (Bankr. E.D.Va. 1989) ([T]he right of setoff may be asserted, even though at the time the petition in bankruptcy is filed the debts involved have not been liquidated."); In re Britton, 83 B.R. 914, 918 (Bankr. E.D.N.C. 1988) (for purposes of setoff under section 553, debtor-creditor relationship exists at the time of bankruptcy, even if an obligation is contingent and unliquidated at that time); In re Lott, 79 B.R. 869, 871 (Bankr. W.D.Mo. 1987) (it is not necessary that a debt sought to be setoff was due when the bankruptcy case was commenced); In re Elsinore Shores Associates, 67 B.R. 926, 946 (Bankr. D.N.J. 1986) (same); In re Morristown Lincoln-Mercury, Inc., 42 B.R. 413, 417-419 (Bankr. E.D.Tenn. 1984) (creditor's claims were eligible for setoff under section 553 even though "debtor's ultimate

liability on [such] claims [was] attributable to post-petition events"); In re Isis Foods, Inc., 24 B.R. 75, 76-77 Bankr. W.D.Mo. 1982) (obligations under pre-petition promissory note were entitled to setoff under section 553 even though note was not in default on the date of the bankruptcy petition); 5 COLLIER ON BANKRUPTCY ¶ 553.03[1][e] (16th Ed. 2010) ("The concept of a 'disputed' claim in bankruptcy speaks not to the character of the creditor's claim *per se*, but, rather, to the existence of the debtor's . . . disagreement over some aspect of the creditor's rights.").

10.     Nowhere in the Response has Nortel cited even a single authority to the contrary. In fact, while Nortel repeatedly asserts that Verizon has made assumptions about the law that governs these issues, and that Verizon's position is "legally baseless," "specious" and "unsupported" (*see* Response at ¶¶ 3-4, 53-54), it is Nortel that has based its entire Response on a purported proposition – *i.e.*, that the eligibility of a creditor's claim for setoff under section 553 is irrevocably fixed as of the date a bankruptcy case is filed – for which no legal support exists.

### 1.     Nortel's position is contrary to New York law.

11.     Nortel's position certainly finds no support in New York state law.  The New York cases cited by Nortel (Response at ¶¶ 44-47) stand for nothing more than the undisputed proposition that a creditor's contingent or disputed claims are not eligible for setoff against a debtor's non-contingent and undisputed claims.  But all this means is that a creditor's contingent or disputed claims are not eligible for setoff under New York law *for so long as they remain contingent or disputed.  See, e.g.*, Ferguson v. Lion Holding, Inc., 312 F.Supp.2d 484, 505 (S.D.N.Y. 2004) (indemnity obligations were currently ineligible for setoff because dispute was still being litigated and indemnity payments were not yet due); Willett v. Lincolnshire Management, Inc., 302 A.D.2d 271 (N.Y. App. Div. 2003) (obligation was currently ineligible

for setoff because it was "currently being disputed"); Termini v. John Arthur Exhibitions, Inc., 9 Misc.2d 833, 834-835 (N.Y. Sup. Ct. 1957) (defendant's counterclaim could not be setoff against plaintiff's claim because defendant had not yet incurred any liability in separate, pending lawsuit). None of these authorities, however, prevents a once-contingent and/or disputed claim from being eligible for setoff under New York law *after it has been fixed, liquidated and/or fully and finally adjudicated. See, e.g.*, Termini, 9 Misc.2d at 835 (if and when defendant *did* incur liability in separate, pending lawsuit, liability would no longer be contingent, and would be eligible for setoff).

12.    In addition, none of these authorities holds, or even suggests, that a creditor's contingent and/or disputed claim cannot be fixed, liquidated and/or fully adjudicated, and thus rendered entirely eligible for setoff under New York law, *after a debtor has filed a petition for bankruptcy protection.* In fact, the New York statute giving rise to rights of setoff, which Nortel has quoted only selectively in its Response, expressly undermines Nortel's position. With all of the relevant language included, section 151 of the New York Debtor and Creditor Law provides as follows:

> Every debtor shall have the right upon . . . the filing of a petition under any of the provisions of the federal bankruptcy act or amendments thereto . . . by or against a creditor . . . to set off and apply, against any indebtedness, *whether matured or unmatured,* of such creditor to such debtors, any amount owing from such debtor to such creditor, *at or at any time after, the [filing of the bankruptcy petition].*

N.Y. Debt. & Cred. Law § 151 (2010) (emphasis added). On the face of the operative statute, therefore, setoff rights apply under New York law with respect to debts "whether matured or unmatured," and to amounts that a debtor owes a creditor whether "at" or "at any time after" the filing of the debtor's bankruptcy petition. (In the quotation from this provision in its Response [at p. 17 n. 12], Nortel conveniently omits the critical "at or at any time after" language.) As a

matter of New York law, therefore, a creditor's entitlement to setoff is in no way fixed upon, or restricted after, the filing of a debtor's bankruptcy petition.

13.    In short, Nortel's fundamental contention – that rights of setoff are available only with respect to creditor claims that are non-contingent, fully liquidated and entirely undisputed by the debtor, and therefore eligible for immediate effectuation of setoff under the applicable state law, as of the petition date in the bankruptcy case – is not only unsupported by, but directly contrary to, the established and applicable New York law.

### 2.    Nortel's position is contrary to the Bankruptcy Code.

14.    Nortel's position is similarly unsupported by any provision or principle of bankruptcy law.

15.    In contrast to the wealth of authorities cited in paragraphs 8-9 above, Verizon is unaware of even a single bankruptcy or federal appellate court that has ever restricted rights of setoff under section 553 to creditor claims that were fixed, unchallenged by the debtor and ready for immediate effectuation of setoff on the day that the debtor unilaterally chose to file for bankruptcy protection. Nortel purports to cite two cases in support of this proposition in its Response (at p. 15), In re Garden Ridge Corp., 338 B.R. 627, 632 (Bankr. D.Del. 2006), and In re Lason, Inc., 314 B.R. 296, 305 (Bankr. D.Del. 2004). A review of those decisions reveals, however, that they say no such thing. In fact, neither case even addresses the issue at hand.[4]

16.    The reason for the absence of any authority that supports Nortel's position is that the position is directly contrary to the express provisions of the Bankruptcy Code. Section 553 provides, in pertinent part, that the Code:

---

[4]    The former decision addresses a dispute regarding the mutuality of the obligations that the creditor was seeking to setoff under section 553, Garden Ridge, 338 B.R. at 633-642, while the latter resolves a dispute over the amount of setoff to which the debtor was entitled. Lason, 314 B.R. at 304-306.

> does not affect any right of a creditor to offset a mutual debt owing by such
> creditor to the debtor that arose before the commencement of the case . . . against
> a claim of such creditor against the debtor that arose before the commencement of
> the case . . . .

11 U.S.C. § 553(a) (emphasis added).  Section 553 thus limits setoff rights to debtor obligations

and creditor claims that both "arose before the commencement of the case," which is not even

disputed by Nortel here.  But any language further limiting such rights to claims that are fixed,

undisputed and immediately exercisable *as of* the commencement of the case, as Nortel

contends, is noticeably absent.

17.     In fact, the Code provides precisely to the contrary.  Section 553 extends state law

setoff rights to any "claim of such creditor against the debtor."  "Claim," in turn, is defined in

section 101 of the Code to include any

> right to payment, *whether or not such right is reduced to judgment, liquidated,*
> *unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,* legal,
> equitable, secured or unsecured.

11 U.S.C. § 101(5)(A) (emphasis added).  By its express terms, therefore, rights of setoff are

available under section 553 with respect to creditor claims that are contingent and/or disputed as

of the petition date in a bankruptcy case, and exercisable by the creditor thereafter, once those

claims become fixed and/or once any disputes are adjudicated or otherwise resolved in the

creditor's favor.[5]

---

[5]     To Verizon's knowledge, only one authority even comes close to suggesting that setoff under section 553 is
limited to circumstances that existed as of the petition date, and that is the decision in In re Delta Air Lines, 341
B.R. 439 (Bankr. S.D.N.Y. 2006).  The Delta decision, however, did not involve creditor claims and associated
setoff rights that undeniably existed, but were simply contingent or disputed, as of the petition date.  Rather, the
decision addressed whether a creditor's damage claims resulting from the rejection of an executory contract under
section 365 of the Code – that is, claims arising uniquely and entirely under the Bankruptcy Code, and during the
Chapter 11 case itself – were eligible for setoff against sums that the creditor owed to the debtor pre-petition.  The
Delta court answered that question in the negative.  Delta, 341 B.R. at 446-449.  The Delta case has no applicability
in this case, however, because it addressed a wholly different issue and distinct set of facts.  The Delta decision has
also been roundly criticized as incorrect by other courts and commentators, including in a strongly worded opinion
by Judge Mary Walrath, of the District of Delaware, in In re Communication Dynamics, Inc., 382 B.R. 219 (Bankr.
D.Del. 2008).  In the course of reaching the opposite conclusion on the question concerning section 365 rejection
damages, Judge Walrath expressly rejected the reasoning of the Court in Delta as possibly leading to "absurd

18.     In short, and beyond any legitimate question, Verizon's Switch Claim and Voxpath Indemnity Claim existed as of the Petition Date in this case and are eligible to be setoff against sums that Verizon owed to Nortel at that time. (In the parlance that Nortel seems to prefer, Verizon had setoff rights with respect to the Switch Claim and the Voxpath Indemnity Claim –albeit contingent and/or disputed rights – on the Petition Date in this case.) The fact that the claims were contingent and/or disputed as of the Petition Date, however, and subject to becoming fixed and/or no longer disputed as a result of events or proceedings occurring after the Petition Date, in no way limits their eligibility for setoff, once those issues are resolved, under either New York law or the Bankruptcy Code. Nortel's contention to the contrary is without any legal basis whatsoever.

**B.    Effect of the Customer Order and the Stipulation and Order**

19.     Nortel asserts repeatedly in its Response that neither the Customer Order nor the Stipulation and Order increased or expanded Verizon's otherwise existing setoff rights. Verizon does not dispute that assertion. By the same token, however, neither the Customer Order nor the Stipulation and Order operated to decrease or limit Verizon's rights.

20.     The Customer Order did no more than preserve Verizon's existing setoff rights, notwithstanding that Verizon agreed, early in this Chapter 11 case, to pay all of the charges that it had accrued with Nortel prior to the Petition Date. The Customer Order provided, very simply, that "[a]ll rights of the Debtor's customers to assert rights of setoff or recoupment are expressly reserved notwithstanding any payments by such customers to the Debtors." (Customer Order at ¶ 5.)

results," among them precluding the setoff of claims that were contingent or unmatured on the petition date, which Judge Walrath confirmed to be directly contrary to the provisions of the Bankruptcy Code for the same reasons that are discussed at paragraphs 16-17 above. Communication Dynamics, 382 B.R. at 231-232.

21.     Essentially the same is true of the Stipulation and Order, which was entered later in the case, but confirmed that Verizon would seek a determination in the present Motion regarding, among other things, any "right of setoff" that it had as of the date of the Customer Order. (Stipulation and Order at ¶ 3.)

22.     In both instances, however, the "rights of setoff" that the parties mutually agreed to preserve were Verizon's rights under section 553 of the Code. In addition, and as demonstrated above, those rights extend to Verizon's pre-petition "claims," and those "claims" – pursuant to bankruptcy law and the underlying New York law – can be contingent, unliquidated and/or disputed as of the Petition Date, and subject to becoming fixed and fully adjudicated at some point thereafter. (*See* authorities cited and discussed at paragraphs 8-18 above.) The reservation to which the parties agreed in both instances was not limited to "immediately exercisable" rights of setoff or "noncontingent and undisputed" rights of setoff. The parties merely stipulated that Verizon's "rights of setoff" would be preserved, and by operation of the applicable law, those rights have existed at all times in this case with respect to the Switch Claim and the Voxpath Indemnity Claim, and are preserved to this day no matter how contingent, unliquidated or disputed they may have been on the Petition Date.[6]

23.     Accordingly, and as a matter of law, no provision of either the Customer Order or the Stipulation and Order operated in any way to limit, alter or waive Verizon's setoff rights with respect to the Switch Claim and the Voxpath Indemnity Claim.

---

[6]     Nortel's Response also completely ignores the fact that Verizon has consistently reserved its setoff rights against Nortel throughout the course of this Chapter 11 case, including – with the Debtors' express consent – in the Court's orders authorizing various sales of the Debtors' business assets. (*See* Order approving the sale of the Debtors' CDMA and LTE assets [Docket No. 1205] at ¶ 32; Order approving the sale of the Debtors' Enterprise assets [Docket No. 1514] at ¶ 30; Order approving the sale of the Debtors' MEN assets [Docket No. 2070] at ¶ 27; Order approving the sale of the Debtors' CVAS assets [Docket No. 2632] at ¶ 46; Order approving the sale of the Debtors' MSS/Passport assets [Docket No. 4054] at ¶ 43.)

## C.   Setoff Of The Switch Claim

24.    Under the foregoing principles, Verizon's pre-petition Switch Claim against Nortel is eminently eligible for setoff under section 553.  While the claim was contingent and unliquidated as of the Petition Date, it has since become fixed and fully liquidated at $3,461,301.00, as the result of a settlement between Verizon and Customer X in December 2009.

25.    In addition, and contrary to Nortel's baseless assertion, Nortel cannot avoid a setoff of the Switch Claim simply by asserting unilaterally that the claim is disputed.  Taking Nortel's position concerning the ineligibility of disputed claims for setoff to its logical conclusion would produce absurd and patently unjust results that are contrary to established bankruptcy law.  Under Nortel's theory, a debtor need only assert a dispute, presumably at any point, in order to render a creditor's claim ineligible for setoff.  Apparently, too, the dispute need not be adjudicated or even supported to achieve this result.  To date, Nortel has not filed an objection to any of Verizon's pre-petition claims in this case.  Nortel simply asserts that certain claims are disputed and indicates an intention to file an objection at some point in the future. Plainly, however, the mere assertion of a claim dispute by a debtor cannot eviscerate a creditor's setoff rights, as section 553 and the decisions construing it readily confirm.

26.    To the extent that Nortel's liability on the liquidated Switch Claim is disputed, that dispute can and must be resolved, most appropriately by this Court and in the course of adjudicating the present Motion.  As Verizon has already noted,

> A claim is not disabled from setoff simply because it is disputed.  A court may permit the setoff notwithstanding the dispute, although a court might later undo the setoff to the extent that the dispute is ultimately resolved in the debtor's favor and the creditor's entitlement is reduced as a result.  Alternatively, the court may elect to resolve the dispute in the first instance, which is often the most prudent course, particularly if the dispute is colorable.

5 COLLIER ON BANKRUPTCY ¶ 553.03[1][e] (16th ed. 2010).  This is the Court's role in the

context of a creditor's disputed setoff claim, id., just as it is routinely the Court's role to estimate

disputed pre-petition claims for purposes of voting on a plan of reorganization, *see* Fed. R.

Bankr. P. 3018(a), or to adjudicate disputed pre-petition claims for purposes of allowance and

payment by a Chapter 11 estate pursuant to such a plan. *See* 11 U.S.C. § 502(b).

27.     In order to adjudicate Verizon's Motion with respect to the Switch Claim,

therefore, the Court should set a schedule for the completion of any remaining discovery that

needs to be conducted by the parties, and then conduct an evidentiary hearing on whether and to

what extent Nortel is obligated to indemnify Verizon in connection with the Switch Claim.  To

the extent that the Court confirms Nortel to have such liability, Verizon will then be entitled to

effectuate its accompanying rights of setoff with respect to the Switch Claim against the sums

that were mutually due and owing to Nortel as of the Petition Date.

**D.      Setoff Of The Voxpath Indemnity Claim**

28.     Under the foregoing principles, Verizon's pre-petition Voxpath Indemnity Claim

against Nortel is also completely eligible for setoff under section 553.  While the claim was

contingent and unliquidated as of the Petition Date, and remains as such today, the contingency

will not remain forever, and that current condition is no bar to the effectuation of Verizon's

setoff rights with respect to the claim.

29.     As the Collier treatise reiterates repeatedly, "a claim is eligible for setoff even

though contingent at the time of commencement of the case, and even though the claim remains

contingent until after confirmation of the debtor's plan."  5 COLLIER ON BANKRUPTCY ¶

553.03[1][h] (16th ed. 2010).  "If the contingency ripens during the course of the debtor's

bankruptcy case, then the debtor's liability will become fixed at that time [and] the claim may

then be applied through setoff to reduce the amount of the creditor's debt to the debtor . . . ."  Id.

at ¶ 553.03[1][h][i].  "On the other hand, if the contingency does not ripen during the course of the debtor's bankruptcy case, two alternatives are possible.  First, the setoff might be preserved and postponed until such time as the contingency resolves itself.  Second, the claim might be estimated pursuant to Bankruptcy Code section 502(c) and a setoff permitted with respect to the estimated amount."  Id. at ¶ 553.03[1][h][ii].  "An estimated claim may be offset against a mutual debt under section 553.  If the estimation proves to be inaccurate, it is possible, although not always feasible, to revisit the setoff issue at a later date."  Id. at ¶ 553.03[1][f].

30.    In the present case, the relief respecting the Voxpath Indemnity Claim that Verizon has requested in its Motion is entirely consistent with these principles.  Verizon requests that the Court enter an order determining that, as of the Petition Date, Verizon had a contingent and unliquidated setoff right with respect to the Voxpath Indemnity Claim, and estimating the monetary amount of that right so that it can be effectuated now, subject to a later adjustment if the estimation ultimately proves to be inconsistent with the outcome of Voxpath's ongoing patent litigation against Verizon.

31.    Alternately, if the factual record in Voxpath's patent litigation against Verizon is still insufficiently developed to permit a reasonable estimation of the Voxpath Indemnity Claim as of the time the Court conducts its hearing on the present Motion, then Verizon requests that the Court defer its estimation of the Voxpath Indemnity Claim only, and its order on effectuation of Verizon's corresponding setoff right as requested below, to a date just prior to any distribution of the final $10 Million in Nortel's Chapter 11 estate to creditors.  By that time, either Voxpath's patent litigation will be completed as to Verizon, and the Voxpath Indemnity Claim will no longer be contingent in any event, or the factual record likely will be sufficiently developed to

permit the Court to make a reasonable estimation of the claim.[7]

32.     Finally, and just as with respect to the Switch Claim, any dispute by Nortel as to its liability to Verizon on the Voxpath Indemnity Claim (once that claim is either fixed or reasonably estimated) is not a bar to Verizon's setoff rights, and must be resolved, most appropriately by this Court, in the course of adjudicating the present Motion.  Again, the Court should set a schedule for the completion of any remaining discovery that needs to be conducted by the parties, and then conduct an evidentiary hearing on whether and to what extent Nortel is obligated to indemnify Verizon in connection with Verizon's underlying liability to Voxpath, once that liability is adjudicated to conclusion and liquidated.  To the extent that the Court confirms Nortel to have such liability, Verizon will then be entitled to effectuate its accompanying rights of setoff with respect to the Voxpath Indemnity Claim – as either liquidated in the pending patent litigation or estimated by this Court -- against the sums that were mutually due and owing to Nortel as of the Petition Date.

WHEREFORE, Verizon respectfully requests that the Court

---

[7]     Nortel mentions in its Response that, among the as-yet-unresolved contingencies relating to the Voxpath Indemnity Claim is the conclusive identification of which Verizon entities are potentially liable to Voxpath, which in turn will dictate whether the Voxpath Indemnity Claim possesses the mutuality necessary to be eligible for setoff under section 553.  (Response at p. 22 n. 14.)  Yet this contingency is no more significant than any other contingency that currently relates to the claim, and will eventually be resolved in one way or another.  At the same time, Nortel admits that at least two of the Verizon entities that are potentially liable to Voxpath, Verizon Select Services Inc. and MCI Communications Services Inc., had outstanding payables to Nortel as of the Petition Date.  Under the foregoing authorities, those payables will be eligible for setoff if either or both of those entities are ultimately liable to Voxpath.  Moreover, and even before any actual liability to Voxpath is determined, both of those Verizon entities have already incurred legal expenses in defense of the Voxpath patent litigation that likely fall within Nortel's indemnification obligations.  To the extent of those legal expenses, and with respect to those two Verizon entities, therefore, the Voxpath Indemnity Claim likely is no longer even contingent, and the mutuality necessary under section 553 is established.  See Termini, 9 Misc.2d at 835 (although defendant's right of setoff remained contingent as to claimed liability in separate, pending suit, legal expenses occurred in defending that suit were not contingent and eligible for immediate setoff).  To the degree that contingencies remain, however, be they as to Verizon's underlying liability to Voxpath or as to which Verizon entities will be required to bear that liability, Verizon's right to setoff the Voxpath Indemnity Claim remains subject to either (a) present estimation or (b) reservation and later determination by the Court, under the irrefutable authorities cited and discussed above.

(a)      grant its Motion;

(b)      determine that Verizon has and is entitled to effectuate liquidated, pre-petition setoff rights against Nortel in the aggregate sum of $3,713.099.05;

(c)      determine that, Verizon has and is entitled to effectuate an unliquidated, pre-petition setoff right against Nortel with respect to the Voxpath Indemnity Claim, and either estimate the monetary amount of that right so that it can be effectuated now, subject to a later adjustment if the estimation ultimately proves to be inconsistent with the outcome of Voxpath's patent litigation against Verizon, or defer its estimation of the Voxpath Indemnity Claim, and its order on effectuation of Verizon's corresponding setoff right, to a date just prior to any distribution of the final $10 Million in Nortel's Chapter 11 estate to creditors;

(d)      modify the automatic stay to the extent necessary for Verizon's pre-petition setoff rights to be effectuated;

(e)      order Nortel to pay Verizon, out of its Chapter 11 estate and before any distributions are made to creditors, the liquidated sum of $3,713.099.05, plus the estimated or ultimately liquidated sum of the Voxpath Indemnity Claim, in satisfaction of Verizon's pre-petition setoff rights; and

(f)     afford Verizon such other and further relief as this Court may deem just and proper.

Dated:  November 18, 2010                    Respectfully submitted,

                                             SMITH, KATZENSTEIN & JENKINS LLP


                                             Kathleen M. Miller, Esq. (No. 2898)
                                             800 Delaware Avenue, 10th Floor
                                             P. O. Box 410
                                             Wilmington, DE  19899
                                             (302) 652-8405
                                             kmiller@skjlaw.com

                                             -and-

                                             ARNALL GOLDEN GREGORY LLP
                                             Darryl S. Laddin
                                             Frank N. White
                                             171 17th Street, N.W., Suite 2100
                                             Atlanta, Georgia  30363
                                             (404) 873-8500
                                             dladdin@agg.com


                                             ATTORNEYS FOR VERIZON