**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re:* | Chapter 11 |
| | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | Jointly Administered |
| Debtors. | <u>**Objection Deadline**</u>: December 9, 2010 at 4:00 pm (ET) |
| | <u>**Hearing Date**</u>: Scheduled only if necessary |

**TWENTIETH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP**
**CANADIAN COUNSEL FOR THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM**
**ALLOWANCE OF COMPENSATION AND FOR**
**REIMBURSEMENT OF EXPENSES FOR SERVICES**
**RENDERED DURING THE PERIOD FROM**
<u>**SEPTEMBER 1 TO SEPTEMBER 30, 2010**</u>
**(All Amounts in Canadian Dollars)**

This is a(n): x monthly \_\_\_\_\_ interim \_\_\_\_\_ final application.

| | |
|---|---|
| Name of Applicant: | Fraser Milner Casgrain LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | March 5, 2009 (nunc pro tunc to January 26, 2009) |
| Period for which Compensation And Reimbursement is sought: | September 1 to September 30, 2010 |
| Amount of Compensation sought as actual, reasonable and necessary: | CDN $501,560.00 Equivalent to USD $491,478.64[2] |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | CDN $9,454.03 Equivalent to USD $9,264.00[2] |

The total time expended during this Compensation Period for the preparation of Fraser Milner Casgrain's Ninteenth Monthly Fee Application was 2.80 hours and the corresponding compensation is CDN. $2,100.00).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

[2] Reuters Exchange Rate as of close of business on November 18, 2010 was CDN. $1.00 : U.S. $0.979946

## SUMMARY OF LAWYERS AND PARALEGALS
## RENDERING SERVICES DURING THE PERIOD
## SEPTEMBER 1, 2010 THROUGH SEPTEMBER 30, 2010
### (All Amounts in Canadian Dollars)

| Name | Title | Department | Province of Bar Admission/Year | Hours | Rate | Billed Value |
|------|-------|------------|-------------------------------|-------|------|--------------|
| Kukulowicz, R.S. | Partner | Financial Restructuring | Ontario - 1990 | 10.2 | $785.00 | $8,007.00 |
| Picard, M.M. | Partner | Pensions/Benefits | Ontario - 1985 | 86.2 | $775.00 | $66,805.00 |
| LeGault, N.A. | Partner | Employment/Labour | Ontario - 1982 | 5.8 | $750.00 | $4,350.00 |
| MacFarlane, A.L. | Partner | Financial Restructuring | Ontario - 1988 | 107.7 | $750.00 | $80,775.00 |
| Matheson, R.J. | Partner | Corporate/M&A/Finance/Real Estate | Ontario - 1980 | 17.7 | $785.00 | $13,894.50 |
| Wunder, M.J. | Partner | Financial Restructuring | Ontario - 1990 | 169.0 | $750.00 | $126,750.00 |
| Kaplan, M.N. | Partner | Corporate/M&A/Finance | Ontario - 1982 | 1.0 | $675.00 | $675.00 |
| Banks, T. | Partner | Employment/Pension/ Research | Ontario - 2002 | 35.1 | $520.00 | $18,252.00 |
| Dunsmuir, M.J. | Associate | Pensions/Benefits | Ontario - 2006 | 25.1 | $375.00 | $9,412.50 |
| Hétu, J. | Associate | Financial Restructuring | Ontario - 2009 | 100.6 | $310.00 | $31,186.00 |
| Pushalik, A. | Associate | Employment/Labour | Ontario - 2009 | 2.2 | $320.00 | $704.00 |
| North, A.R. | Associate | Financial Restructuring | Ontario - 2009 | 23.6 | $310.00 | $7,316.00 |
| Shay, R. | Partner | Corporate | Ontario - 1979 | 0.2 | $800.00 | $160.00 |
| Jacobs, R.C. | Consultant | Financial Restructuring | | 206.9 | $600.00 | $124,140.00 |
| Peters, Matthew | Partner | Taxation | Ontario - 2002 | 26.0 | $560.00 | $14,560.00 |
| Villeneuve, C. | Paralegal | | | 0.3 | $210.00 | $63.00 |
| Mayles, Jonah | Associate | Taxation | Ontario - 2008 | 3.5 | $320.00 | $1,120.00 |
| Nurmohamed, Z. | Partner | Taxation | Ontario - 2001 | 6.4 | $575.00 | $3,680.00 |
| | | | | | | |
| TOTAL | | | | 827.5 | CDN. | $511,850.00 |
| | Less Non-Working Travel Time Discount (50% of $27,210.00) | | | | | ($10,290.00) |
| TOTAL | | | | | CDN. | $501,560.00 |

## COMPENSATION BY PROJECT CATEGORY
## SEPTEMBER 1, TO SEPTEMBER 30, 2010
### (All Amounts in Canadian Dollars)

| Project Category | Hours | Value |
|---|---|---|
| General Case Administration | 3 | $1,830.00 |
| FMC Fee Application/Monthly Billing Reports | 5.2 | $3,870.00 |
| Analysis of Other Professionals Fee Applications/Rep | 0.3 | $180.00 |
| Retention of Professionals | 0.3 | $180.00 |
| Creditors Committee Meetings | 49.7 | $29,927.50 |
| Court Hearings | 100.8 | $74,660.00 |
| DIP, Cash Collateral Usage and Exit Financing | 1.1 | $660.00 |
| General Claims Analysis/Claims Objections | 93.6 | $60,532.00 |
| Tax Issues | 43.9 | $23,204.00 |
| Labour Issues/Employee Benefits | 160.6 | $107,855.00 |
| Real Estate Issues/Leases | 19.7 | $15,373.50 |
| Plan, Disclosure Statement and Plan Related Document | 0.3 | $180.00 |
| Telecommunications/Regulatory | 5 | $3,625.00 |
| Asset/Stock Transaction/Business Liquidations | 99.9 | $65,008.00 |
| Travel | 30.1 | $19,980.00 |
| Intercompany Analysis | 140 | $70,948.00 |
| Canadian Proceedings/Matters | 73.9 | $33,762.00 |
| U.S. Proceedings/Matters | 0.1 | $75.00 |
| **Total** | **827.5** | **$511,850.00** |

## DISBURSEMENT SUMMARY
## SEPTEMBER 1 TO SEPTEMBER 30, 2010
## (All Amounts in Canadian Dollars)

Non-Taxable Disbursements

| | |
|---|---|
| Accommodations | $   998.47 |
| Airfare/Travel | $3,912.67 |
| Binding Books / Documents | $     58.80 |
| Cellular Phones | $   116.17 |
| Courier and Delivery | $       7.50 |
| Fax Charges | $       0.25 |
| Library Computer Research | $   965.62 |
| Long Distance Telephone Calls | $   128.84 |
| Meals & Beverages | $   440.20 |
| Parking | $     15.93 |
| Photocopy Charges | $1,883.30 |
| Taxi Charges (Courier) | $   926.28 |
| | |
| Total Non-Taxable Disbursements | **$9,454.03 CDN.** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------X

|  |  |
|---|---|
| In re | : Chapter 11 |
|  | : Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | : Jointly Administered |
|  | : |
| Debtors | : **Objection Deadline** December 9, 2010 at 4:00 pm (ET) |
|  | : **Hearing Date:** Scheduled only if necessary |

------------------------------------------------------X

## TWENTIETH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP, CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM SEPTEMBER 1, 2010 THROUGH SEPTEMBER 30, 2010

Fraser Milner Casgrain LLP ("FMC" or the "Applicant"), Canadian counsel to the

Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc., et al.

(the "Debtors"), hereby submits its twentieth monthly application (the "Application") pursuant to

(i) sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2

of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local Rules"), and

(iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016

and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and

Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "Administrative Fee Order"), for interim allowance of

compensation for services rendered in the aggregate amount of CDN. $501,560.00 and for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

reimbursement of actual and necessary expenses incurred by FMC in connection therewith in the amount of CDN. $9,454.03 for the period from September 1 through September 30, 2010 (the "Compensation Period"). In support of this Application, FMC respectfully states as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.      BACKGROUND

2.      On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.      On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to operate their businesses and manage their properties under the supervision of the Canadian Court.

5.      On January 14, 2009, the High Court of Justice in England placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrator").

6.      On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. The Committee currently consists of five members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation; and (v) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases.

7.      On March 5, 2009, this Court entered an order authorizing the retention of FMC as Canadian counsel to the Committee, *nunc pro tunc* to January 26, 2009. On that same day, the Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.      On June 10, 2009, FMC filed its First Interim Fee Application Request for the period January 26, 2009 through April 30, 2009 (the "First Interim Application"). In its First Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,321,010.79 (including applicable taxes) and the reimbursement of expenses in the amount of

CDN. $18,604.14 (including applicable taxes). On July 17, 2009, this Court entered an order approving 100% of the fees and expenses sought in the First Interim Application, and FMC has received payment of such amounts.

9.    On September 10, 2009, FMC filed its Second Interim Fee Application Request for the period May 1, 2009 through July 31, 2009 (the "Second Interim Application"). In its Second Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,335,961.21 (including applicable taxes) and the reimbursement of expenses in the amount of CDN. $21,483.56 (including applicable taxes). On September 30, 2009, this Court entered an order approving 100% of the fees and expenses sought in the Second Interim Application, and FMC has received payment of such amounts.

10.    On November 25, 2009, FMC filed its Third Interim Fee Application for the period from August 1, 2009 through October 31, 2009 (the "Third Interim Application"). In its Third Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,252,173.56 (including applicable taxes) and the reimbursement of expenses in the amount of CDN. $29,664.94 (including applicable taxes). On December 15, 2009, this Court entered an order approving 100% of the fees and expenses sought in the Third Interim Application, and FMC has received payment of such amounts.

11.    On February 24, 2010, FMC filed its Fourth Interim Fee Application for the period from November 1, 2009 through January 31, 2010 (the "Fourth Interim Application"). In its Fourth Interim Application, FMC sought the award and allowance of its fees in the amount of CDN.$1,222,600.68 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$24,078.44 (including applicable taxes). On March 17, 2010, this Court entered

an order approving 100% of the fees and expenses sought in the Fourth Interim Application, and FMC has received payment of such amounts.

12.    On June 1, 2010, FMC filed its Fifth Interim Application Request for the fee period from February 1, 2010 through April 30, 2010 (the "Fifth Interim Application"). In its Fifth Interim Application, FMC sought the award and allowance of fees in the amount of CDN.$1,545,435,79 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$30,093.86 (including applicable taxes). On June 24, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Fifth Interim Application, and FMC has received payment of such amounts.

13.    On September 8, 2010, FMC filed its Sixth Interim Application Request for the fee period from May 1, 2010 through July 31, 2010 (the "Sixth Interim Application"). In its Sixth Interim Application, FMC sought the award and the allowance of fees in the amount of CDN.$737,880.08 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$30,971.07 (including applicable taxes). Upon September 30, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Sixth Interim Application and FMC has received payment of such amounts.

14.    On October 15, 2010, FMC filed its Nineteenth Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period August 1, 2010 through August 31, 2010 (the "Nineteenth Monthly Application"). In its Nineteenth Monthly Application, FMC sought the award and allowance of fees in the amount of CDN.$326,665.50 and the reimbursement of expenses in the amount of CDN.$10,063.13. As of the date of this Application, FMC has not received any payment on account of the Nineteenth Monthly Application.

### III.    RELIEF REQUESTED

15.    By this Application, FMC seeks (i) interim allowance and award of compensation for the professional services rendered by FMC during the Compensation Period in the amount of CDN. $501,560.00 representing 827.50 hours in professional services; and (ii) reimbursement of actual and necessary expenses incurred by FMC during the Compensation Period in connection with the rendition of such professional services in the amount of CDN. $9,454.03.

16.    Pursuant to the Administrative Fee Order, FMC is seeking payment of 80% of its fees (CDN $401,248.00) and 100% of its expenses (CDN. $9,454.03) relating to services rendered during the Compensation Period.

17.    FMC has received no payment and no promises for payment from any source for services rendered in connection with these Insolvency Proceedings.  There is no agreement or understanding between the Applicant and any other person (other than members of FMC) for the sharing of compensation to be received for the services rendered in these cases.

18.    As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

### IV.    SUMMARY OF SERVICES RENDERED

19.    FMC has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of significant time by FMC personnel from several legal disciplines.

20.    In the ordinary course of its practice, FMC maintains written records of the time expended by lawyers and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the lawyer or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

21.    In the ordinary course of its practice, FMC also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

22.    FMC respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly and indirectly contributed to the effective administration of these chapter 11 cases, including the Committee's interest in the Canadian Proceeding.

23.    The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that FMC was required to address.

## Case Administration

(Fees: CDN. $1,830.00; Hours 3.00)

24.    During the Compensation Period, FMC routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee in the most efficient matter with the least cost to these estates with respect to the Canadian Proceeding. FMC ensured that it coordinated its activities with those of Akin Gump and the other professionals acting on behalf of the Committee, including Jefferies and Capstone, and the Debtors' Chief Restructuring Officer, John Ray.

25.    FMC believes it was able to efficiently address all issues relating to the case administration that have arisen during the pendency of the Canadian Proceeding and the Recognition Proceeding.

## Canadian Proceedings

(Fees: CDN. $33,762.00; Hours 73.90)

26.    During the Compensation Period, FMC reviewed and analyzed the amended and restated order (the "Initial Order") granted by the Canadian Court in the Canadian Proceeding in connection with various issues and transactions arising in the Canadian Proceeding. FMC also reviewed and analyzed motion record material filed by the Canadian Debtors and the Monitor (as that term is defined below) in the Canadian Proceeding. In connection therewith, FMC, carefully analyzed the relief requested in the proposed order, participated in conference calls and in-person meetings with the Monitor (as that term is defined below), Nortel Debtors' Canadian counsel, as well as other major stakeholders, to discuss the issues associated therewith. In connection with such analyses, FMC conducted diligence on the subject matter of each motion in order to determine the effect that the relief requested by the Canadian Debtors in Canadian Proceeding

would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of the Debtors' cases. In connection therewith FMC, along with Akin Gump, participated in numerous conference calls with the Debtors' professionals and the Monitor (as that term is defined below) and its professionals, to discuss the relief requested in the Canadian Proceeding. FMC, with the assistance of Akin Gump, ensured that the Committee had a complete understanding of the Canadian Proceeding and was apprised of all material developments in the Canadian Proceeding through regular conference calls with the Committee and, as appropriate, detailed memoranda.

27.    During the Compensation Period, Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (the "Monitor") filed reports with the Canadian court with updates on the progress of the Canadian Debtors reorganization efforts and/or the Monitor's recommendations with respect to relief requested by the Canadian Debtors. FMC reviewed each of these reports, discussed the reports with Akin Gump, the Committee's financial professionals as well as the professionals for the Canadian Debtors.

### FMC Fee Application/Monthly Billing Rates

(Fees: CDN. $3,870.00; Hours 5.20)

28.    This subject matter relates to time spent reviewing invoices and drafting monthly and interim fee statements as required under the Administrative Fee Order, including paraprofessional and attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses.

### Committee Meetings

(Fees: CDN. $29,927.50; Hours 49.70)

29.    This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, and with the Committee's other legal and financial advisors.

FMC, together with the other Committee professionals, held three telephonic meetings and one in-person meeting with the full Committee during the Compensation Period. In addition, during the Compensation Period, FMC had numerous telephonic conferences with Akin Gump and other Committee professionals.

30.     Prior to its meetings with the Committee, FMC reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith which related to the Canadian Proceeding and Recognition Proceeding. Thereafter, FMC discussed each of these matters with Akin Gump and the Committee's other professionals, the Committee, as well as with individual Committee members. During these discussions, FMC assisted the Committee in formulating a position with respect to various pending matters.

31. FMC, together with Akin Gump and the Committee's other professionals, also held regular telephone conferences with the Debtors' principal officer, Mr. John Ray, during which, Akin Gump, FMC and the Committee's other professionals, discussed with Mr. Ray various matters arising in these Insolvency Proceedings, and the impact of such matters on the Debtors' unsecured creditors.

32.     Through meetings, telephone conferences, and correspondence, FMC has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding and the Recognition Proceeding, as same relate to the Debtors, and to reach independent conclusions on the merits of specific matters.

### Court Hearings

(Fees: CDN $74,660.00; Hours 100.80)

33.     This subject matter relates to preparation for and attendance at hearings and other proceedings before the Canadian Court in respect of the Canadian Proceeding and the Recognition Proceeding, and reviewing material filed with the Canadian Court. FMC lawyers

appeared at hearings held before the Canadian Court during the Compensation Period where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered. FMC lawyers attended to a joint hearing of this Court and the Canadian Court in connection with the MSS Sale (as that term is defined and discussed below), a joint hearing of this Court and the Canadian Court with respect to the Cross-Border Claims Protocol (as that term is defined and discussed below), a hearing before the Canadian Court to approve the Canadian Claims Procedure Order (as that term is defined and discussed below) and the HWT Wind-Up Motion which started on September 29, 2010 and continued into October with respect to the HWT Wind-Up (as that term is defined and discussed below). FMC lawyers prepared for the Court hearings by reviewing all applicable motions and applications filed with the Canadian Court, including any responses thereto and consulted with Akin Gump, the Committee's other professionals and the Canadian Debtors' advisors in order to formulate appropriate strategies. FMC's participation at such hearings was necessary to protect the interests of the Debtors' unsecured creditors.

### Asset Sales

(Fees: CDN $65,008.00; Hours 99.90)

34.    FMC spent time during the Compensation Period working closely with the Nortel Debtors, Akin Gump and the Committee's other advisors and the advisors of the Nortel Debtors to evaluate strategic options with respect to the direction of the Debtors' businesses and reorganization efforts, including the divestiture of certain of the Debtors' assets. Specifically, FMC attorneys spent time during the Compensation Period working with the Nortel Debtors and their professionals, the Monitor, as well as professionals for the other major creditor constituents to analyze and assess numerous financial and legal issues related to these transactions, including

without limitation the Multi-Service Switch ("MSS") business. In that regard, FMC attorneys,

together with the Committee's other professionals helped to advise the Committee on these issues

through detailed memoranda and telephonic conferences, as necessary.

*The MSS Sale*

35.    FMC attorneys spent time during the Compensation Period working with Akin

Gump and the Committee's other professionals and professionals for the Nortel Debtors,

analyzing and negotiating the terms of a sale of the Nortel Debtors' MSS business (the "MSS

Sale") and the stalking horse bid of PSP Holding, LLC. In connection therewith, Akin Gump

attorneys reviewed, commented on, and negotiated underlying documentation, including the

form of proposed bidding procedures and related sale motion (the "MSS Bidding Procedures

Motion") and held numerous conference calls with the Committee's other professionals and the

Committee to ascertain and develop the Committee's position on the proposed procedures and

transaction. This Court and the Canadian Court subsequently entered orders approving the MSS

Bidding Procedures Motion on September 1, 2010. An auction with respect to the MSS Sale

took place on September 24, 2010 and ultimately, Telefonaktiebolaget LM Ericsson ("Ericsson")

was selected as the successful bidder with a purchase price of $65 million. Following a joint

hearing of this Court and the Canadian Court, an order approving the MSS Sale to Ericsson was

entered on September 30, 2010. Since that date, FMC attorneys, together with Akin Gump, have

continued working with the professionals for the Nortel Debtors and Ericsson to negotiate and

finalize documentation necessary for the successful consummation of the transaction.

### Labor and Employee Benefits Issues

(Fees: CDN. $107,855.00; Hours 160.60)

36.    This subject matter relates to services rendered by FMC in connection with the

analysis of the Canadian Debtors' benefits plans and general labor matters. During the

Compensation Period, FMC lawyers spent time analyzing the pension and employee related issues raised by the various asset divestitures described herein, and where appropriate, commented on and negotiating the underlying documentation of such transactions. Further, FMC attorneys analyzed the impact of potential claims that could be asserted by the Ontario pension regulator on certain of assets being sold in the various divestiture processes.

37.    During the Compensation Period, FMC attorneys spent time assessing employee and pension related issues in connection with the claims process in the Canadian Proceeding and a term sheet being negotiated between the Debtors, the Monitor and the Committee regarding the Canadian claims procedure order and a cross-border claims protocol.

38.    During the Compensation Period, FMC attorneys spent considerable time assessing issues in connection with material filed in Canada by the Monitor for a motion (the "HWT Wind-Up Motion") to be heard by the Canadian Court for, among other things, the approval of the methodology for allocation of the assets of the Canadian Debtors' health and welfare trust (the "HWT") among certain beneficiaries participating in the HWT. During the Compensation Period, FMC attorneys liaised with counsel and other advisors of the Monitor and the Canadian Debtors, including the actuarial consulting firm retained to prepare a report in connection with the proposed methodology and allocation of the assets of the HWT, and FMC attorneys also provided regular updates and reports to the Committee's advisors in connection therewith. The motion to approve the methodology for the allocation of the assets of the HWT took place before the Canadian Court on September 29 and 30, 2010 and October 1, 2010. On November 15, 2010, the Canadian Court issued an order approving the methodology for allocation of the HWT as proposed by the Monitor.

## Intercompany Analysis

(Fees: CDN. $70,948.00; Hours 140.00)

39.     This subject matter relates to time spent by FMC attorneys reviewing and analyzing certain intercompany issues arising among the various Nortel entities around the world, and their impact on the Nortel Debtors' Insolvency Proceedings.  As required under the terms of the Interim Funding Agreement, FMC, along with the Committee's other professionals, continued negotiations during the Compensation Period with professionals for the Nortel Debtors, the Monitor, the Administrator and the Ad Hoc Bondholder Group concerning the allocation of sale proceeds generated by the various asset sales consummated by the estates.

40.     FMC attorneys, along with the Committee's other professionals, spent significant time during the Compensation Period analyzing and examining issues related to the allocation of sale proceeds and discussing such issues with the Committee, including in-depth analyses of various methodologies for allocating value among the Nortel entities.  In connection therewith, FMC participated in numerous meetings and telephonic conferences with the Debtors' professionals to discuss strategic alternatives with respect to the allocation in order to maximize recoveries for the Debtors' estates.  Additionally, during the Compensation Period, FMC together with Akin Gump, on behalf of the Committee, participated in an in-person meeting with professionals for the Nortel Debtors, the Monitor, the Administrator, the Ad Hoc Bondholder Group and certain Canadian creditor groups to discuss matters related to the allocation of sale proceeds and its impact on the Insolvency Proceedings.

41.     As this Court is aware, the parties agreed to engage in mediation in an effort to resolve the allocation of sale proceeds and related intercompany issues.  On October 6, 2010, the Debtors filed a motion with this Court to appoint former federal district court judge Layn R.

Phillips of Irell & Manella LLP as mediator for this process, and approve the terms of an engagement agreement between Judge Phillips and the parties (the "Mediator Engagement Motion"). An order authorizing approving the Mediator Engagement Motion was entered by the Court on October 27, 2010. The mediation recently took place on November 11, 12, 14, 15 and 16, 2010 in New York, New York. During the Compensation Period, the Committee's professionals (including Akin Gump) worked with the Debtors' professionals to review numerous documents that were produced as part of the aforementioned mediation, and had numerous strategy meetings with the Debtors' professionals regarding the mediation process. The Committee was represented at the mediation by Akin Gump, FMC and the Committee's other professionals to ensure that the interests of the Debtors' unsecured creditors are protected in this critical piece of the Insolvency Proceedings.

### Telecommunications/Regulatory/Intellectual Property
(Fees: CDN. $3,625.00; Hours 5.00)

42.    FMC lawyers spent time during the Compensation Period reviewing and examining the Nortel Debtors' intellectual property portfolio, and analyzing the various legal issues related to such intellectual property assets, and considering strategic alternatives for maximizing the value of the Nortel Debtors' intellectual property portfolio for the benefit of the estates, and consider strategic alternatives for maximizing the value of the Nortel Debtors' intellectual property portfolio for the benefit of the estates. In connection therewith, FMC attorneys, together with Akin Gump, participated in conference calls with the Nortel Debtors' professionals, analyzed various issues regarding the intellectual property monetization process and apprised the Committee of the progress of such marketing process. FMC lawyers, together

with Akin Gump and Capstone, apprised the Committee of the progress of such process as well as its impact on the Insolvency Proceedings.

### Tax Issues

(Fees: CDN. $23,204.00; Hours 43.90)

43.     This subject matter relates to legal services rendered by FMC relating to tax matters affecting the Debtors and the Canadian Debtors.  During the Compensation Period, FMC continued an in-depth analysis of various tax issues affecting the Nortel Debtors' estates, including the legacy transfer pricing system between, among others, the Debtors and the Canadian Debtors.  In connection therewith, FMC attorneys participated in conferences with the Committee's other professionals and the senior management of the Debtors and their respective advisors to discuss cross-border tax issues in the context of these Insolvency Proceedings and to consider strategic options related thereto.  FMC lawyers also assessed and analyzed Canadian issues relating to the MSS Sale.

### Claims Analysis

(Fees: CDN. $60,532.00; Hours 93.60)

44.     This subject matter relates to the analysis of claims asserted or contemplated to be asserted against the Debtors' estates.  During the Compensation Period, FMC, along with Akin Gump and Capstone, spent time analyzing the numerous claims filed against the Debtors in the U.S. Proceeding and Canadian related issues, and discussing with the Debtors' professionals the reconciliation thereof.  Additionally, FMC spent significant time during the Compensation Period working with Akin Gump, the Nortel Debtors and the Monitor negotiating an appropriate cross-border claims protocol (the "Cross-Border Claims Protocol") for use in the Insolvency Proceedings to supplement the Claims Procedures and efficiently address jurisdictional issues

related to the filing and determination of claims. FMC has continued to work constructively with Akin Gump, the Nortel Debtors and the Monitor to finalize the Cross-Border Claims Protocol, as well as the claims resolution procedures in the Canadian Proceeding and a related order to be issued by the Canadian Court (the "Canadian Claims Procedure Order").

45.     FMC, together with Akin Gump, spent considerable time during the Compensation Period negotiating with counsel for the Canadian Debtors and the Monitor with respect to the Canadian claims procedure process and related Canadian Claims Procedure Order to be approved by the Canadian Court in connection with claims against the Canadian Debtors, including securing procedural rights for the Debtors and the Committee in connection with the resolution of certain Canadian claims. On September 11, 2010, the Nortel Debtors held motions with this Court as well as the Canadian Court seeking approval of the Cross-Border Claims Protocol in form and substance acceptable to the Committee. Following a joint hearing, the Cross-Border Claims Protocol was approved on September 16, 2010 by both the U.S. and Canadian Courts. On the same date, the Canadian Court also entered the Canadian Claims Resolution Order in a form satisfactory to the Committee.

## Non-Working Travel

(Fees: CDN. $19,980.00; Hours 30.10)

46.     During the Compensation Period, FMC attorneys spent 20.80 non-working hours traveling to court hearings and/or meetings. Pursuant to Local Rule 2016-2(d)(viii), FMC has discounted this time by 50% and, accordingly, has billed 10.40 working hours traveling for the Compensation Period.

## V.   **ALLOWANCE OF COMPENSATION**

47.    The professional services rendered by FMC required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

48.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to the Administrative Fee Order.

49.    With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

50.    The total time spent by FMC lawyers during the Compensation Period was 827.50 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

51.    As shown by this application and supporting documents, FMC spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit E is a schedule of the hours expended by the lawyers and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, FMC incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $9,454.03 for which FMC respectfully requests reimbursement in full.

52.    The disbursements and expenses have been incurred in accordance with FMC's normal practice of charging clients for expenses clearly related to and required by particular matters. FMC has endeavored to minimize these expenses to the fullest extent possible.

53.     FMC's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ.  FMC believes that it is fairest to charge each client only for the services actually used in performing services for it.  In these proceedings, FMC charges $.10 per page for internal duplicating.

54.     No agreement or understanding exists between FMC and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

55.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**[The Remainder of Page Intentionally Left Blank]**

**WHEREFORE**, FMC respectfully requests that this Court:

(a)     approve the allowance of CDN. $501,560.00 for compensation for professional services rendered to the Committee during the period from September 1, 2010 through and including September 30, 2010;

(b)     approve the reimbursement of FMC's out-of-pocket expenses incurred in connection with the rendering of such services during the period September 1, 2010 through and including September 30, 2010 in the amount of CDN. $9,454.03; and

(c)     authorize and direct the Debtors to immediately pay to FMC the amount of CDN. $410,702.03 (USD $402,446.92[2]), which is equal to the sum of 80% of FMC's fees and 100% of FMC's expenses incurred during the Compensation Period.

Dated:   Toronto, Ontario
         November 19, 2010

FRASER MILNER CASGRAIN LLP

By: _____
      Michael J. Wunder (*pro hac vice*)
      A Member of the Firm

77 King Street West, Suite 400
Toronto-Dominion Centre
Toronto, Ontario  M5K 0A1
(416) 863-4511
Canadian Counsel to the Official Committee of
Unsecured Creditors

---

[2]  Reuters Exchange Rate as of close of business on November 18, 2010 was CDN. $1.00 : U.S. $0.9799