IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
                                                              :
*In re*                                                       :   Chapter 11
                                                              :
Nortel Networks Inc., *et al.*,[1]                            :   Case No. 09-10138 (KG)
                                                              :
           Debtors.                         :   Jointly Administered
                                                              :
                                                              :   Re: D.I. 4242
                                                              :
---------------------------------------------------------------X

**ORDER (I) AUTHORIZING AND APPROVING THE SALE OF LIMITED
PARTNERSHIP AND LIMITED LIABILITY COMPANY INTERESTS FREE AND
CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (II) AUTHORIZING
AND APPROVING ENTRY INTO A PURCHASE AND SALE AGREEMENT;
(III) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS; (IV) AUTHORIZING THE FILING OF
CERTAIN DOCUMENTS UNDER SEAL; AND (V) GRANTING RELATED RELIEF**

Upon the motion, (the "Motion") dated November 4, 2010, of Nortel Networks, Inc. as debtor and debtor-in-possession in the above-captioned chapter 11 case, for the entry of an order, as more fully described in the Motion, pursuant to sections 105, 107(b)(1), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9014 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 9018-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i) authorizing the sale of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

certain limited partnership and limited liability corporation interests held by NNI (as described further herein, the "LP Interests") free and clear of all liens, claims and encumbrances pursuant to section 363 of the Bankruptcy Code (the "Transaction"), (ii) authorizing and approving entry into that certain purchase and sale agreement dated as of November 3, 2010 among NNI and non-debtor Nortel Ventures LLC ("NVLLC"), on the one hand (together, the "Sellers") and CS Strategic Partners IV VC Holdings, L.P. ("CS") and Amberbrook V, LLC ("Amberbrook")[2] on the other hand for the sale of the LP Interests (including certain LP Interests of NVLLC) as described therein, substantially in the form attached to the Motion as Exhibit B (the "Agreement")[3], (iii) authorizing and approving the assumption and assignment of the Assumed and Assigned Contracts (as defined below), (iv) authorizing the Debtors to file certain documents under seal, and (v) granting them such other and further relief as the Court deems just and proper; and a hearing having been held on November 23, 2010 in connection with the Motion (the "Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the relief requested in the Motion; and the Court having considered (x) the Motion, (y) the objections, if any, to the Motion and (z) the arguments made and evidence proffered or adduced in support of the Motion at the Hearing; and Debtors having filed a Notice on November 19, 2010 (the "STARTech Notice") of STARTech's exercise of its right of first refusal and its intent to purchase NNI's LP Interests held in the STARTech Fund at the same price contemplated in the Agreement subject to execution of an agreement between STARTech

---

[2] CS and Amberbrook, together with STARTech Associates II, L.P. ("STARTech"), as the purchaser of NNI's LP Interests in STARTech Seed Fund II L.P. (the "STARTech Fund"), are referred to herein as the "Purchasers."

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

2

an NNI to transfer such interests on terms substantially similar to those in the Agreement (the "STARTech Transfer Agreement"); the STARTech Transfer Agreement having been subsequently executed on November 22, 2010; and it appearing that entry of this Order is in the best interests of the Debtors and their estates; and after due deliberation and good and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[4]

A.     This Court has jurisdiction over these chapter 11 cases, over the Motion as a core proceeding and over the parties and property affected hereby under 28 U.S.C. §§ 157(b) and 1334. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

B.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

C.     Notice of the Motion has been given via overnight or hand delivery to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) Purchasers; (v) counterparties and other parties in interest to the Assumed and Assigned Contracts (as limited by the following paragraph); and (vi) the general service list established in these chapter 11 cases. The notice given by the Debtors of the Motion, the Hearing and the relief being requested constitutes appropriate notice under the circumstances and complies with sections 107(b), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9018 and Local Rule 6004-1.

3

NEWYORK:2313026.6

D.  Adequate notice of the Motion has been given as set forth therein to all relevant parties, and no other or further notice is necessary. The Debtors have provided notice to all general partners in the agreements underlying the LP Interests, and have provided sufficient grounds to deem notice to these general partners, including commitments from certain general partners to notice limited partners holding certain rights of first refusal promptly upon the filing of this Motion, to be sufficient.

E.  The legal and factual bases set forth in the Motion and the record in these proceedings establish just cause for the relief requested therein, and that such relief is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

F.  Based upon the affidavits of service and publication filed with the Court: (a) notice and service of the Motion was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code and the Bankruptcy Rules; and (b) a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities.

G.  Neither the Purchasers nor any of their affiliates is an "insider" of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code. CS, Amberbrook, and the Sellers negotiated the terms and conditions of the Agreement in good faith and at arm's length with the Sellers. The Purchasers are "good faith" purchasers within the meaning of section 363(m) of the Bankruptcy Code and are, therefore, entitled to the protections afforded

---

[4] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

thereby. Neither the Sellers nor the Purchasers or any of their affiliates have engaged in any conduct that would cause or permit the Transaction to be avoidable under Section 363(n) of the Bankruptcy Code.

H.  The Debtors have demonstrated good, sufficient and sound business purpose and justification for entering into the Agreement and consummating the Transaction because, among other things, the Sellers and their advisors diligently and in good faith analyzed all other available options in connection with the disposition of the LP Interests and determined that (i) the terms and conditions set forth in the Agreement and (ii) the sale of the LP Interests in exchange for the consideration to be paid by the Purchasers, as more fully described in the Agreement, are all fair and reasonable and together constitute the highest or otherwise best value obtainable for such LP Interests.

I.  The Agreement and the Transaction were negotiated and have been and are undertaken by the Debtors and the Purchasers at arm's length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m). As a result of the foregoing, the Debtors and the Purchasers are entitled to the protections of section 363(m) of the Bankruptcy Code.

J.  A sale of the LP Interests other than one free and clear of all interests (as defined in the Bankruptcy Code) would yield substantially less value for the Debtors' estates than the Transaction. Therefore, the Transaction contemplated by the Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

K.  The consideration to be paid by Purchasers for the LP Interests under the Agreement and the terms and conditions thereunder constitute transfers for reasonably equivalent

value and fair consideration and may not be avoided under section 363(n) of the Bankruptcy Code.

L. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed and Assigned Contracts (excluding the Agreement of Limited Partnership of STARTech Seed Fund II L.P., which shall be assumed and assigned to STARTech) to CS and Amberbrook jointly in connection with the consummation of the Transaction, and the assumption, assignment and sale of the Assumed and Assigned Contracts to CS and Amberbrook is in the best interests of the Debtors, their estates and creditors, and all other parties in interest. The Assumed and Assigned Contracts being assigned to CS and Amberbrook are an integral part of the LP Interests being purchased by such Purchasers, and accordingly, such assumption, assignment, and sale of the Assumed and Assigned Contracts are reasonable and enhance the value of the Debtors' estates. Any Cure Amounts required to be paid by the Sellers pursuant to Bankruptcy Code section 365(b) to the Counterparty to the applicable Assumed and Assigned Contract (which, in the case of the Agreement of Limited Partnership of STARTech Seed Fund II L.P., are zero), are deemed to be the entire cure obligation due and owing under the applicable Assumed and Assigned Contract under Bankruptcy Code section 365 and no further amounts will be required to be paid.

M. Each and every provision of the Assumed and Assigned Contracts or applicable non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assumed and Assigned Contract have been satisfied or are otherwise unenforceable under Bankruptcy Code section 365.

N. Upon the payment of the Cure Amounts, if any, to the relevant Counterparty (which, in the case of the Agreement of Limited Partnership of STARTech Seed

6

NEWYORK:2313026.6

Fund II L.P., are zero), there are no outstanding defaults of the Debtors and their estates under the Assumed and Assigned Contracts.

O. The Purchasers have demonstrated adequate assurance of future performance of all Assumed and Assigned Contracts within the meaning of Bankruptcy Code section 365.

P. Upon the assignment to CS and Amberbrook, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

Q. Neither the Purchasers nor any of their affiliates are (i) a mere continuation of the Debtors or their estates and there is no continuity between the Purchasers and their affiliates and the Debtors or (ii) holding themselves out to the public as a continuation of the Debtors. The Transaction is not being undertaken for the purpose of escaping liability for the Debtors' debts. The consideration being paid by Purchasers in connection with the Transaction constitutes sufficient and valuable consideration for the releases of any potential claims of successor liability of the Purchasers and their affiliates, which releases shall be deemed to have been given in favor of the Purchasers and their affiliates by all holders of Liens (as defined in the Agreement) against or interests in the Debtors or any of the LP Interests.

R. No consents or approvals are required for each of the Sellers to enter into the Agreement other than entry of this Order and as otherwise set forth in the Agreement. The execution of the Agreement by the Sellers will not constitute a violation of any provision of the organizational documents of either NNI or any other instrument, law, regulation or ordinance under which NNI is bound. Upon entry of this Order, NNI has full corporate power and authority to execute the Agreement.

S.  Upon entry of this Order, the Agreement shall be a legal, valid and binding contract among the Sellers, CS and Amberbrook and is enforceable against the Sellers, CS and Amberbrook in accordance with its terms.

T.  Upon entry of this Order, (i) no further action is required under the Bankruptcy Code for NNI to consummate the Transaction pursuant to the Agreement and (ii) the consummation of the Transaction pursuant to the Agreement will be legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f) and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the Transaction.

U.  The LP Interests owned by NNI will be transferred, converted, cancelled or otherwise disposed of free and clear of Liens (as defined in the Agreement) because the standards set forth in Section 363(f) have been satisfied. All holders of Liens who did not object to the Motion and the relief requested therein, or who withdrew any objections to the Motion and the relief requested therein, are deemed to have consented to the Transaction pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Liens who did object fall within one or more of the other subsections of section 363(f), and all holders of Liens are adequately protected by having their Liens, if any, attach to the cash proceeds of the Transaction attributable to the LP Interests against or in which they claim an interest, with the same priority, validity, force and effect as they attached to such property immediately before the Closing of the Transaction relating to such LP Interest.

V.  Schedule A to the Agreement contains substantial sensitive commercial information, which would be damaging to certain counterparties to the Assumed and Assigned Contracts if it were to be disclosed to the competitors of such counterparties. Filing Schedule A

8

to the Agreement under seal pursuant to sections 105(a) and 107(b) of the Bankruptcy Code is in the best interests of the Debtors, their estates, creditors and other parties in interest.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. The Motion is granted.

2. All objections, if any, to the entry of this Order are overruled to the extent not otherwise withdrawn or resolved as set forth on the record of the Hearing.

3. This Order, the STARTech Transfer Agreement, and the Agreement shall be binding in all respects upon all stakeholders (whether known or unknown) of the Debtors, Purchasers, successors and assigns of the Purchasers and the Debtors and any subsequent trustee appointed or elected in the Debtors' chapter 11 cases or upon a conversion to a case under chapter 7 of the Bankruptcy Code.

4. The Agreement and all of the terms and conditions thereof are hereby approved. The Debtors are authorized and directed to consummate the Transaction. Without limiting the foregoing, the Debtors are authorized and directed to take all actions as may be reasonably requested by the Purchasers that may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Agreement or to effectuate the relief granted pursuant to this Order.

5. The Agreement is legal, valid and effective under the Bankruptcy Code. Pursuant to section 363(f) of the Bankruptcy Code, NNI's LP Interests shall be transferred, assigned or otherwise disposed of free and clear of all Liens, including any claim, interest or liability relating to any debt, claim, obligation, liability, demand, guaranty, option, right, contractual or other commitment, indemnity, indemnity obligation and warranty relating to any

9

NEWYORK:2313026.6

act, omission or circumstance arising prior to the Closing Dates (as defined in the Agreement) or otherwise arising under any doctrine of successor liability, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of the Debtors' chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise. Any and all Liens shall attach to the net proceeds of the transaction contemplated in the Agreement, with the same priority, validity, force and effect as they now have against NNI's LP Interests and subject to any rights, claims or defenses of the Debtors or their estates with respect thereto.

6. Pursuant to section 365 of the Bankruptcy Code, notwithstanding any provision of any Assumed and Assigned Contracts or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contracts, NNI is authorized to assume and to assign the Assumed and Assigned Contracts (excluding the Agreement of Limited Partnership of STARTech Seed Fund II L.P., which shall be assumed and assigned to STARTech) to CS and Amberbrook, which assignment shall take place on and be effective as of the Closing for the LP Interests relating to such Assumed and Assigned Contracts, or as otherwise provided by order of this Court. Upon assumption of the Assumed and Assigned Contracts by NNI and assignment to CS and Amberbrook, such Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

7. NNI's assumption of the Assumed and Assigned Contracts is subject to the consummation of the Transaction with respect to the LP Interests relating to such Assumed and Assigned Contracts. To the extent that an objection by a Counterparty to any Assumed and Assigned Contract, including an objection related to any applicable Cure Amounts, is not

10

resolved prior to the Closing Date for the LP Interest relating to such Assumed and Assigned Contract, subject to the terms and conditions of the Sale Agreement and without limiting NNI's obligations thereunder, NNI, in consultation with the Purchasers, may elect to (i) not assume such Assumed and Assigned Contract or (ii) postpone the assumption of such Assumed and Assigned Contract until the resolution of such objection. Any Cure Amounts outstanding on the Closing Date for the LP Interest relating to such Assumed and Assigned Contract (which, in the case of the Agreement of Limited Partnership of STARTech Seed Fund II L.P., are zero), shall be paid by the Sellers as a condition precedent to such assumption and/or assumption and assignment of the relevant Assumed and Assigned Contract.

8. As of each Closing, subject to the provisions of this Order, CS and Amberbrook shall succeed to the entirety of NNI's rights and obligations in the Assumed and Assigned Contracts relating to those LP Interests which are the subject of such Closing first arising and attributable to the time period occurring on or after such Closing and shall have all rights thereunder.

9. Upon each Closing, for all Assumed and Assigned Contracts relating to those LP Interests which are the subject of such Closing, (i) all defaults (monetary and non-monetary) under the Assumed and Assigned Contracts through such Closing shall be deemed cured and satisfied through the payment of the Cure Amounts (which, in the case of the Agreement of Limited Partnership of STARTech Seed Fund II L.P., are zero); (ii) other than Cure Amounts, no other amounts will be owed by the Debtors, their estates, CS or Amberbrook with respect to amounts first arising or accruing during, or attributable or related to, the period before such Closing with respect to the Assumed and Assigned Contracts, (iii) any and all persons or entities shall be forever barred and estopped from asserting a claim against the

Debtors, their estates, CS or Amberbrook that any additional amounts are due or defaults exist under the Assumed and Assigned Contracts that arose or accrued, or relate to or are attributable to the period before such Closing.

10. Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in the Assumed and Assigned Contracts, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contracts, NNI may assign the Assumed and Assigned Contracts (excluding the Agreement of Limited Partnership of STARTech Seed Fund II L.P., which shall be assumed and assigned to STARTech).

11. The provisions of this Order are nonseverable and mutually dependent.

12. This Order (a) is and shall be effective as a determination that, upon each Closing, except as expressly provided in the Agreement, all licenses, liens, interests, and claims existing as to the LP Interests which are the subject of such Closing have, prior to such Closing, been unconditionally released, discharged and terminated in each case as to the LP Interests and (b) shall authorize all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that Purchasers are the assignees of the LP Interests free and clear of all licenses, liens, interests, and claims except as expressly provided in the Agreement.

13. Nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right

(including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not an LP Interest.

14. Except with respect to enforcing the terms of the Agreement, absent a stay pending appeal, no person shall take any action to prevent, enjoin or otherwise interfere with consummation of the transactions contemplated in or by the Agreement or this Order.

15. The Agreement may be amended, modified or supplemented, or the provisions thereof waived, in accordance with the terms thereof without further order of this Court or notice thereof to any party in interest in the Debtors' chapter 11 cases, provided, however, that further order of this court shall be required if there is an amendment, modification, supplement or waiver to the Agreement that has a material and adverse impact on the Sellers; provided further that no such modifications, amendments, or supplements may be made except following two (2) days written notice to, or the prior consent of, the counsel to the Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Fred S. Hodara, Stephen Kuhn, and Kenneth Davis) and the counsel to the Bondholder Group, Milbank, Tweed, Hadley & McCloy, One Chase Manhattan Plaza, New York, New York, 10006 (Attention: Albert A. Pisa and Thomas J. Matz).

16. In the absence of a stay of the effectiveness of this Order, in the event that the Purchasers and the Sellers consummate the Transaction at any time after entry of this Order, then with respect to the transactions approved and authorized herein, the Purchasers, as arm's-length purchasers in good faith within the meaning of section 363(m) of the Bankruptcy Code, shall be entitled to all of the protections of section 363(m) of the Bankruptcy Code in the event this Order or any authorization contained herein is reversed or modified on appeal.

13

17. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transaction.

18. The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

19. The Court shall retain exclusive jurisdiction to (i) interpret, construe and enforce the provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith and this Order in all respects, in each case solely to the extent such interpretation, construction or enforcement pertains to a Debtor and (ii) hear and determine any and all disputes arising under or related to the Agreement or the Transaction, except as otherwise provided therein, in each case solely to the extent a Debtor is directly involved in such dispute.

20. The terms of this Order, and, the Agreement, and the STARTech Agreement, shall be binding on and inure to the benefit of the Debtors, the Purchasers, the Debtors' creditors and all other parties in interest, and any successors of the Debtors, the Purchasers, and the Debtors' creditors, including any trustee or examiner appointed in these cases or any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

21. Nothing contained in any plan confirmed in this case or any order of the Court confirming such plan shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

NEWYORK:2313026.6

22. The failure to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of the Court and the parties that the Agreement be approved and authorized in its entirety.

23. Any conflict between the terms and provisions of this Order and the Agreement shall be resolved in favor of this Order.

24. The Debtors are hereby authorized to perform each of their covenants and undertakings as provided in the Agreement prior to the final Closing Date without further order of the Court.

25. Pursuant to Bankruptcy Rules 7062 and 9014, this Order shall be effective and enforceable immediately upon entry, each of the Sellers, CS and Amberbrook are authorized to enter into the Agreement, NNI and STARTech are authorized to consummate the STARTech Transfer Agreement, and the Debtors are authorized to take all steps necessary to consummate the transactions contemplated in the Agreement, the STARTech Transfer Agreement, and this Order.

26. Schedule A of the Agreement delivered to the Court by the Debtors shall be kept segregated and under seal by the Clerk of Court and shall not be made publicly available pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1(b).

Dated: November 23, 2010
Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE