## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
                           :

| | |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |

**Hearing date: December 15, 2010 at 10:00a.m. (ET)**
**Objections due: December 8, 2010 at 4:00p.m. (ET)**

---------------------------------------------------------X

## APPLICATION OF THE DEBTORS PURSUANT TO 11 U.S.C. § 327(a) TO RETAIN AND EMPLOY ADDREX, INC. *NUNC PRO TUNC* TO NOVEMBER 24, 2010

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Application") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 327(a), 328(a), 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) authorizing the employment and retention Addrex, Inc. ("Addrex") as broker to the Debtors in connection with the evaluation, marketing and sale of certain Internet protocol numbers (the "Internet Assets"), *nunc pro tunc* to November 24, 2010; (ii) approving the terms and conditions under which Addrex will be retained and compensated; and (iii) granting such other and further relief as the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

Court deems just and appropriate.  In support of this Application, the Debtors rely upon the Declaration of Charles M. Lee (the "Lee Declaration"), attached hereto as Exhibit B.  In further support of this Application, the Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105(a), 327(a), 328(a), 330 and 331 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1.

### Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate their remaining businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA), seeking relief from their creditors (collectively, the

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration

(the "English Proceedings") under the control of individuals from Ernst & Young LLP

(collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the

future may commence additional creditor protection, insolvency and dissolution proceedings

around the world.

6.      On June 19, 2009, Nortel announced that it was advancing in discussions with

external parties to sell its businesses and that it would assess other restructuring alternatives for

its businesses in the event that it were unable to maximize value through sales.  Since then,

Nortel has sold many of its business units and assets to various purchasers.  Efforts continue to

be made with respect to the realization of value from Nortel's remaining assets.  For further

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A.,
Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel
Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks
B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel
Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks
Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## Relief Requested

7.      By this Application, the Debtors seek entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 327(a), 328(a), 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1: (i) authorizing the employment and retention of Addrex as broker to the Debtors, *nunc pro tunc* to November 24, 2010, in order to solicit and procure prospective purchasers in connection with the sale of the Internet Assets; (ii) approving the terms and conditions under which Addrex will be retained and compensated, as outlined in that certain agreement, dated as of November 24, 2010 (the "Agreement); and (iii) granting such other and further relief as the court deems just and proper.

## Basis for Relief

8.      Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

9.      Under section 327 of the Bankruptcy Code, a debtor in possession may employ one or more professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons" to assist the debtor in possession in carrying out its duties under the Bankruptcy Code. 11 U.S.C. §327(a).

10.      Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

4

11.    Bankruptcy Rule 2014 requires that an application for retention of a professional include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).  Local Rule 2014-1 further requires that "[a]ny entity seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . . shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval." Del. Bankr. L. R. 2014-1(a).

12.    By this Application, the Debtors request that the Court approve the employment and retention of Addrex as set forth herein.  The proposed retention of Addrex is beneficial to the Debtors' estates and the professional compensation arrangement provide certainty and proper inducement for Addrex to act expeditiously and prudently with respect to the matters for which it will be employed.

13.    The Debtors also request approval of the employment of Addrex *nunc pro tunc* to November 24, 2010.  Such relief is warranted by the extraordinary circumstances presented by these cases.  The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention.  See In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal dismissed, 909 F.2d 1476 (3d Cir. 1990).  The complexity and intense activity that have characterized these cases have necessitated that the Debtors and their professionals focus their

5

immediate attention on certain matters and promptly devote resources to the affairs of the Debtors pending submission and approval of this Application.

**Selection of Addrex and Scope of Services**

14.     As the business operations of the Debtors continue to wind down and assets are sold for the benefit of the estates and creditors, it is important for the Debtors to liquidate or otherwise monetize their remaining assets.  In order to facilitate an expeditious and profitable sale of the Internet Assets, the Debtors need to retain the services of a broker with specialized knowledge of this type of property who can advise the Debtors with respect to potential monetization options and, in the context of a sale, properly market the Internet Assets and attract qualified purchasers.  For such reasons, the Debtors seek retention of Addrex pursuant to this Application.

15.     As a brokerage company that is focused on providing services related to the sale of Internet protocol numbers ("IP Numbers"), Addrex is well-suited to provide the type of brokerage services required by the Debtors.  For the past year, Addrex has researched and reviewed matters related to the allocation of IP Numbers.  Addrex's efforts have included review of the Internet Assets, which consist of IPv4 Number allocations made to NNI or its predecessors in interest.  Addrex also has researched the market demand for the Internet Assets in this highly specialized area of core Internet infrastructure – demand which is rapidly expanding due to emerging technologies in the global marketplace and a dwindling number of unallocated IPv4 Numbers – and has identified and cultivated relationships with a variety of entities interested in acquiring IPv4 Numbers.

16.     The Debtors seek to retain Addrex as their broker because of, among other reasons, its knowledge of digital asset monetization, including the development of monetization

6

strategies and related marketing materials.  Addrex maintains extensive market intelligence

regarding active buyers' interest in the type of property the Debtors seek to sell and has other

knowledge and expertise relevant to the ability to realize value from the Internet Assets.

17.    The Debtors believe that the retention of experienced professionals specializing in

the provision of IP Number brokerage services fulfills a critical need that complements the

services offered by the Debtors' other restructuring professionals in these cases.  The Debtors

believe they require the services of a capable and experienced IP Number brokerage corporation

because, among other reasons, it would further the valuation and monetization of the Internet

Assets, and such efforts are important to the Debtors' success in their Chapter 11 cases.

18.    Pursuant to the Agreement, Addrex will be retained to render the following IP

brokerage services to the Debtors in connection with the sale of the Internet Assets:[5]

(a)    Identification and review of current allocations, sub-allocations and assignments
of the Internet Assets;

(b)    Creation of a marketing strategy plan and related (re)production of offering
materials;

(c)    Identification and solicitation of potential purchasers;

(d)    Assistance and coordination of an auction between the Debtors and qualified
potential purchasers, if requested by the Debtors; and

(e)    Such other services as customary in engagement of this type contemplated hereby
and as may be reasonably agreed upon by the Debtors and Addrex.

19.    It is necessary that the Debtors employ Addrex to render the foregoing

professional services.  The Debtors believe that the services will not duplicate the services that

other professionals will be providing the Debtors in these chapter 11 cases.  Specifically, Addrex

---

[5]    The summary of the Agreement in this Application is solely for the benefit of the Court and parties-in-interest.  To the extent that the summary and terms of the Agreement are inconsistent, the terms of the Agreement shall control.  Capitalized terms used but not defined in this Application shall have the meanings ascribed to them in the Agreement.

will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and

other professionals retained in these cases to avoid the unnecessary duplication of services.

**Addrex's Disinterestedness**

20.     To the best of the Debtors' knowledge, and as set forth herein and as disclosed in

the Lee Declaration, annexed hereto as <u>Exhibit B</u>, the executives and associates of Addrex have

not represented, and do not have any connection, with the Debtors, their creditors, their insiders,

their shareholders, their respective attorneys or accountants, or any other parties in interest in any

matters relating to the Debtors and their estates.

21.     As set forth in the Lee Declaration:

(a)     Neither Addrex nor any member of the brokerage team holds or represents an
        interest adverse to the Debtors' estates.

(b)     Neither Addrex nor any member of the brokerage team is or was a creditor, an
        equity security holder or an insider of the Debtors.

(c)     Neither Addrex nor any member of the brokerage team is or was, within two
        years before the Petition Date, a director, officer, or employee of the Debtors.

22.     To the best of the Debtors' knowledge and as disclosed in the Lee Declaration,

Addrex does not hold or represent any interest adverse to the Debtors or their estates, Addrex is a

"disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as

modified by section 1107(b) of the Bankruptcy Code and as required by section 327(a) of the

Bankruptcy Code, and Addrex's employment and retention by the Debtors is necessary and in

the best interests of the Debtors and their estates.

23.     Addrex will periodically review its files during the pendency of this retention to

ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant

facts or relationships are discovered or arise, Addrex will use reasonable efforts to identify such

further developments and will promptly file a supplemental declaration if needed, as required by Bankruptcy Rule 2014(a).

### Professional Compensation

24.　　Addrex intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of the Court, and consistent with the proposed compensation arrangement set forth in the Agreement (the "Fee Structure").

25.　　Addrex and the Debtors have negotiated the terms of the Agreement, which reflect commercially reasonable compensation and employment terms.  Thus, the Debtors request approval of the Agreement, including the Fee Structure, and the expense reimbursement provisions pursuant to section 328(a) of the Bankruptcy Code.

26.　　In summary, the Fee Structure provides that the Debtors are obligated to pay the following compensation to Addrex:

(a)　　A retainer of $200,000, which will be given to Addrex within five (5) business days of the date upon which this Court approves this Agreement.[6]

(b)　　A fee of 5% of the total sale price received by the Debtors from the sale of the Internet Assets, reduced by the amount of the retainer paid pursuant to section (a) above (the "Fee").[7]

(i)　　The Fee will be earned if, during the period of retention, (A) Addrex or the Debtors produce at least one buyer who is ready, willing and able to purchase the Internet Assets, or a portion thereof; (B) the Debtors accept that buyer's purchase offer; (C) the Internet Assets are sold to that buyer and the Debtors receive payment for the sale; and (D) the Internet Assets

---

[6]　　The retainer amount is non-refundable, except in the case that the Agreement is terminated by the Debtors due to a material breach by Addrex.  In such a case, Addrex would be obligated to refund, within thirty (30) days of a written request by the Debtors, the excess of the retainer amount over the net amounts then due to Addrex under the agreement.

[7]　　However, if only a portion of the Internet Assets is sold, the fee will be a reduced percentage proportionate to the part sold.

are successfully registered in the name of that buyer, along with the successful registration of related address routes.

(ii)     The Fee will also be earned if, within 120 calendar days of the expiration or termination of the Agreement, the Internet Assets are sold to any buyer whom Addrex introduced to the Debtors during the retention.

(iii)    Once earned, the Fee becomes payable on (A) the date when the Debtors receive cash payment of the sales price or (B) if an escrow agent is used, the date when the proceeds are paid out of escrow to the Debtors.

(c)     In addition to any fees that may be payable to Addrex, the Debtors shall, upon receipt of an invoice and supporting documentation, also reimburse Addrex for all actual, reasonable, out-of-pocket expenses incurred in providing services under the Agreement, including the cost of travel.

27.     Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, orders of this Court or any guidelines regarding submission and approval of fee application, in light of services to be provided by Addrex and the structure of Addrex's compensation pursuant to the Agreement, Addrex and its professionals request that it be excused from maintaining time records as set forth in Local Rule 2016 in connection with the services to be rendered pursuant to the Agreement; provided, however, that Addrex shall nonetheless maintain and present to the court records (in summary format) of all services rendered for the Debtors including reasonably detailed descriptions of those services, the approximate time expended in providing those services and the individuals who provided those services.

28.     Given the numerous issues which Addrex may be required to address in the performance of its services hereunder, Addrex's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Addrex's services for engagements of this nature, the Debtors believe that the Fee Structure described above is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

**Notice**

29.    Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

30.    No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  November 24, 2010        CLEARY GOTTLIEB STEEN & HAMILTON LLP
        Wilmington, Delaware

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

    - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*