**366**

shall be deemed a breach by Purchaser. The Purchaser and each Designated Purchaser shall be jointly and severally liable for any obligations assumed by any of them hereunder. The above designation shall be made by the Purchaser by way of a written notice to be delivered to the Sellers as soon as reasonably practicable after the date hereof and in no event later than the thirtieth (30th) day prior to the Closing Date, which written notice shall contain appropriate information about the Designated Purchaser(s) and shall indicate which Assets, Assumed Liabilities and Transferred Employees the Purchaser intends such Designated Purchaser(s) to purchase, assume and/or employ, as applicable, hereunder and include a signed counterpart to this Agreement in a form acceptable to the Main Sellers, agreeing to be bound by the terms of this Agreement and authorizing the Purchaser to act as such Designated Purchaser(s)' agent for all purposes hereunder.[58]

## ARTICLE III

### REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

The Purchaser hereby represents and warrants to the Sellers as follows:

Section 3.1.    Organization and Corporate Power.

(a)    The Purchaser is a [●] duly organized, validly existing and in good standing under the Laws of [●]. Each Designated Purchaser other than the Purchaser is a [●] duly organized, validly existing and in good standing under the Laws of the jurisdiction in which it is organized. The Purchaser has, and each Designated Purchasers will at Closing have, the requisite corporate power and authority to (i) enter into, deliver and perform its obligations pursuant to each of the Transaction Documents to which it is or will become a party and (ii) to own, lease and operate its assets and to carry on its business as it is now being conducted.

(b)    The Purchaser is, and each Designated Purchasers is or will be at Closing, duly qualified or licensed to own or lease and operate its properties and assets (including the Assets), and is in good standing, in each jurisdiction in which its ownership of assets or operation of business requires it to so qualify or to be so licensed, except to the extent that the failure to be so qualified or licensed would not materially hinder, delay or impair the Purchaser's or any such Designated Purchaser's ability to carry out its obligations under, and to consummate the transactions contemplated by, this Agreement and the other Transaction Documents to which it is or will become a party.

Section 3.2.    Authorization; Binding Effect; No Breach.

(a)    The execution, delivery and performance of each Transaction Document to which the Purchaser or any of the Designated Purchasers is, or at the Closing will be, a party have been or at Closing will be duly authorized by the Purchaser and the relevant Designated

---

[58] Note to Seller: Purchaser desires to maintain structuring flexibility. If there is a particular concern why Seller changed "Affiliate" to "Wholly-Owned Subsidiary" then let's discuss a different way to address.

**56**

*367*

Purchasers, as applicable.  This Agreement has been duly executed and delivered by the Purchaser, and the other Transaction Documents to which the Purchaser or any Designated Purchaser is, or on the Closing Date will become, a party have been or will be duly executed and delivered by the Purchaser and each Designated Purchaser party thereto.  Assuming due authorization, execution and delivery by the relevant Sellers, each Transaction Document to which the Purchaser or any Designated Purchaser is, or at the Closing will be, a party constitutes, or upon execution thereof will constitute, a valid and binding obligation of the Purchaser or such Designated Purchaser, as applicable, enforceable against such Person in accordance with its respective terms.

(b)     The execution, delivery and performance by each of the Purchaser and the Designated Purchasers of the Transaction Documents to which the Purchaser or such Designated Purchaser is, or on the Closing Date will be, a party do not and will not conflict with or result in a breach of the terms, conditions or provisions of, constitute a default under, result in a violation of, or require any Consent (other than the Regulatory Approvals and ●) or other action by or declaration or notice to any Government Entity pursuant to (i) the articles, charter or by-laws of the Purchaser or the relevant Designated Purchaser, (ii) any Contract or other document to which the Purchaser or the relevant Designated Purchaser is a party or to which any of its assets is subject or (iii) any Laws to which the Purchaser, the relevant Designated Purchaser, or any of their assets is subject, except, in the case of (ii) and (iii) above, for such defaults, violations, actions and notifications that would not individually or in the aggregate materially hinder, delay or impair the performance by the Purchaser or the Designated Purchasers of any of their obligations under the Transaction Documents.

Section 3.3.    Financing.

(a)     The Purchaser has delivered to the Main Sellers and the Joint Administrators correct and complete copies of: (i) executed equity commitment letters of even date herewith and addressed to Purchaser and NNC (with consent rights in respect of any amendment thereto, exercisable by NNC in its sole discretion) (such equity commitment letters, the "**Equity Commitment Letters" or "Financing Commitments**"), pursuant to which [●] (the "**Sponsors**") have committed, subject solely to the terms and conditions thereof, to invest an aggregate amount of $[●] in equity financing in Purchaser for purposes of funding the transactions contemplated herein and under the EMEA Asset Sale Agreement and paying any other amount due hereunder or in respect hereof including in respect of any breach hereof or thereof by Purchaser (the "**Equity Financing**"), (ii) executed debt commitment letters dated [●], 2009 and [●], 2009 and related term sheets (such debt commitment letters, the "**Debt Commitment Letters**" and, together with the Equity Commitment Letters, the "**Financing Commitments**"), pursuant to which certain lenders have committed, subject solely to the terms and conditions thereof, to provide Purchaser with an aggregate amount of $[●] in debt financing (the "**Debt Financing**" and, together with the Equity Financing, the "**Financing**") for purposes of funding the transactions contemplated herein and under the EMEA Asset Sale Agreement and paying any other amount due hereunder or thereunder or in respect hereof including in respect of any breach hereof or thereof by Purchaser and (iii) the executed limited

NY\1582469.7

[New York #2071434-v4]                                        57                    **Error! Unknown document property name.**

368

guarantee of the Sponsors in favor of the Sellers including in respect of any breach hereof or of the EMEA Asset Sale Agreement by Purchaser.**Financing").**[59]

(b) As of the date hereof, the Financing Commitments in the form so delivered are valid and in full force and effect. The Financing Commitments have not been and prior to Closing, shall not be, withdrawn, terminated, assigned or otherwise amended or modified in any respect**a manner that could reasonably be expected to adversely impact or delay in any material respect the ability of the Purchaser to consummate the Financing contemplated by the Commitment Letters** without the prior express written consent of the Main Sellers unless substitute financing on substantially the same terms and which is reasonably acceptable to the Main Sellers, which, if made available on the date hereof as the Financing Commitments, would permit the representations in this Section 3.3 to be true and correct, is contemporaneously committed to the Purchaser (the "**Replacement Financing**"). No event has occurred that, with or without notice, lapse of time or both, would constitute a default or breach on the part of the Purchaser or the Sponsors or, to the Knowledge of the Purchaser, of the lenders under any term or condition in the Financing Commitments. The Financing Commitments, together with a separate fee letter (which does not have any substantive provisions other than with respect to payment by the Purchaser of any fees), constitute, as of the date hereof, the entire and complete agreements among the parties thereto with respect to the financing contemplated thereby, and, except as set forth, described or provided for therein**With respect to the Financing Commitments**, (i) there are no conditions precedent to the respective obligations of the Sponsors and lenders to provide the Financing, and (ii) there are no contractual contingencies or other provisions under any agreement (including any side letters) or any understanding or commitment relating to the transactions contemplated by this Agreement to which the Purchaser, the Sponsors or any of their respective Affiliates is a party that would permit any of the Sponsors or lenders to reduce the total amount of the Financing or impose any additional condition precedent to the availability of the Financing or limit the ability of the Purchaser to seek and obtain specific performance of the Sponsors' and lenders' respective obligations thereunder. Assuming the Sellers' timely compliance with the terms of the Transaction Documents, as of the date hereof, the Purchaser has no reason to believe that any of the conditions to the Financing will not be satisfied on a timely basis. The Purchaser has fully paid any and all commitment fees, if any, or other fees required by the Financing Commitments to be paid as of the date hereof. Subject to its terms and conditions, the aggregate proceeds of the Financing, when funded in accordance with the Financing Commitments, will, together with unrestricted cash that the Purchaser has available on the date hereof and will continue to have available at all times until the Closing (and will make available at Closing), provide financing sufficient to pay the Base Purchase Price, all other amounts to be paid or repaid by the Purchaser under this Agreement and the EMEA Asset Sale Agreement (whether payable on or after the Closing or in the event of termination of this Agreement), and all of the Purchaser's and its Affiliates' fees and expenses associated with the transactions contemplated in this Agreement and the EMEA Asset Sale Agreement**the Closing**. The Purchaser acknowledges and agrees that receipt of the aggregate (or any)

[59] **Note to Seller: The Financing Commitment will fund 100% of its commitment in connection with the closing of the transaction and 50% of any amount to pay breaches.**

**369**

proceeds of the Financing by the Purchaser is not a condition precedent to the Purchaser's obligation to consummate the transactions contemplated hereby.

Section 3.4.    Purchaser Financial Statements.

(a)    Section 3.4(a) of the Purchaser Disclosure Schedule sets forth true and complete copies of the audited consolidated balance sheets of the Purchaser and its consolidated Subsidiaries as of December 31, 2008 and December 31, 2007 and the related consolidated audited statements of income, cash flows and statements of changes of stockholders' equity for the years then ended, accompanied by the reports thereon of the Purchasers' independent auditors (collectively referred to as the "**Purchaser Audited Financial Statements**"). The Purchaser Audited Financial Statements have been prepared based upon the financial books and records maintained by the Purchaser in accordance with GAAP, and fairly present in all material respects the consolidated financial position, results of operations, cash flows and stockholders' equity of the Purchaser and its consolidated Subsidiaries as of their respective dates and for the respective periods indicated.

(b) Section 3.4(b) of the Purchaser Disclosure Schedule sets forth the unaudited consolidated balance sheets of Purchaser and its consolidated Subsidiaries as of **November 30, 2009,** September 30, 2009 and September 30, 2008 and the related consolidated unaudited statements of income, cash flows and statements of changes of stockholders' equity of Purchaser for the nine (9) month periods ended on **November 30, 2009,** September 30, 2009 and September 30, 2008 (the "**Purchaser Unaudited Financial Statements**", and together with the Purchaser Audited Financial Statements, the "**Purchaser Financial Statements**"). Except as set forth in the Purchaser Unaudited Financial Statements, such Purchaser Unaudited Financial Statements were prepared based on the financial books and records maintained by the Purchaser, have been prepared in accordance with GAAP and fairly present in all material respects the consolidated financial position, results of operation, cash flows and stockholders' equity of the Purchaser and its consolidated Subsidiaries as of their respective dates and for the respective periods indicated.

Section 3.5.    Adequate Assurance of Future Performance.    To the extent required by any Bankruptcy Laws or other Laws, the Purchaser will be able to provide, at Closing or on such earlier date as is designated by the U.S. Bankruptcy Court, adequate assurance of its and/or the relevant Designated Purchasers' future performance under each Assumed and Assigned Contract to the parties thereto (other than the U.S. Debtors) in satisfaction of Section 365(f)(2)(B) of the U.S. Bankruptcy Code. The Purchaser acknowledges and agrees that, if it becomes necessary to provide an Assumed and Assigned Contract counterparty with additional assurances to satisfy the Purchaser's or a Designated Purchaser's obligations under Section 2.1.7, the Purchaser shall, and shall cause the relevant Designated Purchasers to, perform all actions and bear all such costs and expenses as may be necessary or advisable in connection with their obligations under Section 2.1.7 without recourse to any Seller.

Section 3.6.    Purchaser's Acknowledgments; Exclusivity of Representations and Warranties

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434.v4]

**370**

(a)    The Purchaser is experienced and sophisticated with respect to transactions of the type contemplated by the Transaction Documents.  In consultation with experienced counsel and advisors of its choice, the Purchaser has conducted its own independent review and analysis of the Business, the Assets, the EMEA Assets, the Assumed Liabilities and the EMEA Assumed Liabilities and the rights and obligations it is acquiring and assuming under this Agreement and the other Transaction Documents.  [The Purchaser acknowledges that it and/or its representatives (including its outside counsel) have been permitted such access to the books and records, facilities, equipment, contracts and other properties and assets of the Business as it required to complete its review, and that it and its representatives have had an opportunity to meet with the officers and other employees of the Sellers, the EMEA Sellers and the Business to discuss the Business.]

(b)    The Purchaser acknowledges and agrees that:

(i)    except for the representations and warranties expressly set forth in ARTICLE IV herein, in the EMEA Asset Sale Agreement or in any Ancillary Agreement, the Purchaser has not relied on any representation or warranty from the Sellers, the EMEA Sellers or any Affiliate of any such Person or any employee, officer, director, accountant, financial, legal or other representative of the Sellers or the EMEA Sellers or their respective Affiliates in determining whether to enter into this Agreement;

(ii)    except for the representations and warranties expressly set forth in ARTICLE IV herein, the EMEA Asset Sale Agreement or in any Ancillary Agreement, none of the Sellers, the EMEA Sellers, or any employee, officer, director, accountant, financial, legal or other representative of the Sellers, the EMEA Sellers or any Affiliate of any such Person has made any representation or warranty, express or implied, as to the Business (or the value or future thereof), the Assets or the EMEA Assets (including any implied representation or warranty as to the condition, merchantability, suitability or fitness for a particular purpose of any of the Assets or the EMEA Assets, including under the International Convention on Contracts for the Sale of Goods (Geneva Convention) and any other applicable sale of goods Laws), the Assumed Liabilities, the EMEA Assumed Liabilities, or any Affiliate of any such Person or the accuracy or completeness of any information regarding any of the foregoing that the Sellers, the EMEA Sellers or any other Person furnished or made available to the Purchaser and its representatives (including any projections, estimates, budgets, offering memoranda, management presentations or due diligence materials);

(iii)    no Seller, EMEA Seller or any other Person shall have or be subject to any liability to the Purchaser, any Designated Purchaser or any Affiliate or representative of the Purchaser or any Designated Purchaser resulting from the distribution to the Purchaser or any Designated Purchaser, or the Purchaser's or any Designated Purchaser's use, of the information referred to in Section 3.6(b)(ii);

(iv)    except for the representations and warranties expressly set forth in the Transaction Documents, subject to the terms of the Bankruptcy Consents, the

**371**

Purchaser or any Designated Purchaser takes the Assets on an "as is" and "where is" basis;

(v)     the enforceability of this Agreement against the Sellers is subject to receipt of the Bankruptcy Consents; and

(vi)     notwithstanding anything to the contrary contained herein, the Purchaser's obligations to consummate the transactions contemplated by this Agreement are not conditioned or contingent in any way upon the receipt of financing from any Person.

(c)     Without limiting the generality of the foregoing, PURCHASER ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY PROVIDED HEREIN OR IN THE OTHER TRANSACTION DOCUMENTS, THERE ARE NO EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NONINFRINGEMENT (I) OF ANY ASSETS, INCLUDING WITH RESPECT TO THIRD PARTY INTELLECTUAL PROPERTY RIGHTS, OR (II) REGARDING THE SCOPE, VALIDITY OR ENFORCEABILITY OF ANY TRANSFERRED INTELLECTUAL PROPERTY OR LICENSED INTELLECTUAL PROPERTY RIGHTS.

Section 3.7.     Brokers.  Except for fees and commissions that will be paid by the Purchaser, no broker, finder or investment banker is entitled to any brokerage, finder's or similar fee or commission in connection with the transactions contemplated by this Agreement and the other Transaction Documents based upon arrangements made by or on behalf of the Purchaser or any of its Affiliates.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF THE SELLERS

Except (a) as set forth in the Sellers Disclosure Schedule, (b) as set forth in the registration statements, prospectuses, reports, schedules, forms and other filings (excluding any exhibits thereto but including any documents incorporated by reference and any amendments thereto) filed by the Sellers with the U.S. Securities and Exchange Commission or the Canadian securities regulatory authorities (collectively, the "Securities Disclosure Documents") (but excluding any forward-looking disclosures in Securities Disclosure Documents as to risk factors, forward-looking statements and other similarly cautionary or generic disclosure contained or incorporated by reference therein) and/or in any filings made in the Bankruptcy Proceedings, in each case publicly filed between January 1, 2007 and the date hereof, (c) as expressly contemplated by this Agreement or (d) to the extent relating to the Excluded Assets or the Excluded Liabilities, each of the Main Sellers jointly and severally represents and warrants to the Purchaser as set forth in Sections 4.1 through 4.14 below:

Section 4.1.     Organization and Corporate Power.

**Error! Unknown document property name.**

**372**

(a)     Each Seller is duly organized and validly existing under the Laws of the jurisdiction in which it is organized.  Subject to entry of the U.S. Bidding Procedures Order and the U.S. Sale Order in the case of the U.S. Debtors and the Canadian Sales Process Order and Canadian Approval and Vesting Order in the case of the Canadian Debtors and receipt of other Consents from the U.S. Bankruptcy Court and the Canadian Court in connection with the transactions contemplated hereby and in the other Transaction Documents (collectively, the "**Bankruptcy Consents**"), each of the Sellers has the requisite corporate power and authority to (i) enter into, deliver and perform its obligations pursuant to each of the Transaction Documents to which it is or will become a party and (ii) own, lease and operate its assets, including the Assets, as applicable, and to carry on the Business in the Ordinary Course.

(b)     Each of the Sellers is duly qualified or licensed to do business and to own, lease and operate its assets, including the Assets, and to carry on the Business in the Ordinary Course, as applicable in each jurisdiction in which its ownership of property or conduct of business relating to the Business requires it to so qualify or to be so licensed, except to the extent that the failure to be so qualified or licensed would not have, or would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

Section 4.2.     Authorization; Binding Effect; No Breach.

(a)     Subject to the receipt of the Bankruptcy Consents (i) the execution, delivery and performance by each Main Seller of the Transaction Documents to which such Main Seller is, or at the Closing will be, a party has been or at Closing will be duly authorized by such Main Seller and (ii) the execution, delivery and performance by each Other Seller of the Transaction Documents to which such Other Seller will be a party will have been duly authorized by such Other Seller by the time such Other Seller executes this Agreement.  Subject to receipt of the Bankruptcy Consents, and assuming due authorization, execution and delivery by the Purchaser and the Designated Purchasers parties thereto, the Transaction Documents to which any Seller is or will be a party, will constitute, a legal, valid and binding obligation of such Seller, enforceable against it in accordance with its terms, subject to (in the case of Non-Debtor Sellers) applicable bankruptcy, insolvency, reorganization, moratorium or other Laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at Law.

(b)     Subject to receipt of the Bankruptcy Consents and the Regulatory Approvals, the execution, delivery and performance by each Seller of the Transaction Documents to which such Seller is, or on the Closing Date will be, a party do not and will not conflict with or result in a breach of the terms, conditions or provisions of, constitute a default under, result in a violation of, result in the creation or imposition of any Lien upon any of the Assets, or (subject to the receipt of Consents in connection with the Assigned Contracts and any other Consents expressly provided for herein) require any Consent (other than the Regulatory Approvals and the Bankruptcy Consents) or other action by or declaration or notice to any Government Entity pursuant to (i) the articles, charter or by-laws of the relevant Sellers, (ii) any Material Contract to which the relevant Seller is a party or to which any of its or their assets are subject, (iii) any order of any Government Entity applicable to any Seller or by

NY\1582469.7

Error! Unknown document property name.

[New York #2071434 v4]

**373**

which any of their respective properties or Assets are bound or (iv) any Laws to which any of the Sellers, or any of the Assets are subject, except, in the case of (ii), (iii) or (iv) above, for such defaults, violations, actions and notifications that would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect **(disregarding for these purposes clause (e) of the definition of Material Adverse Effect)**.

Section 4.3.    Title to Tangible Assets; Sufficiency of Assets.

(a)    Except for Permitted Encumbrances and Liens created by or through the Purchaser or the Designated Purchasers or any of their Affiliates, the Owned Inventory and the Owned Equipment is owned beneficially by one or more of the Sellers, free and clear of all Liens, and such Sellers have good and marketable title thereto.

(b)    All tangible assets included in the Owned Equipment are in satisfactory operating condition for the uses to which they are being put, subject to ordinary wear and tear and ordinary maintenance requirements, except as would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

(c)    ~~As of the date hereof and assuming~~**Assuming** the assignment or novation of all Seller Contracts to the Purchaser or a Designated Purchaser and the receipt of all Seller Consents, the Assets and the rights of, or to be acquired by, the Purchaser and/or the Designated Purchasers under this Agreement and the EMEA Asset Sale Agreement, together with the rights to be provided to the Purchaser and/or Designated Purchasers under the other Transaction Documents, considered together, include such assets, properties and rights of every type and description, whether real or personal ~~(other than Intellectual Property~~**, tangible or intangible (other than Inbound License Agreements and Cross-License Agreements set forth in Section 4.3(c) of the Sellers Disclosure Schedule**, Overhead and Shared Services, non-exclusive supply Contracts of the Business, and the services of those Employees that will not be considered Transferred Employees for purposes of this Agreement and any services currently being provided to the Business as of the Closing Date that are offered to the Purchaser, but that the Purchaser elects not to receive under the Transition Services Agreement and other than the real estate assets of the Business) as are necessary and sufficient to conduct the Business substantially in the manner conducted by the Sellers as of the date hereof (as such conduct may reasonably be modified as a result of the headcount restructuring plan previously disclosed to the Purchaser set forth in Section 4.3(c) of the Sellers Disclosure Schedule), except where the absence of such assets or rights would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

Section 4.4.    Material Contracts.

(a)    Section 4.4(a) of the Sellers Disclosure Schedule **(divided into appropriate subsections)** sets forth, as of the date hereof, a list of every Seller Contract, **Bundled Contract (with respect to those portions relating to the CVAS Products or CVAS Services) and other Contract (to the extent such Contract would be applicable if only the portions of such Contract relating to the signatory and the Business were to comprise the entire Contract),** but excluding (a) all licenses of Intellectual Property, all of

**374**

which are addressed in Section 4.5 below and (b) all [Leases], all of which are addressed by Section 4.9 below, other than purchase orders and invoices and any third-party or intercompany agreements related to Overhead and Shared Services, that:[60]

(i)    in the most recent fiscal year of the Main Sellers resulted in, or is reasonably expected by its terms in the future to result in, (A) the payment of more than $5,000,000 per annum in the aggregate or (B) the receipt by the Business of more than $5,000,000 per annum in the aggregate, except any Contracts referred to in any other subsection of this Section 4.4(a);

(ii)    is a non-competition, exclusivity, or other agreement that materially restricts the Business from directly or indirectly engaging in any business activity anywhere in the world (whether such agreement is exclusive by geography, product type or otherwise);

(iii)    is a material joint venture, partnership or alliance Contract, or other agreement that involves the sharing of profits, losses, costs or liabilities in respect of the Business, Assets or Assumed Liabilities;

(iv)    is a research and development Contract involving consideration or expenditures in excess of $2,500,000 in the most recent fiscal year or which is reasonably expected to involve consideration or expenditures of more than $2,500,000 per annum after the date hereof;

(v)    is a Contract involving the sale or distribution of the CVAS Products, valued at more than $2,500,000 in the most recent fiscal year or which is reasonably expected to be valued at more than $2,500,000 in the aggregate per annum after the date hereof;

(vi)    is a distribution Contract that contains any express inventory repurchase requirement (whether contingent or otherwise);

(vii)    relates to Indebtedness (including personal property leases) in excess of $[1,000,000];

(viii)    has "take or pay" or "requirements" provisions committing the Seller party thereto to purchase goods or services in excess of $[2,500,000] in 2009 or any calendar year thereafter;

(ix)    involves capital expenditures in excess of $[2,500,000] after the date hereof;

---

[60] Note to Seller: It is important for Purchaser's diligence and plans for implementing the Business that this disclosure extend beyond customer contracts, particularly because of Seller's process of not permitting Purchaser's internal people to have full access to contracts. If scheduling burden is a concern then the parties should discuss the appropriate thresholds.

64

NY\1582469.7

64                                Error! Unknown document
[New York #2071434 v4]                                property name.

**375**

> (x)    involves a security deposit, letter of credit, performance bond or surety;

> (xi)    contains any material obligation secured by a Lien on any material Asset (other than by a Permitted Encumbrance or by any encumbrance that will be released prior to or on the Closing Date); ~~or~~

> (xii)    requires the posting of a letter of credit, performance bond or surety**; or**

> **(xiii)    is an inbound and/or outbound license of Intellectual Property used or held for use in connection with the Business (other than (i) Cross-License Agreements and (ii) shrink wrap, click wrap, and other commercially available off-the-shelf software with license, maintenance, support and other fees of less than $20,000 annually)**.

(all the above, collectively, the "**Material Contracts**").

(b)    Complete copies (including all waivers and amendments) of all Material Contracts have been made available (i) to the Purchaser or (ii) to certain of the Purchaser's representatives (including external counsel) in the Clean Team Data Room.

Section 4.5.    Intellectual Property.

(a)    The Transferred Intellectual Property**, the EMEA Transferred Intellectual Property** and the Licensed Intellectual Property include all the Intellectual Property owned at least in part by the Sellers **and the EMEA Sellers** that~~, as of the date hereof,~~ covers or is used in the conduct and operation of the Business, except with respect to any Intellectual Property used in connection with any Overhead and Shared Services~~.~~ **(but only to the extent such Intellectual Property is not otherwise used in connection with the Business).**

(b)    An accurate, true and complete list of all the Transferred Intellectual Property registered or applied for in the name of the Sellers is set forth in Section 4.5(b) of the Sellers Disclosure Schedule (the Intellectual Property disclosed in Section 4.5(b) of the Sellers Disclosure Schedule is collectively referred to as the "**Business Registered IP**"). The foregoing list of Business Registered IP includes: (a) for each issued Patent and Patent application, the Patent number or application serial number for each jurisdiction in which filed, and date issued and filed; (b) for each Trademark registration or application, the application serial number or registration number and the date of such registration or application, by country and state; and (c) for any domain names, the registration date and name of registry. [44] **To the Knowledge of the Sellers, the EMEA Sellers do not own any issued patents,**

---

[44] ~~Note to Purchaser: There are no registrations or applications for registration for copyrights, industrial designs or mask works.~~

65

**Error! Unknown document property name.**

**376**

**pending patent applications or registered Trademarks, registered or applied for in their names that are included in the EMEA Transferred Intellectual Property.**

(c)     The Transferred Intellectual Property, the EMEA Transferred Intellectual Property, the Licensed Intellectual Property and the Intellectual Property rights granted to the Sellers under the Cross-License Agreements and the Inbound License Agreements together include all the material Intellectual Property that, as of the date hereof, is used by the Sellers **and the EMEA Sellers** in connection with the conduct and operation of the Business, in each case except with respect to any Intellectual Property used in connection with any Overhead and Shared Services **(but only to the extent such Intellectual Property is not otherwise used in connection with the Business)**.

(d)     To the Knowledge of the Sellers, the**neither the Transferred Intellectual Property nor the EMEA** Transferred Intellectual Property is ~~not~~ subject to any Liens other than Permitted Encumbrances and, to the Knowledge of the Sellers, except for Material Contracts referenced in Section 4.4(a)(ii), none of the Sellers **or EMEA Sellers** have entered into any contract or agreement containing a covenant not to compete with respect to the Transferred Intellectual Property or **the EMEA Transferred Intellectual Property or** otherwise limiting the Purchaser's ability to use any of the **Transferred Intellectual Property or the EMEA** Transferred Intellectual Property to conduct the Business, in each case, that would bind the Purchaser or an Affiliate of the Purchaser after the Closing.  **To the Knowledge of the Sellers, none of the Transferred Intellectual Property or EMEA Transferred Intellectual Property is subject to any outstanding order, judgment or stipulation restricting the use, transfer or exploitation thereof by the Sellers or the EMEA Sellers in any material respect.**

**(e)     The Sellers have no Knowledge that any Third Party infringes upon, misappropriates, dilutes or otherwise violates the Transferred Intellectual Property or the EMEA Transferred Intellectual Property, and no Seller or EMEA Seller has brought or threatened to bring any claim alleging any of the foregoing during the past two (2) years (or earlier, if the claim is presently unresolved).**

**(f)**     ~~(e)~~ With respect to the Transferred Intellectual Property, the Sellers ~~or~~**own all right, title, and interest in and to each such item of Intellectual Property and with respect to the EMEA Transferred Intellectual Property,** the EMEA Sellers own **all** right, title, and interest in and to each such item of Intellectual Property.  **To the Knowledge of the Sellers, such rights, title and interest are sufficient for the Sellers to independently bring suit against a Third Party to enforce the issued patents, registered trademarks and registered service marks included in the Transferred Intellectual Property.**  With respect to the Licensed Intellectual Property (other than any Intellectual Property owned by a Third Party**, but including, for the avoidance of doubt, any Intellectual Property assigned or transferred by the Sellers or the EMEA Sellers to a Third Party in connection with divestitures of the Nortel Retained Businesses by any Seller since the filing of the Bankruptcy Proceedings**), to the Knowledge of the Sellers, the Sellers ~~or~~**,** the EMEA Sellers ~~own~~**or Third Party purchasers of the Nortel Retained Businesses own all** right, title, and

**66**

**377**

interest in and to each such item of Intellectual Property, ~~such rights, title, and interest being sufficient to permit the~~**and** Sellers ~~or~~**and** the EMEA Sellers **have sufficient rights** to license such Intellectual Property as set forth in the Intellectual Property License Agreement and the Trademark License Agreement.  The Parties acknowledge and agree that the foregoing sentence does not constitute, and shall not be construed as, a representation or warranty with respect to non-infringement or non-misappropriation of Intellectual Property.

    **(g)**   ~~(f)~~To the Knowledge of the Sellers, Section 4.5(~~f~~**g**) of the Sellers Disclosure Schedule sets forth all Cross-License Agreements, **indicating for each Cross-License Agreement, the title and the parties thereto,** except to the extent a Cross-License Agreement prohibits disclosure of its existence without consent of the relevant Third Party, which consent the Sellers were unable to obtain, in which case it has been omitted from Section 4.5(~~f~~**g**) of the Sellers Disclosure Schedule **(an "Omitted Cross-License Agreement")**, but the number of such Cross-License Agreements that have been omitted is set forth in Section 4.5(~~f~~**g**) of the Sellers Disclosure Schedule, and the Sellers shall use reasonable efforts to provide such other information as reasonably requested by the Purchaser regarding such Cross-License Agreements, the disclosure of which does not breach such prohibition.  **No royalties or other amounts are due or payable by or on behalf of Nortel under any such Omitted Cross-License Agreements, nor will any such royalties or other amounts be due or payable by Purchaser under any Omitted Cross-License Agreement in connection with entering into this Agreement.**

    **(h)**   ~~(g)~~To the Knowledge of the Sellers, there has been no assertion or claim made in writing to the Sellers**, the EMEA Sellers or any of their respective Affiliates** during the past two (2) years preceding the date of this Agreement asserting invalidity, misuse or unenforceability of the Transferred Intellectual Property or **the EMEA Transferred Intellectual Property or** challenging the Sellers**', the EMEA Sellers', or any of their respective Affiliates**' right to use, right to transfer, or ownership of the Transferred Intellectual Property **or the EMEA Transferred Intellectual Property**; in each case, ~~except where such~~**excluding any** assertions or claims **that** would not reasonably be expected to ~~have, individually or in the aggregate, a Material Adverse Effect~~**result in any invalidity, unenforceability, loss or other material impairment of any rights or interest in the subject Intellectual Property**.

    **(i)**   ~~(h)~~None of the Sellers has**, and to the Knowledge of the Sellers, none of their Affiliates (nor any EMEA Seller or its Affiliates) has,** received any written assertions, during the past two (2) years preceding the date of this Agreement that (i) any Seller's**, EMEA Seller's or any of their respective Affiliates'** operation of the Business, including ~~such Seller's~~**the** use, performance, licensing, copying, distribution, sale, offer for sale, lease, manufacture, having made, importation, or any other exploitation of the CVAS Products sold by the Business or of the CVAS Services rendered by the Business infringes, misappropriates, dilutes or otherwise violates any Intellectual Property right or moral right of any Third Party; or (ii) any of the Transferred Intellectual Property**, EMEA Transferred Intellectual Property** or Licensed Intellectual Property infringes, dilutes or otherwise violates any Intellectual Property right or moral right of, or was misappropriated from, a Third Party~~, or is invalid or~~

**378**

~~unenforceable; in each case, except where such assertions would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.~~

(i)    ~~(i)~~ To the Knowledge of the Sellers, Section 4.5(i~~i~~) of the Sellers Disclosure Schedule sets forth a list of all material Contracts (other than Cross-License Agreements) granting to the Sellers**, the EMEA Sellers** or any of their **respective** Affiliates any license under or to any Intellectual Property owned by a Third Party that is, as of the date hereof, incorporated into the CVAS Products, used in the provision of CVAS Services, or otherwise utilized by the Business in its operations in the ordinary course (collectively, the "**Inbound License Agreements**"), indicating for each Inbound License Agreement, ~~the title and the parties thereto, except to the extent an Inbound License Agreement prohibits disclosure of its existence without consent of the relevant Third Party, which consent the Sellers were unable to obtain, in which case it has been omitted from Section 4.5(i) of the Sellers Disclosure Schedule~~**the title and the parties thereto**.

**(k)    To the Knowledge of the Sellers, Section 4.5(k) of the Sellers Disclosure Schedule sets forth a complete and accurate list of all Contracts in effect (other than (i) Cross-License Agreements, (ii) non-exclusive object code licenses granted to end users or other purchasers of CVAS Products or non-exclusive licenses granted by the Sellers or their Affiliates (or the EMEA Sellers or their Affiliates) to customers, distributors or suppliers in connection with the manufacture or sale of CVAS Products or CVAS Services and (iii) any non-exclusive license granted to any purchaser of any subsidiary or assets of a business unit of the Sellers, the EMEA Sellers or their respective Affiliates the sale of which was consummated during the past two (2) years preceding the date of this Agreement) under which the Sellers, the EMEA Sellers or any of their respective Affiliates grant a license to a Third Party under Transferred Intellectual Property or the EMEA Transferred Intellectual Property (collectively, the "Outbound License Agreements"), indicating the title and the parties thereto.**

**(l)    To the Knowledge of the Sellers, there is no outstanding dispute or disagreement with respect to (i) any Inbound License Agreement, (ii) any Outbound License Agreement or (iii) any Cross-License Agreement, in each case, that materially affects any of the Intellectual Property rights granted to the Purchaser herein.  To the Knowledge of the Sellers, the Sellers have made available to Purchaser or its counsel true and complete copies of each Inbound License Agreement, Outbound License Agreement and Cross-License Agreement (excluding Omitted Cross-License Agreements).**

**(m)**    ~~(j)~~ To the Knowledge of the Sellers, each of the registrations for the Transferred Intellectual Property is valid and subsisting, except as would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect. The foregoing will not be construed as a warranty that any Patent, or any Trademark registration, will issue based on a Patent or Trademark application.

**(n)    To the Knowledge of the Sellers, the conduct of the Business, including the design, development, testing, manufacturing, sale, distribution, support or servicing of any CVAS Products or the use or exploitation of any Transferred Intellectual**

68

**Property, EMEA Transferred Intellectual Property or Licensed Intellectual Property or the provision of any CVAS Services by any Seller, EMEA Seller, or any of their respective Affiliates in connection with any of the foregoing, does not infringe upon, misappropriate or otherwise violate in any material respect any Intellectual Property of any Third Party.**

(o)   (k) To the Knowledge of the Sellers, Section 4.5(ko) of the Sellers Disclosure Schedule sets forth a true, accurate and complete list of any Open Source Software used in each of the CVAS Products and describes (i) the specific Open Source Software used; (ii) the specific Open Source Software version; and (iii) the CVAS Products or portions thereof into which such Open Source Software is incorporated.  To the Knowledge of the Sellers, the Business is in full compliance with all license obligations associated with such Open Source Software, except as would not reasonably be expected to have, individually, or in the aggregate, a Material Adverse Affect.

(p)   (l) The Sellers (with respect to the Business) have used reasonable efforts to establish measures regarding data security.  To the Knowledge of the Sellers, with respect to data security, the Business is in compliance with all the requirements of Law, except as would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.[45]

(q)   (m) Notwithstanding any provision herein to the contrary, this Section 4.5 consists of the sole representation and warranty in this Agreement regarding non-infringement, non-violation, and non-misappropriation of Intellectual Property.

Section 4.6.   Litigation.  As of the date hereof, except**Except** for the Bankruptcy Proceedings, there is no Action pending or, to the Knowledge of the Sellers, threatened before any Government Entity against any Seller involving the Business or, the Assets **or Assumed Liabilities**, that would be material to the Business taken as a whole.  [To the Knowledge of the Sellers, except for the Bankruptcy Proceedings, there is no outstanding Order to which the Sellers are subject in respect of the Business or the Assets only, and not any other business segments or assets of the Sellers, nor are any of the Sellers in default with respect to any such Order.][46]

Section 4.7.   Financial Statements.[61]

(a)   Section 4.7(a) of the Sellers Disclosure Schedule sets forth true and complete copies of the audited balance sheets of the Business as of December 31, 2008 and December 31, 2007 and the related audited statements of income for the years then ended, accompanied by the reports thereon of the Sellers' independent auditors (collectively referred to as the **"Audited Financial Statements"**).  The Audited Financial Statements have been prepared in accordance with GAAP**, consistently applied,** and fairly present in all material

---

[45] Note to Purchaser: We believe this issue is sufficiently covered by Section 4.5(a).
[46] Note to Purchaser: To be discussed pending explanation of defined term "Order".
[61] **Note to Seller: Characterization of Financial Statements TBD now that they have been made available.**

69

**380**

respects the consolidated financial position, results of operation and cash flows of the Business as of their respective dates and for the respective periods indicated, ~~except that they do not represent the balance sheet accounts or the income statements that would have occurred if the Business had been operated by the Sellers as a "stand alone" entity~~.

(b)     Section 4.7(b) of the Sellers Disclosure Schedule sets forth the unaudited management statements of certain assets and liabilities of the Business as of September 30, 2009 and the related unaudited management statements of income of the Business for the nine (9) month period ended on September 30, 2009 (the "**Unaudited Financial Statements**", and together with the Audited Financial Statements, the "**Financial Statements**").  ~~Except as set forth in the Unaudited Financial Statements, such Unaudited Financial Statements were prepared based on the financial books and records maintained by the Sellers, and the EMEA Sellers, for the Business on the basis of the Nortel Accounting Principles and represent the Sellers' good faith estimate of the selected balance sheet accounts, income statements and results of operations set forth therein for the Business, in each case as of the dates and for the periods presented therein.~~ The Unaudited Financial Statements ~~(a) have not been~~**were** prepared in accordance with GAAP~~, except as set forth in~~ **using** the Nortel Accounting Principles, ~~(b) include estimated costs that do not necessarily represent the costs that were actually allocated to the Business for the relevant periods (or that the Business will incur after the Closing), (c) include assets that have not been tested for impairment or otherwise adjusted for fair value, (d) reflect the estimated historical operation of the Business (including the Overhead and Shared Services and the Excluded Assets) for the periods specified therein and (e) do not represent the balance sheet accounts or the income statements that would have occurred if the Business had been operated by the Sellers as a "stand alone" entity~~**and fairly present in all material respects the combined financial position, results of operations and cash flows of the Business as of the date thereof and for the periods covered thereby**.

(c)     ~~[As of the date hereof, except~~**Except** as set forth in Section 4.7(c) of the Sellers Disclosure Schedule, there are no Assumed Liabilities or EMEA Assumed Liabilities of a type that would be required to be included on a balance sheet of the Business prepared in accordance with GAAP **(or reflected in the notes thereto)** except Liabilities that (i) in the aggregate are set forth or reflected in the Financial Statements; (ii) have been incurred in the Ordinary Course since the date of the last balance sheet included in the Financial Statements; **or** (iii) have been incurred in connection with this Agreement or the transactions contemplated hereby; ~~or (iv) which (excluding any Liabilities referred to in clauses (i) through (iii) above) would not have a Material Adverse Effect.]~~**.**

Section 4.8.     Compliance with Laws; Consents.

(a)     ~~To the Knowledge of the Sellers, no~~**No** Seller is in violation of any applicable Law in connection with the Business, except for violations that would not reasonably be expected to be material to the Business taken as a whole.  None of the Sellers has received any written notice or written claims from any Government Entity within the twelve (12) months preceding the date hereof relating to any material non-compliance of the Business or the Assets with any applicable Law nor are there, based on the Knowledge of the

NY\1582469.7

70

**Error! Unknown document**
[New York #2071434-v4]
**property name.**



Sellers, any such notice or claims threatened or pending, except where such claims would not reasonably be expected to be material to the Business taken as a whole.

(b)    ~~To the Knowledge of the Sellers:~~ (i) a**A**ll of the Consents of Government Entities necessary for, or otherwise material to, the conduct of the Business or the ownership of the Assets as conducted or owned, as applicable, on the date hereof, have been duly obtained and are in full force and effect and (ii) the relevant Sellers are in compliance with the terms of each of such Consents, in each case except for such violations that would not reasonably be expected to be material to the Business taken as a whole.  None of the Sellers has received any written notice or written claims from any Government Entity relating to any material non-compliance of the Business or the Assets with such Consents nor are there, based on the Knowledge of the Sellers any such notice or claims threatened or pending, except where such claims would not reasonably be expected to be material to the Business taken as a whole.

Section 4.9.    Real Property.

(a)    [To come]

Section 4.10.    Environmental Matters.

(a)    ~~To the Knowledge of the Sellers, the~~**The** Business and the Assets are in compliance with Environmental Laws and have obtained and are in compliance with all Environmental Permits, except where failure to comply with Environmental Laws, or to obtain or comply with Environmental Permits, would not reasonably be expected to be material to the Business taken as a whole.

(b)    There are no Actions relating to the Business or the Assets pending or, to the Knowledge of the Sellers, threatened against any of the Sellers pursuant to Environmental Laws, in each case except those Actions that would not reasonably be expected to be material to the Business taken as a whole.

(c)    Notwithstanding anything in this ARTICLE IV to the contrary, none of the representations and warranties in this ARTICLE IV other than this Section 4.10 shall relate to environmental matters.

Section 4.11.    Labor and Employee Benefits Matters.

(a)    Section 4.11(a) of the Sellers Disclosure Schedule contains a true and complete list, by country, of (i) all material Seller Employee Plans [(and separately identifies those Seller Employee Plans that are Transferred Employee Plans)] and (ii) all employment agreements or other commitments for employment or engagement by the Sellers or their Affiliates with respect to Employees that deviate in any material respect from the standard form of offer letter for the applicable jurisdiction or provide for retention, severance or change in control payments or benefits to the Employees, excluding in each case Seller Employee Plans (collectively, the "**Special Arrangements**").  The Sellers have provided the Purchaser with a true and complete copy of the plan document or summary plan description of each

**382**

material Seller Employee Plan or, if such plan document or summary plan description does not exist, an accurate written summary of the material terms of such Seller Employee Plan [and, with respect to any Seller Employee Plan that is a Transferred Employee Plan, the following additional documents, to the extent applicable: (i) the most recent actuarial report; (ii) all trust, custodial, investment management, administrative services or similar agreements; (iii) the most recent annual report required to be filed with any Government Entity (including, if applicable, the most recent Form 5500 Annual Report with audited financial statements and schedules); (iv) for each Transferred Employee Plan which is intended to be tax-advantaged under applicable Law (including Section 401(a) of the Code), the most recent determination or opinion letters received from the Internal Revenue Service; and (v) all material filings made with any governmental authority, including any filings under the Voluntary Compliance Resolution or Closing Agreement Program or the Department of Labor Delinquent Filer Program.  The Sellers have provided the Purchaser with a true and complete copy of the standard form (or where such individual agreement is materially different from the standard form, the individual written agreement) of the employment, retention, change in control or severance agreements between the Sellers (or any Affiliate of Sellers) and any Employee.]⁴⁷⁶²

(b)    The information contained in Section 4.11(b) of the Sellers Disclosure Schedule in respect of the Employees (the "**Employee Information**") is accurate in all material respects as of the date hereof, and sets forth with respect to each Employee (except where that is not permissible under applicable data privacy Laws): (i) unique identifier, (ii) service date, (iii) job title/position, (iv) annual base salary and annual target incentive, (v) work location, (vi) visa type, if any, and expiry date (vii) the applicable Collective Labor Agreement, if any, (viii) leave status, reason for the leave, the start date of the leave and expected return date, (ix) vacation accrual rate, (x) status as full-time or part-time, (xi) home country of residence, (xii) Job Complexity Indicator, (xiii) country of payroll, (xiv) sales indicator, (xv) Exempt/Non-Exempt status (for Employees in the United States only), (xvi) payment currency, (xvii) department/function to the extent applicable, (xviii) work schedule, (xix) whether such Employee has any individual agreement as to length of notice or severance payment required to terminate his or her employment other than as results by Law from the employment of an employee without an individual agreement as to notice or severance or a Seller Employee Plan as a result of which there could be a payment to such employee in excess of $50,000 in addition to such payment required by applicable Law or such Seller Employee Plan.  Such information shall be updated in accordance with the requirements of Section 7.4(c).  **In addition, Section 4.11(b) of the Sellers Disclosure Schedule provides a summary of the material terms of any Special Arrangements.**

(c)    There has not been for a period of ~~twelve (12~~**twenty-four (24)** consecutive months prior to the date hereof, nor is there existent or, to the Knowledge of the Sellers, has been threatened, any strike, **material grievance under a Collective Labor Agreement,** slowdown, lockout, picketing or work stoppage against the Sellers by or on behalf of the Employees **or (ii) any unfair labor practice charge, labor arbitration proceeding or other labor dispute.**

---

⁴⁷⁶² Note to Purchaser: We are confirming whether there will be any Transferred Employee Plans. If there are, we will consider appropriate representations with respect to such plans.

**383**

(d)    Section 4.11(d) of the Sellers Disclosure Schedule lists (i) all the Collective Labor Agreements in effect with respect to the Employees and, for those that have expired, whether notice to bargain has been given and the status of the bargaining process and (ii) any material grievance pending under such Collective Labor Agreements. For a period of ~~twelve (12~~**twenty-four (24)** consecutive months prior to the date hereof, no petition has been filed or proceedings instituted by a union, works council, collective bargaining agent (including any unit clarification proceeding under the National Labor Relations Act or analogous law), employee or group of employees with any Government Entity seeking recognition of a collective bargaining agent with respect to any Employees, no voluntary recognition has been given by the Sellers **or any Affiliates** with respect to Employees, and, to the Sellers' Knowledge, no such organizational effort is currently being made or has been threatened by or on behalf of any union, employee, group of employees or collective bargaining agent to organize any Employees. The Sellers have provided the Purchaser with a true and complete copy of the Collective Labor Agreements listed in Section 4.11(d) of the Sellers Disclosure Schedule. **The execution of this Agreement and the consummation of the transactions contemplated by this Agreement will not result in any material breach or other violation of any Collective Labor Agreement set forth on Section 4.11(d) of the Sellers Disclosure Schedule. The execution of this Agreement and the consummation of the transactions contemplated by this Agreement will not result in any material breach or other violation of any Collective Labor Agreement set forth on Section 4.11(d) of the Sellers Disclosure Schedule.**

(e)    To the Knowledge of the Sellers, all of the Employees employed in the United States are either United States citizens or are legally entitled to work in the United States under the Immigration Reform and Control Act of 1986, as amended, other United States immigration Laws and the Laws related to the employment of non-United States citizens applicable in the state in which the Employees are employed. To the Knowledge of the Sellers, all Employees employed outside the United States are legally entitled to work in the country in which they are employed.

**(f)    None of the Sellers or any ERISA Affiliate has incurred any direct or indirect liability under, arising out of or by operation of Title IV of ERISA and, to the Knowledge of the Sellers, no fact or event exists that is reasonably likely to give rise to any such Liability (whether absolute or contingent) to the Sellers. There are no Seller Employee Plans that are multiemployer plans within the meaning of Section 3(37) or 4001(a)(3) of ERISA, and none of the Sellers or any of their ERISA Affiliates has, within the past six (6) years, ever maintained, contributed to or participated in, or been required to maintain, contribute to or participate in, any such multiemployer plans.**[63]

**(g)**    ~~(f)~~[There are no Transferred Employee Plans, except as set forth in Section 4.11(~~f~~**g**) of the Sellers Disclosure Schedule. With respect to each Transferred Employee Plan: (i) if intended to qualify under Section 401(a), 401(k) or 403(a) of the Code, such plan and the related trust are so qualified and have received a favorable determination

---

[63] **Note to Seller:  Please schedule any necessary exceptions.**

**384**

letter from the IRS that has not been revoked and to the Knowledge of the Sellers, no event or circumstance exists that has or is likely to adversely affect such qualification or exemption; (ii) it has been operated and administered in all material respects in compliance with its terms and applicable Law; (iii) there are no pending or threatened actions, liens, complaints or claims in writing against, by or on behalf of any Transferred Employee Plan or the assets, fiduciaries or administrators thereof (other than routine claims for benefits); (iv) all required employer contributions, premiums and expenses to or in respect of such Transferred Employee Plans have been timely paid in full or, to the extent not yet due, have been adequately accrued; (v) all reports, returns, notices and other documentation that are required to have been filed with or furnished to the Internal Revenue Service, the U.S. Department of Labor, the Pension Benefit Guaranty Corporation (the "**PBGC**"), the SEC or any other Government Entity have been filed or furnished on a timely basis; (vi) within the last three (3) years, it has not been the subject of an application or filing under, or is a participant in, a government-sponsored amnesty, voluntary compliance, self-correction or similar program; (vii) no circumstance exists, nor has any event occurred that has resulted or is likely to result in the imposition of any fine, penalty or excise Tax on any Person in respect of the funding or operation of such plan; and (viii) to the Knowledge of the Sellers, no prohibited transaction (as described in Section 406 of ERISA or Section 4975 of the Code) which can reasonably be expected to result in material liability has occurred or is reasonably likely to occur.][64]

(h) ~~(g)~~ To the Knowledge of the Sellers, no Employee who is an executive or manager of any Seller is a party to any confidentiality, noncompetition, proprietary rights or other such agreement with any Person other than such Seller which has a ~~m~~Material ~~a~~Adverse ~~e~~Effect on such executive or manager's ability to perform his applicable services to the Business. To the Knowledge of the Sellers, no Employee is in violation of any term of any employment contract, confidentiality, noncompetition or other proprietary rights agreement or any other contract relating **(i)** to the right of such Employee to be employed by, or provide services to, such Seller with respect to the Business **or (ii) [except as set forth on Section 4.11(h) of the Sellers Disclosure Schedules][65] to the knowledge or use of trade secrets or proprietary information with respect to any such Employee's employment with the Sellers, in each case except for such violation as would not have, individually or in the aggregate, a Material Adverse Effect**.

(i) ~~(h)~~ None of the Sellers (excluding the EMEA Sellers) has, with respect to the Business, any Liability to provide retiree welfare benefits to any Person for any reason, except as may be required by COBRA, a Seller Employee Plan listed on Section 4.11(a) of the Sellers Disclosure Schedule, or applicable Law.

(j) ~~(i)~~ With respect to the Employees: (i) the Sellers are in compliance in all material respects with all applicable Laws relating to labor and employment, including but not limited to Laws relating to discrimination, disability, labor relations, hours of work, payment of

---

[64] <u>Note to Purchaser</u>: Rep will be removed if we confirm that there are no Transferred Employee Plans. If we determine there are Transferred Employee Plans, Sellers are willing to discuss appropriately limited representations regarding such plans.

[65] **Note to Seller: Any exceptions should be set forth in the applicable schedule**

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434 v4]

**385**

wages and overtime wages, characterization of workers as employees or independent contractors, pay equity, immigration, workers compensation, working conditions, employee scheduling, occupational safety and health, family and medical leave, employment and reemployment of members of the uniformed services, employee terminations and mass layoffs; (ii) the Sellers have not incurred **any Liability or obligation which remains unsatisfied under the WARN Act or any similar state or local Laws regarding the termination or layoff of such Employees (iii) the Sellers have not incurred**, and no circumstances exist under which the Sellers would reasonably be expected to incur, any liability arising from the misclassification of employees as exempt from the requirements of the Fair Labor Standards Act or analogous Laws or the misclassification of employees as independent contractors~~, in each case except as would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect~~ ; and (iii)**; and (iv)** no arbitration, court decision or governmental order to which the Sellers are or would reasonably be expected to become a party or are subject to in any way limits or restricts any of the Sellers from relocating or closing any of the operations of such Seller.

**(k)** ~~(j)~~ [With respect to any Transferred Employee Plan for the benefit of Employees (or dependents thereof) who perform services or who are employed outside of the United States (a "**Non-US Plan**"): (i) if intended to qualify for special tax treatment, each Non-US Plan meets all requirements for such treatment; (ii) if intended to be funded and/or book reserved, each Non-US Plan is fully funded and/or book reserved, as appropriate, based upon reasonable actuarial assumptions; (iii) no material Liability exists or reasonably could be imposed upon the assets of the Sellers or any of their Affiliates by reason of the Non-US Plan; (iv) no Employee who is domiciled outside of the United States (or any of their dependents) is entitled to any pension, superannuation, retirement (including on early retirement) or death benefits (including in the form of a lump sum) (together, "**Pension Benefits**") that become payable before their normal retirement age as stated in their contract of employment or the Non-US Plan itself; (v) apart from any general indemnity in favor of the trustees given by the Sellers or their Affiliates under the governing documents of a Non-US Plan, neither the Sellers nor any of its Affiliates has given any indemnity, undertaking or guarantee in respect of any Non-US Plan; (vi) the assets of each Non-US Plan that provided Pension Benefits are sufficient to satisfy its respective Liabilities (current and contingent) as at the date of this Agreement; and (vii) neither the Sellers nor any of their Affiliates have any legal or ex-gratia arrangement or practice to pay pensions, gratuities, superannuation, allowances or any other benefit or sum to any person who is not an employee of the Sellers or any of their Affiliates or dependent of an employee of the Sellers or their Affiliates.][4966]

**(l)** **No circumstance exists which has resulted in or likely to result in a liability to the Purchaser or any Designated Purchaser, whether by reason of reimbursement obligation or otherwise, in respect of a failure to comply with Code Section 409A.**

---

[4966] Note to Seller:  Subject to further revision following review by local counsel.

386

(m) (k) Except as required under the terms of this Agreement, a Seller Employee Plan, a Special Arrangement or under applicable Law, neither the execution or delivery of this Agreement, shareholder approval of this Agreement nor the consummation of the transactions contemplated by this Agreement will**could reasonably**, either alone or in conjunction with any other event (whether contingent or otherwise, including, without limitation, any termination of employment), (i) result in **any severance or increase in severance pay upon any termination of employment after the date of this Agreement, (ii) result in**, cause the accelerated vesting or delivery of, or materially increase the amount or value of, any payment or benefit to any Employee, [(ii**iii**) result in any new obligation or material increase any benefit or obligation pursuant to any of the Transferred Employee Plans, or (iii**iv**) require or accelerate funding of any Transferred Employee Plan.] [50] [67] **(v) results in any limitation or restriction on the right of the Purchaser or its Affiliates to merge, amend or terminate any Purchaser Employee Plan, or (vi) result in any "excess parachute payment" (as defined in Section 280G of the Code) that would be (A) be paid to any Transferred Employee or (B) result in a non-deductible payment by the Purchaser or any of its Affiliates.**

Section 4.12.  Taxes.

(a)  **The Sellers have timely filed with the appropriate Tax Authorities all material Tax Returns required to be filed with respect to the Assets and the Business and all such Tax Returns are true, correct and complete in all material respects.  All material Taxes due and payable with respect to the Assets and the Business have been timely paid.**

(b)  **No deficiency for material Taxes has been claimed, proposed or assessed by any Tax Authority against any Seller and there is no pending audit, examination or other proceeding or Action in respect of material Taxes, in each case relating to any Asset or the Business.  The Sellers have delivered to the Purchaser correct and complete copies of all material income Tax Returns (in the case of a consolidated, combined or unitary Tax Return, pro forma with respect to the Sellers), examination reports and statements of deficiency filed or received by any Seller since December 31, 2006, in each case, with respect to the Assets or the Business.**

(c)  **No Seller has entered into an agreement or waiver or been requested to enter into an agreement or waiver extending any statute of limitations relating to the payment or collection of material Taxes relating to any Asset or the Business.**

(d)  (a) There is no Lien for Taxes on any Asset other than Permitted Encumbrances.

---

[50] Note to Purchaser: Will be removed if we confirm there are no Transferred Employee Plans and will be appropriately modified if there are any Transferred Employee Plans.
[67] **Note to Purchaser: Will be removed if we confirm there are no Transferred Employee Plans and will be appropriately modified if there are any Transferred Employee Plans.**

76

**Error! Unknown document property name.**

387

(e)    (b) [None of the Assets located within the United States **or which is owned by a U.S. Debtor** (i) is property required to be treated as being owned by another person pursuant to the provisions of Section 168(f)(8) of the Internal Revenue Code of 1954, as amended and in effect immediately prior to the enactment of the Tax Reform Act of 1986, (ii) constitutes "tax-exempt use property" within the meaning of Section 168(h)(1) of the Code or (iii) is "tax-exempt bond financed property" within the meaning of Section 168(g) of the Code.

(f)    (e) No Seller other than Sellers which are "United States persons" under section 7701 of the Code or applicable Treasury Regulations will transfer any United States real property interest (within the meaning of Section 897(c)(1) of the Code) to Purchaser or any Designated Purchaser pursuant to this Agreement.]

**(g)    The Sellers are duly registered for the purposes of the GST under the following numbers:[68]**

**(h)    No Seller other than a Seller that is not a non-resident of Canada (as defined in the Income Tax Act (Canada)) will transfer property that is a taxable Canadian property (as defined in the Income Tax Act (Canada))**

**(i)    Notwithstanding the foregoing, the representations and warranties set forth in Sections 4.12(a) through 4.12(d) shall not be applicable to the extent that no Asset can be made subject to a Tax Lien and neither the Purchaser nor any Designated Purchaser can be held liable for Taxes relating to any matter constituting a breach of any such representation or warranty.**

Section 4.13.    Brokers.    Except for fees and commissions that will be paid or otherwise settled or provided for by the Sellers, no broker, finder or investment banker is entitled to any brokerage, finder's or other similar fee or commission in connection with the transactions contemplated by this Agreement and the other Transaction Documents based upon arrangements made by or on behalf of the Sellers or any of their Affiliates.

Section 4.14.    Cultural Business.    The Assets are not used to provide any of the services, and are not engaged in any of the activities of a "cultural business" within the meaning of the Investment Canada Act.

Section 4.15.    Representations and Warranties by the Other Sellers.    Except as set forth in the Sellers Disclosure Schedule, each Other Seller severally but not jointly will, as of the date such Other Seller will execute this Agreement pursuant to Section 10.16, represent and warrant to the Purchaser as follows:

4.15.1.    Organization and Corporate Power.

(a)    Such Other Seller is duly organized and validly existing under the Laws of the jurisdiction in which it is organized.  Subject to the receipt of the Bankruptcy Consents, at

---

[68] **Note to Seller:  Please provide relevant reference numbers.**

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434 v4]

**388**

the time it executes this Agreement, such Other Seller will have the requisite corporate power and authority to enter into, deliver and perform its obligations pursuant to each of the Transaction Documents to which it is a party or, at the Closing Date, will become a party.

(b)    Such Other Seller is duly qualified or licensed to do business and to own, lease and operate its assets, including the Assets, and to carry on the Business as it is currently conducted, as applicable in each jurisdiction in which its ownership of property or conduct of business relating to the Business requires it to so qualify or to be so licensed, except to the extent that the failure to be so qualified or licensed would not have, or would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

4.15.2. Authorization; Binding Effect; No Breach.

(a)    Subject to the receipt of the Bankruptcy Consents, the execution, delivery and performance by such Other Seller of each Transaction Document to which such Other Seller will be a party will have been duly authorized by such Other Seller.  Subject to the receipt of the Bankruptcy Consents, and assuming due authorization, execution and delivery by the Purchaser, each Transaction Document to which such Other Seller will be a party constitutes a legal, valid and binding obligation of such Other Seller, enforceable against it in accordance with its terms, subject to (in the case of Non-Debtor Sellers) applicable bankruptcy, insolvency, reorganization, moratorium or other Laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at Law.

(b)    Subject to the receipt of the Bankruptcy Consents, the execution, delivery and performance by such Other Seller of the Transaction Documents to which such Other Seller will be a party will not conflict with or result in a breach of the terms, conditions or provisions of, constitute a default (or an event that, with notice or lapse of time or both, would become a default) under, result in a violation of, give to any Person any right of termination, amendment, modification, acceleration or cancellation or any preemptive right or right to the payment of any penalty under, result in the creation or imposition of any Lien upon any of the Assets owned by such Other Seller, or (subject to the receipt of Consents in connection with the Assigned Contracts and other Consents expressly provided for herein) require any Consent (other than the Regulatory Approvals and the Bankruptcy Consents) or other action by or declaration or notice to any Government Entity pursuant to (i) the articles, charter or by-laws of such Other Seller, (ii) any Material Contract to which such Other Seller is a party or to which any of the Assets or the Business is subject or (iii) any Laws to which such Other Seller, or any of the Assets owned by such Other Seller, is subject, except, in the case of (ii) and (iii), for such defaults, violations, actions and notifications that would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

Error! Unknown document property name.

**389**

## ARTICLE V

## COVENANTS AND OTHER AGREEMENTS

Section 5.1.    U.S. Bankruptcy Actions.  On the timetables and subject to the terms set forth below, the Sellers who are U.S. Debtors shall (i) file with the U.S. Bankruptcy Court one or more motions and proposed orders as set forth below, (ii) notify, as required by the U.S. Bankruptcy Code, the U.S. Bankruptcy Rules, and an order of the U.S. Bankruptcy Court, all parties entitled to notice of such motions and orders, as modified by orders in respect of notice which may be issued at any time and from time to time by the U.S. Bankruptcy Court, and such additional parties as the Purchaser may reasonably request, and (iii) subject to the provisions of this Agreement, including the provisions of Section 9.1, and the U.S. Bidding Procedures Order, if entered, use their **commercially** reasonable best efforts to obtain U.S. Bankruptcy Court approval of such orders.

(a)    As promptly as practicable, the U.S. Debtors shall file with the U.S. Bankruptcy Court a motion (the "**U.S. Bidding Procedures and Sale Motion**") and two proposed orders substantially in the forms set forth in Exhibit 5.1(a) and Exhibit 5.1(b), without material modification thereto unless the parties consent in writing to such modification (which consent shall not be unreasonably withheld, conditioned or delayed) (as approved, the "**U.S. Bidding Procedures Order**" and the "**U.S. Sale Order**"[169]) seeking approval by the U.S. Bankruptcy Court of, respectively, (i) as for the U.S. Bidding Procedures Order, the Bidding Procedures and the provision of a Break-Up Fee and Expense Reimbursement, and (ii) as for the U.S. Sale Order, the sale of the Assets to the Purchaser or a Designated Purchaser and the assumption by the U.S. Debtors and assignment to the Purchaser or a Designated Purchaser of the Assumed and Assigned Contracts and the Assumed Liabilities pursuant to Sections 105, 363 and 365 of the U.S. Bankruptcy Code, as specified below.

(b)    The U.S. Debtors shall provide notice of the U.S. Bidding Procedures and Sale Motion to: (i) all Tax Authorities or recording offices which have a reasonably known interest in the relief requested, (ii) the United States Trustee for the District of Delaware in the Chapter 11 Cases, (iii) the Monitor, (iv) counsel to the Official Committee of Unsecured Creditors in the Chapter 11 Cases, (v) counsel to the Ad-Hoc Committee of Bondholders in such Chapter 11 Cases, (vi) all federal, state, and local regulatory authorities with jurisdiction over the U.S. Debtors, (vii) each of the entities that had received an invitation from the Sellers to acquire or had previously expressed an interest in acquiring the Assets; and (viii) the general service list established in the Chapter 11 Cases pursuant to U.S. Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

(c)    The Sellers who are U.S. Debtors shall use their **commercially** reasonable best efforts to cause the U.S. Bankruptcy Court to (i) schedule a hearing to consider the U.S.

---

[169] Note to Purchaser:  Purchaser's bankruptcy counsel to circulate a draft of the proposed sale order.

NY\1582469.7

Error! Unknown document

[New York #2071434 v4]    property name.

Bidding Procedures and Sale Motion and (ii) enter the U.S. Bidding Procedures Order within [_____ (___) days][520] of the filing of the U.S. Bidding Procedures and Sale Motion.

(d)    The U.S. Bidding Procedures Order shall be substantially in the form of Exhibit 5.1(a) hereto (with such changes thereto as the Purchaser and the Seller both shall approve in writing (such approval not to be unreasonably withheld, conditioned or delayed)), and shall, among other matters, contain the following provisions:[521]

(i)    [an authorization and approval of the Break-Up Fee and Expense Reimbursement and provision, that if the U.S. Debtors become obligated to pay the Purchaser the U.S. Debtors' portion of the Break-Up Fee or the Expense Reimbursement, such obligation shall constitute an administrative expense under Sections 503(b) and 507(a)(2) of the U.S. Bankruptcy Code and shall be payable in accordance with the provisions of this Agreement without further order of the U.S. Bankruptcy Court;

(ii)    a provision establishing notice and service requirements with respect to creditors, potential creditors and parties in interest, which shall include the requirement that notice of such hearing be given to the Notice Parties;

(iii)    an authorization and approval of the Bidding Procedures; and

(iv)    a provision scheduling a hearing to consider entry of the U.S. Sale Order providing that notice of such hearing be given to the Notice Parties, and providing that the Sellers will publish notice of such hearing in The Wall Street Journal (National Edition), The Globe & Mail (National Edition) and The Financial Times (International Edition).][522]

(e)    The U.S. Sale Order shall be substantially in the form of Exhibit 5.1(b) hereto (with such changes thereto as the Purchaser and the Sellers both shall approve in writing, such approval not to be unreasonably withheld, conditioned or delayed) and shall, among other matters, contain the following provisions (it being understood that certain of such provisions must constitute findings of fact or conclusions of Law to be made by the U.S. Bankruptcy Court as part of the U.S. Sale Order):[523]

(i)    [a finding and conclusion that, as of the Closing Date, the sale of all of the U.S. Debtors' right, title and interest (including common law rights) to the Assets, the assignment of the Assumed and Assigned Contracts by the U.S. Debtors to the Purchaser or any Designated Purchasers in accordance with this Agreement (a) are or will be legal, valid and effective transfers of such Assets and assignment of such

---

[520] Note to Purchaser: Timing to be discussed.

[521] Note to Seller: Under review.
[522] Note to Purchaser: Terms to be removed from the body of the Agreement by the Parties once Order is finalized and attached.

[523] Note to Seller: Under review.  Please note that the transfer of Assets free and clear of any liens and claims shall be subject to the "to the extent permitted by Section 363(f) of the Bankruptcy Code" qualifier.

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434 .v4]

391

Assumed and Assigned Contracts, (b) vest or will vest the Purchaser or the relevant Designated Purchasers with all right, title and interest of the U.S. Debtors in and to the Assets pursuant to Section 363(f) of the U.S. Bankruptcy Code free and clear of any and all Liens (other than Permitted Encumbrances and Liens created by the Purchaser or a Designated Purchaser), the Excluded Liabilities (to the extent permitted by applicable Law) and Claims, including Claims held by creditors of U.S. Debtors, other than Claims that are specifically Assumed Liabilities and any Permitted Encumbrances identified in clauses (i) – (v) of the definition thereof;

(ii)    except as provided herein, a provision that the U.S. Bankruptcy Court retains exclusive jurisdiction to interpret, construe and enforce the provisions of, and to resolve any and all disputes that may arise under or in connection with the assumption and/or assignment of any U.S. Debtor Contract or under this Agreement and the Ancillary Agreements, and the U.S. Sale Order, in all respects, and further to hear and determine any and all disputes among the Sellers, the Sellers' Affiliates, the Purchaser or its Affiliates, as the case may be, and any non-Sellers party thereto that may arise under or in connection with (a) the assumption and/or assignment of any Assumed and Assigned Contract or (b) Excluded Liabilities of the U.S. Debtors;

(iii)    a conclusion that the transactions contemplated by this Agreement, the Ancillary Agreements and the U.S. Sale Order are undertaken by the U.S. Debtors, the Purchaser and the Designated Purchasers, as applicable, at arm's length, without collusion and in good faith within the meaning of Section 363(m) of the U.S. Bankruptcy Code, and that such parties are entitled to the protections of Section 363(m) of the U.S. Bankruptcy Code;

(iv)    a determination that approval of this Agreement and the U.S. Sale Order, and consummation of the transactions contemplated by this Agreement, are in the best interests of the U.S. Debtors, their creditors and estates;

(v)    a determination that the terms and conditions of this Agreement including the transfer of all of the U.S. Debtors' right, title and interest (including common law rights) to the Assets free and clear of any and all Liens (other than Permitted Encumbrances, Assumed Liabilities and Liens created by the Purchaser or a Designated Purchaser) and Claims, are fair and reasonable;

(vi)    a conclusion that the U.S. Debtors may assign and transfer to the Purchaser or the relevant Designated Purchasers all of the U.S. Debtors' right, title and interest (including common law rights) to all of their intangible property included in the Assets they each own, the Assigned Contracts to which they are a party, subject to their obtaining actual or deemed Consents to the extent required by applicable Law;

(vii)    a provision that any stay of orders authorizing the assignment of an Executory Contract as provided for in Bankruptcy Rules 6004(h) or 6006(d) shall not apply to the U.S. Sale Order and that the U.S. Sale Order is immediately effective and enforceable;

NY\1582469.7

[New York #2071434 v4]

Error! Unknown document property name.

**392**

(viii)    an authorization and approval of the U.S. Debtors' assumption and assignment to the Purchaser or the relevant Designated Purchaser of the Assumed and Assigned Contracts pursuant to Sections 363 and 365 of the U.S. Bankruptcy Code;

(ix)    an order that the Assumed and Assigned Contracts to be assumed by the Sellers and assigned to the Purchaser or the relevant Designated Purchaser pursuant to this Agreement will be transferred to, and remain in full force and effect for the benefit of the Purchaser or the relevant Designated Purchaser, notwithstanding any provision in any such Seller Contract or any requirement of Law (including those described in Sections 365(b)(2) and (f) of the U.S. Bankruptcy Code) that prohibits, restricts or limits in any way such assignment or transfer;

(x)    an approval of the execution of and performance under any other agreement executed in connection with the transfer of the Assets to the Purchaser or the relevant Designated Purchaser to the extent provided by this Agreement;

(xi)    a finding that the Sellers gave due and proper notice of the transactions contemplated hereby to each party entitled thereto;

(xii)    a finding that the Purchaser and the relevant Designated Purchasers have satisfied all requirements under Sections 365(b)(1) and 365(f)(2) of the U.S. Bankruptcy Code to provide adequate assurance of future performance of the Assumed Contracts;

(xiii)    a provision enjoining and forever barring the non-debtor party or parties to each Assumed and Assigned Contract from asserting against the Purchaser, any Designated Purchasers or any of the Assets: (A) any default existing as of the Closing Date and (B) any objection to the assumption and assignment of such Assigned Contract;

(xiv)    a finding that, to the extent permitted by Law, neither the Purchaser nor any Designated Purchaser is a successor to the Seller or its bankruptcy estate by reason of any theory of law or equity, and neither the Purchaser nor any Designated Purchaser shall assume or in any way be responsible for any Liability of any of the Sellers and/or their bankruptcy estates, except as otherwise expressly provided in this Agreement;

(xv)    a determination or a provision for the determination of the Cure Costs under the Assumed and Assigned Contracts and an order that the applicable Party pay such Cure Costs as set forth in this Agreement; and

(xvi)    a provision that (a) the Intellectual Property License Agreement shall be binding on the U.S. Debtors, any chapter 11 trustee or chapter 7 trustee appointed in the bankruptcy cases of the U.S. Debtors, and any of their respective successors and assigns, and (b) all Intellectual Property licensed to Purchaser or Designated Purchaser under the Intellectual Property License Agreement shall not be sold, transferred,

NY\1582469.7

Error! Unknown document property name.

[New York #2071434 v4]