**393**

conveyed or assigned absent the assumption by the buyer or assignee of all obligations of the U.S. Debtors under the Intellectual Property Agreement.][567]

    (f)    The U.S. Debtors shall request that the U.S. Bankruptcy Court schedule, subject to the availability of the U.S. Bankruptcy Court, a Sale Hearing on the third (3rd) Business Day following the conclusion of the Auction and shall use their **commercially** reasonable best efforts to cause the Sale Hearing to be heard on that date or the earliest date thereafter permitted by the Bankruptcy Court's schedule.

    Section 5.2.   Canadian Bankruptcy Actions.

    5.2.1.  Canadian Sales Process Order. As promptly as practicable, but in no event later than the date on which the U.S. Bidding Procedures Order is granted, the Canadian Debtors shall file with the Canadian Court a motion (the "**Canadian Sales Process Order Motion**") and a proposed order (as approved, the "**Canadian Sales Process Order**") seeking approval of the execution, delivery and performance of this Agreement, including payment of the Break-Up Fee, the Expense Reimbursement and a process for the sale of the Business, each substantially in the form set forth in Exhibit 5.2.1 (subject to any changes consented to in writing by the Parties).[575]

    5.2.2.  Canadian Approval and Vesting Order. As promptly as practicable, but in no event later than the date on which the U.S. Sale Order is granted, and subject to their rights and obligations set forth in the Canadian Sales Process Order, the Canadian Debtors shall file with the Canadian Court one or more motions (the "**Canadian Approval and Vesting Order Motion**") seeking an order substantially in the form set forth in Exhibit 5.2.2 (subject to any changes consented to in writing by the Parties) (such order as approved, the "**Canadian Approval and Vesting Order**") of the Canadian Court approving this Agreement and the transactions contemplated herein. The Canadian Approval and Vesting Order shall include the following:[576]

    (a)    the transactions contemplated by this Agreement are approved, and a statement to the effect that this Agreement is in the best interests of the Canadian Debtors and its stakeholders (it being recognized that such a determination is a finding of fact or conclusion of Law to be made by the Canadian Court as part of the endorsement of reasons issued in connection with the Canadian Approval and Vesting Order);

    (b)    the execution of this Agreement by the Canadian Debtors is authorized and approved, and the Canadian Debtors are authorized and directed to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the transactions contemplated in this Agreement and for the conveyance of the Canadian Debtors' right, title and interest in the Assets to the Purchaser or a Designated Purchaser, as applicable;

---

[567] Note to Purchaser: Terms to be removed from the body of the Agreement by the Parties once Order is finalized and attached.

[575] Note to Seller: Under review.

[576] Note to Seller: Under review.

NY\1582469.7

[New York #2071434 v4]          **Error! Unknown document property name.**

**394**

(c)    all of the Canadian Debtors' right, title and interest in and to the Assets shall vest absolutely in the Purchaser, free and clear of and from any and all Liens (except Permitted Encumbrances) and to the extent permitted by applicable Law, Excluded Liabilities; and

(d)    the sale of the Assets is exempt from the application of the Bulk Sales Act (Ontario), **and of any other similar provincial legislation and the Sellers and the Purchaser and any Designated Purchaser are discharged from any obligation under Section 6 of the Retail Sales Tax Act (Ontario) and from any other similar obligations under similar provincial legislation.**

5.2.3.    Additional Requests.  In connection with the foregoing, the Canadian Debtors shall seek in good faith in the Canadian Approval and Vesting Order Motion to (i) have the Canadian Approval and Vesting Order include a finding that, to the extent permitted by Law, neither the Purchaser nor any relevant Designated Purchaser is a successor to the Sellers or their bankruptcy estate by reason of any theory of law or equity, and neither the Purchaser nor any Designated Purchaser shall assume or in any way be responsible for any Liability of any of the Sellers and/or their bankruptcy estates, except as otherwise expressly provided in this Agreement or the Transaction Documents; and (ii) have the endorsement of the Canadian Approval and Vesting Order or the order itself, include a finding that the consideration provided by the Purchaser and any Designated Purchaser pursuant to this Agreement constitutes reasonably equivalent value and fair consideration for the Assets. For greater certainty, nothing herein shall require the items in the preceding sentence to be included in the Canadian Approval and Vesting Order or any endorsement thereof, notwithstanding that such provisions may be included in the form of the order set forth in Exhibit 5.2.2.

Section 5.3.    Consultation; Notification.

(a)    The Purchaser and the U.S. Debtors shall cooperate with filing and prosecuting the U.S. Bidding Procedures and Sale Motion, and obtaining entry of the U.S. Bidding Procedures Order and the U.S. Sale Order, and the U.S. Debtors shall deliver to the Purchaser prior to filing, and as early in advance as is practicable to permit adequate and reasonable time for the Purchaser and its counsel to review and comment, copies of all proposed pleadings, motions, responses to objections, notices, statements, schedules, applications, reports and other material papers to be filed by the U.S. Debtors in connection with such motions and relief requested therein and any challenges thereto.

(b)    The Purchaser and the Canadian Debtors shall cooperate with filing and prosecuting the Canadian Sales Process Order Motion and the Canadian Approval and Vesting Order Motion, and obtaining issuance and entry of the Canadian Sales Process Order and the Canadian Approval and Vesting Order, and the Canadian Debtors shall deliver to the Purchaser prior to filing, and as early in advance as is practicable to permit adequate and reasonable time for the Purchaser and its counsel to review and comment, copies of all proposed pleadings, motions, responses to objections, notices, statements schedules, applications, reports and other material papers to be filed by the Canadian Debtors in connection with such motions and relief requested therein and any challenges thereto.

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434 v4]

**395**

(c)    If the U.S. Sale Order or any other order of the U.S. Bankruptcy Court relating to this Agreement shall be appealed by any Person (or a petition for certiorari or motion for rehearing, re-argument or stay shall be filed with respect thereto), the U.S. Debtors agree to, and to cause their Affiliates to, use their **commercially** reasonable ~~best~~ efforts, to defend against such appeal, petition or motion, and the Purchaser agrees to cooperate in such efforts.  Each of the Parties hereby agrees to use its **commercially** reasonable ~~best~~ efforts to obtain an expedited resolution of such appeal; provided, however, that, subject to the conditions set forth herein, nothing contained in this Section 5.3(c) shall preclude the Parties from consummating, or permit the Parties not to consummate, the transactions contemplated hereby if the U.S. Sale Order shall have been entered and shall not have been stayed, modified, revised or amended, in which event the Purchaser and the relevant Designated Purchasers shall be able to assert the benefits of Section 363(m) of the U.S. Bankruptcy Code and, as a consequence of which, such appeal shall become moot.

(d)    If the Canadian Approval and Vesting Order or any other order of the Canadian Court relating to this Agreement shall be appealed by any Person (or a petition for certiorari or motion for rehearing, re-argument or stay shall be filed with respect thereto), the Canadian Debtors agree to, and to cause their Affiliates to, take all reasonable steps, and use their **commercially** reasonable ~~best~~ efforts, to defend against such appeal, petition or motion, and the Purchaser agrees to cooperate in such efforts.  Each of the Parties hereby agrees to use its **commercially** reasonable ~~best~~ efforts to obtain an expedited resolution of such appeal; provided, however, that, subject to the conditions set forth herein, nothing in this Section 5.3(d) shall preclude the Parties from consummating, or permit the Parties not to consummate, the transactions contemplated hereby if the Canadian Approval and Vesting Order shall have been entered and shall not have been stayed, modified, revised or amended.

Section 5.4.    Pre-Closing Cooperation.

(a)    Prior to, and in connection with, the Closing, upon the terms and subject to the conditions of this Agreement, each of the Parties shall use its **commercially** reasonable ~~best~~ efforts to take, or cause to be taken, all actions and to do, or cause to be done, and cooperate with each other in order to do, all things necessary, proper or advisable under applicable Law to consummate the transactions contemplated by this Agreement as soon as practicable and cause the fulfillment at the earliest practicable date of all of the conditions to the other Parties' obligations to consummate the transactions contemplated by this Agreement, including: (i) the preparation and filing of all forms, registrations, notices, applications and submissions required **or advisable** to be filed to consummate the Closing and the taking of such actions as are necessary to obtain any requisite Consent (other than Consents in respect of Assigned Contracts, which are covered by Section 2.1.7(d)); {provided that the Sellers shall not be obligated to make any payment or deliver anything of value to any Third Party (other than filing and application fees to Government Entities, all of which shall be paid or reimbursed by the Purchaser) in order to obtain any Consent;}[59] (ii) defending all Actions by or before any Government Entity challenging this Agreement or the consummation of the Closing, (iii)

---

[59] ~~Note to Seller:  To be discussed.~~

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434 v4]

**396**

~~causing~~**using commercially reasonable efforts to cause** to be lifted or rescinded any injunction, decree, ruling, order or other action of any Government Entity that would prohibit, prevent, restrict or materially delay the consummation of the transactions contemplated by this Agreement, and (iv) cooperating in any reorganization of the Sellers that the Sellers consider necessary for the Sellers to facilitate the transactions contemplated hereby, any such reorganization to occur on or prior to the Closing Date. **With respect to all Contracts related to the Business (other than Bundled Contracts and Customer Contracts, which are addressed separately), the Sellers shall (i) at the Purchaser's request, send a letter substantially in the form set forth in Exhibit [•] to each of the counterparties to such Contracts and (ii) provide to the Purchaser such contact information as is reasonably requested by the Purchaser with respect to the counterparties to such Contracts.[77]**

(b)    Each Primary Party shall promptly notify the other Primary Party of the occurrence, to such Party's Knowledge, of any event or condition, or the existence, to such Party's Knowledge, of any fact, that would reasonably be expected to result in any of the conditions set forth in ARTICLE VIII not being satisfied.

(c)    [Each Seller agrees, both prior to and following the Closing, to take such steps and execute such documents as reasonably requested by Purchaser and as contemplated or otherwise permitted under the Cross-License Agreements listed on Exhibit [●], such that the Business shall continue to be licensed thereunder or shall otherwise retain the applicable rights and benefits thereof following the Closing.][~~60~~78]

Section 5.5.    Antitrust and Other Regulatory Approvals.

(a)    In furtherance and not in limitation of the provisions of Section 5.4, each of the Parties agrees (i) to prepare and file as promptly as practicable, and in any event by no later than ten (10) Business Days from the date of this Agreement an appropriate filing of a Notification and Report Form pursuant to the HSR Act and a request for an advance ruling certificate pursuant to Section 102 of the Competition Act, and if deemed advisable by the Purchaser, acting reasonably, a pre-merger notification filing under the Competition Act; [(ii) prepare and file as promptly as practicable, and in any event by no later than fifteen (15) Business Days from the date of this Agreement an initial draft Form CO filing pursuant to the EC Merger Regulation and the final Form CO within a reasonable time thereafter as soon as acceptable to the European Commission;] and [(iii) prepare and file as promptly as practicable, and in any event by no later than fifteen (15) Business Days from the date of this Agreement all other necessary documents, registrations, statements, petitions, filings and applications for other Regulatory Approvals, and any other Consent of any other Government Entities either

---

[77] **Note to Seller:  Parties to discuss the timetable on which this assistance shall be afforded to Purchaser.**
[~~60~~78] Note to Purchaser:  To be discussed after Purchaser has provided the list of Cross-License Agreements relating to this request.~~ – subject to diligence.  Note to Seller:  Discuss process for Seller to obtain consents to assignment prior to signing if possible.~~

86

NY\1582469.7

86                    **Error! Unknown document**
[New York #2071434-v4]                    **property name.**

**397**

required or that the Primary Parties mutually agree are advisable to satisfy the condition set forth in Section 8.1(a).][61.79]

(b)    If a Party or any of its Affiliates receives a request for information or documentary material from any Government Entity with respect to this Agreement or any of the transactions contemplated hereby and/or by the EMEA Asset Sale Agreement, then such Party shall endeavor in good faith to make, or cause to be made, as soon as reasonably practicable and after consultation with the other Party, an appropriate response in compliance with such request.

(c)    The Parties shall keep each other apprised of the status of matters relating to the completion of the transactions contemplated by this Agreement and/or by the EMEA Asset Sale Agreement and work cooperatively in connection with obtaining the Regulatory Approvals of each applicable Government Entity, including:

(i)    cooperating with each other in connection with filings required to be made by any Party under the applicable Antitrust Laws or any Laws regulating foreign investment of any jurisdiction in connection with the transactions contemplated by this Agreement and/or by the EMEA Asset Sale Agreement, and each Antitrust Approval, and liaising with each other in relation to each step of the procedure before the relevant Government Entities and as to the contents of all communications with such Government Entities. ~~In particular, and except for any filings made pursuant to the Investment Canada Act, to the extent permitted by Law or Government Entity, no Party will make any notification or other filing with or to any Governmental Entity in relation to the transactions contemplated hereunder without first providing the other Parties or their respective outside counsels on an outside counsel only basis with a copy of such notification in draft form (except with respect to any documents relating to Item 4(c) of the notification form required by the HSR Act) and giving such other party or its outside counsel a reasonable opportunity to discuss its content before it is filed with the relevant Government Entities, and such first Party shall consider and take account of all reasonable comments timely made by the other Party or its outside counsel in this respect. For the avoidance of doubt, draft filings, materials or information provided under this section or under any other provision of this Agreement to the other Party's counsel on an outside counsel only basis shall only be given to outside counsel of the recipient and will not be disclosed by such outside counsel to employees, officers or directors of the recipient without the advance written consent of the Party providing such draft filing or materials~~;

(ii)    furnishing to the other Primary Parties or its outside counsel all information within its possession that is required for any application or other filing to be made by the other Party pursuant to the applicable Antitrust Laws or any Laws regulating foreign investment of any jurisdiction, including the Investment Canada Act, in

---

[61.79] Note to Seller:  Filing timelines will be dependent upon the jurisdiction in which filings are required.  Parties to discuss.

**87**

**398**

connection with the transactions contemplated by this Agreement and/or by the EMEA Asset Sale Agreement; provided, however, that (a) no such information shall be required to be provided by a Party if it determines, acting reasonably, that such information is material and competitively sensitive or that the provision of such information could reasonably be expected to have a material adverse effect upon it if the transactions contemplated by this Agreement and/or by the EMEA Asset Sale Agreement were not completed or if it determines, acting reasonably, after good faith discussions with the other Party's counsel, that the provision of such information would jeopardize any attorney-client or other legal privilege (it being understood, however, that the Parties shall cooperate in any reasonable efforts and requests that would enable otherwise required disclosure to the other Parties to occur without so jeopardizing privilege), and (b) in any such case the Purchaser and the Main Sellers shall cooperate with a view to establishing a mutually satisfactory procedure for providing such information directly to the Government Entity requiring or requesting such information, and the relevant Main Seller or the Purchaser or the relevant Designated Purchaser required to provide such information shall provide it directly to such Government Entity requiring or requesting such information;

(iii)    promptly notifying each other of any communications from or with any Government Entity with respect to the transactions contemplated by this Agreement and/or by the EMEA Asset Sale Agreement and ensuring to the extent permitted by Law or Government Entity that each of the Primary Parties is entitled to attend any meetings with or other appearances before any Government Entity with respect to the transactions contemplated by this Agreement and/or by the EMEA Asset Sale Agreement;

(iv)    consulting and cooperating with one another in connection with all analyses, appearances, presentations, memoranda, briefs, arguments, opinions and proposals made or submitted by or on behalf of any Party hereto in connection with proceedings under or relating to the Antitrust Laws or any Laws regulating foreign investment of any jurisdiction including the Investment Canada Act in connection with the transactions contemplated by this Agreement and/or by the EMEA Asset Sale Agreement; and

(v)    without prejudice to any rights of the Parties hereunder, consulting and cooperating in all respects with the other in defending all lawsuits and other proceedings by or before any Government Entity challenging this Agreement or the consummation of the transactions contemplated by this Agreement and/or by the EMEA Asset Sale Agreement.

(d)    [In addition, subject to any limitations set forth in Section 5.5(e**d**), the Purchaser shall, and shall cause each of the Designated Purchasers to, use its best**commercially reasonable** efforts to satisfy (or cause the satisfaction of) the conditions precedent to the Purchaser's obligations hereunder as set forth in Section 8.1 and to take, or cause to be taken, all other action and to do, or cause to be done, all other things necessary, proper or advisable under all applicable Laws to consummate the transactions contemplated by

NY\1582469.7

[New York #2071434 v4]

**399**

this Agreement and/or by the EMEA Asset Sale Agreement, including using its ~~best~~**commercially reasonable** efforts to submit all required regulatory filings and obtain all Regulatory Approvals, and any other Consent of a Government Entity required to be obtained in order for the Parties to consummate the transactions contemplated by this Agreement and/or by the EMEA Asset Sale Agreement.

(e)    The obligations of the Purchaser pursuant to Section 5.5(d) shall include committing, and causing the Designated Purchasers to commit, to any and all undertakings, divestitures, licenses or hold separate or similar arrangements with respect to their respective assets or the Assets and/or the EMEA Assets or conduct of business arrangements or terminating any and all existing relationships and contractual rights and obligations as a condition to obtaining any and all Consents from any Government Entity necessary to consummate the transactions contemplated hereby and/or by the EMEA Asset Sale Agreement, including taking any and all actions necessary in order to ensure the receipt of the necessary Consents and Regulatory Approvals.]⁶²⁸⁰

(f)    For the avoidance of doubt, the covenants under this Section 5.5 shall not apply to any action, effort, filing, Consent, proceedings, or other activity or matter relating to the Bankruptcy Courts, the Bankruptcy Proceedings and/or the Bankruptcy Consents.

Section 5.6.    Pre-Closing Access to Information.

(a)    Without prejudice to the clauses of this Agreement governing the Sellers' ~~reasonable best efforts~~ obligations to make available ~~to the Purchaser or appropriate Clean Team Members~~ documentation and information relating to certain Seller Contracts or Bundled Contracts, prior to the Closing but after entry of the U.S. Sale Order, the Main Sellers shall, and shall cause their respective Subsidiaries (other than the EMEA Debtors or EMEA Sellers) to, (i) give the Purchaser and its authorized representatives, upon reasonable advance notice and during regular business hours, reasonable access to all books, records, personnel, officers and other facilities and properties of the Business, **including access to personnel, managers, officers and other employees in order to conduct interviews for the purposes of identifying Identified Employees and otherwise complying with the Purchaser's obligations pursuant to ARTICLE VII,** (ii) permit the Purchaser and its representatives to make such copies and inspections thereof, upon reasonable advance notice and during regular business hours, as the Purchaser may reasonably request, (iii) cause the officers of the Sellers to furnish the Purchaser with such financial and operating data and other information with respect to the Business as is regularly prepared in the Ordinary Course that the Purchaser may from time to time reasonably request**; (iv) without limiting the generality of subsections (i), (ii) and (iii), deliver to the Purchaser no later than [ten (10)] Business Days following the end of each fiscal quarter a report containing such information as is set forth in Section 5.6(a) of the Sellers Disclosure Schedule;**⁸¹ provided, however, that (A) any such access shall

---

⁶²⁸⁰ Note to Seller:  Awaiting confirmatory diligence report.

⁸¹ **Note to Seller:  Quarterly reports to include information regarding sales, op ex, COGS, forecast, headcount update and severance costs, research and development and the Plan of Record update – please explain why**

**89**

**Error! Unknown document property name.**

400

be conducted at Purchaser's expense, in accordance with Law (including any applicable Antitrust Law and Bankruptcy Law), at a reasonable time, under the supervision of the Sellers' personnel and in such manner as to maintain confidentiality and not to unreasonably interfere with the normal operations of the Business or the other businesses of the Sellers and their Affiliates, (B) the Sellers will not be required to provide to the Purchaser access to or copies of any Employee Records[61] and (C) access to information which the Main Sellers reasonably consider to be commercially sensitive shall only be provided to appropriate Clean Team Members in accordance with applicable Law and subject to the provisions of the Clean Team Confidentiality Agreement and the Confidentiality Agreement, as applicable. **if the provision of such Employee Records would cause the Sellers to be in contravention of any applicable law (but will be required to cooperate in good faith and use commercially reasonable efforts to provide the Purchaser with the maximum employee information, excluding heath and protected status data, allowed by Law).[82]**

(b)    Notwithstanding anything contained in this Agreement or any other agreement between the Purchaser and the Sellers executed on or prior to the date hereof (other than Section 6.5), the Sellers shall not have any obligation to make available to the Purchaser or its representatives, or provide the Purchaser or its representatives with, (i) any Tax Return filed by the Sellers or any of their Affiliates or predecessors, or any related material, or (ii) more generally, any information if, in the good faith opinion of the Sellers, making such information available would (A) result in the loss of any attorney-client or other legal privilege or (B) cause the Sellers to be found in contravention of any applicable Law or contravene any fiduciary duty or agreement existing on the date hereof (including any confidentiality agreement to which the Sellers or any of their Affiliates are a party), it being understood that the Sellers shall cooperate in any reasonable efforts and requests that would enable otherwise required disclosure to the Purchaser to occur without so jeopardizing privilege or contravening such Law, duty or agreement.

(c)    To the extent not already made available to the Purchaser or**and** the Purchaser's **employees and** representatives (including its outside counsel), and subject to the terms of this Section 5.6(c), the Sellers shall use their reasonable best efforts to provide**, the Sellers shall make available to the Purchaser and the Purchaser's employees and representatives** complete unredacted copies of all Seller Contracts and Bundled Contracts (however in the case of any Bundled Contracts, only the portion of any Bundled Contracts that are applicable to the Business **to the extent Sellers desire to make such redactions**), promptly after the completion of the Auction **and in no event later than five (5) Business Days following the Auction** (or in the event that any such Contract is subject to confidentiality restrictions, promptly following the receipt of any required consent which the Sellers will cooperate with the Purchaser to obtain as promptly as practicable). Any such disclosures shall

---

**this was deleted.  This information is important to Purchaser for business planning and is the same type of information that Seller has been providing to date.**

[61] Note to Purchaser: The Parties to discuss and agree on the scope and timing of employee data to be provided to Purchaser prior to Closing.

[82] **Note to Purchaser:  The Parties to discuss and agree on the scope and timing of employee data to be provided to Purchaser prior to Closing.**

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434 v4]

**401**

~~be made to appropriate representatives of the Purchaser who are designated by the Purchaser and who have executed the applicable Clean Team Confidentiality Agreements.[83]~~

Section 5.7.    Public Announcements.    Subject to (a) the provisions of Section 7.4(a) with respect to communications and announcements to the Employees and the employees of the Purchaser and the Designated Purchasers and (b) each Party's disclosure obligations imposed by Law (including any obligations under any Bankruptcy Laws), during the period from the date hereof until the Closing Date, the Purchaser and the Main Sellers shall, and shall cause their respective Affiliates to, (i) cooperate with the other Primary Party in the development and distribution of all news releases, other public information disclosures and announcements, including announcements and notices to customers, suppliers and Employees with respect to this Agreement, or any of the transactions contemplated by this Agreement and the other Transaction Documents and (ii) not issue any such announcement or statement prior to consultation with, and the approval of, the other Primary Parties (such approval not to be unreasonably withheld or delayed); provided, that, approval shall not be required where the disclosing Primary Party determines, based on advice of counsel and after consultation with the other Primary Parties, that such disclosure is required by Law.; **provided, further, that the Purchaser shall be permitted to make disclosures and announcements in accordance with the terms set forth in Exhibit [•] hereto.[84]**  For the avoidance of doubt, this Section 5.7 shall not impose any restrictions in addition to those set forth in the Confidentiality Agreement with respect to non-public communications between the Purchaser and its direct shareholders.

Section 5.8.    Further Actions.    From and after the Closing Date, each of the Parties shall execute and deliver such documents and other papers and take such further actions as may reasonably be required to carry out the provisions of this Agreement and give effect to the transactions contemplated herein, including the execution and delivery of such assignments, deeds and other documents as may be necessary to transfer any Assets as provided in this Agreement; provided that, subject to Section 2.1.7 and Section 5.5, neither the Purchaser nor the Sellers shall be obligated to make any payment or deliver anything of value to any Third Party (other than filing and application fees to Government Entities) in order to obtain any Consent to the transfer of Assets or the assumption of Assumed Liabilities.

Section 5.9.    Conduct of Business.    The Sellers covenant that, subject to any limitation imposed as a result of being subject to the Bankruptcy Proceedings and except as (i) the Purchaser may approve otherwise in writing (such approval not to be unreasonably withheld or delayed), (ii) set forth in Section 5.9 of the Sellers Disclosure Schedule, (iii) otherwise expressly contemplated or permitted by this Agreement or another Transaction Document, including Section 5.4, (iv) required by Law (including any applicable Bankruptcy Law or by order of a Bankruptcy Court) **(provided, that no Seller shall seek or support (and the Sellers shall object to) any order that would conflict with this Section 5.9 in the absence of this clause (iv) and shall cooperate with the Purchaser to resist any such**

---

[83] **Note to Seller:  It is important to Purchaser that Seller's employees be given access to the Contracts at this stage.  The date on in Purchaser's closing condition related to passage of time is, in part, tied to when full access will be provided.**

[84] **Note to Seller:  Parties to discuss criteria for certain releases as of signing.**

**91**

**402**

order), or (v) relates solely to Excluded Assets or Excluded Liabilities **in a manner that does not relate to or materially affect the Business, Assets or Assumed Liabilities,** the Sellers shall,**[ and shall cause their Affiliates to,]**[85] (A) conduct the Business and maintain the ~~Owned Equipment in the Ordinary Course, and (B~~**Assets and Assumed Liabilities in the Ordinary Course (it being understood that the sale of Owned Inventory and assumption of Assumed Liabilities in the Ordinary Course is included in the maintenance of the Assumed Assets and Assumed Liabilities), (B) use commercially reasonable efforts in the context of the Bankruptcy Proceedings to continue operating the Business as a going concern, maintain the business organizations of the Business intact and preserve intact goodwill and relationships with  customers, suppliers, Governmental Entities, partners, lessors, licensors, licensees, contractors, distributors, agents, officers and employees, and (C**) abstain from any of the following actions:

        (a)    (i) sell, lease or dispose of a material portion of the Assets **or any Assets material to the Business**, in any single transaction or series of related transactions, other than in the Ordinary Course**; provided, that for purposes of this clause (i) the definition of Ordinary Course includes Seller's obligation to maintain the value of the Business as a going-concern**, or (ii) enter into any exclusive license agreement that would restrict the Business or the Assets after the Closing in any material respect;

        (b)    incur any Lien on any Assets, other than (i) Liens that will be discharged at or prior to Closing or (ii) Permitted Encumbrances;

        (c)    (A) sell, assign or transfer any Transferred Intellectual Property, (B) grant any ~~material~~ licenses to the Transferred Intellectual Property other than (i) licenses or sublicenses granted **to suppliers, resellers and customers** in the Ordinary Course, **and** (ii) such licenses ~~or sublicenses~~ as would be permitted by the grant back license rights set forth in the Intellectual Property License Agreement, ~~or (iii) licenses or sublicenses granted pursuant to source code escrow arrangements listed in Section 5.9(e) of the Sellers Disclosure Schedule~~ **(if such agreement were in effect as of the date hereof)**, or (C) intentionally fail to make any filing, pay any fee, or take any other action necessary to maintain the ownership, validity and enforceability of any material Transferred Intellectual Property; provided that if the Sellers unintentionally fail to make any filing, pay any fee, or take any other action necessary to maintain the ownership, validity and enforceability of any material Transferred Intellectual Property, the Sellers will, upon becoming aware of any such failure, make all reasonable efforts to correct any adverse effects of such failure;

        (d)    increase the rate of cash compensation or other fringe, incentive, equity incentive, pension, welfare or other employee benefits payable to the Employees, other than (i) increases in the Ordinary Course or as required by applicable Law, Contracts or Seller Employee Plans in effect as of the date hereof, or pursuant to the KEIP or KERP (provided that the Sellers provide the Purchaser with notice of amendments, modifications, supplements or replacements to the KEIP or to the KERP as may be approved by the Canadian Court or the U.S. Bankruptcy Court), or as otherwise approved by the Bankruptcy Court from time to time,

---

[85] **Note to Seller:  Deletion subject to completion of diligence on Seller list and Assets.**

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434 v4]

**403**

or (ii) increases to welfare benefits that apply to substantially all similarly situated employees (including the Employees) of the Sellers or the applicable Affiliates of the Sellers;

(e)    [adopt, amend in any way that would materially increase its costs or terminate any Seller Employee Plan that would be a Transferred Employee Plan, except as required by applicable Law or any Collective Labor Agreement or as required for such Seller Employee Plan to become a Transferred Employee Plan;][486]

(f)    enter into or amend ~~any Special Arrangements~~ to provide for greater benefits **under any Special Arrangements**, except as required by applicable Law;

(g)    enter into any Collective Labor Agreement affecting Employees, except as required by applicable Law;

(h)    take any action, [other than ~~actions that an employer in bankruptcy would take~~**in the Ordinary Course**[87], to cause any employee of the Sellers who would otherwise be an Employee as of the Closing not to be such an employee (other than termination for cause or termination of Employees who failed to receive an Offer (as defined below) from the Purchaser or a Designated Purchaser pursuant to this Agreement; provided that the Sellers ~~make a reasonable effort to~~ provide notice to the Purchaser prior to any such employment termination);

(i)    voluntarily terminate, waive any material right under, or materially amend (including by materially increasing the obligations of the Sellers under a supply Contract, materially reducing the obligations of a customer under a customer Contract of the Sellers, or materially modifying the standard warranty terms or return policy for CVAS Products or CVAS Services under a Material Contract so as to materially increase the Liabilities of the Sellers thereunder) any Material Contract or Bundled Contract material to the Business (other than as necessary to effect the unbundling of any Bundled Contract required with respect to any other business or business segment of the Sellers), unless such Contract has become a Non-Assigned Contract**, an Excluded 365 Customer Contract, an Excluded Non-365 Customer Contract** or will not be assigned to the Purchaser or any Designated Purchaser at Closing and other than in the Ordinary Course;

**(j)    fail to maintain the inventory and supplies of the Business in the Ordinary Course (including with respect to entering into purchase orders of the type contemplated by Section 2.1.3(m)); provided, that for purposes of this clause (j) the definition of Ordinary Course includes Seller's obligation to maintain the value of the Business as a going-concern;**

**(k)**    ~~(j)~~ waive, release, assign, settle or compromise any material claim, litigation or arbitration relating to the Business to the extent that such waiver, release, assignment, settlement or compromise imposes any binding obligation, whether contingent or

---

[486] Note to Purchaser:  This section will be deleted if there are no Transferred Employee Plans.
[87] **Note to Seller:  "Ordinary Course" already includes the ordinary course of the Business consistent with recent past practice** *since the filing of the Bankruptcy Proceedings.***"**

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434 v4]

**404**

realized, on the Business that will bind the Purchaser or a Designated Purchaser after the Closing Date and is materially adverse to the Business;

(l)    (k) enter into any Material Contract pursuant to Section 4.4(a)(ii) or amend any Contract to thereafter be a Material Contract pursuant to Section 4.4(a)(ii) that would reasonably be expected to bind the Purchaser or any of its Affiliates in any material respect after the Closing;

(m)    (l) fail to maintain tangible property which, individually or in the aggregate, is material to the Business and which is included in the Assets, in the Ordinary Course;

(n)    (m) fail to maintain the material Consents with respect to the Business in the Ordinary Course;

**(o)    (i) settle or otherwise compromise any audit, proceeding or Action with respect to a material amount of Taxes which settlement or compromise could affect a Purchaser's or Designated Purchaser's Liability for Taxes relating to the Assets or the Business for any Post-Closing Taxable Period or (ii) make or rescind any material election in relation to Taxes that would materially and adversely impact the Purchaser or a Designated Purchase after the Closing;** or

(p)    (n) authorize, or commit or agree to take, any of the foregoing actions.

If a Seller desires to take any action described in this Section 5.9, the Main Sellers may, prior to any such action being taken, request the Purchaser's consent via an electronic mail or facsimile sent to the individual(s) at the addresses listed on Exhibit 5.9. The Purchaser ~~shall~~ **use its commercially reasonably efforts to** respond to such notice in writing by 11:59 p.m. (New York time) on the second Business Day after the day of delivery of such electronic mail or facsimile. ~~The~~**; _provided_, that the** failure of the Purchaser to respond within such two (2) Business Days shall not **(i)** be deemed to be consent to such action **and (ii) be a material breach of this Agreement**.

Section 5.10.  Transaction Expenses.  Except as otherwise provided in this Agreement or the Ancillary Agreements, each of the Purchaser and the Sellers shall bear its own costs and expenses (including brokerage commissions, finders' fees or similar compensation, and legal fees and expenses) incurred in connection with this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby.

Section 5.11.  Confidentiality.

(a)    The Parties acknowledge that the Confidentiality Agreement remains in full force and effect in accordance with its terms, which are incorporated herein by reference, and the Parties agree to be bound thereby in the same manner and to the same extent as if the terms had been set forth herein in full, except that the Sellers shall be at liberty to disclose the terms of this Agreement to any court or to any liquidator or in connection with any auction

**94**

NY\1582469.7

94

[New York #2071434.v4]    ~~Error! Unknown document property name.~~

**405**

process approved by the Bankruptcy Court and show appropriate figures in their administration records, accounts and returns.

(b)    From the Closing Date until the date that is five (5) years after the Closing Date, the Sellers shall not, and shall cause their Affiliates not to, and shall use **commercially** reasonable best efforts to cause the respective representatives of the Sellers and their Affiliates not to, use or disclose to any Third Party, any Confidential Information.  For purposes of this Agreement, "**Confidential Information**" consists of all competitively sensitive information and data related to the Business or the Assets (including Transferred Intellectual Property and competitively sensitive Business Information existing as of the Closing Date), Purchaser or its Affiliates that is not, in each case, already available to the public (it being agreed that disclosure of Confidential Information to prospective purchasers, their representatives and other Persons affiliated with the sale process of the Business shall not be public disclosure thereof), provided that nothing herein or in the other Transaction Documents shall be construed as precluding, prohibiting, restricting or otherwise limiting the ability of the Sellers, Seller's Affiliates or their respective representatives to (i) disclose the terms of any of the Transaction Documents to any court or to any liquidator or in connection with any auction process approved by a Bankruptcy Court and show appropriate figures in their administration records, accounts and return; (ii) exercise or enforce any of their rights, or perform any obligations under this Agreement or the other Transaction Documents, including the Transition Services Agreement and the Intellectual Property License Agreement, (iii) make permitted disclosures under Section 5.7; (iv) make any disclosures that are required by applicable Law; (v) own, use or disclose Confidential Information that is not exclusive to the Business to the extent necessary to (in the reasonable judgment of the Sellers) operate the other business segments of the Sellers or their Affiliates or otherwise engage in any manner in any business activities unrelated to the Business; (vi) use Confidential Information to the extent necessary to perform any Seller Contracts not assigned to the Purchaser; (vii) share information to the extent reasonably necessary to allocate the purchase proceeds from the sale of the Assets; or (viii) make customary disclosures, subject to customary confidentiality agreements, regarding Confidential Information that is not exclusive to the Business and is primarily related to other business segments of the Sellers in connection with acquiring, merging or otherwise combining with, or being acquired by, or selling all or part of their assets to, any Person (whether in a single transaction or a series of related transactions or whether structured as an acquisition of assets, securities or otherwise).

(c)    It is acknowledged by the Purchaser and the Sellers that in the course of attempting to sell the Assets, one or more of the Sellers has entered into several confidentiality agreements with Third Parties in respect of information relating to the Assets and has disclosed such information to certain of those Third Parties.

Section 5.12.    Certain Payments or Instruments Received from Third Parties.  To the extent that, after the Closing Date, (a) the Purchaser and/or any Designated Purchaser receives any payment or instrument that is for the account of a Seller according to the terms of any Transaction Document or relates primarily to any business or business segment of the Sellers other than the Business, the Purchaser shall, and shall cause the Designated Purchasers to

**95**

406

promptly deliver such amount or instrument to the relevant Seller, and (b) any of the Sellers receives any payment that is for the account of the Purchaser, any of the Designated Purchasers according to the terms of any Transaction Document or relates primarily to the Business, the Sellers shall, and shall cause the other Sellers to promptly deliver such amount or instrument to the Purchaser or the relevant Designated Purchaser, as applicable.  All amounts due and payable under this Section 5.12 shall be due and payable by the applicable Party in immediately available funds, by wire transfer to the account designated in writing by the relevant Party. Notwithstanding the foregoing, each Party hereby undertakes to use its **commercially** reasonable best efforts to direct or forward all bills, invoices or like instruments to the appropriate Party.

Section 5.13.    Non-Assignable Contracts.

(a)    To the extent that any Seller Contract or any Seller Consent is not capable of being assigned under Section 365 of the U.S. Bankruptcy Code (or, if inapplicable, pursuant to other applicable Laws or the terms of such Contract or Consent) to the Purchaser or a Designated Purchaser at the Closing, or cannot be entered into (A) without the Consent of the issuer thereof or the other party thereto or any Third Party (including a Government Entity) or (B) without Sellers' and their Affiliates' compromising any right, asset or benefit or expending any amount or incurring any Liability or providing any other consideration  (collectively, the "**Non-Assignable Contracts**"), this Agreement will not constitute an assignment thereof, or an attempted assignment, unless and until any such Consent is obtained, including any Consents obtained following Closing; provided, however, that the Sellers will use **commercially** reasonable best efforts (without incurring any third party costs) to (i) cooperate with the Purchaser in any reasonable arrangement to provide the Purchaser the same interest, benefits, rights and liabilities under any such Non-Assignable Contracts that are not licenses of Intellectual Property as the applicable Seller had immediately prior to the Closing, including using **commercially** reasonable best efforts to enter into one or more mutually agreed Subcontract Agreements, and (ii) facilitate Purchaser's negotiation with the other party to each Non-Assignable Contract that is a license of Intellectual Property to provide the Purchaser the same interest, benefits and rights under any such Non-Assignable Contracts as the applicable Seller had immediately prior to the Closing (including that Sellers shall request such Third Party's Consent if so requested by the Purchaser); provided that there shall be no obligation on Sellers or their Affiliates to compromise any material right, asset or benefit or expend any amount or incur any Liability.  As between the Sellers and the Purchaser (or the relevant Designated Purchaser), such Non-Assignable Contracts described above shall be deemed to be assigned and the Purchaser (or the relevant Designated Purchaser) shall perform all obligations and covenants thereunder.  Notwithstanding the foregoing sentences, (x) nothing in this Section 5.13 shall require any Seller to renew, modify or amend any Non-Assignable Contract once it has expired, (y) any efforts required of the Sellers pursuant to this paragraph shall be strictly on an interim basis and in no event shall such efforts or arrangements be required after one hundred and eighty (180) days from the Closing Date, and (z) the Sellers shall have the right, any time after the day that is one hundred and eighty one (181) days after the Closing Date, to exercise any right to terminate any Non-Assignable Contract.  The Purchaser or the Designated Purchaser, as applicable, shall reimburse the relevant Seller for the out-of-pocket expenses incurred or asserted, as a result of any actions taken pursuant to this Section 5.13.

NY\1582469.7

[New York #2071434 v4]

Error! Unknown document property name.

407

The Parties acknowledge that the fact that any Contract constitutes a Non-Assignable Contract shall not (i) constitute a breach of any covenant hereunder, (ii) entitle Purchaser to terminate this Agreement or (iii) result in any reduction of the Purchase Price payable hereunder. Any Non-Assignable Contract assigned pursuant to the terms of this Section 5.13 shall, when assigned, constitute an Assigned Contract hereunder from and after such date.

(b)    For the purposes of this Agreement (including Section 5.13(a) and all representations and warranties of the Sellers contained herein), the relevant Sellers shall be deemed to have obtained all required Consents in respect of the assignment of any Assumed and Assigned Contract if, and to the extent that, pursuant to the U.S. Sale Order, the Sellers are authorized to assume and assign to the Purchaser or the Designated Purchasers such Seller Contract pursuant to Section 365 of the U.S. Bankruptcy Code and any applicable Cure Cost has been satisfied as provided in Section 2.1.7.

Section 5.14.    Bundled Contracts.[65][88]

(a)    Section 5.14(a)(i) of the Sellers Disclosure Schedule lists each Contract that the Sellers have entered into prior to the date hereof providing for the sale or provision of CVAS Products or CVAS Services and the sale or provision of other products or services of the Sellers or their Affiliates (each, a "**Bundled Contract**"). Subject to applicable Law and the terms of such Bundled Contracts, each of the Purchaser and the Sellers shall (and the Purchaser shall cause any relevant Designated Purchaser to), as applicable, use their reasonable best efforts to, at least fifteen (15) Business Days prior to the Closing Date, cause the counterparty to each Bundled Contract listed on Section 5.14(a)(i) of the Sellers Disclosure Schedule to amend such Bundled Contract so as to delete all obligations and Liabilities therefrom as they relate to the CVAS Products and the CVAS Services and to enter into a new Contract (effective as of, and conditioned upon the occurrence of, the Closing) with the Purchaser or applicable Designated Purchaser and such applicable customer which only relates to CVAS Products and CVAS Services, in which event such new Contract shall be deemed to be an Assigned Contract; provided, however, that the Sellers shall be under no obligation to compromise any right, asset or benefit or to expend any amount or incur any Liability in obtaining such arrangements and the failure to enter into such arrangements with respect to any Bundled Contract shall not entitle the Purchaser to terminate this Agreement, not to complete the transactions contemplated hereby or reduce the Purchase Price payable hereunder**; provided, further, that the Purchaser shall not be obligated to enter into any such new Contract that does not meet the Inclusion Criteria unless the applicable Bundled Contract is set forth on Section 5.14(a)(ii)[89] of the Sellers Disclosure Schedule**. Without the express written consent of Purchaser, Sellers shall not agree to amend the material terms applicable to the Business of any Bundled Contract as a condition of such counterparty agreeing to amend such portion of such Bundled Contract. To the extent permitted by the terms of such Bundled Contract and applicable Law, each of the Sellers and the Purchaser shall

---

[65][88] Note to Seller: Purchaser requires schedules and to review the contracts to comment further. Parties to also discuss Seller providing assistance to "unbundle" supply contracts or otherwise provide Purchaser assistance to obtain replacement contracts in connection with either this covenant of the Seller Supply Agreement.
[89] **Note to Seller:  Schedule to cover the major bundled contracts.**

**408**

notify the other Party if any customer has contacted such Party with regard to the matters set forth in this Section 5.14 and shall keep such other Party reasonably informed regarding the content of any discussions with the customer.  For the avoidance of doubt, nothing in this Section 5.14(a) shall restrict the Sellers from taking any actions with respect to Bundled Contracts, including any amendments thereof, to the extent they relate to businesses or business segments of the Sellers or their Affiliates other than the Business **and such actions do not materially affect the Business**.

      (b)    Subject to applicable Law and the terms of such Bundled Contracts, for those Bundled Contracts for which the arrangements mentioned in Section 5.14(a) could not be entered into fifteen (15) Business Days prior to the Closing Date, (i) the relevant Sellers shall, until the date that is [~~ninety days~~**one** (~~90~~**1**)] **year** after the Closing Date, to the extent requested by the Purchaser, use their **commercially** reasonable ~~best~~ efforts to facilitate the entry by the Purchaser or the relevant Designated Purchaser and the other party to each such Bundled Contract into a new Contract that only relates to CVAS Products and/or CVAS Services, including by making available those employees who are responsible for managing the customer relationships with the customers of such Bundled Contracts (to the extent reasonably practicable and to the extent such employees remain in the employ of the Sellers), reasonably cooperating with the Purchaser to jointly contact each counterparty to such Bundled Contracts by making such contacts (by phone or in person) as may be reasonably requested by the Purchaser and by sending a joint letter, in form and substance satisfactory to each of Sellers and the Purchaser notifying the counterparty to each such Bundled Contract of the transactions and requesting the counterparty to agree to amending such Bundled Contract after the Closing Date or (ii) the Sellers and the Purchaser shall use their **commercially** reasonable ~~best~~ efforts to cooperate in any commercially reasonable arrangement to provide the Purchaser or Designated Purchaser, as applicable, the same interest, benefits, rights and liabilities under any such Bundled Contract only to the extent relating to CVAS Products and/or CVAS Services as the applicable Seller had immediately prior to the Closing under such Bundled Contract, in so far as they relate to the Business, including using **commercially** reasonable ~~best~~ efforts to enter into one or more mutually agreed Subcontract Agreements with respect to such Bundled Contracts; <u>provided</u> that (A) nothing in this Section 5.14 shall require the Sellers to renew any Bundled Contract once it has expired, (B) the Sellers shall have the right, any time after the date that is [~~ninety~~**one** (~~90~~**1**) ~~days~~**year**] after the Closing Date, to exercise any right to terminate any Bundled Contract, and (C) the Sellers shall be under no obligation to compromise any right, asset or benefit or to expend any amount or incur any Liability in order to comply with its obligations under this sentence.  Upon the execution of the relevant Subcontract Agreements the Purchaser (or the relevant Designated Purchaser) shall perform all obligations and covenants of the relevant Seller under the applicable Bundled Contracts (to the extent relating to the Business and including obligations relating to warranties [and Known Product Defects (as defined in the Nortel Accounting Principles)).  Without limiting the generality of the foregoing, the Purchaser expressly agrees that any obligations under any warranty liabilities or any obligations associated with any Known Product Defects relating to CVAS Products and CVAS Services which have been supplied under any Bundled Contract subcontracted to the Purchaser or any Designated Purchaser under any Subcontract Agreement shall be assumed by the Purchaser or such Designated Purchaser and no Sellers shall have or

NY\1582469.7

[New York #2071434 v4]    98    Error! Unknown document property name.

**409**

retain any Liability, cost or expenses in connection with any such warranty liabilities or Known Product Defects **related to the CVAS Products and CVAS Services**.[66]

Section 5.15.   Post-Closing Assistance for Litigation.  After the Closing, the Purchaser shall, upon the request of the Sellers, and at no cost to the Sellers (other than reimbursement of reasonable and documented out of pocket expenses of the Purchaser or a Designated Purchaser and the payment of a reasonable per diem to the Purchaser or a Designated Purchaser, which per diem shall be based upon the total compensation of the affected Transferred Employee at the applicable time), require the Transferred Employees to make themselves reasonably available at reasonable times and cooperate in all reasonable respects with the Sellers and their Affiliates in the preparation for, and defense of, any lawsuit, arbitration or other Action (whether disclosed or not disclosed in the Sellers Disclosure Schedule) filed or claimed against the Sellers or any of their Affiliates or any of the respective agents, directors, officers and employees of the Sellers and their Affiliates, whether currently pending or asserted in the future, concerning the operation or conduct of the Business prior to the Closing Date; provided, however, that the obligations of the Purchasers or their Affiliates hereunder shall only extend to the employees of such Purchasers or Purchasers' Affiliates as of the date such employees are to be made available and shall not apply to former employees of such Purchaser or Purchaser's Affiliates that have been terminated prior to such date.

(b)    After the Closing, the Sellers and their Affiliates shall, upon the request of the Purchaser, and at no cost to the Purchaser or its Affiliates (other than reimbursement of reasonable and documented out of pocket expenses of the Sellers and their applicable Affiliates and the payment of a reasonable per diem to a Seller or Seller Affiliate, which per diem shall be based upon the total compensation of the affected employee at the applicable time) require their employees that were not Transferred Employees to make themselves reasonably available and cooperate in all reasonable respects with the Purchaser and the Designated Purchasers and their Affiliates in the preparation for, and defense of, any lawsuit, arbitration or other Action filed or claimed against the Purchaser, any of the Designated Purchasers, any of their Affiliates or any of the respective agents, directors, officers and employees of any of the foregoing, whether currently pending or asserted in the future, concerning the operation or conduct of the Business prior to the Closing Date; provided, however, that the obligations of the Sellers or their Affiliates hereunder shall only extend to the employees of such Sellers or Sellers' Affiliates as of the date of Purchaser's request and so long thereafter as they continue to be employed by such Seller or its Affiliates and shall not apply at any time with respect to individuals no longer employed by such Sellers or Seller's Affiliates and shall not require any Sellers or Seller's Affiliates to continue the employment of any such employee.

Section 5.16.   Delivery of Assets.[90]

(a)    [In accordance with the procedures and timeline set forth on Section 5.16(a) of the Sellers Disclosure Schedule, ][67/91] The Purchaser shall, and shall cause the

---

[66] ~~Note to Seller:  Subject to confirmation of a proper KPD purchase price adjustment.~~
[90] **Note to Seller:  Subject to real estate discussion.**
[67/91] Note to Purchaser:  Timing to be discussed.

**99**

**410**

relevant Designated Purchasers to, at Purchaser's sole cost and expense, [within thirty (30) days after the Closing Date ]relocate all tangible Assets and Purchaser's activities from all premises owned or leased by the Sellers or their Affiliates after the Closing other than those premises to be occupied by the Purchaser or any Designated Purchasers after the Closing Date pursuant to the provisions of the Real Estate Agreements.

(b)   As promptly as reasonably practicable, and in no event more than thirty (30) days, after the Closing Date, the Sellers shall deliver to the Purchaser copies of filings, prosecution files, dockets and certifications relating to the filing, prosecution, issuance, renewal and enforcement of the Business Registered IP, provided that all items to be delivered hereunder shall be delivered solely by remote telecommunication to the extent the Purchaser may so request.  Without limiting the generality of the foregoing, within thirty (30) days of Closing, the Sellers shall and shall cause their Affiliates to, instruct their current attorneys and agents to deliver to the Purchaser, or attorneys designated by Purchaser, any and all records in the possession of such attorneys and agents relating to the prosecution of any applications, registrations and renewals of any Business Registered IP.

Section 5.17.   Termination of Overhead and Shared Services and French Company Licenses.[92]

(a)   The Purchaser acknowledges and agrees that, except as otherwise expressly provided in the Transition Services Agreement, effective as of the Closing Date (i) all Overhead and Shared Services provided to the Business (except the Transferred Overhead and Shared Services) shall cease and (ii) the Sellers or their Affiliates shall have no further obligation to provide any Overhead and Shared Services to the Business.

(b)   [The Sellers shall, on or before Closing, provide the Purchaser with reasonable evidence confirming that Nortel Networks S.A. has agreed:

(i)   not to assert its Intellectual Property and exclusive license rights, if any, in a manner that could restrict or conflict with the ability of the Purchaser or its successors, assigns, licensees, sub-licensees or customers to operate in the field of the Business and its natural evolutions; and

(ii)   to the fullest extent permitted under French Law, to relinquish, waive and terminate all its Intellectual Property and license rights (including any enforcement rights) to the extent (but only to the extent) that they relate to the Intellectual Property that is sold or licensed to the Purchaser in connection with the sale of the Business.][68][93]

Section 5.18.   Financing.

---

[92] **Note to Seller:  Subject to completion of diligence that French licenses are all that require termination.**
[68][93] Note to Purchaser:  As discussed, it is currently contemplated that the Nortel entities holding relevant licenses will be parties to the IPLA.

411

(a)     The Purchaser shall obtain the Financing on the terms and conditions described in the Financing Commitments or Replacement Financing **(with such amendments thereto so long as they could not reasonably be expected to adversely impact or delay in any material respect the ability of the Purchaser to consummate the financing contemplated by the Commitment Letters)**, and shall: (i) enter into definitive agreements with respect to the Financing on substantially the terms and conditions contemplated by the Financing Commitments or Replacement Financing**, as amended**; (ii) to the extent within its control, **use its commercially reasonably efforts to** fully satisfy on a timely basis all conditions applicable in such definitive agreements to such Person obtaining the Financing set forth therein; and (iii) consummate the Financing contemplated by the Financing Commitments or Replacement Financing at Closing.  The Purchaser shall not amend or modify the terms of the Financing Commitments in ~~any manner that might be adverse to the Sellers~~**a manner that could reasonably be expected to adversely impact or delay in any material respect the ability of the Purchaser to consummate the financing contemplated by the Commitment Letters** without the prior express written consent of the Main Sellers.  In the event any portion of the Financing expires or is terminated or otherwise becomes unavailable on the terms and conditions contemplated in the Financing Commitments or any lender or Sponsor shall have asserted that any conditions of the Financing have not been, or may not be, satisfied, the Purchaser shall promptly (and in any event within two (2) Business Days) notify the Sellers of such unavailability or assertion and the reasons therefor, and shall (in consultation with the Main Sellers) enforce its rights under the Financing Commitments (including by seeking specific performance) and use its **commercially** reasonable ~~best~~ efforts to arrange Replacement Financing or to obtain alternative financing from alternative sources as promptly as practicable following the occurrence of such event.  In such event, the Purchaser shall promptly notify the Sellers when it obtains alternative financing.  The Purchaser shall keep the Sellers informed on a reasonably prompt basis, and in reasonable detail of the status of the Financing and any alternative financing.  The Purchaser shall provide notice to the Sellers promptly upon receiving the Financing and shall furnish correct and complete copies of the definitive agreements with respect thereto to the Sellers promptly upon their execution, to the extent executed prior to the Closing and subject to any confidentiality undertakings.

(b)     From and after the date hereof, Sellers shall~~,~~ and shall ~~use their reasonable best efforts to~~ cause their respective Affiliates, officers, directors, employees, agents and representatives to, provide to the Purchaser commercially reasonable cooperation requested by the Purchaser with respect to actions that are necessary, proper or advisable in connection with obtaining the Financing ~~and~~**,** the Replacement Financing **and any other financing**, including in each case, to the extent commercially reasonable and requested with reasonable advance notice (i) participation in meetings, presentations, due diligence sessions and sessions with financing sources and rating agencies, (ii) assisting with the preparation of Purchaser's materials for rating agency presentations, offering documents, business projections  and similar marketing documents required by Purchaser in connection with the Financing ~~or~~**,** the Replacement Financing **or any other financing**, (iii) **as promptly as practical,** furnishing ~~the~~ Purchaser and its debt financing sources with financial and other information regarding the Business as may be reasonably requested by the Purchaser ~~and prepared by the Sellers in the Ordinary Course~~, including **financial statements,** pro forma financial information, financial

**101**

NY\1582469.7

[New York #2071434 v4]                                 101                      **Error! Unknown document property name.**

412

data, audit reports and other information, ~~and~~ (iv) **issuing customary representation letters to auditors (including pursuant to Section 5.25),** using commercially reasonable efforts to ~~take any corporate or similar~~**obtain accountants' work papers, comfort letters and consents to the use of accountants' audit reports relating to the Business, legal opinions, surveys, title insurance and other documentation and items relating to the Financing or any other financing as reasonably requested by the Purchaser, (v) promptly providing interim financial statements (excluding footnotes) of the Business to the extent available, (vi) reasonably facilitating the pledging of collateral (including obtaining releases, terminations, waivers, consents, estoppels and approvals as may be required in connection therewith), (vii) delivery to Buyer and its financing sources of information with respect to the Business, Acquired Assets and Assumed Liabilities as may be reasonably requested by Buyer or such financing source, including due diligence information reasonably requested by the financing sources (which shall be subject to customary confidentiality agreements) in connection with the preparation of the marketing material and (viii) taking all** actions necessary to permit the consummation of the Financing ~~and any~~**, the** Replacement Financing **and any other financing**; provided that (A) such requested cooperation does not unreasonably interfere with the ongoing operations of the Sellers and their Affiliates and (B) none of the Sellers or their Affiliates shall be required to pay any commitment or other similar fee or incur any other Liability in connection with the Financing.[69][94]

(c)    Notwithstanding anything to the contrary set forth herein, the Purchaser acknowledges and agrees that (i) its obligations to consummate the transactions contemplated by this Agreement are not conditioned or contingent in any way upon receipt of the Financing or any financing from any other Person, and (ii) failure to consummate the transactions contemplated herein as a result of the failure to obtain financing shall constitute a breach of this Agreement by the Purchaser (including its obligations pursuant to Section 2.4).  The Purchaser and its Affiliates shall not take any action that impairs the ability of the Purchaser to fulfill its obligations hereunder or make any payment required in respect of this Agreement or the EMEA Asset Sale Agreement.

Section 5.19.   Insurance Matters.[70][95]

(a)    The Purchaser acknowledges and agrees that coverage of the Covered Assets and Persons under the Seller Insurance Policies shall cease as of the Closing Date and the Covered Assets and Persons will be deleted in all respects as insured (or additional insured, as the case may be) under all Seller Insurance Policies. Except to the extent provided in Section 2.1.1(l) or Section 5.19(c), the Sellers shall retain any rights to, including any right to any proceeds received in respect of, any claim pending as of the date hereof or made after the date hereof under any Seller Insurance Policy, even if such claims relates to the capital assets or properties of the Business.

---

[69][94] Note to Purchaser:  Subject to further discussion pending receipt of applicable Financing Commitments from Purchaser.

[70][95] Note to Seller: ~~Under~~  **Remains subject to** review by the Purchaser's insurance consultant.

**102**

NY\1582469.7

[New York #2071434 v4]                                102              **Error! Unknown document property name.**

413

(b)   If after the Closing Date the Purchaser, a Designated Purchaser, or the Sellers (or any of their respective Affiliates) reasonably require any information regarding claim data or other information pertaining to a claim or an occurrence reasonably likely to give rise to a claim (including any pre-Closing claims under the Seller Insurance Policies that are to be covered under the retrospective component of the new insurance policy) in order to give notice to or make filings with insurance carriers or claims adjustors or administrators or to adjust, administer or otherwise manage a claim, then the Sellers or the Purchaser, as the case may be, shall cause such information to be supplied to the other (or their designee), to the extent such information is in their possession and control or can be reasonably obtained by the Sellers or the Purchaser (or their respective Affiliates), as applicable, promptly upon a written request therefore.  If the Purchaser desires access to, and utilization of, claims data or information maintained by an insurance company or other Third Party in respect of any claim (including any pre-Closing claims under any Seller Insurance Policies that are covered under the retrospective component of the new insurance policies), the Purchaser shall be exclusively responsible for acquiring from such insurance company or Third Party, at the Purchaser's sole cost and expense, the rights necessary to permit them to obtain access to and utilization of such claims data or information.  If any Third Party requires the consent of the Sellers or any of their Affiliates to the disclosure of such information, such consent shall not be unreasonably withheld.

(c)   Prior to Closing, the Sellers shall at all times maintain their current property insurance in respect of the Owned Equipment, or in the event any such policies are cancelled or otherwise terminated, shall obtain other substantially comparable insurance policies that have substantially the same terms and conditions and make and diligently pursue any applicable insurance claims related to damage or destruction to any Owned Equipment. Notwithstanding anything in this Agreement to the contrary if and to the extent that any piece of Owned Equipment, wherever located, is destroyed or damaged prior to Closing, and is not replaced or repaired or restored to its condition prior to such damage or destruction, then at Closing, the Sellers shall pay to the Purchaser the amount of any net insurance proceeds received in respect of such Owned Equipment (excluding any insurance proceeds related to business interruption insurance) that have not been applied to repair, replacement or restoration, as applicable, and assign any such claim and the rights to receive the proceeds of any such claim that has not yet been finally adjusted.  For the avoidance of doubt, in the event that the Sellers transfer such proceeds to the Purchaser, the Sellers shall have no further obligations with respect to the Owned Equipment that was destroyed or damaged and the Purchaser shall not be entitled to terminate this Agreement and such events shall not result in any reduction of the Purchase Price payable hereunder.

### Section 5.20.   Deposits, Guarantees and Other Credit Support of the Business.[96]

(a)   ~~Section 5.20. Deposits, Guarantees and Other Credit Support of the Business.~~[71] Following the Closing, the Purchaser shall, or shall cause the applicable Designated Purchaser to:

---

[96] Note to Seller:  Subject to review of schedules of such items.

**103**

Error! Unknown document property name.

414

(i)    procure the return and/or release by the applicable counterparty, as soon as reasonably practicable but in no event later than thirty (30) days after the Closing Date, of:

**(A)** [(A) any lease security deposits given by the Sellers under any Real Estate Leases, including subleases) that are Assigned Contracts (the **"Security Deposits"**);]

**(B)** (B) any continuing obligation of any Seller or any Affiliate thereof with respect to any Assigned Contract or any Contract, asset or obligation of the Business (including any guarantee or credit support provided by, or any letter of credit, performance bond or surety posted by, any Seller or any of its Affiliates [or any Third Party on behalf of the Sellers (and with a counter guarantee of the Sellers)]) listed in Section 5.20(a)(i)**(B)** of the Sellers Disclosure Schedule; and

(ii)    [if the Security Deposits are not released or returned to the relevant Seller within thirty (30) days from Closing, pay to the relevant Seller an amount equal to such outstanding Security Deposits (in which case, effective upon such payment, the relevant Seller shall assign to the Purchaser any right or credit against the relevant lessor relating to such Security Deposit); and]

(iii)    indemnify and hold harmless the Sellers and their Affiliates from and against any Loss resulting from any failure of the Purchaser or Designated Purchasers to comply with the obligations set forth in clauses (a)(i) and (a)(ii) of this Section 5.20.

Section 5.21.  Use of Trademarks.  Except as expressly provided in the Trademark License Agreement, **as of the Closing Date,** neither the Purchaser nor any Designated Purchaser shall have the right to use the name "Nortel" or any other Trademarks owned by the Sellers or any of their Affiliates or any other Trademark employing the word "Nortel" or any confusingly similar Trademarks to any of the foregoing (collectively, the **"Sellers' Trademarks"**).

Section 5.22.  Maintenance of Books and Records.

(a)    After the Closing, the Purchaser shall, and shall cause the Designated Purchasers to, preserve, until at least the fifth (5th) anniversary of the Closing Date, all pre-Closing Date records to the extent relating to the Business possessed or to be possessed by such Person.  After the Closing Date and up until at least the fifth (5th) anniversary of the Closing Date, upon any reasonable request from the Sellers or their representatives, the Purchaser shall, and/or shall cause the Person holding such records to, (i) provide to the Sellers or their representatives reasonable access to such records during normal business hours and (ii) permit the Sellers or their representatives to make copies of such records, in each case at no cost to the Sellers or their representatives (other than for reasonable out-of-pocket expenses).  In addition, in the event that the financial statements of the Business are audited for any period

---

[71] Subject to review of schedules of such items.

**415**

prior to the Closing Date, upon execution of a customary access letter if required, the Sellers and their representatives (including their outside accountants) shall be granted access to all relevant work papers, schedules, memoranda and other documents prepared by the Business or their representatives (including outside accountants) in connection with the Sellers' completing the audit of their accounts for the 2009 fiscal year; provided, however, that nothing herein shall require the Purchaser to disclose any information to the Sellers if such disclosure would jeopardize any attorney-client or other legal privilege or contravene any applicable Law, fiduciary duty or agreement (it being understood that the Purchaser shall cooperate in any reasonable efforts and requests for waivers that would enable otherwise required disclosure to the Sellers to occur without so jeopardizing privilege or contravening such Law, duty or agreement) or, other than as provided in Section 6.5, require the Purchaser to disclose its Tax records. Such records may be sought under this Section 5.22(a) for any reasonable purpose, including to the extent reasonably required in connection with accounting, litigation, federal securities disclosure or other similar needs of the Sellers (other than claims between the Sellers and the Purchaser or any of their respective Subsidiaries under this Agreement or any Ancillary Agreement). Notwithstanding the foregoing, (y) any and all such records may be destroyed by the Purchaser if the Purchaser sends to the Sellers written notice of its intent to destroy such records, specifying in reasonable detail the contents of the records to be destroyed; such records may then be destroyed after the sixtieth (60th) day following such notice unless the Sellers notify the destroying party that the Sellers desire to obtain possession of such records, in which event the Purchaser shall transfer or cause to be transferred the records to the Sellers and the Sellers shall pay all reasonable expenses of the Purchaser in connection therewith and (z) other than as provided in Section 6.5, the Purchaser shall not be required to provide the Sellers access to, or copies of, any Tax records.

(b)    After the Closing, Sellers shall preserve, until the fifth (5th) anniversary of the Closing Date, all pre-Closing Date records to the extent relating to the Business possessed or to be possessed by such ~~Person~~**Sellers or any of Sellers' Affiliates**. After the Closing Date and up until the fifth (5th) anniversary of the Closing Date, upon any reasonable request from the Purchaser, any Designated Purchaser or their respective representatives, the relevant Seller shall, and/or shall cause the Person holding such records to, (i) provide to the Purchaser, any Designated Purchaser or their respective representatives reasonable access to such records during normal business hours and (ii) permit the Purchaser, any Designated Purchaser or their respective representatives to make copies of such records, in each case at no cost to the Purchaser, any Designated Purchaser or their respective representatives (other than for reasonable out-of-pocket expenses); provided, however, that nothing herein shall require the Sellers or their Affiliates to disclose any information to the Purchaser, any Designated Purchaser or their respective representatives if such disclosure would jeopardize any attorney-client or other legal privilege or contravene any applicable Law, fiduciary duty or agreement (it being understood that the Sellers shall cooperate in any reasonable efforts and requests for waivers that would enable otherwise required disclosure to the Purchaser, any Designated Purchaser or their respective representatives to occur without so jeopardizing privilege or contravening such Law, duty or agreement)~~, or to require the Sellers to disclose their Tax records~~. Such records may be sought under this Section 5.22(b) for any reasonable purpose, including to the extent reasonably required in connection with accounting, litigation, federal

416

securities disclosure or other similar needs of the Purchaser, any Designated Purchaser or their respective representatives (other than claims between the Sellers and the Purchaser or any of their respective Subsidiaries under this Agreement or any Ancillary Agreement). Notwithstanding the foregoing, (y) any and all such records may be destroyed by the Sellers if the Sellers send to the Purchaser written notice of their intent to destroy such records, specifying in reasonable detail the contents of the records to be destroyed; such records may then be destroyed after the sixtieth (60th) day following such notice unless the Purchaser notifies the destroying party that the Purchaser or any Designated Purchaser desire to obtain possession of such records, in which event the Sellers shall transfer or cause to be transferred the records to the Purchaser and the Purchaser shall pay all reasonable expenses of the Sellers in connection therewith and (z) the Sellers shall not be required to provide the Purchaser, any Designated Purchaser or their respective representatives access to, or copies of, any Tax records or audited financial statements covering any pre-Closing period, except as specifically required pursuant to the terms of this Agreement.

Section 5.23.    Certain Ancillary Agreements.[7297]

(a)    The Primary Parties and, to the extent applicable, the relevant EMEA Sellers, shall [use their **commercially** reasonable best efforts] to:

(i)    promptly negotiate in good faith with the relevant contract manufacturers and finalize the terms of the Contract Manufacturing Inventory Agreements based on the term sheet attached hereto as Exhibit F;

(ii)    [promptly negotiate in good faith with GDNT the GDNT Agreement based on the term sheet attached hereto as Exhibit H];

(iii)    [promptly negotiate in good faith with the LGN Joint Venture the LGN Distribution Agreement based on the term sheet attached hereto as Exhibit K; and]

(iv)    [promptly negotiate in good faith with NN Turkey the NN Turkey Agreements].

(b)    The Parties and the EMEA Sellers acknowledge that, as of the date hereof, the Business entertains several bilateral relationships with other businesses, business segments or divisions of certain Sellers or their Affiliates for the supply and/or development of products and services (including certain CVAS Products and CVAS Services). To the extent such relationships are required to be in place in order to fulfill customer commitments existing as of the Closing Date and which will continue thereafter (for the duration of any individual customer contract including frame contracts), the Primary Parties and the relevant EMEA Sellers shall use their **commercially** reasonable best efforts to negotiate, or to cause to be negotiated, in good faith commercially reasonable terms in order to address the interdependencies among businesses set forth on Exhibit 5.23, including through a Mutual Development Agreement, a Purchaser Supply Agreement and a Seller Supply Agreement [(the

---

[7297] Note to Seller:  Parties to discuss the Ancillary Agreements generally (including process timeline).

417

term sheets of which are attached hereto as Exhibits O, P and Q)] or other appropriate commercial arrangements.  The Primary Parties shall also use their **commercially** reasonable ~~best~~ efforts to negotiate in good faith the Subcontract Agreements. For the avoidance of doubt, other than the Intellectual Property License Agreement, the Transition Services Agreement and the Real Estate Agreements, the failure to execute and deliver at Closing any of the Ancillary Agreements shall not be deemed a failure of any condition precedent to this Agreement or allow any Party to terminate this Agreement.[98]

Section 5.24.   Closing Unaudited Financial Statements.   Prior to the Closing Date, the Sellers shall cause to be prepared and shall deliver to the Purchaser unaudited management statements of certain assets and liabilities of the Business as of the Closing Date and the related unaudited management statements of income of the Business for the fiscal year ended December 31, 2009 and the period from January 1, 2010 until the end of the last fiscal quarter prior to the Closing Date; provided, that if the Closing Date is less than ~~twenty-five~~**[fifteen** (~~25~~**15)]**[99] Business Days following the end of a fiscal quarter, then the last fiscal quarter prior to the Closing Date shall be deemed to be the previous fiscal quarter (together, the "**Closing Unaudited Financial Statements**").  The Closing Unaudited Financial Statements shall be prepared based upon the financial books and records maintained by the Sellers and the EMEA Sellers for the Business on the basis of the Nortel Accounting Principles and shall represent the Seller's good faith estimate of the selected balance sheet accounts, income statements and results from operations set forth therein for the Business for the applicable date and period. The Closing Unaudited Financial Statements (a) will not be prepared in accordance with GAAP, except as set forth in the Nortel Accounting Principles, (b) will include estimated costs that do not necessarily represent the costs that were actually allocated to the Business for the relevant periods (or that the Business will incur after the Closing), (c) will include assets that have not been tested for impairment or otherwise adjusted for fair value, (d) will reflect the estimated historical operation of the Business (including the Overhead and Shared Services and the Excluded Assets) for the periods specified therein and (e) will not represent the balance sheet accounts or the income statements that would have occurred if the Business had been operated by the Sellers as a "stand alone" entity.

Section 5.25.   Closing Audited Financial Statements.   The Sellers shall **cause KPMG (as their independent accountants) to** create the audited balance sheets of the Business and the related statement of earnings and cash flows for the Business for **(i)** the fiscal year ended December 31, 2009 **and (ii) the period from January 1, 2010 until the Closing Date** (the "**Closing Audited Financial Statements**").  The Closing Audited Financial Statements shall be prepared based upon the financial books and records maintained by the Sellers and the EMEA Sellers for the Business on the basis of GAAP**, consistently applied,** and shall present the selected balance sheet accounts, income statements and results from operations set forth therein for the Business for the applicable date and period, except that they will not represent the balance sheet accounts or the income statements that would have occurred if the Business had been operated by the Sellers as a "stand alone" entity.  The Sellers shall deliver the Closing Audited Financial Statements to the Purchaser as soon as reasonably practicable and in no event later than

---

[98] **Note to Seller:  TBD in connection with visa employees and Local Sale Agreements.**
[99] **Note to Seller:  TBD.**

**107**

418

[four (4)] months following the Closing Date.  **For the avoidance of doubt, Sellers shall furnish customary representation letters in connection with the Closing Audited Financial Statements.**

Section 5.26.   Additional Bankruptcy Proceedings; Adverse International Injunctions.[73][100]

(a)   If at any time prior to the Closing Date, (i) any Seller that is a Non-Debtor Seller as of the date hereof shall have commenced Bankruptcy Proceedings in any country or other jurisdiction (other than the U.S., Canada or the United Kingdom) (an "**Additional Bankruptcy Proceeding**"), (ii) there shall be in effect any Law, material order, injunction, decree or judgment of any court or other Government Entity prohibiting in such jurisdiction (other than the U.S., Canada or the United Kingdom) the consummation of the transactions contemplated hereby (such Law, material order, injunction, decree or judgment, an "**Adverse International Injunction**") or (iii) any entity is not deemed an Other Seller pursuant to clause (ii) of the definition thereto, then (A) the Main Sellers shall reasonably promptly notify the Purchaser of the commencement of such Additional Bankruptcy Proceeding, the issuance of such an Adverse International Injunction or the exclusion of such entity as an Other Seller, as applicable, and, to the extent the Main Sellers are aware of the same, identify the Assets that are subject to such Additional Bankruptcy Proceeding, Adverse International Injunction or belong to such entity listed on Exhibit A (the "**Restricted Assets**") and (B) the Parties shall, in respect of the Restricted Assets, use their **commercially** reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, and cooperate with each other in order to do, all things necessary, proper or advisable under applicable Law to assign all of Sellers' right, title and interest in the Restricted Assets to Purchaser or a Designated Purchaser, as applicable, as contemplated hereby on the Closing Date, notwithstanding the Additional Bankruptcy Proceeding, Adverse International Injunction or inability of the Main Sellers to cause such entity listed on Exhibit A to sign this Agreement, as applicable.

(b)   If, ten (10) Business Days prior to the Closing Date, it has become apparent to the Parties that such Additional Bankruptcy Proceeding, Adverse International Injunction or inability of the Main Sellers to cause such entity listed on Exhibit A to sign this Agreement, will prevent a Seller or entity listed on Exhibit A, as applicable (the "**Restricted Seller**") from assigning the Restricted Assets to the Purchaser or a Designated Purchaser, as applicable, as of the Closing Date, then, as of the Closing Date, such Restricted Assets shall automatically be deemed Excluded Assets hereunder, the Restricted Seller shall be excused from delivering the Restricted Assets and, without prejudice to all other obligations of the Purchaser and the other Sellers hereunder, Purchaser shall be relieved from its rights and obligations to acquire such Restricted Assets or assume any Assumed Liabilities in respect thereof (the "**Restricted Liabilities**") and  the Purchase Price shall be reduced by an amount equivalent to the Market Value of such Restricted Assets and Restricted Liabilities (the "**Downward Adjustment**").[; it being understood, however, that if the Market Value in**

---

[73][100] Note to Seller:  Subject to the Purchaser's completion of due diligence on the assets.  Likely scenarios to be discussed.

**108**

**419**

**respect of such Restricted Assets and Restricted Liabilities is not a positive number, then such Market Value shall be deemed to be zero and there shall not be any adjustment to the Purchase Price.][101]**

(c)    For a period of [one-hundred eighty (180) days] following the Closing, the Sellers and the Purchaser shall, in respect of the Restricted Assets that have become Excluded Assets pursuant to Section 5.26(b), continue to use their **commercially** reasonable ~~best~~ efforts to take, or cause to be taken, all actions and to do, or cause to be done, and cooperate with each other in order to do, all things necessary, proper or advisable under applicable Law to assign such Restricted Assets of the relevant Restricted Seller to Purchaser or a Designated Purchaser, as promptly as reasonably practicable within such period.  To the extent the Restricted Assets are assigned to Purchaser or a Designated Purchaser, as applicable, Purchaser or a Designated Purchaser shall assume the related Restricted Liabilities, then as of the transfer date (i) the Restricted Assets and the Restricted Liabilities shall be deemed respectively Assets and Assumed Liabilities hereunder and (ii) Purchaser shall pay to the Distribution Agent by wire transfer to the account designated by the Main Sellers pursuant to Section 2.4 an amount in cash equal to the Downward Adjustment.

Section 5.27.    Finalization of Schedules to Transition Services Agreement; Disputes.[74][102]

(a)

Section 5.28.    Avoidance Actions. The Sellers covenant that they shall not commence any action under sections 544 through 551, 553 and 558 of the U.S. Bankruptcy Code against any customer, contract party or vendor of the Business in relation to the Business.

Section 5.29.    Competing Transaction. From the date of this Agreement until the entry of the U.S. Bidding Procedures Order, and from the date of the conclusion of the Auction (as defined in the U.S. Bidding Procedures Order) until the Closing Date or termination of this Agreement, neither any Seller nor any Affiliate of any Seller shall, directly or indirectly through any of its officers, directors, employees, agents, professional advisors or other representatives (collectively, the "**Representatives**"), (i) solicit, initiate or encourage or engage in discussions or negotiations with respect to any proposal or offer from any Person (other than the Purchaser or its affiliates) relating to in each case any transaction that would be considered an Alternative Transaction (a "**Competing Transaction**"), (ii) furnish any information with respect to, or participate in, or assist, any effort or attempt by any Person to do or seek the foregoing, (iii) execute any letter of intent or agreement providing for a Competing Transaction, or (iv) seek or support Bankruptcy Court approval of a motion or [Order] inconsistent with the transactions contemplated herein (provided, however, that nothing contained herein shall prohibit the Sellers from providing any Person with the Bidding Procedures and related documents, answering

---

[101] **Note to Seller:  While Purchaser will examine whether this is even possible, Purchaser's position is that the exclusion of Sellers (which is not within Purchaser's control) should not increase the purchase price.**

[74] ~~NTD~~[102] **Note to Seller:**  Section to be negotiated and completed in connection with the TSA discussions. **Purchaser expects appropriate guarantees of day-one readiness.**

**Error! Unknown document property name.**

420

questions about the Bidding Procedures or announcing the execution of this Agreement or the Auction). Notwithstanding the foregoing, from the date of this Agreement until the entry of the U.S. Bidding Procedures Order, the Sellers may provide continued access to written due diligence materials about the Business in an electronic data room (including written responses to requests for information made after the date hereof), to only such Person or Persons (and their representatives) that (A) have access to such electronic data room as of the date hereof and (B) have satisfied the requirements of paragraph (a) of the "Participation Requirements" of the U.S. Bidding Procedures Order within ten (10) Business Days from the date hereof (it being understood that, during such ten (10) Business Day period, the Sellers will be allowed to (x) request such Persons to enter into amendments to their existing confidentiality agreements in order to render them compliant with the requirements of the U.S. Bidding Procedures, (y) discuss and negotiate such amendments with those Persons and (z) execute such amendments, and each such action shall not constitute a breach of this Section 5.29); provided, however, that the Sellers must provide the Purchaser at least equivalent access to all such written due diligence materials. Without prejudice to any other methods or actions that may result in the cure of any breach of this Section 5.29, the Parties acknowledge and agree that in the event that any officer or other employee of any Seller acting alone (without the assistance of outside advisors) in violation of a corporate policy approved by the board of directors of NNC takes an action that constitutes a breach of clause (i) of this Section 5.29 but does not constitute a breach of any other clause of this Section 5.29, such breach shall be deemed cured in the event such action ceases and one or more of the Sellers notifies the counterparty or counterparties to the potential Competing Transaction in writing that the Sellers will not undertake such Competing Transaction, in each case no later than the fifth (5th) day after the Sellers become aware of such breach (for such purposes excluding the knowledge of the employee or officer whose action constitutes such breach), provided that such action that constituted the breach did not involve substantive negotiations regarding the terms of such Competing Transaction.

Section 5.30. Purchaser Financial Statements. To the extent the Closing has not occurred prior to [March 1, 2010], prior to the Closing the Purchaser shall provide to the Main Sellers true and complete copies of the audited consolidated balance sheets of the Purchaser and its consolidated Subsidiaries as of December 31, 2009 and December 31, 2008 and the related consolidated audited statements of income, cash flows and statements of changes of stockholders' equity for the years then ended, accompanied by the reports thereon of the Purchasers' independent auditors. Such financial statements shall be prepared based upon the financial books and records maintained by the Purchaser in accordance with GAAP and fairly present in all material respects the consolidated financial position, results of operations, cash flows and stockholders' equity of the Purchaser and its consolidated Subsidiaries as of their respective dates and for the respective periods indicated.

## ARTICLE VI

## TAX MATTERS

Section 6.1. Transfer Taxes.

**110**

NY\1582469.7

[New York #207]434 v4]                                    110                      Error! Unknown document property name.