**421**

(a)    The Parties agree that the Purchase Price is exclusive of any Transfer Taxes. The Purchaser shall (on behalf of itself and the Designated Purchasers) promptly pay directly to the appropriate Tax Authority all applicable Transfer Taxes ~~that may be~~ imposed upon or payable or collectible or incurred ~~in connection with this Agreement or the transactions contemplated herein, or that may be imposed upon or payable or collectible or incurred in connection with the execution of any other Transaction Document~~, **in each case, as a direct result of the transfer of Assets to the Purchaser or a Designated Purchaser pursuant to this Agreement**; provided, that if any such Transfer Taxes are required to be collected, remitted or paid by a Seller or any Subsidiary, Affiliate, representative or agent thereof, such Transfer Taxes shall be paid by the Purchaser to such Seller, Subsidiary, Affiliate**, representative** or agent, as applicable, at the Closing or thereafter, as **required by applicable Law and** requested of or by the applicable Seller**. To the extent that any Seller or any Subsidiary, Affiliate, representative or agent thereof is required to collect, remit or pay such Transfer Taxes but is entitled to a deduction, credit or refund for such Transfer Taxes, such Seller shall pay to Purchaser or the relevant Designated Purchaser the amount of such deduction, credit or refund within thirty (30) days of the use or receipt of such deduction, credit or refund by such Seller or other Person. The Sellers hereby agree to claim or apply for any deduction, credit or refund in all jurisdictions where permissible pursuant to applicable Law.** For the avoidance of doubt, Purchaser shall ~~remain~~**be** liable in respect of any Transfer Taxes **as provided in this Section 6.1(a)** regardless of the date that the Assets are removed from the premises of a Seller or any Seller's supplier. Upon request from a Seller, the Purchaser shall provide to such Seller an original receipt (or such other evidence as shall be reasonably satisfactory to such Seller) evidencing the payment of Transfer Taxes by the Purchaser to the applicable Tax Authority under this Section 6.1(a).

(b)    [The Sellers, **the Purchaser and any Designated Purchasers shall cooperate in timely filing all Tax Returns as may be required in connection with the payment of such Transfer Taxes. The Sellers,** on the one hand, and the Purchaser and the Designated Purchasers, on the other hand, shall, as appropriate, **use commercially reasonable efforts to** execute and deliver all instruments and certificates reasonably necessary to enable the other to comply with any filing requirements and Laws relating to any such Transfer Taxes.][75103]

(c)    If the Purchaser or any Designated Purchaser wishes to claim any exemption relating to, or a reduced rate of, or make an election with the effect of reducing, Transfer Taxes, in connection with this Agreement or the transactions contemplated herein, or in connection with the execution of any other Transaction Document, the Purchaser or any Designated Purchaser, as the case may be, shall be solely responsible for ensuring that such exemption, reduction or election applies and, in that regard, shall provide the Sellers prior to Closing with its permit number, GST, VAT or other similar registration numbers and/or any appropriate certificate of exemption, election and/or other document or evidence to support the claimed entitlement to such exemption or reduction by the Purchaser or such Designated

---

[75103] Note to Purchaser: Please list required certificates, and Seller will determine on a case-by-case basis which it can provide.

**Error! Unknown document property name.**

**422**

Purchaser, as the case may be.  All Parties shall make reasonable efforts to cooperate to the extent necessary to obtain any such exemption or reduction.

(d)    Provided that in the opinion of the relevant Sellers **or the Purchaser** the sale qualifies for such an election **or application**, the Purchaser and the relevant Designated Purchasers shall jointly execute with the applicable Seller an election under Section 167(1) of Part IX of the Excise Tax Act (Canada) and any equivalent, **application for "Transfer of Going Concern" treatment in the United Kingdom and any similar** election **or application** provided under provincial**applicable** Laws, in the forms prescribed for such purposes, such that the sale of the Assets will take place without payment of any GST**, value-added Tax or similar Tax**. The Purchaser or the relevant Designated Purchaser, as the case may be, shall file within the prescribed filing period all forms supporting the said**such** election **or application** with the relevant Tax Authority, together with its Tax Returns for the applicable reporting periods during which the sale of the Assets contemplated herein occurs**. The Sellers and the Purchaser hereby agree that the sale of the assets of Nortel Networks Australia Pty Limited constitutes the supply of a going concern and is not subject to goods and services Tax.**

**(e)    Notwithstanding anything to the contrary, the Purchaser or any Designated Purchaser that is a GST registrant may withhold the amount of any GST payable until the earlier of (i) the day the relevant Seller is legally required to remit such GST to the appropriate Tax Authorities; or (ii) the day the Purchaser or any Designated Purchaser receives its GST credit or refund, in order to enable such Purchaser or Designated Purchaser to seek to receive its GST credit or refund before such payment is legally required to be remitted to the appropriate Tax Authorities by the relevant Seller.**

Section 6.2.    <u>Withholding Taxes</u>.  To the extent that the Purchaser or a Designated Purchaser is required under the Code or any provision of U.S. state or local, or non-U.S. Law to deduct and withhold an amount on payment of the Purchase Price, such withheld amounts shall be treated for all purposes of this Agreement as having been paid to the Persons in respect of which such deductions and withholdings were made.  The Purchaser and the Designated Purchasers shall promptly remit such withheld amounts to the appropriate Government Entity.  None of the Parties is aware of any obligation to deduct and withhold any amounts from the Purchase Price under the Code or any provision of U.S. state or local, or non-U.S. Law, with respect to the making of such payment.  If any of the Parties learns of any such obligation on or prior to the Closing d**D**ate, then (i) in the case of a Seller, such Seller shall promptly provide reasonable notice of such obligation to the Purchaser and (ii) in the case of the Purchaser, the Purchaser shall promptly provide reasonable notice of such obligation to the Sellers.

Section 6.3.    <u>Tax Characterization of Payments Under This Agreement</u>.  The Sellers and the Purchaser agree to treat all payments made either to or for the benefit of the other Party under this Agreement (other than payment of the Estimated Purchase Price and any interest payments) as adjustments to the Purchase Price for Tax purposes to the extent permitted under applicable Tax Law.

Section 6.4.    <u>Apportionment of Taxes</u>.

**112**

NY\1582469.7

[New York #2071434 v4]                                    112                    **Error! Unknown document property name.**

**423**

(a)    Except as otherwise provided in this ARTICLE VI, (i) the Sellers shall and shall cause the other Sellers, as the case may be, to bear (A) all Taxes of any kind relating to the Assets or the conduct or operation of the Business for all Tax periods or portions thereof ending on or before the Closing Date and (B) all Taxes of any Seller imposed on or measured by such Seller's net income**, gross income, capital, gross receipts, profits, and all Taxes of the same or of a similar nature,** for any Tax period and (ii) the Purchaser shall and shall cause the Designated Purchasers to bear all Taxes relating to the Assets or the conduct or operation of the Business for all Tax periods or portions thereof beginning after the Closing Date.

(b)    For purposes of this Agreement, any Taxes for a **"Straddle Period"** (a Tax period that includes, but does not end on, the Closing Date) shall be apportioned between the Sellers, on the one hand, and the Purchaser and the Designated Purchasers, on the other hand, based on the portion of the period ending on and including the Closing Date and the portion of the period beginning after the Closing Date, respectively.  The amount of Taxes shall be allocated between portions of a Straddle Period in the following manner: (i) in the case of a Property Tax ~~(other than Transfer Taxes allocated under Section 6.1)~~, the amount of Tax allocable to a portion of the Straddle Period shall be the total amount of such Tax for the period in question multiplied by a fraction, the numerator of which is the total number of days in such portion of such Straddle Period and the denominator of which is the total number of days in such Straddle Period, and (ii) in the case of all other Taxes (other than Transfer Taxes allocated under Section 6.1), such Taxes shall be determined from the books and records of the relevant Person as though the taxable period terminated at the close of business on the Closing Date.

Section 6.5.    Records.

(a) Notwithstanding the provisions of Section 5.22, (i) after the Closing Date, the Purchaser and the Designated Purchasers, on the one hand, and the Sellers, on the other hand, will make available to the other, as reasonably requested, and to any Tax Authority, all information, records or documents relating to liability for Taxes with respect to the Assets, the Assumed Liabilities, or the Business for all periods prior to or including the Closing Date (including Straddle Periods), and will preserve such information, records or documents until the expiration of any applicable statute of limitations or extensions thereof, and (ii) in the event that one party needs access to records in the possession of a second party relating to any of the Assets, the Assumed Liabilities or the Business for purposes of preparing Tax Returns or complying with any Tax audit request, subpoena or other investigative demand by any Tax Authority, or for any other legitimate Tax-related purpose not injurious to the second party, the second party will allow representatives of the other party access to such records during regular business hours at the second party's place of business for the sole purpose of obtaining information for use as aforesaid and will permit such other party to make extracts and copies thereof as may be necessary or convenient.  The obligation to cooperate pursuant to this paragraph shall terminate at the time the relevant applicable statute of limitations expires (giving effect to any extension thereof).

NY\1582469.7

[New York #2071434 v4]

Error! Unknown document property name.

**424**

(b) At any time ~~within the ten (10) years immediately following the Closing~~**prior to the Escrow Deadline**, the Sellers may cause copies of Restricted Technical Records to be placed into escrow with the Records Custodian, who shall hold such Restricted Technical Records for a term ending ~~no later than ten (10) years after the Closing Date~~**on the Escrow Deadline** in accordance with an escrow agreement between the Purchaser (or the Designated Purchaser, as applicable), the Sellers and the Records Custodian, in form satisfactory to the Purchaser (or the Designated Purchaser) and the Sellers. The Purchaser (or the Designated Purchaser) shall have no obligation to provide any assistance to the Sellers with respect to placing copies of Restricted Technical Records into escrow unless the Sellers pay all of the Purchaser's (or the Designated Purchaser's) reasonable costs and expenses in connection with the foregoing, including a reasonable per diem rate for access to former employees of NNL or Nortel Networks Technology Corporation ("**NNTC**"), as the case may be (based on the total compensation of the employee at the time access is provided). The escrow agreement will provide for access to the copies of the Restricted Technical Records only by the relevant Canadian Tax Authority or by Tax advisors of any purchaser ("**Tax Credit Purchaser**") relating to the scientific research and experimental development tax credits of the Sellers under the Income Tax Act (Canada), and only if such advisors have executed an appropriate confidentiality agreement in form satisfactory to the Purchaser (or the Designated Purchaser), acting reasonably. The access permitted by the escrow agreement shall be only for the limited purpose of defending any audit, claim or action by any Canadian Tax Authority in respect of the characterization of expenditures by NNL or NNTC as qualified expenditures on scientific research and experimental development for purposes of the applicable provisions of the Income Tax Act (Canada) ("**Qualified Expenditures**").

(c) The Purchaser or the Designated Purchaser shall use reasonable efforts to make available to the relevant Tax Authority or Tax advisors of the Tax Credit Purchaser, those former employees of NNL or NNTC, as the case may be, with direct knowledge of the Qualified Expenditures who are then employed by the Purchaser and whose cooperation is necessary for the purpose of defending any audit, claim or action by any Tax Authority of the characterization of expenditures by NNL or NNTC, as the case may be, as Qualified Expenditures, and provided such advisors have executed an appropriate confidentiality agreement satisfactory to the Purchaser or the Designated Purchaser.

(d) **The Purchaser shall have no obligation to provide any access under this provision unless the Sellers (if there is no Tax Credit Purchaser in respect of the request for access) or the Tax Credit Purchaser pays all the Purchaser's reasonable expenses in connection with the foregoing provisions, including a reasonable per diem rate for access to former employees of NNL or NNTC, as the case may be (based on the total compensation of the employee at the time access is provided).**

(**e**) The Sellers shall have no obligation to provide any access under this provision unless the Purchaser pays all of the Sellers' reasonable expenses in connection with the foregoing provisions, including a reasonable per diem rate for access to employees of the Sellers (based on the total compensation of the employee at the time access is provided).

**114**

~~Error! Unknown document property name.~~

425

Section 6.6.    Tax Disclosure.  Notwithstanding anything to the contrary in this Agreement, except as reasonably necessary to comply with applicable securities laws and regulations, any Party may (i) consult any Tax adviser regarding the U.S. and Canadian federal income Tax treatment or Tax structure of the transactions contemplated by this Agreement, and (ii) disclose to any and all Persons, without limitation of any kind, the U.S. and Canadian federal income Tax treatment and Tax structure of the transactions contemplated hereunder and all materials of any kind (including opinions or other Tax analyses) that are provided to such Person relating to such Tax treatment and Tax structure (but without disclosure of identifying information or any non-public commercial or financial information); provided, however, that clause (ii) of this Section 6.6 shall not apply until the date of the public announcement of the execution of this Agreement and performance of the transactions contemplated hereunder. For this purpose, "Tax structure" is limited to any facts relevant to the U.S. and Canadian federal income Tax treatment of the transactions contemplated hereunder.

Section 6.7.    Tax Returns.

(a)    The Sellers shall be responsible for the preparation and timely filing (taking into account any extensions received from the relevant Tax Authorities) of all Tax Returns in respect of the Assets or the Business, for all Pre-Closing Taxable Periods (other than any Tax Returns with respect to Transfer Taxes ("**Transfer Tax Returns**"), the preparation of which is described below in Section 6.7(b)).  Such Tax Returns shall be true, correct and complete in all material respects. Except as otherwise provided in this Agreement, all Taxes indicated as due and payable on such Tax Returns shall be paid by (or shall be caused to be paid by) Sellers as and when required by Law.  **The Sellers shall provide drafts of such Tax Returns with respect to non-income Taxes to the Purchaser no later than fifteen (15) Business Days prior to the relevant due date and shall in good faith consider any comments made by the Purchaser with respect thereto.**

(b)    Each Transfer Tax Return with respect to Transfer Taxes imposed in respect of this Agreement and the transactions contemplated herein or in respect of the execution of any other Transaction Document shall be prepared by the Party that has primary responsibility for filing such Transfer Tax Return pursuant to the applicable Tax Laws.  Any Transfer Tax Returns prepared by the Sellers pursuant to this Section 6.7(b) shall be made available to the Purchaser at least ~~five~~**ten** (5**10**) Business Days before such Tax Returns are due to be filed. ~~Notwithstanding the above, the Sellers shall use their reasonable best efforts to~~ **and shall not be filed without the Purchaser's prior written consent, which shall not be unreasonably withheld. The Sellers shall** make available to the Purchaser such information as will enable the Purchaser to review that portion of the Transfer Tax Returns applicable to the sale and purchase transaction contemplated by this Agreement no later than ~~eight~~**ten** (8**10**) Business Days prior to the date on which such Transfer Tax Returns are due to be filed. ~~Purchaser shall be entitled to comment on any Transfer Tax Return prepared by a Seller prior to making any payment in respect thereof, such comments to be provided at least three (3) Business Days before such Transfer Tax Returns are due to be filed, and the Sellers shall in good faith consider any comments made by the Purchaser with respect thereto.  In the event of disagreement between the Parties, the relevant Transfer Tax Return shall be filed in accordance~~

NY\1582469.7

[New York #2071434 v4]                115              Error! Unknown document property name.

426

~~with Seller's reasonable determination, it being understood that the Purchaser shall remain~~
~~responsible for any Transfer Taxes whether or not shown on such Tax Return.~~  The Purchaser
shall pay to the Sellers any amount of Transfer Taxes payable in respect of Transfer Tax
Returns to be filed by the Sellers pursuant to this Section 6.7(b) at least one (1) Business Day
before such Transfer Tax becomes due and payable~~.~~**, in each case to the extent such Transfer**
**Taxes are the responsibility of the Purchaser pursuant to Section 6.1(a).**

      (c)    The Purchaser or a Designated Purchaser shall be responsible for the
preparation and timely filing (taking into account any extensions received from the relevant
Tax Authorities) of all Tax Returns with respect to the Assets or the Business for all Straddle
Periods.  Such Tax Returns shall be true, correct and complete in all material respects.  All
Taxes indicated as due and payable on such Tax Returns shall be paid by (or shall be caused to
be paid by) the Purchaser or a Designated Purchaser as and when required by Law, except for
such Taxes that are the responsibility of Sellers pursuant to this ARTICLE VI.  Taxes that are
the responsibility of the Sellers pursuant to this ARTICLE VI shall be paid by the Sellers to the
Purchaser or Designated Purchaser no later than three (3) Business Days prior to the due date
for the applicable Straddle Period Tax Return.

      (d)    The Sellers shall be entitled to review and comment on any Tax Return
(other than a Transfer Tax Return described in Section 6.7(b)) prepared by the Purchaser or a
Designated Purchaser for any Straddle Period before any such Tax Return is filed.  The
Purchaser shall submit a draft of any such Tax Return to the Main Sellers at least ~~ninety~~
~~(90)~~[_____] days before the date such Tax Return is required to be filed with the relevant Tax
Authority.  The Main Sellers shall have ~~thirty (30)~~[_____] days after the date of receipt thereof
to submit to the Purchaser, in writing, the Main Sellers' written comments with respect to such
Tax Return.  The Purchaser shall notify the Main Sellers within ~~fifteen (15)~~[_____] days after
receipt of such comments of (a) the extent, if any, to which the Purchaser accepts such
comments and will file such Tax Return in accordance therewith and (b) the extent, if any, to
which the Purchaser rejects such comments.  To the extent the Purchaser rejects the comments
of the Main Sellers, the Purchaser and the Main Sellers promptly shall negotiate in good faith
to resolve their disagreements; if no agreement has been reached within ~~ten (10)~~[_____] days,
the Parties immediately shall appoint an Independent Auditor to determine the correct manner
for reporting the items that are in dispute and shall provide to the Independent Auditor all
relevant information.  The Independent Auditor shall have ~~thirty (30)~~[_____] days to submit its
determination, which shall be binding upon the Parties, and the Purchaser shall file such Tax
Return in accordance therewith.  The fees and expenses of the Independent Auditor shall be
paid by the Party whose position is deemed to be least correct by the Independent Auditor.

      **(e)**    **Prior to Closing, the Seller shall deliver to the Purchaser a certificate**
**issued by the Ministry of Finance of British Columbia pursuant to section 99 of the Social**
**Service Tax Act (British Columbia) and a similar certificate issued under similar**
**legislation in other relevant provinces (if applicable) indicating that all requisite Taxes**
**collectable or payable under such Act and similar legislation have been paid by the**
**Sellers.**

**116**

**Error! Unknown document**
**property name.**

Section 6.8.    Canadian Tax Election.

**427**

(a)    The Sellers and the Purchaser ~~acknowledge that a portion of the Assets transferred pursuant to this Agreement by the Sellers to the Purchaser or each Designated Purchaser which is a resident of Canada for purposes of the Income Tax Act (Canada) is being transferred to the Purchaser (or the relevant Designated Purchaser) in consideration for the Purchaser (or the relevant Designated Purchaser) assuming prepaid obligations of the Seller to deliver goods or provide services in the future.  The Sellers and the Purchaser (or the relevant Designated Purchaser) will prepare, execute and file, on a timely basis and using any prescribed form, a joint election under subsection 20(24) of the Income Tax Act (Canada) as to such assumption hereunder, and prepare their respective Tax Returns~~ **or Designated Purchaser shall elect jointly under Section 22 of the Income Tax Act (Canada) and the corresponding provision of any other provincial legislation to the sale of the CIP Receivables** in a manner consistent with ~~such joint election.  The elected amount will be jointly determined by the Sellers and the Purchaser (or relevant Designated Purchaser), acting reasonably.  The Sellers and the Purchaser (or relevant Designated Purchaser) will make any required elections under corresponding provincial or territorial law and the foregoing provisions will apply mutatis mutandis in respect thereof.~~**the Allocation.**

~~(b)    To the extent the Seller and the Purchaser (or the relevant Designated Purchaser) cannot agree on the amount to be elected under subsection 20(24) of the Income Tax Act (Canada), the Seller and the Purchaser (or the relevant Designated Purchaser) promptly shall negotiate in good faith to resolve their disagreements; if no agreement has been reached within five (5) days, the relevant Parties immediately shall appoint an Independent Auditor to determine the correct amount to be elected and shall provide to the Independent Auditor all relevant information.  The Independent Auditor shall have thirty (30) days to submit its determination, which shall be binding upon the Parties, and the Parties shall file all relevant elections and Tax Returns in accordance therewith.  The fees and expenses of the Independent Auditor shall be paid by the Party whose position is deemed to be least correct by the Independent Auditor.~~

Section 6.9.    Purchase Price Allocation.

(a) The Parties shall **[**(i) first allocate to the tangible Assets **and the CIP Receivables** a proportion of the Purchase Price (and to the extent properly taken into account under applicable Tax Laws, the Assumed Liabilities) equal to **[**the net book value**]** of such Assets as of the Closing Date and (ii) then allocation the balance of the Purchase Price, as adjusted in clause (i) of this Section, to the intangible Assets.  **Such allocation shall be consistent with the allocation prepared pursuant to Section 2.2.4.]**[104]

(b) To the extent necessary to file ~~Transfer~~ Tax Returns, the Parties agree to negotiate in good faith to determine an allocation of the Purchase Price (and, to the extent properly taken into account under the applicable Tax Laws, the Assumed Liabilities) among the Assets in accordance with the principles of Section 1060 of the Code and the Treasury

---

[104] **TBD**

**Error! Unknown document property name.**

**428**

regulations promulgated thereunder and other applicable Tax Laws (such allocation, a "**Partial Allocation**"). The Partial Allocation shall be consistent with the principles of Section 6.9(a). If the Parties do not reach agreement on a Partial Allocation after negotiating in good faith, the Partial Allocation shall be submitted to the Independent Auditor, which shall prepare a final Partial Allocation; provided, however, that if a different Partial Allocation is required by a Government Entity (including, for this purpose, an allocation required, approved or authorized pursuant to a Bankruptcy Proceeding), then the Partial Allocation shall be modified as necessary to be consistent with the required allocation (but in all cases shall be subject to the principles of Section 6.9(a) **to the extent permitted by such Government Entity**). Notwithstanding the preceding sentence, if the Parties have not reached agreement on the Partial Allocation and the Independent Auditor has not submitted its determination on or before the date that a Transfer Tax Return is required to be filed with the relevant Tax Authority (giving effect to any valid extensions) pursuant to Section 6.7(b), then such Transfer Tax Return shall be timely filed in the manner that the Party with primary responsibility for filing such return**Purchaser** reasonably determines and **the Party responsible for filing such Transfer Tax Return** shall, upon receiving the Independent Auditor's later determination and to the extent permitted under applicable Law, promptly file an amended return in accordance therewith. The Parties agree (i) to be bound by the final Partial Allocation accepted by the Parties or prepared by the Independent Auditor (as modified to be consistent with the allocation required by a Government Entity, as described in the foregoing sentence), as applicable, and (ii) to act in accordance with the allocations contained in such final Partial Allocation for all purposes relating to Transfer Taxes, including the preparation, filing and audit of any Transfer**of filing** Tax Returns.

Section 6.10. Other Tax Matters. **The Sellers, on the one hand, and the Purchaser, on the other hand, shall cooperate fully with each other in the conduct of any audit, litigation or other proceeding or Action relating to Taxes involving the Assets or the Partial Allocation.** [The Sellers shall promptly notify the Purchaser in writing upon receipt by any Seller of notice of any pending or threatened Tax audit, assessment or Action relating to the income, properties or operations of the Sellers that reasonably may be expected to relate to or give rise to a Lien on the Assets prior to Closing, other than Permitted Encumbrances.] The Sellers, on the one hand, and the Purchaser, on the other hand, shall promptly notify the other in writing upon receipt of written notice of any pending or threatened Tax audit, assessment or Action challenging the Partial Allocation in a material way.

## ARTICLE VII

## EMPLOYMENT MATTERS

Section 7.1. Employment Obligations with Respect to Non-Union Employees. Except for the provisions of Section 7.1.1(a)-(d) and Section 7.1.2(c)(iii), which shall apply to all Transferred Employees, the provisions of this Section 7.1 shall apply only to Non-Union Employees. Subject to the clarifying wording in Section 7.1.1(a), and the provisions relating to [•], the provisions of this Agreement shall not apply to EMEA Employees.

7.1.1. Employment Terms.

**429**

(a)    The Purchaser hereby agrees to offer employment to ~~the number of Employees employed by Sellers in each country that is at least equal to the number of employees set forth for each country in Section 7.1.1 of the Sellers Disclosure Schedule (which Section 7.1.1 of the Sellers Disclosure Schedule~~**a minimum of [one thousand seven hundred (1,700) Employees][105], which** shall include all Employees who transfer by operation of Law (including all Union Employees employed in Canada) [and all Transferring Employees, whose employment shall be governed by the EMEA Asset Sale Agreement (for the avoidance of doubt, no Offers will be required to be made to ARD Transferring Employees (as defined in the EMEA Asset Sale Agreement) whose contracts of employment will transfer to the Purchaser by operation of Law), but the number of Transferring Employees will be included within the minimum number set forth above, and the terms of Offers made to Non-ARD Transferring Employees (as defined in the EMEA Asset Sale Agreement) will be governed by the EMEA Asset Sale Agreement)][76]. [Within thirty (30) days following the granting of the U.S. Sale Order and the Canadian Approval and Vesting Order,][106] the Purchaser shall notify the Sellers of the identity of the Employees on Section 4.11(b) of the Sellers Disclosure Schedule by unique identifier (the "**Identified Employees**") to whom the Purchaser or a Designated Purchaser intends to provide a written offer of employment or notice of continued employment (each an "**Offer**" and collectively, the "**Offers**"); provided that, promptly after the date hereof, the Sellers and their Affiliates have provided the Purchaser with access to such information as the Purchaser reasonably requires in accordance with Section 5.6(a) and Section 7.4(e**d**) in order to make such identifications (except as prohibited by Law); provided, further, that up to ~~three (3)~~**two** weeks prior to the Closing Date and subject to Section 7.4(g), the Purchaser shall be permitted to notify the Sellers of names of additional Employees who remain employed with the Sellers at the time of such notice that the Purchaser shall wish to make an Offer to in the event that the initial Employees who receive Offers do not meet the contingencies in the Offer set forth below (other than the contingency in clause (D)) or do not accept the Offer, and such additional Employees shall be deemed to be Identified Employees upon the later to occur of the initial Employees' (who receive Offers) failure to meet the contingencies in the Offer or accept the Offer and Purchaser's notice to Seller of the names of such additional employees. ~~For the avoidance of doubt, Sellers shall not be required to continue the employment of any such additional~~ **(such employees, "Additional Employees")**. Promptly following Purchaser's notification to Seller of Identified Employees, but in any event no later than the time required to provide the Offer Consideration Period described below, the Purchaser shall, or shall cause a Designated Purchaser to, extend Offers to the Identified Employees. ~~Such Offers to Identified Employees (who are not Transferring Employees and whose employment does not transfer by operation of Law to the Purchaser or Designated Purchaser) shall be in a form agreed by the Primary Parties and in compliance with applicable~~

---

[105] **Note to Seller:  Parties to discuss a mechanism where the Purchaser may hire (or retain as consultants) additional "transitional" employees above and beyond the 1,700 employees noted herein (as such number may be increased by the Purchaser) to the extent that such employees are not coming over in connection with the TSA.  Purchaser contemplates that such "transitional employees" would be employed by the Purchaser for a limited period of time following Closing.  The Purchaser would not covenant to any ongoing obligations with respect to such employees.**

[76] ~~Note to Seller:  To be discussed in conjunction with the EMEA ASA.~~
[106] **Time period to be discussed.**

NY\1582469.7

**Error! Unknown document property name.**

430

~~Law with such employment to take effect under the terms stated herein as of the Effective Hire Date, as defined below~~**The Sellers shall have the right to review any form of Offer with respect to a particular jurisdiction (and any Offer that deviates in any material respect from the form of Offer with respect to the relevant country)**. Except with respect to Union Employees, such Offers shall, except to the extent otherwise required by Law, be for employment on terms and conditions that are substantially comparable to those terms and conditions of employment of similarly situated employees of the Purchaser or a Designated Purchaser, as applicable and, without limiting the generality of the foregoing, shall include (i) an annual base salary and annual target incentive for each such Employee that is ~~equal~~**substantially comparable** to the annual base salary and annual target incentive for ~~such Employee as set out in the Employee Information, (ii) employment in a reasonably comparable position as set out for the Employee in the Employee Information, (iii) a location reasonably contiguous to their current location as set out in the Employee Information and (iv~~**similarly situated employees of the Purchaser or a Designated Purchaser, as applicable and (ii**) other terms and conditions of employment as set forth in this Section 7.1. The Purchaser shall provide in its Offers that the Employee's acceptance of such Offer will be deemed to be a consent to the transfer of such Employee's particular Employee Record as provided in Section 7.4(e). ~~For purposes of this Agreement, to the extent certain terms and conditions of employment are required to be maintained under applicable Law or Seller Employee Plans in order to avoid Sellers' incurring severance or other employment termination obligations or Liability under the WARN Act with respect to Employees at any time on or after the Closing Date such terms and conditions shall be deemed to be required by applicable Law.~~ Seller shall provide to the Purchaser such available and relevant information in accordance with Section 5.6(a), and Seller and Purchaser shall cooperate in good faith, so as to enable Purchaser to comply with its undertakings under this Section 7.1.1. Employees' employment with Purchaser or a Designated Purchaser or, with respect to Employees whose employment transfers by operation of Law, continued employment after the Employee Transfer Date, shall not include a probationary period but may be contingent, except with respect to Union Employees (A) on each such Employee passing a background check ~~and, if such Employee is located in the United States, drug screening, in each case to the extent such screening process is required by applicable Law, a relevant Purchaser or Designated Purchaser contract, or other customer requirement~~**, to the extent permitted and consistent with applicable Law and any applicable Collective Labor Agreement**, (B) on such Employee's production of evidence that he or she is legally permitted to be employed by the Purchaser or a Designated Purchaser, as required by applicable Law, (C) in the case of Inactive Employees (other than Employees whose employment transfers by operation of Law), upon their return to active status with the Purchaser or one of its Affiliates and (D) upon the Closing.   The Offers shall be made prior to the Closing in compliance with this Section 7.1.1 and shall provide each such Employee with a consideration period prior to the Closing that is no less than two weeks, or such longer period as required by applicable Law (the "**Offer Consideration Period**"). [As soon as reasonably practicable following the Sellers' receipt from the Purchaser of the notice containing the Identified Employees (as required pursuant to the second sentence of this Section 7.1.1(a)) but in all events prior to Closing, the Sellers shall take any and all action permitted under applicable Law and applicable Collective Labor Agreements legally necessary to cause the termination of employment, effective prior to the Closing, of each Employee set forth on

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434 v4]

431

Section 4.11(b) of Sellers Disclosure Schedule who is not an Identified Employee but only to the extent such employment would otherwise transfer to the Purchaser or a Designated Purchaser by operation of Law.]

(b)    [Purchaser shall notify the Main Sellers of the acceptance and rejections of offers of employment that have been received from each of the Employees (x) on at least a weekly basis during the Offer Consideration Period and (y) in total within three (3) Business Days following the end of the Offer Consideration Period. ]

(c)    Any Identified Employee who accepts such offer of employment and commences employment with the Purchaser or a Designated Purchaser, and any Employees whose employment transfers by operation of Law, shall be deemed to be a Transferred Employee for all purposes of this Agreement.  Inactive Employees shall remain employed by the relevant Seller until the first (1st) Business Day immediately following the date such Inactive Employee reports to work with the Purchaser or a Designated Purchaser after having been released to return to active employment in accordance with Sellers' leave policies.  Visa Employees shall remain employed by the relevant Seller under the terms and conditions of the Loaned Employee Agreement.  The Purchaser or a Designated Purchaser shall use its **commercially** reasonable best efforts from the date of notification to Sellers of the Identified Employees (as provided for in Section 7.1.1(a)) until the Closing Date to obtain, at its cost, such visas or permits as are required for the Purchaser or Designated Purchaser to employ Visa Employees who accept Offers effective as of the Effective Hire Date.

(d)    The Effective Hire Date is (i) the Employee Transfer Date for those Employees other than Inactive Employees and Visa Employees, (ii) 12:01 a.m. on the first Business Day following the date each Inactive Employee reports to work with the Purchaser or a Designated Purchaser after having been released to return to active employment in accordance with Sellers' leave policies for all Inactive Employees and (iii) the date specified in the Loaned Employee Agreement with respect to Visa Employees.

(e)    As of the Effective Hire Date and, except as otherwise provided herein, for a period of not less than twelve (12) months after the Closing Date, the employment of Transferred Employees shall be on terms and conditions set forth in Section 7.1 or on terms and conditions that are substantially the same in the aggregate thereto except as otherwise required by applicable Law.

7.1.2.  Employee Benefits.

(a)    The Purchaser or a Designated Purchaser shall, and shall cause its relevant Affiliates to, recognize the service date of each Transferred Employee as set out in the Employee Information for all purposes, including membership, vesting, benefit accrual and entitlement to benefits under all relevant Purchaser Employee Plans, but not for purposes of benefit accrual**, vesting** or otherwise for determination of the amount or duration of benefits under any Purchaser Employee Plan that is a defined benefit pension plan [or under an equity incentive plan], except as otherwise provided herein, or**and to the extent each such Transferred Employee was entitled to recognition of such service date under the**

**121**

432

corresponding Seller Employee Plan in which such Transferred Employee participated immediately prior to Closing, and to the extent that such crediting would not result in duplication of benefits or the funding thereof.

(b)    After the date hereof, the Sellers and the Purchaser shall cooperate promptly and in good faith in preparing the transition of the Transferred Employees as applicable from coverage under the Seller Employee Plans to coverage under the Purchaser Employee Plans effective as of the Transferred Employee's Effective Hire Date.

(c)    Without limiting the generality of the foregoing, the Sellers and the Purchaser shall, or shall cause their relevant Affiliates to, as applicable, provide the following benefits to Transferred Employees:

(i)    [For the period beginning on the Closing Date and ending on the date that is twelve (12) months from the Closing Date, the Purchaser shall, or shall cause its relevant Affiliates to, provide Transferred Employees with the same severance payments and benefits as similarly situated employees of Purchaser or a Designated Purchaser following the crediting of such Transferred Employees with service as provided in Section 7.1.2(a).][107]

(ii)    The Sellers shall pay the amount of compensation with respect to the accrued and unused vacation hours that is due and owing to the Transferred Employees (excluding those Transferred Employees specified in Section 7.1.2(c)(ii) of the Sellers Disclosure Schedule, which shall include Union Employees (the "**Specified Transferred Employees**"))[77108] up to their Effective Hire Date, to such Transferred Employees at or as soon as reasonably practicable following their Effective **Hire** Date or such earlier time as may be required under applicable Law**. With respect to those Transferred Employees located in Canada, the payment by the Sellers pursuant to this Section 7.1.2(c)(ii) shall be in exchange for an acknowledgement and consent by each such Transferred Employee that he or she has received full compensation from the Sellers for such accrued and unused vacation days and has no entitlement to the vacation time associated therewith**. The Purchaser will, and will cause the relevant Designated Purchasers to, use its **commercially** reasonable ~~best~~ efforts to accommodate requests for unpaid time off of such Transferred Employees until such time as they accrue sufficient paid time off under the Purchaser Employee Plans to address their vacation plans.

(iii)    Section 7.1.2(c)(iii) of the Sellers Disclosure Schedule sets forth the Accrued Vacation Amount and the number of accrued and unused vacation days that are due and owing to the Specified Transferred Employees as of the date hereof and updated by Sellers as of the Closing Date.  The Purchaser shall, or shall cause its relevant

---

[107] Note to Seller:  "Transitional employees" will not be provided severance equal to that of similarly situated employees of the Purchaser or Designated Purchaser.

[77108] Note to Seller:  Discussion of Specified Employee Liabilities is subject to further revision following review by local counsel.

**Error! Unknown document property name.**

**433**

Affiliates to, grant each Specified Transferred Employee covered by Section 7.1.2(c)(iii) of the Sellers Disclosure Schedule paid time off in an amount equal to such accrued unused vacation days for Specified Transferred Employee as set forth in the Section 7.1.2(c)(iii) of the Sellers Disclosure Schedule.  If such Specified Transferred Employee terminates employment with the Purchaser or an Affiliate of the Purchaser prior to receiving such paid time off, as described above, the Purchaser shall pay such Specified Transferred Employee an amount equal to any such unused paid time off upon such employment termination. ~~The Sellers shall reimburse the Purchaser in cash for the Accrued Vacation Amount as of the Closing Date within ten (10) Business Days of the final determination of such amount. Any disputes surrounding the calculation of the Accrued Vacation Amount shall be resolved pursuant to the provisions of Section 2.2.3.1 mutatis mutandis. ~~**; provided that the Purchaser shall only be required to make such payment if such Specified Transferred Employee's employment terminates prior to the date which is twelve (12) months following the Closing Date, unless otherwise required by applicable Law.**

(iv)     The vacation accrual rate and maximum accrual of each Transferred Employee on and after the Effective Hire Date shall be determined (i) under the vacation policy of the Purchaser or the Designated Purchaser applicable to similarly situated employees, if any, located in the country where such Transferred Employee is employed **(or if no such employees exist in the applicable country, at the discretion of the Purchaser)** as of the relevant Effective Hire Date, and (ii) following the crediting of such Transferred Employee with service as provided in Section 7.1.2(a).  For the avoidance of doubt, such vacation accrual rate and maximum accrual applicable to Specified Transferred Employees shall not be decreased by the Purchaser or an Affiliate of the Purchaser as a result of the obligation in this Section 7.1.2(c) that the Purchaser or its Affiliates grant such Specified Transferred Employees accrued and unused vacation days due and owing as of the Closing Date.

(v)     [The Purchaser or Designated Purchaser shall provide each Transferred Employee employed in India with the benefit of the amount set forth on Section 7.1.2(c)(v) of the Sellers Disclosure Schedule of gratuity payment, at such time, if any, as such payment thereof is due and owing to each such Transferred Employee under applicable Law, taking into account in the calculation of such payment the service of such Transferred Employee as set forth in the Employee Information and such Transferred Employee's service with Purchaser on and after the Closing Date.  The Purchaser or Designated Purchaser shall provide each Transferred Employee employed in Australia with the benefit of the amount set forth on Section 7.1.2(c)(v) of the Sellers Disclosure Schedule of long service leave and sick leave and each Transferred Employee located in Hong Kong with the benefit of the amount set forth in Section 7.1.2(c)(v) of the Sellers Disclosure Schedule of sick leave, at such time, if any, as payment of such amount is due and owing to each such Transferred Employee under applicable Law, taking into account in the calculation of such payment the service of such Transferred Employee as set forth in the Employee Information and such Transferred Employee's service with Purchaser on and after the Closing Date.  Section 7.1.2(c)(v) of the Sellers

NY\1582469.7

[New York #2071434 v4]

**Error! Unknown document property name.**

434

Disclosure Schedule shall be updated no later than ten (10) Business Days prior to the Closing Date to reflect status changes and attrition, and further accruals or reductions or other changes from the date hereof to the Closing Date.][109]

(vi)    ~~Each~~**To the extent permitted under the applicable Purchaser Employee Plans, with respect to each** Transferred Employee (and their eligible dependents, as applicable), ~~shall be eligible as of the relevant Effective Hire Date to participate in and accrue benefits under the Purchaser Employee Plans, in each case under the terms of such Purchaser Employee Plans, which apply to employees of the Purchaser or a Designated Purchaser in the country where such Transferred Employee is employed as of the relevant Effective Hire Date and at a cost to such Transferred Employee, which is no greater than  the costs of those benefit plans to similarly situated employees of the Purchaser.  With respect to each Transferred Employee (and their eligible dependents, as applicable),~~ the Purchaser or the relevant Purchaser's Affiliates shall use **commercially** reasonable ~~best~~ efforts to cause such ~~plans~~**Purchaser Employee Plans** to (i) waive any eligibility periods, evidence of insurability or pre-existing condition limitations and (ii) honor any deductibles, co-payments, co-insurance or out-of-pocket expenses paid or incurred by such employees, including with respect to their dependents, under comparable Seller Employee Plans during the Purchaser Employee Plan year in which the relevant Effective Hire Date occurs; provided that such employee provides an explanation of benefits or similar documentation of such expenses paid or incurred to the Purchaser or its Affiliates, and in each case to the extent waived, inapplicable to such Transferred Employee, or honored under the Seller Employee Plans in which such Transferred Employee participated immediately prior to the Closing and to the extent doing so will not result in the duplication of benefits.

(d)    The Sellers shall be solely responsible for any required notice under the WARN Act **or similar state or local laws** with respect to terminations of employment of Employees other than Transferred Employees that occur on or prior to the Closing Date and for any individual who does not become a Transferred Employee regardless of the date of termination provided that the Purchaser or Designated Purchaser, as applicable, has satisfied its obligations as set out in this ARTICLE VII.  The Purchaser shall be solely responsible for any required notice under the WARN Act ~~or similar state or local Laws~~ with respect to terminations of employment of Transferred Employees that occur after the Closing Date**.  At or prior to the Closing, the Sellers shall provide the Purchaser, in writing, the number of employees of the Sellers, by facility and operating unit, who have experienced an "employment loss" (as defined under the WARN Act) in the ninety (90) days immediately preceding the Closing**.

(e)    Nothing express or implied in this Agreement (including without limitation anything set forth in this Section 7.1) restricts the right of the Purchaser or any Designated Purchaser after the Closing Date to terminate the employment of any Transferred Employee, to modify the compensation or employee benefits of any Transferred Employee or

---

[109] **Note to Seller:  Subject to review by local counsel.**

**Error! Unknown document property name.**

**435**

relocate any Transferred Employee's principal place of employment, provided any such termination, modification or relocation is effected in accordance with applicable Law, the terms of any applicable Purchaser Employee Plan [or Transferred Employee Plan] and the terms and conditions of this Section 7.1.

Section 7.2.    Employment Obligations with Respect to Union Employees. The provisions of this Section 7.2 shall apply to Union Employees. As of the Closing Date the Purchaser or its relevant Affiliate will be bound by the terms and obligations of the Collective Labor Agreements specified in the Employee Information with respect to the employment of Union Employees who are Transferred Employees as a successor, assign or purchaser of the relevant Seller and shall employ such Union Employees in accordance therewith. Notwithstanding anything to the contrary herein, nothing in this Section 7.2 shall be deemed to preclude the Purchaser or the relevant Affiliates from renegotiating the terms of any Collective Labor Agreement after the Closing Date.

Section 7.3.    Excluded Employee Liabilities. For purposes of clarity, the Sellers shall retain, and neither the Purchaser nor any of the Designated Purchasers or Purchaser Employee Plans shall assume at the Closing, any of the following Liabilities of the Sellers, their Affiliates or Seller Employee Plans (the **"Excluded Employee Liabilities"**):

(a)    Liabilities related to the Seller Employee Plans or any employee plans or arrangements related to former employees of the Business employed by the Sellers, including the Sellers' (excluding the EMEA Sellers) or any of their Affiliates' or Seller Employee Plans' obligations to contribute to, make payments with respect to or provide benefits under any Seller Employee Plan, except with respect to (i) the [Specified Employee Liabilities][110], (ii) the [Transferred Employee Plans,] (iii) the Assumed Liabilities, and (iv) as specified in the Loaned Employee Agreement;

(b)    any Liability with respect to the KERP, the KEIP or any other retention plan, program or arrangement of the Sellers that provides benefits to any Transferred Employee;

(c)    any obligation to provide continuation coverage pursuant to COBRA under any Seller Employee Plan that is a "group health plan" (as defined in Section 5000(b)(1) of the Code) to the Employees and/or their qualified beneficiaries with respect to a COBRA qualifying event that occurs prior to such Employees' Effective Hire Date including, for avoidance of doubt, an Employee's termination of employment from the Sellers or their Affiliates;

(d)    Except with respect to the Assumed Liabilities and as provided for in Article VII, Liabilities relating to (i) any Employee's or a former employee's employment or termination of employment with any of the Sellers or their Affiliates, including any severance or similar obligations that may arise as a result of the transfer of an Employee's employment to

---

[110] Note to Seller:  Discussion of Specified Employee Liabilities is subject to further review by local counsel.

NY\1582469.7

Error! Unknown document property name.

[New York #2071434 v4]

**436**

the Purchaser or one of its Affiliates or as a result of the Employee's refusal of the Offer[78] and any Liabilities that relate to the Inactive Employees' and Visa Employees' employment or termination of employment with any of the Sellers or their Affiliates, except as otherwise provided in the Loaned Employee Agreement, or (ii) an applicant with respect to potential employment with any of the Sellers or their Affiliates in the Business;

(e)     Except with respect to the Assumed Liabilities and as provided for in Article VII or the Loaned Employee Agreement, Liabilities resulting from any Action relating to any Seller Employee Plan [that is not a Transferred Employee Plan] or any Employee with respect to periods of employment with Sellers prior to the Effective Hire Date.[79]

Section 7.4.     Other Employee Covenants.

(a)     After the date hereof, and subject to each Party's disclosure obligations imposed by Law or by Government Entities and each Party's obligations hereunder, neither the Sellers, the Purchaser, nor any of their respective Affiliates shall issue any announcement or communication to their respective employees or the Employees, prior to consultation with, and the approval of, the other Party (not to be unreasonably withheld or delayed) with respect to this Agreement or any of the transactions contemplated hereby. If requested, the non-requesting Party shall reasonably cooperate with the requesting Party in respect of the development and distribution of any announcement and communication to the employees of the Sellers, including Employees, with respect to this Agreement or any of the transactions contemplated hereby.

(b)     The Purchaser undertakes to keep the Employee Information and any additional information provided to the Purchaser by the Sellers with respect to individually identifiable Employees (collectively, "**Employee Data**") in confidence including taking the following actions (until the relevant Effective Hire Date with respect to those Employees who become Transferred Employees, and at all times with respect to those Employees who do not become Transferred Employees):

(i)     the Purchaser shall, and shall cause the Designated Purchasers to, restrict the disclosure of the Employee Data only to such of its employees, agents and advisors as is reasonably necessary for the purposes of complying with its obligations pursuant to this Agreement;

(ii)     the Employee Data shall not be used except for the purposes of complying with the obligations of the Purchaser and the Designated Purchasers pursuant to this Agreement and shall be returned to the Sellers or destroyed, at the Sellers' election, if this Agreement is terminated; and

---

[78] Note to Purchaser: Acceptance of this provision is contingent on Purchaser's making offers on the terms and conditions specified in Section 7.1.1.
[79] Note to Purchaser: Acceptance of this provision is contingent on Purchaser's making offers on the terms and conditions specified in Section 7.1.1.

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434 v4]

**437**

(iii)     the Purchaser shall, and shall cause the Designated Purchasers to, comply with such additional obligations as may be reasonably required in any particular jurisdiction to comply with any applicable data privacy Laws.

(c)     The Sellers shall use reasonable efforts to provide updated Employee Information to the Purchaser on the first Business Day of each month beginning after the date hereof, <u>provided</u> that from and after the date on which the Purchaser notifies Seller of its initial list of Identified Employees to whom Offers shall be made under Section 7.1.1, the Sellers shall provide updated Employee Information only with respect to the Identified Employees **and Additional Employees**, and shall provide the Purchaser with the final updated Employee Information with respect to Identified Employees **(including any applicable Additional Employees)** to whom the Purchaser has made Offers under Section 7.1.1 ten (10) Business Days prior to the Closing Date in order to reflect Employee hiring, promotions, demotions, transfers, or other status changes and attrition, and further accruals or reductions or, if and to the extent applicable to such schedule, other changes in each Employee's compensation from the date hereof to the Closing Date, in each case if and only to the extent permitted under Section 5.9.

(d)     The Purchaser and the Sellers shall cooperate with each other to provide for an orderly transition of the Transferred Employees from the Sellers to the Purchaser or the Designated Purchasers, as applicable (including the providing of any information by the Sellers to the Purchaser as may be reasonably requested by the Purchaser for purposes of complying with its obligations pursuant to ARTICLE VII, subject to Section 5.6(a)), and to minimize the disruption to the respective businesses of the Parties resulting from the transactions contemplated hereby.

(e)     Within ~~sixty~~**fourteen** (~~60~~**14**) days following the relevant Effective Hire Date, except to the extent prohibited by applicable data privacy Laws and subject to consent by such employee to be obtained by the Purchaser or Designated Purchaser in his or her Offer (including any consent, if required, to transfer Employee Records across geographical boundaries), or as otherwise required by Law, the Sellers shall provide the Purchaser or the Designated Purchaser with the Employee Records (or a copy thereof) of Transferred Employees ~~that are maintained on Sellers' Human Resources SAP system but~~ excluding data related to such Transferred Employees protected status under applicable Law. Further, after the Effective Hire Date, the Purchaser may request in writing an individual Employee Record in relation to a reasonably contemplated employment termination by the Purchaser or a Designated Purchaser and, except to the extent prohibited by applicable data privacy Laws and subject to consent by such employee to be obtained by the Purchaser or Designated Purchaser in his or her Offer (including any consent, if required, to transfer Employee Records across geographical boundaries), the Seller shall provide such individual Employee Record within [~~          ~~**two** (~~    ~~**2**)] Business Days. With respect to such Employee Records provided by the Sellers to the Purchaser or Designated Purchasers, in the event that the Sellers reasonably need access to such Employee Records for purposes of complying with a subpoena or in connection with any pending or threatened Action, the Purchaser or Designated Purchaser will allow the Sellers reasonable access to such Employee Records for the sole purpose of obtaining

**438**

information for use as aforesaid and will permit the Sellers to make copies thereof as may be necessary or convenient.

(f)     During the Non-Solicitation Period, the Sellers shall not, and shall not permit, cause or encourage any of their Affiliates to, without the advance written consent of the Purchaser, either directly or indirectly solicit for employment or hire any Transferred Employee unless the employment of such Transferred Employee is involuntarily terminated (other than in connection with such Transferred Employee seeking employment with the Sellers or their Affiliates following the Employee Transfer Date) by the Purchaser or Designated Purchaser prior to such action by the Sellers; provided, however, that nothing in this Section 7.4(f) shall prevent the Sellers from (i) conducting generalized employment searches, including placing bona fide public advertisements, that are not specifically targeted at such Transferred Employees or (ii) hiring such Transferred Employees identified through such employment searches.

(g)     During the Non-Solicitation Period, the Purchaser and the Designated Purchasers shall not, without the Seller's advance written consent or as expressly permitted by this Agreement or an Ancillary Agreement, either directly or indirectly solicit for employment or hire (i) any of the employees of the Sellers who are not Employees, unless the employment of such employee is involuntarily terminated by the Sellers ~~(other than in connection with such Transferred Employee seeking employment with the Purchasers or their Affiliates)~~ prior to such action by the Purchaser or the Designated Purchasers, (ii) any Employees who have rejected their Offer or objected to their transfer of employment to the Purchaser or Designated Purchasers pursuant to this Agreement, or (iii) any Employees to whom the Purchaser or any Designated Purchaser have not made an Offer; provided, however, that nothing in this Section 7.4(g) shall prevent the Purchaser or the Designated Purchasers from (x) conducting generalized employment searches, including placing bona fide public advertisements, that are not specifically targeted at such employees or former employees of the Sellers or (y) hiring such employees or former employees of the Sellers identified through such employment searches~~; provided, further, that, with respect to any Employee described in clauses (ii) and (iii) above who becomes employed with the Purchaser or a Designated Purchaser (other than by operation of Law) during the twelve (12) month period following the Closing Date, the Purchaser and the Designated Purchasers shall be required to reimburse the Sellers, if applicable, for any pay in lieu of notice (including WARN Act notice) and/or severance payments to the extent paid by the Sellers to such Employee and, if applicable, obtain releases from such Employees of any rights to such payments from Sellers~~.

(h)     As of the Effective Hire Date, neither the Sellers nor any of their Affiliates shall enforce any non-competition, non-solicitation, confidentiality or similar contractual obligation in respect of the Business or Assets binding to the Transferred Employees which would survive the termination of the employment relationship between the Sellers and the Transferred Employees.

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434 v4]

Section 7.5.    Canadian Pension Plans.[80][111]                                    **439**

(a)    Non-Union Defined Benefit.  As of the relevant Effective Hire Date, the Non-Union Employees who have any entitlement to defined benefits under the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan, whether such Non-Union Employees were accruing such benefits as of the Effective Hire Date or whether accrual had ceased prior to the Effective Hire Date, shall cease to participate actively in such Seller Employee Plan.  The Purchaser shall cause such Non-Union Employees who become Transferred Employees to participate in a defined contribution registered pension plan (the **"Canadian Non-Union DC Replacement Plan"**) to be established by the relevant Designated Purchaser effective as of the day after the Closing Date.  The Purchaser shall cause the Canadian Non-Union DC Replacement Plan to recognize the prior service of such Transferred Employees with the Seller for the purpose of eligibility to participate, vesting and entitlement to benefits.  The Canadian Non-Union DC Replacement Plan shall contain an employer contribution formula ~~of at least 5% of the salary of such Transferred Employees, subject to any~~**as required by** applicable ~~tax~~ Law.  The Designated Purchaser shall maintain the Canadian Non-Union DC Replacement Plan in respect of such Transferred Employees for at least ~~five~~**two** (~~5~~**2**) years after the Closing Date or their respective employment termination dates with the Designated Purchaser, whichever is earlier, without any adverse amendment.  ~~For greater certainty, there shall be no transfer of assets or liabilities from the Nortel Networks Managerial and Non-Negotiated Pension Plan to the Canadian Non-Union DC Replacement Plan or any other Purchaser Employee Plan in respect of defined benefit accruals.~~

(b)    Non-Union Defined Contribution.  As of the relevant Effective Hire Date, the Non-Union Employees who participate in the defined contribution component of the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan shall cease to participate actively in, and accrue benefits under, such Seller Employee Plan.  The Purchaser shall cause such Non-Union Employees who become Transferred Employees to participate in the Canadian Non-Union DC Replacement Plan beginning as of the relevant Effective Hire Date.  The Purchaser shall cause the Canadian Non-Union DC Replacement Plan to recognize the prior service of such Transferred Employees with the Seller for the purposes of eligibility to participate, vesting and entitlement to benefits.  The Canadian Non-Union DC Replacement Plan shall contain an employer contribution formula ~~of at least 5% of the salary of such Transferred Employees, subject to any~~**as required by** applicable ~~tax~~ Law.

(c)    Union Defined Benefit.  As of the relevant Effective Hire Date, the Union Employees who were accruing defined benefits under the Nortel Networks Negotiated Pension Plan shall cease to participate actively in, and accrue benefits under, such Seller Employee Plan.  The Purchaser shall cause such Union Employees who become Transferred Employees to participate in a defined benefit registered pension plan (the **"Canadian DB Replacement Plan"**) to be established by the relevant Designated Purchaser effective as of the day after the Closing Date and which shall contain a benefit formula which is no less favorable than the formula in the Nortel Networks Negotiated Pension Plan and which shall otherwise comply

---

[80][111] Note to Seller:  Subject to Canadian Counsel Review.  The Purchaser should only be obligated by this Agreement to take those actions required by law.

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434 v4]

**440**

with the terms and obligations of the applicable Collective Labor Agreements. . The Purchaser shall cause the Canadian DB Replacement Plan to recognize the prior service of such Transferred Employees with the Seller for the purposes of eligibility to participate, vesting and entitlement to benefits, but not for the purpose of benefit accrual. ~~For greater certainty, there shall be no transfer of assets or liabilities from the Nortel Networks Negotiated Pension Plan to the Canadian DB Replacement Plan or any other Purchaser Employee Plan.~~

(d)    Union Defined Contribution. As of the relevant Effective Hire Date, the Union Employees who participate in the defined contribution component of the Nortel Networks Negotiated Pension Plan shall cease to participate actively in, and accrue benefits under, such plan. The Purchaser shall cause such Union Employees who become Transferred Employees to participate in a defined contribution registered pension plan (the "**Canadian Union DC Replacement Plan**") to be established by the Purchaser effective as of the day after the Closing Date. The Purchaser shall cause the Canadian Union DC Replacement Plan to recognize the prior service of such Transferred Employees with the Seller for the purposes of eligibility to participate, vesting and entitlement to benefits. The Canadian Union DC Replacement Plan shall comply with the terms and obligations of the Collective Labor Agreements specified in the Employee Information with respect to the employment of the relevant Union Employees as a successor, assign or purchaser of the relevant Seller and shall not affect or change in any respect the provisions in such Collective Labor Agreement.

(e)    **Pension Liability. For greater certainty, (i) none of the Seller, the Nortel Networks Managerial and Non-Negotiated Pension Plan, nor the Nortel Networks Negotiated Pension Plan shall have any obligation to transfer, and none of the Purchaser, the Canadian Non-Union DC Replacement Plan, the Canadian DB Replacement Plan, the Canadian Union DC Replacement Plan, nor any other Purchaser Employee Plan shall have any obligation to accept assets or Liabilities in respect of defined benefit or defined contribution accruals accrued prior to the Closing Date, and (ii) any Liability with respect to any pension entitlement accrued by any Non-Union Employee or Union Employee prior to the Closing Date shall remain the exclusive liability of the Seller, the Nortel Networks Managerial and Non-Negotiated Pension Plan, and the Nortel Networks Negotiated Pension Plan, as the case may be, and none of the Purchaser, the Canadian Non-Union DC Replacement Plan, the Canadian DB Replacement Plan, the Canadian Union DC Replacement Plan, nor any other Purchaser Employee Plan shall have any Liability or obligation with respect to any pension entitlement accrued prior to the Closing Date.**

Section 7.6.    Sole Benefit of the Sellers and the Purchaser. The terms and provisions of this ARTICLE VII are for the sole benefit of the Sellers and the Purchaser. Nothing contained herein, express or implied (i) shall be construed to establish, amend, or modify any Seller Employee Plan, any Purchaser Employee Plan, or any other benefit plan, program, agreement or arrangement, subject to the Purchaser's compliance with the provisions of ARTICLE VII, (ii) shall alter or limit the ability of the Purchaser, the Sellers, or any of their respective Affiliates to amend, modify or terminate any Seller Employee Plan, any Purchaser Employee Plan, or any other benefit or employment plan, program, agreement or arrangement after the Closing Date,

NY\1582469.7

[New York #2071434 v4]                                   130                         Error! Unknown document property name.

**441**

subject to the Purchaser's compliance with the provisions of ARTICLE VII, (iii) is intended to confer or shall confer upon any current or former employee any right to employment or continued employment, or constitute or create an employment agreement with any Transferred Employee, or (iv) is intended to confer or shall confer upon any individual or any legal representative of any individual (including employees, retirees, or dependents or beneficiaries of employees or retirees, and collective bargaining agents or representatives) any right as a third-party beneficiary of this Agreement.

## ARTICLE VIII

## CONDITIONS TO THE CLOSING

Section 8.1.    Conditions to Each Party's Obligation.  The Parties' obligation to effect, and, as to the Purchaser, to cause the relevant Designated Purchasers to effect, the Closing is subject to the satisfaction or the express written waiver of the Primary Parties, at or prior to the Closing, of the following conditions:

(a)    *Regulatory Approvals.*  All Regulatory Approvals shall have been obtained and shall remain in force and have not been set aside or modified, on appeal or otherwise.

(b)    *No Injunctions or Restraints.*  There shall be in effect no Law, material order, injunction, decree or judgment **or Order** of any court or other Government Entity in the U.S., Canada or the United Kingdom prohibiting the consummation of the transactions contemplated hereby, or which would reasonably be expected to have a Material Adverse Effect on the Business or a materially adverse impact on the right or ability of the Purchaser to own, operate or transfer the Business after the Closing. **proceeding seeking such a prohibition.**

**(c)    *U.S. Bidding Procedures Order and Canadian Sales Process Order.*  The U.S. Bidding Procedures Order and the Canadian Sales Process Order, which shall include provisions that are substantially similar to the provisions set forth in the form of orders in Exhibit 5.1(b) (in the case of the U.S. Sale Order) and Exhibit 5.2.1 (in the case of the Canadian Sales Process Order), shall have been entered and become Final Orders.**

**(d)**    (c) *U.S. Sale Order and Canadian Approval and Vesting Order.*  The U.S. Sale Order and the Canadian Approval and Vesting Order, which shall include provisions that are substantially similar to the provisions set forth in Exhibit 5.1(b) (in the case of the U.S. Sale Order) and Exhibit 5.2.2 (in the case of the Canadian Approval and Vesting Order), **(i)** shall have been entered and **(ii)** shall not have been stayed as of the Closing Date and shall not be subject to appeal, stay, reversal or modification as of the Closing Date, provided that this condition shall be deemed satisfied even if the U.S. Sale Order has been appealed, so long as (i) the applicable appeal period has expired, (ii) the effectiveness of the U.S. Sale Order has not been stayed by the U.S. Bankruptcy Court pending appeal, and (iii) in the reasonable good faith judgment of the U.S. Debtors after consultation with their counsel and taking into account Section 363(m) of the U.S. Bankruptcy Code, the reversal or modification of U.S. Sale Order

**131**

NY\1582469.7

[New York #2071434 v4]                                    131                    Error! Unknown document
property name.



~~as a result of any then pending appeal would not have a Material Adverse Effect.~~**under Section 8.1(d)(ii) may be waived by the Purchaser in its sole discretion.**

      **(e)**  ~~(d)~~ *Satisfaction of Conditions under EMEA Asset Sale Agreement*. The conditions to Closing of the EMEA Asset Sale Agreement set out in article [15.1, 15.2 and 15.3] thereof (other than the condition regarding the satisfaction or waiver of the conditions hereunder) shall have been satisfied or waived in accordance with the terms of the EMEA Asset Sale Agreement (provided, that a Party may not assert the failure of this condition to be satisfied in the event that such failure is the result of, or has been caused by, a breach by such Party or its Affiliates of this Agreement or the EMEA Asset Sale Agreement that caused the applicable condition to Closing in the EMEA Asset Sale Agreement to not be satisfied).

      **(f)**  ~~(e)~~ *Consummation of Closing under EMEA Asset Sale Agreement*. The transactions contemplated by the EMEA Asset Sale Agreement shall be completed simultaneously with the Closing hereunder.

   Section 8.2.   <u>Conditions to Sellers' Obligation</u>. The Sellers' obligation to effect the Closing shall be subject to the fulfillment (or express written waiver by the Main Sellers), at or prior to the Closing, of each of the following conditions:

     (a)  No Breach of Representations and Warranties.

     (i)    Each of the representations and warranties set forth in ARTICLE III (other than those referred to in clause (ii) below), disregarding all materiality qualifications contained therein, shall be true and correct (x) as if restated on and as of the Closing Date or (y) if made as of a date specified therein, as of such date, except, in each case, for any failure to be true and correct that, individually or together with such other failures, has not had, and would not reasonably be expected to have, a material adverse effect on the ability of the Purchaser to consummate the transactions contemplated by this Agreement and the Ancillary Agreements.

     (ii)    Each of the representations and warranties set forth in Sections 3.1, 3.2 and 3.3, disregarding all materiality qualifications contained therein, shall be true and correct in all material respects (x) as if restated on and as of the Closing Date or (y) if made as of a date specified therein, as of such date.

     (b)  *No Breach of Covenants*. The ~~material~~ covenants, obligations and agreements contained in this Agreement to be complied with by the Purchaser or the Designated Purchasers on or before the Closing shall not have been breached in any material respect **(it being understood that the Sellers will use their commercially reasonable efforts to provide notice to the Purchaser of any breach by the Purchaser (that the Sellers are aware of) so that the Purchaser may endeavor to avoid such breach arising to a material level)**.

   Section 8.3.   <u>Conditions to Purchaser's Obligation</u>. The Purchaser's obligation to effect, and to cause the relevant Designated Purchasers to effect, the Closing shall be subject to

**443**

the fulfillment (or express written waiver by the Purchaser), at or prior to the Closing, of each of the following conditions:

  (a) No Breach of Representations and Warranties.

    (i) Each of the representations and warranties set forth in ARTICLE IV (other than those referred to in clause (ii) below), disregarding all materiality and Material Adverse Effect qualifications contained therein, shall be true and correct (x) as if restated on and as of the Closing Date or (y) if made as of a date specified therein, as of such date, except, in each case, for any failure to be true and correct that, individually or together with such other failures, has not had, and would not reasonably be expected to have, a Material Adverse Effect.

    (ii) Each of the representations and warranties set forth in Sections 4.1, 4.2, 4.3(a) and 4.15, disregarding all materiality and Material Adverse Effect qualifications contained therein, shall be true and correct in all material respects (x) as if restated on and as of the Closing Date or (y) if made as of a date specified therein, as of such date.

  (b) *No Breach of Covenants*. The ~~material~~ covenants, obligations and agreements contained in this Agreement to be complied with by the Sellers on or before the Closing shall not have been breached in any material respect <u>(it being understood that the Purchaser will use its commercially reasonable efforts to provide notice to the Sellers of any breach by the Sellers (that the Purchaser is aware of) so that the Sellers may endeavor to avoid such breach arising to a material level)</u>.

  (c) *Transfer of Assets*. The failure to transfer the Restricted Assets (if any), as set forth in Section 5.26, would not reasonably be expected to be materially adverse to the operations, results of operations or financial condition of the Business to be transferred hereunder and under the EMEA Asset Sale Agreement, taken as a whole, as compared to a transfer including such Restricted Assets.

  <u>(d) *No Injunctions or Restraints.* There shall be in effect no Law or Order of any court or other Government Entity in the U.S., Canada or the United Kingdom reasonably be expected to have a Material Adverse Effect on the Business or a materially adverse impact on the right or ability of the Purchaser to own, operate or transfer the Business after the Closing.</u>[112]

---

[112] <u>Note to Seller:  this condition was previously in the mutual closing conditions – moved here because Purchaser should have a right to assume the business in a materially impaired state if it so chooses.</u>

**133**

NY\1582469.7

[New York #2071434 v4]   133   ~~Error! Unknown document property name.~~

444

## ARTICLE IX

## TERMINATION

Section 9.1.    Termination.  This Agreement may be terminated at any time prior to the Closing:[113]

    (a)    by mutual written consent of the Primary Parties;

    (b)    by either the Main Sellers or the Purchaser, upon written notice to the other:

    (i)    if the U.S. Bidding Procedures Order, in substantially the form attached as Exhibit 5.1(a) or in a form reasonably acceptable to the Purchaser and the Canadian Sales Process Order in substantially the form attached as Exhibit 5.2.1 or in a form reasonably acceptable to the Purchaser have not been entered within thirty (30) days from the date of this Agreement, then this agreement may be terminated within ~~five~~**ten** (~~5~~**10**) Business Days of the end of such thirty (30) day period, but shall not be capable of termination **pursuant to this Section 9.1(b)(i)** thereafter;

    (ii)    if the U.S. Sale Order in substantially the form attached as Exhibit 5.1(b) or in a form reasonably acceptable to the Purchaser and the Canadian Approval and Vesting Order in substantially the form attached as Exhibit 5.2.2 or in a form reasonably acceptable to the Purchaser are not entered within [~~forty-five (45)~~**___**] days after completion of the Auction (as defined in the U.S. Bidding Procedures Order);

    (iii)    upon the entry of an order by the U.S. Bankruptcy Court or the Canadian Court approving an Alternative Transaction;

    (iv)    if a Governmental Entity in the U.S., Canada or the United Kingdom **(other than a Bankruptcy Court)** issues a ~~ruling or~~ [Final Order] prohibiting the transactions contemplated hereby;

    (v)    if the EMEA Asset Sale Agreement is terminated in accordance with its terms;

    (vi)    if the Closing does not take place within [one-hundred and eighty (180) days] from the date of this Agreement.~~;~~**; or**

    **(vii)    upon written notice to the other Party, upon such other Party's material breach of its obligation to close the transactions contemplated hereby at the Closing, which breach is not cured within five (5) days from the receipt of a written notice thereof;**

---

[113] **Note to Seller: Bankruptcy counsel to discuss.  Purchaser seeks the fastest reasonably achievable timeline.**

NY\1582469.7

~~134~~

[New York #2071434 v4]

**Error! Unknown document property name.**

445

(c)   (i) by the Main Sellers in the event of a material breach by the Purchaser of the Purchaser's representations, warranties, agreements or covenants set forth in this Agreement or the EMEA Asset Sale Agreement, which breach would result in a failure to satisfy the conditions to Closing set forth in Sections 8.1(a), 8.1(d), 8.1(e) or 8.2 or (ii) by the Purchaser in the event of a material breach by the Sellers of the Sellers' representations, warranties, agreements or covenants set forth in this Agreement, which breach would result in a failure to satisfy the conditions to Closing set forth in Sections 8.1(a), 8.1(d), 8.1(e), 8.3(a) or 8.3(b), as applicable, and, in each case, which, if capable of being cured, is not cured within twenty-five (25) days from receipt of a written notice from the non-breaching Party; or

(d)   by the Purchaser, upon written notice to the Main Sellers:

(i)   upon the sale, transfer or other disposition, directly or indirectly, of any material portion of the Business or the Assets (other than as a going concern) in connection with the closure, liquidation or winding up of the Business or any of the Sellers other than as reflected in any Downward Adjustment or EMEA Downward Adjustment; or

(ii)   if the Auction does not conclude by [sixty (60)] Business Days after the later of the entry of the U.S. Bidding Procedures Order or the Canadian Sales Process Order; or

(iii)   if the Purchaser is not selected as the Successful Bidder or the Alternate Bidder (as defined in U.S. Bidding Procedures Order); **or**

~~(e) by the Main Sellers, upon written notice to the Purchaser, upon Purchaser's material breach of its obligation to close the transactions contemplated hereby at the Closing, which breach is not cured within five (5) days from the receipt of a written notice thereof from the Main Sellers;~~

**(iv)   upon withdrawal, revocation or alteration in a manner adverse to the Purchaser of the Bidding Procedures (as defined in the U.S. Bidding Procedures Order), the Bidding Process (as defined in the U.S. Bidding Procedures Order), the Auction, the U.S. Sale Order or the Canadian Vesting and Approval Order;**

provided, however, that the right to terminate this Agreement pursuant to Section 9.1(b)(i), Section 9.1(b)(ii), **Section 9.1(b)(iv),** Section 9.1(b)(v), Section 9.1(b)(vi), **Section 9.1(b)(vii),** Section 9.1(d)(ii) and Section 9.1(d)(iii) shall not be available to any Party whose breach hereof, or the EMEA Asset Sale Agreement, has been the principal cause of, or has directly resulted in, the event or condition purportedly giving rise to a right to terminate this Agreement under such clauses; provided, further, that a Party shall not be permitted to terminate this Agreement under Section 9.1(b)(v) or Section 9.1(c) if such Party is then itself in material breach of this Agreement.

NY\1582469.7

Error! Unknown document property name.

[New York #2071434 v4]

446

Section 9.2.    Expense Reimbursement and Break-Up Fee.[114]

(a)    In the event that (i) this Agreement is terminated pursuant to Section 9.1(b)(ii)**(unless terminated by the Seller pursuant to Section 9.1(b)(ii) at a time when the Purchaser does not have a right to terminate**), Section 9.1(b)(iii), Section 9.1(b)(iv)**(unless terminated by the Seller pursuant to Section 9.1(b)(iv) at a time when the Purchaser does not have a right to terminate**, Section 9.1(b)(v) (pursuant to Sections [____] of the EMEA Asset Sale Agreement), Section 9.1(b)(vi)**( unless terminated by the Seller pursuant to Section 9.1(b)(vi) at a time when the Purchaser does not have a right to terminate),** **Section 9.1(b)(vii)(by the Purchaser**), Section 9.1(c)(ii), Section 9.1(d)(i), Section 9.1(d)(ii) ~~or Section 9.1(d)(iii) and (ii) (x) when this Agreement is terminated, the Purchaser is not in breach of this Agreement or the EMEA Asset Sale Agreement as a result of a breach which would result in a failure to satisfy any of the conditions to Closing set forth in Section 8.1 or Section 8.2 of this Agreement and (y) with respect to termination pursuant to Section 9.1(b)(vi) only, in addition to the requirement set forth in clause (x), the Purchaser has not been in breach of this Agreement for a material period of time prior to the date of termination which contributed to the failure to consummate the transactions by the time period set forth in Section 9.1(b)(vi), then the~~**, Section 9.1(d)(iii) or Section 9.1(d)(iv), then the Sellers the EMEA** Sellers shall pay to the Purchaser a cash fee equal to the Purchaser's reasonable and documented fees, out-of-pocket costs and expenses (including fees and expenses of the Purchaser's advisors and notification and filing fees) in connection with the preparation, execution and performance of this Agreement and the EMEA Asset Sale Agreement and the transactions contemplated hereby and thereby (the "**Expense Reimbursement**"), in an amount which shall not exceed $[●]. The Expense Reimbursement shall be paid by wire transfer of immediately available funds to an account designated by the Purchaser and shall be paid after the termination of this Agreement within five (5) Business Days following receipt by the Main Sellers and NNUK of written notice from the Purchaser describing the fees and expenses that constitute Expense Reimbursement in reasonable detail.

(b)    ~~(i) (A)~~ If this Agreement is **(i)** terminated pursuant to Section 9.1(b)(ii)**(by the Purchaser pursuant to Section 9.1(b)(ii) at a time when the Sellers do not have a right to terminate**), Section 9.1(b)(iii), Section 9.1(b)(v) (pursuant to Sections [____] of the EMEA Asset Sale Agreement**), Section 9.1(b)(vi)(by the Purchaser pursuant to Section 9.1(b)(vi) at a time when the Sellers do not have a right to terminate), Section 9.1(b)(vii)(by the Purchaser**), Section 9.1(c)(ii), ~~Section 9.1(d)(i) or Section 9.1(d)(iii), (B) when this Agreement is terminated, the Purchaser is not in breach of this Agreement or~~ **or Section 9.1(d)(i) or (ii) (A)** ~~terminated pursuant to Section 9.1(b)(ii)~~**(unless terminated pursuant to Section 9.1(b)(ii) by Sellers at a time when the Purchaser does not have a right to terminate), Section 9.1(b)(iv)(by the Purchaser pursuant to Section 9.1(b)(iv) at a time when the Sellers do not have a right to terminate), Section 9.1.(b)(v)(pursuant to Sections [___] of** the EMEA Asset Sale Agreement ~~as a result of a breach which would result in a failure to satisfy any of the conditions to Closing set forth in Section 8.1 or Section 8.2 of this Agreement and (C)~~**, Section 9.1(b)(vi)(unless terminated pursuant to Section 9.1(b)(vi) by**

---

[114] **Note to Seller:  Parties to discuss scope of Break-up Fee payment generally.**

NY\1582469.7

**Error! Unknown document property name.**

[New-York #2071434 v4]



**Sellers at a time when the Purchaser does not have a right to terminate), Section 9.1(d)(ii), Section 9.1(d)(iii) or Section 9.1(d)(iv) and (B)** either (x) the U.S. Bankruptcy Court or the Canadian Bankruptcy Court approves an Alternative Transaction or (y) the Sellers enter into or~~,~~ publicly ~~announce~~**propose or consummate** a definitive agreement in respect of **(or otherwise effect)** an Alternative Transaction~~, in each case,~~ within ~~nine~~**twelve** (~~9~~**12**) months following the termination of this Agreement~~and such Alternative Transaction approved or announced within such nine (9) month period is ultimately consummated,~~**,** then the Sellers **and the EMEA Sellers** shall, in addition to the Expense Reimbursement ~~(to the extent not already paid)~~, pay to the Purchaser pursuant to a wire transfer of immediately available funds to an account designated by the Purchaser, a cash fee equal to $[●] (the "**Break-Up Fee**"); provided, that if the Sellers **and the EMEA Sellers** shall have previously paid the Expense Reimbursement to the Purchaser then the amount of the Break-Up Fee shall be reduced by the amount of the Expense Reimbursement paid to the Purchaser.  ~~The Break-Up~~**If the Break-Up Fee is payable pursuant to clause (i) of the preceding sentence then the Break-Up Fee shall be payable with three (3) Business Days of termination.  If the Break-Up Fee is payable pursuant to clause (ii) of this first sentence of this Section 9.2(b) then the Break-up** Fee shall be payable within three (3) Business Days of **the earlier of (i) the earlier of the U.S. Bankruptcy Court's and the Canadian Bankruptcy Court's approval of the Alternative Transaction and (ii) the** consummation of the Alternative Transaction **(or the consummation of the first definitive step in respect of an Alternative Transaction if such is an Alternative Transaction pursuant to clause (ii) or (iii) of the definition of Alternative Transaction)**.

(c)    Other than equitable relief to the extent permitted under Section 10.13, payment of the Expense Reimbursement and the Break-Up Fee as specified in this Section 9.2 shall be the sole and exclusive remedy of the Purchaser, whether at Law or in equity, for any failure by the Sellers, the EMEA Sellers or any of their respective Affiliates to consummate the transactions contemplated hereby or for any pre-Closing breach of this Agreement or the EMEA Asset Sale Agreement.

(d)    The Sellers shall pay [●] and the EMEA Sellers shall pay [●] of the Break-Up Fee and the Expense Reimbursement, if payable hereunder.   The Sellers' and the EMEA Sellers' obligations to pay their respective shares of the Break-Up Fee and the Expense Reimbursement pursuant to this Section 9.2 shall be several and not joint (but the obligation of the Sellers to pay [●] of the Break-Up Fee and the Expense Reimbursement shall be joint and several among the Sellers and the obligation of the EMEA Sellers to pay [●] of the Break-Up and the Expense Reimbursement shall be several among the EMEA Sellers) and shall survive termination of this Agreement and shall, to the extent owed by the U.S. Debtors, constitute an administrative expense of the U.S. Debtors under section 364(c)(1) of the U.S. Bankruptcy Code with priority over any and all administrative expenses of the kind specified in sections 503(b) or 507(b) of the U.S. Bankruptcy Code, to the extent owed by the Canadian Debtors be secured by an Inter-company Charge and, to the extent owed by the EMEA Debtors, constitute an expense of the administration

448

(e)   Notwithstanding anything to the contrary herein, the Sellers' obligation to pay the Break-Up Fee pursuant to this Section 9.2 is expressly subject to entry of the Bidding Procedures Order.

Section 9.3.   Effects of Termination.  If this Agreement is terminated pursuant to Section 9.1:

(a)   all further obligations of the Parties under or pursuant to this Agreement shall terminate without further liability of any Party to the other except for the provisions of (i) Section 5.7 (Public Announcements), (ii) Section 5.10 (Transaction Expenses), (iii) Section 5.11 (Confidentiality), (iv) Section 7.4(b)(ii) (Other Employee Covenants), (v) Section 9.1 (Termination), (vi) Section 9.2 (Expense Reimbursement and Break-Up Fee), (vii) Section 9.3 (Effects of Termination) and (viii) ARTICLE X (Miscellaneous); provided, that neither the termination of this Agreement nor anything in this Section 9.3 shall relieve any Party from liability for any breach of this Agreement occurring before the termination hereof;

(b)   except as required by applicable Law, the Purchaser shall return to the Sellers all documents, work papers and other material of any of the Sellers relating to the transactions contemplated hereby, whether so obtained before or after the execution hereof to the extent and in the manner required by the Confidentiality Agreement; and

(c)   the provisions of the Confidentiality Agreement shall continue in full force and effect.

## ARTICLE X

## MISCELLANEOUS

Section 10.1.  No Survival of Representations and Warranties or Covenants.  Except for the representations set forth in Section 3.6, no representations, warranties, covenants or agreements in this Agreement or in any instrument delivered pursuant to this Agreement shall survive beyond the Closing Date, except for covenants in ARTICLE VI and covenants and agreements that by their terms are to be satisfied after the Closing Date, which covenants and agreements shall survive until satisfied in accordance with their terms.

Section 10.2.  Remedies.  No failure to exercise, and no delay in exercising, any right, remedy, power or privilege under this Agreement by any Party will operate as a waiver of such right, remedy, power or privilege, nor will any single or partial exercise of any right, remedy, power or privilege under this Agreement preclude any other or further exercise of such right, remedy, power or privilege or the exercise of any other right, remedy, power or privilege.

Section 10.3.  No Third Party Beneficiaries.  Except for the rights of the Parties' Affiliates explicitly set forth herein and any acknowledgments, rights, undertakings, representations or warranties expressed to be for the benefit of the EMEA Sellers or the Joint Administrators, this Agreement is for the sole benefit of the Parties and their permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any

138

NY\1582469.7

[New York #2071434 v4]

138    Error! Unknown document property name.