**449**

legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

Section 10.4.   <u>Consent to Amendments; Waivers</u>.   No Party shall be deemed to have waived any provision of this Agreement or any of the other Transaction Documents unless such waiver is in writing, and then such waiver shall be limited to the circumstances set forth in such written waiver. This Agreement and the Ancillary Agreements shall not be amended, altered or qualified except by an instrument in writing signed by all the parties hereto or thereto, as the case may be.

Section 10.5.   <u>Successors and Assigns</u>.   Except as otherwise expressly provided in this Agreement, all representations, warranties, covenants and agreements set forth in this Agreement or any of the Ancillary Agreements by or on behalf of the parties hereto or thereto will be binding upon and inure to the benefit of such parties and their respective successors and permitted assigns. Neither this Agreement nor any of the rights, interests or obligations hereunder may be assigned by any Party without the prior written consent of the Main Sellers in case of an assignment by the Purchaser or the Purchaser in case of an assignment by any Seller, which consent may be withheld in such party's sole discretion, except for any of the following assignments which shall not require consent (i) assignment to an Affiliate of a Party (<u>provided</u>, (A) that such Party remains liable jointly and severally with its assignee Affiliate for the assigned obligations to the other Parties and (B) any such assignment by Purchaser complies with Section 2.5 if applicable), (ii) assignment by a U.S. Debtor to a succeeding entity following such U.S. Debtor's emergence from Chapter 11 and (iii) assignment by any of the Canadian Debtors pursuant to any plan of arrangement approved by the Canadian Court. Any assignment other than in accordance with this Section 10.5 shall be null and void.

Section 10.6.   <u>Governing Law; Submission to Jurisdiction; Waiver of Jury Trial</u>.

(a)   Any questions, claims, disputes, remedies or Actions arising from or related to this Agreement, and any relief or remedies sought by any Parties, shall be governed exclusively by the Laws of the State of New York applicable to contracts made and to be performed in that State and without regard to the rules of conflict of laws of any other jurisdiction that would cause any Laws other than the Laws of the State of New York to be applied.

(b)   To the fullest extent permitted by applicable Law, each Party: (i) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever arising out of, or in connection with, this Agreement, or the transactions contemplated hereby shall be brought only in (a) either the U.S. Bankruptcy Court, if brought prior to the entry of a final decree closing the Chapter 11 Cases, or the Canadian Court, if brought prior to the termination of the CCAA Cases, <u>provided</u> that if (X) a final decree closing the Chapter 11 Cases has not been entered and (Y) the CCAA Cases have not terminated, the U.S. Debtors or the Canadian Debtors may, in accordance with the Cross-Border Protocol, request that the U.S. Bankruptcy Court or the Canadian Court, as case may be, hold a joint hearing of the U.S. Bankruptcy Court and the Canadian Court to determine the appropriate jurisdiction for such claim, action or proceeding, and (b) in the Federal Courts in the Southern District of New York and the state

**132**

Error! Unknown document property name.

**450**

courts of the State of New York, County of New York (collectively, the "**New York Courts**"), if brought after entry of a final decree closing the Chapter 11 Cases and termination of the CCAA Cases, and shall not be brought, in each case, in any other court in the United States of America, Canada or any court in any other country; (ii) agrees to submit to the jurisdiction of the U.S. Bankruptcy Court, the Canadian Court, or the New York Courts, as applicable, pursuant to the preceding clauses (a) and (b) for purposes of all legal proceedings arising out of, or in connection with, this Agreement or the transactions contemplated hereby; (iii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of such Action brought in any such court or any claim that any such Action brought in such court has been brought in an inconvenient forum; (iv) agrees that the mailing of process or other papers in connection with any such Action or proceeding in the manner provided in Section 10.7 or any other manner as may be permitted by Law shall be valid and sufficient service thereof; and (v) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in any other jurisdictions by suit on the judgment or in any other manner provided by applicable Law.

      (c)    The Purchaser hereby appoints [●], as its authorized agent (the "**Purchaser Authorized Canadian Agent**") upon whom process and any other documents may be served in the CCAA Cases and any Action arising out of, or in connection with, this Agreement or the transactions contemplated hereby, which may be instituted in the Canadian Court by any other party hereto, which appointment in each case shall be irrevocable. The Purchaser further agrees to take any and all action, including the filing of any and all documents and instruments, which may be necessary to continue such appointments in full force and effect as aforesaid.  Service of process upon the applicable Purchaser Authorized Canadian Agent in respect of the relevant jurisdiction and written notice of such service to the Purchaser shall be deemed, in every respect, effective service of process upon the Purchaser in relation to such jurisdiction.

      (d)    Each Seller hereby appoints (i) NNI as its authorized agent (the "**Seller Authorized U.S. Agent**") upon whom process and any other documents may be served in the Chapter 11 Cases and any Action arising out of, or in connection with, this Agreement or the transactions contemplated hereby, which may be instituted in the U.S. Bankruptcy Court or in the NY Courts by any other party hereto, and (ii) NNL as its authorized agent (the "**Seller Authorized Canadian Agent**" and together with the Seller Authorized U.S. Agent, the "**Seller Authorized Agents**")) upon whom process and any other documents may be served in the CCAA Cases and any Action arising out of, or in connection with, this Agreement or the transactions contemplated hereby, which may be instituted in the Canadian Court by any other party hereto, which appointment in each case shall be irrevocable. Each such Seller further agrees to take any and all action, including the filing of any and all documents and instruments, which may be necessary to continue such appointment in full force and effect as aforesaid. Service of process upon the applicable Seller Authorized Agent in respect of the relevant jurisdiction and written notice of such service to the Main Sellers shall be deemed, in every respect, effective service of process upon every such Seller.

NY\1582469.7

**Error! Unknown document property name.**

[New York #2071434 v4]

**451**

(e)    Section 10.6(b) shall not limit the jurisdiction of (i) the Accounting Arbitrator set forth in Section 2.2.3.1(c), (ii) any of the arbitrators set forth in Section 5.28 although claims may be asserted in the courts referred to in Section 10.6(b) for purposes of enforcing the jurisdiction and judgments of the Accounting Arbitrator or arbitrator(s), as applicable.

(f)    EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, ANY ANCILLARY AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREBY OR THEREBY. EACH PARTY (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE ANCILLARY AGREEMENTS, AS APPLICABLE, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 10.6.

Section 10.7.  Notices.  All demands, notices, communications and reports provided for in this Agreement shall be in writing and shall be either sent by facsimile transmission with confirmation to the number specified below or personally delivered or sent by reputable overnight courier service (delivery charges prepaid) to any Party at the address specified below, or at such address, to the attention of such other Person, and with such other copy, as the recipient Party has specified by prior written notice to the sending Party pursuant to the provisions of this Section 10.7.

If to the Purchaser to:

[●]

With copies (that shall not constitute notice) to:

If to the Main Sellers or the Sellers, to:

[NNC]
[●]
Attention: [●]
Facsimile: [●]

**[NNL]**
**[●]**
**Attention: [●]**
**Facsimile: [●]**

Error! Unknown document property name.

[New York #2071434 v4]

**452**

[NNI]
[●]
**Attention: [●]**
**Facsimile: [●]**

With copies (that shall not constitute notice) to:

[●]

and

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
United States
Attention: [●]
Facsimile: +1-212-225-3999

and

Ogilvy Renault LLP
200 Bay Street
Suite 3800, P.O. Box 84
Royal Bank Plaza, South Tower
Toronto, Ontario M5J 2Z4
Canada
Attention: [●]
Facsimile: [●]

Any such demand, notice, communication or report shall be deemed to have been given pursuant to this Agreement when delivered personally, when confirmed if by facsimile transmission, or on the second calendar day after deposit with a reputable overnight courier service, as applicable.

Section 10.8.  Exhibits; Sellers Disclosure Schedule.  The Sellers Disclosure Schedule and the Exhibits attached hereto constitute a part of this Agreement and are incorporated into this Agreement for all purposes as if fully set forth herein.

(b)  For purposes of the representations and warranties of the Parties contained in this Agreement, disclosure in any section of the Sellers Disclosure Schedule [or the Purchaser Disclosure Schedule], of any facts or circumstances shall be deemed to be adequate response and disclosure of such facts or circumstances with respect to all representations or warranties by the Sellers[ or the Purchaser, as the case may be,] calling for disclosure of such information, whether or not such disclosure is specifically associated with or purports to respond to one or more of such representations or warranties, if it is reasonably apparent from the Sellers Disclosure Schedule [or the Purchaser Disclosure Schedule, as the case may be,] that such disclosure is applicable.  The inclusion of any information in any section of the Sellers Disclosure Schedule

NY\1582469.7

Error! Unknown document property name.

[New York #2071434 v4]

**453**

[or the Purchaser Disclosure Schedule], or other document delivered by the Sellers [or the Purchaser] pursuant to this Agreement shall not be deemed to be an admission or evidence of the materiality of such item, nor shall it establish a standard of materiality for any purpose whatsoever.

Section 10.9.  Counterparts.  The Parties may execute this Agreement in two or more counterparts (no one of which need contain the signatures of all Parties), each of which will be an original and all of which together will constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or e-mail attachment shall be effective as delivery of a manually executed counterpart of this Agreement. The party sending the facsimile or e-mail attachment will also deliver the original signed counterpart to the other Parties, however, failure to deliver the original signed counterpart shall not invalidate this Agreement.

Section 10.10. No Presumption.  The Parties agree that this Agreement was negotiated fairly between them at arm's length and that the final terms of this Agreement are the product of the Parties' negotiations.  Each Party represents and warrants that it has sought and received experienced legal counsel of its own choosing with regard to the contents of this Agreement and the rights and obligations affected hereby.  The Parties agree that this Agreement shall be deemed to have been jointly and equally drafted by them, and that the provisions of this Agreement therefore should not be construed against a Party on the grounds that such Party drafted or was more responsible for drafting the provisions.  The Parties do not intend that the presumptions of any Laws relating to the interpretation of contracts against the drafter of any particular clause should be applied to this Agreement and therefore waive the effects of such Laws.

Section 10.11. Severability.  If any provision, clause, or part of this Agreement, or the application thereof under certain circumstances, is held invalid, illegal or incapable of being enforced in any jurisdiction, (i) as to such jurisdiction, the remainder of this Agreement or the application of such provision, clause or part under other circumstances, and (ii) as for any other jurisdiction, all provisions of this Agreement, shall not be affected and shall remain in full force and effect, unless, in each case, such invalidity, illegality or unenforceability in such jurisdiction materially impairs the ability of the Parties to consummate the transactions contemplated by this Agreement.  Upon such determination that any clause or other provision is invalid, illegal or incapable of being enforced in such jurisdiction, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible even in such jurisdiction.

Section 10.12. Entire Agreement.

(a)    This Agreement, the other Transaction Documents, the Confidentiality Agreement and the Clean Team Confidentiality Agreement set forth the entire understanding of the Parties relating to the subject matter thereof, and all prior or contemporaneous understandings, agreements, representations and warranties, whether written or oral, are superseded by this Agreement, the other Transaction Documents, the Confidentiality

**143**

**454**

Agreement or the Clean Team Confidentiality Agreement, and all such prior or contemporaneous understandings, agreements, representations and warranties are hereby terminated.  In the event of any irreconcilable conflict between this Agreement and any of the other Transaction Documents, the Confidentiality Agreement or the Clean Team Confidentiality Agreement, the provisions of this Agreement shall prevail, regardless of the fact that certain other Transaction Documents, such as the Local Sale Agreements (if any), may be subject to different governing Laws.

(b)    For the sake of clarity, the provisions of the EMEA Asset Sale Agreement have been drafted separately from the provisions in the body of this Agreement to reflect differing market practices in the countries of jurisdiction of the EMEA Sellers.  Unless the context specifically requires, the provisions contained in the body of this Agreement and the provisions of the EMEA Asset Sale Agreement shall be interpreted independently and without reference to each other.

Section 10.13. <u>Availability of Equitable Relief; Sole Remedy</u>.  The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached.  Accordingly, subject to the limitations set forth in this Section 10.13 and Section 9.2(c), each of the Parties shall, without the posting of bond or other security (any requirement for which the Parties hereby waive), be entitled to equitable relief to prevent or remedy breaches of this Agreement, without the proof of actual damages, including in the form of an injunction or injunctions or orders for specific performance in respect of such breaches.  Each Party agrees to waive any requirement for the security or posting of any bond in connection with any such equitable remedy.  Each Party further agrees that the only permitted objection that it may raise in response to any action for equitable relief is that it contests the existence of a breach or threatened breach of the provisions of this Agreement, and no Party will allege, and each Party hereby waives the defense or counterclaim, that there is an adequate remedy at Law except as expressly provided in this Section 10.13.  Other than payment of the Break-Up Fee and Expense Reimbursement as provided pursuant to Section 9.2, equitable remedies shall constitute the sole remedy of the Purchaser under or in respect of this Agreement; <u>provided</u>, <u>however</u>, that notwithstanding anything herein to the contrary, it is acknowledged and agreed that no equitable remedy or other remedy other than payment of the Break-Up Fee shall be available to the Purchaser hereunder in the event the Break-Up Fee becomes payable in accordance with the terms hereof.  Without limiting the preceding sentence, it is acknowledged and agreed that under no circumstances shall any Party be liable for punitive damages or indirect, special, incidental, or consequential damages arising out of or in connection with this Agreement or the transactions contemplated hereby or any breach or alleged breach of any of the terms hereof, including damages alleged as a result of tortious conduct.

Section 10.14. <u>Bulk Sales Laws</u>.  Subject to the entry of the U.S. Sale Order, each Party waives compliance by the other Party with any applicable bulk sales Law.

Section 10.15. <u>Main Sellers as Representatives of Other Sellers</u>.  For all purposes of this Agreement:

<u>144</u>

455

   (i)  each Other Seller listed in Section 10.15(a)(i) of the Sellers Disclosure Schedule hereby irrevocably appoints NNC as its representative;

   (ii)  each Other Seller listed in Section 10.15(a)(ii) of the Sellers Disclosure Schedule hereby irrevocably appoints NNL as its representative; and

   (iii)  each Other Seller listed in Section 10.15(a)(iii) of the Sellers Disclosure Schedule hereby irrevocably appoints NNI as its representative.

   (b)  Pursuant to Section 10.15(a), each of NNC, NNL and NNI shall expressly have the power to, in the name and on behalf of each of its Respective Affiliates (as defined below), (i) take all decisions and carry out any actions required or desirable in connection with this Agreement, (ii) send and receive all notices and other communications required or permitted hereby, and (iii) consent to any amendment, waivers and modifications hereof.

   (c)  For the purposes of this Agreement, "**Respective Affiliates**" means: (i) with respect to NNC, each Other Seller listed in Section 10.15(a)(i) of the Sellers Disclosure Schedule; (ii) with respect to NNL, each Other Seller listed in Section 10.15(a)(ii) of the Sellers Disclosure Schedule, and (iii) with respect to NNI, all the other U.S. Debtors and each Other Seller listed in Section 10.15(a)(iii) of the Sellers Disclosure Schedule.

   (d)  Each Respective Affiliate shall indemnify the Main Seller that acts as representative of such Respective Affiliate pursuant to this Section 10.15(d) for, and hold it harmless against, any loss, liability or expense, including reasonable attorneys' fees, incurred by such Main Seller without gross negligence, bad faith or willful misconduct, for serving in the capacity of representative of such Respective Affiliate hereunder.

   Section 10.16. <u>Execution by Other Sellers</u>. The Purchaser hereby acknowledges that the Other Sellers are not executing this Agreement as of the date hereof. This Agreement shall be binding on all parties that have executed this Agreement from the time of such execution, regardless of whether all Sellers have done so. Between the date hereof and the Closing Date, the Main Sellers hereby agree that they shall cause each Other Seller to execute a counterpart to this Agreement no later than the day prior to the Closing Date, agreeing to be bound as a Seller under this Agreement and authorizing NNC, NNL or NNI, as applicable, to act as its representative under Section 10.15 hereof.

   Section 10.17. <u>Obligations of the Sellers</u>. When references are made in this Agreement to certain Sellers causing other Sellers or other Affiliate(s) to undertake (or to not undertake) certain actions, or agreements are being made on behalf of certain other Sellers or other Affiliates, "Sellers" for purposes of such clause shall be deemed to mean, respectively, NNI (in the case of a U.S. Debtor) and NNL (in the case of a Canadian Debtor other than NNC and a Non-Debtor Seller).

   **[Remainder of this page intentionally left blank. Signature page follows.]**

456

IN WITNESS WHEREOF, the Parties have duly executed this Asset Sale Agreement as of the date first written above.

[PURCHASER]

By: _____
    Name:
    Title:

Nortel Networks Corporation

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

Nortel Networks Limited

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

Nortel Networks Inc.

By: _____
    Name:
    Title:

Signature Page – Asset Sale Agreement

NY\1582469.1 1582469.7

Error! Unknown document property name.

[New York #2071434 v4]

457

The undersigned EMEA Sellers are executing this Agreement solely for purposes of agreeing to [Section 2.2, Section 5.23, Section 9.2, Section 9.3, and Section 10.13] of this Agreement.


**SIGNED** for and on behalf of [●] (in          )          [●]
administration) by [●] as Joint                   )
Administrator (acting as agent and without        )
personal liability) in the presence of:           )


Witness signature

                                                  )
Name:                                             )
Address:                                          )


**SIGNED** by                                     )
duly authorized for and on behalf of [●] in       )          [●]
the presence of:                                  )


Witness signature

                                                  )
Name:                                             )
Address:                                          )


Signature Page – Asset Sale Agreement

147

**458**

| | |
|---|---|
| **SIGNED** by [●] in his own capacity and on | ) |
| behalf of the Joint Administrators without | )    [●] |
| personal liability and solely for the purpose | ) |
| of obtaining the benefit of the provisions of | ) |
| this Agreement expressed to be conferred | ) |
| on or given to the Joint Administrators  in | ) |
| the presence of: | ) |

Witness signature

| | |
|---|---|
| | ) |
| Name: | ) |
| Address: | ) |

| | |
|---|---|
| **SIGNED** by | ) |
| duly authorized for and on behalf of | )    [Director] |
| [                  ] in the presence of: | ) |

Witness signature

| | |
|---|---|
| | ) |
| Name: | ) |
| Address: | ) |

# EXHIBIT J

459

This is Exhibit ___"J"___ referred to in the
affidavit of ___JOHN DOOLITTLE___
sworn before me, this ___30th___
day of ___NOVEMBER___ 20 _10_

_Donna Woollett_

A COMMISSIONER FOR TAKING AFFIDAVITS

DONNA WOOLLETT, Notary Public, Regional Municipality of Peel,
limited to the attestation of instruments and the
taking of affidavits, for Nortel Networks Corporation
and its subsidiaries. Expires January 29, 2011.

# NORTEL NETWORKS

## INVOICE

**Nortel Networks Limited**
5945 Airport Rd
Suite 360
Mississauga, Ontario
CANADA
L4V 1R9

First Inquiries: John Volokhov
Telephone: 972-684-4637
Fax:
E-mail: johnvo@nortel.com

| | |
|---|---|
| Invoice Number | |
| Invoice Date | 2905/2010 |
| Page | 1 of 1 |

| Customer ID | Customer Purchase Order No | INT Job No | Common Product Code (CPC) | | INT Sales Order No | | Original Inv No | | | Clarify Contact ID | | | | | Trans Type | GED Tax Code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Terms of Sale

NET 30 DAYS

Ship Date

| Line No | Item Number | | | | Description | Billing Start Date | Billing End Date | UM | Noun | MFG | Post | CPR | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 6% GST x Fixed Assets of $685,661.65 = | | | | | | | | | $ 44,284.56 |
| | | | | | $44,284.58 USD | | | | | | | | | |
| | | | | | 5% GST x Inventory of $1,775,912.13 = | | | | | | | | | $ 88,790.61 |
| | | | | | $98,799.61 USD | | | | | | | | | |
| | | | | | 6% ON PST x Fixed Assets of $687,221.95 = | | | | | | | | | $ 68,097.71 |
| | | | | | $88,097.71 USD | | | | | | | | | |
| | | | | | 7.5% GST x Fixed Assets of $1,052.29 = | | | | | | | | | $ 78.77 |
| | | | | | $78.77 USD | | | | | | | | | |
| | | | | | 7.5% GST x Inventory of $1,042,190.26= | | | | | | | | | $ 82,072.45 |
| | | | | | $82,072.45 | | | | | | | | | |

GSTIHST 104062258 RT0001

GST 100150910 TQ0007

| | | | |
|---|---|---|---|
| | | SubTotal | $ 283,314.15 |
| | | Sea Trak | |
| | | Sales Tax | $ |
| | | Total Tax | $ 283,314.15 |

BILL TO
Genband Canada ULC
3500 Carling Ave
Ottawa, ON
Canada
K2H 8E9

REMIT TO Nortel Networks, Inc
ADDRESS 2055 Coleman Center Drive
Chicago, IL 60663

**Total Due** $USD

$283,314.15

Payment Terms : Payment due and thirty (30) days from invoice date. Past due amounts will incur interest at 1% per month. Interest cannot be reduced without Nortel obtaining authorization.

Genband Canada ULC
3500 Carling Ave
Ottawa, ON
Canada
K2H 8E9

460

**Nortel Networks Limited**
**5945 Airport Rd**
**Suite 360**
**Mississauga, Ontario**
**CANADA**
**L4V 1R9**

# N✪RTEL
## NETWORKS

## INVOICE

For inquiries: John McAdoo
Telephone: 972-684-4657
Fax:
E-mail: johnmc@nortel.com

| Invoice Number | |
| --- | --- |
| Invoice Date | 28/09/2010 |
| Page | 1 of 1 |

| Customer ID | Customer Purchase Order No | | NT Sales Order No | | | Original Line No | | Clarity Contact ID | | | | | | Trans Type | GEO Tax Code |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Terms of Sale | | NT Job No | | | | | | | | | | | | | Ship Date |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| NET 30 DAYS | | | | | | | | | | | | | | | |

| Line No | Item Number | Common Product Code (CPC) | Description | Billing Start Date | Billing End Date | U/M | Noun | MFG | Pcat | CFR | Unit Price | Extended Price |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | GST/HST 119406259 RT0001 | | Nortel Networks Limited Transfer Tax Liability on the CVAS INTANGIBLE Assets of $2,660,000 USD to Genband Ireland | | | | | | | | 13% HST x Intangible Asset of $2.66M USD = $345,800 USD | 345,800.00 |

| | | | | | Sub Total | | 345,800.00 |
| --- | --- | --- | --- | --- | --- | --- | --- |

| S H I P TO | Genband Ireland Limited 10 McCurtain Hill CO. Cork Ireland | B I L L TO | Genband Ireland Limited 10 McCurtain Hill CO. Cork Ireland | | Sub Total | 0.00 |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | Sales Tax | 345,800.00 |

| | REMIT TO Nortel Networks, Inc | | | Total Tax | | 0.00 |
| --- | --- | --- | --- | --- | --- | --- |
| | ADDRESS 3985 Collection Center Drive Chicago, IL 60693 | | | **Total Due** **$USD** | | **$345,800.00** |

Payment Terms - Payment due net thirty (30) days from
invoice date. Past due amounts will incur interest at 1%
per month. Material cannot be returned without first
obtaining authorization

461

# INVOICE

**NØRTEL**
NETWORKS

Nortel Networks Technology Corporation
5945 Airport Rd
Suite 360
Mississauga, Ontario
CANADA
L4V 1R9

For Inquiries: John McAdoo
Telephone: 972-684-4657
Fax:
E-mail: johnmc@nortel.com

| Invoice Number | |
| Invoice Date | 29/06/2010 |
| Page | 1 of 1 |

| Customer ID | Customer Purchase Order No | | N' Sless Order No | | | | Original Inv No | | Claríty Contract ID | | | | | | Trans Type | | GEO Tax Code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Terms of Sale**

NET 30 DAYS

| | | | | Ship Date |
|---|---|---|---|---|

| Line No | Item Number | Common Product (CPC) | Code | Description | Billing Start Date | Billing End Date | U/M | Noun | MFG | Prod | CPR | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Sale of Fixed Assets $371,276.79 USD | | | | | | | | | 371,276.79 |
| | | | | 5% GST x Fixed Assets of $7,425,535.79 | | | | | | | | | |

GST/HST 118952274 RT0001

| | | | | | | | Sub Total | | | | | | 371,276.79 |

| SHIP TO | Genband Canada ULC<br>3500 Carling Ave<br>Ottawa ON<br>Canada<br>K2H 8E9 | | | BILL TO | Genband Canada ULC<br>3500 Carling Ave<br>Ottawa ON<br>Canada<br>K2H 8E9 | | | Sub Total<br>Sales Tax | | | | | | 0.00<br>371,276.79 |
| | | | | | | | | Total Tax | | | | | | 0.00 |

Payment Terms: Payment due net thirty (30) days from invoice date.
Past due amounts will incur interest at 1½ per month. Balance cannot be returned without first obtaining authorization.

REMIT TO Nortel Networks Inc
ADDRESS 2988 Collection Center Drive
Chicago IL 60693

**Total Due**
$USD

**$371,276.79**

# EXHIBIT K

462

This is Exhibit.......... "K"..........referred to in the
affidavit of..JOHN DOOLITTLE....
sworn before me, this......30th........
day of....NOVEMBER........20.10

...Donna Woollett...
A COMMISSIONER FOR TAKING AFFIDAVITS

**November 18, 2010**

# NORTEL

**VIA FACSIMILE**

DONNA WOOLLETT, Notary Public, Regional Municipality of Peel,
limited to the attestation of instruments and the
taking of affidavits, for Nortel Networks Corporation
and its subsidiaries.  Expires January 29, 2011.

**GENBAND US LLC**
3605 E. Plano Pkwy., Suite 100
Plano, Texas 75074
Attn:  Shauna Martin, General Counsel
Facsimile: +1-972-265-3599

Ladies and Gentlemen:

    Reference is made to the Asset Sale Agreement by and among Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Inc. ("NNI"), the other entities identified therein as Sellers (together with NNC, NNL and NNC, "Nortel"), GENBAND US LLC ("GENBAND"), dated December 22, 2009, as amended from time to time (the "ASA").  Terms used but not defined in this letter have the meanings ascribed to them in the ASA.

    I write concerning the issue of payment by GENBAND to Nortel of certain Canadian transfer taxes in connection with the ASA.  As you are aware, Nortel has been in communication with your counsel at Stikeman Elliott for 6 months to reach an agreement on the appropriate amount of Canadian transfer taxes owing to Nortel in connection with transfer of the tangible and intangible assets.  It is my understanding that the parties reached an agreement on this matter and accordingly Nortel issued draft invoices to GENBAND for the amounts owed on October 1, 2010.  GENBAND then indicated disagreement with the agreed upon figures and informed Nortel it would revert with specifics as to its disagreement.

    GENBAND, through Stikeman Elliott, has yet to respond to Nortel's repeated requests for additional information concerning GENBAND's disagreement.  The payment of transfer taxes to Nortel are past due.  Nortel requests that GENBAND immediately remit payment, or, at a minimum, provide Nortel with specific information as to GENBAND's disagreement over the transfer tax amount.

    Nortel does not intend to waive, and expressly reserves our right to pursue, any and all available remedies with respect to the matters in dispute.

        Sincerely,

        **Nortel Networks Inc.**

        Lynn Egan, Secretary

# EXHIBIT L

**463**

This is Exhibit "L" referred to in the
affidavit of JOHN DOOLITTLE
sworn before me, this 30th
day of NOVEMBER 20 10

_____
A COMMISSIONER FOR TAKING AFFIDAVITS

DONNA WOOLLETT, Notary Public, Regional Municipality of Peel,
limited to the attestation of instruments and the
taking of affidavits, for Nortel Networks Corporation
and its subsidiaries. Expires January 28, 2011.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| NORTEL NETWORKS INC., *et al.* | ) Case No. 09-10138 (KG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) Objection Date: December 1, 2010 at 4:00 p.m. |
| | ) Hearing Date: December 8, 2010 at 10:00 a.m. |

### MOTION OF GENBAND INC. FOR ENTRY OF AN ORDER PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE GRANTING RELIEF FROM THE AUTOMATIC STAY TO COMPEL ARBITRATION

GENBAND Inc. ("GENBAND"), by and through its undersigned counsel, hereby moves

(the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the

"Order"), granting relief from the automatic stay pursuant to Section 105 and 362(d) of Title 11

of the United States Code (the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to compel arbitration between Nortel

Networks Corporation, Nortel Networks Limited, and Nortel Networks Inc. (collectively,

"Nortel," and, together with its affiliate filing entities, the "Debtors") and GENBAND pursuant

to the terms of the Asset Sale Agreement, dated as of December 22, 2009, by and among Nortel,

GENBAND and the entities identified as sellers therein (the "ASA"),[1] attached hereto as Exhibit

B. In support of this Motion, GENBAND respectfully states as follows:

### PRELIMINARY STATEMENT

1.    GENBAND seeks relief from the automatic stay to compel arbitration pursuant

to Section 2.2.3.1(c) of the ASA (the "Mandatory Arbitration Provision") for the purpose of

resolving a dispute with respect to the Purchase Price Adjustment (as defined below).

464

2.    A dispute has arisen between GENBAND and Nortel regarding the Purchase Price Adjustment pursuant to the ASA. The Mandatory Arbitration Provision states that "any disagreement" relating to the Purchase Price Adjustment shall be submitted to arbitration. However, Nortel refuses to do so. GENBAND has therefore been forced to ask this Court to intervene and order Nortel to comply with the promise it made in return for the substantial consideration already paid by GENBAND.

3.    This Court should enforce the Mandatory Arbitration Provision. Third Circuit precedent emphasizes the importance of arbitration provisions, finding that "[w]here an otherwise applicable arbitration clause exits, a bankruptcy court lacks the authority and discretion to deny its enforcement, *unless* the party opposing arbitration can establish congressional intent . . . to preclude waiver of judicial remedies for the statutory rights at issue." *Mintze v. Am. Gen. Fin. Serv., Inc. (In re Mintze)*, 434 F.3d 222, 231 (3d Cir. 2006) (emphasis in original).

4.    The Mandatory Arbitration Provision was negotiated for and contemplated as part of the consideration under the ASA. Neither Nortel nor the Debtors' estate will be prejudiced if compelled to comply with the clear agreement provided for in the Mandatory Arbitration Provision. GENBAND, on the other hand, will suffer substantial hardship if it is denied the quick, efficient, and final process that is the part of the benefit of the bargain it made with Nortel when it entered into the ASA. The plain language of the Mandatory Arbitration Provision leaves no doubt that the parties agreed to arbitrate *"any disagreement"* regarding the Purchase Price Adjustment. It is therefore abundantly clear that GENBAND's claim is not frivolous, which is all GENBAND need show.

---

[1] All terms not otherwise defined herein shall have the meaning ascribed to them under the ASA.

2

465

5.      For these reasons, the Court should lift the stay and compel arbitration pursuant to the Mandatory Arbitration Provision.

## JURISDICTION

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.      The statutory bases for the relief sought is Section 362 of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014.

## BACKGROUND

8.      On December 22, 2009, Nortel and GENBAND entered into the ASA.

9.      On September 15, 2010, and pursuant to Section 2.2.3.1(a) of the ASA, GENBAND timely delivered to Nortel a letter and written statement (the "Closing Statement"), attached hereto as Exhibit C, which declared GENBAND's position with regards to the purchase price adjustment (the "Purchase Price Adjustment") necessary to determine the final purchase price under the ASA (the "Final Purchase Price").

10.     On October 13, 2010, and pursuant to Section 2.2.3.1(b) of the ASA, Nortel timely delivered to GENBAND a letter and written statement (the "Disagreement Notice"), attached hereto as Exhibit D, which provided Nortel's position with regards to the Purchase Price Adjustment, and which detailed the disputes that Nortel was raising with GENBAND's Closing Statement.

11.     Section 2.2.3.1(b) of the ASA provides, in the event of disagreement between the parties with regards to the Closing Statement, the Disagreement Notice, or the Purchase Price Adjustment, that the parties would negotiate in good faith over a fifteen-day period to resolve such disagreement.

3

466

12.    Section 2.2.3.1(c) of the ASA provides that if the parties "are unable to resolve *any disagreement* as contemplated by Section 2.2.3.1(b) within fifteen (15) days after delivery of a Disagreement Notice by [Nortel], the Independent Auditor shall serve as arbitrator . . . to resolve such disagreement."

13.    The ASA requires, again under Section 2.2.3.1(c), that the parties use their "commercially reasonable efforts to cause the Accounting Arbitrator to deliver . . . as promptly as practicable (and in no event later than thirty (30) days after his or her appointment), a written report setting forth the resolution of any such disagreement." This provision was intended to ensure that a speedy, efficient and final process would be used to resolve any disputes over the Purchase Price Adjustment.

14.    In the letter included in the Disagreement Notice, Nortel informed GENBAND that it did not intend to waive its right to pursue all available remedies, including judicial relief, in order to resolve disputes in connection with the Purchase Price Adjustment.

15.    In a letter dated October 25, 2010 (the "October 25 Letter"), attached hereto as Exhibit E, GENBAND responded to Nortel's letter included with the Disagreement Notice and stated in no uncertain terms that refusing to arbitrate with regards to the dispute with regards to the Purchase Price Adjustment violated the agreed terms of the ASA. GENBAND notified Nortel, specifically, that pursuant to the express terms of Section 2.2.3.1(b) the ASA, arbitration is the exclusive procedure available for the resolution of *any disagreement* regarding the Purchase Price Adjustment.

16.    Nortel did not respond to the October 25 Letter. In a letter to Nortel dated November 9, 2010 (the "November 9 Letter"), attached hereto as Exhibit F, GENBAND again emphasized its desire to initiate arbitration pursuant to the Mandatory Arbitration Provision.

4

467

GENBAND noted that Nortel had failed to provide any explanation as to why it was not

prepared to begin the arbitration process, and that it could not point to any provision in the ASA

that justified its position.

17.    In a letter dated November 10, 2010 (the "November 10 Letter"), attached hereto

as Exhibit G, Nortel finally responded to GENBAND and refused to submit to arbitration as

required by the ASA.

18.    Nortel has thus repudiated its obligations under the ASA.

## RELIEF REQUESTED

19.    By this Motion, GENBAND respectfully requests that this Court enter an Order,

pursuant to Section 362(d)(1) of the Bankruptcy Code, lifting the automatic stay and compelling

Arbitration for the purpose of resolving the dispute with respect to the Purchase Price

Adjustment.

## BASIS FOR RELIEF

20.    When presented with a motion to compel arbitration, courts in this Circuit have

considered the strong federal policy that favors the arbitration of disputes. *See In re Mintze*, 434

F.3d at 229 ("The FAA has established a strong policy in favor of arbitration . . . . To overcome

enforcement of arbitration, a party must establish congressional intent to create an exception to

the FAA's mandate with respect to the party's statutory claims."). "It is well established that

arbitration is a favored mechanism for resolving disputes, especially where the parties previously

agreed to utilize arbitration." *In the Matter of TEU Holdings, Inc.*, 287 B.R. 26, 36 (Bankr. D.

Del. 2002); *see also In re Gurga, d/b/a Source Commcs.*, 176 B.R. 196, 200 (B.A.P. 9th Cir.

1994) (citing *Graham Oil Co. v. ARCO Products, Inc.*, 43 F.3d 1244, 1247 (9th Cir. 1994), for

the proposition that "arbitration is a form of dispute resolution that finds favor in the courts").

5

468

21.    The issues raised in the Arbitration are common state law issues.  Where the arbitration is based upon state law claims, "neither the Bankruptcy Code nor its legislative history contain anything which would prevent a court of arbitration from determining whether [a claimant's] claims are valid." *In re Gurga*, 176 B.R. at 200.

22.    In fact, the United States Supreme Court has held that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, establishes a federal policy favoring arbitration that requires courts to "rigorously enforce agreements to arbitrate." *Shearson/Am. Exp. v. McMahon*, 482 U.S. 220, 226 (1987) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *see also Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1156 (3d Cir. 1989) (citations omitted).  The Court in *McMahon* held that when a dispute is subject to the terms of an arbitration agreement, the FAA requires a court to stay its proceedings and compel arbitration, except in limited circumstances.  *McMahon*, 482 U.S. at 226.  The Third Circuit, relying on *McMahon*, has held that "[w]here an otherwise applicable arbitration clause exits, a bankruptcy court lacks the authority and discretion to deny its enforcement, *unless* the party opposing arbitration can establish congressional intent . . . to preclude waiver of judicial remedies for the statutory rights at issue." *In re Mintze*, 434 F.3d at 231.

23.    This Court may lift the stay pursuant to Section 362(d) of the Bankruptcy Code, which provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (A) of this section, such as by terminating, annulling, modifying or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d).

24.    "Cause," undefined by the Bankruptcy Code, must be determined on a case-by-case basis. *See In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Int'l*

6

469

*Bus. Machines v. Fernstrom Storage and Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991)).  The

legislative history of Section 362 indicates that "cause may be established by a single factor such

as 'a desire to permit an action to proceed . . . in another tribunal,' or 'lack of any connection

with or interference with the pending bankruptcy case.'"  *Id.* (citing H.R. Rep. No. 95-595, 95th

Cong., 1st Sess., 343-44 (1977)).

      25.    In determining whether there is "cause" to modify the automatic stay, this Court

has considered "whether: (a) [a]ny great prejudice to either the bankrupt estate or the debtor will

result from continuation of the civil suit, (b) the hardship to the [non-bankrupt party] by

maintenance of the stay considerable outweighs the hardship of the debtor, and (c) the creditor

has a probability of prevailing on the merits."  *In re Rexene Prods. Co.*, 141 B.R. at 576.  *See*

*also In re Downey Fin. Corp*, 428 B.R. 595 (Bankr. D. Del. 2010).

      26.    Nortel will not be prejudiced by allowing the Arbitrator to resolve the dispute

regarding the Purchase Price Adjustment.  The arbitration contemplated by the mutually-agreed-

to Section 2.2.3.1(c) of the ASA, would provide an efficient and final determination with regards

to the disputes regarding the Purchase Price Adjustment.  Such efficient and final resolution

would inure to the benefit of Debtors' estate because Debtors would suffer with lengthy and

expensive litigation in this Court, which could hinder the Debtors' reorganization efforts and

reduce the value of Debtors' estate.  The issues in dispute are insubstantial in number and

complexity, and the correspondence between the parties demonstrates that little preparation time

will be required to proceed to the Arbitration.

      27.    On the other hand, continued enforcement of the automatic stay would result in

great hardship to GENBAND because it would be denied the benefit of the negotiated

Mandatory Arbitration Provision of the ASA.  The parties agreed to such provision with the sole

470

purpose of preventing the type of burdensome litigation that would ensue in the Bankruptcy Court if the stay were enforced. GENBAND would be forced to dedicate valuable time and resources to litigating an issue that it and Nortel expressly agreed to arbitrate, for these very reasons.

28.    In order to demonstrate that it has a probability of prevailing on the merits, GENBAND must show only that its claim is not frivolous. *See In re Levitz Furniture Corp.*, 267 B.R. 516, 523 (Bankr. D. Del. 2000) (citing *In re Rexene Prods. Co.*, 141 B.R. at 578). This Court need not engage in an in-depth review of the merits of the claim because "one of the primary purposes in granting relief from the stay . . . is to economize judicial resources. To require a merits analysis in every case would in large part defeat this objective and frustrate the effort to resolve § 362(d) motions expeditiously." *Peterson v. Cundy (In re Peterson)*, 116 B.R. 247, 250 (D. Colo. 1990).

29.    In this case, the mutually agreed upon Mandatory Arbitration Provision is a valid and enforceable provision of the type typically favored by this Court. GENBAND submits that the Mandatory Arbitration Provision meets the standard set forth in *In re Rexene Prods. Co.*; therefore, the Court should lift the automatic stay and compel arbitration.

## NOTICE

30.    Notice of this Motion has been given to: (a) counsel for the Debtors; (b) counsel for the Committee; (c) counsel for the Office of the United States Trustee; and (d) those parties who have filed and served notices of appearance pursuant to Bankruptcy Rule 2002. No other or further notice is necessary.

## NO PRIOR REQUEST

31.    No prior motion for the relief requested herein has been made to this Court or any other court.

8



## CONCLUSION

32.    WHEREFORE, GENBAND respectfully requests that the Court enter an Order (i)
lifting the automatic stay pursuant to Sections 105 and 362(d) of the Bankruptcy Code to allow
arbitration to commence, (ii) compelling the commencement of arbitration pursuant to Section
2.2.3.1(c) of the ASA, and (iii) granting such further and other relief as the Court deems just.

Dated:  November 18, 2010          Respectfully submitted,
        Wilmington, Delaware

                                   */s/ Michael R. Lastowski*
                                   Michael R. Lastowski (No. 3892)
                                   Sommer L. Ross (No. 4598)
                                   DUANE MORRIS, LLP
                                   1100 North Market Street, Suite 1200
                                   Wilmington, Delaware 19801
                                   Telephone: (302) 657-4900
                                   Facsimile: (302) 657-4901
                                   E-mail:    mlastowski@duanemorris.com
                                              slross@duanemorris.com

                                   and

                                   Blair Connelly
                                   Eli J. Kay-Oliphant
                                   LATHAM & WATKINS LLP
                                   885 Third Avenue, Suite 1200
                                   New York, New York 10022-4834
                                   Telephone:  (212) 906-1200
                                   Facsimile:  (212) 751-4864
                                   E-mail:   blair.connelly@lw.com
                                             eli.kay-oliphant@lw.com

                                   *Counsel for GENBAND Inc.*

9

472.

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**AFFIDAVIT OF JOHN DOOLITTLE**
**(sworn November 30, 2010)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 2064530\2A

# TAB 3

**473.**

Court File No.: 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE | ) | WEDNESDAY, THE 15th DAY |
| | ) | |
| MR. JUSTICE MORAWETZ | ) | OF DECEMBER, 2010 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**
**(Genband Disagreement Notice)**

THIS MOTION, made by Nortel Networks Corporation ("NNC"), Nortel Networks
Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks Global
Corporation and Nortel Networks International Corporation (collectively, the "Applicants") for
the relief set out in the Applicants' Notice of Motion dated November 30, 2010 was heard this
day at 393 University Avenue, Toronto, Ontario.

ON READING the affidavit of John Doolittle sworn November 30, 2010 (the "Doolittle
Affidavit") and on hearing the submissions of counsel for the Applicants, Ernst & Young Inc. in
its capacity as the Monitor (the "Monitor"), and those other parties present, no one appearing for



any other person on the service list, although properly served as appears from the affidavit of Katie Legree sworn November 30, 2010, filed:

1.      THIS COURT ORDERS that the time for the service of the Notice of Motion and the Motion Record is hereby abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.      THIS COURT ORDERS that capitalized terms used in this Order and not otherwise defined shall have the meanings given to them in the Doolittle Affidavit.

3.      THIS COURT ORDERS AND DECLARES that this Court together with the U.S. Court have the exclusive authority and jurisdiction to hear the dispute relating to the "Deferred Profit Amount".

4.      THIS COURT ORDERS AND DECLARES that Genband Inc.'s (n/k/a Genband US LLC) (the "Purchaser") calculation of the "Deferred Profit Amount" in the written closing statement dated September 15, 2010 (the "Closing Statement") is not a dispute that is subject to determination by an Accounting Arbitrator as a purchase price adjustment dispute pursuant to Section 2.2.3.1.(c) of the Sale Agreement.

5.      THIS COURT ORDERS AND DECLARES that the Purchaser's calculation of the "Deferred Profit Amount" shall include only deferred revenues for services to be performed or products to be provided by the Business after the Closing Date.

6.      THIS COURT ORDERS AND DECLARES that the negative deferred cost-of-sales balance of $1,629,132 with respect to Nortel Networks (Luxembourg) S.A shall not be included in the calculation of the "Deferred Profit Amount".

7.      THIS COURT ORDERS AND DECLARES that for the avoidance of doubt, the "Deferred Profit Amount" shall be $34,284,392 and the Final Purchase Price shall be $179,508,745.

8.      THIS COURT ORDERS AND DIRECTS the Purchaser to: (i) immediately remit payment in accordance with the September 28, 2010 invoice for the Canadian transfer taxes

owed to Nortel; or (ii) deliver to the Sellers a written statement of its objections to the same; and (iii) fully cooperate with the Sellers in the resolution of this matter.

9.    THIS COURT ORDERS AND DIRECTS (i) the Purchaser to execute, within five (5) days of the entry of this Order, instructions to Wells Fargo Bank, National Association ("Wells Fargo"), as escrow agent, that provide for the release of $4,859,745 plus accumulated interest from the Escrow Fund established under an escrow agreement dated as of January 6, 2010 and amended on May 28, 2010 among Wells Fargo, the Purchaser, NNC, NNL, Nortel Networks Inc., Nortel Networks UK Limited (in administration) (the "Escrow Agreement") to the Distribution Agent (as agent for the Sellers and the EMEA Sellers) by wire transfer of immediately available funds.  Wells Fargo also is authorized upon presentation of this Order by the Sellers or the Purchaser, with or without the receipt of separate joint instructions, to release such amounts in accordance with section 4(b) of the Escrow Agreement.

10.    THIS COURT ORDERS AND DIRECTS (i) the Seller Parties (as defined in the Escrow Agreement) to execute, forthwith upon the release of the funds contemplated by paragraph 9 of this Order, instructions to Wells Fargo, as escrow agent, that provide for the release of the balance of the Escrow Fund to the Purchaser by wire transfer of immediately available funds. Wells Fargo also is authorized upon presentation of this Order by the Sellers or the Purchaser, with or without the receipt of separate joint instructions, to release such amounts in accordance with section 4(b) of the Escrow Agreement.

11.    THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.



- 4 -

12.    THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

_____

477

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**ORDER**
**(Genband Disagreement Notice)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 2065469\1A

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION,
NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

| | |
|---|---|
| | *ONTARIO*<br>SUPERIOR COURT OF JUSTICE<br>(COMMERCIAL LIST)<br><br>Proceeding commenced at Toronto |
| | **MOTION RECORD<br>VOLUME 2 OF 2<br>(returnable December 15, 2010)** |
| | **OGILVY RENAULT LLP**<br>Suite 3800<br>Royal Bank Plaza, South Tower<br>200 Bay Street<br>P.O. Box 84<br>Toronto, Ontario  M5J 2Z4<br><br>**Derrick Tay LSUC#: 21152A**<br>Tel: (416) 216-4832<br>Email: dtay@ogilvyrenault.com<br><br>**Jennifer Stam LSUC: #46735J**<br>Tel: (416) 216-2327<br>Email: jstam@ogilvyrenault.com<br><br>Fax: (416) 216-3930<br><br>Lawyers for the Applicants |