**EXHIBIT B**

**GENBAND**

**Shauna Martin**
office: 972.265.3890
facsimile: 972.461.7516
shauna.martin@genband.com

August 18, 2010

**Nortel Networks Corporation and Nortel Networks Limited**
5945 Airport Road, Suite 360
Mississauga, Ontario, Canada L4V 1R9
Facsimile: +1-905-863-2057
Attn: Anna Ventresca,
  *General Counsel-Corporate and Corporate Secretary*
Attn: Khush Dadyburjor,
  *Vice President, Mergers and Acquisitions*

**Nortel Networks Inc.**
Legal Department
220 Athens Way, Suite 300
Nashville, Tennessee, USA  37228
Facsimile: +1-615-432-4413
Attn: Lynn C. Egan
  *Secretary*

Ladies and Gentlemen,

We have received your letter dated August 13, 2010 responding to our numerous requests for information to which we are entitled pursuant to the Asset Sale Agreement by and among Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Inc. ("NNI"), the other entities identified therein as Sellers (together with NNC, NNL, and NNI, "Nortel"), GENBAND Inc. ("GB") and the other Designated Purchasers that became parties thereto (together with GB, "GENBAND"), dated December 22, 2009, as amended from time to time (the "ASA").  Terms used but not defined in this letter (including Annex A) have the meanings ascribed to them in the ASA.

We disagree with many of the statements included in the August 13, 2010 Letter and that you have made to us with respect to Nortel's interpretation of various provisions of the ASA.  In particular, Nortel's effort to apply purchase accounting in this process is completely at odds with both the letter and intent of the ASA.  We expressly reserve the right to raise those issues in the future, if necessary.  However, there is no need to debate them now, because our right to receive records is in no way dependent upon the resolution of those matters.

As you know, pursuant to Section 5.22(b) of the ASA, Nortel must preserve all pre-Closing Date records and provide GENBAND "reasonable access to such records during normal business hours."  Moreover, "[s]uch records may be sought under this

1

Section 5.22(b) for any reasonable purpose, including to the extent reasonably required in connection with accounting, litigation, federal securities disclosure, financing or other similar needs . . . ."

We have requested on many occasions, both verbally and in writing, and beginning prior to Closing under the ASA, that Nortel provide us with pre-Closing Date records; and in violation of the ASA, Nortel personnel have still refused to provide us these records. Our most recent request, by letter dated April 6, 2010, was refused by Nortel via the above-discussed letter dated August 13, 2010.

The August 13, 2010 letter states, in essence, that various records will not be provided because (a) Nortel believes we do not need them, and/or (b) it would be difficult or time-consuming for Nortel to retrieve the information.

The first point is entirely unavailing, as we are entitled to receive such information for any reasonable purpose—in this case, so that we can prepare our Closing Statement pursuant to Section 2.2.3.1(a) of the ASA. Your apparent disagreement with us about how that calculation should be made is no excuse under the ASA for failing to provide us with access to the necessary records. Further, the information is needed in any event for independent business reasons. To cite just two examples, it is necessary for historical records regarding the performance of the business and to create an accurate opening balance sheet.

To the extent that Nortel believes it would be difficult or time-consuming to retrieve the requested information, that is also irrelevant. We are prepared to review the necessary records to obtain the information ourselves, during regular business hours, as expressly contemplated by Section 5.22(b) of the ASA. So that your personnel can prepare for our team's arrival, we have prepared a description of the records that we will need to review, which is attached hereto as Annex A. Nortel's refusal to provide the records to this point (in violation of the ASA) has jeopardized if not made impossible our ability to produce the Closing Statement by the date it is due, August 31, 2010. As such, the inspection will need to begin within the next 5 business days. Therefore, please let us know by the close of business tomorrow where our team should go to inspect the records and the specific day when the inspection may begin.

GENBAND expressly reserves all of its rights and remedies.

        Sincerely,

        Shauna Martin, General Counsel
        **GENBAND**
        3605 E. Plano Pkwy., Suite 100
        Plano, Texas 75074
        Facsimile: +1-972-265-3581

2

Copies to:

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
United States
Attention:     David S. Allinson, Esq.
Facsimile:     +1-212-751-4864

Baker Botts LLP
2001 Ross Avenue, Suite 600
Dallas, Texas 75201
Attention:     Don J. McDermett, Jr., Esq.
               Curt Anderson, Esq.
Facsimile:     +1-214-661-4454
               +1-214-661-4900

Stikeman Elliott LLP
445 Park Avenue 7th Floor
New York, New York 10022
Attention:     Ron Ferguson, Esq.
Facsimile:     +1-212-371-7087

**Nortel Networks Limited and Nortel Networks Inc.**
5270 Sycamore Avenue
Bronx, New York 10471
Attention:     Robert Fishman
               Senior Counsel

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
United States
Attention:     Laurent Alpert
Facsimile:     +1-212-225-3999

Ogilvy Renault LLP
200 Bay Street
Suite 3800, P.O. Box 84
Royal Bank Plaza, South Tower
Toronto, Ontario M5J 2Z4
Canada
Attention:     Michael Lang
Facsimile:     +1-416-216-3930

3

# **Annex A**

**GENERAL**

Access to CVAS general ledger trial balance (or equivalent document) as of 5/28 (prior to carve-out procedures), and all supporting documents used to determine the underlying basis from which all 5/28 balances transferred to Genband were derived.

Access to support personnel responsible for determining amounts and balances presented to Genband, who can explain any and all variances between the 5/28 general ledger trial balance (or equivalent document) amounts and the balances presented to Genband.

Access to any and all supporting documents, schedules, and workpapers used to determine the amounts and balances presented to Genband and the reconciliation between such amounts and balances and the 5/28 general ledger trial balance (or equivalent document).

**UNBILLED ACCOUNTS RECEIVABLE (CIP)**

Detail of, and access to any and all documents supporting, unbilled A/R as of 5/28 (prior to carve-out procedures) for all data elements readily available, including, but not limited to, field attributes such as customer name, company code, G/L account, and unique identifier for the arrangement (e.g., NTID/ROOTID number).

**DEFERRED REVENUE**

Detail of, and access to any and all documents supporting, deferred revenue ledgers as of 5/28 (prior to carve-out procedures, and agreeing to 5/28 general ledger trial balance, reconciled as necessary) for all data elements readily available, including, but not limited to, field attributes such as customer name, unique identifier for the arrangement (e.g., NTID/ROOTID number), country, contract number, product type, revenue indicator/guidance (e.g., SOP 81-1, SOP 97-2), and G/L account.

Detail of, and access to any and all documents supporting, deferred cost ledgers as of 5/28 (prior to carve-out procedures, and agreeing to 5/28 general ledger trial balance, reconciled as necessary) for all data elements readily available, including, but not limited to, field attributes such as customer name, unique identifier for the arrangement (e.g., NTID/ROOTID number), country, contract number, product type, revenue indicator/guidance (e.g., SOP 81-1, SOP 97-2), and G/L account.

Access to any and all documents detailing any arrangements with a deferred revenue balance as of 5/28 (prior to carve-out procedures), which provide product arrangement status (e.g., Life-to-Date, or LTD, Report) for data elements readily available, including, but not limited to, field attributes such as deferred revenue balance, total contract value, total billings, revenue recognized to-date, total estimated costs, costs recognized to-date, remaining budget, end-user country and unique identifier for the arrangement (e.g., NTID/ROOTID number).

Access to any and all documents detailing any arrangements with a deferred revenue balance as of 5/28 (prior to carve-out procedures), including providing all contracts, contract accounting memos, checklists, and process documentation as of most recent date available (which may include June 30, 2010 if completed quarterly).

Provide all documents, schedules, and workpapers utilized to complete carve-out calculations for deferred revenue and deferred cost as of 5/28.

**ACCRUED VACATION and SPECIFIED EMPLOYEE LIABILITIES**

Access to any and all underlying documentation and access to personnel responsible for France and Italy, including assistance to properly understand certain elements of employee accrual data provided via Web Forum and by screen shot information received August 4, 2010. For example, for France need to understand adjustments applied to employee hourly rates for certain employee accrual calculations, as salary data is not consistently applied in worksheets utilized to calculate employee accruals per Web Forum. And for Italy, unable to locate support for hours accrued in order to recalculate certain employee accruals per Web Forum.

Access to any and all supporting documents, schedules, and workpapers for any employee liabilities not previously identified to Genband but for which a liability exists and should be transferred to Genband as of 5/28, such as PTO or sales commissions earned but not paid as of 5/28.

**OTHERS LT (a.k.a, TFR, other pension liabilities)**

Access to plan documents for all countries with defined benefit and/or defined contribution employee benefit plans with liabilities transferred to Genband and/or liabilities assumed for plans managed and setup by Genband.

For defined benefit pension liabilities transferred to and/or assumed by Genband, access to:

- all schedules, workpapers and calculations to support the pension liability accrual, including actuarial assumptions;
- most recent actuarial valuation report under local accounting, including but not limited to data attributes such as liability calculations, summary of assumptions and methods, and description of census data; and
- most recent actuarial valuation report under US GAAP, including but not limited to data attributes such as liability calculations, summary of assumptions and methods, and description of census data.

For any actuarial valuation report calculated for Nortel employees in general (and not just for CVAS employees), access to separate documentation describing the portion of the liability attributable to CVAS with similar data attributes as noted above.

For any employee benefit plan liabilities transferred to and/or assumed by Genband with related asset positions transferred as well, access to detail listing of assets transferred, by employee benefit plan, market value as of 5/28, and source for market value

**JULY ADJUSTMENTS TO GOODWILL BOOKED IN TSA COMPANY CODES**

Access to any and all personnel responsible for journal entry for USD $1,148,737 (Dr. #120005 Unbilled A/R, Cr. #255001 Goodwill) booked to Co 8200 by NBS via SAP feed received by Genband on August 12, 2010.
Access to any and all personnel responsible for the July adjustments to goodwill booked in TSA company codes, to determine whether these entries are included in the current web forum lead sheets.