IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
: 
In re                                              : Chapter 11
                                                   :
Nortel Networks Inc., *et al.*,[1]                 : Case No. 09-10138 (KG)
                                                   :
           Debtors.                  : Jointly Administered
                                                   :
                                                   : Hearing Date: January 12, 2011 at 9:30 a.m. (ET)
                                                   : Objections Due: January 5, 2011 at 4:00 p.m. (ET)
----------------------------------------------------------X

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT
TO FED. R. BANKR. P. 9019 APPROVING THE STIPULATION
RESOLVING CLAIM NO. 5047 FILED BY BSI SUB, INC.**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Debtors' entry into and approving the stipulation (the "Stipulation") with BSI Sub, Inc. (f/k/a/ Pingtel Corp.) ("BSI") and Bluesocket Inc. (the "Claimants"), attached hereto as Exhibit B, which settles and resolves the claims set forth in the Claimants' proof of claim against NNI, listed on the Debtors' claim registry as claim number 5047 (the "Claim") and (ii) granting them such other and further relief

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

1

as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate their remaining businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it were unable to maximize value through sales.  Since then, Nortel has sold many of its business units and assets to various purchasers.  Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

---

[3] The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4] The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

**Relief Requested**

7.  By this Motion, the Debtors seek an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing the Debtors' entry into the Stipulation and approving the terms of the Stipulation and (ii) granting them such other and further relief as the Court deems just and proper.

**Facts Relevant to this Motion**

8.  On July 31, 2008, the Claimants entered into a purchase agreement with NNI for the sale of substantially all of the assets ("the Assets") of Pingtel Corp. to NNI (the "Asset Purchase Agreement"). Bluesocket Inc. was a party to the sale as the sole shareholder of Pingtel Corp.. The sale included certain software and associated patents developed by Pingtel Corp., which NNI had been licensing from Pingtel Corp. prior to the acquisition. The sale closed on August 8, 2008 (the "Closing").

9.  NNI purchased the assets for cash consideration of $3,330,000 (the "Purchase Price") and withheld $550,000 of the Purchase Price (the "Withheld Purchase Price") in an interest bearing account to cover certain potential indemnification events that could have arisen within eighteen months following the Closing. No such indemnification events arose during the relevant time period.

10. The Asset Purchase Agreement provided for the possibility that additional consideration of up to $3,500,000 could become payable by NNI to Pingtel Corp. in the event that NNI and its affiliates, in the aggregate, met preset targets for the sale of certain software user licenses related to the Assets from the time of the Closing through December 31, 2010. Based upon a review of its records, NNI does not believe that any of the threshold targets set forth in the Asset Purchase Agreement were met during the relevant period.

11.     On September 30, 2009, the Claimants timely filed the Claim against NNI for $4,050,000, plus interest. This amount represents the Withheld Purchase Price and the $3,500,000 of potential earn-out payments.

12.     On March 19, 2010, the Claimants sent a letter to NNI demanding release of the Withheld Purchase Price based on the Claimants' belief that the funds were being held in escrow and thus not property of NNI's bankruptcy estate. NNI informed the Claimants that the Asset Purchase Agreement did not require NNI to deposit the Withheld Purchase Price into an escrow account with a third-party escrow agent and that BSI's claim to the Withheld Purchase Price was an unsecured claim.

13.     The Debtors continue to believe that their reading of the Asset Purchase Agreement is accurate and that if the Debtors were to litigate whether the Withheld Purchase Price is property of NNI's bankruptcy estate, that they would prevail. However, given the amount of the Claim and the attendant costs of potential litigation, the Debtors, in the exercise of their reasonable business judgment, entered into settlement negotiations with the Claimants in an effort to resolve the dispute.

14.     Subject to this Court's approval, the Debtors have reached a compromise with the Claimants to settle and resolve their claims against the Debtors pursuant to the terms of this Stipulation. The Debtors believe that resolving the Claim pursuant to the terms of the Stipulation is appropriate and is in the best interest of their estates and creditors.

**Basis for Relief**

15.     The Debtors seek authorization to enter into the Stipulation under section 105 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the

provisions of this title." 11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

16.     Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

17.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.  Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below

the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

18.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

19.     The Debtors respectfully submit that the Martin Factors weigh heavily in favor of approving the Stipulation, and request that their entry into the Stipulation be authorized under Bankruptcy Rule 9019. While the Debtors are prepared to litigate the Claim and believe that they would prevail in such litigation, litigation carries with it inherent uncertainties and there is no assurance that such litigation would achieve a better result than the one set forth in the Stipulation. The Stipulation authorizes NNI to pay $325,000 to BSI in order to eliminate a purported $4,050,000 (plus interest) claim against NNI's estate. This resolution fairly balances the Debtors' likelihood of success on the merits of the Claim against their interest in avoiding the cost and uncertainty of litigation.

20.     Litigation of the Claim would result in the estate's expenditure of considerable additional legal fees. In the absence of a settlement, the estate would be burdened with the time

and costs of ongoing litigation, which would also be disruptive to the estate's efforts to resolve those matters that are essential to the ultimate resolution of these cases.

21.     Finally, the interests of the creditors militate in favor of approval of the Stipulation.  The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Claim and the avoidance of legal expenses that would be incurred if the Claim were to be litigated.  In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

## Notice

22.     Notice of the Motion has been given via first class mail to the (i) counsel of the Claimants; (ii) U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

23.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as <u>Exhibit A</u> hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: December 10, 2010
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*