## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                       :

*In re*                           :        Chapter 11

Nortel Networks Inc., *et al.*,[1]     :        Case No. 09-10138 (KG)

             Debtors.     :        Jointly Administered

                       :

                       :        **Hearing date: January 12, 2011 at 9:30 a.m. (ET)**
                       :        **Objections due: January 3, 2011 at 4:00 p.m. (ET)**

-------------------------------------------------------- X

### DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019
### FOR ENTRY OF AN ORDER APPROVING THE STIPULATION
### <u>RESOLVING CLAIM NOS. 124 AND 1059 FILED BY THE CITY OF RICHARDSON</u>

Nortel Networks Inc. ("<u>NNI</u>") and certain of its affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), hereby move this Court (the "<u>Motion</u>"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to section 105(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (i) authorizing the Debtors' entry into and approving a stipulation (the "<u>Stipulation</u>") with The City of Richardson ("<u>Claimant</u>"), attached hereto as **Exhibit B**, under which NNI will make a payment to Claimant in satisfaction of Claimant's claims; and (ii) granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate their remaining businesses and manage their properties as debtors in possession pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code
on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases
for procedural purposes [D.I. 1098].

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it was unable to maximize value through sales.  Since then, Nortel has sold many of its business units and assets to various purchasers.  Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

**Relief Requested**

7.       By this Motion, the Debtors seek an order, pursuant to section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing the Debtors' entry into the

Stipulation and approving the Stipulation, and (ii) granting them such other and further relief as

the Court deems just and proper.

**Facts Relevant to this Motion**

8.       On January 15, 2009, the Bankruptcy Court entered an Order Pursuant to Sections

105(a), 363(b), 507(a)(8), and 541 of the Bankruptcy Code Authorizing Debtors to Remit and

Pay Certain Taxes and Fees [D.I. 48] that, along with an Order Supplementing Certain of the

First Day Orders issued on January 30, 2009 [D.I. 239] and a Supplemental Order Authorizing

Debtors to Remit and Pay Certain Taxes and Fees issued on March 25, 2009 [D.I. 531] (together,

"Tax Orders"), authorizes NNI to remit and pay certain taxes and fees consistent with its

customary practices in the ordinary course of business, including personal property and real

property taxes.

9.       On February 2, 2009, Claimant filed secured proof of claim number 124 in the

amount of $1,736,847.18 for unpaid personal property taxes and interest ("Claim No. 124") and

on April 30, 2009, Claimant filed secured proof of claim number 1059 in the amount of

$868,423.59 for unpaid personal property taxes and interest ("Claim No. 1059" and with Claim

No. 124, the "Claims").

10.       Pursuant to the Tax Orders, NNI made payments to Claimant in partial

satisfaction of the Claims.  Claimant also asserted $10,367.05 in unpaid post-petition interest,

penalties and attorney's fees.  NNI disputed that amount.  Thereafter, in an effort to negotiate an

expeditious resolution of the dispute between the Debtors and Claimant, the parties entered into

settlement discussions.  As a result of these negotiations, the Debtors, subject to this Court's

4

approval, have reached a compromise with Claimant reducing the alleged post-petition interest to $4,625.04 (the "Settlement Amount"), as memorialized in the Stipulation. Although NNI believes that the Tax Orders provide authority for payment of such amount without a court order, out of an abundance of caution, NNI now seeks authority to make such payment to Claimant in the ordinary course of its business. In consideration of the Settlement Amount, Claimant has agreed, subject to this Court's approval, to withdraw the Claims. In addition, upon payment of the Settlement Amount, any lien, claim or encumbrance of the Claimant arising from or related to the Claims in respect of any property of NNI will be terminated and released, without further action by any party.

11.    The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of the Claims through the Stipulation is appropriate and in the best interests of both their estates and their creditors.

## Basis for Relief

12.    The Debtors seek authorization to enter into the Stipulation under section 105 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019.

13.    Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally

favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

14.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

15.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

6

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

16.     The Debtors respectfully submit that the Martin Factors weigh heavily in favor of approving the Stipulation, and request that their entry into the Stipulation be authorized under Bankruptcy Rule 9019.  While the Debtors are prepared to litigate the Claims and believe that they would prevail in such litigation, litigation carries with it inherent uncertainties and there is no assurance that such litigation would achieve a better result than the one set forth in the Stipulation.  Also, the settlement reflected in the Stipulation reduces a purported $10,367.05 claim against NNI's estate to the lesser amount of $4,625.04.  This resolution fairly balances the Debtors' likelihood of success on the merits of the Claims against their interest in avoiding the uncertainty of litigation.

17.     In addition, litigation of the Claims would result in the estate's expenditure of legal fees, which would quickly exceed the Settlement Amount.  Finally, the interests of the creditors militate in favor of approval of the Stipulation.  The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Claims and the avoidance of legal expenses that would be incurred if the Claim were to be litigated.  In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

## Notice

18.     Notice of the Motion has been given via first class mail to (i) counsel to the Claimant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder

Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit

that under the circumstances no other or further notice is necessary.

### No Prior Request

19.    No prior request for the relief sought herein has been made to this or any other

court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and

the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and

(iii) grant such other and further relief as it deems just and proper.

Dated:  December 10, 2010  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)  
James L. Bromley (admitted *pro hac vice*)  
Lisa M. Schweitzer (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone:  (212) 225-2000  
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
Andrew R. Remming (No. 5120)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone:  (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors*  
*and Debtors in Possession*

8