## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
: 
*In re* : Chapter 11
: 
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
: 
                    Debtors. : Jointly Administered
: 
------------------------------------------------------------X

### SUPPLEMENTAL DECLARATION OF CHARLES M. LEE IN SUPPORT OF
### THE APPLICATION OF THE DEBTORS TO RETAIN AND EMPLOY ADDREX, INC.

I, Charles M. Lee, hereby declare under penalty of perjury:

1. I am President of Addrex, Inc. ("Addrex"), an Internet protocol number brokerage firm, which maintains offices at 1775 Wiehle Avenue, Suite 400, Reston, VA 20190, and I am duly authorized to make this supplemental declaration (the "Supplemental Declaration") on behalf of Addrex. Unless otherwise stated, I have personal knowledge of the facts set forth in this Supplemental Declaration.

2. This Supplemental Declaration is submitted in support of the Application of the Debtors Pursuant to 11 U.S.C. § 327(a) to Retain and Employ Addrex, Inc., *Nunc Pro Tunc* to November 24, 2010 [D.I. 4435] (the "Application"),[2] and supplements my declaration dated November 24, 2010 submitted in support of the Application.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

3.  As stated in my prior declaration, neither Addrex nor its executives and associates has any relationship with the parties listed on the Conflicts Check List (as defined in the Lee Declaration). However, in the course of its business Addrex has entered into and continues to develop client relationships with both buyers and sellers of Internet protocol numbers. Specifically, Addrex has entered into agreements (the "Client Agreements") to represent parties that may desire to purchase Internet protocol numbers (such current and future clients collectively are referred to herein as the "Market Participants") from time to time as they become available on the market, and expects that in the ordinary course of its business it will enter into additional agreements with Market Participants.

4.  Section 2.5(i) of the Agreement with NNI, attached hereto as **Exhibit A**, provides that:

> Broker acknowledges and hereby informs Seller that Broker, in some instances, may have represented a Buyer in other transactions and that such a situation could present a conflict of interest. Broker shall not represent both Seller and a Buyer in the same transaction, unless Broker has first obtained the written consent of both Buyer and Seller before proceeding. If Broker is unable to obtain such written consent from both Buyer and Seller, then Broker may only represent Seller in the Transaction.

5.  To avoid any possible perception of a conflict of interest, NNI and Addrex have further agreed that, notwithstanding anything to the contrary in any existing Client Agreement or in any new agreements with Market Participants, Addrex will not represent or be compensated in any way by any party other than NNI in connection with the monetization of the Internet Assets.

6.  Addrex has further agreed that all of its existing and future Client Agreements with Market Participants that express interest in the Internet Assets will be amended by a side-letter agreement to provide that, notwithstanding anything to the contrary in such Client Agreement, while Addrex clients may participate in any sale of the Internet Assets, Addrex shall

exclusively represent NNI, and not such counterparties, in all phases of such a sale process, and shall have no obligations to or right to payment from any Market Participants. Additionally, Addrex agrees that, whether in the course of any marketing process undertaken for the sale of the Internet Assets or in its general business discussions with current and potential clients, Addrex will not condition participation in any sale of the Internet Assets upon entry into a client relationship with Addrex for other purposes, and Addrex will not disclose any confidential information held or provided by NNI to such current and potential clients absent NNI's prior consent and compliance with the general sale process procedures and requirements.

7. In addition, if, in the course of any marketing process for the Internet protocol numbers, a Market Participants expresses interest in acquiring the Internet Assets, Addrex will promptly inform NNI that such a party is a client of Addrex.

Dated: December 10, 2010  
Reston, Virginia

*/s/ Charles M. Lee*  
Charles M. Lee