IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- X
                                                                 :
In re:                                                           : Chapter 11
                                                                 :
NORTEL NETWORKS INC., *et al.*,[1]                               : Case No. 09-10138 (KG)
                                                                 :
                                    Debtors.                     : (Jointly Administered)
                                                                 : Objection Deadline: N/A
---------------------------------------------------------------- X Hearing Date: N/A

### THE EMEA ADMINISTRATORS' MOTION FOR AN ORDER SHORTENING NOTICE FOR HEARING ON THE EMEA ADMINISTRATORS' MOTION FOR LIMITED RELIEF FROM THE AUTOMATIC STAY

The court-appointed administrators and authorized foreign representatives (collectively, the "EMEA Administrators")[2] for Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited ("NN Ireland") and certain of its affiliates (collectively, the "EMEA Debtors")[3] in proceedings (the "UK Proceedings") under the *Insolvency Act 1986* (the "English Insolvency Act"), pending before the High Court of Justice of England and Wales (the "English Court"), hereby move this Court (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to section 102(1) of title 11 of the United States Code (the

---

[1] The Debtors in these Chapter 11 cases are: Nortel Networks Inc., Nortel Networks Capital Corporation, Alteon WebSystems, Inc., Alteon WebSystems International, Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc. and Nortel Networks Cable Solutions Inc (collectively, the "U.S. Debtors").

[2] The Administrators in the UK Proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited are: Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris. The Administrators in the UK Proceedings for Nortel Networks (Ireland) Limited are: Alan Robert Bloom and David Martin Hughes.

[3] The EMEA Debtors are: Nortel Networks UK Limited; Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks (Ireland) Limited; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z. o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A.; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks, s.r.o.

"Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (a) shortening notice to allow the *EMEA Administrators' Motion for Limited Relief from the Automatic Stay* (the "Stay Relief Motion"), filed contemporaneously herewith, to be considered on an expedited basis; (b) setting December 16, 2010 at 4:00 p.m. (Eastern Time) as the deadline to file objections to the Stay Relief Motion (the "Objection Deadline"); and (c) scheduling the hearing on the Stay Relief Motion for December 20, 2010 at 3:30 p.m. (Eastern Time)]. In support of this Motion, the EMEA Administrators respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 of the Bankruptcy Code. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue in this proper pursuant to 28 U.S.C. § 1408 and 1409.

## FACTS RELATED TO THIS MOTION

2. Nortel Networks Corporation ("NNC" and together with its affiliates and subsidiaries, "Nortel" or the "Nortel Group") is the direct or indirect parent of 142 subsidiaries operating worldwide, including (i) Nortel Networks Limited ("NNL"), the primary Canadian operating company and holding company for most of the global subsidiaries; (ii) Nortel Networks Inc. ("NNI"), the primary U.S. operating company; and (iii) NNUK, the primary operating company for the EMEA region.

3. On January 14, 2009 (the "Petition Date"), insolvency proceedings were commenced by: NNC and certain of its direct and indirect Canadian subsidiaries, including NNL, in the Ontario Superior Court of Justice (Commercial List); (ii) NNI and certain of its

direct and indirect U.S. subsidiaries (collectively, the "U.S. Debtors") in this Court[4] under chapter 11 of the Bankruptcy Code; and (iii) NNUK and the EMEA Debtors in the English Court.

4. Prior to the filing of these chapter 11 proceedings and cross-border insolvency proceedings, certain of the Nortel Companies entered into separate bilateral distribution agreements with NNL (the "Distribution Agreements"). Additionally, and for the same purposes, NNL, NNL, NNUK, NN Ireland, and other affiliates (who are no longer parties to the agreement), entered into the Master Research and Development Agreement, dated December 22, 2004 (as amended from time to time, the "Master R&D Agreement"). The Distribution Agreements and the Master R&D Agreement and certain documents and agreements related thereto form the "Transfer Pricing Agreements." The Transfer Pricing Agreements were part of a scheme to allocate profits, losses and certain costs across the various corporate entities located around the world.

5. Since the Petition Date, certain global businesses have been sold, and it remains in controversy how the proceeds of those global sales should be allocated among the companies. Under the Interim Funding and Settlement Agreement, entered into between certain Nortel entities, on or about June 9, 2009 and approved by this Court on June 29, 2009 (the "IFSA"), the Nortel parties thereto agreed to negotiate in good faith to arrive at a protocol that would provide for, among other things, a mechanism to resolve such allocation disputes but have been unable to do so. The parties are currently engaged in mediation efforts toward the same goal.

---

[4] *In re Nortel Networks Inc., et al.*, Case No. 09-10138 (Bankr. D. Del. Jan. 14, 2009).

6. Significant progress has been made on the restructuring of the Nortel Group, including the EMEA Debtors. At the heart of the restructuring, however, are issues regarding the allocation of the sale proceeds of the various business divestures and the settlement of intercompany claims.

7. Related to these restructuring issues, the EMEA Administrators believe they have actionable claims against NNI and certain of its current and former directors (the "Officers and Directors") arising from a general pattern in which NNI and/or its Officers and Directors improperly transferred value away from NNUK and NN Ireland to the benefit of other entities within the Nortel Group (the "Intercompany Claims"). For a more detailed explanation of the nature of the Intercompany Clams under English and Irish law, the EMEA Administrators respectfully refer the Court to the *Declaration of John Whiteoak in Support of the EMEA Administrators' Motion for Limited Relief from the Automatic Stay* ("Whiteoak Declaration") filed concurrently herewith.

8. The relevant limitations periods applicable to the Intercompany Claims, as prescribed by English and Irish law, or at least some of them, will arguably expire on December 22, 2010, six years from the date on which NNUK and NN Ireland entered into the MRDA. Because the statute of limitation issues to which the Intercompany Claims give rise are complex, not least because of the multi-jurisdictional aspects of the Nortel insolvency, the EMEA Administrators cannot say with absolute certainty that the relevant limitation periods in respect of certain Intercompany Claims will expire by December 22, 2010. The EMEA Administrators, however, wish to avoid any debate on the issue and thus desire to preserve all of their rights in respect of such Intercompany Claims without question.

4

9. Accordingly, the EMEA Administrators seek to commence actions against NNI and certain of its Officers and Directors in (i) the English Court and (ii) the High Court of Ireland (the "Irish Court") (together, the "EMEA Actions") no later than December 21, 2010 so as to preserve their rights to pursue the Intercompany Claims against NNI and its Officers and Directors at a later time if ongoing efforts to resolve all intercompany and allocation disputes prove unsuccessful. After filing a claim form in the English Court and summons in the Irish Court, the EMEA Administrators will not serve process on NNI and will take no further steps in such actions against NNI without further order of this Court. As there is no tolling provision under the English Insolvency Law akin to section 108(c) of the Bankruptcy Code available to a company in administration, the EMEA Administrators could be forever time-barred from asserting certain of their claims against NNI under English and Irish law if they are not granted limited relief from the automatic stay, as requested in the Stay Relief Motion.

## RELIEF REQUESTED

10. In order to ensure that parties in interest receive maximum notice of the Motion prior to the hearing, the EMEA Administrators will serve the Motion on the notice parties listed therein by email and hand delivery on December 13, 2010 and by overnight mail, next business day delivery on December 14, 2010.

11. By this Motion, the EMEA Administrators seek an order (a) shortening the notice period for the Stay Relief Motion to allow it to be considered on an expedited basis; (b) setting December 16, 2010 at 4:00 p.m. (Eastern Time) as the Objection Deadline; and (c) scheduling the hearing on the Stay Relief Motion for December 20, 2010 at 3:30 p.m. (Eastern Time).

12. The statutory predicates for the relief requested herein are §§ 102(1) and 105 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9006 and Local Rule 9006-1(e).

## BASIS FOR RELIEF

13. Local Rule 9006-1 requires "... all motion papers shall be filed and served ... at least fourteen days (and an additional three (3) days if service is by mail) prior to the hearing date." According to Local Rule 9006-1(e), however, the notice period may be shortened by order of the Court upon written motion (served on all interested parties) "specifying the exigencies justifying shortened notice."

14. The EMEA Administrators respectfully submit that the relief requested by this Motion is justified under the facts and circumstances of this case, and that prompt entry of the proposed order is essential so that the Court can consider the relief sought in the Stay Relief Motion in advance of the potential expiration of the limitations periods applicable to the Intercompany Claims under English and Irish law. As set forth above and in the Whiteoak Declaration, relevant limitation periods potentially applicable to the Intercompany Claims, as prescribed by English and Irish law, may expire as early as December 22, 2010, six years from entry into the MRDA. *See* Whiteoak Declaration, ¶¶ 33-34. The EMEA Administrators respectfully submit that such an imminently approaching deadline justifies this Court considering the relief requested in the Stay Relief Motion on an exigent basis before the EMEA Administrators and EMEA Debtors forfeit their substantive rights to pursue such Intercompany Claims at a later time.

15. The EMEA Administrators' delay in seeking relief from the stay to commence the UK Actions is wholly justified. It was not until recently that the EMEA

Administrators became aware of the impending expiry of the potential limitation periods. The EMEA Administrators have in recent months been focusing their attention and time upon the consensual resolution and mediation processes. They have been investigating and analyzing such claims for the purpose of asserting such claims in those processes. Such investigation of the potential claims against the U.S. Debtors raised many complex legal issues, which were complicated further by the multi-jurisdictional issues to which the Nortel insolvency gives rise, and which required comprehensive and painstaking analyses. The EMEA Administrators have therefore, necessarily, focused upon the substantive aspects of those claims for the purposes of the mediation. It should be remembered that the mediation process has been conducted on a very tight timetable, given the multitude and complexity of the issues with which it is concerned. Accordingly, the EMEA Administrators have devoted a significant amount of resources and time to the resolution process (including hours dedicated to preparation of mediation papers, significant document disclosure and review exercises involving thousands of documents, and frequent travel overseas, including to attend meetings with the other estates, in New York, in particular). In addition to this, the EMEA Administrators' overall analysis has been slowed by the EMEA Administrators' intimate involvement in the (1) EMEA pension proceedings,[5] and (2) further sales of certain Nortel businesses.

16. In short, therefore, the EMEA Administrators' efforts have until now been primarily focused upon the consensual resolution process, rather than the precise manner in which the Intercompany Claims may need to be litigated.

---

5. Since September 7, 2010 there have been ongoing proceedings in the English Court to determine the status within the administrations of certain EMEA Debtors of a potential liability of up to £2.1 billion arising out of the NNUK Pension plan.

17. As the settlement process has gone on longer, and has been more demanding in terms of the EMEA Administrators' time, than expected, the EMEA Administrators have only recently begun to consider in greater detail potential contingencies in the event that consensual resolutions are not reached. Such contingency planning has raised myriad complicated cross jurisdictional legal issues. It is only in the course of this contingency planning process that the potential limitation issues have come to light.

18. The relief requested by this Motion will not prejudice or disadvantage the U.S. Debtors, their bankruptcy estates, or their creditors, nor will it hinder these chapter 11 proceedings. Such relief is strictly limited to the commencement of the EMEA Actions, and the EMEA Administrators will not thereafter pursue such actions further in the English Court or Irish Court, without further order of this Court. Thus, none of the expenses or delay of litigation can possibly arise pending these chapter 11 proceedings without further order of this Court, as the automatic stay will otherwise remain in effect.

19. For these reasons, the EMEA Administrators respectfully submit that allowing the Stay Relief Motion to be considered on shortened notice is reasonable and appropriate under the circumstances.

## CONCLUSION

WHEREFORE, the EMEA Administrators respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) entered the proposed order attached hereto as Exhibit A; and (iii) grant such other and further relief as the Court deems just and proper.

Dated:  Wilmington, Delaware
December 13, 2010

**YOUNG CONAWAY STARGATE & TAYLOR, LLP**

/s/ *Edwin J. Harron*
James L. Patton (No. 2202)
Edwin J. Harron (No. 3396)
Jaime N. Luton (No. 4936)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571–6600
Facsimile: (302) 571–1253

- and -

**HUGHES HUBBARD & REED LLP**
Michael Luskin
Derek J.T. Adler
Ashley J. Laurie
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837–6000
Facsimile: (212) 422–4726

-and-

**HERBERT SMITH LLP**
Kevin Lloyd
John Whiteoak
Richard Lawton
Exchange House
Primrose Street
London
EC2A 2HS

*Counsel for the Administrators*