IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
*In re*                                                  :   Chapter 11
                                                         :
Nortel Networks Inc., *et al.*,[1]                       :   Case No. 09-10138 (KG)
                                                         :
        Debtors.  :   Jointly Administered
                                                         :
                                                         :   Re: D.I. 4345, D.I. 4452
                                                         :
---------------------------------------------------------X

### DECLARATION OF DAVID GLASS IN SUPPORT OF DEBTORS' MOTION TO ENFORCE THE CVAS SALE ORDER AND FOR RELATED RELIEF

I, David Glass, declare under penalty of perjury as follows:

1. I am M&A Control Manager at Nortel Networks Inc. ("NNI"). In that role, I am responsible for supporting, from an accounting perspective, all Mergers & Acquisition deals in which NNI or its affiliates participate, including providing accounting support for calculating any applicable price adjustments which may be contemplated by the relevant transaction agreements. I have worked at NNI for 25 years as an accountant and have extensive accounting experience. I am a Certified Public Accountant. NNI and its affiliates will be referred to below as "Nortel."

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

2. I submit this declaration in support of the *Debtors' Motion for Entry of an Order Enforcing the Order Authorizing the Sale of Certain Assets of the Debtors' Carrier Voice Over IP and Application Solutions Business, and Directing the Release of Certain Escrowed Funds*, dated November 17, 2010 [D.I. 2632] (the "CVAS Motion"),[2] and in opposition to the motion of GENBAND Inc. (n/k/a GENBAND US LLC) ("GENBAND") for Entry of an Order Granting Relief from the Automatic Stay to Compel Arbitration [D.I. 4345] (the "Stay Motion").

3. In my role as M&A Control Manager, I have worked closely with employees of GENBAND in connection with Nortel's sale of the CVAS Business to GENBAND, including resolution of reconciling amounts for the Deferred Profit Amount and the Purchase Price Adjustment.

4. In my understanding, the dispute between the parties concerning Deferred Profit Amount arises from GENBAND's attempt to ignore the requirement under the Sale Agreement's definition of Deferred Profit Amount that only "deferred revenues for services to be performed or products to be provided by the Business *after* the Closing Date" are to be included.

5. I understand that GENBAND has suggested that resolution of this dispute requires an analysis or assessment of GAAP and Nortel Accounting Principles. That is incorrect. All of the items that both parties propose to include as Deferred Profit Amount satisfy both GAAP and Nortel Accounting Principles. Thus, there is no dispute about whether these are items "that would be required to be reflected on a balance sheet of the Business as of such date prepared in accordance with GAAP applied in a manner consistent with the Nortel Accounting Principles (to the extent consistent with GAAP)," as provided in the definition of Deferred Profit Amount. Accordingly, there is no dispute at all about Nortel's Accounting Principles or GAAP.

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the CVAS Motion.

Rather, the only dispute is that GENBAND seeks to include deferred revenues for services that were performed or products that were delivered *before* or on the Closing Date, contrary to the definition of Deferred Profit Amount, which encompasses only "deferred revenues for services to be performed or products to be delivered *after* the Closing Date."

6. Pursuant to Section 2.2.2 of the Sale Agreement, Nortel provided to GENBAND on May 25, 2010 an Estimated Purchase Price Statement which identified an estimated Deferred Profit Amount of $37,867,000.00. A true and correct copy of the Estimated Purchase Price Statement is attached hereto as Exhibit A. This estimated figure was prepared based on the contractual definition of Deferred Profit Amount as including only "deferred revenues for services to be performed or products to be delivered *after* the Closing Date." To my knowledge, GENBAND did not raise any objection prior to Closing to the manner in which Nortel calculated the Estimated Purchase Price. The Estimated Purchase Price dictated the price GENBAND paid at the closing on May 28, 2010.

7. To my knowledge, the dispute between the parties about the application of the definition of Deferred Profit Amount does not involve any disagreement between the parties about accounting analysis or mathematical calculations. In fact, I understand that accountants from Nortel and GENBAND discussed and agreed upon the methodology for calculating the deferred revenue that GENBAND would assume upon the acquisition of the CVAS business. Nortel used this same methodology to calculate the Deferred Profit Amount – that is, the "deferred revenues for services to be performed or products to be delivered after the Closing Date." Accordingly, if the terms of the definition of Deferred Profit Amount are applied properly, I believe there is no legitimate disagreement that the resulting figure is the one that Nortel has used in calculating Deferred Profit Amount.

8. Nortel's position is also consistent with the manner in which a term with the same definition was applied by the Sellers and the purchaser in a prior sale transaction. The sale agreement executed in connection with Nortel's divestiture of its Metro Ethernet Networks Business ("MEN") to Ciena Corporation ("Ciena"), which occurred in 2010, used substantially identical language to define the deferred revenue amount that would impact the purchase price adjustment, and the parties applied this definition just as the Sellers do here with no objection from the purchaser, Ciena. In the MEN sale agreement, the term was referred to as "Closing Net Deferred Revenues," and the definition of the term was substantively identical to the definition of "Deferred Profit Amount" in the CVAS Sale Agreement. Specifically, Closing Net Deferred Revenues was determined based on:

> deferred revenues for services to be performed or products to be provided by the Business after the Closing Date but for which an account receivable has been recorded prior to the Closing Date minus (y) associated deferred costs to the extent incurred by the Business prior to the Closing Date in connection with such products or services, in each case, that would be required to be reflected on a balance sheet of the Business as of such date prepared in accordance with GAAP applied in a manner consistent with the Nortel Accounting Principles (to the extent consistent with GAAP).

Ciena Sale Agreement, p. 8 (definition of Closing Net Deferred Revenues). Pursuant to the MEN sale agreement, Ciena as purchaser calculated Closing Net Deferred Revenues, and the accompanying impact on the purchase price adjustment, in exactly the same way as the Sellers calculated the Deferred Profit Amount in the Disagreement Notice here.

9. I have reviewed the affidavit of Misty Kawecki, submitted by GENBAND in connection with this dispute. Ms. Kawecki's affidavit contains numerous statements concerning accounting principles relating to revenue recognition. But the definition of Deferred Profit

Amount makes no reference to revenue recognition, and those principles have no impact on the present dispute.

10.  In paragraph 11, Ms. Kawecki states that "Nortel's interpretation of Deferred Profit Amount seeks to provide Nortel revenue for services to be performed or products to be provided before the Closing Date but for which revenue should not properly be recognized pursuant to Nortel Accounting Principles and GAAP." This statement is incorrect. Nortel will not recognize revenue for the past deliverables that do not transfer to GENBAND. In any event, as stated above, there is nothing in the definition of Deferred Profit Amount concerning revenue recognition.

11.  In Paragraph 13, Ms. Kawecki suggests that there remain outstanding accounting disputes between Nortel and GENBAND. I am not aware of any outstanding discrepancies. Accountants at Nortel and GENBAND have reconciled all accounting matters in connection with the CVAS Purchase Price Adjustment. The email exchange attached as Exhibit B reflects the final item that was raised by GENBAND, as well as the resolution of that item by the parties. I am not aware of any other items as to which GENBAND has suggested that there are any errors in Nortel's calculations.

*[signature]*

David Glass, CPA