# EXHIBIT E

Court File No. 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**
**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

### SECOND SUPPLEMENTAL MOTION RECORD
### (returnable December 15, 2010)

December 9, 2010

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario  M5J 2Z4

**Derrick Tay LSUC# 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

*November, 2010*

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**SERVICE LIST**

TO:   **OGILVY RENAULT LLP**
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto, Ontario M5J 2Z4

Derrick Tay
Tony Reyes
Jennifer Stam

Email:   dtay@ogilvyrenault.com
treyes@ogilvyrenault.com
jstam@ogilvyrenault.com

Tel:   416.216.4000
Fax:   416.216.3930

Lawyers for the Applicants

TO:    **ERNST & YOUNG INC.**
     Ernst & Young Tower
     222 Bay Street, P.O. Box 251
     Toronto, ON  M5K 1J7

     Murray McDonald
     Brent Beekenkamp

     Email:   nortel.monitor@ca.ey.com

     Tel:     416.943.3016
     Fax:    416.943.3300

AND
TO:    **GOODMANS LLP**
     Bay Adelaide Centre
     333 Bay Street, Suite 3400
     Toronto, ON  M5H 2S7

     Jay Carfagnini
     Joseph Pasquariello
     Gail Rubenstein
     Fred Myers
     Chris Armstrong

     Email:   jcarfagnini@goodmans.ca
             jpasquariello@goodmans.ca
             grubenstein@goodmans.ca
             fmyers@goodmans.ca
             carmstrong@goodmans.ca

     Tel:     416.597.4107
     Fax:    416.979.1234

     Lawyers for the Monitor, Ernst & Young Inc.

AND
TO:    **OSLER HOSKIN AND HARCOURT LLP**
     100 King Street West
     1 First Canadian Place
     Suite 6100
     P.O. Box 50
     Toronto, ON  M5X 1B8

     Lyndon Barnes
     Rupert Chartrand
     Edward Sellers
     Adam Hirsh

     Email:   lbarnes@osler.com
             rchartrand@osler.com
             esellers@osler.com
             ahirsh@osler.com

     Tel:     416.362.2111
     Fax:    416.862.6666

     Lawyers for the Boards of Directors of
     Nortel Networks Corporation and Nortel
     Networks Limited

AND
TO:    **FASKEN MARTINEAU DUMOULIN LLP**
     66 Wellington Street West
     Toronto Dominion Bank Tower
     P.O. Box 20, Suite 4200
     Toronto, ON  M5K 1N6

     Donald E. Milner
     Aubrey Kauffman
     Edmond Lamek
     Jon Levin

     Email:   dmilner@fasken.com
             akauffman@fasken.com
             elamek@fasken.com
             jlevin@fasken.com

     Tel:     416.868.3538
     Fax:    416.364.7813

     Lawyers for Export Development Canada

AND TO:   **EXPORT DEVELOPMENT CANADA**
151 O'Connor Street
Ottawa, ON  K1A 1K3

Jennifer Sullivan

Email:   jsullivan@edc.ca

Tel:      613.597.8651
Fax:     613.598.3113

AND TO:   **THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific Tower
Toronto, ON  M5K 1K7

Robert I. Thornton
Rachelle Moncur
Leanne M. Williams

Email:   rthornton@tgf.ca
rmoncur@tgf.ca
lwilliams@tgf.ca

Tel:      416.304.1616
Fax:     416.304.1313

Lawyers for Flextronics Telecom Systems Ltd.

AND TO:   **McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS  B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email:   john.stringer@mcinnescooper.com
stephen.kingston@mcinnescooper.com

Tel:      902.425.6500
Fax:     902.425.6350

Lawyers for Convergys EMEA Limited

AND TO:   **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart

Email:   jcarhart@millerthomson.com

Tel:      416.595.8615/8577
Fax:     416.595.8695

Lawyers for Toronto-Dominion Bank

AND TO:   **CAW-CANADA**
Legal Department
205 Placer Court
Toronto, ON M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:   barry.wadsworth@caw.ca
lewis.gottheil@caw.ca

Tel.:     416.495.3776
Fax:     416.495.3786

Lawyers for all active and retired Nortel employees represented by the CAW-Canada

AND TO:   **BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC  V7X 1S8

R. Hoops Harrison

Email:   hharrison@boughton.ca

Tel:      604.687.6789
Fax:     604.683.5317

Lawyers for Tonko Realty Advisors (BC) Ltd., in its capacity as duly authorized agent for Holdings 1506 Enterprises Ltd.

- 1 -

| | |
|---|---|
| AND TO: | **BORDEN LADNER GERVAIS LLP**<br>Scotia Plaza, 40 King Street West<br>Toronto, ON M5H 3Y4 |

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:  mmacnaughton@blgcanada.com
Tel:  416. 367.6646
Fax:  416. 682.2837

Email:  rjaipargas@blgcanada.com
Tel:  416.367.6266
Fax:  416.361.7067

Email:  srappos@blgcanada.com
Tel:  416.367.6033
Fax:  416.361.7306

Lawyers for Bell Canada

AND TO:  **SISKINDS LLP**
680 Waterloo Street
London, ON N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein

Email:  ray.leach@siskinds.com
dimitri.lascaris@siskinds.com
monique.radlein@siskinds.com

Tel:  519.672.2121
Fax:  519.672.6065

Lawyers for Indiana Electrical Workers Pension
Trust Fund IBEW, Laborers Local 100 and 397
Pension Fund, and Bruce William Lapare

AND TO:  **LANG MICHENER LLP**
Brookfield Place, Suite 2500
181 Bay Street
Toronto, ON M5J 2T7

John Contini
Aaron Rousseau

Email  jcontini@langmichener.ca
Tel:  416.307.4148
Fax:  416.304.3767

Email  arousseau@langmichener.ca
Tel:  416.307.4081
Fax:  416.365.1719

Lawyers for ABN AMRO Bank N.V.

AND TO:  **BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, ON M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson

Email:  zychk@bennettjones.com
Tel:  416.777.5738
Fax:  416.863.1716

Email:  orzyr@bennettjones.com
Tel:  416.777.5737
Fax:  416.863.1716

Email:  finlaysong@bennettjones.com
Tel:  416.777.5762
Fax:  416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

- 5 -

AND
TO:

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, ON  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon
Celeste Poltak

| Email: | mzigler@kmlaw.ca |
| Tel: | 416.595.2090 |
| Fax: | 416.204.2877 |

| Email: | sphilpott@kmlaw.ca |
| Tel: | 416.595.2104 |
| Fax: | 416.204.2882 |

| Email: | dyiokaris@kmlaw.ca |
| Tel: | 416.595.2130 |
| Fax: | 416.204.2810 |

| Email: | amckinnon@kmlaw.ca |
| Tel: | 416.595.2150 |
| Fax: | 416.204.2874 |

| Email: | cpoltak@kmlaw.ca |
| Tel: | 416.595.2701 |
| Fax: | 416.204.2909 |

Lawyers for the Former Employees of Nortel

AND
TO:

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, ON  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon
Celeste Poltak

| Email: | mzigler@kmlaw.ca |
| Tel: | 416.595.2090 |
| Fax: | 416.204.2877 |

| Email: | sphilpott@kmlaw.ca |
| Tel: | 416.595.2104 |
| Fax: | 416.204.2882 |

| Email: | dyiokaris@kmlaw.ca |
| Tel: | 416.595.2130 |
| Fax: | 416.204.2810 |

| Email: | amckinnon@kmlaw.ca |
| Tel: | 416.595.2150 |
| Fax: | 416.204.2874 |

| Email: | cpoltak@kmlaw.ca |
| Tel: | 416.595.2701 |
| Fax: | 416.204.2909 |

Lawyers for the LTD Beneficiaries

- 6 -

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:   jcarhart@millerthomson.com
Tel:      416.595.8615
Fax:      416.595.8695

Email:   msims@millerthomson.com
Tel:      416.595.8577
Fax:      416.595.8695

Email:   jmklotz@millerthomson.com
Tel:      416.595.4373
Fax:      416.595.8695

Lawyers for LG Electronics Inc.

AND
TO:

**LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongduengpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:   joseph.kim@lge.com

Tel:      +82.2.3777.3171
Fax:      +82.2.3777.5345

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:   jcarhart@millerthomson.com
Tel:      416.595.8615
Fax:      416.595.8695

Email   msims@millerthomson.com
Tel:      416.595.8577
Fax:      416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision Communication
Services, Inc.

AND
TO:

**CHAITONS LLP**
185 Sheppard Avenue West
Toronto, ON  M2N 1M9

Harvey G. Chaiton

Email:   harvey@chaitons.com

Tel:      416.218.1129
Fax:      416.218.1849

Lawyers for IBM Canada Limited

AND TO: **PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, ON  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:   ken.rosenberg@paliareroland.com
Tel:     416.646.4304
Fax:     416.646.4301

Email:   max.starnino@paliareroland.com
Tel:     416.646.7431
Fax:     416.646.4301

Email:   lily.harmer@paliareroland.com
Tel:     416.646.4326
Fax:     416.646.4301

Email:   tina.lie@paliareroland.com
Tel:     416.646.4332
Fax:     416.646.4301

Lawyers for the Superintendent of Financial Services as Administrator of the Pension Benefits Guarantee Fund

AND TO: **GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

E. Patrick Shea

Email:   patrick.shea@gowlings.com

Tel:     416.369.7399
Fax:     416.862.7661

Lawyers for Westcon Group

AND TO: **FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, ON M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder
Ryan Jacobs

Email:   Shayne.kukulowicz@fmc-law.com
         Alex.macfarlane@fmc-law.com
         Michael.wunder@fmc-law.com
         ryan.jacobs@fmc-law.com

Tel:     416.863.4511
Fax:     416.863.4592

Canadian Lawyers for the Official Committee of Unsecured Creditors

AND TO: **MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, ON M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:   rslattery@mindengross.com
         dullmann@mindengross.com
Tel:     416.369.4149
Fax:     416.864.9223

Lawyers for Verizon Communications Inc.

AND TO: **AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:  hfogul@airdberlis.com
Tel:    416.865.7773
Fax:    416.863.1515

Email:  pczegledy@airdberlis.com
Tel:    416.865.7749
Fax:    416.863.1515

Lawyers for Microsoft Corporation

AND TO: **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:  renglish@airdberlis.com
         smitra@airdberlis.com

Tel:    416.863.1500
Fax:    416.863.1515

Lawyers for Tata Consultancy Services Limited
and Tata America International Corporation

AND TO: **ALEXANDER HOLBURN BEAUDIN &
LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:  surquhart@ahbl.ca
Tel:    604.484.1757
Fax:    604.484.1957

Lawyers for Algo Communication Products Ltd.

AND TO: **GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:    416.865.6655
Fax:    416.865.6636

Email:  vdare@foglers.com
Tel:    416.865.6641
Fax:    416.865.6636

Lawyers for Andrew, LLC

AND TO: **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:    416.865.7726
Fax:    416.863.1515

Email:  iaversa@airdberlis.com
Tel:    416.865.3082
Fax:    416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND TO: **MILLER THOMSON LLP**
Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Maurice Fleming

Email:  mfleming@millerthomson.com
Tel:    416.595.8686
Fax:    416.595.8695

Lawyers for Verint Americas Inc. and Verint
Systems, Inc.

| | |
|---|---|
| AND TO: | **DAVIS LLP**<br>1 First Canadian Place<br>Suite 5600<br>100 King Street West<br>Toronto, ON  M5X 1E2<br><br>Bruce Darlington<br>Jonathan Davis-Sydor<br><br>Email:  bdarlington@davis.ca<br>Tel:  416.365.3529<br>Fax:  416.369.5210<br><br>Email:  jdavissydor@davis.ca<br>Tel:  416.941.5397<br>Fax:  416.365.7886<br><br>Lawyers for Brookfield LePage Johnson<br>Controls Facility Management Services |

AND TO: **DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:  bdarlington@davis.ca
Tel:  416.365.3529
Fax:  416.369.5210

Email:  jdavissydor@davis.ca
Tel:  416.941.5397
Fax:  416.365.7886

Lawyers for Brookfield LePage Johnson
Controls Facility Management Services

AND TO: **McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:  andrew.kent@mcmillan.ca
Tel:  416.865.7160
Fax:  416.865.7048

Email:  hilary.clarke@mcmillan.ca
Tel:  416.865.7286
Fax:  416.865.7048

Email:  tushara.weerasooriya@mcmillan.ca
Tel:  416.865.7262
Fax:  416.865.7048

Lawyers for Royal Bank of Canada

AND TO: **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:  416.865.7726
Fax:  416.863.1515

Email:  iaversa@airdberlis.com
Tel:  416.865.3082
Fax:  416.863.1515

Lawyers for Perot Systems Corporation

AND TO: **McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Lawrence J. Crozier
Adam C. Maerov

Email:  lawrence.crozier@mcmillan.ca
Tel:  416.865.7178
Fax:  416.865.7048

Email:  adam.maerov@mcmillan.ca
Tel:  416.865.7285
Fax:  416.865.7048

Lawyers for Citibank

AND TO: **CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario  M5H 3C2

Deborah S. Grieve

Email:  dgrieve@casselsbrock.com
Tel:  416.860.5219
Fax:  416.350.6923

Lawyers for Alvarion Ltd.

AND TO: **BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario  M5C 3G5

Domenico Magisano

Email:  dmagisano@blaney.com
Tel:  416.593.2996
Fax:  416.593.5437

Lawyers for Expertech Network Installation Inc.

AND
TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:    jwigley@gardiner-roberts.com
Tel:       416.865.6655
Fax:      416.865.6636

Email:    vdare@foglers.com
Tel:       416.865.6641
Fax:      416.865.6636

Lawyers for Amphenol Corporation

AND
TO:

**LANG MICHENER LLP**
Brookfield Place
Suite 2500, 181 Bay Street
P.O. Box 747
Toronto, Ontario  M5J 2T7

Aaron Rousseau

Email:    arousseau@langmichener.ca
Tel:       416.307.4081
Fax:      416.365.1719

Lawyer for Right Management Inc.

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Sanjeev P.R. Mitra

Email:    smitra@airdberlis.com

Tel:       416.863.1500
Fax:      416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

AND
TO:

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
Harvey Garman
Michael Casey

Email:    bleonard@casselsbrock.com
            hgarman@casselsbrock.com
            mcasey@casselsbrock.com

Tel:       416.860.6455
Fax:      416.640.3054

Lawyers for the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited

AND
TO:

**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario  K2P 0A2

Paul K. Lepsoe

Email:    pklepsoe@mcfarlanelaw.com

Tel:      613.233.2679
Fax:      613.233.3774

Lawyers for Iron Mountain Canada Corporation
and Iron Mountain Information Management,
Inc.

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:    theintzm@mccarthy.ca
Tel:      416.601.7627
Fax:      416.868.0673

Email:    jsirivar@mccarthy.ca
Tel:      416.601.7750
Fax:      416.868.0673

Lawyers for Frank Andrew Dunn

AND
TO:

**COLBY, MONET DEMERS, DELAGE &
CREVIER LLP**
Tour McGill College
1501 McGill College Avenue
Suite 2900
Montreal, Quebec  H3A 3M8

David J. Dropsy

Email:    ddropsy@colby-monet.com
Tel:      514.284.3663
Fax:      514.284.1961

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

AND
TO:

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:    janice.payne@nelligan.ca
          steven.levitt@nelligan.ca
          christopher.rootham@nelligan.ca

Tel:      613.231.8245
Fax:      613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post CCAA as
at January 14, 2009

- 12 -

| | | | |
|---|---|---|---|
| AND TO: | **BAKER & McKENZIE LLP**<br>Brookfield Place, P.O. Box 874<br>181 Bay Street, Suite 2100<br>Toronto, Ontario  M5J 2T3 | AND TO: | **BENNETT JONES LLP**<br>1 First Canadian Place<br>Suite 3400<br>Toronto, Ontario  M5X 1A4 |

<table>
<tr>
<td>AND<br>TO:</td>
<td>

**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Chris Besant
Lydia Salvi

Email:   chris.besant@bakernet.com

Tel:      416.865.2318
Fax:      416.863.6275

Email:   lydia.salvi@bakernet.com

Tel:      416.865.6944
Fax:      416.863.6275

Lawyers for Jabil Circuit Inc.

</td>
<td>AND<br>TO:</td>
<td>

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email:   ryanbellr@bennettjones.com
             laugesenm@bennettjones.com

Tel:      416.863.1200
Fax:      416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and
Tel-e Connect Systems (Toronto) Ltd.

</td>
</tr>
<tr>
<td>AND<br>TO:</td>
<td>

**SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec  H9S 2A5

Dan Goldstein
Marco Gaggino

Email:   dgoldstein@schneidergaggino.com
             mgaggino@schneidergaggino.com

Tel:      514.631.8787
Fax:      514.631.0220

Lawyers for the Teamsters Quebec Local 1999

</td>
<td>AND<br>TO:</td>
<td>

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Timothy R. Dunn

Email:   tdunn@mindengross.com
Tel:      416.369.4335
Fax:      416.864.9223

Lawyers for 2748355 Canada Inc.

</td>
</tr>
<tr>
<td>AND<br>TO:</td>
<td>

**EURODATA**
2574 Sheffield Road
Ottawa, Ontario  K1B 3V7

Nanci Shore

Email:   nanci@eurodata.ca
Tel:      613.745.0921
Fax:      613.745.1172

</td>
<td>AND<br>TO:</td>
<td>

**BALDWIN LAW PROFESSIONAL
CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email:   lbrady@baldwinlaw.ca
Tel:      613.771.9991
Fax:      613.771.9998

Lawyers for Sydney Street Properties Corp.

</td>
</tr>
</table>

- 13 -

AND
TO:
**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Raffy Lorentzian

Email:   raffy.lorentzian@ntscorp.com
Tel:      714.998.4351
Fax:      714.998.7142

Lawyers for AETL Testing, Inc.

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:  arthur.jacques@shibleyrighton.com
Tel:      416.214.5213
Fax:      416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :     416.214.5400

Lawyers for The Recently Severed Canadian
Nortel Employees Committee

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:  arthur.jacques@shibleyrighton.com
Tel:      416.214.5213
Fax:      416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :     416.214.5400

Co-Counsel for the Steering Committee of Nortel
Canadian Continuing Employees – Post CCAA as
at January 14, 2009

AND
TO:
**LAVERY, DE BILLY, LLP**
Barristers & Solicitors
Suite 2400, 600 de la Gauchetière West
Montreal, Quebec H3B 4L8

Jean-Yves Simard

Email :  jysimard@lavery.ca
Tel :     514.871.1522
Fax :     514.871.8977

Lawyers for Texas Landlords to Nortel
Networks Inc.

AND
TO:
**NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Raffy Lorentzian

Email:   raffy.lorentzian@ntscorp.com
Tel:      714.998.4351

DOCSTOR: 1600901\3

AND TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email:    david.cohen@gowlings.com

Tel:      416.369.6667
Fax:      416.862.7661

Lawyers for General Electric Canada Equipment
Finance G.P. and GE Capital Canada Leasing
Services Inc.

AND TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:    bdarlington@davis.ca
Tel:      416.365.3529
Fax:      416.369.5210

Email:    jdavissydor@davis.ca
Tel:      416.941.5397
Fax:      416.365.7886

Lawyers for Computershare Trust Company of
Canada

AND TO:

**DAVIES WARD PHILLIPS & VINEBERG
LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:    rschwill@dwpv.com
Tel:      416.863.0900
Fax:      416.863.0871

Email:    mgottlieb@dwpv.com
Tel:      416.863.0900
Fax:      416.863.0871

Lawyers for Nortel Networks UK Limited (In
Administration)

AND TO:

**LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:   tosullivan@counsel-toronto.com
Tel:      416.598.1744
Fax:      416.598.3730

Email:    slaubman@counsel-toronto.com
Tel:      416.598.1744
Fax:      416.598.3730

Lawyers for William A. Owens

AND TO:   **BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Lydia Salvi

Email:   lydia.salvi@bakernet.com

Tel:     416.865.6944
Fax:     416.863.6275

Lawyers for Wipro Limited

AND TO:   **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Lawyers for the Current and Former Employees
of Nortel Networks Inc. who are or were
Participants in the Long-Term Investment Plan
Sponsored by Nortel Networks Inc.

AND TO:   **McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario  M5K 1E6

Heather Meredith

Email:   hmeredith@mccarthy.ca
Tel:     416.601.8342
Fax:     416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND TO:   **TORYS LLP**
79 Wellington Street West, Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Scott Bomhof

Email:   sbomhof@torys.com
Tel:     416.865.7370
Fax:     416.865.7380

Lawyers for Nokia Siemens Networks B.V.

AND TO:   **DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:   dwinters@justice.gc.ca
Tel:     416.973.3172
Fax:     416.973.0810

AND TO:   **LANG MICHENER LLP**
Brookfield Place
181 Bay Street, Suite 2500
Toronto, Ontario, M5J 2T7

Sheryl E. Seigel

Email:   sseigel@langmichener.ca
Tel:     416.307.4063
Fax:     416.365.1719

Lawyers for The Bank of New York Mellon

AND TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Susan M. Grundy
Marc Flynn

Email:  susan.grundy@blakes.com
Tel:    416.863.2572
Fax:    416.863.2653

Email:  marc.flynn@blakes.com
Tel:    416.863.2685
Fax:    416.863.2653

Lawyers for Telefonaktiebolaget L M Ericsson (publ)

AND TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:    416.863.2958
Fax:    416.863.2653

Email:  milly.chow@blakes.com
Tel:    416.863.2594
Fax:    416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:    416.863.2426
Fax:    416.863.2653

Email:  craig.thorburn@blakes.com
Tel:    416.863.2965
Fax:    416.863.2653

Lawyers for MatlinPatterson Global Advisers LLC, MatlinPatterson Global Opportunities Partners III L.P. and MatlinPatterson Opportunities Partners (Cayman) III L.P.

AND TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:  kmcelcheran@mccarthy.ca
Tel:    416.601.7730
Fax:    416.868.0673

Email:  rstabile@mccarthy.ca
Tel:    416.601.8335
Fax:    416.868.0673

Lawyers for Avaya Inc.

AND TO:

**SACK GOLDBLATT MITCHELL LLP**
20 Dundas Street West
Suite 1100
Toronto, Ontario  M5G 2G8

James McDonald
Darrell Brown

Email:  jmcdonald@sgmlaw.com
Tel:    416.979.6425
Fax:    416.591.7333

Email:  dbrown@sgmlaw.com
Tel:    416.979.4050
Fax:    416.591.7333

Lawyers for Edmund Fitzgerald

AND TO:

**FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:    jspiegelman@foglers.com
Tel:       416.864.9700
Fax:       416.941.8852

Lawyers for Belden (Canada) Inc.


AND TO:

**STIKEMAN ELLIOTT LLP**
445 Park Avenue, 7th Floor
New York, NY  10022

Gordon Cameron
Ron Ferguson

Email:    gncameron@stikeman.com
Tel:       212.845.7464
Fax:       212.371.7087

Email:    rferguson@stikeman.com
Tel:       212.845.7477
Fax:       212.371.7087

Lawyers for GENBAND Inc.


AND TO:

**STIKEMAN ELLIOTT LLP**
5300 Commerce Court West
199 Bay Street
Toronto, ON  M5L 1B9

Sean F. Dunphy

Email:    sdunphy@stikeman.co m
Tel:       416.869.5662
Fax:       416.947.0866

Lawyers for GENBAND Inc.


AND TO:

**BORDEN LADNER GERVAIS LLP**
Barristers and Solicitors
Scotia Plaza, Suite 4400
40 King Street West
Toronto, ON  M4H 3Y4

John D. Marshall
Craig J. Hill

Email:    jmarshall@blgcanada.com
Tel:       416.367.6024
Fax:       416.361.2763

Email:    chill@blgcanada.com
Tel:       416.367.6156
Fax:       416.631.7301

Lawyers for the U.K. Pensions Regulator


AND TO:

**VINCENT DAGENAIS GIBSON LLP/s.r.l**
Barristers and Solicitors
600-325 Dalhousie Street
Ottawa, ON  K1N 7G2

Thomas Wallis

E-mail:  thomas.wallis@vdg.ca
Tel:       613.241.2701
Fax:       613.241.2599

Lawyers for La Regie des Rentes du Quebec


AND TO:

**ROCHON GENOVA LLP**
121 Richmond Street West
Suite 900
Toronto, ON  M5H 2K1

Joel P. Rochon

Email:    jrochon@rochongenova.com
Tel:       416.363.1867
Fax:       416.363.0263

Lawyers for the Opposing LTD Employees

AND TO:

**BLAKE, CASSELS & GRAYDON**
Box 25, Commerce Court West
199 Bay Street, Suite 2800
Toronto, Ontario  M5L 1A9

Pamela J. Huff
J. Jeremy Forgie

Email:    pamela.huff@blakes.com
Tel:       416.863.2958
Fax:      416.863.2653

Email:    jeremy.forgie@blakes.com
Tel:       416.863.3888
Fax:      416.863.2653

Lawyers for The Northern Trust Company,
Canada

AND TO:

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006

James Bromley
Lisa Schweitzer

Email:    lschweitzer@cgsh.com
             jbromley@cgsh.com
Tel:       212.225.2000
Fax:      212.225.3999

Lawyers for Nortel Networks Inc.

AND TO:

**LERNERS LLP**
130 Adelaide St. West
Suite 2400
Toronto, ON  M5H 3P5

William E. Pepall

Email:    wpepall@lerners.ca
Tel:       416.601.2352
Fax:      416.867.2415

Lawyers for the Former Employees in Respect
of the Distribution of the Corpus of the Health
and Welfare Trust

AND TO:

**MACLEOD DIXON LLP**
3700 Canterra Tower
400 Third Avenue SW
Calgary, Alberta
T2P 4H2

Kyle D. Kashuba

Email:    kyle.kashuba@macleoddixon.com
Tel:       403.267.8399
Fax:      403.264.5973

Constellation NewEnergy Canada Inc.

AND TO:

**SACK GOLDBLATT MITCHELL**
500 – 30 rue Metcalfe St.
Ottawa, ON  K1P 5L4

Peter Engelmann
Fiona Campbell

Email:    pengelmann@sgmlaw.com
Tel:       613-482-2452
Fax:      613-235-3041

Email:    fcampbell@sgmlaw.com
Tel:       613-482-2451
Fax:      613-235-3041

Lawyers for the LTD Beneficiaries in Respect of the
Distribution of the Corpus of the Health and Welfare
Trust

AND TO:

**LANG MICHENER LLP**
Brookfield Place, Suite 2500
181 Bay Street
Toronto, ON  M5J 2T7

D. Brent McPherson

Email:    bmcpherson@langmichener.ca
Tel:       416.307.4103
Fax:      416.304.3769

Lawyers for Wells Fargo Bank, National
Association, as successor by merger to Wachovia
Bank, N.A., in its capacity as Servicer for the Nortel
Networks Pass-Through Trust, Series 1-1

AND TO:   **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Barbara J. Boake
James D. Gage

E-mail:   bboake@mccarthy.ca
Tel:       416.601.7557
Fax:       416.868.0673

Email:   jgage@mccarthy.ca
Tel:       416.601.7539
Fax:       416.686.0673

Lawyers for Morneau Sobeco Limited
Partnership

AND TO:   **DAVID STEER**
10 Cypress Court
Nepean, ON  K2H 8Z8

E-mail:   davidsteer127@sympatico.ca

## COURTESY COPIES:

AND
TO:

**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email:   sbrown@lrlaw.com

Tel:     602.262.5321
Fax:     602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND
TO:

**CURTIS, MALLET-PREVOST, COLT &**
**MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail:  sreisman@curtis.com
         jdrew@curtis.com

Tel:     212.696.6000
Fax:     212-697-1559

Lawyers for Flextronics International

AND
TO:

**AKIN GUMP STRAUSS HAUER &**
**FELD LLP**
One Bryant Park
New York, NY  10036

Fred S. Hodara

Email:   fhodara@akingump.com

Tel:     212.872.1000
Fax:     212.872.1002

U.S. Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:

**MILBANK, TWEED, HADLEY**
**McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY  10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email:   DDunne@milbank.com
Tel:     212.530.5770
Fax:     212.530.5219

Email:   ALeblanc@milbank.com
Tel:     212.835.7574
Fax:     212.530.5219

Email:   APisa@milbank.com
Tel:     212.530.5319
Fax:     212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

AND
TO:

**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York  10019

Michael L. Schein

Email:   mschein@vedderprice.com

Tel:      212.407.6920
Fax:     212.407.7799

U.S. Lawyers for Telmar Network Technology,
Inc. and Precision Communication Services, Inc.

AND
TO:

**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :   andrew.robertson@macleoddixon.com
              caylee.rieger@macleoddixon.com

Tel :     403.267.8222
Fax :     403.264.5973

Agent for Nelligan O'Brien Payne LLP, lawyers
for the Steering Committee of Recently Severed
Canadian Nortel Employees and lawyers for the
Steering Committee of Nortel Canadian
Continuing Employees – Post CCAA as at
January 14, 2009

AND
TO:

**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois  60601

Eric S. Prezant

Email:   eric.prezant@bryancave.com
Tel:      312.602.5033
Fax:     312.602.5050

U.S. Lawyers for Tellabs, Inc.

AND
TO:

**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4834

Michael J. Riela

Email: michael.riela@lw.com

Tel :     212.906.1373
Fax :    212.751.4864

U.S. Lawyers for The Bank of New York
Mellon

# INDEX

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**INDEX**

| TAB | DOCUMENT | PAGE |
|-----|----------|------|
| 1. | Affidavit of Katie Legree, sworn December 9, 2010 | 1 |
| A. | Debtors' Motion for Entry of n Order Enforcing the Order Authorizing the Sale of Certain Assets of the Debtors' Carrier Voice Over IP and Application Solutions Business and Directing the Release of Certain Escrowed Funds dated November 17, 2010 | 3 |
| B. | Objection of Genband Inc. to the Debtors' Motion for Entry of an Order Enforcing the Order Authorizing the Sale of Certain Assets of the Debtors' Carrier Voice Over IP and Application Solutions Business and Directing the Release of Certain Escrowed Funds dated December 1, 2010 | 84 |
| C. | Debtors' Reply in Further Support of their Motion to Enforce the CVAS Sale Order and for Related Relief dated December 3, 2010 | 187 |
| D. | Debtors' Objection to Motion of Genband Inc. for Entry of an Order pursuant to Section 362 (d) of the Bankruptcy Code Granting Relief from the Automatic Stay to Compel Arbitration dated December 1, 2010 | 198 |

| **TAB** | **DOCUMENT** | **PAGE** |
|---------|--------------|----------|

E.  Reply of Genband US LLC to Debtors' Objection to Motion of Genband        215
    Inc. for Entry of an Order pursuant to Section 362 (d) of the Bankruptcy
    Code Granting Relief from the Automatic Stay to Compel Arbitration
    dated December 3, 2010

# TAB 1

Court File No: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AFFIDAVIT OF KATIE LEGREE**
**(sworn December 9, 2010)**

I, Katie Legree, of the City of Toronto, in the Province of Ontario, MAKE OATH AND SAY:

1.      I am a law clerk at Ogilvy Renault LLP, counsel to Nortel Networks Corporation ("**NNC**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (collectively the "**Applicants**"). As such, I have personal knowledge of the matters to which I hereinafter depose in this Affidavit. Where I do not possess personal knowledge, I have stated the source of my information and, in all such cases, believe it to be true.

2.      Attached hereto as Exhibit "A" is a motion (the "**U.S. Debtors' Motion**") filed by Nortel Networks Inc. and certain of its affiliates (the "**U.S. Debtors**") on November 17, 2010, in the proceedings pending before the United States Bankruptcy Court for the District of Delaware (the "**U.S. Court**") under Chapter 11 of the United States Bankruptcy Code to enforce that the CVAS Sale Order granted by the U.S. Court on March 3, 2010.

2.

3.      Attached hereto as Exhibit "B" is an objection (the **"GENBAND Objection"**) filed by GENBAND Inc. (**"GENBAND"**) on December 1, 2010, in the proceedings pending before the U.S. Court in respect of the U.S. Debtors' Motion.

4.      Attached hereto as Exhibit "C" is a response filed by the U.S. Debtors with the U.S. Court on December 3, 2010, in response to the GENBAND Objection.

5.      Attached hereto as Exhibit "D" is an objection (**"U.S. Debtors Objection"**) filed by the U.S. Debtors with the U.S. Court on December 1, 2010, to the motion filed by GENBAND on November 18, 2010, in the U.S. Court under Chapter 11 of the United States Bankruptcy Code to lift the automatic stay and compel arbitration.

6.      Attached hereto as Exhibit "E" is an response filed by GENBAND with the U.S. Court on December 3, 2010, in response to the U.S. Debtors Objection.

**SWORN BEFORE ME** at the City of Toronto , in the Province of Ontario on this day of December, 2010.

_____
Commissioner for Taking Affidavits or Notary Public

Robin Anne Cardillo, a Commissioner, etc., City of Toronto, for Ogilvy Renault LLP / S.E.N.C.R.L., s.r.l. Barristers and Solicitors. Expires March 24, 2011.

KATIE LEGREE

# TAB A

This is Exhibit ..... referred to in the

affidavit of ..... *Jane Legier* .....

sworn before me, this ..... 

day of ..... *December* ..... 20..10.

..... 

A COMMISSIONER FOR TAKING AFFIDAVITS

Robin Anne Cardillo, a Commissioner, etc.,
City of Toronto, for Ogilvy Renault LLP / S.E.N.C.R.L., s.r.l.,
Barristers and Solicitors.
Expires March 24, 2011.

3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- X
                                    :

*In re*                              :     Chapter 11
                                    :

Nortel Networks Inc., *et al.*,[1]          :     Case No. 09-10138 (KG)
                                    :

                Debtors.          :     Jointly Administered
                                    :
                                    :     **Hearing date: December 15, 2010 at 10:00 am (ET)**
                                    :     **Objections due: December 1, 2010 at 4:00 pm (ET)**
---------------------------------------------------------- X

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## ENFORCING THE ORDER AUTHORIZING THE
## SALE OF CERTAIN ASSETS OF THE DEBTORS'
## CARRIER VOICE OVER IP AND APPLICATION SOLUTIONS
## BUSINESS, AND DIRECTING THE RELEASE OF CERTAIN ESCROWED FUNDS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), pursuant to

Sections 105(a) and 363 of Title 11 of the United States Code (the "Bankruptcy Code") for the

entry of an order substantially in the form attached hereto as Exhibit A (i) enforcing the *Order*

*Authorizing And Approving (A) The Sale Of Certain Assets Of The Debtors' Carrier Voice Over*

*IP And Communications Solutions Business Free And Clear Of All Liens, Claims And*

*Encumbrances, And (B) The Assumption And Assignment Of Certain Executory Contracts*

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

U

(the "Sale Order") [D.I. 2632] against GENBAND Inc. (n/k/a GENBAND US LLC)

("GENBAND"); (ii) directing the release of $4,859,745 plus accumulated interest currently held

in escrow by escrow agent, Wells Fargo Bank, National Association ("Wells Fargo"), pursuant to

the Escrow Agreement dated as of January 6, 2010, by and among Wells Fargo, Nortel Networks

Corporation, NNI, Nortel Networks Limited, Nortel Networks UK Limited (in administration)

and GENBAND (as amended from time to time, the "Escrow Agreement"); and (iii) granting

them such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

1.      The Debtors bring this motion to enforce the Sale Agreement governing the sale

of their Carrier Voice over IP and Communications Solutions ("CVAS business" to GENBAND.

GENBAND has sought to drastically and improperly reduce the CVAS purchase price by

claiming a purchase price adjustment that ignores the clear terms of the Sale Agreement. The

Sale Agreement provides, among other things, that the purchase price will be adjusted based on

certain assumed liabilities, including the "Deferred Profit Amount," which is to be determined

based on "deferred revenues for services to be performed or products to be provided by the

Business after the Closing Date." Sale Agreement at 11. Based on this clear definition, and

applying it in a manner consistent with a previous sale transaction, the Deferred Profit Amount

adjustment is $34,284,392, and the total purchase price is $179,508,745. But GENBAND seeks

to ignore the clear terms of the definition of Deferred Profit Amount in order to include deferred

revenues for services performed or products provided before the Closing Date, and for which no

services were to be performed or products provided after the Closing Date. On this basis,

GENBAND seeks to add $36,285,608 to the Deferred Profit Amount figure, inflating that figure

to $70,570,000, and drastically reducing the purchase price to $142,904,000.

2

5

2.      GENBAND seeks to avoid this Court's clear jurisdiction along with the Ontario Superior Court of Justice (the "Canadian Court") over this matter and instead wishes to have the dispute referred to an accounting arbitrator, based on a provision in the Sale Agreement that provides for certain disagreements to be resolved by an accounting arbitrator. But there is nothing here for an accounting arbitrator to decide. To the contrary, the parties and their accountants agree on the figures that would determine the Deferred Profit Amount if the proper interpretation of "services to be performed or products to be provided by the Business after the Closing Date" is applied. Id. In fact, the parties jointly developed and agreed upon these figures in the course of determining the assumed assets and liabilities that GENBAND would assume upon the acquisition of the CVAS Business. Thus, there is nothing in this dispute for an accountant to decide. To the contrary, this is a disagreement about the clear terms of the Sale Agreement – and, in particular, GENBAND's attempt to disregard those clear terms.

3.      Thus, this dispute is squarely within the jurisdiction the Court expressly reserved under the CVAS Sale Order, to "(1) interpret, implement and enforce the terms and provisions of this Order . . . and the terms of the Sale Agreement . . . (4) compel the Purchaser to perform all of its obligations under the Sale Agreement; and (5) resolve any disputes arising under or related to the Sale Agreement . . . ." Sale Order, at ¶ 32. In addition, Section 10.6(b) of the Sale Agreement further confirms that

> each Party (i) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever arising out of, or in connection with, this Agreement, or the transactions contemplated hereby shall be brought only in (a) either the U.S. Bankruptcy Court, if brought prior to the entry of a final decree closing the Chapter 11 Cases, or the Canadian Court, if brought prior to the termination of the CCAA Cases.

3

Hence, under both the Sale Order and the Sale Agreement, this Court is to decide the dispute at issue.

4.      In addition to the dispute created by GENBAND's effort to disregard the definition of Deferred Profit Amount, there are two smaller disputes that the Debtors ask the Court to resolve. First, after the closing of the sale to GENBAND, the CVAS Business was able to recover approximately $1.8 million from Verizon based on a disputed matter relating to products and systems that the Nortel CVAS Business provided to Verizon long before the sale. Because that recovery is clearly not to be included in the sale to GENBAND, this $1.8 million amount properly belongs to Nortel. Second, in connection with the Sale Agreement, GENBAND owes to Nortel Canadian transfer taxes in the amount of $1,000,390. GENBAND has indicated a disagreement with the transfer tax amount and has failed to remit this payment, which also properly belongs to Nortel.

5.      In sum, the Debtors seek an order from this Court enforcing the clear terms of the Sale Agreement and confirming the correct purchase price. In addition, based on the correct purchase price, the Sellers (as defined below) are entitled to recover $4,859,745 plus accumulated interest currently held in escrow. Accordingly, the Debtors request that the Court order the immediate release of these funds held in escrow.

## JURISDICTION

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. In addition, the parties have submitted to this Court's jurisdiction pursuant to Section 10.6(b) of the Sale Agreement.

4

7.      The statutory bases for the relief requested herein are Sections 105(a) and 363 of the Bankruptcy Code.

## BACKGROUND

**A.      Procedural History**

8.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate their remaining businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

9.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

10.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Canadian Court under the Companies' Creditors Arrangement Act (Canada) (the "CCAA), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]      The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates

(collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the

control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). Other

Nortel affiliates have commenced and in the future may commence additional creditor

protection, insolvency and dissolution proceedings around the world.

      11.    On June 19, 2009, Nortel announced that it was advancing in discussions with

external parties to sell its businesses and that it would assess other restructuring alternatives for

its businesses in the event that it were unable to maximize value through sales. Since then,

Nortel has sold many of its business units and assets to various purchasers. Efforts continue to

be made with respect to the realization of value from Nortel's remaining assets. For further

information regarding these chapter 11 cases, reference may be made to the Monthly Operating

Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**B.    Debtors' Corporate Structure and Business**

      12.    Prior to its significant business divestitures, Nortel was a global supplier of end-

to-end networking products and solutions serving both service providers and enterprise

customers. Nortel's technologies spanned access and core networks and supported multimedia

and business-critical applications. Nortel's networking solutions consisted of hardware, software

---

[4]    The EMEA Debtors include the following entities: Nortel Networks UK Limited (in administration), Nortel Networks S.A. (in administration), Nortel Networks (Ireland) Limited (in administration), Nortel GmbH (in administration), Nortel Networks France S.A.S.(in administration), Nortel Networks Oy (in administration), Nortel Networks Romania SRL (in administration), Nortel Networks AB (in administration), Nortel Networks N.V. (in administration), Nortel Networks S.p.A. (in administration), Nortel Networks B.V. (in administration), Nortel Networks Polska Sp. z.o.o. (in administration), Nortel Networks Hispania, S.A. (in administration), Nortel Networks (Austria) GmbH (in administration), Nortel Networks, s.r.o. (in administration), Nortel Networks Engineering Service Kft (in administration), Nortel Networks Portugal S.A. (in administration), Nortel Networks Slovensko (in administration), s.r.o. (in administration) and Nortel Networks International Finance & Holding B.V. (in administration).

and services. Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

## RELIEF REQUESTED

13.     By this Motion, the Debtors seek an order enforcing the Sale Order against GENBAND, affirming that GENBAND's calculation of Deferred Profit Amount in the Closing Statement contravenes the Sale Agreement (as defined below) and that, under the terms of the Sale Agreement, this dispute is not properly determined by an Accounting Arbitrator. Given the lack of a legitimate dispute as to the Sellers' entitlement to a portion of the escrowed funds, the Debtors also seek the release of $4,859,745 plus accumulated interest currently held in escrow by Wells Fargo in accordance with Section 4 of the Escrow Agreement and such other relief as the Court may deem just and proper.

## FACTS RELEVANT TO THIS MOTION

### A.    The Sale of the Debtors' CVAS Business to GENBAND

14.     This Motion relates to Nortel's sale of assets associated with its CVAS Business (as defined below) to GENBAND. Specifically, on December 23, 2009, the Debtors filed the *Debtors' Motion for Order (I)(A) Authorizing Debtors' Entry Into The Stalking Horse Agreement, (B) Authorizing And Approving The Bidding Procedures And Bid Protections, (C) Approving Payment Of An Incentive Fee, (D) Approving The Notice Procedures And The Assumption And Assignment Procedures, (E) Authorizing The Filing Of Certain Documents Under Seal And (F) Setting A Date For The Sale Hearing, And (II) Authorizing And Approving (A) The Sale Of Certain Assets Of Debtors' Carrier Voice Over IP And Application Solutions Business Free and Clear Of All Liens, Claims And Encumbrances And (B) The Assumption And Assignment Of Certain Executory Contracts* [D.1. 2193] (the "CVAS Sale Motion") seeking approval of the sale of substantially all of the assets relating to Nortel's Carrier Voice over IP

and Communications Solutions Business (the "CVAS Business") to GENBAND pursuant to a

stalking-horse purchase agreement (the "Stalking Horse Agreement"), subject to the receipt of a

higher and better offer at auction. The bidding procedures approved by the Court required

competing bids to be made based on the form of the Stalking Horse Agreement agreed on by

GENBAND.

15.    Following the Court's approval of the bidding procedures by order dated January

8, 2010 [D.I. 2259], Nortel marketed the CVAS Business to other potentially interested parties,

based on the terms of the Stalking Horse Agreement. Two parties expressed potential interest in

the assets and were qualified as Qualified Bidders as defined under the bidding procedures.

Ultimately, these two parties decided not to submit Qualified Bids, and Nortel announced that it

would not proceed to auction and would work toward closing the asset sale agreement with

GENBAND. The Court approved the sale of the CVAS Business to GENBAND pursuant to the

Stalking Horse Agreement dated as of December 22, 2009, by and among the Main Sellers and

the EMEA Sellers (the "Sellers" and together with GENBAND the "Parties") and GENBAND

(the "Sale Agreement")[5] by order dated March 4, 2010 [D.I. 2632]. The Canadian Court

likewise approved both the bidding procedures by order dated January 6, 2010, and the sale of

the CVAS Business to GENBAND pursuant to the Sale Agreement by order dated March 4,

2010. The Sale Agreement was later amended pursuant to Amendment No. 1 to the Asset Sale

Agreement dated as of May 28, 2010, to address provisions not relevant to this dispute.

16.    On May 25, 2010, prior to the Closing, the Sellers provided GENBAND with an

Estimated Purchase Price statement as contemplated by Section 2.2.2 of the Sale Agreement.

The Estimated Purchase Price statement provided for an estimated Deferred Profit Amount of

---

[5]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in
the Sale Agreement.

8

*11.*

$37,867,000 and an estimated Purchase Price of $182,649,000. In calculating the Estimated

Purchase Price, the Sellers applied the same clear terms of the definition of Deferred Profit

Amount that they seek to enforce in this Motion, and thus included only "deferred revenues for

services to be performed or products to be provided by the Business after the Closing Date."

GENBAND did not challenge these calculations and the sale of the CVAS Business to

GENBAND closed on May 28, 2010, approximately five months after the signing of the Stalking

Horse Agreement.

17.    In connection with the sale of the CVAS Business, Wells Fargo, NNI, NNL,

NNUK and GENBAND entered into an Escrow Agreement, dated as of January 6, 2010 and

amended on May 28, 2010. The Escrow Account was established, with Wells Fargo as escrow

agent, to hold the Escrow Amount, which consists of, among other things, a Purchase Price

Adjustment Escrow Amount in the principal sum of $8,000,000 that relates to certain potential

post-closing purchase price adjustments that could be made pursuant to Section 2.2.3 of the Sale

Agreement. Under Section 4 of the Escrow Agreement, funds may be released from the Escrow

Account either pursuant to the delivery of a joint written instruction by NNI, NNL, NNUK and

GENBAND to Wells Fargo directing the release of funds, or by a final, non-appealable court

order directing the release of funds.

**B.    The Closing Statement and Calculation of the Purchase Price Adjustment**

18.    On September 15, 2010, as contemplated by the Sale Agreement, GENBAND

delivered to the Sellers a written closing statement (the "Closing Statement"), a copy of which is

attached hereto as Exhibit B, that contained GENBAND's proposed calculation of certain post-

closing purchase price adjustments provided for under the Sale Agreement. The Closing

Statement proposed a net purchase price adjustment in favor of GENBAND in the amount of

9

/2.

$139,096,000, which included a calculated Deferred Profit Amount of $70,570,000. Thus, the Final Purchase Price pursuant to GENBAND's proposed calculation was $142,904,000.

19.    GENBAND's proposed calculation of the Final Purchase Price disregards the clear definition of "Deferred Profit Amount," as discussed above. Accordingly, on October 13, 2010, as contemplated by and in accordance with the Sale Agreement, the Sellers delivered to GENBAND a written disagreement notice.  On November 16, 2010, the Sellers delivered to GENBAND a corrected disagreement notice to account for a small calculation error (the "Disagreement Notice"), a copy of which is attached hereto as Exhibit C.  In the Disagreement Notice the Sellers set forth a net purchase price adjustment in favor of GENBAND in the amount of $102,491,255, which included a calculated Deferred Profit Amount of $34,284,392. Thus, the final purchase price pursuant to the Sellers' calculation was $179,508,745. After accounting for other amounts accepted by GENBAND,[6] there is currently a dispute over the final purchase price reflecting the $36,285,608 difference between the Deferred Profit Amount calculated by GENBAND and the Deferred Profit Amount calculated by the Sellers.

20.    The standard for calculating the purchase price adjustment, and particularly the Deferred Profit Amount, is set forth in the Sale Agreement.  Section 2.2.3.1(a) generally provides that the purchase price adjustment shall be calculated by subtracting various liabilities, one of which is the Deferred Profit Amount, from the Base Purchase Price of $282,000,000. Section 2.2.3.1(a) of the Sale Agreement provides that the Closing Statement "shall be prepared in accordance with the Nortel Accounting Principles and the terms hereof." Sale Agreement, p. 48 (emphasis supplied).

---

[6]    GENBAND subsequently agreed with the Sellers' adjustments to the Closing Unbilled Accounts Receivable Amount and Closing Specified Employee Liabilities Amount as set forth in the Disagreement Notice.

*13*

21.    The Sale Agreement defines the Deferred Profit Amount as:

> both short term and long term (i) deferred revenues for <u>services to be performed or products to be provided by the Business after the Closing Date</u> but for which an account receivable has been recorded or cash has been received prior to the Closing Date *minus* (ii) associated deferred costs to the extent incurred by the Business prior to the Closing Date in Connection with such products or services, in each case, that would be required to be reflected on a balance sheet of the Business . . . [f]or the avoidance of doubt, the Deferred Profit Amount will include advance billings and deferred revenue consistent with Nortel Accounting Principles.

Sale Agreement, at 11 (definition of Deferred Profit Amount) (emphasis supplied).

22.    Thus, by the Sale Agreement's unambiguous language, the Deferred Profit Amount includes only deferred revenues and associated deferred costs in respect of services to be performed and products to be provided <u>after</u> the Closing Date. Yet GENBAND seeks to disregard the phrase "after the Closing Date" in the definition of Deferred Profit Amount. Thus, GENBAND seeks to include deferred revenue items for services to be performed or products to be provided by the Business <u>before</u> the Closing Date – that is, revenues associated with work that was completed in the past and for which there are no "services to be performed or products to be provided by the Business <u>after</u> the Closing date."

23.    There is no disagreement between the Parties about accounting analysis or mathematical calculations. Indeed, in the course of calculating the assets and liabilities that GENBAND would assume upon the acquisition of the CVAS business, the Parties made the same determination of deferred revenues for services to be performed or products to be provided by the CVAS business after the Closing Date. Thus, the Parties agreed on the calculation of items that dictate the Deferred Profit Amount to be reflected on GENBAND's books for operation of the Business after the Closing Date. Accordingly, if the clear terms of the definition of Deferred Profit Amount are enforced, there is no legitimate disagreement that the resulting

11

14.

figure is the one that the Sellers have used in calculating the purchase price. Thus, the Sellers seek to enforce the clear terms of the Sale Agreement by including only deferred revenues and associated deferred costs in respect of services performed and products delivered <u>after</u> the Closing Date.

24.    Notably, the Sellers' position is also consistent with the manner in which a term with the same definition was applied by the Sellers and the purchaser in a prior sale transaction. The sale agreement executed in connection with Nortel's divestiture of its Metro Ethernet Networks Business ("<u>MEN</u>") to Ciena Corporation ("<u>Ciena</u>"), which occurred in 2010, used substantially identical language to define the deferred revenue amount that would impact the purchase price adjustment, ███████████████████████████████████ ███████████████████████████████. In the MEN sale agreement, the term was referred to as "Closing Net Deferred Revenues," and the definition of the term was substantively identical to the definition of "Deferred Profit Amount" in the CVAS Sale Agreement. Specifically, Closing Net Deferred Revenues was determined based on:

> deferred revenues for services to be performed or products to be provided by the Business after the Closing Date but for which an account receivable has been recorded prior to the Closing Date <u>minus</u> (y) associated deferred costs to the extent incurred by the Business prior to the Closing Date in connection with such products or services, in each case, that would be required to be reflected on a balance sheet of the Business as of such date prepared in accordance with GAAP applied in a manner consistent with the Nortel Accounting Principles (to the extent consistent with GAAP).

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

15

██████████████████████ Thus, both the purchaser and the sellers in the MEN transaction applied this definition according to its clear terms, just as Sellers seek to do here.

25.     In addition to the dispute caused by GENBAND's attempt to disregard the clear definition of "Deferred Profit Amount," GENBAND also included an item in its calculation that clearly does not belong – specifically a $1,629,132 negative deferred cost-of-sales balance belonging to Nortel Networks (Luxembourg) S.A. ("Nortel Luxembourg"), which should not be included simply because Nortel Luxembourg is not a party to the CVAS sale.  Because Nortel Luxembourg is neither a Seller under the Sale Agreement nor an EMEA Seller, this negative deferred cost-of-sales balance should not be included in the calculation of the Deferred Profit Amount.

C.    **Purchaser's Non-Compliance with the Sale Agreement in Calculating the Deferred Profit Amount**

26.     Notably, the concept and definition of Deferred Profit Amount was introduced into the Stalking Horse Agreement by GENBAND on or about December 5, 2009.  After GENBAND drafted the definition in dispute, the Parties continued to review and revise the draft agreement for nearly three additional weeks, exchanging multiple drafts leading up to the signing of the Stalking Horse Agreement.  The definition of Deferred Profit Amount that GENBAND proposed never changed and became part of the Stalking Horse Agreement and the final Sale Agreement.  Yet GENBAND now insists on ignoring the express terms of the duly executed Sale Agreement that it proposed.

27.     GENBAND has suggested that its proposed reading of "Deferred Profit Amount" or, more accurately, its disregard of the clear terms of the definition, is supported by purported discussions prior to the execution of the Stalking Horse Agreement.  But the clear terms of the Sale Agreement govern.  Moreover, the Sale Agreement contains an integration clause that

13

*16*

expressly forbids GENBAND from doing what it now seeks to accomplish. Section 10.12(a)

provides: "This Agreement . . . set[s] forth the entire understanding of the Parties relating to the

subject matter thereof, and all prior or contemporaneous understandings, agreements,

representations and warranties, whether written or oral are superseded by this Agreement . . . ."

Sale Agreement, at 136.

### D.    Purchaser's Non-Compliance with the Sale Agreement by Refusing to Pay to Nortel Settlement Payments Received from Verizon

28.     In addition to the dispute caused by GENBAND's attempt to avoid the clear

definition of Deferred Profit Amount, GENBAND failed to comply with the Sale Agreement by

refusing to pay Nortel certain payments received from Verizon Services Corp. ("Verizon") in

connection with products delivered by NNI to Verizon prior to the Closing Date.

29.     NNI and Verizon are parties to a certain General Product Purchase Agreement for

Softswitch and TDM Products and Services (the "GPPA Agreement"). Under the GPPA

Agreement, which was executed in 2004, Verizon purchased certain switches and software

licenses from NNI. In 2009, Nortel conducted an audit of the switches purchased by Verizon

and discovered that Verizon had begun using certain software, resident on the switches, for

which it had not purchased accompanying licenses. The value of these licenses was

approximately $2,000,000. This value, owed to Nortel for products delivered to and used by

Verizon prior to 2009, was not recorded on Nortel's books as a receivable because Nortel was

not in possession of appropriate GAAP-compliant documentation that allowed for the value to be

accounted for as a receivable at the time.

30.     Accordingly, NNI entered into discussions with Verizon concerning the unpaid

licensing fees, over which a dispute as to payment arose and those discussions were continuing

as of the Closing Date.

31.     The GPPA Agreement was ultimately assigned to GENBAND, pursuant to the

Sale Agreement, before NNI was able to resolve the dispute with Verizon. Pursuant to Section

2.1.1(b) of the Sale Agreement, the Sellers transferred and assigned to GENBAND all of the

Seller's right title and interest in and to, among other things, the Sellers' Unbilled Accounts

Receivable relating to the CVAS business. "Unbilled Accounts Receivable" is expressly defined

in the Sale Agreement to mean "amounts classified in Construction-in-Process Accounts in a

manner consistent with the Nortel Accounting Principles as of a certain date" ("Construction-in-

Process Accounts"). Sale Agreement, at 33. All other accounts receivable, whether billed or

unbilled, are an "Excluded Asset" pursuant to Section 2.1.2(a) of the Sale Agreement. Excluded

Assets remain with Nortel.

32.     Following the Closing Date, the Sellers learned that former Nortel employees –

now employed by GENBAND – continued working with Verizon to resolve the dispute, and that

Verizon and GENBAND executed a settlement agreement (the "Settlement Agreement") under

which Verizon has agreed to pay GENBAND ████████ for the licenses provided by NNI prior

to the Closing Date (the "Verizon Receivables").

33.     The Verizon Receivables were not classified in "Construction-in-Process

Accounts" and therefore do not constitute Unbilled Accounts Receivables. Rather, the Verizon

Receivables – which represent fees for licenses that NNI delivered and Verizon utilized before

the GPPA Agreement was assigned to GENBAND – are an Excluded Asset that remained with

the Sellers under the Sale Agreement.[7] Under Section 5.12 of the Sale Agreement, GENBAND

has agreed to promptly deliver to the Sellers any payment or instrument received by GENBAND

---

[7]     Furthermore, under section 2.1.2(a) of the Sale Agreement, claims relating to any
Excluded Liability (as defined in the Sale Agreement), which includes liabilities relating to any
Excluded Asset, also constitute an Excluded Asset. Sale Agreement, p. 37.

that is for the account of the Sellers under the terms of the Sale Agreement. Sale Agreement, pp. 86-7.

34.    Therefore, the Debtors respectfully request that the Court issue an Order directing GENBAND to: (i) provide the Sellers with a fully executed copy of the Settlement Agreement and the name and contact information of representatives of Verizon with whom GENBAND has been in discussions with respect to the Settlement Agreement; (ii) deliver to the Sellers an accounting of all purchase orders received and expected to be received by GENBAND from Verizon with respect to the Verizon Receivables, copies of such purchase orders, and the related invoices issued by GENBAND; (iii) deliver to the Sellers any amounts received by GENBAND in payment for the Verizon Receivables as of the date hereof, and any purchase orders and amounts that GENBAND may receive from Verizon after the date hereof with respect to the Verizon Receivables; and (iv) fully cooperate with the Sellers and Verizon in the resolution of this matter.

**E.    Purchaser's Non-Compliance with the Sale Agreement by Refusing to Pay to Nortel Certain Canadian Transfer Taxes**

35.    Finally, there is one additional dispute as to which Nortel seeks this Court's intervention. GENBAND has failed to comply with the Sale Agreement by refusing to pay Nortel certain Canadian transfer taxes. Nortel has been in communication with GENBAND's counsel for six months to reach an agreement on the appropriate amount of transfer taxes owing to Nortel in connection with transfer of the tangible and intangible assets.

36.    Nortel issued draft invoices to GENBAND in the amount of $1,000,390 on September 28, 2010 for the taxes owed based on an understanding that the Parties had reached agreement as to the proper figure. GENBAND subsequently indicated that it was not in agreement with the figure and informed Nortel that it would revert with specific objections. To

16

19.

date, GENBAND has yet to respond to Nortel's repeated requests for additional information

concerning GENBAND's objections and the payment of transfer taxes to Nortel is past due.

    37.    Therefore, the Debtors respectfully request that the Court issue an order directing

GENBAND to: (i) immediately remit payment in accordance with the September 28, 2010

invoices for the Canadian transfer taxes owed to Nortel; or (ii) deliver to the Sellers a written

statement of its objections to the same; and (iii) fully cooperate with the Sellers in the resolution

of this matter.

## ARGUMENT

**A.    The Court Retains Exclusive Jurisdiction Over this Dispute and Has Authority to Enforce the Terms of the Sale Order**

    38.    Pursuant to the Sale Order, this Court retains, "jurisdiction with respect to all

matters arising from or related to the implementation of this Order, including, without limitation,

the authority to: (1) interpret, implement and enforce the terms and provisions of this Order . . .

and the terms of the Sale Agreement . . . (4) compel the Purchaser to perform all of its

obligations under the Sale Agreement; and (5) resolve any disputes arising under or related to the

Sale Agreement . . ." Sale Order, at ¶ 32.

    39.    Further, Section 10.6(b) of the Sale Agreement provides that:

> [t]o the fullest extent permitted by applicable Law, each Party (i)
> agrees that any claim, action or proceeding by such Party seeking
> any relief whatsoever arising out of, or in connection with, this
> Agreement, or the transactions contemplated hereby shall be
> brought only in (a) either the U.S. Bankruptcy Court, if brought
> prior to the entry of a final decree closing the Chapter 11 Cases, or
> the Canadian Court, if brought prior to the termination of the
> CCAA Cases.

20

The "U.S. Bankruptcy Court" means "the U.S. Bankruptcy Court for the District of Delaware."

Sale Agreement, p. 131.[8]

40.     Section 105(a) of the Bankruptcy Code additionally provides that the Court "may

issue any order, process or judgment that is necessary or appropriate to carry out the provisions

[of the Bankruptcy Code]." 11 U.S.C. § 105(a).  Bankruptcy courts, based on the reference of the

inherent power of the district court contained in Section 157(c) of Title 28 of the United States

Code and on the broad statutory grant of equitable powers in Section 105 of the Bankruptcy

Code, have the inherent authority to enforce compliance with their lawful orders, to the extent

such power is not restricted by statute.  See, e.g., In re WorldCorp., Inc., 252 B.R. 890, 897

(Bankr. D. Del. 2000) (compelling party to make payment in accordance with agreement that

was previously approved by court order); U.S. Lines, Inc. v. GAC Marine Fuels Ltd. (In re

McLean Indus. Inc.), 68 B.R. 690, 695-97 (Bankr. S.D.N.Y. 1986); Johns-Manville Sales Corp.

v. Doan (In re Johns-Manville Corp.), 26 B.R. 919, 924 (Bankr. S.D.N.Y. 1983); Baer v. Bowser

(In re Jones), Case No. 97-41205-7, 2003 Bankr. LEXIS 2056, at *15 (Bankr. D. Kan. Nov. 10,

2003) ("[T]he Court can think of no better use of its equity powers under § 105 than to issue an

order that compels compliance with a previous order."); JMF Acquisitions Co. v. Boccella (In re

Edgehill Nursing Home, Inc.), 68 B.R. 413, 415-16 (Bankr. E.D. Pa. 1986).

41.     Further, this Court has jurisdiction to determine whether the present dispute falls

within the scope of Section 2.2.3.1(c) of the Sale Agreement, the so-called arbitration clause.

The law is clear that a court decides the threshold issue of whether a particular dispute falls

within the scope of an arbitration agreement.  See e.g., AT&T Techs, Inc. v. Commc'ns Workers

of Am., 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide

---

[8]     The Debtors have been informed that the Main Sellers who are Canadian Debtors are
seeking similar relief from the Canadian Court.

otherwise, the question of whether the parties agreed to arbitrate [a particular grievance] is to be

decided by the court, not the arbitrator."); In re MLL Investors Servs., Inc., 620 N.Y.S.2d 605,

607 (3rd Dep't 1994).

42.    Accordingly, this Court has the authority, and has indeed specifically reserved its

jurisdiction, to interpret and enforce the Sale Order and the terms of the Sale Agreement and the

Escrow Agreement.

**B.     GENBAND Attempts to Disregard the Clear Definition of "Deferred Profit
        Amount"**

43.    By the definition set forth in the Sale Agreement, the Parties expressly agreed that

the Deferred Profit Amount would be calculated by using deferred revenues and associated

deferred costs in respect of services performed and products delivered after the Closing Date.

However, in its Closing Statement GENBAND seeks to disregard the clear meaning of Deferred

Profit Amount by: (i) overstating the Closing Deferred Profit Amount by $36,285,608 as a result

of incorrectly including deferred revenues and associated deferred costs in respect of services

performed and products delivered prior to the Closing Date; and (ii) by including a negative

deferred cost-of-sales balance of $1,629,132 with respect to Nortel Luxembourg, which is

neither a Seller under the Sale Agreement nor an EMEA Seller.

44.    Having itself proposed the definition of Deferred Profit Amount in the Sale

Agreement, and unequivocally agreed to this definition in signing the Sale Agreement,

GENBAND cannot now urge that the express language be disregarded.  As the Sale Agreement

makes clear, the proper use of a Closing Statement is for GENBAND to calculate the Purchase

Price Adjustment in strict accordance with the terms set forth in the Sale Agreement.  The

Closing Statement was never intended, and cannot now be used, as a means to renegotiate the

terms of a component of the Purchase Price Adjustment formulation or any other contract term.

19

*22·*

Yet GENBAND is attempting to improperly use the Closing Statement as an opportunity to reform the Sale Agreement and strike a deal with drastically different economics from the one approved by the Court and the multiple constituents and selling parties that were not present at business-level discussions, and which was marketed to other potential bidders, including the Qualified Bidders. Indeed, to sanction GENBAND's conduct would reduce the value received by the Sellers and their creditors from the Transaction by $36,285,608 or approximately 20% of the Final Purchase Price. Furthermore, adopting GENBAND's position would result in GENBAND receiving the financial benefit of goods and services provided by the Sellers prior to the Closing Date for which GENBAND will bear no costs.

45.    GENBAND's expected attempt to disregard the clear terms of the Sale Agreement and to proffer alleged discussions during the negotiation process to change the terms of the Sale Agreement is improper. As set forth above, Section 10.12(a) of the Sale Agreement contains an integration clause which affirms that the contract sets forth the entire agreement between the Parties, and that all prior discussions or understandings are superseded by its terms. This provision is of particular import here, where the sale of Nortel's global business operations required the terms of the Sale Agreement to be approved by multiple selling parties around the world who were not all present at negotiating sessions, and where the Sellers used the terms of the Sale Agreement to market the CVAS Business to other potential purchasers to ensure they achieved the highest and best value for their creditors.

46.    Enforcing the clear terms of the definition of "Deferred Profit Amount" is especially important in light of the fact that GENBAND was approved as the highest and best bidder for the assets following a formal, court approved auction process. The Deferred Profit Amount, along with certain other enumerated purchase price adjustments, determines the final

20

23

Purchase Price for the assets. The sellers solicited competing bids and qualified certain other bidders based on the publicly filed Stalking Horse Agreement. Any other potential bidder would have been held to a purchase price adjustment based on the meaning of "Deferred Profit Amount" as written, and would have read the agreement to determine its impact on the purchase price when it considered whether to offer a competing bid for the CVAS Business. It would be improper and unfair to allow GENBAND to now substitute a different meaning of "Deferred Profit Amount" that would have given it a hidden and uneven $36,285,608 advantage throughout the auction process by allowing it to obtain a lower purchase price from the same headline purchase price than other potential bidders bidding on the exact same form of purchase agreement.

47.    Further, if GENBAND had had any disagreement with the clear definition of "Deferred Profit Amount" in the Sale Agreement, it should have raised that disagreement before the Closing Date. GENBAND had multiple opportunities to raise objections before signing the Sale Agreement or participating in the bidding procedures hearing or sale hearing (at which its counsel was present, but notably did not object or indicate any dispute) or the closing of the sale. Indeed, the Sellers provided GENBAND with an Estimated Purchase Price three days prior to the Closing, which reflected calculations based on the proper application of "Deferred Profit Amount." GENBAND raised no objection. Had a timely objection been raised, the Sellers could have considered the dispute in deciding whether to close the Sale and would not be forced to bear the cost of enforcing the terms of the Sale Agreement as written.

21

24.

48.    Integration clauses are widely used and generally enforced under New York law[9]

as a valid means of protecting the final written agreement between parties from later being

challenged by extrinsic evidence of prior negotiations between those parties. See, e.g., Norman

Bobrow & Co. v. Loft Realty Co., 577 N.Y.S.2d 36, 36 (1st Dep't 1991) ("Parol evidence is not

admissible to vary the terms of a written contract containing a merger clause."). The effect of an

integration clause is that a party to a written agreement will not be permitted to produce extrinsic

evidence of a prior or contemporaneous understanding or representation that differs from the

terms of an unambiguous and complete written agreement. See Jarecki v. Louie, 745 N.E.2d

1006, 1009 (N.Y. 2001) ("The purpose of a merger clause is to require the full application of the

parol evidence rule in order to bar the introduction of extrinsic evidence to alter, vary or

contradict the terms of the writing."). Here, the Sellers understand that GENBAND is relying on

purported conversations to support its attempt to disregard the clear definition of Deferred Profit

Amount. Such an argument is precisely what the Parties intended to exclude by incorporating

the Section 10.12 integration clause. Therefore, GENBAND should not be permitted to alter the

unambiguous definition of Deferred Profit Amount.

49.    In addition, the closing Deferred Profit Amount calculated by GENBAND

improperly includes a negative deferred cost-of sales balance of $1,629,132 with respect to

Nortel Luxembourg. As Nortel Luxembourg is neither a Seller nor an EMEA Seller,[10] the

amount of $1,629,132 should not have been included in GENBAND's calculation of the Closing

Deferred Profit Amount. Therefore, the Deferred Profit Amount should be reduced accordingly.

---

[9]    The Sale Agreement is governed by New York law in accordance with Section 10.6(a).
Sale Agreement, p. 131.

[10]    Indeed, Nortel Luxembourg would only be an EMEA Seller, and not a MAIN Seller, but
it unequivocally was not.

25

C.    **Arbitration is Not the Proper Forum to Resolve the Deferred Profit Amount Dispute**

50.    As GENBAND's reading of Deferred Profit Amount contravenes the terms of the Sale Agreement, the Court may enforce the terms of the Sale Order and direct the release of escrowed funds in excess of other disputed amounts without the need for the Parties to resort to the use of an Accounting Arbitrator.

51.    Section 2.2.3.1(c) of the Sale Agreement provides for the use of an Accounting Arbitrator if the Sellers and GENBAND "are unable to resolve any disagreement as contemplated by Section 2.2.3.1(b) [of the Sale Agreement] within fifteen (15) days after delivery of a Disagreement Notice." Sale Agreement at 49 (emphasis supplied). The Accounting Arbitrator's authority is clearly restricted to disputes appropriately raised under the Sale Agreement's purchase price adjustment procedures. The present dispute has not been properly raised. Section 2.2.3.1(a) clearly requires that a Closing Statement be "prepared in accordance with the Nortel Accounting Principles and the terms hereof." Sale Agreement at 48 (emphasis supplied). By improperly seeking to reform the Sale Agreement GENBAND has disregarded its obligation to prepare the Closing Statement in accordance with the terms of the Sale Agreement it signed, and which served as the basis of the auction process. The difference between GENBAND's and the Sellers' respective calculations of Deferred Profit Amount is not the result of any accounting disagreement or mathematical discrepancy, but rather is the product of GENBAND's attempt to disregard the clear terms of the Sale Agreement. The Debtors did not agree to delegate to the Accounting Arbitrator the power to rewrite the terms of the Sale Agreement, as GENBAND now seeks to do. Accordingly, the Debtors should not be required to expend further time or resources rebutting arguments that lack even arguable merit under the Sale Agreement. Accordingly, the Debtors respectfully request that the Court issue an order

23

26.

enforcing the terms of the Sale Agreement and calculating the Deferred Profit Amount in accordance with the express terms of the Sale Agreement.

**D.     The Court Should Order the Release of the Escrow Funds**

52.     Because the correctly calculated Purchase Price Adjustment Escrow Amount exceeds the maximum purchase price adjustment by $4,859,745, there is no basis for the continued reserve of those excess amounts. On November 16, 2010, the Sellers delivered escrow release instructions to GENBAND requesting that GENBAND authorize the release of the escrow funds; however, GENBAND has not yet agreed to do so. Accordingly, because GENBAND has not raised a legitimate dispute with respect to the calculation of the Deferred Profit Amount, the Debtors respectfully request that the Court enter an order directing GENBAND to execute instructions to Wells Fargo to release to the Distribution Agent (as defined in the Escrow Agreement) those amounts currently held in escrow in excess of $3,140,255 (*i.e.* $4,859,745), and authorizing Wells Fargo to release such amount under the terms of the Sale Agreement and to release the balance to GENBAND.

53.     As the Court is aware, the Sellers are in the process of negotiating the allocation proceeds of the numerous asset dispositions undertaken in the course of Nortel's global insolvency proceedings. In doing so, the Debtors, their estates and their creditors will benefit from having as accurate an estimate of the funds to be allocated from each asset disposition as is reasonably possible. Accordingly, it is especially important that the escrowed funds that are properly owed to the Sellers be released as soon as possible. Accordingly, the Debtors request that the Court order the immediate release of $4,859,745 from the Escrow Account to the Sellers.

54.     The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion that otherwise could apply under Bankruptcy Rule 6004(h), which

24

17

provides that, "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise," such that the undisputed amounts held in escrow may be released upon the entry of the order.

E.    **GENBAND Has Failed To Abide By the Terms of the Sale Agreement Regarding the Verizon Receivables**

55.    As set forth above, the Verizon Receivables do not constitute Construction-in-Process receivables and are therefore an Excluded Asset that remained with the Sellers under the Sale Agreement. Furthermore, under Section 2.1.2(a) of the Sale Agreement, claims relating to any Excluded Liability (as defined in the Sale Agreement), which includes liabilities relating to any Excluded Asset, also constitute an Excluded Asset. Sale Agreement at 37. Finally, under Section 5.12 of the Sale Agreement, GENBAND has agreed to promptly deliver to the Sellers any payment or instrument received by GENBAND that is for the account of the Sellers under the terms of the Sale Agreement. Sale Agreement at 86-7.

56.    Therefore, the Debtors respectfully request that the Court issue an order directing GENBAND to: (i) provide the Sellers with a fully executed copy of the Settlement Agreement and the name and contact information of representatives of Verizon with whom GENBAND has been in discussions with respect to the Settlement Agreement; (ii) deliver to the Sellers an accounting of all purchase orders received and expected to be received by GENBAND from Verizon with respect to the Verizon Receivables, copies of such purchase orders, and the related invoices issued by GENBAND; (iii) deliver to the Sellers any amounts received by GENBAND in payment for the Verizon Receivables as of the date hereof, and any purchase orders and amounts that GENBAND may receive from Verizon after the date hereof with respect to the

28

Verizon Receivables; and (iv) fully cooperate with the Sellers and Verizon in the resolution of this matter.

**F.      GENBAND Has Failed To Abide By The Terms Of The Sale Agreement Regarding The Canadian Transfer Taxes**

57.      As set forth above, GENBAND has failed to comply with the Sale Agreement by refusing to pay Nortel certain Canadian transfer taxes. Nortel invoiced GENBAND in the amount of $1,000,390 on September 28, 2010 for the taxes owed; GENBAND subsequently indicated that it was not in agreement with the figure and informed Nortel that it would revert with specific objections. GENBAND has yet to respond to Nortel's repeated requests for additional information concerning GENBAND's objections and has failed to remit payment.

58.      Therefore, the Debtors respectfully request that the Court issue an Order directing GENBAND to: (i) immediately remit payment in accordance with the September 28, 2010 invoices for the Canadian transfer taxes owed to Nortel; or (ii) deliver to the Sellers a written statement of its objections to the same; and (iii) fully cooperate with the Sellers in the resolution of this matter.

## NOTICE

59.      Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to GENBAND; (v) Wells Fargo Bank, National Association, as escrow agent and (vi) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## NO PRIOR REQUEST

60.      No prior request for the relief sought herein has been made to this or any other court.

26

29.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and

the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.

Dated: November 17, 2010        CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware

                                James L. Bromley (admitted *pro hac vice*)
                                Lisa M. Schweitzer (admitted *pro hac vice*)
                                David H. Herrington (admitted *pro hac vice*)
                                One Liberty Plaza
                                New York, New York 10006
                                Telephone: (212) 225-2000
                                Facsimile: (212) 225-3999

                                     - and -

                                MORRIS, NICHOLS, ARSHT & TUNNELL LLP


                                Derek C. Abbott (No. 3376)
                                Eric D. Schwartz (No. 3134)
                                Ann C. Cordo (No. 4817)
                                Andrew R. Remming (No. 5120)
                                1201 North Market Street
                                P.O. Box 1347
                                Wilmington, Delaware 19801
                                Telephone: (302) 658-9200
                                Facsimile: (302) 658-3989

                                *Counsel for the Debtors
                                and Debtors in Possession*

27

30

31.

**EXHIBIT A**

**Proposed Form of Order**

32.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------X
           :
           :

*In re*                  :

Nortel Networks Inc., *et al.*,[1]    :
           :
        Debtors.   :
           :
           :
------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**RE: D.I. _____**

**ORDER ENFORCING THE ORDER AUTHORIZING THE
SALE OF CERTAIN ASSETS OF THE DEBTORS'
CARRIER VOICE OVER IP AND APPLICATION SOLUTIONS
BUSINESS, AND DIRECTING THE RELEASE OF CERTAIN ESCROWED FUNDS**

Upon the motion dated November 17, 2010 (the "Motion"),[2] of Nortel Networks Inc. and

its affiliated debtors, as debtors and debtors in possession in the above-captioned cases (the

"Debtors"), for entry of an order, as more fully described in the Motion, enforcing the *Order*

*Authorizing And Approving (A) The Sale Of Certain Assets Of The Debtors' Carrier Voice Over*

*IP And Communications Solutions Business Free And Clear Of All Liens, Claims And*

*Encumbrances, And (B) The Assumption And Assignment Of Certain Executory Contracts* (the

"Sale Order") [D.I. 2193] against GENBAND Inc. (n/k/a GENBAND US LLC) ("GENBAND"),

and directing the release of $4,859,745 plus accumulated interest currently held in escrow by

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

33

escrow agent, Wells Fargo Bank, National Association ("Wells Fargo"), pursuant to the

Amended and Restated Escrow Agreement dated as of January 6, 2010, by and among Wells

Fargo, NNI, Nortel Networks Limited, Nortel Networks UK Limited (in administration) and

GENBAND (the "Escrow Agreement"); and adequate notice of the Motion having been given as

set forth in the Motion; and it appearing that no other or further notice is necessary; and the

Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28

U.S.C. §§ 157 and 1334; and the Court having determined that consideration of the Motion is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that the

legal and factual bases set forth in the Motion establish just cause for the relief requested in the

Motion, and that such relief is in the best interests of the Debtors, their estates, their creditors and

the parties in interest; and upon the record in these proceedings; and after due deliberation;

IT IS HEREBY DETERMINED AND ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Purchaser's interpretation of the term "Deferred Profit Amount" included in

the Closing Statement delivered by the Purchaser dated September 15, 2010, does not constitute

a valid interpretation of the term under the terms of the Sale Agreement and the Purchaser's

dispute with the application of the Deferred Profit Amount term under the terms of the Sale

Agreement is not a valid dispute that is susceptible to arbitration as a purchase price adjustment

dispute pursuant to Section 2.2.3(c) of the Sale Agreement.

3.      The calculation of "Deferred Profit Amount" shall include only deferred revenues

for services to be performed or products to be provided by the Business after the Closing Date.

Accordingly, the Deferred Profit Amount adjustment is $34,284,392, and the Final Purchase

Price is $179,508,745.

2

34.

4.    The Purchaser is directed to execute, within five (5) days of the entry of this Order, instructions to Wells Fargo, as escrow agent, that provide for the release of $4,859,745 plus accumulated interest from the Escrow Fund to the Distribution Agent (as agent for the Sellers and the EMEA Sellers) by wire transfer of immediately available funds.  Wells Fargo also is authorized upon presentment of this Order by the Sellers, with or without the receipt of separate joint instructions, to release such amounts in accordance with section 4(b) of the Escrow Agreement.

5.    The Purchaser is hereby ordered to: (i) provide the Sellers with a fully executed copy of the settlement agreement and the name and contact information of representatives of Verizon with whom GENBAND has been in discussions with respect to the Settlement Agreement; (ii) deliver to the Sellers an accounting of all purchase orders received and expected to be received by GENBAND from Verizon with respect to the Verizon Receivables, copies of such purchase orders, and the related invoices issued by GENBAND; (iii) deliver to the Sellers any amounts received by GENBAND in payment for the Verizon Receivables as of the date hereof, and any purchase orders and amounts that GENBAND may receive from Verizon after the date hereof with respect to the Verizon Receivables; and (iv) fully cooperate with the Sellers and Verizon in the resolution of this matter.

6.    The Purchaser is hereby ordered to: (i) immediately remit payment in accordance with the September 28, 2010 invoices for the Canadian transfer taxes owed to Nortel; or (ii) deliver to the Sellers a written statement of its objections to the same; and (iii) fully cooperate with the Sellers in the resolution of this matter.

7.    Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary: (i) the terms of this Order shall be immediately effective and enforceable upon its

3

35

entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement or

realization of the relief granted in this Order; and (iii) the Debtors may, in their discretion and

without further delay, take any action and perform any act authorized under this Order.

        8.      The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated: _____, 2010
       Wilmington, Delaware

                             _____
                             THE HONORABLE KEVIN GROSS
                             UNITED STATES BANKRUPTCY JUDGE

36

37

## EXHIBIT B

**Closing Statement**

38

 **GENBAND**

Shauna Martin
office: 972.265.3890
facsimile: 972.461.7516
shauna.martin@genband.com

September 15, 2010

| | | |
|---|---|---|
| **Nortel Networks Corporation and Nortel Networks Limited** 5945 Airport Road, Suite 360 Mississauga, Ontario, Canada L4V 1R9 Facsimile: +1-905-863-2057 Attn: Anna Ventresca, *General Counsel-Corporate and Corporate Secretary* Attn: Khush Dadyburjor, *Vice President, Mergers and Acquisitions* | **Nortel Networks Inc.** Legal Department 220 Athens Way, Suite 300 Nashville, Tennessee, USA 37228 Facsimile: +1-615-432-4413 Attn: Lynn C. Egan *Secretary* | **Alan Bloom / Stephen Harris** **Ernst & Young LLP** 1 More London Place London SE1 2AF United Kingdom Facsimile: +44 (0)20 7951 1345 |
| **Sharon Rolston / Simon Freemantle** Maidenhead Office Park Westacott Way Maidenhead Berkshire SL6 3QH United Kingdom Facsimile: +44 (0)20 1628 432 416 | **Avi D. Pelossof** **Zellermayer, Pelossof & Co.** The Rubenstein House 20 Lincoln Street Tel Aviv 67131 Israel Facsimile: +972 3 6255500 | |

Ladies and Gentlemen,

Reference is made to the Asset Sale Agreement by and among Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc., the other entities identified therein as Sellers, GENBAND Inc. and the other Designated Purchasers that became parties thereto, dated December 22, 2009, as amended from time to time (the "ASA"). Terms used but not defined in this letter have the meanings ascribed to them in the ASA.

1

Pursuant to Section 2.2.3.1 of the ASA, we hereby deliver the attached Closing Statement. Please contact us if you have any questions.

Sincerely,

Shauna Martin, General Counsel
**GENBAND**
3605 E. Plano Pkwy., Suite 100
Plano, Texas 75074
Facsimile: +1-972-265-3581

2

Copies to:

| | | |
|---|---|---|
| Latham & Watkins LLP<br>885 Third Avenue<br>New York, New York<br>10022<br>United States<br>Attention: David S.<br>Allinson, Esq.<br>Facsimile: +1-212-751-4864 | Baker Botts LLP<br>2001 Ross Avenue, Suite<br>600<br>Dallas, Texas 75201<br>Attention: Don J.<br>McDermett, Jr., Esq.<br>Facsimile:+1-214-661-4454<br>+1-214-661-4900 | Stikeman Elliott LLP<br>445 Park Avenue 7th Floor<br>New York, New York<br>10022<br>Attention: Ron Ferguson,<br>Esq.<br>Facsimile: +1-212-371-7087 |
| Nortel Networks Limited<br>and Nortel Networks Inc.<br>5270 Sycamore Avenue<br>Bronx, New York 10471<br>Attention: Robert Fishman<br>Senior<br>Counsel | Cleary Gottlieb Steen &<br>Hamilton LLP<br>One Liberty Plaza<br>New York, New York<br>10006<br>United States<br>Attention: Laurent Alpert<br>Facsimile: +1-212-225-3999 | Ogilvy Renault LLP<br>200 Bay Street<br>Suite 3800, P.O. Box 84<br>Royal Bank Plaza, South<br>Tower<br>Toronto, Ontario M5J 2Z4<br>Canada<br>Attention: Michael Lang<br>Facsimile: +1-416-216-3930 |
| Alex Kay / Gareth Roberts<br>Herbert Smith LLP<br>Exchange House<br>Primrose Street<br>London<br>EC2A 2HS<br>Facsimile: +44 (0) 20 7098<br>4447 | Sandy Shandro<br>3-4 South Square<br>Gray's Inn<br>London<br>WC1R 5HP<br>Facsimile: +44 (0)20 7696<br>9911 | Avner Ben-Gera<br>Hughes Hubbard & Reed<br>One Battery Park Plaza<br>New York<br>NY 10004<br>Facsimile: (212) 422-4726 |

### Closing Statement

All amounts are in United States dollars.

#### Closing Adjusted Net Working Capital:

| | |
|---|---:|
| Closing Inventory Value, plus | $ 13,747,000 |
| Closing Unbilled Accounts Receivable Amount, plus | 21,391,000 |
| Closing Prepaid Expenses Amount, minus | 939,000 |
| Closing Contractual Liabilities Amount, minus | 887,000 |
| Closing Royalty Liability Amount, minus | 148,000 |
| Closing Warranty Provision Amount, minus | 26,295,000 |
| Closing Product Exposures Amount | 416,000 |
| **Closing Adjusted Net Working Capital** | $ 8,331,000 |

#### Final Purchase Price:

| | |
|---|---:|
| Base Purchase Price, plus | $282,000,000 |
| The difference, which may be positive or negative, equal to the Closing Adjusted Net Working Capital minus Target Working Capital, minus | (64,669,000) |
| Closing Aggregate EMEA Downwards Adjustment (if any), minus | - |
| Closing Aggregate Downward Adjustment (if any), minus | - |
| Closing Deferred Profit Amount, minus | 70,570,000 |
| Closing Accrued Vacation Amount, minus | 1,730,000 |
| Closing Specified Employee Liabilities Amount, minus | 1,487,000 |
| Closing TFR Amount, minus | 402,000 |
| Closing Excess ARD Employees Amount, minus | - |
| Closing EMEA Holiday Downward Adjustment, minus | 238,000 |
| Closing French Excess ARD Employees Amount, minus | - |
| Closing Pre-Close Employment Payments Amount | - |
| **Final Purchase Price** | $142,904,000 |

4

42

43

**EXHIBIT C**

**Disagreement Notice**



# N☮RTEL

November 16, 2010

<u>VIA FACSIMILE</u>

GENBAND US LLC
GENBAND Inc.
3605 E. Plano Pkwy., Suite 100
Plano, Texas  75074
Attn:  General Counsel

Ladies and Gentlemen:

Reference is made to the Asset Sale Agreement by and among Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Inc. ("NNI"), the other entities identified therein as Sellers (together with NNC, NNL and NNI, "Nortel"), GENBAND Inc. ("GB") and the other Designated Purchasers that became parties thereto (together with GB, "GENBAND"), dated December 22, 2009, as amended from time to time (the "ASA").  Terms used but not defined in this letter have the meanings ascribed to them in the ASA, save that the terms "EMEA Non-Debtor Seller Directors", "Israeli Assets", "Israeli Company" and "Israeli Liabilities" have the meanings ascribed to them in the EMEA Asset Sale Agreement.

We are in receipt of the Closing Statement prepared by GENBAND dated September 15, 2010 (the "GB Closing Statement").  Pursuant to Section 2.2.3.1(b) of the ASA, please find attached hereto as <u>Annex A</u> a corrected Disagreement Notice from Nortel and the EMEA Sellers in respect of the GB Closing Statement.  We note that the disagreement with the Closing Deferred Profit Amount in the GB Closing Statement arises primarily from differences between GENBAND and Nortel in the interpretation of the definition of "Deferred Profit Amount" in the ASA, rather than differences over calculations.  Accordingly, any disagreement over the interpretation of the "Deferred Profit Amount" definition is a matter of contractual interpretation and we do not intend to waive and expressly reserve our right to pursue all available remedies to resolve any disputes over the Deferred Profit Amount, whether by recourse to judicial relief or otherwise.

45

In addition, NNI hereby reiterates its position as set forth in its letter to GENBAND dated August 13, 2010 (attached hereto as <u>Annex B</u> for your reference) with respect to the Verizon Receivables, as defined in such letter.

Notwithstanding that this letter shall have been signed by the Joint Administrators and the Joint Israeli Administrators both in their capacities as administrators of the EMEA Debtors for and on behalf of the EMEA Debtors and of the Israeli Company for and on behalf of the Israeli Company, respectively, and in their personal capacities, it is hereby expressly declared that no personal Liability, or any Liability whatsoever, under or in connection with this letter shall fall on the Joint Administrators, the Joint Israeli Administrators or their respective firm, partners, employees, agents, advisers or representatives whether such Liability would arise under paragraph 99(4) of schedule B1 to the Insolvency Act, or otherwise howsoever.

The Joint Administrators and the Joint Israeli Administrators are signatories to this letter in their personal capacities only for the purpose of receiving the benefit of the previous paragraph. Otherwise, for all purposes of this letter, the Joint Administrators and Joint Israeli Administrators act without personal liability as agents of the EMEA Debtors and the Israeli Company, respectively.

It is hereby expressly declared that no personal Liability, or any Liability whatsoever, under or in connection with this letter shall fall on any of the EMEA Non-Debtor Seller Directors howsoever such Liability should arise.

2

46

Very truly yours,

NORTEL NETWORKS INC.

By _____
   Name:    Lynn C. Egan
   Title:    Secretary

NORTEL NETWORKS CORPORATION

By _____
   Name:
   Title:

By _____
   Name:
   Title:

NORTEL NETWORKS LIMITED

By _____
   Name:
   Title:

By _____
   Name:
   Title:

47

Very truly yours,

NORTEL NETWORKS INC.

By     _____
         Name:   Lynn C. Egan
         Title:     Secretary

NORTEL NETWORKS CORPORATION

By: _____
     Name:  John M. Doolittle
     Title:   Senior Vice-President, Corporate Services
            and Chief Financial Officer

By: _____
     Name:  Clarke E. Glaspell
     Title:   Controller

NORTEL NETWORKS LIMITED

By: _____
     Name:  John M. Doolittle
     Title:   Senior Vice-President, Corporate Services
            and Chief Financial Officer

By: _____
     Name:  Clarke E. Glaspell
     Title:   Controller

48

SIGNED for and on behalf of Nortel Networks )
UK Limited (in administration) by )
Alan Bloom                                   )     ............................................
as Joint Administrator (acting as agent and  · )   Alan Bloom
without personal liability) in the presence of:

Witness signature

............................................. )
Name:  RICHARD LAWTON            )
Address: HERBERT SMITH LLP       )
         EXCHANGE HOUSE
         PRIMROSE ST
         LONDON  EC2A 2HS

SIGNED for and on behalf of Nortel GmbH      )
(in administration) by                       )
Alan Bloom                                   )     ............................................
as Joint Administrator (acting as agent and  )     Alan Bloom
without personal liability) in the presence of:

Witness signature

............................................. )
Name:  RICHARD LAWTON            )
Address: HERBERT SMITH LLP       )
         EXCHANGE HOUSE
         PRIMROSE ST
         LONDON  EC2A 2HS

SIGNED for and on behalf of Nortel Networks  )
SpA (in administration) by                   )     ............................................
Alan Bloom                                   )     Alan Bloom
as Joint Administrator (acting as agent and  )
without personal liability) in the presence of:

Witness signature

............................................. )
Name:  RICHARD LAWTON            ).
Address: HERBERT SMITH LLP       )
         EXCHANGE HOUSE
         PRIMROSE ST
         LONDON  EC2A 2HS

49

**SIGNED** for and on behalf of Nortel Networks )
Hispania S.A. (in administration) by )
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Alan Bloom

Witness signature

.................................................... )
Name: RICHARD LAWTON )
Address: HERBERT SMITH LLP )
          EXCHANGE HOUSE
          PRIMROSE ST
          LONDON EC2A 2HS

**SIGNED** for and on behalf of Nortel Networks )
B.V. (in administration) by )
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Alan Bloom

Witness signature

.................................................... )
Name: RICHARD LAWTON )
Address: HERBERT SMITH LLP )
          EXCHANGE HOUSE
          PRIMROSE ST
          LONDON EC2A 2HS

**SIGNED** for and on behalf of Nortel Networks )
N.V. (in administration) by )
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Alan Bloom

Witness signature

.................................................... )
Name: RICHARD LAWTON )
Address: HERBERT SMITH LLP )
          EXCHANGE HOUSE
          PRIMROSE ST
          LONDON EC2A 2HS

50

**SIGNED** for and on behalf of Nortel Networks )
**(Austria) GmbH (in administration) by** )
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Alan Bloom

Witness signature

.....................................................................
Name: RICHARD LAWTON )
Address: HERBERT SMITH LLP )
EXCHANGE HOUSE
PRIMROSE ST
LONDON EC2A 2HS

**SIGNED** for and on behalf of Nortel Networks )
**Polska Sp. z.o.o. (in administration) by** )
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Alan Bloom

Witness signature

.....................................................................
Name: RICHARD LAWTON )
Address: HERBERT SMITH LLP )
EXCHANGE HOUSE
PRIMROSE ST
LONDON EC2A 2HS

**SIGNED** for and on behalf of Nortel Networks )
**Portugal S.A. (in administration) by** )
Alan Bloom )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Alan Bloom

Witness signature

.....................................................................
Name: RICHARD LAWTON )
Address: HERBERT SMITH LLP )
EXCHANGE HOUSE
PRIMROSE ST
LONDON EC2A 2HS

51.

SIGNED for and on behalf of Nortel Networks        )
AB (in administration) by                          )        .....................
Alan Bloom                                         )        Alan Bloom
as Joint Administrator (acting as agent and        )
without personal liability) in the presence of:    )

Witness signature

.....................
Name:    RICHARD    LAWTON              )
Address: HERBERT    SMITH LLP          )
         EXCHANGE HOUSE                 )
         PRIMROSE ST LONDON EC2

SIGNED for and on behalf of Nortel Networks        )
Slovensko s.r.o. (in administration) by            )        .....................
Alan Bloom                                         )        Alan Bloom
as Joint Administrator (acting as agent and        )
without personal liability) in the presence of:    )

Witness signature

.....................
Name:    RICHARD    LAWTON              )
Address: HERBERT    SMITH LLP          )
         EXCHANGE HOUSE                 )
         PRIMROSE ST
         LONDON  EC2A 2HS

SIGNED for and on behalf of Nortel Networks        )
s.r.o. (in administration) by                      )        .....................
Alan Bloom                                         )        Alan Bloom
as Joint Administrator (acting as agent and        )
without personal liability) in the presence of:    )

Witness signature

.....................
Name:    RICHARD    LAWTON             )
Address: HERBERT    SMITH LLP         )
         EXCHANGE HOUSE
         PRIMROSE ST
         LONDON  EC2A 2HS

52

**SIGNED** for and on behalf of Nortel Networks )
**Romania S.R.L.** (in administration) by )    .................................................................
Alan Bloom )    Alan Bloom
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Witness signature

.................................................... )
Name:    RICHARD LAWTON )
Address: HERBERT SMITH LLP )
         EXCHANGE HOUSE
         PRIMROSE ST
         LONDON EC2A 2HS