## EXHIBIT A

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION
APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**THIRD SUPPLEMENTAL MOTION RECORD**
**(returnable December 15, 2010)**

December 15, 2010

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario  M5J 2Z4

**Derrick Tay LSUC# 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

# INDEX

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**INDEX**

| TAB | DOCUMENT | PAGE |
|---|---|---|
| 1. | Affidavit of Katie Legree, sworn December 15, 2010 | 1 |
| A. | Declaration of David Glass in support of Debtors' Motion to Enforce the CVAS Sale Order and for Related Relief | 3 |
| B. | Affidavit of Misty Kawecki in Support of Genband's Motion for Entry of an Order pursuant to Section 362(d) of the Bankruptcy Code Granting Relief from the Automatic Stay to Compel Arbitration | 8 |
| C. | Affidavit of Shauna Martin in Support of Genband's Motion for Entry of an Order pursuant to Section 362(d) of the Bankruptcy Code Granting Relief from the Automatic Stay to Compel Arbitration. | 15 |

**TAB** 1

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AFFIDAVIT OF KATIE LEGREE**
**(sworn December 15, 2010)**

I, Katie Legree, of the City of Toronto in the Province of Ontario, MAKE OATH AND
SAY:

1.       I am a law clerk at Ogilvy Renault LLP, counsel to Nortel Networks Corporation, Nortel
Networks Limited, Nortel Networks Global Corporation, Nortel Networks International
Corporation and Nortel Networks Technology Corporation (collectively the "**Applicants**"). As
such, I have personal knowledge of the matters to which I hereinafter depose in this Affidavit.
Where I do not possess personal knowledge, I have stated the source of my information and, in
all such cases, believe it to be true.

2.       Attached hereto as Exhibit "A" is a declaration of David Glass filed by Nortel Networks
Inc. and certain of its affiliates (the "**U.S. Debtors**") on December 14, 2010, in the proceedings
pending before the United States Bankruptcy Court for the District of Delaware (the "**U.S.
Court**") under Chapter 11 of the United States Bankruptcy Code in support of the U.S. Debtors'
motion filed on November 17, 2010 to enforce that the CVAS Sale Order granted by the U.S.
Court on March 3, 2010.

3.      Attached hereto as Exhibit "B" is an affidavit of Misty Kawecki  filed by GENBAND Inc. ("**GENBAND**") in the U.S. Court under Chapter 11 of the United States Bankruptcy Code in support of Genband's motion filed on November 18, 2010 to lift the automatic stay and compel arbitration (the "**GENBAND Motion**").

4.      Attached hereto as Exhibit "C" is an affidavit of Shauna Martin filed by GENBAND in support of the GENBAND Motion.

**SWORN BEFORE ME** at the City of Toronto  , in the Province of Ontario on this 15th day of December, 2010.

_____
Commissioner for Taking Affidavits or
Notary Public

_____
KATIE LEGREE

# TAB A

This is *exhibit... of 29 A .......... referred to in the*
affidavit of ...... Kithe Legvee
sworn before me, ... 15th
day of ..... December ..... 2010

A COMMISSIONER FOR TAKING AFFIDAVITS

3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------X
                     :

*In re*                     :     Chapter 11

Nortel Networks Inc., *et al.*,[1]   :     Case No. 09-10138 (KG)

         Debtors.   :     Jointly Administered
                     :
                     :     **Re: D.I. 4345, D.I. 4452**
-------------------------------------------------------X

**DECLARATION OF DAVID GLASS IN SUPPORT OF DEBTORS'
MOTION TO ENFORCE THE CVAS SALE ORDER AND FOR RELATED RELIEF**

    I, David Glass, declare under penalty of perjury as follows:

    1.    I am M&A Control Manager at Nortel Networks Inc. ("NNI"). In that role, I am responsible for supporting, from an accounting perspective, all Mergers & Acquisition deals in which NNI or its affiliates participate, including providing accounting support for calculating any applicable price adjustments which may be contemplated by the relevant transaction agreements. I have worked at NNI for 25 years as an accountant and have extensive accounting experience. I am a Certified Public Accountant. NNI and its affiliates will be referred to below as "Nortel."

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

4

2.    I submit this declaration in support of the *Debtors' Motion for Entry of an Order Enforcing the Order Authorizing the Sale of Certain Assets of the Debtors' Carrier Voice Over IP and Application Solutions Business, and Directing the Release of Certain Escrowed Funds,* dated November 17, 2010 [D.I. 2632] (the "CVAS Motion"),[2] and in opposition to the motion of GENBAND Inc. (n/k/a GENBAND US LLC) ("GENBAND") for Entry of an Order Granting Relief from the Automatic Stay to Compel Arbitration [D.I. 4345] (the "Stay Motion").

3.    In my role as M&A Control Manager, I have worked closely with employees of GENBAND in connection with Nortel's sale of the CVAS Business to GENBAND, including resolution of reconciling amounts for the Deferred Profit Amount and the Purchase Price Adjustment.

4.    In my understanding, the dispute between the parties concerning Deferred Profit Amount arises from GENBAND's attempt to ignore the requirement under the Sale Agreement's definition of Deferred Profit Amount that only "deferred revenues for services to be performed or products to be provided by the Business *after* the Closing Date" are to be included.

5.    I understand that GENBAND has suggested that resolution of this dispute requires an analysis or assessment of GAAP and Nortel Accounting Principles. That is incorrect. All of the items that both parties propose to include as Deferred Profit Amount satisfy both GAAP and Nortel Accounting Principles. Thus, there is no dispute about whether these are items "that would be required to be reflected on a balance sheet of the Business as of such date prepared in accordance with GAAP applied in a manner consistent with the Nortel Accounting Principles (to the extent consistent with GAAP)," as provided in the definition of Deferred Profit Amount. Accordingly, there is no dispute at all about Nortel's Accounting Principles or GAAP.

---

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the CVAS Motion.

Rather, the only dispute is that GENBAND seeks to include deferred revenues for services that were performed or products that were delivered *before* or on the Closing Date, contrary to the definition of Deferred Profit Amount, which encompasses only "deferred revenues for services to be performed or products to be delivered *after* the Closing Date."

6.    Pursuant to Section 2.2.2 of the Sale Agreement, Nortel provided to GENBAND on May 25, 2010 an Estimated Purchase Price Statement which identified an estimated Deferred Profit Amount of $37,867,000.00. A true and correct copy of the Estimated Purchase Price Statement is attached hereto as Exhibit A. This estimated figure was prepared based on the contractual definition of Deferred Profit Amount as including only "deferred revenues for services to be performed or products to be delivered *after* the Closing Date." To my knowledge, GENBAND did not raise any objection prior to Closing to the manner in which Nortel calculated the Estimated Purchase Price. The Estimated Purchase Price dictated the price GENBAND paid at the closing on May 28, 2010.

7.    To my knowledge, the dispute between the parties about the application of the definition of Deferred Profit Amount does not involve any disagreement between the parties about accounting analysis or mathematical calculations. In fact, I understand that accountants from Nortel and GENBAND discussed and agreed upon the methodology for calculating the deferred revenue that GENBAND would assume upon the acquisition of the CVAS business. Nortel used this same methodology to calculate the Deferred Profit Amount – that is, the "deferred revenues for services to be performed or products to be delivered after the Closing Date." Accordingly, if the terms of the definition of Deferred Profit Amount are applied properly, I believe there is no legitimate disagreement that the resulting figure is the one that Nortel has used in calculating Deferred Profit Amount.

3

8.      Nortel's position is also consistent with the manner in which a term with the same

definition was applied by the Sellers and the purchaser in a prior sale transaction. The sale

agreement executed in connection with Nortel's divestiture of its Metro Ethernet Networks

Business ("MEN") to Ciena Corporation ("Ciena"), which occurred in 2010, used substantially

identical language to define the deferred revenue amount that would impact the purchase price

adjustment, and the parties applied this definition just as the Sellers do here with no objection

from the purchaser, Ciena. In the MEN sale agreement, the term was referred to as "Closing Net

Deferred Revenues," and the definition of the term was substantively identical to the definition

of "Deferred Profit Amount" in the CVAS Sale Agreement. Specifically, Closing Net Deferred

Revenues was determined based on:

> deferred revenues for services to be performed or products to be
> provided by the Business after the Closing Date but for which an
> account receivable has been recorded prior to the Closing Date
> minus (y) associated deferred costs to the extent incurred by the
> Business prior to the Closing Date in connection with such
> products or services, in each case, that would be required to be
> reflected on a balance sheet of the Business as of such date
> prepared in accordance with GAAP applied in a manner consistent
> with the Nortel Accounting Principles (to the extent consistent
> with GAAP).

Ciena Sale Agreement, p. 8 (definition of Closing Net Deferred Revenues). Pursuant to the

MEN sale agreement, Ciena as purchaser calculated Closing Net Deferred Revenues, and the

accompanying impact on the purchase price adjustment, in exactly the same way as the Sellers

calculated the Deferred Profit Amount in the Disagreement Notice here.

9.      I have reviewed the affidavit of Misty Kawecki, submitted by GENBAND in

connection with this dispute. Ms. Kawecki's affidavit contains numerous statements concerning

accounting principles relating to revenue recognition. But the definition of Deferred Profit

4

Amount makes no reference to revenue recognition, and those principles have no impact on the present dispute.

10.     In paragraph 11, Ms. Kawecki states that "Nortel's interpretation of Deferred Profit Amount seeks to provide Nortel revenue for services to be performed or products to be provided before the Closing Date but for which revenue should not properly be recognized pursuant to Nortel Accounting Principles and GAAP." This statement is incorrect. Nortel will not recognize revenue for the past deliverables that do not transfer to GENBAND. In any event, as stated above, there is nothing in the definition of Deferred Profit Amount concerning revenue recognition.

11.     In Paragraph 13, Ms. Kawecki suggests that there remain outstanding accounting disputes between Nortel and GENBAND. I am not aware of any outstanding discrepancies. Accountants at Nortel and GENBAND have reconciled all accounting matters in connection with the CVAS Purchase Price Adjustment. The email exchange attached as Exhibit B reflects the final item that was raised by GENBAND, as well as the resolution of that item by the parties. I am not aware of any other items as to which GENBAND has suggested that there are any errors in Nortel's calculations.

David Glass, CPA

5

# TAB B

This is Exhibit.........*B*..........referred to in the
affidavit of....*S.M.E. Kegree*..................
sworn before me, this.....*15th*..................
day of.....*December*..........20.*10*.

..............................................................
A COMMISSIONER FOR TAKING AFFIDAVITS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS INC., *et al.* | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Re: Docket No. 4347** |
| | ) | |
| | ) | |

**AFFIDAVIT OF MISTY KAWECKI IN SUPPORT OF GENBAND'S MOTION FOR
ENTRY OF AN ORDER PURSUANT TO SECTION 362(D) OF THE BANKRUPTCY
CODE GRANTING RELIEF FROM THE AUTOMATIC STAY TO COMPEL
ARBITRATION**

|  |  |  |
|---|---|---|
| STATE OF TEXAS | ) | |
| | ) | ss: |
| COUNTY OF COLLIN | ) | |

Misty Kawecki, CPA, being duly sworn, hereby deposes and says:

1.     I am Corporate Controller and Vice President of Finance for GENBAND
Holdings Company ("GENBAND Holding"). In that role, it is my responsibility to oversee all
accounting applications and controls for subsidiaries of GENBAND Holding, including
GENBAND US LLC ("GENBAND"). I have 15 years of accounting experience, having worked
previously for McAfee, Inc (as Senior Director, Worldwide Revenue), Electronic Data Systems
(as US GAAP Consultant), and Ernst & Young LLP (Assurance and Advisory Services).

2.     I submit this affidavit (the "Affidavit") in support of GENBAND's *Motion
for Entry of an Order Pursuant to Section 362(d) of the Bankruptcy Code Granting Relief from
the Automatic Stay to Compel Arbitration* ("GENBAND's Motion") [D.I. 4347] and to aid the
Court in interpreting the terms of the Asset Sale Agreement, dated as of December 22, 2009, by

and among Nortel Networks Inc. (collectively, with Nortel Networks Corporation and Nortel

Networks Limited, "Nortel,"), GENBAND, and the entities identified as sellers therein (the

"ASA"), approved by this Court's *Order Authorizing and Approving (A) the Sale of Certain*

*Assets of the Debtors' Carrier Voice Over IP and Communications Solutions Business Free and*

*Clear of All Liens, Claims and Encumbrances, and (B) the Assumption and Assignment of*

*Certain Executory Contracts.* All terms not otherwise defined herein shall have the meaning

ascribed to them under the ASA, which was attached as Exhibit B to GENBAND's Motion.

      3.      Deferred Profit Amount is defined on page 11 of the ASA as:

> as of the Closing date, both short term and long term (i)
> deferred revenues for services to be performed or products to
> be provided by the Business after the Closing Date but for
> which an account receivable has been recorded or cash has
> been received prior to the Closing Date *minus* (ii) associated
> deferred costs to the extent incurred by the Business prior to
> the Closing Date in connection with such products or services,
> in each case, that would be required to be reflected on a
> balance sheet of the Business as of such date prepared in
> accordance with GAAP applied in a manner consistent with the
> Nortel Accounting Principles (to the extent consistent with
> GAAP). For the avoidance of doubt, the Deferred Profit
> Amount will include advance billings and deferred revenue
> consistent with Nortel Accounting Principles.

      4.      Calculating the Deferred Profit Amount thus requires calculation of

deferred revenue "consistent with Nortel Accounting Principles." Additionally, calculating

deferred revenue requires reference to the Nortel Accounting Principles and generally accepted

accounting principles ("GAAP") and determination of what "would be required to be reflected

on a balance sheet of the Business" as of the Closing Date if "prepared in accordance with

GAAP applied in a manner consistent with the Nortel Accounting Principles," to the extent they

are consistent with GAAP. As such, this calculation requires reference to balance sheets

NY\1714224.8

provided by Nortel and creation of balance sheets in accordance with the Nortel Accounting Principles and GAAP.

5.      GAAP are the accounting rules used to prepare financial statements for publicly traded companies and many private companies in the United States. The term "generally accepted accounting principles" has a specific meaning for accountants and financial statements auditors trained in the study of accounting. In order for an accountant to competently interpret and apply GAAP to an entity's financial statements or elements of financial statements, the accountant must: 1) have extensive college training in the field of accounting and auditing; 2) gain years of on-the-job-training under the supervision of a certified public accountant ("CPA"); 3) obtain CPA certification; and 4) annually obtain continued professional education in the field of accounting and auditing.

6.      "Deferred revenue" is an accounting concept based on the proper time to recognize revenue with regards to a financial statement account. Recognition of revenue is based on numerous accounting standards, pronouncements, and interpretations as promulgated by both authoritative accounting bodies and the Securities Exchange Commission in the United States and requires extensive accounting study and competency in applying revenue recognition principles. The revenue recognition treatment for differing types of transactions are governed by distinct authoritative guidance, and within a particular type of transaction, the specific facts and circumstances may often govern the treatment of revenue recognition treatment within the authoritative guidance. At its most fundamental level, "the recognition of revenue and gains of an entity during a period involves consideration of the following two factors, with sometimes one and sometimes the other being the more important consideration: a) being realized or

3

realizable and b) being earned." Financial Accounting Standards Board, Accounting Standards Codification, Subtopic 605-10, Section 25, Paragraph 1.

7.      The revenue recognition treatment for transactions involving the sale of software are, in addition to the fundamental criteria, governed by further accounting pronouncements and interpretations. For transactions involving the sale of software, revenue generally is realized or realizable and earned when all of the following criteria are met: 1) persuasive evidence of an arrangement exists, 2) delivery has occurred or services have been rendered, 3) the seller's price to the buyer is fixed or determinable, and 4) collectability is reasonably assured, with further consideration given to vendor specific evidence for each element within an arrangement. Financial Accounting Standards Board, Accounting Standards Codification, Subtopic 985-605, Section 25, Paragraph 3 (formerly referenced in Securities and Exchange Commission Staff Accounting Bulletin No. 104). It should be noted that deferred revenue is the result of billings that have occurred when revenue recognition criteria have not been met.

8.      "Nortel Accounting Principles" is defined in the ASA as "the accounting principles employed in the preparation of the Unaudited Financial Statements." ASA at 11. The term "Unaudited Financial Statements" is defined as "the unaudited management statements of certain assets and liabilities of the Business as of September 30, 2009 and the related unaudited management statements of income of the Business for the nine (9) month period ended on September 30, 2009." *Id.* at 33, 65.

9.      The Nortel Accounting Principles consist of several hundred pages of accounting rules that contain extensive instructions and guidelines for calculating various items, including revenue recognition. Under the Nortel Accounting Principles, revenue may be

4

recognized in similar fashion to as under GAAP. *See, e.g., Basic Revenue Recognition Criteria,* Nortel Accounting Principles, at 1.1.1.18, Section 1.0(d) ("As presented in SAB 104, the SEC staff believes that revenue generally is not realized or realizable and earned until *all* of the following criteria are met: i) Persuasive evidence of an Arrangement exists; ii) Delivery has occurred or services have been rendered; iii) The seller's price to the buyer is fixed or determinable; and iv) Collectability is reasonably assured. This Appendix provides detailed guidance on each of these criteria.").

     10.     GAAP provides extensive guidance as to how to determine an arrangement and identify the elements or deliverables within that arrangement and allocation of revenue when there are multiple elements within an arrangement.

     11.     Nortel's interpretation of Deferred Profit Amount seeks to provide Nortel revenue for services to be performed and products to be provided before the Closing Date but for which revenue should not properly be recognized pursuant to the Nortel Accounting Principles and GAAP. Nortel's interpretation of Deferred Profit Amount, with focus only on the first part of the first sentence of that term's definition, is inconsistent with both the Nortel Accounting Principles and GAAP because it would require bifurcation of every account in the Business in order to determine revenue owed to Nortel for accounts that should not recognize revenue on or before the Closing Date. That approach defies the commonly-understood meaning of deferred revenue under both the Nortel Accounting Principles and GAAP.

     12.     GENBAND's interpretation of Deferred Profit Amount, on the other hand, is consistent with both the Nortel Accounting Principles and GAAP because it maintains that revenue should be recognized only when appropriate under those principles, and not before. Simply put, under the Nortel Accounting Principles and GAAP, revenue that is appropriately

13

recognized after the Closing Date is rightfully GENBAND's, not Nortel's, regardless of whether Nortel may have performed some services or provided some products on those accounts prior to the Closing Date.

13.     In addition to the above-described disagreement concerning the application of accounting rules, the parties disagree about the proper calculations of the amounts at issue. In an attempt to understand the calculations that Nortel has done with regards to Deferred Profit Amount, I supervised an audit for GENBAND that requested a sample of Nortel's work in an attempt to understand its approach and to check its calculations. As part of that process, my team identified calculation errors in Nortel's work, which create accounting disagreements even under Nortel's interpretation.

14.     The foregoing is true and correct to the best of my knowledge, information, and belief.

NY\1714224.8

14

Sworn to before me this
10th day of December 2010

_____
Notary Public

VIRGINIA ANN WRIGHT
Notary Public,
State of Texas
Comm Exp. 03-12-12

By _____
Misty Kawecki

# TAB C

DOCSTOR: 1963420\1

This is Exhibit ...........
affidavit of ...K.Lin.e...Algu.....
sworn before me ............15th.......
day of .......December........20..O.

..........................Calmurl..........
A COMMISSIONER FOR TAKING AFFIDAVITS

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | Case No. 09-10138 (KG) |
| NORTEL NETWORKS INC., *et al.* | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Re: Docket No. 4347** |
| | ) | |
| | ) | |

## AFFIDAVIT OF SHAUNA MARTIN IN SUPPORT OF GENBAND'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 362(D) OF THE BANKRUPTCY CODE GRANTING RELIEF FROM THE AUTOMATIC STAY TO COMPEL ARBITRATION

STATE OF DELAWARE )
                   )   ss:
COUNTY OF COLLIN   )

Shauna Martin, being duly sworn, hereby deposes and says:

1.     I am the Executive Vice President and General Counsel of GENBAND

US LLC (Formerly Genband Inc., "GENBAND"). As such, I am familiar with GENBAND's

day-to-day operations, businesses, and financial affairs.

2.     I submit this affidavit (the "Affidavit") in support of GENBAND's *Motion*

*for Entry of an Order Pursuant to Section 362(d) of the Bankruptcy Code Granting Relief from*

*the Automatic Stay to Compel Arbitration* ("GENBAND's Motion") [D.I. 4347] and to aid the

Court in interpreting the terms of the Asset Sale Agreement, dated as of December 22, 2009, by

and among Nortel Networks Inc. (collectively, with Nortel Networks Corporation and Nortel

Networks Limited, "Nortel,"), GENBAND, and the entities identified as sellers therein (the

"ASA"), approved by this Court's *Order Authorizing and Approving (A) the Sale of Certain*

16

*Assets of the Debtors' Carrier Voice Over IP and Communications Solutions Business Free and Clear of All Liens, Claims and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts.* All terms not otherwise defined herein shall have the meaning ascribed to them under the ASA, which was attached as Exhibit B to GENBAND's Motion.

3.      A true and correct copy of a December 7, 2009 email I received from Khush Dadyburjor of Nortel Networks is annexed to this Affidavit as Exhibit 1.

4.      A true and correct copy of the Nortel CVAS Working Capital Review – Q3-2009 Update, dated December 1, 2009, is annexed to this Affidavit as Exhibit 2. I have verified that this document was posted to the datasite hosted by Nortel on November 30, 2009, and is hosted at index number 14.2.13.7.1.

5.      The foregoing is true and correct to the best of my knowledge, information, and belief.

NY\1714204.3

Docket No. 4576
Filed 12/13/10

17

Sworn to before me this
10th day of December 2010

*Karen Eves*

Notary Public

KAREN EVES
Notary Public, State of Texas
My Commission Expires
July 09, 2013

By: _____
Shauna Martin

3

18

# EXHIBIT 1

**[Document to be Filed Under Seal]**

Docket No. 4576
Filed 12/13/10

19

# **EXHIBIT 2**

**[Document to be Filed Under Seal]**

Docket No. 4576
Filed 12/13/10

*20*

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**AFFIDAVIT OF KATIE LEGREE**
**(sworn December 15, 2010)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 2080404\1

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION,
NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

---

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

---

THIRD SUPPLEMENTAL
MOTION RECORD
(returnable December 15, 2010)

---

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC: #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants