```
            IN THE UNITED STATES BANKRUPTCY COURT
                FOR THE DISTRICT OF DELAWARE

IN RE:                          )  Case No. 09-10138 (KG)
                                )
NORTEL NETWORKS, INC., et al.   )
                                )  Chapter 11
                                )
                                )  Courtroom 3
                                )  824 Market Street
            Debtors.            )  Wilmington, Delaware
                                )
                                )  December 15, 2010
                                )  10:15 a.m.


                 TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE KEVIN GROSS
              UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtors:            Morris, Nichols, Arsht &
                            Tunnell
                            BY: DEREK C. ABBOTT, ESQ.
                            BY: ALISSA T. GAZZE, ESQ.
                            1201 North Market Street
                            18th Floor
                            Wilmington, DE 19899-1347
                            (302) 658-9200
                                 -AND-
                            Cleary, Gottlieb, Steen &
                            Hamilton
                            BY: JAMES L. BROMLEY, ESQ.
                            BY: LISA M. SCHWEITZER, ESQ.
                            BY: DAVID HERRINGTON, ESQ.
                            One Liberty Plaza
                            New York, NY 10006
                            (212) 225-2000
                                  -AND-
                            Lazard Freres & Company
                            BY: DAVID M. DESCOTEAUX
                            BY: COLIN H. KEENAN
                            30 Rockefeller Plaza
                            New York, NY 10020
                            (212) 632-6657

ECRO:                       Ginger Mace

Transcription Service:      DIAZ DATA SERVICES
                            331 Schuylkill Street
                            Harrisburg, Pennsylvania 17110
                            (717) 233-6664
                            www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

APPEARANCES:
(Continued)

For the Debtors:                    Punter Southall
                                    BY: RICHARD JONES
                                    126 Jermyn Street
                                    London, SW1Y 4UJ
                                    United Kingdom
                                    (207) 839-8600
                                         -AND-
                                    Jackson Lewis
                                    BY: RENE E. THORNE, ESQ.
                                    650 Poydras Street
                                    Suite 1900
                                    New Orleans, LA 70130
                                    (504) 208-5831
                                         -AND-
                                    Benesch
                                    BY: JENNIFER HOOVER, ESQ.
                                    222 Delaware Avenue, Suite 801
                                    Wilmington, DE 19801-1611
                                    (302) 442-7010


For the Committee:                  Richards, Layton & Finger, PA
                                    BY: CHRISTOPHER SAMIS, ESQ.
                                    One Rodney Square
                                    920 North King Street
                                    Wilmington, DE 1901
                                    (302) 651-7845
                                         -AND-
                                    Akin Gump
                                    BY: DAVID BOTTER, ESQ.
                                    BY: BRAD KAHN, ESQ.
                                    One Bryant Park
                                    New York, NY 10036
                                    (212) 872-1000
                                         -AND-
                                    Akin Gump
                                    BY: GRAEME BELL, ESQ.
                                    Eighth Floor
                                    Ten Bishops Square
                                    London, EI 6EG United Kingdom
                                    (44)20.7012.9733
                                         -AND-
                                    Jefferies & Co., Inc.
                                    BY: PATRICK MORROW, ESQ.
                                    520 Madison Avenue, 10th Floor
                                    New York, NY 10022
                                    (212) 284-2374

Appearances:
(Continued)

For the UK Plan
Administrators:                    Young, Conaway, Stargatt &
                                   Taylor, LLP
                                   BY: MORGAN L. SEWARD, ESQ.
                                   The Brandywine Building
                                   1000 West Street, 17th Floor
                                   Wilmington, DE 19801
                                   (302) 571-6559


For Bondholders Group:             Milbank, Tweed, Hadley &
                                   McCloy, LLP
                                   BY: THOMAS MATZ, ESQ.
                                   One Chase Manhattan Plaza
                                   New York, NY 10005-1413
                                   (212) 530-5885


For Ernst & Young:                 Buchanan Ingersoll & Rooney
                                   BY: MONA PARIKH, ESQ.
                                   1105 North Market Street
                                   Suite 1900
                                   Wilmington, DE 19801-1054
                                   (302) 552-4200
                                        -AND-
                                   Allen & Overy, LLP
                                   BY: LISA KRAIDIN, ESQ.
                                   1221 Avenue of the Americas
                                   New York, NY 10020
                                   (212) 610-6419
                                        -AND-
                                   Foley & Lardner, LLP
                                   BY: JOANNE LEE, ESQ.
                                   321 North Clark Street
                                   Suite 2800
                                   Chicago, IL 60654-5313
                                   (312) 832-4557


For GENBAND US LLC:                Latham & Watkins
                                   BY: ELI J. KAY-OLIPHANT, ESQ.
                                   BY: BLAIR CONNELLY, ESQ.
                                   885 Third Avenue
                                   New York, NY 10022-4834
                                   (212) 906-1200
                                        -AND-
                                   Duane Morris, LLP
                                   BY: MICHAEL R. LASTOWSKI, ESQ.
                                   Suite 1200
                                   1100 North Market Street
                                   Wilmington, DE 19801-1246
                                   (302) 657-4942

Appearances:
(Continued)

For Jefferies & Co.:                Cross & Simon, LLC
                                    BY: DAVID G. HOLMES, ESQ.
                                    913 North Market Street
                                    11th Floor
                                    Wilmington, DE 19801
                                    (302) 777-4200

For U.S. Trustee:                   United States Trustee Office
                                    BY: PATRICK TINKER, ESQ.
                                    J Caleb Boggs Federal Building
                                    844 King Street, Suite 2207
                                    Wilmington, DE 19801
                                    (302) 573-6491

For Crowell & Moring, LLP:          Crowell & Moring, LLP
                                    BY: MATTHEW CHENEY, ESQ.
                                    1001 Pennsylvania Ave., N.W.
                                    Washington, DC 20004-2595
                                    (202) 624-2903

For Mercer, Inc.:                   Freeborn & Peters, LLP
                                    BY: AARON HAMMER, ESQ.
                                    BY: DEVON EGGERT, ESQ.
                                    311 South Wacker Drive
                                    Suite 3000
                                    Chicago, IL 60606
                                    (312) 360-6558

For Chilmark Partners:              Chilmark Partners
                                    BY: MICHAEL J. KENNEDY
                                    875 North Michigan Ave.
                                    Suite 3460
                                    Chicago, IL 60611
                                    (312) 984-9711

For Huron Consulting
Services, LLC:                      Huron Consulting Services, LLC
                                    BY: JAMES LUKENDA
                                    550 West Van Buren Street
                                    Chicago, IL 60607
                                    (312) 583-8700

For RLKS Executive Solutions:       RLKS Executive Solutions
                                    BY: RICHARD LYDECKER
                                    101 Westcott Street
                                    Unit 706
                                    Houston, TX 77007-7031
                                    (713) 853-3504

```
Appearances:
(Continued)

For Jared Oyston:              Linklaters, LLP
                               BY: JARED OYSTON
                               BY: MACK BLICH
                               One Silk Street
                               London EC2Y 8HQ
                               (44 20) 7456-4290

For John Ray:                  Avidity Partners/Trustee
                               BY: JOHN RAY
                               One Lincoln Center
                               18W140 Butterfield Road
                               15th Floor
                               Oakbrook Terrace, IL 60181
                               (630) 613-7300

For Fraser, Milner &
Casgrain:                      Fraser, Milner & Casgrain
                               BY: MICHAEL WUNDER, ESQ.
                               77 King Street West, Suite 400
                               Toronto-Dominion Centre
                               Toronto, ON, M5K OA1
                               (416) 863-4715

Telephonic Appearances:

For Nortel Networks, et al.:   Ernst & Young, Inc.
                               BY:  DERRICK TOY, ESQ.
                               BY:  ALAN MERSKEY, ESQ.
                               BY:  JENNIFER STEN, ESQ.
                               BY:  ADRIENNE GLEN, ESQ.
                               (416) 979-2211
                                   -(AND)-
                               ROBIN B. SCHWILL, ESQ.
                               (416) 863-5502

For the Monitor:               C. ARMSTRONG, ESQ.
                               (416) 979-2211

For GENBAND:                   Stikeman Elliott, LLP
                               BY:  SEAN F. DUNPHY, ESQ.
                               BY:  ALEX ROSE, ESQ.
                               5300 Commerce Court West
                               Toronto, ON  MSL 1B9
                               (416) 869-5662

For Former Disabled
Employees:                     MARK ZIGLER, ESQ.
                               (416) 595-2090
```

```
For Noteholder Group:         G. FINLAYSON, ESQ.
                              (416) 777-5762

Telephonic Appearances
Continued:

For Superintendent of
Financial Services:           LILY HARMER, ESQ.
                              (416) 865-7370
```

INDEX

| WITNESSES<br>FOR DEBTORS: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| MISTY KAWECKI | 71 | 78 | | |

 1  WILMINGTON, DELAWARE, WEDNESDAY, DECEMBER 15, 2010, 10:15 A.M.

 2              CANADIAN CLERK:  Come to order.  All rise.

 3              The Court is now in session.  Please be seated.

 4              THE CLERK:  Please rise.

 5              THE COURT:  Good morning, everyone.  Thank you

 6  and please be seated.

 7              MR. CONNELLY:  Good morning, Your Honor.

 8              MR. HERRINGTON:  Good morning, Judge.

 9              THE COURT:  Good morning.

10              Mr. Abbott, good morning.

11              MR. ABBOTT:  Good morning, Your Honor.  Good

12  morning.

13              THE COURT:  Mr. Justice Morawetz, good morning.

14              JUSTICE MORAWETZ:  Good morning, Judge Gross, and

15  counsel in Toronto and Delaware.  As you know, this is

16  another one of our joint hearings conducted in accordance

17  with the protocol of the previously approved laws, the court

18  to court communication guidelines.

19              Judge Gross and I have had a brief opportunity

20  this morning to discuss the procedure to be followed today

21  subject to counsel's comments.  But it is our understanding

22  that the main issue for hearing at this joint hearing is the

23  issue with GENBAND and the CVAS accounting issues.  And it

24  is our further understanding that the matter will proceed

25  with Nortel's counsel in Delaware taking the lead on that.

1          So unless I see any objections here, which I do

2     not, Judge Gross, I will turn it over to you to start on

3     that basis subject to counsel's comments in your court.

4          THE COURT:  Thank you, Mr. Justice Morawetz.

5          JUSTICE MORAWETZ:  Thank you.

6          THE COURT:  Mr. Abbott, good morning.

7          MR. ABBOTT:  Good morning, Your Honor.  Derek

8     Abbott here on behalf of the Nortel debtors.

9          Your Honor, we do have two very small and I think

10    very brief U.S. only matters --

11         THE COURT:  Yes.

12         MR. ABBOTT:  I -- I had asked your staff if we

13    might proceed with them first only because we've got a

14    number of professionals on the phone for those that I would

15    like to cut loose, if we could, to save these people some

16    money, Your Honor.

17         THE COURT:  Absolutely.  And we have reviewed the

18    fee applications.  I don't have issues or questions with

19    respect to those.  I would be prepared to approve them.

20         MR. ABBOTT:  Could I ask Ms. David to just

21    approach with an order, Your Honor?

22         THE COURT:  Absolutely.

23         MR. ABBOTT:  Thank you, Your Honor.

24         The other matter, Your Honor, was the debtors'

25    retention of ADRX to assist NNI in the sale of its IP

1    addresses, Your Honor.

2            THE COURT:  Yes.

3            MR. ABBOTT:  The compensation is set forth in the

4    application.  There's a $200,000 retainer and then a -- five

5    percent of the sale price.  Your Honor, I wanted to alert

6    the Court that we did submit a revised -- or excuse me -- a

7    supplemental declaration of Charles Lee regarding some

8    arrangements they had with -- with parties that may

9    ultimately be parties interested in buying this IP

10   previously.  We have made clear with them and it's clear in

11   the order, Your Honor, that they will only be representing

12   NNI with respect to that sale, notwithstanding those other

13   relationships, Your Honor.

14           I know that the committee would like to be heard

15   very briefly on it.  We -- we had one small change to the

16   order that we needed to interlineate to accommodate a

17   request of the U.S. Trustee for some specific language

18   preserving their rights on reasonableness under 330.  I

19   don't think it's controversial and I know Mr. Botter would

20   like to be heard, if I may.

21           THE COURT:  All right.

22           Mr. Botter, good morning.

23           MR. BOTTER:  Good morning, Judge.  David Botter,

24   Akin, Gump, Strauss, Hauer & Feld on behalf of the Official

25   Committee.

1              Your Honor, the committee does not have an

2    objection to the entry of this order.  However, we would

3    like to preserve our rights just in -- with one -- with one

4    issue on this order.

5              This deals with a particular set of IP addresses.

6    Your Honor --

7              THE COURT:  Yes.

8              MR. BOTTER:  -- it's our understanding that this

9    serves -- shall serve as no precedent in these cases or any

10   other cases with respect to the sale of the U.S. debtors'

11   interest in other IP addresses.  This is a one-shot deal,

12   Your Honor, and, obviously, the debtors would come back with

13   respect to any further sales.

14             That's it, Your Honor.

15             THE COURT:  All right.  Thank you, Mr. Botter,

16   and I -- I --

17             MR. ABBOTT:  May I approach, Your Honor?

18             THE COURT:  Yes, you may, Mr. Abbott.

19             And I think that was hopefully clear from the

20   order, at least the committee's concern.

21             (Pause)

22             THE COURT:  All right.  With that, I see the

23   change, Mr. Abbott, and the order is in -- certainly

24   acceptable and --

25             MR. ABBOTT:  Thank you, Your Honor.

1              THE COURT:  -- I will approve the retention.

2              MR. ABBOTT:  And I will cede the podium now to

3    Mr. Herrington from Clearly Gottlieb, Your Honor.

4              THE COURT:  All right.  Thank you.

5              MR. ABBOTT:  Thank you.

6              THE COURT:  Good morning.

7              MR. HERRINGTON:  Good morning, Judge Gross, and

8    good morning, Mr. Justice Morawetz.

9              There has been a back and forth with counsel for

10   GENBAND about who would begin this morning's proceedings

11   and, frankly, I think we don't have a strong preference,

12   Your Honor.  Nortel filed its motion first; that motion

13   asked for the Court to address GENBAND's attempt to

14   disregard the definition of deferred profit amount.  The

15   next day GENBAND filed a motion seeking arbitration of that

16   very issue.

17             THE COURT:  Yes.

18             MR. HERRINGTON:  So both -- both parties

19   addressed the jurisdictional issue.  GENBAND has expressed a

20   strong preference to go first.  I don't have a problem with

21   that, but I would like, if it's going to proceed that way,

22   GENBAND would go first.  We would have an opportunity to

23   respond.  GENBAND presumably will want to reply to that, and

24   then we would have an opportunity to reply to whatever

25   GENBAND has to say.

1           So on that basis, Your Honor, we're -- we're

2    prepared to proceed.

3           THE COURT:  All right.

4           MR. CONNELLY:  And that's fine with us, Your

5    Honor.

6           THE COURT:  Very well.  Then that is acceptable.

7           MR. HERRINGTON:  Thank you, Your Honor.

8           THE COURT:  Good morning.

9           MR. CONNELLY:  Good morning, Your Honor.  Blair

10   Connelly with the Latham & Watkins representing GENBAND.

11          THE COURT:  Yes, sir.

12          MR. CONNELLY:  I believe there's one housekeeping

13   matter which is the --

14          THE COURT:  The confidentiality order.

15          MR. CONNELLY:  Yes, Your Honor.  I don't believe

16   there's any objection to it, and if Your Honor has no issue

17   with it, I would ask that the Court enter the order.  I have

18   a copy of it here.

19          THE COURT:  All right.  Just to confirm, is there

20   any objection to the proposed order?

21          MR. HERRINGTON:  There's no objection, Your

22   Honor.

23          THE COURT:  Thank you.

24          All right.  Then I am --

25          MR. CONNELLY:  May I approach?

```
1           THE COURT:  -- prepared to grant it.  Thank you.

2   Yes.  Thank you, Mr. Connelly.

3           (Pause)

4           JUSTICE MORAWETZ:  Judge Gross, if I could just

5   make a comment from Toronto.  The --

6           THE COURT:  Yes, please.

7           JUSTICE MORAWETZ:  -- audio when you're speaking

8   -- the audio when you're speaking is very clear.  When

9   counsel is speaking sometimes he appears to be drifting away

10  from the microphone just a bit.

11          THE COURT:  Mr. Connelly, do you want to just

12  test that right now?

13          MR. CONNELLY:  Am -- am I being heard okay now?

14          JUSTICE MORAWETZ:  Much better.

15          THE COURT:  Good.

16          MR. CONNELLY:  All right.

17          THE COURT:  All right.  And we'll just try --

18  thank you, Justice Morawetz.  We'll try and be careful to

19  make certain that counsel speak directly into the

20  microphone.

21          MR. CONNELLY:  And I should also apology.  It may

22  be the quality of my voice under the cold that I am battling

23  right now.  But through the wonders of modern chemistry,

24  hopefully I can muddle through.

25          THE COURT:  Well, the Canadians have sent their
```

1  cold air down here.

2          (Laughter)

3          THE COURT:  We'll try and send some hot air up

4  there.

5          (Laughter)

6          MR. CONNELLY:  Well, if this many lawyers in the

7  courtroom can't accomplish that, Your Honor, then we don't

8  know what we're doing.

9          THE COURT:  That's right.

10          MR. CONNELLY:  Well --

11          JUSTICE MORAWETZ:  It's very warm in our

12  courtroom.

13          (Laughter)

14          MR. CONNELLY:  Well, our motion, Your Honor, is

15  very simple and -- and we do have some PowerPoint slides

16  that we'll project on the screen.

17          THE COURT:  Good.

18          MR. CONNELLY:  My understanding is that they will

19  be viewable in Canada, although perhaps only on a quarter of

20  the screen, which we weren't -- a technical problem we

21  weren't able to solve.

22          THE COURT:  Okay.

23          MR. CONNELLY:  But the parties here entered into

24  a contract with a purchase price adjustment and the parties

25  understood that there could be disagreements about that

1   purchase price adjustment, and they agreed that any

2   disagreement of that nature would be resolved through an

3   arbitration process.  They didn't say that any disagreement

4   about the math or any disagreement about the accounting or

5   any disagreement about the amounts.  They just said any

6   disagreement.

7          That is how the sophisticated parties,

8   represented by able counsel, presumably familiar with the

9   background law regarding how arbitration clauses are

10  interpreted and construed chose to draft this particular

11  clause.

12         Now the parties now, in fact, do have a

13  disagreement about the purchase price adjustment.  Nortel

14  does not believe that GENBAND determined the deferred profit

15  amount correctly.  My client believes it determined it

16  exactly the way the definition requires, which is to say in

17  a manner consistent with the Nortel accounting principles

18  and with generally accepted accounting principles or GAP.

19  Those terms are expressly incorporated into the definition

20  of the deferred profit amount.  You cannot determine the

21  deferred profit amount without applying those accounting

22  principles.

23         But Nortel argues that this Court should instead

24  sort the issue out because they say, well, it's really just

25  a legal issue and it's not an accounting issue, and that

1  argument fails, I would submit, on -- on two grounds:

2            First, it has not been the law in this country

3  for about forty years that you can avoid arbitration by

4  saying that that's a legal issue for the court to resolve.

5  It doesn't matter and -- and there's nothing in the clause

6  that admits to such a distinction.  It just says any

7  disagreement.

8            But they're also wrong because, for the reasons I

9  just said, the dispute absolutely is an accounting issue.

10  It absolutely requires the application of accounting rules.

11  And GENBAND bargained for the right to have these particular

12  disputes resolved through the eyes of an accounting

13  arbitrator because it wanted to make absolutely sure that

14  those principles that are baked right into the definition

15  are applied correctly.

16            From our perspective, Nortel is trying to undue

17  that bargain and we would submit it -- it's because they're

18  trying to undo the consequences of the application of those

19  accounting rules and we -- and we think the Court should

20  hold them to the bargain and submit the issue to

21  arbitration.

22            Now first I would like to talk briefly about the

23  federal law on these issues because the parties do have a

24  bit of a dispute about that.  And there is, of course, a

25  strong and well-established policy in favor of arbitration.

1        If I could have Slide 2, please.

2        The Supreme Court has made it very clear.  The

3   Supreme Court stated that any doubts concerning the scope of

4   arbitrable issues should be resolved in favor of arbitration

5   and that presumption applies even if the problem at hand is

6   the construction of the contract language itself.

7        Now Nortel, in their papers, try to draw a

8   distinction between so-called broad arbitration clauses and

9   narrow ones, and -- and there's no question here that at

10  least in that context, the clause here is narrow.  It's

11  narrow in the sense that it does not provide that any and

12  every dispute that the parties may have under any

13  circumstances is submitted to arbitration.  Nobody is

14  claiming that it does.

15        But it doesn't follow from that that the clause

16  is to be interpreted in a narrow or constricted manner, nor

17  does it follow that the federal policy and the rules of

18  interpretation that flow from it suddenly disappear entirely

19  and fall out of the picture.

20        And I think the Third Circuit explained it

21  actually very well, and I won't try to top their language.

22        If I could have Slide 3.

23        This is from the Federated Metals case:

24        "We recognize that when the arbitration clause is

25        narrow, a Court may scrutinize the underlying

1              grievance more closely to determine whether the

2              subject matter of the dispute is arbitrable.

3              However, a Court does this not because the

4              presumption of arbitrability is inapplicable, but

5              because the parties have narrowed the Court's

6              focus from a determination of whether the

7              dispute arguable relates to the collective

8              bargaining agreement" -- this was a labor case --

9              THE COURT:  Yes.

10             MR. CONNELLY:  -- "to a determination of whether

11  the dispute arguably relates to a particular type of

12  grievance."

13             If I could have Slide 4.

14             The Court then explains what the Court's to do:

15             "When a Court examines the underlying grievance

16             to determine whether it is one that the parties

17             have included in their narrow agreement to

18             arbitrate, it should not deny arbitration unless

19             it may be said with positive assurance that the

20             arbitration clause is not susceptible of an

21             interpretation that covers the asserted dispute.

22             Therefore, even when the arbitration clause is

23             narrow, doubt should be resolved in favor of

24             arbitration."

25             Now the Local 827 case that Nortel relies upon in

1    their papers quite heavily does not purport to overrule any

2    of that, nor is any other case purported to -- to overrule

3    that.   There is, in the history, some criticism of this

4    decision on an unrelated point, but you won't find anything

5    saying that that's been overruled or abrogated in any way.

6              And that's because Local 827 was dealing with a -

7    - really a different issue entirely, which was whether a

8    clause -- I believe a dispute -- I think it was a statutory

9    claim was related to the parties contract at all.

10             THE COURT:  Yes.

11             MR. CONNELLY:  It was that broader and more

12   global issue.  It was in that context and that context alone

13   that the Court said that the presumption of arbitrability

14   doesn't apply.

15             If I could have Slide 5.

16             The Court said:

17             "Where the arbitration provision is narrowly

18             crafted, we cannot presume, as we might if it

19             were drafted broadly, that the parties here agree

20             to submit all disputes to arbitration."

21             That's the issue the Court was dealing with in

22   Local 827.  And, in fact, in that case the arbitration

23   clause specifically excluded the type of dispute that was at

24   issue, and that's very different from what we have here.

25   Nobody here is arguing that this dispute that needs to be

1    resolved is in no way related to the agreement at all.   In

2    fact, they're -- they're claiming that it needs to be -- the

3    agreement needs to be enforced.   And no one is here arguing

4    that every dispute the parties might have must go to

5    arbitration.

6            The issue here is simply whether the parties'

7    disagreement is within the scope of what they did agree to

8    arbitrate, and when that's the issue the law is Federated

9    Metals, and what the Court's supposed to do is it's supposed

10    to shift its focus from a determination of whether the

11    dispute arguably relates to the contract to a determination

12    of whether the dispute arguably relates to the particular

13    type of disagreement they agreed to submit to arbitration.

14    And in doing so, the Court should not deny arbitration

15    unless it is not susceptible to an interpretation that

16    covers the dispute.

17            And -- and that's the governing law, not just

18    here, but -- but really everywhere in the United States and

19    that's why -- if I could have Slide 6 -- this is one of the

20    cases that Nortel itself cited, the HDS case from the Court

21    of Chancellery,  I believe it was Chancellor Chandler, who

22    said just two years ago:

23            "The presumption in favor of arbitration stills

24            applies to narrow arbitration clauses.  However,

25            the Court must still consider the boundaries of

1        the arbitration provision."

2        And that's all we're saying.

3        So with that legal framework in mind, let's take

4  a look at the clause itself and what the disagreement is.

5        If the Court will indulge me, I need to get a

6  little water.

7            THE COURT:  Of course.

8            MR. CONNELLY:  Thank you.

9            (Pause)

10           MR. CONNELLY:  And when you apply the

11  presumptions under the law, the case becomes actually pretty

12  easy because the only question is whether it can be said

13  with positive assurance that there's no way to interpret it

14  as covering this dispute.  Put the other way, if it is even

15  possible to interpret the arbitration clause as covering

16  this dispute, then it has to go to arbitration.  That's just

17  the converse way of saying it.

18       Now, here, the clause on its face applies to any

19  disagreement about the closing statement.  It is susceptible

20  of that interpretation and the analysis should end there.

21  But as we said in our papers, even -- even if you don't

22  apply the presumptions that we submit it required, it still

23  falls clearly within the scope of it.

24       Here's how the purchase price agreement works,

25  and I'm not going to put all these up on the screen because

1  in the interest of time, frankly.  But -- and I'm not going

2  to repeat 2.2.3.1 every time.  I'll just go with A, B and C.

3                THE COURT:  Understood.

4                MR. CONNELLY:  Thank you.

5                But under Clause A, GENBAND submits a closing

6  statement with 19 specific items, one of which is the

7  deferred profit amount, and the closing statement has to be

8  prepared in accordance with the Nortel accounting principles

9  and the terms hereof.

10                Clause B,  if Nortel disagrees with the

11  determination of the closing statement, they must notify

12  GENBAND of such disagreement and any requested adjustment to

13  the closing statement, and anything that they don't object

14  to is deemed accepted.  So the -- so the issues are narrowed

15  that way.

16                And then under Clause C, if the parties are

17  unable to resolve any -- any disagreement as contemplated by

18  Section B within fifteen days, then whatever's left over

19  goes to arbitration.  And Section B, as I said a minute ago,

20  applies to any disagreement with and any requested

21  adjustment to the closing statement.

22                And the arbitrator is to consider not merely the

23  amounts, but also the items in the closing statement that

24  the parties disagree about, and one of those items is the

25  deferred profit amount.

1          Now the cases that Nortel cites in its papers

2    involve much different language.

3          If I could have Slide 9.

4          What this chart shows, on the left-hand side we

5    have the language in our clause, which applies to if they're

6    unable to resolve any disagreement as contemplated by

7    Section 2.2.3.1(b), the arbitrator shall resolve it.

8          In the Brad Enterprises case, the relevant

9    language was any of the amounts included in -- in the

10   closing balance sheet.

11         In the HDS case again it was where there were any

12   amounts remaining in dispute; that all amounts remaining in

13   dispute may be submitted to arbitration.

14         In the Blue Tea case, in the event the buyer

15   shall disagree with the computation of the final statement

16   by seller, then it goes to arbitration.

17         Those were cases involving clauses that really

18   apply to a subset of the issues under the closing statement.

19         But they're also distinguishable because they

20   involve different kinds of disputes.

21         For example, in Brett, the claim was that a

22   monetary limitation under a different clause in the

23   contract, not the one involving the purchase price, was void

24   due to mutual mistake and the Court there had no trouble

25   finding that that was not within the clause of that

1    arbitration clause which applied to the amounts.

2            In HDS, again, it was a provision of a -- it was

3    about a different provision of the contract dealing with

4    bonus payments.  And even there, the Court said that it --

5    that it -- it was not going to intrude upon the issues that

6    really should be arbitrated.

7            In Blue Tea, the issue was whether the agreement

8    had been amended right before the closing.  The Court found

9    that was not within the scope of that arbitration clause.

10           In e-Trade, there were a whole variety of claims

11   arising under provisions like whether the parties had kept

12   their books and records.  The Court said that wasn't about

13   the closing balance sheet.

14           Then in RCM, the clause was limited to disputes

15   about interpretation of the contract and the claim at issue

16   was a claim that the contract was fraudulently induced ab

17   initio.

18           So in our case -- you know, in stark contrast to

19   that what we have is a dispute that's actually about the

20   closing statement.  It is about one of the specific items

21   that is required to be in the closing statement.  It is

22   about the very definition of that -- of that item as spelled

23   out in the contract.  It is right down the middle of the

24   fairway of what is specified in this arbitration clause; a

25   disagreement about the closing statement.

1          Now I think if you look at the deferred -- let's

2    take a look at the deferred profit amount definition.

3          If I could have Slide 10.

4          And, frankly, even if we were to interpret it in

5    a very narrow manner as only applying to accounting issues,

6    which is what Nortel's arguing, this is the definition, and

7    as you'll see it refer -- it includes the defined term,

8    "Nortel accounting principles"; that's defined in the

9    contract.  The definition of that makes reference to the

10   unaudited financial statements which are also defined in the

11   contract.

12         And what Nortel says in its papers is that there

13   is -- in deciding this issue there is no issue for an

14   account to decide.  And -- well, we respectfully disagree.

15         If I could have Slide 11.

16         Here's what you have to decide to figure out the

17   deferred profit amount.

18         First, you have to figure out what the deferred

19   revenues are and that, of course, is an accounting concept.

20   Then you also -- then you have to subtract from that the

21   deferred cost, which is also an accounting concept.

22         Once you've done that, you have to figure out

23   whether that amount would be required to be reflected on a

24   balance sheet, which is an accounting question.  If that

25   balance sheet was applied -- was prepared in a manner in

1    accordance with GAP and if that -- those GAP principles were

2    applied in a manner consistent with the Nortel accounting

3    principles, but only to the extent that those principles

4    are, themselves, consistent with GAP.

5              And then after you've done all that, no matter

6    how you come out, even if you agree with Nortel on the

7    meaning of the, you know, either or nine words on the third

8    and fourth lines that they like to focus on, no matter how

9    you come out, for the avoidance of doubt the deferred profit

10   amount, not the deferred revenue, the deferred profit

11   amount, the entire definition will include advance billings

12   and deferred revenue consistent with the Nortel accounting

13   principles.

14             So I would submit that there are, in fact, maybe

15   one or two issues here for an accountant to decide; that you

16   -- you might think that the parties sensibly had -- go to an

17   accounting arbitrator.

18             So then the question just becomes with all that

19   in mind, does this seem like the kind of thing that arguably

20   the parties could have considered sending to an accounting

21   arbitrator pursuant to their clause.  And if it arguably is,

22   then our motion should be granted and the case should go to

23   arbitration.

24             I think the case is actually very much like some

25   of the cases from this Court.

1              If I could have Slide 7.

2              The Shubert case was a working capital dispute.

3    It was -- it was clearly a narrow arbitration clause that

4    only dealt with working capital issues, and the Court held

5    that the presumption of arbitrability applied to both the

6    scope of the clause and the existence of the clause, and the

7    parties found that the disagree -- the Court found that the

8    disagreement about the working capital amount was clearly

9    within the scope.

10             I think the -- probably the closest case we have,

11   though, is the CompuCom decision.

12             If I could have Slide 15.

13             Like this case, CompuCom involved a purchase

14   price adjustment.  The process was virtually identical.  The

15   time periods were a little different, but there was a

16   closing statement and a disagreement notice and a period of

17   trying to try and work it out.  And there was also a narrow

18   arbitration clause that only applied to those kinds of

19   disagreements.

20             And what's particularly interesting is the

21   purchase price was to include net working capital.  The

22   contract defined net working capital to be determined in

23   accordance with international financial reporting standards.

24   So as here, there was a reference to specific accounting

25   standards that were to be applied, and then it said,

1   consistently applied to Exhibit E, which, like here,

2   referenced a particular set of financial statements that

3   those principles were applied in.  And then, also, there was

4   a reference to the -- to the FDD report, which is another

5   one of those specific documents it referred to.

6           And what happened in this case was the plaintiff

7   sued the seller claiming that it had breached the

8   representations and warranties regarding the accuracy of the

9   financial statements.  So the plaintiff wasn't doing what

10  they're -- what Nortel is trying to do here which was to

11  basically say, we're right on the closing statement.

12  Enforce it, Your Honor.  They were saying, no, no, no.

13  We're just suing under these reps and warranties off to the

14  side.

15          And what the Court said -- if I could have Slide

16  16.  It noted that the arbitration clause was narrow and

17  cited Local 287 and the Trap Rock case, but it said the

18  focal point of the conflict here is whether the seller's

19  method of calculating inventory was proper under the

20  accounting principles that were specifically referenced in

21  the contract.

22          And for that reason -- if I could have the next -

23  - Slide 17.  For that reason, even though the theory -- the

24  legal theory of the claim was breach of reps and warranties,

25  the Court said under the FAA if there is an issue that under

1 | the contract it's to be resolved through arbitration, I have

2 | to let the arbitrators decide that issue and then step to

3 | the side and step back, even though it was a different legal

4 | theory than what was specific to the arbitration clause.

5 | Now I think that our case is, obviously, very,

6 | very similar to that.  The deferred profit amount is an

7 | issue that must be resolved through arbitration for the

8 | reasons I've said.

9 | And I would like to talk now about why it is that

10 | this actually matters and why we believe that this dispute

11 | is even really before Your Honor right now, and why Nortel

12 | is trying so hard, really, to avoid this arbitration process

13 | that they agreed to and we would submit it's because they

14 | know that what they did in their approach was not, in fact,

15 | consistent with the Nortel accounting principles and it was

16 | not, in fact, consistent with GAP.

17 | And what they're -- and we think that what

18 | they're asking the Court to do is just to blow right passed

19 | all of the accounting rules that were specifically and

20 | expressly baked right into the definition, and just ignore

21 | those and focus on a few isolated words and pretend that --

22 | that GENBAND didn't protect itself by ensuring that those

23 | accounting rules would be applied.

24 | And so, you know, we think when -- when they

25 | suggest that GENBAND is the party trying to -- I think they

1  said disregard the clear terms of the agreement, we would

2  submit, no.  No.  We're trying to regard all of the terms of

3  the agreement, not just the ones that we like.

4         Now the parties specifically -- oh, I -- just a

5  couple of points and then I'll - and then I'll turn it over.

6         One of the arguments they make is they make

7  reference to this Sienna (phonetic) deal.

8         THE COURT:  Correct.

9         MR. CONNELLY:  Okay.  Now as an initial matter, I

10 -- I'm a little doubtful of what possible relevance a

11 separate contract that my client was not a party to or what

12 the party's performance under that contract that my client

13 wasn't involved in has to do with the interpretation of my

14 client's agreement or what my client agreed to.  That's just

15 as an initial matter.

16         But more importantly -- if I could have Slide 18

17 -- guess what sentence isn't in the Sienna deal?  The

18 sentence that's not in the Sienna deal is the one for the

19 avoidance of doubt, okay.  If anything, maybe that -- maybe

20 that explains exactly why they put it there.  They said we

21 don't want to be like that Sienna deal, you know.  But you

22 can't just pretend that those words are there because if you

23 do you're in the one contractual argument that must always

24 fail, the argument that the words have no meaning and don't

25 serve any purpose.

1          Well, I -- I was going to -- Your Honor, the

2     reason we put in the evidence in the Martin affidavit and

3     the Kawecki affidavit was really in case the Court was

4     inclined to address the underlying merits at all, and I'm

5     happy top do that now, and I would move that those

6     affidavits be admitted into evidence.

7          But unless the Court has questions about that, I

8     don't feel it necessary to go through those issues right

9     now.  What I was -- as a proffer I would say what I was

10    going to show you is that if you walk through the email and

11    the document that's attached to Ms. Martin's affidavit, what

12    you'll see is the way the deferred profit amount was

13    actually presented to us during the time of the

14    negotiations.  It was entirely consistent with what we say

15    should be done now.  And we think that's powerful evidence

16    of how they interpreted the deferred profit amount and how

17    they interpreted the deal that they were making with us.

18          I really only put that in because there had been

19    some -- somewhat rhetorical, perhaps, suggestions that we

20    were trying to undo the deal and that just ain't the case.

21          And with that I think I'll pass the baton.

22          THE COURT:  All right, then.

23          MR. CONNELLY:  And counsel said, I reserve the

24    right to come back and rebut what --

25          THE COURT:  Of course.

1          MR. CONNELLY:  -- what counsel says.

2          THE COURT:  All right.  Thank you.  Thank you,

3 Mr. --

4          MR. CONNELLY:  Thank you very much, Your Honor.

5          THE COURT:  Thank you, Mr. Connelly.

6          (Pause)

7          MR. HERRINGTON:  Thank you, Judge Gross and Mr.

8 Justice Morawetz.

9          Your Honors, this dispute concerns GENBAND's

10 attempt to disregard or try to reform the clear provision of

11 the sale agreement that these two courts approved.

12          Now the definition of deferred profit amount

13 defines the deferred revenues that can be used to reduce the

14 purchase price.  And the key part of the definition and the

15 source of the parties' dispute -- this is, for sure, the

16 source of the parties' dispute -- states that the deferred

17 profit amount will include, "deferred revenues for services

18 to be performed or products to be provided by the business

19 after the closing date."  After the closing date.

20          What GENBAND is now trying to include in deferred

21 revenues is services that it -- what GENBAND is trying to

22 include in deferred profit amount is deferred revenues for

23 services that were performed or products that were delivered

24 before the closing date.

25          So if -- if I may, Your Honor, we prepared a

1    chart, just a visual aid that describes this proceeding.

2              Can Your Honor see it from there?

3              THE COURT:  I can.  Well, I can't see the low --

4    I'm sorry.  If you would just --

5              MR. HERRINGTON:  Okay.

6              THE COURT:  -- move that out a little bit, Mr.

7    Abbott.  Thank you.  That's great.

8              JUSTICE MORAWETZ:  And the -- probably if we

9    can't see we can't hear.

10             THE COURT:  Oh.

11             MR. HERRINGTON:  You can't see or hear.  I'll --

12   I'll speak into the microphone and --

13             THE COURT:  Thank you.

14             MR. HERRINGTON:  -- I will read, Mr. Justice

15   Morawetz, what is on the sheet of paper that we've written

16   out for the Court.

17             JUSTICE MORAWETZ:  Thank you.

18             THE COURT:  Oh, okay.  We have a camera on the

19   witness stand and, perhaps -- I don't know if that will

20   help, but --

21             (Pause)

22             THE COURT:  No.  I'm sorry, Mr. Abbott.  And

23   forgive me, but now I can't see it.

24             (Laughter)

25             THE COURT:  There you go.  That's fine.

1              UNIDENTIFIED SPEAKER:  Equal justice for all.

2              MR. HERRINGTON:  Your Honor, the dispute is, is

3    GENBAND permitted to disregard or reform the definition of

4    deferred profit amount changing the words "after the closing

5    date" to the words "before and after the closing date."

6    There is no doubt that GENBAND seeks to include deferred

7    revenues for services that were performed and products that

8    were delivered before the closing date.

9              So let me pause here.  This is the dispute.  Now

10   GENBAND would like to argue there's some other residual or

11   peripheral accounting issues.  You have to look at Nortel

12   accounting principles and GAP and I'll address that in a

13   moment.

14             The dispute we are asking the Court to decide --

15   and if there's something left that is accounting, perhaps

16   that can go to an accounting arbitration.  The dispute that

17   we are asking the Court to decide is, is GENBAND permitted

18   to disregard or reform the definition of deferred profit

19   amount thereby changing the words "after the closing date"

20   to "before and after the closing date."

21             That's our dispute.  GENBAND may wish there was a

22   different dispute, but that is our dispute.  That is the

23   issue on which we've made a motion.  That is the issue that

24   we were asking the Court to decide.  That is not an issue

25   for an accounting arbitrator.  It's a legal and contractual

1   question for the Court to decide, and under this Court's

2   order approving the sale of the CVAS business, this Court

3   and the Ontario Court expressly retained jurisdiction to

4   "interpret, implement and enforce the terms of the sale

5   agreement."  That's Paragraph 32 of the sale order.

6          The sale agreement itself, in Section 10.6, has

7   the same reservation of jurisdiction in this Court.  We are

8   asking the Court to interpret, implement and enforce the

9   definition of deferred profit amount.

10          Now counsel for GENBAND said, oh, but their

11   accounting dispute is buried in here somewhere  because the

12   definition of deferred profit amount after saying that the

13   first thing that an item has to satisfy in order to qualify

14   is this, it has to relate to services or products delivered

15   after closing.

16          In addition to that, it has to be deferred

17   revenue that would be required to be on the ballot sheet

18   according to Nortel's accounting --

19          THE COURT:  Yes.

20          MR. HERRINGTON:  -- principles and GAP.

21          THE COURT:  Yes.

22          MR. HERRINGTON:  But, Your Honor, there's no

23   dispute about that.  All of the items that GENBAND would

24   like to include in deferred profit amount and all of the

25   items that Nortel would include in deferred profit amount

1    are items that would be on the ballot sheet according to

2    Nortel accounting principles and GAP.  There is zero dispute

3    about that.  Zero.

4              So, yes.  That's part of the definition.  It's

5    not part of the dispute.  What the dispute about is, there's

6    a universe of deferred revenue items on the ballot sheets

7    and the key language of deferred profit amount says, you

8    take a subset of that.  You take deferred revenue that is

9    for products to be delivered or services to be performed

10   after the closing date.  So it's a subset of those items

11   that are on the ballot sheet according to the Nortel

12   accounting principles and GAP.  No dispute.  You start with

13   the same universe.  They just don't like the carve-out that

14   the definition of deferred profit amount requires.

15             Now, Your Honor, this dispute about GENBAND's

16   attempt to disregard or to perform these words of -- the

17   definition of deferred profit amount precede the calculation

18   of the purchase price.  It's a distinct and prior dispute.

19   You first have to resolve this dispute about the definition

20   of deferred profit amount, and after you resolve that

21   dispute, then you can calculate the purchase price.

22             Now GENBAND is arguing, well, our attempt to

23   disregard the definition of deferred profit amount creates

24   an impact on the purchase price.  Therefore, this has to be

25   a matter for accounting arbitration.

1          Your Honor, that conflates two distinct disputes.

2    The dispute that we're asking the Court to decide is can

3    GENBAND ignore or reform the definition of deferred profit

4    amount.

5          And, Your Honor, courts have consistently have

6    reject -- have addressed exactly this same scenario where

7    there's a purchase price adjustment mechanism just like the

8    one here.  The seller, before closing, provides an estimate

9    of the purchase price.  Sometime after closing the buyer

10   provides what it thinks is the purchase price.  The seller

11   then responds saying, I disagree, and then there's a

12   provision that says for disputes about the purchase price

13   adjustment, we have accounting arbitration.

14         Courts that have addressed that scenario have

15   consistently rejected attempts to say, well, if this dispute

16   has an impact on the purchase price, then it must be for

17   purchase price accounting before an accountant -- purchase

18   price arbitration before an accountant.

19         Now before I discuss some of the specific cases,

20   let me discuss this issue of whether there's a presumption

21   of arbitrability.

22         The law, frankly, in the Supreme Court, the Third

23   Circuit and the District Court is that there's a presumption

24   of arbitrability, but that presumption, certainly the strong

25   presumption applies to broad provisions because when parties

1    have said, look.  We want to arbitrate all of our disputes,

2    then there's no boundary line to worry about and if some

3    party says, well, but this is a bankruptcy proceeding, so

4    that's why we shouldn't arbitrate, the Courts say, well, no.

5    You agreed to arbitrate.  There's a heavy presumption in

6    favor of that and arbitrate you will.

7              The District of New Jersey, following the Third

8    Circuit precedent in RCM Technologies -- this is cited in

9    our papers at Page 8 of our objection to GENBAND's motion --

10   stated a broad arbitration clause carries with it a certain

11   presumption of arbitrability.  With narrower clauses,

12   however, a Court considering the appropriate range of

13   arbitrable issues must consider whether the question at

14   issue is, on its face, within the purview of the clause.

15   The question is, is it on its face within the purview of the

16   clause.

17             Now counsel for GENBAND quoted language to Your

18   Honor from Vice Chandler's -- Vice Chancellor Chandler's

19   opinion in HGS Investments, and here's what Vince Chancellor

20   Chandler had to say about this issue:

21             "Although there was a policy under the FAA in

22   favor of enforcing agreements to arbitrate, the United

23   States Supreme Court has determined that arbitration is a

24   matter of contact and a party cannot be required to submit

25   to arbitration in a dispute which he has not agreed so to

1    submit.

2              The purpose of the FAA, "was to make arbitration

3    agreements as enforceable as other contracts, but not more

4    so.

5              So you defined the boundary lines of the

6    arbitration provision.  That's a 2008 Westlaw 46026 at star

7    four and it's citing Supreme Court precedent that Your Honor

8    will see from that page.

9              Now let's look at what happened in the <u>HD</u>

10   <u>Investment</u> case.  I agree with counsel for GENBAND, very

11   similar setting to this dispute; had exactly the same kind

12   of mechanism for post-purchase price, post closing purchase

13   price adjustment.  Again, seller makes an estimate first,

14   post-closing the buyer says, well, here's what I think is

15   the purchase price.  The seller, if -- there's a

16   disagreement -- says I disagree and then there's a provision

17   saying, for disagreements about the purchase price we'll

18   have accounting arbitration.

19             As vice chancellor Chandler held in that case on

20   its broad versus narrow issue.  That kind of accounting

21   provision's clearly a narrow accounting provision and the

22   vice chancellor made an important point that is echoed in

23   several other cases that we've cited to Your Honor.

24             And it states that the specification of Ernst &

25   Young, an accounting firm, as the first choice as neutral

1    arbitrator is further evidenced that the parties did not

2    intend the arbitration provision to encompass legal disputes

3    arising out of other clauses in the agreement.

4            Several other courts have made exactly the same

5    point.  It's a matter of common sense, but, also, being

6    faithful to the parties' intent.  They have arbitration for

7    an accountant.  Is an accountant expected to address legal

8    issues of an attempt to reform the clear definition of the

9    agreement?  The answer is no.

10           Now what was the dispute in -- in HGS

11   Investments?  The seller, Home Depot, argued about whether

12   it had an obligation to reimburse bonus and retention

13   payments, and it put that disagreement in the purchase price

14   adjustment mechanism.  It said, well, I -- I want to make

15   sure I'm not doing this twice.  So I object to your proposed

16   purchased price, buyer, and Home Depot argued, just as

17   GENBAND is arguing here, look.  We've got this mechanism.

18   You say what you think is the purchase price.  I say what I

19   think it is.   If we disagree, off we go to accounting

20   arbitration.

21           And the Court said, no.  This is a separate issue

22   and the seller cannot make this subject to accounting

23   arbitration simply by injecting a dispute about another

24   provision of the agreement, just as we have here a dispute

25   about the definition of deferred profit amount and saying,

1  well, it has an impact on the purchase price, therefore,

2  it's a matter for accounting arbitration.

3       Your Honor, the Sixth Circuit, in the <u>Bratt</u>

4  <u>Enterprises versus Noble International</u> case had exactly this

5  same fact pattern has here, same mechanism -- I won't go

6  through it again -- same exchange of here's my purchase

7  price.  Here's what I think is the purchase price, same kind

8  of agreement saying, we'll arbitrate before an accountant if

9  there's a dispute.

10       What the dispute was there, very similar to here,

11  is a party said, yes.  There's a provision that limits the

12  accounts payable that the buyer has to assume on purchase to

13  $1.2 million.  So that's a liability of the business that

14  the buyer would be acquiring as -- as accounts payable.  And

15  there's an agreement that said that's capped at 1.2 million.

16  Anything else remains with the seller.

17       Just as been -- GENBAND is trying to do here, the

18  seller said, you know what?  That wasn't really our

19  agreement.  I see that provision, but that's not our

20  agreement.  We -- we can ignore the provisions of the sale

21  agreement.

22       And because I disagree, that effects the purchase

23  price.  We're not going to limit the accounts payable to 1.2

24  million.  We're going to make it 1.8 million which is

25  actually what's on the books.  Because it's a dispute that

1  effects the purchase price, the seller argued it's subject

2  to purchase price arbitration. Again, the Court rejected

3  that, and here's what the Sixth Circuit had to say.  They

4  said:

5            "Bratt, the seller, contends that the parties

6            agreed upon the 1.2 million-dollar liability

7            limit based on a common or mutual mistake.  While

8            Noble, the buyer's claim, would obviously require

9            reference to the closing balance sheet to

10           determine matters of valuation, should Noble

11           prevail on this issue, the dispute regarding the

12           validity of the limitation provision does not,

13           itself, involve a disagreement with any of the

14           amounts included in the closing balance sheet.

15           "Rather, it involves a determination of whether

16           the parties' intent regarding Bratt's retained

17           liabilities was based on the parties' sharing a

18           misunderstanding about an essential term of their

19           agreement.

20           "Thus, this aspect of Noble's breach of contract

21           claim is not within the scope of the arbitration

22           clause and is, therefore, not arbitrable."

23           That's at 338 F.3d. at 613.

24           So just as the Sixth Circuit said there's a

25  disagreement here about whether the parties had a shared

1  misunderstanding about an essential term of the agreement,

2  that's exactly the dispute we're asking the Courts to decide

3  here:  Is there a misunderstanding about this disputed

4  phrase of the definition of deferred profit amount so that,

5  as GENBAND proposed, the words "before" -- the words "after

6  the closing date" could be read as before and after the

7  closing date.

8          Your Honor, the Second Circuit in the Blue Tee

9  Corp. versus Koehring Company case, 999 F.2d. 633 states

10  exactly the same scenario.  The only difference there is

11  there was an accounting arbitration for true accounting

12  issues, and then for issues of contractual interpretation

13  like we have here, they sent that to triple A arbitration.

14          The issue there was, has the sale agreement been

15  amended to change what the parties thought they were signing

16  when they signed the agreement, and, again, one of the

17  parties said, well, when you resolve that dispute, it has an

18  effect on the purchase price.  Therefore, this is for

19  purchase price accounting.  The Second Circuit said, no.

20  It's a contract amendment issue and, yes, it affects the

21  purchase price, but that doesn't make it subject to purchase

22  price arbitration.

23          Now, Your Honor, I'll address the only two cases

24  that GENBAND has proffered that address this kind of

25  scenario.

1            THE COURT:  Is one of them CompuCom?

2            MR. HERRINGTON:  Exactly.

3            THE COURT:  Okay.

4            MR. HERRINGTON:  And they claim that these two

5    decisions support theirs.

6            The first, Hubert, is very easily resolved.  That

7    case had nothing to do with the dispute about the boundary

8    lines of an arbitration provision.  What the Court said is

9    the arbitration clause unambiguously applies to the precise

10   questions at hand, the determination of the amount of

11   working capital held by Windstar Entities on July 31st,

12   2001; zero dispute about the boundary lines of arbitration.

13           The dispute there is the arbitration provision

14   said if there's a dispute, either party may seek arbitration

15   of that dispute and the party didn't -- that didn't want

16   arbitration said, well, that's may, it doesn't mean must,

17   and the Court said, no.  It -- it gives a party a right to

18   seek arbitration.  That's enforceable.  It's not

19   discretionary.

20           So that was the issue there.  No -- nothing at

21   all of relevance here.

22           Now CompuCom versus Getronics, let me first note

23   what the Court there said about this issue of how do you

24   decide when there's a narrow arbitration provision like

25   here, how do you decide the boundary lines.

1          And --

2          THE COURT:  So you're -- you're arguing, really,

3   that the word "any" does not govern the entire agreement.

4   Is that correct?

5          MR. HERRINGTON:  Well, yes, Your Honor.   What

6   we're arguing is there's a prior dispute before you even get

7   to the calculation --

8          THE COURT:  Yes.

9          MR. HERRINGTON:  -- of the purchase price.

10         THE COURT:  Yes.

11         MR. HERRINGTON:  A prior, separate and distinct

12  dispute.  You have to resolve that separate dispute first

13  and then the parties can go about  calculating what the

14  purchase price, after the Court has said, no, GENBAND.  You

15  can't ignore what the deferred profit amount says.  You

16  can't change "after the closing date" to "before and after

17  the closing date."

18         Once the Court has decided that, if there's still

19  some play in -- about disagreements in numbers or

20  calculations, accounting principles, we'll address that and

21  we -- Nortel signed up for accounting arbitration as well.

22  If there's a true accounting issue, that's where we want it

23  to be.

24         But this is a prior issue that sets the ground

25  rules by enforcing the definition of deferred profit amount,

1   a completely separate provision of the agreement, and that's

2   for the Court to decide, and then once the Court decides

3   that, then the parties can flush out or hash out, do they

4   actually have any dispute after --

5           THE COURT:  Do --

6           MR. HERRINGTON:  -- after that.

7           THE COURT:  -- you think it's likely that the

8   resolution of -- of the issue you've pointed to, Mr.

9   Herrington, would resolve the accounting dispute?

10          MR. HERRINGTON:  Well, I -- again, I don't think

11  there's --

12          THE COURT:  Would eliminate an accounting

13  dispute?

14          MR. HERRINGTON:  We're not aware of any separate

15  accounting dispute.

16          THE COURT:  Right.

17          MR. HERRINGTON:  And if Your Honor is at all

18  troubled saying, well, gosh, I don't know.  Maybe there is

19  lurking somewhere an accounting dispute, then, again, we

20  would propose that Your Honor decide this contractual

21  question, decide it, no, GENBAND, you can't disregard this

22  phrase, and let the parties then decide if they've got some

23  kind of accounting issue that remains.

24          And I think, Your Honor, the answer to your

25  question, just as a preview, is there wouldn't be a dispute

1  because the parties have actually done exactly this kind of

2  carving out of is this for something that is to be done

3  after closing.  The parties did exactly that kind of

4  methodology because that's what GENBAND needed to do to

5  decide what to put on its books after it acquired the

6  business.

7          Your Honor, that very issue is discussed in the

8  declaration of David Glass that we -- that we submitted

9  yesterday, and that's at Paragraph 7 of the declaration of

10  David Glass.  And, Your Honor, just as GENBAND's counsel

11  introduced -- sought to, you know, move the admission of its

12  declaration, we would certainly move the admission of Mr.

13  Glass's declaration as well.

14          THE COURT:  Now just one other question, Mr.

15  Herrington --

16          MR. HERRINGTON:  Sure.

17          THE COURT:  -- and that is, is the issue relating

18  to the language dispute something that is not governed by

19  Nortel's accounting policies?

20          MR. HERRINGTON:  The answer is it is not covered.

21          THE COURT:  It is not.

22          MR. HERRINGTON:  It does not implicate Nortel's

23  accounting principles.  So let me just go through that

24  again.  And I don't know if Your Honor has the -- turn to

25  the definition of -- of deferred profit amount.

1          THE COURT:  Oh, yes.  Yes.

2          (Pause)

3          MR. HERRINGTON:  Okay.

4          THE COURT:  Yes.  I'm with you.

5          MR. HERRINGTON:  So it defined it as:

6          "Deferred revenues for services to be performed

7          or products to be provided by the business after

8          the closing date" -- that's the key phrase --

9          "but for which an account receivable has been

10         recorded prior to the closing date minus

11         associated deferred costs to the extent incurred

12         by the business prior to the closing date in

13         connection with such products or provisions."

14         "In each case" -- meaning both of these things

15    we've just said.  They have to be after the closing date.

16         "In each case, that would be required to be

17         reflected on a balance sheet of the business as

18         of such date prepared in accordance with GAP,

19         applied in a manner consistent with the Nortel

20         accounting principles to the extent consistent

21         with GAP."

22         And then I don't have -- the next sentence says,

23    and by the way, this will include both deferred revenues and

24    advanced billings.  Okay.

25         So there's no dispute that the entire universe of

1    what both parties would include within that definition of

2    deferred profit amount are:

3                "Items that would be required to be reflected on

4                a balance sheet of the business as of such date

5                prepared in accordance with GAP, applied in a

6                manner consistent with the Nortel accounting

7    principles."

8                No dispute about that.  Again, what the dispute

9    is is GENBAND wants to ignore that the first part of the

10   definition says you take a subset of that.  You take a

11   subset of all of the things that would be on the balance

12   sheet and that subset is those deferred revenues that are

13   for services to be performed or products to be delivered

14   after the closing date.

15               And the idea there, Your Honor, is if there's

16   something there for GENBAND to do after closing, then it

17   makes sense for it to take these items onto its books and it

18   makes sense for those items to have an impact on the

19   purchase price.  As for items that were done before the

20   closing date, that's not GENBAND's problem.  It's not its

21   burden.  It's not it's -- it's not anything for it to reckon

22   with.  That's why those were carved out.

23               So for GENBAND to try to include revenues for

24   services that were performed and products were delivered

25   before the closing date makes no sense and it's directly

1 contrary to the definition of deferred profit amount.

2          Now, Your Honor, we were just --

3          THE COURT:  Talking.

4          MR. HERRINGTON:  -- about the CompuCom case.

5          THE COURT:  CompuCom.  Yes.

6          MR. HERRINGTON:  Yes, sir.

7          THE COURT:  I'm sorry, Mr. Herrington.

8          MR. HERRINGTON:  No.  Please, Your Honor, and I'm

9 happy to address any -- any questions or concerns that you

10 may have anywhere along the way.

11          THE COURT:  And, incidentally, I should have

12 invited and I do invite Mr. Justice Morawetz to raise any

13 questions that he may have.

14          JUSTICE MORAWETZ:  None at this time, Judge

15 Gross.

16          MR. HERRINGTON:  And, Your Honor, in case it

17 wasn't clear about the operation of deferred profit amount,

18 that's -- deferred revenues are a cost item that would lower

19 the purchase price.  Okay.

20          Here's what Judge Robinson had to say in the

21 CompuCom case.  First, I'll just address this issue of

22 presumption, how do you go about deciding this kind of

23 dispute when you have a narrow provision and then I'll talk

24 about what is -- what was the actual issue of dispute there.

25          Judge Robinson said:

1                    "Although courts generally operate under a

2                    pronounced presumption of arbitrability, the

3                    Third Circuit has held that this presumption does

4                    not apply in all circumstances.  If parties draft

5                    an arbitration clause narrowly, the Court cannot

6                    presume, as it might if the arbitration clause

7                    were drafted broadly, that the parties agree to

8                    submit all disputes to arbitration."

9          So exactly the point that we discussed earlier.

10   You can't presume in favor of arbitration or you can't --

11   when you've got a narrower provision.

12          Now what was the disputed issue there?  Now the

13   dispute was a pure and inherent and inevitable accounting

14   issue:  What is the right time period for expensing

15   replacement parts.  The company, the seller had made

16   different decisions about that over time.  Ultimately, it

17   decided on a six-year period because -- and without having

18   the effect of it boosting its revenues.  The buyer said, you

19   know what, as an accounting matter that's not the right time

20   period for expensing or doing a depreciation of replacement

21   parts.  It should have been a four-year period.  That was

22   undoubtedly an accounting issue.

23          Now that accounting issue gave rise to other

24   disputes, but the core issue was an accounting issue.  This

25   is exactly what Judge Robinson said.  This is at Page 378,

1 | 635 F. Supp. 2d. at 378:

2 |         "The focal point of the conflict is the propriety

3 |         of using six-year inventory life as opposed to

4 |         four-year inventory life for spare parts in the

5 |         preparation of financial statements relied upon

6 |         in this transaction."

7 |         That's an accounting dispute.  But you do not say

8 | the dispute is that a party would like to ignore a clear

9 | definition of the agreement.  They would like to change the

10 | words "before" to "before and after," which Judge Robinson

11 | clearly would have viewed as a legal, contractual dispute.

12 |         What the dispute was there is what's the right --

13 | what's the propriety of using a six-year inventory life as

14 | opposed to a four-inventory life for spare parts in the

15 | preparation of financial statements relied upon in this

16 | transaction.  I don't see any other -- I don't think anyone

17 | would disagree that's an accounting dispute, but that is not

18 | the dispute that we have here.

19 |         Now, Your Honor --

20 |         THE COURT:  So it would be as if the agreement --

21 | in CompuCom, the agreement provided for four years and the

22 | buyer then came along and said, we believe it should -- the

23 | agreement should be interpreted as six years and that would

24 | --

25 |         MR. HERRINGTON:  Your Honor, that's exactly

1  correct, exactly correct.

2          Now it bears noting that we've said repeatedly in

3  our papers that this is exactly what GENBAND is trying to

4  do.  It's trying to change the words "before" to "before and

5  after."  And GENBAND has never denied that.

6          Now in addition to the simple fact that this is

7  clearly a dispute about the provision of the agreement and

8  GENBAND's wish that it didn't say what it said, there are

9  many reasons why it is important for the Court to decide

10  this issue rather than sending it off to an account who,

11  frankly, wouldn't know what to do with this issue.

12          First, again, the sale order in Paragraph 32

13  expressly says, if it's an issue about the implementation,

14  enforcement or interpretation of a provision of the sale

15  agreement, that belongs to the Court and that's exactly what

16  this is.

17          Another reason why it's so important to hold and

18  enforce the definition of deferred profit amount is that

19  that term clearly has an impact on the economics of this

20  deal and economics were an important matter for the debtors

21  and for all of the sellers.  There wasn't -- it wasn't just

22  NNI.  It wasn't even just NNL.  There were sellers of this

23  CVAS business all around the world and they relied on terms

24  of the sale agreement and this Court's order approving those

25  clear terms of the sale agreement.

1          Now the terms of the sale agreement were also

2    important because that became the deal that was marketed to

3    potential competing bidders.  So you sign up this sale

4    agreement.  It has definitions like deferred profit amount

5    that dictate what's going to be paid at the end of the day.

6    It says you'll adjust for things after the closing date, not

7    things before the closing date, and that has an impact on

8    the price that any buyer would pay for this business under

9    this agreement.

10          That -- those terms and this sale agreement was

11   marketed to other potential bidders.  There were two other

12   bidders who came in and -- and became qualified.  At the end

13   of the day they looked at the terms, they looked at the

14   economics and decided they wouldn't pursue a deal, but the

15   terms that they looked at were exactly the terms that Nortel

16   asked Your Honors to enforce.

17          Now, in addition, this sale agreement, like

18   almost any other sophisticated agreement, has an integration

19   clause.  It says, you'll enforce the agreement according to

20   its terms.  We don't care about, you know, some side

21   conversation that somebody from one -- one side may have

22   said to another.  When you -- when you sign up, you sign up

23   to those terms.

24          And, Your Honor, it bears noting that these terms

25   came from GENBAND and, frankly, they came from the same

1    counsel that represented -- the same law firm, at least,

2    that represented the buyer in this Sienna deal which had the

3    same kind of language and was construed in exactly the same

4    way.

5            THE COURT:  And that's why you've raised the

6    significance of the Sienna transaction?

7            MR. HERRINGTON:  Yes, Your Honor.

8            This also was reflected -- Nortel's understanding

9    of this -- of this provision was reflected in the estimated

10   purchase price that it provided on May 25th of last -- of

11   this year and provided for a deferred profit amount that's

12   essentially the same as what Nortel is -- is -- the figure

13   you get when you apply the correct definition of deferred

14   profit amount.

15           So that was provided three days before closing.

16   There was no objection from GENBAND.  They closed on those

17   terms and, in fact, that provision or that estimate dictated

18   the amount of cash that they had to come forward with at

19   closing.  So it wasn't an insignificant matter.

20           Your Honor, just to note, that issue -- the fact

21   that this was -- you know, there was course -- there was

22   something that happened even before closing on this very

23   issue is discussed in Paragraph 6 of the David Glass

24   declaration, and Paragraph 8 of the David Glass declaration

25   discusses the Sienna deal.

1          So, Your Honor, all of these are reasons why not

2    only is it the right thing for this Court to decide this

3    issue -- again, the issue that Nortel is asking GENBAND --

4    asking this Court to decide.  GENBAND may like there to be

5    some other dispute.  If it has some other dispute we -- they

6    can deal with that separately.  This is the dispute that

7    Nortel is asking the Court to decide.

8          I'll just leave with that closing thought from

9    the <u>HCS Investments</u> case; that the very fact that the

10   arbitration mechanism calls for an accountant to decide the

11   kind of issues that are subject to that mechanism itself

12   supports the conclusion that when you have not an accounting

13   dispute, but a legal dispute that's implicated by the parole

14   evidence rule, the integration clause in the contract, the

15   fact that this was a court-approved sale process that was a

16   very public process, those are all reasons why in addition

17   to being the correct response, it's an important -- the

18   correct treatment of this issue, it's important for this

19   Court and the Ontario Court to be the ones to decide this

20   simple dispute that Nortel is asking the Court to decide.

21          THE COURT:  Thank you.

22          MR. HERRINGTON:  Thank you, Your Honor.

23          THE COURT:  Thank you, Mr. Herrington.

24          MR. CONNELLY:  Thank you, Your Honor.

25          THE COURT:  Yes, Mr. Connelly.

1          MR. CONNELLY:  I think I've already said all I

2   have to say about those cases.

3          THE COURT:  Yes.

4          MR. CONNELLY:  I'm going to respond to a few

5   points that counsel raised.

6          First, on this notion that the Court approved the

7   contract, of course it did, and part of what the Court

8   approved -- excuse me -- too many gesticulations.

9          Part of what the contract the Court approved was,

10  in fact, the arbitration clause and when the Court retains

11  the authority to enforce the contract and, of course, when

12  it enforces the contract is bond by the federal arbitration

13  act and all the principles and cases that govern us.  We

14  don't think that really cuts against us in any way.

15         But I would like to get directly to the heart of

16  this because there's a very important thing that counsel

17  said when he was talking to you that I want to get to.

18         If we could have Slide 10, please, which is this

19  definition of deferred profit amount.  And what counsel said

20  was it doesn't make any sense for GENBAND to get revenues

21  from stuff that went on before the closing.  That's what he

22  said.  That will be in the transcript, but that's not what

23  the contract says.

24         The contract uses the term "deferred revenues for

25  services to be performed or products to be provided by the

1 business after the closing date," and that's a very

2 important distinction because that's an accounting term.

3 And if you look at the Kawecki affidavit, Ms. Kawecki, an

4 account at GENBAND, goes through the principles under GAP

5 and the Nortel accounting principles that explain how you

6 calculate deferred revenue.

7          But, in general, the way it works is this.  If

8 you are paid in advance for some services, you are not

9 necessarily at that moment in history entitled to take that

10 into income unless you can also say that under GAP you have

11 earned that money.  You must meet certain criteria under

12 GAP.

13          And I know, Your Honor, we sent you the Nortel

14 accounting principles --

15          THE COURT:  Yes.

16          MR. CONNELLY:  -- and we did use recycled paper -

17 -

18          THE COURT:  Okay.

19          MR. CONNELLY:  -- and we double-sided it.  But --

20 but there are tons and tons of rules about that.  But, in

21 essence, what they say is, until you have satisfied the GAP

22 criteria for which you can say you have earned that payment,

23 even though you have received it, you cannot take it into

24 income, and every penny of it remains deferred revenue.

25          Now why is that important because what's going on

1    here is a balance sheet is being prepared as of a date and

2    time as every balance sheet does.  And the question is, if,

3    as of that point in time, there is still work to be done

4    after the closing date with respect to an account receivable

5    -- for products to be provided for which an account

6    receivable has been recorded or cash has been received,

7    well, under GAP every penny of it is still deferred revenue

8    regardless of when you can say you earned it.  You don't get

9    to say, well, you know, I've mowed ninety percent of the

10   lawn and so I can take ninety percent of it into -- into

11   income, unless GAP says that ninety percent does it.

12        And that's why it's important to keep in mind it

13   says deferred revenues, and it's important to keep in mind

14   that it refers to the accounting principles, the Nortel

15   accounting principles and GAP.  And that last sentence that

16   says, just so nobody's confused here, let's make it

17   absolutely clear for the avoidance of doubt that deferred

18   revenue will be applied consistent with the Nortel

19   accounting principles.

20        So when counsel stands up and says it doesn't

21   make sense for them to get revenues from before the closing,

22   whatever.  But it makes perfect sense for us to get the

23   deferred revenues because that's what it says and that's

24   what it means.  And the Kawecki affidavit explains all that.

25        Now one other point that I'll note, if you look

1    at the definition -- and this is -- now I will delve briefly

2    into the merits because I can't help myself.

3              THE COURT:  Incidentally, I --

4              MR. CONNELLY:  Yeah.

5              THE COURT:  -- I can't imagine that the Nortel

6    accounting principles are inconsistent with GAP.

7              MR. CONNELLY:  They're actually not on this

8    point.  We don't believe they are.  I mean, if -- if we dig

9    deep into the weeds, I'm not an accountant.  I don't even

10   play one on TV, but I -- but my understanding is that they

11   are, in fact, consistent.

12             But the interesting thing is, if you follow

13   Nortel's argument here and you say that what's really going

14   on in this definition is you only look at the revenues that

15   -- that happen to -- to be earned in some, you know,

16   esoteric sense after the closing date and you ignore those

17   GAP rules, there's never going to be anything to subtract

18   under Clause 2.  It will never matter under their approach,

19   which, again, leaves us in that wonderful contractual zone

20   where you can never win, where you're left saying, yeah.

21   Those words are there, but they're not there for any

22   particular reason.

23             Because if you interpret it their way, there's

24   never anything to subtract, ever.  But if you interpret it

25   consistent with the definition of deferred revenues, as that

1   concept has been explained in GAP and in the Nortel

2   accounting principles, everything makes absolutely perfect

3   sense.

4           So we're not here asking to rewrite anything.

5   We're asking the Court to apply -- the arbitrator, I should

6   say, to apply the definitions that are baked right into the

7   contract, including deferred revenues, an accounting

8   concept.

9           And I think it's important to understand -- and,

10  of course, what they're trying to do to sort of split it and

11  say, well, yeah.  Some of the deferred revenue, you know,

12  we're going to look at a point in time and say, well, some

13  of that deferred revenue we're going to attribute to pre-

14  closing and some of it we're going to attribute to post-

15  closing.  Even doing that makes no sense under GAP.  Under

16  GAP it all has to stay deferred revenue until you meet the

17  point under GAP where it's not and where it becomes income.

18          Now here's the thing that I do want to talk

19  about.  I'm not going to get into the specifics of the

20  cases, but as a general matter, when all the cases we've

21  talked about were cases -- were instances where the Court

22  was asking like, okay -- and counsel, by the way, and I

23  believe the transcript will reflect this, said we're trying

24  to apply a different provision of the contract and bring

25  that into the arbitration.  Your Honor, it's the same

1    definition.  It's not a different provision of the contract.

2    It's the very same definition that they're talking about.

3    They're trying to parse out about nine words of it in the

4    thirty-fourth lines.

5            Now the cases we're talking about where the

6    Courts struggled with whether a claim under the reps and

7    warranties section, a completely different section of the --

8    of the contract was nonetheless subject to arbitration

9    because it dealt with an arbitrable issue, that's one thing.

10           What they're asking the Court to do is parse it

11   within the very definition itself.  In fact, not just within

12   the very definition, but within one sentence of the

13   definition, and that the Court should find that it's -- you

14   know, it's arbitrable for, you know, the first several words

15   of that sentence and then it stops being arbitrable for a

16   few until it hits a comma and now it's arbitrable again.

17           And I would submit, Your Honor, that the very

18   notion of doing that is completely inconsistent with

19   everything the Court's have said about the presumptions of

20   arbitrability and the fact that if it has any -- if there's

21   any way to look at it that would be consistent with making

22   this arbitrable, then it must be sent to arbitration.  That

23   sort of hair-splitting is simply not what you do under the

24   Federal Arbitration Act.

25           Now counsel also said that there is no dispute

1  about the accounting issues.  I -- I feel almost like *res*

2  *ipsa loquitor* deals with that.  I don't know if I -- I think

3  our mere presence here should show that there's a dispute

4  about the accounting issues.  There -- there absolutely is.

5  The Kawecki affidavit says that.

6          And another point that counsel made is he

7  correctly noted that the parties have been talking to each

8  other about the accounting, but if -- if you heard what he

9  said was because they need to for the post-closing

10 accounting.  Yeah.  Right.  Because -- because GENBAND has

11 to do an opening balance -- an opening statement, okay.

12 That is completely different from what we're talking about

13 here which is the closing statement as of the pekoe second

14 before the deal closed.  What GENBAND's doing now is

15 purchase accounting.  That's just a completely different

16 animal.

17         And so the fact that GENBAND is doing its

18 diligence as it must and talking to Nortel's accountants to

19 understand how they did it so that GENBAND can then prepare

20 its opening balance has nothing to do with whether there's

21 agreement on this issues.

22         Now I -- I do have Ms. Kawecki here and I'm

23 prepared to put her on the stand to explain all that, but I

24 would make it as a proffer and, certainly, if the Court

25 would like to hear her I'm more than happy to do that.  But

1  that's what she'll admit -- that's what she'll tell you;

2  that, you know, they've never told Nortel, yes.  We agree

3  with your accounting under the -- under the closing

4  statement.  That's, of course, why we had the dispute

5  notice.  That's, of course, why we tried and failed to agree

6  after fifteen days.  There's never been any subsequent

7  communication to say, oh, yeah.  Now we're good.

8           And I'm -- again, I'm happy to put Ms. Kawecki on

9  the stand to say all that, but I would just make that

10 proffer.

11          THE COURT:  That is not -- I don't recall that

12 being in her declaration.

13          MR. CONNELLY:  No.  That -- what I just said was

14 not --

15          THE COURT:  Yes.

16          MR. CONNELLY:  -- in her declaration.

17          THE COURT:  Yes.

18          MR. CONNELLY:  The fact that they disagree is,

19 but the part about --

20          THE COURT:  Right.

21          MR. CONNELLY:  -- you know, going through it to -

22 - to deal with the opening balance was not.

23          THE COURT:  Okay.

24          MR. CONNELLY:  One other point -- and, again, I'm

25 happy to put Ms. Kawecki on the stand, but I think it's kind

1   of self-evident.  Counsel noted that we received this

2   estimated purchase price adjustment notice on May 25th,

3   three days before the closing and they say, well, you never

4   objected to our deferred profit amount there.

5         Well, if you look at the -- if you look at the

6   document, there's absolutely nothing in there that says how

7   they calculated it.  There's no way for us to have known how

8   they calculated it.  We didn't have the documents showing

9   how they calculated it.  It's just a piece of paper with a

10  number on it.

11        You know, so to -- and -- and, of course, under

12  the contract we're not obligated to respond to that notice

13  until thirty days later.  So it really doesn't get them very

14  far to say, well, you didn't -- you didn't do it before the

15  closing.  Well, why would we?

16        And, finally, there was some mention of, you

17  know, what other parties might have thought and what other

18  parties might have done when -- when they looked at this,

19  and I think it's also important to keep in mind what these

20  parties actually said to each other and what they told us.

21        And now I would refer the Court to the Martin

22  affidavit, because if you look at it Exhibit 1 is an email

23  from Nortel's chief negotiator and in it it talks about the

24  deferred revenue amount and it says, you know, we're

25  expecting that to be around 62 million and we don't expect

1  that to move very much.  Exhibit 2 is a working capital

2  statement.  It's the working capital -- it's a presentation

3  on working capital.  It's the one that was in the data room

4  at the time of that email.

5           And if Your Honor looks at Page 13 of that

6  document where it talks about deferred revenue and it lists

7  various categories.  It lists the short-term deferred

8  revenue and the short-term deferred costs, the long-term

9  deferred revenue and the long-term deferred costs.  And if

10 you add them all up you get 62 million.

11          And what's important to note about it is on that

12 page there is actually a breakdown of the deferred revenue

13 and it says this much of it is pretty much already done.

14 You're not going to have to spend a lot of working capital

15 to earn it.  It's already covered by the deferred cost asset

16 that we have, and then this much of it you're going to have

17 to spend some money to earn.

18          And they included all of it in the 62 million

19 that they said in their email should give us comfort to

20 close on this deal.  That's what they said to us; that we

21 were going to get both of it -- all of it, and that wasn't

22 even remotely surprising to us because that's exactly what

23 GAP says you do with deferred revenue.

24          And with that, Your Honor, unless Your Honor or

25 Justice Morawetz has any questions for me, that's all I have

1    to say.

2              Would -- would Your Honor like me to put Ms.

3    Kawecki on the stand or is my proffer acceptable?

4              THE COURT:  Well, let me ask Mr. Herrington.

5              MR. HERRINGTON:  Exactly what is your proffer?

6              THE COURT:  If Ms. Kawecki were called to the

7    stand to testify, she would testify that --

8              MR. CONNELLY:   If Ms. Kawecki were called to

9    the stand to testify, she would -- she would explain that

10   the discussions have been about the opening balance; that

11   there has never been a statement by GENBAND that we agree

12   with the accounting that Nortel did in the -- in the closing

13   statement process; that there still are disagreements about

14   that; and that the -- what I explained before about at the

15   time of the closing we did not have the information from

16   which we could determine how the deferred profit amount in

17   the May 25th estimated statement was calculated.  That's

18   what she would say.

19             MR. HERRINGTON:  I -- Your Honor, I don't have

20   any objection to her saying that.  I have a response to both

21   of those matters based on evidence from the -- from the

22   Glass declaration.

23             MR. CONNELLY:  Well, why don't I put her on the

24   stand and we'll just do it that way, Your Honor.  Maybe that

25   would be best.

1    THE COURT:  All right.

2    MR. CONNELLY:  All right.

3    THE COURT:  Very well.

4    MR. CONNELLY:  Thank you.

5    THE COURT:  And this is not going to the

6  underlying merits.  This is going strictly to the --

7  correct?

8    MR. CONNELLY:  She is merely --

9    MR. HERRINGTON:  Your Honor --

10    MR. CONNELLY:  -- responding to the Glass

11  affidavit.

12    MR. HERRINGTON:  Your Honor, it clearly goes to

13  the merits.  There's no doubt --

14    MR. CONNELLY:  No.

15    MR. HERRINGTON:  -- about that.

16    MR. CONNELLY:  Your Honor, Ms. Kawecki is

17  responding to the Glass affidavit that we received about

18  sixteen hours ago.  If I had had time to put in a counter-

19  declaration I would have.

20    THE COURT:  When I say the merits I mean whoever

21  is called upon to decide the dispute --

22    MR. CONNELLY:  Oh, the accounting issues?

23    THE COURT:  Yes.

24    MR. CONNELLY:  Yeah.  It's not really about that.

25  It's really just responding to Mr. Glass's affidavit.

1          THE COURT:  Okay.

2          Mr. Herrington, for that limited purpose?

3          MR. HERRINGTON:  Well, again, it -- it goes to

4   the merits of whose right about the interpretation of

5   deferred profit amount is my understanding.

6          THE COURT:  Okay.

7          MR. HERRINGTON:  So I think it does go to the

8   merits.

9          MR. CONNELLY:  Well, Your Honor, I -- I would say

10  it's rebuttal because I'm just responding to their affidavit

11  that they filed last night.

12         THE COURT:  Well, to me the issue to be decided

13  is who -- who makes this determination on the -- who makes

14  the interpretation, not so much how it's interpreted.

15         MR. CONNELLY:  I agree with Your Honor and the

16  only -- the only reason I would be calling Ms. Kawecki to

17  the stand right now is to respond to certain state -- some

18  specific statements that were made in the Glass declaration,

19  specifically the point about how we never responded to the

20  closing statement -- to their estimate before closing and,

21  second, the statement that there is no disagreement about

22  the accounting.  I don't -- I don't really think there's

23  much room for disagreement about those points.  But that's

24  really the limited purpose for which I call her.

25         MR. HERRINGTON:   Again, I don't have any problem

1   with the proffer; that that's what she's going to say if

2   she's put on the stand.  And --

3                THE COURT:  All right.  And you -- you would not

4   wish to cross-examine Ms. Kawecki on those points.  Is that

5   correct?

6                MR. HERRINGTON:  Well, actually, then maybe we

7   should -- maybe we should put her on the stand --

8                THE COURT:  All right.

9                MR. HERRINGTON:  -- as to the issue -- as to the

10  --

11              (Laughter)

12              MR. HERRINGTON:  You got a laugh in Canada.

13              THE COURT:  Let's do it, then.  Let's --

14              MR. HERRINGTON:  Let's do it.

15              MR. CONNELLY:  All right.

16              THE COURT:  -- call Ms. Kawecki to the stand.

17              Ms. Kawecki.

18              If you'll remain standing while we have you

19  sworn, Ms. Kawecki.  Thank you.

20              THE CLERK:  Raise your right hand and state your

21  full name for the court's record and spell it.

22              THE WITNESS:  Misty Kawecki, K-A-W-E-C-K-I.

23              MISTY KAWECKI, WITNESS FOR GENBAND, SWORN

24              THE CLERK:  You may be seated.

25                           DIRECT EXAMINATION

1 BY MR. CONNELLY:

2 Q      Good morning, Ms. Kawecki.

3 A      Good morning.

4 Q      Where -- where are you presently employed?

5 A      I'm employed at GENBAND Holdings Company.

6 Q      How long have you been working there?

7 A      Fifteen months.

8 Q      Have you been involved in this whole closing statement

9 issue?

10 A      I have been.

11 Q      Ma'am, I'm going to hand you a document that's -- I

12 believe is in evidence now, the declaration of David Glass.

13          MR. CONNELLY:  Your Honor, may I approach the

14 witness?

15          THE COURT:  Yes, you may.  And let me make it

16 clear that the declarations have been admitted into evidence

17 --

18          MR. CONNELLY:  Thank you, Your Honor.

19          THE COURT:   -- so that we don't have that issue.

20 BY MR. CONNELLY:

21 Q      Now, Ms. Kawecki, do you know Mr. Glass?

22 A      I do.

23 Q      How do you know him?

24 A      We interacted in the process of trying to understand

25 the balance -- the closing balances.

1    Q     If I could direct your attention to Page 3 and

2    Paragraph 6 of Mr. Glass's declaration.  He states that

3    pursuant to Section 2.2.2 of the sale agreement, Nortel

4    provided to GENBAND on May 25th, 2010 an estimated purchase

5    price statement which identified an estimated deferred

6    profit amount of 37,867,000.  Do you see that?

7    A     I do.

8    Q     And he -- he references a true and correct copy of the

9    estimated purchase price statement attached as Exhibit A.

10   Do you -- do you see that, too?

11   A     I do.

12   Q     If you could just put your finger where the -- that

13   document is because we're going to kind of be going back and

14   forth for a second here.

15   A     Okay.

16   Q     It -- first of all, is Exhibit A -- does that appear

17   to you to be the estimated purchase price statement that was

18   delivered on May 25th?

19   A     Yes, it does.

20   Q     And that was three days before the closing?

21   A     That's correct.

22   Q     Okay.  Now is there anything in the estimated purchase

23   price statement that tells you how the estimated deferred

24   profit amount was calculated?

25   A     No, it does not.

1   Q      What would you need to determine how that estimated

2   deferred profit amount was calculated?

3   A      I would need a -- an extensive calculation -- detailed

4   calculation detailing all of the underlying transactions of

5   that deferred profit amount as well as deferred costs.

6   Q      Did you have that on May 25th of 2010?

7   A      I did not.

8   Q      Did you have it on the 26th?

9   A      No, sir.

10  Q      Did you have it on the 27th?

11  A      No.

12  Q      Did you have it at the time of the closing on May

13  28th?

14  A      No, I did not.

15  Q      And as of May -- the closing on May 28th, 2010,

16  whether you had those documents or not, did GENBAND know how

17  Nortel had, in fact, calculated that estimated deferred

18  profit amount?

19  A      No.  It took quite a bit of time to dig down and

20  understand the calculation --

21  Q      If you --

22  A      -- as well as --

23  Q      -- turn down to Paragraph 7, in the second sentence

24  Mr. Glass says:

25              "In fact, I understand that accounts from Nortel

1                    and GENBAND discussed and agreed upon the

2                    methodology for calculating the deferred revenue

3                    that GENBAND would assume upon the acquisition of

4                    the CVAS business."

5                    Do you see that?

6   A      Yes, I do.

7   Q      Is that true?

8   A      No, sir.  We obviously have a difference in the

9   methodology, but, also, the calculation and while we did not

10  discuss -- we did discuss the methodology by virtue of a

11  disagreement notice and a closing statement, we did not

12  discuss the underlying calculations or agreement thereof of

13  each methodology.

14  Q      If you would turn to Page 4 I am going to direct your

15  attention to Paragraph 9, and there if you look at the --

16                    MR. HERRINGTON:  Your Honor, I think this is

17  going beyond what counsel said he was going to be putting

18  the witness on the stand for.  He's already covered the two

19  issues that he said he was going to be putting --

20                    MR. CONNELLY:  Well, there's -- there's more on

21  those --

22                    MR. HERRINGTON:  -- the witness on the stand --

23                    MR. CONNELLY:  -- two issues in here, Your Honor.

24                    THE COURT:  Well, let's hear -- let's hear the

25  question.

1          MR. CONNELLY:  All right.

2   BY MR. CONNELLY:

3   Q     On Paragraph 9, Mr. Glass says:

4              "Ms. Kawecki's affidavit contains numerous

5              statements concerning accounting principles

6              relating to revenue recognition, but the

7              definition of deferred profit amount makes no

8              reference to revenue recognition and those

9              principles have no impact on the present

10             dispute."

11             Do you agree with that?

12  A     Inherently -- I do not agree with the statement

13  because inherently deferred revenue is the inverse of

14  revenue recognition and, therefore, understanding the

15  account principles of revenue recognition are important to

16  understand the deferred revenue.

17  Q     And then in the next paragraph, Paragraph 10, Mr.

18  Glass states that -- he actually quotes your affidavit where

19  he says -- he quotes you as saying:

20             "Nortel's interpretation of deferred profit

21             amount seeks to provide Nortel revenue for

22             services to be performed or products to be

23             provided before the closing date, but for which

24             revenue should not properly be recognized

25             pursuant to Nortel accounting principles and

1        GAP."

2        Do you see that?

3    A    Yes, I do.

4    Q    What did you mean by that sentence?

5    A    We were simply trying to clarify that the bifurcation

6    on the closing balances was not in accordance with GAP as of

7    the closing statement.  That is generally an opening balance

8    sheet procedure under FAS 141(R) which is business

9    combinations accounting.

10    Q    And if you could look to Paragraph 11, Mr. Glass

11    states:

12            "I am not aware of any outstanding discrepancies.

13            Accountants at Nortel and GENBAND have reconciled

14            all accounting matters in connection with the

15            CVAS purpose price adjustment."

16            Do you see that?

17    A    Yes, I do.

18    Q    Is that true?

19    A    No, it is not.  We have seeked to understand each

20    other's methodologies, but we have not discussed further

21    discrepancies in the calculations.

22    Q    Why have you been seeking to understand each other's

23    methodologies?

24    A    Well, it's very clear that we differ in methodology

25    and, therefore, we have not pulled back the onion to

1    actually understand or to mutually agree on any calculations

2    below the methodology level.

3    Q    All right.  Is there a reason why you've been trying

4    to understand how it is they went and did their

5    calculations?

6    A    For purposes of my opening balance sheet, the acquirer

7    is required to state the deferred revenue balance based on

8    very complicated rules under the business combination rules

9    and I have sought to understand the accounting they have

10   done on our behalf.

11   Q    And leaving aside your disagreement about the

12   methodology, do you have -- do you have any disagreements

13   with Nortel about the calculations within their methodology?

14   A    Yes, I do.

15   Q    Can you give us an example?

16   A    One specific example is related to completed

17   contracts, a category of arrangements within deferred

18   revenue in which they have bifurcated the balances based on

19   billings, not based on fulfilled or unfulfilled services.

20   Q    And then Mr. Glass refers to an email that he attaches

21   as Exhibit B.  Do you see that email in there, ma'am?

22   A    Yes, I do.

23   Q    And what was the purpose of your sending this email?

24   Why did you send it?

25   A    The purpose of this email was in response to Nortel's

1    disagreement and it is where I was seeking to clarify a

2    duplication error in their calculation.

3    Q    Were you purporting to identify every single remaining

4    dispute?

5    A    No, I was not.

6    Q    Did you ever purport to tell Nortel, this is the only

7    dispute we have remaining amongst us?

8    A    No.  We did not have that conversation.

9         MR. CONNELLY:  Nothing further, Your Honor.

10        THE COURT:  All right, Mr. Connelly.  Thank you.

11        Mr. Herrington.

12        MR. HERRINGTON:  So, Your Honor, I'll -- if I may

13   ask a few questions of Ms. Kawecki, and then I'll respond to

14   the arguments that GENBAND made, and then I think we're --

15   we'll be finished.

16        THE COURT:  All right.

17        MR. HERRINGTON:  And I would note, Your Honor,

18   this is all byplay into extraneous issues, certainly

19   extraneous to the issue that we're asking the Court to

20   decide.

21                        CROSS-EXAMINATION

22   BY MR. HERRINGTON:

23   Q    Good morning, Ms. Kawecki.

24   A    Good morning.

25   Q    If you could, please, turn to Paragraph 6 of the

1  declaration of David Glass.

2  A      Okay.

3  Q      That refers the statement that Nortel provided to

4  GENBAND three days before closing, correct?

5  A      Yes, sir.

6  Q      That was the estimated purchase price?

7  A      That's correct.

8  Q      And that estimated purchase price dictated the amount

9  of cash that GENBAND had to come forward with and pay at

10  closing.  Is that correct?

11  A      That's correct.

12  Q      Okay.  Now the figure for deferred profit amount in

13  that estimated purchase price was $37,867,000, correct?

14  A      That's correct.

15  Q      Okay.  Now, Ms. Kawecki, didn't GENBAND have some

16  information about the total amount of deferred revenues on

17  the books of the CVAS business by that time?

18  A      We had audited -- or we had -- at least had an audited

19  financials as of March 31st.

20  Q      Okay.  And the figure for deferred revenues was much

21  higher than 37 million, was it not?

22  A      Deferred revenues was much higher than 37 million,

23  yes.

24  Q      So this was a clear indication to you that Nortel

25  understood the contract not to include all deferred

1  revenues, correct?

2  A      No, sir.  It was not a clear indication because

3  deferred profit introduces two concepts:  Deferred revenue

4  and deferred costs, and, therefore, it was not clear as to

5  the calculation that Nortel was submitting.

6  Q      Well, did you have information about deferred costs as

7  well?

8  A      In the unaudited financial statements we also had

9  deferred costs.

10 Q      And what was the difference between deferred revenue

11 and deferred costs?

12 A      I do not recall.

13 Q      But it was significantly higher than $37 million, was

14 it not?

15 A      I don't recall.

16 Q      If the record reflects that it was higher than $37

17 million, then that would suggest that Nortel is applying the

18 definition of deferred profit amount to include only

19 deferred revenues for services to be performed or products

20 to be delivered after the closing date, correct?

21 A      You're making an implication that I -- I'm -- I'm not

22 aware of.

23 Q      Okay.  But --

24 A      It would -- it would suggest that there was a

25 difference in the calculation.

1   Q      And you had the information in that unaudited

2   financial statement that gave you both deferred revenue and

3   deferred costs, correct?

4   A      As of March 31st.  That's correct.  That doesn't mean

5   that it would be the same amount as of the closing date.

6   Q      But was that what's happened, that there's been some

7   huge change in the balance sheet between March and May?

8   A      As of -- in the actual results that --

9   Q      Correct.

10  A      -- we know as of now?  There was -- there was some

11  differences between March 31st and May 28th.

12  Q      But not $30 million worth?

13  A      There was not $30 million worth of variances.

14  Q      And it is true -- did you -- did you review the

15  deferred -- the estimated purchase price when GENBAND

16  received it?

17  A      I did not.

18  Q      But presumably somebody at GENBAND reviewed that

19  document?

20  A      I did not receive it.

21  Q      But presumably somebody at GENBAND reviewed it since

22  that --

23  A      I can't speak on other people's behalf.  I didn't --

24  Q      Do you --

25  A      -- receive it.

1    Q    Do you have any reason to believe that -- that nobody

2    at GENBAND reviewed it?

3    A    I have -- I have no basis to answer that question.

4    Q    Okay.  And, again, the amount of cash that GENBAND

5    paid on closing was based on this estimated purchase price?

6    A    That is my understanding.

7    Q    Ms. Kawecki, let's look at Paragraph 7 of the David

8    Glass declaration.  This describes a process that Nortel and

9    GENBAND have been going through in order to determine the

10   amount of deferred revenues that would be taken onto

11   GENBAND's books upon acquisition of this CVAS business.  Is

12   that correct?

13   A    Yes, sir.

14   Q    Okay.  And what is that figure?

15   A    I'm sorry.  The figure that we are trying to

16   determine?

17   Q    No.  That you -- that you were taking -- deferred --

18   the amount of deferred revenues --

19   A    Uh-huh.

20   Q    -- that GENBAND is taking onto its books upon the

21   acquisition of this business?

22   A    I don't know that figure off the top of my head.

23   Q    Is it fair to say it's in the mid-thirty-million-

24   dollar range?

25   A    I don't recall the number of -- are you talking about

1    deferred profit or deferred revenue?

2    Q      Deferred revenue.

3    A      The net -- the amount of deferred revenue that we

4    calculated as of the closing date or under our procedures of

5    business combinations accounting on the opening balance

6    sheet date?

7    Q      I'm asking -- just to be clear, I'm asking about the

8    process described in Paragraph 7 of --

9    A      Uh-huh.

10   Q      -- the David Glass declaration.

11   A      So the amount of deferred revenue that was provided to

12   us as of the closing balance sheet date was approximately

13   101 million.

14   Q      No.  I -- the process -- okay.  So and then GENBAND

15   went through a process to decide how much of that will go

16   onto GENBAND's books, correct?

17   A      No.  We went through a process to calculate what would

18   opening balance sheet be consulting valuation experts.

19   Q      Right.  And that -- one element of that is to decide

20   how much deferred revenue would be on GENBAND's books?

21   A      That -- that's correct.

22   Q      And, again, what is the figure?

23   A      I don't know off the top of my head, sir.

24   Q      But is it fair to say somebody in your staff could

25   provide that figure?

1    A      Somebody on my staff could provide that figure.

2    Q      And would it surprise you to know that it's in the

3    mid-thirty-million-dollar range?

4    A      That sounds low to me, sir.

5    Q      That sounds low to you?

6    A      Yes.

7    Q      Okay.  But we can get that information?

8    A      Yes, we can.

9    Q      Okay.

10            (Pause)

11            MR. HERRINGTON:  Your Honor, I believe that's all

12   I have for Ms. Kawecki.

13            THE COURT:  Thank you.

14            Any redirect, Mr. Connelly?

15            MR. CONNELLY:  No, Your Honor.

16            THE COURT:  Ms. Kawecki, thank you.  You may step

17   down, ma'am.

18            THE WITNESS:  Thank you.

19            THE COURT:  Thank you.

20            MR. HERRINGTON:  Your Honor, I'll address briefly

21   what the testimony of Ms. Kawecki --

22            THE COURT:  Yes.

23            MR. HERRINGTON:  -- said and what it addresses.

24            Again, part of the record -- and this goes to the

25   merits of what is the proper definition of deferred profit

1   amount -- is Nortel provided to GENBAND before closing a

2   statement of the estimated purchase price and that figure

3   was $37 million.  Anybody looking at that would know that

4   that figure would -- would not reflect all of the deferred

5   revenue on the books of the CVAS business or all of the

6   deferred revenue minus the cost.

7        And Ms. Kawecki confirmed that they had the

8   figures, at least as of March, so they knew what those

9   figures would be.  The $37 million is what you get when you

10  apply the definition of deferred profit amount correctly.

11       And so there was notice to GENBAND before closing

12  of what this definition meant.  And, again, GENBAND had

13  information to allow them, maybe not precisely, but

14  certainly to come pretty close to understand what the figure

15  would be under their approach and understand that Nortel was

16  applying the figure based on the definition of deferred

17  profit amount.

18       Ms. Kawecki also described a process -- and this

19  is described in Paragraph 7 of the David Glass declaration -

20  - where the parties went through this same kind of, you can

21  call it bifurcation where you say, okay.  The business has a

22  certain amount of deferred revenue on its books, but GENBAND

23  is not going to take on all of that revenue.  It's going to

24  take on revenue for things that -- where something remains

25  to be done on GENBAND's part, some service remains to be

1   provided or a product remains to be delivered.  And that's

2   going to be the figure.  They've gone through that process.

3   They agreed on a methodology.

4           Okay.  So that was in answer to your question of

5   Your Honor's if -- if -- once I construct -- once the Court

6   construes this and enforces a clear meaning, would there be

7   any remaining dispute.  GENBAND -- Nortel believes the

8   answer is no, because it's the same kind of process that the

9   parties already went through.

10          But that's an issue.  If there is an accounting

11  dispute, once Your Honor enforces the clear terms of

12  deferred profit amount, we'll address that.  If there's

13  truly an accounting dispute, we would want that decided by

14  the county.  But that, again, is not the dispute that Nortel

15  is asking the Court to determine.

16          I'll address briefly, again, this point that

17  counsel for GENBAND made and said, well, there are all these

18  references to Nortel accounting principles.  Again, all of

19  the items that both sides proposed to include comply with

20  Nortel's accounting principles.  That is not where the

21  dispute lies.  There simply is no dispute.  All of the items

22  that GENBAND would like to include meet that criteria.  All

23  the times that Nortel proposed to include meet that

24  criteria.  Where the division comes is GENBAND doesn't like

25  the fact that the deferred profit amount definition says,

1    okay.  You look at deferred revenues, but what do you count?

2    You count the deferred revenues for -- and we can all sign

3    along at this time -- things that happen after closing.

4              And that, again, is the dispute that Nortel is

5    asking this Court to decide.  It's a dispute about the

6    definition of deferred profit amount.  Frankly, GENBAND has

7    never said that this -- they're not trying to do what we say

8    they're trying to do.  They're not trying to change after to

9    include before.  They've never said that.  And if there --

10   once the Courts say after means after.  It doesn't mean

11   before.  Then if there is some accounting dispute, if

12   there's some calculation issue, the parties will deal with

13   that and we don't need to impose on the Court for that

14   issue.

15             But we -- what we do need the Court to do is

16   enforce this clear definition, and for all the reasons we

17   said.  There's an integration clause.  This was a public

18   auction process.  It's important that the economics don't

19   get changed by some backdoor argument that tries to read out

20   of the definition of deferred profit amount the words

21   "after."

22             Thank you, Your Honors.

23             THE COURT:   Thank you.

24             MR. CONNELLY:  Very briefly, Your Honor.

25             THE COURT:  Yes.  Mr. Connelly, of course.

1          MR. CONNELLY:  Okay.

2          At the risk of creating an international incident

3    by -- by going on too long, just very briefly.

4          On the point about the closing statement, I think

5    if we had tried to not close Your Honor would have had

6    something to say about that and it probably would have been

7    something like, well, counsel, that's what your proposed

8    closing purchase price adjustment is for.

9          But the main point I wanted to make was the

10   suggestion that's been made here today -- and I mentioned

11   before about parsing even within a sentence and saying some

12   parts of that sentence are arbitrary and some are other --

13   what counsel was saying is, well, you should go first.  You

14   should first tell us what the contract means and then and

15   only then allow the arbitrator to go.  And that's exactly

16   what the arbitration act says not to do.

17         It says -- and the Court in the CompuCom case

18   makes this very clear -- the Court is to stay its

19   proceedings and allow the arbitration to proceed first and

20   let those issues be sorted out.  And that's even in a

21   situation where you can divide them, and as we've said here

22   and I won't repeat it yet again, we don't think you can.

23   It's all part of the same definition.  The accounting

24   concepts are baked right in.

25         Thank you very much, Your Honor.  I appreciate

1 | your patience.

2 |          MR. CONNELLY:  Thank you, Mr. Connelly, of

3 | course, and Mr. -- Mr. Herrington as well.

4 |          MR. HERRINGTON:  Thank you, Your Honor.

5 |          MR. KAHN:  Good morning, Judge Gross.

6 |          THE COURT:  Good morning.

7 |          MR. KAHN:  Good morning, Justice Morawetz.  Brad

8 | Kahn, Akin, Gump, Strauss, Hauer & Feld on behalf of the

9 | official committee of unsecured creditors.  I'll be brief

10 | and I'll try not to repeat a lot of what has already been

11 | said because we've been going at this for a while.

12 |          Like the debtors, the committee believes that the

13 | dispute here is over the enforcement of the clear terms of

14 | the contract and should be before these courts rather than

15 | the accounting arbitrator.

16 |          And one point that the committee would like to

17 | particularly pick up on that the debtors made is that the

18 | sale agreement essentially forms the basis for the value

19 | that the debtors and their estates were ultimately or will

20 | ultimately be able to realize for these assets.

21 |          This definition and the terms of this agreement

22 | have been subject to a joint hearing before these Courts to

23 | approve the bidding procedures; to a public marketing

24 | process on which other bidders were told they had to bid

25 | based on these clear terms; a final joint hearing before

1    these Courts to approve the CVAS sale.  And, you know,

2    during this entire time the Courts, the parties, the

3    committee as a fiduciary for the debtors' unsecured

4    creditors here all relied on a clear understanding of the

5    terms of this contract to determine that GENBAND's bid was

6    highest and best.

7                   And with that, that will be all.

8                   THE COURT:  Thank you.

9                   Anyone else?

10                   MR. MATZ:  Good morning, Judge Gross and good

11   morning, Justice Morawetz.   Tom Matz, Milbank, Tweed,

12   Hadley & McCloy for the Ad Hoc Group of Bondholders.

13                   Just briefly I want to note for the Court that we

14   support the submissions that have been made this morning on

15   behalf of the debtors as well as what you just heard on

16   behalf of the unsecured creditors' committee.

17                   THE COURT:  All right.  Thank you.

18                   MR. MATZ:  You're welcome.

19                   THE COURT:  I'm sorry.  Ms. Kraidin, good

20   morning.

21                   MS. KRAIDIN:  Good morning, Judge Gross.  Lisa

22   Kraidin from Allen & Overy on behalf of the Canadian

23   debtors.  I will obviously defer to my colleagues in Canada

24   on the substance of their motion.  But just for purposes of

25   the U.S. record, the Canadian debtors support the U.S.

1   debtors' position as well.

2           THE COURT:  All right.  Thank you.

3           Justice Morawetz, I think that the --

4           JUSTICE MORAWETZ:  Judge Gross --

5           THE COURT:  -- arguments have been completed at

6   this end.

7           JUSTICE MORAWETZ:  Good.  Thank you very much,

8   Judge Gross.  It could very well be.  Does anybody require a

9   short break, comfort break at all?  I'm seeing some nods,

10  Judge Gross, so --

11          THE COURT:  All right.

12          JUSTICE MORAWETZ:  -- might I propose that we

13  take a short break of no more than ten minutes?

14          UNIDENTIFIED SPEAKER:  Can I just hand you up

15  something before you do?

16          JUSTICE MORAWETZ:  Yes, Mr. Mersky (phonetic).

17          MR. MERSKY:  All right.  You -- in the U.S.

18  hearing you heard reference to the declaration filed

19  yesterday.  The debtors here have put it in a third

20  supplemental motion record.  I'm just handing it up to the

21  Court on their behalf.

22          JUSTICE MORAWETZ:  Thank you.

23          THE COURT:  All right.

24          UNIDENTIFIED SPEAKER:  He also has the Kawecki

25  affidavit.

1    JUSTICE MORAWETZ:  Thank you very much, Mr.

2   Mersky.  So we'll stand adjourned for ten minutes.  Thank

3   you.

4    THE COURT:  Yes.  Thank you, Counsel.  Ten

5   minutes.

6    (Recess)

7    THE CLERK:  Please rise.

8    CANADIAN CLERK:  All rise.

9    THE COURT:  Thank you.

10    JUSTICE MORAWETZ:  Please be seated.

11    THE COURT:  Please be seated.

12    We've got our timing down well, Mr. Justice

13   Morawetz.

14    JUSTICE MORAWETZ:  Well, I think I would have to

15   sprint to beat you.  I mean, you just have to go across the

16   hall, so.

17    THE COURT:  Okay.

18    JUSTICE MORAWETZ:  Regardless of that, Judge

19   Gross, thank you for the time.  Mr. Dunphy has now put

20   himself in a position to make some remarks on behalf of

21   GENBAND, and he has already estimated he'll be approximately

22   twenty minutes.

23    MR. DUNPHY:  That is correct.  And I'll be

24   watching the clock.  You can throw things at me.

25    Thank you, Mr. Justice Morawetz and Mr. Judge

1  Gross.

2           As it was said a little while ago by Justice

3  Gross, I believe, this is not a motion about the merits.

4  This is a motion to decide who decides them.  And there

5  is --

6           JUSTICE MORAWETZ:  Let me have you just pause for

7  a second.  I think, sir, we do not need the audio from

8  the --

9           MR. DUNPHY:  U.S. Court.

10          JUSTICE MORAWETZ:  -- from the U.S. Court at the

11  moment.  I'm not sure how to reduce the feedback, Mr.

12  Dunphy.

13          Okay.  Go ahead, Mr. Dunphy.

14          MR. DUNPHY:  Thank you.

15          Now as I think that the Courts can both

16  appreciate, having heard the description of some of the

17  issues in the merits, it's a very slippery slope once we

18  start going down that path, a very slippery slope indeed

19  where we get into exactly what these definitions mean in the

20  context of Nortel accounting rules and GAP.  And our

21  submission is quite plainly that it is a fool's errand to

22  attempt to assert that there can be such neat and

23  hermetically sealed differences between accounting issues

24  and legal issues, and more fundamentally we say that is an

25  exercise which the contract itself tells you not to get

1    into.

2            There is no distinction between legal and

3    accounting issues, and as I think both judges will know, but

4    from all of the cases we've heard over the years, it is a

5    gray zone.  It is a not a black and white distinction.

6    Many, many, many contracts use accounting principles and

7    courts are called upon to decide them and have to get expert

8    evidence as to what they mean.

9            So we know what accounting principles are.  We

10   know what legal principles are and there is no bright line

11   between them.  So to suppose that the parties imagined the

12   existence of a bright line and failed to mention it is just

13   fantasy.  They didn't.  There is no filter in the contract

14   and the arbitration clause for accounting issues and

15   everything else.  There is no filter for legal issues and

16   everything else, and -- and as I said a moment ago, it is

17   fantasy to imagine there is such a bright line anyway.

18           Now remember, again, the structure of this

19   contract and it's brought to mind by the comments made in

20   closing a moment ago.  The structure of this contract is

21   that GENBAND pays the purchase price, in effect, on demand,

22   taking the vendor's word for it as to what the amount is.

23   There is no provision in the purchase agreement for GENBAND

24   to say, whoa.  That's not the purchase price I expected.

25   I'm going to give you my number, not yours, and close

1   anyway.  The contract obliged them -- and I'll take you to

2   that -- that wording right here.

3         You have the -- the main document I'll be

4   referring to is the motion record of the debtors, the

5   Canadian debtors here, the Doolittle (phonetic) affidavit,

6   and the actual contract itself is at Tab A or Exhibit A.

7   And I'll use the numbering in the black letters at the top,

8   Page 91 of the record, Section 2.2.1.

9         The structure you see here in Section 2.2.1 about

10  seven lines -- seven lines down it says, "The purchaser

11  shall, subject to adjustment following the closing, in

12  accordance with 2.2.3.2, paid to the sellers."  So they are

13  obliged to pay to the sellers the amount the sellers

14  certified they owe.  There is no provision for a pre-

15  arbitration or a pre-closing dispute.

16        So to suggest that any inference can be drawn

17  from the document prepared by the sellers and delivered at

18  closing as to what the correct interpretation of the

19  contract would be, or the existence of disputes between the

20  parties is fundamentally the wrong interpretation of the

21  contract because the contract says, pay this amount because

22  I told you to, and then it says, what do you do next, and

23  the purchase -- estimated purchase price is calculated in

24  2.2.2., which is the next paragraph.

25        Turning the page you -- at Page 93 of the record,

1    Section 2.2.3, here's where we get the closing statement.

2    This is where the buyer gets their chance to say what they

3    think the purchase price ought to be.  And so the purchase

4    says here's what I say the purchase price is.  The buyer

5    says, here's what I say it is, and then the structure of the

6    contract, turning the page again -- and it's in all the

7    parties' materials.  There's no dispute about it -- is they

8    look over the closing statement.

9            Then the next step is a dispute notice and that

10   comes in, a disagreement notice, and the disagreement notice

11   comes in and says, here's what we disagree about and

12   everything that's not on it is deemed to be agreed.

13           And then what does it say.  It's a funnel.  It

14   leads you to subparagraph (C) on Page 39.  The bottom of

15   that funnel that starts with the estimated purchase price

16   goes next to the closing purchase price, and any

17   disagreement about these documents takes you into the

18   arbitration.  And it doesn't say any accounting disagreement

19   goes there, any legal disagreement goes somewhere else.  It

20   says any disagreement.

21           Now look at the astonishing proposition my

22   friends are -- are contending for.  The astonishing

23   proposition they're contending for is that in a -- in a

24   contract structure where we --

25           JUSTICE MORAWETZ:  Any disagreement or conflict

1    by 2.2.3 --

2            MR. DUNPHY:  Any disagreement regarding the

3    closing statement itself.

4            JUSTICE MORAWETZ:  All right.

5            MR. DUNPHY:  So the disagreement notice has to

6    raise issues with the closing statement and those issues

7    then go to an arbitrator if the parties don't settle them,

8    obviously, themselves.  So that tells you what issues go.

9    I'm going to go to those documents in a second.

10            But look, if you will, at what is being urged

11    upon the Court as the structure.  Remember, our money is

12    already out the door.  It's been out the door since closing

13    in last May.  And the deal we bargained for -- the deal we

14    bargained for was that we had so much time to get the

15    closing statements together.  They had so much time to

16    respond to them.  We then have so much time to try and

17    settle those disputes between us, and then thirty days to

18    get an arbitrator to decide it and we're both supposed to

19    work cooperatively to ensure the arbitrator does it.  Why is

20    that?  Because our money is out of our pocket for that

21    entire time.

22            And so we bargained for paying what the purchaser

23    asked for up front, in return for which we got quick access

24    to a final decision to get any surplus back if we paid too

25    much.  That was the deal.

1           Here's the deal in my friends' eyes.  The deal in

2    my friends' eyes is, no.  Pay me now and we can raise

3    preliminary legal issues nowhere mentioned in the agreement.

4    And we'll tell you that there's no disagreement about them,

5    but in order to get to that point you have to go down the

6    slippery slope and dive into the merits to understand what

7    the issues are, something which I submit this Court should

8    not be doing.

9           So we're going to have a preliminary issue about

10   what is alleged to be a pure issue of law which you won't

11   know until you get there how pure it is and we, of course,

12   say it's tainted by all kinds of accounting issues, and then

13   we're going to get a decision from the Court and then we're

14   going to hand that decision to the arbitrator some weeks or

15   months later because, of course, that decision might go up

16   to further courts of appeal and lord knows the Supreme Court

17   of Canada some days.

18          So you go up the legal chain and when the legal

19   recourses are exhausted six, nine months, maybe three years

20   later, back you come to the account arbitrator and our money

21   is held up the entire time.  That is the substance of what

22   we agreed.  What we agreed to was quick justice in front of

23   a party we both agreed with to having regard to issues which

24   we both understood at the time to be the very sort of

25   questions we're talking about here.

1          Look at what the closing statement is.  I'm going

2   to turn you to that right now.

3          Here's the closing statement.  It is an Exhibit

4   G, which is Volume 22 in the motion record.

5          (Pause)

6          MR. DUNPHY:  I could take you to the estimated

7   one as well, but this is good enough.  Page 273 of the

8   record is the summary after you get passed the service list.

9          Now I counted them.  Maybe some will come up with

10  a different number, nineteen defined terms.  So in order to

11  come up with a closing statement, you must go through the

12  agreement, correctly apply nineteen defined terms, every one

13  of which involved applying the contract.  You can't possibly

14  apply the contract without applying the contract.

15         By definition, anyone doing this needs to

16  interpret it.  And there are accounting issues.  There are

17  legal issues, and there are mixed accounting/legal issues

18  involved in that.  Every minute of the day when you do this

19  kind of job.  That's the nature of the beast.

20         What is a closing inventory value?  Going to have

21  to turn up a definition to come up with that; going to have

22  to apply accounting principles to figure that one out.  Next

23  down the line.  Nineteen definitions we've gone through.

24  It's fantasy to say that the deferred purchase amount is

25  something different.  It's not contemplated by the

1    arbitration.  Of course it is.

2            Let's look at the disagreement notice, which is

3    the next tab, Tab H, and I'll have you turn to Page 291,

4    which is the actual form of the notice itself at Tab H, and

5    you'll see a number of bullet points on that page.  I'm not

6    going to take you to them, but they're going through all of

7    the very defined terms, the very same defined terms

8    including, on Page 292, the closing deferred profit amount,

9    the one which we are in dispute about.  It's right there in

10    their disagreement notice.  They raise an issue with the

11    application of that definition to this document and they put

12    it on the table with the disagreement notice because they

13    have to.  If they don't, they have to give us our money back

14    right away.

15            And you look at Page 294 you can see a side by

16    side of the numbers and you can see there's more than one

17    adjustment called for in this disagreement notice.  But each

18    of these involves applying the terms of the contract,

19    applying the terms of the contract of the financial

20    statements, Nortel accounting principles, et cetera.  It's

21    fantasy to say there's a bright line distinction here of the

22    sort being alleged by my friends.

23            Now you look at that disagreement notice, and

24    I'll turn you back to the contract itself, Subparagraph (C)

25    which is the arbitration clause, and it says you get that

1  disagreement notice, any disagreement goes to the

2  arbitrator.

3          This should be an open and closed case because

4  this is what we bargained for.  They tell us how much money

5  to pay.  We go do our own homework.  We have a specified

6  time limit to do it.  We say how much money we should have

7  paid and we get all the required numbers, applying all the

8  requisite terms of the contract, and then they -- they come

9  and say which parts they disagree with and if any survive

10 the contract -- the dispute resolution mechanism where we're

11 meant to just discuss them first, off to the accounting

12 arbitrator it goes.  No filter, no preliminary applications

13 to court, no bright line distinction between issues of law

14 and issues of accounting practice or anything else.  Any

15 disagreement means any disagreement.

16         And the very charade we're in tells you why it is

17 that's not the contract, because this is not what we

18 bargained for.  What we bargained for and what this Court

19 approved was a contract that said this very issue goes to an

20 accounting arbitrator.

21         And, my lord, or, Your Honor, let's say it's as

22 simple as they say it is.  Let's say they're right because,

23 in my submission, you should not be getting into the merits

24 and we should not have to get into them either because an

25 arbitrator can determine up to and including their own

1    jurisdiction and where questions of law are involved.

2              But let's say they're right.  Then the answer is,

3    this won't be a very difficult arbitration.  You can't

4    assume that the accounting arbitrator is going to get it

5    wrong.  If it's so cut and dried, if the deferred profit

6    amount is so obviously what they say it is in applying that

7    contract, what on earth would lead one to assume that an

8    accounting arbitrator is going to be any worse at getting

9    the right answer or given any less access to justice than a

10   Court.

11             And you've certainly heard enough to know that if

12   you are unfortunate enough to be diving into the merits on

13   this case, you're going to have to hear an awful lot of

14   accounting evidence, an awful lot of it, and that's exactly

15   what we said someone else should be doing.

16             But what I want to do is just take you to two

17   more comments and then I'll stick within my time limit,

18   which is, first of all, I want to look just at that

19   definition.  I said I don't want to get into the merits.  I

20   want to look at that definition long enough to satisfy you

21   that you shouldn't be going there because it is a circular,

22   circular definition -- or circular argument my friends are

23   making when they try and say there is no dispute by

24   superimposing their interpretation of it to the dispute.

25             So the deferred profit amount is on Page 56 of

1    the record.   We're back to Volume I of Tab A.   And, Your

2    Honor, and Judge Gross, if you read that definition, you're

3    both -- you're both judges.   If you read that definition,

4    you can't possibly understand that in one reading, and you

5    can't possibly understand that without having the benefit of

6    accounting principles at your side.

7           Let's start with the very first sentence:   "As of

8    the closing date, both short and long-term deferred revenues

9    for services."   Well, what do "deferred revenues" mean?

10   There's no law book we're going to turn in, going to turn

11   up, going to tell us what deferred revenues means.   That is

12   an accounting concept.   You heard an accountant testify a

13   few minutes ago that deferred revenue is the adverse of

14   revenue recognition.   So these are accounting concepts.

15          So for my friends to say, well, it's deferred

16   revenues for service to be provided after the closing date,

17   they're ignoring the first part, which is what's deferred

18   revenue in the first place because that's the first question

19   you have to answer.   An accountant will know that.   An

20   accountant will know that it's only within the universe of

21   deferred revenue that I'm examining this issue.

22          And then I've got that sentence at the end, "From

23   the avoidance of doubt, the deferred profit amount will

24   include advanced billings and deferred revenue."   There's

25   that phrase again, an accounting phrase consistent with

1    Nortel accounting principles.  It's poignant with accounting

2    principles.  It is impossible to apply this without

3    reference to them, and to give the narrow answer my friends'

4    asked for by way of a preliminary legal objection, which the

5    contract doesn't authorize them to ask for, is

6    simplistically put meaningless because you must assume

7    deferred revenues means something first and you don't know

8    what it means, and you won't know what it means until an

9    accountant tells you what it means in the context of this

10   agreement.

11            So to say deferred revenues, if you assume

12   they're deferred revenues only as before or after the

13   closing date, is boot-strapping.  What's deferred revenue in

14   the first place?  I don't know and I don't need to get into

15   that before this Court at this time.  That's what the

16   accounting arbitrator is supposed to do.  That's what the

17   parties agreed would happen.

18            So there is a disagreement between the parties.

19   We clearly agreed who decides it, and the question is, is

20   there anything in the record to tell you why that clear

21   agreement should be ignored, and I've provided a factum and

22   two volumes of case books and in the twenty minutes I want

23   to take of your time today I don't intend to go through them

24   all, but we all know that the consistent policy of the

25   Courts is to apply these clauses.  To apply these clauses

1  because that's what the parties' bargained for, not to

2  mention the fact that it furthers public policy of advancing

3  arbitration and alternative -- alternative dispute

4  resolutions.

5        So this is the policy of the Courts reiterated by

6  the Court of Appeals, Supreme Court of Canada time and time

7  again.  And my friends will say, well, this is a different

8  kind of clause.  It's narrow.  It's not narrow.  Remember

9  the context of this agreement, pay first, litigate second.

10  What we put in arbitration was the purchase price.  That's

11  the issue we put in there with all the defined terms in it.

12  And if you read the structure of this agreement you'll see

13  (a) has got a four corners clause, which my friend read and

14  (b) it provides for the survival of almost nothing except

15  the tax representations after closing.

16        So to say it's narrow is to misinterpret the

17  entire agreement.  This dispute is almost the entire

18  agreement.  It's the -- the whole agreement comes down to

19  the payment of the purchase price and the adjustment of that

20  closing amount.  That is the business of the agreement.  So

21  the number of issues that fall outside of that arbitration

22  clause is pretty small.  So to say that's a narrow

23  arbitration clause is, I think, a misstatement in the

24  context of this agreement.

25        Though, there is a disagreement, and I would

1    submit it is not for us and not for this Court to dive into

2    the merits of the agreement, boot-strapping, if you will,

3    based on a view of the merits into whether it's such a clear

4    legal issue in the first place because we have no obligation

5    to go to court first and this Court shouldn't allow a party

6    to ignore it's agreement by doing what it promised it would

7    not do, which is go to court first and prevent us from

8    getting a decision in thirty days.  We should have it by now

9    if they've been standing up to and honoring the contract

10   they signed.  And this Court, I submit, should hold this

11   party to the bargain it made and that this Court approved.

12           Thank you.

13           JUSTICE MORAWETZ:  Thank you.

14           Mr. Mersky.

15           MR. MERSKY:  Thank you, Your Honor.

16           In addition to the motion record, Your Honor, I

17   may refer to my case book as well.

18           There's three points that I'm going to ask you to

19   consider on this motion.

20           The first is that the Courts on both sides of the

21   border apply arbitration clauses in a functional and a

22   purposive way.  You can get away from broad.  You can get

23   away from narrow if you look at what they're trying to

24   achieve.

25           Second point is that if this arbitration clause

1  is going to be applied in a functional and purposive way,

2  it's up to GENBAND to point out a dispute where an

3  accountant can be an effective and an efficient arbitrator,

4  which is the point of arbitration, of course.

5         And the third point I would ask you to consider

6  is that while GENBAND invokes the language of the

7  arbitration clause with some fierceness, all that it has

8  done is told you that it -- that this is an accounting

9  issue.  It hasn't shown you how or why this is an accounting

10 issue.

11        And while I heard Ms. Kawecki's evidence this

12 morning, all I heard that evidence to say was the dispute

13 was about not what the deferred revenue is, but rather just

14 what the split should be and how that split was determined

15 under the contract definition is why Nortel is here to say

16 that this is, indeed, a legal dispute.

17        I would like to start with the applicable

18 Canadian case law, although I don't say that it differs very

19 much from what we've heard this morning about the American

20 juris prudence.

21        The case law that we've put to you is clear that

22 the Ontario courts take a functional approach to

23 understanding the language of an arbitration agreement or

24 clause.  That point was well made in the case -- in Tab 2 of

25 my case book, Your Honor.  This is the decision of Mr.

1    Justice Sharp in the <u>Abilities Frontier Cooperative Homes</u>

2    case.  And just briefly, there's the facts and the clause.

3    They are instructive.  Justice Sharp is dealing with a

4    situation in which the government of Ontario, under Premier

5    Ray at the time, had entered into contracts with developers

6    to build non-profit housing.

7            The development agreements had arbitration

8    clauses, and those arbitration clauses might also be called

9    broad by some.  And they are at Page 3 of the decision at

10   Paragraph 5.

11           Now I would like you to take note that the

12   arbitration clause there said that if there are disputes

13   about the interpretation of this agreement or about actions

14   taken under the agreement, the developer and the ministry

15   agree to arbitration.

16           Many would say that's a broad clause.  The Ray

17   government falls.  The Harris government comes in and the

18   Harris government canceled the non-profit housing program.

19   Now on a literal reading -- a literal reading, which is what

20   GENBAND asks you to do -- a literal reading of the clause

21   before Judge Sharp canceled a contract could reasonably be

22   read as an action taken under the agreement.  That's

23   certainly what the developers thought.

24           But the developers, like GENBAND, were only

25   taking a literal approach, a functional approach or a

1 purposive one.  Justice Sharp, though, used a functional and

2 practical analysis and concluded that the dispute before him

3 wasn't the real target of the arbitration clause.

4          Now Justice Sharp did, of course, recognize the

5 law that GENBAND cites to you here broadly.  It's a general

6 policy conclusion that arbitration is a good process to be

7 encouraged and that parties are to be held for their

8 bargains.

9          But Justice Sharp also identified the

10 (indiscernible) -- that's at Paragraph 28 of the decision --

11 that a party must still bring itself within the wording and

12 purpose of the arbitration clause, especially where it is

13 not a clause for universal arbitration.

14          Now using that analysis, Justice Sharp concluded

15 that the functional intention of the parties could only have

16 been to use arbitration to resolve day to day disputes in

17 the functioning of the complex development contracts,

18 executory clauses he refers to, not something going to its

19 core.

20          And I say by doing that he applied a functional

21 and purposive approach, and from what I've heard this

22 morning of the submissions in Delaware, that is also the

23 accepted practice there.

24          So the next step is to take that functional and

25 purposive approach and to understand what is the clause and

1    what is the dispute about.

2            Now GENBAND makes much of an issue of the

3    wording, any disagreement, under the clause and that any

4    disagreement refers to the entry of, they say, the deferred

5    profit amount or any number in the closing statement.  Now

6    under that logic, GENBAND could have entered the full amount

7    of the purchase price as a deduction in the closing

8    statement without giving a justification and said, well,

9    send it to an accounting auditor, although perhaps their

10   justification is well, there is some bad faith.

11           But under the GENBAND literal interpretation of

12   the clause they can take any approach and any justification

13   to what they put in the closing agreement and it doesn't

14   matter what the justification is, it must still go to an

15   accounting arbitrator.  And I say that is not consistent

16   with the functional and practical approach that Justice

17   Sharp used and that the Courts use across the board.

18           So the mere indication of the words of the

19   clause, although we've heard those words invoked over and

20   over again, don't automatically bring the auditor in.  You

21   still have to give content to the dispute.

22           So you look at the evidence of the dispute and

23   the chain of events that brought us before you.  Now my

24   friend took you in a motion record to the closing statement

25   itself.  I think that's helpful.  I would ask you to turn it

1  up.  It's at Tab G, Volume II, Page 273.

2            (Pause)

3            JUSTICE MORAWETZ:  Okay.

4            MR. MERSKY:  And you will see two-thirds of the

5  way down the page there is a line item, one number entry for

6  the closing deferred profit amount of approximately $70

7  million.

8            Now what you won't see is how they come to that

9  figure.  You just see the result of the calculation and it

10  may be that you're interpreted -- you're committed to

11  proceed in that fashion with the closing statement.  But at

12  this point in time, when it gets the closing statement, all

13  Nortel has is that piece of paper and it reviews the

14  calculations to determine if they differ and why.  So Nortel

15  does the analysis and sends back it's commentary on it in

16  the disagreement notice.

17            And that's -- at the next tab in the record, and

18  the relevant part is on Page 292, and Nortel gives its

19  inference an explanation as to how it expects GENBAND to

20  come up with this very large difference.  It's the second

21  bullet on the page.

22            Now I don't ask you to go through it all, Your

23  Honors, except to notice that it provides Nortel's

24  understanding of how this discrepancy between what it thinks

25  is the right amount and what GENBAND has put forward as the

1   right amount has occurred.

2          And Nortel does that by applying a defined term

3   in the contract.  It doesn't say we think you've applied GAP

4   incorrectly.  It doesn't say we think you've applied the

5   Nortel accounting principles incorrectly.  All it says is we

6   think you've applied the definition, the contractual

7   definition which, yes, imports accounting terms, the

8   contractual definition wrongly.  And Nortel puts for that

9   position in its letter and it explains why.

10          But then what happens?  Nothing.  We don't have

11  an explanation from GENBAND as to its point of view.  It

12  says that it involves accounting issues.  My friend says

13  it's a fantasy to say it involves anything but accounting

14  issues.  But that's very hard to discern from the chain of

15  communications between the parties.  And if you really think

16  it's an accounting issue, why isn't there a response to this

17  explaining why.  It's just, it's an accounting issue and we

18  agreed to put accounting issues before an arbitrator.

19          And I say, Your Honor, that even today, even in

20  both of these courts, there is still not an explanation, a

21  description that gives you anything to rest your considered

22  determination in as to how it's an accounting issue, rather

23  than just I'm telling you it's an accounting issue, Judges,

24  and you'll have to accept that because to do otherwise would

25  be to engage in this slippery slope of accounting terms

1  which you might need an expert to help assist you if you

2  have to decide this on the merits.

3          Well, I say if that's not sufficient to take you

4  into the functional and purposive analysis where Nortel has

5  given its explanation as to why it thinks that this is a

6  contractual definition, and GENBAND is silent except to say

7  it must be accounting.  And as I said, I've read Ms.

8  Kawecki's affidavit.  You now have it before you.  It goes

9  into learned detail about the complications of GAP, but not

10 how the complications of GAP apply to the issue before you.

11         And I listened to Ms. Kawecki's evidence and I

12 was listening to hear that, but I didn't hear that.  What I

13 heard her say was there is a dispute about who is going to

14 get the deferred revenue, not about how they calculate it.

15         And so my submission is that if you're going to

16 apply the functional and purposive analysis that the Courts'

17 require, this doesn't become an accounting dispute.  It's

18 one that rests in the interpretation of the contract.  And I

19 agree with Mr. Herrington that there may be subsidiary

20 issues after that, but that doesn't allow GENBAND to come

21 here and lump everything under the accounting clause at

22 first instance.

23         I think I've been quicker than Mr. Dumphey, but I

24 have no further submissions.

25         JUSTICE MORAWETZ:  Thank you very much.

1          Other parties?  Attorney (indiscernible)

2          UNIDENTIFIED SPEAKER:  Your Honor, this is just

3  going to be to -- Justice Morawetz, Judge Gross, I appear

4  before you as counsel for the official committee of

5  creditors.  My co-counsel, Mr. Kahn, has made submissions

6  supporting the position of the debtors.  We adopt those

7  submissions in Canada.  We also have filed with the Canadian

8  court the joinder that has been filed in the U.S.

9  proceedings and those submissions we ask be put before you,

10  Justice Morawetz.  We adopt the submissions of the Canadian

11  debtors.

12          And what the purchaser is attempting to do in

13  this instance is to redefine a defined term in the contract

14  and unlike a private agreement between parties, this was an

15  agreement that was blessed by both courts in Canada and the

16  U.S. in a course -- and in accordance with the terms of the

17  agreement itself, the Courts retained its jurisdiction in

18  order to resolve disputes with respect to contractual

19  interpretations of the agreement.

20          I can refer you to Section 10(b) of the agreement

21  of purchase and sale that both courts retained the

22  jurisdiction if there's a contractual dispute.  And that's

23  precisely what the debtor is seeking to do in this instance,

24  is before the accounting issues is have these courts rectify

25  the contractual dispute with respect to the deferred profit

1  allegation.

2          Those are all my submissions.  Thank you, Your

3  Honor.

4          JUSTICE MORAWETZ:  Thank you very much.

5          UNIDENTIFIED SPEAKER:  Good afternoon, Your

6  Honor, Judge Gross.  The monitor supports the position taken

7  by the Canadian debtors in respect of the motions before you

8  today.  So we have not filed any separate report in that

9  regard, but the position remains nonetheless.

10          Thank you, Your Honor.

11          JUSTICE MORAWETZ:  Okay.  Mr. (indiscernible)

12          UNIDENTIFIED SPEAKER:  Good morning, Your Honor.

13  I'm here today for the U.S. debtors in the Canadian

14  proceedings and just to complete the circle, the U.S.

15  debtors support the position of the CCAA applicants.

16          JUSTICE MORAWETZ:  Thank you.  Mr.

17  (indiscernible).

18          UNIDENTIFIED SPEAKER:  Your Honor, Justice Gross,

19  the noteholders would also support the position of the CCAA

20  applicant.

21          JUSTICE MORAWETZ:  Not that the scoreboard it

22  doesn't look favorable, but that's not --

23          MR. DUNPHY:  Well, shock -- shockingly enough,

24  everyone -- everyone who stands to get the money we're

25  claiming would very much like to have it.  But that,

1  unfortunately, doesn't answer the question as to who decides

2  what and what the parties agreed to.

3           I'll answer, I guess, the last submission first.

4  Section 10(b), it's referred to in both of the factors.  It

5  clearly carves out this clause, specifically carves out this

6  clause.  The arbitration provision for the -- for the

7  closing purchase price is clearly carved out, so, yes.

8  There is a provision that allows the Court to provide

9  remedies, but, no, not this remedy.  It was specifically

10 carved out.  So I would say that is not helpful to this

11 question.

12          And my friend also said he's been blessed by the

13 Court and this is somehow a special kind of contract

14 because, hey, it's public.  Well, guess what?  We have

15 rights under it, too, and -- and the contract, as publicly

16 blessed and as approved by the monitor had, in the monitor's

17 report, a specific warning and reference to this very

18 arbitration clause, which has always been part of the deal.

19          I refer you back to my comments earlier about the

20 way this deal worked.  This is, after all, an insolvency or

21 a bankruptcy sale with effectively no reps and warranties

22 post-closing, an as-is, where-is kind of deal.  We've got to

23 pay the purchase price.  The purchaser calculates first,

24 then we get one shot at adjusting that and then we go to

25 arbitration if we have this agreement.  That was the deal,

1    always the deal, disclosed to the Court, disclosed to the

2    public, disclosed to other bidders, disclosed to everyone.

3              Finally, referring to my friend for the Canadian

4    debtors, he said there's no explanation as to how this is an

5    accounting issue.  He's right because it's not our job.

6    There is no such requirement and we -- we cannot be tempted

7    or lured into having this Court dive headfirst into the

8    merits of the issue by someone saying, you haven't put the

9    merits on the table.  Of course not, because this isn't the

10   merits motion and our submission is there never should be a

11   merits motion.  This is the who decides motion, and who

12   decides what the decision is isn't relevant.

13             And as I said earlier, if it's so easy, then

14   heavens, it will be very easy for that accounting

15   arbitrator, too, if it's so easy.  We, of course, have

16   another view and we wouldn't be -- we wouldn't be taking the

17   position we take if we didn't view our view as valid.  But

18   that will be for someone else to decide and our submission

19   is that it ought to be the arbitrator, obviously.

20             So there is no carve-out for accounting issues or

21   legal issues and that's -- it's the entire gist of their --

22   of their presentation is if it's an accounting issue, okay.

23   We'll send that one to the -- to the accounting arbitrator.

24   That's not what the agreement says.  The agreement says, any

25   disagreement, not any accounting disagreement.

1          As I took you through the number of definitions

2   you have to wade through to prepare those documents, clearly

3   they are all mixed accounting application of contract

4   interpretation to the facts and to the accounting issues.

5   Obviously, it's application of the whole thing to

6   everything, and all of those defined terms have to be

7   reviewed by an accounting arbitrator to decide any dispute.

8   So, clearly, contract interpretation is on the table before

9   them, clearly.  It couldn't be otherwise.

10          JUSTICE MORAWETZ:  If it was so clear maybe they

11  wouldn't be here.

12          (Laughter)

13          MR. DUNPHY:  Exactly.  And my last comment, and

14  with this -- and with this I'll close.  I'll leave you with

15  the Eli Lilley case in our Supreme Court of Canada.  It's

16  cited very often because it's a Supreme Court of Canada.

17          But the point is on extrinsic evidence.  This

18  entire motion -- and my last comment about trying to lure us

19  into a debate on the merits -- is all about trying to get

20  the Court to look to extrinsic evidence to hold this dispute

21  out of where it obviously goes, and what the Eli Lilley case

22  tells you, Your Honor, is you can't use extrinsic evidence

23  to create an issue that's not there in the contract.  And if

24  you simply apply the contract the way it's written, it is an

25  easy issue and it is an open and closed case.  Closing

1  statement delivered; disagreement notice delivered; parties

2  spend fifteen days talking about it; off to arbitration they

3  go.  That's what it says about the issues of the

4  disagreement notice.  All of those conditions have been met,

5  all of them.  We should have been in front of the arbitrator

6  already and we're asking this Court to see that it happens.

7        Thank you.

8        JUSTICE MORAWETZ:  Thank you.  I think that the

9  folks that previously agreed to (indiscernible) the last

10  submission of exhibits.

11        UNIDENTIFIED SPEAKER:  I'm not here to decide the

12  merits.  I agree with my friend, Baffar (phonetic).  But

13  where we part ways is the Court can't decide the issue

14  before it without at least understanding the parameters of

15  the merits, and those parameters have not been put before

16  you by GENBAND.  Well, they have by Nortel.

17        And if it was even a case of those parameters not

18  just being before this Court it would be one thing.  But it

19  is instructive that despite Nortel providing its explanation

20  and understanding of how the difference arises, no

21  explanation has been provided by GENBAND, not in court, not

22  simply in a declaration or in testimony evidence, but no

23  letters.

24        JUSTICE MORAWETZ:  Thank you.

25        Judge Gross, we should probably recess for a few

1   minutes and then get back to the parties on a timely basis

2   as to what -- what the outcome is going to be.

3   　　　　THE COURT:  Yes.  Thank you.  We'll --

4   　　　　JUSTICE MORAWETZ:  Stand in very brief recess.

5   　　　　THE COURT:  We'll stand in recess for a short

6   time.

7   　　　　(Recess)

8   　　　　THE CLERK:  Please rise.

9   　　　　THE COURT:  Thank you, everyone.  Please be

10   seated when you're available and ready.

11   　　　　JUSTICE MORAWETZ:  All set, Judge Gross?

12   　　　　THE COURT:  You're -- are you deferring to me to

13   make the announcement?  All right.

14   　　　　JUSTICE MORAWETZ:  Well, I was going to do it --

15   I was going to do it from here, but --

16   　　　　THE COURT:  Yes.  Do it -- do it from there.

17   You're -- you're the main case.

18   　　　　(Laughter)

19   　　　　JUSTICE MORAWETZ:  Tell me about that.

20   　　　　And counsel in the Canadian court, and Judge

21   Gross certainly will address the U.S. court.  There will be

22   no disposition from the Canadian court today.  Judge Gross

23   and I have discussed a process by which a decision will be

24   conveyed to you.  We have determined that when one judge has

25   -- is ready to release an opinion, an email communication to

1   that effect only will be sent to the other court, and upon

2   receiving notification back that the other court has also

3   reached a determination, concurrent decisions will then be

4   released.

5           We do appreciate the time that has been put into

6   the submissions today and the quality of the submissions.

7   We also appreciate the economic impact of this case and that

8   you can expect us to deal with this issue soon as the folks

9   would like.

10          Judge Gross, over to you, sir.

11          THE COURT:  All right.  And certainly I agree

12  with Justice Morawetz has stated in order to maintain the

13  long-lasting peace between our two countries.  And --

14          (Laughter)

15          THE COURT:  -- but we will endeavor, really, to

16  get an opinion out very promptly because we do recognize the

17  importance of the decision and the fact that already GENBAND

18  is concerned about the delay, and we certainly are not going

19  to do anything that would add to that delay.  And so we will

20  endeavor to get to it right away.

21          And -- and we will --

22          JUSTICE MORAWETZ:  I think it's a good time now -

23  -

24          THE COURT:  Yes.

25          JUSTICE MORAWETZ:  -- to conclude the joint

1    hearing.

2                THE COURT:  Yes.  Is there anything further, Mr.

3    Botter?

4                JUSTICE MORAWETZ:  My best for the holiday

5    season.  See you, Judge Gross --

6                THE COURT:  Is there anything joint?

7                MR. BOTTER:  Yes.

8                JUSTICE MORAWETZ:  -- and to all of you in the

9    courtroom.

10               THE COURT:  Oh.  Oh.

11               MR. BOTTER:  Yes.

12               THE COURT:  Justice Morawetz.

13               MR. BOTTER:  Justice Morawetz, Justice Morawetz,

14   David Botter for Akin, Gump for the committee and I -- and I

15   wish you and Judge Gross happy holidays as well.

16               THE COURT:  Thank you.

17               MR. BOTTER:  But there is one more statement to

18   be made on the record and a clarification, I think, of -- of

19   the position we took in connection with the IP address

20   issue.

21               THE COURT:  Oh, yes.

22               MR. BOTTER:  The Canadian debtors and monitor

23   had, you know, I think confusion as to what I was trying to

24   say and maybe I can clarify, and hopefully this will satisfy

25   the issue.

1         There really were two messages in the reservation

2    of rights:  First, with respect to the economics in

3    connection with this particular retention, given that it was

4    a small deal, a small number of addresses, we wanted to say

5    that those economics would not necessarily translate into

6    other transactions.  That was the first point.

7         With the second point, as we have said with

8    respect to many issues in these cases, the issue of

9    ownership of assets in these cases is an issue that will be

10   ultimately dealt with in the allocation process.

11        So to the extent that this was a U.S. initiated

12   process and to the extent that the U.S. debtors believe they

13   own these particular addresses, I'm sure that the Canadian

14   debtors may have a different view, just like the U.S.

15   debtors and the U.S. Committee may have a different review

16   with respect -- different view with respect to the ownership

17   of other IP addresses and/or other assets.

18        That really is the -- a clarification of the

19   position.

20        MS. KRAIDIN:  Thank you.

21        THE COURT:  Ms. Kraidin, yes.

22        MS. KRAIDIN:  Yeah.  Just to add to that, there

23   was some confusion.

24        Thank you, Mr. Botter, for clarifying the

25   position of the committee.

1          And just for purposes of the U.S. record we would

2    like to say on behalf of the Canadian estate, debtor, and

3    monitor that the Canadians reserve all rights with respect

4    to any future sales process in respect of any of the IP

5    addresses.

6          THE COURT:  All right.  And that certainly is

7    understood.

8          MR. BOTTER:  And just to make it perfectly clear,

9    and as we've done before, you know, we believe --

10         (Laughter)

11         MR. BOTTER:  Well, maybe not so clear which is

12   why I'm back again.

13         (Laughter)

14         MR. BOTTER:  The committee believes and I think

15   the U.S. debtors believe that we -- there is no dispute and

16   that we own the addresses that were the subject of the

17   motion before.

18         THE COURT:  Yes.

19         MR. BOTTER:  What the Canadians believe or what

20   other parties may assert is up to them and is the subject of

21   their own reservations.

22         THE COURT:  That is understood.  Yes.

23         MS. KRAIDIN:  I think that that is sufficient for

24   today.

25         THE COURT:  All right.  Thank you, Ms. Kraidin.

1          (Laughter)

2          THE COURT:  Thank you, Mr. Botter.

3          And I think that really does end it now, Justice

4   Morawetz, and I wish all in Canada a wonderful holiday.

5          JUSTICE MORAWETZ:  Thank you.  It's crystal clear

6   that it's over.

7          (Laughter)

8          THE COURT:  Good day, sir.

9          Are we finished as well?

10          MR. BOTTER:  Yes, Your Honor.

11          MS. KRAIDIN:  Yes, Your Honor.

12          THE COURT:  We're finished with everything on the

13   agenda.  All right, everyone.  A wonderful holiday to you

14   all.

15          MR. CONNELLY:  Thank you, Your Honor.

16          MS. KRAIDIN:  Thank you, Your Honor.

17          THE COURT:  The Court will stand in recess.

18      (Whereupon at 1:07 p.m., the hearing was adjourned)

19                      CERTIFICATION

20          I  certify  that  the  foregoing  is  a  correct

21   transcript  from  the  electronic  sound  recording  of  the

22   proceedings in the above-entitled matter.

23

24   Sherri Breach                    December 16, 2010
25   AAERT Cert. No. 397
26   Certified Court Transcriptionist

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **(and**(1) 5:35 | | **acquired**(1) 48:5 | | **agreement**(73) 19:8  19:17  21:1  21:3  22:24 | | **amount**(88) 12:14  16:15  16:20  16:21  23:7 | |

**(and**(1) 5:35
**18w140**(1) 5:14
**a.m**(2) 1:14  8:1
**aaron**(1) 4:25
**abbott**(18) 1:24  8:10  8:11  9:6  9:7  9:8
9:12  9:20  9:23  10:3  11:1  11:17  11:18  11:23
11:25  12:2  12:5  34:7  34:22

**abilities**(1) 109:1
**able**(3) 15:21  16:8  90:20
**about**(111) 12:10  15:25  16:4  16:4  16:5
16:13  17:3  17:22  17:24  22:19  23:24  25:3
25:12  25:15  25:19  25:20  25:22  25:25  28:8
30:9  32:7  36:23  37:3  37:5  37:15  37:19
38:12  39:2  39:20  40:17  41:11  41:23  41:25
43:18  43:25  44:1  44:5  44:57  45:12  45:23
46:13  46:19  50:8  51:4  51:17  51:22  51:24
52:16  54:7  54:13  55:20  58:2  59:20  62:19
62:21  63:2  63:3  63:5  63:19  64:1  64:4
64:8  64:12  65:19  66:23  67:6  67:11  68:10
68:13  68:14  69:15  69:17  69:24  70:4  70:19
70:21  70:23  78:11  78:13  83:11  83:16  83:25
84:7  88:5  89:4  89:6  89:11  94:3  96:9  97:7
97:11  97:17  99:4  99:9  99:25  101:9  108:11
108:19  109:13  109:13  111:1  114:9  114:13
114:14  117:19  119:18  119:19  120:2  120:3
121:19  122:18

**above-entitled**(1) 126:22
**abrogated**(1) 20:5
**absolutely**(9) 9:17  9:22  17:9  17:10  17:13
60:17  62:2  64:4  66:6

**accept**(1) 113:24
**acceptable**(3) 11:24  13:6  68:3
**accepted**(3) 16:18  23:14  110:23
**access**(2) 98:23  103:9
**accommodate**(1) 10:16
**accomplish**(1) 15:7
**accordance**(9) 8:16  23:8  27:1  28:23  49:18
50:5  77:6  96:12  115:6

**according**(4) 36:18  37:1  37:11  55:19
**account**(8) 26:14  49:9  54:10  59:4  60:4
60:5  76:15  99:20

**accountant**(13) 27:15  38:17  38:18  41:7
41:7  42:8  57:10  61:9  104:12  104:19
104:20  105:9  108:3

**accountants**(2) 64:18  77:13
**accounting**(149) 8:23  16:4  16:17  16:18
16:21  16:25  17:9  17:10  17:12  17:19  23:8
26:5  26:8  26:19  26:21  26:24  27:2  27:12
27:17  27:20  28:24  29:20  30:15  30:19
30:23  35:11  35:12  35:15  35:16  35:25
36:11  36:18  37:2  37:12  37:25  38:13  38:17
40:18  40:20  40:21  40:25  41:19  41:22  42:2
44:11  44:11  44:19  46:20  46:21  46:22  47:9
47:12  47:15  47:19  47:23  48:19  48:23
49:20  50:6  52:13  52:19  52:22  52:23  52:24
53:7  53:17  57:12  59:2  59:5  59:14  60:14
60:15  60:19  61:6  62:2  62:7  64:1  64:4
64:8  64:10  64:15  65:3  68:12  69:22  70:22
76:5  76:25  77:7  77:14  78:9  84:5  87:10
87:13  87:18  87:20  88:11  89:23  90:15
94:20  94:23  95:3  95:6  95:9  95:14  97:18
99:12  100:16  100:22  101:20  102:11  102:1
102:20  103:4  103:8  103:14  104:6  104:12
104:14  104:25  105:1  105:1  105:16  108:8
108:9  111:9  111:15  113:5  113:7  113:12
113:13  113:16  113:17  113:18  113:22
113:23  113:25  114:7  114:17  114:21  115:2
118:5  118:14  118:20  118:22  118:23
118:25  119:3  119:4  119:7

**accounting/legal**(1) 100:17
**accounts**(4) 42:12  42:14  42:23  74:25
**accuracy**(1) 29:8
**achieve**(1) 107:24

**acquired**(1) 48:5
**acquirer**(1) 78:6
**acquiring**(1) 42:14
**acquisition**(3) 75:3  83:11  83:21
**across**(2) 93:15  111:17
**act**(3) 58:13  63:24  89:16
**action**(1) 109:22
**actions**(1) 109:13
**actual**(4) 51:24  82:8  96:6  101:4
**actually**(15) 18:21  22:11  25:19  27:24
30:10  32:13  42:25  47:4  48:1  61:7  66:20
67:12  71:6  76:18  78:1

**add**(3) 67:10  122:19  124:22
**addition**(5) 36:16  54:6  55:17  57:16  107:16
**address**(13) 12:13  32:4  35:12  41:7  44:23
44:24  46:20  51:9  51:21  85:20  87:12  87:1
121:21  123:19

**addressed**(3) 12:19  38:6  38:14
**addresses**(9) 10:1  11:5  11:11  85:23  124:4
124:13  124:17  125:5  125:16

**adjourned**(2) 93:2  126:18
**adjust**(1) 55:6
**adjusting**(1) 117:24
**adjustment**(16) 15:24  16:1  16:13  23:12
23:21  28:14  38:7  38:13  40:13  41:14  66:2
77:15  89:8  96:11  101:17  106:19

**administrators**(1) 3:5
**admission**(2) 48:11  48:12
**admit**(1) 65:1
**admits**(1) 17:6
**admitted**(2) 32:6  72:16
**adopt**(2) 115:6  115:10
**adrienne**(1) 5:33
**adrx**(1) 9:25
**advance**(2) 27:11  59:8
**advanced**(2) 49:24  104:24
**advancing**(1) 106:2
**adverse**(1) 104:13
**aert**(1) 126:25
**affects**(1) 44:20
**affidavit**(16) 32:2  32:3  32:11  59:3  60:24
64:5  66:22  69:11  69:17  69:25  70:10  76:4
76:18  92:25  96:5  114:8

**affidavits**(1) 32:6
**after**(44) 27:5  33:19  33:19  35:4  35:5
35:19  35:20  36:12  36:15  37:10  37:20  38:1
44:5  44:6  46:14  46:16  46:16  47:4  47:6
48:5  48:9  49:7  49:15  50:14  50:16  53:10
54:5  55:6  59:1  60:4  61:16  65:6  81:20
88:3  88:8  88:10  88:10  88:21  100:8  104:10
105:12  106:15  114:20  117:20

**afternoon**(1) 116:5
**again**(33) 24:11  25:2  40:13  42:6  43:2
44:16  47:10  47:19  48:24  50:8  54:12  57:3
61:19  63:16  65:8  65:24  70:3  70:25  83:4
84:22  85:24  86:12  87:14  87:16  87:18  88:4
89:22  95:18  97:6  104:25  106:7  111:20
125:12

**against**(1) 58:14
**agenda**(1) 126:13
**ago**(7) 21:22  23:19  69:18  94:2  95:16
95:20  104:13

**agree**(16) 20:19  21:7  27:6  40:10  52:7  65:2
65:5  68:11  70:15  76:11  76:12  78:1  109:15
114:19  120:12  122:11

**agreed**(18) 16:1  21:13  30:13  31:14  39:5
39:25  43:6  75:1  87:3  97:12  99:22  99:22
99:23  105:17  105:19  113:18  117:2  120:9

**agreement**(73) 19:8  19:17  21:1  21:3  22:24
25:7  31:1  31:3  31:14  33:11  36:5  36:6
41:3  41:9  41:24  42:8  42:15  42:19  42:20
42:21  43:19  44:1  44:14  44:16  46:3  47:1
53:9  53:20  53:21  53:23  54:7  54:15  54:24
54:25  55:1  55:4  55:9  55:10  55:17  55:18
55:19  64:21  73:3  75:12  90:18  90:21  95:2
99:3  100:12  105:10  105:21  106:9  106:12
106:17  106:18  106:18  106:20  106:24  107:
107:6  108:23  109:13  109:14  109:22
111:13  115:14  115:15  115:17  115:19
115:20  117:25  118:24  118:24

**agreements**(3) 39:22  40:3  109:7
**ahead**(1) 94:13
**aid**(1) 34:1
**ain't**(1) 32:20
**air**(2) 151  15:3
**akin**(5) 2:31  2:38  10:24  90:8  112:4
**alan**(1) 5:31
**alert**(1) 10:5
**alex**(1) 5:46
**alissa**(1) 1:25
**all**(114) 8:2  10:21  11:15  11:22  12:4  13:3
13:19  13:24  14:16  14:17  20:9  20:20  21:1
22:2  22:25  24:12  27:5  27:18  30:19  31:2
32:4  32:22  33:2  35:1  36:23  36:24  39:1
45:21  47:17  50:11  52:4  52:8  54:21  54:23
57:1  57:16  58:1  58:13  60:24  62:16  62:20
64:23  65:9  67:10  67:18  67:21  67:25  69:1
69:2  71:3  71:8  71:15  73:16  74:4  76:1
77:14  78:3  79:10  79:16  79:18  80:25  85:1
86:4  86:5  86:23  87:17  87:18  87:21  87:22
88:2  88:16  89:23  91:4  91:7  91:17  92:2
92:9  92:11  92:17  92:23  93:8  95:4  97:6
98:4  99:12  101:6  102:7  102:7  103:18
105:24  105:24  106:11  108:7  108:12  112:1
112:22  113:5  116:2  117:20  119:3  119:6
119:19  120:4  120:25  121:11  121:13  122:11
123:8  125:3  125:6  125:25  126:4  126:13
126:14

**allegation**(1) 116:1
**alleged**(2) 99:10  101:22
**allen**(2) 3:27  91:22
**allocation**(1) 124:10
**allow**(5) 86:13  89:15  89:19  107:5  114:20
**allows**(1) 117:8
**almost**(4) 55:18  64:1  106:14  106:17
**alone**(1) 20:12
**along**(3) 51:10  53:22  88:3
**already**(10) 58:1  67:13  67:15  75:18  87:9
90:10  93:21  98:12  120:6  122:17

**also**(27) 14:21  17:8  23:23  24:19  26:10
26:20  26:21  28:17  29:3  41:5  55:1  56:8
59:10  63:25  66:19  75:9  81:8  86:18  92:24
109:8  110:9  110:22  115:7  116:19  117:12
122:2  122:7

**alternative**(2) 106:3  106:3
**although**(6) 15:19  39:21  52:1  108:18
118:9  111:19

**always**(3) 31:23  117:18  118:1
**amended**(2) 25:8  44:15
**amendment**(1) 44:20
**american**(1) 108:19
**americas**(1) 3:29
**amongst**(1) 79:7

**amount**(88) 12:14  16:15  16:20  16:21  23:7
23:25  26:2  26:17  26:23  27:10  27:11  28:8
30:6  32:12  32:16  33:12  33:17  33:22  35:4
35:19  36:9  36:12  36:24  36:25  36:27  37:14
37:17  37:20  37:23  38:4  41:25  44:4  45:10
46:15  46:25  48:25  50:2  51:1  51:17  54:18
55:4  56:11  56:14  56:18  58:19  66:4  66:24
68:16  70:5  73:6  73:24  74:2  74:5  74:18
76:7  76:21  80:8  80:12  80:16  81:18  82:5
83:4  83:10  83:18  84:3  84:11  86:1  86:10
86:17  86:22  87:12  87:25  88:6  88:20  95:22
96:13  96:21  100:24  101:8  103:6  103:25
104:23  106:20  111:5  111:6  112:6  112:25
113:1

**amounts**(7) 16:5  23:23  24:9  24:12  24:12
25:1  43:14

**analysis**(6) 22:20  110:2  110:14  112:15
114:4  114:16

**and**(301) 1:30  1:39  2:10  2:17  2:30  2:37
2:44  3:26  3:32  3:46  8:6  8:14  8:15  8:19
8:23  8:23  9:9  9:17  10:4  10:10  10:19
11:12  11:16  11:19  11:23  11:24  12:2  12:7
12:9  12:11  12:23  13:4  13:16  14:17  14:18
14:21  15:3  15:15  15:15  15:24  16:1  16:10
16:18  16:25  16:25  17:5  17:5  17:11  17:17
17:19  17:19  17:20  17:24  17:25  18:5  18:8
18:9  18:9  18:11  18:17  18:19  18:20  18:21
20:6  20:11  20:12  20:22  20:24  21:3  21:8
21:9  21:14  21:17  21:17  21:18  22:2  22:4
22:10  22:20  22:25  23:1  23:2  23:7  23:9
23:12  23:13  23:16  23:19  23:20  23:22
23:24  24:24  25:4  25:12  25:15  26:4  26:6
26:12  26:14  26:19  27:1  27:5  27:8  27:12
27:21  27:22  28:4  28:6  28:6  28:16  28:16
28:17  28:17  28:20  28:25  29:3  29:6  29:8
29:13  29:15  29:16  29:17  29:22  29:24  30:2
30:3  30:9  30:10  30:11  30:13  30:15  30:17
30:17  30:19  30:20  30:21  30:21  30:24  31:5
31:5  31:24  32:2  32:4  32:5  32:10  32:15
32:16  32:20  32:22  32:23  32:24  33:7  33:14
33:14  34:8  34:12  34:19  34:22  35:5  35:7
35:12  35:12  35:15  35:20  35:25  36:1  36:3
36:4  36:8  36:20  36:24  37:2  37:7  37:12
37:18  37:20  38:5  38:11  38:23  39:2  39:6
39:19  39:24  40:7  40:16  40:21  40:24  41:12
41:13  41:16  41:21  41:22  41:25  42:14
42:22  43:3  43:22  44:6  44:12  44:16  44:20
45:4  45:15  45:17  46:1  46:11  46:13  46:16
46:20  47:1  47:2  47:17  47:22  47:24  48:9
48:10  48:17  48:24  49:22  49:23  49:23
50:12  50:15  50:17  50:24  50:25  51:8  51:11
51:12  51:16  51:23  52:13  52:13  52:17
53:10  53:21  53:22  53:23  54:4  54:5  54:7
54:15  54:17  54:20  54:21  54:23  54:24  55:7
55:10  55:12  55:12  55:14  55:24  55:25  56:3
56:5  56:11  56:17  56:24  57:19  58:7  58:10
58:11  58:13  58:13  58:19  59:1  59:3  59:5
59:13  59:16  59:19  59:20  59:24  60:1  60:2
60:10  60:12  60:13  60:15  60:15  60:20
60:23  60:24  61:1  61:13  61:16  62:1  62:9
62:9  62:10  62:12  62:14  62:17  62:22  62:22
62:24  63:6  63:13  63:15  63:16

| Word | Page:Line |
|------|-----------|

**and**(301) 63:17 63:20 64:6 64:17 64:18 64:22 64:24 65:5 65:8 65:24 66:3 66:11 66:16 66:17 66:19 66:20 66:21 66:23 66:24 66:25 67:5 67:6 67:8 67:9 67:9 67:11 67:13 67:16 67:18 67:21 67:24 68:14 68:24 69:5 70:15 70:20 71:2 71:3 71:20 71:21 72:11 73:1 73:8 73:8 73:13 73:20 74:15 74:19 75:1 75:1 75:9 75:15 75:15 76:8 76:14 76:17 76:25 77:10 77:13 77:25 78:4 78:9 78:11 78:20 78:23 79:1 79:13 79:14 79:17 80:8 80:9 80:20 81:4 81:4 81:10 81:11 82:1 82:2 82:7 82:11 82:14 83:4 83:8 83:14 84:14 84:19 84:22 85:2 85:23 85:24 86:2 86:7 86:11 86:12 86:15 86:18 87:1 87:6 87:17 88:2 88:4 88:9 88:13 88:16 89:6 89:10 89:11 89:12 89:14 89:14 89:15 89:17 89:19 89:19 89:20 89:21 89:22 90:3 90:10 90:14 90:15 90:19 90:21 91:1 91:6 91:7 91:10 93:21 93:23 93:25 94:4 94:20 94:20 94:22 94:24 95:2 95:3 95:5 95:6 95:7 95:10 95:12 95:14 95:14 95:15 95:16 95:16 95:19 95:25 96:1 96:6 96:7 96:17 96:22 96:22 97:3 97:5 97:6 97:9 97:10 97:11 97:11 97:13 97:16 97:18 98:6 98:13 98:16 98:17 98:18 98:22 99:2 99:4 99:6 99:11 99:12 99:13 99:16 99:18 99:20 100:16 100:17 101:3 101:4 101:11 101:15 101:16 101:23 101:25 102:3 102:7 102:8 102:9 102:9 102:14 102:16 102:18 102:21 102:22 102:25 103:1 103:5 103:11 103:14 103:17 103:23 104:1 104:2 104:4 104:8 104:22 104:24 105:3 105:7 105:8 105:14 105:19 105:21 105:21 105:22 106:3 106:6 106:7 106:12 106:13 106:19 106:25 107:1 107:5 107:7 107:9 107:10 107:11 107:21 107:25 108:1 108:3 108:5 108:11 108:14 109:2 109:2 109:8 109:9 109:14 109:17 110:1 110:2 110:7 110:11 110:20 110:21 110:21 110:24 110:25 110:25 111:3 111:8 111:12 111:13 111:15 111:16 111:17 111:19 111:22 112:2 112:9 112:13 112:14 112:15 112:17 112:17 112:18 112:25 113:2 113:6 113:9 113:15 113:17 113:19 113:24 114:4 114:6 114:7 114:11 114:11 114:15 114:16 114:17 114:21 115:9 115:12 115:14 115:15 115:16 115:21 115:22 116:14 117:2 117:12

**and**(63) 117:13 117:15 117:15 117:16 117:17 117:21 117:24 118:6 118:10 118:13 118:16 118:18 118:21 119:4 119:19:13 119:13 119:14 119:18 119:21 119:23 119:25 119:25 120:6 120:15 120:1 120:20 121:1 121:10 121:20 121:20 121:23 122:1 122:6 122:7 122:11 122:13 122:17 122:18 122:19 122:21 122:21 123:1 123:14 123:15 123:18 123:22 123:24 123:24 124:12 124:15 125:1 125:2 125:6 125:8 125:9 125:14 125:15 125:20 126:3 126:4

**and/or**(1) 124:17
**animak**(1) 64:16
**announcement**(1) 121:13
**another**(7) 8:16 29:4 41:23 54:17 55:22 64:6 118:16

**answer**(12) 41:9 47:24 48:20 83:3 87:4 87:8 103:2 103:9 104:19 105:3 117:1 117:3

**any**(77) 9:1 11:9 11:13 13:16 13:20 16:1 16:3 16:4 16:5 16:5 17:6 18:3 18:11 18:12 20:1 20:2 20:5 22:18 23:12 23:17 23:17 23:20 23:20 24:6 24:9 24:11 31:25 34:13 46:3 47:4 47:14 51:9 51:9 51:12 53:16 55:8 55:18 58:14 58:20 61:21 63:20 63:21 65:6 67:25 68:20 70:25 77:12 78:1 78:12 83:1 85:14 87:7 96:16 97:16 97:18 97:19 97:20 97:25 98:2 98:24 102:1 102:2 102:14 102:15 103:8 103:9 111:3 111:11 111:12 116:8 118:24 118:25 119:7 125:14 125:4

**anybody**(2) 86:3 92:8
**anyone**(3) 53:16 91:9 100:15
**anything**(16) 20:4 23:13 37:16 42:16 50:21 61:17 61:24 62:4 73:22 102:14 105:20 113:13 113:21 122:19 123:2 123:6

**anyway**(2) 95:17 96:1
**anywhere**(1) 51:10
**apology**(1) 14:21
**appeal**(1) 99:16
**appeals**(1) 106:6
**appear**(2) 73:16 115:3
**appearances**(5) 3:1 4:1 5:1 5:27 6:5
**appears**(1) 14:9
**applicable**(1) 108:17
**applicant**(1) 116:20
**applicants**(1) 116:15
**application**(6) 10:4 17:10 17:18 101:11 119:3 119:5

**applications**(2) 9:18 102:12
**applied**(18) 17:15 25:1 26:25 27:2 28:5 28:18 28:25 29:1 29:3 30:23 49:19 50:5 60:18 108:1 110:20 113:3 113:4 113:6

**applies**(7) 18:5 21:24 22:18 23:20 24:5 38:25 45:9
**apply**(20) 20:14 22:10 22:22 24:18 52:4 56:13 62:5 62:6 62:24 86:10 100:12 100:14 100:22 105:25 105:25 107:23 114:10 114:16 119:24

**applying**(11) 16:21 26:5 81:17 86:16 100:13 100:14 101:18 101:19 102:7 103:6 113:2
**appreciate**(4) 89:25 94:16 122:5 122:7
**approach**(14) 9:21 11:17 13:25 30:14 61:18 72:13 86:15 108:22 109:25 109:25 110:21 110:25 111:12 111:16

**appropriate**(1) 39:12
**approve**(4) 9:19 12:1 90:23 91:1
**approved**(8) 8:17 33:11 58:6 58:8 58:9 102:19 107:11 117:16
**approving**(2) 36:2 54:24
**approximately**(3) 84:12 93:21 112:6
**arbitrability**(8) 19:4 20:13 28:5 38:21 38:24 39:11 52:2 63:20
**arbitrable**(9) 18:4 19:2 39:13 43:22 63:9 63:14 63:15 63:16 63:22
**arbitrary**(1) 89:12
**arbitrate**(8) 19:18 21:8 39:1 39:4 39:5 39:6 39:22 42:8
**arbitrated**(1) 25:6

**arbitration**(109) 12:15 16:3 16:9 17:3 17:21 17:25 18:4 18:8 18:13 18:24 19:18 19:20 19:22 19:24 20:17 20:20 20:22 21:5 21:13 21:14 21:23 21:24 22:1 22:15 22:16 23:19 24:13 24:16 25:1 25:9 25:24 27:23 28:3 28:18 29:16 30:1 30:4 30:7 30:12 35:16 37:25 38:13 38:18 39:10 39:23 39:25 40:2 40:6 40:18 41:2 41:6 41:20 41:23 42:2 42:3 43:21 44:11 44:13 44:22 45:8 45:9 45:12 45:13 45:14 45:16 45:18 45:24 46:21 52:5 52:6 52:8 52:10 57:10 58:10 58:12 58:25 63:23 63:24 89:16 89:19 95:14 96:15 97:18 101:1 101:25 103:3 106:3 106:10 106:21 106:23 107:21 107:25 108:4 108:7 108:23 109:7 109:8 109:12 109:15 110:3 110:6 110:12 110:13 110:16 117:6 117:18 117:25 120:2

**arbitrator**(30) 17:13 23:22 24:7 27:17 27:21 35:25 41:1 62:5 89:15 90:15 98:7 98:18 98:19 99:14 99:20 102:2 102:12 102:20 102:25 103:4 103:8 105:16 108:3 111:15 113:18 118:15 118:19 118:23 119: 120:5

**arbitrators**(1) 30:2
**are**(65) 16:9 16:19 17:14 17:15 23:14 23:16 26:10 26:19 27:4 27:14 31:22 35:14 35:17 36:7 37:1 37:11 50:2 50:21 51:18 54:8 57:1 57:11 57:16 59:8 59:8 59:20 61:6 61:8 61:11 61:21 62:6 68:13 72:4 76:15 83:15 83:25 87:17 89:12 89:12 89:24 95:7 95:9 95:10 96:12 97:22 97:22 99:7 99:19 100:16 100:16 100:17 101:9 103:1 103:12 103:22 104:14 109:3 109:9 109:12 110:7 116:2 119:3 121:12 122:18 126:9

**arguable**(1) 19:7
**arguably**(5) 19:11 21:11 21:12 27:19 27:2
**argue**(1) 35:10
**argued**(3) 41:11 41:16 43:1
**argues**(1) 16:23
**arguing**(7) 20:25 21:3 26:6 37:22 41:17 46:2 46:6
**argument**(6) 17:1 31:23 31:24 61:13 88:19 103:22

**arguments**(3) 31:6 79:14 92:5
**arises**(1) 120:20
**arising**(2) 25:11 41:3
**armstrong**(1) 5:40
**around**(2) 54:23 66:25
**arrangements**(2) 10:8 78:17
**arsht**(1) 1:22
**as-is**(1) 117:22
**aside**(1) 78:11
**ask**(10) 9:20 13:17 68:4 79:13 105:5 107:18 108:5 111:25 112:22 115:9

**asked**(5) 9:12 12:13 55:16 98:23 105:4
**asking**(21) 30:18 35:14 35:17 35:24 36:8 38:2 44:2 57:3 57:4 57:7 57:20 62:4 62:5 62:22 63:10 79:19 84:7 84:7 87:15 88:5 120:6
**asks**(1) 109:20
**aspect**(1) 43:20
**assert**(2) 94:22 125:20
**asserted**(1) 19:21
**asset**(1) 67:15
**assets**(3) 90:20 124:9 124:17
**assist**(2) 9:25 114:1
**associated**(1) 49:11
**assume**(6) 42:12 75:3 103:4 103:7 105:6 105:11

**assurance**(2) 19:19 22:13
**astonishing**(2) 97:21 97:22
**attached**(2) 32:11 73:9
**attaches**(1) 78:20

**attempt**(6) 12:13 33:10 37:16 37:22 41:8 94:22

**attempting**(1) 115:12
**attempts**(1) 38:15
**attention**(2) 73:1 75:15
**attorney**(1) 115:1
**attribute**(2) 62:13 62:14
**auction**(1) 88:18
**audio**(3) 14:7 14:8 94:7
**audited**(2) 80:18 80:18
**auditor**(2) 111:9 111:20
**authority**(1) 58:11
**authorize**(1) 105:5
**automatically**(1) 111:20
**available**(1) 121:10
**ave**(2) 4:20 4:34
**avidity**(1) 5:11
**avoid**(2) 17:3 30:12
**avoidance**(4) 27:9 31:19 60:17 104:23
**aware**(3) 47:14 77:12 81:22
**away**(5) 14:9 14:10 107:22 107:23 122:20
**awful**(2) 103:13 103:14
**back**(16) 11:12 12:9 30:3 32:24 73:13 77:25 98:24 99:20 101:13 101:24 104:1 112:15 117:19 121:1 122:2 125:12
**backdoor**(1) 88:19
**background**(1) 16:9
**bad**(1) 111:10
**baffar**(1) 120:12
**baked**(4) 17:14 30:20 62:6 89:24
**balance**(23) 24:10 25:13 26:24 26:25 43:9 43:14 49:17 50:4 50:11 60:1 60:2 64:11 64:20 65:22 68:10 72:25 77:7 78:6 78:7 82:7 84:5 84:12 84:18
**balances**(3) 72:25 77:6 78:18
**ballot**(4) 36:17 37:1 37:6 37:11
**bankruptcy**(4) 1:1 1:18 39:3 117:21
**bargain**(3) 17:17 17:20 107:11
**bargained**(8) 17:11 98:13 98:14 98:22 102:4 102:18 102:18 106:1
**bargaining**(1) 19:8
**bargains**(1) 110:8
**based**(10) 43:7 43:17 68:21 78:7 78:18 78:19 83:5 86:16 90:25 107:3
**basically**(1) 29:11
**basis**(5) 9:3 13:1 83:3 90:18 121:1
**baton**(1) 32:21
**battling**(1) 14:22
**bears**(2) 54:2 55:24
**beast**(1) 100:19
**beat**(1) 93:15
**became**(2) 55:2 55:12
**because**(61) 9:13 16:24 17:8 17:13 17:23 19:3 19:5 20:6 22:12 22:25 24:19 30:13 31:22 32:18 36:11 38:25 42:22 42:25 48:1 48:4 52:17 55:2 58:16 59:2 59:25 60:23 61:2 61:23 63:9 64:9 64:10 64:10 66:22 67:22 70:13 73:16 81:2 87:8 90:11 96:21 96:21 98:20 99:15 101:12 102:3 102:17 102:22 102:24 103:21 104:18 105:6 106:1 107:4 113:24 117:14 118:5 118:9 119:16 122:16

**become**(1) 114:17
**becomes**(3) 22:11 27:18 62:17
**been**(43) 12:9 17:2 20:5 25:8 32:18 42:17 44:14 49:9 52:21 60:6 60:6 62:1 64:7 65:6 68:10 68:11 72:6 72:8 72:10 72:16 77:22 78:3 82:6 83:9 89:6 89:10 90:10 90:11 90:22 91:14 92:5 98:7 90:7 110:16 114:23 115:8 117:12 117:18 120:4 120:5 120:15 120:21 122:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**before**(62) 1:17 25:8 30:11 33:24 35:5 35:8 35:20 38:18 38:17 38:18 38:19 42:8 44:5 44:6 46:6 46:16 50:19 50:25 53:10 53:10 54:4 54:4 55:7 56:15 56:22 58:21 60:21 64:14 66:3 66:14 68:14 70:20 73:20 76:23 80:4 86:1 86:11 88:9 88:11 89:11 90:14 90:22 90:25 92:15 105:12 105:15 109:21 110:2 111:23 113:18 114:8 114:10 115:4 115:19 115:24 116:7 119:8 120:14 120:15 120:18 125:9 125:17

**begin**(1) 12:10
**behalf**(11) 9:8 10:24 78:10 82:23 90:8 91:15 91:16 91:22 92:21 93:20 125:2
**being**(9) 14:13 41:5 57:17 60:1 63:15 65:12 98:10 102:12 120:18
**believe**(17) 13:12 13:15 16:14 20:8 21:21 30:10 53:22 61:8 62:23 72:12 83:1 85:11 94:3 124:12 125:9 125:15 125:19
**believes**(4) 16:15 87:7 90:12 125:14
**bell**(1) 2:39
**belongs**(1) 54:15
**below**(1) 78:2
**benefit**(1) 104:5
**benesch**(1) 2:18
**best**(3) 68:25 91:6 123:4
**better**(1) 14:14
**between**(15) 18:8 81:10 82:7 82:11 94:23 95:2 95:11 96:19 98:17 102:13 105:18 112:24 113:15 115:14 122:13
**beyond**(1) 75:17
**bid**(2) 90:24 91:5
**bidders**(5) 55:3 55:11 55:12 90:24 118:2
**bidding**(1) 90:23
**bifurcated**(1) 78:18
**bifurcation**(2) 77:5 86:21
**billings**(4) 27:11 49:24 78:19 104:24
**bishops**(1) 2:41
**bit**(4) 14:10 17:24 34:6 74:19
**black**(2) 95:5 96:7
**blair**(2) 3:42 13:9
**blessed**(3) 115:15 117:12 117:16
**blich**(1) 5:6
**blow**(1) 30:18
**blue**(3) 24:14 25:7 44:8
**board**(1) 111:17
**boggs**(1) 4:13
**bond**(1) 58:12
**bondholders**(2) 3:13 91:12
**bonus**(2) 25:4 41:12
**book**(3) 104:10 107:17 108:25
**books**(5) 25:12 42:25 48:5 50:17 80:17 83:11 83:20 84:16 84:20 86:5 86:22 105:22
**boosting**(1) 52:18
**boot-strapping**(2) 105:13 107:2
**border**(1) 107:21
**both**(23) 12:18 12:18 28:5 49:14 49:23 50:1 67:21 68:20 82:2 87:19 94:15 95:3 98:18 99:23 99:24 104:3 104:3 104:8 107:20 113:20 115:15 115:21 117:4
**botter**(21) 2:32 10:19 10:22 10:23 11:8 11:15 123:3 123:7 123:11 123:13 123:14 123:17 123:22 124:24 125:8 125:1 125:14 125:19 126:2 126:10
**bottom**(1) 97:14
**boundaries**(1) 21:25
**boundary**(5) 39:2 40:5 45:7 45:12 45:25
**brad**(3) 2:33 24:8 90:7
**brandywine**(1) 3:8
**bratt**(2) 42:3 43:5
**bratt's**(1) 43:16
**breach**(3) 29:24 43:20 126:24

**breached**(1) 29:7
**break**(3) 92:9 92:9 92:13
**breakdown**(1) 67:12
**brett**(1) 24:21
**brief**(4) 8:19 9:10 90:9 121:4
**briefly**(9) 10:15 17:22 61:1 85:20 87:16 88:24 89:3 91:13 109:2
**bright**(5) 95:10 95:12 95:17 101:21 102:1
**bring**(3) 62:24 110:11 111:20
**broad**(5) 21:8 38:25 39:10 40:20 107:22 109:9 109:16
**broader**(1) 20:11
**broadly**(3) 20:19 52:7 110:5
**bromley**(1) 1:33
**brought**(2) 95:19 111:23
**bryant**(1) 2:34
**buchanan**(1) 3:20
**build**(1) 109:6
**building**(2) 3:8 4:13
**bullet**(2) 101:5 112:21
**burden**(1) 50:21
**buren**(1) 4:42
**buried**(1) 36:11
**business**(21) 33:18 36:2 42:13 48:6 49:7 49:12 49:17 50:4 54:23 55:8 59:1 75:4 77:8 78:8 80:17 83:11 83:21 84:5 86:5 86:21 106:20
**but**(114) 8:21 12:21 14:23 15:23 16:23 17:8 18:15 19:4 20:4 21:18 21:18 22:21 23:1 23:5 23:23 24:19 27:3 28:15 29:17 31:16 31:21 32:7 34:20 34:23 35:22 36:10 36:22 38:24 39:3 40:3 41:5 42:19 44:21 46:24 49:9 52:24 53:7 53:17 55:14 57:13 58:15 58:22 59:7 59:19 59:20 59:20 60:25 61:10 61:10 61:12 61:21 61:24 62:20 63:12 64:8 64:23 64:25 65:9 65:19 65:25 70:23 75:9 76:6 76:23 77:20 81:13 81:23 82:6 82:12 82:18 82:21 84:24 85:7 86:22 87:10 87:14 88:1 88:15 89:9 91:24 95:3 98:10 99:5 100:7 101:6 101:17 101:17 103:16 103:18 108:13 109:24 110:9 111:1 112:11 113:10 113:13 113:14 114:9 114:12 114:20 114:23 116:9 116:22 116:25 117:9 118:17 119:17 120:12 120:18 120:22 121:15 122:15 123:17
**butterfield**(1) 5:14
**buyer**(12) 24:14 38:9 40:14 41:16 42:12 42:14 52:18 53:22 55:8 56:2 97:2 97:4
**buyer's**(1) 43:8
**buying**(1) 10:9
**byplay**(1) 79:18
**calculate**(4) 37:21 59:6 84:17 114:14
**calculated**(9) 66:7 66:8 66:9 68:17 73:24 74:2 74:17 84:4 96:23
**calculates**(1) 117:23
**calculating**(3) 29:19 46:13 75:2
**calculation**(11) 37:17 46:7 74:3 74:4 74:20 75:9 79:2 81:5 81:25 88:12 112:9
**calculations**(7) 46:20 75:12 77:21 78:1 78:5 78:13 112:14
**caleb**(1) 4:13
**call**(3) 70:24 71:16 86:21
**called**(6) 68:6 68:8 69:21 95:7 101:17
**calling**(1) 70:16
**calls**(1) 57:10
**came**(4) 53:22 55:12 55:25 55:25
**camera**(1) 34:18

**can**(42) 14:24 17:3 22:12 33:13 34:2 34:3 35:16 37:21 38:2 42:20 46:13 47:3 57:6 59:10 59:22 60:8 60:10 61:20 64:19 78:15 85:7 85:8 86:20 88:2 89:21 89:22 92:14 93:24 94:15 94:22 96:16 99:2 101:15 101:16 102:25 107:22 107:22 108:3 111:1 115:20 122:8 123:24
**can't**(21) 15:7 31:22 34:3 34:9 34:9 34:11 34:23 46:15 46:16 47:21 52:10 52:10 61:5 82:23 100:13 103:3 104:4 104:5 119:22 120:13
**canada**(10) 15:19 71:12 91:23 99:17 106:6 115:7 115:15 119:15 119:16 126:4
**canadian**(16) 8:2 91:22 91:25 93:8 96:5 108:18 115:7 115:10 116:7 116:13 118:3 121:20 121:22 123:22 124:13 125:2
**canadians**(3) 14:25 125:3 125:19
**canceled**(2) 109:18 109:21
**cannot**(7) 16:20 20:18 39:24 41:22 52:5 59:23 118:6
**capital**(10) 28:2 28:4 28:8 28:21 28:22 45:11 67:1 67:2 67:3 67:14
**capped**(1) 42:15
**care**(1) 55:20
**careful**(1) 14:18
**carries**(1) 39:10
**carve-out**(2) 37:13 118:20
**carved**(3) 50:22 117:7 117:10
**carves**(2) 117:5 117:5
**carving**(1) 48:2
**case**(49) 1:4 18:23 19:8 19:25 20:2 20:22 21:20 22:11 24:8 24:11 24:14 25:18 27:21 27:24 28:2 28:10 28:13 29:6 29:17 30:5 32:3 32:20 40:10 40:19 42:4 44:9 45:7 49:14 49:16 51:4 51:16 51:21 57:9 89:17 102:3 103:13 105:22 107:17 108:18 108:21 108:24 108:25 109:2 119:15 119:21 119:25 120:17 121:17 122:7
**cases**(18) 11:9 11:10 21:20 24:1 24:17 27:25 38:19 40:23 44:23 58:2 58:13 62:20 62:20 62:21 63:5 95:4 124:8 124:9
**casgrain**(2) 5:20 5:20
**cash**(4) 56:18 60:6 80:9 83:4
**categories**(1) 67:7
**category**(1) 78:17
**ccaa**(2) 116:15 116:19
**cede**(1) 12:2
**center**(1) 5:13
**centre**(1) 5:23
**cert**(1) 126:25
**certain**(5) 14:19 39:10 59:11 70:17 86:22 79:18 86:14 103:11 109:23 121:21 122:11 122:18 125:6
**certification**(1) 126:19
**certified**(1) 96:14
**certify**(1) 126:20
**cetera**(1) 101:20
**chain**(3) 99:18 111:23 113:14
**chance**(1) 97:2
**chancellery**(1) 121:21
**chancellor**(5) 21:21 39:18 39:19 40:19 40:22
**chandler**(3) 21:21 39:20 40:19
**chandler's**(2) 39:18 39:18
**change**(8) 10:15 11:23 44:15 46:16 53:9 54:4 82:7 88:8
**changed**(1) 88:19
**changing**(2) 35:4 35:19

**chapter**(1) 1:7
**charade**(1) 102:16
**charles**(1) 10:7
**chart**(2) 34:4 34:1
**chase**(1) 3:16
**chemistry**(1) 14:23
**cheney**(1) 4:19
**chicago**(4) 3:37 4:29 4:36 4:43
**chief**(1) 66:23
**chilmark**(2) 4:32 4:32
**choice**(1) 40:25
**chose**(1) 16:10
**christopher**(1) 2:25
**circle**(1) 116:14
**circuit**(9) 18:20 38:23 39:8 42:3 43:3 43:24 44:8 44:19 52:3
**circular**(3) 103:21 103:22 103:22
**circumstances**(1) 52:4
**cited**(5) 21:20 29:17 39:8 40:23 119:16
**cites**(2) 24:1 110:5
**citing**(1) 40:7
**claim**(9) 20:9 24:21 25:15 25:16 29:24 44:23 45:21 45:4 63:6
**claiming**(4) 18:14 21:2 29:7 116:25
**claims**(1) 25:10
**clarification**(2) 123:18 124:18
**clarify**(3) 77:5 79:1 123:24
**clarifying**(1) 124:24
**clark**(1) 3:35
**clause**(65) 16:11 17:5 18:10 18:15 18:24 19:20 19:22 20:8 20:23 22:4 22:15 22:18 23:5 23:10 23:16 24:5 24:22 24:25 25:1 25:9 25:14 25:24 27:21 28:3 28:6 28:6 28:18 29:16 30:4 39:10 39:14 39:16 43:22 45:9 52:5 52:6 55:19 57:14 58:6 61:18 88:17 95:14 101:25 106:8 106:13 106:22 106:23 107:25 108:7 108:24 109:2 109:12 109:16 109:20 110:3 110:12 110:13 110:25 111:3 111:12 111:19 114:21 117:5 117:6 117:18
**clauses**(12) 16:9 18:8 21:24 24:17 39:11 41:3 105:25 105:25 107:21 109:8 109:8 110:18
**clear**(32) 10:10 10:11 14:9 14:18 18:2 31:1 33:10 41:8 51:17 53:8 54:25 60:17 72:16 77:24 80:24 81:2 81:4 84:7 87:6 87:11 88:16 89:18 90:13 90:25 91:4 105:20 107:3 108:21 119:10 125:8 125:11 126:5
**clearly**(15) 12:3 22:23 28:3 28:8 40:21 53:11 54:7 54:19 69:12 105:19 117:5 117:7 119:2 119:8 119:9
**cleary**(1) 1:31
**clerk**(7) 8:2 8:4 71:20 71:24 93:7 93:8 121:8
**client**(4) 16:15 31:11 31:12 31:14
**client's**(1) 31:14
**clock**(1) 93:24
**close**(5) 67:20 86:14 89:5 95:25 119:14
**closed**(4) 56:16 64:14 102:3 119:25
**closely**(1) 19:1
**closest**(1) 28:10

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **closing**(115) 22:19 23:5 23:7 23:11 23:13 23:21 23:23 24:10 24:18 25:8 25:13 25:20 25:21 25:25 28:16 29:11 33:19 33:19 33:24 35:4 35:5 35:8 35:19 35:20 36:15 37:10 38:8 38:9 40:12 43:9 43:14 44:6 44:7 46:16 46:17 48:3 49:8 49:10 49:12 49:15 50:14 50:16 50:20 50:25 55:6 55:7 56:15 56:19 56:22 57:8 58:21 59:1 60:4 60:21 61:16 62:14 62:15 64:13 65:3 66:3 66:15 68:12 68:15 70:20 70:20 72:8 72:22 73:20 74:12 74:15 75:11 76:23 77:6 77:7 80:4 80:10 81:20 82:5 83:5 84:4 84:22 86:1 86:13 88:3 89:4 89:8 95:20 96:11 96:18 97:1 97:8 97:16 98:3 98:6 98:12 98:15 100:1 100:3 100:11 100:20 101:8 104:8 104:16 105:13 106:15 106:20 111:5 111:7 111:13 111:24 112:6 112:11 112:12 117:7 119:25 | | **confusion**(2) 123:23 124:23 **connection**(4) 49:13 77:14 123:19 124:3 **connelly**(72) 3:42 8:7 13:4 13:9 13:10 13:12 13:15 13:25 14:2 14:11 14:13 14:21 14:21 15:6 15:10 15:14 15:18 15:23 19:10 22:18 22:10 23:4 31:9 32:23 33:1 33:4 33:5 57:24 57:25 58:1 58:4 59:16 59:19 61:4 61:7 65:13 65:16 65:18 65:21 65:24 68:8 68:23 69:2 69:4 69:8 69:10 69:14 69:16 69:22 69:24 70:9 70:15 71:1 72:1 72:13 72:18 72:20 75:20 75:23 76:1 76:2 79:9 79:10 85:14 85:15 88:24 88:25 89:1 90:2 90:22 126:15 | | **could**(32) 9:15 9:20 14:4 15:25 18:1 18:22 19:13 20:15 21:19 24:3 26:3 26:15 27:20 28:1 28:12 29:15 29:22 31:16 44:6 58:18 68:16 73:1 73:12 77:10 79:25 84:24 85:1 92:8 100:6 109:21 110:15 111:6 **couldn't**(1) 119:9 **counsel**(28) 8:15 8:25 12:9 14:9 14:19 16:8 32:23 33:1 36:10 39:17 40:10 48:10 56:1 58:5 58:16 58:19 60:20 62:22 63:25 64:6 66:1 75:17 87:17 89:7 89:13 93:4 115:4 121:20 **counsel's**(2) 8:21 9:3 **count**(2) 88:1 88:2 **counted**(1) 100:9 **counter**(1) 69:18 **countries**(1) 122:13 **country**(1) 17:2 **county**(1) 87:14 **couple**(1) 31:5 **course**(21) 17:24 22:7 26:19 32:25 56:21 58:7 58:11 62:10 65:4 65:5 66:11 88:25 90:3 99:11 99:15 101:1 108:4 110:4 115:16 118:9 118:15 | | **crafted**(1) 20:18 **create**(1) 119:23 **creates**(1) 37:23 **creating**(1) 89:2 **creditors**(4) 90:9 91:4 91:16 115:5 **criteria**(4) 59:11 59:22 87:22 87:24 **criticism**(1) 20:3 **cross**(2) 4:4 7:4 **cross-examination**(1) 79:21 **cross-examin**(1) 71:4 **crowell**(2) 4:18 4:18 **crystal**(1) 126:5 **cut**(2) 9:15 103:5 **cuts**(1) 58:14 **cvas**(9) 8:23 36:2 54:23 75:4 77:15 80:17 83:11 86:5 91:1 |
| **co-counsel**(1) 115:5 **cold**(2) 14:22 15:1 **colin**(1) 1:42 **colleagues**(1) 91:23 **collective**(1) 19:7 **combination**(1) 78:8 **combinations**(2) 77:9 84:5 **come**(16) 8:2 11:12 27:6 27:9 32:24 56:18 80:9 86:14 99:20 100:9 100:11 100:21 102:8 112:8 112:20 114:20 | | **consequences**(1) 17:18 **consider**(5) 21:25 23:22 39:13 107:19 **considered**(2) 27:20 113:21 **considering**(1) 39:12 **consistent**(17) 16:17 27:2 27:4 27:12 30:15 30:16 32:14 49:19 49:20 50:6 60:18 61:11 61:25 63:21 104:25 105:24 111:15 | | **court**(272) 1:1 5:47 8:3 8:5 8:9 8:13 8:17 8:18 9:3 9:4 9:6 9:11 9:17 9:22 10:2 10:10 10:21 11:7 11:15 11:18 11:22 12:1 12:4 12:6 12:13 12:17 13:3 13:16 13:21 14:1 13:14 13:17 13:19 13:23 14:1 14:6 14:11 14:15 14:17 14:25 15:3 15:9 15:17 15:22 16:23 17:4 17:19 18:2 18:3 18:25 19:3 19:9 19:14 19:15 20:10 20:13 20:16 20:21 21:14 21:20 21:25 22:5 22:7 23:3 24:24 25:4 25:8 25:12 27:25 28:4 28:7 28:16 29:25 30:18 31:8 32:3 32:7 32:22 32:25 32:2 33:5 34:3 34:6 34:10 34:13 34:16 34:18 34:22 34:25 35:14 35:17 35:24 36:1 36:2 36:3 36:7 36:8 36:19 36:21 38:2 38:22 38:23 39:12 39:23 40:7 41:21 43:2 45:1 45:3 45:8 45:17 45:23 46:2 46:8 46:10 46:14 46:18 47:2 47:2 47:5 47:7 47:12 47:16 48:14 48:17 48:21 49:1 49:4 51:3 51:5 51:7 51:11 52:5 53:20 54:9 54:15 56:5 57:2 57:4 57:7 57:19 57:19 57:20 57:21 57:23 57:25 58:3 58:6 58:7 58:9 58:10 59:15 59:18 61:3 61:5 62:5 62:21 63:10 63:13 64:24 65:11 65:15 66:9 65:20 65:23 66:21 68:4 68:6 69:1 69:3 69:5 69:20 69:23 70:1 70:6 70:12 71:3 71:8 71:13 71:16 72:15 72:19 75:24 79:10 79:16 79:19 85:13 85:16 85:19 85:22 87:5 87:15 88:5 88:13 88:15 88:23 88:25 89:17 89:18 90:6 91:8 91:13 91:17 91:19 92:2 92:5 92:11 92:21 92:23 93:4 93:9 93:11 93:17 94:9 94:10 98:11 99:7 99:13 99:16 102:13 103:10 105:25 106:5 106:6 106:6 107:1 107:5 107:5 107:7 107:10 107:11 115:8 117:8 117:13 118:1 118:7 119:15 119:16 119:20 120:6 120:13 120:18 120:21 121:3 121:5 121:9 121:12 121:16 121:20 121:21 121:22 122:1 122:2 122:11 122:15 122:24 123:2 123:6 123:10 123:12 123:16 123:21 124:21 125:6 125:1 125:22 125:25 126:2 126:8 126:12 126:17 126:17 | | **data**(2) 1:49 67:3 **date**(37) 33:19 33:19 33:24 35:5 35:5 35:8 35:19 35:20 37:10 44:6 44:7 46:16 46:17 49:8 49:10 49:12 49:15 49:18 50:4 50:14 50:20 50:25 55:6 55:7 59:1 60:1 60:4 61:16 76:23 81:20 82:5 84:4 84:6 84:22 104:8 104:16 105:13 **david**(16) 1:35 1:41 2:32 4:5 9:20 10:23 48:8 48:10 50:6 56:24 72:12 80:1 83:7 84:10 86:19 123:14 **day**(7) 12:15 55:5 55:13 100:18 110:16 110:16 126:8 **days**(11) 23:18 56:15 65:6 66:3 66:13 73:20 80:4 98:17 99:17 107:8 120:2 **deal**(29) 11:11 31:7 31:17 31:18 31:21 32:17 32:20 54:20 55:2 55:14 56:2 56:25 57:6 64:14 65:22 67:20 88:12 98:13 98:13 98:25 99:1 99:1 117:18 117:20 117:22 117:25 118:1 122:8 124:4 **dealing**(4) 20:6 20:21 25:3 109:3 **deals**(2) 11:5 64:2 **dealt**(3) 28:4 63:9 124:10 **debate**(1) 119:19 **debtor**(2) 115:23 125:2 **debtors**(31) 1:11 1:22 2:4 7:5 9:8 9:24 11:10 11:12 54:20 90:12 90:17 90:19 91:3 91:15 91:23 91:25 92:1 92:19 96:4 96:5 115:6 115:11 116:7 116:13 116:15 118:4 123:22 124:12 124:14 124:15 124:15 |
| **comes**(5) 87:24 97:10 97:11 106:18 109:17 **comfort**(2) 67:19 92:9 **comma**(1) 63:16 **comment**(4) 14:5 119:13 119:18 **commentary**(1) 112:15 **comments**(5) 8:21 9:3 95:19 103:17 117:19 **commerce**(1) 5:47 **committed**(1) 112:10 **committee**(14) 2:24 10:14 10:25 11:1 90:9 90:12 90:16 91:3 91:16 115:4 123:14 124:15 124:25 125:14 | | **consistently**(3) 29:1 38:5 38:15 **constricted**(1) 18:16 **construct**(1) 87:5 **construction**(1) 18:6 **construed**(2) 16:10 56:3 **construes**(1) 87:6 **consulting**(3) 4:39 4:40 84:18 **contact**(1) 39:24 **contacts**(1) 76:4 **contemplated**(3) 23:17 24:6 100:25 **contending**(2) 97:22 97:23 **contends**(1) 43:5 **content**(1) 111:21 **context**(7) 18:10 20:12 20:12 94:20 105:9 106:9 106:24 | | | | **december**(3) 1:13 8:1 126:24 **decide**(37) 24:14 26:16 27:15 30:2 35:14 35:17 35:24 36:1 38:2 44:2 45:24 45:25 47:2 47:20 47:21 47:22 48:5 54:9 57:2 57:4 57:7 57:10 57:19 57:20 69:21 79:20 84:15 84:19 88:5 94:4 95:7 98:18 114:2 118:18 119:7 120:11 120:13 **decided**(5) 46:18 52:17 55:14 70:12 87:13 **decides**(6) 47:2 94:4 105:19 117:1 118:11 118:12 **deciding**(2) 26:13 51:22 **decision**(13) 20:4 28:11 98:24 99:13 99:14 99:15 107:8 108:25 109:9 110:10 118:12 121:23 122:17 |
| **committee's**(1) 11:20 **common**(2) 41:5 43:7 **communication**(3) 8:18 65:7 121:25 **communication**(1) 113:15 **company**(4) 1:40 44:9 52:15 72:5 **compensation**(1) 10:3 **competing**(1) 55:3 **complete**(1) 116:14 **completed**(2) 78:16 92:5 **completely**(5) 47:1 63:7 63:18 64:12 64:15 **complex**(1) 110:17 **complicated**(1) 78:8 **complications**(2) 114:9 114:10 **comply**(1) 87:19 **compucom**(9) 28:11 28:13 45:1 45:22 51:4 51:5 51:21 53:21 89:17 | | **continued**(5) 2:2 3:2 4:2 5:2 6:6 **contract**(69) 15:24 18:6 20:9 21:11 24:23 25:3 25:15 25:16 25:23 26:9 26:11 28:22 29:21 30:1 31:11 31:12 43:20 44:20 57:1 58:7 58:9 58:11 58:12 58:23 58:24 62:7 62:24 63:1 63:8 66:12 80:25 89:14 90:14 91:5 94:25 95:13 95:19 95:20 96:1 96:6 96:19 96:21 96:7 97:6 97:24 100:13 100:14 100:14 101:18 101:19 101:24 102:1 102:10 102:17 102:19 103:7 105:5 107:9 108:15 109:21 113:14 115:13 117:1 117:15 119:3 119:8 119:23 119:24 | | **court's**(7) 19:5 19:14 21:9 36:1 54:24 63:19 71:21 **court-approved**(1) 57:15 **courtroom**(4) 1:9 15:7 15:12 123:9 **courts**(27) 33:11 38:5 38:14 39:4 41:4 44:2 52:1 63:6 88:10 90:14 90:22 91:1 91:12 94:15 95:7 99:16 105:25 106:5 107:20 108:22 111:17 113:20 114:16 115:15 115:17 115:21 115:24 **covered**(3) 48:20 67:15 75:18 **covering**(2) 22:14 22:15 **covers**(2) 19:21 21:16 | | **decisions**(3) 45:5 52:16 122:3 **declaration**(20) 10:7 48:8 48:9 48:12 48:13 56:24 56:24 65:12 65:16 68:22 69:19 70:18 72:12 73:2 80:1 83:8 84:10 86:19 92:18 120:22 **declarations**(2) 72:16 **deduction**(1) 111:7 **deemed**(2) 23:14 97:12 **deep**(1) 61:9 **defer**(1) 91:23 |
| **computation**(1) 24:15 **conaway**(1) 3:5 **concept**(5) 26:19 26:21 62:1 62:8 104:12 **concepts**(3) 81:3 89:24 104:14 **concern**(1) 11:20 **concerned**(1) 122:18 **concerning**(2) 18:3 76:5 **concerns**(2) 33:9 51:9 **conclude**(1) 122:25 **concluded**(2) 110:2 110:14 **conclusion**(2) 57:12 110:6 **concurrent**(1) 122:3 **conditions**(1) 120:4 **conducted**(1) 8:16 **confidentiality**(1) 13:14 **confirm**(1) 13:19 **confirmed**(1) 86:7 **conflates**(1) 38:1 **conflict**(3) 29:18 53:2 97:25 **confused**(1) 60:16 | | **contracts**(5) 40:3 78:17 95:6 109:5 110:17 **contractual**(12) 31:23 35:25 44:12 47:20 53:11 61:19 113:4 113:8 114:6 115:18 115:22 115:25 **contrary**(1) 51:1 **contrast**(1) 25:18 **controversial**(1) 10:19 **conversation**(2) 55:21 79:8 **converse**(1) 22:17 **conveyed**(1) 121:24 **cooperative**(1) 109:1 **cooperatively**(1) 98:19 **copy**(2) 13:18 73:8 **core**(2) 52:24 110:19 **corners**(1) 106:13 **corp**(1) 44:9 **correct**(28) 31:8 46:4 54:1 54:1 56:13 57:17 57:18 69:7 71:5 73:8 73:21 80:4 80:7 80:10 80:11 80:13 80:14 81:1 81:20 82:3 82:4 82:9 83:12 84:16 84:21 93:23 96:18 126:20 **correctly**(5) 16:15 17:15 64:7 86:10 100:1 121:2 94:15 95:7 99:16 105:25 106:5 107:20 108:22 111:17 113:20 114:16 115:15 115:17 115:21 115:24 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **deferred**(156) 12:14  16:14  16:20  16:21 | | **diaz**(1) 1:49 | | **dispute**(128) 17:9  17:24  18:12  19:2  19:7 | | **doubtful**(1) 31:10 | |

deferred(156) 12:14 16:14 16:20 16:21
23:7 23:25 26:1 26:2 26:17 26:18 26:21
27:9 27:10 27:10 27:12 30:6 32:12 32:16
33:12 33:13 33:16 33:17 33:20 33:22
33:22 35:4 35:6 35:18 36:9 36:12 36:16
36:24 36:25 37:6 37:7 37:8 37:14 37:17
37:20 37:23 38:3 41:25 44:4 46:15 46:25
48:25 49:6 49:11 49:23 50:2 50:12 51:1
51:17 51:18 54:18 55:4 56:11 56:13 58:19
58:24 59:6 59:9 60:7 60:13 60:17 60:23
61:25 62:7 62:11 62:13 62:16 66:4 66:24
67:6 67:7 67:8 67:9 67:9 67:12 67:15
67:23 68:16 70:5 73:5 73:23 74:2 74:5
74:5 74:17 75:2 76:7 76:13 76:16 76:20
78:7 78:17 80:12 80:16 80:20 80:22 80:25
81:3 81:3 81:4 81:6 81:9 81:10 81:11
81:18 81:19 82:2 82:3 82:15 83:10 83:17
83:18 84:1 84:1 84:2 84:3 84:11 84:20
85:25 86:4 86:6 86:10 86:16 86:22 87:2
87:25 88:1 88:2 88:6 88:20 100:24 101:8
103:5 103:25 104:8 104:9 104:11 104:13
104:15 104:17 104:21 104:23 104:24 105:
105:11 105:12 105:13 108:13 111:4 112:6
114:14 115:25

**deferring**(1) 121:12

**defined**(14) 26:7 26:8 26:10 28:22 40:5
49:5 100:10 100:12 101:7 101:7 106:11
113:2 115:13 119:6

**defines**(1) 33:13

**definition**(67) 12:14 16:16 16:19 17:14
25:22 26:2 26:6 26:9 27:11 30:20 33:12
33:14 35:3 35:18 36:9 36:12 37:4 37:14
37:17 37:19 37:23 38:3 41:8 41:25 44:4
46:25 48:25 50:1 50:10 51:1 53:9 54:8
56:13 58:19 61:1 61:14 61:25 63:1 63:2
63:11 63:12 63:13 76:7 81:18 85:25 86:1
86:12 86:16 87:25 88:6 88:16 88:20 89:23
90:21 100:15 100:21 101:11 103:19 103:2
103:22 104:2 104:3 108:15 113:6 113:7
113:8 114:6

**definitions**(5) 55:4 62:6 94:19 100:23

**delaware**(7) 1:2 1:11 2:20 8:1 8:15 8:25
110:22

**delay**(2) 122:18 122:19

**delivered**(12) 33:23 35:8 36:14 37:9 50:13
50:24 73:18 81:20 87:1 96:17 120:1 120:

**delve**(1) 61:1

**demand**(1) 95:21

**denied**(1) 54:5

**deny**(2) 19:18 21:14

**depot**(2) 41:11 41:16

**depreciation**(1) 52:20

**derek**(2) 1:24 9:7

**derrick**(1) 5:30

**descoteaux**(1) 1:41

**described**(3) 84:8 86:18 86:19

**describes**(1) 34:1 83:8

**description**(2) 94:16 113:21

**despite**(1) 120:19

**detail**(1) 114:9

**detailed**(1) 74:3

**detailing**(1) 74:4

**determination**(10) 19:6 19:10 21:10 21:11
23:11 43:15 45:10 70:13 113:22 122:3

**determine**(12) 16:20 19:1 19:16 43:10
68:16 74:1 83:9 83:16 87:15 91:5 102:25
112:14

**determined**(6) 16:14 16:15 28:22 39:23
88:14 121:24

**developer**(1) 109:14

**developers**(3) 109:5 109:23 109:24

**development**(2) 109:7 110:17

**devon**(1) 4:26

diaz(1) 1:49

**dictate**(1) 55:5

**dictated**(2) 56:17 80:8

**did**(31) 10:6 21:7 30:14 41:1 48:3 58:7
59:16 64:19 68:12 68:15 74:6 74:7 74:8
74:10 74:12 74:14 74:16 75:9 75:10 75:1
77:4 78:4 78:24 79:6 79:8 81:6 82:14
82:14 82:17 82:20 110:4

**didn't**(11) 30:22 45:15 45:15 54:8 66:8
66:14 66:14 80:15 82:23 95:13 118:17

**didn't**(2) 16:3 114:12

**differ**(2) 77:24 112:14

**difference**(6) 44:10 75:8 81:10 81:25
112:20 120:20

**differences**(2) 82:11 94:23

**different**(21) 20:7 20:24 24:2 24:20 24:22
25:3 28:15 30:3 35:22 52:16 62:24 63:1
63:7 64:12 64:15 100:10 100:25 106:7
124:14 124:15 124:16

**differs**(1) 108:18

**difficult**(1) 103:3

**dig**(2) 61:8 74:19

**diligence**(1) 64:18

**direct**(4) 7:4 71:25 73:1 75:14

**directly**(3) 14:19 50:25 58:15

**disabled**(1) 5:51

**disagree**(12) 23:24 24:15 26:14 28:7 38:11
40:16 41:19 42:22 53:17 65:18 97:11
102:9

**disagreement**(55) 16:2 16:3 16:4 16:5
16:6 16:13 17:7 21:7 21:13 22:4 22:19
23:12 23:17 23:20 24:6 25:25 28:8 28:16
75:11 78:11 79:1 97:10 97:10 97:17 97:1
97:19 97:20 97:25 98:2 98:5 99:4 101:2
101:10 101:12 101:17 101:23 102:1 102:1
102:15 102:15 105:18 106:25 111:3 111:4
112:16 118:25 118:25 120:1 120:4

**disagreements**(6) 15:25 28:19 40:17 46:19
68:13 78:12

**disagrees**(1) 23:10

**disappear**(1) 18:18

**discern**(1) 119:10

**disclosed**(4) 118:1 118:1 118:2 118:2

**discrepancies**(2) 77:12 77:21

**discrepancy**(1) 112:24

**discretionary**(1) 45:19

**discuss**(7) 8:20 38:19 38:20 75:10 75:10
75:12 102:11

**discussed**(6) 48:7 52:9 56:23 75:1 77:20
121:23

**discusses**(1) 56:25

**discussions**(1) 68:10

**disposition**(1) 121:22

dispute(128) 17:9 17:24 18:12 19:2 19:7
19:11 19:21 20:8 20:23 20:25 21:4 21:11
21:12 21:16 22:14 22:16 24:12 24:13
25:19 28:2 30:10 33:9 33:15 33:16 35:2
35:9 35:14 35:16 35:21 35:22 35:22 36:11
36:23 37:2 37:5 37:5 37:12 37:15 37:18
37:19 37:21 38:2 38:15 39:25 40:11 41:10
41:23 41:24 42:9 42:10 42:25 43:11 44:2
44:17 45:7 45:12 45:13 45:14 45:15 46:9
46:12 46:12 47:4 47:9 47:13 47:15 47:19
47:25 48:18 49:25 50:8 50:8 51:23 51:24
52:13 53:7 53:8 53:11 53:12 53:17 53:18
54:7 57:5 57:5 57:6 57:13 57:13 57:20
63:25 64:3 65:4 69:21 76:10 79:4 79:7
87:7 87:11 87:13 87:14 87:21 87:21 88:4
88:5 88:11 90:13 96:15 97:7 97:9 101:9
102:10 103:23 103:24 106:3 106:17 108:2
108:12 108:16 110:2 111:1 111:21 111:22
114:13 114:17 115:22 115:25 119:7 119:2
125:15

**disputed**(2) 44:3 52:12

**disputes**(15) 17:12 20:20 24:20 25:14 38:1
38:12 39:1 41:2 52:8 52:24 96:19 98:17
109:12 110:16 115:18

**disregard**(8) 12:14 31:1 33:10 35:3 35:18
37:16 37:23 47:21

**distinct**(3) 37:18 38:1 46:11

**distinction**(7) 17:6 18:8 59:2 95:2 95:5
101:21 102:13

**distinguishable**(1) 24:19

**district**(3) 1:2 38:23 39:7

**dive**(3) 99:6 107:1 118:7

**divide**(1) 89:21

**diving**(1) 103:12

**division**(1) 87:24

**document**(9) 32:11 66:6 67:6 72:11 73:13
82:19 96:3 96:17 101:11

**documents**(6) 29:5 66:8 74:16 97:17 98:9
119:2

**does**(24) 11:1 16:14 18:11 18:14 18:17
19:3 20:1 27:19 43:12 46:3 48:22 52:3
60:2 60:11 70:7 73:16 73:19 73:25 92:8
97:13 98:19 112:15 113:2 126:3

**doesn't**(19) 17:5 18:15 20:14 44:21 45:16
58:20 60:20 66:13 82:4 87:24 88:10 97:1
105:5 113:3 113:4 114:17 114:20 116:22
117:1

**doesn't**(1) 111:13

**doing**(14) 15:8 21:14 29:9 41:15 52:20
62:15 63:18 64:14 64:17 99:8 100:15
103:15 107:6 110:20

**dollar**(1) 83:24

**don't**(50) 9:18 10:19 12:11 12:20 13:15
15:7 22:21 23:13 31:21 31:24 32:8 34:19
37:13 47:10 47:18 48:24 49:22 53:16
53:16 55:20 58:14 60:8 61:8 61:9 64:2
65:11 66:25 68:19 68:23 70:22 70:25
72:19 81:15 83:22 83:25 84:23 88:13
88:18 89:22 98:7 101:13 103:19 105:7
105:14 105:14 105:23 108:18 111:20
112:22 113:10

**done**(13) 26:22 27:5 32:15 48:1 48:2
50:19 60:3 66:18 67:13 78:10 86:25 108:
125:9

**don't**(1) 70:22

**doolittle**(1) 96:5

**door**(2) 98:12 98:12

**double-sided**(1) 59:19

**doubt**(7) 19:23 27:9 31:19 35:6 60:17
69:13 104:23

doubtful(1) 31:10

**doubts**(1) 18:3

**down**(12) 15:1 15:23 74:19 74:23 85:17
93:12 94:18 96:10 99:5 100:23 106:18
112:5

**draft**(2) 16:10 52:4

**drafted**(2) 20:19 52:7

**draw**(1) 18:7

**drawn**(1) 96:16

**dried**(1) 103:5

**drifting**(1) 14:9

**drive**(1) 4:27

**duane**(1) 3:47

**due**(1) 24:24

**dumphey**(1) 114:23

**dunphy**(12) 5:45 93:19 93:23 94:9 94:12
94:13 94:14 98:2 98:5 100:6 116:23
119:13

**duplication**(1) 79:2

**during**(2) 32:13 91:2

**e-trade**(1) 25:10

**each**(8) 49:14 49:16 64:7 66:20 75:13
77:19 77:22 101:17

**earlier**(3) 52:9 117:19 118:13

**earn**(2) 67:15 67:17

**earned**(4) 59:11 59:22 60:8 61:15

**earth**(1) 103:7

**easily**(1) 45:6

**easy**(5) 22:12 118:13 118:14 118:15 119:25

**ec2y**(1) 5:8

**echoed**(1) 40:22

**economic**(1) 122:7

**economics**(6) 54:19 54:20 55:14 88:18
124:2 124:5

**ecro**(1) 1:47

**effect**(4) 44:18 52:18 95:21 122:1

**effective**(1) 108:3

**effectively**(1) 117:21

**effects**(2) 42:22 43:1

**efficient**(1) 108:3

**eggert**(1) 4:26

**eighth**(1) 2:40

**either**(3) 27:7 45:14 102:24

**electronic**(3) 1:55 126:21

**element**(1) 84:19

**eli**(3) 3:41 119:15 119:21

**elliott**(1) 5:44

**else**(8) 42:16 91:9 95:15 95:16 97:19
102:14 103:15 118:18

**email**(9) 32:10 66:22 67:4 67:19 78:20
78:21 78:23 78:25 121:25

**employed**(2) 72:4 72:5

**employees**(1) 5:52

**encompass**(1) 41:2

**encouraged**(1) 119:7

**end**(6) 22:20 55:5 55:12 92:6 104:22 126:3

**endeavor**(2) 121:25 122:20

**enforce**(8) 29:12 36:4 36:8 54:18 55:16
55:19 58:11 88:16

**enforceable**(2) 40:3 45:18

**enforced**(1) 21:3

**enforcement**(2) 54:14 90:13

**enforces**(3) 58:12 87:6 87:11

**enforcing**(2) 39:22 46:25

**engage**(1) 113:25

**enough**(5) 100:7 103:11 103:12 103:20
116:23

**ensure**(1) 98:19

**ensuring**(1) 30:22

**enter**(1) 13:17

**entered**(3) 15:23 109:5 111:6

**enterprises**(2) 24:8 42:4

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **entire**(10) 27:11 46:3 49:25 91:2 98:21 99:21 106:17 106:17 118:21 119:18 | | **expensing**(2) 52:14 52:20 | | **fine**(2) 13:4 34:25 | | **from**(48) 11:19 12:3 14:5 14:10 17:16 18:15 18:18 18:23 19:6 20:24 21:10 21:20 26:20 27:25 34:2 39:18 40:8 55:21 55:25 55:25 56:16 57:8 58:21 60:21 64:12 66:23 68:15 68:21 68:21 74:25 91:22 94:7 94:10 95:4 96:17 99:13 104:22 107:7 107:22 107:23 108:19 110:21 110:21 113:11 113:14 121:15 121:16 121:22 126:21 | |
| | | **expert**(2) 57:7 114:1 | | **finger**(2) 2:24 73:12 | | | |
| **entirely**(3) 18:18 20:7 32:14 | | **experts**(1) 84:18 | | **finished**(2) 79:15 126:9 126:12 | | | |
| **entities**(1) 45:11 | | **explain**(3) 59:5 64:23 68:9 | | **finlayson**(1) 6:2 | | | |
| **entitled**(1) 59:9 | | **explained**(3) 18:20 62:1 68:14 | | **firm**(2) 40:25 56:1 | | | |
| **entry**(3) 11:2 111:4 112:5 | | **explaining**(1) 113:17 | | **first**(41) 9:13 12:12 12:20 12:22 17:2 17:22 26:18 36:13 37:19 40:13 40:25 45:c 45:22 46:12 50:9 51:21 54:12 58:6 63:14 73:16 89:13 89:14 89:19 102:11 103:18 104:7 104:17 104:18 104:18 105:7 105:14 106:9 107:4 107:5 107:7 107:20 114:22 117:3 117:23 124:2 124:6 | | | |
| **equal**(1) 35:1 | | **explains**(4) 19:14 31:20 60:24 113:9 | | | | | |
| **ernst**(3) 3:20 5:29 40:24 | | **explanation**(7) 112:19 113:11 113:20 114:5 118:4 120:19 120:21 | | | | **front**(3) 98:23 99:22 120:5 | |
| **errand**(1) 94:21 | | | | | | **frontier**(1) 109:1 | |
| **error**(1) 79:2 | | **expressed**(1) 12:19 | | | | **fulfilled**(1) 78:19 | |
| **esoteric**(1) 61:16 | | **expressly**(4) 16:19 30:20 36:3 54:13 | | **five**(1) 10:4 | | **full**(2) 71:21 111:6 | |
| **especially**(1) 110:12 | | **extensive**(1) 74:3 | | **floor**(1) 1:27 2:40 2:47 3:9 4:7 5:15 | | **functional**(11) 107:21 108:1 108:22 109:25 110:1 110:15 110:20 110:24 111:16 114:4 114:16 | |
| **esq**(37) 1:24 1:25 1:33 1:34 1:35 2:12 2:19 2:25 2:32 2:33 2:39 2:46 3:7 3:15 3:21 3:28 3:34 3:41 3:42 3:48 4:5 4:12 4:19 4:25 4:26 5:21 5:30 5:31 5:32 5:33 5:36 5:40 5:45 5:46 5:52 6:2 6:9 | | **extent**(5) 27:3 49:11 49:20 124:11 124:12 | | **flow**(1) 18:18 | | | |
| | | **extraneous**(2) 79:18 79:19 | | **flush**(1) 47:3 | | | |
| | | **extrinsic**(3) 119:17 119:20 119:22 | | **focal**(2) 29:18 53:2 | | **functioning**(1) 110:17 | |
| | | **eyes**(3) 17:12 99:1 99:2 | | **focus**(4) 19:6 21:10 27:8 30:21 | | **fundamentally**(2) 94:24 96:20 | |
| | | **f.2d**(1) 44:9 | | **foley**(1) 3:33 | | **funnel**(2) 97:13 97:15 | |
| **essence**(1) 59:21 | | **f.3d**(1) 43:23 | | **folks**(2) 120:9 122:8 | | **further**(8) 8:24 11:13 41:1 77:20 79:9 99:16 114:24 123:2 | |
| **essential**(2) 43:18 44:1 | | **faa**(3) 29:25 39:21 40:2 | | **follow**(3) 18:15 18:17 61:12 | | | |
| **essentially**(2) 56:12 90:18 | | **face**(3) 22:18 34:9 39:15 | | **followed**(1) 8:20 | | | |
| **estate**(1) 125:21 | | **fact**(23) 16:12 20:22 21:2 27:14 30:14 30:16 42:5 54:6 56:17 56:20 57:9 57:15 58:10 61:11 63:11 63:20 64:17 65:18 74:17 74:25 87:25 106:2 122:17 | | **following**(2) 39:7 96:11 | | **furthers**(1) 106:2 | |
| **estates**(1) 90:19 | | | | **fool's**(1) 94:21 | | **future**(1) 125:4 | |
| **estimate**(4) 38:8 40:13 56:17 70:20 | | | | **for**(183) 1:2 1:22 2:4 2:24 3:4 3:13 3:20 3:40 4:4 4:11 4:18 4:24 4:32 4:39 4:46 5:4 5:11 5:19 5:29 5:40 5:44 5:51 6:2 6:7 7:5 8:22 9:14 10:17 12:9 12:13 17:3 17:7 17:8 17:11 24:21 26:13 27:9 27:15 29:22 29:23 30:7 31:18 33:15 33:17 33:22 34:10 35:1 35:7 35:25 36:1 36:10 37:9 37:25 38:12 38:16 39:17 40:10 40:12 40:17 41:c 42:2 44:11 44:12 44:18 46:21 47:2 48:2 49:6 49:9 50:13 50:16 50:17 50:18 50:19 50:21 50:23 50:23 52:14 52:20 53:4 53:c 53:21 54:9 54:20 54:21 55:6 55:8 56:11 57:2 57:10 57:18 58:20 58:24 59:8 59:22 60:5 60:5 60:17 60:21 60:22 61:21 63:14 63:15 64:9 66:7 67:25 70:2 70:23 70:24 71:21 71:23 73:14 75:2 75:18 76:21 76:23 78:6 80:12 80:20 81:19 85:12 86:24 87:15 88:2 88:13 88:16 89:8 90:11 90:18 90:20 91:3 91:12 91:13 91:24 93:2 93:19 94:6 95:14 95:15 95:22 95:23 96:14 97:22 97:23 98:13 98:14 98:20 98:22 98:23 98:23 101:17 102:4 102:18 102:18 104:9 104:15 104:16 105:4 105:5 106:1 106:14 107:1 107:1 110:7 110:13 112:5 113:8 115:4 116:13 117:6 117:6 118:3 118:14 118:18 118:20 120:25 121:5 123:4 123:14 123:14 124:24 125:1 125:23 | | **gap**(32) 16:18 27:1 27:1 27:4 30:16 35:12 36:20 37:2 37:12 49:18 49:21 50:5 59:4 59:10 59:12 59:21 60:7 60:11 60:15 61:6 61:17 62:1 62:15 62:16 62:17 67:23 77:1 77:6 94:20 113:3 114:9 114:10 | |
| 56:9 66:2 66:2 68:17 73:4 73:5 73:9 73:17 73:22 73:23 74:1 74:17 80:6 80:8 80:13 82:15 83:5 86:2 93:21 96:23 97:15 100:6 | | | | | | | |
| | | | | | | **gave**(2) 52:23 82:2 | |
| **even**(23) 18:5 19:22 22:14 22:21 22:21 25:4 26:4 27:6 29:23 30:3 30:11 46:6 54:22 56:22 59:23 61:9 62:15 67:22 89:1 89:20 113:19 113:19 120:17 | | **factors**(1) 117:4 | | | | **gazze**(1) 1:25 | |
| | | **facts**(2) 109:2 119:4 | | | | **genband**(98) 3:40 5:44 8:23 12:10 12:15 12:19 12:22 12:23 12:25 13:10 16:14 17:11 23:5 23:12 30:22 30:25 33:20 33:21 35:3 35:6 35:10 35:17 35:21 36:10 36:23 37:22 38:3 39:17 40:10 41:17 42:17 44:5 44:24 46:14 47:21 48:4 50:9 50:16 50:23 54:3 54:5 55:25 56:16 57:3 57:4 58:20 59:4 64:10 64:17 64:19 68:11 71:23 72:5 73:4 74:4 75:1 75:3 77:13 79:14 80:4 80:9 80:15 82:15 82:18 82:21 83:2 83:4 83:9 83:20 84:4 86:1 86:11 86:12 86:22 87:7 87:17 87:22 87:24 88:6 93:21 95:21 95:23 108:2 108:6 109:20 109:24 110:5 111:2 111:6 111:11 112:19 112:25 113:11 114:6 114:20 120:16 120:21 122:17 | |
| | | **factum**(1) 105:21 | | | | | |
| | | **fail**(1) 31:24 | | | | | |
| | | **failed**(2) 65:5 95:12 | | | | | |
| | | **fails**(1) 17:1 | | | | | |
| **event**(1) 24:14 | | **fair**(2) 83:23 84:24 | | | | | |
| **events**(1) 111:23 | | **fairway**(1) 25:24 | | | | | |
| **ever**(2) 61:24 79:6 | | **faith**(1) 111:10 | | | | | |
| **every**(9) 18:12 21:4 23:2 59:24 60:2 60:7 79:3 100:12 100:18 | | **faithful**(1) 41:6 | | | | | |
| | | **fall**(2) 18:19 106:21 | | | | | |
| | | **falls**(2) 22:23 109:17 | | | | | |
| **everyone**(6) 8:5 116:24 116:24 118:2 121:9 126:13 | | **familiar**(1) 16:8 | | | | | |
| | | **fantasy**(5) 95:13 95:17 100:24 101:21 113:13 | | | | **genband's**(13) 12:13 33:9 37:15 39:9 48:10 50:20 54:8 64:14 83:11 84:16 84:20 86:25 91:5 | |
| **everything**(8) 62:2 63:19 95:15 95:16 97:12 114:21 119:6 126:12 | | | | | | | |
| | | **far**(1) 66:14 | | | | **general**(3) 59:7 62:20 110:5 | |
| **everywhere**(1) 21:18 | | **fas**(1) 77:8 | | | | **generally**(3) 16:18 52:1 77:7 | |
| **evidence**(17) 32:2 32:6 32:15 57:14 68:21 72:12 72:16 95:8 103:14 108:11 108:12 111:22 114:11 119:17 119:20 119:22 120:22 | | **fashion**(1) 112:11 | | | | **gesticulations**(1) 58:8 | |
| | | **favor**(7) 17:25 18:4 19:23 21:23 39:6 39:22 52:10 | | **foregoing**(1) 126:20 | | **get**(42) 22:5 46:6 56:13 58:15 58:17 58:20 60:8 60:21 60:22 62:19 66:13 67:10 67:21 85:7 86:9 88:19 94:19 94:25 95:7 97:1 98:14 98:18 98:24 99:5 99:11 99:13 100:8 101:25 102:7 102:24 103:4 103:19 105:14 107:22 107:22 114:14 116:24 117:24 119:19 121:1 122:16 122:20 | |
| | | | | **forgive**(1) 34:23 | | | |
| | | | | **form**(1) 101:4 | | | |
| | | | | **former**(1) 5:51 | | | |
| **evidenced**(1) 41:1 | | **favorable**(1) 116:22 | | **forms**(1) 90:18 | | | |
| **exactly**(25) 16:16 31:20 38:6 40:11 41:4 42:4 44:2 44:10 45:2 48:1 48:3 52:9 52:25 53:25 54:1 54:3 54:15 55:15 56:3 67:22 68:5 89:15 94:19 103:14 119:13 | | **fdd**(1) 29:4 | | **forth**(3) 10:3 12:9 73:14 | | | |
| | | **federal**(5) 4:13 17:23 18:17 58:12 63:24 | | **forty**(1) 17:3 | | | |
| | | **federated**(2) 18:23 21:8 | | **forward**(3) 56:18 80:9 112:25 | | | |
| | | **fee**(1) 9:18 | | **found**(3) 25:8 28:7 28:7 | | **getronics**(1) 45:22 | |
| **examination**(1) 71:25 | | **feedback**(1) 94:11 | | **four**(3) 40:7 53:21 106:13 | | **gets**(2) 97:2 112:12 | |
| **examines**(1) 19:15 | | **feel**(2) 32:8 64:1 | | **four-inventory**(1) 53:14 | | **getting**(3) 102:23 103:8 107:8 | |
| **examining**(1) 104:21 | | **feld**(2) 10:24 90:8 | | **four-year**(2) 52:21 53:4 | | **ginger**(1) 1:47 | |
| **example**(3) 24:21 78:15 78:16 | | **few**(6) 30:21 58:4 63:16 79:13 104:13 120:25 | | **fourth**(1) 27:8 | | **gist**(1) 118:21 | |
| **except**(3) 106:14 112:23 114:6 | | | | **framework**(1) 22:3 | | **give**(6) 67:19 78:15 95:25 101:13 105:3 111:21 | |
| **exchange**(1) 42:6 | | | | **frankly**(7) 12:11 23:1 26:4 38:22 54:11 55:25 88:6 | | | |
| **excluded**(1) 20:23 | | **fiduciary**(1) 91:3 | | | | | |
| **excuse**(2) 10:6 58:8 | | **fierceness**(1) 108:7 | | | | **given**(3) 103:9 114:5 124:3 | |
| **executive**(2) 4:46 4:46 | | **fifteen**(4) 23:18 65:6 72:7 120:2 | | **fraser**(2) 5:19 5:20 | | **gives**(3) 45:17 112:18 113:21 | |
| **exectory**(1) 110:18 | | **figure**(19) 26:16 26:18 26:22 56:12 80:12 80:20 83:14 83:15 83:22 84:22 84:25 85:c 86:2 86:4 86:14 86:16 87:2 100:22 112:9 | | **fraudulently**(1) 25:16 | | **giving**(1) 111:8 | |
| **exercise**(1) 94:25 | | | | **freeborn**(1) 4:24 | | **glass**(19) 48:8 48:10 56:23 56:24 68:22 69:10 69:17 70:18 72:12 72:21 74:24 76:3 76:18 77:10 78:20 80:1 83:8 84:10 86:19 | |
| **exhausted**(1) 99:19 | | | | **freres**(1) 1:40 | | | |
| **exhibit**(8) 29:1 66:22 67:1 73:9 73:16 78:21 96:6 100:3 | | | | **friend**(6) 106:13 111:24 113:12 117:12 118:3 120:12 | | | |
| | | **figures**(2) 86:8 86:9 | | | | | |
| **exhibits**(1) 120:10 | | **filed**(7) 12:12 12:15 70:11 92:18 115:7 115:8 116:8 | | | | **glass's**(3) 48:13 69:25 73:2 | |
| **existence**(3) 28:6 95:12 96:19 | | | | **friends**(9) 97:22 99:1 99:2 101:22 103:22 104:15 105:3 106:7 | | **glen**(1) 5:33 | |
| **expect**(2) 66:25 122:8 | | **filter**(3) 95:13 95:15 102:12 | | | | | |
| **expected**(2) 41:7 95:24 | | **final**(3) 24:15 90:25 98:24 | | | | | |
| **expecting**(1) 66:25 | | **finally**(2) 66:16 118:3 | | | | | |
| **expects**(1) 112:19 | | **financial**(10) 6:9 26:10 28:23 29:2 29:9 53:5 53:15 81:8 82:2 101:19 | | | | | |
| | | **financials**(1) 80:19 | | | | | |
| | | **find**(2) 20:4 63:13 | | | | | |
| | | **finding**(1) 24:25 | | | | | |

Page : 6

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **global**(1) 20:12 | | **has**(65) 12:9 12:19 12:25 13:16 17:2 18:2 22:16 23:7 31:13 32:7 36:6 36:13 36:14 36:16 37:24 38:16 39:23 39:25 42:1 42:5 42:12 44:14 44:17 44:24 46:14 46:18 48:24 49:9 52:3 54:5 54:19 55:4 55:7 55:18 57:5 60:6 60:6 62:1 62:16 63:20 64:10 64:20 67:25 68:11 86:21 88:6 90:1 92:24 93:19 93:21 98:5 106:13 108:7 112:13 112:15 113:1 114:4 115:5 115:8 117:18 120:21 121:24 122:2 122:5 122:12 | **here**(59) 9:1 9:8 13:18 15:1 15:23 18:9 18:10 20:19 20:24 20:25 21:3 21:6 21:18 22:18 27:15 28:24 29:1 29:10 29:18 35:9 36:11 38:8 41:17 41:24 42:5 42:10 42:17 43:25 44:3 44:13 45:21 45:25 53:18 60:1 60:16 61:13 62:4 64:3 64:13 64:22 73:14 75:23 89:10 89:21 90:13 91:4 92:19 96:2 96:5 96:9 99:25 101:21 108:15 110:5 114:21 116:13 119:11 120:11 121:15 | **how**(40) 16:7 16:9 22:24 27:6 27:8 32:16 32:16 45:23 45:25 51:22 59:5 64:19 66:6 66:7 66:9 68:16 70:14 70:19 72:6 72:23 73:23 74:1 74:16 78:4 84:15 84:20 94:11 99:11 102:4 102:6 108:9 108:14 112:8 112:19 112:24 113:22 114:10 114:14 118:4 120:20 |
| **goes**(14) 23:19 24:16 59:4 69:12 70:3 85:24 97:16 97:19 97:19 102:1 102:12 102:19 114:8 119:21 | | | | | | |
| | | | | | | **however**(4) 11:2 19:3 21:24 39:12 |
| **going**(65) 12:21 22:25 23:1 25:5 32:1 32:10 42:23 42:24 55:5 58:4 59:25 61:13 61:17 62:12 62:13 62:14 62:19 65:21 67:14 67:16 67:21 69:5 69:6 71:1 72:11 73:13 73:13 75:14 75:17 75:17 75:19 83:6 86:23 86:23 87:2 89:3 90:11 94:18 95:25 98:9 99:9 99:13 99:14 100:1 100:20 100:21 101:6 101:6 103:4 103:8 103:13 103:21 104:10 104:10 104:11 107:18 108: 110:18 114:13 114:15 115:3 121:2 121:14 121:15 122:18 | | **hash**(1) 47:3 | | **here's**(15) 22:24 26:16 39:19 40:14 42:6 42:7 43:3 51:20 62:18 97:1 97:4 97:5 97:11 99:1 100:3 | | **hubert**(1) 45:6 |
| | | **hasn't**(1) 108:9 | | | | **huge**(1) 82:7 |
| | | **hauer**(2) 10:24 90:8 | | | | **huron**(2) 4:39 4:40 |
| | | **have**(180) 8:19 9:9 9:17 9:18 10:10 11:1 12:11 12:20 12:22 12:24 13:17 14:25 15:15 16:12 17:11 17:23 18:1 18:12 18:22 19:5 19:13 19:17 20:15 20:24 21:4 21:19 24:3 24:5 25:19 26:3 26:15 26:16 26:18 26:20 26:22 27:20 28:1 28:10 28:12 29:1 29:22 30:1 31:16 31:24 34:18 35:11 37:15 38:5 38:5 38:6 38:13 38:14 38:14 39:1 40:18 41:4 41:6 41:24 44:13 46:12 47:4 48:1 49:15 49:22 50:18 51:10 51:11 51:13 51:23 52:21 53:11 53:18 55:21 57:12 58:7 58:18 59:10 59:21 59:22 59:23 63:19 64:22 66:7 66:8 66:17 66:18 67:14 67:16 67:16 67:25 68:10 68:15 68:19 68:20 69:19 70:25 71:18 72:6 72:8 72:16 72:19 74:6 74:8 74:10 74:12 75:8 76:9 77:13 77:19 77:20 77:22 77:25 78:9 78:9 78:12 78:12 78:18 79:7 79:8 80:15 81:6 83:1 83:3 83:3 83:9 85:12 89:5 89:6 95:7 96:3 98:16 99:5 99:9 100:20 101:3 101:13 101:13 101:13 102:5 102:6 102:24 103:13 104:19 107:4 107:8 110:15 111:6 111:21 113:10 113:24 114:2 114:8 114:24 115:7 115:24 116:8 116:25 117:14 117:25 118:15 119:2 119:6 120:4 120:5 120:15 120:16 121:23 121:24 124:7 124:14 124:1 | | **hereof**(1) 23:9 | | **i'll**(28) 23:2 31:5 31:5 32:21 34:11 34:12 35:12 44:23 51:21 51:23 57:8 60:25 79:12 79:13 85:20 87:16 90:9 90:10 93:23 96:1 96:3 96:7 101:3 101:24 103:17 117:3 119:14 119:14 |
| | | | | **hermetically**(1) 94:23 | | |
| **gone**(2) 87:2 100:23 | | | | **herrington**(65) 1:35 8:8 12:3 12:7 12:18 13:17 13:21 33:7 34:5 34:11 34:14 35:2 36:20 36:22 45:2 45:4 46:5 46:9 46:11 47:6 47:9 47:10 47:14 47:17 48:15 48:16 48:20 48:22 49:3 49:5 51:4 51:6 51:7 51:8 51:16 53:25 56:7 57:22 57:23 68:4 68:5 68:19 69:9 69:12 69:15 70:2 70:3 70:7 70:25 71:6 71:9 71:12 71:14 75:16 75:22 79:11 79:12 79:17 79:22 85:11 85:20 85:23 90:3 90:4 114:19 | | |
| **good**(39) 8:5 8:7 8:8 8:9 8:10 8:11 8:11 8:13 8:14 9:6 9:7 10:22 10:23 12:6 12:7 12:8 13:8 13:9 14:15 15:17 65:7 72:2 72:3 79:23 79:24 90:5 90:6 90:7 91:10 91:10 91:19 91:21 92:7 100:7 100:6 116: 116:12 122:22 126:8 | | | | | | **i'm**(41) 22:25 23:1 31:10 32:4 34:4 34:22 41:15 49:4 51:7 51:8 58:4 61:9 62:19 64:22 64:25 65:8 65:8 65:24 70:10 72:5 72:11 81:21 81:21 83:15 84:7 84:7 91:19 92:9 92:20 94:11 95:25 98:9 100:1 101:5 104:21 107:18 113:23 116:13 120:11 124:13 125:12 |
| **gosh**(1) 47:18 | | | | | | |
| **got**(10) 9:13 41:17 47:22 52:11 71:12 93:12 98:23 104:22 106:13 117:22 | | | | **hey**(1) 117:14 | | |
| | | | | **hgs**(2) 39:19 41:10 | | |
| **gottlieb**(2) 1:31 12:3 | | | | **higher**(4) 80:21 80:22 81:13 81:16 | | **i've**(8) 30:8 58:1 60:9 104:22 105:21 110:21 114:7 114:23 |
| **govern**(2) 46:3 58:13 | | | | **highest**(1) 91:6 | | |
| **governed**(1) 48:18 | | | | **him**(2) 72:23 110:2 | | |
| **governing**(1) 21:17 | | | | **himself**(1) 93:20 | | **idea**(1) 50:15 |
| **government**(4) 109:4 109:17 109:17 109:18 | | | | **history**(2) 20:3 59:9 | | **identical**(1) 28:14 |
| **graeme**(1) 2:39 | | | | **hits**(1) 63:16 | | **identified**(2) 73:5 110:9 |
| **grant**(1) 14:1 | | | | **hoc**(1) 91:12 | | **identify**(1) 79:3 |
| **granted**(1) 27:22 | | | | **hold**(4) 17:20 54:17 107:10 119:20 | | **ignore**(8) 30:20 38:3 42:20 46:15 50:9 53:8 61:16 107:6 |
| **gray**(1) 95:5 | | | | **holdings**(1) 72:5 | | |
| **great**(1) 34:7 | | | | **holiday**(3) 123:4 126:4 126:13 | | |
| **grievance**(3) 19:1 19:12 19:15 | | | | **holidays**(1) 123:15 | | **ignored**(1) 105:21 |
| **gross**(28) 1:17 8:14 8:19 9:2 12:7 14:4 33:7 51:15 90:5 91:10 91:21 92:4 92:8 92:10 93:19 94:1 94:3 104:2 115:3 116:6 116:18 120:25 121:11 121:21 121:22 122:10 123:5 123:15 | | | | **holmes**(1) 4:5 | | **ignoring**(1) 104:17 |
| | | | | **home**(2) 41:11 41:16 | | **imagine**(2) 61:5 95:17 |
| | | | | **homes**(1) 109:1 | | **imagined**(1) 95:11 |
| | | | | **homework**(1) 102:5 | | **impact**(8) 37:24 38:16 42:1 50:18 54:19 55:7 76:9 122:7 |
| | | **haven't**(1) 118:8 | | **honor**(111) 8:7 8:11 9:7 9:9 9:16 9:21 9:23 9:24 10:1 10:11 10:13 11:1 11:6 11:12 11:14 11:17 11:25 12:3 12:12 13:1 13:5 13:7 13:9 13:15 13:16 13:22 15:7 15:14 29:12 30:11 32:1 33:4 33:25 34:2 35:2 36:22 37:15 38:1 38:5 39:18 40:7 40:23 42:3 44:8 44:23 46:5 47:17 47:20 47:24 48:7 48:10 48:24 50:15 51:2 51:8 51:16 53:19 53:25 55:6 56:7 56:20 57:1 57:22 57:24 59:13 62:25 63:17 67:5 67:24 67:24 68:2 68:19 68:24 69:9 69:12 69:16 70:9 70:15 72:13 72:18 75:16 75:22 79:9 79:12 79:17 85:11 85:15 85:20 87:11 88:24 89:5 89:25 90:4 102:21 104:2 107:15 107:16 108:25 113:19 115:2 116:3 116:6 116:10 116:12 116:18 119:22 126:15 126:11 126:15 126:16 | | **implement**(2) 36:4 36:8 |
| **ground**(1) 46:24 | | **having**(5) 52:17 94:16 99:23 104:5 118:7 | | | | **implementation**(1) 54:13 |
| **grounds**(1) 17:1 | | **hes**(1) 57:9 | | | | **implicate**(1) 48:22 |
| **group**(3) 3:13 6:2 91:12 | | **hds**(3) 21:20 24:11 25:2 | | | | **implicated**(1) 57:13 |
| **guess**(3) 31:17 117:3 117:14 | | **he'll**(1) 93:21 | | | | **implication**(1) 81:21 |
| **guidelines**(1) 61:18 | | **he's**(3) 75:18 117:12 118:5 | | | | **importance**(1) 122:17 |
| **gump**(5) 2:31 2:38 10:24 90:8 123:14 | | **head**(2) 83:22 84:23 | | | | **important**(17) 40:22 54:9 54:17 54:20 55:2 57:17 57:18 58:16 59:2 59:25 60:12 60:13 62:9 66:19 67:11 76:15 88:18 |
| **had**(43) 8:19 9:12 10:8 10:15 24:24 25:8 25:11 27:16 29:7 32:18 39:20 40:11 41:12 42:4 43:3 43:25 45:7 51:20 52:15 56:2 56:18 65:4 69:18 69:18 74:16 74:17 80:9 80:18 80:18 80:18 81:8 82:1 86:7 86:12 89:5 89:5 90:24 98:14 98:15 109:5 109:7 117:16 123:23 | | **headfirst**(1) 118:7 | | | | |
| | | **hear**(8) 34:9 34:11 64:25 75:24 75:24 103:13 114:12 114:12 | | | | **importantly**(1) 31:16 |
| | | | | | | **imports**(1) 113:7 |
| | | **heard**(16) 10:14 10:20 14:13 64:8 91:15 92:18 94:16 95:4 103:11 104:12 108:11 108:12 108:19 110:21 111:19 114:13 | | | | **impose**(1) 88:13 |
| | | | | | | **impossible**(1) 105:2 |
| **hadley**(2) 3:13 91:12 | | **hearing**(7) 8:22 8:22 90:22 90:25 92:18 123:1 126:18 | | | | **inapplicable**(1) 19:4 |
| **hair-splitting**(1) 63:23 | | | | **honor's**(1) 87:5 | | **inc**(4) 1:6 2:45 4:24 5:29 |
| **hall**(1) 93:16 | | | | **honorable**(1) 1:17 | | **incident**(1) 89:2 |
| **hamilton**(1) 1:32 | | **hearings**(1) 8:16 | | **honoring**(1) 107:9 | | **incidentally**(2) 51:11 61:3 |
| **hammer**(1) 4:25 | | **heart**(1) 58:15 | | **honors**(4) 33:9 55:16 88:22 112:23 | | **inclined**(1) 32:4 |
| **hand**(6) 18:5 45:10 71:20 72:11 92:14 99:14 | | **heavens**(1) 118:14 | | **hoover**(1) 2:19 | | **include**(18) 27:11 28:21 33:17 33:20 33:22 35:6 36:24 36:25 39:22 50:1 50:23 80:25 81:18 87:19 87:22 87:23 88:9 104:24 |
| | | **heavily**(1) 20:1 | | **hopefully**(3) 11:19 14:24 123:24 | | |
| **handing**(1) 92:20 | | **heavy**(1) 39:5 | | **hot**(1) 15:3 | | |
| **happen**(3) 61:15 88:3 105:17 | | **held**(6) 28:4 40:19 45:11 52:3 99:21 110:7 | | **hours**(1) 69:18 | | **included**(4) 19:17 24:9 43:14 67:18 |
| **happened**(4) 29:6 40:9 56:22 82:6 | | **help**(3) 34:20 61:2 114:1 | | **housekeeping**(1) 13:12 | | **includes**(1) 26:7 |
| **happens**(2) 113:10 120:16 | | **helpful**(2) 111:25 117:10 | | **housing**(2) 109:6 109:18 | | **including**(3) 62:7 101:8 102:25 |
| **happy**(6) 32:5 51:9 64:25 65:8 65:25 123:15 | | **her**(9) 64:23 64:25 65:12 65:16 68:20 68:23 70:24 71:7 114:13 | | **houston**(1) 4:50 | | **income**(6) 59:10 59:24 60:11 62:17 |
| | | | | | | **inconsistent**(2) 61:6 63:18 |
| | | | | | | **incorporated**(1) 16:19 |
| **hard**(2) 30:12 113:14 | | | | | | **incorrectly**(2) 113:4 113:5 |
| **harmer**(1) 6:9 | | | | | | **incurred**(1) 49:11 |
| **harris**(2) 109:17 109:18 | | | | | | **indeed**(2) 94:18 108:16 |
| **harrisburg**(1) 1:51 | | | | | | **index**(1) 7:1 |
| | | | | | | **indication**(3) 80:24 81:2 111:18 |
| | | | | | | **indiscernible**(5) 110:10 115:1 116:11 116:17 120:9 |

| Word | Page:Line |
|---|---|

**induced**(1) 25:16
**indulge**(1) 22:5
**inevitable**(1) 52:13
**inference**(2) 96:16 112:19
**information**(6) 68:15 80:16 81:6 82:1 85:7 86:13
**ingersoll**(1) 3:20
**inherent**(1) 52:13
**inherently**(2) 76:12 76:13
**initial**(2) 31:9 31:15
**initiated**(1) 124:11
**initio**(1) 25:17
**injecting**(1) 41:23
**insignificant**(1) 56:19
**insolvency**(1) 117:20
**instance**(3) 114:22 115:13 115:23
**instances**(1) 62:21
**instead**(1) 16:23
**instructive**(2) 109:3 120:19
**integration**(3) 55:18 57:14 88:17
**intend**(2) 41:2 105:23
**intent**(2) 41:6 43:16
**intention**(1) 110:15
**interacted**(1) 72:24
**interest**(2) 11:11 23:1
**interested**(1) 10:9
**interesting**(2) 28:20 61:12
**interlineate**(1) 10:16
**international**(3) 28:23 42:4 89:2
**interpret**(8) 22:13 22:15 26:4 36:4 36:8 61:23 61:24 100:16
**interpretation**(19) 18:18 19:21 21:15 22:20 25:15 31:13 44:12 54:14 70:4 70:14 76:20 96:18 96:20 103:24 109:13 111:11 114:18 119:4 119:8
**interpretations**(1) 115:19
**interpreted**(7) 16:10 18:16 32:16 32:17 53:23 70:14 112:10
**into**(37) 14:19 15:23 16:19 17:14 30:20 32:6 34:12 59:10 59:23 60:10 60:10 61:2 61:9 62:6 62:6 62:25 72:16 79:18 94:19 95:1 97:17 99:6 102:23 102:24 103:12 103:19 105:14 107:1 107:3 109:5 114:4 114:9 118:7 118:7 119:19 122:5 124:5
**introduced**(1) 48:11
**introduces**(1) 81:3
**intrude**(1) 25:5
**inventory**(5) 29:19 53:3 53:4 53:13 100:20
**inverse**(1) 76:13
**investment**(1) 40:10
**investments**(3) 39:19 41:11 57:9
**invite**(1) 51:12
**invited**(1) 51:12
**invoked**(1) 111:19
**invokes**(1) 108:6
**involve**(3) 24:2 24:20 43:13
**involved**(6) 28:13 31:13 72:8 100:13 100:18 103:1
**involves**(4) 43:15 101:18 113:12 113:13
**involving**(2) 24:17 24:23
**ipsa**(1) 64:2
**isn't**(4) 31:17 113:16 118:9 118:12
**isolated**(1) 30:21

**issue**(95) 8:22 8:23 11:4 12:16 12:19 13:16 16:24 16:25 16:25 17:7 17:9 17:20 20:7 20:12 20:21 20:24 21:6 21:8 25:7 25:15 26:13 26:13 29:25 30:2 30:7 35:23 35:23 35:24 38:20 39:14 39:20 40:20 41:21 43:11 44:14 44:20 45:20 45:23 46:22 46:24 47:8 47:23 48:7 48:17 51:21 51:24 52:12 52:14 52:22 52:23 52:24 52:24 54:10 54:11 54:13 56:20 56:23 57:3 57:18 63:9 70:12 71:9 72:9 72:19 79:19 87:10 88:12 88:14 99:9 99:10 101:10 102:19 104:21 106:11 107:4 108:9 108:10 111:2 113:16 113:17 113:22 113:22 114:10 118:5 118:8 118:22 119:23 119:25 120:13 122:8 123:20 123:25 124:8 124:9
**issues**(54) 8:23 9:18 17:23 18:4 23:14 24:18 25:5 26:5 27:15 28:4 32:8 35:11 39:13 41:8 44:12 44:12 57:11 64:1 64:4 64:21 69:22 75:19 75:23 79:18 89:20 94:17 94:23 94:24 95:3 95:14 95:15 98:6 98:6 98:8 99:3 99:7 99:12 99:23 100:16 100:17 100:17 102:13 102:14 106:21 113:12 113:14 113:18 114:20 115:24 118:20 118:21 119:4 120:3 124:8
**it's**(110) 10:10 10:19 11:8 12:21 15:11 16:24 16:25 17:17 18:10 21:9 30:1 30:13 35:25 37:4 37:10 37:18 40:7 41:5 42:2 42:25 43:1 44:20 45:18 47:7 50:20 50:21 50:21 50:21 50:25 54:4 54:13 54:17 57:1 57:18 60:12 60:13 62:9 62:17 62:25 63:1 63:2 63:13 63:14 63:16 65:25 66:6 66:19 67:2 67:2 67:3 67:15 69:24 69:25 70:10 70:14 77:24 83:23 85:2 86:23 87:8 88:5 88:18 89:23 94:17 95:19 97:6 97:13 98:14 99:12 100:24 100:25 101:9 101:20 102:21 103:5 104:15 104:20 105:1 106:8 106:18 106:18 107:3 107:6 108:2 110:5 112:1 112:15 112:20 113:13 113:16 113:17 113:22 113:23 113:24 114:17 117:4 117:14 118:3 118:15 118:21 118:21 118:22 119:5 119:15 119:16 119:24 122:22 126:5 126:6
**item**(4) 25:22 36:13 51:18 112:5
**items**(15) 23:6 23:23 23:24 25:20 36:23 36:25 37:1 37:6 37:10 50:3 50:17 50:18 50:19 87:19 87:21
**its**(27) 9:25 12:12 21:10 22:18 24:1 26:12 39:14 39:15 40:20 48:5 48:11 50:17 50:21 52:18 55:20 64:17 64:20 83:20 86:22 89:18 110:18 112:18 113:9 113:11 114:5 115:17 120:19
**itself**(16) 18:6 21:20 22:4 30:22 36:6 43:13 57:11 63:11 94:25 96:6 98:3 101:4 101:24 110:11 111:25 115:17
**jackson**(1) 2:11
**james**(2) 1:33 4:41
**jared**(2) 5:4 5:5
**jefferies**(2) 2:45 4:4
**jennifer**(2) 2:19 5:32
**jermyn**(1) 2:6
**jersey**(1) 39:7
**joanne**(1) 3:34
**job**(2) 100:19 118:5
**john**(2) 5:11 5:12
**joinder**(1) 115:8
**joint**(6) 8:16 8:22 90:22 90:25 122:25 126:6
**jones**(1) 2:5
**judge**(34) 1:18 8:8 8:14 8:19 9:2 10:23 12:7 14:4 33:7 51:14 51:20 51:25 52:25 53:10 90:5 91:10 91:21 92:4 92:8 92:10 93:18 93:25 104:2 109:21 115:3 116:6 120:25 121:11 121:20 121:22 121:24 122:10 123:5 123:15
**judges**(3) 95:3 104:3 113:23

**july**(1) 45:11
**juris**(1) 21:9
**jurisdiction**(5) 36:3 36:7 103:1 115:17 115:22
**jurisdictional**(1) 12:19
**just**(78) 9:20 11:3 13:19 14:4 14:10 14:11 14:17 16:5 16:24 17:6 17:9 21:17 21:22 22:16 23:2 27:18 29:13 30:18 30:20 31:3 31:4 31:14 31:22 32:20 34:1 34:4 37:13 38:7 41:16 41:24 42:17 43:24 47:25 48:10 48:14 48:23 49:15 51:2 51:21 54:21 54:22 56:20 57:8 60:16 63:11 64:15 65:9 65:13 66:9 68:24 69:25 70:10 73:12 84:7 89:3 91:13 91:15 91:24 92:14 92:20 93:15 94:6 95:12 102:11 103:16 103:18 108:13 109:2 112:9 113:17 113:23 115:2 116:14 120:18 124:14 124:22 125:1 125:8
**justice**(73) 8:13 8:14 9:4 9:5 12:8 14:4 14:7 14:14 14:18 15:11 33:8 34:8 34:14 34:17 35:1 51:12 51:14 67:25 90:7 91:11 92:3 92:4 92:7 92:12 92:16 92:22 93:1 93:10 93:12 93:14 93:18 93:25 94:2 94:6 94:10 97:25 98:4 99:22 103:9 107:13 109:1 109:3 110:1 110:4 110:9 110:14 111:16 112:3 114:25 115:3 115:10 116:4 116:11 116:16 116:18 116:21 119:10 120:24 121:14 121:11 121:14 121:19 121:12 122:22 122:25 123:4 123:8 123:12 123:13 123:13 126:3 126:5
**justification**(4) 111:8 111:10 111:12 111:17
**k-a-w-e-c-k-i**(1) 71:22
**kahn**(1) 2:33 90:5 90:7 90:8 115:5
**kawecki**(32) 7:7 32:3 59:3 59:3 60:24 64:5 64:22 65:8 65:25 68:3 68:6 68:8 69:16 70:16 71:4 71:16 71:17 71:19 71:22 71:23 72:2 72:21 79:13 79:23 80:15 83:7 85:12 85:16 85:21 86:7 86:8 92:24
**kawecki's**(4) 76:4 108:11 114:8 114:11
**kay-oliphant**(1) 3:41
**keenan**(1) 1:42
**keep**(3) 80:12 60:13 66:19
**kennedy**(1) 4:33
**kept**(1) 25:11
**kevin**(1) 1:17
**key**(3) 33:14 37:7 49:8
**kind**(19) 27:19 40:11 40:20 42:7 44:24 47:23 48:1 48:3 51:22 56:3 57:11 65:25 73:13 86:20 87:8 100:19 106:8 117:13 117:22
**kinds**(3) 24:20 28:18 99:12
**king**(2) 2:47 4:14 5:22
**kingdom**(2) 2:8 2:42
**knew**(1) 86:8
**know**(52) 8:15 10:14 10:19 15:8 25:18 27:7 30:14 30:24 31:7 34:19 42:18 47:15 48:11 48:24 52:19 54:11 55:20 56:21 59:13 60:9 61:15 62:11 66:17 66:24 72:21 72:22 74:16 82:10 83:22 84:23 85:2 86:3 91:1 95:3 95:9 95:10 99:11 103:11 104:19 104:20 105:7 105:8 105:14 105:24 123:23 125:9
**known**(1) 66:7
**knows**(1) 99:16
**koehring**(1) 44:9
**kraidin**(11) 3:28 91:19 91:21 91:22 124:20 124:21 124:22 125:23 125:25 126:11 126:16
**labor**(1) 19:8
**language**(12) 10:17 18:6 18:21 24:2 24:5 24:9 37:7 39:17 48:18 56:3 108:6 108:23
**lardner**(1) 3:33
**large**(1) 112:20

**last**(8) 56:10 60:15 70:11 98:13 117:3 119:13 119:18 120:9
**lastowski**(1) 3:48
**later**(3) 66:13 99:15 99:20
**latham**(2) 3:40 13:10
**laugh**(1) 71:12
**laughter**(12) 15:2 15:5 15:13 34:24 71:11 119:12 121:18 122:14 125:10 125:13 126:1 126:7
**law**(15) 16:9 17:2 17:23 21:8 21:17 22:11 38:22 56:1 99:10 102:13 103:1 104:10 108:18 108:21 110:5
**lawn**(1) 60:10
**laws**(1) 8:17
**lawyers**(1) 15:6
**layton**(1) 2:24
**lazard**(1) 1:40
**lead**(2) 8:25 103:7
**leads**(1) 97:14
**learned**(1) 114:9
**least**(6) 11:20 18:10 56:1 80:18 86:8
**leave**(2) 57:8 119:14
**leaves**(1) 61:19
**leaving**(1) 78:11
**lee**(2) 3:34 10:7
**left**(3) 23:18 35:15 61:20
**left-hand**(1) 24:4
**legal**(23) 16:25 17:4 22:3 29:24 30:3 35:25 41:2 41:7 53:11 57:13 94:24 95:2 95:10 95:15 97:19 99:3 99:18 99:18 100:17 105:4 107:4 108:16 118:21
**less**(1) 103:9
**let**(10) 30:2 35:9 38:20 45:22 47:22 48:23 68:4 72:15 89:20 94:6
**let's**(15) 22:3 26:1 40:9 60:16 71:13 71:13 71:14 75:24 75:24 83:7 101:2 102:21 102:22 103:2 104:7
**letter**(1) 113:9
**letters**(2) 96:7 120:23
**level**(1) 78:2
**lewis**(1) 2:11
**liabilities**(1) 43:17
**liability**(2) 42:13 43:6
**liberty**(1) 1:36
**lies**(1) 87:21
**life**(4) 53:3 53:4 53:13 53:14
**like**(43) 9:15 10:14 10:20 11:3 12:21 17:22 25:11 27:8 27:19 27:24 28:13 29:1 30:9 31:3 31:21 35:10 36:24 37:13 38:7 44:13 45:24 53:8 53:9 55:4 55:17 57:4 58:15 62:22 64:1 64:25 68:2 87:22 87:24 89:7 90:12 90:16 108:17 109:11 109:24 116:25 122:9 124:14 125:2
**likely**(1) 47:7
**lilley**(2) 119:15 119:21
**lily**(1) 6:9
**limit**(4) 42:23 43:7 102:6 103:17
**limitation**(2) 24:22 43:12
**limited**(3) 25:14 70:2 70:24
**limits**(1) 42:11
**lincoln**(1) 5:13
**line**(8) 39:2 95:10 95:12 95:17 100:23 101:21 102:13 112:5
**lines**(8) 27:8 40:5 45:8 45:12 45:25 63:4 96:10 96:10
**linklaters**(1) 5:4
**lisa**(3) 1:34 3:28 91:21
**list**(1) 100:8
**listened**(1) 114:11
**listening**(1) 114:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **lists**(2) 67:6  67:7 | | **matz**(4) 3:15  91:10  91:11  91:18 | | **modern**(1) 14:23 | | **networks**(2) 1:6  5:29 | |
| **literal**(5) 109:19  109:19  109:20  109:25 111:11 | | **may**(41) 10:8  10:20  11:17  11:18  13:25 14:21  18:12  18:25  19:19  24:13  33:25 35:21  45:14  45:16  51:10  51:13  55:21 56:10  57:4  66:2  68:17  71:24  72:13  72:15 73:4  73:18  74:6  74:12  74:15  74:15  79:12 82:7  82:11  85:16  98:13  107:17  112:10 114:19  124:14  124:15  125:20 | | **moment**(5) 35:13  59:9  94:11  95:16  95:20 **mona**(1) 3:21 **monetary**(1) 24:22 **money**(10) 9:16  59:11  67:17  98:11  98:20 99:20  101:13  102:4  102:6  116:24 | | **neutral**(1) 40:25 **never**(13) 54:5  61:17  61:18  61:20  61:24 65:2  65:6  66:3  68:11  70:19  88:7  88:9 118:10 **new**(9) 1:37  1:44  2:15  2:35  2:48  3:17 3:30  3:44  39:7 | |
| **litigate**(1) 106:9 **little**(5) 22:6  28:15  31:10  34:6  94:2 **llc**(4) 3:40  4:4  4:40  4:40 **llp**(10) 3:6  3:14  3:27  3:33  3:47  4:18  4:18 4:24  5:4  5:44 | | | | **monitor**(5) 5:40  116:6  117:16  123:22 **monitor's**(1) 117:16 **months**(3) 72:7  99:15  99:19 **morawetz**(61) 8:13  8:14  9:4  9:5  12:8  14:4 14:7  14:14  14:18  15:11  33:8  34:8  34:15 34:17  51:12  51:14  67:25  90:7  91:11  92:3 | | **next**(12) 12:15  29:22  49:22  76:17  96:22 96:24  97:9  97:16  100:22  101:3  110:24 112:17 **nichols**(1) 1:22 **night**(1) 70:11 | |
| **local**(4) 19:25  20:6  20:22  29:17 **logic**(1) 111:6 **london**(3) 2:7  2:42  5:8 **long**(3) 72:6  89:3  103:20 **long-lasting**(1) 122:13 **long-term**(3) 67:8  67:9  104:8 | | **maybe**(13) 27:14  31:19  31:19  47:18  68:24 71:6  71:7  86:13  99:19  100:9  119:10 123:24  125:11 **mccloy**(2) 3:14  91:12 **mean**(10) 45:16  61:8  69:20  77:4  82:4 88:10  93:15  94:19  95:8  104:9 | | 92:4  92:7  92:12  92:16  92:22  93:1  93:10 93:13  93:14  93:18  93:25  94:6  94:10  97:23 98:4  107:13  112:3  114:25  115:3  115:10 116:4  116:11  116:16  116:21  119:10  120:8 120:24  121:4  121:11  121:14  121:19  122:1 122:22  122:25  123:4  123:8  123:12  123:13 123:13  126:4  126:5 | | **nine**(3) 27:7  63:3  99:19 **nineteen**(3) 100:10  100:12  100:23 **ninety**(3) 60:9  60:10  60:11 **nni**(3) 9:25  10:12  54:22 **nnl**(1) 54:22 **noble**(3) 42:4  43:8  43:10 **noble's**(1) 43:20 **nobody**(3) 18:13  20:25  83:1 **nobody's**(1) 60:16 | |
| **look**(32) 22:4  26:1  26:2  35:11  39:1  40:9 41:17  59:3  60:25  61:14  62:12  63:21  66:5 66:5  66:22  75:15  77:10  83:7  88:1  97:8 97:21  98:10  100:1  101:2  101:15  101:23 103:18  103:20  107:23  111:22  116:22 119:20 **looked**(4) 55:13  55:13  55:15  66:13 **looking**(1) 86:3 **looks**(1) 67:5 **loose**(1) 9:15 | | **meaning**(4) 27:7  31:24  49:14  87:6 **meaningless**(1) 105:6 **means**(9) 60:24  88:10  89:14  102:15 104:11  105:7  105:8  105:8  105:9 **meant**(2) 86:12  102:11 **mechanism**(8) 38:7  40:12  41:14  41:17 42:5  57:10  57:11  102:10 | | **more**(11) 19:1  20:11  31:16  40:3  64:25 75:20  92:13  94:24  101:16  103:17  123:17 **morgan**(1) 3:7 **moring**(2) 4:18  4:18 **morning**(35) 8:5  8:7  8:8  8:9  8:10  8:11 8:12  8:13  8:14  8:20  9:6  9:7  10:22  10:23 12:6  12:7  12:8  13:8  13:9  72:2  72:3  79:23 79:24  90:5  90:6  90:7  91:10  91:11  91:14 91:20  91:21  108:12  108:19  110:22  116:12 | | **nods**(1) 92:9 **non-profit**(2) 109:6  109:18 **none**(1) 51:14 **nonetheless**(2) 63:8  116:9 **nor**(2) 18:16  20:2 **nortel**(75) 1:6  5:29  9:8  12:12  16:13  16:17 16:23  17:16  18:7  19:25  21:20  23:8  23:10 24:1  26:8  26:12  27:2  27:6  27:12  29:10 30:11  30:15  35:11  36:25  37:2  37:11  46:21 | |
| **loquitor**(1) 64:2 **lord**(2) 99:16  102:21 **lot**(4) 67:14  90:10  103:13  103:14 **low**(3) 34:3  85:4  85:5 **lower**(1) 51:18 **lukenda**(1) 4:41 **lump**(1) 114:21 **lure**(1) 119:18 **lured**(1) 118:7 **lurking**(1) 47:19 **lydecker**(1) 4:47 | | **meet**(4) 59:11  62:16  87:22  87:23 **mention**(3) 66:16  95:12  106:2 **mentioned**(2) 89:10  99:3 **mercer**(1) 4:24 **mere**(2) 64:3  111:18 **merely**(2) 23:22  69:8 **merits**(24) 32:4  61:2  69:6  69:13  69:20 70:4  70:8  85:25  94:3  94:17  99:6  102:23 103:12  103:19  107:2  107:3  114:2  118:8 118:9  118:10  118:11  119:19  120:12  120:1 | | **morning's**(1) 12:10 **morris**(2) 1:22  3:47 **morrow**(1) 2:14 **motion**(21) 12:12  12:12  12:15  15:14  27:22 35:23  39:9  91:24  92:20  94:3  94:4  96:4 100:4  107:16  107:19  111:24  118:10  118:11 118:11  119:18  125:17 | | 49:19  50:6  55:15  56:12  57:3  57:7  57:20 59:5  59:13  60:14  60:18  61:5  62:1  65:2 68:12  73:3  74:17  74:25  76:21  76:25  77:13 78:13  79:6  80:3  80:24  81:5  81:17  83:8 86:1  86:15  87:7  87:14  87:18  87:23  88:4 94:20  101:20  105:1  108:15  112:13  112:14 112:18  113:2  113:5  113:8  114:4  120:16 120:19 | |
| **m5k**(1) 5:24 **ma'am**(3) 72:11  78:21  85:17 **mace**(1) 1:47 **mack**(1) 5:16 **made**(18) 10:10  18:2  35:23  40:22  41:4 52:15  64:6  70:18  79:14  87:17  89:10  90:1 91:14  95:19  107:11  108:24  115:5  123:18 | | **merskey**(1) 5:31 **mersky**(6) 92:16  92:17  93:2  107:14  107:15 112:4 **messages**(1) 124:1 **met**(1) 120:4 **metals**(2) 18:23  21:9 **method**(1) 29:19 **methodologies**(2) 77:20  77:23 | | **motions**(1) 116:7 **move**(5) 32:5  34:6  48:11  48:12  67:1 **mowed**(1) 60:9 **msl**(1) 5:48 **much**(28) 14:14  24:2  27:24  33:4  67:1 67:13  67:13  67:16  70:14  70:23  80:20 80:22  84:15  84:20  89:25  92:7  93:1  98:14 98:15  98:16  98:25  102:4  102:6  108:19 | | **nortel's**(13) 8:25  26:6  36:18  48:19  48:22 56:8  61:13  64:18  66:23  76:20  78:25  87:20 112:23 **north**(7) 1:26  2:27  3:22  3:35  3:50  4:6 **not**(159) 9:2  11:1  16:14  16:25  17:2  18:11 22:25  23:1  23:22  24:24  24:25  25:5  25:9 27:10  30:14  30:16  31:3  31:11  31:18  35:24 | |
| **madison**(1) 2:47 **main**(4) 8:22  89:9  96:3  121:17 **maintain**(1) 122:12 **make**(20) 14:5  14:19  17:13  31:6  31:6  40:2 41:14  41:22  42:24  44:21  58:20  60:16 60:21  64:24  65:9  72:15  89:9  93:20  121:1 125:8 | | **methodology**(10) 48:4  75:2  75:9  75:10 75:13  77:24  78:2  78:12  78:13  87:3 **michael**(3) 3:48  4:33  5:21 **michigan**(1) 4:34 **microphone**(3) 14:10  14:20  34:12 **mid-thirty-million**(1) 83:23 **mid-thirty-million-dolla**(1) 85:3 **middle**(1) 25:23 | | 111:2  114:25  116:4  116:25 **muddle**(1) 14:24 **must**(16) 21:4  21:25  23:11  30:7  31:23 38:16  39:13  45:16  59:11  63:22  64:18 100:11  105:6  110:11  111:14  114:7 | | 37:5  39:25  40:3  41:1  41:15  42:19  42:23 43:12  43:21  43:22  45:18  46:3  47:14  48:18 48:20  48:21  48:22  50:20  50:20  50:21 50:21  52:4  52:19  53:7  53:17  55:6  57:1 57:12  58:22  59:8  61:7  61:9  61:21  62:4 62:17  62:19  63:11  63:23  65:11  65:14 65:22  66:12  67:14  68:15  69:5  69:24  70:14 71:3  73:25  74:7  74:14  74:16  75:9  75:11 | |
| **makes**(13) 26:9  40:13  50:17  50:18  50:25 60:22  62:2  62:15  70:13  70:13  76:7  89:18 111:2 **making**(4) 32:17  63:21  81:21  103:23 **manhattan**(1) 3:16 **manner**(7) 16:17  18:16  26:5  26:25  27:2 49:19  50:6 | | **might**(11) 9:13  20:18  21:4  27:16  52:6 66:17  66:18  92:12  99:15  109:8  114:1 **milbank**(2) 3:13  91:11 **million**(17) 42:13  42:15  42:24  42:24  66:25 67:10  67:18  80:21  80:22  81:13  81:17 82:12  82:13  84:13  86:13  86:9  112:7 **million-dollar**(1) 43:6 | | **mutual**(2) 24:24  43:7 **mutually**(1) 78:1 **myself**(1) 61:2 **n.w**(1) 4:20 **name**(1) 71:21 **narrow**(22) 18:9  18:10  18:11  18:16  18:25 19:17  19:23  21:24  26:5  28:3  28:17  29:16 40:20  40:21  45:24  51:23  105:3  106:8 106:8  106:16  106:22  107:23 | | 76:12  76:24  77:6  77:12  77:19  77:20  77:25 78:19  79:5  79:8  80:21  80:25  81:2  81:4 81:12  81:11  81:21  82:12  82:13  82:17 82:20  86:4  86:13  86:23  87:14  87:20  88:7 88:8  89:5  89:16  90:10  94:3  94:7  94:11 94:25  95:5  95:24  95:25  97:12  99:8  100:25 101:5  102:17  102:17  102:23  102:24  106:1 106:8  107:1  107:1  107:7  108:13  110:13 110:18  111:15  113:20  114:3  114:9  114:14 | |
| **many**(8) 15:6  54:9  58:8  95:6  95:6  95:6 109:16  124:8 | | **milner**(2) 5:19  5:20 **mind**(6) 22:3  27:19  60:12  60:13  66:19 95:19 | | **narrowed**(2) 19:5  23:14 **narrower**(2) 39:11  52:11 **narrowly**(2) 20:17  52:5 **nature**(2) 16:2  100:19 | | 116:6  116:21  116:22  117:9  117:10  118:5 118:9  118:24  118:25  119:23  120:11  120:15 120:17  120:21  120:21  122:18  124:5 125:11 | |
| **march**(5) 80:19  82:4  82:7  82:11  86:8 **mark**(1) 5:52 **market**(5) 1:10  1:26  3:22  3:50  4:6 **marketed**(2) 55:2  55:11 **marketing**(1) 90:23 **martin**(2) 32:2  66:21 **martin's**(1) 32:11 **materials**(1) 97:7 **math**(1) 16:4 | | **ministry**(1) 109:14 **minus**(2) 49:10  86:6 **minute**(2) 23:19  100:18 **minutes**(7) 92:13  93:2  93:5  93:22  104:13 105:22  121:1 **misinterpret**(1) 106:16 **misstatement**(1) 106:23 | | **neat**(1) 94:22 **necessarily**(2) 59:9  124:5 **necessary**(1) 32:14 **need**(9) 22:5  64:9  74:1  74:3  88:13  88:15 94:7  105:14  114:11 | | **note**(7) 45:22  56:20  60:25  67:11  79:17 91:13  109:11 **noted**(3) 29:16  64:7  66:1 **noteholder**(1) 6:2 **noteholders**(1) 116:19 | |
| **matter**(20) 8:24  9:24  13:13  17:5  19:2  27:5 27:8  31:9  31:15  37:25  39:24  41:5  42:2 52:19  54:20  56:19  61:18  62:20  111:14 126:22 **matters**(5) 9:10  30:10  43:10  68:21  77:14 **matthew**(1) 4:19 | | **mistake**(2) 24:24  43:7 **misty**(3) 71:7  71:22  71:23 **misunderstanding**(3) 43:18  44:1  44:3 **mixed**(2) 100:17  119:3 | | **needed**(2) 10:16  48:4 **needs**(4) 20:25  21:2  21:3  100:15 **negotiations**(1) 32:14 **negotiator**(1) 66:23 **net**(3) 28:21  28:22  84:3 | | **nothing**(8) 17:5  45:7  45:20  64:20  66:6 79:9  106:14  113:10 | |

| Word | Page:Line |
|---|---|

**notice**(21) 28:16 65:5 66:2 66:12 75:11 86:11 97:9 97:10 97:10 98:5 101:2 101:4 101:10 101:12 101:17 101:23 102:1 112:1 112:23 120:1 120:4

**notification**(1) 122:2
**notify**(1) 23:11
**noting**(2) 54:2 55:24
**notion**(2) 58:6 63:18
**notwithstanding**(1) 10:12
**now**(83) 8:3 12:2 14:12 14:13 14:23 16:12 16:12 17:22 18:7 19:25 22:18 24:1 26:1 30:5 30:9 30:11 31:4 31:9 32:5 32:9 32:15 33:12 33:20 34:23 35:9 36:10 37:15 37:22 38:19 39:17 40:9 41:10 44:23 45:22 48:14 51:2 52:12 52:12 52:23 53:19 54:2 54:6 55:1 55:17 59:25 60:25 61:1 62:18 63:5 63:16 63:25 64:14 64:22 65:7 66:21 70:17 72:12 72:21 73:22 80:12 80:15 82:10 93:19 94:15 95:18 97:21 99:2 100:9 100:9 101:23 107:8 109:11 109:19 110:4 110:14 111:2 111:5 111:23 112:8 112:22 114:8 122:22 126:3

**nowhere**(1) 99:3
**number**(11) 9:14 66:10 83:25 95:25 100:10 101:5 106:21 111:5 112:5 119:1 124:4
**numbering**(1) 96:7
**numbers**(3) 46:19 101:16 102:7
**numerous**(1) 76:4
**oa1**(1) 5:24
**oakbrook**(1) 5:16
**object**(2) 23:13 41:15
**objected**(1) 66:4
**objection**(8) 11:2 13:16 13:20 13:21 39:9 56:16 68:20 105:4

**objections**(1) 9:1
**obligated**(1) 66:12
**obligation**(2) 41:12 107:4
**obliged**(2) 96:1 96:13
**obviously**(10) 11:12 30:5 43:8 75:8 91:23 98:8 103:6 118:19 119:5 119:21

**occurred**(1) 113:1
**off**(7) 29:13 41:19 54:10 83:22 84:23 102:11 120:2

**office**(1) 4:11
**official**(3) 10:24 90:9 115:4
**often**(1) 119:16
**okay**(37) 14:13 15:22 31:9 31:19 34:5 34:18 45:3 49:3 49:24 51:19 59:18 62:22 64:11 65:23 70:1 70:6 73:15 73:22 80:2 80:12 80:15 80:20 81:23 83:4 83:14 84:1 85:7 85:9 86:21 87:4 88:1 89:1 93:17 94:13 112:3 116:11 118:22

**once**(8) 26:22 46:18 47:2 87:5 87:5 87:11 88:10 94:17

**one**(53) 1:36 2:26 2:34 3:16 5:7 5:13 8:16 10:15 11:3 11:3 13:12 19:16 21:3 21:19 23:6 23:24 24:23 25:20 27:15 29:5 31:6 31:18 31:23 38:8 44:16 45:1 48:1 54:21 55:21 60:25 61:10 63:9 63:12 65:24 67:3 78:16 84:19 90:16 100:7 100:12 100:22 101:9 101:16 103:7 104:4 110:1 112:5 114:18 117:24 118:23 120:18 121:24 123:17

**one-shot**(1) 11:11
**ones**(3) 18:9 31:3 57:19
**onion**(1) 77:25
**only**(24) 9:10 9:13 10:11 15:19 22:12 26:5 27:3 28:4 32:18 32:18 44:10 44:23 57:2 61:14 70:16 70:16 79:6 81:18 89:15 104:20 105:12 109:24 110:15 122:1

**ontario**(4) 36:3 57:19 108:22 109:4

**onto**(4) 50:17 83:10 83:20 84:16
**open**(2) 102:3 119:25
**opening**(9) 64:11 64:11 64:20 65:22 68:17 77:7 78:6 84:5 84:18

**operate**(1) 52:1
**operation**(1) 51:17
**opinion**(3) 39:19 121:25 122:16
**opportunity**(3) 8:19 12:22 12:24
**opposed**(2) 53:3 53:14
**order**(21) 8:2 9:21 10:11 10:16 11:2 11:4 11:20 11:23 13:14 13:17 13:20 36:2 36:5 36:13 54:12 54:24 83:9 99:5 100:10 115:18 122:12

**orleans**(1) 2:15
**other**(36) 9:24 10:12 11:10 11:10 20:2 22:14 35:10 40:3 40:23 41:3 41:4 48:14 52:3 53:16 55:11 55:11 55:18 57:5 57:5 60:25 64:8 65:24 66:17 66:17 66:20 82:23 89:12 90:24 115:1 118:2 122:1 122:2 124:6 124:17 124:17 125:20

**other's**(2) 77:20 77:22
**otherwise**(2) 113:24 119:9
**ought**(2) 97:3 118:19
**our**(40) 8:16 8:21 8:24 11:3 11:8 15:11 15:14 17:16 22:21 24:5 25:18 27:22 30:5 35:21 35:22 37:22 39:1 39:9 39:9 42:18 42:19 54:3 64:3 66:4 78:10 84:4 93:12 94:20 98:11 98:20 98:20 99:20 101:13 102:5 118:5 118:10 118:17 118:18 119:15 122:13

**out**(30) 16:24 18:19 25:23 26:16 26:18 26:22 27:6 27:9 28:17 34:6 34:16 41:3 47:3 47:3 48:2 50:22 63:3 88:19 89:20 98:12 98:12 98:20 100:22 108:2 117:5 117:5 117:7 117:10 119:21 122:16

**outcome**(1) 121:2
**outside**(1) 106:21
**outstanding**(1) 77:12
**over**(11) 9:12 23:18 31:5 52:16 90:13 95:4 97:8 111:19 111:20 122:10 126:6

**overrule**(2) 20:1 20:2
**overruled**(1) 20:5
**overy**(3) 3:27 91:22
**owe**(1) 96:14
**own**(5) 102:5 102:25 124:13 125:16 125:2
**ownership**(2) 124:9 124:16
**oyston**(2) 5:4 5:5
**p.m**(1) 126:10
**page**(23) 39:9 40:8 52:25 67:5 67:12 73:1 75:14 96:8 96:25 96:25 97:6 97:14 100:7 101:3 101:5 101:8 101:15 103:25 109:9 112:1 112:5 112:18 112:21

**paid**(6) 55:5 59:8 83:5 96:12 98:24 102:7
**paper**(4) 34:15 59:16 66:9 112:13
**papers**(7) 18:7 20:1 22:21 24:1 26:12 39:5 54:3

**paragraph**(19) 36:5 48:9 54:12 56:23 56:24 73:2 74:23 75:15 76:3 76:17 76:17 77:10 79:25 83:7 84:8 86:19 96:24 109:11 110:10

**parameters**(3) 120:14 120:15 120:17
**parikh**(1) 3:21
**park**(1) 2:34
**parole**(1) 57:13
**parse**(2) 63:3 63:10
**parsing**(1) 89:11
**part**(14) 33:14 37:4 37:5 50:9 58:7 58:9 65:19 85:24 86:25 89:23 104:17 112:18 117:18 120:13

**particular**(9) 11:5 16:10 17:11 19:11 21:12 29:2 61:22 124:3 124:13

**particularly**(2) 28:20 90:17
**parties**(65) 10:8 10:9 12:18 15:23 15:24 16:7 16:12 17:23 18:12 19:5 19:16 20:9 20:19 21:4 21:6 23:16 23:24 25:11 27:16 27:20 28:7 31:4 33:15 33:16 38:25 41:1 41:6 43:5 43:16 43:17 43:25 44:15 44:17 46:13 47:3 47:22 48:1 48:3 50:1 52:4 52:7 64:7 66:17 66:18 66:20 86:20 87:9 88:12 91:2 95:11 96:20 97:7 98:7 105:17 105:18 106:1 110:17 110:15 113:15 115:1 115:14 117:2 120:1 121:1 125:20

**partners**(2) 4:32 4:32
**partners/trustee**(1) 5:11
**parts**(6) 52:15 52:21 53:4 53:14 89:12 102:9

**party**(13) 30:25 31:11 39:3 39:24 42:11 45:14 45:15 45:17 53:8 99:23 107:5 107:11 110:11

**party's**(1) 31:12
**pass**(1) 32:21
**passed**(2) 30:18 100:8
**path**(1) 94:18
**patience**(1) 90:1
**patrick**(2) 2:46 4:12
**pattern**(1) 42:5
**pause**(11) 11:21 14:3 22:9 33:6 34:21 35:9 49:2 85:10 94:6 100:5 112:2

**pay**(8) 55:8 80:9 96:13 96:21 99:2 102:5 106:9 117:23

**payable**(3) 42:12 42:14 42:23
**paying**(1) 98:22
**payment**(2) 59:22 106:19
**payments**(2) 25:4 41:13
**pays**(1) 95:21
**peace**(1) 122:13
**pekoe**(1) 64:13
**pennsylvania**(2) 1:51 4:20
**penny**(2) 59:24 60:7
**people**(1) 9:15
**people's**(1) 82:23
**percent**(4) 10:5 60:9 60:10 60:11
**perfect**(2) 60:22 62:2
**perfectly**(1) 125:8
**perform**(1) 37:16
**performance**(1) 31:12
**performed**(10) 33:18 33:23 35:7 37:9 49:6 50:13 50:24 58:25 76:22 81:19

**perhaps**(5) 15:19 32:19 34:19 35:15 111:9
**period**(5) 28:16 52:14 52:17 52:20 52:21
**periods**(1) 28:15
**peripheral**(1) 35:11
**permitted**(2) 35:3 35:17
**perspective**(1) 17:16
**peters**(1) 4:24
**phone**(1) 9:14
**phonetic**(4) 31:7 92:16 96:5 120:12
**phrase**(5) 44:4 47:22 49:8 104:25 104:25
**pick**(1) 90:17
**picture**(1) 18:19
**piece**(2) 66:9 112:13
**place**(3) 104:18 105:14 107:4
**plainly**(1) 94:21
**plaintifl**(2) 29:6 29:9
**plan**(1) 3:4
**play**(2) 46:19 61:10
**plaza**(3) 1:36 1:43 3:16
**please**(13) 8:3 8:4 8:6 14:6 18:1 51:8 58:18 79:25 93:7 93:10 93:11 121:8 121:9

**pocket**(1) 98:20
**podium**(1) 12:2
**poignant**(1) 105:1

**point**(29) 20:4 29:18 40:22 41:5 52:9 53:2 60:3 60:25 61:8 62:12 62:17 64:6 65:24 70:19 87:16 89:4 89:9 90:16 99:5 107:25 108:2 108:4 108:5 108:24 112:12 113:11 119:17 124:6 124:7

**pointed**(1) 47:8
**points**(6) 31:5 58:5 70:23 71:4 101:5 107:18

**policies**(1) 48:19
**policy**(7) 17:25 18:17 39:21 105:24 106:2 106:5 110:6

**position**(12) 92:1 93:20 113:9 115:6 116:6 116:9 116:15 116:19 118:17 123:19 124:19 124:25

**positive**(2) 19:19 22:13
**possible**(2) 22:15 31:10
**possibly**(3) 100:13 104:4 104:5
**post**(2) 40:12 62:14
**post-closing**(3) 40:14 64:9 117:22
**post-purchase**(1) 40:12
**potential**(2) 55:3 55:11
**powerful**(1) 32:15
**powerpoint**(1) 15:15
**poydras**(1) 2:13
**ppearances**(2) 1:20 2:1
**practical**(2) 110:2 111:16
**practice**(2) 102:14 110:23
**pre**(2) 62:13 96:14
**pre-closing**(1) 96:15
**precede**(1) 37:17
**precedent**(3) 11:9 39:8 40:7
**precise**(1) 45:9
**precisely**(2) 86:13 115:23
**preference**(2) 12:11 12:20
**preliminary**(4) 99:3 99:9 102:12 105:4
**premier**(1) 109:4
**preparation**(2) 53:5 53:15
**prepare**(2) 64:19 119:2
**prepared**(11) 9:19 13:2 14:1 23:8 26:25 33:25 49:18 50:5 60:1 64:23 96:17

**presence**(1) 64:3
**present**(1) 76:9
**presentation**(2) 67:2 118:22
**presented**(1) 32:13
**presently**(1) 72:4
**preserve**(1) 11:3
**preserving**(1) 10:10
**presumably**(4) 12:23 16:8 82:18 82:21
**presume**(3) 20:18 52:6 52:10
**presumption**(14) 18:5 19:4 20:13 21:23 28:5 38:20 38:23 38:24 38:25 39:5 39:11 51:22 52:2 52:3

**presumptions**(3) 22:11 22:22 63:19
**pretend**(2) 30:21 31:22
**pretty**(4) 22:11 67:13 86:14 106:22
**prevail**(1) 43:11
**prevent**(1) 107:7
**preview**(1) 47:25
**previously**(3) 8:17 10:10 120:9
**price**(67) 10:5 15:24 16:1 16:13 22:24 24:23 28:14 28:21 33:14 37:18 37:21 37:24 38:7 38:9 38:10 38:12 38:16 38:17 38:18 40:12 40:13 40:15 40:17 41:13 41:16 41:18 42:1 42:7 42:7 42:23 43:1 43:2 44:18 44:19 44:21 44:22 46:9 46:14 50:19 51:19 55:8 56:10 66:2 73:5 73:9 73:17 73:23 77:15 80:6 80:8 80:13 82:15 83:5 86:2 89:8 95:21 95:24 96:23 97:3 97:4 97:15 97:16 106:10 106:19 111:7 117:7 117:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **principles**(45) 16:17 16:18 16:22 17:14 23:8 26:8 27:1 27:3 27:3 27:13 29:3 29:20 30:15 35:12 36:20 37:2 37:12 46:20 48:23 49:20 50:7 58:13 59:4 59:5 59:14 60:14 60:15 60:19 61:6 62:2 76:5 76:9 76:15 76:25 87:18 87:20 95:6 95:9 95:10 100:22 101:20 104:6 105:1 105:2 113:5 | | **public**(6) 57:16 88:17 90:23 106:2 117:14 118:2 | | **reasonableness**(1) 10:18 **reasonably**(1) 109:21 **reasons**(6) 17:8 30:8 54:9 57:1 57:16 **rebut**(1) 32:24 **rebuttal**(7) 70:10 **recall**(4) 65:11 81:12 81:15 83:25 **receivable**(3) 49:9 60:4 60:6 **receive**(2) 82:20 82:25 **received**(5) 59:23 60:6 66:1 69:17 82:16 **receiving**(1) 122:2 **recess**(6) 93:6 120:25 121:4 121:5 121:7 126:17 | | **reply**(2) 12:23 12:24 **report**(3) 29:4 116:8 117:17 **reporting**(1) 28:23 **representations**(2) 29:8 106:15 **represented**(3) 16:8 56:1 56:2 **representing**(2) 10:11 13:10 **reps**(4) 29:13 29:24 63:6 117:21 **request**(1) 10:17 **requested**(2) 23:12 23:20 **require**(3) 43:8 92:8 114:17 **required**(9) 22:22 25:21 26:23 36:17 39:24 49:16 50:3 78:7 102:7 |
| **prior**(6) 37:18 46:6 46:11 46:24 49:10 49:12 | | **publicly**(1) 117:15 **pulled**(1) 77:25 **punter**(1) 2:4 **purchase**(69) 15:24 16:1 16:13 22:24 24:23 28:13 28:21 33:14 37:18 37:21 37:24 38:7 38:9 38:10 38:12 38:16 38:17 38:17 40:12 40:15 40:17 41:13 41:18 42:2 42:6 42:7 42:12 42:22 43:1 43:2 44:18 44:19 44:21 44:21 46:9 46:14 50:19 51:15 56:10 64:15 66:2 73:4 73:9 73:17 73:22 95:21 95:23 95:24 96:23 96:23 97:3 97:3 97:4 97:15 97:16 100:24 106:10 106:19 111:7 115:21 117:7 117:23 | | **reckon**(1) 50:21 **recognition**(5) 76:6 76:8 76:14 76:15 **recognize**(3) 18:24 110:4 122:16 **recognized**(1) 76:24 **reconciled**(1) 77:13 **record**(17) 71:21 81:16 85:24 91:25 92:20 96:4 96:8 96:25 100:4 100:8 104:1 105:20 107:16 111:24 112:17 123:18 125:1 | | **requirement**(1) 118:6 **requires**(3) 16:16 17:10 37:14 **requisite**(1) 102:8 **res**(1) 64:1 **reservation**(2) 36:7 124:1 **reservations**(1) 125:21 **reserve**(2) 32:23 125:3 **residual**(1) 35:10 **resolution**(2) 47:8 102:10 **resolutions**(1) 106:4 |
| **private**(1) 115:14 **probably**(4) 28:10 34:8 89:6 120:25 **problem**(5) 12:20 15:20 18:5 50:20 70:25 **procedure**(2) 8:20 77:8 **procedures**(2) 84:4 90:23 **proceed**(6) 8:24 9:13 12:21 13:2 89:19 112:11 | | **purchased**(1) 41:16 **purchaser**(4) 96:10 98:22 115:12 117:23 **pure**(3) 52:13 99:10 99:11 **purport**(2) 20:1 79:6 **purported**(1) 20:2 **purporting**(1) 79:3 **purpose**(8) 31:25 40:2 70:2 70:24 77:15 78:23 78:25 110:12 | | **recorded**(3) 1:55 49:10 60:6 **recording**(1) 1:55 126:21 **records**(1) 25:12 **recourses**(1) 99:19 **recross**(1) 7:4 **rectify**(1) 115:24 **recycled**(1) 59:16 **redefine**(1) 115:13 **redirect**(2) 7:4 85:14 **reduce**(2) 33:13 94:11 | | **resolve**(11) 17:4 23:17 24:6 24:7 37:19 37:20 44:17 46:12 47:9 110:16 115:18 **resolved**(8) 16:2 17:12 18:4 19:23 21:1 30:1 30:7 45:6 **respect**(14) 9:19 10:12 11:10 11:13 60:4 115:18 115:25 116:7 124:2 124:8 124:16 124:16 125:3 125:4 |
| **proceeding**(2) 34:1 39:3 **proceedings**(7) 1:16 1:55 12:10 89:19 115:9 116:14 126:22 | | **purposes**(3) 78:6 91:24 125:1 **purposive**(7) 107:22 108:1 110:1 110:21 110:25 114:4 114:16 | | **refer**(5) 26:7 66:21 107:17 115:20 117:19 **reference**(9) 26:9 28:24 29:4 31:7 43:9 76:8 92:18 105:3 117:17 | | **respectfully**(1) 26:14 **respond**(6) 12:23 58:4 66:12 70:17 79:13 98:16 |
| **process**(22) 16:3 28:14 30:12 57:15 57:16 68:13 72:24 83:8 84:8 84:14 84:14 84:15 84:17 86:18 87:2 87:8 88:18 90:24 110:6 121:23 124:10 124:12 125:4 | | **pursuant**(3) 27:21 73:3 76:25 **pursue**(1) 55:14 **purview**(2) 39:14 39:15 **put**(30) 22:14 22:25 31:20 32:2 32:18 41:13 48:5 64:23 65:8 65:25 68:2 68:23 69:18 71:2 71:7 73:12 92:19 93:19 101:1 105:6 106:10 106:11 108:21 111:13 112:2 113:18 115:9 118:8 120:15 122:5 | | **referenced**(2) 29:2 29:20 **references**(2) 73:8 87:18 **referred**(2) 29:5 117:4 **referring**(2) 96:4 118:3 **refers**(5) 60:14 78:20 80:3 110:18 111:4 **reflect**(2) 62:23 86:4 **reflected**(5) 26:23 49:17 50:3 56:8 56:9 **reflects**(1) 81:16 | | **responded**(1) 70:19 **responding**(4) 69:10 69:17 69:25 70:10 **responds**(1) 38:11 **response**(4) 57:17 68:20 78:25 113:16 **rest**(1) 113:21 **rests**(1) 114:18 **result**(1) 112:9 **results**(1) 82:8 **retained**(4) 36:3 43:16 115:17 115:21 |
| **produced**(1) 1:56 **product**(1) 87:1 **products**(13) 33:18 33:23 35:7 36:14 37:9 49:7 49:13 50:13 50:24 58:25 60:5 76:22 81:19 **professionals**(1) 9:14 **proffer**(6) 32:9 64:24 65:10 68:3 68:5 71: **proffered**(1) 44:24 | | **puts**(1) 113:8 **putting**(2) 75:17 75:19 **qualified**(1) 55:12 **qualify**(1) 36:13 **quality**(2) 14:22 122:6 **quarter**(1) 15:19 **question**(18) 18:9 22:12 26:24 27:18 36:1 39:13 39:15 47:21 47:25 48:14 60:2 75:24 83:3 87:4 104:18 105:19 117:1 117:11 | | **reform**(5) 33:10 35:3 35:18 38:3 41:8 **regard**(3) 31:2 99:23 116:9 **regarding**(6) 10:7 16:9 29:8 43:11 43:16 98:2 **regardless**(2) 60:8 93:18 **reimburse**(1) 41:12 **reiterated**(1) 106:5 | | **retainer**(1) 10:4 **retains**(1) 58:10 **retention**(4) 9:25 12:1 41:12 124:3 **return**(1) 98:23 **revenue**(50) 27:10 27:12 36:17 37:6 37:8 59:6 59:24 60:7 60:18 62:11 62:13 62:16 66:24 67:6 67:8 67:9 67:12 67:23 75:2 76:6 76:8 76:13 76:16 76:16 76:21 76:24 78:7 78:18 81:3 81:10 82:2 84:1 84:2 84:3 84:11 84:20 86:5 86:6 86:22 86:23 86:24 104:13 104:14 104:18 104:21 104:24 105:13 108:13 114:14 |
| **profit**(69) 12:14 16:14 16:20 16:21 23:7 23:25 26:2 26:17 27:9 27:10 30:6 32:12 32:16 33:12 33:17 33:22 35:4 35:8 36:9 36:12 36:24 36:25 37:7 37:14 37:17 37:20 37:23 38:3 41:25 44:4 46:15 46:25 48:25 50:2 51:1 51:17 54:18 55:4 56:11 56:14 58:19 66:4 68:16 70:5 73:6 73:24 74:2 74:5 74:18 76:7 76:20 80:12 81:3 81:18 84:1 85:25 86:10 86:17 87:12 87:25 88:6 88:20 101:8 103:5 103:25 104:23 111:5 112:6 115:25 | | **questions**(9) 9:18 32:7 45:10 51:9 51:13 67:25 79:13 99:25 103:1 **quick**(2) 98:23 99:22 **quicker**(1) 114:23 **quite**(3) 20:1 74:19 94:21 **quoted**(1) 39:17 **quotes**(2) 76:18 76:19 | | **regard**(3) 31:2 99:23 116:9 **regarding**(6) 10:7 16:9 29:8 43:11 43:16 98:2 | | **revenues**(36) 26:19 33:13 33:17 33:21 33:22 35:7 49:6 49:23 50:12 50:23 51:18 52:18 58:20 58:24 60:13 60:21 60:23 61:14 61:25 62:7 80:16 80:20 80:22 81:1 81:19 83:10 83:18 88:1 88:2 104:8 104:9 104:11 104:16 105:7 105:11 105:12 |
| **program**(1) 109:18 **project**(1) 15:16 **promised**(1) 107:6 **promptly**(1) 122:16 **pronounced**(1) 52:2 **proper**(2) 29:19 85:25 **properly**(1) 76:24 **propose**(2) 47:20 92:12 **proposed**(6) 13:20 41:15 44:5 87:19 87:23 89:7 | | **raise**(5) 51:12 71:20 98:6 99:2 101:10 **raised**(2) 56:5 58:5 **range**(3) 39:12 83:24 85:3 **rather**(5) 43:15 54:10 90:14 108:13 113:2 **ray**(4) 5:11 5:12 109:5 109:16 **rcm**(2) 25:14 39:8 **reached**(1) 122:3 **read**(9) 34:14 44:6 88:19 104:2 104:3 106:12 106:13 109:22 114:7 | | **relate**(1) 36:14 **related**(3) 20:9 21:1 78:16 **relates**(4) 19:7 19:11 21:11 21:12 **relating**(2) 48:17 76:6 **relationships**(1) 10:13 **release**(1) 121:25 **released**(1) 122:4 **relevance**(2) 31:10 45:21 **relevant**(3) 24:8 112:18 118:12 **relied**(4) 53:5 53:15 54:23 91:4 **relies**(1) 19:25 | | **review**(2) 82:14 124:15 **reviewed**(5) 9:17 82:18 82:21 83:2 119:7 **reviews**(1) 112:13 **revised**(1) 10:6 **rewrite**(1) 62:4 **rhetorical**(1) 32:19 **richard**(2) 2:5 4:47 **richards**(1) 2:24 |
| **proposition**(2) 97:21 97:23 **propriety**(2) 53:2 53:13 **protect**(1) 30:22 **protocol**(1) 8:17 **provide**(5) 18:11 76:21 84:25 85:1 117:8 **provided**(17) 33:18 49:7 53:21 56:10 56:11 56:15 58:25 60:5 73:4 76:23 80:3 84:11 86:1 87:1 104:16 105:21 120:21 | | **reading**(4) 104:4 109:19 109:19 109:20 **ready**(2) 121:10 121:25 **real**(1) 110:3 **realize**(1) 90:20 **really**(23) 16:24 20:7 21:18 24:17 25:6 30:11 30:12 32:3 32:18 42:18 46:2 58:14 61:13 66:13 69:24 69:25 70:22 70:24 113:15 122:15 124:1 124:18 126:3 | | **remain**(1) 71:18 **remaining**(5) 24:12 24:12 79:3 79:7 87:7 **remains**(7) 42:16 47:23 59:24 86:24 86:25 87:1 116:9 **remarks**(1) 93:20 **remedies**(1) 117:9 **remedy**(1) 117:9 **remember**(3) 95:18 98:11 106:8 **remotely**(1) 67:22 **rene**(1) 2:12 **repeat**(3) 23:2 89:22 90:10 **repeatedly**(1) 54:2 **replacement**(2) 52:15 52:20 | | |
| **provides**(4) 38:8 38:10 106:14 112:23 **providing**(1) 120:19 **provision**(30) 20:17 22:1 25:2 25:3 33:10 38:12 40:16 40:16 40:20 41:2 41:24 42:11 42:19 43:12 45:8 45:13 45:24 47:1 51:23 52:11 54:7 54:14 56:9 56:17 62:24 63:1 95:23 96:14 117:6 117:8 | | **reason**(8) 29:22 29:23 32:2 54:17 61:22 70:16 78:3 83:1 | | | | |
| **provision's**(1) 40:21 **provisions**(4) 25:11 38:25 42:20 49:13 **prudence**(1) 108:20 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **right**(69) 10:21 11:15 11:22 12:4 13:3 13:19 13:24 14:12 14:16 14:17 14:23 15:4 17:11 17:14 25:8 25:23 29:11 30:11 30:15 30:20 32:8 32:22 32:24 33:2 45:17 47:16 52:14 52:19 53:12 57:2 62:6 64:10 65:20 69:1 69:2 70:4 70:17 71:3 71:8 71:15 71:20 76:1 78:3 79:10 79:16 84:19 89:24 91:17 92:2 92:11 92:17 92:23 96:2 98:4 100:2 101:9 101:14 102:22 103:2 103:9 112:25 113:1 118:5 121:13 122:11 122:20 125:6 125:25 126:13 | | **says**(45) 17:6 26:12 33:1 37:7 38:12 39:3 40:14 40:16 46:15 49:22 50:10 54:13 55:6 58:23 60:11 60:13 60:16 60:20 60:23 64:5 66:6 66:24 67:13 67:23 74:24 76:3 76:19 87:25 89:16 89:17 96:10 96:22 97:4 97:5 97:11 97:20 101:25 113:12 113:12 113:12 118:24 118:24 120:3 | **sharing**(1) 43:17 **sharp**(9) 109:1 109:3 109:21 110:1 110:4 110:9 110:14 111:17 **she**(5) 68:7 68:9 68:9 68:18 69:8 **she'll**(2) 65:1 65:1 **she's**(2) 71:1 71:2 **sheet**(21) 24:10 25:13 26:24 26:25 34:15 36:17 37:1 37:11 43:9 43:14 49:17 50:4 50:12 60:1 60:2 77:8 78:6 82:7 84:6 84:12 84:18 | | **some**(43) 9:15 10:7 10:17 15:3 15:15 20:3 27:24 32:19 35:10 38:19 39:2 46:19 47:22 55:20 57:5 57:5 59:8 61:15 62:11 62:12 62:14 66:16 67:17 70:17 80:15 82:6 82:10 86:25 88:11 88:12 88:19 89:11 89:12 92:9 93:20 94:16 99:14 99:17 100:9 108:7 109:9 111:10 124:23 **somebody**(5) 55:21 82:18 82:21 84:24 85:1 **somehow**(1) 117:13 |
| **rights**(5) 10:18 11:3 117:15 124:2 125:3 **rise**(6) 8:2 8:4 52:23 93:7 93:8 121:8 **risk**(1) 89:2 **rlks**(2) 4:46 4:46 **road**(1) 5:14 **robin**(1) 5:36 **robinson**(4) 51:20 51:25 52:25 53:10 **rock**(1) 29:17 **rockefeller**(1) 1:43 **rodney**(1) 2:26 **room**(2) 67:3 70:23 **rooney**(1) 3:20 **rose**(1) 5:46 **rule**(1) 57:14 **rules**(11) 17:10 17:19 18:17 30:19 30:23 46:25 59:20 61:17 78:8 78:8 94:20 | | **scenario**(4) 38:6 38:14 44:10 44:25 **schuylkill**(1) 1:50 **schweitzer**(1) 1:34 **schwill**(1) 5:36 **scope**(7) 18:3 21:7 22:23 25:9 28:6 28:9 43:21 **scoreboard**(1) 116:21 **screen**(3) 15:16 15:20 22:25 **scrutinize**(1) 18:25 **sealed**(1) 94:23 **sean**(1) 5:45 **season**(1) 123:5 **seated**(6) 8:3 8:6 71:24 93:10 93:11 **second**(12) 44:8 44:19 64:13 70:21 73:14 74:23 94:7 98:9 106:9 107:25 112:20 124:7 | **sheets**(1) 37:6 **sherri**(1) 126:24 **shift**(1) 21:10 **shock**(1) 116:23 **shockingly**(1) 116:23 **short**(4) 92:9 92:13 104:8 121:5 **short-term**(2) 67:7 67:8 **shot**(1) 117:24 **should**(40) 14:21 16:23 17:19 18:4 19:18 19:23 21:14 22:20 25:6 27:22 27:22 32:15 43:10 51:11 52:21 53:22 53:23 62:5 63:23 64:3 67:19 71:7 71:7 76:24 89:13 89:14 90:14 99:7 102:3 102:6 102:23 102:24 103:15 105:21 107:8 107:10 108:14 118:1 120:5 120:25 **shouldn't**(3) 39:4 103:21 107:5 **show**(2) 32:10 64:3 **showing**(1) 66:8 **shown**(1) 108:9 **shows**(1) 24:4 **shubert**(1) 28:2 **side**(8) 24:4 29:14 30:3 55:20 55:21 101:15 101:16 104:6 **sides**(2) 87:19 107:20 **sienna**(7) 31:7 31:17 31:18 31:21 56:2 56:6 56:25 **sign**(4) 55:3 55:22 55:22 88:2 **signed**(3) 44:16 46:21 107:10 **significance**(1) 56:6 **significantly**(1) 81:13 **signing**(1) 44:15 **silent**(1) 114:8 **silk**(1) 5:7 **similar**(3) 30:6 40:11 42:10 **simon**(1) 4:4 **simple**(4) 15:15 54:6 57:20 102:22 **simplistically**(1) 105:6 **simply**(7) 21:6 41:23 63:23 77:5 87:21 119:24 120:22 **since**(2) 82:21 98:12 **single**(1) 79:3 **sir**(12) 13:11 51:6 74:9 75:8 80:5 81:2 83:13 84:23 85:4 94:7 122:10 126:8 **situation**(2) 89:21 109:4 **six**(2) 53:23 99:19 **six-year**(3) 52:17 53:3 53:13 **sixteen**(1) 69:18 **sixth**(3) 42:3 43:3 43:24 **slide**(14) 18:1 18:22 19:13 20:15 21:19 24:3 26:3 26:5 28:1 28:12 29:15 29:23 31:16 58:18 **slides**(1) 15:15 **slippery**(4) 94:17 94:18 99:6 113:25 **slope**(4) 94:17 94:18 99:6 113:25 **small**(5) 9:9 10:15 106:22 124:4 124:4 **so-called**(1) 18:8 **solutions**(2) 4:46 4:46 **solve**(1) 15:21 | **someone**(3) 103:15 118:8 118:18 **something**(13) 35:15 48:2 48:18 50:16 56:22 86:24 89:6 89:7 92:15 99:7 100:25 105:7 110:18 **sometime**(1) 38:9 **sometimes**(1) 14:9 **somewhat**(1) 32:19 **somewhere**(3) 36:11 47:19 97:19 **soon**(1) 122:8 **sophisticated**(2) 16:7 55:18 **sorry**(5) 34:4 34:22 51:7 83:15 91:19 **sort**(5) 16:24 62:10 63:23 99:24 101:22 **sorted**(1) 89:20 **sought**(2) 48:11 78:9 **sound**(2) 1:55 126:21 **sounds**(2) 85:4 85:5 **source**(2) 33:15 33:16 **south**(1) 4:27 **southall**(1) 2:4 **spare**(2) 53:4 53:14 **speak**(3) 14:19 34:12 82:23 **speaker**(8) 35:1 92:14 92:24 115:2 116:5 116:12 116:18 120:11 **speaking**(3) 14:7 14:8 14:9 **special**(1) 117:13 **specific**(10) 10:17 23:6 25:20 28:24 29:5 30:4 38:19 70:18 78:16 117:17 **specifically**(7) 20:23 29:20 30:19 31:4 70:19 117:5 117:9 **specification**(1) 40:24 **specifics**(1) 62:19 **specified**(2) 25:24 102:5 **spell**(1) 71:21 **spelled**(1) 25:22 **spend**(3) 67:14 67:17 120:2 **split**(3) 62:10 108:14 108:14 **sprint**(1) 93:15 **square**(2) 2:26 2:41 **staff**(3) 9:12 84:24 85:1 **stand**(18) 34:19 64:23 65:9 65:25 68:3 68:7 68:9 68:24 70:17 71:2 71:7 71:16 75:18 75:22 93:2 121:4 121:5 126:17 **standards**(2) 28:23 28:25 **standing**(2) 71:18 107:9 **stands**(2) 60:20 116:24 **star**(1) 40:6 **stargatt**(1) 3:5 **stark**(1) 25:18 **start**(5) 9:2 37:12 94:18 104:7 108:17 **starts**(1) 97:19 **state**(3) 70:17 71:20 78:7 **stated**(3) 18:3 39:10 122:12 **statement**(49) 22:19 23:6 23:7 23:11 23:13 23:21 23:23 24:15 24:18 25:20 25:21 25:25 28:16 29:11 64:11 64:13 65:4 67:2 68:11 68:13 68:17 70:20 70:21 72:8 73:5 73:9 73:17 73:23 75:11 76:12 77:7 80:3 82:2 86:2 89:4 97:1 97:8 98:3 98:6 100:1 100:3 100:11 111:5 111:8 111:24 112:11 112:12 120:1 123:17 **statements**(10) 26:10 29:2 29:9 53:5 53:17 70:18 76:5 81:8 98:15 101:20 |
| **said**(77) 16:5 17:9 19:19 20:13 20:16 21:22 22:12 22:21 23:19 25:4 25:7 28:2 29:15 29:17 29:25 30:8 31:1 31:20 32:23 36:10 39:1 41:14 41:21 42:11 42:15 42:18 43:4 43:24 44:17 44:19 45:8 45:14 45:16 45:17 45:23 46:14 46:19 51:15 51:25 52:18 52:25 53:22 54:2 54:8 55:22 58:1 58:7 58:19 58:22 62:23 63:19 63:25 64:9 65:11 66:20 67:19 67:20 75:17 75:19 85:23 87:17 88:7 88:9 88:17 89:21 90:11 94:2 95:16 102:19 103:15 103:19 109:12 111:8 114:7 117:12 118:4 118:13 124:7 | | **see**(28) 9:1 11:22 26:7 32:12 34:2 34:3 34:9 34:11 34:23 40:8 42:19 53:16 73:6 73:10 75:5 77:2 77:16 78:21 96:9 101:5 101:15 101:16 106:12 112:4 112:8 112:9 120:6 123:5 **seeing**(1) 92:9 **seek**(2) 45:14 45:18 **seeked**(1) 77:19 **seeking**(4) 12:15 77:22 79:1 115:23 **seeks**(2) 35:6 76:21 **seem**(1) 27:19 **self-evident**(1) 66:1 **seller**(13) 24:16 29:7 38:8 38:10 40:13 40:15 41:11 41:22 42:16 42:18 43:1 43:5 52:15 **seller's**(1) 29:18 **sellers**(6) 54:21 54:22 96:12 96:13 96:13 96:17 **send**(4) 15:3 78:24 111:9 118:23 **sending**(3) 27:20 54:10 78:23 **sends**(1) 112:15 **sense**(11) 18:11 41:5 50:17 50:18 50:25 58:20 60:21 62:10 62:16 62:3 62:15 **sensibly**(1) 27:16 **sent**(5) 14:25 44:13 59:13 63:22 122:1 **sentence**(12) 31:17 31:18 49:22 60:15 63:12 63:15 74:23 77:4 89:11 89:12 104:22 **separate**(7) 31:11 41:21 46:11 46:12 47:1 47:14 116:8 **separately**(1) 57:6 **serve**(2) 11:9 31:25 **serves**(1) 11:9 **service**(5) 1:49 1:56 86:25 100:8 104:16 **serving**(5) 1:49 4:40 4:40 6:9 33:17 33:21 33:23 35:7 36:14 37:9 49:6 50:13 51:16 58:18 **session**(1) 8:3 **set**(4) 10:3 11:5 29:2 121:11 **sets**(1) 46:24 **setting**(1) 40:11 **settle**(2) 98:7 98:17 **seven**(2) 96:10 96:10 **several**(3) 40:23 41:4 63:14 **seward**(1) 3:7 **shall**(4) 11:9 24:7 24:15 96:11 **shared**(1) 43:25 | **sale**(25) 9:25 10:5 10:12 11:10 33:11 36:2 36:4 36:5 36:6 42:20 44:14 54:12 54:14 54:24 54:25 55:1 55:3 55:10 55:17 57:15 73:3 90:18 91:1 115:21 117:21 **sales**(2) 11:13 125:4 **same**(22) 36:7 37:13 38:6 40:11 41:4 42:5 42:5 42:6 42:7 44:10 55:25 56:1 56:3 56:3 56:12 62:5 63:2 82:5 86:20 87:8 89:23 101:7 **samis**(1) 2:25 **satisfied**(1) 59:21 **satisfy**(3) 36:13 103:20 123:24 **save**(1) 9:15 **say**(82) 12:25 16:3 16:16 16:24 29:11 32:9 32:14 38:15 39:4 39:20 41:18 41:18 43:3 51:20 53:7 54:8 58:2 59:10 59:21 59:22 60:8 60:9 61:13 62:6 62:11 62:12 65:7 65:9 66:3 66:14 68:1 68:18 69:20 70:9 71:1 83:23 84:24 86:21 88:7 88:10 89:6 94:24 95:24 97:2 97:4 97:5 97:13 97:18 99:12 100:24 101:21 102:6 102:9 102:21 102:22 102:22 103:2 103:6 103:23 104:15 105:11 106:7 106:16 106:22 108:12 108:1 108:18 109:16 110:20 111:4 111:15 113:2 113:4 113:13 113:19 114:3 114:6 114:13 117:10 123:24 124:4 125:2 **saying**(17) 17:4 20:5 22:2 22:17 29:12 36:12 38:11 40:17 41:25 42:8 47:18 61:20 68:20 76:19 89:11 89:13 118:8 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **states**(11) 1:1 1:18 4:11 21:18 33:16 39:2 40:24 44:9 73:2 76:18 77:11 | | **surplus**(1) 98:24 | | **that**(301) 8:22 8:24 8:25 9:3 9:14 10:6 10:8 10:11 10:12 10:14 10:16 11:8 11:19 11:22 12:12 12:15 12:21 12:21 12:23 13:5 13:6 13:17 14:12 14:19 14:22 15:7 15:16 15:18 15:25 15:25 16:1 16:2 16:3 16:7 16:14 16:23 16:25 17:3 17:4 17:6 17:13 17:14 17:17 17:24 18:3 18:5 18:9 18:10 18:11 18:11 18:12 18:14 18:15 18:15 18:17 18:18 18:24 19:16 19:19 19:21 19:25 20:2 20:3 20:5 20:11 20:12 20:12 20:13 20:13 20:19 20:22 20:23 20:25 20:25 21:2 21:4 21:15 21:20 22:3 22:13 22:20 22:22 23:13 23:15 23:23 24:1 24:17 24:21 24:21 24:25 24:25 24:25 25:4 25:5 25:9 25:9 25:12 25:16 25:19 25:21 25:22 25:22 26:2 26:12 26:19 26:20 26:22 26:24 27:1 27:3 27:5 27:8 27:14 27:15 27:16 27:18 27:19 28:3 28:5 28:7 28:7 28:18 28:25 29:2 29:7 29:16 29:20 29:22 29:23 29:25 30:2 30:5 30:6 30:7 30:9 30:10 30:13 30:14 30:17 30:19 30:22 30:22 30:25 31:3 31:11 31:12 31:17 31:19 31:20 31:21 31:22 31:23 31:24 32:5 32:7 32:10 32:17 32:18 32:19 32:20 32:21 33:11 33:13 33:16 33:21 33:23 33:23 34:1 34:6 34:15 34:19 35:6 35:7 35:7 35:12 35:15 35:16 35:16 35:22 35:25 36:17 36:23 36:23 36:25 37:1 37:3 37:8 37:8 37:11 37:13 37:20 38:1 38:2 38:12 38:14 38:14 38:23 38:24 39:6 39:23 40:7 40:8 40:19 40:20 40:22 40:23 40:24 41:1 41:13 42:11 42:12 42:13 42:15 42:18 42:19 42:22 42:25 43:3 43:5 44:4 44:13 44:17 44:21 44:24 44:24 45:4 45:6 45:15 45:15 45:20 46:3 46:4 46:12 46:18 46:20 46:24 47:3 47:6 47:7 47:20 47:23 48:2 48:3 48:7 48:8 48:8 48:17 48:18 48:21 49:16 49:25 50:1 50:3 50:8 50:9 50:10 50:11 50:12 50:12 50:19 50:24 51:9 51:18 52:3 52:7 52:9 52:16 52:21 52:23 53:8 53:17 53:18 53:23 54:2 54:3 54:5 54:6 54:8 54:15 54:18 54:19 55:2 55:2 55:5 55:7 55:8 55:10 55:15 55:15 55:21 | | **that**(301) 55:24 56:1 56:2 56:10 56:15 56:17 56:17 56:18 56:20 56:21 56:22 57:3 57:6 57:6 57:8 57:9 57:9 57:11 57:11 57:12 57:15 57:15 57:20 58:5 58:6 58:13 58:14 58:16 58:17 58:21 58:22 59:5 59:9 59:9 59:10 59:11 59:20 59:22 59:25 60:3 60:11 60:14 60:15 60:15 60:17 60:24 60:25 61:5 61:10 61:13 61:14 61:15 61:19 61:25 62:6 62:13 62:15 62:18 62:25 63:2 63:13 63:13 63:15 63:17 63:18 63:20 63:21 63:22 63:25 64:2 64:3 64:5 64:6 64:7 64:12 64:17 64:19 64:23 64:25 65:2 65:9 65:9 65:11 65:11 65:13 65:18 66:1 66:6 66:12 66:25 67:1 67:3 67:4 67:5 67:11 67:16 67:19 67:20 67:21 67:24 68:7 68:9 68:10 68:11 68:12 68:13 68:14 68:14 68:20 68:24 68:24 69:15 69:17 69:24 70:2 70:11 70:18 70:21 71:1 71:4 72:16 72:19 72:19 73:2 73:6 73:10 73:12 73:16 73:17 73:20 73:23 74:1 74:5 74:6 74:17 74:25 75:3 75:5 75:7 75:19 76:11 76:18 77:2 77:4 77:25 77:17 78:5 78:17 78:18 77:24 78:20 78:21 79:8 79:14 79:19 80:3 80:3 80:6 80:8 80:9 80:10 80:13 80:17 80:24 81:5 81:16 81:17 81:17 81:21 81:24 82:1 82:2 82:4 82:5 82:6 82:6 82:8 82:18 82:22 83:1 83:1 83:3 83:4 83:6 83:8 83:10 83:12 83:14 83:15 83:17 83:17 83:20 83:22 84:3 84:11 84:15 84:19 84:19 84:21 84:25 85:1 85:2 85:4 85:5 85:7 86:2 86:3 86:3 86:4 86:7 86:15 86:23 86:24 87:2 87:4 87:8 87:12 87:13 87:14 87:14 87:16 87:19 87:20 87:22 87:22 87:23 87:23 87:25 88:3 88:4 88:4 88:7 88:9 88:13 88:13 88:18 88:19 89:6 89:12 90:12 90:16 90:17 90:17 90:19 91:4 91:7 91:7 91:13 91:14 92:3 92:12 93:18 93:23 94:15 94:18 94:21 94:22 94:24 95:11 95:21 96:2 96:2 96:16 97:9 97:15 97:15 97:23 98:8 98:14 98:20 98:20 98:25 99:4 99:5 99:14 99:15 99:21 100:2 100:18 100:21 100:22 100:24 101:5 101:11 101:23 101:25 102:9 102:13 103:6 103:7 103:11 103:18 103:20 103:21 104:2 104:3 104:4 104:5 104:11 104:13 104:19 104:20 |
| **statutory**(1) 20:8 | | **surprise**(1) 85:2 | | | | | |
| **stay**(2) 62:16 89:18 | | **surprising**(1) 67:22 | | | | | |
| **steen**(1) 1:31 | | **survival**(1) 106:14 | | | | | |
| **sten**(1) 5:32 | | **survive**(1) 102:9 | | | | | |
| **step**(5) 30:2 30:3 85:16 97:9 110:24 | | **susceptible**(3) 19:20 21:15 22:19 | | | | | |
| **stick**(1) 103:17 | | **sw1y**(1) 2:7 | | | | | |
| **stikeman**(1) 5:44 | | **sworn**(2) 71:19 71:23 | | | | | |
| **still**(10) 21:25 22:22 46:18 60:3 60:7 68:13 110:11 111:14 111:21 113:20 | | **tab**(8) 96:6 101:3 101:3 101:4 104:1 108:24 112:1 112:17 | | | | | |
| **stills**(1) 21:23 | | **table**(3) 101:12 118:9 119:8 | | | | | |
| **stops**(1) 63:15 | | **tainted**(1) 99:12 | | | | | |
| **strauss**(2) 10:24 90:8 | | **take**(24) 22:3 26:2 37:8 37:8 50:10 50:10 50:17 59:9 59:23 60:10 86:23 86:24 92:11 96:1 100:6 101:6 103:16 105:23 108:22 109:11 110:24 111:12 114:3 118:17 | | | | | |
| **street**(16) 1:10 1:26 1:50 2:6 2:13 2:27 3:9 3:22 3:35 3:50 4:6 4:14 4:42 4:48 5:7 5:22 | | | | | | **that**(111) 104:21 104:22 104:25 105:15 105:20 105:24 106:2 106:19 106:20 106:21 106:21 107:11 107:18 107:20 107:25 108:6 108:7 108:8 108:8 108:12 108:14 108:16 108:18 108:21 108:21 108:24 109:11 109:12 110:2 110:5 110:6 110:7 110:11 110:14 110:15 110:20 110:22 110:24 111:3 111:6 111:6 111:16 111:17 111:23 112:8 112:10 112:11 112:13 112:23 113:2 113:8 113:12 113:19 113:21 113:24 114:5 114:12 114:12 114:15 114:16 114:18 114:19 114:20 114:20 115:8 115:15 115:21 116:8 116:21 116:25 117:8 117:10 117:24 117:25 118:14 118:18 118:19 118:23 120:6 120:8 120:9 120:19 121:9 121:24 122:1 122:2 122:5 122:7 122:17 122:19 122:19 124:3 124:5 124:6 124:9 124:11 124:12 124:13 124:18 124:22 125:3 125:6 125:15 125:16 125:16 125:22 125:23 125:23 126:3 126:6 126:20 |
| **strictly**(1) 69:6 | | **taken**(4) 83:10 109:14 109:22 116:6 | | | | | |
| **strong**(4) 12:11 12:20 17:25 38:24 | | **takes**(1) 97:17 | | | | | |
| **structure**(7) 95:18 95:20 96:9 97:5 97:24 98:11 106:12 | | **taking**(6) 8:25 83:17 83:20 95:22 109:25 118:16 | | | | | |
| **struggled**(1) 63:6 | | **talk**(4) 17:22 30:9 51:23 62:18 | | | | | |
| **stuff**(1) 58:21 | | **talked**(1) 62:21 | | | | | |
| **subject**(12) 8:21 9:3 19:2 41:22 43:1 44:21 57:11 63:8 90:22 96:11 125:16 125:20 | | **talking**(10) 51:3 58:17 63:2 63:5 64:7 64:12 64:18 83:25 99:25 120:2 | | | | | |
| **submission**(7) 94:21 102:23 114:15 117:3 118:10 118:18 120:10 | | **talks**(2) 66:23 67:6 | | | | | |
| | | **target**(1) 110:3 | | | | | |
| **submissions**(10) 91:14 110:22 114:24 115:5 115:7 115:9 115:10 116:2 122:6 122:6 | | **tax**(1) 106:15 | | | | | |
| | | **taylor**(1) 3:6 | | | | | |
| **submit**(17) 10:6 17:1 17:17 17:20 20:20 21:13 22:22 27:14 30:13 31:2 39:24 40:1 52:8 63:17 99:7 107:1 107:10 | | **tea**(2) 24:14 25:7 | | | | | |
| | | **technical**(1) 15:20 | | | | | |
| | | **technologies**(1) 39:8 | | | | | |
| **submits**(1) 23:5 | | **tee**(1) 44:8 | | | | | |
| **submitted**(3) 18:13 24:13 48:8 | | **telephonic**(2) 5:27 6:5 | | | | | |
| **submitting**(1) 81:5 | | **tell**(8) 65:1 79:6 89:14 99:4 102:4 104:11 105:20 121:19 | | | | | |
| **subparagraph**(2) 97:14 101:24 | | | | | | | |
| **subsequen**(1) 65:6 | | **telling**(1) 113:23 | | | | | |
| **subset**(6) 24:18 37:8 37:10 50:10 50:11 50:12 | | **tells**(6) 73:23 94:25 98:8 102:16 105:9 119:22 | | | | | |
| **subsidiary**(1) 114:19 | | **tempted**(1) 118:6 | | | | | |
| **substance**(2) 91:24 99:21 | | **ten**(4) 2:41 92:13 93:2 93:4 | | | | | |
| **subtract**(3) 26:20 61:17 61:24 | | **term**(8) 26:7 43:18 44:1 54:19 58:24 59:2 113:2 115:13 | | | | | |
| **such**(9) 17:6 23:12 49:13 49:18 50:4 94:22 95:17 107:3 118:6 | | | | | | | |
| | | **terms**(33) 16:19 23:9 31:1 31:2 36:4 54:23 54:25 55:1 55:10 55:13 55:15 55:15 55:20 55:23 55:24 56:17 87:11 90:13 90:21 90:25 91:5 100:10 100:12 101:7 101:7 101:18 101:19 102:8 106:11 113:7 113:25 115:16 119:6 | | | | | |
| **suddenly**(1) 18:18 | | | | | | | |
| **sued**(1) 29:7 | | | | | | | |
| **sufficient**(2) 114:3 125:23 | | | | | | | |
| **suggest**(4) 30:25 81:17 81:24 96:16 | | **terrace**(1) 5:16 | | | | | |
| **suggestion**(1) 89:10 | | **test**(1) 14:12 | | | | | |
| **suggestions**(1) 32:19 | | **testify**(4) 68:7 68:7 68:9 104:12 | | | | | |
| **suing**(1) 29:13 | | **testimony**(2) 85:21 120:22 | | | | | |
| **suite**(9) 2:14 2:20 3:23 3:36 3:49 4:14 4:28 4:35 5:22 | | **than**(13) 30:4 54:10 64:25 80:21 80:22 81:13 81:16 90:14 92:13 101:16 103:9 113:23 114:23 | | | | | |
| **summary**(1) 100:8 | | | | | | | |
| **superimposing**(1) 103:24 | | | | | | | |
| **superintendent**(1) 6:8 | | **thank**(73) 8:5 9:4 9:5 9:23 11:15 11:25 12:4 12:5 13:7 13:23 14:1 14:2 14:18 22:8 23:4 33:2 33:2 33:4 33:5 33:7 34:7 34:13 34:17 57:21 57:22 57:23 57:24 69:4 71:19 72:18 79:10 85:13 85:16 85:18 85:19 88:22 88:23 89:25 90:2 90:4 91:8 91:17 92:2 92:7 92:22 93:1 93:2 93:4 93:9 93:15 93:25 94:14 107:12 107:13 107:15 114:25 116:2 116:4 116:10 116:16 120:7 120:8 120:24 121:3 121:9 123:16 124:20 124:24 125:25 126:2 126:5 126:16 | | | | | |
| **supp**(1) 53:1 | | | | | | | |
| **supplementa**(2) 10:7 92:20 | | | | | | | |
| **support**(5) 45:5 91:14 91:25 116:15 116:16 | | | | | | | |
| **supporting**(1) 115:6 | | | | | | | |
| **supports**(2) 57:12 116:6 | | | | | | | |
| **suppose**(1) 95:11 | | | | | | | |
| **supposed**(4) 21:9 21:9 98:18 105:16 | | | | | | | |
| **supreme**(9) 18:2 18:3 38:22 39:23 40:7 99:16 106:6 119:15 119:16 | | | | | | | |
| **sure**(6) 17:13 33:15 41:15 48:16 94:11 124:13 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that's**(105) 11:14 13:4 15:9 17:4 20:5 20:6 20:21 20:24 21:8 21:17 21:19 22:2 22:16 25:19 26:8 31:14 31:18 32:11 32:15 34:7 34:25 35:21 36:5 37:4 39:4 40:6 42:13 42:15 42:19 43:23 44:2 45:16 45:18 46:22 47:1 48:4 48:9 49:8 50:20 50:22 51:18 52:19 53:7 53:17 53:25 54:15 56:5 56:11 57:13 58:21 59:1 59:2 60:12 60:23 60:23 63:9 64:15 65:1 65:1 65:4 65:5 67:20 67:22 67:25 68:17 70:23 71:1 72:11 73:2 80:7 80:11 80:14 82:4 84:21 85:11 87:1 87:10 89:7 89:10 89:15 89:20 95:24 97:11 100:19 102:17 103:14 104:18 105:15 105:16 106:1 106:10 106:22 109:16 109:23 110:10 111:25 112:17 113:14 114:3 115:22 116:22 118:21 118:24 119:23 120:3 **that's**(1) 58:22 **the**(301) 1:1 1:2 1:17 1:22 2:4 2:24 3:4 3:8 3:29 5:40 8:3 8:4 8:5 8:9 8:13 8:17 8:17 8:17 8:20 8:22 8:22 8:23 8:24 8:25 9:4 9:6 9:8 9:11 9:14 9:17 9:17 9:22 9:24 9:24 9:25 10:2 10:3 10:3 10:5 10:6 10:13 10:14 10:15 10:17 10:21 10:24 11:1 11:2 11:7 11:10 11:10 11:12 11:15 11:18 11:19 11:20 11:22 11:22 11:23 12:1 12:1 12:2 12:4 12:6 12:13 12:14 12:14 12:17 12:19 13:3 13:6 13:8 13:10 13:11 13:13 13:14 13:14 13:17 13:17 13:19 13:20 13:23 14:5 14:6 14:8 14:10 14:11 14:15 14:17 14:19 14:22 14:22 14:23 14:25 14:25 15:3 15:6 15:9 15:16 15:17 15:20 15:22 15:23 15:24 16:4 16:4 16:5 16:7 16:8 16:12 16:13 16:14 16:16 16:16 16:17 16:19 16:20 16:20 16:24 17:2 17:4 17:5 17:8 17:9 17:10 17:11 17:12 17:14 17:18 17:18 17:19 17:20 17:20 17:22 17:23 18:2 18:2 18:3 18:5 18:6 18:6 18:10 18:11 18:12 18:15 18:17 18:17 18:19 18:20 18:23 18:24 18:25 19:1 19:2 19:3 19:5 19:5 19:6 19:7 19:9 19:11 19:14 19:14 19:15 19:16 19:19 19:19 19:22 19:25 20:3 20:9 20:10 20:13 20:13 20:16 20:17 20:19 20:21 20:21 20:22 20:23 21:1 21:2 21:4 21:6 21:6 21:7 21:8 21:8 21:9 21:10 21:11 21:12 21:12 21:14 21:16 21:17 21:18 21:19 21:20 21:20 21:23 21:25 21:25 22:1 22:4 22:4 22:5 22:7 22:10 22:11 22:11 22:12 22:14 22:15 22:17 22:18 22:19 22:20 22:22 22:22 22:24 22:25 23:1 23:3 23:6 23:7 23:8 23:9 23:10 23:11 23:13 23:14 23:14 23:16 23:21 23:22 23:23 23:23 23:23 23:24 24:1 24:4 24:5 24:7 24:8 24:8 24:9 24:9 24:11 24:14 24:14 24:14 24:15 24:18 24:18 24:21 24:22 24:23 24:23 24:24 24:25 25:1 25:3 25:4 25:5 25:7 25:7 25:8 25:8 25:9 25:11 25:12 25:13 25:14 25:15 25:16 25:16 25:19 25:20 25:21 25:22 25:23 25:23 25:23 25:25 26:1 26:2 26:6 26:7 26:8 26:9 26:9 26:10 26:16 26:18 26:20 27:2 | **the**(301) 27:3 27:6 27:7 27:7 27:9 27:9 27:10 27:10 27:11 27:12 27:16 27:18 27:19 27:20 27:22 27:24 27:25 28:2 28:4 28:5 28:5 28:6 28:6 28:6 28:6 28:7 28:7 28:7 28:8 28:9 28:10 28:10 28:11 28:14 28:14 28:20 28:21 29:4 29:4 29:6 29:7 29:7 29:8 29:8 29:9 29:11 29:13 29:15 29:16 29:17 29:17 29:18 29:18 29:19 29:21 29:22 29:23 29:23 29:24 29:25 29:25 30:1 30:2 30:3 30:4 30:6 30:7 30:15 30:18 30:19 30:20 30:25 31:1 31:1 31:2 31:3 31:3 31:4 31:6 31:8 31:12 31:13 31:17 31:17 31:18 31:18 31:18 31:23 31:24 31:24 32:1 32:2 32:2 32:3 32:13 32:13 32:16 32:17 32:20 32:20 32:21 32:22 32:23 32:25 33:2 33:5 33:10 33:11 33:12 33:13 33:13 33:14 33:14 33:14 33:15 33:15 33:16 33:16 33:18 33:19 33:19 33:24 34:3 34:3 34:6 34:8 34:10 34:12 34:13 34:15 34:16 34:18 34:18 34:22 34:25 35:2 35:3 35:4 35:4 35:5 35:5 35:8 35:9 35:14 35:14 35:16 35:17 35:18 35:19 35:19 35:20 35:22 35:23 35:24 36:1 36:2 36:2 36:3 36:4 36:4 36:5 36:6 36:7 36:8 36:11 36:12 36:17 36:19 36:21 36:23 36:24 37:11 37:13 37:13 37:14 37:16 37:17 37:4 37:5 37:5 37:6 37:7 37:9 38:2 38:2 37:18 37:19 37:21 37:23 37:24 38:2 38:2 38:3 38:7 38:8 38:9 38:9 38:10 38:10 38:23 38:24 39:4 39:7 39:7 39:12 39:13 39:14 39:14 39:15 39:15 39:15 39:21 39:22 40:2 40:2 40:5 40:5 40:9 40:11 40:14 40:15 40:15 40:17 40:21 40:24 40:25 41:1 41:2 41:3 41:4 41:6 41:8 41:9 41:10 41:11 41:13 41:18 41:21 41:22 41:24 41:25 42:1 42:3 42:3 42:7 42:10 42:11 42:12 42:13 42:14 42:16 42:17 42:20 42:20 42:22 42:23 42:25 43:1 43:1 43:2 43:3 43:5 43:5 43:6 43:8 43:9 43:11 43:11 43:12 43:13 43:14 43:16 43:17 43:21 43:21 43:24 43:25 44:1 44:2 44:2 44:4 44:5 44:5 44:6 44:6 44:8 | **the**(301) 44:8 44:10 44:10 44:14 44:14 44:15 44:16 44:16 44:18 44:19 44:20 44:23 45:1 45:3 45:6 45:7 45:7 45:8 45:9 45:9 45:10 45:10 45:12 45:13 45:13 45:15 45:17 45:20 45:23 45:25 46:2 46:3 46:3 46:7 46:8 46:9 46:10 46:13 46:13 46:14 46:15 46:16 46:17 46:18 46:24 46:25 47:2 47:2 47:3 47:5 47:7 47:7 47:8 47:9 47:12 47:16 47:22 47:24 48:1 48:3 48:5 48:7 48:9 48:11 48:12 48:14 48:17 48:17 48:18 48:20 48:21 48:24 48:25 49:1 49:4 49:7 49:8 49:8 49:10 49:11 49:12 49:12 49:15 49:17 49:19 49:20 49:22 49:23 49:25 50:4 50:6 50:8 50:9 50:10 50:11 50:14 50:15 50:18 50:19 50:25 51:3 51:4 51:5 51:7 51:12 51:13 51:17 51:19 51:20 51:24 52:2 52:5 52:6 52:7 52:9 52:12 52:12 52:14 52:15 52:15 52:18 52:18 52:19 52:24 53:2 53:2 53:2 53:4 53:8 53:9 53:9 53:12 53:12 53:13 53:14 53:18 53:20 53:20 53:21 53:21 53:22 54:6 54:7 54:7 54:9 54:12 54:13 54:14 54:15 54:18 54:19 54:20 54:21 54:23 55:5 55:6 55:11 55:1 55:2 55:5 55:5 55:6 55:7 55:8 55:12 55:13 55:13 55:13 55:14 55:15 55:19 55:25 56:1 56:2 56:2 56:3 56:5 56:5 56:6 56:9 56:12 56:12 56:13 56:16 56:20 56:23 56:24 56:25 57:3 57:6 57:7 57:9 57:9 57:9 57:10 57:12 57:13 57:14 57:14 57:14 57:17 57:17 57:19 57:19 57:20 57:21 57:23 57:25 58:3 58:6 58:6 58:7 58:9 58:9 58:10 58:10 58:11 58:11 58:12 58:12 58:13 58:15 58:21 58:22 58:23 58:24 58:24 58:25 59:1 59:3 59:4 59:5 59:7 59:13 59:15 59:18 59:21 60:2 60:4 60:9 60:14 60:14 60:17 60:18 60:21 60:22 61:12 61:14 61:16 61:25 62:1 62:5 62:5 62:6 62:6 62:11 62:16 62:18 62:19 62:19 62:20 62:21 62:22 62:23 62:24 62:25 62:25 63:1 63:2 63:3 63:5 63:5 63:6 63:7 63:8 63:10 63:11 63:12 63:12 63:13 63:17 63:19 63:19 63:20 63:23 64:1 64:4 64:5 | **the**(301) 64:7 64:8 64:9 64:13 64:13 64:14 64:17 64:23 64:24 65:3 65:3 65:4 65:9 65:11 65:15 65:17 65:18 65:19 65:20 65:22 65:23 65:25 66:3 66:5 66:5 66:8 66:12 66:14 66:21 66:21 66:23 67:2 67:3 67:3 67:4 67:7 67:8 67:8 67:9 67:12 67:15 67:18 68:3 68:4 68:6 68:6 68:9 68:10 68:10 68:12 68:12 68:14 68:14 68:15 68:15 68:16 68:17 68:21 68:21 68:23 69:1 69:3 69:5 69:5 69:6 69:10 69:13 69:17 69:20 69:20 69:21 69:22 69:23 70:1 70:4 70:4 70:6 70:7 70:12 70:12 70:13 70:14 70:15 70:16 70:17 70:18 70:19 70:19 70:21 70:22 70:24 71:1 71:2 71:3 71:7 71:8 71:9 71:9 71:13 71:16 71:16 71:20 71:21 71:22 71:24 72:12 72:13 72:15 72:16 72:19 72:24 72:25 72:25 73:3 73:8 73:12 73:17 73:20 73:22 73:23 74:4 74:8 74:10 74:12 75:4 75:8 75:9 75:10 75:12 75:15 75:18 75:18 75:18 75:22 75:22 75:24 75:24 76:6 76:9 76:12 76:13 76:14 76:16 76:17 76:23 77:5 77:6 77:7 77:14 77:21 77:25 78:2 78:6 78:7 78:8 78:9 78:11 78:13 78:18 78:23 78:25 79:6 79:10 79:14 79:16 79:19 79:19 79:25 80:3 80:6 80:8 80:12 80:16 80:17 80:17 80:20 80:25 81:5 81:8 81:10 81:16 81:17 81:20 81:25 82:1 82:5 82:5 82:7 82:8 82:14 82:15 83:4 83:7 83:9 83:15 83:18 83:20 83:22 83:23 83:25 84:3 84:3 84:4 84:5 84:7 84:10 84:11 84:12 84:14 84:22 84:23 85:2 85:13 85:16 85:18 85:19 85:21 85:22 85:24 85:24 85:24 86:4 86:5 86:5 86:5 86:6 86:7 86:9 86:10 86:14 86:16 86:16 86:19 86:20 86:21 87:2 87:5 87:7 87:8 87:8 87:11 87:14 87:14 87:15 87:19 87:20 87:21 87:23 87:24 87:25 87:25 88:2 88:4 88:5 88:10 88:12 88:13 88:15 88:16 88:18 88:20 88:20 88:23 88:25 89:2 89:4 89:4 89:9 89:9 89:15 89:16 89:17 89:18 89:19 89:23 89:23 90:6 90:8 90:12 90:12 90:12 90:13 90:13 90:14 90:15 90:16 90:17 90:17 90:18 90:18 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) | 90:19 90:21 90:23 91:1 91:2 91:2 91:2 91:3 91:4 91:8 91:12 91:13 91:14 91:15 91:16 91:17 91:19 91:22 91:24 91:25 91:25 92:15 92:2 92:3 92:5 92:11 92:17 92:18 92:19 92:20 92:23 92:24 93:1 93:7 93:9 93:11 93:15 93:17 93:19 93:24 94:3 94:7 94:8 94:10 94:10 94:11 94:15 94:16 94:16 94:17 94:19 94:25 95:4 95:4 95:11 95:11 95:13 95:14 95:18 95:19 95:20 95:21 95:22 95:22 95:23 95:24 96:3 96:3 96:4 96:4 96:4 96:5 96:6 96:7 96:7 96:7 96:8 96:9 96:10 96:11 96:12 96:13 96:13 96:13 96:17 96:17 96:18 96:18 96:19 96:19 96:20 96:20 96:21 96:23 96:24 96:25 96:25 97:1 97:2 97:3 97:3 97:4 97:4 97:5 97:5 97:6 97:6 97:8 97:9 97:10 97:14 97:15 97:16 97:17 97:22 98:2 98:5 98:6 98:7 98:11 98:11 98:12 98:12 98:13 98:13 98:14 98:19 98:22 98:25 99:1 99:1 99:3 99:5 99:6 99:7 99:13 99:14 99:16 99:18 99:18 99:20 99:21 99:21 99:24 99:24 100:1 100:3 100:4 100:6 100:7 100:8 100:8 100:11 100:13 100:14 100:14 100:18 100:19 100:19 100:24 100:25 101:2 101:3 101:4 101:4 101:7 101:7 101:8 101:9 101:10 101:12 101:12 101:16 101:18 101:18 101:19 101:19 101:21 101:24 101:25 102:1 102:7 102:7 102:8 102:10 102:10 102:11 102:16 102:17 102:23 103:2 103:4 103:5 103:9 103:12 103:19 103:24 103:25 104:1 104:5 104:7 104:8 104:13 104:16 104:17 104:18 104:1 104:20 104:22 104:23 104:23 105:3 105:5 105:9 105:12 105:14 105:15 105:16 105:1 105:19 105:20 105:22 105:24 105:24 106:1 106:2 106:5 106:5 106:6 106:9 106:10 106:11 106:11 106:12 106:14 106:15 106:16 106:17 106:18 106:18 106:19 106:19 106:19 106:20 106:20 106:21 106:23 107:2 107:2 107:3 107:4 107:9 107:11 107:16 107:20 107:20 107:2 108:4 108:5 108:6 108:6 108:12 108:13 108:14 108:15 108:17 108:19 108:21 108:22 108:23 108:24 108:25 109:1 109:2 109:2 109:4 109:5 109:7 109:9 109:11 109:13 109:14 109:14 109:14 109:16 109:17 109:17 109:18 109:20 109:22 109:23 109:24 110:2 110:3 110:3 110:4 110:9 | **the**(255) | 110:10 110:11 110:12 110:15 110:15 110:17 110:17 110:22 110:22 110:24 110:25 111:1 111:2 111:3 111:4 111:4 111:5 111:6 111:7 111:7 111:11 111:12 111:13 111:14 111:16 111:17 111:17 111:18 111:18 111:18 111:20 111:21 111:22 111:22 111:23 111:24 112:5 112:6 112:9 112:9 112:11 112:12 112:13 112:15 112:16 112:17 112:17 112:18 112:20 112:21 112:25 112:25 113:3 113:4 113:6 113:7 113:14 113:15 114:2 114:4 114:9 114:10 114:10 114:14 114:16 114:16 114:18 114:21 115:7 115:6 115:6 115:7 115:8 115:8 115:10 115:10 115:12 115:13 115:15 115:16 115:17 115:19 115:20 115:21 115:23 115:24 115:25 116:6 116:6 116:7 116:7 116:9 116:13 116:13 116:14 116:16 116:16 116:19 116:19 116:21 116:24 116:7 117:2 117:3 117:4 117:6 117:6 117:6 117:8 117:12 117:15 117:16 117:16 117:18 117:19 117:23 117:23 117:25 118:1 118:1 118:1 118:3 118:7 118:8 118:8 118:9 118:9 118:11 118:12 118:16 118:19 118:21 118:23 118:23 118:24 118:24 119:1 119:4 119:4 119:9 119:18 119:15 119:17 119:19 119:20 119:21 119:23 119:24 119:24 120:3 120:5 120:8 120:9 120:11 120:13 120:13 120:14 120:15 120:20 121:1 121:2 121:16 121:17 121:20 121:21 121:22 122:1 122:2 122:5 122:6 122:6 122:7 122:7 122:11 122:12 122:15 122:16 122:1 122:17 122:18 122:24 122:25 123:2 123:4 123:6 123:8 123:10 123:12 123:14 123:16 123:18 123:19 123:19 123:21 123:22 123:25 124:1 124:2 124:6 124:7 124:8 124:10 124:11 124:12 124:12 124:13 124:14 124:15 124:16 124:18 124:18 124:21 124:24 124:25 125:1 125:2 125:3 125:4 125:6 125:14 125:15 125:16 125:16 125:18 125:19 125:20 125:22 125:25 126:2 126:8 126:12 126:12 126:17 126:18 126:18 126:20 126:21 126:21 126:22 | **there**(124) | 12:9 13:19 15:4 15:25 17:24 20:3 22:20 24:11 24:24 25:4 25:10 26:12 26:13 27:14 28:15 28:17 28:24 29:3 29:3 31:20 31:22 32:18 34:2 34:25 35:6 35:21 37:2 39:21 42:10 44:3 44:10 44:11 44:14 45:13 45:20 45:23 47:18 47:25 50:15 50:16 51:24 52:12 53:12 54:8 54:21 54:2 55:11 56:16 56:21 56:21 57:4 59:20 60:3 61:21 61:21 63:25 64:4 64:4 66:4 66:6 66:16 67:12 68:11 68:13 70:21 72:6 73:2 75:15 78:3 78:21 81:24 82:10 82:10 82:2 86:11 87:6 87:10 87:17 87:21 88:9 88:11 94:4 94:22 95:2 95:10 95:13 95:15 95:17 95:23 96:14 97:19 99:11 100:16 100:16 100:17 101:9 103:21 103:23 105:18 105:2 106:11 106:25 109:12 109:12 110:23 111:10 112:5 113:16 113:20 114:13 114:15 117:8 118:6 118:10 118:20 119:23 121:16 121:21 123:2 123:6 123:17 124:1 124:22 125:15 | **thinks**(3) | 38:10 112:24 114:5 |
| | | | | | | **third**(8) | 3:43 18:20 27:7 38:22 39:7 52:3 92:19 108:5 |
| | | | | | | **thirty**(3) | 66:13 98:17 107:8 |
| | | | | | | **thirty-fourth**(1) | 63:4 |
| | | | | | | **this**(234) | 8:15 8:20 8:22 10:9 11:2 11:4 11:5 11:8 11:11 12:10 15:6 16:10 16:23 17:2 18:23 19:3 19:8 20:3 20:25 21:19 22:14 22:16 24:4 25:24 26:6 26:13 27:19 27:25 28:13 29:6 30:10 30:10 30:12 31:7 33:9 33:15 34:1 35:9 36:1 36:2 36:7 36:14 37:15 37:19 37:24 38:6 38:15 38:20 39:3 39:8 39:20 40:11 41:15 41:17 41:21 41:22 42:4 43:11 43:20 44:3 44:18 44:24 45:23 46:24 47:20 47:21 48:1 48:2 49:23 51:14 51:21 51:22 52:3 52:24 52:25 53:6 53:15 54:3 54:6 54:10 54:11 54:16 54:19 54:22 54:24 55:3 55:8 55:9 55:10 55:17 56:2 56:8 56:9 56:9 56:11 56:21 56:22 57:2 57:2 57:4 57:6 57:15 57:18 57:18 57:19 58:6 58:16 58:18 59:7 61:1 61:7 61:14 62:23 63:22 64:21 66:1 66:18 67:13 67:16 67:20 69:5 69:6 70:13 72:8 75:16 78:23 78:25 79:6 79:18 80:24 83:5 83:8 83:11 83:21 85:24 86:12 86:18 86:20 87:6 87:16 88:3 88:5 88:7 88:16 88:17 89:18 90:11 90:21 90:21 91:2 91:5 91:14 92:6 94:3 94:4 95:18 95:20 96:21 97:2 99:7 100:7 100:15 100:18 101:11 101:17 102:3 102:4 102:17 102:18 102:19 103:3 103:13 104:21 105:2 105:9 105:15 105:15 106:5 106:7 106:9 106:12 106:17 106:24 107:1 107:5 107:10 107:10 107:11 107:19 107:25 108:8 108:9 108:11 108:16 108:19 108:25 109:13 110:21 112:12 112:20 112:24 113:16 113:25 114:2 114:5 114:7 115:2 115:13 115:14 115:23 117:5 117:5 117:9 117:10 117:13 117:17 117:20 117:20 117:25 118:4 118:7 118:9 118:11 119:14 119:14 119:17 119:20 120:6 120:18 122:7 122:8 123:24 124:3 124:11 |
| | | | | | **their**(32) | 10:18 14:25 18:7 18:21 19:17 20:1 25:12 27:21 30:14 36:10 43:8 51:6 61:23 67:19 70:10 70:20 78:4 78:13 79:2 86:15 90:19 91:24 92:2 97:2 101:10 102:25 103:24 110:7 111:9 118:21 118:22 125:21 | **there's**(58) | 10:4 13:12 13:16 13:21 17:5 18:9 22:13 35:10 35:15 36:22 37:5 38:7 38:11 38:20 38:23 39:2 39:5 40:15 40:16 42:9 42:11 42:15 43:24 45:14 45:24 46:6 46:18 46:22 47:11 49:25 50:15 58:16 61:17 61:23 63:20 64:3 64:20 65:6 66:6 66:7 69:13 70:22 75:20 82:6 87:12 88:12 88:17 97:7 99:4 101:16 101:21 104:10 104:24 107:18 109:2 115:22 118:4 | |
| | | | | | **theirs**(1) | 45:5 | **they**(101) | 10:8 10:11 15:18 16:1 16:3 16:5 16:24 21:7 21:13 23:11 23:13 24:19 27:8 29:12 30:13 30:14 30:24 30:25 31:6 31:6 31:20 31:20 32:16 32:17 32:17 37:1 41:6 43:3 44:13 44:15 44:16 45:4 47:3 49:15 53:9 54:23 55:13 55:13 55:14 55:18 55:25 56:16 56:18 57:5 59:21 61:8 61:10 64:9 64:19 65:18 66:3 66:7 66:8 66:9 66:18 66:20 67:18 67:19 67:20 70:11 78:7 78:9 78:18 86:7 86:8 87:3 90:24 95:8 95:13 96:12 96:14 97:2 97:7 98:15 101:10 101:11 101:12 101:13 101:13 102:4 102:8 102:8 102:9 102:22 103:6 103:23 107:10 109:3 109:9 111:4 111:12 111:13 112:8 112:14 114:14 119:3 119:10 120:2 120:16 124:12 | |
| | | | | | **them**(27) | 9:13 9:19 10:10 17:20 45:1 60:21 66:13 67:10 86:13 89:21 94:4 95:7 95:11 96:1 98:7 98:16 99:4 100:9 101:6 102:11 102:24 105:3 105:5 105:23 119:9 120:5 125:20 | | | **thomas**(1) | 3:15 |
| | | | | | **themselves**(2) | 27:4 98:8 | | | **thorne**(1) | 2:12 |
| | | | | | **then**(72) | 10:4 12:24 13:6 13:24 15:7 19:14 22:16 23:16 23:18 24:16 25:14 26:20 26:20 27:5 27:18 27:22 28:25 29:3 30:2 31:5 31:5 32:22 37:21 38:11 38:11 38:16 39:2 40:16 44:12 46:13 47:2 47:3 47:19 47:22 49:22 50:16 51:23 53:22 63:15 63:22 64:19 67:16 71:6 71:7 75:16 78:20 79:13 79:14 81:17 84:14 88:11 89:14 89:15 96:22 97:5 97:9 97:3 98:7 98:16 98:17 99:12 99:13 102:8 103:2 103:17 104:22 113:10 117:24 117:24 118:13 121:1 122:3 | **they're**(25) | 17:8 17:17 21:2 21:2 24:5 24:19 29:10 30:17 30:18 61:7 61:21 62:10 63:2 63:3 63:10 88:7 88:8 88:8 97:23 101:6 102:22 103:2 104:17 105:12 107:23 | **those**(53) | 9:14 9:19 10:12 16:19 16:21 17:14 17:18 23:24 24:17 27:1 27:3 28:18 29:3 29:5 30:21 30:22 31:22 32:5 32:8 37:10 50:12 50:18 50:22 54:24 55:10 55:23 56:16 57:16 58:2 61:16 61:21 68:21 70:23 71:4 74:16 75:21 76:8 86:8 89:20 98:6 98:9 98:19 108:9 111:19 115:6 115:9 116:2 119:2 119:6 119:6 120:14 120:15 120:17 124:5 |
| | | | | | | | **they've**(5) | 47:22 65:2 87:2 88:9 107:9 | **though**(6) | 28:11 29:23 30:3 59:23 106:25 110:1 |
| | | | | | | | **thing**(9) | 27:19 36:13 57:2 58:16 61:12 62:18 63:9 119:5 120:18 | **thought**(4) | 44:15 57:8 66:17 109:23 |
| | | | | | | | **things**(7) | 49:14 50:11 55:6 55:7 86:24 88:3 93:24 | **three**(6) | 56:15 66:3 73:20 80:4 99:19 107:18 |
| | | | | | | | **think**(57) | 9:9 10:19 11:19 12:11 17:19 18:20 20:8 26:1 27:16 27:24 28:10 30:5 30:17 30:24 30:25 32:15 32:21 40:14 41:18 41:19 42:7 47:7 47:10 47:24 53:16 58:1 58:14 62:9 64:2 65:25 66:19 70:7 70:22 75:16 79:14 89:4 89:22 92:3 93:14 94:7 94:15 95:3 97:3 106:23 111:25 113:2 113:14 113:15 114:23 120:8 122:22 123:18 123:23 125:14 125:23 126:3 | **through**(25) | 14:23 14:24 16:2 17:12 30:1 30:7 32:8 32:10 42:6 48:23 59:4 65:21 83:9 84:15 84:17 86:20 87:2 87:9 100:11 100:23 101:6 105:23 112:22 119:1 119:2 |
| | | | | | | | | | **throw**(1) | 93:24 |
| | | | | | | | | | **thus**(1) | 43:20 |
| | | | | | | | | | **time**(37) | 23:1 23:2 28:15 32:13 51:14 52:14 52:16 52:19 60:2 60:3 62:12 67:4 68:15 69:18 74:12 74:19 80:17 88:3 91:2 93:19 98:14 98:15 98:16 98:21 99:21 99:24 102:6 103:17 105:15 105:23 106:6 106:6 109:5 112:12 121:6 122:5 122:22 |
| | | | | | | | | | **timely**(1) | 121:1 |
| | | | | | | | | | **times**(1) | 87:23 |
| | | | | | | | | | **timing**(1) | 93:12 |
| | | | | | | | | | **tinker**(1) | 4:12 |
| | | | | | **thereby**(1) | 35:19 | | | | |
| | | | | | **therefore**(8) | 19:22 37:24 42:1 43:22 44:18 76:14 77:25 81:4 | | | | |
| | | | | | **thereof**(1) | 75:12 | | | | |
| | | | | | **these**(31) | 9:15 11:9 17:11 17:23 22:25 29:13 33:11 37:16 45:4 49:10 50:17 55:24 57:1 66:19 87:17 90:14 90:20 90:22 90:23 91:1 94:19 97:17 101:18 104:14 105:25 105:25 113:20 115:24 124:8 124:9 124:13 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**today**(9) 8:20 89:10 105:23 113:19 116:8 116:13 121:22 122:6 125:24

**together**(1) 98:15
**told**(5) 65:2 66:20 90:24 96:22 108:8
**tom**(1) 91:11
**tons**(2) 59:20 59:20
**too**(6) 50:8 73:10 89:3 98:24 117:15
**took**(4) 74:19 111:24 119:1 123:19
**top**(5) 18:21 32:5 83:22 84:23 96:7
**toronto**(4) 5:24 5:48 8:15 14:5
**toronto-dominion**(1) 5:23
**total**(1) 80:16
**toy**(1) 5:30
**transaction**(3) 53:6 53:16 56:6
**transactions**(2) 74:4 124:6
**transcript**(5) 1:16 1:56 58:22 62:23 126:2
**transcription**(2) 1:49 1:56
**translate**(1) 124:5
**trap**(1) 29:17
**treatment**(1) 57:18
**tried**(2) 65:5 89:5
**tries**(1) 88:19
**triple**(1) 44:13
**trouble**(1) 24:24
**troubled**(1) 47:18
**true**(6) 44:11 46:22 73:8 75:7 77:18 82:14
**truly**(1) 87:13
**trustee**(3) 4:11 4:11 10:17
**try**(11) 14:17 14:18 15:3 18:7 18:21 28:17 33:10 50:23 90:10 98:16 103:23

**trying**(27) 17:16 17:18 28:17 29:10 30:12 30:25 31:2 32:20 33:20 33:21 42:17 54:3 54:4 62:10 62:23 63:7 72:24 77:5 78:3 83:15 88:7 88:8 88:8 107:23 119:18 119:19 123:23

**tunnell**(1) 1:23
**turn**(13) 9:2 31:5 48:24 74:23 75:14 79:23 100:2 100:21 101:3 101:24 104:10 104:10 111:25
**turning**(2) 96:25 97:6
**tweed**(2) 3:13 91:11
**twice**(1) 41:15
**twenty**(2) 93:22 105:22
**two**(16) 9:9 17:1 21:22 27:15 33:11 38:1 44:23 45:4 55:11 75:18 75:23 81:3 103:10 105:22 122:13 124:1

**two-thirds**(1) 112:4
**type**(3) 19:11 20:23 21:13
**u.s.**(20) 4:11 9:10 10:17 11:10 91:25 91:25 92:17 94:9 94:10 115:8 115:16 116:13 116:14 121:21 124:11 124:12 124:14 124:15 125:1 125:15

**uh-huh**(2) 83:19 84:9
**ultimately**(5) 10:9 52:16 90:19 90:20
**unable**(2) 23:17 24:6
**unambiguously**(1) 45:9
**unaudited**(3) 26:10 81:8 82:1
**under**(45) 10:18 14:22 18:12 22:11 23:5 23:16 24:18 24:22 26:1 27:3 29:19 29:19 29:25 29:25 31:12 36:1 39:21 52:1 55:8 59:4 59:10 59:10 60:7 61:18 61:18 62:15 62:15 62:17 63:6 63:23 65:3 65:3 66:11 77:8 78:8 84:4 86:15 108:15 109:4 109:1 109:22 111:3 111:6 111:11 114:21 117:15

**underlying**(6) 18:25 19:15 32:4 69:6 74:4 75:12

**understand**(17) 62:9 64:19 72:24 74:20 74:25 76:16 77:19 77:22 78:1 78:4 78:9 86:14 86:15 99:6 104:4 104:5 110:25

**understanding**(14) 8:21 8:24 11:8 15:18 56:8 61:10 70:5 76:14 83:6 91:4 108:23 112:24 120:14 120:20

**understood**(6) 15:25 23:3 80:25 99:24 125:7 125:22

**undo**(2) 17:18 32:20
**undoubtedly**(1) 52:22
**undue**(1) 17:16
**unfortunate**(1) 103:12
**unfortunately**(1) 117:1
**unfulfilled**(1) 78:19
**unidentified**(8) 35:1 92:14 92:24 115:2 116:5 116:12 116:18 120:11

**unit**(1) 4:49
**united**(7) 1:1 1:18 2:8 2:42 4:11 21:18 39:22

**universal**(1) 110:13
**universe**(4) 37:6 37:13 49:25 104:20
**unless**(7) 9:1 19:18 21:15 32:7 59:10 60:11 67:24

**unlike**(1) 115:14
**unrelated**(1) 20:4
**unsecured**(3) 90:9 91:3 91:16
**until**(6) 59:21 62:16 63:16 66:13 99:11 105:8

**upon**(13) 19:25 25:5 43:6 53:5 53:15 69:21 75:1 83:11 83:20 95:7 98:11 122:1
**urged**(1) 98:10
**use**(6) 59:16 95:6 96:7 110:16 111:17 119:22

**used**(3) 33:13 110:1 111:17
**uses**(1) 58:24
**using**(3) 53:3 53:13 110:14
**valid**(1) 118:17
**validity**(1) 43:12
**valuation**(2) 43:10 84:18
**value**(2) 90:18 100:20
**van**(1) 4:42
**variances**(1) 82:13
**variety**(1) 25:10
**various**(1) 67:7
**vendor's**(1) 95:22
**versus**(4) 40:20 42:4 44:9 45:22
**very**(62) 9:9 9:10 10:15 12:16 13:6 14:8 15:11 15:15 18:2 18:21 20:24 25:22 26:5 27:24 30:5 30:6 33:4 40:10 42:10 45:8 48:7 56:22 57:9 57:16 58:16 59:1 63:2 63:11 63:12 63:17 66:13 67:1 69:3 77:24 78:8 88:24 89:3 89:18 89:25 92:7 92:8 93:1 94:17 94:18 99:24 101:7 101:17 102:16 102:19 103:3 104:7 108:18 112:20 113:14 114:25 116:4 116:25 117:17 118:1 119:16 121:4 122:16

**vice**(4) 39:18 39:18 40:19 40:22
**view**(7) 107:3 113:11 118:16 118:17 118:17 124:14 124:16

**viewable**(1) 15:19
**viewed**(1) 53:11
**vince**(1) 39:19
**virtually**(1) 28:14
**virtue**(1) 75:10
**visual**(1) 34:1
**voice**(1) 14:22
**void**(1) 24:23
**volume**(3) 100:4 104:1 112:1
**volumes**(1) 105:22
**wacker**(1) 4:27
**wade**(1) 119:2
**walk**(1) 32:10

**want**(16) 12:23 14:11 31:21 39:1 41:14 45:15 46:22 58:17 62:18 87:13 91:13 103:16 103:18 103:19 103:20 105:22

**wanted**(4) 10:5 17:13 89:9 124:4
**wants**(1) 50:9
**warm**(1) 15:11
**warning**(1) 117:17
**warranties**(5) 29:8 29:13 29:24 63:7
**was**(158) 9:24 11:19 19:8 20:6 20:7 20:8 20:9 20:11 20:12 20:21 20:23 21:21 24:9 24:11 24:21 24:23 24:25 25:2 25:5 25:7 25:9 25:14 25:16 25:16 26:25 26:25 28:2 28:3 28:3 28:8 28:14 28:15 28:17 28:21 28:24 29:3 29:6 29:10 29:16 29:19 29:24 30:3 30:4 30:14 30:15 31:11 32:1 32:3 32:3 32:9 32:9 32:12 32:14 35:21 39:21 40:2 41:10 42:10 43:17 44:11 44:15 45:20 51:24 52:12 52:13 52:21 52:24 53:12 55:2 55:10 56:3 56:8 56:9 56:15 56:16 56:21 56:21 56:21 57:15 57:15 58:17 58:20 62:22 63:8 64:9 65:13 65:22 66:16 67:3 68:17 73:17 73:20 73:24 74:2 75:17 75:19 77:6 78:23 78:25 79:1 79:5 80:6 80:13 80:20 80:21 80:22 80:24 81:2 81:4 81:5 81:10 81:13 81:13 81:16 81:24 82:6 82:10 82:10 82:13 83:5 84:11 84:12 86:3 86:11 86:15 87:4 88:17 89:9 89:13 91:5 94:2 98:14 98:25 99:22 102:19 106:10 108:12 108:13 108:14 108:24 114:12 114:13 115:14 115:15 117:9 117:25 119:10 120:17 121:14 121:15 123:23 124:3 124:6 124:11 124:23 126:18

**washington**(1) 4:21
**wasn't**(11) 25:12 29:9 31:13 42:18 51:17 54:21 54:21 54:22 56:19 67:21 110:3

**watching**(1) 93:24
**water**(1) 22:6
**watkins**(2) 3:40 13:10
**way**(25) 12:21 16:16 20:5 21:1 22:13 22:14 22:17 23:15 32:12 49:23 51:10 56:4 62:4 62:5 62:12 62:13 62:14 62:23 63:5 64:12 65:7 66:12 66:24 73:3 73:14 79:19 98:18 99:9 99:13 99:13 99:25 102:10 102:16 104:1 104:10 116:24 126:12

**ways**(1) 120:13
**we'll**(15) 14:17 14:18 15:3 15:16 40:17 42:8 46:20 68:24 79:15 87:12 93:2 99:4 118:23 121:3 121:5

**we're**(39) 13:1 13:1 15:8 22:2 29:11 29:13 31:2 38:2 42:23 42:24 44:2 46:6 47:14 62:4 62:5 62:12 62:13 62:14 62:23 63:5 64:12 65:7 66:12 66:24 73:13 79:14 79:19 98:18 99:9 99:13 99:13 99:25 102:10 102:16 104:1 104:10 116:24 126:12 126:12

**we've**(18) 9:13 34:15 35:23 40:23 41:17 91:15 54:2 62:20 89:21 90:11 93:12 95:4 100:23 108:19 108:21 111:19 117:22 125:

**wednesday**(1) 8:1
**weeds**(1) 61:9
**weeks**(1) 99:14
**welcome**(1) 91:18
**well**(71) 13:6 14:25 15:6 15:10 15:14 16:24 18:21 26:14 32:1 34:3 37:22 38:15 39:3 39:4 40:14 41:14 42:1 44:7 45:16 46:5 46:21 47:10 47:18 48:13 60:7 60:9 62:11 62:12 66:3 66:5 66:14 66:15 68:4 68:23 69:3 70:3 70:9 70:12 71:6 74:5 74:22 75:20 75:24 77:24 81:6 81:7 87:17 89:7 89:13 90:3 91:15 92:1 92:8 93:12 93:14 100:7 104:9 104:15 106:7 107:17 108:24 111:8 111:10 114:3 116:23 117:14 124:11 124:23 125:11 125:11 126:9

**well-established**(1) 17:25
**went**(6) 58:21 78:4 84:15 84:17 86:20 87:7

**were**(45) 20:19 24:11 24:17 25:10 26:4 27:1 28:15 28:25 29:3 29:12 29:20 30:19 32:17 32:20 33:23 33:23 35:7 35:8 35:24 44:15 50:19 50:22 50:24 50:24 51:2 52:7 54:20 54:22 55:1 55:11 55:15 62:21 62:21 67:21 68:6 68:8 70:18 77:5 79:3 83:17 90:19 90:24 109:24 124:1 125:16

**weren't**(2) 15:20 15:21
**west**(4) 3:9 4:42 5:22 5:47
**westcott**(1) 4:48
**westlaw**(1) 40:6
**what**(189) 15:8 19:14 20:24 21:7 21:9 22:4 24:4 25:19 25:24 26:6 26:12 26:16 26:18 29:6 29:9 29:10 29:15 30:4 30:14 30:17 30:17 31:10 31:11 31:14 31:17 32:9 32:9 32:11 32:14 32:24 33:1 33:20 33:21 34:15 37:5 38:10 39:9 40:9 40:14 41:10 41:18 41:18 42:7 42:10 42:18 43:3 44:15 45:8 45:23 46:5 46:13 46:15 48:4 48:5 50:1 50:8 51:20 51:24 51:24 52:12 52:14 52:19 52:25 53:12 54:3 54:8 54:11 54:15 56:12 58:7 58:9 58:19 58:21 58:22 59:21 60:23 60:24 62:10 63:10 63:23 64:8 64:12 64:14 65:1 65:1 65:13 66:17 66:17 66:19 66:20 67:20 67:22 68:5 68:14 68:18 71:1 74:1 75:17 77:4 78:23 81:10 83:14 84:17 84:22 85:21 85:23 85:25 86:8 86:9 86:12 86:14 88:1 88:7 88:15 89:7 89:13 89:14 89:16 90:10 91:15 94:19 95:8 95:9 95:10 95:22 96:18 96:22 97:2 97:4 97:5 97:11 97:13 98:8 98:10 98:22 99:6 99:10 99:21 99:22 100:1 100:1 100:20 102:4 102:17 102:18 102:18 103:6 103:7 103:15 103:16 104:9 104:11 105:8 105:9 105:15 105:16 106:1 106:10 107:6 107:23 108:13 108:14 108:19 109:19 109:23 110:21 110:25 111:1 111:13 111:14 112:8 112:24 112:25 114:14 118:12 118:24 119:21 120:3 121:2 121:2 121:2 123:23 125:19 125:19

**what's**(11) 28:20 42:25 53:12 53:13 55:5 59:25 61:13 67:11 82:6 104:17 105:13

**whatever**(2) 12:24 60:22
**whatever's**(1) 23:18
**when**(37) 14:7 14:8 14:8 18:24 19:15 19:22 21:8 22:10 30:24 30:24 38:25 44:16 44:17 45:24 51:23 52:11 55:22 55:22 56:13 57:12 58:10 58:11 58:17 60:8 60:20 62:20 66:18 66:18 69:20 82:15 86:9 99:18 100:18 103:23 112:12 121:10 121:24

**where**(33) 20:17 24:11 38:6 46:22 61:20 61:20 62:17 62:17 62:21 63:5 67:6 72:4 72:4 73:12 76:18 79:1 86:20 86:21 86:24 87:20 87:24 89:21 94:19 97:1 97:2 97:24 102:10 103:1 108:2 110:12 114:4 119:21 120:13

**where-is**(1) 117:22
**whereupon**(1) 126:18
**whether**(22) 19:1 19:6 19:10 19:16 20:7 21:6 21:10 21:12 22:12 25:7 25:11 26:23 29:18 38:20 39:13 41:11 43:15 43:25 63:6 64:20 74:16 107:3

**which**(59) 9:1 13:13 15:20 16:16 20:7 23:6 24:5 25:1 26:6 26:10 26:21 26:24 29:1 29:4 29:10 35:23 39:25 42:24 49:9 53:10 56:2 58:18 59:22 60:5 61:19 64:13 68:16 70:24 73:5 76:23 77:8 78:18 90:24 94:25 96:24 98:23 99:7 99:10 99:23 100:4 100:13 101:2 101:4 101:9 101:25 102:9 103:18 104:17 105:4 106:13 107:7 108:4 109:4 109:19 113:7 114:1 117:18 121:23 125:11

**while**(7) 43:7 71:18 75:9 90:11 94:2 108:6 108:11

**white**(1) 95:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**who**(14) 12:10 21:21 54:10 55:12 70:13 70:13 70:13 94:4 105:19 114:13 116:24 117:1 118:11 118:11

**whoa**(1) 95:24
**whoever**(1) 69:20
**whole**(4) 25:10 72:8 106:18 119:5
**whose**(1) 70:4
**why**(32) 21:19 30:9 30:10 30:11 31:20 39:4 50:22 54:9 54:17 56:5 57:1 57:16 59:25 60:12 65:4 65:5 66:15 68:23 77:22 78:3 78:24 98:19 102:16 105:20 108:9 108:15 112:14 113:9 113:16 113:17 114:5 125:12
**will**(47) 8:24 9:2 10:11 12:1 12:2 12:23 15:18 22:5 27:11 33:17 34:14 34:19 39:6 40:8 49:23 58:22 60:18 61:1 61:18 62:23 84:15 88:12 90:19 91:7 91:23 95:3 98:10 100:9 104:19 104:20 104:23 106:7 107:2 112:4 118:14 118:18 121:21 121:21 121:21 122:1 122:3 122:15 122:19 122:21 123:24 124:9 126:17

**wilmington**(10) 1:11 1:28 2:21 2:28 3:10 3:24 3:51 4:8 4:15 8:1

**win**(1) 61:20
**windstar**(1) 45:11
**wish**(5) 35:21 54:8 71:4 123:15 126:4
**with**(140) 8:17 8:23 8:25 9:13 9:18 9:21 10:8 10:8 10:10 10:12 11:3 11:3 11:5 11:10 11:12 11:22 12:9 12:20 13:4 13:10 13:17 15:24 16:8 16:17 16:18 19:19 20:6 20:21 22:3 22:13 23:2 23:6 23:8 23:10 23:20 24:15 25:3 27:1 27:2 27:4 27:6 27:12 27:18 28:4 28:23 30:15 30:16 31:13 32:14 32:17 32:21 37:12 39:10 39:11 40:10 42:16 43:13 45:7 49:4 49:13 49:18 49:19 49:21 50:5 50:6 50:22 54:11 56:18 57:6 57:8 60:4 60:18 61:6 61:25 63:6 63:9 63:18 63:21 64:2 64:20 65:3 65:22 66:9 67:23 67:24 68:12 70:15 71:1 76:11 76:12 77:6 77:14 78:13 80:9 87:19 88:12 91:7 96:12 97:15 98:6 99:23 100:9 100:1 100:21 101:10 101:12 102:9 104:7 104:25 105:1 106:11 108:7 108:17 109:3 109:5 111:16 112:11 112:20 114:19 115:7 115:1 115:18 115:25 117:21 119:14 119:14 119:14 120:12 122:8 122:12 123:19 124:2 124:3 124:7 124:7 124:10 124:16 124:16 125:3 126:12

**within**(19) 21:7 22:23 23:18 24:25 25:9 28:9 39:14 39:15 43:21 50:1 63:11 63:11 63:12 78:13 78:17 89:11 103:17 104:20 110:11

**without**(7) 16:21 52:17 100:14 104:5 105:2 111:8 120:14

**witness**(7) 34:19 71:22 71:23 72:14 75:18 75:22 85:18

**witnesses**(1) 7:4
**won't**(8) 18:21 20:4 42:5 89:22 99:10 103:3 105:8 112:8

**wonderful**(3) 61:19 126:4 126:13
**wonders**(1) 14:23
**word**(2) 46:3 95:22
**wording**(3) 96:2 110:11 111:3
**words**(18) 27:7 30:21 31:22 31:24 35:4 35:5 35:19 37:16 44:5 44:5 53:10 54:4 61:21 63:3 63:14 88:20 111:18 111:19

**work**(3) 28:17 60:3 98:19
**worked**(1) 117:20
**working**(11) 28:2 28:4 28:8 28:21 28:22 45:11 67:1 67:2 67:3 67:14 72:6

**works**(2) 22:24 59:7

**world**(1) 54:23
**worry**(1) 39:2
**worse**(1) 103:8
**worth**(2) 82:12 82:13
**would**(111) 9:14 9:19 10:14 10:19 11:2 11:12 12:10 12:21 12:22 12:22 12:24 13:17 16:2 17:1 17:17 17:22 26:23 27:14 30:9 30:13 30:23 31:1 32:5 32:9 34:4 35:10 36:17 36:23 36:25 37:1 42:14 43:8 47:9 47:12 47:20 48:12 49:16 50:1 50:3 50:11 51:18 53:8 53:9 53:11 53:17 53:20 53:23 55:8 58:15 63:17 63:21 64:24 64:25 65:9 66:15 66:21 68:2 68:2 68:7 68:9 68:9 68:18 68:25 69:19 70:9 70:16 71:3 74:1 74:3 75:3 75:14 79:17 81:17 81:24 75:9 77:12 82:5 83:10 84:17 84:20 85:2 86:3 86:4 86:4 86:9 86:15 87:6 87:13 87:22 89:5 89:6 90:16 93:14 96:19 103:7 105:1 106:25 107:6 108:5 108:17 109:11 109:16 111:25 113:24 116:19 116:25 117:10 120:18 122:9 122:19 124:5 125:1

**wouldn't**(6) 47:25 54:11 55:14 118:16 118:16 119:11

**written**(2) 34:15 119:24
**wrong**(3) 17:8 96:20 103:5
**wrongly**(1) 113:8
**wunder**(1) 5:21
**www.diazdata.com**(1) 1:53
**yeah**(7) 61:4 61:20 62:11 64:10 65:7 69:24 124:22

**year**(1) 56:11
**years**(6) 17:3 21:22 53:21 53:23 95:4 47:9 47:12 47:20 48:12 49:16 50:1 50:3 13:15 14:22 14:6 19:9 20:10 36:19 36:21 37:4 42:11 44:20 46:5 46:8 46:10 49:1 49:1 49:4 51:5 51:6 56:7 57:25 58:3 59:15 65:2 65:15 65:17 69:23 72:15 73:19 75:6 77:3 77:17 78:14 78:22 80:5 80:3 83:13 85:6 85:8 85:22 88:25 92:16 93:4 113:7 117:7 121:3 121:21 124:24 123:2 123:7 123:11 123:21 124:21 125:18 125:2 126:10 126:11

**yesterday**(2) 48:9 92:19
**yet**(1) 89:22
**york**(7) 1:37 1:44 2:35 2:48 3:17 3:30

**you**(301) 8:5 8:15 9:2 9:4 9:5 9:23 11:15 11:18 11:25 12:4 12:5 13:7 13:23 14:1 14:2 14:11 14:18 16:20 17:3 20:4 22:8 22:10 22:21 23:4 25:18 26:1 26:16 26:18 26:20 26:20 26:22 27:6 27:6 27:7 27:9 27:15 27:16 30:24 31:21 31:21 31:22 32:10 32:10 33:2 33:2 33:4 33:5 33:7 34:4 34:7 34:11 34:13 34:17 34:25 35:11 37:7 37:8 37:12 37:19 37:20 37:21 39:5 39:6 40:5 41:18 41:18 42:18 44:17 45:23 45:25 46:6 46:12 46:14 46:15 47:7 47:21 48:11 49:4 50:10 50:10 51:9 51:22 51:23 52:10 52:10 52:18 53:7 55:3 55:20 55:22 55:22 56:2 56:13 56:21 57:12 57:21 57:22 57:23 57:24 58:17 59:3 59:5 59:8 59:8 59:10 59:10 59:11 59:13 59:21 59:22 59:22 59:23 59:23 60:0 60:8 60:8 60:9 60:25 61:12 61:14 61:15 61:15 61:10 61:23 61:24 62:11 62:16 63:13 63:14 63:23 64:8 65:1 65:2 65:21 66:3 66:5 66:5 66:11 66:14 66:14 66:16 66:22 66:24 67:10 67:10 67:23 69:4 71:3 71:3 71:12 71:18 71:19 71:24 72:4 72:6 72:8 72:11 72:15 72:18 72:21 72:23 73:6 73:10 73:10 73:12 73:17 73:23 74:1 74:6 74:8 74:10 74:12 74:16 74:21 75:5 75:14 75:15 76:11 76:19 77:2 77:4 77:10 77:16 77:22 78:12 78:12 78:15 78:21 78:24 79:3 79:6 79:10 79:25 80:24 81:6 82:1 82:2 82:14 82:14 82:24 83:1 83:17 83:17 83:25 85:2 85:5 85:13 85:16 85:16 85:18 85:19 86:9 86:9 86:20 86:21 88:1 88:2 88:22 88:23 89:13 89:13 89:21 89:22 89:25 90:2 90:4 91:1 91:8 91:15 91:17 92:2 92:7 92:14 92:15 92:17 92:18 92:22 93:1 93:3 93:4 93:9 93:13 93:15 93:15 93:24 93:25 94:6 94:14 94:25 95:25 96:1 96:3 96:9 96:22 96:22 96:25 97:14 97:17 98:8 98:10 99:4 99:5 99:10 99:11 99:18 99:20 100:2 100:6 100:8 100:11 100:13 100:18 101:3 101:6 101:15 101:15 101:16 101:23 101:24 101:25 102:16 102:23 103:3 103:12 103:16 103:20 103:21 104:2 104:3 104:4 104:4 104:12 104:19 105:6 105:7 105:8 105:9 105:11

**you**(77) 105:20 106:12 107:2 107:12 107:13 107:15 107:18 107:22 107:22 107:23 108:5 108:8 108:9 108:21 109:11 109:20 110:5 110:20 111:22 111:13 111:24 111:25 112:4 112:8 112:9 112:22 113:15 113:21 113:23 114:1 114:1 114:1 114:3 114:8 114:8 114:10 114:25 115:4 115:9 115:20 116:2 116:4 116:7 116:10 116:16 117:19 118:8 119:1 119:2 119:14 119:22 119:22 119:24 120:7 120:8 120:16 120:24 121:3 121:9 121:12 121:24 122:8 122:10 123:5 123:8 123:15 123:16 123:23 124:20 124:24 125:9 125:25 126:2 126:5 126:13 126:15 126:16

**you'll**(8) 26:7 32:12 55:6 55:19 71:18 101:5 106:12 113:24

**you're**(20) 14:7 14:8 31:23 46:2 46:2 61:20 67:14 67:16 81:21 91:18 103:13 104:2 104:3 112:10 112:10 114:15 121:10 121:12 121:17 121:17

**you've**(10) 26:22 27:5 47:8 52:11 56:5 78:3 103:11 113:3 113:4 113:6

**young**(4) 3:5 3:20 5:29 40:25

**your**(137) 8:7 8:11 9:3 9:7 9:9 9:12 9:16 9:21 9:23 9:24 10:1 10:5 10:11 10:13 11:1 11:6 11:12 11:14 11:17 11:25 12:3 12:12 13:1 13:4 13:7 13:9 13:15 13:16 13:21 15:7 15:14 29:12 30:11 32:1 33:4 33:9 33:25 34:2 35:2 36:22 37:15 38:1 38:5 39:17 40:7 40:23 41:15 42:3 44:8 44:23 46:5 47:17 47:20 47:24 47:24 48:7 48:10 48:20 50:15 51:2 51:8 51:16 53:19 53:25 55:16 55:24 56:7 56:20 57:1 57:22 57:24 59:13 62:25 63:17 65:3 67:5 67:24 67:24 68:22 68:25 68:19 68:24 69:9 69:12 69:16 70:9 70:15 71:20 71:20 72:13 72:18 73:1 73:12 75:14 75:16 75:23 76:8 78:11 78:23 79:9 79:12 79:17 84:24 85:11 85:15 85:20 87:4 87:5 87:11 88:22 88:24 89:5 89:7 89:25 90:1 90:4 102:21 104:1 104:6 105:23 107:15 107:16 108:25 112:22 113:19 113:21 115:2 116:2 116:5 116:10 116:12 116:18 119:22 126:10 126:11 126:15 126:16

**yours**(1) 95:25
**zero**(3) 37:2 37:3 45:12
**zigler**(1) 5:52
**zone**(2) 61:19 95:5