## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

*In re*                                                  :    Chapter 11

Nortel Networks Inc., *et al.*,[1]                        :    Case No. 09-10138 (KG)

              Debtors.               :    Jointly Administered

                                   :
                                   :    **Hearing date: February 9, 2011 at 9:30 a.m. (ET)**
                                   :    **Objections due: January 21, 2011 at 4:00 p.m. (ET)**

-------------------------------------------------------X

## DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 541, 542 AND 543 AND BANKRUPTCY RULE 9019 (I) APPROVING THE STIPULATION BY AND BETWEEN NNI AND U.S. BANK NATIONAL ASSOCIATION, (II) DIRECTING U.S. BANK NATIONAL ASSOCIATION TO TURN OVER PROPERTY TO NNI, AND (III) GRANTING RELATED RELIEF RELATED TO THE NORTEL NETWORKS U.S. DEFERRED COMPENSATION PLAN

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors

in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry

of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 541, 542

and 543 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-1 of the Local Rules for

the United States Bankruptcy Court for the District of Delaware (the "Local Rules")

(i) approving the stipulation by and between NNI and U.S. Bank National Association ("U.S.

Bank" or the "Trustee") (the "Stipulation"), attached hereto as Exhibit B, (ii) confirming the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

authority of U.S. Bank to liquidate and turn over the assets (the "Trust Assets") held in a rabbi

trust (the "Trust") established by NNI, pursuant to the Nortel Networks U.S. Deferred

Compensation Plan Trust Agreement (as Amended and Restated as of January 1, 2000) (the

"Trust Agreement"), by and between NNI, as grantor and U.S Bank, as Trustee, (iii) directing the

Trustee to liquidate and turn over the Trust Assets to NNI, (iv) granting NNI the authority to

manage and invest the Trust Assets at its discretion and (v) granting NNI such other and further

relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully

represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105, 541, 542 and

543, of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9019 and Local Rule 4001-1.

### Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate their remaining businesses and manage their properties as debtors in possession pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code
on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases
for procedural purposes [D.I. 1098].

2

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.     On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").   Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.     On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it was unable to maximize value through sales.  Since then, Nortel has sold many of its business units and assets to various purchasers.  Efforts continue to be made

---

[3]     The Canadian Debtors include the following entities:    NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]     The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

with respect to the realization of value from Nortel's remaining assets. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

7.     On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 p.m. (Eastern Time) as the general bar date for filing proofs of claim or interests against the Debtors (other than NN CALA) [D.I. 1280]. On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

8.     On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580]. On September 3, 2010, the Debtors filed the Proposed Disclosure Statement for the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3874].

### Facts Relevant to this Motion

### A. Establishment of the Deferred Compensation Plan

9.     The Nortel Networks U.S. Deferred Compensation Plan (the "Plan") became effective on January 1, 2000 as an amendment and restatement of the Bay Networks, Inc. ("Bay Networks") Deferred Compensation Plan. The amendment and restatement incorporated the obligations previously accrued under that Bay Networks plan and the plan formerly known as the Northern Telecom Inc. Agreement Regarding the Deferral Option of the Senior Management Incentive Award Plan and the Executive Management Incentive Plan into a single plan document. The Plan has been and is maintained for the purpose of providing a tax-deferred capital accumulation program through the deferral of salary, bonuses and commissions, as well as additional discretionary corporate contributions to a "select group of management and highly

4

compensated employees" of NNI and its U.S. subsidiaries, within the meaning of Title 1 of the Employee Retirement Income Security Act of 1974, as amended.

10.    On March 8, 2000, NNI and NNC entered into a letter agreement whereby NNC acknowledged that it would become the Plan sponsor, effective March 13, 2000 and NNI, on behalf of itself and its subsidiaries, would be responsible for any payments NNC became obligated to make to Participants (as defined below) and to fulfill all of the federal, state and local tax withholding and filing obligations relating to the Plan and pay all administrative expenses related to the Plan.  In addition, NNC would be permitted to direct NNI to make such payments directly to Participants as they became due, in lieu of the reimbursement obligation. On March 9, 2000, NNI and NNC entered into another letter agreement whereby NNC directed NNI to make direct payments to Participants as they became due in lieu of the reimbursement obligation.    NNC acknowledged in the March 9th letter agreement that, notwithstanding the change in Plan sponsorship, NNI would be the exclusive owner of the Trust Assets.   A subsequent amendment and restatement of the Plan documents made effective as of March 13, 2000 provides that NNC is the primary sponsor of the Plan, and that all benefits owed to participants under the Plan relating to the period of March 13, 2000 and thereafter shall be paid by or at the direction of NNL.  NNI did not enter into a letter agreement with NNL related to the Plan.

11.    Under the terms of the Plan, the board of directors of NNL ("the NNL Board") must approve any amendments to the Plan, including termination of the Plan. On December 10, 2010, the NNL Board amended the Plan to change the responsibility for sponsorship and

5

administration of the Plan from NNL to NNI.[5]  The NNL Board also acted to terminate the Plan,

effective as of December 31, 2010.

## B.    Operation of the Deferred Compensation Plan

12.    From time to time, certain employees of NNI and a limited number of U.S.-based

employees of NN CALA were entitled to participate in the Plan (collectively, the "Participants")

and elected to defer certain compensation as permitted under and pursuant to the terms of the

Plan.  All deferrals under the Plan were made by Participants prior to the Petition Date and relate

to pre-petition service.

13.    Prior to the Petition Date, pursuant to the Plan, Participants could elect to defer up

to 80% of their base salary, 95% of incentive plan awards and up to 95% of commissions with a

minimum annual deferral of $5,000.    Participants were permitted to allocate their deferrals

among a variety of different investment-crediting options, which are used to measure the gains or

losses that will be attributed to a Participant's deferral account over time.

14.    Contributions of the Participants were deposited into the Trust, which was set-up

as a discretionary grantor "rabbi" trust, pursuant to the Trust Agreement, by and between NNI, as

grantor and U.S Bank, as Trustee.[6]  The Trust is comprised of investments in certain money

market mutual funds and corporate owned life insurance policies ("COLI Policies") issued by an

insurance company (the "Issuing Insurance Company") that permit investment in certain mutual

funds and other investment options selected by the administrator of the Plan (the "Benchmark

Funds").  Accounts are credited or debited monthly in an amount equal to the account balance on

---

[5]    Also on December 10, 2010, the NNI Board resolved that the sponsorship and administration of the Plan,
including the termination of the Plan and related distributions shall be the sole responsibility of NNI and the U.S.
Debtors, effective on that date.

[6]    A rabbi trust is a trust created for the purpose of supporting the non-qualified benefit obligations of
employers to their employees, the assets of which remain at all times subject to the claims of the employer's general
creditors.

the last day of the prior accounting period multiplied by the investment return of the Benchmark Funds into which Participants' accounts are deemed invested. Reference to change in value of the Benchmark Funds is made solely for the purposes of determining the return on deferred amounts and does not reflect actual investment in the Benchmark Funds.

15.    As of the Petition Date, contributions to the Plan and the payment of benefits ceased, but the Trust Assets continue to be invested in the Benchmark Funds.

**C. The Trust Agreement**

16.    Under the Trust documents, the rights of Participants to the Trust Assets are not superior to those of other general unsecured creditors of the Debtors. See Trust Agreement Art. 1(d). ("[All rights of Participants and their beneficiaries are] unsecured contractual rights of Plan participants and their beneficiaries against the Employers [as defined in the Plan]. Any assets held by the trust [are] subject to the claims of the Employers' general creditors…in the event of Insolvency."). See also Trust Agreement Art. 3(b). While Participants and their beneficiaries are not entitled to receive the funds held in the Trust, they may be entitled to a general unsecured claim against NNI.

17.    The Trust was intended to be a "grantor trust" of NNI, which means that the Trust Assets remain the property of NNI. See Trust Agreement Art. 1(b)-(c). As such, and as expressly delineated in the Trust Agreement, Participants have no preferred claim on or beneficial interest in the Trust Assets. Trust Agreement Art. 1(d).

18.    Additionally, under the terms of the Trust Agreement, the trustee must cease payments of benefits to Participants if the Company is insolvent. Trust Agreement Art. 3(a). According to the Trust Agreement, NNI is insolvent if NNI is unable to pay its debts as they come due or if the company is subject to a pending proceeding as a debtor under the Bankruptcy

Code.  Trust Agreement Art. 3(a).  Once the Trustee is informed of the insolvency, the Trustee must discontinue payments to Participants and hold the Trust Assets for the benefit of all general creditors.  Trust Agreement Art. (3)(b)(3).    Accordingly, Plan benefits have not been paid to Participants since the Petition Date.

**D.      The Trust Assets**

19.      NNI, through its Principal Officer, made a request that the Trustee turn over the Trust Assets to NNI.  The Trustee has indicated its willingness to do so, subject to NNI obtaining a Court order authorizing and directing U.S. Bank to do so.  Accordingly, NNI and the Trustee have entered into the attached Stipulation that provides that the Trust Assets are property of NNI's estate, and shall be turned over to NNI following the entry of an Order granting this Motion.

20.      NNI has determined, in the exercise of its reasoned business judgment and in furtherance of its restructuring efforts that turnover of the Trust Assets would ensure that the value of the Trust Assets will be preserved for the benefit of NNI's estate and its creditors.  At the present time, the Trust Assets are worth approximately $37,900,000.00.

**E.  The Proposed Stipulation**

21.      As a result of negotiations with U.S. Bank, NNI has determined it is in its best interests to enter into a stipulation of settlement with U.S. Bank in order to obtain the turnover of the Trust Assets, which includes the following substantive components:[7]

- The Stipulation confirms that the Trust Assets are the property of NNI.

- The Trustee agrees to turn over all Trust Assets to NNI as directed by an order of the Court.

---

[7]      This overview is intended to provide a general summary of the Stipulation.  To the extent that it conflicts with the terms of the Stipulation, the terms of the Stipulation shall control.

- Except as required to effectuate the turnover of the Trust Assets, upon the entry of an order of the Court, the Trust Agreement and the Trust shall be deemed terminated and U.S. Bank shall be released from any and all further obligations as trustee.

- The Stipulation is subject to the approval of the Court.

### Relief Requested

22.    By this Motion, the Debtors seek the entry of an order, pursuant to Rule 9019 of the Bankruptcy Rules, sections 105(a), 541, 542 and 543 of the Bankruptcy Code and Local Rule 4001-1, (i) approving the Stipulation by and between NNI and U.S. Bank, (ii) confirming the authority of U.S. Bank to liquidate and turn over the Trust Assets, (iii) directing U.S. Bank to liquidate and turn over the Trust Assets to NNI, (iv) granting NNI the authority to manage and invest the Trust Assets in its discretion, and (v) granting NNI such other and further relief as the Court deems just and proper.

### Basis for Relief Requested

23.    Section 105(a) of the Bankruptcy Code provides in relevant part, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under the terms of the Plan and the Trust Agreement, NNI is within its rights to reclaim the Trust Assets because the Trust is a "rabbi trust," which means the party creating the trust is the owner. See Accardi v. IT Litig. Trust, et al. (In re IT Group, Inc.), 448 F.3d 661, 669-70 (3d Cir. 2006) (holding that a party creating a "rabbi" trust is the sole owner of the assets).

24.    A "rabbi" trust, while providing a significant benefit to participants, can be a risky undertaking because the assets of the trust are subject to the claims of a debtor's general creditors

and became property of the debtor's estates upon the petition date. See Goodman v. Resolution Trust Corp., 7 F.3d 1123, 1129 (4th Cir. 1993) (holding that a grantor or rabbi trust treats the employer as owner of the assets and noting that the recipients of these "trusts are unsecured creditors, who took the risks of being subject to the claims of general creditors for the benefits of favorable tax treatment"); see also Bank of Am., N.A. v. Moglia (In re Outboard Marine Corp., et. al.), 278 B.R. 778, 785 (N.D. Ill. 2002), aff'd 330 F.3d 942 (7th Cir. 2003) (noting rabbi trusts are required to remain at all times subject to the claims of the grantor's general creditors in return for participants receiving favorable tax treatment).  Thus, Participants do not have any beneficial ownership interest in the Trust Assets, because the Trust Assets remained property of NNI at all times.

25.    Section 541(a)(1) of the Bankruptcy Code broadly defines property of the estate to include any legal or equitable interests of the debtor, wherever located, as of the commencement of the case. See United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983). Once NNI filed for bankruptcy, the Trust Assets became property of NNI's bankruptcy estate. See Collins & Aikman Corp. v. Northern Trust Bank of Cal., N.A., et al (In re Collins & Aikman Corp., et. al.), No. 05-55927 (SR), 2006 WL 2310798, at *3 (Bankr. E.D. Mich. Aug. 9, 2006) (noting "once a grantor files for bankruptcy, the corpus of the rabbi trust becomes property of the grantor's bankruptcy estate").  Furthermore, NNI is empowered to request the Trustee to turn over and assign all Trust Assets.  See In re Collins, at *4 (holding that according to trust agreement and Bankruptcy Code, debtors were entitled to turnover of trust assets to make them available for distribution to debtors' creditors); Cohen v. The Sav. Bldg. & Loan Co. (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.), 896 F.2d 54 (3d Cir. 1990) (debtor entitled to have estate property turned over to it under section 542).

26.     Indeed, section 542 mandates that entities having possession, custody or control of property that belongs to the debtor turn over such property.  Section 542 is applicable to any entity other than a custodian.  In this case, the Trustee does not qualify as a custodian under section 101(11) because it is neither (a) a trustee, receiver or agent appointed or authorized by the Court to take charge of property of NNI; nor (b) does the Trust Agreement authorize the Trustee (i) to take charge of the NNI's property for the purpose of enforcing a lien against Trust Assets, or (ii) to generally administer the Trust Assets for the benefit of NNIs' creditors.  See 11 U.S.C. § 101(11); see also Trust Agreement § 3(a).  Thus, the Trustee is required to turn over the Trust Assets to NNI pursuant to section 542 of the Bankruptcy Code.

27.     However, even if the Trustee did qualify as a custodian, section 543(a) of the Bankruptcy Code requires a custodian in possession or control of any property of the debtor to deliver the property to the debtor if (a) the custodian has custody, possession or control of the property; and (b) such property is property of the debtor.  See Sovereign Bank v. Schwab, 414 F.3d 450, 454 (3d. Cir. 2005).  It is undisputed that the Trustee has custody of the Trust Assets, and, as discussed above, the Trust Assets are property of the estate.  Therefore, even in the event that the Trustee is a custodian, it is still required to turn over the Trust Assets to NNI.

28.     Bankruptcy Rule 9019 provides, in pertinent part, that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Under this authority, the Third Circuit has emphasized that compromises and settlements are favored in bankruptcy.  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).  In addition, the District of Delaware has recognized "[t]he consensual resolution of claims minimizes litigation and expedites the administration of [the] bankruptcy estate" and the approval of a proposed compromise and settlement falls within the sound discretion of the

bankruptcy court. In re Coram Healthcare Corp., Inc., 315 B.R. 321, 329-30 (Bankr. D. Del. 2004); See also In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997). Furthermore, the Third Circuit has held that settlements typically reduce the "complexity and inconvenience of litigation." In re Nutraquest, Inc., 434 F.3d 639, 646 (3d Cir. 2006).

29.    Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the best interest of the estate." In re Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005); In re Marvel Entm't Group, 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)); see also In re Nutritional Sourcing Corp., 398 B.R. 816, 832-33 (Bankr. D. Del. 2008). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in [a] range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785 (FLW), 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); Official Unsecured Creditors' Comm. of Pa. Truck Lines, Inc. v. Pa. Truck Lines, Inc. (In re Pa. Truck Lines, Inc.), 150 B.R. 595, 598 (E.D. Pa. 1992).

30.    In light of the Debtors' present wind-down efforts, the return of the Trust Assets will further the Debtors' objective to collect all of their outstanding assets as soon as practicable so that they can shortly make a good faith proposal to their unpaid creditors upon conclusion of the claims reconciliation process. Therefore, maintaining U.S. Bank as trustee of the Trust Assets is not as beneficial to the estates or their creditors as placing the Trust Assets into NNI's possession.

31.     Accordingly, by this Motion, the Debtors seek approval of a Stipulation in which NNI and U.S. Bank have agreed that U.S. Bank shall turn over the Trust Assets to NNI. The Stipulation was reached after thorough analysis of the legal issues by the Debtors' bankruptcy counsel and the Trustee's in-house counsel and extensive negotiations. In addition, the proposed Stipulation is well within the range of reasonableness. As the proposed turnover is in the best interests of the Debtors' estates and their creditors, and is in accordance with the mandatory provisions of sections 541, 542 and 543 of the Bankruptcy Code, Bankruptcy Rule 9019 and Local Rule 4001-1, the Debtors submit that entry of the Proposed Order is necessary and appropriate.

### Waiver of Bankruptcy Rule 6004(h)

32.     Under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

33.     To successfully implement the relief requested in the Motion, with emphasis on transferring the Trust Assets to NNI, which will require Court approval of the Stipulation, the Debtors seek a waiver of the fourteen-day stay of an order authorizing the use, sale, or lease or property under Rule 6004(h) of the Bankruptcy Rules.

### Notice

34.     Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to U.S. Bank; (v) counsel to NNL and NNC; (vi) counsel to the Monitor; (vii) the Plan Participants; and (viii) the general service list established in these chapter 11 cases. The Debtors submit that, under the circumstances, no other or further notice is necessary.

## No Prior Request

35.     No prior request for the relief sought herein has been made to this or any other

court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and

the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.

Dated:  December 22, 2010           CLEARY GOTTLIEB STEEN & HAMILTON LLP
          Wilmington, Delaware

                                    James L. Bromley (admitted *pro hac vice*)
                                    Lisa M. Schweitzer (admitted *pro hac vice*)
                                    One Liberty Plaza
                                    New York, New York 10006
                                    Telephone:  (212) 225-2000
                                    Facsimile:  (212) 225-3999

                                         - and -

                                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                    Derek C. Abbott (No. 3376)
                                    Eric D. Schwartz (No. 3134)
                                    Ann C. Cordo (No. 4817)
                                    Alissa T. Gazze (No. 5338)
                                    1201 North Market Street
                                    P.O. Box 1347
                                    Wilmington, Delaware 19801
                                    Telephone:  (302) 658-9200
                                    Facsimile: (302) 658-3989

                                    *Counsel for the Debtors*
                                    *and Debtors in Possession*