# **EXHIBIT A**

29

Court File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

FIFTY-SEVENTH REPORT OF THE MONITOR
DATED DECEMBER 3, 2010

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PURPOSE | 3 |
| III. | TERMS OF REFERENCE | 5 |
| IV. | BACKGROUND | 5 |
| V. | THE HWT | 6 |
| | Overview | 6 |
| | Mercer 2010 Preliminary HWT Valuation | 7 |
| VI. | INTERIM DISTRIBUTION | 8 |
| | Tax Ruling Request | 10 |
| | Specific Process Matters | 10 |
| VII. | MONITOR'S RECOMMENDATION | 11 |

31

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

**FIFTY-SEVENTH REPORT OF THE MONITOR**
**DATED DECEMBER 3, 2010**

**I.  INTRODUCTION**

1. On January 14, 2009 (the "**Filing Date**") Nortel Networks Corporation ("**NNC**" and collectively with all its subsidiaries "**Nortel**" or the "**Company**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "**Applicants**") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("**CCAA**"). Pursuant to the Order of this Honourable Court dated January 14, 2009, as amended and restated (the "**Initial Order**"), Ernst & Young Inc. was appointed as the Monitor of the Applicants (the "**Monitor**") in the CCAA proceedings. The stay of proceedings was extended to February 28, 2011, by this Honourable Court in its Order dated October 27, 2010.

2. Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries concurrently filed voluntary petitions under Chapter 11 of Title 11 of the U.S. Bankruptcy Code (the "**Code**") in the United States Bankruptcy Court for the District of Delaware (the "**U.S.**

- 2 -

32

Court") on January 14, 2009 (the "**Chapter 11 Proceedings**"). As required by U.S. law, an official unsecured creditors committee (the "**Committee**") was established in January, 2009.

3. An *ad hoc* group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "**Bondholder Group**"). In addition, pursuant to Orders of this Honourable Court dated May 27, 2009, July 22, 2009 and July 30, 2009, representative counsel was appointed on behalf of the former employees of the Applicants, the continuing employees of the Applicants and the LTD Beneficiaries, respectively, and each of these groups is participating in the CCAA proceedings.

4. Nortel Networks (CALA) Inc. (together with NNI and certain of its subsidiaries that filed on January 14, 2009, the "**U.S. Debtors**") filed a voluntary petition under Chapter 11 of Title 11 of the Code in the U.S. Court on July 14, 2009.

5. Nortel Networks UK Limited ("**NNUK**") and certain of its subsidiaries located in EMEA were granted Administration orders (the "**UK Administration Orders**") by the High Court of England and Wales on January 14, 2009 (collectively the "**EMEA Debtors**"). The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as Administrators of the various EMEA Debtors, except for Ireland, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively the "**Joint Administrators**").

6. Subsequent to the Filing Date, Nortel Networks SA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France

pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court.

7. The CCAA proceedings and the UK Administration proceedings of NNUK have been recognized by the U.S. Court as foreign main proceedings under Chapter 15 of the Code.

8. Subsequent to the Filing Date, certain other Nortel subsidiaries have filed for creditor protection or bankruptcy proceedings in the local jurisdiction in which they are located.

## II. PURPOSE

9. The purpose of this Fifty-Seventh Report of the Monitor (the "**Fifty-Seventh Report**") is to seek this Honourable Court's approval of an interim distribution to the Income Beneficiaries (defined below) from funds held in the Applicants' Health and Welfare Trust (the "**HWT**") on account of their Income Benefits (defined below) and such ancillary relief as is just and convenient.

10. The Settlement Agreement provides and this Court has ordered that benefit payments by the Applicants will end on December 31, 2010. The Monitor sought this Court's approval of a proposed allocation methodology (the "**Approved HWT Allocation Methodology**") for the funds held in the HWT, to enable a distribution of the HWT corpus, which this Court approved by Order dated November 9, 2010 (the "**HWT Allocation Order**"). On November 29, 2010, counsel for a small group of dissenting LTD Beneficiaries filed leave to appeal the HWT Allocation Order.

11. The LTD Beneficiaries' Representative, the Former Employees' Representatives and the CAW have asked that the Monitor bring this motion to provide an interim payment to the Income Beneficiaries receiving Income Benefits given, among other things:

- 4 -

34

(a) as discussed in paragraph 26(e) below, certain steps must be completed prior to a final distribution from the HWT, including reconciliation of data as at December 31, 2010 and a determination of certain variables that may affect assets available for distribution;

(b) it is unlikely that the leave to appeal and, if leave is granted, any appeal, would be finally resolved and that all steps required for final distribution will be completed in sufficient time to allow for a final distribution before December 31, 2010; and

(c) the interim payment will assist the Income Beneficiaries in the period between the termination of Income Benefits and the final distribution of the HWT corpus.

12. In response to the requests received from the LTD Beneficiaries' Representative, the Former Employees' Representatives and the CAW, the Monitor has agreed to bring this motion. The Monitor is recommending that the amount of the interim distribution of the HWT corpus to each Income Beneficiary be 10% of the Income Benefits calculated in accordance with the Approved HWT Allocation Methodology, using data available as of December 31, 2010 according to the Applicants' books and records, as updated from time to time; provided that the interim distribution cannot exceed three months of the Income Benefits payable to the Income Beneficiary[1]. Based on the illustrative scenarios appended to the Supplement to the Monitor's Fifty-First Report dated September 17, 2010 (the "**Supplemental Fifty-First Report**") and attached as Appendix "A" hereto, the Approved HWT Allocation Methodology (Scenario #2) results in an allocation on account of Income Benefits of 33.8% of the actuarial value of the Income Benefits. The Monitor believes that the proposed interim distribution is prudent and conservative and will not prejudice other beneficiaries. The LTD Beneficiaries' Representative, the Former Employees' Representatives, the Continuing Employees' Representatives, CAW Counsel and the Independent Counsel (defined below) each consent to the within motion

---

[1] Based on the monthly amount payable to the Income Beneficiary for December, 2010

- 5 -

35

and the proposed interim distribution, without prejudice and with a reservation of all rights and arguments.

### III.   TERMS OF REFERENCE

13. In preparing this Fifty-Seventh Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with Nortel management. The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of the information and, accordingly, expresses no opinion or other form of assurance on the information contained in this Fifty-Seventh Report.

14. Capitalized terms used herein (including in the preceding paragraphs) shall have the meanings given to them herein or in the Monitor's Fifty-First Report dated August 27, 2010 (the "**Fifty-First Report**"), filed in support of the application for approval of the Approved HWT Allocation Methodology.

15. Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

### IV.   BACKGROUND

16. The Fifty-First Report is attached hereto as Appendix "B", without appendices except for the Mercer 2010 HWT Preliminary Valuation (Appendix "C" to the Fifty-First Report).

17. In addition, the Supplemental Fifty-First Report is attached hereto as Appendix "C", with appendices (being the Mercer 2010 Addendum, the illustrative scenarios (initially attached as Appendix "D" to the Fifty-First Report) as revised to reflect the present value

of LTD Optional Life Benefit, and the form of newspaper notice regarding the motion for the HWT Allocation Order).

18. The Fifty-First Report provides background concerning:

   (a) the appointment of the representatives;

   (b) the Settlement Agreement, including the cessation of benefits payable by Nortel on December 31, 2010;

   (c) the HWT and the benefits provided thereunder;

   (d) the process leading to the motion for approval of the allocation methodology proposed thereunder;

   (e) the Mercer 2010 HWT Preliminary Valuation;

   (f) the retainer of Sack Mitchell Goldblatt LLP by the LTD Beneficiaries' Representative and Lerners LLP by the Former Employees' Representatives (collectively, the "**Independent Counsel**"); and

   (g) various allocation scenarios.

19. The Supplemental Fifty-First Report provides the following update to the Fifty-First Report:

   (a) an addendum to the Mercer 2010 HWT Preliminary Valuation reflecting information received with respect to the LTD Optional Life Benefit (the "**Mercer 2010 Addendum**"); and

   (b) revised illustrative allocation scenarios reflecting the valuation of the LTD Optional Life Benefit.

## V. THE HWT

**Overview**

20. As further described in the Fifty-First Report, Nortel provided the following benefits through the HWT (using the HWT as a payment mechanism with respect to non-pension

- 7 -

37

employee benefits and to fund (in part) certain other benefit plans using trust assets): (a) medical, dental and life insurance benefits to pensioners; (b) income payments to disabled employees; (c) medical, dental and life insurance benefits to disabled employees; (d) income benefits for beneficiaries of deceased employees; and (e) medical, dental and life insurance benefits to active employees.

21. Under the Approved HWT Allocation Methodology, distributions would be made on account of the following benefits:

(a) Pensioner Life;

(b) LTD Life;

(c) LTD Income;

(d) LTD Optional Life Benefit;

(e) SIBs; and

(f) STBs in pay ("**STBs In Pay**")

22. The LTD Income, SIBs and STBs In Pay are referred to collectively as the "**Income Benefits**", and the LTD beneficiaries entitled to LTD Income, the SIB Beneficiaries and the STB Beneficiaries entitled to STBs In Pay are referred to collectively as the "**Income Beneficiaries**".

**Mercer 2010 Preliminary HWT Valuation**

23. Attached as Appendix "C" to the Fifty-First Report is a report of Mercer dated August 27, 2010 (the "**Mercer 2010 HWT Preliminary Valuation**"), providing a preliminary valuation of certain non-pension post retirement benefit plans and post employment benefit plans, estimated as at December 31, 2010, when payments under such plans will

- 8 -

38

cease. As indicated in the Fifty-First Report, no amount was included in the valuation for the LTD Optional Life Benefit as there was insufficient data at the date of the Fifty-First Report to determine the present value of this benefit to LTD Beneficiaries participating under Optional Life.

24. Attached as Appendix "A" to the Supplemental Fifty-First Report is the Mercer 2010 Addendum, which provides a preliminary valuation of the LTD Optional Life Benefit based on the assumptions set out in the Mercer 2010 HWT Preliminary Valuation and data Nortel provided to Mercer and the Monitor following the date of the Fifty-First Report.

**VI.   INTERIM DISTRIBUTION**

25. The LTD Beneficiaries' Representative, the Former Employees' Representatives and the CAW asked the Monitor to seek Court approval for an interim distribution to Income Beneficiaries on account of Income Benefits because of the difficulties that could arise for them if their income payments cease before there is any distribution on account thereof.

26. In evaluating an interim distribution to Income Beneficiaries, the Monitor considered a number of factors, including:

   (a)   In all illustrative scenarios, each of LTD Income and SIBs would participate in a distribution of the HWT corpus.

   (b)   In certain illustrative scenarios, STBs In Pay are excluded as participating benefits; however:

      (i)   under the proposed interim distribution, STB Beneficiaries entitled to STBs In Pay would receive in aggregate approximately $355,000; and

39

    (ii)    the LTD Beneficiaries' Representative, the Former Employees' Representatives, the Continuing Employees' Representatives, CAW Counsel and the Independent Counsel (whose constituents would be impacted if leave to appeal is granted and scenarios other than the Approved HWT Allocation Methodology are considered) consent to the proposed interim distribution as described in paragraph 12, including an interim distribution to STB Beneficiaries entitled to STBs In Pay (such consenting parties are referred to herein as the "**Consenting Parties**").

(c)    The percentage distribution on account of Income Benefits differs (including from the percentage distribution resulting from the Approved HWT Allocation Methodology) depending on which illustrative scenario is applied.

(d)    The Monitor has considered a range of possible interim distributions and the consent described in (b)(ii) above and believes that payment to Income Beneficiaries at 10% of their Income Benefit to a maximum of 3 months will not prejudice other beneficiaries of the HWT.

(e)    The Monitor's Fifty-First Report indicated that the ultimate distribution from the HWT would be dependent upon the outcome of the following matters:

    (i)    changes to the estimated actuarial value of benefits as a result of status changes occurring with respect to the individual, such as recovery or death; and

    (ii)    changes to the estimated distribution percentage and consequently the estimated distribution amount as a result of:

        A.    a different allocation of the HWT corpus;

        B.    the distributable assets being more or less than estimated;

        C.    the resolution of contingencies;

        D.    updating of data to December 31, 2010; and

        E.    the award of fees against any particular benefit type.

(f)    Although there is increased certainty regarding the outcome of some of the above matters, there is still some uncertainty such that a conservative interim distribution is warranted.

27.    The proposed interim distribution will result in a lump sum amount representing 3 months of payments for approximately 503 Income Beneficiaries, and less than 3 months

- 10 -

40

of payments for approximately 240 Income Beneficiaries. The majority of the Income Beneficiaries who will receive less than 3 months of Income Benefits under the proposed interim distribution are those in receipt of STBs In Pay, which STBs In Pay are limited to a 5 year time period. Attached as Appendix "D" hereto is a chart illustrating the proposed interim distribution using data as of June 30, 2010 according to the Applicants' books and records.

**Tax Ruling Request**

28. LTD Beneficiaries' Representative Counsel and Former Employees' Representative Counsel, in conjunction with CAW Counsel and with the assistance and cooperation of the Applicants and the Monitor, have sought a ruling from the Canada Revenue Agency that payments from the corpus of the HWT on account of certain benefits, including payments for those benefits contemplated by this interim distribution, would be made on a tax-exempt basis. The Canada Revenue Agency has not issued a ruling on this matter. Until such time as the ruling is issued, payments from the HWT would be subject to the applicable statutory withholdings. If the ruling from the Canada Revenue Agency is received prior to December 31, 2010 then the interim distribution will be made in accordance with that ruling.

**Specific Process Matters**

29. As discussed in the Fifty-First Report, the Mercer 2010 HWT Preliminary Valuation was prepared on an aggregate basis to assist in an analysis of the effect of various scenarios (including the allocation methodology proposed in the Fifty-First Report) on the various benefits covered by the HWT and thereby on the aggregate group of individuals participating in those benefits. At the request of the LTD Beneficiaries' Representative,

the Monitor provided a statement to the Income Beneficiaries setting out an estimate of the amount they would receive if the proposed allocation methodology were approved, subject to certain caveats (a "**Beneficiary Estimated Allocation Statement**").

30. The Beneficiary Estimated Allocation Statement was substantially in the form attached to the Fifty-First Report as Appendix "NNN", which is also attached hereto as Appendix "E".

31. In response to inquiries received following delivery of the Beneficiary Estimated Allocation Statements, on November 16, 2010, the Monitor caused to be sent to each Income Beneficiary a form indicating the data from Nortel's books and records on which the particular Beneficiary Estimated Allocation Statement was based and asking that any corrections to the data be forwarded to the Monitor by December 17, 2010. The Applicants will amend their books and records according to any corrections received and validated.

## VII.  MONITOR'S RECOMMENDATION

32. The Monitor believes that an interim distribution to Income Beneficiaries is appropriate in the circumstances and that an interim distribution of 10% of the Income Benefits to a maximum of 3 months is prudent and reasonable. The Monitor believes that the proposed interim distribution does not prejudice other beneficiaries of the HWT (particularly given its conservative nature, that the proposed interim distribution results in a relatively small distribution on account of STBs In Pay and the Consenting Parties have consented to the proposed interim distribution, including on account of STBs In Pay) and is responsive to the Income Beneficiaries' request for an interim payment pending final distribution of the HWT corpus.

- 12 -

42

33.  Accordingly, the Monitor requests that this Honourable Court grant the Order in the form submitted.

All of which is respectfully submitted this 3rd day of December, 2010.

**ERNST & YOUNG INC.**

**In its capacity as Monitor of the Applicants**

Per:

Murray A. McDonald
President

\5910968