# **EXHIBIT A**

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**FIFTY-EIGHTH REPORT OF THE MONITOR**
**DATED DECEMBER 22, 2010**

**INTRODUCTION**

1.    On January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC" and collectively with all its subsidiaries "Nortel" or the "Company"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation ("NNTC"), Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "Applicants") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("CCAA").   Pursuant to the Order of this Honourable Court dated January 14, 2009, as amended and restated (the "Initial Order"), Ernst & Young Inc. was appointed as the Monitor of the Applicants (the "Monitor") in the CCAA proceedings. The stay of proceedings was extended to February 28, 2011 by this Honourable Court by its Order dated October 27, 2010.

2.    Nortel Networks Inc. ("NNI") and certain of its U.S. subsidiaries concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") on January 14, 2009 (the "Chapter 11 Proceedings").   As required by U.S. law, an official committee of unsecured creditors (the "Committee") was established in January, 2009.

3.    An ad hoc group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized (the "Bondholder Group") and is participating in these

- 2 -

proceedings as well as the Chapter 11 Proceedings. In addition, pursuant to Orders of this Honourable Court dated May 27, 2009, July 22, 2009, and July 30, 2009, respectively, representative counsel was appointed on behalf of the former employees of the Applicants, the continuing employees of the Applicants and the LTD Beneficiaries and each of these groups is participating in the CCAA proceedings.

4.  Nortel Networks (CALA) Inc. ("NN CALA") filed a voluntary petition under Chapter 11 of Title 11 of the Code in the U.S. Court on July 14, 2009. NN CALA, together with NNI and certain of its subsidiaries that filed on January 14, 2009, are herein referred to as the "U.S. Debtors".

5.  Nortel Networks UK Limited ("NNUK") and certain of its subsidiaries located in EMEA were granted administration orders (the "UK Administration Orders") by the High Court of England and Wales on January 14, 2009 (collectively the "EMEA Debtors"). The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as administrators of the various EMEA Debtors, except for Nortel Networks (Ireland) Limited, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively the "Joint Administrators").

6.  Subsequent to the filing date, Nortel Networks SA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court.

7.  Both the CCAA and NNUK proceedings have been recognized by the U.S. Court as foreign main proceedings under Chapter 15 of the Code.

8.  Subsequent to the Filing Date, certain other Nortel subsidiaries have filed for creditor protection in the local jurisdiction in which they are located.

- 3 -

## PURPOSE

9. The purpose of this Fifty-Eighth report of the Monitor ("Fifty-Eighth Report") is to provide information to this Honourable Court in support of the Applicants' motion for an Order with respect to the following:

    (a) establishing a process for the calling of claims by EMEA Creditors (as defined in the EMEA Claims Procedure Order) against the Applicants as at the Filing Date ("EMEA Claims");

    (b) establishing a bar date of February 11, 2011 for the filing of such EMEA Claims ("EMEA Claims Bar Date"); and

    (c) establishing a process for the determination and resolution of such EMEA Claims for purposes of voting and distribution in relation to a plan of compromise or arrangement to be presented by the Applicants at a later date (the "Plan").

## TERMS OF REFERENCE

10. In preparing this Fifty-Eighth Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with management of Nortel. The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of the information and accordingly, the Monitor expresses no opinion or other form of assurance on such information contained in this Fifty-Eighth Report.

11. Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

12. Capitalized terms not defined in this Fifty-Eighth Report are as defined in the Affidavit of John Doolittle dated January 14, 2009, the Pre-Filing Report, previous Reports of the Monitor or the Cross-Border Claims Protocol.

13. The Monitor has made various materials relating to the CCAA proceedings available on its website at *www.ey.com/ca/nortel*. The Monitor's website also contains a dynamic link

- 4 -

to Epiq Bankruptcy LLC's website where materials relating to the Chapter 11 Proceedings are posted.

**BACKGROUND**

14. Pursuant to the Amended and Restated Claims Procedure Order (the "Claims Procedure Order") and the Claims Resolution Order made on July 30, 2009 and September 16, 2010, respectively, this Honourable Court approved a general process for the calling for and determination of claims against the Applicants. Certain types of claims were specifically excluded from the processes approved in those orders, including inter-company claims.

15. Pursuant to the provisions of the Final Canadian Funding and Settlement Agreement ("FCFSA") dated December 23, 2009 between the Applicants, Monitor and U.S. Debtors, the parties agreed on the resolution of virtually all pre-filing claims between the U.S. Debtors and the Applicants. Notwithstanding the U.S. Debtors' right to assert certain additional pre-filing claims against the Applicants pursuant to the FCFSA, the Applicants and the Monitor are not presently aware of any further claims against the Applicants that will be asserted by the U.S. Debtors.

16. With few exceptions, the Applicants have a creditor relationship rather than a debtor relationship with entities in most other jurisdictions around the world including APAC, CALA and the non-filed EMEA entities. Accordingly, it is believed that calling for EMEA Claims at this time will result in the filing of the majority (by dollar value) of remaining inter-company claims likely to be filed.

17. The Applicants and the Monitor are aware that several significant claims are being alleged by the EMEA Debtors against the Applicants.

18. As described in the Fifty-Fifth Report, a process is currently underway within which various Nortel global entities are attempting to negotiate a comprehensive settlement to resolve all material inter-estate matters including the allocation of proceeds received from the sale of Nortel's major lines of business and the settlement of inter-company claims. The inter-company claims are intertwined with allocation issues and include proprietary and trust type claims. The Monitor and Applicants are of the view that absent reaching a

- 5 -

comprehensive settlement of allocation and claims issues, these claims need to be resolved first.

19. Undertaking an EMEA claims process at this time will provide a process whereby EMEA Claims against the Applicants, if any, can be satisfactorily identified and determined. Accordingly, the Applicants and the Monitor believe it is now appropriate to initiate a process whereby inter-company claims alleged by EMEA Creditors against the Applicants should be called for and determined.

20. Numerous issues are expected to be encountered with respect to the nature, validity, valuation and jurisdiction of the EMEA Claims, including but not limited to:

   a) the likelihood of duplicative EMEA Claims being filed against different Applicants;

   b) EMEA Claims may be filed relating to previously unknown actions or the EMEA Creditors' initial valuation of its EMEA Claims may vary significantly from the Applicants' valuation of such Claims;

   c) the Monitor and the Applicants anticipate there will be a number of contentious EMEA Claims filed requiring significant time and effort on the part of the Applicants and the Monitor to resolve; and

   d) certain EMEA Claims against the Applicants are likely to be based on the same factual background as claims already made by Nortel Networks UK Pension Trust Limited and the Board of the Pension Protection Fund against NNC and NNL pursuant to the Claims Procedure Order.

21. The proposed EMEA Claims Procedure Order recognizes that EMEA Claims constitute Specific Claims (as defined in the Claims Resolution Order) and shall therefore be subject to the provisions of paragraphs 7, 8 and 10 of the Claims Resolution Order. For clarity, this requires that the Monitor and Applicants consult with the U.S. Debtors as to the proposed allowed amount of such claims prior to seeking this Honourable Court's approval of such claims.

- 6 -

## GENERAL MATTERS

22. The following paragraphs contain a general summary of the proposed EMEA Claims Procedure Order. Reference should be made directly to the proposed EMEA Claims Procedure Order, a copy of which is included in the Applicants' motion record, for a complete understanding of same.

23. To the extent any EMEA Claim represents a Protocol Claim (as defined in the Claims Resolution Order) ("EMEA Protocol Claim"), such EMEA Protocol Claim will be subject to the Cross-Border Claims Protocol.

24. To the extent any Proof of Claim asserts an EMEA Claim against a Director or Officer ("Affected Director or Officer"), the Monitor and Applicants, in consultation with the Affected Director or Officer, will review all such Proofs of Claim and prior to attempting to resolve, settle, accept, revise or disallow (in whole or in part) the amount and/or status of such EMEA Claim, will:

   a) obtain either the Affected Director's or Officer's consent or a further Order of this Honourable Court; or

   b) settle or accept the EMEA Claim as against an Applicant on a basis that is without prejudice to any such EMEA Claim against an Affected Director or Officer.

25. Furthermore, the proposed EMEA Claims Procedure Order directs:

   a) all prior proofs of claim in respect of an EMEA Claim against any of the Applicants filed pursuant to the Claims Procedure Order, shall be deemed to have been filed pursuant to the EMEA Claims Procedure Order and shall be governed by and proven in accordance with this Order provided that at any time prior to 4:00 pm (prevailing time in Toronto, Ontario, Canada) on the EMEA Claims Bar Date any EMEA Creditor may by notice in writing to the Monitor elect to either withdraw any prior proof of claim filed by such EMEA Creditor or amend such prior proof of claim by submitting an amended proof of claim in accordance with the EMEA Claims Procedure Order; and

- 7 -

b) where pursuant to the EMEA Claims Procedure Order, consultation is to occur with any Affected Director or Officer, notice is to be given to such Affected Officer or Director or the consent of such Affected Officer or Director is to be obtained and where such Affected Director or Officer is represented by counsel, then such consultation, notice or consent may be with, to or obtained from such counsel.

## PROPOSED EMEA CLAIMS PROCESS

### Notice to Creditors

26. On behalf of the Applicants, the Monitor will send a copy of a proof of claim document package (the "Proof of Claim Document Package") to the Israeli Administrators, French Officer Holders (both as defined in the EMEA Claims Procedure Order)and the Joint Administrators (collectively the "Administrators") and each of their respective counsel within 10 days of the making of the EMEA Claims Procedure Order.

27. The Monitor will post on its website at "*www.ey.com/ca/nortel*" a copy of the Proof of Claim Document Package within 5 days of the making of the EMEA Claims Procedure Order.

28. The Monitor will provide a copy of the Proof of Claim Document Package to any person claiming to be an EMEA Creditor as soon as reasonably possible after receipt of such a request provided such request is received prior to the EMEA Claims Bar Date.

29. It is the Monitor's belief these methods of notification will provide timely and sufficient notification to all EMEA Creditors to submit their proofs of claim prior to 4:00 pm (prevailing time in Toronto, Ontario, Canada) on the EMEA Claims Bar Date.

### EMEA Claims Bar Date

30. The Applicants propose that any EMEA Creditor asserting an EMEA Claim be required to file a proof of claim ("Proof of Claim") with the Monitor prior to 4 p.m (prevailing time in Toronto, Ontario, Canada) on February 11, 2011.

31. Any EMEA Creditor not filing a Proof of Claim, as provided by the EMEA Claims Procedure Order, by the EMEA Claims Bar Date shall:

- 8 -

a) be forever barred from making or enforcing any EMEA Claim against the Applicants or the Directors or Officers;

b) not be entitled to vote an EMEA Claim at a Creditors Meeting in respect of the Plan or to receive any distribution thereunder; and

c) not be entitled to any further notice and shall not be entitled to participate as an EMEA Creditor in these proceedings.

32. The Monitor believes the EMEA Claims Bar Date is reasonable in that it provides 35 days during which EMEA Creditors may formalize their claims against the Applicants, Directors or Officers. The Monitor notes that EMEA Creditors have had almost two years since the Filing Date to consider and formulate their EMEA Claims.

### *Review of EMEA Proofs of Claim*

33. The Monitor, in conjunction with the Applicants and the Affected Directors or Officers, as applicable, will review each Proof of Claim filed and at any time may, subject to the provisions of paragraph 7, 8 and 10 of the Claims Resolution Order:

a) request additional information from the EMEA Creditor;

b) request the EMEA Creditor to file a revised Proof of Claim;

c) attempt to consensually resolve the amount of the Proof of Claim;

d) accept (in whole or in part) the amount and/or status of the EMEA Claim; and

e) by notice in writing, revise or disallow (in whole or in part) the amount and/or status of any EMEA Claim by delivering to the EMEA Creditor a notice of disallowance (the "Notice of Disallowance"). For administrative purposes, the EMEA Creditor will also be provided at the same time with a copy of a notice of dispute form ("Dispute Notice").

34. Where a Notice of Disallowance relates to an EMEA Claim made against a Director or Officer, a copy of the Notice of Disallowance shall be delivered to the Affected Director or Officer by the Monitor.

- 9 -

35. As noted above, an EMEA Claim asserted against an Applicant and an Affected Director or Officer cannot be settled or accepted by the Monitor except:

   a) with the consent of the Affected Director or Officer or on further Order of this Honourable Court; or

   b) on a basis expressly without prejudice to the Affected Director or Officer.

36. Should an EMEA Claim be asserted only against an Affected Director or Officer and not against an Applicant, such EMEA Claim shall not be settled or accepted by the Monitor without the consent of the Affected Director or Officer or on further Order of this Honourable Court.

### Dispute Notice

37. Any EMEA Creditor intending to dispute a Notice of Disallowance must file a Dispute Notice with the Monitor no later than the date that is 14 calendar days after its deemed receipt of the Notice of Disallowance. Where the Notice of Dispute relates to an EMEA Claim against a Director or Officer, a copy of the Notice of Dispute shall be delivered to the Affected Director or Officer.

38. Where an EMEA Creditor fails to file a Dispute Notice with the Monitor within the required time period, the amount and status of such EMEA Creditors' EMEA Claim shall be deemed to be as set out in the Notice of Disallowance and such amount and status, if any, shall constitute such EMEA Creditors' Proven EMEA Claim.

39. The Monitor believes the period of time to file a Dispute Notice is reasonable as most of the EMEA Creditors will have performed an evaluation of their EMEA Claim prior to submitting a Proof of Claim and should therefore be in a position to respond within the time period established.

### Resolution of EMEA Claims

40. As soon as practicable after delivery of the Dispute Notice to the Monitor, the EMEA Creditor and the Monitor, in consultation with the Applicants and the Affected Directors and Officers, as applicable, shall attempt to resolve and settle such EMEA Claim. In the

- 10 -

event the dispute is not resolved within a time frame or in a manner satisfactory to the Monitor, the Monitor will bring the dispute before this Honourable Court for determination.

**MONITOR'S RECOMMENDATION**

41.   As a result of the uncertainty surrounding the status and amount of alleged EMEA Claims at present and the number and quantum of contentious EMEA Claims against the Applicants that may be filed, it is anticipated a significant amount of time and effort will be required of the Applicants and Monitor to reach resolution of these EMEA Claims. Furthermore, these potential EMEA Claims are inextricably linked to the resolution of various inter-estate matters including the allocation of business sale proceeds. In order to facilitate and accelerate progress on resolving outstanding matters relating to the alleged EMEA Claims, the Monitor believes it is necessary and appropriate to call for EMEA Claims at this time.

42.   Accordingly, the Monitor recommends this Honourable Court grant the EMEA Claims Procedure Order as proposed by the Applicants thereby establishing:

a)   a process for the calling of claims by EMEA Creditors;

b)   a bar date for the filing of such EMEA Claims of February 11, 2011; and

c)   a process for the determination and resolution of such EMEA Claims for purposes of voting and distribution in relation to the Plan.

- 11 -

All of which is respectfully submitted this 22nd day of December, 2010.


**ERNST & YOUNG INC.**
In its capacity as Monitor of the Applicants
and not in its personal capacity


Per:

Murray A. McDonald
President

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**FIFTY-EIGHTH REPORT OF THE MONITOR**
**DATED DECEMBER 22, 2010**

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7

Jay A. Carfagnini  (LSUC#: 222936)
Joseph Pasquariello (LSUC# 37389C)
Christopher G. Armstrong (LSUC# 55148B)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.