## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  | X | Chapter 11 |
|---|---|---|
|  | : |  |
| *In re* | : | Bankr. Case No. 09-10138 (KG) |
|  | : |  |
| Nortel Networks Inc., *et al.,* [1] | : | (Jointly Administered) |
|  | : |  |
| Debtors. | : |  |
|  | : |  |
| ----------------------------------------------------------- | : |  |
|  | X |  |
| Nortel Networks Inc. | : |  |
|  | : |  |
| and | : | Adv. Pro. No. _____ |
|  | : |  |
| Nortel Networks (CALA) Inc., | : |  |
|  | : |  |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| Telmar Network Technology, Inc., | : |  |
|  | : |  |
| Precision Communication Services, Inc., | : |  |
|  | : |  |
| and | : |  |
|  | : |  |
| Precision Communication Services Corporation, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | X |  |

---

[1]  In addition to Nortel Networks Inc. ("NNI") and Nortel Networks (CALA) Inc. ("NN CALA"), the Debtors in the Chapter 11 cases are:  Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., and Nortel Networks Cable Solutions Inc.  Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

**COMPLAINT FOR BREACH OF CONTRACT, ACCOUNT STATED, TO COMPEL
TURNOVER OF PROPERTY, TO AVOID AND RECOVER PREFERENTIAL
TRANSFERS, AND FOR VIOLATION OF THE AUTOMATIC STAY, AND
OBJECTION TO PROOFS OF CLAIM**

Plaintiffs Nortel Networks Inc. ("NNI") and Nortel Networks (CALA) Inc. ("CALA")
(together, "Plaintiffs"), as two of the above-captioned debtors and debtors-in-possession
(collectively, the "Debtors"), by and through undersigned counsel, file this complaint and
objection to claims pursuant to 11 U.S.C. §§ 362, 502, 542, 547 and 550, and Rules 7001 *et seq.*
of the Federal Rules of Bankruptcy Procedure against Telmar Network Technology, Inc.
("Telmar"), Precision Communication Services, Inc. ("PCSI"), and Precision Communication
Services Corporation ("PCSC") (together with PCSI, "Precision," which together with Telmar
shall be referred to herein as "Defendants"), and in support thereof, state as follows:

## NATURE OF THE ACTION

1.      This action seeks relief with respect to certain breaches of contract by
Defendants, certain post-petition actions by Defendants to control and/or withhold certain
property of Plaintiffs' estates, and to disallow Defendants' proofs of claim.

2.      Specifically, Plaintiffs seek damages resulting from, *inter alia*,
Defendants' breaches of contract(s) for the sale of goods and services by Plaintiffs to
Defendants; turnover of goods in Defendant's possession and payment of the Debt (as defined
below) to Plaintiffs pursuant to 11 U.S.C. § 542; damages for Defendants' violation of the
automatic stay pursuant to 11 U.S.C. § 362; avoidance of preferential transfers Plaintiffs made to
or for the benefit of Defendants pursuant to 11 U.S.C. § 547; recovery of avoided transfers
pursuant to 11 U.S.C. § 550; and disallowance of Defendants' proofs of claims pursuant to 11
U.S.C. § 502.

2

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4.     Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

5.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157.

6.     This adversary proceeding includes objections to the allowance of proofs of claims filed by Defendants pursuant to Federal Rule of Bankruptcy Procedure 3007(b).

## PARTIES

7.     Plaintiff Nortel Networks Inc. is a corporation duly incorporated under the laws of the state of Delaware with its principal place of business located at 4001 E. Chapel Hill-Nelson Hwy., P.O. Box 13010, Research Triangle Park, NC 27709-3010.   Plaintiff Nortel Networks (CALA) Inc. is a corporation duly incorporated under the laws of the state of Florida with its principal place of business located at 1500 Concord Terrace, Sunrise, FL 33323-2815

8.     On information and belief, Telmar is a Delaware corporation with its principal place of business in the State of Texas.

9.     On information and belief, PCSI is a Florida corporation with its principal place of business in the State of Florida.

10.     On information and belief, PCSC is a Canadian corporation, a wholly-owned subsidiary of PCSI, and transacted business and committed certain acts referenced herein in the United States.

## STATEMENT OF FACTS

### A.    Procedural Background

11.    On January 14, 2009 (the "NNI Petition Date"), the Debtors (with the exception of NN CALA) each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  NN CALA filed its petition on July 14, 2009 (the "CALA Petition Date"). Together, the NNI Petition Date and the CALA Petition Date are referred to herein as the "Petition Dates".  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

12.    Also on the NNI Petition Date, the Debtors' ultimate corporate parent, Nortel Networks Corporation, NNI's direct corporate parent Nortel Networks Limited, and certain of their Canadian affiliates (collectively, the "Canadian Debtors") filed an application with the Ontario Superior Court of Justice under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors.

13.    On or about January 26, 2009, the Office of the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors pursuant to section 1102(a)(1) of the Bankruptcy Code.  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized.  No trustee or examiner has been appointed in the Debtors' cases.

14.    On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580].  On September 3, 2010, the Debtors filed the Proposed Disclosure Statement for the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3874].

**B.**     **Defendants' Liabilities**

15.     Both prior to and following the Petition Dates, Plaintiffs provided goods and services, including but not limited to switches, modules, circuits, and related repair services, to Defendants pursuant to agreements and/or purchase orders.

16.     Upon information and belief, Defendants have entered into repair agreements with various third-party entities to whom Nortel had sold products.

17.     Defendants submitted purchase orders on behalf of themselves and various third-party entities (the "Third-Party Entities") to Plaintiffs for the repair and/or replacement of certain products sold by Nortel entities.

18.     Defendants are liable to Plaintiffs for goods and services provided by Plaintiffs to Defendants and the Third-Party Entities.

19.     Defendants have failed and/or refused to return to Plaintiffs goods and/or other property of Plaintiffs in their possession, including all property on which Defendants assert lien rights.

**1.**     **The Precision Liabilities**

20.     Both prior to and following the NNI Petition Date, NNI provided goods and services, namely replacement parts and repair services, to Precision.

21.     Following NNI's provision of goods and/or services to Precision, NNI invoiced Precision for amounts owed.

22.     The NNI invoices required payment within thirty (30) days, with past due amounts incurring interest at a rate of 1% per month.

23.     Precision has failed to pay NNI approximately $555,084.68 for pre-petition goods and/or services provided for which Precision was invoiced.

5

24.     Precision has failed to pay NNI approximately $821,140.42 for post-petition goods and/or services provided for which Precision was invoiced.

25.     In total, Precision owes NNI approximately $1,376.225.10, plus interest and other amounts due, including the costs of collection (the "NNI Debt").

26.     The NNI Debt is matured, payable on demand or payable on order.

**2.      The Telmar Liabilities**

27.     Both prior to and following the CALA Petition Date, CALA provided goods and services, namely switches, modules, circuits, and other parts, to Telmar.

28.     Following CALA's provision of goods and/or services to Telmar, CALA invoiced Telmar for amounts owed.

29.     The CALA invoices required payment within seventy (70) days, with past due amounts incurring interest at a rate of 1% per month.

30.     Telmar has failed to pay CALA approximately $806,805.65 for pre-petition goods and/or services provided for which Telmar was invoiced.

31.     In total, Telmar owes CALA approximately $806,805.65, plus interest and other amounts due, including the costs of collection (the "CALA Debt", together with the NNI Debt, the "Debt").

32.     The CALA Debt is matured, payable on demand, or payable on order.

**C.     Defendants' Proofs Of Claim**

33.     Precision entered into an Amended and Restated Asset Purchase Agreement dated February 25, 2000 (the "Sale Agreement") with NNC.

34.    PCSC entered into a Master Contract Repair Services Agreement dated March 3, 2000 (the "Services Agreement, together with the Sale Agreement, the "Agreements") with NNC.

35.    Plaintiffs are not named parties to the Agreements.

36.    Pursuant to the Sale Agreement, PCSC agreed to purchase certain assets and assume certain liabilities relating to certain of NNC's business operations.

37.    PCSI is the Guarantor[2] under the Sale Agreement.

38.    Pursuant to the Services Agreement, PCSC agreed to provide repair services to or for the benefit of certain Nortel entities.  The Services Agreement establishes rights and obligations only between Precision and the Nortel entity that issues orders for services.

39.    The Services Agreement provides, in pertinent part, that

Each Order issued to Contractor shall create rights and obligations solely between Contractor and the Nortel Company which issues the Order.  No Nortel Company shall be liable to Contractor for performance of any obligation of another Nortel Company arising in connection with this Agreement.

40.    Defendants have filed proofs of claim in Plaintiffs' bankruptcy cases claiming, among other things, Plaintiffs owe certain amounts to Defendants under the Agreements.

41.    Specifically, Defendants filed the following proofs of claim:

| CLAIM NUMBER | DATE FILED | DATE AMENDED | CLAIMANT | DEBTOR | AMOUNT OF ORIGINAL CLAIM | AMOUNT OF AMENDED CLAIM |
|---|---|---|---|---|---|---|
| 4905/6883 | 9/29/09 | 1/25/10 | Telmar | CALA | $349,104.28 | $4,912,581.68 |
| 4906/6881 | 9/29/09 | 1/25/10 | PCSI | CALA | $172,941.88 | $4,736,419.28 |

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Agreement.

| 4907/6882 | 9/29/09 | 1/25/10 | PCSC | CALA | $176,162.40 | $4,739,639.80 |
| 4908 | 9/29/09 | | PCSC | NNI | $176,162.40 | |
| 4909 | 9/29/09 | | PCSI | NNI | $172,941.88 | |

42.    Defendants' proofs of claim contain redundant and duplicative claims in amount and basis.

43.    In particular, the invoices supporting Proofs of Claim Nos. 4906 and 4907 are included in the invoices supporting Proof of Claim No. 4905.

44.    Further, the invoices supporting Proofs of Claim Nos. 4908 and 4909 are included in the invoices supporting Proof of Claim No. 4905.

45.    Further, the invoices supporting Proof of Claim No. 4906 are identical to those supporting Proof of Claim No. 4909.

46.    Further, the invoices supporting Proof of Claim No. 4907 are identical to those supporting Proof of Claim No. 4908.

47.    On information and belief, amended Proof of Claim No. 6883 appears to be a summary claim that includes all amounts allegedly owed under, *inter alia*, the Agreements and referenced in Defendants' other proofs of claims.

48.    On information and belief, amended Proofs of Claim Nos. 6881, 6882 and 6883 each include approximately $4,563,477.40 allegedly owed to Defendants by Nortel Networks Telecomunicacoes do Brazil Ltda. ("Nortel Brazil"), a Brazilian Nortel entity and non-debtor in this case.

49.    Amended Proofs of Claim Nos. 6881, 6882 and 6883 each include certain identical invoices relating to amounts allegedly owed to Defendants by Nortel Brazil.

50. Defendants assert in each of their proofs of claim secured claims in an amount not less than the amount of such claim on the grounds that they hold lien(s) against Plaintiffs' goods in their possession.

51. Defendants' proofs of claim also contain redundant and/or duplicative claims in amount and basis with claims filed against NNC and other Canadian affiliates in Canada.

**D.      Pre-Petition Amounts Paid to Defendants**

52. On or within ninety (90) days prior to the Petition Dates (the "Preference Periods"), Plaintiffs made one or more transfers of an interest in their property to or for the benefit of Defendants, as set forth on Exhibit "A" hereto.

53. Exhibit "A" reflects Plaintiffs' present knowledge as to the transfers made to Defendants by Plaintiffs during the Preference Periods. During the course of this proceeding Plaintiffs may learn (through discovery or otherwise) of additional transfers made by Plaintiffs to Defendants during the Preference Periods. By virtue of this Complaint, Plaintiffs are seeking to avoid and recover all transfers made to Defendants by Plaintiffs during the Preference Periods, whether such transfers are reflected on Exhibit "A" or not. Collectively, all transfers made by Plaintiffs during the Preference Periods of an interest in their property to or for the benefit of Defendants (whether such transfers are reflected on Exhibit "A" hereto or not) are referred to herein as the "Subject Transfers".

## CLAIMS

## COUNT I
### (Breach of Contract)

54.    Plaintiffs adopt and incorporate by reference the allegations set forth in Paragraphs 1 through 53 as though fully set forth herein.

55.    By virtue of agreements, purchase orders, and business relationships, valid and enforceable agreements existed between Plaintiffs and Defendants for the provision of goods and/or services by Plaintiffs to Defendants and the Third-Party Entities, and Defendants' payment for same to Plaintiffs.

56.    Plaintiffs performed their contractual obligations to Defendants by providing goods and/or services.

57.    Defendants breached their contractual obligations to Plaintiffs by failing to pay for goods and/or services provided.

58.    As a result of Defendants' breach of their contractual obligations, Plaintiffs have suffered damages in the amount of the Debt, totaling approximately $2,183,030.75 (exclusive of interest and other costs and charges).

59.    Specifically, Precision owes NNI the NNI Debt, and Telmar owes CALA the CALA Debt.

## COUNT II
### (Damages Under Commercial Law)

60.    Plaintiffs adopt and incorporate by reference the allegations set forth in Paragraphs 1 through 59 as though fully set forth herein.

61.     By virtue of purchase orders and business relationships, Defendants agreed to purchase and Plaintiffs agreed to provide goods to Defendants and the Third-Party Entities.

62.     Plaintiffs performed their obligations by providing such goods to Defendants and the Third-Party Entities.

63.     Defendants have failed to pay for goods provided by Plaintiffs.

64.     As a result of Defendants' failure to pay for goods provided, Plaintiffs are entitled to recover the price of such goods provided, plus incidental damages, in accordance with Article II of applicable state commercial law and/or Part III of the United Nations Convention on Contracts for the International Sale of Goods.

## COUNT III
### (Unjust Enrichment)

65.     Plaintiffs adopt and incorporate by reference the allegations set forth in Paragraphs 1 through 64 as though fully set forth herein.

66.     Plaintiffs provided goods and/or services to the Defendants and Third-Party Entities valued at approximately $2,183,030.75 to Defendants.

67.     Defendants have failed to pay for the goods and/or services provided by Plaintiffs.

68.     As a result of Defendants' failure to pay for the goods and/or services provided by Plaintiffs, Defendants have been unjustly enriched by the approximate value of the goods and/or services provided.

69.     Accordingly, Plaintiffs are entitled to payment of approximately $2,183,030.75 (exclusive of interest and other costs and charges) for the goods and/or services they provided to Defendants and the Third-Party Entities.

## COUNT IV
### (Account Stated)

70.     Plaintiff adopts and incorporates by reference the allegations set forth in paragraphs 1 through 69 as though fully set forth herein.

71.     On a regular and ongoing basis, Plaintiffs regularly sent invoices to Defendants for goods and services provided by the Plaintiffs (the "Invoices").  These Invoices evidenced an account stated between the Plaintiffs and the Defendants.

72.     The Defendants did not object to the amounts owed to the Plaintiffs under the Invoices.

73.     The Defendants' failure to object to the amount of the Invoices manifested the Defendants' asset to the correctness of the Invoices, and agreement to pay such Invoices.

74.     The outstanding amount due to the Plaintiffs by the Defendants pursuant to the account stated established by the Invoices is approximately $2,183,030.75 (exclusive of interest and other costs and charges).

75.     Accordingly, Plaintiffs are entitled to a payment of approximately $2,183,030.75, plus interest and costs and other charges pursuant to the Invoices.

## COUNT V
### (Turnover of Property to the Estate Pursuant to 11 U.S.C. § 542)

76.     Plaintiffs adopt and incorporate by reference the allegations set forth in Paragraphs 1 through 75 as though fully set forth herein.

77.     The Debt is property of Plaintiffs' estates.

78.     The Debt is matured, payable on demand or payable on order.

79.     The Debt has meaningful value or benefit to Plaintiffs' estates.

80.     During Plaintiffs' bankruptcy cases, Defendants have been in possession, custody, or control of the Debt.

81.     Plaintiffs, as debtors-in-possession of their respective estates, could have used, sold or leased the Debt, or the proceeds thereof if Defendants had paid the Debt, under Section 363 of the Bankruptcy Code.

82.     Defendants owe the Debt to Plaintiffs but have not paid any amount of same to Plaintiffs.

83.     Plaintiffs' goods and/or other property in Defendants' possession, including all property on which Defendants assert lien rights, is property of Plaintiffs' estates.

84.     Plaintiffs' goods and/or other property in Defendants' possession, including all property on which Defendants assert lien rights, has meaningful value or benefit to Plaintiffs' estates.

85.     During Plaintiffs' bankruptcy cases, Defendants have been in possession, custody, or control of certain of Plaintiffs' goods and/or other property, including property on which Defendants assert lien rights.

86.     Plaintiffs, as debtors-in-possession of their respective estates, could have used, sold or leased Plaintiffs' goods and/or other property in Defendants' possession, including all property on which Defendants assert lien rights, under Section 363 of the Bankruptcy Code.

87.     Defendants have not returned Plaintiffs' goods and/or other property in Defendants' possession, including all property on which Defendants assert lien rights, to Plaintiffs.

13

88.     Defendants were listed in Plaintiffs' bankruptcy schedules and had actual notice or actual knowledge of the commencement of Plaintiffs' bankruptcy cases as evidenced by their filing of proofs of claim in these bankruptcy cases.

89.     Defendants should turnover, and account for, the Debt or its value to Plaintiffs pursuant to Section 542(a) of the Bankruptcy Code.

90.     Defendants should turnover, and account for, Plaintiffs' property in Defendants' possession or its value to Plaintiffs pursuant to Section 542(a) of the Bankruptcy Code.

91.     Defendants should pay the Debt to Plaintiffs pursuant to Section 542(b) of the Bankruptcy Code.

## <u>COUNT VI</u>
**(Violation of the Automatic Stay Pursuant to 11 U.S.C. § 362)**

92.     Plaintiffs adopt and incorporate by reference the allegations set forth in Paragraphs 1 through 91 as though fully set forth herein.

93.     Defendants have sought to obtain possession of property of Plaintiffs' estates, namely the Debt and/or Plaintiffs' property and goods in Defendants' possession, or to exercise control over same.

94.     Defendants have sought to collect, assess, or recover alleged claims against Plaintiffs that arose before Plaintiffs' bankruptcy cases by withholding payment of the Debt and/or failing to return Plaintiffs' goods and/or other property in Defendants' possession, including all property on which Defendants assert lien rights.

95.     Defendants have sought to setoff portions of the Debt owing to Plaintiffs that arose before the commencement of their bankruptcy cases against claims Defendants allege Plaintiffs owe them.

96.     Defendants have sought to create, perfect, or enforce alleged liens against property of Plaintiffs' estates and/or create, perfect, or enforce against property of Plaintiffs' estates alleged liens securing claims against Plaintiffs that arose before Plaintiffs' bankruptcy cases.

97.     Defendants' acts referenced above took place after Plaintiffs filed their bankruptcy cases and violate the automatic stay pursuant to Section 362 of the Bankruptcy Code.

98.     Defendants were listed in Plaintiffs' bankruptcy schedules and had actual notice or actual knowledge of the commencement of Plaintiffs' bankruptcy cases.

99.     Defendants' violations of the automatic stay were and are willful because they were on notice of Plaintiffs' bankruptcy cases at all relevant times.

100.    Defendants' violations of the automatic stay are void and without legal effect.

101.    Defendants' violations of the automatic stay cause and continue to cause actual damages to Plaintiffs' estates in amounts not less than the value of the Debt and the goods and/or other property of Plaintiffs in Defendants' possession, including all property on which Defendants assert lien rights.

## COUNT VII
### (Avoidance of Preferential Transfers Pursuant to 11 U.S.C. § 547)

102.    Plaintiffs adopt and incorporate by reference the allegations set forth in Paragraphs 1 through 101 as though fully set forth herein.

15

103.    Section 547(b) of the Bankruptcy Code empowers a debtor in possession, for the benefit of the estate, to avoid a transfer to or for the benefit of a creditor of an interest in the property of the debtor in possession if the requirements set forth therein are met.

104.    Pursuant to section 547(b) of the Bankruptcy Code, a debtor in possession may avoid any transfer of an interest in the property of the debtor in possession (a) to or for the benefit of a creditor, (b) for or on account of an antecedent debt owed by the debtor in possession before such transfer was made, (c) made while the debtor in possession was insolvent, (d) made on or within ninety (90) days, or in certain circumstances within one (1) year, before the filing of the petition, (e) that enables such creditor to receive more in satisfaction of its claims than it would receive in a case under chapter 7 of the Bankruptcy Code if the transfer had not been made and the creditor had received payment of such debt to the extent provided by the provisions of title 11 of the Bankruptcy Code.

105.    During the Preference Periods, Plaintiffs made the Subject Transfers described in paragraphs "52" through "53" above to or for the benefit of Defendants.

106.    Plaintiffs were insolvent, and pursuant to section 547(f) of the Bankruptcy Code are presumed to have been insolvent, during the ninety (90) day period prior to the Petition Dates, and on the dates on which they made the Subject Transfers to or for the benefit of Defendants.

107.    The Subject Transfers were transfers of an interest of Plaintiffs in property.

108.    The Subject Transfers were made to or for the benefit of Defendants, creditors of Plaintiffs at the time the Subject Transfers were made.

109.    The Subject Transfers were made on account of antecedent debts owed by Plaintiffs to Defendants before such Transfers were made, which debts are reflected in the invoices enumerated on Exhibit "A" hereto.

110.    The Subject Transfers enabled Defendants to recover more on their antecedent debts –100%– than they would have received if (a) the Subject Transfers had not been made, (b) Plaintiffs' chapter 11 cases were cases under chapter 7 of the Bankruptcy Code, and (c) Defendants received payment of their antecedent debts to the extent provided by the provisions of title 11 of the Bankruptcy Code.

111.    Defendants have not repaid all or any part of the Subject Transfers.

112.    The Subject Transfers constitute preferential transfers subject to avoidance pursuant to Section 547(b) of the Bankruptcy Code.

## COUNT VIII
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

113.    Plaintiffs adopt and incorporate by reference the allegations set forth in Paragraphs 1 through 112 as though fully set forth herein.

114.    Defendants are either (a) the initial transferees of the Subject Transfers, (b) the entities for whose benefit the Subject Transfers were made, or (c) immediate or mediate transferees of an initial transferee.

115.    Plaintiffs are entitled to recover from Defendants the value of each of the Subject Transfers pursuant to Section 550(a) of the Bankruptcy Code.

## COUNT IX
### (Objection to Defendants' Claims Pursuant to 11 U.S.C. § 502(b) – Wrong Debtor)

116.    Plaintiffs adopt and incorporate by reference the allegations set forth in Paragraphs 1 through 115 as though fully set forth herein.

117. The Services Agreement establishes rights and obligations only between PCSC and the Nortel entity that issues orders for services.

118. Defendants' proofs of claim incorrectly allege that Plaintiffs owe certain amounts to Defendants on account of likely orders for services between Precision and other Nortel entities.

119. Specifically, Proofs of Claim Nos. 4907 and 4908 (each in the amount of $176,162.40) each include $139,220.05 in charges that, on information and belief, allegedly relate to Nortel Canada and not Plaintiffs.

120. Further, Proofs of Claim Nos. 4906 and 4909 (each in the amount of $172,941.88) each include $6,638.75 in alleged charges that, on information and belief, also relate to Nortel Canada and not Plaintiffs.

121. Further, amended Proofs of Claim Nos. 6881, 6882 and 6883, each include $4,563,477.40 in charges that, on information and belief, allegedly relate to Nortel Brazil and not Plaintiffs.

122. Accordingly, because Defendants' proofs of claim include amounts relating to Nortel entities other than Plaintiffs, such claims have been filed against the wrong debtor(s) and they should be disallowed.

## COUNT X
**(Objection to Defendants' Claims Pursuant to 11 U.S.C. § 502(b) – No Liability)**

123. Plaintiffs adopt and incorporate by reference the allegations set forth in Paragraphs 1 through 122 as though fully set forth herein.

124. As set forth above, Defendants' proofs of claim include amounts relating to Nortel entities other than Plaintiffs. Plaintiffs are not liable for these amounts.

125.     Defendants' proofs of claim also allege amounts owed under the Sale Agreement.

126.     Plaintiffs are not liable to Defendants under the Sale Agreement.

127.     Accordingly, because Plaintiffs are not liable to Defendants for amounts relating to Nortel entities other than Plaintiffs or amounts relating to the Sale Agreement, such claims should be disallowed.

## COUNT XI
### (Objection to Defendants' Claims Pursuant to 11 U.S.C. § 502(b) – Wrong Amount)

128.     Plaintiffs adopt and incorporate by reference the allegations set forth in Paragraphs 1 through 127 as though fully set forth herein.

129.     Defendants' proofs of claim contain wrong amounts.

130.     Specifically, Proofs of Claim Nos. 4907 and 4908 (each in the amount of $176,162.40) each include $13,051.90 in charges that have already been paid and $354.30 for an invoice that was previously rejected for not being referenced on the applicable purchase order.

131.     Further, Proofs of Claim Nos. 4906 and 4909 (each in the amount of $172,941.88) each include $1,742.66 in invoices that have already been paid and $31,384.33 in invoices that were previously rejected for not being related to valid purchase orders.

132.     Plaintiffs reserve the right to prove that additional amounts in Defendants' proofs of claims are incorrect.

133.     Accordingly, Defendants' proofs of claim should be reduced to the extent they include amounts that have already been paid and/or appropriately rejected.

## COUNT XII
### (Objection to Defendants' Claims Pursuant to 11 U.S.C. § 502(b) – Redundant or Duplicative Claims)

134.     Plaintiffs adopt and incorporate by reference the allegations set forth in Paragraphs 1 through 133 as though fully set forth herein.

135.     As referenced above, Defendants' proofs of claim contain redundant or duplicative claims in amount and basis.

136.     Specifically, the invoices supporting Proofs of Claim Nos. 4906 and 4907 are included in the invoices supporting Proof of Claim No. 4905.

137.     Further, the invoices supporting Proofs of Claim Nos. 4908 and 4909 are included in the invoices supporting Proof of Claim No. 4905.

138.     Further, the invoices supporting Proof of Claim No. 4906 are identical to those supporting Proof of Claim No. 4909.

139.     Further, the invoices supporting Proof of Claim No. 4907 are identical to those supporting Proof of Claim No. 4908.

140.     Further, amended Proof of Claim No. 6883 appears to be a summary claim including all amounts allegedly owed under, *inter alia*, the Agreements and referenced in Defendants' other proofs of claims.

141.     Further, Proofs of Claim Nos. 6881, 6882 and 6883 each include identical invoices relating to the amount allegedly owed by Nortel Brazil.

142.     Accordingly, Defendants' proofs of claims should be disallowed to the extent they are redundant and duplicative.

## COUNT XIII

## (Disallowance of Defendants' Claims Pursuant to 11 U.S.C. § 502(d))

143.     Plaintiffs adopt and incorporate by reference the allegations set forth in Paragraphs 1 through 142 as though fully set forth herein.

144.     Defendants are entities from which property (*i.e.*, the Debt and the goods and/or other property of Plaintiffs in Defendants' possession, including all property on which Defendants assert lien rights) is recoverable under Section 542 of the Bankruptcy Code.

145.     Defendants have not turned over the property for which they are liable under Section 542 of the Bankruptcy Code.

146.     Defendants are entities from which property is recoverable under section 550(a) of the Bankruptcy Code and are transferees of one or more transfers avoidable under Section 547(b) of the Bankruptcy Code.

147.     Defendants have not paid the amount, or turned over such property, for which Defendants are liable under Section 550(a) of the Bankruptcy Code.

148.     As such, Defendants' proofs of claim and any other claims filed or asserted by Defendants should be disallowed under Section 502(d) of the Bankruptcy Code.

## RESERVATION OF RIGHTS

149.     This Complaint is based on Plaintiffs' investigation of the facts to date. Plaintiffs reserve any and all rights to amend, modify, or supplement this Complaint, including bringing additional claims to the extent authorized by the Court and/or applicable law.

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

(1)      Entering judgment against Defendants for breach of contract in the amount of approximately $2,183,030.75, plus interest and other costs and charges, including the costs of collection;

(2)      Entering judgment against Defendants for failure to pay for goods provided in the amount of approximately $2,183,030.75, plus interest and other costs and charges, including the costs of collection;

(3)      Entering judgment against Defendants for unjust enrichment and ordering Defendants to pay to Plaintiffs approximately $2,183,030.75, plus interest and other costs and charges, including the costs of collection;

(4)      Entering judgment against the Defendants on an account stated in the amount of approximately $2,183,030.75 plus interest and other costs and charges including the costs of collection.

(5)      Directing Defendants to turnover, and account for, the Debt and the goods and/or other property of Plaintiffs in their possession, including all property on which Defendants assert lien rights, or their values to Plaintiffs pursuant to Section 542(a) of the Bankruptcy Code;

(6)      Directing Defendants to pay the Debt to Plaintiffs pursuant to Section 542(b) of the Bankruptcy Code;

(7)      Directing Defendants to return the goods and/or other property of Plaintiffs in their possession, including all property on which Defendants assert lien rights, for the benefit of Plaintiffs' estates because Defendants' acts were in violation of the automatic stay;

(8)     Determining that Defendants may not setoff portions of the Debt against claims Defendants allege Plaintiffs owe them because Defendants' acts were in violation of the automatic stay;

(9)     Entering judgment against Defendants for actual damages, including costs and attorneys' fees, caused to Plaintiffs' estates by Defendants' willful acts in violation of the automatic stay, as well as punitive damages and/or sanctions, in an amount not less than the values of the Debt and goods and/or other property of Plaintiffs in Defendants' possession, including all property on which Defendants assert lien rights;

(10)    Avoiding the Subject Transfers pursuant to Section 547(b) of the Bankruptcy Code;

(11)    Directing Defendants to pay to Plaintiffs' estates the amount of the Subject Transfers, in an amount to be determined at trial, but no less than the amount set forth on Exhibit "A" hereto, plus interest and costs, pursuant to Section 550(a) of the Bankruptcy Code;

(12)    Disallowing Defendants' proofs of claims pursuant to Section 502(b) of the Bankruptcy Code to the extent such claims are against the wrong debtor, in the wrong amounts, for amounts for which Plaintiffs are not liable, and/or are duplicative or redundant;

(13)    Disallowing Defendants' proofs of claim and any other claims filed or asserted by Defendants pursuant to Section 502(d) of the Bankruptcy Code because Defendants have not turned over property for which they are liable under Section 542 and 550 of the Bankruptcy Code;

(14)    Determining the amount of any allowed claims of Defendants pursuant to Section 502(b) of the Bankruptcy Code; and

(15)    Awarding Plaintiffs any such other and further relief as is just and equitable.

Dated: January 3, 2011

_____/s/ Donna L. Culver_____

Donna L. Culver (No. 2983)
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, 18th Floor
P.O. Box 1347
Wilmington, DE  19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 225-2559

-and-

David M. Schnorrenberg
Joseph L. Meadows
Bruce J. Zabarauskas
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

*Attorneys for Plaintiffs Nortel Networks, Inc. and Nortel Networks (CALA), Inc.*

DCACTIVE-14235320.1