## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------X

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
| Debtors. | : | Jointly Administered |
| | : | **Hearing date: January 27, 2011, 9:30 a.m. (ET)**<br>**Objections due: January 20, 2011, 4:00 p.m.  (ET)** |

--------------------------------------------------------------X

## DEBTOR NORTEL NETWORKS INC.'S MOTION FOR ENTRY
## OF AN ORDER ENFORCING THE AUTOMATIC STAY
## AGAINST AUTOMOTIVE RENTALS, INC.

Nortel Networks Inc. ("NNI") as debtor and debtor in possession (the "Debtor"),

hereby moves this Court (the "Motion") for the entry of an order substantially in the form

attached hereto as **Exhibit A**, (i) enforcing the automatic stay imposed by section 362 of title 11

of the United States Code (the "Bankruptcy Code") against Automotive Rentals, Inc. ("ARI")

with respect to ARI's continued withholding of payments due and owing to the Debtor, and any

other acts by ARI to collect, assess, or recover on all or any part of the prepetition claims it has

asserted against the Debtor; and (ii) granting the Debtor such other and further relief as the Court

deems just and proper.  In support of this Motion, the Debtor submits the Declaration of Mark

Taylor in Support of Debtor Nortel Networks Inc.'s Motion for Entry of an Order Enforcing the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

Automatic Stay Against Automotive Rentals, Inc., dated January 5, 2011, with the exhibits thereto (the "Taylor Declaration" or "Taylor Decl.") attached hereto as **Exhibit B**, the Declaration of Russell Eckenrod in Support of Debtor Nortel Networks Inc.'s Motion for Entry of an Order Enforcing the Automatic Stay Against Automotive Rentals, Inc., dated January 10, 2011, with the exhibits thereto (the "Eckenrod Declaration" or "Eckenrod Decl.") attached hereto as **Exhibit C**, and the Declaration of Randal Izzard in Support of Debtor Nortel Networks Inc.'s Motion for Entry of an Order Enforcing the Automatic Stay Against Automotive Rentals, Inc., dated January 5, 2011, with the exhibit thereto (the "Izzard Declaration" or "Izzard Decl.") attached hereto as **Exhibit D**, each of which has been filed contemporaneously herewith. NNI respectfully represents as follows:

<strong>Relief Requested</strong>

1.      By this Motion, the Debtor seeks the entry of an order pursuant to section 362(a)(6) of the Bankruptcy Code, enforcing the automatic stay against ARI with respect to ARI's ongoing withholding of certain of its payment obligations to the Debtor, which obligations have arisen in the ordinary course of the parties' dealings since the filing date pursuant to pre-petition contractual commitments, and that are otherwise due and owing (the "Sales Proceeds Obligations"). It further seeks to enforce the stay with respect to any other acts by ARI to collect, assess, or recover on all or any part of the prepetition claims it has asserted against the Debtor. For the reasons set forth below, the Motion should be granted in all respects.

<strong>Jurisdiction</strong>

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      ARI has submitted to this Court's jurisdiction by filing a proof of claim against

NNI in these proceedings, which is listed on the Debtor's claim register as claim number 3936

(the "Proof of Claim").[2]  See Langenkamp v. Culp, 498 U.S. 42, 44 (1990) (stating that "by

filing a claim against a bankruptcy estate the creditor triggers the process of allowance and

disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power"

(internal quotations deleted)).  The Proof of Claim, including the attachment thereto, is attached

to the Eckenrod Declaration as Exhibit A.

4.      The statutory bases for the relief requested herein are section 362(a)(6) of the

Bankruptcy Code and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules").

## Background

5.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[3] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.   The Debtors continue to

operate their remaining businesses and manage their properties as debtors in possession pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

---

[2]      ARI also submitted a Section 503(b)(9) Claim Request Form, which is listed on the Debtors' claim register as claim number 4669.

[3]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

**Facts Relevant to this Motion**

A.    **ARI Incurs the Sales Proceeds Obligations**

7.    On January 15, 1993, NNI (as successor to Northern Telecom Inc.) entered into an agreement (the "Master Lease Agreement," a copy of which is attached to the Izzard Declaration as Exhibit A), pursuant to which ARI provided leased vehicles to employees of NNI and to Nortel entities located in Canada and Mexico. (Izzard Decl. at Ex. A.) As set forth in Article 3.3 of the Master Lease Agreement, the leasing of each vehicle was governed by a distinct Motor Vehicle Lease Agreement between ARI and the Nortel entity that was the lessee ("MVLA"). (Id. at Ex. A, ¶ 3.3.) Any payments due under an MVLA, or credits accruing related to an MVLA, were solely the obligations of the lessee executing the MVLA, whether NNI or any other Nortel entity. (Id. at Ex. A, Amendment No. 1, ¶ 1.2.)

8.    Under Article 5 of the Master Lease Agreement, rental payments, plus any applicable administrative fees, taxes, and interest, were documented in a monthly invoice sent to each lessee by ARI. (Id. at Ex. A, ¶ 5.) Under Article 12 of the Master Lease Agreement, as amended on December 22, 1998, upon the termination or expiration of the MVLA for a vehicle leased under the Master Lease Agreement, ARI became obligated to use its best efforts to sell that vehicle, and remit the amount of any excess proceeds of such sale (less the costs of sale) over the depreciated value of the vehicle to the Nortel entity that was the lessee of that vehicle. (Id. at Ex. A, ¶ 12.)

9.    As NNI's business contracted with the filing of its chapter 11 petition and the sale of various assets, pursuant to the terms of the Master Lease Agreement, many NNI-leased vehicles were returned to ARI, and substantial amounts of excess sale proceeds (the "Sales Proceeds Obligations") became due from ARI to NNI.

**B.      ARI Submits Its Proof of Claim**

10.      On September 28, 2009, ARI submitted the Proof of Claim, seeking $294,336.23 for unpaid prepetition invoices. (Eckenrod Decl. at Ex. A.)  As noted below, the Debtor reserves its rights to object to amounts contained in the Proof of Claim, which, among other things, includes invoices allegedly due and owing not by NNI but by the Canadian entity Nortel Networks Corporation ("NNC"), in the sum of $54,361.36.

**C.      ARI Deliberately Withholds Payment of the Sales Proceeds Obligations**

11.      In December 2009, given the substantial amount of payments due from ARI to NNI for the excess sales proceeds from the leased vehicles, Mr. Taylor spoke by telephone with Richard E. Moyer, a Credit and Litigation Supervisor for ARI. (Taylor Decl. at ¶¶ 4-5.)  During that conversation, Mr. Taylor noted ARI's failure to pay the amounts owed by ARI to NNI under the Master Lease Agreement. (Id. at ¶ 5.)  Mr. Moyer's response was that ARI would not at that time pay the amounts owed, but would continue to provide NNI with statements of account documenting such amounts. According to the final Reconciliation Statement provided by ARI to NNI, dated August 9, 2010, (the "Reconciliation Statement," a copy of which is attached to the Taylor Declaration as Exhibit A), ARI calculates the amount of the Sales Proceeds Obligations it owes to NNI and of which it is currently withholding payment as $484,699.58.[4] (Id. at Ex. A.)

---

[4]      ARI's calculation of $484,699.58 owed to NNI is based on its application of a formula set forth in Article 12 of the Master Lease Agreement for excess vehicle sale proceeds to be paid to NNI, netted against outstanding lease payment obligations owed by NNI to ARI. NNI submits that the amount ARI is improperly withholding in violation of the automatic stay is at least the $484,699.58 calculated by ARI. Specifically, Article 12.2 of the Master Lease Agreement provides that, upon ARI's sale of leased vehicles that NNI has returned to it, if the proceeds of that sale (net of costs ARI incurs in selling the vehicle) exceed the vehicle's Depreciated Value, ARI must pay NNI the excess. Article 12.3 of the Master Lease Agreement defines Depreciated Value as the vehicle's Capitalized Value (in essence, the vehicle's initial cost) less the Total Depreciation Reserve paid by NNI. Total Depreciation Reserve is in turn defined as the product of "(a) the number of months for which the monthly rental fee was paid by [NNI]," "(b) the Capitalized Value of such vehicle" and "(c) the [applicable] monthly depreciation percentage . . . for the Depreciation Period applicable to such vehicle." Neither the formula set out in Article 12.2 nor the definition set forth in Article 12.3 of the Master Lease Agreement  provides for any adjustments to the amount of credits ARI owes NNI based on subsequent events, or otherwise. The only deduction applied in the calculation is for ARI's

12.     In September 2010, Mr. Taylor again had a telephone conversation with Mr. Moyer regarding amounts owed to NNI. (Id. at ¶¶ 7-8.) At that time, Mr. Moyer stated that ARI would not pay any amount owed to NNI until Nortel Networks Limited ("NNL"), a Canadian entity, paid approximately $100,000 to ARI for amounts allegedly owed by NNC to ARI. (Id. at ¶ 8.) Mr. Taylor informed Mr. Moyer that the amounts allegedly owed by NNC to ARI could not be offset against ARI's obligations to NNI, as NNI and NNC were different entities from different countries. At no time did Mr. Taylor agree to any offset. (Id.) Mr. Taylor then requested contact information for ARI's counsel so that NNI's counsel could conduct any further discussion that ARI wished to have with NNI regarding the amounts owed. (Id.) At no time during that or any prior conversation did Mr. Moyer tell Mr. Taylor that he considered the Master Lease Agreement to have been terminated or rejected, nor is Mr. Taylor aware of any such termination or rejection. (Id.) Since their conversation in September 2010, Mr. Taylor has had no further conversations with Mr. Moyer or any other employee of ARI regarding amounts owed to NNI.

13.     On October 4, 2010, counsel for NNI sent a letter to counsel for ARI (a copy of which is attached to the Eckenrod Declaration as Exhibit B, the "NNI Counsel Letter"), noting ARI's failure to pay amounts owed to NNI under the Master Lease Agreement and stating that that such withholding of payment violates the automatic stay. (Eckenrod Decl. at Ex. B.) The letter also stated that, in the absence of a resolution of the issue, NNI would take all actions necessary to protect its rights under the automatic stay. (Id. at Ex. B, p. 2.) In response to the NNI Counsel Letter, ARI's legal counsel sent a letter to counsel for NNI on October 11, 2010 (a

---

costs of sale, as set forth in Article 12.2. Accordingly, the amount of ARI's payment obligation to NNI for a returned vehicle is fixed as of the time that ARI disposes of the vehicle.

copy of which is attached to the Eckenrod Declaration as Exhibit D, the "ARI Counsel Letter"). (Id. at Ex. C.)  In the ARI Counsel Letter, counsel for ARI stated that the Master Lease Agreement had been previously rejected and asserted that Mr. Taylor had "worked out" a "resolution" with ARI, pursuant to which ARI would pay a specified amount to NNI, giving ARI credit for the amount NNC allegedly owes it.  (Id.)  There is no factual basis for either statement.[5] (Taylor Decl. at ¶ 8.)

14.    As of the date of this Motion, ARI has failed to pay any amount on the Sales Proceeds Obligations, which remain due and owing to NNI.  (Id. at Ex. A.)  There is no legal or factual justification for ARI's continued withholding of payment of the Sales Proceeds Obligations in violation of the automatic stay.

**D.    NNI Files the Preference Action**

15.    On October 4, 2010, NNI also filed an adversary proceeding (Adv. Proc. No. 10-53167) pursuant to sections 547, 550, 551, and 502(d) of the Bankruptcy Code, in which it seeks to avoid and recover as preferential transfers $982,080.84 in payments made to ARI in the 90-day period immediately prior to the petition date.  ARI served its answer on October 29, 2010, denying any liability and asserting various affirmative defenses.[6]

---

[5]    For example, ARI can point to no evidence of the "rejection" of the Master Lease Agreement. Indeed, all of the evidence is to the contrary.  Not only did ARI, in the phone conversations between Mr. Moyer and Mr. Taylor, in the Reconciliation Statements showing substantial payables from ARI to NNI, or otherwise, never state or indicate in any way that it considered the Agreement to be terminated or rejected, but the Court can take judicial notice of the fact that none of the thirty-two Notices of Rejection of Executory Contracts And/Or Personal Property Leases filed in these Cases identifies the ARI Master Lease Agreement as having been rejected. (Docket Nos. 3768, 3726, 2990, 2744, 2691, 2579, 2204, 2184, 2183, 2182, 2178, 2116, 2080, 1931, 1661, 1576, 1572, 1480, 1384, 1376, 1258, 1148, 1019, 917, 901, 872, 812, 794, 725, 701, 679, 661.)  Equally without basis is the supposed "resolution" referred to in the ARI Counsel Letter.  It is no surprise that ARI now appears to have retreated from these unsupported positions stated in its Counsel Letter.

[6]    In its answer, ARI asserts a "new value" defense with respect to the same amounts it netted against the Excess Sales Proceeds in the Reconciliation Statement, amounts which it also seeks to recover in its Proof of Claim and in its Section 503(b)(9) Claim Request Form.  Such triple or quadruple counting is impermissible; the "new value" defense, the Proof of Claim, and the Claim Request Form are invalid if in fact ARI is entitled to deduct those amounts from the excess sale proceeds owed NNI.

**Basis for Relief**

16.     Under section 362(a)(6) of the Bankruptcy Code, it is a violation of the automatic

stay for a creditor to engage in "any act to collect, assess, or recover a claim against the debtor

that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). This section has

generally been "read broadly to enforce Congress's purpose of preventing harassment of

debtors." United States v. Harchar, 371 B.R. 254, 269 (N.D. Ohio 2007) (citing In re Duke, 79

F.3d 43, 45 (7th Cir. 1996)). See In re Hellums, 772 F.2d 379, 381 (7th Cir. 1985) (stating that

in enacting section 362(a)(6), "Congress broadly sought to prevent creditors 'from attempting *in*

*any way* to collect a prepetition debt'" (citation omitted)); see also In re Sechuan City, Inc., 96

B.R. 37, 41 (Bankr. E.D.Pa. 1989) ("Given the important functions served by the automatic stay,

the provisions of subsection (a)(6) have been broadly construed." (citing numerous cases)).

17.     One example of such a prohibited act to "collect, assess or recover a claim" is the

withholding of payments that become due postpetition. See Lee v. Schweiker, 739 F.2d 870, 876

(3d Cir. 1984) (Social Security Administration's withholding of debtor's postpetition social

security benefit in an attempt to recover certain prepetition overpayments was a violation of the

automatic stay); see also In re University Medical Center, 973 F.2d 1065, 1082 (3d Cir. 1992)

(HHS withholding of postpetition reimbursement on basis of overpayment for prepetition

services violated automatic stay); see also In re Radcliffe, 563 F.3d 627, 630 (7th Cir. 2009)

(withholding of debtor's post-petition pension benefits for six months without seeking relief

from automatic stay was a violation of section 362(a)(6)); In re Tidewater Memorial Hospital,

Inc., 106 B.R. 876, 882 (Bankr. E.D. Va. 1989) (action of Medicare authorities in withholding

postpetition payments to recoup prepetition overpayments was a violation of the automatic stay

under sections 362(a)(3) and 362(a)(6)).

18.    Here, ARI holds an alleged prepetition claim against NNI, filed in the amount of $294,336.23.[7] (Eckenrod Decl. at Ex. A.) Despite the explicit notice in the NNI Counsel Letter (Id. at Ex. D, p. 1), and despite two phone conversations between Mr. Moyer and Mr. Taylor in which Mr. Taylor raised the issue of amounts owed by ARI to NNI (Taylor Decl. at ¶¶ 4-5, 7-8), ARI continues to withhold payment without seeking, let alone obtaining, relief from the stay. ARI's withholding of payments on the Sales Proceeds Obligations constitutes an "act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case" under section 362(a)(6), and violates the automatic stay.

19.    Moreover, ARI has taken its wrongful collection efforts one step further, by seeking to reduce the amount of the Sales Proceeds Obligations to NNI by a prepetition amount allegedly owed by NNC to ARI.  (Id. at ¶ 8.) That ARI contends that a Canadian debtor owes it money neither justifies nor provides any excuse for its failure to pay the Sales Proceeds Obligations.

20.    Having failed even to seek, let alone obtain, relief from the stay before withholding the fully liquidated Sales Proceeds Obligations owed to NNI, ARI has violated and continues to violate the automatic stay under section 362(a)(6) of the Bankruptcy Code.[8]

21.    Accordingly, the Debtor is entitled to an order enforcing the automatic stay against ARI with respect to any and all acts prohibited by section 362(a)(6), including, but not

---

[7]    The Debtor reserves its rights to object to any and all claims asserted by ARI, including amounts contained in the Proof of Claim. The Proof of Claim includes, for example, invoices allegedly due and owing not by NNI but by NNC, in the sum of $54,361.36. Such amounts are completely separate from any amounts that NNI may owe to ARI.

[8]    Indeed, in light of the facts and the record, even if ARI had sought relief from the stay, there would be no basis for such relief, and no basis for ARI to withhold payment. ARI has not provided any justification for its failure to pay; rather, it has simply informed the Debtor that it will not pay the amount owed.

limited to, its continued withholding of payments on the Sales Proceeds Obligations.[9]  As such, the Court should grant the Motion and enter the requested Order enforcing the automatic stay.

### No Prior Request

22.     No prior request for the relief sought herein has been made to this or any other court.

### Notice

23.     Notice of the Motion has been given via first class mail or hand delivery to (i) the counsel for ARI as identified on the Proof of Claim; (ii) the U.S. Trustee; (iii) the counsel to the Committee; (iv) the counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases.  The Debtor submits that under the circumstances no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

---

[9]     The Debtor reserves its rights to seek further relief from the Court to enforce the Order sought herein if such Order is issued.

WHEREFORE, the Debtor respectfully requests that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  January 10, 2011
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Neil Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa T. Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*