# EXHIBIT C

**Eckenrod Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------X
:
*In re*                                                                          :          Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                                :          Case No. 09-10138 (KG)
:
                                        Debtors.                    :          Jointly Administered
:
:
:
-------------------------------------------------------------X

**DECLARATION OF RUSSELL ECKENROD IN SUPPORT
OF DEBTOR NORTEL NETWORKS INC.'S MOTION FOR
ENTRY OF AN ORDER ENFORCING THE AUTOMATIC
STAY AGAINST AUTOMOTIVE RENTALS, INC.**

I, Russell Eckenrod, hereby declare as follows:

1.         I am an attorney duly licensed to practice law and a member in good standing

with the New York State Bar.  I am an associate at the law firm of Cleary Gottlieb Steen &

Hamilton LLP, co-counsel to the Debtors in these cases.

2.         I submit this Declaration in support of the Motion of Debtor Nortel Networks Inc.

("NNI") for Entry of an Order Enforcing the Automatic Stay Against Automotive Rentals, Inc.

("ARI")[2].  The purpose of this Declaration is to place certain exhibits referred to in the Motion

before the Court.

---

[1]         The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]         Capitalized terms not defined herein shall have the same meanings as in the Motion.

3.      Attached hereto as **Exhibit A** is a true and correct copy of the Proof of Claim filed by ARI against NNI in these proceedings, dated September 25, 2009, which is listed on the Debtor's claim register as claim number 3936.

4.      Attached hereto as **Exhibit B** is a true and correct copy of the letter from James L. Bromley to John V. Fiorella, dated October 4, 2010.

5.      Attached hereto as **Exhibit C** is a true and correct copy of the letter from John V. Fiorella to James L. Bromley, dated October 11, 2010.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 10, 2011

Russell Eckenrod

# EXHIBIT A

**United States Bankruptcy Court for the District of Delaware**
Nortel Networks Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5075
New York, NY 10150-5075

# PROOF OF CLAIM

| In Re:<br>Nortel Networks Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 09-10138 (KG)<br>Jointly Administered |
|---|---|

| Name of Debtor Against Which Claim is Held<br>**Nortel Networks Inc.** | Case No. of Debtor<br>**09-10138 (KG)** |
|---|---|

Filed: USBC - District of Delaware
Nortel Networks Inc., Et Al.
09-10138 (KG)        0000003936

|||||||||||||||||| (barcode)

**NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. A separate claim form must be used for claims asserted under 11 U.S.C. § 503(b)(9).**

## THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

NNI (MERGE2.DBF,SCHED_NO) SCHEDULE #: 100211160*****
AUTOMOTIVE RENTALS INC.
9000 MIDLANTIC DRIVE, PO BOX 5039
MT. LAUREL, NJ 08054

Attn: R. Moyer

rmoyer@arifleet.com

Telephone number:  856-914-7555     Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:        Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are filing a claim against any of the Canadian Debtors for the same claim herein in their creditor protection proceedings pending in Canada.

1. **Amount of Claim as of Date Case Filed:** $ *294,336.23*

   If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

   If all or part of your claim is entitled to priority, complete Item 5.

   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

2. **Basis for Claim:** Leased Vehicles, Fleet Services
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** #0454, 7A50
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: _____

   Value of Property: $_____   Annual Interest Rate _____%

   Amount of arrearage and other charges as of time case filed included in secured claim, if any:

   $_____   Basis for perfection: _____

   Amount of Secured Claim: $_____   Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

   Specify the priority of the claim:

   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

   ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

   **Amount entitled to priority:**

   $_____

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

**FOR COURT USE ONLY**

**FILED / RECEIVED**

**SEP 28 2009**

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

| Date:<br>9/26/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Richard E. Moyer, Credit & Litigation Supervisor |
|---|---|

*Penalty for presenting fraudulent claim:*  Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Prepared by: R.E. Moyer        Nortel Networks, Inc.              Filed CH-11, 1/14/2009
                               Lessee # 0454, 3 7A50              Case No.: 09-10138-KG
                               Proof of Claim                     District of Delaware

| Lessee | Division | Date | Invoice No. | Due Date | Amount | Amount Due | Pre-Petiiton | |
|--------|----------|------|-------------|----------|--------|------------|--------------|---|
| 0454 | 01 | 12/25/2008 | B26714 | 1/31/2009 | 237,715.44 | 107,355.36 | 107,355.36 | |
| 0454 | 01 | 12/26/2008 | M64546 | 1/31/2009 | 104,639.48 | 104,639.48 | 104,639.48 | |
| 0454 | 02 | 12/25/2008 | B26714 | 1/31/2009 | 2,637.00 | 1,190.90 | 1,190.90 | |
| 0454 | 06 | 12/25/2008 | B26714 | 1/31/2009 | 911.68 | 411.73 | 411.73 | |
| 0454 | 01 | 2/2/2009 | A65316 | 2/12/2009 | 66.25 | 66.25 | 66.25 | |
| 0454 | 01 | 1/27/2009 | M82694 | 2/28/2009 | 57,522.59 | 26,311.15 | 26,311.15 | |
| | | | Total | | | 239,974.87 | 239,974.87 | USD |

| Lessee | Division | Date | Invoice No. | Due Date | Amount | Amount Due | Pre-Petiiton | |
|--------|----------|------|-------------|----------|--------|------------|--------------|---|
| 7A50 | 01 | 12/26/2008 | M61681 | 1/31/2009 | 31,293.34 | 31,293.34 | 31,293.34 | |
| 7A50 | 01 | 1/27/2009 | M79907 | 2/28/2009 | 47,709.53 | 36,514.27 | 36,514.27 | |
| | | | Total | | | 67,807.61 | 67,807.61 | CND |

$67,807.61 Converted to USD @ $1CAD= $.8017 USD              54,361.36

| Total Pre-Petition Claim | 294,336.23 |
|--------------------------|------------|

Due to the volume of pages ARI will supply copies of all invoices upon request.

ORIGINAL                                              AMENDED

NTI Agreement No. 730280                    NTI/Lessee Agreement No. 730281

## AMENDMENT NO. 1
### to
### VEHICLE LEASE AGREEMENT

AMENDMENT No. 1 to that certain Vehicle Lease Agreement (NTI Agreement No. 730280) by and between Northern Telecom Inc. ("Lessee") and Automotive Rentals, Inc. ("ARI"), said Amendment No. 1 to be effective as of October 25, 1994.

WHEREAS, Lessee and ARI entered into a Vehicle Lease Agreement, NTI Agreement No. 730280 ("Agreement"); and

WHEREAS, Lessee and ARI desire to make the provisions of the Agreement applicable to the utilization worldwide of the vehicle leasing services of ARI and ARI's affiliates by Lessee or by any member or members of the group of companies consisting of Lessee's parent company, Northern Telecom Limited ("NTL"), and any direct or indirect subsidiary entity of NTL other than Lessee (collectively, "Lessee Affiliates" and each a "Lessee Affiliate"), in addition to Lessee; and

WHEREAS, Lessee and ARI wish to amend the Agreement to so expand the provisions of the Agreement and make other changes;

NOW, THEREFORE, in consideration of the premises and the promises set forth herein, Lessee and ARI agree that the Agreement is amended, effective as of October 25, 1994, as follows:

1.   The following new sections 1.2 and 1.3 are hereby added to Article 1 of the Agreement as follows:

   "1.2   Both Lessee and Lessee Affiliates shall have the right to issue orders hereunder. For the purposes of this Agreement and its interpretation, and unless otherwise indicated, the use of the term "Lessee" shall be deemed a reference to either Lessee or to the Lessee Affiliate, whichever issued the lease order involved. A lease order issued hereunder shall create contractual rights and obligations solely between Lessee or a Lessee Affiliate, whichever issued the lease order, and ARI and any applicable ARI Affiliate (as hereinafter defined), and neither Lessee nor a Lessee Affiliate shall have any obligation or liability to ARI and any applicable ARI Affiliate with respect to a lease order issued by the other to ARI or the applicable ARI Affiliate.

   1.3   ARI has entered into this Agreement for and on behalf of itself and those of its affiliates which are set forth below ("ARI Affiliates"). ARI represents and warrants that each entity listed below is an affiliate of ARI, that ARI has full power and authority to negotiate this Agreement for itself and for and on behalf of each listed ARI Affiliate, and that each listed ARI Affiliate has agreed in writing to be bound by the terms and conditions of this Agreement as if it were a signatory hereto and as if each reference to ARI herein were a reference also to any applicable ARI Affiliate. The applicable ARI Affiliate, if any, shall be determined by the reference in the applicable lease order to the lessor. ARI shall indemnify and hold Lessee and the Lessee Affiliates free and harmless from any and all claims, losses, damages, liabilities, injuries, costs and expenses (including without limitation reasonable attorneys' fees) arising from or in any way connected with any breach by an ARI Affiliate of this Agreement, including without limitation any disavowal by any ARI Affiliate of this Agreement or any obligation under this Agreement.

crlari94.082195

| Country | Affiliate's Legal Name | Address |
|---------|------------------------|---------|
| Canada | ARI Canada Limited | 1270 Central Parkway West<br>Suite 600<br>Mississauga, Ontario<br>Canada L5C 4P4 |
| Mexico | ARI Fleet Services S.A. de C.V. | _____<br>_____<br>_____<br>_____ " |

2.    Existing Section 2.1 is hereby superseded in its entirety and the following new Section 2.1 is inserted in lieu thereof with respect to all new lease orders placed on or after October 25,1994:

   "**2.1. Ordering Vehicles.** Lessee shall furnish ARI a written or electronically transmitted order for each vehicle to be leased hereunder, specifying the make, model, equipment and a delivery point within the applicable country. The Capitalized Value, as defined in Article 6, for vehicles purchased by ARI from a dealer's inventory ("Stock Purchases") and for vehicles purchased by ARI which are specially ordered by a dealer from the manufacturer ("Factory Orders") shall be determined in accordance with Exhibit A. For vehicles to be leased hereunder with delivery points in Canada, Puerto Rico or Mexico, ARI shall advise Lessee of the Capitalized Value for such vehicles prior to Lessee's issuance of an order therefor."

3.    Existing Section 17.1 is hereby superseded in its entirety and the following new Section 17.1 is inserted in lieu thereof with respect to all new lease orders placed on or after October 25, 1994:

   "**17.1** Lessee will carry for the benefit of Lessee, Lessee's employees and others who operate the vehicle with the permission of Lessee, and pay the cost thereof, insurance against liability for bodily injury in a minimum limit of $1,000,000, and against liability for property damage in a minimum limit of $100,000. Lessee will furnish written evidence of said insurance and ARI shall be named as an additional insured (where permitted by local custom) with respect to Lessee's indemnification obligations under Article 18.1. Lessee shall bear all risk of loss or damage to each leased vehicle and the contents thereof. In accordance with Article 1.2 hereof, the term "Lessee" as used in this Article shall be deemed a reference to either Lessee or to the Lessee Affiliate, whichever issued the lease order involved."

4.    Article 32 of the Agreement is hereby superseded in its entirety and the following new Article 32 is inserted in lieu thereof with respect to all new lease orders placed on or after October 25, 1994:

### "ARTICLE 32
### Vehicles Leased in Countries Other Than the United States of America

   32.1    The rental fees for any vehicles delivered in any country outside of the United States of America for lease pursuant to Article 2.4 shall be specified in the official currency of such country. Lessee, at its option but with the prior written consent of ARI, may pay the rental fees for any vehicles delivered in such country for lease pursuant to Article 2.4 in either U.S. Dollars or in the official currency of such country, and, if the latter option is chosen, the rate of exchange shall be that specified in The Wall Street Journal for the date on which payment of the applicable monthly rental fee is due."

crlari94.082195

5.   A new Article 33 is hereby added to the Agreement as follows:

## "ARTICLE 33
### Electronic Equipment and Software

33.1    ARI shall furnish, at ARI's expense, all hardware, including printers and modems, software and training to Lessee's employees pertaining to all aspects of electronically generated data produced pursuant to this Agreement. ARI represents and warrants that it has right and authority to grant to Lessee the right to use the software being furnished under this Agreement and hereby grants such right to Lessee for use under this Agreement at no additional charge. ARI further agrees to provide any required maintenance and upgrades for the hardware and software furnished. Risk of loss for all such hardware and software shall be borne by ARI. Such hardware and software shall be returned to ARI when all services of ARI and any obligations of Lessee to be performed under this Agreement are completed."

6.   Exhibit B to the Agreement is hereby superseded with respect to all new lease orders placed on or after October 25, 1994, and the attached Exhibit B(1) dated October 25, 1994, shall apply with respect to such lease orders.

7.   In Exhibit D to the Agreement, the first paragraph is hereby superseded and the following new paragraph is inserted in lieu thereof:

"ARI shall provide the Fleet Management Services as described herein, for the fee set forth herein on a vehicle by vehicle basis as specified by Lessee, for all vehicles leased in the United States and Canada. Fleet Management Services as described in this Exhibit D to be provided by ARI for any vehicles leased in countries other than the United States and Canada shall be subject to availability in such country and subject to fees for such services being mutually agreed upon by the parties."

8.   In Exhibit D to the Agreement, the following is hereby added under the section entitled "PLAN IX Fleet Insurance Management Services - Driver Abstract Program":

"Additional services under this Plan IX shall include the following:

Accident Reporting/Claims Analysis/Appraisals and Repairs:

ARI shall perform the everyday administration of accident reporting and claims handling for all physical damage (collision, comprehensive, fire and theft) claims relating to the leased vehicles. Such services shall include:

a.   recording and setting up of claim files for each accident

b.   reporting the claim to Lessee's insurance company as necessary

c.   arranging for inspection and/or appraisals of damaged vehicles

d.   authorization of repairs via purchase order and expediting of repairs with body shops

e.   payment of repairs to authorized body shops

f.   total loss and salvage disposition, only when so requested by Lessee

g.   monthly invoicing of paid repairs to Lessee

h.   monthly claim summary report

3

crlari94.082195

All appraiser/inspection fees and physical damage related charges for storage, towing, release, etc. will be the responsibility of the Lessee.

Subrogation Recovery Service:

ARI shall provide the following program which Lessee may use in conjunction with the Accident Reporting/Claims Analysis/Appraisals and Repairs service described above, or as a separate service in itself.

ARI will pursue recovery of property damage claims against negligent adverse parties and/or their insurance carriers resulting from accident claims. Such services shall include:

a.  upon prior approval by Lessee, issue prompt claim notice to negligent adverse parties

b.  complete accident investigation to ascertain responsibility

c.  follow-up recovery status

d.  upon prior approval by Lessee, negotiate recovery settlements

e.  upon receipt of specific written instruction from Lessee and using attorneys approved by Lessee, commence legal action against adverse parties when warranted and necessary

f.  upon prior approval by Lessee, trace and pursue recovery directly against uninsured motorists

All appraiser/inspection fees and investigative charges for police reports, motor vehicle checks and credit checks will be the responsibility of the Lessee.

All legal costs must be approved by Lessee before such expenses are incurred.

Lessee shall pay a fee for this service equivalent to 15% of the recovery made."

9.  In Exhibit D to the Agreement, in the section entitled "FEES", the phrase "$10.50 per leased vehicle per month" is hereby superseded and the phrase "$11.25 per leased vehicle per month" is inserted in lieu thereof.

10. In Exhibit H to the Agreement, wherever there is a reference to the "January 15, 1993 Agreement" such reference is hereby amended by the addition of the words ", as amended," immediately after such reference.

11. The Agreement as amended by this Amendment No. 1 shall be identified as:

"NTI/Lessee Agreement No. 730281"

4

crlari94.082195

12. This Amendment No. 1 constitutes all of the amendments to the Agreement and supersedes all prior negotiations and writings with respect thereto. In all other respects the Agreement shall remain unchanged and is hereby ratified and confirmed by the parties hereto.

IN WITNESS WHEREOF, the parties have caused this Amendment No. 1 to be signed by their duly authorized representatives to be effective as of the date first above written.

**NORTHERN TELECOM INC.**

By:_____

Print Name:_____

Title:_____

Date:_____

**AUTOMOTIVE RENTALS, INC.**

By: *M F Laporta*

Print Name: *M. F. LAPORTA*

Title: *Pres.*

Date: *2 - 6 - 96*

crlari94.082195

October 25, 1994
Page 1 of 1

## EXHIBIT B(1)

For all vehicles leased in the United States:

For each leased vehicle the monthly rental fee, during its Depreciation Period, shall be computed by multiplying the vehicle's Capitalized Value by the applicable Depreciation Rate percentage shown hereinbelow. The monthly rental fee shall also include the addition of interest which shall be calculated for each calendar month of the lease term (on the basis of a 360-day year) for the actual number of days elapsed from the effective date of the lease for such vehicle or the first day of the applicable month of the lease term, whichever shall be later, to the end of the applicable month of the lease term at _____*_____ basis points (i.e. _____*_____ percent) per annum in excess of the interest rate quoted by Societe Generale (Bank) as its cost of thirty (30) day funds based upon the London Interbank Offered Rate (LIBOR) adjusted for reserve requirements of the Federal Reserve Bank in New York on the twenty-fifth (25th) day of the month immediately preceding such month. For medium and heavy duty trucks, the applicable percentage used to calculate the monthly rental fee shall be agreed upon by ARI and Lessee. The interest rate shall be adjusted each month and such adjustment(s) shall be effective on the first day of the month being billed. The interest shall be applied to the Depreciated Value of each leased vehicle at the end of the month prior to the month being billed.

Example:
*  12.5 basis points (i.e., 1/8 Percent for Factory Ordered Vehicles)
or
100 basis points (i.e., 1 Percent for Stock Purchased Vehicles)

Depreciation Period:        Months 1 - 50
Monthly Depreciation Rate:  2.0%
Monthly Administrative Fee: $7.50 Per Leased Vehicle per Month

For all vehicles leased in Canada:

For each leased vehicle the monthly rental fee, during its Depreciation Period, shall be computed by multiplying the vehicle's Capitalized Value by the applicable Depreciation Rate percentage shown hereinbelow. The monthly rental fee shall also include the addition of interest which shall be calculated for each calendar month of the lease term (on the basis of a 360-day year) for the actual number of days elapsed from the effective date of the lease for such vehicle or the first day of the applicable month of the lease term, whichever shall be later, to the end of the applicable month of the lease term at 145 basis points (i.e. 1.45 percent) per annum in excess of the 30-Day Bankers Acceptance Rate as quoted by The Financial Post as of the fifteenth (15th) day of the month in which each invoice is generated. For medium and heavy duty trucks, the applicable percentage used to calculate the monthly rental fee shall be agreed upon by ARI and Lessee. The interest rate shall be adjusted each month and such adjustment(s) shall be effective on the first day of the month being billed. The interest shall be applied to the Depreciated Value of each leased vehicle at the end of the month prior to the month being billed.

Depreciation Period:        Months 1 - 50
Monthly Depreciation Rate:  2.0%
Monthly Administrative Fee: $10.00 Canadian Per Leased Vehicle per Month

For all vehicles leased in Mexico:

For each leased vehicle the monthly rental fee, during its Depreciation Period, shall be computed by multiplying the vehicle's Capitalized Value by the applicable Depreciation Rate percentage shown hereinbelow. The monthly rental fee shall also include the addition

crlari94.082195

of interest which shall be calculated for each calendar month of the lease term (on the basis of a 360-day year) for the actual number of days elapsed from the effective date of the lease for such vehicle or the first day of the applicable month of the lease term, whichever shall be later, to the end of the applicable month of the lease term at 575 basis points (i.e. 5 and 3/4 percent) per annum in excess of the interest rate quoted by Societe Generale (Bank) as its cost of thirty (30) day funds based upon the London Interbank Offered Rate (LIBOR) adjusted for reserve requirements of the Federal Reserve Bank in New York on the twenty-fifth (25th) day of the month immediately preceding such month. For medium and heavy duty trucks, the applicable percentage used to calculate the monthly rental fee shall be agreed upon by ARI and Lessee. The interest rate shall be adjusted each month and such adjustment(s) shall be effective on the first day of the month being billed. The interest shall be applied to the Depreciated Value of each leased vehicle at the end of the month prior to the month being billed.

| | | |
|---|---|---|
| Depreciation Period: | Months 1 - 50 | |
| Monthly Depreciation Rate: | 2.0% | |
| Monthly Administrative Fee: | $.50 | per $1,000 of Capitalized Value of the |
| | 0.02050 | Leased Vehicle |

SECOND AMENDMENT TO VEHICLE LEASE AGREEMENT
DATED:  MARCH 27, 1997

The Lease Agreement entered into as of the 15th day of January, 1993, by and between Automotive Rentals, Inc., a New Jersey Corporation, with its principal place of business at 9000 Midlantic Drive, PO Box 5039, Mt. Laurel, New Jersey 08054, hereinafter called "ARI" and Northern Telecom Inc., having its principal place of business at 200 Athens Way, Nashville, Tennessee 37228-1397, hereinafter called "Lessee" is hereby amended as follows:

Effective April 1, 1997, Exhibit D - Fleet Management Services; Plan X - Fringe Benefit Report Program shall be deleted in its entirety and the Fee section shall be amended to reflect $10.75 per leased vehicle per month.

All other terms and conditions of the Vehicle Lease Agreement dated January 15, 1993, shall remain unchanged.  This Amendment shall be attached to and become part of the Vehicle Lease Agreement dated January 15, 1993.

NORTHERN TELECOM INC.                    AUTOMOTIVE RENTALS, INC.
(LESSEE)                                 (ARI)

By: _C-Colin Male_____        By: _____

Title: _AVP Corp. Supply mgmt._  Title: _9n IN)_____

Witness: _Barbara A. Brown_      Witness: _Joan Catani_____

Date: _5 May 97_____    Date: _5-20-97_____

_BAB 4/4/97_

## THIRD AMENDMENT TO VEHICLE LEASE AGREEMENT
### DATED: APRIL 9, 1998

AMENDMENT to the Agreement dated as of the 15th day of January, 1993, by and between Automotive Rentals, Inc., a New Jersey Corporation, with its principal place of business at 9000 Midlantic Drive, PO Box 5039, Mt. Laurel, New Jersey 08054, hereinafter called "ARI" and Northern Telecom Inc., having its principal place of business at 200 Athens Way, Nashville, Tennessee 37228-1397, hereinafter called "Lessee" is hereby amended as follows:

WHEREAS, the Vehicle Lease Agreement dated January 15, 1993 (as heretofore amended, the "Agreement") has heretofore been entered into between ARI and Lessee:

WHEREAS, ARI and Lessee mutually desire to amend certain provisions as hereinafter provided:

Effective April 1, 1998, Exhibit D - Fleet Management Services; Plan IX - Fleet Insurance Management Services - Driver Abstract Program shall be instituted in the County of Canada and amended to read as follows:

Upon receipt of driver identification and license information, ARI shall provide to Lessee, if available, motor vehicle accident records and/or driver violation reports from the various provinces on each individual driver. Lessee shall pay the standard fee for the cost of the abstract. ARI shall not be liable for any damages or costs arising out of or connected with the information provided hereunder.

Fee: $10.00 per occurrence in addition to the cost of the abstract.

All other terms and conditions of the Vehicle Lease Agreement dated January 15, 1993, shall remain unchanged. This Amendment shall be attached to and become part of the Vehicle Lease Agreement dated January 15, 1993.

NORTHERN TELECOM INC.
(LESSEE)

By: _Monica R Lisle_

Title: _Asst. Treasurer_

Witness: _Julie Holland_

Date: _2/10/99_

AUTOMOTIVE RENTALS, INC.
(ARI)

By: _Daniel Willed_

Title: _Contract Mgr_

Witness: _Caula Marino_

Date: _2-2-99_

# AMENDMENT NO. 4
## TO
## VEHICLE LEASE AGREEMENT

THIS AMENDMENT NO. 4 TO VEHICLE LEASE AGREEMENT ("Amendment") is entered into this 22nd day of December, 1998 by and between NORTHERN TELECOM INC., a Delaware corporation with offices at 200 Athens Way, Nashville, Tennessee 37228-1397 ("Lessee") and AUTOMOTIVE RENTALS, INC., a New Jersey corporation with its principal place of business at 9000 Midlantic Drive, PO Box 5039, Mt. Laurel, New Jersey 08054 ("ARI").

### R E C I T A L S :

a.      Lessee and ARI entered into that certain Vehicle Lease Agreement dated as of January 15, 1993, as subsequently amended ("Agreement").

b.      The parties now desire to further amend the Agreement in order to allow Lessee to treat the lease, for accounting purposes, as an operating lease rather than a capital lease.

NOW, THEREFORE, in consideration of the premises set forth herein, the parties hereto hereby agree as follows:

1.      Article 12.2 is deleted in its entirety and replaced with the following:

"With respect to any vehicles sold or otherwise disposed of pursuant to Article 12.1 on or after January 1, 1999:

   (a)     If the amount of the Net Resale Proceeds is greater than the Depreciated Value, ARI shall remit to Lessee, as a rental adjustment, 100% of any such excess amount.

   (b)     If the amount of the Net Resale Proceeds are less than the Depreciated Value, Lessee shall remit to ARI, as a rental adjustment, the amount of the deficiency; provided, however, that with respect to vehicles which have mileage less than the product of 1,667 and the number of months the vehicles has been under lease, if:

      (i)     Lessee has not extended the term of the lease beyond the Initial Lease Term and the Net Resale Proceeds are less than 20% of the Capitalized Value of such vehicle as of the beginning of its Initial Lease Term ("Minimum Resale Proceeds"), ARI shall guarantee that the Net Resale Proceeds equal the Minimum Resale Proceeds.

(ii)   Lessee has not elected to terminate the lease at the end of the Initial Lease Term, then ARI shall guarantee that the Net Resale Proceeds equal twenty-five percent (25%) of the Fair Value of such vehicle at the first day of the month in which the lease is terminated. For the purposes of this Article 12.2(ii), "Fair Value" shall be defined as eighty-five percent (85%) of the resale value for automobiles and seventy percent (70%) of resale value for light trucks (under 11,000# GVW) as reported by Automotive Market Report as of the most recent publication date immediately prior to the month in which termination of the lease occurs (or if Automotive Market Report is no longer published, such other publication upon which the parties may reasonably agree)."

2.    All other terms and conditions of the Agreement shall remain unchanged and are hereby ratified and affirmed by the parties.

IN WITNESS WHEREOF, each of the parties hereto have caused this Amendment to be signed by its duly authorized representative, to be effective as of the date first above written.

LESSEE:                                ARI:

NORTHERN TELECOM INC.                  AUTOMOTIVE RENTALS, INC.

By: _____           By: _____

Title: _____          Title: _____

Date: _____           Date: _____

## FIFTH AMENDMENT TO VEHICLE LEASE AGREEMENT
## NTI AGREEMENT NO. 730280
## DATED:  MAY 19, 1999

The Vehicle Lease Agreement entered into as of the 15th day of January, 1993, by and between Automotive Rentals, Inc., a New Jersey Corporation, with its principal place of business at 9000 Midlantic Drive, PO Box 5039, Mt. Laurel, New Jersey 08054, hereinafter called "ARI" and Northern Telecom Inc., a Delaware corporation, with its principal place of business at 200 Athens Way, Nashville, Tennessee 37228-1397, hereinafter called "Lessee" is hereby amended as follows:

Effective May 3, 1999, the "Parties" clause of the Vehicle Lease Agreement is amended to reflect that Lessee has changed its name to Nortel Networks Inc.  Lessee warrants that there will be no adverse change in the financial condition of Nortel Networks Inc., as a result of or associated with, the name change and any associated actions of Nortel Networks Inc.

All other terms and conditions of the Vehicle Lease Agreement dated January 15, 1993, shall remain unchanged.  This Amendment shall be attached to and become part of the Vehicle Lease Agreement dated January 15, 1993.

**NORTEL NETWORKS INC.**
**(LESSEE)**

By: _____

Title: VP SR&TM

Witness: _____

Date: 5/25/99

**AUTOMOTIVE RENTALS, INC.**
**(ARI)**

By: _____

Title: Vice Pres.

Witness: Joan Catani

Date: 6-17-99



## AMENDMENT TO LEASE AGREEMENT
### DATED: September 14, 2000

The Master Lease Agreement dated as of January 15, 1993, between Automotive Rentals, Inc., as Lessor ("ARI"), and Nortel Networks Inc., as Lessee (the "Lessee"), including any prior amendments ("Master Lease"), is amended as follows:

1.     Vehicles leased by Lessee will be leased from either ARI or from ARI Fleet LT, a Delaware business trust. The Motor Vehicle Lease Agreement ("MVLA") for each vehicle will be in the attached form and will state whether ARI or ARI Fleet LT is lessor for that vehicle. ARI has been designated the servicer for ARI Fleet LT and as such will perform all the obligations of the Lessor under the MVLA's.

2.     The Master Lease provides standard provisions governing the terms of the lease of each vehicle which will be incorporated by reference into each MVLA. When ARI Fleet LT is listed as Lessor, all references to ARI in the Master Lease will refer instead to ARI Fleet LT.

3.     The parties intend that each MVLA will be an independent lease agreement relating solely to the vehicle named in it and accordingly each MVLA will be separate and distinct from every other lease agreement between the parties.

**AUTOMOTIVE RENTALS, INC.**

By: _____

**ARI FLEET LT**

By: _____

Acknowledged and accepted:

**NORTEL NETWORKS INC.**

By: _____

# MOTOR VEHICLE LEASE AGREEMENT

Lessor hereby leases to _____ Lessee, the vehicle(s) (Vehicle(s)) referred to herein for the rental set forth herein. This Motor Vehicle Lease Agreement is entered into between Lessor and Lessee and constitutes a separate and independent lease agreement solely of the Vehicle(s). This Motor Vehicle Lease Agreement is separate and distinct from any other lease agreement or other agreement between Lessor and Lessee or to which Lessee is otherwise a party. The terms of the Master Lease (except for any terms that refer to specific vehicles other than the Vehicle(s)) are incorporated by reference into this Motor Vehicle Lease Agreement and constitute terms of this Motor Vehicle Lease Agreement with the same effect as if they were fully set forth herein. The "Master Lease" refers to the Lease Agreement, dated _____, _____ entered into between Lessee and Automotive Rentals, Inc., as heretofore and hereafter amended.

Lessor hereby assigns to _____ (Assignee) all rights, title and interest of Lessor in and to all moneys due and to become due under this Motor Vehicle Lease Agreement and Lessor hereby authorizes Assignee to collect all such moneys when due, either in the name of the Assignee or Lessor. Lessee hereby agrees to this assignment.

To induce Assignee to accept an assignment of Lessor's rights under this Motor Vehicle Lease Agreement, Lessee agrees that upon such assignment, all rights and remedies of Lessor hereunder shall vest in and be exercisable by Assignee, that Lessee will render performance of Lessee's obligation hereunder to Assignee rather than Lessor and that the rights of Assignee to rentals and other sums due hereunder shall not be subject to any defense (except payment), offset, counter-claim or recoupment of Lessee whatsoever arising from the breach of warranty or representation relating to the motor vehicle whether made by the manufacturer thereof, Lessor or any other person, or arising from the breach or failure of Lessor to observe or perform the provisions of this Motor Vehicle Lease Agreement or any other agreement between Lessor and Lessee or arising from any cause whatsoever. Lessee also agrees that nothing (including termination of this Motor Vehicle Lease Agreement) except full payment to Assignee of the Capitalized Value set forth below, with interest to date of such payment as specified below, shall be sufficient to terminate the liability of Lessee to make payments to Assignee under this Motor Vehicle Lease Agreement. Lessee also agrees to continue to make prompt payments to Assignee of the rentals due hereunder even if bankruptcy, reorganization, arrangement, insolvency, liquidation or dissolution proceedings are instituted by or against Lessor and regardless whether a trustee or receiver in any such proceedings shall assume or reject this Motor Vehicle Lease Agreement or other agreement between Lessor and Lessee. Lessee also agrees that Assignee does not assume any obligations arising hereunder and Lessee will look solely to Lessor for the performance of any such obligations.

## VEHICLE INFORMATION

S = SIDEBILLED    D = DEALER INSTALLED    EQUIPMENT

## COST

| DESCRIPTION | CAPPED AMOUNT | DESCRIPTION | CAPPED AMOUNT | DESCRIPTION | CAPPED AMOUNT |
|---|---|---|---|---|---|
| | | | | | |

## LEASE INFORMATION

Date _____        By _____

*Don Lackley*

Authorized Signature

Nortel Agreement 730281 (7)
Nortel Project 07-461

## SEVENTH AMENDMENT TO VEHICLE LEASE AGREEMENT
## NTI AGREEMENT NO. 730280
## DATED: AUGUST 21, 2007

AMENDMENT to the Vehicle Lease Agreement ("Agreement") entered into as of the 15th day of January, 1993, by and between ARI Fleet LT, a Delaware business trust, hereinafter called "ARI Fleet" and Automotive Rentals, Inc., a New Jersey corporation, located at 9000 Midlantic Drive, PO Box 5039, Mt. Laurel, New Jersey 08054, hereinafter called "ARI" and Nortel Networks Inc. a Delaware corporation, with its principal place of business at 200 Athens Way, Nashville, Tennessee 37228-1397, hereinafter called "Lessee", is hereby amended as follows. ARI and ARI Fleet are at times referred to herein, individually or collectively as the context may require, as the "Lessor".

WHEREAS, Lessor and Lessee mutually desire to amend certain provisions of the agreement;

NOW THEREFORE, in consideration of the premises and the promises set forth herein, Lessor and Lessee agree, effective August 21, 2007, for new vehicles going into service on or after August 21, 2007, as follows:

1. The section for vehicles leased in Canada on the Exhibit B (1) of the Agreement shall be deleted and replaced as follows:

For all vehicles leased in Canada:

For each leased vehicle, during its Depreciation Period, the monthly rental fee shall consist of three parts:

    A. Monthly Rental Fee
    B. Interest
    C. Administrative Fee

### A. Monthly Rental Fee

The monthly rental fee shall be computed by multiplying the vehicle's Capitalized Value, as defined in Article 6 of the Agreement, by the applicable Depreciation Rate as defined herein.

### B. Interest

The monthly rental fee shall also include the addition of interest which shall be calculated for each calendar month of the Depreciation Period (on the basis of a 365 day year) for the actual number of days elapsed from the effective date of the lease or the first day of the applicable month of the Depreciation Period, whichever shall be later, to the end of the applicable month of the Depreciation Period term at 170 basis points (i.e. 170/100 percent) per annum over the Government of Canada Two Year Bond interest rate as established, at the time such vehicle is delivered, by The Bank of Canada on or around the 1st day of the month in which the lease begins. This interest rate shall remain fixed during the Depreciation Period of the lease. For medium and heavy duty trucks, the rate of interest shall be such as negotiated between ARI and Lessee.

For clarity, the interest charge will be applied to the declining value (remaining value) of the Capitalized Value for the applicable vehicle.

Nortel Agreement 730281 (7)
Nortel Project 07-461

C. Administrative Fee

The Administrative Fee shall be equal to the amount indicated herein and which shall not
be subject to interest.

Rates and Periods

Depreciation Period:        Months 1 – 50 of the lease term
Depreciation Rate:          2.0%
Administrative Fee:         $8.50 Canadian per Leased Vehicle per Month

2. All other terms and conditions of the Vehicle Lease Agreement dated January 15, 1993,
shall remain unchanged.  This Amendment shall be attached to and become part of the
Vehicle Lease Agreement dated January 15, 1993.

IN WITNESS WHEREOF, the parties have caused this amendment of the Agreement to be
signed by their duly authorized representatives.

NORTEL NETWORKS INC.                    AUTOMOTIVE RENTALS, INC.
("LESSEE")                              ("ARI" OR "LESSOR")

By: _Wendy McKntre_                     By: _Daniel Willard_

Title: _Director_                       Title: Daniel Willard
                                        Director-Financial Services
Witness: _____                   Witness: _____ ARI

Date: _Oct 16, 2007_                    Date: _10-15-07_

                                        ARI FLEET LT
                                        ("ARI FLEET" OR "LESSOR")

                                        By: _Daniel Willard_

                                        Title: Daniel Willard
                                        Director-Financial Services
                                        Witness: _____ ARI

                                        Date: _10-15-07_

Page 2 of 2

NTI Agreement No. 730280
ARI Agreement No. _____

## VEHICLE LEASE AGREEMENT

This Agreement entered into as of the 15th day of January, 1993, by and between Automotive Rentals, Inc., a New Jersey corporation with its principal place of business at 9000 Midlantic Drive, P.O. Box 5039 Mt. Laurel, New Jersey 08054, hereinafter called "ARI" and Northern Telecom Inc., having its principal place of business at 200 Athens Way, Nashville, Tennessee 37228-1397, hereinafter called "Lessee."

**WITNESSETH THAT,** the parties hereto intending to be legally bound, hereby agree as follows:

### ARTICLE 1
### Lease of Vehicles

1.1     ARI shall lease to Lessee new vehicles as may be ordered by Lessee. All vehicles leased hereunder shall be owned by, and titled and/or registered in the name of ARI. This is an agreement to Lease only and Lessee has no right or option to purchase the vehicles at any time, except, however, Lessee shall have the option to purchase a vehicle at its then Fair Market Value in accordance with Article 12.1 herein. Any such option shall be subject to the minimum Initial Lease Term set forth in Article 3.1 and any obligations of Lessee set forth in Article 5.3. Notwithstanding the fact that both parties to this Lease Agreement intend to create a true lease and not a security agreement, to the extent that any court may determine that this lease is one intended as security, Lessee hereby grants to ARI a security interest in all of Lessee's right, title and interest in and to the vehicles leased hereunder and in all proceeds, products and substitutes or replacements thereof.

### ARTICLE 2
### Ordering and Delivery of Vehicle

2.1     **Ordering Vehicles.** Lessee shall furnish ARI a written or electronically transmitted order for each vehicle to be leased hereunder, specifying the make, model, equipment and a delivery point within the United States of America. The Capitalized Value, as defined in Article 6, for vehicles purchased by ARI from a dealer's inventory ("Stock Purchases") and for vehicles purchased by ARI which are specially ordered by a dealer from the manufacturer ("Factory Orders") shall be determined in accordance with Exhibit A. For vehicles to be leased hereunder with delivery points in Puerto Rico or Mexico, ARI shall advise Lessee of the Capitalized Value for such vehicles prior to Lessee's issuance of an order therefor.

2.2     **Delivery of Vehicles.** ARI agrees to deliver each vehicle leased hereunder to Lessee at the delivery point indicated in Lessee's order therefor, subject to ARI's ability to obtain sufficient vehicles of the type ordered in the time specified by Lessee, and subject to any other contingency beyond the control of ARI.

### ARTICLE 3
### Vehicle Lease Term

3.1     The term over which each vehicle leased hereunder shall be depreciated shall be the period specified in Exhibit B ("Depreciation Period"), or such other period as may be mutually agreed upon. The "Initial Lease Term" for each vehicle shall commence on the date that Lessee accepts delivery of such vehicle in accordance with Article 4, and shall continue for a minimum of twelve (12) months. After the Initial Lease Term, each lease shall continue on a month-to-month basis until the Depreciation Period specified in Exhibit B expires, unless such lease is earlier terminated as provided hereunder.

3.2     At the expiration of the Depreciation Period, each lease shall continue on a month-to-month basis, and the monthly rental fee after the expiration of the Depreciation Period shall be solely that specified in Article 5.6 herein, until such lease is terminated by notification by Lessee to ARI.

3.3     Each vehicle leased hereunder shall be deemed to be covered by a separate lease, Motor Vehicle Lease Agreement, in the form of Exhibit H hereto, applicable only to that specific vehicle. In the event of any conflict between the terms and conditions (other than pricing and vehicle specifications) of any individual Motor Vehicle Lease Agreement and this Agreement, including but not limited to the exemplar copy of Exhibit H attached hereto, the

- 1 -

crlari93.021594

terms and conditions of this Agreement shall control, and ARI shall indemnify NTI for any damages suffered by NTI as a result of a claim made against NTI based upon such inconsistency.

## ARTICLE 4
### Acceptance of Delivery of Vehicle

4.1    **Acceptance.** Lessee agrees to accept delivery of each vehicle ordered upon notice from ARI's delivering agent of the availability of each such vehicle at the delivery point indicated in Lessee's order therefor.

4.2    **Delivery Receipt.** In order to evidence its acceptance of delivery of each vehicle which it ordered, Lessee shall execute, by an authorized representative, and deliver to ARI a Delivery Receipt, in the form attached hereto and marked Exhibit F. The date indicated on the Delivery Receipt as the date on which Lessee accepted the vehicle identified thereon shall be deemed to be the first day of the Initial Lease Term with respect to such vehicle.

4.3    **ARI's Delivery Obligations.** As part of its delivery obligations, ARI shall ensure that each vehicle has been prepared for delivery by the dealer and that the benefits of the manufacturer's warranty, and the dealer's warranty, if any, shall be made directly available to Lessee, and no vehicle shall be deemed to have been made available at the delivery point until such obligations have been satisfied by ARI.

## ARTICLE 5
### Rental Payments

5.1    Lessee agrees to pay ARI, at Mt. Laurel, New Jersey (or at such other location as ARI may direct in writing), or its Assignee as described in Article 8, a monthly rental fee for the use of each vehicle leased hereunder during the term of such lease.

5.2    ARI shall send each monthly rental bill via overnight delivery service. With respect to each vehicle leased hereunder, all rental fee payments shall be due and payable on or before the thirtieth (30th) day of the month for which Lessee is being billed, or the last calendar day of that month, whichever is later ("Due Date"). Lessee shall pay interest on any payment not paid by the Due Date at a rate equal to the then current prime interest rate as announced by Citibank N.A. on the date the payment becomes overdue.

5.3    A full monthly rental fee payment shall be charged for each vehicle delivered on or before the fifteenth (15th) day of any month, but no charge shall be made for the month if the vehicle is delivered on or after the sixteenth (16th) day of any month. If a lease is terminated or expires on or before the fifteenth (15th) day of a month, the obligation to pay rent for such vehicle shall terminate on the last day of the preceding calendar month, and, if a lease is terminated or expires on or after the sixteenth (16th) day of a month, the obligation to pay rent for such vehicle shall terminate on the last day of the calendar month in which such expiration or termination occurs.

5.4    For each leased vehicle, the monthly rental fee during the Depreciation Period shall be computed as set forth in Exhibit B herein.

5.5    In the event a commercial vehicle, such as a truck, requires the installation of additional equipment after its delivery to ARI but before its delivery to Lessee (commonly known in the industry as "upfitting"), ARI shall diligently arrange and pay for the installation of such equipment, the price for which shall be added to the Capitalized Value for such commercial vehicle in accordance with Article 6, and if ARI is required to pay for such commercial vehicle after its delivery to ARI but prior to its delivery to Lessee, then the Initial Lease Term with respect to such commercial vehicle shall commence on the date ARI is invoiced for such vehicle by the manufacturer.

5.6    For each vehicle which remains leased to Lessee on a month-to-month basis after the expiration of the Depreciation Period, the monthly rental shall be solely the Administrative Fee indicated on Exhibit B.

## ARTICLE 6
### Capitalized Value

6.1    The "Capitalized Value" for the leased vehicles described on Exhibit A shall consist of the sum of the following amounts:

- 2 -

crlari93.021594

a.  (i)      For Factory Orders, the price paid by the dealer to the manufacturer ("Invoice Price"), as evidenced by the manufacturer's invoice to the dealer, less the amount specified in Exhibit A and less any additional discounts or rebates or other incentives negotiated directly with the manufacturer or dealer by Lessee or by ARI, plus, to the extent not listed on the invoice, any taxes, transportation and/or preparation charges, or

(ii)      for Stock Purchases, the price paid by ARI to the dealer to purchase the vehicle, including any taxes, transportation and/or preparation charges ("ARI's Acquisition Costs"), plus the amount specified in Exhibit A;

plus

b.  the amount paid by ARI to purchase and have installed any optional equipment and/or accessories requested by Lessee which were not furnished or included by the vehicle manufacturer and/or additional transportation charges incurred by reason of a change of delivery point requested by Lessee prior to delivery.

For vehicles other than those described on Exhibit A, ARI shall advise Lessee of the Capitalized Value of such vehicles prior to the issuance of an order therefor by Lessee.

## ARTICLE 7
### Costs Reimbursed by Lessee

7.1      Lessee shall reimburse ARI for the cost of state and local inspections, license tags, plates, and any certificates of title, notary fees, lien recording fees, clerk fees, and registrations and similar compliance required by law when a new vehicle is initially leased from ARI by Lessee.

## ARTICLE 8
### Assignment of Rentals

8.1      ARI may assign its rights and interest to all monies due and to become due to ARI with respect to any vehicle leased by Lessee under the terms of this Agreement to a financing institution (hereinafter, an "Assignee"), and in the event of such assignment, Lessee shall direct to Assignee, if so directed in writing by ARI, by means of a letter substantially in the form of Exhibit I hereto, the payments of such monies; such Assignee's right to payment of all such monies shall not be subject to any defense by Lessee, except payment to the Assignee or termination of the lease for such vehicle. No such termination shall relieve Lessee of any obligations incurred prior to such termination.

8.2      In the event of any such assignment, the liability of Lessee to pay the appropriate monthly rental fee to the Assignee with respect to any vehicle leased hereunder shall not be terminated notwithstanding anything herein contained to the contrary, unless Lessee has terminated the lease for such vehicle as permitted under the terms of this Agreement and the Assignee has been paid any rental fees then outstanding.

8.3      ARI covenants that Lessee shall quietly possess each vehicle under lease hereunder throughout the entire term of such lease notwithstanding any such assignment by ARI, subject to and in accordance with this Agreement, as long as Lessee is not in default under this Agreement.

8.4      In the event of any conflict with any individual Motor Vehicle Lease Agreement executed pursuant to Article 3.3 hereof and this Article 8, the terms of this Article 8 shall prevail.

## ARTICLE 9
### Vehicle Replacement

9.1      Lessee may at any time after the Initial Lease Term described in Article 3.1, terminate a lease with respect to any given vehicle and retire such vehicle from service without replacement by giving ARI written notice to that effect and identifying the vehicle which will be retired and when and where it shall be surrendered to ARI. The lease as to such vehicle shall terminate upon the surrender to ARI of such vehicle.

- 3 -

crlari93.021594

9.2 Upon expiration or termination of the lease with respect to any leased vehicle prior to the expiration of the Depreciation Period, Lessee shall pay to ARI, or if so directed by ARI in writing, to the appropriate Assignee, the Depreciated Value, as defined in Article 12.3.

## ARTICLE 10
### Surrender Upon Retirement

10.1 Upon the expiration or termination of the lease for any vehicle leased hereunder, Lessee shall surrender possession of the retired vehicle to ARI at a point agreeable to both parties. At the time of such surrender, ARI and Lessee, or their authorized representatives, shall execute a Used Vehicle Return Receipt and Statement of Condition form, in the form attached hereto and marked Exhibit G.

## ARTICLE 11
### Lease Termination Fee

11.1 Lessee shall not be obligated or liable to pay to ARI or any Assignee any lease termination fee or any other such fee, charge or penalty for the termination of any vehicle lease after the expiration of the Initial Lease Term.

## ARTICLE 12
### Disposition After Surrender of Leased Vehicle

12.1 **Disposition.** Upon the termination or expiration of the lease for each vehicle leased hereunder, ARI shall use its best efforts to sell the vehicle covered by such lease after possession thereof shall have been surrendered by Lessee at the highest possible price and in the most economical fashion then available, consistent with efforts to obtain the highest possible price ("Fair Market Value"). ARI's efforts shall include, but not be limited to, offering to sell such vehicles to Lessee or to Lessee's employees. Upon sale of a leased vehicle, ARI shall retain out of the sale price any costs which it may have incurred in transportation of the vehicle, fees paid, and repairs or replacements necessary to merchandise the vehicle, to arrive at the "Net Resale Proceeds."

12.2 **Rental Adjustment.** With respect to any vehicle sold or otherwise disposed of pursuant to Article 12.1,

  a. if the amount of the Net Resale Proceeds is greater than the Depreciated Value, then ARI shall remit the amount of such excess to Lessee, or

  b. if the amount of the Net Resale Proceeds is less than the Depreciated Value, then Lessee shall remit the amount of the deficiency to ARI.

12.3 **Depreciated Value.** The Depreciated Value of each vehicle shall be the Capitalized Value of such vehicle less the Total Depreciation Reserve paid by Lessee. The "Total Depreciation Reserve" for each vehicle shall be the sum derived by multiplying (a) the number of months for which the monthly rental fee was paid by Lessee pursuant to Article 5, by (b) the Capitalized Value of such vehicle, by (c) the monthly depreciation percentage shown on Exhibit B, for the Depreciation Period applicable to such vehicle.

## ARTICLE 13
### Use of Leased Vehicles

13.1 Lessee may use any vehicle leased hereunder at any and all times for any and all legal purposes. Title to each vehicle leased hereunder shall remain in ARI, but ARI shall have no control or supervision of the operation of any vehicle leased hereunder. Nothing herein contained shall authorize Lessee or any person to operate or otherwise use any vehicle contrary to law or to incur any liability or obligation on behalf of ARI. Lessee may also allow any vehicle leased hereunder to be used in accordance with the foregoing manner by any entity affiliated with Lessee, regardless of where such entity may be located.

- 4 -

## ARTICLE 14
### Registration

14.1     ARI shall register, and renew the registration for, each leased vehicle in the following manner, annually or as otherwise required:

    a.     ARI shall correspond directly with each state and Puerto Rico and pay any and all fees associated with the registration or registration renewal of each vehicle. Upon receipt of the registration or renewed registration, ARI shall send all registration documentation to the recipient designated by Lessee.

    b.     Lessee or Lessee's driver(s) shall be responsible for supplying ARI with a copy of each vehicle's current registration, except for vehicles registered in the state of Kentucky for which Lessee shall provide ARI with the original registration documents. Lessee shall also provide ARI with the original cards evidencing insurance coverage for all vehicles registered in the states of Arkansas, Connecticut, Kentucky, Nebraska, and Nevada. ARI shall assist Lessee in gathering registration and insurance documentation upon direction from Lessee.

    c.     Prior to the time required for renewal of a registration, Lessee shall be responsible for supplying ARI with any inspection reports, tax receipts and/or registration certificates necessary to complete the renewal. ARI shall provide Lessee with reports listing those vehicles with incomplete or missing registration renewal documents.

    d.     ARI shall also provide for the re-titling of a vehicle if it is transferred to a different state.

    e.     ARI assumes no responsibility under this registration renewal program except to use normal business efforts to render the services called for hereunder in a manner reasonably satisfactory to Lessee, and ARI shall not be liable or held accountable for mistakes of fact or law or for any loss or damage to Lessee arising or resulting therefrom or otherwise from its acts or omissions, except when such is due to its negligence or willful misconduct.

    f.     The effective date of ARI's responsibility to provide for the annual registration renewal of each vehicle enrolled in the renewal management program described in this Article 14 shall be immediately after the date this Agreement is signed by ARI.

    g.     ARI shall invoice Lessee for all fees and charges associated with each vehicle's annual registration renewal and re-titling expenses on the monthly rental fee invoice.

    h.     ARI is unable to provide this annual registration renewal service in the states of Hawaii, Delaware, Maine and New Hampshire and in Mexico. For these states, ARI shall deliver to Lessee, not later than sixty (60) days prior to the expiration of the first and any subsequent registration periods, documents which may be necessary for Lessee to obtain a new registration, state license tags, a certificate of title and similar permits required for the lawful operation of a vehicle. The certificates and permits shall indicate that ownership of said vehicle is in ARI. When obtained, such certificates and permits, unless required to be carried in the Vehicle, shall be sent by Lessee to ARI. Lessee shall notify ARI if documents to obtain a new registration, state license tags, a certificate of title and similar permits for the authorized operation of the vehicle are not received by Lessee or Lessee's representative thirty (30) days prior to the expiration of same.

## ARTICLE 15
### Responsibility for Maintenance

15.1     ARI shall have no responsibility for the maintenance and upkeep of any vehicle leased hereunder after it is delivered to and accepted by Lessee and until such time as Lessee surrenders possession of any such vehicle to ARI as provided in Article 10 herein; during such time, Lessee shall maintain, service and keep in good repair each vehicle at its own expense.

crlari93.021594

## ARTICLE 16
### Damage or Destruction of Leased Vehicles

16.1 **Responsibility for Repairs.** In the event a leased vehicle is damaged, its repair shall be the responsibility and obligation of Lessee in every such instance, unless such damage was caused by, or is attributable to, ARI.

16.2 **Termination of a Lease Due to Damage or Destruction.** In the event a leased vehicle is damaged or destroyed to such extent that Lessee finds it undesirable to continue its use, Lessee may terminate the lease with respect to such vehicle pursuant to Article 9 herein, and ARI shall dispose of said vehicle pursuant to Article 12 herein. Any such damage or destruction shall obviate any obligation on the part of Lessee to lease the affected vehicle for the remainder of the Initial Lease Terms applicable thereto.

16.3 **Lost or Stolen Leased Vehicles.** In the event a leased vehicle is lost or stolen, Lessee shall terminate the lease with respect to such vehicle pursuant to Article 9 herein, and, upon receipt of payment of the Depreciated Value from Lessee, ARI shall forward to Lessee all documents required to transfer ownership of said vehicle as directed by Lessee.

## ARTICLE 17
### Insurance

17.1 Lessee will carry for the benefit of Lessee, Lessee's employees and others who operate the vehicle with the permission of Lessee, and pay the cost thereof, insurance against liability for bodily injury in a minimum single limit of $1,000,000, and against liability for property damage in a minimum limit of $100,000. Lessee will furnish written evidence of said insurance and ARI shall be named as an additional insured with respect to Lessee's indemnification obligations under Article 18.1. Lessee shall bear all risk of loss or damage to each leased vehicle and the contents thereof.

17.2 If for any reason Lessee shall fail to obtain and maintain in effect such insurance, ARI, at its sole option, but only after prior written notice to Lessee, may: (a) provide same and upon demand shall be reimbursed by Lessee the actual cost thereof, plus 10% of said cost to defray administrative expense; or, (b) terminate the lease of any or all vehicles leased hereunder, effective immediately at any time by giving written notice of termination to Lessee.

## ARTICLE 18
### Indemnification

18.1 **General Indemnification by Lessee.** Lessee shall indemnify and hold harmless ARI and ARI's agents and employees against all loss or liability relating to bodily injury, including death, and/or damage to tangible property (including costs and reasonable attorney's fees) arising out of or connected with Lessee's willful misconduct or negligent use or operation of any leased vehicle during Lessee's possession thereof. Lessee will take upon itself the settlement of all such claims and the defense of any suit or suits, or legal proceedings of any kind brought to enforce any such claim or claims, and the payment of all judgments entered in any such suit or suits, whether or not ARI is a party-defendant thereto.

18.2 **General Indemnification by ARI.** ARI shall indemnify and save harmless Lessee, Lessee's agents and employees against all loss or liability relating to bodily injury, including death, and/or damage to tangible property (including costs and reasonable attorneys fees) arising out of or connected with the negligence or willful misconduct of ARI or its employees. ARI will take upon itself the settlement of all such claims and defense of any suit or suits, or legal proceedings of any kind brought to enforce any such claim or claims, and the payment of all judgments entered in any such suit or suits, whether or not Lessee is a party-defendant thereto.

18.3 **Statement of Odometer Warranty and Indemnification.** Unless otherwise indicated on the Used Vehicle Return Receipt, Lessee warrants to the best of its knowledge to ARI that the mileage indicated on the odometer of any vehicle returned to ARI is the true and actual reading and that no tampering with said odometer has taken place while such vehicle was operated by Lessee or any agent of Lessee. Lessee shall indemnify and save ARI harmless from any and all liability, loss, damage, expense, causes of action, suits, claims or judgments solely arising from breach of the warranty herein before stated in this Article 18.3 and shall at its own cost and expense, defend any and all suits which may be brought against ARI, either alone or in conjunction with others, upon any such liability or

- 6 -

crlari93.021594

claim or claims and shall satisfy, pay and discharge any and all judgments and fines that may be recovered against ARI, provided however, that ARI shall give Lessee written notice of any such claim or demand within (30) days from receipt thereof.

## ARTICLE 19
### No Warranties by ARI

19.1  AS TO ANY VEHICLE LEASED HEREUNDER, EXCEPT AS PROVIDED IN ARTICLE 22, ARI HEREBY DISCLAIMS ALL WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE USE, CONDITION, OPERATION AND POSSESSION OF ANY VEHICLE. LESSEE SHALL NOT BE ENTITLED TO RECOVER FROM ARI ANY CONSEQUENTIAL DAMAGES, DAMAGES FOR LOSS OF USE, LOSS OF PROFITS OR INCOME, OR ANY OTHER CONSEQUENTIAL DAMAGES.

## ARTICLE 20
### Default

20.1  In the event Lessee shall default in any payments due ARI, or in performance of any material covenant under this Agreement, and such material default is not a result of ARI's act or omission and ARI notifies Lessee of such default and it thereafter remains uncorrected for thirty (30) days, ARI may pursue any remedies it may have under this Agreement including taking possession of any or all vehicles leased hereunder which are affected by such default and the demand for payment of all sums due ARI. ARI agrees that it shall exercise reasonable effort in its pursuit of any remedies afforded it in the event of Lessee default so as not to disturb Lessee's full right of possession and enjoyment of the leased vehicles.

20.2  Unless expressly provided for in another Article of this Agreement, in the event of a non-monetary default by Lessee, ARI shall notify Lessee of such default in writing and Lessee shall be granted a reasonable period of time to cure such event of default and ARI agrees not to exercise any remedy afforded it during such cure period. No remedy pursued under this Article shall be deemed an act of termination of the Agreement.

## ARTICLE 21
### Bankruptcy

21.1  Upon notice to Lessee, ARI may terminate this Agreement, if in either a state or federal court, a receiver is appointed for the Lessee, or if a petition in bankruptcy or for reorganization shall be filed by or against the Lessee; or if Lessee shall fail to give immediate notice to ARI of any distress or levy or execution purported to be made or laid against the property hereby leased or any part of it, ARI may take possession of any or all vehicles leased hereunder and may cancel any unfilled vehicle orders.

## ARTICLE 22
### ARI's Warranty

22.1  As to each vehicle leased hereunder, ARI warrants that it is the sole and absolute owner thereof, that it has the right to lease each such vehicle to Lessee, that each such vehicle is free of all encumbrances at time of delivery to Lessee (other than the interest of an Assignee pursuant to Article 8), that ARI will not cause any such vehicle to become subject to any lien or encumbrance, that it will not sell, assign, lease or otherwise dispose of any such vehicle except as provided in Article 8 and 12 hereof, and that it will do nothing to disturb Lessee's full right of possession and enjoyment of any such vehicle and the exercise of all of Lessee's rights with respects thereto, as provided by this Agreement. Upon delivery of each leased vehicle to Lessee, ARI shall assign to Lessee all of its rights under any warranty obtained by ARI from the manufacturer and/or dealer.

- 7 -

## ARTICLE 23
### Evidence Of Lessee's Interest

23.1    In order that Lessee's rights hereunder may be made a matter of public notice or record, at any time during the lease of a vehicle hereunder, Lessee shall have the right to file a copy of this Agreement, together with a statement of payments thereunder, with such officials or in such offices in the state in which the vehicle is registered or maintained as may be provided by the laws thereof with respect to the registration or filing of liens and encumbrances or other title retention instruments on vehicles or other chattels. ARI will, at Lessee's written request and at Lessee's expense, execute any instrument or instruments necessary, proper or convenient for this purpose.

## ARTICLE 24
### Assignment

24.1    Neither party hereto shall, except as permitted herein, assign or sublease any rights under this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed.

## ARTICLE 25
### Cancellation

25.1    This Agreement shall remain in effect for a period of one year from the date hereof and thereafter until canceled by either party upon sixty (60) days written notice to the other party. The termination of this Agreement shall not affect any vehicles under lease pursuant hereto at the time of such termination; all such vehicles shall remain subject to the terms hereof and ARI and Lessee shall have the mutual rights and obligations provided for herein as to such vehicles.

## ARTICLE 26
### Statement of Ownership

26.1    Lessee shall notify ARI, of any change in name, ownership or control of Lessee.

## ARTICLE 27
### Agreement Binding

27.1    **Binding.** This Agreement, together with Exhibits attached hereto constitute and shall constitute the full, complete, absolute and entire Agreement between ARI and Lessee. There are no oral agreements or understandings affecting this instrument. Any future agreements, understandings or waivers, to be binding upon the parties hereto must be reduced to writing and attached hereto and ARI's or Lessee's failure to enforce any provision of this Agreement shall not be construed as a waiver thereof or as excusing Lessee or ARI respectively from future performance.

27.2    **State Law.** This Agreement shall be governed by and shall be construed according to the laws of the State of New Jersey.

## ARTICLE 28
### Administrative Fees

28.1    In consideration for the services to be performed under this Agreement, Lessee shall pay ARI an administrative fee for each vehicle leased hereunder, as stated in Exhibit B.

## ARTICLE 29
### Truth in Mileage Act of 1986

29.1    In accordance with ARI's obligation under the Truth in Mileage Act of 1986, Lessee acknowledges receipt of notice from ARI regarding Lessee's obligation under the Truth in Mileage Act to certify in writing the mileage on a leased vehicle returned to ARI by Lessee which is to be subsequently sold to another party.

crlari93.021594

## ARTICLE 30
### Fleet Management Services Agreement

30.1    The provisions of the Fleet Management Services Agreement in Exhibit D are hereby incorporated by reference as if written out herein in full.

## ARTICLE 31
### TRAC Certification

31.1    Lessee shall, upon ARI's request therefor, execute and deliver to ARI, a copy of the TRAC Certification, an exemplar copy of which is attached as Exhibit E.

## ARTICLE 32
### Vehicles Leased in Mexico

32.1.    ARI may subcontract any or all of its obligations hereunder to its wholly-owned subsidiary, ARI Fleet Services S.A. de C. V., a Mexican corporation with its principal place of business at _____ _____ ("ARIF"), with respect to any vehicles which may be delivered in Mexico for lease to Lessee or any parent, subsidiary of affiliate of Lessee, provided that Lessor remains liable for the completed and proper performance of each and every obligation subcontracted to ARIF. Notwithstanding the foregoing, ARIF may hold title to any such vehicles. The Capitalized Value for such vehicles shall be established pursuant to Article 2.1.

32.2    The rental fees for any vehicles delivered in Mexico for lease pursuant to Article 32.1 shall be specified in Mexican currency. Lessee, at its option, may pay the rental  fees for any vehicles delivered in Mexico for lease pursuant to Article 32.1 in U.S. Dollars, and if the rental rates for such vehicles are specified in Mexican currency, the rate of exchange shall be that specified in The Wall Street Journal for the date on which payment of the applicable monthly rental fee is due.

IN WITNESS WHEREOF, ARI and Lessee have caused these presents to be duly executed, in triplicate, as of the day and year first written above.

NORTHERN TELECOM INC.                          AUTOMOTIVE RENTALS, INC.

By: _Thomas E. Allen_____                    By: _M F Laporta_____

Name: _THOMAS E. ALLEN_____                     Name: _M. F. LAPORTA____

Title: _DIRECTOR - PURCHASING SERVICES_         Title: _Pres._____

Date: _April 20, 1994_____                   Date: _4-12-94_____

_BAB 4/14/94_
_PMB 4/14/94_
_4/15/94_

crlari93.021594

## EXHIBIT A

This Exhibit A incorporates by reference all the terms and conditions of the Vehicle Lease Agreement dated January 15, 1993, between Automotive Rentals, Inc. and Northern Telecom Inc.  A reference to an Article in this Exhibit A shall be a reference to such Article in the Vehicle Lease Agreement.

The Parties mutually agree to the following terms regarding the following Articles:

**Article 6, Paragraph a.:**

**1. Factory Orders**

| | |
|---|---|
| Buick, Chevrolet (except Corvette), Oldsmobile, and Pontiac, Ford, Mercury, Chrysler, Dodge and Plymouth Vehicles | $350 below factory invoice price |
| Commercial Vehicles exceeding 11,000#GVW: Chevrolet, Dodge and Ford | per quotation |
| All Other Commercial Vehicles:. Less Advertising where refundable to ARI. | per quotation |
| All Other Vehicles | per quotation |

**2. Stock Purchases**

| | |
|---|---|
| Buick, Chevrolet (except Corvette), Chrysler, Dodge, Ford, Mercury Oldsmobile, Plymouth and Pontiac vehicles: | ARI's acquisition costs plus $150.00 |
| Commercial Vehicles exceeding 11,000#GVW: Chevrolet, Dodge and Ford | per quotation |
| All Other Vehicles | per quotation |
| **3. POOL VEHICLES** | per quotation |

**Article 11, Paragraph 11.1:**

Lease Termination Fee shall be $0 (Zero Dollars).

crlari93.021594

## EXHIBIT B

For each leased vehicle the monthly rental fee, during its Depreciation Period, shall be computed by multiplying the vehicle's Capitalized Value by the applicable percentage shown hereinbelow. The monthly rental fee shall also include the addition of interest which shall be calculated for each calendar month on the basis of a 360 day year for the actual number of days elapsed from the effective date of the lease for such vehicle at _____*_____ basis points (i.e. _____*_____ percent) per annum in excess of 1) for all vehicles except for vehicles leased in Mexico, the interest rate quoted by Societe Generale (Bank) as its cost of thirty (30) day funds based upon the London Interbank Offered Rate (LIBOR) adjusted for reserve requirements of the Federal Reserve Bank in New York on the twenty-fifth (25) day of the month immediately preceding such month or 2) for vehicles leased in Mexico, an interest rate as agreed upon between ARI and Lessee. For medium and heavy duty trucks, the applicable percentage used to calculate the monthly rental fee shall be agreed upon by ARI and Lessee. The interest rate shall be adjusted each month and such adjustment(s) shall be effective on the first day of the month being billed. The interest shall be based on the Depreciated Value of each leased vehicle at the end of the month prior to the month being billed.

Example:

    *    12.5 basis points (i.e., 1/8 Percent for Factory Ordered Vehicles)
                        or
        100 basis points (i.e., 1 Percent for Stock Purchased Vehicles)

Depreciation Period:    Months 1 - 50
Depreciation Rate:    2%
Administrative Fee:    $7.50 Per Leased Vehicle per Month for all vehicles
                              except those leased in Mexico
                        An amount to be agreed upon between ARI and Lessee
                              for vehicles leased in Mexico

**EXHIBIT C**

January 15, 1993

Northern Telecom Inc.
Northern Telecom Plaza
200 Athens Way
Nashville, Tennessee  37228-1397

Subject:    Truth in Mileage Act of 1986

Sir/Madam,

The National Highway Traffic Safety Administration (NHTSA) has recently issued regulations for the Truth in Mileage Act of 1986, which require that we notify our lessees that they are legally required to certify, in writing, the mileage on a vehicle leased at the time possession of such vehicle is surrendered to us upon the expiration or termination of the Lease.  The regulations provide that failure to make this disclosure (or the making of a false statement) may result in fines and/or imprisonment.

ARI has chosen to use existing forms to permit our lessees to easily comply with the disclosure requirement.  When a vehicle is being replaced, the New Vehicle Order Form for the replacement unit will serve as the certification document, unless the new vehicle is ordered electronically via ARI Access.  Such vehicles ordered via ARI Access need to be certified on either the Used Vehicle Termination Report, the Used Vehicle Condition Report, or (on replacement vehicles) the New Vehicle Delivery Receipt.  NHTSA specifically requires an individual's signature for the certification, but has also stated that a lessee's driver can sign the certification (Drivers would be the only parties usually signing the Delivery Receipt or the Condition Report).  We have chosen to provide certification language on all four documents to give our customers the greatest flexibility in complying with this new regulation.  However, only one certification is required by law.

This letter shall serve as ARI's compliance with the requirement to notify our lessees of this Federal Regulation.  The effective date for lessee compliance is April 29, 1989.

crlari93.021594

## Exhibit D
## FLEET MANAGEMENT SERVICES

ARI shall provide the Fleet Management Services as described herein for the fee set forth herein, on a vehicle by vehicle basis as specified by Lessee.

### PLAN I
### Service Savings Package

a.  This program provides discounts on tires, maintenance service and glass replacement. All discounts available shall be made available to Lessee and updated information regarding such available discounts shall be made available to Lessee on a monthly basis. All discounts shall appear on invoices to Lessee. Services shall be performed at recognized tire and service outlets nationwide. National Account directories and pricing information shall be supplied with this program. All purchases shall be billed monthly to the Lessee. Credit cards/coupon books shall be issued by ARI to Lessee to be assigned to the particular vehicle and shall be valid for the purchase of tires, batteries and mechanical repairs for such vehicle at recognized retail tire and service outlets.

b.  If any credit card/coupon book is lost, stolen or being misused by any of Lessee's present or terminated employees or any other person, Lessee shall promptly report same to ARI by telephone or wire and confirm such report in writing to ARI. ARI shall immediately notify all the appropriate tire and service outlets. In no event shall Lessee be liable for unauthorized charges made on an expired credit card in excess of fifty dollars ($50.00).

c.  Lessee shall notify ARI promptly in writing of any driver changes, additions or deletions affecting the use of any credit card/coupon book and be responsible for the return to ARI of any credit card/coupon book for which Lessee has no further use, as in the case of a terminated employee, or for any other reason.

d.  Prior approval must be obtained from Lessee's Fleet Management Department before the start of repairs on a vehicle if:

    1)    the cost of such repairs would be over $500.00 per an occurrence; or
    2)    the vehicle which is in need of repairs has been in service for more than 36 months; or
    3)    the vehicle which is in need of repairs has an odometer reading of more than 50,000 miles

e.  ARI shall invoice Lessee monthly for expenses incurred by Lessee's representatives through the use of Purchase Orders, Credit Cards/Coupon Books, or otherwise, as invoices for the same are received by ARI from the recognized tire and service outlets. ARI shall use its best efforts to verify the accuracy of such invoices and to correct any obvious inaccuracies with such recognized tire and service outlets prior to invoicing Lessee for monthly expenses incurred.

### PLAN II
### Preventive Maintenance Program

This program is designed to minimize the administration of scheduled maintenance. A tailor-made coupon book is supplied for redemption at recognized nationwide service centers. All purchases under this program shall be billed monthly to the Lessee.

Car coupon books include:

*  60,000 Mile Prevention Maintenance Schedule.
*  5,000 Mile Interval Coupons.
*  Replacement or snow tire coupons (2).
*  Wheel Alignment Coupons (2).

Light Truck Coupon Books Include:

*  60,000 Mile Preventive Maintenance Schedule.
*  3,000/6,000 Mile Interval Coupons.
*  Replacement or snow tire coupons (2)
*  Wheel Alignment Coupons (2).

1

crlari93.021594

## PLAN III
### Fleet Management Report Series

This series of reports provides the necessary expense data and planning information for maximizing fleet cost efficiency. Computerized reporting will be custom developed to meet Lessee's requirements. Reports shall be produced and forwarded monthly following the receipt of input data from the Lessee.

Fleet Management Report Series consists of the following:

- The Fleet Management Report
- Vehicle Replacement Schedule  (on Request)
- The Exception Report
- Fleet Mileage Analysis
- The Fleet Summary Analysis
- Maintenance Coupon Exception Report
- Fringe Benefit Report (on Request)
- Custom Reports (on Request) at no additional charge.

## PLAN IV
### Total Management System

This program is designed to relieve Lessees from the daily task of administering their fleet. ARI becomes the liaison with the vehicle operators. The Lessee shall be billed monthly for all expenses incurred under the Program.

Services include:

- Enrollment in Fleet Management Plans I, II, III and VIII.
- Individual driver handbooks on Standard Operating Procedures.
- Control and approval of all servicing requirements
- Driver counseling on vehicle operation and efficiency.
- The maintenance of individual vehicle daily operating records.
- Direct communication with drivers via national toll free numbers.
- ARI knowledge and experience in Fleet Management.

## PLAN V
### Gasoline Credit Card Program

a.   This program is designed to provide the Lessee with a more convenient and scheduled billing of oil company purchases. All gasoline, oil and minor repair expenses are included on one monthly invoice to the Lessee. Repair and dollar limitations can be designated on the cards.

b.   ARI shall provide its ARI Universal Gas Credit Cards for vehicles of Lessee as requested in writing to ARI by Lessee for ARI approved oil companies nationwide. Such credit cards shall be issued by ARI to Lessee to be assigned to the particular vehicle for use by the then current designated driver of such vehicle. If any such credit card is lost, stolen or being misused by any of Lessee's present or terminated employees or any other person, Lessee shall promptly report same to ARI by telephone or wire and confirm such report in writing to ARI. ARI shall immediately take appropriate action to prevent further use of such card. In no event shall Lessee be liable for unauthorized charges made on an expired credit card in excess of fifty dollars ($50.00).

d.   Lessee shall notify ARI promptly in writing or by electronic means of any driver changes, additions or deletions affecting the use of any credit card for which Lessee has no further use, as in the case of a terminated employee, or for any other reason.

e.   If any credit card is lost, stolen or being misused by Lessee's present or terminated employee or any other person, Lessee shall promptly report same to ARI by telephone or wire and confirm such report in writing to ARI. In no event shall Lessee be liable for unauthorized charges made on an expired credit card in excess of fifty dollars ($50.00).

2

crlari93.021594

## PLAN VIII
### Warranty Recovery

In the event a repair is performed on a vehicle which, in ARI's opinion, should have been covered by the manufacturer's warranty but for its expiration, ARI shall attempt to recover a refund, credit or other financial adjustment from the manufacturer, and if any such financial adjustment is received by ARI from the manufacturer, ARI shall credit to Lessee 100% of any such financial adjustment.

## PLAN IX
### Fleet Insurance Management Services–Driver Abstract Program

Upon receipt of driver identification and license information, ARI shall provide to Lessee, if available, motor vehicle accident records and/or driver violation reports from the various state agencies (excepting Massachusetts and Washington which do not provide such reports or records) on each individual driver. ARI shall provide Lessee on a monthly basis, the standard state fee/charge table. Lessee shall pay such standard state fee upon invoice by ARI. This program is limited to one (1) driver abstract per driver per annum.

## PLAN X
### Fringe Benefit Report Program

This program is designed to provide the Lessee with comprehensive fringe benefit/expense report data. These services include:

- Comprehensive driver reports.
- Driver tracking system.
- Client-customized edits.
- Weekly, monthly or quarterly driver expense reports.
- On-line adjustment capability.

## PLAN XI
### Roadside Assistance Services

ARI will provide a twenty-four (24) hour toll free line for drivers to call to access an outlet which shall provide the necessary roadside assistance services. These outlets shall provide such necessary repair assistance as tire changes, battery jump start and door lock-out aid. Lessee shall pay ARI for the expenses arising out of the use of such roadside assistance services plus a per occurrence fee of $20.00 each upon invoice by ARI.

### FEES

There shall be a fee of $10.50 per leased vehicle per month which will include all Plans listed above except for Plan XI.

### GENERAL PROVISIONS

The Plans referenced herein shall be subject to the following terms and conditions:

**A. Payment Terms.** Lessee shall be billed monthly by ARI for all purchases with payment due ARI fifteen (15) days after the receipt of Invoice.

**B. Assignment.** Neither party hereto shall, except as permitted herein, assign or sublease any rights under this Exhibit D without the written consent of the other party, which consent shall not be unreasonably withheld or delayed.

**C. Cancellation.** Either party may terminate all or any part of the Fleet Management Services, with an appropriate adjustment in the fees for the services, at any time upon sixty (60) days written notice to the other party, in which event the terms and conditions herein shall apply until the date of final termination. In the event of termination, the Lessee shall return all cards affected by the termination to ARI and pay all outstanding charges hereunder whether incurred before or after termination.

3

crlari93.021594

**D. Default.** In the event Lessee shall default in any payments due ARI, or in performance of any covenant or condition under this Exhibit D and ARI notifies Lessee of such default and it thereafter remains uncorrected for thirty (30) days, ARI may pursue any remedies it may have under this Exhibit D, including taking possession of all credit cards issued hereunder and the demand for payment of all sums due ARI and the immediate payment of any remaining unpaid charges. Such repossession on the part of ARI shall not be deemed an act of termination of this Exhibit D, nor prejudice any other remedies that ARI may have in connection with this Agreement.

**E. Bankruptcy.** Upon the notice to Lessee, ARI may terminate this Exhibit D, if in either a state or federal court, a receiver in equity be appointed for the Lessee, or if a petition in bankruptcy or for reorganization shall be filed by or against the Lessee; or if Lessee shall fail to give immediate notice to ARI of any distress or levy or execution purported to be made or laid against a material portion of property of Lessee, ARI may take possession of any or cancel all credit cards issued hereunder.

**F. Agreement Binding.** This Exhibit D constitutes and shall constitute the full, complete, absolute and entire agreement between ARI and Lessee with respect to the subject matter hereof. There are no oral agreements or understandings affecting this instrument. Any further agreements, understandings or waivers, to be binding upon the parties hereto must be reduced to writing and attached hereto, and ARI's or Lessee's failure to enforce any provision of this Exhibit D shall not be construed as a waiver thereof or as excusing Lessee or ARI respectively from future performance.

**G. State Law.** This Exhibit D shall be governed by and shall be construed according to the laws of the State of New Jersey.

crlari93.021594

Exhibit E

[FORM OF]
TRAC CERTIFICATION

### CERTIFICATION RELATING TO "MOTOR VEHICLES OPERATING LEASES" UNDER SECTION 7701 (h) OF THE INTERNAL REVENUE CODE

**COMPANY:** Northern Telecom Inc.

**ADDRESS:** 200 Athens Way

Nashville, Tennessee  37228-1397

**FEDERAL IDENTIFICATION NUMBER**

The undersigned, _____, acting in the capacity of _____of Northern Telecom Inc., (Herein the "Corporation") does hereby certify under penalties of perjury:

1.      That the Corporation intends that the motor vehicles leased from Automotive Rentals, Inc. (herein, the "Lessor"), under any lease agreement executed on or after August 28th, 1987, to which Section 7701(h) of the Internal Revenue Code of 1986 as amended applies, will be used more than fifty percent (50%) in the trade of business of the Corporation, and

2.      That the Corporation has been advised that it will not be treated as the owner of the property subject to the agreements for Federal Income Tax purposes.

NORTHERN TELECOM INC.

By: _____

Name: _____

Title: _____

Date: _____

crlari93.021594



AUTOMOTIVE RENTALS, INC.
9000 MIDLANTIC DRIVE, P.O. BOX 5039, MT. LAUREL, NJ 08054 (609) 778-1500  FAX (609) 273-8099

*Exhibit F*

## DELIVERY INSTRUCTIONS · DELIVERY RECEIPT

DATE

:LIVERY DEALER

VEHICLE NO. / P.O. NO.

V. I. N.

CLIENT NO.

CLIENT NAME

:SIGNED DRIVER

### ASSIGNED DRIVER INSTRUCTIONS

1. CHECK NEW VEHICLE CAREFULLY AND VERIFY V. I. N. ON VEHICLE AGAINST V. I. N. SHOWN ABOVE. IF ANY EXCEPTIONS OR DAMAGE ARE NOTICED PHONE ARI BEFORE ACCEPTING THE NEW VEHICLE.
2. PLEASE COMPLETE:
   LICENSE PLATE # _____ EXPIRES _____
   KEY NUMBERS (IGNITION) _____ (TRUNK) _____
   MILEAGE: _____
3. NEW VEHICLE CONDITION AT DELIVERY: _____
4. USED VEHICLE TURNED IN :  YES ☐   NO ☐
   LOCATION: _____ MILEAGE _____

### DELIVERY DEALER · INSTRUCTIONS

:ALER - PLEASE CONTACT DRIVER TO ARRANGE DELIVERY

### INSURANCE INFORMATION

COMPANY:
POLICY NO.:
EXPIRATION DATE:
INSURANCE CARD:
☐ ENCLOSED       ☐ DRIVER TO FURNISH

:EALER - CALL TO REPORT DELIVERY 1-800-257-7761

### DEALER INSTALLED EQUIPMENT

### SPECIAL INSTRUCTIONS

### TITLE INSTRUCTIONS

### NEW VEHICLE DESCRIPTION

### REGISTRATION INSTRUCTIONS

:NSFER PLATES IF POSSIBLE

### SALES TAX

### LIENHOLDER

: AMOUNT



REPRESENTATIVES, INC. UNION...

*Exhibit G*

## AUTOMOTIVE RENTALS

9000 MIDLANTIC DRIVE · P.O. BOX 5039 · MT. LAUREL, N.J. 08054 · (609) 778-1500

### USED VEHICLE RETURN RECEIPT AND STATEMENT OF CONDITION

| VEHICLE NUMBER | LESSEE NO. | YEAR | MAKE | MODEL | COLOR | SERIAL NUMBER |
|---|---|---|---|---|---|---|

S.D.O.

It law (and state, if applicable) requires that the lessee disclose the vehicle's mileage to the lessor in connection with the transfer of ownership. Failure to complete and/or making a false ...ent may result in fines or imprisonment. In this regard please certify by your signature below, that the odometer now reads _____ (no tenths) miles and ... the best of your knowledge it reflects the actual mileage of the vehicle described above, unless one of the following statements is checked below.

☐ to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits
☐ the odometer reading is not the actual reading

License Plate No. _____ State _____ Year _____

Signature _____

| INDICATE | ENGINE | | | ☐ AUTOMATIC TRANSMISSION | ☐ AIR CONDITIONER | ☐ CRUISE | ☐ TILT | ☐ STEREO | ☐ POWER WINDOWS |
|---|---|---|---|---|---|---|---|---|---|
| H CHECK (✓) | 4 | 6 | 8 | ☐ POWER SEAT | ☐ VINYL ROOF | OTHER (LIST) | | | |

### CONDITION OF BODY

**FRONT**         **REAR**

...D _____

..LE _____

..PER _____

..PER GUARDS _____

...TS _____

TRUNK LID/TAILGATE _____

REAR PANEL _____

BUMPER _____

BUMPER GUARDS _____

LIGHTS _____

**DRIVERS SIDE**         **PASSENGER SIDE**

..NDER _____

..R (S) _____

..KER PANEL _____

..ENDER _____

..EL COVERS _____

F. FENDER _____

DOOR (S) _____

ROCKER PANEL _____

R. FENDER _____

WHEEL COVERS _____

ROOF _____

..CRIBE CHROME TRIM DAMAGE (RAILS AND DECALS ON WAGONS) _____

_____

..CK FLUID LEVELS—OIL _____ RADIATOR _____ BATTERY _____ TRANSMISSION _____

### DRIVE VEHICLE TO DETERMINE CONDITION OF FOLLOWING:

..ATER _____

_____

..HAUST SYSTEM _____

..CONDITIONER _____

TRANSMISSION _____

STEERING _____

AXLE _____

BRAKES _____

USE THESE SYMBOLS TO SHOW LOCATION, APPROXIMATE SIZE AND DIRECTION OF DEFECTS
∿∿∿ — — = SCRATCH
— — — = CRACK
↓ = BREAK

DRIVER'S SIDE

OTHER GLASS DESCRIBE _____

| ..ES (INDICATE CONDITION, INCLUDING SIDEWALLS, BY LETTER | A – ACCEPTABLE R – REPLACE S – SNOW/MUD | ☐ LF | ☐ RF | ☐ LR | ☐ RR | ☐ SPARE |
|---|---|---|---|---|---|---|

| ..DICATE OVERALL CONDITION OF VEHICLE | ☐ CLEAN | ☐ AVERAGE | ☐ FAIR | ☐ ROUGH |
|---|---|---|---|---|

..ERIOR PAINT – GOOD _____ FAIR _____ POOR (Describe) _____

..RIOR TRIM – GOOD _____ FAIR _____ POOR (Describe) _____

..CATE CONDITION: RUGS/MATS _____ UPHOLSTERY _____ HEADLINER _____ CARGO AREA (WAGON) _____

..ER REMARKS _____

_____

..EHICLE HAS BEEN STORED SHOW LOCATION _____

DATE

_____
SIGNATURE ARI REPRESENTATIVE

_____
SIGNATURE CLIENT REPRESENTATIVE

Exhibit H

# MOTOR VEHICLE LEASE AGREEMENT

Automotive Rentals, Inc. ("ARI") hereby leases to Northern Telecom Inc. ("Lessee") the vehicle referred to herein for the rental set forth herein. This Motor Vehicle Lease Agreement and any assignment hereof is subject to all the terms and conditions of the Agreement dated January 15, 1993 between ARI and Lessee governing the leasing of vehicles to Lessee (the "January 15, 1993 Agreement"), all of which terms and conditions are incorporated herein by reference. In the event of any conflict between the terms of this Motor Vehicle Lease Agreement or any assignment made pursuant hereto, and the January 15, 1993 Agreement, the terms of the January 15, 1993 Agreement shall control.

ARI hereby assigns to CoreStates Bank, N.A. ("Assignee") all right, title and interest of ARI in and to all monies due and to become due under this Motor Vehicle Lease Agreement and ARI hereby authorizes Assignee to collect all such monies when due.

Lessee and ARI agree that, pursuant to this assignment, all rights and remedies of ARI under this Motor Vehicle Lease Agreement with respect all monies due and to become due after the effective date of this assignment shall vest in and be exercisable solely by Assignee, that Lessee will render performance of Lessee's obligations hereunder to Assignee rather than ARI and that the rights of Assignee to rental fees and other sums due hereunder shall not be subject to any defenses (except payment and/or termination as permitted under the January 15, 1993 Agreement), off-set, counterclaim, or recoupment of Lessee whatsoever arising from a breach of warranty or representation relating to the motor vehicle made by the manufacturer thereof, ARI or any other person, or arising from the breach or failure of ARI to observe or perform the provisions of this Motor Vehicle Lease Agreement or any other agreement between ARI and Lessee, or arising from any cause whatsoever. Lessee's obligations to continue to pay Assignee shall be subject to Lessee's rights to terminate this Motor Vehicle Lease Agreement in accordance with Articles 3, 9 and 12 of the January 15, 1993 Agreement.

As long as Lessee continues to enjoy quiet possession of the motor vehicle subject to this Motor Vehicle Lease Agreement, Lessee also agrees to continue to make prompt payment to Assignee of the rental fees due hereunder even if bankruptcy, reorganization, arrangement, insolvency, liquidation or dissolution proceedings are instituted by or against ARI. Lessee also agrees that Assignee does not assume any obligations arising hereunder and Lessee will look solely to ARI for the performance of any such obligations.

## VEHICLE INFORMATION

| | |
|---|---|
| YR & MAKE - 1993 BUICK | MODEL   - LESABRE LTD   R69 |
| ENGINE  - 6 CYL 3.8 LITER | EXT COLOR- DK JADESTON |
| SERIAL #  - 1G4HR53L2PH514169 | DELIVERY DATE - 06/07/93 |

VEHICLE # - 0540-93191
LESSEE # - 0454-03
REVISION DATE:00/00/00 REVISION NO: 00

### S - SIDEBILLED   D - DEALER INSTALLED   EQUIPMENT

| | |
|---|---|
| EATHER INT | CRUISE CNTRL |
| TD AIR COND | 1SE PKG |
| INT GLASS ALLY | ALUM WHLS |
| M-FM STEREO | CD PLAYER |
| WR STEERING | PWR ANTENA |
| WR DISC BRAKES | KEYLESS ENTRY |
| WR WINDOWS | STRIPES |
| WR 6WAY DR+PAS | EUALIZER |
| WR DOOR LOCKS | CONV NET |
| ILT WHEEL | AUTOMATIC |

### COSTS

| DESCRIPTION | CAPPED AMOUNT | DESCRIPTION | CAPPED AMOUNT | DESCRIPTION | CAPPED AMOUNT |
|---|---|---|---|---|---|
| ASE COST | 22,156.57 | | | | |
| &H | 150.00 | | | | |
| LR INSTL ITEMS | 825.00 | | | | |
| EBATES 1 | 1,000.00- | | | | |
| OTAL COST | 22,131.57 | | | | |

## LEASE INFORMATION

OPEN END LEASE - PERIOD BEGINS: 06/93   TOTAL CAPITALIZATION:   22,131.57
* * * * * RATES BELOW REFLECT DEPRECIATION AND ADMINISTRATIVE FEE ONLY * * * * * *

| | RATE | AMT | |
|---|---|---|---|
| 1ST-12TH MONTH | .02000 | $450.13 | PER MONTH DEPRECIATION PERIOD 50 MONTHS @   $442.63 |
| 13TH-24TH MONTH | .02000 | $450.13 | PER MONTH |
| 25TH-36TH MONTH | .02000 | $450.13 | PER MONTH |
| 37TH-50TH MONTH | .02000 | $450.13 | PER MONTH |

### FINANCIAL INFO

INT-TYPE: FLOAT   INDEX: LIBOR   FACTOR-SCHEDULE: 111A

SOEASTBATES 610

| | | | |
|---|---|---|---|
| MAILING ADDRESS: | NORTHERN TELECOM, INC. ATIN: JULIE HOLLAND NORTHERN TELECOM PLAZA 200 ATHENS WAY NASHVILLE   TN 37228 | DRIVER NAME: ADDRESS: | DAVID   THOMSON NORTHERN TELECOM INC. 7400 W. 110TH ST STE 350 OVERLAND PARK   KS 66210 |

Exhibit I

**[FORM OF WRITING FROM ARI DIRECTING LESSEE TO MAKE PAYMENTS TO AN ASSIGNEE]**
**[TO APPEAR ON ARI'S LETTERHEAD]**

[Date]

Northern Telecom Inc.
Northern Telecom Plaza
200 Athens Way
Nashville, Tennessee 37228-1397

Subject:    Vehicle Lease Agreement dated January 15, 1993 between Northern Telecom Inc. and Automotive Rentals, Inc.

Dear Sir/Madam:

Under the terms of the above-mentioned Agreement, we are requesting that rental payments be made to CoreStates Bank, N.A., and mailed to:

> CoreStates Bank, N.A.
> P.O. Box 8500-4375
> Philadelphia, PA 19178-4375

CoresStates Bank has been designated by Automotive Rentals, Inc. as Assignee under the terms of the January 15, 1993 Vehicle Lease Agreement between Automotive Rentals, Inc. and Northern Telecom Inc.

Our rental billings will show the above mailing address.

Please acknowledge by signing in the space provided below; returning two copies for our files.

Very truly yours,


M. F. Laporta
President



Enclosures

The undersigned acknowledges receipt of the foregoing direction and agrees to make the payments referred to above to CoreStates Bank, N.A. at the address referred to above unless otherwise notified by CoreStates Bank, N.A.

By:_____

Title:_____

Date:_____





crlari93.021594

From:    Origin ID: WWDA  (856) 778-1500
Virginia Lee
ARJ Accounting
9000 Midlantic Drive

**Mt. Laurel, NJ 08054**





Ship Date: 25SEP09
ActWgt: 1.0 LB
CAD: 1939531/INET9090
Account#: S *********

Delivery Address Bar Code

Ref #    710.410.117
Invoice #
PO #
Dept #    710.410.117

SHIP TO:    (856) 778-1500    X 2607    BILL SENDER
**Nortel Newtwork Inc. Claims Proc CT**
**c/o Epiq Bankruptcy Solutions, LLC**
**757 3RD AVE FRNT 3**

**NEW YORK, NY 10017**

*RECEIVED*

TRK#
0201    7969 7682 2700    MON - 28SEP    **A1**
**STANDARD OVERNIGHT**



**10017**
NY-US
EWR

# SB OGSA

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# EXHIBIT B

CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS
LONDON · MOSCOW · FRANKFURT · COLOGNE
ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial (212) 225-2264
E-Mail jbromley@cgsh.com

MARK A WALKER
LESLIE B SAMUELS
EDWARD F GREENE
ALLAN G SPERLING
EVAN A DAVIS
LAURENT ALPERT
VICTOR I LEWKOW
LESLIE N SILVERMAN
ROBERT L TORTORIELLO
A RICHARD SUSKO
LEE C BUCHHEIT
JAMES M PEASLEE
ALAN L BELLER
THOMAS J MOLONEY
WILLIAM F GORIN
MICHAEL L RYAN
ROBERT P DAVIS
YARON Z REICH
RICHARD S LINCER
JAIME A EL KOURY
STEVEN G HOROWITZ
ANDREA G PODOLSKY
JAMES A DUNCAN
STEVEN M LOEB
DANIEL S STERNBERG
DONALD A STERN
CRAIG B BROD
SHELDON H ALSTER
WANDA J OLSON
MITCHELL A LOWENTHAL
DEBORAH M BUELL
EDWARD J ROSEN
JOHN PALENBERG
LAWRENCE B FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E AUSTIN
SETH GROSSHANDLER
WILLIAM A GROLL
JANET L FISHER

DAVID L SUGERMAN
HOWARD S ZELBO
DAVID E BRODSKY
ARTHUR H KOHN
RAYMOND B CHECK
RICHARD J COOPER
JEFFREY S LEWIS
FILIP MOERMAN
PAUL J SHIM
STEVEN L WILNER
ERIKA W NIJENHUIS
LINDSEE P GRANFELD
ANDRES DE LA CRUZ
DAVID C LOPEZ
CARMEN A CORRALES
JAMES L BROMLEY
PAUL E GLOTZER
MICHAEL A GERSTENZANG
LEWIS J LIMAN
LEV L DASSIN
NEIL Q WHORISKEY
JORGE U JUANTORENA
MICHAEL D WEINBERGER
DAVID LEINWAND
JEFFREY A ROSENTHAL
ETHAN A KLINGSBERG
MICHAEL J VOLKOVITSCH
MICHAEL D DAYAN
CARMINE D BOCCUZZI, JR
JEFFREY D KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J RAYMOND
LEONARD C JACOBY
SANDRA L FLOW
FRANCESCA L ODELL
WILLIAM L MCRAE
JASON FACTOR
MARGARET S PEPONIS
LISA M SCHWEITZER

KRISTOFER W HESS
JUAN G GIRALDEZ
DUANE MCLAUGHLIN
BREON S PEACE
MEREDITH E KOTLER
CHANTAL E KORDULA
BENET J O'REILLY
DAVID AMAN
ADAM E FLEISHER
SEAN A ONEAL
GLENN P MCGRORY
CHRISTOPHER P MOORE
JOON H KIM
MATTHEW P SALERNO
MICHAEL J ALBANO
VICTOR L HOU
RESIDENT PARTNERS

SANDRA M ROCKS
ELLEN H CREEDE
S DOUGLAS BORISKY
JUDITH KASSEL
DAVID E WEBB
PENELOPE L CHRISTOPHOROU
BOAZ S MORAG
MARY E ALCOCK
GABRIEL J MESA
DAVID H HERRINGTON
HEIDE H ILGENFRITZ
KATHLEEN M EMBERGER
NANCY I RUSKIN
WALLACE L LARSON JR
JAMES D SMALL
AVRAM E LUFT
ELIZABETH LENAS
DANIEL ILAN
CARLO DE VITO PISCICELLI
RESIDENT COUNSEL

October 4, 2010

<u>VIA EMAIL and FEDERAL EXPRESS</u>

Mr. John V. Fiorella
Archer and Greiner P.C.
One Centennial Square
33 East Euclid Avenue
Haddonfield, NJ 08033

Re:    Vehicle Lease Agreement between Nortel Networks Inc. and Automotive
       Rentals, Inc.

Dear Mr. Fiorella:

        I write as restructuring counsel to Nortel Networks Inc. ("NNI") and the other
U.S. Nortel debtor entities.  As you know, NNI and several of its affiliates filed for bankruptcy
protection in the United States on January 14, 2009 (the "Petition Date").  On the same day,
Nortel Networks Limited ("NNL") and several of its affiliates applied for creditor protection in
Canada.

        Reference is made to the Vehicle Lease Agreement between Nortel Networks
Inc., and Automotive Rentals, Inc. ("ARI"), dated as of January 15, 1993, and amended from
time to time (as amended, the "Agreement").

        It has come to our attention that ARI has taken the position that it is not required
to continue performing under the Agreement until it is paid in full for all amounts due and
owing, including those amounts incurred prior to the Petition Date.  Specifically, ARI has
stopped payment on amounts owed to NNI owed under the terms of the Agreement on the
grounds that ARI is owed amounts by NNL.

Mr. John V. Fiorella, p. 2
October 4, 2010

Upon the filing of a bankruptcy petition, the U.S. Bankruptcy Code imposes an automatic stay that enjoins all persons from, among other things, taking any action to collect, assess or recover a claim against any of the Debtors that arose before the commencement of the Debtors' chapter 11 cases. The automatic stay applies to all of the Debtors' property, including contract rights and receivable amounts, wherever located. Moreover, the Bankruptcy Code prevents counterparties from refusing to continue to comply with their post-filing contractual obligations based on non-payment of amounts incurred prior to the bankruptcy filing.

Enclosed for your reference please find a copy of the Order Enforcing Section 362 of the Bankruptcy Code, signed by Judge Gross of the United States Bankruptcy Court for the District of Delaware on January 15, 2009. As you will see upon review of this order, any refusal to perform your contractual obligations on a going forward basis until pre-filing amounts are paid clearly violates the orders.

Nortel values its relationship with ARI, and would prefer to resolve this dispute at the business level rather than resort to legal action. However, Nortel will take all action necessary to protect its rights under the stays imposed by U.S. law.

We therefore request that you contact Mark Taylor, the Nortel Supplier Relationship Manager for your company, at (613) 763-5332 to determine if this situation can be expeditiously resolved on a business level.

Sincerely,

James L. Bromley

Enclosures

cc:   Mark Taylor
      Randal Izzard
      Tom Ayres
      Jennifer Stam

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------X
                     :

*In re*                      :

Nortel Networks Inc., *et al.*,[1]   :

          Debtors.     :

                      :

----------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Joint Administration Pending

RE: D.I. 16

## ORDER ENFORCING SECTION 362 OF THE BANKRUPTCY CODE

Upon the motion dated January 14, 2009 (the "Motion"),[2] of Nortel Networks Inc. and its

affiliated debtors, as debtors and debtors in possession in the above-captioned cases (the

"Debtors"), for entry of an order, as more fully described in the Motion, enforcing the

Bankruptcy Code's automatic stay provision, and upon consideration of the Declaration of John

Doolittle in Support of First Day Motions and Applications (the "First Day Declaration"), filed

concurrently with the Motion; and adequate notice of the Motion having been given as set forth

in the Motion; and it appearing that no other or further notice is necessary; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334; and the Court having determined that consideration of the Motion is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that the legal and factual

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

bases set forth in the Motion and the First Day Declaration establish just cause for the relief requested in the Motion, and that such relief is in the best interests of the Debtors, their estates, their creditors and the parties in interest; and upon the record in these proceedings; and after due deliberation;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Debtors are authorized, by virtue of the filing of their petitions for relief under chapter 11 of the Bankruptcy Code, to be afforded the protections of, *inter alia*, section 362 of the Bankruptcy Code, a copy of which is annexed hereto as Exhibit 1, and section 541 of the Bankruptcy Code, a copy of which is annexed hereto as Exhibit 2.

3.      This Order is intended to be declarative of and coterminous with, and shall neither abridge, enlarge nor modify, the rights and obligations of any party under section 362 of the Bankruptcy Code.

4.      Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order;

5.      The requirements set forth in Rule 6003(b) of the Federal Rules of Bankruptcy Procedure are satisfied by the contents of the Motion or otherwise deemed waived;

6.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: **January 15**, 2009
Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

2667087.1

3

**EXHIBIT 1**

**11 U.S.C. § 362(a)**

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of —

   (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

   (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

   (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

   (4) any act to create, perfect, or enforce any lien against property of the estate;

   (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

   (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

   (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

   (8) the commencement or continuation of a proceeding before the United States Tax Court concerning a corporate debtor's tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title

## EXHIBIT 2

**11 U.S.C. § 541**

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is —

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 329 (b), 363 (n), 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510 (c) or 551 of this title.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date —

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

(b) Property of the estate does not include —

    (1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor;

    (2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case;

    (3) any eligibility of the debtor to participate in programs authorized under the Higher Education Act of 1965 (20 U.S.C. 1001 et seq.; 42 U.S.C. 2751 et seq.), or any accreditation status or State licensure of the debtor as an educational institution;

    (4) any interest of the debtor in liquid or gaseous hydrocarbons to the extent that—

        (A) (i) the debtor has transferred or has agreed to transfer such interest pursuant to a farmout agreement or any written agreement directly related to a farmout agreement; and

        (ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 544 (a)(3) of this title; or

        (B) (i) the debtor has transferred such interest pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred; and

        (ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 542 of this title;

    (5) funds placed in an education individual retirement account (as defined in section 530(b)(1) of the Internal Revenue Code of 1986) not later than 365 days before the date of the filing of the petition in a case under this title, but —

        (A) only if the designated beneficiary of such account was a child, stepchild, grandchild, or stepgrandchild of the debtor for the taxable year for which funds were placed in such account;

        (B) only to the extent that such funds —

(i) are not pledged or promised to any entity in connection with any extension of credit; and

(ii) are not excess contributions (as described in section 4973(e) of the Internal Revenue Code of 1986); and

(C) in the case of funds placed in all such accounts having the same designated beneficiary not earlier than 720 days nor later than 365 days before such date, only so much of such funds as does not exceed $5,475;

(6) funds used to purchase a tuition credit or certificate or contributed to an account in accordance with section 529(b)(1)(A) of the Internal Revenue Code of 1986 under a qualified State tuition program (as defined in section 529(b)(1) of such Code) not later than 365 days before the date of the filing of the petition in a case under this title, but —

(A) only if the designated beneficiary of the amounts paid or contributed to such tuition program was a child, stepchild, grandchild, or stepgrandchild of the debtor for the taxable year for which funds were paid or contributed;

(B) with respect to the aggregate amount paid or contributed to such program having the same designated beneficiary, only so much of such amount as does not exceed the total contributions permitted under section 529(b)(7) of such Code with respect to such beneficiary, as adjusted beginning on the date of the filing of the petition in a case under this title by the annual increase or decrease (rounded to the nearest tenth of 1 percent) in the education expenditure category of the Consumer Price Index prepared by the Department of Labor; and

(C) in the case of funds paid or contributed to such program having the same designated beneficiary not earlier than 720 days nor later than 365 days before such date, only so much of such funds as does not exceed $5,475;

(7) any amount —

(A) withheld by an employer from the wages of employees for payment as contributions —

(i) to —

(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

3

(II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

(III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325 (b)(2); or

(ii) to a health insurance plan regulated by State law whether or not subject to such title; or

(B) received by an employer from employees for payment as contributions—

(i) to —

(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

(II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

(III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
except that such amount under this subparagraph shall not constitute disposable income, as defined in section 1325 (b)(2); or

(ii) to a health insurance plan regulated by State law whether or not subject to such title;

(8) subject to subchapter III of chapter 5, any interest of the debtor in property where the debtor pledged or sold tangible personal property (other than securities or written or printed evidences of indebtedness or title) as collateral for a loan or advance of money given by a person licensed under law to make such loans or advances, where —

(A) the tangible personal property is in the possession of the pledgee or transferee;

(B) the debtor has no obligation to repay the money, redeem the collateral, or buy back the property at a stipulated price; and

4

(C) neither the debtor nor the trustee have exercised any right to redeem provided under the contract or State law, in a timely manner as provided under State law and section 108 (b); or

(9) any interest in cash or cash equivalents that constitute proceeds of a sale by the debtor of a money order that is made —

(A) on or after the date that is 14 days prior to the date on which the petition is filed; and

(B) under an agreement with a money order issuer that prohibits the commingling of such proceeds with property of the debtor (notwithstanding that, contrary to the agreement, the proceeds may have been commingled with property of the debtor),
unless the money order issuer had not taken action, prior to the filing of the petition, to require compliance with the prohibition.

Paragraph (4) shall not be construed to exclude from the estate any consideration the debtor retains, receives, or is entitled to receive for transferring an interest in liquid or gaseous hydrocarbons pursuant to a farmout agreement.

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law —

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's

5

legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

(e) In determining whether any of the relationships specified in paragraph (5)(A) or (6)(A) of subsection (b) exists, a legally adopted child of an individual (and a child who is a member of an individual's household, if placed with such individual by an authorized placement agency for legal adoption by such individual), or a foster child of an individual (if such child has as the child's principal place of abode the home of the debtor and is a member of the debtor's household) shall be treated as a child of such individual by blood.

(f) Notwithstanding any other provision of this title, property that is held by a debtor that is a corporation described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from tax under section 501(a) of such Code may be transferred to an entity that is not such a corporation, but only under the same conditions as would apply if the debtor had not filed a case under this title.

# EXHIBIT C



**ARCHER & GREINER, P.C.**
ATTORNEYS AT LAW

**JOHN V. FIORELLA**
*Member of New Jersey and Delaware Bar*

ONE CENTENNIAL SQUARE
HADDONFIELD, NJ 08033-0968
856-795-2121
FAX 856-795-0574

www.archerlaw.com

Email Address:
jfiorella@archerlaw.com

Direct Dial:          Direct Fax:
(856) 354-3043      (856) 673-7043

October 11, 2010

**VIA E-MAIL (jbromley@cgsh.com)**
**AND FIRST CLASS MAIL**

James L. Bromley, Esquire
Cleary Gottlieb Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006-1470

Re:      Vehicle Lease Agreement Between Nortel Networks, Inc.
and Automotive Rentals, Inc. ("ARI")

Dear Mr. Bromley:

I am in receipt of your letter of October 4, 2010. I understand your position with regard to the application of 11 U.S.C. § 362. Please be advised that the position of ARI is that the Lease Agreement was previously rejected; the rejection constitutes a default under the Lease Agreement as of the date of filing. Under the terms of the Lease, if the Lease is in default, the Debtor, as Lessee, is no longer entitled to be issued credits upon the disposition of vehicles which are returned under the defaulted upon Lease. Accordingly, ARI believes that it has continued to perform its remaining obligations under the rejected Lease.

The above notwithstanding, your letter refers ARI to Mark Taylor to determine if the situation can be resolved at a business level. It was my understanding that the matter has already been resolved, and it was only referred to counsel in order to implement the resolution which had been reached. The resolution, as I understand it, is that ARI will return to the Debtor approximately the sum of $384,000, which represents the gains on the sale of the returned vehicles under the rejected Lease which were realized by ARI on their disposition. Even if the Lease was not in breach by virtue of the rejection of the Lease, the credits would be computed on the basis of the amounts realized from the sale of the vehicles less the capitalized value for each vehicle remaining on ARI's books and any other amounts due to ARI. The capitalized value presumes that all Lease payments and other amounts had been paid up to the date of disposition.

| PRINCETON OFFICE | FLEMINGTON OFFICE | PHILADELPHIA OFFICE | WILMINGTON OFFICE | GEORGETOWN OFFICE | NEW YORK OFFICE |
|---|---|---|---|---|---|
| 700 Alexander Park | Plaza One | One Liberty Place - 32nd Floor | 300 Delaware Avenue | 9 East Market Street | 2 Penn Plaza |
| Suite 102 | 1 State Route 12, Suite 201 | 1650 Market Street | Suite 1370 | P.O. Box 977 | Suite 1500 |
| Princeton, NJ 08540 | Flemington, NJ 08822-1722 | Philadelphia, PA 19103-7393 | Wilmington, DE 19801 | Georgetown, DE 19947 | New York, NY 10121 |
| P 609-580-3700 | P 908-788-9700 | P 215-963-3300 | P 302-777-4350 | P-302-858-5151 | P 212-292-4988 |
| F 609-580-0051 | F 908-788-7854 | F 215-963-9999 | F 302-777-4352 | F-302-858-5161 | F 212-629-4568 |

James L. Bromley, Esquire
October 11, 2010
Page 2

I assume from your letter that Mr. Taylor had not conveyed to you the resolution which he worked out with ARI. My understanding was that what is left for us to do is to work out the terms of a stipulation or settlement agreement to be approved by the Bankruptcy Court to implement their business solution.

The resolution between ARI and Mr. Taylor has been complicated by the recent preference Complaint (Adversary Proceeding No. 10-53167) filed on October 2, 2010. I believe that ARI has complete new value and ordinary course defenses to the action. Regardless, any resolution relating to the return of amounts discussed with Mr. Taylor will have to wait for a resolution of the preference action, since the calculation of the credits arising from the disposition of the vehicles under the rejected lease will be affected dollar for dollar by any amount paid in the preference action. I will be contacting counsel in the preference action in the near future to discuss with them ARI's defenses. If there is someone else that you would prefer I deal with, please advise me.

Please note that the amounts that I have set forth above are somewhat approximate, and I will have to get exact numbers from ARI so that you can confirm them with Mark Taylor.

Should you have any questions, please advise me.

Sincerely,

JOHN V. FIORELLA

JVF/fap
cc:    Mr. Richard E. Moyer

6041276v1