# EXHIBIT D

## Izzard Declaration

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------X
                                                         :
*In re*                                                  :    Chapter 11
                                                         :
Nortel Networks Inc., *et al.*,[1]                       :    Case No. 09-10138 (KG)
                                                         :
                                 Debtors.                :    Jointly Administered
                                                         :
                                                         :
---------------------------------------------------------X

**DECLARATION OF RANDAL IZZARD IN SUPPORT
OF DEBTOR NORTEL NETWORK INC.'S MOTION FOR
ENTRY OF AN ORDER ENFORCING THE AUTOMATIC
STAY AGAINST AUTOMOTIVE RENTALS, INC.**

I, Randal Izzard, hereby declare as follows:

1.       I hold the position of Director of Indirect Procurement at Nortel Networks Inc., a position that I have held since September, 2009.  Prior to holding my current position, I was Category Manager in the Indirect Procurement group.  I have held positions in the Indirect Procurement group since October, 2004.  In my current position, I am responsible for supervising management of supplier relationships, including review of contractual terms and management of contract disputes and other issues.

2.       I submit this Declaration in support of the Motion of Debtor Nortel Networks Inc. ("NNI") for Entry of an Order Enforcing the Automatic Stay Against Automotive Rentals, Inc.

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

("ARI").[2] The purpose of this Declaration is to place a certain exhibit referred to in the Motion before the Court.

3.       Attached hereto as **Exhibit A** is a true and correct copy of the Master Lease Agreement between NNI (as successor to Northern Telecom Inc.), and ARI, dated January 15, 1993, with the amendments thereto.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 5, 2011

Randal Izzard

---

[2]       Capitalized terms not defined herein shall have the same meanings as in the Motion.

**EXHIBIT A**

**InBound Contracts Solutions (ICS)**
**Contract Signoff Approval Form - Scanning Control Form**

* Nortel Legal Entity Signing:              Northern Telecom Inc.

  Nortel Business Unit Involved:

* Document Type:                            Lease Agreement

* Agreement Type of Original Document:      Not Applicable

* Product / Service Covered:                Goods Miscellaneous

* Archiving Folder Category                 Expense/Capital Goods

* Contracted Party Legal Name:              Automotive Rentals, Inc.

* Agreement No. of this Document:           730280

* Agmt. No. of Original Document:

* Agreement Term Start Date:                01/15/1993
  mm/dd/yyyy
  Agreement Term Expiration Date:
  mm/dd/yyyy

  Nortel Product/Technology Manager:

  ICS Prime:

  Nortel Attorney of Record:

  Forecasted Total Amount in U.S. Dollars
  to be spent by Nortel during the term:

  Any amount COMMITTED in attached
  contract to be spent in U.S. Dollars:

  Brief Description of Agreement:

  Significant deviations from pre-approved
  standard template language:

  Summary of Approvals:                     (Approvals may be obtained either in writing or via e-mail at
                                            the discretion of the ICS Prime.

  Product Management or
  Technology Management Approval:

  (optional) Finance Approval:

  Nortel Networks Legal Approval:

  Supply Management Prime Approval:

  Today's Date:

6/21/2000 11:38 AM                          version 1

NTI Agreement No. 730280
ARI Agreement No. _____

## VEHICLE LEASE AGREEMENT

This Agreement entered into as of the 15th day of January, 1993, by and between Automotive Rentals, Inc., a New Jersey corporation with its principal place of business at 9000 Midlantic Drive, P.O. Box 5039 Mt. Laurel, New Jersey 08054, hereinafter called "ARI" and Northern Telecom Inc., having its principal place of business at 200 Athens Way, Nashville, Tennessee 37228-1397, hereinafter called "Lessee."

**WITNESSETH THAT**, the parties hereto intending to be legally bound, hereby agree as follows:

### ARTICLE 1
### Lease of Vehicles

1.1    ARI shall lease to Lessee new vehicles as may be ordered by Lessee. All vehicles leased hereunder shall be owned by, and titled and/or registered in the name of ARI. This is an agreement to Lease only and Lessee has no right or option to purchase the vehicles at any time, except, however, Lessee shall have the option to purchase a vehicle at its then Fair Market Value in accordance with Article 12.1 herein. Any such option shall be subject to the minimum Initial Lease Term set forth in Article 3.1 and any obligations of Lessee set forth in Article 5.3. Notwithstanding the fact that both parties to this Lease Agreement intend to create a true lease and not a security agreement, to the extent that any court may determine that this lease is one intended as security, Lessee hereby grants to ARI a security interest in all of Lessee's right, title and interest in and to the vehicles leased hereunder and in all proceeds, products and substitutes or replacements thereof.

### ARTICLE 2
### Ordering and Delivery of Vehicle

2.1    **Ordering Vehicles.** Lessee shall furnish ARI a written or electronically transmitted order for each vehicle to be leased hereunder, specifying the make, model, equipment and a delivery point within the United States of America. The Capitalized Value, as defined in Article 6, for vehicles purchased by ARI from a dealer's inventory ("Stock Purchases") and for vehicles purchased by ARI which are specially ordered by a dealer from the manufacturer ("Factory Orders") shall be determined in accordance with Exhibit A. For vehicles to be leased hereunder with delivery points in Puerto Rico or Mexico, ARI shall advise Lessee of the Capitalized Value for such vehicles prior to Lessee's issuance of an order therefor.

2.2    **Delivery of Vehicles.** ARI agrees to deliver each vehicle leased hereunder to Lessee at the delivery point indicated in Lessee's order therefor, subject to ARI's ability to obtain sufficient vehicles of the type ordered in the time specified by Lessee, and subject to any other contingency beyond the control of ARI.

### ARTICLE 3
### Vehicle Lease Term

3.1    The term over which each vehicle leased hereunder shall be depreciated shall be the period specified in Exhibit B ("Depreciation Period"), or such other period as may be mutually agreed upon. The "Initial Lease Term" for each vehicle shall commence on the date that Lessee accepts delivery of such vehicle in accordance with Article 4, and shall continue for a minimum of twelve (12) months. After the Initial Lease Term, each lease shall continue on a month-to-month basis until the Depreciation Period specified in Exhibit B expires, unless such lease is earlier terminated as provided hereunder.

3.2    At the expiration of the Depreciation Period, each lease shall continue on a month-to-month basis, and the monthly rental fee after the expiration of the Depreciation Period shall be solely that specified in Article 5.6 herein, until such lease is terminated by notification by Lessee to ARI.

3.3    Each vehicle leased hereunder shall be deemed to be covered by a separate lease, Motor Vehicle Lease Agreement, in the form of Exhibit H hereto, applicable only to that specific vehicle. In the event of any conflict between the terms and conditions (other than pricing and vehicle specifications) of any individual Motor Vehicle Lease Agreement and this Agreement, including but not limited to the exemplar copy of Exhibit H attached hereto, the

- 1 -

crlari93.021594

terms and conditions of this Agreement shall control, and ARI shall indemnify NTI for any damages suffered by NTI as a result of a claim made against NTI based upon such inconsistency.

## ARTICLE 4
### Acceptance of Delivery of Vehicle

4.1    **Acceptance.** Lessee agrees to accept delivery of each vehicle ordered upon notice from ARI's delivering agent of the availability of each such vehicle at the delivery point indicated in Lessee's order therefor.

4.2    **Delivery Receipt.** In order to evidence its acceptance of delivery of each vehicle which it ordered, Lessee shall execute, by an authorized representative, and deliver to ARI a Delivery Receipt, in the form attached hereto and marked Exhibit F. The date indicated on the Delivery Receipt as the date on which Lessee accepted the vehicle identified thereon shall be deemed to be the first day of the Initial Lease Term with respect to such vehicle.

4.3    **ARI's Delivery Obligations.** As part of its delivery obligations, ARI shall ensure that each vehicle has been prepared for delivery by the dealer and that the benefits of the manufacturer's warranty, and the dealer's warranty, if any, shall be made directly available to Lessee, and no vehicle shall be deemed to have been made available at the delivery point until such obligations have been satisfied by ARI.

## ARTICLE 5
### Rental Payments

5.1    Lessee agrees to pay ARI, at Mt. Laurel, New Jersey (or at such other location as ARI may direct in writing), or its Assignee as described in Article 8, a monthly rental fee for the use of each vehicle leased hereunder during the term of such lease.

5.2    ARI shall send each monthly rental bill via overnight delivery service. With respect to each vehicle leased hereunder, all rental fee payments shall be due and payable on or before the thirtieth (30th) day of the month for which Lessee is being billed, or the last calendar day of that month, whichever is later ("Due Date"). Lessee shall pay interest on any payment not paid by the Due Date at a rate equal to the then current prime interest rate as announced by Citibank N.A. on the date the payment becomes overdue.

5.3    A full monthly rental fee payment shall be charged for each vehicle delivered on or before the fifteenth (15th) day of any month, but no charge shall be made for the month if the vehicle is delivered on or after the sixteenth (16th) day of any month. If a lease is terminated or expires on or before the fifteenth (15th) day of a month, the obligation to pay rent for such vehicle shall terminate on the last day of the preceding calendar month, and, if a lease is terminated or expires on or after the sixteenth (16th) day of a month, the obligation to pay rent for such vehicle shall terminate on the last day of the calendar month in which such expiration or termination occurs.

5.4    For each leased vehicle, the monthly rental fee during the Depreciation Period shall be computed as set forth in Exhibit B herein.

5.5    In the event a commercial vehicle, such as a truck, requires the installation of additional equipment after its delivery to ARI but before its delivery to Lessee (commonly known in the industry as "upfitting"), ARI shall diligently arrange and pay for the installation of such equipment, the price for which shall be added to the Capitalized Value for such commercial vehicle in accordance with Article 6, and if ARI is required to pay for such commercial vehicle after its delivery to ARI but prior to its delivery to Lessee, then the Initial Lease Term with respect to such commercial vehicle shall commence on the date ARI is invoiced for such vehicle by the manufacturer.

5.6    For each vehicle which remains leased to Lessee on a month-to-month basis after the expiration of the Depreciation Period, the monthly rental shall be solely the Administrative Fee indicated on Exhibit B.

## ARTICLE 6
### Capitalized Value

6.1    The "Capitalized Value" for the leased vehicles described on Exhibit A shall consist of the sum of the following amounts:

- 2 -

crlari93.021594

a.    (i)    For Factory Orders, the price paid by the dealer to the manufacturer ("Invoice Price"), as evidenced by the manufacturer's invoice to the dealer, less the amount specified in Exhibit A and less any additional discounts or rebates or other incentives negotiated directly with the manufacturer or dealer by Lessee or by ARI, plus, to the extent not listed on the invoice, any taxes, transportation and/or preparation charges, or

(ii)    for Stock Purchases, the price paid by ARI to the dealer to purchase the vehicle, including any taxes, transportation and/or preparation charges ("ARI's Acquisition Costs"), plus the amount specified in Exhibit A;

plus

b.    the amount paid by ARI to purchase and have installed any optional equipment and/or accessories requested by Lessee which were not furnished or included by the vehicle manufacturer and/or additional transportation charges incurred by reason of a change of delivery point requested by Lessee prior to delivery.

For vehicles other than those described on Exhibit A, ARI shall advise Lessee of the Capitalized Value of such vehicles prior to the issuance of an order therefor by Lessee.

## ARTICLE 7
### Costs Reimbursed by Lessee

7.1    Lessee shall reimburse ARI for the cost of state and local inspections, license tags, plates, and any certificates of title, notary fees, lien recording fees, clerk fees, and registrations and similar compliance required by law when a new vehicle is initially leased from ARI by Lessee.

## ARTICLE 8
### Assignment of Rentals

8.1    ARI may assign its rights and interest to all monies due and to become due to ARI with respect to any vehicle leased by Lessee under the terms of this Agreement to a financing institution (hereinafter, an "Assignee"), and in the event of such assignment, Lessee shall direct to Assignee, if so directed in writing by ARI, by means of a letter substantially in the form of Exhibit I hereto, the payments of such monies; such Assignee's right to payment of all such monies shall not be subject to any defense by Lessee, except payment to the Assignee or termination of the lease for such vehicle.   No such termination shall relieve Lessee of any obligations incurred prior to such termination.

8.2    In the event of any such assignment, the liability of Lessee to pay the appropriate monthly rental fee to the Assignee with respect to any vehicle leased hereunder shall not be terminated notwithstanding anything herein contained to the contrary, unless Lessee has terminated the lease for such vehicle as permitted under the terms of this Agreement and the Assignee has been paid any rental fees then outstanding.

8.3    ARI covenants that Lessee shall quietly possess each vehicle under lease hereunder throughout the entire term of such lease notwithstanding any such assignment by ARI, subject to and in accordance with this Agreement, as long as Lessee is not in default under this Agreement.

8.4    In the event of any conflict with any individual Motor Vehicle Lease Agreement executed pursuant to Article 3.3 hereof and this Article 8, the terms of this Article 8 shall prevail.

## ARTICLE 9
### Vehicle Replacement

9.1    Lessee may at any time after the Initial Lease Term described in Article 3.1, terminate a lease with respect to any given vehicle and retire such vehicle from service without replacement by giving ARI written notice to that effect and identifying the vehicle which will be retired and when and where it shall be surrendered to ARI.  The lease as to such vehicle shall terminate upon the surrender to ARI of such vehicle.

crlari93.021594

9.2    Upon expiration or termination of the lease with respect to any leased vehicle prior to the expiration of the Depreciation Period, Lessee shall pay to ARI, or if so directed by ARI in writing, to the appropriate Assignee, the Depreciated Value, as defined in Article 12.3.

## ARTICLE 10
### Surrender Upon Retirement

10.1    Upon the expiration or termination of the lease for any vehicle leased hereunder, Lessee shall surrender possession of the retired vehicle to ARI at a point agreeable to both parties. At the time of such surrender, ARI and Lessee, or their authorized representatives, shall execute a Used Vehicle Return Receipt and Statement of Condition form, in the form attached hereto and marked Exhibit G.

## ARTICLE 11
### Lease Termination Fee

11.1    Lessee shall not be obligated or liable to pay to ARI or any Assignee any lease termination fee or any other such fee, charge or penalty for the termination of any vehicle lease after the expiration of the Initial Lease Term.

## ARTICLE 12
### Disposition After Surrender of Leased Vehicle

12.1    **Disposition.** Upon the termination or expiration of the lease for each vehicle leased hereunder, ARI shall use its best efforts to sell the vehicle covered by such lease after possession thereof shall have been surrendered by Lessee at the highest possible price and in the most economical fashion then available, consistent with efforts to obtain the highest possible price ("Fair Market Value"). ARI's efforts shall include, but not be limited to, offering to sell such vehicles to Lessee or to Lessee's employees. Upon sale of a leased vehicle, ARI shall retain out of the sale price any costs which it may have incurred in transportation of the vehicle, fees paid, and repairs or replacements necessary to merchandise the vehicle, to arrive at the "Net Resale Proceeds."

12.2    **Rental Adjustment.** With respect to any vehicle sold or otherwise disposed of pursuant to Article 12.1,

        a.    if the amount of the Net Resale Proceeds is greater than the Depreciated Value, then ARI shall remit the amount of such excess to Lessee, or

        b.    if the amount of the Net Resale Proceeds is less than the Depreciated Value, then Lessee shall remit the amount of the deficiency to ARI.

12.3    **Depreciated Value.** The Depreciated Value of each vehicle shall be the Capitalized Value of such vehicle less the Total Depreciation Reserve paid by Lessee. The "Total Depreciation Reserve" for each vehicle shall be the sum derived by multiplying (a) the number of months for which the monthly rental fee was paid by Lessee pursuant to Article 5, by (b) the Capitalized Value of such vehicle, by (c) the monthly depreciation percentage shown on Exhibit B, for the Depreciation Period applicable to such vehicle.

## ARTICLE 13
### Use of Leased Vehicles

13.1    Lessee may use any vehicle leased hereunder at any and all times for any and all legal purposes. Title to each vehicle leased hereunder shall remain in ARI, but ARI shall have no control or supervision of the operation of any vehicle leased hereunder. Nothing herein contained shall authorize Lessee or any person to operate or otherwise use any vehicle contrary to law or to incur any liability or obligation on behalf of ARI. Lessee may also allow any vehicle leased hereunder to be used in accordance with the foregoing manner by any entity affiliated with Lessee, regardless of where such entity may be located.

crlari93.021594

## ARTICLE 14
### Registration

14.1  ARI shall register, and renew the registration for, each leased vehicle in the following manner, annually or as otherwise required:

   a.  ARI shall correspond directly with each state and Puerto Rico and pay any and all fees associated with the registration or registration renewal of each vehicle. Upon receipt of the registration or renewed registration, ARI shall send all registration documentation to the recipient designated by Lessee.

   b.  Lessee or Lessee's driver(s) shall be responsible for supplying ARI with a copy of each vehicle's current registration, except for vehicles registered in the state of Kentucky for which Lessee shall provide ARI with the original registration documents. Lessee shall also provide ARI with the original cards evidencing insurance coverage for all vehicles registered in the states of Arkansas, Connecticut, Kentucky, Nebraska, and Nevada. ARI shall assist Lessee in gathering registration and insurance documentation upon direction from Lessee.

   c.  Prior to the time required for renewal of a registration, Lessee shall be responsible for supplying ARI with any inspection reports, tax receipts and/or registration certificates necessary to complete the renewal. ARI shall provide Lessee with reports listing those vehicles with incomplete or missing registration renewal documents.

   d.  ARI shall also provide for the re-titling of a vehicle if it is transferred to a different state.

   e.  ARI assumes no responsibility under this registration renewal program except to use normal business efforts to render the services called for hereunder in a manner reasonably satisfactory to Lessee, and ARI shall not be liable or held accountable for mistakes of fact or law or for any loss or damage to Lessee arising or resulting therefrom or otherwise from its acts or omissions, except when such is due to its negligence or willful misconduct.

   f.  The effective date of ARI's responsibility to provide for the annual registration renewal of each vehicle enrolled in the renewal management program described in this Article 14 shall be immediately after the date this Agreement is signed by ARI.

   g.  ARI shall invoice Lessee for all fees and charges associated with each vehicle's annual registration renewal and re-titling expenses on the monthly rental fee invoice.

   h.  ARI is unable to provide this annual registration renewal service in the states of Hawaii, Delaware, Maine and New Hampshire and in Mexico. For these states, ARI shall deliver to Lessee, not later than sixty (60) days prior to the expiration of the first and any subsequent registration periods, documents which may be necessary for Lessee to obtain a new registration, state license tags, a certificate of title and similar permits required for the lawful operation of a vehicle. The certificates and permits shall indicate that ownership of said vehicle is in ARI. When obtained, such certificates and permits, unless required to be carried in the Vehicle, shall be sent by Lessee to ARI. Lessee shall notify ARI if documents to obtain a new registration, state license tags, a certificate of title and similar permits for the authorized operation of the vehicle are not received by Lessee or Lessee's representative thirty (30) days prior to the expiration of same.

## ARTICLE 15
### Responsibility for Maintenance

15.1  ARI shall have no responsibility for the maintenance and upkeep of any vehicle leased hereunder after it is delivered to and accepted by Lessee and until such time as Lessee surrenders possession of any such vehicle to ARI as provided in Article 10 herein; during such time, Lessee shall maintain, service and keep in good repair each vehicle at its own expense.

crlari93.021594

## ARTICLE 16
### Damage or Destruction of Leased Vehicles

16.1    **Responsibility for Repairs.** *In the event a leased vehicle is damaged, its repair shall be the responsibility and obligation of Lessee in every such instance, unless such damage was caused by, or is attributable to, ARI.*

16.2    **Termination of a Lease Due to Damage or Destruction.** In the event a leased vehicle is damaged or destroyed to such extent that Lessee finds it undesirable to continue its use, Lessee may terminate the lease with respect to such vehicle pursuant to Article 9 herein, and ARI shall dispose of said vehicle pursuant to Article 12 herein. Any such damage or destruction shall obviate any obligation on the part of Lessee to lease the affected vehicle for the remainder of the Initial Lease Terms applicable thereto.

16.3    **Lost or Stolen Leased Vehicles.** In the event a leased vehicle is lost or stolen, Lessee shall terminate the lease with respect to such vehicle pursuant to Article 9 herein, and, upon receipt of payment of the Depreciated Value from Lessee, ARI shall forward to Lessee all documents required to transfer ownership of said vehicle as directed by Lessee.

## ARTICLE 17
### Insurance

17.1    Lessee will carry for the benefit of Lessee, Lessee's employees and others who operate the vehicle with the permission of Lessee, and pay the cost thereof, insurance against liability for bodily injury in a minimum single limit of $1,000,000, and against liability for property damage in a minimum limit of $100,000. Lessee will furnish written evidence of said insurance and ARI shall be named as an additional insured with respect to Lessee's indemnification obligations under Article 18.1. Lessee shall bear all risk of loss or damage to each leased vehicle and the contents thereof.

17.2    If for any reason Lessee shall fail to obtain and maintain in effect such insurance, ARI, at its sole option, but only after prior written notice to Lessee, may: (a) provide same and upon demand shall be reimbursed by Lessee the actual cost thereof, plus 10% of said cost to defray administrative expense; or, (b) terminate the lease of any or all vehicles leased hereunder, effective immediately at any time by giving written notice of termination to Lessee.

## ARTICLE 18
### Indemnification

18.1    **General Indemnification by Lessee.** Lessee shall indemnify and hold harmless ARI and ARI's agents and employees against all loss or liability relating to bodily injury, including death, and/or damage to tangible property (including costs and reasonable attorney's fees) arising out of or connected with Lessee's willful misconduct or negligent use or operation of any leased vehicle during Lessee's possession thereof. Lessee will take upon itself the settlement of all such claims and the defense of any suit or suits, or legal proceedings of any kind brought to enforce any such claim or claims, and the payment of all judgments entered in any such suit or suits, whether or not ARI is a party-defendant thereto.

18.2    **General Indemnification by ARI:** ARI shall indemnify and save harmless Lessee, Lessee's agents and employees against all loss or liability relating to bodily injury, including death, and/or damage to tangible property (including costs and reasonable attorneys fees) arising out of or connected with the negligence or willful misconduct of ARI or its employees. ARI will take upon itself the settlement of all such claims and defense of any suit or suits, or legal proceedings of any kind brought to enforce any such claim or claims, and the payment of all judgments entered in any such suit or suits, whether or not Lessee is a party-defendant thereto.

18.3    **Statement of Odometer Warranty and Indemnification.** *Unless otherwise indicated on the Used Vehicle Return Receipt, Lessee warrants to the best of its knowledge to ARI that the mileage indicated on the odometer of any vehicle returned to ARI is the true and actual reading and that no tampering with said odometer has taken place while such vehicle was operated by Lessee or any agent of Lessee.* Lessee shall indemnify and save ARI harmless from any and all liability, loss, damage, expense, causes of action, suits, claims or judgments solely arising from breach of the warranty herein before stated in this Article 18.3 and shall at its own cost and expense, defend any and all suits which may be brought against ARI, either alone or in conjunction with others, upon any such liability or

- 6 -

claim or claims and shall satisfy, pay and discharge any and all judgments and fines that may be recovered against ARI, provided however, that ARI shall give Lessee written notice of any such claim or demand within (30) days from receipt thereof.

## ARTICLE 19
### No Warranties by ARI

19.1    AS TO ANY VEHICLE LEASED HEREUNDER, EXCEPT AS PROVIDED IN ARTICLE 22, ARI HEREBY DISCLAIMS ALL WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE USE, CONDITION, OPERATION AND POSSESSION OF ANY VEHICLE. LESSEE SHALL NOT BE ENTITLED TO RECOVER FROM ARI ANY CONSEQUENTIAL DAMAGES, DAMAGES FOR LOSS OF USE, LOSS OF PROFITS OR INCOME, OR ANY OTHER CONSEQUENTIAL DAMAGES.

## ARTICLE 20
### Default

20.1    In the event Lessee shall default in any payments due ARI, or in performance of any material covenant under this Agreement, and such material default is not a result of ARI's act or omission and ARI notifies Lessee of such default and it thereafter remains uncorrected for thirty (30) days, ARI may pursue any remedies it may have under this Agreement including taking possession of any or all vehicles leased hereunder which are affected by such default and the demand for payment of all sums due ARI. ARI agrees that it shall exercise reasonable effort in its pursuit of any remedies afforded it in the event of Lessee default so as not to  disturb Lessee's full right of possession and enjoyment of the leased vehicles.

20.2    Unless expressly provided for in another Article of this Agreement, in the event of a non-monetary default by Lessee, ARI shall notify Lessee of such default in writing and Lessee shall be granted a reasonable period of time to cure such event of default and ARI agrees not to exercise any remedy afforded it during such cure period.  No remedy pursued under this Article shall be deemed an act of termination of the Agreement.

## ARTICLE 21
### Bankruptcy

21.1    Upon notice to Lessee, ARI may terminate this Agreement, if in either a state or federal court, a receiver is appointed for the Lessee, or if a petition in bankruptcy or for reorganization shall be filed by or against the Lessee; or if Lessee shall fail to give immediate notice to ARI of any distress or levy or execution purported to be made or laid against the property hereby leased or any part of it, ARI may take possession of any or all vehicles leased hereunder and may cancel any unfilled vehicle orders.

## ARTICLE 22
### ARI's Warranty

22.1    As to each vehicle leased hereunder, ARI warrants that it is the sole and absolute owner thereof, that it has the right to lease each such vehicle to Lessee, that each such vehicle is free of all encumbrances at time of delivery to Lessee (other than the interest of an Assignee pursuant to Article 8), that ARI will not cause any such vehicle to become subject to any lien or encumbrance, that it will not sell, assign, lease or otherwise dispose of any such vehicle except as provided in Article 8 and 12 hereof, and that it will do nothing to disturb Lessee's full right of possession and enjoyment of any such vehicle and the exercise of all of Lessee's rights with respects thereto, as provided by this Agreement.  Upon delivery of each leased vehicle to Lessee, ARI shall assign to Lessee all of its rights under any warranty obtained by ARI from the manufacturer and/or dealer.

crlari93.021594

## ARTICLE 23
### Evidence Of Lessee's Interest

23.1 In order that Lessee's rights hereunder may be made a matter of public notice or record, at any time during the lease of a vehicle hereunder, Lessee shall have the right to file a copy of this Agreement, together with a statement of payments thereunder, with such officials or in such offices in the state in which the vehicle is registered or maintained as may be provided by the laws thereof with respect to the registration or filing of liens and *encumbrances or other title retention instruments on vehicles or other chattels. ARI will, at Lessee's written request* and at Lessee's expense, execute any instrument or instruments necessary, proper or convenient for this purpose.

## ARTICLE 24
### Assignment

24.1 Neither party hereto shall, except as permitted herein, assign or sublease any rights under this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed.

## ARTICLE 25
### Cancellation

25.1 This Agreement shall remain in effect for a period of one year from the date hereof and thereafter until canceled by either party upon sixty (60) days written notice to the other party. The termination of this Agreement shall not affect any vehicles under lease pursuant hereto at the time of such termination; all such vehicles shall remain subject to the terms hereof and ARI and Lessee shall have the mutual rights and obligations provided for herein as to such vehicles.

## ARTICLE 26
### Statement of Ownership

26.1 Lessee shall notify ARI, of any change in name, ownership or control of Lessee.

## ARTICLE 27
### Agreement Binding

27.1 **Binding.** This Agreement, together with Exhibits attached hereto constitute and shall constitute the full, complete, absolute and entire Agreement between ARI and Lessee. There are no oral agreements or understandings affecting this instrument. Any future agreements, understandings or waivers, to be binding upon the parties hereto must be reduced to writing and attached hereto and ARI's or Lessee's failure to enforce any provision of this Agreement shall not be construed as a waiver thereof or as excusing Lessee or ARI respectively from future performance.

27.2 **State Law.** This Agreement shall be governed by and shall be construed according to the laws of the State of New Jersey.

## ARTICLE 28
### Administrative Fees

28.1 In consideration for the services to be performed under this Agreement, Lessee shall pay ARI an administrative fee for each vehicle leased hereunder, as stated in Exhibit B.

## ARTICLE 29
### Truth in Mileage Act of 1986

29.1 In accordance with ARI's obligation under the Truth in Mileage Act of 1986, Lessee acknowledges receipt of notice from ARI regarding Lessee's obligation under the Truth in Mileage Act to certify in writing the mileage on a leased *vehicle returned to ARI by Lessee which is to be subsequently sold to another party.*

- 8 -

crlari93.021594

## ARTICLE 30
### Fleet Management Services Agreement

30.1    The provisions of the Fleet Management Services Agreement in Exhibit D are hereby incorporated by reference as if written out herein in full.

## ARTICLE 31
### TRAC Certification

31.1    Lessee shall, upon ARI's request therefor, execute and deliver to ARI, a copy of the TRAC Certification, an *exemplar copy of which is attached as Exhibit E.*

## ARTICLE 32
### Vehicles Leased in Mexico

32.1.    ARI may subcontract any or all of its obligations hereunder to its wholly-owned subsidiary, ARI Fleet Services S.A. de C. V., a Mexican corporation with its principal place of business at _____ _____ ("ARIF"), with respect to any vehicles which may be delivered in Mexico for lease to Lessee or any parent, subsidiary of affiliate of Lessee, provided that Lessor remains liable for the completed and proper performance of each and every obligation subcontracted to ARIF. Notwithstanding the foregoing, ARIF may hold title to any such vehicles. The Capitalized Value for such vehicles shall be established pursuant to Article 2.1.

32.2    The rental fees for any vehicles delivered in Mexico for lease pursuant to Article 32.1 shall be specified in Mexican currency. Lessee, at its option, may pay the rental fees for any vehicles delivered in Mexico for lease pursuant to Article 32.1 in U.S. Dollars, and if the rental rates for such vehicles are specified in Mexican currency, the rate of exchange shall be that specified in The Wall Street Journal for the date on which payment of the applicable monthly rental fee is due.

IN WITNESS WHEREOF, ARI and Lessee have caused these presents to be duly executed, in triplicate, as of the day and year first written above.

NORTHERN TELECOM INC.

By: _Thomas E. Allen_

Name: _THOMAS E ALLEN_

Title: _DIRECTOR - PURCHASING SERVICES_

Date: _April 20, 1994_

AUTOMOTIVE RENTALS, INC.

By: _M-F. Laporta_

Name: _M. F. LAPORTA_

Title: _Pres._

Date: _4-12-94_

_DAB 4/14/94_
_PJB 4/14/94_
_SW. 4/15/94_

- 9 -

## EXHIBIT A

This Exhibit A incorporates by reference all the terms and conditions of the Vehicle Lease Agreement dated January 15, 1993, between Automotive Rentals, Inc. and Northern Telecom Inc.  A reference to an Article in this Exhibit A shall be a reference to such Article in the Vehicle Lease Agreement.

The Parties mutually agree to the following terms regarding the following Articles:

**Article 6, Paragraph a.:**

### 1. Factory Orders

| | |
|---|---|
| Buick, Chevrolet (except Corvette), Oldsmobile, and Pontiac, Ford, Mercury, Chrysler, Dodge and Plymouth Vehicles | $350 below factory invoice price |
| Commercial Vehicles exceeding 11,000#GVW: Chevrolet, Dodge and Ford | per quotation |
| All Other Commercial Vehicles:. Less Advertising where refundable to ARI. | per quotation |
| All Other Vehicles | per quotation |

### 2. Stock Purchases

| | |
|---|---|
| Buick, Chevrolet (except Corvette), Chrysler, Dodge, Ford, Mercury Oldsmobile, Plymouth and Pontiac vehicles: | ARI's acquisition costs plus $150.00 |
| Commercial Vehicles exceeding 11,000#GVW: Chevrolet, Dodge and Ford | per quotation |
| All Other Vehicles | per quotation |

### 3. POOL VEHICLES

per quotation

**Article 11, Paragraph 11.1:**

Lease Termination Fee shall be $0 (Zero Dollars).

crlari93.021594

## EXHIBIT B

For each leased vehicle the monthly rental fee, during its Depreciation Period, shall be computed by multiplying the vehicle's Capitalized Value by the applicable percentage shown hereinbelow. The monthly rental fee shall also include the addition of interest which shall be calculated for each calendar month on the basis of a 360 day year for the actual number of days elapsed from the effective date of the lease for such vehicle at _____ * _____ basis points (i.e. _____ * _____ percent) per annum in excess of 1) for all vehicles except for vehicles leased in Mexico, the interest rate quoted by Societe Generale (Bank) as its cost of thirty (30) day funds based upon the London Interbank Offered Rate (LIBOR) adjusted for reserve requirements of the Federal Reserve Bank in New York on the twenty-fifth (25) day of the month immediately preceding such month or 2) for vehicles leased in Mexico, an interest rate as agreed upon between ARI and Lessee. For medium and heavy duty trucks, the applicable percentage used to calculate the monthly rental fee shall be agreed upon by ARI and Lessee. The interest rate shall be adjusted each month and such adjustment(s) shall be effective on the first day of the month being billed. The interest shall be based on the Depreciated Value of each leased vehicle at the end of the month prior to the month being billed.

Example:

* 12.5 basis points (i.e., 1/8 Percent for Factory Ordered Vehicles)
  or
  100 basis points (i.e., 1 Percent for Stock Purchased Vehicles)

| | |
|---|---|
| Depreciation Period: | Months 1 - 50 |
| Depreciation Rate: | 2% |
| Administrative Fee: | $7.50 Per Leased Vehicle per Month for all vehicles except those leased in Mexico |
| | An amount to be agreed upon between ARI and Lessee for vehicles leased in Mexico |

**EXHIBIT C**

January 15, 1993

Northern Telecom Inc.
Northern Telecom Plaza
200 Athens Way
Nashville, Tennessee 37228-1397

Subject:     Truth in Mileage Act of 1986

Sir/Madam,

The National Highway Traffic Safety Administration (NHTSA) has recently issued regulations for the Truth in Mileage Act of 1986, which require that we notify our lessees that they are legally required to certify, in writing, the mileage on a vehicle leased at the time possession of such vehicle is surrendered to us upon the expiration or termination of the Lease. The regulations provide that failure to make this disclosure (or the making of a false statement) may result in fines and/or imprisonment.

ARI has chosen to use existing forms to permit our lessees to easily comply with the disclosure requirement. When a vehicle is being replaced, the New Vehicle Order Form for the replacement unit will serve as the certification document, unless the new vehicle is ordered electronically via ARI Access. Such vehicles ordered via ARI Access need to be certified on either the Used Vehicle Termination Report, the Used Vehicle Condition Report, or (on replacement vehicles) the New Vehicle Delivery Receipt. NHTSA specifically requires an individual's signature for the certification, but has also stated that a lessee's driver can sign the certification (Drivers would be the only parties usually signing the Delivery Receipt or the Condition Report). We have chosen to provide certification language on all four documents to give our customers the greatest flexibility in complying with this new regulation. However, only one certification is required by law.

This letter shall serve as ARI's compliance with the requirement to notify our lessees of this Federal Regulation. The effective date for lessee compliance is April 29, 1989.

crlari93.021594

**Exhibit D**
**FLEET MANAGEMENT SERVICES**

*ARI shall provide the Fleet Management Services as described herein for the fee set forth herein, on a vehicle by vehicle basis as specified by Lessee.*

**PLAN I**
**Service Savings Package**

a.   This program provides discounts on tires, maintenance service and glass replacement. All discounts available shall be made available to Lessee and updated information regarding such available discounts shall be made available to Lessee on a monthly basis. All discounts shall appear on invoices to Lessee. Services shall be performed at recognized tire and service outlets nationwide. National Account directories and pricing information shall be supplied with this program. All purchases shall be billed monthly to the Lessee. Credit cards/coupon books shall be issued by ARI to Lessee to be assigned to the particular vehicle and shall be valid for the purchase of tires, batteries and mechanical repairs for such vehicle at recognized retail tire and service outlets.

b.   If any credit card/coupon book is lost, stolen or being misused by any of Lessee's present or terminated employees or any other person, Lessee shall promptly report same to ARI by telephone or wire and confirm such report in writing to ARI. ARI shall immediately notify all the appropriate tire and service outlets. In no event shall Lessee be liable for unauthorized charges made on an expired credit card in excess of fifty dollars ($50.00).

c.   *Lessee shall notify ARI promptly in writing of any driver changes, additions or deletions affecting the use of any credit card/coupon book and be responsible for the return to ARI of any credit card/coupon book for which Lessee has no further use, as in the case of a terminated employee, or for any other reason.*

d.   Prior approval must be obtained from Lessee's Fleet Management Department before the start of repairs on a vehicle if:

  1)   the cost of such repairs would be over $500.00 per an occurrence; or
  2)   the vehicle which is in need of repairs has been in service for more than 36 months; or
  3)   the vehicle which is in need of repairs has an odometer reading of more than 50,000 miles

e.   *ARI shall invoice Lessee monthly for expenses incurred by Lessee's representatives through the use of Purchase Orders, Credit Cards/Coupon Books, or otherwise, as invoices for the same are received by ARI from the recognized tire and service outlets. ARI shall use its best efforts to verify the accuracy of such invoices and to correct any obvious inaccuracies with such recognized tire and service outlets prior to invoicing Lessee for monthly expenses incurred.*

**PLAN II**
**Preventive Maintenance Program**

This program is designed to minimize the administration of scheduled maintenance. A tailor-made coupon book is supplied for redemption at recognized nationwide service centers. All purchases under this program shall be billed monthly to the Lessee.

Car coupon books include:

  • 60,000 Mile Prevention Maintenance Schedule.
  • 5,000 Mile Interval Coupons.
  • Replacement or snow tire coupons (2).
  • Wheel Alignment Coupons (2).

Light Truck Coupon Books Include:

  • 60,000 Mile Preventive Maintenance Schedule.
  • 3,000/6,000 Mile Interval Coupons.
  • Replacement or snow tire coupons (2)
  • Wheel Alignment Coupons (2).

1

**PLAN III**
**Fleet Management Report Series**

This series of reports provides the necessary expense data and planning information for maximizing fleet cost efficiency. Computerized reporting will be custom developed to meet Lessee's requirements. Reports shall be produced and forwarded monthly following the receipt of input data from the Lessee.

*Fleet Management Report Series consists of the following:*

- The Fleet Management Report
- Vehicle Replacement Schedule  (on Request)
- The Exception Report
- Fleet Mileage Analysis
- The Fleet Summary Analysis
- Maintenance Coupon Exception Report
- Fringe Benefit Report (on Request)
- Custom Reports (on Request) at no additional charge.

**PLAN IV**
**Total Management System**

This program is designed to relieve Lessees from the daily task of administering their fleet. ARI becomes the liaison with the vehicle operators. The Lessee shall be billed monthly for all expenses incurred under the Program.

Services include:

- Enrollment in Fleet Management Plans I, II, III and VIII.
- Individual driver handbooks on Standard Operating Procedures.
- Control and approval of all servicing requirements
- Driver counseling on vehicle operation and efficiency.
- The maintenance of individual vehicle daily operating records.
- Direct communication with drivers via national toll free numbers.
- ARI knowledge and experience in Fleet Management.

**PLAN V**
**Gasoline Credit Card Program**

a. This program is designed to provide the Lessee with a more convenient and scheduled billing of oil company purchases. All gasoline, oil and minor repair expenses are included on one monthly invoice to the Lessee. Repair and dollar limitations can be designated on the cards.

b. ARI shall provide its ARI Universal Gas Credit Cards for vehicles of Lessee as requested in writing to ARI by Lessee for ARI approved oil companies nationwide. Such credit cards shall be issued by ARI to Lessee to be assigned to the particular vehicle for use by the then current designated driver of such vehicle. If any such credit card is lost, stolen or being misused by any of Lessee's present or terminated employees or any other person, Lessee shall promptly report same to ARI by telephone or wire and confirm such report in writing to ARI. ARI shall immediately take appropriate action to prevent further use of such card. In no event shall Lessee be liable for unauthorized charges made on an expired credit card in excess of fifty dollars ($50.00).

d. Lessee shall notify ARI promptly in writing or by electronic means of any driver changes, additions or deletions affecting the use of any credit card for which Lessee has no further use, as in the case of a terminated employee, or for any other reason.

e. If any credit card is lost, stolen or being misused by Lessee's present or terminated employee or any other person, Lessee shall promptly report same to ARI by telephone or wire and confirm such report in writing to ARI. In no event shall Lessee be liable for unauthorized charges made on an expired credit card in excess of fifty dollars ($50.00).

2

**PLAN VIII**
**Warranty Recovery**

In the event a repair is performed on a vehicle which, in ARI's opinion, should have been covered by the manufacturer's warranty but for its expiration, ARI shall attempt to recover a refund, credit or other financial adjustment from the manufacturer, and if any such financial adjustment is received by ARI from the manufacturer, ARI shall credit to Lessee 100% of any such financial adjustment.

**PLAN IX**
**Fleet Insurance Management Services--Driver Abstract Program**

Upon receipt of driver identification and license information, ARI shall provide to Lessee, if available, motor vehicle accident records and/or driver violation reports from the various state agencies (excepting Massachusetts and Washington which do not provide such reports or records) on each individual driver. ARI shall provide Lessee on a monthly basis, the standard state fee/charge table. Lessee shall pay such standard state fee upon invoice by ARI. This program is limited to one (1) driver abstract per driver per annum.

**PLAN X**
**Fringe Benefit Report Program**

This program is designed to provide the Lessee with comprehensive fringe benefit/expense report data. These services include:

- Comprehensive driver reports.
- Driver tracking system.
- Client-customized edits.
- Weekly, monthly or quarterly driver expense reports.
- On-line adjustment capability.

**PLAN XI**
**Roadside Assistance Services**

ARI will provide a twenty-four (24) hour toll free line for drivers to call to access an outlet which shall provide the necessary roadside assistance services. These outlets shall provide such necessary repair assistance as tire changes, battery jump start and door lock-out aid. Lessee shall pay ARI for the expenses arising out of the use of such roadside assistance services plus a per occurrence fee of $20.00 each upon invoice by ARI.

**FEES**

There shall be a fee of $10.50 per leased vehicle per month which will include all Plans listed above except for Plan XI.

**GENERAL PROVISIONS**

The Plans referenced herein shall be subject to the following terms and conditions:

**A. Payment Terms.** Lessee shall be billed monthly by ARI for all purchases with payment due ARI fifteen (15) days after the receipt of Invoice.

**B. Assignment.** Neither party hereto shall, except as permitted herein, assign or sublease any rights under this Exhibit D without the written consent of the other party, which consent shall not be unreasonably withheld or delayed.

**C. Cancellation.** Either party may terminate all or any part of the Fleet Management Services, with an appropriate adjustment in the fees for the services, at any time upon sixty (60) days written notice to the other party, in which event the terms and conditions herein shall apply until the date of final termination. In the event of termination, the Lessee shall return all cards affected by the termination to ARI and pay all outstanding charges hereunder whether incurred before or after termination.

3

crlari93.021594

**D. Default.** In the event Lessee shall default in any payments due ARI, or in performance of any covenant or condition under this Exhibit D and ARI notifies Lessee of such default and it thereafter remains uncorrected for thirty (30) days, ARI may pursue any remedies it may have under this Exhibit D, including taking possession of all credit cards issued hereunder and the demand for payment of all sums due ARI and the immediate payment of any remaining unpaid charges. Such repossession on the part of ARI shall not be deemed an act of termination of this Exhibit D, nor prejudice any other remedies that ARI may have in connection with this Agreement.

**E. Bankruptcy.** Upon the notice to Lessee, ARI may terminate this Exhibit D, if in either a state or federal court, a receiver in equity be appointed for the Lessee, or if a petition in bankruptcy or for reorganization shall be filed by or against the Lessee; or if Lessee shall fail to give immediate notice to ARI of any distress or levy or execution purported to be made or laid against a material portion of property of Lessee, ARI may take possession of any or cancel all credit cards issued hereunder.

**F. Agreement Binding.** This Exhibit D constitutes and shall constitute the full, complete, absolute and entire agreement between ARI and Lessee with respect to the subject matter hereof. There are no oral agreements or understandings affecting this instrument. Any further agreements, understandings or waivers, to be binding upon the parties hereto must be reduced to writing and attached hereto, and ARI's or Lessee's failure to enforce any provision of this Exhibit D shall not be construed as a waiver thereof or as excusing Lessee or ARI respectively from future performance.

**G. State Law.** This Exhibit D shall be governed by and shall be construed according to the laws of the State of New Jersey.

4

crlari93.021594

Exhibit E

[FORM OF]
TRAC CERTIFICATION

**CERTIFICATION RELATING TO "MOTOR VEHICLES OPERATING LEASES" UNDER SECTION 7701 (h) OF THE INTERNAL REVENUE CODE**

**COMPANY:**    Northern Telecom Inc.

**ADDRESS:**    200 Athens Way

Nashville, Tennessee  37228-1397

**FEDERAL IDENTIFICATION NUMBER**

The undersigned, _____, acting in the capacity of _____ of Northern Telecom Inc., (Herein the "Corporation") *does hereby certify under penalties of perjury:*

      1.    That the Corporation intends that the motor vehicles leased from Automotive Rentals, Inc. (herein, the "Lessor"), under any lease agreement executed on or after August 28th, 1987, to which Section 7701(h) of the Internal Revenue Code of 1986 as amended applies, will be used more than fifty percent (50%) in the trade of business of the Corporation, and

      2.    That the Corporation has been advised that it will not be treated as the owner of the property subject to the agreements for Federal Income Tax purposes.

NORTHERN TELECOM INC.

By: _____

Name: _____

Title: _____

Date: _____

crlari93.021594



**AUTOMOTIVE RENTALS, INC.**
9000 MIDLANTIC DRIVE, P.O. BOX 5039, MT. LAUREL, NJ 08054 (609) 778-1500 FAX (609) 273-9099

*Exhibit F*

## DELIVERY INSTRUCTIONS DELIVERY RECEIPT

DATE

DELIVERY DEALER

VEHICLE NO. / P.O. NO.

V. I. N.

CLIENT NO.

CLIENT NAME

ASSIGNED DRIVER

### ASSIGNED DRIVER INSTRUCTIONS

1. CHECK NEW VEHICLE CAREFULLY AND VERIFY V. I. N. ON VEHICLE AGAINST V. I. N. SHOWN ABOVE. IF ANY EXCEPTIONS OR DAMAGE ARE NOTICED PHONE ARI BEFORE ACCEPTING THE NEW VEHICLE.
2. PLEASE COMPLETE:
   LICENSE PLATE # _____ EXPIRES _____
   KEY NUMBERS (IGNITION) _____ (TRUNK) _____
   MILEAGE: _____
3. NEW VEHICLE CONDITION AT DELIVERY: _____

### DELIVERY DEALER INSTRUCTIONS

DEALER - PLEASE CONTACT DRIVER TO ARRANGE DELIVERY

4. USED VEHICLE TURNED IN:    YES ☐    NO ☐
   LOCATION: _____ MILEAGE _____

### INSURANCE INFORMATION

COMPANY:
POLICY NO.:
EXPIRATION DATE:
INSURANCE CARD:
☐ ENCLOSED        ☐ DRIVER TO FURNISH

DEALER - CALL TO REPORT DELIVERY 1-800-257-7781

### DEALER INSTALLED EQUIPMENT

### SPECIAL INSTRUCTIONS

### TITLE INSTRUCTIONS

### NEW VEHICLE DESCRIPTION

### REGISTRATION INSTRUCTIONS

TRANSFER PLATES IF POSSIBLE

### SALES TAX

### LIENHOLDER

AMOUNT

*Exhibit G*

# ARI AUTOMOTIVE RENTALS
9000 MIDLANTIC DRIVE • P.O. BOX 5039 • MT. LAUREL, N.J. 08054 • (609) 778-1500

## USED VEHICLE RETURN RECEIPT AND STATEMENT OF CONDITION

| VEHICLE NUMBER | LESSEE NO. | YEAR | MAKE | MODEL | COLOR | SERIAL NUMBER |
|---|---|---|---|---|---|---|

(Law and state, if applicable) requires that the lessee disclose the vehicle's mileage to the lessor in connection with the transfer of ownership. Failure to complete and/or making a false statement may result in fines or imprisonment. In this regard please certify, by your signature below, that the odometer now reads _____ (no tenths) miles and to the best of your knowledge reflects the actual mileage of the vehicle described above, unless one of the following statements is checked below.

S.O.O. _____

☐ to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
☐ the odometer reading is not the actual reading.                Signature _____

License Plate No. _____   State _____   Year _____

| | ENGINE | | | | |
|---|---|---|---|---|---|
| INDICATE | 4   6   8 | ☐ AUTOMATIC TRANSMISSION | ☐ AIR CONDITIONER | ☐ CRUISE   ☐ TILT   ☐ STEREO   ☐ POWER WINDOWS | |
| H CHECK (✓) | ☐ POWER SEAT | ☐ VINYL ROOF | OTHER (LIST) | | |

### CONDITION OF BODY

| FRONT | REAR |
|---|---|
| D _____ | TRUNK LID/TAILGATE _____ |
| ...LE _____ | REAR PANEL _____ |
| ...PER _____ | BUMPER _____ |
| ...PER GUARDS _____ | BUMPER GUARDS _____ |
| ...TS _____ | LIGHTS _____ |

| DRIVERS SIDE | PASSENGER SIDE |
|---|---|
| ...ENDER _____ | F. FENDER _____ |
| ...R (S) _____ | DOOR (S) _____ |
| ...KER PANEL _____ | ROCKER PANEL _____ |
| ...ENDER _____ | R. FENDER _____ |
| ...EL COVERS _____ | WHEEL COVERS _____ |

ROOF _____

...CRIBE CHROME TRIM DAMAGE (RAILS AND DECALS ON WAGONS) _____

...CK FLUID LEVELS—OIL _____ RADIATOR _____ BATTERY _____ TRANSMISSION _____

### DRIVE VEHICLE TO DETERMINE CONDITION OF FOLLOWING:

| | |
|---|---|
| ...ATER _____ | TRANSMISSION _____ |
| _____ | STEERING _____ |
| ...HAUST SYSTEM _____ | AXLE _____ |
| ...CONDITIONER _____ | BRAKES _____ |

USE THESE SYMBOLS TO SHOW LOCATION, APPROXIMATE SIZE AND DIRECTION OF DEFECTS.
— SCRATCH
∿ CRACK
X BREAK

DRIVER'S SIDE

OTHER GLASS DESCRIBE _____

...ES (INDICATE CONDITION, INCLUDING SIDEWALLS, BY LETTER
A — ACCEPTABLE
R — REPLACE
S — SNOW/MUD

☐ LF   ☐ RF   ☐ LR   ☐ RR   ☐ SPARE

...DICATE OVERALL CONDITION OF VEHICLE

☐ CLEAN   ☐ AVERAGE   ☐ FAIR   ☐ ROUGH

...ERIOR PAINT — GOOD _____ FAIR _____ POOR (Describe) _____
...RIOR TRIM — GOOD _____ FAIR _____ POOR (Describe) _____

...CATE CONDITION: RUGS/MATS _____ UPHOLSTERY _____ HEADLINER _____ CARGO AREA (WAGON) _____

...ER REMARKS _____

...EHICLE HAS BEEN STORED SHOW LOCATION _____

DATE _____

SIGNATURE ARI REPRESENTATIVE
RECEIVED ABOVE VEHICLE AS NOTED

SIGNATURE CLIENT REPRESENTATIVE
DELIVERED ABOVE VEHICLE AS NOTED

U.V. 17

Exhibit H

# MOTOR VEHICLE LEASE AGREEMENT

Automotive Rentals, Inc. ("ARI") hereby leases to Northern Telecom Inc. ("Lessee") the vehicle referred to herein for the rental set forth herein. This Motor Vehicle Lease Agreement and any assignment hereof is subject to all the terms and conditions of the Agreement dated January 15, 1993 between ARI and Lessee governing the leasing of vehicles to Lessee (the "January 15, 1993 Agreement"), all of which terms and conditions are incorporated herein by reference. In the event of any conflict between the terms of this Motor Vehicle Lease Agreement or any assignment made pursuant hereto, and the January 15, 1993 Agreement, the terms of the January 15, 1993 Agreement shall control.

ARI hereby assigns to CoreStates Bank, N.A. ("Assignee") all right, title and interest of ARI in and to all monies due and to become due under this Motor Vehicle Lease Agreement and ARI hereby authorizes Assignee to collect all such monies when due.

Lessee and ARI agree that, pursuant to this assignment, all rights and remedies of ARI under this Motor Vehicle Lease Agreement with respect all monies due and to become due after the effective date of this assignment shall vest in and be exercisable solely by Assignee, that Lessee will render performance of Lessee's obligations hereunder to Assignee rather than ARI and that the rights of Assignee to rental fees and other sums due hereunder shall not be subject to any defenses (except payment and/or termination as permitted under the January 15, 1993 Agreement), off-set, counterclaim, or recoupment of Lessee whatsoever arising from a breach of warranty or representation relating to the motor vehicle made by the manufacturer thereof, ARI or any other person, or arising from the breach or failure of ARI to observe or perform the provisions of this Motor Vehicle Lease Agreement or any other agreement between ARI and Lessee, or arising from any cause whatsoever. Lessee's obligations to continue to pay Assignee shall be subject to Lessee's rights to terminate this Motor Vehicle Lease Agreement in accordance with Articles 3, 9 and 12 of the January 15, 1993 Agreement.

As long as Lessee continues to enjoy quiet possession of the motor vehicle subject to this Motor Vehicle Lease Agreement, Lessee also agrees to continue to make prompt payment to Assignee of the rental fees due hereunder even if bankruptcy, reorganization, arrangement, insolvency, liquidation or dissolution proceedings are instituted by or against ARI. Lessee also agrees that Assignee does not assume any obligations arising hereunder and Lessee will look solely to ARI for the performance of any such obligations.

## VEHICLE INFORMATION

| | |
|---|---|
| YR & MAKE - 1993 BUICK | MODEL - LESABRE LTD  R69 | VEHICLE # - 0540-93191 |
| ENGINE - 6 CYL 3.8 LITER | EXT COLOR - DK JADESTON | LESSEE # - 0454-03 |
| SERIAL # - 1G4HR53L2PH514189 | DELIVERY DATE - 06/07/93 | REVISION DATE:00/00/00 REVISION NO: 00 |

## S = SIDEBILLED   D = DEALER INSTALLED          EQUIPMENT

| |
|---|
| EATHER INT       CRUISE CNTRL |
| TD AIR COND      1SE PKG |
| INT GLASS ALL    ALUM WHLS |
| M-FM STEREO      CD PLAYER |
| WR STEERING      PWR ANTENA |
| WR DISC BRAKES   KEYLESS ENTRY |
| WR WINDOWS       STRIPES |
| WR 6WAY DR+PAS   EQUALIZER |
| WR DOOR LOCKS    CONV NET |
| ILT WHEEL        AUTOMATIC |

## COSTS

| DESCRIPTION | CAPPED AMOUNT | DESCRIPTION | CAPPED AMOUNT | DESCRIPTION | CAPPED AMOUNT |
|---|---|---|---|---|---|
| ASE COST | 22,156.57 | | | | |
| &H | 150.00 | | | | |
| LR INSTL ITEMS | 825.00 | | | | |
| EBATES 1 | 1,000.00- | | | | |
| OTAL COST | 22,131.57 | | | | |

## LEASE INFORMATION

OPEN END LEASE - PERIOD BEGINS: 06/93  TOTAL CAPITALIZATION:    22,131.57
* * * * * RATES BELOW REFLECT DEPRECIATION AND ADMINISTRATIVE FEE ONLY * * * * *

| | RATE | AMT | |
|---|---|---|---|
| 1ST-12TH MONTH | .02000 | $450.13 | PER MONTH DEPRECIATION PERIOD 50 MONTHS @   $442.63 |
| 13TH-24TH MONTH | .02000 | $450.13 | PER MONTH |
| 25TH-36TH MONTH | .02000 | $450.13 | PER MONTH |
| 37TH-50TH MONTH | .02000 | $450.13 | PER MONTH |

### FINANCIAL INFO

INT-TYPE: FLOAT    INDEX: LIBOR      FACTOR-SCHEDULE: 111A

SOEASTBATES 610

| | |
|---|---|
| MAILING ADDRESS: | NORTHERN TELECOM, INC. ATTN: JULIE HOLLAND NORTHERN TELECOM PLAZA 200 ATHENS WAY NASHVILLE    TN 37228 |
| DRIVER NAME: ADDRESS: | DAVID   THOMSON NORTHERN TELECOM INC. 7400 W. 110TH ST STE 350 OVERLAND PARK   KS 66210 |

AUTOMOTIVE RENTALS, INC.   Date ____06/10/93____   By _Carl A. Citelli_



**AUTOMOTIVE RENTALS, INC.**
9000 MIDLANTIC DRIVE, P.O. BOX 5039, MT. LAUREL, NJ 08054 (609) 778-1500  FAX (609) 273-8099

*Exhibit F*

## DELIVERY INSTRUCTIONS / DELIVERY RECEIPT          DATE

DELIVERY DEALER

VEHICLE NO. / P.O. NO. | V. I. N.

CLIENT NO. | CLIENT NAME

### ASSIGNED DRIVER INSTRUCTIONS

ASSIGNED DRIVER

1. CHECK NEW VEHICLE CAREFULLY AND VERIFY V. I. N. ON VEHICLE AGAINST V. I. N. SHOWN ABOVE. IF ANY EXCEPTIONS OR DAMAGE ARE NOTICED PHONE ARI BEFORE ACCEPTING THE NEW VEHICLE.
2. PLEASE COMPLETE:
   LICENSE PLATE # _____ EXPIRES _____
   KEY NUMBERS: (IGNITION) _____ (TRUNK) _____
   MILEAGE: _____
3. NEW VEHICLE CONDITION AT DELIVERY: _____

### DELIVERY DEALER INSTRUCTIONS

DEALER - PLEASE CONTACT DRIVER TO ARRANGE DELIVERY

4. USED VEHICLE TURNED IN :   YES ☐   NO ☐
   LOCATION: _____ MILEAGE: _____

### INSURANCE INFORMATION

COMPANY:
POLICY NO.:
EXPIRATION DATE:
INSURANCE CARD:
☐ ENCLOSED          ☐ DRIVER TO FURNISH

DEALER - CALL TO REPORT DELIVERY 1-800-257-7761

### DEALER INSTALLED EQUIPMENT

### SPECIAL INSTRUCTIONS

### TITLE INSTRUCTIONS

### NEW VEHICLE DESCRIPTION

### REGISTRATION INSTRUCTIONS

TRANSFER PLATES IF POSSIBLE

### SALES TAX

### LIENHOLDER

AMOUNT

**AR** ~~REPRESENTATIVE, INCLUDING~~  *Exhibit G*

**AUTOMOTIVE RENTALS** 9000 MIDLANTIC DRIVE • P.O. BOX 5039 • MT. LAUREL, N.J. 08054 • (609) 778-1500

## USED VEHICLE RETURN RECEIPT AND STATEMENT OF CONDITION

| VEHICLE NUMBER | LESSEE NO. | YEAR | MAKE | MODEL | COLOR | SERIAL NUMBER |
|---|---|---|---|---|---|---|

Il law and state, if applicable requires that the lessee disclose the vehicle's mileage to the lessor in connection with the transfer of ownership. Failure to complete and/or making a false
entry may result in fines or imprisonment. In this regard, please certify, by your signature below, that the odometer now reads _____ (no serial) miles and to
the best of your knowledge it reflects the actual mileage of the vehicle described above, unless one of the following statements is checked below.
  to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits
  the odometer reading is not the actual reading

| S.O.O. |
|---|

Signature _____

License Plate No. _____   State _____   Year _____

| INDICATE | ENGINE 4  6  8 | ☐ AUTOMATIC TRANSMISSION | ☐ AIR CONDITIONER | ☐ CRUISE | ☐ TILT | ☐ STEREO | ☐ POWER WINDOWS |
|---|---|---|---|---|---|---|---|
| IN CHECK (✓) | ☐ POWER SEAT | ☐ VINYL ROOF | OTHER (LIST) | | | | |

| FRONT | CONDITION OF BODY | REAR |
|---|---|---|

| | | |
|---|---|---|
| _____ | TRUNK LID/TAILGATE _____ | |
| ..LE _____ | REAR PANEL _____ | |
| ..FER _____ | BUMPER _____ | |
| ..FER GUARDS _____ | BUMPER GUARDS _____ | |
| ..TS _____ | LIGHTS _____ | |

| DRIVERS SIDE | PASSENGER SIDE |
|---|---|

| | |
|---|---|
| ..NDER _____ | F. FENDER _____ |
| ..R (S) _____ | DOOR (S) _____ |
| ..KER PANEL _____ | ROCKER PANEL _____ |
| ..ENDER _____ | R. FENDER _____ |
| ..EL COVERS _____ | WHEEL COVERS _____ |

ROOF _____

..CRIBE CHROME TRIM DAMAGE (RAILS AND DECALS ON WAGONS) _____

..CK FLUID LEVELS—OIL _____ RADIATOR _____ BATTERY _____ TRANSMISSION _____

DRIVE VEHICLE TO DETERMINE CONDITION OF FOLLOWING:

| | |
|---|---|
| ..ATER _____ | TRANSMISSION _____ |
| | STEERING _____ |
| ..HAUST SYSTEM _____ | AXLE _____ |
| ..CONDITIONER _____ | BRAKES _____ |

USE THESE SYMBOLS TO SHOW LOCATION, APPROXIMATE SIZE AND DIRECTION OF DEFECTS.
..SS — — — — SCRATCH
—— CRACK
——— BREAK

DRIVER'S SIDE   OTHER GLASS DESCRIBE _____

..ES (INDICATE CONDITION, INCLUDING SIDEWALLS, BY LETTER)   A – ACCEPTABLE   R – REPLACE   S – SNOW/MUD   ☐ LF   ☐ RF   ☐ LR   ☐ RR   ☐ SPARE

..DICATE OVERALL CONDITION OF VEHICLE   ☐ CLEAN   ☐ AVERAGE   ☐ FAIR   ☐ ROUGH

..ERIOR PAINT – GOOD _____ FAIR _____ POOR (Describe) _____

..RIOR TRIM – GOOD _____ FAIR _____ POOR (Describe) _____

..CATE CONDITION: RUGS/MATS _____ UPHOLSTERY _____ HEADLINER _____ CARGO AREA (WAGON) _____

..ER REMARKS _____

..EHICLE HAS BEEN STORED SHOW LOCATION _____

| DATE |
|---|

SIGNATURE AR REPRESENTATIVE   SIGNATURE CLIENT REPRESENTATIVE
RECEIVED ABOVE VEHICLE AS NOTED   RELEASE ABOVE VEHICLE AS NOTED

Exhibit H

# MOTOR VEHICLE LEASE AGREEMENT

Automotive Rentals, Inc. ("ARI") hereby leases to Northern Telecom Inc. ("Lessee") the vehicle referred to herein for the rental set forth herein. This Motor Vehicle Lease Agreement and any assignment hereof is subject to all the terms and conditions of the Agreement dated January 15, 1993 between ARI and Lessee governing the leasing of vehicles to Lessee (the "January 15, 1993 Agreement"), all of which terms and conditions are incorporated herein by reference. In the event of any conflict between the terms of this Motor Vehicle Lease Agreement or any assignment made pursuant hereto, and the January 15, 1993 Agreement, the terms of the January 15, 1993 Agreement shall control.

ARI hereby assigns to CoreStates Bank, N.A. ("Assignee") all right, title and interest of ARI in and to all monies due and to become due under this Motor Vehicle Lease Agreement and ARI hereby authorizes Assignee to collect all such monies when due.

Lessee and ARI agree that, pursuant to this assignment, all rights and remedies of ARI under this Motor Vehicle Lease Agreement with respect to all monies due and to become due after the effective date of this assignment shall vest in and be exercisable solely by Assignee, that Lessee will render performance of Lessee's obligations hereunder to Assignee rather than ARI and that the rights of Assignee to rental fees and other sums due hereunder shall not be subject to any defenses (except payment and/or termination as permitted under the January 15, 1993 Agreement), off-set, counterclaim, or recoupment of Lessee whatsoever arising from a breach of warranty or representation relating to the motor vehicle made by the manufacturer thereof, ARI or any other person, or arising from the breach or failure of ARI to observe or perform the provisions of this Motor Vehicle Lease Agreement or any other agreement between ARI and Lessee, or arising from any cause whatsoever. Lessee's obligations to continue to pay Assignee shall be subject to Lessee's rights to terminate this Motor Vehicle Lease Agreement in accordance with Articles 3, 9 and 12 of the January 15, 1993 Agreement.

As long as Lessee continues to enjoy quiet possession of the motor vehicle subject to this Motor Vehicle Lease Agreement, Lessee also agrees to continue to make prompt payment to Assignee of the rental fees due hereunder even if bankruptcy, reorganization, arrangement, insolvency, liquidation or dissolution proceedings are instituted by or against ARI. Lessee also agrees that Assignee does not assume any obligations arising hereunder and Lessee will look solely to ARI for the performance of any such obligations.

## VEHICLE INFORMATION

YR & MAKE - 1993 BUICK
ENGINE - 6 CYL 3.8 LITER
SERIAL - 1G4HR53L2PH514169

MODEL  - LESABRE LTD   R69
EXT COLOR- DK JADESTON
DELIVERY DATE - 06/07/93

VEHICLE #- 0540-93191
LESSEE #- 0454-03
REVISION DATE:00/00/00 REVISION NO:00

## EQUIPMENT
**$ = SIDEBILLED  D = DEALER INSTALLED**

| | |
|---|---|
| EATHER INT | CRUISE CNTRL |
| TO AIR COND | ISE PKG9 |
| INT GLASS ALL | ALUM WHLS |
| M-FM STEREO | CD PLAYER |
| WR STEERING | PWR ANTENA |
| WR DISC BRAKES | KEYLESS ENTRY |
| WR WINDOWS | STRIPES |
| WR 6WAY DR/PAS | EUALIZER |
| WR DOOR LOCKS | CONV NET |
| ILT WHEEL | AUTOMATIC |

## COSTS

| DESCRIPTION | CAPPED AMOUNT | DESCRIPTION | CAPPED AMOUNT | DESCRIPTION | CAPPED AMOUNT |
|---|---|---|---|---|---|
| ASE COST | 22,156.57 | | | | |
| TH | 150.00 | | | | |
| R INSTL ITEMS | 825.00 | | | | |
| EBATES 1 | 1,000.00- | | | | |
| OTAL COST | 22,131.57 | | | | |

## LEASE INFORMATION

OPEN END LEASE - PERIOD BEGINS: 06/93   TOTAL CAPITALIZATION:   22,131.57
* * * * * RATES BELOW REFLECT DEPRECIATION AND ADMINISTRATIVE FEE ONLY * * * * * *

| | RATE | AMT | |
|---|---|---|---|
| 1ST-12TH MONTH | .02000 | $450.13 | PER MONTH DEPRECIATION PERIOD 50 MONTHS @   $442.63 |
| 13TH-24TH MONTH | .02000 | $450.13 | PER MONTH |
| 25TH-36TH MONTH | .02000 | $450.13 | PER MONTH |
| 37TH-50TH MONTH | .02000 | $450.13 | PER MONTH |

### FINANCIAL INFO

INT-TYPE:  FLOAT    INDEX: LIBOR       FACTOR-SCHEDULE:  111A

SOEASTBATES 610

MAILING
ADDRESS:   NORTHERN TELECOM, INC.
           ATTN: JULIE HOLLAND
           NORTHERN TELECOM PLAZA
           200 ATHENS WAY
           NASHVILLE       TN 37228

DRIVER NAME:   DAVID    THOMSON
ADDRESS:   NORTHERN TELECOM INC.
           7400 W. 110TH ST STE 350
           OVERLAND PARK   KS 66210

AUTOMOTIVE RENTALS, INC.    Date_____06/10/93_____   By _Paul A. Ortutt_

Exhibit I

**[FORM OF WRITING FROM ARI DIRECTING LESSEE TO MAKE PAYMENTS TO AN ASSIGNEE]**
**[TO APPEAR ON ARI'S LETTERHEAD]**

[Date]

Northern Telecom Inc.
Northern Telecom Plaza
200 Athens Way
Nashville, Tennessee  37228-1397

Subject:      Vehicle Lease Agreement dated January 15, 1993 between Northern Telecom Inc. and Automotive Rentals, Inc.

Dear Sir/Madam:

Under the terms of the above-mentioned Agreement, we are requesting that rental payments be made to CoreStates Bank, N.A., and mailed to:

        CoreStates Bank, N.A.
        P.O. Box 8500-4375
        Philadelphia, PA  19178-4375

CoresStates Bank has been designated by Automotive Rentals, Inc. as Assignee under the terms of the January 15, 1993 Vehicle Lease Agreement between Automotive Rentals, Inc. and Northern Telecom Inc.

Our rental billings will show the above mailing address.

Please acknowledge by signing in the space provided below; returning two copies for our files.

Very truly yours,

M. F. Laporta
President

Enclosures

The undersigned acknowledges receipt of the foregoing direction and agrees to make the payments referred to above to CoreStates Bank, N.A. at the address referred to above unless otherwise notified by CoreStates Bank, N.A.

By:_____

Title:_____

Date:_____

crlari93.021594

**InBound Contracts Solutions (ICS)**
**Contract Signoff Approval Form - Scanning Control Form**

\*   Nortel Legal Entity Signing:      Northern Telecom Inc.

    Nortel Business Unit Involved:

\*   Document Type:      Amendment to Lease Agreement

\*   Agreement Type of Original Document:     Lease Agreement

\*   Product / Service Covered:      Goods Miscellaneous

\*   Archiving Folder Category      Expense/Capital Goods

\*   Contracted Party Legal Name:      Automotive Rentals, Inc.

\*   Agreement No. of this Document:      730281

\*   Agmt. No. of Original Document:      730280

\*   Agreement Term Start Date:      10/25/1994
    mm/dd/yyyy
    Agreement Term Expiration Date:
    mm/dd/yyyy

    Nortel Product/Technology Manager:

    ICS Prime:

    Nortel Attorney of Record:

    Forecasted Total Amount in U.S. Dollars
    to be spent by Nortel during the term:

    Any amount COMMITTED in attached
    contract to be spent in U.S. Dollars:

    Brief Description of Agreement:

    Significant deviations from pre-approved
    standard template language:

    Summary of Approvals:      (Approvals may be obtained either in writing or via e-mail at the discretion of the ICS Prime.

    Product Management or
    Technology Management Approval:

    (optional) Finance Approval:

    Nortel Networks Legal Approval:

    Supply Management Prime Approval:

    Today's Date:

ORIGINAL          AMENDED

NTI Agreement No. 730280      NTI/Lessee Agreement No. 730281

## AMENDMENT  NO. 1
## to
## VEHICLE LEASE AGREEMENT

AMENDMENT No. 1 to that certain Vehicle Lease Agreement (NTI Agreement No. 730280) by and between Northern Telecom Inc. ("Lessee") and Automotive Rentals, Inc. ("ARI"), said Amendment No. 1 to be effective as of October 25, 1994.

WHEREAS, Lessee and ARI entered into a Vehicle Lease Agreement, NTI Agreement No. 730280 ("Agreement"); and

WHEREAS, Lessee and ARI desire to make the provisions of the Agreement applicable to the utilization worldwide of the vehicle leasing services of ARI and ARI's affiliates by Lessee or by any member or members of the group of companies consisting of Lessee's parent company, Northern Telecom Limited ("NTL"), and any direct or indirect subsidiary entity of NTL other than Lessee (collectively, "Lessee Affiliates" and each a "Lessee Affiliate"), in addition to Lessee; and

WHEREAS, Lessee and ARI wish to amend the Agreement to so expand the provisions of the Agreement and make other changes;

NOW, THEREFORE, in consideration of the premises and the promises set forth herein, Lessee and ARI agree that the Agreement is amended, effective as of October 25, 1994, as follows:

1. The following new sections 1.2 and 1.3 are hereby added to Article 1 of the Agreement as follows:

  "1.2 Both Lessee and Lessee Affiliates shall have the right to issue orders hereunder. For the purposes of this Agreement and its interpretation, and unless otherwise indicated, the use of the term "Lessee" shall be deemed a reference to either Lessee or to the Lessee Affiliate, whichever issued the lease order involved. A lease order issued hereunder shall create contractual rights and obligations solely between Lessee or a Lessee Affiliate, whichever issued the lease order, and ARI and any applicable ARI Affiliate (as hereinafter defined), and neither Lessee nor a Lessee Affiliate shall have any obligation or liability to ARI and any applicable ARI Affiliate with respect to a lease order issued by the other to ARI or the applicable ARI Affiliate.

  1.3 ARI has entered into this Agreement for and on behalf of itself and those of its affiliates which are set forth below ("ARI Affiliates"). ARI represents and warrants that each entity listed below is an affiliate of ARI, that ARI has full power and authority to negotiate this Agreement for itself and for and on behalf of each listed ARI Affiliate, and that each listed ARI Affiliate has agreed in writing to be bound by the terms and conditions of this Agreement as if it were a signatory hereto and as if each reference to ARI herein were a reference also to any applicable ARI Affiliate. The applicable ARI Affiliate, if any, shall be determined by the reference in the applicable lease order to the lessor. ARI shall indemnify and hold Lessee and the Lessee Affiliates free and harmless from any and all claims, losses, damages, liabilities, injuries, costs and expenses (including without limitation reasonable attorneys' fees) arising from or in any way connected with any breach by an ARI Affiliate of this Agreement, including without limitation any disavowal by any ARI Affiliate of this Agreement or any obligation under this Agreement.

1

crlari94.082195

| Country | Affiliate's Legal Name | Address |
|---------|------------------------|---------|
| Canada | ARI Canada Limited | 1270 Central Parkway West<br>Suite 600<br>Mississauga, Ontario<br>Canada L5C 4P4 |
| Mexico | ARI Fleet Services S.A. de C.V. | _____<br>_____<br>_____" |

2.  Existing Section 2.1 is hereby superseded in its entirety and the following new Section 2.1 is inserted in lieu thereof with respect to all new lease orders placed on or after October 25,1994:

> "**2.1. Ordering Vehicles.** Lessee shall furnish ARI a written or electronically transmitted order for each vehicle to be leased hereunder, specifying the make, model, equipment and a delivery point within the applicable country. The Capitalized Value, as defined in Article 6, for vehicles purchased by ARI from a dealer's inventory ("Stock Purchases") and for vehicles purchased by ARI which are specially ordered by a dealer from the manufacturer ("Factory Orders") shall be determined in accordance with Exhibit A. For vehicles to be leased hereunder with delivery points in Canada, Puerto Rico or Mexico, ARI shall advise Lessee of the Capitalized Value for such vehicles prior to Lessee's issuance of an order therefor."

3.  Existing Section 17.1 is hereby superseded in its entirety and the following new Section 17.1 is inserted in lieu thereof with respect to all new lease orders placed on or after October 25, 1994:

> "**17.1** Lessee will carry for the benefit of Lessee, Lessee's employees and others who operate the vehicle with the permission of Lessee, and pay the cost thereof, insurance against liability for bodily injury in a minimum limit of $1,000,000, and against liability for property damage in a minimum limit of $100,000. Lessee will furnish written evidence of said insurance and ARI shall be named as an additional insured (where permitted by local custom) with respect to Lessee's indemnification obligations under Article 18.1. Lessee shall bear all risk of loss or damage to each leased vehicle and the contents thereof. In accordance with Article 1.2 hereof, the term "Lessee" as used in this Article shall be deemed a reference to either Lessee or to the Lessee Affiliate, whichever issued the lease order involved."

4.  Article 32 of the Agreement is hereby superseded in its entirety and the following new Article 32 is inserted in lieu thereof with respect to all new lease orders placed on or after October 25, 1994:

"**ARTICLE 32**
**Vehicles Leased in Countries Other Than the United States of America**

32.1  The rental fees for any vehicles delivered in any country outside of the United States of America for lease pursuant to Article 2.4 shall be specified in the official currency of such country. Lessee, at its option but with the prior written consent of ARI, may pay the rental fees for any vehicles delivered in such country for lease pursuant to Article 2.4 in either U.S. Dollars or in the official currency of such country, and, if the latter option is chosen, the rate of exchange shall be that specified in The Wall Street Journal for the date on which payment of the applicable monthly rental fee is due."

2

crlari94.082195

5. A new Article 33 is hereby added to the Agreement as follows:

## "ARTICLE 33
### Electronic Equipment and Software

33.1   ARI shall furnish, at ARI's expense, all hardware, including printers and modems, software and training to Lessee's employees pertaining to all aspects of electronically generated data produced pursuant to this Agreement. ARI represents and warrants that it has right and authority to grant to Lessee the right to use the software being furnished under this Agreement and hereby grants such right to Lessee for use under this Agreement at no additional charge. ARI further agrees to provide any required maintenance and upgrades for the hardware and software furnished. Risk of loss for all such hardware and software shall be borne by ARI. Such hardware and software shall be returned to ARI when all services of ARI and any obligations of Lessee to be performed under this Agreement are completed."

6. Exhibit B to the Agreement is hereby superseded with respect to all new lease orders placed on or after October 25, 1994, and the attached Exhibit B(1) dated October 25, 1994, shall apply with respect to such lease orders.

7. In Exhibit D to the Agreement, the first paragraph is hereby superseded and the following new paragraph is inserted in lieu thereof:

"ARI shall provide the Fleet Management Services as described herein, for the fee set forth herein on a vehicle by vehicle basis as specified by Lessee, for all vehicles leased in the United States and Canada. Fleet Management Services as described in this Exhibit D to be provided by ARI for any vehicles leased in countries other than the United States and Canada shall be subject to availability in such country and subject to fees for such services being mutually agreed upon by the parties."

8. In Exhibit D to the Agreement, the following is hereby added under the section entitled "PLAN IX Fleet Insurance Management Services - Driver Abstract Program":

"Additional services under this Plan IX shall include the following:

Accident Reporting/Claims Analysis/Appraisals and Repairs:

ARI shall perform the everyday administration of accident reporting and claims handling for all physical damage (collision, comprehensive, fire and theft) claims relating to the leased vehicles. Such services shall include:

a.   recording and setting up of claim files for each accident

b.   reporting the claim to Lessee's insurance company as necessary

c.   arranging for inspection and/or appraisals of damaged vehicles

d.   authorization of repairs via purchase order and expediting of repairs with body shops

e.   payment of repairs to authorized body shops

f.   total loss and salvage disposition, only when so requested by Lessee

g.   monthly invoicing of paid repairs to Lessee

h.   monthly claim summary report

3

crlari94.082195

All appraiser/inspection fees and physical damage related charges for storage, towing, release, etc. will be the responsibility of the Lessee.

Subrogation Recovery Service:

ARI shall provide the following program which Lessee may use in conjunction with the Accident Reporting/Claims Analysis/Appraisals and Repairs service described above, or as a separate service in itself.

ARI will pursue recovery of property damage claims against negligent adverse parties and/or their insurance carriers resulting from accident claims. Such services shall include:

a. upon prior approval by Lessee, issue prompt claim notice to negligent adverse parties

b. complete accident investigation to ascertain responsibility

c. follow-up recovery status

d. upon prior approval by Lessee, negotiate recovery settlements

e. upon receipt of specific written instruction from Lessee and using attorneys approved by Lessee, commence legal action against adverse parties when warranted and necessary

f. upon prior approval by Lessee, trace and pursue recovery directly against uninsured motorists

All appraiser/inspection fees and investigative charges for police reports, motor vehicle checks and credit checks will be the responsibility of the Lessee.

All legal costs must be approved by Lessee before such expenses are incurred.

Lessee shall pay a fee for this service equivalent to 15% of the recovery made."

9. In Exhibit D to the Agreement, in the section entitled "FEES", the phrase "$10.50 per leased vehicle per month" is hereby superseded and the phrase "$11.25 per leased vehicle per month" is inserted in lieu thereof.

10. In Exhibit H to the Agreement, wherever there is a reference to the "January 15, 1993 Agreement" such reference is hereby amended by the addition of the words ", as amended," immediately after such reference.

11. The Agreement as amended by this Amendment No. 1 shall be identified as:

"NTI/Lessee Agreement No. 730281"

crlari94.082195

12. This Amendment No. 1 constitutes all of the amendments to the Agreement and supersedes all prior negotiations and writings with respect thereto. In all other respects the Agreement shall remain unchanged and is hereby ratified and confirmed by the parties hereto.

IN WITNESS WHEREOF, the parties have caused this Amendment No. 1 to be signed by their duly authorized representatives to be effective as of the date first above written.

**NORTHERN TELECOM INC.**             **AUTOMOTIVE RENTALS, INC.**

By: _C. Colin M. Co_                By: _M. F. Laporta_

Print Name: _C. Colin Male_          Print Name: _M. F. LAPORTA_

Title: _AVP, Corp. Supply Mgmt_      Title: _Pres._

Date: _26 July 96_                   Date: _2-6-96_

5

## EXHIBIT B(1)

For all vehicles leased in the United States:

For each leased vehicle the monthly rental fee, during its Depreciation Period, shall be computed by multiplying the vehicle's Capitalized Value by the applicable Depreciation Rate percentage shown hereinbelow. The monthly rental fee shall also include the addition of interest which shall be calculated for each calendar month of the lease term (on the basis of a 360-day year) for the actual number of days elapsed from the effective date of the lease for such vehicle or the first day of the applicable month of the lease term, whichever shall be later, to the end of the applicable month of the lease term at _____*_____ basis points (i.e. _____*_____ percent) per annum in excess of the interest rate quoted by Societe Generale (Bank) as its cost of thirty (30) day funds based upon the London Interbank Offered Rate (LIBOR) adjusted for reserve requirements of the Federal Reserve Bank in New York on the twenty-fifth (25th) day of the month immediately preceding such month. For medium and heavy duty trucks, the applicable percentage used to calculate the monthly rental fee shall be agreed upon by ARI and Lessee. The interest rate shall be adjusted each month and such adjustment(s) shall be effective on the first day of the month being billed. The interest shall be applied to the Depreciated Value of each leased vehicle at the end of the month prior to the month being billed.

Example:
* 12.5 basis points (i.e., 1/8 Percent for Factory Ordered Vehicles)
            or
    100 basis points (i.e., 1 Percent for Stock Purchased Vehicles)

Depreciation Period:            Months 1 - 50
Monthly Depreciation Rate:      2.0%
Monthly Administrative Fee:     $7.50 Per Leased Vehicle per Month

For all vehicles leased in Canada:

For each leased vehicle the monthly rental fee, during its Depreciation Period, shall be computed by multiplying the vehicle's Capitalized Value by the applicable Depreciation Rate percentage shown hereinbelow. The monthly rental fee shall also include the addition of interest which shall be calculated for each calendar month of the lease term (on the basis of a 360-day year) for the actual number of days elapsed from the effective date of the lease for such vehicle or the first day of the applicable month of the lease term, whichever shall be later, to the end of the applicable month of the lease term at 145 basis points (i.e. 1.45 percent) per annum in excess of the 30-Day Bankers Acceptance Rate as quoted by The Financial Post as of the fifteenth (15th) day of the month in which each invoice is generated. For medium and heavy duty trucks, the applicable percentage used to calculate the monthly rental fee shall be agreed upon by ARI and Lessee. The interest rate shall be adjusted each month and such adjustment(s) shall be effective on the first day of the month being billed. The interest shall be applied to the Depreciated Value of each leased vehicle at the end of the month prior to the month being billed.

Depreciation Period:            Months 1 - 50
Monthly Depreciation Rate:      2.0%
Monthly Administrative Fee:     $10.00 Canadian Per Leased Vehicle per Month

For all vehicles leased in Mexico:

For each leased vehicle the monthly rental fee, during its Depreciation Period, shall be computed by multiplying the vehicle's Capitalized Value by the applicable Depreciation Rate percentage shown hereinbelow. The monthly rental fee shall also include the addition

of interest which shall be calculated for each calendar month of the lease term (on the basis of a 360-day year) for the actual number of days elapsed from the effective date of the lease for such vehicle or the first day of the applicable month of the lease term, whichever shall be later, to the end of the applicable month of the lease term at 575 basis points (i.e. 5 and 3/4 percent) per annum in excess of the interest rate quoted by Societe Generale (Bank) as its cost of thirty (30) day funds based upon the London Interbank Offered Rate (LIBOR) adjusted for reserve requirements of the Federal Reserve Bank in New York on the twenty-fifth (25th) day of the month immediately preceding such month.  For medium and heavy duty trucks, the applicable percentage used to calculate the monthly rental fee shall be agreed upon by ARI and Lessee.  The interest rate shall be adjusted each month and such adjustment(s) shall be effective on the first day of the month being billed.  The interest shall be applied to the Depreciated Value of each leased vehicle at the end of the month prior to the month being billed.

| | | |
|---|---|---|
| Depreciation Period: | Months 1 - 50 | |
| Monthly Depreciation Rate: | 2.0% | |
| Monthly Administrative Fee: | $.50 | per $1,000 of Capitalized Value of the |
| | 0.02050 | Leased Vehicle |

SECOND AMENDMENT TO VEHICLE LEASE AGREEMENT
DATED:  MARCH 27, 1997

The Lease Agreement entered into as of the 15th day of
January, 1993, by and between Automotive Rentals, Inc., a New
Jersey Corporation, with its principal place of business at 9000
Midlantic Drive, PO Box 5039, Mt. Laurel, New Jersey 08054,
hereinafter called "ARI" and Northern Telecom Inc., having its
principal place of business at 200 Athens Way, Nashville,
Tennessee 37228-1397, hereinafter called "Lessee" is hereby
amended as follows:

Effective April 1, 1997, Exhibit D - Fleet Management
Services; Plan X - Fringe Benefit Report Program shall be deleted
in its entirety and the Fee section shall be amended to reflect
$10.75 per leased vehicle per month.

All other terms and conditions of the Vehicle Lease Agreement
dated January 15, 1993, shall remain unchanged.  This Amendment
shall be attached to and become part of the Vehicle Lease
Agreement dated January 15, 1993.

NORTHERN TELECOM INC.            AUTOMOTIVE RENTALS, INC.
(LESSEE)                         (ARI)

By: _____      By: _____

Title: _____      Title: _____

Witness: _____      Witness: _____

Date: _____5 May 97_____      Date: _____5-20-97_____

## THIRD AMENDMENT TO VEHICLE LEASE AGREEMENT
### DATED:  APRIL 9, 1998

AMENDMENT to the Agreement dated as of the 15th day of January, 1993, by and between Automotive Rentals, Inc., a New Jersey Corporation, with its principal place of business at 9000 Midlantic Drive, PO Box 5039, Mt. Laurel, New Jersey 08054, hereinafter called "ARI" and Northern Telecom Inc., having its principal place of business at 200 Athens Way, Nashville, Tennessee 37228-1397, hereinafter called "Lessee" is hereby amended as follows:

WHEREAS, the Vehicle Lease Agreement dated January 15, 1993 (as heretofore amended, the "Agreement") has heretofore been entered into between ARI and Lessee:

WHEREAS, ARI and Lessee mutually desire to amend certain provisions as hereinafter provided:

Effective April 1, 1998, Exhibit D - Fleet Management Services; Plan IX - Fleet Insurance Management Services - Driver Abstract Program shall be instituted in the County of Canada and amended to read as follows:

Upon receipt of driver identification and license information, ARI shall provide to Lessee, if available, motor vehicle accident records and/or driver violation reports from the various provinces on each individual driver.  Lessee shall pay the standard fee for the cost of the abstract.  ARI shall not be liable for any damages or costs arising out of or connected with the information provided hereunder.

Fee:  <u>$10.00</u> per occurrence in addition to the cost of the abstract.

All other terms and conditions of the Vehicle Lease Agreement dated January 15, 1993, shall remain unchanged.  This Amendment shall be attached to and become part of the Vehicle Lease Agreement dated January 15, 1993.

**NORTHERN TELECOM INC.**
**(LESSEE)**

By: _Monica L. Lesko_

Title: _Asst. Treasurer_

Witness: _Julie Holland_

Date: _2/10/99_

**AUTOMOTIVE RENTALS, INC.**
**(ARI)**

By: _James Newman_

Title: _Contract Mgr_

Witness: _Alexa Chapman_

Date: _2-3-99_

# AMENDMENT NO. 4
## TO
## VEHICLE LEASE AGREEMENT

THIS AMENDMENT NO. 4 TO VEHICLE LEASE AGREEMENT ("Amendment") is entered into this 22nd day of December, 1998 by and between NORTHERN TELECOM INC., a Delaware corporation with offices at 200 Athens Way, Nashville, Tennessee 37228-1397 ("Lessee") and AUTOMOTIVE RENTALS, INC., a New Jersey corporation with its principal place of business at 9000 Midlantic Drive, PO Box 5039, Mt. Laurel, New Jersey 08054 ("ARI").

## R E C I T A L S :

a.      Lessee and ARI entered into that certain Vehicle Lease Agreement dated as of January 15, 1993, as subsequently amended ("Agreement").

. b.      The parties now desire to further amend the Agreement in order to allow Lessee to treat the lease, for accounting purposes, as an operating lease rather than a capital lease.

NOW, THEREFORE, in consideration of the premises set forth herein, the parties hereto hereby agree as follows:

1.      Article 12.2 is deleted in its entirety and replaced with the following:

"With respect to any vehicles sold or otherwise disposed of pursuant to Article 12.1 on or after January 1, 1999:

(a)      If the amount of the Net Resale Proceeds is greater than the Depreciated Value, ARI shall remit to Lessee, as a rental adjustment, 100% of any such excess amount.

(b)      If the amount of the Net Resale Proceeds are less than the Depreciated Value, Lessee shall remit to ARI, as a rental adjustment, the amount of the deficiency; provided, however, that with respect to vehicles which have mileage less than the product of 1,667 and the number of months the vehicles has been under lease, if:

(i)      Lessee has not extended the term of the lease beyond the Initial Lease Term and the Net Resale Proceeds are less than 20% of the Capitalized Value of such vehicle as of the beginning of its Initial Lease Term ("Minimum Resale Proceeds"), ARI shall guarantee that the Net Resale Proceeds equal the Minimum Resale Proceeds.

JAN 13 '99 10:49 FR NORTEL SUPPLY MGMT   905 863 8520 TO 62225111

(ii)   Lessee has not elected to terminate the lease at the end of the Initial Lease Term, then ARI shall guarantee that the Net Resale Proceeds equal twenty-five percent (25%) of the Fair Value of such vehicle at the first day of the month in which the lease is terminated. For the purposes of this Article 12.2(ii), "Fair Value" shall be defined as eighty-five percent (85%) of the resale value for automobiles and seventy percent (70%) of resale value for light trucks (under 11,000# GVW) as reported by Automotive Market Report as of the most recent publication date immediately prior to the month in which termination of the lease occurs (or if Automotive Market Report is no longer published, such other publication upon which the parties may reasonably agree)."

2.   All other terms and conditions of the Agreement shall remain unchanged and are hereby ratified and affirmed by the parties.

IN WITNESS WHEREOF, each of the parties hereto have caused this Amendment to be signed by its duly authorized representative, to be effective as of the date first above written.

LESSEE:                                    ARI:

NORTHERN TELECOM INC.                      AUTOMOTIVE RENTALS, INC.

By: _Monica L Lesk_____                  By: _R.R. Cabell_____

Title: _Asst. Treasurer___                 Title: _Vice Pres._____

Date: _12-22-98_____                     Date: _1-6-99_____

** TOTAL PAGE.04 **

## FIFTH AMENDMENT TO VEHICLE LEASE AGREEMENT
### NYI AGREEMENT NO. 730280
### DATED: MAY 19, 1999

The Vehicle Lease Agreement entered into as of the 15th day of January, 1993, by and between Automotive Rentals, Inc., a New Jersey Corporation, with its principal place of business at 9000 Midlantic Drive, PO Box 5039, Mt. Laurel, New Jersey 08054, hereinafter called "ARI" and Northern Telecom Inc., a Delaware corporation, with its principal place of business at 200 Athens Way, Nashville, Tennessee 37228-1397, hereinafter called "Lessee" is hereby amended as follows:

Effective May 3, 1999, the "Parties" clause of the Vehicle Lease Agreement is amended to reflect that Lessee has changed its name to Nortel Networks Inc. Lessee warrants that there will be no adverse change in the financial condition of Nortel Networks Inc., as a result of or associated with, the name change and any associated actions of Nortel Networks Inc.

All other terms and conditions of the Vehicle Lease Agreement dated January 15, 1993, shall remain unchanged. This Amendment shall be attached to and become part of the Vehicle Lease Agreement dated January 15, 1993.

NORTEL NETWORKS INC.
(LESSEE)

By: _____

Title: VP SRSTH

Witness: _____

Date: 5/25/99

AUTOMOTIVE RENTALS, INC.
(ARI)

By: _____

Title: _____

Witness: _____

Date: 6-17-99

## AMENDMENT TO LEASE AGREEMENT
### DATED: September 14, 2000

The Master Lease Agreement dated as of January 15, 1993, between Automotive Rentals, Inc., as Lessor ("ARI"), and Nortel Networks Inc., as Lessee (the "Lessee"), including any prior amendments ("Master Lease"), is amended as follows:

1.    Vehicles leased by Lessee will be leased from either ARI or from ARI Fleet LT, a Delaware business trust. The Motor Vehicle Lease Agreement ("MVLA") for each vehicle will be in the attached form and will state whether ARI or ARI Fleet LT is lessor for that vehicle. ARI has been designated the servicer for ARI Fleet LT and as such will perform all the obligations of the Lessor under the MVLA's.

2.    The Master Lease provides standard provisions governing the terms of the lease of each vehicle which will be incorporated by reference into each MVLA. When ARI Fleet LT is listed as Lessor, all references to ARI in the Master Lease will refer instead to ARI Fleet LT.

3.    The parties intend that each MVLA will be an independent lease agreement relating solely to the vehicle named in it and accordingly each MVLA will be separate and distinct from every other lease agreement between the parties.


**AUTOMOTIVE RENTALS, INC.**

By: _(signature)_

**ARI FLEET LT**

By: _(signature)_


Acknowledged and accepted:

**NORTEL NETWORKS INC.**

By: _(signature)_

09/04/2007 TUE 1:30 FAX @002/002

MOTOR VEHICLE LEASE AGREEMENT

_____ (Lessor) hereby leases to _____ _____ (Lessee), the vehicle(s) (Vehicle(s)) referred to herein for the rental set forth herein. This Motor Lease Agreement is entered into between Lessor and Lessee and constitutes a separate and independent lease agreement solely of the Vehicle(s). This Motor Vehicle Lease Agreement is separate and distinct from any other lease agreement or other agreement between Lessor and Lessee or to which Lessee is otherwise a party. The terms of the Master Lease (except for any terms that refer to specific vehicles other than the Vehicle(s)) are incorporated by reference into this Motor Vehicle Lease Agreement and constitute terms of this Motor Vehicle Lease Agreement with the same effect as if they were fully set forth herein. The "Master Lease" refers to the Lease Agreement, dated _____, entered into between Lessee and Automotive Rentals, Inc., as amended to date.

Lessor hereby assigns to _____ _____ (Assignee) all rights, title and interest of Lessor in and to all moneys due and to become due under this Motor Vehicle Lease Agreement and Lessor hereby authorizes Assignee to collect all such moneys when due, either in the name of the Assignee or Lessor. Lessee hereby agrees to this assignment.

To induce Assignee to accept an assignment of Lessor's rights under this Motor Vehicle Lease Agreement, Lessee agrees that upon such assignment, all rights and remedies of Lessor hereunder shall vest in and be exercisable by Assignee, that Lessee will render performance of Lessee's obligation hereunder to Assignee rather than Lessor and that the rights of Assignee to rentals and other sums due hereunder shall not be subject to any defense (except payment), offset, counter-claim or recoupment of Lessee whatsoever arising from the breach or failure of Lessor to observe or perform the provisions of this Motor Vehicle Lease Agreement or any other agreement between Lessor and Lessee or arising from any cause whatsoever. Lessee also agrees that nothing (including termination of this Motor Vehicle Lease Agreement) except full payment to Assignee of the Capitalized Value set forth below, with interest to date of such payments to Assignee under this Motor Vehicle Lease Agreement. Lessee also agrees to continue to make prompt payments to Assignee of the rentals due hereunder even if bankruptcy, reorganization, arrangement, insolvency, liquidation or dissolution proceedings shall assume or reject this Motor Vehicle Lease Agreement or other agreement between Lessor and Lessee. Lessee also agrees that Assignee does not assume any obligations arising hereunder and Lessee will look solely to Lessor for the performance of any such obligations.

## VEHICLE INFORMATION

## EQUIPMENT

S = SIDEBILLED    D = DEALER INSTALLED

## COST

| DESCRIPTION | CAPPED AMOUNT | DESCRIPTION | CAPPED AMOUNT | DESCRIPTION | CAPPED AMOUNT |
|---|---|---|---|---|---|
| | | | | | |

## LEASE INFORMATION

Date _____    By _____

Authorized Signature

Nortel Agreement 730281 (7)
Nortel Project 07-461

## SEVENTH AMENDMENT TO VEHICLE LEASE AGREEMENT
## NTI AGREEMENT NO. 730280
## DATED: AUGUST 21, 2007

AMENDMENT to the Vehicle Lease Agreement ("Agreement") entered into as of the 15th day of January, 1993, by and between ARI Fleet LT, a Delaware business trust, hereinafter called "ARI Fleet" and Automotive Rentals, Inc., a New Jersey corporation, located at 9000 Midlantic Drive, PO Box 5039, Mt. Laurel, New Jersey 08054, hereinafter called "ARI" and Nortel Networks Inc., a Delaware corporation, with its principal place of business at 200 Athens Way, Nashville, Tennessee 37228-1397, hereinafter called "Lessee", is hereby amended as follows. ARI and ARI Fleet are at times referred to herein, individually or collectively as the context may require, as the "Lessor".

WHEREAS, Lessor and Lessee mutually desire to amend certain provisions of the agreement;

NOW THEREFORE, in consideration of the premises and the promises set forth herein, Lessor and Lessee agree, effective August 21, 2007, for new vehicles going into service on or after August 21, 2007, as follows:

1. The section for vehicles leased in Canada on the Exhibit B (1) of the Agreement shall be deleted and replaced as follows:

For all vehicles leased in Canada:

For each leased vehicle, during its Depreciation Period, the monthly rental fee shall consist of three parts:

    A. Monthly Rental Fee
    B. Interest
    C. Administrative Fee

### A. Monthly Rental Fee

The monthly rental fee shall be computed by multiplying the vehicle's Capitalized Value, as defined in Article 6 of the Agreement, by the applicable Depreciation Rate as defined herein.

### B. Interest

The monthly rental fee shall also include the addition of interest which shall be calculated for each calendar month of the Depreciation Period (on the basis of a 365 day year) for the actual number of days elapsed from the effective date of the lease or the first day of the applicable month of the Depreciation Period, whichever shall be later, to the end of the applicable month of the Depreciation Period term at 170 basis points (i.e. 170/100 percent) per annum over the Government of Canada Two Year Bond interest rate as established, at the time such vehicle is delivered, by The Bank of Canada on or around the 1st day of the month in which the lease begins. This interest rate shall remain fixed during the Depreciation Period of the lease. For medium and heavy duty trucks, the rate of interest shall be such as negotiated between ARI and Lessee.

For clarity, the interest charge will be applied to the declining value (remaining value) of the Capitalized Value for the applicable vehicle.

Nortel Agreement 730281 (7)
Nortel Project 07-461

## C. Administrative Fee

The Administrative Fee shall be equal to the amount indicated herein and which shall not be subject to interest.

### Rates and Periods

Depreciation Period:      Months 1 – 50 of the lease term
Depreciation Rate:        2.0%
Administrative Fee:       $8.50 Canadian per Leased Vehicle per Month

2. All other terms and conditions of the Vehicle Lease Agreement dated January 15, 1993, shall remain unchanged. This Amendment shall be attached to and become part of the Vehicle Lease Agreement dated January 15, 1993.

IN WITNESS WHEREOF, the parties have caused this amendment of the Agreement to be signed by their duly authorized representatives.

**NORTEL NETWORKS INC.**
("LESSEE")

By: _Wendy Mehetry_

Title: _Director_

Witness: _____

Date: _Oct 16, 2007_

**AUTOMOTIVE RENTALS, INC.**
("ARI" OR "LESSOR")

By: _Daniel Willard_

Title: Daniel Willard
Director-Financial Services

Witness: _____ ARI

Date: _10-15-07_

**ARI FLEET LT**
("ARI FLEET" OR "LESSOR")

By: _Daniel Willard_

Title: Daniel Willard
Director-Financial Services

Witness: _____ ARI

Date: _10-15-07_

Nortel Agreement 730281 (8)

**EIGHTH AMENDMENT TO VEHICLE LEASE AGREEMENT
NTI AGREEMENT NO. 730280
DATED: JUNE 12, 2008**

AMENDMENT to the Vehicle Lease Agreement ("Agreement") entered into as of the 15th day of January, 1993, by and between ARI Fleet LT, a Delaware business trust, hereinafter called "ARI Fleet" and Automotive Rentals, Inc., a New Jersey corporation, located at 9000 Midlantic Drive, PO Box 5039, Mt. Laurel, New Jersey 08054, hereinafter called "ARI" and Nortel Networks Inc., a Delaware corporation, with its principal place of business at 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, North Carolina 27709, hereinafter called "Lessee", is hereby amended as follows. ARI and ARI Fleet are at times referred to herein, individually or collectively as the context may require, as the "Lessor".

WHEREAS, Lessor and Lessee mutually desire to amend certain provisions of the agreement;

NOW THEREFORE, in consideration of the premises and the promises set forth herein, Lessor and Lessee agree, effective June 12, 2008, as follows:

1. The Parties clause of the Agreement shall be amended to reflect Lessee has changed its principal place of business to 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, North Carolina 27709.

2. Plan V – Gasoline Credit Card Program – located on the Exhibit D – Fleet Management Services – shall be amended to include the following:

ARI shall provide a rebate of twenty-five (25) basis points based on the fuel volume consumed under the Agreement ("Fuel Rebate") after such transactions are reported to ARI by Wright Express.

For clarity, ARI is not required to maintain its relationship with Wright Express for purposes of the Gasoline Credit Card Program and Nortel understands and agrees that Nortel will not be entitled to the Fuel Rebate if a fuel card provider other than Wright Express is used by ARI.

ARI shall provide the Fuel Rebate, if any, to Lessee in the form of a credit in United States (dollars) ("Fuel Rebate Credit"), on a monthly invoice to Lessee. Each Fuel Rebate Credit shall include the Fuel Rebate for the fuel volume reported by the Fuel Card Provider to ARI since the date of the last fuel consumption report applicable to the previous Fuel Rebate Credit.

For clarity, ARI shall apply the Fuel Rebate Credit to each invoice issued to Lessee after the date the Fuel Rebate Credit accrues, until the Fuel Rebate Credit is exhausted. If a Fuel Rebate Credit remains unused as of the effective date of expiration or termination of the Agreement, within thirty (30) days of the effective date of expiration or termination, ARI will pay an amount in U.S. dollars equal to the unused Fuel Rebate Credit."

Nortel Agreement 730281 (8)

3. All other terms and conditions of the Vehicle Lease Agreement dated January 15, 1993, shall remain unchanged.  This Amendment shall be attached to and become part of the Vehicle Lease Agreement dated January 15, 1993.

IN WITNESS WHEREOF, the parties have caused this amendment of the Agreement to be signed by their duly authorized representatives.

NORTEL NETWORKS INC.                    AUTOMOTIVE RENTALS, INC.
("LESSEE")                              ("ARI" OR "LESSOR")

By:   _____           By: _____
                                            Daniel Willard
Title:   Director, Indirect Procurement  Title: Director-Financial Services

Witness:   Alan J. Rice                  Witness: _____ ARI Buckman _____

Date:   12/10/08                         Date:   12/10/08

                                        ARI FLEET LT
                                        ("ARI FLEET" OR "LESSOR")

                                        By: _____
                                            Daniel Willard
                                        Title: Director-Financial Services

                                        Witness: _____ ARI Buckman _____

                                        Date:   12/10/08

Page 2 of 2

**InBound Contracts Solutions (ICS)**
**Contract Signoff Approval Form - Scanning Control Form**

\*   Nortel Legal Entity Signing:           Northern Telecom Inc.

   Nortel Business Unit Involved:

\*   Document Type:                     Assignment

\*   Agreement Type of Original Document:    Lease Agreement

\*   Product / Service Covered:          Goods Miscellaneous

\*   Archiving Folder Category          Expense/Capital Goods

\*   Contracted Party Legal Name:       Automotive Rentals, Inc.

\*   Agreement No. of this Document:

\*   Agmt. No. of Original Document:      730280

\*   Agreement Term Start Date:        02/02/1996
     mm/dd/yyyy
     Agreement Term Expiration Date:
     mm/dd/yyyy

   Nortel Product/Technology Manager:

   ICS Prime:

   Nortel Attorney of Record:

   Forecasted Total Amount in U.S. Dollars
   to be spent by Nortel during the term:

   Any amount COMMITTED in attached
   contract to be spent in U.S. Dollars:

   Brief Description of Agreement:

   Significant deviations from pre-approved
   standard template language:

   Summary of Approvals:        (Approvals may be obtained either in writing or via e-mail at
                      the discretion of the ICS Prime.

   Product Management or
   Technology Management Approval:

   (optional) Finance Approval:

   Nortel Networks Legal Approval:

   Supply Management Prime Approval:

   Today's Date:

CONSENT TO ASSIGNMENT AND TRANSFER
AND
ASSUMPTION OF LEASE

THIS ASSIGNMENT, entered into as of the 2nd day of February, 1996, by and among Automotive Rentals, Inc., a New Jersey Corporation, with its principal place of business at 9000 Midlantic Drive, PO Box 5039, Mt.  Laurel, New Jersey 08054 ("ARI"), and Northern Telecom Inc., a Corporation, with its principal place of business at 200 Athens Way, Nashville, Tennessee 37228 ("Assignor"), and Nordx/CDT Corp., a Delaware Corporation, with its principal place of business at 475 N. Martingale Road, Schaumburg, Illinois 60173 ("Assignee").

WHEREAS, pursuant to that certain Lease Agreement dated as of the 15th day of January, 1993 (such lease agreement and all exhibits thereto referred to as the "Lease"), between ARI and the Assignor, as Lessee, (as defined in the Lease), the Assignor has leased from ARI, pursuant to separate individual lease agreements (the "Individual Leases"), certain motor vehicles, including those motor vehicles described in the Exhibit I attached hereto (the "Vehicles");

WHEREAS, the Assignor desires to assign and transfer to the Assignee, and the Assignee desires to acquire from the Assignor the Lessee's interest in the Vehicles; and

WHEREAS, ARI is willing to consent to such assignment and transfer on the terms and conditions hereinafter set forth, the parties hereto intending to be legally bound, hereby mutually agree as follows:

1.  ASSIGNMENT AND CONSENT.  Effective on the date hereof and on and subject to the terms and conditions herein set forth:  (a) the Assignor hereby assigns and transfers to the Assignee the Assignor's interest under the Lease, excluding Exhibits A and D thereto, and the Individual Leases in and to the Vehicles; (b) the Assignee hereby accepts and takes the foregoing assignment of the Assignor's interest under the Lease, excluding Exhibits A and D thereto, and the Individual Leases in and to the Vehicles; and (c) ARI consents to the foregoing assignment.

2.  ASSUMPTION OF LEASE.  The Assignee hereby assumes all of the obligations, liabilities and duties of the Assignor under the Lease as to the Vehicles only and under each Individual Lease pertaining thereto, as though the Assignee had originally entered into the Lease and the Individual Leases as the Lessee as defined therein provided that the Assignee does not assume and shall not be responsible for any such obligations, liabilities or duties which arose prior to the date hereof, and, provided, further, Assignor does not assume and shall not be responsible for any such obligations, liabilities or duties which arise on or after the date thereof.  Any such prior obligations, including, but not limited to, taxes associated with the vehicle, shall be the responsibility of Assignor.  Attached hereto is a copy of the Lease, excluding Exhibits A and D thereto.  Assignee acknowledges that it has received copies of or has inspected the Individual Leases assigned and assumed hereunder.

3. <u>NEW LEASE.</u>  In the event that ARI terminates the Lease on account of default by the Assignor thereunder, the Vehicles shall continue to be leased to the Assignee under the terms and conditions set forth in the Lease and ARI and the Assignee shall take such action as may be necessary to effect the foregoing, including, entering a new agreement on the same terms and conditions as contained in the Lease.

4. <u>EFFECTIVENESS.</u>  This Agreement shall become effective as of the date set forth above.  The Assignee shall be responsible for monthly rental payments commencing February 2, 1996 and transfer of Vehicles to Assignee shall be deemed to have occurred as of February 2, 1996.

5. <u>AUTHORITY TO SIGN.</u>  Any person who signs as an officer or agent for a corporation, partnership or other entity warrants that he has authority from such corporation, partnership or other entity to enter into this Assignment on its behalf.

IN WITNESS WHEREOF, the parties have executed this Assignment as of the date first above written.

NORTHERN TELECOM INC.                    NORDX/CDT ~~INC.~~ CORP.
("Assignor")                             ("Assignee")

By: _C. Colin Male_____             By: _____

Title: _C. Colin Male Ave Corp Supply mgmt._   Title: _PRESIDENT_____

Witness: _Barbara Brown_____          Witness: _Stephen Augustine___

Date: __12 March 96_____           Date: ___96/04/15_____

AUTOMOTIVE RENTALS, INC.
("ARI")

By: _____

Title: __SNVP_____

Witness: _Joan Catani_____

Date: ___7-25-96_____

EXHIBIT I

| Vehicle # | Year | Make | Model | Serial # |
|-----------|------|------|-------|----------|
| 96068 | 1996 | FORD | TAURUS GL | 1FALP52U4TA152342 |
| 95346 | 1995 | FORD | TAURUS GL | 1FALP52U7SG229300 |
| 95318 | 1995 | FORD | TAURUS GL | 1FALP52UXSG265532 |
| 94125 | 1994 | DODGE | INTREPID | 1B3ED46T5RF214190 |
| 95174 | 1995 | FORD | TAURUS GL | 1FALP52U1SA204122 |
| 95283 | 1995 | FORD | TAURUS GL | 1FALP57U8SG251489 |
| 94090 | 1994 | DODGE | INTREPID | 1B3ED46T9RF210224 |
| 94227 | 1994 | FORD | U34 | 1FMDU34X1RUB85045 |
| 96201 | 1996 | FORD | TAURUS GL | 1FALP52U4TG173883 |
| 94458 | 1994 | BUICK | CENTURY SPECIAL | 1G4AG55MXR6503193 |
| 95089 | 1995 | FORD | TAURUS GL | 1FALP52U2SG155834 |
| 95365 | 1995 | FORD | TAURUS GL | 1FALP52U9SG295301 |
| 94047 | 1994 | CHRYSLER | LHS | 2C3ED56FXRH182354 |
| 96228 | 1996 | FORD | TAURUS GL | 1FALP52U6TG134597 |
| 95270 | 1995 | FORD | TAURUS GL | 1FALP52UXSA249771 |
| 96130 | 1996 | FORD | TAURUS GL | 1FALP52U3TA128694 |

NTI Agreement No. 730280
ARI Agreement No. _____

**VEHICLE LEASE AGREEMENT**

This Agreement entered into as of the 15th day of January, 1993, by and between Automotive Rentals, Inc., a New Jersey corporation with its principal place of business at 9000 Midlantic Drive, P.O. Box 5039 Mt. Laurel, New Jersey 08054, hereinafter called "ARI" and Northern Telecom Inc., having its principal place of business at 200 Athens Way, Nashville, Tennessee 37228-1397, hereinafter called "Lessee."

**WITNESSETH THAT,** the parties hereto intending to be legally bound, hereby agree as follows:

## ARTICLE 1
### Lease of Vehicles

1.1    ARI shall lease to Lessee new vehicles as may be ordered by Lessee. All vehicles leased hereunder shall be owned by, and titled and/or registered in the name of ARI. This is an agreement to Lease only and Lessee has no right or option to purchase the vehicles at any time, except, however, Lessee shall have the option to purchase a vehicle at its then Fair Market Value in accordance with Article 12.1 herein. Any such option shall be subject to the minimum Initial Lease Term set forth in Article 3.1 and any obligations of Lessee set forth in Article 5.3. Notwithstanding the fact that both parties to this Lease Agreement intend to create a true lease and not a security agreement, to the extent that any court may determine that this lease is one intended as security, Lessee hereby grants to ARI a security interest in all of Lessee's right, title and interest in and to the vehicles leased hereunder and in all proceeds, products and substitutes or replacements thereof.

## ARTICLE 2
### Ordering and Delivery of Vehicle

2.1    **Ordering Vehicles.** Lessee shall furnish ARI a written or electronically transmitted order for each vehicle to be leased hereunder, specifying the make, model, equipment and a delivery point within the United States of America. The Capitalized Value, as defined in Article 6, for vehicles purchased by ARI from a dealer's inventory ("Stock Purchases") and for vehicles purchased by ARI which are specially ordered by a dealer from the manufacturer ("Factory Orders") shall be determined in accordance with Exhibit A. For vehicles to be leased hereunder with delivery points in Puerto Rico or Mexico, ARI shall advise Lessee of the Capitalized Value for such vehicles prior to Lessee's issuance of an order therefor.

2.2    **Delivery of Vehicles.** ARI agrees to deliver each vehicle leased hereunder to Lessee at the delivery point indicated in Lessee's order therefor, subject to ARI's ability to obtain sufficient vehicles of the type ordered in the time specified by Lessee, and subject to any other contingency beyond the control of ARI.

## ARTICLE 3
### Vehicle Lease Term

3.1    The term over which each vehicle leased hereunder shall be depreciated shall be the period specified in Exhibit B ("Depreciation Period"), or such other period as may be mutually agreed upon. The "Initial Lease Term" for each vehicle shall commence on the date that Lessee accepts delivery of such vehicle in accordance with Article 4, and shall continue for a minimum of twelve (12) months. After the Initial Lease Term, each lease shall continue on a month-to-month basis until the Depreciation Period specified in Exhibit B expires, unless such lease is earlier terminated as provided hereunder.

3.2    At the expiration of the Depreciation Period, each lease shall continue on a month-to-month basis, and the monthly rental fee after the expiration of the Depreciation Period shall be solely that specified in Article 5.6 herein, until such lease is terminated by notification by Lessee to ARI.

3.3    Each vehicle leased hereunder shall be deemed to be covered by a separate lease, Motor Vehicle Lease Agreement, in the form of Exhibit H hereto, applicable only to that specific vehicle. In the event of any conflict between the terms and conditions (other than pricing and vehicle specifications) of any individual Motor Vehicle Lease Agreement and this Agreement, including but not limited to the exemplar copy of Exhibit H attached hereto, the

- 1 -

crlari93.021594

terms and conditions of this Agreement shall control, and ARI shall indemnify NTI for any damages suffered by NTI as a result of a claim made against NTI based upon such inconsistency.

## ARTICLE 4
### Acceptance of Delivery of Vehicle

4.1    **Acceptance.** Lessee agrees to accept delivery of each vehicle ordered upon notice from ARI's delivering agent of the availability of each such vehicle at the delivery point indicated in Lessee's order therefor.

4.2    **Delivery Receipt.** In order to evidence its acceptance of delivery of each vehicle which it ordered, Lessee shall execute, by an authorized representative, and deliver to ARI a Delivery Receipt, in the form attached hereto and marked Exhibit F. The date indicated on the Delivery Receipt as the date on which Lessee accepted the vehicle identified thereon shall be deemed to be the first day of the Initial Lease Term with respect to such vehicle.

4.3    **ARI's Delivery Obligations.** As part of its delivery obligations, ARI shall ensure that each vehicle has been prepared for delivery by the dealer and that the benefits of the manufacturer's warranty, and the dealer's warranty, if any, shall be made directly available to Lessee, and no vehicle shall be deemed to have been made available at the delivery point until such obligations have been satisfied by ARI.

## ARTICLE 5
### Rental Payments

5.1    Lessee agrees to pay ARI, at Mt. Laurel, New Jersey (or at such other location as ARI may direct in writing), or its Assignee as described in Article 8, a monthly rental fee for the use of each vehicle leased hereunder during the term of such lease.

5.2    ARI shall send each monthly rental bill via overnight delivery service. With respect to each vehicle leased hereunder, all rental fee payments shall be due and payable on or before the thirtieth (30th) day of the month for which Lessee is being billed, or the last calendar day of that month, whichever is later ("Due Date"). Lessee shall pay interest on any payment not paid by the Due Date at a rate equal to the then current prime interest rate as announced by Citibank N.A. on the date the payment becomes overdue.

5.3    A full monthly rental fee payment shall be charged for each vehicle delivered on or before the fifteenth (15th) day of any month, but no charge shall be made for the month if the vehicle is delivered on or after the sixteenth (16th) day of any month. If a lease is terminated or expires on or before the fifteenth (15th) day of a month, the obligation to pay rent for such vehicle shall terminate on the last day of the preceding calendar month, and, if a lease is terminated or expires on or after the sixteenth (16th) day of a month, the obligation to pay rent for such vehicle shall terminate on the last day of the calendar month in which such expiration or termination occurs.

5.4    For each leased vehicle, the monthly rental fee during the Depreciation Period shall be computed as set forth in Exhibit B herein.

5.5    In the event a commercial vehicle, such as a truck, requires the installation of additional equipment after its delivery to ARI but before its delivery to Lessee (commonly known in the industry as "upfitting"), ARI shall diligently arrange and pay for the installation of such equipment, the price for which shall be added to the Capitalized Value for such commercial vehicle in accordance with Article 6, and if ARI is required to pay for such commercial vehicle after its delivery to ARI but prior to its delivery to Lessee, then the Initial Lease Term with respect to such commercial vehicle shall commence on the date ARI is invoiced for such vehicle by the manufacturer.

5.6    For each vehicle which remains leased to Lessee on a month-to-month basis after the expiration of the Depreciation Period, the monthly rental shall be solely the Administrative Fee indicated on Exhibit B.

## ARTICLE 6
### Capitalized Value

6.1    The "Capitalized Value" for the leased vehicles described on Exhibit A shall consist of the sum of the following amounts:

- 2 -

crlari93.021594

a.   (i)    For Factory Orders, the price paid by the dealer to the manufacturer ("Invoice Price"), as evidenced by the manufacturer's invoice to the dealer, less the amount specified in Exhibit A and less any additional discounts or rebates or other incentives negotiated directly with the manufacturer or dealer by Lessee or by ARI, plus, to the extent not listed on the invoice, any taxes, transportation and/or preparation charges, or

       (ii)    for Stock Purchases, the price paid by ARI to the dealer to purchase the vehicle, including any taxes, transportation and/or preparation charges ("ARI's Acquisition Costs"), plus the amount specified in Exhibit A;

plus

b.    the amount paid by ARI to purchase and have installed any optional equipment and/or accessories requested by Lessee which were not furnished or included by the vehicle manufacturer and/or additional transportation charges incurred by reason of a change of delivery point requested by Lessee prior to delivery.

For vehicles other than those described on Exhibit A, ARI shall advise Lessee of the Capitalized Value of such vehicles prior to the issuance of an order therefor by Lessee.

## ARTICLE 7
### Costs Reimbursed by Lessee

7.1    Lessee shall reimburse ARI for the cost of state and local inspections, license tags, plates, and any certificates of title, notary fees, lien recording fees, clerk fees, and registrations and similar compliance required by law when a new vehicle is initially leased from ARI by Lessee.

## ARTICLE 8
### Assignment of Rentals

8.1    ARI may assign its rights and interest to all monies due and to become due to ARI with respect to any vehicle leased by Lessee under the terms of this Agreement to a financing institution (hereinafter, an "Assignee"), and in the event of such assignment, Lessee shall direct to Assignee, if so directed in writing by ARI, by means of a letter substantially in the form of Exhibit I hereto, the payments of such monies; such Assignee's right to payment of all such monies shall not be subject to any defense by Lessee, except payment to the Assignee or termination of the lease for such vehicle. No such termination shall relieve Lessee of any obligations incurred prior to such termination.

8.2    In the event of any such assignment, the liability of Lessee to pay the appropriate monthly rental fee to the Assignee with respect to any vehicle leased hereunder shall not be terminated notwithstanding anything herein contained to the contrary, unless Lessee has terminated the lease for such vehicle as permitted under the terms of this Agreement and the Assignee has been paid any rental fees then outstanding.

8.3    ARI covenants that Lessee shall quietly possess each vehicle under lease hereunder throughout the entire term of such lease notwithstanding any such assignment by ARI, subject to and in accordance with this Agreement, as long as Lessee is not in default under this Agreement.

8.4    In the event of any conflict with any individual Motor Vehicle Lease Agreement executed pursuant to Article 3.3 hereof and this Article 8, the terms of this Article 8 shall prevail.

## ARTICLE 9
### Vehicle Replacement

9.1    Lessee may at any time after the Initial Lease Term described in Article 3.1, terminate a lease with respect to any given vehicle and retire such vehicle from service without replacement by giving ARI written notice to that effect and identifying the vehicle which will be retired and when and where it shall be surrendered to ARI. The lease as to such vehicle shall terminate upon the surrender to ARI of such vehicle.

- 3 -

**9.2**    Upon expiration or termination of the lease with respect to any leased vehicle prior to the expiration of the Depreciation Period, Lessee shall pay to ARI, or if so directed by ARI in writing, to the appropriate Assignee, the Depreciated Value, as defined in Article 12.3.

## ARTICLE 10
### Surrender Upon Retirement

**10.1**    Upon the expiration or termination of the lease for any vehicle leased hereunder, Lessee shall surrender possession of the retired vehicle to ARI at a point agreeable to both parties. At the time of such surrender, ARI and Lessee, or their authorized representatives, shall execute a Used Vehicle Return Receipt and Statement of Condition form, in the form attached hereto and marked Exhibit G.

## ARTICLE 11
### Lease Termination Fee

**11.1**    Lessee shall not be obligated or liable to pay to ARI or any Assignee any lease termination fee or any other such fee, charge or penalty for the termination of any vehicle lease after the expiration of the Initial Lease Term.

## ARTICLE 12
### Disposition After Surrender of Leased Vehicle

**12.1**    **Disposition.** Upon the termination or expiration of the lease for each vehicle leased hereunder, ARI shall use its best efforts to sell the vehicle covered by such lease after possession thereof shall have been surrendered by Lessee at the highest possible price and in the most economical fashion then available, consistent with efforts to obtain the highest possible price ("Fair Market Value"). ARI's efforts shall include, but not be limited to, offering to sell such vehicles to Lessee or to Lessee's employees. Upon sale of a leased vehicle, ARI shall retain out of the sale price any costs which it may have incurred in transportation of the vehicle, fees paid, and repairs or replacements necessary to merchandise the vehicle, to arrive at the "Net Resale Proceeds."

**12.2**    **Rental Adjustment.** With respect to any vehicle sold or otherwise disposed of pursuant to Article 12.1,

        a.    if the amount of the Net Resale Proceeds is greater than the Depreciated Value, then ARI shall remit the amount of such excess to Lessee, or

        b.    if the amount of the Net Resale Proceeds is less than the Depreciated Value, then Lessee shall remit the amount of the deficiency to ARI.

**12.3**    **Depreciated Value.** The Depreciated Value of each vehicle shall be the Capitalized Value of such vehicle less the Total Depreciation Reserve paid by Lessee. The "Total Depreciation Reserve" for each vehicle shall be the sum derived by multiplying (a) the number of months for which the monthly rental fee was paid by Lessee pursuant to Article 5, by (b) the Capitalized Value of such vehicle, by (c) the monthly depreciation percentage shown on Exhibit B, for the Depreciation Period applicable to such vehicle.

## ARTICLE 13
### Use of Leased Vehicles

**13.1**    Lessee may use any vehicle leased hereunder at any and all times for any and all legal purposes. Title to each vehicle leased hereunder shall remain in ARI, but ARI shall have no control or supervision of the operation of any vehicle leased hereunder. Nothing herein contained shall authorize Lessee or any person to operate or otherwise use any vehicle contrary to law or to incur any liability or obligation on behalf of ARI. Lessee may also allow any vehicle leased hereunder to be used in accordance with the foregoing manner by any entity affiliated with Lessee, regardless of where such entity may be located.

crlari93.021594

## ARTICLE 14
### Registration

14.1    ARI shall register, and renew the registration for, each leased vehicle in the following manner, annually or as otherwise required:

   a.    ARI shall correspond directly with each state and Puerto Rico and pay any and all fees associated with the registration or registration renewal of each vehicle.  Upon receipt of the registration or renewed registration, ARI shall send all registration documentation to the recipient designated by Lessee.

   b.    Lessee or Lessee's driver(s) shall be responsible for supplying ARI with a copy of each vehicle's current registration, except for vehicles registered in the state of Kentucky for which Lessee shall provide ARI with the original registration documents.  Lessee shall also provide  ARI with the original cards evidencing insurance coverage for all vehicles registered in the states of Arkansas, Connecticut, Kentucky, Nebraska, and Nevada.  ARI shall assist Lessee in gathering registration and insurance documentation upon direction from Lessee.

   c.    Prior to the time required for renewal of a registration, Lessee shall be responsible for supplying ARI with any inspection reports, tax receipts and/or registration certificates necessary to complete the renewal.  ARI shall provide Lessee with reports listing those vehicles with incomplete or missing registration renewal documents.

   d.    ARI shall also provide for the re-titling of a vehicle if it is transferred to a different state.

   e.    ARI assumes no responsibility under this registration renewal program except to use normal business efforts to render the services called for hereunder in a manner reasonably satisfactory to Lessee, and ARI shall not be liable or held accountable for mistakes of fact or law or for any loss or damage to Lessee arising or resulting therefrom or otherwise from its acts or omissions, except when such is due to its negligence or willful misconduct.

   f.    The effective date of ARI's responsibility to provide for the annual registration renewal of each vehicle enrolled in the renewal management program described in this Article 14 shall be immediately after the date this Agreement is signed by ARI.

   g.    ARI shall invoice Lessee for all fees and charges associated with each vehicle's annual registration renewal and re-titling expenses on the monthly rental fee invoice.

   h.    ARI is unable to provide this annual registration renewal service in the states of Hawaii, Delaware, Maine and New Hampshire and in Mexico.  For these states, ARI shall deliver to Lessee, not later than sixty (60) days prior to the expiration of the first and any subsequent registration periods, documents which may be necessary for Lessee to obtain a new registration, state license tags, a certificate of title and similar permits required for the lawful operation of a vehicle.  The certificates and permits shall indicate that ownership of said vehicle is in ARI.  When obtained, such certificates and permits, unless required to be carried in the Vehicle, shall be sent by Lessee to ARI.  Lessee shall notify ARI if documents to obtain a new registration, state license tags, a certificate of title and similar permits for the authorized operation of the vehicle are not received by Lessee or Lessee's representative thirty (30) days prior to the expiration of same.

## ARTICLE 15
### Responsibility for Maintenance

15.1    ARI shall have no responsibility for the maintenance and upkeep of any vehicle leased hereunder after it is delivered to and accepted by Lessee and until such time as Lessee surrenders possession of any such vehicle to ARI as provided in Article 10 herein; during such time, Lessee shall maintain, service and keep in good repair each vehicle at its own expense.

crlari93.021594

## ARTICLE 16
### Damage or Destruction of Leased Vehicles

16.1    **Responsibility for Repairs.** In the event a leased vehicle is damaged, its repair shall be the responsibility and obligation of Lessee in every such instance, unless such damage was caused by, or is attributable to, ARI.

16.2    **Termination of a Lease Due to Damage or Destruction.** In the event a leased vehicle is damaged or destroyed to such extent that it makes it undesirable to continue its use, Lessee may terminate the lease with respect to such vehicle pursuant to Article 9 herein, and ARI shall dispose of said vehicle pursuant to Article 12 herein. Any such damage or destruction shall obviate any obligation on the part of Lessee to lease the affected vehicle for the remainder of the Initial Lease Terms applicable thereto.

16.3    **Lost or Stolen Leased Vehicles.** In the event a leased vehicle is lost or stolen, Lessee shall terminate the lease with respect to such vehicle pursuant to Article 9 herein, and, upon receipt of payment of the Depreciated Value from Lessee, ARI shall forward to Lessee all documents required to transfer ownership of said vehicle as directed by Lessee.

## ARTICLE 17
### Insurance

17.1    Lessee will carry for the benefit of Lessee, Lessee's employees and others who operate the vehicle with the permission of Lessee, and pay the cost thereof, insurance against liability for bodily injury in a minimum single limit of $1,000,000, and against liability for property damage in a minimum limit of $100,000. Lessee will furnish written evidence of said insurance and ARI shall be named as an additional insured with respect to Lessee's indemnification obligations under Article 18.1. Lessee shall bear all risk of loss or damage to each leased vehicle and the contents thereof.

17.2    If for any reason Lessee shall fail to obtain and maintain in effect such insurance, ARI, at its sole option, but only after prior written notice to Lessee, may: (a) provide same and upon demand shall be reimbursed by Lessee the actual cost thereof, plus 10% of said cost to defray administrative expense; or, (b) terminate the lease of any or all vehicles leased hereunder, effective immediately at any time by giving written notice of termination to Lessee.

## ARTICLE 18
### Indemnification

18.1    **General Indemnification by Lessee.** Lessee shall indemnify and hold harmless ARI and ARI's agents and employees against all loss or liability relating to bodily injury, including death, and/or damage to tangible property (including costs and reasonable attorney's fees) arising out of or connected with Lessee's willful misconduct or negligent use or operation of any leased vehicle during Lessee's possession thereof. Lessee will take upon itself the settlement of all such claims and the defense of any suit or suits, or legal proceedings of any kind brought to enforce any such claim or claims, and the payment of all judgments entered in any such suit or suits, whether or not ARI is a party-defendant thereto.

18.2    **General Indemnification by ARI.** ARI shall indemnify and save harmless Lessee, Lessee's agents and employees against all loss or liability relating to bodily injury, including death, and/or damage to tangible property (including costs and reasonable attorneys fees) arising out of or connected with the negligence or willful misconduct of ARI or its employees. ARI will take upon itself the settlement of all such claims and defense of any suit or suits, or legal proceedings of any kind brought to enforce any such claim or claims, and the payment of all judgments entered in any such suit or suits, whether or not Lessee is a party-defendant thereto.

18.3    **Statement of Odometer Warranty and Indemnification.** Unless otherwise indicated on the Used Vehicle Return Receipt, Lessee warrants to the best of its knowledge to ARI that the mileage indicated on the odometer of any vehicle returned to ARI is the true and actual reading and that no tampering with said odometer has taken place while such vehicle was operated by Lessee or any agent of Lessee. Lessee shall indemnify and save ARI harmless from any and all liability, loss, damage, expense, causes of action, suits, claims or judgments solely arising from breach of the warranty herein before stated in this Article 18.3 and shall at its own cost and expense, defend any and all suits which may be brought against ARI, either alone or in conjunction with others, upon any such liability or

- 6 -

claim or claims and shall satisfy, pay and discharge any and all judgments and fines that may be recovered against ARI, provided however, that ARI shall give Lessee written notice of any such claim or demand within (30) days from receipt thereof.

## ARTICLE 19
### No Warranties by ARI

19.1    AS TO ANY VEHICLE LEASED HEREUNDER, EXCEPT AS PROVIDED IN ARTICLE 22, ARI HEREBY DISCLAIMS ALL WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE USE, CONDITION, OPERATION AND POSSESSION OF ANY VEHICLE. LESSEE SHALL NOT BE ENTITLED TO RECOVER FROM ARI ANY CONSEQUENTIAL DAMAGES, DAMAGES FOR LOSS OF USE, LOSS OF PROFITS OR INCOME, OR ANY OTHER CONSEQUENTIAL DAMAGES.

## ARTICLE 20
### Default

20.1    In the event Lessee shall default in any payments due ARI, or in performance of any material covenant under this Agreement, and such material default is not a result of ARI's act or omission and ARI notifies Lessee of such default and it thereafter remains uncorrected for thirty (30) days, ARI may pursue any remedies it may have under this Agreement including taking possession of any or all vehicles leased hereunder which are affected by such default and the demand for payment of all sums due ARI. ARI agrees that it shall exercise reasonable effort in its pursuit of any remedies afforded it in the event of Lessee default so as not to disturb Lessee's full right of possession and enjoyment of the leased vehicles.

20.2    Unless expressly provided for in another Article of this Agreement, in the event of a non-monetary default by Lessee, ARI shall notify Lessee of such default in writing and Lessee shall be granted a reasonable period of time to cure such event of default and ARI agrees not to exercise any remedy afforded it during such cure period. No remedy pursued under this Article shall be deemed an act of termination of the Agreement.

## ARTICLE 21
### Bankruptcy

21.1    Upon notice to Lessee, ARI may terminate this Agreement, if in either a state or federal court, a receiver is appointed for the Lessee, or if a petition in bankruptcy or for reorganization shall be filed by or against the Lessee; or if Lessee shall fail to give immediate notice to ARI of any distress or levy or execution purported to be made or laid against the property hereby leased or any part of it, ARI may take possession of any or all vehicles leased hereunder and may cancel any unfilled vehicle orders.

## ARTICLE 22
### ARI's Warranty

22.1    As to each vehicle leased hereunder, ARI warrants that it is the sole and absolute owner thereof, that it has the right to lease each such vehicle to Lessee, that each such vehicle is free of all encumbrances at time of delivery to Lessee (other than the interest of an Assignee pursuant to Article 8), that ARI will not cause any such vehicle to become subject to any lien or encumbrance, that it will not sell, assign, lease or otherwise dispose of any such vehicle except as provided in Article 8 and 12 hereof, and that it will do nothing to disturb Lessee's full right of possession and enjoyment of any such vehicle and the exercise of all of Lessee's rights with respects thereto, as provided by this Agreement. Upon delivery of each leased vehicle to Lessee, ARI shall assign to Lessee all of its rights under any warranty obtained by ARI from the manufacturer and/or dealer.

crlari93.021594

## ARTICLE 23
### Evidence Of Lessee's Interest

23.1    In order that Lessee's rights hereunder may be made a matter of public notice or record, at any time during the lease of a vehicle hereunder, Lessee shall have the right to file a copy of this Agreement, together with a statement of payments thereunder, with such officials or in such offices in the state in which the vehicle is registered or maintained as may be provided by the laws thereof with respect to the registration or filing of liens and encumbrances or other title retention instruments on vehicles or other chattels. ARI will, at Lessee's written request and at Lessee's expense, execute any instrument or instruments necessary, proper or convenient for this purpose.

## ARTICLE 24
### Assignment

24.1    Neither party hereto shall, except as permitted herein, assign or sublease any rights under this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed.

## ARTICLE 25
### Cancellation

25.1    This Agreement shall remain in effect for a period of one year from the date hereof and thereafter until canceled by either party upon sixty (60) days written notice to the other party. The termination of this Agreement shall not affect any vehicles under lease pursuant hereto at the time of such termination; all such vehicles shall remain subject to the terms hereof and ARI and Lessee shall have the mutual rights and obligations provided for herein as to such vehicles.

## ARTICLE 26
### Statement of Ownership

26.1    Lessee shall notify ARI, of any change in name, ownership or control of Lessee.

## ARTICLE 27
### Agreement Binding

27.1    Binding. This Agreement, together with Exhibits attached hereto constitute and shall constitute the full, complete, absolute and entire Agreement between ARI and Lessee. There are no oral agreements or understandings affecting this instrument. Any future agreements, understandings or waivers, to be binding upon the parties hereto must be reduced to writing and attached hereto and ARI's or Lessee's failure to enforce any provision of this Agreement shall not be construed as a waiver thereof or as excusing Lessee or ARI respectively from future performance.

27.2    State Law. This Agreement shall be governed by and shall be construed according to the laws of the State of New Jersey.

## ARTICLE 28
### Administrative Fees

28.1    In consideration for the services to be performed under this Agreement, Lessee shall pay ARI an administrative fee for each vehicle leased hereunder, as stated in Exhibit B.

## ARTICLE 29
### Truth in Mileage Act of 1986

29.1    In accordance with ARI's obligation under the Truth in Mileage Act of 1986, Lessee acknowledges receipt of notice from ARI regarding Lessee's obligation under the Truth in Mileage Act to certify in writing the mileage on a leased vehicle returned to ARI by Lessee which is to be subsequently sold to another party.

- 8 -

crlari93.021594

## ARTICLE 30
### Fleet Management Services Agreement

30.1    The provisions of the Fleet Management Services Agreement in Exhibit D are hereby incorporated by reference as if written out herein in full.

## ARTICLE 31
### TRAC Certification

31.1    Lessee shall, upon ARI's request therefor, execute and deliver to ARI, a copy of the TRAC Certification, an exemplar copy of which is attached as Exhibit E.

## ARTICLE 32
### Vehicles Leased in Mexico

32.1.    ARI may subcontract any or all of its obligations hereunder to its wholly-owned subsidiary, ARI Fleet Services S.A. de C. V., a Mexican corporation with its principal place of business at _____
_____ ("ARIF"), with respect to any vehicles which may be delivered in Mexico for lease to Lessee or any parent, subsidiary of affiliate of Lessee, provided that Lessor remains liable for the completed and proper performance of each and every obligation subcontracted to ARIF. Notwithstanding the foregoing, ARIF may hold title to any such vehicles. The Capitalized Value for such vehicles shall be established pursuant to Article 2.1.

32.2    The rental fees for any vehicles delivered in Mexico for lease pursuant to Article 32.1 shall be specified in Mexican currency. Lessee, at its option, may pay the rental fees for any vehicles delivered in Mexico for lease pursuant to Article 32.1 in U.S. Dollars, and if the rental rates for such vehicles are specified in Mexican currency, the rate of exchange shall be that specified in The Wall Street Journal for the date on which payment of the applicable monthly rental fee is due.

IN WITNESS WHEREOF, ARI and Lessee have caused these presents to be duly executed, in triplicate, as of the day and year first written above.

NORTHERN TELECOM INC.                    AUTOMOTIVE RENTALS, INC.

By: _Thomas E. Allen_                    By: _M. F. Laporta_

Name: _THOMAS E. ALLEN_                  Name: _M. F. LAPORTA_

Title: _DIRECTOR · PURCHASING SERVICES_  Title: _Pres._

Date: _April 20, 1994_                   Date: _4-12-94_

_BAB 4/14/94_
_RDB 4/14/94_
_EN 4/15/94_

- 9 -

crlari93.021594

## EXHIBIT B

For each leased vehicle the monthly rental fee, during its Depreciation Period, shall be computed by multiplying the vehicle's Capitalized Value by the applicable percentage shown hereinbelow. The monthly rental fee shall also include the addition of interest which shall be calculated for each calendar month on the basis of a 360 day year for the actual number of days elapsed from the effective date of the lease for such vehicle at _____*_____ basis points (i.e. _____*_____ percent) per annum in excess of 1) for all vehicles except for vehicles leased in Mexico, the interest rate quoted by Societe Generale (Bank) as its cost of thirty (30) day funds based upon the London Interbank Offered Rate (LIBOR) adjusted for reserve requirements of the Federal Reserve Bank in New York on the twenty-fifth (25) day of the month immediately preceding such month or 2) for vehicles leased in Mexico, an interest rate as agreed upon between ARI and Lessee. For medium and heavy duty trucks, the applicable percentage used to calculate the monthly rental fee shall be agreed upon by ARI and Lessee. The interest rate shall be adjusted each month and such adjustment(s) shall be effective on the first day of the month being billed. The interest shall be based on the Depreciated Value of each leased vehicle at the end of the month prior to the month being billed.

Example:

* 12.5 basis points (i.e., 1/8 Percent for Factory Ordered Vehicles)

or

100 basis points (i.e., 1 Percent for Stock Purchased Vehicles)

| | |
|---|---|
| Depreciation Period: | Months 1 - 50 |
| Depreciation Rate: | 2% |
| Administrative Fee: | $7.50 Per Leased Vehicle per Month for all vehicles except those leased in Mexico |
| | An amount to be agreed upon between ARI and Lessee for vehicles leased in Mexico |

crlari93.021594

**EXHIBIT C**

January 15, 1993

Northern Telecom Inc.
Northern Telecom Plaza
200 Athens Way
Nashville, Tennessee 37228-1397

Subject:     Truth in Mileage Act of 1986

Sir/Madam,

The National Highway Traffic Safety Administration (NHTSA) has recently issued regulations for the Truth in Mileage Act of 1986, which require that we notify our lessees that they are legally required to certify, in writing, the mileage on a vehicle leased at the time possession of such vehicle is surrendered to us upon the expiration or termination of the Lease. The regulations provide that failure to make this disclosure (or the making of a false statement) may result in fines and/or imprisonment.

ARI has chosen to use existing forms to permit our lessees to easily comply with the disclosure requirement. When a vehicle is being replaced, the New Vehicle Order Form for the replacement unit will serve as the certification document, unless the new vehicle is ordered electronically via ARI Access. Such vehicles ordered via ARI Access need to be certified on either the Used Vehicle Termination Report, the Used Vehicle Condition Report, or (on replacement vehicles) the New Vehicle Delivery Receipt. NHTSA specifically requires an individual's signature for the certification, but has also stated that a lessee's driver can sign the certification (Drivers would be the only parties usually signing the Delivery Receipt or the Condition Report). We have chosen to provide certification language on all four documents to give our customers the greatest flexibility in complying with this new regulation. However, only one certification is required by law.

This letter shall serve as ARI's compliance with the requirement to notify our lessees of this Federal Regulation. The effective date for lessee compliance is April 29, 1989.

crlari93.021594

Exhibit E

[FORM OF]
TRAC CERTIFICATION

**CERTIFICATION RELATING TO "MOTOR VEHICLES OPERATING LEASES" UNDER SECTION 7701 (h) OF THE INTERNAL REVENUE CODE**

**COMPANY:**     Northern Telecom Inc.

**ADDRESS:**     200 Athens Way

Nashville, Tennessee  37228-1397

**FEDERAL IDENTIFICATION NUMBER**

The undersigned, _____, acting in the capacity of _____ of Northern Telecom Inc., (Herein the "Corporation") does hereby certify under penalties of perjury:

1.     That the Corporation intends that the motor vehicles leased from Automotive Rentals, Inc. (herein, the "Lessor"), under any lease agreement executed on or after August 28th, 1987, to which Section 7701(h) of the Internal Revenue Code of 1986 as amended applies, will be used more than fifty percent (50%) in the trade of business of the Corporation, and

2.     That the Corporation has been advised that it will not be treated as the owner of the property subject to the agreements for Federal Income Tax purposes.

NORTHERN TELECOM INC.

By: _____

Name: _____

Title: _____

Date: _____

crlari93.021594

Exhibit I

**[FORM OF WRITING FROM ARI DIRECTING LESSEE TO MAKE PAYMENTS TO AN ASSIGNEE]**
**[TO APPEAR ON ARI'S LETTERHEAD]**

[Date]

Northern Telecom Inc.
Northern Telecom Plaza
200 Athens Way
Nashville, Tennessee 37228-1397

Subject:    Vehicle Lease Agreement dated January 15, 1993 between Northern Telecom Inc. and Automotive Rentals, Inc.

Dear Sir/Madam:

Under the terms of the above-mentioned Agreement, we are requesting that rental payments be made to CoreStates Bank, N.A., and mailed to:

        CoreStates Bank, N.A.
        P.O. Box 8500-4375
        Philadelphia, PA 19178-4375

CoresStates Bank has been designated by Automotive Rentals, Inc. as Assignee under the terms of the January 15, 1993 Vehicle Lease Agreement between Automotive Rentals, Inc. and Northern Telecom Inc.

Our rental billings will show the above mailing address.

Please acknowledge by signing in the space provided below; returning two copies for our files.

Very truly yours,


M. F. Laporta
President


Enclosures

The undersigned acknowledges receipt of the foregoing direction and agrees to make the payments referred to above to CoreStates Bank, N.A. at the address referred to above unless otherwise notified by CoreStates Bank, N.A.

By:_____

Title:_____

Date:_____


crlari93.021594