Robert Horne
10015 High Falls Pointe
Alpharetta, GA 30022
404-374-5277

January 10, 2011

Clerk of the Court,
United States Bankruptcy Court for District of Delaware,
824 Market Street, 3rd Floor,
Wilmington, Delaware 19801

Copies to:

Cleary Gottlieb Steen & Hamilton LLP   Attn: James Bromley
One Liberty Plaza,
New York, New York 10006

Morris Nichols Arsht & Tunnel LLP    Attn: Derek C Abbott
1201 North Market St,
PO Box 1347
Wilmington, Delaware 19801

### Case No. 09-101138 (KG)
### Nortel Networks Inc (NNI) et al

Dear Sir or Madam,

I have received a document, labeled Docket 4638 in the Epiq files, dated 12-22-10 from the United States Bankruptcy Court, with a focus on the Nortel Networks US Deferred Compensation Plan. I wish to file an Objection to the filing, and in particular to the Motion and Stipulation, as received, and to ask for immediate payment of money outstanding under Claim 3486, filed 9-23-2009.

### A. Introduction

Before I state my Objections, I would like to comment on the way that this particular filing, 4638, has occurred;

1. The filing was done on Wednesday, December 22, 2010. It can be argued that the choice of this date increased the risk of the mail being lost or misplaced over the Holiday Season. Certainly, the number of working days until the deadline for filing Objections, January 21, 2011 is seriously impacted. In addition, the recent weather in several parts of the country can have had a serious impact on the ability for respondents to meet the January 21, 2011 deadline.

1

Any response that this is a regular way to send out proposed filings must be viewed in the light of several other documents that Nortel has sent out in the last few days, together with some associated actions:

> a. There was an article in the Wall Street Journal on Thursday, December 23, 2010 headlined, "Nortel Moves to Retrieve Retirement Savings", by author Peg Brickley (copy attached). It is clear, from the number of quotations in the article, that there was a positioning program which enabled the article writer, Peg Brickley, to meet the publication deadlines within a few hours of the filing. Some of that positioning will be addressed below
>
> b. A letter dated December 15, 2010 was sent to participants in the Deferred Compensation Plan telling us that the contract with Mullin TBG, who manage the records of the Deferred Compensation, will be terminated and that any questions should be referred to HR Services. I called HR Services on Monday, January 3, 2011. It was clear that the person I spoke to had no knowledge of any changes to the Deferred Compensation Plan – and was surprised when I quoted the letter referring me to HR Services. I also read her some extracts from Docket 4638 and the Wall Street Journal. I asked the lady at HR Shared Services to talk to her management and for somebody to call me to answer some questions that I had. As of this date I have had no response.
>
> c. I also called Mullin TBG on January 3, 2011. Let me say that in the ten years since Mullin TBG started issuing me monthly checks and financial statements, their performance has been excellent on all fronts – politeness, promptness and accuracy. However, it is clear that an instruction has been issued to answer only questions about account balances and to refer all other enquiries to HR Services. Naturally, the person I talked to was surprised and concerned when I told her that I had just spoken to HR Services and had been told that they knew nothing about the situation.

In summary, it appears that we are looking at a program to get proposed Motions to the Court with a coordinated campaign to make it difficult for the impacted people to respond appropriately.

2. The Wall Street Journal article opening sentence states "Nortel Networks Corp moved Wednesday to seize $37.9 million in retirement savings socked away over 10 years by some of its top US executives". It continues "Nortel named no names in Wednesday's court filing but did say that the money was put away by "a select group of management and highly compensated employees in the US". A quick examination of the data shows that this is an inappropriate representation. For instance, there

were 325 individuals who received the Docket 4638 (as shown in Docket 4649, filed 12/27/10). A simple division of the $37.9 million by 325 individuals gives $116,662 per person. Given that this savings per person was generated over several years, it is a long way from the association with Wall Street bonuses, that a representative of the Debtors was obviously trying to project.

Furthermore, an examination of the 325 names generates very few people who can be designated as executives. For instance, the SEC Form 10-K filed in 2009 for the year ending December 31, 2008, identifies, on pages 204 and 231, 17 Executive Officers and gives details of their positions with Nortel. 16 of these executive officers do not appear on the list of 325 people who received Docket 4638. Only one of these Executive Officers is on the list of 325 – and that person left the Executive Officer list on January 1, 2009 -- and his filed Claim for $46,916 in Deferred Compensation should be compared with his total compensation as listed in the Form 10-K received during 2008 of $2,451,783. It appears form the records that this Deferred Compensation may have been from a year before 2008.

Of the 325 people on the list who received Docket 4638, I can only identify one person who I would recognize as a senior executive while I was working at Nortel – and that person has no Claim filed on Epiq. Thus the list of 325 people looks to be badly mis-represented – and possibly poorly chosen.

Taking this review one step further, there is clear documentation, starting from the Company's annual report, and publicized in newspapers and on main channel TV, that one senior executive, probably recognizing that bankruptcy was imminent, took his savings of $1.7 million out of a deferred compensation plan a few days before the formal declaration of bankruptcy in January 2009. There are also other people, perhaps associated with this executive, who are known to have taken their total Deferred Compensation out in the weeks immediately prior to the bankruptcy filing in January 2009.

By comparison, many of the recipients under the Deferred Compensation Plan are retirees who did not have Executive positions, and who, because of their status as retirees, are locked in to a continuation of their payment, even to their heirs should they become deceased.

In the Wall Street Journal article it gives reference to the case of New Century Financial Corporation, where less sophisticated employees were encouraged to participate. I have reviewed the list of 325 people who received Docket 4638 and their Claims. It is clear that not only is only one of the 17 Executive Officers mentioned in he Form 10-K listed --and he

3

has a very small portion of his compensation involved. And there is only one person that I recognize as a senior executive – and he has no Claim in Epiq. It is also clear that several of the participants, who I do know, do not fit any reasonable definition of "management and highly compensated employees".

### B. Grounds for Objection

There appear to be several reasons to request, in this Objection, that the Court reject the Motion and Stipulation as provided in Docket 4638.

1. My formal Retirement Date was December 27, 2000, at which time I was age 62 years and 5 months. The decisions about the Deferred Compensation were made some time before my last day at work, because I was moving into retirement. My deferrals for several years before 2000 were collected together and put into the Trust, and monthly payments started immediately on retirement. The written representations that I have in my possession were that the money had been put aside in a Trust and that it would be paid out in 180 consecutive monthly payments. There was no communication that my Deferred Compensation could by clawed back. I elected to have the funds invested in a fixed income structure, and so the monthly payments for eight years until January 1999, have been essentially constant, with very small increases due to the addition of interest earned. The amount of my monthly check has been less than that which I receive from Social Security, and thus in no way can be regarded as an egregious payout. However, it has been a welcome part of my monthly income.

   I have reviewed all my documentation, and I can find no reference to the possibility of the money being recovered from the Trust, even in the event of bankruptcy. All written and verbal communications assured me that the money would be put into the Trust and released from there on a monthly basis. The analogy was at all times to a similarity with the 401K program, which, I am glad to say, has not been impacted by Nortel's bankruptcy, because it is placed in a Trust that cannot be reached by Debtors. The purpose of the Deferred Compensation program, as presented before my retirement in 2000, was the same as for the 401K – to provide retirement income in a very secure manner.

   Furthermore, I can find no documents distributed to me after December 27, 2000 which change the conditions under which the Trust could be clawed back in the event of bankruptcy – and this is probably because it was not considered necessary to inform me of changes to the Plan, as any changes could not apply to me. I have enquired of other people who

are on the Deferred Compensation Plan to see if they received any documentation or verbal information about a possible claw back. The earliest such reference that anybody has found was dated 2001. As this was after I retired and my money was locked up in the Trust, I submit that it should not be possible for any Debtors group to claw back money from a Trust into which the money was placed before the rules were changed.

In the last two weeks, since receiving Docket 4638, I have reviewed a lot of publically available documentation, including the Facts Relative to the Motion, as supplied in Docket 4638. It is clear that there were a large number of changes going on in 2000. There is no indication that the consequences of these changes were communicated to the employees involved in the Deferred Compensation Plan before some time in 2001. It therefore appears appropriate to consider those employees who retired before the December 31, 2000 as a separate group, who were not informed of the Rabbi agreement or any other way that the money put into Trust could be re-claimed. This is my first argument for rejecting the Motion and Stipulation.

2. A review of the list of 325 people who received Docket 4625, does not represent a "select group of management and highly paid employees". There is only one person of the seventeen who are listed as Executive Officers in the Form 10-K for 2008, and his participation is a very small part of his 2008 compensation. Furthermore several of the Claims (which have documentation supporting them so they cannot be considered as in error) are for smaller amounts of money and were from people who did not have a title of Vice-President – which at Band 10 could not be considered a senior position.

3. The people who have retired are locked into the payout structure that they elected before retirement. The ability for the Nortel to unilaterally claw back the money would appear un-reasonable. That makes it an unbalanced contract, which should be declared non-valid once a person has retired, and provides further grounds for rejecting the Motion and Stipulation.

4. It would seem reasonable to me to protect money which was put aside into a Trust, and distribution stated eight years before the bankruptcy filing. While I am not a lawyer, and so have little ability to research any possibility of a statute of limitations, it would seem to me likely that there is a case history of such protection. The intent was clear at the time of my retirement, and it appears wrong that there should be a claw back so long after payments started. If there is any such prior case record, this would be further grounds for rejection of the Motion and Stipulation.

5. During my very recent research of documents provided by other ex Nortel employees I have found reference to the fact that the responsibility for maintaining the Deferred Compensation Plan had been passed to Nortel Networks Corporation (NNC). Reference to Nortel Networks Corporation (NNC) is recorded on the Epiq website, on the leading page for Nortel, under the General Information heading. This states that Nortel Networks Corporation filed for bankruptcy under the Ontario Superior Court of Justice. This means that it is inappropriate for Nortel Networks Inc to request the transfer to NNI of funds held in Trust. The Trust is, or for some time has been, in the jurisdiction of NNC, and not NNI, and hence outside the Case No.09-10138 (KG) being considered by the United States Bankruptcy Court for the District of Delaware. This by itself is grounds for immediate rejection of the Motion and Stipulation until the matter has been resolved.

6. The SEC filings for the year 2009 show that Nortel made a profit of $488 million on revenue of $4.1 billion in 2009, and that the cash and short term investments exceeded $2 billion. The Wall Street Journal article of December 23, 2010 states that Nortel has now amassed nearly $5 billion in cash, much of it from the sale of operating units – and there is a prospect of raising significant more cash from the sale of intellectual property. The article also reports that Nortel has filed an estimate of $5.7 billion in debts to resolve. Thus, it can be argued that Nortel may well be in a position to emerge from Chapter 11, and that money put into Trust for Retirees should not be co-mingled with all the general assets, but should be retained in the Trust with US Bank National Association until correct consideration has been given to its distribution.

However, Docket 4638 makes a reference in Section C28 that Bankruptcy Rule 9019 provides that "the court may approve a compromise or settlement". Under this authority, the Third Circuit has emphasized that compromises and settlements are favored in bankruptcy. Furthermore, the District of Delaware has recognized "the consensual resolution of claims minimizes litigation and expedites the administration of the bankruptcy estate". The approval of a proposed compromise and settlement falls within the sound discretion of bankruptcy court. Furthermore, the Third Circuit has held that settlements typically reduce the "complexity and inconvenience of litigation". In view of the complexities associated with the Deferred Compensation Plan, and that the $37.9 million in Trust, is a very small portion of the assets and debt being considered (less than 1%), it appears logical to reject the Motion and Stipulation, and encourage a "compromise and settlement".

In the light of these grounds for rejection of the Motion and Stipulation, it is recommended that:

## C. Recommendations for Action

1. That the Motion and Stipulation are rejected.
2. That the Debtors are encouraged to find a "compromise and settlement" – with the reminder that the $34.9 million in Trust represents less than 1% of the total assets in review, and there are several legal issues that need to be resolved, that could be handled through a "compromise and settlement".
3. That the Trustee, in conjunction with Mullin TBG, be instructed to distribute, in full, the validated Deferred Compensation Plan claims of any person who retired before December 31, 2000
4. That the Trustee, in conjunction with Mullin TBG, be instructed to present a plan to the Court, for the payment of the assets held in Trust to all the other people who are involved in the Deferred Compensation Plan who submitted valid Claims.
5. A Citizen Committee of participants in the Deferred Compensation Plan be appointed to monitor the activities recommended above.

I am available at the above address and telephone number to provide further information on request.

Yours sincerely,


Robert Horne

THE WALL STREET JOURNAL. Digital Network | WSJ.com | MarketWatch | BARRON'S | AllThingsDigital | FINS | SmartMoney | More ▼

SEARCH

GET 2 WEEKS
SUBSCRIBE NOW!
▶ THE PRINT JOURNAL
▶ THE ONLINE JOURNAL

THE WALL STREET JOURNAL. TECH

Today's Paper • Video • Blogs • Journal Community

World ▼ | U.S. ▼ | New York ▼ | Business ▼ | Markets ▼ | Tech ▼ | Personal Finance ▼ | Life & Culture ▼ | Opinion ▼ | Careers ▼ | Real Estate ▼ | Small Business ▼

Digits   Personal Technology   What They Know   All Things Digital

TOP STORIES IN Technology | Chips Makers Aim Beyond Computers | AT&T Pins 4G Label on Existing Network | The New Gadgets for 2011 | Facebook Goldman

TECHNOLOGY | DECEMBER 23, 2010, 2:43 P.M. ET

# Nortel Moves to Retrieve Retirement Savings

MORE IN TECH »

Article | Comments (4)

Email | Print | Save This | Like | + More | Text

By PEG BRICKLEY

Nortel Networks Corp. moved Wednesday to seize $37.9 million in retirement savings socked away over 10 years by some of its top U.S. executives.

The Canadian telecommunications-equipment maker says the money is in a deferred-compensation plan that participants understood was a "risky undertaking," because terms allow Nortel to take the retirement savings if it ran into trouble.

The filing with the U.S. Bankruptcy Court in Wilmington, Del., is couched as a stipulation with the bank that holds the deferred pay and bonuses in a trust account. Once a judge signs off on the settlement, Nortel's papers say, the money executives put away in the trust becomes company property. Nortel named no names in Wednesday's court filing but said the money was put away by "a select group of management and highly compensated employees" in the U.S.

According to the company, the deferred-compensation plan it created in 2000 is a "rabbi trust," which falls outside the protection of U.S. pension laws. Executives were offered an opportunity to delay taking up to 80% of their base salary, and up to 95% of commissions and bonuses, by putting the money in the trust.

The expectation was that they would draw on their earnings after retirement, when tax rates were lower. Nortel says the deal included an understanding that in the event of bankruptcy, the participating executives would get in line with other unsecured creditors to await payment under a Chapter 11 plan.

The fate of deferred-compensation programs in Chapter 11 often depends on how the programs were actually administered. Because they expose earned employee pay to creditors, such programs are supposed to be limited to top executives who presumably have access to professional advice about the risk of participating.

Not all companies might play by the rules, though. Failed subprime mortgage lender New Century Financial Corp., for example, allegedly made its deferred-compensation program widely available and encouraged less sophisticated employees to participate.

Unlike Nortel, which has raised billions in the sale of its operating businesses, New Century had little left after the housing market collapse. Employee retirement savings were a major piece of the cash the company hoped to dish out under its Chapter 11 plan.

New Century's Chapter 11 plan was approved over the protests of participants in the deferred-compensation program. The confirmation ruling was later reversed. New Century finally settled with program participants to be able to implement its Chapter 11 plan.

Payments to retired executives ceased when Nortel filed for insolvency protection around the world in 2009. The company has amassed nearly $5 billion in cash, much of it from sales of operating units. A patent portfolio valued at an estimated $1 billion remains to be sold.

PREVENT COLLEGE FAIL

Get inside info about choosing the right school, getting accepted, and preventing common mistakes at WSJ.unigo.com

GO NOW

WSJ ON CAMPUS | unigo
THE WALL STREET JOURNAL

**Most Popular in Tech**

Google Wins One Against Microsoft
Facebook Deal Spurs SEC Inquiry
AT&T Pins 4G Label on Existing Network
Microsoft to Change Windows Chips
Motorola Unveils First Tablet

**Most Popular on Facebook**

Medical Journal Says Autism Study a 'Fraud' – WSJ.com
865 people shared this.

Starbucks Drops Coffee in Logo – WSJ.com
1,958 people shared this.

U.S. Boosts Afghan Surge – WSJ.com
436 people shared this.

Goldman, Citing Strong Response, to End Facebook Solicitation – WSJ.com
975 people shared this.

Rove: ObamaCare Rewards Friends, Punishes Enemies – WSJ.com
407 people shared this.

The move on the executive retirement pay comes as creditors await a definitive statement of what they can expect to collect at the end of Nortel's Chapter 11 case. A report this week to the U.S. Bankruptcy Court in Wilmington estimates the U.S. unit of Nortel has about $5.7 billion in debts to resolve.

In the U.K., however, pensions officials have taken action stemming from a $3.1 billion shortfall in the retirement pay of former British workers.

Write to Peg Brickley at peg.brickley@dowjones.com

MORE IN TECH

 Email    Printer Friendly    Order Reprints

Share:      

Like  Be the first of your friends to like this.

SPONSORED LINKS

**Cancer Treatment Centers**
CTCA Is Recognized For The Best In Cancer Care. Explore Your Options!
www.CancerCenter.com

**BlackBerry® Smartphones**
Everything You Need. Anywhere You Go. Find Your BlackBerry Today.
BlackBerry.com

**Sprint™ Official Site**
What Will You Do First With EVO, The First 4G Phone? Available Now!
www.Sprint.com/Firsts

**Add a Comment**         JOURNAL COMMUNITY

We welcome your thoughtful comments. Please comply with our Community rules. All comments will display your real name.

Want to participate in the discussion?
REGISTER FOR FREE ▶
Or log in or become a subscriber now for complete Journal access.

Track replies to my comment                Go to Comments tab

Share articles and post your comments on Facebook | What's this?   

**Related Stories**

- Goldman-Oaktree Venture Buys AmericanWest Out of Bankruptcy  12 hrs ago
- Prosecutors, Trustees Fight For Dominance In Ponzi Bankruptcies  1/3/2011
- Deals of the Day: LinkedIn Planning IPO in 2011  3 hrs ago
- The Daily Docket: Business Bankruptcies Fall  2 hrs ago
- Deals of the Day: Qualcomm to Acquire Atheros for $3.1 Billion  Yesterday 08:44 AM
- Ex-Lehman Workers Revive Suit Over Retiree Plan  12/29/2010
- Alcatel-Lucent Settles U.S. Bribery Charges  12/28/2010
- Arbitrator Rules in Toyota's Favor  12 hrs ago

**Related Videos**

 7 hrs ago — CES: Taking a Shotgun to a Hard Drive

 16 hrs ago — Oil Spill Commission Blames BP, Industry in Probe

 23 hrs ago — Opinion Journal: Boehner's To-do List -- Paul Gigot on a plan for Boehner

**Video**

  

AM Report: Facebook Orders Flood Goldman  6:27

Googling The Facebook Valuation  0:53

CES: Taking a Shotgun to a Hard Drive  2:48

**More in Tech**

Chips Makers Aim Beyond Computers

AT&T Pins 4G Label on Existing Network

The New Gadgets for 2011

Facebook Orders Flood Goldman

Phone Sales, Android Lift HTC Profit

**Most Popular**

Read   Emailed   Video   Commented   Searches

1. A Chinese Stealth Challenge?
2. Slain Ex-Bush Aide Videotaped in Daze
3. China Newspaper Refers to New Jet
4. The Best and Worst Jobs
5. Oprah's Network Draws Big Audience

Most Read Articles Feed

**Tweets from CES**   Follow

"Tweet Music: Courtney Love Sued for Defamation Over Posts http://bit.ly/gzhRuM"
11 min ago from **WSJdigits (WSJ/Digits)**

"Skype Co-Founder Visits China http://bit.ly/eiyCC5"
27 min ago from **WSJdigits (WSJ/Digits)**

"Just your average day shooting external hard drives at a Las Vegas gun range: http://tinyurl.com/22pow64 via @WSJVideo #CES"
41 min ago from **LaurenGoode (Lauren Goode)**

"Intel had much to celebrate at CES, but some of the best news is that EVP Sean Maloney is back at work at work parttime after a stroke."
8 hrs 26 min ago from **donal888 (Don Clark)**

"I know AT&T paid the Bare Naked Ladies to perform at their #CES party, but its still odd to hear them sing about rethinking possibilities."
8 hrs 51 min ago from **RogerWCheng (Roger Cheng)**

**Latest Headlines**

U.S. Probe Blames BP, Industry

U.S. Boosts Afghan Surge

For Apartments, a Hot Winter