## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------X
:
*In re*            :  Chapter 11
:
Nortel Networks Inc., *et al.*,[1]    :  Case No. 09-10138 (KG)
:
       Debtors.  :  Jointly Administered
:
            :  **Hearing date: January 27, 2011 at 9:30 a.m. (ET)**
             **Re: D.I.'s 4689, 4730**
--------------------------------------------------------X

### DEBTOR NORTEL NETWORKS INC.'S REPLY IN FURTHER SUPPORT
### OF ITS MOTION TO ENFORCE THE AUTOMATIC STAY
### AGAINST AUTOMOTIVE RENTALS, INC.

Nortel Networks Inc. ("NNI") as debtor and debtor in possession (the "Debtor"), respectfully submits this Memorandum (the "Reply") in further support of its Motion for Entry of an Order Enforcing the Automatic Stay Against Automotive Rentals, Inc. (the "Motion"), and in reply to the Response and Objection (the "Objection") of Automotive Rentals, Inc. ("ARI") to the Motion.[2]

### PRELIMINARY STATEMENT

1.  ARI's Objection fails to refute NNI's showing that ARI has violated the automatic stay. ARI attempts to explain away its deliberate failure to pay amounts owed to NNI, in violation of the automatic stay, by contending that ARI's own account statement reflecting its

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]  Capitalized terms used but not defined herein shall have the same meaning ascribed to them in the Motion.

unpaid obligations is not actually final and is "over stated" by the amount of ARI's proof of claim. ARI further contends that because NNI has filed a preference action against it, the preferential amount ARI will be required to pay back to the estate will further reduce and may eliminate any obligation it owes to NNI. According to ARI, these "reductions" to the amount being withheld from NNI are not "set-offs," but "recoupments," and thus are permissible for ARI to withhold notwithstanding the automatic stay. As set forth below, ARI's arguments are based both on a flawed legal position and unsupportable factual assertions. These assertions, regarding "assumed" lease payments, "hypothetical" account statements, and "terminated" leases, are directly contrary to both the express language of ARI's own documents and ARI's own admissions. The documents and admissions in the record indisputably demonstrate that ARI is withholding amounts it owes to NNI, in violation of section 362(a)(6) of the Bankruptcy Code.

## ARI'S FACTUAL ARGUMENTS ARE NEGATED BY THE EXPRESS TERMS OF ITS OWN DOCUMENTS

2.      ARI's factual arguments fly in the face of the express language of its own documents in the record. For example:

- There Is No Dispute That ARI Is Withholding Amounts Owed To NNI. ARI asserts that the $484,699.58 "Amount Due" to NNI reflected in its Reconciliation Statement (the "Reconciliation Statement" or the "Statement")[3] is "overstated by approximately the amount of ARI's pre-petition claim." (Objection at ¶ 15.) NNI disagrees that the Reconciliation Statement overstates the amount due NNI, and that, as a legal matter, ARI is entitled to withhold any amount on any theory, as set forth below. Even if there is such an "overstatement," however, because ARI's proof of claim (the "Proof of Claim")[4], is in the amount of $294,336.23, of which $239,974.87 is for alleged unpaid invoices to NNI[5], the overstatement would only reduce the "Amount Due" by such amount, and would still leave a credit of approximately $245,000 owed to NNI.

---

[3]     The Reconciliation Statement is attached as Exhibit A to the Declaration of Mark Taylor dated January 5, 2011 (Motion Ex. B) (the "Taylor Decl.").

[4]     The Proof of Claim is attached as Exhibit A to the Declaration of Russell Eckenrod dated January 10, 2011 (Motion Ex. C) (the "Eckenrod Decl.").

[5]     As noted in the Motion, the remaining portion of the Proof of Claim, $54,361.36, seeks payment of two invoices for allegedly unpaid lease payments by Nortel Networks Corporation, a Canadian entity, not NNI. (See Motion at ¶ 10.)

Accordingly, by <u>ARI's own admission</u>, even if the Court were to accept its overstatement argument, ARI would still be withholding payment of substantial amounts owed to NNI, and would still be violating the automatic stay.

- <u>The Invoices On Which ARI Seeks Payment In Its Proof Of Claim Have Already Been Netted Out In The Reconciliation Statement.</u> ARI's argument that the "Amount Due" to NNI is overstated by the Proof of Claim amounts (Objection at ¶ 15) does not comport with its own documents. ARI's Proof of Claim against NNI in this case seeks $294,336.23 for unpaid invoices, six of which are invoices to NNI totaling $239,974.87. As set forth in the Proof of Claim, these six NNI invoices are numbered B267144, M64546, B26714 (Division 02) B26714 (Division 06), A65316 and M82694. Proof of Claim at 1. The <u>exact same</u> invoices, however, are enumerated in the Reconciliation Statement, and have already been netted against credits owed to NNI, as part of the calculation yielding a total credit to NNI of $484,699.58. Accordingly, ARI's contention that it is entitled to reduce any credit owed to NNI by the Proof of Claim amount (Objection at ¶ 15) is flatly wrong.

- <u>Nothing In The ARI Reconciliation Statement Suggests That It Is A Preliminary Or Hypothetical "Report Of Credit."</u> ARI seeks to disavow the accuracy of its own Reconciliation Statement by arguing that it does not reflect final figures regarding credits owed to NNI. (Objection at ¶ 15.) According to ARI, the Statement reflects assumed, not actual, lease payments (<u>id.</u>) and is nothing more than a "report of credit" (Declaration of Richard Moyer, dated January 18, 2011 (the "<u>Moyer Decl.</u>") at ¶ 14) or a "report of the sales of the vehicles." (Objection at ¶ 15.) The plain language of the Statement, however, is to the contrary. The Statement is entitled "Statement of Account," and with good reason: it sets forth ARI invoice numbers, amounts due, and dates, and nets the unpaid ARI invoices against credits due NNI for excess net vehicle resale proceeds (the "<u>Excess Proceeds</u>"). The Statement shows ARI's calculation – that ARI owes NNI $484,699.58 (the "<u>Unpaid ARI Obligations</u>") – that it submitted to NNI, which then expected payment. (Taylor Decl. at ¶¶ 5, 8.) While ARI argues that the credit figures in the Statement are based on assumed lease payments, and that the amounts owed by ARI are unknowable at present (Objection at ¶ 15), the document says nothing of the sort.[6] Indeed, not only are both the unpaid invoice amounts ARI claims to be owed and the credit amounts it owes to NNI shown as final sums certain, but the Statement is dated August 9, 2010, well after the Debtor filed for bankruptcy and the information necessary to calculate the parties' respective final lease obligations was in ARI's hands.[7]

---

[6]    The second page of the Statement, regarding Canadian leases, shows a net amount owed to ARI of slightly more than $100,000. (<u>See</u> Statement at 2.) While ARI now contends that these Statements of Account do not reflect final calculations, it is no coincidence that Mr. Moyer told Mr. Taylor that ARI was still owed approximately $100,000 for Canadian rentals, and cited this as the reason why ARI refused to pay the $484,699.58 owed to NNI. (Taylor Decl. at ¶ 8.) Mr. Moyer does not deny any of this in his Declaration. In fact, he now admits that he was "in error" when he tied unpaid Canadian rental obligations to ARI's refusal to pay the amount owed to NNI. (Moyer Decl. at ¶ 18.)

[7]    It is settled law in this Circuit that all documents are to be interpreted according to their plain meaning. <u>See</u> <u>Biase v. Congress Fin. Corp. (In re Tops Alliance City, Inc.)</u>, 372 F.3d 510, 514 (3d Cir. 2004), citing <u>Watt v.</u> <u>Alaska</u>, 451 U.S. 259, 266 n.9 (1981) ("the words used, even in their literal sense, are the primary, and ordinarily

- ARI's "Future Rental Credit" Argument Has No Support In The Lease. Citing Amendment No. 4 to the Master Lease Agreement ("MLA")[8], ARI argues that its obligation to credit NNI for Excess Proceeds pursuant to section 12.2 of the MLA is not a payment obligation because Excess Proceeds could only take the form of "future rental credits," of which there will be none. (Objection at ¶ 13.) There is no indication, however, in Amendment No. 4, which became effective in 1999, or anywhere else in the MLA, that "rental adjustments" must be applied to future rentals or become worthless. (MLA at § 12.2.) Nor is there anything in the MLA or any Amendment thereto that suggests that amounts owed to either side become worthless and do not have to be paid if NNI reduces the number of leased vehicles or stops leasing vehicles entirely. Moreover, ARI's newly minted "future rental credit" argument finds no support in the Reconciliation Statement. Consistent with the MLA and Amendment No. 4, the Reconciliation Statement, which ARI prepared in August of 2010, some 11 years after Amendment No. 4 went into effect, not only shows an "Amount Due" from ARI to NNI (not a credit that has become worthless), but calculates that amount at $484,699.58. (Statement at 1.) As reflected in the Reconciliation Statement, the "rental adjustments" under section 12.2 have been made by the netting of the Excess Proceeds due to NNI against ARI's allegedly unpaid rental payment invoices, and do not eliminate the Unpaid ARI Obligations. (Id.)

- ARI's Obligation To Pay The Unpaid ARI Obligations Has Not Been Terminated. ARI also contends that in any event it has no further obligation to pay Excess Proceeds to NNI under the MLA because that Agreement is "either terminated or expired," or "effectively terminated," just as if it had been rejected, giving rise to a "default" by NNI that cuts off ARI's obligations. (Objection at ¶ 13.) This contention is false. First, section 25 of the MLA contains the termination provisions for the MLA. Yet even ARI does not suggest that these provisions have been implemented. In any event, when there is a termination under section 25, the parties' existing lease obligations as to previously leased vehicles remain in effect. Thus, even if the MLA had been terminated, such termination would not eliminate ARI's obligation to pay NNI the Excess Proceeds. (MLA at § 25.1.) Second, NNI has neither assumed nor rejected the MLA. Third, under section 1 of the MLA, NNI has absolute discretion as to how many vehicles it leases and the timing of such leases. The only requirement is ARI's: "ARI shall lease to Lessee new vehicles as may be ordered by Lessee." (Id. at § 1.1.) As such, NNI has not defaulted on any obligation that would give rise to a termination.

---

most reliable, source of interpreting the measure of any writing: be it a statute, a contract, or anything else."). ARI's labored efforts to explain away the Unpaid ARI Obligations and qualify the Reconciliation Statement contradict the plain meaning of that document and are untenable.

[8]    The MLA is attached as Exhibit A to the Declaration of Randal Izzard dated January 5, 2011 (Motion Ex. D) (the "Izzard Decl.").

<u>**ARI'S LEGAL ARGUMENTS ARE ERRONEOUS AND INAPPLICABLE**</u>

A.    **ARI Is Not Permitted To Set Off Future Preference Payments**
**Against The Sales Proceeds Obligations**

3.    ARI contends, *ipse dixit*, that because it is a "virtual certainty that [it] will be obligated to return a substantial portion of [NNI's] Lease payments" as preferential transfers (Objection at ¶ 16), the $484,699.58 in credits reflected in the Reconciliation Statement as being owed to NNI will be reduced by the returned preferential amount or even eliminated. In other words, according to ARI, it can offset the amount of preference payments it pays back to the estate against its outstanding obligations to NNI. If ARI's argument were valid, it would turn the law of preferences on its head. It would allow a creditor to substitute one preference for another, returning 100-cent dollars to the estate and then taking back an equal amount of 100-cent dollars by offset. Not surprisingly, ARI's position has been uniformly rejected by courts in the Third Circuit and elsewhere. See, e.g., <u>Rochez Bros. Inc. v. Sears Ecological Applications co., Inc. (In re Rochez Bros. Inc.)</u>, 326 B.R. 579, 587 (Bankr. W.D. Penn. 2005) (noting that "an avoidance action defendant" cannot invoke the doctrines of equitable recoupment or setoff to offset its avoidance liability against "the original debt that was satisfied with the avoided transfer"); <u>Mktg. Res. Int'l Corp. v. PTC Corp. (In re Marketing Resources Intern. Corp.)</u>, 35 B.R. 353, 356 (Bankr. E.D. Penn. 1984) (same); 5 Collier on Bankruptcy ¶ 553.03(e)(v) ("[I]n an action . . . under the preference provisions of the Code, the creditor cannot offset its liability against either a separate debt owed to it by the debtor or the original liability on account of which the preferential transfer was made . . . allowing the creditor to offset the amount of the transfer would merely continue the preference, thereby rendering the preference statute useless because the preference would not become available for *pro rata* distribution to all creditors.").

4.      Indeed, the Bankruptcy Code provides the exclusive remedy for a creditor that repays a preference: a claim under section 502(h). No legal principle authorizes ARI to offset the amount of a repaid preference payment and thereby regain the same preferential treatment over other creditors that the application of section 547 just eliminated. ARI's preference argument is unsupported, contrary to uniform law, and must be rejected.[9]

**B.      ARI's Claim That It Is Entitled To Recoupment Is Both Erroneous And Irrelevant**

5.      ARI's recoupment argument is of no consequence, because even accepting the unsupported contention that the Unpaid ARI Obligations are "over stated," ARI would still owe NNI nearly $245,000 in such obligations, and would still be violating the automatic stay. Nevertheless, that argument is itself legally unsustainable because ARI cannot satisfy the "same transaction or occurrence" requirement to effect a recoupment.

6.      A fundamental principle of recoupment is that a creditor may only recoup amounts from a debtor where such amounts and the debtor's obligation to the creditor arise out of the same transaction or occurrence. Univ. Med Ct. v. Sullivan (In re University Medical Center), 973 F.2d 1065, 1079-80 (3d Cir. 1992). In the Third Circuit, the courts apply a strict "integrated transaction" test, whereby even transactions arising under a single contract will not satisfy the "same transaction or occurrence" requirement unless the transactions can be viewed as a single event. Id. at 1081, 1086 (rejecting recoupment even where all amounts owed came due under a single contract between the parties). Here, while ARI submitted invoices in integrated monthly invoice reports (MLA at § 25), there were numerous vehicle leasing transactions, numerous invoices compiling amounts owed with respect to a variety of separate

---

[9]      ARI's preference argument is also contrary to the express language of section 12 of the MLA. That section provides that in calculating the amount of Excess Proceeds owed to NNI, the only deduction ARI is permitted to take is the deduction of a specific set of sales costs specified therein. (MLA at § 12.) Lease payments repaid in preference actions clearly are not contemplated by the plain language of that provision, and cannot be used to reduce or offset ARI's obligation to pay such Excess Proceeds to NNI.

transactions, and a netting of all invoices and credits to determine the amount of the Excess Proceeds owed to NNI by ARI.

7.    Moreover, while the MLA is the overall governing document, as reflected in section 3.3 of the MLA, and unlike the cases on which ARI relies (Objection at ¶ 24)[10], each vehicle is subject to its own, distinct Motor Vehicle Lease Agreement ("MVLA"). Indeed, the Unnumbered Amendment to the MLA, dated September 14, 2000 (part of Ex. A to the Izzard Decl.), specifies that "[t]he parties intend that each MVLA will be an independent lease agreement relating solely to the vehicle named in it and accordingly each MVLA will be separate and distinct from every other lease agreement between the parties." (MLA at Unnumbered Amendment to MLA dated September 14, 2000 at p. 1 ¶ 3.) This language is repeated nearly verbatim in each MVLA ("This [MVLA] constitutes a separate and independent lease agreement solely of the Vehicle(s).") (See Form MVLA, attached to Id. at p. 2.) Thus, each vehicle lease constituted a separate transaction.

8.    Recoupment is not only inapplicable, but even if it were applicable, it would not eliminate the Unpaid ARI Obligations, and would not obviate ARI's ongoing violation of the automatic stay.

**C.    The Relief Requested in the Motion Does Not Require an Adversary Proceeding**

9.    ARI also argues that the relief sought on the Motion is available only in an adversary proceeding under Rule 7001 of the Federal Rules of Bankruptcy Procedure.

---

[10]    In contrast to this case, in cases such as In re Commc'n Dynamics, Inc., 300 B.R. 220 (Bankr. D. Del. 2003); MBNA America Bank, N.A. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.), 275 B.R. 712 (Bankr. D. Del. 2002); In re HQ Global Holdings, Inc., 290 B.R. 78 (Bankr. D. Del. 2003); Megafoods Stores, Inc., v. Flagstaff Realty Assocs. (In re Flagstaff Realty Associates), 60 F.3d 1031 (3d Cir. 1995); In re R&C Petroleum, Inc., 247 B.R. 203 (Bankr. E.D. Texas 2000); and Farmers Union Cent. Exchange, Inc. v. Sec. Pac. Nat'l Bank (In re Buttes Gas & Oil), 72 B.R. 236 (Bankr. S.D. Tex. 1987), cited by ARI (Objection ¶ 24), there was only one document that governed the relationship between the parties. In the other case cited by ARI on this point, CTDI Trust v. U.S. Elec., Inc. (In re Commc'ns Dynamics, Inc.), 382 B.R. 219, 235-36 (Bankr. D. Del. 2008), recoupment was not permitted on summary judgment, because there was a fact issue regarding the relationship between the two operative agreements.

(Objection at ¶¶ 21-22.)  This argument is based on the faulty premise that what NNI is asking the Court to do on this Motion is "to recover money or property," which can only be obtained in an adversary proceeding under Rule 7001(1).  (Id. at ¶ 21.)  Here, NNI does not ask the Court to order ARI to make a payment or to transfer property to NNI, or even to determine how much ARI owes NNI.  Rather, as set forth in the Proposed Order that was submitted with the Motion, NNI seeks an Order that provides:

> "the automatic stay is hereby enforced with respect to any and all acts by ARI to collect, assess, or recover on all or any part of the prepetition claims asserted on behalf of ARI against the Debtor, including, but not limited to, the ongoing withholding of payments on obligations ARI owes to the Debtor that are otherwise due and owing.  Any such acts shall be considered a violation of the automatic stay and this Order, and subject ARI to appropriate sanctions on further motion." (Proposed Order, Motion Ex. A.)

10.    Accordingly, the cases cited by ARI on this point, each of which involved either a request to compel a monetary payment (Rule 7001(1)), a declaratory judgment regarding the movant's entitlement to funds (Rule 7001(9)), or a judgment regarding the validity of a lien (Rule 7001(2)) are not on point.[11]  (Objection at ¶ 21.)

11.    The relief sought on this Motion is outside the purview of Rule 7001; the Motion is an appropriate means of presenting to the Court the issues raised herein.

### CONCLUSION

For the foregoing reasons, and the reasons set forth in the Motion, the Debtors respectfully request that this Court (i) grant the Motion and the relief requested therein; (ii) enter the Proposed Order attached to the Motion; and (iii) grant such other and further relief as it deems just and proper.

---

[11]    The Debtors reserve their rights to take such further action as they deem necessary and proper to enforce the Order sought herein if such Order is issued, including but not limited to commencement of an adversary proceeding to obtain an Order directing ARI to pay NNI the Excess Proceeds.

Dated:  January 24, 2010
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa T. Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*