# Exhibit C

## Engagement Agreement

**Doug Smith**
Partner

4400 Comerica Bank Tower
1717 Main Street
Dallas, TX 75201
214 220 6256 Fax 214 220 6250
doug.smith@mercer.com
www.mercer.com

January 25, 2011

John J. Ray, III
Nortel Networks Inc.
2221 Lakeside Blvd.
Richardson, TX 75082-4305

**Subject:** Engagement Letter Agreement

Dear John:

We are delighted to have the opportunity to work with Nortel Networks Inc. ("NNI") and its U.S. debtor affiliates (together with NNI, "you," "Client" or the "Debtors"). The purpose of this letter of engagement ("Agreement") is to set forth the terms governing certain services, as further described below, that have been or will be provided to you ( the "Services") by Mercer's operating companies, Mercer (US) Inc., Mercer Investment Consulting, Inc. and/or Mercer Health & Benefits LLC (in each case, solely with respect to Services the particular entity had provided or will provide to you, "Mercer" or "we") in connection with the rendering of legal services by Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb") to the Debtors. Mercer and the Client may also be referred to collectively as the "Parties". This retention is effective as of December 14, 2010, subject to the filing and approval of a supplemental retention application and declaration in support of the Debtors' original application to retain Mercer (the "Retention Application"), dated February 23, 2009, with the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") having jurisdiction over the Debtors' chapter 11 cases (the "Cases").

## Statements of Work

Each statement of work ("SOW") must specify at a minimum: (1) our respective responsibilities with respect to any Services; (2) the information and data we will need in order to perform the Services; (3) any time constraints on the performance of the Services; and (4) the compensation we will receive for performing the Services. To the extent you have accepted any SOWs at any time prior to the execution of this Agreement solely with respect to the Services, such SOWs shall be subject to the terms of this Agreement. For purposes of this Agreement, the term "Agreement" shall include any SOWs with respect to the Services.

Page 2
January 25, 2011
John J. Ray, III
Nortel Network Inc.

## Terms and Conditions Governing Engagement

*Our performance of the Services (whether provided pursuant to a written SOW or not) are subject to the following terms:*

1. **Scope:**
   A. For purposes of this engagement, and as regards the scope of its retention, Mercer will take direction from and report its views and conclusions only to Cleary Gottlieb attorneys and others designated by Cleary Gottlieb.
   B. Under this Agreement, we will act as a consulting expert to the Debtors and in that role will provide such customary and appropriate consulting services as Cleary Gottlieb reasonably requests in connection with Cleary Gottlieb's rendering of legal services to the Debtors in their chapter 11 cases, including, without limitation, with respect to certain issues relating to employee and retiree benefits.
   C. All services, advice and information and reports provided by Mercer to Cleary Gottlieb in connection with this Agreement shall be for the sole benefit of the Debtors through the legal advice provided by Cleary Gottlieb as counsel to the Debtors, and shall not be disclosed to or relied upon by any other person without the express authorization of the Debtors and Mercer, except as required by law.
   D. Mercer is prepared to act as a consulting expert for the Debtors in connection with Cleary Gottlieb's rendering of legal services to the Debtors in their chapter 11 cases during this assignment on an exclusive basis. Therefore, during the term of this Agreement, Mercer will not propose or undertake for any third party any project which is associated with the chapter 11 cases of the Debtors. This exclusivity shall remain in effect until cancelled with written notice by NNI or until the termination of this Agreement.

2. **Payment Terms:**
   A. We perform Services in consideration of your payment of our compensation. Our compensation for Services, in the form of professional fees, ("Compensation") is set forth in the applicable SOW and will be substantially similar to that set forth in the Retention Application, subject to Mercer's current rates and subsequent periodic rate adjustments. In addition to our Compensation, we also bill monthly for our reasonable expenses as set forth in the Retention Application. You are responsible for any sales, value added taxes or similar taxes related to the performance or receipt of the Services, including those taxes assessed by authorities subsequent to payment for the Services.
   B. Mercer will submit to the Bankruptcy Court monthly fee applications for interim and final allowance of Compensation, including reimbursement of expenses, as required

Page 3
January 25, 2011
John J. Ray, III
Nortel Network Inc.

under the Bankruptcy Court's order dated March 10, 2009 (the "Retention Order"), approving the Retention Application. Notwithstanding anything to the contrary in this Agreement, all payments to Mercer, whether for Compensation or reimbursement of expenses, shall be paid by the Debtors, which shall be exclusively responsible for all financial obligations related to this Agreement, subject to the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court (the "Local Rules") or applicable orders of the Bankruptcy Court.

C. Mercer acknowledges that pursuant to the Retention Order, Mercer's fees and expenses with respect to the Services are subject to the jurisdiction and approval of the Bankruptcy Court and any applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules or applicable orders of the Bankruptcy Court.

D. If we become involved (whether or not as a party) in a dispute (including audits or investigations) between you and a third party (including a governmental entity), or if we are asked to preserve records relating to the Services or this Agreement, including where Mercer is requested to preserve documents, electronically stored information, back-up tapes or other media beyond its standard recycling or retention protocol, beyond the scope of Services described in the applicable SOW, these additional services will be documented in a SOW. If no SOW or other agreement is reached on these additional services, you agree to pay us at our then current standard rates for all our time spent, and will reimburse us for all reasonable expenses incurred by us, in connection with such dispute or such documentation preservation request. We will reimburse such payments in the event and to the extent such dispute is finally determined by a court to have resulted primarily from our negligence, conduct in bad faith or fraud.

3.  **Instructions; Provision of Information and Assistance:**

    You will provide all necessary and reasonably requested information, direction and cooperation to enable us to provide the Services, and any direction (whether verbal or written) shall be effective if contained expressly in the applicable SOW or if received (whether verbally or in writing) from a person known to us or reasonably believed by us to be authorized to act on your behalf. You agree that we shall use all information and data supplied by you or on your behalf without independently verifying the accuracy, completeness or timeliness of it. We will not be responsible for any delays or liability arising from missing, delayed, incomplete, inaccurate or outdated information and data, or if you do not provide adequate access to your employees, agents or other

Page 4
January 25, 2011
John J. Ray, III
Nortel Network Inc.

representatives necessary for us to perform the Services. We will be entitled to charge you in respect of any additional work carried out as a result.

4. **Confidential Information; Data:**
   A. We acknowledge and agree that work done pursuant to this engagement must be held in the strictest confidence and not discussed with or disclosed to third parties, other than Cleary Gottlieb as counsel to the Debtors, without your or Cleary Gottlieb's prior consent, except as otherwise set forth in this Section.
   B. Each of us is likely to disclose information ("Disclosing Party") to the other ("Receiving Party") from time to time in the course of the provision of the Services, which is marked or designated as confidential or proprietary at or prior to disclosure or which would appear to a reasonably prudent person to be confidential and/or proprietary in nature ("Confidential Information"). The Receiving Party will not disclose such Confidential Information to any person other than in connection with the provision of the Services or as otherwise provided for in this Agreement. This restriction does not apply to information that (i) the Receiving Party must disclose by law or legal process, (ii) is either already in the public domain or enters the public domain through no fault of the Receiving Party, (iii) is available to the Receiving Party from a third party who, to the Receiving Party's knowledge, is not under any non-disclosure obligation to the Disclosing Party, or (iv) is independently developed by or for the Receiving Party without reference to any Confidential Information of the Disclosing Party. If we are potentially required to disclose Confidential Information by law or legal process, we shall, to the extent reasonably practicable, give you or Cleary Gottlieb as counsel to the Debtors written notice of such circumstance and a reasonable opportunity to object before any such disclosure is made.
   C. Notwithstanding Section 4(B), you agree that we will be entitled to disclose information, including Confidential Information, relating to the Services or you to regulators having jurisdiction over our business. You also agree that, notwithstanding any other provision in this Agreement, we may include the identities of those persons who are identified by you as contact persons for you and information about the terms of this Agreement, the Services and the Compensation in our internal client management, financial and conflict checking databases.
   D. You hereby grant us a perpetual, non-exclusive, royalty-free license to copy, modify and use any information and data supplied by you or on your behalf so that we may create analytical trend data (in anonymous form) and in order to improve the quality of our advice to our clients. We will not disclose any information in a manner that

Page 5
January 25, 2011
John J. Ray, III
Nortel Network Inc.

allows particular clients or individuals to be identified. Notwithstanding the foregoing, you agree that your name may appear in a list of participating organizations for reports containing such analytical trend data.

E.  Our respective obligations under Section 4(B) shall survive for a period of five (5) years from the date of termination of this Agreement or for such longer period as is required by law, except that any trade secrets disclosed to the Receiving Party shall be maintained in confidence in perpetuity or until such time as they are no longer reasonably considered to be trade secrets by the Disclosing Party.

F.  Notwithstanding anything to the contrary in this Agreement, but subject to the terms and conditions of Section 4, we may (i) retain copies of Confidential Information that is required to be retained by law or regulation, (ii) retain copies of our work product that contain Confidential Information for archival purposes or to defend our work product and (iii) in accordance with legal, disaster recovery and records retention requirements, store such copies and derivative works in an archival format (e.g. tape backups), which may not be returned or destroyed. We may retain your information in paper or imaged format and we may destroy paper copies if we retain digital images thereof.

G.  In connection with this engagement, Cleary Gottlieb may provide or cause to be provided to Mercer documents that are the subject of specific protective orders or confidentiality agreements limiting the use of or access to such documents. In any such instance, Cleary Gottlieb will provide Mercer with a copy of the relevant confidentiality order or agreement for execution, if applicable. Mercer agrees that to provide Services to the Debtors under this Agreement it will be bound by the obligations set forth herein, as well as by the terms of any such protective order or confidentiality agreement, and will execute an undertaking setting forth its agreement to such terms as necessary.

H.  It may be necessary for Cleary Gottlieb as counsel to the Debtors from time to time to disclose to Mercer legal theories and/or other privileged or confidential information. An essential term of this Agreement, therefore, is that Mercer not disclose at any time to any third party any theories, opinions, facts or other information obtained by or through Cleary Gottlieb, except such disclosures as the Debtors or Cleary Gottlieb may authorize.

I.  To protect Cleary Gottlieb's ability, as counsel to the Debtors, to make appropriate objections to disclosure, all written materials prepared by Mercer in the course of this engagement shall be labeled: "Privileged & Confidential/Attorney Work Product." All written reports or other documents reflecting your findings, conclusions or views on

Page 6
January 25, 2011
John J. Ray, III
Nortel Network Inc.

any matter encompassed by this engagement shall be sent only to Cleary Gottlieb as
counsel to the Debtors and such other persons as Cleary Gottlieb may direct.

5. **Personal Information:**
Each of us and our respective Affiliates (as defined below) will comply with our
respective obligations arising from data protection and privacy laws in effect from time to
time to the extent applicable to this Agreement and the Services. This includes, without
limitation, (i) the obligation, if any, of you or your Affiliates, to obtain any required
consent(s) in respect of the transfer of information to us by you or any third party relating
to an identified or identifiable individual that is subject to applicable data protection,
privacy or other similar laws ("Personal Information"), (ii) any obligation with respect to
the creation or collection of additional Personal Information by us, and (iii) any obligation
with respect to the use, disclosure and transfer by us of Personal Information as
necessary to perform the Services or as expressly permitted under this Agreement.
Subject to Section 4(D), any use or processing by us of Personal Information supplied by
or on your behalf in connection with the Services shall be done solely on your behalf. We
shall handle such Personal Information in accordance with your reasonable instructions
as may be provided from time to time in the applicable SOW or as reasonably necessary
for the purpose of providing the Services and shall not handle such Personal Information
in a manner inconsistent with the terms of this Agreement. We also confirm that we have
taken appropriate technical and organizational measures intended to prevent the
unauthorized or unlawful processing of Personal Information and the accidental loss or
destruction of, or damage to, Personal Information. For purposes of this Agreement,
"Affiliates" means, with respect to either Party, any entity directly or indirectly controlling,
controlled by or under common control with such Party.

6. **Ownership and Use of Work; Intellectual Property:**
A. All materials prepared by us specifically and exclusively for you pursuant to this
Agreement (the "Work") shall be owned exclusively by you. Notwithstanding anything
to the contrary set forth in this Agreement, we will retain all copyright, patent and
other intellectual property rights in the methodologies, methods of analysis, ideas,
concepts, know-how, models, tools, techniques, skills, knowledge and experience
owned or possessed by us before the commencement of, or developed or acquired
by us during or after, the performance of the Services, including without limitation, all
systems, software, specifications, documentation and other materials created, owned
or licensed and used by us or our Affiliates or subcontractors in the course of

Page 7
January 25, 2011
John J. Ray, III
Nortel Network Inc.

providing the Services (the "Intellectual Property"), and we shall not be restricted in any way with respect thereto. To the extent any Work incorporates any Intellectual Property, we hereby grant you a non-exclusive, non-transferable right to use such Intellectual Property solely for purposes of utilizing the Work internally in accordance with the terms of this Agreement.

B. Unless we provide our prior written consent, you will not use, in a manner other than as mutually contemplated when we were first retained by you to perform the applicable Services, or disclose to any third party, other than your attorneys, accountants or financial advisors with a need to know and who are bound by confidentiality obligations at least as restrictive as those contained in this Agreement, any Work or Intellectual Property or other material supplied by us under this Agreement, and you shall be responsible for, and we shall have no liability with respect to, modifications made by any person other than us to the Work, Intellectual Property or other work product provided to you by us. You will indemnify, defend and hold us and our Affiliates harmless in respect of any Loss (as defined in Section 7) incurred by us as a result of your breach of this obligation or any modifications made by any person other than us to the Work, Intellectual Property or other work product provided to you by us.

7. **Limitation of Liability:**

A. The aggregate liability of Mercer, our Affiliates and any officer, director or employee of ours and our Affiliates ("Mercer Parties") to you, your Affiliates, your officers, directors or employees or those of your Affiliates and any third party (including any benefit plan, its fiduciaries or any plan sponsor) for any and all Losses arising out of or relating to the provision of any Services at any time by any of the Mercer Parties shall not exceed the greater of one times the Compensation for the Services giving rise to such Loss and $100,000. Mercer shall have no liability for the acts or omissions of any third party (other than our subcontractors).

B. In no event shall either Party or its Affiliates be liable in connection with this Agreement or the Services to the other Party, its Affiliates or any third party for any loss of profit or incidental, consequential, special, indirect, punitive or similar damages. The provisions of this Section 7 shall apply to the fullest extent permitted by law. Nothing in this Section 7 limiting the liability of a Party shall apply to any liability that has been finally determined by a court to have been caused by the fraud of such Party.

C. For purposes of this Agreement "Loss" means damages, claims, liabilities, losses, awards, judgments, penalties, third party claims, interest, costs and expenses,

Page 8
January 25, 2011
John J. Ray, III
Nortel Network Inc.

including reasonable attorneys' fees, whether arising under any legal theory including, but not limited to claims sounding in tort (such as for negligence, misrepresentation or otherwise), contract (whether express or implied), by statute, or otherwise, claims seeking any kind of damages and claims seeking to apply any standard of liability such as negligence, statutory violation or otherwise. For the avoidance of doubt, multiple claims arising out of or based upon the same act, error or omission, or series of continuous, interrelated or repeated acts, errors or omissions shall be considered a single Loss.

D. Each of the Parties acknowledges that the Compensation for the Services to be provided under this Agreement and the applicable SOW reflects the allocation of risk set forth in this Section 7.

8. **Unforeseen Events:**
Neither Party shall be liable for delays or failures in performance of obligations under this Agreement, other than failure to make payments hereunder when due, resulting from events beyond its reasonable control, including without limitation "acts of God," fire, flood, riots, new laws which prevent the carrying out of the Services, the results of terrorist activity, failures of third party suppliers, and electronic and other power failures.

9. **Duration and Termination of this Agreement:**
This Agreement will continue until terminated as provided in this Section, except as provided otherwise in a SOW. This Agreement and any SOW may be terminated (i) by either Party upon ninety (90) days' prior written notice to the other Party, (ii) by either Party upon material breach by the other Party, which breach is not cured within thirty (30) days after receipt of written notice thereof, (iii) immediately by us for non-payment of invoices by you as provided under Section 2, or (iv) in our sole discretion, immediately upon the conversion of the Cases to cases under chapter 7 of the Bankruptcy Code or the dismissal of the Cases. After the termination of this Agreement, Sections 4, 5, 6, 7, 9 and 10 will survive in full force and effect. Any termination of this Agreement shall not relieve you or your Affiliates of their obligations to pay for Services rendered and expenses incurred by us or our Affiliates up to and including the effective date of such termination, and such termination may require you to pay termination fees to the extent provided in a SOW. Notwithstanding the foregoing, to the extent that the Parties agree that Mercer shall continue to provide Services after the effective date of termination of this Agreement or any SOW, the terms and conditions of this Agreement and the applicable SOW shall survive until such Services are completed or the Parties agree that the Services shall no longer be provided.

Page 9
January 25, 2011
John J. Ray, III
Nortel Network Inc.

**10. Additional Terms:**

   A.  *Terms Incorporated by Reference; Excluded Services* - The provision of Services
       (whether or not under any SOW) shall be considered to be provided under and
       subject to the terms of this Agreement and the terms set forth in any SOW shall be
       deemed incorporated by reference into this Agreement for purposes of that SOW.
       For purposes of this Agreement, the term Excluded Services means outsourcing
       and/or benefit administration services; investment management services; advice or
       counsel relating to executive remuneration services to the compensation committee
       of the Board of Directors; mergers and acquisitions related services (unless
       otherwise set forth in a SOW attached to this Agreement); services related to the
       use, support or development of our proprietary software, databases, information
       systems or other intellectual property; advice and counsel to trustees of Client
       Group-sponsored pension schemes or plans in countries outside the United States
       where it is necessary to contract directly with the trustees or pension boards or other
       similar persons or entities to avoid conflicts of interest or as required by law.  The
       Parties understand and agree that Excluded Services are provided under separate
       agreements that are specific to those particular services.

   B.  *Notices* - Any notice that is to be given by one Party to the other under this
       Agreement will be given in writing and delivered to Doug Smith, with a copy to the
       Legal Department, Mercer, 1166 Avenue of the Americas, New York, New York
       10036 if to Mercer or Kathy Schultea if to Client, or any other address specified by
       notice subsequently by one Party to the other. A notice will be effective upon receipt.

   C.  *No Third Party Beneficiaries* - Neither this Agreement nor the provision of the
       Services is intended to confer any right or benefit on any third party, other than the
       Affiliates of each Party that execute a SOW, and, in such event, solely as set forth in
       such SOW and this Agreement. The provision of Services under this Agreement
       cannot reasonably be relied upon by any third party.

   D.  *No Publicity* - You agree not to refer to us or attribute any information to us in the
       press (including for the purposes of advertising or promotion, or for the purpose of
       informing or influencing any other party, including the investment community),
       without our prior written consent. We agree not to refer to you in the press or for
       promotional purposes without your prior written consent, provided that we may
       include your name in our representative client listing and as provided in Section 4(D).

Page 10
January 25, 2011
John J. Ray, III
Nortel Network Inc.

E. *Waiver* - The failure by either Party to insist upon strict performance of any provision of this Agreement shall in no way constitute a waiver of rights under this Agreement, at law or in equity.

F. *WAIVER OF JURY TRIAL* - EACH PARTY, ON BEHALF OF ITSELF AND ITS AFFILIATES, TO THE FULLEST EXTENT PERMITTED BY LAW, KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES ITS RIGHT TO A TRIAL BY JURY IN ANY ACTION OR OTHER LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY SERVICES PROVIDED BY MERCER OR ITS AFFILIATES. THE WAIVER APPLIES TO ANY ACTION OR LEGAL PROCEEDING, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. EACH PARTY AGREES NOT TO INCLUDE ANY EMPLOYEE, OFFICER, DIRECTOR OR TRUSTEE OF THE OTHER AS A PARTY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO SUCH DISPUTE.

G. *Warranties of Mercer* - Except as expressly set forth in this Agreement, we expressly disclaim any warranty, express or implied, including but not limited to any implied warranty of merchantability and fitness for a particular purpose.

H. *Entire Agreement* - This Agreement is the complete, entire and fully integrated agreement between the Parties except with respect to the Excluded Services. This Agreement (including any SOW and any schedules or exhibits attached hereunder) supersedes, revokes, cancels, extinguishes and replaces all prior or contemporaneous understandings, agreements, undertakings, negotiations and discussions, whether oral or written, between the Parties except with respect to the Excluded Services. The Parties agree that, except for the obligations under this Agreement, they have no obligations to one another and have not relied upon any promises, representations, warranties, agreements, covenants or undertakings, other than those expressly set forth in this Agreement. Because the Parties are of equal commercial sophistication in negotiating contracts and have negotiated this Agreement at arms length, it shall not be construed for or against any Party. Each Party is entering into this Agreement voluntarily, has read and understands all provisions of this Agreement and has had the opportunity to seek and obtain the advice of counsel on its rights and responsibilities under, and the terms and conditions of, this Agreement.

I. *Amendment, Assignment, Subcontracting* - Except with respect to a change in address for notices, this Agreement shall not be amended except by a written document executed by both of us. In the event of any inconsistency between the terms of a SOW and those in the Agreement, the provisions contained in this Agreement shall prevail unless the SOW specifically amends a term contained

    herein. Neither of us may assign this Agreement without the prior written consent of the other, except that we may assign this Agreement to an Affiliate with reasonable prior written notice to you. We may subcontract with any of our Affiliates upon reasonable prior written notice to you, and we may subcontract with third parties with your prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed.

J.   *Governing Law and Jurisdiction* - Any and all actions or proceedings arising out of, or relating to this Agreement, any Services provided up to this date or any and all SOWs will be governed by, and interpreted in accordance with, the United States Bankruptcy Code and the law of the State of New York and will be subject to the exclusive jurisdiction of the Bankruptcy Court. Each Party agrees that service of process in any such action or proceeding may be properly made by first class mail in accordance with the notice provisions in Section 10(B) above.

K.   *Severability* – It is the intent of the Parties that the provisions of this Agreement shall be enforced to the fullest extent permitted by applicable law. To the extent that the terms set forth in this Agreement or any word, phrase, clause or sentence is found to be illegal or unenforceable for any reason, such word, phrase, clause or sentence shall be modified, deleted or interpreted in such a manner so as to afford the Party for whose benefit it was intended the fullest benefit commensurate with making this Agreement as modified, enforceable and the balance of this Agreement shall not be affected thereby, the balance being construed as severable and independent.

L.   *Advice on Legal Matters* - We are not engaged in the practice of law and the Services provided hereunder, which may include commenting on legal issues or drafting documents, do not constitute and are not a substitute for legal advice. Accordingly, we recommend that you secure the advice of competent legal counsel with respect to any legal matters related to the Services or otherwise.

M.   *Counterparts* - This Agreement may be executed and delivered (including by facsimile or a scanned PDF version) in one or more counterparts, each of which when executed shall be deemed an original, but all of which taken together shall constitute one and the same agreement.

N.   *Authority* – The Parties hereby represent and warrant that their respective signatories below have full legal authority to enter into this Agreement and each of its terms on their behalf.

Page 12
January 25, 2011
John J. Ray, III
Nortel Network Inc.

If you have any questions about these terms and conditions, please do not hesitate to call me. If not, please indicate your agreement to the terms of this Agreement by signing the enclosed copy of this Agreement and SOW, if applicable, and returning it to us.

**Mercer (US) Inc.**
**Mercer Investment Consulting, Inc.**
**Mercer Health & Benefits LLC,**
in each case, solely in connection with the Services it provides pursuant to a SOW

**Mercer**

By: _____

Name: _____Douglas J. Smith_____    Date: __Jan. 25, 2011
        (Please Print)

Title: _____Partner_____

ACCEPTED AND AGREED

**Nortel**

By: _____

Name: _____    Date: _____
        (Please Print)

Title: _____

Sincerely,

Doug Smith
Partner

Page 12
January 25, 2011
John J. Ray, III
Nortel Network Inc.

If you have any questions about these terms and conditions, please do not hesitate to call me. If not, please indicate your agreement to the terms of this Agreement by signing the enclosed copy of this Agreement and SOW, if applicable, and returning it to us.

**Mercer (US) Inc.**
**Mercer Investment Consulting, Inc.**
**Mercer Health & Benefits LLC,**
in each case, solely in connection with the Services it provides pursuant to a SOW

**Mercer**

By:

Name:

Title:

ACCEPTED AND AGREED

**Nortel**

By: _____

Name: _____    Date: _1/25/11_
      (Please Print)

Title: _____

Sincerely,

Doug Smith
Partner