January 25, 2011

Clerk of the Court,
United States Bankruptcy Court of District of Delaware,
824 Market Street, 3rd Floor,
Wilmington, Delaware 19801

Copies to:

Cleary Gottlieb Steen & Hamilton LLP   Attn: James Bromley
One Liberty Plaza
New York, New York 10006


Morris Nichols Arsht & Tunnel LLP     Attn: Derek C Abbott
1201 North Market St.
PO Box 1347
Wilmington, Delaware 19801


                Case No. 09-101138 (KG)
                Nortel Networks Inc (NNI) et al

Dear Sir or Madam,

I have received a document, labeled Docket 4638 in the Epiq files, dated 12-22-10 from the United States Bankruptcy Court, with a focus on the Nortel Networks US Deferred Compensation Plan. I wish to file an Objection to the filing, and in particular to the Motion and Stipulation, as received.

Grounds for Objection and Rejection on Motion and Stipulation

There appear to be several reasons to request, in this Objection, that the Court reject the Motion and Stipulation as provided in Docket 4638

- A review of the list of 325 people who received Docket 4638, shows that it does not represent a select group of management and highly paid employees", as stated in the Motion. Of the seventeen people who are listed as Executive Officers in the Form 10-K for 2008, only one such person is listed among the 325 people, and his participation was a very small part of his 2008 total compensation ($46,916 in total Deferred Compensation versus a 2008 total compensation of $2,451,783). Furthermore a review of the list of 325 people shows that there are no names of people, who have filed Claims, who could have been considered Executive Officers in the decade 1998 to 2008]]

By contrast, the average sized claim for the 325 people, who share the rights to the Trust of $37.9 million, is $116,662 per person, and it is known that those employees put aside portions of their compensation for several years to reach this average number of dollars. A review of the list shows that most of the people were "middle managers", and so the list does not align with the level of "Executives" imputed in the Wall Street Journal article of December 23, 2010 – published within hours of the filling.

- A review of the documentation and communications to the employees about the Deferred Compensation Plan shows them to be very complex. There were a lot of changes to the Plan being made in 2000, partially as a result of merging two, or more, existing Plans. However, nobody has been able to show any documentation or guidance that was offered to employees who retired before December 31, 2010 and who were simply encouraged to take advantage of a deferral plan which was represented as being very safe and very similar to a 401K Plan.

  Thereafter, the information about the Rabbi Trust remained minimal and certainly was not highlighted until later years. Furthermore, those people who retired had their Deferred Compensation locked into a distribution plan which could not be changed, even if the implications of the Rabbi Trust were only then later fully understood. In view of the inability to change the payout structure once an employee had initiated retirement payouts, it is wrong and unreasonable to have a one sided agreement wherein the money in the Trust can be re-claimed by the debtor without granting the retiree the right to extract his money in one payment. By contrast the 2009 Nortel Annual Report states that on Executive Officer withdrew $1.7 million from a deferred compensation plan shortly before the filing for bankruptcy on January 14, 2009.

- A review of the documents pertaining to the Deferred Compensation Plan shows that they contain reference to the fact that the responsibility for maintaining the Deferred Compensation Plan had been passed to Nortel Networks Corporation (NNC) – a Canadian corporation. Reference to Nortel Networks Corporation (NNC) is recorded on the Epiq website, on the leading page for Nortel, under the General Information, and says that Nortel Networks Corporation filed bankruptcy on January 14, 2009 in the Ontario Supreme Court of Justice. Thus, it is inappropriate for Nortel Networks Inc (NNI) to request the transfer to NNI of funds, held in Trust, to which NNI has no rights. The Trust is, or for some time has been, in the jurisdiction of NNC, and not NNI, and hence outside the Case No. 09-10138 (KG) being considered by the United States Bankruptcy Court for the District of Delaware.

  It appears that a similar claim for the Trust money has been rejected by

the Ontario Court, so one is forced to ask if this is just another attempt to gain control of the Trust money.

- The SEC filings for the year 2009 show that Nortel made profit of $488 million on revenue of $4.1 billion in 2009, and that the cash and short term investments exceeded $2 billion. The Wall Street Journal article of December 23, 2010 states that Nortel has now amassed nearly $5 billion in cash, much of it from the sale of operating units – and there is a prospect of raising significant more cash from the sale of intellectual property. The article also reports that Nortel has filed an estimate of $5.7 billion in debts to resolve. Thus, Nortel may well be in a position to emerge from Chapter 11, and it is argued that money put into Trust for Retirees should not be co-mingled with all the general assets, but should be retained in the Trust with US Bank National Association until correct consideration can be giving to its distribution. Moreover, the bonus payments to post-filing Nortel management have been hugh.

- Docket 4638 makes a reference in Section C28 that Bankruptcy Rule 9019 provides that " the court may approve a compromise or settlement" Under this authority, the Third Circuit has emphasized that compromises and settlements are favored in bankruptcy. Furthermore, the District of Delaware has recognized "the consensual resolution of claims minimizes litigation and expedites the administration of the bankruptcy estate". The approval of the proposed compromise and settlement falls within the sound discretion of the bankruptcy court. Furthermore, the Third Circuit has held that settlements typically reduce the "complexity and inconvenience of litigation". In view of the complexities associated with the Deferred Compensation Plan, and that the $37.9 million in Trust is a very small portion of the assets and debt being considered (less than 1%) it appears logical to reject the Motion and Stipulation, and encourage a "compromise and settlement".

Recommendations for Action by the Court

1. That the Motion and Stipulation in Docket 4638 be rejected.
2. That the Debtors be encouraged to find a "compromise and settlement" - with the reminder that the $37.9 million in Trust represents less than 1% of the total assets in review, and there are several legal issues that need to be resolved, that could be handled through a "compromise and settlement".
3. That the Trustee, in conjunction with Mullin TBG, be instructed to distribute, in full, the validated Deferred Compensation Plan claims of any person who had moved to a state of retirement, with a regular distribution before January 14, 2009.
4. That the Trustee, in conjunction with Mullin TBG be instructed to present a plan to the Court for the distribution of the assets to all the people who are participants in the Deferred Compensation Plan.