January 30. 2011

Elias Cagiannos
87: Woodland Rd,
Madison, NJ 07940

Clerk of the Court,
United States Bankruptcy Court for District of Delaware,
824 Market Street, 3rd Floor,
Wilmington, Delaware 19801

Copies to:

Cleary Gottlieb Steen & Hamilton LLP          Attn: James Bromley
One Liberty Plaza,
New York, New York, 10006

Morris Nichols Arsht & Tunnel LLP             Attn: Derek C Abbott
1201 North Market St,
PO Box 1347
Wilmington, Delaware 19801

**Chapter 11**
**Case No. 09-101138 (KG)**
**Nortel Networks Inc (NNI) et al**

Dear Sir or Madam,

I have received and reviewed Docket 4638 dated 12-22-10 from the United States bankruptcy Court referencing the Nortel Networks US Deferred Compensation Plan. I wish to oppose the entry of an order approving the Motion for an Order 1) approving the stipulation; 2) directing US Bank National Association to turn over property of Nortel Networks and; 3) granting related relief to the Nortel Networks U.S. deferred compensation plan ("Order") and I am hereby filling an objection.

**Grounds for Objection and Rejection of Motion and Stipulation**

There are several reasons to request, in this Objection, that the Court reject the Motion and Stipulation as provided in Docket 4638.

- **Enrolment requirements to participate in the Plan:** The list of 325 individuals receiving Docket 4638 does not represent a "select group of management and highly paid employees", as stated in the Motion. Very few individuals on the list were "management" having "policy making and executive responsibility" when they qualified to contribute to the plan. With respect to the compensation level of the employees participating, I was told by plan administrators that employees qualified based on their actual earnings in the prior year which included sales compensations and bonuses. Recently I learned that this is actually not the case and that qualification in the plan was based on total target compensation level of the employee. The first year I qualified for the plan my total compensation level was $110,520. Hardly "highly paid"

relative to the vast majority of employees working for Nortel at the time. The list contains many individuals that would not be considered "highly paid employees" at the time they qualified for the plan.

If the plan administrators were accurate when they described the qualification criteria as including paid bonuses and sales commissions, then employees qualified because in any particular year their compensations increased beyond Plan's participation threshold and not because their income level was consistently above the threshold. In this scenario it is again in no way accurate to characterize these individuals as "highly paid employees" relative to the compensation of the senior management for whom a Rabbi Trust is intended.

- **Disclosure of the Plan's risk and accuracy of information:** Minimal information about the plan (between 2000 and 2003) was made available to participants. Conference calls and PowerPoint charts were used to formally communicate the plan, but the presentations were focused on the investment benefits of participating in the plan and not the risks associated with investing in such a plan. Employees were encouraged to participate and were told it was a safe retirement strategy similar to a 401k. On many occasions these presentations provided confusing and contradictory information that, at the time, did not seem significant. In retrospect, this information was paramount in ascertaining the actual risk level of the Plan. Examples of information that was either incorrectly communicated or deliberately omitted from the presentations include: the lack of disclosure made available about the Plan risk, timing on how quickly funds could be removed from the plan and even confusion on the Plan participation requirements (see first point).

- **Availability of information:** In late 2009, Nortel Networks and Mullin TBG had knowledge of the bankruptcy planning and did not properly forewarn all of their investors with respect to the risk of their investments in the context of an eventual bankruptcy. Adequate and proper disclosure would have triggered most plan contributors to immediately withdraw their investments and avoid this current procedure. Certain executives that liquidated their Deferred Compensation accounts prior to Nortel Network's filing of Chapter 11, did so based on information that was not made available to the average Plan participant.

### Recommendations for Action by the Court

1. That the Motion and Stipulation in Docket 4638 are rejected.
2. That Mullin TBG be instructed to immediately distribute in full the Differed Compensation plan balance to each participant

Sincerely,

Elias Cagiannos