February 2, 2011

Clerk of the Court,
United States Bankruptcy Court for District of Delaware,
824 Market Street, 3rd Floor,
Wilmington, Delaware 19801

Copies via facsimile to:

Cleary Gottlieb Steen & Hamilton LLP   Attn: James Bromley
One Liberty Plaza,
New York, New York 10006
212-225-3999

Morris Nichols Arsht & Tunnel LLP   Attn: Derek C Abbott
1201 North Market St,
PO Box 1347
Wilmington, Delaware 19801
302-425-4664

**Chapter 11
Case No. 09-101138 (KG)
Nortel Networks Inc (NNI) et al**

Dear Sir or Madam,

I have received a document, labeled Docket 4638 in the Epiq files, dated 12-22-10 from the United States Bankruptcy Court, with a focus on the Nortel Networks US Deferred Compensation Plan. Please excuse my delinquency in getting this to you, however, due to recent personal circumstances I was unable to reply by your January 28 deadline. Nonetheless, I wish to oppose the entry of an order approving the Motion for an Order i) approving the stipulation ii) directing US Bank National Association to turn over property to NNI and iii) granting related relief to the Nortel Networks U.S. deferred compensation plan ("Order") and am hereby filing an Objection.

**Grounds for Objection and Rejection of the Order**

There are several reasons for requesting this Objection and that the Court reject the Motion for Order as provided in Docket 4638.

- A review of the list of 325 people who received Docket 4638, shows that it does not represent a "select group of management and highly paid employees", as stated in the Motion. Of the seventeen people who are listed as Executive Officers in the Form 10-K for 2008, only one person is listed among the 325 people and his participation is a very small part of his 2008 compensation ($46,916 in total Deferred Compensation versus a 2008 total compensation of $2,451,783). Furthermore a review of the list

of 325 people shows that there are no names of people, who have filed Claims, who could have been considered Executive Officers in the decade 1998 to 2008. By contrast, the average sized claim for the 325 people, who share the rights to the Trust of $37.9 million, is $116,662 per person, and it is known that those employees put aside portions of their compensation for several years to reach this average number of dollars. A review of the list shows that most of the people were "middle managers", and so the list does not align with the level of Executives imputed in the Wall Street Journal article of December 23, 2010 – published within hours of the filing.

- A review of the documentation and communications to the employees about the Deferred Compensation Plan is very complex. There were a lot of changes to the Plan being made in 2000, partially as a result of merging two, or more, existing Plans. However, nobody has been able to show any documentation or guidance that was offered to employees who retired before December 31, 2000 about any possibility of a claw back. Those people who retired before December 31, 2010 were simply encouraged to take advantage of a deferral plan which was represented as being very safe and very similar to a 401K Plan.

  Thereafter, the information about the Rabbi Trust remained minimal and was certainly was not highlighted until later years. Furthermore, those people who had retired had their Deferred Compensation locked into a distribution plan which could not be changed, even if the implications of a Rabbi Trust were then later fully understood. In view of the inability to change the payout structure once an employee had initiated retirement payouts, it is wrong and unreasonable to have a one sided agreement wherein the money in the Trust can be re-claimed by a debtor without granting the retiree the right to extract his money in one payment.

- By contrast, the 2009 Nortel Annual Report states that one **Executive Officer, Richard Lowe, withdrew $1.7 million from the Deferred Compensation Plan** before the filing for bankruptcy on January 14, 2009, but shortly after Nortel had recruited bankruptcy advisers. On Sept. 26, Nortel hired management consultants Ernst & Young. Around the same period, it brought in Lazard Frères investment bankers and the Cleary Gottlieb law firm from New York. **Mr. Lowe's well-timed withdrawal was almost certainly the result of insider information. Nothing concerning these actions was shared with the broader employee population.**

- Furthermore, those **employees laid off before December 31, 2008, with less than 5 years in the plan were required to receive the full balance of their deferred compensation plan immediately. But for the 30 day delay in MullinTBG distributing the account value to the participants who had been laid off during December 2008** and the timing of the bankruptcy filing, **the full balance would have already been returned** to

those former participants and subsequently unemployed individuals. At the time of the bankruptcy filing, cash was not an issue for Nortel. The company had about $2.4 billion in cash. Rather, the precise timing of the filing for bankruptcy on January 14, 2009, allowed the company to avoid paying $107 million in interest on long-term debt due January 15, 2009.

- **In addition, and most importantly, all deferral current balances under the plan are not a result of prepetition actions.** The current balances of the Deferred Compensation Plan individual accounts at MullinTBG have changed over the past two year, completely based on the individual investment choices of each participant. At a minimum, those balances in excess of the amounts as of the January 14, 2009 **should be excluded from this Order and returned to the individual participants** who directed the investments and generated the increase. Bifurcating the balances and returning amounts earned subsequent to the bankruptcy filing date is consistent with how other expenses incurred by Nortel subsequent to the filing are treated.

- Documents pertaining to the Deferred Compensation Plan contain reference to the fact that the responsibility for maintaining the Deferred Compensation Plan had been passed to Nortel Networks Corporation (NNC) – a Canadian corporation. Reference to Nortel Networks Corporation (NNC) is recorded on the Epiq website, on the leading page for Nortel, under the General Information, and says that Nortel Networks Corporation filed for bankruptcy on January 14, 2009 in the Ontario Supreme Court of Justice. Thus it is inappropriate for Nortel Networks Inc (NNI) to request the transfer, to NNI, of funds, held in Trust, for which NNI has no rights. The Trust is, or for some time has been, in the jurisdiction of NNC, and not NNI, and hence outside the Case No.09-10138 (KG) being considered by the United States Bankruptcy Court for the District of Delaware.

  It appears that a similar claim for the Trust money has been rejected by the Ontario Court, so one is forced to ask if this is just another attempt to gain control of the Trust money.

- The SEC filings for the year 2009 show that Nortel made a profit of $488 million on revenue of $4.1 billion in 2009, and that the cash and short term investments exceeded $2 billion. The Wall Street Journal article of December 23, 2010 states that Nortel has now amassed nearly $5 billion in cash, much of it from the sale of operating units – and there is a prospect of raising significant more cash from the sale of intellectual property. The article also reports that Nortel has filed an estimate of $5.7 billion in debts to resolve. Thus, Nortel may well be in a position to emerge from Chapter 11, and it is argued that money put into Trust for Retirees should not be co-mingled with all the general assets, but should be retained in the Trust with US Bank National Association until correct consideration can be given to its distribution.

- Docket 4638 makes a reference in Section C28 that Bankruptcy Rule 9019 provides that "the court may approve a compromise or settlement". Under this authority, the Third Circuit has emphasized that compromises and settlements are favored in bankruptcy. Furthermore, the District of Delaware has recognized "the consensual resolution of claims minimizes litigation and expedites the administration of the bankruptcy estate". The approval of a proposed compromise and settlement falls within the sound discretion of bankruptcy court. Furthermore, the Third Circuit has held that settlements typically reduce the "complexity and inconvenience of litigation". In view of the complexities associated with the Deferred Compensation Plan, and that the $37.9 million in Trust, is a very small portion of the assets and debt being considered (less than 1%). It appears logical to reject the Motion and Stipulation, and encourage a "compromise and settlement".

### Recommendations for Action by the Court

1. That the Order in Docket 4638 is rejected.
2. That the Trustee, in conjunction with MullinTBG, be instructed to distribute, in full, the Deferred Compensation Plan balance of any person who left Nortel prior to January 1, 2009 and who filed a validated claim regarding the Deferred Compensation Plan.
    a. That, at a minimum, where current balances in individual accounts exceed the balance as of January 14, 2009 for individuals filing a validated Claim, the Trustee, in conjunction with MullinTBG, be instructed to return and distribute the excess to those individual participants who subsequent the bankruptcy filing generated the increased balances.
3. That the Debtors are encouraged to find a "compromise and settlement" – with the reminder that the $34.9 million in Trust represents less than 1% of the total assets in review, and there are several legal issues that need to be resolved, that could be handled through a "compromise and settlement".
4. That the Trustee, in conjunction with MullinTBG, be instructed to present a plan to the Court, for the payment of the assets then held in Trust, to all the other people who are involved in the Deferred Compensation Plan.
5. That a Citizen Committee of participants in the Deferred Compensation Plan be appointed to monitor the activities recommended above.

Yours sincerely,

Scott C. Peters
5520 Claire Rose Lane, NW
Atlanta, GA  30327
Petesmo1@comcast.net