... 

Charla Crisler
3 Woody Crest Circle
Fairview, TX 75069
972-562-1956

January 31, 2011

Clerk of the Court
United States Bankruptcy Court for the District of Delaware
824 Market Street, 3rd Floor
Wilmington, Delaware 19801

Copies to:

Cleary Gottlieb Steen & Hamilton LLP
Attn: James Bromley
One Liberty Plaza
New York, New York 10006

Morris, Nichols, Arsht & Tunnel LLP
Attn: Derek C. Abbott
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801

RE: Nortel Networks U.S. Deferred Compensation Plan Status
Case No. 09-10138 (KG)
Nortel Network Inc (NNI) et al
Docket No. 4638

Dear Sir or Madam,

I am writing to **strongly object** to the Debtor's Motion regarding the Nortel Networks US Deferred Compensation Plan, labeled as Docket 4638 in the Epiq files, and dated 12-22-10 .

**Introduction and Background**

First, I must acknowledge that I am writing this on January 31, and am aware that the official deadline for filing objections has passed. Because I received the notice of the motion during the Christmas holidays, I must confess that I set it aside not realizing that I had less than 30 days to object to the motion. I pray that the court will take into account the fact that I am an average citizen with little knowledge of bankruptcy proceedings, who felt that my opinion would probably not make a difference.

Secondly, I would like to correct some misconceptions that the court may have based on the Nortel Networks filing and a Wall Street Journal article that appeared on Thursday, December 23, 2010, an article which was just brought to my attention yesterday, Sunday January 30, 2011. That article states that "Nortel Networks moved to seize $37.9 million in retirement savings socked away over 10 years by some of its top US executives." As I look over the list of 325 individuals (as shown in docket 4649, filed 12/27/10), other than myself, there were 10 to 20 names that I recognized, and

Clerk of the Court
United States Bankruptcy Court for the District of Delaware
January 31, 2011
Page 2

none of them were Executive Officers of the corporation. They were Network Architects, Software Designers, Sales Engineers, and Sales Account Executives.

As I recall, the Deferred Compensation Plan was offered to any person whose annual TTC (Total Target Compensation) was $140,000 or more. For sales personnel, the TTC included two components – base salary and commissions based on BIC (Base Incentive Compensation). TTC was determined by adding Base Salary to 100% of the Target BIC (achieving 100% of the Target BIC was not guaranteed, it was paid based on % achievement of assigned quota). The split for a sales person ranged from 80% Base Salary/20% commissions to 60% Base Salary/40% commissions. My understanding was that there were minimal risks associated with the plan. The risks that were detailed were associated with loss of equity due to the investment choices within the plan, and the fact that distribution options were chosen in advance and could not be easily changed. Early withdrawals were allowed, but were limited to 90% of the account balance. If early withdrawal was chosen, the remaining 10% of the balance would be forfeited, and the participant retained no rights to that remaining balance.

During the years that I contributed to the Deferred Compensation Plan, I was an individual contributor working as a Senior Account Executive. This position was a mid-level sales position working with a major account. I reported to three additional levels of Sales Managers (Director, Asst. VP, Account VP) before we merged into the corporate sales structure. My compensation was structured as both base pay and commission. My job duties were to develop commercial proposals and solutions to meet customer requirements. As you can see, I was several levels below the "top US Executives" characterized in the Wall Street Journal article.

My contributions to the Deferred Compensation Plan were salary and sales compensation earned in 2000, 2001, and 2002 and deferred to the plan with the intention of growing the income in a tax deferred manner until distribution of the funds upon my retirement or termination of employment with Nortel. My deferrals were to be paid quarterly over 5 years commencing at termination, which occurred May 12, 2008 during corporate down-sizing. According to plan guidelines, the first installment payment was to be paid during the first quarter following the last severance payment, which was paid on October 12, 2008. This first installment payment was processed by the fund manager, MullinTBG, and sent to Nortel for payment on January 2, 2009 prior to Nortel's filing for Chapter 11 credit protection on January 14, 2009. I was to receive that payment between January 31 and February 15, 2009. Upon filing for bankruptcy, Nortel suspended that payment, and the payment has never been received.

At no time prior to Nortel's bankruptcy filing in January 2009, was I aware that this compensation was at risk. However, I have since learned that there is clear documentation in Nortel's annual report as well as media reports in the newspapers and on TV that some Nortel Senior Executives exploited their insider knowledge of the company's true financial condition to seek early withdrawals from the Deferred Compensation Plan in the weeks immediately prior to the bankruptcy filing in January, 2009. Had this information been shared with myself and the other participants in the Deferred Compensation Plan, I would not be writing this letter today. Unfortunately, this was not the case as most of the remaining participants, including myself, were not Senior Executives, but retirees and ex-employees who were totally unaware that our savings were at extreme risk.

I can't speak for the others, but this Deferred Compensation account represents the major portion of my retirement savings from Nortel Networks. I was not eligible for a pension when I was laid off in May, 2008. My Deferred Compensation Account and my 401K Account are my retirement.

Clerk of the Court
United States Bankruptcy Court for the District of Delaware
January 31, 2011
Page 3

### Grounds for Objection and Rejection of the Order
There are several reasons for requesting this Objection and that the Court reject the Motion for Order as provided in Docket 4638:
- Nortel Networks did not restrict the Deferred Compensation Plan to a "select group of management and highly paid employees", as stated in the Motion. The accounts were offered to lower-level employees, and almost all mid-level managers (including Directors and Senior Managers).
- The Deferred Compensation Plan was compared to 401K investments presenting risks from an investment viewpoint, but not identifying risks with respect to Nortel Networks successes or failures.
- Furthermore, Nortel Networks had knowledge of the bankruptcy planning and did not properly forewarn the plan participants with respect to the risk of total loss of investment in the context of an eventual bankruptcy. Adequate and proper disclosure would have triggered most plan contributors to immediately withdraw their investments and avoid this current proceeding.
- Deferred Compensation was "earned" by employees – either through salaries or sales commissions. The only difference between these participants and other employees is that these participants chose to sacrifice and save portions of their earnings for future needs.
- Docket 4638 makes a reference in Section C28 that Bankruptcy Rule 9019 provides that "the court may approve a compromise or settlement". In view of the complexities associated with the Deferred Compensation Plan, and that the $37.9 million in the Trust is a very small portion of the assets and debts being considered (less than 1%), it appears logical to reject the Motion and Stipulation, and encourage a "compromise and settlement".

### Recommendations for Action by the Court:
1. That the Motion and Stipulation in Docket 4638 are rejected.
2. That the Debtors are encouraged to find a "compromise and settlement" – with the reminder that the $37.9 million in Trust represents less than 1% of the total assets in review, and there are several legal issues that need to be resolved that could be handled through a "compromise and settlement".
3. That the Trustee, in conjunction with Mullin TBG, be instructed to present a plan to the Court for the payment of the assets held in Trust to all the retirees and ex-employees who are participants in the Deferred Compensation Plan.
4. That a Citizen Committee of participants in the Deferred Compensation Plan be appointed to monitor the activities recommended above.

Yours sincerely,

*Charla Crisler*

Charla Crisler
Nortel Deferred Compensation Plan Participant
Employee Number 0197964
Claim number 4071 (supersedes original claim 434)