**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
----------------------------------------------------------X
                                                          :
In re                                                     :   Chapter 11
                                                          :
Nortel Networks Inc., et al.,¹                            :   Case No. 09-10138 (KG)
                                                          :
                           Debtors.                       :   Jointly Administered
                                                          :
                                                          :   Hearing date: March 9, 2011 at 9:30 a.m. (ET)
                                                          :   Responses due: February 23, 2011 at 4:00 p.m. (ET)
                                                          :
----------------------------------------------------------X
```

**DEBTORS' EIGHTEENTH OMNIBUS OBJECTION (SUBSTANTIVE)**
**TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR. P. 3007 AND**
**DEL. L.R. 3007-1 (NO LIABILITY CLAIMS, REDUCE AND ALLOW CLAIMS,**
**REDUNDANT CLAIMS, WRONG DEBTOR CLAIMS AND NO-BASIS 503(b)(9)**
**CLAIMS)**

TO THE CLAIMANTS LISTED IN **EXHIBITS A-E** ATTACHED TO THIS OBJECTION:

- **CLAIMANTS' RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND BY ANY FUTURE OBJECTION(S) THAT MAY BE FILED BY THE DEBTORS.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO THE DEBTORS' RIGHTS TO PURSUE FURTHER SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS LISTED IN EXHIBITS A-E.**

- **CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS IN EXHIBITS A-E.**

---

¹ Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

- **PLEASE NOTE THAT CLAIMANTS' NAMES MAY APPEAR IN MULTIPLE EXHIBITS.    CLAIMANTS SHOULD CHECK ALL EXHIBITS FOR THEIR NAMES.**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), hereby object (this "Objection"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to those certain claims listed on the exhibits attached hereto and incorporated by reference, namely **Exhibit A, Exhibit B**, **Exhibit C, Exhibit D** and **Exhibit E** (collectively, "Exhibits A-E").  In support of this Objection, the Debtors submit the Declaration of John J. Ray, III in Support of Debtors' Eighteenth Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No Liability Claims, Reduce and Allow Claims, Redundant Claims, Wrong Debtor Claims and No-Basis 503(b)(9) Claims) (the "Ray Declaration"), attached hereto as **Exhibit F** and incorporated by reference, and respectfully state as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 502 and 503 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

**Background**

**A.    Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only [D.I. 36].  The Debtors

continue to operate their remaining businesses and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code
on July 14, 2009 (the "CALA Petition Date"), which was consolidated and is being jointly administered with the
other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration

(the "English Proceedings") under the control of individuals from Ernst & Young LLP

(collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the

future may commence additional creditor protection, insolvency and dissolution proceedings

around the world.

6.      On June 19, 2009, Nortel announced that it was advancing in discussions with

external parties to sell its businesses and that it would assess other restructuring alternatives for

its businesses in the event that it were unable to maximize value through sales.  Since then,

Nortel has sold many of its business units and assets to various purchasers.  Efforts continue to

be made with respect to the realization of value from Nortel's remaining assets.  For further

information regarding these chapter 11 cases, reference may be made to the Monthly Operating

Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**B.      Bar Date and Schedules**

7.      On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA) filed

their Schedules of Assets and Liabilities and Statements of Financial Affairs [D.I.s 616-627, 801-

810].  On September 11, 2009, the Debtors filed Schedules of Assets and Liabilities and

Statements of Financial Affairs for NN CALA (the "NN CALA Schedules") [D.I. 1477, 1478].

On November 4, 2009, the Debtors (other than NN CALA) filed their Amended Schedules of

Assets and Liabilities and Amended Statements of Financial Affairs (together with the NN

CALA Schedules, referred to as the "Schedules") [D.I.s 1811-1825].

---

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A.,
Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel
Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks
B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel
Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks
Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

8.      On August 4, 2009, the Court entered an order (the "Bar Date Order")

establishing September 30, 2009 at 4:00 p.m. (Eastern Time) (the "General Bar Date") as the last

date for all creditors holding a "claim" against the Debtors (other than NN CALA) to file and

serve a written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date

Order.  On December 3, 2009, the Court entered an order establishing January 25, 2010 at 4:00

p.m. (Eastern Time) (the "CALA Bar Date") as the general claims bar date for all creditors

holding a claim against NN CALA to file and serve written proofs of claim [D.I.  2059].

## C.     The Claims Resolution Process

9.      In the ordinary course of business, the Debtors maintain books and records (the

"Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts

owed to their creditors.

10.     The Debtors' claims, notice and balloting agent, Epiq Bankruptcy Solutions, LLC,

has prepared and maintains a register (the "Claims Register") of all proofs of claim filed against

the Debtors in these chapter 11 cases.  As of January 31, 2011, the Claims Register consisted of

approximately 7,580 proofs of claim.  The Debtors and their advisors are comprehensively

reviewing and reconciling all claims, including both the claims listed on the Schedules and the

claims asserted in the proofs of claim (including any supporting documentation).  The Debtors

also are comparing the claims asserted in the proofs of claim with the Books and Records to

determine the validity of the asserted claims.

11.     This reconciliation process includes identifying particular categories of claims

that may be targeted for disallowance, reduction and allowance or reclassification and allowance.

To reduce the number of claims, and to avoid possible double recovery or otherwise improper

recovery by claimants, the Debtors continue to file omnibus objections to such categories of

claims if and where warranted.  This Objection is one such omnibus objection.

12.     On December 14, 2009, the Court entered an order granting the Debtors relief

from the requirements of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1f(i) and (ii) [D.I. 2125].

13.     On September 16, 2010, the Court entered an order approving a cross-border

claims protocol (the "Claims Protocol") establishing procedures to promote coordination and

cooperation between the Debtors and the Canadian Debtors in the resolution of certain claims

filed in these chapter 11 cases and the Canadian Proceedings that raise cross-border issues [D.I.

3956].

## Relief Requested

14.     For the reasons set forth below, the Debtors object to each of the claims identified

in **Exhibits A-E**.  By this Objection, the Debtors respectfully request that the Court enter an

order pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule

3007-1 reducing, modifying or disallowing in full, as applicable, the claims identified in

**Exhibits A-E**:

    a.     Each claim identified in **Exhibit A** (the "No Liability Claims") should be disallowed in full as a claim for which the Debtors are not liable because the claim is supported neither by the documentation and information provided by the claimant, if any, nor by the Debtors' Books and Records or for the reasons otherwise noted in **Exhibit A**.

    b.     Each claim identified in **Exhibit B** (the "Reduce and Allow Claims") should be reduced and allowed in the amount identified under the column labeled "Modified Claim Amount" for one or more of the following reasons: (i) part of the claimed amount appears to relate to invoices issued to an entity that is not a Debtor in these chapter 11 cases (the "Partial Non-Debtor Invoice Claims"), (ii) part of the claimed amount is neither supported by the documentation or other evidence provided by the claimant, if any, nor by the Debtors' Books and Records (the "Partial No Supporting Documentation Claim"), (iii) part of the claimed amount relates to invoices that are also included in another claim (the "Partial Redundant Invoice Claims"), (iv) part of the claimed amount relates to

6

invoices or asserted liabilities for which the Debtors' Books and Records indicate that no amounts are due and owing (the "Partial No Liability Claims") or (v) part of the claimed amount has been satisfied prior to the Petition Date and should not be paid again (the "Partially Satisfied Claims").

c.    Each claim identified in **Exhibit C** (the "Redundant Claims") should be disallowed in full because the claim is redundant of another claim filed against a Debtor asserting the same purported liability.

d.    Each claim identified in **Exhibit D** (the "Wrong Debtor Claims") fails to identify or incorrectly identifies a Debtor that is liable for all or part of the claim, and the Debtors seek to modify the claim to designate the appropriate Debtor against which the claim, or portion thereof, is asserted and allow such claim as so modified.

e.    Each claim identified in **Exhibit E** (the "No-Basis 503(b)(9) Claims") should be disallowed in full because the claim does not meet the requirements of section 503(b)(9) of the Bankruptcy Code, and is redundant of another filed claim based on the same purported liability.

## Basis for Relief

15.    Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5) and 101(10).

16.    When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  See In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re Int'l Match Corp., 69 F. 2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist).  Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity.  In re Allegheny Int'l, Inc., 954 F.2d at 173.  A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie* validity.  Id.  In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency.  Id. at 173-74.  Once the objecting

party produces such evidence, the burden shifts back to the claimant to prove the validity of his

or her claim by a preponderance of the evidence.  Id.  The burden of persuasion is always on the

claimant.  Id.

**A.    No Liability Claims (Exhibit A)**

17.    The Debtors object to the No Liability Claims identified in **Exhibit A** because

each asserts a claim for which there is no amount due and owing by any Debtor to the claimant.

18.    The No Liability Claims should be disallowed in full because, based on careful

review of the Books and Records, the Schedules and the proofs of claim, including supporting

documentation provided by the claimants, if any, the Debtors have determined that there is no

amount due and owing to the claimants with respect to such claims.

19.    Accordingly, the Debtors seek to disallow and expunge each No Liability Claim

in its entirety.

**B.    Reduce and Allow Claims (Exhibit B)**

20.    The Debtors object to the Reduce and Allow Claims (comprising the Partial Non-

Debtor Invoice Claim, the Partial No Supporting Documentation Claim, the Partial Redundant

Invoice Claims, the Partial No Liability Claims and the Partially Satisfied Claims) identified in

**Exhibit B** because the amounts asserted in these claims include amounts that are (i) not

liabilities of the Debtors or their estates or (ii) redundant of amounts already asserted against the

Debtors or their estates.  Therefore, the Reduce and Allow Claims should be reduced to the

amounts identified in the column labeled "Modified Claim Amount" for the reasons set forth in

the column labeled "Reason for Modification."

21.    With respect to each of the Reduce and Allow Claims, the Debtors and/or their

advisors have carefully reviewed the Books and Records, the Schedules, the Claims Register and

the proof of claim, including supporting documentation provided by the claimant, if any, and

have determined that each Reduce and Allow Claim asserts a liability in excess of the amount due and owing to the claimant.

22.     The Partial Non-Debtor Invoice Claim overstates the Debtors' liability by an amount that appears to relate to liabilities of certain non-Debtor entities.  The proof of claim for this claim includes invoices that appear to relate to transactions with an entity that is not a Debtor in these chapter 11 cases.

23.     The Partial No Supporting Documentation Claim overstates the Debtors' liability by an amount that is not supported by any documentation or other evidence provided by the claimant.  In addition, based on careful review of the Books and Records, the Debtors have determined that such overstated portion of the Partial No Supporting Documentation Claim is not supported by the Debtors' Books and Records.  To the extent that the claimant is permitted to amend the proof of claim or otherwise provides documentation or other evidence supporting the overstated portion of the claim, the Debtors respectfully request relief from the requirements of Local Rule 3007-1(f)(iii), and the Court's permission to submit a supplemental objection, as necessary.

24.     The Partial Redundant Invoice Claims overstate the Debtors' liability by an amount that relates to the same liability asserted in another claim identified in the column labeled "Reason for Modification" (the "Remaining Liability").  Where the liability asserted in the Partial Redundant Invoice Claim is asserted in another claim filed by the claimant or an affiliate of the claimant, the Debtors have determined, based on careful review of the Books and Records, the Schedules, the Claims Register and the proof of claim, including supporting documentation provided by the claimants, if any, that the liability would be owed, if at all, to the claimant that

filed the claim containing the Remaining Liability (the "Remaining Liability Claim"), as

identified in the column labeled "Reason for Modification."

25.     Unless included in other Exhibits to this Objection, the Remaining Liability

Claims will be unaffected by the relief requested in this Objection, and each of the claimants'

rights to assert those liabilities against the Debtors' estates will be preserved, subject to the

Debtors' reservation of their rights to object to the Remaining Liability Claim and other claims

on any and all grounds, whether legal, factual, procedural, substantive or non-substantive.

26.     The Partial No Liability Claims overstate the Debtors' liability by an amount that

relates to invoices or asserted liabilities that, based on careful review of the Books and Records,

the Schedules and the proofs of claim, including supporting documentation provided by the

claimants, if any, the Debtors have determined are not due and owing to the claimants.

27.     The Partially Satisfied Claims overstate the Debtors' liability by an amount that

was satisfied before the Petition Date and should not be paid again.  The Debtors and/or their

advisors have carefully reviewed the Books and Records, the Schedules, and the proof of claim,

including supporting documentation provided by the claimants, if any, and have determined that

the portions of the Partially Satisfied Claims described in **Exhibit B** were satisfied before the

Petition Date because the Debtors made a payment or payments with respect to the asserted

liability, the details of which are provided in the column labeled "Reason for Modification" in

accordance with Local Rule 3007-1(e)(iii)(J)(2).

28.     For the reasons stated above, the Debtors seek to (i) disallow the overstated

amounts asserted in the Reduce and Allow Claims, (ii) reduce such claims to the Modified Claim

Amounts identified in **Exhibit B** and (iii) allow such claims for the Modified Claim Amounts.

Unless the Reduce and Allow Claims are reduced as requested herein, each of the claimants may

receive a disproportionately large distribution in these chapter 11 cases in contravention of the

provisions and policies of the Bankruptcy Code and to the direct detriment of the Debtors'

estates and other creditors.

**C.      Redundant Claims (Exhibit C)**

29.      The Debtors object to the Redundant Claims identified in **Exhibit C** because the

claims are redundant of a separate claim filed by the same claimant or affiliates of such claimant

asserting the same purported liability.

30.      With respect to each of the Redundant Claims, the Debtors and/or their advisors

have carefully reviewed the Claims Register, the Books and Records, the Schedules and the

proofs of claim, including supporting documentation provided by the claimant, if any.  Based on

this review, the Debtors have identified at least one claim corresponding to each of the

Redundant Claims which asserts the same purported liability, either against the same Debtor or

against another Debtor in these chapter 11 cases, which claims are identified in **Exhibit C** in the

column labeled "Corresponding Remaining Claim" (the "Corresponding Remaining Claims").

Where the Redundant Claim and the Corresponding Remaining Claim are filed against different

Debtors, the Debtors have determined, based on their review of relevant information, that the

Corresponding Remaining Claims identify the correct Debtor entity that may be liable, if at all,

for the underlying liability.

31.      Accordingly, the Debtors seek to disallow and expunge each Redundant Claim in

its entirety and thereby limit the same alleged liability against a single Debtor's estate to a single

claim.  Unless the Redundant Claims are disallowed, the claimants may obtain double recovery

and/or a disproportionately large distribution in these chapter 11 cases in contravention of the

11

provisions and policies of the Bankruptcy Code and to the direct detriment of the Debtors'

estates and other creditors.

32.     Unless included in other Exhibits to this Objection, the Corresponding Remaining

Claims will be unaffected by the relief requested in this Objection, and each claimant's right to

assert those liabilities against the Debtors' estates will be preserved, subject to the Debtors'

reservation of their rights to object to the Corresponding Remaining Claims and other claims on

any and all grounds, whether legal, factual, procedural, substantive or non-substantive.

**D.     Wrong Debtor Claims (Exhibit D)**

33.     The Debtors object to the Wrong Debtor Claims identified in **Exhibit D** because

the claims fail to identify or incorrectly identify the Debtor that is liable for the claim, or a

portion thereof, as indicated on **Exhibit D**.

34.     With respect to each of the Wrong Debtor Claims, the Debtors and/or their

advisors have carefully reviewed the Books and Records, the Schedules and the proof of claim,

including supporting documentation provided by the claimant, if any.  Based on this review, the

Debtors have determined that the Wrong Debtor Claims, or a portion of such claims, should be

asserted against the Debtor identified in the column labeled "New Case Info and Identified

Debtor" in **Exhibit D** (the "Identified Debtor").

35.     The Debtors hereby seek entry of an order to correct the Debtor against which the

Wrong Debtor Claim, or portion thereof, is asserted and to allow such Wrong Debtor Claim as

modified.  If the relief sought in this Objection is granted, the claimant that filed the Wrong

Debtor Claim will have an allowed claim against the Identified Debtor for the amount stated in

**Exhibit D**.

**E.    No-Basis 503(b)(9) Claims (Exhibit E)**

36.    The Debtors object to the No-Basis 503(b)(9) Claims identified in **Exhibit E** because each of these claims (i) was filed on a section 503(b)(9) claim form but does not meet the statutory requirements of section 503(b)(9) of the Bankruptcy Code, and (ii) is redundant of at least one non-503(b)(9) claim filed by the same claimant based on the same purported liability.

37.    Section 503(b)(9) of the Bankruptcy Code provides administrative expense priority to the claims for the value of any goods received by a debtor within 20 days before the commencement of a chapter 11 case to the extent that such goods have been sold to the debtor in the debtor's ordinary course of business.  11 U.S.C. § 503(b)(9).

38.    With respect to each of the No-Basis 503(b)(9) Claims, the Debtors and/or their advisors have carefully reviewed the Books and Records, the Schedules and the proof of claim, including supporting documentation provided by the claimant, if any.  None of the No-Basis 503(b)(9) Claims establishes, nor do the Books and Records or the Schedules indicate, the claimant's right to payment for the value of goods sold to the Debtors in the Debtors' ordinary course of business that were received by the Debtors within 20 days before the Petition Date or the CALA Petition Date, as applicable.

39.    In addition, based on their review of the Claims Register and the relevant proofs of claim, the Debtors have determined that each of the claimants or an affiliate of the claimant who filed a No-Basis 503(b)(9) Claim also filed at least one claim on the general proof of claim form (the "Corresponding Non-503(b)(9) Claims"), which is identified under the column labeled "Corresponding Non-503(b)(9) Claim" in **Exhibit E**.  Each of the Corresponding Non-503(b)(9) Claims asserts the same amount of recovery based on the same purported liability as that asserted in the No-Basis 503(b)(9) Claims.

40.     Accordingly, the Debtors seek to disallow and expunge each No-Basis 503(b)(9)

Claim in its entirety.  Unless the No-Basis 503(b)(9) Claims are disallowed, the claimants may

obtain double recovery and/or distributions at a higher priority than the distributions from the

Debtors' estates to which they would otherwise be entitled.

41.     Unless listed on another Exhibit in this Objection, the Corresponding Non-

503(b)(9) Claims will be unaffected by the relief requested in this Objection, and each claimant's

right to assert these liabilities against the Debtors' estates will be preserved, subject to the

Debtors' reservation of their rights to object to the Corresponding Non-503(b)(9) Claims on any

and all grounds, whether legal, factual, procedural, substantive or non-substantive.

### Separate Contested Matters

42.     To the extent that a response is filed regarding any claim identified in **Exhibits A-**
**E** and the Debtors are unable to resolve the response, such claim, and the objection to such claim

asserted by the Debtors herein, shall constitute a separate contested matter as contemplated by

Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in this

Objection shall be deemed a separate order with respect to each claim.

### Responses to Omnibus Objection

43.     To contest this Objection, a claimant must file and serve a written response to this

Objection (a "Response") so that it is received no later than **4:00 p.m. (Eastern Time) on**

**February 23, 2011** (the "Response Deadline").  Every Response must be filed with:

> The Office of the Clerk
> The United States Bankruptcy Court for the District of Delaware
> 824 Market Street, Wilmington, Delaware 19801

and served upon the following entities so that the Response is received no later than the

Response Deadline, at the following addresses:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Attn: Deborah M. Buell and Lisa M. Schweitzer

-and-

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, P.O. Box 1347
Wilmington, Delaware 19899-1347
Attn: Derek C. Abbott

-and-

Benesch, Friedlander, Coplan & Aronoff LLP
222 Delaware Avenue, Suite 801
Wilmington, DE 19899
Attn: Raymond H. Lemisch (for claim no. 426 only)

44.    Every Response to this Objection must contain, at a minimum, the following

information:

a.    A caption setting forth the name of the Court, the name of the Debtors, the case number, and the title of this Objection;

b.    The name of the claimant, the claim number, and a description of the basis for the amount of the claim;

c.    The specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;

d.    Any supporting documentation, to the extent that it was not included in the proof of claim previously filed with the clerk or claims agent, upon which the claimant intends to rely to support the basis for and amounts asserted in the proof of claim; and

e.    The name, address, telephone number and fax number of the person(s) (which may be the claimant or the claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the claim or this Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim on behalf of the claimant.

45.     If a claimant fails to file and serve a timely Response by the Response Deadline,

the Debtors may present to the Court an appropriate order reducing, modifying or disallowing in

full, as applicable, the claim, without further notice to the claimant or a hearing.

### Replies to Responses

46.     The Debtors may, at their option, file and serve a reply to any response so that it

is received by the claimant (or the claimant's counsel, if represented) no later than three (3) days

prior to the hearing.

### Adjournment of Hearing

47.     The Debtors reserve the right to seek an adjournment of the hearing on any

Responses to this Objection.  In the event that the Debtors seek such an adjournment, it will be

noted on the notice of agenda for the hearing, and such agenda will be served on the affected

claimant by serving the person designated in the Response.

### Reservation of Rights

48.     The Debtors expressly reserve the right to amend, modify or supplement this

Objection.  Should one or more of the grounds of objection stated in this Objection be dismissed or

overruled, the Debtors reserve the right to object to each of the claims on any other grounds that the

Debtors discover or elect to pursue.  This Objection sets out substantive objections to the claims

identified in **Exhibits A-E**.  The Debtors reserve their right to assert non-substantive and/or one or

more other substantive objections to the claims identified in **Exhibits A-E** at a later time.

49.     Notwithstanding anything contained in this Objection or the Exhibits attached

hereto, nothing herein shall be construed as a waiver of any rights that the Debtors may have to

(a) commence avoidance actions under the applicable sections of the Bankruptcy Code,

including, but not limited to, sections 547 and 548 of the Bankruptcy Code, against the claimants

subject to this Objection, (b) enforce the Debtors' rights of setoff against the claimants relating to

such avoidance actions, or (c) seek disallowance pursuant to section 502(d) of the Bankruptcy Code of claims of the claimants that are subject to such avoidance actions.

### Relief from Amended Bankruptcy Rule 3007

50.    Notwithstanding the *General Order Regarding Applicability of Rule 3007(c) of the Amended Federal Rules of Bankruptcy Procedure* entered by Judge Mary F. Walrath, Chief United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, on November 27, 2007, to the extent that the new requirements of amended Bankruptcy Rule 3007, as effective on December 1, 2007, apply, the Debtors seek relief from those requirements.

### No Prior Request

51.    No prior request for the relief sought herein has been made to this or any other court.

### Notice

52.    Notice of this Objection has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) each of the parties listed in **Exhibits A-E** and (v) the general service list established in these chapter 11 cases.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

*[Remainder of the page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order

substantially in the form attached hereto as **Exhibit G** reducing, modifying or disallowing in full,

as applicable, each of the claims identified in **Exhibits A-E** as requested herein, and (ii) grant

such other and further relief as is just and proper.

Dated:  February 4, 2011    CLEARY GOTTLIEB STEEN & HAMILTON LLP
   Wilmington, Delaware

         Deborah M. Buell (admitted *pro hac vice*)
         James L. Bromley (admitted *pro hac vice*)
         Lisa M. Schweitzer (admitted *pro hac vice*)
         One Liberty Plaza
         New York, New York 10006
         Telephone:  (212) 225-3505
         Facsimile:  (212) 225-3999

          - and -

         MORRIS, NICHOLS, ARSHT & TUNNELL LLP

         */s/ Ann C. Cordo*
         Derek C. Abbott (No. 3376)
         Eric D. Schwartz (No. 3134)
         Ann C. Cordo (No. 4817)
         Alissa T. Gazze (No. 5338)
         1201 North Market Street
         P.O. Box 1347
         Wilmington, Delaware 19801
         Telephone:  (302) 658-9200
         Facsimile: (302) 658-3989

         *Counsel for the Debtors*
         *and Debtors-in-Possession*
         *other than with respect to the Objection to Claim 426*

          - and -

BENESCH, FRIEDLANDER, COPLAN & ARONOFF
LLP


*/s/ Raymond H. Lemisch*
Raymond H. Lemisch, Esq. (No. 4204)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012

*Counsel for the Debtors*
*and Debtors-in-Possession*
*with respect to the Objection to Claim 426*