**Anthony D. Perez and Lisa A. Perez**
23 Maryetta Court
Syosset, NY 11791
(H) (516) 496-9315
tony.perez100@gmail.com



January 31, 2011

Clerk of the Court
United States Bankruptcy Court for District of Delaware,
824 Market Street, 3rd Floor
Wilmington, DE 19801

Copies to:

Cleary Gottlieb Steen & Hamilton LLP     Attn: James Bromley
One Liberty Plaza
New York, NY 10006

Morris Nichols Arsht & Tunnel LLP     Attn: Derek C. Abbott
1201 North Market Street
PO Box 1347
Wilmington, DE 19801

<u>Case No. 09-101138 (KG)</u>
<u>Nortel Networks Inc (NNI) et al</u>

Dear Sir or Madam,

I have received a document, labeled Docket 4638 in the Epiq files, dated 12-22-10 from the United States Bankruptcy Court, with a focus on the Nortel Networks US Deferred Compensation plan. I wish to file an Objection to the filing, and in particular to the Motion and Stipulation, as received.

<u>Grounds for Objection and Rejection of Motion and Stipulation</u>

1. While the spirit of the law under which the Nortel Networks Deferred Compensation Plan (DCP) may have targeted "a select group of management", the plan at Nortel was not limited to such. I participated in the plan from approximately 2002 through 2008, and I never held a management position – I was a sales representative ("Account Manager") that entire time. My understanding is that other courts have found the common availability of such a plan, such as the DCP, to the rank and file, to be grounds to reject the turnover of these funds to the secured creditors.

2. The monies I deferred from my base salary (ranging from $100K to $115K during that period) and my commissions were targeted primarily for my children's College educations. I was fairly lucky with my oldest, having schedule withdrawals at annual intervals from 2005 through 2008

helping to make her tuition payments. Unfortunately I had to scramble in her final semester (Spring 2009) as that scheduled deferral was frozen by Nortel.

If this Motion and Stipulation is not over ruled, we will not have the same luck with my son, scheduled to begin college in Fall 2012; the monies set aside for him (approximate $200K in Dec 2008 when I completed the process for early withdrawal (see below)), would have gone a long way (even after the 10% early withdrawal penalty and income taxes) towards helping pay for his college education.

3. I made a valid and legal attempt to withdraw my funds from the plan in December 2008, prepared to take the penalty for early withdrawal (I believe it was 10%), but the plan's fine print did not allow for the release of the funds until the third week of January 2009 – just a week after Nortel's management filed bankruptcy to avoid a bond payment. If I had had completed my withdrawal claim a few days earlier (prior to 01-Dec-08), I would have dodged this catastrophe and received my funds prior to 31-Dec-08.

4. There have been many victims in this tragic destruction of a once-fine institution: employees, retirees, and survivors of the former, and I am sure many business partners of Nortel have also been hurt. But as I look at the funds that were raised through the liquidation of Nortel's many business, it appears to me that the creditors have come out way ahead of what they probably first expected. I don't know how close they've come to 100% restitution, but it seems that they've done very well. Spreading this $37.9 million dollars across those creditors will not make a big difference relative to the $5B (plus the potential $1B intellectual property yet to be liquidated) they will receive, whereas this money will make a huge difference to the 325 rank and file and middle management, and their families.

5. I am not a lawyer or a bankruptcy expert, and therefore it is unclear to me who – if anyone – has been an advocate for the DCP participants during this process; in fact it seems to me that no one has. And therefore I wonder if anyone has been proposing any compromises. While I would like to see complete restitution on my investment, as last reflected by Mullin TBG in Q4-2010, I think some compromises might include:
a) Restitution of original deferred salary and commissions without any investment growth; or
b) The opposite: restitution of the investment growth over the original deferred pay
c) Some other negotiation/compromise based on similar settlements

**Recommendation for Action**

1. That the Motion and Stipulation are rejected.
2. That the Debtors are encouraged to find a "compromise and settlement"
3. That the Trustee, in conjunction with Mullin TBG, be instructed to present a plan to the Court, for the payment of the assets held in Trust to all the other people who are involved in the Deferred Compensation Plan who submitted valid Claims

Sincerely,

Anthony D. Perez