February 4th, 2011

Clerk of the Court,
United States Bankruptcy Court for District of Delaware,
824 Market Street, 3rd Floor,
Wilmington, Delaware 19801

Copies to:

Cleary Gottlieb Steen & Hamilton LLP    Attn: James Bromley
One Liberty Plaza,
New York, New York 10006

Morris Nichols Arsht & Tunnel LLP    Attn: Derek C Abbott
1201 North Market St,
PO Box 1347
Wilmington, Delaware 19801

                                    Case No. 09-10138 (KG)
                                    Nortel Networks Inc (NNI) et al

Dear Court Clerk,

I wish to file an Objection to the Motion and Stipulation requested for the disposition of the funds contained in the Nortel Networks US Deferred Compensation Plan specified in the document labeled Docket 4638 in the Epiq files, dated 12-22-10 from the United States Bankruptcy Court. As a 33 year employee of Nortel who made small contributions of a portion of my earned income to this plan, the concept that these funds, rightfully earned during employment, could be taken and blended with general corporate assets for the disposal of company debt is both morally wrong and extremely disappointing.

## Grounds for Objection and Rejection of Motion and Stipulation

There are many reasons to request that the Court reject the Motion and Stipulation as provided in Docket 4638.

- In my final position with Nortel, I was a manager of field sales employees, a middle management position, certainly not one that might be considered as part of a "select group of management" nor a "highly paid employee". In fact, most people shown as participants in Docket 4638 do not represent a "select group of management and highly paid employees" as stated in the Motion. The truth is, only one person listed on Docket 4638 was an Executive Officer with Nortel Networks as proven by the Form10-K filed in 2008. Furthermore, of the list of 325 people on the docket, none of the people who have filed Claims, were or could have been considered Executive Officers in 10 years prior to the filing. A review of the list shows that most of the people were "middle managers" like myself and so the list does not align with the level of executives implied by the Wall Street Journal article of December 23, 2010 and published immediately after this filing. Nortel is attempting to mislead the court with these statements.

- I joined the plan in early 2003 and at that time, elected a lump sum withdrawal for January of 2010. I was regularly encouraged by Nortel to supplement my retirement savings by investing in this manner. I have account statements, representing many years, published by the investment management company. None of these statements or information refers to a Rabbi Trust nor do they provide any warning that the investment was not as safe as a 401K account. It is wrong and unreasonable to have a one sided agreement wherein the money in the Trust can be re-claimed by debtors without granting the former employee the right to extract their funds. Evidence suggests that many high ranking Nortel employees used their insider knowledge to withdraw their savings prior to the bankruptcy filing and may have encouraged others to do so as well. The 2009 Nortel Annual Report states that an Executive Officer withdrew $1.7 million from a deferred compensation plan shortly before the filing for bankruptcy on January 14, 2009. The court should review the management company records for this potential abuse by many others. The balance of the funds held today were, for the most part, invested by the hard working employees that made Nortel successful for many years and should not be penalized for mismanagement by executives. Many former Nortel employees were left without jobs, with substantially reduced incomes

or retirement benefits or both, and do not deserve to have more of their earnings forcibly removed to pay Nortel's debts.

- The documents pertaining to the Deferred Compensation Plan contains reference to the fact that the responsibility for maintaining the plan had been passed to Nortel Networks Corporation (NNC), a Canadian corporation. Reference to Nortel Networks Corporation (NNC) is recorded on the Epiq website, on the leading page for Nortel, under the General Information, and says that Nortel Networks Corporation filed for bankruptcy on January 14, 2009 in the Ontario Supreme Court of Justice. We believe it is inappropriate for Nortel Networks Inc (NNI) to request the transfer, to NNI, of funds, held in Trust for which NNI has no rights. The Trust is, or for some time has been in the jurisdiction of NNC, and not NNI, and hence outside the Case No.09-10138 (KG) being considered by the United States Bankruptcy Court for the District of Delaware. It appears that a similar claim for the Trust money has been rejected by the Ontario Court, so we believe this is just another attempt to gain control of the Trust money.

- Information currently available to the public states that Nortel has raised nearly $5 billion in cash, from the sale of operating units and, in addition, there is a prospect of raising significantly more cash from the sale of intellectual property. The article also reports that Nortel has filed an estimate of $5.7 billion in debts to resolve. Thus, Nortel is in a position to emerge from Chapter 11, and we argue that money put into Trust for Retirees savings should not be added to the general assets, but retained in the Trust with US Bank National Association until correct consideration can be given to its distribution.

- Docket 4638 makes a reference that Bankruptcy Rule 9019 provides that "the court may approve a compromise or settlement". Under this authority, the Third Circuit has emphasized that compromises and settlements are favored in bankruptcy. Furthermore, the District of Delaware has recognized "the consensual resolution of claims minimizes litigation and expedites the administration of the bankruptcy estate". The approval of a proposed compromise and settlement falls within the sound discretion of bankruptcy court. Furthermore, the Third Circuit has held that settlements typically reduce the "complexity and inconvenience of litigation". In view of the complexities associated with the Deferred Compensation Plan, and that the $37.9 million in Trust is a very small portion of the assets and debt being considered (less than 1 %), it is logical to reject the Motion and Stipulation, and encourage a "compromise and settlement".

Recommendations for Action by the Court

1. That the Motion and Stipulation in Docket 4638 are rejected.
2. That the Debtors are encouraged to find a "compromise and settlement" with the reminder that the $34.9 million in Trust represents less than 1 % of the total assets in review.
3. That the Trustee, in conjunction with Mullin TBG, be instructed to present a plan to the Court, for the payment of the assets held in Trust, to all the retirees and ex-employees who are involved in the Deferred Compensation Plan.
4. A Citizen Committee of participants in the Deferred Compensation Plan is appointed to monitor the activities recommended above.

I acknowledge that my objection was not filed prior to the deadline given in the initial motion document, however, I plead with the court to recognize this petition. With the untimely December 22, 2010 publication of notification, I was traveling with family for the holidays and did not receive my mail until mid-January, at which time I began a heavy period of travel for my current employment.

Sincerely,

Samuel Layne
Nortel Deferred Compensation Participant
Nortel Networks Employee Number 0204937
Claim number 4469