January 31, 2011

Clerk of the Court
United States Bankruptcy Court for District of Delaware
824 Market Street, 3rd Floor
Wilmington, Delaware 19801



Copies to:

Cleary Gottieb Steen & Hamilton LLP   Attn: James Bromley
One Liberty Plaza
New York, New York 10006

Morris Nichols Arst & Trunnel LLP    Attn: Derek C Abbott
1201 North Market St.
PO Box 1347
Wilmington, Delaware 19801

**Case NO. 09-10138 (KG)**
**Nortel Networks Inc (NNI) et al**

Dear Sir or Madam,

I have received a document, labeled Docket 4638 in the Epic files, dated 12-22-10 from the United States Bankruptcy Court, with a focus on the Nortel Network US Deferred Compensation Plan. I wish to file an Objection to the filing and oppose the entry of an order approving the Motion for an Order i) approving the stipulation ii) directing US Bank National Association to turn over the property to NNI and iii) granting related relief to the Nortel Networks U.S. deferred compensation plan ("Order") and am hereby filing an objection.

**Grounds for Object**
There are several reasons for request, in the Objection, that the Court rejects the Motion of Order as provided in Docket 4638.

- A review of the listed of 325 people who received Docket 4638, shows that it does not represent a "select group of management and highly paid employees". As stated in the Motion. Of the seventeen people who are listed as Executives Officers in the Form 10-K for 2008, only on person is listed among the 325 people, and his participation is a very small part of his 2008 compensation ($46,916 in total Deferred Compensation versus a 2008 total compensation of $2,451,783). Furthermore a review of the list of 325 people shows that there are no names of people who have filed Claims, who could have been considered Executive Officers in the decade 1998 to 2008. By contrast, the average sized claim for the 325 people, who share the rights to the Trust of $37.9 million, is $116,662 per person and it is known that those employees put aside portions of

their personal compensation for many years to reach this average number of dollars. A review of the list shows that most of the people were "middle manager" and so the list does not align with the level of Executives implied by the Wall Street Journal article of December 23, 2010 – published within hours of the filing.

- By contrast, the 2009 Nortel Annual Report states the one Executive Officer, Richard Lowe, withdrew $1.7 million from the deferred Compensation Plan before the filing for bankruptcy on January 14, 2009, but shortly after Nortel Networks had recruited bankruptcy advisers. On September 26, 2008 Nortel hired management consultants Ernst & Young. Around the same period, it brought in Lazard Freres investment bankers and the Cleary Gottieb law firm from New York. Mr. Lowe's well timed withdrawal was almost certainly the result of insider information. Nothing concerning these actions was shared with the broader employee population.

- A review of the documentation pertaining to the Deferred Compensation Plan contain reference to the fact that the responsibility for maintaining the Deferred Compensation Plan had been passed to Nortel Networks Corporation (NNC) – a Canadian corporation. Reference to Nortel Networks Corporation (NNC) is recorded on the Epiq website, on the leading page for Nortel, under the General information, and says that Nortel Networks Corporation filed for bankruptcy on January 14, 2009 in the Ontario Supreme Court of Justice. Thus it is inappropriate for Nortel Networks Inc (NNI) to request the transfer, to NNI, of funds, held in Trust for which NNI has no rights. The Trust is, or for some time had been, in the jurisdiction of NNC, and not NNI, and hence outside the Case 09-10138 (KG) being considered by the United States Bankruptcy Court for the District of Delaware.

    It appears that a similar claim for the Trust money has been rejected by the Ontario Court, so one if forced to ask if this is just another attempt to gain control of the Trust money.

- The SEC filings for the year 2009 show that Nortel Networks made profits of $488 million and revenues of $4.1 billion in 2009, and that the cash short term investments exceeded $2 billion. The Wall Street Journal article of December 23, 2010 states that Nortel has now amassed nearly $5 billion in cash, much of it from the sale of operating units – and there is a prospect of raising significant more cash from the sale of intellectual property. The article also reports that Nortel has filed an estimated of $5.7 billion in debts to resolve. Thus, Nortel may well be in a position to emerge from Chapter 11, and it is argued that money put into Trust for Retires savings should not be co-mingled with all the general assets, but should be retained in the Trust with US Bank National Association until correct consideration can be given to its distribution.

- Docket 4638 makes a reference in Section C28 that Bankruptcy Rule 9019 provides that "the court may approved a compromise or settlement". Under this

authority, the Third Circuit has emphasized that compromises and settlements are favored in bankruptcy. Furthermore, the District of Delaware has recognized "the consensual resolution of claims minimizes litigation and expedites the administration of the bankruptcy estate". The approval of a proposed compromise and settlement falls within the sound discretion of bankruptcy court. Furthermore, the Third Circuit has held that settlements typically reduce the "complexity and inconvenience of litigation". In view of the complexities associated with the Deferred Compensation Plan, and the $37.8 million in Trust is a very small portion of the assets and dept being encouraged a "compromise and settlement".

Recommended for Action by the Court

1) That the Motion and Stipulation in Docket 4638 are rejected.
2) That the Debtors and encourages to find a "compromise and settlement with the reminder that the $34.9 million in Trust represents less than 1% of the total assets in review, and the are several legal issues that need to be resolved that could be handled through a "compromise and settlement".
3) That the Trustee, in conjunction with Mullin TBG, be instructed to present a plan to the court, for the payment of the assets then held in Trust, to all the retirees and ex-employees who are involved in the Deferred Compensation Plan.
4) A Citizen Committee of participants in the Deferred Compensation Plan is appointed to monitor the activities recommended above.

Yours sincerely,

Michael Heslop
Nortel Deferred Compensation Plan Participant