IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| NORTEL NETWORKS, INC., *et al.*[1] | ) ) ) | Case No. 09-10138 (KG) |
| Debtors. | ) ) ) | Jointly Administered |

## **DECLARATION OF ROBERT HORNE**

Robert Horne, of full age, hereby certifies:

1. I retired from Nortel in August, 1999. I am a participant in the Plan, as defined below.

2. I submit this Declaration in support of Objection to Debtor's Motion for an Order Pursuant to 11 U.S.C. §§ 105, 541, 542 and 543 and Bankruptcy Rule 9019 (I) Approving the Stipulation by and Between NNI and U.S. Bank National Association, (II) Directing U.S. Bank National Association to Turn Over Property to NNI, and (III) Granting Related Relief Related to the Nortel Networks U.S. Deferred Compensation Plan (the "9019 Motion").

3. A letter dated December 15, 2010 was sent to me as a participant in the Nortel Networks U.S. Deferred Compensation Plan (the "Plan"). The December 15, 2010 letter stated that the contract with Mullin TBG, who managed the records of the Plan, will be terminated and that any questions should be referred to Nortel's HR Services. I called HR Services on Monday,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks, Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

January 3, 2011.  It was clear that the person I spoke to had no knowledge of any changes to the Plan – and was surprised when I quoted the letter referring me to HR Services.  I told the person at HR Services that I had some questions, and asked her to return my call, or have a manager return my call, once she had more information and was prepared to answer the questions.  As of this date I have had no response.

4. I also called Mullin TBG on January 3, 2011.  The only information they could give me related to account balances. Otherwise, I was referred to HR Services.  Naturally, the person I talked to seemed surprised and concerned when I told her that I had just spoken to HR Services and had been told that they knew nothing about the situation.

5. Paragraph 9 of the 9019 Motion states: "The Plan has been and is maintained for the purpose of providing a tax-deferred capital accumulation program through the deferral of salary, bonuses and commissions, as well as additional discretionary corporate contributions to a 'select group of management and highly compensated employees' of NNI and its U.S. subsidiaries, within the meaning of Title 1 of the Employee Retirement Income Security Act of 1974, as amended."

6. A quick examination of the data shows that this is an inappropriate representation. For instance, there were 325 individuals who received the 9019 Motion, as shown in the Certificate of Service filed on December 27 2010 [Docket No. 4649].  A simple division of the $37.9 million by 325 individuals gives approximately $116,662 per person.  Given that this savings per person was generated over several years, it is a long way from the association with Wall Street bonuses that a representative of the Debtors was obviously trying to project.

7. Furthermore, an examination of the 325 names generates very few people who can be designated as executives.  For instance, the SEC Form 10-K filed in 2009 for the year

2

ending December 31, 2008, identifies, on pages 204 and 231, 17 Executive Officers and gives details of their positions with Nortel.  Sixteen of these executive officers do not appear on the list of 325 people who received the 9019 Motion.  Only one of these Executive Officers is on the list of 325 – and that person left the Executive Officer list on January 1, 2009 – and his filed Claim for $46,916 in deferred compensation should be compared with his total compensation as listed in the Form 10-K received during 2008 of $2,451,783.  Not only is this a small percentage (approximately 2% of his 2008 compensation), but further research shows that this small amount of his deferment was contributed over the three previous years.

8. I also reviewed the fifteen page article on the history of Nortel on Wikipedia. Of the 14 executives mentioned as running Nortel from 2001 forward, not one is listed in the 325 people on the service list.

9. I analyzed the 100 largest claims from ex-employees filed in these bankruptcy cases. The claims of these 100 people total $111 million, or approximately $1.1 million per employee. I then compared this list of 100 top employee claims to the list of 325, and found only 9 people who are on both lists.

10. Of the 325 people on the list who received the 9019 Motion, I can only identify one person who I would recognize as a senior executive while I was working at Nortel – and he also retired in 1999.  Additionally, he was not senior enough to be reported in the SEC documents I reviewed. I cannot find the names of any of the people who were my bosses. By contrast, I recognize several names of people who were middle managers at the time of my retirement.

11. Taking this review one step further, there is clear documentation, starting from the Company's annual report, and publicized in newspapers and on TV, that one senior

executive, took his savings of $1.7 million out of a deferred compensation plan a few days before the formal declaration of bankruptcy in January 2009.

12. By comparison, many of the recipients under the Plan are retirees who did not have executive positions, and who, because of their status as retirees, are locked in to a continuation of their payment - even to their heirs should they become deceased. I am personally aware that this group includes first level managers, and salespeople, software developers and engineers to whom no one else reported.

13. The Debtors claim that the Plan contains approximately $37.9 million. While that sounds like a big number, as stated above, the number equates to approximately $116,000 per claimant, which seems small when compared to the $1.1 million average for the top 100 ex-employee claims. Furthermore, many of the 325 claimants, including myself, put their money aside for several years, so it is a modest number of dollars per year.

14. There are several objections filed by employees who were too junior to have had good advice, and who relied upon Nortel's strong encouragement to save for retirement. Many are a very sad reflection of what has happened here. The demise of Nortel has had a serious impact on many people's lives.

15. I make this Declaration based upon my personal knowledge, information and belief, which I believe to be true.

16.    I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: February 8, 2011

*Robert Horne*
Robert Horne
10015 High Falls Pointe
Alpharetta, GA  30022
404-374-5277