IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
                                        :

*In re*                                        :    Chapter 11

Nortel Networks Inc., *et al.*,[1]           :    Case No. 09-10138 (KG)

                  Debtors.        :    Jointly Administered

                                      :    Hearing date:  March 9, 2011 at 9:30 a.m. (ET)
                                      :    Objections due:  March 2, 2011 at 4:00 p.m. (ET)
------------------------------------------------------------X

DEBTORS' MOTION PURSUANT TO BANKRUPTCY
RULE 9019 FOR ENTRY OF AN ORDER APPROVING
THE STIPULATION RESOLVING PROOF OF
CLAIM NOS. 6135 AND 7207 FILED BY ACS CABLE SYSTEMS, INC.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to enter into and approving a stipulation (the "Stipulation") with ACS Cable Systems, Inc. ("ACS" or "Claimant"), attached hereto as **Exhibit B**, which reduces and allows as reduced Claimant's proofs of claim against NNI and, transfers title to certain hardware from NNI to ACS to the extent not already completed, and authorizing but not directing the Debtors to take all actions

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

reasonably necessary or appropriate to perform their obligations under the Stipulation; and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate their remaining businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

2

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it was unable to maximize value through sales. Since then, Nortel has sold many of its business units and assets to various purchasers. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

---

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

## Relief Requested

7. By this Motion, the Debtors seek an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Debtors' entry into the Stipulation, (ii) authorizing but not directing the Debtors to take all actions reasonably appropriate to perform their obligations under the Stipulation, and (iii) granting them such other and further relief as the Court deems just and proper.

## Facts Relevant to this Motion

8. ACS is a provider of a range of telecommunications services with a network centered in Alaska and the Pacific Northwest. In 2004, NNI and ACS entered into a Purchase and License Agreement, which they amended by entering into the Network Managed Services Supplement and Annex 1 thereto on August 7, 2008 (as amended on February 20, 2009, the "Contract"). Under the Contract, NNI was to provide services, software and hardware to assist ACS in the development and operation of its network operations center. Pursuant to the Contract, NNI provided certain hardware to ACS, which was to be paid for over the term of the Contract (the, "BCP Products," which are listed in Schedule 1 to Exhibit A of the Stipulation, attached hereto as Exhibit B).

9. NNI had provided ACS with certain other services and software unrelated to the Contract and had issued invoices 2699132, 2697696, 2697322, and 2650891 for payment thereof (the "Specifically-Discussed Unrelated Invoices"). ACS has now paid or otherwise been credited in full for the Specifically-Discussed Unrelated Invoices.

10. On September 23, 2009, ACS sent NNI a notice of default with respect to the Contract. NNI subsequently rejected the Contract pursuant to Section 365 of the Bankruptcy Code, filing and serving on ACS the Eighteenth Notice of Rejection of Executory Contract(s) and/or Nonresidential Real Property Lease(s) by Debtors and Debtors in Possession [D.I. 1661]

(the "Rejection Notice"). The Contract was deemed rejected on October 13, 2009. On October 26, 2009, ACS filed a Reservation of Rights in response to the Rejection Notice [D.I. 1724].

11. On November 17, 2009, Claimant filed a Proof of Claim against NNI for rejection damages in the amount of $8,410,111.00, which is listed on the Debtors' claim register as claim number 6135 (the "Proof of Claim"). On April 12, 2010, ACS filed a motion for allowance and immediate payment of $1,105,055.50, the amount it had paid NNI post-petition pursuant to the Contract as an administrative claim, which is listed on the Debtors' claim register as claim number 7207 (the "Administrative Claim Motion," and together with the Proof of Claim, the "Claim").

12. Thereafter, in an effort to negotiate an expeditious resolution of the Claim, the parties entered into settlement discussions. As a result of these negotiations, the Debtors, subject to this Court's approval, have reached a compromise with Claimant reducing and allowing the reduced Claim as memorialized in the Stipulation. The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of the Claim through the Stipulation is appropriate and in the best interest of both their estates and their creditors.

13. Pursuant to the Stipulation[5] and subject to this Court's approval, the Debtors have agreed to reduce and allow the Claim in the amount of $2,050,000.00, with ACS receiving $300,000.00 as an allowed administrative claim, to be paid to Claimant within one hundred and twenty (120) calendar days of entry of an order approving this Motion, which is net of the amounts credited to NNI for BCP Products, and the remaining $1,750,000.00 allowed as a general unsecured claim, and to transfer title to the BCP Products from NNI to ACS to the extent that such title has not already been transferred. In consideration of the partial allowance of the

---

[5] In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

Claim, Claimant has agreed, subject to this Court's approval, to, *inter alia*, release all claims against the Debtors and their affiliates other than the Claim as reduced, relating to (i) the Claim, or the transactions or facts giving rise to the Claim; (ii) the Contract, or the rights, obligations or transactions provided for in, under, or in connection with the Contract, and (iii) the Specifically Discussed Unrelated Invoices. NNI has agreed to a similar release, subject to this Court's approval, with respect to the same subject matter, against the Claimant and certain enumerated affiliates.

### Basis for Relief

14. The Debtors seek authorization to enter into the Stipulation under section 105 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019.

15. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And

courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

16. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

17. The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

18. The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation and request that their entry into the Stipulation be authorized under Bankruptcy Rule 9019. While the Debtors are prepared to litigate the Claim and believe that there is a reasonable possibility they would prevail in such litigation, there is a significant dispute between the parties regarding NNI's performance under the Contracts, and the divestitures of NNI's business operations has added additional costs and burdens to the litigation of this particular claim. The Debtors recognize that litigation of the Claim carries with it inherent uncertainties and there can be no assurance that litigation of the Claim would achieve a better result than the one set forth in the Stipulation. The settlement reflected in the Stipulation eliminates a purported $8,410,111.00 claim against NNI's estate, of which $1,105,055.50 ACS sought immediate payment for as an administrative expense. It resolves the Claim by reducing and allowing it in the lesser amount of $2,050,000.00, of which $300,000 is to be paid as an administrative expense. This resolution fairly balances the Debtors' likelihood of success on the merits of the Claim against their interest in avoiding the uncertainty of litigation.

19. In addition, further litigation of the Claim would result in the estate's expenditure of considerable additional legal fees. These would include fees for responding to the Administrative Claim Motion, for discovery related to the Claim, and for further proceedings that would be required for the Court to determine the Claim. In the absence of a settlement, the estate would be burdened with the time and costs of ongoing litigation, which would be disruptive of the estate's efforts to resolve the matters that are essential to the ultimate resolution of these cases.

20. Finally, the interests of the creditors weigh in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient

resolution of the Claim and the avoidance of significant litigation risk and substantial legal expenses that would be incurred if the Claim were to be further litigated. The Debtors consulted the Creditors' Committee with regard to the Stipulation prior to the filing of this Motion, and the Creditors' Committee has expressed no objection to the Stipulation.

21.  In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

## Notice

22.  Notice of the Motion has been given via first class mail to (i) the Claimant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

23.  No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: February 16, 2011  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)  
Lisa M. Schweitzer (admitted *pro hac vice*)  
Neil P. Forrest (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
Alissa T. Gazze (No. 5338)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone: (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors  
and Debtors in Possession*

10