**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X

|  |  |
|---|---|
| *In re* | : Chapter 11 |
|  | : |
|  | : Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | : |
|  | : Jointly Administered |
| Debtors. | : |
|  | : |

------------------------------------------------------------X

## STIPULATION RESOLVING CLAIMS BY AND BETWEEN
## ACS CABLE SYSTEMS, INC. AND NORTEL NETWORKS, INC.

This stipulation (the "Stipulation") is entered into by and between Nortel Networks, Inc. (the "Nortel Debtor") and ACS Cable Systems, Inc. ("Claimant" and together with the Nortel Debtor, the "Parties"). The Parties (and with respect to the mutual release provisions, several of their affiliates, as specified in those provisions) here stipulate and agree as follows:

WHEREAS, Claimant and its affiliates are providers of a range of telecommunications services;

WHEREAS, the Nortel Debtor is a supplier of equipment and services to the telecommunications industry;

WHEREAS, in 2004, the Nortel Debtor and ACS entered into a Purchase and License Agreement, which they amended by entering into the Network Managed Services Supplement and Annex 1 thereto on August 7, 2008 (the "Supplement"). Under the Supplement, the Nortel Debtor agreed to provide services, software, and hardware to assist Claimant in the operation of

---

[1] The "Debtors" in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

Claimant's network operations center and facilities, including, but not limited to, Business Continuity Products for delivery to Anchorage, Alaska;

WHEREAS, the term "Debtors," as used in this Stipulation, refers to the entities listed in footnote 1 to this Stipulation. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc., filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or the "Court") (Case No. 09-10138 (KG) (Jointly Administered));

WHEREAS, on February 20, 2009, Claimant and the Nortel Debtor executed a First Amendment (the "Amendment," together with the Supplement, the "Contract") to the Supplement, pursuant to which Claimant, for additional consideration, purchased additional Business Continuity Products for delivery to Hillsboro, Oregon. (The Business Continuity Products purchased for delivery to Anchorage, Alaska and Hillsboro, Oregon are together referred to as the "BCP Products," and are listed in Schedule 1 to Exhibit A to this Stipulation);

WHEREAS, Claimant made certain payments to the Nortel Debtor under the Contract, both before and after the Petition Date;

WHEREAS, the Nortel Debtor provided certain services, software, and hardware to Claimant under the Contract, among which were the BCP Products;

WHEREAS, Claimant disputes the completeness and adequacy of the services, software, and hardware that the Nortel Debtor provided under the Contract;

WHEREAS, the Bankruptcy Court established the general bar date of September 30, 2009 for filing proofs of claim against the Nortel Debtor, and on March 20, 2009 entered the *Order Approving Procedures for the Rejection of Executory Contracts and Unexpired Leases and the Abandonment of Certain Assets Related Thereto* (Docket No. 510) (the "Rejection Procedures Order"), which in relevant part establishes procedures for the rejection of executory contracts and sets the deadline for filing a proof of claim for damages arising from such a rejection;

WHEREAS, on October 13, 2009, the Debtors served on Claimant their *Eighteenth Notice of Rejection of Executory Contracts and/or Non-residential Real Property Leases* (Docket No. 1661) (the "Eighteenth Notice"). Pursuant to the Court's order establishing procedures for the rejection of executory contracts and unexpired leases, the Eighteenth Notice rejected the Contract under Section 365 of the Bankruptcy Code, effective as of October 13, 2009;

WHEREAS, on November 17, 2009, Claimant filed Proof of Claim No. 6135 against the Nortel Debtor asserting damages in the estimated amount of $8,410,111 and asserting that the

claim was timely filed as a contract rejection damages claim under the Rejection Procedures Order ("Claim No. 6135");

WHEREAS, on April 12, 2010, Claimant filed a Motion for Allowance and Immediate Payment of Administrative Claim (Docket No. 2857) (the "Administrative Priority Motion") seeking allowance with administrative priority of its claim for refund of $1,105,055.00. Claimant asserted that it had paid that amount to the Nortel Debtor, after the Nortel Debtor filed for bankruptcy protection on the Petition Date, for services, software, and hardware that the Nortel Debtor did not provide or did not adequately provide. A copy of the Administrative Priority Motion is Claim No. 7207 in the claims register ("Claim No. 7207");

WHEREAS, Claim No. 6135, the Administrative Priority Motion, and Claim No. 7207 are collectively referred to in this Stipulation as the "Claims;"

WHEREAS, the Nortel Debtor disputes the Claims;

WHEREAS, the Parties engaged in arm's-length negotiations regarding the Claims, during which time the due date for responses to the Administrative Priority Motion has been extended by mutual agreement; and

WHEREAS, in order to avoid the cost and risk inherent in litigating the Claims, the Parties have agreed to this Stipulation to resolve their disputes.

NOW THEREFORE, the Parties agree and stipulate as follows:

1. <u>Resolution of Administrative Priority Motion and Claims.</u> Effective upon entry of a Bankruptcy Court Order (the "Approval Order") approving this Stipulation ("Court Approval"):

(a). Claim No. 7207 is reduced and allowed as an administrative priority claim against the Nortel Debtor pursuant to Section 503(b) of the Bankruptcy Code in the amount of $300,000.00, which amount the Nortel Debtor shall pay to Claimant in cash within one hundred and twenty (120) calendar days after Court Approval (the "Allowed Administrative Claim"). Claimant shall withdraw the Administrative Priority Motion with prejudice within two (2) business days of receiving this $300,000 payment.

(b). Claim No. 6135 is reduced and allowed as a general unsecured claim against the Nortel Debtor in the amount of $1,750,000.00 (the "Allowed General Unsecured Claim").

2. <u>Allowed Administrative Claim and Allowed General Unsecured Claim are Separate.</u> The Allowed Administrative Claim and the Allowed General Unsecured Claim are separate non-overlapping allowed claims, and payment or distribution on one shall not constitute full or partial satisfaction of the other. Claimant may transfer the Allowed General Unsecured Claim to a third party while retaining the Allowed Administrative Claim, and vice versa.

3.      Court Approval. The Parties understand and acknowledge that this Stipulation is subject to approval by the Bankruptcy Court. By February 16, 2011, the Debtors shall file a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking Court Approval. All provisions of this Stipulation are subject to the approval of the Bankruptcy Court. In the event this Stipulation is not approved, in whole or in part, the Parties reserve all of their rights and defenses with respect to the Claims, the Contract, and the Specifically-Discussed Unrelated Invoices, and the proposed settlement embodied in this Stipulation shall not constitute an admission by the Claimant, any of the Claimant Affiliates, the Nortel Debtor and any other of the Debtors or the Debtors' affiliates of any matters regarding the Claims, the Contract, or the Specifically-Discussed Unrelated Invoices, including, without limitation, the validity of the Claims or whether the Debtors or their affiliates have any liability thereunder.

4.      Claimant to Retain the BCP Products. Claimant may retain the BCP Products. To the extent it has not already done so, effective upon Court Approval, the Nortel Debtor transfers title to the BCP Products to Claimant. Within fifteen (15) calendar days after Court Approval, the Nortel Debtor shall execute the Confirmatory Bill of Sale attached as Exhibit A to this Stipulation. The parties factored the value of the BCP Products into the settlement amount set forth in paragraph 1(b) hereof; accordingly, Claimant's retention of the BCP Products shall not constitute full or partial satisfaction of the Allowed Administrative Claim or the Allowed General Unsecured Claim.

5.      No Offsets or Withholding. Except as expressly consented to by Claimant in writing, the payment of the Allowed Administrative Claim and the distribution on the Allowed General Unsecured Claim, if any, shall not be reduced (or withheld) by reason of any offset, setoff, or recoupment of any kind, or by reason of Section 502(d) of the Bankruptcy Code. For the avoidance of doubt, nothing in this Stipulation shall in any way limit, restrict or preclude the Debtors from asserting an offset, setoff, recoupment, or their rights under Section 502(d) of the Bankruptcy Code against or with respect to any claim other than the Allowed Administrative Claim and the Allowed General Unsecured Claim ("Other Claims"). Therefore, the Debtors are not precluded by this Stipulation from asserting an offset, setoff, recoupment, or rights under Section 502(d) of the Bankruptcy Code against or with respect to Other Claims, regardless of whether such Other Claims are held by Claimant, by a third party which happens to also hold the Allowed Administrative Claim and/or the Allowed General Unsecured Claim following a sale or other transfer from Claimant, or by any other person.

6. <u>Mutual Releases</u>.

   a. "<u>Claimant Affiliate</u>" and "<u>Claimant Affiliates</u>" shall refer, individually and collectively, to Claimant's ultimate corporate parent Alaska Communications Systems Group, Inc. and all direct and indirect subsidiaries of Alaska Communications Systems Group, Inc., including but not limited to Claimant and Alaska Communications Systems Holdings, Inc.

   b. "<u>Specifically-Discussed Unrelated Invoices</u>" shall refer to Invoices 2699132, 2697696, 2697322, and 2650891 which the Nortel Debtor previously issued to Claimant for goods, services, and software unrelated to the Contract, and which the Claimant has now paid or otherwise been credited in full.

   c. For purposes of this Stipulation, a "<u>Final Order</u>" means an order, the operation or effect of which has not been stayed, reversed or amended and as to which the time to appeal or move for review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

   d. Effective upon the Approval Order becoming a Final Order, Claimant and the Claimant Affiliates release and forever discharge the Debtors and their respective current and former parents, subsidiaries, affiliates, shareholders, directors, officers, employees, agents, attorneys, and their personal representatives, successors and assigns (collectively, the "<u>Debtor Releasees</u>"), from any and all liability from any claims, defenses, demands, liabilities, obligations, damages, actions, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorney's fees), known or unknown, past or present, fixed or contingent, liquidated or unliquidated, matured or unmatured, which Claimant and/or any Claimant Affiliate ever had, now have, or hereafter may have, arising from or relating to (i) the Claims, or the transactions or facts giving rise to the Claims; (ii) the Contract, or the rights, obligations, or transactions provided for in, under, or in connection with the Contract, or (iii) the Specifically-Discussed Unrelated Invoices. For the avoidance of doubt, this release is limited to claims arising from or relating to the subjects expressly described in (i), (ii), and (iii) in the immediately preceding sentence.

   e. Effective upon the Approval Order becoming a Final Order, the Debtors release and forever discharge Claimant and the Claimant Affiliates and their respective current and former parents, shareholders, directors, officers, employees, agents, attorneys, and their personal representatives, successors and assigns (collectively, the "<u>Claimant Releasees</u>"), from any and all liability from any claims, defenses, demands, liabilities, obligations, damages, actions, causes of action (including, without limitation, causes of action under Chapter 5 of the Bankruptcy Code), setoffs, recoupments, costs and expenses (including, without limitation, attorney's fees), known or unknown, past or present, fixed or contingent, liquidated or unliquidated, matured or unmatured, which any of the Debtors ever had, now has, or hereafter may have, arising from or relating to (i) the Claims, or the transactions or facts giving rise to the Claims, (ii) the Contract,

or the rights, obligations, or transactions provided for in, under, or in connection with the Contract, or (iii) the Specifically-Discussed Unrelated Invoices. For the avoidance of doubt, this release is limited to claims arising from or relating to the subjects expressly described in (i), (ii), and (iii) in the immediately preceding sentence.

7.  No Further Claims. Effective upon the Approval Order becoming a Final Order, Claimant and the Claimant Affiliates shall be forever barred from (i) amending the Claims or (ii) filing or otherwise asserting any further claim against any of the Debtors, arising under or relating to (a) the Claims, or the transactions or facts giving rise to the Claims; (b) the Contract, or the rights, obligations, or transactions provided for in, under, or in connection with the Contract; or (c) the Specifically-Discussed Unrelated Invoices.

8.  No Admissions. Each of the Parties acknowledges and agrees that nothing in this Stipulation constitutes an admission or concession concerning any legal issue(s) raised in or relating to the Claims, the Contract, or the Specifically-Discussed Unrelated Invoices.

9.  Costs and Expenses. Each Party agrees to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations concerning resolution of the Claims and the negotiations relating to and preparation of this Stipulation, and not to seek from each other reimbursement of any such costs, expenses or attorneys' fees.

10. Claims Register. The Debtors, the Debtors claims' agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to this Stipulation.

11. Jurisdiction. The Bankruptcy Court shall retain jurisdiction over the implementation of this Stipulation and any disputes arising hereunder.

12. No Transfer. Claimant represents that it has not sold, assigned or otherwise transferred to a third party any of the Claims or any of the claims being released pursuant to this Stipulation. The Debtors represent that they have not sold, assigned or otherwise transferred to a third party any claims relating to the Contract or any of the claims being released pursuant to this Stipulation.

13. Binding Effect. This Stipulation and the Order approving the Stipulation shall be binding upon any successors or assigns of the Parties, including any trustee or receiver subsequently appointed in the Debtors' Chapter 11 cases or any Chapter 7 cases to which these Chapter 11 cases may be converted. In the event of a conflict between this Stipulation and the terms of a plan of reorganization under Chapter 11 of the Bankruptcy Code confirmed by any of the Debtors pursuant to an order of this Court, this Stipulation, if approved by an order of the Court, shall be controlling.

14. <u>Notices</u>.  Any notices required by or made pursuant to this Stipulation shall be delivered by facsimile and first-class mail addressed to the following:

If directed to the Nortel Debtor:

Richard Boris
Nortel Networks Inc.
4001 E. Chapel Hill-Nelson Hwy.
Mailstop: 570/02/0D2
Research Triangle Park, NC  27709
Telephone:  (919) 905-2364
Facsimile:  (919) 992-5000

<u>With a copy to</u>:
Lisa Schweitzer, Esq.
Neil Forrest, Esq.
Megan Fleming-Delacruz, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York  10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

If directed to Claimant:

Martha Beckwith, Esq.
Senior Attorney
Alaska Communication Systems
600 Telephone Ave., MS 65
Anchorage, AK 99503
Telephone:  (907) 297-3166
Facsimile:  (907) 297-3153

<u>With a copy to</u>:
James H. Lister, Esq.
Birch Horton Bittner and Cherot, P.C.
1155 Connecticut Ave., NW
Suite 1200
Washington, DC 20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

15.    <u>Entire Agreement</u>.  This Stipulation constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof and this Stipulation cannot be amended except by an authorized written agreement between the Parties that is approved by the Bankruptcy Court.

16.    <u>Manner of Execution</u>.  This Stipulation may be executed in counterparts, each of which shall be an original, and such counterparts shall be construed together as one instrument. Facsimile or pdf signatures shall be deemed original signatures.

IN WITNESS THEREOF, and intending to be legally bound thereby, the Parties have executed this Stipulation.

Dated February 15, 2011

_____     _____
Nortel Networks Inc, and its affiliated Debtors     ACS Cable Systems, Inc., on behalf of itself
(as defined above)                                  and the Claimant Affiliates (as defined above)
By: Chris Ricaurte                                  By: _____
Its: President                                      Its: _____

Attachment:   Exhibit A (Confirmatory Bill of Sale for BCP Products)
              Schedule 1 to Exhibit A (List of BCP Products)

IN WITNESS THEREOF, and intending to be legally bound thereby, the Parties have executed this Stipulation.

Dated February 16, 2011

_____
Nortel Networks Inc, and its affiliated Debtors
(as defined above)
By: _____
Its: _____

_____
ACS Cable Systems, Inc., on behalf of itself
and the Claimant Affiliates (as defined above)
By: _____ David Wilson
Its: CFO

Attachment:  Exhibit A (Confirmatory Bill of Sale for BCP Products)
Schedule 1 to Exhibit A (List of BCP Products)

## EXHIBIT A

## CONFIRMATORY BILL OF SALE FOR BCP PRODUCTS

This Bill of Sale ("Bill of Sale") is issued by Nortel Networks, Inc. ("Seller") to ACS Cable Systems, Inc. ("Buyer"). Seller and Buyer, intending to be legally bound, agree to the following terms:

1. **Sale.** To the extent Seller has not already transferred title to the Business Continuity Plan Products listed on Schedule 1 to this Confirmatory Bill of Sale (the "BCP Products") to Buyer, Seller hereby irrevocably transfers title to the BCP Products to Buyer as part of the settlement of claims referenced in the Stipulation to which this Confirmatory Bill of Sale is attached. The BCP Products consist of hardware only, the software having been deleted.

2. **No Representations or Warranties.** The BCP Products are conveyed "as is," "where is," and "with all faults." Seller provides no representations or warranties of any kind, whether express or implied, and shall have no obligation to provide support for the BCP Products.

3. **No Third-Party Beneficiaries**. Nothing in this Bill of Sale shall create or be deemed to create any third party beneficiary rights in any person or to confer any rights or remedies upon any person other than the parties hereto and their respective successors and assigns.

4. **Counterparts.** This Bill of Sale may be executed in any number of counterparts, each of which will be an original and all of which together will constitute one and the same instrument. Facsimile or pdf signatures shall be deemed original signatures.

Nortel Networks, Inc.
By: _____
Its: _____
Date: _____

ACS Cable Systems, Inc.
By: _____
Its: _____
Date: _____

## SCHEDULE 1 TO CONFIRMATORY BILL OF SALE
### List of BCP Products

**BCP Products Delivered to Anchorage, Alaska**

Hardware Configuration

| Model No | Description |
|---|---|
| A53-JNZ4C818GYD6 | Sun Fire V890 Server, 4* 1.35Ghz UltraSPARC IV processors with 16MB cache each, 16GB of DRAM (32* 512MB DIMMS), 6* 146GB 15Krpm FC-AL hard disks, DVD-RW, 1* FC-AL disk controller, 1* Gigabit Ethernet, 1*10/100 BaseT Ethernet port, 2* serial ports via splitter (not provided), 2* USB ports, 9* PCI slots, 3power supplies & redundant cooling fan trays, Solaris 8. |
| 7270A-Z | Sun Fire V890 Server, 2* 1.35 GHz UltraSPARC IV Processor Module with 16MB cache each, 8GB DRAM (16*512MB DIMMs) (For Factory Integration only) RoHS-5 Compliant |
| 9628A-Z | SFV880/V890: Rackmount Kit Int |
| CX3-10 | EMC CX3-10 Storage includes DAE and 15* 146GB 15KRPM FC Drives |
| SR2-21042-X32TPL | Cabinet, Sun Rack 1000-42 with 32 AMP Three Phase power installed. New Alloy Design. This Product is Hazzard Class Y, RoHS compliant. |
| SG-XPCI1FC-EM4-Z | Sun Storage Tek PCI-X Enterprise 4Gb FC Host Bus Adapter, Emulex Single Port includes standard and low profile brackets. RoHS 6 compliant |

**BCP Products Delivered to Hillsboro, Oregon**

Hardware Configuration

| Model No | Description |
|---|---|
| A53-JNZ4C416GYD6 | Sun Fire V890 Server, 4 * 1.35GHz UltraSPARC IV processors with 16MB cache each, 16GB of DRAM (32 * 512MB DIMMS), 6 * 146GB 15Krpm FC-AL hard disks, DVD-RW, 1 * FC-AL disk controller, 1 * Gigabit Ethernet, 1 * 10/100 BaseT Ethernet port, 2 * serial ports via splitter (not provided), 2 * USB ports, 9 * PCI slots, 3 power supplies & Redundant cooling fan trays, Solaris 8 |
| 7270A-Z | Sun Fire V890 Server, 2 * 1.35 GHz UltraSPARC IV Processor Module with 16MB cache each, 8GB DRAM (16 * 512MB DIMMs) (For Factory Integration Only) RoHS-5 Compliant |
| 9628A-Z | SFV880/V890: Rackmount Kit Int |
| CX3-10 | EMC CX3-10 Storage includes DAE and 15 x 146GB 15KRPM FC Drives |
| SG-XPCI1FC-EM4-Z | Sun StorageTek PCI-X Enterprise 4Gb FC Host Bus Adapter, Emulex, Single Port includes standard and low profile brackets. RoHS 6 compliant |