IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
                                                                :
*In re*                                                         :  Chapter 11
                                                                :
Nortel Networks Inc., *et al.*,[1]                              :  Case No. 09-10138 (KG)
                                                                :
                                           Debtors.             :  Jointly Administered
                                                                :
                                                                :  Hearing date: February 22, 2010 at 9:30
                                                                :  AM (ET) (proposed)
                                                                :  Objections due: February 22, 2010 at 9:30
                                                                :  AM (ET) (proposed)
                                                                :
                                                                :  RE: D.I. 3832, 3855
                                                                :
---------------------------------------------------------------X

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a)
AND 363(b) FOR ENTRY OF AN ORDER APPROVING
THE AMENDED AND RESTATED MSS
SIDE AGREEMENT AND GRANTING RELATED RELIEF**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors") hereby move this Court (the "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A, approving that certain Amended and Restated MSS Side Agreement substantially in the form attached hereto as Exhibit B (the "Amended Side Agreement"), to be entered into by and among NNI, Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL", and, together with NNI and NNC, the "Main Sellers"), certain of their affiliates (together with the Main Sellers, the "Sellers"), the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

EMEA Sellers (as defined in the Amended Side Agreement), certain other Selling Parties and Non-Selling Parties (each as defined in the Amended Side Agreement), Nortel Networks S.A. ("NNSA"), the Joint Administrators and the Joint Israeli Administrators (each as defined below) (collectively, the Sellers, the EMEA Sellers, the Selling Parties, the Non-Selling Parties, the Joint Administrators and the Joint Israeli Administrators, the "Parties"); and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code").

## Background

3.  On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate their remaining businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

2

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5. On the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL (and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it was unable to maximize value through sales. Since then, Nortel has sold many of its business units and assets to various purchasers. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets. For further information

---

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## Relief Requested

7.      By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, (a) approving the terms and conditions of the Amended Side Agreement, and (b) granting such related relief as the Court deems just and appropriate.

## Facts Relevant to this Motion

**A.    The Interim Funding and Settlement Agreement**

8.      On June 9, 2009, the Debtors, the Canadian Debtors, the EMEA Debtors and the Joint Administrators entered into an Interim Funding and Settlement Agreement (the "IFSA")[5] governing certain intercompany matters, including the obligations of the parties to the IFSA to (a) negotiate in good faith and attempt to reach agreement on a timely basis on a protocol (the "Interim Sales Protocol") for resolving disputes concerning the allocation of Sale Proceeds (as defined in the IFSA) from Sale Transactions (as defined in the IFSA), which Interim Sales Protocol shall provide binding procedures for the allocation of Sale Proceeds where the relevant parties in any such Sale Transaction have been unable to reach agreement regarding such allocation, and (b) following entry into any Sale Transaction, negotiate in good faith and on a timely basis to attempt to reach agreement regarding the allocation of the Sale Proceeds from such Sale Transaction within a reasonable period of time or as may be otherwise provided in the Interim Sales Protocol (failing which the Interim Sales Protocol shall apply to determine the allocation of the relevant Sale Proceeds). On June 29, 2009, this Court entered an Order (A)

---

[5]    The summaries and descriptions of the terms and conditions of the IFSA set forth in the Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in

4

Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 993].

**B.     Sale of Nortel's MSS Business**

9.     Nortel's Multi-Service Switch business (the "MSS Business") provides data networking infrastructure solutions to telecom service providers and large enterprise customers throughout the world. These solutions allow customers to integrate a variety of data, voice and video applications onto a single network and connect users in multiple locations securely, efficiently and seamlessly over a wide area network. In addition, the MSS Business supports former Nortel business units sold in prior Nortel asset sales with hardware, software and services. The MSS Business sells its base platform to former Nortel business units, which add hardware and software to drive product development for both the wireless and wireline markets.

10.     On August 26, 2010, the Sellers and certain of their affiliates entered into an Asset Sale Agreement (the "Stalking Horse NA Agreement") for the sale of certain assets relating to the MSS Business by and among the Sellers, certain of their affiliates and PSP Holding LLC ("PSP", and together with, and including, any Designated Purchaser (as defined in the Stalking Horse NA Agreement), the "Stalking Horse"). On August 26, 2010, the EMEA Sellers, the Joint Administrators and the Joint Israeli Administrators entered into a parallel asset sale agreement with the Stalking Horse relating to certain assets of the MSS Business owned by the EMEA Sellers and NNSA (the "Stalking Horse EMEA Agreement" and, together with the Stalking Horse NA Agreement, the "Stalking Horse Agreements").

---

their entirety by the IFSA. In the event there is a conflict between the Motion and the IFSA, the IFSA shall control in all respects.

11. On September 1, 2010, this Court entered an order approving, among other things, bidding procedures to govern the sale of the MSS Business [D.I. 3855] (the "Bidding Procedures Order").

12. At the conclusion of the Auction (as defined in the Bidding Procedures Order), which was held on September 24, 2010, Telefonaktiebolaget LM Ericsson (publ) (collectively with its designated affiliates, "Ericsson" or the "Purchaser") was designated the Successful Bidder (as defined in the Bidding Procedures Order).

13. Following the conclusion of the Auction, on September 24, 2010, the Sellers and certain of their affiliates entered into an Asset Sale Agreement with the Purchaser (the "North American Agreement") for the sale of certain assets relating to the MSS Business and the EMEA Sellers, the Joint Administrators, the Joint Israeli Administrators and NNSA entered into Asset Sale Agreement with the Purchaser relating to the sale of certain assets of the MSS Business owned by the EMEA Sellers (the "EMEA Agreement," and together with the North American Agreement, the "Sale Agreements").

14. On September 30, 2010, this Court and the Canadian Court approved the sale of assets related to the MSS Business pursuant to the North American Agreement to the Purchaser (this Court's order approving such sale, [D.I. 4054], the "Sale Order").

C. **The Amended Side Agreement**

15. In connection with the entry into the Stalking Horse Agreements, the Parties negotiated and entered into that certain MSS Side Agreement, dated August 26, 2010 (the "MSS Side Agreement"), which was approved by this Court pursuant to the Bidding Procedures Order. When this Court approved the MSS Side Agreement, it authorized the filing of certain portions of the MSS Side Agreement under seal. See Bidding Procedures Order at ¶ L and ¶ 12. The

Parties later amended the MSS Side Agreement and filed the amended MSS Side Agreement with this Court [D.I. 3979] on September 20, 2010 and further amended the MSS Side Agreement on January 6, 2011. To address certain additional issues among the Selling Parties raised by their entry into the Sale Agreements, the Parties further negotiated and have agreed to amend and restate the MSS Side Agreement. The result of these negotiations, the Amended and Restated Side Agreement,[6] is substantially in the form attached hereto as <u>Exhibit B</u>. In addition to the terms contained in the MSS Side Agreement, the Amended and Restated Side Agreement contains the following terms:

- <u>Efforts to Complete the Transaction</u>. Each of the Parties shall use their reasonable best efforts to cooperate with each other and the Purchaser in order to complete the Transaction, including:
  - informing the other Parties of matters relating to the Transaction and their Respective Sale Agreement;
  - facilitating the process required to obtain certain regulatory approvals;
  - defending all governmental actions challenging the Sale Agreements or the Transaction;
  - promptly informing the other Parties of any material issue that may result in a breach by the Sellers or the EMEA Sellers under the Sale Agreements; and
  - ensuring that the Total Proceeds are deposited in the form and in the amount paid by the Purchaser and the EMEA Purchaser, or, upon release from escrow, the applicable escrow agent, to the Distribution Agent.

- <u>Notice and Consultation</u>. Each of NNL, NNI and NNUK and, to the extent applicable, the Joint Administrators and/or the Joint Israeli Administrators, shall provide to the others as much notice as possible and shall consult in good faith prior to (a) amending or waiving any material provision or right under

---

[6] Capitalized terms used in this section but not defined herein have the meanings ascribed to them in the Amended Side Agreement. To the extent that there are inconsistencies between the description of the provisions of the Amended Side Agreement contained in this Motion and the terms and conditions of the Amended Side Agreement, the terms and conditions of the Amended Side Agreement shall control.

7

their Respective Sale Agreement, (b) consenting to commencement of any Secondary Proceedings in relation to any EMEA Seller or any bankruptcy proceedings relating to any Non-Debtor Seller or (c) delivering or otherwise consenting to the amount reflected in any Closing Statements, Disagreement Notice or any settlement regarding the matters contained therein or the Determination of Net Market Value.

- No Termination or Material Amendments. The Parties agree not to exercise certain termination rights under the Sale Agreements or amend certain provisions of the Sale Agreements without the prior written consent of the other Parties (not to be unreasonably withheld, delayed or conditioned).

- Collection and Allocation of Total Proceeds. Any payments by the Purchaser to the Parties under the Sale Agreements or, upon release from escrow, any escrow agreements provided for in the Sale Agreements or the Transaction Documents, that is included in the Total Proceeds shall be collected and held in escrow in the Distribution Escrow Account by the Distribution Escrow Agent. These sale proceeds will be distributed to the Parties in accordance with the IFSA.

- Allocation of Total Payments. The Parties have agreed that each Party will initially bear its Initial Respective Percentage[7] and ultimately bear its Agreed Respective Percentage of the Total Payments, as set forth in more detail in the Side Agreement.

- Tax Cooperation. In the event that the preparation of a Tax Return could reasonably be expected to require a Partial Allocation or in the event that a Selling Party is preparing any Partial Allocation with the Purchaser, the Selling Party responsible for filing such Tax Return shall provide notice to the other Selling Parties of such Tax Return or Partial Allocation. The notifying Party shall be required to consider any comments in good faith. The noticed Parties will not have a consent or veto right with regards to such Tax Return or Partial Allocation. This provision shall not or shall not be deemed to determine, ratify or adopt or have any impact whatsoever on the allocation of the proceeds.

- Indemnification of the Distribution Agent and Escrow Agents. The Parties have agreed that the costs of any indemnification of the Distribution Agent, the Escrow Agent or the EMEA Escrow Agent under the Distribution Escrow Agreement and the escrow agreements under the Sale Agreements and the TSA shall be borne on a pro rata basis by each Selling Party in accordance with its Agreed Respective Percentage. In addition, the Parties have agreed that if the costs of any such indemnification arise solely from the breach or

---

[7] Initial Respective Percentage means one third (1/3) for NNI and its Respective Affiliates, one third (1/3) for NNC, NNL and its Respective Affiliates, and one third (1/3) for the EMEA Sellers and NNSA.

fault of one or more Parties, then such breaching Parties shall bear the cost of such indemnification.

### Basis for Relief

16.     The relief requested in this Motion is authorized by sections 105(a) and 363(b) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. See In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105(a) of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings."); In re VII Holdings Co., 362 B.R. 663, 668 (Bankr. D. Del. 2007) (BLS) (noting that "[s]ection 105(a) bestows broad equitable powers on the Court.") (citing In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004)).

17.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363. Section 363 applies when an agreement involves the disposition of the estate's assets in a way that ventures beyond an ordinary course transaction. Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996).

18.     The use or transfer of estate property under section 363 of the Bankruptcy Code must be supported by a sound business purpose. Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); Travelers

Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward, 242 B.R. at 153-54 (quoting In re Lionel, 722 F.2d at 1071). In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided, and that it is receiving fair and reasonable value in exchange. See In re Delaware & Hudson Ry. Co., 124 B.R. at 176; In re Decora Indus., Inc., 2002 WL 32332749, at *2.

19.  The Debtors respectfully submit that the Amended Side Agreement meets each of the requirements under section 363 of the Bankruptcy Code. The Amended Side Agreement is supported by a sound business purpose because cooperation amongst the Sellers and the EMEA Sellers is essential to maximizing value in connection with the sale of Nortel's MSS Business, particularly given the ongoing creditor protection proceedings in various jurisdictions. The Debtors intend to enter into the Amended Side Agreement in order to facilitate cooperation amongst the Parties in working towards completion of the sale to Ericsson and to determine the allocation of the benefits and burdens of the transaction. Furthermore, the additional terms added to the Amended Side Agreement that were not contained in the MSS Side Agreement are substantially similar to the terms contained in prior side agreements entered into in connection with prior sale transactions and approved by this Court [D.I.s 1279, 2627, 3046, and 3047].

20.  Pursuant to the Bidding Procedures Order, the Debtors were authorized to file a certain portion of the MSS Side Agreement under seal. Because the Amended Side Agreement

contains the same terms previously filed under seal pursuant to the Bidding Procedures Order, the Debtors have filed that same portion of the Amended Side Agreement under seal.

## Notice

21. Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) counsel to the Purchaser, (ii) U.S. Trustee; (iii) Monitor (iv) counsel to the Committee; (v) counsel to the Bondholder Group; (vi) counsel to the Joint Administrators; (vii) counsel to the Joint Israeli Administrators; and (viii) general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

22. No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: February 17, 2011
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Ann C. Cordo
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

4097759