## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                :

*In re*                    :

Nortel Networks Inc., *et al.*,[1]    :

              Debtors.    :

                    :

                    :

                    :
-------------------------------------------------------- X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: March 9, 2011 9:30 am (ET)**
**Objections due: March 2, 2011 4:00 pm (ET)**

### APPLICATION OF THE DEBTORS PURSUANT TO 11 U.S.C. § 327(a) TO RETAIN AND EMPLOY CB RICHARD ELLIS INC. AS LISTING AND LEASING AGENT FOR THE DEBTORS *NUNC PRO TUNC* TO JANUARY 6, 2011

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Application") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 327(a), 328(a), 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) authorizing the employment and retention of CB Richard Ellis Inc. ("CBRE" or the "Firm") as a listing and leasing agent for the Debtors in connection with the sale or lease of certain real and personal property located in Richardson, Texas (the "Property"), *nunc pro tunc* to January 6, 2011; (ii)

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

approving the terms and conditions under which CBRE will be retained and compensated; and (iii) granting such other and further relief as the Court deems just and appropriate.  In support of this Application, the Debtors rely upon the Declaration of M. Blair Oden (the "Oden Declaration"), attached hereto as Exhibit B.  In further support of this Application, the Debtors respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105(a), 327(a), 328(a), 330 and 331 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1.

## Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate their remaining businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it was unable to maximize value through sales.  Since then, Nortel has sold many of its business units and assets to various purchasers.  Efforts continue to be made

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

with respect to the realization of value from Nortel's remaining assets. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## Relief Requested

7.      By this Application, the Debtors seek entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 327(a), 328(a), 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1: (i) authorizing the employment and retention of CBRE as listing and leasing agent for the Debtors, *nunc pro tunc* to January 6, 2011, in order to solicit and procure prospective purchasers or tenants in connection with the sale or lease of the Property; (ii) approving the terms and conditions under which CBRE will be retained and compensated, as outlined in that certain agreement, dated as of February 17, 2011 and attached hereto as Exhibit C (the "Agreement"); and (iii) granting such other and further relief as the court deems just and proper.[5]

## Basis for Relief

8.      Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

9.      Under section 327 of the Bankruptcy Code, a debtor in possession may employ one or more professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons" to assist the debtor in possession in carrying out its duties under the Bankruptcy Code. 11 U.S.C. §327(a).

---

[5]      The Property has previously been marketed by Fischer & Company ("Fischer"), pursuant to a pre-petition global arrangement with the Nortel Group. Fischer has certain rights to compensation, subject to this Court's approval, under this arrangement.

10.    Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

11.    Bankruptcy Rule 2014 requires that an application for retention of a professional include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).  Local Rule 2014-1 further requires that "[a]ny entity seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . . shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval."  Del. Bankr. L. R. 2014-1(a).

12.    By this Application, the Debtors request that the Court approve the employment and retention of CBRE as set forth herein.  The proposed retention of CBRE is beneficial to the Debtors' estates and the professional compensation arrangements (as described in the Agreement) provide certainty and proper inducement for CBRE to act expeditiously and prudently with respect to the matters for which it will be employed.

13.    The Debtors also request approval of the employment of CBRE *nunc pro tunc* to January 6, 2011.  Such relief is warranted by the extraordinary circumstances presented by these cases.  The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention.  See In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal dismissed,

909 F.2d 1476 (3d Cir. 1990).  The complexity and intense activity that have characterized these

cases have necessitated that the Debtors and their professionals focus their immediate attention

on certain matters and promptly devote resources to the affairs of the Debtors pending

submission and approval of this Application.

<u>**Selection of CBRE and Scope of Services**</u>

14.     As the business operations of the Debtors continue to wind down and assets are

sold for the benefit of the estates and creditors, it is important for the Debtors to either exploit or

liquidate their position in the Property.  In order to facilitate an expeditious and profitable sale or

lease of the Property, the Debtors need to retain the services of a real estate listing and leasing

agent who can properly market the property and attract qualified purchasers or tenants.  For such

reasons, the Debtors seek retention of CBRE pursuant to this Application.

15.     As the world's largest commercial real estate services firm, CBRE is well-suited

to provide the type of real estate services required by the Debtors.  The Debtors seek to retain

CBRE as their listing and leasing agent because of, among other reasons, the Firm's experience

and knowledge in complex commercial real estate transactions involving insolvent owners.  The

Firm has an excellent reputation for its use of innovative and successful marketing strategies.

CBRE is also well-suited to represent the Debtors in listing or leasing the Property because it has

extensive experience handling large corporate properties in the state of Texas, where the

Property is located.

16.     The Debtors believe that the retention of experienced professionals specializing in

the sale and lease of commercial real estate fulfills a critical need that complements the services

offered by the Debtors' other restructuring professionals in these cases.  The Debtors believe

they require the services of a capable and experienced listing and leasing agent because, among

other reasons, such retention would allow the Debtors to efficiently market and sell or lease the

Property in order to maximize creditor recovery, and such efforts are important to the Debtors'

success in their chapter 11 cases.

17.     Pursuant to the Agreement, CBRE will render the following services to the

Debtors:[6]

I.      Acting as listing and leasing agent in connection with the sale or lease of
        the Property, which activities shall include, but are not limited to:

        a.      Inspection and analysis of the Property to determine market
                position and value;

        b.      Creation of a marketing campaign and related production of
                offering materials;

        c.      Identification and solicitation of potential purchasers and tenants,
                as well as assistance in qualifying potential purchasers and tenants;

        d.      Participation in the negotiations with potential purchasers and
                tenants;

        e.      Assistance and coordination of closing activities; and

        f.      Assistance with approval and consents to any subleases.

**CBRE's Disinterestedness**

18.     To the best of the Debtors' knowledge and except as disclosed in the Oden

Declaration, CBRE has not represented, and does not have any connection, with the Debtors,

their creditors, their insiders, their shareholders, their respective attorneys or accountants, or any

other parties in interest in any matters relating to the Property.

19.     As disclosed in the Oden Declaration, CBRE currently represents the entities

listed on the form attached to the Oden Declaration as Exhibit II.  CBRE has informed the

---

[6]     The summary of the Agreement in this Application is solely for the benefit of the Court and parties-in-interest.  To the extent that the summary and terms of the Agreement are inconsistent, the terms of the Agreement shall control.  Capitalized terms used but not defined in this Application shall have the meanings ascribed to them in the Agreement.

Debtors of its ongoing representation of such entities, and the Debtors have consented to CBRE's continued representation of these entities in matters wholly unrelated to the Property. The Debtors believe that CBRE's current and future representation of these entities will not in any way adversely affect CBRE's representation of the Debtors.

20.     As further disclosed in the Oden Declaration, CBRE formerly represented the entities listed on the form attached to the Oden Declaration as <u>Exhibit III</u> in matters wholly unrelated to these proceedings.  CBRE has informed the Debtors of its past representation of such entities.  The Debtors believe that CBRE's past representation of these entities will not in any way adversely affect their representation of the Debtors.

21.     As set forth in the Oden Declaration:

I.      Neither CBRE nor any member of the Listing Team (as defined in the Agreement) holds or represents an interest adverse to the Debtors' estates.

II.     Neither CBRE nor any member of the Listing Team is or was a creditor, an equity security holder or an insider of the Debtors.

III.    Neither CBRE nor any member of the Listing Team is or was, within two years before the Petition Date, a director, officer, or employee of the Debtors.

IV.     No member of the Listing Team is related to the Hon. Kevin Gross or has a connection to the United States Trustee for the District of Delaware or to any known employee in the office thereof.

22.     To the best of the Debtors' knowledge and as disclosed in the Oden Declaration, CBRE does not hold or represent any interest adverse to the Debtors or their estates, CBRE is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, and CBRE's employment and retention by the Debtors is necessary and in the best interests of the Debtors and their estates.

8

23.    CBRE will periodically review its files during the pendency of this retention to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, CBRE will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration if needed, as required by Bankruptcy Rule 2014(a).

### Professional Compensation

24.    CBRE intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of the Court, and consistent with the proposed compensation arrangement set forth in the Agreement (the "Fee Structure").

25.    CBRE and the Debtors have negotiated the terms of the Agreement, which reflect commercially reasonable compensation and employment terms.  Thus, the Debtors request approval of the Agreement, including the Fee Structure, and the expense reimbursement provisions pursuant to section 328(a) of the Bankruptcy Code.

26.    In summary, the Fee Structure provides that the Debtors are obligated to pay the following compensation to CBRE:

    I.    A fee of 1% of the total gross cash consideration received by the Debtors for the purchase of the Property (the "Purchase Fee").[7]

        a.    The Purchase Fee will be earned if, during the period of retention: a) the Property is sold to a purchaser procured by CBRE, the Debtors or anyone else; b) the Debtors enter into any contract for the sale of the Property; or c) the Property is transferred due to

---

[7]    However, if the Property is sold to the Interested Bidder (as defined in Schedule A to the Agreement) or any related entities that it owns or controls, then the fee payable to CBRE shall be .50%.  The name of the Interested Bidder, and another bidder whose identity is disclosed on the face of the Agreement, have been redacted for confidentiality reasons.

eminent domain or threat thereof, foreclosure or conveyance in lieu of foreclosure.[8]

b.      The Purchase Fee will also be earned if, within 120 calendar days of the expiration or termination of the Agreement, the Property is sold to, or the Debtors enter into a contract for the sale of the Property with, any person or entity with whom CBRE has negotiated with respect to the Property during the retention.[9]

c.      The Purchase Fee becomes payable on the earlier of a) the closing of escrow or b) the recordation of the deed.

d.      If the sale of the Property fails to close for any or no reason, CBRE will not be entitled to the Purchase Fee, but will be entitled to the reimbursement of expenses as described more fully below in ¶ 26(III).

e.      In the event that the Debtors fail to make payments of the Purchase Fee when due under the terms of the Agreement, then from the date due until paid, the delinquent amount will bear interest at the lesser of 12% per year or the maximum rate permitted in the state in which the CBRE office executing the Agreement is located.

II.      A fee of 4.5% of the aggregate of the first 120 base rental payments (as described in Section 5.1 of the Agreement) provided for in any lease of the property entered into by the Debtors (the "<u>Lease Fee</u>").[10]

a.      The Lease Fee will be earned if, during the period of retention: a) the Property is leased to a tenant procured by CBRE or the Debtors or anyone else or b) any contract for the lease of the Property is entered into by the Debtors.[11, 12]

b.      The Lease Fee will also be earned if, within 120 calendar days of the expiration or termination of the Agreement, the Property is

---

[8]      CBRE will not be entitled to the Purchase Fee if any tenant at the Property as of the date of the Agreement enters into an agreement with the Debtors to purchase the Property.

[9]      The Debtors will have no obligation to pay the Purchase Fee to CBRE if the Agreement is terminated for cause by the Debtors (as described in Section 6.5 of the Agreement).

[10]      However, the Lease Fee will be 2.25% if the tenant is represented by a Cooperating Broker (as defined in the Agreement).

[11]      However, if the Property is leased to a tenant registered by Fischer, or any related entity that such tenant owns or controls, CBRE will not be entitled to the Lease Fee.  Further, CBRE will not be entitled to the Purchase fee if such tenant subsequently enters into an agreement with the Debtors to purchase the Property.

[12]      CBRE will not be entitled to the Lease Fee if any tenant at the Property as of the date of the Agreement renews its lease, enters into an agreement with the Debtors to expand the premises subject to such lease or enters into any lease amendment with respect to which such tenant is granted a right of first refusal or renewal term.

leased to any person or entity with whom CBRE has negotiated with respect to the Property during the retention.[13]

    c.    The Lease Fee will be payable to CBRE under the terms set forth in Schedule B to the Agreement.

    d.    In the event that the Debtors fail to make payments of the Lease Fee when due under the terms of the Agreement, then from the date due until paid, the delinquent amount will bear interest at the lesser of 12% per year or the maximum rate permitted in the state in which the CBRE office executing the Agreement is located.

III.    In addition to any fees that may be payable to CBRE and regardless of whether any transaction occurs, the Debtors shall, upon receipt of an invoice and supporting documentation, as well as Bankruptcy Court approval thereof, also promptly reimburse CBRE for all:

    a.    Actual, out-of-pocket expenses incurred in the assembly and production of the marketing campaign (the "Marketing Expenses"), including the cost of the offering brochure, the use of CBRE's Financial Consulting Group, and travel and lodging, with the understanding that such fees and expenses will not exceed $15,000. The costs actually incurred by CBRE's in-house staff in preparing the offering materials is included as a Marketing Expense and shall not exceed $7,500.

    (i)    Except as otherwise described in the Agreement, if the Debtors fail to pay any amount due under the Agreement within thirty calendar days of the Debtors' receipt of invoices and supporting documentation from CBRE, and this Court's approval thereof, the unpaid balance, from the end of such thirty calendar day period until paid in full, will accrue interest at 8%.

27.    Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, orders of this Court or any guidelines regarding submission and approval of fee applications, in light of services to be provided by CBRE and the structure of CBRE's compensation pursuant to the Agreement, CBRE and its professionals request that it be excused from maintaining time records as set forth in Local Rule 2016 in connection with the

---

[13]    The Debtors will have no obligation to pay the Lease Fee to CBRE if the Agreement is terminated for cause by the Debtors (as described in Section 6.5 of the Agreement).

services to be rendered pursuant to the Agreement; provided, however, that CBRE shall instead present to the Court records (in summary format) of all services rendered to the Debtors including reasonably detailed description of those services, the approximate time expended in providing those services and the individuals who provided those services.

28.    Given the numerous issues which CBRE may be required to address in the performance of its services hereunder, CBRE's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market price for CBRE's services for engagements of this nature, the Debtors believe that the Fee Structure described above is reasonable under the standards set forth in section 328 (a) of the Bankruptcy Code.

## Indemnification

29.    As set forth in Section 8.2 of the Agreement, the Debtors have agreed to indemnify CBRE from and against all claims by third parties based upon the Debtors' wrongful acts, failures to act or misrepresentation, such obligations not to exceed the fees payable by the Debtors under the Agreement.  The indemnification provision was negotiated between the Debtors and CBRE and the Debtors respectfully submit that the terms are reasonable and in the best interests of the Debtors, their estates and their creditors.

## Notice

30.    Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

31.    No prior request for the relief sought herein has been made to this or any other court.

12

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  February 17, 2011
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

13