## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------X

In re                                                    :     Chapter 11
                                                         :
Nortel Networks Inc., *et al.*,[1]                       :     Case No. 09-10138 (KG)
                                                         :
                              Debtors.                   :     Jointly Administered
                                                         :
                                                         :     **Hearing date: March 9, 2011 at 9:30 a.m. (ET)**
                                                         :     **Objections due: March 2, 2011 at 4:00 p.m. (ET)**
                                                         :
--------------------------------------------------------X

## DEBTORS' APPLICATION FOR AN ORDER UNDER
## 11 U.S.C. §§ 327 AND 328 AUTHORIZING EMPLOYMENT OF
## ERNST & YOUNG LLP *NUNC PRO TUNC* TO MARCH 1, 2011

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Application") for the entry

of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 327(a) and

328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), (i) authorizing the employment of Ernst & Young LLP ("EY

LLP") to provide tax services to the Debtors, *nunc pro tunc* to March 1, 2011, pursuant to the

terms and conditions of the Tax Services Agreement (as defined below), and (ii) granting related

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

relief.  In support of the Application, the Debtors rely on the Declaration of James E. Scott in

Support of Debtors' Application for an Order under 11 U.S.C. §§ 327 and 328 Authorizing

Employment of Ernst & Young LLP *Nunc Pro Tunc* to March 1, 2011 (the "Scott Declaration"),

attached hereto as Exhibit B.  In further support of this Application, the Debtors respectfully

represent as follows:

## Jurisdiction

1.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.        The statutory bases for the relief requested herein are sections 327(a) and 328(a)

of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rule

2014-1.

## Facts Relevant to this Motion

3.        As part of the Debtors' continuing wind-down of their remaining operations, the

Debtors are implementing various measures to conduct their administrative functions more

efficiently and effectively while minimizing costs.  As one such measure, the Debtors have

determined that it would be beneficial and necessary to the Debtors to outsource their tax

functions to outside professionals.  Accordingly, the Debtors hereby seek to retain EY LLP to

assist the Debtors in an outsourcing capacity.[2]

---

[2]        Early in these chapter 11 cases, the Debtors retained EY LLP to provide various indirect tax services to the Debtors pursuant to the Court's Order Authorizing the Debtors to Retain and Employ Professionals Used in the Ordinary Course of Business *Nunc Pro Tunc* to the Petition Date [D.I. 236] (as supplemented, the "OCP Order"), as supplemented with respect to EY LLP by the Notice of Supplement to List of Ordinary Course Professionals [D.I. 457].  Given that the nature of the tax services the Debtors seek to engage EY LLP to provide at this time is significantly broader than was contemplated when the Debtors originally retained EY LLP pursuant to the OCP Order and is more in the nature of restructuring-related rather than in the "ordinary course" work, the Debtors believe that it would be best to seek approval of such engagement pursuant to section 327(a) of the Bankruptcy Code.

(Continued . . .)

**Relief Requested**

4.      By this Application, the Debtors seek entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1 (i) authorizing the employment of EY LLP to provide services to the Debtors pursuant to the terms and conditions set forth in that certain engagement letter agreement by and between the Debtors and certain of their non-debtor affiliates, on the one hand, and EY LLP, on the other hand, dated as of March 1, 2011, and the statements of work entered thereunder for tax outsourcing services (the "Tax Outsourcing SOW"), routine on-call tax services (the "Routine On-Call SOW"), and expatriate tax services (the "Expatriate Tax SOW"), each dated as of March 1, 2011 (collectively, the "SOWs," and together with the engagement letter agreement, the "Tax Services Agreement"), attached to the Scott Declaration as Exhibit 1; and (ii) grant related relief.

**Basis for Relief**

5.      Under section 327 of the Bankruptcy Code, a debtor-in-possession may, with court approval, employ one or more professionals that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to assist the debtor-in-possession in carrying out its duties under the Bankruptcy Code.  11 U.S.C. § 327(a).

6.      Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

---

A.  (. . . continued)
This engagement, if approved, will supersede all prior engagement arrangements between the Debtors and EY LLP, and EY LLP would not provide any further services pursuant to the engagement agreements and the statements of work issued pursuant to the OCP Order.

7.      Bankruptcy Rule 2014 requires that an application for retention of a professional person include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).  Local Rule 2014-1 further requires that "[a]ny entity seeking approval of employment of a professional person under 11 U.S.C. § 327 . . . shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval."  Del. Bankr. L.R. 2014-1(a).

8.      By this Application, the Debtors request that the Court approve the employment and compensation arrangements with EY LLP as set forth in the Tax Services Agreement pursuant to section 328(a) of the Bankruptcy Code.  These employment arrangements are beneficial to the Debtors' estates, and the compensation arrangements, as set forth in the Tax Services Agreement, provide certainty and proper inducement for EY LLP to act expeditiously and prudently with respect to the matters for which it will be employed.

9.      The Debtors also request approval of the employment of EY LLP *nunc pro tunc* to March 1, 2011.  Such relief is warranted by the circumstances presented by the chapter 11 cases at this time.  The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention.  See In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal dismissed, 909 F.2d 1476 (3d Cir. 1990).

10.    The Debtors have completed the sale of almost all of their business units and are working to lower various administrative costs and preserve continuity, as they continue to wind down their operations.  As such, the Debtors have determined that they have inadequate resources to internally carry out the necessary tax administration, and in light of the intended wind down of the Debtors and the further reduction of tax personnel as well as other personnel who provide separate but related internal resources in the areas of accounting and other information resources, it would be in the best interests of the Debtors to outsource services currently provided by their in-house tax department and retain EY LLP for other tax-related services.  Moreover, engaging EY LLP's services provides for continuity in the Debtors' tax compliance.  Given EY LLP's experience with the Debtors' operations and its expertise in complex tax matters, it is important that EY LLP promptly begin its work in assisting the Debtors to resolve their remaining tax issues and dealing with the Debtors' tax functions in the most effective and efficient manner possible, pending submission and approval of this Application.

## Necessity

11.    The Debtors seek to engage EY LLP to provide to the Debtors a broad range of tax services in an outsourcing capacity.  The Debtors chose EY LLP to act in this capacity in large part because of EY LLP's relationship with the Debtors and Nortel generally, including as one of the ordinary course professionals retained in these chapter 11 cases.  EY LLP has extensive experience and an excellent reputation in providing auditing, tax planning and other related services in the areas of various tax matters.  As a result, the Debtors believe that EY LLP is well qualified to perform the services contemplated.  Denial of the relief requested by the Debtors in this Application would deprive the Debtors of the assistance of advisors uniquely

5

qualified to meet the Debtors' obligations under applicable laws and regulations, including to prepare and file tax returns and meet other reporting requirements, and to conduct the Debtors' remaining operations in a tax-efficient manner.  This is particularly critical as the Debtors have faced and will continue to face attrition of their own employees during the course of the winding down.  Furthermore, it would disadvantage the Debtors and their creditors and waste the Debtors' resources and assets to deny the relief requested, as the Debtors would be forced to engage tax professionals who may lack EY LLP's experience and extensive knowledge of the Debtors.

### Scope of Services

12.    During the course of these chapter 11 cases, EY LLP has provided certain tax services to the Debtors pursuant to the OCP Order and applicable statements of work.  In addition to these services, under the Tax Services Agreement, EY LLP will render a wide range of tax services to the Debtors.[3]

13.    Under the Tax Outsourcing SOW, EY LLP will provide EY Core Services (as further defined in the Tax Services Agreement), which include tax operations, tax returns, U.S. federal, international, state and local and indirect tax and tax controversy services.

14.    Additionally, EY LLP will perform EY Variable Services (as further defined in the Tax Services Agreement) consisting of:  analysis of U.S. federal tax consequences of the Debtors' tax losses, consultation with the Debtors' outside counsel regarding certain tax issues, tax modeling, assessment of local country advice, amended state income tax returns due to IRS

---

[3]    The summary of the Tax Services Agreement in this Application is provided for descriptive purpose only. To the extent that the summary herein is inconsistent with the terms of the Tax Service Agreement, the terms of the Tax Services Agreement shall control.  Capitalized terms not defined in this section shall have the meanings ascribed to them in the Tax Services Agreement.

determination and state income tax controversy resulting in assistance greater than 500 hours per year.

15.     EY LLP will also provide Routine On-Call Services pursuant to the Tax Services Agreement, to the extent that such projects are not covered by any other SOW, do not involve any significant tax planning, and such projects are expected, at their outset, to involve total professional fees (with respect to the specific project) not to exceed $25,000.

16.     Finally, EY LLP will provide Expatriate Tax Services consisting of:

(a)     "United States Services" which includes, as described in the Expatriate Tax SOW, preparation of annual U.S. federal, state and local income tax returns, foreign bank account reporting forms, annual tax reimbursement calculations as required, tax gross-ups, return extension requests as required, annual basic foreign tax returns of assignment host country, responses to audits/inquiries by federal, state and foreign tax authorities regarding returns prepared by EY LLP, for authorized participants in Nortel's expatriate tax program, and

(b)     "Korean Services" which includes, as described in the Expatriate Tax SOW, as relating to Korean operations, preparation of amended withholding income tax returns, tax orientation meetings, annual expatriate tax returns and amended returns, filing obligation determinations, tax reimbursement gross-ups, compensation reconciliations and certain voucher preparations.

## EY LLP's Disinterestedness

17.     To the best of the Debtors' knowledge, information and belief, and based and in reliance upon the Scott Declaration (and the prior affidavits and declarations referred to therein), EY LLP does not have any connection with the Debtors, their creditors, equity security holders or any other parties in interest, except as disclosed in the Scott Declaration (and the prior affidavits and declarations referred to therein).[4]

---

[4]     Ernst & Young Inc., an affiliate of EY LLP, serves as court-appointed Monitor in certain Nortel affiliates' creditor protection proceedings under the Companies' Creditors Arrangement Act (Canada), and individuals from

(Continued . . .)

18.    As disclosed in the Scott Declaration (and the prior affidavits and declarations referred to therein), EY LLP currently represents certain of the Debtors' creditors and other parties in interest in matters wholly unrelated to these chapter 11 cases.  EY LLP has informed the Debtors of its ongoing representation of such entities, and the Debtors have consented to EY LLP's continued representation of these entities in matters unrelated to these chapter 11 cases. The Debtors believe that EY LLP's current and future representation of these entities will not in any way adversely affect its provision of services under the Tax Services Agreement.

19.    As further disclosed in the Scott Declaration (and the prior affidavits and declarations referred to therein), EY LLP formerly represented certain of the Debtors' creditors and other parties in interest in matters wholly unrelated to these chapter 11 cases.  In addition, EY LLP formerly represented three potential purchasers in their due diligence in connection with the possible acquisition of the Debtors' assets, which representations have been since terminated. EY LLP has informed the Debtors of its past representation of such entities.  The Debtors believe that EY LLP's past representation of these entities will not in any way adversely affect its provision of services under the Tax Services Agreement.

20.    To the best of the Debtors' knowledge and as disclosed in the Scott Declaration, EY LLP does not hold or represent any interest adverse to the Debtors or their estates, EY LLP is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and EY LLP's employment and retention by the Debtors for the purpose of assisting in tax matters is necessary and in the best interests of the Debtors and their estates.

---

**A.  (. . . continued)**

Ernst & Young LLP (UK) serve as the Joint Administrators  in the UK administration proceedings of certain of the Debtors' other affiliates.  These firms will not be engaged to provide any services to the Debtors.

21.     EY LLP represented to the Debtors that it will periodically review its files during the pendency of its employment in these chapter 11 cases for additional connections to parties in interest.  If any new relevant facts or connections are discovered or arise, EY LLP will use reasonable efforts to identify such further developments and will file a supplemental declaration if needed, as required by Bankruptcy Rule 2014(a).

### Professional Compensation

22.     The Debtors seek approval, pursuant to section 328(a) of the Bankruptcy Code, of (a) the fixed annual fees for the EY Core Services, and (b) the fixed and hourly fee structure for the Services other than the EY Core Services, as well as the reimbursement of expenses, subject to the Court's approval of EY LLP's application to approve such fees and expenses, in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of the Court, and consistent with the proposed compensation structure set forth in the Tax Services Agreement (the "Fee Structure").  Subject to such provisions and Court orders, the Fee Structure provides that compensation will be payable to EY LLP on the following basis:

(a)     EY Core Services will be provided at a fixed yearly fee to be determined by the Debtors and EY LLP for each year, subject to necessary approval by the Court.  Fixed fee for the 2011 EY Core Services will be $5,950,000. If approved, this fee will be billed in eight (8) monthly installments of $660,000 beginning March 1, 2011 and one (1) installment of $670,000 on November 1, 2011.

(b)     The estimated fixed fees for EY Core Services for 2012 and 2013 will be $5,350,000 and $3,000,000, respectively.  These amounts will be reviewed and determined by the Debtors and EY LLP before each year, subject to necessary approval by the Court.[5]

---

[5]     Promptly after the parties agree upon the fixed annual fees for the 2012 EY Core Services and the 2013 EY Core Services, respectively, the Debtors will file a supplemental application with the Court seeking approval of such agreed-upon fees under section 328(a) of the Bankruptcy Code.

(c)  EY Variable Services will be billed on a monthly basis, using the hourly rates listed below (subject to certain annual adjustment).

| Professional | Rate per hour |
|---|---|
| Partner | $640 |
| Executive Director | $545 |
| Senior Manager | $540 |
| Manager | $430 |
| Senior | $300 |
| Staff | $170 |

(d)  The fees for the Routine On-Call Services will be billed on a project-by-project basis, using the hourly rates listed below.

| Professional | Rate per hour |
|---|---|
| Partner | $640 |
| Executive Director | $545 |
| Senior Manager | $540 |
| Manager | $430 |
| Senior | $300 |
| Staff | $170 |

(e)  The fees for the United States Expatriate Tax Services will be billed at a fixed fee by task ranging from $150 to $2,250, as stated in the applicable SOW, subject to CPI adjustment.

(f)  The fees for the Korean Expatriate Tax Services will be billed at a fixed fee by task, as stated in the applicable SOW; provided that services not included within the fixed fees will be billed at the following hourly rates:

| Professional | Rate per hour (Korean Won) |
|---|---|
| Partner | 575,000 |
| Executive Director | 550,000 |
| Senior Manager | 490,000-535,000 |
| Manager | 415,000-475,000 |
| Senior | 310,000-365,000 |
| Staff | 130,000-175,000 |

23.  The Debtors believe that the fixed fees for the EY Core Services payable pursuant to the Tax Services Agreement are reasonable and constitute a customary and market-based compensation structure under the standards set forth in section 328(a) of the Bankruptcy Code,

and accordingly, by this Application, the Debtors seek approval of such fixed fees pursuant to section 328(a).

24.     The Debtors similarly believe that the fixed and hourly rates for the other Services are reasonable and constitute customary and market-based compensation consistent with the requirements under section 328(a) of the Bankruptcy Code.  The Debtors understand that EY LLP intends to apply to the Court for allowance of compensation with respect to the other Services and reimbursement of expenses pursuant to applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of the Court.

25.     EY LLP will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services to the Debtors, including reasonably detailed descriptions of those services and the individuals who provided those services, and will present such records to the Court.

26.     Pursuant to the Tax Services Agreement, the Debtors will indemnify and reimburse EY LLP and certain related persons and entities in accordance with the indemnification provisions set forth in the Tax Services Agreement.

27.     The indemnification and reimbursement provisions reflected in the Tax Services Agreement are customary and reasonable terms of compensation for tax service provider such as EY LLP for services provided both out-of-court and in chapter 11.  The terms of the Tax Services Agreement, including the indemnification provisions, were fully negotiated between the Debtors and EY LLP at arm's-length, and the Debtors respectfully submit that the Tax Services Agreement, including the indemnification contained therein, is reasonable and in the best interests of the Debtors, their estates and their creditors.  Accordingly, as part of this Application,

the Debtors request that the Court approve the indemnification granted under the Tax Services Agreement.

## No Duplication of Services

28.     The Debtors intend that the additional services to be performed by EY LLP under the Tax Services Agreement will complement, and not duplicate, the services to be rendered by other professionals retained in these chapter 11 cases.  EY LLP understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals under the Debtors' instructions to avoid unnecessary duplication.

## Notice

29.     Notice of the Application has been given via first class mail to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) counsel to the ad hoc group of bondholders; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that, under the circumstances, no other or further notice is necessary.

## No Prior Request

30.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Application; (ii) enter the proposed order attached hereto as <u>Exhibit A</u>; and (iii) grant such other and further relief as it deems just and proper.

Dated:  February 18, 2011
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa T. Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*