**<u>Exhibit B</u>**

**Scott Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
               :

*In re*                           :

Nortel Networks Inc., *et al.*,[1]     :

                 Debtors.     :

               :

               :
---------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

## DECLARATION IN SUPPORT OF APPLICATION OF DEBTORS FOR AN ORDER UNDER 11 U.S.C. §§ 327 AND 328 AUTHORIZING EMPLOYMENT OF ERNST & YOUNG LLP *NUNC PRO TUNC* TO MARCH 1, 2011

James Scott deposes and says:

      1.      I am a partner of Ernst & Young LLP ("EY LLP"). I provide this Declaration on behalf of EY LLP in support of the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") to retain EY LLP, *nunc pro tunc* to March 1, 2011, to provide services pursuant to the terms and conditions set forth in the Master Tax Services Agreement by and between the Debtors and certain of their non-debtor affiliates, on the one hand, and EY LLP on the other (the "MTSA") and incorporated statements of work for tax outsourcing services (the "Tax Outsourcing SOW"), routine on-call tax advice (the

---

[1]     The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://am.epiq11.com/nortel.

[2]     Capitalized terms used herein as defined terms and not otherwise defined shall have those meanings ascribed to them in the Application.

"Routine On-Call SOW"), and expatriate tax services (the "Expatriate Tax SOW"), attached hereto as **Exhibit 1** (collectively, together with the MTSA, the "Engagement Letter").

2.      The facts set forth in this Declaration are based upon my personal knowledge, information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other employees of EY LLP under my supervision and direction.

3.      EY LLP has previously been engaged in these cases as an ordinary course professional pursuant to the Order Authorizing the Retention and Payment of Professionals Utilized in the Ordinary Course dated February 5, 2009 (D.I. 236) (as supplemented, the "OCP Order").  Pursuant to the OCP Order, EY LLP has previously submitted my original affidavit filed on March 12, 2009 (the "Original Affidavit"), as supplemented by my first supplemental affidavit filed on June 1, 2009, my second supplemental affidavit filed on July 9, 2009, my third supplemental affidavit filed on November 9, 2009, my fourth supplemental affidavit filed on April 6, 2009 (the "Fourth Supplemental Affidavit"), my fifth supplemental affidavit filed on July 6, 2010. my sixth supplemental affidavit filed on September 14, 2010, my seventh supplemental affidavit filed on or around October 27, 2010, my eighth supplemental declaration filed on or around December 27, 2010 and my ninth supplemental affidavit submitted to the Debtors for filing on or around February 16, 2011 (collectively, the "Prior Affidavits").

4.      The procedures pursuant to which EY LLP determined whether there were any connections between EY LLP and interested parties in these chapter 11 cases are set forth in the Original Affidavit, as supplemented by the other Prior Affidavits.  EY LLP has completed the most recent update of its research of connections to parties in interest in accordance with those procedures, and the results are set forth herein and in **Exhibit 2** appended hereto.

## Scope of Services

5.     As set forth in further detail in the Engagement Letter, EY LLP has agreed to provide certain tax services (the "Services") as a section 327 professional during these chapter 11 cases, subject to approval of the Court of the Application and the terms and conditions of the Engagement Letter.  Subject to the detailed description in the Engagement Letter, the Services are described below:

The "Tax Outsourcing Services":

(a)     The "EY Core Services" as defined in the Tax Outsourcing SOW, consisting of tax department outsourcing services, including tax operations, tax return, U.S. federal, international, state and local, and indirect tax and tax controversy services, but not EY Variable Services (as described below).

(b)     The "EY Variable Services" as defined in the Tax Outsourcing SOW, consisting of analysis of U.S. federal tax consequences of Debtors' tax losses, consultation with the Debtors' outside counsel regarding certain tax issues, tax modeling, assessment of local country advice, amended state income tax returns due to IRS determination and state income tax controversy resulting in assistance greater than 500 hours per year.

The "Routine On-Call Services":

(c)     Routine tax advice and assistance as requested when such projects are not covered by a separate statement of work, do not involve any significant tax planning, and such projects are expected, at their outset, to involve total professional fees not to exceed (with respect to the specific project) $25,000, as described in the Routine On-Call SOW.

The "Expatriate Tax Services":

(d)     The "United States Services", as described in the Expatriate Tax SOW, including preparation of annual U.S. federal, state and local income tax returns, foreign bank account reporting forms, annual tax reimbursement calculations as required, tax gross-ups, return extension requests as required, annual basic foreign tax returns of assignment host country, responses to audits/inquiries by federal, state and foreign tax authorities regarding returns prepared by EY LLP, for authorized participants in Nortel's expatriate tax program.

(e)     The "Korean Services", as described in the Expatriate Tax SOW, including, as relating to Korean operations, preparation of amended withholding income tax returns, tax orientation meetings, annual expatriate tax returns and amended returns, filing obligation determinations, tax reimbursement gross-ups, compensation reconciliations and certain voucher preparations.

DETR_1581103.3

## Professional Compensation

6.    Subject to the Court's approval and pursuant to the terms and conditions of the Engagement Letter, EY LLP will be compensated with a combination of fixed fees and agreed hourly rates as described below.

<u>Fees for the Tax Outsourcing Services</u>:

EY Core Services:  EY Core Services will be provided on a fixed-fee basis.

> The fixed fee for the 2011 EY Core Services will be $5,950,000, which will be billed in 8 monthly installments of $660,000 beginning March 1, 2011 and 1 installment of $670,000 on November 1, 2011.

> The estimated fee for the 2012 EY Core Services is $5,350,000.  This estimated fee will be reviewed in December 2011 and agreed to jointly by January 1, 2012, and any such fee will be billed in 11 equal monthly installments.

> The estimated fee for the 2013 EY Core Services is $3,000,000.  This estimated fee will be reviewed in December 2012 and agreed to jointly by January 1, 2013 and any such fee will be billed in 10 equal monthly installments.

> Promptly after the parties agree upon the fixed annual fees for the 2012 EY Core Services and the 2013 EY Core Services, respectively, the Debtors will file a supplemental application with the Court seeking approval of such agreed-upon fees under section 328(a) of the Bankruptcy Code.

EY Variable Services:  Fees with respect to the EY Variable Services will be billed on a monthly basis, using the hourly rates agreed upon by the parties.

Hourly rates as follows:

| Title | Rate Per Hour |
| --- | --- |
| Partner | $640 |
| Executive Director | $545 |
| Senior Manager | $540 |
| Manager | $430 |
| Senior | $300 |
| Staff | $170 |

<u>Fees for the Routine On-Call Services:</u>  Fees with respect to the Routine On-Call Services will be billed at the hourly rates agreed upon by the parties.

Hourly rates as follows:

| Title | Rate Per Hour |
| --- | --- |

DETR_1581103.3

| | |
|---|---|
| Principal/Partner | $640 |
| Executive Director | $545 |
| Senior Manager | $540 |
| Manager | $430 |
| Senior | $300 |
| Staff | $170 |

Fees for the Expatriate Tax Services:

United States Services:

Fixed fees by task ranging from $150 to $2,250, as stated in the Expatriate Tax SOW, subject to CPI adjustment.

Korean Services:

Fixed fees by task as stated in the Expatriate Tax SOW, provided that services not included within the fixed fees will be billed at the following hourly rates:

| Title | Rate Per Hour Range |
|---|---|
| Partner | Korean Won 575,000 |
| Executive Director | Korean Won 550,000 |
| Senior Manager | Korean Won 490,000-535,000 |
| Manager | Korean Won 415,000-475,000 |
| Senior | Korean Won 310,000-365,000 |
| Staff | Korean Won 130,000-175,000 |

7.    In addition to the fees set forth above, the Debtors and EY LLP have agreed that the Debtors shall reimburse EY LLP for any direct expenses incurred in connection with EY LLP's retention in these chapter 11 cases and the performance of the Services, except such expenses related to Core, Variable and Out of Scope Services described in the Tax Outsourcing SOW and provided at Nortel's Research Triangle location.  EY LLP's direct expenses shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations and other expenses (including any fees or reasonable expenses of EY LLP's legal counsel) specifically related to this engagement.

**Certain Terms of Engagement**

8.      A copy of the Engagement Letter is attached for approval.[3]  EY LLP's provision of Services to the Debtors is contingent upon the Court's approval of each term and condition set forth in the Engagement Letter.  Included among the terms and conditions set forth in the MTSA is language substantially similar to the following:

> Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of Client or its subsidiaries or of EY) shall be brought in the Bankruptcy Court or the applicable district court (if such district court withdraws the reference) and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have subject matter jurisdiction of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made.  If the Bankruptcy Court, or the district court upon withdrawal of the reference, does not have or retain subject matter jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures as set forth in Appendix 1 to these Terms and Conditions. Judgment on any arbitration award may be entered in any court having proper jurisdiction.  The foregoing is binding upon Client, EY and any and all successors and assigns thereof.

9.      In addition, included among the terms and conditions set forth in the MTSA is limitation of liability language substantially similar to the following:

> 17.    [Debtors] (and any others for whom Services are provided) may not recover from [EY LLP], in contract or tort, under statute or otherwise, any amount with respect to loss of profit, data or goodwill, or any other consequential, incidental, indirect, punitive or special damages in connection with claims arising out of this Agreement or otherwise relating to the Services, whether or not the likelihood of such loss or damage was contemplated.

---

[3]      To the extent that this Affidavit and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

18.    [Debtors] (and any others for whom Services are provided) may not recover from [EY LLP], in contract or tort, under statute or otherwise, aggregate damages in excess of the fees actually paid for the Services that directly caused the loss in connection with claims arising out of this Agreement or otherwise relating to the Services. This limitation will not apply to losses caused by EY LLP's or EY Persons' gross negligence, fraud or willful misconduct or to the extent prohibited by applicable law or professional regulations.

19.    [Debtors] shall make any claim relating to the Services or otherwise under this Agreement no later than one year after [Debtors] became aware (or ought reasonably to have become aware) of the facts giving rise to any alleged such claim and in any event, no later than three years after the completion of the particular Services. This limitation will not apply to the extent prohibited by applicable law or professional regulations.

20.    [Debtors] may not make a claim or bring proceedings relating to the Services or otherwise under this Agreement against any other EY Firm or subcontractors, members, shareholders, directors, officers, partners, principals or employees of EY LLP or any other EY Firm ("EY Persons"). [Debtors] shall make any claim or bring proceedings only against [EY LLP]. The limitations in Sections 17 through 19 and this Section 20 are intended to benefit the other EY Firms and all EY Persons, who shall be entitled to enforce them.

10.    The Debtors or EY LLP may terminate the Engagement Letter at any time, but in any event the Engagement Letter will terminate upon the effective date of the Debtors' confirmed plan of reorganization, or liquidation of the Debtors' assets under chapter 11 or 7 of the Bankruptcy Code, or otherwise.  Notwithstanding any such termination, the provisions of Engagement Letter set forth in the sections entitled "Fees and Billings", "Fees and Expenses", and "Other Matters," including, but not limited to the alternative dispute provision in the Engagement Letter, will remain operative and in full force and effect regardless of any termination or expiration of the Engagement Letter and shall survive completion of the Debtors' bankruptcy whether through a confirmed plan of reorganization, liquidation of the Debtors' assets under chapter 11 or 7 of the Bankruptcy Code, or

otherwise.    Upon any such termination of the Engagement Letter, the Debtors will remain

obligated to pay all accrued fees and expenses as of the effective date of such termination.

11.    The MTSA also contains the following indemnification language with respect to

disclosures of EY LLP reports or third party uses of any such report:

> To the fullest extent permitted by applicable law and professional
> regulations, [Debtors] shall indemnify [EY LLP], the other EY Firms
> and the EY Persons against all claims by third parties (including your
> affiliates) and resulting liabilities, losses, damages, costs and expenses
> (including reasonable external and internal legal costs) arising out of
> the disclosure of any Report (other than Tax Advice), or a third party's
> use of or reliance on any Report (including Tax Advice).

- 8 -

## Updated Disclosure of Connections

12.      As stated above, EY LLP has previously researched its connections to parties in interest in these cases as described in the Prior Affidavits and disclosed the results of such research and its connections to parties in interest in and pursuant to the Prior Affidavits.   EY LLP also submits this Declaration to disclose the results of an update to its checks for certain connections with parties in interest involved in these chapter 11 cases, in accordance with the processes described in the Prior Affidavits.

13.      EY LLP was provided with a list of the names of new parties in interest in these cases falling into the categories described in paragraph 4 of the Original Affidavit (the "New Interested Parties").  EY LLP also identified interested parties in such categories as to whom EY LLP had no known connection or a prior connection as of the filing of the results of its most recent check for connections to parties in interest, based upon EY LLP's connections research described in the Prior Affidavits (the "No-Connection Parties," and together with the New Interested Parties, the "Connections Check Update Parties").   The names of the Connections Check Update Parties are set forth in **Exhibit 2** to this Affidavit.   EY LLP searched certain databases of EY LLP to determine whether EY LLP has provided in the recent past or is currently providing services to the Connections Check Update Parties listed in **Exhibit 2** attached hereto.   To the extent that EY LLP's research of relationships with the Connections Check Update Parties indicated that EY LLP has provided in the recent past, or currently provides, services to any of these entities in matters unrelated to these chapter 11 cases, EY LLP has so indicated in **Exhibit 2** to this Declaration.

14.      To the best of my knowledge, information and belief, formed after reasonable inquiry, except as otherwise stated in this Declaration and the Prior Affidavits (collectively, the "Affidavits"), none of the services rendered by EY LLP to the entities set forth in **Exhibit 2**

hereto have been in connection with the Debtors or these chapter 11 cases.  EY LLP continues to believe these relationships will not impair EY LLP's ability to objectively perform professional services on behalf of the Debtors.

15.     EY LLP may perform services for its clients that relate to the Debtors merely because such clients may be creditors or counterparties to transactions with the Debtors and such clients' assets and liabilities may thus be affected by the Debtors' status.  The disclosures set forth herein do not include specific indication of such services.  If such clients of EY LLP are designated parties in interest in these cases, **Exhibit 2** attached hereto indicates that they are also clients of EY LLP.

16.     As set forth in the Prior Affidavits, EY LLP appears in cases, proceedings and transactions involving many different attorneys, financial advisors and creditors, some of which may represent or be claimants and/or parties in interest in these chapter 11 cases.  The Connections Check Update Parties that are professionals listed on **Exhibit 3** hereto which are involved in these chapter 11 cases have in the past and/or are currently providing services to EY LLP as described on **Exhibit 3**.  To the best of my knowledge, no such professionals involved in these chapter 11 cases have in the past and/or are currently providing services to EY LLP related to these chapter 11 cases, and EY LLP does not have any relationship with any such professional that is materially adverse to the Debtors.

17.     EY LLP is currently a party or participant in certain litigation matters involving parties-in-interest in these chapter 11 cases.  Case information and the parties-in-interest involved in these matters are provided in **Exhibit 4** to this Declaration.

18.     Certain parties in interest are lenders to EY LLP:  Barclays Bank, Citibank, NA, Fifth Third Bank, JP Morgan Chase Bank, PNC Bank, Wachovia Bank NA and Wells Fargo Bank are participants in EY LLP's revolving credit program; EY LLP has borrowed long-term

debt from Prudential Insurance Company of America; and Fidelity & Deposit Company of Maryland is a surety bond company to EY LLP.

19.    EY LLP has thousands of professional employees.  It is possible that certain employees of EY LLP have business associations with the Connections Check Update Parties or hold claims against the Debtors or securities of the Debtors or interests in mutual funds or other investment vehicles that may own securities of the Debtors.

20.    As was described in the Original Affidavit, the Ernst & Young global network encompasses independent professional services practices conducted by separate legal entities throughout the world.  Such legal entities are members of Ernst & Young Global Limited ("EYGL"), a company incorporated under the laws of England and Wales and limited by guarantee, with no shareholders and no capital. The member firms of EYGL have agreed to operate certain of their professional practices in accordance with agreed standards, but remain separate legal entities.  EY LLP is a member of EYGL.

21.    As was also described in the Original Affidavit, pursuant to a January 14, 2009 order of the Ontario Superior Court of Justice, Ernst & Young Inc., a Canadian corporation ("EYI"), another EYGL member firm, is the court-appointed "Monitor" of the Debtors' Canadian ultimate corporate parent, Nortel Networks Corporation ("NNC"), Nortel Networks Inc's Canadian direct corporate parent, Nortel Networks Limited ("NNL") and certain other Canadian subsidiaries, under the Companies Creditors' Arrangement Act (the "CCAA") in a concurrent insolvency proceeding in Canada (the "CCAA Proceeding").  The CCAA mandates the appointment of a Monitor, which is an independent court officer, to supervise and assist the entities subject to the CCAA Proceeding.  The duties of the Monitor include reporting to the Canadian court on the business and financial affairs of the CCAA petitioners and developing and implementing a CCAA plan.  EYI continues to serve as the Monitor in the CCAA Proceeding. EYI will not be engaged to provide Services to the Debtors.

22.     As was disclosed in the Original Affidavit, on January 14, 2009, the English High Court of Justice (the "English Court") placed nineteen of Nortel's European affiliates, including Nortel Networks UK Limited, (collectively, the "EMEA Companies") into administration under the control of individuals from Ernst & Young UK, another EYGL member firm.  On January 28, 2008, the EMEA Companies each obtained an administration order from the English Court under the Insolvency Act of 1986 ("IA").  Under the terms of the orders, Ernst & Young UK, has been appointed as administrator of each of the EMEA Companies and will continue to manage the EMEA Companies and operate their businesses under the jurisdiction of the English Court and in accordance with the applicable provisions of the IA.  Ernst & Young UK will not be engaged to provide Services to the Debtors.

23.     In the Prior Affidavits, during the tenure of its retention as an ordinary course professional, EY LLP disclosed that it was performing services in connection with three potential purchasers' due diligence of acquisitions of assets from the Debtors, which did not involve the services that EY LLP was performing for the Debtors under its ordinary course professional retention.  All such work of EY LLP in respect of the Debtors has ceased.

24.     At the Debtors' request and subject to the Debtors' written consent and approval of the Court, EY LLP will subcontract with certain other EYGL firms and other persons and entities in accordance with the Engagement Letter.  The Debtors have agreed in writing that, in accordance with prior subcontracting used, EY LLP will subcontract services to Ernst & Young Puerto Rico, Ernst & Young Han Young (Korea); Ernst & Young Private Ltd. ("EYPL") and EYGBS (India) Private Ltd., and also continue to use the services of the global shared services center operated by the latter two entities as described in my Fourth Supplemental Affidavit.

25.     In addition, EYPL performs tax services for Nortel Networks India International Inc. under direct engagement letters between EYPL and Nortel Networks India International Inc.

26.    To the best of my knowledge, information, and belief, neither the undersigned nor the EY LLP professionals expected to assist the Debtors in these chapter 11 cases are connected to the Judge, U.S. Trustee, or Assistant U.S. Trustee assigned to these chapter 11 cases.

27.    At the Debtors' request, EY LLP began providing services under the new Engagement Letter as of March 1, 2011.  Therefore, the Debtors and EY LLP request approval of the Application be granted as of March 1, 2011.

28.    As was disclosed in the Original Affidavit , as of the Petition Date, EY LLP was owed $133,058 for prepetition services.  EY LLP has waived (and did not file a proof of claim for) any such prepetition amounts.  During the 90 days prior to the Petition Date, the Debtors paid EY LLP $5,251,943 for services rendered.

29.    Despite the efforts described above to identify and disclose connections with parties-in-interest in these chapter 11 cases, because the Debtors are a large enterprise with numerous creditors and other relationships, EY LLP is unable to state with certainty that every client representation or other connection of EY LLP with parties-in-interest in these chapter 11 cases has been disclosed herein.  In this regard, if EY LLP discovers additional information that requires disclosure, EY LLP will file supplemental disclosures with the Court.

30.    EY LLP and the professionals that it employs are qualified to represent the Debtors in the matters for which EY LLP is proposed to be employed.

31.    Except as otherwise set forth herein, EY LLP has not shared or agreed to share any of its compensation in connection with this matter with any other person.

32.    To the best of my knowledge, information and belief formed after reasonable inquiry, except as otherwise stated herein or in the Prior Affidavits, EY LLP does not hold nor represent any interest materially adverse to the Debtors in the matters for which EY LLP is proposed to be retained.  The proposed employment of EY LLP is not prohibited by or improper

under Bankruptcy Rule 5002.  Accordingly, I believe that EY LLP is eligible for retention by the Debtors under title 11 of the United States Code (the "Bankruptcy Code").

33.     EY LLP intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and the Engagement Letter, and pursuant to any additional procedures that may be established by the Court in these chapter 11 cases.

*{Signature Page Follows}*

- 14 -

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___2 | 18___ , 2011

_James Scott_

James Scott

DETR_1581103.2

# <u>Exhibit 1</u>

**Engagement Letter**



**Ernst & Young LLP**
4130 ParkLake Avenue Suite 500
Raleigh, NC  27612

Tel: 919-981-2800
Fax: 866-572-4914
www.ey.com

March 1, 2011

Mr. John J. Ray, III
Principal Officer
Nortel Networks Inc.
2221 Lakeside Boulevard
Richardson, Texas 75082-4305

Mr. Timothy Ross
Chief Financial Officer
Nortel Networks India International Inc.
and Nortel Networks Venture LLC
2221 Lakeside Boulevard
Richardson, Texas 75082-4305

MASTER TAX SERVICES AGREEMENT

Dear John and Tim:

Thank you for choosing Ernst & Young LLP ("we" or "EY") to perform professional services (the "Services") for Nortel Networks Inc. ("NNI") and its U.S. debtor affiliates, whose bankruptcy proceedings are pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under chapter 11 of the United States Code (the "Bankruptcy Code") (together with NNI, the "Nortel Debtors"), and Nortel Networks India International Inc. and Nortel Ventures LLC (collectively, together with the Nortel Debtors, "you" or "Client").  Our performance of Services is contingent upon the Bankruptcy Court's approval of our retention in accordance with the terms and conditions that are set forth in this Agreement.  We appreciate the opportunity to assist you and look forward to working with you.

For each project that we agree to undertake for you, we will prepare a Statement of Work describing the particular Services, as well as any advice, presentations, or filings to be made, our fees therefor, and any other project-specific arrangements, which shall be subject to approval of the Bankruptcy Court.  All of the Services will be subject to the terms and conditions of this letter, its attachments, including the General Terms and Conditions, and the applicable Statement of Work (together, this "Agreement").

We may enter into Statements of Work with you for a period of five years following the date of this letter, although we may agree with you to extend that period, including by executing additional Statements of Work referencing this Agreement.   This Agreement shall be effective as of March 1, 2011.

Please sign this letter in the space provided below to indicate your agreement with these arrangements and return it to James E. Scott at your earliest convenience.  By signing below you represent you have authority to bind the respective entities that comprise Client as described in your signature block.  If you

# ⠿ ERNST & YOUNG

have any questions about any of these materials, please do not hesitate to contact James E. Scott so that we can address any issues you identify before we begin to provide any Services under this Agreement.

Very truly yours,

*Ernst & Young LLP*

Ernst & Young LLP

AGREED:

**Nortel Networks Inc. and its U.S. debtor affiliates**

By: _____
Name: Mr. John J. Ray, III
Title:  Principal Officer

Date: _____

**Nortel Networks India International Inc.**

By: _____
Name: Mr. Timothy Ross
Title:  VP – Finance and Corporate Secretary

Date: _2 - 18 - 11_____

**Nortel Ventures LLC**

By: _____
Name: Mr. Timothy Ross
Title:  VP – Finance and Corporate Secretary

Date: _2 - 18 - 11_____

Date: _____

Nortel Networks Inc.

2

A member firm of Ernst & Young Global Limited



# ERNST & YOUNG

have any questions about any of these materials, please do not hesitate to contact James E. Scott so that we can address any issues you identify before we begin to provide any Services under this Agreement.

Very truly yours,

*Ernst & Young LLP*

Ernst & Young LLP

AGREED:

**Nortel Networks Inc. and its U.S. debtor affiliates**

By: _____

Name:  Mr. John J. Ray, III

Title:   Principal Officer

Date: ____2/8/11_____

**Nortel Networks India International Inc.**

By: _____

Name: Mr. Timothy Ross

Title:   VP – Finance and Corporate Secretary

Date: _____

**Nortel Ventures LLC**

By: _____

Name: Mr. Timothy Ross

Title:   VP – Finance and Corporate Secretary

Date: _____

Date: _____



# GENERAL TERMS AND CONDITIONS

## Our Relationship with You

1. We will perform the Services in accordance with applicable professional standards, including those established by the American Institute of Certified Public Accountants ("**AICPA**").

2. We are a member of the global network of Ernst & Young firms ("**EY Firms**"), each of which is a separate legal entity.

3. We will provide the Services to you as an independent contractor and not as your employee, agent, partner or joint venturor. Neither you nor we have any right, power or authority to bind the other.

4. Subject to Section 5 below and any necessary Bankruptcy Court approval and upon receiving your prior written consent, such consent not to be unreasonably withheld, we may subcontract portions of the Services to other EY Firms or other persons or entities, who may deal with you directly. Nevertheless, we alone will be responsible to you for the Reports (as defined in Section 12 below), the performance of the Services, and our other obligations under this Agreement. From time to time, non-CPA personnel may perform the Services. It is our understanding that subcontracting will be required in order to perform certain services contemplated by the parties.

5. We recognize that certain EY Firms are retained and employed by certain of Client's affiliates that are subject to creditor protection proceedings in foreign jurisdictions, including Ernst & Young Inc., acting as the Canadian Monitor for certain of Client's Canadian affiliates, including their corporate parents Nortel Networks Corporation and Nortel Networks Limited, and Ernst & Young LLP (UK) and certain individuals associated therewith, acting as the Joint Administrators for certain of Client's European, Middle Eastern and African affiliates. EY shall not disclose Client Information, including tax return information and other confidential information, to any of its affiliates, including without limitation Ernst & Young Inc., Ernst & Young LLP (UK) and the individuals associated therewith, and their respective employees, partners, consultants and contractors, without prior written consent by Client, provided that no such restriction shall apply to provision of Client Information or Confidential Information (as defined in Section 24 below) to, from or between persons or entities as to which Client approves subcontracting or with whom Client has entered into an agreement in connection with the Services, to the extent necessary for the provision of the Services for Client.

6. We will not assume any of your management responsibilities in connection with the Services. We will not be responsible for the use or implementation of the output of the Services, although we may otherwise provide advice and recommendations to assist you in your management functions and making decisions.

## Your Responsibilities

7. You shall assign a qualified person to oversee the Services. You are responsible for all management decisions relating to the Services, the use or implementation of the output of the Services and for determining whether the Services are appropriate for your purposes.

8. You shall provide (or cause others to provide) to us, promptly, the information, resources and assistance (including access to records, systems, premises and people) that we reasonably require to perform the Services.

9. To the best of your knowledge, all information provided by you or on your behalf ("**Client Information**") will be accurate and complete in all material respects. The provision of Client Information to us will not infringe any copyright or other third-party rights.

10. We will rely on Client Information made available to us and, unless we expressly agree otherwise, will have no responsibility to evaluate or verify it.

11. You shall be responsible for your personnel's compliance with your obligations under this Agreement.

## Our Reports

12. Any information, advice, recommendations or other content of any reports, presentations or other communications we provide under this Agreement ("**Reports**"), other than Client Information, are for your internal use only (consistent with the purpose of the particular Services).

13. You may not disclose a Report (or any portion or summary of a Report), or refer to us or to any other EY Firm in connection with the Services, except:

(a) to your lawyers (subject to these disclosure restrictions), who may use it only to give you advice relating to the Services,

Nortel Networks Inc.



(b) to the extent, and for the purposes, required by subpoena or similar legal process or as otherwise required by applicable law (of which you will promptly notify us),

(c) to other persons (including your affiliates) with our prior written consent, who have executed an access letter substantially in the form prescribed by the applicable Statement of Work and who may use it only as we have specified in our consent, or

(d) to the extent it contains Tax Advice, as set forth in Section 14.

If you are permitted to disclose a Report (or a portion thereof), you shall not alter, edit or modify it from the form we provided.

14. You may disclose to anyone a Report (or any portion or summary thereof) solely to the extent that it relates to tax matters, including tax advice, tax opinions, tax returns, or the tax treatment or tax structure of any transaction to which the Services relate ("**Tax Advice**"). With the exception of tax authorities, you shall inform those to whom you disclose Tax Advice that they may not rely on it for any purpose without our prior written consent.

15. You may incorporate into your internal documents any summaries, calculations or tables based on Client Information contained in a Report, but not our recommendations, conclusions or findings. If you then disclose such internal documents to anyone, you shall assume sole responsibility for their contents and you shall not refer to us or any other EY Firm in connection with them.

16. You may not rely on any draft Report. We shall not be required to update any final Report for circumstances of which we become aware, or events occurring, after its delivery.

**Limitations**

17. You (and any others for whom Services are provided) may not recover from us, in contract or tort, under statute or otherwise, any amount with respect to loss of profit, data or goodwill, or any other consequential, incidental, indirect, punitive or special damages in connection with claims arising out of this Agreement or otherwise relating to the Services, whether or not the likelihood of such loss or damage was contemplated.

18. You (and any others for whom Services are provided) may not recover from us, in contract or tort, under statute or otherwise, aggregate damages in excess of the fees actually paid for the Services that directly caused the loss in connection with claims arising out of this Agreement or otherwise relating to the Services. This limitation will not apply to losses caused by our or EY Persons' gross

negligence, fraud or willful misconduct or to the extent prohibited by applicable law or professional regulations.

19. You shall make any claim relating to the Services or otherwise under this Agreement on or before one year after you became aware (or ought reasonably to have become aware) of the facts giving rise to any alleged such claim, and in any event, no later than three years after the completion of the particular Services. This limitation will not apply to the extent prohibited by applicable law or professional regulations.

20. You may not make a claim or bring proceedings relating to the Services or otherwise under this Agreement against any other EY Firm or subcontractors, members, shareholders, directors, officers, partners, principals or employees of EY LLP or of any other EY Firm ("**EY Persons**"). You shall make any claim or bring proceedings only against us. The limitations in Sections 17 through 19 and this Section 20 are intended to benefit the other EY Firms and all EY Persons, who shall be entitled to enforce them.

**Indemnity**

21. To the fullest extent permitted by applicable law and professional regulations, you shall indemnify EY, the other EY Firms and the EY Persons against all claims by third parties (including your affiliates) and resulting liabilities, losses, damages, costs and expenses (including reasonable external and internal legal costs) arising out of the disclosure of any Report (other than Tax Advice), or a third party's use of or reliance on any Report (including Tax Advice).

**Intellectual Property Rights**

22. We may use data, software, designs, utilities, tools, models, systems and other methodologies and know-how ("**Materials**") that we own or license in performing the Services. Notwithstanding the delivery of any Reports, we retain all intellectual property rights in the Materials (including any improvements or knowledge developed while performing the Services), and in any working papers compiled in connection with the Services (but not Client Information reflected in them).

23. Upon payment for particular Services, you may use any Materials included in the Reports relating to those Services, as well as the Reports themselves, as permitted by this Agreement.

**Confidentiality**

24. Except as otherwise permitted by this Agreement, neither party may disclose to third parties the contents of this Agreement or any information (other than Tax Advice)



provided by or on behalf of the other party that ought reasonably to be treated as confidential and/or proprietary ("**Confidential Information**"). Either party may, however, disclose such information to the extent that it:

(a) is or becomes public other than through a breach of this Agreement,

(b) is subsequently received by the recipient from a third party who, to the recipient's knowledge, owes no obligation of confidentiality to the disclosing party with respect to that information,

(c) was known to the recipient at the time of disclosure or is thereafter created independently,

(d) is disclosed as necessary to enforce the recipient's rights under this Agreement, or

(e) must be disclosed under applicable law, legal process or professional regulations, including, without limitation, for purposes of filings with the Bankruptcy Court as part of the Nortel Debtors' application to retain and employ EY in the Nortel Debtors' bankruptcy proceedings or fee applications or responses to objections to fee applications.

25.    Either party may use electronic media to correspond or transmit information and such use will not in itself constitute a breach of any confidentiality obligations under this Agreement.

26.    Unless prohibited by applicable law, and subject to Section 5 above, we may disclose Client Information to other EY Firms and EY Persons to facilitate performance of the Services, to comply with regulatory requirements, to check conflicts, or for quality, risk management or financial accounting purposes.

27.    With respect to any Services, if U.S. Securities and Exchange Commission auditor independence regulations apply to the relationship between you or any of your associated entities and any EY Firm, or if you (or any entity or person related to you) have any filing obligation with the U.S. Internal Revenue Service, you represent, to the best of your knowledge, as of the date of this Agreement, and as of the date of each Statement of Work hereunder, that neither you nor any of your affiliates has agreed, either orally or in writing, with any other advisor to restrict your ability to disclose to anyone the tax treatment or tax structure of any transaction to which the Services relate. An agreement of this kind could impair an EY Firm's independence as to your audit or that of any of your affiliates, or require specific tax disclosures as to

those restrictions. Accordingly, you agree that the impact of any such agreement is your responsibility.

**Data Protection**

28.    We may collect, use, transfer, store or otherwise process (collectively, "**Process**") Client Information that can be linked to specific individuals ("**Personal Data**"). We may Process Personal Data in various jurisdictions in which we and the other EY Firms operate (which are listed at www.ey.com). We will Process Personal Data in accordance with applicable law and professional regulations, including, where applicable, the European Union Safe Harbor program of the U.S. Department of Commerce, in which EY participates. We will require any service provider that Processes Personal Data on our behalf to adhere to such requirements. If any Client Information is protected health information under the Health Insurance Portability and Accountability Act, as amended, this Agreement is deemed to incorporate all of the terms otherwise required to be included in a business associate contract relating to such information.

29.    You warrant that you have the authority to provide the Personal Data to us in connection with the performance of the Services and that the Personal Data provided to us has been Processed in accordance with applicable law.

**Fees and Expenses Generally**

30.    You shall pay our professional fees and specific expenses in connection with the Services as detailed in the applicable Statement of Work. You shall also reimburse us for other reasonable expenses incurred in performing the Services.  Our fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which you shall pay (other than taxes imposed on our income generally).  We may receive rebates in connection with certain purchases, which we use to reduce charges that we would otherwise pass on to you.

31.    Subject to Bankruptcy Court approval, if necessary, we may charge additional professional fees if events beyond our control (including your acts or omissions) affect our ability to perform the Services as originally planned or if you ask us to perform additional tasks.

32.    If we are required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or this Agreement, you shall reimburse us for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, unless we are a party to the proceeding or the subject of the investigation.



**Force Majeure**

33.  Neither party shall be liable for breach of this Agreement (other than payment obligations) caused by circumstances beyond such party's reasonable control.

**Term and Termination**

34.  This Agreement applies to all Services performed at any time after the date of this Agreement.

35.  This Agreement shall terminate upon the completion of the Services. This Agreement and/or any or all Statements of Work may be terminated at any time by you or us, but in any event this Agreement including all Statements of Work will expire upon the effective date of the Nortel Debtors' confirmed chapter 11 plan, or liquidation of your assets under chapter 11 or 7 of the Bankruptcy Code or otherwise.

36.  You shall pay us for all work-in-progress, Services already performed, and expenses incurred by us, in each case pursuant to this Agreement, up to and including the effective date of the termination of this Agreement, subject to Bankruptcy Court authorization. Payment is due within 30 days following receipt of our invoice for these amounts or as quickly as the Bankruptcy Code, Bankruptcy Rules, Local Rules and any relevant court orders allow.

37.  Our respective confidentiality obligations under this Agreement shall continue for a period of three years following the termination of this Agreement. The other provisions of this Agreement that give either party rights or obligations beyond its termination including, without limitation, paragraphs 38 and 39, shall continue indefinitely following the termination of this Agreement and shall survive completion of the Nortel Debtors' bankruptcy proceedings whether through a confirmed plan of reorganization under chapter 11 of the Bankruptcy Code, liquidation of Client's assets under chapter 7 of the Bankruptcy Code, or otherwise.

**Governing Law and Dispute Resolution**

38.  This Agreement, and any non-contractual obligations arising out of this Agreement or the Services, shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made, and fully to be performed, therein by residents thereof.

39.  Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of Client or its subsidiaries or of EY) shall be brought in the Bankruptcy Court or the applicable district court (if such district court withdraws the reference) and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have subject matter jurisdiction of such claims or controversies) for the resolution of such claims, causes of action or lawsuits.

The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court, or the district court upon withdrawal of the reference, does not have or retain subject matter jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures as set forth in Appendix 1 to these Terms and Conditions. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon Client, EY and any and all successors and assigns thereof

**Miscellaneous**

40.  This Agreement constitutes the entire agreement between the parties as to the Services and the other matters it covers, and supersedes all prior agreements, understandings and representations with respect thereto, including any confidentiality agreements previously delivered, upon Bankruptcy Court approval. Except as expressly provided otherwise herein, this Agreement does not modify the terms or provisions for other professional services executed prior to the date hereof.

41.  Both parties may execute this Agreement, including Statements of Work (and modifications to them) by electronic means and each party may sign a different copy of the same document. Both parties must agree in writing to modify this Agreement or any Statement of Work hereunder, subject to Bankruptcy Court approval, if necessary.

42.  You represent that the person signing this Agreement and any Statement of Work hereunder on your behalf is expressly authorized to execute it and to bind you and any of your affiliates or others for whom Services are performed to its terms. You also represent that this



Agreement has, if necessary, been considered and approved by your Audit Committee.

43.  You agree that we and the other EY Firms may, subject to professional obligations, act for other clients, including your competitors.

44.  Neither party may assign any of its rights, obligations or claims under this Agreement without prior written consent of the other party.

45.  If any provision of this Agreement (in whole or part) is held to be illegal, invalid or otherwise unenforceable, the other provisions shall remain in full force and effect.

46.  If there is any inconsistency between provisions in different parts of this Agreement, those parts shall have precedence as follows (unless expressly agreed otherwise): (a) the cover letter from EY to Mr. John J. Ray, III, Client's Principal Officer, dated March 1, 2011, (b) the applicable Statement of Work and any attachments thereto, (c) these General Terms and Conditions, and (d) other attachments to this Agreement.

47.  We may use your name publically to identify you as a client, but we may refer to you in connection with the Services only if it is a matter of public knowledge that we are providing them (or have provided them).

48.  By agreement to the provision of the Services, we are not providing a guarantee to you that our performance of those Services pursuant to the terms and conditions set forth in this Agreement will guarantee your successful reorganization under chapter 11.

Nortel Networks Inc.



## APPENDIX 1

## DISPUTE RESOLUTION PROCEDURES

### Mediation

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator within 15 days of the written notice, the International Institute for Conflict Prevention and Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties and must confirm in writing that he or she is not, and will not become during the term of the mediation, an employee, partner, executive officer, director, or substantial equity owner of any EY audit client.

The mediator shall conduct the mediation as he/she determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration in accordance with this Appendix 1. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

### Arbitration

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control. The place of arbitration shall be New York, New York.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the selection process provided in Rule 6.4 of the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be resolved by the arbitrators based upon the Federal Arbitration Act. No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures and has confirmed in writing that he or she is not, and will not



become during the term of the arbitration, an employee, partner, executive officer, director, or substantial equity owner of any EY audit client.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort or to make an award or impose a remedy that (i) is inconsistent with the agreement to which these procedures are attached or any other agreement relevant to the dispute, or (ii) could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential.  The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards.  Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such notice is prohibited by applicable law, regulatory requirements or professional standards.

Notwithstanding anything to the contrary herein, the arbitration provisions set forth herein, and any arbitration conducted thereunder, shall be governed exclusively by the Federal Arbitration Act, title 9 of the United States Code, to the exclusion of any state or municipal law of arbitration.

Notwithstanding anything to the contrary herein, the arbitration provisions set forth herein, and any arbitration conducted thereunder, shall be governed exclusively by the Federal Arbitration Act, title 9 of the United States Code, to the exclusion of any state or municipal law of arbitration.

The arbitration award shall be final and binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

Nortel Networks Inc.



**Statement of Work**

This Statement of Work, which is effective as of March 1, 2011 (this "SOW"), is made by Ernst & Young LLP ("we" or "EY") and Nortel Networks Inc. ("NNI"), its U.S. debtor affiliates listed in Appendix A (together with NNI, the "Nortel Debtors"), Nortel Networks India International Inc. and Nortel Ventures LLC (collectively, "you," "Client" or "Nortel"), pursuant to the Master Tax Services Agreement, dated as of March 1, 2011 (the "Agreement"), between EY and Nortel, which was executed in connection with the tax services to be provided by EY to Client with respect to the Nortel Debtors' chapter 11 proceedings pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and describes certain tax services that EY will perform for Client.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the tax operations outsourcing Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Agreement.    Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings set forth in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

**Scope of services**

As set forth below, we will provide Services for tax operations outsourcing ("EY Core Services") and other variable Services ("EY Variable Services") to you starting March 1, 2011, contingent upon the Bankruptcy Court's approval of our retention in accordance with the terms and conditions set forth in the Agreement (inclusive of this SOW).

We will provide to you the Services described herein, which may be modified from time to time by mutual written consent by the parties, subject to Bankruptcy Court approval.

EY Core Services will consist of work in the following areas:

***Tax Operations***

Nortel will outsource the tax department to EY.    The function includes:

- Working with management on the administration of the tax department
- Facilitation of information from various Nortel departments
- Financial reporting and tax account reconciliation
- Maintaining a tax calendar and preparing, signing as preparer, and providing the following tax returns to Nortel for signature by Nortel and then assisting Nortel with the filing of such tax returns:



- o US federal income tax returns and required US reporting of foreign operations
- o State and local income/franchise tax returns
- o Annual reports
- o Business licenses
- Sales and use tax returns
- Coordination of property tax filings
- Handling routing federal, state and local tax correspondence

All client copies of the tax return(s) will be presented to Client in an electronic format.

## *Federal*

- Research regarding US federal income tax issues relating to transactions associated with the Nortel Debtors' bankruptcy, winding down and liquidation, including without limitation, determination of the income tax consequences of disposition, dissolution and other termination of assets and legal entities including determinations of basis in assets and income tax characterization of disposition, liquidation or other termination events
- Analysis of the income tax consequences of unwinding and settling various intercompany transactions and claims
- Analysis of the income tax consequences of settling obligations with third parties
- Analysis of the income tax matters specific to the Nortel Debtors' bankruptcy proceedings

## *International*

- Research regarding the US and international income tax consequences and review of local foreign income tax advice regarding winding down and liquidating the foreign operations of Client and other Nortel entities to the extent they have direct tax consequences to Client
- Determination of the US income tax consequences and review of local foreign income tax advice regarding the disposition, dissolution, or other termination of assets, legal entities and branches
- Calculation of the accumulated earnings and profits of locations to be terminated
- Determination of the US income tax consequences and review of local foreign income tax advice regarding the settlement and/or forgiveness of intercompany claims and negative equity

## *Indirect*

- Research regarding the state and local tax issues and consequences of bankruptcy, winding down and liquidation
- Assistance regarding the availability, limitations, and preservation of tax attributes, including net operating losses and alternative minimum tax credits



- Analysis regarding reduction or deferral of tax costs in connection with stock or asset sales
- Assistance with state and local tax issues arising in connection with the bankruptcy proceedings, including state and local tax notices, management of state audit process through all administrative levels, and analysis of state and local tax issues such as income/franchise, sales/use, and property taxes

*Controversy*

- Assistance with the risks associated with the federal tax controversy including IRS examination

At the request of Client, upon execution of a letter substantially in the form of Exhibit 1 attached hereto in respect of each tax year for which access to such work papers is sought, EY will provide Client with copies of EY's final work papers, in a format regularly maintained by EY, produced by EY for purposes of preparing computations in connection with the services in scope.

EY Variable Services include specific federal, state and international tax assistance as provided below. It is recognized that variable resources may be needed to supplement unbudgeted tax department tasks/projects and/or unplanned attrition for Client.    Deployment of these variable resources will be agreed upon in advance by Client, and will be billed on a monthly basis using the rate card below. EY Variable Services will consist of the following:

- Analysis of the US federal tax consequences of the Internal Revenue Code not specified under EY Core Services.
- Consultation with Client's outside counsel regarding certain tax issues
- Tax modeling of allocation of proceeds from asset sales
- Assessment of local country advice
- Amended state income tax returns due to IRS determination
- State income tax controversy resulting in assistance greater than 500 hours per year

Client acknowledges and agrees that, whether or not this SOW has been approved by the Bankruptcy Court at the time any draft Reports are rendered, any such draft Reports rendered by EY prior to the delivery of its final Reports are preliminary in nature and cannot be relied upon for any purpose, including penalty protection.

**Out-of-Scope Services**

Out-of-Scope Services are any activities not described as EY Core Services or EY Variable Services, as indicated above under Scope of Services, and are not covered by the fees stated herein.    These services will be considered outside the scope of this SOW and are the responsibility of Client to perform on a timely basis unless otherwise agreed by the parties in writing in the event Client seeks to



engage EY for such Out-of-Scope Services; any such engagement shall be documented in a further SOW or amendment, subject to necessary Bankruptcy Court approval.    The following items are services that are Out-of-Scope Services:

- Tax compliance, administration, and controversy relating to foreign entities, including calculations of earnings and profits (E&P) and previously taxed income (PTI) for periods 2008 and prior
- Tax consultation regarding transfer pricing based upon Nortel Transfer Pricing lead terminating employment prior to December 31, 2011
- IRS or State Appeals or Litigation
- Non-income tax IRS audits such as excise, employment, customs, or benefit plans or tax audit of other taxing jurisdictions
- Employment tax consulting services
- Preparation and filing of request for change of year end
- Advice or determinations regarding what expenses may be qualified research expenses under section 41 of the Internal Revenue Code or comparable state statutes
- Consultation regarding tax data retention and future tax department technology needs

**Your obligations**

We draw your attention to the reservations set out in paragraph 6 of the General Terms and Conditions of the Agreement, as well as your management responsibilities under paragraph 7, and your representation, as of the date hereof, under paragraph 27 thereof.

**Additional terms and conditions**

Client shall maintain books and records as required by law and as is necessary to support any positions taken on any tax return included within the scope of this engagement in the event of any taxing authority examination.    Client shall prepare and record all tax provisions, and reconcile all tax accounts.

The Services described in this letter are not to be considered "accounting advice" to which SAS No. 50, amended by SAS No. 97, would apply, as the services rendered constitute tax technical services, tax calculations, compilation of tax data, and information related to tax matters at the direction of Client with no judgment relating to accounting matters including liabilities for tax exposure items or valuation allowances.    Thus, the required auditor communications pursuant to SAS No. 97 are not considered applicable.

Client shall have full responsibility for all decisions on all tax accounting matters, tax accounting procedures, and the calculation of Client's tax provision and the effective tax rate, as well as decisions with respect to the appropriate application of U.S. and non-U.S. GAAP, as to which Client's



independent auditors should concur.    EY agrees to provide all reasonably necessary assistance to Client in Client's efforts to comply with all applicable laws and regulations for the foregoing, including explaining relevant issues and positions taken by EY and answering any questions Client's independent auditors may have.    Client will, as reasonably requested by EY, direct its independent auditors to meet with EY to discuss the tax provision and any accounting issues that EY may identify.

Subject to Client's management and other responsibilities in the Agreement and this SOW, EY understands that Client will rely on the Services EY will provide pursuant to the Agreement and this SOW in areas relating to tax matters.    However, EY shall not and does not assume any management responsibility as otherwise set forth in the Agreement and this SOW.

With respect to the Services under this SOW, we will meet with Client's Chief Financial Officer to assist in performing preliminary assessments, preparing an internal tax plan, and recommending priorities among tax projects.    However, the Chief Financial Officer is responsible for decisions in those areas.

EY will not render an assurance report or assurance opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants.    We will not conduct a review to detect fraud or illegal acts.

If we receive a request from a third party for any information relating to our Tax Advice, we will notify you and will not release any such information unless you have executed an appropriate written consent authorizing such disclosure and the third party has executed a non-reliance and release letter acceptable to us in form and substance.

Subject to Bankruptcy Court and Client approval, we may subcontract portions of the Services to a third-party contractor, with Client's prior written consent, such consent not to be unreasonably withheld.

Notwithstanding anything contained in the Agreement to the contrary, the following limitation on liability shall apply to the services performed under this SOW:    You (and any others for whom Services are provided) may not recover from us, in contract or tort, under statute or otherwise, aggregate damages in excess of the fees actually paid in the prior twelve month period for the Services that directly caused the loss in connection with claims arising out of this Agreement or otherwise relating to the Services.    This limitation will not apply to losses caused by our fraud, willful misconduct or gross negligence, or to the extent prohibited by applicable law or professional regulations.

To facilitate performance of the Services, we may (and may, subject to additional terms and conditions, including license agreements, permit your authorized representatives to) use certain



software and tools that allow us to collaborate with you electronically, including Ernst & Young *eRoom* (collectively, "Collaboration Tools").    You shall not, and shall not permit third parties to, copy or modify any Collaboration Tools, or decompile, reverse engineer, or in any way derive any source code from, or create any derivative work of, any Collaboration Tools. COLLABORATION TOOLS ARE PROVIDED "AS IS," AND NONE OF EY OR ANY OTHER PARTY INVOLVED IN THE CREATION, PRODUCTION OR DELIVERY OF ANY COLLABORATION TOOL MAKES ANY WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO ANY COLLABORATION TOOL, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, NON-INFRINGEMENT, TITLE, OR ANY WARRANTY THAT THE OPERATION OF ANY COLLABORATION TOOL WILL BE UNINTERRUPTED, ERROR FREE OR THAT IT WILL BE COMPATIBLE WITH ANY OF YOUR HARDWARE OR SOFTWARE.    EY WILL NOT SUPPORT, MAINTAIN OR UPGRADE ANY COLLABORATION TOOL. YOU ASSUME SOLE RESPONSIBILITY FOR THE USE OF ANY COLLABORATION TOOL AND THE RESULTS THEREOF.    Your use of Collaboration Tools (or use on your behalf) is not a substitute for any documentation or system of records you must create or maintain pursuant to law, including, without limitation, section 6001 of the Internal Revenue Code.    You alone are responsible for maintaining separate copies of any documentation you input into any Collaboration Tool.

Client authorizes EY, its affiliates, and other members of the global Ernst & Young network, including those located outside the United States, to disclose Client's tax return information received or generated in connection with the Services described in this SOW, including prior year tax return information, to and among each other for the purpose of rendering the Services and to discuss and provide related services to you, but only to the extent such affiliates and other members of the global Ernst & Young network are subcontracted to provide Services pursuant to the Agreement (including without limitation with respect to Ernst & Young Han Young, Ernst & Young Puerto Rico, Ernst & Young Private Ltd. and EYGBS (India) Private Ltd.) or are parties with whom Client has entered into an agreement in connection with the Services and such disclosure and discussion is permitted under Section 5 of the General Terms and Conditions of the Agreement.    You acknowledge that this consent will be valid for six (6) years from the date of this SOW.

All Client Information supplied to EY in connection with the Services being provided will remain the property of Client or its licensors.    All tax returns, reports and other documents prepared for Client using this Client Information will be Client's property.    With respect to tax years 2011 and thereafter, EY will retain a copy or copies of such documents in accordance with EY's document retention policies.

**Other**

The economic arrangement above assumes that current Nortel employees that desire employment with EY will have the opportunity to discuss that desire with EY.    They will be subject to EY's normal and customary admittance process.



**Disclosure of Reportable Transactions**

Treasury regulations require taxpayers to file disclosure statements relating to certain tax strategies/transactions that the Internal Revenue Service ("IRS") has identified as Listed Transactions, Transactions of Interest, and any transaction that is substantially similar to a Listed Transaction or Transaction of Interest, and Other Reportable Transactions.    The disclosure statements must be filed with the proper tax returns and also sent separately to the IRS.    In addition, some states have enacted tax shelter legislation requiring taxpayers to file reportable transaction disclosure statements with the appropriate state income and franchise tax returns.    Failure to properly disclose any of these transactions/strategies in which Client directly or indirectly participated may result in the imposition of penalties.

During the process of gathering data to prepare Client's tax return(s), EY requires Client to complete a questionnaire regarding Listed Transactions, Transactions of Interest, and Other Reportable Transactions.    Client shall provide to EY, in advance, the name of the person who should respond to such questionnaire on behalf of Client, his or her position, and telephone number.    EY shall not be liable for any penalties resulting from Client's failure to accurately and timely respond to the questionnaire or to timely file the required disclosure statements.

**Contacts**

You have identified Richard Lydecker, Jr. as your contact with whom we should communicate about these Services. Your contact at EY for these Services will be James E. Scott.

**Engagement Team**

James E. Scott (Partner), Andy Beakey (Partner), Doug Abbott (Partner) and Sarah Jacks (Senior Manager) will lead the EY team in providing the Services.    If any of these individuals ceases to provide tax services to the Client pursuant to the Agreement, EY will so advise the Client and, if that person is replaced, provide the Client with the name of the professional's replacement.    Other staff and subject matter specialists, not identified herein, may be utilized as required to conduct our work in an efficient manner.

**Fees**

Client shall pay EY's fees for the Services and reimburse reasonable expenses incurred in connection with the Services, subject to and in accordance with Bankruptcy Court approval.

The General Terms and Conditions of the Agreement address our fees and expenses generally.

You shall pay us a fixed fee of $5,950,000 for the 2011 EY Core Services.    This fee will be billed in eight (8) monthly installments of $660,000 beginning March 1, 2011 and one (1) installment of $670,000 on November 1, 2011.



The estimated fee for the 2012 EY Core Services is $5,350,000.    This estimated fee will be reviewed in December 2011 and agreed to jointly by January 1, 2012, and any such fee will be billed in eleven (11) equal monthly installments.

The estimated fee for the 2013 EY Core Services is $3,000,000.    This estimated fee will be reviewed in December 2012 and agreed to jointly by January 1, 2013 and any such fee will be billed in ten (10) equal monthly installments.

The fees for the EY Core Services for year 2014 and thereafter will be determined at the beginning of each such year and will be billed thereafter, subject to and in accordance with necessary Bankruptcy Court approval.

EY Variable Services include specific federal, state and international tax assistance as provided herein.    The parties recognize that EY's variable resources may be needed to supplement unbudgeted tax department tasks/projects and/or unplanned attrition for Nortel.    Deployment of theses variable resources will be agreed upon in advance by Nortel, and will be billed on a monthly basis using the rate listed below (which may be adjusted annually to reflect the adjustments to the cost of living index).

| Professional | Rate per hour |
| --- | --- |
| Partner | $640 |
| Executive Director | $545 |
| Senior Manager | $540 |
| Manager | $430 |
| Senior | $300 |
| Staff | $170 |

You shall also pay any value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the Services, including any such taxes and related administrative costs that result from billing arrangements specifically requested by you.

The above EY Core Services, EY Variable Services and Out-of-Scope Services fees are inclusive of travel expenses relating to the Nortel Research Triangle location.

We will submit an itemized and detailed billing statement, and we will request payment of our fees and expenses, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and any relevant court orders. We will submit our invoices as the work progresses and payment of them will be made within 30 days of its receipt, or as quickly as the Bankruptcy Code, Bankruptcy Rules, Local Rules and any relevant court order allow.



The term of this SOW begins March 1, 2011 and ends December 31, 2012, with the terms of this SOW automatically extending until December 31, 2013 unless either party terminates this SOW by providing written notice to the other party 90 days prior to the end of the term of this SOW.

We acknowledge that payment of our fees and expenses hereunder is subject to (i) the jurisdiction and approval of the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code, any order of the Bankruptcy Court approving the retention of EY, and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications; provided that (i) and (ii) shall not apply to the extent our fees are pre-approved under section 328 of the Bankruptcy Code.    By signing below you represent you have authority to bind the respective entities that comprise the Client as described in your signature block.

*[Signature page follows.]*

Nortel Networks, Inc.


**ERNST & YOUNG**

In witness whereof, the parties have executed this SOW as of the date set forth above.

*Ernst & Young LLP*

By: _____

Name:   Mr. James E. Scott


**Nortel Networks Inc. and its U.S. debtor affiliates listed in Appendix A**


By: _____

Name:   Mr. John J. Ray, III

Title:   Principal Officer


**Nortel Networks India International Inc.**

By: _____   2/18/11

Name:   Mr. Timothy Ross

Title:   VP – Finance and Corporate Secretary


**Nortel Ventures LLC**

By: _____   2/18/11

Name:   Mr. Timothy Ross

Title:   VP – Finance and Corporate Secretary


Attachments



In witness whereof, the parties have executed this SOW as of the date set forth above.

*Ernst & Young LLP*

By: _____
Name:   Mr. James E. Scott

**Nortel Networks Inc. and its U.S. debtor affiliates listed in Appendix A**

By: _____
Name:   Mr. John J. Ray, III
Title:    Principal Officer

**Nortel Networks India International Inc.**

By: _____
Name:   Mr. Timothy Ross
Title:    VP – Finance and Corporate Secretary

**Nortel Ventures LLC**

By: _____
Name:   Mr. Timothy Ross
Title:    VP – Finance and Corporate Secretary

Attachments



**Exhibit 1:    Workpaper Acknowledgement**

Mr. John J. Ray, III                                                                      March 1, 2011
Nortel Networks Inc.
2221 Lakeside Boulevard
Richardson, Texas 75082-4305


Dear John:

Nortel Networks Inc. and its U.S. debtor affiliates (collectively, "Client") have asked Ernst & Young LLP ("EY") to provide copies of its final 2010 Tax Workpapers under this SOW (collectively, the "Workpapers") to Client only for (a) its internal use or (b) submission solely to taxing authorities for purposes of responding to inquiries in connection with the examination of Client's tax returns or positions.

Client acknowledges that EY created the Workpapers solely for purposes of preparing its computations in connection with its tax compliance services for Client pursuant to the Master Tax Services Agreement, dated March 1, 2011, between Client and EY (the "Agreement").    Client further acknowledges that (a) information contained in the Workpapers may have been based upon estimates and assumptions that were made at the time the Workpapers were prepared to the extent that complete and accurate information was not available to EY at that time; (b) such estimates and assumptions were discussed with and approved by Client; (c) the bases for these estimates and assumptions have likely changed since the Workpapers were prepared; and (d) the Workpapers have not been updated by EY to reflect information that may have become available subsequent to their preparation. Furthermore, in preparing the Workpapers, EY relied on information and representations provided by Client and its representatives that were not independently verified by EY at the time the Workpapers were created.    As a result, EY may not have identified irregularities or errors if they occurred. Moreover, EY, in its exercise of professional judgment, may have assessed tax issues in a different manner than Client might have assessed the same issues.    The Workpapers are not a substitute for any other inquiries or procedures that Client should undertake for the purpose of satisfying itself with respect to Client's tax situation, nor may the Workpapers or the information contained therein be suitable for such purpose or any other purposes of Client.



Client acknowledges and agrees that the Workpapers and all copies thereof provided to Client pursuant to this letter and the Agreement are and shall remain the sole property of EY.   Client will use the Workpapers and the information contained therein only for the purposes set forth above.

Except as permitted by this letter or as otherwise required by applicable law or legal process, Client may not disclose, orally or in writing, any of the Workpapers or the information contained therein, in whole or in part, without EY's prior written consent.   Client shall advise EY promptly if it receives any subpoena, service or other court order for access to the Workpapers or for information contained therein.

Please confirm Client's agreement with the foregoing by signing and dating the enclosed copy of this letter and returning it to James E. Scott.

Very truly yours,

*Ernst & Young LLP*

Accepted and agreed:

**Nortel Networks Inc. and its U.S. debtor affiliates**

By:    _____
       Mr. John J. Ray, III



**Attachment A**

**Nortel Networks Inc., U.S. Debtor Affiliates, Nortel Networks India International Inc. and Nortel Ventures LLC**

**Tax Year Ended December 31, 2010**

**Entity Listing**

| Name | Jurisdiction | Type | EIN |
|---|---|---|---|
| Nortel Networks Inc. | US | Corporation | 04-2486332 |
| Nortel Networks Application Management Systems, Inc. | US | Corporation | 04-3222846 |
| Architel Systems (US) Inc. | US | Corporation | 91-1573826 |
| Xros, Inc. | US | Corporation | 77-0444181 |
| Sonoma Systems | US | Corporation | 95-4582073 |
| Cortek, Inc. | US | Corporation | 04-3225722 |
| Nortel Altsystems Inc. | US | Corporation | 77-0429769 |
| Nortel Altsystems International Inc. | US | Corporation | 77-0465596 |
| Nortel Networks (CALA) Inc. | US | Corporation | 59-1664226 |
| Nortel Networks India International Inc. | US | Corporation | 42 1548667 |
| Nortel Networks Optical Components, Inc. | US | Corporation | 62-1843545 |
| Nortel Networks HPOCs Inc. | US | Corporation | 62-1843546 |
| Qtera Corporation | US | Corporation | 23-2970251 |
| Nortel Networks International Inc. | US | Corporation | 77-0330358 |
| Nortel Networks Cable Solutions Inc. | US | Corporation | 62-1850567 |
| Nortel Networks Capital Corporation | US | Corporation | 62-1629620 |
| Northern Telecom International Inc. | US | Corporation | 51-0266286 |
| Nortel Ventures LLC | US | Disregarded | N/A |



**Reportable Transaction Questionnaire**

FAILURE TO READ THIS CAREFULLY AND TIMELY PROVIDE AN ACCURATE RESPONSE COULD RESULT IN THE IMPOSITION OF PENALTIES BY THE IRS AND/OR STATE TAX AUTHORITIES FOR WHICH ERNST & YOUNG WILL NOT BE LIABLE

Treasury regulations require taxpayers to file disclosure statements relating to certain tax strategies/transactions that the Internal Revenue Service ("IRS") has identified as Listed Transactions or Transactions of Interest, any transaction that is substantially similar to a Listed Transaction or Transaction of Interest, and Other Reportable Transactions. The disclosure statements must be filed with the proper tax return and also sent separately to the IRS. Failure to disclose such transactions may result in the imposition of penalties and is likely to cause the IRS to request copies of your tax accrual work papers during an examination of your tax return. In addition, some states have enacted tax shelter legislation requiring taxpayers to file reportable transaction disclosure statements with the appropriate state income and franchise tax returns. Below is a summary of the current Listed Transactions and Transactions of Interest. You must answer the questions below for us to properly prepare your tax return(s). We may also need to contact you to determine whether you have participated in any additional Listed Transactions or Transactions of Interest identified before your tax return is filed.

Please read each of these Listed Transaction and Transaction of Interest summaries. If you want to receive a copy of the relevant published guidance (see the underlined reference at the end of each description) or have any questions regarding a specific transaction, please contact James E. Scott at 919-981-2886. After answering the questions, return the entire document at your earliest convenience to James E. Scott. When answering the questions below, use the underlined term to identify that Listed Transaction or Transaction of Interest. Ernst & Young LLP ("EY") shall not be liable for any penalties resulting from your failure to accurately and timely respond to these questions or to timely file the required disclosure statements.

The summaries of the Listed Transactions identified by the IRS as of this date are as follows:

1.  Lease Strips and Other Stripping Transactions: Transactions that allow one participant to realize rental or other income from property or service contracts and another participant or the same participant in a different tax year reports deductions related to that income. Identified in Notice 95-53 and Notice 2003-55.

2.  401K Accelerator: Transactions in which taxpayers claim deductions for contributions to a qualified cash or deferred arrangement or matching contributions to a defined contribution plan where the contributions are attributable to compensation earned by plan participants after the end of the taxable year. Identified in Rev. Rul. 90-105.



3. Multiple Employer Plans: Trust arrangements purported to qualify as multiple employer welfare benefit funds exempt from the limits of §§419 and 419A of the Internal Revenue Code. Identified in <u>Notice 95-34</u>. (See item #21 below regarding collectively-bargained welfare benefit funds.)

4. Contingent Installment Sales: Transactions involving contingent installment sales of securities by partnerships in order to accelerate and allocate income to a tax-indifferent partner, such as a tax-exempt entity or foreign person, and to allocate later losses to another partner. Identified as <u>ACM Transactions</u>.

5. Distributions from Charitable Remainder Trusts: Transactions involving distributions described in Treas. Reg. §1.643(a)-8 from charitable remainder trusts. This transaction uses a §664 charitable remainder trust to convert appreciated assets into cash, while avoiding the gain on the disposition of the assets. Identified in <u>Treas. Reg. §1.643(a)-8</u>.

6. LILOs: Transactions in which a taxpayer purports to lease property and then purports to immediately sublease it back to the lessor (that is, lease-in/lease-out or LILO transactions). Identified in <u>Rev. Rul. 99-14</u>.

7. Distribution of Encumbered Property: Transactions involving the distribution of encumbered property in which taxpayers claim tax losses for capital outlays that they have in fact recovered. Identified in <u>Notice 99-59</u>.

8. Fast-pay Arrangements: Transactions involving fast-pay arrangements as defined in Treas. Reg. §1.7701(l)-3(b) in which a corporation's outstanding stock is structured (in whole or in part) to return the stockholder's investment by distributions treated as dividends. Identified as <u>Fast-pay Arrangements</u>.

9. Counterbalancing Debt Instruments: Transactions involving the acquisition of two debt instruments the values of which are expected to change significantly at about the same time in opposite directions. Identified in <u>Rev. Rul. 2000-12</u>.

10. Artificially Inflated Tax Basis: Transactions generating losses resulting from artificially inflating the tax basis of partnership interests. Identified in <u>Notice 2000-44</u>.

11. Employee Stock Transfer: Transactions involving the purchase of a parent corporation's stock by a subsidiary, a subsequent transfer of the purchased parent stock from the subsidiary to the parent's employees, and the eventual liquidation or sale of the subsidiary. Identified in <u>Notice 2000-60</u>.

12. Guamanian Trusts: Transactions purporting to apply §935 to Guamanian trusts. Identified in <u>Notice 2000-61</u>.



13. Midco Transactions: A broad range of "routine" transactions that happen to include the acquisition, disposition, or movement of stock and assets. The typical Midco transaction is one in which a taxpayer desires to sell stock of a corporation and a buyer desires to purchase the assets. These parties conduct the transaction through an intermediary, with the taxpayer selling the stock to the intermediary and the buyer then purchasing the assets from it and claiming a fair market value basis. The intermediary, having enabled the target corporation to not pay tax on the built-in gain in its assets, usually receives compensation for participating in the transaction. Notice 2008-111 clarifies Notice 2001-16 and supersedes Notice 2008-20.

14. Contingent Liability Transactions: Transactions involving a loss on the sale of stock acquired in a purported §351 transfer of a high basis asset to a corporation and the corporation's assumption of a liability that the transferor has not yet taken into account for federal income tax purposes. Identified in Notice 2001-17.

15. Basis Shifting on Stock Redemptions: Redemptions of stock in transactions not subject to U.S. tax in which the basis of the redeemed stock is purported to shift to a U.S. taxpayer. Identified in Notice 2001-45.

16. Inflated Tax Basis: Transactions in which the taxpayer as part of an acquisition of assets also assumes debt exceeding their fair market value. The taxpayer claims a higher basis due to the debt assumption. Upon sale of the assets, the taxpayer claims a loss for basis in excess of the fair market value of the assets. Identified in Notice 2002-21.

17. Notional Principal Contract: Transactions using a notional principal contract to claim deductions for periodic payments made by the taxpayer while disregarding the accrual of a right to receive offsetting payments in the future. Identified in Notice 2002-35.

18. Allocation of Straddle Gain or Loss: Transactions involving the creation of straddles in a common trust fund or pass-thru entity (i.e., partnership, S corporation, or grantor trust), with the allocation of gain to one party and loss to another party. Identified in Notice 2002-50, Notice 2002-65, and Notice 2003-54.

19. Prohibited Ownership of S-Corp Securities by ESOP: Transaction in which an S corporation and an associated ESOP, which was formed on or before March 14, 2001, is subsequently transferred and the ESOP claims the benefit of a delayed effective date under IRC §409(p). As a result of the delayed effective date, the earnings of the S corporation are not currently taxed. Identified in Rev. Rul. 2003-6. (See item #26 below regarding S corporation ESOPs involving synthetic equity.)

20. Offshore Deferred Compensation Arrangements: Transactions involving an individual taxpayer who purportedly resigns from his or her current employer or professional corporation and enters an employment contract with an offshore employment leasing company. The offshore leasing



company leases the individual's services back to the original employer, typically using one or more intermediaries. The participants claim tax benefits in the form of reduced or avoided individual and corporate income and employment taxes. Identified in <u>Notice 2003-22</u>.

21. Collectively-Bargained Welfare Benefit Funds: Trust arrangements purporting to qualify as collectively-bargained welfare benefit funds exempt from the limits of §§419 and 419A of the Internal Revenue Code. Identified in <u>Notice 2003-24</u>. (See item #3 above regarding multiple employer plans.)

22. Transfers of Compensatory Stock Options to Related Persons: Transactions involving an individual, generally an employee, who has been granted a nonstatutory compensatory stock option, and transfers that option to a related person. The individual does not claim compensation income when the related person exercises the stock option or, in cases where the related person pays for the option with a note or other deferred payment, the individual does not claim compensation income until receiving the deferred payments. Identified in <u>Notice 2003-47</u>.

23. Contested Liability Trusts: Transactions involving transfers to a trust to provide for the satisfaction of contested liabilities in an attempt to accelerate deductions for the contested liabilities under §461(f) of the Internal Revenue Code. Identified in <u>Notice 2003-77</u>.

24. Offsetting Foreign Currency Option Contracts: Transactions in which a taxpayer claims a loss upon the assignment of a §1256 foreign currency option contract to a charity but fails to report the recognition of gain when the taxpayer's obligation under an offsetting non-section 1256 foreign currency option contract terminates. Identified in <u>Notice 2003-81</u>.

25. Roth IRA Contributions: Transactions designed to avoid the statutory limits on contributions to a Roth IRA contained in §408A using a corporation, substantially all the shares of which are owned or acquired by the Roth IRA. Identified in <u>Notice 2004-8</u>.

26. S corporation ESOP Involving Synthetic Equity: Transaction involving an S corporation that is at least 50% owned by an ESOP, designed to avoid current taxation of the S corporation's profits generated by the business activities of a specific individual or individuals. The profits are accumulated and held for the benefit of the individual(s) in a qualified subchapter S subsidiary (QSub) or similar entity (such as a limited liability company), the profits are not paid to the individual(s) as compensation within 2½ months after the end of the year in which earned, and the individual or individuals have rights to acquire stock or similar interests equal to 50% or more of the fair market value of the QSub. Identified in <u>Rev. Rul. 2004-4</u>. (See item #19 above, also involving S corporation ESOPs.)

27. Pension Plans Involving Excessive Life Insurance: Transactions involving a qualified pension plan that includes life insurance contracts on the life of a participant in the plan with a face



amount that exceeds the participant's death benefit under the plan by more than $100,000. Upon the death of the covered employee, the life insurance contract proceeds exceeding the death benefit are applied to the premiums under the plan for other participants. Identified in <u>Rev. Rul. 2004-20</u>.

28. Foreign Tax Credit Intermediary Transactions: Transactions in which, pursuant to a prearranged plan, a domestic corporation purports to acquire stock in a foreign target corporation and makes an election under §338 before selling all or substantially all of the target corporation's assets in a transaction that triggers foreign tax on built-in gains that are not subject to U.S. tax. The domestic corporation claims foreign tax credits generated with respect to the foreign income tax imposed on the asset sale. Identified in <u>Notice 2004-20</u>.

29. S Corporation Nonvoting Stock Issued to Tax Exempt Organization: Transactions in which S corporation shareholders attempt to transfer the incidence of taxation on S corporation income by donating S corporation nonvoting stock to an exempt organization, while retaining the economic benefits associated with that stock (through warrants issued to the S corporation shareholders that would dilute the shares of nonvoting stock held by the exempt organization or agreements to repurchase the nonvoting stock from the exempt organization at a value that is substantially reduced by reason of the warrants). Identified in <u>Notice 2004-30</u>.

30. Intercompany Financing Through Partnerships Using Guaranteed Payments: Transactions in which a corporation that is exempt from US federal income tax, such as a foreign corporation, provides financing to a domestic subsidiary by investing in the preferred stock of the subsidiary through a partnership in an attempt to convert interest payments that would not be currently deductible under §163(j) into deductible payments. The foreign corporation's return on investment is structured as a guaranteed payment by the partnership, most of which is allocated to, and deducted by, another domestic subsidiary that is a partner in the partnership. In some cases, the guaranteed payments are made to a partner that is unrelated to the foreign corporation and the partnership's obligations to make the guaranteed payments are assured by the foreign corporation or a related party. Identified in <u>Notice 2004-31</u>.

31. SILOs: Transactions in which a taxpayer/lessor enters into a purported sale-leaseback arrangement with a tax-indifferent person (such as a foreign entity, a domestic tax exempt organization or government, or a company in a net operating loss position or other tax neutral situation) as lessee in which substantially all of the tax-indifferent person's future rental payment obligations and purchase option rights are economically defeased/nullified and the taxpayer's risk of loss from a decline, and opportunity for profit from an increase, in the value of the leased property are substantially limited, and there is an obligation on the lessee to provide to the lessor a service contract arrangement or contingent residual value insurance in the event that the lessee purchase option right is not exercised. These leases are frequently referred to as "lease-to-service contracts" or "QTE leases." Identified in <u>Notice 2005-13</u>.



32. Loss Importation Transactions: Transactions in which a taxpayer acquires control of a foreign entity treated as a corporation for U.S. tax purposes, and uses the foreign entity's off-setting positions with respect to foreign currency or other property for the purpose of importing losses, but not corresponding gains. Gain is not imported because the taxpayer causes the foreign entity to close out the gain position while the foreign entity is still treated as a foreign corporation. The taxpayer enters into a new offsetting position to lock in the unrealized loss on the loss position and eliminate further economic risk. The taxpayer then imports the unrealized loss into the U.S., typically by making a check-the-box election with respect to the foreign entity and then closing out the loss position. It may also import the assets of the foreign entity into the U.S. in another type of carryover basis transaction such as a reorganization described in section 368(a). The taxpayer must make the check-the-box election or otherwise dispose of the stock of the foreign entity within 30 days of acquiring it, so that the foreign entity will not qualify as a CFC and the gain it recognizes will not be taxable under subpart F. Identified in <u>Notice 2007-57.</u>

33. Welfare Benefit Funds Utilizing Cash Value Life Insurance Policies: Trust arrangements purporting to provide employees welfare benefits in the form of cash value life insurance policies. In these arrangements the employer claims deductions for its contributions to the trust per the premium amounts paid, but the employee/policy owners include little if any in corresponding income. These arrangements may involve either a taxable trust or a tax-exempt trust. Identified in <u>Notice 2007-83</u>.

34. Distressed Asset Trust: Transactions in which trusts are used to shift built-in losses in distressed assets that have been transferred into such trusts by a tax-indifferent party to a beneficiary who is a U.S. taxpayer. The distressed assets are then written off by the U.S. taxpayer under §166 or sold with the U.S. taxpayer claiming a deduction under §165, even though the U.S. taxpayer has not incurred an economic loss. Identified in <u>Notice 2008-34</u>.

The summaries of the Transactions of Interest identified by the IRS as of this date are as follows:

1. Contribution of a Successor Member Interest to a Charity: A transaction in which a taxpayer acquires a successor interest in an LLC or similar entity that directly or indirectly holds real property, transfers the rights more than one year after the acquisition to a charity described in section 170(c) of the Internal Revenue Code, and claims a charitable contribution deduction that is significantly higher than the amount that the taxpayer paid to acquire the rights. Identified in <u>Notice 2007-72</u>.

2. Toggling Grantor Trusts: Transactions in which grantor creates and funds a grantor trust with four options with values that are expected to move inversely in relation to at least one of the other options. The grantor then gives a unitrust interest to a beneficiary while retaining a noncontingent remainder interest and the power to reacquire trust property at a specified future date by substituting other property of equivalent value. Through a series of successive transactions



involving the sale of the remainder interest to an unrelated buyer for an amount substantially equal to the fair market value of the options contributed to the trust, the "activation" of the substitution power on its effective date, the close-out of the "loss options," and the sale of the unitrust interest to the unrelated buyer, the grantor trust status of the trust is purportedly "toggled off" and "toggled on." The grantor claims a tax loss attributable to the close-out of the loss options even though the grantor has not suffered an equivalent economic loss. A variation of the transaction described above involves an initial contribution of liquid assets instead of options, and a subsequent substitution of appreciated property for the liquid assets. This variation is designed to enable the grantor to avoid the recognition of gain upon the disposition of the appreciated assets. Identified in <u>Notice 2007-73</u>.

3. Potential for Avoidance of Tax through Sale of Charitable Remainder Trust Interests: Transactions involving the sale or other disposition of all interests in a charitable remainder trust (subsequent to the contribution of appreciated assets to the trust but after their sale by the trust). The grantor or other noncharitable claims an increased basis in the annuity or unitrust interest sold based upon the tax basis of assets within the trust (rather than with reference to the tax basis of assets transferred to the trust) thereby recognizing little, if any, gain from such sale or other disposition of the unitrust or annuity interest. Identified in <u>Notice 2008-99</u>.

4. Use of Domestic Partnership with CFC Partner(s) to Avoid Taxable Subpart F Inclusions: Transactions involving a U.S. taxpayer owning at least one CFC which is a partner in a domestic partnership (the other partner(s) may or may not also be CFCs). The domestic partnership owns a CFC Opco that earns income of a type which is subpart F income. The U.S. taxpayer claims that the subpart F income of the CFC Opco is not subpart F income in the hands of the CFC partner (or the partner's US owner) because of the interposition of the domestic partnership. Identified in <u>Notice 2009-7</u>.

In addition to the above Listed Transactions, the California FTB has separately identified the following tax strategies/transactions as Listed Transactions:

1. Real Estate Investment Trust (REIT) Consent Dividends: Transactions in which a REIT takes a deduction for a consent dividend but the REIT's owners do not report the consent dividend as income. Identified in <u>Cal. FTB-Legal Department, Chief Counsel Announcement 2003-1</u>.

2. Wholly Owned or Controlled Regulated Investment Company (RIC): Transactions in which a corporation forms a wholly owned or controlled entity that registers as a RIC and the parent corporation transfers to the RIC some of its income producing assets. The RIC claims the dividends paid deduction under IRC §852 and the parent corporation claims an intercompany dividend received deduction under the California tax code. Thus, no California income or franchise tax is paid on the income earned by the income producing assets contributed to the RIC. Identified in <u>Cal. FTB-Legal Department, Chief Counsel Announcement 2003-1</u>.



3.  Sales Factor Denominator Inflation: Intercompany transactions between unitary corporate taxpayers and partnerships to inflate the denominator of the California sales factor and thereby reduce the amount of income apportioned to California. The transactions involve the use of the special sales factor rules in California Regulation 25137-1(f)(3) to include intercompany sales in the denominator of the sales factor. The transactions typically involve a group of corporations filing a California combined report with at least one member (the partner-corporation) of the group owning or acquiring an interest in a partnership and with at least one other corporate member (the nonpartner-corporation) of the combined group not owning an interest in the partnership. The partnership's business is unitary with the combined group and its activities were, or could be, performed by a corporate member of the combined group.    The partnership sells goods or services to the nonpartner corporation or the nonpartner corporation makes sales to the partnership.    The sales are included in the sales factor denominator, but are generally excluded from the sales factor numerator of the unitary group.    Identified in <u>Cal. FTB Notice 2011-01</u>.

In addition to the above, the State of Colorado has separately identified the following tax strategies/transactions as Listed Transactions:

1.  Captive Real Estate Investment Trust (REIT): Transactions between a captive REIT and its more than 50% beneficial owner if there is a Colorado tax benefit. A captive REIT is defined as a REIT in which shares or beneficial interests are not regularly traded on an established securities market and of which more than 50% of the voting power or value of the beneficial interest or shares are owned or controlled directly, indirectly, or constructively, by a single entity that is: (1) treated as an association taxable as a corporation under the Internal Revenue Code; and (2) not exempt from federal income tax under IRC §501(a). For these purposes, an "association taxable as a corporation" does not include any REIT other than a captive REIT, any qualified REIT subsidiary other than a qualified REIT subsidiary of a captive REIT, any listed Australian property trust, or a qualified foreign entity. Identified in <u>Colorado Revised Statutes 39-22-652 and 39-22-503(2);</u> <u>Colorado Regulation 39-22-652</u>.

2.  Captive Regulated Investment Company (RIC): Transactions between a captive RIC and its more than 50% beneficial owner if there is a Colorado tax benefit. A captive RIC is defined as a RIC in which shares or beneficial interests are not regularly traded on an established securities market and of which more than 50% of the voting power or value of the beneficial interest or shares are owned or controlled directly, indirectly, or constructively, by a single entity that is: (1) treated as an association taxable as a corporation under the IRC; and (2) not exempt from federal income tax under IRC section 501(a). Voting stock in a RIC that is held in a segregated asset account of a life insurance corporation (IRC §817) is not taken into account in determining whether the RIC is captive. Identified in <u>Colorado Revised Statutes 39-22-652 and 39-22-501(2); Colorado</u> <u>Regulation 39-22-652</u>.



In addition to the above Listed Transactions, the New York State Department of Taxation and Finance has separately identified the following tax strategy/transaction as a Listed Transaction:

1.  Certain Charitable Contribution Deductions: A transaction involving the purchase of a remainder interest in real property by a newly formed pass-through entity, which after holding the remainder interest for one year, contributes it to an exempt organization thereby meeting the federal requirements for computing the charitable contribution deduction based on the fair market value of the remainder interest. The remainder interest is appraised using an income approach that takes into consideration the amount of lease payments remaining on the long term lease resulting in a value of the remainder interest substantially higher then what the pass-through entity paid for it. Following the contribution, the pass-through entity is dissolved, allowing its members/partners to claim a pro-rata share of the charitable contribution deduction. Identified in New York State Department of Taxation and Finance-Office of Tax Policy Analysis Technical Service Division TSB-M-07.

Answer the following questions with regard to advice provided by or transactions recommended by anyone other than EY.

CALIFORNIA, COLORADO, ILLINOIS, MINNESOTA, NEW YORK, AND UTAH TAXPAYERS: ANSWER EACH OF THE QUESTIONS BELOW WITH RESPECT TO THE RELEVANT TRANSACTION'S IMPACT ON YOUR CALIFORNIA, COLORADO, ILLINOIS, MINNESOTA, NEW YORK, AND/OR UTAH INCOME AND FRANCHISE TAXES AS WELL AS FEDERAL INCOME TAXES. If two or more corporations are filing a combined return for purposes of California, Colorado, Illinois, Minnesota, New York, and/or Utah income or franchise tax, please provide responses to the questions below for all members of the combined reporting group.

Taxpayer(s): **Nortel Network Inc. and as listed in Appendix A** (the "Company")

1.  Is the Company: (i) a U.S. shareholder who owns 10 percent or more of the total combined voting power of all classes of stock entitled to vote in a controlled foreign corporation, or (ii) a 10 percent shareholder (by vote or value) of a qualified electing fund due to an election made under IRC §1295?

    Note: A controlled foreign corporation is a non-U.S. corporation that has U.S. shareholders (i.e., U.S. persons that directly or indirectly own 10% or more of the total combined voting power of all of the classes of stock of such non-U.S. corporation) that own in the aggregate more than 50% of the total vote or value of such non-U.S. corporation.

    No_____ Yes_____



If yes, in addition to answering the following questions with respect to transactions entered into by the Taxpayer(s) identified above, also answer ALL of the following questions with respect to transactions entered into by such controlled foreign corporation(s) and/or qualified electing fund(s).

2.  Since February 28, 2000, has the Company participated in any transaction that might be considered similar to any of the Listed Transactions summarized above?

    No_____ Yes_____ I am not certain, please provide me with more detail about the transaction(s) identified as: _____

    If yes, identify the Listed Transaction(s) summarized above that may be similar to the one(s) the Company participated in: _____, and please provide copies of all written advice the Company received regarding the transaction along with your response to this questionnaire. If any part of the advice was not written, please provide the name(s) of the person(s) providing the advice and a brief description of the transaction.

3.  Since November 2, 2006, has the Company participated in any transaction that might be considered similar to any of the Transactions of Interest summarized above?

    No_____ Yes_____ I am not certain, please provide me with more detail about the transaction(s) identified as: _____

    If yes, identify the Transaction(s) of Interest summarized above that may be similar to the one(s) the Company participated in: _____, and please provide copies of all written advice the Company received regarding the transaction along with your response to this questionnaire. If any part of the advice was not written, please provide the name(s) of the person(s) providing the advice and a brief description of the transaction.

Answer the following questions with respect to transactions entered into during the tax year/period for which EY is preparing the Company's tax return(s).

1.  Did the Company enter into a transaction or receive tax advice regarding a tax position or transaction from *anyone* that made a statement or provided information regarding tax consequences (including statements indicating the transaction was tax-free or had no tax consequences) and who asked the Company to enter into a confidentiality agreement or in any other way attempted to limit the Company's ability to disclose information regarding the structure or tax aspects of the transaction or the tax advice?

    No_____ Yes_____

Nortel Networks, Inc.



2.  Did the Company enter into a transaction or receive tax advice regarding a tax position or transaction for which the Company (or a related party) has some form of contractual protection against the possibility that part or all of the intended tax consequences will not be sustained (e.g., a fee that is contingent on the tax benefits realized from the transaction or position, or an agreement to get back fees or receive payments if the tax benefits are not sustained)?

    No_____ Yes_____

3.  For this question, check the type of "entity" the Company is characterized as for tax purposes (C corporation, S corporation, partnership, or trust) and answer the question(s) that follows the status. For purposes of the reportable transaction disclosure requirements, a section 165 loss includes an amount deductible pursuant to a provision that treats a transaction as a sale or other disposition, or otherwise results in a deduction under section 165. A section 165 loss includes, for example, a loss resulting from a sale or exchange of a partnership interest under section 741 and a loss resulting from a section 988 transaction.

    a.  _____Corporations (other than S corporations) and Partnerships that have only C corporations as partners: Has the Company directly or indirectly entered into a transaction that results in or is reasonably expected to result in a tax loss under §165 (other than from casualty or involuntary conversion) of at least $10 million in any single taxable year or $20 million in any combination of taxable years?

        No_____ Yes_____

    b.  _____S corporations and all other Partnerships: Has the Company directly or indirectly entered into a transaction that results in or is reasonably expected to result in a tax loss under §165 (other than from casualty or involuntary conversion) of at least $2 million in any single taxable year or $4 million in any combination of taxable years?

        No_____ Yes_____

    c.  _____Trusts: Has the Company directly or indirectly entered into a transaction that results in or is reasonably expected to result in a tax loss under §165 (other than from casualty or involuntary conversion) of at least $2 million in any single taxable year ($50,000 in any single year if the loss arises with respect to a §988 foreign currency transaction) or $4 million in any combination of taxable years?

        No_____ Yes_____

If you answered "yes" to any of the questions listed above, please describe in detail each item and/or transaction that lead to the "yes" response. Please be sure to include names of all promoters, advisors



and other parties to any transaction, the tax years it affects, and the amount and tax effect expected each year.

**Nortel Networks, Inc. and U.S. Debtor Affiliates**

By: _____

Name:

Title:



## Statement of Work

This Statement of Work, which is effective as of March 1, 2011 (this "SOW"), is made by Ernst & Young LLP ("we" or "EY") and Nortel Networks Inc. ("NNI"), its U.S. debtor affiliates listed in Appendix A (together with NNI, the "Nortel Debtors"), Nortel Networks India International Inc. and Nortel Ventures LLC (collectively, "you" or "Client"), pursuant to the Master Tax Services Agreement, dated as of March 1, 2011 (the "Agreement"), between EY and Client, which was executed in connection with the Nortel Debtors' bankruptcy proceedings pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under chapter 11 of the United States Code (the "Bankruptcy Code"), and describes certain tax services that EY will perform for Client.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement.  The additional terms and conditions of this SOW shall apply only to the tax advisory Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Agreement, including, without limitation, the Statement of Work describing EY Core Services and EY Variable Services, effective as of March 1, 2011.  Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings ascribed in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

## Scope of Services

Contingent upon the Bankruptcy Court's approval, EY will provide to Client routine tax advice and assistance concerning issues as requested by Client when such projects are not covered by a separate SOW and do not involve any significant tax planning or projects.

The projects covered by this SOW include assistance with tax issues by answering one-off questions, drafting memos describing how specific tax rules work, assisting with general transactional issues, and assisting Client in connection with its dealings with tax authorities (other than serving as a representative).

Specific tasks that may be involved in connection with the Services include the following: participating in meetings and telephone calls with Client; participating in meetings and telephone calls with taxing authorities and other third parties; reviewing transaction-related documentation; researching technical issues; and preparing technical memoranda, letters, e-mails, and other written documentation.

This SOW is not intended to cover services related to significant tax planning or other projects where a mutual understanding of the scope of the engagement should be formally documented. Accordingly, in lieu of this SOW, separate SOWs shall be entered into in connection with the following:  services related to a transaction that is a listed transaction, reportable transaction,



transaction of interest or transaction similarly designated by a tax authority; engagements where we will render formal opinions or opinions that will be relied upon by third parties; engagements where we prepare tax returns or entries on tax returns; studies with respect to Client's tax attributes (e.g., basis studies or repairs and maintenance studies); loaned or assigned staff engagements; and due diligence engagements.

**Your obligations**

We draw your attention to the reservations set out in paragraph 6 of the General Terms and Conditions of the Agreement, as well as your management responsibilities under paragraph 7, and your representation, as of the date hereof, under paragraph 27 thereof. You represent that you will have obtained the prior approval of your Audit Committee for the Services to be provided pursuant to this SOW, as applicable.

**Additional terms and conditions**

The Services to be provided pursuant to this SOW are advisory in nature. EY will not render an assurance report or assurance opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. With respect to the Services to be provided pursuant to this SOW, we will not conduct a review to detect fraud or illegal acts.

You should be aware that the Internal Revenue Code imposes a penalty on an underpayment of tax attributable to any disallowance of claimed tax benefits because a transaction entered into after March 30, 2010, lacks "economic substance." The penalty rate is 20 percent if the transaction is adequately disclosed to the IRS, with the penalty rate increased to 40 percent if the transaction is not adequately disclosed in the relevant tax return or attachment to that return. As the penalty is one of strict liability, a taxpayer cannot show reasonable cause for the avoidance of the economic substance penalty by establishing reliance on the tax advice of a qualified advisor. Accordingly, our Tax Advice cannot provide any assurance that the claimed tax benefits of a transaction entered into after March 30, 2010, would not be subject to disallowance by reason of a determination by the IRS or the courts that a transaction lacks economic substance or fails to meet the requirements of any similar rule of law, nor can Tax Advice that we provide be relied upon to protect against applicable penalties that may be asserted if it is determined that the transaction lacked economic substance where otherwise required.

If we receive a request from a third party for any information relating to our Tax Advice, we will notify you and will not release any such information unless you have executed an appropriate written consent authorizing such disclosure and the third party has executed a nonreliance and release letter acceptable to us in form and substance.

We may subcontract portions of the Services under this SOW to a third-party subcontractor, with Client's prior written consent.



**Engagement Teams**

James E. Scott (Partner), Andy Beakey (Partner) and Sarah Jacks (Senior Manager) will lead the EY team in providing the Services.  If any of these individuals ceases to provide tax services to Client pursuant to the Agreement, EY will so advise the Client and, if that person is replaced, provide Client with the name of the professional's replacement.  Other staff and subject matter specialists, not identified herein, may be utilized as required to conduct our work in an efficient manner.

**Fees**

The General Terms and Conditions of the Agreement address our fees and expenses generally.

Client shall pay EY's fees for the Services, subject to and in accordance with Bankruptcy Court approval and based on the actual time of EY professionals expended in performing the Services as adjusted annually on March 1 during the term of the Agreement.  The actual time required will depend upon the extent and nature of available information, modifications to the scope of our engagement and other developments that may occur as work progresses.  The rates, by level of tax professional, are as follows:

| Title | Rate Per Hour (US$) |
|---|---|
| Partner/Principal | 640 |
| Executive Director | 545 |
| Senior Manager | 540 |
| Manager | 430 |
| Senior | 300 |
| Staff | 170 |

Client shall also pay EY's expenses and reimbursements for travel to locations other than the Nortel Research Triangle location in accordance with the terms of the Agreement.  We will submit an itemized and detailed billing statement, and we will request payment of our fees and expenses, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware and any relevant court orders.

This SOW is intended to be used for engagements to respond to general tax questions and assignments that are expected, at the beginning of the project, to involve total professional time not to exceed (with respect to the specific project) $25,000 in professional fees at the standard hourly rates for the professionals involved.  The scope of these services may be agreed to through written communications with Client including by electronic mail.

**⧓ ERNST & YOUNG**

If, during the term of this SOW, EY determines that any additional work is necessary, whether at Client's request or because the complexity of the project increases, EY will promptly contact Client to discuss any adjustments to the scope of work and assist Client to obtain any necessary Bankruptcy Court approval. By signing below you represent you have authority to bind the respective entities that comprise the Client as described in your signature block.

Thanks again for your selection of our firm.

*Ernst & Young LLP*

Date: _____

Acknowledged and agreed:

**Nortel Networks Inc. and its U.S. debtor affiliates listed in Appendix A**

By: _____
    Mr. John J. Ray, III
    Principal Officer

**Nortel Networks India International Inc.**

By: *Timothy C. Ross*
    Print Name:

Its: _____    2-18-11

**Nortel Ventures LLC.**
By: *Timothy C. Ross*
    Print Name:    2-18-11

Its: _____
    VP-Finance and Corporate Secretary

A member firm of Ernst & Young Global Limited



If, during the term of this SOW, EY determines that any additional work is necessary, whether at Client's request or because the complexity of the project increases, EY will promptly contact Client to discuss any adjustments to the scope of work and assist Client to obtain any necessary Bankruptcy Court approval. By signing below you represent you have authority to bind the respective entities that comprise the Client as described in your signature block.

Thanks again for your selection of our firm.

*Ernst & Young LLP*

Date: _____

Acknowledged and agreed:

**Nortel Networks Inc. and its U.S. debtor affiliates listed in Appendix A**

By: _____
        Mr. John J. Ray, III
        Principal Officer

**Nortel Networks India International Inc.**

By: _____
        Print Name:

Its: _____

**Nortel Ventures LLC.**
By: _____
        Print Name:

Its: _____



## Attachment A

**Nortel Networks Inc., U.S. Debtor Affiliates, Nortel Networks India International
Inc. and Nortel Ventures LLC**
**Tax Year Ended December 31, 2010**
**Entity Listing**

| Name | Jurisdiction | Type | EIN |
|------|--------------|------|-----|
| Nortel Networks Inc. | US | Corporation | 04-2486332 |
| Nortel Networks Application Management Systems, Inc. | US | Corporation | 04-3222846 |
| Architel Systems (US) Inc. | US | Corporation | 91-1573826 |
| Xros, Inc. | US | Corporation | 77-0444181 |
| Sonoma Systems | US | Corporation | 95-4582073 |
| Cortek, Inc. | US | Corporation | 04-3225722 |
| Nortel Altsystems Inc. | US | Corporation | 77-0429769 |
| Nortel Altsystems International Inc. | US | Corporation | 77-0465596 |
| Nortel Networks (CALA) Inc. | US | Corporation | 59-1664226 |
| Nortel Networks India International Inc. | US | Corporation | 42 1548557 |
| Nortel Networks Optical Components, Inc. | US | Corporation | 62-1843545 |
| Nortel Networks HPOCs Inc. | US | Corporation | 62-1843546 |
| Qtera Corporation | US | Corporation | 23-2970251 |
| Nortel Networks International Inc. | US | Corporation | 77-0330358 |
| Nortel Networks Cable Solutions Inc. | US | Corporation | 62-1850567 |
| Nortel Networks Capital Corporation | US | Corporation | 62-1629620 |
| Northern Telecom International Inc. | US | Corporation | 51-0266286 |
| Nortel Ventures LLC | US | Disregarded | N/A |



March 1, 2011

Nortel Networks Inc.
c/o Julie Graffam Kaplan, Director
Human Resources Operations
600 Technology Park Drive
Billerica, MA 01821

**Statement of Work**

This Statement of Work, which is effective as of March 1, 2011 (this "SOW"), is made by Ernst & Young LLP ("we" or "EY") and Nortel Networks, Inc. and its U.S. debtor affiliates listed in Appendix A (collectively, "you," "Client" or "Nortel"), pursuant to the Master Tax Services Agreement, dated as of March 1, 2011 (the "Agreement"), between EY and Nortel, which was executed in connection with the tax services to be provided by EY to Client with respect to Client's chapter 11 proceedings pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and describes certain tax services that EY will perform for Client.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the expatriate tax services covered by this SOW and not to services covered by any other Statement of Work made pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this SOW have the meanings ascribed to them in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

**Scope of Services**

As set forth below, we will provide expatriate tax services ("United States Services") and withholding tax compliance services ("Korean Services," and together with United States Services, the "Services") to you starting March 1, 2011, contingent upon the Bankruptcy Court's approval of our retention in accordance with the terms and conditions that are set forth in the Agreement (inclusive of this SOW).

We will provide to you the Services described herein, which may be modified from time to time by our mutual written consent and approval of the Bankruptcy Court.

*UNITED STATES SERVICES*

We will provide the following United States Services to you starting March 1, 2011 and ending December 31, 2011.   Specifically, EY will provide to Client the United States Services described in Attachment 1.



EY will provide the United States Services for authorized participants in Client's expatriate tax program, including, when so determined by Client, employees of Client's subsidiaries and affiliates, who (1) have been identified to EY by Client as participants, (2) have elected to use EY's services and have executed an agreement in form similar to Attachment 2 ("Participants"), and (3) have executed a consent authorizing EY to disclose the Participant's tax return information to other members of the EY global network that will assist in preparing the Participant's home and host country income tax returns. EY will provide the United States Services using information submitted by Participants and Client. EY will send a tax data organizer to each Participant that must be completed and returned in a timely manner by such Participant.

**United States Services covered include the following:**

Preparation of:

- ▸ Annual U.S. Federal Income Tax Returns
- ▸ State and Local Income Tax Return(s)
- ▸ Foreign bank account reporting forms
- ▸ Annual Tax Reimbursement calculation, as required
- ▸ Tax Gross-ups, as required
- ▸ Tax Return Extension Requests, as required
- ▸ Annual Basic Foreign Tax Return of assignment Host Country
- ▸ Responses to Correspondence Audits/Inquiries by Federal, state and foreign tax authorities regarding returns prepared by Ernst & Young

**United States Services not covered include the following:**

The United States Services do not include providing personal tax advice to Participants. Should Participants require assistance with their personal tax matters, we will be pleased to discuss our service capabilities and separate billing arrangements with Participant. Some examples of services not covered as United States Services are:

- ▸ Preparation of any Estimated Income Tax Payments (e.g., Form 1040-ES)
- ▸ Contacting third parties (i.e., Participant's realtor, broker or other agents) to gather certain information (e.g., real estate or securities transactions) in order to complete Participant's tax return
- ▸ Children's or other dependents' Tax Returns
- ▸ Retirement, Insurance, Financial or Estate Planning
- ▸ Personal Tax Planning
- ▸ Gift Tax Returns
- ▸ Financial Counseling
- ▸ Investment Advice
- ▸ Foreign Tax Returns, other than Host Country unless specifically agreed by Client, the Participant and EY



- ▸ Tax Returns relating to household employees
- ▸ Preparation of Forms 5471 & 8621 to report foreign gifts or foreign ownership in trusts, partnerships and/or corporations

In the case of any change in the assumptions and/or Client responsibilities set forth in this SOW or a substantial reduction in the number of Participants to be served by EY, Client and EY agree to renegotiate EY's fees, which fee would be subject to and in accordance with necessary Bankruptcy Court approval. If the parties do not reach an agreement on the renegotiated fees within thirty (30) days after EY has initiated negotiations with respect to its fees with Client, EY shall have the right to terminate this SOW. For purposes of this paragraph, "substantial reduction" shall mean a reduction of 20% or more of the initial Participant population used to determine the initial contract fees. A substantial reduction will also include a change in the type of assignments such as less long-term and more short-term assignments where such change is 20% or more of the population. The initial population size is 25 individuals for tax services.

EY's commitment to provide the Services for the fees set out in Attachment 1 is based upon the following conditions:

- ▸ EY receives from each Participant an executed agreement in the form attached hereto as Attachment 2 that documents the commitment of the Participant to cooperate fully in the process. Full cooperation means that each Participant will provide EY in a timely manner with a properly completed electronic tax data organizer (unless EY has agreed to accept information in an alternative format and it and Client have agreed on the additional compensation attendant to such alternative), and will be responsive to requests for additional information. EY will bring to Client's attention any situation in which EY is not receiving full cooperation. EY will not be responsible for more than 3 attempts to secure information and at that time will escalate such issues to Client and Client will assume responsibility for obtaining the missing information from the Participant. In such instances where Client requests EY to continue to attempt to secure missing information, an additional charge will apply at our agreed rates.
- ▸ EY receives complete and accurate compensation information from the Client on a timely basis in a format that can be imported into our compensation bridging system.
- ▸ EY receives from each Participant and, where applicable, the Participant's spouse, an executed consent authorizing the disclosure of the Participant's tax return information to other members of the EY global network that will assist in the preparation of the Participant's home and host country income tax returns.

There are no material changes to applicable current U.S. federal and state laws and, where non-U.S. returns are to be prepared by Ernst & Young International, Ltd. or Ernst & Young Global Limited member firms, applicable laws of the foreign country.

*KOREAN SERVICES*



We will provide the following Korean Services to you starting March 1, 2011 as further described in Attachment 3.   Specifically, the Korean Services which relate to Client's Korean operations include the following:

A.  Preparation of amended withholding income tax return
    In the case where Client requests, we will assist in preparation of an amended withholding income tax return.

B.  Responsibilities for preparing and signing returns

We will complete    Client's tax return based on the accounts and other information supplied to us by you or others on your behalf. We are relying upon Client personnel to assure the accuracy and completeness of its records, as well as the integrity of all other information supplied to us. Our procedures do not include independent verification of source data. You shall not rely on this engagement to uncover errors or irregularities in the underlying information incorporated in the tax returns, should any exist. None of the work we will perform under this engagement will constitute an attest engagement.

We will send the returns to you. A representative of Client is required to sign the statutory declaration that the return is correct and complete.

The return and computations should be reviewed carefully before the declaration is signed. The representative signing the return will be certifying that all the entries in the return are correct.

Where the audited accounts are available and other necessary information has been supplied in good time, we will send the returns and computations to you for signature in sufficient time to meet the submission deadline. Where full or timely information is not available, we will discuss the position with you and advise you about any applicable penalties and disclosure obligations.

Please note that when we are performing our tax compliance services, we will not review your tax compliance status of other taxes other than those we have been engaged to do. In addition, you will appreciate that the procedures we carry out during the tax compliance process do not constitute part of the statutory audit, and we will not express an audit opinion on the tax return. Review of transfer pricing policies is also beyond the scope of this SOW.

Korean Services not covered include the following:

▸   acting for you in tax authority enquiries, in particular matters relating to the underlying systems and processes which governed the generation of the figures contained within the returns;
▸   attendance at on-site tax authority audits;



However, we would be happy to advise on any of the above matters if requested to do so. Subject to Bankruptcy Court approval, our fees for such additional advice will be charged to you in addition to the fees quoted in this SOW and will be subject to our standard billing rates.

**Your obligations**

We draw your attention to the reservations set out in paragraph 6 of the General Terms and Conditions of the Agreement, as well as your management responsibilities under paragraph 7, and your representation, as of the date hereof, under paragraph 27 thereof. You have obtained the prior approval of your Audit Committee for these Services, as applicable.

Management of Client is responsible for establishing and maintaining its expatriate tax policies and, in that connection, it will:

▸ Designate the appropriate individual to be responsible for the expatriate tax function within Client. Based on our prior discussions, we understand that Angie Lannom will be designated to perform that role.
▸ Determine the participants in its expatriate tax program for whom EY will perform the United States Services pursuant to this SOW, and ensure that each participant complies with Client's requirements for participation in the expatriate tax program, including if necessary, providing a consent (including, where applicable, a consent from the participant's spouse) authorizing EY to disclose the participant's tax return information to Client in connection with EY's assistance in determining tax equalization/reimbursement payments and other services relating to the expatriate tax program.
▸ Provide EY with accurate and timely data, and other appropriate resources, and require Client employees who are participants in the expatriate tax program to provide EY with accurate and timely data and information.

**Additional terms and conditions**

Subject to Bankruptcy Court and Client approval, we may subcontract portions of the Service to a third-party contractor, with client's prior written consent, such consent not to be unreasonably withheld.

If the basis of such claim relates to Services provided for one Participant for a given year, EY liability shall be limited to the fees received with respect to such Participant for that year.

Notwithstanding anything contained in the General Terms and Conditions of the Agreement to the contrary, neither party may terminate this SOW without cause unless 90 days prior written notice is given to the other party.

To facilitate performance of the Services, we may (and may, subject to additional terms and conditions, including license agreements, permit your authorized representatives to) use certain



software and tools that allow us to collaborate with you electronically, including Ernst & Young *eRoom* (collectively, "Collaboration Tools"). You shall not, and shall not permit third parties to, copy or modify any Collaboration Tools, or decompile, reverse engineer, or in any way derive any source code from, or create any derivative work of, any Collaboration Tools. COLLABORATION TOOLS ARE PROVIDED "AS IS," AND NONE OF EY OR ANY OTHER PARTY INVOLVED IN THE CREATION, PRODUCTION OR DELIVERY OF ANY COLLABORATION TOOL MAKES ANY WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO ANY COLLABORATION TOOL, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, NON-INFRINGEMENT, TITLE, OR ANY WARRANTY THAT THE OPERATION OF ANY COLLABORATION TOOL WILL BE UNINTERRUPTED, ERROR FREE OR THAT IT WILL BE COMPATIBLE WITH ANY OF YOUR HARDWARE OR SOFTWARE. EY WILL NOT SUPPORT, MAINTAIN OR UPGRADE ANY COLLABORATION TOOL. YOU ASSUME SOLE RESPONSIBILITY FOR THE USE OF ANY COLLABORATION TOOL AND THE RESULTS THEREOF. Your use of Collaboration Tools (or use on your behalf) is not a substitute for any documentation or system of records you must create or maintain pursuant to law, including, without limitation, section 6001 of the Internal Revenue Code. You alone are responsible for maintaining separate copies of any documentation you input into any Collaboration Tool.

## Contacts

You have identified Angie Lannom as your contact with whom we should communicate about these Services. Your contact at EY for these Services will be David Moskowitz.

## Engagement Team

David Moskowitz will lead the EY team in providing the Services.    If this ceases to provide Services to the Client pursuant to the Agreement, EY will so advise the Client and, if that person is replaced, provide the Client with the name of the professional's replacement.    Other staff and subject matter specialists, not identified herein, may be utilized as required to conduct our work in an efficient manner.

## Fees

The General Terms and Conditions of the Agreement address our fees and expenses generally.

*United States Services*

Subject to and in accordance with necessary Bankruptcy Court approval, the fees for EY's United States Services pursuant to this SOW are set forth in Attachment 1 hereto. Our professional fees will be subject to the Consumer Price Index ("CPI") adjustment described below. EY will invoice Client on a monthly interim basis with quarterly reconciliations. Payment of each invoice is due upon receipt of the invoice. Nonpayment of undisputed fees for more than 30 days shall be grounds for termination



of the contract. You shall also pay any value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the United States Services, including any such taxes and related administrative costs that result from billing arrangements specifically requested by you.

For purposes of this SOW, "CPI", as of any month, will mean the Consumer Price Index for All Urban Consumers, U.S. City Average, for all items published by the Bureau of Labor Statistics of the Department of Labor, for such month. If, starting on the second anniversary of this SOW and continuing on each subsequent anniversary, the CPI ("Current Index") is higher than the prior anniversary's CPI ("Base Index"), then, effective as of such anniversary, the fees payable (as may have previously been adjusted pursuant to this paragraph) will increase by the percentage that the Current Index increased from the Base Index. This increase will be effective on the first calendar month following such anniversary; provided, however, that until the Current Index is announced, we will invoice Client at the previously established amounts of fees and, upon such announcement, will include on our next succeeding invoice an amount equal to the net increase in such amounts since the effective date of the increase.

*Korean Tax Services*

Subject to and in accordance with necessary Bankruptcy Court approval, fees for the services outlined in subsection A of EY's Korean Services will be USD 300 per month, per person.    Fees for all remaining EY Korean Services outlined in subsection B are set forth in Attachment 3.

Please note that the services and fee estimates provided in this SOW are based on the time costs necessary to be spent on the assignment and take into account the degree of responsibility, the level and the experience of the staff involved.

In the event that we run into any unforeseen difficulties in the course of our work and we have to spend additional time on the agreed scope, we will give you a prior notice of this fact together with a full explanation of the difficulties arising and only continue subject to your approval.

Value-added tax will be charged separately to the Client, and out of pocket expenses incurred in connection with the services performed will be billed to you on an actual reimbursement basis.

Fees for any services not included within the fixed fees shall be payable based on the number and seniority of partners and staff required, the degree of skill and responsibility involved, the resources required to complete the engagement and the fee rates for the appropriate personnel at the following hourly rates.

| | |
|---|---|
| Partner | KRW 575,000 |
| Executive Director | KRW 550,000 |
| Senior Manager | KRW 490,000~535,000 |
| Manager | KRW 415,000~475,000 |
| Senior Consultant | KRW 310,000~365,000 |

Staff Consultant              KRW 130,000~175,000

In witness whereof, the parties have executed this SOW as of the date set forth above.

Ernst & Young LLP

*Ernst & Young LLP*

**Nortel Networks Inc.**

By: ___*Julie Graffam Kaplan*___

Name: ___*Julie Graffam Kaplan*___

Title: ___*HR Director*___

# Attachment 1

## Scope of Services and fees

| Fee (in local currency) | Fee (in USD) | Country where work to be performed | Service performed | Scope of Service performed | Scope assumptions | Client/expatriate responsibility |
|---|---|---|---|---|---|---|
| $750 | - | US | Amended Federal Tax Return | The preparation of an amended Federal tax return. | EY will prepare amended tax returns as authorized by Client. The expatriate will need to provide information as necessary for the preparation of the return. | Provision of any necessary information as can be provided by Client for the preparation of the amended return. |
| $150 | - | US | Amended State Tax Return(s) | Each additional amended state tax return would be completed at a fee of $150 per return. | EY will prepare amended tax returns as authorized by Client. The expatriate will need to provide information as necessary for the preparation of the return. | Provision of any necessary information as can be provided by Client for the preparation of the amended return. |
| $2,250 | - | US | Annual Expatriate Federal and State Tax Return | Preparation of Federal tax return and 1 state tax return. | Expatriate to complete Tax Organizer, as provided by EY, by agreed upon date with Client. Return to be completed within 20 business days after reciving all necessary return data. | Client and expatriate to provide all data timely. |
| $350 | - | US | Annual Expatriate tax return – Additional State Filings | Preparation of additional state and local tax returns would be billed at $150 per tax filing. | Expatriate to complete Tax Organizer, as provided by EY, by agreed upon date with Client. | Client and expatriate to provide all data timely. |
| $250 | - | US | Annual Foreign Bank Account Reporting Form | Preparation of Form TD F 90-22.1 Report of Foreign Bank and Financial Accounts. | EY will prepare this form for up to 3 reportable accounts. Any additional accounts will be charged at $100 per account. | Expatriate to provide all data timely. |
| $750 | - | US | Arrival Tax Meeting | Meeting (either face to face or via telephone between EY & expatriate regarding host country tax implications of assignment); Assumes 1 hour meeting, preparation for the meeting, and the completion of a meeting checklist. | Expatriate to be contacted within 48 hours of receipt of information from relocation vendor. | Client to provide assignment letter and expatriate contact information in a timely fashion. |
| $400 | - | US | Certificates of Coverage | Preparation and filing of Application for Certificate of Coverage | Turnaround dependent on tax authority. | Client and expatriate to provide full information. |

| Fee (in local currency) | Fee (in USD) | Country where work to be performed | Service performed | Scope of Service performed | Scope assumptions | Client/expatriate responsibility |
|---|---|---|---|---|---|---|
| $750 | - | US | Departure Tax Meeting | Meeting (either face to face or via telephone between EY & expatriate regarding tax implications in host country upon departure); Assumes 1 hour meeting, preparation for the meeting, and the completion of a meeting checklist. | Expatriate to be contacted within 48 hours of receipt of information from relocation vendor. | Client to provide assignment letter and expatriate contact information in a timely fashion. |
| $750 | - | US | Gross-Up Calculation | Preparation of a US gross-up calculation at the request of Client. | Turnaround time estimated at 5 business days. | Client to provide complete information. |
| $750 | - | US | Home Country Hypothetical Tax Calculation | Preparation of one hypo calculation at the start of assignment. If amended calculations are required, additional fee would be agreed to with Client. | Prepared in connection with start of assignment. Additional calculations completed based on request of Client. | Client to provide complete compensation summary and assumptions to be used. |
| $500 | - | US | Home Country Tax Equalization Calculation | Preparation of tax equalization calculation in accordance with Client tax equalization policy. | To be completed within two business days from completion of annual tax return. | Client to provide complete compensation breakdown, including gross-ups and policy. |
| $500 | - | US | Quarterly Compensation Review | Gather and review of of quaterly compensation data for agreed upon assignees. | N/A | Client to provide complete information. |
| $300 | - | US | Amended Home Country Tax Equalization Calculation | The preparation of an amended tax equalization calculation. | EY will prepare amended tax equalization as authorized by Client. | Client to provide complete compensation breakdown, including gross-ups and policy. |
| $300 | - | US | Request for Extension Including Detailed Calculation/Estimate | The preparation of Federal or State extension including a detailed tax calculation/estimate to determine possible payment to be made. | EY will prepare extensions prior to the filing due date(s) and will make sure to keep the expatriate in compliance with US filing deadlines. | Client to provide detailed compensation information and expatriate to provide data necessary to be able to calculate tax estimate. |
| - | - | US | Request for Extension of Time to File | The preparation of Federal and State extensions as applicable, assuming no detailed calculations required. Each additional extension requested (Federal & State) past August 15th would be billed at $300 per extension. | EY will prepare extensions prior to the filing due date(s) and will make sure to keep the expatriate in compliance with US filing deadlines. | Basic information to be provided by Client and/or expatriate to complete extension. |
| - | - | US | Response to Tax Authority Notice | Review and response to notices issued by the taxing authority. To be billed at pre-agreed upon fee. | EY will undertake the prompt review of notices received from the tax authority, and timely rectification or clarification of any issues arising. | Client and/or expatriate to provide information as requested. |

| Fee (in local currency) | Fee (in USD) | Country where work to be performed | Service performed | Scope of Service performed | Scope assumptions | Client/expatriate responsibility |
|---|---|---|---|---|---|---|
| $150 | - | US | ITIN Application | Preparation of ITIN application to be submitted on behalf of expatriates' dependents. | To be completed with the annual tax return. | Expatriate to provide necessary information to complete application. |
| $500 | - | US | Preparation of Arrival/Departure Forms | Preparation of forms such as Form W-4, Form 673, Change of Address Form, etc. related to the arrival/departure of expatriate to/from the US. | To be completed in connection with the arrival or departure tax meeting | Client/Expatriate to provide full information. |

Note: Our professional fees will be subject to the Consumer Price Index ("CPI"). See body of SOW.

**SERVICES NOT COVERED:**

- ▶ Federal State and Local Income Tax Returns involving complex forms, schedules or transactions
- ▶ State and Local Income Tax Returns not due to Client Assignment
- ▶ Children's or other dependents' Tax Returns
- ▶ Retirement, Insurance, Financial or Estate Planning
- ▶ Personal Tax Planning
- ▶ Gift Tax Returns
- ▶ Financial Counseling Concerning Stock Options
- ▶ Investment Advice
- ▶ Advice on Rental of Non-Principal Residence
- ▶ U.S. Domicile Ruling Requests
- ▶ Non-U.S. Tax Returns, other than Host Country unless specifically agreed by Client, the Participant and EY
- ▶ Tax Returns relating to household employees
- ▶ Returns that include more than 3 Schedule K-1s
- ▶ Returns that include more than 1 rental property
- ▶ Returns that include more than 10 capital gain transactions

# Attachment 2

**Form of Terms of Service Agreement for Human Capital Services**

In this Terms of Service Agreement for Human Capital Services, Ernst & Young LLP, which is engaged by your employer to provide you with human capital services, is referred to herein as "Ernst & Young."

Ernst & Young will perform certain Human Capital services ("Services") for you and, if applicable, for your spouse or spousal equivalent and other family members (each referred to as "you"), as agreed in the engagement agreement with your employer or one of its affiliates (collectively "your employer") and provided to you under their Human Capital services program.

Ernst & Young may also provide other services to your employer under your employer's Human Capital services program. All services provided under your employer's Human Capital services program, including the services provided to you, are collectively referred to herein as "Services." The terms of the Human Capital services program are set out in an engagement agreement between Ernst & Young and your employer ("Engagement Agreement").

**The Ernst & Young Network**

Ernst & Young is an independent member of Ernst & Young Global Limited ("EYGL") which acts as the central coordinating body of the Ernst & Young network of independent firms ("EY Network"). No member of the EY Network other than Ernst & Young assumes any responsibility to you in connection with the Services we provide to you. You acknowledge that Ernst & Young is not the agent of any member of the EY Network and that none of those other entities are agents of Ernst & Young.

You agree that (i) any claim arising out of or in connection with the Services we provide to you shall be brought only against Ernst & Young and (ii) not to bring any proceedings arising out of or in connection with the Services personally against any other persons involved in the performance of the Services. You agree not to bring any proceedings arising out of or in connection with the Services in any jurisdiction against any member of the EY Network (other than Ernst & Young) or any partner or staff thereof.

Each member of the EY Network and each partner or member of staff thereof and each of our partners or members of staff shall have the express benefit of this section and shall have the right to rely on and enforce any of its terms.

**Scope of Services**

In accordance with the terms of the Engagement Agreement between Ernst & Young and your employer, Ernst & Young will provide to you such of the Services as set out in Annex 1 hereto as you shall elect. From time to time during the term of the engagement these Services may be varied. We will notify you of a variation to the Services where such variation is applicable or relevant to you.

**Provision of Services**

In order for Ernst & Young to provide the Services to you, you agree to provide to Ernst & Young in a timely manner the information that Ernst & Young reasonably requires from you, which could, for example, include details with respect to your personal income or copies of your tax returns (collectively, your "Data"). You also acknowledge and confirm that you have authorized your employer to provide Ernst & Young with any Data we may require from your employer in order to provide the Services to you. In addition, you agree to provide Ernst & Young with an executed consent authorizing the disclosure of your tax return information to other members of the EY Network that will assist in the preparation of your home and host country tax returns.

Where your employer has transferred the provisioning of the Services to Ernst & Young from another service provider, you agree that Ernst & Young may contact your previous service provider in order to obtain your Data and you will complete an appropriate consent form in order to facilitate this process.

All advice and other services Ernst & Young provides pursuant to this engagement are intended solely for the benefit of you and/or your employer and are not for the benefit of anyone else. From time to time, and depending on the circumstances, non-CPA personnel, including non-CPA owners of affiliated firms, as well as independent contractors and consultants to Ernst & Young, may participate in the services we provide to you.

**Tax authority notice**

You acknowledge that the taxpayer is responsible for compliance with the tax law. The obligations of the taxpayer include maintaining records and providing accurate and complete information to the tax authorities as required by the tax law. Penalties may be imposed by the tax authorities on the taxpayer for failure to comply with the tax law.

**Reportable Transaction questionnaire**

Treasury regulations require individuals to file disclosure statements with the IRS relating to certain tax strategies/transactions that the IRS has identified as a Listed Transaction or Transaction of Interest, any transaction that is substantially similar to a Listed Transaction or Transaction of Interest, and Other Reportable Transactions. The disclosure statements must be filed with the proper tax return and also sent separately to the IRS. In addition, some states have enacted tax shelter legislation requiring taxpayers to file reportable transaction disclosure statements with the appropriate state income and franchise tax returns. Failure to properly disclose any of these transactions/strategies in which you directly or indirectly participated may result in the imposition of penalties. During the process of gathering data to prepare your tax return(s), you will be provided with a questionnaire regarding Listed Transactions, Transactions of Interest and Other Reportable Transactions that you must complete and return in order for Ernst & Young to prepare your tax return(s). Ernst & Young will not be liable for any penalties resulting from your failure to accurately and timely respond to the questionnaire or to timely file the required disclosure statements.

**Communication by email**

Unless otherwise agreed in writing with you, we may correspond by means of the Internet or other electronic media or provide information to you in electronic form. Because of the inherent risks associated with the electronic transmission of information on the Internet or otherwise, we cannot guarantee the confidentiality and integrity of any unencrypted electronic communications or information which are sent or received in relation to the Services once they are outside of our firewalls.

Although it is our policy to check our e-mail correspondence and other electronic information with anti-virus software, we similarly cannot guarantee that transmissions or other electronic information will be free from infection.

**Terms of use of technology**

Ernst & Young may provide you with access to our proprietary software tool myEYOnline for the purpose of delivering documents to you and assisting you to provide information to Ernst & Young. You may also be entitled to download and use our offline calendar application and Microsoft excel organizers (the "Software"). In such event, your access to and use of the Software will be subject to the terms and conditions which are contained within the myEYOnline site.

**Limitation of liability**

Ernst & Young will not be liable for any claim for damages arising out of or in connection with any services provided hereunder for you or your employer in an amount greater than the amount of fees actually received by Ernst & Young with respect to the services performed on your behalf and directly relating to and forming the basis of such claim.

No party to this agreement will, in any event, be liable to the other, for any reason, for any consequential, incidental, special, punitive or indirect damages, including loss of profits, revenue, data, and use of money or business opportunities, regardless of whether notice has been given or there is an awareness that such damages have been or may be incurred.

**Governing law**

This agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and fully performed therein by residents thereof.

**Dispute resolution**

Any controversy or claim arising out of or relating to the services covered by this agreement and provided to you shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution ("Rules") as in effect on the date of this agreement. Judgment on any arbitration award may be entered in any court of appropriate jurisdiction.

**Consent to Terms of Service within this notice**

Upon your signed acceptance below, this agreement is deemed effective as of the date of that acceptance for the whole period Ernst & Young is engaged to provide Services to you.

**Acknowledgement**

I acknowledge and agree that the terms of this Terms of Service Agreement for Human Capital Services forms a binding agreement between myself and Ernst & Young. I confirm that I am authorized to accept these terms on behalf of my spouse or spousal equivalent and other family members where applicable.

_____
Signature

_____          _____
Name (please print)                                                   Date

# Attachment 3

## Scope of Services and Fees

| Fee (in local currency) | Fee (in USD) | Country where work to be performed | Service performed | Scope of Service performed | Scope assumptions | Client/expatriate responsibility |
|---|---|---|---|---|---|---|
| USD 900 | - | Korea | Amended Composite Income Tax Return | - | - | Provision of any necessary information as can be provided by Client for the preparation of the amended return. |
| KRW 500,000 (Meeting in Person); KRW 600,000 (Phone Briefing) | - | Korea | Tax Orientation Meeting | Expatriate to be contacted within 48 hours of receipt of information from relocation vendor. | Client to provide assignment letter and expatriate contact information in a timely fashion. Assumes 1 hour meeting, preparation for the meeting, and the completion of a meeting checklist. | - |
| KRW 1,700,000 | - | Korea | Annual Expatriate tax return | Preparation of annual Korean income tax return | Expatriate to complete Tax Organizer, as provided by EY, by agreed upon date with Client. | Client and expatriate to provide all data timely. |
| KRW 500,000 - KRW 700,000 | - | Korea | Amended Annual Expatriate tax return | Re-calculation of taxable liabilities and preparations of an amended tax return due to an additional information provided after return preparation and delivery | - | Client and expatriate to provide all data timely. |
| KRW 8000,000 | - | Korea | Filing Obligation Determination | Analysis and determination of annual of annual tax return filing requirement (when analysis concludes no filing requirement) | - | Client and expatriate to provide all data timely. |
| KRW 300,000 | - | Korea | Tax Reimbursement Gross Up | Calculation of current year tax reimbursement gross ups required under Korean domestic Law | - | Client and expatriate to provide all data timely. |
| Hourly Rates | - | Korea | Compensation Reconciliation | Reconciliation of compensation to determine taxable and reportable remuneration in case of multiple sources of payments requiring analysis of total taxable compensation for Korean tax purposes | - | Client and expatriate to provide all data timely. |

| Fee (in local currency) | Fee (in USD) | Country where work to be performed | Service performed | Scope of Service performed | Scope assumptions | Client/expatriate responsibility |
|---|---|---|---|---|---|---|
| KRW 150,000 | - | Korea | Late Filing Penalty Calculations & Payment Voucher Preparation | Calculation and late filing/penalties and preparation of revised payment vouchers, per calculation | - | Client and expatriate to provide all data timely. |
| KRW 90,000 | - | Korea | Tax Return Filing | Filing of tax return on behalf of assignee | - | Client and expatriate to provide all data timely. |

# Exhibit 2

**Connections Check Matrix with respect to Connections Check Update Parties**

| Category | PILL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Debtors Attorney | Allen & Overy LLP | | x | |
| Debtors Attorney | Ogilvy Renault LLP | x | | |
| Debtors Other Professionals | Chilmark Partners, LLC | x | | |
| Debtors Other Professionals | Cleary Gottlieb Steen & Hamilton LLP | | | x |
| Debtors Other Professionals | Crowell & Moring LLP | x | | |
| Debtors Other Professionals | Global IP Law Group, LLC | x | | |
| Debtors Other Professionals | Grant Thornton LLP | x | | |
| Debtors Other Professionals | Jackson Lewis LLP | x | | |
| Debtors Other Professionals | Linklaters LLP | x | | |
| Debtors Other Professionals | Mercer (US) Inc. | | | x |
| Debtors Other Professionals | Morris, Nichols, Arsht & Tunnell LLP | | x | |
| Debtors Other Professionals | Palisades Capital Advisors LLC | x | | |
| Debtors Other Professionals | Palisades Capital Advisors LLC | x | | |
| Debtors Other Professionals | Punter Southall | x | | |
| Debtors Other Professionals | RLKS Executive Solutions LLC | x | | |
| Debtors Other Professionals | Shearman & Sterling LLP | | | x |
| Debtors Other Professionals | Special Counsel Inc. | x | | |
| Debtors Officers/Directors | A. Aziz Khadbai | x | | |
| Debtors Officers/Directors | Alain Papineau | x | | |
| Debtors Officers/Directors | Alan W. Pritchard | x | | |
| Debtors Officers/Directors | Allan Bifield | x | | |
| Debtors Officers/Directors | Allan K. Stout | x | | |
| Debtors Officers/Directors | Allen Keith Stout | x | | |
| Debtors Officers/Directors | Alvio Silvio Barrios | x | | |
| Debtors Officers/Directors | Andrew Harrison | x | | |
| Debtors Officers/Directors | Anna Ventresca | x | | |
| Debtors Officers/Directors | Anthony G. MacDonald | x | | |
| Debtors Officers/Directors | Anthony Jones | x | | |
| Debtors Officers/Directors | April A. Pennisi | x | | |
| Debtors Officers/Directors | Bill Thompson | x | | |
| Debtors Officers/Directors | Biran Lindsay | x | | |
| Debtors Officers/Directors | Camille Issa | x | | |
| Debtors Officers/Directors | Charles R. Raphun | x | | |
| Debtors Officers/Directors | Christian Kittlitz | x | | |
| Debtors Officers/Directors | Christopher Hogg | x | | |
| Debtors Officers/Directors | Christopher Ricaurte | x | | |
| Debtors Officers/Directors | Christopher Simon Ricaurte | x | | |
| Debtors Officers/Directors | Clare A. Barbieri | x | | |
| Debtors Officers/Directors | Clarke Glaspell | x | | |
| Debtors Officers/Directors | Claudio Morfe Jr. | x | | |
| Debtors Officers/Directors | Courtland Wolfe | x | | |
| Debtors Officers/Directors | Craig Telke | x | | |
| Debtors Officers/Directors | Cristina Gomez | x | | |
| Debtors Officers/Directors | Dany Sylvain | x | | |
| Debtors Officers/Directors | David Price | x | | |
| Debtors Officers/Directors | Dennis Carey | x | | |
| Debtors Officers/Directors | Dennis Lloyd | x | | |
| Debtors Officers/Directors | Dennis R. X. Thibault | x | | |
| Debtors Officers/Directors | Dharmaraja Rajan | x | | |
| Debtors Officers/Directors | Donald Powers | x | | |
| Debtors Officers/Directors | Donna Samper | x | | |
| Debtors Officers/Directors | Duncan Gillibrand | x | | |
| Debtors Officers/Directors | Eduardo Santoyo | x | | |
| Debtors Officers/Directors | Elaine Smiles | x | | |
| Debtors Officers/Directors | Emre Erkol | x | | |
| Debtors Officers/Directors | Eric L. Smith | x | | |
| Debtors Officers/Directors | Ernest R. Higginbotham | x | | |
| Debtors Officers/Directors | Eugene McClain | x | | |

| | | | | |
|---|---|---|---|---|
| Debtors Officers/Directors | Fabiola Leva | x | | |
| Debtors Officers/Directors | Felipe Gonzales | x | | |
| Debtors Officers/Directors | Francois Audet | x | | |
| Debtors Officers/Directors | Francois Burton | x | | |
| Debtors Officers/Directors | Glenn Brownridge | x | | |
| Debtors Officers/Directors | Gordon A. Davies | x | | |
| Debtors Officers/Directors | Gordon Allen Davis | x | | |
| Debtors Officers/Directors | Graeme Currie | x | | |
| Debtors Officers/Directors | Greg Thor | x | | |
| Debtors Officers/Directors | Gregor W. Larson | x | | |
| Debtors Officers/Directors | Gregory Hood | x | | |
| Debtors Officers/Directors | Guillaume Strub | x | | |
| Debtors Officers/Directors | Guy Lafontaine | x | | |
| Debtors Officers/Directors | Guy Vonderweidt | x | | |
| Debtors Officers/Directors | Hector Benjamin Viana | x | | |
| Debtors Officers/Directors | Henry Holland | x | | |
| Debtors Officers/Directors | Iain Sharp | x | | |
| Debtors Officers/Directors | Ian Scales | x | | |
| Debtors Officers/Directors | J. Erik Fako | x | | |
| Debtors Officers/Directors | Jacqueline C. Hea | x | | |
| Debtors Officers/Directors | James McEachern | x | | |
| Debtors Officers/Directors | James Ostrom | x | | |
| Debtors Officers/Directors | Jean-Pierre Fortin | x | | |
| Debtors Officers/Directors | Jeffrey Wood | x | | |
| Debtors Officers/Directors | Jeremy Fuller | x | | |
| Debtors Officers/Directors | Joel Joseph, Jr. | x | | |
| Debtors Officers/Directors | John D. Atkinson | x | | |
| Debtors Officers/Directors | John M. Doolittle | x | | |
| Debtors Officers/Directors | John R. McCready | x | | |
| Debtors Officers/Directors | Jorge Humberto Suarez | x | | |
| Debtors Officers/Directors | Joseph F. Dearing | x | | |
| Debtors Officers/Directors | Juan Jose Chico | x | | |
| Debtors Officers/Directors | Karen E. Sledge | x | | |
| Debtors Officers/Directors | Katharine B. Stevenson | x | | |
| Debtors Officers/Directors | Keith Landau | x | | |
| Debtors Officers/Directors | Ken Huntington | x | | |
| Debtors Officers/Directors | Kevin Boyle II | x | | |
| Debtors Officers/Directors | Kevin Sembrat | x | | |
| Debtors Officers/Directors | Kimberly P. Poe | x | | |
| Debtors Officers/Directors | Laurie A. Krebs | x | | |
| Debtors Officers/Directors | Lee B. Valerius | x | | |
| Debtors Officers/Directors | Louis LeVay | x | | |
| Debtors Officers/Directors | Lynn Cecelia Egan | x | | |
| Debtors Officers/Directors | Lynn Egan | x | | |
| Debtors Officers/Directors | Mario Brown | x | | |
| Debtors Officers/Directors | Mark J. Hamilton | x | | |
| Debtors Officers/Directors | Mark Kepke | x | | |
| Debtors Officers/Directors | Martha Helena Bejar | x | | |
| Debtors Officers/Directors | Mary Barnes | x | | |
| Debtors Officers/Directors | Matteo Candaten | x | | |
| Debtors Officers/Directors | Mehdi Sajasi | x | | |
| Debtors Officers/Directors | Michael Gawargy | x | | |
| Debtors Officers/Directors | Michael Leeder | x | | |
| Debtors Officers/Directors | Michael W. McCorkle | x | | |
| Debtors Officers/Directors | Norberto Milan | x | | |
| Debtors Officers/Directors | Norman Caron | x | | |
| Debtors Officers/Directors | Oya Istemi | x | | |
| Debtors Officers/Directors | Parviz Rashidi | x | | |
| Debtors Officers/Directors | Paul Granville | x | | |
| Debtors Officers/Directors | Paul T. Knudsen | x | | |
| Debtors Officers/Directors | Paul W. Karr | x | | |

| | | | | |
|---|---|---|---|---|
| Debtors Officers/Directors | Pete Streng | x | | |
| Debtors Officers/Directors | Peter Krautle | x | | |
| Debtors Officers/Directors | Peter Look | x | | |
| Debtors Officers/Directors | Raj Krishnan | x | | |
| Debtors Officers/Directors | Richard C. Taylor | x | | |
| Debtors Officers/Directors | Richard Willis | x | | |
| Debtors Officers/Directors | Ricky Kaura | x | | |
| Debtors Officers/Directors | Robert C. Pugh | x | | |
| Debtors Officers/Directors | Robert J. Looney | x | | |
| Debtors Officers/Directors | Robert Litalien | x | | |
| Debtors Officers/Directors | Robert Michael Kales | x | | |
| Debtors Officers/Directors | Robert Saunders | x | | |
| Debtors Officers/Directors | Robin Scott Hughes | x | | |
| Debtors Officers/Directors | Roger W. Britt | x | | |
| Debtors Officers/Directors | Ron Ryan | x | | |
| Debtors Officers/Directors | Russell Coffin | x | | |
| Debtors Officers/Directors | Serge Caron | x | | |
| Debtors Officers/Directors | Shelly Bracken | x | | |
| Debtors Officers/Directors | Sonia Garapaty | x | | |
| Debtors Officers/Directors | Stephan Radatus | x | | |
| Debtors Officers/Directors | Steve J. McKinnon | x | | |
| Debtors Officers/Directors | Steven Woods | x | | |
| Debtors Officers/Directors | Sudarshan Chitale | x | | |
| Debtors Officers/Directors | Swapan Nandi | x | | |
| Debtors Officers/Directors | Thomas A. Gigliotti | x | | |
| Debtors Officers/Directors | Tim Gaiser | x | | |
| Debtors Officers/Directors | Tom Buttermore | x | | |
| Debtors Officers/Directors | Tom P. Taylor | x | | |
| Debtors Officers/Directors | Waye Lyon | x | | |
| Debtors Officers/Directors | Wei Jen Yeh | x | | |
| Debtors Officers/Directors | William Gentry | x | | |
| Debtors Officers/Directors | William J. LaSalle | x | | |
| Debtors Officers/Directors | William Roy Ellis | x | | |
| All Secured Lenders including DIP lender | Fidelity Treasury Portfolio Fund | x | | |
| All Secured Lenders including DIP lender | Government Prime Cash Management Fund | x | | |
| All Secured Lenders including DIP lender | Reserve Primary Fund | x | | |
| All Secured Lenders Attorney | Milbank Tweed LLP (advisors) | | | x |
| All Substantial Unsecured Bondholder or Lender | Amalgated Bank | | x | |
| All Substantial Unsecured Bondholder or Lender | BNP/PPBC | | x | x |
| All Substantial Unsecured Bondholder or Lender | Carolina Capital Markets, Inc. | x | | |
| All Substantial Unsecured Bondholder or Lender | Cede & Co. | x | | |
| All Substantial Unsecured Bondholder or Lender | Citadel Derivatives Group, LLC or Citidel Trading Group, LLC | x | | |
| All Substantial Unsecured Bondholder or Lender | Clearview Correspondent Services, LLC | x | | |
| All Substantial Unsecured Bondholder or Lender | Davidson (D.A.) & Co., Inc. | x | | |
| All Substantial Unsecured Bondholder or Lender | Dresdner Kleinwort Securities LLC | | x | x |
| All Substantial Unsecured Bondholder or Lender | Emmett Larkin Co., Inc. | x | | |
| All Substantial Unsecured Bondholder or Lender | Fidelity Management & Research Co. | x | | |
| All Substantial Unsecured Bondholder or Lender | First Clearing, LLC | x | | |

| | | | | |
|---|---|---|---|---|
| All Substantial Unsecured Bondholder or Lender | H.G. Wellington & Co, Inc | x | | |
| All Substantial Unsecured Bondholder or Lender | Hawthorne Securities, Corp | x | | |
| All Substantial Unsecured Bondholder or Lender | Ingalls & Snyder, LLC | x | | |
| All Substantial Unsecured Bondholder or Lender | Interactive Brokers, LLC/Retail Clearance | x | | |
| All Substantial Unsecured Bondholder or Lender | Janney Montgomery Scott, LLC | x | | |
| All Substantial Unsecured Bondholder or Lender | Jones (Edward D.) & Co. | | | x |
| All Substantial Unsecured Bondholder or Lender | Laurential Bank of Canada | x | | |
| All Substantial Unsecured Bondholder or Lender | Lehman Brothers, Inc. | | x | |
| All Substantial Unsecured Bondholder or Lender | Loomis Sayles & Company, L.P. | x | | |
| All Substantial Unsecured Bondholder or Lender | LPL Financial Corporation | | | x |
| All Substantial Unsecured Bondholder or Lender | Mackay Sheilds LLC | | x | |
| All Substantial Unsecured Bondholder or Lender | Manufacturers & Trust Company | x | | |
| All Substantial Unsecured Bondholder or Lender | Marshall & Illsey Bank | x | | |
| All Substantial Unsecured Bondholder or Lender | McMillion Securities, Inc | x | | |
| All Substantial Unsecured Bondholder or Lender | Mellon Trust of New England, NA | x | | |
| All Substantial Unsecured Bondholder or Lender | Merrill Lynch Pierce Fenner & Smith Inc. | | x | x |
| All Substantial Unsecured Bondholder or Lender | ML SFKPG | x | | |
| All Substantial Unsecured Bondholder or Lender | Morgan, Keegan & Company, Inc. | | | x |
| All Substantial Unsecured Bondholder or Lender | National Financial Services Corp. | x | | |
| All Substantial Unsecured Bondholder or Lender | NBCN Inc./CDS | x | | |
| All Substantial Unsecured Bondholder or Lender | Oppenheimer & Co., Inc. | | x | |
| All Substantial Unsecured Bondholder or Lender | Pacific Investment Management Company LLC | | | x |
| All Substantial Unsecured Bondholder or Lender | Ridge Clearing & Outsourcing Solutions, Inc | x | | |
| All Substantial Unsecured Bondholder or Lender | Sanford C. Bernstein & Co., LLC | | | x |
| All Substantial Unsecured Bondholder or Lender | Sankaty Advisors LLC | x | | |
| All Substantial Unsecured Bondholder or Lender | Scottrade, Inc | | | x |
| All Substantial Unsecured Bondholder or Lender | Sterne, Agee & Leach, Inc. | x | | |
| All Substantial Unsecured Bondholder or Lender | Stifel Nicholaus & Company | x | | |
| All Substantial Unsecured Bondholder or Lender | Sumi Trust | x | | |
| All Substantial Unsecured Bondholder or Lender | UMB Bank NA | x | | |

| | | | | |
|---|---|---|---|---|
| All Substantial Unsecured Bondholder or Lender | US Bank NA | | | x |
| All Substantial Unsecured Bondholder or Lender | Wilmington Trust Company | x | | |
| Official Statutory Committee Other Professional | Capstone Advisory Group, LLC | x | | |
| Official Statutory Committee Member Attorney | Akin Gump Strauss Hauer & Feld LLP | | x | |
| Official Statutory Committee Member Attorney | Ashurst LLP | x | | |
| Official Statutory Committee Member Attorney | Fraser Milner Casgrain LLP | x | | |
| Official Statutory Committee Member Attorney | Jefferies & Co., Inc. | | x | x |
| Official Statutory Committee Member Attorney | Richards, Layton & Finger | | x | |
| Other Significant Parties-in-Interest Material Litigants | BT Americas Inc | x | | |
| Other Significant Parties-in-Interest Material Litigants | China Telecom Americas Corp | x | | |
| Other Significant Parties-in-Interest Material Litigants | Ciena Corporation | x | | |
| Other Significant Parties-in-Interest Material Litigants | City of Durham | x | | |
| Other Significant Parties-in-Interest Material Litigants | City of Richardson | x | | |
| Other Significant Parties-in-Interest Material Litigants | City of Santa Clara | x | | |
| Other Significant Parties-in-Interest Material Litigants | City of Sunrise | x | | |
| Other Significant Parties-in-Interest Material Litigants | First Digital Telecom | x | | |
| Other Significant Parties-in-Interest Material Litigants | Foundry | x | | |
| Other Significant Parties-in-Interest Material Litigants | Frontier Communications | x | | |
| Other Significant Parties-in-Interest Material Litigants | Great Oaks Water Company | x | | |
| Other Significant Parties-in-Interest Material Litigants | Huawei | x | | |
| Other Significant Parties-in-Interest Material Litigants | JCP&L | x | | |
| Other Significant Parties-in-Interest Material Litigants | Level 3 Communications LLC | | | x |
| Other Significant Parties-in-Interest Material Litigants | LIPA | x | | |
| Other Significant Parties-in-Interest Material Litigants | Masergy Communications, Inc | x | | |
| Other Significant Parties-in-Interest Material Litigants | McDonald County Telephone Co | x | | |
| Other Significant Parties-in-Interest Material Litigants | National Fuel | x | | |
| Other Significant Parties-in-Interest Material Litigants | NEC | | x | |
| Other Significant Parties-in-Interest Material Litigants | PCCW Global Inc | x | | |
| Other Significant Parties-in-Interest Material Litigants | PG&E California | x | | |
| Other Significant Parties-in-Interest Material Litigants | PSNC Energy | x | | |

| | | | | |
|---|---|---|---|---|
| Other Significant Parties-in-Interest Material Litigants | SRP | x | | |
| Other Significant Parties-in-Interest Material Litigants | Suez Energy Resources N.A. Inc. | x | | |
| Other Significant Parties-in-Interest Material Litigants | Town of Billerica | x | | |
| Other Significant Parties-in-Interest Material Litigants | ZTE | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | 10 Sylvan SPE LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | 101 Constitution Trust | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | 13560 Morris Road Office Investors, LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | 7884 BR LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | A.W. Chesterton, Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Accton Technolgies | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Advanced Information Management | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Airspan | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Alanex Corporation | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Aldine Independent School District | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Alexander Lovgren | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Allied World Assurance Company Ltd | | x | |
| Parties to the Debtors Significant Executory Contracts and Leases | Alpha Networks | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Altera | | | x |
| Parties to the Debtors Significant Executory Contracts and Leases | American Home Assurance Company | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | American Home Assurance Company (National Union) | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Amphenol | | x | x |
| Parties to the Debtors Significant Executory Contracts and Leases | Arch Insurance Company | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Arrowhead General Insurance Agency | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Audiocodes Ltd. | | | x |
| Parties to the Debtors Significant Executory Contracts and Leases | Beazley Syndicate | | x | |
| Parties to the Debtors Significant Executory Contracts and Leases | Behringer Harvard TIC | | x | |
| Parties to the Debtors Significant Executory Contracts and Leases | Biltmore Financial Center II | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Bonham Golf & Country Club, Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Bookham Technology Ltd. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Brookfield Lakes Corporate Center | x | | |

| | | | | |
|---|---|---|---|---|
| Parties to the Debtors Significant Executory Contracts and Leases | Brookfield Lepage Johnson | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | BSNL | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | California State Board of Equalization | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | California State Teachers Retierment | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Campbell Creek Ltd. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Canal View Properties III, LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Carrasco | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Catlin Canada Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Certain Tunable Laser Chips | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | China Mobility | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Ciminelli Development Co. Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | City of Bonham | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Coliseum Transfer Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Colliers Dickson Flake Partners Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Continental Casualty Company | | x | x |
| Parties to the Debtors Significant Executory Contracts and Leases | Crescent Peakview Tower LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | CTDI | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Daeduck Electronics Company | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Datatec Networking and Com. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Deka Immobilien Investment GMBH | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Delta Networks Systems SA DE CV | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Deutsche Telecom | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Direct Touch Federal | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Duesenberg Investment Company | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Duke Realty Ohio | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Empire Indemnity | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Ernest Demel | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Excelight Communications Inc. | | x | |
| Parties to the Debtors Significant Executory Contracts and Leases | Falvey Cargo Underwriting | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Flagler Development Company | | | x |

| | | | | |
|---|---|---|---|---|
| Parties to the Debtors Significant Executory Contracts and Leases | Flextronics | | | x |
| Parties to the Debtors Significant Executory Contracts and Leases | France Telecom/Orange | | x | |
| Parties to the Debtors Significant Executory Contracts and Leases | Gail G. Anderson dba Willard T. Anderson Properties | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Gateway Associates Ltd. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | GCAN Insurance Company | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Genesis Building LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Green 485 Owner LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Hanoi Telecom | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Harris Corporation | | | x |
| Parties to the Debtors Significant Executory Contracts and Leases | Highpoint Telecommunications Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Hines Riverfront Plaza, LP | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Hiscox Syndicate | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | HQ Global Workplaces Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | I & G Direct Real Estate 16, LP | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | IGD Properties Corp. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Insignia ESG, Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | IPC Metrocenter LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | IStar Ctl. 1, L.P./Lehman Ali Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | ITC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Itel House | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Jay Colton | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | JDS Uniphase Corporation | | x | |
| Parties to the Debtors Significant Executory Contracts and Leases | Jim and Elaine Wright | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Johnson Controls Inc. | | x | x |
| Parties to the Debtors Significant Executory Contracts and Leases | Joseph Srygler | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Korea Telecom Freetel | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Kuehne & Nagel International AG | | x | |
| Parties to the Debtors Significant Executory Contracts and Leases | LGT | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Lisa Fitzgerald | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Mack Thorpe, Jr. | x | | |

| | | | | |
|---|---|---|---|---|
| Parties to the Debtors Significant Executory Contracts and Leases | Max Bermuda Ltd. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Meadow Brook Office LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Mera | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Metropark South LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Metropolitan Tulsa Investments LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Micron | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Minerva Systems Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | New Boston 175 Capital Boulevard LP | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Omaha Plaza Investments c/o CBRE The Mega Group | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Omega Corporate Center, LP | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | One Boston Place, LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | One Capital Mall Investors LP | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Open Terrace Associates LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Pamela Richardson | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Patricia Harmon | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Pavel Molodetskiy | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Polytronix | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Princeton E&S | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | QBE Specialty | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Reckson Operating Partnership | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Riverdale Office Properties Partnership | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Robert Buchwald | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | RP Sam Houston Plaza, L.P. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Sasken | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Scansoft | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Scott M. Johnson | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Sharon Tangney | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | SK Telecom | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Sobrato Land Holdings | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Spectra Link | x | | |

| | | | | |
|---|---|---|---|---|
| Parties to the Debtors Significant Executory Contracts and Leases | Steven Domenikos | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Sunset Land Company LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Talcott II Alamo LP | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Talcott III Ormsby LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Tallahassee Corporate Center LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | TCIT Dallas Industrial, Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | TCS Consulting | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Technology Center Associates LP | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Technology Park V LP | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Technology Park X LTD Partnership | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Tejas | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Teligent Services Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Temple Insurance Company | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Terrence Freeman | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Texas Instruments Inc. | | | x |
| Parties to the Debtors Significant Executory Contracts and Leases | The Plaza CP, LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Tomorrow 35 Century L.P. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Tower 333 LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Two Towne Square LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | UCM/SREP-Corporate Woods, LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | US Cellular | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Wanland and Associates | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | West Colony Office Associates, LP | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Wipro | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Wireless (TX) LP QRS 14 | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Wistron | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Witness Systems Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Woodfield Holdings Pt., LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases | Xilinx Inc. | | x | x |
| Parties to the Debtors Significant Executory Contracts and Leases | Zurich Insurance Company | x | | |
| Thirty Largest Unsecured Creditors | Advanced Information Management | x | | |

| | | | | |
|---|---|---|---|---|
| Thirty Largest Unsecured Creditors | Airspan Communications Ltd. | x | | |
| Thirty Largest Unsecured Creditors | Alvarion Ltd | x | | |
| Thirty Largest Unsecured Creditors | Beeline | x | | |
| Thirty Largest Unsecured Creditors | Central General Engineering and Maintenance Limited | x | | |
| Thirty Largest Unsecured Creditors | Coams Inc | x | | |
| Thirty Largest Unsecured Creditors | Coams Inc. | x | | |
| Thirty Largest Unsecured Creditors | Communications Test Design Inc. | x | | |
| Thirty Largest Unsecured Creditors | Computer Science Corporation | | | x |
| Thirty Largest Unsecured Creditors | Covergence Inc. | x | | |
| Thirty Largest Unsecured Creditors | Flextronics | | | x |
| Thirty Largest Unsecured Creditors | Flextronics America LLC | | | x |
| Thirty Largest Unsecured Creditors | Flextronics International | | | x |
| Thirty Largest Unsecured Creditors | Flextronics International Europe BV | | | x |
| Thirty Largest Unsecured Creditors | Flextronics Logistics USA Inc. | | | x |
| Thirty Largest Unsecured Creditors | Flextronics Sales & Marketing North | | | x |
| Thirty Largest Unsecured Creditors | GFI Inc. | x | | |
| Thirty Largest Unsecured Creditors | Glow Networks | x | | |
| Thirty Largest Unsecured Creditors | I and C SA | x | | |
| Thirty Largest Unsecured Creditors | Isbel SA | x | | |
| Thirty Largest Unsecured Creditors | ITC Networks | x | | |
| Thirty Largest Unsecured Creditors | J Mock & Co SA | x | | |
| Thirty Largest Unsecured Creditors | Konet PR | x | | |
| Thirty Largest Unsecured Creditors | Lederfyl SA | x | | |
| Thirty Largest Unsecured Creditors | Manning Global | x | | |
| Thirty Largest Unsecured Creditors | Mcomm Group Inc | x | | |
| Thirty Largest Unsecured Creditors | Mercury America USA Corp | x | | |
| Thirty Largest Unsecured Creditors | Newcomm 2000 | x | | |
| Thirty Largest Unsecured Creditors | Online 2000 Inc | x | | |
| Thirty Largest Unsecured Creditors | Optime Consulting Inc | x | | |
| Thirty Largest Unsecured Creditors | Pension Benefit Guaranty Corporation | | x | |
| Thirty Largest Unsecured Creditors | Rerate Limited Inc | x | | |
| Thirty Largest Unsecured Creditors | SEAL Consulting | x | | |
| Thirty Largest Unsecured Creditors | Siemens Enterprise Comm Inc | x | | |
| Thirty Largest Unsecured Creditors | Tata Consultancy Services | x | | |
| Thirty Largest Unsecured Creditors | TEKsystems Inc. | x | | |
| Thirty Largest Unsecured Creditors | Telmar Network Technology | | x | |
| Thirty Largest Unsecured Creditors | Telrad Networks Ltd. | x | | |
| Thirty Largest Unsecured Creditors | United Business Media LLC dba Everything Channel | | | x |
| Thirty Largest Unsecured Creditors | Verint Americas Inc | x | | |
| Thirty Largest Unsecured Creditors | Wipro Systems Ltd. | x | | |
| Thirty Largest Unsecured Creditors | Wipro Technologies | x | | |
| Thirty Largest Unsecured Creditors | Wireless Integrated Networks WIN | x | | |
| Thirty Largest Unsecured Creditors | Wistron InfoComm Technology Corp. | x | | |

# **Exhibit 3**

### **Professionals Which Have In The Past**
### **And/Or Are Currently Providing Services To EY LLP**

1. Akin Gump Strauss Hauer & Feld LLP:  Has provided services in the past and is currently providing services.

2. Grant Thornton LLP:  Has provided services in the past.

3. Linklaters LLP: Has provided services in the past and is currently providing services.

4. Milbank Tweed LLP:  Has provided services in the past and is currently providing services.

5. Richards Layton & Finger:  Has provided services in the past.

# Exhibit 4

## List of Parties in Interest Involved in Litigation

1. Banc of America Securities LLC:   is a co-defendant with, among others, EY LLP in: (a) an action pending in the United States District Court for the Southern District of New York (Case numbers:  09-2363; 09-3478; 09-6041 and 08-cv-5523) and (b) litigation(s) pending in the United States District Court for the Northern District of Georgia (Civil Action No. 1-09-CV-01185).

2. BNY Mellon Capital Markets LLC f/k/a Mellon Financial Markets LLC, BNY Capital Markets, Inc:   is a co-defendant with, among others, EY LLP in: (a) litigation pending in the United States District Court for the Southern District of New York (1:09-cv-2363, 1:09-cv-1946, 1:09-cv-6041, Civ. No:  1:08cv5523, Civ. No: 09-07878 and Civ. No. 1:09-cv-3478.

3. BNP Paribas S.A:   is a co-defendant with, among others, EY LLP in a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:08cv5523)

4. Broadcom Corporation:  is a co-defendant with, among others, EY LLP in an action pending in the United States Court District Court for the Central District of California Western Division (No:  CV-06-5036-R).

5. Charles Schwab & Co.:  is a co-defendant with, among others, EY LLP in a litigation pending in the United States District Court for the Southern District of New York (Civ. No:  1:08cv5523).

6. CBIC World Markets, Inc.:  is a co-defendant with, among others, EY LLP in a litigation pending in the United States District Court for the Southern District of New York (Civ. No:  1:08cv5523).

7. Citigroup Global Markets, Inc; Citigroup Inc:   is a co-defendant with, among others, EY LLP in: (a) a litigation pending in the State of New Mexico County of Santa Fe First Judicial District Court (No:  D-101-CV-2008-01895); (b) a litigation pending in the United States District Court for the Northern District of Georgia (Case No: 1-09-CV-01185); and (c)  litigations pending in the United States District Court for the Southern District of New York (Civil Action No:  09-3161, Civ. No. 09-2363, Civ. No. 1:09-cv-6041, Civ. No. 1:09-cv-3478, Civ. No:  1:09-1946, Civ. No:  1:08cv5523 and Civ. No:  09-7878).

8. Credit Suisse Syndicated Loan Fund; Credit Suisse High Yield Fund:  is a plaintiff against EY LLP in a litigation pending in the United States District Court for the Western District of Pennsylvania (Case number 2:08cv1414); Credit Suisse Securities (USA) LLC: is a co-defendant with, among others, EY LLP in an action pending in the United States District Court for the District of Massachusetts (Master File No:  09-cv-12146).

9.  Deutsche Bank AG; Deutsche Bank Securities, and d/b/a Deutsche Bank Alex Brown:   is a co-defendant with, among others, EY LLP in a litigation pending in the District Court of Harris County, Texas 113th Judicial District (No:  2004-14400).

10. Fidelity Management Trust Company and Fidelity Capital Markets Services:  is a co-defendant with, among others, EY LLP in litigation pending in the United States District Court for the Southern District of New York (Civ. No:  1:08cv5523 and Lead Docket:1:09-md-02017).

11. Goldman, Sachs & Co: is a co-defendant with, among others, EY LLP in an action pending in the United States District Court for the District of Massachusetts (Master File No:  09-cv-12146).

12. Jefferies Capital Management, Inc: is a co-defendant with, among others, EY LLP in a litigation pending in the State of New Mexico County of Santa Fe First Judicial District Court (No:  D-101-CV-2008-01895).

13. Edward D. Jones & Co., LP:  is a co-defendant with, among others, EY LLP in a litigation pending in the United States District Court for the Southern District of New York (Civ. No:  1:08cv5523).

14. JPMorgan Securities Inc; JP Morgan Chase and Co; J.P. Morgan Chase Bank, N.A; JP Morgan Chase & Company f/k/a Chase Manhattan Bank & Trust Company;  is a co-defendant with, among others, EY LLP in: (a) a litigation pending in the State of New Mexico County of Santa Fe First Judicial District Court (No:  D-101-CV-2008-01895); (b) a litigation pending in the United States District Court for the Southern District of New York (Civ. No. 09-2363); and (c) an action pending in the United States District Court for the Northern District of Illinois (Civ. Action No:  10-6826).

15. EY LLP is a defendant in the following matters arising out of the collapse of Lehman Brothers Holdings Inc.:

   a.  a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:08-cv-5523)

   b.  a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-1238)

   c.  a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-1239)

   d.  a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-1944)

   e.  a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-1946)

   f.  a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-2363)

g.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-3467)

h.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-3468)

i.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-3474)

j.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-3475)

k.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-3476)

l.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-3478)

m.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:10-cv- 5201)

n.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-6040)

o.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-6041)

p.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-6652)

q.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-07878)

r.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:09-cv-07877)

s.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:10-cv-2926 )

t.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:10-cv-5617)

u.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:11-cv-384)

v.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:10-cv-6185)

w.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:10-cv-8631)

x.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:10-cv-6077

y.   a litigation pending in the United States District Court for the Southern District of New York (Civ. No: 1:10-cv-6185)

16. Lehman Brothers First Trust Income Opportunity Fund Inc.; Lehman Brothers Alpha Funds PLC for Lehman Brothers U.S. High Yield Fund; Lehman Brothers High Yield Bond Fund LLC; Neuberger Berman Advisers Management Trust for Lehman Brothers High Income Bond Fund; Lehman Brothers Income Funds for Lehman Brothers High Income Bond Fund; Lehman Brothers Income Funds for Lehman Brothers Strategic Income Fund are plaintiffs against EY LLP in a litigation pending in the Superior Court of California, Los Angeles County as docket number 08-03491 (BC 389785).

17. Lehman Brothers First Trust Income Opportunity Fund Inc.; Lehman Brothers Alpha Funds PLC for Lehman Brothers U.S. High Yield Fund; Lehman Brothers High Yield Bond Fund LLC; Neuberger Berman Advisers Management Trust for Lehman Brothers High Income Bond Fund; Lehman Brothers Income Funds for Lehman Brothers High Income Bond Fund; Lehman Brothers Income Funds for Lehman Brothers Strategic Income Fund are plaintiffs against EY LLP in a litigation pending in the United States District Court for the Western District of Pennsylvania (Case number 2:08cv1414).

18. Merrill Lynch, Pierce, Fenner & Smith Incorporated; Merrill Lynch, Pierce, Fenner & Smith Incorporated: is a co-defendant with, among others, EY LLP in: (a) a litigation pending in the United States District Court for the Northern District of Georgia (Case No: 1-09-CV-01185); (b) litigations pending in the United States District Court for the Southern District of New York (Civil Action No: 09-3161, Civ. No. 09-2363, Case No: 1:08-cv-5523); and (c) a litigation pending in the State of New Mexico County of Santa Fe First Judicial District Court (No: D-101-CV-2008-01895).

19. Morgan Stanley & Co. and Morgan Stanley Dean Witter And Company: is a co-defendant with, among others, EY LLP in: (a) a litigation pending in Appeal from Circuit Court of Cook County (02CH 16854); (b) a litigation pending in the United States District Court for the Northern District of Georgia (Case No: 1-09-CV-01185); (c) litigations pending in the United States District Court for the Southern District of New York (Civil Action No: 09-3161, Civ. No. 09-2363, and Case No: 1:08-cv-5523) and (d) an action pending in the United States District Court for the District of Massachusetts (Master File No: 09-cv-12146).

20. Morgan, Keegan & Company, Inc.: is a co-defendant with, among others, EY LLP in a litigation pending in the United States District Court for the Southern District of New York (Civil Action No: 09-3161).

21. Oppenheimer Absolute Return Fund: is a plaintiff against EY LLP in a litigation pending in the United States District Court for the Southern District of New York (Master File No: 08 Civ. 11117). Oppenheimer Acquisition Corporation is a co-defendant with, among others, EY LLP in: (a) a litigation pending in the United States District Court for the Southern District of New York (Master File No: 08 Civ. 11117); (b) a litigation pending in the Supreme Court of the State of New York County of Nassau (Index No.

601093/2010) and Index No. 601094/2010); and (c) a litigation pending in the Superior Court of the State of Washington for King County (Case No: 10-2-30732-0 SEA).

22. Raymond James & Associates:  is a co-defendant with, among others, EY LLP in a litigation pending in the United States District Court for the Southern District of New York (Civ No. 08-cv-5523).

23. RBC Capital Markets Corporation FKA RBC Dain Rauscher Inc., RBC Dain Rauscher, Inc:  is a co-defendant with, among others, EY LLP in litigation pending in the United States District Court for the Southern District of New York (Case No:  1:08-cv-5523 and Civ. No. 09-2363).

24. Ridge Clearing & Outsourcing Solutions Inc.:  is a co-defendant with, among others, EY LLP in a litigation pending in the United States District Court for the Southern District of New York (Civ. No. 09-2363).

25. Scotia Capital, Inc./CDS:   is a co-defendant with, among others, EY LLP in a litigation pending in the United States District Court for the Southern District of New York (Civ. No:  1:08cv5523).

26. State Street:  is a co-defendant with, among others, EY LLP in a litigation pending in the United States District Court for the District of Massachusetts (Master File No:  09-cv-12146).

27. SunTrust Banks, Inc, SunTrust Capital IX, SunTrust Robinson Humphrey Inc., Suntrust Capital Markets Inc.: is a co-defendant with, among others, EY LLP in: (a) a litigation pending in the United States District Court for the Northern District of Georgia (Case No: 1-09-CV-01185); (b) litigation pending in the United States District Court for the Southern District of New York (Civ. No. 09-2363, Case No:  1:08-cv-5523, and Civ. No. 1:09-cv-6041); and  (c) an action pending in the United States District Court for the Northern District of Illinois (Civ. Action No:  10-6826).

28. Travelers Guarantee Company of Canada; Travelers Guarantee Company of America is a plaintiff in an arbitration matter with EY before CPR.

29. UBS Investment Bank; UBS Securities LLC:  is a co-defendant with, among others, EY LLP in: (a) a litigation pending in the United States District Court for the Northern District of Georgia (Case No: 1-09-CV-01185); (b) litigations pending in the United States District Court for the Southern District of New York (Civil Action No:  09-3161, Civ. No. 09-2363 and Case No:  1:08-cv-5523); (c) a litigation pending in the State of New Mexico County of Santa Fe First Judicial District Court (No:  D-101-CV-2008-01895); (d) an action pending in the United States District Court for the District of Massachusetts (Master File No:  09-cv-12146); and (e) an action pending In the Circuit Court of Jefferson County, Alabama (01-cv-2003-002023.00).

30. Wachovia Capital Markets, LLC; Wachovia Securities: is a co-defendant with, among others, EY LLP in: (a) litigations pending in the United States District Court for the Southern District of New York (Civil Action No:  09-3161, Civ. No. 09-2363, and Civ. No:  1:08cv5523); and (b) a litigation pending in the United States District Court for the Western District of Pennsylvania (Pittsburgh) (Civ. No: 2:08cv1414).

31. Wells Fargo Securities LLC: is a co-defendant with, among others, EY LLP in: (a) litigation pending in the United States District Court for the Southern District of New York (1:09-cv-2363, 1:09-cv-1946, 1:09-cv-6041, Civ. No:  1:08cv5523, Civ. No: 09-07878); and (b) litigations pending in the United States District Court for the Western District of Pennsylvania (Pittsburgh) (Civ. No: 2:08cv1414).