## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------X

*In re*                                                        :        Chapter 11

Nortel Networks Inc., *et al.*,[1]                             :        Case No. 09-10138 (KG)

               Debtors.          :        Jointly Administered

                                                             :

                                                             :        **Hearing date: March 9, 2011 at 9:30 AM (ET) (proposed)**
                                                             :        **Objections due: March 3, 2011 at 4:00 PM (ET) (proposed)**

-------------------------------------------------------------X

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## AUTHORIZING THE DEBTORS TO FILE UNDER SEAL
## EXHIBIT B TO DEBTORS' MOTION PURSUANT
## TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019
## FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and

107(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9018 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9018-1(b) of the Local Rules

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules") authorizing the Debtors to file under seal Exhibit B ("Exhibit B")

to the *Debtors' Motion For Entry Of An Order Pursuant To 11 U.S.C. §§ 105 And 363 And Fed.*

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

*R. Bankr. P. 9019 Approving Settlement Agreement* (the "Approval Motion").[2]  In support of this

Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 107(b)

of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9018 and Local Rule 9018-1.

## Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[3] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate their remaining businesses and manage their properties as debtors in possession pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

---

[2]      Capitalized terms used but not defined herein have the meanings ascribed to them in the Approval Motion.

[3]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code
on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases
for procedural purposes [D.I. 1098].

Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the
Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors
Arrangement Act (Canada) (the "CCAA), seeking relief from their creditors (collectively, the
"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by
the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed
nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration
(the "English Proceedings") under the control of individuals from Ernst & Young LLP
(collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the
future may commence additional creditor protection, insolvency and dissolution proceedings
around the world.

   6.  On June 19, 2009, Nortel announced that it was advancing in discussions with
external parties to sell its businesses and that it would assess other restructuring alternatives for
its businesses in the event that it was unable to maximize value through sales.  Since then, Nortel
has sold many of its business units and assets to various purchasers.  Efforts continue to be made
with respect to the realization of value from Nortel's remaining assets.  For further information
regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed
by the Debtors and http://dm.epiq11.com/nortel.

---

[4]  The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]  The EMEA Debtors include the following entities:  Nortel Networks UK Limited ("NNUK"), Nortel
Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks
Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel
Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria)
GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel
Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

**Relief Requested**

7.      By this Motion, the Debtors seek an order pursuant to sections 105(a) and 107(b)

of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1 authorizing the Debtors

to file Exhibit B to the Approval Motion under seal.

**Facts Relevant to this Motion**

8.      Jabil Circuit, Inc. ("Jabil") is the primary supplier to Nortel of certain circuit

boards, which are used in Nortel's Multi-Service Switch business (the "MSS Business"), and in

turn incorporated into other products that both are supplied to other business lines previously

owned by Nortel and sold directly to the market.

9.      On March 3, 2010, this Court entered an *Order Approving Certain Agreements*

*And Settlements* [D.I. 2620] (the "Initial Jabil Order") authorizing NNI to enter into that certain

Inventory Security Deposit Agreement dated February 5, 2010 (the "ISDA"), by and among

NNI, NNL, NNUK and Jabil, a related escrow agreement and a related side agreement between

NNI, NNL and NNUK.  The Initial Jabil Order also authorized the Debtors to take any and all

actions reasonably necessary or appropriate to perform their obligations arising under the ISDA

and the related agreements.

10.      On March 3, 2010, this Court also entered an *Order Authorizing The Debtors To*

*File Under Seal Exhibit B To The Debtors' Motion Pursuant To 11 U.S.C. §§ 105 And 363 And*

*Fed. R. Bankr. P. 9019 For Entry Of An Order Approving Certain Agreements And Settlements*

[D.I. 2621] (the "Initial Sealing Order") authorizing the Debtors to file the ISDA and certain

related agreements under seal.

11.      On September 24, 2010, NNI, certain of its affiliates and Ericsson entered into

that certain Asset Sale Agreement dated September 24, 2010 (the "Sale Agreement"), which was

approved by this Court on September 30, 2010, in the *Order Authorizing And Approving (A) The*

*Sale Of Certain Assets Of Debtors' Multi-Service Switch (Formerly Known As 'Passport')*

*Business Free And Clear Of All Liens, Claims And Encumbrances And (B) The Assumption And*

*Assignment Of Certain Executory Contracts* [D.I. 4054] (the "Sale Order"). The Sale Order

authorized the Debtors to file the disclosure schedules and all exhibits and schedules to the Sale

Agreement (the "Schedules") under seal. See Sale Order at ¶¶ CC and 41.

12.    On February 23, 2011, NNI, NNL, NNUK, Ericsson and Jabil entered into the

Settlement and Inventory Agreement attached to the Approval Motion as Exhibit B (the

"Settlement and Inventory Agreement"). The Settlement and Inventory Agreement

memorializes certain agreements between the parties contemplated by section 2.1.7(d) of the

Sale Agreement and the Contract Manufacturing Inventory Agreements Term Sheet referenced

in section 5.23 of the Sale Agreement. The Settlement and Inventory Agreement, which remains

subject to approval by this Court, provides for the transition of the supply relationship and the

resolution of certain pre-petition and post-petition claims that may have accrued under

agreements between Nortel and Jabil.

13.    The Approval Motion, filed simultaneously with this Motion, seeks approval of

the Settlement and Inventory Agreement. By this Motion, the Debtors seek to seal the

Settlement and Inventory Agreement, which is attached as Exhibit B to the Approval Motion.

The Settlement and Inventory Agreement contains confidential information concerning the

relationship between the Debtors, Ericsson and Jabil, including information previously filed with

this Court under seal pursuant to the Sale Order and the Initial Sealing Order.

### Basis for Relief

14.    The relief requested by the Debtors is squarely authorized under the Bankruptcy

Code. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a). Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the

power to issue orders to protect a party's confidential, commercial or proprietary information:

> On request of a party in interest, the bankruptcy court shall . . .
> protect an entity with respect to a trade secret or confidential
> research, development, or commercial information . . . .

11 U.S.C. § 107(b).

15.    Furthermore, Bankruptcy Rule 9018 defines the procedure by which a party may

move for relief under section 107(b) of the Bankruptcy Code:

> On motion or on its own initiative, with or without notice, the court
> may make any order which justice requires . . . to protect the estate
> or any entity in respect of a trade secret or other confidential
> research, development, or commercial information . . . .

Fed. R. Bankr. P. 9018. Local Rule 9018-1 requires any party who seeks to file documents under

seal to file a motion to that effect. Del. Bankr. L.R. 9018-1(b).

16.    This Court has previously described "commercial information" as "information

which would result in 'an unfair advantage to competitors by providing them information as to

the commercial operations of the debtor.'" In re Alterra Healthcare Corp., 353 B.R. 66, 75

(Bankr. D. Del. 2006) (citing In re Orion Pictures Corp., 21 F.3d 24, 27-28 (2d Cir. 1994)). This

Court has also noted that "commercial information" may include "the terms of agreements with

suppliers." Id. at 76 (citing In re Barney's, Inc., 201 B.R. 703, 709 (Bankr. S.D.N.Y. 1996)).

17.    A movant is not required to demonstrate "good cause" to file under seal. Rather,

if the material sought to be filed under seal falls within one of the categories identified in section

107(b) of the Bankruptcy Code, "the court is required to protect a requesting party and has no

discretion to deny the application." Orion, 21 F.3d at 27.

18.    Since the Settlement and Inventory Agreement contains "commercial

information" within the ambit of section 107(b), including information that has been filed under

seal with this Court pursuant to the Sale Order and the Initial Sealing Order, the Court should

enter an order permitting the Debtors to file the Settlement and Inventory Agreement under seal.

As described above, the Settlement and Inventory Agreement contains confidential commercial

information concerning the relationship and commercial contract terms between NNI, certain of

its affiliates, Ericsson and Jabil, one of the largest suppliers of the MSS Business.  The disclosure

of this information could unfairly advantage competitors of the MSS Business by revealing

certain costs and terms associated with the business's supply chain and production process.  As

this Court has noted before, the expenses associated with the operation of a business are

"commercial and sensitive in nature." Alterra, 353 B.R. at 76.

19.    Additionally, in In re Orion Pictures Corp., the Second Circuit reviewed a

bankruptcy court's order authorizing a debtor to file under seal a licensing agreement by which

McDonald's agreed to distribute one of the debtor's products.  21 F.3d at 26.  The Second Circuit

upheld the bankruptcy court's decision to file the agreement under seal, explaining that:

> Here, the bankruptcy court properly found, after reviewing the
> licensing agreement and other relevant material, that disclosing the
> sealed information, including the overall structure, terms and
> conditions of the McDonald's Agreement, renders very likely a
> direct and adverse impairment to [the debtor's] ability to negotiate
> favorable promotion agreements * * *, thereby giving [the
> debtor's] competitors an unfair advantage.

Id. at 27-28.  In this case, the Settlement and Inventory Agreement contains commercial and

sensitive information – the release of which would similarly disadvantage the Debtors.  The

Settlement and Inventory Agreement between NNI, NNL, NNUK, Ericsson and Jabil is

necessitated by and reflective of the unique relationship with one of the MSS Business's largest

suppliers.  The disclosure of certain details of the Settlement and Inventory Agreement would

reveal information previously sealed by this Court pursuant to the Sale Order and the Initial

Sealing Order – information which this Court has previously found to be of a confidential,

commercial nature.  As one bankruptcy court has explained, "the commercial information that is entitled to protection under Code section 107(b) and Bankruptcy Rule 9018 must be viewed from the practical perspective of damage to the estate or its creditors."  In re Global Crossing Ltd., 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003).  It is also important to note that the information requested to be placed under seal has been shared with the Committee and the Committee supports both the request to seal and the ultimate relief.

20.     Consequently, this Court should enter an order authorizing the Debtors to file the Settlement and Inventory Agreement attached as Exhibit B to the Approval Motion under seal.

## Notice

21.     Notice of the Motion has been given via first class mail, facsimile, electronic transmission, hand delivery or overnight mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to Ericsson; (v) counsel to Jabil; (vi) counsel to NNL; (vii) counsel to NNUK and (viii) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

22.     No prior request for the relief sought herein has been made to this or any other court.

8

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: February 23, 2011
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*