**Exhibit B**

March 17, 2010 Letter Agreement



# N*O*RTEL

*Execution Version*
*March 17, 2010*

Verizon Corporate Services Group Inc.
One Verizon Way
Mail Code VC33E212
Basking Ridge, NJ 07920
Attn: Mr. Patrick J. O'Shea – Asst. General Counsel

    RE:    The Following Agreements (collectively, the "Verizon Agreements"):

- C0404520 - General Product Purchase Agreement (GPPA) for Softswitch and TDM Products and Services, dated July 30, 2004, between Nortel Networks Inc. and Verizon Services Corp., as amended to date;

- Global Master Purchase Agreement (GMPA), dated November 20, 1998, between Verizon Business Network Services Inc. and Nortel Networks Inc., as amended to date;

- 710-30912-2006 - General Purchase Agreement (GPA), dated December 18, 2006, among Verizon Services Corp., Verizon Wireless and Nortel Networks Inc., as amended to date; and

- Verizon Wireless General Purchase Terms, effective January 1, 2007, among Cellco Partnership, d.b.a. Verizon Wireless and Nortel Networks Inc., as amended to date.

Dear Mr. O'Shea:

        In connection with the proposed sale of its Carrier Voice Over IP and Application Solutions business (the "CVAS Business"), Nortel Networks Inc., a Delaware corporation (together with its affiliates, "Nortel"), intends to assign to GENBAND Inc., a Delaware corporation ("GENBAND"), if it is the purchaser of the CVAS Business, certain of the rights and obligations of Nortel relating to the products and services of the CVAS Business, as described in the Asset Sale Agreements (defined below).

        Nortel intends to consummate the sale of the CVAS Business to GENBAND, which entered into asset sale agreements with Nortel and certain affiliates of Nortel as well as the administrators appointed in certain proceedings as of December 22 and 23, 2009 (as such agreements may be amended from time to time, the "Asset Sale Agreements"). The Bankruptcy Court (as defined in the Asset Sale Agreements) entered an Order dated March 4, 2010 approving the sale of the assets of the CVAS Business to GENBAND (the "Sale Order"). The



agreement set forth in this letter (the "Letter") shall result in an assignment of the Verizon Agreements as described herein only if a Closing (as defined in the Asset Sale Agreements) occurs under the Asset Sale Agreements.

Conditioned upon the occurrence of the Closing, as of the Closing (the "Effective Date") (i) the above-referenced Verizon Agreements, including all amendments, supplements, statements of work, supporting agreements and purchase orders issued pursuant thereto (the "Existing Agreements") shall be deemed amended to remove any rights and obligations of the parties with respect to the CVAS Business products and services (the "Amendment") but shall continue in full force and effect from and after the Closing with respect to any rights and obligations of the parties relating to all products and services other than those exclusively relating to the CVAS Business; and (ii) Nortel shall be deemed to have entered into new contracts with you and your affiliates who are parties to the Existing Agreements, which shall only relate to CVAS Business products and services, the terms and conditions of which shall be identical to the terms and conditions of the Existing Agreements which applied to the CVAS Business products and services immediately before the Amendment (the "New Agreements").

As of the Effective Date, Nortel shall be deemed to hereby convey, assign and transfer to GENBAND for its use, benefit and behalf, all of Nortel's rights, title and interest as well as all of Nortel's duties, obligations and liabilities in, to, under and arising from the New Agreements, and GENBAND shall be deemed to hereby expressly (a) assume all of Nortel's rights, title and interest as well as all of Nortel's duties, obligations and liabilities under the New Agreements and (b) agree to perform all of Nortel's duties and obligations under the New Agreements to be performed from and after the Effective Date. Without limiting the previous sentence, as of the Effective Date, provided that the Effective Date occurs, GENBAND agrees to assume, perform and be responsible for all obligations, duties and liabilities under the Existing Agreements exclusively relating to CVAS Business products and services and under the New Agreements, including without limitation any warranty liabilities, non-cash incentives, indemnifications (including liabilities for third-party intellectual property infringement claims), and requirements to provide product support and maintenance services, whether such duties, obligations or liabilities arose prior to, contemporaneous with, or on and after the Effective Date.

Conditioned upon the occurrence of the Effective Date, pursuant to the Sale Order, the following two agreements between Nortel Networks, Inc. and Verizon Services Corp., including all amendments, supplements, statements of work, supporting agreements and purchase orders issued pursuant thereto (the "365 Agreements") shall be assumed by Nortel and assigned to GENBAND pursuant to section 365 of the Bankruptcy Code: C0404529 - Succession Products and Services Deployment Agreement (subordinate to C0404520), dated July 30, 2004; MA-000797-2007 - Policy Manager Deployment Agreement (subordinate to C0404520), dated July 30, 2004. Without prejudice to any of

2



Nortel's rights under the Sale Order, GENBAND and Verizon have agreed that, notwithstanding the Sale Order and regardless of whether the Sale Order is in any way inconsistent with the agreement set forth in this Letter, upon such assumption and assignment, the duties, obligations and liabilities of GENBAND to Verizon under the 365 Agreements shall be co-extensive with the duties, obligations and liabilities set forth in the preceding paragraph, whether such duties, obligations or liabilities arose prior to, contemporaneous with, or on and after the Effective Date.

Following the Effective Date, Nortel will not have any responsibility for the obligations and liabilities assumed by GENBAND under the foregoing two paragraphs; provided, however, that from the date of execution of this agreement by GENBAND and Verizon until the Effective Date, Nortel will use its commercially reasonable efforts to provide GENBAND with copies of any written notices of claims for indemnity or alleged breaches under the Verizon Agreements and 365 Agreements served on Nortel by Verizon that relate to liabilities GENBAND has agreed to assume under the foregoing two paragraphs.

Verizon agrees (i) that the terms of this Letter, together with the final sentence of paragraph 46 of the Sale Order, fully satisfy and resolve the Objection of the Affiliates of Verizon Communications Inc. to Debtors' Motion For Order Authorizing and Approving the Sale of Certain Assets of Debtors' Carrier Voice Over IP and Application Solutions Business Free and Clear of all Liens, Claims and Encumbrances and the Assumption and Assignment of Certain Executory Contracts [D.I. 2595] (the "Verizon Objection"), (ii) that the Verizon Objection is resolved, and (iii) that it will not object to the assumption and assignment of the C0404529 - Succession Products and Services Deployment Agreement (subordinate to C0404520), dated July 30, 2004 (the "Succession Agreement") pursuant to section 365 of the Bankruptcy Code provided that GENBAND agrees that the Succession Agreement shall constitute a 365 Agreement for the purposes of this Letter. Consequently, Verizon, Nortel and GENBAND shall jointly file with the Bankruptcy Court a Notice that the Verizon Objection is "resolved as a result of the agreement reached among Nortel, GENBAND and Verizon as set forth in that certain letter dated March 17, 2010 among Nortel, GENBAND and Verizon and the inclusion in the Sale Order of the final sentence of paragraph 46 of the Sale Order."

For the avoidance of doubt, nothing herein shall constitute or give rise to the assumption or rejection of the Existing Agreement(s), including as amended by this letter, for purposes of section 365 of the U.S. Bankruptcy Code or constitute repudiation of the Existing Agreement(s) under Canadian law, or otherwise limit or affect Nortel's rights under its Chapter 11 case, Case No. 09-10138, pending in the United States Bankruptcy Court for the District of Delaware or the rights of Nortel Networks Limited, Nortel Networks Technology Corporation or Nortel Networks Corporation under their current insolvency proceedings



pursuant to the *Companies' Creditors Arrangement Act* (Canada); similarly, and notwithstanding anything herein, the agreement of Verizon Corporate Services Group Inc. ("Verizon") to the terms and conditions of this Letter Agreement is without prejudice with respect to any objection or defense to such assumption, rejection or repudiation that Verizon or its affiliates may take in any judicial proceeding.

As inducement for entry into this Letter, the parties hereto make the following representations to each other as of the date hereof based upon their reasonable inquiry under the circumstances:

### By Verizon

1) To the knowledge of Verizon, there is no unpaid judgment against Nortel or threatened or pending lawsuit by Verizon against Nortel under the Existing Agreements solely in respect of the CVAS Business resulting from a material breach or default by Nortel of its obligations under the Existing Agreements for which Verizon asserts that it would be entitled to indemnification, contribution, reimbursement of expenses or any other payment, compensation or remedy pursuant to the Existing Agreements other than in connection with the two lawsuits identified in paragraph 2 below.

2) To the knowledge of Verizon, other than duties, obligations or liabilities that may arise in connection with <u>Voxpath Networks Inc. v. Verizon Communications Inc., et. al.</u>, Case No. 08-cv-00127-RAS, U.S. District Court for the Eastern District of Texas (Sherman), and <u>Centre One v. Verizon Communications Inc., et. al.</u>, Case No. 08-cv-467-LED, U.S. District Court for the Eastern District of Texas (Tyler), Verizon has not received written notice from a third-party that (i) any person has a claim of invalidity or conflicting ownership rights with respect to any specifically identified Intellectual Property (as defined below) of Nortel used in connection with the Existing Agreements solely in respect of the CVAS Business or (ii) a specifically identified Intellectual Property of Nortel used by the products and services contemplated by the Existing Agreements solely in respect of the CVAS Business is infringing and has infringed on the Intellectual Property of any person.

### By GENBAND

GENBAND is not aware of any facts that, if they were known by Verizon, would or may make any of the foregoing representations by Verizon inaccurate.

For the avoidance of doubt, Nortel does not make any representations or warranties in this Letter.

4



For purposes of this Letter, "Intellectual Property" means all intellectual and industrial property, including without limitation, patents, patent rights, inventions and discoveries (whether or not patentable or reduced to practice), trademarks, trade names, works of authorship (whether or not published), mask works (including any registrations therefor or applications for registration), corporate names, company names, business names, fictitious business names, trade styles, software, service marks, logos and other source or business identifiers, copyrights, trade secrets and all other confidential or proprietary information and know-how, whether or not reduced to writing or any other tangible form, and other proprietary intellectual property rights and computer programs arising under the laws of the United States (including any state or territory), any other country or group of countries or any political subdivision of any of the foregoing, whether registered or unregistered.

GENBAND may, in one or a series of related transactions in connection with the acquisition of the CVAS Business, assign its rights, title, interest, duties, obligations and liabilities under each of the New Agreements and Existing Agreements to a controlled affiliate of GENBAND, a successor in interest to GENBAND which is a holding company that controls GENBAND or an operating company of which GENBAND is a controlling or joint-controlling member, without the consent of the counterparty thereto; provided, that GENBAND shall be jointly and severally liable with such assignee for its duties, obligations and liabilities under each of the New Agreements and Existing Agreements.

By execution of this Letter Agreement, Nortel, GENBAND and Verizon, on behalf of itself and for the benefit of its affiliates, hereby agree to its terms and conditions (if GENBAND is the purchaser of the CVAS Business and the Closing occurs).

Very truly yours,

NORTEL NETWORKS INC.

By: _____
Name: Randy Dodd
Title: Americas CVAS Sales

5



In consideration of the mutual agreements set forth in this Letter Agreement and for the mutual benefit of the parties, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, by executing below Verizon, on behalf of itself and for the benefit of its affiliates, and GENBAND agree to the terms and conditions of this Letter Agreement (if GENBAND is the purchaser of the CVAS Business and the Closing occurs).

| VERIZON CORPORATE SERVICES GROUP INC. on behalf of itself and for the benefit of its affiliates | GENBAND Inc. |
|---|---|
| By: _____ | By: _____ |
| Name: Mariano J. Legaz | Name: |
| Title: Vice-president Strategic Sourcing | Title: |
| 03/17/2010 | |



In consideration of the mutual agreements set forth in this Letter Agreement and for the mutual benefit of the parties, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, by executing below Verizon, on behalf of itself and for the benefit of its affiliates, and GENBAND agree to the terms and conditions of this Letter Agreement (if GENBAND is the purchaser of the CVAS Business and the Closing occurs).

| VERIZON CORPORATE SERVICES GROUP INC. on behalf of itself and for the benefit of its affiliates | GENBAND Inc. |
|---|---|
| By:_____ | By: _____ |
| Name: Mariano J. Legaz | Name: Shauna Martin |
| Title: Vice-president Strategic Sourcing | Title: EVP and General Counsel |