**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------X
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: Jointly Administered
              Debtors. :
: **Hearing Date: May 10, 2011, at 9:30am (ET)**
: **Objections Due: April 15, 2011, at 4:00pm (ET)**
-----------------------------------------------------------X

### DEBTORS' OBJECTION TO THE PROOFS OF CLAIM FILED BY THE EMEA CLAIMANTS AND MOTION FOR AN ORDER REQUIRING A MORE DEFINITE STATEMENT OF CLAIM AND SETTING A DEADLINE FOR THE FILING OF ANY PROOFS OF CLAIM BY THE EMEA CLAIMANTS

        Nortel Networks Inc. and its affiliated debtors, as respective debtors and debtors in possession (collectively, the "Debtors" or the "U.S. Debtors") hereby object (the "Objection") to the proofs of claim (the "Proofs of Claim" or the "Claims")[2] filed against the Debtors by the Joint Administrators (as defined below), Nortel Networks UK Limited ("NNUK") and certain of its affiliates in the Europe, Middle East and Africa ("EMEA") region that commenced

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2] The over 350 Proofs of Claim are designated on Debtors' claim register as set forth in the Declaration of Brendan H. Gibbon, dated April 1, 2011 (the "Gibbon Decl."), submitted contemporaneously herewith. Exhibit 1 is a sample of one of the Proofs of Claim filed against the Debtors. Each of the Proofs of Claim is in substantially the same form as Exhibit 1.

administration proceedings in England (together with NNUK, the "EMEA Debtors"), and certain other related entities that have substantially similar proofs of claim (all collectively, the "EMEA Claimants" or the "Claimants"), and move this Court (the "Motion") pursuant to Sections 105 and 502 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3002, 3003, 3007, 7012 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order directing the Claimants to file a more definite statement of their claims and requiring that Claimants file any and all prepetition claims (including any amended claims) against the Debtors by June 1, 2011 and that if Claimants do not file such claims by that date, that the Proofs of Claim and any and all prepetition claims against the Debtors by the Claimants be disallowed and expunged with prejudice. In support of this Objection and Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1. By this Objection and Motion, the Debtors seek entry of an order requiring that Claimants amend their Proofs of Claim filed against the Debtors in September 2009 and to file any and all prepetition claims (including any amended claims) by June 1, 2011 or to have the over 350 Proofs of Claim and any and all prepetition claims by the Claimants disallowed and expunged with prejudice. The Proofs of Claim as filed are facially invalid and wholly devoid of any factual allegations, legal theories, or supporting documentation. The entire sum and substance of what Claimants assert (unintelligibly) in these Claims is that they "may have" some "unknown, unliquidated, or unmatured . . . claims" against the Debtors or their officers and directors that "aris[e] out of transfer pricing, intercompany dealings, trading and other arrangements or agreements between" Debtors and Claimants or for "mismanagement, breach of duty and/or the conduct of those Directors and Officers with respect to the operation,

2

management and control" of the Debtors.  Gibbon Decl. Ex. 1 ¶ 2 (Proof of Claim filed against NNI by Nortel Networks AB, dated Sept. 30, 2009).

2. Although eighteen months have passed since the filing of the Proofs of Claim, Claimants have made no effort before this Court to clarify the basis for their purported claims.  It is now time for such detail to be provided to the Court.

3. Recently, Claimants were ordered by Justice Morawetz in the Canadian Debtors' creditor protection proceedings in Canada to file whatever claims they have against the Canadian estates by March 18, 2011.  In ordering Claimants to file their claims, Justice Morawetz noted that their claims were likely to be some of the largest asserted against the Canadian estates; that it was reasonable to expect that, two years after the commencement of Nortel's insolvency proceedings in January 2009, Claimants would have a complete understanding of the basis for their claims; and that all meaningful steps to achieve the objective of a distribution in the Canadian proceedings should be implemented, including a full and complete claims process.  Justice Morawetz thus found that "[t]he time has come where this matter has to move forward" and ordered Claimants to file claims in those proceedings.  Gibbon Decl. Ex. 4 ¶ 25 (Reasons of Justice Morawetz, dated Feb. 17, 2011).

4. The time has come to move forward in the U.S. proceedings as well.  The Claimants filed their many Proofs of Claim against the U.S. Debtors on September 30, 2009.  Debtors are unaware of <u>any</u> legal or factual basis for Claimants' claims – even after having been provided with detailed allegations from the Claimants in other contexts.  The current Proofs of Claim set forth no basis or theory of liability or attach any supporting documentation.  If the Claimants have any such basis to assert, they must set it forth now.  Not only has it been over eighteen months since Claimants first filed the Proofs of Claim – certainly long enough for

3

Claimants to articulate a basis for their claims – but Claimants have now filed voluminous claims against the Canadian estates setting forth the legal and factual basis for their claims in those proceedings. Thus, Claimants undoubtedly are now in a position to articulate a basis for their claims against Debtors here, assuming that any such basis exists.

5. Accordingly, Debtors move this Court for an order directing Claimants to file a more definite statement of their Claims, and requiring that Claimants file any and all prepetition claims (including any amended claims) by June 1, 2011. If Claimants do not file such claims by that date, Debtors respectfully request that the Proofs of Claim and any and all prepetition claims against the Debtors by the Claimants be disallowed and expunged with prejudice.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue over the Debtors' Chapter 11 cases and this Objection and Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory bases for the relief requested herein are Sections 105 and 502 of the Bankruptcy Code and Rules 3001, 3002, 3003, 3007, 7012, and 9014 of the Bankruptcy Rules.

## BACKGROUND

**A.    Introduction**

8. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

4

Networks (CALA) Inc.,[3] filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate their remaining businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

9.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

10.     On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from

---

[3] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' Chapter 11 cases for procedural purposes [D.I. 1098].

[4] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel

Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

11.     On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it was unable to maximize value through sales.  Since then, Nortel has sold many of its business units and assets to various purchasers.  Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.  For further information regarding these Chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and to the information contained at http://dm.epiq11.com/nortel.

### B.     The U.S. Bar Dates and the Proofs of Claim

12.     On August 4, 2009, this Court entered an order (the "General Bar Date Order") fixing September 30, 2009 at 4:00 p.m. (Eastern Time) as the general bar date (the "General Bar Date") for filing proofs of claim or interests against the Debtors (other than NN CALA) [D.I. 1280].  On December 3, 2009, this Court entered an order fixing January 25, 2010 at 4:00 p.m. (Eastern Time) as the bar date (the "CALA Bar Date") for filing proofs of claim or interests against NN CALA (the "CALA Bar Date Order") [D.I. 2059].

13.     On September 30, 2009, the Claimants filed the Proofs of Claim against each of the Debtors, except NN CALA.  See Gibbon Decl. ¶ 2.

14.     The Proofs of Claim generally purport to assert claims "in respect of any heretofore unknown, unliquidated, or unmatured claim or claims that the Administrators, NNUK, the Insolvency Practioner and/or any EMEA Company may have against [the Debtors]"; provide

---

Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

that Claimants "have potential claims against the Debtors and their affiliates arising out of transfer pricing, intercompany dealings, trading and other arrangements or agreements between them"; and further purport to assert "unknown, unliquidated, or unmatured" claims against unnamed "Directors and Officers of Nortel Networks Inc. . . . for mismanagement, breach of duty and/or the conduct of those Directors and Officers with respect to the operation, management, and control of Nortel Networks Inc. or its affiliated debtors in these Chapter 11 cases." Gibbon Decl. Ex. 1 ¶ 2. Apart from the information described in this paragraph, Claimants do not offer any other legal theory or factual basis for their claims, nor have they attached any supporting documentation to the Proofs of Claim.

15. Indeed, the Proofs of Claim generally state that "[t]hese claims may or may not qualify as intercompany claims," that they could not be "described in detail or quantified," and that they were being filed "out of an abundance of caution in order to preserve all of [Claimants'] rights." Id. Furthermore, in the last paragraph of each Proof of Claim, the Claimants reserved their right "to amend or supplement the Claim in any respect." Id. ¶ 5. A year and a half later, the Claimants have not amended or supplemented the Proofs of Claim nor have they provided any further written details in this proceeding about their claims or attempted to quantify them in any way. The Claimants must now provide such detail.

### C. The Canadian Bar Date and the Claimants' Claims in Canada

16. On December 20, 2010, the Canadian Debtors filed a motion with the Canadian Court seeking a bar date for the filing of claims by the Claimants. See Gibbon Decl. Ex. 2 (Motion Record of Canadian Debtors' Motion for an EMEA Claims Procedure Order, dated Dec. 20, 2010) (the "Canadian Bar Date Motion"). In the Canadian Bar Date Motion, the Canadian Debtors noted that the intercompany claims to be filed by the Claimants were likely

7

among the largest claims that would be filed in the Canadian Proceedings and that they were likely to be based on the same alleged factual and legal theories upon which other similar claims had already been filed. Id. at 32. Accordingly, the Canadian Debtors sought to require the Claimants to file their intercompany claims so that they could begin moving through a claims process. See id. at 32-33.[6]

17. Over the objection of the Joint Administrators, the Canadian Court granted the Canadian Debtors' motion on January 14, 2011. See Gibbon Decl. Ex. 3 (EMEA Claims Procedure Order, dated Jan. 14, 2011, the "Canadian Bar Date Order"); Gibbon Decl. Ex. 4. In granting the Canadian Bar Date Motion, the Canadian Court noted that "Nortel's insolvency proceedings were commenced in January 2009. At this stage, two years later, it is reasonable to expect that the Joint Administrators will have a complete understanding of the basis for filing an EMEA Claim." Id. ¶ 23. The Canadian Court further noted that "[t]he time has come where this matter has to move forward." Id. ¶ 25. The Court also rejected arguments of the Joint Administrators that the claims against the Canadian estate must await the resolution of the negotiations among the various Nortel entities regarding allocation of proceeds from the sale transactions. Id. ¶¶ 19-22.

18. Pursuant to the Canadian Bar Date Order, the Claimants were ordered to file their claims against the Canadian Debtors by March 18, 2011. Gibbon Decl. Ex. 3 ¶ 12. On March 18, 2011, the Claimants filed proofs of claim against the Canadian Debtors with the Canadian Court.

---

[6] According to papers submitted in support of the Canadian Bar Date Motion, although claims of the U.S. Debtors against the Canadian Debtors could also be characterized as among the largest intercompany claims, the U.S. Debtors' claims were the subject of a Final Canadian Funding and Settlement Agreement dated December 23, 2009, pursuant to which the Canadian Debtors accepted a claim by NNI against NNL in the aggregate amount of $2.0627 billion, which "addressed virtually all of the anticipated claims by the U.S. Debtors against [the Canadian Debtors]." Gibbon Decl. Ex. 2 at 32.

**RELIEF REQUESTED**

19. By filing this Objection and Motion, the Debtors contest the Proofs of Claim and seek the entry of an order (1) requiring Claimants to provide a more definite statement of their claims pursuant to Rule 7012, (2) setting, pursuant to Bankruptcy Rules 3002 and 3003, June 1, 2011 as the deadline to file any prepetition claims (including any amended claims) by the Claimants, and (3) further directing that if Claimants do not file such claims by June 1, 2011, that the Proofs of Claim and any and all prepetition claims of the Claimants against the Debtors be disallowed and expunged with prejudice.

**BASIS FOR RELIEF REQUESTED**

**I.    THE PROOFS OF CLAIM ARE NOT PRIMA FACIE VALID UNDER BANKRUPTCY RULE 3001**

20. To be considered prima facie valid under Bankruptcy Rule 3001(f), a proof of claim must allege facts "sufficient to support a legal liability to the claimant." See In re O'Brien, 440 B.R. 654, 658 (Bankr. E.D. Pa. 2010) (quoting In re Allegheny Int'l. Inc., 954 F.2d 167, 173-74 (3d Cir. 1992)); Fed. R. Bankr. P. 3001(f).  Additionally, "a claim must be sufficiently detailed and substantial to allow it to be considered as prima facie evidence of its validity." In re Rimsat, Ltd., 223 B.R. 345, 348 (Bankr. N.D. Ind. 1998) (citation omitted) (internal quotation marks omitted). Indeed, Rule 3001(a)'s definition of a proof of claim as "a written statement setting forth a creditor's claim" contemplates that the creditor provide some kind of factual context for the origin of the debtor's alleged liability. Fed. R. Bankr. P. 3001(a); see Svenska Taendsticks Fabrik Aktiebolaget v. Irving Trust Co. (In re Int'l Match Corp.), 69 F.2d 73, 76 (2d Cir. 1934) (explaining that "[a] proof[] of claim should at least allege facts from which liability on the part of the bankrupt can be seen to exist").

21. The Proofs of Claim here are clearly not entitled to prima facie validity.

9

They contain only completely unsupported assertions: that Claimants "may" have "unknown, unliquidated, or unmatured" claims against the Debtors arising out of "transfer pricing, intercompany dealings, trading and other arrangements or agreements between them," and that the Debtors' officers and directors "may" be liable for "mismanagement, breach of duty and or the conduct of those Directors and Officers with respect to the operation, management, and control" of the Debtors. These are the entirety of the allegations in the Proofs of Claim. Nor is there any documentation attached. These barebones allegations fail to allege sufficient facts to show that debtors owe <u>any</u> legal liability to the Claimants. <u>See</u> <u>In re O'Brien</u>, 440 B.R. at 661-64; <u>In re Rimsat, Ltd.</u>, 223 B.R. at 348. Accordingly, the Proofs of Claim lack prima facie validity under Bankruptcy Rule 3001(f), and "the burden of going forward and proving [their] claim by the preponderance of the evidence remains on the [Claimants]." <u>In re Sacko</u>, 394 B.R. 90, 98 (Bankr. E.D. Pa. 2008) (citation omitted) (internal quotation marks omitted).[7]

## II. THE COURT SHOULD APPLY RULE 12(E) TO THE PROOFS OF CLAIM AND REQUIRE CLAIMANTS TO FILE ALL PREPETITION CLAIMS, INCLUDING AMENDED CLAIMS, BY JUNE 1

22. Under Bankruptcy Rule 9014(c), a bankruptcy court may exercise its discretion "at any stage in a particular matter [to] direct that one . . . of the other rules in Part VII [] apply." <u>900 Capital Servs., Inc. v. Cloud (In re Cloud)</u>, 214 F.3d 1350, 1350 (Table), 2000 WL 634637, at *2 (5th Cir. May 4, 2000) (internal quotation marks omitted). In the exercise of this discretion, courts consider whether applying a particular rule in Part VII would, *inter alia,* promote efficient resolution of a dispute, <u>see</u> <u>In re Rimsat, Ltd.</u>, 223 B.R. at 346 (noting that "it appears that the efficient identification of the issues and the facts in dispute, as well as a prompt

---

[7] Indeed, because of the lack of information submitted in the Proofs of Claim, the Claims also fail to comply with other requirements of Rule 3001, such as Rule 3001(c)'s mandate that claims based on a writing be accompanied by supporting documentation. Fed. R. Bankr. P. 3001(c).

disposition on the merits, will be greatly enhanced if the requirements of Rule 12(e) are applied to [the instant] proof of claim"); avoid undue delay in administration of the estate, see In re Epedra Prods. Liab. Litig., 329 B.R. 1, 5 (S.D.N.Y. 2005); and provide for similarity between bankruptcy court and district court proceedings, see In re Enron, 298 B.R. 513, 521-22 (S.D.N.Y. 2003) (granting Rule 9014(c) motion to apply Bankruptcy Rule 7015(c) to a proof of claim and noting that "Part VII of the [B]ankruptcy [R]ules is based on the premise that to the extent possible practice before the bankruptcy court and the district courts should be the same") (alteration in original) (citation omitted) (internal quotation marks omitted).

23.     Based on these considerations, the Court should exercise its discretion and apply Bankruptcy Rule 7012 to the Proofs of Claim.

24.     First, under Bankruptcy Rule 7012 and Federal Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Kwasnik v. Permahos (In re Kwasnik), No. 09-40602 (MBK), Adv. No. 10-1312 (MBK), 2011 WL 748144, at *1 (Bankr. D.N.J. Feb. 24, 2011) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) ("[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.").[8]  As noted above, the Proofs of Claim here fail to set forth any factual or legal basis for the claims. Thus, they clearly fail scrutiny under Rule 7012. See In re Rimsat, 223 B.R. at 348 (noting that where a proof of claim failed to set forth the factual basis for its allegations, the "same allegations in a complaint certainly could not survive a motion to

---

[8]     The standards governing sufficiency of pleadings under Bankruptcy Rule 7012 are identical to the standards governing pleadings under Federal Rules 12(b)(6) and 12(e). See, e.g., Mullarkey v. Tamboer (In re Mullarkey), 536 F.3d 215, 219-20 (3d Cir. 2008); In re Rimsat, Ltd., 223 B.R. at 347; see also Hoffman v. Stamou (In re Stamou), No. 07-28685 (DHS), Adv. No. 08-01231 (DHS), 2009 WL 1025161, at *2 (Bankr. D.N.J. Mar. 19, 2009) (recognizing the applicability of the Twombly standard under Rule 12(b)(6) to Bankruptcy Rule 7012).

11

dismiss for the failure to state a claim"). Indeed, were these same threadbare allegations set forth in a complaint, they would clearly not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (citation omitted); see also, Running v. Olsen (In re Running), No. 91 C 20302 (PGR), 1992 WL 70329, at *1 (N.D. Ill. Mar. 2, 1992) (noting that bankruptcy court dismissed facially invalid proof of claim under Bankruptcy Rule 7012, with leave to file an amended proof of claim).

25. Second, under Bankruptcy Rule 7012 and Federal Rule 12(e), "[if] a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement." In re Rimsat, 223 B.R. at 346; see also Brown v. City of Long Branch, No. 09-2264 (JAP), 2010 WL 3168813, at * 2 (D.N.J. Aug. 10, 2010) ("The prevailing standard employed by the Third Circuit is to grant a Rule 12(e) motion when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself].") (alteration in original) (internal citations omitted) (internal quotation marks omitted).[9] As presently drafted, the Proofs of Claim are so vague and ambiguous that Debtors cannot respond to them, nor do they enable the Debtors to begin to investigate the validity of any of the allegations. Accordingly, requiring a more definite statement under Rule 7012 is also appropriate in this case. See In re Rimsat, 223 B.R. at 348 (applying Bankruptcy Rule 7012 to require a more definite statement from the claimants so that the debtor will "ha[ve] some information with which it can begin an investigation of the claim").

26. Accordingly, the Court should exercise its discretion to apply Rule 7012,

---

[9] The decision to grant a motion for a more definite statement is within the discretion of the trial court. Watson v. Washington Twp. of Gloucester Cnty. Pub. Sch. Dist., Civ. No. 09-3650 (RBK/JS), 2010 WL 2540180, at *5 (D.N.J. June 17, 2010).

and order Claimants to file amended proofs of claim setting forth the substantive bases for their claims. Indeed, the Court's exercise of discretion is particularly appropriate here, because requiring Claimants to amend their claims will plainly promote efficient resolution of these claims, see In re Rimsat, 223 B.R. at 346; avoid undue delay in administration of the estate, In re Ephedra Prods., 329 B.R. at 5; and provide for similarity between bankruptcy court and district court proceedings, see In re Enron, 298 B.R. at 521-22.

27. Debtors further request that Claimants be required to submit any claims (including any amended claims) on or before June 1, 2011, which, pursuant to Bankruptcy Rules 3002 and 3003, will be the last date for the Claimants to file any prepetition claims against the Debtors. As noted above, over two years have now passed since the Petition Date, and eighteen months have passed since the filing of the Proofs of Claim. Debtors respectfully submit that Claimants have had more than enough time to have a complete understanding of the basis for filing their claims against the Debtors, if any (as Justice Morawetz found in requiring these same Claimants to submit proofs of claim in the CCAA Proceedings before March 18, 2011). Indeed, now that the Claimants' bar date in Canada has passed and the Claimants filed claims against the Canadian estates, it is even more reasonable to demand that Claimants now articulate – and defend before this Court – their claims against the Debtors.

28. Finally, Debtors also submit that because the claims resolution process with respect to Claimants' claims in Canada is going forward, the claims process with respect to Claimants' claims against the Debtors should go forward here as well. Although Debtors are unaware of any basis for Claimants to assert claims against the Debtors, Claimants may well file claims against the U.S. estate alleging theories of liability or raising factual issues that may overlap to some extent with what Claimants may allege in their claims against the Canadian

13

estate. Accordingly, Debtors submit that it is appropriate to require Claimants to amend their Proofs of Claim here so that that the claims resolution process with respect to Claimants' intercompany claims goes forward in the United States as well.

## STATUS CONFERENCE

29. Simultaneous with the filing of this Objection and Motion, the Debtors request a status conference, to be held on June 7, 2011 at 9:30 a.m.

## RESERVATION OF RIGHTS

30. This Objection and Motion is based on the limited information relating to the Proofs of Claim known by the Debtors as of the date hereof. The Debtors expressly reserve the right to supplement this Objection, in whole or in part, and to file additional objections and adversary proceedings, on any factual or legal basis, should additional information, facts or circumstances, including, without limitation, information provided by the Claimants concerning the basis for the Proofs of Claim, become known to them.

## NO PRIOR REQUEST

31. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court (i) sustain this Objection and grant this Motion; (ii) enter the proposed order attached hereto requiring that Claimants file any prepetition claims, including any amended claims, by June 1, 2011 or their Proofs of Claim and any and all prepetition claims that they may have against the Debtors shall be disallowed and expunged with prejudice; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: April 1, 2011
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

  - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors and Debtors in Possession*