**Tab 5**

103

File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE- COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | THURSDAY, THE 16TH |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF SEPTEMBER, 2010 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION (the "Applicants")

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**CLAIMS RESOLUTION ORDER**

THIS MOTION, made by the Applicants for an Order substantially in the form included

in the Applicants' Amended Motion Record, was heard this day at 393 University Avenue,

Toronto, Ontario.

ON READING the Applicants' Notice of Motion dated June 8, 2010, the Applicant's

Amended Notice of Motion dated September 10, 2010, the affidavit of John Doolittle sworn on

June 7, 2010, the supplemental affidavit of John Doolittle dated September 10, 2010, the forty-

eighth report of the Monitor dated June 8, 2010, the fifty-third report of the Monitor dated

September 13, 2010, and on hearing the submissions of counsel for the Applicants, the Monitor,

and those other parties present, no one appearing for the other parties served with the Applicants'

1

104

- 2 -

Motion Record and the Applicants' Amended Motion Record, although duly served as appears from the affidavit of service of Marna McGeorge sworn September 13, 2010, filed:

**SERVICE**

1.      THIS COURT ORDERS that the time for service of the Notice of Motion, the Amended Notice of Motion and the Motion Records filed by the Applicants in support of this Motion be and it is hereby abridged and validated such that the Motion is properly returnable today.

**PURPOSE OF THIS ORDER**

2.      THIS COURT ORDERS that this Order is the "Claims Resolution Order" as defined in the Amended and Restated Claims Procedure Order dated July 30, 2009 made in these proceedings, as such Claims Procedure Order may be further amended from time to time by order of this Court (the "Claims Procedure Order"), and that the purpose of this Order, together with the Cross-Border Claims Protocol, is to establish mechanisms to determine the Proven Claims of Creditors, including Protocol Claims.

3.      THIS COURT ORDERS that this Order shall apply to all Claims as defined in and governed by the Claims Procedure Order, including Protocol Claims. For the avoidance of doubt, the provisions of this Order dealing with Specific Claims, Same-Creditor Claims and Overlapping Claims and the reporting requirement in paragraph 11 hereof, shall not be construed as limited to Claims as defined in the Claims Procedure Order.

4.      THIS COURT ORDERS that in the event of a conflict between the terms of this Order and the terms of the Claims Procedure Order, the terms of this Order shall govern.

2

- 3 -

## MONITOR'S ROLE

5.      THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and

obligations pursuant to the CCAA, the Initial Order, the Order of this Court made on

August 14, 2009, the Claims Procedure Order and the Cross-Border Claims Protocol, is

hereby directed and empowered to take such other actions and fulfill such other roles as

are authorized by this Order and the Cross-Border Claims Protocol, and that in taking

such other actions and in fulfilling such other roles, the Monitor shall have the

protections given to it in the Initial Order, the August 14, 2009 Order, the Claims

Procedure Order and this Order, including without limitation the protections provided in

paragraph 24 of this Order.

## DEFINITIONS

6.      Unless otherwise defined herein, all capitalized terms used in this Order shall have the

meanings ascribed to those terms in the Claims Procedure Order. In addition, the

following terms shall have the following meanings ascribed thereto:

        (a)     "Bond Claims" means any claims arising from or related to the Bondholder Trust

                Indentures including claims filed by the indenture trustees;

        (b)     "Chapter 11 Cases" means the reorganization cases under chapter 11 of the United

                States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*., commenced by the U.S.

                Debtors in the U.S. Court, and consolidated under Case No. 09-10138 (KG).

        (c)     "Claims Officer" means the person or persons so designated by the Monitor and

                approved by the Court, or designated by the Court, as the case may be;

3

(d)     "Claims Procedure Order" has the meaning ascribed to that term in paragraph 2 of this Order;

(e)     "Cross-Border Claims Protocol" means the Cross-Border Claims Protocol approved by this Court and the U.S. Court on September 16, 2010, as such Cross Border Claims Protocol may be amended from time to time in accordance with its terms;

(f)     "Dispute Notice" means a written notice to the Monitor, in substantially the form attached as Schedule "B" hereto, delivered to the Monitor by a Creditor who has received a Notice of Disallowance, of its intention to dispute such Notice of Disallowance;

(g)     "EMEA Debtor" means Nortel Networks S. A. (in Administration) ("NNSA") and the "EMEA Debtors" as defined in that certain Interim Funding and Settlement Agreement dated June 9, 2009 ("IFSA") among the Applicants, the U.S. Debtors, the Joint Administrators (as defined in the IFSA) and as acceded to by NNSA;

(h)     "Notice of Disallowance" means a notice, in substantially the form attached as Schedule "A" hereto, advising a Creditor that the Monitor, in consultation with the Applicants, has revised or disallowed all or part of such Creditor's Claim set out in the Creditor's Proof of Claim;

(i)     "Overlapping Claims" shall have the meaning ascribed to that term in the Cross-Border Claims Protocol;

4

- 5 -

(j)    "Protocol Claims" means the Claims governed by the Cross-Border Claims Protocol, being Overlapping Claims and Same-Creditor Claims;

(k)    "Proven Claim" has the meaning ascribed to that term in paragraph 12 of this Order;

(l)    "Same-Creditor Claims" shall have the meaning ascribed to that term in the Cross-Border Claims Protocol;

(m)    "Secured Claim" means any Claim or portion thereof that is secured by a security interest, pledge, mortgage, lien, hypothec or charge on any property of any Applicant, or any Claim of a Secured Creditor as defined in the CCAA, but only to the extent of the value of the security in respect of the Claim;

(n)    "Specific Claims" shall have the meaning ascribed to that term in paragraph 7 of this Order;

(o)    "U.S. Court" means the United States Bankruptcy Court for the District of Delaware, acting in the Chapter 11 Cases; and

(p)    "U.S. Debtors" means Nortel Networks Inc.; Nortel Networks Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros Inc.; Sonoma Systems; Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks Optical Components Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; Nortel

5

Networks Cable Solutions Inc.; and Nortel Networks (CALA) Inc., and "U.S.

Debtor" means any one of them.

**SPECIFIC CLAIMS**

7.      THIS COURT ORDERS that, in addition to complying with the requirements set forth in

paragraph 8 below, the Monitor or the Applicants, as applicable, shall seek and obtain

this Court's approval prior to the acceptance, stipulation or settlement of any of the

following categories of claims or related procedures as noted below (each, a "Specific

Claim", and collectively "Specific Claims"):

(a)     U.K. pension claims (including but not limited to, funding guarantee claims,

insolvency guarantee claims, Financial Support Direction liability claims and

claims by Nortel Networks U.K. Pension Trust Limited, the U.K. Pension

Protection Fund, the Pensions Regulator under The Pensions Act 2004 (U.K.) and

the joint administrators of the various EMEA Debtors related to the foregoing);

(b)     claims in respect of the determination of liabilities and funded status of the Nortel

Networks Negotiated Pension Plan and the Nortel Networks Limited Managerial

and Non-Negotiated Pension Plan and in respect of the Ontario Pension Benefits

Guarantee Fund;

(c)     Bond Claims;

(d)     the following employee-related matters: (i) any procedure, protocol or

methodology for calculating termination and severance pay claims and any

process for any resolution of disagreements regarding contract obligations and

6

qualifications for eligibility of such claims (including the calculation of benefits or liabilities), (ii) the actuarial methods and assumptions that will be used to determine non-registered pension claims, LTD claims and benefit claims and any process for any resolution of disagreements regarding the interpretation or application of plan criteria for such claims (including the calculation of benefits or liabilities), (iii) the form of a an order approving procedures related to Compensation Claims (including, proposed procedures relating to any bar date for claims of employees and retirees), (iv) deferred compensation claims relating to the Nortel Networks U.S. Deferred Compensation Plan (to the extent not otherwise addressed by the Cross-Border Claims Protocol), (v) the Calgary employee claims contemplated by the action bearing court file number 0901-10504 in the Alberta Court of Queen's Bench, (vi) proposed allowance of any claims provided to executives relating to their retention or compensation for an amount over $5 million and (vii) proposed allowance of any claim for an amount over $10 million relating to an insurance policy that covers director and officer claims;

(e)     pre-filing U.K. and other EMEA Debtor intercompany claims against any Applicant; and

(f)     any other claim to be allowed for an amount over $50 million (CDN);

provided however that, subject to complying with the requirements of paragraph 8 below, in a Notice of Disallowance the Monitor may provisionally accept, stipulate, settle, disallow, modify or revise any Specific Claim, so long as such acceptance, stipulation,

7

- 8 -

settlement, disallowance, modification or revision is expressly subject to the approval of the Court.

8.    THIS COURT ORDERS that, prior to agreeing on a proposed allowed amount of any Specific Claim (or procedures related thereto) with any claimant(s) and prior to seeking Court approval thereof as set forth in paragraph 7, the Monitor and the Applicants shall first consult with the U.S. Debtors regarding the applicable Specific Claim (or procedures, as the case may be) and the proposed allowed amount of such claim.

**CROSS BORDER CLAIMS PROTOCOL AND PROTOCOL CLAIMS**

9.    THIS COURT ORDERS that with respect to Protocol Claims:

(a)    such claims shall be finally determined in accordance with the Cross-Border Claims Protocol, this Order and the Claims Procedure Order;

(b)    in the event of a conflict between the terms of this Order or the Claims Procedure Order, on the one hand, and the Cross-Border Claims Protocol, on the other hand, the terms of the Cross-Border Claims Protocol shall govern in all such cases; and

(c)    the provisions of this Order (including provisions applying to the determination of Proven Claims, review of Proofs of Claim, issuance of Notices of Disallowance, Dispute Notices, and the resolution of Claims), shall be subject in all cases to the terms of the Cross-Border Claims Protocol and the procedures set out therein.

8

## GENERAL PROVISIONS - SPECIFIC CLAIMS AND PROTOCOL CLAIMS

10.     THIS COURT ORDERS that with respect to Specific Claims and Protocol Claims:

(a)     information exchanged between the Monitor, the Applicants and the U.S. Debtors as contemplated in this Order or in the Cross-Border Claims Protocol may be shared by such parties with their respective stakeholders, subject to appropriate written confidentiality agreements, and the Monitor, the Applicants and the U.S. Debtors may consult with their respective stakeholders with respect to all such information;

(b)     the Applicants, the U.S. Debtors, the Creditors' Committee (as defined in the Cross-Border Claims Protocol) and the Bondholder Group (also as defined in the Cross-Border Claims Protocol) shall have the right to support or object and to be heard at any hearing provided for in this Order or in the Cross-Border Claims Protocol with respect to Specific Claims or Protocol Claims, where such hearing is in either this Court or in a joint hearing of both this Court and the U.S. Court; and

(c)     that for any matter with respect to which this Order or the Cross-Border Claims Protocol requires the Monitor to seek and obtain this Court's approval, the Monitor shall serve its request for such approval along with its report on the Service List herein (which shall include the affected claimant in respect of the matter in question and its counsel if known) no less than 10 calendar days prior to the proposed hearing.

DOCSTOR: 2010978\3

- 10 -

## PERIODIC CLAIMS REPORTING

11.     THIS COURT ORDERS that the Monitor will report as to the status of claims, including

without limitation the Specific Claims and the Protocol Claims, filed in Canada (a) on a

monthly basis, such reports to be posted on the Monitor's website in the form attached

hereto as Schedule "C"; and (b) to the Applicants and the U.S. Debtors, on not less than a

monthly basis, such reports to be in the form attached hereto as Schedule "D".

## DETERMINATION OF PROVEN CLAIM

12.     THIS COURT ORDERS that the amount and status of every Claim of a Creditor as

finally determined in accordance with the forms and procedures authorized in the Claims

Procedure Order, this Order and the Cross-Border Claims Protocol, including any

determination as to the nature, amount, value, priority or validity of any Claim, including

any Secured Claim (each, a "Proven Claim"), shall be final for all purposes, including for

voting on and distributions made to Creditors of the Applicants pursuant to the Plan.

## REVIEW OF PROOFS OF CLAIM

13.     THIS COURT ORDERS that the Monitor, subject to the terms of this Order, in

consultation with the Applicants, shall review all Proofs of Claims filed, and at any time:

(a)     may request additional information from a Creditor, in accordance with paragraph

15 of the Claims Procedure Order;

(b)     may request that the Creditor file a revised Proof of Claim, in accordance with

paragraph 15 of the Claims Procedure Order;

- 11 -

(c)     may attempt to resolve and settle any issue arising in the Proof of Claim or in respect of the Claim;

(d)     may accept (in whole or in part) the amount and/or status of any Claim; and

(e)     may by notice in writing revise or disallow (in whole or in part) the amount and/or status of any Claim.

14.     THIS COURT ORDERS that where a Claim has been accepted by the Monitor, such Claim shall constitute such Creditor's Proven Claim for all purposes, including for the purposes of voting and distribution under any Plan.

15.     THIS COURT ORDERS that where a Claim is revised or disallowed (in whole or in part, and whether as to amount and/or as to status), the Monitor shall deliver to the Creditor a Notice of Disallowance, attaching the form of Dispute Notice.

16.     THIS COURT ORDERS that where a Claim has been disallowed (in whole or in part, and whether as to amount and/or as to status), the disallowed Claim (or disallowed portion thereof) shall not be a Proven Claim unless the Creditor has disputed the disallowance and proven the disallowed Claim (or disallowed portion thereof) in accordance with paragraphs 17 to 22 of this Order, or as otherwise ordered by this Court.

**DISPUTE NOTICE**

17.     THIS COURT ORDERS that a Creditor who intends to dispute a Notice of Disallowance shall file a Dispute Notice with the Monitor as soon as reasonably possible but in any event such that such Dispute Notice shall be received by the Monitor on or before 4:00 p.m. (prevailing time in Toronto) on the day that is fourteen (14) days after the Creditor is

11

deemed to have received the Notice of Disallowance in accordance with paragraph 25 of this Order. The filing of a Dispute Notice with the Monitor within the fourteen (14) day period specified in this paragraph shall constitute an application to have the amount or status of such Claim determined as set out in paragraphs 19 to 22 hereof.

18.   THIS COURT ORDERS that where a Creditor that receives a Notice of Disallowance fails to file a Dispute Notice with the Monitor within the time period provided therefore in paragraph 17 above, the amount and status of such Creditor's Claim shall be deemed to be as set out in the Notice of Disallowance and such amount and status, if any, shall constitute such Creditor's Proven Claim.

**RESOLUTION OF CLAIMS**

19.   THIS COURT ORDERS that as soon as practicable after the delivery of the Dispute Notice to the Monitor, the Creditor and the Monitor, in consultation with the Applicants, shall attempt to resolve and settle the Creditor's Claim.

20.   THIS COURT ORDERS that in the event that a dispute raised in a Dispute Notice is not settled within a time period or in a manner satisfactory to the Monitor, the Monitor may refer the dispute to a Claims Officer for determination, or in the alternative may in its sole discretion bring the dispute before the Court for determination. If the Monitor refers the dispute to a Claims Officer for determination, then (i) the Claims Officer shall determine the manner, if any, in which evidence may be brought before the Claims Officer by the parties as well as any other matters, procedural or substantive, which may arise in respect of the Claims Officer's determination of a Creditor's Claim, and (ii) the provisions of paragraphs 21 and 22 of this Order shall apply to the determination of the

12

Claims Officer.    For greater certainty, the Claims Officer may require written submissions, and may limit submissions to written submissions, at the Claims Officer's discretion.

21.    THIS COURT ORDERS that the Claims Officer shall as soon as is practicable, and in any event by no later than (i) thirty (30) days from the closing of submissions (whether written or oral or both), or (ii) such other date as the Claims Officer may order, notify the Creditor, the Monitor and the Applicants in writing of the Claims Officer's determination of the amount and status of such Creditor's Claim.

22.    THIS COURT ORDERS that the Claims Officer's determination of any Creditor's Proven Claim shall be final and binding, unless within ten (10) days of the delivery of the Claims Officer's determination, the Applicants, the Monitor or the Creditor has filed with this Court an appeal, by way of Notice of Motion, of the Claims Officer's determination.

23.    THIS COURT ORDERS that with respect to Specific Claims, the procedures set out in paragraphs 13 through 22 hereof are expressly subject to paragraphs 7 and 8 of this Order.

**PROTECTIONS FOR MONITOR**

24.    THIS COURT ORDERS that (i) in carrying out the terms of this Order and the Cross-Border Claims Protocol, the Monitor shall have all of the protections given to it by the CCAA, the Initial Order, the August 14, 2009 Order and the Claims Procedure Order or as an officer of this Court, including without limitation the stay of proceedings in its favour, (ii) the Monitor shall incur no liability or obligation as a result of the carrying out

13

of the provisions of this Order, except for its own wilful misconduct or gross negligence, (iii) the Monitor shall be entitled to rely on the books and records of the Applicants and any information provided by the Applicants, all without independent investigation, and (iv) the Monitor shall not be liable for any claims or damages resulting from any errors or omissions in such books, records and information.

**SERVICE AND NOTICE**

25.    THIS COURT ORDERS that the Monitor or the Applicants, as the case may be, are at liberty to deliver any letters, notices or other documents relating to Claims to Creditors or other interested Persons, by forwarding true copies thereof by prepaid ordinary mail, registered mail, courier, personal delivery or electronic or digital transmission to such Persons (i) at the address shown on the Proof of Claim filed by that Person, or (ii) if a Proof of Claim has not been filed by that Person or does not contain a valid address, then at the address last shown on the records of the Applicants, and that any such service or notice by courier, personal delivery or electronic or digital transmission shall be deemed to be received on the next Business Day following the date of forwarding thereof, or if sent by prepaid ordinary mail or by registered mail, on the fourth Business Day after mailing. Notwithstanding anything to the contrary in this paragraph 25, Notices of Disallowance shall be sent only by (i) facsimile to a number that has been provided in writing by the Creditor, (ii) registered mail, or (iii) courier.

26.    THIS COURT ORDERS that any notice or other communication to be given under this Order by a Creditor to the Monitor shall be in writing and will be sufficiently given only if given by prepaid ordinary mail, courier, personal delivery or electronic or digital transmission addressed to:

14

117

ERNST & YOUNG INC.
Court-appointed Monitor of Nortel Networks Corporation & others
222 Bay Street, Suite 1600
Toronto, Ontario
Canada M5K 1J7

| Attention: | David Saldanha |
| Telephone: | 1-416-943-4431 |
| E-mail | david.saldanha@ca.ey.com |
| Fax: | 1-416-943-3300 |

Any such notice or other communication by a Creditor shall be deemed received only upon actual receipt thereof during normal business hours on a Business Day. Where the communication is to be by way of a form attached as a Schedule to this Order, such communication shall be in substantially the form of the attached Schedule.

## MISCELLANEOUS

27.     THIS COURT ORDERS AND REQUESTS the aid and recognition of any court or any judicial, regulatory or administrative body in any province or territory of Canada (including the assistance of any court in Canada pursuant to Section 17 of the CCAA) and any court or any judicial, regulatory or administrative body of the United States of America, the United Kingdom, the French Republic, the State of Israel, and the Republic of Korea, and of any other nation or state, to act in aid of and to be complementary to this Court in carrying out the terms of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

SEP 17 2010

15   PER / PAR:

118

## SCHEDULE "A"

### NOTICE OF DISALLOWANCE

**For creditors of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (each a "CCAA Applicant" and collectively, the "CCAA Applicants") and/or their respective Officers and Directors**

Claim Reference Number: _____

Name of CCAA Applicant: _____

TO: _____
*(Name of Creditor)*

Defined terms not defined in this Notice of Disallowance have the meaning ascribed in the Orders of the Ontario Superior Court of Justice dated July 30, 2009 and September 16, 2010 (the "Claims Procedure Order" and "Claims Resolution Order" respectively). **All dollar values contained herein are in Canadian dollars unless otherwise noted.**

Pursuant to paragraph 15 of the Claims Resolution Order, Ernst & Young Inc., in its capacity as Court-appointed Monitor of the CCAA Applicant, hereby gives you notice that it has reviewed your Proof of Claim in conjunction with the CCAA Applicant and has disallowed all or part of your Claim. Subject to further dispute by you in accordance with the Claims Resolution Order, your Claim will be allowed as follows:

|  | Proof of Claim amount as submitted | | Amount allowed by Monitor |
|---|---|---|---|
|  | (original currency amount) | (in Canadian dollars) | (in Canadian dollars) |
| A. Unsecured Prefiling Claim |  | $ | $ |
| B. Secured Prefiling Claim |  | $ | $ |
| C. Section 136 Prefiling Claim |  | $ | $ |
| D. Restructuring Claim |  | $ | $ |

1

|  | Proof of Claim amount as submitted | | Amount allowed by Monitor |
|---|---|---|---|
|  | (original currency amount) | (in Canadian dollars) | (in Canadian dollars) |
| E. Directors/Officers Claim |  | $ | $ |
| F. Total Claim |  | $ | $ |

**Reasons for Disallowance:**

_____

_____

_____

## SERVICE OF DISPUTE NOTICES

**If you intend to dispute this Notice of Disallowance, you must, no later than 4:00 pm (prevailing time in Toronto) on the day that is fourteen (14) days after this Notice of Disallowance is deemed to have been received by you (in accordance with paragraph 25 of the Claims Resolution Order), deliver a Notice of Dispute to the Monitor by prepaid ordinary mail, registered mail, courier, personal delivery or electronic or digital transmission to the address below.** In accordance with the Claims Resolution Order, notices shall be deemed to be received upon actual receipt thereof by the Monitor during normal business hours on a Business Day, or if delivered outside of normal business hours, on the next Business Day. The form of Dispute Notice is enclosed and can also be accessed on the Monitor's website at www.ey.com/ca/nortel.

ERNST & YOUNG INC.
Court-appointed Monitor of Nortel Networks Corporation & others
222 Bay Street, Suite 1600
Toronto, Ontario
Canada M5K 1J7

Attention:      David Saldanha
Telephone:    1-416-943-4431
E-mail          david.saldanha@ca.ey.com
Fax:             1-416-943-3300

DOCSTOR: 2010978\3

- 3 -

120

**IF YOU FAIL TO FILE A DISPUTE NOTICE WITHIN THE PRESCRIBED TIME PERIOD, THIS NOTICE OF DISALLOWANCE WILL BE BINDING UPON YOU.**

**DATED** at Toronto, this        day of                              , 2010.

**ERNST & YOUNG INC.,** in its capacity as Court-appointed Monitor of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation.

Per:

3

121

## SCHEDULE "B"

### DISPUTE NOTICE

**For Voting And/Or Distribution Purposes with respect to Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (each a "CCAA Applicant" and collectively, the "CCAA Applicants") and/or their respective Officers and Directors**

Claim Reference Number: _____

Name of CCAA Debtor against
which a Claim is asserted: _____

**1.    Particulars of Creditor:**

Full Legal Name of Creditor (include trade name, if different):

_____

_____

*(the "Creditor").*

Full Mailing Address of the Creditor:

_____

_____

Other Contact Information of the Creditor:

Telephone Number: _____

Email Address: _____

Facsimile Number: _____

Attention (Contact Person): _____

1

- 2 -

122

**2.     Particulars of original Creditor from whom you acquired the Claim, if applicable:**

Have you acquired this Claim by assignment?

Yes: ☐     No: ☐

If yes and if not already provided, attach documents evidencing assignment.

Full Legal Name of original Creditor(s): _____

**3.     Dispute of Disallowance of Claim:**

*For the purposes of the Claims Procedure Order and Claims Resolution Order only (and without prejudice to the terms of any plan of arrangement or compromise) claims in a foreign currency will be converted to Canadian dollars at the exchange rates approved by the Claims Procedure Order.  A copy of the applicable exchange rate can be found on the Monitor's website at www.ey.com/ca/nortel.*

The Creditor hereby disagrees with the value of its Claim as set out in the Notice of Disallowance and asserts a Claim as follows:

|  | Amount allowed by Monitor: (Notice of Disallowance) (in Canadian dollars) | Amount claimed by Creditor: (in Canadian Dollars) |
|---|---|---|
| A. Unsecured Prefiling Claim | $ | $ |
| B.  Secured Prefiling Claim | $ | $ |
| C.  Section 136 Prefiling Claim | $ | $ |
| D. Restructuring Claim | $ | $ |
| E.  Directors/Officers Claim | $ | $ |
| F.  Total Claim | $ | $ |

**REASON(S) FOR THE DISPUTE:**

*(You must include a list of reasons as to why you are disputing your Claim as set out in the Notice of Disallowance.)*

_____

_____

_____

_____

DOCSTOR: 2010978\3

123

- 3 -

**SERVICE OF DISPUTE NOTICES**

**If you intend to dispute the Notice of Disallowance, you must by no later than the date that is fourteen (14) days after the Notice of Disallowance is deemed to have been received by you (in accordance with paragraph 25 of the Claims Resolution Order) deliver to the Monitor this Dispute Notice by prepaid ordinary mail, registered mail, courier, personal delivery or electronic or digital transmission to the address below.** In accordance with the Claims Resolution Order, notices shall be deemed to be received upon actual receipt thereof by the Monitor during normal business hours on a Business Day, or if delivered outside of normal business hours, on the next Business Day.

ERNST & YOUNG INC.
Court-appointed Monitor of Nortel Networks Corporation & others
222 Bay Street, Suite 1600
Toronto, Ontario
Canada M5K 1J7

Attention:     David Saldanha
Telephone:    1-416-943-4431
E-mail         david.saldanha@ca.ey.com
Fax:           1-416-943-3300

DATED this _____ day of _____, 2010.

Name of Creditor: _____

_____          Per: _____
Witness                               Name:
                                      Title:
                                      *(please print)*

3

124

- 4 -

## SCHEDULE "C"

### FORM OF REPORT TO BE POSTED ON MONITOR'S WEBSITE MONTHLY

### (NEXT PAGE)

DOCSTOR: 2010978\3

125

[NOT ACTUAL AMOUNTS - FOR ILLUSTRATIVE PURPOSES ONLY]

Schedule C

# Nortel Networks - CCAA Applicants Overall Claims Status

(Date)
All amounts in CAD $ millions

| Debtor | Claim Category | Filed Proof of Claim # | $ | Under Review # | $ | Accepted or Reviewed and undisputed # | $ | Value per Notice of Disallowance # | $ | Value per Notice of Dispute # | $ | Valued by Claims Officer # | $ | Valued by Court # | $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Debtor A** | Trade | 10 | 1,000 | 5 | 500 | 5 | 500 | | | | | | | | |
| | Bonds | 5 | 25,000 | | | | | | | 5 | 25,000 | | | | |
| | Term. & Severance | 30 | 10,000 | 10 | 1,000 | 5 | 1,000 | 5 | 3,000 | 10 | 3,000 | | | | |
| | Pension & Benefits | 40 | 25,000 | 25 | 2,000 | 5 | 5,000 | | | 10 | 2,000 | 40 | 7,000 | 10 | 15,000 |
| | Other | 50 | 10,000 | | | | | | | | | | | | |
| | **Total** | **135** | **71,000** | **40** | **3,500** | **15** | **6,500** | **5** | **3,000** | **25** | **30,000** | **40** | **7,000** | **10** | **15,000** |
| **Debtor B** | Trade | 5 | 25,000 | | | 2 | 1,000 | 3 | 10,000 | | | | | | |
| | Bonds | 5 | 10,000 | | | | | | | | | | | | |
| | Term. & Severance | 30 | 150,000 | 20 | 10,000 | 10 | 100,000 | - | | 3 | 10,000 | 2 | 10,000 | | |
| | Pension & Benefits | 10 | 30,000 | | | 2 | 5,000 | 5 | 10,000 | 5 | 10,000 | 3 | 10,000 | | |
| | Other | 10 | 45,000 | | | | | | | | | | | 10 | 10,000 |
| | **Total** | **60** | **260,000** | **20** | **10,000** | **14** | **106,000** | **8** | **20,000** | **8** | **20,000** | **5** | **20,000** | **10** | **10,000** |
| **Debtor C** | Trade | 10 | 45,000 | 1 | 10,000 | 5 | 5,000 | 1 | 10,000 | 4 | 15,000 | | | | |
| | Bonds | 5 | 50,000 | | | | | | | | | | | | |
| | Term. & Severance | 5 | 75,000 | | | | | | | | | | | | |
| | Pension & Benefits | 5 | 100,000 | | | 4 | 50,000 | 5 | 100,000 | | | | | | |
| | Other | 20 | 50,000 | 10 | 15,000 | | | 1 | 10,000 | | | 9 | 10,000 | 5 | 50,000 |
| | **Total** | **45** | **320,000** | **11** | **25,000** | **9** | **55,000** | **7** | **120,000** | **4** | **15,000** | **9** | **10,000** | **5** | **50,000** |

Current claim value – most recent stage [1][2]

**Notes:**
Note 1  The estimated value of individual claims by category is aggregated and shown in one claim stage only.
Note 2  All amounts (other than Accepted) are subject to potential material change (i.e., negotiation, appeal, etc.) as the process for the determination of claims proceeds.

Internal purposes only:
Trade claims include: Contract rejection Non-Real Estate, Tax & Governmental and Late Claims
Other claims include: Employee, Equity, Litigation, Treasury and Real Estate Claims

126

- 5 -

## SCHEDULE "D"

## FORM OF REPORT TO APPLICANTS AND U.S. DEBTORS

### (NEXT PAGE)

DOCSTOR: 2010978\3

127

[NOT ACTUAL AMOUNTS - FOR ILLUSTRATIVE PURPOSES ONLY]

Schedule D

# Nortel Networks - CCAA Applicants Individual Claims Status

(Date)

All amounts in CAD $

| | | | As filed per proof of claim | | | | | | Current and previous to current claim stages | | | | | |
| Claim ID | Creditor Name | Debtor | Claim Category | Pref. / Sec. | Duplicate | Cross Border | Proof of claim amount | Under Review | Accepted or Reviewed and unadjusted | Value per Notice of Disallowance | Value per Notice of Dispute | Valued by Claim Officer | Valued by Court | Estimated value based on current claim stage |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Creditor A | Debtor A | Trade | P | | x | 1,000 | 1,000 | 1,000 | - | - | - | - | 1,000 |
| 2 | Creditor B | Debtor A | Other | | D | | 10,000 | 10,000 | | 5,000 | - | - | - | 5,000 |
| 3 | Creditor C | Debtor B | Trade | | | | 10,000 | 10,000 | | 5,000 | 10,000 | - | - | 10,000 |
| 4 | Creditor D | Debtor C | Trade | | | | 5,000 | 5,000 | | 1,500 | - | - | - | 1,500 |
| 5 | Creditor E | Debtor C | Contract Repudiation | | D | x | 10,000 | 5,000 | | 2,500 | 5,000 | - | - | 5,000 |
| 6 | Creditor F | Debtor C | Treasury | | | | 1,015,000 | 1,015,000 | | 15,000 | - | - | - | 15,000 |
| 7 | Creditor G | Debtor D | Trade | S | | | 20,000 | | | - | - | 18,000 | 10,000 | 10,000 |
| 8 | Creditor H | Debtor D | Treasury | | | | 5,000 | | | - | - | 2,500 | 5,000 | 5,000 |
| 9 | Creditor I | Debtor D | Employee | P | | x | 10,000 | | | - | 10,000 | 8,000 | 5,000 | 8,000 |
| 10 | Creditor J | Debtor E | Trade | | | | 12,000 | 12,000 | 12,000 | - | - | - | - | 12,000 |
| | | | | | | | 1,098,000 | | | | | | | 572,500 |

Notes:

Note 1: The claim values disclosed are as of the current and previous to current stages of claims determination. No further historic stage values of claims are presented.

Note 2: All amounts (other than Accepted) are subject to potential material change (i.e. negotiation, appeal, etc.) as the process for the determination of claims proceeds.

Note 3: All employee claims will be reported in aggregate with the exception of certain executive claims that are Specific Claims which will be reported individually.

Note 4: The Claim Categories will consist of Contract Repudiation - Non Real Estate, Employee, Equity, Law Claims, Litigation, Pension & Benefits, Real Estate, Tax and Governmental, Trade Pensions Bones, Treasury and Other

Schedules to be provided by Monitor:

1) The form above sorted by Claim ID
2) The form above sorted by Claim Category / Debtor / Creditor Name
3) The form above sorted by Debtor / Claim Category / Creditor Name

Court File No: 09-CL-7950

128

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)
Proceeding commenced at Toronto

ORDER
(CLAIMS RESOLUTION ORDER)

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**MOTION RECORD**
**(Motion for EMEA Claims Procedure Resolution Order)**
**(returnable January 7, 2011)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

# EXHIBIT 3

File No. 09-CL-7950

**ONTARIO**

**SUPERIOR COURT OF JUSTICE- COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE | ) | FRIDAY, THE 14TH |
| | ) | |
| MR. JUSTICE MORAWETZ | ) | DAY OF JANUARY, 2011 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION (the "Applicants")**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**EMEA CLAIMS PROCEDURE ORDER**

THIS MOTION, made by the Applicants for an Order substantially in the form included

in the Applicants' Motion Record was heard this day at 393 University Avenue, Toronto,

Ontario.

ON READING the Applicants' Notice of Motion, the affidavit of Anna Ventresca sworn

on December 20, 2010, the Fifty-Eighth report of Ernst & Young Inc. (the "Monitor") dated

December 22, 2010 (the "Fifty-Eighth Report"), the Supplemental Fifty-Eighth Report of the

Monitor dated January 13, 2011 (the "Supplemental Fifty-Eighth Report"), and the Responding

Motion Record of the Joint Administrators of Nortel Networks UK Limited et al, and on hearing

the submissions of counsel for the Applicants, the Monitor, and those other parties present, no

- 2 -

one appearing for the other parties served with the Applicants' Motion Record, although duly served as appears from the affidavit of service of Marna McGeorge sworn December 21, 2010, filed:

**SERVICE**

1.      THIS COURT ORDERS that the time for service of the Notice of Motion, the Motion Record filed by the Applicants, the Fifty-Eighth Report and the Supplemental Fifty-Eighth Report, be and it is hereby abridged and validated such that the Motion is properly returnable today.

**PURPOSE OF THIS ORDER**

2.      THIS COURT ORDERS that this Order ("this Order" or the "EMEA Claims Procedure Order") shall apply to all EMEA Claims.

3.      THIS COURT ORDERS that the purpose of this Order together with the Claims Resolution Order and the Cross-Border Claims Protocol, as applicable, is to establish a bar date and mechanisms for the filing, proving and resolution of EMEA Claims, which were Excluded Claims as defined in the Claims Procedure Order, and therefore not subject to the mechanisms therein.

**DEFINITIONS**

4.      THIS COURT ORDERS that the following terms shall have the following meanings ascribed thereto:

      (a)      "Administrators" means the Joint Administrators, the Israeli Administrators and the French Office Holders, and any reference to "Administrator" or

- 3 -

Administrators" herein shall be deemed to include any successors to the Joint
Administrators, the Israeli Administrators or the French Office Holders;

(b) "Administrators' Counsel" means counsel acting for any Administrator,
including: (i) Herbert Smith LLP in its capacity as counsel to the Joint
Administrators, (ii) counsel to the Israeli Administrators, (iii) counsel to the
French Office Holders, and (iv) such other counsel as an Administrator may
advise by written notice to the Monitor and the Applicants;

(c) "Affected Directors and Officers" means those Directors and Officers against
whom an EMEA Claim has been asserted in a Proof of Claim, and an "Affected
Director or Officer" means any one of such Persons;

(d) "Business Day" means a day, other than a Saturday or a Sunday, on which
banks are generally open for business in Toronto, Ontario, Canada;

(e) "CCAA" means *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36,
as amended;

(f) "Chapter 11 Cases" means the reorganization cases under chapter 11 of the
United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, commenced by the
U.S. Debtors in the U.S. Court, and consolidated under Case No. 09-10138
(KG);

(g) "Claims Procedure Order" means the Amended and Restated Claims Procedure
Order dated July 30, 2009, as such Order may be further amended from time to
time by Order of this Court;

- 4 -

(h)     "Claims Resolution Order" means the Claims Resolution Order dated September 16, 2010, as such Claims Resolution Order may be amended from time to time by Order of this Court;

(i)     "Court" means the Ontario Superior Court of Justice (Commercial List);

(j)     "Cross-Border Claims Protocol" means the protocol for the resolution of cross-border claims filed in these CCAA proceedings and in the Chapter 11 Cases, as approved by this Court and the U.S. Court on September 16, 2010, as such Cross-Border Claims Protocol may be amended from time to time in accordance with its terms;

(k)     "Directors" means all current and former directors of the Applicants, and "Director" means any one of them;

(l)     "Dispute Notice" means a written notice to the Monitor, in substantially the form attached as Schedule "F" hereto, delivered to the Monitor by an EMEA Creditor who has received a Notice of Disallowance, of its intention to dispute such Notice of Disallowance;

(m)    "EMEA Claim" means any Claim (as defined in the Claims Procedure Order without reference to the exclusion for Excluded Claims) of an EMEA Company, as of the Filing Date, against (i) the Applicants, or any of them, (ii) any of the Property of the Applicants, or any of them (as the term "Property" is defined in the Initial Order), or (iii) the Directors and Officers, or any of them, and "EMEA Claims" means all of such EMEA Claims;

(n)     "EMEA Claims Bar Date" means March 18, 2011;

- 5 -

(o)     "EMEA Claims Procedure Order" shall have the meaning ascribed to that term in paragraph 2 herein;

(p)     "EMEA Companies" means the entities listed in Schedule "A" hereto, and "EMEA Company" means any one of them.  For the purposes of this Order, Nortel Networks Israel (Sales and Marketing) Limited (in administration) shall be considered an EMEA Company;

(q)     "EMEA Creditor" means any of the EMEA Companies (and any person appointed in respect of such EMEA Companies) asserting an EMEA Claim;

(r)     "EMEA Creditors' Guide to Completing the Proof of Claim form" means the guide to completing the Proof of Claim form, in substantially the form attached as Schedule "D" hereto;

(s)     "EMEA Protocol Claim" means an EMEA Claim, or a portion of an EMEA Claim, that also constitutes a Same-Creditor Claim or an Overlapping Claim as such terms are defined in the Cross-Border Claims Protocol;

(t)     "Filing Date" means January 14, 2009;

(u)     "French Office Holders" means *Maître* Cosme Rogeau, in his capacity as *liquidateur judiciaire* of Nortel Networks S.A,. together with *Maître* Frank Michel, in his capacity as *administrateur judiciaire* of Nortel Networks S.A.;

(v)     "Initial Order" shall have the meaning ascribed to that term in paragraph 6 of this Order;

- 6 -

(w)     "Israeli Administrators" means Yaron Har-Zyi and Avi D. Pelossof in their capacities as Joint Israeli Administrators of Nortel Networks Israel (Sales and Marketing) Limited;

(x)     "Joint Administrators" means Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP in their capacities as administrators of various of the EMEA Companies in their administration proceedings in the United Kingdom, and David Hughes of Ernst & Young LLP Ireland and Alan Bloom in their capacities as administrators of Nortel Networks (Ireland) Limited;

(y)     "Monitor" means Ernst & Young Inc. in its capacity as monitor pursuant to the Initial Order;

(z)     "Notice of Disallowance" means a notice, in substantially the form attached as Schedule "E" hereto, advising an EMEA Creditor that the Monitor, in consultation with the Applicants and any Affected Director or Officer, has revised or disallowed all or part of such EMEA Creditor's EMEA Claim set out in the EMEA Creditor's Proof of Claim;

(aa)    "Notice to EMEA Creditors" means the notice to EMEA Creditors in substantially the form attached as Schedule "B" hereto;

(bb)    "Officers" means all current and former officers of the Applicants, and "Officer" means any one of them;

(cc)    "Person" includes any individual, partnership, joint venture, trust, corporation, unlimited liability company, unincorporated organization, government body or

- 7 -

agency or instrumentality thereof, or any other juridical entity howsoever designated or constituted;

(dd) "Plan" means any plan of compromise and arrangement by one or more of the Applicants, if and when filed and approved by this Court, as revised, amended, modified or supplemented from time to time in accordance with its terms;

(ee) "Proof of Claim" means the form of Proof of Claim in substantially the form attached as Schedule "C" hereto;

(ff) "Proof of Claim Document Package" means a document package that includes a copy of the Notice to EMEA Creditors, a Proof of Claim, the EMEA Creditors' Guide to Completing the Proof of Claim form, and such other materials as the Monitor may consider appropriate or desirable;

(gg) "Proven EMEA Claim" shall have the meaning ascribed to that term in paragraph 20 herein;

(hh) "Secured Claim" means any EMEA Claim or portion thereof that is secured by a security interest, pledge, mortgage, lien, hypothec or charge on any property of any Applicant, or any EMEA Claim of a Secured Creditor as defined in the CCAA, but only to the extent of the value of the security in respect of the EMEA Claim;

(ii) "U.S. Court" means the United States Bankruptcy Court for the District of Delaware, acting in the Chapter 11 Cases; and

- 8 -

(jj)   "U.S. Debtors" means Nortel Networks Inc.; Nortel Networks Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros Inc.; Sonoma Systems; Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks Optical Components Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; Nortel Networks Cable Solutions Inc.; and Nortel Networks (CALA) Inc., and "U.S. Debtor" means any one of them.

## PRIOR PROOFS OF CLAIM

5.   THIS COURT ORDERS that all prior proofs of claim filed in respect of an EMEA Claim against the Applicants, or any one of them, in response to the call for claims and claims procedures in the Claims Procedure Order, shall be deemed to have been filed pursuant to this Order and shall be governed by and proven in accordance with this Order and, as applicable, the Claims Resolution Order and the Cross-Border Claims Protocol, provided however that at any time prior to 4:00 p.m. (prevailing time in Toronto, Ontario, Canada) on the EMEA Claims Bar Date any EMEA Creditor may by notice in writing to the Monitor elect to either withdraw any prior proof of claim filed by that EMEA Creditor or amend such prior proof of claim by submitting an amended Proof of Claim in accordance with this Order.

## MONITOR'S ROLE

6.   THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and obligations pursuant to the CCAA and the Initial Order of this Court dated January 14, 2009 (as it has been or is in the future supplemented, amended, restated or varied from

- 9 -

time to time, the "Initial Order"), is hereby directed and empowered to take such other actions and fulfill such other roles as are authorized by this Order, and that in taking such other actions and in fulfilling such other roles, the Monitor shall have the protections given to it in the Initial Order, the August 14, 2009 Order made in these proceedings, and this Order, including without limitation the protections provided in paragraph 34 of this Order.

## EMEA CLAIMS

7.     THIS COURT ORDERS that all EMEA Claims, being "Specific Claims" as defined in the Claims Resolution Order, shall be subject to the provisions of paragraphs 7, 8 and 10 of the Claims Resolution Order.

## EMEA PROTOCOL CLAIMS

8.     THIS COURT ORDERS that with respect to EMEA Protocol Claims:

    (a)     such claims shall be subject to paragraph 10 of the Claims Resolution Order;

    (b)     such claims shall be finally determined in accordance with the Cross-Border Claims Protocol and this Order;

    (c)     in the event of a conflict between the terms of this Order and the Cross-Border Claims Protocol, the terms of the Cross-Border Claims Protocol shall govern in all such cases; and

    (d)     the provisions of this Order (including provisions applying to the determination of Proven EMEA Claims, review of Proofs of Claim, issuance of Notices of Disallowance, Dispute Notices, and the resolution of EMEA Claims), shall be

- 10 -

subject in all cases to the terms of the Cross-Border Claims Protocol and the procedures set out therein.

**PERIODIC CLAIMS REPORTING**

9.    THIS COURT ORDERS that the claims reporting required by paragraph 11 of the Claims Resolution Order shall include reporting with respect to EMEA Claims.

**NOTICE TO EMEA CREDITORS**

10.    THIS COURT ORDERS that:

   (a)    the Monitor shall no later than five (5) days following the making of this Order, post a copy of the Proof of Claim Document Package on its website at "www.ey.com/ca/nortel";

   (b)    the Monitor shall no later than fifteen (15) days following the making of this Order, send on behalf of the Applicants to the Administrators and the Administrators' Counsel a copy of the Proof of Claim Document Package; and

   (c)    the Monitor shall, provided such request is received by the Monitor prior to the EMEA Claims Bar Date, deliver as soon as reasonably possible following receipt of a request therefor a copy of the Proof of Claim Document Package to any Person claiming to be an EMEA Creditor and requesting such material.

11.    THIS COURT ORDERS that in respect of an EMEA Claim, except as provided in the Claims Resolution Order and the Cross-Border Claims Protocol, as applicable, neither the Applicants nor the Monitor are under any obligation to give notice to or deal with any Person other than the EMEA Creditor holding such an EMEA Claim, and without

- 11 -

limitation shall have no obligation to give notice to or deal with any Person having a security interest in such EMEA Claim (including the holder of a security interest created by way of a pledge or a security interest created by way of an assignment of such EMEA Claim), and such Persons shall be bound by any notices given to the EMEA Creditor (or its representatives) and any steps taken in respect of such EMEA Claim in accordance with this Order.

**EMEA CLAIMS BAR DATE**

12.   THIS COURT ORDERS that Proofs of Claim with respect to an EMEA Claim shall be filed with the Monitor no later than 4:00 p.m. (prevailing time in Toronto, Ontario, Canada) on the EMEA Claims Bar Date, which for greater certainty is March 18, 2011.

13.   THIS COURT ORDERS that any EMEA Creditor that does not file a Proof of Claim as provided for herein such that such Proof of Claim is received by the Monitor by 4:00 p.m. (prevailing time in Toronto, Ontario, Canada) on the EMEA Claims Bar Date (a) shall be and is hereby forever barred from making or enforcing any EMEA Claim against the Applicants, or any of them, or the Directors or Officers, or any of them; (b) shall not be entitled to vote an EMEA Claim at any creditors' meeting in respect of the Plan or to receive any distribution thereunder; and (c) shall not be entitled to any further notice in, and shall not be entitled to participate as an EMEA Creditor in, these proceedings.

14.   THIS COURT ORDERS that nothing in the Order Approving Tolling made by this Court on December 20, 2011 shall permit the filing of an EMEA Claim after 4:00 p.m. (prevailing time in Toronto, Ontario, Canada) on the EMEA Claims Bar Date, and that the tolling provided for in the Order Approving Tolling shall terminate at such time on the EMEA Claims Bar Date.

- 12 -

**PROOFS OF CLAIM**

15.    THIS COURT ORDERS that each EMEA Creditor shall file a separate Proof of Claim for each Applicant against whom it asserts an EMEA Claim and, if the EMEA Claim is also being asserted against the Directors or Officers of that Applicant, such EMEA Claim against those Directors or Officers shall be included in the same Proof of Claim.

16.    THIS COURT ORDERS that each EMEA Creditor shall include any and all EMEA Claims it asserts against an Applicant in a single Proof of Claim, provided however that where an EMEA Creditor has taken an assignment or transfer of an EMEA Claim after the Filing Date, that EMEA Creditor shall file a separate Proof of Claim for each such assigned or transferred EMEA Claim.

17.    THIS COURT ORDERS that where an EMEA Claim against any Applicant is based on that Applicant's guarantee of the repayment of a debt of another Applicant or the debt of any other Person, the Proof of Claim in respect of such EMEA Claim shall clearly state that it is based on such a guarantee, and that where any Applicant has guaranteed the repayment of the debt of any other Applicant, a Proof of Claim in respect of that debt shall be filed against each such Applicant.

18.    THIS COURT ORDERS that if any EMEA Claim arose in a currency other than Canadian dollars, then the EMEA Creditor making the EMEA Claim shall complete its Proof of Claim indicating the amount of the EMEA Claim in such currency, rather than in Canadian dollars or any other currency. The Monitor shall subsequently calculate the amount of such EMEA Claim in Canadian dollars, using the Reuters closing rate on January 13, 2009, without prejudice to the ability of the Applicants to utilize a different exchange rate in any Plan.

- 13 -

**DETERMINATION OF PROVEN EMEA CLAIMS**

19.    THIS COURT ORDERS that an EMEA Claim shall not be a Proven EMEA Claim unless
       and until the EMEA Claim has been allowed or otherwise finally determined in
       accordance with this Order and, where applicable, the Claims Resolution Order and the
       Cross-Border Claims Protocol, provided however that no EMEA Claim may be allowed
       or may be established as a "Proven EMEA Claim" unless a Proof of Claim with respect
       to that EMEA Claim is filed in accordance with this Order by 4:00 p.m. (prevailing time
       in Toronto, Ontario, Canada) on the EMEA Claims Bar Date.

20.    THIS COURT ORDERS that the amount and status of every EMEA Claim of an EMEA
       Creditor as finally determined in accordance with the forms and procedures authorized in
       this Order and, where applicable, the Claims Resolution Order and the Cross-Border
       Claims Protocol, including any determination as to the nature, amount, value, priority or
       validity of any EMEA Claim, including any Secured Claim (each, a "Proven EMEA
       Claim"), shall be final and binding for all purposes, including without limitation for
       voting on and distributions made to EMEA Creditors of the Applicants pursuant to the
       Plan.

**REVIEW OF PROOFS OF CLAIM**

21.    THIS COURT ORDERS that the Monitor, in consultation with the Applicants and where
       applicable any Affected Director of Officer, shall review all Proofs of Claims that are
       filed on or before the EMEA Claims Bar Date.  At any time, the Monitor:

       (a)    may request additional information from an EMEA Creditor with respect to an
              EMEA Claim;

- 14 -

(b)     may request that the EMEA Creditor file a revised Proof of Claim;

(c)     may attempt to resolve and settle any issue arising in the Proof of Claim or in respect of the EMEA Claim;

(d)     may accept (in whole or in part) the amount and/or status of any EMEA Claim; and

(e)     may by notice in writing revise or disallow (in whole or in part) the amount and/or status of any EMEA Claim,

provided, however, that an EMEA Claim that has been asserted against an Applicant and an Affected Director or Officer cannot be settled or accepted by the Monitor except (i) with the consent of the Affected Director or Officer, or on further Order of this Court, or (ii) on a basis that is expressly without prejudice to the Affected Director or Officer, and further provided that if an EMEA Claim is asserted only against an Affected Director and Officer, and not against an Applicant, then such EMEA Claim shall not be settled or accepted by the Monitor without the consent of the Affected Director or Officer, or on further Order of this Court.

22.     THIS COURT ORDERS that where an EMEA Claim has been accepted by the Monitor and approved by the Court in accordance with the Claims Resolution Order, such EMEA Claim shall constitute such EMEA Creditor's Proven EMEA Claim for all purposes, including for the purposes of voting and distribution under the Plan.

23.     THIS COURT ORDERS that where an EMEA Claim is revised or disallowed (in whole or in part, and whether as to amount and/or as to status), the Monitor shall deliver to the EMEA Creditor a Notice of Disallowance, attaching the form of Dispute Notice. Where

- 15 -

a Notice of Disallowance relates to an EMEA Claim that has been made against a Director or Officer, a copy of the Notice of Disallowance shall also be delivered by the Monitor to the Affected Director or Officer.

24.    THIS COURT ORDERS that where an EMEA Claim has been disallowed (in whole or in part, and whether as to amount and/or as to status), the disallowed EMEA Claim (or disallowed portion thereof) shall not be a Proven EMEA Claim unless that EMEA Creditor has disputed the disallowance and proven the disallowed EMEA Claim (or disallowed portion thereof) in accordance with paragraphs 25 to 28 of this Order, or as otherwise ordered by this Court.

**DISPUTE NOTICE**

25.    THIS COURT ORDERS that an EMEA Creditor who intends to dispute a Notice of Disallowance shall file a Dispute Notice with the Monitor as soon as reasonably possible but in any event such that such Dispute Notice shall be received by the Monitor on or before 4:00 p.m. (prevailing time in Toronto, Ontario, Canada) on the day that is fourteen (14) days after the EMEA Creditor is deemed to have received the Notice of Disallowance in accordance with paragraph 35 of this Order. The filing of a Dispute Notice with the Monitor within the fourteen (14) day period specified in this paragraph shall constitute an application to have the amount or status of such EMEA Claim determined as set out in paragraphs 27 to 28 hereof. Where a Dispute Notice relates to an EMEA Claim that has been made against a Director or Officer, a copy of the Dispute Notice shall be delivered by the Monitor, promptly after receipt by the Monitor, to the Affected Director or Officer.

- 16 -

26.    THIS COURT ORDERS that where an EMEA Creditor that receives a Notice of Disallowance fails to file a Dispute Notice with the Monitor within the time period provided therefore in paragraph 25 above, the amount and status of such EMEA Creditor's EMEA Claim shall be deemed to be as set out in the Notice of Disallowance and such amount and status, if any, shall constitute such EMEA Creditor's Proven EMEA Claim.

**RESOLUTION OF EMEA CLAIMS**

27.    THIS COURT ORDERS that as soon as practicable after the delivery of the Dispute Notice to the Monitor, the EMEA Creditor and the Monitor, in consultation with the Applicants and, where applicable, any Affected Director or Officer, shall attempt to resolve and settle such EMEA Creditor's EMEA Claim.

28.    THIS COURT ORDERS that in the event that a dispute raised in a Dispute Notice is not settled within a time period or in a manner satisfactory to the Monitor, the Monitor will bring the dispute before the Court.

29.    THIS COURT ORDERS that the procedures set out in paragraphs 21-28 herein are expressly subject to paragraphs 7, 8 and 10 of the Claims Resolution Order and, where applicable, the terms of the Cross-Border Claims Protocol.

**NOTICE OF TRANSFEREES**

30.    THIS COURT ORDERS that neither the Applicants nor the Monitor shall be obligated to give notice to or to otherwise deal with a transferee or assignee of an EMEA Claim as the EMEA Creditor in respect thereof unless and until (i) actual written notice of transfer or assignment, together with satisfactory evidence of such transfer or assignment, shall have

been received by the Monitor, and (ii) the Monitor shall have acknowledged in writing such transfer or assignment, and thereafter such transferee or assignee shall for the purposes hereof constitute the "EMEA Creditor" in respect of such EMEA Claim. Any such transferee or assignee of an EMEA Claim, and such EMEA Claim, shall be bound by any notices given or steps taken in respect of such EMEA Claim in accordance with this Order prior to the written acknowledgement by the Monitor of such transfer or assignment.

31.     THIS COURT ORDERS that if the holder of an EMEA Claim has transferred or assigned the whole of such EMEA Claim to more than one Person or part of such EMEA Claim to another Person or Persons, such transfer or assignment shall not create a separate EMEA Claim or EMEA Claims and such EMEA Claim shall continue to constitute and be dealt with as a single EMEA Claim notwithstanding such transfer or assignment, and the Applicants and the Monitor shall in each such case not be bound to acknowledge or recognize any such transfer or assignment and shall be entitled to give notices to and to otherwise deal with such EMEA Claim only as a whole and then only to and with the Person last holding such EMEA Claim in whole as the EMEA Creditor in respect of such EMEA Claim. Provided that a transfer or assignment of the EMEA Claim has taken place in accordance with paragraph 30 of this Order and the Monitor has acknowledged in writing such transfer or assignment, the Person last holding such EMEA Claim in whole as the EMEA Creditor in respect of such EMEA Claim may by notice in writing to the Monitor direct that subsequent dealings in respect of such EMEA Claim, but only as a whole, shall be with a specified Person and, in such event, such EMEA Creditor, such transferee or assignee of the EMEA Claim and the whole of such EMEA Claim shall be

- 18 -

bound by any notices given or steps taken in respect of such EMEA Claim by or with respect to such Person in accordance with this Order.

32.    THIS COURT ORDERS that the transferee or assignee of any EMEA Claim (i) shall take the EMEA Claim subject to the rights and obligations of the transferor/assignor of the EMEA Claim, and subject to the rights of any Applicant against any such transferor or assignor, including any rights of set-off which any Applicant had against such transferor or assignor, and (ii) cannot use any transferred or assigned EMEA Claim to reduce any amount owing by the transferee or assignee to any Applicant, whether by way of set off, application, merger, consolidation or otherwise.

33.    THIS COURT ORDERS that nothing in this Order is intended to or shall be deemed to permit, enable or authorize the transfer or assignment of an EMEA Claim or to in any way affect the validity or invalidity of any such transfer or assignment.

**PROTECTIONS FOR MONITOR**

34.    THIS COURT ORDERS that (i) in carrying out the terms of this Order, the Monitor shall have all of the protections given to it by the CCAA, the Initial Order and the August 14, 2009 Order made in these proceedings, or as an officer of this Court, including without limitation the stay of proceedings in its favour, (ii) the Monitor shall incur no liability or obligation as a result of the carrying out of the provisions of this Order, except for its own wilful misconduct or gross negligence, (iii) the Monitor shall be entitled to rely on the books and records of the Applicants, and any information provided by the Applicants, all without independent investigation, and (iv) the Monitor shall not be liable for any claims or damages resulting from any errors or omissions in such books, records and information.

- 19 -

**SERVICE AND NOTICE**

35.     THIS COURT ORDERS that the Monitor or the Applicants, as the case may be, are at

liberty to deliver any letters, notices or other documents relating to EMEA Creditors or

other interested Persons, by forwarding true copies thereof by prepaid ordinary mail,

registered mail, courier, personal delivery or electronic or digital transmission to such

Persons (i) at the address shown on the Proof of Claim filed by that Person, or (ii) if a

Proof of Claim has not been filed by that Person or does not contain a valid address, then

at the address last shown on the records of the Applicants, and that any such service or

notice by courier, personal delivery or electronic or digital transmission shall be deemed

to be received on the next Business Day following the date of forwarding thereof, or if

sent by prepaid ordinary mail or by registered mail, on the fourth Business Day after

mailing.

36.     THIS COURT ORDERS that any notice or other communication to be given under this

Order by an EMEA Creditor to the Monitor shall be in writing and will be sufficiently

given only if given by prepaid ordinary mail, courier, personal delivery or electronic or

digital transmission addressed to:

> ERNST & YOUNG INC.
> Court-appointed Monitor of Nortel Networks Corporation & others
> 222 Bay Street, Suite 1600
> Toronto, Ontario
> Canada M5K 1J7
>
> Attention:     David Saldanha
> Telephone:     1-416-943-4431
> E-mail         david.saldanha@ca.ey.com
> Fax:           1-416-943-3300

Any such notice or other communication by an EMEA Creditor shall be deemed received

only upon actual receipt thereof during normal business hours on a Business Day.  Where

- 20 -

the communication is to be by way of a form attached as a Schedule to this Order, such communication shall be in substantially the form of the attached Schedule.

37.     THIS COURT ORDERS that where, pursuant to this Order, consultation is to occur with any Affected Director or Officer, notice is to be given to any such Person, or the consent of any such Person is to be obtained, and such Affected Director or Officer is represented by counsel, then such consultation, notice or consent may be with, to, or obtained from, such counsel.

**MISCELLANEOUS**

38.     THIS COURT ORDERS AND REQUESTS the aid and recognition of any court or any judicial, regulatory or administrative body in any province or territory of Canada (including the assistance of any court in Canada pursuant to Section 17 of the CCAA) and any court or any judicial, regulatory or administrative body of the United States of America, the United Kingdom, the French Republic, the State of Israel, and the Republic of Korea, and of any other nation or state, to act in aid of and to be complementary to this Court in carrying out the terms of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

JAN 20 2011

PER / PAR:

- 21 -

## SCHEDULE "A"

### List of EMEA Companies

<u>Entity Name</u>

Nortel Networks S.A. (in administration and *liquidation judiciaire*)
Nortel Networks UK Limited (in administration)
Nortel GmbH (in administration)
Nortel Networks S.p.A. (in administration)
Nortel Networks Hispania, S.A. (in administration)
Nortel Networks B.V. (in administration)
Nortel Networks AB (in administration)
Nortel Networks N.V. (in administration)
Nortel Networks (Austria) GmbH (in administration)
Nortel Networks Polska Sp. z.o.o. (in administration)
Nortel Networks Portugal, S.A. (in administration)
Nortel Networks s.r.o. (in administration)
Nortel Networks France S.A.S. (in administration)
Nortel Networks (Ireland) Limited (in administration)
Nortel Networks Engineering Services Kft (in administration)
Nortel Networks Slovensko, s.r.o. (in administration)
Nortel Networks Romania Srl (in administration)
Nortel Networks Oy (in administration)
Nortel Networks International Finance & Holding BV (in administration)
Nortel Networks Israel (Sales and Marketing) Limited (in administration)

## SCHEDULE "B"

### NOTICE TO CREDITORS
### of NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION
(hereinafter referred to as the "Debtors")

**RE:    NOTICE OF EMEA CLAIMS PROCEDURE FOR THE DEBTORS PURSUANT TO THE *COMPANIES' CREDITORS ARRANGEMENT ACT* (the "CCAA")**

**PLEASE TAKE NOTICE** that pursuant to an Order of the Superior Court of Justice of Ontario made January 14, 2011 (the "Order"), Proof of Claim Document Packages will be sent to all EMEA Creditors and certain representatives, on or before January 28, 2011. Copies of the Order and the Proof of Claim Document Package are available from the website of Ernst & Young Inc., the Court-appointed monitor of the Debtors, at "www.ey.com/ca/nortel", or by contacting the Monitor by telephone (1-416-943-4439 or 1-866-942-7177) or by fax (1-416-943-2808). Capitalized terms not otherwise defined in this Notice to Creditors shall have the meanings ascribed to such terms in the Order. Proofs of Claim must be submitted to the Monitor for any EMEA Claim against any Debtor, whether unliquidated, contingent or otherwise, or an EMEA Claim against any current or former director or officer of the Debtors, or any of them. Please consult the Proof of Claim Document Package for more details.

**Completed Proofs of Claim must be received by the Monitor by 4:00 p.m. (prevailing time in Toronto, Ontario, Canada) on the EMEA Claims Bar Date, which for greater certainty is March 18, 2011. It is your responsibility to ensure that the Monitor receives your Proof of Claim by the EMEA Claims Bar Date.**

**PLEASE NOTE that these procedures apply ONLY to EMEA Claims filed against the Debtors, or their current or former directors and officers, in the CCAA proceedings. Several of the Debtors' affiliates are subject to creditor protection proceedings in other jurisdictions, including in the United States. Separate proceedings and deadlines have been or will be established in those cases for the filing of claims. If you believe you have claims against the U.S. Debtors, any such claims must be filed in, and only in, the U.S. proceedings with the U.S. Debtors' claims agent. A list of the U.S. Debtors and procedures for filing such claims in the U.S. Proceedings can be found by going to the following internet link: www.chapter11.epiqsystems.com/nortel.**

**EMEA CLAIMS WHICH ARE NOT RECEIVED BY THE CLAIMS BAR DATE WILL BE BARRED AND EXTINGUISHED FOREVER.**

**DATED** at Toronto this ● day of ●, 2011.

## SCHEDULE "C"

## (form of Proof of Claim attached)

CANADIAN EMEA CCAA Proof of Claim    **re Nortel Networks Corporation and others**

**❶  Name of Debtor (the "Debtor")**
Debtor:

**❷  Original Creditor Identification (the "Creditor")**

| Legal Name of EMEA Creditor | | | Name of Contact |
|---|---|---|---|
| Address | | | Phone # |
| | | | Fax # |
| City | Country | Postal/Zip code | e-mail |

**❸  Assignee, if claim has been assigned**

| Full Legal Name of Assignee | | | Name of Contact |
|---|---|---|---|
| Address | | | Phone # |
| | | | Fax # |
| City | Country | Postal/Zip code | e-mail |

**❹  Amount of Claim**

The Debtor / Officer(s) / Director(s) was/were and still is/are indebted to the EMEA Creditor as follows:

| Currency | Original Currency Amount | Secured | S. 136 Priority | Restructuring | If you are making a claim against an Officer or Director check the box below, and list the Officer(s) and Director(s) against whom you assert your claim |
|---|---|---|---|---|---|
| | | ☐ | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |

*Claims will be recorded as "Unsecured" unless the "Secured" box is checked* ... *(Check only if applicable)*

**❺  Documentation**

Provide all particulars of the EMEA Claim and supporting documentation, including amount, description of transaction(s) or agreement(s) giving rise to the EMEA Claim, name of any guarantor which has guaranteed the EMEA Claim, and amount of invoices, particulars of all credits, discounts, etc. claimed, description of the security, if any, granted by the affected Debtor to the EMEA Creditor and estimated value of such security, particulars of any restructuring claim.

**❻  Certification**

I hereby certify that:
• I am the EMEA Creditor, or authorized Representative of the EMEA Creditor.
• I have knowledge of all the circumstances connected with this EMEA Claim.
• The EMEA Creditor asserts this claim against the Debtor; and the Officer(s) and Director(s) as indicated above.
• Complete documentation in support of this claim is attached.

| Signature | Name |
|---|---|
| | Title |
| Dated at | Signed at |

**❼  Filing of EMEA Claim**

This Proof of Claim must be received by the Monitor by no later than 4:00 p.m. (prevailing time in Toronto, Ontario, Canada) on **FEBRUARY 11, 2011**, by prepaid ordinary mail, courier, personal delivery or electronic or digital transmission at the following address:

Ernst & Young Inc.
222 Bay St., P.O. Box 251
Toronto-Dominion Centre
Toronto, ON  M5K 1J7
CANADA
Attention: Nortel Claims

Fax: 416-943-2808
Tel: 1-866-942-7177 or 416-943-4439
e-mail: nortel.monitor@ca.ey.com

An electronically fillable version of this form is available at www.ey.com/ca/nortel

## SCHEDULE "D"

## GUIDE TO COMPLETING THE PROOF OF CLAIM FORM

This Guide has been prepared to assist EMEA Creditors, which for greater certainty means the EMEA Creditors asserting an EMEA Claim, in filling out the Proof of Claim form with respect to the Debtors listed in Section 1, below. If you have any additional questions regarding completion of the Proof of Claim form, please consult the Monitor's website at www.ey.com/ca/nortel or contact the Monitor, whose contact information is shown below.

Capitalized terms not defined in this Guide shall have the meanings ascribed to such terms in the Order of the Ontario Superior Court of Justice dated January 14, 2011 (the "EMEA Claims Procedure Order").

Additional copies of the Proof of Claim form may be found at the Monitor's website address noted above.

Please note that this is a guide only, and that in the event of any inconsistency between the terms of this guide and the terms of the EMEA Claims Procedure Order or any other applicable Order, the terms of the EMEA Claims Procedure Order or other Order will govern.

### Section 1 – Name of Debtor:
- A separate Proof of Claim form must be filed for each Debtor against whom an EMEA Claim is being asserted.
- The following is a list of Debtor companies against whom an EMEA Claim may be asserted in this claims process:
  - Nortel Networks Corporation
  - Nortel Networks Limited
  - Nortel Networks Global Corporation
  - Nortel Networks International Corporation
  - Nortel Networks Technology Corporation.
- Please note that these procedures apply ONLY to EMEA Claims filed against the five Debtor companies listed above, or their current or former directors and officers. Several of the Debtors' affiliates are subject to creditor protection proceedings in other jurisdictions, including in the United States. Separate proceedings and deadlines have been or will be established in those cases for the filing of claims.

### Section 2 – Original EMEA Creditor
- A separate Proof of Claim form must be filed by each legal entity or person asserting an EMEA Claim against a Debtor listed in Section 1.
- The EMEA Creditor shall include any and all EMEA Claims it asserts against a single Debtor in a single Proof of Claim[1].

---

[1] Paragraph 16 of the EMEA Claims Procedure Order provides that: "THIS COURT ORDERS that each EMEA Creditor shall include any and all EMEA Claims it asserts against an Applicant in a single Proof of Claim, provided

- 2 -

- The full legal name of the EMEA Creditor must be provided.
- If the EMEA Creditor operates under a different name, or names, please indicate this in a separate schedule in the supporting documentation.
- If the EMEA Claim has been assigned or transferred to another party, Section 3 must also be completed.
- Unless the EMEA Claim is assigned or transferred, all future correspondence, notices, etc. regarding the EMEA Claim will be directed to the address and contact indicated in this section.

## Section 3 – Assignee

- If the EMEA Creditor has assigned or otherwise transferred its EMEA Claim, then Section 3 must be completed.
- The full legal name of the Assignee must be provided.
- If the Assignee operates under a different name, or names, please indicate this in a separate schedule in the supporting documentation.
- If the Monitor is satisfied that an assignment or transfer has occurred, all future correspondence, notices, etc. regarding the EMEA Claim will be directed to the Assignee at the address and contact indicated in this section.

## Section 4 – Amount of EMEA Claim of EMEA Creditor against Debtor and/or Directors and Officers

- Indicate the amount the Debtor / Director(s) or Officer(s) was, and still is indebted to the EMEA Creditor

*Currency, Original Currency Amount*

- The amount of the EMEA Claim must be provided in the currency in which it arose.
- Indicate the appropriate currency in the Currency column.
- If the EMEA Claim is denominated in multiple currencies, use a separate line to indicate the EMEA Claim amount in each such currency. If there are insufficient lines to record these amounts, attach a separate schedule indicating the required information.
- EMEA Claims denominated in a currency other than Canadian dollars will be converted into Canadian dollars by the Monitor using the exchange rates set out in Appendix A.

*Secured*

- Check the Secured box ONLY if the EMEA Claim recorded on that line is secured. Do not check this box if your EMEA Claim is unsecured.
- If the value of the collateral securing your EMEA Claim is less than the amount of your EMEA Claim, enter the shortfall portion on a separate line as an unsecured claim

---

however that where an EMEA Creditor has taken an assignment or transfer of an EMEA Claim after the Filing Date, that EMEA Creditor shall file a separate Proof of Claim for each such assigned or transferred EMEA Claim."

- 3 -

- Evidence supporting the security you hold must be submitted with the Proof of Claim form. Provide full particulars of the nature of the security, including the date on which the security was given and the value you attribute to the collateral securing your EMEA Claim. Attach a copy of all related security documents.

*Directors and Officers*
- Check this box only if the EMEA Claim you are making is also being asserted against a current or former director or officer of the Debtor.
- You must identify the individual director(s) or officer(s) against whom you are asserting the EMEA Claim.


## Section 5 – Documentation
- Attach to the claim form all particulars of the EMEA Claim and supporting documentation, including amount, description of transaction(s) or agreement(s) giving rise to the EMEA Claim, name of any guarantor which has guaranteed the EMEA Claim[2], and amount of invoices, particulars of all credits, discounts, etc. claimed, description of the security, if any, granted by the debtor or any director or officer to the EMEA Creditor and estimated value of such security.


## Section 6 – Certification
- The person signing the Proof of Claim form should
  - Be the EMEA Creditor, or authorized Representative of the EMEA Creditor.
  - Have knowledge of all the circumstances connected with this EMEA Claim.
- By signing and submitting the Proof of Claim, the EMEA Creditor is asserting the EMEA Claim against the Debtor and / or the indicated director(s) or officer(s).


## Section 7 – Filing of EMEA Claim
- This Proof of Claim **must be received** by the Monitor by no later than 4:00 p.m. (prevailing time in Toronto, Ontario, Canada) on March 18, 2011. Proofs of Claim should be sent by prepaid ordinary mail, courier, personal delivery or electronic or digital transmission to the following address:

  ERNST & YOUNG INC.
  Court-appointed Monitor of Nortel Networks Corporation & others
  222 Bay Street, Suite 1600
  Toronto, Ontario
  Canada M5K 1J7

  Attention:    David Saldanha
  Telephone:    1-416-943-4431

---

[2] If the guarantor is another of the Debtors listed in Section 1, or one of the U.S. Debtors, a Proof of Claim against that Debtor or U.S. Debtor, as the case may be, must also be filed in these Canadian Proceedings or (in the case of U.S. Debtors) in the U.S. proceedings.

- 4 -

E-mail          david.saldanha@ca.ey.com
Fax:            1-416-943-3300

**Failure to file your Proof of Claim so that it is received by the Monitor by 4:00 p.m. (prevailing time in Toronto, Ontario, Canada) on the EMEA Claims Bar Date of March 18, 2011 will result in your claim being barred and you will be prevented from making or enforcing an EMEA Claim against the Debtor or any current or former director or officer of any of the Debtors.  In addition, you shall not be entitled to further notice in and shall not be entitled to participate as a creditor in these proceedings.**

## Appendix A

Currency conversion factors
Source: Reuters, January 14, 2009

**This Appendix is for information only. You are to make your claim in the currency in which it arose. The Monitor will calculate all currency conversions.**

|     |                          | CAD per unit of Currency |
| --- | ------------------------ | ------------------------ |
| CAD | Canadian Dollar          | 1                        |
| USD | United States Dollar     | 1.22025                  |
| EUR | Euro                     | 1.6170753                |
| GBP | United Kingdom: Pnd Ster | 1.77741615               |
| JPY | Japan: Yen               | 0.01362647               |

| Code | Currency | CAD | Code | Currency | CAD |
| --- | --- | --- | --- | --- | --- |
| AED | United Arab Emir.: Dirham | 0.33221709 | LTL | Lithuanian Litas | 0.46830925 |
| ARS | Argentine Peso | 0.35410621 | LVL | Latvian Lats | 2.29456567 |
| AUD | Australian Dollar | 0.82275356 | MAD | Moroccan Dirham | 0.14500201 |
| BBD | Barbados Dollar | 0.61319095 | MXN | Mexican Peso | 0.08842392 |
| BDT | Bangladeshi Taka | 0.01772331 | MYR | Malaysian Ringgit | 0.34156754 |
| BGN | Bulgaria: New Lev | 0.82683968 | NGN | Nigerian Naira | 0.00816494 |
| BOB | Bolivian Boliviano | 0.17345416 | NOK | Norwegian Krone | 0.17167276 |
| BRL | Brazilian Real | 0.52726527 | NZD | New Zealand Dollar | 0.6711375 |
| CHF | Swiss Franc | 1.09468915 | OMR | Oman: Rial Omani | 3.16980987 |
| CLP | Chilean Peso | 0.0019827 | PAB | Panama: Balb0A | 1.22025 |
| CNY | China: Yuan Renminbi | 0.17854268 | PEN | Peru: Nuevo Sol | 0.3889243 |
| COP | Colombian Peso | 0.00054867 | PGK | Papua New Guinea Kina | 0.4671117 |
| CRC | Costa Rican Colon | 0.00210273 | PHP | Philippine Peso | 0.02592415 |
| CZK | Czech Koruna | 0.06004872 | PKR | Pakistan Rupee | 0.015414 |
| DKK | Danish Krone | 0.21701242 | PLN | Poland: Zloty | 0.39077386 |
| DOP | Dominican Peso | 0.03444601 | PYG | Paraguay: Guarani | 0.0002498 |
| DZD | Algerian Dinar | 0.01682672 | QAR | Qatar: Qatari Rial | 0.33516446 |
| EEK | Estonian Kroon | 0.10334226 | RON | New Romania Leu | 0.37703348 |
| EGP | Egyptian Pound | 0.22086973 | RUB | Russian Ruble | 0.03847246 |
| FJD | Fiji Dollar | 0.67418812 | SAR | Saudi Arabia: Saudi Riyal | 0.32539566 |
| GTQ | Guatemala: Quetzal | 0.15495238 | SEK | Swedish Krona | 0.14788041 |
| HKD | Hong Kong Dollar | 0.15732068 | SGD | Singapore Dollar | 0.82052921 |
| HUF | Hungary: Forint | 0.00583154 | THB | Thailand: Baht | 0.03495417 |
| IDR | Indonesia: Rupiah | 0.00010993 | TND | Tunisian Dinar | 0.89144172 |
| ILS | Israel: Shekel | 0.31449742 | TRY | New Turkish Lira | 0.76914592 |
| INR | Indian Rupee | 0.02499872 | TTD | Trinidad & Tobago Dollar | 0.19524 |
| ISK | Iceland Krona | 0.00966994 | UAH | Ukraine: Hryvnia | 0.13945714 |
| JMD | Jamaican Dollar | 0.01515838 | UYU | Uruguay: Peso | 0.05016444 |
| JOD | Jordanian Dinar | 1.72084329 | VEF | Bolivar Fuerte | 0.56827178 |
| KPW | North Korean Won | 0.00853023 | VND | Vietnam: Dong | 0.00006981 |
| KRW | Republic Of Korea: Won | 0.00090543 | XCD | East Caribbean Dollar | 0.4587406 |
| KWD | Kuwaiti Dinar | 4.28157891 | ZAR | South Africa: Rand | 0.12249969 |
| LBP | Lebanese Pound | 0.00080945 | ZMK | Zambia: Kwacha | 0.00024601 |
| LKR | Sri Lanka Rupee | 0.01072276 |  |  |  |

## SCHEDULE "E"

---

### NOTICE OF DISALLOWANCE

**For EMEA Creditors of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (each a "CCAA Applicant" and collectively, the "CCAA Applicants") and/or their respective Directors and Officers**

---

Claim Reference Number: _____

Name of CCAA Applicant: _____

TO: _____
*(Name of EMEA Creditor)*

Defined terms not defined in this Notice of Disallowance have the meaning ascribed in the Order of the Ontario Superior Court of Justice dated January 14, 2011 (the "EMEA Claims Procedure Order"). **All dollar values contained herein are in Canadian dollars unless otherwise noted.**

Pursuant to paragraph 23 of the EMEA Claims Procedure Order, Ernst & Young Inc., in its capacity as Court-appointed Monitor of the CCAA Applicant, hereby gives you notice that it has reviewed your Proof of Claim in conjunction with the CCAA Applicant (and, where applicable, the Applicant's former directors or officers) and has disallowed all or part of your EMEA Claim. Subject to the terms of the EMEA Claims Procedure Order, including any further dispute by you in accordance with such Order, your EMEA Claim will be allowed as follows:

| | Proof of Claim amount as submitted by EMEA Creditor | | Amount allowed by Monitor |
|---|---|---|---|
| | (original currency amount) | (in Canadian dollars) | (in Canadian dollars) |
| A. Unsecured EMEA Claim | | $ | $ |
| B. Secured EMEA Claim | | $ | $ |
| E. Directors/Officers Claim | | $ | $ |
| F. Total Claim (without duplication) | | $ | $ |

- 2 -

**Reasons for Disallowance:**

_____

_____

_____

**SERVICE OF DISPUTE NOTICES**

**If you intend to dispute this Notice of Disallowance, you must, no later than 4:00 pm (prevailing time in Toronto, Ontario, Canada) on the day that is fourteen (14) days after this Notice of Disallowance is deemed to have been received by you (in accordance with paragraph 35 of the EMEA Claims Procedure Order), deliver a Notice of Dispute to the Monitor by prepaid ordinary mail, registered mail, courier, personal delivery or electronic or digital transmission to the address below.** In accordance with the EMEA Claims Procedure Order, notices shall be deemed to be received upon actual receipt thereof by the Monitor during normal business hours on a Business Day, or if delivered outside of normal business hours, on the next Business Day. The form of Dispute Notice is enclosed and can also be accessed on the Monitor's website at www.ey.com/ca/nortel.

> ERNST & YOUNG INC.
> Court-appointed Monitor of Nortel Networks Corporation & others
> 222 Bay Street, Suite 1600
> Toronto, Ontario
> Canada M5K 1J7
>
> Attention:     David Saldanha
> Telephone:    1-416-943-4431
> E-mail         david.saldanha@ca.ey.com
> Fax:            1-416-943-3300

**IF YOU FAIL TO FILE A DISPUTE NOTICE WITHIN THE PRESCRIBED TIME PERIOD, THIS NOTICE OF DISALLOWANCE WILL BE BINDING UPON YOU.**

**DATED** at Toronto, this        day of                    , 201●.

**ERNST & YOUNG INC.**, in its capacity as Court-appointed Monitor of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation and not in its personal capacity.

Per:

## SCHEDULE "F"

---

### DISPUTE NOTICE

**For Voting And/Or Distribution Purposes with respect to Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (each a "CCAA Applicant" and collectively, the "CCAA Applicants") and/or their respective Directors and Officers**

---

Claim Reference Number: _____

Name of CCAA Debtor against
which an EMEA Claim is asserted:_____

### 1.    Particulars of EMEA Creditor:

Full Legal Name of EMEA Creditor (include trade name, if different):

_____

_____

*(the "EMEA Creditor").*

Full Mailing Address of the EMEA Creditor:

_____

_____

Other Contact Information of the EMEA Creditor:

Telephone Number: _____

Email Address: _____

Facsimile Number: _____

Attention (Contact Person): _____

- 2 -

2.   **Particulars of original EMEA Creditor from whom you acquired the EMEA Claim, if applicable:**

Have you acquired this EMEA Claim by assignment?

Yes: ☐     No: ☐

If yes and if not already provided, attach documents evidencing assignment.

Full Legal Name of original EMEA Creditor(s): _____

3.   **Dispute of Disallowance of EMEA Claim:**

*For the purposes of the EMEA Claims Procedure Order only (and without prejudice to the terms of any plan of arrangement or compromise) claims in a foreign currency will be converted to Canadian dollars at the exchange rates approved by the EMEA Claims Procedure Order. A copy of the applicable exchange rate can be found on the Monitor's website at www.ey.com/ca/nortel.*

The EMEA Creditor hereby disagrees with the value of its EMEA Claim as set out in the Notice of Disallowance and asserts an EMEA Claim as follows:

|  | Amount allowed by Monitor: (Notice of Disallowance) (in Canadian dollars) | Amount claimed by EMEA Creditor: (in Canadian Dollars) |
|---|---|---|
| A.   Unsecured EMEA Claim | $ | $ |
| B.   Secured EMEA Claim | $ | $ |
| E.   Directors/Officers Claim | $ | $ |
| F.   Total Claim (without duplication) | $ | $ |

**REASON(S) FOR THE DISPUTE:**

*[You must include a list of reasons as to why you are disputing your EMEA Claim as set out in the Notice of Disallowance. Reasons must be provided for each type of EMEA Claim being asserted and under dispute (that is, each unsecured claim, each secured claim, and each claim against a director or officer).]*

_____

_____

_____

_____

- 3 -

**SERVICE OF DISPUTE NOTICES**

**If you intend to dispute the Notice of Disallowance, you must by no later than the date that is fourteen (14) days after the Notice of Disallowance is deemed to have been received by you (in accordance with paragraph 35 of the EMEA Claims Procedure Order) deliver to the Monitor this Dispute Notice by prepaid ordinary mail, registered mail, courier, personal delivery or electronic or digital transmission to the address below.** In accordance with the EMEA Claims Procedure Order, notices shall be deemed to be received upon actual receipt thereof by the Monitor during normal business hours on a Business Day, or if delivered outside of normal business hours, on the next Business Day.

ERNST & YOUNG INC.
Court-appointed Monitor of Nortel Networks Corporation & others
222 Bay Street, Suite 1600
Toronto, Ontario
Canada M5K 1J7

Attention:    David Saldanha
Telephone:    1-416-943-4431
E-mail          david.saldanha@ca.ey.com
Fax:             1-416-943-3300

DATED this _____ day of _____, 2010.

Name of EMEA Creditor: _____

_____          Per:   _____
              Witness                                                                    Name:
                                                                                              Title:
                                  *(please print)*

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, C. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION
AND NORTEL NETWORKS TECHNOLOGY CORPORATION
APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, C. C-36, AS AMENDED

Court File No:  09-CL-7950

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

---

**EMEA CLAIMS**
**PROCEDURE ORDER**

---

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

# EXHIBIT 4

**CITATION:** Nortel Networks Corporation (Re), 2011 ONSC 1091
**COURT FILE NO.:** 09-CL-7950
**DATE:** 20110217

## SUPERIOR COURT OF JUSTICE - ONTARIO

**RE:**  IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION, Applicants

**BEFORE:**  MORAWETZ J.

**COUNSEL:**  Alan Mark, Derrick Tay, and Tony Reyes, for Nortel Networks Corporation et al.

F. Myers, J. Pasquariello and C. Armstrong, for the Monitor, Ernst & Young Inc.

Barry Wadsworth, for the CAW-Canada

Sharon Kour, for Morneau Sobeco, Plan Administrator

Arthur Jacques, for the Nortel Continuing Canada Employees

Alex MacFarlane, for the Official Committee of Unsecured Creditors

Kevin Zych, for the Nortel Notcholder Group

Lyndon Barnes, for the Board of Directors of Nortel

Mark Zigler, for the Former and Disabled Employees

Andrew Gray, for Nortel Networks Inc. and Chapter 11 Debtors

M. Starnino, for the Pension Benefits Guarantee Fund

M. P. Gottlieb and R. Schwill, for the Joint Administrators of Nortel Networks (UK) Limited

**HEARD &
DECIDED:**  JANUARY 14, 2011

**REASONS:**  February 17, 2011

## ENDORSEMENT

[1]     The motion was heard on January 14, 2011. At the conclusion of argument, the motion was granted with reasons to follow. These are the reasons.

[2]     Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Applicants") brought this motion for an order granting an "EMEA Claims Procedure Order".

[3]     By way of background, on January 14, 2009, Nortel Networks (UK) Limited ("NNUK") and certain subsidiaries of the Nortel Group incorporated in Europe, the Middle East or Africa each obtained an administration order for the appointment of administrators from the High Court of England and Wales under the *Insolvency Act 1986*. These debtors, together with Nortel Networks Israel (Sales and Marketing) Limited, are defined in the proposed EMEA Claims Procedure Order as the "EMEA Companies", and are listed on Schedule "A" to the proposed draft order.

[4]     On July 30, 2009, the "2009 Claims Procedure Order" was granted, establishing a process for the proving of "Claims".

[5]     Certain categories of claims were excluded from the definition of "Claims" as defined in the 2009 Claims Procedure Order; among the excluded categories of claims were inter-company claims.

[6]     A Claims Resolution Order was granted on September 16, 2010, establishing the resolution process for "Claims" as defined in the 2009 Claims Procedure Order. The Claims Procedure Order did not establish resolution procedures for inter-company claims.

[7]     The Applicants are of the view that some of the largest claims to be filed in these proceedings will be inter-company claims, and among the largest inter-company claims are likely to be claims of the EMEA Companies ("EMEA Claims"). In addition, the Applicants are of the view that some of the EMEA Claims against some of the Applicants will likely be based on alleged facts and liabilities similar to those already asserted against NNC and NNL pursuant to the 2009 Claims Procedure Order.

[8]     The Applicants are of the view that it is appropriate to implement a "call for claims" procedure that will require the EMEA Companies to file their claims by a specified date, and to establish a process for the proving and resolution of the EMEA Claims.

[9]     The Applicants' stated intention is to establish a claims process that will ensure that the most significant claims against the Applicants can be dealt with in an orderly process, to avoid future delays in the administration of the Canadian estates, and delays in determining claims for voting and distribution purposes.

[10]    The Monitor filed its 58th Report and its Supplemental 58th Report in support of the relief sought by the Applicants.

[11]    Counsel to the Nortel Bondholder Group, the Unsecured Creditors' Committee, the Former and Disabled Employees, the Pension Benefit Guarantee Fund, the NCCE, the CAW, Morneau Sobeco, and the Board supported the motion. The motion was opposed by the Joint Administrators of NNUK.

[12]    Nortel has sold substantially all of its operating businesses in the course of insolvency proceedings in Canada, England and the United States. The proceeds are being held in escrow pending determination of how they are to be allocated among the various Nortel Companies. The EMEA Companies claim a significant entitlement to those proceeds. In addition, counsel submits that the EMEA Companies have significant inter-company claims against the Applicants. Counsel submits that the EMEA Claims and their claims for entitlement to the sale proceeds are inextricably intertwined and complex.

[13]    Counsel to the Joint Administrators further submitted that the proposed process is premature and flawed and that any effort to determine and resolve inter-company claims must be undertaken in a coordinated procedure that will also determine the proper allocation of the proceeds of the sale of Nortel's assets and businesses as between all the Nortel parties. Further, counsel submits that the determination of the EMEA Claims must be determined in coordinated proceedings, where all of those claims and corresponding claims of set-off and claims over as against other Nortel parties that may arise as a consequence can be determined in an appropriate forum under the appropriate law.

[14]    Counsel to the Joint Administrators also submits that the Interim Funding and Settlement Agreement ("IFSA") (which was entered into among the Applicants, Nortel Networks Inc. and the other U.S. Debtors, the Joint Administrators and the EMEA Companies) specifically contemplates the method for achieving a protocol for resolving the disputes concerning the allocation of the sales proceeds. Counsel further submits that the resolution of disputes concerning the allocation of proceeds will necessarily deal with the same issues as those that will be considered and resolved regarding the EMEA Claims.

[15]    In an effort to settle all outstanding issues, including inter-company claims and allocation of proceeds, the Nortel parties have engaged in a confidential mediation process. Counsel to the Joint Administrators advises that, in accordance with the terms of the mediation, a disclosure exercise was carried out and documents were placed into a central database. However, the use of the documents was limited for the purpose of settlement discussions.

[16]    In summary, counsel submits that the proposed EMEA Claims process is both premature and inapplicable on the basis that:

(a) the inter-company claims cannot be dealt with separate from or prior to a consideration of the allocation of proceeds;

(b) pursuant to s. 12.c. of the IFSA, the parties have begun a process of negotiating a protocol for resolving disputes concerning the allocation of proceeds;

(c) if all issues are not dealt with in a coordinate manner, there will be multiple courts considering the identical issues with the significant risks of inconsistent results.

[17]    Further, they submit that the claims process requested is mainly silent with respect to how issues of jurisdiction, applicable law and the coordination of proceeds will be dealt with and that the proposed claims process does not, in any way, deal with how documentary production is to be made in a context where insufficient documentation has been provided by the Applicants to the EMEA Companies.

[18]    I have not been persuaded by these arguments.

[19]    Section 12.c. of the IFSA references a protocol for resolving disputes concerning the allocation of sale proceeds from sale transactions. I am in agreement with the comments of the Monitor that the proposed EMEA Claims Procedure Order does not concern "the allocation of sale proceeds from sale transactions", but rather a process for the calling and resolution of claims that may be advanced by the EMEA Companies against the Applicants. The argument of the Joint Administrators based on section 12.c. of the IFSA is not persuasive.

[20]    With respect to the submission that claims of the EMEA Companies cannot be dealt with separate from or prior to a consideration of the allocation of proceeds, it appears that the linkage between inter-company claims and allocation of proceeds, that is referenced by counsel to the Joint Administrators, may have more to do with achieving maximum leverage in the global distribution negotiations than with the determination of the EMEA Claims. In a claims process, it is reasonable to expect that the Joint Administrators will file what they consider to be the broadest claim allowable and all heads of the claim and the quantum claim will be clearly set out.

[21]    In putting forth the position that a determination of the quantum of the claim cannot be made until the allocation issue is resolved, an indirect question is raised, namely, in formulating the EMEA Claim, will the Joint Administrators be in any way influenced by the allocation process.    If the allocation process impacts the methodology to be utilized by the Joint Administrators in the preparation of the EMEA Claim, it follows that the EMEA Claim may not be complete in all respects. In my view, it is not helpful to have an incomplete EMEA Claim.

[22]    If, on the other hand, the objective of the Joint Administrators is to file the broadest claim allowable in these proceedings, I fail to understand why the preparation and submission of that claim has to wait until the allocation process has been resolved.

[23]    Nortel's insolvency proceedings were commenced in January 2009. At this stage, two years later, it is reasonable to expect that the Joint Administrators will have a complete understanding of the basis for filing an EMEA Claim.

[24]    It is also reasonable to expect that there will be a distribution in the CCAA proceedings and, in my view, all meaningful steps to achieve this objective should be implemented.    In addition to institutional creditors, it is important to again emphasize that there are thousands of individuals who have claims against Nortel, and for these individuals, time does not stand still.

[25]    The time has come where this matter has to move forward. A full and complete claims process will be required before a distribution in the CCAA proceedings can take place.

[26]    That is not to say that the process issues raised by the Joint Administrators should be ignored. The parties involved in the EMEA Claim are well aware of process issues which

include how claims of set-off are to be dealt with, how documentary production is to be made and the timing of the claims bar date. The Applicants recognize that the EMEA Claim is going to be significant. The process issues raised by the Joint Administrators cannot and should not be ignored.

[27]   Accordingly, the Applicants' motion is granted. The order should reflect that the purpose of the procedure is to fully identify and articulate the EMEA Claims, but the process issues referenced by counsel to the Joint Administrators remain to be addressed. Counsel are to prepare a form of order to give effect to the foregoing. To the extent that there is no agreement over the form of order, counsel should schedule a 9:30 a.m. appointment with me through the Commercial List Office.

MORAWETZ J.

**Date:** February 17, 2011