## Exhibit B

**Declaration of George Riedel**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
                                                         :
                                                         :   Chapter 11
*In re*                                                  :
                                                         :   Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                       :
                                                         :   Jointly Administered
                    Debtors.                             :
                                                         :
---------------------------------------------------------X

**DECLARATION OF GEORGE RIEDEL IN SUPPORT OF DEBTORS'
MOTION FOR ORDERS (I)(A) AUTHORIZING DEBTORS' ENTRY
INTO THE STALKING HORSE ASSET SALE AGREEMENT, (B) AUTHORIZING
AND APPROVING THE BIDDING PROCEDURES AND BID PROTECTIONS,
(C) APPROVING THE NOTICE PROCEDURES AND THE ASSUMPTION
AND ASSIGNMENT PROCEDURES, (D) APPROVING THE
LICENSE REJECTION PROCEDURES, (E) APPROVING A SIDE AGREEMENT, (F)
AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL AND (G)
SETTING A DATE FOR THE SALE HEARING AND (II) AUTHORIZING AND
APPROVING (A) THE SALE OF CERTAIN PATENTS AND RELATED
ASSETS FREE AND CLEAR OF ALL CLAIMS AND INTERESTS,
(B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS, (C) THE REJECTION OF CERTAIN PATENT LICENSES AND
(D) THE LICENSE NON-ASSIGNMENT AND NON-RENEWAL PROTECTIONS**

I, George Riedel, declare under penalty of perjury as follows:

1.    I am Chief Strategy Officer of Nortel Networks Corporation ("NNC") and Nortel Networks Limited ("NNL"), the direct corporate parent of Nortel Networks Inc. ("NNI" and, together with the other above-captioned debtors, the "Debtors" or the "U.S. Debtors"). I have

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

held these positions since February 2006. I also currently hold the title of President—Business Units.

2.　　I submit this declaration in support of the Debtors' motion (the "Sale Motion")[2] for orders (i)(a) authorizing the Debtors' entry into that certain asset sale agreement dated as of April 4, 2011 among NNI, Nortel Networks Limited ("NNL"), Nortel Networks Corporation ("NNC"), Nortel Networks UK Limited, Nortel Networks (Ireland) Limited, Nortel Networks S.A. and certain other entities identified therein as sellers (together, the "Sellers") and Ranger Inc, an affiliate of Google Inc., as purchaser (the "Stalking Horse Purchaser") for the sale of substantially all of the Debtors' residual patents and certain related assets as described therein as a "stalking-horse" sale agreement (as appended to the Motion as Exhibit A, the "Stalking Horse Agreement"), (b) authorizing and approving the Bidding Procedures and the Bid Protections, including granting administrative expense status to the portion of the Bid Protections payable by the Debtors to the Stalking Horse Purchaser, (c) approving the Notice Procedures and the Assumption and Assignment Procedures, (d) approving the License Rejection Procedures, (e) approving a Side Agreement, (f) authorizing the Debtors to file certain documents under seal and (g) setting the time, date and place for a hearing to consider the sale of the Assets, the assumption and assignment of the Assumed and Assigned Contracts and the rejection of the Unknown Licenses (the "Sale"); (ii) authorizing and approving (a) the sale of the Purchased Assets, free and clear of all claims and interests, pursuant to section 363 of the Bankruptcy Code, (b) the assumption and assignment of the Assumed and Assigned Contracts pursuant to section 365 of the Bankruptcy Code, (c) the rejection of the Unknown Licenses pursuant to section 365

---

[2]　　Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Sale Motion or the Stalking Horse Agreement, as applicable.

2

of the Bankruptcy Code and (d) the License Non-Assignment and Non-Renewal Protections; and (iii) granting them such other and further relief as the Court deems just and proper.

3. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, information supplied to me by other members of the Debtors' management and professionals, or learned from my review of relevant documents or upon my opinion based on my experience and knowledge of the Debtors' operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this declaration.

4. I have participated in or was informed of Nortel's exploration of opportunities to sell the Assets that have since resulted in the negotiation and execution of the Stalking Horse Agreement.

5. On June 19, 2009, Nortel announced that it had determined that the sale of its businesses is the best path to maximize value. Since that time, Nortel has been engaged in a process for the orderly disposition of its businesses. To date, these efforts have led to Nortel closing: (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially

3

all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632]; and (viii) the sale of substantially all the assets of its Multi-Service Switch business to Ericsson [D.I. 4054].

6. At this time, Nortel's residual patent assets are one of Nortel's largest remaining assets. The Stalking Horse Agreement contemplates the sale of approximately 6,000 U.S and foreign patents and patent applications spanning wireless, wireless 4G, data networking, optical, voice, internet, service provider, semiconductors and other patent portfolios. The extensive patent portfolio touches nearly every aspect of telecommunications and additional markets as well, including Internet search and social networking.

7. Nortel first began to solicit interest in a divestiture of the patent assets in May 2010. In connection with this initial effort, Nortel, in consultation with its financial advisors, engaged in discussions with approximately one hundred and five (105) parties likely to be interested and able to acquire the patent assets, including a mix of financial investors and strategic buyers. A teaser intended to pique interest in the Assets was sent to approximately ninety-five (95) entities. Forty (40) companies who executed confidentiality agreements were given access to an electronic data room containing confidential diligence materials regarding the Assets. During the solicitation process, Nortel management also gave several presentations to interested parties.

8. I believe, based on canvassing the marketplace since the commencement of these chapter 11 cases, that that the proposed transaction with the Stalking Horse Purchaser represents the best proposal available for the Assets, subject to the receipt of a higher or better bid through the auction process contemplated in the Sale Motion.

4

9. The potential purchase price that could be realized through a sale of the Assets is likely to decline over time if the Assets remain unsold. While it is clear that the Assets have significant value, the full value of the Assets may not be realized if a sale is not consummated quickly.

10. As part of the Sale Motion, the Debtors seek authority to file the Schedules, Side Agreement, lists identifying the Counterparties and the License Counterparties and the license agreements under seal. The Sellers consider the identities of the License Counterparties and the Counterparties and the information contained in the Schedules, including the list of patents to be transferred, to be confidential commercial information.

11. The information contained in the Schedules, the terms of the Side Agreement as well as the identity of the License Counterparties and the Counterparties, includes proprietary and confidential information of the Sellers and other information related to their remaining operations. Moreover, disclosure of the information could affect the value of the Assets to the Sellers, the Stalking Horse Purchaser or other potential purchasers.

12. Accordingly, I believe it is in the best interests of the Debtors and their creditors for the Court to approve procedures by which the sale can be carried out without publicly divulging the names of the License Counterparties or the Counterparties, the information contained in the Schedules or the terms of the Side Agreement.

*[Remainder of Page Intentionally Left Blank]*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: April 4, 2011
Washington, DC

_/s/ George Riedel_
George Riedel