**<u>Exhibit H</u>**

**Form of Known License Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- X
: 
*In re*  : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
               Debtors. : Jointly Administered
:
:
:
---------------------------------------------------------- X

Court File No. 09-CL-7950[2]

*ONTARIO*
**SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**JOINT NOTICE OF (I) SALE OF PATENTS SUBJECT TO CERTAIN
PATENT LICENSES AND (II) REJECTION OF CERTAIN PATENT LICENSES**

---

[1] The debtors in these chapter 11 cases (the "U.S. Debtors"), along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2] The debtors in these CCAA proceedings (the "Canadian Debtors"), include Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

On April [●], 2011, Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and certain of their affiliates (collectively the "Sellers") entered into an agreement (the "Agreement") to convey substantially all of the Sellers' residual patents and certain related assets as described therein (the "Assets") to Ranger Inc., an affiliate of Google Inc., as more fully set forth in the U.S. Debtors' motion for approval of the Sale and other related relief filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on April [●], 2011 (D.I. [●]) (the "U.S. Sale Motion")[3] and the Canadian Debtors' motion record containing materials supporting the request for approval of the Agreement as a stalking horse agreement and the bidding procedures filed with the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") on [●], 2011 (the "Canadian Sale Motion").  The U.S. Sale Motion and Canadian Sale Motion contemplate the rejection or termination of certain outbound and cross patent license agreements in connection with the proposed Sale (as defined in the U.S. Sale Motion).

The sale of the Assets, and the transfer of the Assets to Ranger Inc. (or other Successful Bidder at the Auction), is being made subject to certain patent licenses to which the Sellers are a party, including one or more such licenses to which the Sellers believe you or your predecessor in interest are a party identified in Schedule A hereto (singularly or collectively, the "Scheduled Licenses").  The U.S. Debtors intend to reject any Unknown Licenses[4] related to patents being offered for sale to which the U.S. Debtors are a party pursuant to section 365 of title 11 of the United States Code (as amended, the "Bankruptcy Code") in connection with the proposed Sale. The Canadian Debtors similarly intend to terminate or repudiate any Unknown Licenses related to patents being offered for sale to which the Canadian Debtors are a party in connection with the proposed Sale.

The Auction and sale of the Assets and the rejection of the Unknown Licenses by the U.S. Debtors and the Canadian Debtors will occur in accordance with procedures established by an order of the Bankruptcy Court (the "Bidding Procedures Order"), entered on [●], 2011 [D.I. [●]] and an order of the Canadian Court entered on [●], 2011 (the "Canadian Sales Process Order"), respectively.

License Rejection Procedures.  Ranger Inc. has agreed that the Sellers will transfer the Assets, which include various patents in which the Sellers have an interest, subject to certain patent licenses to such Assets identified to Ranger Inc. by the Sellers, including the Scheduled

---

[3]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the U.S. Sale Motion.

[4]     **"Unknown License"** means any Contract entered into prior to January 14, 2009 (or prior to July 14, 2009 with respect to Nortel Networks (CALA)) pursuant to which any U.S. Debtor or Canadian Debtor is a party and pursuant to which such Debtor grants a license under the Transferred Patents, Specified UK Patents or Jointly Owned Patents, other than (i) the Outbound License Agreements and Cross-License Agreements (each as defined in the Agreement), (ii) the Commercial Licenses (as defined in footnote 5 hereof), (iii) the Disclosed Intercompany Licenses (as defined in the Agreement) and (iv) any intercompany contract, arrangement or understanding that is not a Disclosed Intercompany License but that is in effect and that is similar in kind to the Disclosed Intercompany Licenses (it being understood that any such intercompany contract, arrangement or understanding that grants license rights to the Transferred Patents, Specified UK Patents or Jointly Owned Patents that is broader in scope or longer in duration than the broadest license or longest license to such patents granted under any of the Disclosed Intercompany Licenses is not similar in kind to the Disclosed Intercompany Licenses).

2

Licenses listed on Exhibit A hereto, as well as other defined categories of patent licenses identified in the patent license rejection procedures approved by the Bankruptcy Court and the Canadian Court described below.  In furtherance of the Sale, (i) the U.S. Debtors intend to reject any Unknown Licenses to which the U.S. Debtors are a party pursuant to section 365 of the Bankruptcy Code and (ii) the Canadian Debtors intend to terminate any Unknown Licenses to which the Canadian Debtors are a party.  ***If you have a license to the Assets with the U.S. Debtors that is not listed on Exhibit A hereto and does not fall within one of the below categories of Covered Licenses (as defined below), such license will be rejected as of and conditioned upon the occurrence of the Closing, unless you follow the procedures described under "Unknown Licenses with U.S. Debtors" below.  If you have a license to the Assets with the Canadian Debtors that is not listed on Exhibit A hereto and does not fall within one of the below categories of Covered Licenses, such license will be terminated as of and conditioned upon the occurrence of the Closing, unless you follow the procedures described under "Unknown Licenses with Canadian Debtors" described below.  You should carefully read the Agreement, the U.S. Sale Motion, the Canadian Sale Motion, the Bidding Procedures Order and the Canadian Sales Process Order to understand how your rights may be affected by the U.S. Sale Motion, the Canadian Sale Motion and the Sale.***  If all of the licenses that you have to the Assets with the U.S. Debtors or the Canadian Debtors are listed on Exhibit A hereto, you do not need to take any further action.

By use of these procedures, the Sellers do not intend to reject or terminate the following license agreements related to the patents being offered for sale (collectively, the "Covered Licenses"): (i) Commercial Licenses (as defined in the Stalking Horse Agreement)[5]; and (ii) certain intercompany agreements among the Sellers and their affiliates.  License agreements described in this paragraph will not be identified on Schedule A hereto.

Unknown Licenses with U.S. Debtors

For counterparties to Unknown Licenses to which the U.S. Debtors are a party, the deadline to file and serve an objection to the rejection of any Unknown License (a "U.S. Objection Notice") is **[●], 2011 at [●] p.m. (ET)** (the "License Rejection Objection Deadline").  Such objection shall be served in accordance with the Objection Procedures (as defined below) on the License Objection Notice Parties (as defined below).

For counterparties to Unknown Licenses to which the U.S. Debtors are a party, the deadline to elect to retain license rights under such Unknown License in accordance with section 365(n)(1)(b) of the Bankruptcy Code is **[●], 2011 at [●] p.m. (ET)** (the "Notice of Election Deadline").  To retain such rights, you must file a notice of election to retain such rights (a "Notice of Election") in accordance with the Objection Procedures (as defined below), serve such notice on: the License Objection Notice Parties (as defined below).  The Notice of Election served on the Canadian Debtors, Ernst & Young Inc. in its capacity as monitor of the Canadian Debtors (the "Monitor") and the U.S. Debtors shall attach a written copy of the Unknown License with the Notice of Election.  ***If you are a counterparty to an Unknown License with the U.S. Debtors and do not file and serve a Notice of Election by the Notice of Election Deadline,***

---

[5] "**Commercial Licenses**" means the Pre-Divestiture Commercial Licenses, the Post-Divestiture Commercial Licenses and the End-User Licenses, each of which is defined on Exhibit A hereto.

***you will be deemed to have elected to treat each such Unknown License as terminated under section 365(n)(1)(a) of the Bankruptcy Code.*** The U.S. Debtors and the Stalking Horse Purchaser (or other Successful Bidder) reserve their right to object to any Notices of Election on any and all available grounds, which objections will be heard at the Sale Hearing.

For any Unknown License with the U.S. Debtors that is rejected, the deadline to file a rejection damages claim against the Debtors (each such claim, a "<u>License Rejection Damages Claim</u>") with respect to such rejection will be thirty (30) days following the date of the Closing of the Sale. All License Rejection Damages Claims must attach a written copy of the Unknown License and otherwise comply with the procedures established by the Order Establishing Deadlines For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof [D.I.1280].

<u>Unknown Licenses with Canadian Debtors</u>

If you have an Unknown License with one or more of the Canadian Debtors and wish to object to its termination, you must serve a notice containing your objection using the form posted on the Monitor's website at www.ey.com/ca/nortel (a "<u>Canadian Objection Notice</u>") on or prior to [●] at [●] p.m. ET (the "<u>Canadian License Bar Date</u>") on the License Objection Notice Parties (as defined below). The Canadian Objection Notice served on the Canadian Debtors, the Monitor and the U.S. Debtors shall attach a written copy of the Unknown License with the Notice of Election served on the Canadian Debtors, the Monitor, the U.S. Debtors and Ranger Inc.

To the extent that a counterparty to an Unknown License comes forward and serves a Canadian Objection Notice prior to the Canadian License Bar Date, which Unknown License is established by court order to be a valid Unknown License prior to the Closing (as defined in the Agreement), the Assets will be sold subject to such license.

Except as described in the immediately preceding paragraph, all Unknown Licenses to which the Canadian Debtors are a party are deemed to be terminated and forever barred as of the Closing and any claim arising from such deemed termination shall be an unsecured claim against the Canadian Debtors, which claim shall be deemed a Restructuring Claim as defined in the Claims Procedure Order granted by the Court on July 30, 2009, must be filed within thirty (30) days of the date of Closing and must otherwise be in compliance with that order.

Copies of the Proof of Claim form and Claims Package can be obtained on the Monitor's website at www.ey.com/ca/nortel or by contacting the Monitor by telephone (416-943-4439 or 866-942-7177) or by fax (416-943-2808).

<u>Unknown Licenses with both U.S. Debtors and Canadian Debtors</u>

If you are a counterparty to a patent license with both the U.S. Debtors and the Canadian Debtors, that is subject to rejection and termination under these procedures, to retain your license rights, you must (i) file and serve a Canadian Objection Notice; and (ii) elect to retain your license rights under Section 365(n) of the Bankruptcy Code in accordance with the procedures summarized above and contained in the Canadian Sales Process Order and the Bidding

4

Procedures Order, respectively. You may not attempt to retain license rights in one jurisdiction and terminate such license rights in the other.

License Non-Assignment and Non-Renewal Protections

In addition to the foregoing license rejection procedures, the U.S. Debtors and the Canadian Debtors have agreed as part of the transaction to various limitations and prohibitions on their rights to renew, extend, assign, amend, waive or modify contracts containing licenses to the patents offered for sale, including outbound and cross patent licenses and certain licenses incorporated in Commercial Licenses, Intercompany Licenses (as defined in the Sale Order and the Vesting Order, each as defined below) and certain agreements entered into in connection with the divestiture of Nortel's business units, as set forth in paragraph 28 of the proposed Sale Order annexed to the U.S. Sale Motion (the "Sale Order") and paragraph 14 of the proposed Approval and Vesting Order annexed to the affidavit of [●] contained in the Canadian Sale Motion (the "Vesting Order"). ***All counterparties to contracts with the Sellers should carefully read the U.S. Sale Motion and the proposed Sale Order annexed thereto and the Canadian Sale Motion and the proposed Approval and Vesting Order attached to the affidavit of [●] contained in the Canadian Sale Motion.***

Objections, Election Notices. Pursuant to the Bidding Procedures Order and the Canadian Sales Process Order, all U.S. Objection Notices, Canadian Objection Notices and all Notices of Election must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in the case of an Unknown License to which the U.S. Debtors are a party, filed with the Clerk of the Bankruptcy Court, 824 Market Street, Wilmington, Delaware 19801 by no later than the License Rejection Objection Deadline or the Notice of Election Deadline, as applicable, in conformity with the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware; (d) in the case of an Unknown License to which the Canadian Debtors are a party in the form of Objection Notice available on the Monitor's website at www.ey.com/ca/nortel; and (e) served so as to be received on or before the License Rejection Objection Deadline or the Notice of Election Deadline, as applicable, by the following: (i) counsel to the U.S. Debtors: Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Fax: (212) 225-3999 (Attention: James L. Bromley and Lisa M. Schweitzer) and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, Delaware 19801, Fax: (302) 658-3989 (Attention: Derek C. Abbott), (ii) counsel to Ranger Inc.: Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019, Fax: (212) 403-2000 (Attention: Philip Mindlin, Adam O. Emmerich and Benjamin M. Roth) and Torys LLP 79 Wellington Street West, Suite 3000, Box 270, TD Centre, Toronto, Ontario, M5K 1N2, Fax: (416) 865-7380 (Attention: Michael Rotsztain and Adam Slavens), (iii) counsel to the Committee: Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Fax: (212) 872-1002 (Attention: Fred Hodara, Stephen Kuhn and Kenneth Davis) and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attention: Christopher M. Samis), (iv) counsel to the Bondholder Group: Milbank, Tweed, Hadley & McCloy, One Chase Manhattan Plaza, New York, New York 10006, Fax: (212) 822-5735 (Attention: Roland Hlawaty), (v) counsel to the Canadian Debtors, Ogilvy Renault LLP, Attn: Jennifer Stam, Royal Bank Plaza, South Tower, Suite 3800, 200 Bay Street, Toronto, Ontario, Canada, Facsimile: (416) 216-3930, (vi) the Monitor: Ernst & Young Tower, 222 Bay Street, P. O. Box 251,

Toronto, ON M5K 1J7 Canada (Attention: Sharon Hamilton) Fax: (416) 943-3300 (vii) counsel to the Monitor, Goodmans LLP, Attn: Jay Carfagnini and Joseph Pasquariello, Bay Adelaide Centre, 333 Bay Street, Suite 3400, Toronto, ON M5H 2S7, Facsimile: (416) 979-1234, and (viii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Fax: (302) 573-6497 (Attention: Patrick Tinker) (collectively, the "<u>License Objection Notice Parties</u>"). Any objection to the rejection or termination of an Unknown License must specify the grounds for such objection. Only those objections made in compliance with the foregoing requirements will be considered by the Bankruptcy Court or the Canadian Court.

<u>Reservation of Rights</u>. The procedures summarized in this notice are subject in all respects to the procedures set forth in the U.S. Sale Motion and the Canadian Sale Motion and approved in the Bidding Procedures Order and the Canadian Sales Process Order. Nothing contained in this notice is to be construed as an admission by the Sellers or Ranger Inc. as to the character of any document denominated as an agreement, as an executory contract, or to the rights of any parties thereto. Subject to the consent of Ranger Inc., in its sole and absolute discretion, or the consent of another successful bidder after an auction, as applicable, the Sellers reserve the right to withdraw any Unknown License from the contracts to be rejected or terminated, in accordance with the U.S. Sale Motion, the Canadian Sale Motion, the Bidding Procedures Order and the Canadian Sales Process Order, at any time prior to the occurrence of the Closing.

<u>Documents</u>. This notice is a summary only and is subject to the full terms and conditions of the Agreement, the Bidding Procedures Order and the Canadian Sales Process Order which shall control in the event of any conflict, and the U.S. Debtors and the Canadian Debtors encourage parties in interest to review such documents in their entirety.

Copies of the Sale Motion, the Stalking Horse Agreement and the Bidding Procedures Order (including the Bidding Procedures approved by the Bankruptcy Court) may be examined by interested parties between the hours of 8:00 a.m. and 4:00 p.m. (ET) at the office of the Clerk of the Court, 824 Market Street, Wilmington, Delaware 19801, or by appointment during regular business hours at the offices of the U.S. Debtors' attorneys: Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attention: James L. Bromley and Lisa M. Schweitzer. Additionally, copies of the foregoing may be downloaded from the Court's docket at www.deb.uscourts.gov and from the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC, at http://dm.epiq11.com/nortel. Copies of the Agreement, Canadian Sale Motion and Canadian Sales Process Order (including the Bidding Procedures approved by the Canadian Court) can be viewed at the Monitor's website at http://www.ey.com/ca/nortel/ or by contacting the Monitor by telephone (1-416-943-4439 or 1-866-942-7177) or by fax (1-416-943-2808).

Dates set forth in this notice are subject to change, and further notice of such changes may be provided through announcements in open court and/or the filing of notices and/or amended agendas. Parties in interest are encouraged to monitor the electronic court docket, the noticing agent website and/or the Monitor's website for further updates.

Dated: May [●], 2011
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the U.S. Debtors
and U.S. Debtors in Possession*

-and-

OGILVY RENAULT LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J2Z4 CANADA

Derrick Tay LSUC# 21152A
Telephone: (416) 216-2327
Email: dtay@ogilvyrenault.com

Jennifer Stam LSUC# 46735J
Telephone: (416) 216-4832
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930
Lawyers for Canadian Debtors

**Exhibit A**

**Definition of Commercial Licenses**

"**Pre-Divestiture Commercial License**" means any Contract entered into prior to the Petition Date in the ordinary course of business and, with respect to each Divested Business, any Contract entered into after the Petition Date but prior to the Divestiture Date in the ordinary course of business of such Divested Business, that: (1) provides for: (i) the manufacture of any Nortel Product by, for or on behalf of, or under authority of, any Seller or any Affiliate of any Seller, (ii) the sale, offer for sale, importation, distribution and/or lease (or in the case of software, licensing) of any Nortel Product by, for or on behalf of, or under authority of, any Seller or any Affiliate of any Seller, (iii) the servicing, including support, maintenance and installation, of any Nortel Product by, for or on behalf of, or under authority of, any Seller or any Affiliate of any Seller and use of Nortel Products in connection therewith, (iv) the provision by, for or on behalf of, or under authority of any Seller or any Affiliate of any Seller of Nortel Services and use of Nortel Products in connection therewith, (v) the right to interoperate or interface (excluding air interfaces) with any Nortel Product and to use, make, sell, offer for sale, import, distribute and/or lease (or in the case of software, license), and support and maintain, the interface or the interoperability information (or software that provides the interface or interoperability), including as part of a Third Party product (but solely to the extent of the interface or the interoperability information); or (vi) research and/or development, and the right to make, use, sell, offer for sale, import, lease and support products, inventions or technologies resulting from such research and/or development, provided that (A) such Contract is with at least one of the Sellers or one of their Affiliates, (B) there is no ongoing performance of research and/or development by Sellers or their Affiliates under such Contract as of the date hereof, (C) such contract includes a defined scope for the research and development, (D) the scope of any Patent license granted under such Contract is limited to the products, inventions or technologies developed as a result of the research and development within the defined scope for such Contract, and (E) such Contract (w) is with a university or research institution, (x) is a joint research and/or development agreement, (y) provided for research and/or development by at least one of the Sellers or one of their Affiliates or (z) provided for research and/or development that was directed at Nortel Products or was otherwise for or on behalf of Sellers or their Affiliates; and (2) included a non-exclusive grant of rights under any of the Transferred Patents, the Jointly Owned Patents or the Specified UK Patents limited to any of the activities referred to in clauses (i) - (vi) above.

"**Post-Divestiture Commercial License**" means with respect to each Divested Business, any Contract entered into with Sellers or Affiliates of the Sellers, on or after the Divestiture Date for such Divested Business, in connection with (i) performance required by Retained Contracts (including, for the avoidance of doubt, the Retained Contracts themselves) or (ii) sale, offer for sale, importation, distribution and/or lease of Inventory; in each case, where such Contract includes a non-exclusive grant of rights under any of the Transferred Patents, the Jointly Owned Patents, or the Specified UK Patents limited in time and scope to activities that would be permitted after the Closing Date pursuant to the terms of the Closing Date License Agreement.

"**End-User License**" means any Contract entered into by, on behalf of or under authority of Sellers or their Affiliates prior to the date hereof and, to the extent that would be permitted after the Closing pursuant to the Closing Date License Agreement, after the date hereof, including any click-through or shrink wrap license, that (i) accompanies the sale, servicing (including support, maintenance and installation) or licensing of any Nortel Product to an end user or customer in the ordinary course of business, and (ii) includes a non-exclusive grant of a license to the customer or end user under any of the Transferred Patents, the Jointly Owned Patents, or the Specified UK patents, where such license is limited to the right to use such Nortel Product.