

Industry Canada    Industrie Canada



APR 1 3 2011

The Honourable Kevin Gross
United States Bankruptcy Judge
United States Bankruptcy Court for the District of Delaware
824 North Market Street
6th Floor
Wilmington, DE 19801

> ### *In re* Nortel Networks Inc., et al:  Motion to approve sale of Internet Numbers
> ### Case No. 09-10138 (KG)

I am writing in my capacity as Assistant Deputy Minister, Strategic Policy Sector of the Department of Industry, a department of the Government of Canada. My duties encompass responsibility for telecommunications policy, including Internet and Domain Name System policy.  Within the scope of these duties, my sector serves as the Government of Canada liaison with the Internet Corporation for Assigned Names and Numbers (ICANN), American Registry for Internet Numbers (ARIN), the Canadian Internet Registration Authority (CIRA), and other international counterparts.

This submission is in support of ARIN's interventions related to the legal underpinnings of the current governance structure of Internet numbers, whether legacy numbers or otherwise, and to bring to your attention substantive governmental and policy concerns that arise from the sale of Internet numbers in the manner and on the terms suggested in the Debtor's Motion, the Proposed Order annexed to the Motion, as well as the Asset Sale Agreement.  Internet Numbers are among the fundamental building blocks of the Internet.  Their use in accordance with the policies adopted by ICANN, ARIN and the regional registries provides essential assurances respecting the ultimate identity and accountability of Internet users.

The Government of Canada recognizes the importance of a timely resolution of these matters before the insolvency court, but has serious reservations concerning several provisions of the sale of Internet Numbers as currently proposed.

First, we note that in footnote 6 on page 5 of the Motion, there is a reference to "Legacy Numbers" and an assertion that such numbers were "assigned" to NNI.  It is the position of the Government of Canada that the use of "assign" is colloquial in the factual context and is misleading in law.  It is our view that Internet Numbers never became the property of the persons who were authorised to use them, nor were they ever free of the conditions governing their use.

...2



- 2 -

We take particular exception to the assertions in paragraph L of the Proposed Order. While rights to use Internet Numbers are legal and enforceable, they do not constitute property. For property rights to apply, it would have been necessary for NNI or its predecessors to have acquired the numbers in a transaction that transferred title in a manner recognized by law. We are aware of no such circumstances, and do not believe that legacy numbers in Canada are property of the person authorised to use them.

As we understand the Proposed Order, the essential value of the Internet Numbers being "sold" is their status as "legacy numbers," as there seems to be an underlying assumption that such numbers are not subject to the governance structures that have been put in place in the years subsequent to the allocation of those numbers to Bell Northern Research (BNR) – the predecessor of NNI. In essence, much of the value that is placed on the legacy numbers derives not from their ability to connect users to the Internet, but from the underlying theory that they are unencumbered and unrestrained by the current Internet governance structures created subsequent to their initial allocation to BNR. Under this theory, such numbers would be, in effect, "black numbers." We are, as a government, deeply concerned with any such result.

The governing principle of the use of Internet numbering is that numbers that are not used are to be made available to other users. The recognition of a property right in Internet Numbers would imperil the cooperative basis for Internet use, and potentially lead to hoarding and speculation in Internet Numbers and the creation of artificial scarcity to drive up the monetized value of those numbers. As noted in the Debtor's Motion (see paras. 7 – 8), numbers will become increasingly scarce prior to the widespread adoption of Ipv6 numbers over time.

The existence of black numbers would also pose a threat to public order and national security. The present requirements on Internet use and registration permit law enforcement and national security authorities to identify the actual users of Internet Numbers, which permits the detection and suppression of crime, such as child pornography and electronic fraud, and threats to national security, including espionage and terrorism. Black numbers could permit end users to escape identification and so hinder the investigation of crime and security threats.

Major and costly efforts are being made in all developed countries to suppress spam, misleading or fraudulent claims made over the Internet, identity theft and the theft of personal and business information. Black numbers would mask the activities and identities of the perpetrators of such activities. This is of great concern to this country, which has recently adopted anti-spam legislation that is designed to suppress such activity.

…3

- 3 -

      Canada has a history of support for the development of the Internet as a means of communications that facilitates family and personal relationships, business transactions, consumer and business information, and government information and transactional services.  We are very concerned that, if the Proposed Order is issued in its current form, the repercussions could negatively impact the fundamental principles upon which the Internet has been built and potentially put at risk the social, economic and governmental benefits that have been the hallmark of its development to date.

      We thank the Court for considering this submission.


Marta Morgan

Assistant Deputy Minister

Strategic Policy Sector