# EXHIBIT B

**Ray Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
:
*In re*                                                        :    Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                             :    Case No. 09-10138 (KG)
:
          Debtors.                         :    Jointly Administered
:
:
---------------------------------------------------------------X

**DECLARATION OF JOHN RAY IN SUPPORT OF
DEBTORS' MOTION FOR AN ORDER (I) APPROVING NNI'S ENTRY
INTO PURCHASE AND SALE AGREEMENT; (II) AUTHORIZING THE
SALE OF NNI'S RICHARDSON CAMPUS FREE AND CLEAR OF ALL
ENCUMBRANCES; (III) APPROVING NNI'S ENTRY INTO THE NORTEL
LICENSE; (IV) APPROVING THE NOTICE PROCEDURES; AND
<u>(V) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL</u>**

I, John J. Ray, declare under penalty of perjury as follows:

1.      On January 6, 2010, upon motion of Nortel Networks Inc. ("<u>NNI</u>") and the other above-captioned debtors (together, the "<u>Debtors</u>"), I was appointed by this court as Debtors' Principal Officer, *nunc pro tunc* to December 7, 2009. I am also Senior Managing Director and the sole member of Avidity Partners, LLC.

2.      Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, information supplied to me by other members of the Debtors' management and professionals, or learned from my review of relevant documents or are based

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

upon my opinion, which is founded upon my experience and knowledge of the Debtors' operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this declaration.

3. I submit this declaration in support of the Debtors' motion (the "<u>Sale Motion</u>")[2] for an order (i) approving NNI's entry into that certain purchase and sale agreement dated as of April 15, 2011 between NNI (the "<u>Seller</u>") and Pillar Commercial, LLC (together with any designated purchasers, "<u>Pillar</u>" or the "<u>Purchaser</u>") (attached to the Sale Motion as <u>Exhibit A</u>, the "<u>Purchase and Sale Agreement</u>") for the sale of the premises at 2201 and 2221 Lakeside Boulevard, Richardson, Texas and certain related assets (the "<u>Property</u>"), (ii) authorizing the sale of the Property (the "<u>Sale</u>", together with the transactions contemplated by the Purchase and Sale Agreement, the "<u>Transactions</u>") free and clear of all encumbrances pursuant to section 363 of the Bankruptcy Code; (iii) approving NNI's entry into the license agreement between NNI and the Purchaser for the license by the Purchaser to NNI of certain areas of the Property (substantially in the form attached to the Sale Motion as <u>Exhibit G</u>, the "<u>Nortel License</u>"); (iv) approving the Notice Procedures; (v) authorizing the Debtors to file certain documents under seal; and (vi) granting them such other and further relief as the Court deems just and proper.

4. I have participated in or was informed of Nortel's exploration of opportunities to sell the Property that have since resulted in the negotiations and execution of the Purchase and Sale Agreement between NNI and the Purchaser.

5. The Property is located at 2201 and 2221 Lakeside Boulevard in Richardson, Texas (the "<u>Land</u>"). It includes one sixteen-story high rise building containing approximately 413,319 net rentable square feet (the "<u>Tower</u>") and a research and laboratory building containing

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Sale Motion.

approximately 394,098 net rentable square feet (the "Lab") situated on approximately 18.37 acres of land (the improvements on the Land, including the Tower and the Lab, together with the Land, collectively, the "Premises").

6.  The Premises has historically functioned as the Debtors' and Nortel's United States headquarters.  NNI and certain of the purchasers of Nortel's various business units continue to occupy portions of the Premises, including under leases entered into with such purchasers in connection with the various asset sales approved by this Court.  NNI and such purchasers will continue to use and/or occupy portions of the Premises after the Closing of the Sale pursuant to the terms of the purchasers' existing leases, the Assignment and Assumption Agreement and the Nortel License.

7.  NNI has marketed the Property for approximately eighteen months, using two separate marketing campaigns, and has aggressively negotiated a purchase agreement with respect to the Property on two separate occasions.  The Purchase and Sale Agreement with Pillar is the culmination of these efforts, and the Seller believes that the offer to purchase the Property embodied in the Purchase and Sale Agreement is the highest or otherwise best offer available for the Property.

8.  NNI began exploring a divestiture of the Property in 2009.  An interested party immediately surfaced and NNI began negotiating the sale of the Premises to such potential purchaser.  In November and December 2009, the Seller also contacted sixty-five end users determined to have a potential need for the amount of space available at the Premises and the financial ability to close a transaction with respect to the Property.   These additional marketing efforts did not lead to any firm offers.  Moreover, after several unsuccessful attempts to reach an agreement, negotiations with the potential purchaser broke down in December 2010.

9. The Debtors began marketing the Property again in earnest in January 2011, retaining CB Richard Ellis ("CBRE") to lead those efforts. In conjunction with the Sale Motion, the Debtors also have filed a declaration by Eric Mackey of CBRE describing CBRE's marketing efforts with respect to the Property.

10. Following two rounds of bidding, in March 2011, NNI determined that Pillar's bid represented the highest or otherwise best offer available for the Property. Since that time, NNI has engaged in good faith negotiations with the Purchaser on the terms of the sale, which negotiations resulted in the Purchase and Sale Agreement and Nortel License.

11. I believe that the consideration to be provided for the Property under the Purchase and Sale Agreement is the result of significant marketing efforts and represents the highest or otherwise best offer available for the Property, and that further marketing of the Property will not yield a better offer.

12. As part of the Sale Motion, the Debtors seek authority to file certain schedules to the Purchase and Sale Agreement under seal. These schedules contain confidential and proprietary information related to certain of the purchasers of Nortel's business units.

13. Accordingly, I believe that it is in the best interests of NNI and its creditors for the Court to approve the Transactions, without further marketing of the property, and to allow the Seller to file certain schedules containing confidential and proprietary information under seal.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: April 15, 2011
      New York, New York

_____
John J. Ray III