## EXHIBIT G

**Proposed Form of Nortel License**

## FORM OF LICENSE AGREEMENT

This license agreement (the "License") made as of the ___ day of [•], 2011, between Pillar Commercial, LLC, a Texas limited liability company, as licensor (the "Licensor"), and Nortel Newtorks Inc., a Delaware corporation, as licensee (the "Licensee").

### W I T N E S S E T H :

**WHEREAS:**

1.    Pursuant to that certain Purchase and Sale Agreement, dated as of the date hereof, between Licensee, as seller, and Licensor, as purchaser (the "PSA"), Licensor acquired from Licensee the fee simple estate in and to that certain plot, piece and parcel of land known as 2201 and 2221 Lakeside Boulevard, Richardson, Texas, together with the buildings and all other improvements located on the land (the improvements on the land, including the buildings, together with the land, collectively, the "Premises");

2.    Licensee and certain of its Affiliates (as defined below) are debtors-in-possession under Title 11 of the United States Code (the "Bankruptcy Code"), having generally commenced cases under Chapter 11 of the Bankruptcy Code on January 14, 2009 by filing voluntary petitions for relief (the "Bankruptcy Case") in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

3.    Licensor desires to license the Licensed Space (as defined below) to Licensee, and Licensee desires to license the Licensed Space from Licensor, upon and subject to the terms and conditions of this License;

4.    Licensor and Licensee acknowledge and agree that the execution and delivery of this License is being made at arms' length and in good faith and without intent to hinder, delay or defraud creditors of Licensee or its Affiliates (as defined below); and

5.    Approval of the Bankruptcy Court was required as a condition to effectiveness of this License and on [•], the Bankruptcy Court in the Bankruptcy Case issued an order authorizing and approving, among other things, the execution and delivery of this License;

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein the parties agree as follows:

### ARTICLE I

### Grant of License and Term.

Section 1.1    Licensor does hereby grant to Licensee upon the terms and conditions of this License (i) an exclusive license to use a portion of the Premises more particularly set forth in Exhibit A attached hereto, consisting of segregated and demised IT rooms (the "Exclusive Space"), (ii) a non-exclusive license in common with Licensor to use a portion of the Premises more particularly set forth in Exhibit A attached hereto (the "Non-Exclusive Space", together with the Exclusive Space, the "Licensed Space") and (iii) a non-exclusive right in common with

1

the Licensor and other occupants of the Premises to use the common areas, all hallways, ingress and egress points and other common employee service and office areas, including without limitation, a cafeteria (the "Common Areas"). The license granted hereunder shall be for a term (the "Term") commencing on the License Commencement Date (as defined in Section 2.2 below) and ending on December 31, 2011, unless such Term shall sooner terminate, cease or expire, including but not limited to pursuant to Licensee's exercise of its rights under Article XI of this License (the "License Termination Date"). This License shall apply only to the Licensed Space, and during the Term Licensee shall have no rights to or in any part of the Premises except the Licensed Space and the Common Areas.

Section 1.2    Licensor and Licensee shall cooperate to ensure that neither party's respective use and operations at the Premises interferes with the use and operations at the Premises by the other party, all in conformance with the terms of this License.

## ARTICLE II

### Fees and Rent.

Section 2.1    Commencing on the License Commencement Date (as defined below), Licensee shall pay to Licensor rent ("Rent") in the amount of $[12.00] per rentable square foot per annum, multiplied by the rentable square feet of the Licensed Space (which, as of the date hereof, the parties agree is [41,000] rentable square feet). The parties hereby acknowledge that (i) such Rent is a good-faith estimate of the parties, taking into account Licensor's anticipated costs of operating the Premises, including, but not limited to, taxes, Licensee's anticipated usage of electricity and other utilities and services to be provided by Licensor hereunder, (ii) no separate charges for any such items shall be imposed by Licensor or payable by Licensee hereunder and (iii) Rent shall not include any charge for "base rent" and that Licensee shall not be responsible for paying any "base rent" hereunder. No adjustments to Rent will be required or permitted hereunder, either pursuant to annual true-ups or otherwise, except that Rent due hereunder shall be decreased in accordance with any Surrender (as defined below) by reducing the total rentable square feet of the Licensed Space by the total rentable square feet of the Surrendered Space (as defined below) and recalculating Rent accordingly.

Section 2.2    On the Closing Date (as defined in the PSA) (the "License Commencement Date"), Licensee shall take possession, or be deemed to have taken possession, of the Licensed Space and shall pay to Licensor a mutually agreed-to sum for the first month's Rent, pro-rated based upon the number of days before and after the License Commencement Date in the month during which the License Commencement Date occurs. In the event that the License Termination Date shall occur on a date other than the last day of any calendar month, Rent for such month shall be pro-rated on a per diem basis. Any Rent recalculation performed as a result of a Surrender in accordance with Section 2.1 will become effective immediately upon such Surrender, with Licensor remitting to Licensee any excess Rent prepaid for the month in which such Surrender occurs based upon the number of days remaining in the month of such Surrender (the "Excess Rent"), or such Excess Rent shall be used to offset the subsequent month's Rent payment, as the case may be.

2

Section 2.3    Except as otherwise set forth herein, Rent shall be paid on the first of each month of the Term, without notice, demand, deduction or offset by Licensee, in lawful money of the United States of America by wire transfer of immediately available funds to the account set forth on Schedule 2.

ARTICLE III

Licensed Space Use.

Section 3.1    Licensee shall use the Licensed Space in a manner generally consistent with its use of the same immediately prior to the date hereof.  Licensee shall use the Common Areas in a manner generally consistent with (i) the purposes for which the Common Areas were intended and in a manner consistent with the use prior to the date hereof or (ii) transitioning Licensee's business out of the Premises; provided, that no fixtures, furniture or other personal property of Licensee shall be permitted to be stored in the Common Areas.

Section 3.2    Each of Licensee and Licensor shall at all times act, conduct its business and control its agents, employees, invitees and visitors in such manner as not to create any nuisance, or unreasonably interfere with, annoy or disturb the other party, the other party's business operations or the other party's employees, invitees, tenants, licensees and visitors (as applicable).

Section 3.3    Licensee shall have access to the Licensed Space twenty-four (24) hours per day and seven (7) days per week.

ARTICLE IV

Alterations and Personal Property.

Section 4.1    Licensee shall not make any changes, additions, improvements, alterations or other physical changes to the Licensed Space or any portions thereof, or any of the systems therein or thereon (collectively, "Alterations", and individually, an "Alteration"), without the prior written consent of Licensor.

Section 4.2    All personal property, including, without limitation, furniture and equipment installed in or located in the Licensed Space prior to Licensee's possession of the Licensed Space is the property of Licensee, except to the extent that such property was transferred to the Licensor as set forth more fully in the PSA.  Notwithstanding anything herein to the contrary, Licensee shall have the right at any time and from time to time during the Term, without obtaining the consent of Licensor, to remove and relocate from the Licensed Space all property that is owned by the Licensee, at Licensee's sole cost and expense.

ARTICLE V

Repairs and Maintenance.

Section 5.1    Except in the event of damage caused by Licensee or its agents, employees, invitees or visitors (in which event the costs of maintenance, repair and replacement

3

shall be borne by Licensee), Licensor shall pay any and all charges, fees, costs, sums or expenses which Licensor incurs on or after the License Commencement Date in connection with the maintenance and repair of the Licensed Space and all equipment, fixtures, installations and appurtenances contained therein. Notwithstanding the foregoing, in no event shall Licensor have any obligation to Licensee to maintain, repair, replace or insure Licensee's property. Licensor shall also be responsible for all charges, fees, costs, sums or expenses incurred in connection with the maintenance, repair or replacement of the following: (i) the structural portions of the Premises, the roof and roof membranes of the buildings, foundations, exterior walls and windows of the Premises, (ii) all major systems of the buildings, such as HVAC, mechanical, electrical, plumbing and sprinkler systems at the Premises, (iii) repaving, striping and all other maintenance, repair and replacement of driveways and parking areas at the Premises, (iv) maintaining and repairing the sidewalks abutting and on the Premises, and (v) keeping those sidewalks, driveways and parking areas free of rubbish, snow, ice and other obstructions, and otherwise in a safe and clean condition; provided, that the parties agree that Licensor shall have no obligation to maintain, repair or replace any of the items set forth in (i) through (v) above to a condition or quality better than such condition or quality existed as of the License Commencement Date. In the performance of any maintenance, repairs or replacements, Licensor shall take reasonable measures to minimize interference with the conduct of Licensee's business in the Licensed Space. Licensor shall be required to promptly repair any damage to the Licensed Space or Licensee's personal property caused by Licensor's maintenance, repair or replacement activities. Notwithstanding anything herein to the contrary, Licensor shall not be responsible for any repairs or replacements which are caused by the misuse or negligence of Licensee, its agents, employees or representatives.

## ARTICLE VI

### Services.

Section 6.1    Licensor shall provide to Licensee all services set forth in <u>Schedule 1</u>. Licensee's share of the cost of the License Services shall be deemed included in Rent and no separate charge for services shall be imposed hereunder.

Section 6.2    In addition to the services described in <u>Schedule 1</u>,

(a)    <u>Parking</u>. Licensor shall provide to Licensee for the nonexclusive use of Licensee's employees and invitees parking spaces in a ratio of 3.7 parking spaces per 1,000 rentable square feet of Licensed Space. As of the date hereof, the parties agree that Licensee is entitled to [152] parking spaces, which shall change in accordance with any Surrender as set forth herein. Parking will be provided in an equitable manner and Licensee's employees and invitees shall have nonexclusive access to the parking areas twenty-four (24) hours a day, seven (7) days a week on a first-come, first-served basis with all other occupants of the Premises (but subject to reasonable security and other requirements of Licensor that are applicable to all users of such parking areas).

(b)    <u>Directory Listing</u>. Licensor shall list Licensee's name in the buildings' main tenant directories.

4

## ARTICLE VII

### Condition of the Licensed Space.

Section 7.1    Licensee shall take and hereby accepts the Licensed Space and all equipment, fixtures, installations and appurtenances contained therein in an "AS IS, WHERE IS" condition, WITH ALL FAULTS, as of the License Commencement Date.

## ARTICLE VIII

### End of Term.

Section 8.1    Licensee shall vacate the Licensed Space in broom clean and in good order and the same general condition that the Licensed Space existed on the License Commencement Date, ordinary wear and tear and damage due to casualty excepted and, subject to any approved Licensee's Alterations, and Licensee shall, on or prior to the License Termination Date (1) remove all of Licensee's personal property and all other property and effects of Licensee and all persons claiming through or under Licensee from the Licensed Space and (2) repair all damage to the Licensed Space, if any, occasioned by such removal, ordinary wear and tear excepted. If the date upon which the Term shall expire, terminate or end shall fall on a Sunday or holiday, then Licensee's obligations under the first sentence of this Article VIII shall be performed on or prior to the Saturday or business day immediately preceding such Sunday or holiday. Licensee's obligations under this Article VIII shall survive the License Termination Date.

## ARTICLE IX

### Assignment and Sublicensing.

Section 9.1    Licensee shall not assign its rights or delegate its duties under the License (whether by operation of law, transfer of interest or otherwise) or permit the Licensed Space or any part thereof to be occupied or used by any other person or entity without the prior written consent of Licensor (which Licensor may withhold, condition or delay in its sole discretion); provided, that Licensee shall be permitted to assign its rights and delegate its duties under this License to any successor entity created as a result of a plan of reorganization or liquidation under the Bankruptcy Code or other order of the Bankruptcy Court.

## ARTICLE X

### Segregation and Demising.

Section 10.1    If Licensor shall require segregation and demising of the Licensed Space from the remainder of the Premises ("Segregation Work"), Licensor shall undertake such Segregation Work at its sole cost and expense, in accordance with plans and specifications prepared by Licensor, at its sole cost and expense, and approved by Licensee, which approval shall not be unreasonably withheld, conditioned or delayed. Licensor shall obtain all necessary governmental permits and certificates necessary for the commencement and prosecution of such

5

Segregation Work including, without limitation, a temporary or permanent certificate of occupancy, if required. Licensor hereby agrees that all such Segregation Work shall be performed in accordance with the terms of this License, and, should Licensor require such Segregation Work, that it shall be diligently completed in a good and workmanlike manner, using materials consistent with the quality of the buildings and Premises. In support of any Segregation Work required by Licensor, the parties shall cooperate to provide relevant information not of a proprietary or confidential nature regarding the buildings and Premises to each other and consult with each other and use commercially reasonable efforts to develop and agree upon a work scope, plan and schedule for such Segregation Work, taking into account all relevant factors in order to minimize disruption to the business of the Licensee.

Section 10.2  Licensor's obligation to perform any Segregation Work which it requires under this Article X shall further include the obligation to provide that the building systems and utilities (including, without limitation, telecommunication, cable, IT, HVAC, fire alarm and security systems) serving the Premises and the business assets and equipment of Licensee are connected and operating in such a manner as to provide Licensee with substantially the same access to such building systems and utilities as on the License Commencement Date.

ARTICLE XI

Licensee Surrender Option.

Section 11.1  Licensee shall have the right to surrender to Licensor without payment of any fee or penalty (such surrender, a "Surrender") all or any portion of the Licensed Space (such surrendered space, the "Surrendered Space") from time to time upon not less than thirty (30) days prior written notice (the "Licensee Surrender Notice") to Licensor. The Licensee Surrender Notice shall contain a description of the Surrendered Space. From and after the date on which a Surrender is effective, this License (other than any provisions hereof that expressly survive termination) shall no longer apply to the Surrendered Space and Rent shall be decreased accordingly in accordance with Section 2.1 and Section 2.2.

ARTICLE XII

Licensor Access.

Section 12.1  Licensor and its employees, contractors and agents shall have the right, on no less than forty-eight (48) hours prior notice to Licensee (except in the case of an emergency), from time to time throughout the Term, to enter any portion of the Licensed Space during business hours to examine the same, to show the same to prospective purchasers, mortgagees, lessees, or licensees and to make such repairs, alterations, improvements or additions as Licensor may deem necessary or desirable to the Licensed Space or any other portion of the Premises; provided that such access shall be subject to (a) reasonable accommodations for proprietary and confidential information of the Licensee and (b) Licensee's right to designate a representative to accompany Licensor's representative for such period of access. Notwithstanding the foregoing, in the event of an emergency, Licensor shall have the right to enter upon and inspect the Licensed Space at any time provided that Licensor shall use commercially reasonable efforts to provide reasonable prior telephonic notice to a designated representative of Licensee and shall

6

use reasonable efforts not to materially interfere with the business and operations of the Licensee or Licensee's property (but taking into account the nature of the emergency). None of the foregoing shall give rise to any decrease or abatement of Rent, provided that any work performed or inspections or installations made shall be made in a manner to minimize disruption to the business and operations of Licensee.

Section 12.2   The exercise by Licensor or its agents or by the holder of any mortgage of any right reserved to Licensor in this Article XII shall not constitute an actual or constructive eviction, in whole or in part, or impose any liability upon Licensor, or its agents, or upon the holder of any such mortgage, by reason of inconvenience or annoyance to Licensee, or injury to or interruption of Licensee's business, or otherwise; provided that Licensor shall take reasonable measures to minimize interference with the conduct of Licensee's business and operations in the Licensed Space and damage to the Licensed Space.

## ARTICLE XIII

### Legal Compliance.

Section 13.1   Licensee agrees that its use of the Licensed Space and the installation, operation and maintenance of Licensee's personal property and equipment shall at all times, at Licensee's expense, comply with all applicable laws, regulations and ordinances ("Legal Requirements") and the orders and requirements of all government authorities, but Licensee shall have no duty to cure any violations (i) not brought about by Licensee or anyone claiming through or under Licensee or (ii) which arose prior to the License Commencement Date. Licensor agrees that its use of the Premises and the installation, operation and maintenance of Licensor's personal property and equipment shall at all times comply with any and all Legal Requirements, but Licensor shall have no duty to Licensee to cure any violations (i) which arose prior to the License Commencement Date and (ii) which Licensee had knowledge of and chose not to cure.

Section 13.2   In addition to the aforesaid, Licensee shall (i) not generate, store, install, dispose of or otherwise handle any Hazardous Materials (as defined in the PSA) in the Licensed Space in any negligent or unsafe manner or in any manner contrary to any applicable Legal Requirement; (ii) not install or place in the Licensed Space any asbestos or asbestos-containing materials; (iii) at Licensee's cost and expense, remove, clean-up and remedy any Hazardous Materials in the Licensed Space to the extent and in the manner required by any applicable Legal Requirement, if the presence of such Hazardous Materials resulted from the direct action of Licensee during the Term. Licensee shall not remove, clean-up, abate, or disturb any asbestos or asbestos-containing materials, or Hazardous Materials, in or about the Licensed Space under any other circumstances.

## ARTICLE XIV

### Casualty and Condemnation.

Section 14.1   If (i) the Licensed Space is materially damaged by fire or other casualty or (ii) any building in which the Licensed Space is located is totally or substantially damaged or destroyed as a result of fire or other casualty and (in either such case) an independent architect

7

retained by Licensor determines in good faith that the Licensed Space and/or building(s) cannot be rebuilt and/or repaired or restored within the lesser of (a) two (2) months and (b) the remaining term of this License, then in any of the above cases, Licensor or Licensee may, at its option (to be exercised by written notice to the other within ten (10) days following delivery of the report of the independent architect) elect to terminate this License retroactively as of the date of fire or other casualty; and neither party shall have any further obligations with respect to this License, including, without limitation, any obligation of Licensee to pay any Rent accruing after the date of such casualty.  Notwithstanding the foregoing, in such circumstances Licensor shall reimburse Licensee for any portion of Rent paid by Licensee in advance with respect to any portion of the term of this license occurring after the date of such casualty.  If neither Licensee nor Licensor elects to terminate this License, it will continue in full force and effect, Rent will be abated as of the date of the fire or other casualty and the Licensor will proceed without delay to repair, replace or rebuild the Licensed Space, in accordance with all governmental requirements in a good and workmanlike manner so that the Licensed Space (not including Licensee's personal property) is restored to the condition that it was in immediately prior to the damage and/or destruction (subject to any modifications imposed by governmental requirements).  Licensee has no obligation to repair or rebuild any part of the Licensed Space if damaged.  Once the Licensed Space has been rebuilt and/or repaired or restored in accordance with the foregoing requirements and the Licensee re-occupies the Licensed Space, the Licensee's obligation to pay Rent will re-commence.

Section 14.2   In the event that all or a substantial portion of the Licensed Space or the Premises shall be acquired or expropriated by any legal authority or for public use or purpose, this License shall automatically terminate upon such taking together with any and all of Licensor's and Licensee's obligations hereunder as of the date of such taking without prejudice to the right of the parties to claim compensation from the expropriating authority.

ARTICLE XV

Insurance.

Section 15.1   Licensee shall, at Licensee's expense, maintain at all times during the Term and at all times when Licensee is in possession of the Licensed Space:

(a)       Commercial comprehensive general liability insurance in respect of the Licensed Space, against claims of personal injury, bodily injury, wrongful death and property damage caused by Licensee and occurring upon, in or about the Licensed Space or Premises and endorsed to cover all contractual and other liabilities of Licensee pursuant to this License on an occurrence basis, with a combined single limit (annually and per occurrence and location) of not less than US$2,000,000 (which may consist of primary coverage of not less than US$1,000,000 and umbrella coverage), naming as additional insureds Licensor and any other person reasonably designated by Licensor;

(b)       Property insurance in an amount equal to 100% of replacement value covering Licensee's property against fire and other risks included in the standard form of property insurance for the State of Texas;

8

(c)    Workers' compensation insurance in statutory limits and employer's liability coverage in an amount of not less than US$1,000,000;

(d)    Comprehensive automobile liability insurance covering the use of all non-owned and hired vehicles with a bodily injury and property damage liability limit of not less than US$1,000,000; and

(e)    Such other insurance as is customarily required of Licensees in similar buildings in the vicinity of the Premises.

Section 15.2   Licensee shall be permitted to choose its insurer in its sole discretion; provided, that Licensee shall use commercially reasonable efforts to obtain insurance that shall not be subject to cancellation except after at least thirty (30) days prior written notice to Licensor.   Licensee may carry any required insurance under a blanket policy if that policy complies with the requirements of this License.   Licensor and Licensee may satisfy liability limits with the combination of primary and umbrella/excess coverage.

Section 15.3   Licensor shall maintain property insurance, in an amount not less than the amount which avoids any coinsurance provisions of the related policy, covering the buildings (including the Licensed Space, but not including the personal property required to be insured by Licensee pursuant to this Article XV) against fire and the other risks included in the standard Texas form of property insurance.   Licensor shall maintain customary comprehensive general liability and property insurance with respect to the building machinery, boilers and equipment located therein and owned by Licensor and identify Licensee as an additional insured thereunder.

Section 15.4   Licensor and Licensee agree that (insofar as and to the extent that such agreement may be effective without invalidating or making it impossible to secure insurance coverage from responsible insurance companies doing business in the State of Texas) with respect to any property loss that is covered by insurance then being carried by Licensor or Licensee, respectively, the party carrying such insurance and suffering said loss releases the other of and from any and all claims (including claims of negligence) with respect to such loss where such insurance is valid and collectible (or would have been valid and collectible if properly maintained) respecting any such loss only to the extent of proceeds actually received. Licensor and Licensee shall obtain, in each of their casualty and other insurance policies covering property in the Premises, so-called "waiver of subrogation" provisions to the effect that such policies shall not be invalidated should the insured waive, in writing, prior to a loss, any or all right of recovery against any party for loss occasioned by fire or other casualty.   If either party is unable to obtain such provisions in its property and other insurance policies, then it shall name the other party as an additional insured but not as a loss payee under such policies, it being understood and agreed that neither Licensor nor Licensee shall have any right whatsoever to any of the proceeds of insurance carried by the other.

NEWYORK:2374208.6

ARTICLE XVI

Indemnity.

Section 16.1    Licensee and Licensor (each as applicable, an "Indemnifying Party") each covenant and agree to defend, protect, indemnify and hold harmless the other (and its respective agents, servants and employees) (individually, the "Indemnitee", and collectively, the "Indemnitees") from and against each and every claim, demand, cause of action, liability, cost, damage, loss, penalty, fine, judgment or expense (including, but not limited to, reasonable attorneys' fees and expenses incurred in defense of the Indemnitees) which may be made, asserted, brought or recovered by any person, firm or corporation arising out of (a) any death or bodily or personal injury or any damage to tangible property of a third party, licensee, user or occupant of the Premises to the extent caused by or, resulting from the use of the Premises or operation of the equipment therein by the Indemnifying Party, its agents, employees, invitees or visitors or (b) any breach of this agreement by the Indemnifying Party, except to the extent arising out of, in the case of each of clause (a) and clause (b), any Indemnitee's gross negligence or willful misconduct.  The term "expense" shall include, but not be limited to, any reasonable legal fees or expenses incurred by any Indemnitee in connection with the aforesaid and reasonable legal fees or expenses incurred in connection with any action to recover such legal fees or expenses.  The obligations of each Indemnifying Party hereunder shall survive the expiration, cancellation or termination of this License and the Term.

ARTICLE XVII

Subordination.

Section 17.1    This License and Licensee's rights hereunder are subject and subordinate to all present and future mortgages and building loan agreements (and any renewals, modifications, replacements, substitutions, and extensions thereof) which may now or hereafter affect all or any portion of the Premises. The provisions of this Article XVII shall be self-operative and no further instrument of subordination shall be required.

ARTICLE XVIII

Intentionally Omitted.

ARTICLE XIX

Default/Remedies.

Section 19.1    Each of the following is a "Default" by Licensee under this License:

(a)       Licensee shall default in the payment when due of any installment of Rent and the failure continues for ten (10) business days following Licensor's written notice (which notice shall also be considered any demand required by any law);

10

(b)      Licensee fails to comply with any material term, covenant or condition (other than the covenants to make payment of Rent) of this License on Licensee's part to be observed or performed and such default continues for thirty (30) days following Licensor's written notice to Licensee, or if such default is of such a nature that it cannot be cured within thirty (30) days, if Licensee shall not, promptly upon the receipt of such notice, advise Licensor of Licensee's intention to institute all steps necessary to cure such default or shall not institute and thereafter diligently prosecute to completion all steps necessary to cure such default and, in any event, cure such default within forty-five (45) days of receipt of Licensor's notice of such default by Licensee.

Section 19.2    If a Default occurs and the applicable cure period has expired without Licensee having cured such Default, Licensor may give written notice to Licensee that this License shall terminate on the date specified in such notice, which date shall not be less than ten (10) business days after Licensor's notice to Licensee.  If Licensor gives such notice, the Term shall expire on the date set forth in that notice (but Licensee shall remain liable for that month's Rent).

Section 19.3    If this License is terminated as a result of Licensee's Default, Licensee shall also pay to Licensor, as damages, any deficiency between (i) the aggregate Rent for the period which otherwise would have constituted the unexpired portion of the Term and (ii) the rents, fees or charges, if any, applicable to such period collected under any reletting of any portion of the Licensed Space.  Licensee shall pay any deficiency in monthly installments on the days specified in this License for payment of Rent and Licensor shall be entitled to recover from Licensee each monthly deficiency as the same arises.

## ARTICLE XX

### Notices.

Section 20.1    Any bills, statements, notices, demands, requests or other communications given or required to be given pursuant to this License shall be effective only if rendered or given in writing, sent by (1) registered or certified mail, return receipt requested, (2) a nationally recognized courier service such as Federal Express or UPS, or (3) facsimile (with a duplicate copy sent via either method described in (1) or (2) immediately above) addressed

(a)      to Licensor,

> Pillar Commercial, LLC
> 10440 N. Central Expressway, Suite 500
> Dallas, TX 75231

With copies (that shall not constitute notice) to:

> Cherry Petersen Landry Albert LLP
> 8350 North Central Expressway, Suite 800
> Dallas, TX 75206
> Attention: Terry Landry

11

Facsimile: (214) 265-7008

(b)    to Licensee,

Nortel Networks Inc.
2221 Lakeside Boulevard
[MS991 02-A30]
Richardson, TX 75082
Attention: Real Estate Dept.
Facsimile: (972) 684-3868

With copies (that shall not constitute notice) to:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
Attention: Kimberly B. Blacklow
Facsimile: (212) 225-3999

and

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
Attention: James L. Bromley
Facsimile: (212) 225-3999

and

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
Attention: Lisa M. Schweitzer
Facsimile: (212) 225-3999

Section 20.2   Any such demand, notice, communication or report shall be deemed to have been given pursuant to this License, if sent by facsimile transmission, upon answer-back confirmation, and otherwise, upon delivery, refusal of delivery or when delivery is first attempted on a business day.

ARTICLE XXI

<u>Miscellaneous.</u>

Section 21.1   Except as expressly otherwise provided herein, this License embodies and constitutes the entire understanding between the parties with respect to the licensing transaction contemplated herein.   This License may not be modified, amended or terminated except as expressly provided herein or by written instrument executed by the parties hereto.   This License

12

shall be governed by and construed in accordance with the laws of the State of Texas. This License shall not be binding or effective until this License is executed and delivered by Licensor and Licensee. This License may be executed in several counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. The execution of this License may be effected by electronically transmitted (email) or facsimile signatures, all of which shall be treated as originals.

Section 21.2    The term "business days" as used in this License shall exclude Saturdays, Sundays and holidays, the term "Saturdays" as used in this License shall exclude holidays and the term "holidays" as used in this License shall mean all days observed as legal holidays by the United States of America or the State of Texas. The terms "Person" and "persons" as used in this License shall be deemed to include natural persons, firms, corporations, associations and any other private or public entities, whether any of the foregoing are acting on their own behalf or in a representative capacity. If any term, covenant or condition of this License or any application thereof shall be invalid or unenforceable, the remainder of this License and any other application of such term, covenant or condition shall not be affected thereby. This License shall be construed without regard to any presumption or other rule requiring construction against the party causing this License to be drafted. In the event of any action, suit, dispute or proceeding affecting the terms of this License, no weight shall be given to any deletions or striking out of any of the terms of this License contained in any draft of this License and no such deletion or strike out shall be entered into evidence in any such action, suit or dispute or proceeding given any weight therein.

Section 21.3    All legal actions relating to this License shall be adjudicated during the pendency of the Bankruptcy Case in the Bankruptcy Court and thereafter in the state courts of the State of Texas, or the federal courts, in either case having jurisdiction in the county in which the Premises is located. Each of the parties irrevocably consents to the personal and subject matter jurisdiction of those courts in any legal action relating to this License. This consent to jurisdiction is self-operative and no further instrument or legal action, other than service of process in any manner permitted by law is necessary in order to confer jurisdiction upon the person of Licensor or Licensee and the subject matter in question in any such court. Each of Licensor and Licensee irrevocably waives and shall not assert, by way of motion, as a defense or otherwise (i) any objection to any such court being the venue of any legal action relating to this License, (ii) any claim that any legal action relating to this License brought in any such court has been brought in an inconvenient forum or (iii) any claim that either party is not personally subject to the jurisdiction of that court.

Section 21.4    Neither Licensor nor Licensee shall be liable to the other under this License for incidental, indirect, special or consequential damages incurred in connection with a breach or default under this License, notwithstanding anything to the contrary contained herein. Each of Licensor and Licensee hereby waive the right to cover such damages from the other party.

Section 21.5    This License shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

13

**IN WITNESS WHEREOF**, the parties hereto have duly executed this License as of the day and year first above written.

LICENSOR:

PILLAR COMMERCIAL, LLC,

_____

Name:
Title:


LICENSEE:

NORTEL NETWORKS INC.,

_____

Name:
Title:

14

## **EXHIBIT A**

Licensed Space

.

15

NEWYORK:2374208.6

## SCHEDULE 1

License Services

16

NEWYORK:2374208.6

## SCHEDULE 2

Wiring Information

17