Honorable Kevin Gross,
US Bankruptcy Court for District of Delaware,
824 Market St., 3rd Floor
Wilmington. DE 19801

FILED
2011 APR 18  AM 10: 09
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

Copy to:

Clerk of the Court
US Bankruptcy Court for District of Delaware
824 Market Street, 3rd Floor
Wilmington, DE 19801

April 14, 2011

<u>Case 09-10138</u>

Your Honor,

First, it is probably useful to you if I introduce myself and tell you of my
involvement with the Nortel case. I am an ex-Nortel employee who retired a
decade ago. I was one of the 325 people who received Docket 4638, dated
December 22, 2010 asking for the Court to instruct US Bank National
Association, the Trustee of $37.9 million in funds for the Nortel Deferred
Compensation Plan to hand over the money to the Debtors. I was the first to
respond with an Objection to the Motion (Docket 4710, filed 1/13/11,
subsequently amended in Docket 4723), and become one of the two named Ad
Hoc Committee Members who filed Docket 4897 (filed 2-8-11) and Docket 5046
(filed 3-2-11).

I also attended, in person, the February 9, 2011 and the March 23, 2011
hearings – though, as the DCP Participants were by then represented by
attorneys, I did not speak.

It was very difficult to find attorneys who could represent the ex-employees,
because practically every law firm we contacted was already representing
another involved party. However, the Participants in the Nortel Deferred
Compensation case now have very well qualified legal representation – and I do
not wish to confuse, in any way, the issue on that case.

However, as a result of our visible activities I have received telephone calls and
e-mails from other ex-Nortel employees who are very upset by the way they are
being treated. These may be disabled people, retirees who have had their
pension stopped, people who were terminated and their termination pay was cut
off, and other individual cases. Essentially, they are all very upset by the way that
they are being treated by the Debtors. Not only has the Deferred Compensation
Services provided by Mullin TBG been cut off (this point was raised in our
Hearing on February 9, 2011), but the services provided to all ex-employees by
HR Services has now been cut off. The ex-employees are becoming more

frustrated as they see what they consider their "rights" as hard working people for many years – simply being cut-off. They also see this action in the light of the enormous attorney fees that are being logged on Epiq every month, together with the knowledge that there is now a large amount of cash available for these services. Several of these ex-employees, who are outside the Deferred Compensation Plan, have asked me to try to do something on their behalf, and I want to re-emphasize that I am speaking on behalf of the much broader group of ex-employees, and hence outside the field that the DCP Participants are being represented by counsel.

The issue appears to be simple to define. When the time comes to decide upon an allocation of the available funds to the Creditors, it is reasonable to project that there may be a significant response from the ex-employees. At that time it may be difficult to confirm the true extent of the Claims filed by thousands of (and may be ten thousand) ex-employees. There are numerous duplications of Claims filed on Epiq, and the Human Relations files will be, by then, essentially inaccessible. I know this is already true, because I spent several hours earlier this week trying to re-check on some simple personnel data for myself – it was a nightmare of reduced hours of service, an automated answering system that, several times, led me to dead-ends, and, when I finally was able to contact a human being, they clearly have no capacity to answer simple questions.

This means that when the time comes to provide some allocation of funds to the ex-employees – however small that allocation may be – there will be unacceptable blockages to resolving the problems, and the ex-employees will be understandably very upset. They have already filed for dozens of millions of dollars of Claims and will expect their positions to be recognized.

In light of this we wish to make two recommendations:

1. That Your Honor instructs the Debtors to be cognizant of the service needs of the ex-employees, and to re-instate all the HR services to the levels that were in place at the end of 2010. I plan to attend the scheduled Hearing on April 26, 2011, and I request the opportunity be scheduled for me to make that simple recommendation.

2. There is a strong feeling that the ex-employees are not being adequately represented in the US Court. By contrast, the Canadian ex-employees have been well treated by representation in the Canadian Court. As you might imagine, the US ex-employees and the Canadian ex-employees are able to keep in close touch. Thousands of these employees helped build the backbone on which the internet and social networking now run – so they have exceptional communication skills.

   After reviewing the alternatives with several ex-employees outside the Deferred Compensation Program, there is consensus that it would be a

significant recognition of the position of the ex-employees if there was representation on the Official Committee of Unsecured Creditors. A quick review of the present membership shows no representation of the ex-employees. Indeed, the interests of the existing members may be in opposition to the Claims of the ex-employees.

We have made this request to the US Trustee, but have so far received no response. We therefore request that Your Honor raises this proposal -- that a representative of the ex-employees be appointed to the Official Committee of Unsecured Creditors.

The ex-employees of Nortel thank you for your consideration of these two requests.

If you, or your staff, need further information, please contact me on 404-374-5277 (cell) or, rhorne1940@gmail.com

Yours sincerely,

Robert Horne

10015 High Falls Pointe
Johns Creek, GA 30022