21.     **THIS COURT ORDERS AND DECLARES** that, to the extent permitted by law, neither the Purchaser nor any permitted assignee of the Purchaser pursuant to the Sale Agreement shall be a successor to any of the Applicants and neither the Purchaser nor any permitted assignee of the Purchaser pursuant to the Sale Agreement shall assume any liability of the Applicants or in respect of the Encumbrances, other than as expressly provided for in the Sale Agreement nor shall any labour, employment or pension claims continue with respect to the Purchased Assets or be liabilities of the Purchaser.

22.     **THIS COURT ORDERS AND DECLARES** that effective upon Closing, counterparties to the Unknown Licenses (as defined in the Sales Process Order) that are deemed to be terminated pursuant to the Sales Process Order shall have no right or claims against the Purchaser or the Purchased Assets.

23.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory, administrative or governmental body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory, administrative or governmental bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

24.     **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory, administrative or governmental body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

_____

Schedule A – Form of Monitor's Certificate

Court File No.:  09-CL-7950

**ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)
IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT ACT,
R.S.C. 1985, c. C-36, AS AMENDED**

**MONITOR'S CERTIFICATE**

**RECITALS**

A.     Pursuant to an Order of the Honourable Justice Morawetz of the Ontario Superior Court
of Justice (the "Court") dated January 14, 2009 (as amended and restated), Nortel Networks
Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Global Corporation,
Nortel Networks International Corporation and Nortel Networks Technology Corporation
(collectively, the "Applicants") commenced proceedings pursuant to the *Companies' Creditors
Arrangement Act* (Canada) and Ernst & Young Inc. was appointed as monitor (the "Monitor") in
these proceedings.

B.     Pursuant to an Order of the Court dated ■ ■, 201■ (the "Approval and Vesting Order"),
the Court approved an asset sale transaction (the "Transaction") contemplated by an asset sale
agreement dated as of ■ ■, 2011 (the "Sale Agreement") among NNC, NNL, Nortel Networks
Inc., Nortel Networks UK Limited, Nortel Networks (Ireland) Limited, Nortel Networks S.A.,
the other entities identified therein as sellers (collectively, the "Sellers"), Alan Bloom, Stephen
Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, and Maître
Cosme Rogeau as French Liquidator, and ■, as purchaser ("■" or the "Purchaser") and provided
for the vesting in the Purchaser of the Applicants' right, title and interest in and to the Purchased
Assets (as defined in the Approval and Vesting Order (but excluding any Undisclosed Patent
Interests for which the Purchaser pays the Exercise Price after Closing (the "Closing Date
Assets")) which vesting is to be effective with respect to the Closing Date Assets upon the
delivery by the Monitor to the Purchaser of a certificate confirming receipt of confirmation from
each of NNC, NNL and the Purchaser that: (i) the Purchaser has paid the Purchase Price for the

Closing Date Assets as set out in the Sale Agreement; (ii) the conditions to Closing as set out in Article ■ of the Sale Agreement have been satisfied or waived by the Sellers and/or the Purchaser, as applicable; and (iii) the Transaction has been completed to the satisfaction of the Applicants and the Purchaser.

C.      Unless otherwise indicated herein, terms with initial capitals have the meanings set out in the Sale Agreement.

THE MONITOR CERTIFIES the following:

1.      NNC, NNL and the Purchaser have advised the Monitor that the Purchaser has paid and [■] has received the Purchase Price payable for the Closing Date Assets on the Closing Date pursuant to the terms of the Sale Agreement;

2.      NNC, NNL and the Purchaser have advised the Monitor that the conditions to Closing as set out in Article ■ of the Sale Agreement have been satisfied or waived by the Sellers and/or the Purchaser, as applicable; and

3.      NNC and NNL have advised the Monitor that the Transaction has been completed to the satisfaction of the Applicants.

4.      The Purchaser has advised the Monitor that the Transaction has been completed to the satisfaction of the Purchaser.

This Certificate was delivered by the Monitor at □ {TIME} on □ 2011.

**ERNST & YOUNG INC. in its capacity as monitor in the CCAA proceedings of Nortel Networks Corporation, et. al. and not in its personal capacity**

Per:_____

Name:

Title:

073

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**APPROVAL AND VESTING ORDER**
**(Certain Patents and Other Assets)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 2138173\4

074

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**AFFIDAVIT OF GEORGE RIEDEL**
**(sworn April 7, 2011)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930
Lawyers for the Applicants

DOCSTOR: 2147842\7A

# TAB 3

075

Court File No.:  09-CL-7950

## ONTARIO
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | ■ DAY, THE ■ |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF ■, 2011 |

### IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

### APPROVAL AND VESTING ORDER
### (Certain Patents and Other Assets)

**THIS MOTION**, made by Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") for the relief set out in the Notice of Motion dated ■ ■, 2011, including the approval of a transaction (the "Transaction") pursuant to an asset sale agreement dated as of ■ ■, 2011 (the "Sale Agreement") among NNC, NNL, Nortel Networks Inc., Nortel Networks UK Limited (in administration), Nortel Networks (Ireland) Limited (in administration), Nortel Networks S.A. (in administration and liquidation judiciaire), Nortel Networks France S.A.S. (in administration) and Nortel GmbH (in administration), the other entities identified therein as sellers (collectively, the "Sellers"), Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as

Joint Administrators, and Maître Cosme Rogeau as French Liquidator and Ranger Inc., as purchaser (the "Purchaser") and Google Inc., as guarantor for the sale (the "Sale") of the Assets to the Purchaser, was heard this day at 393 University Avenue, Toronto, Ontario.

ON READING the affidavit of ■ sworn ■ ■, 2011 (the "□ Affidavit") and the ■ report of Ernst & Young Inc. in its capacity as monitor (the "Monitor") dated ■ ■, 2011 (the "■ Report") and on hearing the submissions of counsel for the Applicants, the Monitor and those other parties present, no one appearing for any other person on the service list although properly served as appears from the affidavit of ■ sworn ■ ■, 2011 (the "Service Affidavit"), filed:

## Service

1.     THIS COURT ORDERS that the time for the service of the Notice of Motion, the ■ Affidavit, the ■ Report and/or the Motion Record be and is hereby validated and abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof.

## Interpretation

2.     THIS COURT ORDERS AND DECLARES that

    (a)     capitalized terms used herein and not otherwise defined shall have the meanings given to them in the Sale Agreement; and

    (b)     "Initial Order" means the Order of the Honourable Justice Morawetz dated January 14, 2009, as amended and restated.

## The Transaction

3.     THIS COURT ORDERS AND DECLARES that the Transaction is hereby approved. Subject to approval of the Sale Agreement by the United States Bankruptcy Court for the District of Delaware in the Chapter 11 Proceedings of the Chapter 11 Debtors, the execution, delivery and performance of the Sale Agreement and the other Transaction Documents by the Applicants is hereby authorized and approved, and the Applicants are hereby authorized and directed to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the Transaction and for the conveyance of the Applicants' right, title and

interest in and to the Assets to the Purchaser in accordance with the provisions of the Sale Agreement (including, the licenses under the Jointly Owned Patents, the Specified UK Patents, the Undisclosed Patent Interests and any other Patents granted by one or more of the Applicants to the Purchaser pursuant to the Sale Agreement and, effective upon receipt by the Sellers or any successor or assign or any receiver, trustee or liquidator appointed in respect of a Seller (or its Property as defined in the Initial Order) of the applicable Exercise Price pursuant to Section 5.19 of the Sale Agreement, any Undisclosed Patent Interests, together with all the other Assets, collectively the "Purchased Assets").

4.     **THIS COURT ORDERS AND DECLARES** that without limiting the generality of the foregoing, the following documents are hereby approved and the Applicants party thereto are hereby authorized and directed to perform and comply with their respective obligations thereunder:

    (a)    Closing Date License Agreement substantially in the form attached as Appendix ■ to the ■ Report; and

    (b)    the Escrow Agreement substantially in the form attached as Appendix ■ to the ■ Report.

5.     **THIS COURT ORDERS AND DECLARES** that the Applicants are authorized and directed to perform their respective obligations under the Sale Agreement and each of the Transaction Documents.

6.     **THIS COURT ORDERS AND DECLARES** that upon the delivery of a Monitor's certificate to the Purchaser substantially in the form attached as Schedule "A" hereto (the "Monitor's Certificate"), all of the Applicants' right, title and interest in and to the Purchased Assets (except any Undisclosed Patent Interests for which the Purchaser pays the Exercise Price after Closing, in which case the provisions of the balance of this paragraph shall be effective upon receipt by the Sellers or a successor or assign or any receiver, trustee or liquidator appointed in respect of such Seller (or its Property) of the applicable Exercise Price pursuant to Section 5.19 of the Sale Agreement for the applicable Undisclosed Patent Interest) shall vest absolutely in the Purchaser free and clear of and from:

DOCSTOR: 2138173\14

(a)    any and all liens, claims and interests, including, without limitation, all security interests, hypothecs, mortgages, pledges, deeds of trust, trusts or deemed trusts, executions, levies, charges, or other financial or monetary claims, charges, rights of first refusal, encumbrances, restrictive covenants, rights of offset or recoupment, leases or conditional sale arrangements, debts, liabilities, obligations, contractual rights and claims and rights or causes of action, obligations, demands, restrictions, consent rights, options and indemnities; and

(b)    claims and interests of any nature or kind of employees, consultants or agents or former employees, consultants or agents, of any of the Applicants arising out of the alleged invalidity, unenforceability or irregularity on any grounds of any of their assignments, transfers or waivers to or in favour of any of the Applicants, whether express or implied or by operation of contract, law or otherwise, of any or all of their right, title and interest in any of the Purchased Assets,

in each case, whether or not they have attached or been perfected, registered or filed, whether secured, unsecured or otherwise, arising prior to or subsequent to the date of the Initial Order but prior to Closing, whether imposed by agreement, understanding, law, statute, equity or otherwise and whether allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether asserted prior to or after Closing, (collectively, the "Claims") including, for the avoidance of doubt: (i) any encumbrances or charges created by any of the Orders made in these proceedings including the Initial Order; and (ii) all charges, security interests or claims evidenced by registrations pursuant to the *Personal Property Security Act* (Ontario) or any other personal property registry system (all of which, together with Liens and Claims in the CCAA Cases, are collectively referred to as the "Encumbrances", provided however that "Encumbrances" shall not include Permitted Encumbrances (other than those specifically contemplated to be discharged by virtue of this Order), Liens created by or through the Purchaser or any of its Affiliates, and Assumed Liabilities or as otherwise set forth Section 2.1.1(a) of the Sale Agreement and Section 5.21 of the Sale Agreement. For greater certainty, all of the Encumbrances affecting or relating to the Purchased Assets are hereby expunged and discharged as against the Purchased Assets.

7.    **THIS COURT ORDERS** that:

   (a)    effective upon Closing (or, in the case of any Undisclosed Patent Interests, effective upon receipt by the Sellers or any successor or assign or any receiver, trustee or liquidator appointed in respect of a Seller (or its Property as defined in the Initial Order) of the applicable Exercise Price pursuant to Section 5.19 of the Sale Agreement), all Government Entities maintaining records or data bases in which the Encumbrances are recorded, filed or registered are authorized and directed to strike such Encumbrances as they affect the Purchased Assets from their records and data bases; and

   (b)    if any Person or entity which has filed statements or other documents or agreements evidencing Encumbrances affecting the Purchased Assets shall not have delivered to the Applicants before the Closing (or, in the case of any Undisclosed Patent Interests, effective upon receipt by the Sellers or any successor or assign or any receiver, trustee or liquidator appointed in respect of a Seller (or its Property) of the applicable Exercise Price pursuant to Section 5.19 of the Sale Agreement) in proper form for filing and executed by the appropriate parties, discharge statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Encumbrances which the Person or entity has or may assert with respect to the Purchased Assets, then the Applicants are each hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such Person or entity with respect to the Purchased Assets.

8.    **THIS COURT ORDERS** that for the purposes of determining the nature and priority of Claims and Encumbrances, the net proceeds from the sale of the Purchased Assets shall stand in the place and stead of the Purchased Assets, and that from and after the delivery of the Monitor's Certificate (or, in the case of any Undisclosed Patent Interests, effective upon receipt by the Sellers or any successor or assign or any receiver, trustee or liquidator appointed in respect of a Seller (or its Property) of the applicable Exercise Price pursuant to Section 5.19 of the Sale Agreement) all Claims and Encumbrances shall attach to the net proceeds from the sale of the

Purchased Assets with the same priority as they had with respect to the Purchased Assets immediately prior to the Closing (or in the case of Undisclosed Patent Interests immediately prior to the date of the receipt of the Exercise Price), as if the Purchased Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the Closing (or in the case of Undisclosed Patent Interest(s) immediately prior to the receipt of the Exercise Price).

9.      **THIS COURT ORDERS AND DIRECTS** the Monitor to file with the Court a copy of the Monitor's Certificate, forthwith after delivery thereof.

10.     **THIS COURT ORDERS AND DECLARES** that the Transaction Documents shall be binding on the Applicants that are parties thereto, and shall not be repudiated, disclaimed or otherwise compromised in these proceedings or any subsequent receivership, bankruptcy or liquidation proceedings.

11.     **THIS COURT ORDERS AND DECLARES** that, in the event that any Applicant or any of their Affiliates owns any Undisclosed Patent Interest, no Applicant shall directly or indirectly sell, transfer, assign, convey, license or sublicense such Undisclosed Patent Interest to a Third Party, other than the Purchaser, including by operation of law, in any transaction, series of related transactions or otherwise, except as expressly permitted by Section 5.19 of the Sale Agreement, and any attempted sale, transfer, assignment, conveyance, license or sublicense not expressly permitted by Section 5.19 of the Sale Agreement shall be null and void *ab initio* and of no force or legal effect.

12.     **THIS COURT ORDERS** that the Sale Agreement and the Transaction Documents and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of this Court; provided, however, that any such modification, amendment or supplement is not materially adverse to the interests of the Applicants (it being understood, for the sake of clarity and solely for the purposes of this paragraph, that no such modification, amendment or supplement shall be deemed to be materially adverse to the Applicants to the extent that the impact does not exceed two percent of the Purchase Price); and

provided further that no such modifications, amendments, or supplements may be made except following two (2) days written notice to, or with the prior consent of, the Monitor.

13.    **THIS COURT ORDERS AND DECLARES** that the Applicants have complied with the License Rejection Procedure approved by this Court in the Canadian Sales Process Order dated ■, 2011 (the "Sales Process Order").

**License Non-Assignment and Non-Renewal Protections**

14.    **THIS COURT ORDERS** that effective from and after Closing,

(a)    the Applicants shall be deemed to have affirmatively and reasonably refused to give consent (including any consent of any Applicant that may be deemed to be given as a result of inaction by such Applicant) to any renewal, extension, assignment, amendment, waiver or modification of any license under the Transferred Patents, Specified UK Patents or Jointly Owned Patents, pursuant to any Cross-License Agreement or Outbound License Agreement (excluding (i) the Commercial Licenses, (ii) the transition services agreements (the "TSAs") and intellectual property license agreements (the "IPLAs") that the Applicants entered into with the purchasers of their various business units after the Petition Date in connection with their divestitures, (iii) any intercompany Contracts with the Sellers (the "Intercompany Licenses") and (iv) the Technology License Contract between Northern Telecom Limited and Guangdong-Nortel Telecommunications Switching Equipment Ltd., dated November 8, 1994, as amended (the "GDNT License")) (collectively, the "License Agreements", and any one, a "License Agreement") that requires the consent of any Applicant pursuant to the terms of such License Agreement and that would have the practical effect of expanding the scope or term of the licenses to the Transferred Patents, Specified UK Patents or Jointly Owned Patents thereunder (regardless of whether such renewal, extension, assignment, amendment, waiver or modification is sought prior to or after the Applicants dissolve or otherwise cease to exist), in each case unless the Purchaser shall otherwise agree in writing, in its sole discretion;

(b)     the Applicants shall be deemed to have affirmatively and reasonably refused to give consent (including any consent of any Applicant that may be deemed to be given as a result of inaction by such Applicant) (i) to any amendment, modification or waiver to the GDNT License that would have the practical effect of expanding the scope or the term of the licenses under the Transferred Patents, Specified UK Patents or Jointly Owned Patents thereunder and (ii) to any assignment of the GDNT License or any rights or obligations thereunder other than to Ericsson (as defined in the Sale Agreement) or another purchaser of all or substantially all of the assets or all of the outstanding shares of Guangdong Nortel Telecommunication Equipment Company Ltd., in each case, unless the Purchaser shall otherwise agree in writing, in its sole discretion,

(c)     the Applicants shall be deemed to have affirmatively and reasonably refused to give consent (including any consent of any Applicant that may be deemed to be given as a result of inaction by such Applicant) (i) to any amendment or modification to the IPLAs that would have the practical effect of expanding the scope or the term of the licenses under the Transferred Patents, Specified UK Patents or Jointly Owned Patents thereunder and (ii) to any assignment of any IPLA by the license counterparty or any rights or obligations of the license counterparty under any IPLA, in each case, unless the Purchaser shall otherwise agree in writing, in its sole discretion,

(d)     the Applicants shall be deemed to have affirmatively and reasonably refused to give consent (including any consent of any Applicant that may be deemed to be given as a result of inaction by such Applicant) to any amendment, modification, renewal or extension to the TSAs  that would have the practical effect of expanding the scope or the term of the licenses under the Transferred Patents, Specified UK Patents or Jointly Owned Patents thereunder beyond June 30, 2012 unless the Purchaser shall otherwise agree in writing, in its sole discretion,

(e)     the Applicants shall be deemed to have affirmatively and reasonably refused to give consent (including any consent of any Applicant that may be deemed to be

given as a result of inaction by such Applicant) to any amendment or modification of any Commercial License that would have the practical effect of expanding the scope or the term of the licenses under the Transferred Patents, Specified UK Patents or Jointly Owned Patents thereunder except (i) to the extent such licenses, as amended or modified, would be permitted to be granted under the Closing Date License Agreement or (ii) to the extent the Purchaser shall otherwise agree in writing, in its sole discretion,

(f)     the Applicants shall be deemed to have affirmatively and reasonably refused to give consent (including any consent of any Applicant that may be deemed to be given as a result of inaction by such Applicant) (i) to any amendment or modification of any Intercompany License that would have the practical effect of expanding the scope or the term of the licenses under the Transferred Patents, Specified UK Patents or Jointly Owned Patents thereunder except to the extent such licenses, as amended or modified, would be permitted to be granted under the Closing Date License Agreement, and (ii) to any assignment of any Intercompany License by the license counterparty or any rights or obligations of the license counterparty under any Intercompany License, in each case, unless the Purchaser shall otherwise agree in writing, in its sole discretion,

(g)     no Applicant shall have the right or power to transfer any of its obligations, right, title or interest in the licenses under the Transferred Patents, Specified UK Patents and Jointly Owned Patents under:

(i)     any License Agreement,

(ii)    the GDNT License,

(iii)   any Intercompany License,

(iv)    (other than in connection with the consolidation, wind-down, reorganization or restructuring of the Applicants and their affiliates, including to the Applicants under confirmed plan(s) of arrangement) any IPLA, or

(v)     (other than the transfer by the Applicants of Retained Contracts or contracts relating to the disposal of Inventory, in each case to the extent a

sublicense to the assignee of such contract is permitted by the Closing Date License Agreement) any Commercial License,

in each case, to any other person from and after the Closing, and any purported renewal, extension, assignment, amendment, waiver, transfer or modification of a License Agreement, Intercompany License, TSA, IPLA, GDNT License or Commercial License that would contravene the provisions of subparagraphs 14(a) through (g) hereof shall be null and void *ab initio* and unenforceable and of no force or effect, and

(h)     the Purchaser is hereby irrevocably appointed (such appointment being coupled with an interest) as each Applicant's attorney-in-fact, with full authority in the place and stead of such Applicant and in the name of such Applicant, from time to time from and after the Closing in the Purchaser's sole discretion, subject to the provisions of paragraph 5.25 of the Sale Agreement, (x) to take any and all action and to execute and deliver any and all instruments that the Purchaser may deem necessary or advisable to accomplish the purposes of sub-paragraphs 14(a) through (g) of this Order and (y) regardless of whether or not any Applicant party to the applicable License Agreement is then in existence, to terminate the license under the Transferred Patents, Specified UK Patents or Jointly Owned Patents in any License Agreement (including by delivering a notice of termination on behalf of an Applicant party thereto, regardless of whether such Applicant is then in existence) upon the occurrence of any specific date or event or the existence of any specific circumstance to the extent that the occurrence of such date or event or the existence of such circumstance gives any Applicant (regardless of whether such Applicant is then in existence) a right to terminate such License Agreement pursuant to the terms thereof (the provisions set forth in subparagraphs 14(a) through (h) hereof collectively, the "License Non-Assignment and Non-Renewal Protections").

For the avoidance of doubt, the License Non-Assignment and Non-Renewal Protections shall not limit in any way the applicable Applicants' obligations to comply with the provisions of Section 5.13(b) of the Sale Agreement.

15.     THIS COURT ORDERS that the License Non-Assignment and Non-Renewal Protections shall not constitute the assignment of the License Agreements, Intercompany Licenses, TSAs, IPLAs, GDNT License or Commercial Licenses to, or assumption of the License Agreements, Intercompany Licenses, TSAs, IPLAs, GDNT License or Commercial Licenses by, the Purchaser, other than as the Purchaser may otherwise agree in an assumption agreement between the Purchaser and NNL in satisfaction of the requirements of paragraph 7 of the CDMA Vesting Order.

**Alternate Bid**

16.     **[THIS COURT ORDERS AND DECLARES that in the event that the Transaction contemplated by the Sale Agreement cannot be consummated in accordance with the Sale Agreement, the Alternate Bid (as defined in the ■ Affidavit) be and is hereby approved and the execution of the asset sale agreement pursuant to the Alternate Bid by the Applicants is approved and the Applicants and the Monitor shall be authorized to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the transaction contemplated by the Alternate Bid and for the conveyance of the Applicants' right, title and interest in and to the Purchased Assets to the Alternative Bidder.]**

**Proceeds**

17.     **THIS COURT ORDERS** that all the proceeds of the Transaction, subject to the price adjustments and the Purchaser's rights under the Sale Agreement and less applicable transfer or value added taxes incurred by the Sellers, shall be deposited into an Escrow Account (as defined in the Interim Funding and Settlement Agreement entered into on June 9, 2009 (the "IFA")) pursuant to an escrow agreement to be negotiated and agreed to by all of the Sellers and in accordance with Section 12.g of the IFA, and such proceeds shall not be distributed in advance of either (i) agreement by all of the Selling Debtors (as defined in the IFA) as to the distribution

of such proceeds (in accordance with the IFA and subject to the requirements of Section 12.g of the IFA) or (ii) in the case where the Selling Debtors (as defined in the IFA) fail to reach such agreement, determination by the relevant dispute resolver(s) in accordance with the terms of the Interim Sales Protocol (as such term is defined in the IFA and subject to the requirements of Section 12.g of the IFA), which Interim Sales Protocol shall be approved by this Court.

**Miscellaneous**

18.     **THIS COURT ORDERS** that, notwithstanding:

    (a)     the pendency of these proceedings;

    (b)     any applications for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act* (Canada) in respect of any of the Applicants and any bankruptcy order issued pursuant to any such applications; and

    (c)     any assignment in bankruptcy made in respect of any of the Applicants,

the provisions of the Transaction Documents and the vesting of the Applicants' right, title and interest in and to the Purchased Assets in the Purchaser pursuant to this Order shall be binding on any trustee in bankruptcy that may be appointed in respect of any of the Applicants and shall not be void or voidable by creditors of the Applicants, nor constitute or be deemed to be a preference, fraudulent conveyance, transfer at undervalue, or other challengeable or voidable transaction under the *Bankruptcy and Insolvency Act* (Canada) or any other applicable federal or provincial legislation, nor shall it constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

19.     **THIS COURT ORDERS AND DECLARES** that neither the *Bulk Sales Act* (Ontario), Sections 6(1) and (2) of the *Retail Sales Tax Act* (Ontario) nor any equivalent or similar legislation under any province or territory in Canada applies to the Transaction.

20.     **THIS COURT ORDERS** that confidential Appendix "■"to the ■ Report and Exhibits ■ through ■ of the Service Affidavit be and is hereby sealed and shall not form part of the public record pending further order of the Court.

21.     **THIS COURT ORDERS AND DECLARES** that, to the extent permitted by law, neither the Purchaser nor any permitted assignee of the Purchaser pursuant to the Sale Agreement shall be a successor to any of the Applicants and neither the Purchaser nor any permitted assignee of the Purchaser pursuant to the Sale Agreement shall assume any liability of the Applicants or in respect of the Encumbrances, other than as expressly provided for in the Sale Agreement nor shall any labour, employment or pension claims continue with respect to the Purchased Assets or be liabilities of the Purchaser.

22.     **THIS COURT ORDERS AND DECLARES** that effective upon Closing, counterparties to the Unknown Licenses (as defined in the Sales Process Order) that are deemed to be terminated pursuant to the Sales Process Order shall have no right or claims against the Purchaser or the Purchased Assets.

23.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory, administrative or governmental body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory, administrative or governmental bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

24.     **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory, administrative or governmental body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

_____

088

Schedule A – Form of Monitor's Certificate

Court File No.:  09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**
**IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION**

**APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT ACT,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**MONITOR'S CERTIFICATE**

**RECITALS**

A.      Pursuant to an Order of the Honourable Justice Morawetz of the Ontario Superior Court of Justice (the "Court") dated January 14, 2009 (as amended and restated), Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (collectively, the "Applicants") commenced proceedings pursuant to the *Companies' Creditors Arrangement Act* (Canada) and Ernst & Young Inc. was appointed as monitor (the "Monitor") in these proceedings.

B.      Pursuant to an Order of the Court dated ■ ■, 201■ (the "Approval and Vesting Order"), the Court approved an asset sale transaction (the "Transaction") contemplated by an asset sale agreement dated as of  ■ ■, 2011 (the "Sale Agreement") among NNC, NNL, Nortel Networks Inc., Nortel Networks UK Limited, Nortel Networks (Ireland) Limited, Nortel Networks S.A., the other entities identified therein as sellers (collectively, the "Sellers"), Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, and Maître Cosme Rogeau as French Liquidator, and ■, as purchaser ("■" or the "Purchaser") and provided for the vesting in the Purchaser of the Applicants' right, title and interest in and to the Purchased Assets (as defined in the Approval and Vesting Order (but excluding any Undisclosed Patent Interests for which the Purchaser pays the Exercise Price after Closing (the "Closing Date Assets")) which vesting is to be effective with respect to the Closing Date Assets upon the delivery by the Monitor to the Purchaser of a certificate confirming receipt of confirmation from each of NNC, NNL and the Purchaser that: (i) the Purchaser has paid the Purchase Price for the

Closing Date Assets as set out in the Sale Agreement; (ii) the conditions to Closing as set out in Article ■ of the Sale Agreement have been satisfied or waived by the Sellers and/or the Purchaser, as applicable; and (iii) the Transaction has been completed to the satisfaction of the Applicants and the Purchaser.

C.    Unless otherwise indicated herein, terms with initial capitals have the meanings set out in the Sale Agreement.

THE MONITOR CERTIFIES the following:

1.    NNC, NNL and the Purchaser have advised the Monitor that the Purchaser has paid and [■] has received the Purchase Price payable for the Closing Date Assets on the Closing Date pursuant to the terms of the Sale Agreement;

2.    NNC, NNL and the Purchaser have advised the Monitor that the conditions to Closing as set out in Article ■ of the Sale Agreement have been satisfied or waived by the Sellers and/or the Purchaser, as applicable; and

3.    NNC and NNL have advised the Monitor that the Transaction has been completed to the satisfaction of the Applicants.

4.    The Purchaser has advised the Monitor that the Transaction has been completed to the satisfaction of the Purchaser.

This Certificate was delivered by the Monitor at □ {TIME} on □ 2011.

> **ERNST & YOUNG INC. in its capacity as monitor in the CCAA proceedings of Nortel Networks Corporation, et. al. and not in its personal capacity**
>
> Per: _____ _____
>
> Name:
>
> Title:

090

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**APPROVAL AND VESTING ORDER**
**(Certain Patents and Other Assets)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 2138173\14

# TAB 4

Revised: May 11, 2010

091

Court File No.————: 09-CL-7950

## ONTARIO
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

THE HONOURABLE MR.       )    ■ DAY, THE ■

                                )

JUSTICE MORAWETZ       )    DAY OF ■, 2011

THE HONOURABLE _____     )     _____DAY, THE____DAY
                               )
JUSTICE _____    )     OF _____, 20__

B E T W E E N:

PLAINTIFF

Plaintiff

—and—

DEFENDANT

Defendant

## IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

## AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

## APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

DOCSTOR: 12019238173\134

## APPROVAL AND VESTING ORDER
### (Certain Patents and Other Assets)

~~THIS MOTION, made by [RECEIVER'S NAME] in its capacity as the Court-appointed receiver~~ ~~(the "Receiver") of the undertaking, property and assets of [DEBTOR] (the "Debtor") for an~~ ~~order approving the sale transaction (the "~~ **THIS MOTION**, made by Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") for the relief set out in the Notice of Motion dated ■ ■, 2011, including the approval of a transaction (the "Transaction" ~~contemplated by"~~) pursuant to an asset sale agreement ~~of purchase and sale (the "Sale Agreement") between the~~ ~~Receiver and [NAME OF PURCHASER] (the "Purchaser") dated [DATE] and appended to the~~ ~~Report of the Receiver dated [DATE] (the "Report"), and vesting in the Purchaser the Debtor's~~ ~~right, title and interest in and to the assets described in the Sale Agreement (the "Purchased~~ ~~Assets")~~dated as of ■ ■, 2011 (the "Sale Agreement") among NNC, NNL, Nortel Networks Inc., Nortel Networks UK Limited (in administration), Nortel Networks (Ireland) Limited (in administration), Nortel Networks S.A. (in administration and liquidation judiciaire), Nortel Networks France S.A.S. (in administration) and Nortel GmbH (in administration), the other entities identified therein as sellers (collectively, the "Sellers"), Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, and Maître Cosme Rogeau as French Liquidator and Ranger Inc., as purchaser (the "Purchaser") and Google Inc., as guarantor for the sale (the "Sale") of the Assets to the Purchaser, was heard this day at 39~~30~~ University Avenue, Toronto, Ontario.

~~ON READING the Report~~ **ON READING** the affidavit of ■ sworn ■ ■, 2011 (the "□ Affidavit") and the ■ report of Ernst & Young Inc. in its capacity as monitor (the "Monitor") dated ■ ■, 2011 (the "■ Report") and on hearing the submissions of counsel for the ~~Receiver,~~ ~~[NAMES OF OTHER PARTIES APPEARING]~~Applicants, the Monitor and those other parties present, no one appearing for any other person on the service list~~,~~ although properly served as

appears from the affidavit of [NAME]■ sworn [DATE]■ ■, 2011 (the "Service Affidavit"), filed[1]:

**Service**

1.     **THIS COURT ORDERS** that the time for the service of the Notice of Motion, the ■ Affidavit, the ■ Report and/or the Motion Record be and is hereby validated and abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof.

**Interpretation**

2.     **THIS COURT ORDERS AND DECLARES** that

    (a)    capitalized terms used herein and not otherwise defined shall have the meanings given to them in the Sale Agreement; and

    (b)    "Initial Order" means *the Order of the Honourable Justice* Morawetz dated January 14, 2009, as amended and restated.

**The Transaction**

3.     1. **THIS COURT ORDERS AND DECLARES** that the Transaction is hereby approved,[3] and, Subject to approval of the Sale Agreement by the United States Bankruptcy Court for the District of Delaware in the Chapter 11 Proceedings of the Chapter 11 Debtors, the execution, delivery and performance of the Sale Agreement and the other Transaction Documents by the Receiver[3]Applicants is hereby authorized and approved, with such minor amendments as the Receiver may deem necessary. The Receiver isand the Applicants are hereby authorized and directed to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the Transaction and for the conveyance of

---

[1] This model order assumes that the time for service does not need to be abridged. The motion seeking a vesting order should be served on all persons having an economic interest in the Purchased Assets, unless circumstances warrant a different approach. Counsel should consider attaching the affidavit of service to this Order.

[2] In some cases, notably where this Order may be relied upon for proceedings in the United States, a finding that the Transaction is commercially reasonable and in the best interests of the Debtor and its stakeholders may be necessary. Evidence should be filed to support such a finding, which finding may then be included in the Court's endorsement.

[3] In some cases, the Debtor will be the vendor under the Sale Agreement, or otherwise actively involved in the Transaction. In those cases, care should be taken to ensure that this Order authorizes either or both of the Debtor and the Receiver to execute and deliver documents, and take other steps.

the ~~Purchased Assets to the Purchaser.~~ Applicants' right, title and interest in and to the Assets to the Purchaser in accordance with the provisions of the Sale Agreement (including, the licenses under the Jointly Owned Patents, the Specified UK Patents, the Undisclosed Patent Interests and any other Patents granted by one or more of the Applicants to the Purchaser pursuant to the Sale Agreement and, effective upon receipt by the Sellers or any successor or assign or any receiver, trustee or liquidator appointed in respect of a Seller (or its Property as defined in the Initial Order) of the applicable Exercise Price pursuant to Section 5.19 of the Sale Agreement, any Undisclosed Patent Interests, together with all the other Assets, collectively the "Purchased Assets").

4.     **THIS COURT ORDERS AND DECLARES** that *without limiting the generality of the foregoing,* the following documents are hereby approved and the Applicants party thereto are hereby authorized and directed to perform and comply with their respective obligations thereunder:

      (a)     Closing Date License Agreement substantially in the form attached as Appendix ■ to the ■ Report; and

      (b)     the Escrow Agreement substantially in the form attached as Appendix ■ to the ■ Report.

5.     **THIS COURT ORDERS AND DECLARES** that the Applicants are authorized and directed to perform their respective obligations under the Sale Agreement and each of the Transaction Documents.

6.     ***THIS COURT ORDERS AND DECLARES*** *that upon the delivery of a* Monitor's *certificate to the Purchaser substantially in the form attached as Schedule* "A" *hereto (the* "Monitor's Certificate"), all of the Applicants' right, title and interest in and to the Purchased Assets (except any Undisclosed Patent Interests for which the Purchaser pays the Exercise Price after Closing, in which case the provisions of the balance of this paragraph shall be effective upon receipt by the Sellers or a successor or assign or any receiver, trustee or liquidator appointed in respect of such Seller (or its Property) of the applicable Exercise Price pursuant to

Section 5.19 of the Sale Agreement for the applicable Undisclosed Patent Interest) *shall vest absolutely in the Purchaser free and clear of and from*:

(a)  any and all liens, claims and interests, including, without limitation, all security interests, hypothecs, mortgages, pledges, deeds of trust, trusts or deemed trusts, *executions, levies, charges, or other financial or monetary claims,* charges, rights of first refusal, encumbrances, restrictive covenants, rights of offset or recoupment, leases or conditional sale arrangements, debts, liabilities, obligations, contractual rights and claims and rights or causes of action, obligations, demands, restrictions, consent rights, options and indemnities; and

(b)  claims and interests of any nature or kind of employees, consultants or agents or former employees, consultants or agents, of any of the Applicants arising out of the alleged invalidity, unenforceability or irregularity on any grounds of any of their assignments, transfers or waivers to or in favour of any of the Applicants, whether express or implied or by operation of contract, law or otherwise, of any or all of their right, title and interest in any of the Purchased Assets.

2.    *THIS COURT ORDERS AND DECLARES that upon the delivery of a* ~~Receiver's certificate to the Purchaser substantially in the form attached as Schedule~~ A hereto (the ~~"Receiver's Certificate"), all of the Debtor's right, title and interest in and to the Purchased Assets described in the Sale Agreement [and listed on Schedule B hereto]⁴~~ *shall vest absolutely in the Purchaser, free and clear of and from* ~~any and all security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts or deemed trusts (whether contractual, statutory, or otherwise), liens~~*, executions, levies, charges, or other financial or monetary claims,* in each case, whether or not they have attached or been perfected, registered or filed ~~and~~, whether secured, unsecured or otherwise ~~(collectively, the "Claims"⁵~~, arising prior to or subsequent to the

---

⁴ ~~To allow this Order to be free-standing (and not require reference to the Court record and/or the Sale Agreement), it may be preferable that the Purchased Assets be specifically described in a Schedule.~~

⁵ ~~The "Claims" being vested out may, in some cases, include ownership claims, where ownership is disputed and the dispute is brought to the attention of the Court. Such ownership claims would, in that case, still continue as against the net proceeds from the sale of the claimed asset. Similarly, other rights, titles or interests could also be vested out, if the Court is advised what rights are being affected, and the appropriate persons are served. It is the Subcommittee's view that a non-specific vesting out of "rights, titles and interests" is vague and therefore undesirable.~~

date of the Initial Order but prior to Closing, whether imposed by agreement, understanding, law, statute, equity or otherwise and whether allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether asserted prior to or after Closing, (collectively, the "Claims") including, *without limiting the generality of the foregoing*for the avoidance of doubt: (i) any encumbrances or charges created by *the Order of the Honourable Justice* [NAME] dated [DATE];any of the Orders made in these proceedings including the Initial Order; and (ii) all charges, security interests or claims evidenced by registrations pursuant to the *Personal Property Security Act* (Ontario) or any other personal property registry system; (all of which, together with Liens and (iii) those Claims listed on Schedule C hereto (all of whichClaims in the CCAA Cases, are collectively referred to as the "Encumbrances", which term shall not include the permitted encumbrances, easements and restrictive covenants listed on Schedule D) and, for greater certainty, this Court orders that"Encumbrances", provided however that "Encumbrances" shall not include Permitted Encumbrances (other than those specifically contemplated to be discharged by virtue of this Order), Liens created by or through the Purchaser or any of its Affiliates, and Assumed Liabilities or as otherwise set forth Section 2.1.1(a) of the Sale Agreement and Section 5.21 of the Sale Agreement. For greater certainty, all of the Encumbrances affecting or relating to the Purchased Assets are hereby expunged and discharged as against the Purchased Assets.

3.     THIS COURT ORDERS that upon the registration in the Land Registry Office for the [Registry Division of {LOCATION} of a Transfer/Deed of Land in the form prescribed by the *Land Registration Reform Act* duly executed by the Receiver][Land Titles Division of {LOCATION} of an Application for Vesting Order in the form prescribed by the *Land Titles Act* and/or the *Land Registration Reform Act*][6], the Land Registrar is hereby directed to enter the Purchaser as the owner of the subject real property identified in Schedule B hereto (the "Real Property") in fee simple, and is hereby directed to delete and expunge from title to the Real Property all of the Claims listed in Schedule C hereto.

7.     **THIS COURT ORDERS** that:

---

[6] Elect the language appropriate to the land registry system (Registry vs. Land Titles).