(a) effective upon Closing (or, in the case of any Undisclosed Patent Interests, effective upon receipt by the Sellers or any successor or assign or any receiver, trustee or liquidator appointed in respect of a Seller (or its Property as defined in the Initial Order) of the applicable Exercise Price pursuant to Section 5.19 of the Sale Agreement), all Government Entities maintaining records or data bases in which the Encumbrances are recorded, filed or registered are authorized and directed to strike such Encumbrances as they affect the Purchased Assets from their records and data bases; and

(b) if any Person or entity which has filed statements or other documents or agreements evidencing Encumbrances affecting the Purchased Assets shall not have delivered to the Applicants before the Closing (or, in the case of any Undisclosed Patent Interests, effective upon receipt by the Sellers or any successor or assign or any receiver, trustee or liquidator appointed in respect of a Seller (or its Property) of the applicable Exercise Price pursuant to Section 5.19 of the Sale Agreement) in proper form for filing and executed by the appropriate parties, discharge statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Encumbrances which the Person or entity has or may assert with respect to the Purchased Assets, then the Applicants are each hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such Person or entity with respect to the Purchased Assets.

8. 4. ~~THIS COURT ORDERS~~**THIS COURT ORDERS** that for the purposes of determining the nature and priority of Claims and Encumbrances, the net proceeds[7] from the sale of the Purchased Assets shall stand in the place and stead of the Purchased Assets, and that from and after the delivery of the ~~Receiver's Certificate~~Monitor's Certificate (or, in the case of any Undisclosed Patent Interests, effective upon receipt by the Sellers or any successor or assign or any receiver, trustee or liquidator appointed in respect of a Seller (or its Property) of the applicable Exercise Price pursuant to Section 5.19 of the Sale Agreement) all Claims and

---

[7] ~~The Report should identify the disposition costs and any other costs which should be paid from the gross sale proceeds, to arrive at "net proceeds".~~

Encumbrances shall attach to the net proceeds from the sale of the Purchased Assets with the same priority as they had with respect to the Purchased Assets immediately prior to the sale[8] Closing (or in the case of Undisclosed Patent Interests immediately prior to the date of the receipt of the Exercise Price), as if the Purchased Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the saleClosing (or in the case of Undisclosed Patent Interest(s) immediately prior to the receipt of the Exercise Price).

9.   5. THIS COURT ORDERS AND DIRECTS the ReceiverMonitor to file with the Court a copy of the Receiver'Monitor's Certificate, forthwith after delivery thereof.

6.   THIS COURT ORDERS that, pursuant to clause 7(3)(c) of the Canada *Personal Information Protection and Electronic Documents Act*, the Receiver is authorized and permitted to disclose and transfer to the Purchaser all human resources and payroll information in the Company's records pertaining to the Debtor's past and current employees, including personal information of those employees listed on Schedule "●" to the Sale Agreement. The Purchaser shall maintain and protect the privacy of such information and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Debtor.

10.   **THIS COURT ORDERS AND DECLARES** that the Transaction Documents shall be binding on the Applicants that are parties thereto, and shall not be repudiated, disclaimed or otherwise compromised in these proceedings or any subsequent receivership, bankruptcy or liquidation proceedings.

11.   **THIS COURT ORDERS AND DECLARES** that, in the event that any Applicant or any of their Affiliates owns any Undisclosed Patent Interest, no Applicant shall directly or indirectly sell, transfer, assign, convey, license or sublicense such Undisclosed Patent Interest to a Third Party, other than the Purchaser, including by operation of law, in any transaction, series of related transactions or otherwise, except as expressly permitted by Section 5.19 of the Sale

---

[8] This provision crystallizes the date as of which the Claims will be determined. If a sale occurs early in the insolvency process, or potentially secured claimants may not have had the time or the ability to register or perfect proper claims prior to the sale, this provision may not be appropriate, and should be amended to remove this crystallization concept.

Agreement, and any attempted sale, transfer, assignment, conveyance, license or sublicense not expressly permitted by Section 5.19 of the Sale Agreement shall be null and void *ab initio* and of no force or legal effect.

12. **THIS COURT ORDERS** that the Sale Agreement and the Transaction Documents and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of this Court; provided, however, that any such modification, amendment or supplement is not materially adverse to the interests of the Applicants (it being understood, for the sake of clarity and solely for the purposes of this paragraph, that no such modification, amendment or supplement shall be deemed to be materially adverse to the Applicants to the extent that the impact does not exceed two percent of the Purchase Price); and provided further that no such modifications, amendments, or supplements may be made except following two (2) days written notice to, or with the prior consent of, the Monitor.

13. **THIS COURT ORDERS AND DECLARES** that the Applicants have complied with the License Rejection Procedure approved by this Court in the Canadian Sales Process Order dated ■, 2011 (the "Sales Process Order").

**License Non-Assignment and Non-Renewal Protections**

14. **THIS COURT ORDERS** that effective from and after Closing,

   (a) the Applicants shall be deemed to have affirmatively and reasonably refused to give consent (including any consent of any Applicant that may be deemed to be given as a result of inaction by such Applicant) to any renewal, extension, assignment, amendment, waiver or modification of any license under the Transferred Patents, Specified UK Patents or Jointly Owned Patents, pursuant to any Cross-License Agreement or Outbound License Agreement (excluding (i) the Commercial Licenses, (ii) the transition services agreements (the "TSAs") and intellectual property license agreements (the "IPLAs") that the Applicants entered into with the purchasers of their various business units after the Petition Date in connection with their divestitures, (iii) any intercompany Contracts with the

Sellers (the "Intercompany Licenses") and (iv) the Technology License Contract between Northern Telecom Limited and Guangdong-Nortel Telecommunications Switching Equipment Ltd., dated November 8, 1994, as amended (the "GDNT License")) (collectively, the "License Agreements", and any one, a "License Agreement") that requires the consent of any Applicant pursuant to the terms of such License Agreement and that would have the practical effect of expanding the scope or term of the licenses to the Transferred Patents, Specified UK Patents or Jointly Owned Patents thereunder (regardless of whether such renewal, extension, assignment, amendment, waiver or modification is sought prior to or after the Applicants dissolve or otherwise cease to exist), in each case unless the Purchaser shall otherwise agree in writing, in its sole discretion;

(b) the Applicants shall be deemed to have affirmatively and reasonably refused to give consent (including any consent of any Applicant that may be deemed to be given as a result of inaction by such Applicant) (i) to any amendment, modification or waiver to the GDNT License that would have the practical effect of expanding the scope or the term of the licenses under the Transferred Patents, Specified UK Patents or Jointly Owned Patents thereunder and (ii) to any assignment of the GDNT License or any rights or obligations thereunder other than to Ericsson (as defined in the Sale Agreement) or another purchaser of all or substantially all of the assets or all of the outstanding shares of Guangdong Nortel Telecommunication Equipment Company Ltd., in each case, unless the Purchaser shall otherwise agree in writing, in its sole discretion.

(c) the Applicants shall be deemed to have affirmatively and reasonably refused to give consent (including any consent of any Applicant that may be deemed to be given as a result of inaction by such Applicant) (i) to any amendment or modification to the IPLAs that would have the practical effect of expanding the scope or the term of the licenses under the Transferred Patents, Specified UK Patents or Jointly Owned Patents thereunder and (ii) to any assignment of any IPLA by the license counterparty or any rights or obligations of the license

counterparty under any IPLA, in each case, unless the Purchaser shall otherwise agree in writing, in its sole discretion.

(d) the Applicants shall be deemed to have affirmatively and reasonably refused to give consent (including any consent of any Applicant that may be deemed to be given as a result of inaction by such Applicant) to any amendment, modification, renewal or extension to the TSAs that would have the practical effect of expanding the scope or the term of the licenses under the Transferred Patents, Specified UK Patents or Jointly Owned Patents thereunder beyond June 30, 2012 unless the Purchaser shall otherwise agree in writing, in its sole discretion.

(e) the Applicants shall be deemed to have affirmatively and reasonably refused to give consent (including any consent of any Applicant that may be deemed to be given as a result of inaction by such Applicant) to any amendment or modification of any Commercial License that would have the practical effect of expanding the scope or the term of the licenses under the Transferred Patents, Specified UK Patents or Jointly Owned Patents thereunder except (i) to the extent such licenses, as amended or modified, would be permitted to be granted under the Closing Date License Agreement or (ii) to the extent the Purchaser shall otherwise agree in writing, in its sole discretion.

(f) the Applicants shall be deemed to have affirmatively and reasonably refused to give consent (including any consent of any Applicant that may be deemed to be given as a result of inaction by such Applicant) (i) to any amendment or modification of any Intercompany License that would have the practical effect of expanding the scope or the term of the licenses under the Transferred Patents, Specified UK Patents or Jointly Owned Patents thereunder except to the extent such licenses, as amended or modified, would be permitted to be granted under the Closing Date License Agreement, and (ii) to any assignment of any Intercompany License by the license counterparty or any rights or obligations of

the license counterparty under any Intercompany License, in each case, unless the Purchaser shall otherwise agree in writing, in its sole discretion.

(g) no Applicant shall have the right or power to transfer any of its obligations, right, title or interest in the licenses under the Transferred Patents, Specified UK Patents and Jointly Owned Patents under:

  (i) any License Agreement,

  (ii) the GDNT License,

  (iii) any Intercompany License,

  (iv) (other than in connection with the consolidation, wind-down, reorganization or restructuring of the Applicants and their affiliates, including to the Applicants under confirmed plan(s) of arrangement) any IPLA, or

  (v) (other than the transfer by the Applicants of Retained Contracts or contracts relating to the disposal of Inventory, in each case to the extent a sublicense to the assignee of such contract is permitted by the Closing Date License Agreement) any Commercial License,

in each case, to any other person from and after the Closing, and any purported renewal, extension, assignment, amendment, waiver, transfer or modification of a License Agreement, Intercompany License, TSA, IPLA, GDNT License or Commercial License that would contravene the provisions of subparagraphs 14(a) through (g) hereof shall be null and void *ab initio* and unenforceable and of no force or effect, and

(h) the Purchaser is hereby irrevocably appointed (such appointment being coupled with an interest) as each Applicant's attorney-in-fact, with full authority in the place and stead of such Applicant and in the name of such Applicant, from time to time from and after the Closing in the Purchaser's sole discretion, subject to the provisions of paragraph 5.25 of the Sale Agreement, (x) to take any and all action and to execute and deliver any and all instruments that the Purchaser may deem necessary or advisable to accomplish the purposes of sub-paragraphs 14(a) through (g) of this Order and (y) regardless of whether or not any Applicant party to the applicable License Agreement is then in existence, to terminate the license

under the Transferred Patents, Specified UK Patents or Jointly Owned Patents in any License Agreement (including by delivering a notice of termination on behalf of an Applicant party thereto, regardless of whether such Applicant is then in existence) upon the occurrence of any specific date or event or the existence of any specific circumstance to the extent that the occurrence of such date or event or the existence of such circumstance gives any Applicant (regardless of whether such Applicant is then in existence) a right to terminate such License Agreement pursuant to the terms thereof (the provisions set forth in subparagraphs 14(a) through (h) hereof collectively, the "License Non-Assignment and Non-Renewal Protections").

*For the avoidance of doubt, the License Non-Assignment and Non-Renewal Protections shall not limit in any way the applicable Applicants' obligations to comply with the provisions of Section 5.13(b) of the Sale Agreement.*

15. THIS COURT ORDERS that the License Non-Assignment and Non-Renewal Protections shall not constitute the assignment of the License Agreements, Intercompany Licenses, TSAs, IPLAs, GDNT License or Commercial Licenses to, or assumption of the License Agreements, Intercompany Licenses, TSAs, IPLAs, GDNT License or Commercial Licenses by, the Purchaser, other than as the Purchaser may otherwise agree in an assumption agreement between the Purchaser and NNL in satisfaction of the requirements of paragraph 7 of the CDMA Vesting Order.

**Alternate Bid**

16. **[THIS COURT ORDERS AND DECLARES that in the event that the Transaction contemplated by the Sale Agreement cannot be consummated in accordance with the Sale Agreement, the Alternate Bid (as defined in the ■ Affidavit) be and is hereby approved and the execution of the asset sale agreement pursuant to the Alternate Bid by the Applicants is approved and the Applicants and the Monitor shall be authorized to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the transaction contemplated by the Alternate Bid and for the conveyance of**

the Applicants' right, title and interest in and to the Purchased Assets to the Alternative Bidder.]

**Proceeds**

17. **THIS COURT ORDERS** that all the proceeds of the Transaction, subject to the price adjustments and the Purchaser's rights under the Sale Agreement and less applicable transfer or value added taxes incurred by the Sellers, shall be deposited into an Escrow Account (as defined in the Interim Funding and Settlement Agreement entered into on June 9, 2009 (the "IFA")) pursuant to an escrow agreement to be negotiated and agreed to by all of the Sellers and in accordance with Section 12.g of the IFA, and such proceeds shall not be distributed in advance of either (i) agreement by all of the Selling Debtors (as defined in the IFA) as to the distribution of such proceeds (in accordance with the IFA and subject to the requirements of Section 12.g of the IFA) or (ii) in the case where the Selling Debtors (as defined in the IFA) fail to reach such agreement, determination by the relevant dispute resolver(s) in accordance with the terms of the Interim Sales Protocol (as such term is defined in the IFA and subject to the requirements of Section 12.g of the IFA), which Interim Sales Protocol shall be approved by this Court.

**Miscellaneous**

18.   7. **THIS COURT ORDERS** that, notwithstanding:

    (a)    the pendency of these proceedings;

    (b)    any applications for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act* (Canada) in respect of any of the DebtorApplicants and any bankruptcy order issued pursuant to any such applications; and

    (c)    any assignment in bankruptcy made in respect of any of the Debtor;Applicants,

the provisions of the Transaction Documents and the vesting of the Applicants' right, title and interest in and to the Purchased Assets in the Purchaser pursuant to this Order shall be binding on any trustee in bankruptcy that may be appointed in respect of any of the DebtorApplicants and shall not be void or voidable by creditors of the DebtorApplicants, nor shall it constitute nor or be

deemed to be a ~~settlement, fraudulent~~ preference, ~~assignment,~~ fraudulent conveyance, transfer at undervalue, or other ~~reviewable~~challengeable or voidable transaction under the *Bankruptcy and Insolvency Act* (Canada) or any other applicable federal or provincial legislation, nor shall it constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

19.   ~~8.~~ **THIS COURT ORDERS AND DECLARES** that ~~the Transaction is exempt from the application of~~neither the *Bulk Sales Act* (Ontario), Sections 6(1) and (2) of the *Retail Sales Tax Act* (Ontario) nor any equivalent or similar legislation under any province or territory in Canada applies to the Transaction.

20.   **THIS COURT ORDERS** that confidential Appendix "■" to the ■ Report and Exhibits ■ through ■ of the Service Affidavit be and is hereby sealed and shall not form part of the public record pending further order of the Court.

21.   **THIS COURT ORDERS AND DECLARES** that, to the extent permitted by law, neither the Purchaser nor any permitted assignee of the Purchaser pursuant to the Sale Agreement shall be a successor to any of the Applicants and neither the Purchaser nor any permitted assignee of the Purchaser pursuant to the Sale Agreement shall assume any liability of the Applicants or in respect of the Encumbrances, other than as expressly provided for in the Sale Agreement nor shall any labour, employment or pension claims continue with respect to the Purchased Assets or be liabilities of the Purchaser.

22.   **THIS COURT ORDERS AND DECLARES** that effective upon Closing, counterparties to the Unknown Licenses (as defined in the Sales Process Order) that are deemed to be terminated pursuant to the Sales Process Order shall have no right or claims against the Purchaser or the Purchased Assets.

23.   ~~9.~~ **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory ~~or~~, administrative or governmental body having jurisdiction in Canada ~~or in~~, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the ~~Receiver and its~~Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory ~~and~~, administrative or governmental bodies are

DOCSTOR: ~~1201923~~8173\~~1~~34

hereby respectfully requested to make such orders and to provide such assistance to the ~~Receiver~~Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the ~~Receiver and its~~Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

24. **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory, administrative or governmental body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

Schedule A – Form of ~~Receiver~~Monitor's Certificate

Court File No.———: 09-CL-7950

## ONTARIO
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)
## IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

~~COMMERCIAL LIST~~

~~BETWEEN:~~

~~PLAINTIFF~~

~~Plaintiff~~

~~–and–~~

~~DEFENDANT~~

~~Defendant~~

## AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

## APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

~~RECEIVER~~MONITOR'S CERTIFICATE

**RECITALS**

A. Pursuant to an Order of the Honourable ~~[NAME OF JUDGE]~~Justice Morawetz of the Ontario Superior Court of Justice (the "Court") dated ~~[DATE OF ORDER], [NAME OF RECEIVER] was appointed as the receiver (the "Receiver") of the undertaking, property and assets of [DEBTOR] (the "Debtor")~~January 14, 2009 (as amended and restated), Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Global Corporation,

DOCSTOR: ~~12019238~~173\~~1~~34

Nortel Networks International Corporation and Nortel Networks Technology Corporation (collectively, the "Applicants") commenced proceedings pursuant to the *Companies' Creditors Arrangement Act* (Canada) and Ernst & Young Inc. was appointed as monitor (the "Monitor") in these proceedings.

B.      Pursuant to an Order of the Court dated ~~[DATE]~~ ■ ■, 201■ (the "Approval and Vesting Order"), the Court approved ~~the~~ an asset sale transaction (the "Transaction") contemplated by an asset sale agreement ~~of purchase and sale made~~ dated as of ~~[DATE OF AGREEMENT] (the "Sale Agreement") between the Receiver [Debtor] and [NAME OF PURCHASER] (the "Purchaser"~~ ■ ■, 2011 (the "Sale Agreement") among NNC, NNL, Nortel Networks Inc., Nortel Networks UK Limited, Nortel Networks (Ireland) Limited, Nortel Networks S.A., the other entities identified therein as sellers (collectively, the "Sellers"), Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, and Maître Cosme Rogeau as French Liquidator, and ■, as purchaser ("■" or the "Purchaser") and provided for the vesting in the Purchaser of the ~~Debtor's~~ Applicants' right, title and interest in and to the Purchased Assets, (as defined in the Approval and Vesting Order (but excluding any Undisclosed Patent Interests for which the Purchaser pays the Exercise Price after Closing (the "Closing Date Assets")) which vesting is to be effective with respect to the ~~Purchased~~ Closing Date Assets upon the delivery by the ~~Receiver~~ Monitor to the Purchaser of a certificate confirming receipt of confirmation from each of NNC, NNL and the Purchaser that: (i) the ~~payment by the~~ Purchaser ~~of~~ has paid the Purchase Price for the ~~Purchased~~ Closing Date Assets as set out in the Sale Agreement; (ii) ~~that~~ the conditions to Closing as set out in ~~section ●~~ Article ■ of the Sale Agreement have been satisfied or waived by the ~~Receiver~~ Sellers and/or the Purchaser, as applicable; and (iii) the Transaction has been completed to the satisfaction of the ~~Receiver~~ Applicants and the Purchaser.

C.      Unless otherwise indicated herein, terms with initial capitals have the meanings set out in the Sale Agreement.

THE ~~RECEIVER~~ MONITOR CERTIFIES the following:

1.      ~~The~~ NNC, NNL and the Purchaser have advised the Monitor that the Purchaser has paid and ~~the Receiver~~ [■] has received the Purchase Price payable for the ~~Purchased~~ Closing Date Assets ~~payable~~ on the Closing Date pursuant to the terms of the Sale Agreement;

2.      ~~The~~ NNC, NNL and the Purchaser have advised the Monitor that the conditions to Closing as set out in ~~section ●~~ Article ■ of the Sale Agreement have been satisfied or waived by the ~~Receiver~~ Sellers and/or the Purchaser, as applicable; and

3.      ~~The~~ NNC and NNL have advised the Monitor that the Transaction has been completed to the satisfaction of the ~~Receiver~~ Applicants.

4.      The Purchaser has advised the Monitor that the Transaction has been completed to the satisfaction of the Purchaser.

~~- 2 -~~ - 19 -

This Certificate was delivered by the ~~Receiver~~Monitor at ─────~~{□~~ {TIME}~~}~~ on ───── ~~[DATE]~~ □ 2011.

      ~~[NAME OF RECEIVER], in its capacity as Receiver of the undertaking, property and assets of [DEBTOR], and not in its personal capacity~~

      ~~Per:~~ _____

          ~~Name:~~

          ~~Title:~~

~~Schedule B - Purchased Assets~~

      **ERNST & YOUNG INC. in its capacity as monitor in the CCAA proceedings of Nortel Networks Corporation, et. al. and not in its personal capacity**

      Per:

      Name:

      Title:

DOCSTOR: ~~12019~~38173\~~3~~4

Revised: May 11, 2010

**IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

Court File No: 09-CL-7950

**ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**APPROVAL AND VESTING ORDER**
(Certain Patents and Other Assets)

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4

**Derrick Tay** LSUC#: 21152A
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam** LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

Schedule C — Claims to be deleted and expunged from title to Real Property

DOCSTOR: 1201923817311~~34~~

111

~~- 2 -~~

~~Schedule D - Permitted Encumbrances, Easements and Restrictive Covenants related to the Real Property~~

~~(unaffected by the Vesting Order)~~

DOCSTOR: 1201923817~~3~~\1~~3~~4

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**MOTION RECORD**
**CANADIAN APROVAL AND VESTING ORDER REGARDING CERTAIN PATENTS AND OTHER ASSETS**
(returnable June 30, 2011)

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 2152112\1