IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------X
                                          :
In re                                     :   Chapter 11
                                          :
Nortel Networks Inc., et al.¹             :   Case No. 09-10138 (KG)
                                          :
              Debtors.                    :   Jointly Administered
                                          :   Re: D.I.s 5143, 5253
------------------------------------------------------------X
```

**DEBTORS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR
AUTHORIZATION AND APPROVAL OF THE SALE OF INTERNET NUMBERS
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), respectfully submit this reply (the "Reply") in response to the statement (the "Statement") of the Assistant Deputy Minister, Strategic Policy Sector of the Department of Industry, a department of the Government of Canada ("Industry Canada"), to the Debtors' Motion to Approve an Order (i) Authorizing and Approving the Sale of Internet Numbers Free and Clear of all Liens, Claims, Encumbrances and Interests; (ii) Authorizing and Approving Entry into a Purchase and Sale Agreement; (iii) Authorizing the Filing of Certain Documents Under Seal, and (iv) Granting Related Relief [D.I. 5143] (the "Motion"), and in further support of the Motion.

**Preliminary Statement**

1.      By the Motion, NNI seeks approval of the sale of certain IPv4 numbers (the "Internet Numbers") to Microsoft Corporation ("Microsoft") (the "Proposed Transaction").

---
[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2856), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).

Since the filing of the Motion, Microsoft and the American Registry for Internet Numbers, Ltd. ("ARIN") have had certain discussions regarding the Proposed Transaction, the result of which has been that Microsoft and ARIN have agreed to enter into a legacy registration services agreement that would apply to the Internet Numbers after they have been transferred to Microsoft, and Microsoft proposed to amend the sale agreement with NNI and the proposed form of sale order. On April 15, 2011, the Debtors filed an amended and restated asset sale agreement (the "Amended Purchase Agreement") and revised proposed form of order granting the Motion (the "Revised Order") with the Court [D.I. 5252]. NNI understands that neither ARIN nor the Internet Corporation for Assigned Names and Numbers opposes the transaction pursuant to the Amended Purchase Agreement and Revised Order.

2.     Shortly after the filing of the Amended Purchase Agreement and Revised Order but apparently without having accounted for these revised documents, Industry Canada filed a letter with the Court that asserts that the Statement is filed in support of "ARIN's interventions" in these chapter 11 cases, and to bring to the Court's attention "substantive governmental and policy concerns that arise from the sale of Internet numbers in the manner and on the terms suggested in the Debtors' Motion, the Proposed Order annexed to the Motion, as well as the Asset Sale Agreement."

3.     The Statement is flawed both substantively and procedurally, and should not be considered by this Court when deciding the Motion. Industry Canada has not established itself as a party in interest in these proceedings, nor demonstrated any harm it would incur if the sale were authorized. Furthermore, the concerns expressed in the Statement have, to the best of the Debtors' knowledge and belief, been resolved by the Amended Purchase Agreement and Revised Order. No objections were filed to the Proposed Transaction prior to the April 4 objection

deadline, and the Debtors anticipate that the Motion will be otherwise unopposed at the sale hearing currently scheduled for April 26, 2011. While NNI has been informed by others that Industry Canada no longer has any concerns regarding the Proposed Transaction and intends to file a letter with the Court confirming its non-opposition, NNI files this reply in an abundance of caution since such a letter has not be filed to date.

## Argument

**A.    Industry Canada Has No Standing to Object to the Motion**

4.     As a threshold matter, Industry Canada has no standing to object to the Proposed Transaction. Industry Canada is not a party in interest in these proceedings for purposes of section 1109(b) of the Bankruptcy Code, as it is not a creditor of NNI, did not assign the Internet Numbers to NNI or its predecessors in interest, and does not claim to have any regulatory authority over their sale and transfer. Furthermore, Industry Canada has made no showing that it has any interest in the Internet Numbers or that it will suffer direct or indirect financial harm should the Proposed Transaction be approved. *See, e.g.*, *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985) (requiring that a party in interest have a "sufficient stake in the proceedings so as to require representation"); *In re City of Bridgeport*, 128 B.R. 30, 31-32 (Bankr. D. Conn. 1991) (holding that a "party in interest" means "an entity that has a direct legal interest at issue in the case, rather than an entity that is merely interested in the outcome"). Industry Canada may profess to be "deeply concerned" about the effect of a finding that legacy IP numbers are not subject to certain "Internet governance structures", but its individual concerns are not sufficient to give it standing to appear and be heard on the Proposed Transaction.

**B.     The Statement Is Procedurally Improper**

5.      Industry Canada has not adhered to the procedural formalities required for its opinion on the policy implications of the Proposed Transaction to be heard in these proceedings and considered by the Court when ruling on the Motion. The Statement is not a timely formal objection, filed through counsel after making an appearance in the case, on or before the April 4, 2011 objection deadline.[2]

6.      Furthermore, the Statement cannot be considered an amicus brief filed in support of another party's objection. Although the Statement states that it is "in support of ARIN's interventions", ARIN has not appeared in these proceedings or filed an objection to the Proposed Transaction. Even were they to have done so, Industry Canada did not request Court permission to appear as an amicus curiae in this matter. 3B C.J.S. Amicus Curiae § 3 (2011) (noting that the "an amicus curiae may be appointed by the court *sua sponte* or may appear by leave of the court"). *See also, e.g.*, *In re City of Bridgeport*, 128 B.R. at 32 (holding that an entity should be granted amicus status only where it has a "special interest in the proceeding" and "its participation aids the court in resolving the issues before it").

**C.     The Objections Raised in the Statement Have Been Resolved**

7.      More significant than the procedural inadequacies of the Statement is the fact that the concerns expressed by Industry Canada have been addressed by the Revised Order and the Amended Purchase Agreement.

8.      In the Statement, Industry Canada raises two purported objections to the Proposed Transaction: (i) that the Debtors claim to have a property interest in the Internet numbers, rather

---

[2] While the Debtors agreed to extend the time for ARIN to file an objection prior to the time agreement on the Revised Order and Amended Purchase Agreement was reached, no other party in interest requested or was granted a similar extension.

than a simple right of use, and (ii) that the Debtors contend that "legacy" numbers assigned before ARIN was established, like the Internet Numbers, are not subject to ARIN's transfer restrictions.  While the Debtors believe that each of those statements are correct, and are prepared to prove and defend each of those facts, in considering whether to approve the Amended Purchase Agreement and enter the Revised Order, the Court is not being asked to rule on either of these points.

9. First, under the Amended Sale Agreement NNI is proposing to transfer only the "Seller's Rights" to the Internet Numbers, defined as "Seller's exclusive right to use the Legacy Number Blocks, Seller's exclusive right to transfer the Legacy Number Blocks, and any other legal and equitable rights the Seller may have in and to, the Legacy Number Blocks." The Revised Order incorporates similar provisions.

10. Second, the revisions reflected in the Amended Sale Agreement and Revised Order were the result of negotiations between Microsoft, ARIN and NNI and, accordingly, ARIN's counsel has informed NNI that it does not oppose entry of the Revised Order.  On the contrary, ARIN issued a press release that states that they are "pleased that Microsoft has followed the Internet community's adopted policies for such transfers." Press Release, American Registry for Internet Numbers, ARIN and Microsoft Recognize Transfer of IP Addresses Per Community Policy (April 15, 2011), https://www.arin.net/about_us/media/releases/20110415.html. Accordingly, the Court need not consider Industry Canada's views as to ARIN's policies where ARIN is not raising any such objection itself.

WHEREFORE, the Debtors respectfully request that this Court (i) grant the Motion and the relief requested therein, (ii) enter the Revised Order, and (iii) grant such other and further relief as it deems just and proper.

Dated:  April 20, 2011
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and –

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Alissa T. Gazze*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa T. Gazze
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*