# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                              :

*In re*                              :        Chapter 11

                              :

Nortel Networks Inc., *et al.*,[1]     :        Case No. 09-10138 (KG)

                              :

                Debtors.      :        Jointly Administered

                              :

                              :        **Hearing date: May 10, 2011 9:30 am (ET)**

                              :        **Objections due: May 3, 2011 4:00 pm (ET)**

-------------------------------------------------------- X

## APPLICATION OF THE DEBTORS PURSUANT TO 11 U.S.C. § 327(a) TO RETAIN AND EMPLOY KEIGHTLEY & ASHNER LLP AS SPECIAL PENSION BENEFITS COUNSEL FOR THE DEBTORS *NUNC PRO TUNC* TO APRIL 1, 2011

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Application") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 327(a), 328(a), 329, 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) authorizing the employment and retention of Keightley & Ashner LLP ("Keightley & Ashner" or the "Firm") as special pension benefits counsel for the Debtors to provide advice and guidance to the Debtors relating to employee benefits issues, including advice and guidance that will allow the Debtors to

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

evaluate the claims filed by the PBGC in the above-captioned cases and to develop a strategy to resolve such claims (the "Pension Matters"), *nunc pro tunc* to April 1, 2011; (ii) approving the terms and conditions under which Keightley & Ashner will be retained and compensated; and (iii) granting such other and further relief as the Court deems just and appropriate.  In support of this Application, the Debtors rely upon the Declaration of James J. Keightley (the "Keightley Declaration"), attached hereto as Exhibit B.  In further support of this Application, the Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105(a), 327(a), 328(a), 329, 330 and 331 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1.

### Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate their remaining businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

its businesses in the event that it was unable to maximize value through sales.  Since then, Nortel

has sold many of its business units and assets to various purchasers.  Efforts continue to be made

with respect to the realization of value from Nortel's remaining assets.  For further information

regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed

by the Debtors and http://dm.epiq11.com/nortel.

## Relief Requested

7.      By this Application, the Debtors seek entry of an order substantially in the form

attached hereto as Exhibit A, pursuant to sections 105(a), 327(a), 328(a), 329, 330 and 331 of the

Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1: (i) authorizing the

employment and retention of Keightley & Ashner as special pension benefits counsel for the

Debtors, *nunc pro tunc* to April 1, 2011, in order to advise the Debtors in connection with the

Pension Matters; (ii) approving the terms and conditions under which Keightley & Ashner will

be retained and compensated, as outlined in that certain agreement, effective as of April 1, 2011

and attached hereto as Exhibit C (the "Engagement Letter"); and (iii) granting such other and

further relief as the court deems just and proper.

## Basis for Relief

8.      Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable

powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

9.      Under section 327 of the Bankruptcy Code, a debtor in possession may employ

one or more professionals "that do not hold or represent an interest adverse to the estate, and that

are disinterested persons" to assist the debtor in possession in carrying out its duties under the

Bankruptcy Code.  11 U.S.C. §327(a).

10.     Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

11.     Bankruptcy Rule 2014 requires that an application for retention of a professional include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).   Local Rule 2014-1 further requires that "[a]ny entity seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . . shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval." Del. Bankr. L. R. 2014-1(a).

12.     By this Application, the Debtors request that the Court approve the employment and retention of Keightley & Ashner as set forth herein.   The proposed retention of the Firm is beneficial to the Debtors' estates and the professional compensation arrangements (as described in the Engagement Letter) provide certainty and proper inducement for Keightley & Ashner to act expeditiously and prudently with respect to the matters for which it will be employed.

13.     The Debtors also request approval of the employment of the Firm *nunc pro tunc* to April 1, 2011.   Such relief is warranted by the extraordinary circumstances presented by these cases. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention.  See In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal dismissed,

909 F.2d 1476 (3d Cir. 1990).  The continued complexity and activity that have characterized these cases have necessitated that the Debtors and their professionals focus their immediate attention on certain matters, and promptly devote resources to the affairs of the Debtors pending submission and approval of this Application.

**Selection of Keightley & Ashner and Scope of Services**

14.     During the course of this bankruptcy proceeding, Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb") and Morris Nichols Arsht & Tunnell LLP ("Morris Nichols") (collectively, the "Firms") have acted as general bankruptcy counsel and Delaware bankruptcy counsel, respectively.  The Firm will support Cleary Gottlieb in evaluating the claims of the Pension Benefit Guaranty Corporation (the "PBGC") and will assist Cleary Gottlieb in developing strategies to resolve the PBGC's claims.  Due to the unique and complex issues raised by the Debtors' pension plans, the Debtors will benefit from the Firm's advice and guidance in all matters relating to the PBGC and the unique experience of its attorneys who have worked within the PBGC in responsible legal positions for many years.  For such reasons, the Debtors seek retention of the Firm pursuant to this Application.

15.     Keightley & Ashner is well-suited to provide the type of legal services required by the Debtors.  The Debtors seek to retain the Firm as their attorneys because of, among other reasons, Keightley & Ashner's experience in and knowledge of the regulatory framework that governs the Debtors' pension plans, and in particular the Firm's experience in representing debtor clients in the bankruptcy context.  The Firm has an excellent reputation for providing the type of specialized legal services that the Debtors require to handle the Pension Matters.

16.     The Debtors believe that the retention of Keightley & Ashner fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals in

6

these cases.  Keightley & Ashner will work with the Debtors and the Firms to ensure that legal services by each of the Firms, as well as Keightley & Ashner, are provided in an efficient, cost-effective and non-duplicative manner, with Cleary Gottlieb being chiefly responsible for providing counsel on the Pension Matters and Keightly & Ashner advising the Debtors and supporting Cleary Gottlieb in handling discrete issues in connection with the Pension Matters.

17.    As set forth in the Keightley Declaration, Keightley & Ashner will render the following services to the Debtors:

    I.    Acting as special pension benefits counsel in connection with the Pension Matters, which activities shall include, but are not limited to:

        a.    Providing advice and guidance to the Debtors that will allow the Debtors to evaluate the PBGC's claims;

        b.    Supporting Cleary Gottlieb in evaluating the PBGC's claims; and

        c.    Assisting Cleary Gottlieb in developing strategies to resolve the PBGC's claims.

### Keightley & Ashner's Disinterestedness

18.    To the best of the Debtors' knowledge and except as disclosed in the Keightley Declaration, Keightley & Ashner has not represented, and does not have any connection, with the Debtors, their creditors, their insiders, their shareholders, their respective attorneys or accountants, or any other parties in interest in any matters relating to the Debtors and their estates.

19.    As noted in the Keightley Declaration, Keightley & Ashner currently represents, and has in the past three years represented, certain parties in interest in matters wholly unrelated to the Debtors' chapter 11 cases.  The Firm has informed the Debtors of its ongoing and past representation of such entities. The Debtors have consented to Keightley & Ashner's continued representation of any of these parties in matters wholly unrelated to these proceedings, and

believe that the Firm's past, current, and future representation of any of these parties will not in any way adversely affect Keightley & Ashner's representation of the Debtors.

20.    As set forth in the Keightley Declaration:

I.    Neither Keightley & Ashner nor any attorney or other professional at the Firm holds or represents an interest materially adverse to the Debtors' estates.

II.    Neither Keightley & Ashner nor any attorney or other professional at the Firm is or was a creditor, an equity security holder or an insider of the Debtors.

III.    Neither Keightley & Ashner nor any attorney or other professional at the Firm is or was, within two years before the Petition Date, a director, officer, or employee of the Debtors.

IV.    No attorney or other professional at the Firm is related to the Hon. Kevin Gross or has a connection to the U.S. Trustee or to any known employee in the office thereof.

21.    To the best of the Debtors' knowledge and as disclosed in the Keightley Declaration, Keightley & Ashner does not hold or represent any interest adverse to the Debtors or their estates, Keightley & Ashner is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, and the Firm's employment and retention by the Debtors is necessary and in the best interests of the Debtors and their estates.

22.    Keightley & Ashner will periodically review its files during the pendency of this retention to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, the Firm will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration if needed, as required by Bankruptcy Rule 2014(a).

## **Professional Compensation**

23.     Keightley & Ashner intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of the Court, and consistent with the proposed compensation arrangement set forth in the Engagement Letter (the "Fee Structure").

24.     Keightley & Ashner and the Debtors have negotiated the terms of the Engagement Letter, which reflect commercially reasonable compensation and employment terms.  Thus, the Debtors request approval of the Engagement Letter, including the Fee Structure, and the expense reimbursement provisions pursuant to section 328(a) of the Bankruptcy Code.

25.     In summary, the agreed upon hourly rates for Keightley & Ashner will initially be $700 to $750 for attorneys, $550 to $600 for other professionals, and $175 for paralegals or law clerks.

26.     Keightley & Ashner is customarily entitled to reimbursement for all expenses incurred by it in connection with the representation of a client in a given matter.  Such expenses may include, without limitation, travel costs, long distance calls, express mail, special or hand deliveries, copying costs, document processing, computerized legal research, court fees, expert fees, transcript costs and, in general, all identifiable expenses that would not have been incurred except for representation of a particular client.  In addition, under the scope of its proposed employment, Keightley & Ashner may require the retention of one or more experts who may or may not provide testimony in connection with the Pension Matters.

27.     Given the specialized nature of the issues which Keightley & Ashner may be required to address in the performance of its services hereunder, the Firm's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market

price for Keightley & Ashner's services for engagements of this nature, the Debtors believe that the Fee Structure described above is reasonable under the standards set forth in section 328 (a) of the Bankruptcy Code.

## Notice

28.     Notice of the Motion has been given via overnight mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

29.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  April 25, 2011
           Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

              - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Alissa T. Gazze*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa T. Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*