031

Court File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

SIXTY-FOURTH REPORT OF THE MONITOR
DATED APRIL 25, 2011

032

## TABLE OF CONTENTS

                                                                     **Page**

I.      INTRODUCTION...................................................................................................1

II.     PURPOSE...........................................................................................................3

III.    TERMS OF REFERENCE ................................................................................4

IV.     BACKGROUND ................................................................................................5

V.      THE HWT OVERVIEW.....................................................................................6

VI.     JANUARY INTERIM DISTRIBUTION, TERMINATION FUND PAYMENT AND
        APRIL SIB/STB PAYMENT...............................................................................8

VII.    MAY/JUNE INTERIM DISTRIBUTION.........................................................11

VIII.   MONITOR'S RECOMMENDATION ..............................................................12

033

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS*
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**SIXTY-FOURTH REPORT OF THE MONITOR**
**DATED APRIL 25, 2011**

## I.    INTRODUCTION

1.    On January 14, 2009 (the "**Filing Date**") Nortel Networks Corporation ("**NNC**" and collectively with all its subsidiaries "**Nortel**" or the "**Company**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "**Applicants**") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("**CCAA**"). Pursuant to the Order of this Honourable Court dated January 14, 2009, as amended and restated (the "**Initial Order**"), Ernst & Young Inc. was appointed as the Monitor of the Applicants (the "**Monitor**") in the CCAA proceedings. The stay of proceedings was extended to June 30, 2011, by this Honourable Court in its Order dated February 25, 2011.

2.    Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries concurrently filed voluntary petitions under Chapter 11 of Title 11 of the U.S. Bankruptcy Code (the "**Code**") in the United States Bankruptcy Court for the District of Delaware (the "**U.S.**

034

Court") on January 14, 2009 (the "**Chapter 11 Proceedings**"). As required by U.S. law, an official unsecured creditors committee (the "**Committee**") was established in January, 2009.

3.     An *ad hoc* group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "**Bondholder Group**"). In addition, pursuant to Orders of this Honourable Court dated May 27, 2009, July 22, 2009 and July 30, 2009, representative counsel was appointed on behalf of the former employees of the Applicants, the continuing employees of the Applicants and the LTD Beneficiaries, respectively, and each of these groups is participating in the CCAA proceedings.

4.     Nortel Networks (CALA) Inc. (together with NNI and certain of its subsidiaries that filed on January 14, 2009, the "**U.S. Debtors**") filed a voluntary petition under Chapter 11 of Title 11 of the Code in the U.S. Court on July 14, 2009.

5.     Nortel Networks UK Limited ("**NNUK**") and certain of its subsidiaries located in EMEA were granted Administration orders (the "**UK Administration Orders**") by the High Court of England and Wales on January 14, 2009 (collectively the "**EMEA Debtors**"). The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as Administrators of the various EMEA Debtors, except for Ireland, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively the "**Joint Administrators**").

6.     Subsequent to the Filing Date, Nortel Networks SA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France

pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court.

7.    The CCAA proceedings and the UK Administration proceedings of NNUK have been recognized by the U.S. Court as foreign main proceedings under Chapter 15 of the Code.

8.    Subsequent to the Filing Date, certain other Nortel subsidiaries have filed for creditor protection or bankruptcy proceedings in the local jurisdiction in which they are located.

## II.    PURPOSE

9.    The purpose of this Sixty-Fourth Report of the Monitor (the "**Sixty-Fourth Report**") is to seek this Honourable Court's approval of a second interim distribution to the Income Beneficiaries on account of their Income Benefits from funds held in the HWT (the "**May/June Interim Distribution**") and such ancillary relief as is just and convenient.

10.    As discussed in the Monitor's Sixty-Second Report dated April 4, 2011 (the "**Sixty-Second Report**"), although there is increased certainty regarding the outcome of some of the matters referred to therein and below, some uncertainty remains, including as a result of an application by counsel for certain LTD Beneficiaries for leave to appeal the HWT Allocation Order to the Supreme Court of Canada.  Accordingly, the Monitor is not yet able to recommend that a final distribution be made from the HWT.

11.    The LTD Beneficiaries' Representative, the Former Employees' Representatives and the CAW have asked the Monitor to bring this motion to provide a further interim payment to the Income Beneficiaries to assist them during the period between the termination of benefits on December 31, 2010 and a final distribution of the HWT corpus.

12.     As the Monitor advised in the Sixty-Second Report, the Monitor is bringing this motion in response to these requests.   The Monitor is recommending that the amount of the May/June Interim Distribution of the HWT corpus to each Income Beneficiary be the amount that, when taken with the January Interim Distribution, will be  10% of his or her Income Benefits in pay, calculated in accordance with the methodology used for the January Interim Distribution (the "**Maximum 10% Interim Distribution**"), provided that the payment shall not exceed an additional two months of benefits, bringing the maximum number of months to 5 months.  (As discussed below, payments from the hardship fund and the termination fund are being made in April).

13.     The LTD Beneficiaries' Representative, the Former Employees' Representatives, the Continuing Employees' Representatives, CAW Counsel and the Independent Counsel (the "**Consenting Parties**") each consent to the within motion and the proposed May/June Interim Distribution, without prejudice and with a reservation of all rights and arguments.

## III.    TERMS OF REFERENCE

14.     In preparing this Sixty-Fourth Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with Nortel management.   The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of the information and accordingly, expresses no opinion or other form of assurance on the information contained in this Sixty-Fourth Report.

15.     Capitalized terms used herein (including in the preceding paragraphs) shall have the meanings given to them herein or in the Sixty-Second Report, filed in support of the April SIB/STB Payment (defined below).

16.     Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

## IV.     BACKGROUND

17.     The Sixty-Second Report provided background concerning the April SIB/STB Payment. The Sixty-Second Report is attached as Appendix "A", including the following appendices attached to the Sixty-Second Report:

(a)     The Fifty-Seventh Report filed in support of the January Interim Distribution, which attaches:

  (i)     the Fifty-First Report filed in support of the motion for approval of HWT allocation methodology, providing background concerning:

  A.     the appointment of the representatives;

  B.     the Settlement Agreement, including the cessation of benefits payable by Nortel on December 31, 2010;

  C.     the HWT and the benefits provided thereunder;

  D.     the process leading to the motion for approval of the allocation methodology proposed thereunder;

  E.     the Mercer 2010 HWT Preliminary Valuation, providing a preliminary valuation of certain non-pension post retirement benefit plans and post employment benefit plans, estimated as at December 31, 2010, when payments under such plans were to cease;

  F.     the retainer of the Independent Counsel; and

  G.     various allocation scenarios; and

- 6 -

    (ii)    the Supplemental Fifty-First Report, providing the following update to the Fifty-First Report:

        A.    the Mercer 2010 Addendum reflecting information received with respect to the LTD Optional Life Benefit; and

        B.    revised illustrative allocation scenarios reflecting the valuation of the LTD Optional Life Benefit; and

(b)    The Fifty-Ninth Report in support of the Termination Fund Payments.

## V.    THE HWT OVERVIEW

18.    As further described in the Fifty-First Report, Nortel provided the following benefits through the HWT (using the HWT as a payment mechanism with respect to non-pension employee benefits and to fund (in part) certain other benefit plans using trust assets): (a) medical, dental and life insurance benefits to pensioners; (b) income payments to disabled employees; (c) medical, dental and life insurance benefits to disabled employees; (d) income benefits for beneficiaries of deceased employees; and (e) medical, dental and life insurance benefits to active employees.

19.    Under the Approved HWT Allocation Methodology, distributions would be made on account of the following benefits:

(a)    Pensioner Life;

(b)    LTD Life;

(c)    LTD Income;

(d)    LTD Optional Life Benefit;

(e)    SIBs; and

(f)    STBs in pay.

20.    The LTD Income, SIBs and STBs In Pay are referred to collectively as the "**Income Benefits**", and the LTD beneficiaries entitled to LTD Income, the SIB Beneficiaries and the STB Beneficiaries entitled to STBs In Pay are referred to collectively as the "**Income Beneficiaries**".

21.    Summary of Status:

    (a)    In accordance with the Settlement Agreement and by Order of this Court, income benefit payments by the Applicants ended on December 31, 2010.

    (b)    By Order dated November 9, 2010 (the "**HWT Allocation Order**"), the Approved HWT Allocation Methodology was approved to enable a distribution of the HWT corpus.

    (c)    On November 29, 2010, counsel for a small group of dissenting LTD Beneficiaries filed an application for leave to appeal the HWT Allocation Order.

    (d)    At the request of the LTD Beneficiaries' Representative, the Former Employees' Representatives and the CAW, the Monitor brought a motion requesting approval of an interim payment to the Income Beneficiaries. On December 15, 2010, this Honourable Court granted an Order for an interim distribution from the HWT to the Income Beneficiaries (the "**January Interim Distribution Order**", attached to the Sixty-Second Report as Appendix "D"). The reasons an interim distribution was sought included, among other things:

        (i)    certain steps were needed to be completed prior to a final distribution from the HWT, including reconciliation of data as at December 31, 2010 and a determination of certain variables that may affect assets available for distribution;

        (ii)    it was unlikely that the leave to appeal and, if leave were granted, any appeal, would be finally resolved and that all steps required for final distribution would be completed in sufficient time to allow for a final distribution of the HWT corpus before December 31, 2010; and

        (iii)    the interim payment would assist the Income Beneficiaries during the period between the termination of Income Benefits and a final distribution of the HWT corpus.

(e)     The Ontario Court of Appeal denied leave to appeal the HWT Allocation Order on January 7, 2011. On March 8, 2011, counsel filed an application for leave to appeal the denial of leave with the Supreme Court of Canada.

(f)     By order dated February 25, 2011, this court approved the making of Termination Fund payments to, among others, LTD Beneficiaries, using such funds as necessary from the Hardship Fund.

(g)     By order dated April 8, 2011, this court approved necessary amendments to the employee hardship application process and criteria so that the April SIB/STB Payment could be made.

## VI.    JANUARY INTERIM DISTRIBUTION, TERMINATION FUND PAYMENT AND APRIL SIB/STB PAYMENT

22.    The Fifty-Seventh Report sets out the Monitor's considerations in recommending the

level of payment for the January Interim Distribution, including:

(a)     In all illustrative scenarios, each of LTD Income and SIBs would participate in a distribution of the HWT corpus.

(b)     In certain illustrative scenarios, STBs In Pay are excluded as participating benefits. However, the LTD Beneficiaries' Representative, the Former Employees' Representatives, the Continuing Employees' Representatives, CAW Counsel and the Independent Counsel (whose constituents would be impacted if leave to appeal is granted and scenarios other than the Approved HWT Allocation Methodology are considered) consented to the January Interim Distribution to STB Beneficiaries entitled to STBs In Pay, of approximately $355,000 (currently approximately $415,000 based on the current number of STB Beneficiaries receiving STBs in Pay).

(c)     The percentage distribution on account of Income Benefits differs (including from the percentage distribution resulting from the Approved HWT Allocation Methodology) depending on which illustrative scenario is applied.

(d)     The Monitor considered a range of possible interim distributions and the consent described in (b) above and believed that payment to Income Beneficiaries at 10% of their Income Benefit to a maximum of 3 months would not prejudice other beneficiaries of the HWT.

(e)     The Monitor's Fifty-First Report indicated that for the purposes of the illustrative scenarios, the cash balance available for distribution on the termination of the HWT would be $80 million (including Pensioner Life premiums for 2010 of $7.8 million, which will be treated as a charge against any distribution in respect of

Pensioner Life) but that the actual amount of cash available would be subject to adjustment for factors which include:

    (i)    investment returns;

    (ii)    treatment of stale-dated cheques;

    (iii)    the actual amount of Pensioner Life premiums paid during 2010;

    (iv)    the treatment of costs related to expenses incurred prior to the termination of the HWT but not submitted by February 28, 2010 and therefore not paid by Nortel pursuant to the Settlement Agreement;

    (v)    taxes and administrative costs; and

    (vi)    any fees paid from HWT assets pursuant to the Settlement Agreement with respect to any dispute or litigation regarding the HWT.

(f)    The Fifty-First Report also indicated that the ultimate distribution from the HWT would be dependent upon the outcome of other matters, including:

    (i)    changes to the estimated actuarial value of benefits as a result of status changes occurring with respect to the individual, such as recovery or death; and

    (ii)    changes to the estimated distribution percentage and consequently the estimated distribution amount as a result of:

        A.    a different allocation of the HWT corpus;

        B.    the resolution of contingencies;

        C.    updating of data to December 31, 2010; and

        D.    the award of fees against any particular benefit type.

23.    The January Interim Distribution Order was granted on December 15, 2010 and provided for the January Interim Distribution, being an interim distribution of the HWT corpus to each Income Beneficiary in an amount equal to 10% of the Income Benefits calculated in accordance with the Approved HWT Allocation Methodology, using data available as of

December 31, 2010 according to the Applicants' books and records, as updated from time to time; provided that the interim distribution would not exceed 3 months of Income Benefits payable to the Income Beneficiary, based on the monthly amount payable to the Income Beneficiary for December, 2010.

24.    The January Interim Distribution was made and resulted in a lump sum amount representing 3 months of payments for approximately 512 Income Beneficiaries, and less than 3 months of payments for approximately 230 Income Beneficiaries. The majority of the Income Beneficiaries who received less than 3 months of Income Benefits were the STB Beneficiaries as STBs are limited to a 5 year time period and many are approaching the end of that period.

25.    Because the January Interim Distribution provided up to three months of Income Benefits, those who did not reach the Maximum 10% Interim Distribution were paid, effectively, their income benefits only through to March. The LTD Beneficiaries' Representative, the Former Employees' Representatives and the CAW requested that further payments be made.

26.    Two further payments have been approved by this Court and are being made so that all eligible Income Beneficiaries will receive a payment in April. These payments are not interim distributions from the HWT and do not affect the corpus of the HWT or the quantum of the Income Beneficiaries' claims in the HWT:

(a)    **The Termination Fund Payments** - As discussed in the Fifty-Ninth Report and approved by Order dated February 25, 2011, payment of $3,000 to each eligible employee terminated from July 1, 2010 to December 31, 2010, being approximately 351 out of approximately 356 LTD Beneficiaries, are being made in April from the balance remaining in the Termination Fund and using funds from the Hardship Fund (since the assets in the Termination Fund were not

sufficient) to all those who provided information to the Applicants by April 1, 2011; and

(b)  **The April SIB/STB Payments** - As discussed in the Sixty-Second Report and approved by Order dated April 8, 2011, the employee hardship application process and criteria have been amended so that payments can be made from the Hardship Fund to SIB Beneficiaries and STB Beneficiaries entitled to STBs in Pay to the Maximum 10% Interim Distribution, for a maximum of one month of benefits, to be credited against future distributions by the Applicants (the "**April SIB/STB Payments**"). All 80 SIB Beneficiaries are receiving a full month's benefits, none of them being at 10%. Approximately 160 STB Beneficiaries entitled to STBs in Pay, including approximately 20 whose entitlement was reported in 2011, are receiving payments, of which approximately 90 will receive a full month's benefits.

## VII.   MAY/JUNE INTERIM DISTRIBUTION

27.   Attached as Appendix "B" is a chart illustrating the proposed May/June Interim Distribution using data as at December 31, 2010 available from the Applicants as of April 21, 2011.

28.   The Monitor has taken into account the considerations referred to in respect of the making of the January Interim Distribution discussed in paragraph 22 above, in recommending the level of payment for the May/June Interim Distribution.

29.   As discussed in paragraph 22(b), STBs In Pay are excluded as participating benefits in certain illustrative scenarios. The January Interim Distribution resulted in total payments of approximately $415,000 on account of STBs In Pay. The May/June Interim Distribution would result in a further payment of approximately $92,000. The Consenting Parties are consenting to this further payment.

30.   The May/June Interim Distribution would result in a lump sum amount representing 2 months of payments for approximately 348 Income Beneficiaries, and less than 2 months of payments for approximately 182 Income Beneficiaries. The majority of the Income Beneficiaries who receive less than 2 months of Income Benefits under the proposed

044

interim distribution are those in receipt of STBs In Pay, which are limited to a 5 year time period. The May/June Interim Distribution will be subject to applicable statutory withholdings.

## VIII.    MONITOR'S RECOMMENDATION

31.    The Monitor believes that an interim distribution to Income Beneficiaries is appropriate in the circumstances and that an interim distribution of 10% (when taken with the January Interim Distribution) of the Income Benefits to a maximum of 2 months is prudent and reasonable. The Monitor believes that the proposed interim distribution would not prejudice other beneficiaries of the HWT (particularly given its conservative nature, that the proposed interim distribution results in a relatively small distribution on account of STBs In Pay and the Consenting Parties have consented to the proposed interim distribution, including on account of STBs In Pay) and is responsive to the Income Beneficiaries' request for an interim payment pending final distribution of the HWT corpus.

32.    Accordingly, the Monitor requests that this Honourable Court grant the Order in the form submitted.

All of which is respectfully submitted this 25th day of April, 2011.

**ERNST & YOUNG INC.**

**In its capacity as Monitor of the Applicants**
Per:

Murray A. McDonald
President
\5957485

APPENDIX "A"

045

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**SIXTY-SECOND REPORT OF THE MONITOR**
**DATED April 4, 2011**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................1

II.   PURPOSE ........................................................................................3

III.  TERMS OF REFERENCE ....................................................................4

IV.   BACKGROUND ................................................................................5

V.    THE HWT ........................................................................................7

      Overview ............................................................................................7

      Mercer 2010 Preliminary HWT Valuation ..........................................8

VI.   JANUARY INTERIM DISTRIBUTION AND TERMINATION FUND PAYMENT .....9

VII.  PROPOSED APRIL PAYMENT TO SIB BENEFICIARIES AND STB
BENEFICIARIES ..............................................................................11

VIII. MONITOR'S RECOMMENDATION ....................................................12

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**SIXTY-SECOND REPORT OF THE MONITOR**
**DATED April 4, 2011**

## I.    INTRODUCTION

1.    On January 14, 2009 (the "**Filing Date**") Nortel Networks Corporation ("**NNC**" and collectively with all its subsidiaries "**Nortel**" or the "**Company**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "**Applicants**") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("**CCAA**"). Pursuant to the Order of this Honourable Court dated January 14, 2009, as amended and restated (the "**Initial Order**"), Ernst & Young Inc. was appointed as the Monitor of the Applicants (the "**Monitor**") in the CCAA proceedings. The stay of proceedings was extended to June 30, 2011, by this Honourable Court in its Order dated February 25, 2011.

2.    Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries concurrently filed voluntary petitions under Chapter 11 of Title 11 of the U.S. Bankruptcy Code (the "**Code**") in the United States Bankruptcy Court for the District of Delaware (the "**U.S.**

Court") on January 14, 2009 (the "**Chapter 11 Proceedings**"). As required by U.S. law, an official unsecured creditors committee (the "**Committee**") was established in January, 2009.

3.     An *ad hoc* group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "**Bondholder Group**"). In addition, pursuant to Orders of this Honourable Court dated May 27, 2009, July 22, 2009 and July 30, 2009, representative counsel was appointed on behalf of the former employees of the Applicants, the continuing employees of the Applicants and the LTD Beneficiaries, respectively, and each of these groups is participating in the CCAA proceedings.

4.     Nortel Networks (CALA) Inc. (together with NNI and certain of its subsidiaries that filed on January 14, 2009, the "**U.S. Debtors**") filed a voluntary petition under Chapter 11 of Title 11 of the Code in the U.S. Court on July 14, 2009.

5.     Nortel Networks UK Limited ("**NNUK**") and certain of its subsidiaries located in EMEA were granted Administration orders (the "**UK Administration Orders**") by the High Court of England and Wales on January 14, 2009 (collectively the "**EMEA Debtors**"). The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as Administrators of the various EMEA Debtors, except for Ireland, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively the "**Joint Administrators**").

6.     Subsequent to the Filing Date, Nortel Networks SA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France

- 3 -

pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court.

7.    The CCAA proceedings and the UK Administration proceedings of NNUK have been recognized by the U.S. Court as foreign main proceedings under Chapter 15 of the Code.

8.    Subsequent to the Filing Date, certain other Nortel subsidiaries have filed for creditor protection or bankruptcy proceedings in the local jurisdiction in which they are located.

## II.    PURPOSE

9.    This Sixty-Second Report is to report on the Applicants' request for an order that:

(a)    the employee hardship application criteria be amended such that sufficient funds (the "**Required Funds**") be made available for the payment from the Hardship Fund to beneficiaries entitled to survivor income benefits ("**SIBs**") and beneficiaries entitled to survivor transition benefits in pay ("**STBs In Pay**") of an amount that, when taken with the January Interim Distribution, will be 10% of their SIBs or STBs In Pay, calculated in accordance with the methodology used for the January Interim Distribution (the "**Maximum 10% Interim Distribution**"), provided that the payment shall not exceed one month's benefits, and to be credited against future distributions by the Applicants;

(b)    the amount available for hardship applications be reduced by the Required Funds; and

(c)    the Eligibility Requirements and Procedure with respect to Employee Hardship Payment Applications be amended consistent with (a) and (b) above.

10.    On the making of the payment for which this Order is being sought and of the Termination Fund Payments, all SIB Beneficiaries, approximately 158 of the 335 STB Beneficiaries currently receiving STBs in Pay (the others having received the Maximum 10% Interim Distribution as part of the January Interim Distribution) and approximately 351 of the total of 356 LTD Beneficiaries will receive a payment from the Applicants in April.

11.   Although not before the Court at this time, the Monitor considers it appropriate to advise the Court that, in response to concerns raised by the Representative for the LTD Beneficiaries, the Representatives for the Former Employees and the CAW, the Monitor has continued its discussions with them, Independent Counsel, counsel to the CAW and Representative Counsel for the Continuing Employees.  All have now confirmed that they will consent to an order for a further interim distribution from the HWT to the Income Beneficiaries of the Maximum 10% Interim Distribution, to a maximum of an additional two months of benefits, bringing the maximum number of months to 5 months. The effect will be to allow for payments in respect of May and June, 2011.  Monitor's counsel so advised counsel to certain dissenting LTD Beneficiaries by letter dated April 1, 2011, a copy of which is attached as Appendix "A".

### III.    TERMS OF REFERENCE

12.   In preparing this Sixty-Second Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with Nortel management.   The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of the information and, accordingly, expresses no opinion or other form of assurance on the information contained in this Sixty-Second Report.

13.   Capitalized terms used herein (including in the preceding paragraphs) shall have the meanings given to them herein or in the Monitor's Fifty-First Report dated August 27, 2010 (the "**Fifty-First Report**"), filed in support of the application for approval of the Approved HWT Allocation Methodology or in the Monitor's Fifty-Seventh Report dated December 3, 2010 (the "**Fifty-Seventh Report**"), filed in support of the application for approval of the January Interim Distribution from the HWT.

14.    Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

## IV.    BACKGROUND

15.    The Fifty-Seventh Report (which attaches the Fifty-First Report and the Supplemental Fifty-First Report as appendices thereto) and the Monitor's Fifty-Ninth Report dated February 18, 2011 (the "**Fifty-Ninth Report**") are attached hereto as Appendices "B" and "C", with only relevant appendices attached thereto.

16.    The Fifty-First Report provides background concerning:

   (a)    the appointment of the representatives;

   (b)    the Settlement Agreement, including the cessation of benefits payable by Nortel on December 31, 2010;

   (c)    the HWT and the benefits provided thereunder;

   (d)    the process leading to the motion for approval of the allocation methodology proposed thereunder;

   (e)    the Mercer 2010 HWT Preliminary Valuation;

   (f)    the retainer of Sack Mitchell Goldblatt LLP by the LTD Beneficiaries' Representative and Lerners LLP by the Former Employees' Representatives (collectively, the "**Independent Counsel**"); and

   (g)    various allocation scenarios.

17.    The Supplemental Fifty-First Report provides the following update to the Fifty-First Report:

   (a)    an addendum to the Mercer 2010 HWT Preliminary Valuation reflecting information received with respect to the LTD Optional Life Benefit (the "**Mercer 2010 Addendum**"); and

- 6 -

(b)    revised illustrative allocation scenarios reflecting the valuation of the LTD Optional Life Benefit.

18.    The Fifty-Seventh Report provides background on the January Interim Distribution. The Fifty-Ninth Report provides background on Termination Fund payments to individuals terminated between July 1, 2010 and December 31, 2010 (including LTD Beneficiaries) using the balance of funds in the Termination Fund and such funds as necessary from the Hardship Fund.

19.    In summary:

(a)    In accordance with the Settlement Agreement and the Order of this Court, income benefit payments by the Applicants ended on December 31, 2010.

(b)    The Monitor sought this Court's approval of the Approved HWT Allocation Methodology for the funds held in the HWT, to enable a distribution of the HWT corpus, which this Court approved by Order dated November 9, 2010 (the "**HWT Allocation Order**").

(c)    On November 29, 2010, counsel for a small group of dissenting LTD Beneficiaries filed an application for leave to appeal the HWT Allocation Order.

(d)    At the request of the LTD Beneficiaries' Representative, the Former Employees' Representatives and the CAW, the Monitor brought a motion to provide an interim payment to the Income Beneficiaries. On December 15, 2010, this court granted an Order for an interim distribution from the HWT to the Income Beneficiaries (the "**January Interim Distribution Order**", attached hereto as Appendix "D") given, among other things:

(i)    certain steps needed to be completed prior to a final distribution from the HWT, including reconciliation of data as at December 31, 2010 and a determination of certain variables that may affect assets available for distribution;

(ii)    it was unlikely that the leave to appeal and, if leave were granted, any appeal, would be finally resolved and that all steps required for final distribution would be completed in sufficient time to allow for a final distribution before December 31, 2010; and

(iii)    the interim payment would assist the Income Beneficiaries in the period between the termination of Income Benefits and the final distribution of the HWT corpus.

(e)    The Ontario Court of Appeal denied leave to appeal the HWT Allocation Order on January 7, 2011.  On March 8, 2011, counsel filed an application for leave to appeal the denial of leave with the Supreme Court of Canada.

(f)    By order dated February 25, 2011, this court approved the making of Termination Fund payments to, among others, LTD Beneficiaries, using such funds as necessary from the Hardship Fund.

20.    The January Interim Distribution Order approved an interim distribution of the HWT corpus to each Income Beneficiary in an amount equal to 10% of the Income Benefits calculated in accordance with the Approved HWT Allocation Methodology, using data available as of December 31, 2010 according to the Applicants' books and records, as updated from time to time; provided that the interim distribution would not exceed 3 months of Income Benefits payable to the Income Beneficiary, based on the monthly amount payable to the Income Beneficiary for December, 2010 (the "**January Interim Distribution**").

## V.    THE HWT

### Overview

21.    As further described in the Fifty-First Report, Nortel provided the following benefits through the HWT (using the HWT as a payment mechanism with respect to non-pension employee benefits and to fund (in part) certain other benefit plans using trust assets): (a) medical, dental and life insurance benefits to pensioners; (b) income payments to disabled employees; (c) medical, dental and life insurance benefits to disabled employees; (d) income benefits for beneficiaries of deceased employees; and (e) medical, dental and life insurance benefits to active employees.

22.    Under the Approved HWT Allocation Methodology, distributions would be made on account of the following benefits:

(a)    Pensioner Life;

(b)    LTD Life;

(c)    LTD Income;

(d)    LTD Optional Life Benefit;

(e)    SIBs; and

(f)    STBs In Pay.

**Mercer 2010 Preliminary HWT Valuation**

23.    Attached as Appendix "C" to the Fifty-First Report is a report of Mercer dated August 27, 2010 (the "**Mercer 2010 HWT Preliminary Valuation**"), providing a preliminary valuation of certain non-pension post retirement benefit plans and post employment benefit plans, estimated as at December 31, 2010, when payments under such plans ceased.  As indicated in the Fifty-First Report, no amount was included in the valuation for the LTD Optional Life Benefit as there was insufficient data at the date of the Fifty-First Report to determine the present value of this benefit to LTD Beneficiaries participating under Optional Life.

24.    Attached as Appendix "A" to the Supplemental Fifty-First Report is the Mercer 2010 Addendum, which provides a preliminary valuation of the LTD Optional Life Benefit based on the assumptions set out in the Mercer 2010 HWT Preliminary Valuation and data Nortel provided to Mercer and the Monitor following the date of the Fifty-First Report.

## VI.    JANUARY INTERIM DISTRIBUTION AND TERMINATION FUND PAYMENT

25.    The Fifty-Seventh Report sets out the Monitor's considerations in recommending the level of payment for the January Interim Distribution, including:

(a)    In all illustrative scenarios, each of LTD Income and SIBs would participate in a distribution of the HWT corpus.

(b)    In certain illustrative scenarios, STBs In Pay are excluded as participating benefits. However, the LTD Beneficiaries' Representative, the Former Employees' Representatives, the Continuing Employees' Representatives, CAW Counsel and the Independent Counsel (whose constituents would be impacted if leave to appeal is granted and scenarios other than the Approved HWT Allocation Methodology are considered) consented to the January Interim Distribution to STB Beneficiaries entitled to STBs In Pay, of approximately $355,000 (currently approximately $405,000 based on the current number of STB Beneficiaries receiving STBs in Pay).

(c)    The percentage distribution on account of Income Benefits differs (including from the percentage distribution resulting from the Approved HWT Allocation Methodology) depending on which illustrative scenario is applied.

(d)    The Monitor considered a range of possible interim distributions and the consent described in (b) above and believed that payment to Income Beneficiaries at 10% of their Income Benefit to a maximum of 3 months would not prejudice other beneficiaries of the HWT.

(e)    The Monitor's Fifty-First Report indicated that for the purposes of the illustrative scenarios, the cash balance available for distribution on the termination of the HWT would be $80 million (including Pensioner Life premiums for 2010 of $7.8 million, which will be treated as a charge against any distribution in respect of Pensioner Life) but that the actual amount of cash available would be subject to adjustment for factors which include:

(i)    investment returns;

(ii)    treatment of stale-dated cheques;

(iii)    the actual amount of Pensioner Life premiums paid during 2010;

(iv)    the treatment of costs related to expenses incurred prior to the termination of the HWT but not submitted by February 28, 2010 and therefore not paid by Nortel pursuant to the Settlement Agreement;

- 10 -

    (v)     taxes and administrative costs; and

    (vi)    any fees paid from HWT assets pursuant to the Settlement Agreement with respect to any dispute or litigation regarding the HWT.

(f)    The Fifty-First Report also indicated that the ultimate distribution from the HWT would be dependent upon the outcome of other matters, including:

    (i)    changes to the estimated actuarial value of benefits as a result of status changes occurring with respect to the individual, such as recovery or death; and

    (ii)   changes to the estimated distribution percentage and consequently the estimated distribution amount as a result of:

        A.    a different allocation of the HWT corpus;

        B.    the resolution of contingencies;

        C.    updating of data to December 31, 2010; and

        D.    the award of fees against any particular benefit type.

26.    The January Interim Distribution was made and resulted in a lump sum amount representing 3 months of payments for approximately 512 Income Beneficiaries, and less than 3 months of payments for approximately 230 Income Beneficiaries. The majority of the Income Beneficiaries who received less than 3 months of Income Benefits under the interim distribution were the STB Beneficiaries because STBs are limited to a 5 year time period and many are approaching the end of that period.

27.    As discussed in the Fifty-Ninth Report, at the request of the LTD Beneficiaries' Representative, the Applicants sought and the Monitor recommended that the Termination Fund payments under the Settlement Agreement of $3,000 to each eligible employee whose employment was terminated by June 30, 2010 be extended to those employees terminated by December 31, 2010. By Order dated February 25, 2011, this

- 11 -

Court approved payment of $3,000 to each eligible employee terminated from July 1, 2010 to December 31, 2010 (the "**Termination Fund Payments**") from the balance remaining in the Termination Fund and using funds from the Hardship Fund (since the assets in the Termination Fund were not sufficient).  At the time of the February 25, 2011 Order, approximately $626,000 remained in the Hardship Fund, of which approximately $360,000 will be required for Termination Fund Payments, leaving approximately $266,000.  Approximately 351 out of approximately 356 LTD Beneficiaries are eligible for Termination Fund Payments, which will be made in April to all those who provided information to the Applicants by April 1, 2011.   Those who provide information thereafter will receive their payments later.

## VII.    PROPOSED APRIL PAYMENT TO SIB BENEFICIARIES AND STB BENEFICIARIES

28.    Although there is increased certainty regarding the outcome of some of the matters in paragraph 25(e) and (f) above, some uncertainty remains, including as a result of the application for leave to appeal to the Supreme Court of Canada.    Accordingly, the Monitor is not yet able to recommend that the final distribution be made from the HWT. The LTD Beneficiaries' Representative, the Former Employees' Representatives and the CAW have therefore renewed requests for further interim Income Benefit payments.

29.    The Applicants are proposing a payment from the Hardship Fund in the month of April to SIB Beneficiaries and STB Beneficiaries in receipt of STBs In Pay, since they will not be receiving Termination Fund payments in April.  The total payment will be approximately $179,000, leaving approximately $87,000 in the Hardship Fund.  Given that, to date, only about 20% of the original amount of the Hardship Fund has been used to make payments to eligible applicants, the Monitor does not consider that this payment to SIB

053

Beneficiaries and STB Beneficiaries would cause prejudice.   The payment to SIB Beneficiaries and STB Beneficiaries from the Hardship Fund would be treated like other hardship payments as an advance against future distributions by the  Applicants and would be limited to the Maximum 10% Interim Distribution, provided that the payment shall not exceed one month's benefits.  Payments from the Hardship Fund will be subject to applicable statutory withholdings.  All 80 SIB Beneficiaries will receive a full month's benefits, none of them being at 10%.  158 STB Beneficiaries receiving STBs in Pay, including 17 whose entitlement was reported in 2011, will receive payments, of which 87 will receive a full month's benefits.    The form of amended Hardship Eligibility Requirements and Procedure with respect to Hardship Payment Applications is attached here to as Appendix "E".

## VIII.   MONITOR'S RECOMMENDATION

30.    The Monitor recommends that this Honourable Court amend the hardship application criteria and grant the Order in the form submitted by the Applicants.

All of which is respectfully submitted this 4th day of April, 2011.

**ERNST & YOUNG INC.**

**In its capacity as Monitor of the Applicants**

Per:

Murray A. McDonald
President
\5953952

**TAB I**

U. 059

Court File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

FIFTY-SEVENTH REPORT OF THE MONITOR
DATED DECEMBER 3, 2010

-060

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................1

II.   PURPOSE..............................................................................................3

III.  TERMS OF REFERENCE ....................................................................5

IV.   BACKGROUND ...................................................................................5

V.    THE HWT...............................................................................................6

      Overview.................................................................................................6

      Mercer 2010 Preliminary HWT Valuation ...........................................7

VI.   INTERIM DISTRIBUTION ..................................................................8

      Tax Ruling Request...............................................................................10

      Specific Process Matters .....................................................................10

VII.  MONITOR'S RECOMMENDATION ..................................................11

‿ -061

Court File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS*
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

FIFTY-SEVENTH REPORT OF THE MONITOR
DATED DECEMBER 3, 2010

## I.    INTRODUCTION

1.    On January 14, 2009 (the "**Filing Date**") Nortel Networks Corporation ("**NNC**" and collectively with all its subsidiaries "**Nortel**" or the "**Company**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "**Applicants**") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("**CCAA**"). Pursuant to the Order of this Honourable Court dated January 14, 2009, as amended and restated (the "**Initial Order**"), Ernst & Young Inc. was appointed as the Monitor of the Applicants (the "**Monitor**") in the CCAA proceedings. The stay of proceedings was extended to February 28, 2011, by this Honourable Court in its Order dated October 27, 2010.

2.    Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries concurrently filed voluntary petitions under Chapter 11 of Title 11 of the U.S. Bankruptcy Code (the "**Code**") in the United States Bankruptcy Court for the District of Delaware (the "**U.S.**

- 2 -

062

Court") on January 14, 2009 (the "**Chapter 11 Proceedings**"). As required by U.S. law, an official unsecured creditors committee (the "**Committee**") was established in January, 2009.

3.　　An *ad hoc* group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "**Bondholder Group**"). In addition, pursuant to Orders of this Honourable Court dated May 27, 2009, July 22, 2009 and July 30, 2009, representative counsel was appointed on behalf of the former employees of the Applicants, the continuing employees of the Applicants and the LTD Beneficiaries, respectively, and each of these groups is participating in the CCAA proceedings.

4.　　Nortel Networks (CALA) Inc. (together with NNI and certain of its subsidiaries that filed on January 14, 2009, the "**U.S. Debtors**") filed a voluntary petition under Chapter 11 of Title 11 of the Code in the U.S. Court on July 14, 2009.

5.　　Nortel Networks UK Limited ("**NNUK**") and certain of its subsidiaries located in EMEA were granted Administration orders (the "**UK Administration Orders**") by the High Court of England and Wales on January 14, 2009 (collectively the "**EMEA Debtors**"). The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as Administrators of the various EMEA Debtors, except for Ireland, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively the "**Joint Administrators**").

6.　　Subsequent to the Filing Date, Nortel Networks SA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France

pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court.

7.      The CCAA proceedings and the UK Administration proceedings of NNUK have been recognized by the U.S. Court as foreign main proceedings under Chapter 15 of the Code.

8.      Subsequent to the Filing Date, certain other Nortel subsidiaries have filed for creditor protection or bankruptcy proceedings in the local jurisdiction in which they are located.

## II.    PURPOSE

9.      The purpose of this Fifty-Seventh Report of the Monitor (the "**Fifty-Seventh Report**") is to seek this Honourable Court's approval of an interim distribution to the Income Beneficiaries (defined below) from funds held in the Applicants' Health and Welfare Trust (the "**HWT**") on account of their Income Benefits (defined below) and such ancillary relief as is just and convenient.

10.     The Settlement Agreement provides and this Court has ordered that benefit payments by the Applicants will end on December 31, 2010.   The Monitor sought this Court's approval of a proposed allocation methodology (the "**Approved HWT Allocation Methodology**") for the funds held in the HWT, to enable a distribution of the HWT corpus, which this Court approved by Order dated November 9, 2010 (the "**HWT Allocation Order**").   On November 29, 2010, counsel for a small group of dissenting LTD Beneficiaries filed leave to appeal the HWT Allocation Order.

11.     The LTD Beneficiaries' Representative, the Former Employees' Representatives and the CAW have asked that the Monitor bring this motion to provide an interim payment to the Income Beneficiaries receiving Income Benefits given, among other things:

- 4 -

(a)    as discussed in paragraph 26(e) below, certain steps must be completed prior to a final distribution from the HWT, including reconciliation of data as at December 31, 2010 and a determination of certain variables that may affect assets available for distribution;

(b)    it is unlikely that the leave to appeal and, if leave is granted, any appeal, would be finally resolved and that all steps required for final distribution will be completed in sufficient time to allow for a final distribution before December 31, 2010; and

(c)    the interim payment will assist the Income Beneficiaries in the period between the termination of Income Benefits and the final distribution of the HWT corpus.

12.    In response to the requests received from the LTD Beneficiaries' Representative, the Former Employees' Representatives and the CAW, the Monitor has agreed to bring this motion. The Monitor is recommending that the amount of the interim distribution of the HWT corpus to each Income Beneficiary be 10% of the Income Benefits calculated in accordance with the Approved HWT Allocation Methodology, using data available as of December 31, 2010 according to the Applicants' books and records, as updated from time to time; provided that the interim distribution cannot exceed three months of the Income Benefits payable to the Income Beneficiary[1]. Based on the illustrative scenarios appended to the Supplement to the Monitor's Fifty-First Report dated September 17, 2010 (the "**Supplemental Fifty-First Report**") and attached as Appendix "A" hereto, the Approved HWT Allocation Methodology (Scenario #2) results in an allocation on account of Income Benefits of 33.8% of the actuarial value of the Income Benefits. The Monitor believes that the proposed interim distribution is prudent and conservative and will not prejudice other beneficiaries. The LTD Beneficiaries' Representative, the Former Employees' Representatives, the Continuing Employees' Representatives, CAW Counsel and the Independent Counsel (defined below) each consent to the within motion

[1] Based on the monthly amount payable to the Income Beneficiary for December, 2010

and the proposed interim distribution, without prejudice and with a reservation of all rights and arguments.

### III.    TERMS OF REFERENCE

13.    In preparing this Fifty-Seventh Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with Nortel management.    The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of the information and, accordingly, expresses no opinion or other form of assurance on the information contained in this Fifty-Seventh Report.

14.    Capitalized terms used herein (including in the preceding paragraphs) shall have the meanings given to them herein or in the Monitor's Fifty-First Report dated August 27, 2010 (the "**Fifty-First Report**"), filed in support of the application for approval of the Approved HWT Allocation Methodology.

15.    Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

### IV.    BACKGROUND

16.    The Fifty-First Report is attached hereto as Appendix "B", without appendices except for the Mercer 2010 HWT Preliminary Valuation (Appendix "C" to the Fifty-First Report).

17.    In addition, the Supplemental Fifty-First Report is attached hereto as Appendix "C", with appendices (being the Mercer 2010 Addendum, the illustrative scenarios (initially attached as Appendix "D" to the Fifty-First Report) as revised to reflect the present value

of LTD Optional Life Benefit, and the form of newspaper notice regarding the motion for the HWT Allocation Order).

18.    The Fifty-First Report provides background concerning:

    (a)    the appointment of the representatives;

    (b)    the Settlement Agreement, including the cessation of benefits payable by Nortel on December 31, 2010;

    (c)    the HWT and the benefits provided thereunder;

    (d)    the process leading to the motion for approval of the allocation methodology proposed thereunder;

    (e)    the Mercer 2010 HWT Preliminary Valuation;

    (f)    the retainer of Sack Mitchell Goldblatt LLP by the LTD Beneficiaries' Representative and Lerners LLP by the Former Employees' Representatives (collectively, the "**Independent Counsel**"); and

    (g)    various allocation scenarios.

19.    The Supplemental Fifty-First Report provides the following update to the Fifty-First Report:

    (a)    an addendum to the Mercer 2010 HWT Preliminary Valuation reflecting information received with respect to the LTD Optional Life Benefit (the "**Mercer 2010 Addendum**"); and

    (b)    revised illustrative allocation scenarios reflecting the valuation of the LTD Optional Life Benefit.

## V.    THE HWT

### Overview

20.    As further described in the Fifty-First Report, Nortel provided the following benefits through the HWT (using the HWT as a payment mechanism with respect to non-pension

employee benefits and to fund (in part) certain other benefit plans using trust assets): (a) medical, dental and life insurance benefits to pensioners; (b) income payments to disabled employees; (c) medical, dental and life insurance benefits to disabled employees; (d) income benefits for beneficiaries of deceased employees; and (e) medical, dental and life insurance benefits to active employees.

21.    Under the Approved HWT Allocation Methodology, distributions would be made on account of the following benefits:

(a)    Pensioner Life;

(b)    LTD Life;

(c)    LTD Income;

(d)    LTD Optional Life Benefit;

(e)    SIBs; and

(f)    STBs in pay ("**STBs In Pay**")

22.    The LTD Income, SIBs and STBs In Pay are referred to collectively as the "**Income Benefits**", and the LTD beneficiaries entitled to LTD Income, the SIB Beneficiaries and the STB Beneficiaries entitled to STBs In Pay are referred to collectively as the "**Income Beneficiaries**".

**Mercer 2010 Preliminary HWT Valuation**

23.    Attached as Appendix "C" to the Fifty-First Report is a report of Mercer dated August 27, 2010 (the "**Mercer 2010 HWT Preliminary Valuation**"), providing a preliminary valuation of certain non-pension post retirement benefit plans and post employment benefit plans, estimated as at December 31, 2010, when payments under such plans will

cease. As indicated in the Fifty-First Report, no amount was included in the valuation for the LTD Optional Life Benefit as there was insufficient data at the date of the Fifty-First Report to determine the present value of this benefit to LTD Beneficiaries participating under Optional Life.

24.    Attached as Appendix "A" to the Supplemental Fifty-First Report is the Mercer 2010 Addendum, which provides a preliminary valuation of the LTD Optional Life Benefit based on the assumptions set out in the Mercer 2010 HWT Preliminary Valuation and data Nortel provided to Mercer and the Monitor following the date of the Fifty-First Report.

## VI.    INTERIM DISTRIBUTION

25.    The LTD Beneficiaries' Representative, the Former Employees' Representatives and the CAW asked the Monitor to seek Court approval for an interim distribution to Income Beneficiaries on account of Income Benefits because of the difficulties that could arise for them if their income payments cease before there is any distribution on account thereof.

26.    In evaluating an interim distribution to Income Beneficiaries, the Monitor considered a number of factors, including:

(a)    In all illustrative scenarios, each of LTD Income and SIBs would participate in a distribution of the HWT corpus.

(b)    In certain illustrative scenarios, STBs In Pay are excluded as participating benefits; however:

(i)    under the proposed interim distribution, STB Beneficiaries entitled to STBs In Pay would receive in aggregate approximately $355,000; and