(ii) the LTD Beneficiaries' Representative, the Former Employees' Representatives, the Continuing Employees' Representatives, CAW Counsel and the Independent Counsel (whose constituents would be impacted if leave to appeal is granted and scenarios other than the Approved HWT Allocation Methodology are considered) consent to the proposed interim distribution as described in paragraph 12, including an interim distribution to STB Beneficiaries entitled to STBs In Pay (such consenting parties are referred to herein as the "**Consenting Parties**").

(c) The percentage distribution on account of Income Benefits differs (including from the percentage distribution resulting from the Approved HWT Allocation Methodology) depending on which illustrative scenario is applied.

(d) The Monitor has considered a range of possible interim distributions and the consent described in (b)(ii) above and believes that payment to Income Beneficiaries at 10% of their Income Benefit to a maximum of 3 months will not prejudice other beneficiaries of the HWT.

(e) The Monitor's Fifty-First Report indicated that the ultimate distribution from the HWT would be dependent upon the outcome of the following matters:

(i) changes to the estimated actuarial value of benefits as a result of status changes occurring with respect to the individual, such as recovery or death; and

(ii) changes to the estimated distribution percentage and consequently the estimated distribution amount as a result of:

A. a different allocation of the HWT corpus;

B. the distributable assets being more or less than estimated;

C. the resolution of contingencies;

D. updating of data to December 31, 2010; and

E. the award of fees against any particular benefit type.

(f) Although there is increased certainty regarding the outcome of some of the above matters, there is still some uncertainty such that a conservative interim distribution is warranted.

27. The proposed interim distribution will result in a lump sum amount representing 3 months of payments for approximately 503 Income Beneficiaries, and less than 3 months

of payments for approximately 240 Income Beneficiaries. The majority of the Income Beneficiaries who will receive less than 3 months of Income Benefits under the proposed interim distribution are those in receipt of STBs In Pay, which STBs In Pay are limited to a 5 year time period. Attached as Appendix "D" hereto is a chart illustrating the proposed interim distribution using data as of June 30, 2010 according to the Applicants' books and records.

**Tax Ruling Request**

28.    LTD Beneficiaries' Representative Counsel and Former Employees' Representative Counsel, in conjunction with CAW Counsel and with the assistance and cooperation of the Applicants and the Monitor, have sought a ruling from the Canada Revenue Agency that payments from the corpus of the HWT on account of certain benefits, including payments for those benefits contemplated by this interim distribution, would be made on a tax-exempt basis. The Canada Revenue Agency has not issued a ruling on this matter. Until such time as the ruling is issued, payments from the HWT would be subject to the applicable statutory withholdings. If the ruling from the Canada Revenue Agency is received prior to December 31, 2010 then the interim distribution will be made in accordance with that ruling.

**Specific Process Matters**

29.    As discussed in the Fifty-First Report, the Mercer 2010 HWT Preliminary Valuation was prepared on an aggregate basis to assist in an analysis of the effect of various scenarios (including the allocation methodology proposed in the Fifty-First Report) on the various benefits covered by the HWT and thereby on the aggregate group of individuals participating in those benefits. At the request of the LTD Beneficiaries' Representative,

the Monitor provided a statement to the Income Beneficiaries setting out an estimate of the amount they would receive if the proposed allocation methodology were approved, subject to certain caveats (a "**Beneficiary Estimated Allocation Statement**").

30.    The Beneficiary Estimated Allocation Statement was substantially in the form attached to the Fifty-First Report as Appendix "NNN", which is also attached hereto as Appendix "E".

31.    In response to inquiries received following delivery of the Beneficiary Estimated Allocation Statements, on November 16, 2010, the Monitor caused to be sent to each Income Beneficiary a form indicating the data from Nortel's books and records on which the particular Beneficiary Estimated Allocation Statement was based and asking that any corrections to the data be forwarded to the Monitor by December 17, 2010.   The Applicants will amend their books and records according to any corrections received and validated.

## VII.    MONITOR'S RECOMMENDATION

32.    The Monitor believes that an interim distribution to Income Beneficiaries is appropriate in the circumstances and that an interim distribution of 10% of the Income Benefits to a maximum of 3 months is prudent and reasonable.   The Monitor believes that the proposed interim distribution does not prejudice other beneficiaries of the HWT (particularly given its conservative nature, that the proposed interim distribution results in a relatively small distribution on account of STBs In Pay and the Consenting Parties have consented to the proposed interim distribution, including on account of STBs In Pay) and is responsive to the Income Beneficiaries' request for an interim payment pending final distribution of the HWT corpus.

33.     Accordingly, the Monitor requests that this Honourable Court grant the Order in the form
submitted.

All of which is respectfully submitted this 3rd day of December, 2010.

**ERNST & YOUNG INC.**

**In its capacity as Monitor of the Applicants**

Per:

Murray A. McDonald
President

\5910968

073

# APPENDIX "A" TO FIFTY-SEVENTH REPORT
## - ILLUSTRATIVE SCENARIOS RE: HWT ALLOCATION

# Nortel Health and Welfare Trust

## REVISED Illustrative Allocation Scenarios

Scenario: Optional Life does not participate

Cdn Millions

**REVISED Appendix D-1**

Scenarios 1 to 4

| Type of Benefit | Benefit Liabilities [6] | 1 All Benefits Share Pro Rata (Distribution %: 14.6%) | 2 Proposed Participating Benefits Share Pro Rata (Distribution %: 33.8%) | 3 Benefits in Pay Share Pro Rata (Distribution %: 72.1%) | 4 Reserved Asset Method 3,5 (Distribution %: N/A) |
|---|---|---|---|---|---|
| Pensioner Life (including ADB) [1] | $ 126.9 | $ 10.72 | $ 35.05 | $ - | $ 33.53 |
| Pensioner M&D | 251.3 | 36.67 | - | - | - |
| Pensioner Benefit Total | 378.2 | 47.39 | 35.05 | - | 33.53 |
| LTD Income (including IBNR) | 79.9 | 11.66 | 26.98 | 57.57 | 21.47 |
| LTD M&D [2] | 29.7 | 4.33 | - | - | - |
| LTD - STB accrued | 0.3 | 0.04 | - | - | - |
| LTD Life [2] | 4.5 | 0.66 | 1.52 | - | 0.65 |
| LTD Optional Life Benefit (including IBNR) | 5.3 | 0.78 | 1.80 | - | - |
| LTD Benefit Total | 119.7 | 17.47 | 30.30 | 57.57 | 22.12 |
| SIB [4] | 16.2 | 2.36 | 5.47 | 11.67 | 16.55 |
| STB - in pay | 4.1 | 0.60 | 1.38 | 2.95 | - |
| STB - accrued | 30.0 | 4.38 | - | - | - |
| Optional Life | - | - | - | - | - |
| Total Benefits | $ 548.2 | $ 72.2 | $ 72.2 | $ 72.2 | $ 72.2 |
| Pensioner Life 2010 Premiums [1] | NA | 7.80 | 7.80 | 7.80 | 7.80 |
| Total | $ 548.2 | $ 80.0 | $ 80.0 | $ 80.0 | $ 80.0 |

REVISED Illustrative Allocation Scenarios

**NOTES**
1. Pensioner Life Premiums for 2010 have been treated as charge against the distribution in respect of the Pensioner Life Benefit (if any)
2. LTD Life and LTD M&D includes $2.0 million and $5.2 million, respectively, related to LTD individuals who are assumed to proceed to retirement and become eligible as pensioners.
3. Optional life reserved asset of $18.7 million has been allocated pro rata amongst the other reserved assets based on asset value
4. The pro-rata allocation of the optional life reserved asset amongst the other remaining reserved asset categories results in the SIB reserved asset allocation exceeding the total benefit claim attributable to this category. No adjustments have been made to limit the SIB distribution under the reserved asset method
5. The Reserved Asset Method allocates HWT Assets using the reserved asset mix as at December 31, 2009 (as disclosed in the 2009 Health Welfare Trust Financial Statements)
6. Source: Mercer 2010 HWT Preliminary Valuation

075

# Nortel Health and Welfare Trust
## REVISED Illustrative Allocation Scenarios
Scenario: Optional Life is a participating benefit
Cdn Millions

**REVISED Appendix D-2**

Scenarios 5 to 8

| Type of Benefit | Benefit Liabilities [4] | 5 — All Benefits Share Pro Rata [Distribution %: 11.2%] | 6 — Proposed Participating Benefits Share Pro Rata [Distribution %: 25.9%] | 7 — Benefits in Pay Share Pro Rata [Distribution %: 53.3%] | 8 — Reserved Asset Method [3] [Distribution %: N/A] |
|---|---|---|---|---|---|
| Pensioner Life (including ADB) [1] | $ 126.9 | $ 6.38 | $ 25.01 | $ - | $ 23.85 |
| Pensioner M&D | 251.3 | 28.08 | - | - | - |
| Pensioner Benefit Total | 378.2 | 34.46 | 25.01 | - | 23.85 |
| LTD Income (including IBNR) | 79.9 | 8.93 | 20.66 | 42.63 | 16.44 |
| LTD M&D [2] | 29.7 | 3.32 | - | - | - |
| LTD - STB accrued | 0.3 | 0.03 | - | - | - |
| LTD Life [2] | 4.5 | 0.50 | 1.16 | - | 0.50 |
| LTD Optional Life Benefit (including IBNR) | 5.3 | 0.60 | 1.38 | - | 0.50 |
| LTD Benefit Total | 119.7 | 13.38 | 23.20 | 42.63 | 16.94 |
| SIB | 16.2 | 1.81 | 4.19 | 8.64 | 12.67 |
| STB - in pay | 4.1 | 0.46 | 1.06 | 2.19 | - |
| STB - accrued | 30.0 | 3.35 | - | - | - |
| Optional Life | | 18.74 | 18.74 | 18.74 | 18.74 |
| Total Benefits | $ 548.2 | $ 72.2 | $ 72.2 | $ 72.2 | $ 72.2 |
| Pensioner Life 2010 Premiums [1] | NA | 7.80 | 7.80 | 7.80 | 7.80 |
| Total | $ 548.2 | $ 80.0 | $ 80.0 | $ 80.0 | $ 80.0 |

**NOTES**
1. Pensioner Life Premiums for 2010 have been treated as charge against the distribution in respect of the Pensioner Life Benefit (if any)
2. LTD Life and LTD M&D includes $2.0 million and $5.2 million, respectively, related to LTD individuals who are assumed to proceed to retirement and become eligible as pensioners.
3. The Reserved Asset Method allocates HWT Assets using the reserved asset mix as at December 31, 2009 (as disclosed in the 2009 Health Welfare Trust Financial Statements)
4. Source: Mercer 2010 HWT Preliminary Valuation

REVISED Illustrative Allocation Scenarios

# Nortel Health and Welfare Trust
## REVISED Illustrative Allocation Scenarios

REVISED Appendix D-3

Scenarios 9 to 11

Scenario: STB Liability is excluded and Optional Life does not participate
Cdn Millions

| Type of Benefit | Benefit Liabilities [3] | 9 All Benefits Share Pro Rata [Distribution %: 15.6%] | 10 Proposed Participating Benefits [Distribution %: 34.4%] | 11 Benefits in Pay Share Pro Rata [Distribution %: 75.1%] |
|---|---|---|---|---|
| Pensioner Life (including ADB) [1] | $ 126.9 | $ 11.96 | $ 35.80 | $ - |
| Pensioner M&D | 251.3 | 39.13 | | - |
| **Pensioner Benefit Total** | 378.2 | 51.08 | 35.80 | - |
| | | | | |
| LTD Income (including IBNR) | 79.9 | - | - | - |
| LTD M&D [2] | 29.7 | 12.44 | 27.45 | 60.03 |
| LTD - STB accrued | EXCLUDED | 4.62 | - | - |
| LTD Life [2] | 4.5 | 0.70 | 1.55 | - |
| LTD Optional Life Benefit (including IBNR) | 5.3 | 0.83 | 1.83 | - |
| **LTD Benefit Total** | 119.4 | 18.60 | 30.83 | 60.03 |
| | | | | |
| SIB | 16.2 | - | - | - |
| STB - in pay | EXCLUDED | 2.52 | 5.57 | 12.17 |
| STB - accrued | EXCLUDED | - | - | - |
| Optional Life | | - | - | - |
| **Total Benefits** | $ 513.8 | $ 72.2 | $ 72.2 | $ 72.2 |
| | | | | |
| Pensioner Life 2010 Premiums [1] | NA | 7.80 | 7.80 | 7.80 |
| | | | | |
| **Total** | $ 513.8 | $ 80.0 | $ 80.0 | $ 80.0 |

NOTES
1. Pensioner Life Premiums for 2010 have been treated as charge against the distribution in respect of the Pensioner Life Benefit (if any)
2. LTD Life and LTD M&D includes $2.0 million and $5.2 million, respectively, related to LTD individuals who are assumed to proceed to retirement and become eligible as pensioners.
3. Source: Mercer 2010 HWT Preliminary Valuation (excludes STB Liability)

REVISED Illustrative Allocation Scenarios

# Nortel Health and Welfare Trust
## REVISED Illustrative Allocation Scenarios
Scenario: STB Liability is excluded and Optional Life is a participating benefit
Cdn Millions

REVISED Appendix D-4
Scenarios 12 to 14

| Type of Benefit | Benefit Liabilities [3] | 12 All Benefits Share Pro Rata [Distribution %: 11.9%] | 13 Proposed Participating Benefits [Distribution %: 26.3%] | 14 Benefits in Pay Share Pro Rata [Distribution %: 55.6%] |
|---|---|---|---|---|
| Pensioner Life (including ADB) [1] | $ 126.9 | $ 7.33 | $ 25.59 | $ - |
| Pensioner M&D | 251.3 | 29.96 | - | - |
| **Pensioner Benefit Total** | 378.2 | 37.29 | 25.59 | - |
| LTD Income (including IBNR) | 79.9 | 9.53 | 21.02 | 44.45 |
| LTD M&D [2] | 29.7 | 3.54 | - | - |
| LTD - STB accrued | EXCLUDED | - | - | - |
| LTD Life [2] | 4.5 | 0.54 | 1.18 | - |
| LTD Optional Life Benefit (including IBNR) | 5.3 | 0.64 | 1.40 | - |
| **LTD Benefit Total** | 119.4 | 14.24 | 23.61 | 44.45 |
| SIB | 16.2 | 1.93 | 4.26 | 9.01 |
| STB - in pay | EXCLUDED | - | - | - |
| STB - accrued | EXCLUDED | - | - | - |
| Optional Life | | 18.74 | 18.74 | 18.74 |
| **Total Benefits** | $ 513.8 | $ 72.2 | $ 72.2 | $ 72.2 |
| Pensioner Life 2010 Premiums [1] | NA | 7.80 | 7.80 | 7.80 |
| **Total** | $ 508.5 | $ 80.0 | $ 80.0 | $ 80.0 |

NOTES
1. Pensioner Life Premiums for 2010 have been treated as charge against the distribution in respect of the Pensioner Life Benefit (if any)
2. LTD Life and LTD M&D includes $2.0 million and $5.2 million, respectively, related to LTD individuals who are assumed to proceed to retirement and become eligible as pensioners.
3. Source: Mercer 2010 HWT Preliminary Valuation (excludes STB Liability)

REVISED Illustrative Allocation Scenarios

078

APPENDIX "B" TO FIFTY-SEVENTH REPORT
- FIFTY-FIRST REPORT OF THE MONITOR DATED AUGUST 27, 2010
(WITHOUT APPENDICES, EXCEPT FOR APPENDIX "C" THERETO-
MERCER 2010 HWT PRELIMINARY VALUATION

079

Court File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS*
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

FIFTY-FIRST REPORT OF THE MONITOR
DATED AUGUST 27, 2010

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................1

II.     PURPOSE.............................................................................................3

III.    TERMS OF REFERENCE ...................................................................5

IV.     BACKGROUND ..................................................................................6

        Appointment of Representatives...............................................................6

        The Settlement Agreement ......................................................................7

V.      PROCESS LEADING TO THIS MOTION ...........................................9

VI.     FACTS CONCERNING THE HWT ....................................................10

        Overview of the HWT ...........................................................................10

        Revenue Canada Ruling ........................................................................12

        The Trust Agreement ............................................................................13

        Current Plans.......................................................................................14

        Sun Life...............................................................................................15

        Pensioner Benefits ...............................................................................15

                (a)     Pensioner Life ........................................................ 16

                (b)     Medical and Dental Benefits................................... 17

        LTD Benefits .......................................................................................18

                (a)     LTD Life Insurance Benefits ................................... 18

                (b)     Medical and Dental Benefits................................... 19

                (c)     Income Benefits ..................................................... 19

        Survivor Income Benefits .....................................................................19

        Survivor Transition Benefits..................................................................20

        Optional Life Benefit ...........................................................................21

        Basic and Optional Life Cross-Experience Rating...................................22

        Financial Reports on the HWT ..............................................................23

                (a)     Tax Returns............................................................ 23

                (b)     HWT Financial Statements ..................................... 23

        HWT Valuations ..................................................................................24

        Funding and Administration..................................................................25

        Available Cash .....................................................................................26

                                                                              Page

VII.    MERCER 2010 PRELIMINARY HWT VALUATION ...................................................27
VIII.   PROPOSED ALLOCATION METHODOLOGY ...........................................................29
        Illustrative Scenarios.............................................................................................29
        Proposed Allocation Methodology .......................................................................34
        Independent Legal Counsel....................................................................................36
        Specific Process Matters ........................................................................................39
        Operational Steps ...................................................................................................42
IX.     RECOMMENDATION ................................................................................................44

0    082

Court File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

FIFTY-FIRST REPORT OF THE MONITOR
DATED AUGUST 27, 2010

## I.    INTRODUCTION

1.    On January 14, 2009 (the "**Filing Date**") Nortel Networks Corporation ("**NNC**" and
collectively with all its subsidiaries "**Nortel**" or the "**Company**"), Nortel Networks
Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks
International Corporation and Nortel Networks Global Corporation (collectively the
"**Applicants**") filed for and obtained protection under the *Companies' Creditors
Arrangement Act* ("**CCAA**"). Pursuant to the Order of this Honourable Court dated
January 14, 2009, as amended and restated (the "**Initial Order**"), Ernst & Young Inc.
was appointed as the Monitor of the Applicants (the "**Monitor**") in the CCAA
proceedings. The stay of proceedings was extended to October 29, 2010, by this
Honourable Court in its Order dated July 16, 2010.

2.    Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries concurrently filed
voluntary petitions under Chapter 11 of Title 11 of the U.S. Bankruptcy Code (the
"**Code**") in the United States Bankruptcy Court for the District of Delaware (the "**U.S.**

Court") on January 14, 2009 (the "**Chapter 11 Proceedings**"). As required by U.S. law, an official unsecured creditors committee (the "**Committee**") was established in January, 2009.

3.      An *ad hoc* group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "**Bondholder Group**"). In addition, pursuant to Orders of this Honourable Court dated May 27, 2009, July 22, 2009 and July 30, 2009, representative counsel was appointed on behalf of the former employees of the Applicants, the continuing employees of the Applicants and the LTD Beneficiaries, respectively, and each of these groups is participating in the CCAA proceedings.

4.      Nortel Networks (CALA) Inc. (together with NNI and certain of its subsidiaries that filed on January 14, 2009, the "**U.S. Debtors**") filed a voluntary petition under Chapter 11 of Title 11 of the Code in the U.S. Court on July 14, 2009.

5.      Nortel Networks UK Limited ("NNUK") and certain of its subsidiaries located in EMEA were granted Administration orders (the "**UK Administration Orders**") by the High Court of England and Wales on January 14, 2009 (collectively the "**EMEA Debtors**"). The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as Administrators of the various EMEA Debtors, except for Ireland, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively the "**Joint Administrators**").

6.      Subsequent to the Filing Date, Nortel Networks SA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France

pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court.

7.    The CCAA proceedings and the UK Administration proceedings of NNUK have been recognized by the U.S. Court as foreign main proceedings under Chapter 15 of the Code.

8.    Subsequent to the Filing Date, certain other Nortel subsidiaries have filed for creditor protection or bankruptcy proceedings in the local jurisdiction in which they are located.

## II.    PURPOSE

9.    The purpose of this Fifty-First Report of the Monitor (the "**Fifty-First Report**") is:

    (a)    to seek this Honourable Court's approval of a proposed allocation methodology[1] (the "**Proposed Allocation Methodology**") for the allocation of funds held in the Applicants' Health and Welfare Trust (the "**HWT**") and such ancillary relief as is just and convenient to terminate the HWT and implement the Proposed Allocation Methodology to distribute the funds held in the HWT to the beneficiaries who are entitled thereto; and

    (b)    to provide this Honourable Court with information about the HWT relevant to its termination and more specifically to the allocation and distribution of its corpus and the process that has been followed by the Applicants and the Monitor to resolve these issues in a reasonable and practical manner.

10.    The Settlement Agreement (defined below) provides and this Court has ordered that benefit payments by the Applicants will end on December 31, 2010. It is therefore timely to seek approval of the Proposed Allocation Methodology, which will enable a distribution of the HWT corpus.

---

[1] Described in Section VIII below. An illustrative example of the application of the Proposed Allocation Methodology to the participating benefits on an aggregate basis (not an individual basis) is attached as Appendix D-1, Column 2.

11.   It is appropriate for the Monitor to bring this motion in these proceedings and seek approval of the Proposed Allocation Methodology in order to assist this Honourable Court and the parties, given, among other things:

    (a)   the Applicants administer the HWT and, as they are under the supervision of this Honourable Court in these proceedings, require approval of this Honourable Court prior to taking those proposed steps that are not in the ordinary course of the Applicants' business;

    (b)   a resolution of HWT allocation and distribution matters is required in order to determine certain claims (in that distributions from the HWT will reduce them) against the Applicants, assist in the development of a CCAA Plan and advance the administration of the Applicants' estates;

    (c)   the provisions of the Settlement Agreement;

    (d)   The Northern Trust Company, Canada, the current trustee of the HWT (the "Trustee"), has an extremely limited mandate, pursuant to which virtually all decisions concerning the HWT are the Applicants' responsibility and the Trustee merely acts in accordance with instructions from the Applicants;

    (e)   the Applicants' have no financial interest in the HWT corpus; and

    (f)   the Monitor's role as an independent Court-appointed officer to balance the interests of the various parties, particularly in light of the uncertainties with respect to the interpretation of the Trust Agreement and the number of potential outcomes.

12.   Counsel has advised the Monitor that the Trust Agreement (defined below) does not provide clear guidance on which individuals are entitled to participate in a distribution on termination of the HWT and there are a number of interpretations and possible outcomes. To assist this Honourable Court and the parties, counsel to the Monitor has prepared a memorandum of law considering the potential interpretations of the Trust Agreement and issues related thereto, a copy of which is attached as Appendix "B".

13.   The Monitor recommends the Proposed Allocation Methodology based on the advice of counsel with respect to the interpretation of the Trust Agreement and, in the Monitor's

view, it represents a fair and reasonable balancing of various interests in a trust fund inadequate to fully meet all claims. It is also a practical methodology which can be implemented without undue cost and delay. Further, the Proposed Allocation Methodology is, in general, consistent with the way in which the HWT has been administered, in that, with the exception of the LTD Optional Life Benefit and the STBs, these benefits are not paid on a pay-as-you-go basis by Nortel and assets of the HWT are shown as reserved for payment of these benefits on the HWT financial statements.

14.   The Proposed Allocation Methodology is set out in paragraph 101 below. In brief, it provides that those beneficiaries whose claims are in pay (that is, those with income claims presently being paid) and those whose claims are certain to be payable at some future date will share in the distribution. Therefore, the following benefits would share *pro rata*: (a) LTD Income; (b) LTD Life; (c) LTD Optional Life Benefit; (d) SIBs and STBs in pay; and (e) Pensioner Life.

15.   The Proposed Allocation Methodology and subsequent distributions are based on the Mercer 2010 HWT Preliminary Valuation, a copy of which is attached as Appendix "C". An illustrative example of the application of the Proposed Allocation Methodology to the participating benefits on an aggregate basis (not on an individual basis) is attached as Appendix D-1, Column 2. Schedules providing illustrative examples under various allocation scenarios are attached as Appendix "D".

## III.   TERMS OF REFERENCE

16.   In preparing this Fifty-First Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with Nortel management. The Monitor has not audited,

reviewed or otherwise attempted to verify the accuracy or completeness of the information and, accordingly, expresses no opinion or other form of assurance on the information contained in this Fifty-First Report.

17.    Capitalized terms used herein (including in the preceding paragraphs) shall have the meanings given to them herein or in the Monitor's Thirty-Ninth Report dated February 18, 2010 (the "**Thirty-Ninth Report**"), which terms from the Thirty-Ninth Report are reproduced on Appendix "A" attached hereto for ease of reference.

18.    Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

## IV.    BACKGROUND

**Appointment of Representatives**

19.    As set out in detail in the Monitor's Thirty-Sixth Report dated February 8, 2010 and the Affidavit of Elena King sworn February 18, 2010, all but a very few individuals are represented in these proceedings by Court appointed representative counsel; namely, Former Employees' Representative Counsel, LTD Beneficiaries' Representative Counsel, Continuing Employees' Representative Counsel or CAW Counsel, and also Court appointed representatives; namely, the Former Employees' Representatives, the LTD Beneficiaries' Representative (collectively, the "**Employee Representatives**") or the Continuing Employees' Representatives.

20.    The only individuals (collectively referred to as the "**Individual Parties**") not represented by the above appointments are:

C   088

(a)     3 former employees and one working employee who opted out of such representation; and

(b)     any former chief executive officer or chairman of the board of directors, any non-employee member of the board of directors, or such former employees or officers that are subject to investigation and charges by the Ontario Securities Commission or the United States Securities and Exchange Commission.

21.     The Court Orders appointing the Employee Representatives expressly state that they may represent their constituents for the purpose of settling or compromising their claims in insolvency proceedings "or in any other proceeding which has been or may be brought before this Honourable Court". The administration of the HWT, the benefits which it provides and its termination are all being overseen within the CCAA proceedings. Payments by Nortel of certain benefits funded through the HWT are included in the Applicants' cash flows approved in the CCAA proceedings. Employee and pensioner benefit claims against the Applicants will be dealt with in a compensation claims process to be subsequently brought before this Court for approval. These claims will be reduced by the amount of any distributions made to the claimant from the HWT. Therefore, an allocation and distribution of the corpus of the HWT impacts on, and relates to, employee and pensioner claims against the Applicants in the CCAA proceedings. As a result, the Court approved Settlement Agreement (discussed below) contemplated the involvement of the Employee Representatives in the allocation and distribution process for the HWT.

22.     The Employee Representatives engaged RSM Richter Inc. as their financial advisor and The Segal Company Ltd. ("Segal") as their actuarial advisor.

## The Settlement Agreement

23.     Although Nortel is insolvent, it continued for more than a year to fund its pre-filing obligations for medical, dental and certain other benefits to its pensioners, their survivors

and disabled employees; however, it could not continue to do so indefinitely. In the absence of special arrangements, Nortel's benefits payments would have ceased on March 31, 2010. At the conclusion of the payment of benefits in accordance with the Settlement Agreement, these benefits will have been funded for two years.

24.    The Applicants, the Monitor, the Former Employee Representatives (on their own behalf and on behalf of the parties they represent), the LTD Employee Representative (on her own behalf and on behalf of the parties she represents), the Former Employees' Representative Counsel, the LTD Beneficiaries' Representative Counsel and the CAW (the "**Settlement Parties**") reached an agreement regarding certain issues related to, among other things, the Applicants' registered Pension Plans, certain employee benefits for, among others, Pensioners and LTD Beneficiaries and certain employment related issues. The agreement was amended and restated on March 30, 2010 (as amended and restated, the "**Settlement Agreement**") following issuance of this Honourable Court's reasons on March 26, 2010. Additional information on the Settlement Agreement and the process leading up to the Settlement Agreement can be found in the Thirty-Ninth Report, the supplements to the Thirty-Ninth Report and the Forty-Second Report of the Monitor dated March 30, 2010.

25.    The Settlement Agreement was approved by this Honourable Court by Order dated March 31, 2010 (the "**Settlement Approval Order**"). Leave to appeal the Settlement Approval Order was denied by Endorsement of the Ontario Court of Appeal dated June 3, 2010. Copies of the Settlement Approval Order (which attaches a copy of the Settlement Agreement) and of the Endorsement of the Court of Appeal are attached hereto as Appendices "E" and "F", respectively.

26.   In summary, the Settlement Agreement addresses the payment of benefits during 2010 to, among others, Pensioners and LTD Beneficiaries, confirms that claims in respect of benefits and relating to the HWT rank as ordinary unsecured claims on a *pari passu* basis with the claims of the ordinary unsecured creditors of the Applicants and releases directors, officers, the Trustee and others from all direct and indirect claims related to the HWT (other than against a director of Nortel for a matter referred to in subsection 5.1(2) of the CCAA or with respect to fraud.)

27.   The Settlement Agreement also provides:

> Resolution: *The Parties will work towards a Court approved distribution of the Health and Welfare Trust ("HWT") corpus in 2010 to its beneficiaries entitled thereto and the resolution of any issues necessarily incident thereto.* For greater certainty, nothing in this Settlement Agreement affects the determination on any basis whatsoever of the entitlement of any beneficiary to a distribution from the corpus of the HWT. Any fees or expenses incurred in connection with any dispute or litigation among the beneficiaries of the HWT concerning entitlement (including without limitation all legal, actuarial and other fees and expenses of the trustee of the HWT and other service providers of the HWT) shall not be paid by Nortel, but shall be paid by the HWT corpus. For greater certainty, such fees or expenses shall not include those of the Monitor and incurred by Nortel in connection with any motion for termination of the HWT or for directions with respect to the HWT, which shall be paid by Nortel. (Section C.1) (Emphasis added.)

28.   This provision was in recognition of the importance and significance of achieving an allocation of the HWT corpus before the end of 2010 (when payment of benefits will cease) in order for distributions to be made to individuals based on such an allocation.

## V.   PROCESS LEADING TO THIS MOTION

29.   The Monitor has worked closely with the Applicants, the Trustee, Sun Life Assurance Company of Canada ("**Sun Life**") (party to an administrative services only arrangement with Nortel in respect of certain benefit plans and a provider of certain life insurance

policies) and Mercer (the Applicants' actuarial advisor) on all major aspects of the Applicants' current employee and former employee benefit plans and has sought their assistance in assembling facts and documents relevant to this motion. Section VI below summarizes the material facts relating to the HWT and refers to documents relevant to the HWT that are attached as Appendices to this Fifty-First Report.

30.    In order to analyze the options available for distribution of the funds held in the HWT, the Monitor and its advisors reviewed documentation relevant to the HWT that was available. Not all supporting records are available as the HWT was established 30 years ago. The Monitor also shared this information with Representative Counsel and Independent Counsel (discussed in Section VIII below) so as to ensure that all constituencies had the same available information.

31.    The information provided included:

    (a)    the documents basic to the establishment of the HWT, being the Revenue Canada ruling and the trust documents;

    (b)    benefits information, including policies with Sun Life and experience reports; and

    (c)    financial reports and valuations.

## VI.    FACTS CONCERNING THE HWT

### Overview of the HWT

32.    Nortel established the HWT on January 1, 1980 as a tax-efficient vehicle through which Nortel would continue to provide employee benefits by agreement between Northern Telecom Limited (a predecessor company to NNL) and Montreal Trust Company (as trustee), amended by agreements made as of September 24, 1984, June 1, 1994 and

December 1, 2005 and further amended by letter agreement dated December 1, 2005 (collectively, the "**Trust Agreement**"). The Trust Agreement (with an appendix respecting administrative services) is attached as Appendix "G". Northern Telecom Canada, Limitée, Montreal Trust Company (a predecessor trustee) and Association D'Hospitalisation du Québec entered into an administrative services only agreement dated January 1, 1981 in respect of benefits provided under medical and dental plans, a copy of which agreement is attached as Appendix "H".

33.  As the successor to Northern Telecom Limited, Nortel is bound by the Trust Agreement pursuant to Article IX.

34.  Most of Nortel's non-pension employee benefits, including life insurance, long term disability, medical, dental and survivor income benefits, are funded by Nortel on a pay-as-you-go basis but as an administrative matter are paid using the HWT as a payment mechanism. In respect of certain other benefit plans, the benefits have been funded (in part) by the HWT using trust assets (referred to as "**Reserved Plans**"). Assets were notionally allocated in the HWT financial statements with respect to the Reserved Plans; however, assets were not segregated in the HWT by benefit plan and no separate bank accounts were established. As a result, all the HWT assets are commingled.

35.  Employees and former employees of Nortel were not informed of the existence of the HWT until at least 2007 nor were they promised that their benefits would be provided through a health and welfare trust. None of Nortel's collective bargaining agreements referenced the HWT or promised to provide benefits through a health and welfare trust.

093

- 12 -

**Revenue Canada Ruling**

36.     In 1979, prior to the establishment of the HWT, Nortel sought and obtained an advance

income tax ruling from Revenue Canada (as it then was) regarding the tax treatment of

the HWT.  Nortel's letter to Revenue Canada dated December 16, 1979 (the "**Ruling**

**Request Letter**"), attached as Appendix "I", and the ruling obtained on December 28,

1979 (the "**Ruling**"), attached as Appendix "J", described the facts relevant to the

proposed health and welfare trust and benefit plans, including how the trust was to be

operated.

37.     The Ruling Request Letter and the Ruling referred to:

(a)     the establishment of a single health and welfare trust fund by Nortel through
which certain benefit plans would be provided;

(b)     the following benefit plans as comprising the plans within the HWT: health care
(medical and dental); sickness and accident; long term disability; survivor
income benefit and group life insurance;

(c)     the Trustee being responsible for receiving Nortel's contributions and employee
contributions and arranging for payment of benefits to eligible employees and
dependents and payment of premiums to the insurance company;

(d)     the transfer to the HWT of the Pensioners' Insurance Fund (in respect of the
group life insurance plan – part I) of $11 million held by Mutual Life Assurance
of Canada representing a surplus in a prior retirement life insurance arrangement;

(e)     employee contributions in respect of optional life insurance (group life insurance
- part II), stating they would form part of the Trust Fund (as defined below) but
be kept in a separate sub-account; and

(f)     the following proposed funding arrangements:

(i)     Health Care Plan - Nortel to make contributions to the HWT to satisfy the
claims liability and may fund expected future claims, as actuarially
determined by the insurance carrier;