IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: Jointly Administered
Debtors. :
:
: RE: D.I. 5202
:
---------------------------------------------------------X

## ORDER (A) AUTHORIZING DEBTORS' ENTRY INTO THE STALKING HORSE ASSET SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES AND BID PROTECTIONS (C) APPROVING THE NOTICE PROCEDURES AND THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (D) APPROVING THE LICENSE REJECTION PROCEDURES, (E) APPROVING A SIDE AGREEMENT, (F) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL AND (G) SETTING A DATE FOR THE SALE HEARING

Upon the motion dated April 4, 2011, [D.I. 5202] (the "Motion"),[2] of Nortel Networks Inc. ("NNI") and its affiliated debtors, as debtors and debtors in possession in the above-captioned cases (the "Debtors"), for entry of orders, under Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 2002, 6004, 6006, 9014 and 9018 and Local Rules 6004-1 and 9018-1 (i)(a) authorizing the Debtors' entry into that certain asset sale agreement dated as of April 4, 2011 among NNI, Nortel Networks Limited ("NNL"), Nortel Networks

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the Stalking Horse Agreement (as defined herein).

Corporation ("NNC"), Nortel Networks UK Limited, Nortel Networks (Ireland) Limited, Nortel Networks S.A. and certain other entities identified therein as sellers (together, the "Sellers") and Ranger Inc. as purchaser (the "Stalking Horse Purchaser") and Google Inc. for the sale of substantially all of the Debtors' residual patent and certain related assets as described therein (the "Purchased Assets") as a "stalking-horse" sale agreement (as appended to the Motion as Exhibit A, the "Stalking Horse Agreement"), (b) authorizing and approving the bidding procedures (appended hereto as Exhibit 1, the "Bidding Procedures") and the Bid Protections (as defined below), including[3] granting administrative expense status to the portion of the Bid Protections payable by the Debtors to the Stalking Horse Purchaser, (c) approving the form and manner of notice of the Sale (the "Notice Procedures") and the procedures (the "Assumption and Assignment Procedures") as set forth below for the assumption and assignment of the Assumed and Assigned Contracts (as defined below, and together with the Purchased Assets, the "Assets"), (d) approving that certain side agreement (as appended to the Motion as Exhibit I, the "Side Agreement"), (e) approving the procedures (as defined in the Motion, the "License Rejection Procedures") for the rejection of certain licenses, (f) authorizing the Debtors to file certain documents under seal and (g) setting the time, date and place for a hearing (the "Sale Hearing") to consider the sale of the Assets, the assumption and assignment of the Assumed and Assigned Contracts and the rejection of the Unknown Licenses (the "Sale"); (ii) authorizing and approving (a) the sale of the Purchased Assets, free and clear of all claims and interests, pursuant to section 363 of the Bankruptcy Code, except as set forth in the Stalking Horse Agreement, (b) the assumption and assignment of the Assumed and Assigned Contracts pursuant to section 365 of the Bankruptcy Code, (c) the rejection of the Unknown Licenses pursuant to section 365 of

---

[3] For the avoidance of doubt, as used in this Order, "including" means "including without limitation".

2

the Bankruptcy Code and (d) the License Non-Assignment and Non-Renewal Protections; and (iii) granting them such other and further relief as the Court deems just and proper; and the Court having reviewed the Motion; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore including for the reasons stated on the record at the Bidding Procedures Hearing, it is hereby

**FOUND AND DETERMINED THAT:**[4]

A.  The court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 157 and 1334.

B.  Venue of these cases and the Motion in this district is proper under 28 U.S.C. § 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.  The statutory and legal predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 2002, 6004, 6006, 9014 and 9018, and Local Rules 6004-1 and 9018-1.

D.  Good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order (including with respect to the proposed Bidding Procedures and the Bid Protections) has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b).

---

[4] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. See. Fed. R. Bankr. P. 7052.

E. The Debtors' proposed sale notice, substantially in the form attached to the Motion as Exhibit E (the "Sale Notice") and the Debtors' proposed publication notice, substantially in the form attached to the Motion as Exhibit F (the "Publication Notice"), are each appropriate and reasonably calculated to provide all interested parties (including holders of Unknown Licenses) with timely and proper notice of the Bidding Procedures, the Auction (if necessary), the Sale Hearing, the License Rejection Procedures (as defined in the Motion) and the License Non-Assignment and Non-Renewal Procedures (as defined in the Sale Order) and no other or further notice is required.

F. No further or other notice beyond that described in the foregoing Paragraphs is required in connection with the Transactions.

G. The Bidding Procedures, in the form attached hereto as Exhibit 1, are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the sale of the Assets.

H. The Debtors have demonstrated compelling and sound business justifications for authorizing the sale of the Assets, entry into the Stalking Horse Agreement and the payment of the Bid Protections under the circumstances, timing, and procedures set forth herein, in the Motion and in the Stalking Horse Agreement.

I. Entry into the Stalking Horse Agreement with the Stalking Horse Purchaser as a "stalking-horse" sale agreement is in the best interest of the Debtors and the Debtors' estates and creditors. The Stalking Horse Agreement will enable the Debtors to secure an adequate floor for the Auction and will provide a clear benefit to the Debtors' estates.

J. The Bid Protections are fair and reasonable and provide a benefit to the Debtors' estates and creditors.

K. The Debtors' payment of the Bid Protections under the conditions set forth in section 8.2 of the Stalking Horse Agreement is (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) reasonable and appropriate, and (d) necessary to ensure that the Stalking Horse Purchaser will continue to pursue the proposed Stalking Horse Agreement to undertake the sale of the Assets. Notwithstanding anything to the contrary in this or any other order of this Court, the Debtors' portion of the Bid Protections shall constitute an administrative expense with priority pursuant to Bankruptcy Code sections 503(b) and 507(a)(2).

L. The Stalking Horse Purchaser would not have entered into the Stalking Horse Agreement and would not consummate the Sale if the License Rejection Procedures were not approved in order to identify any third parties with unknown licenses to the Purchased Assets. A process for the sale of the Purchased Assets that does not include the License Rejection Procedures would yield substantially less value for the Debtors' estates, with less certainty, than the Sale. Therefore, the License Rejection Procedures are in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

M. The filing of certain documents under seal, including the Schedules, Side Agreement, lists of License Counterparties, lists of Contract Counterparties and lists of Assumed and Assigned Contracts, is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein.

N. The Bidding Procedures comply with the requirements of Local Rule 6004-1(c)(ii).

O. The License Rejection Procedures provide counterparties to the Unknown Licenses with proper and sufficient notice of the Debtors' intent to reject the Unknown Licenses and the right of the counterparties to the Unknown Licenses to elect relief under section 365(n)(1)(b) of the Bankruptcy Code.

P. The entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1. Those portions of the Motion seeking approval of the Debtors' entry into the Stalking Horse Agreement, the Bidding Procedures, the Bid Protections, the Notice Procedures, the License Rejection Procedures, the Assumption and Assignment Procedures, the Side Agreement, setting the time, date and place of the Sale Hearing, setting the deadline by which to object to the relief sought in the Motion and authorizing the Debtors to file certain documents under seal, including the Schedules, Side Agreement, lists of License Counterparties, lists of Contract Counterparties and lists of Assumed and Assigned Contracts, are GRANTED and any objections thereto are OVERRULED except as set forth on the record or herein.

2. Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these chapter 11 cases.

**The Bidding Procedures**

3. The Bidding Procedures attached hereto as <u>Exhibit 1</u> are hereby APPROVED. Subject to the approval of the Bidding Procedures by the Ontario Superior Court of Justice in the Canadian Proceedings regarding the Canadian Debtors, the Debtors are hereby authorized to conduct a sale by auction of the Assets pursuant to the Bidding Procedures and the terms of this Order.

4. The Stalking Horse Purchaser shall be deemed a Qualified Bidder pursuant to the Bidding Procedures for all purposes.

5. The Bidding Procedures shall apply to the Qualified Bidders and the conduct of the sale of the Assets and the Auction.

### License Rejection Procedures

6. The License Rejection Procedures as set forth in the Motion are hereby authorized, approved and made part of this Order as if fully set forth herein

7. The License Rejection Objection Deadline (as defined in the Motion) is **4:00 p.m. (ET) on May 31, 2011**.

8. The Notice of Election Deadline (as defined in the Motion) is **4:00 p.m. (ET) on June 6, 2011**.

9. A counterparty to an Unknown License with both the Debtors and the Canadian Debtors that wishes to retain its license rights under such Unknown License must (i) file and serve a Notice of Election and (ii) act to preserve its license rights in accordance with the license rejection procedures approved by the Canadian Court. Such a counterparty may not attempt to retain its license rights in one jurisdiction and terminate such license rights in the other.

### The Assumption and Assignment Procedures

10. The Assumption and Assignment Procedures as set forth in the Motion are hereby authorized, approved and made part of this Order as if fully set forth herein.

11. The Court recognizes that the list of Assumed and Assigned Contracts (as defined in the Motion), lists of License Counterparties (as defined in the Motion), lists of Contract Counterparties (as defined in the Motion) and affidavits of service that identify the Assumed and Assigned Contracts, the License Counterparties and the Contract Counterparties are confidential

commercial information, and therefore authorizes that any such lists and affidavits to be filed in connection with the Motion and the procedures approved therein may be filed under seal.

12. The Debtors shall provide unredacted lists of Assumed and Assigned Contracts and affidavits of service identifying the License Counterparties and the Contract Counterparties to the Clerk's Office of the United States Bankruptcy Court for the District of Delaware in a prominently marked envelope with a cover sheet attached containing (i) the caption, (ii) the docket number of the Motion, (iii) the docket number of this Order, (iv) the title of the list of Assumed and Assigned Contracts or affidavits of service identifying such agreements or the License Counterparties or Contract Counterparties and (v) the legend "DOCUMENTS TO BE KEPT UNDER SEAL" in bold print.

13. Pursuant to Bankruptcy Rule 6006(f)(6), the Court hereby authorizes the Debtors to file an omnibus motion incorporating more than one hundred (100) executory contracts to be assumed and assigned pursuant to section 365 of the Bankruptcy Code.

## The Stalking Horse Agreement

14. Subject to the Bidding Procedures and approval of the sale at the Sale Hearing, the Debtors' entry into the Stalking Horse Agreement is hereby approved.

## The Bid Protections

15. To the extent due under section 8.2 of the Stalking Horse Agreement, the Debtors are authorized to pay to the Stalking Horse Purchaser a fee of twenty-five million dollars and 00/100 ($25,000,000) (the "Break-Up Fee") which shall be payable as provided for pursuant to the terms of the Stalking Horse Agreement, regardless of whether the Stalking Horse Agreement and the Sale are ultimately approved by this Court or any other court. To the extent due under section 8.2 of the Stalking Horse Agreement, the Debtors are also authorized to pay to the

Stalking Horse Purchaser the total amount of all fees, costs and expenses reasonably incurred in connection with the preparation, execution and performance of the Stalking Horse Agreement, which fees shall not exceed four million dollars and 00/100 ($4,000,000) (the "Expense Reimbursement" and together with the Break-Up Fee, the "Bid Protections").

16. The Debtors' obligation to pay the Bid Protections pursuant to section 8.2 of the Stalking Horse Agreement shall survive termination of the Stalking Horse Agreement, shall constitute an administrative expense claim under section 503(b) of the Bankruptcy Code, and shall be payable under the terms and conditions of the Stalking Horse Agreement and this Order, notwithstanding section 507(a) of the Bankruptcy Code.

## Notice Procedures

17. The notices, in substantially the same form as annexed to the Motion as Exhibits E, F, G and H, are sufficient to provide effective notice to all interested parties of the Bidding Procedures, the Auction, the Sale, the License Rejection Procedures, the Assumption and Assignment Procedures and the License Non-Assignment and Non-Renewal Protections pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and are hereby approved.

18. As soon as reasonably practicable after entry of this Bidding Procedures Order and the Canadian Sales Process Order, the Debtors (or their agent) shall serve the Sale Notice, in substantially the form attached as Exhibit E to the Motion, by first-class mail, postage prepaid, and/or via overnight mail, facsimile, hand delivery or electronic transmission upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to the Assets during the past nine (9) months, (ii) all entities reasonably known to have asserted any claim, lien, encumbrance or interest in the Assets, (iii) the counterparties to the Cross-License Agreements and Outbound License Agreements, (iv) the attorneys general for all states in which Purchased

Assets owned by the Debtors are located, all federal and state taxing authorities, the Securities and Exchange Commission, the Internal Revenue Service, and the Department of Labor and similar state labor or employment agencies, (v) all parties entitled to notice pursuant to Local Rule 2002-1(b), (vi) all counterparties to the Assumed and Assigned Contracts, (vii) all known creditors of the Debtors, (viii) counsel to the Committee, (ix) counsel to the Bondholder Group and (x) the additional persons agreed between the Debtors and the Stalking Horse Purchaser to be served in accordance with the terms of the Stalking Horse Agreement. The Debtors also shall publish notice substantially in the form attached as Exhibit F to the Motion in <u>The Wall Street Journal</u> (National Edition), <u>The Globe and Mail</u> (National Edition), <u>The New York Times</u> (National Edition) and <u>The Financial Times</u> (International Edition) within five (5) business days of entry of this Bidding Procedures Order and the Canadian Bidding Procedures Order or as soon as reasonably practicable thereafter. Among other things, the Sale Notice and the Publication Notice shall disclose the License Rejection Procedures and the License Non-Assignment and Non-Renewal Protections. The Sale Notice and the Publication Notice are each sufficient to provide effective notice pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006 to counterparties to any Unknown Licenses of the Debtors' intention to reject all Unknown Licenses to which any Debtor is a party pursuant to Section 365 of the Bankruptcy Code effective as of, and conditioned on, the occurrence of the Closing.

19. The Assumption and Assignment Notice, in substantially the same form as annexed to the Motion as Exhibit G, is sufficient to provide effective notice pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6006(c) to counterparties to the Assumed and Assigned Contracts of the Debtors' intent to assume and assign some or all of the Assumed and Assigned Contracts, and is hereby approved. Each Assumption and Assignment Notice shall set

forth the following information: (i) the name and address of the counterparty to the Assumed and Assigned Contract, (ii) notice of the proposed effective date of the assignment (subject to any right of the Debtors to withdraw such request for assumption and assignment), (iii) identification of the Assumed and Assigned Contract, (iv) the Cure Amount, if any, and (v) a description of the Stalking Horse Purchaser or other Successful Bidder, as applicable, and a statement as to the Stalking Horse Purchaser's or other Successful Bidder's ability to perform the Debtors' obligations under the Assumed and Assigned Contracts, as applicable.

20. The Debtors (or their agent) shall serve the Assumption and Assignment Notice, in substantially the form attached to the Motion as Exhibit G, upon each counterparty to the Assumed and Assigned Contracts pursuant to the Assumption and Assignment Procedures set forth in the Motion. The Debtors shall file under seal with the Court and deliver to (a) counsel to the Stalking Horse Purchaser or Other Successful Bidder as applicable, (b) the U.S. Trustee, (c) counsel to the Monitor, (d) counsel to the Committee, and (e) counsel to the Bondholder Group, a master notice of assignment of contracts that sets forth: (i) the name and address of each counterparty to an Assumed and Assigned Contract, (ii) notice of the proposed effective date of each assignment, (iii) a description of each Assumed and Assigned Contract, and (iv) the Cure Amount, if any, as well as an affidavit confirming that Assumption and Assignment Notices have been sent to each Contract Counterparty.

21. The Known License Notice, in substantially the same form as annexed to the Motion as Exhibit H, is sufficient to provide effective notice pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6006(c) to the Known Licensees of the Debtors' intent to reject the Unknown Licenses, and is hereby approved. Each Known License Notice shall set forth the following information: (i) the name and address of the counterparty to the Known License, (ii)

identification of the Known Licenses that the Debtors are a party to with such Known Licensee, and (iii) notice of the proposed effective date of the rejection (subject to the Debtors' right to withdraw such request for rejection with the consent of the Stalking Horse Purchaser, in its sole and absolute discretion, or other Successful Bidder, as applicable) of the Unknown Licenses, (iv) the License Rejection Objection Deadline and (v) the Notice of Election Deadline.

22. The Debtors (or their agent) shall serve the Known License Notices, in substantially the form attached to the Motion as Exhibit H, upon each Known Licensee pursuant to the License Rejection Procedures set forth in the Motion.

### Objection Procedures

23. Except as provided in the License Rejection Procedures, any party that seeks to object to the relief requested in the Motion pertaining to approval of the sale of the Assets, including the sale and the assumption and assignment of the Assumed and Assigned Contracts, shall file a formal objection that complies with the objection procedures as set forth in the Motion. Each objection shall state the legal and factual basis of such objection and may be orally supplemented at the Sale Hearing. To the extent that any party to an Assumed and Assigned Contract does not timely file an objection to the Motion pursuant to the procedures set forth therein, such party shall be bound to the corresponding Cure Amount and be deemed to have consented to the assumption and assignment of such Assumed and Assigned Contract to the Stalking Horse Purchaser or Other Successful Bidder as applicable.

24. Any and all written objections as contemplated by this Order (including any objection to the assumption and assignment of any contract or the Cure Amount under any contract) must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Bankruptcy Court;

and (e) served in accordance with the Local Rules so as to be received on or before the appropriate deadline as set forth in the Motion on the following: (i) counsel to the Debtors, (ii) counsel to the Stalking Horse Purchaser, (iii) counsel to the Committee, (iv) counsel to the Bondholder Group, and (v) the Office of the U.S. Trustee.

25. Failure to object to the relief requested in the Motion shall be deemed to be "consent" for purposes of Bankruptcy Code section 363(f).

26. The General Objection Deadline (as defined in the Motion) is **4:00 p.m. (ET) on June 13, 2011**.

27. If the Stalking Horse Purchaser is not the Successful Bidder at the Auction, objections to issues arising from and in connection with the Auction and/or the Debtors' selection of a Successful Bid made by a Successful Bidder other than the Stalking Horse Purchaser must be filed and served in accordance with the General Objection Procedures by **4:00 p.m. (ET) on June 28, 2011**.

28. All objections to the Motion or the relief requested therein (and all reservations of rights included therein), as it pertains to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved

### Side Agreement

29. The Debtors are authorized to enter into the Side Agreement pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, and to take any and all actions that may be reasonably necessary or appropriate to perform all obligations contemplated thereunder.

30. The failure to specifically describe or include any particular provision of the Side Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Side Agreement be approved in its entirety

31. The Debtors shall provide an unredacted Side Agreement to the Clerk's Office of the United States Bankruptcy Court for the District of Delaware in a prominently marked envelope with a cover sheet attached containing (i) the caption, (ii) the docket number of the Motion, (iii) the docket number of this Order, (iv) a statement identifying the contents of the envelope as the Side Agreement and (v) the legend "DOCUMENTS TO BE KEPT UNDER SEAL" in bold print.

### Other Relief Granted

32. The Auction is scheduled for **9:00 a.m. (ET) on June 20, 2011** at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006 or such other location as shall be timely communicated in accordance with the Bidding Procedures.

33. The Sale Hearing shall be held in this Court on **June 30, 2011 at 10:00 a.m. (ET)**. The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing or by the filing of a hearing agenda.

34. The Stalking Horse Purchaser shall deposit the Good Faith Deposit into an escrow account (the "Escrow Account") in accordance with section 2.2.2 of the Stalking Horse Agreement.

35. The Debtors are authorized to conduct the Sale (as defined in the Bidding Procedures) in accordance with the Bidding Procedures and without the necessity of complying with any state or local bulk transfer laws or requirements.

36. The Debtors are authorized to file the Schedules under seal. The Debtors shall provide the Schedules to the Clerk's Office of the United States Bankruptcy Court for the District of Delaware in a prominently marked envelope with a cover sheet attached containing (i) the caption, (ii) the docket number of the Motion, (iii) the docket number of this Order, (iv) a

statement identifying the contents of the envelope as the Schedules and (v) the legend "DOCUMENTS TO BE KEPT UNDER SEAL" in bold print.

37. In the event there is a conflict between this Order and the Motion or the Stalking Horse Agreement, this Order shall control and govern.

38. This Order shall be binding in all respects upon any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy cases or upon a conversion to chapter 7 under the Bankruptcy Code.

39. Nothing in this Order, the Stalking Horse Agreement or the Motion shall be deemed to or constitute the assumption, assignment or rejection of an executory contract.

40. Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order. For the avoidance of doubt, the Bid Protections approved by this Order shall be immediately appealable and failure to appeal in accordance with the Bankruptcy Rules or other applicable law shall constitute a waiver of such rights.

41. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: May 2, 2011
Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE