<u>**Exhibit A**</u>

**Bidding Procedures**

BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale of certain assets and assumption of certain liabilities as set forth in the Purchase Agreement (as defined below) with respect to the Purchaser, or, as set forth in the relevant purchase agreement(s) with respect to a Successful Bidder or an Alternate Bidder (each as defined below) (in each event, the "Sale").  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Purchase Agreement.

On April 4, 2011, Nortel Networks Inc. and certain of its U.S. subsidiaries that are debtors and debtors-in-possession (collectively, the "U.S. Debtors"), Nortel Networks Limited and certain other affiliates of the U.S. Debtors that have commenced proceedings under the Canadian Companies' Creditors Arrangement Act (the "Canadian Debtors", together with the U.S. Debtors and the Canadian Debtors, the "North American Sellers"), certain other affiliates of the North American Sellers, including Nortel Networks UK Limited (in administration) ("NNUK"), Nortel Networks (Ireland) Limited (in administration) ("NN Ireland"), Nortel Networks S.A. (in administration and liquidation judiciaire) ("NNSA"), Nortel Networks France S.A.S (in administration) and Nortel GmbH (in administration) (the "EMEA Sellers" and together with the North American Sellers, the "Sellers"), certain of which are under the control of Alan Bloom, Stephen Harris, Chris Hill and Alan Hudson of Ernst & Young LLP, in their capacities as the joint administrators of those EMEA Sellers appointed by the English High Court of Justice in connection with the proceedings (the "UK Proceedings") under the Insolvency Act 1986  and NN Ireland which is acting by Alan Bloom also and David Hughes of Ernst & Young Chartered Accountants (such individuals collectively, the "Administrators"), the Administrators and Maître Cosme Rogeau appointed as *mandataire liquidateur* by the Commercial Court of Versailles (the "French Liquidator") executed that certain Asset Sale Agreement relating to the sale and purchase of the Assets with Ranger Inc. (the "Purchaser") and Google Inc. (the "Purchase Agreement").

The Sellers have determined that: (A) the transactions contemplated by the Purchase Agreement and the ancillary agreements discussed therein with respect to the Purchaser, or, as set forth in the relevant sale or purchase agreement(s) and ancillary agreements with respect to a Successful Bidder (collectively, the "Transactions") should be subject to competitive bidding as set forth herein; (B) the transfer of the U.S. Debtors' rights, title and interests in and to the Assets (as defined below) should be subject to approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"); (C) the transfer of the rights, title and interests of the Canadian Debtors in and to the Assets should be subject to approval by the Ontario Superior Court of Justice (the "Canadian Court"); (D) the transfer of the rights, title and interests of NNSA in and to the Assets should be subject to approval by the Supervisory Judge (*juge commissaire*) of the secondary insolvency proceedings of NNSA commenced in the Republic of France on May 28, 2009, within the meaning of Article 27 of the EC Regulation 1346/2000 (the "Supervisory Judge")  and (E) the Transactions shall be (i) submitted for approval by such other applicable court(s) as the Sellers, in consultation with the Creditors' Committee (as defined below), the Bondholder Group (as defined below) and the Monitor (as defined below), may determine are necessary or appropriate and (ii) subject to such

other closing conditions as are set forth in the Purchase Agreement with respect to the Purchaser, or, as set forth in the relevant purchase agreement(s) with respect to a Successful Bidder.

On April 4, 2011, the U.S. Debtors filed a Motion for Orders For Orders (I)(A) Authorizing Debtors' Entry Into The Stalking Horse Asset Sale Agreement, (B) Authorizing And Approving The Bidding Procedures And Bid Protections, (C) Approving The Notice Procedures And The Assumption And Assignment Procedures, (D) Approving The License Rejection Procedures, (E) Approving a Side Agreement, (F) Authorizing The Filing Of Certain Documents Under Seal And (G) Setting A Date For The Sale Hearing And (II) Authorizing And Approving (A) The Sale Of Certain Patents And Related Assets Free And Clear Of All Claims And Interests, (B) The Assumption And Assignment Of Certain Executory Contracts, (C) The Rejection Of Certain Patent Licenses And (D) The License Non-Assignment And Non-Renewal Protections (the "Sale Motion").

On May 2, 2011, the Bankruptcy Court entered an Order approving, among other things, the Bidding Procedures set forth herein and the payment, in certain circumstances, of the Break-Up Fee and Expense Reimbursement (the "Bidding Procedures Order").

On April 7, 2011, 2011, the Canadian Debtors filed a motion with the Canadian Court seeking an order for approval of (I) execution and delivery of the Purchase Agreement by the Canadian Debtors, (II) payment of the Break-Up Fee and Expense Reimbursement in the circumstances provided for in the Purchase Agreement, and (III) a process for the Sale of the Canadian Debtors' rights, title and interests in and to the Assets (as defined below).

On May 2, 2011, the Canadian Court entered an Order approving, among other things, the Bidding Procedures set forth herein and the payment, in certain circumstances, of the Break-Up Fee and Expense Reimbursement (the "Canadian Sales Process Order").

Bidding Process

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which prospective bidders may gain access to or continue to have access to due diligence materials concerning the Assets (as defined below), the manner in which bidders and bids become Qualified Bidders (as defined below) and Qualified Bids (as defined below), respectively, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder (as defined below), and the Bankruptcy Court's, the Canadian Court's and, if required, such other applicable courts' approval thereof (collectively, the "Bidding Process"). The Sellers intend to consult with, among others, the Official Committee of Unsecured Creditors in connection with the chapter 11 cases of Nortel Networks Inc., et al. (jointly administered under Case No. 09-10138) involving the U.S. Debtors (the "Creditors' Committee"), the ad hoc group of bondholders holding claims against certain of the U.S. Debtors and certain of the Canadian Debtors (the "Bondholder Group"), Ernst & Young Inc., in its capacity as the Canadian Court-appointed monitor in connection with the proceedings under the Companies' Creditors Arrangement Act (the "Monitor"), the Administrators in connection with the UK Proceedings, the French Liquidator and their respective advisors throughout the Bidding Process. In the event that the Sellers and any party

disagree as to the interpretation or application of these Bidding Procedures, the Canadian Court and the Bankruptcy Court, jointly, will have jurisdiction to hear and resolve such dispute.[1]

Assets To Be Sold

The Sellers are offering for sale, in one or more Transactions, substantially all of the Sellers' patent assets and certain related assets, as described in the Purchase Agreement (to the extent that such assets are not subsequently excluded from the sale in accordance with the terms of the Purchase Agreement) with respect to the Purchaser, or, as set forth in the relevant sale or purchase agreement(s) with respect to a Successful Bidder, and related schedules and in an information memorandum made available by the Sellers to the Purchaser and other potential bidders, and to be made available to other potential bidders that have executed a confidentiality agreement with the Sellers (the "Assets").

"As Is, Where Is"

The sale of the Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature or description by the Sellers, their agents, or estates, except, with respect to the Purchaser, to the extent set forth in the Purchase Agreement or, with respect to a Successful Bidder (as defined below), to the extent set forth in the relevant sale or purchase agreement(s) of such Successful Bidder.

Free Of Any And All Claims And Interests

All of the rights, title and interests of the Sellers in and to the Assets, or any portion thereof, to be acquired will be sold (i) in the case of Assets that are transferred or assigned by U.S. Debtors, free and clear of all Liens and Claims pursuant to sections 363 and 365 of the U.S. Bankruptcy Code, (ii) in the case of Assets that are transferred or assigned by the Canadian Debtors, free and clear of all Liens and Claims pursuant to the Canadian Approval and Vesting Order, when granted, and (iii) in the case of Assets that are transferred or assigned by the EMEA Sellers free and clear of all Liens, such Liens and Claims to attach to the net proceeds of the sale of such Assets, except with respect to the Purchaser to the extent otherwise set forth in the Purchase Agreement or, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant sale or purchase agreement(s) of such Successful Bidder with the Sellers.

Publication Notice

Within 5 (five) days of entry of orders by the Bankruptcy Court and the Canadian Court approving these Bidding Procedures or as soon as practicable thereafter, the Sellers shall publish notice of these Bidding Procedures, the time and place of the Auction (as defined below), the time and place of the Sale Hearing (as defined below), and the objection deadline for the Sale Hearing in The Financial Times (International Edition), The Wall Street Journal (National Edition), The New York Times (National Edition) and The Globe & Mail (National Edition).

---

[1] For the avoidance of doubt, the Bidding Process shall not govern any disagreements among the Sellers.

Participation Requirements

Unless otherwise ordered by both the Bankruptcy Court and the Canadian Court and accepted by the Administrators, for cause shown, or as otherwise determined by the Sellers (in consultation with the Creditors' Committee, the Bondholder Group and the Monitor), in order to participate in the Bidding Process, prior to the Bid Deadline (as defined below), each person other than the Purchaser who wishes to participate in the Bidding Process, and in the event that such person is an entity formed for the purpose of acquiring the Assets (or any portion thereof), each actual or proposed holder of the equity (whether in the form of stock, partnership interests, LLC interests, debt issued in connection with such person's bid for the Assets or otherwise) or proposed beneficiary of such person through license or similar arrangement granted in connection with such person's bid (each an "Equity Holder"), (each such person other than the Purchaser who wishes to participate in the Bidding Process, and each Equity Holder thereof, a "Potential Bidder") must deliver to the Notice Parties (as defined below) at the addresses provided below:

(a)    an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to such Potential Bidder) in substance substantially the same as the confidentiality agreement (together with all supplements and addenda thereto) executed by the Purchaser, *mutatis mutandis*, and taking account of such Potential Bidder's corporate or other organizational structure, and otherwise in form and substance satisfactory to the Sellers, and which shall inure to the benefit of any purchaser of the Assets.  In the event that the Potential Bidder has already entered into a confidentiality agreement with the Sellers, prior to the distribution of any additional confidential information by the Sellers to such Potential Bidder, such Potential Bidder must provide a statement (i) agreeing that, if the confidentiality agreement (together with all supplements and addenda thereto) executed by the Purchaser contains provisions that are more restrictive than the confidentiality agreement (together with all supplements and addenda thereto) executed by such Potential Bidder, then the confidentiality agreement (together with all supplements and addenda thereto) executed by such Potential Bidder shall be deemed to be amended to contain such more restrictive provisions, *mutatis mutandis*; (ii) agreeing that its obligations under such agreement shall inure to the benefit of any purchaser of the Assets; and (iii) waiving any of its rights under such confidentiality agreement that are in conflict with the Bidding Procedures or that otherwise prohibit disclosures regarding the Potential Bidder, or any Transactions it may enter into, to the Notice Parties and other Qualified Bidders who submit a Qualified Bid (each as defined below);

(b)    current audited financial statements and latest unaudited financial statements of the Potential Bidder or such other form of financial disclosure and credit-quality support or enhancement that will allow the Sellers and their respective financial advisors, in consultation with the Creditors' Committee, the Bondholder Group and the Monitor, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Transactions; and

(c)    a statement demonstrating to the Sellers' satisfaction, a bona fide interest in purchasing the Assets from the Sellers including: (i) the purchase price (including

4

liabilities to be assumed by the Potential Bidder); (ii) any Assets expected to be excluded; (iii) the structure and financing of the Transactions (including, but not limited to, the sources of financing for the purchase price and all requisite financial assurance); (iv) any anticipated corporate, stockholder, internal or regulatory approvals required to close the Transactions, the anticipated time frame and any anticipated impediments for obtaining such approvals; (v) the proposed number of employees of the Sellers who will become employees of the Potential Bidder (save in jurisdictions where employees transfer by operation of law), and any proposed measures associated with the continued employment of all employees who will become employees of the Qualified Bidder; and (vi) any conditions to closing that the Potential Bidder may wish to impose in addition to those set forth in the Purchase Agreement.

A Potential Bidder (i) that has delivered the documents described above, (ii) whose financial information and credit quality support or enhancement demonstrate in the Sellers' judgment, after consultation with their counsel and financial advisors, the Creditors' Committee, the Bondholder Group and the Monitor, the financial capability of the Potential Bidder to consummate the Transactions, (iii) that has submitted a reasonably competitive and realistic non-binding proposal, as described above, (iv) that has delivered executed confidentiality agreement(s), as described above, and (v) that the Sellers determine in their reasonable business judgment, after consultation with their counsel and financial advisors, the Creditors' Committee, the Bondholder Group and the Monitor, is likely (based on availability of financing, experience and other considerations) to be able to consummate the Transactions, will be deemed a "Qualified Bidder". The Sellers will determine, in their reasonable business judgment, after consultation with the Creditors' Committee, the Bondholder Group, the Administrators and the Monitor, whether to entertain bidders for the Assets that have not met one or more of the requirements specified above and deem such bidders to be Qualified Bidders.

As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Sellers will determine, in consultation with the Creditors' Committee, the Bondholder Group and the Monitor, and will notify the Potential Bidder, if such Potential Bidder is a Qualified Bidder. At the same time that the Sellers notify the Potential Bidder that it is a Qualified Bidder, the Sellers will allow the Qualified Bidder to begin or continue to conduct due diligence with respect to the Assets as provided in the following paragraph.

Due Diligence

The Sellers may in their reasonable business judgment, and subject to competitive and other business considerations, afford each Qualified Bidder and any person seeking to become a Qualified Bidder that has executed confidentiality agreement(s) of the type described in clause (a) under the heading "Participation Requirements" with the Sellers such due diligence access to materials and information relating to the Assets as the Sellers deem appropriate after consultation with the Creditors' Committee, the Bondholder Group and the Monitor. Due diligence access may include management presentations as may be scheduled by the Sellers, access to electronic data rooms, on-site inspections, and other matters which a Qualified Bidder may reasonably request and as to which the Sellers, in their reasonable business judgment, may agree. The Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.

5

No additional due diligence for any party other than a Qualified Bidder who has submitted a Qualified Bid will continue after the Bid Deadline (as defined below). The Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. In any event, the Purchaser shall be provided access to all due diligence materials, management presentations, on-site inspections and other information provided to any Qualified Bidders that were not previously made available to the Purchaser as soon as commercially practicable and in no event later than two (2) Business Days after the date that the Sellers made such information available to any such Qualified Bidder. Neither the Sellers nor any of their affiliates (or any of their respective representatives) will be obligated to furnish any information relating to the Assets to any person other than to Qualified Bidders. The Sellers make no representation or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in the Purchase Agreement or in any other definitive agreement(s) with any Successful Bidder executed and delivered by Sellers.

<u>Bid Deadline</u>

A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the following parties (collectively, the "Notice Parties"): (i) Nortel Networks Limited and Nortel Networks Inc., c/o Nortel Networks Limited, Attn: Anna Ventresca, Esq., 5945 Airport Road, Suite 360, Mississauga, Ontario L4V 1R9, Facsimile: (905) 863-1984; (ii) U.S. Debtors' counsel: Cleary Gottlieb Steen & Hamilton LLP, Attn: James L. Bromley and Lisa M. Schweitzer, One Liberty Plaza, New York, New York 10006, Facsimile: (212) 225-3999; (iii) U.S. Debtors' counsel: Morris, Nichols, Arsht & Tunnell LLP, Attn: Derek C. Abbott, 1201 North Market Street, Wilmington, Delaware 19801, Facsimile: (302) 658-3989; (iv) Canadian Debtors' counsel: Ogilvy Renault LLP, Attn: Derrick C. Tay and Jennifer Stam, Royal Bank Plaza, South Tower, Suite 3800, 200 Bay Street, Toronto, Ontario, Canada, Facsimile: (416) 216-3930; (v) Sellers' financial advisors: Lazard Frères & Co., Attn: David Descoteaux, 30 Rockefeller Plaza, New York, NY 10020, Facsimile: (212) 830-3395; (vi) Sellers' advisors: Global IP Law Group, LLC, 233 South Wacker Drive, Suite 8400, Chicago, IL 60606, Facsimile: (312) 283-8026 Attn: David Berten, (vii) counsel to the Creditors' Committee: Akin Gump Strauss Hauer & Feld LLP, Attn: Fred S. Hodara, Stephen B. Kuhn, David H. Botter and Kenneth A. Davis, One Bryant Park, New York, New York 10036, Facsimile: (212) 872-1002; (viii) financial advisor to the Creditors' Committee: Jefferies & Company, Inc., Attn: General Counsel, Investment Banking, 520 Madison Avenue, New York, New York, Facsimile: (212) 284-2280; (ix) counsel to the Bondholder Group: Milbank, Tweed, Hadley & McCloy, Attn: Roland Hlawaty, One Chase Manhattan Plaza, New York, New York, 10006, Facsimile: (212) 822-5735; (x) the Monitor: Murray A. McDonald, Ernst & Young Inc., Ernst & Young Tower, 222 Bay Street, P. O. Box 251, Toronto, ON M5K 1J7 Canada, Facsimile: (416) 943-3300; (xi) the Administrators: Ernst & Young LLP, Attn: Christopher Hill and Robin Jowitt, 1 More Place, London SE1 2AF, United Kingdom, Facsimile +44 20 7951 9002; (xii) counsel to the Administrators: Herbert Smith LLP, Attn: Alex Kay and Robert Moore, Exchange House, Primrose Street, London, EC2A 2HS, Facsimile: +44 20 7098 4447 and + 44 20 7098 4918; (xiii) the French Liquidator: 26 avenue Hoche, 78000 Versailles, France, Facsimile: + 33 1 39 49 44 63, Attn: Cosme Rogeau; and (xiv) Counsel to the French Liquidator: Foucaud, Tchekhoff, Pochet & Associés, 1bis, avenue Foch, 75116 Paris, France Facsimile: + 33 1 45 00 08 19, Attn:

Rajeev Sharma-Fokeer & Edouard Fabre, so as to be received not later than **June 13, 2011 at 4:00 p.m. (ET)** by the Sellers (as may be extended as set out below, the "Bid Deadline"). The Sellers, after consultation with the Creditors' Committee, the Bondholder Group and the Monitor, may extend the Bid Deadline once or successively, but they are not obligated to do so; provided that for any such extension beyond five (5) Business Days, the Sellers shall have obtained the written consent of the Creditors' Committee, the Bondholder Group and the Monitor, which consent will not be unreasonably withheld. If the Sellers extend the Bid Deadline, they will promptly notify all Qualified Bidders (including the Purchaser) and the parties listed above of such extension.

<u>Qualified Bid</u>

A bid, other than the Purchase Agreement, submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder, pursuant to the previous paragraph and complies with all of the following (a "Qualified Bid"):

(a)      it states that the applicable Qualified Bidder offers to purchase the Assets upon the terms and conditions substantially as set forth in the Purchase Agreement, including without limitation, with respect to certainty and timing of closing, or pursuant to an alternative structure (including without limitation, an offer conditioned upon confirmation of a plan of reorganization proposed by the U.S. Debtors and/or a plan of arrangement approved by one or more of the Canadian Debtors and the Monitor, in each case, either individually or in collaboration with such Qualified Bidder), or upon alternative terms and conditions that the Sellers reasonably determine, after consultation with the Creditors' Committee, the Bondholder Group and the Monitor, are no less favorable than the terms and conditions of the Purchase Agreement.

(b)      it includes a letter stating that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder and, if applicable, the Alternate Bidder (as defined below), provided that if such Qualified Bidder is selected as the Successful Bidder or the Alternate Bidder, its offer shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Alternate Bidder, and (ii) (x) with respect to the Successful Bidder only, 180 days from the Sale Hearing, subject to further extensions as may be agreed to under the applicable purchase agreements and (y) with respect to the Alternate Bidder only, the Alternate Bid Expiration Date (as defined below); provided further that, notwithstanding anything to the contrary provided herein, in no event shall the Purchaser be required to serve as an Alternate Bidder without its consent, in its sole discretion;

(c)      it includes a duly authorized and executed Purchase Agreement, including the purchase price for the Assets expressed in U.S. Dollars (the "Purchase Price") together with all exhibits and schedules thereto, the ancillary agreements as described in the Purchase Agreement and such additional ancillary agreements as may be required by the Qualified Bidder with all exhibits and schedules thereto (or term sheets that describe the material terms and provisions of such agreements), as well as copies of such materials marked to show those amendments and modifications to the Purchase Agreement ("Marked Agreements") and such ancillary agreements (the "Marked Ancillary

Agreements") (in each case to the extent applicable) and the proposed orders to approve the Sale by the Bankruptcy Court, the Canadian Court and any other applicable court(s) whose approval may be required, proposed by the Qualified Bidder;

(d)      it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Sellers, in consultation with the Creditors' Committee, the Bondholder Group and the Monitor, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Marked Agreements;

(e)      it is not conditioned on (i) the outcome of unperformed due diligence by the Qualified Bidder and/or (ii) obtaining financing;

(f)      it fully discloses the identity of each entity that will be bidding for the Assets or otherwise sponsoring, financing (including through the issuance of debt in connection with such bid), participating in or benefiting from (including through license or similar arrangement with respect to the assets to be acquired in connection with such bid) such bid, and the complete terms of any such sponsorship, participation, financing or benefit, such disclosure to include, without limitation, (i) in the case of a Qualified Bidder formed for the purpose of acquiring the Assets (or any portion thereof), the identity of each of the actual or proposed Equity Holders of such Qualified Bidder and the terms and participation percentage of such Equity Holder's interest in such bid and (ii) the identity of each entity that has or will receive a benefit from such bid from or through the Qualified Bidder or any of its Equity Holders and the terms of such benefit;

(g)      it has a value to the Sellers, in the Sellers' reasonable business judgment, after consultation with their financial advisors, the Creditors' Committee, the Bondholder Group and the Monitor, that either individually or, when evaluated in conjunction with any other Qualified Bid for the Assets, is greater than or equal to the sum of the value offered under the Purchase Agreement, plus the Break-Up Fee plus U.S. $4 million (representing the Expense Reimbursement); provided that, in determining such value, the Sellers will not be limited to evaluating the dollar amount of a competing bid, but may also consider factors including those described under the "Evaluation of Competing Bids" section hereof;

(h)      it includes an acknowledgment and representation that the Qualified Bidder will assume the Sellers' obligations under the executory contracts and unexpired leases proposed to be assigned pursuant to the Purchase Agreement (or identifies with particularity which of such contracts and leases the Qualified Bidder wishes not to assume, or alternatively which additional executory contracts or unexpired leases the Qualified Bidder wishes to assume), contains full details of the Qualified Bidder's proposal for the treatment of related cure costs, and identifies with particularity any executory contract or unexpired lease the assumption and assignment of which is a condition to closing;

(i)       it includes an acknowledgement and representation that the Qualified Bidder:  (i) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Marked Agreements or the Marked Ancillary Agreements; and (iv) is not entitled to any expense reimbursement or break-up fee in connection with its bid;

(j)       it includes evidence, in form and substance reasonably satisfactory to Sellers, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Marked Agreements and Marked Ancillary Agreements;

(k)       it is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Sellers), certified check or such other form acceptable to the Sellers, payable to the order of the Sellers (or such other party as the Sellers may determine) in U.S. Currency in an amount equal to US$27,000,000 to be dealt with as provided for under "Good Faith Deposit" herein;

(l)       it (i) contains full details of the proposed number of employees of the Sellers (apportioned by jurisdiction) who will become employees of the Qualified Bidder (save in jurisdictions where employees transfer by operation of law) and any proposed measures associated with their continued employment and associated with the employment of all employees who will become employees of the Qualified Bidder, and (ii) identifies any pension liabilities and assets related to any employees currently covered under the Nortel Retirement Income Plan who will become employees of the Qualified Bidder that the Qualified Bidder intends to assume or purchase;

(m)       it includes evidence of the Qualified Bidder's ability to comply with section 365 of the U.S. Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Qualified Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Sellers and assigned or subleased to the Qualified Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases;

(n)       it contains other information reasonably requested by the Sellers; and

(o)       it is received by the Bid Deadline.

The Sellers will determine, in their reasonable business judgment, after consultation with the Creditors' Committee, the Bondholder Group and the Monitor, whether to entertain bids for the Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids; underlined provided that the Sellers, in evaluating such bids, may not waive substantial compliance with any items in paragraphs (d), (e), (f), (i)(iv), (j), (k) or (o) without the

consent of the Purchaser, Creditors' Committee, the Bondholder Group and the Monitor; provided further that such consent shall not be unreasonably withheld in connection with any bid that would (1) otherwise fully satisfy the requirements of a Qualified Bid but for a de minimis failure to comply with those criteria and (2) such non-compliance is cured within twenty-four (24) hours of the Bid Deadline; and provided further that the Sellers shall give the Purchaser written notice no later than the later of (x) three (3) Business Days prior to the commencement of the Auction or (y) 5:00 p.m. (ET) five calendar days prior to the commencement of the Auction of any determination by the Sellers (subject to the two preceding provisos in this sentence) to entertain a bid for the Assets that does not conform to one or more of the requirements specified herein and to deem such bid to be a Qualified Bid (it being understood that such notice shall include a description of the manner in which the applicable bid deviated from the requirements set forth herein) or to entertain a bidder for the Assets that has not met one or more of the requirements set forth under the heading "Participation Requirements" and deem such bidder to be a Qualified Bidder (it being understood that such notice shall include a description of the manner in which the applicable bidder deviated from the requirements set forth herein). Notwithstanding the foregoing, the Purchaser is deemed a Qualified Bidder, and the Purchase Agreement is deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale.

The Sellers shall notify the Purchaser and all Qualified Bidders in writing as to whether or not any bids constitute Qualified Bids (and, with respect to each Qualified Bidder that submitted a bid other than the Purchaser, whether such Qualified Bidder's bid constitutes a Qualified Bid) on the next Business Day after the day that the determination is made; provided that such notification shall be given no later than two (2) Business Days following the expiration of the Bid Deadline. The Sellers shall provide the Purchaser and any Qualified Bidder that has previously submitted a Qualified Bid with a copy of any Qualified Bid received by the Sellers on the day that the determination is made that such bid is a Qualified Bid, but in no event later than the later of (x) 12:00 p.m. (noon) (ET) three (3) Business Days prior to the commencement of the Auction or (y) 5:00 p.m. (ET) five calendar days prior to the commencement of the Auction.

Aggregate Bids

The Sellers may aggregate separate bids from unaffiliated persons to create one "Qualified Bid" from one or more "Qualified Bidders"; provided that all bidders, including all Equity Holders of such bidder shall remain subject to the provisions of 11 U.S.C. § 363(n) regarding collusive bidding.

Evaluation of Competing Bids

A Qualified Bid will be valued based upon several factors including, without limitation, items such as the purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the Qualified Bidder, including any assumed pension liabilities) provided by such bid, the claims likely to be created by such bid in relation to other bids, the counterparties to such Transactions, the proposed revisions to the relevant Transaction documents, other factors affecting the speed, certainty and value of the Transactions (including any regulatory approvals required to close the Transactions), the assets included or excluded from the bid, the estimated number of in-scope employees of the Sellers (apportioned by

jurisdiction), if any, to be offered post-closing employment by the Qualified Bidder and any proposed measures associated with their continued employment, the transition services required from the Sellers post-closing, if any, and any related restructuring costs, and the likelihood and timing of consummating such transactions, each as determined by the Sellers, in consultation with their advisors, the Creditors' Committee, the Bondholder Group and the Monitor.

Break-Up Fee

Recognizing the value and benefits that the Purchaser has provided to the U.S. Debtors and the other Sellers by entering into the Purchase Agreement, as well as the Purchaser's expenditure of time, energy and resources, the Sellers have agreed that they will, under the circumstances set forth in the Purchase Agreement and as set forth in the Bidding Procedures Order and the Canadian Sales Process Order pay to the Purchaser a break-up fee equal to $25 million (the "Break-Up Fee") and an Expense Reimbursement (as defined in the Purchase Agreement and to the extent provided in the Purchase Agreement).

Auction

If the Sellers receive one or more Qualified Bids in addition to the Purchase Agreement, the Sellers will conduct an auction (the "Auction") of the Assets, which shall be transcribed or recorded on video to the extent required under Delaware local practice, at **9:00 a.m. (ET) on June 20, 2011**, at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006 or such other location as shall be timely communicated to all entities entitled to attend the Auction, which Auction may be cancelled or adjourned, subject to the terms of the Purchase Agreement.  The Auction shall run in accordance with the following procedures:

(a)    Only the Sellers, the Purchaser, the Creditors' Committee, the Bondholder Group, the Monitor, the Administrators, the French Liquidator (and the advisors to each of the foregoing), any creditor of the U.S. Debtors or the Canadian Debtors and any other Qualified Bidder that has timely submitted a Qualified Bid (and the advisors to such Qualified Bidder), shall attend the Auction in person, and only the Purchaser and such other Qualified Bidders will be entitled to make any bids at the Auction.

(b)    Each Qualified Bidder shall be required to confirm that it has not engaged, and will not engage, in any collusion with respect to the bidding or the Transactions, and if such Qualified Bidder is an entity formed for the purpose of acquiring the Assets (or any portion thereof), each of the Equity Holders of such Qualified Bidder shall be required to confirm that it has not engaged, and will not engage, in any collusion with respect to the bidding or the Transactions, such confirmation, in each case, in form and substance satisfactory to the Sellers in their joint and sole discretion.

(c) At least one (1) calendar day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Sellers whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the date of the selection of the Successful Bidder at the conclusion of the Auction and (ii) if such Qualified Bidder

11

(other than the Purchaser) is selected as an Alternate Bidder (as defined below), the Alternate Bid Expiration Date.  By 12:00 p.m. (noon) (ET) at least one (1) Business Day prior to the Auction, the Sellers will provide copies of the Qualified Bid or combination of Qualified Bids which the Sellers believe, in their reasonable business judgment, after consultation with the Creditors' Committee, the Bondholder Group and the Monitor, is the highest or otherwise best offer (the "Starting Bid") to the Purchaser and all other Qualified Bidders which have informed the Sellers of their intent to participate in the Auction.

(d)     All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that (i) the true identity of each Qualified Bidder at the Auction (as described in (f) of the Qualified Bid section above) will be fully disclosed to all other Qualified Bidders at the Auction, (ii) if such Qualified Bidder is an entity formed for the purpose of acquiring the Assets (or any portion thereof), the true identity of each of the Equity Holders of such Qualified Bidder will be fully disclosed to all Qualified Bidders at the Auction and (iii) all material terms of each Subsequent Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attend the Auction in person.

(e)     The Sellers, after consultation with their counsel and financial advisors, the Creditors' Committee, the Bondholder Group and the Monitor, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court, the Canadian Court or any other applicable court entered in connection herewith, and (ii) disclosed to each Qualified Bidder at the Auction.

(f)     Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Sellers determine, in consultation with their advisors, the Creditors' Committee, the Bondholder Group and the Monitor that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below).  Each incremental bid at the Auction shall provide net value to the estate of at least U.S. $5,000,000 over the Starting Bid or the Leading Bid, as the case may be, provided that the Sellers, in consultation with the Creditors' Committee, the Bondholder Group and the Monitor, shall retain the right to modify the increment requirements at the Auction.  After the first round of bidding and between each subsequent round of bidding, the Sellers shall announce the bid or combination of bids (and the value of such bid(s)) that it believes to be the highest or otherwise best offer (the "Leading Bid").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.  Except as specifically set forth herein, for the

12

purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Purchaser), the Sellers will, at each round of bidding, give effect to the Break-Up Fee and Expense Reimbursement that may be payable to the Purchaser under the Purchase Agreement as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Sellers.

Selection Of Successful Bid

Prior to the conclusion of the Auction, the Sellers, in consultation with their advisors, the Creditors' Committee, the Bondholder Group, the Monitor and the Administrators will (a) review each Qualified Bid and evaluate each Qualified Bid as set forth in the section titled "Evaluation of Competing Bids" herein, (b) identify the highest or otherwise best offer or offers for the Assets received at the Auction (one or more such Qualified Bids, collectively the "Successful Bid" and the Qualified Bidder(s) making such Qualified Bid, collectively, the "Successful Bidder") and (c) communicate to the Purchaser and the other Qualified Bidders the identity of the Successful Bidder, the Alternate Bidder (as defined below), if any, and the details of the Successful Bid and Alternate Bid (as defined below), if any. The determination of the Successful Bid and Alternate Bid by the Sellers, after consultation with the Creditors' Committee, the Bondholder Group the Monitor and the Administrators, at the conclusion of the Auction, shall be final subject to approval by the Bankruptcy Court and the Canadian Court.

The Sellers will sell the Assets to the Successful Bidder pursuant to the terms of the Successful Bid (or, under certain circumstances described herein, the Alternate Bidder) upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing, approval by the Canadian Court and receipt of any required approvals of any other applicable court(s).

For the avoidance of doubt, the Sellers shall not consider or support any bid (whether or not such bid is a Qualified Bid) for any of the Assets received after the close of the Auction.

Sale Hearing

The sale hearing to authorize certain of the Sellers to enter into agreements with respect to the Successful Bid (the "Sale Hearing") will be held, in respect of those Sellers that are U.S. Debtors, before the Honorable Judge Kevin Gross (or any substitute therefor) in the United States Bankruptcy Court for the District of Delaware, located in Wilmington, Delaware, on a date to be scheduled by the court and currently proposed as **June 30, 2011 at 10:00 a.m. (ET)**, in respect of those Sellers that are Canadian Debtors, before the Honourable Mr. Justice Geoffrey B. Morawetz (or any substitute therefor) in the Ontario Superior Court of Justice, in Toronto, Ontario and in any other applicable court(s) whose approval is required, as soon as practicable following the date of the Sale Hearing or with respect to the Canadian Court, in a joint hearing with the Bankruptcy Court at the Sale Hearing. The Sale Hearing and any hearings of any other applicable court(s) to approve the entering into agreements with respect to the Successful Bid, may be adjourned or rescheduled by the Sellers without further notice by an announcement of the adjourned date at the Sale Hearing or, in the case of an adjournment of a relevant hearing of any other applicable court, at such hearing. If the Sellers receive one or more additional Qualified Bid(s), then, at the Sale Hearing and at any other hearings of any other applicable

13

court(s) to approve the entering into agreements with respect to the Successful Bid, the Sellers will seek approval of the Successful Bid, and, at the Sellers' election, the next highest or best Qualified Bid (the "Alternate Bid" and, such Qualified Bidder, the "Alternate Bidder", it being understood that in no event shall the Purchase Agreement be deemed an Alternate Bid or the Purchaser deemed an Alternate Bidder without its consent, in its sole discretion).  The Sellers' presentation to the Bankruptcy Court, the Canadian Court and any other applicable court(s) whose approval the Sellers reasonably determine in good faith is legally required or appropriate, of the Successful Bid, and, if applicable, the Alternate Bid will not constitute the Sellers' acceptance of either of such bids, which acceptance will only occur upon the latest approval of such bids to be delivered by the Bankruptcy Court at the Sale Hearing, the Canadian Court and any other applicable court(s) whose approval the Sellers reasonably determine in good faith is legally required or appropriate.  Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Sellers will be authorized, but not directed, to effectuate a Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court, the Canadian Court or any other court.  The Alternate Bid shall remain open until the earlier of (a) July 12, 2011, unless, prior to such date, the North American Sellers and NNUK have delivered written notice to the Alternate Bidder that the transaction contemplated by the Successful Bidder will not occur and the North American Sellers intend to consummate the transaction contemplated by the Alternate Bid, in which case the terms of the Alternate Bid shall be enforceable and shall govern or (b) the consummation of the Sale to the Successful Bidder (the "Alternate Bid Expiration Date").  All the Qualified Bids other than the Successful Bid and the Alternate Bid shall be deemed rejected by the Sellers on and as of the date of approval of the Successful Bid and the Alternate Bid by the Bankruptcy Court, the Canadian Court and any other applicable court(s) whose approval is required, as indicated above.

## Good Faith Deposits

Other than with respect to the Purchaser, whose Good Faith Deposit shall be treated in accordance with the terms and conditions of the Purchase Agreement, the Good Faith Deposit of any Alternate Bidder shall be retained by the Sellers until the Alternate Bid Expiration Date and returned to the Alternate Bidder within five (5) Business Days thereafter or, if the Alternate Bid becomes the Successful Bid, shall be applied to the purchase price to be paid by the Alternate Bidder in accordance with the terms of the Alternate Bid.  The Good Faith Deposits of Qualified Bidders not selected as either the Successful Bidder or Alternate Bidder shall be returned to such Qualified Bidders within five (5) Business Days of the date of the selection of the Successful Bidder and the Alternate Bidder.  The Good Faith Deposit of the Successful Bidder will be dealt with in accordance with the terms of the Successful Bid.

## Reservation Of Rights

The Sellers, after consultation with their advisors, the Creditors' Committee, the Bondholder Group and the Monitor, and their respective advisors, (a) after each round of bidding at the Auction may determine which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof, (b) may reject, at any time, any bid (other than the Purchaser's initial bid) that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the

14

Bankruptcy Code, the Bidding Procedures, any orders of the Canadian Court or any other orders applicable to one or more Sellers, or the terms and conditions of the Sale, (iii) contrary to the best interests of the Sellers, their estates, and stakeholders as determined by the Sellers in consultation with the Creditors' Committee, the Bondholder Group and the Monitor or (iv) contrary to the statutory duties or legal obligations of the Administrators in relation to the exercise of their duties or functions as administrators of certain EMEA Sellers, and (c) except as otherwise specifically set forth herein, may modify the Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Assets.

Notwithstanding any of the foregoing, or anything else contained herein, the Sellers may not, without the prior written consent of the Creditors' Committee, the Bondholder Group, the Administrators and the Monitor, which consent may not be unreasonably withheld, (i) extend the Bid Deadline for more than five (5) Business Days beyond June 13, 2011, (ii) adjourn the Auction for more than three (3) Business Days, or (iii) subject to the availability of the Bankruptcy Court and the Canadian Court adjourn the Sale Hearing for more than three (3) Business Days if the Auction has concluded; provided that the Sellers shall give the Purchaser written notice within one (1) Business Day after any such action (it being understood that such notice shall include a description of the action taken).

Each of the foregoing actions shall be made by the Sellers in consultation with the Creditors' Committee, the Bondholder Group and the Monitor, and their respective advisors. For the purposes of these Bidding Procedures and all matters relating to them, the Administrators are acting only as agents for and on behalf of the EMEA Sellers that are controlled by the Administrators pursuant to the UK Proceedings and without personal liability and the French Liquidator is acting only as agent for and on behalf of NNSA without personal liability. Notwithstanding the foregoing, the Sellers may not, without the prior written consent of the Purchaser, impair or modify the Purchaser's rights and obligations hereunder or under the Purchase Agreement, including Purchaser's rights with respect to the timing of the Auction and the Sale Hearing, or the Purchaser's right to credit the Break-Up Fee and Expense Reimbursement as part of any subsequent bids.