# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTEL NETWORKS, INC., *et al.*, | : Case No. 09-10138 (KG) |
| | : |
| Debtors. | : |
| | : |
| | : |
| | : |

**CERTIFICATION OF JOHN L. WOOD IN SUPPORT OF CREDITOR'S OPPOSITION
TO DEBTOR'S MOTION FOR A PROTECTIVE ORDER**

I, John L. Wood do hereby certify as follows:

1.       I am an associate at the firm of Egerton, McAfee, Armistead & Davis, P.C., whose office is at 900 S. Gay St., Knoxville, Tennessee 37922.  I am an attorney at law admitted to practice before the courts of the State of Tennessee and the United States District for the Eastern District of Tennessee.  I submit this certification in support of Creditor's Opposition to Debtors' Motion for a Protective Order.

2.       Attached as Exhibit A is a true and correct copy of the License Agreement between Nortel and SNMPRI dated December 23, 1999.

3.       Attached as Exhibit B is a true and correct copy of an excerpted portion of the transcript of the September 30, 2010 hearing on the Debtors' Motion for Order (I)(A) Authorizing Debtors Entry Into the Stalking Horse Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures and Bid Protections, (C) Approving the Notice Procedures and the Assumptions and Assignment Procedures, (D) Approving a Side Agreement, (E) Authorizing the Filing of Certain Documents Under Seal and (F) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets of Debtors Multi-

Service Switch (formerly Known as Passport) Business Free and Clear of All Liens, Claims and Encumbrances and (B) the Assumption and Assignment of Certain Executory Contracts.

4.      Attached as Exhibit C is a true and correct copy of an email from John L. Wood to Salvatore Bianca, *et al.* dated December 1, 2010.

5.      Attached as Exhibit D is a true and correct copy of an email from John L. Wood to Jane Kim, Salvatore Bianca and Mark Ralston dated April 27, 2011.

6.      Attached as Exhibit E is a true and correct copy of the spreadsheet sent from Paul Moran to John L. Wood on March 29, 2011 describing the licenses for SNMPRI software needed by GENBAND, Inc.

7.      Attached as Exhibit F is a true and correct copy of the Accession Agreement between Nortel, SNMPRI and Avaya Inc. dated March 3, 2010.

8.      Attached as Exhibit G is a true and correct copy of Schedule 1A dated June 20, 2000 to the License Agreement between Nortel and SNMPRI dated December 23, 1999.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 5, 2011.

_____
John L. Wood

## EXHIBIT A

License Agreement between Nortel and SNMPRI dated December 23, 1999

**This document may be confidential and will be filed under seal.**

# **EXHIBIT B**

Excerpt of Passport Sale Hearing

```
                   IN THE UNITED STATES BANKRUPTCY COURT
                      FOR THE DISTRICT OF DELAWARE



                                    )
IN RE:                              )  Chapter 11
                                    )
NORTEL NETWORKS INC., et al., )  Case No. 09-10138 (KG)
                                    )
                                    )  Courtroom 3
                                    )  824 Market Street
_____Debtors._____ )  Wilmington, Delaware


                                   September 30, 2010
                                   11:10 a.m.



                        TRANSCRIPT OF PROCEEDINGS
                   BEFORE THE HONORABLE KEVIN GROSS
                    UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:                   Morris Nichols Arsht & Tunnell
                               BY:  DEREK C. ABBOTT, ESQ.
                               BY:  ANN C. CORDO, ESQ.
                               1201 North Market Street
                               18th Floor
                               P.O. Box 1347
                               Wilmington, DE 19899-1347
                               (302) 658-9200


                               Cleary Gottlieb Steen & Hamilton
                               BY:  JAMES L. BROMLEY, ESQ.
                               BY: MEGAN FLEMING-DELACRUZ, ESQ.
                               BY:  SALVATORE F. BIANCA, ESQ.
                               One Liberty Plaza
                               New York, NY 10006
                               (212) 225-2000

ECRO:                          STEPHEN GRANT

Transcription Service:         DIAZ DATA SERVICES
                               331 Schuylkill Street
                               Harrisburg, Pennsylvania 17110
                               (717) 233-6664
                               www.diazdata.com



Proceedings recorded by electronic sound recording; transcript
produced by transcription service
```

APPEARANCES:
(Continued)

For The Official Committee        Richards Layton & Finger
Of Unsecured Creditors:           BY:   CHRISTOPHER M. SAMIS, ESQ.
                                  One Rodney Square
                                  920 North King Street
                                  Wilmington, DE 19801
                                  (302) 651-7700


                                  Akin Gump Strauss Hauer & Feld
                                  BY:   BRAD M. KAHN, ESQ.
                                  One Bryant Park
                                  New York, NY 10036
                                  (212) 872-1000

For U.S. Trustee:                 Office of the U.S. Trustee
                                  BY:   PATRICK TINKER, ESQ.
                                  844 King Street, Suite 2207
                                  Lockbox 35
                                  Wilmington, DE 19801
                                  (302) 573-6491

For SNMP Research                 Ciardi Ciardi & Astin
International, Inc.:               BY: CARL NEFF, ESQ.
                                  901 North Market Street
                                  Suite 700
                                  Wilmington, DE 19801-3098
                                  (302) 472-9039

For UK Joint Administrators:      Young Conaway Stargatt & Taylor
                                  BY:   MARIS J. FINNEGAN, ESQ.
                                  The Brandywine Building
                                  1000 West Street, 17th Floor
                                  P.O. Box 391
                                  Wilmington, DE 19801
                                  (302) 571-6600

For Ernst & Young, Monitor:       Buchanan Ingersoll & Rooney
                                  BY:   MARY CALOWAY, ESQ.
                                  The Brandywine Building
                                  1000 West Street Suite 1410
                                  Wilmington, DE 19801-1054
                                  (302) 552-4200


                                  Allen & Overy LLP
                                  BY:   KEN COLEMAN, ESQ.
                                  1221 Avenue of the Americas
                                  New York, NY 10020
                                  (212) 610-6434

APPEARANCES:
(Continued)

For Ericsson:                    Paul, Weiss, Rifkind, Wharton &
                                 Garrison LLP
                                 BY:  DIANE MEYERS, ESQ.
                                 1285 Avenue of the Americas
                                 New York, NY 10019-6064
                                 (212) 373-3000

For Quest Communication          Reed Smith LLP
Company LLC:                     BY:  J. CORY FALGOWSKI, ESQ.
                                 1201 Market Street
                                 Suite 1500
                                 Wilmington, DE 19801
                                 (302) 778-7500

For OSS Nokalva:                 Polsinelli Shughart PC
                                 BY:  SHANTI M. KATONA, ESQ.
                                 222 Delaware Avenue
                                 Suite 1101
                                 Wilmington, DE 19801
                                 (302) 252-0920

For Lead Plaintiff in            Lowenstein Sandler PC
Securities Litigation:           BY:  IRA M. LEVEE, ESQ.
                                 65 Livingston Avenue
                                 Roseland, NJ 07068
                                 (973) 597-2500

For Coca Cola:                   Potter Anderson Corroon LLP
                                 BY:  R. STEPHEN MCNEILL, ESQ.
                                 Hercules Plaza
                                 1313 North Market Street
                                 6th Floor
                                 Wilmington, DE 19801
                                 (302) 984-6000

For Jefferies & Company:         Cross & Simon LLC
                                 BY: KEVIN S. MANN, ESQ.
                                 913 North Market Street
                                 11th Floor
                                 Wilmington, DE 19801
                                 (302) 777-4200

For Motorola, Inc.:              Sullivan Hazeltine Allinson LLC
                                 BY:  ELIHU ALLINSON, III, ESQ.
                                 4 East 8th Street
                                 Suite 400
                                 Wilmington, DE 19801
                                 (302) 428-8191

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For Hondo Sen: | Cetus Capital<br>BY:  HONDO SEN<br>(203) 552-3528 |
| For Tricadia Capital: | BY:  STEPHEN GRISANTI<br>(602) 769-2334 |
| For John Ray: | Avidity Partners/Trustee<br>BY:  JOHN RAY<br>(630) 613-7300 |
| For The Official Committee<br>Of Unsecured Creditors: | Akin Gump Strauss Hauer & Feld<br>BY:  DAVID BOTTER, ESQ.<br>One Bryant Park<br>New York, NY 10036<br>(212) 872-1055 |
| | Jefferies & Company<br>BY:  PATRICK MORROW, ESQ.<br>(212) 284-2374 |
| For Palisades Capital<br>Management: | BY:  BRADLEY D. BELT<br>(202) 349-1414 |
| For AT&T: | Fulbright & Jaworski<br>BY:  MARK C. HAUT, ESQ.<br>BY:  DAVID ROSENZWEIG, ESQ.<br>(212) 318-3102 |
| For Fraser Milner &<br>Casgrain | BY:  RYAN JACOBS, ESQ.<br>BY:  MICHAEL WUNDER, ESQ.<br>(416) 863-4715 |
| For the Debtor: | True Partners Consulting<br>BY:  STANLEY W. JOZEFIAK<br>(312) 235-3306 |
| For Lazard Freres &<br>Company: | BY:  COLIN H. KENNAN<br>(212) 632-6197 |
| For Verizon Communications: | Arnall Golden & Gregory LLP<br>BY:  DARRYL LADDIN, ESQ.<br>(404) 873-8120 |
| For Ernst & Young: | Foley & Lardner LLP<br>BY:  JOANNE LEE, ESQ.<br>(312) 832-4557 |

TELEPHONIC APPEARANCES:
(Continued)

| | |
|---|---|
| For SNMP Research: | Ciardi Ciardi & Astin<br>BY:  MARK RALSTON, ESQ.<br>(214) 295-6416 |
| For Archview Investment<br>Group: | BY:  AARON ROSEN<br>(212) 728-2528 |

CANADIAN APPEARANCES:

| | |
|---|---|
| For the Debtor: | BY:  JENNIFER STAM, ESQ.<br>(416) 216-2327 |
| For Ernst & Young: | BY:  JOE PASQUARIELLO, ESQ.<br>BY:  CHRIS ARMSTRONG, ESQ.<br>(416) 979-2211 |
| For Noteholders: | BY:  GAVIN FINLAYSON, ESQ.<br>(416) 777-5762 |
| For The Official Committee<br>of Unsecured Creditors: | BY:  ALEX MACFARLANE, ESQ.<br>(416) 863-4382 |
| For Nortel Networks UK | BY:  ROBIN B. SCHWILL<br>(416) 863-5502 |
| For Former Employees: | BY:  ANDREA MCKINNON, ESQ.<br>(416) 595-2150 |

1  point to our issues.  Now, first off, we appreciate the 365

2  protection that has been afforded to Verizon and other parties

3  and we certainly want to be part of that.  That has been fairly

4  standard in prior sales.

5       Second, the dollar amount, Your Honor, is subject to

6  dispute.  We believe -- and I think as the Court recalls, I

7  appeared before Your Honor in person some weeks ago when the

8  debtor objected to our proof of claim and indicated that we got

9  evidence -- we think very strong evidence -- that the debtor

10  has been using SNMP intellectual property outside the bounds of

11  the licenses between the parties.  So the dollar amount -- we

12  don't know what the dollar amount is at this point.

13       As the Court recalls, Juliet Drake of Cleary

14  Gottlieb appeared and we've had further communications with

15  debtors' counsel regarding performing an audit.  And it's not

16  an audit of licenses.  It's an audit of code retained in the

17  repository of the software maintained by the debtors.  I don't

18  want to get too far into it because I'm a bankruptcy lawyer,

19  but we have had communications, we've had a conference call

20  with counsel and tech specialists from both sides, and I'm

21  pleased to say that I think the debtor is cooperating.  The

22  process is taking a bit longer than we like, but the audit is

23  not of the licenses.  It's of what -- it's the stuff that

24  Nortel is seeking to transfer and we have evidence, and I've

25  provided to Ms. Drake, the connection with GENBAND.  And we

1  have reason to believe that the same issues have arisen in

2  these other transactions.

3          The long and short of it is, in addition to the 365

4  protection that we want, we would like simply the order to

5  state that the debtor will not transfer SNMP intellectual

6  property, which consists of software code, to Ericsson.

7  Obviously Ericsson and SNMP come to an agreement, then either

8  SNMP or the debtors can transfer essentially SNMP's property to

9  Ericsson at that time or if there's an assumption and

10  assignment by order of this Court; same thing.  But until such

11  time as either of those two events occur, the debtor should not

12  be transferring what it doesn't own.  And we think that it's a

13  fairly simple request and a fairly reasonable one.  And in

14  fact, in prior orders regarding these types of sales, the

15  debtor has agreed to such a provision.  So it hasn't been

16  outside the bounds of what the parties have agreed to in the

17  past.

18          The second issue that we have raised is the need to

19  conduct this software audit.  It's not a difficult process and,

20  as I described earlier, the debtors and SNMP have been working

21  together on a voluntary basis to have this accomplished.  Given

22  the fact that this transaction is not closing for -- I think --

23  approximately eight weeks, this should not be an issue that we

24  just have the debtors do what essentially they appear to be

25  doing or have agreed to do already and do so in the near term.

1          So I don't think what we're asking for is

2   unreasonable.  I think it's especially reasonable in the light

3   of the fact that [indiscernible] prior sales and that we

4   prevent it from happening in this particular sale.  I think

5   it's in the best interest of the estate, in addition to that,

6   that the debtor not engage in the unauthorized transfer of

7   intellectual property.

8          THE COURT:  Just so I'm clear.  You've indicated

9   that you want the debtor to do what they're doing; is that

10  correct?  Mr. Ralston?  Are you still with us, Mr. Ralston?

11         MR. RALSTON:  Your Honor, I'm here.  Can you hear

12  me?

13         THE COURT:  Oh, yes.  Can you hear me?

14         MR. RALSTON:  Yes, I can hear you.

15         THE COURT:  Okay.  I just want to make -- be clear

16  that what you've indicated is you're asking the debtor to do

17  what they have been doing?

18         MR. RALSTON:  Well, we are at the preliminary stages

19  of having them do what they've been doing.  We would just like

20  to get it done, Your Honor, and if there's an issue, obviously

21  be able to come back to the Court and have the Court resolve

22  the issue.  We're asking them to get it done, essentially, Your

23  Honor, and I'm indicating that it's obviously not a burdensome

24  issue because the debtor essentially has -- is negotiating with

25  us regarding what needs to be done.

1   They shouldn't do it -- don't do it.

2          (Laughter)

3          THE COURT:  Mr. Ralston, anything further, briefly

4   if you will?

5          MR. RALSTON:  And again, I -- this may be a small

6   matter for the debtor, it's not a small matter for my client.

7   But that said, this is how I analogize it, Your Honor.  If I

8   have Microsoft Word, whether it's under a license or whether

9   it's not under a license on my computer, and I'm not authorized

10  by law to convey that package of software to another person,

11  and I sell my computer without taking the software off, then

12  that's -- I'm essentially transferring what is not rightfully

13  mine to transfer.  It may be licensed to me, it may not be, I

14  may be using without a license and -- but I shouldn't give it

15  to another person unless I'm permitted to do so, and that

16  essentially is all we're asking.

17         As for the software audit, I think it's a distinct

18  issue that's been -- that's arisen in our minds because of the

19  past discovery of transfer of our intellectual property.  That

20  said, I understand that this Court believes that it's not

21  appropriate to order debtors to conduct that audit and we're

22  certainly able to request that the Court compel it, if we can't

23  get it voluntarily to the debtors.

24         THE COURT:  That's right.

25         MR. RALSTON:  But as to -- I think it's important

1  revised as described in the hearing on the way over.  It's not

2  here quite yet.  If Your Honor would allow, perhaps we could

3  adjourn and just knock on --

4          THE COURT:  That's fine.

5          MR. ABBOTT:  -- Your Honor's chambers and let your

6  staff know that -- when it's ready?

7          THE COURT:  Absolutely.  That will be -- that is

8  perfectly fine and no certification or anything of that nature

9  necessary.

10          MR. ABBOTT:  Terrific, Your Honor.  Thank you and

11  that concludes the matters for today.

12          THE COURT:  Very well.  Thank you.  It was good to

13  see you all.  I hope it's dry traveling home and we will stand

14  in recess.

15          MR. ABBOTT:  Thank you very much, Your Honor.

16      (Whereupon at 1:07 p.m., the hearing was adjourned)

17                          CERTIFICATION

18          I  certify  that  the  foregoing  is  a  correct

19  transcript  from  the  electronic  sound  recording  of  the

20  proceedings in the above-entitled matter.

21

22  _____          October 1, 2010

23  Stephanie McMeel

24  AAERT Cert. No. 452

25  Certified Court Transcriptionist

## **EXHIBIT C**

Email from John L. Wood to Salvatore Bianca, et al. dated December 1, 2010 ("Bianca Email")

---

## John L. Wood

| | |
|---|---|
| **From:** | John L. Wood |
| **Sent:** | Wednesday, December 22, 2010 5:54 PM |
| **To:** | 'Salvatore Bianca' |
| **Cc:** | Mark H. Ralston |
| **Subject:** | Our call today |

Sal,

First, thank you again for completing the passport audit and reporting that SNMP's BRASS® and EMANATE® software is present in the software that Nortel intends to transfer to Ericsson.  This will help us get the correct license in place with Ericsson.

As you know, today was the first time that we heard that EMANATE® was going to be transferred by Nortel to Ericsson.  I was surprised to find out on our call that Nortel represented to Ericsson in the purchase agreement that the EMANATE® software is present in the software that will be transferred upon completion of the sale.  Nortel chose not to share this information with SNMP until today.  Furthermore, you indicated on the call today that Nortel will not share the representations made to the other purchasers of Nortel assets regarding SNMP software with SNMP.  Nortel's position on this matter is counterproductive and does not represent the spirit of cooperation and openness that Nortel has communicated to SNMP in the past.  I urge you to reconsider your position and share all the information you have regarding SNMP software that was transferred to or made available to a previous or future buyer of any Nortel assets.  Specifically, we would like to see the schedules to the purchase agreement with all buyers that mention SNMP software in addition to any other information you have.

John L. Wood
Egerton, McAfee, Armistead & Davis, P.C.
1400 Riverview Tower
900 S. Gay Street
Knoxville, Tennessee 37902
Direct (865) 292-2503
Office (865) 546-0500
Fax (865) 525-5293

**CONFIDENTIALITY NOTICE**:  This e-mail transmission and any document, files or previous e-mail messages attached to it, are confidential and are protected by the attorney-client privilege and/or work product doctrine. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of any of the information contained in, or attached to this e-mail transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please notify us immediately by forwarding this message to the original sender or by telephone at (865)546-0500 and then delete this message and its attachments from your computer.
**IRS Circular 230 Disclosure:**  New IRS rules restrict written federal tax advice from lawyers and accountants. We include the following statement in all outbound e-mails because even inadvertent violations may be penalized. To ensure compliance with these requirements, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

## **EXHIBIT D**

Email from John L. Wood to Jane Kim, Salvatore Bianca and Mark Ralston dated April 27, 2011.

**John L. Wood**

| | |
|---|---|
| **From:** | John L. Wood |
| **Sent:** | Wednesday, April 27, 2011 1:20 PM |
| **To:** | 'Jane Kim' |
| **Cc:** | 'Salvatore Bianca'; 'Mark H. Ralston' |
| **Subject:** | Discovery issues |

Jane,

In our meet and confer call on March 30, 2011 you asked if SNMP Research International, Inc. (SNMP) would be willing to drop Interrogatories number 3 and 5, and requests for production 3 and 4.  I responded that SNMP was not willing to drop these requests but if Nortel's concern had to do with the burdensomeness of the requests then SNMP would be willing to negotiate the requests so that they are not burdensome to Nortel.  You stated that you were not in a position to discuss modifying the requests right now.  You suggested that we review Nortel's response and then discuss modifying SNMP requests.

In our call on April 21, 2011 I repeated SNMP's offer to negotiate any of the requests to reduce the burdensomeness on Nortel.  Regarding Request No. 4, I stated that SNMP probably did not need access to all of the Nortel Software shipped to customers to reliably determine if SNMP Software was shipped to customers of Nortel without a license, but without Nortel's help SNMP is not able to determine what constitutes reasonable access.  Because of SNMP's lack of visibility into Nortel's software infrastructure SNMP cannot determine the most reasonable manner to search the Nortel Software.  You agreed to confer with Nortel on whether we could have discussions on making the Nortel Software available in an unburdensome manner.

In our call on April 27, 2011 you stated that Nortel was not willing to discuss SNMP searching the Nortel Software at all, because of the complexity of the clear case repository which contains the Nortel Software and confidentiality concerns regarding the Nortel Software.  We responded that SNMP is willing to enter into an agreement or other arrangement to protect the confidentiality of the Nortel Software.  You stated that Nortel will object to any search of the Nortel Software.

SNMP reiterates that it remains open to entertaining reasonable proposals regarding reducing any burden to Nortel with respect to the pending discovery, including having SNMP personnel (under Nortel supervision) conduct the requested search of Nortel software for SNMP intellectual property.  Furthermore, regarding any confidentiality issue, SNMP remains willing to enter into any reasonable confidentiality agreement and to adhere to other reasonable measures that Nortel may request with respect to Nortel software systems.

John L. Wood
Egerton, McAfee, Armistead & Davis, P.C.
1400 Riverview Tower
900 S. Gay Street
Knoxville, Tennessee 37902
Direct (865) 292-2503
Office (865) 546-0500
Fax (865) 525-5293

**CONFIDENTIALITY NOTICE**: This e-mail transmission and any document, files or previous e-mail messages attached to it, are confidential and are protected by the attorney-client privilege and/or work product doctrine. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of any of the information contained in, or attached to this e-mail transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please notify us immediately by forwarding this message to the original sender or by telephone at (865)546-0500 and then delete this message and its attachments from your computer.
**IRS Circular 230 Disclosure**:  New IRS rules restrict written federal tax advice from lawyers and accountants. We include the following statement in all outbound e-mails because even inadvertent violations may be penalized. To ensure compliance with these requirements, we inform you that

any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

## **EXHIBIT E**

Spreadsheet from Paul Moran

| GENBAND Product | CICM/CICM-EM | Vrtx GWC |
|---|---|---|
| SNMP Use | Each CICM card has one Master SNMP agent and SNMP messages are handled through Windows registry. No sub-agents are used in CICM systems. Every CICM card and CICM-EM card have their own SNMP. CICM cards operate in active/inactive pairs. There can be multiple pairs of CICM cards but only one pair of CICM EM cards. | Every Vrtx GWC card can support one GWC application instance. Each GWC application instance uses one Master SNMP agent and 10 sub agents (V3S_ALM, V3S_CALLP, V3S_DPTPM, V3S_GCM, V3S_GMTCCTRL, V3S_MGMT, V3S_MTCA, V3S_QOSREP, V3S_SVCTYP, LMM (PBTask based subagent)<br><br>Vrtx GWC cards (and the pair of application instances) operate in active/inactive pairs that form a GWC application node. Software key codes control how many GWC application nodes (pair of instances) can be enabled. If the customer pays for 8 GWC application nodes, then only 8 can be placed in service. |
| Target H/W | NTR651HJ cards with 7147 series Intel Pentium M Processor<br><br>32 bit | NTR651DL card: PowerPC Freescale MC7457, 1GHz<br><br>NTR651EL card: PowerPC Freescale MC7448, 1GHz<br><br>32 bit |
| Target OS | CICM OS is Windows XPE SP2 and in the latest release it is upgraded to Windows XPE SP3<br><br>CICM-EM OS is Windows 2000 Server and in the latest design stream is planned to upgraded to Windows Server 2003. | Vrtx |

| Development Environment | CICM software is developed on PC running Windows OS that can operate Microsoft Visual Studio. | HP Linux platform with RHEL 4 and using MRI cross compiler |
|---|---|---|

| Linux GWC | MG9K |
|---|---|
| Every Linux GWC blade can support 15 GWC application instances.  Each GWC application instance uses one Master SNMP agent and 10 sub agents (V3S_ALM, V3S_CALLP, V3S_DPTPM, V3S_GCM, V3S_GMTCCTRL, V3S_MGMT, V3S_MTCA, V3S_QOSREP, V3S_SVCTYP, LMM (PBTask based subagent)<br><br>The GWC blades operate as active/active but the GWC application instances operate in active/inactive pairs where each a pair is a GWC application node.  Software key codes control how many GWC application nodes can be enabled.  If the customer pays for 8 GWC application nodes, then only 8 instances on each blade can be placed in service and the remaining 7 instances on each blade cannot be placed in service. | Three types of DCC cards can have SNMP stack. SGC is Gige card, SCO is the OC3 and SCI is the IMA card.<br><br>Each office can have only one pair of these types which are worked as active / inactive. |
| NTRY52HA blades with Dual Nehalem-EP 4 core CPUs @ 2.13GHz (Intel L5518)<br><br>32 bit | SCO -> NTNY45AA, NTNY45OA, SCI -> NTNY45BA, SCG -> NTNY45FA, NTNY45GA |
| Linux | vxWorks |

| HP Linux platforms with RHEL 4 and using Intel ICC BEC Compiler | Solaris 10 platform with C++ compiler |
|---|---|

## SP2000 USP

The SNMP stacks only runs on the
Real Time Controller of both the
SP2000 and Universal Signaling Point
(USP). The SP2000 and USP are
based on the same SW but running on
different HW platform. USP is VME
based, while SP2000 is ATCA based.

SNMP stack is used by the
USP/SP2000 RTC to send trap
information to the OSS.

**USP**
Each Universal Signaling Point has a pair of
Real Time Controller (RTC). The SNMP stack
only runs on this pair of RTC, and the pair of
RTC is using either one of the following 3
cards:
  - NTST11DB PP5, 256MB with PMC disk
  - NTST11DH RoHS version of NTST11DB
  - NTST11BA PP4 version
**SP2000**
Each SP2000 also has a pair of RTC where
the SNMP stack runs. The hardware for the
RTC is:
  - NTRY81AA Kontron AM41000 PowerPC
AMC.

Both USP and SP2000 use Windriver VxWorks

HPUX and Linux.

## **EXHIBIT F**

Accession Agreement between Nortel, SNMPRI and Avaya Inc. dated March 3, 2010.

---

**This document may be confidential and will be filed under seal.**

## **EXHIBIT G**

Schedule 1A to the License Agreement

**This document may be confidential and will be filed under seal.**