## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

*In re*

Nortel Networks Inc., *et al.*,[1]

                      Debtors.

-------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**RE: D.I.s 5256, 5367**

### ORDER (I) APPROVING NNI'S ENTRY INTO PURCHASE AND SALE AGREEMENT; (II) AUTHORIZING THE SALE OF NNI'S RICHARDSON CAMPUS FREE AND CLEAR OF ALL ENCUMBRANCES; (III) APPROVING NNI'S ENTRY INTO THE NORTEL LICENSE; (IV) APPROVING THE NOTICE PROCEDURES; AND (V) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL

Upon the motion dated April 15, 2011, (the "Motion"),[2] of Nortel Networks Inc. ("NNI" or the "Seller") and certain of its affiliated debtors, as debtors and debtors in possession in the above-captioned cases (the "Debtors"), for entry of an order (the "Order"), as more fully described in the Motion, (i) approving NNI's entry into the purchase and sale agreement dated as of April 15, 2011 between NNI and Pillar Commercial, LLC ("Pillar" or the "Purchaser") for the sale of the premises known as 2201 and 2221 Lakeside Boulevard, Richardson, Texas and related property as described therein (such agreement, the "Purchase and Sale Agreement", such premises and related property, as defined in the Purchase and Sale Agreement, the "Property")

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the Purchase and Sale Agreement (as defined herein).

pursuant to sections 105, 107 and 363 of the Bankruptcy Code, (ii) authorizing the sale of the Property free and clear of all encumbrances, (iii) approving NNI's entry into the license agreement between the Seller and the Purchaser for the license by the Purchaser to the Seller of certain areas of the Property as described therein (the "Nortel License"), (iv) approving Notice Procedures (as defined below), and (v) authorizing the Debtors to file certain documents under seal; and the Court having reviewed and considered the Motion; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Purchase and Sale Agreement and the transactions contemplated thereby (the "Transactions"), including the Nortel License; and after due deliberation thereon, and good cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.     The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b);

B.     Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2);

C.     The statutory predicates for the relief requested in the Motion are sections 105, 107 and 363 of the Bankruptcy Code, and Rules 6004, 9014 and 9018 of the Bankruptcy Rules, and Local Rules 6004-1 and 9018-1;

D.     Notice of the Motion has been provided to (i) counsel to the Purchaser; (ii) the Office of the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; (v) all taxing authorities or recording offices which have a reasonably known interest in the relief requested; (vi) all United States federal, state and local regulatory authorities with

---

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

jurisdiction over the Debtors; (vii) each of the entities that had received an invitation from the Seller to acquire the Property within the past eighteen months; (viii) the counterparties to the Leases (as defined in the Assignment and Assumption Agreement), (ix) all entities reasonably known by the Debtors to have asserted a lien against the Property; and (x) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002;

E.  Notice of the Sale has been published in The Wall Street Journal (Wednesday National Edition) and The Dallas Morning News;

F.  Based upon the affidavit of service filed with the Court: (a) notice of the Motion and the hearing to consider the Motion (the "Sale Hearing"), including NNI's entry into the Purchase and Sale Agreement and the proposed consummation of the Transactions contemplated thereby, including NNI's entry into the Nortel License and the Assignment and Assumption Agreement, was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is necessary; and (b) a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities;

G.  NNI's proposed sale notice, substantially in the form attached to the Motion as Exhibit E (the "Sale Notice") and NNI's proposed publication notice, substantially in the form attached to the Motion as Exhibit F (the "Publication Notice"), are each appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sale Hearing;

H.  No further or other notice beyond that described in the foregoing Paragraphs D, E, F and G is required in connection with the Transactions;

I.      The legal and factual bases set forth in the Motion and the record in these proceedings establish just cause for the relief requested therein, and such relief is in the best interests of the Debtors, their estates, their creditors and the parties in interest;

J.      The Property sought to be transferred and/or assigned by NNI to the Purchaser pursuant to the Purchase and Sale Agreement is property of NNI's estate and title thereto is vested in NNI's estate;

K.      The Seller marketed the Property for approximately eighteen months, has pursued two separate marketing campaigns and heavily negotiated a purchase agreement with respect to the Property on two separate occasions; the marketing process for the Property was adequate and reasonable under the circumstances and no further marketing process is necessary; and the Committee and the Bondholder Group do not object to a private sale approach;

L.      Subject to the entry of this Order, the Seller (i) has full power and authority to execute the Purchase and Sale Agreement, the Nortel License, the Assignment and Assumption Agreement and all other documents contemplated by the Purchase and Sale Agreement, (ii) has all of the power and authority necessary to consummate the Transactions, and (iii) has taken all company action necessary to authorize and approve the Transactions, the sale of the Property (the "Sale"), the assignment of the Leases and the consummation by NNI of the Transactions. No consents or approvals, other than those expressly provided for in the Purchase and Sale Agreement or this Order, are required for NNI to close the Sale and consummate the Transactions;

M.      The Purchase and Sale Agreement and the Transactions were negotiated and have been and are undertaken by NNI and the Purchaser at arm's length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m). As a result of

the foregoing, NNI and the Purchaser are entitled to the protections of section 363(m) of the Bankruptcy Code;

N.     The total consideration provided by the Purchaser for the Property is the highest or best offer received by NNI, and the consideration provided by the Purchaser constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Property;

O.     The Purchaser would not have entered into the Purchase and Sale Agreement and would not consummate the Transactions if the sale of the Property to the Purchaser was not free and clear of all liens, claims and interests pursuant to Bankruptcy Code section 363(f), or if the Purchaser would, or in the future could, be liable for any of such liens, claims and interests. A sale of the Property other than one free and clear of all Encumbrances (as defined herein) would yield substantially less value for NNI's estate, with less certainty, than the Transactions. Therefore, the Transactions contemplated by the Purchase and Sale Agreement are in the best interests of the Debtors, their estates and creditors, and all other parties in interest;

P.     NNI may sell the Property free and clear of all Encumbrances because, with respect to each creditor asserting an Encumbrance, including Graybar Electric Company, Inc., one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of Encumbrances who did not object or who withdrew their objections to the Transactions or the Motion are deemed to have consented to the Motion and Transactions pursuant to Bankruptcy Code § 363(f)(2). Those holders of Encumbrances who did object fall

within one or more of the other subsections of Bankruptcy Code section 363(f). Those Encumbrances sold free and clear of, including that Encumbrance asserted by Graybar Electric Company, Inc., if any, will attach to the sale proceeds in the same validity, extent and priority as existed with respect to the Property immediately prior to the Transactions, subject to any rights, claims and defenses of the Debtors and other parties in interest;

Q.    Neither the Debtors, NNI, nor the Purchaser engaged in any conduct that would cause or permit the Purchase and Sale Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code;

R.    The Purchaser is not holding itself out to the public as a continuation of the Debtors and is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between the Purchaser and any of the Debtors. Pursuant to the Purchase and Sale Agreement, the Purchaser is not purchasing all of NNI' assets. The conveyance of the Property pursuant to the Sale does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates. Pursuant to section 363 of the Bankruptcy Code, except for the Permitted Encumbrances or as otherwise provided in the Purchase and Sale Agreement, the Purchaser's acquisition of the Property shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing. The Purchaser's operations shall

6

not be deemed a continuation of the Debtors' business as a result of the acquisition of the Property. The Court finds that the Purchaser would not have acquired the Property but for the foregoing protections against potential claims based upon "successor liability" theories;

S.     Entry into the Purchase and Sale Agreement and consummation of the Transactions contemplated thereby constitute the exercise by NNI of sound business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest. The Court finds that NNI has articulated good and sufficient business reasons justifying the Sale of the Property to the Purchaser. Additionally, (i) the Purchase and Sale Agreement constitutes the highest or best offer for the Property; (ii) the Purchase and Sale Agreement and the closing thereon will present the best opportunity to realize the value of the Property and avoid further decline and devaluation of the Property; (iii) there is risk of deterioration of the value of the Property if the Sale is not consummated promptly; (iv) proceeding by private sale and not pursuant to a public auction is justified under the circumstances; and (v) the Purchase and Sale Agreement and the closing thereon will provide a greater recovery for NNI's creditors than would be provided by any other presently available alternative;

T.     NNI has demonstrated that it is an exercise of its sound business judgment to assign the Leases to the Purchaser in connection with the consummation of the Sale, and the assignment and sale of the Leases to the Purchaser is in the best interests of the Debtors, their estates, their creditors, and all parties in interest. The Leases being assigned to the Purchaser are an integral part of the assets being purchased by the Purchaser, and accordingly, such assignment and sale of the Leases is reasonable and enhances the value of NNI's estate;

U.     Upon the assignment and sale to the Purchaser, the Leases shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the

provisions of this Order, and shall be assigned and transferred to the Purchaser. Upon the Closing, (i) the counterparties to the Leases shall attorn to the Purchaser, (ii) the Debtors shall be relieved of all obligations and liabilities under the Leases accruing from and after the Closing, and (iii) the Purchaser shall be deemed to have assumed all of and succeeded to the entirety of the Debtors' obligations and liabilities under the Leases accruing from and after the Closing;

V.    The transfer of the Property to the Purchaser will be a legal, valid and effective transfer of the Property, and (except as otherwise provided in the Purchase and Sale Agreement) will vest the Purchaser with all of NNI's right, title and interest of, in and to the Property, pursuant to section 363 of the Bankruptcy Code, free and clear of all Encumbrances, including any security interest, pledge, mortgage, lien (as defined in section 101(37) of the Bankruptcy Code), including liens imposed by Law, such as but not limited to, mechanics' liens, charge, hypothecation, option to purchase or lease or otherwise acquire any interest, conditional sales agreement, adverse claim of ownership or use, title defect, easement, right of first refusal, encumbrance of any other kind, right of way or claim (as defined in section 101(5) of the Bankruptcy Code);

W.    The Sale does not constitute a *sub rosa* chapter 11 plan;

X.    Time is of the essence in consummating the Sale. In order to maximize the value of NNI's assets, it is essential that the sale of the Property occur within the time constraints set forth in the Purchase and Sale Agreement. Accordingly, there is a cause to lift the stay contemplated by Bankruptcy Rule 6004(h);

Y.    The Schedules to the Purchase and Sale Agreement contain sensitive commercial information, and the service lists disclosing persons invited by the Seller to acquire the Property contain proprietary information maintained by CBRE which would be damaging to

CBRE if it were to be disclosed to CBRE's competitors. Filing the Schedules to the Purchase and Sale Agreement and such service lists under seal is in the best interests of the Debtors, their estates, creditors and other parties in interest;

Z. The Transactions contemplated by the Purchase and Sale Agreement are in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest; and it is therefore:

ORDERED ADJUDGED AND DECREED THAT:

1. The relief requested in the Motion is GRANTED.

2. All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, settled or otherwise dealt with as expressly provided herein or on the record at the Sale Hearing, are hereby overruled on the merits, with prejudice.

3. Pursuant to Bankruptcy Code sections 105 and 363 and subject to the satisfaction (or waiver, if permitted under the Purchase and Sale Agreement) of each condition under the Purchase and Sale Agreement, (a) NNI's entry into the Purchase and Sale Agreement and all ancillary agreements contemplated thereby, including the Nortel License and the Assignment and Assumption Agreement, (b) the Sale of the Property, (c) the assignment of the Leases and (d) the consummation of the Transactions, are hereby approved and NNI is authorized to comply with the Motion, the Purchase and Sale Agreement and all ancillary agreements contemplated thereby, including the Nortel License and the Assignment and Assumption Agreement.

4. NNI's assignment of the Leases is subject to the consummation of the Sale of the Property to the Purchaser. To the extent that an objection by a counterparty to any Lease is not resolved prior to the Closing, NNI, in consultation with the Purchaser, may elect to (i) not

assign such Lease, or (ii) postpone the assignment of such Lease until the resolution of such objection.

5.      Upon the Closing, except as otherwise provided in the Purchase and Sale Agreement, (a) NNI is hereby authorized to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of the Property to the Purchaser free and clear of any and all Encumbrances pursuant to section 363 of the Bankruptcy Code, with such Encumbrances to attach to the sale proceeds in the same validity, extent and priority as existed with respect to the Property immediately prior to the sale transactions, subject to any rights, claims and defenses of the Debtors and other parties in interest, and (b) all such Encumbrances shall be and hereby are released, terminated and discharged as to the Purchaser and the Property.

6.      Except as otherwise provided in the Purchase and Sale Agreement, the transfer of the Property to the Purchaser pursuant to the Purchase and Sale Agreement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Property, and vests with or will vest in the Purchaser all right, title and interest of NNI in the Property, pursuant to section 363 of the Bankruptcy Code, free and clear of all Encumbrances, with such Encumbrances attaching to the sale proceeds in the same validity, extent and priority as existed with respect to the Property immediately prior to the Transactions, subject to any rights, claims and defenses of the Debtors and other parties in interest.

7.      Upon the Closing, (i) the counterparties to the Leases shall attorn to the Purchaser, (ii) the Debtors shall be relieved of all obligations and liabilities under the Leases accruing from and after the Closing, and (iii) the Purchaser shall be deemed to have assumed all of and succeeded to the entirety of the Debtors' obligations and liabilities under the Leases accruing from and after the Closing.

8. Upon assignment of the Leases by NNI, the Leases shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to the Purchaser.

9. Upon the Closing, and except as otherwise provided in the Purchase and Sale Agreement and the ancillary agreements contemplated thereby, because of the purchase of the Property, the Purchaser shall not become liable for any claims against, and liabilities and obligations of, the Debtors or any of the Debtors' predecessors or affiliates.

10. The Sale Notice and the Publication Notice, in substantially the same form as annexed to the Motion as Exhibits E and F are sufficient to provide effective notice to all interested parties of the Sale pursuant to Bankruptcy Rules 2002(a)(2), and 6004, and are hereby approved.

11. The Transactions have been undertaken by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Property as that term is used in Bankruptcy Code section 363(m). The Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

12. Pursuant to sections 105 and 363 of the Bankruptcy Code and subject to the satisfaction (or waiver, if permitted under the Purchase and Sale Agreement) of each condition under the Purchase and Sale Agreement, the Nortel License and other documents contemplated by the Purchase and Sale Agreement, the Debtors, NNI specifically, and the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to: (i) consummate the Transactions in accordance with the Motion, the Purchase and Sale Agreement, the Nortel License, the Assignment and Assumption Agreement, any other documents contemplated by the Purchase and Sale Agreement and this Order; and (ii) perform,

11

consummate, implement and close fully the Purchase and Sale Agreement, the Nortel License, the Assignment and Assumption Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase and Sale Agreement. NNI and the Purchaser are hereby authorized to perform each of their covenants and undertakings as provided in the Purchase and Sale Agreement and any other documents contemplated by the Purchase and Sale Agreement prior to or after Closing without further order of the Court.

13. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale or the Transactions. The Purchaser is not and will not become obligated to pay any fee or commission or like payment to any broker, finder or financial advisor as a result of the consummation of the Transactions contemplated by the Purchase and Sale Agreement based upon any arrangement made by or on behalf of the Debtors.

14. The consideration provided by the Purchaser for the Property under the Purchase and Sale Agreement shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar state laws.

15. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Property or a bill of sale transferring good and marketable title in such Property to the Purchaser on the Closing Date pursuant to the terms of the Purchase and Sale Agreement, free and clear of all Encumbrances (except as otherwise provided in the Purchase and Sale Agreement) pursuant to section 363 of the Bankruptcy Code.

16.     Except as otherwise provided in the Purchase and Sale Agreement and to the extent permitted by applicable law, any and all Property in the possession or control of any person or entity, including, without limitation, any vendor, supplier or employee of the Debtors shall be transferred to the Purchaser free and clear of all Encumbrances (except as otherwise provided in the Purchase and Sale Agreement), including the Encumbrance asserted by Graybar Electric Company, Inc., pursuant to section 363 of the Bankruptcy Code and shall be delivered at the time of Closing to the Purchaser. Those Encumbrances sold free and clear of, including that Encumbrance asserted by Graybar Electric Company, Inc., if any, will attach to the sale proceeds in the same validity, extent and priority as existed with respect to the Property immediately prior to the Transactions, subject to any rights, claims and defenses of the Debtors and other parties in interest.

17.     The Transactions do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates. Upon the Closing, the Purchaser shall be deemed to have assumed only the liabilities that it agreed to assume under the Purchase and Sale Agreement and the ancillary documents thereto, including the Assignment and Assumption Agreement. Except as otherwise provided in the Purchase and Sale Agreement, the Purchaser's acquisition of the Property shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the time of Closing. The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the

Property.

18.     This Order (a) is and shall be effective as a determination that other than as provided in the Purchase and Sale Agreement, all Encumbrances of any kind or nature whatsoever existing as to the Property prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) is and shall be binding upon and shall authorize all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Property conveyed to the Purchaser. All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Encumbrances (other than Encumbrances preserved by the Purchase and Sale Agreement) against the Property from their records, official and otherwise.

19.     If any person or entity which has filed statements or other documents or agreements evidencing Encumbrances on the Property shall not have delivered to NNI before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Encumbrances which the person or entity has or may assert with respect to the Property, NNI and the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Property.

20. All counterparties to the Leases shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Purchaser, and shall not charge the Debtors or the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transactions.

21. Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Transactions contemplated by the Purchase and Sale Agreement.

22. No governmental unit may revoke or suspend any right, license, trademark, permit or other permission relating to the use of the Property sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Transactions.

23. This Order applies only to assets owned by the Debtors. Consequently, notwithstanding any other provision of this Order or the Purchase and Sale Agreement to the contrary, the portions of this Order that approve the transfer of assets to the Purchaser free and clear of all Encumbrances, or that modify, enjoin, release or otherwise limit the rights of creditors of entities transferring assets, apply only to assets owned by the Debtors and do not apply to any assets owned by non-debtor entities except to the extent otherwise agreed by such entity in writing.

24. Except as expressly provided in the Purchase and Sale Agreement, the Nortel License or any ancillary agreements contemplated by the Purchase and Sale Agreement, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their

estates from asserting or otherwise impair or diminish any right (including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not purchased Property.

25.     Any amounts that become payable by NNI to the Purchaser pursuant to the Purchase and Sale Agreement or any of the documents delivered by NNI pursuant to or in connection with the Purchase and Sale Agreement shall (a) constitute administrative expenses of NNI's estate within the meaning of section 503(b) of the Bankruptcy Code, and (b) be paid by NNI in the time and manner as provided in the Purchase and Sale Agreement without further order of this Court. Notwithstanding the foregoing, amounts payable by NNI on account of a breach of the Purchase and Sale Agreement or any ancillary agreement thereto, which breach was caused by or was in response to a breach of the Purchase and Sale Agreement or any ancillary agreement thereto by the Purchaser shall not constitute an administrative expense of NNI within the meaning of section 503(b) of the Bankruptcy Code.

26.     This Order shall not be modified by any chapter 11 plan confirmed in these chapter 11 cases or subsequent order of this Court unless expressly consented to in writing by the Purchaser.

27.     This Order, the Purchase and Sale Agreement, the Nortel License the Assignment and Assumption Agreement and all agreements contemplated by the Purchase and Sale Agreement shall be binding in all respects upon and inure to the benefit of the Debtors, the Purchaser, all non-debtor parties to the Leases, all creditors and interest holders of any of the Debtors, the Committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy chapter 11 cases or upon a conversion to chapter 7 under the

Bankruptcy Code, and the Purchase and Sale Agreement shall not be subject to rejection or avoidance under any circumstances.

28.     The failure specifically to include or make reference to any particular provisions of the Motion, the Purchase and Sale Agreement, the Nortel License, the Assignment and Assumption Agreement or any ancillary agreements contemplated by the Purchase and Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Motion, the Purchase and Sale Agreement, the Nortel License, the Assignment and Assumption Agreement and any ancillary agreements contemplated by the Purchase and Sale Agreement are authorized and approved in their entirety.

29.     Until these cases are closed or dismissed, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, including, without limitation, the authority to: (1) interpret, implement and enforce the terms and provisions of this Order and the terms of the Purchase and Sale Agreement, the Nortel License, the Assignment and Assumption Agreement and any ancillary agreements contemplated by the Purchase and Sale Agreement, all amendments thereto and any waivers and consents thereunder; (2) protect the Purchaser, or the Property, from and against any of the Encumbrances; (3) compel delivery of all Property to the Purchaser; (4) compel the Purchaser to perform all of its obligations under the Purchase and Sale Agreement, the Nortel License, the Assignment and Assumption Agreement and any ancillary agreements contemplated by the Purchase and Sale Agreement; and (5) resolve any disputes arising under or related to the Motion, this Order, the Purchase and Sale Agreement, the Nortel License, the Assignment and Assumption Agreement any ancillary agreements contemplated by the Purchase and Sale Agreement, the Sale or the Transactions.

30.     The Purchase and Sale Agreement, the Nortel License and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the Court; *provided, however*, that any such modification, amendment or supplement is neither material nor materially changes the economic substance of the Transactions contemplated hereby (it being understood, for the sake of clarity, that no such modification, amendment or supplement shall be deemed to be material or shall be deemed to materially change the economic substance of the Transactions to the extent that the impact does not exceed two (2) percent of the Purchase Price); *provided further* that no such modifications, amendments, or supplements may be made except following two (2) days written notice to, or with the prior consent of, the Committee, c/o Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Fred S. Hodara, Stephen Kuhn, and David Botter) and the Bondholder Group, c/o Milbank, Tweed, Hadley & McCloy, One Chase Manhattan Plaza, New York, New York 10006 (Attention: Roland Hlawaty). NNI is hereby authorized to perform each of its covenants and undertakings as provided in the Purchase and Sale Agreement, the Nortel License and any ancillary agreements prior to or after closing without further order of the Court.

31.     Notwithstanding any provision in the Bankruptcy Code, Bankruptcy Rules (including Bankruptcy Rule 6004) or Local Rules to the contrary: (i) the terms of this Order shall be immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

32.     The provisions of this Order are nonseverable and mutually dependent.

33.     The Schedules and service lists delivered to the Court by the Debtors shall

be kept segregated and under seal by the Clerk of Court and shall not be made publicly available

pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018 and

Local Rule 9018-1(b).

Dated: _____ 10, 2011
       Wilmington, Delaware

                                        THE HONORABLE KEVIN GROSS
                                        UNITED STATES BANKRUPTCY JUDGE