

**BERNSTEIN SHUR**

COUNSELORS AT LAW

207 774-1200 main
207 774-1127 facsimile
bernsteinshur.com

100 Middle Street
PO Box 9729
Portland, ME 04104-5029

Robert J. Keach
207 228-7334 direct
rkeach@bernsteinshur.com

**VIA E-MAIL**

February 22, 2011

*Ad Hoc* Committee of Participants in the Nortel Networks U.S. Deferred Compensation Plan (the "Plan")

James Young
jimyoung.mjy3associates@yahoo.com

Robert Horne
robertxhorne@mindspring.com

Re:   **Representation of The Ad Hoc Committee by Bernstein, Shur**

Dear Mr. Young, Mr. Horne and other Participants:

   This will serve as an engagement letter between the Ad Hoc Committee (as defined below) and Bernstein, Shur, Sawyer and Nelson ("Bernstein Shur") and local counsel, Blank Rome, with respect to those matters noted below for which the Ad Hoc Committee has sought representation, and to confirm our previous conversations regarding same. The Ad Hoc Committee shall consist of any and all participants of the Nortel Networks U.S. Deferred Compensation Plan ("Participants") who execute a copy of this letter and contribute to the Retainer (as defined below)(such persons who sign and contribute to be known herein as "Member Participants").

   Bernstein Shur has agreed to represent the Ad Hoc Committee with respect to the chapter 11 bankruptcy cases (collectively, the "Bankruptcy Case") filed by Nortel Networks Inc., *et al.*,[1] (collectively, the "Debtors"), subject to Bernstein Shur

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. ((3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

BERNSTEIN, SHUR, SAWYER & NELSON, P.A.   |   Portland, ME   |   Augusta, ME   |   Manchester, NH



*Ad Hoc* Committee of Participants in the Nortel Networks
U.S. Deferred Compensation Plan
February 22, 2011
Page 2 of 6

completing a complete check for conflicts of interest and subject to the conditions noted below. The scope of representation will include representing the Ad Hoc Committee in connection with their interests as Participants in the Bankruptcy Case, including, to the extent same can be done in good faith, consistent with Rule 9011 and any ethical restrictions or rules: (a) attempting to assert the superior right and title of the Participants to any funds or other assets contributed by the Member Participants, or on their behalf, to the Plan; (b) attempting to preserve or achieve segregation and preservation of such funds and assets in the Plan pending an adjudication of the rights of the Member Participants therein, including by opposing any pending motion seeking a turnover of such funds; and (c) to the extent that the Member Participants have claims to be asserted in the Bankruptcy Case as Participants, attempting to maximize the return to such claims. The scope of this engagement shall not include the representation of the Member Participants with respect to the identification, preparation, filing, or prosecution of any other claims that any Member Participant may hold, including, without limitation, wage, salary and benefit claims, unless and until such time as the Member Participant and Bernstein Shur sign a written agreement identifying the terms of such expanded representation. The scope of representation of the Ad Hoc Committee shall not include investigation and assertion of claims against parties or entities other than the Debtors and/or their respective bankruptcy estates, the Plan, the trustee of the Plan and any official committees in the Bankruptcy Case asserting claims against the assets in the Plan or a related rabbi trust, and unrelated to the Plan or trust assets, unless and until this engagement letter shall be amended and executed to provide for such representation and Bernstein Shur shall have accepted, in writing, the expansion of the scope of representation.

As required by local rules in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Bernstein Shur will engage local Delaware counsel, to wit: Blank Rome ("Local Counsel"), on behalf of the Ad Hoc Committee, ███████████████████████████████████████████ To the extent Local Counsel requires execution of an additional engagement letter, the Subcommittee (as defined below) of the Ad Hoc Committee will execute and deliver such a letter (the "Local Counsel Letter"), which shall supplement this letter as to Local Counsel, and be binding upon the Member Participants.

The Ad Hoc Committee shall be represented in its dealings with Bernstein Shur and Local Counsel by a subcommittee consisting of not less than two and not more than seven Member Participants (the "Subcommittee"). Bernstein Shur and Local Counsel will consult with the Subcommittee on all matters relevant to the representation and Bernstein Shur and Local Counsel shall be entitled to rely on the direction and instruction of the Subcommittee in taking actions in connection with the representation. Bernstein Shur and Local Counsel shall communicate with the Subcommittee in writing or verbally as frequently as the circumstances may require, but neither Bernstein Shur nor Local Counsel shall have any duty or obligation to communicate directly with the other Member Participants. The Subcommittee may act based upon a majority vote of

*Ad Hoc* Committee of Participants in the Nortel Networks
U.S. Deferred Compensation Plan
February 22, 2011
Page 3 of 6

the members of the Subcommittee in connection with any action. **The Subcommittee will endeavor to keep the full Ad Hoc Committee informed to the extent practicable through periodic reports and, when it deems it advisable in its sole discretion, to consult with as many Member Participants as is practicable on certain matters, but the Subcommittee may act and direct Bernstein Shur and Local Counsel without such consultation and, provided it acts in good faith (which will always be present to the extent it acts on advice of counsel), the Subcommittee and each member thereof, shall have no liability to any Member Participant with respect to such actions or directions.** The Subcommittee shall hold and control the attorney-client privilege for the Ad Hoc Committee and only the Subcommittee may waive such privilege in whole or in part upon an appropriate vote thereof. Without limiting the foregoing, the Subcommittee may enter into agreements with Bernstein Shur to modify the terms of this engagement letter, including, without limitation, any terms and conditions as to compensation. The initial Subcommittee shall consist of:

James Young

Robert Horne

The members of the initial Subcommittee may agree, by simple majority, to add up to but not more than five (5) additional members of the Subcommittee. In the event of resignation by any member of the Subcommittee, the remaining members of the Subcommittee may appoint a replacement by a simple majority vote and, in the event of a tie, Bernstein Shur shall determine the identity of the replacement member.

Bernstein Shur and Local Counsel will each establish a separate billing account for the matter noted above. Billing rates for Local Counsel will be at the standard rates for such firm; Local Counsel will be used as necessary under the local rules, but Bernstein Shur will undertake reasonable efforts to minimize expenditures for Local Counsel, and it is intended that all substantive work product will be originated by Bernstein Shur.



Ad Hoc Committee of Participants in the Nortel Networks
U.S. Deferred Compensation Plan
February 22, 2011
Page 4 of 6



Each proposed Member

*Ad Hoc* Committee of Participants in the Nortel Networks
U.S. Deferred Compensation Plan
February 22, 2011
Page 5 of 6

Participant shall pay his or her share of the amount of the initial retainer contribution shown as agreed to with the Subcommittee.

A Participant can become a member of the Ad Hoc Committee only by signing a copy of this letter and sending the signed letter to the address noted above, and paying the amount of the contribution agreed to with the Subcommittee. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

   This representation is also subject to the standard Bernstein Shur terms and conditions attached hereto as **Exhibit A** (the "Bernstein Shur Standard Terms"), provided, however, that in the event of any conflict between this letter and such attached terms and conditions, this letter shall govern. As to Bernstein Shur, this engagement shall be governed by the Maine Bar Rules of Professional Conduct, including, without limitation, Rule 1.5(c). This representation – as it pertains to local counsel – is also further governed by the Local Counsel Letter.

   If I have accurately set forth our understanding, and if the Ad Hoc Committee consents to our representation of the Ad Hoc Committee under the terms and conditions set forth above, please sign the copy of this letter enclosed and forward it to my attention. Please do not hesitate to contact us with questions or concerns regarding this letter, should you have any. We look forward to being of service to the Ad Hoc Committee in this regard.

Sincerely,

*[signature]*

Robert J. Keach

RJK/alc

*Ad Hoc* Committee of Participants in the Nortel Networks
U.S. Deferred Compensation Plan
February 22, 2011
Page 6 of 6

**SEEN AND AGREED TO:**

*Ad Hoc* Committee of Participants in the Nortel Networks U.S. Deferred Compensation Plan

By: _____
     James Young, AS DULY AUTHORIZED BY THE SUBCOMMITTEE

By: _____
     Robert Horne, AS DULY AUTHORIZED BY THE SUBCOMMITTEE


**SEEN AND AGREED TO:**


By: _____
     Print Name:
     Participant in or Beneficiary of the Nortel Networks U.S. Deferred
     Compensation Plan

**BERNSTEIN SHUR**

COUNSELORS AT LAW

207 774-1200 main
207 774-1127 facsimile
bernsteinshur.com

100 Middle Street
PO Box 9729
Portland, ME 04104-5029

## STANDARD TERMS OF ENGAGEMENT FOR LEGAL SERVICES

This statement sets forth the standard terms of our engagement as your lawyers. Unless modified in writing by mutual agreement, these terms will be an integral part of our agreement with you. Therefore, we ask that you review this statement carefully and contact us promptly if you have any questions. We suggest that you retain this statement in your file.

### The Scope of Our Work

Any expressions on our part concerning the outcome of your legal matters are expressions of our best professional judgment, but are not guarantees. Such opinions are necessarily limited by our knowledge of the facts and are based on the state of the law at the time they are expressed.

The person or entity that we represent is the person or entity that is identified as the client in our engagement letter or on our billing statement and, unless otherwise agreed to, does not include any officers, directors, employees or affiliates of such person or entity (e.g., if you are a corporation, partnership or limited liability company, any parents, subsidiaries, employees, officers, directors, managers, shareholders, members or partners of the corporation or partnership, or commonly owned corporations or partnerships are not considered to be clients, unless otherwise expressly agreed to or unless those persons or entities are or have been our clients on other matters). For conflict of interest purposes, we may represent another client with interests adverse to any such affiliate without obtaining your consent.



January 17, 2011
Page 2 of 7

## How Our Fees Will Be Set

Except where we have otherwise agreed, such as where we have a flat or minimum fee or a contingency fee arrangement, we bill on an hourly fee basis for our services. We will keep records of the time we devote to your work, including conferences, negotiations, factual and legal research and analysis, document preparation and revision, travel on your behalf, and other related matters. We record our time in units of tenths of an hour. The hourly rates of our lawyers and legal assistants have an important bearing on the fees we charge. These rates are generally adjusted annually and attorneys may have different hourly rates for different types of matters reflecting market factors or their level of expertise.

We are often requested to estimate the amount of fees and costs likely to be incurred in connection with a particular matter. Whenever possible, we will furnish such an estimate based upon our professional judgment, but absent agreement, such estimates are not a maximum or fixed-fee quotation. The ultimate cost frequently is more or less than the amount estimated. For certain well-defined services (such as, a simple business incorporation), we may quote a flat fee. In undertaking representation of a client with a personal injury or in specialized business transactions, we will, in appropriate circumstances, provide legal services on a contingent fee basis. Any such contingent fee arrangement must be reflected in a signed, written contingent fee agreement between us.

## Disbursements

We will usually charge clients for ancillary services provided such as messenger deliveries, expedited delivery services, travel costs, computerized research services, and

January 17, 2011
Page 3 of 7

the use of our facsimile and photocopy machines. While our charges for these services are measured by use, they do not always reflect our actual out-of-pocket costs. For many of these items, the true cost of providing the service is difficult to establish. We would be pleased to discuss the specific schedule of charges for these additional services with you and to answer any questions that you may have. If you would prefer, in some situations we can arrange for these ancillary services to be provided by third-parties with direct billing to you.

To keep costs down, we require that payment of third-party charges, including costs for depositions, expert witnesses, appraisals and similar costs be paid by the client directly to the vendor or services or that arrangement be made in advance for payment by the client when engaged by us on your behalf.

### Advance Payments and Trust Deposits

New clients of the firm are commonly asked to deposit an advance fee payment with the firm. If you deposit an advance fee with us, you grant us a security interest in that deposit. Unless otherwise agreed, the advance fee deposit will be credited from time to time at our option toward your unpaid invoices. At the conclusion of our legal representation or at such time as the deposit is unnecessary or is appropriately reduced, the remaining balance or an appropriate part of it will be returned to you. If the advance fee deposit proves insufficient to cover current anticipated expenses and fees, it may have to be increased.

Deposits that are received to cover specific items will be disbursed as provided in our agreement with you, and you will be notified from time to time of the amounts

January 17, 2011
Page 4 of 7

applied or withdrawn. Any amount remaining after disbursement will be returned to you.

Depending on the size of the advance fee payment, it may be deposited in the firm's account, an IOLTA account as described below, or a separate segregated account. If we think it is likely that the advance will be applied to legal services in the next month or two after it is received, the advance fee will go in the firm's account. If the advance fee is larger than that, and if it is not expected to earn a net return to you, taking into consideration the size and anticipated duration of the deposit and the costs of establishing a separate account, then we will place it in a pooled account known as an Interest on Lawyers Trust Account or "IOLTA" account. The IOLTA account is created by order of the Maine courts. By court rule, interest earned on the IOLTA account is payable to a charitable foundation established in accordance with the court's rule and used to fund legal service for the poor. Very large advance fee payments that are likely to earn a return will be placed by us in a segregated account for your benefit. Interest earned on any segregated trust account will be added to the deposit for your benefit and will be includable in your taxable income.

### Communication by E-mail

E-mail communication has proven to be a great benefit to most clients and we ordinarily communicate by unencrypted e-mail. However, we recognize that it is technologically possible to intercept unencrypted e-mail and that there is no guarantee that unencrypted e-mail will remain private. Although we routinely communicate with many clients using unencrypted e-mail, we do not do so if the client has any concerns or

January 17, 2011
Page 5 of 7

instructs us not to do so. Therefore, we ask that you consider this issue carefully and advise us promptly if you do not wish to communicate by unencrypted e-mail.

### Termination/Withdrawal

Either party may terminate our representation at any time, with or without cause. If such termination occurs, papers and property that you have provided to us will be returned to you. Our own files pertaining to the case will be retained, subject to your rights of access under applicable bar rules. Your termination of our services will not affect your responsibility for payment of legal services rendered and additional charges incurred before termination and in connection with an orderly transition of the matter.

We are subject to the codes of professional responsibility for the jurisdictions in which we practice, which list several types of conduct or circumstances that require or allow us to withdraw from representing a client, including for example: nonpayment of fees or costs, misrepresentation or failure to disclose material facts, action contrary to our advice, and conflict of interest with another client. We try to identify in advance and discuss with our client any situation that may lead to our withdrawal and if withdrawal ever becomes necessary we give the client written notice of our withdrawal.

### Billing Arrangements and Terms of Payments

Unless agreed otherwise, we will bill you on a regular basis, normally each month, for both fees and disbursements. You agree to make payment within 30 days of receiving our statement. Unpaid fees and disbursements accrue a late charge of 1 ½ % per month from the beginning of the month in which they became overdue. (Where fees and disbursements are regularly paid out of a retainer deposit, no interest will be charged.) We will give you notice if your account becomes delinquent. If the

January 17, 2011
Page 6 of 7

delinquency continues and you do not arrange satisfactory payment terms, we will withdraw from the representation and pursue collection of your account. You agree to pay the costs of collecting the debt, including court costs, filing fees and reasonable attorneys' fees.

### File Retention of Completed Matters

When we complete a matter, it is our practice to retain the closed file in our offsite storage facility for eight (8) years. At the time the file is sent to storage, all original documents in the file that belong to you such as your business or personal records, signed originals of contracts or transactional documents will be returned to you. You will be notified that the file is being closed and will be asked to tell us whether you wish to have the file destroyed or returned to you at the end of the storage period. If you ask us to return the file, you will also be asked to keep us informed of any changes in your address so that we can be in touch with you when the storage period comes to an end.

### Arbitration

If you disagree with the amount of our fee, please take up the question with your principal attorney contact or with the firm's managing partner. Typically, such disagreements are resolved to the satisfaction of both sides with little inconvenience or formality. In the event of a fee dispute that is not readily resolved, you shall have the right to submit the fee dispute to arbitration under the Maine Code of Professional Responsibility. Any fee dispute that you do not submit to arbitration under the Maine Code of Professional Responsibility, and any other dispute that arises out of or relates to this agreement or the services provided by the law firm shall also, at the election of

January 17, 2011
Page 7 of 7

either party, be subject to binding arbitration. Either party may request such arbitration by sending a written demand for arbitration to the other. If a demand for arbitration is made, you and the firm shall attempt to agree on the arbitrators. If no agreement can be reached within 30 days of the receipt of the demand, the party demanding arbitration may designate an arbitrator by sending a written notice to the other party. Within two weeks of that initial designation, the other party shall designate an arbitrator in writing. Thereafter, those two designated arbitrators shall meet promptly to select a third arbitrator. The arbitrators shall conduct the arbitration proceedings according to the procedures under the commercial arbitration rules of the American Arbitration Association and shall hold the arbitration hearing in Maine. The arbitrators shall be bound by and follow applicable Maine substantive rules of law as if the matter were tried in court. Either party shall have the right to appeal a decision of the arbitrators on the grounds that the arbitrators failed to properly apply applicable law.

In the event that a dispute between us ends up in court, both parties agree that it shall be tried exclusively in a court in Maine.