**EXHIBIT B**

**Israel Agreement**

Date: April 13, 2011

To:    Nortel Networks Inc. ("Nortel US")

Nortel Networks UK Limited (in administration) ("NNUK") (acting by its joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (the "Joint Administrators")

Nortel Networks Israel (Sales and Marketing) Ltd. (in administration) ("Nortel Sales and Marketing")

Nortel Communications Holdings (1997) Ltd. (in administration) ("Nortel Communications" and, together with Nortel Sales and Marketing, "Nortel Israel")

### Re: Letter of Agreement

Subject to the satisfaction of all the terms and conditions set forth herein, and for the good and valuable consideration set forth herein, the value of which is hereby acknowledged, the undersigned hereby confirm and agree as follows:

1. Subject to the terms hereof, Nortel US and NNUK (each a "Participating Party" and together the "Participating Parties") hereby agree to waive any right to payment from Nortel Israel (the "Waiver") on account of such parties' claims pursuant to the scheme of arrangement of Nortel Israel's creditors approved by the Tel-Aviv District Court on November 24, 2009 (the "Scheme of Arrangement"), and acknowledge and agree that the Assignment (as defined herein), once consummated pursuant to paragraph 5 hereof, shall constitute a full and final payment of Nortel Israel's obligations to the Participating Parties pursuant to the Scheme of Arrangement.

2. All of the obligations of Nortel Israel to the Participating Parties and of the Participating Parties to Nortel Israel which are set forth in Exhibit A remain due and payable and are unaffected by this Agreement. All outstanding invoices between each Participating Party and Nortel Israel, attached hereto as Exhibit B, shall be paid in full no later than April 30, 2011. The Parties hereby acknowledge and agree that no material orders will be placed by or to Nortel Israel subsequent to the date of this Agreement.

3. Nortel Israel waives any right to payment under any invoices relating to services rendered by Nortel Israel in connection with Nortel Networks Eastern Mediterranean Ltd. prior to the date hereof. Nortel Israel shall not provide, and Nortel US hereby agrees that Nortel Israel shall not be obligated to Nortel US to provide, services to or in connection with Nortel Networks Eastern Mediterranean Ltd. subsequent to the date of this Agreement.

4. In exchange for, and effective upon the receipt of, US$2,000,000 (two million United States dollars) (the "Payment") according to the terms hereof, which shall comprise a payment by Nortel US of US$813,819 (eight hundred thirteen thousand and eight hundred nineteen United States dollars) and a payment by Nortel UK of US$1,186,181 (one million, one hundred eighty-six thousand and one hundred eighty-one United States dollars), and the Waiver, Nortel Israel

hereby irrevocably assigns, transfers and conveys to the Participating Parties, jointly, all of its present and future rights, title and interest to any portion of (the "**Assignment**") the proceeds of the sale of any Nortel business or asset (the "**Israeli Proceeds**"), including any and all rights of Nortel Israel under that certain Interim Funding and Settlement Agreement, dated June 9, 2009 (the "**IFSA**").

5. Each Participating Party shall be entitled to a ratable share of the Israeli Proceeds proportional to that Participating Party's contribution to the Payment, until Nortel US has been paid an amount equivalent to its outstanding claims against Nortel Israel as of the date of this Agreement pursuant to the Scheme of Arrangement plus its share of the Payment, after which all amounts shall be paid solely to NNUK as the sole shareholder of Nortel Israel.

6. Nortel Israel hereby agrees that, prior to its dissolution, in relation to any sale of any Nortel business or asset in which Nortel Israel would, save for the terms of this Agreement, have had any rights, title or interest in any portion of the proceeds of, it shall take, or cause to be taken, all actions as are lawful, reasonable and within its power and to do, or cause to be done, to give effect to sale of such Nortel business or asset. Nortel Israel further agrees to execute a limited power of attorney (the "**Power of Attorney**") as provided in <u>Exhibit C</u> hereto, authorizing NNUK and Nortel US to act jointly on behalf of Nortel Israel as necessary to effectuate the sale of any Nortel asset in which Nortel Israel has now or may ever have had an interest, whether such sale takes place before or after dissolution of Nortel Israel.

7. Nortel Israel hereby acknowledges and agrees that the Payment and Waiver shall constitute full and complete payment and final satisfaction of any and all claims (including any claims for interest), whether known, knowable or unknown, contingent or non-contingent, stated or unstated, arising from or affected by any change in the law or any other change of circumstances of any sort, that Nortel Israel ever had, now has, or may have in the future against the Participating Parties and any of their subsidiaries or affiliates, or their respective directors, officer, employees and agents (including for the avoidance of doubt the Joint Administrators), for any share in any Israeli Proceeds.

8. In the event that the Israeli Tax Authorities require Nortel Israel to issue invoices with respect to the transactions contemplated in this Agreement, these obligations shall not be transferred to the Participating Parties, and shall be the sole responsibility of and shall be satisfied in full by Nortel Israel. For the avoidance of doubt, the Participating Parties shall not be responsible for any obligations to any Israeli government agency or authority, including without limitation any taxing authorities, and Nortel Israel shall indemnify and hold harmless the Participating Parties for any such liabilities that may attach or attempt to attach to any of the Participating Parties as a result of their relationship with Nortel Israel.

9. Each party shall execute and deliver any and all documents, motions, applications and agreements required in connection with the Assignment, including, without limitation, the amendment under New York law of all escrow agreements created in connection with any global sale of Nortel assets to which Nortel Israel is a party, eliminating Nortel Israel's rights thereunder, as provided in <u>Exhibit D</u> hereto, and the Power of Attorney, and shall use commercially

2

reasonable efforts to cooperate on execution of any documents that may be required in the future to implement this Agreement.

10. Each party shall have an opportunity to review and provide comments to the motions to be filed by Nortel US with the United States Bankruptcy Court for the District of Delaware (the "US Court") and by Nortel Israel with the Tel Aviv District Court, the form and substance of which must be reasonably acceptable to all parties.

11. The Joint Administrators are entering into this Agreement as agents for NNUK only and the other Parties hereto acknowledge that none of the Joint Administrators or their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of NNUK to observe, perform or comply with any of their obligations under this Agreement or under or in relation to any associated arrangements or negotiations.

12. In exercising their rights under this Agreement, the Joint Administrators are required to act in the best interests of the creditors of NNUK to which they have been appointed. Therefore nothing in this Agreement shall operate so as to derogate from, restrict or prevent the Joint Administrators from complying with their statutory duties or legal obligations in relation to the exercise of their powers, duties or functions as administrators of NUNK under the Insolvency Act 1986 or any other applicable legislation or statutory instrument as they see fit, acting in good faith.

13. For the purposes of the acknowledgements or agreements to, or exclusions of, liability in favor of the Joint Administrators in this Agreement, references to the Joint Administrators where the context so permits shall mean and include any additional or successor administrator of NNUK and their respective firms or future firms, employees, agents, members, partners and personal representatives.

14. Each of the Participating Parties will transfer its portion of the Payment to Nortel Israel within 10 business days from receipt of the last of the approvals described in Section 16 hereunder.

15. This Agreement and each party's obligations hereunder are subject to and conditioned upon the receipt within ninety (90) days of the date hereof of (a) the approval of an amendment to the Scheme of Arrangement incorporating the terms of this Agreement (the "Amended Scheme") by a 75% majority of the Pension-10 Group (as such term is defined in the Scheme of Arrangement), (b) the approval of the Amended Scheme by the Participating Parties, (c) approvals by any relevant governmental authority, including confirmation by the Israeli Tax Authority that the Amended Scheme does not give rise to a taxable event, or agreement by the Israeli Tax Authority to an alternative tax arrangement consistent with the Amended Scheme and this Agreement, (d) the approval of the Tel-Aviv District Court of the Amended Scheme, (e) the approval by the US Court of the terms of this Agreement, and (f) the approval by the US Court and the Ontario Superior Court of Justice (Commercial List) of the escrow amendments provided in Exhibit D hereto.

16. With the exception of Sections 11, 12 and 13, which shall be subject to English law, and subsections (a), (c) and (d) of Section 15, which shall be subject to the

3

laws of the State of Israel, this agreement will be governed by and construed in accordance with the laws of the State of New York, United States of America. The parties hereto consent to the exclusive jurisdiction of the US Court for all matters concerning this Agreement during the pendency of Nortel US's chapter 11 case and, thereafter, consent to any action or proceeding to interpret or enforce this agreement being brought in a United States District Court having jurisdiction over such matter.

17. Delivery of an executed counterpart of the signature page of this agreement by facsimile or e-mail attachment shall be effective as delivery of a manually executed counterpart of this agreement.

18. Nortel Israel hereby acknowledges and agrees that:

a.    in entering into this agreement NNUK is acting for and on behalf of Nortel Networks S.A. (in administration and in liquidation), Nortel Networks France S.A.S. (in administration), Nortel Networks BV (in administration), and Nortel Networks (S.p.A) (in administration) (together, the "**Nortel EMEA Participants**"); and

b.    with the exception of paragraphs 4, 5 and 14 all references in this Agreement to the "Participating Parties" shall be deemed to include the Nortel EMEA Participants.

*[Signature pages follow]*

4

In witness whereof, the parties set forth their signatures as of the date first above written:

Nortel Networks UK Limited
(in administration)

By: ALAN BLOOM
as Joint Administrator (acting as agent and without personal liability).

Nortel Networks Inc.

By: John J. Ray, III
Title: Principal Officer

הנאמן בהקפאת הליכים

Nortel Communications Holdings (1997) Limited (in administration)

By: Avi D. Pelossof and Yaron Har-Zvi,
Title: Joint Administrators

הנאמן בהקפאת הליכים

Nortel Networks Israel (Sales and Marketing) Ltd. (in administration)

By: Avi D. Pelossof and Yaron Har-Zvi
Title: Joint Administrators

By: ALAN BLOOM
In his own capacity and on behalf of the Joint Administrators without personal liability and solely for the benefit of the provisions of this Agreement expressed to be conferred on or given to the Joint Administrators.

5

**EXHIBIT A**

**OUTSTANDING OBLIGATIONS**

All of the obligations of Nortel Israel to the Participating Parties and of the Participating Parties to Nortel Israel set forth in the following agreements, for as long as Nortel Israel has not been liquidated, are unaffected by this Agreement and, where appropriate, remain due and payable, save, for the avoidance of doubt, the Israeli Proceeds which shall be payable to the Participating Parties pursuant to the terms of this Agreement:

1. the amended and restated asset and share sale agreement between Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and the other entities identified therein as Sellers and the entities identified therein as EMEA Sellers and Avaya Inc, dated September 14, 2009, as amended on 18 December 2009 and 10 March 2011 and as may be amended and restated from time to time;

**2.**  the amended and restated asset sale agreement relating to the sale and purchase of the EMEA Assets between the EMEA Sellers (as defined therein), Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, Yaron Har-Zvi and Avi D. Pelossof as Joint Israeli Administrators and Avaya Inc, dated 14 September 2011, as amended on 22 December 2009 and as may be amended and restated from time to time;

3. the amended and restated asset sale agreement between Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and the other entities identified therein as Sellers and Ciena Corporation dated November 24, 2009, as amended on 3 December 2009, 23 December 2009, 15 March 2009, 15 March 2009 and 19 March 2009 and as may be amended and stated from time to time;

4. the asset sale agreement relating to the sale and purchase of the EMEA Assets between the EMEA Sellers (as defined therein), Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, Yaron Har-Zvi and Avi D. Pelossof as Joint Israeli Administrators and Ciena Corporation dated 7 October 2009, as amended on 20 October 2009, 24 November 2009, 16 December 2009, 13 January 2010 and 19 March 2010 and as may be amended and restated from time to time;

5. the asset sale agreement between Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and the other entities identified therein as Sellers and Genband Inc. dated December 22, 2009 as amended on 28 May 2010 and as may be amended and restated from time to time;

6. the asset sale agreement relating to the sale and purchase of the EMEA assets between the EMEA Sellers (as defined therein), Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, Yaron Har-Zvi and Avi D. Pelossof as Joint Israeli Administrators and Genband, Inc. dated 23 December 2009, as amended on 28 May 2010 and as may be amended and restated from time to time;

7. the asset sale agreement between Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and the other entities identified therein

as Sellers and Telefonaktiebolaget L M Ericsson (publ) dated September 24, 2010, as amended on 11 March 2010 and as may be amended and restated from time to time; and

8. the asset sale agreement relating to the sale and purchase of the EMEA assets between the EMEA Sellers (as defined therein), Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, Yaron Har-Zvi and Avi D. Pelossof as Joint Israeli Administrators and Telefonaktiebolaget L M Ericsson (publ) dated 24 September 2010, as amended and restated on 11 March 2011 and as may be amended and restated from time to time.

## EXHIBIT B

**Nortel Israel – Accounts Receivable (as of March 2011)**

| Affiliate | Outstanding AR Balance | Currency |
|-----------|------------------------|----------|
| Canada | 5,809.01 | ILS |
| Italy | 12,118.81 | ILS |
| UK | 208,667.53 | ILS |
| India | 211,462.52 | ILS |
| Austria | 7,028.38 | ILS |

**Nortel Israel – Accounts Payable (as of March 2011)**

| Affiliate | Outstanding AP Balance | Currency |
|-----------|------------------------|----------|
| Canada | 42,778.41 | CAD |
| US | 40,457.44 | USD |
| Mexico | 10,409.66 | USD |
| Italy | 3,070.74 | EUR |
| Netherlands | 9,030.21 | EUR |
| Spain | 14,516.22 | EUR |
| UK | 4,966.32 | GBP |

**EXHIBIT C**

**POWER OF ATTORNEY**

## IRREVOCABLE POWER OF ATTORNEY

The undersigned Nortel Networks Israel (Sales and Marketing) Ltd. (in administration) ("**Nortel Sales and Marketing**") and Nortel Communications Holdings (1997) Ltd. (in administration) ("**Nortel Communications**" and, together with Nortel Sales and Marketing, "**Nortel Israel**"), acting by and through their joint administrators Yaron Har-Zvi and Avi D. Pelossof , in their respective capacities as Joint Administrators of Nortel Israel and without any personal liability (hereinafter, the "**Israeli Administrators**"), have entered into that certain agreement dated as of April 13, 2011 (the "**Israel Agreement**") with Nortel Networks, Inc. ("**Nortel US**") and Nortel Networks UK Limited (in administration) ("**NNUK**") (acting by its joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (the "**Joint Administrators**") in their capacity as Joint Administrators of NUK and without any personal liability), pursuant to which, among other things, Nortel Israel irrevocably assigned, transferred, and conveyed to Nortel US and NNUK all of its present and future rights, title and interest to any portion of the proceeds (an "**Israeli Allocation**") of the sale of any Nortel business or asset in which Nortel Israel has now or may ever have an interest, whether such sale takes place before or after the dissolution of Nortel Israel (each, an "**Asset Sale**", and collectively, the "**Asset Sales**"). The Israeli Agreement is in full force and effect, all conditions to its effectiveness having been satisfied.

1.  In furtherance of the Israel Agreement, and in consideration of the actual promises and initial obligations set forth herein, the undersigned hereby irrevocably constitutes and appoints NNUK and Nortel US (acting jointly, the "**Israeli Representatives**") as its agent and attorney-in-fact, with full power of substitution, to act in the name, place and stead of Nortel Israel with respect to all matters arising in connection with the Israel Agreement, as the same may be amended from time to time, including, but not limited to, the power and authority on behalf of the undersigned to do or cause to be done any of the following things:

    *   sign, arrange and file on behalf Nortel Israel all and any correspondence, agreements, or other documents necessary to effectuate the Asset Sales and the Israeli Agreement and to receive any Israeli Allocation in accordance with the terms of the Israel Agreement;

    *   amend and waive any provisions of any document entered into by Nortel Israel in connection with any Asset Sale or relating in any way to any Israeli Allocation, provided that any Israeli Allocation shall be distributed between Nortel US and NNUK in accordance with the terms of the Israel Agreement;

    *   otherwise take all actions and do all things necessary or proper, required, contemplated or deemed advisable or desirable by the Israeli Representatives in their discretion, including the execution and delivery of any documents, and generally act for and in the name of the undersigned with respect to the Israel Agreement, the Asset Sales and any Israeli Allocation, as fully as could the undersigned if then personally present and acting; and

    *   receive all notices, communications, and deliveries under any document relating to the Asset Sales, the Israeli Agreement or any Israeli Allocation.

2.  The Israeli Representatives are hereby empowered to determine, in their sole and absolute discretion, the time or times when, the purposes for which, and the manner in which, any power herein conferred upon the Israeli Representatives shall be exercised.

3. This Power of Attorney shall be irrevocable, and any other Person may conclusively and absolutely rely, without inquiry, upon the actions of the Israeli Representatives as the acts of Nortel Israel in all matters relating to this Agreement; provided, however, that Nortel US and NNUK may, acting together and upon written notice to Nortel Israel, replace such individual as Israeli Representative with any other person, who will thereupon be deemed to be the Israeli Representative for purposes hereof.

4. The Joint Administrators are entering into this Power of Attorney as agents for NNUK only and the other parties hereto acknowledge that none of the Joint Administrators or their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of NNUK to observe, perform or comply with any of their obligations under this Power of Attorney or under or in relation to any associated arrangements or negotiations.

5. In exercising their rights under this Power of Attorney, the Joint Administrators are required to act in the best interests of the creditors of NNUK to which they have been appointed. Therefore nothing in this Power of Attorney shall operate so as to derogate from, restrict or prevent the Joint Administrators from complying with their statutory duties or legal obligations in relation to the exercise of their powers, duties or functions as administrators of NNUK under the Insolvency Act 1986 or any other applicable legislation or statutory instrument as they see fit, acting in good faith.

6. For the purposes of the acknowledgements or agreements to, or exclusions of, liability in favor of the Joint Administrators in this Power of Attorney, references to the Joint Administrators where the context so permits shall mean and include any additional or successor administrator of NNUK and their respective firms or future firms, employees, agents, members, partners and personal representatives.

7. The parties hereto consent to the exclusive jurisdiction of the US Court for all matters concerning this Power of Attorney during the pendency of Nortel US's chapter 11 case and, thereafter, consent to any action or proceeding to interpret or enforce this Power of Attorney being brought in a United States District Court having jurisdiction over such matter.

IN WITNESS WHEREOF, the undersigned has executed this Power of Attorney this __ day of _____, 2011.


| | |
|---|---|
| **Nortel Communications Holdings (1997) Limited (in administration)** | **Nortel Networks Israel (Sales and Marketing) Ltd. (in administration)** |
| By: | By: |
| Title: | Title: |

ACCEPTED by each Israeli Representative as of
the date above set forth:

In his own capacity and on behalf of the Joint
Administrators without personal liability and
solely for the benefit of the provisions of this
Power of Attorney expressed to be conferred on
or given to the Joint Administrators


By: _____  ____
Title:


ACCEPTED by each Israeli Representative as of
the date above set forth:


By: _____
Title:

**EXHIBIT D**

**CANADIAN ACKNOWLEDGEMENT**

### ACKNOWLEDGEMENT RE ISRAEL SETTLEMENT AGREEMENT

**TO:**        Nortel Networks, Inc. ("Nortel US")

Nortel Networks UK Limited ("NNUK") (acting by its joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (the "Joint Administrators")

Nortel Networks Limited, and its affiliated debtors in the CCAA Proceedings ("Nortel Canada")

Nortel Networks Israel (Sales and Marketing) Ltd. (in administration) ("Nortel Sales and Marketing")

Nortel Communications Holdings (1997) Ltd. (in administration) ("Nortel Communications" and, together with Nortel Sales and Marketing, "Nortel Israel")

**RE:**        Settlement Agreement dated as of April 12, 2011 (the "Israel Settlement Agreement") by and among Nortel US, NNUK, Nortel Israel, and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al. (the "Committee

**DATE:**     April___, 2011

Without waiver of any rights or claims they may have against Nortel Israel or its successors and assigns (which successors and assigns do not include Nortel US or NNUK), upon the effectiveness of the Israel Settlement Agreement, Nortel Canada acknowledges that it will have no rights or entitlements in, or to the Israeli Proceeds (as defined in the Israel Settlement Agreement), or against Nortel US or NNUK with respect to their rights to the Israeli Proceeds.

Nortel Israel hereby releases Nortel Canada (including all Canadian affiliates, directors, officers, successors and assigns, collectively, the "Canadian Releasees") from any and all claims ( including, without limitation, any claims it may have asserted, alleged or otherwise filed against one or more of the Canadian Releasees in connection with any claims process in connection with Nortel Canada's CCAA proceedings) it ever had, may now have or in the future have against the Canadian Releasees.

**NORTEL NETWORKS LIMITED**

Per: _____

Name: Anna Ventresca

Title: General Counsel - Corporate & Corporate Secretary

Per: _____

Name:

Title:

## ACKNOWLEDGEMENT RE ISRAEL SETTLEMENT AGREEMENT

TO:     Nortel Networks, Inc. ("Nortel US")

Nortel Networks UK Limited ("NNUK") (acting by its joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (the "Joint Administrators")

Nortel Networks Limited, and its affiliated debtors in the CCAA Proceedings ("Nortel Canada")

Nortel Networks Israel (Sales and Marketing) Ltd. (in administration) ("Nortel Sales and Marketing")

Nortel Communications Holdings (1997) Ltd. (in administration) ("Nortel Communications" and, together with Nortel Sales and Marketing, "Nortel Israel")

RE:     Settlement Agreement dated as of April 12, 2011 (the "Israel Settlement Agreement") by and among Nortel US, NNUK, Nortel Israel, and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al. (the "Committee

DATE:    April ___, 2011

Without waiver of any rights or claims they may have against Nortel Israel or its successors and assigns (which successors and assigns do not include Nortel US or NNUK), upon the effectiveness of the Israel Settlement Agreement, Nortel Canada acknowledges that it will have no rights or entitlements in or to the Israeli Proceeds (as defined in the Israel Settlement Agreement), or against Nortel US or NNUK with respect to their rights to the Israeli Proceeds.

Nortel Israel hereby releases Nortel Canada (including all Canadian affiliates, directors, officers, successors and assigns, collectively, the "Canadian Releasees") from any and all claims ( including, without limitation, any claims it may have asserted, alleged or otherwise filed against one or more of the Canadian Releasees in connection with any claims process in connection with Nortel Canada's CCAA proceedings) it ever had, may now have or in the future have against the Canadian Releasees.

**NORTEL NETWORKS LIMITED**

Per: _____

    Name:

    Title:

Per: _____

    Name: CLARKE GLASPOLL

    Title: CONTROLLER

- 2 -

Nortel Networks UK Limited
(in administration)

By: ALAN BLOOM
as Joint Administrator (acting as
agent and without personal
liability)

Nortel Networks Inc.

By: John J. Ray, III
Title: Principal Officer

הנאמן בהקפאת הליכים    ...האת הליכים

Nortel Communications
Holdings (1997) Limited (in
administration)

By: Avi D. Pelossof and Yaron Har-Zvi
Title: Joint Administrators

הנאמן בהקפאת הליכים    ...בהקפאת הליכים

Nortel Networks Israel (Sales
and Marketing) Ltd. (in
administration)

By: Avi D. Pelossof and Yaron Har-Zvi
Title: Joint Administrators

Acknowledged, this ___ day of
April, 2011

Ernst & Young Inc., solely in
its capacity as monitor in the
CCAA proceedings of Nortel
Canada, and not in its personal
capacity

- 2 -

Nortel Networks UK Limited
(in administration)

By:
as Joint Administrator (acting as
agent and without personal
liability)


Nortel Networks Inc.

By:
Title:


Nortel Communications
Holdings (1997) Limited (in
administration)

By:
Title:


Nortel Networks Israel (Sales
and Marketing) Ltd. (in
administration)

By:
Title:


Acknowledged, this ___ day of
April, 2011

Ernst & Young Inc., solely in
its capacity as monitor in the
CCAA proceedings of Nortel
Canada, and not in its personal
capacity