**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------- x
In re:                                               :    Chapter 11
                                                     :
                                                     :    Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                   :
                                                     :    Jointly Administered
            Debtors.                                 :
                                                     :    **Re: Docket No. 5307**
                                                     :
---------------------------------------------------- x

**LIMITED OBJECTION OF NORTEL NETWORKS UK PENSION TRUST LIMITED AND THE BOARD OF THE PENSION PROTECTION FUND TO JOINT MOTION FOR ENTRY OF AN ORDER ESTABLISHING AN ALLOCATION PROTOCOL PURSUANT TO THE INTERIM FUNDING <u>AND SETTLEMENT AGREEMENT, AND FOR RELATED RELIEF</u>**

Nortel Networks UK Pension Trust Limited, as the trustee (the "<u>Trustee</u>") of the Nortel Networks UK Pension Plan (the "<u>NNUK Pension Plan</u>"), and the Board of the Pension Protection Fund (the "<u>PPF</u>," and together with the Trustee, the "<u>U.K. Pension Claimants</u>"), by and through their undersigned counsel, hereby submit this limited objection ("<u>Limited Objection</u>") to the *Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and*

---

[1] The U.S. Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

{BAY:01809441v1}

*for Related Relief* [D.I. 5307] (the "<u>Allocation Motion</u>"),[2] and in support of this Limited Objection, respectfully state as follows:

## LIMITED OBJECTION

1. The U.K. Pension Claimants fully support the efforts to establish "a fully transparent and expeditious process" for the allocation of the Sale Proceeds. As the U.K. Pension Claimants agree, these thorny allocation issues stand as the "primary outstanding impediment" to resolution of both these U.S. chapter 11 cases, and the Nortel insolvency proceedings pending in the U.K., Canada and other parts of the world. As major creditors of many of these global Nortel estates, asserting claims in excess of US$3 billion for the benefit of over 40,000 pensioners whose livelihoods depend on the outcome of these proceedings, the U.K. Pension Claimants have a vital interest in seeing the allocation hearings and related discovery, depositions and examinations (collectively, the "<u>Allocation Proceedings</u>") resolved fully, fairly and as efficiently as possible.

2. The Allocation Protocol proposed by the Movants falls far short of this ideal in at least one crucial respect: it shuts out key constituents like the U.K. Pension Claimants from participating in any capacity in the Allocation Proceedings.[3] Under the proposed Allocation Protocol, participation in the Allocation Proceedings – including the right to be heard on allocation issues, to make written submissions, or to participate in discovery – is unduly and arbitrarily restricted to a self-selected group of participants.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Allocation Motion.

[3] Prior to filing this Limited Objection, on May 12, the U.K. Pension Claimants contacted counsel for the U.S. Debtors to express their interest in participating in the Allocation Proceedings and to request the U.S. Debtors' consent to their participation. The U.K. Pension Claimants indicated that they sought to participate as a major creditor of the various estates, solely with respect to asset allocation issues and not to adjudicate their claims. On May 19, the U.S. Debtors informed the U.K. Pension Claimants that they would not consent to the U.K. Pension Claimants' participation.

This group consists only of the Selling Debtors, the Committee, the Bondholder Group, the Monitor, the Joint Administrators and the Non-Filed Entities (collectively, the "<u>Proposed Participants</u>").

3. By this Limited Objection, to the extent the Court approves an Allocation Protocol, the U.K. Pension Claimants request that they be permitted to participate fully in any Allocation Proceedings.[4] For the avoidance of doubt, although the U.K. Pension Claimants are creditors of the various estates, they are not seeking to have their individual claims litigated as part of the Allocation Proceedings.[5]

4. The exclusion of parties in interest like the U.K. Pension Claimants from this process cannot be reconciled with this Circuit's precedent in favor of ensuring broad participation rights in reorganization cases pursuant to Section 1109(b) of the Bankruptcy Code, which provides that a party in interest "may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). As the Third Circuit recently counseled in <u>In re Global Industrial Technologies, Inc.</u>, as it has on many prior occasions, Section 1109(b) "create[s] a broad right of participation in Chapter 11 cases" and should be "construed broadly to permit parties affected by a chapter 11 proceeding to

---

[4] To be clear, subject to the reservation of rights herein, the U.K. Pension Claimants, at this time, neither support nor oppose the request that the Allocation Proceedings be resolved through joint hearings before the U.S. and Canadian Courts as opposed to other forms of dispute resolution, <u>e.g.</u>, arbitration. If the Court approves an alternative allocation protocol from the one proposed by the Movants, the U.K. Pension Claimants request that they be permitted to participate in any Allocation Proceedings thereunder, whether such proceedings take place before a court, an arbitration panel or any other dispute resolver.

[5] The U.K. Pension Claimants' claims against the various Nortel estates should be determined by the appropriate *fora* at the appropriate time. For instance, as the U.K. Pension Claimants have consistently acknowledged in these proceedings, allowance of their claims against the U.S. Debtors is a matter that will ultimately be determined by this Court. The U.K. Pension Claimants, at this time, take no position as to whether the Allocation Proceedings should include consideration of the intercompany claims asserted by the various estates.

appear and be heard." No. 08-3650, — F.3d —–, 2011 WL 1662792, at *5-6 (3d Cir. May 4, 2011); see also In re Amatex Corp., 755 F.2d 1034, 1042 (3d Cir. 1985) (Section 1109 provides interested parties "the absolute right to be heard and to insure their fair representation" and "continues in [the] tradition" to "encourage and promote greater participation in reorganization cases") (emphasis added).  Under any definition, the U.K. Pension Claimants – as creditors of the U.K., EMEA, U.S. and Canadian estates, based on claims exceeding US$3 billion – qualify as "parties in interest" who are fully entitled to participate in the Allocation Proceedings.  See Global Indus. Techs., — F.3d —–, 2011 WL 1662792 at *5 (adopting Seventh Circuit's definition of a "party in interest" as "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.")

5.  Conspicuously, the Movants offer no justification for selectively including or excluding parties in interest like the U.K. Pension Claimants from this process.  Like the Committee and the Bondholder Group, the U.K. Pension Claimants are major creditors of the various global Nortel estates.[6]  In fact, upon information and belief, the U.K. Pension Claimants are the largest individual creditor of these estates.  Consequently, the conduct and outcome of the Allocation Proceedings are both of vital economic importance to the U.K. Pension Claimants.  Their right to be heard on these matters should be recognized.

6.  The exclusion of the U.K. Pension Claimants cannot be justified on the grounds that they are not officially appointed estate representatives.  The *ad hoc*

---

[6] The Movants concede as much when they describe the mediation as having involved "key creditor constituencies" like the U.K. Pension Claimants and other parties thereto. (Allocation Motion, ¶ 18.)

Bondholder Group is not an official statutory body of either the U.S. or Canadian Debtors' estates. The *ad hoc* Bondholder Group has not even disclosed its membership in these cases. As a member and observer of NNUK's official committee of unsecured creditors which was formed at the creditors' meeting held on March 11, 2009,[7] the U.K. Pension Claimants are well-suited to provide another perspective on the issues underlying the Allocation Proceedings on behalf of the NNUK estate.

7.  Although all of the Proposed Participants "are either signatories to or have rights under the IFSA or the Escrow Agreements" (see Allocation Protocol, at 1 n. 2), this is an inadequate basis for limiting other parties' rights to participate in the Allocation Proceedings for two reasons. First, just as parties cannot waive or confer standing through agreement, parties are unable, through an agreement, to limit standing to only a select group of parties or to restrict the participation rights of other entities who are not even party to the agreement. See In re Nasdaq Market-Makers Antitrust Litig., 176 F.R.D. 99, 103 (S.D.N.Y. 1997) ("[P]arties cannot either waive or confer standing by agreement."); Rosen v. Tenn. Comm'r of Fin. & Admin., 288 F.3d 918, 931 (6th Cir. 2002) ("Parties cannot confer standing purely by agreement, even by agreeing to an agreed order."); Golden v. Gov't of Virgin Islands, Bureau of Internal Rev., 47 F. App'x. 620, 622 (3d Cir. 2002) (stipulation cannot confer standing on a party by conceding to their standing).

8.  Second, the fact that the Proposed Participants decided amongst themselves that they, and they alone, should be the sole parties to the IFSA and the

---

[7] The PPF is a member of the NNUK creditors' committee. In addition, one of the members of the Trustee's Board has been granted observer rights to the meetings of the NNUK creditors' committee.

Escrow Agreements, should not be used as a basis for excluding other key constituents from this important process. This is particularly true because the U.S. and Canadian Debtors acknowledged at the hearing to approve the IFSA, as a result of concerns raised by the U.S. Trustee and creditors, that any agreement they reached on the terms of a proposed Allocation Protocol would nevertheless be subject to review and comment by other parties in interest and approval by the Court.[8]

9. The Movants' attempt to restrict admission to the Allocation Proceedings is, furthermore, inconsistent with prior practice. As a "key creditor constituent" (Allocation Motion ¶ 18), the U.K. Pension Claimants participated fully in the mediation as well as other settlement discussions.[9] They did so in relation to issues that went beyond the mere settlement of their claims, and included the very allocation issues that are at the heart of these proposed Allocation Proceedings. Having participated in these proceedings before, there is no principled reason for excluding the U.K. Pension

---

[8] See June 29, 2009 Hr'g Tr. at 45:4-13 (counsel for Canadian Debtors stating, "I simply want to emphasize again, because that point has been raised [by] a number of the Canadian creditors, that nothing in this agreement is intended to deal with the allocation of funds. That we will be working on some kind of protocol that will absolutely have to be brought back to this Court for approval when we arrive at an agreement as to a protocol to deal with the allocation of funds. And so all the Canadian creditors will have an opportunity to examine that, and to make submissions as necessary.") (emphasis added); 34:15-23 (counsel for U.S. Debtors stating, "[T]he U.S. Trustee has made a request for a clarification, which we've added to the order. The clarification that this order … sets the stage for the parties to come back to these courts with a protocol for approval. And it is the intention of all of the interested parties, the core parties, as we refer to them in the agreement, to come back to both of these courts for approval of that allocation protocol.") (emphasis added).

[9] On October 6, 2010, the U.S. Debtors filed, on an emergency basis, a motion seeking, inter alia, entry of an order appointing the mediator with respect to the sale allocation process [D.I. 4100]. Concerned with the lack of visibility in the mediation process, the U.K. Pension Claimants filed a limited objection on the basis that the requested relief denied significant parties in interest, like the U.K. Pension Claimants, from participating in the mediation, at least as observers. The parties to the mediation, including the various estates, subsequently consented to the U.K. Pension Claimants' inclusion in the mediation. The U.K. Pension Claimants participated fully in the mediation on all of the issues, including as to matters of asset allocation and claims resolution, during both of the mediation sessions in November 2010 and April 2011.

Claimants at this stage. Further settlement and/or mediation discussions amongst the parties are likely to result from the Allocation Proceedings. The U.K. Pension Claimants should be able to participate in this process in light of their participation as a "key creditor constituent".

10.     The Allocation Protocol is deficient in respects additional to the failure to provide for the participation of key constituents like the U.K. Pension Claimants. The Allocation Protocol is barely more than two pages in length. It lacks sufficient clarity or detail to inform parties in interest about the manner in which the Allocation Proceedings will be conducted. Many issues, such as the timing of various events, the number of witnesses or depositions, the conduct of hearings and the form of written submissions, are left for the Courts decide. This begs the question of whether the Movants have truly satisfied their responsibility to provide appropriate notice of the relief which has been requested. The Allocation Protocol is nevertheless completely silent about the interested parties' rights to propose or advocate for or against particular procedures.

11.     Other issues – such as the permissible forms of discovery, the confidentiality of the Allocation Proceedings as well as discovery and written submissions, how disputes will be resolved in the event the U.S. and Canadian Courts do not reach agreement on a given issue, the ability of one Court to provide relief independently of the other, the procedure for appealing from, or requesting reconsideration of, a joint decision on the merits, and many other issues – are simply unaddressed. It is thus unclear how, if at all, the Movants propose these issues to be resolved. Greater clarity and detail on all of the issues identified above must be provided before the stated goal of establishing a "fully transparent and expeditious" allocation

process can be realized.

12. For these reasons, the U.K. Pension Claimants request that, to the extent the Allocation Protocol is approved, they be granted full participation rights in the applicable Allocation Proceedings.[10]

Dated: Wilmington, Delaware
       May 19, 2011

BAYARD, P.A.

*/s/ Justin R. Alberto*
Charlene D. Davis (No. 2336)
Justin Alberto (No. 5126)
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
Tel: (302) 655-5000
Fax: (302) 658-6395
Email: cdavis@bayardlaw.com
       jalberto@bayardlaw.com

-and-

WILLKIE FARR & GALLAGHER LLP
Marc Abrams
Brian E. O'Connor
Sameer Advani
Weston T. Eguchi
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
Fax: (212) 728-8111

*Counsel for Nortel Network UK Pension Trust Limited, as Trustee of Nortel Networks UK Pension Plan, and the Board of the Pension Protection Fund*

---

[10] The U.K. Pension Claimants expressly reserve, and do not waive, all of their rights to raise any issues contained in or related to this Limited Objection, the Allocation Protocol, or the Allocation Motion, including, but not limited to, the right to object to the Allocation Motion or the Allocation Protocol on grounds not specifically raised or addressed herein.