## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| _____ ) | Chapter 11 |
| In re: ) | |
| ) | Case No. 09-10138 (KG) |
| NORTEL NETWORKS INC., *et al.*[1] ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | **Related to D.I. 5459** |
| _____ ) | |

### MOTION OF GENBAND US LLC FOR AN ORDER (I) SHORTENING THE TIME FOR NOTICE OF THE MOTION OF GENBAND US LLC FOR AN ORDER COMPELLING COMPLIANCE WITH SETTLEMENT AGREEMENT AND APPROVING THE SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 9019 AND (II) LIMITING SERVICE OF THE MOTION TO COMPEL AND APPROVE

GENBAND US LLC ("GENBAND"), having filed the *Motion of GENBAND US LLC For An Order Compelling Compliance With Settlement Agreement And Approving Settlement Agreement Pursuant To Bankruptcy Rule 9019* [D.I. 5459] (the "Motion to Compel and Approve"), by and through its undersigned counsel, respectfully moves (the "Motion To Shorten Time" and together with the Motion to Compel and Approve, the "Motions") this Court, pursuant to Rule 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and section 105 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), for the entry of an order (i) shortening the time for notice of the hearing to consider the Motion to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

Compel and Approve so that it may be heard at the joint omnibus hearing scheduled for June 7, 2011 at 9:30 a.m. (Prevailing Eastern Time) (the "Hearing") and (ii) limiting the parties which may be served with the Motion to Compel and Approve.  In support of this Motion To Shorten Time, GENBAND respectfully state as follows:

## JURISDICTION

1.      The Court has jurisdiction to consider this Motion To Shorten Time pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

2.      Pursuant to Rule 2002(a)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1(e) of the Local Rules, parties are required to provide at least twenty-one (21) days notice of motions seeking approval of a settlement or compromise, unless approval of shortened notice is granted by the Court.[2]  For the reasons stated herein, GENBAND requests that the time period for notice of the Motion to Compel and Approve be shortened by two (2) days so that the Motion to Compel and Approve may be heard at the Hearing.  GENBAND also requests that it only be required to serve the Motion to Compel and Approve on (i) the Office of the U.S. Trustee for the District of Delaware, (ii) all parties to the MOU, namely the Debtors, the Monitor, their counsel and the Official Committee of Unsecured Creditors, (iii) the UK Administrator and its counsel, and (iv) all parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

---

[2] In the Motion to Compel and Approve, GENBAND seeks an order approving the settlement described below, pursuant to Bankruptcy Rule 9019.  In the event the Court determines that GENBAND has no standing to seek such relief, GENBAND seeks an order compelling the Debtors to seek approval of the Settlement Agreement.  Shortened notice is not required for the motion to compel component of the Motion to Compel and Approve.

<u>BACKGROUND</u>

**A.    Nortel Enters Bankruptcy**

3.    On January 14, 2009 (the "<u>Petition Date</u>") Nortel Networks Inc. ("<u>NNI</u>") and certain of its affiliates (collectively, the "<u>U.S. Debtors</u>"),[3] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (this "<u>Court</u>" or the "<u>U.S. Court</u>") (hereinafter, the "<u>Chapter 11 Cases</u>"). On the Petition Date, Nortel Networks Corporation ("<u>NNC</u>"), Nortel Networks Limited ("<u>NNL</u>") (together with their affiliates, including the EMEA Debtors (as defined below) and the U.S. Debtors, "<u>Nortel</u>"), and certain of their Canadian affiliates (collectively, the "<u>Canadian Debtors</u>")[4] filed an application with the Ontario Superior Court of Justice (the "<u>Canadian Court</u>" and together with the U.S. Court, the "<u>Courts</u>") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors (collectively, the "<u>Canadian Proceedings</u>") and a Monitor, Ernst & Young Inc. (the "<u>Monitor</u>"), was appointed by the Canadian Court.

4.    On the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "<u>EMEA Debtors</u>")[5] into administration under the

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[4] The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5] The EMEA Debtors include the following entities:  NNUK (in administration), Nortel Networks S.A., Nortel Networks (Ireland) Limited (in administration), Nortel GmbH (in administration), Nortel Networks France S.A.S. (in administration), Nortel Networks Oy (in administration), Nortel Networks Romania SRL (in administration), Nortel Networks AB (in administration), Nortel Networks N.V. (in administration), Nortel Networks S.p.A. (in administration), Nortel Networks B.V. (in administration), Nortel Networks Polska Sp. z.o.o. (in administration), Nortel Networks Hispania, S.A. (in administration), Nortel Networks (Austria) GmbH (in administration), Nortel Networks, s.r.o. (in administration), Nortel Networks Engineering Service Kft (in administration), Nortel Networks

control of individuals from Ernst & Young LLP and Ernst & Young Chartered Accountants (the "UK Administrator").

**B.     GENBAND Purchases Nortel's CVAS Business**

5.      On December 22, 2009, GENBAND agreed to purchase substantially all of the assets relating to Nortel's Carrier Voice over IP and Communications Solutions Business (the "CVAS Business").  This was done pursuant to an Asset Sale Agreement by and among Nortel, GENBAND, and the other Designated Purchasers that became parties thereto, dated December 22, 2009, as amended from time to time (the "Sale Agreement").

6.      This Court approved the sale of the CVAS Business to GENBAND by order dated March 4, 2010 [D.I. 2632].  The Canadian Court likewise approved the sale of the CVAS Business to GENBAND by order dated March 4, 2010.

7.      On May 28, 2010, the Sale Agreement closed.

**C.     Disputes Arise Over Various Matters Under the Sale Agreement**

8.      Subsequent to the closing, GENBAND and Nortel had a disagreement over the "Deferred Profit Amount," as provided in the Sale Agreement.

9.      On November 18, 2010, GENBAND filed the *Motion for Entry of an Order Pursuant to Section 362(d) of the Bankruptcy Code Granting Relief from the Automatic Stay to Compel Arbitration* [D.I. 4347] (the "U.S. Motion to Compel Arbitration"), seeking, *inter alia*, an order requiring the disagreement regarding Deferred Profit Amount under the Sale Agreement to be submitted to arbitration.

10.      On November 17, 2010, the U.S. Debtors filed the *Debtors' Motion for Entry of an Order Enforcing the Order Authorizing the Sale of Certain Assets of the Debtors' Carrier*

---

Portugal S.A. (in administration), Nortel Networks Slovensko (in administration), s.r.o. (in administration) and Nortel Networks International Finance & Holding B.V. (in administration).

*Voice Over IP and Application Solutions Business, and Directing the Release of Certain Escrowed Funds* [D.I. 4345] which motion sought, *inter alia*, a determination that the U.S. Court maintained jurisdiction over the dispute regarding the definition of Deferred Profit Amount (the "Debtors' U.S. Motion").

11.     On or about November 30, 2010 the Canadian Debtors filed a motion with the Canadian Court seeking, *inter alia*, a declaration that the Canadian Court and the U.S. Court have the exclusive authority and jurisdiction to determine the dispute relating to the Deferred Profit Amount (the "Debtors' Canadian Motion").

12.     On or about December 9, 2010, GENBAND filed a motion with the Canadian Court seeking, *inter alia*, an order requiring Nortel to submit the Deferred Profit Amount dispute to arbitration (the "Canadian Motion to Compel Arbitration" and with the U.S. Motion to Compel Arbitration, the Debtors' U.S. Motion, and the Debtors' Canadian Motion, the "Mediated Motions").

13.     On December 15, 2010, the U.S. Court and the Canadian Court held a joint hearing regarding the U.S. Motion to Compel Arbitration and the Canadian Motion to Compel Arbitration.

14.     On January 21, 2011, the U.S. Court denied the U.S. Motion to Compel Arbitration (the "U.S. Order") [D.I. 4737].  On that same date, the Canadian Court denied the Canadian Motion to Compel Arbitration.

15.     GENBAND appealed the U.S. Order pursuant to a Notice of Appeal filed on February 1, 2011 [D.I. 4786] (the "U.S. Appeal").

16.     On March 8, 2011, the U.S. Appeal was docketed in the United States District Court for the District of Delaware.

17.     On February 11, 2011, GENBAND served a notice of motion seeking leave to appeal the Canadian Order (the "Canadian Appeal" and, with the U.S. Appeal, the "Appeals").

**D.      The Parties Engage in a Court-Ordered Mediation and Agree to Settle**

18.     On April 4, 2011, GENBAND, the U.S. Debtors, the Canadian Debtors, the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases, and Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (collectively, the "Mediation Parties") engaged in mandatory mediation (the "Mediation") pursuant to a Standing Order of the U.S. District Court dated July 23, 2004.

19.     After participating in the Mediation and engaging in arms' length negotiations, the Mediation Parties agreed (the "Settlement"), *inter alia*, that: (a) Nortel would pay GENBAND $26,920,863, subject to verification of certain amounts;[6] (b) the parties would exchange full releases with respect to the disagreements that were raised in the motions; (c) Nortel's entry into the Settlement would be subject to the receipt of approvals from all Nortel Sellers (as defined in the Sale Agreement) and approval by the Courts; and (d) the parties would use their "best efforts to document and give effect to" the terms of the MOU "as soon as reasonably practicable."  The parties agreed that the terms of the MOU would be memorialized in a settlement agreement (the "Settlement Agreement")

20.     The requirement that the parties use their best efforts to effect the Settlement "as soon as reasonably practicable" was a critical element of the Settlement, as part of the reason GENBAND agreed to accept a discount on its claim was the time value of money that would be lost if GENBAND had been forced to litigate.

---

[6] This amount represents a settlement of all open disputes regarding the Deferred Profit Amount, and other issues. After verification of certain amounts, and pursuant to the Post-Close Credit Memo Issue (as defined below), this number was reduced to $24,905,244.

21.     On April 4, 2011, at the conclusion of the Mediation, the Mediation Parties memorialized the Settlement in the MOU.  At that time, the Mediation Parties discussed the proposed timeline, including the goal that Nortel would provide payment to GENBAND pursuant to the Settlement by the end of May 2011.

**E.      The Parties Negotiate and Memorialize the Settlement Agreement**

22.     On April 6, 2011, in furtherance of the requirement in the MOU that the parties use their best efforts to memorialize the terms of the MOU as soon as reasonably practicable, GENBAND requested that Nortel provide a first draft of the Settlement Agreement.

23.     On April 19, 2011, Nortel provided the first draft of the Settlement Agreement.

24.     On April 26, 2011, GENBAND's counsel provided its comments to Nortel's first draft of the Settlement Agreement.

25.     On April 27, 2011, counsel for GENBAND and Nortel had a conference call to discuss the draft Settlement Agreement.  During this conference call, GENBAND stressed that time was of the essence, and requested a detailed timeline that indicated when the Courts must be notified such that the Settlement could be approved by the Courts as soon as possible.

26.     On April 29, 2011 and May 2, 2011, counsel for GENBAND and Nortel exchanged correspondence regarding the wording of specific sections of the Settlement Agreement.  By this time the parties had limited their differences to only three open items.  The first was that Nortel sought a release from a party that was not a party to the Sale Agreement or the disputes raised in the Mediated Motions (the "Non-Party Release Issue").  The second disagreement pertained to the amount of the Settlement, particularly with regard to post-close credit memorandums (the "Post-Close Credit Memo Issue"), which, if Nortel's position were correct, would decrease the amount of the payment by Nortel to GENBAND by over $2 million. The third open issue pertained to the wording of certain releases with regards to Canadian taxes.

27.     On May 6, 2011, Nortel sent a new draft of the Settlement Agreement which confirmed that, despite slight wording differences regarding the aforementioned Canadian taxes, the only remaining substantive issues left to be resolved were the Non-Party Release Issue and the Post-Close Credit Memo Issue.

28.     On May 6, 2011, counsel for GENBAND spoke with counsel for Nortel regarding the deadline for filing a motion pursuant to Bankruptcy Rule seeking approval of the Settlement Agreement (the "9019 Motion") so that the 9019 Motion may be heard by the Courts at the next joint omnibus hearing scheduled for June 7, 2011.  Counsel for Nortel stated that the 9019 Motion had to be filed by May 17, 2011, twenty-one (21) days prior to the June 7, 2011 joint omnibus hearing.  Counsel for GENBAND specifically requested that Nortel cooperate in filing the 9019 Motion by May 17, 2011.  That deadline was eleven days away at that time, and the Settlement Agreement was fully negotiated save for the two open issues.

29.     On May 10, 2011, counsel for GENBAND and counsel for Nortel participated in a conference call during which the parties attempted to resolve the Non-Party Release Issue and the Post-Close Credit Memo Issue.  Afterwards, counsel for GENBAND sent a new version of the Settlement Agreement to counsel for Nortel that confirmed that only those issues remained to be resolved.  All other issues, as well as the form and wording of the document, were resolved. At this time, counsel for GENBAND again asked that the parties prepare such that the 9019 Motion would be filed on or before May 17, 2011, so that the Courts could consider the Settlement Agreement during the June 7, 2011 joint omnibus hearing.

30.     On May 11, 2011, counsel for the UK Administrator sent an email to GENBAND regarding a tax issue that was unrelated to the Settlement Agreement, the MOU, and all the negotiations over the five weeks since the mediation (the "Unrelated Tax Issue").  The email did

not state that the UK Administrator would withhold approval of the Settlement Agreement or of filing the 9019 Motion due to the Unrelated Tax Issue.

31.     On May 12, 2011, counsel for Nortel circulated a new version of the Settlement Agreement which demonstrated again that the only two issues left for resolution were the Non-Party Release Issue and the Post-Close Credit Memo Issue.  During a conference call on that day, Nortel proposed that the parties resolve the Non-Party Release Issue by instead providing a side letter from the non-party affirming that it was not a party to the dispute and did not have any of the claims covered by the Settlement Agreement.  The UK Administrator participated on that call, on which counsel for GENBAND again reiterated its insistence that the 9019 Motion would be filed on or before May 17, 2011.

32.     On May 13, 2011, counsel for GENBAND sent counsel for Nortel minor and insubstantial changes to the Settlement Agreement, noted that only the Non-Party Release Issue and the Post-Close Credit Memo Issue remained outstanding, and requested that Nortel provide a draft of the 9019 Motion for GENBAND's review.

**F.      The Parties Reach Agreement on the Only Two Remaining Issues**

33.     On May 16, 2011, GENBAND accepted Nortel's proposal regarding both the Post-Close Credit Memo Issue and the Non-Party Release Issue, agreeing that Nortel would instead receive a letter from the non-party affirming that it did not have the right to assert any of the claims covered by the Settlement Agreement.  (The parties have since agreed on the wording of the letter to be provided from the non-party.)

34.     On May 17, 2011, counsel for GENBAND circulated a revised draft of the Settlement Agreement that indicated its agreement with Nortel; stated that all open issues,

including the Non-Party Release Issue and the Post-Close Credit Memo Issue, were resolved; and requested that Nortel file the 9019 Motion promptly.

**G.    Hours Before the Filing Deadline, Nortel Requests Additional Changes to the Settlement Agreement**

35.    On the morning of May 17, 2011, counsel for Nortel requested that additional language be added to the Settlement Agreement regarding a point that had not previously been discussed.  Despite the timing of the request, GENBAND nonetheless in good faith agreed to consider it and proposed language to counsel for Nortel.

36.    That afternoon, mere hours before the filing deadline, counsel for Nortel requested further changes to the proposed language.  Even though the new terms were not required under the MOU, GENBAND nonetheless agreed to consider the request and proposed some additional language to address it.[7]

**H.    On the Day the Papers Are to Be Filed, the UK Administrator Voices an Objection Unrelated to the Settlement, Which Prevents the Filing of the 9019 Motion**

37.    At 4:07 p.m. on May 17, 2011, counsel for the UK Administrator sent an email to counsel for GENBAND and counsel for Debtors stating that because of the Unrelated Tax Issue the UK Administrator would not approve the Settlement Agreement or the filing of the 9019 Motion.

38.    Less than two hours later, and with ample time left to file the 9019 Motion before the filing deadline, GENBAND directly responded to the UK Administrator and represented that

---

[7] Nortel's request on May 17, 2011 was that the Settlement Agreement include a representation that no party to the Settlement Agreement had assigned any Claims (as defined in the Settlement Agreement).  This issue had not been raised during the preceding six weeks and was raised after the substantive terms of the Settlement Agreement were already agreed to by the parties.  Notwithstanding the fact that there is an operative and agreed to form of Settlement Agreement, GENBAND remains willing to discuss this addition, although such discussion need not delay this process any further.

the Unrelated Tax Issue was resolved because the payments requested had either already been

paid, or had been approved for payment by GENBAND.

39.    GENBAND received no response from counsel for the UK Administrator on the

date of the filing deadline, and the filing deadline was missed.

**I.    GENBAND Requests that Debtors File the 9019 Motion and Seek an Order to Shorten Time, but Debtors Refuse Pending Approval by the UK Administrator**

40.    On May 17, 2011, GENBAND sought confirmation from the UK Administrator

that there were no longer any open issues and that it had no objection to filing the 9019 Motion.

41.    On the afternoon of May 18, 2011, counsel for the UK Administrator stated that

the UK Administrator had not been made aware of the urgency of the need to file the 9019

Motion until May 17, 2011, and as such was not yet in a position to approve the filing.[8]  Counsel

for the UK Administrator stated that the UK Administrator was considering the Settlement

Agreement and would revert "in due course."

42.    Despite the parties' agreement in the MOU to "use their best efforts to document

and give effect to [the terms of the MOU] as soon as reasonably practicable," Nortel did not file

the 9019 Motion because the UK Administrator had not yet indicated its approval (although it

had not given any reason for objecting) and because the precise language of the side letter to be

received from the non-party had not yet been finalized.

43.    On May 19, 2011, the parties agreed upon the precise language of the side letter

to be received from the non-party.  At that point, the only thing preventing the filing of the 9019

---

[8] As noted above, GENBAND throughout the process had made clear its desire to have the necessary papers filed by May 17, 2011 so that the matter could be heard at the June 7, 2011 omnibus hearing.  The various constituencies have presumably been in the loop on all the drafts of the Settlement Agreement that had been submitted to GENBAND on behalf of the Debtors over the preceding six weeks, given Nortel's obligation to use its best efforts to effectuate the settlement and obtain the necessary approvals "as soon as reasonably practicable."

Motion (along with a motion to shorten time) was the fact that the UK Administrator had not provided its affirmative approval (although it also had not stated any reason for objecting).

**J.      The UK Administrator Agrees to the Terms of the Settlement Agreement, But States that Full Approval Will Not Come This Week**

44.      At 2:25 p.m. on Friday, May 20, 2011, counsel for the UK Administrator stated that the UK Administrator was in agreement with the commercial terms of the Settlement and the side letter.  However, counsel for the UK Administrator stated that it had not at that time received comment on the commercial terms of the documents from entities not under the control of the UK Administrator, in France, Israel, and Russia, and that accordingly full EMEA sign-off on the documents would not come this week.

**BASIS FOR THE RELIEF REQUESTED**

45.      GENBAND submits that there is sufficient cause to justify shortening the notice period for the hearing on approval of the relief requested in the Motion to Compel and Approve and for limiting notice of such motion so that it is provided to (i) the Office of the U.S. Trustee for the District of Delaware, (ii) all parties to the MOU, namely the Debtors, the Monitor, their counsel and the Official Committee of Unsecured Creditors, (iii) the UK Administrator and its counsel, and (iv) all parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

46.      Pursuant to the terms of the MOU, the parties are to "use their best efforts to document and give effect to these terms as soon as reasonably practicable."  At the time of the MOU, it was contemplated that this would be done by the end of May.  However, as detailed above, GENBAND has been met with an unending stream of unjustified delay tactics.

47.      To summarize, the Debtors and its affiliates delayed finalizing the Settlement Agreement for over six weeks—first by dragging their feet on the documents, and then by

issuing a series of demands for matters that were not provided for in the MOU. Then, after the parties finally arrived at a fully negotiated Settlement Agreement, which the parties had agreed would be done on or about May 27, 2011 so it could be presented to the Court at the Hearing, the Debtors and its affiliates once again elected to continue to delay. The day the 9019 Motion was to be filed, May 17, 2011, the Debtors asked for new terms to be added to the Settlement Agreement that had never been requested before. Despite the last-minute request, and even though the MOU prohibited introduction of these new terms, GENBAND nonetheless agreed to consider the request—and even proposed some additional language to address it. However, despite their affirmative promise to use their "best efforts" to give effect to the MOU "as soon as reasonably practicable," the Debtors instead demanded further changes—at 3:06 p.m. Then, at 4:07 p.m., the UK Administrator announced that because of a completely unrelated dispute about tax issues, they were "not in a position [to] approve the [Settlement Agreement]" or the 9019 Motion that would be presented to this Court seeking approval of the Settlement Agreement. The UK Administrator also for the first time demanded that "when resolved," the tax issue "be addressed as part of the [Settlement Agreement]"—a document that had absolutely nothing to do with the tax issues in question, and which had been the subject of negotiations for over a month. Within two hours of receiving that last-minute bombshell, GENBAND confirmed in writing to the UK Administrator that all of the taxes at issue had either been paid already or were in the process of being paid. On May 20, 2011, counsel for the UK Administrator stated that the UK Administrator is in agreement with the commercial terms of the Settlement Agreement, but that because it has not received comment on the commercial terms of the documents from entities in France, Israel, and Russia, full sign-off by its constituencies will not occur this week.

48.    Because of this, notwithstanding the terms of the MOU, Nortel and its affiliates refuse to submit the 9019 Motion and seek approval of the Settlement Agreement at the Hearing.

49.    GENBAND submits that the process has been delayed long enough.  GENBAND bargained for a fast process.  That was a critical element of the deal.  The parties have been discussing this for six weeks.  The documents have been finalized.  No substantive objections are outstanding.  GENBAND should not have to wait any longer at this point.  If any party wishes to raise a substantive objection to the Settlement Agreement, it can and should be raised in response to the Motion to Compel and Approve, which GENBAND has diligently and hastily prepared.

50.    The Motion to Compel and Approve should be heard at the Hearing since that is what the parties to the MOU agreed upon.  Moreover, the Hearing is, upon information and belief, the only upcoming joint hearing with the Canadian Court and the Settlement Agreement must be approved by both Courts.  Allowing the Motion to Compel and Approve to be heard at the Hearing will avoid this Court and the Canadian Court having to schedule another joint hearing on an expedited basis.  In addition, the Motion to Compel and Approve was only filed two (2) days after deadline provided for by Rule 2002.  Accordingly, parties in interest will still have sufficient time to review and respond to it.  Finally, if the Motion to Compel and Approve is not heard at the Hearing, GENBAND will be prejudice and not receive the benefit of its bargain.  The Debtors should not be rewarded for the delay tactics they and/or their counsel have engaged in.

51.    GENBAND should also not be required to serve the Motion to Compel and Approve on anyone other than (i) the Office of the U.S. Trustee for the District of Delaware, (ii) all parties to the MOU, namely the Debtors, the Monitor, their counsel and the Official Committee of Unsecured Creditors, (iii) the UK Administrator and its counsel, and (iv) all

parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. The only other parties that would arguably be entitled to notice of the Motion to Compel and Approve would be the Debtors' affiliates that are a party to the Settlement Agreement. However, upon information and belief, none have an objection to the Settlement Agreement and all are foreign entities for which GENBAND does not have an address.  While GENBAND is in the process of obtaining a proper service address for each of these signatories, GENBAND believes that since they are affiliates of the Debtors, service on the Debtors and their counsel should be sufficient.  After all, the Debtors have been coordinating their participation in the settlement discussions.

52.    Based on the foregoing, GENBAND submits that sufficient cause exists for granting the Motion to Shorten Time and, further, that granting the Motion to Shorten Time will not prejudice any parties in interest, including the Debtors.

WHEREFORE, GENBAND respectfully request that the Court enter the proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested in the Motion to Shorten Time and such other and further relief as may be just and proper.

Dated:  May 20, 2010                    Respectfully submitted,
        Wilmington, Delaware


                                        *Michael R. Lastowski*
                                        Michael R. Lastowski (No. 3892)
                                        Sommer L. Ross (No. 4598)
                                        DUANE MORRIS, LLP
                                        222 Delaware Avenue, Suite 1600
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 657-4900
                                        Facsimile: (302) 657-4901
                                        E-mail:    mlastowski@duanemorris.com
                                                   slross@duanemorris.com

                                        *Counsel for GENBAND US LLC*

**Exhibit A**
**Proposed Form of Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

_____  )
                                        )    Chapter 11
In re:                                  )
                                        )    Case No. 09-10138 (KG)
NORTEL NETWORKS INC., *et al.*[1]       )
                                        )    Jointly Administered
         Debtors.                       )
                                        )    **Related to D.I. 5459 and _____**
_____  )

### ORDER GRANTING MOTION OF GENBAND US LLC FOR AN ORDER (I) SHORTENING THE TIME FOR NOTICE OF THE MOTION OF GENBAND US LLC FOR AN ORDER COMPELLING COMPLIANCE WITH SETTLEMENT AGREEMENT AND APPROVING THE SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 9019 AND (II) LIMITING SERVICE OF THE MOTION TO COMPEL AND APPROVE

Upon consideration of the motion (the "Motion To Shorten Time")[2] filed by GENBAND US LLC ("GENBAND") for entry of an order providing that the applicable notice period for the relief requested in the *Motion Of GENBAND US LLC For An Order Compelling Compliance With Settlement Agreement And Approving Settlement Agreement Pursuant To Bankruptcy Rule 9019* [Docket No. 5459] (the "Motion to Compel and Approve"); and the Court having determined that granting the relief requested in the Motion To Shorten Time is appropriate; and after due deliberation and sufficient cause appearing therefor, it is hereby

1.    **ORDERED**, that the Motion To Shorten Time is granted; and it is further

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2] Capitalized terms not defined herein shall have the meanings given to them in the Motion To Shorten Time.

2.     **ORDERED**, that the Motion to Compel and Approve shall be heard at the Hearing on June 7, 2011 at 9:30 a.m. (ET) and any objections to the relief requested in the Motion to Compel and Approve shall be raised with the Court on or before June 1, 2011; and it is further

3.     **ORDERED**, that GENBAND is only required to serve the Motion to Compel and Approve on (i) the Office of the U.S. Trustee for the District of Delaware, (ii) all parties to the MOU, namely the Debtors, the Monitor, their counsel and the Official Committee of Unsecured Creditors, (iii) the UK Administrator and their counsel, and (iv) all parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.   The Debtors shall be responsible for serving the Motion to Compel and Approve on any other signatory to the Settlement Agreement; and it is further

4.     **ORDERED**, that this Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated: May_____, 2011
      Wilmington, Delaware

                                     _____
                                     Kevin Gross
                                     United States Bankruptcy Judge