## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS INC., *et al.* | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Objection Deadline: May 31, 2011 at 4:00 p.m. |
| | ) | Related to Docket Nos. 5359, 5202 |
| | ) | |

## NOKIA CORPORATION'S OBJECTION TO
## REJECTION OF UNKNOWN LICENSES

Nokia Corporation and its affiliates (collectively, **"Nokia"**) file this license rejection objection (the **"Objection"**) as required by the Known License Notices[1] received by Nokia and respectfully show the Court as follows:

### I.  Background

1.      On May 2, 2011, this Court entered its *Order (A) Authorizing Debtors' Entry into the Stalking Horse Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures and Bid Protections, (C) Approving the Notice Procedures and the Assumption and Assignment Procedures, (D) Approving the License Rejection Procedures, (E) Approving a Side Agreement, (F) Authorizing the Filing of Certain Documents Under Seal and (G) Setting a Date for the Sale Hearing* [Docket No. 5359] (the **"Sale Procedures Order"**).

2.      The Sale Procedures Order approved, among other things, the **"License Rejection Procedures"** set forth in the *Motion For Orders (I)(A) Authorizing Debtors' Entry Into The Stalking Horse Asset Sale Agreement, (B) Authorizing And Approving The Bidding Procedures And Bid Protections, (C) Approving The Notice Procedures And The Assumption And Assignment Procedures, (D) Approving The License Rejection Procedures, (E) Approving A Side*

---

[1]  Capitalized terms not defined in this Objection have the meaning given in the Sales Procedures Order.

*Agreement, (F) Authorizing The Filing Of Certain Documents Under Seal And (G) Setting A*

*Date For The Sale Hearing And (II) Authorizing And Approving (A) The Sale Of Certain Patents*

*And Related Assets Free And Clear Of All Claims And Interests, (B) The Assumption And*

*Assignment Of Certain Executory Contracts, (C) The Rejection Of Certain Patent Licenses And*

*(D) The License Non-Assignment And Non-Renewal Protections* [Docket No. 5202] (the "**Sale**

**Motion**").

3.      The License Rejection Procedures authorize the Nortel Debtors in this case to

reject, pursuant to section 365 of the Bankruptcy Code, effective as of and conditioned on the occurrence of the Closing, any pre-petition Contract pursuant to which any Debtor is a party and pursuant to which such Debtor grants a license under the Transferred Patents, Specified UK Patents or Jointly Owned Patents, other than (i) the Scheduled Licenses, (ii) the Commercial Licenses, (iii) the Disclosed Intercompany Licenses (as defined in the Stalking Horse Agreement) and (iv) any intercompany contract, arrangement or understanding that is not a Disclosed Intercompany License but that is in effect and that is similar in kind to the Disclosed Intercompany Licenses. . . .

Sale Motion at 22.

## II.  Objection to Rejection of Unknown Licenses

4.      Nokia received four separate Known License Notices (the "**Notices to Nokia**").

The Notices to Nokia gave notice of Nortel's intent to reject any Unknown Licenses.

5.      The following non-exhaustive list of license agreements (collectively, the

"**Unknown Nokia Licenses**") were not scheduled in the Notices to Nokia:

(i) The Consortium Agreement for FP5 Project SPEECON, dated December 8, 1999, between Matra Nortel Communications and Nokia Corporation, among others;

(ii) The Interoperability Frame Agreement, dated October 23, 2007, between Nokia Corporation and Nortel Networks Limited;

(iii) The Integrated Projects' Consortium Agreement for the Wireless World Initiative WWI Winner Phase 2 IPCA: Part 1, dated September 30, 2005, between Nokia Corporation and Nortel Networks UK Limited; and

(iv) The Integrated Projects' Consortium Agreement for the Wireless World Initiative WWI Ambient Networks Phase 2 IPCA: Part I, Revision 1, dated October 3, 2005, between Nokia Corporation and Nortel Networks SA.

6.      The Nortel counterparties to the Unknown Nokia Licenses do not appear to be named Debtors in this Court. However, one of the Notices to Nokia did schedule another license agreement between Matra Nortel Communications ("**Matra**") and Nokia. Matra is not a Debtor in this Court, and upon information and belief, is an entity organized in France.

7.      Accordingly, out of an abundance of caution, Nokia objects to any rejection or attempted rejection of the Unknown Nokia Licenses by any of the named Debtors in this case, and Nokia requests that any Court order approving the sale of the patent assets explicitly state that the sale will not affect or otherwise impair license agreements with any Nortel company or affiliate that is not a Debtor in this Court.

8.      Nokia also objects to any rejection or attempted rejection of any SSO Commitments (as defined below) to the extent that any SSO Commitments are, or may be asserted to be, Unknown Licenses.

9.      Finally, on the cover page to the schedule of one of the four Notices to Nokia, Nortel stated that the attached license agreement did not have any amendments. However, the license agreement attached - the Bluetooth Adopters Agreement, dated January 20, 1999 - includes a "Bluetooth Early Adopter Amendment." Accordingly, out of an abundance of caution, Nokia objects to any rejection or attempted rejection of this amendment.

### III. Objection to any Sale Free and Clear of the SSO Commitments

10.      Nokia also objects to the Sale Motion to the extent Nortel and/or its affiliates seek to sell their patent assets free and clear of the numerous and enforceable obligations, promises, declarations, and commitments, including, without limitation, obligations to disclose or identify patents or intellectual property (each, a "**SSO Commitments**"), that they have made or should

have made to various standard-setting bodies or industry groups (sometimes referred to as
standard setting organizations ("**SSO**")).    Nokia is aware that Nortel has made SSO
Commitments to at least the following non-exhaustive list of SSOs:

> (i) The Third Generation Partnership Project ("**3GPP**") through the European
> Telecommunications Standard Institute ("**ETSI**"), including standards relating to
> GSM, WCDMA, and LTE;

> (ii) The Third Generation Partnership Project 2 ("**3GGP2**") through the
> Telecommunications Industry Association ("**TIA**");

> (iii) The Internet Engineering Task Force ("**IETF**");

> (iv) The Alliance for Telecommunications Industry Solutions ("**ATIS**");

> (vi) Bluetooth Special Interest Group ("**Bluetooth SIG**"); and

> (vii) The Institute of Electrical and Electronics Engineers ("**IEEE**").

11.    In the Asset Purchase Agreement attached to the Sale Motion, Nortel seeks to sell

its patent assets "free and clear of all Liens and Claims in the U.S. Chapter 11 cases (*other than*

*Permitted Encumbrances. . . .*" Sale Motion, Exhibit A, § 2.1.1 (emphasis added).    A "Permitted

Encumbrance" is defined to include:

> the promises, declarations and commitments granted, made or committed in
> writing by the Sellers to standard-setting bodies or industry groups concerning the
> Transferred Patents, Purchased Specified UK Patents or Undisclosed Patent
> Interests, solely to the extent such standard-setting bodies or industry groups,
> together with the title and number of the standard and the Transferred Patents to
> which such promises, declarations or commitments apply (in each case, to the
> extent identified in the respective promise, declaration or commitment) are *listed*
> *in Section 1.1(g) of the Sellers Disclosure Schedule*, and (y) the commitments
> concerning the Transferred Patents, Purchased Specified UK Patents or
> Undisclosed Patent Interests granted in writing by the Sellers pursuant to the
> membership agreements, by-laws or policies of standard setting bodies or industry
> groups in which Sellers were participants, solely to the extent such standard-
> setting bodies or industry groups and the related membership agreements, by-laws
> or policies, pursuant to which such commitments were granted are *listed in*
> *Section 1.1(g) of the Sellers Disclosure Schedule*, and solely to the extent the
> Sellers are bound by such standard setting bodies' or industry groups'
> membership agreements, by-laws or policies to bind the Purchaser to such
> commitments.

Sale Motion, Exhibit A, at 16 (emphasis added).

12.      In other words, if an SSO, the title and number of the standard and the Transferred Patents, or the SSO's membership agreements, by-laws or policies, are listed in Section 1.1(g) of the Sellers Disclosure Schedule (each, a "**Scheduled SSO Commitment**"), then the Scheduled SSO Commitment is a Permitted Encumbrance.  But if an SSO, the title and number of the standard and the Transferred Patents, or the SSO's membership agreements, by-laws or policies, are *not* listed in Section 1.1(g) of the Sellers Disclosure Schedule (each, an "**Unscheduled SSO Commitments**"), then the Unscheduled SSO Commitment is *not* a Permitted Encumbrance and the sale will be free and clear of them.

13.      Upon information and belief, not all of the SSO Commitments are scheduled SSO Commitments.  Nortel's SSO Commitments to ATIS appear to be at least one undisclosed example.  But regardless of whether Nortel has failed to properly schedule all of its SSO Commitments, Nokia objects to the Sale Motion to the extent it seeks a Court order approving the sale of the patent assets to Ranger, Inc. or any other successful bidder "free and clear" of *any* SSO Commitments made by any Nortel entity to *any* SSOs.  Nokia and other industry members have relied on and will continue to rely on these SSO Commitments, which are enforceable against Nortel and its affiliates, and which must remain enforceable against the purchasers of these patent assets.  Accordingly, to the extent the Court approves the sale of the patent assets to Ranger, Inc. or any other successful bidder, the patent assets must be sold subject to all existing SSO Commitments.  This requirement should be included in the final executed version of any asset purchase agreement and in the order approving the Sale Motion.

WHEREFORE, Nokia respectfully requests that the Court modify the proposed order attached as Exhibit D to the Sale Motion to provide that (i) the sale to Ranger, Inc. or other

successful bidder will not affect or in any way impair license agreements with Nortel entities that are not U.S. Debtors and (2) the sale to Ranger or another successful bidder will be subject to Nortel's enforceable SSO Commitments.

Dated this 31st day of May, 2011.

WERB & SULLIVAN

/s/ Duane D. Werb
Duane D. Werb (No. 1042)
Matthew P. Austria (No. 4827)
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, Delaware  19801
Telephone: (302) 652-1100
Facsimile: (302) 652-1111

-and-

ALSTON & BIRD LLP

John C. Weitnauer, Esq. (*pro hac vice* forthcoming)
William S. Sugden, Esq. (*pro hac vice* forthcoming)
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

*Counsel for Nokia Corporation*