IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
| | |
|---|---|
| In Re: | ) |
| | ) Chapter 11 |
| Nortel Networks Inc., *et al.*, | ) |
| | ) Case No. 09-10138 (KG) |
| Debtors. | ) |
| | ) (Jointly Administered) |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## LIMITED RESPONSE OF THE FOURTH ESTATE WITH RESPECT TO DEBTORS' JOINT MOTION FOR ENTRY OF AN ORDER ESTABLISHING AN ALLOCATION PROTOCOL PURSUANT TO THE INTERIM FUNDING AND SETTLEMENT AGREEMENT, AND FOR RELATED RELIEF [DOCKET NO. 5307]

Through their undersigned counsel, John Doolittle, Senior Vice President of Corporate Service and Chief Financial Officer of Nortel Networks Corporation, Allan Bifield, Chief Financial Officer of Nortel Business Services, and Anna Ventresca, General Counsel – Corporate, Corporate Secretary and Chief Compliance Officer of Nortel Networks Corporation, in each case, solely in their capacities as directors, officers and agents of certain subsidiaries of Nortel Networks Corporation (collectively, the "**Fourth Estate Directors**"), for themselves, and on behalf of the Fourth Estate Subsidiaries (defined below, and together with the Fourth Estate Directors, the "**Fourth Estate**"), hereby submit this Limited Response Of The Fourth Estate With Respect To Debtors' Joint Motion For Entry Of An Order Establishing An Allocation Protocol Pursuant To The Interim Funding And Settlement Agreement, And For Related Relief [Docket No. 5307] (the "**U.S. Allocation Protocol Motion**"), filed in the above-captioned jointly administered cases. In support thereof, the Fourth Estate Directors hereby state as follows (terms used herein but not defined shall have the meaning given such terms in the U.S. Allocation Protocol Motion):

700148295

## BACKGROUND

1.      On January 14, 2009 (the "**Petition Date**"), (i) the U.S. Debtors[1] filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code in the U.S. Court (the "**U.S.

Proceedings**"), (ii) the Canadian Debtors commenced the Canadian Proceedings and the Monitor

was appointed by the Canadian Court and (iii) the High Court of England and Wales placed the

EMEA Debtors into the English Proceedings under the control of Ernst & Young LLP (the

Canadian Proceedings, the U.S. Proceedings and the English Proceedings are collectively

referred to herein as the "**Creditor Protection Proceedings**," and the U.S. Debtors, the

Canadian Debtors, and the EMEA Debtors are collectively referred to herein as the "**Three

Estates**").

2.      The Fourth Estate Subsidiaries include: (A)(i) Nortel Networks (Asia) Limited;

(ii) Nortel Networks Australia Pty Limited; (iii) Nortel Networks (India) Private Limited; (iv) PT

Nortel Networks Indonesia; (v) Nortel Networks Malaysia Sdn. Bhd.; (vi) Nortel Networks New

Zealand Limited; (vii) Nortel Networks Singapore Pte. Ltd.; (viii) Nortel Networks (Thailand)

Ltd.; (ix) Nortel Vietnam Limited; (x) Nortel Networks (China) Limited; and (xi) Nortel

Networks Telecommunications Equipment (Shanghai) Co. (collectively, the "**APAC Entities**")

and (B)(i) Nortel Networks Chile S.A.; (ii) Nortel Networks del Ecuador S.A.; (iii) Nortel

Networks de Mexico S.A. de C.V.; (iv) Nortel Networks del Uruguay S.A.; and (v) Nortel de

Mexico, S. de R.L. de C.V. (collectively, the "**CALA Entities**", and together with the APAC

---

[1]      Other than Nortel Networks (CALA) Inc., which filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009.

700148295

Entities, the "**Fourth Estate Subsidiaries**").[2] The Fourth Estate Subsidiaries are not subject to any creditor protection proceedings in any jurisdiction.

3.      On March 10, 2010, (a) the U.S. Debtors filed their Motion Pursuant To 11 U.S.C. §§ 105(A) And 363 For An Order (I) Authorizing And Approving Nortel Network Inc.'s Entry Into The Cascading Directors' Trust Indenture, (II) Authorizing And Approving The Related Side Agreement And (III) Granting Related Relief [Docket No. 2683] (the "**U.S. Indemnity Trust Motion**"), and (b) a related motion was filed in the Canadian Proceedings (the "**Canadian Indemnity Trust Motion**").

4.      As noted in Paragraph 17 of the Debtors' U.S. Indemnity Trust Motion, "in order to sell Nortel's businesses on a going concern basis and to maximize the recoveries of Nortel's creditors, it is important that all relevant Nortel entities, including those entities that have not filed for any creditor protection proceedings [i.e., the Fourth Estate Subsidiaries, among others], participate in the Global Sales."

5.      Accordingly, Nortel entities that are parties to the Canadian Proceedings and U.S. Proceedings agreed to the election and appointment of the Fourth Estate Directors to serve as directors, officers or agents of the Fourth Estate Subsidiaries to facilitate their participation in the sale processes, as well as the Fourth Estate Subsidiaries' orderly wind-down and dissolution.  In connection therewith, the U.S. Indemnity Trust Motion sought authority to enter into certain agreements to establish and contribute to an indemnity trust to protect the Fourth Estate Directors from potential claims arising from or based on their service as directors, officers, or agents of the Fourth Estate Subsidiaries, among others (U.S. Indemnity Trust Motion, ¶¶15-20).

---

[2]      The list of Fourth Estate Subsidiaries may from time to time be supplemented.

700148295

6.     On March 31, 2010, (a) the U.S. Indemnity Trust Motion was approved by the U.S. Court [Docket No. 2815] and (b) the Canadian Indemnity Trust Motion was approved by the Canadian Court.

7.     On April 25, 2011, (a) the U.S. Debtors and the Official Committee of Unsecured Creditors ( the "**Committee**" and together with the U.S. Debtors, the "**Movants**") filed the U.S. Allocation Protocol Motion, and (b) the Movants filed an analogous motion in the Canadian Court (the "**Canadian Allocation Protocol Motion**", and together with the U.S. Allocation Protocol Motion, the "**Allocation Protocol Motions**").

8.     As noted in the U.S. Allocation Protocol Motion, and working in concert with the Fourth Estate Directors and Fourth Estate Subsidiaries, Nortel has sold all of its businesses (including businesses and/or assets of the Fourth Estate Subsidiaries) to various purchasers, and the Sale Proceeds resulting from the Sale Transactions have been held in escrow pending their allocation among the Three Estates and the Fourth Estate pursuant to the Escrow Agreements (U.S. Allocation Protocol Motion, ¶¶9-16).

## LIMITED RESPONSE

9.     The Fourth Estate supports the assumption of jurisdiction by the U.S. Court and the Canadian Court over the process of determining the allocation of Sale Proceeds among the interested parties, and does not support the submission of such process to arbitration.  However, in order for the Fourth Estate Directors to comply with their fiduciary obligations and the applicable law of the jurisdictions in which the Fourth Estate Subsidiaries are organized, including but not limited to applicable debtor/creditor law, the Fourth Estate urges that the U.S. Court and Canadian Court take notice, whether or not the Allocation Protocol Motions are

700148295

approved, that prompt allocation of Sale Proceeds due to the Fourth Estate Subsidiaries, and

remittance of such amounts to the Fourth Estate Subsidiaries, in each case, as expeditiously as

possible and independently of the process of resolving the allocation of Sale Proceeds among the

Three Estates and the many legal and business issues among them), is in the best interests of

each of the Three Estates and the Fourth Estate.

10.    The Fourth Estate Subsidiaries are not subject to any creditor protection

proceedings, and the Fourth Estate Directors, consistent with their fiduciary obligations, will

need to undertake the process of dissolution of the Fourth Estate Subsidiaries in accordance with

the laws of their respective jurisdictions of organization.  This will require, among other things,

the determination of tax liabilities, the filing of appropriate tax returns and submissions to

monetary and other regulatory authorities, and the satisfaction of all other liabilities as necessary.

The dissolution process, including the tasks set forth above, will become more inefficient, time-

consuming, expensive and rife with certain legal issues, the longer the allocation of the Sale

Proceeds to the Fourth Estate Subsidiaries is delayed.

11.    The expeditious dissolution of the Fourth Estate Subsidiaries will benefit the

Three Estates and their respective creditors.  It will reduce the cost of maintaining the existence

of these entities and their continued participation in the Creditor Protection Proceedings,  and

accelerate the prompt distribution of any Sale Proceeds and cash and other assets currently held

by the Fourth Estate, to the appropriate creditor and shareholder beneficiaries.  It should be noted

that a portion of the Sale Proceeds allocated to the Fourth Estate Subsidiaries (after payment of

local taxes and other higher-ranking obligations) may flow back to entities within the Three

Estates as part of the dissolution of the Fourth Estate Subsidiaries.  In effect, the sooner that the

Fourth Estate Subsidiaries can receive their allocation of Sale Proceeds, the sooner they can wind

down and return any potential residual Sale Proceeds and other cash assets to the Three Estates and other beneficiaries.

12.     The likely allocation to the Fourth Estate Subsidiaries, although very material to the Fourth Estate Subsidiaries, will be a relatively small fraction of the aggregate Sale Proceeds, and thus can be easily resolved independent of the significant legal and business issues relating to allocation of Sale Proceeds among the Three Estates.  The Sale Proceeds "should be at least approximately $3.7 billion after consummation of the sale of the IP Assets" (U.S. Allocation Protocol Motion, ¶1).  Although the Fourth Estate Directors and Fourth Estate Subsidiaries are not parties to the IFSA, they were participants in numerous mediation sessions regarding a potential resolution of the allocation of the Sale Proceeds.  The Fourth Estate Directors believe that all of the relevant parties can quickly reach agreement on a fair and reasonable allocation to the Fourth Estate Subsidiaries, based upon the fair market value of the businesses and assets transferred by the Fourth Estate Subsidiaries in the Sale Transactions.

13.     Thus far, the Fourth Estate Directors have avoided placing the Fourth Estate Subsidiaries in any creditor protection proceedings, which would otherwise add an additional and unnecessary layer of complexity to an already complicated process.  Placing the Fourth Estate Subsidiaries in creditor protection proceedings at this time, in the numerous local jurisdictions in which such entities are domiciled, would not inure to the benefit of the Three Estates.  Prompt receipt of the Fourth Estate's allocation of Sale Proceeds is the best way of ensuring that outcome does not befall any Fourth Estate Subsidiaries.

14.     Finally, it is important to note that the Fourth Estate Directors are not separately compensated for their service as Fourth Estate Directors, nor will they receive a pecuniary

6

benefit from the allocation (accelerated or otherwise) of Sale Proceeds to the Fourth Estate

Subsidiaries. The Fourth Estate Directors' interest in resolving the allocation of Sale Proceeds

relates only to their ability to pursue the prompt dissolution of the Fourth Estate Subsidiaries in a

manner consistent with their fiduciary duties and consistent with the reasons for their

appointment as Fourth Estate Directors.

15.    For all of the foregoing reasons, the Fourth Estate Directors respectfully submit

that the prompt allocation and remittance of Sale Proceeds to Fourth Subsidiaries, preferably in

advance of finalization of allocation of all Sale Proceeds among the Three Estates, is in each

case, in the collective best interests of both the Fourth Estate and the Three Estates.

## RESERVATION OF RIGHTS

16.    The Fourth Estate hereby reserves all rights and remedies it may have with

respect to the Allocation Protocol (as the same may be revised or modified), including, without

limitation, the right to seek judicial relief with respect thereto.

Dated: Wilmington, Delaware
      May 31, 2011

Respectfully Submitted,

PRICKETT, JONES & ELLIOTT, P.A.

By /s/ Bruce E. Jameson
Bruce E. Jameson [Attorney Bar No. 2931]
1310 King Street, Box 1328
Wilmington, Delaware 19899
Telephone:  (302) 888-6500
Facsimile:  (302) 658-8111

       -and-

MAYER BROWN LLP
Brian Trust
Thomas M. Vitale
Amit K. Trehan
1675 Broadway
New York, New York 10019
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

*ATTORNEYS FOR THE FOURTH ESTATE
DIRECTORS AND FOURTH ESTATE SUBSIDIARIES*

8

700148295