AND
TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Timothy R. Dunn

Email:   tdunn@mindengross.com
Tel:       416.369.4335
Fax:      416.864.9223

Lawyers for 2748355 Canada Inc.

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:       416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:       416.865.3082
Fax:      416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND
TO:

**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthurjacques@shibleyrighton.com
Tel:       416.214.5213
Fax:      416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :    416.214.5400

Co-Counsel for the Steering Committee of
Nortel Canadian Continuing Employees – Post
CCAA as at January 14, 2009

AND
TO:

**BALDWIN LAW PROFESSIONAL
CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email:   lbrady@baldwinlaw.ca
Tel:       613.771.9991
Fax:      613.771.9998

Lawyers for Sydney Street Properties Corp.

AND
TO:

**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthurjacques@shibleyrighton.com
Tel:       416.214.5213
Fax:      416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :    416.214.5400

Lawyers for The Recently Severed Canadian
Nortel Employees Committee

AND
TO:

**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Cynthia R. Maher

Email:   cynthia.maher@ntscorp.com
Tel:       714.998.4351
Fax:      714.998.7142

Lawyers for AETL Testing, Inc.

AND TO:

**LAVERY, DE BILLY, LLP**
Barristers & Solicitors
Suite 2400, 600 de la Gauchetière West
Montreal, Quebec H3B 4L8

Jean-Yves Simard

Email :    jysimard@lavery.ca
Tel :      514.871.1522
Fax :      514.871.8977

Lawyers for Texas Landlords to Nortel Networks Inc.

AND TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:    bdarlington@davis.ca
Tel:      416.365.3529
Fax:      416.369.5210

Email:    jdavissydor@davis.ca
Tel:      416.941.5397
Fax:      416.365.7886

Lawyers for Computershare Trust Company of Canada

AND TO:

**DAVIES WARD PHILLIPS & VINEBERG LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:    rschwill@dwpv.com
Tel:      416.863.0900
Fax:      416.863.0871

Email:    mgottlieb@dwpv.com
Tel:      416.863.0900
Fax:      416.863.0871

Lawyers for Nortel Networks UK Limited (In Administration

AND TO:

**NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Cynthia Maher

Email:    cynthia.maher@ntscorp.com
Tel:      714.998.4351

AND TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email:    david.cohen@gowlings.com

Tel:      416.369.6667
Fax:      416.862.7661

Lawyers for General Electric Canada Equipment Finance G.P. and GE Capital Canada Leasing Services Inc.

AND TO:

**LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:   tosullivan@counsel-toronto.com
Tel:      416.598.1744
Fax:      416.598.3730

Email:    slaubman@counsel-toronto.com
Tel:      416.598.1744
Fax:      416.598.3730

Lawyers for William A. Owens

| | |
|---|---|
| AND<br>TO: | **AIRD & BERLIS LLP**<br>Barristers & Solicitors<br>Brookfield Place, P.O. Box 754<br>181 Bay Street, Suite 1800<br>Toronto, ON  M5J 2T9 |

Steven L. Graff
Ian E. Aversa

Email:     sgraff@airdberlis.com
Tel:        416.865.7726
Fax:       416.863.1515

Email:     iaversa@airdberlis.com
Tel:        416.865.3082
Fax:       416.863.1515

Lawyers for the Current and Former Employees of
Nortel Networks Inc. who are or were Participants
in the Long-Term Investment Plan Sponsored by
Nortel Networks Inc.

AND
TO:   **BAKER & McKENZIE LLP**
        Brookfield Place, P.O. Box 874
        181 Bay Street, Suite 2100
        Toronto, Ontario  M5J 2T3

Lydia Salvi

Email:     lydia.salvi@bakernet.com

Tel:        416.865.6944
Fax:       416.863.6275

Lawyers for Wipro Limited

**COURTESY COPIES:**

AND
TO:

**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email:   sbrown@lrlaw.com

Tel:    602.262.5321
Fax:    602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND
TO:

**AKIN GUMP STRAUSS HAUER &**
**FELD LLP**
One Bryant Park
New York, NY 10036

Fred S. Hodara
Ryan C. Jacobs

Email:   fhodara@akingump.com
         rjacobs@akingump.com

Tel:    212.872.1000
Fax:    212.872.1002

U.S. Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:

**CURTIS, MALLET-PREVOST, COLT &**
**MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail:  sreisman@curtis.com
         jdrew@curtis.com

Tel:    212.696.6000
Fax:    212-697-1559

Lawyers for Flextronics International

AND
TO:

**MILBANK, TWEED, HADLEY**
**McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email:   DDunne@milbank.com
Tel:    212.530.5770
Fax:    212.530.5219

Email:   ALeblanc@milbank.com
Tel:    212.835.7574
Fax:    212.530.5219

Email:   APisa@milbank.com
Tel:    212.530.5319
Fax:    212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

<table>
<tr><td>AND<br>TO:</td><td><b>VEDDER PRICE P.C.</b><br>1633 Broadway, 47th Floor<br>New York, New York 10019</td><td>AND<br>TO:</td><td><b>BRYAN CAVE LLP</b><br>161 North Clark Street, Suite 4300<br>Chicago, Illinois 60601</td></tr>
</table>

AND
TO:
**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York 10019

Michael L. Schein

Email: mschein@vedderprice.com

Tel: 212.407.6920
Fax: 212.407.7799

U.S. Lawyers for Telmar Network Technology,
Inc. and Precision Communication Services, Inc.

AND
TO:
**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email : andrew.robertson@macleoddixon.com
caylee.rieger@macleoddixon.com

Tel : 403.267.8222
Fax : 403.264.5973

Agent for Nelligan O'Brien Payne LLP, lawyers
for the Steering Committee of Recently Severed
Canadian Nortel Employees and lawyers for the
Steering Committee of Nortel Canadian
Continuing Employees – Post CCAA as at
January 14, 2009

AND
TO:
**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois 60601

Eric S. Prezant

Email: eric.prezant@bryancave.com
Tel: 312.602.5033
Fax: 312.602.5050

U.S. Lawyers for Tellabs, Inc.

**530**
25

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding commenced at Toronto

NOTICE OF MOTION
(returnable June 29, 2009)

OGILVY RENAULT LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4
CANADA

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 1715721\2

**TAB 2**

532 26l

Court File No: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT ACT,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AFFIDAVIT OF JOHN DOOLITTLE**
**(sworn June 22, 2009)**

I, John Doolittle, of the city of Oakville in the Province of Ontario, MAKE OATH AND SAY:

1.   I am the Treasurer of Nortel Networks Corporation ("NNC") and Nortel Networks Limited ("NNL") and have held those positions since June 23, 2008. From October 14, 2002 to June 12, 2006 I was the Vice-President, Tax for NNC and NNL. As such, I have personal knowledge of the matters to which I hereinafter depose in this Affidavit. Where I do not possess personal knowledge, I have stated the source of my information and, in all such cases, believe it to be true.

2.   I swear this affidavit in support of the motion to approve:

     (a)   an interim funding and settlement agreement dated as of June 9, 2009 (the "Interim Funding Agreement") among the Applicants (as defined below), the

- 2 -

Chapter 11 Debtors (as defined below), the EMEA Debtors (as defined below)[1] and the Joint Administrators (as defined below). A copy of the Interim Funding Agreement is attached as Exhibit "A" hereto;

(b) certain amendments to the Initial Order (as defined below) arising from the Interim Funding Agreement providing for, *inter alia,* the creation of the Excess Funding Charge and the Shortfall Charge (each as defined below);

(c) certain amendments to the Initial Order arising from amendments to the EDC Short Term Support Agreement (as defined and discussed in more detail below); and

(d) the fifth, sixth and seventh extensions of the Canadian GSPA (as defined below).

3. References to "Nortel" herein are references to the global enterprise as a whole.

## BACKGROUND

4. On January 14, 2009 (the "Filing Date"), NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order (as subsequently amended and restated, the "Initial Order") of this Honourable Court, and Ernst & Young Inc. was appointed as monitor (the "Monitor") in the CCAA proceedings.

---

[1] All EMEA Debtors other than Nortel Networks S.A., a French entity, are parties to the Interim Funding Agreement.

- 3 -

5.    Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including its principal U.S. operating subsidiary, Nortel Networks Inc. ("NNI" and together with the other U.S. filing entities, the "Chapter 11 Debtors"), made voluntary filings under Chapter 11 of the United States Bankruptcy Code (the "Code") with the United States Bankruptcy Court for the District of Delaware (the "U.S. Court"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases as "foreign proceedings" in Canada and giving effect in Canada to the automatic stay under the Code.

6.    Additionally, on January 15, 2009, Nortel Networks UK Limited ("NNUK") and certain subsidiaries (the "EMEA Debtors") of the Nortel group incorporated in Europe, the Middle East or Africa each obtained an administration order for the appointment of administrators (the "Joint Administrators") from the English High Court of Justice (the "UK Court") under the Insolvency Act 1986 (the "UK Insolvency Act").

7.    On February 27, 2009, the U.S. Court granted petitions recognizing these proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code.

8.    On May 28, 2009, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary insolvency proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Counsel Regulation, the English law proceedings remain the main proceedings in respect of NNSA.

- 4 -

9.    Lastly, on June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a
      petition with the U.S. Court for the recognition of the Administration Proceedings as they
      relate to NNUK under Chapter 15 of the Code.

10.   Further details regarding the background to these proceedings are set out in my affidavit
      sworn January 14, 2009 (the "Initial Order Affidavit") previously filed in these
      proceedings and are therefore not repeated herein.

**THE INTERIM FUNDING AGREEMENT**

*Background*

11.   As was set out in the Initial Order Affidavit, Nortel is a highly integrated business with
      significant distribution and research and development operations around the world. The
      Initial Order Affidavit set out several of the ways in which business was integrated across
      international lines, including cost allocation and profit sharing.

12.   NNL, NNI, NNUK, Nortel Networks (Ireland) Limited ("NNIR") and NNSA
      (collectively, the "Main Companies"), among others, are or have been the primary source
      of the research and development that has created Nortel's global technology footprint, the
      benefits of which are shared across multiple corporate entities within the Nortel group.
      These five Nortel entities also provide service and support on an ongoing basis to Nortel
      customers in their respective jurisdictions, as well as certain overhead and institutional
      support to Nortel entities and customers outside of their jurisdictions. Certain other
      Nortel companies function primarily as sales operations, acting as intermediaries between
      the Main Nortel Companies and customers in jurisdictions not served by the Main Nortel

- 5 -

Companies, and, in certain circumstances, providing ongoing service and support in their local jurisdictions.

13.    In light of the foregoing, certain Nortel entities, including the Main Nortel Companies, have entered into a number of agreements and have been engaged in certain practices designed both to allow Nortel to operate on a global basis and to allocate profits and losses, and certain costs, across the corporate entities within the Nortel Group. These agreements include:

   (a)    the Master R&D Agreement, dated as of December 22, 2004 among NNL, NNI, NNUK, NNIR, NNSA and other affiliates (as amended from time to time, the "Master R&D Agreement"); and

   (b)    certain distribution agreements between one or more Nortel entities (the "Distribution Agreements" and together with the Master R&D Agreement, the "Transfer Pricing Agreements").

14.    For a number of years, Nortel has used "transfer pricing" to allocate profits and losses, and certain costs, among the various Nortel companies. A more detailed description of Nortel's transfer pricing model was set out in the Initial Order Affidavit. Transfer pricing is an accepted method for such allocation, used widely by multinational enterprises similar in structure and geographic scope to Nortel.

15.    In the case of Nortel, the Master R&D Agreement is the governing document pursuant to which the Nortel Group implemented its transfer pricing regime using the residual profit split methodology (the "Nortel Transfer Pricing Regime"). Among other things, the Nortel Transfer Pricing Regime was designed to determine the arm's length allocation

- 6 -

due to each of the parties for their share of the profits and losses arising from "R&D Activity," as that term is defined in the Master R&D Agreement.

16.     In general terms, the Nortel Transfer Pricing Regime historically sought to allocate residual profits and losses among the Main Nortel Companies based on the proportionate share of R&D Activity conducted by or on behalf of, such affiliates. Among other things, the Nortel Transfer Pricing Regime typically requires that profits and losses, and certain costs, be allocated among such affiliates during a calendar year under the Transfer Pricing Agreements (the "Transfer Pricing Payments") and that a true-up allocation is determined after the actual results for the year are known.

17.     Within Nortel, NNL is the owner of the vast majority of Nortel's intellectual property assets and, in accordance with the Master R&D Agreement, NNL licenses its intellectual property to the Main Nortel Companies on a royalty-free basis. The Nortel Transfer Pricing Regime, in normal times, is the means by which NNL is compensated for the development and use of its intellectual property by affiliates. NNL has historically been a net recipient of payments under the Nortel Transfer Pricing Regime given that NNL generates lower levels of revenue when compared to the high level of corporate overhead and R&D Activity incurred in Canada.

*Events Since Filing*

18.     As was set out in the Initial Order Affidavit, on filing, Nortel entered into two group supplier protocol agreements, one between the Applicants and the Joint Administrators on behalf of the EMEA Debtors, and the other between the Chapter 11 Debtors and the Joint Administrators on behalf of the EMEA Debtors (the "Canadian GSPA" and the "US

GSPA", respectively, and together, as each has been and may be amended from time to time, the "GSPAs"). The GSPAs were entered into in respect of the inter-company trading of goods and services after the Filing Date.

19.   Since filing, the parties have continued to extend and rely on the GSPAs in respect of basic trade payables. However, following the commencement of these proceedings, discussions began with various interested parties, including Nortel, the Monitor, the Joint Administrators, the Official Committee of Unsecured Creditors of NNI (the "Creditors' Committee") and the ad hoc Bondholder Committee (the "Bondholders' Committee", together with the Creditors' Committee, the "Creditor Groups") concerning continued payments under the Nortel Transfer Pricing Regime within the context of Nortel's worldwide insolvency proceedings.   In particular, issues were raised in light of substantial changes that have occurred and may continue to occur in respect of Nortel's business model given the uncertainties facing Nortel's business.

20.   As a result, only one payment has been made in respect of amounts that could arguably be owed in respect of the Master R&D Agreement – a January 2009 payment of US$30 million by NNI to NNL (the "January Payment"). In addition, the EMEA Debtors have neither made, nor received, any payments under the Nortel Transfer Pricing Regime since the Filing Date.   Without the receipt of these payments, NNL is currently facing significant liquidity pressure – pressure that puts NNL, and thus all of Nortel, at risk.

21.   The various interested parties have been discussing possible solutions to NNL's liquidity issues for over two months.   Among other possible solutions, NNL requested that payments be made by both NNI and certain of the EMEA Debtors to NNL in respect of research and development and other overhead services post-filing ("Post-filing

539

- 8 -

Services"). After extensive negotiation, NNL, NNI, the Monitor and the Joint Administrators, working with the Creditor Groups, reached the consensus outlined in the Interim Funding Agreement, which, if the conditions to its effectiveness are satisfied, should provide NNL with sufficient liquidity at least through September 30, 2009 based on the current weekly cash flow forecast attached to the Monitor's report.

*The Interim Funding Agreement*

22.    Following lengthy, difficult, and good faith negotiations, on or about June 9, 2009, the parties entered into the Interim Funding Agreement. The terms of the Interim Funding Agreement were premised on an agreement that the parties have reached that the value of the Post-filing Services and expenses incurred by NNL post-filing for the benefit of NNI for the period from the Filing Date through September 30, 2009 (respectively, the "NNI Interim Obligations" and the "Canada/US Interim Period"), would be estimated to be US$187 million (which includes the $30 million paid by NNI through the January Payment). Such amount is equal to the amount forecasted (in the March 2009 Financial Outlook) by NNL to be owed by NNI for such period under the Master R&D Agreement.

23.    These estimations were agreed upon by the parties in recognition of the fact that a precise allocation of the expenses that NNL incurs and the value of the Post-filing Services it provides on behalf of the other Nortel entities would be a time-consuming and difficult endeavour in light of the integrated nature of the Nortel entities. Additionally, any definitive and binding determination regarding the interpretation and applicability of the Nortel Transfer Pricing Regime similarly would be extremely time consuming and potentially contentious.

540

- 9 -

24.     Capitalized terms used in this section and not otherwise defined shall have the meaning given to them in the Interim Funding Agreement.

25.     The main terms of the Interim Funding Agreement are as follows:

US/Canada Settlement Terms

(a)     NNI shall pay to NNL a sum total of US$157 million (the "Total Payment"), payable in five equal instalments of US$31.4 million in accordance with the schedule attached as Annex C to the Interim Funding Agreement;

(b)     The Total Payment shall be comprised of two (2) components:

(i)     Permanent Payment: The first US$131 million of the Total Payment shall be paid on an indefeasible and permanent basis (the "Permanent Payment").

(ii)    Contingent Payment: If it is determined, pursuant to a process to be agreed upon by NNL, NNI and the Creditor Groups, that the value of the NNI Interim Obligations is less than US$187 million (being the sum of the Total Payment and the January Payment), then any such portion thereof (being the difference between US$187 million and the value of the NNI Interim Obligations so determined) in excess of US$161 million (any such portion, the "Contingent Payment") shall be repaid by NNL to NNI on October 30, 2009 with interest thereon as provided for in the Interim Funding Agreement.

(c)     True-up Obligations: NNL agrees to use commercially reasonable efforts to recover from Nortel entities, other than the Debtors (collectively, "Other Nortel Group Companies"), Transfer Pricing Payments that are determined to be owed to the Applicants by Other Nortel Group Companies with respect to the Canada/US Interim Period (the "ONGC Costs"). Solely to the extent that the Applicants actually receive funds in respect of the ONGC Costs from the Other Nortel Group Companies in excess of the amounts provided in the Applicants' forecast, based

- 10 -

on that certain March 2009 Financial Outlook dated April 14, 2009 previously furnished to the parties to the Interim Funding Agreement, from the Other Nortel Group Companies that are payors, with respect to such ONGC Costs (the "Excess Recoveries"), and it is also determined, pursuant to the process referred to in subparagraph (b)(ii) above, that the value of the NNI Interim Obligations is less than US$161 million (such difference, the "Overage Amount"), the Applicants shall, in addition to any payments made or required to be made in repayment of the Contingent Payment, pay U.S. Pro Rata Excess Recoveries (as defined below) to NNI, on behalf of the Chapter 11 Debtors, in an aggregate amount no greater than the lesser of (i) the Overage Amount, and (ii) US$30 million (the "Maximum Overage Repayment") within 30 days of the date of determination thereof; provided, however, that some or all of such payment shall not be made to the extent that such payment would, in the reasonable and sole judgment of the Monitor, after consultation with the Creditor Groups, materially and adversely impact the liquidity position of NNL, based on a pro forma 13 Week CF Forecast (as defined below) (giving pro forma effect to such payment) prepared by NNL, with assistance from the Monitor, and provided in advance of such decision by the Monitor to the Creditor Groups (the "NNL Liquidity Review Procedures"). The unpaid balance, if any, of the Maximum Overage Repayment shall be carried forward and shall be payable out of future U.S. Pro Rata Excess Recoveries actually received by the Applicants from Other Nortel Group Companies that are payors, subject to the NNL Liquidity Review Procedures outlined above, until paid in full. For the above-mentioned purposes, "U.S. Pro Rata Excess Recoveries," as of any date of determination shall equal the product of (i) the

542

- 11 -

Excess Recoveries as of such date of such determination (excluding any Excess Recoveries in respect of which NNI has already been paid U.S. Pro Rata Excess Recoveries) and (ii) a fraction (x) the numerator of which shall equal US$161 million minus the Overage Amount and (y) the denominator of which shall equal the aggregate amount of Transfer Pricing Payments payable or paid to the Applicants by Nortel Group entities (excluding the Applicants) that are payors for the Canada/US Interim Period (rounded to four decimal points).  The general effect of this provision is that up to an additional US$30 million of the Total Payment may be repayable by NNL to NNI, out of specific funds recovered by the Applicants from certain other Nortel entities, but only to the extent that the value of the NNI Interim Obligations is determined to be less than US$161 million.

(d)     *Excess Funding Charge*:  NNL's obligation to repay to NNI the Contingent Payment and interest, if any, thereon, shall be secured by a charge against all of the assets of the Applicants (the "Excess Funding Charge"), which charge shall be granted by order of this Court and shall rank *pari passu* with the existing court-ordered charge in favor of Export Development Canada (the "EDC Charge"); provided, however, that if the EDC Charge is extinguished, then in such case the Excess Funding Charge shall be a second-ranking charge in the Canadian Proceedings, subordinate only to the Administration Charge (and in the case of the Carling Facility, the Carling Facility Charges) (as both such terms are defined

- 12 -

in the Initial Order), and such Excess Funding Charge shall not rank *pari passu* with any other charge that exists or may be granted in these proceedings.[2]

(e)    *Use of Funds:*   Under the terms of the Interim Funding Agreement, NNL is entitled to use the Total Payment for working capital and those other purposes as reflected in the 13 Week CF Forecast (the "Permitted Uses"). To the extent NNL seeks to use funds from the Total Payment for purposes other than the Permitted Uses, NNL must obtain the consent for such uses from NNI and the Creditor Groups.

(f)    *Settlement:*   The sum of the Total Payment and the January Payment (being US$187 million) is intended to be a full and final settlement of any and all NNI Interim Obligations. Under the terms of the Interim Funding Agreement, the Applicants have agreed to indemnify, defend and hold harmless each Chapter 11 Debtor from and against any and all actions, claims, proceedings, costs, damages, losses, liabilities, judgments, amounts, fines, penalties, levies, compensations paid in settlement (provided NNL has agreed in writing to any such settlement or such settlement has been approved pursuant to a final court order) and expenses (including without limitation reasonable attorneys' fees and disbursements) resulting from a claim, demand, lawsuit, action or proceeding relating to, arising from or in connection with Transfer Pricing Payments for the calculation period in the applicable Transfer Pricing Agreements in respect of the Canada/US Interim Period.

---

[2] Since the entering into of the Interim Funding Agreement, the Applicants have confirmed with the Committees that the Goldman Charge (as defined in the Order of this Court made on June 1, 2009) shall continue to be a first priority charge, ranking *pari passu* with the Administration Charge, with respect to the assets secured by that charge.

- 13 -

Settlement Terms with EMEA Debtors

(g)     *EMEA Self-Funding; Shortfall Payments:* Under the terms of the Interim Funding

Agreement, NNUK is irrevocably authorized to seek payment from other EMEA

Debtors of Transfer Pricing Payments owed, or as such payments become due,

under the relevant Transfer Pricing Agreements during, or with respect to, the

period from the Filing Date to December 31, 2009 (the "EMEA Interim Period"),

which amounts have been fixed by the Interim Funding Agreement.

(h)     *First Shortfall Payment:* Subject to the terms of the Interim Funding Agreement,

NNL shall pay to NNUK the sum of US$10 million (the "First Shortfall

Payment"):

    (i)     The First Shortfall Payment is to be paid out of the sale proceeds allocated
to, and actually received by, NNL from the sale of assets where the
aggregate amount of one or more allocations of sale proceeds to NNL
from such sale (after taking into account certain adjustments) exceeds a
threshold amount communicated to the Joint Administrators by NNL in a
letter dated June 9, 2009 (with copies to the Monitor and the Creditor
Groups) and counter-signed by the Joint Administrators (any such sale, a
"Material Asset Sale");

    (ii)     Some or all of such payment shall be subject to the performance of NNL
Liquidity Review Procedures (as set forth in the Interim Funding
Agreement).

(i)     *Second Shortfall Payment:* Subject to the terms of the Interim Funding

Agreement, NNL shall pay to NNUK the sum of US$10 million (the "Second

Shortfall Payment" and together with the First Shortfall Payment, the "Shortfall

Payments"), such amount to be paid out of the sale proceeds of a Material Asset

Sale allocated to, and actually received by, NNL; *provided, however,* that some or

- 14 -

all of such payment shall again be subject to the performance of NNL Liquidity Review Procedures.

NNL, as the "clearing house" for transfer pricing, would normally be the recipient of payments from the payor Nortel entities and the distributor of such funds received to the recipient Nortel entities, under the transfer pricing regime. The provisions relating to the Shortfall Payments provide the Applicants with certainty of settling transfer pricing related claims by EMEA Debtors during the EMEA Interim Period.

(j)    *Shortfall Charge*:   NNL's obligation to make the Shortfall Payments shall be secured by a charge against all of the assets of the Applicants (the "Shortfall Charge"), which charge shall at all times rank *pari passu* with the Inter-company Charge (as defined in the Initial Order).   Without prejudice to the foregoing sentence, NNUK acknowledges that any current or future charges that have been, or may be granted to the Chapter 11 Debtors in connection with any funding provided by the Chapter 11 Debtors to the Applicants may, or could be senior to the Shortfall Charge, and consents to such charges being senior to the Shortfall Charge.

(k)    *Effectiveness of the Shortfall Payments and the Shortfall Charge*: The obligation of NNL to make the Shortfall Payments and the triggering of the Shortfall Charge

- 15 -

only occur upon the execution of transaction documents in respect of a "Subject Transaction".[3]

(l)   *Settlement:*  Except with respect to the obligation of NNL to make the Shortfall Payments,

    (i)   the Interim Funding Agreement shall constitute a full and final settlement of any and all Transfer Pricing Payments owing and that may, or could be, owing between (i) the EMEA Debtors *inter se*, and (ii) an EMEA Debtor, on the one hand, and a Canadian Debtor or a US Debtor, on the other hand, as Transfer Pricing Payments under the Transfer Pricing Agreements for all calculation periods or parts thereof within the EMEA Interim Period including, without limitation, any subsequent determination by any revenue authority with respect to the EMEA Interim Period giving rise to any subsequent liability to taxation of any party to the Interim Funding Agreement;

    (ii)   Upon payment of the Shortfall Payments in full, the Shortfall Charge shall be automatically extinguished; and

    (iii)   It is expressly understood that Part B of the Interim Funding Agreement is intended to constitute a full and final settlement of all of the matters between the Applicants and the Chapter 11 Debtors, on the one hand, and the EMEA Debtors, on the other hand, set forth in Part B of the Interim Funding Agreement whether arising during, or related to, the EMEA Interim Period.

General Settlement Terms

(m)   *Intellectual Property Licenses:*  Each of the Chapter 11 Debtors and the EMEA Debtors has agreed that it will enter into an Appropriate License Termination (as defined in Section 11.b. of the Interim Funding Agreement) with respect to the licenses and rights granted by NNL to such parties under or pursuant to the provisions of the Master R&D Agreement (such licenses and rights, the "IP

---

[3] "Subject Transaction" means the first sale of any material assets of any one or more of the Debtors of each of (i) the Applicants; (ii) the Chapter 11 Debtors; and (iii) the EMEA Debtors (excluding, however, any sale where the involvement of the EMEA Debtors is solely limited to Appropriate License Terminations).

- 16 -

Licenses") for the purpose of facilitating, and in consideration of a right to an allocation to the parties of portions of the sale proceeds from, the sale of any material assets of any of the Applicants and/or the Chapter 11 Debtors to a third party (an "Asset Sale"); *provided, however*, that (x) in the case of the Chapter 11 Debtors, no Appropriate License Termination shall be effective without the prior written consent of the Creditor Groups (which consent in each case shall not be unreasonably withheld), and (y) in the case of the EMEA Debtors, Appropriate License Terminations shall be limited to only those Asset Sales where the project name of the referenced proposed transaction or/and the description of the scope of assets, businesses and technologies covered by such Asset Sales have been previously communicated to the Joint Administrators by NNL in a letter dated June 9, 2009 (with copies to the Monitor and the Creditor Groups) and countersigned by the Joint Administrators.

(n)    *Sale Transactions*:  Each of the Applicants, the Chapter 11 Debtors and the EMEA Debtors (collectively, the "Debtors" or individually, a "Debtor") has agreed that its execution of definitive documentation with a purchaser (or, in the case of any auction, the successful bidder in any such auction) of, or consummation of any sale of, material assets of any of the Debtors to which such Debtor (a "Selling Debtor") is proposed to be a party (each, a "Sale Transaction") shall not be conditioned upon such Selling Debtor reaching agreement with the other Selling Debtors regarding (A) allocation of the sale proceeds ("Sale Proceeds") from the relevant Sale Transaction or (B) the binding procedure for the allocation of Sale Proceeds from the relevant Sale Transaction.  Pending the distribution of the Sale Proceeds, the entire amount of the Sale Proceeds (less

certain taxes and transaction costs) shall be deposited in an escrow account pursuant to an escrow agreement, the terms of which shall be negotiated and agreed by all Selling Debtors, in each case acting reasonably (the "Escrow Account"). In no case shall there be any distribution from the Escrow Account in advance of either (i) agreement of all of the Selling Debtors or (ii) in the case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the Sale Protocol (as defined below) applicable to the Sale Proceeds, and subject in each case to payment of the agreed or determined amount of allocation of Sale Proceeds to all Selling Debtors.

(o)     The parties have agreed to continue to negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (the "Sale Protocol"), which Sale Protocol shall provide binding procedures for the allocation of Sales Proceeds where the Selling Debtors in such Sale Transaction have been unable to reach agreement regarding such allocation.

(p)     The Selling Debtors shall, immediately following entry into any Sale Transaction, negotiate in good faith and on a timely basis to attempt to reach agreement regarding the allocation of the Sale Proceeds from such Sale Transaction within a reasonable period of time or as may be otherwise provided in the Sale Protocol, failing which the Sale Protocol shall apply to determine the allocation of the relevant Sale Proceeds.

(q)     No Debtor shall be required to enter into a Sale Transaction so long as such Debtor reasonably determines, acting in good faith and after consultation with the

other parties to the Interim Funding Agreement, that such Sale Transaction is not in the best economic interests of its creditors generally.

(r)     For the purposes of Sections 11.c. and 12.a. through 12.f. (inclusive) of the Interim Funding Agreement, the Chapter 11 Debtors have agreed that with respect to any of the matters referred to in such Sections as to which the agreement or determination of any of the Chapter 11 Debtors is required, the Chapter 11 Debtors shall include the Creditor Groups in any negotiations on such issues with the other Debtors or any related proceedings and any such agreement or determination by the Chapter 11 Debtors shall require the prior consent of the Creditor Groups acting in good faith. For purposes of the same such Sections, the Applicants have agreed that with respect to any of the matters referred to in such Sections as to which the agreement regarding determination of the Applicants is required, the Applicants shall include the Bondholders' Committee in any negotiations on such issues with the other Debtors or any related proceedings and any agreement or determination by the Applicants shall require the prior consent of the Bondholders' Committee acting in good faith and the Monitor.

(s)     *Effectiveness:*   The Interim Funding Agreement is subject to the following conditions:

(i)     approval of the US Court and this Honourable Court;

(ii)    the UK Court giving a direction (the "UK Court's Directions") that, if so sought, the Joint Administrators be at liberty to enter into the Interim Funding Agreement (the "UK Court Condition"); provided, however, the Joint Administrators may at their election waive the UK Court Condition; and

- 19 -

(iii)    this Honourable Court and the US Court approving amendments to the cross-border protocol previously approved by the US Court and this Honourable Court (as may be in effect from time to time, the "Cross-Border Protocol") that are mutually satisfactory to NNL (on behalf of the Applicants), NNI (on behalf of the Chapter 11 Debtors), the Monitor and the Creditor Groups

(collectively, the "Conditions").

(t)    *Reservation of Rights*:  Nothing in the Interim Funding Agreement shall constitute

an amendment, modification or waiver of rights of any party thereto (i) under any

other agreement, including, without limitation, the GSPAs and the Transfer

Pricing Agreements (except as expressly set forth in Sections 3 and 8 of the

Interim Funding Agreement), applicable law or otherwise, including, without

limitation, the right to object to the propriety of any payments made under or in

connection with the Transfer Pricing Agreements or any offset arising

therefrom or otherwise, or (ii) with respect to any potential tax contingencies,

assessments, rulings or agreements arising from Transfer Pricing Payments

pursuant to the Transfer Pricing Agreements or any offset arising therefrom or

otherwise; *provided, however,* that the parties to the Interim Funding Agreement

waive any and all rights to object to or otherwise seek to amend or revisit (A) any

payments made pursuant to the Interim Funding Agreement, except that (a) NNI

and NNL do not waive their rights to the extent required to allow NNI to

enforce its rights under the Interim Funding Agreement against NNL, and (b)

NNUK does not waive its rights to the extent required to allow NNUK to enforce

its rights against NNL under certain provisions of the Interim Funding

Agreement, and (B) the January Payment. The use of the term Transfer Pricing

Payment (or any similar term) or reference to the Master R&D Agreement (or

similar agreement) in the Interim Funding Agreement is for convenience only and

- 20 -

shall have no evidentiary effect or be used by any of the parties thereto in any proceeding to determine the pre-petition or post-petition validity, applicability, assumption, affirmation or ratification by any entity of the Nortel Transfer Pricing Regime or the Master R&D Agreement.

26.     On June 15, 2009, the Joint Administrators, NNL and NNI entered into a side letter (the "Side Letter") pursuant to which the Joint Administrators acknowledged that there may be a circumstance in which the UK Court refused to make an order that the Joint Administrators are at liberty to enter into the Interim Funding Agreement, solely because the UK Court does not consider it appropriate to make an order in relation to the exercise of the Joint Administrators' powers under the UK Insolvency Act. The Side Letter confirms that if the UK Court does this and also does not make any determination or express any views on the appropriateness of the Joint Administrators entering into the Interim Funding Agreement on behalf of the EMEA Debtors, the Joint Administrators would be willing to waive the UK Court Condition. A copy of the Side Letter is attached as Exhibit "B" hereto.

*GSPAs*

27.     Pursuant to previous orders of this Honourable Court, extensions of the Canadian GSPA have been previously approved up through the fourth extension of the GSPAs. The relevant parties subsequently entered into the fifth, sixth and seventh extensions (collectively, the "Extensions") of the GSPAs and they are currently set to expire on July 9, 2009. On June 17, 2009, the administrator appointed by the French Court in the secondary proceedings acceded (the "Accession") to the sixth and seventh extensions of

- 21 -

the GSPAs. Copies of the Extensions and the Accession are attached as Exhibits "C" through "F" hereto.

28.  The terms of the Interim Funding Agreement expressly provide for the parties' intentions that they continue to make monthly payments in respect of the inter-company trading of goods and services among the various Nortel entities.

## EDC

29.  As was set out in my Initial Order Affidavit, on filing, NNL and EDC entered into a Short Term Support Agreement dated as of January 14, 2009 (as the same has been subsequently amended and restated, the "Short Term Support Agreement") pursuant to which EDC agreed to provide further "Support" (as defined in the Short Term Support Agreement) to Nortel post-filing. Any Support provided was to be secured by the EDC Charge. At the time, the Applicants advised that they were continuing discussions with EDC to determine whether a longer term solution was possible.

30.  NNL and EDC have now concluded arrangements which will result in the EDC Charge as currently constituted under the Initial Order being replaced in favour of a mechanism whereby EDC will be provided with cash collateral. Copies of the amendment to the Short Term Support Agreement and the Cash Collateral Agreement (the "Cash Collateral Agreement") both dated as of June 18, 2009 are attached as Exhibits "G" and "H" hereto, respectively.

31.  The previously committed support facility will become discretionary on EDC's part while at the same time, the Applicants will have the flexibility to post cash collateral in respect of any new Support provided to the Applicants up to a maximum of cash

- 22 -

collateral permitted by applicable approvals. In addition, any existing Support formerly secured by the EDC Charge (as defined in the initial Order) will be collateralized by the posting of cash collateral pursuant to the Cash Collateral Agreement. In addition to securing outstanding financial assurances, cash collateral will also secure certain fees and expenses of EDC arising from the provision of Support and from the CCAA proceedings themselves. Such fees also formed part of the previously approved EDC arrangements, but will be modestly expanded to include the additional expense of the cash collateral mechanism.

32.    EDC will permit the EDC Charge to be vacated upon the approval of the new arrangements and the posting of cash collateral in the amount of approximately US$6.5 million including a deposit for fees and expenses in the amount of US$540,000.00. This will make available to NNL the balance of US$30 million currently being held be the Applicants from the proceeds of the sale of the Westwinds property in Calgary, which sale closed on June 15, 2009.

33.    Finally, EDC has requested amendments to the Initial Order which reflect the fact that EDC will be relying upon the terms of the Cash Collateral Agreement, which amendments mirror those previously ordered in respect of those parties who currently have cash collateral facilities with the Applicant.

## CHANGES TO THE INITIAL ORDER

*Excess Funding Charge and the Shortfall Charge*

34.    As set out above, included in the terms of the Interim Funding Agreement are the creation of the Excess Funding Charge and Shortfall Charge (collectively, the "Proposed

554

- 23 -

Charges"). The Proposed Charges are to secure the payment obligations of NNL under the Interim Funding Agreement and, from the standpoint of the beneficiaries of those charges, are fundamental terms of the Agreement.

35.    I am not aware that any of the other beneficiaries of the Charges outstanding under the Initial Order object to the creation of the Proposed Charges.

*EDC Charge*

36.    As set out above, the EDC Charge will be extinguished and discharged and certain amendments with respect to the cash collateral to be posted with EDC are to be incorporated into the Initial Order.

*Cross-Border Protocol*

37.    As set out above, one of the conditions to the effectiveness of the Interim Funding Agreement are agreed upon changes to the Cross Border Protocol. As of the date of this affidavit, negotiations with respect to such changes are on going. To the extent that a consensus is reached, I intend to swear a supplemental affidavit in respect of such amendments.

## CONCLUSION

38.    As has been apparent from the last 13 week cashflow filed by the Applicants in these proceeding, NNL requires funding in order to address its near term liquidity needs. The parties have arrived at the terms of the Interim Funding Agreement after extensive negotiations involving numerous in person and teleconference negotiation sessions and due diligence reviews. It also provides an interim solution to NNL's funding needs as

- 24 -

well as an essential liquidity review process before payments are made by NNL. Further, the corresponding amendments to the Initial Order are fair and reasonable in the circumstances.

SWORN before me at the City of
Toronto in the Province of Ontario,
on the 22nd day of June, 2009.


_____
A Commissioner for taking affidavits          John Doolittle

# TAB A

EXECUTION VERSION

## INTERIM FUNDING AND SETTLEMENT AGREEMENT

This agreement (the "Agreement") is entered into by and among Nortel Networks Limited ("NNL") and the other entities set forth in Schedule 1 attached hereto, Nortel Networks Inc. ("NNI") and the other entities set forth in Schedule 2 attached hereto, and the Joint Administrators (as defined below) and the entities set forth in Schedule 3 attached hereto (the "EMEA Debtors"). The Joint Administrators, in their individual capacity, shall be party to this Agreement solely for the purposes of Section 17 and references to the Parties shall be construed accordingly.

WHEREAS, on January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC"), NNL and certain of NNC's other Canadian affiliates included in Schedule 1 (collectively, the "Canadian Debtors," and NNC and its debtor and non-debtor affiliates are sometimes referred to herein (including, without limitation, the EMEA Debtors), as the "Nortel Group"), commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, "CCAA" and the "Canadian Proceedings"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor"); and

WHEREAS, on the Filing Date, NNI and certain of NNI's United States affiliates included in Schedule 2 (collectively, the "US Debtors" and, together with the Canadian Debtors and the EMEA Debtors, the "Debtors") filed petitions in the United States Bankruptcy Court for the District of Delaware (the "US Court") under chapter 11 of title 11 of the United States Code (respectively, the "Bankruptcy Code," and the "US Proceedings"); and

WHEREAS, on the Filing Date, Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel Networks S.A. ("NNSA") and certain of NNUK's affiliates in the Europe, Middle East and Africa ("EMEA") region, including those in Schedule 3 attached hereto, commenced administration proceedings (the "UK Proceedings" and, together with the Canadian Proceedings and the US Proceedings, the "Proceedings") before the High Court of Justice in London, England (the "UK Court" and, together with the Canadian Court and the US Court, the "Courts"), represented by individuals from Ernst & Young LLP (the "UK Administrator"), and, in the case of NNIR only, Ernst & Young Chartered Accountants (the "NNIR Administrator"), serving as administrators in the UK Proceedings (the UK Administrator and the NNIR Administrator collectively, the "Joint Administrators"); and

WHEREAS, subsequent to the Filing Date, NNSA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator (the "NNSA Liquidator") and an administrator (the "NNSA Administrator") have been appointed by the Versailles Commercial Court (Docket No. 2009P00492) for NNSA; and

WHEREAS, prior to the Filing Date, certain members of the Nortel Group made quarterly payments (the "Transfer Pricing Payments") to other Nortel Group entities pursuant to a transfer pricing methodology ("Transfer Pricing") provided for in the Transfer Pricing Agreements, where "Transfer Pricing Agreements" means (i) the Master Research and Development Agreement dated as of December 22, 2004 (as amended by, and together with the

This is Exhibit......A..........referred to in the affidavit of...~~JOHN~~ ~~DOOLITTLE~~.............. sworn before me, this.....22ne.................. day of..June..............................20..09.

.....J.J.Connolly...M.Suft.......
A COMMISSIONER FOR TAKING AFFIDAVITS

related understandings contained in, the documents listed in <u>Annex A</u> hereto, the "<u>Master R&D</u> <u>Agreement</u>") and (ii) certain distribution agreements, whether written or oral, between one or more Nortel Group entities, including, without limitation the agreements listed in <u>Annex B</u> hereto and any other agreements similar to the agreements listed in <u>Annex B</u> hereto (as amended, supplemented or otherwise modified, the "<u>Distribution Agreements</u>"); and

WHEREAS, notwithstanding a US$30 million payment made by NNI to NNL in January, 2009 (the "<u>January Payment</u>"), certain members of the Nortel Group, including, in particular, NNL, have liquidity constraints; and

WHEREAS, it should be noted that no other payments similar to the January Payment have been made between or among the Nortel Group entities since the Filing Date; and

WHEREAS, each of the Parties hereto has concluded it is appropriate and in the best interest of each to enter into this Agreement pursuant to which, *inter alia*: (i) NNI, on behalf of itself and the other US Debtors, shall settle any claims of NNL for corporate overhead and research and development costs, whether pursuant to Transfer Pricing Agreements or otherwise, incurred by NNL for the benefit of the US Debtors which NNL has asserted or could assert (without admission by the US Debtors and subject to Section 20 of this Agreement) would have been reimbursed to NNL through Transfer Pricing Payments payable by the US Debtors to the Canadian Debtors during, or with respect to, the period after the Filing Date through and including September 30, 2009 (respectively, the "<u>Canada/US Interim Period</u>" and the "<u>NNI</u> <u>Interim Obligations</u>") and (ii) the EMEA Debtors shall among themselves and as between one or more EMEA Debtors, on the one hand, and one or more Canadian Debtors and/or US Debtors, on the other hand, settle amounts payable and anticipated to become payable as Transfer Pricing Payments as provided for herein for the period from the Filing Date to December 31, 2009 (the "<u>EMEA Interim Period</u>"), in all cases subject to the terms of this Agreement; and

WHEREAS, the Parties hereto intend this Agreement to constitute a full and final settlement of all matters set forth in this Agreement, whether arising during or related to the Canada/US Interim Period or the EMEA Interim Period, as applicable; and

WHEREAS, the Parties intend to continue to meet their respective obligations to make the monthly payments in respect of the inter-company trading of goods and services by Nortel Group entities (the "<u>Inter-Company Trading Payments</u>") pursuant to and during the effectiveness of the group supplier protocol agreements approved in the applicable Proceedings from time to time (the "<u>GSPAs</u>") or pursuant to and in accordance with court orders entered in the Canadian Proceedings and the US Proceedings ("<u>Trading Orders</u>"); and

WHEREAS, the Official Committee of Unsecured Creditors appointed in the US Proceedings (the "<u>Creditors' Committee</u>") and the steering committee members of the ad hoc group of bondholders that have executed confidentiality or non-disclosure agreements with NNL (the "<u>Bondholders' Committee</u>") have each agreed to support this Agreement.



NOW THEREFORE, THE PARTIES HEREBY AGREE THAT:

PART A – <u>NNI FUNDING TO NNL; SETTLEMENT MATTERS</u>

1. <u>Funding</u>.

    a. NNI shall pay to NNL a sum total of US$157 million (the "<u>Total Payment</u>"), payable in five equal installments of US$31.4 million in accordance with the schedule attached as <u>Annex C</u> hereto, subject to the following limitations:

        i. the first US$131 million of the Total Payment shall be paid on an indefeasible and permanent basis (the "<u>Permanent Payment</u>"); and

        ii. if it is determined, pursuant to a process to be agreed upon by NNL, NNI, the Creditors' Committee and the Bondholders' Committee, that the value of the NNI Interim Obligations is less than US$187 million (being the sum of the Total Payment and the January Payment), then any such portion thereof (being the difference between US$187 million and the value of the NNI Interim Obligations so determined) in excess of US$161 million (any such portion, the "<u>Contingent Payment</u>") shall be repaid by NNL to NNI on October 30, 2009.

    b. NNL's obligation to repay to NNI the Contingent Payment and interest, if any, thereon, shall be secured by a charge against all of the assets of the Canadian Debtors (the "<u>Excess Funding Charge</u>"), which charge shall be granted by order of the Canadian Court and shall rank *pari passu* with the existing court-ordered charge in favor of Export Development Canada (the "<u>EDC Charge</u>"); *provided, however,* that if the EDC Charge is extinguished, then in such case the Excess Funding Charge shall be a second-ranking charge in the Canadian Proceedings, subordinate only to the Administration Charge (and in the case of the Carling Facility, the Carling Facility Charges), and such Excess Funding Charge shall not rank *pari passu* with any other charge that exists or may be granted in the Canadian Proceedings. For the purposes of this provision, the terms "Administration Charge," "Carling Facility" and "Carling Facility Charges" shall have the same meaning as ascribed to each such term in the initial order granted by the Canadian Court on the Filing Date in the Canadian Proceedings, as amended and restated from time to time (the "<u>Canadian Initial Order</u>").

    c. Simple interest shall be payable on the Contingent Payment at the time of repayment at a rate of 10% per annum and shall accrue from the date of NNL's receipt of the Contingent Payment to, but not including, the date of repayment.

    d. Upon payment in full of the Contingent Payment and any accrued interest thereon, the Excess Funding Charge shall be automatically extinguished.

2.  <u>Use of Funds; Reporting</u>.

  a. NNL has informed NNI, the Creditors' Committee and the Bondholders' Committee, that NNL intends to use the funds from the Total Payment for working capital and those other purposes as reflected in the 13 Week CF Forecast (as defined below) (the "<u>Permitted Uses</u>"). To the extent NNL seeks to use funds from the Total Payment for purposes other than the Permitted Uses, NNL must obtain the consent for such uses from NNI, the Creditors' Committee and the Bondholders' Committee.

  b. NNL and NNI shall continue to provide to the Creditors' Committee and the Bondholders' Committee, on a weekly basis, (i) rolling 13-week cash flow forecasts (each, a "<u>13 Week CF Forecast</u>"), and (ii) reports on actual weekly cash flow results. NNL further agrees to provide, to the extent not already provided in accordance with the foregoing sentence, each of NNI, the Creditors' Committee and the Bondholders' Committee with a cash flow schedule showing payments for the preceding monthly period and the use of proceeds from the Total Payment to the extent received by NNL, such schedule to be provided no later than the tenth day following the last day of each month commencing with the cash flow schedule for June 2009 and ending with the cash flow schedule for September 2009.

3.  <u>Maximum Payment; Full and Final Settlement</u>. The sum of the Total Payment and the January Payment (being US$187 million) represents (A) the maximum payment that the US Debtors may or could owe in respect of the NNI Interim Obligations, (B) the maximum administrative claim (or such other applicable priority claim) that any of the Debtors (excluding the US Debtors) may have or could assert against one or more US Debtors in any Proceedings with respect to the NNI Interim Obligations, whether pursuant to Sections 503 and 507 of the Bankruptcy Code or otherwise, and (C) constitutes a full and final settlement of any and all NNI Interim Obligations. Each of NNL and the other Canadian Debtors hereby agrees to indemnify, defend and hold harmless each US Debtor from and against any and all actions, suits, claims, proceedings, costs, damages, losses, liabilities, judgments, amounts, fines, penalties, levies, compensations paid in settlement (provided NNL has agreed in writing to any such settlement or such settlement has been approved pursuant to a final court order), and expenses (including without limitation reasonable attorneys' fees and disbursements) resulting from a claim, demand, lawsuit, action or proceeding relating to, arising from or in connection with Transfer Pricing Payments for the calculation period in the applicable Transfer Pricing Agreements in respect of the Canada/US Interim Period.

4.  <u>Settlement of Motions</u>. It is expressly understood that Part A of this Agreement is intended to constitute a full and final settlement of all of the matters set forth in Part A of this Agreement whether arising during, or related to, the Canada/US Interim Period, including, without limitation, any funding motions of the Canadian Debtors and the US Debtors scheduled to be heard by the Canadian Court and the US Court on June 29 and 30, 2009 or such later date or dates as might be agreed or ordered.

5. <u>True-up Obligations</u>. NNL agrees to use commercially reasonable efforts to recover from Nortel Group entities, other than the Debtors (collectively, "<u>Other Nortel Group Companies</u>"), Transfer Pricing Payments that are determined to be owed to the Canadian Debtors by Other Nortel Group Companies with respect to the Canada/US Interim Period (the "<u>ONGC Costs</u>"). Solely to the extent that the Canadian Debtors actually receive funds in respect of the ONGC Costs from the Other Nortel Group Companies in excess of the amounts provided in the Canadian Debtors' forecast, based on that certain March 2009 Financial Outlook dated April 14, 2009 previously furnished to the Parties, from the Other Nortel Group Companies that are payors, with respect to such ONGC Costs (the "<u>Excess Recoveries</u>"), and it is also determined, pursuant to the process referred to in Section 1.a.ii above, that the value of the NNI Interim Obligations is less than US$161 million (such difference, the "<u>Overage Amount</u>"), the Canadian Debtors shall, in addition to any payments made or required to be made in accordance with Section 1.a.ii. above, pay U.S. Pro Rata Excess Recoveries (as defined below) to NNI, on behalf of the US Debtors, in an aggregate amount no greater than the lesser of (i) the Overage Amount, and (ii) US$30 million (the "<u>Maximum Overage Repayment</u>") within 30 days of the date of determination thereof; *provided, however,* that some or all of such payment shall not be made to the extent that such payment would, in the reasonable and sole judgment of the Monitor, after consultation with the Creditors' Committee and the Bondholders' Committee, materially and adversely impact the liquidity position of NNL, based on a pro forma 13 Week CF Forecast (giving pro forma effect to such payment) prepared by NNL, with assistance from the Monitor, and provided in advance of such decision by the Monitor to the Creditors' Committee and the Bondholders' Committee (the "<u>NNL Liquidity Review Procedures</u>"). The unpaid balance, if any, of the Maximum Overage Repayment shall be carried forward and shall be payable out of future U.S. Pro Rata Excess Recoveries actually received by the Canadian Debtors from Other Nortel Group Companies that are payors, subject to the NNL Liquidity Review Procedures outlined above, until paid in full. For the purposes of this Section, "<u>U.S. Pro Rata Excess Recoveries</u>," as of any date of determination shall equal the product of (i) the Excess Recoveries as of such date of such determination (excluding any Excess Recoveries in respect of which NNI has been paid U.S. Pro Rata Excess Recoveries in accordance with this Section 5) and (ii) a fraction (x) the numerator of which shall equal US$161 million <u>minus</u> the Overage Amount and (y) the denominator of which shall equal the aggregate amount of Transfer Pricing Payments payable or paid to the Canadian Debtors by Nortel Group entities (excluding the Canadian Debtors) that are payors for the Canada/US Interim Period (rounded to four decimal points).

## PART B – EMEA SELF-FUNDING; SETTLEMENT MATTERS

6. <u>Administration; Funding</u>.

  a. NNUK is hereby irrevocably authorized to seek payment for its own account from other EMEA Debtors of Transfer Pricing Payments owed, or as such payments become due, under the relevant Transfer Pricing Agreements during, or with respect to, the EMEA Interim Period which would otherwise be made to or administered by NNL, in consideration of the full and final settlement set out in Section 8 below. Each of the EMEA Debtors hereby appoints NNUK as its agent

5

(without liability, including as to failure of any EMEA Debtor to make any Transfer Pricing Payment) to administer the collection and pro rata distribution of the Transfer Pricing Payments received, solely with respect to the EMEA Interim Period, as detailed on <u>Annex D</u> hereto. Each of the EMEA Debtors agrees that the payments set out in <u>Annex D</u> shall be made to NNUK in cleared funds and without set-off, in consideration of the matters set out in this Agreement, within 30 days of the date hereof, except as otherwise agreed between any EMEA Debtor and NNUK. To the extent that any EMEA Debtor breaches any obligation to make its Transfer Pricing Payment with respect to the EMEA Interim Period, only NNUK and none of NNL, NNI or any of their other affiliates shall have any claim against such defaulting EMEA Debtor for such payment and no EMEA Debtor shall have any claim against NNL, NNI or any of their affiliates (other than such EMEA Debtor) for such payment.

b.  Subject to the terms of this Agreement (including without limitation Sections 12.a. and 13.b. of this Agreement), NNL shall pay to NNUK the sum of US$10 million (the "<u>First Shortfall Payment</u>"), such amount to be paid out of the sale proceeds allocated to, and actually received by, NNL from the sale of assets entered into subsequent to the date hereof where the aggregate amount of one or more allocations of sale proceeds to NNL from such sale (after taking into account all purchase price adjustments, taxes and other transaction costs, and excluding the amount of any holdback or escrow for indemnification or otherwise) exceeds the amount previously communicated to the Joint Administrators by NNL in a letter dated the date hereof (with copies to the Monitor, the Creditors' Committee and the Bondholders' Committee) and such communication having been counter-signed by the Joint Administrators (such sale, a "<u>Material Asset Sale</u>"); *provided, however,* that some or all of such payment shall be subject to NNL Liquidity Review Procedures (in this case, however, the NNL Liquidity Review Procedures shall provide the UK Administrator with the same information and consultation rights as provided to the Creditors' Committee and the Bondholders' Committee under the procedures set forth in Section 5 of this Agreement and shall give pro forma effect to such payment and take into account any payments actually received by NNL in connection with such Material Asset Sale).

c.  Subject to the terms of this Agreement (including without limitation Sections 12.a. and 13.b. of this Agreement), NNL shall pay to NNUK the sum of US$10 million (the "<u>Second Shortfall Payment</u>" and together with the First Shortfall Payment, the "<u>Shortfall Payments</u>"), such amount to be paid out of the sale proceeds of a Material Asset Sale allocated to, and actually received by, NNL; *provided, however,* that some or all of such payment shall be subject to NNL Liquidity Review Procedures (modified as set forth in Section 6.b. above).

d.  The unpaid balance of the Shortfall Payments, if any, shall be carried forward and shall be paid in full or in part to NNUK on the earlier of the date or dates that, (i) in the reasonable and sole judgment of the Monitor, upon consultation with the Creditors' Committee and the Bondholders' Committee, after the

application of the NNL Liquidity Review Procedures (giving pro forma effect to such payment) such payment would not materially and adversely impact the liquidity position of NNL, and (ii) sale proceeds are allocated to, and actually received by, NNL from one or more subsequent Material Asset Sales, subject to the NNL Liquidity Review Procedures (giving pro forma effect to such payment and taking into account the payments actually received by NNL in connection with such Material Asset Sales), until paid in full. The obligation relating to the Shortfall Payments shall be an obligation of NNL only and of no other entity within the Nortel Group. Until the Shortfall Payments have been fully paid, NNL shall (i) promptly notify NNUK of the signing and closing of any Material Asset Sale, (ii) provide material information regarding such Material Asset Sale as may be reasonably requested by the UK Administrator, and (iii) upon actual receipt of sale proceeds from such Material Asset Sale, NNL shall promptly inform NNUK of the calculation and allocation of the sale proceeds from such Material Asset Sale to NNL. For the avoidance of doubt, any Shortfall Payments relating to any Material Asset Sale shall not be used as any basis for claiming that the purchase price allocation to NNUK in respect of such Material Asset Sale has been satisfied in whole or in part, and the Shortfall Payments shall not be excluded from the total amount of sale proceeds available for allocation to the relevant parties to such Material Asset Sale.

e. NNL's obligation to make the Shortfall Payments shall be secured by a charge against all of the assets of the Canadian Debtors (the "Shortfall Charge"), which charge shall be granted by order of the Canadian Court and shall at all times rank *pari passu* with the Inter-company Charge (as defined in the Canadian Initial Order and as modified from time to time, including without limitation any modifications relating to the priority of such charge). Without prejudice to the previous sentence, NNUK hereby acknowledges that any current or future charges that have been, or may be, granted to the US Debtors in connection with any funding provided by the US Debtors to the Canadian Debtors may, or could, be senior to the Shortfall Charge, and consents to such charges being senior to the Shortfall Charge.

f. The Canadian Debtors and the EMEA Debtors hereby confirm that the Shortfall Payments resulted from arm's length negotiations among such Parties.

g. In the event of any breach of Section 12.a. in connection with the Subject Transaction by any EMEA Debtor, NNL's obligation to make any Shortfall Payments shall be automatically forfeited, and the Shortfall Payments shall not be payable pursuant to Sections 6.b. and 6.c. of this Agreement under any circumstances. In addition, in such circumstances the Shortfall Charge shall be automatically extinguished.

h. The Canadian Debtors and the EMEA Debtors hereby confirm that the calculation of the payments set forth in Annex D resulted from arm's length negotiations among such Parties and are based on principles to fairly allocate profits and costs among the EMEA Debtors.

7

7. Covenants.

    a. [left intentionally blank].

    b. In respect of NNSA, the EMEA Debtors shall use commercially reasonable efforts to obtain (i) within 30 days of the date hereof, a letter from the NNSA Administrator and the NNSA Liquidator (to the extent legally required) authorizing the UK Administrator to bind NNSA to all provisions of this Agreement applicable to an EMEA Debtor, other than Sections 11.a., 11.b. and 12 of this Agreement, and (ii) within 45 days of the date hereof, a letter from the NNSA Administrator and the NNSA Liquidator (to the extent legally required) authorizing the UK Administrator to bind NNSA to Sections 11.a., 11.b. and 12 as applicable to an EMEA Debtor. The EMEA Debtors hereby agree to provide copies of such letters, upon receipt, to NNL (on behalf of the Canadian Debtors), NNI (on behalf of the US Debtors), the Creditors' Committee and the Bondholders' Committee.

8. Maximum Payment; Full and Final Settlement. Except with respect to the obligation of NNL to make the Shortfall Payments as herein provided, this Agreement shall constitute a full and final settlement of any and all Transfer Pricing Payments owing and that may, or could be, owing between (i) the EMEA Debtors *inter se*, and (ii) an EMEA Debtor, on the one hand, and a Canadian Debtor or a US Debtor, on the other hand, as Transfer Pricing Payments under the Transfer Pricing Agreements for all calculation periods or parts thereof within the EMEA Interim Period including, without limitation, any subsequent determination by any revenue authority with respect to the EMEA Interim Period giving rise to any subsequent liability to taxation of any Party hereto. Upon payment of the Shortfall Payments in full, the Shortfall Charge shall be automatically extinguished.

9. Settlement of Claims Between the US/Canadian Debtors and the EMEA Debtors. It is expressly understood that Part B of this Agreement is intended to constitute a full and final settlement of all of the matters between the US and Canadian Debtors, on the one hand, and the EMEA Debtors, on the other hand, set forth in Part B of this Agreement whether arising during, or related to, the EMEA Interim Period.

## PART C – PROVISIONS OF GENERAL APPLICATION

10. Scope of this Agreement. The Parties hereto agree that:

    a. this Agreement is not, and shall not be deemed to be, an acknowledgement by any Party of the assumption, ratification, adoption or rejection of the Transfer Pricing Agreements or any other Transfer Pricing methodology employed by the Nortel Group or its individual members for any purpose nor shall it be determinative of, or have any impact whatsoever on, the allocation of proceeds to any Debtor from any sale of assets of the Nortel Group; and

    b. this Agreement shall not have any effect on any claims as to amounts owed or purported to be owed to or by any Party, either: (i) prior to the Filing Date, or (ii)

after the Canada/US Interim Period or the EMEA Interim Period, as applicable; *provided, however*, the Parties agree, except as specifically provided herein, that payments required hereunder shall be made in accordance with the terms hereof regardless of any actual or purported right of offset or other defense; and

c.  this Agreement shall not serve as the basis for any claim by any Party against any other Party in respect of Transfer Pricing or any other theory of cost reimbursement in respect of any period prior to or after the Canada/US Interim Period or the EMEA Interim Period, as applicable, or allocation of any sale proceeds, or any ownership of intellectual property; and

d.  each Party approves all payments to be made pursuant to this Agreement and all other matters contemplated hereby, to the extent that such Party is a creditor of the Party making such payment; and

e.  this Agreement is without prejudice to any provision of the Master R&D Agreement, except full and final settlement in relation to Transfer Pricing Payments with respect to the Canada/US Interim Period or the EMEA Interim Period, as applicable, as set out herein; and

f.  this Agreement is without prejudice to any Party's claims relating to Inter-Company Trading Payments, whether pursuant to the GSPAs or the Trading Orders; *provided, however,* that upon satisfaction of the Conditions, it is expressly understood and agreed that the GSPAs do not require, and shall be deemed not to have required, any Party to make Transfer Pricing Payments.

11. Relinquishment of Intellectual Property Licenses.

a.  Each of the US Debtors and the EMEA Debtors hereby agrees to enter into an Appropriate License Termination (as defined below) with respect to the licenses and rights granted by NNL to such Debtors under or pursuant to the provisions of the Master R&D Agreement (such licenses and rights, the "IP Licenses") for the purpose of facilitating, and in consideration of a right to an allocation, to be determined in accordance with this Section 11, to such Debtors of portions of the sale proceeds from, the sale of any material assets of any of the Canadian Debtors and/or the US Debtors to a third party (an "Asset Sale"); *provided, however,* that (x) in the case of the US Debtors, no Appropriate License Termination shall be effective without the prior written consent of the Creditors' Committee and the Bondholders' Committee (which consent in each case shall not be unreasonably withheld), and (y) in the case of the EMEA Debtors, Appropriate License Terminations shall be limited to only those Asset Sales where the project name of the referenced proposed transaction or/and the description of the scope of assets, businesses and technologies covered by such Asset Sales have been previously communicated to the Joint Administrators by NNL in a letter dated the date hereof (with copies to the Monitor, the Creditors' Committee and the Bondholders' Committee) and such communication having been counter-signed by the Joint Administrators.

9

b.  For the purposes of this Agreement, the term "<u>Appropriate License Termination</u>" means an agreement to be entered into between NNL, the US Debtors and the EMEA Debtors, providing, effective as of the date of closing of each Asset Sale, (i) for the termination of the IP Licenses (including the right to sublicense) with respect only to any intellectual property used in or related to the businesses or assets being sold in that Asset Sale (the "<u>Transaction IP</u>"); (ii) for the grant by NNL or for the procurement by NNL of the grant by the relevant purchaser of the Transaction IP, as applicable, of a non-exclusive license or sublicense, as applicable, to the EMEA Debtors permitting each such EMEA Debtor to use the Transaction IP to the extent necessary for such Debtor to continue, for the purposes of winding-down its business, the use of such Transaction IP (except for any Transaction IP that is used exclusively in or relates exclusively to the businesses or assets which are the subject of that Asset Sale), as such Transaction IP is being used by such Debtor as of the date of closing of such Asset Sale and only in connection with the types of products and services sold or provided by such Debtor as of that date, including to perform such Debtor's obligations under any customer contract or end user contract that is in existence as of the date of closing of such Asset Sale and is not assigned to the purchaser in such Asset Sale, solely as such contract and such obligations are in effect as of that date (the "<u>Existing Customer Contract</u>"), with the right to sublicense the Transaction IP to such customers (but not to any person or entity which is not a customer of such Debtor as of the date of closing of such Asset Sale) to the extent required under the applicable Existing Customer Contract; (iii) that the foregoing non-exclusive license shall terminate on the date of termination of the applicable Existing Customer Contract (except to the extent that such license remains in effect with respect to the performance of any other Existing Customer Contracts), it being understood that the term of the Existing Customer Contract shall not be extended or renewed beyond its scheduled expiry date except to the extent any automatic extension rights are in effect at the date of closing of such Asset Sale that may be exercised solely at the option of the other party to the relevant Existing Customer Contract without the consent of the Debtor party to such Contract; *provided, however,* that in the event of such automatic extension such Debtor shall be required to seek to terminate the Existing Customer Contract as soon as possible in accordance with the terms of such Existing Customer Contract; and (iv) that the Appropriate License Termination shall not affect the ownership rights that such Debtors and NNL may have to any intellectual property.  For the avoidance of doubt, the Appropriate License Termination will not be deemed to be or result in an expiry or termination of the Master R&D Agreement.

c.  The Parties hereby agree that, within a reasonable period of the date hereof, the Debtors shall negotiate in good faith and attempt to reach agreement on a timely basis on a sample form agreement to effectuate an Appropriate License Termination, such form to include more specific details as to the scope of "used in or related to", as used in clause (i) of the definition of the term "Appropriate License Termination."  In addition, the Parties hereby agree that such sample form agreement shall have additional provisions that the Parties deem appropriate and customary for such license termination agreements.



    d. Where any Debtor enters into any Appropriate License Termination in accordance with the provisions of this Section 11, such Debtor shall be deemed to be a Selling Debtor, and the proceeds of such Asset Sale shall be deemed to be Sale Proceeds, for the purposes of Sections 12.b. and 12.d., and Sections 12.b. and 12.d. shall apply accordingly.

12. Entry into Sale Transactions.

    a. Each Debtor hereby agrees that its execution of definitive documentation with a purchaser (or, in the case of any auction, the successful bidder in any such auction) of, or closing of any sale of, material assets of any of the Debtors to which such Debtor (a "Selling Debtor") is proposed to be a party (each, a "Sale Transaction") shall not be conditioned upon such Selling Debtor reaching agreement with the other Selling Debtors regarding (A) allocation of the sale proceeds ("Sale Proceeds") from the relevant Sale Transaction or (B) the binding procedure for the allocation of Sale Proceeds from the relevant Sale Transaction.

    b. Pending the distribution of the Sale Proceeds as described in the second sentence of this Section 12.b., the entire amount of the Sale Proceeds (less applicable transfer or value-added taxes and, to the extent agreed by the Selling Debtors, transaction costs) shall be deposited in an escrow account pursuant to an escrow agreement, the terms of which shall be negotiated and agreed by all Selling Debtors, in each case acting reasonably (the "Escrow Account"). In no case shall there be any distribution from the Escrow Account in advance of either (i) agreement of all of the Selling Debtors or (ii) in the case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the Protocol (as defined below) applicable to the Sale Proceeds, and subject in each case to payment of the agreed or determined amount of allocation of Sale Proceeds to all Selling Debtors.

    c. Without derogating from the obligations provided in Section 12.a., the Debtors shall, as soon as reasonably practicable following the execution of this Agreement, negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (the "Interim Sales Protocol"), which Protocol shall provide binding procedures for the allocation of Sales Proceeds where the Selling Debtors in such Sale Transaction have been unable to reach agreement regarding such allocation.

    d. The Selling Debtors shall, immediately following entry into any Sale Transaction, negotiate in good faith and on a timely basis to attempt to reach agreement regarding the allocation of the Sale Proceeds from such Sale Transaction within a reasonable period of time or as may be otherwise provided in the Interim Sales Protocol, failing which the Interim Sales Protocol shall apply to determine the allocation of the relevant Sale Proceeds.

11

e.  Notwithstanding any other provision of this Section 12, (i) no Debtor shall be required to enter into a Sale Transaction so long as such Debtor reasonably determines, acting in good faith and after consultation with the other Parties to this Agreement, that such Sale Transaction is not in the best economic interests of its creditors generally, and (ii) it is expressly acknowledged by all Debtors that, in relation to any Sale Transaction, neither (A) any matter in the course of negotiation with any prospective purchaser, nor (B) any discussion of, or agreement in relation to, the sharing of liabilities relating to such Sale Transaction (which include severance and other restructuring costs of each Selling Debtor) and sharing of transaction costs relating to such Sale Transaction (which include break fees and indemnification escrow accounts) between the Selling Debtors shall constitute a breach of Section 12.a. of this Agreement.

f.  Nothing in this Section 12 shall prejudice the rights of any Party, or otherwise constitute an amendment, modification or waiver of the rights of any Party, to seek its entitlement to Sale Proceeds from any Sale Transaction.

g.  For the purposes of Sections 11.c. and 12.a. through 12.f. (inclusive):

  i.  the US Debtors hereby agree that with respect to any of the matters referred to in such Sections as to which the agreement or determination of any of the US Debtors is required, the US Debtors shall include the Creditors' Committee and the Bondholders' Committee in any negotiations on such issues with the other Debtors or any related proceedings and any agreement or determination by the US Debtors shall require the prior consent of the Creditors' Committee and the Bondholders' Committee acting in good faith; and

  ii.  the Canadian Debtors hereby agree that with respect to any of the matters referred to in such Sections as to which the agreement or determination of any of the Canadian Debtors is required, the Canadian Debtors shall include the Bondholders' Committee in any negotiations on such issues with the other Debtors or any related proceedings and any agreement or determination by the Canadian Debtors shall require the prior consent of the Bondholders' Committee acting in good faith and the Monitor.

13. Effectiveness.

a.  No provision of this Agreement (other than as set forth in Section 13.f. of this Agreement) shall be effective until the satisfaction of the following conditions: (A) each of the US Court and the Canadian Court approving the entirety of this Agreement and all of the provisions hereof (the "North American Court Condition"), (B) the UK Court giving a direction (the "UK Court's Directions") that, if so sought, the Joint Administrators be at liberty to enter into this Agreement (the "UK Court Condition" and, together with the North American Court Condition, the "Court Approval Condition"); *provided, however,* the Joint Administrators may at their election waive the UK Court Condition, and (C) the

Canadian Court and the US Court approving amendments to the cross-border protocol previously approved by the US Court and the Canadian Court (as may be in effect from time to time, the "Cross-Border Protocol") that are mutually satisfactory to NNL (on behalf of the Canadian Debtors), NNI (on behalf of the US Debtors), the Monitor, the Creditors' Committee and the Bondholders' Committee (the "Cross-Border Protocol Condition", and together with the Court Approval Condition, the "Conditions").

b.   Upon satisfaction of each of the Conditions, all provisions of this Agreement, other than Sections 6.b., 6.c., 6.d., 6.e. and 6.f. of this Agreement, shall be effective as of the date of the satisfaction of the last Condition. Upon execution of the transaction documents relating to the Subject Transaction, Sections 6.b., 6.d., 6.e. and 6.f. of this Agreement shall be effective (except that the term "Shortfall Payments" as used in Sections 6.d., 6.e. and 6.f. shall mean only the First Shortfall Payment until Section 6.c. shall become effective). Upon agreement among the various sellers under the Subject Transaction and the Creditors' Committee and the Bondholders' Committee with regards to (A) the allocation of sale proceeds from the Subject Transaction or (B) the binding procedure for the allocation of sale proceeds from the Subject Transaction, Section 6.c. of this Agreement shall be effective. For the purposes of this Agreement, "Subject Transaction" means the first sale of any material assets of any one or more of the Debtors of each of (i) the Canadian Debtors, (ii) the US Debtors and (iii) the EMEA Debtors (excluding, for the avoidance of doubt, any sale where the involvement of the EMEA Debtors is solely limited to Appropriate License Terminations).

c.   Notwithstanding any of the foregoing, if (i) (x) the UK Court Condition is neither satisfied nor waived by the Joint Administrators in accordance with the terms of Section 13.a. and (y) the Canadian Court and the US Court approve this Agreement, and (ii) the Cross-Border Protocol Condition is fully satisfied, then Part A of this Agreement and those provisions of Part C applicable to Part A shall be effective with regards to the Canadian Debtors and the US Debtors.

d.   Each Party hereto shall:

   i.   use commercially reasonable efforts to satisfy the Conditions as soon as possible, taking into account the availability of the respective Courts to address the matters set forth in this Agreement;

   ii.  keep all other Parties, the Creditors' Committee and the Bondholders' Committee reasonably apprised of the progress of the satisfaction of the Conditions and provide such other information regarding the satisfaction of the Conditions as reasonably requested by other Parties; and

   iii. use commercially reasonable efforts to allow any other Party, the Creditors' Committee or the Bondholders' Committee which so requests in writing reasonable participation in connection with any proceedings in

13

any Court related to the satisfaction of the Conditions; *provided, however,* that no Canadian Debtor or US Debtor shall have any obligation to facilitate the participation by the Joint Administrators or the EMEA Debtors in any proceedings related to the satisfaction of the Cross-Border Protocol Condition; and *provided further* that the foregoing proviso shall not constitute an amendment, modification or waiver of rights of the Joint Administrators and the EMEA Debtors to participate in any court proceedings where they would be entitled to otherwise participate.

e.  If the Joint Administrators elect to seek the UK Court's Directions, then the EMEA Debtors shall (A) use commercially reasonable efforts to obtain the UK Court's Directions as soon as possible, taking into account the availability of the UK Court, (B) keep all other Parties, the Creditors' Committee and the Bondholders' Committee reasonably apprised of the progress of the efforts to obtain UK Court's Directions and provide such other information regarding the efforts to obtain UK Court's Directions as reasonably requested by other Parties, and (C) use commercially reasonable efforts to allow any other Party, the Creditors' Committee or the Bondholders' Committee which so requests in writing reasonable participation in connection with any proceedings in the UK Court related to the UK Court's Directions.

f.  Notwithstanding any of the foregoing, the following provisions of the Agreement shall be effective as of the date hereof: Sections 7.b., 11.c., 12.c., 12.g., 13.d, 13.e., 13.f,15 – 19, and 21 – 23.

14. Term. This Agreement shall expire on December 31, 2009 (the "Expiration Date"). Upon termination, the Parties' rights and obligations, except in respect of the obligations under Sections 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 14, 15, 16, 17, 20, 21 and 22 of this Agreement (but only to the extent that these provisions were effective in accordance with Section 13 of this Agreement prior to the Expiration Date) shall cease immediately but without prejudice to the rights and obligations of the Parties existing before termination.

15. Amendments. This Agreement may be amended, on no less than 10 Business Days' notice, only by means of a writing signed by all Parties, and approved by the Creditors' Committee and the Bondholders' Committee, which amendments, if material in the judgment of the Parties, must be approved by all of the Courts that initially approved this Agreement or gave directions in respect of this Agreement (in the case of the UK Court). For the purpose of this Section 15, "Business Day" shall mean a day that is not a Saturday, Sunday or national public holiday in Canada, the United States or the United Kingdom.

16. Governing Law and Jurisdiction.

a.  This Agreement shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction; *provided, however,* that Section 17 shall be governed exclusively by English law.

14

b.  To the fullest extent permitted by applicable law, each Party (i) agrees to submit to the non-exclusive jurisdiction of the US and Canadian Courts (in a joint hearing conducted under the Cross-Border Protocol adopted by such Court, as it may be in effect from time to time), for purposes of all legal proceedings to the extent relating to the matters agreed in this Agreement (but not, for the avoidance of doubt, any Transfer Pricing Agreement matter generally), (ii) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever to the extent relating to the matters agreed in this Agreement must be commenced in the US Court if such claim, action or proceeding would solely affect the US Debtors, the Canadian Court if such claim, action or proceeding would solely affect the Canadian Debtors, a joint hearing of both the Canadian and US Courts conducted under the Cross-Border Protocol if such claim, action or proceeding would affect the Canadian Debtors and the US Debtors or the EMEA Debtors and the English courts if such claim, action or proceeding would solely affect the EMEA Debtors, (iii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such action brought in such a Court or any claim that any such action brought in such a Court has been brought in an inconvenient forum, (iv) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by law shall be valid and sufficient service thereof, and (v) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law; *provided, however,* that any claim, action or proceeding set forth in Section 17 of this Agreement shall be brought exclusively in the English courts.

17. No Personal Liability of the Joint Administrators.

a.  The Parties agree that the Joint Administrators have negotiated and are entering into this Agreement as agents for the EMEA Debtors to which they are appointed and that none of the Joint Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Nortel Group company to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations.

b.  The Joint Administrators are a Party to this Agreement: (i) as agents of certain of the respective EMEA Debtors of which they are administrators; and (ii) in their own capacities solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the United Kingdom Insolvency Act 1986 and enforcing the obligations of certain other Parties to this Agreement.

c.  Notwithstanding anything in Section 16, any claim, action or proceeding against the Joint Administrators in their personal capacities (and not as agents for any EMEA Debtors) under this Agreement shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English Courts.

15

18. Creditors' Committee and Bondholders' Committee Support.

    a. Written confirmation has been received from the Creditors' Committee confirming that the members of the Creditors' Committee, after thorough review and due deliberation of this Agreement, have voted, in compliance with the by-laws of the Creditors' Committee, in favor of supporting this Agreement and have granted permission to their advisors to file appropriate materials with the applicable Courts in support of the motions by the Debtors for Court approval of this Agreement.

    b. Written confirmation has been received from the counsel to the Bondholders' Committee confirming that the Bondholders' Committee has granted permission to its advisors to file appropriate materials with the applicable Courts in support of the motions by the Debtors for Court approval of this Agreement.

19. Representations and Warranties.

    a. Subject to satisfaction of the Court Approval Condition, each Party (but, for the avoidance of doubt, not the Joint Administrators in their personal capacities) hereby severally represents and warrants to each other that, as of the date hereof:

        i. it has the power and authority to enter into this Agreement and to carry out its obligations hereunder;

        ii. the execution of this Agreement, and the consummation of the transactions contemplated herein, have been authorized by all necessary approvals, and no other act or proceeding on its part is necessary to authorize the execution of this Agreement; and

        iii. this Agreement has been duly executed by it and constitutes its legal, valid and binding obligations.

    b. Other than entities in or related to the regions of Asia / Pacific, Central and South America, NNSA and Nortel Networks A.G., each Party hereby severally represents and warrants to each other Party that, to the best of such Party's knowledge based on due and reasonable inquiry, including of NNL, it is not party to any Transfer Pricing Agreement with any other Nortel Group entity other than as set forth in this Agreement.

20. Reservation of Rights. Nothing in this Agreement shall constitute an amendment, modification or waiver of rights of any Party (i) under any other agreement, including, without limitation, the GSPAs and the Transfer Pricing Agreements (except as expressly set forth in Sections 3 and 8 of this Agreement), applicable law or otherwise, including, without limitation, the right to object to the propriety of any payments made under or in connection with the Transfer Pricing Agreements or any offset arising therefrom or otherwise or (ii) with respect to any potential tax contingencies, assessments, rulings or agreements arising from Transfer Pricing Payments pursuant to the Transfer Pricing Agreements or any offset arising therefrom or otherwise; *provided, however,* that the

Parties waive any and all rights to object to or otherwise seek to amend or revisit (A) any payments made pursuant to this Agreement, except that (a) NNI and NNL do not waive their rights to the extent required to allow NNI to enforce its rights against NNL pursuant to Sections 1.a.ii. and 5 of this Agreement, and (b) NNUK does not waive its rights to the extent required to allow NNUK to enforce its rights against NNL pursuant to Section 6 of this Agreement, and (B) the January Payment. The use of the term Transfer Pricing Payment (or any similar term) or reference to the Transfer Pricing Agreements (or similar agreement) in this Agreement is for convenience only and shall have no evidentiary effect or be used by any of the Parties hereto in any proceeding to determine the pre-petition or post-petition validity, applicability, assumption, affirmation or ratification by any Party of the Transfer Pricing Agreements or any transfer pricing methodology provided in the Transfer Pricing Agreements.

21. Counterparts. This Agreement may be executed in separate counterparts (which may include counterparts delivered by facsimile transmission) and all of said counterparts taken together shall be deemed to be an original and shall be binding on the Party who signed the counterpart and all of which together shall constitute a single agreement.

22. Severability. In the event that any provision of this Agreement shall be illegal, invalid or unenforceable, such provision shall be construed by limiting it in such a way so as to render it legal, valid and enforceable to the maximum extent provided by applicable law, and the legality, validity and enforceability of the remaining provisions shall not in any way be affected or impaired by any illegality, invalidity or unenforceability of any provision. The Parties shall negotiate in good faith with respect to any provision to this Agreement found to be illegal, invalid or unenforceable, in order to agree on a substitute provision giving effect, to the maximum extent possible, to the original intent of such provision.

23. Several Obligations. Except as specifically set forth in this Agreement, the obligations of each Party hereunder are several, and not joint and several.

24. Defunct Distributors' Covenant. Each of the Debtors hereby covenants that such Debtor is not currently a party to, and shall not enter, into any arrangement pursuant to which any Transfer Pricing Payments may become payable to or by the following entities: Nortel Networks OY, Nortel Networks AB, or Nortel Networks Shannon Limited.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed and delivered as of this 9th day of June, 2009.

NORTEL NETWORKS CORPORATION

By _____
    Name: Paviter S. Binning
    Title:  Executive Vice-President,
    Chief Financial Officer and Chief
    Restructuring Officer

By _____
    Name: Tracy S. J. Connelly McGilley
    Title:  Assistant Secretary

NORTEL NETWORKS LIMITED

By _____
    Name: Paviter S. Binning
    Title:  Executive Vice-President,
    Chief Financial Officer and Chief
    Restructuring Officer

By _____
    Name: Tracy S. J. Connelly McGilley
    Title:  Assistant Secretary

NORTEL NETWORKS GLOBAL
CORPORATION

By _____
    Name: Paviter S. Binning
    Title:  Director

By: _____
    Tracy S. J. Connelly McGilley
    Assistant Secretary

Signature page to Interim Funding
and Settlement Agreement

575

NORTEL NETWORKS INTERNATIONAL
CORPORATION

By _____
    Name: Paviter S. Binning
    Title:  Director

By _____
    Tracy S. J. Connelly McGilley
    Assistant Secretary


NORTEL NETWORKS TECHNOLOGY
CORPORATION

By _____
    Name: Paviter S. Binning
    Title: Director

By: _____
    Name: Tracy S. J. Connelly McGilley
    Title:   Assistant Secretary

576

NORTEL NETWORKS INC.

By _____
Name: John Doolittle
Title: Vice President


ARCHITEL SYSTEMS (U.S.)
CORPORATION

By _____
Name: John Doolittle
Title: Vice President


CORETEK, INC.

By _____
Name: John Doolittle
Title: Vice President


NORTEL ALTSYSTEMS, INC.

By _____
Name: John Doolittle
Title: Vice President


NORTEL ALTSYSTEMS
INTERNATIONAL INC.

By _____
Name: John Doolittle
Title: Vice President


NORTEL NETWORKS APPLICATIONS
MANAGEMENT SOLUTIONS INC.

By _____
Name: John Doolittle
Title: Vice President


Signature page to Interim Funding
and Settlement Agreement

**577**

NORTEL NETWORKS CABLE
SOLUTIONS INC.

By _____
   Name: John Doolittle
   Title: Vice President

NORTEL NETWORKS CAPITAL
CORPORATION

By _____
   Name: John Doolittle
   Title: Vice President

NORTEL NETWORKS HPOCS INC.

By _____
   Name: John Doolittle
   Title: Vice President

NORTEL NETWORKS INTERNATIONAL
INC.

By _____
   Name: John Doolittle
   Title: Vice President

NORTEL NETWORKS OPTICAL
COMPONENTS INC.

By _____
   Name: John Doolittle
   Title: Vice President

NORTHERN TELECOM
INTERNATIONAL INC.

By _____
   Name: John Doolittle
   Title: Vice President

Signature page to Interim Funding
and Settlement Agreement

QTERA CORPORATION

By _____
Name: John Doolittle
Title: Vice President


SONOMA SYSTEMS

By _____
Name: John Doolittle
Title: Vice President


XROS, INC.

By _____
Name: John Doolittle
Title: Vice President

Signature page to Interim Funding
and Settlement Agreement

Signed by ALAN BLOOM on behalf of each
of the Joint Administrators of each of the
EMEA Debtors over which they have been
appointed, without personal liability as
provided in Section 17 of this Agreement
and solely for the purpose of obtaining the
benefit of the provisions of this Agreement
expressed to be conferred on or given to each
of the Joint Administrators

By

Name:

Title:

in the presence of:

Witness Signature

Name:
Address:

SIGNED for and on behalf of NORTEL          )
NETWORKS UK LIMITED (IN                      )      ALAN BLOOM
ADMINISTRATION)                              )
by ALAN BLOOM as Joint Administrator         )
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:
Address:

580

SIGNED for and on behalf of NORTEL ............ )
NETWORKS (IRELAND) LIMITED ......... )    **ALAN BLOOM**
(IN ADMINISTRATION) ......................... )
by ALAN BLOOM as Joint Administrator )
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:
Address:

SIGNED for and on behalf of NORTEL ............ )
NETWORKS NV (IN ................................... )    **ALAN BLOOM**
ADMINISTRATION) ................................. )
by ALAN BLOOM as Joint Administrator )
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:
Address:

SIGNED for and on behalf of NORTEL ............ )
NETWORKS SPA (IN ................................. )    **ALAN BLOOM**
ADMINISTRATION) ................................. )
by ALAN BLOOM as Joint Administrator )
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:
Address:

581

SIGNED for and on behalf of NORTEL      )
NETWORKS BV (IN                          )     ALAN BLOOM
ADMINISTRATION)                          )
by ALAN BLOOM as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:  Helen Mamegutza
Address:  , more London Place
         London SE )

SIGNED for and on behalf of NORTEL      )
NETWORKS POLSKA SP Z.O.O. (IN           )     ALAN BLOOM
ADMINISTRATION)                          )
by ALAN BLOOM as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:  Helen Marmadgojan
Address:  , more London Place
         London SE )

SIGNED for and on behalf of NORTEL      )
NETWORKS HISPANIA SA (IN                 )     ALAN BLOOM
ADMINISTRATION)                          )
by ALAN BLOOM as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:  Helen Mamegutza

10-08-2009  01:03    FRAN-RADISSON SAS STRAND HOTEL              +46                    T-141   P.008/008   F-797

Address:

**SIGNED for and on behalf of NORTEL**
**NETWORKS (AUSTRIA) GMBH (IN**
**ADMINISTRATION)**                          )          **ALAN BLOOM**
by **ALAN BLOOM** as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:
Address:


**SIGNED for and on behalf of NORTEL**
**NETWORKS SRO (IN**
**ADMINISTRATION)**                          )          **ALAN BLOOM**
by **ALAN BLOOM** as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:
Address:

10-06-2008   01:03   FRAN-RADISSON SAS STRAND HOTEL              +46              T-141   P.006/009   F-787

SIGNED for and on behalf of NORTEL
NETWORKS ENGINEERING              )        ALAN BLOOM
SERVICES KFT (IN                  )
ADMINISTRATION)                   )
by ALAN BLOOM as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:
Address:

SIGNED for and on behalf of NORTEL
NETWORKS PORTUGAL SA (IN          )        ALAN BLOOM
ADMINISTRATION)                   )
by ALAN BLOOM as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:
Address:

SIGNED for and on behalf of NORTEL
NETWORKS SLOVENSKO SRO (IN        )        ALAN BLOOM
ADMINISTRATION)                   )
by ALAN BLOOM as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

Witness signature

PAGE 6/9 * RCVD AT 10/06/2008 01:08:27 [GMT Daylight Time] * SVR:LN3FX01/5 * DNS:888 * CSID:+46 * DURATION (mm-ss):01-13

Name: *Helen Mannington*
Address: *1 More London Place London SE1.*

**SIGNED for and on behalf of NORTEL**                    )
**NETWORKS ROMANIA SRL (IN**                              )    **ALAN BLOOM**
**ADMINISTRATION)**                                       )
by ALAN BLOOM as Joint Administrator                      )
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name: *Helen Mannington*
Address: *1 More London Places London S6.*

**SIGNED for and on behalf of NORTEL**                    )
**GMBH (IN ADMINISTRATION)**                              )    **ALAN BLOOM**
by ALAN BLOOM as Joint Administrator                      )
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name: *Helen Mannington*
Address: *1 More London Places London SE1.*

585

SIGNED for and on behalf of NORTEL )
NETWORKS OY (IN )    **ALAN BLOOM**
ADMINISTRATION) )
by ALAN BLOOM as Joint Administrator )
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:
Address:

SIGNED for and on behalf of NORTEL )
NETWORKS AB (IN )    **ALAN BLOOM**
ADMINISTRATION) )
by ALAN BLOOM as Joint Administrator )
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:
Address:

SIGNED for and on behalf of NORTEL )
NETWORKS INTERNATIONAL )
FINANCE AND HOLDING BV (IN )    **ALAN BLOOM**
ADMINISTRATION) )
by ALAN BLOOM as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:
Address:

**586**

10-06-2009   01:09   FRAN-RADISSON SAS STRAND HOTEL              +46              T-141   P.006/009   F-797

SIGNED for and on behalf of NORTEL          )
NETWORKS FRANCE S.A.S. (IN                  )      ALAN BLOOM
ADMINISTRATION)                             )
by ALAN BLOOM as Joint Administrator        )
(acting as agent and without personal
liability) in the presence of:

Witness signature

Name:
Address:



**Schedule 1**

**Canadian Debtors**

Nortel Networks Corporation

Nortel Networks Limited

Nortel Networks Global Corporation

Nortel Networks International Corporation

Nortel Networks Technology Corporation

**588**

**Schedule 2**

**US Debtors**

Nortel Networks Inc.

Architel Systems (U.S.) Corporation

CoreTek, Inc.

Nortel Altsystems, Inc. (previously "Alteon WebSystems, Inc.")

Nortel Altsystems International Inc. (previously "Alteon WebSystems International, Inc.")

Nortel Networks Applications Management Solutions Inc.

Nortel Networks Cable Solutions Inc.

Nortel Networks Capital Corporation

Nortel Networks HPOCS Inc.

Nortel Networks International Inc.

Nortel Networks Optical Components Inc.

Northern Telecom International Inc.

Qtera Corporation

Sonoma Systems

Xros, Inc.

**589**

## Schedule 3

### EMEA Debtors

Nortel Networks UK Limited (In Administration)

Nortel Networks (Ireland) Limited (In Administration)

Nortel Networks NV (In Administration)

Nortel Networks SpA (In Administration)

Nortel Networks BV (In Administration)

Nortel Networks Polska Sp z.o.o. (In Administration)

Nortel Networks Hispania, SA (In Administration)

Nortel Networks (Austria) GmbH (In Administration)

Nortel Networks sro (In Administration)

Nortel Networks Engineering Services Kft (In Administration)

Nortel Networks Portugal SA (In Administration)

Nortel Networks Slovensko, sro (In Administration)

Nortel Networks Romania Srl (In Administration)

Nortel GmbH (In Administration)

Nortel Networks Oy (In Administration)

Nortel Networks AB (In Administration)

Nortel Networks International Finance & Holding BV (In Administration)

Nortel Networks France S.A.S. (In Administration)

590

**Annex A**

**Amendments to and Related Understandings Regarding
Master Research and Development Agreement
dated as of December 22, 2004 ("Master R&D Agreement")**

1.    Undated Addendum to Master R&D Agreement executed between October 2005 and June 2006.

2.    Agreement with Respect to Certain NN Technology effective as of December 30, 2006 (being the day before the closing date of the Share and Asset Sale Agreement between NNL and Alcatel-Lucent).

3.    Addendum to Master R&D Agreement dated December 14, 2007 with an effective date of January 1, 2006.

4.    Third Addendum to Master R&D Agreement with an effective date of January 1, 2006.

5.    Fourth Addendum to Master R&D Agreement with an effective date of December 31, 2008.

6.    Letter of acknowledgment dated January 14, 2009 from NNL to the Directors of NNUK, NNSA and NNIR and the UK Administrator.

7.    Release in Connection with Master R&D Agreement dated 1 January 2009.

8.    Memorandum of Understanding in Connection with Master R&D Agreement, undated with an effective date of 1 January 2006.

A-1



**Annex B**

**Distribution Agreements**

| Party | Date |
|-------|------|
| Nortel Networks Limited ("NNL") and Nortel Networks N.V. | undated, effective as of 1 January 2001 |
| NNL and Nortel Networks S.p.A. | undated, effective as of 1 January 2002 (plus undated and unsigned Addendum, effective as of 1 January 2003) |
| NNL and Nortel Networks B.V. | dated 22 December 2003, effective as of 1 January 2001 |
| NNL and Nortel Networks Polska Sp. z. o. o. | undated, effective as of 1 January 2001 (letter of amendment executed in November 2003, effective as of 1 January 2001 plus Addendum executed in August 2005, effective as of 1 January 2003) |
| NNL and Nortel Networks Hispania, S.A. | undated, effective as of 1 January 2001 |
| NNL and Nortel Networks (Austria) GmbH | undated, effective as of 1 January 2001 |
| NNL and Nortel Networks, s.r.o. | dated 15 April 2003, effective as of 1 January 2001 |
| NNL and Nortel Networks Engineering Services Kft | undated, effective as of 1 January 2001 |
| NNL and Nortel Networks Portugal S.A. | undated, effective as of 1 January 2001 |
| NNL and Nortel Networks Slovensko, s.r.o. | undated, effective as of 1 January 2001 |
| NNL and Nortel Networks Romania SRL | executed 22 January 2004, effective 1 January 2003 |
| NNL and Nortel Networks AG | undated, effective 1 January 2001 |



**Annex C**

**Funding Schedule**

Payments pursuant to Section 1.a. of this Agreement shall be paid in the following amounts and on the following dates (if the Conditions (other than the UK Court's Directions) are not satisfied by the payment dates set forth below, each such payment date shall be automatically postponed to one (1) business day after the date of satisfaction of such Conditions):

| | |
|---|---|
| June 10, 2009 | US$31,400,000.00 |
| June 15, 2009 | US$31,400,000.00 |
| July 31, 2009 | US$31,400,000.00 |
| August 31, 2009 | US$31,400,000.00 |
| September 30, 2009 | US$31,400,000.00 |
| **TOTAL** | **US$157,000,000.00** |

C-1

## Annex D

### Intra-EMEA Transfer Pricing Settlement Amounts

| EMEA Debtor | Amount payable US$m |
|---|---|
| [Nortel Networks S.A.][1] | [(4.80)] |
| Nortel Networks (Ireland) Limited | (20.84) |
| [Nortel Networks AG][1] | [(4.08)] |
| Nortel Networks Hispania SA | (1.72) |
| Nortel Networks Slovensko s.r.o | (0.52) |
| Nortel Networks Romania SRL | (0.19) |
| Nortel Networks Portugal S.A. | (1.50) |
| Nortel Networks Polska S.p.z.o.o | (8.22) |
| Nortel Networks B.V. | (17.99) |
| Nortel Networks S.p.A. | (2.73) |
| Nortel Networks Engineering Services Kft | (1.92) |
| Nortel Networks s.r.o | (2.79) |
| Nortel Networks N.V. | (6.43) |
| Nortel Networks Austria GmbH | (2.35) |

---

[1] To the extent it becomes a Party hereto.

| EMEA Debtor | Amount receivable US$m |
|---|---|
| Nortel Networks UK Limited | [4.80 (Nortel Networks S.A.)][1] |
| | 20.84 (Nortel Networks (Ireland) Limited) |
| | [4.08 (Nortel Networks AG)][1] |
| | 1.72 (Nortel Networks Hispania SA) |
| | 0.52 (Nortel Networks Slovensko s.r.o) |
| | 0.19 (Nortel Networks Romania SRL) |
| | 1.50 (Nortel Networks Portugal S.A.) |
| | 8.22 (Nortel Networks Polska S.p.z.o.o) |
| | 17.99 (Nortel Networks B.V.) |
| | 2.73 (Nortel Networks S.p.A.) |
| | 1.92 (Nortel Networks Engineering Services Kft) |
| | 2.79 (Nortel Networks s.r.o) |
| | 6.43 (Nortel Networks N.V.) |
| | 2.35 (Nortel Networks Austria GmbH) |

D-2

# TAB B

**596**

June 15, 2009

This is Exhibit.........B...............referred to in the
affidavit of.....JOHN  DOOLITTLE.........
sworn before me, this......22nd.........
day of.......June...........................20..09.

.........................................
A COMMISSIONER FOR TAKING AFFIDAVITS

<u>By e-mail</u>

To:    Nortel Networks Limited
       Nortel Networks Inc.
       Nortel Networks UK Limited
       The other parties listed in the Schedule hereto

       <u>Re:</u>    <u>Interim Funding and Settlement Agreement</u>

Dear Mr. Bloom:

Reference is made to that Interim Funding and Settlement Agreement (the "<u>Agreement</u>") dated June 9, 2009, by and between Nortel Networks Limited ("<u>NNL</u>"), Nortel Networks Inc., ("<u>NNI</u>"), Nortel Networks UK Limited ("<u>NNUK</u>"), individuals from Ernst & Young LLP and Ernst & Young Chartered Accountants, serving as administrators in the administration proceedings before the High Court of Justice in London, England in respect of NNUK and the other EMEA Debtors (the "<u>Joint Administrators</u>"), and other parties thereto.  Terms used herein and not otherwise defined shall have the meanings assigned to such terms in the Agreement.  This letter documents the agreement of the Parties as to certain matters referred to in Section 13.a. of the Agreement.

The Joint Administrators acknowledge that there may be a circumstance in which the Court refuses to make an order that the Joint Administrators be at liberty to enter into the Agreement, solely because the court does not consider it appropriate to make an order in relation to the exercise of the administrators powers under Schedule B1 of the Insolvency Act 1986.  If the Court does this and also does not make any determination or express any views (preliminary or otherwise, or oral or written), on the appropriateness of the Joint Administrators entering into this Agreement on behalf of any of the EMEA Debtors, then the Joint Administrators will agree to waive the UK Court Condition.

[Signature pages follow.]

597

Very truly yours,

SIGNED for and on behalf of **NORTEL**    )
**NETWORKS UK LIMITED (IN**    )
**ADMINISTRATION)**    )
by ALAN BLOOM        as Joint
Administrator (acting as agent and without
personal liability) ~~in the presence of:~~

SIGNED for and on behalf of **NORTEL**    )    **ALAN BLOOM**
**NETWORKS (IRELAND) LIMITED**    )
**(IN ADMINISTRATION)**    )
by **ALAN BLOOM** as Joint Administrator
(acting as agent and without personal
liability) ~~in the presence of:~~

SIGNED for and on behalf of **NORTEL**    )
**NETWORKS NV (IN**    )
**ADMINISTRATION)**    )
by ALAN BLOOM        as Joint
Administrator (acting as agent and without
personal liability) ~~in the presence of:~~

SIGNED for and on behalf of **NORTEL**    )
**NETWORKS SPA (IN**    )
**ADMINISTRATION)**    )
by ALAN BLOOM        as Joint
Administrator (acting as agent and without
personal liability) ~~in the presence of:~~

Signature page to letter from Joint Administrators

**598**

**SIGNED** for and on behalf of **NORTEL NETWORKS BV (IN ADMINISTRATION)**
by ALAN BLOOM          as Joint
Administrator (acting as agent and without
personal liability) in the presence of:
)
)
)
)

**SIGNED** for and on behalf of **NORTEL NETWORKS POLSKA SP Z.O.O. (IN ADMINISTRATION)**
by ALAN BLOOM          as Joint
Administrator (acting as agent and without
personal liability) in the presence of:
)
)
)
)

**SIGNED** for and on behalf of **NORTEL NETWORKS HISPANIA SA (IN ADMINISTRATION)**
by ALAN BLOOM          as Joint
Administrator (acting as agent and without
personal liability) in the presence of:
)
)
)
)

**SIGNED** for and on behalf of **NORTEL NETWORKS (AUSTRIA) GMBH (IN ADMINISTRATION)**
by ALAN BLOOM          as Joint
Administrator (acting as agent and without
personal liability) in the presence of:
)
)
)
)

Signature page to letter from Joint Administrators

SIGNED for and on behalf of **NORTEL
NETWORKS SRO (IN
ADMINISTRATION)**
by ALAN BLOOM        as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)

SIGNED for and on behalf of **NORTEL
NETWORKS ENGINEERING
SERVICES KFT (IN
ADMINISTRATION)**
by ALAN BLOOM        as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)

SIGNED for and on behalf of **NORTEL
NETWORKS PORTUGAL SA (IN
ADMINISTRATION)**
by ALAN BLOOM        as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)

SIGNED for and on behalf of **NORTEL
NETWORKS SLOVENSKO SRO (IN
ADMINISTRATION)**
by ALAN BLOOM        as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)

Signature page to letter from Joint Administrators

600
92

SIGNED for and on behalf of **NORTEL**
**NETWORKS ROMANIA SRL (IN**
**ADMINISTRATION)**
by ALAN BLOOM          as Joint
Administrator (acting as agent and without
personal liability) ~~in the presence of~~:

)
)
)
)

SIGNED for and on behalf of **NORTEL**
**GMBH (IN ADMINISTRATION)**
by ALAN B BLOOM          as Joint
Administrator (acting as agent and without
personal liability) ~~in the presence of~~:

)
)
)
)

SIGNED for and on behalf of **NORTEL**
**NETWORKS OY (IN**
**ADMINISTRATION)**
by ALAN BLOOM          as Joint
Administrator (acting as agent and without
personal liability) ~~in the presence of~~:

)
)
)
)

SIGNED for and on behalf of **NORTEL**
**NETWORKS AB (IN**
**ADMINISTRATION)**
by ALAN BLOOM          as Joint
Administrator (acting as agent and without
personal liability) ~~in the presence of~~:

)
)
)
)

Signature page to letter from Joint Administrators



**SIGNED** for and on behalf of **NORTEL** )
**NETWORKS INTERNATIONAL** )
**FINANCE & HOLDING BV (IN** )
**ADMINISTRATION)** )
by ALAN BLOOM          as Joint
Administrator (acting as agent and without
personal liability) ~~in the presence of:~~

**SIGNED** for and on behalf of **NORTEL** )
**NETWORKS FRANCE S.A.S. (IN** )
**ADMINISTRATION)** )
by ALAN BLOOM.          as Joint )
Administrator (acting as agent and without
personal liability) ~~in the presence of~~

Acknowledged and agreed by:

NORTEL NETWORKS LIMITED

By _____
   Name: John Doolittle
   Title: Treasurer

By _____
   Name: Anna Ventresca
   Title: Assistant Secretary


NORTEL NETWORKS INC.

By _____
   Name: Paul W. Karr
   Title: Vice-President, Finance



Acknowledged and agreed by:

**SIGNED** for and on behalf of **NORTEL**            )
**NETWORKS UK LIMITED (IN**                           )
**ADMINISTRATION)**                                    )
by ALAN BLOOM             as Joint                     )
Administrator (acting as agent and without
personal liability) ~~in the presence of:~~

Signature page to letter from Joint Administrators



**604**

## Schedule

**Canadian Debtors:**

Nortel Networks Corporation

Nortel Networks Limited

Nortel Networks Global Corporation

Nortel Networks International Corporation

Nortel Networks Technology Corporation

**US Debtors:**

Nortel Networks Inc.

Architel Systems (U.S.) Corporation

CoreTek, Inc.

Nortel Altsystems, Inc. (previously "Alteon WebSystems, Inc.")

Nortel Altsystems International Inc. (previously "Alteon WebSystems International, Inc.")

Nortel Networks Applications Management Solutions Inc.

Nortel Networks Cable Solutions Inc.

Nortel Networks Capital Corporation

Nortel Networks HPOCS Inc.

Nortel Networks International Inc.

Nortel Networks Optical Components Inc.

Northern Telecom International Inc.

Qtera Corporation

Sonoma Systems

Xros, Inc.

**EMEA Debtors:**

Nortel Networks UK Limited (In Administration)

Nortel Networks (Ireland) Limited (In Administration)

Nortel Networks NV (In Administration)

Nortel Networks SpA (In Administration)

Nortel Networks BV (In Administration)

Nortel Networks Polska Sp z.o.o. (In Administration)

Nortel Networks Hispania, SA (In Administration)

Nortel Networks (Austria) GmbH (In Administration)

Nortel Networks sro (In Administration)

Nortel Networks Engineering Services Kft (In Administration)

Nortel Networks Portugal SA (In Administration)

Nortel Networks Slovensko, sro (In Administration)

Nortel Networks Romania Srl (In Administration)

Nortel Networks AG

Nortel GmbH (In Administration)

Nortel Networks Oy (In Administration)

Nortel Networks AB (In Administration)

Nortel Networks International Finance & Holding BV (In Administration)

Nortel Networks France S.A.S. (In Administration)

**TAB C**

This is Exhibit............*C*............referred to in the
affidavit of...........JOHN DOOLITTLE...........
sworn before me, this......22nd...........
day of...........γ.λ.λ.λ............20.0.9.

...........J.J. Connolly, M. Auty...........
A COMMISSIONER FOR TAKING AFFIDAVITS

**FIFTH EXTENSION DEED**

### INTERIM NORTEL GROUP SUPPLIER PROTOCOL AGREEMENT

This Deed is dated  5  MAY 2009 and made between:

(1)    The Canadian Nortel Group companies listed in part one of Schedule 1 (the **"Canadian Companies"**);

(2)    the EMEA Nortel Group companies listed in part two of Schedule 1 (the **"EMEA Companies in Administration"**);

(3)    Alan Robert Bloom, Christopher John Wilkinson Hill, Stephen John Harris, and Alan Michael Hudson as joint administrators of the EMEA Companies in Administration other than Nortel Networks (Ireland) Limited and in the case of Nortel Networks (Ireland) Limited Alan Robert Bloom and David Martin Hughes as joint administrators of that company, each of Ernst & Young LLP (**"Administrators"**)

## 1.    BACKGROUND

1.1    The Parties are party to the interim Nortel Group Supplier Protocol Agreement dated 14 January 2009, as extended by the Extension Deed dated 10 February 2009, the Second Extension Deed dated 12 March 2009, the Third Extension Deed dated 14 April 2009 and the Fourth Extension Deed dated 21 April 2009 (**"Agreement"**).

1.2    The Parties entered into the Agreement in recognition of the global nature of the Nortel Group business and in order to ensure that, for the period immediately following the Filing Date, Canadian Companies could continue to trade with the EMEA Companies in Administration and be paid in full for goods and services provided during the period of the Agreement.

1.3    Pursuant to clause 3 of the Fourth Extension Deed dated 21 April 2009, the Agreement shall terminate, unless otherwise extended by the Parties with the consent of the Monitor in writing before such date, at 11.59pm (Toronto time) on Tuesday 5 May 2009.

1.4    The Parties have now agreed to further extend the term of the Agreement in accordance with the terms of this fifth extension deed (**"Fifth Extension Deed"**).

1.5    Nortel Networks S.A. (**"NNSA"**) and Nortel Networks France S.A.S. (**"NNSAS"**) continue to be parties to the Agreement as extended by this Fifth Extension Deed but both shall have the right to terminate its future participation therein on the terms and conditions contained herein. It is likely that secondary liquidation proceedings are opened in France in relation to NNSA and possibly also in respect of NNSAS if necessary, subject to compliance with French law, but that the administration proceedings in respect of both NNSA and NNSAS under the United Kingdom Insolvency Act 1986 shall continue and that NNSA and NNSAS will continue to trade.

## 2.    DEFINITIONS AND CONSTRUCTION

2.1    The provisions of clause 2 (*Definitions and Construction*) of the interim Nortel Group Supplier Protocol Agreement dated 14 January 2009 shall also apply to this Fifth Extension Deed but references to parties, clauses and schedules are to parties, clauses and schedules of this Fifth Extension Deed unless otherwise specified.

3.    **EXTENSION OF AGREEMENT**

In consideration of the arrangements under the Agreement continuing, the Parties agree that with effect on and from the date of this Fifth Extension Deed the Agreement shall be extended such that the Agreement shall terminate, unless otherwise extended by the Parties with the consent of the Monitor in writing before such date, at 11.59pm (Toronto time) on Friday 5 June 2009.

4.    **NNSA and NNSAS**

4.1    The Parties acknowledge that it is likely that secondary liquidation proceedings will be opened in due course in France in respect of NNSA and (subject to compliance with French law) possibly also in respect of NNSAS ("**Secondary Proceedings**"). Accordingly, the Parties agree that any administrator of NNSA or NNSAS appointed by the French Court (the "**French Administrator**") in Secondary Proceedings shall be entitled to terminate the participation of NNSA or NNSAS (as the case may be) in this Fifth Extension Deed by giving all Parties 14 days prior written notice.

4.2    Upon such termination, any payment or other financial obligations or liability of the terminating company under this Fifth Extension Deed and the Agreement for any period after expiry of the notice of termination shall unless otherwise agreed cease immediately without prejudice to the rights and obligations of such company existing thereunder before such termination, and further without prejudice to the rights and obligations of the other Parties amongst themselves.

4.3    If, following the opening of Secondary Proceedings, the French Administrator does not exercise his right to terminate the participation of NNSA or NNSAS (as the case may be) in this Fifth Extension Deed and the Agreement, then the Parties agree that from the date of the opening of Secondary Proceedings any Post Filing Goods and Services Payments in respect of an order for Goods and Services made on or after that date will not be payable as an expense of the administration under the UK Insolvency Act 1986, but shall in accordance with and subject to French law, be payable only from the assets which are subject to the Secondary Proceedings.

5.    **MONITOR CONSENT**

By executing the consent attached to this Fifth Extension Deed, the Monitor consents to the extension of the Agreement in accordance with clause 3.

6.    **CONTINUATION**

6.1    This Fifth Extension Deed is supplemental to, and shall be construed as one with, the Agreement.

6.2    Except as extended by the terms of this Fifth Extension Deed, the Agreement will remain in full force and effect and any reference in the Agreement to the Agreement or to any provision of the Agreement will be construed as a reference to the Agreement, or that provision, as extended by this Fifth Extension Deed.

**7.    NO PERSONAL LIABILITY OF THE ADMINISTRATORS**

7.1    The Parties agree that the Administrators have negotiated and are entering into this Fifth Extension Deed as agents for the companies to which they are appointed and that none of the Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever, whether on their own part or in respect of any failure on the part of any Nortel Group company to observe, perform or comply with any of its obligations under this Fifth Extension Deed or under or in relation to any associated arrangements or negotiations.

7.2    The Administrators are a party to this Fifth Extension Deed:

7.2.1    as agents of each of the respective EMEA Companies in Administration of which they are administrators; and

7.2.2    in their own capacities solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the Insolvency Act 1986 and enforcing the obligations of the Canadian Companies under this Fifth Extension Deed.

7.3    In exercising their rights under, or giving effect to the arrangements contemplated in, the Fifth Extension Deed and the Agreement, it is acknowledged that the Administrators are required to act in the best interests of the creditors of the EMEA Company in Administration to which they have been appointed. Therefore nothing in this Fifth Extension Deed or the Agreement shall operate so as to derogate from, restrict or prevent the Administrators from complying with their statutory duties or legal obligations in relation to the exercise of their powers, duties or functions as administrators of the EMEA Companies in Administration under the UK Insolvency Act 1986 or any other applicable legislation or statutory instrument as they see fit, acting in good faith.

**8.    COUNTERPARTS**

This Fifth Extension Deed may be executed in any number of counterparts, and this has the same effect as if the signatures on the counterparts were on a single copy of this Fifth Extension Deed.

**9.    GOVERNING LAW**

This Fifth Extension Deed shall be governed by and construed in accordance with English law.

This Fifth Extension Deed has been entered into on the date stated at the beginning of this Fifth Extension Deed.

IN WITNESS whereof this DEED has been executed by the parties hereto.

## Schedule 1

### Part Two: The EMEA Companies in Administration

1.    Nortel Networks UK Limited

2.    Nortel Networks S.A. (France)

3.    Nortel GmbH (Germany)

4.    Nortel Networks (Ireland) Limited (Ireland)

5.    Nortel Networks N.V. (Belgium)

6.    Nortel Networks S.p.A. (Italy)

7.    Nortel Networks B.V. (Netherlands)

8.    Nortel Networks Polska Sp. z o.o. (Poland)

9.    Nortel Networks Hispania, S.A. (Spain)

10.   Nortel Networks International Finance & Holding B.V. (Netherlands)

11.   Nortel Networks (Austria) GmbH (Austria)

12.   Nortel Networks, s.r.o. (Czech Republic)

13.   Nortel Networks Engineering Service Kft. (Hungary)

14.   Nortel Networks Portugal S.A. (Portugal)

15.   Nortel Networks Slovensko, s.r.o. (Slovakia)

16.   Nortel Networks France S.A.S (France)

17.   Nortel Networks Oy (Finland)

18.   Nortel Networks Romania SRL (Romania)

19.   Nortel Networks AB (Sweden)

**EXECUTED AS A DEED BY EACH OF THE CANADIAN COMPANIES**

**NOTEL NETWORKS CORPORATION**

..........................................
Signature

..Gordon A. Davies..........
Name of signatory

Chief Legal Officer & Corporate
Title                    Secretary

....2 Connelly M sily........
Signature

.......Tracy S.J. Connelly McGilley.
Name of signatory  Assistant Secretary

..........................................
Title

**NORTEL NETWORKS LIMITED**

..........................................
Signature

...Gordon A. Davies.............
Name of signatory

Chief Legal Officer & Corporate Secretary
Title

...2 Connelly M sily......
Signature

.......Tracy S.J. Connelly McGilley
Name of signatory  Assistant Secretary

..........................................
Title

**NORTEL NETWORKS TECHNOLOGY
CORPORATION**

..........................................
Signature

.....Gordon A. Davies...
Name of signatory

....Secretary...........
Title

.....2 Connelly M sily....
Signature

.......Tracy S.J. Connelly McGilley
Name of signatory  Assistant Secretary

..........................................
Title

**NORTEL NETWORKS INTERNATIONAL
CORPORATION**

..........................................
Signature

..Gordon A. Davies..........
Name of signatory

....Secretary and Director..
Title

...2 Connelly M sily......
Signature

.......Tracy S.J. Connelly McGilley
Name of signatory  Secretary

..........................................
Title

**612**

NORTEL NETWORKS GLOBAL
CORPORATION

.......................................................
Signature

Gordon A. Davies
Name of signatory

.... Secretary and Director
Title

.......................................................
Signature

.................Anna Ventresca
Name of signatory  Assistant Secretary

.......................................................
Title

**EMEA Companies in Administration**

UK

| EXECUTED AS A DEED | ) |
| for and on behalf of | ) |
| Nortel Networks UK Limited | ) |
| (in administration) | ) |
| by CHRISTOPHER HILL | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |

Signature of witness ) Signature of administrator

.......................................... ) ..........................................

Name of witness )
(in BLOCK CAPITALS) )

RYAN ELLIS )

Address of witness )

27 D WESTBOURNE GROVE )

LONDON  W2 4UE )

FRANCE

| EXECUTED AS A DEED | ) |
| for and on behalf of | ) |
| Nortel Networks S.A.    (in administration) | ) |
| by CHRISTOPHER HILL | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |

Signature of witness ) Signature of administrator

.......................................... ) ..........................................

Name of witness )
(in BLOCK CAPITALS) )

RYAN ELLIS )

Address of witness )

27 D WESTBOURNE GROVE )

LONDON W2 4UE )

**GERMANY**

| | |
|---|---|
| **EXECUTED AS A DEED** | ) |
| for and on behalf of | ) |
| Nortel GmbH    (in administration) | ) |
| by CHRISTOPHER HILL | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| | ) |
| **Signature of witness** . | ) |
| | ) **Signature of administrator** |
| .................................... | ) |
| | ) |
| **Name of witness** | ) |
| **(in BLOCK CAPITALS)** | ) |
| RYAN ELLIS | ) |
| ................................ | |
| **Address of witness** | ) |
| 27 D WESTBOURNE GROVE | ) |
| LONDON  W2 4UE | ) |

**BELGIUM**

| | |
|---|---|
| **EXECUTED AS A DEED** | ) |
| for and on behalf of | ) |
| Nortel Networks N.V.    (in administration) | ) |
| by CHRISTOPHER HILL | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| | ) |
| **Signature of witness** | ) |
| | ) **Signature of administrator** |
| .................................... | ) |
| | ) |
| **Name of witness** | ) |
| **(in BLOCK CAPITALS)** | ) |
| RYAN ELLIS | ) |
| ................................ | |
| **Address of witness** | ) |
| 27 D WESTBOURNE GROVE | ) |
| LONDON  W2 4UE | ) |
| | |
| ................................ | ) |

**ITALY**

| | |
|---|---|
| EXECUTED AS A DEED | ) |
| for and on behalf of | ) |
| Nortel Networks S.p.A. (in administration) | ) |
| by CHRISTOPHER HILL | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| | ) |
| Signature of witness | ) |
| | ) |
| ............................................ | ) |
| | ) |
| Name of witness | ) |
| (in BLOCK CAPITALS) | ) |
| RYAN ELLIS | |
| ............................................ | ) |
| | |
| Address of witness | ) |
| 27D WESTBOURNE GROVE | ) |
| LONDON W2 4UE | ) |

Signature of administrator

............................................

**NETHERLANDS**

| | |
|---|---|
| EXECUTED AS A DEED | ) |
| for and on behalf of | ) |
| Nortel Networks B.V.   (in administration) | ) |
| by CHRISTOPHER HILL | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| | ) |
| Signature of witness | ) |
| | ) |
| ............................................ | ) |
| Name of witness | ) |
| (in BLOCK CAPITALS) | ) |
| RYAN ELLIS | ) |
| | |
| Address of witness | ) |
| 27D WESTBOURNE GROVE | ) |
| LONDON W2 4UE | ) |

Signature of administrator

............................................

**616**

**POLAND**

| | |
|---|---|
| **EXECUTED AS A DEED** | ) |
| for and on behalf of | ) |
| Nortel Networks Polska Sp. Z o.o. | ) |
| (in administration) | ) |
| by CHRISTOPHER HILL | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| | ) |
| **Signature of witness** | ) |
| | ) |
| ...................................... | ) |
| | ) |
| **Name of witness** | ) |
| **(in BLOCK CAPITALS)** | ) |
| RYAN ELLIS | ) |
| | |
| **Address of witness** | ) |
| 27 D WESTBOURNE GROVE | ) |
| LONDON W2 4UE | ) |

**Signature of administrator**

...................................

**SPAIN**

| | |
|---|---|
| **EXECUTED AS A DEED** | ) |
| for and on behalf of | ) |
| Nortel Networks Hispania, S.A. | ) |
| (in administration) | ) |
| by CHRISTOPHER HILL | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| | ) |
| **Signature of witness** | ) |
| | ) |
| ...................................... | ) |
| | ) |
| **Name of witness** | ) |
| **(in BLOCK CAPITALS)** | ) |
| RYAN ELLIS | ) |
| | |
| **Address of witness** | ) |
| 27 D WESTBOURNE GROVE | ) |
| LONDON W2 4UE | ) |

**Signature of administrator**

...................................

**NETHERLANDS**

| | |
|---|---|
| **EXECUTED AS A DEED** | ) |
| for and on behalf of | ) |
| **Nortel Networks International Finance** | ) |
| **& Holding B.V. (in administration)** | ) |
| by CHRISTOPHER HILL | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| | ) |
| **Signature of witness** | ) |
| | ) |
| ........................................ | ) |
| | ) |
| **Name of witness** | ) |
| **(in BLOCK CAPITALS)** | ) |
| RYAN ELLIS | ) |
| | |
| **Address of witness** | ) |
| 27 D WESTBOURNE GROVE | ) |
| LONDON W2 4UE | ) |

**Signature of administrator**

**AUSTRIA**

| | |
|---|---|
| **EXECUTED AS A DEED** | ) |
| for and on behalf of | ) |
| **Nortel Networks (Austria) GmbH** | ) |
| **(in administration)** | ) |
| by CHRISTOPHER HILL | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| | ) |
| **Signature of witness** | ) |
| | ) |
| ........................................ | ) |
| | ) |
| **Name of witness** | ) |
| **(in BLOCK CAPITALS)** | ) |
| RYAN ELLIS | ) |
| | |
| **Address of witness** | ) |
| 27 D WESTBOURNE GROVE | ) |
| LONDON W2 4UE | ) |

**Signature of administrator**

618

**CZECH REPUBLIC**

EXECUTED AS A DEED                                          )
for and on behalf of                                        )
Nortel Networks, s.r.o.  (in administration)                )
by CHRISTOPHER HILL                                         )
as joint administrator                                      )
(acting as agent and without personal                       )
liability) in the presence of:                              )
                                                            )
                                                            )
                                                            )
Signature of witness                                        )          Signature of administrator
                                                            )
............................................                )          ..................................
                                                            )
Name of witness                                             )
(in BLOCK CAPITALS)                                         )
                                                            )
RYAN  ELLIS.............                                     )
                                                            )
Address of witness                                          )
27 D WESTBOURNE GROVE                                        )
LONDON  W2 4UE                                               )

**HUNGARY**

EXECUTED AS A DEED                                          )
for and on behalf of                                        )
Nortel Networks Engineering Service Kft.                    )
(in administration)                                         )
by CHRISTOPHER HILL                                         )
as joint administrator                                      )
(acting as agent and without personal                       )
liability) in the presence of:                              )
                                                            )
                                                            )
Signature of witness                                        )          Signature of administrator
                                                            )
............................................                )          ..................................
                                                            )
Name of witness                                             )
(in BLOCK CAPITALS)                                         )
                                                            )
RYAN ELLIS.............                                      )
                                                            )
Address of witness                                          )
27 D WESTBOURNE GROVE                                        )
LONDON  W2 4UE                                               )

**PORTUGAL**

EXECUTED AS A DEED )
for and on behalf of )
Nortel Networks Portugal S.A. )
(in administration) )
by CHRISTOPHER HILL )
as joint administrator )
(acting as agent and without personal )
liability) in the presence of: )
)
)
Signature of witness )        Signature of administrator
)
.................................... )   ...................................
)
Name of witness )
(in BLOCK CAPITALS) RYAN ELLIS )
27 D WESTBOURNE GROVE )

Address of witness )
LONDON W2 4UE )
27 D WESTBOURNE GROVE )

**SLOVAKIA**

EXECUTED AS A DEED )
for and on behalf of )
Nortel Networks Slovensko, s.r.o. )
(in administration) )
by CHRISTOPHER HILL )
as joint administrator )
(acting as agent and without personal )
liability) in the presence of: )
)
)
Signature of witness )        Signature of administrator
)
.................................... )   ...................................
)
Name of witness )
(in BLOCK CAPITALS) )
RYAN ELLIS )

Address of witness )
27 D WESTBOURNE GROVE )
LONDON W2 4UE )

FRANCE

EXECUTED AS A DEED                          )
for and on behalf of                        )
Nortel Networks France S.A.S                )
(in administration)                         )
by CHRISTOPHER HILL                         )
as joint administrator                      )
(acting as agent and without personal       )
liability) in the presence of:              )
                                            )
                                            )
Signature of witness                        )          Signature of administrator
                                            )
..............................              )          ..............................
                                            )
Name of witness                             )
(in BLOCK CAPITALS)                         )
RYAN ELLIS                                  )
                                            )
Address of witness                          )
27 D WESTBOURNE GROVE                       )
LONDON  W2 4UE                              )

FINLAND

EXECUTED AS A DEED                          )
for and on behalf of                        )
Nortel Networks Oy     (in administration)  )
by CHRISTOPHER HILL                         )
as joint administrator                      )
(acting as agent and without personal       )
liability) in the presence of:              )
                                            )
Signature of witness                        )          Signature of administrator
                                            )
..............................              )          ..............................
                                            )
Name of witness                             )
(in BLOCK CAPITALS)                         )
RYAN ELLIS                                  )
                                            )
Address of witness                          )
27 D WESTBOURNE GROVE                       )
LONDON  W2 4UE                              )

**ROMANIA**

| | |
|---|---|
| EXECUTED AS A DEED | ) |
| for and on behalf of | ) |
| Nortel Networks Romania SRL | ) |
| (in administration) | ) |
| by CHRISTOPHER HILL | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| | ) |
| Signature of witness | ) |
| | ) Signature of administrator |
| | ) |
| .................................................. | ) .................................................. |
| | ) |
| Name of witness | ) |
| (in BLOCK CAPITALS) | ) |
| | |
| RYAN ELLIS | ) |
| | |
| Address of witness | ) |
| | |
| 27 D WESTBOURNE GROVE | ) |
| LONDON   W2 4UE | ) |

**SWEDEN**

| | |
|---|---|
| EXECUTED AS A DEED | ) |
| for and on behalf of | ) |
| Nortel Networks AB    (in administration) | ) |
| by CHRISTOPHER HILL | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| | ) |
| Signature of witness | ) |
| | ) Signature of administrator |
| | ) |
| .................................................. | ) .................................................. |
| | ) |
| Name of witness | ) |
| (in BLOCK CAPITALS) | ) |
| | |
| RYAN ELLIS | ) |
| | |
| Address of witness | ) |
| | |
| 27 D WESTBOURNE GROVE | ) |
| LONDON  W2 4UE | ) |

**IRELAND**

| | |
|---|---|
| **EXECUTED AS A DEED** | ) |
| **for and on behalf of** | ) |
| **Nortel Networks (Ireland) Limited** | ) |
| **(in administration)** | ) |
| **by** DAVID MARTIN HUGHES | ) |
| **as joint administrator** | ) |
| **(acting as agent and without personal** | ) |
| **liability) in the presence of:** | ) |
| | ) |
| | ) |
| **Signature of witness** | )   **Signature of administrator** |
| | ) |
| .......................................... | ) |
| | ) |
| **Name of witness** | ) |
| **(in BLOCK CAPITALS)** | ) |
| | |
| ..MARIA...KOIS............ | ) |
| | |
| **Address of witness** | ) |
| | |
| HERBERT SMITH LLP | ) |
| EXCHANGE HOUSE. | ) |
| PRIMROSE STREET. | ) |
| LONDON  EC2A 2HS. | |

**Executed as a DEED by ALAN ROBERT**
**BLOOM in his own capacity without**
**personal liability and solely for the**
**purpose of obtaining the benefit of the**
**provisions of this deed expressed**
to be conferred on the Administrators

...................................................
Signature

*Alan Hudson on behalf of Alan Bloom*
*as his authorised representative.*

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness

................................................

Name of witness

**(in BLOCK CAPITALS)**

MARIA KOIS

Address of witness

HERBERT SMITH LLP
EXCHANGE HOUSE.
PRIMROSE STREET
LONDON EC2A 2HS.

**Executed as a DEED by CHRISTOPHER
JOHN WILKINSON HILL in his own capacity
without personal liability and solely
for the purpose of obtaining the
benefit of the provisions of this
deed expressed to be conferred
on the Administrators**

..............................................
Signature

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness
..............................................

Name of witness

**(in BLOCK CAPITALS)**

RYAN ELLIS

Address of witness

27 D WESTBOURNE GROVE
BAYSWATER
LONDON  W2 4UA
..............................................

Executed as a DEED by STEPHEN JOHN
HARRIS in his own capacity without
personal liability and solely for the
purpose of obtaining the benefit of the
provisions of this deed expressed
to be conferred on the Administrators

......................................................
Signature

Title:  JOINT ADMINISTRATOR

in the presence of:

Signature of witness
......................................................

Name of witness

(in BLOCK CAPITALS)
.....GRACE  AYLWARD

Address of witness
.....244  Clapham  Road
Stockwell......................
SW9  OPZ..................
London..........................

**Executed as a DEED by ALAN MICHAEL
HUDSON in his own capacity without
personal liability and solely for the
purpose of obtaining the benefit of
the provisions of this deed
expressed to be conferred on the
Administrators**

..............................................

Signature

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness

..............................................

Name of witness

**(in BLOCK CAPITALS)**

MARIA KOIS

Address of witness

Herbert SMITH LLP

EXCHANGE HOUSE

PRIMROSE STREET

LONDON EC2A 2HS.

Executed as a DEED by DAVID
MARTIN HUGHES in his own capacity
without personal liability and
solely for the purpose of
obtaining the benefit of the
provisions of this deed
expressed to be conferred on the
Administrators

..............................................
Signature

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness
..............................................

Name of witness

(in BLOCK CAPITALS)

MARCIA KOIS
..............................................

Address of witness

HERBERT SMITH LLP
PEL EXCHANGE HOUSE
PRIMROSE STREET.
LONDON EC2A 2HS.

**CONSENT OF MONITOR**

Ernst & Young Inc., as Monitor under the Companies' Creditors Arrangement Act to the Canadian Companies, consents to the extension of the Agreement in accordance with this Fifth Extension Deed.

**Ernst & Young Inc., in its capacity as Monitor in the CCAA proceedings and not in its personal capacity**

Name: Brent Beekenkamp

Title: Vice President

**TAB D**

**630**

This is Exhibit.............D.............referred to in the
affidavit of.......JOHN DOOLITTLE.......
sworn before me, this.......22nd.......
day of.......J. Att.......20.09.

J J J Connelly M Duffy

A COMMISSIONER FOR TAKING AFFIDAVITS

### SIXTH EXTENSION DEED

### INTERIM NORTEL GROUP SUPPLIER PROTOCOL AGREEMENT

This Deed is dated **5** JUNE 2009 and made between:

(1)    The Canadian Nortel Group companies listed in part one of Schedule 1 (the **"Canadian Companies"**);

(2)    the EMEA Nortel Group companies listed in part two of Schedule 1 (the **"EMEA Companies in Administration"**);

(3)    Alan Robert Bloom, Christopher John Wilkinson Hill, Stephen John Harris, and Alan Michael Hudson as joint administrators of the EMEA Companies in Administration other than Nortel Networks (Ireland) Limited and in the case of Nortel Networks (Ireland) Limited Alan Robert Bloom and David Martin Hughes as joint administrators of that company, each of Ernst & Young LLP (**"Administrators"**)

## 1.    BACKGROUND

1.1    The Parties are party to the interim Nortel Group Supplier Protocol Agreement dated 14 January 2009, as extended by the Extension Deed dated 10 February 2009, the Second Extension Deed dated 12 March 2009, the Third Extension Deed dated 14 April 2009, the Fourth Extension Deed dated 21 April 2009 and the Fifth Extension Deed dated 5 May 2009 (**"Agreement"**).

1.2    The Parties entered into the Agreement in recognition of the global nature of the Nortel Group business and in order to ensure that, for the period immediately following the Filing Date, Canadian Companies could continue to trade with the EMEA Companies in Administration and be paid in full for goods and services provided during the period of the Agreement.

1.3    Pursuant to clause 3 of the Fifth Extension Deed dated 5 May 2009, the Agreement shall terminate, unless otherwise extended by the Parties with the consent of the Monitor in writing before such date, at 11.59pm (Toronto time) on Friday 5 June 2009.

1.4    The Parties have now agreed to further extend the term of the Agreement in accordance with the terms of this sixth extension deed (**"Sixth Extension Deed"**).

1.5    On 28 May 2009 secondary liquidation proceedings were opened in France in relation to Nortel Networks S.A. (**"NNSA"**) (**"Secondary Proceedings"**) and the administration proceedings in respect of NNSA under the United Kingdom Insolvency Act 1986 are continuing. NNSA is permitted to continue to trade for an initial period of three months by order of the French Court.

1.6    NNSA is not a party to this Sixth Extension Deed but it shall be invited by the Parties to accede to this Sixth Extension Deed.

## 2.    DEFINITIONS AND CONSTRUCTION

2.1    The provisions of clause 2 (*Definitions and Construction*) of the interim Nortel Group Supplier Protocol Agreement dated 14 January 2009 shall also apply to this Sixth Extension Deed but references to parties, clauses and schedules are to parties, clauses and schedules of this Sixth Extension Deed unless otherwise specified.

3.    **EXTENSION OF AGREEMENT**

In consideration of the arrangements under the Agreement continuing, the Parties agree that with effect on and from the date of this Sixth Extension Deed the Agreement shall be extended such that the Agreement shall terminate, unless otherwise extended by the Parties in writing before such date, at 11.59pm (Toronto time) on Monday 15 June 2009.

4.    **NNSA**

4.1    The Parties acknowledge that secondary liquidation proceedings have been opened in France in respect of NNSA. Accordingly, any request for NNSA to accede to this Sixth Extension Deed in relation to the continuing supply of Goods and Services shall be made by the Judicial Administrator who has been appointed by the French Court in its sole discretion.

4.2    The Parties agree that if during this extension period, NNSA so requests in writing, each shall enter into a deed of accession with NNSA whereby NNSA shall accede to the Agreement for the period contemplated by this Sixth Extension Deed as if a party from the date hereof.

4.3    If NNSA becomes a party to this Sixth Extension Deed, it shall be a term of such accession that any Post Filing Goods and Services Payments in respect of an order for Goods and Services delivered or made on or after the date of opening of Secondary Proceedings will not be payable as an expense of the administration of NNSA under the UK Insolvency Act 1986, but shall in accordance with and subject to French law, be payable only from the assets of NNSA which are subject to the Secondary Proceedings.

5.    **MONITOR CONSENT**

By executing the consent attached to this Sixth Extension Deed, the Monitor consents to the extension of the Agreement in accordance with clause 3.

6.    **CONTINUATION**

6.1    This Sixth Extension Deed is supplemental to, and shall be construed as one with, the Agreement.

6.2    Except as extended by the terms of this Sixth Extension Deed, the Agreement will remain in full force and effect and any reference in the Agreement to the Agreement or to any provision of the Agreement will be construed as a reference to the Agreement, or that provision, as extended by this Sixth Extension Deed.

7.    **NO PERSONAL LIABILITY OF THE ADMINISTRATORS**

7.1    The Parties agree that the Administrators have negotiated and are entering into this Sixth Extension Deed as agents for the companies to which they are appointed and that none of the Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever, whether on their own part or in respect of any failure on the part of any Nortel Group company to observe, perform or comply with any of its obligations under this Sixth Extension Deed or under or in relation to any associated arrangements or negotiations.

7.2    The Administrators are a party to this Sixth Extension Deed:



> 7.2.1   as agents of each of the respective EMEA Companies in Administration of which they are administrators; and
>
> 7.2.2   in their own capacities solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the Insolvency Act 1986 and enforcing the obligations of the Canadian Companies under this Sixth Extension Deed.

7.3   In exercising their rights under, or giving effect to the arrangements contemplated in, the Sixth Extension Deed and the Agreement, it is acknowledged that the Administrators are required to act in the best interests of the creditors of the EMEA Company in Administration to which they have been appointed. Therefore nothing in this Sixth Extension Deed or the Agreement shall operate so as to derogate from, restrict or prevent the Administrators from complying with their statutory duties or legal obligations in relation to the exercise of their powers, duties or functions as administrators of the EMEA Companies in Administration under the UK Insolvency Act 1986 or any other applicable legislation or statutory instrument as they see fit, acting in good faith.

## 8.   COUNTERPARTS

This Sixth Extension Deed may be executed in any number of counterparts, and this has the same effect as if the signatures on the counterparts were on a single copy of this Sixth Extension Deed.

## 9.   GOVERNING LAW

This Sixth Extension Deed shall be governed by and construed in accordance with English law.

This Sixth Extension Deed has been entered into on the date stated at the beginning of this Sixth Extension Deed.

IN WITNESS whereof this DEED has been executed by the parties hereto.


**Schedule 1**

**Part One: The Canadian Companies**

1.  **Nortel Networks Limited**

2.  **Nortel Networks Corporation**

3.  **Nortel Networks Technology Corporation**

4.  **Nortel Networks Global Corporation**

5.  **Nortel Networks International Corporation**

**634**

**Schedule 1**

**Part Two: The EMEA Companies in Administration**

1.    **Nortel Networks UK Limited**

2.    **Nortel GmbH (Germany)**

3.    **Nortel Networks (Ireland) Limited (Ireland)**

4.    **Nortel Networks N.V. (Belgium)**

5.    **Nortel Networks S.p.A. (Italy)**

6.    **Nortel Networks B.V. (Netherlands)**

7.    **Nortel Networks Polska Sp. z o.o. (Poland)**

8.    **Nortel Networks Hispania, S.A. (Spain)**

9.    **Nortel Networks International Finance & Holding B.V. (Netherlands)**

10.   **Nortel Networks (Austria) GmbH (Austria)**

11.   **Nortel Networks, s.r.o. (Czech Republic)**

12.   **Nortel Networks Engineering Service Kft. (Hungary)**

13.   **Nortel Networks Portugal S.A. (Portugal)**

14.   **Nortel Networks Slovensko, s.r.o. (Slovakia)**

15.   **Nortel Networks France S.A.S (France)**

16.   **Nortel Networks Oy (Finland)**

17.   **Nortel Networks Romania SRL (Romania)**

18.   **Nortel Networks AB (Sweden)**

**EXECUTED AS A DEED BY EACH OF THE CANADIAN COMPANIES**

**NOTEL NETWORKS CORPORATION**

..............................................
Signature       Gordon A. Davies
                Chief Legal Officer
.................. and Corporate Secretary
Name of signatory

......... J Connelly M sully
Title
        Tracy S.J. Connelly McGilley
.............. Assistant Secretary ...........
Signature

..............................................
Name of signatory

..............................................
Title

**NORTEL NETWORKS LIMITED**

..............................................
Signature       Gordon A. Davies
                Chief Legal Officer
.................. and Corporate Secretary
Name of signatory

......... J Connelly M sully
Title
        Tracy S.J. Connelly McGilley
.............. Assistant Secretary ...........
Signature

..............................................
Name of signatory

..............................................
Title

**NORTEL NETWORKS TECHNOLOGY CORPORATION**

..............................................
Signature

Gordon A. Davies ..........
Name of signatory     Secretary

......... J Connelly M sully
Title
        Tracy S.J. Connelly McGilley
.............. Assistant Secretary ...........
Signature

..............................................
Name of signatory

..............................................
Title

**NORTEL NETWORKS INTERNATIONAL CORPORATION**

..............................................
Signature

Gordon A. Davies ..........
Name of signatory     Secretary + Director

......... J Connelly McKuly
Title    Tracy S.J. Connelly McGilley
                Assistant Secretary

..............................................
Signature

..............................................
Name of signatory

..............................................
Title

**NORTEL NETWORKS GLOBAL**
**CORPORATION**

............................................
Signature

Gordan A. Davies..............
Name of signatory

...Secretary & Director......
Title

............................................
Signature

Tracy S.J. Connelly McGilley
..............Assistant Secretary..............
Name of signatory

............................................
Title

**EMEA Companies in Administration**

**UK**

| | |
|---|---|
| **EXECUTED AS A DEED** | ) |
| for and on behalf of | ) |
| Nortel Networks UK Limited | ) |
| (in administration) | ) |
| by STEPHEN HARRIS | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| **Signature of witness** | )    **Signature of administrator** |
| | ) |
| | ) |
| | ) |
| **Name of witness** | ) |
| **(in BLOCK CAPITALS)** | ) |
| PAUL HOLLANDS | ) |
| | |
| **Address of witness** | ) |
| FLAT 1, FESTIVAL CRT, | ) |
| DALSTON   E8 3XT | ) |

**GERMANY**

| | |
|---|---|
| **EXECUTED AS A DEED** | ) |
| for and on behalf of | ) |
| Nortel GmbH   (in administration) | ) |
| by STEPHEN HARRIS | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| | ) |
| **Signature of witness** | )    **Signature of administrator** |
| | ) |
| | ) |
| **Name of witness** | ) |
| **(in BLOCK CAPITALS)** | ) |
| PAUL HOLLANDS | ) |
| | |
| **Address of witness** | ) |
| FLAT 1, FESTIVAL COURT, | ) |
| DALSTON E8 3XT | ) |





BELGIUM

EXECUTED AS A DEED
for and on behalf of
Nortel Networks N.V. (in administration)
by _____
as joint administrator
(acting as agent and without personal
liability) in the presence of:

Signature of administrator

## ITALY

| | |
|---|---|
| **EXECUTED AS A DEED** | ) |
| for and on behalf of | ) |
| Nortel Networks S.p.A. (in administration) | ) |
| by STEPHEN HARRIS | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| | ) |
| **Signature of witness** | ) |
| | ) |
| ........................... | ) |
| | ) |
| **Name of witness** | ) |
| **(in BLOCK CAPITALS)** | ) |
| CHRIS ..... MILLER | ) |
| **Address of witness** | ) |
| ... 1 MLP | ) |
| London SE12AF | ) |

**Signature of administrator**

...........................

## NETHERLANDS

| | |
|---|---|
| **EXECUTED AS A DEED** | ) |
| for and on behalf of | ) |
| Nortel Networks B.V.   (in administration) | ) |
| by STEPHEN HARRIS | ) |
| as joint administrator | ) |
| (acting as agent and without personal | ) |
| liability) in the presence of: | ) |
| | ) |
| **Signature of witness** | ) |
| | ) |
| ........................... | ) |
| **Name of witness** | ) |
| **(in BLOCK CAPITALS)** | ) |
| CHRIS MILLER | ) |
| **Address of witness** | ) |
| 1 MLP | ) |
| London SE12AF | ) |

**Signature of administrator**

**640**



POLAND

EXECUTED AS A DEED )
for and on behalf of )
Nortel Networks Polska Sp. Z o.o. )
(in administration) )
by .................. HARRIS )
as Joint Administrator )
(acting as agent and without personal )
liability and in presence of) )

**641**

**NETHERLANDS**

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks International Finance
& Holding B.V. (in administration)
by STEPHEN HARRIS
as joint administrator
(acting as agent and without personal
liability) in the presence of:

Signature of witness

Name of witness
(in BLOCK CAPITALS)
CHRIS MILLER

Address of witness
1 HLP
London SS1 2AF

Signature of administrator

**AUSTRIA**

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks (Austria) GmbH
(in administration)
by STEPHEN HARRIS
as joint administrator
(acting as agent and without personal
liability) in the presence of:

Signature of witness

Name of witness
(in BLOCK CAPITALS)
CHRIS MILLER

Address of witness

Signature of administrator



**CZECH REPUBLIC**

**EXECUTED AS A DEED**                    )
for and on behalf of                      )
Nortel Networks, s.r.o. (in administration)  )
by  STEPHEN HARRIS                        )
as joint administrator                    )
(acting as agent and without personal     )
liability) in the presence of:            )
                                          )
                                          )
                                          )
Signature of Joint Administrator

**PORTUGAL**

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks Portugal S.A.
(in administration)
by STEPHEN HARRIS
as joint administrator
(acting as agent and without personal
liability) in the presence of:

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Signature of witness

..................................................

Signature of administrator

..................................................

Name of witness
(in BLOCK CAPITALS)

CHRIS    MULLER

Address of witness

1   HLP
LONDON    SE1 2AF

**SLOVAKIA**

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks Slovensko, s.r.o.
(in administration)
by STEPHEN HARRIS
as joint administrator
(acting as agent and without personal
liability) in the presence of:

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Signature of witness

..................................................

Signature of administrator

..................................................

Name of witness
(in BLOCK CAPITALS)

Address of witness



FRANCE

EXECUTED AS A DEED )
for and on behalf of )
Nortel Networks France S.A.S )
(In administration) )
by STEPHEN HARRIS )
as joint administrator )
(acting as agent and without personal )
liability) in the presence of: )

Signature of witness

Signature of administrator

Name of witness
(In BLOCK CAPITALS)

Address of witness

FINLAND

EXECUTED AS A DEED
for and on behalf of
Nortel Networks Oy (in administration)

Name of witness
(In BLOCK CAPITALS)

Address of witness

**645**

**ROMANIA**

**EXECUTED AS A DEED**                                    )
for and on behalf of                                     )
**Nortel Networks Romania SRL**                           )
(in administration)                                      )
by  STEPHEN  HARRIS                                      )
as joint administrator                                   )
(acting as agent and without personal                    )
liability) in the presence of:                           )
                                                         )
                                                         )
**Signature of witness**                                  )          **Signature of administrator**
                                                         )
.............................................            )          ..........................................
                                                         )
**Name of witness**                                       )
**(in BLOCK CAPITALS)**                                   )
..............................                            )
                                                         )
**Address of witness**                                    )
..............................                            )
..............................                            )

**SWEDEN**

**EXECUTED AS A DEED**                                    )
for and on behalf of                                     )
**Nortel Networks AB**    (in administration)             )
by  STEPHEN  HARRIS                                      )
as joint administrator                                   )
(acting as agent and without personal                    )
liability) in the presence of:                           )
                                                         )
**Signature of witness**                                  )          **Signature of administrator**
                                                         )
..............................................           )
                                                         )
**Name of witness**                                       )
**(in BLOCK CAPITALS)**                                   )
..............................                            )
                                                         )
**Address of witness**                                    )



**IRELAND**

EXECUTED AS A DEED                    )
for and on behalf of                  )
Nortel Networks (Ireland) Limited     )
(in administration)                   )
by  ALAN BLOOM                        )
as joint administrator                )
(acting as agent and without personal )
liability) in the presence of         )

Signature of witness                  )          Signature of administrator

Name of witness                       )
(in BLOCK CAPITALS)                   )

Address of witness                    )

**Executed as a DEED by ALAN ROBERT**
**BLOOM in his own capacity without**
**personal liability and solely for the**
**purpose of obtaining the benefit of the**
**provisions of this deed expressed**
**to be conferred on the Administrators**

Signature ........................................

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness

........................................

Name of witness

**(in BLOCK CAPITALS)**

................................................

Address of witness

........................................

........................................

........................................

........................................

**648**



Executed as a DEED on behalf of CHRISTOPHER
JOHN WILKINSON HILL in his own capacity
without personal liability and solely
for the purpose of obtaining the
benefit of the provisions of this
deed expressed to be conferred
on the Administrators by his attorney (IN BLOCK CAPITALS)

THE JOINT ADMINISTRATOR

**Executed as a DEED by STEPHEN JOHN
HARRIS in his own capacity without
personal liability and solely for the
purpose of obtaining the benefit of the
provisions of this deed expressed
to be conferred on the Administrators**

......................................................
Signature

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness

Name of witness

(in BLOCK CAPITALS)

Address of witness

Executed as a DEED on behalf of ALAN MICHAEL
HUDSON in his own capacity without
personal liability and solely for the
purpose of obtaining the benefit of
the provisions of this deed
expressed to be conferred on the
Administrators by his attorney (in BLOCK CAPITALS)

THE JOINT ADMINISTRATOR

Executed as a DEED on behalf of DAVID
MARTIN HUGHES in his own capacity
without personal liability and
solely for the purpose of
obtaining the benefit of the
provisions of this deed
expressed to be conferred on the
Administrators by his attorney (in BLOCK CAPITALS)

.......................................................

**Signature**

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness

.......................................................

Name of witness

(In BLOCK CAPITALS)

.......................................................

Address of witness:

.......................................................

**CONSENT OF MONITOR**

Ernst & Young Inc., as Monitor under the Companies' Creditors Arrangement Act to the Canadian
Companies, consents to the extension of the Agreement in accordance with this Sixth  Extension
Deed.

**Ernst & Young Inc., in its capacity as Monitor
in the CCAA proceedings and not in its
personal capacity**

Name: Brent Beekenkamp

Title: Vice President

June 5, 2009

**TAB E**

654

This is Exhibit............E................referred to in the
affidavit of........JOHN  DOOLITTLE
sworn before me, t .........22nd
day of.....Gilson......................20 09

.............................................
A COMMISSIONER FOR TAKING AFFIDAVITS

## SEVENTH EXTENSION DEED

## INTERIM NORTEL GROUP SUPPLIER PROTOCOL AGREEMENT

This Deed is dated    11    JUNE 2009 and made between:

(1)   The Canadian Nortel Group companies listed in part one of Schedule 1 (the **"Canadian Companies"**);

(2)   the EMEA Nortel Group companies listed in part two of Schedule 1 (the **"EMEA Companies in Administration"**);

(3)   Alan Robert Bloom, Christopher John Wilkinson Hill, Stephen John Harris, and Alan Michael Hudson as joint administrators of the EMEA Companies in Administration other than Nortel Networks (Ireland) Limited and in the case of Nortel Networks (Ireland) Limited Alan Robert Bloom and David Martin Hughes as joint administrators of that company, each of Ernst & Young LLP (**"Administrators"**)

1.   **BACKGROUND**

1.1   The Parties are party to the interim Nortel Group Supplier Protocol Agreement dated 14 January 2009, as extended by the Extension Deed dated 10 February 2009, the Second Extension Deed dated 12 March 2009, the Third Extension Deed dated 14 April 2009, the Fourth Extension Deed dated 21 April 2009, the Fifth Extension Deed dated 5 May 2009 and the Sixth Extension Deed dated 5 June 2009 (**"Agreement"**).

1.2   The Parties entered into the Agreement in recognition of the global nature of the Nortel Group business and in order to ensure that, for the period immediately following the Filing Date, Canadian Companies could continue to trade with the EMEA Companies in Administration and be paid in full for goods and services provided during the period of the Agreement.

1.3   Pursuant to clause 3 of the Sixth Extension Deed dated 5 June 2009, the Agreement shall terminate, unless otherwise extended by the Parties with the consent of the Monitor in writing before such date, at 11.59pm (Toronto time) on Monday 15 June 2009.

1.4   The Parties have now agreed to further extend the term of the Agreement in accordance with the terms of this seventh extension deed (**"Seventh Extension Deed"**).

1.5   On 28 May 2009 secondary liquidation proceedings were opened in France in relation to Nortel Networks S.A. (**"NNSA"**) (**"Secondary Proceedings"**) and the administration proceedings in respect of NNSA under the United Kingdom Insolvency Act 1986 are continuing. NNSA is permitted to continue to trade for an initial period of three months by order of the French Court.

1.6   NNSA is not a party to this Seventh Extension Deed but it shall be invited by the Parties to accede to this Seventh Extension Deed.

2.   **DEFINITIONS AND CONSTRUCTION**

2.1   The provisions of clause 2 (*Definitions and Construction*) of the interim Nortel Group Supplier Protocol Agreement dated 14 January 2009 shall also apply to this Seventh Extension Deed but

references to parties, clauses and schedules are to parties, clauses and schedules of this Seventh Extension Deed unless otherwise specified.

**3.    EXTENSION OF AGREEMENT**

In consideration of the arrangements under the Agreement continuing, the Parties agree that with effect on and from the date of this Seventh Extension Deed the Agreement shall be extended such that the Agreement shall terminate, unless otherwise extended by the Parties in writing before such date, at 11.59pm (Toronto time) on Thursday 9 July 2009.

**4.    NNSA**

4.1    The Parties acknowledge that secondary liquidation proceedings have been opened in France in respect of NNSA. Accordingly, any request for NNSA to accede to this Seventh Extension Deed in relation to the continuing supply of Goods and Services shall be made by the Judicial Administrator who has been appointed by the French Court in its sole discretion.

4.2    The Parties agree that if during this extension period, NNSA so requests in writing, each shall enter into a deed of accession with NNSA whereby NNSA shall accede to the Agreement for the period contemplated by this Seventh Extension Deed as if a party from the date hereof.

4.3    If NNSA becomes a party to this Seventh Extension Deed, it shall be a term of such accession that any Post Filing Goods and Services Payments in respect of an order for Goods and Services delivered or made on or after the date of opening of Secondary Proceedings will not be payable as an expense of the administration of NNSA under the UK Insolvency Act 1986, but shall in accordance with and subject to French law, be payable only from the assets of NNSA which are subject to the Secondary Proceedings.

**5.    MONITOR CONSENT**

By executing the consent attached to this Seventh Extension Deed, the Monitor consents to the extension of the Agreement in accordance with clause 3.

**6.    CONTINUATION**

6.1    This Seventh Extension Deed is supplemental to, and shall be construed as one with, the Agreement.

6.2    Except as extended by the terms of this Seventh Extension Deed, the Agreement will remain in full force and effect and any reference in the Agreement to the Agreement or to any provision of the Agreement will be construed as a reference to the Agreement, or that provision, as extended by this Seventh Extension Deed.

**7.    NO PERSONAL LIABILITY OF THE ADMINISTRATORS**

7.1    The Parties agree that the Administrators have negotiated and are entering into this Seventh Extension Deed as agents for the companies to which they are appointed and that none of the Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever, whether on their own part or in respect of any failure on the part of any Nortel Group company to observe, perform or comply with any of its obligations under this Seventh Extension Deed or under or in relation to any associated arrangements or negotiations.



7.2    The Administrators are a party to this Seventh Extension Deed:

    7.2.1    as agents of each of the respective EMEA Companies in Administration of which they are administrators; and

    7.2.2    in their own capacities solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the Insolvency Act 1986 and enforcing the obligations of the Canadian Companies under this Seventh Extension Deed.

7.3    In exercising their rights under, or giving effect to the arrangements contemplated in, the Seventh Extension Deed and the Agreement, it is acknowledged that the Administrators are required to act in the best interests of the creditors of the EMEA Company in Administration to which they have been appointed. Therefore nothing in this Seventh Extension Deed or the Agreement shall operate so as to derogate from, restrict or prevent the Administrators from complying with their statutory duties or legal obligations in relation to the exercise of their powers, duties or functions as administrators of the EMEA Companies in Administration under the UK Insolvency Act 1986 or any other applicable legislation or statutory instrument as they see fit, acting in good faith.

## 8.    COUNTERPARTS

This Seventh Extension Deed may be executed in any number of counterparts, and this has the same effect as if the signatures on the counterparts were on a single copy of this Seventh Extension Deed.

## 9.    GOVERNING LAW

This Seventh Extension Deed shall be governed by and construed in accordance with English law.

This Seventh Extension Deed has been entered into on the date stated at the beginning of this Seventh Extension Deed.

IN WITNESS whereof this DEED has been executed by the parties hereto.

**Schedule 1**

**Part One: The Canadian Companies**

1.    **Nortel Networks Limited**

2.    **Nortel Networks Corporation**

3.    **Nortel Networks Technology Corporation**

4.    **Nortel Networks Global Corporation**

5.    **Nortel Networks International Corporation**

**658**

**Schedule 1**

**Part Two: The EMEA Companies in Administration**

1. Nortel Networks UK Limited

2. Nortel GmbH (Germany)

3. Nortel Networks (Ireland) Limited (Ireland)

4. Nortel Networks N.V. (Belgium)

5. Nortel Networks S.p.A. (Italy)

6. Nortel Networks B.V. (Netherlands)

7. Nortel Networks Polska Sp. z o.o. (Poland)

8. Nortel Networks Hispania, S.A. (Spain)

9. Nortel Networks International Finance & Holding B.V. (Netherlands)

10. Nortel Networks (Austria) GmbH (Austria)

11. Nortel Networks, s.r.o. (Czech Republic)

12. Nortel Networks Engineering Service Kft. (Hungary)

13. Nortel Networks Portugal S.A. (Portugal)

14. Nortel Networks Slovensko, s.r.o. (Slovakia)

15. Nortel Networks France S.A.S (France)

16. Nortel Networks Oy (Finland)

17. Nortel Networks Romania SRL (Romania)

18. Nortel Networks AB (Sweden)

**EXECUTED AS A DEED BY EACH OF THE CANADIAN COMPANIES**

**NORTEL NETWORKS CORPORATION**

......................................................
Signature

......................................................
Name of signatory
        Gordon A. Davies
        Chief Legal Officer
        and Corporate Secretary

......................................................
Title

......................................................
Signature
        Tracy S.J. Connelly McGilley
......................................................
Name of signatory
        Assistant Secretary

......................................................
Title

**NORTEL NETWORKS LIMITED**

......................................................
Signature

......................................................
Name of signatory
        Gordon A. Davies
        Chief Legal Officer
        and Corporate Secretary

......................................................
Title

......................................................
Signature
        Tracy S.J. Connelly McGilley
......................................................
Name of signatory
        Assistant Secretary

......................................................
Title

**NORTEL NETWORKS TECHNOLOGY CORPORATION**

......................................................
Signature

......................................................
Name of signatory

......................................................
Title

......................................................
Signature
        Tracy S.J. Connelly McGilley
......................................................
Name of signatory
        Assistant Secretary

......................................................
Title

**NORTEL NETWORKS INTERNATIONAL CORPORATION**

......................................................
Signature  Gordon A. Davies

......................................................
Name of signatory  Secretary & Director

......................................................
Title

......................................................
Signature
        Tracy S.J. Connelly McGilley
......................................................
Name of signatory  Assistant Secretary

......................................................
Title

**660**

**NORTEL NETWORKS GLOBAL CORPORATION**

......................................................
Signature

...Gordan A. Davier...........
Name of signatory

...Secretary + Director...........
Title

...J.J. Connelly McGilley...........
Signature

Tracy S.J. Connelly McGilley
Assistant Secretary
..................................................
Name of signatory

......................................................
Title

**661**

**EMEA Companies in Administration**

UK

EXECUTED AS A DEED )
for and on behalf of )
Nortel Networks UK Limited )
(in administration) )
by ALAN BLOOM )
as joint administrator )
(acting as agent and without personal )
liability) in the presence of: )

Signature of witness )                    Signature of administrator

.................................................. )
)
Name of witness )
(in BLOCK CAPITALS) )

.................................................. )

Address of witness )

.................................................. )

.................................................. )

## GERMANY

EXECUTED AS A DEED                                )
for and on behalf of                             )
Nortel GmbH    (in administration)               )
by ALAN BLOOM                                    )
as joint administrator                           )
(acting as agent and without personal            )
liability) in the presence of:                   )
                                                 )
                                                 )
Signature of witness                             )        Signature of administrator
                                                 )
                                                 )
                                                 )
Name of witness                                  )
(in BLOCK CAPITALS)                              )
                                                 )
                                               )  )
Address of witness                               )
                                                 )
                                                 )

## BELGIUM

EXECUTED AS A DEED                               )
for and on behalf of                            )
Nortel Networks N.V.    (in administration)     )
By ALAN BLOOM                                   )
as joint administrator                          )
(acting as agent and without personal           )
liability) in the presence of:                  )
                                                )
                                                )
Signature of witness                            )        Signature of administrator
                                                )
                                                )
Name of witness                                 )
(in BLOCK CAPITALS)                             )
                                                )
                                                )
Address of witness                              )
                                                )
                                                )
                                                )

10-06-2008  01:06    FRAN-RADISSON SAS STRAND HOTEL              +46              T-142  P.005/015  F-766

**ITALY**

EXECUTED AS A DEED                                    )
for and on behalf of                                 )
Nortel Networks S.p.A. (in administration)           )
by  ALAN BLOOM                                       )
as Joint administrator                               )
(acting as agent and without personal                )
liability) in the presence of:                       )
                                                     )
Signature of witness                                 )        Signature of administrator
                                                     )
                                                     )
                                                     )
Name of witness                                      )
(in BLOCK CAPITALS)                                  )
                                                     )
Address of witness                                   )
                                                     )
                                                     )
                                                     )

**NETHERLANDS**

EXECUTED AS A DEED                                    )
for and on behalf of                                 )
Nortel Networks B.V.   (in administration)           )
by  ALAN BLOOM                                       )
as Joint administrator                               )
(acting as agent and without personal                )
liability) in the presence of:                       )
                                                     )
Signature of witness                                 )        Signature of administrator
                                                     )
                                                     )
Name of witness                                      )
(in BLOCK CAPITALS)                                  )
                                                     )
Address of witness                                   )
                                                     )
                                                     )

10-06-2008   01:40   FRAN-                                    T-958   P.001/002   F-806

POLAND

EXECUTED AS A DEED                          )
for and on behalf of                        )
Nortel Networks Polska Sp. Z o.o.           )
(in administration)                         )
by ALAN BLOOM                               )
as joint administrator                      )
(acting as agent and without personal       )
liability) in the presence of:              )
                                            )
Signature of witness                        )          Signature of administrator
                                            )
                                            )
Name of witness                             )
(in BLOCK CAPITALS)                         )
                                            )
Address of witness                          )
                                            )
                                            )

SPAIN

EXECUTED AS A DEED                          )
for and on behalf of                        )
Nortel Networks Hispania, S.A.              )
(in administration)                         )
by ALAN BLOOM                               )
as joint administrator                      )
(acting as agent and without personal       )
liability) in the presence of:              )
                                            )
Signature of witness                        )          Signature of administrator
                                            )
                                            )
Name of witness                             )
(in BLOCK CAPITALS)                         )
                                            )
Address of witness                          )
                                            )
                                            )

10-06-2009    01:40    FRAN-                                    T-059    P.002/002    F-806

## NETHERLANDS

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks International Finance
& Holding B.V. (in administration)
by ALAN BLOOM
as joint administrator
(acting as agent and without personal
liability) in the presence of:

                                                    )
                                                    )
                                                    )
                                                    )
                                                    )
                                                    )
                                                    )
                                                    )
                                                    )

**Signature of witness**                            )        **Signature of administrator**
                                                    )
                                                    )
                                                    )
**Name of witness**                                 )
**(in BLOCK CAPITALS)**                             )
                                                    )
**Address of witness**                              )
                                                    )
                                                    )
                                                    )

## AUSTRIA

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks (Austria) GmbH
(in administration)
by ALAN BLOOM
as joint administrator
(acting as agent and without personal
liability) in the presence of:

                                                    )
                                                    )
                                                    )
                                                    )
                                                    )
                                                    )
                                                    )
                                                    )

**Signature of witness**                            )        **Signature of administrator**
                                                    )
                                                    )
**Name of witness**                                 )
**(in BLOCK CAPITALS)**                             )
                                                    )
**Address of witness**                              )
                                                    )
                                                    )



10-06-2009  01:08    FRAN-RADISSON SAS STRAND HOTEL                +46              T-142  P.006/015  F-786

## CZECH REPUBLIC

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks, s.r.o.  (in administration)
By ALAN BLOOM
as joint administrator
(acting as agent and without personal
liability) in the presence of:

Signature of witness

Name of witness
(in BLOCK CAPITALS)

Address of witness

Signature of administrator

## HUNGARY

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks Engineering Service Kft.
(in administration)
by ALAN BLOOM
as joint administrator
(acting as agent and without personal
liability) in the presence of:

Signature of witness

Name of witness
(in BLOCK CAPITALS)

Address of witness

Signature of administrator

## PORTUGAL

EXECUTED AS A DEED                              )
for and on behalf of                           )
Nortel Networks Portugal S.A.                  )
(in administration)                            )
by ALAN BLOOM                          )
as joint administrator                         )
(acting as agent and without personal          )
liability) in the presence of:                 )
                                               )
                                               )
Signature of witness                           )          Signature of administrator
                                               )
                                               )
                                               )
Name of witness                                )
(in BLOCK CAPITALS)                            )
                                               ).
                                               )
Address of witness                             )
                                               )
                                               )

## SLOVAKIA

EXECUTED AS A DEED                              )
for and on behalf of                           )
Nortel Networks Slovensko, s.r.o.              )
(in administration)                            )
by ALAN BLOOM                                  )
as joint administrator                         )
(acting as agent and without personal          )
liability) in the presence of:                 )
                                               )
                                               )
Signature of witness                           )          Signature of administrator
                                               )
                                               )
Name of witness                                )
(in BLOCK CAPITALS)                            )
                                               )
Address of witness                             )
                                               )
                                               )

10-06-2009   01:06    FRAN-RADISSON SAS STRAND HOTEL    +46    T-142   P.008/015   F-796

**FRANCE**

**EXECUTED AS A DEED**                )
for and on behalf of                       )
Nortel Networks France S.A.S     )
(in administration)                         )
by ALAN BLOOM                          )
as joint administrator                     )
(acting as agent and without personal )
liability) in the presence of:            )
                                                       )
Signature of witness                      )          Signature of administrator
                                                       )
                                                       )
                                                       )
Name of witness                           )
(in BLOCK CAPITALS)               )
                                                       )
                                                       )
Address of witness                        )
                                                       )
                                                       )

**FINLAND**

**EXECUTED AS A DEED**                )
for and on behalf of                       )
Nortel Networks Oy    (in administration) )
by ALAN BLOOM                          )
as joint administrator                     )
(acting as agent and without personal )
liability) in the presence of:            )
                                                       )
Signature of witness                      )          Signature of administrator
                                                       )
                                                       )
                                                       )
Name of witness                           )
(in BLOCK CAPITALS)               )
                                                       )
Address of witness                        )
                                                       )
                                                       )

## ROMANIA

**EXECUTED AS A DEED**                                )
for and on behalf of                                 )
**Nortel Networks Romania SRL**                      )
**(in administration)**                              )
**By ALAN BLOOM**                                    )
**as joint administrator**                           )
(acting as agent and without personal                )
liability) in the presence of:                       )
                                                     )
                                                     )
**Signature of witness**                             )          **Signature of administrator**
                                                     )
                                                     )
**Name of witness**                                  )
**(in BLOCK CAPITALS)**                              )
                                                     )
**Address of witness**                               )
                                                     )
                                                     )

## SWEDEN

**EXECUTED AS A DEED**                               )
for and on behalf of                                 )
**Nortel Networks AB      (in administration)**      )
**by ALAN BLOOM**                                    )
**as joint administrator**                           )
(acting as agent and without personal                )
liability) in the presence of:                       )
                                                     )
                                                     )
**Signature of witness**                             )          **Signature of administrator**
                                                     )
                                                     )
**Name of witness**                                  )
**(in BLOCK CAPITALS)**                              )
                                                     )
**Address of witness**                               )
                                                     )
                                                     )

10-09-2008   01:06    FRAN-RADISSON SAS STRAND HOTEL                    +48                    T-142   P.010/015   F-788

IRELAND

EXECUTED AS A DEED                          )
for and on behalf of                        )
Nortel Networks (Ireland) Limited           )
(in administration)                         )
by  ALAN BLOOM                              )
as joint administrator                      )
(acting as agent and without personal       )
liability) in the presence of:              )
                                            )
Signature of witness                        )          Signature of administrator
                                            )
.........................................   )          .............................................
                                            )
Name of witness                             )
(in BLOCK CAPITALS)                         )
.........................................   )
Address of witness                          )
.........................................   )
                                            )
.........................................   )
                                            )
.........................................   )

PAGE 10/15 * RCVD AT 10/09/2008 01:02:50 [GMT Daylight Time] * SVR:LN1FX01/6 * DNIS:883 * CSID:+48 * DURATION (mm-ss):02-12

Executed as a DEED by ALAN ROBERT
BLOOM in his own capacity without
personal liability and solely for the
purpose of obtaining the benefit of the
provisions of this deed expressed
to be conferred on the Administrators

.....................................................
Signature

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness

.....................................................

Name of witness

(in BLOCK CAPITALS)

.....................................................

Address of witness

.....................................................
.....................................................
.....................................................
.....................................................



672

Executed as a DEED on behalf of CHRISTOPHER
JOHN WILKINSON HILL in his own capacity
without personal liability and solely
for the purpose of obtaining the
benefit of the provisions of this
deed expressed to be conferred
on the Administrators by his attorney

**ALAN BLOOM**

.............................................

Signature

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness

.............................................

Name of witness

(in BLOCK CAPITALS)

...... Helen Marchugton

Address of witness

.... J. Title London Place
.............. London SE y ,   ,

.............................................

.............................................

10-09-2009   01:08    FRÅN-RADISSON SAS STRAND HOTEL               +46                    T-142  P.013/015  F-708

Executed as a DEED on behalf of STEPHEN JOHN
HARRIS in his own capacity
without personal liability and solely
for the purpose of obtaining the
benefit of the provisions of this
deed expressed to be conferred
on the Administrators by his attorney

**ALAN BLOOM**

....................................
Signature

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness
....................................

Name of witness

**(In BLOCK CAPITALS)**

.HELEN...MACNAUGHTON.

Address of witness

.1..MORE..LONDON..RIVERSIDE.

.........LONDON..SE1...-

....................................
....................................



10-06-2009  01:05    FRAM-RADISSON SAS STRAND HOTEL            +45                T-142  P.014/015  F-788

Executed as a DEED on behalf of ALAN MICHAEL
HUDSON in his own capacity without
personal liability and solely for the
purpose of obtaining the benefit of
the provisions of this deed
expressed to be conferred on the
Administrators by his attorney

**ALAN BLOOM**

....................        ....................
Signature

Title:  JOINT ADMINISTRATOR

in the presence of:

Signature of witness

Name of witness

(in BLOCK CAPITALS)

Address of witness

Executed as a DEED on behalf of DAVID
MARTIN HUGHES in his own capacity
without personal liability and
solely for the purpose of
obtaining the benefit of the
provisions of this deed
expressed to be conferred on the
Administrators by his attorney

**ALAN BLOOM**

................................................
Signature

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness
................................................

Name of witness

(in BLOCK CAPITALS)
.......... HELEN MACNAUGHTON

Address of witness
.......... 1 MORE LONDON PLACE
.......... LONDON SE 1         .
................................................
................................................

**CONSENT OF MONITOR**

Ernst & Young Inc., as Monitor under the Companies' Creditors Arrangement Act to the Canadian Companies, consents to the extension of the Agreement in accordance with this Seventh   Extension Deed.

**Ernst & Young Inc., in its capacity as Monitor in the CCAA proceedings and not in its personal capacity**

Name: Brent Beckrakonp

Title: Vice President

**TAB F**

This is Exhibit............F......referred to in the

affidavit of........JOHN DOOLITTLE.........

sworn before me, this........22 nd......

day of...Sune..........................20.09.

..................................................

A COMMISSIONER FOR TAKING AFFIDAVITS

## DEED OF ACCESSION TO SIXTH AND SEVENTH EXTENSION DEEDS

## INTERIM NORTEL GROUP SUPPLIER PROTOCOL AGREEMENT

This Deed is dated JUNE 7, 2009 and made between:

(1)  The Canadian Nortel group companies listed in Part 1 of Schedule 1 (the "Canadian Companies");

(2)  Nortel Networks S.A., a French *société anonyme* registered with the Registry of Commerce of Versailles under the number RCS Versailles no. 389 516 741, ("NNSA"), represented by Maître Franck Michel, as administrator, and in the presence of Maître Cosme Rogeau, as liquidator, each of whom has been appointed in such capacity in connection with the secondary liquidation proceedings commenced in respect of NNSA by the Commercial court of Versailles on May 28, 2009;

(3)  The EMEA Nortel group companies listed in part two of Schedule 1 (the "EMEA Companies in Administration"); and

(4)  Alan Robert Bloom, Christopher-John Wilkinson Hill, Stephen John Harris and Alan Michael Hudson as joint administrators of the EMEA Companies in Administration other than Nortel Networks (Ireland) Limited, and in the case of Nortel Networks (Ireland) Limited, Alan Robert Bloom and David Martin Hughes as joint administrators of that company, each of Ernst & Young LLP ("Administrators").

**WHEREAS**

The Canadian Companies and certain EMEA Nortel Group Companies entered into a sixth and a seventh extension deeds ("Sixth and Seventh Extension Deeds") in respect with the Interim Nortel Group Supplier Protocol Agreement on June 5, 2009 and June 11, 2009, respectively.

### Article 1

NNSA hereby accedes and becomes a party to the Sixth and Seventh Extension Deeds referred to above; provided, however, that NNSA reserves its right to terminate its participation to such extension deeds and to the Interim Nortel Group Supplier Protocol Agreement upon five (5) business days prior written notice to the Canadian Companies; and provided further that the Interim Nortel Group Supplier Protocol Agreement and its Sixth and Seventh Extension Deeds shall be interpreted *vis à vis* NNSA only by reference to the plain reading of such documents and that this Accession Deed shall under no circumstances be interpreted as an implied acceptance by NNSA of any matter that is not expressly set forth in such documents.

### Article 2

This accession deed may be executed in any number of counterparts and this have the same effect as if the signatures on the counterparts where on a single copy of this Accession Deed.

### Article 3

This accession deed shall be governed by and construed in accordance with English law.

1

**679**

This Accession Deed has been entered into on the date stated at the beginning of this Accession Deed.

IN WITNESS whereof this DEED has been executed by the parties hereto.

**680** 

**Schedule 1**

**Part One: The Canadian Companies**

1. **Nortel Networks Limited**

2. **Nortel Networks Corporation**

3. **Nortel Networks Technology Corporation**

4. **Nortel Networks Global Corporation**

5. **Nortel Networks International Corporation**

3

**Schedule 1**

**Part Two: The EMEA Companies in Administration**

1.  Nortel Networks UK Limited

2.  Nortel GmbH (Germany)

3.  Nortel Networks (Ireland) Limited (Ireland)

4.  Nortel Networks N.V. (Belgium)

5.  Nortel Networks S.p.A. (Italy)

6.  Nortel Networks B.V. (Netherlands)

7.  Nortel Networks Polska Sp. z o.o. (Poland)

8.  Nortel Networks Hispania, S.A. (Spain)

9.  Nortel Networks International Finance & Holding B.V. (Netherlands)

10. Nortel Networks (Austria) GmbH (Austria)

11. Nortel Networks, s.r.o. (Czech Republic)

12. Nortel Networks Engineering Service Kft. (Hungary)

13. Nortel Networks Portugal S.A. (Portugal)

14. Nortel Networks Slovensko, s.r.o. (Slovakia)

15. Nortel Networks France S.A.S (France)

16. Nortel Networks Oy (Finland)

17. Nortel Networks Romania SRL (Romania)

18. Nortel Networks AB (Sweden)

*CGSH Draft of June 11, 2009*

**EXECUTED AS A DEED BY EACH OF THE CANADIAN COMPANIES**

**NOTEL NETWORKS CORPORATION**

.........................................
Signature

.........................................
Name of signatory
      Gordon A. Davies
      Chief Legal Officer
      and Corporate Secretary
.........................................
Title

.........................................
Signature

.........Tracy S.J. Connally McGilley.........
Name of signatory    Assistant Secretary

.........................................
Title

**NORTEL NETWORKS LIMITED**

.........................................
Signature

.........................................
Name of signatory
      Gordon A. Davies
      Chief Legal Officer
      and Corporate Secretary
.........................................
Title

.........................................
Signature

    Tracy S.J. Connally McGilley
Name of signatory    Assistant Secretary

.........................................
Title

**NORTEL NETWORKS TECHNOLOGY CORPORATION**

.........................................
Signature Gordon A. Davies
      Chief Legal Officer
.........and Corporate Secretary.....
Name of signatory

.........................................
Title

.........................................
Signature

.........................................
Name of signatory

.........................................
Title

**NORTEL NETWORKS INTERNATIONAL CORPORATION**

.........................................
Signature Gordon A. Davies
      Chief Legal Officer
.........and Corporate Secretary.........
Name of signatory

.........................................
Title

.........................................
Signature

.........................................
Name of signatory Tracy S.J. Connally McGilley
      Assistant Secretary

.........................................
Title

Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property.

**Error! Unknown document property name.**

**NORTEL NETWORKS GLOBAL
CORPORATION**

.............................................
Signature

.............................................
Name of signatory   Gordon A. Davies
Chief Legal Officer
and Corporate Secretary
.............................................
Title

.............................................
Signature

Tracy S.J. Connelly McGilley
.............................................
Name of signatory   Assistant Secretary

.............................................
Title

Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property

6

Error! Unknown document
property name.

**684**

**Nortel Networks S.A.**

| | |
|---|---|
| **EXECUTED AS A DEED**<br>**for and on behalf of**<br>**Nortel Networks S.A.**<br>**(in administration)**<br>**by Maître Franck Michel**<br>**as administrator**<br>**(acting as agent and without personal**<br>**liability) in the presence of:** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| | )  Signature of administrator |

**and Maître Cosme Rogeau, as liquidator,**

| | |
|---|---|
| | Signature of liquidator |
| ............................................. | ) |
| | ) Signature of witness |
| **Name of witness** | ) |
| **(in BLOCK CAPITALS)** | ) Nicolas Gricourt |
| ............................................. | ) Collaborateur Administrateur |
| **Address of witness** | ) |
| ............................................. | ) |
| ............................................. | ) |

7

**EMEA Companies in Administration**

**UK**

**EXECUTED AS A DEED**
**for and on behalf of**
**Nortel Networks UK Limited**
**(in administration)**
**by** ~~ALAN BLOOM~~ Stephen HARRIS
**as joint administrator**
**(acting as agent and without personal**
**liability) in the presence of:**

)
)
)
)
)
)
)

**Signature of witness**
**administrator**

..BRUNO.....BARLYAUX....

**Signature of**

)
)

**Name of witness**
**(in BLOCK CAPITALS)**
.BRUNO....BARLYAUX...

)
)

**Address of witness**
.66...Av...Marceau...
..75008..PARIS......

)
)
)
)

8

## GERMANY

**EXECUTED AS A DEED**
for and on behalf of
Nortel GmbH
by ~~ALAN BLOOM~~ STEPHEN HARRIS    (in administration)
as joint administrator
(acting as agent and without personal
liability) in the presence of:

Signature of witness
administrator

Name of witness
(in BLOCK CAPITALS)
BRUNO BASUYAUX

Address of witness
66, AV. MARCEAU
75008 PARIS

## BELGIUM

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks N.V.
By ~~ALAN BLOOM~~ STEPHEN HARRIS    (in administration)
as joint administrator
(acting as agent and without personal
liability) in the presence of:

Signature of witness
administrator

Name of witness
(in BLOCK CAPITALS)
BRUNO BASUYAUX

Address of witness
66, AV. Marceau
75008 PARIS

9

**ITALY**

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks S.p.A.
by ~~ALAN BLOOM~~ STEPHEN HARRIS
as joint administrator
(acting as agent and without personal
liability) in the presence of:

(in administration)

**Signature of witness**
administrator

........................................

**Name of witness**
(in BLOCK CAPITALS)
BRUNO.....BASUYAUX.

**Address of witness**
66, Av. Tamann
75008 PARIS

Signature of

..........................................

---

**NETHERLANDS**

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks B.V.
by ~~ALAN BLOOM~~ STEPHEN HARRIS
as joint administrator
(acting as agent and without personal
liability) in the presence of:

(in administration)

**Signature of witness**
administrator

........................................

**Name of witness**
(in BLOCK CAPITALS)
.BRUNO...BASUYAUX...

**Address of witness**
66, Av. Tamann
75008 PARIS

Signature of

..........................................

10

**POLAND**

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks Polska Sp. Z o.o.
(in administration)
by ~~ALAN BLOOM~~ STEPHEN HARRIS
as joint administrator
(acting as agent and without personal
liability) in the presence of:

Signature of witness
administrator

Name of witness
(in BLOCK CAPITALS)
BRUNO PANNYAUX

Address of witness
66, Av. Mucum
75008 PARIS

Signature of

**SPAIN**

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks Hispania, S.A.
(in administration)
by ~~ALAN BLOOM~~ STEPHEN HARRIS
as joint administrator
(acting as agent and without personal
liability) in the presence of:

Signature of witness
administrator

Name of witness
(in BLOCK CAPITALS)
BRUNO PANNYAUX

Address of witness
66, Av. Mucum
75008 PARIS

Signature of

11

## NETHERLANDS

**EXECUTED AS A DEED**
for and on behalf of
**Nortel Networks International Finance
& Holding B.V.**
by ~~ALAN BLOOM~~ *STEPHEN HARRIS*
as joint administrator
(acting as agent and without personal
liability) in the presence of:

)
)
) (in administration)
)
)
)
)
)
)
)

**Signature of witness
administrator**

**Signature of**

)
)........................................
)
)

**Name of witness
(in BLOCK CAPITALS)**
.BRUNO.....BASUYAUX.

)

**Address of witness**
.66.,.Av..Marceau.
.75008..PARIS......

)
)
)

## AUSTRIA

**EXECUTED AS A DEED**
for and on behalf of
**Nortel Networks (Austria) GmbH**
(in administration)
by ~~ALAN BLOOM~~ *STEPHEN HARRIS*
as joint administrator
(acting as agent and without personal
liability) in the presence of:

)
)
)
)
)
)

**Signature of witness
administrator**

**Signature of**

)
).
)
.........................................
)
)

**Name of witness
(in BLOCK CAPITALS)**
.BRUNO.....BASUYAUX.

)

**Address of witness**
.66.,.Av..Marceau.
.75008.....PARIS...

)
)
)

12

**690**

**CZECH REPUBLIC**

EXECUTED AS A DEED                                            )
for and on behalf of
Nortel Networks, s.r.o.                    (in administration)    )
By ~~ALAN BLOOM~~ STEPHEN HARRIS        )
as joint administrator
(acting as agent and without personal        )              )
liability) in the presence of:
                                            )
                                            )
Signature of witness                                      )      Signature of
administrator                                                   )

~~Bruno Bassyaux~~

                                          )..........................................
Name of witness                                                 )
(in BLOCK CAPITALS)                        )              )
BRUNO  BASSYAUX              )

Address of witness                                           )
66, Av. Marceau              )
75008  PARIS              )

**HUNGARY**

EXECUTED AS A DEED                                            )
for and on behalf of
Nortel Networks Engineering Service Kft.    )
(in administration)                                          )
by ~~ALAN BLOOM~~ STEPHEN HARRIS        )
as joint administrator                                      )
(acting as agent and without personal        )              )
liability) in the presence of:
                                            )
                                            )
Signature of witness                                      )      Signature of
administrator                                                   )

~~Bruno Bassyaux~~
                                          )
                                          )..........................................
Name of witness                                                 )
(in BLOCK CAPITALS)                        )
BRUNO  BASSYAUX              )

Address of witness                                           )
66, Av. Marceau
75008  PARIS              )

13

**691**

## PORTUGAL

**EXECUTED AS A DEED**
**for and on behalf of**
**Nortel Networks Portugal S.A.**
**(in administration)**
**by ~~ALAN BLOOM~~ STEPHEN HARRIS**
**as joint administrator**
**(acting as agent and without personal**
**liability) in the presence of:**

**Signature of witness**
**administrator**

**Signature of**

**Name of witness**
**(in BLOCK CAPITALS)**
BRUNO   BASSUYAUX

**Address of witness**
66  AV  Marceau
25008   PARIS

## SLOVAKIA

**EXECUTED AS A DEED**
**for and on behalf of**
**Nortel Networks Slovensko, s.r.o.**
**(in administration)**
**by ~~ALAN BLOOM~~ STEPHEN HARRIS**
**as joint administrator**
**(acting as agent and without personal**
**liability) in the presence of:**

**Signature of witness**
**administrator**

**Signature of**

**Name of witness**
**(in BLOCK CAPITALS)**
BRUNO   BASSUYAUX

**Address of witness**
66  Av  Marceau
25008   PARIS

14

**692**

## FRANCE

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks France S.A.S
(in administration)
by ~~ALAN BLOOM~~ STEPHEN HARRIS
as joint administrator
(acting as agent and without personal
liability) in the presence of:

Signature of witness
administrator

Signature of

Name of witness
(in BLOCK CAPITALS)
BRUNO RASUYAUX

Address of witness
66., Av. Mouceau
75008 PARIS

## FINLAND

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks Oy    (in administration)
by ~~ALAN BLOOM~~ STEPHEN HARRIS
as joint administrator
(acting as agent and without personal
liability) in the presence of:

Signature of witness
administrator

Signature of

Name of witness
(in BLOCK CAPITALS)
BRUNO RASUYAUX

Address of witness
66., Av. Mouceau
75008 PARIS

15

**ROMANIA**

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks Romania SRL
(in administration)
By ~~ALAN BLOOM~~ STEPHEN HARRIS
as joint administrator
(acting as agent and without personal
liability) in the presence of:

Signature of witness
administrator

Name of witness
(in BLOCK CAPITALS)
DAVID  RACUYMUX

Address of witness
66 AV. Marceau
75008 PARIS

)
)
)
)
)
)
)
)
)
)
)

Signature of

)......................................
)
)
)
)
)
)

**SWEDEN**

**EXECUTED AS A DEED**
for and on behalf of
Nortel Networks AB
by ~~ALAN BLOOM~~ STEPHEN HARRIS
as joint administrator
(acting as agent and without personal
liability) in the presence of:

Signature of witness
administrator

Name of witness
(in BLOCK CAPITALS)
DAVID  RHAIYMUX

Address of witness
66 Av. Marceau
75008 PARIS

(in administration)   )
)
)
)
)
)
)

Signature of

)
...................................................
)
)
)
)
)

16

**694**

## IRELAND

| | | |
|---|---|---|
| **EXECUTED AS A DEED** | ) | ) |
| **for and on behalf of** | | ) |
| **Nortel Networks (Ireland) Limited** | ) | ) |
| **(in administration)** | | ) |
| **by ALAN BLOOM** | | ) |
| **as joint administrator** | | ) |
| **(acting as agent and without personal** | ) | |
| **liability) in the presence of:** | ) | |
| | ) | |
| | ) | |
| **Signature of witness** | ) | **Signature of** |
| **administrator** | | ) |
| | )............................................................ | |
| | | ) |
| **Name of witness** | ) | |
| **(in BLOCK CAPITALS)** | | ) |
| WILMA  GRAHAM | ) | |
| **Address of witness** | | ) |
| 1  MORE  LONDON  PLACE | ) | |
| LONDON  SE1  2AF | ) | |
| ............................................................ | ) | |

17

*Stephen John Harris*

Executed as a DEED by ALAN ROBERT
BLOOM in his own capacity without
personal liability and solely for the
purpose of obtaining the benefit of the
provisions of this deed expressed
to be conferred on the Administrators

..................................................
Signature

Title:  JOINT ADMINISTRATOR

in the presence of:

Signature of witness

Name of witness
**(in BLOCK CAPITALS)**
.BRUNO.....RUEN.Y.MUX

Address of witness
66, Av. Vanceau
75008 PARIS
.................................................
.................................................

18

184

Executed as a DEED on behalf of **CHRISTOPHER
JOHN WILKINSON HILL** in his own capacity
without personal liability and solely
for the purpose of obtaining the
benefit of the provisions of this
deed expressed to be conferred
on the Administrators by his attorney

.................................................
Signature

Title:  JOINT ADMINISTRATOR

in the presence of:

Signature of witness
.................................................

Name of witness
**(in BLOCK CAPITALS)**
BRUNO ZAMYRUK

Address of witness
66, Av. Ternan
7500 8  PARIS
.................................................
.................................................

19

*Alan Robert Dbourne*

Executed as a DEED on behalf of STEPHEN JOHN
HARRIS in his own capacity
without personal liability and solely
for the purpose of obtaining the
benefit of the provisions of this
deed expressed to be conferred
on the Administrators by his attorney

MARK BLOOM *Stephen Harris*

............................................
Signature

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness

............................................

Name of witness
(in BLOCK CAPITALS)
BRUNO..... BASUYAUX

Address of witness
66, Av. Marceau
75008 PARIS
............................................
............................................

20

**698**

Executed as a DEED on behalf of ALAN MICHAEL
HUDSON in his own capacity without
personal liability and solely for the
purpose of obtaining the benefit of
the provisions of this deed
expressed to be conferred on the
Administrators by his attorney
ALAN BLOOM

Signature

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness

Name of witness

(in BLOCK CAPITALS)

.BRUNO...RASNY.AUX...

Address of witness

66, Av. Marceau
75008 PARIS

21

Executed as a DEED on behalf of DAVID
MARTIN HUGHES in his own capacity
without personal liability and
solely for the purpose of
obtaining the benefit of the
provisions of this deed
expressed to be conferred on the
Administrators by his attorney

**ALAN BLOOM**

......................................
Signature

Title: JOINT ADMINISTRATOR

in the presence of:

Signature of witness
.......*W. Graham*................

Name of witness
(in BLOCK CAPITALS)
.....*WILMA GRAHAM*..........

Address of witness
.*1 MORE LONDON PLACE*
.*LONDON   SE1 2AF*.......
......................................
......................................

22