## Mendoza, Richard

| | |
|---|---|
| **From:** | Pasquariello, Joe [jpasquariello@goodmans.ca] |
| **Sent:** | 23 September 2009 20:22 |
| **To:** | 'Sanjeet Malik'; LLOYD, KEVIN; DAVIES, GAVIN; Segger, Joanne; Whiteoak, John; GALE, STEPHEN; 'dbotter@akingump.com'; 'fhodara@akingump.com'; 'rjacobs@akingump.com'; 'tkreller@milbank.com'; 'apisa@milbank.com'; 'aleblanc@milbank.com'; Carfagnini, Jay; Zarnett, Benjamin; 'plook@nortel.com'; 'annav@nortel.com'; 'Brent.R.Beekenkamp@ca.ey.com'; 'Murray.A.McDonald@ca.ey.com'; 'dtay@ogilvyrenault.com'; 'jstam@ogilvyrenault.com'; 'mlang@ogilvyrenault.com'; 'Matthew.Hart@lazard.com'; 'Orzyr@bennettjones.com'; 'ZychK@bennettjones.com'; 'alex.macfarlane@fmc-law.com'; 'michael.wunder@fmc-law.com'; 'shayne.kukulowicz@fmc-law.com'; 'mlang@ogilvyrenault.com'; 'aleblanc@milbank.com'; 'SDrymer@ogilvyrenault.com' |
| **Cc:** | 'James L BROMLEY'; 'Craig B BROD'; 'Brian T Sandstrom' |
| **Subject:** | RE: Allocation Protocol (September 30th) |

**Attachments:** Goodmans-Nortel Protocol Points.doc

In anticipation of our meeting in New York on September 30,2009 to discuss allocation protocol matters, we and the Monitor have been working with counsel to the Canadian debtors to formulate views on certain key elements of an allocation process. In this regard, we attach a proposal of the Monitor which addresses certain issues associated with an allocation process. The attached is by no means an exhaustive list of issues but may prove to be a useful starting point and serve, at least in part, as an agenda of issues to be discussed at the meeting.

We look forward to discussing this with you in person next week.


Regards,


**Joseph Pasquariello**

Goodmans LLP
250 Yonge Street, Suite 2400
Toronto, Ontario
M5B 2M6

Tel: 416-597-4216
Fax: 416-979-1234
email: jpasquariello@goodmans.ca


**From:** Sanjeet Malik [mailto:smalik@cgsh.com]
**Sent:** Friday, September 18, 2009 4:31 PM
**To:** Kevin.Lloyd@herbertsmith.com; Gavin.Davies@herbertsmith.com; Joanne.Segger@herbertsmith.com; John.Whiteoak@herbertsmith.com; Stephen.Gale@herbertsmith.com; dbotter@akingump.com; fhodara@akingump.com; rjacobs@akingump.com; tkreller@milbank.com; apisa@milbank.com; aleblanc@milbank.com; Carfagnini, Jay; Zarnett, Benjamin; plook@nortel.com; annav@nortel.com; Brent.R.Beekenkamp@ca.ey.com; Murray.A.McDonald@ca.ey.com; dtay@ogilvyrenault.com; jstam@ogilvyrenault.com; mlang@ogilvyrenault.com; Pasquariello, Joe; Matthew.Hart@lazard.com; Orzyr@bennettjones.com; ZychK@bennettjones.com; alex.macfarlane@fmc-law.com; michael.wunder@fmc-law.com; shayne.kukulowicz@fmc-law.com; mlang@ogilvyrenault.com; aleblanc@milbank.com; SDrymer@ogilvyrenault.com
**Cc:** James L BROMLEY; Craig B BROD; Brian T Sandstrom
**Subject:** NT: Allocation Protocol (September 30th)


Dear All:

The current revised plan is to have only one day of meetings on **September 30** in New York to kick off our discussions regarding the Allocation Protocol. Because we only have one day, we plan to start at **8am (EST)** on September 30th and continue our discussions until **8pm (EST)**. Please make your travel plans accordingly.

Regards,
Sanjeet

---

Sanjeet Malik
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2136 | f: +1 212 225 3999
www.clearygottlieb.com | smalik@cgsh.com

```
This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.
```

**********Attention**********

This communication is intended solely for the named addressee(s) and may contain information that is privileged, confidential, protected or otherwise exempt from disclosure. No waiver of confidence, privilege, protection or otherwise is made. If you are not the intended recipient of this communication, please advise us immediately and delete this email without reading, copying or forwarding it to anyone.

**************************

**Privileged & Confidential**
**For Discussion Purposes Only**
**DRAFT: 1- September 23, 2009 at 3:03 PM**

## ALLOCATION PROTOCOL

### Monitor's Proposal on Certain Key Elements

The following proposal summarizes the current thinking of the Monitor on certain key elements of the allocation protocol (the "**protocol**"). This proposal, which has been prepared with input from counsel to the Canadian debtors, is put forward for consideration and discussion by the parties over the coming weeks with a view to reaching some consensus on these issues. It is not intended to be exhaustive of the matters that the Monitor believes should be addressed in the protocol.

1.    **DISPUTES**

Disputes subject to the protocol would be defined as any *disputes, controversies or claims of a party that the panel considers must be addressed in order to determine finally the allocation of the sales proceeds of a given sale in accordance with the protocol.*

2.    **THE DISPUTE RESOLVER**

   a)    **Number of Members**

Allocation disputes would be resolved by a panel of three dispute resolvers ("**panel**" or "**allocation panel**").

   b)    **Method of Appointment**

Each of the three principal estates (Canada, U.S. and EMEA) would be entitled to appoint one panel member.

Panel members would be identified in the protocol.

   c)    **Qualifications of Panel Members**

      (i)    Professional Background

The essential professional qualification for prospective panel members, and the sole such qualification that should be identified in the protocol, is *experience and expertise in the resolution of complex commercial disputes.*

Examples of such individuals would be retired commercial/bankruptcy judges and noted international arbitrators.

      (ii)    Impartiality and Independence

All panel members must be and remain impartial and independent of the parties to the dispute.

Privileged & Confidential
For Discussion Purposes Only
DRAFT: 1 - September 23, 2009 at 3:03 PM

- 2 -

Panel members would be required to sign an undertaking to that effect, in accordance with which they would be subject to a continuing duty to disclose anything that could call into question in the eyes of the parties their impartiality or independence.

(iii)    Availability

Panel members must also be generally available for the purposes contemplated by the protocol.

**d)    Chair of the Panel**

Panel members should be free to designate which of them will act as Chair of the panel for a given dispute, should they feel it necessary or useful to do so.

The Chair would not have any special powers or authority to act or to decide any matter on his/her own, except as might otherwise be agreed by the principal estates to the dispute.

**e)    Continuity of Panel**

The panel to be appointed under the protocol should be mandated to hear and determine all allocation disputes that may eventually arise under the protocol.

This proposal is expressly *not* intended to qualify the principle that each dispute is to be determined on its own merits and each allocation decision will not become authoritative precedent for subsequent allocation disputes.

**f)    Replacement of Panel Members**

In the event that it becomes necessary for a panel member to be replaced – e.g., incapacity, death, resignation or other reason why a panel member might not be willing or able to perform his or her duties – the estate that appointed the panel member in question would be entitled to appoint a replacement possessing the requisite qualifications.

**g)    Appointment of Experts by the Panel**

The panel should not be entitled to appoint an independent expert to advise it, except with consent of the principal estates to the dispute.

**h)    Failure of a Party to File or Appear**

The failure of a party to appear at a hearing or meeting or to file any submission in accordance with the protocol or with a decision or order of the panel, after having been given a reasonable opportunity to do so, would not prevent the panel from proceeding with the case or from determining the allocation in question.

**i)    Exclusion of Liability**

The panel members and any experts appointed by them would be protected by an exclusion of liability/hold harmless clause.

Privileged & Confidential
For Discussion Purposes Only
DRAFT: 1 - September 23, 2009 at 3:03 PM

- 3 -

### j)       Confidentiality

The panel members and any expert(s) appointed by them would be required to sign an appropriate confidentiality undertaking.

## 3.       THE PANEL'S DECISION(S)

### a)       Majority Vote

All decisions by the panel should be by majority.

### b)       Explanations for Decisions

Decisions may contain such explanation for the decision as the panel considers appropriate.

### c)       Grounds

Allocations should be determined based on what the panel considers to be fair and equitable in the circumstances of the sale in question, without being bound by the rules, provisions or administrative practices of any particular national/provincial/state or other law or legal system or government agency or the standards of any particular organization or association.

The panel should, however, be permitted to consider any law, rule, principle or standard that it deems relevant to determine any element of a fair and equitable allocation in the circumstances of the sale in question or to resolve any other matter to be decided.

### d)       One or More Decisions

The panel may issue one or more decisions as it deems necessary or appropriate to address whatever issues – substantive, procedural or administrative – may arise in a given dispute.

### e)       One Voice

The panel must speak with one voice. No "**separate**" or "**dissenting**" decisions, opinions or explanations.

## 4.       RULES GOVERNING PROCEEDINGS BEFORE THE PANEL

### a)       Written Submissions

#### (i)       Initial Written Submission

Parties should be entitled to make a first written submission ("**initial submission**") stating and explaining the basis for the allocation of sales proceeds that it considers fair and equitable in the circumstances of the sale in question.

Such submissions will include a full statement of the party's position, including whatever factual allegations, exhibits, documents, expert reports, written witness statements, etc., on which a party relies in support of its position, as well as arguments in support of that position.

Privileged & Confidential
For Discussion Purposes Only
DRAFT: 1 - September 23, 2009 at 3:03 PM

- 4 -

There would be no limits or constraints regarding the length of these initial submissions, their content, the type of factual or expert evidence that may be relied on, methodologies employed, etc.

The initial submissions of all parties would be filed on the same date, according to time limits to be agreed and set out in the protocol.

(ii)    Reply Submission

A party would also be entitled to reply to the others' initial submissions, in the form of a second written submission ("**reply submission**").

Reply submissions would similarly contain all supplemental allegations, documents, expert reports, witness statements, etc., and arguments on which a party relies.

Reply submissions would be filed on the same date, according to a timetable to be set by the panel after consultation with the parties to the dispute.

**b)    Oral Submissions Hearing**

A hearing will be held at which a party will be entitled to (i) examine the witnesses and experts from whom witness statements or expert reports have been produced by another party, and (ii) make oral submissions.

**c)    Witnesses**

A witness's written witness statement(s) will stand as that witness's evidence in chief (direct evidence), with the principal function of the witness's appearance at the hearing being to answer questions from the parties and the panel if so requested.

The party on whose behalf the witness has produced a witness statement should be entitled to introduce the witness and conduct a brief examination in chief, but the point of the witness statement is to preclude lengthy examination in chief (direct examination).

The party on whose behalf the witness has produced a witness statement is responsible for ensuring the witness's appearance at the hearing, if requested. If a witness who is requested to appear fails to appear without sufficient reason, the witness's statement(s) may be disregarded.

The panel itself will be entitled to request that a party produce, for questioning at the hearing, a witness or expert who has filed a witness statement or expert report on behalf of that party but who has not otherwise been requested to appear by any other party.

**d)    Language**

The language of all proceedings will be English.

**Privileged & Confidential**
**For Discussion Purposes Only**
**DRAFT: 1 - September 23, 2009 at 3:03 PM**

- 5 -

### e)    Other Procedures

All procedural and other matters related to the conduct of the proceedings not expressly addressed in the protocol or otherwise agreed by the parties are to be determined by the panel in its discretion after consultation with the parties to the dispute.

## 5.    GENERAL RULE

In all matters not expressly provided for in the protocol or otherwise agreed by the parties, panel members and parties would act in the spirit of the protocol.

## 6.    ACCESS TO INFORMATION IN THE POSSESSION OF THE COMPANY

### a)    Company Documents

The protocol would provide that all parties have equal access to a data room along the lines set out in the June 13th draft protocol.

### b)    Company Officers and Employees

Parties would similarly have equal access to certain, identified Company employees/officers for purposes of preparing their respective submissions.

Such individuals would be expected to use their reasonable best efforts to assist the parties. Assistance would include: providing information requested by a party for purposes of formulating its submissions; providing witness statements, if requested; and appearing at hearings to answer questions, if requested by any party or the panel.

The individuals in question would expressly not be bound by any duty not to disclose to any party information or views that they may have shared with another.

## Mendoza, Richard

| | |
|---|---|
| **From:** | Sanjeet Malik [smalik@cgsh.com] |
| **Sent:** | 09 October 2009 07:19 |
| **To:** | LLOYD, KEVIN; DAVIES, GAVIN; Segger, Joanne; Whiteoak, John; GALE, STEPHEN; dbotter@akingump.com; fhodara@akingump.com; rjacobs@akingump.com; tkreller@milbank.com; apisa@milbank.com; aleblanc@milbank.com; jcarfagnini@goodmans.ca; bzarnett@goodmans.ca; plook@nortel.com; annav@nortel.com; Brent.R.Beekenkamp@ca.ey.com; Murray.A.McDonald@ca.ey.com; dtay@ogilvyrenault.com; jstam@ogilvyrenault.com; mlang@ogilvyrenault.com; jpasquariello@goodmans.ca; Matthew.Hart@lazard.com; Orzyr@bennettjones.com; ZychK@bennettjones.com; alex.macfarlane@fmc-law.com; michael.wunder@fmc-law.com; shayne.kukulowicz@fmc-law.com; SDrymer@ogilvyrenault.com |
| **Cc:** | James L BROMLEY; Craig B BROD; Jose M Bazan; Howard ZELBO; Inna Rozenberg; Dina Zloczower |
| **Subject:** | NT: Revised Allocation Protocol |
| **Attachments:** | 2120989_1(DVComparison_NEWYORK_2068820_1-NEWYORK_2068820_3).DOC; 2068820_3(Nortel_ Allocation Protocol).DOC; IBA Rules.pdf |

Dear All:

Attached is the revised Allocation Protocol and the blackline comparison with the first draft of the Allocation Protocol, which was circulated in June. Please note that this draft has not been reviewed by our arbitration experts or our clients. Accordingly, this draft remains subject to further internal review. Because certain footnotes reference IBA rules of evidence, we have also attached a copy of the IBA rules of evidence for your convenience.

We will be separately circulating a dial-in for our call next week. We also want to take this opportunity to remind parties to circulate names of potential members of the dispute resolution panel.

Regards,
Sanjeet

Sanjeet Malik
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2136 | f: +1 212 225 3999
www.clearygottlieb.com | smalik@cgsh.com

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

17/05/2011

THIS DRAFT AGREEMENT HAS BEEN PRODUCED
FOR DISCUSSION AND SETTLEMENT PURPOSES
ONLY AND IS SUBJECT TO THE PROVISIONS OF
RULE 408 OF THE RULES OF EVIDENCE FOR
UNITED STATES COURTS AND MAGISTRATES AND
ANY OTHER SIMILAR APPLICABLE RULES IN ALL
PERTINENT JURISDICTIONS.

*Draft of ~~June 13,~~October 9,* 2009
*Privileged and Confidential*
*~~Attorney Work Product~~*
*~~Attorney-Client Communication~~*
*~~For discussion and contingency purposes only~~*

## PROTOCOL FOR RESOLVING DISPUTES
## CONCERNING ALLOCATION OF SALE PROCEEDS

This Protocol for Resolving Disputes Concerning Allocation of Sale Proceeds, dated as of ~~June [•]~~, 2009 (the "Protocol"), is entered into by and among Nortel Networks Limited ("NNL") and the other entities set forth in Schedule 1 attached hereto, Nortel Networks Inc.  ("NNI") and the other entities set forth in Schedule 2 attached hereto, the Joint Administrators (as defined below) and the entities set forth in Schedule 3 attached hereto (the "EMEA Debtors"), certain affiliates of the Debtors (as defined below) set forth in Schedule 4 attached hereto (the "Non-Filed Affiliates")**[**, the Monitor **(as defined below)**, the Official Committee of Unsecured Creditors appointed in the US Proceedings (as defined below) (the "Creditors' Committee") and the steering committee members of the ad hoc group of bondholders that have executed confidentiality or non-disclosure agreements with the Canadian Debtors and the US Debtors (each, as defined below) (the "Bondholders' Committee," and along with the Creditors' Committee, the "Committees")**]**[1] (each, a "Party," and collectively, the "Parties"). **[NTD: Participation of other stakeholders to be discussed.]** The Joint Administrators, in their ~~individual~~**personal** capacity, shall be Party to this ~~Agreement~~**Protocol as provided in Section 9.7 and** solely for the purposes of ~~Section 9.4~~**obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to the Joint Administrators (as defined below)** and references to the Parties shall be construed accordingly.

WHEREAS, on January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC", and together with its affiliates, the "Company;" or the "Nortel Group"), NNL and certain of NNC's other Canadian affiliates included in Schedule 1 (collectively, the "Canadian Debtors"), commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, ~~"CCAA" and~~ the "Canadian Proceedings" **and the "CCAA"**), in connection with which Ernst & Young Inc.  was appointed monitor (the "Monitor"); and

WHEREAS, on the Filing Date **and on July 14, 2009 (with respect to Nortel Networks (CALA) Inc.)**, NNI and certain of NNI's United States affiliates included in Schedule 2 (collectively, the "US Debtors" and, together with the Canadian Debtors and the EMEA Debtors, the "Debtors") filed petitions in the United States Bankruptcy Court for the District of Delaware (the "US Court") under chapter 11 of title 11 of the United States Code (respectively, the "**US Proceedings" and the "**Bankruptcy Code;~~" and the "US Proceedings~~"); and

WHEREAS, on the Filing Date, Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel Networks S.A.  ("NNSA") and certain of NNUK's affiliates in the Europe, Middle East and Africa ("EMEA") region, including those in Schedule 3

---

**[1]** **TBD: Whether the UCC, Bondholders' Committee, Monitor will be parties to the Protocol or third party beneficiaries? Do the UCC and the Bondholders' Committee have the legal capacity to contract?**

attached hereto, commenced administration proceedings (the "UK Proceedings" and, together with the Canadian Proceedings and the US Proceedings, the "Proceedings") before the High Court of Justice in London, England (the "UK Court" and, together with the Canadian Court and the US Court, the "Courts"), ~~represented by~~**and the UK Court appointed** individuals from Ernst & Young LLP (the "UK Administrator"), and, in the case of NNIR only, Ernst & Young Chartered Accountants (the "NNIR Administrator"), ~~serving~~as administrators in the UK Proceedings (the UK Administrator and the NNIR Administrator collectively, **and including their respective successors, replacements and any subsequent office holders appointed to the relevant EMEA Debtors,** the "Joint Administrators"); and

WHEREAS, subsequent to the Filing Date, NNSA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator (the "NNSA Liquidator") and an administrator (the "NNSA Administrator") have been appointed by the Versailles Commercial Court (Docket No. 2009P00492) for NNSA; and

**[**WHEREAS, NNSA is not a Party to this ~~agreement~~**Protocol**, but shall be invited by the Parties to accede to this ~~agreement~~**Protocol** as an EMEA Debtor;**]**[2] and

WHEREAS, the Debtors and their respective affiliates intend**, or have agreed,** to sell certain assets of their estates in several transactions, each relating to a particular line of business **[or portfolio of technologies]** (each, a "Business") to a third party buyer (~~the~~**each such buyer, a** "Buyer"); and

WHEREAS, the Company ~~intends~~**has provided, or intended** to provide**,** potential Buyers with access to a room (which may be an electronic data room) containing the books and records of the ~~Company~~**relevant Business** and other financial information relating to ~~the Company~~**such Business** (the "Data Room"); and

WHEREAS, with respect to each Business, the Debtors and their respective affiliates intend to enter**, or have entered,** into one or more acquisition agreements **and other ancillary agreements** (such agreements, with respect to the sale of each Business, collectively the "Acquisition Agreement") with the Buyer to govern the sale of such Business (the "Sale"); and

WHEREAS, after entering into ~~the~~**an** Acquisition Agreement**, in the case where so called "stalking horse" bidder has been selected, or prior to entering into an Acquisition Agreement in the case where no "stalking horse" bidder has been selected**, certain of the Debtors intend to apply**, or have applied,** to certain of the Courts for orders authorizing such Debtors to establish notice, bidding and sale procedures for the Sale of each Business (the "Bid Procedures Orders"); and

---

**[2] Given that NNSA has agreed to terminate certain IP rights in connection with Equinox and MEN transactions and in consideration for such termination agreed in writing to accept a right to future proceeds to be allocated pursuant to this Protocol, any reason why NNSA would not join as of the signing date?**

[New York #2068820 v~~1~~**3**]

WHEREAS, after entry of the Bid Procedures Orders, such Debtors intend to conduct**, or have conducted,** an auction for the Sale of each Business in accordance with the Bid Procedures Orders; and

WHEREAS, after conclusion of the auction, certain of the Debtors intend to apply**, or have applied,** to certain of the Courts for orders approving the Sale of each Business to the **relevant** Buyer (the "Sale Orders"); and

WHEREAS, the relevant Debtors ~~and their respective affiliates~~ intend to request**, or have requested,** that the Sale Orders contain procedures for the establishment of one or more escrow accounts (the "Escrow Account") overseen by an independent agent (the "Escrow Agent") for deposit of the proceeds of the Sale (the "Sale Proceeds") pending the allocation thereof in accordance with the provisions of this Protocol; and

WHEREAS, after entry of the Sale Orders, the Debtors and their respective affiliates intend to consummate**, or have consummated,** the Sale of each Business in accordance with the Sale Orders (in each case, a "Closing"); and

WHEREAS, the ~~Parties~~**Debtors and certain Non-Filed Affiliates** previously agreed, pursuant to the Interim Funding and Settlement Agreement, dated **as of** June 9, 2009 (as amended from time to time, the "Interim Funding Agreement"), ~~to~~as soon as reasonably practicable following the execution of such agreement, to negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sales Proceeds, which would provide binding procedures for the allocation of Sales Proceeds where the Selling Debtors (as defined therein) have been unable to reach agreement regarding such allocation; **and**

WHEREAS, the Parties wish to provide for a mechanism to negotiate the allocation of Sale Proceeds between and among the **Canadian Debtors that are** Selling Parties ~~(as defined below~~**with respect to each Sale, if any, (the "Canadian Filed Sellers"), the EMEA Debtors that are Selling Parties with respect to such Sale, if any, (the "EMEA Filed Sellers"), the US Debtors that are Selling Parties with respect to such Sale, if any, (the "US Filed Sellers") and to the Non-Filed Affiliates that are Selling Parties with respect to such Sale, if any, (the "Non-Filed Selling Parties"**) and to resolve disputes ~~that might arise between and among themselves~~with respect to the allocation of the Sale Proceeds**, where "Selling Parties" refers to the Parties that are participating as sellers in the Sale of each relevant Business**; and

WHEREAS, each Party (including the Monitor, the Creditors' Committee and the Bondholders' Committee)~~,~~ wishes to participate in the procedures set forth in this Protocol, and has agreed to be bound by this Protocol and any outcome with respect to the Allocation of Sales Proceeds pursuant to a Decision **or a Supplementary Decision** by the ~~Dispute Resolver~~**Panel** (each, as defined below); and

WHEREAS, in order to ensure that the Non-Filed Affiliates are afforded an adequate opportunity to participate in the procedures under this Protocol, the Parties have agreed

3

to ~~appoint~~**the appointment of** an independent financial advisor ~~to assist~~**and an independent counsel to represent** the Non-Filed Affiliates in connection with the negotiations and other procedures under this Protocol (**such independent financial advisor and counsel together,** the "Affiliates' ~~FA~~**Representative**").

NOW THEREFORE, IT IS HEREBY CONSENTED TO, STIPULATED, AGREED AND ORDERED THAT:

## ARTICLE I
## INITIAL NEGOTIATIONS

*Section 1.1*        During the period beginning as early as the ~~start of negotiations~~**execution** of any Acquisition Agreement **(such date, the "Relevant Signing Date")** but commencing no later than the ~~execution of any Acquisition Agreement, the Parties shall~~**consummation of any Sale (such date, the "Relevant Closing Date"), the Negotiating Parties (as defined below) shall use commercially reasonable efforts to** negotiate in good faith a fair and equitable allocation of the Sale Proceeds among ~~those of the Parties that are participating as sellers in the Sale of each relevant Business (the "Selling Parties," and together with the Committees, the Monitor, the Affiliates' FA, the "Negotiating Parties")~~ **the Canadian Filed Sellers, the EMEA Filed Sellers, the US Filed Sellers and the Non-Filed Selling Parties, where the "Negotiating Parties" means NNL (on behalf of Canadian Filed Sellers), NNI (on behalf of US Filed Sellers), NNUK (on behalf of EMEA Filed Sellers), the Affiliates' Representative (on behalf of Non-Affiliates Selling Parties), the Monitor, the Creditors' Committee and the Bondholders' Committee.**[3]  The Non-Filed Affiliates shall be ~~assisted~~**represented** in such negotiations and all other procedures under this Protocol by the Affiliates' ~~FA~~**Representative.  At any time prior to the First DR Referral Date (as defined below), the Parties may elect to use the services of a mediator, on terms mutually agreed by the Parties, to reach an agreement as to the allocation of Sale Proceeds (the "Mediator"), and each Negotiating Party hereby agrees to fully cooperate, acting in good faith, with such Mediator.**

*Section 1.2*        If the Negotiating Parties fail to reach an agreement regarding the allocation of **the** Sale Proceeds prior to the ~~thirtieth~~ **(30●**th**)** day (excluding Saturdays, Sundays and national public holidays in any of the United States, Canada or the United Kingdom) (**each, a** "Business Day") immediately ~~succeeding the execution of any Acquisition Agreement~~**following the Relevant Closing Date**, the Negotiating Parties shall use commercially reasonable efforts to agree within an additional ~~ten●~~ **(10●)** Business Days as to the minimum amount that would be distributed to ~~each of~~the **Canadian Filed Sellers, the EMEA Filed Sellers, the US Filed Sellers and the Non-Filed** Selling Parties in any reasonable allocation scenario (the "Minimum Allocation Amount").  In the event that the Negotiating Parties shall have failed to reach an agreement as to the allocation of Sales Proceeds, including as to a Minimum Allocation Amount, at the end of the ~~forty-fifth~~ **(45●**th**)** Business Day ~~succeeding the execution of such Acquisition Agreement~~**following the Relevant Closing Date** (the "First DR

---

[3] **Consider whether the definition of Negotiating Parties should be dynamic and change with each sale.  For instance, for the purposes of CDMA sale, should the definition of Negotiating Parties exclude NNUK?**

4

Referral Date"), ~~such failure to agree shall be deemed a~~**the** dispute as to a fair and equitable allocation of the **relevant** Sale Proceeds among the Selling Parties (a "Basic Allocation Dispute")~~, which~~ shall be automatically referred to the ~~Dispute Resolver~~**Panel (as defined below)** pursuant to this Protocol.[4]  The Parties hereby agree that the deadlines imposed by this Section 1.2 may be extended by mutual written agreement among the ~~relevant Negotiating Parties.  At any time prior to the First DR Referral Date, by agreement among the Negotiating Parties, any Selling Party may retain a mediator to reach an agreement as to the allocation of Sale Proceeds (the "Mediator").~~**Negotiating Parties.**

     *Section 1.3*      ~~In the event that a dispute as to the fair and equitable allocation of the Sale Proceeds shall be deemed a~~**Upon the automatic referral of the** Basic Allocation Dispute **to the Panel** as contemplated by Section 1.2, NNI shall be responsible for promptly sending a notice to the ~~Dispute Resolver~~**Panel** and the other Negotiating Parties, indicating in such notice (a) that ~~the Negotiating Parties have failed to reach an agreement regarding the allocation of the Sale Proceeds and that such failure to reach agreement has been deemed a~~**pursuant to the terms of Section 1.2 of this Protocol, the** Basic Allocation Dispute **has been automatically referred to the Panel**, and (b) the First DR Referral Date.  If for any reason NNI shall fail to send such notification to the ~~Dispute Resolver~~**Panel**, any other Negotiating Party may undertake to send such notice to the ~~Dispute Resolver~~**Panel** and the other Negotiating Parties.

     *Section 1.4*        ~~At~~**Subject to the provisions of any applicable Side Agreement (as defined below), at** the Closing of any Sale, the Sale Proceeds **from such Sale** shall be placed in ~~the Escrow Account~~**an Escrow Account.  For the purposes of this Protocol, "Side Agreement" means an agreement entered into by, inter alia, all or the principal Selling Parties in the Sale of a particular Business for the purpose of facilitating the completion of such Sale and maximizing the value arising therefore for their respective stakeholders**.  If the Negotiating Parties agree to a Minimum Allocation Amount with respect to the allocation of the Sale Proceeds, ~~upon the Closing of such Sale,~~ such Minimum Allocation Amount shall be released from the Escrow Account ~~immediately following the Closing of the Sale~~ and distributed to the Selling Parties **immediately following the later of (x) the Closing of the Sale and (y) the date when the Parties agree to such Minimum Allocation Amount**; and any remaining amounts shall remain in the Escrow Account until released from the Escrow Account in accordance with the provisions of this Protocol.  If the Negotiating Parties fail to agree ~~on~~**to** a Minimum Allocation Amount following good faith negotiations, **subject to the provisions of any applicable Side Agreement,** all Sale Proceeds shall remain in the **relevant** Escrow Account until released from ~~the~~**such** Escrow Account in accordance with the provisions of this Protocol.

---

[4] **Prior to signing of this Protocol (by which time the timing of the CDMA and Equinox closing should be known to the Parties), this Protocol will be revised to add language to accommodate EMEA's request that the Equinox dispute be the first Basic Allocation Dispute to be handled by the Panel so long as it does not unreasonably delay the allocation for CDMA, which is expected to close earlier than Equinox.**

[New York #2068820 v~~1~~**3**]

**ARTICLE II**
**REFERRING A DISPUTE TO THE DISPUTE RESOLVER; ADDITIONAL PARTICIPATING PARTIES REFERRAL OF ALLOCATION AND OTHER DISPUTES TO THE PANEL**

*Section 2.1*          As contemplated by Section 1.2 of this ~~Agreement~~**Protocol**, a Basic Allocation Dispute shall be automatically referred to ~~the Dispute Resolver~~**a dispute resolution panel constituted in accordance with Sections 2.2, 2.3 and 2.4 (the "Panel")**.  In addition, if any other dispute, controversy or claim arising out of, relating to, or in connection with the issue of ~~allocation~~**Allocation** of the Sale Proceeds ~~among the Selling Parties~~ (an "Additional ~~Dispute" and together with a Basic Allocation Dispute, a "~~Dispute") is not resolved on or before the Closing, then at any time after the ~~Closing~~**First DR Referral Date and [ten (10) Business Days prior to the Second Round Submission Deadline (as defined below)]** any of the Negotiating Parties may~~, on or at any time after the First DR Referral Date,~~ refer an Additional Dispute to the ~~Dispute Resolver~~**Panel** for a decision in accordance with this Protocol, and such referral shall be binding upon the Parties.  Reference of an Additional Dispute to the ~~Dispute Resolver~~**Panel** must be in writing with a copy to all other Negotiating Parties.  Upon such reference, ~~the Dispute Resolver shall~~**any member of the Panel may** notify the Negotiating Parties whether the Negotiating Parties shall be permitted to provide supplementary written materials with regards to such Additional Dispute to the ~~Dispute Resolver~~**Panel.  In addition, the Parties hereby agree that the Panel may decide any other dispute, controversy or claims of a Selling Party that the Panel considers must be addressed in order to finally determine the Allocation of the Sale Proceeds of a given Sale in accordance with this Protocol (each such dispute, controversy or claim, an "Other Dispute" and together with an Additional Dispute and a Basic Allocation Dispute, a "Dispute"), provided that the resolution of any Other Dispute shall be binding on the Parties solely for the purposes of the determination of the relevant Allocation.**

*Section 2.2*          The ~~Dispute Resolver shall be [name of individual].  The Dispute Resolver may engage the services of [accounting firm] to assist the Dispute Resolver in resolving the Dispute.  [NTD:  Alternatively, consider a three-member panel, with one dispute resolver appointed by each of the three estates —— to be discussed.]~~**members of the Panel shall be as follows: ● (the "Category A Member"), ● (the "Category B Member") and ● (the "Category C Member").  For the purposes of administrative convenience, the Panel may designate one of its members as the chairperson of the Panel with regards to a given Dispute ("Relevant Chairperson").  The Relevant Chairperson shall have no special powers or authority to act unless otherwise agreed by [the other members of the Panel][5].**

*Section 2.3*          ~~If the Dispute Resolver is unable or unwilling to serve after receiving notice to refer the matter to the Dispute Resolver, the Negotiating Parties shall endeavor to agree upon a replacement Dispute Resolver. If the Negotiating Parties are unable to agree upon a replacement Dispute Resolver within ten (10) days (including Saturdays, Sundays and holidays) ("Days") of receiving notice that the Dispute Resolver is unable or unwilling to serve, then a replacement Dispute Resolver shall be selected from the list of agreed-upon replacement Dispute~~

_____

**[5] TBD**

6

Resolvers set forth on Exhibit A attached hereto and made a part hereof, as follows:  The replacement Dispute Resolver listed first on Exhibit A shall serve as the Dispute Resolver unless such individual is not available to serve as and when requested, in which case the replacement Dispute Resolver listed next on Exhibit A shall serve as the Dispute Resolver unless such individual is not available to serve as and when requested, and so on in like fashion through the list of replacement Dispute Resolvers set forth on Exhibit A in the order listed.**Each member of the Panel shall be and remain at all times impartial and independent of the Parties.  No member of the Panel shall act as advocate of any Party.  No member, whether before or after appointment to the Panel, shall advise any Party on the merits or outcome of the Dispute.**

**_Section 2.4_        If any member of the Panel is unable or unwilling to serve after receiving notice of the referral of any matter to the Panel or at any time thereafter, such member shall be replaced by another individual from the names set forth on Exhibit A attached hereto, provided that such replacement must belong to the same category as the member that is being replaced.[6]**

**_Section 2.5_**        ~~_Section 2.4_~~ In connection with a particular Sale, all costs and expenses of the Mediator (if any)~~, the Dispute Resolver and the Affiliates' FA~~ shall be paid from the **relevant** Escrow Account before ~~allocation~~**transfer of Sale Proceeds** in accordance with ~~Section 7.8; each~~**the terms of this Protocol and he relevant escrow agreement.  Each** of the Negotiating Parties (other than the Affiliates' ~~FA~~**Representative**) shall bear its respective costs and expenses, including attorneys' fees, associated with the preparation and presentation of its case to the ~~Dispute Resolver.~~**Panel and any other costs and expenses incurred in connection with the proceedings pursuant to this Protocol. The Panel shall specify in its Decision the total amount of the costs and other expenses of the Panel (the "Panel Costs"), and the proportions in which the US Filed Sellers, the Canadian Filed Sellers, the EMEA Filed Sellers and the Non-Filed Selling Parties shall bear such Panel Costs.  The costs and expenses of the Affiliates' Representative and the pro rata portion of the Panel Costs to be paid by Non-Filed Selling Parties shall be paid from the Sale Proceeds allocated to the Non-Filed Selling Parties.**

**_Section 2.6_**        ~~_Section 2.5_ For avoidance of doubt, in~~**In** rendering any Decision ~~(as defined below)~~ and **the** Allocation ~~(as defined below)~~ in such Decision, the ~~Dispute Resolver~~**Panel** shall (i) treat as final and binding any Minimum Allocation Amount and any other partial allocation of Sale Proceeds that the Selling Parties have agreed to in respect of a particular Sale, and (ii) not be bound to adopt or follow **I**(x) any allocation agreed with the Buyer in or pursuant to the relevant Acquisition Agreement.**I**[7] or (y) any previous Decision or Allocation of the ~~Dispute Resolver~~**Panel** relating to another Sale.

---

**[6] This provision assumes that Exhibit A will have three additional names and each name will belong to one of the three Categories A, B or C.  Consider whether Exhibit A should have six names instead – in other words, whether there should be two back-ups for each member of the Panel.**

**[7] Tax counsel to review this.  Nortel has agreed to allocate at least the book value to each tangible asset and the Panel has to respect this allocation principle.**

[New York #2068820 v~~1~~**3**]

*Section 2.7* ~~Section 2.6~~ It is further understood and agreed that it is not the intention of the Parties that submissions to the ~~Dispute Resolver~~**Panel** (including Written ~~Materials~~**Submissions** and Oral Argument (each as defined below)) of any Party be used to reopen or seek reconsideration of or compensation or credit for any matter that previously was expressly agreed by the Parties in connection with their ~~entering~~**entry** into any Acquisition Agreement ~~or~~**,** the Interim Funding Agreement **or any other agreement among two or more Parties**.

*Section 2.8*    **None of the members of the Panel or any expert appointed by the Panel shall be liable to any Party or any third party howsoever for any act or omission in connection with any proceedings under this Protocol.  [The Parties hereby agree to hold harmless each member of the Panel and any expert appointed by the Panel for any act or omission of such person in connection with any proceedings under this Protocol.]**

*Section 2.9*    **The place of all proceedings pursuant to this Protocol shall be New York, New York.  All proceedings pursuant to this Protocol shall be conducted in the English language.**

### ARTICLE III
### ADMINISTRATIVE MEETINGS

*Section 3.1*    Within ~~seven●~~ (~~7●~~) ~~Days~~**calendar days** of a matter being referred to the ~~Dispute Resolver~~**Panel**, the Negotiating Parties and the ~~Dispute Resolver~~**Panel** shall hold a meeting to discuss administrative matters (the "Administrative Meeting"), which shall be convened by the ~~Dispute Resolver~~**Panel**.  Each of the Negotiating Parties must be given **(i) at least five (5) Business Days' notice prior to the Administrative Meeting and (ii)** the opportunity to ~~be~~ present at the Administrative Meeting.  The Administrative Meeting shall be held **at a time and in a location, as determined by the Panel, such that each Negotiating Party and/or its counsel shall be able to participate** by telephone, videoconference or in person~~, as decided by the Dispute Resolver.  At the Administrative Meeting, the Dispute Resolver may, subject to the schedule for dispute resolution provided for in this Protocol, confirm the procedure and manner in which the settlement of the Dispute shall be conducted, including, but not limited to, the due date for written submissions, establish the time and place of oral argument and address other administrative matters~~.  At the Administrative Meeting and at any other proceeding before the ~~Dispute Resolver~~**Panel**, each of the Negotiating Parties shall be entitled to be represented by counsel.

*Section 3.2*    **Except as specifically provided in this Protocol, the Panel may, after taking into account the facts and circumstances of the relevant Sale, the multiple jurisdictions involved in such Sale or the Dispute and the different types of Nortel Group entities under the Nortel Group's transfer pricing regime which was in effect prior to the Filing Date, establish the procedure and manner in which the resolution of the Dispute shall be conducted, including, without limitation, (i) the due dates for Written Submissions, (ii) the time, place, length and number of oral arguments for each Negotiating Party (the number of oral arguments for a given Negotiating Party multiplied by the length of each such oral argument, the "Oral Argument Duration") and (iii) other administrative matters such as the scheduling of the Evidentiary Hearings (as defined below) and subsequent**

8

**Administrative Meetings (if necessary), provided that the right of the Non-Filed Selling Parties to participate and present their Interests (as defined below and as determined by the Panel) to the Panel shall reflect, to the extent reasonably practicable and determinable under the circumstances, the Panel's assessment of relative contribution of the assets (tangible and intangible) and the rights transferred or relinquished by liabilities assumed from the Non-Filed Selling Parties in comparison to other Selling Parties with regards to a given Sale.**

**        *Section 3.3*        If any Negotiating Party determines that there is an actual or potential conflict with respect to the Dispute among any of the Respective Selling Parties (as such term is defined in Exhibit B attached hereto) of such Negotiating Party or that such Negotiating Party represents a diversity of interests with regard to such Negotiating Party's Respective Selling Parties (each such interest, an "Interest"), such Negotiating Party may petition in writing the Panel to further modify the procedures, including, without limitation, by increasing the Oral Argument Duration allocated to such Negotiating Party, or providing separate representation, to address such potential conflict of interest or diversity of interests, provided that any other Negotiating Party shall be free to make submissions as to the extent and scope of any additional representation rights; and provided, further that in the case of NNUK or the Monitor, their respective petitions to the Panel to represent up to three separate Interests shall not be opposed by any other Negotiating Party.**

**        *Section 3.4*** ~~*Section 3.2*~~ Nothing in the preceding section shall affect the right of the ~~Dispute Resolver~~**Panel** to call other meetings to discuss administrative matters after the ~~seven (7) Days following a matter being referred to the Dispute Resolver~~**initial Administrative Meeting.  Each such meeting shall constitute a separate Administrative Meeting for the purposes of this Protocol and must comply with the requirements set forth in Section 3.1 of this Protocol**.

**ARTICLE IV**
**WRITTEN ~~MATERIALS~~SUBMISSION BY THE NEGOTIATING PARTIES**

        Section 4.1        ~~The materials that may be submitted to the Dispute Resolver by~~**Each of the following Parties may submit a written statement, including, without limitation, Party-Appointed Expert Reports (as defined below) and written Witness Statements (as defined below), of such Party's one or more Interests (as permitted by the Panel pursuant to Section 3.3) with regards to the Allocation of the relevant Sale Proceeds to the Panel (such submission, the "First Round Submission"):**  NNL (on behalf of ~~any Selling Parties that are~~ Canadian ~~Debtors~~**Filed Sellers**), NNI (on behalf of ~~any Selling Parties that are US Debtors~~**US Filed Sellers**), NNUK (on behalf of ~~any Selling Parties that are~~ EMEA ~~Debtors~~**Filed Sellers**), the Affiliates' ~~FA~~**Representative** (on behalf of ~~any Selling Parties that are~~ Non-Filed ~~Affiliates~~**Selling Parties**), the Monitor, the Creditors' Committee and the Bondholders' Committee ~~(collectively, the "Filing Parties") shall be limited to the following (collectively, the "Written Materials):  a brief consisting of no more than [fifty (50)] single-sided, double-spaced pages in Times New Roman twelve-point font, with one inch margins (the "Brief"), and any exhibits in support of the Brief.~~

9

Section 4.2        Each of the Filing Parties in its ~~respective Brief~~**First Round Submission** shall present its ~~position~~**one or more Interests, as permitted by the Panel pursuant to Section 3.3** (the "Presented ~~Position~~**Positions**") on which, if any, of the following valuation methodologies should be applied, and how it should be applied, in allocating the Sale Proceeds ~~among the Selling Parties~~: **[**(i) asset-based valuation; (ii) revenue-based valuation; or (iii) transfer pricing methodology**]**[8]. The Presented ~~Position~~**Positions** may also address any allocation advanced by a Buyer in the Acquisition Agreement.  The Presented ~~Position~~**Positions** in the ~~Brief~~**First Round Submission** may also advocate for the application of a valuation methodology not listed in this Section 4.2 (and the fact that any such valuation methodology is not listed in this Section 4.2 shall not be construed as a presumption that such methodology is any less valid than those valuation methodologies listed herein).

Section 4.3        ~~The Written Materials shall not contain any expert witness affidavits or declarations.~~**A Party may rely on one or more experts as a means of evidence on specific issues (each such expert, a "Party-Appointed Expert"), and a report by such Party-Appointed Expert must contain a description of the qualifications of such expert, a statement of the facts on which such expert is basing its opinions and conclusions, and such expert's opinions and conclusions, including, without limitation, a description of the method, evidence and information used in arriving at the conclusions (each such report, a "Party-Appointed Expert Report").[9]**

**Section 4.4        A Negotiating Party may rely on a written statement by any person, including, without limitation, any Party's officer, employee or other representative (the Parties hereby acknowledge that certain individuals occupy multiple positions in the Company).  Such witness statement must contain a full and detailed description of the facts, and the source of the witness's information as to those facts, sufficient to serve as that witness's evidence in the matter in dispute (each such statement, a "Witness Statement").[10]**

**Section 4.5        Each of the Negotiating Parties shall provide a First Round Submission to the Panel, with a copy to all other Negotiating Parties, no later than the deadline established by the Panel for such submission (the "First Round Submission Deadline").  The First Round Submission of each Negotiating Party shall not be subject to any page limits.**

~~Section 4.4        Each of the Filing Parties shall~~**Section 4.6        Each Negotiating Party, in its sole discretion, may opt to** submit a ~~first~~**second** round of ~~Written Materials~~**written submissions** to the ~~Dispute Resolver~~**Panel**, with a copy to all other ~~Filing Parties, no more than~~

---

[8] **Consider whether listing of different valuation methodologies is necessary.**
[9] **Consider whether we should incorporate or copy provisions from Article 5 of IBA Rules of Evidence.  An alternative is to provide that the Panel may take guidance from the IBA Rules of Evidence but is not bound by such rules.**

[10] **Consider whether we should incorporate or copy provisions from Article 4 of IBA Rules of Evidence. Access to Company's employees as witnesses to be further discussed.**

10

~~thirty (30) Days after a matter is referred to the Dispute Resolver (the "~~**Negotiating Parties, no later than the deadline established by the Panel for such submission, which shall be at least ● calendar days after the** First Round Submission Deadline~~")~~**. (respectively, the "Second Round Submission" and the "Second Round Submission Deadline").  The Second Round Submission of each Negotiating Party shall not be subject to any page limits, provided that the sole purpose of a Second Round Submission shall be to respond to the First Round Submission of other Negotiating Parties[11].  For the purposes of this Protocol, the First Round Submission and the Second Round Submission and any other written submissions by any Negotiating Party to the Panel shall be collectively referred to as the "Written Submissions."**

*Section* ~~*4.5*      Each of the Filing Parties shall submit a second round of Written Materials to the Dispute Resolver, with a copy to all other Filing Parties, no more than thirty (30) Days after the First Round Submission Deadline (the "Second Round Submission Deadline")~~ *4.7*      **If a Negotiating Party or its representative fails to (a) attend or participate in any Administrative Hearing or Evidentiary Hearing (as defined below), (b) make the Written Submissions within the time established by the Panel without showing sufficient cause for such failure, as determined by the Panel, or (c) attend or present its Oral Argument, the Panel may nevertheless proceed with the resolution of the Dispute and determine the Allocation to the relevant Selling Parties.**

## ARTICLE V
## ACCESS TO INFORMATION

*Section 5.1*      Commencing as early as the start of the negotiations for the Sale of a **particular** Business but in any event no later than the date of ~~entering~~**entry** into the Acquisition Agreement, each of the ~~Filing~~**Negotiating** Parties shall have equal access to the Data Room~~, in the same manner as was provided to the Buyer~~ **until the conclusion of all Disputes in respect of such Sale**.

*Section 5.2*      Each of the ~~Filing~~**Negotiating** Parties may following the ~~execution~~**entry** of the Acquisition Agreement, send a written request to the Company, with a copy to all other ~~Filing~~**Negotiating** Parties, for access to information concerning the Company not contained in the Data Room **that may be reasonably relevant to the Disputes in respect of the Sale of the Particular Business**.  Subject to Section 5.3, the Company shall undertake commercially reasonable efforts to make such information available (to the extent such information exists or is readily obtainable) to each of the ~~Filing~~**Negotiating** Parties as soon as reasonably practicable.

*Section 5.3*      Each of the ~~Filing~~**Negotiating** Parties may, within ~~five~~**●** (~~5~~**●**) ~~Days~~**calendar days** of the First Round Submission Deadline, send a written request to the Company, with a copy to all other ~~Filing~~**Negotiating** Parties, for access to information concerning the Company not contained in the Data Room **that may be reasonably relevant to the Disputes in respect of the Sale of the particular Business** and not otherwise previously made available to the ~~Filing~~**Negotiating** Parties by the Company.  The Company shall undertake

---

[11] **TBD: Whether Second Round Submission may include Experts Reports and Witness Statements.**

11

commercially reasonable efforts to make such information available (to the extent such information exists or is readily obtainable) to each of the ~~Filing~~**Negotiating** Parties as soon as reasonable practicable after receiving such request.

Section 5.4    The ~~Dispute Resolver~~**Panel** may, within ~~ten (10) Days~~**● (●) calendar days** of the Second Round Submission Deadline, send a written request to the Company, with a copy to each of the ~~Filing~~**Negotiating** Parties, for access to information concerning the Company not contained in the Written ~~Materials~~**Submission that may be reasonably relevant to the Disputes in respect of the Sale of the Particular Business**.  The Company shall undertake commercially reasonable efforts to make such information available (to the extent such information exists or is readily obtainable) to the ~~Dispute Resolver~~**Panel** and each of the ~~Filing~~**Negotiating** Parties as soon as reasonably practicable after receiving such request.

# ARTICLE VI
# **EVIDENTIARY HEARING;** ORAL ARGUMENT

**Section 6.1**    **Upon expiration of the deadline to make Second Round Submissions, any Negotiating Party may request the Panel to schedule a hearing at which the Panel shall receive oral evidence (such hearing, whether or not held on consecutive days, an "Evidentiary Hearing").[12]**

**Section 6.2**    **Evidence from proceedings held in connection with the resolution of another Dispute under this Protocol, including without limitation, evidence from a prior Evidentiary Hearing, Administrative Meeting, Written Submission, Witness Statement, and Expert Report (as defined below) for a given Sale ("Prior Evidence") shall be admissible in the Evidentiary Hearings for subsequent Sales, unless on motion by any Negotiating Party, the Panel decides that the Prior Evidence shall not be admitted or otherwise limits the admissibility of the Prior Evidence, provided that each Negotiating Party shall have the right to further re-direct and cross-examine such Prior Evidence.[13]**

**Section 6.3**    ~~Section 6.1~~ The ~~Dispute Resolver~~**Panel** shall hold ~~a proceeding~~**one or more proceedings** where each of the ~~Filing~~**Negotiating** Parties may orally present argument in favor of their Presented ~~Position~~**Positions** (the "Oral Argument").

**Section 6.4**    ~~Section 6.2~~ Oral Argument shall be held at a time and place specified by the ~~Dispute Resolver~~**Panel**, but in no event before ~~thirty (30) Days~~**● (●) calendar days** or after ~~sixty (60) Days~~**● (●) calendar days** of the Second Round Submission Deadline.  Oral Argument shall be held in person or by videoconference, as decided by the ~~Dispute Resolver~~**Panel**.

~~Section 6.3            No Filing Party shall be permitted to present expert witness testimony during the Oral Argument.~~

---

**[12]** **Consider whether we should incorporate or copy provisions from Articles 8 and 9 of IBA Rules of Evidence.**

**[13]** **TBD: What happens if such Prior Evidence cannot be further cross-examined (e.g., death of a prior witness)?**

[New York #2068820 v~~1~~**3**]

**ARTICLE VII**
**THE DECISION OF THE ~~DISPUTE RESOLVER~~PANEL**

*Section 7.1*      The ~~Dispute Resolver~~**Panel** shall render a written decision (the "Decision") within ~~sixty (60) Days~~● (●) **calendar days** of the **last** Oral Argument.  **Each Decision, Supplementary Decision (as defined below) and all other decisions of the Panel shall be made by at least majority of the members of the Panel.**

*Section 7.2*     The Decision shall contain:  (a) the percentage**, if any, (rounded to [four] decimal points)** of the Sale Proceeds **of a given Sale** to be allocated to ~~each of~~the **Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers and the Non-Filed** Selling Parties (the "Allocation"); and (b) instructions to the Escrow Agent to distribute the Sale Proceeds to ~~the~~**NNL (on behalf of the Canadian Filed Sellers), NNI (on behalf of the US Filed Sellers), NNUK (on behalf of the EMEA Filed Sellers) and to the Non-Filed** Selling Parties in accordance with the Allocation. ~~The Decision shall not contain the reasoning behind the Allocation.~~[14]  **Upon the written request of NNL, NNUK, NNI or Affiliates' Representative, as the case may be, the Panel shall issue a supplementary decision upon the issuance of the Decision containing the percentage if any, (rounded to [four] decimal points) of the Sale Proceeds of such Sale to be allocated to each of the Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers or the Non-Filed Selling Parties, respectively (each such supplementary decision, a "Supplementary Decision").**

**Section 7.3      The Decision and each Supplementary Decision shall be made in writing and [shall be signed by ● members of the Panel, provided that where not all three members of the Panel have signed the Decision, no reason for the missing signature shall be stated].  The Decision and each Supplementary Decision, in the sole discretion of the Panel, may state the reasons upon which it is based, provided that the Decision and each Supplementary Decision shall not include any dissenting reasons.  [For the avoidance of doubt, other than Supplementary Decisions, no member of the Panel shall issue any separate or dissenting decisions, opinions or explanations.]**

**Section 7.4**      ~~Section 7.3~~In rendering the Decision and the Allocation contained ~~therein~~**in such Decision**, the ~~Dispute Resolver~~**Panel** shall not be bound to select one of the Presented Positions.

**Section 7.5**      ~~Section 7.4~~The ~~Dispute Resolver~~**Panel** shall render the Decision and the Allocation contained in such Decision on the basis of his or her [reasoned expert judgment] and **shall** not ~~on the basis~~**be bound by the rules, provisions or administrative practices** of any **particular** national, ~~federal, state or provincial law~~**provincial, state or other law or legal system or government agency or the standards of any particular organization or association (each such rule, provision or administrative practice, an "Allocation Rule"), provided that the Panel may, in its sole discretion, base the Decision, the Allocation or each Supplementary Decision or any element thereof upon one or more Allocation Rules.**

---

[14] **How will the aggregate distributions to each estate be held?  This question is even more complicated for the case of Non-Filed Selling Parties.**

13

**Section 7.6**        ~~Section 7.5~~ If the Negotiating Parties agree at any point in time prior to the relevant Decision as to the Allocation of any portion of the relevant Sale Proceeds, then the ~~Dispute Resolver~~**Panel** shall render a **Decision or a Supplementary** Decision only with respect to the allocation of the remaining portion of the Sale Proceeds.

**Section 7.7**        **Although the Panel may, upon consultation with the Negotiating Parties, appoint one or more experts to report to the Panel on specific issues designated by the Panel (each such expert, a "Panel-Appointed Expert" and together with Party-Appointed Expert, an "Expert"), the Panel and the Parties shall seek to minimize the use of such Panel-Appointed Experts. The Panel shall establish, upon consultation with the Negotiating Parties, the terms of reference for any Panel-Appointed Expert. Each Panel-Appointed Expert shall report in writing to the Panel, and such report must describe the expert's qualification, the method, evidence and information used in arriving at the conclusions ("Panel-Appointed Expert Report", and together with Party-Appointed Expert Report, an "Expert Report"). A copy of the final terms of reference and the written report of a Panel-Appointed Expert shall be sent by the Panel to the Parties.[15]**

**Section 7.8**        ~~Section 7.6~~ The Decision **and the Supplementary Decisions** of the ~~Dispute Resolver~~**Panel** shall be conclusive, final and binding upon each of the Negotiating Parties and may not be challenged ~~or~~**,** appealed **or sought to be vacated.**

**Section 7.9**        ~~Section 7.7~~ [The Decision of the ~~Dispute Resolver~~**Panel** shall not be deemed an arbitral award enforceable under the United **States Federal Arbitration Act or the United** Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards.] **[TBD]**

**Section 7.10**       ~~Section 7.8~~ The Sale Proceeds shall be allocated in accordance with the Allocation **and the relevant escrow agreement** by the Escrow Agent after the Decision is rendered without the need for an order from any of the Courts.

## ARTICLE VIII
## CONFIDENTIALITY

Section 8.1        Except as may be required by applicable law or court order or by an authority having appropriate jurisdiction, each Party agrees (i) to maintain confidentiality as to all aspects of these procedures, including, without limitation, the presentation of any issue to the ~~Dispute Resolver~~**Panel**, any discussions, deliberations, proceedings or results of the dispute resolution procedure set forth in this Protocol, any Written Materials or Oral Arguments, or any Decisions produced by these proceedings (the "Confidential Material") and (ii) not to use any Confidential Material for its own benefit or the benefit of any of its affiliates, it being understood that the ~~Company~~**Parties** may disclose the existence and nature of this Protocol and the dispute resolution procedure conducted hereunder as may be necessary to (x) satisfy ~~the~~**any** Condition **(as defined below)** or (y) comply with the applicable laws, including, without limitation, the U.S.  federal or state or Canadian federal or provincial securities laws.

---

[15] **Consider whether we should incorporate or copy provisions from Article 6 of IBA Rules of Evidence.**

14

*Section 8.2* In the event that a Party is served with or otherwise subject to legal process (including subpoena or discovery notice) requiring it to testify about, to produce, or otherwise to divulge Confidential Material, to the extent permitted by law such entity subject to such process will as soon as practicable inform the provider(s) of such Confidential Material so that the provider may seek a protective order or other remedy. In the event that such protective order or other remedy has not been obtained and such entity is advised, in the opinion of counsel, that it is legally compelled to disclose any of the Confidential Material, such entity may disclose only such Confidential Material so advised to be disclosed.

*Section 8.3* The Parties further agree **that prior** to ~~obtain the Dispute Resolver's agreement~~**the appointment of any individual to the Panel, such proposed member of the Panel shall agree** to preserve the confidentiality of the dispute resolution procedure conducted under this Protocol.

*Section 8.4* Nothing herein shall prevent any Party from disclosing information regarding the dispute resolution procedure conducted under this Protocol for purposes of proceedings to resolve any disputes arising from, relating to or in connection with the enforcement or implementation of this Protocol.

~~*Section 8.5* Nothing herein shall prevent any of the EMEA Debtors from disclosing to any Nortel Group creditor or group thereof, where a legally binding confidentiality agreement, satisfactory to all of the other Debtors, has been agreed with such party or parties, (x) Confidential Material or (y) the existence and substance of this Protocol. **[NTD: To be discussed]**~~

## ARTICLE IX
## MISCELLANEOUS

**_Section 9.1_** **In all matters not expressly provided for in this Protocol, the Panel and the Parties shall act in the spirit of this Protocol and shall make every reasonable effort to ensure that any Allocation pursuant to this Protocol will be legally enforceable.**

**_Section 9.2_** ~~*Section 9.1*~~ While a matter is before the Dispute Resolver, ~~there~~**There** shall be no communications between **any member of** the ~~Dispute Resolver~~**Panel** and a Party unless all other Parties are given the opportunity to be present during such communication. For the avoidance of doubt, written communication (whether transmitted by email, facsimile or post) between **any member of** the ~~Dispute Resolver~~**Panel** and a Party must also be transmitted contemporaneously to all other Parties.

**_Section 9.3_** ~~*Section 9.2*~~ All notices, requests, instructions, directions and other communications provided for herein shall be ~~given~~made in writing (including by facsimile) delivered to the intended recipient as follows:

15

**If to the US Debtors:**
c/o Nortel Networks Inc.
Attention: ~~Gordon A. Davies~~**Anna Ventresca**,
Esq.
       Chief Legal Officer
Address: 2221 Lakeside Boulevard
       Richardson, Texas 75082
       U.S.A.
Facsimile No.: +1 905 863 ~~8386~~**2075**
Telephone No.: +1 905 863 ~~7000~~**1204**

**With a copy to:**
Cleary Gottlieb Steen & Hamilton LLP
Attention: James L.  Bromley, Esq.
Address: One Liberty Plaza
       New York, New York 10006
       U.S.A.
Facsimile No.: +1 212 225 3999
Telephone No.: +1 212 225 2163

**If to the Canadian Debtors:**
c/o Nortel Networks Limited
Attention: ~~Gordon A. Davies~~**Anna Ventresca**,
       Esq.
       Chief Legal Officer
Address: 195 The West Mall
       Toronto, Ontario M9C 5K1
       Canada
Facsimile No.: +1 905 863 ~~8386~~**2075**
Telephone No.: +1 905 863 ~~1144~~**1204**

**With a copy to:**
Ogilvy Renault LLP
Attention: Derrick Tay**, Esq.  and Michael J.
Lang**, Esq.
Address: Suite 3800
       Royal Bank Plaza, South Tower
       200 Bay Street, P.O.  Box 84
       Toronto, Ontario M5J 2Z4
       Canada
Facsimile No.: +1 416 216 **4832 / 216 **3930
Telephone No.: +1 416 216 3939

**If to the EMEA Debtors:**
c/o Ernst & Young LLP
Attention: Alan Bloom
Address: One More London Place
       London SE1 2AF
       United Kingdom
Facsimile No.: +44 (0) 20 7951 1345
Telephone No.: +44 (0) 20 7951 9898

**With a copy to:**
Herbert Smith LLP
Attention: Stephen Gale, Esq.
Address: Exchange House
       Primrose Street
       London EC2A 2HS
       United Kingdom
Facsimile No.: +44 (0) 20 7098 4878
Telephone No.: +44 (0) 20 7466 2878

**If to the Monitor:**
c/o Ernst & Young, Inc.
Attention: Murray A.  McDonald
Address: Ernst & Young Tower
       222 Bay Street, P.O.  Box 251
       Toronto, ON M5K 1J7
       Canada
Facsimile No.:  +1 416 943 3300
Telephone No.: +1 416 943 3016

**With a copy to:**
Goodmans LLP
Attention: Jay Carfagnini, Esq.
Address: 250 Yonge Street, Suite 2400
       Toronto, Ontario M5B 2M6
       Canada
Facsimile No.: +1 416 979 1234
Telephone No.: +1 416 597 4107

**If to the Creditors' Committee:**
c/o Akin Gump Strauss Hauer & Feld LLP
Attention: Fred S.  Hodara, Esq.

**If to the Bondholders' Committee:**
c/o Milbank, Tweed, Hadley & McCloy LLP
Attention: Albert A.  Pisa, Esq.

16

[New York #2068820 v~1~**3**]

Address: One Bryant Park                           Address: One Chase Manhattan Plaza
     New York, New York 10036                        New York, New York 10005-1413
     U.S.A.                                            U.S.A.
Facsimile No.: +1 212 872 1002                    Facsimile No.: +1 212 530 5219
Telephone No.: +1 212 872 8040                    Telephone No.: +1 212 530 5319

     All notices, requests, instructions, directions and other communications to be sent under this Protocol to the Non-Filed Affiliates shall be made in writing (including by facsimile) and delivered to the contact addresses or facsimile numbers set forth in <u>Schedule 4</u> hereto.

     ***Section 9.4***     ~~*Section 9.3*~~ This Protocol shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction~~:~~**,** provided~~*, however,*~~ that Section ~~9.4~~**9.7** shall be governed exclusively by English law.

     ***Section 9.5***     **[**To the fullest extent permitted by applicable law, each Party (i) agrees to submit to the non-exclusive jurisdiction of the US **Court** and **the** Canadian ~~Courts~~**Court** (in a joint hearing conducted under the cross-border Protocol adopted by such ~~Courts~~**courts**, as it may be in effect from time to time (the "<u>Cross-Border Protocol</u>")), for purposes of all legal proceedings to the extent relating to the matters agreed in this Protocol, (ii) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever to the extent relating to the matters agreed in this Protocol must be commenced in the US Court if such claim, action or proceeding would solely affect the US Debtors, the Canadian Court if such claim, action or proceeding would solely affect the Canadian Debtors, a joint hearing of both the Canadian **Court** and **the** US ~~Courts~~**Court** conducted under the Cross-Border Protocol if such claim, action or proceeding would affect the Canadian Debtors and the US~~Debtors or the EMEA~~ Debtors and the English courts if such claim, action or proceeding would solely affect the EMEA Debtors, (iii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such action brought in such a Court or any claim that any such action brought in such a Court has been brought in an inconvenient forum, (iv) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by law shall be valid and sufficient service thereof, and (v) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law~~:~~**,** provided~~*, however,*~~ that any claim, action or proceeding set forth in Section ~~9.4~~**9.7** of this Protocol shall be brought exclusively in the English courts.  **[designation of process agent to be considered]**

     ***Section 9.6***     **No provision of this Protocol (other than as set forth in Sections [9.3, 9.4, 9.5, 9.6, 9.7, 9.10, 9.11, 9.15, 9.17 and 9.18] of this Protocol) shall be effective until the satisfaction of the following conditions:  (A) each of the US Court and the Canadian Court approving the entirety of this Protocol and all of the provisions hereof (the "North American Court Condition") and (B) the UK Court giving a direction (the "UK Court's Directions") that, if so sought, the Joint Administrators are at liberty to enter into this Protocol (the "UK Court Condition" and, together with the North American Court Condition, the "Conditions"), provided that the Joint Administrators may at their election waive the UK Court Condition.**

<div align="center">17</div>

**Section 9.7** ~~Section 9.4~~ The Parties agree that the Joint Administrators have negotiated and are entering into this Protocol as agents for the EMEA Debtors to which they are appointed and that none of the Joint Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Nortel Group company to observe, perform or comply with any of its obligations under this Protocol or under or in relation to any associated arrangements or negotiations.  The Joint Administrators are a Party to this Protocol: (i) as agents of certain of the respective EMEA Debtors of which they are administrators; and (ii) in their own capacities solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the United Kingdom Insolvency Act 1986 and enforcing the obligations of certain other Parties to this Protocol.  Notwithstanding anything **to the contrary** in ~~Section 9.3,~~**this Protocol,** any claim, action or proceeding against the Joint Administrators in their personal capacities (and not as agents for any EMEA Debtors) under this Protocol shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English Courts.

**Section 9.8** ~~Section 9.5~~ This Protocol is not intended to, and shall not, create rights in any person or entity not a ~~party~~**Party** hereto.

**Section 9.9** ~~Section 9.6~~ Without prejudice to the provisions of ~~Section 9.7~~**Sections 9.10 and 9.20** below, other parties may be added to this Protocol only with the prior unanimous written consent of all Parties hereto, which consent shall not unreasonably be withheld.

**Section 9.10** ~~Section 9.7~~ [The Parties agree that, if within fourteen days of the date hereof, NNSA so requests in writing, they shall each enter into an accession agreement with NNSA whereby NNSA shall accede to this Protocol as if a party to this Protocol from the date hereof (the "<u>NNSA Accession</u>"); <u>provided</u>, further~~,~~ that if NNSA Accession does not take place, in the allocation of any Sale Proceeds to the EMEA Debtors pursuant to this Protocol, the amount allocated to NNSA in the Acquisition Agreement as purchase price consideration shall be deemed to be NNSA's allocation and shall be deducted from any allocation otherwise to be made to the EMEA Debtors.**] [TBD]**

**Section 9.11** ~~Section 9.8~~ This Protocol may be executed in separate counterparts (which may include counterparts delivered by facsimile transmission) and all of said counterparts taken together shall be deemed to be an original and shall be binding on the party who signed the counterpart and all of which together shall constitute a single agreement.

**Section 9.12** ~~Section 9.9~~ This Protocol constitutes the complete agreement among the Parties with respect to the subject matter herein, and supersedes all other agreements among the Parties with respect to the subject matter herein.  This Protocol may be amended, on no less than 10 Business Days' notice, only by means of a writing signed by all the remaining Parties to this Protocol, which amendments, if material in the judgment of the Parties, must be approved by each of the Canadian Court and the US Court.

**Section 9.13** ~~Section 9.10~~ This Protocol does not affect the confidentiality of any information exchanged between or among any of the Parties pursuant to any prior agreements or understandings.

18

***Section 9.14***   ~~*Section 9.11*~~ This Protocol shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns from the date of its execution, but is expressly subject to and contingent upon its approval and entry by the US and Canadian Courts.

***Section 9.15***   ~~*Section 9.12*  No provision of this Protocol shall be effective until each of the US Court and the Canadian Court has approved this Protocol and all of the provisions hereof (the "Condition").~~ Each Party to this Protocol shall (a) use commercially reasonable efforts to satisfy the ~~Condition~~**Conditions** as soon as possible, taking into account the availability of the respective Courts to address the matters set forth in this Protocol; (b) keep all other Parties reasonably apprised of the progress of the satisfaction of the ~~Condition~~**Conditions** and provide such other information regarding the satisfaction of the ~~Condition~~**Conditions** as reasonably requested by other Parties; and (c) use commercially reasonable efforts to allow any other Party, which so requests in writing reasonable participation in connection with any proceedings in any Court related to the satisfaction of the ~~Condition~~**Conditions**.

***Section 9.16***   ~~*Section 9.13*~~ Subject to satisfaction of the ~~Condition~~**Conditions**, each Party (but, for the avoidance of doubt, not the Joint Administrators in their personal capacities) hereby severally represents and warrants to each other that, as of the date hereof: (a) it has the power and authority to enter into this Protocol and to carry out its obligations hereunder; (b) the execution of this Protocol, and the consummation of the transactions contemplated herein, have been authorized by all necessary approvals, and no other act or proceeding on its part is necessary to authorize the execution of this Protocol; and (c) this Protocol has been duly executed by it and constitutes its legal, valid and binding obligations.

***Section 9.17***   ~~*Section 9.14*~~ In the event that any provision of this Protocol shall be illegal, invalid or unenforceable, such provision shall be construed by limiting it in such a way so as to render it legal, valid and enforceable to the maximum extent provided by applicable law, and the legality, validity and enforceability of the remaining provisions shall not in any way be affected or impaired by any illegality, invalidity or unenforceability of any provision.  The Parties shall negotiate in good faith with respect to any provision to this Protocol found to be illegal, invalid or unenforceable, in order to agree on a substitute provision giving effect, to the maximum extent possible, to the original intent of such provision.

***Section 9.18***   ~~*Section 9.15*~~ Except as specifically set forth in this Protocol, the obligations of each Party hereunder are several, and not joint and several.

***Section 9.19***   ~~*Section 9.16*~~ If any of the Parties, the Mediator, **Experts,** the Affiliates' ~~FA~~**Representative** or the ~~Dispute Resolver~~**Panel** shall have an obligation or deadline imposed pursuant to this Protocol that shall fall on any of a Saturday, Sunday or a national public holiday in any of the United States, Canada or the United Kingdom, such Party shall have until the next Business Day immediately following such day to comply with such deadline or obligation.

***Section 9.20***   **[The Parties agree that, if after the date hereof, any subsidiary of the US Debtor commences chapter 11 proceedings in the US Court, then the Parties and such entity shall enter into an accession agreement whereby such entity shall accede to this Protocol as a US Debtor.] [To cover potential NGS and Diamondware filings]**

19

**_Section 9.21_**        **The Non-Filed Affiliates hereby grant the Affiliates' Representative the authority to represent each Non-Filed Affiliate in all matters relating to this Protocol, including, without limitation, the power (a) to agree to any Minimum Allocation Amount on behalf of the Non-Filed Affiliates, (b) to agree to a fair and equitable allocation of the Sale Proceeds pursuant to Section 1.1, (c) to amend or waive any provision of this Protocol, (d) to deliver and receive any notices permitted or required under this Protocol, and (e) to perform on behalf of the Non-Filed Affiliates any other act which the Affiliates' Representative deems necessary or desirable in the performance of the Affiliates' Representative's role under this Protocol.  Any action taken by the Affiliates' Representative and any agreement or settlement entered into by the Affiliates' Representative on behalf of the Non-Filed Affiliates in connection with the performance of this Protocol shall be binding upon and enforceable against the Non-Filed Affiliates without any need for further ratification by the Non-Filed Affiliates.**

[New York #2068820 v13]

IN WITNESS WHEREOF, the Parties hereto have caused this Protocol to be duly executed and delivered as of this [●]th day of ~~June~~[●], 2009.

NORTEL NETWORKS CORPORATION

By  _____
     Name:
     Title:

NORTEL NETWORKS LIMITED

By  _____
     Name:
     Title:

NORTEL NETWORKS GLOBAL CORPORATION

By  _____
     Name:
     Title:

NORTEL NETWORKS INTERNATIONAL CORPORATION

By  _____
     Name:
     Title:

NORTEL NETWORKS TECHNOLOGY CORPORATION

By  _____
     Name:
     Title:

**Signature page to Protocol**

NORTEL NETWORKS INC.


By  _____
    Name:
    Title:


ARCHITEL SYSTEMS (U.S.)
CORPORATION


By  _____
    Name:
    Title:


CORETEK, INC.


By  _____
    Name:
    Title:


NORTEL ALTSYSTEMS, INC.


By  _____
    Name:
    Title:


NORTEL ALTSYSTEMS
INTERNATIONAL INC.


By  _____
    Name:
    Title:


NORTEL NETWORKS APPLICATIONS
MANAGEMENT SOLUTIONS INC.


By  _____
    Name:
    Title:


**Signature page to Protocol**

NORTEL NETWORKS CABLE
SOLUTIONS INC.


By _____
    Name:
    Title:


NORTEL NETWORKS CAPITAL
CORPORATION


By _____
    Name:
    Title:


NORTEL NETWORKS HPOCS INC.


By _____
    Name:
    Title:


NORTEL NETWORKS
INTERNATIONAL INC.


By _____
    Name:
    Title:


NORTEL NETWORKS OPTICAL
COMPONENTS INC.


By _____
    Name:
    Title:


**Signature page to Protocol**

NORTHERN TELECOM
INTERNATIONAL INC.


By  _____
    Name:
    Title:


QTERA CORPORATION


By  _____
    Name:
    Title:


SONOMA SYSTEMS


By  _____
    Name:
    Title:


XROS, INC.


By  _____
    Name:
    Title:


**NORTEL NETWORKS (CALA) INC.**


**By _____
    Name:
    Title:**


**Signature page to Protocol**

Signed by ALAN BLOOM on behalf of each of the Joint Administrators of each of the EMEA Debtors over which they have been appointed, without personal liability as provided in Section 9.4 of this Protocol and solely for the purpose of obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to each of the Joint Administrators

By  _____

    Name:
    Title:

in the presence of:

Witness Signature

_____

    Name:
    Address:


**SIGNED** for and on behalf of **NORTEL**      )
**NETWORK UK LIMITED (IN**               )          **ALAN BLOOM**
**ADMINISTRATION)**                       )
by **ALAN BLOOM** as Joint Administrator  )
(acting as agent and without personal      )
liability) in the presence of:             )


Witness signature:


Name:
Address:

| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL** | ) | |
| **NETWORKS (IRELAND) LIMITED** | ) | **ALAN BLOOM** |
| **(IN ADMINISTRATION)** | ) | |
| by **ALAN BLOOM** as Joint Administrator | ) | |
| (acting as agent and without personal | ) | |
| liability) in the presence of: | ) | |

Witness signature:


Name:
Address:


| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL** | ) | |
| **NETWORKS NV (IN** | ) | **ALAN BLOOM** |
| **ADMINISTRATION)** | ) | |
| by **ALAN BLOOM** as Joint Administrator | ) | |
| (acting as agent and without personal | ) | |
| liability) in the presence of: | ) | |

Witness signature:


Name:
Address:


| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL** | ) | |
| **NETWORKS SPA (IN** | ) | **ALAN BLOOM** |
| **ADMINISTRATION)** | ) | |
| by **ALAN BLOOM** as Joint Administrator | ) | |
| (acting as agent and without personal | ) | |
| liability) in the presence of: | ) | |

Witness signature:


Name:
Address:


**Signature page to Protocol**

[New York #2068820 v~~1~~**3**]

**SIGNED** for and on behalf of **NORTEL**    )
**NETWORKS BV (IN**    )    **ALAN BLOOM**
**ADMINISTRATION)**    )
by **ALAN BLOOM** as Joint Administrator    )
(acting as agent and without personal    )
liability) in the presence of:    )

Witness signature:

Name:
Address:

**SIGNED** for and on behalf of **NORTEL**    )
**NETWORKS POLSKA SP Z.O.O. (IN**    )    **ALAN BLOOM**
**ADMINISTRATION)**    )
by **ALAN BLOOM** as Joint Administrator    )
(acting as agent and without personal    )
liability) in the presence of:    )

Witness signature:

Name:
Address:

**SIGNED** for and on behalf of **NORTEL**    )
**NETWORKS HISPANIA SA (IN**    )    **ALAN BLOOM**
**ADMINISTRATION)**    )
by **ALAN BLOOM** as Joint Administrator    )
(acting as agent and without personal    )
liability) in the presence of:    )

Witness signature:

Name:
Address:

**Signature page to Protocol**

| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL** | ) | |
| **NETWORKS (AUSTRIA) GMBH (IN** | ) | **ALAN BLOOM** |
| **ADMINISTRATION)** | ) | |
| by **ALAN BLOOM** as Joint Administrator | ) | |
| (acting as agent and without personal | ) | |
| liability) in the presence of: | ) | |

Witness signature:

Name:
Address:

| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL** | ) | |
| **NETWORKS SRO (IN** | ) | **ALAN BLOOM** |
| **ADMINISTRATION)** | ) | |
| by **ALAN BLOOM** as Joint Administrator | ) | |
| (acting as agent and without personal | ) | |
| liability) in the presence of: | ) | |

Witness signature:

Name:
Address:

| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL** | ) | |
| **NETWORKS ENGINEERING** | ) | |
| **SERVICES KFT (IN** | ) | **ALAN BLOOM** |
| **ADMINISTRATION)** | ) | |
| by **ALAN BLOOM** as Joint Administrator | ) | |
| (acting as agent and without personal | ) | |
| liability) in the presence of: | ) | |

Witness signature:

Name:
Address:

**Signature page to Protocol**

[New York #2068820 v~~1~~3]

| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL NETWORKS PORTUGAL SA (IN ADMINISTRATION)** by **ALAN BLOOM** as Joint Administrator (acting as agent and without personal liability) in the presence of: | ) ) ) ) ) ) | **ALAN BLOOM** |

Witness signature:


Name:
Address:


| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL NETWORKS SLOVENSKO SRO (IN ADMINISTRATION)** by **ALAN BLOOM** as Joint Administrator (acting as agent and without personal liability) in the presence of: | ) ) ) ) ) ) | **ALAN BLOOM** |

Witness signature:


Name:
Address:


| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL NETWORKS ROMANIA SRL (IN ADMINISTRATION)** by **ALAN BLOOM** as Joint Administrator (acting as agent and without personal liability) in the presence of: | ) ) ) ) ) ) | **ALAN BLOOM** |

Witness signature:


Name:
Address:


**Signature page to Protocol**

SIGNED for and on behalf of **NORTEL**          )
**GMBH (IN ADMINISTRATION)**                  )          **ALAN BLOOM**
by **ALAN BLOOM** as Joint Administrator  )
(acting as agent and without personal          )
liability) in the presence of:                         )

Witness signature:


Name:
Address:


SIGNED for and on behalf of **NORTEL**          )
**NETWORKS OY (IN**                                )          **ALAN BLOOM**
**ADMINISTRATION)**                                )
by **ALAN BLOOM** as Joint Administrator  )
(acting as agent and without personal          )
liability) in the presence of:                         )

Witness signature:


Name:
Address:


SIGNED for and on behalf of **NORTEL**          )
**NETWORKS AB (IN**                                )          **ALAN BLOOM**
**ADMINISTRATION)**                                )
by **ALAN BLOOM** as Joint Administrator  )
(acting as agent and without personal          )
liability) in the presence of:                         )

Witness signature:


Name:
Address:


**Signature page to Protocol**

| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL** | ) | |
| **NETWORKS INTERNATIONAL** | ) | **ALAN BLOOM** |
| **FINANCE AND HOLDING BV (IN** | ) | |
| **ADMINISTRATION)** | ) | |
| by **ALAN BLOOM** as Joint Administrator | ) | |
| (acting as agent and without personal | ) | |
| liability) in the presence of: | ) | |

Witness signature:


Name:
Address:


| | | | |
|---|---|---|---|
| **SIGNED** for and on behalf of **NORTEL** | ) | | |
| **NETWORKS FRANCE S.A.S.  (IN** | ) | ) | **ALAN BLOOM** |
| **ADMINISTRATION)** | ) | | |
| by **ALAN BLOOM** as Joint Administrator | ) | | |
| (acting as agent and without personal | ) | | |
| liability) in the presence of: | ) | | |

Witness signature:


Name:
Address:


**Signature page to Protocol**

**[NOTE: Additional signature blocks to be added for the Monitor, the Creditors' Committee, the Bondholders' Committee, and the Non-Filed Affiliates]**

**SCHEDULE 1**

**Canadian Debtors**

Nortel Networks Corporation

Nortel Networks Limited

Nortel Networks Global Corporation

Nortel Networks International Corporation

Nortel Networks Technology Corporation

[New York #2068820 v1**3**]

**SCHEDULE 2**

**US Debtors**

Nortel Networks Inc.

Architel Systems (U.S.) Corporation

CoreTek, Inc.

Nortel Altsystems, Inc.  (previously "Alteon WebSystems, Inc.")

Nortel Altsystems International Inc.  (previously "Alteon WebSystems International, Inc.")

Nortel Networks Applications Management Solutions Inc.

Nortel Networks Cable Solutions Inc.

Nortel Networks Capital Corporation

Nortel Networks HPOCS Inc.

Nortel Networks International Inc.

Nortel Networks Optical Components Inc.

Northern Telecom International Inc.

Qtera Corporation

Sonoma Systems

Xros, Inc.

**Nortel Networks (Cala), Inc.**

## SCHEDULE 3
### EMEA Debtors

Nortel Networks UK Limited (In Administration)

Nortel Networks (Ireland) Limited (In Administration)

Nortel Networks NV (In Administration)

Nortel Networks SpA (In Administration)

Nortel Networks BV (In Administration)

Nortel Networks Polska Sp z.o.o.  (In Administration)

Nortel Networks Hispania, SA (In Administration)

Nortel Networks (Austria) GmbH (In Administration)

Nortel Networks sro (In Administration)

Nortel Networks Engineering Services Kft (In Administration)

Nortel Networks Portugal SA (In Administration)

Nortel Networks Slovensko, sro (In Administration)

Nortel Networks Romania Srl (In Administration)

Nortel GmbH (In Administration)

Nortel Networks Oy (In Administration)

Nortel Networks AB (In Administration)

Nortel Networks International Finance & Holding BV (In Administration)

Nortel Networks France S.A.S.  (In Administration)

[New York #2068820 v13]

**SCHEDULE 4**

**Names of Non-Filed Affiliates**

**and Notice Information**

**EXHIBIT A**

[*Note to draft*:  Insert list of agreed-upon replacement ~~Dispute Resolvers~~**Panel**.]

[New York #2068820 v~~1~~**3**]

**EXHIBIT B**

[***Note to draft*:  Insert list of respective Selling Parties for each Negotiating Party**]

## Mendoza, Richard

| | |
|---|---|
| **From:** | Sanjeet Malik [smalik@cgsh.com] |
| **Sent:** | 20 October 2009 06:34 |
| **To:** | 'aleblanc@milbank.com'; Alex MacFarlane; 'annav@nortel.com'; 'apisa@milbank.com'; Qureshi, Abid; Kahn, Brad; 'Brent.R.Beekenkamp@ca.ey.com'; 'bzarnett@goodmans.ca'; Craig B BROD; Botter, David; 'dtay@ogilvyrenault.com'; Dina Zloczower; Hodara, Fred; DAVIES, GAVIN; Giles Boothman; Howard ZELBO; Inna Rozenberg; Jose M Bazan; James L BROMLEY; 'jcarfagnini@goodmans.ca'; Segger, Joanne; Whiteoak, John; 'jpasquariello@goodmans.ca'; 'jstam@ogilvyrenault.com'; LLOYD, KEVIN; Rowe, Kevin; 'Matthew.Hart@lazard.com'; Michael Wunder; 'mlang@ogilvyrenault.com'; 'Murray.A.McDonald@ca.ey.com'; 'Nortel'; 'Orzyr@bennettjones.com'; Bagon, Paul; 'plook@nortel.com'; Jacobs, Ryan; Pees, Robert; 'SDrymer@ogilvyrenault.com'; Shayne Kukulowicz; GALE, STEPHEN; tkreller@milbank.com; 'ZychK@bennettjones.com' |
| **Subject:** | NT: Revised Allocation Protocol |
| **Attachments:** | 2125594_1(Allocation Protocol_ Blackline Comparison V3 v. V4).DOC; 2068820_4(Nortel_ Allocation Protocol).DOC |

Dear All:

Attached is the revised draft of the Allocation Protocol. We are circulating this draft to you and our clients simultaneously and therefore it remains subject to further material change.

Please also note that this draft does not incorporate Akin Gump's proposal regarding Discovery Procedures and Ogilvy Renault's proposal regarding access to employees of the Company, which is set forth at the bottom of this email.

As you know, we are meeting at our offices on Wednesday, October 21st to discuss this draft of the Allocation Protocol. For those of you who cannot attend in person, please use the following dial-in:

| | |
|---|---|
| Domestic: | 1 877 492 4010 |
| International: | 1 719 955 0541 |
| Passcode: | 212 225 2136 |

### OGILVY RENAULT'S PROPOSAL REGARDING ACCESS TO COMPANY'S EMPLOYEES

*1. Each Negotiating Party would be permitted reasonable access to Company employees for purposes of obtaining information relevant to a Dispute and having the employee provide a witness statement. Company employees include employees of NNC/NNL and their affiliates, including the Debtors and the Non-Filed Affiliates.*

*2. Company employees would be expected to use their reasonable best efforts to assist whatever Negotiating Party asks for their assistance, but recognizing that (i) the employee has a corporate job function to perform with priorities that will need to accommodated and (ii) the employee's available time must be equitably shared with all Negotiating Parties in the Dispute.*

*3. Each Negotiating Party would be obligated to use its reasonable best efforts to ensure that employees of Nortel Group entities within its control provide the assistance requested of them by any Negotiating Party consistent with the considerations mentioned in item 2 above.*

*4. Since each Negotiating Party in a Dispute will have a right of access to and assistance from any Nortel Group employee as described above, as well as the opportunity to cross-examine at the Evidentiary Hearing as described below, there should be no need for depositions.*

*5. Witnesses whose witness statements are filed in a Dispute will be subject to cross-examination at the Evidentiary Hearing if requested by any Negotiating Party to the Dispute.*

Regards,
Sanjeet

---
Sanjeet Malik
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2136 | f: +1 212 225 3999

www.clearygottlieb.com | smalik@cgsh.com

This message is being sent from a law firm and may contain
confidential or privileged information. If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.

THIS DRAFT AGREEMENT HAS BEEN PRODUCED
FOR DISCUSSION AND SETTLEMENT PURPOSES
ONLY AND IS SUBJECT TO THE PROVISIONS OF
RULE 408 OF THE RULES OF EVIDENCE FOR
UNITED STATES COURTS AND MAGISTRATES AND
ANY OTHER SIMILAR APPLICABLE RULES IN ALL
PERTINENT JURISDICTIONS.

*Draft of October 9,19, 2009*
*Privileged and Confidential*

*PLEASE NOTE THAT THIS DRAFT DOES
NOT INCORPORATE AKIN GUMP'S
SUGGESTIONS REGARDING DISCOVERY
PROCEDURES OR OGILVY'S SUGGESTIONS
REGARDING ACCESS TO COMPANY
EMPLOYEES*

## PROTOCOL FOR RESOLVING DISPUTES
## CONCERNING ALLOCATION OF SALE PROCEEDS

This Protocol for Resolving Disputes Concerning Allocation of Sale Proceeds, dated as of ●, 2009 (the "Protocol"), is entered into by and among Nortel Networks Limited ("NNL") and the other entities set forth in Schedule 1 attached hereto, Nortel Networks Inc. ("NNI") and the other entities set forth in Schedule 2 attached hereto, [the Joint Administrators (as defined below) and the entities set forth in Schedule 3 attached hereto (the "EMEA Debtors")][1], certain affiliates of the Debtors (as defined below) set forth in Schedule 4 attached hereto (the "Non-Filed Affiliates")[, the Monitor (as defined below), the Official Committee of Unsecured Creditors appointed in the US Proceedings (as defined below) (the "Creditors' Committee") and the steering committee members of the ad hoc group of bondholders that have executed confidentiality or non-disclosure agreements with the Canadian Debtors and the US Debtors (each, as defined below) (the "Bondholders' Committee," and along with the Creditors' Committee, the "Committees")][2] (each, a "Party," and collectively, the "Parties"). [The Joint Administrators, in their personal capacity, shall be Party to this Protocol as provided in Section 9.7 and solely for the purposes of obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to the Joint Administrators (as defined below) and references to the Parties shall be construed accordingly.][3]

WHEREAS, on January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC", and together with its affiliates, the "Company" or the "Nortel Group"), NNL and certain of NNC's other Canadian affiliates included in Schedule 1 (collectively, the "Canadian Debtors"), commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and the "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor"); and

WHEREAS, on the Filing Date and on July 14, 2009 (with respect to Nortel Networks (CALA) Inc.), NNI and certain of NNI's United States affiliates included in Schedule 2 (collectively, the "US Debtors" and, together with the Canadian Debtors and the EMEA Debtors, the "Debtors") filed petitions in the United States Bankruptcy Court for the District of

---

[1] Whether unfiled subsidiaries of EMEA filed entities will be parties to the Protocol as EMEA Debtors or Non-Filed Affiliates.

[2] TBD: Whether the UCC, Bondholders' Committee, Monitor will be parties to the Protocol or third party beneficiaries? Do the UCC and the Bondholders' Committee have the legal capacity to contract?

[3] Whether Joint Administrators in their personal capacity have the ability to challenge a Decision of the Panel.

[New York #2068820 v34]

Delaware (the "US Court") under chapter 11 of title 11 of the United States Code (respectively, the "US Proceedings" and the "Bankruptcy Code"); and

WHEREAS, on the Filing Date, Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel Networks S.A. ("NNSA") and certain of NNUK's affiliates in the Europe, Middle East and Africa ("EMEA") region, including those in Schedule 3 attached hereto, commenced administration proceedings (the "UK Proceedings" and, together with the Canadian Proceedings and the US Proceedings, the "Proceedings") before the High Court of Justice in London, England (the "UK Court" and, together with the Canadian Court and the US Court, the "Courts"), and the UK Court appointed individuals from Ernst & Young LLP (the "UK Administrator"), and, in the case of NNIR only, Ernst & Young Chartered Accountants (the "NNIR Administrator"), as administrators in the UK Proceedings (the UK Administrator and the NNIR Administrator collectively, and including their respective successors, replacements and any subsequent office holders appointed to the relevant EMEA Debtors, the "Joint Administrators"); and

WHEREAS, subsequent to the Filing Date, NNSA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator (the "NNSA Liquidator") and an administrator (the "NNSA Administrator") have been appointed by the Versailles Commercial Court (Docket No. 2009P00492) for NNSA; and

[WHEREAS, NNSA is not a Party to this Protocol, but shall be invited by the Parties to accede to this Protocol as an EMEA Debtor;][24] and

WHEREAS, the Debtors and their respective affiliates intend, or have agreed, to sell certain assets of their estates in several transactions, each relating to a particular line of business [or portfolio of technologies] (each, a "Business") to a third party buyer (each such buyer, a "Buyer"); and

WHEREAS, the Company has provided, or ~~intended~~**intends** to provide, potential Buyers with access to a room (which may be an electronic data room) containing the books and records of the relevant Business and other financial information relating to such Business (the "Data Room"); and

WHEREAS, with respect to each Business, the Debtors and their respective affiliates intend to enter, or have entered, into one or more acquisition agreements and other ancillary agreements (such agreements, with respect to the sale of each Business, collectively the "Acquisition Agreement") with the Buyer to govern the sale of such Business (the "Sale"); and

WHEREAS, after entering into an Acquisition Agreement, in the case where a so called "stalking horse" bidder has been selected, or prior to entering into an Acquisition

---

[24] Given that NNSA has agreed to terminate certain IP rights in connection with Equinox and MEN transactions and in consideration for such termination agreed in writing to accept a right to future proceeds to be allocated pursuant to this Protocol, any reason why NNSA would not join as of the signing date?

Agreement in the case where no "stalking horse" bidder has been selected, certain of the Debtors intend to apply, or have applied, to certain of the Courts for orders authorizing such Debtors to establish notice, bidding and sale procedures for the Sale of each Business (the "~~Bid~~**Bidding** Procedures Orders"); and

WHEREAS, after entry of the ~~Bid~~**Bidding** Procedures Orders, such Debtors intend to conduct, or have conducted, an auction for the Sale of each Business in accordance with the ~~Bid~~**Bidding** Procedures Orders; and

WHEREAS, after conclusion of the auction, certain of the Debtors intend to apply, or have applied, to certain of the Courts for orders approving the Sale of each Business to the relevant Buyer (the "Sale Orders"); and

WHEREAS, **in connection with certain Sales,** the relevant Debtors intend to request, or have requested, that the Sale Orders contain procedures for the establishment of one or more escrow accounts (the "Escrow Account") overseen by an independent agent (the "Escrow Agent") for deposit of the proceeds of the Sale (the "Sale Proceeds") pending the allocation thereof in accordance with the provisions of this Protocol **(each such Sale, an "In-Scope Sale")**; and

WHEREAS, after entry of the Sale Orders **and satisfaction or waiver of the conditions to closing set forth in the relevant Acquisition Agreement**, the Debtors and their respective affiliates intend to consummate, or have consummated, the Sale of each Business in accordance with the Sale Orders (in each case, a "Closing"); and

WHEREAS, the Debtors and certain Non-Filed Affiliates previously agreed, pursuant to the Interim Funding and Settlement Agreement, dated as of June 9, 2009 (as amended from time to time, the "Interim Funding Agreement"), as soon as reasonably practicable following the execution of such agreement, to negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sales Proceeds, which would provide binding procedures for the allocation of Sales Proceeds where the Selling Debtors (as defined therein) have been unable to reach agreement regarding such allocation; and

WHEREAS, the Parties wish to provide for a mechanism to negotiate the allocation of Sale Proceeds **of each In-Scope Sale** between and among the Canadian Debtors that are Selling Parties with respect to ~~each~~**such In-Scope** Sale, if any, (the "Canadian Filed Sellers"), the EMEA Debtors that are Selling Parties with respect to such **In-Scope** Sale, if any, (the "EMEA Filed Sellers"), the US Debtors  that are Selling Parties with respect to such **In-Scope** Sale, if any, (the "US Filed Sellers") and to the Non-Filed Affiliates that are Selling Parties with respect to such **In-Scope** Sale, if any, (the "Non-Filed Selling Parties") and to resolve disputes with respect to the allocation of the Sale Proceeds **of each In-Scope Sale**, where "Selling Parties" refers to ~~the Parties~~**those Nortel Group entities** that are participating as sellers in the ~~Sale of each relevant Business~~**In-Scope Sale or otherwise releasing their intellectual rights in connection with such In-Scope Sale**; and

3

WHEREAS, each Party (including the Monitor, the Creditors' Committee and the Bondholders' Committee) wishes to participate in the procedures set forth in this Protocol, and has agreed to be bound by this Protocol and any outcome with respect to the Allocation of Sales Proceeds pursuant to a Decision or a Supplementary Decision by the Panel (each, as defined below); and

[WHEREAS, ~~in order to ensure that~~ the Non-Filed Affiliates ~~are afforded an adequate opportunity to participate in the procedures under this Protocol, the Parties have agreed to the appointment of an independent financial advisor and an independent counsel to~~**have appointed their representative, who shall** represent the Non-Filed Affiliates in connection with the negotiations and other procedures **with respect to the Allocation of Sale Proceeds of each In-Scope Sale** under this Protocol (~~such independent financial advisor and counsel together, the~~ "Affiliates' Representative")~~.~~**, and the Non-Filed Affiliates have also appointed an independent financial advisor and an independent counsel to assist the Affiliates' Representative.**][5]

NOW THEREFORE, IT IS HEREBY CONSENTED TO, STIPULATED, AGREED AND ORDERED THAT:

## ARTICLE I
## INITIAL NEGOTIATIONS

*Section 1.1*       During the period beginning as early as the execution of any Acquisition Agreement (such date, the "Relevant Signing Date") but commencing no later than the consummation of any **In-Scope** Sale (such date, the "Relevant Closing Date"), the Negotiating Parties (as defined below) shall use commercially reasonable efforts to negotiate in good faith a fair and equitable allocation of the Sale Proceeds **of each In-Scope Sale** among the Canadian Filed Sellers, the **US Filed Sellers, the** EMEA ~~Filed Sellers, the US~~ Filed Sellers and the Non-Filed Selling Parties, where the "Negotiating Parties" means [NNL (on behalf of Canadian Filed Sellers), NNI (on behalf of US Filed Sellers), NNUK (on behalf of EMEA Filed Sellers), the Affiliates' Representative (on behalf of Non-Affiliates Selling Parties), the Monitor, the Creditors' Committee and the Bondholders' Committee.~~³~~[6] The Non-Filed Affiliates shall be represented in such negotiations and all other procedures under this Protocol by the Affiliates' Representative. [At any time prior to the First DR Referral Date (as defined below), the **Negotiating** Parties may elect to use the services of a mediator, on terms mutually agreed by the **Negotiating** Parties, to reach an agreement as to the allocation of Sale Proceeds **of any In-Scope Sale** (the "Mediator"), and each Negotiating Party hereby agrees to fully cooperate, acting in good faith, with such Mediator.][7]

*Section 1.2*       If the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds **of an In-Scope Sale** prior to the •**hundredth** (•**100**th**) calendar**

---

[5] **Consensual settlement with Non-Filed Affiliates to be discussed.**

~~³~~[6] Consider whether the definition of Negotiating Parties should be dynamic and change with each sale. For instance, for the purposes of CDMA sale, should the definition of Negotiating Parties exclude NNUK?

[7] **Consider whether all Negotiating Parties need to agree to the appointment of a Mediator.**

day ~~(excluding Saturdays, Sundays and national public holidays in any of the United States, Canada or the United Kingdom) (each, a "Business Day")~~ immediately following the **later of (x) the** Relevant Closing Date~~, the Negotiating Parties shall use commercially reasonable efforts to agree within an additional ● (●) Business Days as to the minimum amount that would be distributed to the Canadian Filed Sellers, the EMEA Filed Sellers, the US Filed Sellers and the Non-Filed Selling Parties in any reasonable allocation scenario (the "Minimum Allocation Amount"). In the event that the Negotiating Parties shall have failed to reach an agreement as to the allocation of Sales Proceeds, including as to a Minimum Allocation Amount, at the end of the ● (●^th) Business Day following the Relevant Closing Date~~ **or (y) the date when all Conditions (as defined below) have been satisfied** (the "First DR Referral Date"), the dispute as to ~~a fair and equitable~~**the** allocation of the relevant Sale Proceeds among the **Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers and the Non-Filed** Selling Parties ~~(a "Basic Allocation Dispute")~~ shall be automatically referred to the Panel (as defined below) pursuant to this Protocol.~~[4]~~ **and the Panel shall determine a fair and equitable allocation of the Sale Proceeds of such In-Scope Sale among the Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers and the Non-Filed Selling Parties on the basis of such Selling Parties' relative contribution, if any, to the assets (tangible and intangible) and rights transferred or relinquished and liabilities assumed in the particular In-Scope Sale (a "Basic Allocation Dispute").[8]** The Parties hereby agree that the deadlines imposed by this Section 1.2 may be ~~extended~~**modified** by mutual written agreement among the Negotiating Parties.

  *Section 1.3*  Upon the automatic referral of the Basic Allocation Dispute to the Panel as contemplated by Section 1.2, NNI shall be responsible for promptly sending a notice to the Panel and the other Negotiating Parties, indicating in such notice (a) that pursuant to the terms of Section 1.2 of this Protocol, the Basic Allocation Dispute has been automatically referred to the Panel, and (b) the First DR Referral Date. If for any reason NNI shall fail to send such notification to the Panel, any other Negotiating Party may undertake to send such notice to the Panel and the other Negotiating Parties.

  *Section 1.4*  [Subject to the provisions of any applicable Side Agreement (as defined below), at the Closing of any **In-Scope** Sale, the Sale Proceeds from such **In-Scope** Sale shall be placed in an Escrow Account. For the purposes of this Protocol, "Side Agreement" means an agreement entered into by, *inter alia*, all or the principal Selling Parties in the Sale of a particular Business for the purpose of facilitating the completion of such Sale and maximizing the value arising ~~therefore~~**from such Sale** for their respective stakeholders.]**[9] The Negotiating Parties, in their sole discretion, may agree to a partial allocation of the Sale Proceeds of an In-Scope Sale (each such partial allocation, "Partial Allocation Amount").** If the Negotiating Parties agree to a ~~Minimum Allocation Amount with respect to the allocation of the Sale Proceeds, such Minimum~~**Partial Allocation Amount, such Partial** Allocation Amount shall be released from the Escrow Account and distributed to the Selling Parties immediately following the later of (x)

---

[48] Prior to signing of this Protocol (by which time the timing of the CDMA and Equinox closing should be known to the Parties), this Protocol will be revised to add language to accommodate EMEA's request that the Equinox dispute be the first Basic Allocation Dispute to be handled by the Panel so long as it does not unreasonably delay the allocation for CDMA, which is expected to close earlier than Equinox.

[9] **Consider deleting these sentences. The issue of whether Sale Proceeds are to be escrowed is agreed by the parties before the Protocol kicks in (consider the case of CDMA or Equinox sales).**

[New York #2068820 v3~~3~~**4**]

the Closing of the **In-Scope** Sale and (y) the date when the **Negotiating** Parties agree to such ~~Minimum~~**Partial** Allocation Amount; and any remaining amounts shall remain in the Escrow Account until released from the Escrow Account in accordance with the provisions of this Protocol. ~~If the Negotiating Parties fail to agree to a Minimum Allocation Amount following good faith negotiations, subject to the provisions of any applicable Side Agreement, all Sale Proceeds shall remain in the relevant Escrow Account until released from such Escrow Account in accordance with the provisions of this Protocol.~~

### ARTICLE II
## REFERRAL OF ALLOCATION ~~AND OTHER~~ DISPUTES TO THE PANEL

*Section 2.1*        As contemplated by Section 1.2 of this Protocol, a Basic Allocation Dispute shall be automatically referred to a dispute resolution panel constituted in accordance with Sections 2.2, 2.3 and 2.4 (the "Panel"). In addition, ~~if any other dispute, controversy or claim arising out of, relating to, or in connection with the issue of Allocation of the Sale Proceeds (an "Additional Dispute") is not resolved on or before the Closing, then at any time after the First DR Referral Date and [ten (10) Business Days prior to the Second Round Submission Deadline (as defined below)] any of the Negotiating Parties may refer an Additional Dispute to the Panel for a decision in accordance with this Protocol, and such referral shall be binding upon the Parties. Reference of an Additional Dispute to the Panel must be in writing with a copy to all other Negotiating Parties. Upon such reference, any member of the Panel may notify the Negotiating Parties whether the Negotiating Parties shall be permitted to provide supplementary written materials with regards to such Additional Dispute to the Panel. In addition,~~ the Parties hereby agree that the Panel may decide any other dispute, controversy or claims of a Selling Party that the Panel considers must be addressed in order to finally determine the Allocation of the Sale Proceeds of a given **In-Scope** Sale in accordance with this Protocol (each such dispute, controversy or claim, an "Other Dispute" and together with ~~an Additional Dispute and~~ a Basic Allocation Dispute, a "Dispute"), provided that the resolution of any Other Dispute shall be binding on the Parties solely for the purposes of the determination of the relevant Allocation.

*Section 2.2*        The members of the Panel shall be as follows: ● (the "Category A Member"), ● (the "Category B Member") and ● (the "Category C Member"). [For the purposes of administrative convenience, the Panel may designate one of its members as the chairperson of the Panel with regards to a given Dispute ("Relevant Chairperson"). The Relevant Chairperson shall have no special powers or authority to act ~~unless otherwise agreed by [the other members of the Panel]~~[5] **except as expressly set forth in this Protocol.**][10]

*Section 2.3*        [Each member of the Panel shall be and remain at all times impartial and independent of the Parties.][11] No member of the Panel shall act as **an** advocate of any Party.

---

[5] ~~TBD~~

[10] **Please note that certain parties would prefer to retain the concept of chairperson.**

[11] **Parties to discuss whether each Panel member must satisfy the "disinterestedness" standard under the Bankruptcy Code.**

6

No member, whether before or after appointment to the Panel, shall advise any Party on the merits or outcome of ~~the Dispute~~a **Dispute. Each Party hereby agrees that such Party shall communicate with the Panel only as expressly permitted by this Protocol as, in the case of exceptional circumstances, in writing, provided that such written communication must be served on the Panel and the Negotiating Parties simultaneously.**

Section 2.4    If any member of the Panel is unable or unwilling to serve after receiving notice of the referral of any matter to the Panel or at any time thereafter, such member shall be replaced by another individual from the names set forth on Exhibit A attached hereto, provided that such replacement must belong to the same category as the member that is being replaced.[6~~1~~2]

Section 2.5    In connection with a particular **In-Scope** Sale, all costs and expenses of the Mediator (if any) shall be paid from the relevant Escrow Account before transfer of Sale Proceeds in accordance with the terms of this Protocol and ~~he~~the relevant escrow agreement. Each of the Negotiating Parties (other than the Affiliates' Representative) shall bear its respective costs and expenses, including attorneys' fees, associated with the preparation and presentation of its case to the Panel and any other costs and expenses incurred **by such Negotiating Party** in connection with the proceedings pursuant to this Protocol. The Panel shall specify in ~~its~~**each** Decision the total amount of the costs and other expenses of the Panel **in connection with such Decision** (the "Panel Costs"), and the proportions in which the US Filed Sellers, the Canadian Filed Sellers, the EMEA Filed Sellers and the Non-Filed Selling Parties shall bear such Panel Costs. The costs and expenses of the Affiliates' Representative and the pro rata portion of the Panel Costs to be paid by Non-Filed Selling Parties shall be paid from the Sale Proceeds allocated to the Non-Filed Selling Parties. **The incremental costs and other expenses of the Panel in connection with a Supplementary Decision (as defined below) shall be paid from the Sale Proceeds allocated to the Selling Parties covered by such Supplementary Decision.**

Section 2.6    In rendering any Decision and the Allocation in such Decision, the Panel shall (i) treat as final and binding any ~~Minimum~~**Partial** Allocation Amount ~~and any other partial allocation of Sale Proceeds that the Selling Parties have agreed to in respect of a particular Sale~~, and (ii) not be bound to adopt or follow [(x) any allocation agreed with the Buyer in or pursuant to the relevant Acquisition Agreement,][7~~1~~3] or (y) any previous Decision or Allocation of the Panel relating to another ~~Sale.~~**In-Scope Sale. In addition, after the Panel has entered a**

---

[6~~1~~2] This provision assumes that Exhibit A will have three additional names and each name will belong to one of the three Categories A, B or C. Consider whether Exhibit A should have six names instead – in other words, whether there should be two back-ups for each member of the Panel. **If there is more than one alternate, this provision to specify how a given alternate will be selected from the various options (recommend simply going down the list for each category). Also, if vacancy occurs during or after the Hearing, what should be the remedy – re-start hearing or replacement panel member has the option to request additional information from other Panel members as the Negotiating Parties or convene a supplementary hearing. HS would also like the parties to consider taking out an insurance policy wrt Panel members.**

[7~~1~~3] Tax counsel to review this. Nortel has agreed to allocate at least the book value to each tangible asset and the Panel has to respect this allocation principle. **Consider whether parties may offer the Buyer's allocation as evidence to the Panel, or any Court statements as to allocation as evidence to the Panel.**

7

[New York #2068820 v3~~4~~]

**Decision or a Supplementary Decision, the Panel shall be barred from modifying such Decision or Supplementary Decision, as the case may be, other than to address a manifest error in such Decision or Supplementary Decision.**

*Section 2.7*      It is further understood and agreed that it is not the intention of the Parties that submissions to the Panel (including Written Submissions and Oral Argument (each as defined below)) of any Party be used to reopen or seek reconsideration of or compensation or credit for any matter **set forth in Schedule ● to this Protocol, provided** that ~~previously was expressly agreed by the Parties in connection with their entry into any Acquisition Agreement, the Interim Funding Agreement or any other agreement among two or more Parties.~~ **the Negotiating Parties, without approval of the Courts, may mutually agree to add new matters to Schedule ●.**

*Section 2.8*      None of the members of the Panel or any expert appointed by the Panel shall be liable to any Party or any third party howsoever for any act or omission in connection with any proceedings under this Protocol. [The **Selling** Parties **for each In-Scope Sale** hereby agree to hold harmless each member of the Panel and any expert appointed by the Panel for any act or omission of such person in connection with any proceedings under this Protocol.] **in connection with such In-Scope Sale in proportion to each Selling Party's respective allocation under the applicable Decision or Supplementary Decision to which such act or omission relates.]**[14]

*Section 2.9*      The place of all proceedings pursuant to this Protocol shall be New York, New York. All proceedings pursuant to this Protocol shall be conducted in the English language.[15]

### ARTICLE III
### ADMINISTRATIVE MEETINGS

*Section 3.1*      Within ● (●) calendar days of a ~~matter~~**Basic Allocation Dispute** being referred to the Panel, the Negotiating Parties and the Panel shall hold a meeting to discuss **any** administrative ~~matters~~**, procedural or other relevant matters as determined by the Panel or requested by any Negotiating Party** (the "Administrative Meeting"), which shall be convened by the Panel. Each of the Negotiating Parties must be given (i) at least ~~five~~**seven** (5) ~~Business Days~~**7) calendar days**' notice prior to the Administrative Meeting and (ii) the opportunity to present at the Administrative Meeting. The Administrative Meeting shall be held at a time and in a location, as determined by the Panel, such that each Negotiating Party and/or its counsel shall be able to participate by telephone, videoconference or in person.[16] At the Administrative Meeting and at any other proceeding before the Panel, each of the Negotiating Parties shall be entitled to be represented by counsel.

---

[14] **Consider deleting.**

[15] **We are discussing with our arbitration colleagues the validity or enforceability restrictions of the Protocol or any Decision, if any, under NY law.**

[16] **Parties to confirm that these mtgs will be held in NYC?**

[New York #2068820 v34]

*Section 3.2*        Except as specifically provided in this Protocol, the Panel [may/**shall**], after taking into account the facts and circumstances of the relevant **In-Scope** Sale, the multiple jurisdictions involved in such **In-Scope** Sale or the **applicable** Dispute and the different types of Nortel Group entities under the Nortel Group's transfer pricing regime which was in effect prior to the Filing Date, establish the procedure and manner in which the resolution of the **Basic Allocation** Dispute **or other Dispute, as the case may be,** shall be conducted, including, without limitation, (i) the due dates for Written Submissions, (ii) the time, place, length and number of oral arguments for each Negotiating Party (the number of oral arguments for a given Negotiating Party multiplied by the length of each such oral argument, the "Oral Argument Duration") and (iii) other administrative matters such as the scheduling of the Evidentiary Hearings (as defined below) and subsequent Administrative Meetings (if necessary), [provided that the right of the Non-Filed Selling Parties to participate and present their Interests (as defined below and as determined by the Panel) to the Panel shall reflect, to the extent reasonably practicable and determinable under the circumstances, the Panel's assessment of **the** relative contribution of the assets (tangible and intangible) and the rights transferred or relinquished by and liabilities assumed from the Non-Filed Selling Parties in comparison to other Selling Parties with regards to a given Sale. ][17]

*Section 3.3*        If any Negotiating Party determines that there is an actual or potential conflict with respect to the Dispute among any of the Respective Selling Parties (as such term is defined in Exhibit B attached hereto) of such Negotiating Party or that such Negotiating Party represents a diversity of interests with regard to such Negotiating Party's Respective Selling Parties (each such interest, an "Interest"), such Negotiating Party may petition in writing the Panel to further modify the procedures, including, without limitation, by increasing the Oral Argument Duration allocated to such Negotiating Party, [or providing separate representation, to address such potential conflict of interest or diversity of interests,][18] provided that any other Negotiating Party shall be free to make submissions as to the extent and scope of any additional representation rights; and provided, further that in the case of NNUK or the Monitor, their respective petitions to the Panel to represent up to three separate Interests shall not be opposed by any other Negotiating Party.

*Section 3.4*        Nothing in the preceding section shall affect the right of the Panel to call other meetings to discuss administrative matters after the initial Administrative Meeting. Each such meeting shall constitute a separate Administrative Meeting for the purposes of this Protocol and must comply with the requirements set forth in Section 3.1 of this Protocol.

## ARTICLE IV
## WRITTEN SUBMISSION BY THE NEGOTIATING PARTIES

*Section 4.1*        Each of the following Parties may submit a written statement **to the Panel**, including, without limitation, Party-Appointed Expert Reports (as defined below) and written Witness Statements (as defined below), of such Party's one or more Interests (as permitted by the Panel pursuant to Section 3.3) with regards to the Allocation of the relevant

---

[17] **Due Process concerns to be discussed.**

[18] **TBD**

[New York #2068820 v34]

Sale Proceeds to the Panel (such submission, the "First Round Submission"): NNL (on behalf of Canadian Filed Sellers), NNI (on behalf of US Filed Sellers), NNUK (on behalf of EMEA Filed Sellers), the Affiliates' Representative (on behalf of Non-Filed Selling Parties), the Monitor, the Creditors' Committee and the Bondholders' Committee.

*Section 4.2*        Each of the ~~Filing~~[**Negotiating** Parties]**[19]** in its First Round Submission shall present its ~~one or more Interests, as permitted by the Panel pursuant to Section 3.3 (the "Presented Positions") on which, if any, of the following valuation methodologies should be applied, and how it should be applied, in allocating the Sale Proceeds: [(i) asset-based valuation; (ii) revenue-based valuation; or (iii) transfer pricing methodology]**[8]**.~~ **methodology for the allocation of the relevant Sale Proceeds (the "Presented Position"). In the case of a Negotiating Party that represents more than one Interest (as determined by the Panel), such Negotiating Party may offer more than one Presented Position to the Panel.** [The Presented Positions may also address any allocation ~~advanced by a Buyer in the Acquisition Agreement. The Presented Positions in the First Round Submission may also advocate for the application of a valuation methodology not listed in this Section 4.2 (and the fact that any such valuation methodology is not listed in this Section 4.2 shall not be construed as a presumption that such methodology is any less valid than those valuation methodologies listed herein).~~ **or allocation methodology adopted or employed by any Buyer.]**

*Section 4.3*        A **Negotiating** Party may rely on one or more experts as a means of evidence on specific issues (each such expert, a "Party-Appointed Expert"), and a report by such Party-Appointed Expert must contain a description of the qualifications of such expert, a statement of the facts on which such expert is basing its opinions and conclusions, and such expert's opinions and conclusions, including, without limitation, a description of the method, evidence and information used in arriving at the conclusions (each such report, a "Party-Appointed Expert Report").~~[9]~~**[20]**

*Section 4.4*        A Negotiating Party may rely on a written statement by any person, including, without limitation, any Party's officer, employee or other representative (the Parties hereby acknowledge that certain individuals occupy multiple positions in the Company). Such witness statement must contain a full and detailed description of the facts, and the source of the witness's information as to those facts, sufficient to serve as that witness's evidence in the matter in dispute (each such statement, a "Witness Statement").~~[10]~~**[21]**

*Section 4.5*        Each of the Negotiating Parties shall provide a First Round Submission to the Panel, with a copy to all other Negotiating Parties, no later than the deadline established by

---

**[19]** **If the definition of Negotiating Party is dynamic, then consider adding a different term to ensure that each Selling Party has the right to at least make an initial written submission.**

[8] ~~Consider whether listing of different valuation methodologies is necessary.~~

~~[9]~~**[20]** Consider whether we should incorporate or copy provisions from Article 5 of IBA Rules of Evidence. An alternative is to provide that the Panel may take guidance from the IBA Rules of Evidence but is not bound by such rules. **Another alternative is to leave this issue open for the Panel to determine.**

~~[10]~~**[21]** Consider whether we should incorporate or copy provisions from Article 4 of IBA Rules of Evidence. Access to Company's employees as witnesses to be further discussed. **See Ogilvy's suggestion.**

[New York #2068820 v~~3~~**4**]

the Panel for such submission (the "First Round Submission Deadline"). The First Round Submission of each Negotiating Party shall not be subject to any page limits.

*Section 4.6*    Each Negotiating Party, in its sole discretion, may opt to submit a second round of written submissions to the Panel, with a copy to all other Negotiating Parties, no later than the deadline established by the Panel for such submission, which shall be at least ● calendar days after the First Round Submission Deadline (respectively, the "Second Round Submission" and the "Second Round Submission Deadline"). The Second Round Submission of each Negotiating Party shall not be subject to any page limits, <u>provided</u> that the sole purpose of a Second Round Submission shall be to respond to the First Round ~~Submission~~**Submissions** of other Negotiating Parties[11]~~.~~ **with regards to each Interest of the relevant Negotiating Party.**[22] For the purposes of this Protocol, the First Round Submission and the Second Round Submission and any other written submissions by any Negotiating Party to the Panel shall be collectively referred to as the "Written Submissions."

*Section 4.7*    If a Negotiating Party or its representative fails to (a) attend or participate in any Administrative Hearing or Evidentiary Hearing (as defined below), (b) make the Written Submissions within the time established by the Panel without showing sufficient cause for such failure, as determined by the Panel, or (c) attend or present its Oral Argument, the Panel may nevertheless proceed with the resolution of the Dispute and determine the Allocation ~~to the~~**of** relevant ~~Selling Parties~~**Sale Proceeds**.

### ARTICLE V
### ACCESS TO INFORMATION[23]

*Section 5.1*    Commencing as early as the start of the negotiations for ~~the Sale of a particular Business~~**any Sale that parties anticipate to fall within the scope of this Protocol** but in any event no later than the date of entry into the Acquisition Agreement, each ~~of the Negotiating Parties~~**Party** shall have equal access to the Data Room until ~~the conclusion of all Disputes in respect of such Sale~~● **[TBD]**.

*Section 5.2*    ~~Each of the~~ **Any [**Negotiating ~~Parties~~**] Party** may following the entry of the Acquisition Agreement, send a written request to ~~the Company~~**any Nortel Group entity**, with a copy to all ~~other~~ Negotiating Parties, for access to information concerning ~~the Company~~**such Nortel Group entity or in possession of such Nortel Group entity** not contained in the Data Room that may be reasonably relevant to ~~the Disputes in respect of the Sale of the Particular Business. Subject to Section 5.3, the Company~~**resolution of any Dispute in respect of an In-scope Sale (the "Data Request"). The relevant Nortel Group entity** shall undertake commercially reasonable efforts to make such information available **[**(to the extent

---

[11] ~~TBD: Whether Second Round Submission may include Experts Reports and Witness Statements.~~

[22] **TBD: Whether Second Round Submission may include Experts Reports and Witness Statements.**

[23] **See cover email to Ogilvy's suggestions to address access to Company employees.**

11

such information exists or is readily obtainable)]<sup>24</sup> **in the Data Room** to each ~~of the~~ [Negotiating ~~Parties~~] **Party** as soon as reasonably practicable.

*Section 5.3* ~~Each of the Negotiating Parties may, within ● (●) calendar days of the First Round Submission Deadline, send a written request to the Company, with a copy to all other Negotiating Parties, for access to information concerning the Company not contained in the Data Room that may be reasonably relevant to the Disputes in respect of the Sale of the particular Business and not otherwise previously made available to the Negotiating Parties by the Company. The Company shall undertake commercially reasonable efforts to make such information available (to the extent such information exists or is readily obtainable) to each of the Negotiating Parties as soon as reasonable practicable after receiving such request.~~**Any Party may make a Data Request in connection with a Dispute until ● [TBD].**

*~~Section 5.4~~* ~~The Panel may, within ● (●) calendar days of the Second Round Submission Deadline, send a written request to the Company, with a copy to each of the Negotiating Parties, for access to information concerning the Company not contained in the Written Submission that may be reasonably relevant to the Disputes in respect of the Sale of the Particular Business. The Company shall undertake commercially reasonable efforts to make such information available (to the extent such information exists or is readily obtainable) to the Panel and each of the Negotiating Parties as soon as reasonably practicable after receiving such request.~~

## ARTICLE VI
## EVIDENTIARY HEARING; ORAL ARGUMENT

*Section 6.1* Upon expiration of the deadline to make Second Round Submissions, any Negotiating Party may request the Panel to schedule a hearing at which the Panel shall receive oral evidence (such hearing, whether or not held on consecutive days, an "Evidentiary Hearing").<sup>~~12~~25</sup>

*Section 6.2* Evidence from proceedings held in connection with the resolution of another Dispute under this Protocol, including, without limitation, evidence from a prior Evidentiary Hearing, Administrative Meeting, Written Submission, Witness Statement, and Expert Report (as defined below) for a given **In-Scope** Sale ("Prior Evidence") shall be admissible in the Evidentiary Hearings for subsequent **In-Scope** Sales, unless on motion by any Negotiating Party, the Panel decides that the Prior Evidence shall not be admitted or otherwise limits the admissibility of the Prior Evidence, provided that each Negotiating Party shall have the right to further re-direct and cross-examine such Prior Evidence.<sup>~~13~~26</sup>

*Section 6.3* The Panel shall hold one or more proceedings where each of the Negotiating Parties may orally present ~~argument~~**arguments** in favor of their Presented Positions (the "Oral Argument").

---

<sup>24</sup> **Is this necessary given the commercially reasonable efforts standard?**

<sup>~~12~~25</sup> Consider whether we should incorporate or copy provisions from Articles 8 and 9 of IBA Rules of Evidence.

<sup>~~13~~26</sup> TBD: What happens if such Prior Evidence cannot be further cross-examined (e.g., death of a prior witness)?

12

[New York #2068820 v~~3~~4]

*Section 6.4*      Oral Argument shall be held at a time and place specified by the Panel, but in no event before ● (●) calendar days or after ● (●) calendar days of the Second Round Submission Deadline.  Oral Argument shall be held in person or by videoconference, as decided by the Panel.

**ARTICLE VII**
**THE DECISION OF THE PANEL**

*Section 7.1*      The Panel shall render a written decision (the "Decision") ~~within ● (●) calendar days of~~**as soon as reasonably practicable after** the last Oral Argument.  Each Decision, Supplementary Decision (as defined below) and ~~all~~**any** other ~~decisions~~**decision** of the Panel shall be made by at least majority of the members of the Panel.

*Section 7.2*      The Decision shall contain: (a) the percentage, if any, (rounded to [four] decimal points) of the Sale Proceeds of a given **In-Scope** Sale to be allocated to the Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers and the Non-Filed Selling Parties (~~the~~ **an** "Allocation"); and (b) instructions to the Escrow Agent to distribute the **relevant** Sale Proceeds to NNL (on behalf of the Canadian Filed Sellers), NNI (on behalf of the US Filed Sellers), NNUK (on behalf of the EMEA Filed Sellers) and to the Non-Filed Selling Parties in accordance with the **applicable** Allocation.~~14~~**27** Upon the written request of NNL, NNUK, NNI or Affiliates' Representative, as the case may be, the Panel shall issue a supplementary decision upon the issuance of the Decision containing the percentage if any, (rounded to [four] decimal points) of the Sale Proceeds of such **In-Scope** Sale to be allocated to each of the Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers or the Non-Filed Selling Parties, respectively (each such supplementary decision, a "Supplementary Decision").

*Section 7.3*      ~~The~~**Each** Decision ~~and each~~**,** Supplementary Decision **and any other decision of the Panel** shall be made in writing and ~~[shall be signed by ● members of the Panel, provided that where not all three members of the Panel have signed the Decision, no reason for the missing signature shall be stated].  The Decision and each~~**shall be signed and authenticated by ● [name of individual] for and on behalf of the Panel (the "Certification Agent").  If the Certification Agent is unable or unwilling to perform its duties under this Protocol, the Panel shall appoint a replacement Certification Agent.  [Any Decision or** Supplementary Decision, in the sole discretion of the Panel, may state the reasons upon which ~~it is based, provided that the Decision and each Supplementary Decision~~**such Decision or Supplementary Decision, as the case may be, is based, provided that such Decision or Supplementary Decision, as the case may be,** shall not include any dissenting reasons.]**28** ~~[For the avoidance of doubt, other than Supplementary Decisions, no member of the Panel shall issue any separate or dissenting decisions, opinions or explanations.]~~

~~*Section 7.4*      In rendering the Decision and the Allocation contained in such Decision, the Panel shall not be bound to select one of the Presented Positions.~~

---

~~14~~**27** How will the aggregate distributions to each estate be held?  This question is even more complicated for the case of Non-Filed Selling Parties.  **After this has been resolved, we need to re-visit Section 7.9 as this provision (as drafted) does not cover Supplementary Decision.**

**28** **Parties to discuss further.**

13

**Section 7.4**      ~~Section 7.5 The Panel shall render the Decision and the Allocation contained in such Decision on the basis of his or her [reasoned expert judgment] and shall not be bound~~**In rendering a Decision and an Allocation contained in such Decision, the Panel shall not be bound (a) to select one of the Presented Positions or (b)** by the rules, provisions or administrative practices of any particular national, provincial, state or other law or legal system or government agency or the standards of any particular organization or association (each such rule, provision or administrative practice, an "Allocation Rule"), provided that the Panel may, in its sole discretion, base ~~the~~ **a** Decision, ~~the~~**an** Allocation or ~~each~~**a** Supplementary Decision or any element thereof upon one or more Allocation Rules.

**Section 7.5**      ~~Section 7.6~~ If the Negotiating Parties agree at any point in time prior to the relevant Decision as to ~~the~~**a Partial** Allocation ~~of any portion~~**Amount** of the relevant Sale Proceeds, then the Panel shall render a Decision ~~or a Supplementary Decision~~ only with respect to the allocation of the remaining portion of the Sale Proceeds. **[If the relevant Selling Parties agree at any point in time prior to the relevant Supplementary Decision as to the Allocation of any portion of the relevant Sale Proceeds allocated to such Selling Party pursuant to the applicable Decision, then the Panel shall render a Supplementary Decision only with respect to the allocation of the remaining portion of the Sale Proceeds allocated to such Selling Parties pursuant to the applicable Decision.]**

**Section 7.6**      ~~Section 7.7~~ Although the Panel may, upon consultation with the Negotiating Parties, appoint one or more experts to report to the Panel on specific issues designated by the Panel (each such expert, a "Panel-Appointed Expert" and together with Party-Appointed Expert, an "Expert"), the Panel and the **Negotiating** Parties shall seek to minimize the use of such Panel-Appointed Experts. The Panel shall establish, upon consultation with the Negotiating Parties, the terms of reference for any Panel-Appointed Expert. Each Panel-Appointed Expert shall report in writing to the Panel, and such report must describe the expert's ~~qualification~~**qualifications**, the method, evidence and information used in arriving at the conclusions ("Panel-Appointed Expert Report", and together with Party-Appointed Expert Report, an "Expert Report"). A copy of the final terms of reference and the written report of a Panel-Appointed Expert shall be sent by the Panel to the Parties.[~~15~~29]

**Section 7.7**      ~~Section 7.8~~ The**Any** Decision and ~~the~~ Supplementary ~~Decisions~~**Decision** of the Panel shall be conclusive, final and binding upon each of ~~the Negotiating Parties~~**Selling Parties in connection with the applicable In-Scope Sale, the Monitor, the Committees and the Joint Administrators** and may not be challenged, appealed or sought to be vacated~~.~~ **by any such Party.**[30]

**Section 7.8**      ~~Section 7.9~~ [~~The~~**Any Decision and Supplementary** Decision of the Panel shall ~~not~~ be deemed an arbitral award enforceable under the United States Federal Arbitration Act ~~or~~**and** the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards.] [TBD]

---

[~~15~~29] Consider whether we should incorporate or copy provisions from Article 6 of IBA Rules of Evidence.

[30] Note that as drafted this does not cover Non-Selling Parties. This should cover all parties.

14

**Section 7.9**    ~~Section 7.10~~ The Sale Proceeds **for any In-Scope Sale** shall be ~~allocated~~**transferred** in accordance with the Allocation and the relevant escrow agreement by the Escrow Agent after the **entry of the relevant** Decision ~~is~~**has been** rendered without the need for an order from any of the Courts.

## ARTICLE VIII
## CONFIDENTIALITY

**Section 8.1**    Except as may be required by applicable law or court order or by an authority having appropriate jurisdiction, each Party agrees (i) to maintain confidentiality as to all aspects of these procedures, including, without limitation, the presentation of any issue to the Panel, any discussions, deliberations, proceedings or results of the dispute resolution procedure set forth in this Protocol, any Written Materials or Oral Arguments, or any Decisions produced by these proceedings (the "Confidential Material") and (ii) not to use any Confidential Material for its own benefit or the benefit of any of its affiliates, it being understood that the Parties may disclose the existence and nature of this Protocol and the dispute resolution procedure conducted hereunder as may be necessary to (x) satisfy any Condition (as defined below) or (y) comply with the applicable laws, including, without limitation, the U.S. federal or state **securities laws** or Canadian federal or provincial securities laws.

**Section 8.2**    In the event that a Party is served with or otherwise subject to legal process (including subpoena or discovery notice) requiring it to testify about, to produce, or otherwise to divulge Confidential Material, to the extent permitted by **applicable** law such ~~entity subject to such process~~**Party** will as soon as practicable inform the provider(s) of such Confidential Material so that the provider may seek a protective order or other remedy. In the event that such protective order or other remedy has not been obtained and such entity is advised, in the opinion of counsel, that it is legally compelled to disclose any of the Confidential Material, such ~~entity~~**Party** may disclose only such Confidential Material so advised to be disclosed.

**Section 8.3**    The Parties further agree that prior to the appointment of any individual to the Panel~~, such proposed member of~~ **or appointment as an Expert by any Party or** the Panel**, such individual** shall agree **in writing** to preserve the confidentiality of the dispute resolution procedure conducted under this Protocol.

**Section 8.4**    [Nothing herein shall prevent any Party from disclosing information regarding the dispute resolution procedure conducted under this Protocol for purposes of proceedings to resolve any disputes arising from, relating to or in connection with the enforcement or implementation of this Protocol. ]^[31]

## ARTICLE IX
## MISCELLANEOUS

**Section 9.1**    In all matters not expressly provided for in this Protocol, the Panel and the Parties shall act in the spirit of this Protocol and shall make every reasonable effort to ensure that any Allocation pursuant to this Protocol will be legally enforceable.

---

[31] **TBD.**

15

Section 9.2    [There shall be no communications between any member of the Panel and a Party unless all other Parties are given the opportunity to be present during such communication. For the avoidance of doubt, written communication (whether transmitted by email, facsimile or post) between any member of the Panel and a Party must also be transmitted contemporaneously to all other Parties.][32]

Section 9.3    All notices, requests, instructions, directions and other communications provided for herein shall be made in writing (including by facsimile) delivered to the intended recipient as follows:

**If to the US Debtors:**
c/o Nortel Networks Inc.
Attention: Anna Ventresca, Esq.
              Chief Legal Officer
Address: 2221 Lakeside Boulevard
              Richardson, Texas 75082
              U.S.A.
Facsimile No.: +1 905 863 2075
Telephone No.: +1 905 863 1204

**With a copy to:**
Cleary Gottlieb Steen & Hamilton LLP
Attention: James L. Bromley, Esq.
Address: One Liberty Plaza
              New York, New York 10006
              U.S.A.
Facsimile No.: +1 212 225 3999
Telephone No.: +1 212 225 2163

**If to the Canadian Debtors:**
c/o Nortel Networks Limited
Attention: Anna Ventresca, Esq.
              Chief Legal Officer
Address: 195 The West Mall
              Toronto, Ontario M9C 5K1
              Canada
Facsimile No.: +1 905 863 2075
Telephone No.: +1 905 863 1204

**With a copy to:**
Ogilvy Renault LLP
Attention: Derrick Tay, Esq. and Michael J.
Lang, Esq.
Address: Suite 3800
              Royal Bank Plaza, South Tower
              200 Bay Street, P.O. Box 84
              Toronto, Ontario M5J 2Z4
              Canada
Facsimile No.: +1 416 216 4832 / 216 3930
Telephone No.: +1 416 **216 4832 /** 216 3939

**If to the EMEA Debtors:**
c/o Ernst & Young LLP
Attention: Alan Bloom
Address: One More London Place
              London SE1 2AF
              United Kingdom
Facsimile No.: +44 (0) 20 7951 1345
Telephone No.: +44 (0) 20 7951 9898

**With a copy to:**
Herbert Smith LLP
Attention: Stephen Gale, Esq. **and Kevin Lloyd, Esq.**
Address: Exchange House
              Primrose Street
              London EC2A 2HS
              United Kingdom
Facsimile No.: +44 (0) 20 7098 4878
Telephone No.: +44 (0) 20 7466 2878

---

[32] **Should the Protocol grant non-Negotiating Parties the right to approach the Panel?**

[New York #2068820 v34]

**If to the Monitor:**
c/o Ernst & Young, Inc.
Attention:  Murray A. McDonald
Address:  Ernst & Young Tower
            222 Bay Street, P.O. Box 251
            Toronto, ON M5K 1J7
            Canada
Facsimile No.: +1 416 943 3300
Telephone No.: +1 416 943 3016

**With a copy to:**
Goodmans LLP
Attention:  Jay Carfagnini, Esq.
Address:  250 Yonge Street, Suite 2400
            Toronto, Ontario M5B 2M6
            Canada
Facsimile No.: +1 416 979 1234
Telephone No.: +1 416 597 4107

**If to the Creditors' Committee:**
c/o Akin Gump Strauss Hauer & Feld LLP
Attention:  Fred S. Hodara, Esq.
Address:  One Bryant Park
            New York, New York 10036
            U.S.A.
Facsimile No.: +1 212 872 1002
Telephone No.: +1 212 872 8040

**If to the Bondholders' Committee:**
c/o Milbank, Tweed, Hadley & McCloy LLP
Attention:  Albert A. Pisa, Esq.
Address:  One Chase Manhattan Plaza
            New York, New York 10005-1413
            U.S.A.
Facsimile No.: +1 212 530 5219
Telephone No.: +1 212 530 5319

All notices, requests, instructions, directions and other communications to be sent under this Protocol to the Non-Filed Affiliates shall be made in writing (including by facsimile) and delivered to the contact addresses or facsimile numbers set forth in <u>Schedule 4</u> hereto.

*Section 9.4*        This Protocol shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction, <u>provided</u> that Section 9.7 shall be governed exclusively by English law.

*Section 9.5*        To the fullest extent permitted by applicable law, each Party [(i) agrees to submit to the ~~non-~~[exclusive] jurisdiction of the US Court and the Canadian Court (in a joint hearing conducted under the cross-border Protocol adopted by such courts, as it may be in effect from time to time (the "Cross-Border Protocol")), for purposes of all legal proceedings to the extent relating to the matters agreed in this Protocol~~, (ii) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever to the extent relating to the matters agreed in this Protocol must be commenced in the US Court if such claim, action or proceeding would solely affect the US Debtors, the Canadian Court if such claim, action or proceeding would solely affect the Canadian Debtors, a joint hearing of both the Canadian Court and the US Court conducted under the Cross-Border Protocol if such claim, action or proceeding would affect the Canadian Debtors and the US Debtors and the English courts if such claim, action or proceeding would solely affect the EMEA Debtors, (iii~~ **other than the resolution of any Basic Allocation Dispute, which shall fall within the exclusive jurisdiction of the Panel,]**[33] **(ii)** waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such action brought in such a Court or any claim that any such action brought in

---

[33] **Does the Cross-Border Protocol become ineffective after a reorganization plan has been confirmed in Canada or US?**

[New York #2068820 v~~3~~4]

such a Court has been brought in an inconvenient forum, (~~iv~~iii) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by law shall be valid and sufficient service thereof, and (~~v~~iv) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law, <u>provided</u> that any claim, action or proceeding set forth in Section 9.7 of this Protocol shall be brought exclusively in the English courts. **[designation of process agent to be considered]**

  *Section 9.6*  No provision of this Protocol (other than as set forth in Sections [9.3, 9.4, 9.5, 9.6, 9.7, 9.10, 9.11, 9.15, 9.17 and 9.18] of this Protocol) shall be effective until the satisfaction of the following conditions:  (A) each of the US Court and the Canadian Court approving the entirety of this Protocol and all of the provisions hereof (the "<u>North American Court Condition</u>") and (B) the UK Court giving a direction (the "<u>UK Court's Directions</u>")[34] that, ~~if so sought,~~ the Joint Administrators be at liberty to enter into this Protocol (the "<u>UK Court Condition</u>" and, together with the North American Court Condition, the "<u>Conditions</u>")~~. provided that the Joint Administrators may at their election waive the UK Court Condition.~~

  *Section 9.7*  The Parties agree that the Joint Administrators have negotiated and are entering into this Protocol as agents for the EMEA Debtors to which they are appointed and that none of the Joint Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Nortel Group company to observe, perform or comply with any of its obligations under this Protocol or under or in relation to any associated arrangements or negotiations.  The Joint Administrators are a Party to this Protocol: (i) as agents of certain of the respective EMEA Debtors of which they are administrators; and (ii) in their own capacities solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the United Kingdom Insolvency Act 1986 and enforcing the obligations of certain other Parties to this Protocol.  Notwithstanding anything to the contrary in this Protocol, any claim, action or proceeding against the Joint Administrators in their personal capacities (and not as agents for any EMEA Debtors) under this Protocol shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English Courts.

  *Section 9.8*  ~~This~~<u>**Except as specifically set forth in this Protocol, this**</u> Protocol is not intended to, and shall not, create rights in any person or entity not a Party hereto.

  *Section 9.9*  Without prejudice to the provisions of Sections 9.10 and 9.20 below, other parties may be added to this Protocol only with the prior unanimous written consent of all Parties hereto, which consent shall not <u>be</u> unreasonably ~~be~~ withheld.

  *Section 9.10*  [The Parties agree that, if within fourteen days of the date hereof, NNSA so requests in writing, they shall each enter into an accession agreement with NNSA whereby NNSA shall accede to this Protocol as if a party to this Protocol from the date hereof (the "<u>NNSA Accession</u>"); <u>provided</u>~~, further~~ that if NNSA Accession does not take place, in the allocation of any Sale Proceeds to the EMEA Debtors pursuant to this Protocol, the amount allocated to NNSA in the Acquisition Agreement as purchase price consideration shall be

---

[34] <u>Is UK Court approving the Protocol?  Compare with HS's suggested edits to Sections 9.12 and 9.14.</u>

deemed to be NNSA's allocation and shall be deducted from any allocation otherwise to be made to the EMEA Debtors.] **[TBD]**

*Section 9.11*        This Protocol may be executed in separate counterparts (which may include counterparts delivered by facsimile transmission) and all of said counterparts taken together shall be deemed to be an original and shall be binding on the ~~party~~**Party** who signed the counterpart and all of which together shall constitute a single agreement.

*Section 9.12*        This Protocol constitutes the complete agreement among the Parties with respect to the subject matter herein, and supersedes all other agreements among the Parties with respect to the subject matter herein. This Protocol may be amended, on no less than 10 Business Days' notice, only by means of a writing signed by all the remaining Parties to this Protocol, which amendments, if material in the judgment of the Parties, must be approved by each of the ~~Canadian Court and the US Court~~**Courts**.

*Section 9.13*        This Protocol does not affect the confidentiality of any information exchanged between or among any of the Parties pursuant to any prior agreements or understandings.

*Section 9.14*        This Protocol shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns from the date of its execution, but is expressly subject to and contingent upon its approval and entry by the ~~US and Canadian~~ Courts.

*Section 9.15*        Each Party to this Protocol shall (a) use commercially reasonable efforts to satisfy the Conditions as soon as possible, taking into account the availability of the respective Courts to address the matters set forth in this Protocol; (b) keep all other Parties reasonably apprised of the progress of the satisfaction of the Conditions and provide such other information regarding the satisfaction of the Conditions as reasonably requested by other Parties; and (c) use commercially reasonable efforts to allow any other Party, which so requests in writing**,** reasonable participation in connection with any proceedings in any Court related to the satisfaction of the Conditions.

*Section 9.16*        Subject to satisfaction of the Conditions, each Party (but, for the avoidance of doubt, not the Joint Administrators in their personal capacities) hereby severally represents and warrants to each other that, as of the date hereof: (a) ~~it~~**such Party** has the power and authority to enter into this Protocol and to carry out its obligations hereunder; (b) the execution of this Protocol, and the consummation of the transactions contemplated herein, have been authorized by all necessary approvals, and no other act or proceeding on its part is necessary to authorize the execution of this Protocol; and (c) this Protocol has been duly executed by ~~it~~**such Party** and constitutes ~~its~~**the** legal, valid and binding obligations **of such Party**.

*Section 9.17*        In the event that any provision of this Protocol shall be illegal, invalid or unenforceable, such provision shall be construed by limiting it in such a way so as to render it legal, valid and enforceable to the maximum extent provided by applicable law, and the legality, validity and enforceability of the remaining provisions shall not in any way be affected or impaired by any illegality, invalidity or unenforceability of any provision. The Parties shall

19

negotiate in good faith with respect to any provision to this Protocol found to be illegal, invalid or unenforceable, in order to agree on a substitute provision giving effect, to the maximum extent possible, to the original intent of such provision.

     *Section 9.18*     Except as specifically set forth in this Protocol, the obligations of each Party hereunder are several, and not joint and several.

     *Section 9.19*     If any of the Parties, the Mediator, **the** Experts, the Affiliates' Representative or the Panel shall have an obligation or deadline imposed pursuant to this Protocol that shall fall on any of a Saturday, Sunday or a national public holiday in any of the United States, Canada or the United Kingdom, such Party shall have until the next Business Day immediately following such day to comply with such deadline or obligation.

     *Section 9.20*     [The Parties agree that, if after the date hereof, any subsidiary of ~~the~~**any** US Debtor commences chapter 11 proceedings in the US Court, then the Parties and such entity shall enter into an accession agreement whereby such entity shall accede to this Protocol as ~~a~~**an** US Debtor.] ~~[To cover potential NGS and Diamondware filings]~~

     *Section 9.21*     The Non-Filed Affiliates hereby **appoint ● as the Affiliates' Representative and** grant the Affiliates' Representative the authority to represent each Non-Filed Affiliate in all matters relating to this Protocol, including, without limitation, the power (a) to agree to any ~~Minimum~~**Partial** Allocation Amount on behalf of the Non-Filed Affiliates, (b) to agree to a fair and equitable allocation of the Sale Proceeds pursuant to Section ~~1.1,~~**1.1 or otherwise,** (c) to amend or waive any provision of this Protocol, (d) to deliver and receive any notices permitted or required under this Protocol, and (e) to perform on behalf of the Non-Filed Affiliates any other act which the Affiliates' Representative deems necessary or desirable in the performance of the Affiliates' Representative's role under this Protocol. Any action taken by the Affiliates' Representative and any agreement or settlement entered into by the Affiliates' Representative on behalf of the Non-Filed Affiliates in connection with the performance of this Protocol shall be binding upon and enforceable against the Non-Filed Affiliates without any need for further ratification by the Non-Filed Affiliates. **In addition, the Non-Filed Affiliates appoint ● and ● as counsel and financial advisor, respectively, to assist the Non-Filed Affiliates.**

20

**Mendoza, Richard**

| | |
|---|---|
| **From:** | Sanjeet Malik [smalik@cgsh.com] |
| **Sent:** | 09 November 2009 06:45 |
| **To:** | 'aleblanc@milbank.com'; Alex MacFarlane; 'annav@nortel.com'; 'apisa@milbank.com'; Qureshi, Abid; Kahn, Brad; 'Brent.R.Beekenkamp@ca.ey.com'; 'bzarnett@goodmans.ca'; Craig B BROD; Botter, David; 'dtay@ogilvyrenault.com'; Dina Zloczower; Hodara, Fred; DAVIES, GAVIN; Giles Boothman; Howard ZELBO; Inna Rozenberg; Jose M Bazan; James L BROMLEY; 'jcarfagnini@goodmans.ca'; Segger, Joanne; Whiteoak, John; 'jpasquariello@goodmans.ca'; 'jstam@ogilvyrenault.com'; Sturm, Joshua; LLOYD, KEVIN; Rowe, Kevin; 'Matthew.Hart@lazard.com'; Michael Wunder; 'mlang@ogilvyrenault.com'; 'Murray.A.McDonald@ca.ey.com'; 'Nortel'; 'Orzyr@bennettjones.com'; Bagon, Paul; 'plook@nortel.com'; Jacobs, Ryan; Pees, Robert; 'SDrymer@ogilvyrenault.com'; Shayne Kukulowicz; GALE, STEPHEN; tkreller@milbank.com; 'ZychK@bennettjones.com'; stenai@ogilvyrenault.com; amark@ogilvyrenault.com; SDrymer@ogilvyrenault.com; mnolan@milbank.com; jharris@milbank.com; Lisa M SCHWEITZER; Matthew.Hart@lazard.com; David.Descoteaux@Lazard.com |
| **Subject:** | NT: Revised Allocation Protocol |
| **Attachments:** | 2134900_1(AP_ Blackline (v5 v. v4)).DOC; 2068820_5(Nortel_ Allocation Protocol).DOC |

Dear All:

Attached is the revised allocation protocol for your review, and a blackline comparison with the version that was circulated on October 19th. Please note that, in the interest of time, this draft is being circulated to you and our client simultaneously, and this draft remains subject to further internal review and review by our client. We look forward to discussing this draft with you during our phone conference on **Tuesday, November 10th**. We will be circulating a dial-in for this call separately.

Regards,
Sanjeet

Sanjeet Malik
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2136 | f: +1 212 225 3999
www.clearygottlieb.com | smalik@cgsh.com

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

THIS DRAFT AGREEMENT HAS BEEN PRODUCED
FOR DISCUSSION AND SETTLEMENT PURPOSES
ONLY AND IS SUBJECT TO THE PROVISIONS OF
RULE 408 OF THE RULES OF EVIDENCE FOR
UNITED STATES COURTS AND MAGISTRATES AND
ANY OTHER SIMILAR APPLICABLE RULES IN ALL
PERTINENT JURISDICTIONS.

*Draft of ~~October 19,~~November 8, 2009*
*Privileged and Confidential*

*~~PLEASE NOTE THAT THIS DRAFT DOES~~*
*~~NOT INCORPORATE AKIN GUMP'S~~*
*~~SUGGESTIONS REGARDING DISCOVERY~~*
*~~PROCEDURES OR OGILVY'S SUGGESTIONS~~*
*~~REGARDING ACCESS TO COMPANY~~*
*~~EMPLOYEES~~*

## PROTOCOL FOR RESOLVING DISPUTES
## CONCERNING ALLOCATION OF SALE PROCEEDS

This Protocol for Resolving Disputes Concerning Allocation of Sale Proceeds, dated as of ●, ~~2009~~ (the "Protocol"), is entered into by and among Nortel Networks Limited ("NNL") and the other entities set forth in Schedule 1 attached hereto, Nortel Networks Inc. ("NNI") and the other entities set forth in Schedule 2 attached hereto, [the Joint Administrators (as defined below) and the entities set forth in Schedule 3 attached hereto (the "EMEA Debtors")][1], certain affiliates of the Debtors (as defined below) set forth in Schedule 4 attached hereto (the "Non-Filed Affiliates")[, the Monitor (as defined below), the Official Committee of Unsecured Creditors appointed in the US Proceedings (as defined below) (the "Creditors' Committee") [and the steering committee members of the ad hoc group of bondholders that have executed confidentiality or non-disclosure agreements with the Canadian Debtors and the US Debtors (each, as defined below) (the "Bondholders' Committee," and along with the Creditors' Committee, the "Committees")][2] (each, a "Party," and collectively, the "Parties"). [The Joint Administrators, in their personal capacity, shall be Party to this Protocol as provided in Section 9.7 and solely for the purposes of obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to the Joint Administrators (as defined below) and references to the Parties shall be construed accordingly.][3]

WHEREAS, on January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC", and together with its affiliates, the "Company" or the "Nortel Group"), NNL and certain of NNC's other Canadian affiliates included in Schedule 1 (collectively, the "Canadian Debtors"), commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and the "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor"); and

WHEREAS, on the Filing Date and on July 14, 2009 (with respect to Nortel Networks (CALA) Inc.), NNI and certain of NNI's United States affiliates included in Schedule 2 (collectively, the "US Debtors" and, together with the Canadian Debtors and the EMEA

---

[1] Whether unfiled subsidiaries of EMEA filed entities will be parties to the Protocol as EMEA Debtors or Non-Filed Affiliates.

[2] TBD: Whether the ~~UCC,~~ Bondholders' Committee~~, Monitor~~ will be ~~parties~~a party to the Protocol or third party beneficiaries? ~~Do the UCC and,~~ Also discuss whether the Bondholders' Committee ~~have~~has the ~~legal capacity~~ability to ~~contract?~~execute submissions to the Panel.

[3] ~~Whether Joint Administrators in their personal capacity have the ability to challenge a Decision of the Panel~~To be reviewed by English counsel in light of JAs' increased obligations in this draft.

1

[New York #2068820 v4~~5~~]

Debtors, the "Debtors") filed petitions in the United States Bankruptcy Court for the District of Delaware (the "US Court") under chapter 11 of title 11 of the United States Code (respectively, the "US Proceedings" and the "Bankruptcy Code"); and

WHEREAS, on the Filing Date, Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel Networks S.A. ("NNSA") and certain of NNUK's affiliates in the Europe, Middle East and Africa ("EMEA") region, including those in Schedule 3 attached hereto, commenced administration proceedings (the "UK Proceedings" and, together with the Canadian Proceedings and the US Proceedings, the "Proceedings") before the High Court of Justice in London, England (the "UK Court" and, together with the Canadian Court and the US Court, the "Courts"), and the UK Court appointed individuals from Ernst & Young LLP (the "UK Administrator"), and, in the case of NNIR only, Ernst & Young Chartered Accountants (the "NNIR Administrator"), as administrators in the UK Proceedings (the UK Administrator and the NNIR Administrator collectively, and including their respective successors, replacements and any subsequent office holders appointed to the relevant EMEA Debtors, the "Joint Administrators"); and

WHEREAS, subsequent to the Filing Date, NNSA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator (the "NNSA Liquidator") and an administrator (the "NNSA Administrator") have been appointed by the Versailles Commercial Court (Docket No. 2009P00492) for NNSA; and

[WHEREAS, NNSA is not a Party to this Protocol, but shall be invited by the Parties to accede to this Protocol as an EMEA Debtor;]⁴ and

WHEREAS, the Debtors and their respective affiliates intend, or have agreed, to sell certain assets of their estates in several transactions, each relating to a particular line of business or portfolio of technologies (each, a "Business") to a third party buyer (each such buyer, a "Buyer"); and

WHEREAS, the Company has provided, or intends to provide, potential Buyers with access to a **data** room (which may be an electronic data room) containing the books and records of the relevant Business and other financial information relating to such Business (the "Data Room**each such electronic data room, an "Asset Sale EDR"**); and

WHEREAS, with respect to each Business, the Debtors and their respective affiliates intend to enter, or have entered, into one or more acquisition agreements and other ancillary agreements (such agreements, with respect to the sale of each Business, collectively the "Acquisition Agreement") with the Buyer to govern the sale of such Business (the "Sale"); and

---

⁴ Given that NNSA has agreed to terminate certain IP rights in connection with Equinox and MEN transactions and in consideration for such termination agreed in writing to accept a right to future proceeds to be allocated pursuant to this Protocol, any reason why NNSA would not join as of the signing date?

WHEREAS, after entering into an Acquisition Agreement in the case where a so called "stalking horse" bidder has been selected, or prior to entering into an Acquisition Agreement in the case where no "stalking horse" bidder has been selected, certain of the Debtors intend to apply, or have applied, to certain of the Courts for orders authorizing such Debtors to establish notice, bidding and sale procedures for the Sale of each Business (the "<u>Bidding Procedures Orders</u>"); and

WHEREAS, after entry of the Bidding Procedures Orders, such Debtors intend to conduct, or have conducted, an auction for the Sale of each Business in accordance with the Bidding Procedures Orders; and

WHEREAS, after conclusion of the auction, certain of the Debtors intend to apply, or have applied, to certain of the Courts for orders approving the Sale of each Business to the relevant Buyer (the "<u>Sale Orders</u>"); and

[WHEREAS, in connection with certain Sales, the relevant Debtors intend to request, or have requested, that the Sale Orders contain procedures for the establishment of one or more escrow accounts (the "<u>Escrow Account</u>") overseen by an independent agent (the "<u>Escrow Agent</u>") for deposit of the proceeds of the Sale (the "<u>Sale Proceeds</u>") pending the allocation thereof in accordance with the provisions of this Protocol (each such Sale, an "<u>In-Scope Sale</u>")];[4] and

WHEREAS, after entry of the Sale Orders and satisfaction or waiver of the conditions to closing set forth in the relevant Acquisition Agreement, the Debtors and their respective affiliates intend to consummate, or have consummated, the Sale of each Business in accordance with the Sale Orders (in each case, a "<u>Closing</u>"); and

WHEREAS, the Debtors and certain Non-Filed Affiliates previously agreed, pursuant to the Interim Funding and Settlement Agreement, dated as of June 9, 2009 (as amended from time to time, the "<u>Interim Funding Agreement</u>"), as soon as reasonably practicable following the execution of such agreement, to negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sales Proceeds, which would provide binding procedures for the allocation of Sales Proceeds where the Selling Debtors (as defined therein) have been unable to reach agreement regarding such allocation; and

WHEREAS, the Parties wish to provide for a mechanism to negotiate the allocation of Sale Proceeds of each In-Scope Sale between and among the Canadian Debtors that are Selling Parties with respect to such In-Scope Sale, if any, (the "<u>Canadian Filed Sellers</u>"), the EMEA Debtors that are Selling Parties with respect to such In-Scope Sale, if any, (the "<u>EMEA Filed Sellers</u>"), the US Debtors that are Selling Parties with respect to such In-Scope Sale, if any, (the "<u>US Filed Sellers</u>") and to the Non-Filed Affiliates that are Selling Parties with respect to such In-Scope Sale, if any, (the "<u>Non-Filed Selling Parties</u>") and to resolve disputes with respect to the allocation of the Sale Proceeds of each In-Scope Sale, where ["<u>Selling Parties</u>",

---

[4] **TBD:  Definition of In-Scope Sale.**

<u>with respect to the US Debtors, the Canadian Debtors and the EMEA Debtors, means the</u> <u>Selling Debtors in connection with such In-Scope Sale (as such term is defined under the</u> <u>Interim Funding Agreement) and, with respect to the Non-Filed Affiliates,</u> refers to those Nortel Group entities that are participating as sellers in the In-Scope Sale or otherwise releasing their intellectual <u>property</u> rights in connection with such In-Scope Sale]; and

WHEREAS, each Party (including the Monitor, the Creditors' Committee and [the Bondholders' Committee]) wishes to participate in the procedures set forth in this Protocol, and has agreed to be bound by this Protocol and any outcome with respect to the Allocation of Sales Proceeds <u>of each In-Scope Sale</u> pursuant to a Decision or a Supplementary Decision ~~by~~<u>of</u> the Panel (each, as defined below); and

[WHEREAS, the Non-Filed Affiliates have appointed ● <u>as</u> their representative, ~~who~~<u>which</u> shall represent the Non-Filed Affiliates in connection with the negotiations and other procedures with respect to the Allocation of Sale Proceeds of each In-Scope Sale under this Protocol ("<u>Affiliates' Representative</u>"), and the Non-Filed Affiliates have also appointed an independent financial advisor and an independent counsel to assist the Affiliates' Representative.][5]

NOW THEREFORE, IT IS HEREBY CONSENTED TO, STIPULATED, AGREED AND ORDERED THAT:

## ARTICLE I
## INITIAL NEGOTIATIONS

*Section 1.1* During the period beginning as early as the execution of ~~any~~<u>each</u> Acquisition Agreement (such date, the "<u>Relevant Signing Date</u>") but commencing no later than the consummation of ~~any~~<u>the</u> In-Scope Sale<u> that is the subject of such Acquisition Agreement</u> (such date, the "<u>Relevant Closing Date</u>"), the Negotiating Parties (as defined below) shall use commercially reasonable efforts to negotiate in good faith a fair and equitable allocation of the Sale Proceeds of ~~each~~<u>such</u> In-Scope Sale among the Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers and the Non-Filed Selling Parties, where the "<u>Negotiating</u> <u>Parties</u>" means [NNL (on behalf of Canadian Filed Sellers), NNI (on behalf of US Filed Sellers), ~~NNUK~~<u>the [Joint Administrators]</u>[6] (on behalf of EMEA Filed Sellers), the Affiliates' Representative (on behalf of Non-~~Affiliates~~<u> Filed</u> Selling Parties), the Monitor, the Creditors' Committee and the Bondholders' Committee.][6̶7] The Non-Filed ~~Affiliates~~<u>Selling Parties</u> shall be represented in such negotiations and all other procedures under this Protocol by the Affiliates' Representative.~~ [At any time prior to the First DR Referral Date (as defined below), the~~

---

[5] Consensual settlement with Non-Filed Affiliates to be discussed.

[6] <u>**TBD: Please confirm that the proposal to replace NNUK with Joint Administrators does not contemplate the Joint Administrators acting separately. In other words, please confirm that the UK Administrator and the NN Ireland Administrator will not have a right to act separately.**</u>

[6̶7] Consider whether the definition of Negotiating Parties should be dynamic and change with each sale. For instance, for the purposes of CDMA sale, should the definition of Negotiating Parties exclude ~~NNUK~~<u>the Joint Administrators</u>?

4

~~Negotiating Parties may elect to use the services of a mediator, on terms mutually agreed by the Negotiating Parties, to reach an agreement as to the allocation of Sale Proceeds of any In-Scope Sale (the "Mediator"), and each Negotiating Party hereby agrees to fully cooperate, acting in good faith, with such Mediator.]~~[7]

Section 1.2      If the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of an In-Scope Sale prior to the [one-hundredth (100th)] calendar day immediately following the later of (x) the Relevant Closing Date or (y) the date when all Conditions (as defined below) have been satisfied (the "First DR Referral Date"), the dispute as to the allocation of the relevant Sale Proceeds among the Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers and the Non-Filed Selling Parties shall be automatically referred to the Panel (as defined below) pursuant to this Protocol and the Panel shall determine a fair and equitable allocation of the Sale Proceeds of such In-Scope Sale among the Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers and the Non-Filed Selling Parties on the basis of such Selling Parties' relative contribution, if any, ~~to~~of the assets (tangible and intangible) and rights transferred or relinquished and liabilities assumed in the particular In-Scope Sale (a "Basic Allocation Dispute").[8] **[Each Basic Allocation Dispute shall be determined without regard to, or adjustment for, any other rights, entitlements, set offs, or adjustments of any nature asserted by or on behalf of any Selling Party against another Selling Party, including, without limiting the generality of the foregoing, claims of beneficial ownership or equitable interests in and to the assets included in the Business that is the subject of an In-Scope Sale (collectively, "Inter-Party Claims").]**[9]  The Parties hereby agree that the deadlines imposed by this Section 1.2 may be modified by mutual written agreement among the Negotiating Parties.

Section 1.3      Upon the automatic referral of the Basic Allocation Dispute to the Panel as contemplated by Section 1.2, NNI shall be responsible for promptly sending a notice to the Panel and the other Negotiating Parties, indicating in such notice (a) that pursuant to the terms of Section 1.2 of this Protocol, the Basic Allocation Dispute has been automatically referred to the Panel, and (b) the First DR Referral Date.  If for any reason NNI shall fail to send such notification to the Panel **within [two] days (excluding Saturdays, Sundays and national public holidays in any of the United States, Canada or the United Kingdom) (each a "Business Day") of the automatic referral of the Basic Allocation Dispute to the Panel**, any other Negotiating Party may undertake to send such notice to the Panel and the other Negotiating Parties.

Section 1.4      ~~[Subject to the provisions of any applicable Side Agreement (as defined below), at the Closing of any In-Scope Sale, the Sale Proceeds from such In-Scope Sale shall be placed in an Escrow Account.  For the purposes of this Protocol, "Side Agreement" means an~~

---

[7] ~~Consider whether all Negotiating Parties need to agree to the appointment of a Mediator.~~

[8] Prior to signing of this Protocol (by which time the timing of the CDMA and Equinox closing should be known to the Parties), this Protocol will be revised to add language to accommodate EMEA's request that the Equinox dispute be the first Basic Allocation Dispute to be handled by the Panel so long as it does not unreasonably delay the allocation for CDMA, which is expected to close earlier than Equinox.

[9] **TBD**

5

~~agreement entered into by, inter alia, all or the principal Selling Parties in the Sale of a particular Business for the purpose of facilitating the completion of such Sale and maximizing the value arising from such Sale for their respective stakeholders.~~]⁹  The Negotiating Parties, in their sole discretion, may agree to a partial allocation of the Sale Proceeds of an In-Scope Sale (each such partial allocation, **a** "Partial Allocation Amount").]**¹⁰**  If the Negotiating Parties agree to a Partial Allocation Amount, such Partial Allocation Amount shall be released from the Escrow Account and distributed to ~~the~~**one or more** Selling Parties immediately following the later of (x) the Closing of the In-Scope Sale and (y) the date when the Negotiating Parties agree to such Partial Allocation Amount; and any remaining amounts shall remain in the Escrow Account until released from the Escrow Account in accordance with the provisions of this Protocol.

## ARTICLE II
## REFERRAL OF ALLOCATION DISPUTES TO THE PANEL

*Section 2.1*      As contemplated by Section 1.2 of this Protocol, a Basic Allocation Dispute shall be automatically referred to a dispute resolution panel constituted in accordance with Sections 2.2, 2.3 and 2.4 (the "Panel").  [In addition, the Parties hereby agree that the Panel may decide any other dispute, controversy or claims of a Selling Party that the Panel considers must be addressed in order to finally determine the Allocation of the Sale Proceeds of a given In-Scope Sale in accordance with this Protocol (each such dispute, controversy or claim, an "Other Dispute" and together with a Basic Allocation Dispute, a "Dispute"), provided that the resolution of any Other Dispute shall be binding on the Parties solely for the purposes of the determination of the relevant Allocation.]**¹¹**

*Section 2.2*      The members of the Panel shall be as follows:  ● (the "Category A Member"), ● (the "Category B Member") and ● (the "Category C Member").  [For the purposes of administrative convenience, the Panel may designate one of its members as the chairperson of the Panel with regards to a given Dispute ("Relevant Chairperson").  The Relevant Chairperson shall have no special powers or authority to act ~~except as expressly set forth in this Protocol.~~]¹⁰**unless otherwise agreed by other members of the Panel.**

*Section 2.3*      [Each member of the Panel shall be and remain at all times impartial and independent of the Parties.]¹¹ **and Selling Parties.**]**¹²**  No member of the Panel shall act as an advocate of any Party.  No member, whether before or after appointment to the Panel, shall advise any Party on the merits or outcome of a Dispute.  Each Party hereby agrees that such

---

⁹ ~~Consider deleting these sentences.  The issue of whether Sale Proceeds are to be escrowed is agreed by the parties before the Protocol kicks in (consider the case of CDMA or Equinox sales).~~

**¹⁰ Compare this language with Section 12.d. of the IFSA.**

**¹¹ Concept of Other Dispute to be reviewed after resolution of the issue relating to assertion of beneficial claims to IP being transferred by Canadian Debtors.**

¹⁰ ~~Please note that certain parties would prefer to retain the concept of chairperson.~~

¹¹**¹²** Parties to discuss whether each Panel member must **make disclosures as required to** satisfy the "disinterestedness" standard under the Bankruptcy Code.  **Will there be a requirement to update such disclosures on a periodic basis?**

Party shall communicate with the Panel only as expressly permitted by this Protocol as, in the case of exceptional circumstances, in writing, provided that such~~any~~ written communication must be served on the Panel and the Negotiating Parties simultaneously.

Section 2.4    If any member of the Panel is unable or unwilling to serve after receiving notice of the referral of any matter to the Panel or at any time thereafter, such member shall be replaced by another individual from the names set forth on Exhibit A attached hereto **at the sole discretion of the Panel**, provided that such replacement must belong to the same category as the member that is being replaced.[12]

Section 2.5    In connection with a particular In-Scope Sale, all costs and expenses of the Mediator (if any) shall be paid from the relevant Escrow Account before transfer of Sale Proceeds in accordance with the terms of this Protocol and the relevant escrow agreement. Each of the Negotiating Parties (other than the Affiliates' Representative) shall bear its respective costs and expenses, including attorneys' fees, associated with the preparation and presentation of its case to the Panel and any other costs and expenses incurred by such Negotiating Party in connection with the proceedings pursuant to this Protocol. The Panel shall specify in each Decision the total amount of the costs and other expenses of the Panel in connection with such Decision (the "Panel Costs"), and the proportions in which the US Filed Sellers, the Canadian Filed Sellers, the EMEA Filed Sellers and the Non-Filed Selling Parties shall bear such Panel Costs. The costs and expenses of the Affiliates' Representative and the pro rata portion of the Panel Costs to be paid by Non-Filed Selling Parties shall be paid from the Sale Proceeds allocated to the Non-Filed Selling Parties. The incremental costs and other expenses of the Panel in connection with a Supplementary Decision (as defined below) shall be paid from the Sale Proceeds allocated to the Selling Parties covered by such Supplementary Decision.

Section 2.6    In rendering any Decision and the Allocation in such Decision, the Panel shall (i) treat as final and binding any Partial Allocation Amount, and (ii) not be bound to adopt or follow [(x) any allocation agreed with the Buyer in or pursuant to the relevant Acquisition Agreement,][13] or (y) any previous Decision or Allocation of the Panel relating to another In-Scope Sale. In addition, after the Panel has entered a Decision or a Supplementary Decision, the Panel shall be barred from modifying such Decision or Supplementary Decision, as the case may be, other than to address a manifest**correct a clerical, computational or typographical** error **contained** in such**the** Decision or Supplementary Decision. **If the Panel**

---

[12] ~~This provision assumes that Exhibit A will have three additional names and each name will belong to one of the three Categories A, B or C. Consider whether Exhibit A should have six names instead—in other words, whether there should be two back-ups for each member of the Panel. If there is more than one alternate, this provision to specify how a given alternate will be selected from the various options (recommend simply going down the list for each category). Also, if vacancy occurs during or after the Hearing, what should be the remedy—re-start hearing or replacement panel member has the option to request additional information from other Panel members as the Negotiating Parties or convene a supplementary hearing. HS would also like the parties to consider taking out an insurance policy wrt Panel members.~~

[13] Tax counsel to ~~review this.~~ **provide rider to carve-out an exception to this rule b/c** Nortel has agreed to allocate at least the book value to each tangible asset and the Panel has to respect this allocation principle. ~~Consider whether parties may offer the Buyer's allocation as evidence to the Panel, or any Court statements as to allocation as evidence to the Panel.~~

7

<u>makes such a correction on its own initiative, it shall do so within 30 days of the date of the
Decision or Supplementary Decision, as the case may be.  Any application by a Party for
such a correction must be made within 30 days of the date of the Decision or
Supplementary Decision, as the case may be.</u>

~~Section 2.7            It is further understood and agreed that it is not the intention of the
Parties that submissions to the Panel (including Written Submissions and Oral Argument (each
as defined below)) of any Party be used to reopen or seek reconsideration of or compensation or
credit for any matter set forth in Schedule ● to this Protocol, provided that the Negotiating
Parties, without approval of the Courts, may mutually agree to add new matters to Schedule ●.~~

**Section 2.7**        ~~Section 2.8 None~~**To the maximum extent permitted by applicable
law, none** of the members of the Panel or any expert appointed by the Panel shall be liable to any
Party or any third party howsoever for any act or omission in connection with any proceedings
under this Protocol. ~~[The Selling Parties for each In-Scope Sale hereby agree to hold harmless
each member of the Panel and any expert appointed by the Panel for any act or omission of such
person in connection with any proceedings under this Protocol in connection with such In-Scope
Sale in proportion to each Selling Party's respective allocation under the applicable Decision or
Supplementary Decision to which such act or omission relates.]~~[14]

**Section 2.8**        ~~Section 2.9 The~~ place of ~~all proceedings pursuant to this
Protocol~~**arbitration** shall be New York, New York.  ~~All proceedings pursuant to this
Protocol~~**Other than as expressly specified otherwise in this Protocol, all proceedings
pursuant to this Protocol, including, but not limited to, Administrative Meetings, an
Evidentiary Hearing and the Oral Argument, shall be held in New York, New York and**
shall be conducted in the English language.[15]

<div align="center">

### ARTICLE III
### ADMINISTRATIVE MEETINGS

</div>

**Section 3.1**        Within ● (●) calendar days of a Basic Allocation Dispute being referred
to the Panel, the Negotiating Parties and the Panel shall hold a meeting to discuss any
administrative, procedural or other relevant matters ~~as determined by the Panel or requested by
any Negotiating Party~~ (the "**Administrative Meeting**"), which shall be convened by the Panel.
Each of the Negotiating Parties must be given (i) at least seven (7) calendar days' notice prior to
the Administrative Meeting and (ii) the opportunity to present at the Administrative Meeting.
The Administrative Meeting shall be held at a time and in a location, as determined by the Panel,
such that each Negotiating Party and/or its counsel shall be able to participate by telephone,
videoconference or in person.[16] At the Administrative Meeting and at any other proceeding
before the Panel, each of the Negotiating Parties shall be entitled to be represented by counsel.

---

[14] ~~Consider deleting.~~

[15] ~~We are discussing with our arbitration colleagues the validity or enforceability restrictions of the Protocol or any
Decision, if any, under NY law.~~

[16] ~~Parties to confirm that these mtgs will be held in NYC?~~

<div align="center">

8

</div>

Section 3.2      Except as specifically provided in this Protocol, the Panel {may/shall}, after taking into account the facts and circumstances of the relevant In-Scope Sale, the multiple jurisdictions involved in such In-Scope Sale or the applicable Dispute and, the different types of Nortel Group entities under the Nortel Group's transfer pricing regime which was in effect prior to the Filing Date and such other factors as the Panel considers relevant, establish the procedure and manner in which the resolution of the Basic Allocation Dispute or otherOther Dispute, as the case may be, shall be conducted, including, without limitation, (i) the due dates for Written Submissions, (ii) the timing of the identification of Experts (as defined below), the submission of Expert Reports (as defined below), the identification of witnesses and the submission of Witness Statements (as defined below), (iii) the time, place, length and number of oral arguments for each Negotiating Party (the number of oral arguments for a given Negotiating Party multiplied by the length of each such oral argument, the "Oral Argument Duration") and (iiiiv) other administrative, procedural, or other relevant matters such as the scheduling of the Evidentiary Hearings (as defined below) and subsequent Administrative Meetings (if necessary), [provided that the right of the Non-Filed Selling Parties to participate and present their Interests (as defined below and as determined by the Panel) to the Panel shall reflect, to the extent reasonably practicable and determinable under the circumstances, the Panel's assessment of the relative contribution of the assets (tangible and intangible) and the rights transferred or relinquished by and liabilities assumed from the Non-Filed Selling Parties in comparison to other Selling Parties with regards to a given Sale.][17][14]

Section 3.3      If any Negotiating Party determines that there is an actual or potential conflict with respect to the Dispute among any of the Respective Selling Parties (as such term is defined in Exhibit B attached hereto) of such Negotiating Party or that such Negotiating Party represents a diversity of interests with regard to such Negotiating Party's Respective Selling Parties (each such interest, an "Interest"), such Negotiating Party may petition in writing the Panel to further modify the procedures, including, without limitation, by increasing the Oral Argument Duration allocated to such Negotiating Party, [or providing separate representation, to address such potential conflict of interest or diversity of interests,][18] provided that any other Negotiating Party shall be free to make submissions as to the extent and scope of any additional representation rights; and provided, further that in the case of NNUK,Joint Administrators or the Monitor, their respective petitions to the Panel to represent up to three separate Interests shall not be opposed by any other Negotiating Party.

Section 3.4      Nothing in the preceding section shall affect the right of the Panel to call other meetings to discuss administrative, procedural or other relevant matters after the initial Administrative Meeting. Each such meeting shall constitute a separate Administrative Meeting for the purposes of this Protocol and must comply with the requirements set forth in Section 3.1 of this Protocol.

---

[17][14] Due Process concerns to be discussed.

[18] TBD

9

## ARTICLE IV
## WRITTEN SUBMISSION BY THE NEGOTIATING PARTIES

*Section 4.1*          Each of the following ~~Parties~~[P]arties may submit a written statement to the Panel, including, without limitation, Party-Appointed Expert Reports (as defined below) and written Witness Statements (as defined below), of such ~~Party~~[P]arty's one or more Interests (as permitted by the Panel pursuant to Section 3.3) with regards to the Allocation of the relevant Sale Proceeds to the Panel (such submission, the "First Round Submission"):  NNL (on behalf of Canadian Filed Sellers), NNI (on behalf of US Filed Sellers), ~~NNUK~~**the Joint Administrators** (on behalf of EMEA Filed Sellers), the Affiliates' Representative (on behalf of Non-Filed Selling Parties), the Monitor, the Creditors' Committee and the Bondholders' Committee.

*Section 4.2*          Each of the [Negotiating Parties][19]15 in its First Round Submission shall present its methodology for the allocation of the relevant Sale Proceeds (the "Presented Position").  In the case of a Negotiating Party that represents more than one Interest (as determined by the Panel), such Negotiating Party may offer more than one Presented Position to the Panel.  {The Presented Positions may also address any allocation or allocation methodology adopted or employed by any Buyer.}

*Section 4.3*     A Negotiating Party may rely**, in its sole discretion,** on one or more experts as a means of evidence on specific issues (each such expert, a "Party-Appointed Expert")~~, and a~~.  **A** report by ~~such~~**any** Party-Appointed Expert ~~must contain~~**(each such report, a "Party-Appointed Expert Report") shall include: (i)** a description of the qualifications of such expert, **(ii) a description of the scope of work or mandate of such expert together with a copy of the engagement letter of such expert, (iii) a description of the compensation paid or to be paid to such expert, (iv) a description of any relationship on the part of such expert within the two years immediately preceding the date that such expert was first contacted with respect to the engagement that could reasonably be considered relevant to an assessment of the expert's independence or objectivity, (v) a description of the scope of review conducted by such expert (including a list of the materials and other information reviewed and relied upon by such expert, the identity of all current or former employees, officers or directors of Nortel Group entities who such expert interviewed in connection with the preparation of such report, and any limitation on the scope of such review and the implications of such limitation on the expert's opinions or conclusions), (vi)** a statement of the facts on which such expert is basing its opinions and conclusions, ~~and such expert's opinions and conclusions, including, without limitation, a description of the method, evidence and information used in arriving at the conclusions (each such report, a "Party-Appointed Expert Report").~~[20] **(vii) the allocation approach and methodologies selected by such expert and the reasons for selecting the particular allocation approach and methodology or methodologies, (viii) the key assumptions made by such expert, (ix) such expert's findings, opinions and**

---

[19]15 If the definition of Negotiating Party is dynamic, then consider adding a different term to ensure that each Selling Party has the right to at least make an initial written submission.

[20] ~~Consider whether we should incorporate or copy provisions from Article 5 of IBA Rules of Evidence.  An alternative is to provide that the Panel may take guidance from the IBA Rules of Evidence but is not bound by such rules.  Another alternative is to leave this issue open for the Panel to determine.~~

**conclusions, and (x) any qualifications or limitations to which such expert's findings, opinions or conclusions are subject.**

*Section 4.4*    A Negotiating Party may rely on a written statement by any person, including, without limitation, any Party's officer, employee or other representative (the Parties hereby acknowledge that certain individuals occupy multiple positions in the Company). Such witness statement must contain a full and detailed description of the facts, and the source of the witness's information as to those facts, sufficient to serve as that witness's evidence in the matter in dispute (each such statement, a "Witness Statement").[21]

*Section 4.5*    Each of the Negotiating Parties shall provide a First Round Submission to the Panel, with a copy to all other Negotiating Parties, no later than the deadline established by the Panel for such submission (the "First Round Submission Deadline"). The First Round Submission of each Negotiating Party shall not be subject to any page limits.

*Section 4.6*    Each Negotiating Party, in its sole discretion, may opt to submit a second ~~round of~~ written ~~submissions~~**submission** to the Panel, with a copy to all other Negotiating Parties, no later than the deadline established by the Panel for such submission, which shall be at least ● calendar days after the First Round Submission Deadline (respectively, the "Second Round Submission" and the "Second Round Submission Deadline"). The Second Round Submission of each Negotiating Party shall not be subject to any page limits, *provided* that the sole purpose of a Second Round Submission shall be to **(a)** respond to the First Round Submissions of other Negotiating Parties with regards to each Interest of the relevant Negotiating Party.[22] **and (b) present additional information or arguments in support of such Negotiating Party's Presented Position(s) based on Examination Testimony (as defined below).**[16] For the purposes of this Protocol, the First Round Submission and the Second Round Submission and any other written submissions by any Negotiating Party to the Panel shall be collectively referred to as the "Written Submissions."

*Section 4.7*    ~~If a Negotiating Party or its representative fails to (a) attend or participate in any Administrative Hearing or Evidentiary Hearing (as defined below), (b) make the Written Submissions within the time established by the Panel without showing sufficient cause for such failure, as determined by the Panel, or (c) attend or present its Oral Argument, the Panel may nevertheless proceed with the resolution of the Dispute and determine the Allocation of relevant Sale Proceeds.~~**Each Negotiating Party, in its sole discretion, may opt to submit one or more reports prepared by their Party-Appointed Expert to respond to Party-Appointed Expert Reports submitted by the other Negotiating Parties (each such report, a "Rebuttal Expert Report").**[17]

---

[21] ~~Consider whether we should incorporate or copy provisions from Article 4 of IBA Rules of Evidence. Access to Company's employees as witnesses to be further discussed. See Ogilvy's suggestion.~~

[22][16] ~~TBD: Whether Second Round Submission may include Experts Reports and Witness Statements.~~**Consider whether other Negotiating Parties should be granted an opportunity to respond to these new arguments / information?**

[17] **Parties to confirm that the intention is to introduce any new experts to provide rebuttals.**

11

**ARTICLE V**
**ACCESS TO INFORMATION**[23]

*Section 5.1* Commencing as early as the start of the negotiations for any Sale that parties anticipate to fall within the scope of this Protocol but in any event no later than the date of entry into the Acquisition Agreement, each Party shall have equal access to the ~~Data Room until ● [TBD]~~.relevant Asset Sale EDR. **Upon the later of (x) entry into the Acquisition Agreement or (y) ● days from the satisfaction of all Conditions (as defined below), the Company shall establish an electronic data room that shall contain the following information: (a) all documents available in the relevant Asset Sale EDR and (b) additional documents as requested by any Negotiating Party pursuant to a Data Request (as defined below) issued in accordance Section 5.2 of this Protocol (such electronic data room, a "Data Room"). Upon establishment of a Data Room, each Party shall have equal access to the Data Room.**

*Section 5.2* Any [Negotiating] Party may, following the ~~entry~~**execution** of the Acquisition Agreement, send a written request to any Nortel Group entity, with a copy to all Negotiating Parties, for access to ~~information~~[pre-existing] documents concerning such Nortel Group entity ~~or in~~ **the** possession of such Nortel Group entity not contained in the ~~Data Room~~**relevant Asset Sale EDR** that may be reasonably relevant to resolution of any Dispute **or Supplementary Dispute, as the case may be,** in respect of an ~~In-scope~~**Scope** Sale (~~the~~**a** "Data Request"). The relevant Nortel Group entity shall undertake commercially reasonable efforts to make such ~~information~~**documents** available ~~[(to the extent such information exists or is readily obtainable)]~~[24] in the Data Room ~~to each [Negotiating] Party~~ as soon as reasonably practicable.

*Section 5.3* ~~Any Party may make a Data Request in connection with a Dispute until ● [TBD].~~**Each Negotiating Party shall be permitted the same reasonable access to employees of NNC, NNL, and their affiliates, including the Debtors and the Non-Filed Affiliates (each an "Employee"), for purposes of obtaining information relevant to a Dispute and having the Employee provide a Witness Statement. To enable an Employee to prepare for an interview, the Negotiating Party requesting such an interview shall deliver to the Employee, reasonably in advance of such an interview, a list of topics or subject matters which the requesting Negotiating Party intends to cover with the Employee together with a list of information, if any, that the requesting Negotiating Party requests the Employee provide in writing. Any written information provided by such Employee in response to a request from a Negotiating Party shall be made available in the Data Room as soon as reasonably practicable after it has been so provided. Interviews conducted pursuant to this Section 5.3 with Employees shall be expressly identified as being for such purpose and shall be separate from any discussions for the purpose of or in furtherance of a negotiated settlement of a Dispute.**

*Section 5.4* **It is the intention of the Parties that each Employee will use its reasonable best efforts to assist any Negotiating Party that seeks assistance of such**

---

[23] ~~See cover email to Ogilvy's suggestions to address access to Company employees.~~

[24] ~~Is this necessary given the commercially reasonable efforts standard?~~

Employee.  The Parties, however, acknowledge and recognize that (i) Employees have a corporate job function to perform with priorities that must be accommodated and (ii) each Employee's available time must be equitably shared with all Negotiating Parties to the Dispute or Supplementary Dispute.  Each Negotiating Party shall use its reasonable best efforts to ensure that Employees within its control provide the assistance requested of them by any Negotiating Party consistent with the considerations mentioned herein.

    *Section 5.5*    [Prior to the First DR Referral Date for any Dispute, any Negotiating Party may serve upon any other Negotiating Party a list of written questions which the requesting Negotiating Party determines to be relevant to such Dispute (each a "Questionnaire").  A Negotiating Party receiving a Questionnaire shall respond to such Questionnaire within [15] calendar days, which response shall be made available simultaneously to all Negotiating Parties.][18]

    *Section 5.6*    A Witness Statement shall be filed for each individual that a Negotiating Party will call as a witness at an Evidentiary Hearing and, if another Negotiating Party requests, such individual shall be made available for a pre-hearing examination under oath to take place following the First Round Submissions but no later than [●] days before the commencement of the Evidentiary Hearing.[19]  A Negotiating Party may also conduct additional examinations under oath of any other Employee of another Party on either the consent of the [Negotiating Parties] or, failing such consent, if the Panel concludes that it would be unfair to require the Negotiating Party requesting the examination to proceed to the Evidentiary Hearing without having conducted such examination.  Each examination will be held at the location of the relevant witness unless otherwise agreed to by the Negotiating Parties.  Each Negotiating Party may attend an examination and may ask questions at such examination regardless of whether such Negotiating Party requested the examination of the witness.

    *Section 5.7*    Each Negotiating Party shall use its reasonable best efforts to make available any Employee within its control for examinations pursuant to Section 5.6 or for the Evidentiary Hearing if they may be properly called pursuant to Section 6.● of this Protocol as a non-expert witness for such Evidentiary Hearing.

    *Section 5.8*    Each Expert that a Negotiating Party intends to present at an Evidentiary Hearing, if requested by another Negotiating Party, must be made available for an examination under oath no later than ● days before the commencement of the Evidentiary Hearing.  Such examination will be conducted in the manner described in Section 5.6 herein.

    *Section 5.9*    Testimony from an Examination ("Examination Testimony") shall be admissible at an Evidentiary Hearing if (i) the witness giving such Examination Testimony is unavailable to testify at the Evidentiary Hearing, or (ii) agreed upon by all of the Negotiating Parties.  Where a witness will testify at an Evidentiary Hearing, such witness's

---

[18] Parties to discuss further.  This seems very broad.

[19] Parties to consider whether this should be tied to the Second Round Submission Deadline.

Examination Testimony shall not be admissible except for the purpose of impeaching such witness's live testimony at the Evidentiary Hearing.

**Section 5.10**   All disagreements or controversies arising from or related to access to information and pre-hearing examinations under oath provided for under this Protocol including, but not limited to, any disagreements related to the Data Room, the scope and reasonableness of questions on examinations, Witness Statements and Experts Reports (each, a "Discovery Matter") shall be referred to the Panel for resolution, which resolution shall be determined by a majority of the Panel and shall be final and binding upon the Parties.  The procedure for resolution of a Discovery Matter shall be left to the discretion of the Panel.

<div align="center">

ARTICLE VI
EVIDENTIARY HEARING; ORAL ARGUMENT

</div>

*Section 6.1*   ~~Upon~~**If any Negotiating Party so requests within 10 Business Days of the** expiration of the deadline to make Second Round Submissions, ~~any Negotiating Party may request~~ the Panel ~~to~~**shall** schedule a hearing at which the Panel shall receive oral evidence (such hearing, whether or not held on consecutive days, an "Evidentiary Hearing").[25]

**Section 6.2**   **Each Negotiating Party may present oral testimony from (a) an expert appointed by such Negotiating Party or (b) a non-expert witness who has submitted a Witness Statement and the Negotiating Party has given prior written notice to all other Negotiating Parties, in a timely manner and in accordance with any deadline established by the Panel for such notification, that such witness shall be called to provide evidence during an Evidentiary Hearing.  Following direct testimony by a witness, any other Negotiating Party may question the witness in an order to be determined by the Panel.  The Negotiating Party that initially presented the witness shall subsequently have the opportunity to ask additional questions raised in the other Negotiating Parties' questioning.**

*Section 6.3*   ~~Section 6.2~~ Evidence from proceedings held in connection with the resolution of another Dispute under this Protocol, including, without limitation, evidence from a prior Evidentiary Hearing, Administrative Meeting, Written Submission, Witness Statement, and Expert Report (as defined below) for a given In-Scope Sale ("Prior Evidence") shall be admissible in the ~~Evidentiary Hearings~~**proceedings** for subsequent In-Scope Sales, unless on motion by any Negotiating Party, the Panel decides that the Prior Evidence shall not be admitted or otherwise limits the admissibility of the Prior Evidence, provided that each Negotiating Party shall have the right to further re-direct and cross-examine such Prior Evidence.[26]

*Section 6.4*   ~~Section 6.3~~ The Panel shall hold one or more proceedings where each of the Negotiating Parties may orally present arguments in favor of their Presented Positions (the "Oral Argument").

---

[25] ~~Consider whether we should incorporate or copy provisions from Articles 8 and 9 of IBA Rules of Evidence.~~

[26] ~~TBD: What happens if such Prior Evidence cannot be further cross-examined (e.g., death of a prior witness)?~~

<div align="center">14</div>

**Section 6.5** ~~Section 6.4~~ Oral Argument shall be held at a time and place specified by the Panel, but in no event before ● (●) calendar days or after ● (●) calendar days of the Second Round Submission Deadline. Oral Argument shall be held in person or by videoconference, as decided by the Panel. **For the avoidance of doubt, Evidentiary Hearings and Oral Arguments may take place in the same session, as determined by the Panel.**

<div align="center">

**ARTICLE VII**
**THE DECISION OF THE PANEL**

</div>

*Section 7.1*     The Panel shall render a written decision (the "Decision") as soon as reasonably practicable after the **completion of the** last Oral Argument **in the particular Dispute**. Each Decision, Supplementary Decision ~~(as defined below)~~ and any other decision of the Panel shall be made by at least majority of the members of the Panel.

*Section 7.2*     The Decision shall contain: (a) the percentage, if any, (rounded to ~~{four}~~ decimal points) of the Sale Proceeds of a given In-Scope Sale to be allocated to the Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers and the Non-Filed Selling Parties (an "Allocation"); and (b) instructions to the Escrow Agent to distribute the relevant Sale Proceeds to NNL (on behalf of the Canadian Filed Sellers), NNI (on behalf of the US Filed Sellers), ~~NNUK~~**the Joint Administrators** (on behalf of the EMEA Filed Sellers) and to the Non-Filed Selling Parties in accordance with the applicable Allocation.[27 20] Upon the written request of NNL, NNUK, NNI or Affiliates' Representative, as the case may be, the Panel shall issue a supplementary decision upon the issuance of the Decision containing the percentage if any, (rounded to ~~{four}~~ decimal points) of the **applicable Allocation of the** Sale Proceeds of such In-Scope Sale to be allocated ~~to~~**within** each of the Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers or the Non-Filed Selling Parties, respectively (each such supplementary decision, a "Supplementary Decision").

*Section 7.3*     Each Decision, Supplementary Decision and any other decision of the Panel shall be made in writing and shall be signed and authenticated by ● ~~[name~~**one member** of ~~individual]~~ **the Panel** for and on behalf of the Panel ~~(the "Certification Agent"). If the Certification Agent is unable or unwilling to perform its duties under this Protocol, the Panel shall appoint a replacement Certification Agent.~~ **.** [Any Decision or Supplementary Decision, in the sole discretion of the Panel, may state the reasons upon which such Decision or Supplementary Decision, as the case may be, is based, provided that such Decision or Supplementary Decision, as the case may be, shall not include any dissenting reasons.][28 21]

*Section 7.4*     In rendering a Decision**, or Supplementary Decision,** and an Allocation contained in such Decision, **or Supplementary Decision,** the Panel shall not be bound (a) to select one of the Presented Positions or (b) by the rules, provisions or administrative practices of any particular national, provincial, state or other law or legal system or government

---

[27 20] How will the aggregate distributions to each estate be held? This question is even more complicated for the case of Non-Filed Selling Parties. After this has been resolved, we need to re-visit Section 7.9 as this provision (as drafted) does not cover Supplementary Decision.

[28 21] Parties to discuss further.

<div align="center">15</div>

agency or the **principles or** standards of any particular organization or association (each such rule, provision ~~or,~~ administrative practice, **principles or standards**, an "Allocation Rule"), provided that the Panel may, in its sole discretion, base a Decision, an Allocation or a Supplementary Decision or any element thereof upon one or more Allocation Rules.

*Section 7.5*    If the Negotiating Parties agree at any point in time prior to the relevant Decision as to a Partial Allocation Amount **in respect** of the ~~relevant~~ Sale Proceeds **of a particular In-Scope Sale**, then the Panel shall render a Decision only with respect to the allocation of the remaining portion of the ~~such~~ Sale Proceeds. [If the relevant Selling Parties agree at any point in time prior to the relevant Supplementary Decision as to the Allocation of any portion of the relevant Sale Proceeds allocated to such Selling Party pursuant to the applicable Decision, then the Panel shall render a Supplementary Decision only with respect to the allocation of the remaining portion of the Sale Proceeds allocated to such Selling Parties pursuant to the applicable Decision.]

*Section 7.6*    ~~Although~~**The Panel and the Negotiating Parties shall seek to minimize the use of any expert appointed by the Panel, proivded that in exceptional circumstances,** the Panel may, upon consultation with the Negotiating Parties, appoint one or more experts to report to the Panel on specific issues designated by the Panel (each such expert, a "Panel-Appointed Expert" and together with Party-Appointed Expert, an "Expert")~~, the Panel and the Negotiating Parties shall seek to minimize the use of such Panel-Appointed Experts~~. The Panel shall establish, upon consultation with the Negotiating Parties, the terms of reference for any Panel-Appointed Expert. Each Panel-Appointed Expert shall report in writing to the Panel, and such report must ~~describe the expert's qualifications, the method, evidence and information used in arriving at the conclusions~~**contain the information detailed in Section 4.3** ("Panel-Appointed Expert Report", and together with Party-Appointed Expert Report **and Rebuttal Expert Report**, an "Expert Report"). A copy of the final terms of reference and the written report of a Panel-Appointed Expert shall be sent by the Panel to **each of** the **Negotiating** Parties.[29]

*Section 7.7*    Any Decision and Supplementary Decision of the Panel shall be conclusive, final and binding upon each ~~of Selling Parties~~**Party** in connection with the applicable In-Scope Sale **and,** ~~the Monitor, the Committees and the Joint Administrators and~~**to the fullest extent permitted by applicable law,** may not be challenged, appealed or sought to be vacated by any such Party.[30]

*Section 7.8*    Any Decision and Supplementary Decision of the Panel shall be deemed an arbitral award enforceable under the United States Federal Arbitration Act and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

*Section 7.9*    The Sale Proceeds for any In-Scope Sale shall be transferred in accordance with the Allocation and the relevant escrow agreement by the Escrow Agent after ~~the~~

---

[29] ~~Consider whether we should incorporate or copy provisions from Article 6 of IBA Rules of Evidence.~~

[30] ~~Note that as drafted this does not cover Non-Selling Parties. This should cover all parties.~~

entry of the relevant Decision has been rendered without the need for an order from any of the Courts.

**Section 7.10**    [Except as expressly provided for in any agreement of the relevant parties, neither this Protocol nor any Decision of the Panel shall preclude any Inter-Party Claims asserted pursuant to the applicable claims procedure approved by the applicable Court by or on behalf of any Selling Party against any other Selling Party.][22]

## ARTICLE VIII
## CONFIDENTIALITY

Section 8.1    Except as may be required by applicable law or court order or by an authority having appropriate jurisdiction, each Party agrees (i) to maintain confidentiality as to all aspects of these procedures, including, without limitation, the presentation of any issue to the Panel, any discussions, deliberations, proceedings or results of the dispute resolution procedure set forth in this Protocol, any Written Materials**Submissions** or Oral Arguments, or any Decisions produced by these proceedings (the "Confidential Material") and (ii) not to use any Confidential Material for its own benefit or the benefit of any of its affiliates, it being understood that the Parties may disclose the existence and nature of this Protocol and the dispute resolution procedure conducted hereunder as may be necessary to (x) satisfy any Condition (as defined below) or (y) comply with the applicable laws, including, without limitation, the U.S. federal or state securities laws or Canadian federal or provincial **territorial** securities laws.

Section 8.2    In the event that a Party is served with or otherwise subject to legal process (including subpoena or discovery notice) requiring it to testify about, to produce, or otherwise to divulge Confidential Material, to the extent permitted by applicable law such Party will as soon as practicable inform the provider(s) of such Confidential Material so that the provider may seek a protective order or other remedy. In the event that such protective order or other remedy has not been obtained and such entity is advised, in the opinion of counsel, that it is legally compelled to disclose any of the Confidential Material, such Party may disclose only such Confidential Material so advised to be disclosed.

Section 8.3    The Parties further agree that prior to the appointment of any individual to the Panel or appointment as an Expert by any Party or the Panel, such individual shall agree in writing to preserve the confidentiality of the dispute resolution procedure conducted under this Protocol **and all Confidential Material obtained hereunder**.

Section 8.4    [Nothing herein shall prevent any Party from disclosing information regarding the dispute resolution procedure conducted under this Protocol **or all Confidential Material obtained hereunder** for purposes of proceedings to resolve any disputes arising from, relating to or in connection with the enforcement or implementation of this Protocol.][31]

---

[22] **TBD**

[31] TBD.

17

## ARTICLE IX
## MISCELLANEOUS

*Section 9.1*      In all matters not expressly provided for in this Protocol, the Panel and the Parties shall act in the spirit of this Protocol and shall make every reasonable effort to ensure that any Allocation pursuant to this Protocol will be legally enforceable.

*Section 9.2*      [There shall be no communications between any member of the Panel and a Party unless all other Parties are given the opportunity to be present during such communication.  For the avoidance of doubt, written communication (whether transmitted by email, facsimile or post) between any member of the Panel and a Party must also be transmitted contemporaneously to all other Parties.][32]

*Section 9.3*      All notices, requests, instructions, directions and other communications provided for herein shall be made in writing (including by facsimile) delivered to the intended recipient as follows:

**If to the US Debtors:**
c/o Nortel Networks Inc.
Attention:  Anna Ventresca, Esq.
            Chief Legal Officer
Address:  2221 Lakeside Boulevard
            Richardson, Texas 75082
            U.S.A.
Facsimile No.:  +1 905 863 2075
Telephone No.:  +1 905 863 1204

**With a copy to:**
Cleary Gottlieb Steen & Hamilton LLP
Attention:  James L.  Bromley, Esq.
Address:  One Liberty Plaza
            New York, New York 10006
            U.S.A.
Facsimile No.:  +1 212 225 3999
Telephone No.:  +1 212 225 2163

**If to the Canadian Debtors:**
c/o Nortel Networks Limited
Attention:  Anna Ventresca, Esq.
            Chief Legal Officer
Address:  [195 The West Mall
            Toronto, Ontario M9C 5K1
            Canada]
Facsimile No.:  +1 905 863 2075
Telephone No.:  +1 905 863 1204

**With a copy to:**
Ogilvy Renault LLP
Attention:  Derrick Tay, Esq.  and Michael J. Lang, Esq.
Address:  Suite 3800
            Royal Bank Plaza, South Tower
            200 Bay Street, P.O.  Box 84
            Toronto, Ontario M5J 2Z4
            Canada
Facsimile No.:  +1 416 216 4832 / 216 3930
Telephone No.:  +1 416 216 4832 / 216 3939

**If to the EMEA Debtors:**
c/o Ernst & Young LLP
Attention:  Alan Bloom
Address:  One More London Place
            London SE1 2AF

**With a copy to:**
Herbert Smith LLP
Attention:  Stephen Gale, Esq. and Kevin Lloyd, Esq.
Address:  Exchange House

---

[32] ~~Should the Protocol grant non-Negotiating Parties the right to approach the Panel?~~

[New York #2068820 v45]

<table>
<tr><td>United Kingdom<br>Facsimile No.: +44 (0) 20 7951 1345<br>Telephone No.: +44 (0) 20 7951 9898</td><td>Primrose Street<br>London EC2A 2HS<br>United Kingdom<br>Facsimile No.: +44 (0) 20 7098 4878<br>Telephone No.: +44 (0) 20 7466 2878</td></tr>
</table>

**If to the Monitor:**
c/o Ernst & Young, Inc.
Attention: Murray A. McDonald
Address: Ernst & Young Tower
          222 Bay Street, P.O. Box 251
          Toronto, ON M5K 1J7
          Canada
Facsimile No.: +1 416 943 3300
Telephone No.: +1 416 943 3016

**With a copy to:**
Goodmans LLP
Attention: Jay Carfagnini, Esq.
Address: 250 Yonge Street, Suite 2400
          Toronto, Ontario M5B 2M6
          Canada
Facsimile No.: +1 416 979 1234
Telephone No.: +1 416 597 4107

**If to the Creditors' Committee:**
c/o Akin Gump Strauss Hauer & Feld LLP
Attention: Fred S. Hodara, Esq.
Address: One Bryant Park
          New York, New York 10036
          U.S.A.
Facsimile No.: +1 212 872 1002
Telephone No.: +1 212 872 8040

**If to the Bondholders' Committee:**
c/o Milbank, Tweed, Hadley & McCloy LLP
Attention: Albert A. Pisa, Esq.
Address: One Chase Manhattan Plaza
          New York, New York 10005-1413
          U.S.A.
Facsimile No.: +1 212 530 5219
Telephone No.: +1 212 530 5319

All notices, requests, instructions, directions and other communications to be sent under this Protocol to the Non-Filed Affiliates shall be made in writing (including by facsimile) and delivered to the contact addresses or facsimile numbers set forth in <u>Schedule 4</u> hereto.

*Section 9.4*      This Protocol shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction**, except to the extent that the United States Federal Act applies**, provided that Section 9.7 shall be governed exclusively by English law.

*Section 9.5*      To the fullest extent permitted by applicable law, each Party {(i) agrees to submit to the {**non-**exclusive} jurisdiction of the US Court and the Canadian Court (in a joint hearing conducted under the cross-border Protocol adopted by such courts, as it may be in effect from time to time (the "<u>Cross-Border Protocol</u>")), for purposes of all legal proceedings ~~to the extent relating to the matters agreed in this Protocol other than the resolution of any Basic Allocation Dispute, which shall fall within the exclusive jurisdiction of the Panel.}~~[33]**arising from, relating to or in connection with the enforcement or implementation of this Protocol,** (ii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such action brought in such a Court or any claim that any such action

---

[33] ~~Does the Cross-Border Protocol become ineffective after a reorganization plan has been confirmed in Canada or US?~~

[New York #2068820 v~~4~~5]

brought in such a Court has been brought in an inconvenient forum, (iii) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by law shall be valid and sufficient service thereof, and (iv) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law, provided that any claim, action or proceeding set forth in Section 9.7 of this Protocol shall be brought exclusively in the English courts.  **[designation of process agent to be considered]**

  *Section 9.6*  No provision of this Protocol (other than as set forth in Sections [9.3, 9.4, 9.5, 9.6, 9.7, 9.10, 9.11, 9.15, 9.17 and 9.18] of this Protocol) shall be effective until the satisfaction of the following conditions:  (A) each of the US Court and the Canadian Court approving the entirety of this Protocol and all of the provisions hereof (the "North American Court Condition") and (B) the UK Court giving a direction (the "UK Court's Directions")[34 23] that the Joint Administrators be at liberty to enter into this Protocol (the "UK Court Condition" and, together with the North American Court Condition, the "Conditions").

  *Section 9.7*  The Parties agree that the Joint Administrators have negotiated and are entering into this Protocol as agents for the EMEA Debtors to which they are appointed and that none of the Joint Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Nortel Group company to observe, perform or comply with any of its obligations under this Protocol or under or in relation to any associated arrangements or negotiations. The Joint Administrators are a Party to this Protocol: (i) as agents of certain of the respective EMEA Debtors of which they are administrators; and (ii) in their own capacities solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the United Kingdom Insolvency Act 1986 and enforcing the obligations of certain other Parties to this Protocol. Notwithstanding anything to the contrary in this Protocol, any claim, action or proceeding against the Joint Administrators in their personal capacities (and not as agents for any EMEA Debtors) under this Protocol shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English Courts.

  *Section 9.8*  Except as specifically set forth in this Protocol, this Protocol is not intended to, and shall not, create rights in any person or entity not a Party hereto.

  *Section 9.9*  Without prejudice to the provisions of Sections 9.10 and 9.20 below, other parties may be added to this Protocol only with the prior unanimous written consent of all Parties hereto, which consent shall not be unreasonably withheld.

  *Section 9.10*  ~~[The Parties agree that, if within fourteen days of the date hereof, NNSA so requests in writing, they shall each enter into an accession agreement with NNSA whereby NNSA shall accede to this Protocol as if a party to this Protocol from the date hereof (the "NNSA Accession"); provided that if NNSA Accession does not take place, in the allocation of any Sale Proceeds to the EMEA Debtors pursuant to this Protocol, the amount allocated to NNSA in the Acquisition Agreement as purchase price consideration shall be deemed to be~~

---

[34 23] Is UK Court approving the Protocol?  Compare with HS's suggested edits to Sections 9.12 and 9.14.

[New York #2068820 v45]

~~NNSA's allocation and shall be deducted from any allocation otherwise to be made to the EMEA Debtors.] [TBD]~~[TBD – UK counsel to advice whether we need language delegating authority from NNSA to the Joint Administrators]

*Section 9.11* This Protocol may be executed in separate counterparts (which may include counterparts delivered by facsimile transmission) and all of said counterparts taken together shall be deemed to be an original ~~and~~, shall be binding on the Party who signed the counterpart and ~~all of which~~ together shall constitute a single agreement.

*Section 9.12* This Protocol constitutes the complete agreement among the Parties with respect to the subject matter herein, and supersedes all other agreements among the Parties with respect to the subject matter herein. This Protocol may be amended, on no less than 10 Business Days' notice, only by means of a writing signed by all the remaining Parties to this Protocol, which amendments, if material in the judgment of the Parties, must be approved by each of the Courts.

*Section 9.13* This Protocol does not affect the confidentiality of any information exchanged between or among any of the Parties pursuant to any prior agreements or understandings.

*Section 9.14* This Protocol shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns from the date of its execution, but is expressly subject to and contingent upon its approval and entry by the Courts.

*Section 9.15* Each Party to this Protocol shall (a) use commercially reasonable efforts to satisfy the Conditions as soon as possible, taking into account the availability of the respective Courts to address the matters set forth in this Protocol; (b) keep all other Parties reasonably apprised of the progress of the satisfaction of the Conditions and provide such other information regarding the satisfaction of the Conditions as reasonably requested by other Parties; and (c) use commercially reasonable efforts to allow any other Party, which so requests in writing, reasonable participation in connection with any proceedings in any Court related to the satisfaction of the Conditions.

*Section 9.16* Subject to satisfaction of the Conditions, each Party (but, for the avoidance of doubt, not the Joint Administrators in their personal capacities) hereby severally represents and warrants to each other that, as of the date hereof: (a) such Party has the power and authority to enter into this Protocol and to carry out its obligations hereunder; (b) the execution of this Protocol, and the consummation of the transactions contemplated herein, have been authorized by all necessary approvals, and no other act or proceeding on its part is necessary to authorize the execution of this Protocol; and (c) this Protocol has been duly executed by such Party and constitutes the legal, valid and binding obligations of such Party.

*Section 9.17* In the event that any provision of this Protocol shall be illegal, invalid or unenforceable, such provision shall be construed by limiting it in such a way so as to render it legal, valid and enforceable to the maximum extent provided by applicable law, and the legality, validity and enforceability of the remaining provisions shall not in any way be affected or impaired by any illegality, invalidity or unenforceability of any provision. The Parties shall

21

## Mendoza, Richard

| | |
|---|---|
| **From:** | Sanjeet Malik [smalik@cgsh.com] |
| **Sent:** | 12 January 2010 23:25 |
| **To:** | 'aleblanc@milbank.com'; Alex MacFarlane; 'annav@nortel.com'; 'apisa@milbank.com'; Qureshi, Abid; Kahn, Brad; 'Brent.R.Beekenkamp@ca.ey.com'; 'bzarnett@goodmans.ca'; Craig B BROD; Botter, David; 'dtay@ogilvyrenault.com'; Dina Zloczower; Hodara, Fred; DAVIES, GAVIN; Giles Boothman; Howard ZELBO; Inna Rozenberg; Jose M Bazan; James L BROMLEY; 'jcarfagnini@goodmans.ca'; Segger, Joanne; Whiteoak, John; 'jpasquariello@goodmans.ca'; 'jstam@ogilvyrenault.com'; Sturm, Joshua; LLOYD, KEVIN; Rowe, Kevin; 'Matthew.Hart@lazard.com'; Michael Wunder; 'mlang@ogilvyrenault.com'; 'Murray.A.McDonald@ca.ey.com'; 'Nortel'; 'Orzyr@bennettjones.com'; Bagon, Paul; 'plook@nortel.com'; Jacobs, Ryan; Pees, Robert; 'SDrymer@ogilvyrenault.com'; Shayne Kukulowicz; GALE, STEPHEN; tkreller@milbank.com; 'ZychK@bennettjones.com'; stenai@ogilvyrenault.com; amark@ogilvyrenault.com; SDrymer@ogilvyrenault.com; mnolan@milbank.com; jharris@milbank.com; Lisa M SCHWEITZER; Matthew.Hart@lazard.com; David.Descoteaux@Lazard.com |
| **Subject:** | NT: Allocation process |
| **Attachments:** | 2068820_5(Nortel_ Allocation Protocol).DOC |

Dear All:

Reflecting the discussions of some of the parties regarding the allocation process, we propose to advance the process by pursuing two parallel paths: (a) initial information / document requests by each party and processing of such requests; and (b) selection of the dispute resolution panel and discussions to finalize the allocation protocol.

Initial Information / Document Requests

We would appreciate if each party could provide an initial information / document request for the company or any other estate. We would expect parties to supplement their respective request for information / documents on a rolling basis. In the interest of keeping the process manageable and efficient, we would urge parties to make their requests as specific as possible. It would also be very helpful if parties could prioritize their requests so that the relevant producing party can focus its efforts on higher priority requests first. We would appreciate if requests are circulated by Friday, January 22nd.

Selection of Panel and Allocation Protocol

We would appreciate if parties can circulate names of recommended members of the dispute resolution panel by Friday, January 22nd.

Attached is the last draft of the allocation protocol that we had circulated on November 9th, 2009. In order to further advance the process, we plan to circulate a revised draft of the protocol. Accordingly, if parties have any comments to this draft that they have not already provided to us, we would appreciate if you could please provide us with a mark-up by Friday, January 22nd. We plan to revert with an outline of the next steps after January 22nd.

If you have any questions or concerns, please feel free to contact us.

Regards,
Sanjeet

---

Sanjeet Malik
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2136 | f: +1 212 225 3999 | m: +1 646 894 8123
www.clearygottlieb.com | smalik@cgsh.com

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

12/05/2011

## Mendoza, Richard

| | |
|---|---|
| **From:** | Sanjeet Malik [smalik@cgsh.com] |
| **Sent:** | 22 January 2010 03:18 |
| **To:** | 'aleblanc@milbank.com'; Alex MacFarlane; 'annav@nortel.com'; 'apisa@milbank.com'; Qureshi, Abid; Kahn, Brad; 'Brent.R.Beekenkamp@ca.ey.com'; 'bzarnett@goodmans.ca'; Craig B BROD; Botter, David; 'dtay@ogilvyrenault.com'; Dina Zloczower; Hodara, Fred; DAVIES, GAVIN; Giles Boothman; Howard ZELBO; Inna Rozenberg; Jose M Bazan; James L BROMLEY; 'jcarfagnini@goodmans.ca'; Segger, Joanne; Whiteoak, John; 'jpasquariello@goodmans.ca'; 'jstam@ogilvyrenault.com'; Sturm, Joshua; LLOYD, KEVIN; Rowe, Kevin; 'Matthew.Hart@lazard.com'; Michael Wunder; 'mlang@ogilvyrenault.com'; 'Murray.A.McDonald@ca.ey.com'; 'Nortel'; 'Orzyr@bennettjones.com'; Bagon, Paul; 'plook@nortel.com'; Jacobs, Ryan; Pees, Robert; 'SDrymer@ogilvyrenault.com'; Shayne Kukulowicz; GALE, STEPHEN; tkreller@milbank.com; 'ZychK@bennettjones.com'; stenai@ogilvyrenault.com; amark@ogilvyrenault.com; SDrymer@ogilvyrenault.com; mnolan@milbank.com; jharris@milbank.com; Lisa M SCHWEITZER; Matthew.Hart@lazard.com; David.Descoteaux@Lazard.com |
| **Subject:** | NT: Allocation process (Revised Timeline) |
| **Attachments:** | 2068820_5(Nortel_ Allocation Protocol).DOC |

Dear All:

Because over the last fortnight all of us have been focused on matters relating to approval of the Canadian Funding Agreement, the timeline suggested in the email below does not seem feasible. Accordingly, we propose to extend the timeline below by 7 days.

We would appreciate if by Friday, January 29th, the parties could provide the following:

a.  Initial Information / document requests;

b.  Names of recommended members of the dispute resolution panel; and

c.  Markup of the version of the allocation protocol that was circulated to all parties on November 9th, 2009.

Regards,
Sanjeet

---

Sanjeet Malik
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2136 | f: +1 212 225 3999 | m: +1 646 894 8123
www.clearygottlieb.com | smalik@cgsh.com

----- Forwarded by Sanjeet Malik/NY/Cgsh on 01/21/2010 10:06 PM -----

**Sanjeet Malik/NY/Cgsh**

12 January 2010  06:24 PM

To  "'aleblanc@milbank.com'" <aleblanc@milbank.com>,
"Alex MacFarlane" <alex.macfarlane@fmc-law.com>,
"'annav@nortel.com'" <annav@nortel.com>,
"'apisa@milbank.com'" <apisa@milbank.com>,
"Qureshi, Abid" <aqureshi@AkinGump.com>, "Kahn, Brad" <bkahn@akingump.com>,
"'Brent.R.Beekenkamp@ca.ey.com'"
<Brent.R.Beekenkamp@ca.ey.com>,
"'bzarnett@goodmans.ca'" <bzarnett@goodmans.ca>,
Craig B BROD/NY/Cgsh, "Botter, David"
<dbotter@AkinGump.com>,
"'dtay@ogilvyrenault.com'" <dtay@ogilvyrenault.com>,
Dina Zloczower/NY/Cgsh@CGSH, "Hodara, Fred"
<fhodara@AkinGump.com>,
"'Gavin.Davies@herbertsmith.com'"

<Gavin.Davies@herbertsmith.com>, "Giles Boothman"
<giles.boothman@ashurst.com>, Howard
ZELBO/NY/Cgsh@cgsh, Inna
Rozenberg/NY/Cgsh@Cgsh, Jose M
Bazan/NY/Cgsh@cgsh, James L
BROMLEY/NY/Cgsh@cgsh,
"'jcarfagnini@goodmans.ca'"
<jcarfagnini@goodmans.ca>,
"'Joanne.Segger@herbertsmith.com'"
<Joanne.Segger@herbertsmith.com>,
"'John.Whiteoak@herbertsmith.com'"
<John.Whiteoak@herbertsmith.com>,
"'jpasquariello@goodmans.ca'"
<jpasquariello@goodmans.ca>,
"'jstam@ogilvyrenault.com'"
<jstam@ogilvyrenault.com>, "Sturm, Joshua"
<jsturm@akingump.com>,
"'Kevin.Lloyd@herbertsmith.com'"
<Kevin.Lloyd@herbertsmith.com>, "Rowe, Kevin"
<krowe@akingump.com>,
"'Matthew.Hart@lazard.com'"
<Matthew.Hart@lazard.com>, "Michael Wunder"
<michael.wunder@fmc-law.com>,
"'mlang@ogilvyrenault.com'"
<mlang@ogilvyrenault.com>,
"'Murray.A.McDonald@ca.ey.com'"
<Murray.A.McDonald@ca.ey.com>, 'Nortel'
<Nortel@capstoneag.com>,
"'Orzyr@bennettjones.com'"
<Orzyr@bennettjones.com>, "Bagon, Paul"
<paul.bagon@ashurst.com>, "'plook@nortel.com'"
<plook@nortel.com>, "Jacobs, Ryan"
<rjacobs@AkinGump.com>, "Pees, Robert"
<rpees@AkinGump.com>,
"'SDrymer@ogilvyrenault.com'"
<SDrymer@ogilvyrenault.com>, "Shayne Kukulowicz"
<shayne.kukulowicz@fmc-law.com>,
"'Stephen.Gale@herbertsmith.com'"
<Stephen.Gale@herbertsmith.com>,
"tkreller@milbank.com" <tkreller@milbank.com>,
"ZychK@bennettjones.com'"
<ZychK@bennettjones.com>,
stenai@ogilvyrenault.com, amark@ogilvyrenault.com,
SDrymer@ogilvyrenault.com, mnolan@milbank.com,
jharris@milbank.com, Lisa M
SCHWEITZER/NY/Cgsh@Cgsh,
Matthew.Hart@lazard.com,
David.Descoteaux@Lazard.com

cc

Subject NT:  Allocation process

Dear All:

Reflecting the discussions of some of the parties regarding the allocation process, we propose to advance the process by pursuing two parallel paths: (a) initial information / document requests by each party and processing of such requests; and (b) selection of the dispute resolution panel and discussions to finalize the allocation protocol.

Initial Information / Document Requests

17/05/2011

We would appreciate if each party could provide an initial information / document request for the company or any other estate. We would expect parties to supplement their respective request for information / documents on a rolling basis. In the interest of keeping the process manageable and efficient, we would urge parties to make their requests as specific as possible. It would also be very helpful if parties could prioritize their requests so that the relevant producing party can focus its efforts on higher priority requests first. We would appreciate if requests are circulated by Friday, January 22nd.

<u>Selection of Panel and Allocation Protocol</u>

We would appreciate if parties can circulate names of recommended members of the dispute resolution panel by Friday, January 22nd.

Attached is the last draft of the allocation protocol that we had circulated on November 9th, 2009. In order to further advance the process, we plan to circulate a revised draft of the protocol. Accordingly, if parties have any comments to this draft that they have not already provided to us, we would appreciate if you could please provide us with a mark-up by Friday, January 22nd. We plan to revert with an outline of the next steps after January 22nd.

If you have any questions or concerns, please feel free to contact us.

Regards,
Sanjeet

Sanjeet Malik
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2136 | f: +1 212 225 3999 | m: +1 646 894 8123
www.clearygottlieb.com | smalik@cgsh.com

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

17/05/2011

## Mendoza, Richard

| | |
|---|---|
| **From:** | Inna Rozenberg [irozenberg@cgsh.com] |
| **Sent:** | 26 February 2010 17:18 |
| **To:** | 'aleblanc@milbank.com'; Alex MacFarlane; amark@ogilvyrenault.com; 'annav@nortel.com'; 'apisa@milbank.com'; Qureshi, Abid; Kahn, Brad; 'Brent.R.Beekenkamp@ca.ey.com'; 'bzarnett@goodmans.ca'; Craig B BROD; David.Descoteaux@Lazard.com; Botter, David; 'dtay@ogilvyrenault.com'; Hodara, Fred; DAVIES, GAVIN; Giles Boothman; Howard ZELBO; James L BROMLEY; 'jcarfagnini@goodmans.ca'; jharris@milbank.com; Segger, Joanne; Whiteoak, John; 'jpasquariello@goodmans.ca'; 'jstam@ogilvyrenault.com'; Sturm, Joshua; LLOYD, KEVIN; Rowe, Kevin; Lisa M SCHWEITZER; 'Matthew.Hart@lazard.com'; Michael Wunder; 'mlang@ogilvyrenault.com'; mnolan@milbank.com; 'Murray.A.McDonald@ca.ey.com'; 'Nortel'; 'Orzyr@bennettjones.com'; Bagon, Paul; 'plook@nortel.com'; Jacobs, Ryan; Pees, Robert; 'SDrymer@ogilvyrenault.com'; Shayne Kukulowicz; stenai@ogilvyrenault.com; GALE, STEPHEN; tkreller@milbank.com; 'ZychK@bennettjones.com'; Sanjeet Malik; Theodore Geiger; jravidity@earthlink.net |
| **Subject:** | Nortel - Allocation Protocol |
| **Attachments:** | Allocation Protocol draft 2-26-10.doc; Protocol blackline.doc |

Please find attached the current draft of the Allocation Protocol, along with a blackline against the last draft circulated.

---

Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999

www.clearygottlieb.com | irozenberg@cgsh.com

This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and
any attachments without retaining a copy.

THIS DRAFT AGREEMENT HAS BEEN PRODUCED
FOR DISCUSSION AND SETTLEMENT PURPOSES
ONLY AND IS SUBJECT TO THE PROVISIONS OF
RULE 408 OF THE RULES OF EVIDENCE FOR
UNITED STATES COURTS AND MAGISTRATES AND
ANY OTHER SIMILAR APPLICABLE RULES IN ALL
PERTINENT JURISDICTIONS.

*Draft of ~~November 8, 2009~~**February 26, 2010***
*Privileged and Confidential*

## PROTOCOL FOR RESOLVING DISPUTES
## CONCERNING ALLOCATION OF SALE PROCEEDS

This Protocol for Resolving Disputes Concerning Allocation of Sale Proceeds, dated ~~as of •~~**, 2010** (the "Protocol"), is entered into by and among Nortel Networks Limited ("NNL") and the other entities set forth in Schedule 1 attached hereto, Nortel Networks Inc. ("NNI") and the other entities set forth in Schedule 2 attached hereto, [the Joint **Administrators (as defined below), the** Joint Israeli Administrators (as defined below) and the entities set forth in Schedule 3 attached hereto (the "EMEA Debtors")][1], certain affiliates of the Debtors (as defined below) set forth in Schedule 4 attached hereto (the "Non-Filed Affiliates"), the Monitor (as defined below), the Official Committee of Unsecured Creditors appointed in the US Proceedings (as defined below) (the "Creditors' Committee") [and the steering committee members of the ad hoc group of bondholders that have executed confidentiality or non-disclosure agreements with the Canadian Debtors and the US Debtors (each, as defined below) (the "Bondholders' Committee," and along with the Creditors' Committee, the "Committees")][2] (each, a "Party," and collectively, the "Parties"). [The Joint Administrators, in their personal capacity, shall be Party to this Protocol as provided in Section 9.7 and solely for the purposes of obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to the Joint Administrators ~~(as defined below)~~ and references to the Parties shall be construed accordingly.][3] **The Joint Israeli Administrators, in their personal capacity, shall be Party to this Protocol as provided in Section 9.8 and solely for the purposes of obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to the Joint Israeli Administrators and references to the Parties shall be construed accordingly.[1]**

WHEREAS, on January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC["," and together with its **debtor and non-debtor** affiliates, the "Company" or the "Nortel Group"), NNL and certain of NNC's other Canadian affiliates included in Schedule 1 (collectively, the "Canadian Debtors"), commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and the "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor"); and

---

[1] ~~Whether unfiled subsidiaries of EMEA filed entities will be parties to the Protocol as EMEA Debtors or Non-Filed Affiliates.~~

[2] ~~TBD: Whether the Bondholders' Committee will be a party to the Protocol or third party beneficiaries. Also discuss whether the Bondholders' Committee has the ability to execute submissions to the Panel.~~

[3] ~~To be reviewed by English counsel in light of JAs' increased obligations in this draft.~~

**[1] Subject to review by NNI's UK counsel.**

~~†~~

[New York #2068820 v5]

WHEREAS, on the Filing Date and on July 14, 2009 (with respect to Nortel Networks (CALA) Inc.), NNI and certain of NNI's United States affiliates included in Schedule 2 (collectively, the "US Debtors" and, together with the Canadian Debtors and the EMEA Debtors, the "Debtors") filed petitions in the United States Bankruptcy Court for the District of Delaware (the "US Court") under chapter 11 of title 11 of the United States Code (respectively, the "US Proceedings" and the "Bankruptcy Code"); and

WHEREAS, on the Filing Date, Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel Networks S.A. ("NNSA") and certain of NNUK's affiliates in the Europe, Middle East and Africa ("EMEA") region, including those in Schedule 3 attached hereto, commenced administration proceedings (the "UK Proceedings" and, together with the Canadian Proceedings and the US Proceedings, the "Proceedings") before the High Court of Justice in London, England (the "UK Court" and, together with the Canadian Court and the US Court, the "Courts"), and the UK Court appointed individuals from Ernst & Young LLP (the "UK Administrator"), and, in the case of NNIR only, Ernst & Young Chartered Accountants (the "NNIR Administrator"), as administrators in the UK Proceedings (the UK Administrator and the NNIR Administrator collectively, and including their respective successors, replacements and any subsequent office holders appointed to the relevant EMEA Debtors, the "Joint Administrators"); and

WHEREAS, subsequent to the Filing Date, **Nortel Networks Israel (Sales and Marketing) Limited (In Administration)(the "Israeli Company") filed applications with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings, and the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof (the "Joint Israeli Administrators") on January 19, 2009, as joint administrators of the Israeli Company under the Israeli Companies Law, and further on November 25, 2009, the Israeli Court sanctioned a scheme of arrangement, which automatically means that the Israeli Company is no longer under a stay of proceedings, and further on November 29, 2009, the Israeli Court ordered that the Joint Israeli Administrators remain in office until the scheme of arrangement is completed in full, including up until the time when all funds arising from the sale of the Israeli Company's assets, are received and allocated; and**

**WHEREAS, subsequent to the Filing Date,** NNSA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator (the "NNSA Liquidator") and an administrator (the "NNSA Administrator") have been appointed by the Versailles Commercial Court (Docket No. 2009P00492) for NNSA; and

WHEREAS, the Debtors and their respective **subsidiaries and** affiliates ~~intend, or~~**have sold,** have agreed~~, to sell certain assets of their estates in several transactions, each relating to~~ **to sell, or may in the future sell, license or otherwise monetize their tangible and intangible assets outside the ordinary course in several transactions (any such transaction, a "Sale"), including in connection with a sale of** a particular line of business or portfolio of

2

technologies (each, a "Business")~~,~~ to~~a~~ third party ~~buyer~~**buyers** (each such buyer, a "Buyer"); and

WHEREAS, the Company has provided, or intends to provide, **Buyers and** potential Buyers**, as applicable,** with access to a data room (which may be an electronic data room) containing the books and records of the relevant Business and other financial information relating to such Business (each such electronic data room, an "Asset Sale EDR"); and

WHEREAS, with respect to each Business, the Debtors and their respective affiliates **have entered, or** intend to enter, ~~or have entered,~~ into one or more acquisition ~~agreements~~**, sale, license, transfer** and/**or** other ancillary agreements (**each** such ~~agreements~~**agreement**, with respect to the sale**, transfer and/or license** of each Business, ~~collectively the~~**an** "Acquisition Agreement") with the Buyer to govern the sale of such Business ~~(the "Sale")~~; and

WHEREAS, after entering into an Acquisition Agreement in the case where a so ~~-~~ called "stalking horse" bidder has been selected, or prior to entering into an Acquisition Agreement in the case where no "stalking horse" bidder has been selected, certain of the Debtors**, as applicable, have applied or** intend to apply~~, or have applied,~~ to ~~certain of~~ the **applicable** Courts for orders authorizing such Debtors to establish notice, bidding and sale procedures for the Sale of each Business (the "Bidding Procedures Orders"); and

WHEREAS, after entry of the Bidding Procedures Orders, such Debtors intend to conduct, or have conducted, an auction for the Sale of each Business in accordance with the Bidding Procedures Orders; and

WHEREAS, after conclusion of the auction, certain of the Debtors intend to apply, or have applied, to certain of the Courts for orders approving the Sale of each Business to the relevant Buyer (the "Sale Orders"); and

~~[~~WHEREAS, in connection with certain Sales, the relevant Debtors intend to request, or have requested, that the Sale Orders contain procedures for the establishment of one or more escrow accounts (the "Escrow Account") overseen by an independent agent (the "Escrow Agent") for deposit of the proceeds of the Sale (the "Sale Proceeds") pending the allocation thereof in accordance with the provisions of this Protocol (each such Sale, **as set forth in Schedule 5 attached hereto,** an "In-Scope Sale")~~]~~[2];[4] and

WHEREAS, after entry of the Sale Orders and satisfaction or waiver of the conditions to closing set forth in the relevant Acquisition Agreement, the Debtors and their respective affiliates intend to consummate, or have consummated, the Sale ~~of each Business~~ in accordance with the Sale Orders (in each case, a "Closing"); and

---

[2] **Schedule 5 will include monetization transactions related to intellectual property of the Debtors and Non-Filed Affiliates.**

[4] ~~TBD: Definition of In-Scope Sale.~~

3

WHEREAS, the Debtors and certain ~~Non-Filed Affiliates~~**other parties** previously agreed, pursuant to the Interim Funding and Settlement Agreement, dated as of June 9, 2009 (as amended from time to time, the "Interim Funding Agreement"), as soon as reasonably ~~practicable~~**practical** following the execution of such agreement, to negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of ~~Sales~~**Sale** Proceeds, which would provide binding procedures for the allocation of ~~Sales~~**Sale** Proceeds where the Selling Debtors (as defined therein) have been unable to reach agreement regarding such allocation; and

WHEREAS, the Parties wish to ~~provide for a mechanism to negotiate the~~**agree on procedures for determining** allocation of Sale Proceeds of each In-Scope Sale between and among **each of** the ~~Canadian Debtors that are Selling Parties with respect to such In-Scope Sale, if any, (the "Canadian Filed Sellers"), the EMEA Debtors that are Selling Parties with respect to such In-Scope Sale, if any, (the "EMEA Filed Sellers"), the US Debtors that are Selling Parties with respect to such In-Scope Sale, if any, (the "US Filed Sellers") and to~~**Debtors and** the Non-Filed Affiliates ~~that are Selling Parties with respect to such In-Scope Sale, if any, (the "Non-Filed Selling Parties") and to resolve disputes with respect to the allocation of the Sale Proceeds of each In-Scope Sale, where ["Selling Parties," with respect to the US Debtors, the Canadian Debtors and the EMEA Debtors, means the Selling Debtors in connection with such In-Scope Sale (as such term is defined under the Interim Funding Agreement) and, with respect to the Non-Filed Affiliates, refers to those Nortel Group entities that are participating as sellers in the In-Scope Sale or otherwise releasing their intellectual property rights in connection with such In-Scope Sale]; and~~**(each, a "Participating Party," and collectively, the "Participating Parties"); and**

**WHEREAS, the Parties wish to give each Participating Party an opportunity to assert, pursuant to the procedures set forth in this Protocol, an entitlement to an allocation of Sale Proceeds with respect to any In-Scope Sale, regardless of whether or not such Participating Party was a party or signatory to the Acquisition Agreements applicable to such In-Scope Sale; and**

WHEREAS, each Party ~~(including the Monitor, the Creditors' Committee and [the Bondholders' Committee])~~ wishes to participate in the procedures set forth in this Protocol, and has agreed to be bound by this Protocol and any outcome with respect to the Allocation **(as defined below)** of ~~Sales~~**Sale** Proceeds of each In-Scope Sale pursuant to a Decision or a Supplementary Decision of the Panel (each, as defined below); and

[WHEREAS, the Non-Filed Affiliates have appointed ●[3] as their representative, which shall represent the Non-Filed Affiliates in connection with the negotiations and other procedures with respect to the Allocation of Sale Proceeds of each In-Scope Sale under this Protocol ("Affiliates' Representative"), and the Non-Filed Affiliates have also appointed an

---

[3] **Identity of Affiliates' Representative to be discussed**

[New York #2068820 v5]

independent financial advisor and an independent counsel to assist the Affiliates' Representative.]⁵

NOW THEREFORE, IT IS HEREBY CONSENTED TO, STIPULATED, AGREED AND ORDERED THAT:

## ARTICLE I
## INITIAL NEGOTIATIONS

*Section 1.1*    ~~During the period beginning as early as the execution of each Acquisition Agreement (such date, the "Relevant Signing Date") but commencing no later than the consummation of the In-Scope Sale that is the subject of such Acquisition Agreement (such date, the "Relevant Closing Date"), the~~**The** Negotiating Parties (as defined below) shall use commercially reasonable efforts to negotiate in good faith **and as expeditiously as possible** a fair and equitable allocation of the Sale Proceeds of such**each** In-Scope Sale among the ~~Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers and the Non-Filed Selling~~**Participating** Parties, where the~~"~~"Negotiating Parties" means ~~[NNL (on behalf of Canadian Filed Sellers), NNI (on behalf of US Filed Sellers), the [Joint Administrators]⁶ (on behalf of EMEA Filed Sellers), the Affiliates' Representative (on behalf of Non-Filed Selling Parties)~~**NNL, NNI**, the Monitor, the Creditors' Committee ~~and~~**,** the Bondholders' Committee.]⁷ ~~The Non-Filed Selling Parties shall be represented in such negotiations and all other procedures under this Protocol by~~**, the Joint Administrators and** the Affiliates' Representative.

*Section 1.2*    ~~If~~**With respect to any In-Scope Sale that closed before the date of this Protocol, if** the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of ~~an In-Scope Sale prior to the [one-hundredth (100th)~~**such In-Scope Sale within [100]** calendar ~~day immediately following the later of (x) the Relevant Closing Date or (y) the date when all Conditions (as defined below) have been satisfied (the "First DR Referral Date"),~~**days after the date of this Protocol, then** the dispute as to the allocation of the relevant Sale Proceeds among the ~~Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers and the Non-Filed Selling~~**Participating** Parties shall be automatically referred to the Panel (as defined below) pursuant to this Protocol ~~and~~**. With respect to any In-Scope Sale that closes after the date of this Protocol, if the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of such In-Scope Sale within [100] calendar days after the closing of such In-Scope Sale, then the dispute as to the allocation of the relevant Sale Proceeds among the Participating Parties shall be automatically referred to the Panel (as defined below) pursuant to this Protocol. If an allocation dispute is referred to the Panel,** the Panel shall determine a fair and equitable allocation of the Sale Proceeds of ~~such In-Scope Sale among the Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed~~

---

⁵ ~~Consensual settlement with Non-Filed Affiliates to be discussed.~~

⁶ ~~TBD: Please confirm that the proposal to replace NNUK with Joint Administrators does not contemplate the Joint Administrators acting separately. In other words, please confirm that the UK Administrator and the NN Ireland Administrator will not have a right to act separately.~~

⁷ ~~Consider whether the definition of Negotiating Parties should be dynamic and change with each sale. For instance, for the purposes of CDMA sale, should the definition of Negotiating Parties exclude the Joint Administrators?~~

~~Sellers and the Non-Filed Selling Parties on the basis of such Selling Parties' relative contribution, if any, of the assets (tangible and intangible) and rights transferred or relinquished and liabilities assumed in the particular In-Scope Sale (a "Basic Allocation Dispute").[8] [Each Basic Allocation Dispute shall be determined without regard to, or adjustment for, any other rights, entitlements, set-offs, or adjustments of any nature asserted by or on behalf of any Selling Party against another Selling Party, including, without limiting the generality of the foregoing, claims of beneficial ownership or equitable interests in and to the assets included in the Business that is the subject of an In-Scope Sale (collectively, "Inter-Party Claims").][9]~~ **the relevant In-Scope Sale to be distributed to the Participating Parties.** The Parties hereby agree that the ~~deadlines imposed by~~**negotiation periods provided for in** this Section 1.2 may be ~~modified~~**extended** by mutual written agreement ~~among the~~**of all the Negotiating Parties or may be terminated before their expiration upon written notice by any Negotiating Party delivered to all other** Negotiating Parties.

*Section 1.3*     Upon the automatic referral of ~~the Basic Allocation Dispute~~**an allocation dispute** to the Panel as contemplated by Section 1.2, NNI shall be responsible for promptly sending a notice to the Panel and the other Negotiating Parties, indicating in such notice ~~(a)~~ that pursuant to the terms of Section 1.2 of this Protocol, ~~the Basic Allocation Dispute~~**an allocation dispute** has been automatically referred to the Panel~~, and (b) the First DR Referral Date~~. If for any reason NNI shall fail to send such notification to the Panel **and the other Parties** within ~~[two]~~**three** days (excluding Saturdays, Sundays and national public holidays in any of the United States, Canada or the United Kingdom) (each a "Business Day") of the automatic referral of the ~~Basic Allocation Dispute~~**allocation dispute** to the Panel, any other Negotiating Party may undertake to send such notice to the Panel and the other Negotiating Parties.

*Section 1.4*     [The Negotiating Parties, in their sole discretion, may agree to a partial allocation of the Sale Proceeds of an In-Scope Sale (each such partial allocation, a "Partial Allocation Amount").][10][4] If the Negotiating Parties agree to a Partial Allocation Amount, such Partial Allocation Amount shall be released from the Escrow Account and distributed to one or more ~~Selling~~**Participating** Parties immediately following the later of (x) the ~~Closing~~**closing** of the In-Scope Sale and (y) the date when the Negotiating Parties agree to such Partial Allocation Amount~~; and any~~**. Any** remaining amounts shall remain in the Escrow Account until released from the Escrow Account in accordance with the provisions of this Protocol.

---

[8] ~~Prior to signing of this Protocol (by which time the timing of the CDMA and Equinox closing should be known to the Parties), this Protocol will be revised to add language to accommodate EMEA's request that the Equinox dispute be the first Basic Allocation Dispute to be handled by the Panel so long as it does not unreasonably delay the allocation for CDMA, which is expected to close earlier than Equinox.~~

[9] ~~TBD~~

[10] ~~Compare this language with Section 12.d. of the IFSA.~~ **[4] Prior to signing of this Protocol (by which time the timing of the CDMA and Equinox closing should be known to the Parties), this Protocol will be revised to add language to accommodate EMEA's request that the Equinox dispute be the first allocation dispute to be handled by the Panel so long as it does not unreasonably delay the allocation for CDMA.**

6

[New York #2068820 v5]

**ARTICLE II**
**REFERRAL OF ALLOCATION DISPUTES TO THE PANEL**

*Section 2.1*       As contemplated by Section 1.2 of this Protocol, ~~a Basic Allocation Dispute~~**an allocation dispute** shall be automatically referred to a dispute resolution panel constituted in accordance with Sections 2.2, 2.3 and 2.4 (the "Panel"). ~~[In addition, the Parties hereby agree that the Panel may decide any other dispute, controversy or claims of a Selling Party that the Panel considers must be addressed in order to finally determine the Allocation of the Sale Proceeds of a given In-Scope Sale in accordance with this Protocol (each such dispute, controversy or claim, an "Other Dispute" and together with a Basic Allocation Dispute, a "Dispute"), provided that the resolution of any Other Dispute shall be binding on the Parties solely for the purposes of the determination of the relevant Allocation.]~~[11]

*Section 2.2*       The ~~members of the Panel shall be as follows:   ● (the "Category A Member"), ● (the "Category B Member") and ● (the "Category C Member")~~**Parties have previously requested and received from the members of the Panel initial conflict disclosures in accordance with the standard for "disinterestedness" under the Bankruptcy Code as well as agreed upon procedures for identifying and preventing any potential current or future conflicts, and have determined based on such disclosures that the following individuals are acceptable and shall serve as the members of the Panel:  ●, ● and ●.** For the purposes of administrative convenience, the Panel may ~~designate one of its members as the chairperson of the Panel with regards to a given Dispute ("Relevant Chairperson"). The Relevant Chairperson shall have no special powers or authority to act unless otherwise agreed by other members of the Panel.~~**appoint an administrative secretary.**

*Section 2.3*       ~~[Each member of the Panel shall be and remain at all times impartial and independent of the Parties~~ ~~and Selling Parties.]~~[12] ~~No member of the Panel shall act as an advocate of any Party. No member, whether before or after appointment to the Panel, shall advise any Party on the merits or outcome of a Dispute. Each Party hereby agrees that such Party shall communicate with the Panel only as expressly permitted by this Protocol, provided that any written communication must be served on the Panel and the Negotiating Parties simultaneously~~.  **Each member of the Panel shall disclose to the Parties any new or previously undisclosed conflict, pursuant to the "disinterestedness" standard under the Bankruptcy Code, that comes to the Panel member's attention from time to time, as well as any proposed remedy with respect to such conflict.  Following any such disclosure, the Negotiating Parties agree to confer regarding whether such disclosure requires disqualification of the Panel member, it being understood that a Panel member's disclosure under this Section 2.3 does not automatically render the Panel member conflicted or require the Panel member's disqualification.  If the Negotiating Parties cannot reach an agreement within [x] days of the Panel member's disclosure as to whether such Panel member should be disqualified, the US Court and the Canadian Court, in a joint hearing**

---

[11] ~~Concept of Other Dispute to be reviewed after resolution of the issue relating to assertion of beneficial claims to IP being transferred by Canadian Debtors.~~

[12] ~~Parties to discuss whether each Panel member must make disclosures as required to satisfy the "disinterestedness" standard under the Bankruptcy Code.  Will there be a requirement to update such disclosures on a periodic basis?~~

7

**conducted under the Cross-Border Protocol (as defined below), shall decide the issue. Notwithstanding anything to the contrary in this Protocol, if a member of the Panel is disqualified pursuant to this Section 2.3, the sole method for replacement of such member shall be as set forth in Section 2.4 of this Protocol**.

Section 2.4    If any member of the Panel is unable or unwilling to serve after receiving notice of the referral of any matter to the Panel or at any time thereafter, **or is disqualified as a result of a conflict pursuant to the procedures in section 2.3,** such member shall be replaced **as soon as possible** by another individual ~~from the names set forth on Exhibit A attached hereto at the sole discretion of the Panel, provided~~ that such replacement ~~must belong to the same category as the member that is being replaced.~~**to be selected by the Participating Party that originally proposed the inclusion of the outgoing Panel member in Section 2.2, as previously set forth in writing provided to all Negotiating Parties, but only upon the prior written consent of the other Negotiating Parties, which consent shall not be unreasonably withheld. The Panel may not consider or continue to consider issues or render any Decision, Supplementary Decision or other decision during the period when a Panel member is being replaced.**

Section 2.5    ~~In connection with a particular In-Scope Sale, all costs and expenses of the Mediator (if any) shall be paid from the relevant Escrow Account before transfer of Sale Proceeds in accordance with the terms of this Protocol and the relevant escrow agreement.~~ Each of the Negotiating Parties (other than the **Non-Filed Affiliates, as represented by the** Affiliates' Representative) shall bear its respective costs and expenses, including attorneys' fees, associated with the preparation and presentation of its case to the Panel and any other costs and expenses incurred by such Negotiating Party in connection with the proceedings pursuant to this Protocol**, provided that nothing herein shall in any way affect any arrangements or agreements to cover [certain] fees and expenses of the Committees, including, without limitation, pursuant to any order by the US Court approving the fee applications of the Committees, as applicable**. The Panel shall specify in each Decision the total amount of the costs and other expenses of the Panel in connection with such Decision (the "Panel Costs"), and the proportions in which the ~~US Filed Sellers, the Canadian Filed Sellers, the EMEA Filed Sellers and the Non-Filed Selling~~**Participating** Parties shall bear such Panel Costs. The costs and expenses of the Affiliates' Representative and the ~~pro rata~~ portion of the Panel Costs to be paid by **the** Non-Filed ~~Selling Parties~~**Affiliates** shall be paid from the Sale Proceeds **of the particular In-Scope Sale** allocated to the Non-Filed ~~Selling Parties~~**Affiliates**. The incremental costs and other expenses of the Panel in connection with a Supplementary Decision (as defined below) shall be paid from the Sale Proceeds **of the particular In-Scope Sale** allocated to the ~~Selling Parties covered by~~**Participating Party or Participating Parties requesting** such Supplementary Decision.

~~Section 2.6    In rendering any Decision and the Allocation in such Decision, the Panel shall (i) treat as final and binding any Partial Allocation Amount, and (ii) not be bound to adopt or follow [(x) any allocation agreed with the Buyer in or pursuant to the relevant Acquisition Agreement,][13] or (y) any previous Decision or Allocation of the Panel relating to~~

---

[13] ~~Tax counsel to provide rider to carve-out an exception to this rule b/c Nortel has agreed to allocate at least the book value to each tangible asset and the Panel has to respect this allocation principle.~~

8

~~another In-Scope Sale. In addition, after the Panel has entered a Decision or a Supplementary Decision, the Panel shall be barred from modifying such Decision or Supplementary Decision, as the case may be, other than to correct a clerical, computational or typographical error contained in the Decision or Supplementary Decision. If the Panel makes such a correction on its own initiative, it shall do so within 30 days of the date of the Decision or Supplementary Decision, as the case may be. Any application by a Party for such a correction must be made within 30 days of the date of the Decision or Supplementary Decision, as the case may be.~~

**Section 2.6**     ~~Section 2.7~~ To the maximum extent permitted by applicable law, none of the members of ~~the Panel or any expert appointed by~~ the Panel shall be liable to any Party or any third party howsoever for any act or omission in connection with any proceedings under this Protocol.

**Section 2.7**     ~~Section 2.8~~ The place of arbitration shall be New York, New York. Other than as expressly specified otherwise in this Protocol, including, but not limited to, Administrative Meetings, **or as agreed by the Parties,** all proceedings pursuant to this Protocol, including, but not limited to, Administrative Meetings, ~~an~~ Evidentiary ~~Hearing~~**Hearings** and ~~the~~ Oral ~~Argument~~**Arguments (as defined herein)**, shall be held in New York, New York and shall be conducted in the English language.

**Section 2.8     No members of the Panel, whether before or after appointment to the Panel, shall advise any Party on the merits or outcome of a dispute. There shall be no communications between any member of the Panel and a Party unless all other Parties are given the opportunity to be present during such communication. For the avoidance of doubt, written communication (whether transmitted by email, facsimile or post) between any member of the Panel and a Party must also be transmitted contemporaneously to all other Parties.**

### ARTICLE III
### ADMINISTRATIVE MEETINGS

*Section 3.1*     Within ● (●) calendar days of ~~a Basic Allocation Dispute~~**an allocation dispute** being referred to the Panel, the Negotiating Parties and the Panel shall hold a meeting to discuss any administrative, procedural or other relevant matters (the "Administrative Meeting"), which shall be convened by the Panel. Each of the Negotiating Parties must be given (i) at least seven (7) calendar days' notice prior to the Administrative Meeting and (ii) the opportunity to ~~present at~~**attend and participate in** the Administrative Meeting. The Administrative Meeting shall be held at a time and in a location, as determined by the Panel, such that each Negotiating Party and/or its counsel shall be able to participate by telephone, videoconference or in person. At the Administrative Meeting and at any other proceeding before the Panel, each of the Negotiating Parties shall be entitled to be represented by counsel.

*Section 3.2*     Except as specifically provided in this Protocol, the Panel shall, after taking into account**, among other things,** the facts and circumstances of the relevant In-Scope Sale, the multiple jurisdictions involved in such In-Scope Sale or the applicable ~~Dispute, the different types of Nortel Group entities under the Nortel Group's transfer pricing regime which was in effect prior to the Filing Date~~**dispute** and such other factors as the Panel considers relevant, establish the procedure and manner in which the resolution of the ~~Basic Allocation~~

9

~~Dispute or Other Dispute, as the case may be.~~**allocation dispute** shall be conducted, including, without limitation, (i) the due dates for Written Submissions, (ii) the timing of the identification of Experts (as defined below), the submission of Expert Reports (as defined below), the identification of witnesses and the submission of Witness Statements (as defined below), (iii) the time, place, length and number of oral arguments for each Negotiating Party (the number of oral arguments for a given Negotiating Party multiplied by the length of each such oral argument, the "Oral Argument Duration") ~~and (iv,~~ **(iv) whether to order the Negotiating Parties to prepare a joint statement of facts, and (v)** other administrative, procedural, or other relevant matters such as the scheduling of the Evidentiary Hearings (as defined below) and subsequent Administrative Meetings (if necessary), {provided that the right of the Non-Filed ~~Selling Parties~~**Affiliates** to participate and present their Interests (as defined below and as determined by the Panel) to the Panel shall reflect, to the extent reasonably practicable and determinable under the circumstances, the Panel's assessment of the relative contribution of the assets (tangible and intangible) and the rights transferred or relinquished by and liabilities assumed from the Non-Filed ~~Selling Parties~~**Affiliates** in comparison to other ~~Selling~~**Participating** Parties with regards to a given Sale.}[14] **Notwithstanding anything else in this Protocol, the Panel shall have the right in its discretion, and after providing an opportunity for all Negotiating Parties to be heard on the issue, to modify the procedures decided at any Administrative Hearing or otherwise either upon request of any Negotiating Party or on the Panel's own initiative.**

*Section 3.3*        If any Negotiating Party determines that there is an actual or potential conflict with respect to the ~~Dispute~~**dispute** among any of the Respective ~~Selling~~**Participating** Parties (as such term is defined in ~~Exhibit B~~**Schedule 6** attached hereto) of such Negotiating Party or that such Negotiating Party represents a diversity of interests with regard to such Negotiating Party's Respective ~~Selling~~**Participating** Parties (each such interest, an "Interest"), such Negotiating Party may petition in writing the Panel to further modify the procedures, including, without limitation, by increasing the Oral Argument Duration allocated to such Negotiating Party~~,~~ or providing separate representation~~,~~ to address such potential conflict of interest or diversity of interests, provided that ~~any other Negotiating Party shall be free to make submissions as to the extent and scope of any additional representation rights; and provided, further that~~ in the case of **the** Joint Administrators or the Monitor, their respective petitions to the Panel to represent up to three separate Interests shall not be opposed by any other **Negotiating Party, and provided, further that any other Negotiating Party shall be free to make submissions as to the extent and scope of any additional representation rights.**[5] **Nothing herein shall prevent any Negotiating Party from opposing any arguments raised by the various Interests, or Presented Positions (as defined below) with respect to such Interests, represented by any** Negotiating Party.

*Section 3.4*        Nothing in the preceding section shall affect the right of the Panel to call other **administrative** meetings to discuss administrative, procedural or other relevant matters after the initial Administrative Meeting. Each such meeting shall constitute a separate Administrative Meeting for the purposes of this Protocol and must comply with the requirements set forth in Section 3.1 of this Protocol.

---

[14] ~~Due Process concerns to be discussed.~~

[5] **TBD: Retention of multiple professionals by Parties that represent more than one Interest**

~~[New York #2068820 v5]~~

## ARTICLE IV
## WRITTEN SUBMISSION BY THE NEGOTIATING PARTIES

*Section 4.1*        Each ~~of the following [P]arties~~**Negotiating Party** may submit a written statement to the Panel, including, without limitation, ~~Party-Appointed~~ Expert Reports (as defined below) and written Witness Statements (as defined below), of such ~~[P]arty~~**Negotiating Party**'s one or more Interests (as permitted by the Panel pursuant to Section 3.3) with regards to the Allocation of the relevant Sale Proceeds to the Panel (such submission, the "First Round Submission")~~: NNL (on behalf of Canadian Filed Sellers), NNI (on behalf of US Filed Sellers), the Joint Administrators (on behalf of EMEA Filed Sellers), the Affiliates' Representative (on behalf of Non-Filed Selling Parties), the Monitor, the Creditors' Committee and the Bondholders' Committee.~~

*Section 4.2*        Each ~~of the [Negotiating Parties]~~[15]**Party shall present** in its First Round Submission ~~shall present~~ its methodology for the allocation of the relevant Sale Proceeds (the "Presented Position"). In the case of a Negotiating Party that represents more than one Interest (as determined by the Panel), such Negotiating Party may offer more than one Presented Position to the Panel. The Presented Positions may also address any allocation or allocation methodology adopted or employed by any Buyer.

*Section 4.3*        A Negotiating Party may rely, in its sole discretion, on one or more experts as a means of evidence on specific issues (each such expert, ~~a~~**an** "~~Party-Appointed~~ Expert"). A report by ~~any Party-Appointed~~**an** Expert (each such report, ~~a~~**an** "~~Party-Appointed~~ Expert Report") shall ~~include:~~**provide the following information:** (i) a description of the qualifications of such ~~expert~~**Expert**, (ii) a description of the scope of work or mandate of such ~~expert~~**Expert** together with a copy of the engagement letter of such ~~expert~~**Expert**, (iii) a description of the compensation paid or to be paid to such ~~expert~~**Expert**, (iv) a description of any relationship on the part of such ~~expert~~**Expert** within the two years immediately preceding the date that such ~~expert~~**Expert** was first contacted with respect to the engagement that could reasonably be considered relevant to an assessment of the ~~expert~~**Expert**'s independence or objectivity, (v) a description of the scope of review conducted by such ~~expert~~**Expert** (including a list of the materials and other information ~~reviewed and~~ relied upon by such expert **in preparing such report**, the identity of all current or former employees, officers or directors of Nortel Group entities who such expert interviewed **and relied upon** in connection with the preparation of such report, and any limitation on the scope of such review ~~and the implications of such limitation on the expert's opinions or conclusions~~), (vi) a statement of the facts on which such ~~expert~~**Expert** is basing its opinions and conclusions, (vii) the allocation approach and methodologies selected by such ~~expert~~**Expert** and the reasons for selecting the particular allocation approach and methodology or methodologies, (viii) the key assumptions made by such ~~expert~~**Expert**, (ix) such ~~expert~~**Expert**'s findings, opinions and conclusions, and (x) any qualifications or limitations to which such ~~expert~~**Expert**'s findings, opinions or conclusions are subject. **Notwithstanding anything to the contrary in this Protocol, a Negotiating Party need not disclose, and shall not be required to disclose, any information (other than the**

---

[15] ~~If the definition of Negotiating Party is dynamic, then consider adding a different term to ensure that each Selling Party has the right to at least make an initial written submission.~~

11

**information set forth in the preceding sentence) concerning its Experts, including but not limited to (1) drafts of an Expert Report and (2) communications between a Negotiating Party (including its counsel) and an Expert (or documents reflecting such communications).**

Section 4.4        A Negotiating Party may rely on a written statement by any person, including, without limitation, any Party's officer, employee or other representative ~~(the Parties hereby acknowledge that certain individuals occupy multiple positions in the Company)~~. Such witness statement must contain a full and detailed description of the facts, and the source of the witness's information as to those facts, sufficient to serve as that witness's evidence in the matter in dispute (each such statement, a "Witness Statement").

**Section 4.5        No Witness Statement or Expert Report shall be admissible unless such witness or expert makes himself or herself available for an Examination (as defined below) and at the Evidentiary Hearing (as defined below), or unless the Negotiating Party or Negotiating Parties who requested such witness's or expert's Examination or presence at the Evidentiary Hearing otherwise consents.**

**Section 4.6**        ~~Section 4.5~~ Each ~~of the~~ Negotiating ~~Parties~~**Party** shall provide a First Round Submission to the Panel, with a copy to all other Negotiating Parties, no later than the deadline established by the Panel for such submission (the "First Round Submission Deadline"). The First Round Submission of each Negotiating Party shall not be subject to any page limits.

Section 4.6**4.7** Each Negotiating Party, in its sole discretion, may opt to submit a second written submission to the Panel, with a copy to all other Negotiating Parties, no later than the deadline established by the Panel for such submission, which shall be at least ● calendar days after the First Round Submission Deadline (respectively, the "Second Round Submission" and the "Second Round Submission Deadline"). The Second Round Submission of each Negotiating Party shall not be subject to any page limits, provided that the ~~sole purpose of a~~ Second Round Submission shall be **limited** to (a) ~~respond~~**responding** to the First Round Submissions of other Negotiating Parties with regards to an Interest of the relevant ~~Negotiating~~ Party and (b) ~~present~~**presenting** additional information or arguments in support of such Negotiating Party's Presented Position(s) based on Examination Testimony (as defined below) **or new document discovery**.[16] For the purposes of this Protocol, the First Round Submission ~~and~~**,** the Second Round Submission**, the Post-Hearing Submission (as defined below)** and any other written submissions by any Negotiating Party to the Panel shall be collectively referred to as the "Written Submissions."

Section 4.7**4.8**        Each Negotiating Party, in its sole discretion, may opt to submit one or more reports prepared by their ~~Party-Appointed~~ Expert to respond to ~~Party-Appointed~~ Expert Reports submitted by the other Negotiating Parties (each such report, a "Rebuttal Expert

---

[16] ~~Consider whether other Negotiating Parties should be granted an opportunity to respond to these new arguments / information?~~

12

Report").[17] **Such Rebuttal Expert Reports, to the extent such information is different from the Negotiating Party's Expert Reports or relevant to the Rebuttal Expert Report, shall include the information required in Section 4.3 herein for the submission of Expert Reports.**

### ARTICLE V
### ACCESS TO INFORMATION

Section 5.1    ~~Commencing as early as the start of the negotiations~~**Each Party shall have prompt and equal access to the Asset Sale EDR** for any ~~Sale~~**sale** that ~~parties~~**the Negotiating Parties reasonably** anticipate to fall within the scope of ~~this Protocol but in any event no later than the date of entry into the Acquisition Agreement, each Party shall have equal access to the relevant Asset Sale EDR. Upon the later of (x) entry into the Acquisition Agreement or (y) ● days from the satisfaction of all Conditions (as defined below), the Company shall establish~~**the Protocol. In addition, the Company has established** an electronic data room (**the "Data Room"**) that shall contain ~~the following information: (a) all documents available in the relevant Asset Sale EDR and (b) additional documents as~~**any documents reasonably** requested by any Negotiating Party pursuant to a Data Request (as defined below) issued in accordance **with** Section 5.2 of this Protocol ~~(such electronic data room, a "Data Room"). Upon establishment of a Data Room, each Party shall have equal access to the Data Room~~**. It has been the intention of the Parties to use reasonable best efforts to provide prompt and equal access to the Data Room to all Parties, and the Parties agree to continue using their reasonable best efforts to provide such prompt and equal access to the Data Room to all Parties. For the avoidance of doubt, all information requested by or supplied to any Party shall be made available to all Parties**.

Section 5.2    Any Negotiating Party may~~, following the execution of the Acquisition Agreement,~~ send a written request to any Nortel Group entity, with a copy to all Negotiating Parties, for access to ~~[pre-existing]~~ documents concerning such Nortel Group entity in the possession of such Nortel Group entity ~~not contained in the relevant Asset Sale EDR~~ that may be reasonably relevant to resolution of any ~~Dispute or Supplementary Dispute, as the case may be.~~**dispute** in respect of an In-Scope Sale (a "Data Request"). The relevant Nortel Group entity shall ~~undertake commercially~~**use** reasonable **best** efforts to make such documents available in the Data Room as soon as reasonably practicable.

Section 5.3    ~~Each~~**Commencing as early as the start of the negotiations for any Sale that parties reasonably anticipate to fall within the scope of this Protocol, the Negotiating Parties shall use their reasonable best efforts to permit each** Negotiating Party ~~shall be permitted~~ the same ~~reasonable~~**prompt and equal** access to employees of NNC, NNL, and their **debtor and non-debtor** affiliates, including the Debtors and the Non-Filed Affiliates (each an "Employee"), for purposes of obtaining information relevant to a ~~Dispute~~**dispute** and having the Employee provide a Witness Statement. To enable an Employee to prepare for an interview, the Negotiating Party requesting such an interview shall deliver to the Employee, reasonably in advance of such an interview, a list of topics or subject matters which the requesting Negotiating

---

[17] ~~Parties to confirm that the intention is to introduce any new experts to provide rebuttals.~~

Party intends to cover with the Employee together with a list of information, if any, that the requesting Negotiating Party requests the Employee provide in writing. Any written information provided by such Employee in response to a request from a Negotiating Party shall be made available in the **relevant** Data Room as soon as reasonably practicable after it has been so provided. Interviews conducted pursuant to this Section 5.3 with Employees shall be expressly identified as being for such purpose and shall be separate from any discussions for the purpose of or in furtherance of a negotiated settlement of a ~~Dispute~~**dispute**.

Section 5.4   It is the intention of the Parties that each Employee will use its reasonable best efforts to assist any Negotiating Party that seeks assistance of such Employee. The Parties, however, acknowledge and recognize that (i) Employees have a corporate job function to perform with priorities that must be accommodated and (ii) each Employee's available time must be equitably shared with all Negotiating Parties ~~to the Dispute or Supplementary Dispute~~. Each Negotiating Party shall use its reasonable best efforts to ensure that Employees within its control provide the assistance requested of them by any Negotiating Party consistent with the considerations mentioned herein.

Section 5.5   ~~[Prior to the First DR Referral Date for any Dispute, any Negotiating Party may serve upon any other Negotiating Party a list of written questions which the requesting Negotiating Party determines to be relevant to such Dispute (each a "Questionnaire"). A Negotiating Party receiving a Questionnaire shall respond to such Questionnaire within [15] calendar days, which response shall be made available simultaneously to all Negotiating Parties.]~~[18]**[Each Negotiating Party shall be permitted reasonable access to third parties that have rendered advice to another Negotiating Party relevant to a dispute (each a "Third Party"). Any Nortel Debtor to whom such advice was rendered shall use its reasonable best efforts to ensure that such Third Parties are made available to the Negotiating Parties. Notwithstanding the foregoing or anything to the contrary contained in Section 5.10 below, a Negotiating Party shall not be permitted access to Third Party advice rendered before the Filing Date that is protected from disclosure by the attorney-client privilege, the solicitor-client privilege, the attorney work product doctrine or any other similar privilege.]**[6]

Section 5.6   ~~A Witness Statement shall be filed for each individual~~**Each witness** that a Negotiating Party ~~will~~**intends to** call as a witness at an Evidentiary Hearing ~~and, if another~~**or from whom a** Negotiating Party ~~requests, such individual shall~~**intends to submit a Witness Statement must** be made available for a pre-hearing examination under oath **(an "Examination")** to take place following the First Round Submissions but no later than [●] days before the commencement of the Evidentiary Hearing.[19]**, provided, further that the Witness Statement of any individual that does not submit to an Examination, if requested, shall only be considered by the panel upon the prior written consent of the Negotiating Party or Negotiating Parties that requested the Examination.**[7] A Negotiating Party may also ~~conduct additional examinations under oath~~**request an Examination** of any other Employee of another

---

[18] ~~Parties to discuss further. This seems very broad.~~

**[6] To be discussed.**

[~~19~~7] Parties to consider whether this should be tied to the Second Round Submission Deadline.

14

Party ~~on either the consent of the [Negotiating Parties] or, failing such consent, if the Panel concludes that it would be unfair to require the Negotiating Party requesting the examination to proceed to the Evidentiary Hearing without having conducted such examination.~~**or Third Party.**[8] Each examination will be held at the location of the relevant witness unless otherwise agreed to by the Negotiating Parties.  Each Negotiating Party may attend an ~~examination~~**Examination** and may ask questions at such ~~examination~~**Examination** regardless of whether such Negotiating Party requested the ~~examination of the witness~~**Examination of the witness.  The Negotiating Parties shall agree in advance of an Examination on the length and scope of such Examination, or failing such agreement within ● days in advance, the Panel shall determine the length and scope of such Examination.  Except for witnesses that a Negotiating Party intends to call as a witness at an Evidentiary Hearing or from whom a Negotiating Party intends to submit a Witness Statement, and unless the Party or Third Party whose Employee is requested to submit to an Examination consents to such Examination, the Panel, after submissions by the relevant Negotiating Parties and a hearing, may prevent an Examination solely on the grounds that such Examination would be unduly burdensome or would not likely lead to the discovery of relevant evidence.**

*Section 5.7*    Each Negotiating Party shall use its reasonable best efforts to make available any Employee within its control for ~~examinations~~**Examinations** pursuant to Section ~~5.6~~**5.7** or for the Evidentiary Hearing if they may be properly called pursuant to Section ~~6.●~~**6.2** of this Protocol as a non-expert witness for such Evidentiary Hearing.

*Section 5.8*    Each Expert that a Negotiating Party intends to present at an Evidentiary Hearing, if requested by another Negotiating Party, must be made available for an ~~examination under oath~~**Examination** no later than ● days before the commencement of the Evidentiary Hearing~~.  Such examination~~**, provided, further that the Expert Report or Rebuttal Expert Report of any Expert that does not submit to an Examination, if requested, shall only be considered by the panel upon the prior written consent of the Negotiating Party or Negotiating Parties that requested the Examination.  Such Examination** will be conducted in the manner described in Section ~~5.6 herein.~~**5.7.**

*Section 5.9*    Testimony from an Examination ("Examination Testimony") shall be admissible at an Evidentiary Hearing if (i) the witness giving such Examination Testimony is unavailable to testify at the Evidentiary Hearing, or (ii) agreed upon by all of the Negotiating Parties.  Where a witness will testify at an Evidentiary Hearing, such witness's Examination Testimony**, and, in the case of an Expert, the Expert Report or the Rebuttal Expert Report of such Expert,** shall not be admissible except for the purpose of impeaching such witness's live testimony at the Evidentiary Hearing.  **Nothing herein shall prevent a Negotiating Party from quoting or referring to Examination Testimony in their Written Submissions.**

***Section 5.10*  With respect to information created before the Filing Date that may be requested pursuant to this Article 5, the Parties agree not to withhold such information on the basis that such information is protected from disclosure by the attorney-client privilege, the solicitor-client privilege, the attorney work product doctrine or under any other similar**

---

[8] TBD:  Procedure for compelling third parties to appear for Examination.

15

[New York #2068820 v5]

**privilege, provided that by so agreeing, the Parties do not intend to waive any such applicable privilege or protection from disclosure with respect to any non-parties to this Protocol, and provided further that no Party shall be compelled to disclose any information potentially subject to any applicable privilege or protection from disclosure until the Parties have entered into a common interest agreement in substantially the form set forth in Schedule 8.**

**Section 5.11** ~~Section 5.10~~ All disagreements or controversies arising from or related to access to information and pre-hearing ~~examinations under oath~~**Examinations** provided for under this Protocol including, but not limited to, any disagreements related to the Data Room, the scope and reasonableness of questions on ~~examinations~~**Examinations**, Witness Statements and Experts Reports (each, a "Discovery Matter") shall be referred to the Panel for resolution, which resolution shall be determined by a majority of the Panel and shall be final and binding upon the Parties. The procedure for resolution of a Discovery Matter shall be left to the discretion of the Panel.

## ARTICLE VI
## EVIDENTIARY HEARING; ORAL ARGUMENT

*Section 6.1*        ~~If any Negotiating Party so requests within 10 Business Days of the expiration of the deadline to make Second Round~~**Following submission of all Written** Submissions, the Panel shall schedule ~~a hearing~~**one or more days of hearings, which may or may not be consecutive,** at which the Panel shall receive oral evidence **from the Negotiating Parties** (~~such hearing, whether or not held on consecutive days,~~ an "Evidentiary Hearing").

*Section 6.2*        Each Negotiating Party may present oral testimony from (a) an ~~expert appointed by such Negotiating Party~~**Expert who has submitted an Expert Report** or (b) a non-expert witness who has submitted a Witness Statement ~~and~~, **so long as** the Negotiating Party has given prior written notice to all other Negotiating Parties, in a timely manner and in accordance with any deadline established by the Panel for such notification, that such witness shall be called to provide evidence during an Evidentiary Hearing. Following direct testimony by a witness, any other Negotiating Party may question the witness in an order to be determined by the Panel. The Negotiating Party that initially presented the witness shall subsequently have the opportunity to ask additional questions raised in the other Negotiating Parties' questioning.

*Section 6.3*        Evidence from proceedings held in connection with the resolution of another ~~Dispute~~**dispute** under this Protocol, including, without limitation, evidence from a prior Evidentiary Hearing, Administrative Meeting, Written Submission, Witness Statement, ~~and~~**or** Expert Report (as defined below) for a given In-Scope Sale ("Prior Evidence") shall be admissible in the proceedings for subsequent In-Scope Sales, unless, on motion by any Negotiating Party, the Panel decides that the Prior Evidence shall not be admitted or otherwise limits the admissibility of the Prior Evidence, <u>provided</u> that each Negotiating Party shall have the

right to further re-direct and cross-examine such Prior Evidence~~.~~ **to the extent it consists of a witness's testimony.**[9]

 *Section 6.4* ~~The Panel shall hold one or more proceedings where~~**At the Evidentiary Hearing,** each of the Negotiating Parties ~~may~~**shall be entitled to present** orally ~~present~~ arguments in favor of their Presented Positions (the "Oral Argument")~~.~~ **and to examine witnesses, including Experts, from whom Witness Statements and Expert Reports, as applicable, have been submitted by another Negotiating Party.**

 *Section 6.5* ~~Oral Argument~~**Evidentiary Hearings** shall be held at a time and place specified by the Panel, but in no event before ● (●) calendar days or after ● (●) calendar days of the Second Round Submission Deadline. ~~Oral Argument shall be held in person or by videoconference, as decided by the Panel.~~ For the avoidance of doubt, Evidentiary Hearings and Oral ~~Arguments may take place in the same session, as determined by the Panel.~~**Argument shall be held in person.**

 **Section 6.6** **At the close of the final Evidentiary Hearing or final Oral Argument, whichever is later, the Panel shall determine whether to require post-hearing submissions, and if so, the scope, length and due dates for such submissions (each such submission, a "Post-Hearing Submission").**

# ARTICLE VII
## THE DECISION OF THE PANEL

 *Section 7.1* The Panel shall render a written decision (the "Decision") as soon as reasonably practicable after the completion of the ~~last~~**final Evidentiary Hearing or final** Oral Argument in the particular ~~Dispute~~**dispute**. Each Decision, Supplementary Decision and any other decision of the Panel shall be made by at least **a** majority of the members of the Panel.

 *Section 7.2* The Decision shall contain:  (a) the percentage, if any, (rounded to four decimal points) of the Sale Proceeds of a given In-Scope Sale to be allocated to the Canadian ~~Filed Sellers~~**Debtors**, the US ~~Filed Sellers~~**Debtors**, the EMEA ~~Filed Sellers~~**Debtors** and the Non-Filed ~~Selling Parties~~**Affiliates** (an  "Allocation"); ~~and~~ (b) **if the Panel deems appropriate,** instructions to the Escrow Agent to distribute the relevant Sale Proceeds to NNL (on behalf of the Canadian ~~Filed Sellers~~**Debtors**), NNI (on behalf of the US ~~Filed Sellers~~**Debtors**), the Joint Administrators (on behalf of the EMEA ~~Filed Sellers~~**Debtors**) and to the Non-Filed ~~Selling Parties~~**Affiliates** in accordance with the applicable Allocation.[20]**; and (c) [if necessary, a ruling on the allocation of any amounts to be returned to the Participating Parties from any reserves or escrow accounts established as part of the applicable In-Scope Sale.]**[10] ~~Upon~~**Following the issuance of a Decision, and upon** the written request of NNL, ~~NNUK, NNI~~

---

[9] **TBD - Whether Prior Evidence should be subject to limitations set forth herein regarding the binding nature of previous agreements and/or Decisions.**

[20] ~~How will the aggregate distributions to each estate be held?  This question is even more complicated for the case of Non-Filed Selling Parties.  After this has been resolved, we need to re-visit Section 7.9 as this provision (as drafted) does not cover Supplementary~~[10] **TBD – Whether to include a schedule of the reserve or escrow accounts from the sales to be dealt with in a** Decision.

17

orNNI (with the consent of the Creditors' Committee), the Joint Administrators (on behalf of the EMEA Debtors) or the Affiliates' Representative, as the case may be, the Panel shallthe Panel, [only after submissions by all reasonably affected Parties and a hearing, may] issue a supplementary decision upon the issuance of the Decision containing the percentage, if any, (rounded to four decimal points) of the applicable Allocation of the Sale Proceeds of such In-Scope Sale to be allocated within each of the Canadian Filed Sellers, the US Filed Sellers, the EMEA Filed Sellers or the Non-Filed Selling Parties, respectivelyamongst the group of debtors or affiliates represented by the Party requesting the supplementary decision (each such supplementary decision, a "Supplementary Decision"). Any incremental costs incurred in connection with the prosecution and rendering of a Supplementary Decision shall be borne solely by the Party or Parties requesting such Supplementary Decision, including any Panel Costs incurred in accordance with Section 2.5 herein. No Party will deliver a duly authenticated copy of any Decision or Supplementary Decision of the Panel to any Escrow Agent directing a release of any Sale Proceeds from any Escrow Account unless such Decision or Supplementary Decision contains an express direction to the Escrow Agent for the release of such Sale Proceeds to some or all of the Participating Parties.

*Section 7.3* Each Decision, Supplementary Decision and any other decision of the Panel shall be made in writing, and shall becontain a statement signed and authenticated by oneeach member of the Panel for and on behalfcertifying that such writing constitutes the decision of the Panel. [Any Decision or Supplementary Decision, in the sole discretion of the Panel, may statecontain a short statement the reasons upon which such Decision or Supplementary Decision, as the case may be, is based, provided that such Decision or Supplementary Decision, as the case may be, shall not include any dissenting reasons.][21]

*Section 7.4* In rendering a Decision, or Supplementary Decision, and an Allocation contained in such Decision, or Supplementary Decision, or Supplementary Decision and an Allocation set forth in such Decision or Supplementary Decision, the Panel shall (i) treat as final and binding any Partial Allocation Amount, and (ii) not be bound to adopt, follow or place any weight in rendering a Decision on (x) any allocation contained in the relevant Transaction Documents, other than as set forth in Schedule 7 attached hereto (such schedule to be supplemented from time to time with the consent of the Negotiating Parties), where "Transaction Documents" means, with respect to an In-Scope Sale, any agreement (a) among the one or more Parties, or (b) one or more Parties and the Purchaser, relating to or in connection with such In-Scope Sale, or (y) any previous Decision or Allocation of Sale Proceeds of the Panel relating to another In-Scope Sale. Additionally, in rendering such a Decision, Supplementary Decision or an Allocation contained in such Decision or Supplementary Decision the Panel shall not be bound (a) to select one of the Presented Positions or (b; (b) to adopt, follow or place any weight on anything contained in the Acquisition Agreements or any side or related agreement, [including any allocation agreed with the Buyer in or pursuant to the relevant Acquisition Agreement or any side or related agreement];[11] (c) by any previous Decision or Allocation of Sale Proceeds by the Panel

[21] Parties to discuss further.

[11] Tax counsel to provide rider to carve-out an exception to this rule b/c Nortel has agreed to allocate at least the book value to each tangible asset and the Panel has to respect this allocation principle.

**of a Party from another Party or Nortel Group entity pursuant to this Protocol, including, without limitation, documents and information made available in the Data Room, Witness Statements, Written Submissions, responses given by Employees in interviews pursuant to Section 5.3, responses to Questionnaires served pursuant to Section 5.5, Examination Testimony and oral testimony given in any Evidentiary Hearing (but excluding any Decision or Supplementary Decision).**

Section 8.2      In the event that a Party is served with or otherwise subject to legal process (including subpoena or discovery notice) requiring it to testify about, to produce, or otherwise to divulge Confidential Material, to the extent permitted by applicable law such Party will as soon as practicable inform the provider(s) of such Confidential Material so that the provider may seek a protective order or other remedy.  In the event that such protective order or other remedy has not been obtained and such entity is advised, in the opinion of counsel, that it is legally compelled to disclose any of the Confidential Material, such Party may disclose only such Confidential Material so advised to be disclosed.

Section 8.3      The Parties further agree that prior to the appointment of any individual to the Panel or appointment as an Expert by any Party ~~or the Panel~~, such individual shall agree in writing to preserve the confidentiality of the dispute resolution procedure conducted under this Protocol and all Confidential Material obtained hereunder.

Section 8.4      Nothing herein shall prevent any Party from disclosing information regarding the dispute resolution procedure conducted under **Section 9.4 of** this Protocol or all Confidential Material obtained hereunder for purposes of proceedings to resolve any disputes arising from, relating to or in connection **for purposes of all legal proceedings arising from, relating to or in connection** with the enforcement or implementation of this Protocol**, including, without limitation, any matters relating to enforcement or otherwise of any Decision or Supplementary Decision**.

### ARTICLE IX
### MISCELLANEOUS

Section 9.1      In all matters not expressly provided for in this Protocol, the Panel and the Parties shall act in the spirit of this Protocol and shall make every reasonable effort to ensure that any Allocation pursuant to this Protocol will be legally enforceable.

~~Section 9.2      There shall be no communications between any member of the Panel and a Party unless all other Parties are given the opportunity to be present during such communication.  For the avoidance of doubt, written communication (whether transmitted by email, facsimile or post) between any member of the Panel and a Party must also be transmitted contemporaneously to all other Parties.~~

**Section 9.2**      ~~Section 9.3~~ All notices, requests, instructions, directions and other communications provided for herein shall be made in writing (including by facsimile) delivered to the intended recipient as follows:

[New York #2068820 v5]

**If to the US Debtors:**
c/o Nortel Networks Inc.
Attention: ~~Anna Ventresca, Esq.~~ **John Ray**
~~Chief Legal Officer~~
Address: 2221 Lakeside Boulevard
Richardson, Texas 75082
U.S.A.
Facsimile No.: ~~+1 905 863 2075~~**[ ]**
Telephone No.: **[**+1 ~~905 863 1204~~ **312 259
7627]**

**If to the Canadian Debtors:**
c/o Nortel Networks Limited
Attention: Anna Ventresca, Esq.
Chief Legal Officer
Address: ~~[195 The West Mall~~ **5945 Airport
Road, Suite 360**
~~Toronto~~**Mississauga**, Ontario ~~M9C
5K~~**L4V 1**~~R9~~**R9**
Canada~~]~~
Facsimile No.: +1 905 863 2075
Telephone No.: +1 905 863 1204

**If to the EMEA Debtors:**
c/o Ernst & Young LLP
Attention: Alan Bloom
Address: One More London Place
London SE1 2AF
United Kingdom
Facsimile No.: +44 (0) 20 7951 1345
Telephone No.: +44 (0) 20 7951 9898

**If to the Monitor:**
c/o Ernst & Young, Inc.
Attention: Murray A. McDonald
Address: Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, ON M5K 1J7
Canada
Facsimile No.: +1 416 943 3300
Telephone No.: +1 416 943 3016

**If to the Creditors' Committee:**
c/o Akin Gump Strauss Hauer & Feld LLP

**With a copy to:**
Cleary Gottlieb Steen & Hamilton LLP
Attention: James L. Bromley, Esq.
Address: One Liberty Plaza
New York, New York 10006
U.S.A.
Facsimile No.: +1 212 225 3999
Telephone No.: +1 212 225 2163

**With a copy to:**
Ogilvy Renault LLP
Attention: Derrick Tay, Esq. and Michael J.
Lang, Esq.
Address: Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, Ontario M5J 2Z4
Canada
Facsimile No.: +1 416 216 4832 / 216 3930
Telephone No.: +1 416 216 4832 / 216 3939

**With a copy to:**
Herbert Smith LLP
Attention: Stephen Gale, Esq. and Kevin Lloyd,
Esq.
Address: Exchange House
Primrose Street
London EC2A 2HS
United Kingdom
Facsimile No.: +44 (0) 20 7098 4878
Telephone No.: +44 (0) 20 7466 2878

**With a copy to:**
Goodmans LLP
Attention: Jay Carfagnini, Esq.
Address: 250 Yonge Street, Suite 2400
Toronto, Ontario M5B 2M6
Canada
Facsimile No.: +1 416 979 1234
Telephone No.: +1 416 597 4107

**If to the Bondholders' Committee:**
c/o Milbank, Tweed, Hadley & McCloy LLP

22

Attention:  Fred S.  Hodara, Esq.
      David H. Botter, Esq.
Address:  One Bryant Park
     New York, New York 10036
     U.S.A.
Facsimile No.:  +1 212 872 1002
Telephone No.:  +1 212 872 8040

Attention: Albert A.  Pisa, Esq.
Address:  One Chase Manhattan Plaza
     New York, New York 10005-1413
     U.S.A.
Facsimile No.:  +1 212 530 5219
Telephone No.:  +1 212 530 5319

All notices, requests, instructions, directions and other communications to be sent under this Protocol to the Non-Filed Affiliates shall be made in writing (including by facsimile) and delivered to the contact addresses or facsimile numbers set forth in Schedule 4 hereto.

**Section 9.3** ~~Section 9.4~~ This Protocol shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction, except to the extent that the United States Federal **Arbitration** Act applies, provided that Section 9.7 shall be governed exclusively by English law.

**Section 9.4** ~~Section 9.5~~ To the fullest extent permitted by applicable law, each Party (i) agrees to submit to the ~~non-~~exclusive jurisdiction of the US Court and the Canadian Court (in a joint hearing conducted under the cross-border ~~Protocol~~**protocol** adopted by such courts, as it may be in effect from time to time (the "Cross-Border Protocol")), for purposes of all legal proceedings arising from, relating to or in connection with the enforcement or implementation of this Protocol, **including, without limitation, any matters relating to enforcement or otherwise of any Decision or Supplementary Decision,** (ii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such action brought in such ~~a Court~~**courts** or any claim that any such action brought in such ~~a Court~~**courts** has been brought in an inconvenient forum, (iii) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by law shall be valid and sufficient service thereof, and (iv) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law, provided that any claim, action or proceeding set forth in Section ~~9.7~~**9.6** of this Protocol shall be brought exclusively in the English courts.  ~~[designation of process agent to be considered]~~

**Section 9.5** **Each Party set forth on Schedule 6[12] (each such party, "Designating Party") has appointed ● as its authorized agent (the "Process Agent"), upon whom process may be served in any legal proceeding arising from, relating to or in connection with the enforcement or implementation of this Protocol. Each Designating Party consents to process being served in any legal proceeding arising from, relating to or in connection with the enforcement or implementation of this Protocol by mailing a copy thereof by registered or certified mail to the Process Agent. Each Designating Party hereby represents and warrants that the Process Agent has accepted such appointment and has agreed to act as said agent for service of process, and each Designating Party agrees to take any and all**

---

[12] **Non-Filed Affiliates + EMEA Non-Filed entities. TBD – whether EMEA Debtors should be included in this list.**

[New York #2068820 v5]

**action, including the filing of any and all documents that may be necessary to continue such appointment in full force and effect as aforesaid.  Service of process upon the Process Agent shall be deemed, in every respect, effective service of process upon the relevant Designating Party.**

Section 9.6       No provision of this Protocol (other than as set forth in Sections [**9.2,** 9.3, 9.4, ~~9.5,~~ 9.6, 9.7, 9.10, 9.11, 9.15, 9.17 and 9.18] of this Protocol) shall be effective until the satisfaction of the following conditions:  (A) each of the US Court ~~and,~~ the Canadian Court ~~approving~~**and the UK Court approve** the entirety of this Protocol and all of the provisions hereof (the "~~North American Court Condition~~") ~~and (B) the UK Court giving a direction (the "UK Court's Directions")~~[23] ~~that the Joint Administrators be at liberty to enter into this Protocol (the "UK Court Condition" and, together with the North American Court Condition, the~~ "Conditions").

**Section 9.7       [Nothing contained in any Transaction Document, including without limitation any intellectual property license termination agreements, shall be with prejudice to (A) any right, entitlement or claim by or on behalf of NNL or any affiliate or subsidiary which licensed any intellectual property from NNL (each a "Nortel Licensee") to assert solely as (x) between NNL and any such Nortel Licensee or (y) between two or more Nortel Licensees any ownership or proprietary interest in and to the intellectual property subject to the intellectual property licenses, whether in respect of or pursuant to that certain Master Research and Development Agreement, dated as of December 22, 2004 (as amended and supplemented from time to time, the "Master R&D Agreement"), or otherwise, for the purpose of advocating such position in connection with an allocation of the Sale Proceeds resulting from the sale, license or other disposition of the intellectual property in an In-Scope Sale, or (B) the right, entitlement or claim by or on behalf of NNL or any Nortel Licensee to dispute and defend any such assertions in connection with an allocation of Sale Proceeds from an In-Scope Sale; and][13]**

**Section 9.8**       ~~Section 9.7~~ The Parties agree that the Joint Administrators have negotiated and are entering into this Protocol as agents for the EMEA Debtors to which they are appointed and that none of the Joint Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Nortel Group company to observe, perform or comply with any of its obligations under this Protocol or under or in relation to any associated arrangements or negotiations.  The Joint Administrators are a Party to this Protocol: (i) as agents of certain of the respective EMEA Debtors of which they are administrators; and (ii) in their own capacities solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the United Kingdom Insolvency Act 1986 and enforcing the obligations of certain other Parties to this Protocol.  Notwithstanding anything to the contrary in this Protocol, any claim, action or proceeding against the Joint Administrators in their personal capacities (and

---

[23] ~~Is UK Court approving the Protocol?  Compare with HS's suggested edits to Sections 9.12 and 9.14.~~

[13] **To be discussed.**

[New York #2068820 v5]

not as agents for any EMEA Debtors) under this Protocol shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English ~~Courts.~~**courts.**[14]

*Section 9.9* **The Parties agree that the Joint Israeli Administrators have negotiated and are entering into this Agreement as agents for the Israeli Company and that none of the Joint Israeli Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Nortel Group company to observe, perform or comply with any of its obligations under this Protocol or under or in relation to any associated arrangements or negotiations. The Joint Israeli Administrators are a party to this Protocol: (i) as agents of the Israeli Company; and (ii) in their own capacities solely for (a) obtaining the benefit of any provisions of this Protocol expressed to be conferred on them and (b) enforcing the obligations of the other Parties to this Protocol. Notwithstanding anything to the contrary in this Protocol, any claim, action or proceeding against the Joint Israeli Administrators arising from or related to the personal liability of the Joint Israeli Administrators, their firm, partners, employees, advisers, representatives or agents, (and not as agents for any Israeli Company) under this Agreement shall be governed exclusively by Israeli law and subject to the exclusive jurisdiction of the Courts of Israel.**

*Section 9.10* ~~*Section 9.8*~~ Except as specifically set forth in this Protocol, this Protocol is not intended to, and shall not, create rights in any person or entity not a Party hereto.

*Section 9.11* ~~*Section 9.9* Without prejudice to the provisions of Sections 9.10 and 9.20 below, other~~**Other** parties may be added to this Protocol only with the prior unanimous written consent of all Parties hereto, which consent shall not be unreasonably withheld.

~~*Section 9.10* **[TBD – UK counsel to advice whether we need language delegating authority from NNSA to the Joint Administrators]**~~

*Section 9.12* ~~*Section 9.11*~~ This Protocol may be executed in separate counterparts (which may include counterparts delivered by facsimile transmission) and all of said counterparts taken together shall be deemed to be an original, shall be binding on the Party who signed the counterpart and together shall constitute a single agreement.

*Section 9.13* ~~*Section 9.12*~~ This Protocol constitutes the complete agreement among the Parties with respect to the subject matter herein, and supersedes all other agreements among **some or all of** the Parties with respect to the subject matter herein. This Protocol may be amended, on no less than 10 Business Days' notice, only by means of a writing signed by all the remaining Parties to this Protocol, which amendments, if material in the judgment of the Parties, must be approved by each of the Courts.

[14] **UK counsel to advice whether we need language delegating authority from NNSA to the Joint Administrators.**

**Section 9.14**      ~~Section 9.13~~ This Protocol does not affect the confidentiality of any information exchanged between or among any of the Parties pursuant to any prior agreements or understandings.

**Section 9.15**      ~~Section 9.14~~ This Protocol shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns from the date of its execution, but is expressly subject to and contingent upon its approval and entry by the Courts.

**Section 9.16**      ~~Section 9.15~~ Each Party to this Protocol shall (a) use commercially reasonable efforts to satisfy the Conditions as soon as possible, taking into account the availability of the respective Courts to address the matters set forth in this Protocol; (b) keep all other Parties reasonably apprised of the progress of the satisfaction of the Conditions and provide such other information regarding the satisfaction of the Conditions as reasonably requested by other Parties; and (c) use commercially reasonable efforts to allow any other Party, which so requests in writing, reasonable participation in connection with any proceedings in any Court related to the satisfaction of the Conditions.

**Section 9.17**      ~~Section 9.16~~ Subject to satisfaction of the Conditions, each Party (but, for the avoidance of doubt, not the Joint Administrators in their personal capacities) hereby severally represents and warrants to each other that, as of the date hereof: (a) such Party has the power and authority to enter into this Protocol and to carry out its obligations hereunder; (b) the execution of this Protocol, and the consummation of the transactions contemplated herein, have been authorized by all necessary approvals, and no other act or proceeding on its part is necessary to authorize the execution of this Protocol; and (c) this Protocol has been duly executed by such Party and constitutes the legal, valid and binding obligations of such Party.

**Section 9.18**      ~~Section 9.17~~ In the event that any provision of this Protocol shall be illegal, invalid or unenforceable, such provision shall be construed by limiting it in such a way so as to render it legal, valid and enforceable to the maximum extent provided by applicable law, and the legality, validity and enforceability of the remaining provisions shall not in any way be affected or impaired by any illegality, invalidity or unenforceability of any provision.  The Parties shall negotiate in good faith with respect to any provision to this Protocol found to be illegal, invalid or unenforceable, in order to agree on a substitute provision giving effect, to the maximum extent possible, to the original intent of such provision.  **Notwithstanding anything to the contrary in this Section, in the event that all or any part of Section(s) ● of this Protocol shall be found pursuant to a final order of a court or tribunal with competent jurisdiction to be illegal, invalid or unenforceable, or any part of Section(s) ● is any way struck down or modified without the consent of the Parties, this Protocol in its entirety shall automatically terminate and shall cease to have any force and effect.**

**Section 9.19**      ~~Section 9.18~~ Except as specifically set forth in this Protocol, the obligations of each Party hereunder are several, and not joint and several.

**Section 9.20**      ~~Section 9.19~~ If any of the Parties, the ~~Mediator, the~~ Experts, the Affiliates' Representative or the Panel shall have an obligation or deadline imposed pursuant to this Protocol that shall fall on any of a Saturday, Sunday or a national public holiday in any of the United States, Canada or the United Kingdom, such Party**, Expert or the Panel** shall have

26

until the next Business Day immediately following such day to comply with such deadline or obligation.

**Section 9.21** ~~Section 9.20~~ The Parties agree that, if after the date hereof, any subsidiary of any US Debtor commences chapter 11 proceedings in the US Court, then the Parties and such entity shall enter into an accession agreement whereby such entity shall accede to this Protocol as a US Debtor.

**Section 9.22** ~~Section 9.21~~ The Non-Filed Affiliates hereby appoint [●][24] as the Affiliates' Representative and grant the Affiliates' Representative the authority to represent each Non-Filed Affiliate in all matters relating to this Protocol, including, without limitation, the power (a) to agree to any Partial Allocation Amount on behalf of the Non-Filed Affiliates, (b) to agree to a fair and equitable allocation of the Sale Proceeds pursuant to Section 1.1 or otherwise, (c) to amend or waive any provision of this Protocol, (d) to deliver and receive any notices permitted or required under this Protocol, and (e) to perform on behalf of the Non-Filed Affiliates any other act which the Affiliates' Representative deems necessary or desirable in the performance of the Affiliates' Representative's role under this Protocol.  Any action taken by the Affiliates' Representative and any agreement or settlement entered into by the Affiliates' Representative on behalf of the Non-Filed Affiliates in connection with the performance of this Protocol shall be binding upon and enforceable against the Non-Filed Affiliates without any need for further ratification by the Non-Filed Affiliates. In addition, the Non-Filed Affiliates ~~appoint [●] and [●] as~~**hereby grant the Affiliates' Representative the authority to select and retain one** counsel and financial advisor~~, respectively,~~ to assist the ~~Non-Filed~~ Affiliates**' Representative in connection with any proceedings or matters under this Protocol**.

---

[24] ~~The Affiliate's Representative should be a corporate entity.~~

27

# Mendoza, Richard

| | |
|---|---|
| **From:** | Inna Rozenberg [irozenberg@cgsh.com] |
| **Sent:** | 07 April 2010 22:02 |
| **To:** | 'aleblanc@milbank.com'; Alex MacFarlane; amark@ogilvyrenault.com; 'annav@nortel.com'; 'apisa@milbank.com'; Qureshi, Abid; Kahn, Brad; 'Brent.R.Beekenkamp@ca.ey.com'; 'bzarnett@goodmans.ca'; Craig B BROD; David.Descoteaux@Lazard.com; Botter, David; 'dtay@ogilvyrenault.com'; Hodara, Fred; DAVIES, GAVIN; Giles Boothman; Howard ZELBO; James L BROMLEY; 'jcarfagnini@goodmans.ca'; jharris@milbank.com; Segger, Joanne; Whiteoak, John; 'jpasquariello@goodmans.ca'; 'jstam@ogilvyrenault.com'; Sturm, Joshua; LLOYD, KEVIN; Rowe, Kevin; Lisa M SCHWEITZER; 'Matthew.Hart@lazard.com'; Michael Wunder; 'mlang@ogilvyrenault.com'; mnolan@milbank.com; 'Murray.A.McDonald@ca.ey.com'; 'Nortel'; 'Orzyr@bennettjones.com'; Bagon, Paul; Jacobs, Ryan; Pees, Robert; 'SDrymer@ogilvyrenault.com'; Shayne Kukulowicz; stenai@ogilvyrenault.com; GALE, STEPHEN; tkreller@milbank.com; 'ZychK@bennettjones.com'; Sanjeet Malik; Theodore Geiger; jravidity@earthlink.net; Jacobs, Ryan |
| **Subject:** | Nortel - Allocation Protocol |

**Attachments:** Allocation Protocol 4-7-10.doc; Protocol blackline.doc

Dear all,

Please find attached the latest draft of the Allocation Protocol, along with a blackline against the last version circulated.

This draft incorporates comments received from Ogilvy and Goodmans (denoted as OR/G) and Herbert Smith (denoted as HS), as well as some smaller language changes that Cleary implemented.

Suggested additions to the text are bracketed and preceded by an indication of the firm making the proposal (using the initials described above). Suggested deletions to the text are bracketed, and the firm suggesting the deletion is indicated by the legend [OR/G: delete] or [HS:delete], which appears immediately following the language at issue. More substantive comments are included in the footnotes, preceded by an indication of which firm made the comment (again, using the initials).

Best regards,
Inna Rozenberg

Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999
www.clearygottlieb.com  |  irozenberg@cgsh.com

This message is being sent from a law firm and may contain confidential or privileged information.  If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

THIS DRAFT AGREEMENT HAS BEEN PRODUCED
FOR DISCUSSION AND SETTLEMENT PURPOSES
ONLY AND IS SUBJECT TO THE PROVISIONS OF
RULE 408 OF THE RULES OF EVIDENCE FOR
UNITED STATES COURTS AND MAGISTRATES AND
ANY OTHER SIMILAR APPLICABLE RULES IN ALL
PERTINENT JURISDICTIONS.

*Draft of ~~February 26,~~ April 7, 2010*
*Privileged and Confidential*

## PROTOCOL FOR RESOLVING DISPUTES
## CONCERNING ALLOCATION OF SALE PROCEEDS

This Protocol for Resolving Disputes Concerning Allocation of Sale Proceeds, dated ●, 2010 (the "Protocol"), is entered into by and among Nortel Networks Limited ("NNL") and the other entities set forth in Schedule 1 attached hereto, Nortel Networks Inc. ("NNI") and the other entities set forth in Schedule 2 attached hereto, the Joint Administrators (as defined below), the Joint Israeli Administrators (as defined below) and the entities set forth in Schedule 3 attached hereto (the "EMEA Debtors"), certain affiliates of the Debtors (as defined below) set forth in Schedule 4 attached hereto (the "Non-Filed Affiliates"), the Monitor (as defined below), the Official Committee of Unsecured Creditors appointed in the US Proceedings (as defined below) (the "Creditors' Committee") and the steering committee members of the ad hoc group of bondholders that have executed confidentiality or non-disclosure agreements with the Canadian Debtors and the US Debtors (each, as defined below) (the "Bondholders' Committee," and along with the Creditors' Committee, the "Committees") (each, a "Party," and collectively, the "Parties"). The Joint Administrators, in their personal capacity, shall be Party to this Protocol as provided in Section ~~9.7~~10.8 and solely for the purposes of obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to the Joint Administrators and references to the Parties shall be construed accordingly. The Joint Israeli Administrators,[1] in their personal capacity, shall be Party to this Protocol as provided in Section ~~9.8~~10.9 and solely for the purposes of obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to the Joint Israeli Administrators and references to the Parties shall be construed accordingly.[42]

WHEREAS, on January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC," and together with its debtor and non-debtor affiliates, the "Company" or the "Nortel Group"), NNL and certain of NNC's other Canadian affiliates included in Schedule 1 (collectively, the "Canadian Debtors"), commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and the "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor"); and

WHEREAS, on the Filing Date and on July 14, 2009 (with respect to Nortel Networks (CALA) Inc.), NNI and certain of NNI's United States affiliates included in Schedule 2 (collectively, the "US Debtors" and, together with the Canadian Debtors and the EMEA Debtors, the "Debtors") filed petitions in the United States Bankruptcy Court for the District of Delaware (the "US Court") under chapter 11 of title 11 of the United States Code (respectively, the "US

---

[1] HS to speak to the Israeli Joint Administrators to find out what they intend to do in relation to representation

[42] Subject to review by NNI's UK counsel.

1

Proceedings" and the "Bankruptcy Code"); and

WHEREAS, on the Filing Date, Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel Networks S.A. ("NNSA") and certain of NNUK's affiliates in the Europe, Middle East and Africa ("EMEA") region, including those in Schedule 3 attached hereto, commenced administration proceedings (the "UK Proceedings" and, together with the Canadian Proceedings and the US Proceedings, the "Proceedings") before the High Court of Justice in London, England (the "UK Court" and, together with the Canadian Court and the US Court, the "Courts"), and the UK Court appointed individuals from Ernst & Young LLP (the "UK Administrator") and, in the case of NNIR only, Ernst & Young Chartered Accountants (the "NNIR Administrator"), as administrators in the UK Proceedings (the UK Administrator and the NNIR Administrator collectively, and including their respective successors, replacements and any subsequent office holders appointed to the relevant EMEA Debtors, the "Joint Administrators");[3] and

WHEREAS, subsequent to the Filing Date, Nortel Networks Israel (Sales and Marketing) Limited (In Administration)(the "Israeli Company") filed applications with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings, and the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof (the "Joint Israeli Administrators") on January 19, 2009, as joint administrators of the Israeli Company under the Israeli Companies Law, and further on November 25, 2009, the Israeli Court sanctioned a scheme of arrangement, which automatically means that the Israeli Company is no longer under a stay of proceedings, and further on November 29, 2009, the Israeli Court ordered that the Joint Israeli Administrators remain in office until the scheme of arrangement is completed in full, including up until the time when all funds arising from the sale of the Israeli Company's assets, are received and allocated; and

WHEREAS, subsequent to the Filing Date, NNSA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator (the "NNSA Liquidator") and an administrator (the "NNSA Administrator") have been appointed by the Versailles Commercial Court (Docket No. 2009P00492) for NNSA; and

WHEREAS, the Debtors and their respective subsidiaries and affiliates have sold, have agreed to sell, or may in the future sell, license or otherwise monetize their tangible and intangible assets outside the ordinary course **of business** in several transactions (any such transaction, a "Sale"), including in connection with a sale of a particular line of business or portfolio of technologies (each, a "Business"), to third party buyers (each such buyer, a "Buyer"); and

WHEREAS, the Company has provided, or intends to provide, Buyers and potential Buyers, as applicable, with access to a data room (which may be an electronic data

---

[3] **HS to determine whether it can represent EMEA Non-Fileds**

2

room) containing the books and records of the relevant Business and other financial information relating to such Business (each such electronic data room, an "Asset Sale EDR"); and

WHEREAS, with respect to each Business, the Debtors and their respective affiliates have entered, or intend to enter, into one or more acquisition, sale, license, transfer and/or other ancillary agreements (each such agreement, with respect to the sale, transfer and/or license of each Business, an "Acquisition Agreement") with the Buyer to govern the sale of such Business; and

WHEREAS, after entering into an Acquisition Agreement in the case where a so-called "stalking horse" bidder has been selected, or prior to entering into an Acquisition Agreement in the case where no "stalking horse" bidder has been selected, certain of the Debtors, as applicable, have applied or intend to apply to the applicable Courts for orders authorizing such Debtors to establish notice, bidding and sale procedures for the Sale of ~~each~~**the particular** Business (the "Bidding Procedures Orders"); and

WHEREAS, after entry of the Bidding Procedures Orders, such Debtors intend to conduct, or have conducted, an auction for the Sale of each Business in accordance with the Bidding Procedures Orders; and

WHEREAS, after conclusion of the auction, certain of the Debtors intend to apply, or have applied, to certain of the Courts for orders approving the Sale of each Business to the relevant Buyer (the "Sale Orders"); and

WHEREAS, in connection with certain Sales, the relevant Debtors intend to request, or have requested, that the Sale Orders contain procedures for the establishment of one or more escrow accounts (the "Escrow Account") overseen by an independent agent (the "Escrow Agent") for deposit of the proceeds of the Sale (the "Sale Proceeds") pending the allocation thereof in accordance with the provisions of this Protocol (each such Sale, as set forth in Schedule 5 attached hereto, an "In-Scope Sale")[24]; and

WHEREAS, after entry of the Sale Orders and satisfaction or waiver of the conditions to closing set forth in the relevant Acquisition Agreement, the Debtors and their respective affiliates intend to consummate, or have consummated, the Sale in accordance with the Sale Orders (in each case, a "Closing"); and

WHEREAS, the Debtors and certain other parties previously agreed, pursuant to the Interim Funding and Settlement Agreement, dated as of June 9, 2009 (as amended from time to time, the "Interim Funding Agreement"), as soon as reasonably practical following the execution of such agreement, to negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds, which would provide binding procedures for the allocation of Sale Proceeds where the Selling

---

[24] Schedule 5 will include monetization transactions related to intellectual property of the Debtors and Non-Filed Affiliates.

Debtors (as defined therein) have been unable to reach agreement regarding such allocation; and

WHEREAS, the Parties wish to agree on procedures for determining allocation of Sale Proceeds of each In-Scope Sale between and among each of the Debtors and the Non-Filed Affiliates**, [OR/G: in each case that are participating as Selling Debtors in such In-Scope Sale]** (each, a "Participating Party," and collectively, the "Participating Parties"); and

WHEREAS, the Parties wish to give each Participating Party an opportunity to assert, pursuant to the procedures set forth in this Protocol, an entitlement to an allocation of Sale Proceeds with respect to any In-Scope Sale, regardless of whether or not such Participating Party was a party or signatory to the Acquisition Agreements applicable to such In-Scope Sale; and

WHEREAS, each Party wishes to participate in the procedures set forth in this Protocol, and has agreed to be bound by this Protocol**, any Partial Allocation Amount (as defined below)** and any outcome with respect to the Allocation (as defined below) of Sale Proceeds of each In-Scope Sale pursuant to a Decision or a Supplementary Decision of the Panel (each, as defined below); and

WHEREAS, the Non-Filed Affiliates have appointed ●[35] as their representative, which shall represent the Non-Filed Affiliates in connection with the negotiations and other procedures with respect to the Allocation of Sale Proceeds of each In-Scope Sale under this Protocol ("Affiliates' Representative"), and the Non-Filed Affiliates have also appointed an independent financial advisor and an independent counsel to assist the Affiliates' Representative.

NOW THEREFORE, IT IS HEREBY CONSENTED TO, STIPULATED, AGREED AND ORDERED THAT:

## ARTICLE I
## INITIAL NEGOTIATIONS

*Section 1.1*        The Negotiating Parties (as defined below) shall use commercially reasonable efforts to negotiate in good faith and as expeditiously as possible a [fair and equitable][6] allocation of the Sale Proceeds of each In-Scope Sale among the Participating Parties, where "Negotiating Parties" means NNL, NNI, the Monitor, the Creditors' Committee, the Bondholders' Committee, the Joint Administrators and the Affiliates' Representative.

*__Section 1.2__*        **[HS: With the respect to all In-Scope Sales that closed before the date of this Protocol, if the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of such In-Scope Sales within [80] calendar days after the date of this Protocol, then the dispute as to the allocation of the relevant Sale Proceeds among the Participating Parties shall be automatically referred to mediation. Such mediation shall be held within [20] calendar days therefrom. Such mediation will cover the**

---

[35] Identity of Affiliates' Representative to be discussed

[6] **OR/G: standard should be "fair and reasonable." Scope of dispute to be discussed.**

4

allocation of proceeds of all In-Scope Sales that have closed before the date of this Protocol unless the Negotiating Parties agree otherwise. The identity of the mediator shall be agreed between the Parties or in circumstances where no such agreement can be reached shall be appointed by _____ .]

**_Section 1.3_** [HS: If the mediation in Section 1.2 above is not successful and the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of such In-Scope Sales within [10] calendar days after the commencement of the mediation, then the dispute as to the allocation of the Sale Proceeds from the sale of the Enterprise business shall be automatically referred to the Panel (as defined below) pursuant to this Protocol. For the avoidance of doubt with respect to any and all In-Scope Sales that close after the date of this Protocol, the allocation of Sale Proceeds of such In-Scope Sales shall be determined by agreement between the Negotiating Parties and/or if possible by the mediation set out at Section 1.2 above, failing which by subsequent reference to the Panel.]

**_Section 1.4_** ~~Section 1.2~~ [With respect to any In-Scope Sale that closed before the date of this Protocol, if the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of such In-Scope Sale within [100] calendar days after the date of this Protocol, then the dispute as to the allocation of the relevant Sale Proceeds among the Participating Parties shall be automatically referred to the Panel (as defined below) pursuant to this Protocol. With respect to any In-Scope Sale that closes after the date of this Protocol, if the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of such In-Scope Sale within [100] calendar days after the closing of such In-Scope Sale, then the dispute as to the allocation of the relevant Sale Proceeds among the Participating Parties shall be automatically referred to the Panel (as defined below) pursuant to this Protocol.[HS: delete] If an allocation dispute is referred to the Panel, the Panel shall determine a [fair and equitable] allocation of the Sale Proceeds of the relevant In-Scope Sale to be distributed to the Participating Parties. The Parties hereby agree that the negotiation periods provided for in this Section ~~1.2~~1.4 [HS would instead include Sections 1.2 and 1.3] may be extended by mutual written agreement of all the Negotiating Parties or may be terminated before their expiration upon written notice by any Negotiating Party delivered to all other Negotiating Parties.

**_Section 1.5_** ~~Section 1.3~~ Upon the automatic referral of an allocation dispute to the Panel as contemplated by Section ~~1.2,~~1.4, NNI shall be responsible for promptly sending a notice to the Panel and the other Negotiating Parties, indicating in such notice that pursuant to the terms of Section ~~1.2 of this Protocol,~~1.4, an allocation dispute has been automatically referred to the Panel. If for any reason NNI shall fail to send such notification to the Panel and the other Parties within three days (excluding Saturdays, Sundays and national public holidays in any of the United States, Canada or the United Kingdom) (each a "<u>Business Day</u>") of the automatic referral of the allocation dispute to the Panel, any other Negotiating Party may undertake to send such notice to the Panel and the other Negotiating Parties.

**_Section 1.6_** ~~Section 1.4~~ The Negotiating Parties, in their sole discretion, may agree to a partial allocation of the Sale Proceeds [of an In-Scope Sale][HS: delete] (each such partial allocation, a "<u>Partial Allocation Amount</u>").[47] If the Negotiating Parties agree to a Partial

5

Allocation Amount, such Partial Allocation Amount shall be released from the Escrow Account and distributed to one or more Participating Parties immediately following the later of (x) the closing of the In-Scope Sale and (y) the date when the Negotiating Parties agree to such Partial Allocation Amount.  Any remaining amounts shall remain in the Escrow Account until released from the Escrow Account in accordance with the provisions of this Protocol.  **[HS: Any release of a Partial Allocation Amount shall be in accordance with the terms of the relevant escrow agreement for any relevant In-Scope Sale.]**

## ARTICLE II
## REFERRAL OF ALLOCATION DISPUTES TO THE PANEL

*Section 2.1*        As contemplated by Section ~~1.2 of this Protocol,~~**1.4,** an allocation dispute shall be automatically referred to a dispute resolution panel constituted in accordance with Sections 2.2, 2.3 and 2.4 (the "<u>Panel</u>").

*Section 2.2*        The Parties have previously requested and received from the members of the Panel initial conflict disclosures [in accordance with the standard for "disinterestedness" under the Bankruptcy Code][8] as well as agreed upon procedures for identifying and preventing any potential current or future conflicts, and have determined based on such disclosures that the following individuals are acceptable and shall serve as the members of the Panel:  ●, ● and ●. For the purposes of administrative convenience, the Panel may appoint an administrative secretary.[9]

*Section 2.3*        Each member of the Panel shall be and remain at all times impartial and independent of the Parties. Each member of the Panel shall disclose to the Parties any new or previously undisclosed conflict, [pursuant to the "disinterestedness" standard under the Bankruptcy Code,] that comes to the Panel member's attention from time to time, as well as any proposed remedy with respect to such conflict. Following any such disclosure, the Negotiating Parties agree to confer regarding whether such disclosure requires disqualification of the Panel member, it being understood that a Panel member's disclosure under this Section 2.3 does not automatically render the Panel member conflicted or require the Panel member's disqualification. If the Negotiating Parties cannot reach an agreement within [x] days of the Panel member's disclosure as to whether such Panel member should be disqualified, the US Court and the Canadian Court, in a joint hearing conducted under the Cross-Border Protocol (as defined below), shall decide the issue. Notwithstanding anything to the contrary in this Protocol, if a member of the Panel is disqualified pursuant to this Section 2.3, the sole method for replacement of such member shall be as set forth in Section ~~2.4 of this Protocol.~~**2.4.**

---

[7] Prior to signing of this Protocol (by which time the timing of the CDMA and Equinox closing should be known to the Parties), this Protocol will be revised to add language to accommodate EMEA's request that the Equinox dispute be the first allocation dispute to be handled by the Panel so long as it does not unreasonably delay the allocation for CDMA.

[8] OR/G: Conflict disclosure standard to be discussed.

[9] OR/G: If the Negotiating Parties cannot agree upon Panel members, each estate should be permitted to select one member of the Panel.

6

*Section 2.4*        If any member of the Panel is unable or unwilling to serve after receiving notice of the referral of any matter to the Panel or at any time thereafter, or is disqualified as a result of a conflict pursuant to the procedures in ~~section~~**Section** 2.3, such member shall be replaced as soon as possible by another individual to be selected by the Participating Party that originally proposed the inclusion of the outgoing Panel member in Section 2.2, [as previously set forth in writing provided to all Negotiating Parties, but ~~only upon~~ the **Negotiating Parties must give** prior written consent **to the appointment** of the ~~other Negotiating Parties~~**replacement Panel member**, which consent shall not be unreasonably withheld.][10]   [HS: delete and add:  **Such Participating Party will provide written notification to all other Negotiating Parties of the identity of the replacement Panel Member.  The Negotiating Parties hereby consent to the concept of a replacement Panel Member being appointed but shall have the opportunity to consent to the identity of such replacement Panel Member.  Such consent will not be unreasonably withheld.  Following such consent from all Negotiating Parties, the appointment of the replacement Panel Member will be effective.  Such potential replacement Panel member shall meet the standards of impartiality and independence set out in Section 2.3 above and shall be from the same country as the Panel member being replaced.]** The Panel may not consider or continue to consider issues or render any Decision, Supplementary Decision or other decision during the period when a Panel member is being replaced.

*Section 2.5*        Each of the Negotiating Parties (other than the Non-Filed Affiliates, as represented by the Affiliates' Representative) shall bear its respective costs and expenses, including attorneys' fees, associated with the preparation and presentation of its case to the Panel and any other costs and expenses incurred by such Negotiating Party in connection with the proceedings pursuant to this Protocol, provided that nothing herein shall in any way affect any arrangements or agreements to cover [certain] fees and expenses of the Committees, including, without limitation, pursuant to any order by the US Court approving the fee applications of the Committees, as applicable.  The Panel shall specify in each Decision the total amount of the costs and other expenses of the Panel in connection with such Decision (the "Panel Costs"), and the proportions in which the Participating Parties shall bear such Panel Costs.  The costs and expenses of the Affiliates' Representative and the portion of the Panel Costs to be paid by the Non-Filed Affiliates shall be paid **or reimbursed** from the Sale Proceeds of [the particular][HS: delete and replace with: an] In-Scope Sale allocated to the Non-Filed Affiliates.  [HS: If the **Sales Proceeds are insufficient to pay the costs and expenses of the Affiliates' Representative and their portion of the Panel costs, the Non-Filed Affiliates shall pay such costs jointly and severally in proportion to the allocation they receive from the Sale Proceeds.[11]  The Panel may direct the Parties to make one or several interim payments on account of their costs in reaching a Decision ("Interim Costs").  The Parties agree to instruct the Escrow Agent to pay such Interim Costs from the Escrow Account associated with such a Decision.]** The incremental costs and other expenses of the Panel in connection with a Supplementary Decision (as defined below) shall be paid from the Sale Proceeds [of the particular In-Scope Sale][HS: delete] allocated to the Participating Party or Participating Parties

---

[10] OR/G: **Veto right to be discussed.  Consider going back to concept of categories.**

[11] HS: **This is a matter for the Non-Filed Affiliates to discuss between themselves.**

requesting such Supplementary Decision. **[HS: Such incremental costs and other expenses shall only be those costs and expenses in connection with the Supplementary Decision incurred after the rendering of the Decision.]**

*Section 2.6*         To the maximum extent permitted by applicable law, none of the members of the Panel shall be liable to any Party or any third party howsoever for any act or omission in connection with any proceedings under this Protocol.

*Section 2.7*         The place of arbitration shall be New York, New York.  Other than as expressly specified otherwise in this Protocol, or as agreed by the Parties, all proceedings pursuant to this Protocol, including, but not limited to, **in-person** Administrative Meetings,[12] Evidentiary Hearings and Oral Arguments (as defined herein), shall be held in New York, New York and shall be conducted in the English language**, provided that Administrative Meetings may be held by telephone or videoconference**.

*Section 2.8*         No members of the Panel, whether before or after appointment to the Panel, shall advise any Party on the merits or outcome of a dispute.  There shall be no communications between any member of the Panel **after appointment to the Panel** and a Party unless all other Parties are given the opportunity to be present during such communication.  For the avoidance of doubt, written communication (whether transmitted by email, facsimile or post) between any member of the Panel and a Party must also be transmitted contemporaneously to all other Parties.

## ARTICLE III
## ADMINISTRATIVE MEETINGS

*Section 3.1*         Within ● (●) calendar days of an allocation dispute being referred to the Panel, the Negotiating Parties and the Panel shall hold a meeting to discuss any administrative, procedural or other relevant matters (the "Administrative Meeting"), which shall be convened by the Panel.  Each of the Negotiating Parties must be given (i) at least seven (7) calendar days' notice prior to the Administrative Meeting and (ii) the opportunity to attend and participate in the Administrative Meeting.  The **Panel shall determine whether to hold the** Administrative Meeting ~~shall be held at a time and in~~**by telephone, videoconference or in person, and shall determine a time and, for in-person Administrative Meetings only,** a location~~, as determined by the Panel~~ **within New York, New York**, such that each Negotiating Party and/or its counsel shall be able to participate ~~by telephone, videoconference or in person~~.  At the Administrative Meeting and at any other proceeding before the Panel, each of the Negotiating Parties shall be entitled to be represented by counsel.

*Section 3.2*         Except as specifically provided in this Protocol, the Panel shall, after taking into account, among other things, the facts and circumstances of [the relevant][**HS: delete and substitute "any"**] In-Scope Sale, the multiple jurisdictions involved in such In-Scope Sale

---

[12] **HS: Consider having in-person Administrative Meetings outside of New York City and add: Notwithstanding Section 2.7, Administrative Meetings may be held outside New York, State of New York or by telephone conference.**

8

or the applicable dispute and such other factors as the Panel considers relevant, establish the procedure and manner in which the resolution of the allocation dispute shall be conducted, including, without limitation, (i) the due dates for Written Submissions, (ii) the timing of the identification of Experts (as defined below), the submission of Expert Reports (as defined below), the identification of witnesses and the submission of Witness Statements (as defined below), (iii) the time, place, length and number of oral arguments for each Negotiating Party (the number of oral arguments for a given Negotiating Party multiplied by the length of each such oral argument, the "Oral Argument Duration"), (iv) whether to order the Negotiating Parties to prepare a joint agreed statement of facts, and (v) other administrative, procedural, or other relevant matters such as the scheduling of the Evidentiary Hearings (as defined below) and subsequent Administrative Meetings (if necessary), provided that the right of the Non-Filed Affiliates to participate and present their Interests (as defined below and as determined by the Panel) to the Panel shall reflect, to the extent reasonably practicable and determinable under the circumstances, the Panel's assessment of the relative contribution of the assets (tangible and intangible) and the rights transferred or relinquished by and liabilities assumed from the Non-Filed Affiliates in comparison to other Participating Parties with regards to a given Sale.  Notwithstanding anything else in this Protocol, the Panel shall have the right in its discretion, and after providing an opportunity for all Negotiating Parties to be heard on the issue, to modify the procedures decided at any Administrative ~~Hearing~~Meeting or otherwise either upon request of any Negotiating Party or on the Panel's own initiative.

Section 3.3    I[HS: Subject to Section 3.4 below,] if any Negotiating Party determines that there is an actual or potential conflict with respect to the dispute among any of the Respective Participating Parties (as such term is defined in Schedule 6 attached hereto) of such Negotiating Party or that such Negotiating Party represents a diversity of interests with regard to such Negotiating Party's Respective Participating Parties (each such interest, an "Interest"), such Negotiating Party may petition in writing the Panel to further modify the procedures, including, without limitation, by increasing the Oral Argument Duration allocated to such Negotiating Party or providing separate representation to address such potential conflict of interest or diversity of interests, [provided that in the case of the Joint Administrators or the Monitor, their respective petitions to the Panel to represent up to three separate Interests shall not be opposed by any other Negotiating Party, and provided, further that any other Negotiating Party shall be free to make submissions as to the extent and scope of any additional representation rights.[5] Nothing herein shall prevent any Negotiating Party from opposing any arguments raised by the various Interests, or Presented Positions (as defined below) with respect to such Interests, represented by any Negotiating Party.][HS: delete]

Section 3.4    [HS: The Parties agree that the Joint Administrators may represent up to three separate Interests and the Parties will not object to such representation.  The procedures will be modified to enable this (including, without limitation, by increasing the Oral Argument Duration allocated to the Joint Administrators and allowing for separate representation).  If the Joint Administrators determine that they want to represent more than three separate Interests, they will petition the Panel in writing in the same manner as

[5] ~~TBD: Retention of multiple professionals by Parties that represent more than one Interest~~

9

the other Negotiating Parties as set out in Section 3.3. Nothing in Section 3.3 or Section 3.4 shall prevent: (a) any Negotiating Party from opposing any arguments which may subsequently be raised by the various Interests, or Presented Positions (as defined below) with respect to such Interests, represented by any Negotiating Party; or (b) any Negotiating Party making submissions as to the extent and scope of any additional representation rights.]

**Section 3.5** ~~Section 3.4~~ Nothing in ~~the preceding section~~**Section 3.1** shall affect the right of the Panel to call ~~other administrative meetings~~**additional Administrative Meetings** to discuss administrative, procedural or other relevant matters after the initial Administrative Meeting. Each such meeting shall constitute a separate Administrative Meeting for the purposes of this Protocol and must comply with the requirements set forth in Section ~~3.1 of this Protocol.~~**3.1.**

## ARTICLE IV
## WRITTEN SUBMISSION BY THE NEGOTIATING PARTIES

*Section 4.1*        Each Negotiating Party may submit a written statement to the Panel, including, without limitation, Expert Reports (as defined below) and written Witness Statements (as defined below), of such Negotiating Party's one or more Interests (as permitted by the Panel pursuant to ~~Section~~**Sections** 3.3 **and 3.4**) with regards to the ~~Allocation~~**allocation** of the relevant Sale Proceeds ~~to the Panel~~ (such submission, the "First Round Submission").

*Section 4.2*        Each Negotiating Party shall present in its First Round Submission its methodology for the allocation of the relevant Sale Proceeds (the "Presented Position"). In the case of a Negotiating Party that represents more than one Interest (as determined by the Panel**, [HS: or pursuant to Sections 3.3 and 3.4 above]**), such Negotiating Party may offer more than one Presented Position to the Panel. The Presented Positions may also address any allocation or allocation methodology adopted or employed by any Buyer. **[HS: The Presented Position should include the legal basis for the entitlement of the Negotiating Party and any Interest(s) it represents to the Sale Proceeds and also the valuation methodology by which it is valued.]**

*Section 4.3*        A Negotiating Party may rely, in its sole discretion, on one or more experts as a means of evidence on specific issues (each such expert, an "Expert"). A report by an Expert (each such report, an "Expert Report") shall ~~provide~~**include** the following information: (i) a description of the qualifications of such Expert, (ii) a description of the scope of work or mandate of such Expert together with a copy of the engagement letter of such Expert, (iii) a description of the compensation paid or to be paid to such Expert, (iv) a description of any relationship on the part of such Expert within the two years immediately preceding the date that such Expert was first contacted with respect to the engagement that could reasonably be considered relevant to an assessment of the Expert's independence or objectivity, (v) a description of the scope of review conducted by such Expert (including a list of the materials and other information relied upon by such expert in preparing such report, the identity of all current or former employees, officers or directors of Nortel Group entities who such expert interviewed and relied upon in connection with the preparation of such report, and any limitation on the scope

10

of such review), (vi) a statement of the facts on which such Expert is basing its opinions and conclusions, (vii) the allocation approach and **methodology or** methodologies selected by such Expert and the reasons for selecting the particular allocation approach and methodology or methodologies, (viii) the key assumptions made by such Expert, (ix) such Expert's findings, opinions and conclusions, and (x) any qualifications or limitations to which such Expert's findings, opinions or conclusions are subject.  Notwithstanding anything to the contrary in this Protocol, a Negotiating Party need not disclose, and shall not be required to disclose, any information (other than the information set forth in the preceding sentence) concerning its Experts, including but not limited to (1) drafts of an Expert Report and (2) communications between a Negotiating Party (including its counsel) and an Expert (or documents reflecting such communications).[13]

    *Section 4.4*        A Negotiating Party may rely on a written statement by any person, including, without limitation, any Party's officer, employee or other representative.  Such witness statement must contain a full and detailed description of the facts, and the source of the witness's information as to those facts, sufficient to serve as that witness's evidence in the matter in dispute (each such statement, a "Witness Statement").[14]

    *Section 4.5*        No Witness Statement or Expert Report shall be admissible unless such witness or ~~expert~~**Expert** makes himself or herself available for an Examination (as defined below) and at the Evidentiary Hearing (as defined below), or unless the Negotiating Party or Negotiating Parties who requested such witness's or ~~expert~~**Expert**'s Examination or presence at the Evidentiary Hearing otherwise consents.[15]

    *Section 4.6*        Each Negotiating Party shall provide a First Round Submission to the Panel, with a copy to all other Negotiating Parties, no later than the deadline established by the Panel for such submission (the "First Round Submission Deadline").  The First Round Submission of each Negotiating Party shall not be subject to any page limits.

    *Section 4.7*        Each Negotiating Party, in its sole discretion, may opt to submit a second written submission to the Panel, with a copy to all other Negotiating Parties, no later than the deadline established by the Panel for such submission, which shall be at least ● calendar days after the First Round Submission Deadline (respectively, the "Second Round Submission" and the "Second Round Submission Deadline").  The Second Round Submission of each Negotiating Party shall not be subject to any page limits, provided that the Second Round Submission shall be limited to (a) responding to the First Round Submissions of other Negotiating Parties with regards to each Interest of the relevant Party and (b) presenting additional information or arguments in support of such Negotiating Party's Presented Position(s) based on Examination Testimony (as defined below) or new document discovery.  For the purposes of this Protocol, the

---

[13] HS: To be discussed; mechanism whereby Expert Evidence may be given by those advisers already engaged and objections will not be made to their independence.

[14] HS: Discuss whether Witness Statements should be by sworn affidavits or an equivalent statement of truth.

[15] HS: Discuss mechanism to deal with circumstances where (a) an employee has left the employment of one of the Negotiating Parties; or (b) where a person is being uncooperative with the process.

First Round Submission, the Second Round Submission, the Post-Hearing Submission (as defined below) and any other written submissions by any Negotiating Party to the Panel shall be collectively referred to as the "Written Submissions."

Section 4.8    Each Negotiating Party, in its sole discretion, may opt to submit one or more reports prepared by their Expert to respond to Expert Reports submitted by the other Negotiating Parties (each such report, a "Rebuttal Expert Report"). Such Rebuttal Expert Reports, to the extent such information is different from the Negotiating Party's Expert Reports or relevant to the Rebuttal Expert Report, shall include the information required in Section 4.3 herein for the submission of Expert Reports.

## ARTICLE V
## ACCESS TO INFORMATION

Section 5.1    Each Party shall have prompt and equal access to the Asset Sale EDR for any sale that the Negotiating Parties reasonably anticipate to fall within the scope of the Protocol. In addition, the Company has established an electronic data room (the "Data Room") that shall contain any to serve as a repository of all documents reasonably requested by any the Negotiating Party Parties pursuant to a Data Request Requests (as defined below) issued in accordance with Section 5.2 of this Protocol.5.2. It has been the intention of the Parties to use reasonable best efforts to provide prompt and equal access to the Data Room to all Parties, and the Parties agree to continue using their reasonable best efforts to provide such prompt and equal access to the Data Room to all Parties. [For the avoidance of doubt, all information requested by or supplied to any Party shall be made available to all Parties.][16]

Section 5.2    Any Negotiating Party may send a written request to any Nortel Group entity, with a copy to all Negotiating Parties, for access to [pre-existing][17] documents [concerning such Nortel Group entity][HS: delete] in the possession of such Nortel Group entity that may be reasonably relevant to resolution of any dispute in respect of an In-Scope Sale (each a "Data Request"). The relevant Nortel Group entity shall use reasonable best efforts to make such documents available in the Data Room as soon as reasonably practicable. [HS: The Parties agree that the categories of documents set out in the information requests set forth in Schedule ___ [previously exchanged requests] are relevant for the purposes of this Section.]

Section 5.3    [HS: Counsel for any Nortel Group entity who has been requested to provide documents shall provide a timely written certification confirming that persons acting under the supervision of counsel have made a reasonably diligent search for the requested documents and, except as otherwise indicated, all requested materials have been made available in the Data Room.]

Section 5.4    Section 5.3 [Commencing as early as the start of the negotiations for any Sale that parties the Parties reasonably anticipate to fall within the scope of this Protocol,][HS:

---

[16] OR/G: To be discussed.

[17] OR/G: To be discussed.

delete] the Negotiating Parties shall use their reasonable best efforts to permit each Negotiating Party the same prompt and equal access to employees of NNC, NNL, and their debtor and non-debtor affiliates, including the Debtors and the Non-Filed Affiliates (each an "Employee"), for purposes of obtaining information relevant to a dispute and having the Employee provide a Witness Statement. To enable an Employee to prepare for an interview, **requested pursuant to this Section 5.4,** the Negotiating Party requesting such an interview shall deliver to the Employee, reasonably in advance of such an interview, a list of topics or subject matters which the requesting Negotiating Party intends to cover with the Employee together with a list of information, if any, that the requesting Negotiating Party requests the Employee provide in writing. Any written information provided by such Employee in response to a request from a Negotiating Party shall be made available in the relevant Data Room as soon as reasonably practicable after it has been so provided. Interviews conducted pursuant to this Section 5.3**5.4** with Employees shall be expressly identified as being for such purpose and shall be separate from any discussions for the purpose of or in furtherance of a negotiated settlement of a dispute.

**Section 5.5** ~~Section 5.4~~ It is the intention of the Parties that each Employee will use its reasonable best efforts to assist any Negotiating Party that seeks assistance of such Employee. The Parties, however, acknowledge and recognize that (i) Employees have a corporate job function to perform with priorities that must be accommodated and (ii) each Employee's available time must be equitably shared with all Negotiating Parties. Each Negotiating Party shall use its reasonable best efforts to ensure that Employees within its control provide the assistance **reasonably** requested of them by any Negotiating Party consistent with the considerations mentioned herein.

**Section 5.6** ~~Section 5.5~~ [Each Negotiating Party shall be permitted reasonable access to third parties that have rendered advice to another Negotiating Party relevant to a dispute (each a "Third Party"). Any Nortel Debtor to whom such advice was rendered shall use its reasonable best efforts to ensure that such Third Parties are made available to the Negotiating Parties. Notwithstanding the foregoing or anything to the contrary contained in Section 5.10 below, a Negotiating Party shall not be permitted access to Third Party advice rendered ~~before~~**after** the Filing Date [that is protected from disclosure by the attorney-client privilege, the solicitor-client privilege, the attorney work product doctrine or any other similar privilege.][6]**[HS: delete]**[18]

**Section 5.7** ~~Section 5.6~~ Each witness that a Negotiating Party intends to call as a witness at an Evidentiary Hearing or from whom a Negotiating Party intends to submit a Witness Statement must be made available for a pre-hearing examination under oath (an "Examination") to take place following the First Round Submissions but no later than [●] days before the commencement of the Evidentiary Hearing,[19] provided, further that the Witness Statement of any individual that does not submit to an Examination, if requested, shall only be considered by the ~~panel~~**Panel** upon the prior written consent of the Negotiating Party or Negotiating Parties that

---

[6][18] **OR/G:** To be discussed.

[19] **Parties to consider whether this should be tied to the Second Round Submission Deadline.**

requested the Examination.[7]  A Negotiating Party may also request an Examination of any other Employee of another Party or Third Party.[8]  Each examination will be held at the location of the relevant witness unless otherwise agreed [to by the Negotiating Parties]**[HS: delete]**. Each Negotiating Party may attend an Examination and may ask questions at such Examination regardless of whether such Negotiating Party requested the Examination of the witness.  The Negotiating Parties shall agree in advance of an Examination on the length and scope of such Examination, or failing such agreement within ● days in advance, the Panel shall determine the length and scope of such Examination.  Except for witnesses that a Negotiating Party intends to call as a witness at an Evidentiary Hearing or from whom a Negotiating Party intends to submit a Witness Statement, and unless the Party or Third Party whose Employee is requested to submit to an Examination consents to such Examination, the Panel, after submissions by the relevant Negotiating Parties and a Negotiating Party, may prevent an Examination solely on the grounds that such Examination would be unduly burdensome or would not likely lead to the discovery of relevant evidence.[20]

**Section 5.8**  ~~Section 5.7~~ Each Negotiating Party shall use its reasonable best efforts to make available any Employee within its control for Examinations pursuant to Section 5.7 or for the Evidentiary Hearing if they may be properly called pursuant to Section 6.2 ~~of this Protocol~~ as a non-expert witness for such Evidentiary Hearing.[21]

**Section 5.9**  ~~Section 5.8~~ [Each Expert that a Negotiating Party intends to present at an Evidentiary Hearing, if requested by another Negotiating Party, must be made available for an Examination no later than ● days before the commencement of the Evidentiary Hearing, provided, further that the Expert Report or Rebuttal Expert Report of any Expert that does not submit to an Examination, if requested, shall only be considered by the ~~panel~~**Panel** upon the prior written consent of the Negotiating Party or Negotiating Parties that requested the Examination.  Such Examination will be conducted in the manner described in Section 5.7.]**[HS: delete]**

**Section 5.10**  ~~Section 5.9~~ Testimony from an Examination ("Examination Testimony") shall be admissible at an Evidentiary Hearing **[HS: keep only preceding language]** if (i) the witness giving such Examination Testimony is unavailable to testify at the Evidentiary Hearing, or (ii) agreed upon by all of the Negotiating Parties.  Where a witness will testify at an Evidentiary Hearing, such witness's Examination Testimony, [and, in the case of an Expert, the Expert Report or the Rebuttal Expert Report of such Expert,]**[OR/G: delete]** shall not be admissible except for the purpose of impeaching such witness's live testimony at the Evidentiary Hearing.  [Nothing herein shall prevent a Negotiating Party from quoting or referring to

---

[7] ~~Parties to consider whether this should be tied to the Second Round Submission Deadline.~~

[8] ~~TBD:  Procedure for compelling third parties to appear for Examination.~~

[20] **OR/G:  Issue of Third Parties to be discussed.  HS:  Witnesses may want or require their own counsel and we will need to provide a mechanism to pay for such representation.**

[21] **HS:  To be discussed.**

Examination Testimony in their Written Submissions.[22]

**Section 5.11** ~~Section 5.10~~ [With respect to information created before the Filing Date that may be requested pursuant to this Article 5, the Parties agree not to withhold such information on the basis that such information is protected from disclosure by the attorney-client privilege, the solicitor-client privilege, the attorney work product doctrine or under any other similar privilege, provided that by so agreeing, the Parties do not intend to waive any such applicable privilege or protection from disclosure with respect to any non-parties to this Protocol, and provided further that no Party shall be compelled to disclose any information potentially subject to any applicable privilege or protection from disclosure until the Parties have entered into a common interest agreement in substantially the form set forth in Schedule 8.][23]

**Section 5.12** ~~Section 5.11~~ All disagreements or controversies arising from or related to access to information and pre-hearing Examinations provided for under this Protocol including, but not limited to, any disagreements related to the Data Room, the scope and reasonableness of questions on Examinations, Witness Statements and Experts Reports (each, a "Discovery Matter") shall be referred to the Panel for resolution, which resolution shall be determined by at least a majority of the members of the Panel and shall be final and binding upon the Parties. The procedure for resolution of a Discovery Matter shall be left to the discretion of the Panel.

<div align="center">

**ARTICLE VI**[24]
COMPULSION OF THIRD PARTY DOCUMENTS AND WITNESSES:
OPERATION OF THE COURTS

</div>

**Section 6.1**    The Parties shall use their best endeavors to ensure that any witnesses or documents required by any other Party are procured.  To assist in this, the Parties agree to support each other and assist in any application to the Courts for assistance to compel the production of documents and witnesses.

**Section 6.2**    The Parties agree to use the powers they have available under their respective insolvency regimes to ensure that any witnesses or documents required by any other Party are procured.

**Section 6.3**    The Joint Administrators acknowledge that Sections 234 to 236 of the Insolvency Act 1986 apply with respect to this Protocol and that documents gathered and evidence obtained through the interview of witnesses pursuant to such sections may be used in the Protocol and for the benefit of the EMEA Debtors.

---

[22] OR/G: To be discussed whether Examination Testimony should be allowed to be used in Written Submissions, which may be inconsistent with only using Examination Testimony for impeachment purposes.

[23] OR/G:  Delete provision on the grounds that disclosure should not be required if to do so would compromise a party's ability to assert privilege and this provision does not protect privilege under Canadian law.

[24] HS suggests including this Article as a way to ensure the Courts' support of the arbitration process.

<div align="center">15</div>

**Section 6.4**    The US Court Order approving the Protocol will provide that any proceeding under the Protocol shall be considered an adversary proceeding for purposes of the power to obtain discovery from non-parties by issuing subpoenas under Bankruptcy Rule 7045, and that the US Court shall enforce such non-party subpoenas in the same manner as if they were issued from an adversary proceeding. The US Bankruptcy Court shall have the jurisdiction to decide any claims by any third parties that documents held by them or any party are not subject to such disclosure for any reason.

**Section 6.5**    In seeking the approval of the US and Canadian Courts to the entirety of this Protocol (as required by Section 10.6 herein), the US and Canadian Debtors will move that such order of the US and Canadian Courts approving this Protocol contain provisions, acceptable to each of the Parties acting reasonably, which entitle each Party to return to the US and Canadian Courts for an order to compel any person in the US or Canada that the Panel requests attend an Examination to attend to be examined as provided for under this Protocol, if such person fails to attend in accordance with Panel's initial request as served on such person.

### ARTICLE VII~~ARTICLE VI~~
### EVIDENTIARY HEARING; ORAL ARGUMENT

**Section 7.1**        ~~Section 6.1~~ Following submission of all Written Submissions, the Panel shall schedule one or more days of hearings, which may or may not be consecutive, at which the Panel shall receive oral evidence from the Negotiating Parties (an "Evidentiary Hearing").

**Section 7.2**        ~~Section 6.2~~ Each Negotiating Party may present oral testimony from (a) an Expert who has submitted an Expert Report or (b) a non-expert witness who has submitted a Witness Statement, so long as the Negotiating Party has given prior written notice to all other Negotiating Parties, in a timely manner and in accordance with any deadline established by the Panel for such notification, that such witness shall be called to provide evidence during an Evidentiary Hearing.  Following the direct testimony ~~by a~~of **an Expert or non-expert** witness, any other Negotiating Party may ~~question the~~**cross-examine such** witness in an order to be determined by the Panel.  The Negotiating Party that initially presented the **Expert or non-expert** witness shall subsequently have the opportunity to ask additional questions raised in the other Negotiating Parties' ~~questioning~~**cross-examination**.

**Section 7.3**        ~~Section 6.3~~ Evidence from proceedings held in connection with the resolution of [another][**HS: delete and substitute "any"**] dispute under this Protocol, including, without limitation, evidence from a prior Evidentiary Hearing, Administrative Meeting, Written Submission, Witness Statement, or Expert Report (as defined below) for a given In-Scope Sale ("Prior Evidence") shall be admissible in the proceedings for [subsequent][**HS: delete and substitute "all"**] In-Scope Sales, unless, on motion by any Negotiating Party, the Panel decides that the Prior Evidence shall not be admitted or otherwise limits the admissibility of the Prior Evidence, provided that each Negotiating Party shall have the right to further re-direct and cross-examine[25] such Prior Evidence ~~to the extent it consists of a witness's testimony~~.[9],[26]

**Section 7.4**        ~~Section 6.4~~ At the Evidentiary Hearing, each of the Negotiating Parties

16

shall be entitled to ~~present orally arguments in favor of their Presented Positions (the "Oral Argument") and to~~ examine witnesses, including Experts, from whom Witness Statements ~~and~~**, Expert Reports or Rebuttal** Expert Reports, as applicable, have been submitted by another Negotiating Party **and present oral arguments in favor of their Presented Positions (the "Oral Argument")**.

**Section 7.5**    ~~Section 6.5~~ Evidentiary Hearings **and Oral Argument** shall be held at a time and ~~place~~**location within New York, New York** specified by the Panel, but in no event before ● (●) calendar days or after ● (●) calendar days of the Second Round Submission Deadline.  For the avoidance of doubt, Evidentiary Hearings and Oral Argument shall be held in person.

**Section 7.6**    ~~Section 6.6~~ At the close of the final Evidentiary Hearing or final Oral Argument, whichever is later, the Panel shall determine whether to require post-hearing submissions, and if so, the scope, length and due dates for such submissions (each such submission, a "Post-Hearing Submission").

**ARTICLE VIII**~~ARTICLE VII~~
**THE DECISION OF THE PANEL**

**Section 8.1**    ~~Section 7.1~~ The Panel shall render a written decision (the "Decision") as soon as reasonably practicable after the completion of the final Evidentiary Hearing or final Oral Argument in the particular dispute.  Each Decision, Supplementary Decision and any other decision of the Panel shall be made by at least a majority of the members of the Panel.

**[OR/G:  Each Decision or Supplementary Decision, as the case may be:**

(i)    **shall reflect the Panel's determination of a fair and reasonable allocation of the Sale Proceeds of the particular In-Scope Sale between and among each of the relevant Participating Parties based on an evaluation of the assets, rights, properties and liabilities of each such Participating Party sold, assigned, transferred or licensed to, or assumed by, the Buyer in such In-Scope Sale (including, without limitation, any intellectual property license rights of a Participating Party that were terminated pursuant to an Appropriate License Termination, as such term is defined in the Interim Funding Agreement, in connection with such In-Scope Sale), provided that the foregoing shall not require the Panel to allocate any amount of such Sale Proceeds to any or all of such assets, rights, properties or liabilities; and**

(ii)    **shall be determined without regard to, or adjustment for, any other claims, entitlements, set-offs or adjustments of any nature whatsoever.**

---

[25] **OR/G: Scope of cross to be discussed.**

[926] TBD - Whether Prior Evidence should be subject to limitations set forth herein regarding the binding nature of previous agreements and/or Decisions.  **Canadian Debtors/Monitor also question whether cross-examination should be limited to the scope of direct examination.**

17

For greater certainty, the Panel shall have no duty or authority to inquire into or determine (i) whether any Participating Party is responsible for any alleged breach or non-performance of, or any indemnification obligation under, the terms of any Acquisition Agreement, or (ii) any Adverse Claim (as defined below) that may be asserted by any Participating Party (an "Adverse Person"). For this purpose, "Adverse Claim" means a claim that a particular Adverse Person is or was the rightful owner of or has or had an interest in the particular asset, right, property or liability that was not recorded in the instrument of title, deed, grant, lease, license or agreement governing the ownership, creation, invention, development or establishment of the asset, right, property or liability.]

  *Section 8.2*  ~~Section 7.2~~ The Decision shall contain:  (a) the percentage,[27] if any, (rounded to four decimal points) of the Sale Proceeds of a given In-Scope Sale to be allocated to the Canadian Debtors, the US Debtors, the EMEA Debtors and the Non-Filed Affiliates (an "Allocation"); (b) if the Panel deems appropriate, instructions to the Escrow Agent to distribute the relevant Sale Proceeds to NNL (on behalf of the Canadian Debtors), NNI (on behalf of the US Debtors), the Joint Administrators (on behalf of the EMEA Debtors) and to the Non-Filed Affiliates in accordance with the applicable Allocation immediately after the 15-day period set forth in Section 8.10 has elapsed without any application by a Party for a correction thereunder; and (c) [if necessary, a ruling on the allocation of any amounts to be returned to the Participating Parties from any reserves or escrow accounts established as part of the applicable In-Scope Sale.][28] Following the issuance of a Decision, and upon the written request of **any of** NNL, NNI (with the consent of the Creditors' Committee), the Joint Administrators (on behalf of the EMEA Debtors) or the Affiliates' Representative, the Panel, [only after submissions by all reasonably affected Parties and a hearing,][HS: delete] may] issue a supplementary decision containing the percentage, if any, (rounded to four decimal points) of the applicable Allocation of the Sale Proceeds of such In-Scope Sale to be allocated amongst the group of debtors or affiliates represented by the Party requesting the supplementary decision (each such supplementary decision, a "Supplementary Decision"). [HS: Before issuing a Supplementary Decision, the Panel will provide the group of debtors or affiliates represented by the Party requesting the Supplementary Decision the opportunity to make submissions and, if necessary, hold a hearing.] Any incremental costs incurred in connection with the prosecution and rendering of a Supplementary Decision shall be borne solely by the Party or Parties requesting such Supplementary Decision, including any Panel Costs incurred in accordance with Section ~~2.5 herein.~~**2.5.** No Party will deliver a duly authenticated copy of any Decision or Supplementary Decision of the Panel to any Escrow Agent directing a release of any Sale Proceeds from any Escrow Account unless such Decision or Supplementary Decision contains an express direction to the Escrow Agent for the release of such Sale Proceeds to some or all of the Participating Parties.

  *Section 8.3*  ~~Section 7.3~~ Each Decision, Supplementary Decision and any other decision of the Panel shall be made in writing, and shall contain a statement signed by each member of the

---

[27] OR/G:  To be discussed whether an Allocation may alternatively be expressed in U.S. dollars.

[28] TBD – Whether to include a schedule of the reserve or escrow accounts from the sales to be dealt with in a Decision.

Panel certifying that such writing constitutes the decision of the Panel. Any Decision or Supplementary Decision, [in the sole discretion of the Panel, may][HS: delete and change "may" to "shall"] contain a short statement of the reasons upon which such Decision or Supplementary Decision, as the case may be, is based, provided that such Decision or Supplementary Decision, as the case may be, shall not include any dissenting reasons.

Section 8.4      Section 7.4 In rendering a Decision or Supplementary Decision and an Allocation set forth in such Decision or Supplementary Decision, the Panel shall (i) treat as final and binding any Partial Allocation Amount, and (ii) not be bound to adopt, follow or place any weight in rendering a Decision on (x) any allocation contained in the relevant Transaction Documents, other than as set forth in Schedule 7 attached hereto (such schedule to be supplemented from time to time with the consent of the Negotiating Parties), where "Transaction Documents" means, with respect to an In-Scope Sale, any agreement (a) among the one or more **Participating** Parties, or (b) one or more **Participating** Parties and the Purchaser, relating to or in connection with such In-Scope Sale, or (y) any previous Decision or Allocation of Sale Proceeds of the Panel relating to another In-Scope Sale. Additionally, in rendering such a Decision, Supplementary Decision or an Allocation contained in such Decision or Supplementary Decision the Panel shall not be bound (a) to select one of the Presented Positions; (b) to adopt, follow or place any weight on anything contained in the Acquisition Agreements or any side or related agreement, [including any allocation agreed with the Buyer in or pursuant to the relevant Acquisition Agreement or any side or related agreement];[++] [(c) by any previous Decision or Allocation of Sale Proceeds by the Panel relating to another In-Scope Sale; or (d) by the rules, provisions or administrative practices of any particular national, provincial, state or other law or legal system or government agency or the principles or standards of any particular organization or association (each such rule, provision, administrative practice, principles or standards, an "Allocation Rule"), provided that the Panel may, in its sole discretion, base a Decision, an Allocation or a Supplementary Decision or any element thereof upon one or more Allocation Rules. ][HS: delete]

Section 8.5      [HS: The Panel shall base a Decision, an Allocation or a Supplementary Decision or any element thereof upon the relevant laws of the state or country governing or relating to the underlying transaction or issue. The Panel in its own discretion may also have regard to valuation principles and practices which it considers relevant.]

Section 8.6      [HS: The Parties agree that they shall not tender as evidence or rely on as evidence of an allocation (i) any allocation contained in the relevant Transaction Documents (as defined in Section 8.4 above), other than as set forth in Schedule 7 attached hereto (such schedule to be supplemented from time to time with the consent of the Negotiating Parties), (ii) any agreement (a) among the one or more Parties, or (b) one or more Parties and the Purchaser, relating to or in connection with such In-Scope Sale, and (iii) [further condition to reflect tax situation.]]

---

[++] Tax counsel to provide rider to carve-out an exception to this rule b/c Nortel has agreed to allocate at least the book value to each tangible asset and the Panel has to respect this allocation principle.

19

**Section 8.7**      ~~Section 7.5~~ [**Rider**[**Placeholder for language** excluding tax returns ~~in connection with M&A transactions to follow~~].]

**Section 8.8**      ~~Section 7.6~~ If the Negotiating Parties agree at any point in time prior to the relevant Decision as to a Partial Allocation Amount in respect of the Sale Proceeds of a particular In-Scope Sale, then the [Panel shall render a Decision only with respect to the allocation of] **[HS: delete and substitute with: Decision of the Panel shall take into account the Partial Allocation Amount in allocating**] the remaining portion of such Sale Proceeds.  If the relevant Parties agree at any point in time prior to the relevant Supplementary Decision as to the Allocation of any portion of the relevant Sale Proceeds allocated to the applicable Participating Parties pursuant to the applicable Decision, [then the Panel shall render a Supplementary Decision only with respect to the allocation of the remaining portion of the Sale Proceeds allocated to such Participating Parties pursuant to the applicable Decision] **[HS: delete and add: (the "Supplementary Partial Allocation"), then the Panel shall take into account the Supplementary Partial Allocation in allocating  the remaining portion of the Sale Proceeds to the entities affected by the Supplementary Decision.]**

**Section 8.9**      ~~Section 7.7~~ The Panel shall not use, consult with or appoint any expert to report to the Panel on any issue.

**Section 8.10**      ~~Section 7.8~~ After the Panel has entered a Decision or Supplementary Decision, the Panel shall be barred from modifying such Decision or Supplementary Decision, as the case may be, other than to correct a clerical, computational or typographical error contained in the Decision or Supplementary Decision.  If the Panel makes such a correction on its own initiative, it shall do so within ~~30~~**15** days of the date of the Decision or Supplementary Decision, as the case may be.  Any application by a Party for such a correction must be made within ~~30~~**15** days of the date of the Decision or Supplementary Decision, as the case may be.

**Section 8.11**      ~~Section 7.9~~ Any Decision and Supplementary Decision of the Panel shall be conclusive, final and binding in connection with the applicable In-Scope Sale and, to the fullest extent permitted by applicable law, may not be challenged, appealed or sought to be vacated or set aside by any Party in any jurisdiction.

**Section 8.12**      ~~Section 7.10~~ Any Decision and Supplementary Decision of the Panel shall be deemed an arbitral award enforceable under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and all legislation implementing the Convention, including, in the United States, the United States Federal Arbitration Act.

**Section 8.13**      ~~Section 7.11~~ Provided that a Decision contains an appropriate instruction to the Escrow Agent, the Sale Proceeds for an In-Scope Sale shall be transferred by the Escrow Agent, in accordance with the Allocation contained in such Decision and the terms of the relevant escrow agreement, after the relevant Decision has been rendered, without the need for an order from any of the Courts.

**Section 8.14**      ~~Section 7.12~~ [Except as expressly provided for in any agreement of the

20

relevant parties, neither this Protocol nor any Decision of the Panel shall preclude any Participating Party from asserting any legally cognizable claim or defense against any other Participating Party pursuant to the applicable claims procedure approved by the applicable Court by or on behalf of any Participating Party against any other Participating Party.][29]

### ARTICLE IX~~ARTICLE VIII~~
### CONFIDENTIALITY

**Section 9.1** ~~Section 8.1~~ Except as may be required by applicable law or court order or by an authority having appropriate jurisdiction, each Party agrees (i) to maintain confidentiality as to all aspects of these procedures, including, without limitation, any Information (as defined below), the presentation of any issue to the Panel, any discussions, deliberations or proceedings of the dispute resolution procedure set forth in this Protocol, ~~and~~**including without limitation** any Submissions ~~or~~**,** Oral Arguments **or Post-Hearing Submissions** (the "Confidential Material") and (ii) not to use any Confidential Material for its own benefit or the benefit of any of its affiliates, including, without limitation, for the purpose of asserting or proving a Claim (as defined in Section 101(5) of the Bankruptcy Code) against any Debtor in any of the Proceedings, it being understood that the Parties may disclose the existence and nature of this Protocol and the dispute resolution procedure conducted hereunder as may be necessary to (x) satisfy any Condition (as defined below) or (y) comply with the applicable laws, including, without limitation, the U.S. federal or state securities laws or any Canadian federal, provincial or territorial securities laws, and it being further understood that the Parties may disclose any Decision or Supplementary Decision by the Panel. As used in this Section 8.1, "Information" means any and all documents and information obtained by or on behalf of a Party from another Party or Nortel Group entity pursuant to this Protocol, including, without limitation, documents and information made available in the Data Room, Witness Statements, Written Submissions, responses given by Employees in interviews pursuant to Section 5.3, ~~responses to Questionnaires served pursuant to Section 5.5,~~ Examination Testimony and oral testimony given in any Evidentiary Hearing (but excluding any Decision or Supplementary Decision).

**Section 9.2** ~~Section 8.2~~ In the event that a Party is served with or otherwise subject to legal process (including subpoena or discovery notice) requiring it to testify about, to produce, or otherwise to divulge Confidential Material, to the extent permitted by applicable law such Party will as soon as practicable inform the provider(s) of such Confidential Material so that the provider may seek a protective order or other remedy. In the event that such protective order or other remedy has not been obtained and such entity is advised, in the opinion of counsel, that it is legally compelled to disclose any of the Confidential Material, such Party may disclose only such Confidential Material so advised to be disclosed.

**Section 9.3** ~~Section 8.3~~ The Parties further agree that prior to the appointment of any individual to the Panel or appointment as an Expert by any Party, such individual shall agree in

---

[29] **OR/G: Delete this section because claims against an estate should be asserted in the applicable claims resolution procedure and not under the Protocol. HS also requests deletion of this section.**

21

writing to preserve the confidentiality of the dispute resolution procedure conducted under this Protocol and all Confidential Material obtained hereunder.

**Section 9.4** ~~Section 8.4~~ Nothing herein shall prevent any Party from disclosing information regarding the dispute resolution procedure conducted under ~~Section 9.4 of~~ this Protocol or all Confidential Material obtained hereunder for purposes of ~~proceedings to resolve any disputes arising from, relating to or in connection for purposes of all~~**any** legal proceedings **brought in accordance with Section 10.4 to resolve any dispute** arising from, relating to or in connection with the enforcement or implementation of this Protocol, including, without limitation, any matters relating to enforcement or otherwise of any Decision or Supplementary Decision.

**Section 9.5** **[HS: On the entering into of an appropriate confidentiality agreement, the Parties agree that representatives of the Parties' creditors may attend all proceedings relating to this Protocol, including, but not limited to, Administrative Meetings, Evidentiary Hearings and Oral Arguments. Notwithstanding this, if any Party is of the view that a certain subject matter requires further confidentiality restrictions, they may petition the Panel for that proceeding or part of it to be held in camera.]**

**Section 9.6** **[HS: The Parties agree that the Parties may disclose the terms, existence and nature of this Protocol to their creditors.]**

### ARTICLE X~~ARTICLE IX~~
### MISCELLANEOUS

**Section 10.1** ~~Section 9.1~~ In all matters not expressly provided for in this Protocol, the Panel and the Parties shall act in the spirit of this Protocol and shall make every reasonable effort to ensure that any Allocation pursuant to this Protocol will be legally enforceable.

**Section 10.2** ~~Section 9.2~~ All notices, requests, instructions, directions and other communications provided for herein shall be made in writing (including by facsimile) delivered to the intended recipient as follows:

**If to the US Debtors:**
c/o Nortel Networks Inc.
Attention: John Ray
Address: 2221 Lakeside Boulevard
　　　　Richardson, Texas 75082
　　　　U.S.A.
Facsimile No.: [ ]
Telephone No.: [+1 312 259 7627]

**With a copy to:**
Cleary Gottlieb Steen & Hamilton LLP
Attention: James L. Bromley, Esq.
Address: One Liberty Plaza
　　　　New York, New York 10006
　　　　U.S.A.
Facsimile No.: +1 212 225 3999
Telephone No.: +1 212 225 2163

22