## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re:* | ) Chapter 11 |
| | ) Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Objection Deadline: June 20, 2011 at 4:00 pm (ET)** |
| | ) **Hearing Date: Scheduled only if necessary** |
| | ) |

**TWENTY-SEVENTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP
CANADIAN COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM
ALLOWANCE OF COMPENSATION AND FOR
REIMBURSEMENT OF EXPENSES FOR SERVICES
RENDERED DURING THE PERIOD FROM
APRIL 1 TO APRIL 30, 2011
(All Amounts in Canadian Dollars)**

This is a(n): x monthly _____ interim _____ final application.

| | |
|---|---|
| Name of Applicant: | Fraser Milner Casgrain LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | March 5, 2009 (nunc pro tunc to January 26, 2009) |
| Period for which Compensation And Reimbursement is sought: | April 1 to April 30, 2011 |
| Amount of Compensation sought as actual, reasonable and necessary: | CDN $300,549.00 Equivalent to USD $307,491.68[2] |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | CDN $9,800.49 Equivalent to USD $10,026.88[2] |

The total time expended during this Compensation Period for the preparation of Fraser Milner Casgrain's Twenty-Sixth Monthly Fee Application was 2.8 hours and the corresponding compensation is CDN. $2,170.00).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

[2] Reuters Exchange Rate as of close of business on May 30, 2011 was CDN. $1.00 : U.S. $1.0231

9898261_1

## SUMMARY OF LAWYERS AND PARALEGALS
## RENDERING SERVICES DURING THE PERIOD
## APRIL 1, 2011 THROUGH APRIL 30, 2011
### (All Amounts in Canadian Dollars)

| Name | Title | Department | Province of Bar Admission/Year | Hours | Rate | Billed Value |
|------|-------|------------|-------------------------------|-------|------|--------------|
| Kukulowicz, R.S. | Partner | Financial Restructuring | Ontario - 1990 | 5.1 | $850.00 | $4,335.00 |
| Picard, M.M. | Partner | Pensions/Benefits | Ontario - 1985 | 12.3 | $775.00 | $9,532.50 |
| LeGault, N.A. | Partner | Employment/Labour | Ontario - 1982 | 1.8 | $775.00 | $1,395.00 |
| MacFarlane, A.L. | Partner | Financial Restructuring | Ontario - 1988 | 85.9 | $800.00 | $68,720.00 |
| Wunder, M.J. | Partner | Financial Restructuring | Ontario - 1990 | 108.4 | $775.00 | $84,010.00 |
| Kaplan, M.N. | Partner | Corporate/M&A/Finance | Ontario - 1982 | 1.4 | $700.00 | $980.00 |
| Paul, S.E. | Partner | Competition/Anti-Trust | Ontario - 1983 | 2.1 | $700.00 | $1,470.00 |
| Beairsto, M.G. | Partner | Information Technology/ Intellectual Property | Ontario - 1989 | 4.4 | $625.00 | $2,750.00 |
| Banks, T. | Partner | Employment/Pension/ Research | Ontario - 2002 | 15.0 | $650.00 | $9,750.00 |
| Riel, W. | Partner | Intellectual Property | Ontario - 1997 | 5.5 | $450.00 | $2,475.00 |
| Dunsmuir, M.J. | Associate | Pensions/Benefits | Ontario - 2006 | 5.6 | $450.00 | $2,520.00 |
| Hétu, J. | Associate | Financial Restructuring | Ontario - 2009 | 9.9 | $350.00 | $3,465.00 |
| Pushalik, A. | Associate | Employment/Labour | Ontario - 2009 | 7.7 | $390.00 | $3,003.00 |
| North, A.R. | Associate | Financial Restructuring | Ontario - 2009 | 18.4 | $350.00 | $6,440.00 |
| Jacobs, R.C. | Partner | Financial Restructuring | Ontario - 2011 | 154.1 | $675.00 | $104,017.50 |
| Peters, Matthew | Partner | Taxation | Ontario - 2002 | 5.6 | $600.00 | $3,360.00 |
| Bass, N.E. | Partner | Taxation | Ontario - 1990 | 1.0 | $800.00 | $800.00 |
| Luu, Molly | Articling Student | | | 2.4 | $215.00 | $516.00 |
| | | | | | | |
| TOTAL | | | | | CDN. | $309,539.00 |
| | Less Non-Working Travel Time Discount (50% of $17,980.00) | | | | | ($8,990.00) |
| TOTAL | | | | | CDN. | $300,549.00 |

## COMPENSATION BY PROJECT CATEGORY
### APRIL 1, TO APRIL 30, 2011
### (All Amounts in Canadian Dollars)

| Task Description | Hours | Value |
|---|---|---|
| General Case Administration | 0.2 | $155.00 |
| FMC Fee Application/Monthly Billing Reports | 4.7 | $3,642.50 |
| Analysis of Other Professionals Fee Applications/Rep | 1.4 | $945.00 |
| Retention of Professionals | 0.2 | $135.00 |
| Creditors Committee Meetings | 32.4 | $22,680.00 |
| Court Hearings | 5 | $3,967.50 |
| General Claims Analysis/Claims Objections | 17.7 | $12,800.00 |
| General Adversary Proceedings | 2.8 | $1,902.50 |
| Tax Issues | 5 | $3,065.00 |
| Labor Issues/Employee Benefits | 20.5 | $14,662.50 |
| Real Estate Issues/Leases | 1.3 | $877.50 |
| Telecommunications/Regulatory | 3.5 | $2,027.50 |
| Asset/Stock Transaction/Business Liquidations | 38.9 | $26,382.50 |
| Travel | 25.2 | $17,980.00 |
| Intercompany Analysis | 139.5 | $99,123.50 |
| Canadian Proceedings/Matters | 143.5 | $95,348.00 |
| U.S. Proceedings/Matters | 4.8 | $3,845.00 |
|  | 446.6 | $309,539.00 |
| Less Non-Working Travel Discount (50% of $17,980.00) |  | ($8,990.00) |
| TOTAL |  | $300,549.00 |

## DISBURSEMENT SUMMARY
## APRIL 1 TO APRIL 30, 2011
## (All Amounts in Canadian Dollars)

Non-Taxable Disbursements

| | |
|---|---|
| Accommodations | $1,113.24 |
| Airfare/Travel | $3,511.19 |
| Binding Books / Documents | $    74.00 |
| Cellular Phones | $  356.18 |
| Ground Transportation (Taxi Charges/Courier) | $1,193.50 |
| Library Computer Research | $1,066.55 |
| Long Distance Telephone Calls | $  242.32 |
| Meals & Beverages | $  148.51 |
| Parking | $    17.70 |
| Photocopy Charges | $2,077.30 |
| | |
| **Total Non-Taxable Disbursements** | **$9,800.49 CDN.** |

9898261_1

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
|  |  |
|---|---|
| In re | : Chapter 11 |
|  | : Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | : Jointly Administered |
|  | : |
| Debtors | : <u>Objection Deadline</u>: June 20, 2011 at 4:00 pm (ET) |
|  | : <u>Hearing Date</u>: Scheduled only if necessary |

-------------------------------------------------------X

## TWENTY-SEVENTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP, CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM <u>APRIL 1, 2011 THROUGH APRIL 30, 2011</u>

Fraser Milner Casgrain LLP ("<u>FMC</u>" or the "<u>Applicant</u>"), Canadian counsel to the

Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Nortel Networks Inc., et al.

(the "<u>Debtors</u>"), hereby submits its twenty-seventh monthly application (the "<u>Application</u>")

pursuant to (i) sections 330 and 331 of title 11 of the United States Code (the "<u>Bankruptcy</u>

<u>Code</u>"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"),

(iii) Rule 2016-2 of the Local Rules of Bankruptcy Procedure for the District of Delaware (the

"<u>Local Rules</u>"), and (iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed.

R. Bankr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim

Compensation and Reimbursement of Fees and Expenses for Professionals and Official

Committee Members entered on February 4, 2009 (the "<u>Administrative Fee Order</u>"), for interim

allowance of compensation for services rendered in the aggregate amount of CDN. $300,549.00

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

and for reimbursement of actual and necessary expenses incurred by FMC in connection

therewith in the amount of CDN. $9,800.49 for the period from April 1 through April 30, 2011

(the "Compensation Period").  In support of this Application, FMC respectfully states as follows:

I.      <b>JURISDICTION AND VENUE</b>

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory bases for the relief requested herein

are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

II.      <b>BACKGROUND</b>

2.      On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United

States Bankruptcy Court for the District of Delaware (the "Court").

3.      The Debtors are operating their businesses and managing their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On

January 15, 2009, the Court entered an order for the joint administration of these cases pursuant

to Bankruptcy Rule 1015(b) for procedural purposes only.

4.      On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks

Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian

affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel

Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior

Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the

Companies' Creditors Arrangement Act (Canada) ("CCAA").  The Canadian Debtors continue to

operate their businesses and manage their properties under the supervision of the Canadian

Court.

9898278_4

5.      On January 14, 2009, the High Court of Justice in England placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrator").

6.      On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee.  The Committee currently consists of three members, as follows: (i) Law Debenture Trust Company of New York, as indenture trustee; (ii) Pension Benefit Guaranty Corporation; and (iii) The Bank of New York Mellon, as indenture trustee.  No trustee or examiner has been appointed in these chapter 11 cases.

7.      On March 5, 2009, this Court entered an order authorizing the retention of FMC as Canadian counsel to the Committee, *nunc pro tunc* to January 26, 2009.  On that same day, the Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.      On June 10, 2009, FMC filed its First Interim Fee Application Request for the period January 26, 2009 through April 30, 2009 (the "First Interim Application").  In its First Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,321,010.79 (including applicable taxes) and the reimbursement of expenses in the amount of CDN. $18,604.14 (including applicable taxes).  On July 17, 2009, this Court entered an order

approving 100% of the fees and expenses sought in the First Interim Application, and FMC has received payment of such amounts.

9.      On September 10, 2009, FMC filed its Second Interim Fee Application Request for the period May 1, 2009 through July 31, 2009 (the "Second Interim Application"). In its Second Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,335,961.21 (including applicable taxes) and the reimbursement of expenses in the amount of CDN. $21,483.56 (including applicable taxes). On September 30, 2009, this Court entered an order approving 100% of the fees and expenses sought in the Second Interim Application, and FMC has received payment of such amounts.

10.      On November 25, 2009, FMC filed its Third Interim Fee Application for the period from August 1, 2009 through October 31, 2009 (the "Third Interim Application"). In its Third Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,252,173.56 (including applicable taxes) and the reimbursement of expenses in the amount of CDN. $29,664.94 (including applicable taxes). On December 15, 2009, this Court entered an order approving 100% of the fees and expenses sought in the Third Interim Application, and FMC has received payment of such amounts.

11.      On February 24, 2010, FMC filed its Fourth Interim Fee Application for the period from November 1, 2009 through January 31, 2010 (the "Fourth Interim Application"). In its Fourth Interim Application, FMC sought the award and allowance of its fees in the amount of CDN.$1,222,600.68 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$24,078.44 (including applicable taxes). On March 17, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Fourth Interim Application, and FMC has received payment of such amounts.

12.     On June 1, 2010, FMC filed its Fifth Interim Application Request for the fee period from February 1, 2010 through April 30, 2010 (the "Fifth Interim Application"). In its Fifth Interim Application, FMC sought the award and allowance of fees in the amount of CDN.$1,545,435,79 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$30,093.86 (including applicable taxes). On June 24, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Fifth Interim Application, and FMC has received payment of such amounts.

13.     On September 8, 2010, FMC filed its Sixth Interim Application Request for the fee period from May 1, 2010 through July 31, 2010 (the "Sixth Interim Application"). In its Sixth Interim Application, FMC sought the award and the allowance of fees in the amount of CDN.$737,880.08 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$30,971.07 (including applicable taxes). Upon September 30, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Sixth Interim Application and FMC has received payment of such amounts.

14.     On December 13, 2010, FMC filed its Amended Seventh Interim Application Request for the fee period from August 1, 2010 through October 31, 2010 (the "Seventh Interim Application"). In its Seventh Interim Application, FMC sought the award and the allowance of fees in the amount of CDN.$1,069,919.50 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$22,207.78 (including applicable taxes). On December 15, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Seventh Interim Application and FMC has received payment of such amounts.

15.     On March 2, 2011, FMC filed its Eighth Interim Application Request for the fee period from November 1, 2010 through January 31, 2011 (the "Eighth Interim Application"). In

its Eighth Interim Application, FMC sought the award and allowance of fees in the amount of

CDN. $1,018,317.00 and the reimbursement of expenses in the amount of CDN. $27,950.74.  On

March 23, 2011, this Court entered an order approving 100% of the fees and expenses sought in

the Eighth Interim Application.  FMC has received payment of such amounts.

      16.     On April 19, 2011, FMC filed its Twenty-Fifth Monthly Application for Interim

Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the

Period February 1, 2011 through February 28, 2011 (the "Twenty-Fifth Monthly Application").

In the Twenty-Fifth Monthly Application, FMC sought the award and allowance of fees in the

amount of CDN. $301,574.00 and reimbursement of expenses in the amount of CDN. $7,292.35.

A certificate of no objection has been filed in respect of such Twenty-Fifth Monthly Application.

FMC has received payment of 80% of the fees and 100% of the expenses requested in the

Twenty-Fifth Monthly Application.

      17.     On May 20, 2011, FMC filed its Twenty-Sixth Monthly Application for Interim

Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the

Period March 1, 2011 through March 31, 2011 (the "Twenty-Sixth Monthly Application").  In the

Twenty-Sixth Monthly Application, FMC sought the award and allowance of fees in the amount

of CDN. $421,728.00 and reimbursement of expenses in the amount of CDN. $14,990.06.  FMC

has not received payment of the fees and expenses requested in the Twenty-Sixth Monthly

Application.

### III.    RELIEF REQUESTED

      18.     By this Application, FMC seeks (i) interim allowance and award of compensation

for the professional services rendered by FMC during the Compensation Period in the amount of

CDN. $300,549.00 representing 446.60 hours in professional services; and (ii) reimbursement of

actual and necessary expenses incurred by FMC during the Compensation Period in connection with the rendition of such professional services in the amount of CDN. $9,800.49.

19.     Pursuant to the Administrative Fee Order, FMC is seeking payment of 80% of its fees (CDN $240,439.20) and 100% of its expenses (CDN. $9,800.49) relating to services rendered during the Compensation Period.

20.     FMC has received no payment and no promises for payment from any source for services rendered in connection with these Insolvency Proceedings.  There is no agreement or understanding between the Applicant and any other person (other than members of FMC) for the sharing of compensation to be received for the services rendered in these cases.

21.     As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

## IV.    SUMMARY OF SERVICES RENDERED

22.     FMC has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period.  The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of significant time by FMC personnel from several legal disciplines.

23.     In the ordinary course of its practice, FMC maintains written records of the time expended by lawyers and paraprofessionals in the rendition of their professional services.  In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the lawyer or paraprofessional, the date on which the services were performed, a description

of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

24.     In the ordinary course of its practice, FMC also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

25.     FMC respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly and indirectly contributed to the effective administration of these chapter 11 cases, including the Committee's interest in the Canadian Proceeding.

26.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that FMC was required to address.

### Case Administration

(Fees: CDN. $155.00; Hours 0.20)

27.     During the Compensation Period, FMC routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee in the most efficient matter with the least cost to these estates with respect to the Canadian Proceeding. FMC ensured that it coordinated its activities with those of Akin Gump and the other

professionals acting on behalf of the Committee, including Jefferies, Capstone, and Ashurst.

28.     FMC believes it was able to efficiently address all issues relating to the case administration that have arisen during the pendency of the Canadian Proceeding.

## Canadian Proceedings

### (Fees: CDN. $95,348.00; Hours 143.50)

29.     During the Compensation Period, FMC analyzed the amended and restated order (the "Initial Order") granted by the Canadian Court in the Canadian Proceeding in connection with various issues and transactions arising or proposed in the Canadian Proceeding.  FMC also reviewed and analyzed motion record material filed by the Canadian Debtors and the Monitor (as that term is defined below) in the Canadian Proceeding.  In connection therewith, FMC, carefully analyzed the relief requested in proposed orders, participated in conference calls with the Monitor (as that term is defined below), Nortel Debtors' Canadian counsel, as well as other major stakeholders, to discuss the issues associated therewith.  In connection with such analyses, FMC conducted diligence on the subject matter of each motion in order to determine the effect that the relief requested by the Canadian Debtors in Canadian Proceeding would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of the Debtors' cases.  FMC, with the assistance of Akin Gump, ensured that the Committee had a complete understanding of the Canadian Proceeding and was apprised of all material developments in the Canadian Proceeding through regular conference calls and, as appropriate, detailed memoranda.

30.     During the Compensation Period, Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (the "Monitor") filed reports with the Canadian court with updates on the progress of the Canadian Debtors reorganization efforts and/or the Monitor's recommendations with respect to relief requested by the Canadian Debtors.  FMC reviewed each

of these reports, discussed the reports with Akin Gump, the Committee's financial professionals as well as the professionals for the Canadian Debtors.

31.     During the Compensation Period, FMC attorneys worked with Akin Gump to ensure that the interests of the Debtors' estates were protected in connection with the establishment of proceedings for the adjudication of intercompany claims by the EMEA Debtors against the Canadian Debtors (the "EMEA Claims Motion"). FMC attorneys reviewed and negotiated a draft form of side letter to be entered into with respect to certain procedural matters relating to the EMEA Claims Procedure in the Canadian Proceeding.

32.     FMC attorneys spent time during the Compensation Period assessing Canadian issues with respect to the Canadian Proceeding, including relating to allocation and distributions from the Canadian estate, and FMC attorneys liaised with Akin Gump and Capstone in connection therewith.

### FMC Fee Application/Monthly Billing Rates
(Fees: CDN. $3,642.50; Hours 4.70)

33.     This subject matter relates to time spent reviewing invoices and drafting monthly and interim fee statements as required under the Administrative Fee Order, including paraprofessional and attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses.

### Committee Meetings
(Fees: CDN. $22,680.00; Hours 32.40)

34.     This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, and with the Committee's other legal and financial advisors. FMC, together with the other Committee professionals, held five telephonic meetings with the full Committee during the Compensation Period as well as one in-person Committee meeting at

Akin Gump's office in New York. In addition, during the Compensation Period, FMC had numerous telephonic conferences with Akin Gump and other Committee professionals.

35.    Prior to its meetings with the Committee, FMC reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith which related to the Canadian Proceeding and Recognition Proceeding. Thereafter, FMC discussed each of these matters with Akin Gump and the Committee's other professionals and the Committee. During these discussions, FMC assisted the Committee in formulating a position with respect to various pending matters.

36.    During the Compensation Period, FMC, together with Akin Gump, routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee in an efficient manner. FMC also regularly consulted with Jefferies, Capstone, Akin Gump and Ashurst with respect to documents and other information received from the Debtors and their representatives.

37.    Through meetings, telephone conferences, and correspondence, FMC has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding and the Recognition Proceeding, as same relate to the Debtors, and to reach independent conclusions on the merits of specific matters.

### Court Hearings

(Fees: CDN $3,967.50; Hours 5.00)

38.    This subject matter relates to preparation for and attendance at hearings and other proceedings before the Canadian Court in respect of the Canadian Proceeding, and reviewing material filed with the Canadian Court. FMC lawyers appeared at hearings held before the Canadian Court during the Compensation Period where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered. During the

Compensation Period, FMC lawyers attended to a hearing before the Canadian Court for

(i) approval for the use of "Canadian employee hardship monies" for Canadian employee

termination payments and (ii) a judge's scheduling conference regarding a hearing relating to

Canadian environmental matters. FMC lawyers prepared for the Court hearings by reviewing all

applicable motions and applications filed with the Canadian Court, including any responses

thereto and consulted with Akin Gump, the Committee's other professionals and the advisors for

the Canadian Debtors' and the Monitor in order to formulate appropriate strategies. FMC's

participation at such hearings was necessary to protect the interests of the Debtors' unsecured

creditors.

### Labor and Employee Benefits Issues
#### (Fees: CDN. $14,662.50; Hours 20.50)

39.     This subject matter relates to services rendered by FMC in connection with the

analysis of the Canadian Debtors' benefits plans and general labor matters. During the

Compensation Period, FMC lawyers spent time analyzing the pension and employee related

issues raised by the various asset divestitures described herein, and where appropriate,

commented on and negotiating the underlying documentation of such transactions.

40.     FMC attorneys reviewed material received from the Monitor in connection with

claims in the Canadian Proceeding by employees of the Canadian Debtors and pension

deficiency claims to be asserted against the Canadian Debtors, and FMC attorneys worked with

Akin Gump and Capstone to analyze such claims and the quantums of same.

### Intercompany Analysis
#### (Fees: CDN. $99,123.50; Hours 139.50)

41.     This subject matter relates to time spent by FMC attorneys reviewing and

analyzing certain intercompany issues arising among the various Nortel entities around the

world, and their impact on the Nortel Debtors' Insolvency Proceedings. FMC attorneys, along with the Committee's other professionals spent significant time, during the Compensation Period analyzing and examining issues related to the allocation of sale proceeds and discussing such issues with the Committee, including in-depth analyses of various methodologies for allocating value among the Nortel Entities.

42.     As this Court is aware, a second mediation session took place with respect to the allocation of sale proceeds and related issues on April 11-13, 2011 in New York, New York. As disclosed in the 8-K filing of NNC on April 13, 2011, the mediation did not result in a resolution among the parties of the allocation and related intercompany issues. During the Compensation Period, FMC attorneys, working with Akin Gump and the Committee's other professionals, spent considerable time preparing for the mediation, including drafting a mediation brief on behalf of the Committee which was submitted to the mediator on April 1, 2011. Further, FMC, together with Akin Gump, participated in numerous meetings with professionals for the Debtors and the Ad Hoc Bondholder Group to discuss various strategic considerations for the mediation sessions in an effort to advance the interests of the Debtors' estates. During the Compensation Period, FMC, together with Akin Gump, on behalf of the Committee, also participated in telephonic and in-person meetings with other parties in interest to discuss allocation positions in advance of the April mediation.

43.     Since the conclusion of the April mediation sessions, FMC, together with Akin Gump, and the Committee's other professionals, have spent time considering next steps with professionals for the Debtors and the Ad Hoc Bondholder Group. Those efforts culminated in the filing of the *Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief* in both this Court and

the Canadian Court (the "Allocation Procedures Motion") on April 25, 2011. A joint hearing of the U.S. and Canadian Courts on the Allocation Procedures Motion is scheduled for June 7, 2011.

44.    Additionally, during the Compensation Period, FMC attorneys spent time analyzing various intercompany claims and related issues. On March 18, 2011, the Administrators, on behalf of the EMEA Debtors, submitted 84 intercompany claims against the Canadian Debtors in the Canadian Proceeding. During the Compensation Period, FMC, along with Akin Gump, reviewed and analyzed the EMEA intercompany claims and their potential impact on the Nortel Debtors' estates.

### General Claims Analysis
(Fees: CDN. $12,800.00; Hours 17.70)

45.    This subject matter relates to the analysis of claims asserted or contemplated to be asserted against the Debtors' estates and the estates of the Canadian Debtors. During the Compensation Period, FMC attorneys, together with Akin Gump, spent time working with Capstone to analyze claims filed against the Nortel Debtors in the Insolvency Proceedings, and researching and examining legal issues in connection with certain of those claims. FMC, together with Akin Gump and Capstone, kept the Committee apprised of all material developments with the adjudication and reconciliation of claims in the Canadian Proceeding.

46.    Additionally, during the Compensation Period, FMC, working with Akin Gump and Ashurst, continued its analysis of the alleged claims asserted by Nortel Networks U.K. Pension Trust Limited, as trustee of the Nortel Networks UK Pension Plan (the "U.K. Pension Trustee"), and the Board of the Pension Protection Fund (the "PPF" and, together with the U.K. Pension Trustee, the "U.K. Pension Parties") against the Nortel Debtors in the various Insolvency

Proceedings including contractual and non-contractual claims against the Canadian Debtors.

Further, FMC, together with Akin Gump and Ashurst, continued to apprise the Committee of

such issues and their potential impact on these Insolvency Proceedings.

<u>**Asset Sale/Intellectual Property**</u>

(Fees: CDN. $26,382.50; Hours 38.90)

47.     FMC attorneys spent time during the Compensation Period working with the

Nortel Debtors and their professionals, the Monitor and the professionals for the other major

creditor constituencies to evaluate isuses related to the divestitures of certain of the Nortel

Debtors' businesses and assets.  FMC attorneys continued to review and examine the Nortel

Debtors' intellectual property portfolio (the "<u>Nortel IP</u>"), analyze intellectual property issues

associated with the various asset divestitures by the estates, and consider strategic alternatives for

maximizing the value of the Nortel IP for the benefit of the estates.  In connection therewith,

FMC attorneys, along with Akin Gump and the Committee's other professionals, participated in

teleconferences with the Nortel Debtors' professionals and analyzed various issues regarding the

intellectual property monetization process.

48.     During the Compensation Period, FMC attorneys spent time working with the

Committee's other professionals and professionals for the Nortel Debtors, analyzing and

negotiating the terms of a sale of the Nortel IP (the "<u>IP Sale</u>").  These efforts culminated in the

Nortel Debtors' announcement on April 4, 2011, that Google Inc. was selected as the stalking

horse bidder for the IP Sale with a headline purchase price of $900 million.   In connection

therewith, FMC attorneys reviewed, commented on, and negotiated underlying documentation,

including the form of proposed bidding procedures and related sale motion (the "<u>IP Bidding</u>

<u>Procedures Motion</u>") and held numerous conference calls with the Committee's other

professionals and the Committee to ascertain and develop the Committee's position on the

proposed procedures and transaction. Following a joint hearing of the U.S. and Canadian Courts, on May 2, 2011, this Court entered an order approving the IP Bidding Procedures Motion (and the Canadian Court issued a comparable order in Canada). An auction with respect to the IP Sale is scheduled for June 20, 2011, and a final hearing to approve the IP Sale is scheduled for June 30, 2011.

### Tax Issues
(Fees: CDN. $3,065.00; Hours 5.00)

49.     This subject matter relates to legal services rendered by FMC relating to tax matters affecting the Nortel Debtors. During the Compensation Period, FMC, together with Akin Gump, continued its in-depth analysis of various tax issues affecting the Nortel Debtors' estates, including the Nortel Debtors' legacy transfer pricing system. In connection therewith, FMC attorneys participated in conferences with the Committee's other professionals and the Debtors' senior management team and advisors to discuss cross-border tax issues in the context of these Insolvency Proceedings and to consider strategic options related thereto.

### Non-Working Travel
(Fees: CDN. $17,980.00; Hours 25.20)

50.     During the Compensation Period, FMC attorneys spent 22.20 non-working hours traveling to court hearings and/or meetings. Pursuant to Local Rule 2016-2(d)(viii), FMC has discounted this time by 50% and, accordingly, has billed 11.10 working hours traveling for the Compensation Period.

## V.     ALLOWANCE OF COMPENSATION

51.     The professional services rendered by FMC required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by

the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

52.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to the Administrative Fee Order.

53.    With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

54.    The total time spent by FMC lawyers during the Compensation Period was 446.60 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

55.    As shown by this application and supporting documents, FMC spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit E is a schedule of the hours expended by the lawyers and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, FMC incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $9,800.49 for which FMC respectfully requests reimbursement in full.

56.    The disbursements and expenses have been incurred in accordance with FMC's normal practice of charging clients for expenses clearly related to and required by particular matters. FMC has endeavored to minimize these expenses to the fullest extent possible.

57.    FMC's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such

services differ. FMC believes that it is fairest to charge each client only for the services actually used in performing services for it. In these proceedings, FMC charges $.10 per page for internal duplicating.

58.     No agreement or understanding exists between FMC and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

59.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**[The Remainder of Page Intentionally Left Blank]**

**WHEREFORE,** FMC respectfully requests that this Court:

(a)      approve the allowance of CDN. $300,549.00 for compensation for professional services rendered to the Committee during the period from April 1, 2011 through and including April 30, 2011;

(b)      approve the reimbursement of FMC's out-of-pocket expenses incurred in connection with the rendering of such services during the period April 1, 2011 through and including April 31, 2011 in the amount of CDN. $9,800.49; and

(c)      authorize and direct the Debtors to immediately pay to FMC the amount of CDN. $250,239.69 (USD $256,020.23[2]), which is equal to the sum of 80% of FMC's fees and 100% of FMC's expenses incurred during the Compensation Period.

Dated:    Toronto, Ontario
          May 31, 2011

FRASER MILNER CASGRAIN LLP

By: _____
Michael J. Wunder (*pro hac vice*)
A Member of the Firm

77 King Street West, Suite 400
Toronto-Dominion Centre
Toronto, Ontario  M5K 0A1
(416) 863-4511
Canadian Counsel to the Official Committee of
Unsecured Creditors

---

[2]  Reuters Exchange Rate as of close of business on May 30, 2011 was CDN. $1.00 : U.S. $1.0231

9898278_4