## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
:
*In re*                                                        :     Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                             :     Case No. 09-10138 (KG)
:
               Debtors.                              :     Jointly Administered
:
:     **Hearing date: June 21, 2011 9:30 am (ET)**
:     **Objections due: June 14, 2011 4:00 pm (ET)**
-----------------------------------------------------------X

### APPLICATION OF THE DEBTORS PURSUANT TO 11 U.S.C. § 327(a) TO RETAIN AND EMPLOY CASSIDY TURLEY CPS AS BROKER FOR THE DEBTORS *NUNC PRO TUNC* TO MARCH 31, 2011

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Application") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 327(a), 328(a), 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) authorizing the employment and retention of Cassidy Turley CPS ("Cassidy Turley" or the "Firm") as broker for the Debtors in connection with the negotiation of the sublease of certain real property located in

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

Santa Clara, California (the "Property"), *nunc pro tunc* to March 31, 2011; (ii) approving the terms and conditions under which Cassidy Turley will be retained and compensated; and (iii) granting such other and further relief as the Court deems just and proper.  In support of this Application, the Debtors rely upon the *Declaration of Jason Berry In Support Of The Application Of The Debtors To Retain And Employ Cassidy Turley CPS As Broker For The Debtors Nunc Pro Tunc To March 31, 2011* (the "Berry Declaration"), attached hereto as Exhibit B.  In further support of this Application, the Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105(a), 327(a), 328(a), 330 and 331 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1.

### Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate their remaining businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

6.     On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it was unable to maximize value through sales. Since then, Nortel has sold many of its business units and assets to various purchasers. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## Relief Requested

7.     By this Application, the Debtors seek entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 327(a), 328(a), 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1: (i) authorizing the employment and retention of Cassidy Turley as broker for the Debtors, *nunc pro tunc* to March 31, 2011, in order to solicit and procure prospective sublessees in connection with the Property; (ii) approving the terms and conditions under which Cassidy Turley will be retained and compensated, as outlined in that certain Exclusive Sublease Listing Agreement, dated as of March 31, 2011, and attached hereto as Exhibit C (the "Agreement"), as amended by that certain First Amendment to Exclusive Sublease Listing Agreement, dated as of May 19, 2011 and attached hereto as Exhibit D (the "Amended Agreement", collectively with the Agreement, the "Agreements"); and (iii) granting such other and further relief as the court deems just and proper.

## Basis for Relief

8.     Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

4

9.      Under section 327 of the Bankruptcy Code, a debtor in possession may employ one or more professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons" to assist the debtor in possession in carrying out its duties under the Bankruptcy Code.  11 U.S.C. §327(a).

10.      Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

11.      Bankruptcy Rule 2014 requires that an application for retention of a professional include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).  Local Rule 2014-1 further requires that "[a]ny entity seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . . shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval."  Del. Bankr. L. R. 2014-1(a).

12.      By this Application, the Debtors request that the Court approve the employment and retention of Cassidy Turley as set forth herein.  The proposed retention of Cassidy Turley is beneficial to the Debtors' estates and the professional compensation arrangements (as described in the Agreements) provide certainty and proper inducement for Cassidy Turley to act expeditiously and prudently with respect to the matters for which it will be employed.

13.     The Debtors also request approval of the employment of Cassidy Turley *nunc pro tunc* to March 31, 2011.  Such relief is warranted by the extraordinary circumstances presented by these cases.  The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention.  See In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal dismissed, 909 F.2d 1476 (3d Cir. 1990).  In this instance, the lease will expire in 2012, and it is important to locate a tenant immediately in order to maximize the benefit to the Debtors' estates.  The nature of the lease and the professional arrangement therefore necessitate the immediate attention of Cassidy Turley in order to provide for the highest return on the Property.

### Selection of Cassidy Turley and Scope of Services

14.     In order to facilitate an expeditious and profitable lease of the Property, the Debtors need to retain the services of a real estate broker who can properly market the property and attract qualified tenants.  For such reasons, the Debtors seek retention of Cassidy Turley pursuant to this Application.

15.     Cassidy Turley is a leading commercial real estate services firm with offices in California, and is well-suited to provide the type of real estate services required by the Debtors.  The Debtors seek to retain Cassidy Turley as their broker because of, among other reasons, the Firm's experience and knowledge in complex commercial real estate transactions.  The Firm has an excellent reputation for its use of innovative and successful marketing strategies.  Cassidy Turley is also well-suited to represent the Debtors in leasing the Property because it has extensive experience handling large corporate properties in the state of California, where the Property is located.

6

16.     The Debtors believe that the retention of experienced professionals specializing in the leasing of commercial real estate fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals in these cases.  The Debtors believe they require the services of a capable and experienced broker because, among other reasons, such retention would allow the Debtors to efficiently market and lease the Property in order to maximize creditor recovery, and such efforts are important to the Debtors' success in their chapter 11 cases.

17.     Pursuant to the Agreements, Cassidy Turley will act as exclusive broker in connection with lease of the Property, and agrees to use all reasonable efforts to find a suitable subtenant or subtenants for the Property.  Cassidy Turley has the exclusive right to market and advertise for the sublease of the Property and to place real estate brokerage signs on the Property during the term of the Agreements.

### Cassidy Turley's Disinterestedness

18.     To the best of the Debtors' knowledge and except as disclosed in the Berry Declaration, Cassidy Turley has not represented, and does not have any connection, with the Debtors, their creditors, their insiders, their shareholders, their respective attorneys or accountants, or any other parties in interest in any matters relating to the Property.

19.     As disclosed in the Berry Declaration, Cassidy Turley currently represents the entities listed on the form attached to the Berry Declaration as Exhibit II.  Cassidy Turley has informed the Debtors of its ongoing representation of such entities, and the Debtors have consented to Cassidy Turley's continued representation of these entities in matters wholly unrelated to the Property.  The Debtors believe that Cassidy Turley's current and future

7

representation of these entities will not in any way adversely affect Cassidy Turley's representation of the Debtors.

20.     As further disclosed in the Berry Declaration, Cassidy Turley formerly represented the entities listed on the form attached to the Berry Declaration as <u>Exhibit II</u> in matters wholly unrelated to these proceedings.  Cassidy Turley has informed the Debtors of its past representation of such entities.   The Debtors believe that Cassidy Turley's past representation of these entities will not in any way adversely affect their representation of the Debtors.

21.     As further disclosed in the Berry Declaration, Cassidy Turley searched its internal records to produce a list of common key creditors or vendors of the Debtor, listed on the form attached to the Berry Declaration as <u>Exhibit III</u>.  Cassidy Turley has informed the Debtors of the identity of such vendors.  The Debtors believe that Cassidy Turley's relationships with these entities will not in any way adversely affect their representation of the Debtors.

22.     As set forth in the Berry Declaration:

I.     Neither Cassidy Turley nor any of the Listing Agents (as defined in the Amended Agreement) holds or represents an interest adverse to the Debtors' estates.

II.     Neither Cassidy Turley nor any of the Listing Agents is or was a creditor, an equity security holder or an insider of the Debtors.

III.     Neither Cassidy Turley nor any of the Listing Agents is or was, within two years before the Petition Date, a director, officer, or employee of the Debtors.

IV.     None of the Listing Agents is related to the Hon. Kevin Gross or has a connection to the United States Trustee for the District of Delaware or to any known employee in the office thereof.

23.     To the best of the Debtors' knowledge and as disclosed in the Berry Declaration, Cassidy Turley does not hold or represent any interest adverse to the Debtors or their estates,

Cassidy Turley is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, and Cassidy Turley's employment and retention by the Debtors is necessary and in the best interests of the Debtors and their estates.

24.    Cassidy Turley will periodically review its files during the pendency of this retention to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Cassidy Turley will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration if needed, as required by Bankruptcy Rule 2014(a).

**Professional Compensation**

25.    Cassidy Turley intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of the Court, and consistent with the proposed commission arrangement set forth in the Agreement (the "Fee Structure").

26.    Cassidy Turley and the Debtors have negotiated the terms of the Agreements, which reflect commercially reasonable compensation and employment terms.  Thus, the Debtors request approval of the Agreements, including the Fee Structure, pursuant to section 328(a) of the Bankruptcy Code.

27.    In summary, the Fee Structure provides that the Debtors are obligated to pay a commission to Cassidy Turley upon the occurrence of the following:

(i)    If, prior to the termination of this Agreement, Debtors enter into a written sublease(s), option(s) to sublease, or agreement(s) to sublease all or a portion of the Property; provided, that subtenant is procured by Cassidy Turley; and

(ii)    If, within sixty (60) days after the termination of this Agreement, Debtors executes a sublease or an option to

sublease or accepts a letter of intent or otherwise commences or continues negotiations which result in an executed sublease within three (3) months after the termination of this Agreement with any third party or affiliate, parent, subsidiary, or successor-in-interest to such third party whose name appears on a written list of potential subtenants which Cassidy Turley shall have provided to Debtors within ten (10) days after the expiration or termination of this Agreement;

(iii)    Notwithstanding the foregoing, under no circumstances shall Cassidy Turley be entitled to a commission if this Agreement is terminated by Debtors for cause.

28.    The commission for subleases of the Property shall be calculated as a percentage of the total base sublease monthly rental payments to be paid by a subtenant, which shall exclude (i) all additional rent and any other items, charges or fees payable by a subtenant, (ii) any sublease escalations applicable to items, charges or fees, including base rent and additional rent, (iii) any termination fee or penalty that may be payable by a subtenant under a sublease and (iv) security deposits or letters of credit required of subtenants, if any.

29.    The commission for the Listing Agent(s) will be 3%.  The commission for the Procuring Agent(s) (as defined in the Amended Agreement) will be 6%.  If the Listing Agent(s) are the only agents in the transaction, they shall act as both Listing Agent(s) and Procuring Agent(s) and the commission will be 6%.

30.    The commission rate for a month-to-month sublease shall be 50% of the first full scheduled base monthly rental payment, not to exceed $6,000.

31.    Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, orders of this Court or any guidelines regarding submission and approval of fee applications, in light of services to be provided by Cassidy Turley and the structure of Cassidy Turley's compensation pursuant to the Agreements, Cassidy Turley and its professionals request that it be excused from maintaining time records as set forth in Local Rule

2016 in connection with the services to be rendered pursuant to the Agreements; provided, however, that Cassidy Turley shall instead present to the Court records (in summary format) of all services rendered to the Debtors including reasonably detailed description of those services, the approximate time expended in providing those services and the individuals who provided those services.

32.     Given the numerous issues which Cassidy Turley may be required to address in the performance of its services hereunder, Cassidy Turley's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market price for Cassidy Turley's services for engagements of this nature, the Debtors believe that the Fee Structure described above is reasonable under the standards set forth in section 328 (a) of the Bankruptcy Code.

<u>**Indemnification**</u>

33.     As set forth in Section 9.1 of the Agreement, the Debtors have agreed to indemnify Cassidy Turley from and against all losses, claims, and liabilities arising out of or in connection with Debtors providing to Cassidy Turley (i) materially incorrect information regarding the Property or (ii) failing to disclose to Cassidy Turley material information which should have otherwise been disclosed to Cassidy Turley; provided, that with respect to sub-paragraph (i), Debtor has actual knowledge as to such information being materially incorrect and, with respect to sub-paragraph (ii), Debtor has such information in its actual possession and Debtor is not otherwise precluded from disclosing such information in accordance with any other agreement or law, but such obligations may not to exceed the fees payable by the Debtors under the Agreement.  The indemnification provision was negotiated between the Debtors and Cassidy

Turley and the Debtors respectfully submit that the terms are reasonable and in the best interests of the Debtors, their estates and their creditors.

## Notice

34.     Notice of the Motion has been given via overnight mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

35.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Application and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  June 1, 2011
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Alissa T. Gazze*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa T. Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*