## EXHIBIT C

## AGREEMENT

# EXCLUSIVE SUBLEASE LISTING AGREEMENT

This agreement ("Agreement") is entered into this 31st day of March, 2011 (the "Commencement Date"), by and between Nortel Networks Inc. ("Tenant") and Cassidy Turley CPS (California DRE License #00825241) ("Broker").

1. **EXCLUSIVE LISTING**: Tenant hereby grants to Broker the exclusive right to negotiate a sublease or subleases (which shall not include an assignment of Tenant's interest under the Master Lease) and to be paid commissions in connection with a sublease or subleases of Tenant's interest in that certain real property in the City of Santa Clara, County of Santa Clara, State of California, consisting of approximately 61,464 square feet, and located at 4555 and 4565 Great America Parkway, (the "Property"), as more particularly described in Exhibit "A" attached hereto and made a part hereof, which was leased to Tenant pursuant to that certain lease agreement between Tenant, as tenant, and The Prudential Insurance Company of America, as landlord, dated June 1, 2009, as the same may have been amended, modified or revised in accordance with its terms (the "Master Lease").

2. **TERM**: The initial term of this Agreement shall commence upon the Commencement Date and shall expire on May 31, 2012. Either Broker or Tenant shall have the right to terminate this Agreement upon not less than thirty (30) days prior written notice to the other; provided, that Tenant may terminate this Agreement for cause at any time.

3. **SUBLEASE TERMS**: The monthly base rent for the Property shall be offered at $0.99 per square foot of building area per month, triple net. All terms of the sublease or subleases of the Property shall be negotiated by Tenant with the assistance of Broker and the prospective subtenant or subtenants of the Property; provided, that Tenant's legal counsel shall be permitted to advise Tenant upon Tenant's request and Tenant's legal counsel shall review and draft any such documentation setting forth any sublease or other occupancy arrangement at the Property.

4. **SUBLEASE COMMISSIONS**:

    4.1 **RIGHT TO PAYMENT**: Subject to the provisions of Paragraph 4.2, a sublease commission shall be payable to Broker pursuant to the Schedule attached hereto as SCHEDULE 1 and made a part hereof upon occurrence of any of the following events:

    (A) If, prior to the termination of this Agreement, Tenant enters into a written sublease(s), option(s) to sublease, or agreement(s) to sublease all or a portion of the Property; provided, that subtenant is procured by Broker; and

    (B) If, within sixty (60) days after the termination of this Agreement, Tenant executes a sublease or an option to sublease or accepts a letter of intent or otherwise commences or continues negotiations which result in an executed sublease within three (3) months after the termination of this Agreement with any third party or affiliate, parent, subsidiary, or successor-in-interest to such third party whose name appears on a written list of potential subtenants which Broker shall have provided to Tenant within ten (10) days after the expiration or termination of this Agreement.

Notwithstanding the foregoing, under no circumstances shall Broker be entitled to a commission if this Agreement is terminated by Tenant for cause.

    4.2 **TIME AND MANNER OF PAYMENT**: Subject to Bankruptcy Court (as defined herein) approval, any commission earned by Broker pursuant to the terms of this Agreement will be payable to Broker ten (10) days from Tenant's approval of an invoice requesting such commission submitted in writing by the Broker, which shall not be submitted until the earliest to occur of: (a) the date the agreement to sublease is executed; (b) occupancy of the space by subtenant; or (c) the date such subtenant commencements payment of rent for the subleased space. Under no circumstances shall Broker be entitled to retain any security deposit or advanced rent payable by a subtenant pursuant to the terms of such subtenant's sublease agreement with Tenant. If any such security deposit or advanced rent is received by Broker, Broker shall promptly tender it to Tenant.

    4.3 **ADDITIONAL SPACE**: Subject to Bankruptcy Court approval, if any subtenant, under a sublease to which Broker is entitled to a commission pursuant to the terms of this Agreement, subleases additional space from Tenant at the Property, an additional commission shall be due to Broker in an amount computed in accordance with SCHEDULE 1. Notwithstanding the provisions of Paragraph 4.2, the additional commission shall be payable by Tenant to Broker within ten (10) days from Tenant's approval of an invoice requesting such commission submitted in writing by the Broker, which shall not be submitted until the earliest to occur of: (a) the date the agreement to sublease the additional space is executed; (b) occupancy of the additional space by such subtenant; or (c) the date such subtenant commences payment of rent for the additional space.

    5.   **REPRESENTATIONS**: Tenant represents that: (a) it is the tenant of the Property under the Master Lease and (b) the Master Lease is in full force and effect. Tenant further represents that it has the right to sublease or assign under the Master Lease and that either: (a) the Master Landlord's consent is not required or (b) the Master Landlord's consent is required and Tenant will use its commercially reasonable efforts to obtain such Master Landlord's consent; provided, that notwithstanding anything to the contrary contained herein, if such Master Landlord's consent is not received, Broker shall not be entitled to any commission whatsoever.

    6.   **REASONABLE EFFORTS/COOPERATION**: Broker agrees to use all reasonable efforts to find a suitable subtenant or subtenants for the Property, and Tenant agrees to cooperate with Broker in causing a sublease or subleases of the Property to be entered into; provided, that Tenant shall have the sole and exclusive authority to determine whether any such subtenant is acceptable to Tenant. Tenant shall refer to Broker all inquiries of any party interested in subleasing the Property. Broker shall diligently pursue all such referrals. All written offers received by Broker for the Property shall be promptly reviewed by Broker and responded to at Tenant's request. All terms of the sublease or subleases of the Property shall be negotiated by Tenant with the assistance of Broker and the prospective subtenant or subtenants of the Property; provided, that Tenant's legal counsel shall be permitted to advise Tenant upon Tenant's request and Tenant's legal counsel shall review and draft any such documentation setting forth any sublease or other occupancy arrangement at the Property.

    7.   **SIGNS**: Broker shall have the exclusive right to advertise for the sublease of the Property and to place real estate brokerage signs on the Property during the term of this Agreement; provided, that Broker shall only be permitted to place such signs in accordance with the terms of the Master Lease.

    8.   **NOTICES**: All notices called for pursuant to this Agreement shall be given by personal delivery in writing or by a nationally recognized courier service, or sent by registered or certified mail, postage prepaid, return receipt requested, or sent by facsimile or electronic transmission and promptly confirmed in writing, to the addresses set forth below, and shall be deemed received when actually received. Either party may change its address by giving written notice thereof to the other in accordance with the provisions of this paragraph.

BROKER:    Cassidy Turley CPS  
              475 El Camino Real, Suite 100  
              Santa Clara, CA 95050-4300  
              Attention: Kenneth J. Candelaria

TENANT:    Nortel Networks Inc.  
              2221 Lakeside Boulevard  
              MS 991-02-A30  
              Richardson, TX 75082  
              Attention: Real Estate Department  
              Phone: 972-685-8887  
              Fax: 972-684-3868

              with a copy (which shall not constitute notice) to:

              Cleary Gottlieb Steen & Hamilton LLP  
              One Liberty Plaza

New York, NY 10006
Attention: Steven L. Wilner
Fax: 212-225-3999

9. **INDEMNIFICATION:**

    9.1 **BY TENANT:** Tenant shall defend, indemnify, and hold Broker harmless against all losses, claims, and liabilities, including reasonable attorneys' fees and costs, arising out of or in connection with Tenant providing to Broker (i) materially incorrect information regarding the Property or (ii) failing to disclose to Broker material information which should have otherwise been disclosed to Broker; provided, that with respect to sub-paragraph (i), Tenant has actual knowledge as to such information being materially incorrect and, with respect to sub-paragraph (ii), Tenant has such information in its actual possession and Tenant is not otherwise precluded from disclosing such information in accordance with any other agreement or law. In any event, the costs payable hereunder by Tenant shall not exceed the commission payable to Broker. The indemnities set forth in this Paragraph 9.1 shall survive the expiration or termination of this Agreement.

    9.2 **BY BROKER:** Broker shall defend, indemnify, and hold Tenant harmless against all losses, claims, and liabilities, including reasonable attorneys' fees and costs, arising out of or in connection with Broker's wrongful act, failure to act, or misrepresentation; provided, however, that in no event shall the costs payable hereunder by Broker exceed the commission payable to Broker. The indemnities set forth in this Paragraph 9.2 shall survive the expiration or termination of this Agreement.

10. **ACKNOWLEDGMENT:**

    10.1 **ENVIRONMENTAL, EARTHQUAKE, FLOOD:** Tenant acknowledges that Broker has no specific expertise with respect to making an environmental assessment of the Property including matters relating to the disposal of hazardous or toxic substances, or any problems which may be posed by the Property being within a Special Studies Zone as designated under the Alquist-Priolo Special Studies Zone Act (Earthquake Zones), or a HUD Flood Zone, as set forth in the U.S. Department of Housing and Urban Development "Special Flood Zone Area Maps", as applicable. Broker has not made an independent investigation of the Property or determination with respect to the physical and environmental condition of the Property including the existence or nonexistence of any underground tanks, sumps, piping, toxic or hazardous substances on the Property. Tenant agrees that it will rely solely on its own investigation and/or that of an appropriate licensed professional. Broker acknowledges that Tenant is subleasing the Property in an "as is" condition, without representation or warranty of any kind, expressed or implied, oral or written, concerning the Property, any matter related thereto and with respect to any compliance under law. Prospective subtenants shall be advised of this fact and shall, subject to Tenant's sole and absolute discretion and the terms of the Master Lease, be allowed to make independent investigations of the Property made by their own experts, at their own expense.

    10.2 **ADA:** Tenant acknowledges that Broker has no specific knowledge regarding the requirements of the Americans with Disabilities Act (the "ADA") and is not qualified to advise Tenant in this regard. Tenant further acknowledges that Broker has not made any inspection or survey of the Property to determine whether any improvements or alterations to the Property may be required to comply with the ADA. Tenant agrees that it will rely solely upon its own independent assessment of the Property and the advice of an attorney and/or a licensed architect regarding the requirements of the ADA as it relates to the Property. Broker acknowledges that Tenant is subleasing the Property in an "as is" condition, without representation or warranty of any kind, expressed or implied, oral or written, concerning the Property, any matter related thereto and with respect to any compliance under law. Prospective subtenants shall be advised of this fact and shall, subject to Tenant's sole and absolute discretion and the terms of the Master Lease, be allowed to make independent investigations of the Property made by their own experts, at their own expense.

11. **DUAL AGENT REPRESENTATION:** Broker may act as a dual representative of both Tenant and any prospective subtenant only if it obtains the prior written consent of Tenant, which Tenant shall be entitled to grant or withhold in its sole and absolute discretion.

12. **REPORTS**: Tenant acknowledges that Broker does not represent and warrant the accuracy or completeness of any documents or information reviewed or received by Tenant in connection with this transaction, including financial reports.

13. **RELEASE**: Tenant waives the benefits of California Civil Code Section 1542 with respect to, and releases Broker from any and all liabilities arising out of or in connection with, the physical and environmental condition of the Property, including the existence of any hazardous or toxic materials.

14. **GENERAL PROVISIONS**:

14.1 **ENTIRE AGREEMENT**: This Agreement and all schedules and exhibits attached hereto and incorporated herein constitutes the entire agreement between the parties. All negotiations and agreements heretofore had by and between the parties and their agents with respect to this transaction are merged into this Agreement which completely sets forth the obligations of the parties.

14.2 **TIME**: Time is of the essence in this Agreement.

14.3 **ATTORNEYS' FEES**: In the event of any litigation between the parties hereto to enforce any provision of this Agreement, the unsuccessful party to such litigation shall pay to the prevailing party all costs and expenses of such litigation, including, but not limited to, reasonable attorneys' fees and costs. Any such attorneys' fees and other expenses incurred by either party in enforcing a judgment in its favor under this Agreement shall be recoverable separately from and in addition to any other amount included in such judgment, and such attorneys' fees obligation is intended to be severable from the other provisions of this Agreement and to survive and not to be merged into any such judgment.

14.4 **ASSIGNMENT**: This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the parties hereto without the prior written consent of the other party; provided, however, that Tenant may assign this Agreement or any of its rights, interests or obligations hereunder to a reorganized Tenant or other successor to Tenant's interest in this Agreement or the Property pursuant to a confirmed plan or plans of reorganization or liquidation or other order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). If Tenant should assign or otherwise transfer all of its leasehold interest under the Master Lease, Tenant shall remain obligated to pay Broker any commission due hereunder, unless Tenant notifies Broker prior to the transfer of its intent to assign such obligation to the transferee and Broker, if consent is required pursuant to this paragraph, consents in writing to such assignment, such consent not to be unreasonably withheld, conditioned or delayed.

14.5 **INTEREST ON PAST DUE AMOUNTS**: Any amount due and payable hereunder which is not paid when due shall bear interest after the due date at the maximum rate of interest permitted by law.

14.6 **DUE AUTHORITY**: Each individual signing this Agreement on behalf of a party warrants and represents to the other party that such signatory has the authority to execute this Agreement on such party's behalf and to bind such party to the terms hereof.

14.7 **GOVERNING LAW AND VENUE**: This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of California. Any claim, controversy or dispute ("Dispute") related directly or indirectly to this Agreement, whenever brought and whether between the parties to this Agreement or between one of the parties to this Agreement and the employees, agents or affiliated businesses of the other party, shall be subject to the provisions of this paragraph. During the pendency of Tenant's and its affiliates' chapter 11 cases under the U.S. Bankruptcy Code (the "Chapter 11 Cases"), venue shall lie in the Bankruptcy Court. If such Dispute is brought after entry of final decree(s) closing the Chapter 11 Cases, venue shall lie in the state or federal courts of the State of California.

14.8 **THIRD PARTIES**: Nothing herein expressed or implied is intended or shall be construed to confer upon or give to any person or entity, other than the parties hereto and their permitted successors or assigns, any rights or remedies under or by reason of this Agreement.

14.9 **SEVERABILITY**: In the event any term or provision of this Agreement shall be determined by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason whatsoever, that provision shall be severed from this Agreement and shall not affect the validity of the remainder of the Agreement.

14.10 **COUNTERPARTS**: This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

14.11 **DAMAGES**: The parties hereby agree that neither party shall be entitled to consequential or punitive damages in any dispute hereunder.

**[Remainder of Page Intentionally Left Blank; Signatures Continue on Next Page]**

This Agreement has been executed on the date and year set forth above.

**TENANT:**

NORTEL NETWORKS INC.

By: *[signature]*
Name: Allan Lane
Title: Asset Manager, Americas

**BROKER:**

CASSIDY TURLEY CPS

By: *[signature]*
Name: Kenneth J. Candelaria
Title: Partner

## Schedule 1

### SUBLEASE COMMISSIONS

A. LISTING AGENT/PROCURING AGENT DEFINITIONS. The term "Listing Agent(s)" shall mean Steve Horton and Kenneth J. Candelaria and shall refer to the Broker agent(s) representing a prospective subtenant. All other Broker agents shall be treated as Procuring Agents. The "Procuring Agent" is the agent(s) who represent(s) the Tenant.

B. STANDARD SUBLEASE COMMISSION RATE: The commission for subleases of the Property shall be calculated as a percentage of the total base sublease monthly rental payments to be paid by a subtenant, which shall exclude (i) all additional rent and any other items, charges or fees payable by a subtenant, (ii) any sublease escalations applicable to items, charges or fees, including base rent and additional rent, (iii) any termination fee or penalty that may be payable by a subtenant under a sublease and (iv) security deposits or letters of credit required of subtenants, if any.

The commission for the Listing Agent(s) will be 3% calculated in accordance with the terms hereof.

The commission for the Procuring Agent(s) will be 6% calculated in accordance with the terms hereof.

If the Listing Agent(s) are the only agents in the transaction, they shall act as both Listing Agent(s) and Procuring Agent(s) and the commission will be 6% calculated in accordance with the terms hereof.

C. MONTH-TO-MONTH SUBLEASE: The commission rate for a month-to-month sublease shall be 50% of the first full scheduled base monthly rental payment, calculated in accordance with Paragraph B, not to exceed $6,000.