## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- X
                                            :
In re                                       :   Chapter 11
                                            :
NORTEL NETWORKS INC., *et al.*,[1]          :   Case No. 09-10138 (KG)
                                            :
                            Debtors.        :   (Jointly Administered)
                                            :
                                            :   RE: Docket No. 5459
----------------------------------------------------------- X

## OBJECTION OF THE JOINT ADMINISTRATORS TO MOTION OF GENBAND US LLC FOR AN ORDER COMPELLING COMPLIANCE WITH SETTLEMENT AGREEMENT AND APPROVING THE SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 9019

The court-appointed administrators and authorized foreign representatives

(collectively, the "Joint Administrators")[2] for Nortel Networks UK Limited (in administration)

and certain of its affiliates (together, the "EMEA Debtors")[3] located in the region known as

EMEA (Europe, Middle East, and Africa) in proceedings under the *Insolvency Act 1986*, pending

---

[1]   The Debtors in these Chapter 11 cases are: Nortel Networks Inc., Nortel Networks Capital Corporation, Alteon WebSystems, Inc., Alteon WebSystems International, Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc. and Nortel Networks Cable Solutions Inc.

[2]   The Administrators in the UK Proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited (in administration) are: Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris. The Administrators in the UK Proceedings for Nortel Networks (Ireland) Limited (in administration) are: Alan Robert Bloom and David Martin Hughes.

[3]   The EMEA Debtors are: Nortel Networks UK Limited (in administration); Nortel GmbH (in administration); Nortel Networks (Austria) GmbH (in administration); Nortel Networks (Ireland) Limited (in administration); Nortel Networks AB (in administration); Nortel Networks B.V. (in administration); Nortel Networks Engineering Service Kft (in administration); Nortel Networks France S.A.S. (in administration); Nortel Networks Hispania, S.A. (in administration); Nortel Networks International Finance & Holding B.V. (in administration); Nortel Networks N.V. (in administration); Nortel Networks OY (in administration); Nortel Networks Polska Sp. z. o.o. (in administration); Nortel Networks Portugal S.A. (in administration); Nortel Networks Romania SRL (in administration); Nortel Networks S.p.A. (in administration); Nortel Networks Slovensko, s.r.o. (in administration); Nortel Networks, s.r.o. (in administration).

before the High Court of Justice of England and Wales, hereby object to the *Motion of Genband US LLC* ("GENBAND") *for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5459] (the "Motion"),[4] and in support thereof respectfully state as follows:

## PRELIMINARY STATEMENT

1.      GENBAND and the other parties to its purchase of certain of the Debtors' assets endeavored to resolve disputes arising out of the sale, and eventually arrived at the terms of a Memorandum of Understanding, attached hereto as Exhibit A (the "MOU"), in anticipation of final documentation of a settlement.  The MOU is a set of bullet points charting the parties' proposed course toward an ultimate settlement agreement, provisionally agreed to by the Mediation Parties (as hereinafter defined).  It is not an executed agreement, and the EMEA Debtors were not parties to the mediation that gave rise to its creation (the "Mediation").

2.      The Joint Administrators support the material terms of the settlement to the extent that those terms have been communicated to them by or on behalf of GENBAND or Nortel Networks Inc. ("NNI").  The EMEA Debtors are beneficiaries of any settlement negotiated under the MOU.  Although the Joint Administrators and the EMEA Sellers (as hereinafter defined) were not parties to the Mediation, the MOU requires their assent to the contemplated settlement agreement (the "Unexecuted Settlement Agreement") as a condition precedent to its consummation.  The EMEA Sellers' consent is needed in order for the Unexecuted Settlement Agreement to be finalized and signed.  They include certain filed and

---

[4]    Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Motion.

non-filed entities of which the Joint Administrators are not the sole authorized representatives and whose consent the Joint Administrators have no power to procure.[5]

3.      Notwithstanding the above, GENBAND now unilaterally seeks approval of the Unexecuted Settlement Agreement and an order compelling the EMEA Sellers' compliance therewith.

4.      The Motion is wholly unsupportable.  First, the Joint Administrators were not parties to the negotiations that led to the MOU and are not bound by whatever terms it imposes.  Nor will the settlement agreement itself become enforceable until it has been executed or consented to by all necessary parties.  The Motion admits that the Unexecuted Settlement Agreement contains additional and modified terms from those of the informal MOU.  Where there has been no agreement to settle a dispute, the Court may not properly issue an order compelling compliance under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5.      Second, even if the Unexecuted Settlement Agreement were fully executed, GENBAND has no standing to make a motion seeking its approval.  The Motion is based on Bankruptcy Rule 9019, but such a motion may not be properly brought by any party other than a trustee or debtor-in-possession.  GENBAND accordingly lacks standing even to request approval of, let alone the compulsion of compliance with, any settlement.

---

[5]    Such filed entities are Nortel Networks Israel (Sales and Marketing) Limited (in administration) ("NN Israel") and Nortel Networks S.A. (in administration and subject to secondary proceedings) ("NNSA") and such non-filed entities are Nortel Networks o.o.o. ("NN Russia") and Nortel Networks A.G. ("NN Switzerland") (collectively, the "Other Entities," and together with the EMEA Debtors, but excluding Nortel Networks Engineering Service Kft, Nortel Networks International Finance & Holding B.V. and Nortel Networks OY, the "EMEA Sellers")

6.      Finally, even if the Unexecuted Settlement Agreement were fully executed and even if GENBAND had standing to make the Motion, the Motion improperly seeks injunctive or declaratory relief, either of which must be pursued in an adversary proceeding. Although the Motion is based on Bankruptcy Rule 9019, it clearly requests injunctive relief in the form of an order requiring the EMEA Sellers to manifest their assent to the Unexecuted Settlement Agreement or declaratory relief to the effect that the Unexecuted Settlement Agreement is binding absent such assent. A request for injunctive or declaratory relief must be the subject of an adversary proceeding pursuant to Bankruptcy Rule 7001.

## BACKGROUND

7.      Following a joint hearing on March 3, 2010, the Canadian Court and this Court [D.I. 2632] approved the sale of Nortel's Carrier Voice over IP and Communications Solutions Business (the "CVAS Business") by Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), NNI, the EMEA Sellers and the Other Sellers, each as identified in the Sale Agreement (together with NNC, NNL, NNI and the EMEA Sellers, the "Nortel Sellers"), to GENBAND.

8.      On April 4, 2011, GENBAND and NNI and certain of its affiliates (collectively, the "U.S. Debtors"), along with the Canadian Debtors, the Official Committee of Unsecured Creditors appointed in these chapter 11 cases, and Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (collectively, the "Mediation Parties") participated in the Mediation, pursuant the *Standing Order of the District Court of Delaware* dated July 23, 2004, relating to certain disputes arising out of the sale of the CVAS Business. After engaging in the Mediation, the Mediation Parties reached a consensus on how to proceed toward a binding settlement agreement, which was summarized in the informal MOU.

4

9.      The Joint Administrators are required signatories to the Unexecuted

Settlement Agreement in their capacity as agents of the EMEA Debtors.  The primary purpose of

this agency is to facilitate the release of funds from escrow for payment to GENBAND, and it

entails no personal liability for the Joint Administrators themselves.  None of the EMEA Sellers,

however, participated in the Mediation or agreed to the terms of the MOU, despite being

beneficiaries to any settlement.  In order to protect their interests, the MOU explicitly states that

any settlement under the MOU is conditioned upon approval of all of the Nortel Sellers,

including the EMEA Sellers.  GENBAND and the U.S. Sellers expressly acknowledged this

requirement in their acceptance of the MOU and in their negotiations thereunder.  While a

majority of the EMEA Sellers is comprised of the EMEA Debtors, the Joint Administrators are

not the sole authorized representatives for all of the EMEA Sellers.  Therefore, although the Joint

Administrators support entry into a settlement agreement, the Joint Administrators cannot

unilaterally provide assent on behalf of the Other Entities.

10.      In relation to the Other Entities, whose consent to the Unexecuted

Settlement Agreement is required:

        a.      NNSA – the Joint Administrators, although appointed by the Court

of England Wales as administrators for NNSA in the Main

proceedings, are consulting with French Office Holder appointed

by the French Court in relation to secondary proceedings of

NNSA.  The Joint Administrators await confirmation that the

French Office Holder will agree to the terms of the Unexecuted

Settlement Agreement;

5

b.   NN Israel – the consent of the joint administrators in Israel is required.  NN Israel is subject to insolvency proceedings in Israel and the Joint Administrators have no power to procure that the Israeli joint administrator consents to the Unexecuted Settlement Agreement; and

c.   Neither NN Russia nor NN Switzerland is currently subject to insolvency proceedings.  Therefore, consent to the terms of the Unexecuted Settlement Agreement cannot be given by the Joint Administrators in relation to these entities.  Each entity must consent to the terms of the Unexecuted Settlement Agreement and such consent has not yet been received.

11.   The Joint Administrators are working diligently to reach a final resolution of the terms and language of the proposed settlement and have contacted the Other Entities in an attempt to encourage them to consider and to consent to the Unexecuted Settlement Agreement. To date, however, all of the Other Entities have not approved the material terms of the Unexecuted Settlement Agreement.

## ARGUMENT

**I.   THE MOTION IS PREMATURE BECAUSE THERE IS NO BINDING SETTLEMENT, PARTICULARLY WITH RESPECT TO THE JOINT ADMINISTRATORS.**

*The Settlement Agreement Incorporating the Terms*
*of the MOU Has Not Been Fully Executed.*

12.   The Motion points to no reason why the Court should grant the relief requested in the Motion apart from observing GENBAND's preferred timeframe for settlement approval.  (*See* Mot. ¶ 7) ("GENBAND should not have to wait any longer at this point.").

6

13.     The MOU mandates no objective deadline for arriving at a formal settlement agreement, and it is clear that GENBAND's timeframe for settlement approval was at best a goal (*See* Mot. ¶ 26) ("the Mediation parties discussed the proposed timeline, including the *goal* that Nortel would provide payment to GENBAND pursuant to the Settlement by the end of May 2011") (emphasis added), subject at all times to the condition precedent of the approval of all of the Nortel Sellers, including the Other Entities. (*See* MOU ¶ 7) ("Nortel's entry into this settlement is subject to the receipt of approvals from all Nortel Sellers and approval by the relevant Courts"). It is noteworthy that the other parties to the Unexecuted Settlement Agreement, including the U.S. Debtors, have not sought to hurry the process by asking the Court to force the EMEA Sellers to approve and comply with the Unexecuted Settlement Agreement.

14.     Nor does GENBAND argue or provide any evidence to the effect that settlement negotiations have failed or stalled. On the contrary, the Motion reveals a fruitful and earnest course of negotiations. GENBAND simply takes issue with the fact that the Joint Administrators were unable to provide approval of the Unexecuted Settlement Agreement in time for the Court's consideration at the June 7, 2011 joint omnibus hearing. (*See* Mot. ¶ 49.)

15.     In fact, there is no impasse to negotiations. It is simply the case that it has not been possible to secure the approval of the Other Entities to the Unexecuted Settlement Agreement within GENBAND's preferred timeframe, and (as stated above) none of GENBAND, the U.S. Sellers or the Joint Administrators has the power to procure such approval.

*There Is No Settlement Agreement.*

16.     Bankruptcy Rule 9019 allows a trustee or a debtor-in-possession to compel a party's *compliance* with an existing agreement to settle disputes, but it does not authorize an effort to have a bankruptcy court extract a party's consent to settle disputes. Thus,

7

the question whether this Court may issue an order under Bankruptcy Rule 9019 turns on whether an agreement exists to settle disputes.

17.     There is simply no settlement agreement between the EMEA Sellers and GENBAND or even between the U.S. Debtors and GENBAND.  The Motion acknowledges that the MOU contemplated a future formal settlement agreement before any of its terms would be given effect.  (*See* Motion ¶ 24) ("the parties would use their 'best efforts to document and give effect to' the terms of the MOU 'as soon as reasonably practicable.'").

18.     In the Motion, GENBAND does not attempt to assert that the MOU is a completed settlement agreement.  (*See id.*) ("The parties agreed that the terms of the MOU would be memorialized in a settlement agreement.").  Instead, GENBAND makes the present unilateral attempt to have this Court approve the Unexecuted Settlement Agreement, which GENBAND acknowledges has not been consented to by the Other Entities.  (*See* Mot. ¶ 5.)

19.     The Joint Administrators have communicated to the other parties that the Unexecuted Settlement Agreement cannot be finally agreed without the approval of all of the Other Entities and that this approval has not yet been received.  A settlement agreement is a contract to resolve disputes, and here no contract has been formed because there has not been any manifestation of mutual assent by the required parties.  *See* Restatement (Second) of Contracts § 21 (1981) ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.").  It is undisputed that the Unexecuted Settlement Agreement cannot be completed without the approval of the Joint Administrators and the Other Entities.  The Joint Administrators have affirmatively communicated that they are not able (and neither are the Other Sellers) to settle on those terms

prior to GENBAND's unilateral deadline for requesting court approval thereof, and because the

approval of all of the Nortel Sellers is required for any settlement, no settlement exists.

20.    In support of the Motion, GENBAND relies on a thirty-year-old decision

of the Bankruptcy Court for the Northern District of Georgia in which the court compelled

compliance with a settlement only after finding that the relevant parties had validly executed the

settlement agreement under Georgia law. *In re Tidewater Group, Inc.*, 8 B.R. 930, 932–33

(Bankr. N.D. Ga 1981) (settlement agreement enforceable under Georgia law because debtor's

counsel had resolved alleged contingencies in the settlement agreement by waiver and had

authority to do so). *Tidewater* is inapposite here because GENBAND cannot show that the

Unexecuted Settlement Agreement is a valid contract to settle disputes under applicable state

law.

21.    In the pursuit of a valid contract to settle these disputes, the parties have

engaged in and continue to engage in settlement negotiations. The Motion states that there were

extensive settlement negotiations after the execution of the MOU. (*See* Mot. ¶ 2) ("[i]t took no

less than six weeks for the parties to hammer out the terms of [the Unexecuted Settlement

Agreement]") (emphasis in original). The Motion also states that those negotiations produced

new and different terms and language from those contemplated in the MOU. (*See, e.g., id.* ¶ 31)

("[b]y [May 2, 2011] the parties had limited their differences to only three open items."); (*id.* ¶

33) (the "deadline [to request the Court's approval] was eleven days away at that time, and the

Settlement Agreement was fully negotiated save for the two open issues."); (*id.* ¶ 41) ("mere

hours before the filing deadline, counsel for Nortel requested further changes to the proposed

language . . . . [e]ven though the new terms were not required under the MOU, GENBAND

nonetheless agreed to consider the request....."). Clearly, the parties made considerable efforts to

9

negotiate, encountered bona fide obstacles to settlement, and arrived at different terms and language from those envisioned by the MOU.

22.     The negotiations called for by the MOU have not failed; they have simply not yet succeeded.  No specific timeframe for reaching a settlement is mandated by the informal MOU.  The Motion seeks to have the Court impose the terms of a settlement on which true agreement has not been reached simply because GENBAND perceives that the best time for settlement would be at the next omnibus hearing.

23.     Since settlement negotiations are ongoing and there is no settlement agreement, the Motion is premature and should be denied.

## II.     GENBAND IS NEITHER A TRUSTEE NOR A DEBTOR-IN-POSSESSION AND LACKS STANDING TO OBTAIN RELIEF UNDER BANKRUPTCY RULE 9019.

24.     The Motion is before this Court pursuant to Bankruptcy Rule 9019, which provides, in pertinent part, that "[o]n motion *by the trustee* and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a) (emphasis added). Bankruptcy Rule 9019 clearly provides that such motions may only be brought by a trustee or a party with equivalent standing, such as a debtor-in-possession.

25.     GENBAND's interest in the subject matter of the Motion is limited to its status as a purchaser of "substantially all of the assets relating to Nortel's [CVAS Business]." (*See* Mot. ¶ 10.)  Indeed, GENBAND is neither a trustee nor a debtor-in-possession in the present bankruptcy case.  It obtained the assets of one of Nortel's lines of business.  GENBAND has cited no authority for the proposition that a purchaser of a debtor's line of business under Section 363 of the Bankruptcy Code enjoys the status of a "trustee" for purposes of standing under Bankruptcy Rule 9019.  Nor does GENBAND purport to have the consent or encouragement of any trustee or debtor-in-possession in this case.  On the contrary, it seeks to

10

compel the Debtors' compliance with the Unexecuted Settlement Agreement as well. (*See Id.*
¶ 7) ("GENBAND respectfully requests that this Court (1) order Debtors to comply with the
Settlement Agreement . . . .").

26.      Since GENBAND's use of the Motion to pursue relief pursuant to
Bankruptcy Rule 9019 would usurp the exclusive standing of a trustee or debtor-in-possession
under that rule's clear textual command, the Motion should be denied.

## III.    THE GENBAND MOTION IS PROCEDURALLY IMPROPER AND SHOULD HAVE BEEN BROUGHT BY WAY OF AN ADVERSARY PROCEEDING.

27.      Bankruptcy Rule 7001 provides, in pertinent part, that actions to "recover
money or property," "determine the validity, priority, or extent of a lien or other interest in
property," "obtain an injunction or other equitable relief," or "obtain a declaratory judgment
relating to any of the foregoing" must be commenced as adversary proceedings. *See* FED. R.
BANKR. P. 7001(1), (2), (7), and (9).

28.      The distinction under the Bankruptcy Rules between "adversary
proceedings" and "contested matters" is not haphazard.  In determining what types of disputes
require the full procedural protections afforded by the adversary process, the drafters of the
Bankruptcy Rules operated from the premise that "to the extent possible practice before the
bankruptcy courts and the district courts should be the same." *See* FED. R. BANKR. P. 7001
advisory committee's note.

> Adversary proceedings in bankruptcy court are the analogue to
> lawsuits in district court—both are initiated by the filing of a
> complaint, and both are governed by the same rules of discovery.
> *See Fed. R. Bankr. P. 7004, 7026–7037.* Contested matters, on the
> other hand, are initiated by motion, and the applicability of the
> discovery rules is at the discretion of the court. *See Fed. R. Bankr.
> P. 9014.* Thus, adversary proceedings offer the litigants more
> formality and more discovery rights than contested matters. *See
> Nantucket Investors II v. Cal. Fed. Bank (In re Indian Palms
> Assocs., Ltd.)*, 61 F.3d 197, 204 n.11 (3d Cir. 1995).

11

> Consequently, a bankruptcy court's erroneous conclusion that a
> dispute need not be resolved in an adversary proceeding may be a
> ground for reversal.

*Baltimore County v. IHS Liquidating LLC (In re Integrated Health Servs.)*, No. 00-389-MFW,

03-1057-GMS, 2006 WL 543876, at *3 (D. Del. Mar. 6, 2006). The substantive and procedural

safeguards contained in Bankruptcy Rule 7001 are the result of a careful balancing of the

competing interests of debtors, creditors, and other parties in interest, with concerns of due

process, expediency, and judicial economy.

> In general, an adversary proceeding involves more complex issues
> affecting substantial rights of the debtor, its creditors and third
> parties. The filing of a complaint triggers application of the
> Federal Rules of Civil Procedure, which have proved effective in
> facilitating adjudication of a wide range of controversies. . . .
> More complete relief, trial by jury, the possibility of pleading
> affirmative defenses and counterclaims, interpleading, joinder of
> parties, class actions, intervention, summary judgment, appeal as
> of right, and an opportunity for more thorough discovery and trial
> preparation are familiar features of the Federal Rules of Civil
> Procedure which are available in adversary proceedings.

*In re Riding*, 44 B.R. 846, 858–59 (Bankr. D. Utah 1984) (internal citation omitted).

   29. An order in accordance with the Motion would effectively force the

EMEA Sellers to conduct final settlement negotiations and manifest their assent in a Bankruptcy

Rule 9019 hearing, rather than in the consensual process contemplated at mediation and

memorialized in the MOU. (*See* Mot. ¶ 6) ("If any party wishes to raise a substantive objection

to the Settlement Agreement, it can be raised in response to this Motion and addressed at the

hearing.").

   30. GENBAND supposes that the result of such a hearing would be that the

Court would issue an order compelling the EMEA Sellers' execution of and compliance with the

Unexecuted Settlement Agreement. GENBAND attempts to obtain this relief with the reduced

substantive and procedural safeguards of a contested matter. However, this Court may only

12

properly grant such relief in an adversary proceeding, and the EMEA Sellers are entitled by law

to contest the Motion's requested relief with the full procedural protections afforded by the

adversary process.

        31.    An order compelling the EMEA Sellers to execute and comply with the

Unexecuted Settlement Agreement would undeniably involve a determination as to the "validity,

priority, or extent of a lien or other interest in property." It would also require the Court to grant

injunctive or declaratory relief. Bankruptcy Rule 9019 logically presumes that a settlement

agreement exist before a court may order compliance with it. The full text of the relevant Collier

paragraph, cited in part in the Motion, does not support the use of a Bankruptcy Rule 9019

motion to compel a party to agree to an as-yet-incomplete settlement agreement::

> If the trustee or debtor in possession fails to perform after the court
> has approved the settlement, the bankruptcy judge may order the
> trustee or debtor in possession to do so. The same is true with
> respect to the other party to the compromise: the trustee or debtor
> in possession may obtain an order of performance from the court.
> In addition, a debtor can be compelled to file a motion to approve a
> settlement even if the debtor has changed its mind. Settlement
> agreements frequently provide that they are binding upon the
> parties when executed subject to the condition subsequent of the
> court's approval.

ALAN N. RESNICK & HENRY J. SOMMER, 10 COLLIER ON BANKRUPTCY ¶ 9019.02 (15th ed. 2010).

The Court would have to force the EMEA Sellers to approve the Unexecuted Settlement

Agreement or enter a declaratory judgment to the effect that such an agreement already exists,

before it could compel compliance with a settlement agreement.

        32.    While Section 363 of the Bankruptcy Code provided the statutory basis for

GENBAND's underlying purchase of Nortel's CVAS Business, nothing contained therein

provides a basis for this Court to compel the EMEA Sellers to settle disputes arising after that

sale of assets. *See In re Realty Southwest Assoc.*, 140 B.R. 360, 364-65 (Bankr. S.D.N.Y. 1992)

(denying creditor's requested relief for return of cash collateral where creditor sought the relief

by filing a motion pursuant to Section 363 of the Bankruptcy Code because the requested relief

was outside the scope of Section 363, which does not require a debtor to return cash collateral,

but only segregate and account for it, and therefore the relief could only be sought by

commencing an adversary action).

      33.    The only other statutory basis offered by GENBAND for the requested

relief is Section 105(a) of the Bankruptcy Code.  Section 105(a) allows a bankruptcy court to

issue orders that are necessary to enforce its previous orders and to effect its oversight of the

bankruptcy case.  *See In re Whitehall Jewelers Holdings, Inc.*, No. 08-11261 (KG), 2008 WL

2951974, at *6 (Bankr. D. Del. July 28, 2008) (denying debtor's supplemental sale motion to sell

consigned goods, despite prior court order approving sale of debtors' assets, because the relief

requested required the court to make an underlying determination of whether the consigned

goods were property of the estate and such determination required commencement of an

adversary proceeding).  Section 105(a) was not intended by Congress to allow the bankruptcy

court to force a party to settle disputes in a contested matter, and GENBAND provides no

support for that proposition.  Section 105 of the Bankruptcy Code is simply not an appropriate

basis upon which a court can rely to eviscerate the substantive and procedural safeguards of

Bankruptcy Rule 7001.  *See MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Commc'ns, Inc.)*,

262 B.R. 893, 899-900 (D. Del. 2001) (holding that the bankruptcy court erred in issuing an

injunction under Section 105 of the Bankruptcy Code in a contested matter rather than in an

adversary proceeding pursuant to Bankruptcy Rule 7001); *In re DBSI, Inc.*, 432 B.R. 126, 134-35

(Bankr. D. Del. 2010) (stating that requested declaratory judgment relating to a bank's

entitlement to funds in certain repayment accounts fell "clearly within types of proceedings specified by Fed. R. Bankr. P. Rule 7001 to be adversary proceedings").

34.     Permitting GENBAND to pursue the requested relief by motion in a contested matter rather than by adversary complaint would allow GENBAND to sidestep Bankruptcy Rule 7001 and obtain final relief within an abbreviated time frame without having to comply with all of the requirements of the Federal Rules of Civil Procedure.[6]  Thus, pursuant to Bankruptcy Rule 7001, the Motion is procedurally improper and should be denied.

## CONCLUSION

35.     For the foregoing reasons, the Joint Administrators respectfully submit that the Court should deny the Motion.

Dated:    Wilmington, Delaware          **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
          June 1, 2011

                                        /s/ Jaime N. Luton
                                        James L. Patton (No. 2202)
                                        Edwin J. Harron (No. 3396)
                                        Jaime N. Luton (No. 4936)
                                        The Brandywine Building
                                        1000 West Street, 17th Floor
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 571–6600
                                        Facsimile: (302) 571–1253

                                        - and -

---

[6]    For example, in an adversary proceeding, GENBAND would have to file a complaint that provides a "short and plain statement of the claim showing that [it is] entitled to relief," *see* FED. R. CIV. P. 8(a)(2) and which consists of "simple, concise, and direct" averments in individually numbered paragraphs, *see* FED. R. CIV. P. 10(b).  The EMEA Sellers then could answer in a responsive pleading or challenge the complaint's legal sufficiency by motion.  *See* FED. R. CIV. P. 12.

**HUGHES HUBBARD & REED LLP**
Michael Luskin
Kathryn Coleman
Derek J.T. Adler
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837–6000
Facsimile: (212) 422–4726

- and -

**HERBERT SMITH LLP**
Kevin Lloyd
John Whiteoak
Richard Lawton
Exchange House
Primrose Street
London
EC2A 2HS

*Counsel for the Joint Administrators*

16

## EXHIBIT A

### Memorandum of Understanding

1) Deferred Profit Amount shall be $58,065,000, which shall resolve all disputes among the parties with respect to the Deferred Profit Amount, including (without limitation): (i) disputes related to the KPN contract, (ii) post-closing credit memos relating to Qwest, Avaya and miscellaneous other parties (which reflects an amount of $2.9 million), (iii) Luxembourg deferred Costs of Goods Sold and (iv) matters relating to Telus. Support documentation with respect to the preceding clause (ii) shall be provided by GENBAND. If the documentation does not establish these items were not included in GENBAND's calculation of the Deferred Profit Amount, then any such item shall be deducted from the Deferred Profit Amount of $58,065,000.

2) Nortel shall withdraw all claims relating to the Verizon dispute currently before the court, and therefore GENBAND shall retain all amounts received from Verizon that are the subject of Nortel's motion.

3) GENBAND shall pay $1,000,390 in respect of Canadian transfer taxes.

4) After giving effect to the Deferred Profit Amount, the final purchase price under the asset purchase agreement shall be $155,728,137, which shall result in a payment from Nortel to GENBAND of $26,920,863 (which shall be effected by a release of the full amount of the purchase price adjustment escrow to GENBAND, and a payment of the balance of such $26,920,863 to GENBAND).

5) The Parties shall exchange full releases with respect to the above matters, including without limitation releases of affiliates, directors, officers, employees, attorneys, advisors, shareholders and representatives.

6) Each side shall bear its own costs.

7) Nortel's entry into this settlement is subject to the receipt of approvals from all Nortel Sellers and approval by the relevant Courts.

8) Parties to use their best efforts to document and give effect to these terms as soon as reasonably practicable.