**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | **Hearing date: June 7, 2011 at 9:30 a.m. (ET)** |
| | **Re: D.I. 4345, 4347, 4786, 5459** |

**U.S. DEBTORS' OBJECTION TO THE MOTION OF GENBAND US LLC FOR AN ORDER COMPELLING COMPLIANCE WITH SETTLEMENT AGREEMENT AND APPROVING THE SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 9019**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "U.S. Debtors"), by and through their undersigned counsel, hereby respectfully respond and object to the motion filed by GENBAND US LLC (formerly GENBAND Inc., "GENBAND") for an *Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5459] (the "Motion").[2]

## PRELIMINARY STATEMENT

1. On April 4, 2011, GENBAND, NNI and certain other Nortel entities that are parties to the sale of the CVAS Business to GENBAND engaged in court-ordered mediation to

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2] Capitalized terms used but not defined herein shall have the same meaning ascribed to them in the Motion.

resolve certain disputes that have been the subject of various motions and appeals as described below. The mediation produced a Memorandum of Understanding (the "MOU") among the Mediation Parties for a potential settlement of certain issues. The MOU expressly provides that "Nortel's entry into this settlement is subject to the receipt of approvals from all Nortel Sellers and approval by the relevant Courts." (emphasis supplied). Since the conclusion of the mediation, the Mediation Parties have negotiated the terms of a settlement agreement that, as discussed below, if finally agreed to and executed by the relevant parties and approved by the relevant courts, would resolve the Motions, the Appeals and certain other issues (the "Proposed Purchase Price Settlement Agreement").

2. Although the U.S. Debtors do not object to the material terms of the Proposed Purchase Price Settlement Agreement, the relief sought by GENBAND in the Motion is untenable. GENBAND seeks an order compelling the U.S. Debtors to comply with the Proposed Purchase Price Settlement Agreement. However, the Proposed Purchase Price Settlement Agreement is not yet finalized and all relevant parties have yet to approve it. The parties expressly agreed that the U.S. Debtors' entry into the proposed settlement cannot happen until all Nortel entities that are parties to the CVAS Sale Agreement and all relevant courts have approved it.

3. Accordingly, the U.S. Debtors object to GENBAND's motion to the extent it seeks to compel the U.S. Debtors to enter into the proposed settlement without (a) the agreement of all Nortel Sellers and relevant Nortel entities or a court order addressing the rights and potential claims of such parties and (b) approval by the relevant Courts, which at a minimum would include this Court and the Canadian Court.

4. In addition, certain unresolved matters exist concerning the payment obligations of GENBAND and the U.S. Debtors and other Sellers (collectively, the "Nortel TSA Parties")[3] in connection with the Transition Services Agreement (the "TSA"), dated May 28, 2010, entered into by the Nortel TSA Parties and GENBAND. In light of the substantial amounts that GENBAND owes to the Nortel TSA Parties in connection with the TSA, any such unpaid obligations of GENBAND should be applied and offset against any payment to be made to GENBAND under the Proposed Purchase Price Settlement Agreement, if the Proposed Purchase Price Settlement Agreement is ultimately approved.

**BACKGROUND FACTS RELEVANT TO THE OBJECTION**

5. On December 23, 2009, the U.S Debtors filed the *Debtors' Motion For An Order (I) (A) Authorizing Debtors' Entry Into The Stalking Horse Agreement, (B) Authorizing And Approving The Bidding Procedures And Bid Protections, (C) Approving Payment Of An Incentive Fee, (D) Approving The Notice Procedures And The Assumption And Assignment Procedures, (E) Authorizing The Filing Of Certain Documents Under Seal And (F) Setting A Date For The Sale Hearing, And (II) Authorizing And Approving (A) The Sale Of Certain Assets Of Debtors' Carrier Voice Over IP And Application Solutions Business Free and Clear Of All Liens, Claims And Encumbrances And (B) The Assumption And Assignment Of Certain Executory Contracts* [D.I. 2193] seeking approval of the sale of substantially all of the assets relating to Nortel's Carrier Voice over IP and Communications Solutions Business (the "CVAS Business") to GENBAND pursuant to that certain stalking-horse purchase agreement (the "Stalking Horse Agreement"), by and between Nortel Networks Corporation ("NNC"), Nortel

[3] The Nortel TSA parties are: NNC, NNL, NNI, NNUK, NN Ireland, Nortel Networks de Mexico, S.A. de C.V., Nortel de Mexico, S. de R.L. de C.V., Nortel Networks (China) Limited, Nortel Networks Australia Pty Limited, Nortel Networks (India) Private Limited, and each of the Joint Administrators in their respective capacities as joint administrator of respectively NNUK and NN Ireland only.

Networks Limited ("NNL"), Nortel Networks Inc. ("NNI"), the EMEA Sellers[4] and the Other Sellers, each as identified in the Sale Agreement (together with NNC, NNL, NNI and the EMEA Sellers, the "Nortel Sellers"), GENBAND US LLC (f/k/a GENBAND Inc.) ("GENBAND" or the "Purchaser" and collectively with the Nortel Sellers the "Parties") subject to the receipt of a higher and better offer at auction.

6. On or about December 29, 2009, the Canadian Debtors filed a motion with the Canadian Court seeking approval of the Stalking Horse Agreement and bidding procedures in relation to the sale of the CVAS Business.

7. Following the Canadian Court's and U.S. Court's approval of the bidding procedures by orders dated January 6, 2010, and January 8, 2010 [D.I. 2259], respectively, Nortel marketed the CVAS Business to other potentially interested parties, based on the terms of the Stalking Horse Agreement, but ultimately announced that it would not proceed to auction and would work toward closing the sale of the CVAS Business with GENBAND.

8. Following a joint hearing between the Canadian Court and the U.S. Court on March 3, 2010, the Canadian Court approved the sale of the CVAS Business to GENBAND pursuant to the Sale Agreement by order dated March 3, 2010, and the U.S. Court approved the sale of the CVAS Business to GENBAND pursuant to the Sale Agreement by order dated March 4, 2010 [D.I. 2632], and the sale of the CVAS Business by the Nortel Sellers to the Purchaser closed on May 28, 2010 (the "Closing"). At the Closing the Purchaser paid $182,485,250 based on the Nortel Sellers' calculated Estimated Purchase Price of $182,649,000, as set forth in its Estimated Purchase Price Statement dated May 25, 2010.

---

[4] Capitalized terms used but not defined herein shall have the meaning ascribed to them in that certain Asset Sale Agreement by and among NNC, NNL, NNI, the other entities identified therein as Sellers and GENBAND Inc. dated December 22, 2009, as amended (the "Sale Agreement"), or the Escrow Agreement (as defined below).

9. On May 28, 2010, the Parties also entered into the Transition Services Agreement, pursuant to Section 5.27 of the Sale Agreement, in connection with the sale of the CVAS Business to GENBAND.

10. On September 15, 2010, the Purchaser delivered to the Nortel Sellers a Closing Statement that contained its calculation of certain post-closing purchase price adjustments provided for under the Sale Agreement and provided for a net purchase price adjustment in favor of the Purchaser in the amount of $139,096,000, and on October 13, 2010, the Nortel Sellers delivered a Disagreement Notice to the Purchaser that disputed, among other things, the Purchaser's calculation of the Deferred Profit Amount and provided for a net purchase price adjustment in favor of the Purchaser in the amount of $102,271,863.[5]

11. On November 17, 2010, the U.S. Debtors filed the *Debtors' Motion for Entry of an Order Enforcing the Order Authorizing the Sale of Certain Assets of the Debtors' Carrier Voice Over IP and Application Solutions Business, and Directing the Release of Certain Escrowed Funds* [D.I. 4345] (the "U.S. Motion to Enforce the Sale Agreement") which motion sought determination that (i) the Courts maintained jurisdiction over the dispute between the Parties, (ii) a determination of the Final Purchase Price, (iii) a determination that GENBAND was liable for payment of a settlement payment received from Verizon and (iv) a determination that GENBAND was liable for payment of the Canadian Transfer Tax Amount.

[5] To account for certain corrections, on November 16, 2010, the Sellers delivered to the Purchaser a revised Disagreement Notice that provided for a net purchase price adjustment in favor of the Purchaser in the amount of $102,491,255; on January 18, 2011, the Sellers delivered to the Purchaser a further revised Disagreement Notice that provided for a net purchase price adjustment in favor of the Purchaser in the amount of $99,947,239.

12. On November 18, 2010, GENBAND filed the *Motion for Entry of an Order Pursuant to Section 362(d) of the Bankruptcy Code Granting Relief from the Automatic Stay to Compel Arbitration* [D.I. 4347] (the "U.S. Motion to Compel Arbitration").

13. On or about November 30, 2010 the Canadian Debtors filed a motion with the Canadian Court seeking, *inter alia*, a declaration that the Canadian Court and the U.S. Court have the exclusive authority and jurisdiction to determine the dispute relating to the Deferred Profit Amount, an order directing GENBAND to execute instructions to Wells Fargo for the release of amounts held pursuant to an escrow agreement consistent with the Nortel Sellers' calculation of the Deferred Profit Amount and relief in respect of the Canadian Transfer Tax Amount (the "Canadian Motion to Enforce the Sale Agreement", and together with the U.S. Motion to Enforce the Sale Agreement, the "Motions to Enforce the Sale Agreement").

14. On or about December 9, 2010, GENBAND filed a motion with the Canadian Court seeking, *inter alia*, an order requiring Nortel to submit the Deferred Profit Amount dispute to the Accounting Arbitrator (the "Canadian Motion to Compel Arbitration," and collectively with the U.S. Motion to Compel Arbitration and the Motions to Enforce the Sale Agreement, the "Motions").

15. At a telephonic conference held on November 29, 2010, the U.S. Court determined that the U.S. Motion to Compel Arbitration would be determined prior to the U.S. Motion to Enforce the Sale Agreement.

16. On December 15, 2010, the U.S. Court and the Canadian Court held a joint hearing to determine the U.S. Motion to Compel Arbitration and the Canadian Motion to Compel Arbitration, and on January 21, 2011, the U.S. Court denied the U.S. Motion to Compel

Arbitration (the "U.S. Order") and the Canadian Court denied the Canadian Motion to Compel Arbitration (the "Canadian Order").

17. Pursuant to a Notice of Appeal filed on February 1, 2011 [D.I. 4786], GENBAND appealed the U.S. Order (the "U.S. Appeal"), and the U.S. Appeal was docketed in the United States District Court for the District of Delaware. Thereafter, on February 11, 2011, GENBAND served a notice of motion seeking leave to appeal the Canadian Order (the "Canadian Appeal" and together with the U.S. Appeal the "Appeals").

18. On April 4, 2011, GENBAND, the U.S. Debtors, the Canadian Debtors, the Official Committee of Unsecured Creditors, and Ernst & Young Inc. in its capacity as Monitor of the Canadian Debtors (the "Mediation Parties") engaged in mediation pursuant to the Standing Order of the District Court of Delaware dated July 23, 2004. Notably, none of the EMEA Sellers participated in the mediation. As noted, the mediation produced a Memorandum of Understanding (the "MOU") among the Mediation Parties for a potential settlement of certain issues. See Exhibit A, attached hereto. The MOU expressly provides that "Nortel's entry into this settlement is subject to the receipt of approvals from all Nortel Sellers and approval by the relevant Courts." Id. (emphasis supplied).

19. Since the conclusion of the mediation, the Mediation Parties have negotiated the terms of a settlement agreement, the Proposed Purchase Price Settlement Agreement, which, if finally agreed to and executed by the relevant parties and approved by the relevant courts, would resolve the Motions, the Appeals and certain other issues. In summary, the Proposed Purchase Price Settlement Agreement would provide, inter alia, that (i) the Deferred Profit Amount shall be $56,049,381, and, after giving effect to the Deferred Profit Amount, the Final Purchase Price under the Sale Agreement shall be $157,743,756, which shall resolve all disputes among the

parties with respect to the Deferred Profit Amount; (ii) the dispute over the Canadian Transfer Tax Amount shall be resolved by the Nortel Sellers deducting an amount equal to the Canadian Transfer Tax Amount from the Balance payable to GENBAND and the Nortel Sellers paying such amount to NNL; (iii) as of the Settlement Date, the U.S. Debtors and Canadian Debtors shall withdraw the Motions to Enforce the Sale Agreement and GENBAND shall file notices of withdrawal of the Appeals; and (iv) that withdrawal of the Motions shall resolve the dispute concerning the Verizon Settlement Amount. See Exhibit B, attached hereto

20. To date, certain EMEA Sellers have not approved the material terms of the Proposed Purchase Price Settlement Agreement.

21. On May 20, 2011, even though it was aware then, as it is aware now, that not all Nortel Sellers had approved the proposed settlement, GENBAND filed the Motion seeking to compel the U.S. Debtors to enter into the Proposed Purchase Price Settlement Agreement. Additionally, on May 20, 2011 GENBAND filed the *Motion for an Order (I) Shortening the Time for Notice of the Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019; and (II) Limiting Service of the Motion to Compel and Approve* [D.I. 5460]. On May 23, 2011, this Court entered the *Order Granting Motion for an Order (I) Shortening the Time for Notice of the Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019; and (II) Limiting Service of the Motion to Compel and Approve* [D.I. 5463] and ordered that the Motion be heard on June 7, 2011 at 9:30 a.m. (ET) and that objections to the Motion shall be raised on or before June 1, 2011. The U.S. Debtors hereby object to the Motion for the reasons set forth below.

## ARGUMENT

22. The U.S. Debtors believe that, if accepted by all Nortel Sellers and approved by the relevant courts, the Proposed Purchase Price Settlement Agreement, attached hereto as Exhibit B, would represent a fair and appropriate resolution of the matters it addresses. However, as the parties to the MOU specifically agreed, the U.S. Debtors' entry into the Proposed Purchase Price Settlement Agreement "is subject to the receipt of approvals from all Nortel Sellers and approval by the relevant Courts." MOU at ¶ 7 (emphasis supplied). Moreover, the proposed settlement is just that – it is a compromise of a dispute rather than an admission of liability and it cannot and should not be unilaterally imposed on the U.S. Debtors by way of GENBAND filing a motion simply because they have grown impatient with the very process to which they previously agreed.

23. It is uncontroverted that not all Nortel Sellers have approved the Proposed Purchase Price Settlement Agreement to date.[6] GENBAND itself acknowledges that certain EMEA Sellers, which it refers to as the Non-Consenting EMEA Sellers, have not yet approved the Proposed Purchase Price Settlement Agreement. Motion at ¶ 49.[7] Therefore, according to the clear terms of the MOU, the U.S. Debtors cannot be compelled to enter into the Proposed Purchase Price Settlement Agreement at this time. Further, because the Proposed Purchase Price Settlement Agreement, if approved, would require payments to be made to GENBAND by releasing funds from escrow accounts to which other Nortel Sellers are signatories, the Proposed Purchase Price Settlement Agreement cannot be effectuated merely by GENBAND seeking an

---

[6] The U.S. Debtors understand that NNL and the Monitor approve of the principal terms of the Purchase Price Settlement Agreement, but that it remains subject to the execution of definitive documentation among the parties in all respects which will include a requirement for Canadian Court approval.

[7] The U.S. Debtors disagree with any suggestion that they or any other Nortel entity that is party to the MOU has not worked expeditiously to finalize the Purchase Price Settlement Agreement in accordance with the MOU.

order directing the U.S. Debtors to comply with the settlement. Nor should the U.S. Debtors be subject to such an order of direction when no other parties to the proposed settlement, including GENBAND, are proposed to be held to the same requirement. Notably, GENBAND has not sought any similar relief before the Canadian Court, or against the EMEA Sellers.

24. Moreover, GENBAND does not have the proper standing to make the Motion. The statutory basis for the relief requested in the Motion is Bankruptcy Rule 9019 which provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a) (emphasis supplied). Therefore, such a motion may only be brought by a trustee or a debtor-in-possession, as applicable. Since GENBAND is neither a trustee nor a debtor-in-possession, it lacks standing to request approval of the Proposed Purchase Price Settlement Agreement.

25. Accordingly, the U.S. Debtors object to GENBAND's motion to the extent it seeks to compel the U.S. Debtors to enter into the Proposed Purchase Price Settlement Agreement without (a) the agreement of all Nortel Sellers and relevant Nortel entities or a court order addressing the rights and potential claims of such parties and (b) approval by the relevant Courts, which at a minimum would include this Court and the Canadian Court.

26. In addition, certain disputes exist concerning the payment obligations of GENBAND and the Nortel TSA Parties under the TSA. Though the exact amounts are subject to further review, Nortel believes GENBAND owes the Nortel TSA Parties several million dollars under the TSA. The Nortel TSA Parties and GENBAND are negotiating a settlement in principle of their disputes and agreed upon payments by GENBAND to Nortel. In light of the substantial amounts that GENBAND owes to the Nortel TSA Parties under the TSA and/or the TSA Settlement Agreement, any such unpaid obligations of GENBAND should be applied and

offset against any payment to be made to GENBAND under the Proposed Purchase Price Settlement Agreement, if the Proposed Purchase Price Settlement Agreement is ultimately approved.

**Reservation of Rights**

27. The U.S. Debtors expressly reserve the right to supplement this Objection, in whole or in part, and to file additional objections and adversary proceedings, on any factual or legal basis.

## CONCLUSION

28. For the reasons set forth above, the relief requested in the Motion should be denied and the Court instead should enter the Order attached hereto as Exhibit C, or should otherwise deny the Motion.

Dated: June 1, 2011
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
David H. Herrington (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*_/s/ Ann C. Cordo_*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the U.S. Debtors*
*and Debtors in Possession*