**EXHIBIT A**

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION
APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**MOTION RECORD OF NORTEL**
**SNMP RI DISCOVERY MOTION**
**(returnable June 7, 2011)**

June 1, 2011

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jennifer.stam@nortonrose.com

Fax: (416) 216-3930

Lawyers for the Applicants

# INDEX

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

## TABLE OF CONTENTS

| TAB | DOCUMENT | PAGE |
|-----|----------|------|
| 1. | Notice of Motion returnable June 7, 2011 | 1 |
| 2. | Affidavit Catherine Ma sworn June 1, 2011 | 29 |
| A | U.S. Debtors' Motion for Protective Order Limiting Discovery Requests Propounded by SNMP Research International, Inc., dated April 1, 2011 | 31 |
| B | Creditor SNMP Research International, Inc.'s First Set of Interrogatories and Requests for Production of Documents Directed to the U.S. Debtors, dated March 1, 2011 | 53 |
| C | Monitor's (I) Statement in Support of the U.S. Debtors' Motion for Protective Order Limiting Discovery Requests Propounded by SNMP Research International, Inc., and (II) Request for Join Hearing on Such Motion, dated April 1, 2011 | 65 |
| 3. | Draft Order | 73 |

# TAB 1

Court File No.  09-CL-7950

**1**

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
### R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
### NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
### NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
### INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
### CORPORATION

### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
### R.S.C. 1985, c. C-36, AS AMENDED

### NOTICE OF MOTION
### SNMP RI DISCOVERY MOTION
### (returnable June 7, 2011)

Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, "Nortel Canada" or the "Applicants") will make a motion to Justice Morawetz of the Superior Court of Ontario (Commercial List) on **Tuesday, June 7, 2011** at 10:00 a.m., or as soon after that time as the motion can be heard, at 393 University Avenue, Toronto, Ontario.

PROPOSED METHOD OF HEARING: The motion is to be heard:

☐ in writing under subrule 37.12.1(1) because it is on consent or unopposed or made without notice;

☐ in writing as an opposed motion under subrule 37.12.1(4);

☒ orally.

THE MOTION IS FOR:

(a) An order abridging the time for service so that this Motion is properly returnable today and hereby dispensing with further service thereof;

2

(b)    A declaration that SNMP Research International, Inc. ("SNMP RI") has not sought relief against Nortel Canada or in the CCAA Court in the within proceedings with regard to production by Nortel Canada of any documents, materials, information or source code;

(c)    A declaration that Nortel Canada has a proprietary interest in and had historical ownership of certain documents, materials, information and source code of which SNMP RI seeks discovery from Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc. (collectively, the "U.S. Debtors") as being in the power, possession or control of the U.S. Debtors (the "Production Demands") in the context of the claims process in the bankruptcy proceedings commenced by the U.S. Debtors in the United States under Chapter 11 of Title 11 of the United States Code (the "U.S. Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "U.S. Bankruptcy Court") (the "Chapter 11 Proceedings"), and that Nortel Canada will suffer prejudice by any disclosure of such documents, materials, information and source code;

(d)    An order that, in the event the U.S. Bankruptcy Court orders the U.S. Debtors to make productions pursuant to or as a result of the Production Demands, any documents, materials, information or source code so produced by the U.S. Debtors that are proprietary to the Applicants or in which the Applicants have an interest shall be subject to the deemed undertaking rule in Canada and may not be used for, against or in any way related to any claim or action against the Applicants without leave of this Court; and

(e)     Such further and other relief as counsel may advise and this Honourable Court may deem just.

**3**

THE GROUNDS FOR THE MOTION ARE:

(a)     On January 14, 2009, this Honourable Court made an order (the "Initial Order") placing the Applicants into protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, C. C-36 ("CCAA") (the "CCAA Proceedings");

(b)     The Initial Order granted, *inter alia*, a stay of proceedings (the "Stay") and appointed Ernst & Young Inc. as monitor of the Applicants (the "Monitor");

(c)     On that same day, insolvency and restructuring proceedings were commenced by Nortel's worldwide affiliates and subsidiaries[1] in their respective jurisdictions, including the Chapter 11 Proceedings;

(d)     SNMP RI has filed a claim against the U.S. Debtors in the Chapter 11 Proceedings. It claims for allegedly unreported and unpaid royalties and other fees arising from Nortel's use of some of SNMP RI's software;

(e)     SNMP RI has also filed a proof of claim in the CCAA Proceeding;

(f)      Throughout the worldwide insolvency proceedings, Nortel has been disposing of a number of its lines of businesses. In the sales processes in the Chapter 11 Proceedings SNMP RI attempted to seek a right to audit the software included in the lines of business that were sold. The U.S. Bankruptcy Court rejected such attempts;

(g)     SNMP RI now seeks to use the discovery process in the claims process in the Chapter 11 Proceedings in order to gain access to, *inter alia*, all of the software source code used in all products released by Nortel in the past 11 years;

---

[1] Nortel Canada together with its worldwide affiliates and subsidiaries are hereinafter referred to as "Nortel".

4

(h)     The U.S. Debtors now seek an order from the U.S. Bankruptcy Court limiting the discovery sought by SNMP RI in the Chapter 11 Proceedings;

(i)     Nortel was organised such that its lines of business crossed over throughout its various geographical entities.  Accordingly, proprietary information of one Nortel entity, including documents, software source code and other such materials and information used in the products of a given line of business may be in the possession of a different Nortel entity even though the latter would not have owned such information;

(j)     Nortel Canada has an interest in various documents, materials, information and source code in the U.S. Debtors' possession and on computers owned by the U.S. Debtors;

(k)     Discovery of such documents, materials, information and source code could seriously prejudice Nortel Canada's rights in intellectual property in which it has an interest;

(l)     SNMP RI should not be allowed to make use of information and evidence about Nortel Canada obtained through a discovery process that may occur outside of Ontario in a manner that would not be allowed were similar discovery to occur within Ontario;

(m)     Rules 30.1.01 and 37 of the Rules of Civil Procedure; and

(n)     Such further and other grounds as counsel may advise and this Honourable Court permit.

THE FOLLOWING DOCUMENTARY EVIDENCE will be used at the hearing of the motion:

(a)     The Affidavit of Catherine Ma, sworn June 1, 2011; and

(b)     Such other material that is filed.

5

June 1, 2011

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jennifer.stam@nortonrose.com

Fax: (416) 216-3930

TO:     Attached Service List

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. c-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

**SERVICE LIST**

TO:         **NORTON ROSE OR LLP**
            Royal Bank Plaza, South Tower
            200 Bay Street, Suite 3800
            Toronto, Ontario M5J 2Z4

            Derrick Tay
            Tony Reyes
            Jennifer Stam

            Email:      derrick.tay@nortonrose.com
                        tony.reyes@nortonrose.com
                        jennifer.stam@nortonrose.com

            Tel:        416.216.4000
            Fax:        416.216.3930

            Lawyers for the Applicants

- 2 -

TO:   **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, Ontario  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:   nortel.monitor@ca.ey.com

Tel:   416.943.3016
Fax:   416.943.3300

AND
TO:   **GOODMANS LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario  M5H 2S7

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Fred Myers
Chris Armstrong

Email:   jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
grubenstein@goodmans.ca
fmyers@goodmans.ca
carmstrong@goodmans.ca

Tel:   416.597.4107
Fax:   416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND
TO:   **OSLER HOSKIN AND HARCOURT LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, Ontario  M5X 1B8

Lyndon Barnes
Rupert Chartrand
Edward Sellers
Betsy Putnam

Email:   lbarnes@osler.com
rchartrand@osler.com
esellers@osler.com
eputnam@osler.com

Tel:   416.362.2111
Fax:   416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND
TO:   **FASKEN MARTINEAU DUMOULIN LLP**
66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, Ontario  M5K 1N6

Donald E. Milner
Aubrey Kauffman
Edmond Lamek
Jon Levin

Email:   dmilner@fasken.com
akauffman@fasken.com
elamek@fasken.com
jlevin@fasken.com

Tel:   416.868.3538
Fax:   416.364.7813

Lawyers for Export Development Canada

AND TO: **EXPORT DEVELOPMENT CANADA**
151 O'Connor Street
Ottawa, Ontario K1A 1K3

Jennifer Sullivan

Email: jsullivan@edc.ca

Tel: 613.597.8651
Fax: 613.598.3113

AND TO: **McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email: john.stringer@mcinnescooper.com
stephen.kingston@mcinnescooper.com

Tel: 902.425.6500
Fax: 902.425.6350

Lawyers for Convergys EMEA Limited

AND TO: **CAW-CANADA**
Legal Department
205 Placer Court
Toronto, Ontario M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email: barry.wadsworth@caw.ca
lewis.gottheil@caw.ca

Tel.: 416.495.3776
Fax: 416.495.3786

Lawyers for all active and retired Nortel
employees represented by the CAW-Canada

AND TO: **THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific
Tower
Toronto, Ontario M5K 1K7

Leanne M. Williams

Email: lwilliams@tgf.ca

Tel: 416.304.1616
Fax: 416.304.1313

Lawyers for Flextronics Telecom Systems
Ltd.

AND TO: **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario M5H 3S1

Jeffrey Carhart

Email: jcarhart@millerthomson.com

Tel: 416.595.8615/8577
Fax: 416.595.8695

Lawyers for Toronto-Dominion Bank

AND TO: **BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC V7X 1S8

R. Hoops Harrison

Email: hharrison@boughton.ca

Tel: 604.687.6789
Fax: 604.683.5317

Lawyers for Tonko Realty Advisors (BC)
Ltd., in its capacity as duly authorized agent
for Holdings 1506 Enterprises Ltd.

AND TO:
**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, Ontario  M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:  mmacnaughton@blgcanada.com
Tel:  416. 367.6646
Fax:  416. 682.2837

Email:  rjaipargas@blgcanada.com
Tel:  416.367.6266
Fax:  416.361.7067

Email:  srappos@blgcanada.com
Tel:  416.367.6033
Fax:  416.361.7306

Lawyers for Bell Canada

AND TO:
**SISKINDS LLP**
680 Waterloo Street
London, Ontario  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein
Emilie E. M. Maxwell

Email:  ray.leach@siskinds.com
        dimitri.lascaris@siskinds.com
        emilie.maxwell@siskinds.com

Tel:  519.672.2121
Fax:  519.672.6065

Lawyers for Indiana Electrical Workers
Pension Trust Fund IBEW, Laborers Local
100 and 397 Pension Fund, and Bruce
William Lapare

AND TO:
**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario  M5J 2T3

John Contini
Aaron Rousseau

Email  john.contini@mcmillan.ca
Tel:  416.307.4148
Fax:  416.304.3767

Email  aaron.rousseau@mcmillan.ca
Tel:  416.307.4081
Fax:  416.365.1719

Lawyers for ABN AMRO Bank N.V.

AND TO:
**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson
Richard Swan

Email:  zychk@bennettjones.com
Tel:  416.777.5738
Fax:  416.863.1716

Email:  orzyr@bennettjones.com
Tel:  416.777.5737
Fax:  416.863.1716

Email:  finlaysong@bennettjones.com
Tel:  416.777.5762
Fax:  416.863.1716

Email:  swanr@bennettjones.com
Tel:  416.777.7479
Fax:  416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

AND
TO:

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, Ontario  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon
Celeste Poltak

Email:   mzigler@kmlaw.ca
Tel:     416.595.2090
Fax:     416.204.2877

Email:   sphilpott@kmlaw.ca
Tel:     416.595.2104
Fax:     416.204.2882

Email:   dyiokaris@kmlaw.ca
Tel:     416.595.2130
Fax:     416.204.2810

Email:   amckinnon@kmlaw.ca
Tel:     416.595.2150
Fax:     416.204.2874

Email:   cpoltak@kmlaw.ca
Tel:     416.595.2701
Fax:     416.204.2909

Lawyers for the Former Employees of Nortel

AND
TO:

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, Ontario  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon
Celeste Poltak

Email:   mzigler@kmlaw.ca
Tel:     416.595.2090
Fax:     416.204.2877

Email:   sphilpott@kmlaw.ca
Tel:     416.595.2104
Fax:     416.204.2882

Email:   dyiokaris@kmlaw.ca
Tel:     416.595.2130
Fax:     416.204.2810

Email:   amckinnon@kmlaw.ca
Tel:     416.595.2150
Fax:     416.204.2874

Email:   cpoltak@kmlaw.ca
Tel:     416.595.2701
Fax:     416.204.2909

Lawyers for the LTD Beneficiaries

AND TO: **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:  jcarhart@millerthomson.com
Tel:    416.595.8615
Fax:    416.595.8695

Email:  msims@millerthomson.com
Tel:    416.595.8577
Fax:    416.595.8695

Email:  jmklotz@millerthomson.com
Tel:    416.595.4373
Fax:    416.595.8695

Lawyers for LG Electronics Inc.

AND TO: **LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongduengpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:  joseph.kim@lge.com

Tel:    +82.2.3777.3171
Fax:    +82.2.3777.5345

AND TO: **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:  jcarhart@millerthomson.com
Tel:    416.595.8615
Fax:    416.595.8695

Email   msims@millerthomson.com
Tel:    416.595.8577
Fax:    416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision
Communication Services, Inc.

AND TO: **CHAITONS LLP**
185 Sheppard Avenue West
Toronto, Ontario  M2N 1M9

Harvey G. Chaiton

Email:  harvey@chaitons.com

Tel:    416.218.1129
Fax:    416.218.1849

Lawyers for IBM Canada Limited

AND
TO:

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, Ontario  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:  ken.rosenberg@paliareroland.com
Tel:     416.646.4304
Fax:    416.646.4301

Email:  max.starnino@paliareroland.com
Tel:     416.646.7431
Fax:    416.646.4301

Email:  lily.harmer@paliareroland.com
Tel:     416.646.4326
Fax:    416.646.4301

Email:  tina.lie@paliareroland.com
Tel:     416.646.4332
Fax:    416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1G5

E. Patrick Shea

Email:  patrick.shea@cowlings.com

Tel:     416.369.7399
Fax:    416.862.7661

Lawyers for Westcon Group

AND
TO:

**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder
Ryan Jacobs

Email:  Shayne.kukulowicz@fmc-law.com
          Alex.macfarlane@fmc-law.com
          Michael.wunder@fmc-law.com
          ryan.jacobs@fmc-law.com

Tel:     416.863.4511
Fax:    416.863.4592

Canadian Lawyers for the Official Committee
of Unsecured Creditors

AND
TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:  rslattery@mindengross.com
          dullmann@mindengross.com
Tel:     416.369.4149
Fax:    416.864.9223

Lawyers for Verizon Communications Inc.

AND TO:
**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:   hfogul@airdberlis.com
Tel:     416.865.7773
Fax:     416.863.1515

Email:   pczegledy@airdberlis.com
Tel:     416.865.7749
Fax:     416.863.1515

Lawyers for Microsoft Corporation

AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:   renglish@airdberlis.com
         smitra@airdberlis.com

Tel:     416.863.1500
Fax:     416.863.1515

Lawyers for Tata Consultancy Services
Limited and Tata America International
Corporation

AND TO:
**ALEXANDER HOLBURN BEAUDIN & LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:   surquhart@ahbl.ca
Tel:     604.484.1757
Fax:     604.484.1957

Lawyers for Algo Communication Products
Ltd.

AND TO:
**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:   jwigley@gardiner-roberts.com
Tel:     416.865.6655
Fax:     416.865.6636

Email:   vdare@foglers.com
Tel:     416.865.6641
Fax:     416.865.6636

Lawyers for Andrew, LLC

AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Maurice Fleming

Email:   mfleming@millerthomson.com
Tel:     416.595.8686
Fax:     416.595.8695

Lawyers for Verint Americas Inc. and Verint
Systems, Inc.

AND
TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, Ontario  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:     416.365.3529
Fax:     416.369.5210

Email:   jdavissydor@davis.ca
Tel:     416.941.5397
Fax:     416.365.7886

Lawyers for Brookfield LePage Johnson
Controls Facility Management Services


AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Lawyers for Perot Systems Corporation


AND
TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:   andrew.kent@mcmillan.ca
Tel:     416.865.7160
Fax:     416.865.7048

Email:   hilary.clarke@mcmillan.ca
Tel:     416.865.7286
Fax:     416.865.7048

Email:   tushara.weerasooriya@mcmillan.ca
Tel:     416.865.7262
Fax:     416.865.7048

Lawyers for Royal Bank of Canada


AND
TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Lawrence J. Crozier
Adam C. Maerov

Email:   lawrence.crozier@mcmillan.ca
Tel:     416.865.7178
Fax:     416.865.7048

Email:   adam.maerov@mcmillan.ca
Tel:     416.865.7285
Fax:     416.865.7048

Lawyers for Citibank

AND TO:

**CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario M5H 3C2

Deborah S. Grieve

Email: dgrieve@casselsbrock.com
Tel: 416.860.5219
Fax: 416.350.6923

Lawyers for Alvarion Ltd.

AND TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email: jwigley@gardiner-roberts.com
Tel: 416.865.6655
Fax: 416.865.6636

Email: vdare@foglers.com
Tel: 416.865.6641
Fax: 416.865.6636

Lawyers for Amphenol Corporation

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Sanjeev P.R. Mitra

Email: smitra@airdberlis.com

Tel: 416.863.1500
Fax: 416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

AND TO:

**BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario M5C 3G5

Domenico Magisano

Email: dmagisano@blaney.com
Tel: 416.593.2996
Fax: 416.593.5437

Lawyers for Expertech Network Installation Inc.

AND TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Aaron Rousseau

Email: aaron.rousseau@mcmillan.ca
Tel: 416.307.4081
Fax: 416.365.1719

Lawyer for Right Management Inc.

AND TO:

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario M5H 3C2

E. Bruce Leonard
David S. Ward
Michael Casey

Email: bleonard@casselsbrock.com
dward@casselsbrock.com
mcasey@casselsbrock.com

Tel: 416.860.6455
Fax: 416.640.3054

Lawyers for the UK Pension Protection Fund and Nortel Networks UK Pension Trust Limited

AND
TO:

**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario  K2P 0A2

Paul K. Lepsoe

Email:   pklepsoe@mcfarlanelaw.com

Tel:      613.233.2679
Fax:     613.233.3774

Lawyers for Iron Mountain Canada
Corporation and Iron Mountain Information
Management, Inc.

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:   theintzm@mccarthy.ca
Tel:      416.601.7627
Fax:     416.868.0673

Email:   jsirivar@mccarthy.ca
Tel:      416.601.7750
Fax:     416.868.0673

Lawyers for Frank Andrew Dunn

AND
TO:

**IRVING MITCHELL KALICHMAN LLP**
Place Alexis Nihon, Tour 2
3500 Boulevard De Maisonneuve Ouest
Bureau 1400
Montreal, Quebec  H3Z 3C1

Kurt A. Johnson

Email :  kjohnson@imk.ca
Tel:      514.935.5755
Fax :    514.935.2999

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

AND
TO:

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:   janice.payne@nelligan.ca
           steven.levitt@nelligan.ca
           christopher.rootham@nelligan.ca

Tel:      613.231.8245
Fax:     613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post
CCAA as at January 14, 2009

AND TO: **BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario M5J 2T3

Chris Besant
Lydia Salvi

Email: chris.besant@bakernet.com

Tel: 416.865.2318
Fax: 416.863.6275

Email: lydia.salvi@bakernet.com

Tel: 416.865.6944
Fax: 416.863.6275

Lawyers for Jabil Circuit Inc.

AND TO: **SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec H9S 2A5

Dan Goldstein
Marco Gaggino

Email: dgoldstein@schneidergaggino.com
mgaggino@schneidergaggino.com

Tel: 514.631.8787
Fax: 514.631.0220

Lawyers for the Teamsters Quebec Local 1999

AND TO: **EURODATA**
2574 Sheffield Road
Ottawa, Ontario K1B 3V7

Nanci Shore

Email: nanci@eurodata.ca
Tel: 613.745.0921
Fax: 613.745.1172

AND TO: **BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email: ryanbellr@bennettjones.com
laugesenm@bennettjones.com

Tel: 416.863.1200
Fax: 416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and Tel-e Connect Systems (Toronto) Ltd.

AND TO: **MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario M5H 4G2

Timothy R. Dunn

Email: tdunn@mindengross.com
Tel: 416.369.4335
Fax: 416.864.9223

Lawyers for 2748355 Canada Inc.

AND TO: **BALDWIN LAW PROFESSIONAL CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email: ibrady@baldwinlaw.ca
Tel: 613.771.9991
Fax: 613.771.9998

Lawyers for Sydney Street Properties Corp.

AND TO:

**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Raffy Lorentzian

Email: raffy.lorentzian@ntscorp.com
Tel: 714.998.4351
Fax: 714.998.7142

Lawyers for AETL Testing, Inc.

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email: sgraff@airdberlis.com
Tel: 416.865.7726
Fax: 416.863.1515

Email: iaversa@airdberlis.com
Tel: 416.865.3082
Fax: 416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND TO:

**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthur.jacques@shibleyrighton.com
Tel: 416.214.5213
Fax: 416.214.5413

Email: thomas.mcrae@shibleyrighton.com
Tel: 416.214.5206
Fax: 416.214.5400

Lawyers for The Recently Severed
Canadian Nortel Employees Committee

AND TO:

**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthur.jacques@shibleyrighton.com
Tel: 416.214.5213
Fax: 416.214.5413

Email: thomas.mcrae@shibleyrighton.com
Tel: 416.214.5206
Fax: 416.214.5400

Co-Counsel for the Steering Committee of
Nortel Canadian Continuing Employees –
Post CCAA as at January 14, 2009

AND TO:

**NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Raffy Lorentzian

Email: raffy.lorentzian@ntscorp.com
Tel: 714.998.4351

AND TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email: david.cohen@gowlings.com

Tel: 416.369.6667
Fax: 416.862.7661

Lawyers for General Electric Canada
Equipment Finance G.P. and GE Capital
Canada Leasing Services Inc.

AND
TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:       416.365.3529
Fax:      416.369.5210

Email:   jdavissydor@davis.ca
Tel:       416.941.5397
Fax:      416.365.7886

Lawyers for Computershare Trust Company
of Canada

AND
TO:

**LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:  tosullivan@counsel-toronto.com
Tel:       416.598.1744
Fax:      416.598.3730

Email:   slaubman@counsel-toronto.com
Tel:       416.598.1744
Fax:      416.598.3730

Lawyers for William A. Owens

AND
TO:

**DAVIES WARD PHILLIPS & VINEBERG
LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:   rschwill@dwpv.com
Tel:       416.863.0900
Fax:      416.863.0871

Email:   mgottlieb@dwpv.com
Tel:       416.863.0900
Fax:      416.863.0871

Lawyers for Nortel Networks UK Limited (In
Administration)

AND
TO:

**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Lydia Salvi

Email:   lydia.salvi@bakernet.com

Tel:       416.865.6944
Fax:      416.863.6275

Lawyers for Wipro Limited

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:    416.865.7726
Fax:    416.863.1515

Email:  iaversa@airdberlis.com
Tel:    416.865.3082
Fax:    416.863.1515

Lawyers for the Current and Former
Employees of Nortel Networks Inc. who are
or were Participants in the Long-Term
Investment Plan Sponsored by Nortel
Networks Inc.

AND
TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario, M5J 2T3

Sheryl E. Seigel

Email:  sheryl.seigel@mcmillan.ca
Tel:    416.307.4063
Fax:    416.365.1719

Lawyers for The Bank of New York Mellon

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Susan M. Grundy
Marc Flynn

Email:  susan.grundy@blakes.com
Tel:    416.863.2572
Fax:    416.863.2653

Email:  marc.flynn@blakes.com
Tel:    416.863.2685
Fax:    416.863.2653

Lawyers for Telefonaktiebolaget L M
Ericsson (publ)

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario  M5K 1E6

Heather Meredith

Email:  hmeredith@mccarthy.ca
Tel:    416.601.8342
Fax:    416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND
TO:

**DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:  dwinters@justice.gc.ca
Tel:    416.973.3172
Fax:    416.973.0810

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:  kmcelcheran@mccarthy.ca
Tel:    416.601.7730
Fax:    416.868.0673

Email:  rstabile@mccarthy.ca
Tel:    416.601.8335
Fax:    416.868.0673

Lawyers for Avaya Inc.

AND TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:     416.863.2958
Fax:    416.863.2653

Email:  milly.chow@blakes.com
Tel:     416.863.2594
Fax:    416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:     416.863.2426
Fax:    416.863.2653

Email:  craig.thorburn@blakes.com
Tel:     416.863.2965
Fax:    416.863.2653

Lawyers for MatlinPatterson Global
Advisers LLC, MatlinPatterson Global
Opportunities Partners III L.P. and
MatlinPatterson Opportunities Partners
(Cayman) III L.P.

AND TO:

**FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:  jspiegelman@foglers.com
Tel:     416.864.9700
Fax:    416.941.8852

Lawyers for Belden (Canada) Inc.

AND TO:

**SACK GOLDBLATT MITCHELL LLP**
20 Dundas Street West
Suite 1100
Toronto, Ontario  M5G 2G8

James McDonald
Darrell Brown

Email:  jmcdonald@sgmlaw.com
Tel:     416.979.6425
Fax:    416.591.7333

Email:  dbrown@sgmlaw.com
Tel:     416.979.4050
Fax:    416.591.7333

Lawyers for Edmund Fitzgerald

AND TO:

**VINCENT DAGENAIS GIBSON LLP/s.r.l**
Barristers and Solicitors
600-325 Dalhousie Street
Ottawa, ON  K1N 7G2

Thomas Wallis

E-mail:  thomas.wallis@vdg.ca
Tel:     613.241.2701
Fax:    613.241.2599

Lawyers for La Regie des Rentes du Quebec

AND
TO:

**STIKEMAN ELLIOTT LLP**
5300 Commerce Court West
199 Bay Street
Toronto, ON  M5L 1B9

Sean F. Dunphy

Email:  sdunphy@stikeman.com
Tel:     416.869.5662
Fax:    416.947.0866

Lawyers for GENBAND Inc.

AND
TO:

**STIKEMAN ELLIOTT LLP**
445 Park Avenue, 7ᵗʰ Floor
New York, NY  10022

Gordon Cameron
Ron Ferguson

Email:  gncameron@stikeman.com
Tel:     212.845.7464
Fax:    212.371.7087

Email:  rferguson@stikeman.com
Tel:     212.845.7477
Fax:    212.371.7087

Lawyers for GENBAND Inc.

AND
TO:

**BORDEN LADNER GERVAIS LLP**
Barristers and Solicitors
Scotia Plaza, Suite 4400
40 King Street West
Toronto, ON  M4H 3Y4

John D. Marshall
Craig J. Hill

Email:  jmarshall@blgcanada.com
Tel:     416.367.6024
Fax:    416.361.2763

Email:  chill@blgcanada.com
Tel:     416.367.6156
Fax:    416.631.7301

Lawyers for the U.K. Pensions Regulator

AND
TO:

**BLAKE, CASSELS & GRAYDON**
Box 25, Commerce Court West
199 Bay Street, Suite 2800
Toronto, Ontario  M5L 1A9

Pamela J. Huff
J. Jeremy Forgie

Email:  pamela.huff@blakes.com
Tel:     416.863.2958
Fax:    416.863.2653

Email:  jeremy.forgie@blakes.com
Tel:     416.863.3888
Fax:    416.863.2653

Lawyers for The Northern Trust Company,
Canada

AND
TO:

**ROCHON GENOVA LLP**
121 Richmond Street West
Suite 900
Toronto, ON  M5H 2K1

Joel P. Rochon

Email:  jrochon@rochongenova.com
Tel:     416.363.1867
Fax:    416.363.0263

Lawyers for the Opposing LTD Employees

AND
TO:

**LERNERS LLP**
130 Adelaide St. West
Suite 2400
Toronto, ON  M5H 3P5

William E. Pepall

Email:  wpepall@lerners.ca
Tel:     416.601.2352
Fax:    416.867.2415

Lawyers for the Former Employees in Respect
of the Distribution of the Corpus of the Health
and Welfare Trust

AND TO:

**MACLEOD DIXON LLP**
3700 Canterra Tower
400 Third Avenue SW
Calgary, Alberta
T2P 4H2

Kyle D. Kashuba

Email:  kyle.kashuba@macleoddixon.com
Tel:    403.267.8399
Fax:    403.264.5973

Constellation NewEnergy Canada Inc.

AND TO:

**SACK GOLDBLATT MITCHELL**
500 – 30 rue Metcalfe St.
Ottawa, ON  K1P 5L4

Peter Engelmann
Fiona Campbell

Email:  pengelmann@sgmlaw.com
Tel:    613-482-2452
Fax:    613-235-3041

Email:  fcampbell@sgmlaw.com
Tel:    613-482-2451
Fax:    613-235-3041

Lawyers for the LTD Beneficiaries in Respect of the Distribution of the Corpus of the Health and Welfare Trust

AND TO:

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006

James Bromley
Lisa Schweitzer
Martin N. Kostov

Email:  jbromley@cgsh.com
        lschweitzer@cgsh.com
        mkostov@cgsh.com
Tel:    212.225.2000
Fax:    212.225.3999

Lawyers for Nortel Networks Inc.

AND TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Barbara J. Boake
James D. Gage

E-mail:  bboake@mccarthy.ca
Tel:     416.601.7557
Fax:     416.868.0673

Email:   jgage@mccarthy.ca
Tel:     416.601.7539
Fax:     416.686.0673

Lawyers for Morneau Shepell Ltd.

AND TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, ON  M5J 2T3

D. Brent McPherson

Email:  brent.mcpherson@mcmillan.ca
Tel:    416.307.4103
Fax:    416.304.3769

Lawyers for Wells Fargo Bank, National Association, as successor by merger to Wachovia Bank, N.A., in its capacity as Servicer for the Nortel Networks Pass-Through Trust, Series 1-1

AND TO:

**DAVID STEER**
10 Cypress Court
Nepean, ON  K2H 8Z8

E-mail:  davidsteer127@sympatico.ca

AND TO:
**FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario M5J 2Z9

Jeffrey K. Spiegelman

Email: jspiegelman@foglers.com

Tel:     416.864.9700
Fax:    416.941.8852

Lawyers for Apex Logistics Inc.


AND TO:
**TORYS LLP**
79 Wellington St. W., Suite 3000
Toronto-Dominion Centre
Toronto, Ontario M5K 1N2

Michael Rotsztain
Adam M. Slavens

Email:  mrotsztain@torys.com
Tel:     416.865.7508
Fax:    416.865.7380

Email:  aslavens@torys.com
Tel:     416.865.7333
Fax:    416.865.7380

Lawyers for Ranger, Inc.


AND TO:
**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta T2P 4H2

Andrew Robertson

Email :
andrew.robertson@macleoddixon.com

Tel :    403.267.8222
Fax :   403.264.5973

Lawyers for Recently Severed Calgary
Employees


AND TO:
**TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, Ontario M5K 1N2

Tony DeMarinis
Scott Bomhof
Sheila Block
Andrew Gray

Email:  tdemarinis@torys.com
          sbomhof@torys.com
          sblock@torys.com
          agray@torys.com
Tel:     416.865.0040
Fax:    416.865.8730

Lawyers for Nortel Networks Inc.


AND TO:
**TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email:  hvw@tmlegal.ca
          rbm@tmlegal.ca

Tel:     613.542.1889
Fax:    613.542.8202

Lawyers for The Corporation of the City of
Belleville


AND TO:
**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Brett Harrison

Email:  brett.harrison@mcmillan.ca
Tel :    416.865.7932
Fax :   416.865.7048

Lawyers for Rogers Communications Inc.

AND
TO:

**ATTORNEY GENERAL FOR ONTARIO**
Crown Law Office – Civil
720 Bay Street, 8th Floor
Toronto, Ontario  M7A 2S9

Leonard Marsello
William MacLarkey

Email:   leonard.marsello@ontario.ca
Tel:      416.326.4939
Fax:     416.326.4181

Email:   William.MacLarkey@ontario.ca
Tel:      416.326.4082
Fax:     416.326.4181

Lawyers for Her Majesty the Queen in right
of Ontario, as represented by the Ministry of
the Environment

AND
TO:

**TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario  K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email:   hvw@tmlegal.ca
             rbm@tmlegal.ca

Tel:      613.542.1889
Fax:     613.542.8202

Lawyers for Algonquin and Lakeshore
Catholic District School Board

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Steven J. Weisz
Jackie Moher

Email:   steven.weisz@blakes.com
Tel:      416.863.2616
Fax:     416.863.2653

Email:   jackie.moher@blakes.com
Tel:      416.863.3174
Fax:     416.863.2653

Lawyers for the American Registry for Internet
Numbers

AND
TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Andrew J. F. Kent
Wael Rostom

Email:   andrew.kent@mcmillan.ca
Tel :     416.865.7160
Fax :    416.865.7048

Email:   wael.rostom@mcmillan.ca
Tel :     416.865.7790
Fax :    416.865.7048

Lawyers for the Norpax LLC and RPX
Corporation, in its capacity as Managing
Member of Norpax LLC

**COURTESY COPIES:**

AND TO:
**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email: sbrown@lrlaw.com

Tel: 602.262.5321
Fax: 602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND TO:
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036

Fred S. Hodara

Email: fhodara@akingump.com

Tel: 212.872.1000
Fax: 212.872.1002

U.S. Lawyers for the Official Committee
of Unsecured Creditors

AND TO:
**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail: sreisman@curtis.com
        jdrew@curtis.com

Tel: 212.696.6000
Fax: 212-697-1559

Lawyers for Flextronics International

AND TO:
**MILBANK, TWEED, HADLEY McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email: DDunne@milbank.com
Tel: 212.530.5770
Fax: 212.530.5219

Email: ALeblanc@milbank.com
Tel: 212.835.7574
Fax: 212.530.5219

Email: APisa@milbank.com
Tel: 212.530.5319
Fax: 212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

AND
TO:

**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York  10019

Michael L. Schein

Email:  mschein@vedderprice.com

Tel:    212.407.6920
Fax:    212.407.7799

U.S. Lawyers for Telmar Network
Technology, Inc. and Precision
Communication Services, Inc.

AND
TO:

**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :
andrew.robertson@macleoddixon.com
caylee.rieger@macleoddixon.com

Tel :    403.267.8222
Fax :    403.264.5973

Agent for Nelligan O'Brien Payne LLP,
lawyers for the Steering Committee of
Recently Severed Canadian Nortel
Employees and lawyers for the Steering
Committee of Nortel Canadian Continuing
Employees – Post CCAA as at January 14,
2009

AND
TO:

**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois  60601

Eric S. Prezant

Email:   eric.prezant@bryancave.com
Tel:     312.602.5033
Fax:     312.602.5050

U.S. Lawyers for Tellabs, Inc.

AND
TO:

**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4834

Michael J. Riela

Email: michael.riela@lw.com

Tel :    212.906.1373
Fax :    212.751.4864

U.S. Lawyers for The Bank of New York
Mellon

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

Applicants

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Toronto

**NOTICE OF MOTION**
**(RETURNABLE JUNE 7, 2011)**

Norton Rose OR LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, Ontario M5J 2Z4
CANADA

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jennifer.stam@nortonrose.com
Fax: (416) 216-3930

Lawyers for the Applicants

# TAB 2

Court File No: 09-CL-7950

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AFFIDAVIT OF CATHERINE MA

I, Catherine Ma, of the Town of Markham, in the Province of Ontario, **MAKE OATH AND SAY**:

1.     I am a Law Clerk with the law firm of Norton Rose OR LLP, lawyers for Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, "Nortel Canada"), and as such, have knowledge of the matters herein disposed to. I swear this affidavit in support of Nortel Canada's motion returnable June 7, 2011.

2.     Attached hereto as Exhibit "A" is the U.S. Debtors'[1] Motion for Protective Order Limiting Discovery Requests Propounded by SNMP Research International, Inc., dated April

---

[1] Nortel Network Inc, Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel

1, 2011, (U.S. Debtors' Motion"), which contains and refers to evidence and argument of the U.S. Debtors that has been filed in the United States Bankruptcy Court for the District of Delaware (the "U.S. Bankruptcy Court").

3.      Attached hereto as Exhibit "B" is the Creditor SNMP Research International, Inc.'s First Set of Interrogatories and Requests for Production of Documents Directed to the U.S. Debtors, dated March 1, 2011, which was filed in the U.S. Bankruptcy Court.

4.      Attached hereto as Exhibit "C" is the Monitor's (I) Statement in Support of the U.S. Debtors' Motion for Protective Order Limiting Discovery Requests Propounded by SNMP Research International, Inc., and (II) Request for Join Hearing on Such Motion, dated April 1, 2011, which was filed in the U.S. Bankruptcy Court.

SWORN BEFORE ME at the
City of Toronto, on June 1, 2011

_____
Commissioner for Taking Affidavits
   IAGMA  SWMM

_____
Catherine Ma

_____

Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc. are collectively the "U.S. Debtors".

# TAB A

This is Exhibit ___"A"___ referred to
in the affidavit of _CATHERINE MA_

sworn before me, this ___/___

day of ___June___, 20 _11_

VASUDA SINHA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------X

In re

Nortel Networks Inc., et al.,[1]

          Debtors.

-----------------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

Hearing Date: May 24, 2011 at 9:30 a.m. (ET)
Objections Due: May 17, 2011 at 4:00 p.m. (ET)

### DEBTORS' MOTION FOR PROTECTIVE ORDER LIMITING DISCOVERY
### REQUESTS PROPOUNDED BY SNMP RESEARCH INTERNATIONAL, INC.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as Exhibit A, pursuant to Rules 7026(c) and

9014(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 7026-

1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the District of Delaware (the "Local Rules") limiting the discovery sought by SNMP

Research International, Inc. ("SNMP RI") in Creditor SNMP Research International, Inc's First

Set of Interrogatories and Requests for Production of Documents Directed to the Debtors (the

"Demands")[2]; and granting them such other and further relief as the Court deems just and proper.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax
identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620),
Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma
Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications
Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks
HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc.
(0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and
Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions,
which are available at http://dm.epiq11.com/nortel.

[2]     See Notice of Service of Discovery of Creditor SNMP Research International, Inc.'s First Set of
Interrogatories and Requests for Production of Documents Directed to the Debtors [D.I. 5040]. A true

In support of this Motion, the Debtors rely on the Declaration of Steven Kenkel submitted in connection with this Motion (the "Kenkel Declaration" or "Kenkel Decl."), and further respectfully represent as follows:

## PRELIMINARY STATEMENT

During these bankruptcy proceedings, SNMP RI objected to nearly every sale of the Debtors' business lines on the basis that SNMP RI did not have information as to whether its software would be conveyed through the sales. The Court rejected SNMP RI's argument that it was entitled to an audit or had any other basis for holding up the sales.

Having lost at the sale hearings, SNMP RI now seeks to use the claims objection process to get the discovery it was denied – an audit of all of the Debtors' sold business lines – as well as access to all of the software source code of global Nortel that was ever used in a released product or otherwise made available to third parties over the past 11 years. But SNMP RI's Amended Claim is for to the unreported and unpaid royalties and other fees arising from the Debtors' use of a piece of SNMP RI's software in one business line pursuant to an unsigned license. The Federal Rules of Civil Procedure do not permit the type of boundless fishing expedition, regarding issues beyond to SNMP RI's Amended Claim, on which SNMP RI plainly seeks to embark here.

Not only do SNMP RI's discovery requests extend well beyond its Amended Claim, but they are also grossly burdensome. Prior to the service of SNMP RI's Demands, the Debtors consensually undertook an audit of the one business line, the Passport business, the sale of which had not yet closed or personnel been hired away or laid off. That audit, which revealed that there had been no unlicensed use of any SNMP RI software by the Debtors, took approximately 500 to

and correct copy of the Demands is attached as Exhibit A to the Certification of Jane Kim, dated April 1, 2011 (the "Kim Cert.") which is being filed concurrently herewith.

600 hours of work by about ten individuals. The discovery that SNMP RI requires of the Debtors here would require personnel with expertise and knowledge of the Debtors' businesses – personnel who no longer work for the Debtors following the completion of the sales of the Debtors' business lines – and dwarf the time spent to conduct the Passport audit by many multiples.

Finally, SNMP RI does not simply ask for the Debtors to conduct an audit, but SNMP RI also seeks to perform its own audit of all of Nortel's software based on a collection of data the Debtors are to provide. To do so would require the Debtors to search through the Nortel software repository in a manner far more invasive and time-consuming than even the business line audits described above. Moreover, SNMP RI would then have the Debtors give it access to all of its source code extracted in this manner – an unprecedented level of access to highly confidential trade secrets that the Debtors have worked hard to protect. SNMP RI's discovery requests are beyond the realm of anything permitted under the Federal Rules of Civil Procedure, and the Debtors respectfully request that they be stricken.

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are Rule(s) 7026(c) and 9014(e) of the Bankruptcy Rules and Rule 7026-1 of the Local Rules.

## BACKGROUND

3. On December 23, 1999, SNMP RI and the Debtors' ultimate corporate parent, Nortel Networks Corporation ("NNC"), entered into a licensing agreement (the "Agreement") under which SNMP RI granted NNC, and certain of its subsidiaries, including NNI (all together

3

with NNC, "Nortel"), the right to use certain software, including source code and binary code (the "SNMP RI Software"), in products produced by Nortel. NNI and each of the subsidiaries listed in Attachment 1 to the Agreement were able to issue purchase orders under Schedule A of the Agreement and receive access to the SNMP RI Software.

4.    On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[3] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and the cases were consolidated for procedural purposes only. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the U.S. Debtors [D.I.s 141, 142]. Also on the Petition Date, NNC and NNI's direct corporate parent, Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced proceedings under the Companies' Creditors Arrangement Act (Canada) (the "CCAA").

5.    On September 29, 2009, SNMP RI filed fifteen proofs of claim (the "Original Claims") against the Debtors, all of which were identical.[5] Each of the Original Claims asserted general unsecured claims totaling $22,281, plus an unliquidated amount for unpaid license royalties. Specifically, each of the Claims consisted of $11,781 of unpaid royalties, $10,500 of yearly software maintenance fees and unspecified additional amounts associated with royalties allegedly not reported.

---

[3]    Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[4]    The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]    See Proofs of Claim Nos. 4624-4638. SNMP also filed six identical proofs of claim against the Canadian Debtors (the "Canadian Claims").

6.      On July 9, 2010, the Debtors filed their 12th Omnibus Claims Objection (the "Objection") [D.I. 3507]. In the Objection, the Debtors sought to (i) reduce and allow SNMP RI Claim No. 4625 filed against NNI from $22,281 to $11,781; (ii) disallow the remaining claim for maintenance fees in Claim No. 4625 as duplicative of the Canadian Claims; and (iii) disallow and expunge the other fourteen proofs of claim[6] filed by SNMP RI against the other Debtors on the basis that they are duplicates of Claim No. 4625.

7.      On August 4, 2010, SNMP RI filed a response to the Objection (the "Response") [D.I. 3759]. The Response alleged for the first time that the Debtors had used SNMP RI software without a license in connection with the operation of the Carrier Voice Over IP and Communications Solutions business. Response ¶ 7. The Response requested, *inter alia*, a scheduling order "to allow SNMP to take [unspecified] discovery for the purpose of justifying his [sic] claim." Response ¶ 10. In an attempt to resolve SNMP RI's request for discovery, the Debtors entered into discussions with SNMP RI.

8.      In a good faith effort to resolve SNMP RI's request for discovery, the Debtors agreed to perform an audit (the "Passport Audit") of the only remaining business line in which a sale had not already closed and for which Nortel still had the necessary personnel to conduct such an audit: the Multi-Service Switch/Passport ("Passport") business. As described further in the Kenkel Declaration, the Passport Audit used certain broad search terms provided by SNMP RI and required the Debtors and other Nortel entities around the world to undertake several time-consuming steps, including: (1) compiling a list of all the source code databases (known as Versioned Object Bases or "VOBs") related to the various product lines in the Passport business; (2) developing precise and relevant search scripts to allow a computer program to crawl through the VOBs and find any of the search terms contained in the search scripts; and (3) reviewing and

---

[6]      Claim Nos. 4624 and 4626-4638.

5

interpreting the results of the search to determine whether the source code "hits" generated by the search belonged to the Debtors, to SNMP RI or to third parties. See Kenkel Decl. ¶ 10-13. After an estimated 500 to 600 hours of work by a total of approximately ten individuals, the Passport Audit was completed on December 22, 2010. See Kenkel Decl. ¶ 16. The results of the Passport Audit confirmed that all SNMP RI software used in the Passport business was used pursuant to valid licenses for which the Debtors paid royalties in connection with such use. See Kenkel Decl. ¶ 16.

9.      While the Passport Audit was in progress, on October 19, 2010, SNMP RI filed an amended proof of claim (the "Amended Claim")[7] for $1,517,038, consisting of $22,092 asserted in the Original Claims plus an additional $1,494,946 related to unpaid royalties, licensing and maintenance fees and late payment penalties associated with the alleged unauthorized use by the Debtors of a certain software product owned by SNMP RI, as well as "any and all additional amounts associated with licensing fees, royalties, and maintenance fees that have not been reported by the Debtors to date and are owed to SNMP." Amended Claim at ¶ 1.

10.      Discussions between the Debtors, the Canadian Debtors and SNMP RI regarding SNMP RI's request for discovery have been ongoing since the conclusion of the Passport Audit. In the course of those discussions, the Debtors were dismayed at the breadth of SNMP RI's requests. Specifically, SNMP RI demanded that the Debtors perform separate audits of each of the seven other businesses that have been sold in the Chapter 11 cases, in order to ascertain whether any SNMP RI software had been transferred to the purchasers. The Debtors informed SNMP RI that such an undertaking would be impossible, given the cost and the lack of available personnel with sufficient knowledge of the product lines in each business. Given the parties'

_____
[7]      See Proof of Claim No. 7471.

6

inability to reach agreement on a narrowed request, the Debtors and SNMP RI agreed to a form

of scheduling order [D.I. 4782], which the Court entered on February 1, 2011. SNMP RI

subsequently served the Demands pursuant to the Court scheduling order, consisting of five

interrogatories (each, an "Interrogatory") and four requests for documents (each, a "Request").

11.     Interrogatories Nos. 3 and 5, and Request Nos. 3 and 4 are subject to this motion.

As set forth below, these Demands are irrelevant to the Amended Claim and grossly

burdensome.

- Interrogatory No. 3 demands that the Debtors "Identify the Persons known to Nortel who have knowledge of the Nortel Software source code transferred or made available to each buyer in the Bankruptcy Sales."[8]

- Interrogatory No. 5 demands that the Debtors "Identify all Creditor Software used or distributed by Nortel that was transferred or made available to a buyer as a part of the Bankruptcy Sales and Identify the Nortel Software that required the use of or was distributed with such Creditor Software."

- Request No. 3 demands "all Documents, including but not limited to any Documents or Communications that list or discuss any Creditor Software imbedded in, used in the development of, or distributed with Nortel Software that was transferred or made available in the Bankruptcy Sales."

- Request No. 4 demands that the Debtor "provide Creditor access to all Nortel Software, on a computer or computers of Nortel's choosing in source code format as extracted from the Nortel source code repository, that is or was shipped to customers or otherwise made available to customers, potential customers of Nortel, or other third parties, including but not limited to as a direct or indirect result of the Bankruptcy Sales, during the Relevant Period. Creditor's access to the Nortel source code must allow Creditor to run specific scripts that search the Nortel source code for the presence of Creditor Software."

---

[8]     "Bankruptcy Sales" means the sale of Nortel business line assets to (1) Radware Ltd. pursuant to a March 26, 2009 sale order [D.I. 539]; (2) Telefonaktiebolaget L M Ericsson (publ) pursuant to a July 28, 2009 sale order [D.I. 1205]; (3) Avaya Inc. pursuant to a September 16, 2009 sale order [D.I. 1514]; (4) Hitachi, Ltd. pursuant to an October 28, 2009 sale order [D.I. 1760]; (5) Telefonaktiebolaget L M Ericsson (publ) and Kapsch Carriercom AG pursuant to a December 2, 2009 sale order [D.I. 2065]; (6) Ciena Corp. pursuant to a December 3, 2009 sale order [D.I. 2070]; (7) GENBAND Corp. pursuant to a March 3, 2010 sale order [D.I. 2632]; and (8) Telefonaktiebolaget L M Ericsson (publ) pursuant to a September 30, 2010 sale order [D.I. 4054].

12.    Furthering the vast scope of the Demands, SNMP RI defines the relevant period
of time related to the Demands as December 1, 1999 to the present, a stretch of over eleven
years.  Similarly broad is SNMP RI's definition of "Nortel," which includes "Nortel Networks
Inc. and any affiliate, subsidiary, member, officer, principal, employee, representative, or agent
of Nortel as well as any person or any entity acting on behalf of Nortel."

13.    Concurrently with the filing of this Motion, the Debtors served on SNMP RI
objections and responses to the Demands (the "Objections and Responses").  The Debtors have
responded to the Interrogatories, to the extent not objectionable, and will produce documents in
response to the Requests to the extent not objectionable.  The parties engaged in a telephonic
meet and confer on March 30, 2011, but were unable to resolve the Debtors' objections to
Interrogatories 3 and 5 and Requests 3 and 4.  See Kim Cert. ¶ 3.  A copy of the Objections and
Responses is attached to the Kim Cert. as Exhibit B.

## RELIEF REQUESTED

14.    The Debtors request a protective order striking Interrogatories Nos. 3 and 5 and
Requests Nos. 3 and 4 in their entirety.  The Debtors reserve the right to request further relief
from this Court in the event that disputes arise from the Objections and Responses.

15.    The Debtors understand that the Canadian Debtors and the Monitor for the
Canadian Debtors will be filing a request for a joint hearing before the Ontario Superior Court of
Justice (Commercial List) and this Court to consider this Motion.  The Debtors agree that a joint
hearing is appropriate under the Cross-Border Insolvency Protocol approved by the Court on
June 29, 2009 (D.I. 990) and support the request for a joint hearing on this Motion.

8

## ARGUMENT

### A PROTECTIVE ORDER SHOULD BE ENTERED TO STRIKE
### INTERROGATORIES NOS. 3 AND 5 AND REQUESTS NOS. 3 AND 4

16.    The Amended Claim asserts claims for $1,500,000, all but $22,000 of which

refers to unpaid licensing fees, royalties and maintenance fees relating to one piece of software.

As described further below, the Demands include broad discovery requests far beyond what is

relevant to the Amended Claim.  In particular, the Demands seek broad discovery regarding

software transfers pursuant to Court-ordered sales that have no bearing on the claims alleged in

the Amended Claim.

### I.    Interrogatories Nos. 3 and 5 and Request Nos. 3 and 4 Should Be Stricken As Wholly Irrelevant to the Amended Claim

#### A.    Interrogatories Nos. 3 and 5 and Request No. 3 Improperly Seek Details Regarding the Bankruptcy Sales

17.    The Amended Claim asserts a claim for unpaid, reported royalties and

maintenance fees outstanding of $22,281 at the time of the filing, plus a claim for $1,494,946 for

alleged unreported royalties and fees relating to one piece of software used by the Debtors in

connection with one business line.[9]  The latter claim for unreported royalties and fees appears to

serve as the basis for SNMP RI's all-inclusive Demands.  But the claim for alleged unreported

royalties and fees does not support the vast scope of the discovery sought regarding all the

software of global Nortel and the Bankruptcy Sales.  SNMP RI apparently provided the Debtors

---

[9] Specifically, the Amended Claim states the following: "SNMP Research International, Inc. ('SNMLP') asserts this general unsecured claim against each debtor in the Nortel Networks Inc. cases (collectively, the 'Debtors') in the amount of $1,517,038, which consists of the following: (i) an amount of $1,494,946 due to licensing fees, royalties, and maintenance fees associated with the unauthorized and illegal usage by the Debtors of EMANATE®/Lite with EPIC . . .; (ii) an amount of $22,092 previously asserted in SNMP's original proof of claim derived from unpaid royalties from the fourth quarter of 2008 through the portion of the first quarter of 2009 prior to the Debtors' filing for bankruptcy protection, along with yearly software maintenance fees; and (iii) any and all additional amounts associated with licensing fees, royalties, and maintenance fees that have not been reported by the Debtors to date and are owed to SNMP." Proof of Claim No. 7471.

with Emanate Lite software pursuant to a license agreement that was never signed between the parties. In good faith and in reliance on the parties' mutual mistake, the Debtors used the Emanate Lite software on no more than 3,475 cards in the MG9000 system in the Carrier Voice IP and Applications Solutions business line from 2002 to 2008. In total, the Debtors believe that the royalties due as a result of the sale of the 3,475 cards would be approximately $10,425. See Objections and Responses, Interrogatory 4.

18.     Interrogatories Nos. 3 and 5 and Request No. 3 (collectively the "Sale Audit Demands") seek information wholly unrelated to this software or its use, and instead seek information about SNMP RI software and the software of global Nortel transferred or made available to the buyers in the Bankruptcy Sales, which is not the subject of any claims asserted in the Amended Claim. The requests are not relevant to the Amended Claim, and SNMP RI, thus, cannot justify any entitlement to discovery on such requests, much less the grossly overbroad and burdensome requests that it has made here. See, e.g., Iseley v. Talaber, No. 1: CV-05-0444, 2007 U.S. Dist. LEXIS 76891, at *7 (M.D. Pa. Sept. 28, 2007) (finding that "documents sought are not relevant or likely to lead to the discovery of admissible evidence" where subject matter of documents sought was not at issue in action).

19.     Under Fed. R. Civ. Pro. 26(b)(1), parties are only entitled to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The discovery of information and material that is relevant only to the broader subject matter of the action may be ordered by the court only upon a showing of good cause by the requesting party. Id. The current structure of Rule 26(b)(1) is the result of an amendment in 2000, which narrowed the scope of discovery. Prior to 2000, parties were entitled to discover nonprivileged matters relevant to the subject matter of the action without a court order for good cause shown.

10

"The rule change signal[ed] to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Advisory Committee Note to 2000 Amendment, FRCP 26(b)(1).

20.     In fact, rather than being relevant to the Amended Claim, the Sale Audit Demands are clear attempts by SNMP RI to re-tread the same arguments it raised in its objections to nearly every Bankruptcy Sale and which were already squarely rejected by this Court at the Passport sale hearing. There, SNMP argued that the Debtors should be required to perform an audit and determine whether any of SNMP RI's software was transferred to the purchasers as part of the Bankruptcy Sales. See Passport Sale Objection, attached to the Kim Cert. as Exhibit C. At the Passport sale hearing, the Court refused SNMP RI's request to require the Debtors to perform an audit of the business line being sold or to require the inclusion of language in the sale order disclaiming the transferring of SNMP RI software. See Excerpt of September 30, 2010 Hearing Transcript, attached as Exhibit D to the Kim Cert.[10] Its sale objections having been denied,

_____

[10]     Prior to the Court finding that no audit or disclaimer language was required, the Court and counsel for the Debtors had the following exchange:

MR. BROMLEY [for the Debtors]: When I look at the objection it says SNMP RI requests that the debtors perform an audit as a condition of the sale to determine if SNMP RI intellectual property will be transferred to the purchaser as part of the sale.
. . .
So what we're saying is that we have a license to use this intellectual property it relates to the business. We have told Mr. Ralston now that two of the licenses do relate to this business. We have told Ericsson, as the purchaser, that these two licenses relate to the business, along with others that are on that list, and that they need to deal with it, all right. So it would seem to me --
THE COURT: That you're not assigning those licenses.
MR. BROMLEY: I'm not assigning those licenses.
. . .
So post-closing, Ericsson will not have a right to use those licenses . . . . So what Ericsson and what SNMP need to do is to go in and actually work on getting a new agreement, all right. And if Ericsson uses SNMP intellectual property after the closing and they're not allowed to, Ericsson is not supposed to do that, and they would have a claim against Ericsson.
THE COURT: Correct.

11

SNMP RI now uses its Amended Claim as a pretext by which to get the same discovery the

Court refused to give it in the context of the Passport sale, even though the Amended Claim has

nothing to do with the transfer of software through the Bankruptcy Sales. Such irrelevant

requests are invalid under Rule 26(b)(1), justifying the protective relief sought here.

**B.    Request No. 4 Improperly Seeks a Premises Inspection for Transfers of Software**

21.    Request No. 4, which seeks that the Debtors provide SNMP RI "access to all

Nortel Software . . . that is or was shipped to customers or otherwise made available to

customers, potential customers of Nortel, or other third parties," should also be stricken because

it goes far beyond the Amended Claim.  SNMP RI seeks physical access to the global Nortel

software repository by requiring the Debtors to provide access to a specially created database so

that SNMP can inspect and survey all of the Nortel source code shipped or otherwise made

available to customers and potential customers of Nortel or other third parties.  But SNMP RI

cannot justify Request No. 4 as either a premises inspection under Rule 34(a)(2) or a document

demand.  In either case, the Demand is controlled by Fed. R. Civ. Pro. 26(b).  See Fed. R. Civ.

Pro. 34(a)(2).  As explained above, Rule 26(b) limits discovery to matters that are relevant to a

party's claims.  See Fed. R. Civ. Pro. 26(b)(1).  Courts decline to allow a premises inspection

when the inspection is irrelevant to any party's claims in the action.  See, e.g., Ehrlich v. Inc.

Vill. of Sea Cliff, CV 04-4025 (LDW) (AKT), 2007 U.S. Dist. LEXIS 39824, at *19-21

(E.D.N.Y. May 31, 2007) (denying plaintiff's request to inspect a property where the property

was not "similarly situated" and thus irrelevant to plaintiff's equal protection claim); see also

---

MR. BROMLEY: Not against us.
THE COURT: Correct.
Id. at 56:8-13, 56:18-57:3, 57:5-6, 57:21-58:3.

12

Iseley, 2007 U.S. Dist. LEXIS 76891, at *7 (holding document request to be irrelevant to claims asserted).

22.    Request No. 4 seeks access to all of global Nortel's software source code shipped or otherwise made available to customers and potential customers of Nortel. The Amended Claim asserts a liquidated claim of $1.49 million for unreported and unpaid licensing fees, royalties and maintenance fees relating to one piece of SNMP RI's software and an unliquidated claim of an unspecified amount with an unspecified basis. But the filing of a conclusory, unliquidated claim does not provide carte blanche to take discovery to determine whether such a claim can be justified. Request No. 4 goes far beyond SNMP's claim that the Debtors failed to pay the necessary royalties, as actually asserted in the Amended Claim, and is instead an inquiry into every piece of Nortel software that was ever used in a product that was made available to customers over the past 11 years. Such a fishing expedition is simply not permitted by Rule 26. See, e.g., Ethypharm S.A. France v. Abbott Labs., No. 08-126-SLR-MPT, 2010 U.S. Dist. LEXIS 116156, at *17 (D. Del. Nov. 2, 2010) (where action was brought with respect to the prosecution of two patents, permitting discovery regarding an unrelated third patent "would authorize a fishing expedition beyond that which is nominally permitted by the Federal Rules").

## II.    Interrogatories Nos. 3 and 5 and Requests Nos. 3 and 4 Should Be Stricken As Unduly Burdensome

23.    In addition to their irrelevance to the Amended Claim, the Sale Audit Demands and Request No. 4 are each grossly burdensome. Request No. 4 is uniquely burdensome as it requires the Debtors to provide complete, unfettered and unprecedented physical access to the software of global Nortel.

24.    The court must limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in

13

controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. Pro. 26(b)(2)(C)(iii). Where a discovery request imposes "undue burden or expense" and the non-requesting party can show good cause, the court can issue a protective order to prevent the discovery. Fed. R. Civ. Pro. 26(c)(1)(A). Good cause for a protective order is established when the moving party "demonstrate[s] a particular need for protection" by articulating the significant harm it will face in the absence of such an order. See Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986).

25.     As set forth above, the Demands go far beyond the bounds of relevance to the Amended Claim. The Demands are not only irrelevant, however, but also would be grossly burdensome if not impossible for the Debtors to fulfill.

### A.     The Sale Audit Demands improperly require the Debtors to undertake a grossly burdensome and unreasonable audit of their software

26.     The Sale Audit Demands seek to require the Debtors to conduct a broad internal investigation and audit of complex software questions that go far beyond the Amended Claim. Even assuming that SNMP RI could satisfy the threshold question of relevance – which it cannot – the software audit that it seeks through these Demands plainly exceeds the boundaries of reasonableness given the burden imposed on the Debtors.

27.     Interrogatory No. 5 demands the identification of "all [SNMP RI] Software used or distributed by Nortel that was transferred or made available to a buyer as a part of the Bankruptcy Sales." Request No. 3 similarly demands all documents that list or discuss any such software. Interrogatory No. 3 demands that the Debtors identify all Persons who have knowledge of, not just SNMP RI's software, but all Nortel software transferred or made available to the purchasers in the Bankruptcy Sales. Together, these Demands would require an

14

audit of all of the software source code related to the business lines sold by the Debtors through the Bankruptcy Sales and of all people who had any involvement with the software in connection with those sales.

28.     Conducting an audit of all of the code related to the sold businesses (much less the people involved in the sales) would be impossible to perform and unduly burdensome to attempt. The Debtors would face a significant depletion of their already limited resources if they were required to spend the time and expense even to try to conduct such an audit. This depletion would be especially harmful considering the Debtors' ongoing attempt to wind down and would come at the cost of other creditors. This burden is especially objectionable since SNMP RI is in the best position to determine if they provided software to the Debtors and then failed to receive any royalties from the Debtors.

29.     The excessive burden caused by the Passport Audit proves this point. In an effort to resolve SNMP RI's concerns, the Debtors conducted an audit of the Passport Business because it was the only sale that had not closed at the time SNMP RI requested discovery in its Response and, thus, was the only business for which Nortel still had the necessary personnel to conduct such an audit. Because the other business sales have closed and personnel with technical expertise and knowledge of the relevant Nortel products are no longer at Nortel, SNMP RI's requested audits of the closed sales cannot be performed. See Kenkel Decl. ¶ 18. Moreover, even if the necessary personnel were available, the time and resources required to perform such an audit would be so great as to be prohibitive. See Kenkel Decl. ¶ 19.

30.     As further described in the Kenkel Declaration , ClearCase is a Software Configuration Management system that houses "every version (including both test and release versions of products) of every element related to a software project as it evolves over time."

15

Kenkel Decl. ¶ 4. It contains over 3,700 databases of software source code. Kenkel Decl. ¶ 6. Those databases, collectively, hold "millions of files, each with multiple versions, and many millions of lines of source code." Kenkel Decl. ¶ 6. Conducting an audit of each sold business line would require the Debtors to conduct a detailed search of this repository using the very few (if any) employees with the expertise to search through and evaluate the information in the ClearCase repository.

31.    As further detailed in the Kenkel Declaration, the Passport Audit alone required approximately 500-600 person hours to perform a search of approximately eighteen gigabytes of code. See Kenkel Decl. ¶ 16. A search of all of the seven other business lines sold through the Bankruptcy Sales would entail searching approximately eight terabytes of code. See Kenkel Decl. ¶ 6. If the search time is related to the amount of data searched, then based on the amount of time spent on the Passport Audit, an audit of all the businesses would require as many as 200,000 person hours. Kenkel Decl. ¶ 19.

> **B.    Request No. 4 improperly requires the Debtors to create a special database of software to run their own audit and allow SNMP to view confidential trade secrets**

32.    Not satisfied with requiring the Debtors to perform an audit, SNMP RI seeks to conduct their own audit of all of Nortel's software source code. SNMP RI does not seek documents in Request No. 4. Rather, it seeks to require the Debtors to comb through all of the software in Nortel's ClearCase repository from December 1999 to the present. After reviewing over 11 years of software use for all the different business lines, SNMP RI would then have the Debtors place massive quantities of the software source code in a database that would need to be created specifically to answer Request No. 4. Any such database necessarily would be filled

with confidential and proprietary property. This unprecedented demand is grossly burdensome and intrusive and improper on its face.

    33.    To respond to Request No. 4, the Debtors would first have to comb through the entire ClearCase software repository to identify which source code related to released products. See Kenkel Decl. ¶ 22. The Debtors would then need to manually investigate whether each of the lines of code had ever actually been shipped or otherwise made available to customers, potential customers or other third parties. See Kenkel Decl. ¶ 22. The Debtors cannot even begin to estimate the massive cost and hours required to respond to SNMP RI's demand, but certainly it would be many times that which was required for the Passport Audit. See Kenkel Decl. ¶ 22.

    34.    Beyond the tremendous drain on the Debtors' financial and human resources, responding to Request No. 4 would require the Debtors to have the appropriate personnel available to conduct such an investigation. To accurately determine which of the lines of source code in the ClearCase databases were made available to customers, potential customers or other third parties, a reviewer would need to have multiple training classes in the use of ClearCase, as well as possess "detailed knowledge of Nortel's software development process." Kenkel Decl. ¶ 8-9. As mentioned above, the Debtors have completed the sales of all of the individual business lines and lack employees who have the requisite training and knowledge to carry out the investigation required by Request No. 4. Accordingly, it is not possible for the Debtors to respond to Request 4.

    35.    Even if the Debtors were able to identify the relevant source code and create a special database to house it, such a request would require the Debtors to expose highly confidential trade secrets. The Federal Rules specifically contemplate protecting the disclosure

17

49

of trade secrets in the discovery process. Under Fed. R. Civ. Pro. 26(c)(1)(G), upon a showing of good cause, the court can issue a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed." A protective order is appropriate where the value and secrecy of source code outweighs the need for its disclosure. See Viacom Int'l Inc. v. YouTube Inc., 253 F.R.D. 256, 260-61 (S.D.N.Y. 2008) (finding that a protective order was needed where the plaintiff sought access to the defendants' source code to "allay [its] speculation'" that the defendants' search software was identifying and promoting copyright infringing video clips on their website).

36.     That Nortel's software source code constitutes trade secrets, the disclosure of which would cause harm, is without question. Indeed, the Debtors have always gone to great lengths to protect this source code, including throughout these bankruptcy proceedings. In fact, the access to the Nortel computer systems and servers that the Nortel sellers provided to the purchasers of the business lines, who paid billions of dollars for these assets, is far more restrictive than the access that SNMP RI demands from the Debtors.

37.     For example, in every transition services agreement (each, a "TSA") entered into with the buyers, the Nortel sellers:

> (1) restricted access to only those representatives of the buyers "with a bona fide need to have such access in connection with the Services"[11];
>
> (2) required that the buyers "limit such access solely to the use of such systems for purposes of the Services and shall not access or attempt to access any other Party's computer systems, files, software or services other than those agreed to by

---

[11]     See, e.g., Excerpt of TSA, dated November 13, 2009, with Telefonaktiebolaget LM Ericsson (publ), attached to the Kim Cert. as Ex. E ("CDMA TSA"), at § 9(a). The other TSAs, attached in relevant excerpts to the Kim Cert., contain similar provisions to the CDMA TSA provisions cited in this section. "Services" is defined in each of the TSAs as those services that the sellers agree to provide the purchaser pursuant to the relevant TSA. See, e.g., CDMA TSA at § 2(a).

18

the Parties as being required for the Services, or those that are publicly available"[12];

(3) prohibited purchasers from "attempt[ing] to reverse engineer, disassemble, reverse translate, decompile or in any other manner decode any element of the Providers Information Systems, or mak[ing] copies of any element of the Providers Information Systems"[13]

(4) required that the purchasers maintain firewalls and "implement procedures to segregate all Seller information, data and communications" from those employees of the buyers who were not authorized to access the Nortel sellers' systems;[14] and

(5) to the extent third-party consents were required to use or access software licensed by the Nortel sellers from a third party, required that the buyers acquire any necessary licenses and indemnify and hold harmless the Nortel sellers and their affiliates "from any and all claims and liabilities (including legal fees and expenses) arising out of Purchaser's use of such third party software."[15]

38.   The Nortel sellers, including the Debtors, understood the importance of

preventing the disclosure of Nortel's software source code and appropriately set up highly

restrictive conditions to any access by the purchasers, even where such access was necessary for

the purchasers to transition the operation of their purchased business lines from Nortel. Thus,

the unfettered access to Nortel's software source code that SNMP demands is unprecedented,

grossly burdensome and highly inappropriate.

---

[12]   See, e.g., CDMA TSA at § 9(a).

[13]   See, e.g., id. at Ex. C, § 5.

[14]   See, e.g., id. at Ex. C, §§ 6(a), (b).

[15] See, e.g., id. at Ex. C § 8 ("Third-Party Technology: Purchaser acknowledges that access to the Permitted Systems may require that Purchaser have access to software licensed by the Providers from a third party. Purchaser acknowledges that third-party consents may be required in connection with the use or access to certain elements of the Permitted Systems and such use or access shall be conditional upon such consents being obtained by Purchaser ... Purchaser shall indemnify and hold harmless the Providers from any and all claims and liabilities (including legal fees and expenses) arising out of Purchaser's use of such third-party software. Additionally, Purchaser acknowledges that it may be required to acquire a license for certain third-party software in order to utilize certain elements for the Permitted Systems, or to carry out the Purpose, in which case Purchaser shall be responsible for acquiring such license, and for any fees associated therewith.").

19

### NOTICE

Notice of the Motion has been given via first class mail or hand delivery to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to SNMP; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

39.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and

the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.

Dated: April 1, 2011
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Ann C. Cordo
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

21

# TAB B

53

This is Exhibit ___"B"___ referred to
in the affidavit of **CATHERINE MA**
sworn before me, this ___|___
day of ___June___ , 20 _11_

VASUDA SINHA

54

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: | Chapter 11 |
| Nortel Networks Inc., *et al.* | Case No. 09-10138 (KG) |
| Debtors | |

### CREDITOR SNMP RESEARCH INTERNATIONAL, INC.'S FIRST
### SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
### DOCUMENTS DIRECTED TO THE DEBTORS

COMES now the Creditor, SNMP Research International, Inc., by and through counsel, and serves the following Interrogatories and Requests for Production of Documents on the Debtors pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure as incorporated by Rules 9014, 7026, 7033 and 7034 of the Federal Rules of Bankruptcy Procedure.

#### DEFINITIONS AND GENERAL INSTRUCTIONS

1.    For purposes of these discovery requests, the following words and phrases shall have the meaning ascribed to them as follows:

a.    **"Bankruptcy Sales"** means the sale of Nortel assets to (i) Radware Ltd. pursuant to a sale order dated  March 26, 2009, (ii) Telefonaktiebolaget LM Ericsson (Publ)  pursuant to a sale order dated July 28, 2009, (iii) Avaya Inc. pursuant to a sale order dated September 16, 2009, (iv) Hitachi, Ltd. pursuant to a sale order dated October 28, 2009, (v) Telefonaktiebolaget LM Ericsson (Publ) and Kapsch Carriercom AG pursuant to a sales order dated December 2, 2009, (vi) Ciena Corporation pursuant to a sales order dated December 3, 2009, (vii) GENBAND Inc. pursuant to a sales order dated March 4, 2010, and (viii) Telefonaktiebolaget LM Ericsson (Publ) pursuant to a sales order dated September 30, 2010.

1

55

b.  "**Communicate**" and "**Communication**" means every disclosure, transfer, or exchange of information in any manner, means, or medium, including but not limited to the following: by telephone, text, mail, personal delivery, facsimile, electronic mail, internet messaging, electronic transmission, face-to-face, or any other form of transmitting information, whether orally, electronically, or written;

c.  "**Creditor**" means SNMP Research International, Inc.

d.  "**Creditor Software**" means any software owned by Creditor or licensed to Creditor and any derivative works thereof, whether in binary or source form.  The definition of Creditor Software includes software developed through the use of Creditor Software.

e.  "**Date**" means the exact date requested, but if the exact date is not known and cannot be determined using due diligence, then it means the applicable time period as specifically as possible, i.e. month, season, year, or range of years;

f.  "**Describe**" when used in reference to

    i.  A relationship between two Persons means to explain how the Persons became affiliated, the nature of the affiliation (business associates, social acquaintances, etc), approximately how often the Persons communicated with each other, and the length of the affiliation;

    ii.  An event or occurrence means to explain the characteristics of the event or occurrence as they appeared to Nortel.

g.  "**Document**" or "**documents**" have the meaning ascribed to them in  Federal Rule of Civil Procedure 34 and include, without limitation, the original and any non-identical copies, regardless of origin or location, and regardless of whether it exists in hard print or electronic media, of any book, pamphlet, periodical, advertisement, catalog, letter,

2

opinion, report, form, electronic mail message, facsimile, telegram, cable, telex correspondence, report, record, notebook, writing, drawing, sketch, blueprint, manual, handwritten note, contract agreement, manuscript, minutes, intracorporate communication, bulletin, brochure, circular, instruction, memorandum, notice, working paper, diary, chart, paper, graph, laboratory record, computer printout, magnetic or optical media, work assignment, print tracing, survey, photograph, sound recording, image, phonorecord, microfilm, index, data sheet, data processing card, audio or video recording, or notes of or relating to any telephone or other conversation, or any other written, recorded, transcribed, filmed, or graphic material, however produced or reproduced, which is or has been in Nortel's possession, custody, or control or of which Nortel has knowledge;

h.      "Identify," "identity," "identifying," or "identification," when used in reference to a

   i.      Natural Person means to state the person's full name, employer, occupation, job title, and position, present or last known residence address and telephone number, present or last known business address and telephone number, and the Person's relation to Nortel;

   ii.     Person other than a Natural Person means to state the full name, type of entity, business address, telephone number, and name and telephone number of the agent(s), employee(s), or representative(s) who acted on behalf of the Person in connection with the event, instance, occurrence, or circumstance described or referred to in the discovery request;

   iii.    Document means to state the type of Document (e.g., letter, electronic mail, chart, etc.) and its title, date, time sent or received, author, addressee, subject

3

matter, present location, and custodian, whether any drafts preceded the final version of the Document, all known recipients of the Document and any drafts, and, if the Document was but is no longer in Nortel's possession, state what disposition was made of it and the facts or reasons for such disposition;

iv.     **Software** means to state the name and version number or version numbers of the Software, and where applicable the Nortel product on which such Software resides and the operating system and processor for the Nortel product.

i.      **"Nortel"** means the Debtor, Nortel Networks, Inc, and any affiliate, subsidiary, member, officer, principal, employee, representative, or agent of Nortel as well as any person or entity acting on behalf of Nortel;

j.      **"Person"** or **"persons"** means any natural person, firm, proprietorship, partnership, joint venture, corporation, association, or other business entity and all present and former officers, directors, agents, employees, and others acting for or purporting to act on behalf of such natural person, firm proprietorship, partnership, joint venture, corporation, association, or other business entity;

k.      **"Proof of Claim"** means the Amended Proof of Claim filed by SNMP Research International, Inc. dated October 19, 2010;

2.      **"Rule"** means the applicable Federal Rule of Civil Procedure.

3.      Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Information is relevant if it "appears reasonably calculated to lead to the discovery of admissible evidence."

4

4.      Rule 26(e) imposes a duty to supplement or correct a response to a discovery request under the following circumstances:

   i.      When a party learns that the disclosure or response is incomplete or incorrect in some material respect, "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing" or

   ii.     When an expert's report must be disclosed pursuant to Rule 26(a)(2)(B) and the information in the report or in the expert's deposition has changed in some respect by the time the party's Rule 26(a)(3) disclosures are due.

5.      If a party withholds information that is otherwise discoverable by asserting that the information is "privileged or subject to protection as trial preparation material," Rule 26(b)(5) requires that the party make the claim expressly and "describe the nature of the documents, communications, or things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

## INTERROGATORIES

### Instructions

1.      As required by Rule 33(b)(3), please answer each Interrogatory separately and fully in writing under oath, unless objected to.

2.      If Nortel objects to an Interrogatory, please answer as much of the Interrogatory as can be answered without objection and state with specificity the grounds for objection, as required by Rule 33(b)(3), (b)(4).

3.      Please serve a copy of the answers and objections, if any, to the Interrogatories within 30 days after the service of these Interrogatories, as required by Rule 33.

5

## INTERROGATORIES

1.    Please Identify all Persons answering these Interrogatories or requests for production of Documents and all Persons who assisted or provided information for such answers or Documents.

**RESPONSE:**


2.    Please Identify all Persons known to Nortel who have knowledge of the facts or allegations in the Proof of Claim.

**RESPONSE:**


3.    Please Identify the Persons known to Nortel who have knowledge of the Nortel Software source code transferred or made available to each buyer in the Bankruptcy Sales, at the time the Bankruptcy Sale closed, categorized by each buyer;

**RESPONSE:**


4.    Please Identify all Creditor Software used or distributed by Nortel without a license from Creditor authorizing such use or distribution from December 1, 1999 to the present. In addition to the

6

Identification of the Creditor Software, Identify the (i) dates on which such use or distribution started and ended, (ii) Nortel Software that required the use of, or was distributed with the Creditor Software, (iii) each calendar quarter in which such Creditor Software was used or distributed, and (iv) amounts of such Creditor Software distributed by Nortel;

**RESPONSE:**

5.    Please Identify all Creditor Software used or distributed by Nortel that was transferred or made available to a buyer as a part of the Bankruptcy Sales and Identify the Nortel Software that required the use of or was distributed with such Creditor Software.

**RESPONSE:**

61

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### Instructions

1.      Unless otherwise indicated, the date range applicable for all Requests for Production of Documents is from December 1, 1999 to the present. (the "Relevant Period")

2.      With respect to each Document or thing that is responsive to any Request for Production of Documents, please state whether Nortel will produce the Documents or things requested or its objection to the Request, as required by Rule 34.

3.      If Nortel is unable to completely answer a Request, please respond as fully as possible and then state a reason or reasons why Nortel cannot make a complete response.

4.      If Nortel objects to any of these Requests, please state the reasons for the objection, as required by Rule 34.

5.      If any Document or thing that is responsive to any Request for Production of Documents has been lost or destroyed, please identify the Document or thing, state the Request to which it would otherwise be responsive, and state, in detail, the circumstances of the loss or destruction of the document or thing.

6.      If any Document or thing that is responsive to any Request for Production of Documents is within Nortel's control but is not within Nortel's possession or custody, please Identify the Person who has possession or custody of the Document or thing.

7.      If any Document or thing that is responsive to any Request for Production of Documents was within Nortel's possession, custody, or control, but is not longer within Nortel's possession, custody or control, please state the disposition of the Document or thing, the Date or date range on or in which the disposition occurred, the reason or reasons for the disposition, and the Person who disposed of the Document or thing.

8

8.      These Requests for Production of Documents are not seeking the production of any Document or information protected by the attorney-client privilege, or trial preparation materials covered by Rule 26(b)(3). If Nortel claims that a privilege or protection prevents it from producing a Document, please state (1) the privilege or protection claimed, (2) the Documents or information protected by the privilege or protection, and (3) the basis for asserting the privilege or protection, as required by Rule 26(b)(5).

9.      Please serve upon Creditor a written response to these Requests for Production of Documents within 30 days after service of the Requests, as required by Rule 34(b)(2)(A).

10.     These Requests for Production of Documents shall be deemed continuing, and supplemental answers or responsive Documents shall be produced as required by Rule 26(e) if further responsive information is obtained subsequent to the time the responses are served.

### REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      **Request No. 1:** Please produce all Documents, including but not limited to, Nortel's internal notes, email Communications, or other written Communications, containing any information relating to the Proof of Claim.

**RESPONSE:**

2.      **Request No. 2:** Please produce all Documents, including but not limited to, Nortel's internal notes, email Communications, or other written Communications, containing any information relating to the use or distribution of Creditor Software in any manner by Nortel without a license authorizing such use or distribution during the Relevant Period.

**RESPONSE:**

3.      **Request No. 3:** Please produce all Documents, including but not limited to any Documents or Communications that list or discuss any Creditor Software imbedded in, used in the development of, or distributed with Nortel Software that was transferred or made available in the Bankruptcy Sales.

**RESPONSE:**

4.      **Request No. 4:** Please provide Creditor access to all Nortel Software, on a computer or computers of Nortel's choosing in source code format as extracted from the Nortel source code repository, that is or was shipped to customers or otherwise made available to customers, potential customers of Nortel, or other third parties, including but not limited to as a direct or indirect result of the Bankruptcy Sales, during the Relevant Period. Creditor's access to the Nortel source code must allow Creditor to run specific scripts that search the Nortel source code for the presence of Creditor Software.

**RESPONSE:**

10

64

Dated: March 1, 2011

CIARDI CIARDI & ASTIN

Daniel K. Astin (No. 4068)
Joseph J. McMahon, Jr. (No. 4819)
919 N. Market Street, Suite 700
Wilmington, Delaware 19801
Telephone:  (302) 658-1100
Facsimile:  (302) 658-1300
dastin@ciardilaw.com
jmcmahon@ciardilaw.com

and

Mark H. Ralston
2603 Oak Lawn Avenue
Suite 200
Dallas, TX  75219
Phone:  (214) 295-6416
Fax: (214) 602-1250

*Attorneys for SNMP Research International, Inc.*

11

# TAB C

65

This is Exhibit ___"C"___ referred to
in the affidavit of _CATHERINE MA_
sworn before me, this ___1___
day of ___June___, 20_11_

_VASUDA SINHA_

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | (Jointly Administered) |
| | RE: Dkt. No. 5196 |
| Debtors. | **Hearing Date: May 24, 2011 at 9:30 a.m.**<br>**Objection Deadline: May 17, 2011 at 4:00 p.m.** |

## THE MONITOR'S (I) STATEMENT IN SUPPORT OF DEBTORS' MOTION
## FOR PROTECTIVE ORDER LIMITING DISCOVERY REQUESTS
## PROPOUNDED BY SNMP RESEARCH INTERNATIONAL, INC.,
## AND (II) REQUEST FOR JOINT HEARING ON SUCH MOTION

Ernst & Young Inc., the court-appointed monitor (the "**Monitor**") and authorized

foreign representative of Nortel Networks Corporation and certain of its direct and indirect

subsidiaries, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel

Networks Global Corporation, and Nortel Networks International Corporation (the "**Canadian**

**Nortel Group**") in proceedings (the "**Canadian Proceedings**") under Canada's *Companies'*

*Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario

Superior Court of Justice (Commercial List) (the "**Ontario Court**"), hereby files this statement

in support of the Debtors' Motion for Protective Order Limiting Discovery Requests Propounded

by SNMP Research International, Inc., dated April 1, 2011 [Dkt. No. 5196] (the "**Motion**")[2] and

request for a joint hearing to consider such Motion (and any objections thereto) pursuant to

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

section 12(d) of the Protocol (defined below). In support hereof, the Monitor respectfully represents as follows:

As outlined more fully in the Motion, SNMP Research International, Inc.'s ("**SNMP RI**"), Demands arise in the context of the chapter 11 claims process in which SNMP RI has asserted certain claims against the Debtors and seeks through its Demands certain information from the Debtors. The Canadian Nortel Group companies are not parties to the contested proceedings regarding allowance of SNMP RI's asserted claims against the Debtors in these chapter 11 cases. The Demands appear not to be directed at the Canadian Nortel Group since SNMP RI has not served the Demands on the Canadian Nortel Group or obtained the required relief from the Ontario Court to make such Demands against the Canadian Nortel Group.[3]

Nonetheless, SNMP RI by its Demands seeks documents and other information from "Nortel", which is defined in the Demands as "the Debtor, Nortel Networks, Inc. [*sic*] and any affiliate, subsidiary, member, officer, principal, employee, representative, or agent of Nortel as well as any person or entity acting on behalf of Nortel," and defined to include the Canadian Nortel Group. Merely defining "Nortel" to include the Canadian Nortel Group, however, does not obligate the Canadian Nortel Group to respond to the Demands, unless directed by the Ontario Court to do so. SNMP RI cannot use Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 9014, 7026, 7033 and 7034 in a contested matter with the Debtors to obtain discovery of information from entities who are not parties to the contested matter. *See, e.g. Novartis Pharm. Corp. v. Eon Labs Mfg.*, 206 F.R.D. 392, 395 (D.

---

[3] *See Order Granting Recognition and Related Relief* [Case No. 09-10164, Dkt. No. 40] incorporating the *Amended and Restated Initial Order* of the Ontario Court: "This [Ontario] Court orders that . . . no proceeding or enforcement process in any court or tribunal shall be commenced or continued against or in respect of any of the Applicants or the Monitor, or affecting the Business or the Property, except . . . with leave of this [Ontario] Court . . ." *See Amended and Restated Initial Order* at paragraph 15 (capitalized terms in this footnote as defined in the *Amended and Restated Initial Order*).

Del. 2002) (court denied motion to compel all documents in a file owned by a non-party German corporate affiliate who had a licensing agreement with defendant for defendant to use the technical information, holding absent a showing that the business operations are "so intertwined as to render meaningless their separate identities," the motion to compel was outside the scope of discovery); *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257, 263 (D. Del. 1979) (where a related corporation is a separate legal entity from the litigant and its rights could not be determined *in absentia*, the other litigant was not entitled to discovery through production of documents by the related, non-party corporation).

SNMP RI also seeks access to software source code and information that is proprietary to the Canadian Nortel Group that may be in possession, custody or control of the Debtors. To the extent SNMP RI seeks documents or software source code in the sole or shared possession, custody or control of the Canadian Nortel Group or documents or software source code protected under applicable privileges available to the Canadian Nortel Group that are nonetheless responsive to SNMP RI's Demands, such requests must be also made in the Canadian Proceedings and adjudicated by the Ontario Court.

If the Court denies the Debtors' Motion, and the Debtors must turn over materials or provide access to software source code in which the Canadian Nortel Group has an interest, the Canadian Nortel Group will be harmed. SNMP RI in effect will obtain from the Debtors that which SNMP RI otherwise would have had to obtain through the Ontario Court in connection with its claim against the Canadian Nortel Group in the claims process established in the Canadian Proceedings, and SNMP RI has made no attempt to do so. Permitting this end run would adversely impact the Canadian Nortel Group and the Canadian estates.

**Joint Hearing on the Motion is Appropriate**

            This Court and the Ontario Court have approved a Cross-Border Insolvency Protocol (the "**Protocol**")[4] to, among other things, harmonize and coordinate activities in these proceedings and the Canadian Proceedings.  Pursuant to the Protocol, this Court and the Ontario Court may conduct a joint hearing with respect to any cross-border matter, and any interested party in either such proceedings may seek a joint hearing with respect to such matter.[5]  The Motion relates to the Demands which seek documents and shared software source code that may be in the possession, custody or control of the Debtors but in which the Canadian Nortel Group has an interest.  The Motion and Demands clearly raise cross-border issues which are properly the subject of a joint hearing.  To be clear, the Monitor does not suggest that this Court does not have the jurisdiction to grant the relief requested by the Debtors, but rather that the nature of the Demands as to both the type of information requested as well as the entities against whom the Demands are directed results in the Canadian Nortel Group having a unique interest in the disposition of the Motion.  The Canadian Nortel Group and their stakeholders have an interest in the proprietary software source code that is partially the subject of the Protective Order Motion, some of which may be produced to SNMP RI if this Court denies the Protective Order Motion.  The potential clearly exists that the proprietary software of the Canadian Nortel Group could be produced to SNMP RI without the Canadian Nortel Group being party to the contested

---

[4] The Protocol was approved by this Court in its Order Approving Stipulation of the Debtors and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al., Amending the Cross-Border Court-to-Court Protocol dated June 29, 2009 [Dkt. No. 990], and by the Ontario Court in its Fifth Amended and Restated Initial Order dated January 14, 2009.

[5] "Where the issue of the proper jurisdiction of either Court to determine an issue is raised by an interested party (as it is by the Monitor here) in either of the Insolvency Proceedings with respect to a motion or application filed in either Court, the Court before which such motion or application was initially filed may contact the other Court to determine an appropriate process by which the issue of jurisdiction will be determined, which process shall be subject to submissions by the Debtors, the Creditors Committee, the Monitor, the Bondholders Committee, the U.S. Trustee and any interested party prior to a determination on the issue of jurisdiction being made by either Court." (Capitalized terms in this footnote as defined in the Protocol).  *See* para. 12(b) of the Protocol.

proceeding allowing such production.  Put differently, the extent to which the Debtors must comply with the Demands may affect the Canadian Nortel Group without it being party to the underlying contested matter between SNMP RI and the Debtors, and necessitates that the Monitor, on behalf of the Canadian Nortel Group, seek relief from this Court in order to address those concerns.  Given the cross-border issues raised by the Motion and the Demands, and potential harm to the Canadian estates, it is appropriate for a joint hearing on the Motion, even if the Canadian Nortel Group is not a party to the underlying dispute between SNMP RI and the Debtors.

The Monitor therefore requests a joint hearing before this Court and the Ontario Court to consider the Motion. The Monitor on behalf of the Canadian Nortel Group reserves the right to submit a substantive response in connection with any joint hearing before this Court and the Ontario Court, and reserves all rights to object to the Demands to the extent that SNMP RI eventually properly serves the Demands on the Canadian Nortel Group pursuant to an Order of the Ontario Court in the Canadian Proceedings.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Monitor supports the Motion and entry of a Protective Order as described therein, and respectfully requests that this Court and the Ontario Court schedule a joint hearing on May 24, 2011 to consider such Motion, and, at such joint hearing, the Court grant the Motion and grant such other and further relief as this Court deems just and proper.

Dated: April 1, 2011            **BUCHANAN INGERSOLL & ROONEY PC**
Wilmington, Delaware

/s/ Mona A. Parikh
Mary F. Caloway (No. 3059)
Mona A. Parikh (No. 4901)
1105 North Market Street
Suite 1900
Wilmington, Delaware 19801
(302) 552-4200 (telephone)
(302) 552-4295 (facsimile)
mary.caloway@bipc.com
mona.parikh@bipc.com

- and -

Daniel J. Guyder
Jessica D. Lubarsky
**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020
(212) 610-6300 (telephone)
(212) 610-6399 (facsimile)
daniel.guyder@allenovery.com
jessica.lubarsky@allenovery.com

*Attorneys for Ernst & Young Inc., as Monitor
and Foreign Representative of the Canadian Nortel
Group*

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

Proceeding commenced at Toronto

**AFFIDAVIT OF CATHERINE MA**

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jennifer.stam@nortonrose.com

Fax: (416) 216-3930

Lawyers for the Applicants

# TAB 3

Court File No. 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | TUESDAY, THE 7th |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF JUNE, 2011 |

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### ORDER
### (SNMP RI DISCOVERY MOTION)

**THIS MOTION**, made by Nortel Networks Corporation ("NNC"), Nortel

Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks

Global Corporation and Nortel Networks International Corporation (collectively, "Nortel

Canada" or the "Applicants") for the relief set out in the Applicants' notice of motion

dated June 1, 2011 was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING** the Affidavit of Catherine Ma sworn June 1, 2011 (the

"Affidavit") and on hearing submissions of counsel for the Applicants, Ernst & Young

DOCSTOR: 21594872

Inc. as monitor of the Applicants (the "Monitor"), and those other parties present, no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of Catherine Ma, sworn June 1, 2011, filed.

1.      **THIS COURT ORDERS** that the time for service of this Motion is hereby abridged such that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.      **THIS COURT DECLARES** that SNMP Research International, Inc. ("SNMP RI") has not sought relief against Nortel Canada or in the CCAA Court in the within proceedings with regard to production by Nortel Canada of any documents, materials, information or source code.

3.      **THIS COURT DECLARES** that Nortel Canada has a proprietary interest in and had historical ownership of certain documents, materials, information and source code of which SNMP RI seeks discovery from Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc. (collectively, the "U.S. Debtors") as being in the power, possession or control of the U.S. Debtors (the "Production Demands") in the context of the claims process in the bankruptcy proceedings commenced by the U.S. Debtors in the United States under Chapter 11 of Title 11 of the United States Code (the "U.S. Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware

(the "U.S. Bankruptcy Court") (the "Chapter 11 Proceedings"), and that Nortel Canada will suffer prejudice by any disclosure of such documents, materials, information and source code.

4.      **THIS COURT ORDERS** that in the event the U.S. Bankruptcy Court orders the U.S. Debtors to make productions pursuant to or as a result of the Production Demands, any documents, materials, information or source code so produced by the U.S. Debtors that are proprietary to the Applicants or in which the Applicants have an interest shall be subject to the deemed undertaking rule in Canada and may not be used for, against or in any way related to any claim or action against the Applicants without leave of this Court.

5.      **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

6.      **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal,

regulatory or administrative body, wherever located, for the recognition of this Order and

for assistance in carrying out the terms of this Order.

_____

77

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION,
NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**ORDER**
(SNMP RI DISCOVERY MOTION)

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jennifer.stam@nortonrose.com
Fax: (416) 216-3930

Lawyers for the Applicants

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

---

**MOTION RECORD OF NORTEL**
**(SNMP RI DISCOVERY MOTION)**
(returnable June 7, 2011)

---

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jennifer.stam@nortonrose.com

Fax: (416) 216-3930

Lawyers for the Applicants