**EXHIBIT B**

Court File No. 09-CL-7950

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

#### FACTUM AND BRIEF OF AUTHORITIES OF NORTEL SNMP RI DISCOVERY MOTION
#### (returnable June 7, 2011)

June 1, 2011

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jennifer.stam@nortonrose.com

Fax: (416) 216-3930

TO:    THE ATTACHED SERVICE LIST

*June 1, 2011*

Court File No. 09-CL-7950

### ONTARIO
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. c-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### SERVICE LIST

TO:      **NORTON ROSE OR LLP**
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto, Ontario M5J 2Z4

Derrick Tay
Tony Reyes
Jennifer Stam

Email:      derrick.tay@nortonrose.com
tony.reyes@nortonrose.com
jennifer.stam@nortonrose.com

Tel:      416.216.4000
Fax:      416.216.3930

Lawyers for the Applicants

- 2 -

TO:  **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, Ontario  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:  nortel.monitor@ca.ey.com

Tel:    416.943.3016
Fax:   416.943.3300

AND  **GOODMANS LLP**
TO:   Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario  M5H 2S7

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Fred Myers
Chris Armstrong

Email:  jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
grubenstein@goodmans.ca
fmyers@goodmans.ca
carmstrong@goodmans.ca

Tel:    416.597.4107
Fax:   416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND  **OSLER HOSKIN AND HARCOURT**
TO:   **LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, Ontario  M5X 1B8

Lyndon Barnes
Rupert Chartrand
Edward Sellers
Betsy Putnam

Email:  lbarnes@osler.com
rchartrand@osler.com
esellers@osler.com
eputnam@osler.com

Tel:    416.362.2111
Fax:   416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND  **FASKEN MARTINEAU DUMOULIN LLP**
TO:   66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, Ontario  M5K 1N6

Donald E. Milner
Aubrey Kauffman
Edmond Lamek
Jon Levin

Email:  dmilner@fasken.com
akauffman@fasken.com
elamek@fasken.com
jlevin@fasken.com

Tel:    416.868.3538
Fax:   416.364.7813

Lawyers for Export Development Canada

AND  **EXPORT DEVELOPMENT CANADA**
TO:   151 O'Connor Street
      Ottawa, Ontario  K1A 1K3

      Jennifer Sullivan

      Email:  jsullivan@edc.ca

      Tel:   613.597.8651
      Fax:   613.598.3113

AND  **THORNTON GROUT FINNIGAN LLP**
TO:   3200-100 Wellington Street West
      Toronto-Dominion Centre, Canadian Pacific
      Tower
      Toronto, Ontario  M5K 1K7

      Leanne M. Williams

      Email:  lwilliams@tgf.ca

      Tel:   416.304.1616
      Fax:   416.304.1313

      Lawyers for Flextronics Telecom Systems
      Ltd.

AND  **McINNES COOPER**
TO:   Purdy's Wharf Tower II
      1300 – 1969 Upper Water Street
      Halifax, NS  B3J 2V1

      John Stringer, Q.C.
      Stephen Kingston

      Email:  john.stringer@mcinnescooper.com
              stephen.kingston@mcinnescooper.com

      Tel:   902.425.6500
      Fax:   902.425.6350

      Lawyers for Convergys EMEA Limited

AND  **MILLER THOMSON LLP**
TO:   Scotia Plaza
      40 King Street West, Suite 5800
      P.O. Box 1011
      Toronto, Ontario  M5H 3S1

      Jeffrey Carhart

      Email:  jcarhart@millerthomson.com

      Tel:   416.595.8615/8577
      Fax:   416.595.8695

      Lawyers for Toronto-Dominion Bank

AND  **CAW-CANADA**
TO:   Legal Department
      205 Placer Court
      Toronto, Ontario M2H 3H9

      Barry E. Wadsworth
      Lewis Gottheil

      Email:  barry.wadsworth@caw.ca
              lewis.gottheil@caw.ca

      Tel.:  416.495.3776
      Fax:   416.495.3786

      Lawyers for all active and retired Nortel
      employees represented by the CAW-Canada

AND  **BOUGHTON LAW CORPORATION**
TO:   Suite 700
      595 Burrard Street
      Vancouver, BC  V7X 1S8

      R. Hoops Harrison

      Email:  hharrison@boughton.ca

      Tel:   604.687.6789
      Fax:   604.683.5317

      Lawyers for Tonko Realty Advisors (BC)
      Ltd., in its capacity as duly authorized agent
      for Holdings 1506 Enterprises Ltd.

- 4 -

AND TO:
**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, Ontario  M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:  mmacnaughton@blgcanada.com
Tel:     416. 367.6646
Fax:    416. 682.2837

Email:  rjaipargas@blgcanada.com
Tel:     416.367.6266
Fax:    416.361.7067

Email:  srappos@blgcanada.com
Tel:     416.367.6033
Fax:    416.361.7306

Lawyers for Bell Canada

AND TO:
**SISKINDS LLP**
680 Waterloo Street
London, Ontario  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein
Emilie E. M. Maxwell

Email:  ray.leach@siskinds.com
          dimitri.lascaris@siskinds.com
          emilie.maxwell@siskinds.com

Tel:     519.672.2121
Fax:    519.672.6065

Lawyers for Indiana Electrical Workers
Pension Trust Fund IBEW, Laborers Local
100 and 397 Pension Fund, and Bruce
William Lapare

AND TO:
**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario  M5J 2T3

John Contini
Aaron Rousseau

Email   john.contini@mcmillan.ca
Tel:     416.307.4148
Fax:    416.304.3767

Email   aaron.rousseau@mcmillan.ca
Tel:     416.307.4081
Fax:    416.365.1719

Lawyers for ABN AMRO Bank N.V.

AND TO:
**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson
Richard Swan

Email:  zychk@bennettjones.com
Tel:     416.777.5738
Fax:    416.863.1716

Email:  orzyr@bennettjones.com
Tel:     416.777.5737
Fax:    416.863.1716

Email:  finlaysong@bennettjones.com
Tel:     416.777.5762
Fax:    416.863.1716

Email:  swanr@bennettjones.com
Tel:     416.777.7479
Fax:    416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

- 5 -

AND
TO:
**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, Ontario  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon
Celeste Poltak

Email:   mzigler@kmlaw.ca
Tel:     416.595.2090
Fax:     416.204.2877

Email:   sphilpott@kmlaw.ca
Tel:     416.595.2104
Fax:     416.204.2882

Email:   dyiokaris@kmlaw.ca
Tel:     416.595.2130
Fax:     416.204.2810

Email:   amckinnon@kmlaw.ca
Tel:     416.595.2150
Fax:     416.204.2874

Email:   cpoltak@kmlaw.ca
Tel:     416.595.2701
Fax:     416.204.2909

Lawyers for the Former Employees of Nortel

AND
TO:
**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, Ontario  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon
Celeste Poltak

Email:   mzigler@kmlaw.ca
Tel:     416.595.2090
Fax:     416.204.2877

Email:   sphilpott@kmlaw.ca
Tel:     416.595.2104
Fax:     416.204.2882

Email:   dyiokaris@kmlaw.ca
Tel:     416.595.2130
Fax:     416.204.2810

Email:   amckinnon@kmlaw.ca
Tel:     416.595.2150
Fax:     416.204.2874

Email:   cpoltak@kmlaw.ca
Tel:     416.595.2701
Fax:     416.204.2909

Lawyers for the LTD Beneficiaries

- 6 -

AND
TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:   jcarhart@millerthomson.com
Tel:      416.595.8615
Fax:     416.595.8695

Email:   msims@millerthomson.com
Tel:      416.595.8577
Fax:     416.595.8695

Email:   jmklotz@millerthomson.com
Tel:      416.595.4373
Fax:     416.595.8695

Lawyers for LG Electronics Inc.

AND
TO:
**LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongduengpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:   joseph.kim@lge.com

Tel:      +82.2.3777.3171
Fax:     +82.2.3777.5345

AND
TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:   jcarhart@millerthomson.com
Tel:      416.595.8615
Fax:     416.595.8695

Email    msims@millerthomson.com
Tel:      416.595.8577
Fax:     416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision
Communication Services, Inc.

AND
TO:
**CHAITONS LLP**
185 Sheppard Avenue West
Toronto, Ontario  M2N 1M9

Harvey G. Chaiton

Email:   harvey@chaitons.com

Tel:      416.218.1129
Fax:     416.218.1849

Lawyers for IBM Canada Limited

AND TO:

**PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, Ontario  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email: ken.rosenberg@paliareroland.com
Tel: 416.646.4304
Fax: 416.646.4301

Email: max.starnino@paliareroland.com
Tel: 416.646.7431
Fax: 416.646.4301

Email: lily.harmer@paliareroland.com
Tel: 416.646.4326
Fax: 416.646.4301

Email: tina.lie@paliareroland.com
Tel: 416.646.4332
Fax: 416.646.4301

Lawyers for the Superintendent of Financial Services as Administrator of the Pension Benefits Guarantee Fund

AND TO:

**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder
Ryan Jacobs

Email: Shayne.kukulowicz@fmc-law.com
Alex.macfarlane@fmc-law.com
Michael.wunder@fmc-law.com
ryan.jacobs@fmc-law.com

Tel: 416.863.4511
Fax: 416.863.4592

Canadian Lawyers for the Official Committee of Unsecured Creditors

AND TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1G5

E. Patrick Shea

Email: patrick.shea@gowlings.com

Tel: 416.369.7399
Fax: 416.862.7661

Lawyers for Westcon Group

AND TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email: rslattery@mindengross.com
dullmann@mindengross.com
Tel: 416.369.4149
Fax: 416.864.9223

Lawyers for Verizon Communications Inc.

- 8 -

AND
TO:
**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:   hfogul@airdberlis.com
Tel:     416.865.7773
Fax:     416.863.1515

Email:   pczegledy@airdberlis.com
Tel:     416.865.7749
Fax:     416.863.1515

Lawyers for Microsoft Corporation

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:   renglish@airdberlis.com
         smitra@airdberlis.com

Tel:     416.863.1500
Fax:     416.863.1515

Lawyers for Tata Consultancy Services
Limited and Tata America International
Corporation

AND
TO:
**ALEXANDER HOLBURN BEAUDIN &
LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:   surquhart@ahbl.ca
Tel:     604.484.1757
Fax:     604.484.1957

Lawyers for Algo Communication Products
Ltd.

AND
TO:
**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:   jwigley@gardiner-roberts.com
Tel:     416.865.6655
Fax:     416.865.6636

Email:   vdare@foglers.com
Tel:     416.865.6641
Fax:     416.865.6636

Lawyers for Andrew, LLC

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND
TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Maurice Fleming

Email:   mfleming@millerthomson.com
Tel:     416.595.8686
Fax:     416.595.8695

Lawyers for Verint Americas Inc. and Verint
Systems, Inc.

AND
TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, Ontario  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:      416.365.3529
Fax:     416.369.5210

Email:   jdavissydor@davis.ca
Tel:      416.941.5397
Fax:     416.365.7886

Lawyers for Brookfield LePage Johnson
Controls Facility Management Services


AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:     416.863.1515

Lawyers for Perot Systems Corporation


AND
TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:   andrew.kent@mcmillan.ca
Tel:      416.865.7160
Fax:     416.865.7048

Email:   hilary.clarke@mcmillan.ca
Tel:      416.865.7286
Fax:     416.865.7048

Email:   tushara.weerasooriya@mcmillan.ca
Tel:      416.865.7262
Fax:     416.865.7048

Lawyers for Royal Bank of Canada


AND
TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Lawrence J. Crozier
Adam C. Maerov

Email:   lawrence.crozier@mcmillan.ca
Tel:      416.865.7178
Fax:     416.865.7048

Email:   adam.maerov@mcmillan.ca
Tel:      416.865.7285
Fax:     416.865.7048

Lawyers for Citibank

AND
TO:
**CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario  M5H 3C2

Deborah S. Grieve

Email:  dgrieve@casselsbrock.com
Tel:    416.860.5219
Fax:    416.350.6923

Lawyers for Alvarion Ltd.

AND
TO:
**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:    416.865.6655
Fax:    416.865.6636

Email:  vdare@foglers.com
Tel:    416.865.6641
Fax:    416.865.6636

Lawyers for Amphenol Corporation

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Sanjeev P.R. Mitra

Email:  smitra@airdberlis.com

Tel:    416.863.1500
Fax:    416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

AND
TO:
**BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario  M5C 3G5

Domenico Magisano

Email:  dmagisano@blaney.com
Tel:    416.593.2996
Fax:    416.593.5437

Lawyers for Expertech Network Installation Inc.

AND
TO:
**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario  M5J 2T3

Aaron Rousseau

Email:  aaron.rousseau@mcmillan.ca
Tel:    416.307.4081
Fax:    416.365.1719

Lawyer for Right Management Inc.

AND
TO:
**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
David S. Ward
Michael Casey

Email:  bleonard@casselsbrock.com
        dward@casselsbrock.com
        mcasey@casselsbrock.com

Tel:    416.860.6455
Fax:    416.640.3054

Lawyers for the UK Pension Protection Fund and Nortel Networks UK Pension Trust Limited

- II -

AND
TO:

**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario K2P 0A2

Paul K. Lepsoe

Email:  pklepsoe@mcfarlanelaw.com

Tel:   613.233.2679
Fax:   613.233.3774

Lawyers for Iron Mountain Canada
Corporation and Iron Mountain Information
Management, Inc.

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:  theintzm@mccarthy.ca
Tel:   416.601.7627
Fax:   416.868.0673

Email:  jsirivar@mccarthy.ca
Tel:   416.601.7750
Fax:   416.868.0673

Lawyers for Frank Andrew Dunn

AND
TO:

**IRVING MITCHELL KALICHMAN LLP**
Place Alexis Nihon, Tour 2
3500 Boulevard De Maisonneuve Ouest
Bureau 1400
Montreal, Quebec H3Z 3C1

Kurt A. Johnson

Email :  kjohnson@imk.ca
Tel:   514.935.5755
Fax :   514.935.2999

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

AND
TO:

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:  janice.payne@nelligan.ca
        steven.levitt@nelligan.ca
        christopher.rootham@nelligan.ca

Tel:   613.231.8245
Fax:   613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post
CCAA as at January 14, 2009

AND TO: **BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario M5J 2T3

Chris Besant
Lydia Salvi

Email: chris.besant@bakernet.com

Tel: 416.865.2318
Fax: 416.863.6275

Email: lydia.salvi@bakernet.com

Tel: 416.865.6944
Fax: 416.863.6275

Lawyers for Jabil Circuit Inc.

AND TO: **BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email: ryanbellr@bennettjones.com
laugesenm@bennettjones.com

Tel: 416.863.1200
Fax: 416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and Tel-e Connect Systems (Toronto) Ltd.

AND TO: **SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec H9S 2A5

Dan Goldstein
Marco Gaggino

Email: dgoldstein@schneidergaggino.com
mgaggino@schneidergaggino.com

Tel: 514.631.8787
Fax: 514.631.0220

Lawyers for the Teamsters Quebec Local 1999

AND TO: **MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario M5H 4G2

Timothy R. Dunn

Email: tdunn@mindengross.com
Tel: 416.369.4335
Fax: 416.864.9223

Lawyers for 2748355 Canada Inc.

AND TO: **EURODATA**
2574 Sheffield Road
Ottawa, Ontario K1B 3V7

Nanci Shore

Email: nanci@eurodata.ca
Tel: 613.745.0921
Fax: 613.745.1172

AND TO: **BALDWIN LAW PROFESSIONAL CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email: ibrady@baldwinlaw.ca
Tel: 613.771.9991
Fax: 613.771.9998

Lawyers for Sydney Street Properties Corp.

AND
TO:
**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Raffy Lorentzian

Email: raffy.lorentzian@ntscorp.com
Tel:    714.998.4351
Fax:   714.998.7142

Lawyers for AETL Testing, Inc.

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email: sgraff@airdberlis.com
Tel:    416.865.7726
Fax:   416.863.1515

Email: iaversa@airdberlis.com
Tel:    416.865.3082
Fax:   416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthur.jacques@shibleyrighton.com
Tel:    416.214.5213
Fax:   416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel :   416.214.5206
Fax :   416.214.5400

Lawyers for The Recently Severed
Canadian Nortel Employees Committee

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthur.jacques@shibleyrighton.com
Tel:    416.214.5213
Fax:   416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel :   416.214.5206
Fax :   416.214.5400

Co-Counsel for the Steering Committee of
Nortel Canadian Continuing Employees –
Post CCAA as at January 14, 2009

AND
TO:
**NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Raffy Lorentzian

Email: raffy.lorentzian@ntscorp.com
Tel:    714.998.4351

AND
TO:
**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email: david.cohen@gowlings.com

Tel:    416.369.6667
Fax:   416.862.7661

Lawyers for General Electric Canada
Equipment Finance G.P. and GE Capital
Canada Leasing Services Inc.

- 14 -

AND
TO:
**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:  bdarlington@davis.ca
Tel:     416.365.3529
Fax:    416.369.5210

Email:  jdavissydor@davis.ca
Tel:     416.941.5397
Fax:    416.365.7886

Lawyers for Computershare Trust Company
of Canada

AND
TO:
**DAVIES WARD PHILLIPS & VINEBERG LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:  rschwill@dwpv.com
Tel:     416.863.0900
Fax:    416.863.0871

Email:  mgottlieb@dwpv.com
Tel:     416.863.0900
Fax:    416.863.0871

Lawyers for Nortel Networks UK Limited (In
Administration)

AND
TO:
**LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:  tosullivan@counsel-toronto.com
Tel:      416.598.1744
Fax:     416.598.3730

Email:  slaubman@counsel-toronto.com
Tel:     416.598.1744
Fax:    416.598.3730

Lawyers for William A. Owens

AND
TO:
**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Lydia Salvi

Email:  lydia.salvi@bakernet.com

Tel:     416.865.6944
Fax:    416.863.6275

Lawyers for Wipro Limited

AND TO:   **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:     416.863.1515

Lawyers for the Current and Former
Employees of Nortel Networks Inc. who are
or were Participants in the Long-Term
Investment Plan Sponsored by Nortel
Networks Inc.

AND TO:   **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario, M5J 2T3

Sheryl E. Seigel

Email:   sheryl.seigel@mcmillan.ca
Tel:      416.307.4063
Fax:     416.365.1719

Lawyers for The Bank of New York Mellon

AND TO:   **BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Susan M. Grundy
Marc Flynn

Email:   susan.grundy@blakes.com
Tel:      416.863.2572
Fax:     416.863.2653

Email:   marc.flynn@blakes.com
Tel:      416.863.2685
Fax:     416.863.2653

Lawyers for Telefonaktiebolaget L M
Ericsson (publ)

AND TO:   **McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario  M5K 1E6

Heather Meredith

Email:   hmeredith@mccarthy.ca
Tel:      416.601.8342
Fax:     416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND TO:   **DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:   dwinters@justice.cc.ca
Tel:      416.973.3172
Fax:     416.973.0810

AND TO:   **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:   kmcelcheran@mccarthy.ca
Tel:      416.601.7730
Fax:     416.868.0673

Email:   rstabile@mccarthy.ca
Tel:      416.601.8335
Fax:     416.868.0673

Lawyers for Avaya Inc.

- 16 -

AND
TO:
**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:     416.863.2958
Fax:    416.863.2653

Email:  milly.chow@blakes.com
Tel:     416.863.2594
Fax:    416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:     416.863.2426
Fax:    416.863.2653

Email:  craig.thorburn@blakes.com
Tel:     416.863.2965
Fax:    416.863.2653

Lawyers for MatlinPatterson Global
Advisers LLC, MatlinPatterson Global
Opportunities Partners III L.P. and
MatlinPatterson Opportunities Partners
(Cayman) III L.P.

AND
TO:
**SACK GOLDBLATT MITCHELL LLP**
20 Dundas Street West
Suite 1100
Toronto, Ontario  M5G 2G8

James McDonald
Darrell Brown

Email:  jmcdonald@sgmlaw.com
Tel:     416.979.6425
Fax:    416.591.7333

Email:  dbrown@sgmlaw.com
Tel:     416.979.4050
Fax:    416.591.7333

Lawyers for Edmund Fitzgerald

AND
TO:
**FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:  jspiegelman@foglers.com
Tel:     416.864.9700
Fax:    416.941.8852

Lawyers for Belden (Canada) Inc.

AND
TO:
**VINCENT DAGENAIS GIBSON LLP/s.r.l**
Barristers and Solicitors
600-325 Dalhousie Street
Ottawa, ON  K1N 7G2

Thomas Wallis

E-mail:  thomas.wallis@vdg.ca
Tel:      613.241.2701
Fax:     613.241.2599

Lawyers for La Regie des Rentes du Quebec

AND TO: **STIKEMAN ELLIOTT LLP**
5300 Commerce Court West
199 Bay Street
Toronto, ON  M5L 1B9

Sean F. Dunphy

Email:  sdunphy@stikeman.com
Tel:    416.869.5662
Fax:    416.947.0866

Lawyers for GENBAND Inc.

AND TO: **STIKEMAN ELLIOTT LLP**
445 Park Avenue, 7th Floor
New York, NY  10022

Gordon Cameron
Ron Ferguson

Email:  gncameron@stikeman.com
Tel:    212.845.7464
Fax:    212.371.7087

Email:  rferguson@stikeman.com
Tel:    212.845.7477
Fax:    212.371.7087

Lawyers for GENBAND Inc.

AND TO: **BORDEN LADNER GERVAIS LLP**
Barristers and Solicitors
Scotia Plaza, Suite 4400
40 King Street West
Toronto, ON  M4H 3Y4

John D. Marshall
Craig J. Hill

Email:  jmarshall@blgcanada.com
Tel:    416.367.6024
Fax:    416.361.2763

Email:  chill@blgcanada.com
Tel:    416.367.6156
Fax:    416.631.7301

Lawyers for the U.K. Pensions Regulator

AND TO: **BLAKE, CASSELS & GRAYDON**
Box 25, Commerce Court West
199 Bay Street, Suite 2800
Toronto, Ontario  M5L 1A9

Pamela J. Huff
J. Jeremy Forgie

Email:  pamela.huff@blakes.com
Tel:    416.863.2958
Fax:    416.863.2653

Email:  jeremy.forgie@blakes.com
Tel:    416.863.3888
Fax:    416.863.2653

Lawyers for The Northern Trust Company, Canada

AND TO: **ROCHON GENOVA LLP**
121 Richmond Street West
Suite 900
Toronto, ON  M5H 2K1

Joel P. Rochon

Email:  jrochon@rochongenova.com
Tel:    416.363.1867
Fax:    416.363.0263

Lawyers for the Opposing LTD Employees

AND TO: **LERNERS LLP**
130 Adelaide St. West
Suite 2400
Toronto, ON  M5H 3P5

William E. Pepall

Email:  wpepall@lerners.ca
Tel:    416.601.2352
Fax:    416.867.2415

Lawyers for the Former Employees in Respect of the Distribution of the Corpus of the Health and Welfare Trust

AND TO: **MACLEOD DIXON LLP**
3700 Canterra Tower
400 Third Avenue SW
Calgary, Alberta
T2P 4H2

Kyle D. Kashuba

Email:   kyle.kashuba@macleoddixon.com
Tel:      403.267.8399
Fax:     403.264.5973

Constellation NewEnergy Canada Inc.

AND TO: **SACK GOLDBLATT MITCHELL**
500 – 30 rue Metcalfe St.
Ottawa, ON K1P 5L4

Peter Engelmann
Fiona Campbell

Email:   pengelmann@sgmlaw.com
Tel:      613-482-2452
Fax:     613-235-3041

Email:   fcampbell@sgmlaw.com
Tel:      613-482-2451
Fax:     613-235-3041

Lawyers for the LTD Beneficiaries in Respect of the Distribution of the Corpus of the Health and Welfare Trust

AND TO: **CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006

James Bromley
Lisa Schweitzer
Martin N. Kostov

Email:   jbromley@cgsh.com
            lschweitzer@cgsh.com
            mkostov@cgsh.com
Tel:      212.225.2000
Fax:     212.225.3999

Lawyers for Nortel Networks Inc.

AND TO: **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario M5K 1E6

Barbara J. Boake
James D. Gage

E-mail:  bboake@mccarthy.ca
Tel:      416.601.7557
Fax:     416.868.0673

Email:   jgage@mccarthy.ca
Tel:      416.601.7539
Fax:     416.686.0673

Lawyers for Morneau Shepell Ltd.

AND TO: **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, ON M5J 2T3

D. Brent McPherson

Email:   brent.mcpherson@mcmillan.ca
Tel:      416.307.4103
Fax:     416.304.3769

Lawyers for Wells Fargo Bank, National Association, as successor by merger to Wachovia Bank, N.A., in its capacity as Servicer for the Nortel Networks Pass-Through Trust, Series 1-1

AND TO: **DAVID STEER**
10 Cypress Court
Nepean, ON K2H 8Z8

E-mail:  davidsteer127@sympatico.ca

AND
TO:

**FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:  jspiegelman@foglers.com

Tel:    416.864.9700
Fax:    416.941.8852

Lawyers for Apex Logistics Inc.


AND
TO:

**TORYS LLP**
79 Wellington St. W., Suite 3000
Toronto-Dominion Centre
Toronto, Ontario  M5K 1N2

Michael Rotsztain
Adam M. Slavens

Email:  mrotsztain@torys.com
Tel:    416.865.7508
Fax:    416.865.7380

Email:  aslavens@torys.com
Tel:    416.865.7333
Fax:    416.865.7380

Lawyers for Ranger, Inc.


AND
TO:

**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson

Email :
andrew.robertson@macleoddixon.com

Tel :   403.267.8222
Fax :   403.264.5973

Lawyers for Recently Severed Calgary
Employees


AND
TO:

**TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Tony DeMarinis
Scott Bomhof
Sheila Block
Andrew Gray

Email:  tdemarinis@torys.com
        sbomhof@torys.com
        sblock@torys.com
        agray@torys.com
Tel:    416.865.0040
Fax:    416.865.8730

Lawyers for Nortel Networks Inc.


AND
TO:

**TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario  K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email:  hvw@tmlegal.ca
        rbm@tmlegal.ca

Tel:    613.542.1889
Fax:    613.542.8202

Lawyers for The Corporation of the City of
Belleville


AND
TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Brett Harrison

Email:  brett.harrison@mcmillan.ca
Tel :   416.865.7932
Fax :   416.865.7048

Lawyers for Rogers Communications Inc.

- 20 -

AND
TO:

**ATTORNEY GENERAL FOR ONTARIO**
Crown Law Office – Civil
720 Bay Street, 8th Floor
Toronto, Ontario  M7A 2S9

Leonard Marsello
William MacLarkey

Email:  leonard.marsello@ontario.ca
Tel:      416.326.4939
Fax:     416.326.4181

Email:  William.MacLarkey@ontario.ca
Tel:      416.326.4082
Fax:     416.326.4181

Lawyers for Her Majesty the Queen in right
of Ontario, as represented by the Ministry of
the Environment

AND
TO:

**TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario  K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email:  hvw@tmlegal.ca
          rbm@tmlegal.ca

Tel:      613.542.1889
Fax:     613.542.8202

Lawyers for Algonquin and Lakeshore
Catholic District School Board

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Steven J. Weisz
Jackie Moher

Email:  steven.weisz@blakes.com
Tel:      416.863.2616
Fax:     416.863.2653

Email:  jackie.moher@blakes.com
Tel:      416.863.3174
Fax:     416.863.2653

Lawyers for the American Registry for Internet
Numbers

AND
TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Andrew J. F. Kent
Wael Rostom

Email:  andrew.kent@mcmillan.ca
Tel :     416.865.7160
Fax :    416.865.7048

Email:  wael.rostom@mcmillan.ca
Tel :     416.865.7790
Fax :    416.865.7048

Lawyers for the Norpax LLC and RPX
Corporation, in its capacity as Managing
Member of Norpax LLC

**COURTESY COPIES:**

AND
TO:

**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email:  sbrown@lrlaw.com

Tel:    602.262.5321
Fax:    602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND
TO:

**CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail: sreisman@curtis.com
        jdrew@curtis.com

Tel:    212.696.6000
Fax:    212-697-1559

Lawyers for Flextronics International

AND
TO:

**AKIN GUMP STRAUSS HAUER &
FELD LLP**
One Bryant Park
New York, NY  10036

Fred S. Hodara

Email:  fhodara@akingump.com

Tel:    212.872.1000
Fax:    212.872.1002

U.S. Lawyers for the Official Committee
of Unsecured Creditors

AND
TO:

**MILBANK, TWEED, HADLEY
McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY  10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email:  DDunne@milbank.com
Tel:    212.530.5770
Fax:    212.530.5219

Email:  ALeblanc@milbank.com
Tel:    212.835.7574
Fax:    212.530.5219

Email:  APisa@milbank.com
Tel:    212.530.5319
Fax:    212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

- 22 -

AND
TO:
**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York  10019

Michael L. Schein

Email:  mschein@vedderprice.com

Tel:    212.407.6920
Fax:   212.407.7799

U.S. Lawyers for Telmar Network
Technology, Inc. and Precision
Communication Services, Inc.

AND
TO:
**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :
andrew.robertson@macleoddixon.com
caylee.rieger@macleoddixon.com

Tel :    403.267.8222
Fax :   403.264.5973

Agent for Nelligan O'Brien Payne LLP,
lawyers for the Steering Committee of
Recently Severed Canadian Nortel
Employees and lawyers for the Steering
Committee of Nortel Canadian Continuing
Employees – Post CCAA as at January 14,
2009

AND
TO:
**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois 60601

Eric S. Prezant

Email:   eric.prezant@bryancave.com
Tel:     312.602.5033
Fax:    312.602.5050

U.S. Lawyers for Tellabs, Inc.

AND
TO:
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4834

Michael J. Riela

Email: michael.riela@lw.com

Tel :   212.906.1373
Fax :   212.751.4864

U.S. Lawyers for The Bank of New York
Mellon

# INDEX

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**FACTUM AND BRIEF OF AUTHORITIES OF NORTEL**
**SNMP RI DISCOVERY MOTION**
**(returnable June 7, 2011)**

**TABLE OF CONTENTS**

| TAB | DOCUMENT |
| --- | --- |
| 1 | Factum of Nortel |
| A | *Goodman v. Rossi* (1995), 24. O.R. (3d) 359 |
| B | Rule 30.1.01 Ontario, *Rules of Civil Procedure* R.R.O. 1990, Reg. 194 |

# TAB 1

- 1 -

Court File No. 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
### R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
### NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
### NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
### INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
### CORPORATION

### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
### R.S.C. 1985, c. C-36, AS AMENDED

### FACTUM OF NORTEL
### (SNMP RI DISCOVERY MOTION)
### (returnable June 7, 2011)

## PART I - OVERVIEW

1.      Nortel Canada[1] along with its various affiliates and subsidiaries, including the U.S.

based Nortel Networks Inc. ("NNI")[2] comprised a large global corporation in the information

technology and communications industries.

2.      On January 14, 2009 Nortel Canada and NNI and their various affiliates and

subsidiaries worldwide[3], commenced insolvency proceedings in their respective jurisdictions.

Prior to the insolvency, Nortel's global operations were integrated, such that often property

---

[1] As defined below.

[2] NNI, Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc. are collectively the "U.S. Debtors".

[3] Nortel Canada together with its worldwide affiliates and subsidiaries are hereinafter referred to as "Nortel".

and assets that legally belonged to one entity would have been in the possession of another. This was particularly the case with intellectual property.

3.    SNMP Research International, Inc. ("SNMP RI") is a technology company that had licensed some of its software for use by certain Nortel entities, including for inclusion in products sold by them.  SNMP RI has made claims against Nortel Canada and the U.S. Debtors in the CCAA Proceedings and the Chapter 11 Proceedings,[4] respectively.  These claims are based on allegedly unpaid use of SNMP RI intellectual property, particularly the source code for certain software, by Nortel.  SNMP RI currently seeks broad discovery of NNI in the Chapter 11 Proceedings, including discovery of all of the source code in the U.S. Debtors' possession.

4.    Nortel Canada has an interest in much of the source code in the U.S. Debtors' possession.  This fact notwithstanding, SNMP RI has not taken steps to seek similar discovery of Nortel Canada within the CCAA Proceedings.[5]

5.    Discovery rules in the U.S. do not guarantee that any information owned by Nortel Canada that is uncovered pursuant to any discovery order that SNMP RI may be granted will not be used in proceedings other than SNMP RI's claim in the Chapter 11 Proceedings.

6.    The U.S. Debtors are seeking a protective order to limit the scope and use of any discovery of them by SNMP RI that may be ordered by the U.S. Bankruptcy Court.  The U.S.

---

[4] As defined below.
[5] As defined below.

Bankruptcy Court[6] and this Honourable Court have agreed to address the questions of SNMP RI's discovery request in the U.S., the U.S. Debtors' request for a protective order and the scope of such requests in Canada by way of joint hearing under the Cross-Border Insolvency Protocol.

7.      The Applicants support and agree with the discovery objections of the U.S. Debtors. The Applicants seek for this Court to prevent SNMP RI from using cross-border insolvency proceedings in a manner that compromises confidential information and to protect Nortel Canada's property and procedural rights.

## PART II - THE FACTS

### A.      The Insolvency Proceedings

8.      On January 14, 2009, this Honourable Court made an order (the "Initial Order") placing Nortel Networks Corporation ("NNC") and Nortel Networks Limited ("NNL"), among others, (collectively, "Nortel Canada" or the "Applicants") into protection under the CCAA (the "CCAA Proceedings"). The Initial Order granted, *inter alia,* a stay of proceedings (the "Stay") and appointed Ernst & Young Inc. as monitor of the Applicants ("the "Monitor").

9.      On that same day insolvency and restructuring proceedings were commenced by Nortel's worldwide affiliates and subsidiaries in their respective jurisdictions, including by the U.S. Debtors in the United States under Chapter 11 of Title 11 of the United States Code

_____

[6] As defined below.

(the "U.S. Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "U.S. Bankruptcy Court") (the "Chapter 11 Proceedings").

## B.    SNMP RI's Discovery Requests

10.      SNMP RI is a technology company with which NNC had entered into a licensing agreement that allowed certain members of Nortel, including NNI, the right to use software, including source code and binary code, developed by SNMP RI in certain products produced and sold by Nortel.[7]

11.      SNMP RI filed proofs of claims against NNI in the Chapter 11 Proceedings and against Nortel Canada in the CCAA Proceedings. These claims are for allegedly unpaid royalties and other fees owed to SNMP RI by Nortel for certain use of SNMP RI software by Nortel. SNMP RI later amended its proof of claim in the Chapter 11 Proceedings to claim for allegedly unreported royalties owed to SNMP RI for Nortel's use of an unlicensed piece of software.[8]

12.      SNMP RI sought, and was denied, extensive discovery of Nortel prior to and during the process of the disposition of a number of Nortel's lines of business in the insolvency proceedings thus far.[9]    Yet, SNMP RI now seeks further discovery, and has made

---

[7] Debtors' Motion for Protective Order Limiting Discovery Requests Propounded by SNMP Research International, Inc., dated April 1, 2011, (U.S. Debtors' Motion"), Exhibit "A" to the Affidavit of Catherine Ma, Sworn June 1, 2011 (the "Ma Affidavit"), pp. 3-4, Motion Record of Nortel, ("Nortel Record"), Nortel Record, Tab 2A.
[8] U.S. Debtors' Motion, Exhibit "A" to the Ma Affidavit, pp. 4, 6, Nortel Record, Tab 2A.
[9] U.S. Debtors' Motion, Exhibit "A" to the Ma Affidavit, p. 2, Nortel Record, Tab 2A.

interrogatory and document production demands of the U.S. Debtors in the Chapter 11 Proceedings (the "Production Demands").[10]

13.   The discovery sought in the Production Demands does not attempt to target information or evidence that is required to aid SNMP RI to prove its claims in the Chapter 11 Proceedings.  Rather, SNMP RI makes unrealistically broad requests for, *inter alia*, any and all documents that contain information relating to the use of SNMP RI software in any manner by Nortel and access to the source code for all the software contained in all products sold by Nortel both prior to and after the insolvency proceedings were commenced.

## C.   Effect on Nortel Canada

14.   Due to the integrated nature of Nortel's historical operations, any production that is ordered by the U.S. Bankruptcy Court pursuant to the Production Demands will have significant consequences for Nortel Canada.  In particular, SNMP RI seeks from the U.S. Debtors access to all software source code used in Nortel's products over the last 11 years. This includes access to documents, materials, information and source code in which Nortel Canada has an interest but are in the U.S. Debtors' possession.[11]  The Production Demands accordingly create a risk that the U.S. Debtors will be ordered to disclose or produce information in which Nortel Canada has a proprietary interest.

---

[10] Creditor SNMP Research International, Inc.'s First Set of Interrogatories and Requests for Production of Documents Directed to the Debtors, Exhibit "B" to the Ma Affidavit, Nortel Record, Tab 2B.

[11] Monitor's (I) Statement in Support of the Debtors' Motion for Protective Order Limiting Discovery Requests Propounded by SNMP Research International, Inc., and (II) Request for Join Hearing on Such Motion, dated April 1, 2011, (the "Monitor's Statement"), Exhibit "C" to the Ma Affidavit, p. 3, Nortel Record, Tab 2C.

15.     SNMP RI has neither attempted to serve Nortel Canada with the Production Demands nor has it sought permission or directions from this Honourable Court to make such demands in Canada.[12]

16.     While the Chapter 11 Proceedings and the CCAA Proceedings are distinct from one another, rules governing discovery in the U.S. do not prohibit SNMP RI from using information or evidence obtained by way of discovery of the U.S. Debtors in another proceeding, such as the CCAA Proceedings, nor from commencing another proceeding, such as against Nortel Canada, that is based on the discovered information or evidence.

## PART III - ISSUES AND THE LAW

### A.     Issues

17.     Should this Court take measures to protect the confidentiality of, and Nortel Canada's interest in, such documents, materials, information and source code on which SNMP RI has sought discovery only in the U.S. and only from the U.S. Debtors? and

18.     Should this Court order that any information that is proprietary to Nortel Canada or in which Nortel Canada has an interest that is produced in the Chapter 11 Proceedings pursuant to SNMP RI's Production Demands cannot be used in any claim or action against the Applicants without leave of this Court?

---

[12] The Monitor's Statement, Exhibit "C" to the Ma Affidavit, p. 2, Nortel Record, Tab 2C.

**B.    The Law**

19.    There is a public interest is ensuring that Nortel Canada's interest in certain confidential information is not disclosed in the instant circumstances.

20.    Canadian courts have long acknowledged the importance of maintaining the confidentiality of information within the litigation process.[13] There is a clear commercial and principled interest in ensuring that a Canadian party to a Canadian litigation is not required to disclose confidential information pursuant to a discovery order made against a non-Canadian party by a foreign court.

21.    SNMP RI has not sought any relief against Nortel Canada in the U.S. Bankruptcy Court and has not sought discovery similar to the Production Demands in the CCAA Proceedings. The Production Demands, if granted, may prejudice Nortel Canada's interest in certain documents, materials, information and source code. In these circumstances, there is a principled reason for maintaining the confidentiality of the information and evidence in which Nortel Canada has an interest that SNMP RI seeks to discover in the U.S.

22.    Additionally, the law of Ontario is clear that information or evidence obtained through the discovery process in one proceeding cannot be used for purposes outside of that proceeding; this is the "deemed undertaking rule". Rule 30.1.01(3) of the Rules of Civil Procedure states:

> All parties and their lawyers are deemed to undertake not to use evidence or information to which this Rule applies for any

---

[13] *Goodman v. Rossi* (1995), 24. O.R. (3d) 359.

purposes other than those of the proceeding in which the evidence was obtained.[34]

23.    Rule 30.1.01(1) provides that:

This Rule applies to,

(a) evidence obtained under,

(i) Rule 30 (documentary discovery),

(ii) Rule 31 (examination for discovery),

(iii) Rule 32 (inspection of property),

(iv) Rule 33 (medical examination),

(v) Rule 35 (examination for discovery by written questions); and

(b) information obtained from evidence referred to in clause (a).

24.    The Production Demands are by way of interrogotaries (written questions) and requests for documents (documentary discovery). The discovery being pursued by SNMP RI against the U.S. Debtors in the Chapter 11 Proceedings is therefore of the same kind that triggers the deemed undertaking rule in Ontario. In such circumstances, the deemend undertaking rule should apply to evidence or information arising from any discovery of the U.S. Debtors that may be ordered by the U.S. Bankruptcy Court.

25.    The fact that SNMP RI is pursuing discovery of the U.S. Debtors in the U.S. does not negate the applicability of Rule 30.1.01. Indeed, there is no dispute that it is for a U.S. Court to determine all matters relating to discovery issues in a related U.S. proceeding and solely for the Canadian Court to determine matters arising out of and related to the Canadian litigation.

---

[34] Ontario, *Rules of Civil Procedure* R.R.O. 1990, Reg. 194

26.     The facts at hand do not allow for the exemption to the deemed undertaking rule that
is contemplated by Rule 30.1.01(8), which states:

> If satisfied that the interest of justice outweighs any prejudice that
> would result to a party who disclosed evidence, the court may
> order that subrule (3) does not apply to the evidence or to
> information obtained from it, and may impose such terms and give
> such directions as are just.

27.     Much of the documents, materials, information and software source code in the U.S.
Debtors' possession that is sought to be discovered by SNMP RI are confidential intellectual
property in which Nortel Canada likely has a proprietary interest.  In the absence of an order
or rules preventing SNMP RI from reviewing any such information or evidence, a discovery
order pursuant to the Production Demands risks seriously prejudicing Nortel Canada's rights.
This Court should not permit SNMP RI to use the claims process in the Chapter 11
Proceedings to review confidential information in which Nortel Canada has an interest in a
manner that could harm the Applicants or in a manner that it would not be able to use such
information and evidence had it been discovered in a similar fashion in Canadian proceedings.

## PART IV - ORDER REQUESTED

28.     The Applicants seek for this Court to declare:

        (a)     that SNMP RI has not made any discovery or production requests of
                Nortel Canada or in this Honourable Court; and

- 10 -

(b)    that Nortel Canada will suffer prejudice in the event of disclosure by the U.S.
Debtors of any documents, materials, information and source code of which Nortel
Canada has ownership or in which it has a proprietary interest.

29.    In the alternative, and in the event that the U.S. Debtors are ordered by the U.S.
Bankruptcy Court to disclose information that may include documents, materials, information
and source code in which Nortel Canada has an interest, Nortel Canada seeks for this
Honourable Court to order that Nortel Canada will be granted the protections of the deemed
undertaking rule as regards any documents, materials, information and source code related to
Nortel Canada that is discovered pursuant to the Production Demands in the U.S..

ALL OF WHICH IS RESPECTFULLY SUBMITTED this 1ᵗᵉ day of June, 2011.

Norton Rose OR LLP

Lawyer for the Applicants

# TAB A

- 11 -

## SCHEDULE "A"
## LIST OF AUTHORITIES

1.    *Goodman v. Rossi* (1995), 24. O.R. (3d) 359

Page 1

1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

▷
1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, **24** O.R. (**3d**) **359**, 83 O.A.C. 38, 125 D.L.R. (4th) 613

### Goodman v. Rossi

#### IRENE **GOODMAN** v. DAVID J. **ROSSI**

Ontario Court of Appeal

Morden A.C.J.O., Osborne and Laskin JJ.A.

Heard: April 13, 1995
Judgment: June 27, 1995
Docket: Doc. CA C21173

© Thomson Reuters Canada Limited or its Licensors (excluding individual court documents). All rights reserved.

Counsel: *J. David Sloan*, for appellant (defendant).

*William R. Maxwell, Q.C.*, for respondent (plaintiff).

Subject: Civil Practice and Procedure; Labour and Employment

Practice — Discovery — Discovery of documents.

Discovery — Discovery of documents — Confidentiality — Use of documents produced — Collateral or ulterior purposes — Implied undertaking — No implied undertaking in Ontario not to disclose discovery information — Appeal allowed.

Discovery — Introductory — Use of evidence for collateral or ulterior purposes — No implied undertaking in Ontario not to disclose discovery information — Appeal allowed.

The plaintiff was employed by NRS. Her employment was terminated, and she sued NRS for wrongful dismissal. NRS produced documents, including a report completed by the defendant to the Ministry of Consumer and Commercial Relations. The report stated that the plaintiff had been terminated for cause and that "[h]er ethical conduct was questionable in many instances." Upon reading the report, the plaintiff sued the defendant for defamation. The defendant moved to have the action dismissed on the ground that the document only came to the plaintiff's attention because of its production in the action against NRS. The defendant contended that the "implied undertaking rule" restricted the use of the document to the NRS action. The motions court judge refused to dismiss the action. He concluded that there was an implied undertaking in Ontario but granted the plaintiff relief from the undertaking, nunc pro tunc. Relief from the undertaking was granted on the basis that, if

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

unchallenged, the report could seriously prejudice the plaintiff's ability to be licensed as a real estate agent or broker. The defendant appealed to Divisional Court. A majority dismissed the appeal and held that there was no implied undertaking. The defendant appealed to the Court of Appeal.

**Held:**

The appeal was allowed.

The absence of a rule of practice did not stand in the way of recognizing the implied undertaking. Policy considerations, uniformity in Canada, and earlier precedent and policy supported a general implied undertaking rule capable of giving rise to a contempt of court order. Relief from the application of the rule could be dealt with in the form of a motion to the court by the party who obtained the document on discovery or the consent of the party from whom the document was obtained.

The appropriate test for granting relief from the application of the rule tolerated some injustice to the discovered party if that injustice was outweighed by a greater injustice to the discovering party by not permitting any use of the discovered documents. Here, the report that was filed with the Ministry by the defendant was not published, access was severely restricted, and the filing of the report with the Ministry could not result in injury to the plaintiff's reputation. The plaintiff could challenge the accuracy of the report in the wrongful dismissal suit or directly with the Ministry. Injustice to the defendant in allowing use of the document outweighed any injustice to the plaintiff. Relief from the implied undertaking was refused and the defamation action was stayed.

The court made the following obiter suggestions with respect to the scope of the implied undertaking rule that could be incorporated into the Ontario, *Rules of Civil Procedure*: (1) the undertaking ceased to apply once the document had been read out in open court, unless the court otherwise ordered; (2) the rule covered only information the receiving party could not have otherwise obtained by legitimate means; and (3) the obligation was in favour of the producing party only, not third parties. Other considerations were whether the document could be used for impeachment purposes and whether the rule should cover oral evidence given on examination for discovery.

**Cases considered:**

*Agnew v. Dow Chemical Co.* (1991), 1 C.P.C. (3d) 264, 117 N.B.R. (2d) 258, 295 A.P.R. 258 (Q.B.) — *referred to*

*Alterskye v. Scott*, [1948] 1 All E.R. 469 (Ch.D.) — *considered*

*Blake v. Governor & Co. of Adventurers of England Trading into Hudson's Bay* (1987), 22 C.P.C. (2d) 95, ( sub nom. *Blake v. Hudson's Bay Co.)* [1988] 1 W.W.R. 176 (Man. Q.B.) — *referred to*

*Carbone v. De La Rocha* (1993), 13 O.R. (3d) 355 (Gen. Div.) — *considered*

*Control Data Canada Ltd. v. Senstar Corp.*, [1988] 3 F.C. 439, 25 C.P.R. (3d) 330 (T.D.) — *referred to*

*Crest Homes plc v. Marks*, [1987] 2 All E.R. 1074 (H.L.) — *considered*

*Du Pont Canada Inc. v. 277033 Ontario Ltd.* (November 25, 1994), Doc. Hamilton 25220/91, Philp J. (Ont. Gen. Div.) — *referred to*

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

*Ed Miller Sales & Rentals Ltd. v. Caterpillar Tractor Co.* (1986), 43 Alta. L.R. (2d) 299, 72 A.R. 354, 14 C.P.R. (3d) 110 (Q.B.) — *referred to*

*F. (D.) v. Gupta* (October 13, 1993), (Man. Master) [unreported] — *referred to*

*Hamilton v. Alberta (Minister of Public Works, Supply & Services)*, 80 Alta. L.R. (2d) 169, [1991] 5 W.W.R. 232, 118 A.R. 267 (Q.B.) — *referred to*

*Hedley v. Air Canada* (1994), 23 C.P.C. (3d) 352 (Ont. Gen. Div.) — *referred to*

*Hill v. Church of Scientology of Toronto* (1992), 7 O.R. (3d) 489 (Gen. Div.) [affirmed (1994), 20 C.C.L.T. (2d) 129, 18 O.R. (3d) 385, 114 D.L.R. (4th) 1, 71 O.A.C. 161 (C.A.), affirmed (1995), 25 C.C.L.T. (2d) 89, 184 N.R. 1, 126 D.L.R. (4th) 129 (S.C.C.)] — *referred to*

*Home Office v. Harman*, [1982] 1 All E.R. 532 (H.L.) — *considered*

*Hopkinson v. Burghley (Lord)* (1867), 2 Ch. App. 447 (L.JJ.) — *referred to*

*Hunt v. T & N plc*, 34 C.P.C. (3d) 133, 4 B.C.L.R. (3d) 110, [1995] 5 W.W.R. 518 (C.A.) — *applied*

*Jansen v. Rickardson Greenshields of Canada* (May 10, 1994), Doc. 92-CU-53654, Somers J. (Ont. Gen. Div.) — *referred to*

*Kyuquot Logging Ltd. v. British Columbia Forest Products Ltd.*, 15 C.P.C. (2d) 52, 5 B.C.L.R. (2d) 1, [1986] 5 W.W.R. 481, 30 D.L.R. (4th) 65, 12 C.P.R. (3d) 347 (C.A.) — *not followed*

*Lac Minerals Ltd. v. New Cinch Uranium Ltd.* (1985), 48 C.P.C. 199, 50 O.R. (2d) 260, 17 D.L.R. (4th) 745 (H.C.) — *applied*

*Laxton Holdings Ltd. v. Madill*, 18 C.P.C. (2d) 117, [1987] 3 W.W.R. 570, 26 C.C.L.I. 121, (sub nom. *Laxton Holdings Ltd. v. Non-Marine Underwriters*) 56 Sask. R. 152 (C.A.) — *referred to*

*Lindsey v. Le Sueur* (1913), 29 O.L.R. 648, 15 D.L.R. 809 (C.A.) — *considered*

*Lubrizol Corp. v. Imperial Oil Ltd.* (1990), [1991] 1 F.C. 325, 33 C.P.R. (3d) 49, 39 F.T.R. 43 (T.D.) [affirmed (1990), 41 F.T.R. 234 (T.D.)] — *referred to*

*Madeleine Mines Ltd. v. New Golden Sceptre Minerals Ltd.* (March 4, 1994), Doc. B 101/93, Farley J. (Ont. Gen. Div. [Commercial List]), 5 W.D.C.P. (2d) 190referred to

*Marcel v. Commissioner of Police of the Metropolis*, [1992] Ch. 225, [1992] 1 All E.R. 72 (C.A.) — *referred to*

*McKinnon v. Gillard (No. 1)* (1907), 9 O.W.R. 77 (H.C.) — *referred to*

*National Gypsum Co. v. Dorrell* (1989), 34 C.P.C. (2d) 1, 68 O.R. (2d) 689, 25 C.P.R. (3d) 15 (H.C.) — *referred to*

*New Augarita Porcupine Mines Ltd. v. Gray* (1952), [1953] O.W.N. 24 (H.C.) — *referred to*

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Page 4
1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

*Prudential Assurance Co. v. Fountain Page Ltd.*, [1991] 1 W.L.R. 756, [1991] 3 All E.R. 878 (Q.B.) — considered

*R. v. ICHI Canada Ltd., (sub nom. Canada v. ICHI Canada Ltd.)* [1992] 1 F.C. 571, [1991] 2 C.T.C. 230, 40 C.P.R. (3d) 119, 49 F.T.R. 254 — referred to

*Ray v. Port Arthur, Duluth & Western Railway* (1903), 2 O.W.R. 345 (C.A.) — considered

*Reichmann v. Toronto Life Publishing Co.* (1988), 28 C.P.C. (2d) 11 (Ont. H.C.) [leave to appeal to Ont. Div. Ct. refused (1988), 29 C.P.C. (2d) 66 (Ont. H.C.)] — referred to

*Reynolds v. Godlee* (1858), 4 K. & J. 88, 70 E.R. 37 — considered

*Riddick v. Thames Board Mills Ltd.*, [1977] Q.B. 881, [1977] 3 W.L.R. 63, [1977] 3 All E.R. 677 (C.A.) — referred to

*Rivait v. Gaudry* (1993), 19 C.P.C. (3d) 289, 15 O.R. (3d) 159, 19 C.C.L.I. (2d) 239 (Gen. Div.), reversed (1994), 18 O.R. (3d) 548 (Div. Ct.) — referred to

*Rivait v. Gaudry* (1994), 18 O.R. (3d) 548 (Div. Ct.) — referred to

*Rocca Enterprises Ltd. v. University Press of New Brunswick Ltd.* (1989), 103 N.B.R. (2d) 224, 259 A.P.R. 224 (Q.B.) — referred to

*Thompson (Guardian ad litem of) v. Byrne* (1992), 113 N.S.R. (2d) 149, 309 A.P.R. 149 (T.D.) — referred to

*Walker v. York Finch Hospital* (1992), 15 C.P.C. (3d) 23 (Ont. Gen. Div.) [additional reasons at (1993), 15 C.P.C. (3d) 23 at 29 (Ont. Gen. Div.)] — referred to

*Williams v. Prince of Wales Life, etc., Co.* (1857), 23 Beav. 338, 3 Jur. (N.S.) 55, 53 E.R. 133 — considered

*Wirth Ltd. v. Acadia Pipe & Supply Corp.* (1991), 50 C.P.C. (2d) 273, 79 Alta. L.R. (2d) 345, 113 A.R. 298 (Q.B.) — referred to

*755568 Ontario Ltd. v. Linchris Homes Ltd.* (1990), 46 C.P.C. (2d) 157, 1 O.R. (3d) 649 (Gen. Div.) — referred to

**Statutes considered:**

Ontario Judicature Act, 1881, The, 44 Vict., c. 5.

Real Estate and Business Brokers Act, R.S.O. 1990, c. R.4 —

s. 16

**Rules considered:**

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Page 5

1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

Ontario, Rules of Civil Procedure —

R. 30

r. 30.09

r. 31.11(7)

r. 31.11(8)

r. 51.06(1)

Ontario, Rules of Practice (1881) —

R. 222

Ontario, Rules of Practice (1983) —

R. 347

United Kingdom, Rules of the Supreme Court 1965 —

O. 24, r. 1

O. 24, r. 2

O. 24, r. 14A [en. R.S.C. (Amendment) 1987, (S.I. 1987 No. 1423)]

Appeal by defendant from order of O'Driscoll, O'Leary and MoldaverJJ. dated November 29, 1994, reported 34 C.P.C. (3d) 18, 7 C.C.E.L. (2d) 188, 21 O.R. (3d) 112, 75 O.A.C. 331, 120 D.L.R. (4th) 557 (Div. Ct.), concluding that there is no implied undertaking rule in Ontario and dismissing, by majority, appeal by defendant from judgment of BorinsJ. dismissing motion for order dismissing action.

**The judgment of the court was delivered by *Morden A.C.J.O.*:**

1 This appeal from an order of the Divisional Court is concerned with the question whether a party who obtains a document from the other party under the discovery process in the *Rules of Civil Procedure* is subject to an implied undertaking not to use the document for a purpose other than that of the proceeding in which the document was obtained, except with the consent of the other party or with the leave of the court. Mr. Justice O'Leary, on behalf of himself and Mr. Justice O'Driscoll in the Divisional Court, concluded that there was no implied undertaking rule in Ontario [reported at (1994), 34 C.P.C. (3d) 18 (Ont. Div. Ct.)]. Mr. Justice Moldaver dissented on this point, holding that there is an implied undertaking in particular terms, which he formulated.

**The Facts and the Course of this Proceeding in the Courts Below**

2 The relevant facts are succinctly set forth in the reasons of Mr. Justice O'Leary in the Divisional Court as follows [at pp. 24-25]:

The plaintiff, Irene Goodman, was employed as a real estate agent by NRS Royal Realty Inc. The defendant, David J. Rossi, was the president of NRS Royal Realty Inc. Goodman's employment was terminated by her

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Page 6
1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

employer. She sued NRS Royal Realty Inc. for wrongful dismissal. Royal Realty produced its documents. One of the documents it produced was a report made by Rossi to the Ministry of Consumer and Commercial Relations. The report was required by s. 21(1) of the *Real Estate and Business Brokers Act*, R.S.O. 1990, c. R. 4 and Reg. 986, s. 13(11). The report was made on a form provided by the Ministry. The form is entitled "Notice of Employee Change." The form states in part "Note: A report on the conduct of the above named employee while in your employ should be filed either on the reverse side of this form, or by attaching a separate letter to this form." On the reverse side of the form under the words of the form reading "Employers Report on Employee's conduct while in employ," Rossi wrote the following:

> On November 18th, 1988, I terminated Irene Goodman with cause. Her conduct while in our employ was less than acceptable. Her ethical conduct was questionable in many instances. Fortunately, however, because of close supervision she was made aware of proper ethical conduct which in itself assisted her in keeping out of trouble and offered her the luxury of enhancing her income.
>
> Ms. Goodman was a 'top earner' and I regret having to report negative behaviour, however, when the public interest is at risk, I feel it my duty to do so.
>
> I have never reported anyone negatively before. I wish this were not necessary.

3 Ms Goodman commenced this action against Mr. Rossi for defamation based on this report. Mr. Rossi, some time after the pleadings were closed, moved for summary judgment dismissing the action and, in the alternative, for an order permanently staying the action on the ground that the claim was based on evidence obtained by the plaintiff in the unjust dismissal action. Ms Goodman brought a cross-motion for an order "giving leave to the plaintiff, *nunc pro tunc*, to commence the pending action for defamation against David J. Rossi."

4 The two motions were heard by Mr. Justice Borins. He dismissed the defendant's motion and, on the plaintiff's motion, made an order that the plaintiff be granted leave, nunc pro tunc, to proceed with the action. In his brief endorsed reasons he said:

> I accept that there is a line of authority at first instance in this province which confirms the existence of the implied undertaking in Ontario ... However, the authorities also recognize a discretion in the court to be exercised in appropriate circumstances to grant leave to a party to make use of information obtained as a result of the discovery process ... Assuming that the report contains information about the plaintiff which is untrue, in my view the fact that this information is in the possession of the authority to which the plaintiff is required to apply to be licensed as a real estate agent or broker [means] that there is a reasonable risk of prejudice to the plaintiff in terms of her ability to be licensed. She could sustain a real injustice if she were prevented from having the court determine the accuracy of the report written by Mr. Rossi because without this opportunity for the foreseeable future there would be false information in the plaintiff's file at the Ministry which could have a serious effect on her ability to be licensed. Therefore, in my view in the circumstances of this case it is appropriate to grant relief from the undertaking to the plaintiff.

5 The defendant Rossi appealed, with leave granted by Boland J., to the Divisional Court. In her reasons Boland J. said:

> ... I think it is desirable leave be granted to determine the parameters of discretion to be exercised when granting leave to use documents or discovery information obtained in an earlier action.

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Page 7
1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th)
613

6 Before the Divisional Court the issues were expanded beyond what is indicated in these reasons to include
the basic question set forth in the opening sentence of O'Leary J.'s reasons [at p. 24]:

> Is there in Ontario a rule of law that imposes an implied undertaking to the court by a party to whom in-
> formation or documents are provided in an examination for discovery or through production of documents,
> that he will not use the information or the documents for any collateral or ulterior purpose, and that any
> such use is a contempt of court?

7 As I have said, in O'Leary J.'s opinion, which was concurred in by O'Driscoll J., there was no such rule.
Moldaver J. dissented on this question. He held that there was such a rule, which he expressed in the following
terms [at pp. 35-36]:

> Where a party has obtained information by means of court compelled production of documents or discovery,
> which information could not otherwise have been obtained by legitimate means independent of the litigation
> process, the receiving party impliedly undertakes to the court that the private information so obtained will
> not be used, vis-a-vis the producing party, for a purpose outside the scope of the litigation for which the dis-
> closure was made, absent consent of the producing party or with leave of the court; any failure to comply
> with this undertaking shall be a contempt of court.

> This rule shall remain in effect unless and until the private information is revealed in open court.

8 O'Leary J., on behalf of the majority, then dealt with the case as if Rossi had asked "for an order prevent-
ing Goodman from relying on the Notice of Employee Change as the basis for her claim that she was defamed"
[at p. 35]. On this issue, he said [at p. 35]:

> I agree with Borins J. as to why such a request must be denied. The ends of justice require that Goodman be
> allowed to attempt to clear her name with the Ministry of Consumer and Commercial Relations, the author-
> ity which determines her fitness to hold a licence to sell real estate. She must be allowed to contest the
> truthfulness of the report made by Rossi by continuing with her action for defamation.

9 Moldaver J., at the conclusion of his reasons, came to the same conclusion on this question. He ap-
proached the case "as if Ms. Goodman had sought leave of the court to use the information con tained within the
report to bring a defamation suit against Mr. Rossi" [at p. 46].

### The Divisional Court's Reasons on the Implied Undertaking Issue

10 O'Leary J. was of the view that, as a matter of authoritative precedent, there was no proper basis for con-
cluding that the implied undertaking rule was part of the law of Ontario. He noted that in *Lac Minerals Ltd. v.
New Cinch Uranium Ltd.* (1985), 50 O.R. (2d) 260, at p. 265 (H.C.), Craig J. expressed his opinion that "the 'im-
plied undertaking' rule is part of the law of Ontario" [at p. 28] but said that it was unclear to him "just what led
Craig J. to conclude it was ... [part of] the law of Ontario" [at p. 26]. He mentioned that counsel for Rossi
"frankly conceded that the existence in Ontario of the implied undertaking rule came as news to the Ontario bar
in 1985. They had never heard of it. As already indicated, no such rule can be found in any reported Ontario
case prior to *Lac Minerals* in 1985" [at p. 27].

11 O'Leary J. concluded his review of the authorities as follows [at p. 31]:

> In summary, the rule was first held to be part of the law in Ontario in *Lac Minerals* in 1985, even though

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

prior thereto the rule was unknown to the bar in Ontario and had not been enunciated in any Ontario case. Since *Lac Minerals* several Ontario judges have agreed that the rule exists in Ontario. The validity of the rule has not been passed on by the Divisional Court or the Court of Appeal.

12 Having dealt with what he considered to be the lack of any authoritative basis for the rule in Ontario, O'Leary J. then dealt with the question as a straight matter of policy. He said [at p. 31] that "[t]here is no doubt the court in Ontario can adopt the English rule if there is reason for doing so." He concluded on this that there was no basis for adopting the rule. He said [at p. 32-33]:

Even if the rule were made part of our law, a party could still obtain, in a proper case, a court order permitting some collateral use of information or documents obtained through discovery. If the rule is not part of our law, a party can, in a proper case, obtain an order restricting the use to be made of such documents or information. So the issue is, who should have to seek the court order? In my view, it should be the party who wants to protect confidentiality. He knows the nature of the information or documents he has to disclose. He can foresee how a breach of confidence can cause him harm. He can, at least initially, best frame the terms of the order needed for his protection.

13 O'Leary J.'s general conclusion was [at pp. 34-35]:

The implied undertaking rule was not part of the law of Ontario prior to 1985 and should not be adopted. A party who wants to protect information to be disclosed on discovery from use outside the action, must obtain from the other parties to the action an express undertaking of confidentiality or apply to the court for an order providing that protection to his privacy.

14 In his dissenting reasons on this point Moldaver J. concluded on policy considerations that there should be an implied undertaking rule in Ontario in the particular form which I have quoted.

### Should this Court Recognize an Implied Undertaking Rule Relating to the Use of Documents Obtained on Discovery?

15 I say at the outset that, because this is a case concerned with a document obtained on discovery, and not information obtained on examination for discovery, I shall confine this discussion to documents obtained on discovery. It may be that information obtained on examination for discovery does not raise exactly the same issues. I shall discuss it briefly later.

16 At the beginning of my consideration of this question I acknowledge my particular indebtedness to the reasons of both O'Leary J. and Moldaver J. and, also, to the three sets of reasons given in the British Columbia Court of Appeal in *Kyuquot Logging Ltd. v. British Columbia Forest Products Ltd.* (1986), 30 D.L.R. (4th) 65, to the unanimous reasons of five judges of the British Columbia Court of Appeal in *Hunt v. T & N plc*, April 11, 1995 [reported at 34 C.P.C. (3d) 133], to the reasons of Reed J. in *R. v. ICHI Canada Ltd.*, (sub nom. *Canada v. Ichi Canada Ltd.)* [1992] 1 F.C. 571 (T.D.), to John B. Laskin's "The Implied Undertaking in Ontario" (1989-90), 11 Adv. Q. 298, updated and expanded in "The Implied Undertaking," a paper delivered to the Canadian Bar Association-Ontario Continuing Legal Education programme on October 19, 1991 [*Privilege and Confidential Information in Litigation: Current Developments and Future Trends* (Canadian Bar Association — Ontario)], and to Garry D. Watson and Michael McGowan's "Annual Survey of Recent Developments in Civil Procedure" in *Ontario Civil Practice 1992-93*, pp. cvi-cxi. These judgments and articles, or parts of them, discuss the history of the implied undertaking and canvass the competing legal and policy considerations bearing

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Page 9
1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

on the question. I mention this to indicate that, although I have come down on one side of the question, I am mindful of the difficulties involved on each side.

17 I have concluded, on the basis of precedent and policy, that a particular version of the implied undertaking rule should be recognized in Ontario and I shall state my reasons for this conclusion in relatively brief compass.

18 As far as precedent is concerned, it can be discerned that in the latter part of the 19th century in England, courts had recognized a general principle that a party obtaining documents on discovery had an obligation not to make them public or, more specifically, use them otherwise than for the purpose of the proceeding in which they were obtained. In *Williams v. Prince of Wales Life, etc., Co.* (1857), 23 Beav. 338, Sir J. Romilly M.R. said, at p. 340 [p. 133 E.R.]:

> On the other hand, it is not the right of a Plaintiff, who has obtained access to the Defendant's papers, to make them public. The Court has granted injunctions to prevent it, and I myself have done so, to prevent a Plaintiff, a merchant, from making public information obtained under the order for production.

In the report of these reasons in 3 Jur. (N.S.) 55 the second sentence in this passage is reported more fully as follows, at p. 55:

> ... I had occasion not long since to grant an injunction of this nature, where a person *was using such information otherwise than for the purposes of the suit.* [Emphasis added.]

19 In *Reynolds v. Godlee* (1858), 4 K. & J. 88, the plaintiff had obtained an order for production of a document by the defendant Head. The defendant Godlee, who did not stand in the same position in the proceeding as Head, moved for an order that the plaintiff produce a copy of the document. At p. 92 [K. & J., p. 39 E.R.] Vice-Chancellor Sir W. Page Wood stated "the rule" governing this situation as follows:

> If, on the other hand, the rule be this, that, where documents have been produced in obedience to an order of this Court, the Court has a right to say to the person who has obtained their production: "Those documents shall never be used by you except under the authority of the Court," the course of proceeding would be intelligible and safe, and no inconvenience would ensue to either party.

20 The decisions, and others, are collected on pp. 238-239 of Bray, *The Principles and Practices of Discovery* (1885), a frequently quoted English text, on the question "as to the obligation of the inspecting party not to divulge the contents of the documents to other persons."

21 In another English text, Hare, *A Treatise on the Discovery of Evidence*, 2d ed. (1876), it is said in a footnote on p. 268, relating to a party's right to inspect and copy documents produced for discovery: "But no extraneous use may be made of the documents inspected." The *Williams* decision and *Hopkinson v. Burghley (Lord)* (1867), 2 Ch. App. 447 (L. JJ.), are cited for this proposition.

22 Although there were no Ontario decisions on the question in the 19th century, I note that when *The Ontario Judicature Act, 1881* 44 Vict. c. 5, was enacted, R. 222, which was in a schedule to the Act, provided for the production of documents. In Thomas Wardlaw Taylor and John S. Ewart's *The Judicature Act and Rules, 1881, and other Statutes and Orders relating to the Practice of the Supreme Court of Judicature for Ontario* (Scarborough, Ont.: Carswell, 1881), part of the annotation relating to this rule reveal [at p. 283]:

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Page 10
1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

... generally where a party obtains an order for production and inspection of documents he does so upon an implied understanding not to make public any information so obtained, or to communicate such information to persons not parties to the suit.

*Williams v. Prince of Wales Life, etc., Co.* [*Williams v. Prince of Wales Assurance Company*] and *Reynolds v. Godlee*, among other decisions, are cited in support of this statement. Clearly, the authors thought that there was good reason to think that the proposition was, as a matter of principle, applicable to discovery of documents in Ontario.

23 Up to this point the rationale of the principle had not been articulated, nor had the enforcement mechanism of an implied undertaking to the court been mentioned in any case. I will deal with the rationale of the principle more fully later in these reasons but mention now, very briefly, that the principle is based on recognition of the general right of privacy which a person has with respect to his or her documents. The discovery process represents an intrusion on this right under the compulsory processes of the court. The necessary corollary is that this intrusion should not be allowed for any purpose other than that of securing justice in the proceeding in which the discovery takes place.

24 A wider general principle has been recognized by the courts in other contexts. For example, in *Lindsey v. Le Sueur* (1913), 29 O.L.R. 648 (C.A.), at p. 655, Meredith C.J.O. said that because a party had been "given access to and the use of the documents for a particular purpose ... there is necessarily an implication that they are not to be used for any other purpose." See also *Marcel v. Commissioner of Police of the Metropolis*, [1992] Ch. 225 (C.A.), at p. 237. In "Keeping Secrets, Civilly Speaking" (1991-92) 13 Adv. Q. 334, at p. 341, David Vaver has observed that "[t]he implied undertaking on discovery to use any documents (and perhaps even testimony) only in the proceedings to which discovery relates echoes the principle expressed in *Lindsey v. Le Sueur*."

25 The implied undertaking aspect of the rule in question, which is important because it is the basis of the potential contempt sanction for breach of the rule, was first mentioned in the English decision of *Alterskye v. Scott*, [1948] 1 All E.R. 469 (Ch. D.). At p. 470, Jenkins J. referred to "the proposition, which is not disputed, in regard to the implied undertaking, under which a party obtaining discovery is, not to use documents for any collateral or ulterior purpose."

26 To continue with the treatment of the question in Ontario, I refer to W.B. Williston and R.J. Rolls, *The Law of Civil Procedure* (Toronto: Butterworths 1970), at p. 941:

There is an implied undertaking by a party to whom documents are produced that he will not use them for a collateral or ulterior purpose; any such use of the documents is a contempt of court.

*Alterskye v. Scott*, supra, is cited as the authority for this statement.

27 Finally, in Holmested and Gale's *The Judicature Act of Ontario and Rules of Practice*, vol. 2 (Scarborough, Ont.: Carswell, 1983), the following appears at p. 1813 [looseleaf] as one of the annotations to R. 347, the immediate predecessor to the current rules relating to discovery of documents contained in R. 30:

Where a party is compelled to produce a document which would otherwise have remained confidential he is entitled to insist that it be used for the purposes of that action only and is entitled to the protection of the court against any other use.

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Page 11
1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

The English Court of Appeal decision in *Riddick v. Thames Board Mills Ltd.*, [1977] 3 W.L.R. 63, is cited for this proposition.

28 At p. 1780 of Holmested and Gale the following appears:

> Documents disclosed on discovery may only be used in the action in which they are disclosed: *Distillers Co. (Biochemicals) v. Times Newspapers Ltd.*, [1975] 1 All E.R. 41, granting an injunction restraining the use of the documents.

29 The rationale for the implied undertaking rule is compendiously stated in Matthews and Malek's *Discovery* (1992), at p. 253:

> The primary rationale for the imposition of the implied undertaking is the protection of privacy. Discovery is an invasion of the right of the individual to keep his own documents to himself. It is a matter of public interest to safeguard that right. The purpose of the undertaking is to protect, so far as is consistent with the proper conduct of the action, the confidentiality of a party's documents. It is in general wrong that one who is compelled by law to produce documents for the purpose of particular proceedings should be in peril of having those documents used by the other party for some purpose other than the purpose of the particular legal proceedings and, in particular, that they should be made available to third parties who might use them to the detriment of the party who has produced them on discovery. A further rationale is the promotion of full discovery, as without such an undertaking the fear of collateral use may in some cases operate as a disincentive to proper discovery. The interests of proper administration of justice require that there should be no disincentive to full and frank discovery.

30 As far as the state of the law on this issue at the time of Craig J.'s decision in *Lac Minerals* is concerned, I do not, with respect, think that it can be said that this decision imported the implied undertaking rule wholesale into Ontario or that the decision was contrary to a generally held opinion of the litigation bar. In this respect Holmes's definition of law as a prediction of what the courts will do, in fact, is apposite. See "The Path of the Law" (1896-97) 10 Harv. L. Rev. 457, at p. 461.

31 The absence of an Ontario decision on the point does not indicate that the law was the contrary to that declared in *Lac Minerals*, that is, that a party was free to make any use that he or she saw fit with documents obtained on discovery. There was no reported decision to this effect and, to the extent that the question may have been considered directly, I would think that there would have been an instinctive reaction against such a use based on the general principles to which I have referred. In this regard, it is instructive to read the views expressed in the Martin Report with respect to the developing field of discovery in criminal cases, on the importance of privacy interests, and of preventing the misuse of materials disclosed by the prosecution (Report of the Attorney General's Advisory Committee on Charge Screening, Disclosure, and Resolution Discussions (Toronto: Ministry of the Attorney General, 1993) (the Hon. G. Arthur Martin, Chair), at pp. 175 and 179-183).

32 Further, the legal materials to which I have referred (Taylor and Ewart's *The Judicature Act and Rules, 1881* (1881), Williston and Rolls, *The Law of Civil Procedure* (1970), and Holmested and Gale's *The Judicature Act of Ontario and Rules of Practice* (1983)) all are to the effect that there is an obligation not to make collateral use of documents obtained on discovery and, also, as far as the latter two works are concerned, an implied undertaking to support the enforcement of this obligation. While these works are not, in themselves, law, they reflect the views of eminent and experienced lawyers and should be given careful consideration in determining what a court, in fact, should and would do in deciding the question we are considering.

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Page 12
1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

33 I have had some concern about recognizing the implied undertaking part of the rule, which, as I have said, affords the basis for the contempt sanction. This concern is based on the fact that the underlying theory, indicated in some of the English cases, is that the undertaking to the court is implied as a condition of obtaining an *order* for discovery of documents (see, e.g., *Alterskye v. Scott*, supra, at p. 470, and Esson J.A. in *Kyuquot Logging*, supra, at pp. 71-75). Discovery of documents in Ontario since at least 1881 has been virtually automatic. In 1881 a praecipe order, obtained under the rule, triggered the obligation to grant discovery. Since 1913 that compulsion on a party to grant discovery has been imposed directly by a notice under the rules of court without the necessity of a court order.

34 I note that in England discovery of documents in an action with pleadings is now generally automatic on the close of pleadings: O.24, r. 1 and 2, of the *Rules of the Supreme Court 1965*.

35 Having considered the matter, I do not think that the absence of an order in our practice stands in the way of recognizing the implied undertaking. The compulsion to disclose and produce imposed by the rule of court is virtually identical to that imposed by an order of the court. In this regard I refer to *Prudential Assurance Co. v. Fountain Page Ltd.*, [1991] 1 W.L.R. 756 (Q.B.), at pp. 764 — 765, where Hobhouse J. said with regard to the implied undertaking:

> This undertaking is implied whether the court expressly requires it or not. The expression of the obligation as an implied undertaking given to the court derives from the historical origin of the principle. *It is now in reality a legal obligation which arises by operation of law by virtue of the circumstances under which the relevant person obtained the documents or information.* However treating it as having the character of an implied undertaking continues to serve a useful purpose in that it confirms that the obligation is one which is owed to the court for the benefit of the parties, not one which is owed simply to the parties; likewise, it is an obligation which the court has the right to control and can modify or release a party from. It is an obligation which arises from legal process and therefore is within the control of the court, gives rise to direct sanctions which the court may impose (viz. contempt of court) and can be relieved or modified by an order of the court. It is thus a formulation of the obligation which has merit and convenience and enables it to be treated flexibly having regard to circumstances of any particular case. ...

> The rationale basis for the rule is that where one party compels another, *either by the enforcement of a rule of court or a specific order of the court,* to disclose documents or information whether that other wishes to or not, the party obtaining the disclosure is given this power because the invasion of the other party's rights has to give way to the need to do justice between those parties in the pending litigation between them; it follows from this that the results of such compulsion should likewise be limited to the purpose for which the order was made, namely, the purposes of that litigation then before the court between those parties and not for any other litigation or matter or any collateral purpose: see, for example, *per* Lord Keith of Kinkel in *Home Office v. Harman*, [1983] 1 A.C. 280, 308. [Emphasis added.]

36 I think that there would be a serious gap in the range of possible sanctions for breach of the obligation not to make improper use of documents disclosed on discovery, if it were not associated with an implied undertaking to the court and, therefore, capable of giving rise to a contempt of court order. In many cases, depending on how the issue arises, other remedies may be more appropriate, such as an injunction, before any improper use has occurred, or, as in this case, a motion to stay or dismiss a proceeding. In some cases, however, for example, where the breach has occurred and there is no other appropriate remedy, contempt proceedings may be the only avenue. It might reasonably be expected that knowledge of the possibility of contempt proceedings would deter

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

breaches of the implied undertaking from taking place.

37 With respect to the relevant policy considerations on whether there should be (1) a general implied undertaking rule, with relief from its application being dealt with in the form of a motion to the court by the party who has obtained the document on discovery or the consent of the party from whom the document was obtained, or (2), on the other hand, a general rule that any use may be made of documents obtained on discovery unless the party from whom the discovery was obtained obtains an order prohibiting a particular use, I prefer the first alternative. It is a more logical and efficient rule. Under it there should be fewer motions to the court than under the second alternative. I shall not elaborate on this beyond saying that I agree with the reasons of Moldaver J. in this proceeding, the dissenting reasons of Esson J.A. in *Kyuquot Logging Ltd. v. British Columbia Forest Products Ltd.*, supra, and those of the British Columbia Court of Appeal in *Hunt v. T & N plc*, supra. In *Hunt* the court said [at p. 150 C.P.C.]:

> After much consideration, we prefer the dissenting views of Esson J.A. in *Kyuquot*, mainly because we think it anomalous to recognize a right of privacy and an obligation to use discovery documents only in the proceedings in which they are produced, but then to require the owner to take steps to prevent a breach of that obligation. As has been pointed out in many cases, that party will not always know there is or will be an intention not to honour the obligation. It is true that the obligation is enforceable by injunction, but quia timet applications should be reserved for unusual cases, and not as part of the regular discovery process.

38 The state of the law on this issue in the rest of Canada is a relevant consideration. All jurisdictions that have considered it have decided in favour of the implied undertaking rule: Ontario: *Lac Minerals Ltd. v. New Cinch Uranium Ltd.* (1985), 50 O.R. (2d) 260 (H.C.), *Reichmann v. Toronto Life Publishing Co.* (1988), 28 C.P.C. (2d) 11 (H.C.), *National Gypsum Co. v. Dorrell* (1989), 68 O.R. (2d) 689 (H.C.), *755568 Ontario Ltd. v. Linchris Homes Ltd.* (1990), 1 O.R. (3d) 649 (Gen. Div.), *Hill v. Church of Scientology of Toronto* (1992), 7 O.R. (3d) 489 (Gen. Div.), *Carbone v. De La Roche* (1993), 13 O.R. (3d) 355 (Gen. Div.), *Walker v. York Finch Hospital* (1992), 15 C.P.C. (3d) 23 (Gen. Div.), *Rivait v. Gaudry* (1993), 15 O.R. (3d) 159 (Gen. Div.), reversed (1994), 18 O.R. (3d) 548 (Div. Ct.), but not on existence of implied undertaking rule, *Hedley v. Air Canada* (1994), 23 C.P.C. (3d) 352 (Gen. Div.) , *Madeleine Mines Ltd. v. New Golden Sceptre Minerals Ltd.* (March 4, 1994), Doc. B 101/93, FarleyJ. (Gen. Div. [Commercial List]), *Jansen v. Richardson Greenshields of Canada* (May 10, 1994), Doc. 92-CU-53654, Somers J. (Gen. Div.), and *Du Pont Canada Inc. v. 277083 Ontario Ltd.* (November 25, 1994), Doc. Hamilton 25220/91, Philp J. (Gen. Div.); British Columbia: *Hunt v. T & N plc* (April 11, 1995) (C.A.) [reported 34 C.P.C. (3d) 133]; Alberta: *Ed Miller Sales & Rentals Ltd. v. Caterpillar Tractor Co.* (1986), 43 Alta. L.R. (2d) 299 (Q.B.), *Hamilton v. Alberta (Minister of Public Works, Supply & Services)*, [1991] 5 W.W.R. 232 (Q.B.), *Wirth Ltd. v. Acadia Pipe & Supply Corp.* (1991), 50 C.P.C. (2d) 273 (Q.B.); Saskatchewan: *Laxton Holdings Ltd. v. Madill*, [1987] 3 W.W.R. 570 (C.A.); Manitoba: *Blake v. Governor & Co. of Adventurers of England Trading into Hudson's Bay, (sub nom. Blake v. Hudson's Bay Co.)* [1988] 1 W.W.R. 176 (Q.B.), *F. (D.) v. Gupta*, October 13, 1993 (Man. Q.B., Master); New Brunswick: *Rocca Enterprises Ltd. v. University Press of New Brunswick Ltd.* (1989), 103 N.B.R. (2d) 224 (Q.B.), *Agnew v. Dow Chemical Co.* (1991), 1 C.P.C. (3d) 264 (Q.B.); Nova Scotia: *Thompson (Guardian ad litem of) v. Byrne* (1992), 113 N.S.R. (2d) 149 (T.D.); and Federal Court: *Control Data Canada Ltd. v. Senstar Corp.*, [1988] 3 F.C. 439 (T.D.), *Lubrizol Corp. v. Imperial Oil Ltd.* (1990), [1991] 1 F.C. 325 (T.D.), *R. v. ICHI Canada Ltd.*, (sub nom. *Canada v. Ichi Canada Ltd.*) (1991), [1992] 1 F.C. 571 (T.D.).

39 At the time of the Divisional Court's judgment, the law in British Columbia, declared in *Kyuquot Logging*, was against the implied undertaking, but *Kyuquot* has since been overruled by *Hunt*.

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Page 14
1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

40 Until the decision of the Divisional Court this year in this proceeding, the steady course of decision in Ontario since *Lac Minerals* in 1985 has accepted the existence of the implied undertaking rule and, accordingly, whatever may have been the case before 1985, the reasonable expectations of the bar have been that the obligations of the rule are part of the law.

41 These considerations, uniformity in Canada, and a steady course of decision in this province are factors, in addition to earlier precedent and policy, which support the continued recognition of the rule in Ontario.

42 In arriving at my general conclusion I have not overlooked the state of the law in the United States, which was a factor in both the majority reasons in *Kyuquot* and the majority reasons of the Divisional Court in this proceeding. In this era of international commerce and litigation it is sensible to consider American law. At the risk of oversimplifying the American position, it appears to be quite contrary to that involved in the implied undertaking. In the United States the general rule is that a party obtaining documents through the discovery process has the right to use them for any purpose unless the other party has obtained a protective order with respect to their use. Protective orders, unless consented to, are granted on relatively narrow or specific grounds. See Charles Alan Wright, Arthur R. Miller and Richard L. Marcus, *Federal Practice and Procedure*, vol. 8, 2d ed. (St. Paul, Minn.: West Publishing Co., 1994), at pp. 542 — 556.

43 It appears that our discovery law, as articulated in the cases, has proceeded along lines significantly different from that of the United States — such that the adoption of the American position would involve a fundamental shift from, as opposed to a minor adjustment of, our basic principles. I refer, in this respect, to the quotation from *Hunt v. T & N plc* set forth above. Accordingly, neither principled nor practical considerations suggest to me that we should adopt the United States approach.

44 It is relevant to an examination of the question before us to consider whether the law on this subject may more properly be legislated by the Civil Rules Committee in the form of additions to the *Rules of Civil Procedure* rather than declared by the courts as cases arise. O'Leary J. was of the view that "if the time comes when it appears a rule may be necessary to protect privacy infringed by the discovery process, that rule should be framed by the Rules Committee, not the court" [at p. 33].

45 I think that it is preferable that the rule we are considering be set forth as part of the discovery rules in the *Rules of Civil Procedure* rather than in the case law. This does not mean, however, that I think that the responsible course to take now would be to hold that there is no implied undertaking rule and that there will not be one until the Civil Rules Committee has acted. I say this because, as I have said, the recognition of the implied undertaking rule in Ontario is properly supported on the basis of precedent and policy. Further, as I have noted, it has been steadily recognized in this jurisdiction for the last 10 years. Recognition of the rule by the courts does not, of course, preclude the Civil Rules Committee from legislating on the subject as it sees fit.

46 The advantage of incorporating the law on this subject into the *Rules of Civil Procedure* is that the rules can deal with the subject completely and comprehensively, something that is not really possible or proper within the confines of a single case — and it even can be difficult in a series of cases. A properly drawn rule could meet possible concerns about legislation stultifying the development of the law as new circumstances arise. It could give clear guidance on the nature and scope of the obligation not to make improper use of material obtained on discovery and the exceptions to the rule in the form of relief granted by the court, by conferring discretion on the court, where appropriate, to be exercised having regard to stated factors. See, for example,r. 31.11(7). Further, any identified shortcomings in the rules can be amended more quickly than those in judicial

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Page 15
1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

decisions if the field were left to be entirely occupied by case law.

47 Having indicated my preference that this subject be dealt with by rules, I am, nonetheless, obligated to state my view on the nature and scope of the implied undertaking rule, at least in so far as it relates to this case. The basic question is, what is an "improper" use of documents obtained on discovery? In *Alterskye v. Scott*, supra, at p. 470, there is the much-quoted expression "not to use ... the documents ... for ... any ulterior or collateral" purpose. In *Home Office v. Harman*, [1982] 1 All E.R. 532 (H.L.), at p. 536, Lord Diplock said:

> I take the expression "collateral or ulterior purpose" from the judgment of Jenkins J. in *Alterskye v. Scott*, [1948] 1 All E.R. 469. I do not use it in a pejorative sense, but merely to indicate some purpose different from that which was the only reason why, under a procedure designed to achieve justice in civil actions, she was accorded the advantage, which she would not otherwise have had, of having in her possession copies of other people's documents.

48 Lord Keith, at p. 540, treated the obligation as being "not to make use of the documents for any purpose other than the proper conduct of the litigation in the course of which the order [for discovery] was made."

49 I regard these as being fair statements of the basic obligation. I note that they are in accord with the statement of Sir J. Romilly M.R. in *Williams v. Prince of Wales Life, etc., Co.* (1857), 3 Jur. (N.S.) 55, at p. 55, which I have earlier quoted:

> ... I had occasion ... to grant an injunction of this nature, where a person was using such information otherwise than for the purposes of the suit.

50 Still on the scope of the rule, I shall mention other matters which I do not have to decide for the purpose of this case but which the rules-makers would have to consider. The duration of the obligation under the implied undertaking rule is an important question. In *Home Office v. Harman*, supra, the House of Lords held that it continued after the documents in question had been read out in open court during the trial of an action in which the documents had been obtained on discovery. This decision was overruled by r. 14A of O.24 of the *Rules of the Supreme Court 1965* which was added to the rules in 1987. It reads:

> 14A. Any undertaking, whether express or implied, not to use a document for any purposes other than those of the proceedings in which it is disclosed shall cease to apply to such document after it has been read to or by the Court, or referred to, in open Court, unless the Court for special reasons has otherwise ordered on the application of a party or of the person to whom the document belongs.

Moldaver J., in his reasons in this proceeding, would have incorporated this limitation into his common law rule.

51 Essentially for the reasons of Moldaver J. and the dissenting reasons of Lord Scarman in *Home Office v. Harman*, given on behalf of himself and Lord Simon, I incline to the view that the rule should be so limited. It may be noted that r. 14A has an exception not referred to in Moldaver J.'s proposed rule.

52 Moldaver J. incorporated into his rule two other features that should be considered by the rules-makers: (1) the rule would cover only information that the receiving party could not otherwise have obtained by legitimate means independent of the litigation process and (2) that the obligation would be in favour of the producing party only, not third parties.

53 Also, I think that it would be useful to consider whether the obligation should extend to preventing the

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Page 16
1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

use of material obtained on discovery from being used for impeachment purposes. It could defeat the impeachment process to require the leave of the court before discovered material could be used for this purpose. See John B. Laskin, "The Implied Undertaking," supra, pp. 19 — 21 [in *Privilege and Confidential Information in Litigation*]. See, also, r. 30.09, which enables a privileged document to be used at trial for impeachment without the necessity of obtaining leave.

54 As far as the scope of the rule is concerned there is also the question of what range of pre-trial disclosures should be covered. Within the area of discovery itself, there is the question whether the rule should cover oral evidence given on examination for discovery. This question does not arise in this case and need not, therefore, be decided. Having said this, I must acknowledge that, having regard to the compulsory nature of oral discovery and its impingement on the right of privacy of a party, it is difficult to see why, as a matter of principle, the rule would not apply to this form of discovery. It has been held that the rule does apply to oral discovery evidence (*Reichmann v. Toronto Life Publishing Co.* (1988), 28 C.P.C. (2d) 11 (Ont. H.C.)). In the English text Matthews and Malek, *Discovery* (1992), at p. 312, the opinion is expressed that "[a]lthough there is no reported authority as to whether the implied undertaking on discovery in relation to documents applies to interrogatories, it is submitted that in principle the implied undertaking does extend to interrogatories, as they are a form of discovery, to which answers are given under compulsion and not being provided voluntarily."

55 On the other hand, in Ian Eagles, "Disclosure of Material Obtained on Discovery" (1984) 47 Mod. L. Rev. 284 (an article generally critical of the implied undertaking rule), at p. 301, it is suggested that there may be difficulties in applying the rule to discovery by interrogatories. In *Kyuquot Logging*, Esson J.A., at p. 69, refrained from expressing an opinion on the applicability of the obligation not to disclose to examination for discovery.

56 In *Ray v. Port Arthur, Duluth & Western Railway* (1903), 2 O.W.R. 345 (C.A.), the examination for discovery of one of the defendants, in another action, was regarded as admissible. This decision was concerned with the method of proof of this evidence. Clearly, it was admissible under the law of evidence as an admission. No issue respecting the improper use of this evidence, having regard to its source, appears to have been raised or considered by the court. This decision, and also *McKinnon v. Gillard (No. 1)* (1907), 9 O.W.R. 77 (H.C.), at p. 81, apparently to the same effect, was referred to by Judson J. in *New Augarita Porcupine Mines Ltd. v. Gray* (1952), [1953] O.W.N. 24 (H.C.), a case involving the use of discovery evidence in a reference in the proceeding in which the discovery took place.

57 In addition, there are existing rules which have some bearing on the matter. Rule 31.11(8) enables the evidence given on an examination for discovery in an action to be read in evidence or used at the trial of a subsequent action between the same parties "involving the same subject matter." Rule 51.06(1), among other matters, enables a party to obtain "such an order as the party may be entitled to on an admission" in the examination for discovery of the other party "in the same or another proceeding."

58 I mention these factors not to cast any real doubt on the proper applicability of the implied undertaking rule to examination for discovery, but rather to indicate the desirability of having the matter dealt with in a coherent set of rules.

### Relief from the Implied Undertaking

59 It is a necessary and appropriate part of the implied undertaking rule that the court have the power to grant relief from its application. In the present case, Borins J., on the assumption that the implied undertaking

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Page 17
1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

rule applied, granted relief from its application so that Ms Goodman would have the opportunity to clear her name with the ministry, which has the authority to license her as a real estate agent or broker.

60 O'Leary J. accepted this reasoning as the basis of *refusing* to make an order preventing Ms Goodman from relying on the notice of employee change as the basis of her action. Moldaver J. agreed with O'Leary J.'s reasons in relieving Ms Goodman from her implied undertaking. O'Leary J. said [at p. 35]:

> The ends of justice require that Goodman be allowed to attempt to clear her name with the Ministry of Consumer and Commercial Relations, the authority which determines her fitness to hold a licence to sell real estate. She must be allowed to contest the truthfulness of the report made by Rossi by continuing with her action for defamation.

61 I note, at this point, that approaching the question in the context of the law accepted by O'Leary J. there would be no restriction on the use of the document unless Mr. Rossi could satisfy the court that there was reason for imposing one. The onus would be on Mr. Rossi. In the context of the law assumed by Borins J. for the purpose of addressing the question, and accepted by Moldaver J. as being applicable, the onus would be the other way around — the restriction would apply unless Ms Goodman could satisfy the court that it should not apply.

62 The criteria for granting relief from the implied undertaking rule are an important part of the rule itself. In *Crest Homes plc v. Marks*, [1987] 2 All E.R. 1074, Lord Oliver said, at p. 1083, on behalf of the House of Lords, that the authorities on the question "illustrate no general principle beyond this, that the court will not release or modify the implied undertaking given on discovery save in special circumstances and where the release or modification will not occasion injustice to the person giving discovery."

63 For the purposes of resolving the case before us I need not deal with this question exhaustively or definitively. Certainly, the accepted grounds for granting relief from the implied undertaking rule should not be so broadly based that the integrity of the rule is routinely infringed. In *Carbone v. De La Rocha* (1993), 13 O.R. (3d) 355 (Gen. Div.), a defamation action based on documents held to have been produced in the context of discovery in an earlier action, Whalen J. refused to grant leave to use the documents as a basis of the claim. His reasons, which include extensive reference to the similar case of *Riddick v. Thames Board Mills Ltd.*, [1977] Q.B. 881 (C.A.), are a helpful consideration of the "injustice" to the person giving the discovery. He concluded his reasons on this question, at p. 369, as follows:

> The process of this court cannot be or appear to be an instrument of the initiation of litigation not otherwise contemplated or part of the cause of action which disclosed the potentially new claim. To be so would undermine full and frank disclosure by parties. This would be contrary to the public interest and is an abuse of the process of the court.

64 Of course, there will be cases where the interests of the discovered party sought to be protected by the rule will not be seriously affected, or affected at all, by a collateral use of discovered document, but those of the discovering party would be seriously affected if use could not be made of the documents. This is the kind of case where it would reasonably be thought that the discovered party would give his or her consent to the use of the documents but, failing this, would be a proper case for granting relief.

65 For the purpose of the present case I am prepared to consider the applicable test as being more liberal than that stated in *Crest Homes* — as one tolerating some injustice to the discovered party if it is outweighed by a greater injustice to the discovering party if he or she could not make use of the discovered documents.

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Page 18

1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 12 C.C.E.L. (2d) 105, 24 O.R. (3d) 359, 83 O.A.C. 38, 125 D.L.R. (4th) 613

66 In this case Ms Goodman would not have the alleged defamatory document or be aware of its existence except for its production in the earlier unjust dismissal action. It has not been published in any way and access to it in the ministry file is severely restricted (*Real Estate and Business Brokers Act*, R.S.O. 1990, c. R.4, s. 16). Apart from the publicity which may have been given to it in this action, the filing of the document with the Ministry could not have resulted in any injury to her general reputation.

67 In this latter regard, the importance of the action to her is said to be to clear her name with the ministry. Insofar as the judgment of a court could accomplish this purpose it would appear that this could equally be accomplished in the unjust dismissal action, if it is found that the alleged basis of her dismissal was unfounded.

68 Also, there is no reason submitted on behalf of Ms Goodman why she would be unable to challenge the accuracy of the document directly with the ministry should the ministry indicate that it intended to act upon it in any way. I note that we were informed by the parties that some time before the commencement of this action Ms Goodman had, in fact, been registered as a broker under the *Real Estate and Business Brokers Act*.

69 Returning to Mr. Rossi's position, the action carries with it not only the injustice of being penalized for having made full discovery, but also the risk of prejudice in the form of exerting extraneous pressure with respect to the settlement of the unjust dismissal action.

70 For these reasons I think that the injustice to Mr. Rossi in allowing the action to proceed significantly outweighs that to Ms Goodman in ordering a stay of it.

**Disposition**

71 I would set aside the orders of the Divisional Court and of Borins J. In their place I would grant an order, on the defendant's motion, staying this action, and dismiss the plaintiff's motion for relief from the implied undertaking.

72 The issues raised are of sufficient novelty and difficulty that I think that it is appropriate to make no order as to costs at any level.

*Appeal allowed*

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. Govt. Works

Date of Printing: Jun 01, 2011

## KEYCITE

▷ **Goodman v. Rossi, 125 D.L.R. (4th) 613, 12 C.C.E.L. (2d) 105, 83 O.A.C. 38, 1995 CarswellOnt 146, 37 C.P.C. (3d) 181, 24 O.R. (3d) 359, 6 W.D.C.P. (2d) 289, [1995] O.J. No. 1906 (Ont. C.A.,Jun 27, 1995)**

### History

### Direct History

▶
1 Goodman v. Rossi, 120 D.L.R. (4th) 557, 7 C.C.E.L. (2d) 188, 75 O.A.C. 331, 1994 CarswellOnt 1042, 34 C.P.C. (3d) 18, 21 O.R. (3d) 112, 6 W.D.C.P. (2d) 6 (Ont. Div. Ct. Nov 29, 1994) **(Judicially considered 18 times)**

*Reversed by*

⇒
2 **Goodman v. Rossi,** 125 D.L.R. (4th) 613, 12 C.C.E.L. (2d) 105, 83 O.A.C. 38, 1995 Carswel- lOnt 146, 37 C.P.C. (3d) 181, 24 O.R. (3d) 359, 6 W.D.C.P. (2d) 289, [1995] O.J. No. 1906 (Ont. C.A. Jun 27, 1995) **(Judicially considered 155 times)**

### Negative and Cautionary Citing References (Canada)

*Distinguished in*

▷
3 Gleadow v. Nomura Canada Inc., 18 C.C.E.L. (2d) 210, 1996 CarswellOnt 794, 44 C.P.C. (3d) 133, 7 W.D.C.P. (2d) 163, [1996] O.J. No. 668 (Ont. Gen. Div. Feb 23, 1996) **(Judicially con- sidered 10 times)**

**C**
4 Discovery Enterprises Inc. v. Ebco Industries Ltd., [1998] 5 W.W.R. 435, 42 B.C.L.R. (3d) 192, 1997 CarswellBC 2371, 15 C.P.C. (4th) 285, [1997] B.C.J. No. 2614 (B.C. S.C. Nov 20, 1997) **(Judicially considered 13 times)**

**N**
5 Federal Business Development Bank v. Silver Spoon Desserts Enterprises Ltd., 183 N.S.R. (2d) 102, 2000 CarswellNS 64, 568 A.P.R. 102, [2000] N.S.J. No. 72 (N.S. S.C. [In Chambers] Feb 28, 2000) **(Judicially considered 2 times)**

▷
6 P. (D.) v. Wagg, 239 D.L.R. (4th) 501, 184 C.C.C. (3d) 321, 187 O.A.C. 26, 2004 CarswellOnt 1983, 71 O.R. (3d) 229, 120 C.R.R. (2d) 52, 46 C.P.C. (5th) 13, [2004] O.J. No. 2053 (Ont. C.A. May 18, 2004) **(Judicially considered 60 times)**

© 2011 Thomson Reuters. All rights reserved.

# TAB B

## SCHEDULE "B"
## RELEVANT STATUTES

1.    Rule 30.1.01, Ontario, *Rules of Civil Procedure* R.R.O. 1990, Reg. 194

# HOLMESTED and WATSON

# ONTARIO CIVIL PROCEDURE

# Volume 3

by

**Garry D. Watson, Q.C.**
Professor Emeritus, Osgoode Hall Law School, York University

and

**Lynne Jeffrey, LL.B.**
of the Ontario Bar

# CARSWELL®

## TEXT OF RULE

### APPLICATION

30.1.01(1)  This Rule applies to,

(a)  evidence obtained under,

    (i)  Rule 30 (documentary discovery),

    (ii)  Rule 31 (examination for discovery),

    (iii)  Rule 32 (inspection of property),

    (iv)  Rule 33 (medical examination),

    (v)  Rule 35 (examination for discovery by written questions), and

    (vi)  *Revoked 1998.*

(b)  information obtained from evidence referred to in clause (a).

(2)  This Rule does not apply to evidence or information obtained otherwise than under the rules referred to in subrule (1).

#### *Deemed Undertaking*

(3)  All parties and their lawyers are deemed to undertake not to use evidence or information to which this Rule applies for any purposes other than those of the proceeding in which the evidence was obtained.

#### *Exceptions*

(4)  Subrule (3) does not prohibit a use to which the person who disclosed the evidence consents.

(5)  Subrule (3) does not prohibit the use, for any purpose, of,

(a)  evidence that is filed with the court;

(b)  evidence that is given or referred to during a hearing;

(c)  information obtained from evidence referred to in clause (a) or (b).

(6)  Subrule (3) does not prohibit the use of evidence obtained in one proceeding, or information obtained from such evidence, to impeach the testimony of a witness in another proceeding.

(7)  Subrule (3) does not prohibit the use of evidence or information in accordance with subrule 31.11(8) (subsequent action).

#### *Order that Undertaking does not Apply*

(8)  If satisfied that the interest of justice outweighs any prejudice that would result to a party who disclosed evidence, the court may order that subrule (3) does not apply to the evidence or to information obtained from it, and may impose such terms and give such directions as are just. *Amended 1996, 1998, 2003.*

### §1   AMENDMENTS TO RULE

The Rule was introduced by O. Reg. 61/96 (corrected *Ont. Gazette*, p. 1328), which came into force April 1, 1996.

## 30.1§2                    DEEMED UNDERTAKING

Clause 30.1.01(1)(vi) was revoked and subrule 30.1.01(8) amended by O. Reg. 627/98 (in force January 4, 1999).

The English version of subrule 30.1.01(8) was amended by O. Reg. 263/03 (in force January 1, 2004). See Appendix of Amendments to the Rules of Civil Procedure §20[3].

Rule 30.1.01(3) was amended by O. Reg. 575/07 (in force July 1, 2008). See Appendix of Amendments to the Rules of Civil Procedure §24[3].

### §2   FORMER COUNTERPART AND MODEL

This Rule has direct counterparts in only two other jurisdictions, Prince Edward Island and Manitoba, both of which have adopted the same rule.

### §3   LITERATURE

See Watson & McGowan, "Annual Survey of Recent Developments" in *Ontario Civil Practice 1992-93*, pp. cvi-cxi. David Vaver, "Keeping Secrets, Civilly Speaking" (1991-92), 13 Adv. Q. 334. John B. Laskin, "The Implied Undertaking" in C.B.A.O. "Privilege and Confidential Information in Litigation: Current Developments and Future Trends" Toronto, October 19, 1991, updating his earlier article, "The Implied Undertaking in Ontario" (1989-90), 11 Advocates' Q. 298. Eagles, "Disclosure of Material Obtained on Discovery" (1984), 47 Mod. L. Rev. 284. N. Rutherford, The Implied Undertaking — Does it Exist or Not? *Rivait v. Gaudry*. (1995), 17 Adv. Q. 125.

### §4   HIGHLIGHTS OF THE RULE

[1]  *Introduction*

In *Goodman v. Rossi* (1995), 24 O.R. (3d) 359 (C.A.), the case establishing the common law "implied undertaking" as part of the law of Ontario, the Court of Appeal suggested that the law on the implied undertaking should be embodied in the Rules. Morden A.C.J.O. stated:

"The advantage of incorporating the law on this subject into the Rules of Civil Procedure is that the rules can deal with the subject completely and comprehensively, something that is not really possible or proper within the confines of a single case — and it even can be difficult in a series of cases. A properly-drawn rule could meet possible concerns about legislation stultifying the development of the law as new circumstances arise. It could give clear guidance on the nature and scope of the obligation not to make improper use of material obtained on discovery and the exceptions to the rule in the form of relief granted by the court, by conferring discretion on the court, where appropriate, to be exercised having regard to stated factors. See, for example, rule 31.11(7). Further, any identified shortcomings in the rules could be amended more quickly than those in judicial decisions if the field were left to be entirely occupied by case law."

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORK INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

Applicants

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Toronto

**FACTUM AND BRIEF OF AUTHORITIES**
**OF NORTEL**
**(SNMP RI DISCOVERY MOTION)**
**(RETURNABLE JUNE 7, 2011)**

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jennifer.stam@nortonrose.com

Fax: (416) 216-3930
Lawyers for the Applicants

DOCS TOR: 2182914