Court File No. 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT
ACT,
R.S.C. 1985, c. C-36, AS AMENDED

**FACTUM OF THE CCC**
**(Motion Returnable June 7, 2011)**

**KOSKIE MINSKY LLP**
20 Queen Street West, Suite 900,
Toronto, Ontario
Canada M5H3R3

Mark Zigler / Susan Philpott
Telephone: (416) 595-2090
Facsimile:   (416) 204-2877
Email: mzigler@kmlaw.ca
Email: sphilpott@kmlaw.ca

Counsel for The Canadian
Former Employees and Disabled
Employees through their Court
Appointed Representative

**CAW-CANADA LEGAL DEPARTMENT**
205 Placer Court
Toronto, ON  M2H 3H9

Barry Wadsworth
Telephone:  (416) 495-3776
Facsimile:    (416) 495-3786
Email:  Barry.Wadsworth@caw.ca

Counsel for the Canadian Autoworkers
Union


**MCCARTHY TETRAULT**
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6

James Gage / Barbara Boake
Telephone: (416) 362-1812
Facsimile: (416) 868-0673
Email: jgage@mccarthy.ca
Email: bboake@mccarthy.ca

Counsel for Morneau Sobeco Limited
Partnership


**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
250 University Avenue, Suite 501
Toronto, Ontario
M5H 3E5

Ken Rosenberg / Massimo Starnino
Telephone: (416) 646-4300
Facsimile:   (416) 646-4301
Email: ken.rosenberg@paliareroland.com
Email: max.starnino@paliareroland.com

Counsel for the Superintendent of
Financial Services as Administrator of
the Pension Benefits Guarantee Fund

TO:    THE SERVICE LIST APPENDED HERETO AS SCHEDULE "C"

## PART I—OVERVIEW

1.    This factum is filed by the **CCC**[1] in response to the competing protocols proposed in these proceedings by:

    a.    the **Canadian Debtors**[2] and the **U.S. Debtors**[3];

    b.    the court appointed administrators (the "**Joint Administrators**") of Nortel Networks U.K. Limited ("**NNUK**") and its subsidiaries and affiliates in the United Kingdom, Europe, the Middle East and Africa (the "**EMEA Debtors**")[4],

establishing the process (the "**Allocation Protocol**") by which the dispute over the allocation of the proceeds arising from the sale of certain of Nortel's properties, assets and undertakings (the "**Proceeds of Sale**") will be determined (the "**Allocation Dispute**").    Inasmuch as the CCC only received the Joint

---

[1] The CCC is an informal committee of the following creditors having claims only against the Canadian Debtors: the Former Employees and Disabled Employees of the Applicants acting through their court appointed representatives (the "**Representatives for the Former and Disabled Employees**") and as represented by the Canadian Auto Workers Union (the "**CAW**"); Morneau Shepell Ltd. as Administrator of Nortel's Canadian registered pension plans ("**Morneau**"); and, Ontario's Superintendent of Financial Services as Administrator of the Pension Benefits Guarantee Fund (the "**Superintendent**").

[2] The Canadian Debtors are the applicants in these proceedings; i.e., Nortel Networks Corporation ("**NNC**"), Nortel Networks Limited ("**NNL**"), Nortel Networks International Corporation, Nortel Networks Global Corporation and Nortel Networks Technology Corporation

[3] The US Debtors include the following entities: Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation, Alteon WebSystems, Inc., Alteon WebSystems International, Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical, Compoments Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc.

[4] The EMEA Debtors consist of: Nortel Networks UK Limited, Nortel Networks (Ireland) Limited, Nortel Networks NV Nortel Networks SpA, Nortel Networks BV, Nortel Networks Polska Sp z.o.o., Nortel Networks Hispania, SA, Nortel Networks (Austria) GmbH, Nortel Networks sro, Nortel Networks Engineering Services Kft, Nortel Networks Portugal SA, Nortel Networks Slovensko, sro, Nortel Networks Romania Srl, Nortel GmbH, Nortel Networks Oy, Nortel Networks AB, Nortel Networks International Finance & Holding BV, Nortel Networks France S.A.S.

Administrators' motion materials yesterday, 5 court days before the return of the motions, the CCC reserves its right to file additional evidence and argument prior to or at the hearing of the motions.

2.      The Canadian Debtors, the U.S. Debtors and the UCC are all proposing that the Allocation Dispute be determined by way of hearings conducted jointly by this Court and by the U.S. Bankruptcy Court (the "**Canada/U.S. Allocation Protocol**"). The choice of a joint hearing by the Canadian and U.S. courts as the forum for this purpose is supported by the Bondholders Committee (as defined in paragraph 8, below).

3.      The Joint Administrators are proposing that the Allocation Dispute be referred to a panel of three arbitrators, with each of the Joint Administrators, the Canadian Debtors, and the U.S. Debtors having the ability to appoint one arbitrator (the "**Joint Administrators' Allocation Protocol**").

4.      The CCC supports the Canada/U.S. Allocation Protocol and opposes the Joint Administrator's Allocation Protocol for the following reasons:

a.  First, the stakeholders in these proceedings, including the CCC, have not agreed to resolve the dispute over the allocation of the Proceeds of Sale by way of private arbitration, as proposed by the Joint Administrators, and there is no statutory authority that would permit this Court to order the Canadian Debtors and the CCC into private arbitration. To the contrary, it is clear from a review of the *Companies' Creditor Arrangement Act* that Parliament intended that the responsibility for the supervision of these

3

proceedings rest with this Court. In such circumstances, this Court cannot order the Canadian Debtors and the CCC into private arbitration.

b.  Second, even if this Court could order the Canadian Debtors and the CCC into private arbitration it should not do so at the request of the Joint Administrators or otherwise because:

i.  the relevant protocols and agreements approved by this Court in the course of these proceedings (including a number of agreements to which the Joint Administrators are parties) contemplate that this Court and the U.S. Bankruptcy Court will have joint jurisdiction over the Allocation Dispute; and,

ii. this Court is best placed to ensure that justice is done between the stakeholders. Among other reasons, this Court in its role supervising these proceedings:

(1) has procedural and substantive awareness of issues that may impact upon the outcome of the Allocation Dispute (e.g., the various intercompany claims asserted among the Nortel estates); and,

(2) is more likely able to address all issues that may arise in connection with the issue of allocation, including any requests for corollary relief, so that stakeholders are less likely to be artificially precluded from advancing an allocation theory for procedural

4

reasons (such as, for example, the wording of the scope of the appointment of a private arbitrator).

5.    To put the CCC's position into context, the CCC will be arguing that the Proceeds of Sale should be allocated so as to result in a *pro rata* distribution of all of the global assets of the Nortel estates amongst all of the proven claims of the third party creditors of such estates.  The CCC will argue that a *pro rata* approach to allocation:

a. is justified by the globally integrated and interdependent nature of each of the undertakings that was sold, including, among other things, the benefit enjoyed by all Nortel entities globally of the expenses and liabilities incurred by any particular entity during the operation of Nortel's global business lines, and the global use and reliance upon assets owned collectively as well as those owned individually;

b. responds to issues surrounding the use of Nortel's tax-driven transfer-pricing methodology for the purposes of determining interests in the Proceeds of Sale, as well as the claims advanced in these proceedings in connection with Nortel's corporate governance structure and decision making;

c. properly balances the interests of all creditors and is consistent with applicable equitable doctrines and maxims, including, among others, those underpinning the doctrine of substantive consolidation, and case law in a variety of circumstances applying the *pari passu* principle to the

distribution of a pool of assets among competing claimants in the absence
of a governing contract or applicable statutory regime.

6.     It is necessary for this Court to remain seized of the Allocation Dispute
inasmuch as the solution proposed by the CCC (or by other stakeholders)
impacts upon or is impacted by other issues being addressed by this Court (such
as the adjudication of claims in the various estates) and/or may require the
granting of equitable relief, or a request for the aid and assistance of one or more
foreign courts.

## PART II—FACTS

7.     On January 14, 2009, the Canadian Debtors commenced these
proceedings (the **"CCAA Proceedings"**).  On or about the same date, the U.S.
Debtors commenced proceedings pursuant to Chapter 11 of the U.S. Bankruptcy
Code (the "**Chapter 11 Proceedings**"), and the Joint Administrators were
appointed in respect of the EMEA Debtors by the High Court of England and
Wales.[5]

8.     Apart from the Canadian Debtors, the U.S. Debtors and the estates
represented by Joint Administrators, the major stakeholders in Nortel's
Restructuring Proceedings include:

   a. the members of the CCC who collectively represent, in these proceedings,
      the interests of approximately 19,849 pensioners, survivor pensioners,

---

[5] Fifty-ninth report of the Monitor dated February 18, 2011 (the "**Monitor's 59**th **Report**"), CCC
Compendium, Tab 1 at 1-2, paras. 1, 2 and 5.

other survivors, deferred pensioners, former employees and long-term disabled employees, whose pension and benefits claims alone are, as filed, currently estimated to be approximately CAD$2.5 billion;[6]

b. the official committee of unsecured creditors formed in the Chapter 11 Proceedings (the "**UCC**"), which is presently constituted by two indenture trustees in respect of Nortel bonds, and a representative of the Pension Benefit Guarantee Corporation;[7]

c. an informal committee of bondholders which alleges that it represents the interests of holders of bonds issued by NNL, NNC and NNCC having a face value of in excess of $4.2 billion, the preponderance of which are subject to a guarantee by NNI (the "**Bondholders Committee**");[8] and,

d. the trustee of the pension plan sponsored by NNUK and the Pension Protection Fund (the "UK Pension Trustee").[9]

9.    Over the course of Nortel's restructuring, a number of orders have been made and agreements have been consummated for the purpose of coordinating the restructuring effort. These have included: an Interim Funding and Settlement Agreement establishing, among other things, a framework for the sale of Nortel's

---

[6] Affidavit of Donald Sproule sworn February 23, 2010, CCC Compendium Tab 2 at 45, paras. 13-14; Affidavit of Susan Kennedy sworn February 23, 2010, CCC Compendium Tab 3 at 62, para. 31; Monitor's 59th Report, *supra* note 5, at 18, para. 44.
[7] Information publicly posted by the U.S. Claims agent for the Chapter 11 Proceedings, CCC Compendium, Tab 4 at 72.
[8] Monitor's 59th Report *supra* note 5, at 2, 18, paras. 3 and 44.
[9] Monitor's Prefiling Report dated January 14, 2009, CCC Compendium, Tab 5 at 97, paras. 61-64; Affidavit of David Wyndham Davies sworn February 24, 2010, CCC Compendium, Tab 6 at 117-118, 118.1, paras. 9-13 and 26-27.

material assets and undertakings (the "**FSA**")[10]; a cross-border protocol coordinating the proceedings before this Court and the U.S. Bankruptcy Court (the "**Cross Border Protocol**")[11]; and, a series of escrow agreements in respect of the proceeds of sale arising in the course of the liquidation of Nortel (the "**Escrow Agreements**")[12]. Each of these instruments is discussed below.

10.     In or about June 2009, in anticipation of entering into various transactions in furtherance of the liquidation of Nortel's properties, assets and undertakings (each a "**Sale Transaction**" and collectively the "**Sale Transactions**"), the Canadian Debtors, the U.S. Debtors and the Joint Administrators, acting with the approval of their supervising courts, negotiated and entered into the IFSA.[13] Among other things, the IFSA created a framework within which Nortel's material assets and undertakings could be liquidated, having regard to the fact that Nortel

---

[10] Order of the Honourable Mr. Justice Morawetz dated June 29, 2009, CCC Compendium at Tab 7; Affidavit of John Doolittle sworn June 22, 2009,,CCC Compendium at Tab 8 at 126-128, 130-142, 143, 145-182, para. 11-17, 22-26, 37 and Exhibit A.
[11] Initial Order of the Honourable Mr. Justice Morawetz dated January 14, 2009, as amended and restated on June 30, 2009, CCC Compendium at Tab 9 at 184, 187-204.
[12] Re CDMA Escrow Agreement: Order of the Honourable Mr. Justice Wilton-Siegel dated Thursday the 12th day of November 2009, CCC Compendium at Tab 10 at 207; Exhibit A to the affidavit of John Doolittle sworn November 11, 2009, CCC Compendium at Tab 11 at 209 (the "**CDMA EA**"). Re: Next Generation Packet Core: Order of the Honourable Mr. Justice Morawetz dated Wednesday the 2nd day of December 2009, CCC Compendium at Tab 12 at 244; Exhibit B to the affidavit of John Doolittle sworn November 25, 2009, CCC Compendium at Tab 13 (the "**Next Gen EA**"); Re Enterprise Escrow Agreement: Order of the Honourable Mr. Justice Morawetz dated Thursday the 17th day of December 2009, CCC Compendium at Tab 14 at 286; Exhibit A to the affidavit of John Doolittle sworn December 15, 2009, CCC Compendium at Tab 15 (the "**Enterprise EA**"). Re MEN Escrow Agreement: Order of the Honourable Mr. Justice Morawetz dated Monday the 15th day of March 2010, CCC Compendium at Tab 16 at 344; Exhibit A to the affidavit of John Doolittle sworn March 9, 2010, CCC Compendium at Tab 17 (the "**MEN EA**"). Re GSM Escrow Agreement: Order of the Honourable Mr. Justice Morawetz dated the 30th day of March, 2010 (the "**GSM Escrow Order**"), CCC Compendium at Tab 18 at 401; Executed GSM Escrow Agreement as filed with the court pursuant to the GSM Escrow Order, CCC Compendium at Tab 19 (the "**GSM EA**"); Re CVAS Escrow Agreement: Order of the Honourable Mr. Justice Morawetz dated the 20th day of May, 2010 (the "**CVAS Escrow Order**"), CCC Compendium at Tab 20 at 472; Executed CVAS Escrow Agreement as filed with the court pursuant to the CVAS Escrow Order, CCC Compendium at Tab 21 (the "**CVAS EA**")
[13] *Supra*, note 10.

8

was a globally integrated, interconnected and centrally operated business whose assets and undertakings could not be properly sold without the cooperation of the parties to the IFSA.[14]

11.    The IFSA provided that in the event of any material Sale Transactions:

a. licenses of intellectual property used in or related to the assets or undertakings being sold would be terminated (IFSA, s. 11(a));[15]

b. the parties' participation in any Sale Transaction would not be conditioned upon reaching an agreement regarding either the allocation of the sale proceeds or binding procedures for the allocation of the sale proceeds (IFSA s. 12(a));[16] and,

c. absent agreement on the allocation of sale proceeds, the proceeds would be deposited in an escrow account, and any distribution would be contingent upon either (i) the agreement of the Nortel entities participating in the sale; or, (ii) a determination by the relevant dispute resolvers under the terms of a dispute resolution protocol (IFSA, s. 12(b)).[17]

12.    Section 12(c) of the IFSA contemplates that the parties would negotiate in good faith and attempt to reach agreement on a protocol providing binding procedures for resolving disputes concerning the allocation of sale proceeds.[18]

---

[14] *Ibid.*
[15] *Ibid.* at 153.
[16] *Ibid.* at 155.
[17] *Ibid.*
[18] *Ibid.*

13.    The IFSA does not dictate the nature of such protocol. It does not contain express or implied agreement by any Party to arbitrate the Allocation Dispute.

14.    The IFSA does not speak to what should happen in the event that the parties' attempts to reach agreement on a protocol for resolving disputes concerning the allocation of sale proceeds should fail. However:

   a.  In section 16(b) of the IFSA all parties submit to the jurisdiction of the US and Canadian courts (in a joint hearing) for the purposes of all legal proceedings to the extent related to matters agreed to in the IFSA;[19] and,

   b.  section 12(f) of the IFSA states that "[n]othing in section 12 shall prejudice the rights of any Party, or otherwise constitute an amendment, modification or waiver of the rights of any Party, to seek its entitlement to Sale Proceeds from any Sale Transaction" [underlining ours].[20]

15.    Moreover, the CCC is not a party to the IFSA and so that agreement does not fetter the ability of the CCC to have recourse to this Court or the jurisdiction of this Court to deal with the matters that are brought before it.

16.    At or about the same time that this Court approved the IFSA, this Court also amended and restated its Initial Order, retroactive to January 14, 2009, and implemented the current form of Cross Border Protocol.[21] The following are among the stated purposes of the Cross Border Protocol:

---

[19] *Ibid.* at 159.
[20] *Ibid.* at 156.
[21] *Supra*, note 11.

a. to harmonize and coordinate activities in Nortel's restructuring;

b. to avoid duplication of effort; and,

c. to promote international cooperation and respect for comity among this
Court and the U.S. Bankruptcy Court.[22]

17.    To that end, the Cross Border Protocol contemplates that this Court and
the U.S. Bankruptcy Court may conduct joint hearings.[23]   Indeed, the Cross
Border Protocol expressly contemplates the possibility of a joint hearing in
connection with, among other things, any of the following relief:

a. any motion to allocate sale proceeds which are in the aggregate more
than USD$30 million and where at least one U.S. Debtor and one
Canadian Debtor are parties to the related sale agreement;[24] and,

b. any motion to substantively consolidate the Canadian Debtors and the
U.S. Debtors estates.[25]

18.    The Cross Border Protocol also expressly reserves to this Court and to the
U.S. Bankruptcy Court their jurisdiction to coordinate their activities by directing
that the subject matter of any dispute is to be determined by one or the other of
them.[26]

---

[22] *Ibid.*, at 189, para. 6.
[23] *Ibid.*, at 192, para. 12(d).
[24] *Ibid.*, at 194, para. 15(ii)
[25] *Ibid.*, at 196, para. 15(viii)
[26] *Ibid.*, at 192, paras. 12(c) and at 203, para. 32(iii).

19.     Over time, Nortel's material undertakings were sold.  As contemplated by the IFSA, the Canadian Debtors, the U.S. Debtors, the Joint Administrators and other Nortel entities placed Proceeds of Sale into escrow, and to that end they entered into various Escrow Agreements, which were approved by this Court.[27]

20.     Although the precise wording of the Escrow Agreements varies slightly, each of the Escrow Agreements contains a jurisdiction clause by which the parties attorn to the exclusive jurisdiction of both this Court and the U.S. Bankruptcy Court in respect of matters arising under, out of, in respect of or in connection with the Escrow Agreements.[28]

21.     The liquidation phase of Nortel's restructuring proceedings is now almost complete.  The Canadian Debtors' remaining significant assets are its interest in a joint venture, its portfolio of patents (the "**Patent Portfolio**") and its inventory of IP addresses (the "**IP Addresses**").  A sale process for each of these remaining assets is well underway.[29]

22.     As a result of the Sale Transactions completed to date, Proceeds of Sale totaling approximately USD$2.8 billion are being held in escrow pursuant to the Escrow Agreements.[30]  Absent an agreement on the allocation of the proceeds of

---

[27] *Supra* note 12; Monitor's 59th Report, *supra* note 5, at 6, para. 14 and at 8, para. 23.
[28] *Supra* note 12:  CDMA EA, ss. 21, 23 at 223-224; Next Gen EA, ss. 21, 23 at 260-261, 262; Enterprise EA, ss. 21, 23 at 305-307; MEN EA, ss. 21, 23 at 364-366; GSM EA, ss. 2, 23 at 421-423; CVAS EA, ss. 20, 22 at 491-492, 493.
[29] Monitor's 59th Report, *supra* note 5, at 28, para. 82; Order of the Honourable Mr. Justice Morawetz dated March 25, 2011, CCC Compendium Tab 22; Order of the Honourable Mr. Justice Morawetz dated May 2, 2011, CCC Compendium Tab 23.
[30] Monitor's 59th Report, *supra* note 5, at 8, para. 23(a).

sale of the Patent Portfolio and IP Addresses, the amount held in escrow will increase as those assets are sold.

23.    The Parties to the IFSA and the stakeholders in Nortel's restructuring proceedings have been unable to agree on either the allocation of the Proceeds of Sale, or a process to resolve their dispute over that allocation.

24.    The Joint Administrators are proposing that the Allocation Dispute be referred to binding arbitration.    The terms of reference for the proposed arbitration, including the issue of who would have standing before the arbitrator(s), is unknown to the CCC.

25.    The Canadian Debtors and U.S. Debtors are proposing to proceed with a hearing before this Court, to be conducted jointly with a hearing before the U.S. Bankruptcy Court, to resolve the manner in which the Proceeds of Sale will be allocated.    The process to be followed in respect of the joint hearings is loosely set out in the Canada/U.S. Allocation Protocol.

26.    The Canada/U.S. Allocation Protocol has the support of all of the members of the CCC, of the UCC, and of the Bondholders Committee.  The U.K. Pension Trustee has not opposed the Canada/U.S. Allocation Protocol.

## PART III—ISSUES, LAW AND ARGUMENT

27.    The motions before this Court give rise to the following issues:

a. *Can this Court exercise its jurisdiction in respect of the Allocation Dispute by referring the matter to arbitration?* No. Absent an agreement of the litigants or clear statutory authority, this Court has no jurisdiction to delegate its decision making authority to an arbitrator. Neither situation applies in this case.

b. *Alternatively, if this Court had jurisdiction to refer the Allocation Dispute to arbitration, should it do so?* No. This Court and the U.S. Bankruptcy Court are more appropriate or convenient forums for resolving the dispute over the allocation of the Proceeds of Sale. Moreover, the Joint Administrators, by contract, attorned to the jurisdiction of the Canadian and U.S. courts in this matter and waived their right to dispute the convenience of this forum.

**Issue 1: Can this Court refer the Allocation Dispute to arbitration?**

28.     Pursuant to the *Constitution Act, 1867* and Ontario's *Courts of Justice Act*, this Court is vested with the authority and the responsibility of adjudicating disputes falling within its jurisdiction.[31]

29.     As acknowledged by the Supreme Court of Canada, a Court cannot by its order bestow jurisdiction upon an arbitrator that does not flow either from the consent of the parties or from a statutory provision.[32]

---

[31] *Constitution Act, 1867*, s. 129, 96, 92(14); *Courts of Justice Act,* R.S.O. 1990, c. C.43 ("*CJA*") at s. 11.
[32] *C.U.P.E.* v. *Canadian Broadcasting Corp.* [1992] CarswellOnt 918 (S.C.C.) at para. 3.

30.    The CCC has not entered into any agreement by which it has consented to arbitration of the Allocation Dispute. In addition, the CCC is not aware of any agreement having been entered into by the Canadian Debtors to refer the Allocation Dispute to an arbitrator. There is nothing in the IFSA that mandates arbitration, and even if there were the parties to the IFSA could not by their private contract preclude the CCC, any of its constituent members or any of the other parties to these CCAA proceedings from having recourse to this court to determine the Allocation Dispute; nor could the IFSA preclude their right to participate in that process. Indeed, the Cross Border Protocol specifically refers to the allocation of the Proceeds of Sale as a matter to be determined at a joint hearing and the Cross-Border Protocol specifically contemplates the participation of any interested party in joint hearings held by the Canadian and U.S. courts.

31.    Furthermore, no statutory authority has been identified that would permit this Court to delegate its powers to an arbitrator. To the contrary, the statute pursuant to which these proceedings are brought, the Companies' Creditors Arrangement Act[33] (the "*CCAA*"), expressly provides that the decisions to be made pursuant to that Act are to be made by "the court", which is specifically defined, for the purposes of Ontario, as the Superior Court of Justice[34]. For example:

    a.  the application under the *CCAA* must be made to "the court";[35]

---

[33] R.S.C. 1985, c. C-36. Except where otherwise noted, reference is made to the form of the statute in force at the time of the commencement of these proceedings.
[34] *Ibid.*, s. 2, "court".
[35] *Ibid.*, s. 9.

b.  the CCAA stay of proceedings is at the discretion of "the court";[36]

c.  "the court" must order the meeting of creditors;[37]

d.  "the court" must sanction the plan of arrangement;[38] and,

e.  appeals from an order or decision made under the CCAA are to the highest court of final resort in the province, on leave of "the judge" appealed from, or a judge of "the court" to which the appeal lies.[39]

32.   The resolution of the Allocation Dispute is arguably the single most important decision to be made in these CCAA proceedings and will be the cornerstone of any CCAA plan in respect of the Canadian Debtors.  The scheme of the Act directs that responsibility for this pivotal decision must rest with this Court.

33.   The CCC, which includes the duly appointed representatives of persons whose interests are most directly affected by the outcome of the Allocation Dispute (in the sense that they are creditors whose recovery will be affected, they are creditors only of the Canadian Debtors, and (with the arguable exception of the Superintendent) they are creditors whose claims are undiversified and unhedged), proposes to make a distinct claim to and in respect of the allocation of the Proceeds of Sale.  It wishes to have that claim adjudicated, and not arbitrated.

---

[36] *Ibid.*, s. 11
[37] *Ibid.*, ss. 4, 5.
[38] *Ibid.*, s. 6
[39] *Ibid.*, ss. 13,14.

34.    In these circumstances, the CCC submits that this Court does not have the discretion to refer the Allocation Dispute to arbitration.

**Issue 2:    If this Court had jurisdiction to refer the Allocation Dispute to arbitration, should it do so?**

35.    Alternatively, even if this Court had the jurisdiction to refer the Allocation Dispute to arbitration it should not do so for at least three reasons.

36.    First, the Cross Border Protocol, the IFSA and the Escrow Agreements approved by this Court (including agreements to which the Joint Administrators are parties) contemplate that this Court and the U.S. Bankruptcy Court will have joint jurisdiction over the Allocation Dispute.

a. The Cross Border Protocol expressly contemplates that any material allocations of the Proceeds of Sale would be addressed at a joint hearing of this Court and the U.S. Bankruptcy Court.[40]

b. The IFSA expressly preserves the Canadian Debtors' right to have recourse to this Court.[41]

c. The Escrow Agreements expressly provide that this Court and the U.S. Bankruptcy Court enjoy exclusive jurisdiction for the purposes of resolving any matter connected with those agreements.[42]

---

[40] *Supra*, note 24.
[41] Supra, notes 19, 20.
[42] *Supra*, note 28.

37.     Second, we submit that this Court and the U.S. Bankruptcy Court are more appropriate and convenient forums for resolving the dispute over the allocation of the Proceeds of Sale, for a variety of reasons.

a. One important advantage that the courts have over an arbitrator is their historical and continuing supervisory roles over Nortel's restructuring proceedings.  As a result of those roles (and as the instant procedural dispute demonstrates), the courts have procedural and substantive awareness of issues that may impact on allocation, such as the treatment of intercompany claims.  Consequently, the courts are best placed to ensure that the Allocation Dispute is adjudicated in a way that is both procedurally and substantively fair to all interested stakeholders, having regard to issues that may be as mundane as scheduling conflicts, or as complex as the creation of issue estoppels.

b. Another advantage enjoyed by this Court stems from the nature of its jurisdiction.  It is trite that litigation is not a controlled process and that unexpected issues arise.  The courts are necessarily better placed than an arbitrator to deal with the unexpected.  Whereas the powers of an arbitrator are constrained by the terms of their appointment, this Court, as a superior court of general jurisdiction, has all of the powers that are necessary to do justice between the parties.[43]  Where the precise process to be followed in connection with the Allocation Dispute and the relief

---

[43] *80 Wellesley St. East Ltd. v. Fundy Bay Builders Ltd.* [1972] CarswellOnt 1010 ( C.A.), at para. 9; *CJA* s. 11(2).

ultimately granted remains uncertain, the courts are more likely able to deal with such matters, expeditiously and fairly reducing the risk that stakeholders may be artificially precluded from advancing an allocation theory because of limitations on the scope of the arbitrators decision-making authority.  The necessary involvement of multiple parties in more than one jurisdiction, coupled with the complex nature of the Allocation Dispute, create an obvious need for the Court's direct role in this regard.

38.    The advantages described above are particularly important to the CCC in light of its position that the Proceeds of Sale should be allocated *pro rata,* in the manner described above.  This is so for at least three reasons:

a.  The CCC will argue that a *pro rata* approach to allocation is justified by the globally integrated, interdependent and homogeneous nature of the undertakings that were sold, including, among other things, the benefit enjoyed by all Nortel entities globally of the expenses and liabilities incurred by any particular entity during the operation of Nortel's global business lines, and the global use and reliance upon assets owned collectively as well as those owned individually.  This Court and the U.S. Bankruptcy Court have already seen evidence to this effect, and experienced first hand the interconnectedness and interdependence of Nortel.  Indeed this interconnectedness and interdependence has formed the basis of much of the relief sought from this Court and from the U.S. Bankruptcy Court and is the genesis of the Allocation Dispute.

b. The CCC will also argue that a *pro rata* approach to allocation responds to criticisms of the use of Nortel's tax-driven transfer-pricing methodology for the purposes of determining interests in the Proceeds of Sale, and the claims advanced in these proceedings by the Joint Administrators in connection with Nortel's corporate governance structure and decision making. As such, it is of considerable value that the adjudicator of the Joint Administrators' claims against the Canadian Debtors be aware of the arguments raised in the Allocation Dispute, and *vice versa*.

c. Finally, the CCC will argue that a *pro rata* approach to allocation is consistent with and grounded in applicable equitable doctrines and maxims, including, among others, those underpinning the well-established doctrine of substantive consolidation, and fairly balances the interests of creditors. These kinds of equitable arguments are best dealt with by this Court because it is a court of general jurisdiction, having all of the powers that are necessary to do justice between the parties and fashion the equitable remedy in a way that ensures that creditors, such as, arguably, the holders of guarantee claims, are not unduly prejudiced by the relief that is granted. Indeed, we submit that this Court has already recognized that there is a need to apply equitable principles, including substantive consolidation, in appropriate circumstances, and that requests for such relief out to be brought to the courts: the terms of the Cross Border Protocol expressly contemplate that any motion to substantively

consolidate the estates of the Canadian Debtors and the U.S. Debtors should be addressed at a joint hearing.

39.    Finally, in making its submissions, the CCC recognizes that joint hearings of the kind proposed will raise logistical issues. This Court ought not ignore, however, that the most recent amendments to the CCAA expressly contemplate the coordination of concurrent proceedings, signaling Parliament's intent that in the context of cross-border insolvencies this Court should try to fashion a process that is respectful of the jurisdiction of both courts.[44]

40.    In any event, at this point, the logistical issues are theoretical and have not been established to be insurmountable. In practice, we expect that the issues surrounding the conduct of a joint hearing of the Allocation Dispute can be addressed through the ability of both courts to control their processes[45].

41.    Ultimately, however, if the joint hearings proved to be too cumbersome or unmanageable, there is a solution. In such circumstances, this Court and the U.S. Bankruptcy Court will be called upon to consider, in accordance with the Cross Border Protocol, with well established jurisprudence in both jurisdictions, and with principles of comity, whether one jurisdiction is more appropriate or convenient than the other, and whether and/or on what terms the proceedings in the less appropriate or convenient forum should be stayed to permit the matter to

---

[44] CCAA, as recently amended, s. 52(3). The CCC acknowledges that this provision relates to the coordination of concurrent proceedings in respect of a single debtor, but submits that it applies equally by analogy to this case where the proceedings are tied together by indeterminate claims to a homogeneous fund.
[45] For example, reference is made to the following *Rules of Civil Procedure*: 1.04; 2.01; 2.02; 2.03; 3.02.

be adjudicated in the form that is more appropriate or convenient. The solution is not for this Court or the U.S. Bankruptcy court to delegate to a private arbitrator a function that is a cornerstone of a democratic society.

## PART IV—RELIEF SOUGHT

42.    The CCC seeks an order:

a. approving and implementing the Canada/U.S. Allocation Protocol; and,

b. dismissing the Joint Administrators' motion for an order approving the Joint Administrators Allocation Protocol.

ALL OF WHICH IS RESPECTFULLY SUBMITTED.

June 1, 2011

**As agent for counsel to the Representatives for the Former and Disabled Employees, the CAW and Morneau, and of counsel to the Superintendent**

788786_5.DOC

## SCHEDULE A

1. *C.U.P.E.* v. *Canadian Broadcasting Corp.* [1992] CarswellOnt 918 (S.C.C.)

2. *80 Wellesley St. East Ltd.* v. *Fundy Bay Builders Ltd.* [1972] CarswellOnt 1010 (Ont. C.A.)

23

## SCHEDULE B

*Constitution Act, 1867.*

### Subjects of exclusive Provincial Legislation

92. In each Province the Legislature may exclusively make Laws in relation to Matters coming within the Classes of Subjects next hereinafter enumerated; that is to say, — ...
(14) The Administration of Justice in the Province, including the Constitution, Maintenance, and Organization of Provincial Courts, both of Civil and of Criminal Jurisdiction, and including Procedure in Civil Matters in those Courts.

...

### Appointment of Judges

96. The Governor General shall appoint the Judges of the Superior, District, and County Courts in each Province, except those of the Courts of Probate in Nova Scotia and New Brunswick.

...

### Continuance of existing Laws, Courts, Officers, etc.

129. Except as otherwise provided by this Act, all Laws in force in Canada, Nova Scotia, or New Brunswick at the Union, and all Courts of Civil and Criminal Jurisdiction, and all legal Commissions, Powers, and Authorities, and all Officers, Judicial, Administrative, and Ministerial, existing therein at the Union, shall continue in Ontario, Quebec, Nova Scotia, and New Brunswick respectively, as if the Union had not been made; subject nevertheless (except with respect to such as are enacted by or exist under Acts of the Parliament of Great Britain or of the Parliament of the United Kingdom of Great Britain and Ireland), to be repealed, abolished, or altered by the Parliament of Canada, or by the Legislature of the respective Province, according to the Authority of the Parliament or of that Legislature under this Act.

*Courts of Justice Act,* R.S.O. 1990, c. C.43 .

**Superior Court of Justice**

11.(1)The Ontario Court (General Division) is continued as a superior court of record under the name Superior Court of Justice in English and Cour supérieure de justice in French. 1996, c. 25, s. 9 (3).
Idem

(2)The Superior Court of Justice has all the jurisdiction, power and authority historically exercised by courts of common law and equity in England and Ontario.

*Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36, as amended by S.C. 2007, c. 36.

**Definitions**
2. In this Act,..."court" means

> (a) in Nova Scotia, British Columbia and Newfoundland, the Supreme Court,
> (a.1) in Ontario, the Superior Court of Justice,
> (b) in Quebec, the Superior Court,
> (c) in New Brunswick, Manitoba, Saskatchewan and Alberta, the Court of Queen's Bench,
> (c.1) in Prince Edward Island, the Trial Division of the Supreme Court, and
> (d) in Yukon and the Northwest Territories, the Supreme Court, and in Nunavut, the Nunavut Court of Justice;

...

**Compromise with unsecured creditors**
4. Where a compromise or an arrangement is proposed between a debtor company and its unsecured creditors or any class of them, the court may, on the application in a summary way of the company, of any such creditor or of the trustee in bankruptcy or liquidator of the company, order a meeting of the creditors or class of creditors, and, if the court so determines, of the shareholders of the company, to be summoned in such manner as the court directs.

**Compromise with secured creditors**
5. Where a compromise or an arrangement is proposed between a debtor company and its secured creditors or any class of them, the court may, on the application in a summary way of the company or of any such creditor or of the trustee in bankruptcy or liquidator of the company, order a meeting of the creditors or class of creditors, and, if the court so determines, of the shareholders of the company, to be summoned in such manner as the court directs.
**Compromises to be sanctioned by court**

6. Where a majority in number representing two-thirds in value of the creditors, or class of creditors, as the case may be, present and voting either in person or by proxy at the meeting or meetings thereof respectively held pursuant to sections 4 and 5, or either of those sections, agree to any compromise or arrangement either as proposed or as altered or modified at the meeting or meetings, the compromise or arrangement may be sanctioned by the court, and if so sanctioned is binding

(a) on all the creditors or the class of creditors, as the case may be, and on any trustee for any such class of creditors, whether secured or unsecured, as the case may be, and on the company; and

(b) in the case of a company that has made an authorized assignment or against which a bankruptcy order has been made under the Bankruptcy and Insolvency Act or is in the course of being wound up under the Winding-up and Restructuring Act, on the trustee in bankruptcy or liquidator and contributories of the company.

...

**Jurisdiction of court to receive applications**
9. (1) Any application under this Act may be made to the court that has jurisdiction in the province within which the head office or chief place of business of the company in Canada is situated, or, if the company has no place of business in Canada, in any province within which any assets of the company are situated.

**Powers of court**
11. (1) Notwithstanding anything in the Bankruptcy and Insolvency Act or the Winding-up Act, where an application is made under this Act in respect of a company, the court, on the application of any person interested in the matter, may, subject to this Act, on notice to any other person or without notice as it may see fit, make an order under this section.
Initial application

(2) An application made for the first time under this section in respect of a company, in this section referred to as an "initial application", shall be accompanied by a statement indicating the projected cash flow of the company and copies of all financial statements, audited or unaudited, prepared during the year prior to the application, or where no such statements were prepared in the prior year, a copy of the most recent such statement. Initial application court orders

(3) A court may, on an initial application in respect of a company, make an order on such terms as it may impose, effective for such period as the court deems necessary not exceeding thirty days,

26

(a) staying, until otherwise ordered by the court, all proceedings taken or that might be taken in respect of the company under an Act referred to in subsection (1);

(b) restraining, until otherwise ordered by the court, further proceedings in any action, suit or proceeding against the company; and

(c) prohibiting, until otherwise ordered by the court, the commencement of or proceeding with any other action, suit or proceeding against the company.

**Other than initial application court orders**
(4) A court may, on an application in respect of a company other than an initial application, make an order on such terms as it may impose,

(a) staying, until otherwise ordered by the court, for such period as the court deems necessary, all proceedings taken or that might be taken in respect of the company under an Act referred to in subsection (1);

(b) restraining, until otherwise ordered by the court, further proceedings in any action, suit or proceeding against the company; and

(c) prohibiting, until otherwise ordered by the court, the commencement of or proceeding with any other action, suit or proceeding against the company.

**Notice of orders**
(5) Except as otherwise ordered by the court, the monitor appointed under section 11.7 shall send a copy of any order made under subsection (3), within ten days after the order is made, to every known creditor who has a claim against the company of more than two hundred and fifty dollars. Burden of proof on application

(6) The court shall not make an order under subsection (3) or (4) unless

(a) the applicant satisfies the court that circumstances exist that make such an order appropriate; and

(b) in the case of an order under subsection (4), the applicant also satisfies the court that the applicant has acted, and is acting, in good faith and with due diligence.

**Leave to appeal**

13. Except in Yukon, any person dissatisfied with an order or a decision made under this Act may appeal from the order or decision on obtaining leave of the judge appealed from or of the court or a judge of the court to which the appeal lies and on such terms as to security and in other respects as the judge or court directs.

**Court of appeal**

14. (1) An appeal under section 13 lies to the highest court of final resort in or for the province in which the proceeding originated.
Practice

(2) All appeals under section 13 shall be regulated as far as possible according to the practice in other cases of the court appealed to, but no appeal shall be entertained unless, within twenty-one days after the rendering of the order or decision being appealed, or within such further time as the court appealed from, or, in Yukon, a judge of the Supreme Court of Canada, allows, the appellant has taken proceedings therein to perfect his or her appeal, and within that time he or she has made a deposit or given sufficient security according to the practice of the court appealed to that he or she will duly prosecute the appeal and pay such costs as may be awarded to the respondent and comply with any terms as to security or otherwise imposed by the judge giving leave to appeal.

*Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36.

**Forms of cooperation**

52. (3) For the purpose of this section, cooperation may be provided by any appropriate means, including

(a) the appointment of a person to act at the direction of the court;
(b) the communication of information by any means considered appropriate by the court;
(c) the coordination of the administration and supervision of the debtor company's assets and affairs;
(d) the approval or implementation by courts of agreements concerning the coordination of proceedings; and
(e) the coordination of concurrent proceedings regarding the same debtor company.

*Rules of Civil Procedure*: 1.04; 2.01; 2.02; 2.03; 3.02

## INTERPRETATION

### General Principle

<u>1.04 (1)</u> These rules shall be liberally construed to secure the just, most expeditious and least expensive determination of every civil proceeding on its merits.

### Proportionality

<u>(1.1)</u> In applying these rules, the court shall make orders and give directions that are proportionate to the importance and complexity of the issues, and to the amount involved, in the proceeding.

### Matters Not Provided For

<u>(2)</u> Where matters are not provided for in these rules, the practice shall be determined by analogy to them.

### Party Acting in Person

<u>(3)</u> Where a party to a proceeding is not represented by a lawyer but acts in person in accordance with subrule 15.01 (2) or (3), anything these rules require or permit a lawyer to do shall be done by the party.

### "Party and Party" Costs

<u>(4)</u> If a statute, regulation or other document refers to party and party costs, these rules apply as if the reference were to partial indemnity costs.

### "Solicitor and Client" Costs

<u>(5)</u> If a statute, regulation or other document refers to solicitor and client costs, these rules apply as if the reference were to substantial indemnity costs.

## EFFECT OF NON-COMPLIANCE

<u>2.01 (1)</u> A failure to comply with these rules is an irregularity and does not render a proceeding or a step, document or order in a proceeding a nullity, and the court,

> (a) may grant all necessary amendments or other relief, on such terms as are just, to secure the just determination of the real matters in dispute; or

    (b) only where and as necessary in the interest of justice, may set aside the proceeding or a step, document or order in the proceeding in whole or in part.

(2) The court shall not set aside an originating process on the ground that the proceeding should have been commenced by an originating process other than the one employed.

## ATTACKING IRREGULARITY

**2.02** A motion to attack a proceeding or a step, document or order in a proceeding for irregularity shall not be made, except with leave of the court,

    (a) after the expiry of a reasonable time after the moving party knows or ought reasonably to have known of the irregularity; or

    (b) if the moving party has taken any further step in the proceeding after obtaining knowledge of the irregularity.

## COURT MAY DISPENSE WITH COMPLIANCE

**2.03** The court may, only where and as necessary in the interest of justice, dispense with compliance with any rule at any time.

## EXTENSION OR ABRIDGMENT

### *General Powers of Court*

**3.02** (1) Subject to subrule (3), the court may by order extend or abridge any time prescribed by these rules or an order, on such terms as are just.

(2) A motion for an order extending time may be made before or after the expiration of the time prescribed.

### *Times in Appeals*

(3) An order under subrule (1) extending or abridging a time prescribed by these rules and relating to an appeal to an appellate court may be made only by a judge of the appellate court.

### *Consent in Writing*

(4) A time prescribed by these rules for serving, filing or delivering a document may be extended or abridged by filing a consent. O. Reg. 555/96, s. 1; O. Reg. 427/01, s. 2; O. Reg. 438/08, s. 5.

SCHEDULE "C"

*May 30, 2011*

Court File No. 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

### SERVICE LIST

TO:         **OGILVY RENAULT LLP**
            Royal Bank Plaza, South Tower
            200 Bay Street, Suite 3800
            Toronto, Ontario M5J 2Z4

            Derrick Tay
            Tony Reyes
            Jennifer Stam

            Email:    dtay@ogilvyrenault.com
                      treyes@ogilvyrenault.com
                      jstam@ogilvyrenault.com

            Tel:      416.216.4000
            Fax:      416.216.3930

            Lawyers for the Applicants

- 2 -

TO: **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, Ontario  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:   nortel.monitor@ca.ey.com

Tel:    416.943.3016
Fax:   416.943.3300

AND
TO: **GOODMANS LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario  M5H 2S7

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Fred Myers
Chris Armstrong

Email:   jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
grubenstein@goodmans.ca
fmyers@goodmans.ca
carmstrong@goodmans.ca

Tel:    416.597.4107
Fax:   416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND
TO: **OSLER HOSKIN AND HARCOURT
LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, Ontario  M5X 1B8

Lyndon Barnes
Rupert Chartrand
Edward Sellers
Betsy Putnam

Email:   lbarnes@osler.com
rchartrand@osler.com
esellers@osler.com
eputnam@osler.com

Tel:    416.362.2111
Fax:   416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND
TO: **FASKEN MARTINEAU DUMOULIN LLP**
66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, Ontario  M5K 1N6

Donald E. Milner
Aubrey Kauffman
Edmond Lamek
Jon Levin

Email:   dmilner@fasken.com
akauffman@fasken.com
elamek@fasken.com
jlevin@fasken.com

Tel:    416.868.3538
Fax:   416.364.7813

Lawyers for Export Development Canada

- 3 -

AND
TO:
**EXPORT DEVELOPMENT CANADA**
151 O'Connor Street
Ottawa, Ontario K1A 1K3

Jennifer Sullivan

Email: jsullivan@edc.ca

Tel:    613.597.8651
Fax:   613.598.3113


AND
TO:
**McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email:    john.stringer@mcinnescooper.com
          stephen.kingston@mcinnescooper.com

Tel:    902.425.6500
Fax:   902.425.6350

Lawyers for Convergys EMEA Limited


AND
TO:
**CAW-CANADA**
Legal Department
205 Placer Court
Toronto, Ontario M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:    barry.wadsworth@caw.ca
          lewis.gottheil@caw.ca

Tel.:   416.495.3776
Fax:   416.495.3786

Lawyers for all active and retired Nortel
employees represented by the CAW-Canada


AND
TO:
**THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific
Tower
Toronto, Ontario M5K 1K7

Leanne M. Williams

Email:    lwilliams@tgf.ca

Tel:    416.304.1616
Fax:   416.304.1313

Lawyers for Flextronics Telecom Systems Ltd.


AND
TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario M5H 3S1

Jeffrey Carhart

Email:    jcarhart@millerthomson.com

Tel:    416.595.8615/8577
Fax:   416.595.8695

Lawyers for Toronto-Dominion Bank


AND
TO:
**BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC V7X 1S8

R. Hoops Harrison

Email:    hharrison@boughton.ca

Tel:    604.687.6789
Fax:   604.683.5317

Lawyers for Tonko Realty Advisors (BC) Ltd.,
in its capacity as duly authorized agent for
Holdings 1506 Enterprises Ltd.

- 4 -

AND
TO:

**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, Ontario  M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:  mmacnaughton@blgcanada.com
Tel:    416.367.6646
Fax:    416.682.2837

Email:  rjaipargas@blgcanada.com
Tel:    416.367.6266
Fax:    416.361.7067

Email:  srappos@blgcanada.com
Tel:    416.367.6033
Fax:    416.361.7306

Lawyers for Bell Canada

AND
TO:

**SISKINDS LLP**
680 Waterloo Street
London, Ontario  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein
Emilie E. M. Maxwell

Email:  ray.leach@siskinds.com
        dimitri.lascaris@siskinds.com
        emilie.maxwell@siskinds.com

Tel:    519.672.2121
Fax:    519.672.6065

Lawyers for Indiana Electrical Workers Pension
Trust Fund IBEW, Laborers Local 100 and 397
Pension Fund, and Bruce William Lapare

AND
TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario  M5J 2T3

John Contini
Aaron Rousseau

Email:  john.contini@mcmillan.ca
Tel:    416.307.4148
Fax:    416.304.3767

Email:  aaron.rousseau@mcmillan.ca
Tel:    416.307.4081
Fax:    416.365.1719

Lawyers for ABN AMRO Bank N.V.

AND
TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson
Richard Swan

Email:  zychk@bennettjones.com
Tel:    416.777.5738
Fax:    416.863.1716

Email:  orzyr@bennettjones.com
Tel:    416.777.5737
Fax:    416.863.1716

Email:  finlaysong@bennettjones.com
Tel:    416.777.5762
Fax:    416.863.1716

Email:  swanr@bennettjones.com
Tel:    416.777.7479
Fax:    416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

- 5 -

| AND TO: | **KOSKIE MINSKY**<br>20 Queen Street West<br>Suite 900<br>Toronto, Ontario  M5H 3R3 | AND TO: | **KOSKIE MINSKY**<br>20 Queen Street West<br>Suite 900<br>Toronto, Ontario  M5H 3R3 |

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon
Celeste Poltak

Email:   mzigler@kmlaw.ca
Tel:    416.595.2090
Fax:    416.204.2877

Email:   sphilpott@kmlaw.ca
Tel:    416.595.2104
Fax:    416.204.2882

Email:   dyiokaris@kmlaw.ca
Tel:    416.595.2130
Fax:    416.204.2810

Email:   amckinnon@kmlaw.ca
Tel:    416.595.2150
Fax:    416.204.2874

Email:   cpoltak@kmlaw.ca
Tel:    416.595.2701
Fax:    416.204.2909

Lawyers for the Former Employees of Nortel

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon
Celeste Poltak

Email:   mzigler@kmlaw.ca
Tel:    416.595.2090
Fax:    416.204.2877

Email:   sphilpott@kmlaw.ca
Tel:    416.595.2104
Fax:    416.204.2882

Email:   dyiokaris@kmlaw.ca
Tel:    416.595.2130
Fax:    416.204.2810

Email:   amckinnon@kmlaw.ca
Tel:    416.595.2150
Fax:    416.204.2874

Email:   cpoltak@kmlaw.ca
Tel:    416.595.2701
Fax:    416.204.2909

Lawyers for the LTD Beneficiaries

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:   jcarhart@millerthomson.com
Tel:      416.595.8615
Fax:     416.595.8695

Email:   msims@millerthomson.com
Tel:      416.595.8577
Fax:     416.595.8695

Email:   jmklotz@millerthomson.com
Tel:      416.595.4373
Fax:     416.595.8695

Lawyers for LG Electronics Inc.

AND
TO:

**LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongduengpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:   joseph.kim@lge.com

Tel:      +82.2.3777.3171
Fax:     +82.2.3777.5345

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:   jcarhart@millerthomson.com
Tel:      416.595.8615
Fax:     416.595.8695

Email   msims@millerthomson.com
Tel:      416.595.8577
Fax:     416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision Communication
Services, Inc.

AND
TO:

**CHAITONS LLP**
185 Sheppard Avenue West
Toronto, Ontario  M2N 1M9

Harvey G. Chaiton

Email:   harvey@chaitons.com

Tel:      416.218.1129
Fax:     416.218.1849

Lawyers for IBM Canada Limited

| | | | | |
|---|---|---|---|---|
| AND TO: | **PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**<br>Suite 501<br>250 University Avenue<br>Toronto, Ontario  M5H 3E5 | | AND TO: | **FRASER MILNER CASGRAIN LLP**<br>1 First Canadian Place<br>100 King Street West<br>Toronto, Ontario  M5X 1B2 |

AND
TO:

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, Ontario  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:    ken.rosenberg@paliareroland.com
Tel:       416.646.4304
Fax:      416.646.4301

Email:    max.starnino@paliareroland.com
Tel:       416.646.7431
Fax:      416.646.4301

Email:    lily.harmer@paliareroland.com
Tel:       416.646.4326
Fax:      416.646.4301

Email:    tina.lie@paliareroland.com
Tel:       416.646.4332
Fax:      416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

AND
TO:

**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder
Ryan Jacobs

Email:    Shayne.kukulowicz@fmc-law.com
              Alex.macfarlane@fmc-law.com
              Michael.wunder@fmc-law.com
              ryan.jacobs@fmc-law.com

Tel:       416.863.4511
Fax:      416.863.4592

Canadian Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1G5

E. Patrick Shea

Email:    patrick.shea@gowlings.com

Tel:       416.369.7399
Fax:      416.862.7661

Lawyers for Westcon Group

AND
TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:    rslattery@mindengross.com
              dullmann@mindengross.com
Tel:       416.369.4149
Fax:      416.864.9223

Lawyers for Verizon Communications Inc.

- 8 -

AND TO:

**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:   hfogul@airdberlis.com
Tel:     416.865.7773
Fax:     416.863.1515

Email:   pczegledy@airdberlis.com
Tel:     416.865.7749
Fax:     416.863.1515

Lawyers for Microsoft Corporation

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:   renglish@airdberlis.com
         smitra@airdberlis.com

Tel:     416.863.1500
Fax:     416.863.1515

Lawyers for Tata Consultancy Services Limited
and Tata America International Corporation

AND TO:

**ALEXANDER HOLBURN BEAUDIN &
LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:   surquhart@ahbl.ca
Tel:     604.484.1757
Fax:     604.484.1957

Lawyers for Algo Communication Products Ltd.

AND TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:   jwigley@gardiner-roberts.com
Tel:     416.865.6655
Fax:     416.865.6636

Email:   vdare@foglers.com
Tel:     416.865.6641
Fax:     416.865.6636

Lawyers for Andrew, LLC

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Maurice Fleming

Email:   mfleming@millerthomson.com
Tel:     416.595.8686
Fax:     416.595.8695

Lawyers for Verint Americas Inc. and Verint
Systems, Inc.

AND
TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, Ontario  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:  bdarlington@davis.ca
Tel:   416.365.3529
Fax:   416.369.5210

Email:  jdavissydor@davis.ca
Tel:   416.941.5397
Fax:   416.365.7886

Lawyers for Brookfield LePage Johnson
Controls Facility Management Services

AND
TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:  andrew.kent@mcmillan.ca
Tel:   416.865.7160
Fax:   416.865.7048

Email:  hilary.clarke@mcmillan.ca
Tel:   416.865.7286
Fax:   416.865.7048

Email:  tushara.weerasooriya@mcmillan.ca
Tel:   416.865.7262
Fax:   416.865.7048

Lawyers for Royal Bank of Canada

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:   416.865.7726
Fax:   416.863.1515

Email:  iaversa@airdberlis.com
Tel:   416.865.3082
Fax:   416.863.1515

Lawyers for Perot Systems Corporation

AND
TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Lawrence J. Crozier
Adam C. Maerov

Email:  lawrence.crozier@mcmillan.ca
Tel:   416.865.7178
Fax:   416.865.7048

Email:  adam.maerov@mcmillan.ca
Tel:   416.865.7285
Fax:   416.865.7048

Lawyers for Citibank

AND
TO:

**CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario  M5H 3C2

Deborah S. Grieve

Email:  dgrieve@casselsbrock.com
Tel:   416.860.5219
Fax:   416.350.6923

Lawyers for Alvarion Ltd.

AND
TO:

**BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario  M5C 3G5

Domenico Magisano

Email:  dmagisano@blaney.com
Tel:   416.593.2996
Fax:   416.593.5437

Lawyers for Expertech Network Installation Inc.

- 10 -

AND
TO:
**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:    jwigley@gardiner-roberts.com
Tel:      416.865.6655
Fax:      416.865.6636

Email:    vdare@foglers.com
Tel:      416.865.6641
Fax:      416.865.6636

Lawyers for Amphenol Corporation

AND
TO:
**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario  M5J 2T3

Aaron Rousseau

Email:    aaron.rousseau@mcmillan.ca
Tel:      416.307.4081
Fax:      416.365.1719

Lawyer for Right Management Inc.

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Sanjeev P.R. Mitra

Email:    smitra@airdberlis.com

Tel:      416.863.1500
Fax:      416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

AND
TO:
**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
David S. Ward
Michael Casey

Email:    bleonard@casselsbrock.com
          dward@casselsbrock.com
          mcasey@casselsbrock.com

Tel:      416.860.6455
Fax:      416.640.3054

Lawyers for the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited

DOCSTOR: 1600901\14

- 11 -

| | | | |
|---|---|---|---|
| AND<br>TO: | **MCFARLANE LEPSOE**<br>Barristers & Solicitors<br>70 Gloucester Street, Third Floor<br>Ottawa, Ontario  K2P 0A2 | AND<br>TO: | **IRVING MITCHELL KALICHMAN LLP**<br>Place Alexis Nihon, Tour 2<br>3500 Boulevard De Maisonneuve Ouest<br>Bureau 1400<br>Montreal, Quebec  H3Z 3C1 |

AND
TO:

**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario  K2P 0A2

Paul K. Lepsoe

Email:   pklepsoe@mcfarlanelaw.com

Tel:     613.233.2679
Fax:    613.233.3774

Lawyers for Iron Mountain Canada Corporation
and Iron Mountain Information Management,
Inc.

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:   theintzm@mccarthy.ca
Tel:     416.601.7627
Fax:    416.868.0673

Email:   jsirivar@mccarthy.ca
Tel:     416.601.7750
Fax:    416.868.0673

Lawyers for Frank Andrew Dunn

AND
TO:

**IRVING MITCHELL KALICHMAN LLP**
Place Alexis Nihon, Tour 2
3500 Boulevard De Maisonneuve Ouest
Bureau 1400
Montreal, Quebec  H3Z 3C1

Kurt A. Johnson

Email :   kjohnson@imk.ca
Tel:      514.935.5755
Fax :     514.935.2999

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

AND
TO:

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:   janice.payne@nelligan.ca
         steven.levitt@nelligan.ca
         christopher.rootham@nelligan.ca

Tel:     613.231.8245
Fax:    613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post CCAA as
at January 14, 2009

- 12 -

| | | | |
|---|---|---|---|
| AND TO: | **BAKER & McKENZIE LLP** | AND TO: | **BENNETT JONES LLP** |

AND
TO:

**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario M5J 2T3

Chris Besant
Lydia Salvi

Email:   chris.besant@bakernet.com

Tel:     416.865.2318
Fax:     416.863.6275

Email:   lydia.salvi@bakernet.com

Tel:     416.865.6944
Fax:     416.863.6275

Lawyers for Jabil Circuit Inc.

AND
TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email:   ryanbellr@bennettjones.com
         laugesenm@bennettjones.com

Tel:     416.863.1200
Fax:     416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and
Tel-e Connect Systems (Toronto) Ltd.

AND
TO:

**SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec H9S 2A5

Dan Goldstein
Marco Gaggino

Email:   dgoldstein@schneidergaggino.com
         mgaggino@schneidergaggino.com

Tel:     514.631.8787
Fax:     514.631.0220

Lawyers for the Teamsters Quebec Local 1999

AND
TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario M5H 4G2

Timothy R. Dunn

Email:   tdunn@mindengross.com
Tel:     416.369.4335
Fax:     416.864.9223

Lawyers for 2748355 Canada Inc.

AND
TO:

**EURODATA**
2574 Sheffield Road
Ottawa, Ontario K1B 3V7

Nanci Shore

Email:   nanci@eurodata.ca
Tel:     613.745.0921
Fax:     613.745.1172

AND
TO:

**BALDWIN LAW PROFESSIONAL
CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email:   ibrady@baldwinlaw.ca
Tel:     613.771.9991
Fax:     613.771.9998

Lawyers for Sydney Street Properties Corp.

- 13 -

AND
TO:

**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Raffy Lorentzian

Email:  raffy.lorentzian@ntscorp.com
Tel:      714.998.4351
Fax:     714.998.7142

Lawyers for AETL Testing, Inc.

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:     416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND
TO:

**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthur.jacques@shibleyrighton.com
Tel:     416.214.5213
Fax:    416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel :    416.214.5206
Fax :   416.214.5400

Lawyers for The Recently Severed Canadian
Nortel Employees Committee

AND
TO:

**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthur.jacques@shibleyrighton.com
Tel:     416.214.5213
Fax:    416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel :    416.214.5206
Fax :   416.214.5400

Co-Counsel for the Steering Committee of Nortel
Canadian Continuing Employees – Post CCAA as
at January 14, 2009

AND
TO:

**NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Raffy Lorentzian

Email:  raffy.lorentzian@ntscorp.com
Tel:      714.998.4351

AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email:   david.cohen@gowlings.com

Tel:     416.369.6667
Fax:    416.862.7661

Lawyers for General Electric Canada Equipment
Finance G.P. and GE Capital Canada Leasing
Services Inc.

- 14 -

AND
TO:
**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:    bdarlington@davis.ca
Tel:       416.365.3529
Fax:      416.369.5210

Email:    jdavissydor@davis.ca
Tel:       416.941.5397
Fax:      416.365.7886

Lawyers for Computershare Trust Company of
Canada

AND
TO:
**DAVIES WARD PHILLIPS & VINEBERG
LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:    rschwill@dwpv.com
Tel:       416.863.0900
Fax:      416.863.0871

Email:    mgottlieb@dwpv.com
Tel:       416.863.0900
Fax:      416.863.0871

Lawyers for Nortel Networks UK Limited (In
Administration)

AND
TO:
**LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:   tosullivan@counsel-toronto.com
Tel:       416.598.1744
Fax:      416.598.3730

Email:    slaubman@counsel-toronto.com
Tel:       416.598.1744
Fax:      416.598.3730

Lawyers for William A. Owens

AND
TO:
**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Lydia Salvi

Email:    lydia.salvi@bakernet.com

Tel:       416.865.6944
Fax:      416.863.6275

Lawyers for Wipro Limited

DOCSTOR: 1600901\14

- 15 -

| | |
|---|---|
| AND TO: | **AIRD & BERLIS LLP**<br>Barristers & Solicitors<br>Brookfield Place, P.O. Box 754<br>181 Bay Street, Suite 1800<br>Toronto, ON  M5J 2T9 |

AND TO:  **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:      416.865.7726
Fax:     416.863.1515

Email:  iaversa@airdberlis.com
Tel:      416.865.3082
Fax:     416.863.1515

Lawyers for the Current and Former Employees
of Nortel Networks Inc. who are or were
Participants in the Long-Term Investment Plan
Sponsored by Nortel Networks Inc.

AND TO:  **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario, M5J 2T3

Sheryl E. Seigel

Email: sheryl.seigel@mcmillan.ca
Tel:     416.307.4063
Fax:    416.365.1719

Lawyers for The Bank of New York Mellon

AND TO:  **BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario M5L 1A9

Susan M. Grundy
Marc Flynn

Email: susan.grundy@blakes.com
Tel:     416.863.2572
Fax:    416.863.2653

Email: marc.flynn@blakes.com
Tel:     416.863.2685
Fax:    416.863.2653

Lawyers for Telefonaktiebolaget L M Ericsson
(publ)

AND TO:  **McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario  M5K 1E6

Heather Meredith

Email:  hmeredith@mccarthy.ca
Tel:      416.601.8342
Fax:     416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND TO:  **DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:  dwinters@justice.gc.ca
Tel:      416.973.3172
Fax:     416.973.0810

AND TO:  **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:  kmcelcheran@mccarthy.ca
Tel:      416.601.7730
Fax:     416.868.0673

Email:  rstabile@mccarthy.ca
Tel:      416.601.8335
Fax:     416.868.0673

Lawyers for Avaya Inc.

- 16 -

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:   pamela.huff@blakes.com
Tel:      416.863.2958
Fax:     416.863.2653

Email:   milly.chow@blakes.com
Tel:      416.863.2594
Fax:     416.863.2653

Email:   hugh.desbrisay@blakes.com
Tel:      416.863.2426
Fax:     416.863.2653

Email:   craig.thorburn@blakes.com
Tel:      416.863.2965
Fax:     416.863.2653

Lawyers for MatlinPatterson Global Advisers
LLC, MatlinPatterson Global Opportunities
Partners III L.P. and MatlinPatterson
Opportunities Partners (Cayman) III L.P.

AND
TO:

**FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:   jspiegelman@foglers.com
Tel:      416.864.9700
Fax:     416.941.8852

Lawyers for Belden (Canada) Inc.

AND
TO:

**SACK GOLDBLATT MITCHELL LLP**
20 Dundas Street West
Suite 1100
Toronto, Ontario  M5G 2G8

James McDonald
Darrell Brown

Email:   jmcdonald@sgmlaw.com
Tel:      416.979.6425
Fax:     416.591.7333

Email:   dbrown@sgmlaw.com
Tel:      416.979.4050
Fax:     416.591.7333

Lawyers for Edmund Fitzgerald

AND
TO:

**VINCENT DAGENAIS GIBSON LLP/s.r.l**
Barristers and Solicitors
600-325 Dalhousie Street
Ottawa, ON  K1N 7G2

Thomas Wallis

E-mail:  thomas.wallis@vdg.ca
Tel:      613.241.2701
Fax:     613.241.2599

Lawyers for La Regie des Rentes du Quebec

DOCSTOR: 1600901\14

- 17 -

AND
TO:

**STIKEMAN ELLIOTT LLP**
5300 Commerce Court West
199 Bay Street
Toronto, ON  M5L 1B9

Sean F. Dunphy

Email:   sdunphy@stikeman.com
Tel:        416.869.5662
Fax:        416.947.0866

Lawyers for GENBAND Inc.

AND
TO:

**STIKEMAN ELLIOTT LLP**
445 Park Avenue, 7th Floor
New York, NY  10022

Gordon Cameron
Ron Ferguson

Email:   gncameron@stikeman.com
Tel:        212.845.7464
Fax:        212.371.7087

Email:   rferguson@stikeman.com
Tel:        212.845.7477
Fax:        212.371.7087

Lawyers for GENBAND Inc.

AND
TO:

**BORDEN LADNER GERVAIS LLP**
Barristers and Solicitors
Scotia Plaza, Suite 4400
40 King Street West
Toronto, ON  M4H 3Y4

John D. Marshall
Craig J. Hill

Email:   jmarshall@blgcanada.com
Tel:        416.367.6024
Fax:        416.361.2763

Email:   chill@blgcanada.com
Tel:        416.367.6156
Fax:        416.631.7301

Lawyers for the U.K. Pensions Regulator

AND
TO:

**BLAKE, CASSELS & GRAYDON**
Box 25, Commerce Court West
199 Bay Street, Suite 2800
Toronto, Ontario  M5L 1A9

Pamela J. Huff
J. Jeremy Forgie

Email:   pamela.huff@blakes.com
Tel:        416.863.2958
Fax:        416.863.2653

Email:   jeremy.forgie@blakes.com
Tel:        416.863.3888
Fax:        416.863.2653

Lawyers for The Northern Trust Company, Canada

AND
TO:

**ROCHON GENOVA LLP**
121 Richmond Street West
Suite 900
Toronto, ON  M5H 2K1

Joel P. Rochon

Email:   jrochon@rochongenova.com
Tel:        416.363.1867
Fax:        416.363.0263

Lawyers for the Opposing LTD Employees

AND
TO:

**LERNERS LLP**
130 Adelaide St. West
Suite 2400
Toronto, ON  M5H 3P5

William E. Pepall

Email:   wpepall@lerners.ca
Tel:        416.601.2352
Fax:        416.867.2415

Lawyers for the Former Employees in Respect of the Distribution of the Corpus of the Health and Welfare Trust

- 18 -

AND
TO:

**MACLEOD DIXON LLP**
3700 Canterra Tower
400 Third Avenue SW
Calgary, Alberta
T2P 4H2

Kyle D. Kashuba

Email:  kyle.kashuba@macleoddixon.com
Tel:    403.267.8399
Fax:    403.264.5973

Constellation NewEnergy Canada Inc.

AND
TO:

**SACK GOLDBLATT MITCHELL**
500 – 30 rue Metcalfe St.
Ottawa, ON  K1P 5L4

Peter Engelmann
Fiona Campbell

Email:  pengelmann@sgmlaw.com
Tel:    613-482-2452
Fax:    613-235-3041

Email:  fcampbell@sgmlaw.com
Tel:    613-482-2451
Fax:    613-235-3041

Lawyers for the LTD Beneficiaries in Respect of the
Distribution of the Corpus of the Health and Welfare
Trust

AND
TO:

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**
One Liberty Plaza
New York, NY 10006

James Bromley
Lisa Schweitzer
Martin N. Kostov

Email:  jbromley@cgsh.com
        lschweitzer@cgsh.com
        mkostov@cgsh.com
Tel:    212.225.2000
Fax:    212.225.3999

Lawyers for Nortel Networks Inc.

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Barbara J. Boake
James D. Gage

E-mail:  bboake@mccarthy.ca
Tel:     416.601.7557
Fax:     416.868.0673

Email:   jgage@mccarthy.ca
Tel:     416.601.7539
Fax:     416.686.0673

Lawyers for Morneau Shepell Ltd.

AND
TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, ON  M5J 2T3

D. Brent McPherson

Email:  brent.mcpherson@mcmillan.ca
Tel:    416.307.4103
Fax:    416.304.3769

Lawyers for Wells Fargo Bank, National
Association, as successor by merger to
Wachovia Bank, N.A., in its capacity as Servicer
for the Nortel Networks Pass-Through Trust,
Series 1-1

AND
TO:

**DAVID STEER**
10 Cypress Court
Nepean, ON  K2H 8Z8

E-mail:  davidsteer127@sympatico.ca

AND TO:

**FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:  jspiegelman@foglers.com

Tel:    416.864.9700
Fax:    416.941.8852

Lawyers for Apex Logistics Inc.

AND TO:

**TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Tony DeMarinis
Scott Bomhof
Sheila Block
Andrew Gray

Email:   tdemarinis@torys.com
         sbomhof@torys.com
         sblock@torys.com
         agray@torys.com
Tel:     416.865.0040
Fax:     416.865.8730

Lawyers for Nortel Networks Inc.

AND TO:

**TORYS LLP**
79 Wellington St. W., Suite 3000
Toronto-Dominion Centre
Toronto, Ontario  M5K 1N2

Michael Rotsztain
Adam M. Slavens

Email:   mrotsztain@torys.com
Tel:     416.865.7508
Fax:     416.865.7380

Email:   aslavens@torys.com
Tel:     416.865.7333
Fax:     416.865.7380

Lawyers for Ranger, Inc.

AND TO:

**TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario  K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email:   hvw@tmlegal.ca
         rbm@tmlegal.ca

Tel:     613.542.1889
Fax:     613.542.8202

Lawyers for The Corporation of the City of Belleville

AND TO:

**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson

Email : andrew.robertson@macleoddixon.com

Tel :    403.267.8222
Fax :    403.264.5973

Lawyers for Recently Severed Calgary Employees

AND TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Brett Harrison

Email:   brett.harrison@mcmillan.ca
Tel :    416.865.7932
Fax :    416.865.7048

Lawyers for Rogers Communications Inc.

- 20 -

AND
TO:

**ATTORNEY GENERAL FOR ONTARIO**
Crown Law Office – Civil
720 Bay Street, 8th Floor
Toronto, Ontario  M7A 2S9

Leonard Marsello
William MacLarkey

Email:   leonard.marsello@ontario.ca
Tel:     416.326.4939
Fax:     416.326.4181

Email:   William.MacLarkey@ontario.ca
Tel:     416.326.4082
Fax:     416.326.4181

Lawyers for Her Majesty the Queen in right of
Ontario, as represented by the Ministry of the
Environment

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Steven J. Weisz
Jackie Moher

Email:   steven.weisz@blakes.com
Tel:     416.863.2616
Fax:     416.863.2653

Email:   jackie.moher@blakes.com
Tel:     416.863.3174
Fax:     416.863.2653

Lawyers for the American Registry for Internet
Numbers

AND
TO:

**TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario  K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email:   hvw@tmlegal.ca
         rbm@tmlegal.ca

Tel:     613.542.1889
Fax:     613.542.8202

Lawyers for Algonquin and Lakeshore Catholic
District School Board

AND
TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Andrew J. F. Kent
Wael Rostom

Email:   andrew.kent@mcmillan.ca
Tel :    416.865.7160
Fax :    416.865.7048

Email:   wael.rostom@mcmillan.ca
Tel :    416.865.7790
Fax :    416.865.7048

Lawyers for the Norpax LLC and RPX Corporation,
in its capacity as Managing Member of Norpax LLC

- 21 -

**COURTESY COPIES:**

AND
TO:
**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA  85004-4429

Scott K. Brown

Email:  sbrown@lrlaw.com

Tel:    602.262.5321
Fax:    602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND
TO:
**CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail:  sreisman@curtis.com
         jdrew@curtis.com

Tel:    212.696.6000
Fax:    212-697-1559

Lawyers for Flextronics International

AND
TO:
**AKIN GUMP STRAUSS HAUER &
FELD LLP**
One Bryant Park
New York, NY  10036

Fred S. Hodara

Email:  fhodara@akingump.com

Tel:    212.872.1000
Fax:    212.872.1002

U.S. Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:
**MILBANK, TWEED, HADLEY
McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY  10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email:  DDunne@milbank.com
Tel:    212.530.5770
Fax:    212.530.5219

Email:  ALeblanc@milbank.com
Tel:    212.835.7574
Fax:    212.530.5219

Email:  APisa@milbank.com
Tel:    212.530.5319
Fax:    212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

DOCSTOR: 1600901\14

- 22 -

| | | | |
|---|---|---|---|
| AND<br>TO: | **VEDDER PRICE P.C.**<br>1633 Broadway, 47th Floor<br>New York, New York 10019 | AND<br>TO: | **BRYAN CAVE LLP**<br>161 North Clark Street, Suite 4300<br>Chicago, Illinois 60601 |

**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York 10019

Michael L. Schein

Email:  mschein@vedderprice.com

Tel:     212.407.6920
Fax:    212.407.7799

U.S. Lawyers for Telmar Network Technology,
Inc. and Precision Communication Services, Inc.

**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois 60601

Eric S. Prezant

Email:  eric.prezant@bryancave.com
Tel:     312.602.5033
Fax:    312.602.5050

U.S. Lawyers for Tellabs, Inc.

AND
TO:

**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :  andrew.robertson@macleoddixon.com
           caylee.rieger@macleoddixon.com

Tel :    403.267.8222
Fax :   403.264.5973

Agent for Nelligan O'Brien Payne LLP, lawyers
for the Steering Committee of Recently Severed
Canadian Nortel Employees and lawyers for the
Steering Committee of Nortel Canadian
Continuing Employees – Post CCAA as at
January 14, 2009

AND
TO:

**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4834

Michael J. Riela

Email: michael.riela@lw.com

Tel :    212.906.1373
Fax :   212.751.4864

U.S. Lawyers for The Bank of New York
Mellon

Court File No. 09-CL-7950

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

| | |
|---|---|
| | *ONTARIO*<br>SUPERIOR COURT OF JUSTICE<br>(COMMERCIAL LIST)<br>Proceeding commenced in Toronto |
| | **FACTUM OF THE CCC**<br>**(Motion Returnable June 7, 2011)** |
| | **KOSKIE MINSKY LLP**<br>Mark Zigler / Susan Philpott<br>Tel: (416) 595-2090 / Fax: (416) 204-2877 |
| | Counsel for The Canadian Former Employees and Disabled<br>Employees through their Court-Appointed Representative |
| | **CAW-CANADA LEGAL DEPARTMENT**<br>Barry Wadsworth<br>Tel: (416) 495-3776 / Fax: (416) 495-3786 |
| | Counsel for the Canadian Autoworkers Union |
| | **MCCARTHY TETRAULT**<br>James Gage / Barbara Boake<br>Tel: (416) 362-1812 / Fax: (416) 868-0673 |
| | Counsel for Morneau Sobeco Limited Partnership |
| | **PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**<br>Ken Rosenberg / Massimo Starnino<br>Tel: (416) 646-4300 / Fax: (416) 646-4301 |
| | Counsel to the Superintendent of Financial Services as<br>Administrator of the Pension Benefits Guarantee Fund |