372



**SIGNED** in the name and on behalf of **PT NORTEL NETWORKS INDONESIA** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS MALAYSIA SDN. BHD.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS NEW ZEALAND LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:


By:_____
Name:
Title:


Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property

S-4

Error! Unknown document property name.

373

(1)

**SIGNED** in the name and on behalf of **NORTEL NETWORKS SINGAPORE PTE. LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS SINGAPORE PTE. LIMITED** on behalf of **NORTEL NETWORKS SINGAPORE PTE. LIMITED – PHILIPPINES BRANCH** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (ASIA) LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

Error! Unknown document property name.Error! Unknown document property name.Error! Unknown document property name.

Error! Unknown document property name.

374

SIGNED in the name of and on behalf of **NORTEL NETWORKS (ASIA) LIMITED** on behalf of **NORTEL NETWORKS (ASIA) LIMITED – PAKISTAN BRANCH** by,

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

SIGNED in the name of and on behalf of **NORTEL NETWORKS (ASIA) LIMITED** on behalf of **NORTEL NETWORKS (ASIA) LIMITED – TAIWAN BRANCH** by,

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

SIGNED in the name and on behalf of **NORTEL NETWORKS (CHINA) LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

Error! Unknown document property name.Error! Unknown document property name.Error! Unknown document property

S-6

Error! Unknown document property name.

375
ω3

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (THAILAND) LIMITED** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:



**SIGNED** in the name and on behalf of **NORTEL VIETNAM LIMITED** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS TELECOMMUNICATIONS EQUIPMENT (SHANGHAI) CO. LIMITED** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:


Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property

S-7

Error! Unknown document property name.

*376*

*(4*

**SIGNED** in the name and on behalf of **NORTEL NETWORKS DE ARGENTINA S.A.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS DE ECUADOR S.A.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **SHENYANG NORTEL TELECOMMUNICATIONS CO., LTD.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

*377*

SIGNED in the name and on behalf of **NORTEL NETWORKS DE GUATEMALA LTDA.**
by

NORTEL NETWORKS INC., as Representative


By:_____
Name:
Title:


SIGNED in the name and on behalf of **NORTEL NETWORKS (CALA) INC.** by

NORTEL NETWORKS INC., as Representative


By:_____
Name:
Title:


SIGNED in the name and on behalf of **NORTEL TRINIDAD & TOBAGO LIMITED** by

NORTEL NETWORKS INC., as Representative


By:_____
Name:
Title:


SIGNED in the name and on behalf of **NORTEL NETWORKS KABUSHIKI KAISHA** by

NORTEL NETWORKS INC., as Representative


By:_____
Name:
Title:


Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property          S-9

*378*

*66*

**SIGNED** in the name and on behalf of **QTERA CORPORATION** by

NORTEL NETWORKS INC., as Representative

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **XROS, INC.** by

NORTEL NETWORKS CORPORATION, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **CORETEK, INC.** by

NORTEL NETWORKS CORPORATION, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

Error! Unknown document property name.Error! Unknown document property name.Error! Unknown document property

Error! Unknown document property name.

379
(A)

SIGNED for and on behalf of **Nortel Networks**   )
**UK Limited** (in administration) by Christopher  )    Christopher Hill
Hill   )
as Joint Administrator (acting as agent and   )
without personal liability) in the presence of:


Witness signature

............................................................  )
Name:  )
Address  )


**SIGNED** for and on behalf of **Nortel GmbH**  )
(in administration) by Christopher Hill  )    Christopher Hill
as Joint Administrator (acting as agent and  )
without personal liability) in the presence of:  )


Witness signature

............................................................  )
Name:  )
Address:  )

**SIGNED** for and on behalf of **Nortel Networks**  )
**SpA** (in administration) by Christopher Hill  )    Christopher Hill
as Joint Administrator (acting as agent and  )
without personal liability) in the presence of:  )


Witness signature

............................................................  )
Name:  )
Address:  )


Error! Unknown document property      Schedule C-1       Error! Unknown document property name.
name.Error! Unknown document property
name.Error! Unknown document property

380

68

**SIGNED** for and on behalf of **Nortel Networks**
**Hispania S.A.** (in administration) by
Christopher Hill as Joint Administrator (acting
as agent and without personal liability) in the
presence of:

)
)
)
)

.................................................................
Christopher Hill

Witness signature

.................................................................
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **Nortel Networks**
**B.V.** (in administration) by Christopher Hill
as Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)

.................................................................
Christopher Hill

Witness signature

.................................................................
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **Nortel Networks**
**AB** (in administration) by Christopher Hill
as Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)

.................................................................
Christopher Hill

Witness signature

.................................................................
Name:
Address:

)
)
)

Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property          S-2          Error! Unknown document property name.

381

(41)

**SIGNED** for and on behalf of **Nortel Networks**  )
**N.V.** (in administration) by Christopher Hill  )  ...............................................................
as Joint Administrator (acting as agent and  )  Christopher Hill
without personal liability) in the presence of:  )

Witness signature

.................................................................  )
Name:  )
Address:  )

**SIGNED** for and on behalf of **Nortel Networks**  )
**(Austria) GmbH** (in administration) by  )  ...............................................................
Christopher Hill as Joint Administrator (acting  )  Christopher Hill
as agent and without personal liability) in the  )
presence of:

Witness signature

.................................................................  )
Name:  )
Address:  )

**SIGNED** for and on behalf of **Nortel Networks**  )
**Portugal S.A.** (in administration) by  )  ...............................................................
Christopher Hill as Joint Administrator (acting  )  Christopher Hill
as agent and without personal liability) in the  )
presence of:

Witness signature

.................................................................  )
Name:  )
Address:  )

Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property          S-3          Error! Unknown document property name.

382

**SIGNED** for and on behalf of **Nortel Networks**     )     ...................................................
**s.r.o.** (in administration) by Christopher Hill     )     Christopher Hill
                                                        )
as Joint Administrator (acting as agent and             )
without personal liability) in the presence of:

Witness signature

...................................................     )
Name:                                                   )
Address:                                                )

**SIGNED** for and on behalf of **Nortel Networks**     )     ...................................................
**Polska Sp. z.o.o.** (in administration) by            )     Christopher Hill
Christopher Hill as Joint Administrator (acting         )
as agent and without personal liability) in the         )
presence of:

Witness signature

...................................................     )
Name:                                                   )
Address:                                                )

**SIGNED** for and on behalf of **Nortel Networks**     )     ...................................................
**France S.A.S.** (in administration) by Kerry          )     Kerry Trigg
Trigg acting as authorised representative for           )
Christopher Hill as Joint Administrator (acting         )
as agent and without personal liability) in the         )
presence of:

Errorl Unknown document property
name.Errorl Unknown document property
name.Errorl Unknown document property          S-4          Errorl Unknown document property name.

383
기

Witness signature

.........................................................    )
Name:                                              )
Address:                                           )

**SIGNED** outside of the Republic of Ireland for    )    ...........................................................
and on behalf of **Nortel Networks (Ireland)**    )    Andrew Dann
**Limited** (in administration) by Andrew Dann    )
(acting as an authorised representative and    )    Location:
without personal liability) in exercise of his
power of attorney for and on behalf of David
Hughes as Joint Administrator (acting as agent
and without personal liability) in the presence
of:

Witness signature

.........................................................    )
Name:                                              )
Address:                                           )

**SIGNED** by John Freebairn                       )    ...........................................................
duly authorised for and on behalf of **Nortel**   )    John Freebairn
**Networks (Northern Ireland) Limited** in the    )
presence of:                                       )

Witness signature

.........................................................    )
Name:                                              )
Address:                                           )

**SIGNED** by Sergei Fishkin                       )    ...........................................................
duly authorised for and on behalf of o.o.o.       )    Sergei Fishkin
**Nortel Networks** in the presence of:            )

Error! Unknown document property                    S-5              Error! Unknown document property name.
name.Error! Unknown document property
name.Error! Unknown document property

384
λ2

Witness signature

.............................................................    )
Name:                                            )
Address:                                         )

**SIGNED** by Sharon Rolston              )    ..................................................
duly authorised for and on behalf of Nortel    )    Sharon Rolston
Networks AG in the presence of:          )


Witness signature

.............................................................    )
Name:                                            )
Address:                                         )

**SIGNED** for and on behalf of Nortel Networks    )
**Israel (Sales and Marketing) Limited** (in    )    ..................................................
administration) by Yaron Har-Zvi and Avi D.    )    Yaron Har-Zvi
Pelossof as Joint Israeli Administrators (acting    )
jointly and without personal liability) in    )    ..................................................
connection with the Israeli Assets  and    )    Avi D. Pelossof
Liabilities:                                     )
                                                 )
                                                 )
                                                 )


Witness signature

.............................................................    )
Name:                                            )
Address:                                         )

Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property

Error! Unknown document property name.

385
23

## SCHEDULE A
## OTHER SELLERS

Nortel Networks Technology Corporation

Nortel Networks (CALA) Inc.

Nortel de Mexico S. de R.L. de C.V.

Nortel Networks de Mexico S.A. de C.V.

Nortel Networks de Guatemala Ltda

Nortel Networks de Argentina S.A.

Nortel Networks de Columbia S.A.

Nortel Networks Peru S.A.C.

Nortel Networks de Ecuador S.A.

Nortel Networks Kabushiki Kaisha

Nortel Networks (Asia) Limited

Nortel Networks Singapore Pte. Limited

Nortel Vietnam Limited

Nortel Networks (Thailand) Limited

Nortel Networks Malaysia Sdn. Bhd

Nortel Networks Australia Pty. Limited

Nortel Networks New Zealand Limited

Nortel Networks (China) Limited

Nortel Networks (Asia) Limited – Pakistan Branch

Nortel Networks Singapore Pte. Limited – Philippines Branch

Nortel Networks Telecommunications Equipment (Shanghai) Co. Limited

PT Nortel Networks Indonesia

Qtera Corporation

CoreTek, Inc.

Xros, Inc.

Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property

S-7

Error! Unknown document property name.

386
74

## SCHEDULE B

## EMEA SELLERS

Nortel Networks UK Limited (In Administration)

Nortel GmbH (In Administration)

Nortel Networks S.p.A. (In Administration)

Nortel Networks Hispania, S.A. (In Administration)

Nortel Networks B.V. (In Administration)

Nortel Networks AB (In Administration)

Nortel Networks N.V. (In Administration)

Nortel Networks (Austria) GmbH (In Administration)

Nortel Networks Polska Sp. z.o.o. (In Administration)

Nortel Networks Portugal S.A. (In Administration)

Nortel Networks s.r.o. (In Administration)

Nortel Networks France S.A.S. (In Administration)

Nortel Networks (Ireland) Limited (In Administration)

Nortel Networks (Northern Ireland) Limited

Nortel Networks o.o.o.

Nortel Networks A.G.

## ISRAELI COMPANY

Nortel Networks Israel (Sales and Marketing) Limited (In administration)

Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property

Schedule C-1

Error! Unknown document property name.

DOCSTOR: 1843462\13

387
70

## SCHEDULE C

## AFFILIATES OF MAIN SELLERS THAT
## ARE DEEMED TO BE "SELLING DEBTORS"

Architel Systems (U.S.) Corporation

Nortel Altsystems, Inc. (previously "Alteon WebSystems, Inc.")

Nortel Altsystems International Inc. (previously "Alteon WebSystems International, Inc.")

Nortel Networks Applications Management Solutions Inc.

Nortel Networks Cable Solutions Inc.

Nortel Networks Capital Corporation

Nortel Networks HPOCS Inc.

Nortel Networks International Inc.

Nortel Networks Optical Components Inc.

Northern Telecom International Inc.

Sonoma Systems

Error! Unknown document property
name.Error! Unknown document property
name Error! Unknown document property     Schedule C-1        Error! Unknown document property name.

DOCSTOR: 1843462\13

388
710

## SCHEDULE D

## AFFILIATES OF THE EMEA SELLERS THAT ARE DEEMED TO BE A "SELLING DEBTOR"

Nortel Networks Engineering Services Kft (In Administration)

Nortel Networks Slovensko, sro (In Administration)

Nortel Networks Romania Srl (In Administration)

Nortel Networks Oy (In Administration)

Nortel Networks International Finance & Holding BV (In Administration)

Nortel Networks Optical Components Limited

Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property          Schedule C-1          Error! Unknown document property name.

DOCSTOR: 1843462\13

389
여

## SCHEDULE E

## STANDING SETTLEMENT INSTRUCTIONS

Nortel Networks Limited
Bank: Citibank, N.A.
ABA#: 021000089
SWIFT: CITIUS33
A/C#: 38545364

Nortel Networks Inc.
Bank: Citibank, N.A.
ABA#: 021000089
SWIFT: CITIUS33
A/C#: 30463444

Nortel Networks Corporation
Bank: Citibank, N.A.
ABA#: 021000089
SWIFT: CITIUS33
A/C#: 30428374

Nortel Networks UK Limited (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel GmbH (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks SpA (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property

Schedule C-1

Error! Unknown document property name.

DOCSTOR: 1843462\13

390
78

Nortel Hispania S.A. (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks B.V. (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks AB (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks N.V. (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (Austria) GmbH. (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Polska Sp z.o.o. (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Portugal S.A. (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property          S-2          Error! Unknown document property name.

391

Nortel Networks s.r.o. (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks France S.A.S (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (Ireland) Limited (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Engineering Services Kft (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Slovensko s.r.o. (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Romania Srl (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Oy (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property    S-3    Error! Unknown document property name.

*392*

*80*

Nortel Networks International Finance & Holding BV. (In Administration)

Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks S.A. (In Administration)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (Northern Ireland) Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

o.o.o Nortel Networks
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks AG
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Israel (Sales and Marketing) Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

**[NTD: Nortel to confirm the account information above.]**

**[NTD: Remainder to follow.]**

393
81

## SCHEDULE F

### NOTICE ADDRESSES

**Depositors:**

| | |
|---|---|
| **NNC, NNL and the Other Sellers listed on** **Schedule A** **(other than Nortel Networks (CALA) Inc., Nortel Networks de Guatemala Ltda and Nortel Networks Kabushiki Kaisha or any other Respective Affiliate of NNI), the affiliates of the Main Sellers listed on** **Schedule C** **and any other Respective Affiliates of NNC or NNL:** | 5945 Airport Road Suite 360 Mississauga, Ontario, Canada  L4V 1R9 Attn:  Anna Ventresca Phone: 905.863.1204 Facsimile: 905.863.2057 |
| **NNI and Nortel Networks (CALA) Inc., Nortel Networks de Guatemala Ltda, Nortel Networks Kabushiki Kaisha or any other Respective Affiliates of NNI:** | Legal Department 220 Athens Way, Suite 300 Nashville, Tennessee, USA  37228 Attn:  Lynn C. Egan Phone: 615.432.4289 Facsimile: 615.432.4067 |
| **The EMEA Debtors [and Nortel Networks (Northern Ireland) Limited, Nortel Networks o.o.o. and Nortel Networks AG]:** | c/o Herbert Smith LLP Exchange House Primrose Street London EC2A 2HS United Kingdom Attn: Stephen Gale and Kevin F Lloyd Phone: +44 20 7374 8000 Facsimile: +44 20 7374 0888 |
| **The Israeli Company:** | Avi D. Pelossof Zellermayer, Pelossof & Co. The Rubenstein House 20 Lincoln Street Tel Aviv 67131 Israel Facsimile:     +972 3 6255500 |
| **Distribution Agent:** | JPMorgan Chase Bank, N.A. TS / Escrow Services 4 New York Plaza, 21st Floor New York, New York 10004 Attn:  Andy Jacknick |

Error! Unknown document property name.Error! Unknown document property name.Error! Unknown document property name.Error! Unknown document property

Schedule D-1

Error! Unknown document property name.

DOCSTOR: 1843462\13

394
8/

Phone: 212.623. 0241
Facsimile: 212.623.6168

**Estate Fiduciaries:**

**The Official Committee of Unsecured Creditors in connection with the Chapter 11 cases of Nortel Networks Inc., et al. (Case No. 09-10138):**

c/o Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Attn: Fred S. Hodara, Stephen B. Kuhn,
David H. Botter and Kenneth A. Davis
Phone: 212.872.1000
Facsimile: 212.872.1002

**Monitor:**

Ernst & Young Inc.
Ernst & Young Tower
222 Bay Street, P. O. Box 251
Toronto, Ontario, Canada
M5K 1J7
Facsimile: (416) 943-3300
Attn: Murray A. McDonald

**Bondholder Group:**

c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Facsimile: 212.822.5735

**[Investment Committee]**

[●]

Error! Unknown document property name.Error! Unknown document property name.Error! Unknown document property       Schedule D- 2            Error! Unknown document property name.

DOCSTOR: 1843462\13

*395*

*83*

## SCHEDULE G

### Telephone Number(s) for Call-Backs;
**Person(s) Designated to Give and Confirm Funds Transfer Instructions; and Addresses**

**If to NNC, NNL and the Other Sellers listed on** <u>Schedule A</u> **(other than Nortel Networks (CALA) Inc., Nortel Networks de Guatemala Ltda and Nortel Networks Kabushiki Kaisha or any other Respective Affiliate of NNI), the affiliates of the Main Sellers listed on** <u>Schedule C</u> **or any other Respective Affiliate of NNC or NNL:**

| <u>Name</u> | <u>Telephone Number</u> | <u>Signature Specimen</u> |
|---|---|---|
| John Marshall Doolittle | 905.863.6636 | _____ |
| <u>Name</u> | <u>Telephone Number</u> | <u>Signature Specimen</u> |
| Anna Ventresca | 905.863.1204 | _____ |
| Address | See <u>Schedule F</u> | |

**If to NNI, Nortel Networks (CALA) Inc., Nortel Networks de Guatemala Ltda and Nortel Networks Kabushiki Kaisha or any other Respective Affiliate of NNI:**

| <u>Name</u> | <u>Telephone Number</u> | <u>Signature Specimen</u> |
|---|---|---|
| John Ray | 239.331.4942 | _____ |
| <u>Name</u> | <u>Telephone Number</u> | <u>Signature Specimen</u> |
| Anna Ventresca | 905.863.1204 | _____ |
| Address | See <u>Schedule F</u> | |

**If to the EMEA Debtors (apart from Nortel Networks (Ireland) Limited) [and Nortel Networks (Northern Ireland) Limited, Nortel Networks o.o.o. and Nortel Networks AG]:**

Error! Unknown document property name.Error! Unknown document property name.Error! Unknown document property name.Error! Unknown document property name.

Schedule E-1

Error! Unknown document property name.

DOCSTOR: 1843462\13

396
84

| Name | Telephone Number | Signature Specimen |
|------|-----------------|-------------------|
| Alan Bloom | +44 (0) 207 951 9898 | |

| Name | Telephone Number | Signature Specimen |
|------|-----------------|-------------------|
| Stephen Harris | +44 (0) 207 951 9835 | |
| Address | See Schedule F | |

**If to Nortel Networks (Ireland) Limited:**

| Name | Telephone Number | Signature Specimen |
|------|-----------------|-------------------|
| Alan Bloom | +44 (0) 207 951 9898 | |
| Name | Telephone Number | Signature Specimen |
| David Hughes | +353 1 221 2301 | |
| Address | c/o Herbert Smith LLP | |
| | Exchange House | |
| | Primrose Street | |
| | London | |
| | EC2A 2HS | |
| | Attn: Stephen Gale and | |
| | Kevin F Lloyd | |

**If to the Israeli Company:**

| Name | Telephone Number | Signature Specimen |
|------|-----------------|-------------------|
| Yaron Har-Zvi | | |
| Address | See Schedule F | |
| Avi D. Pelossof | | |
| Address | See Schedule F | |

Telephone call backs shall be made to all applicable Parties if joint instructions are required pursuant to the agreement. All funds transfer instructions must include the signature of the person(s) authorizing said funds transfer and must not be the same person confirming said transfer. Inasmuch as there is only one individual who can confirm and instruct, on behalf of a Party, wire transfers in accordance with the attached Escrow Agreement, the Distribution Agent shall call such individual to confirm any federal funds wire transfer payment order purportedly issued by such individual.  Such individual's continued issuance of

**Error! Unknown document property name.Error! Unknown document property name.Error! Unknown document property**

Schedule E-2

**Error! Unknown document property name.**

DOCSTOR: 1843462\13

397

85

payment orders to the Distribution Agent on behalf of a Party and his confirmation in accordance with this procedure will constitute such Party's agreement (1) to the callback security procedure outlined herein and (2) that the security procedure outlined herein constitutes a commercially reasonable method of verifying the authenticity of payment orders.  Moreover, such Party agrees to accept any risk associated with a deviation from the Distribution Agent's policy.

Error! Unknown document property name.Error! Unknown document property name.Error! Unknown document property

Schedule E-3

Error! Unknown document property name.

DOCSTOR: 1843462\13

*398*

*810*

## EXHIBIT 1

## INTEREST ALLOCATION PERCENTAGES(*)

|  | Interest Allocation Percentage |
|---|---|
| NNI | [●]% |
| NNL | [●]% |
| NNC | [●]% |
| [Qtera Corporation] | [●]% |
| [CoreTek, Inc.] | [●]% |
| [Xros, Inc.] | [●]% |
| Nortel Networks Technology Corporation | [●]% |
| Nortel Networks (CALA) Inc. | [●]% |
| Nortel de Mexico, S. de R.L. de C.V. | [●]% |
| Nortel Networks de Mexico, S.A. de C.V. | [●]% |
| Nortel Networks de Guatemala Ltda. | [●]% |
| Nortel Networks de Argentina S.A. | [●]% |
| Nortel Networks de Columbia S.A. | [●]% |
| Nortel Networks Peru S.A.C. | [●]% |
| Nortel Networks de Ecuador S.A. | [●]% |
| Nortel Networks Kabushiki Kaisha | [●]% |
| Nortel Networks (Asia) Limited | [●]% |
| Nortel Networks Singapore Pte. Limited | [●]% |
| Nortel Vietnam Limited | [●]% |
| Nortel Networks (Thailand) Ltd. | [●]% |
| Nortel Networks Malaysia Sdn. Bhd. | [●]% |

Exhibit 1

Error! Unknown document property name.

Error! Unknown document property
name.Error! Unknown document property
name.Error! Unknown document property

DOCSTOR: 1843462\13

399

81

| | Interest Allocation Percentage |
|---|---|
| Nortel Networks Australia Pty Limited | [●]% |
| Nortel Networks New Zealand Limited | [●]% |
| Nortel Networks (China) Limited | [●]% |
| Nortel Networks (Asia) Limited – Pakistan Branch | [●]% |
| Nortel Networks Singapore Pte. Limited – Philippines Branch | [●]% |
| Nortel Networks Telecommunications Equipment (Shanghai) Co., Ltd. | [●]% |
| PT Nortel Networks Indonesia | [●]% |
| The EMEA Sellers | [●]% |
| The Israeli Company | [●]% |
| NNSA | [●]% |
| [Affiliates of Main Sellers that are deemed to be "Selling Debtors"] | [●]% |
| [Affiliates of the EMEA Sellers that are deemed to be a "Selling Debtor"] | [●]% |

\* The inclusion of the interest allocation percentages set forth above does not constitute an admission of any Depositor that such interest allocation percentage reflects the percentage of the proceeds to be received by any Depositor or any of its Respective Affiliates under the North American ASA or EMEA ASA, as applicable. The interest allocation percentages are the initial allocation percentages hereunder and are subject to amendment in accordance with Paragraph 15. The interest allocation percentages set forth above shall not be presented by any party hereto as being indicative of the final allocation of proceeds received by the Depositors under the North American ASA and EMEA ASA, as applicable.

Error! Unknown document property name.Error! Unknown document property name.Error! Unknown document property

Exhibit 1-2

Error! Unknown document property name.

DOCSTOR: 1843462\13

# TAB 18

400



Court File No.: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

THE HONOURABLE MR.                    )        TUESDAY, THE 30TH

                                      )

JUSTICE MORAWETZ                      )        DAY OF MARCH, 2010

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**ORDER**
(GSM/GSM-R Escrow Agreement)

THIS MOTION, made by Nortel Networks Corporation ("NNC"), Nortel Networks
Limited ("NNL"), Nortel Networks Technology Corporation ("NNTC"), Nortel Networks Global
Corporation and Nortel Networks International Corporation (collectively, the "Applicants") for
the relief set out in the Applicants' Notice of Motion dated March 29, 2010 was heard this day at
330 University Avenue, Toronto, Ontario.

ON READING the affidavit of John Doolittle sworn March 29, 2010 (the "Doolittle
Affidavit") and on hearing the submissions of counsel for the Applicant, the Monitor and those

401

- 2 -

other parties present, no one appearing for any other person on the service list, although properly served as appears from the affidavit of Katie Legree, sworn March 29, 2010, filed:

1.      THIS COURT ORDERS that the time for the service of the Notice of Motion and the Motion Record is hereby abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.      THIS COURT ORDERS that, in connection wit the GSM/GSM-R Sale (as defined in the Doolittle Affidavit), the Applicants be and are hereby authorized to enter into one or more distribution escrow agreement on terms and conditions reasonably satisfactory to the Monitor (the "Escrow Agreement"), with one or more escrow agent, without further order of this Court, and the performance by the Applicants of their respective obligations thereunder be and is hereby authorized and approved.

3.      THIS COURT ORDERS that the Monitor be and is hereby authorized and directed to: (i) execute the Escrow Agreement(s); and (ii) forthwith file with this Court a copy of the Escrow Agreement(s), once finalized and fully executed by all parties thereto.

4.      THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

5.      THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

MAR 3 0 2010

DOCSTOR: 19077912 PER / PAR: TV

402

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

ORDER
(GSM/GSM-R Escrow Agreement)

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

# sm32488

\\server\name

PSCRIPT Page Separator

# TAB 19

403

EXECUTION VERSION

GSM/GSM-R DISTRIBUTION ESCROW AGREEMENT

among

NORTEL NETWORKS CORPORATION
NORTEL NETWORKS LIMITED
NORTEL NETWORKS INC.

and

THE OTHER ENTITIES IDENTIFIED HEREIN AS SELLERS

and

THE EMEA SELLERS AS IDENTIFIED HEREIN

and

NORTEL NETWORKS S.A.

and

NORTEL NETWORKS (ASIA) Limited

and

THE ENTITIES IDENTIFIED HEREIN AS NORTH AMERICAN ALT SELLING
DEBTORS

and

THE ENTITIES IDENTIFIED HEREIN AS EMEA ALT SELLING DEBTORS

and

THE ESTATE FIDUCIARIES

and

JPMorgan Chase Bank, N.A., as Distribution Agent

dated as of March 31, 2010

*404*

This GSM/GSM-R DISTRIBUTION ESCROW AGREEMENT (the "Agreement"), dated as of March 31, 2010, by and among

(i)    Nortel Networks Corporation, a corporation organized under the laws of Canada ("NNC");

(ii)    Nortel Networks Limited, a corporation organized under the laws of Canada ("NNL");

(iii)    Nortel Networks Inc., a corporation organized under the laws of Delaware ("NNI" and, together with NNC and NNL, the "Main Sellers");

(iv)    the affiliates of the Main Sellers listed in Schedule A (the "Other Sellers" and, together with the Main Sellers, the "Sellers");

(v)    the entities set out in Schedule B (the "EMEA Sellers"), which in the case of the EMEA Debtors (as defined below) are acting by their joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration) for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators) (collectively the "Joint Administrators") who act as agents of the EMEA Debtors without any personal liability as set forth in Paragraph 20 below;

(vi)    Nortel Networks S.A. (In Administration) ("NNSA") acting by the French Office Holders (as defined below), who act as agents for NNSA without any personal liability as set forth in Paragraph 20 below;

(vii)    Nortel Networks (Asia) Limited, a company incorporated under the laws of Hong Kong ("NN Asia");

(viii)    each affiliate of the Main Sellers listed in Schedule C (each such entity, a "North American ALT Selling Debtor");

(viii)    each affiliate of the EMEA Sellers listed in Schedule D (each such entity, an "EMEA ALT Selling Debtor" and, together with the Sellers, the EMEA Sellers, NNSA, NN Asia and the North American ALT Selling Debtors, the "Depositors");

(ix)    the Estate Fiduciaries (as defined below) with the exclusion from liability set forth in Paragraph 28(a); and

(x)    JPMorgan Chase Bank, N.A., a national banking association organized and existing under the laws of the United States of America ("JPMorgan") and acting through its TS/Escrow Services Division and solely in its capacity as escrow and distribution agent under this Agreement, and any successors appointed pursuant to the terms hereof (JPMorgan in such capacity, the "Distribution Agent").

Capitalized terms used and not otherwise defined herein shall have the meaning given to them in the North American ASA (as defined below). In this Agreement, the term

1

405

"EMEA Debtors" means those entities listed in Schedule 3 of the EMEA ASA and each party listed in Schedule D hereto that is an EMEA ALT Selling Debtor.

WHEREAS, on January 14, 2009 (the "Petition Date"), NNC, NNL and certain of their affiliates (collectively, the "Canadian Debtors") filed with the Ontario Superior Court of Justice (the "Canadian Court") an application for protection under the Companies' Creditors Arrangement Act (Canada) (the "CCAA") and were granted certain creditor protection pursuant to an order issued by the Canadian Court on the same date, which has been extended by further order of the Canadian Court (such proceedings, together with any other formal insolvency proceedings commenced in Canada in respect of any Depositor that is a Canadian Debtor, the "Canadian Cases");

WHEREAS, NNI and certain of its affiliates (collectively, the "U.S. Debtors") are debtors-in-possession under Title 11 of the United States Code (the "U.S. Bankruptcy Code"), which commenced cases under Chapter 11 of the U.S. Bankruptcy Code on the Petition Date (except for Nortel Networks (CALA) Inc., which commenced its case under Chapter 11 of the U.S. Bankruptcy Code on July 14, 2009) by filing voluntary petitions for relief in the U.S. Bankruptcy Court for the District of Delaware (the "U.S. Bankruptcy Court") (the "U.S. Cases" and together with the Canadian Cases, the "Bankruptcy Cases");

WHEREAS, the Canadian Court has appointed Ernst & Young Inc. as Monitor in the Canadian Cases and as foreign representative for the Canadian Debtors (the "Monitor"), and the Office of the United States Trustee for the District of Delaware has appointed an Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "Committee" and, together with the Monitor, the "Estate Fiduciaries"), and in addition, an *ad hoc* group of bondholders holding claims against certain of the U.S. Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group");

WHEREAS, on the Petition Date, the High Court of Justice in London, England (the "English Court") ordered that the EMEA Debtors be placed into administration under the English Insolvency Act 1986, as amended (the "Insolvency Act") and European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings (the "EC Regulation") and appointed the Joint Administrators (as appropriate) to manage the affairs, business and property of the EMEA Debtors;

WHEREAS, while the administration proceedings in respect of NNSA under the Insolvency Act are continuing, subsequent to the Petition Date, NNSA commenced secondary insolvency proceedings within the meaning of Article 27 of the EC Regulation pursuant to which the Commercial Court of Versailles (the "French Court") appointed Maître Cosme Rogeau, 26, avenue Hoche, 78000 Versailles as the "Liquidateur Judiciaire" and Maître Franck Michel, partner of Selarl F. Michel – A. Miroitte – C. Gorins, 10 Allée Pierre de Coubertin, 78000 Versailles as the "Administrateur Judiciaire" of NNSA under Articles 641-1 et seq. of the French Commercial Code (together, the "French Office Holders");

WHEREAS, NNSA acceded to the IFSA on September 11, 2009 and, notwithstanding that NNSA is not a party to the Sale Agreements, NNSA has executed and delivered an Appropriate License Termination in accordance with the IFSA and is also subject to the NNSA Irrevocable Offer (as defined below) which has been approved by the French Court

2

*406*

on March 30, 2010, and is deemed to be a "Selling Debtor" under the IFSA for the purposes of this Sale Transaction (as defined therein) and, as such, any reference in this Agreement to a Selling Party shall be construed to include NNSA;

WHEREAS, the Sellers and Telefonaktiebolaget L M Ericsson (publ) (the "Purchaser") have entered into that certain Asset Sale Agreement, dated as of November 24, 2009 (as amended and restated on the date hereof and as may be further amended and/or restated from time to time in accordance with its terms, the "North American ASA"), whereby the Purchaser and/or certain Designated Purchasers will acquire substantially all of the assets related to the GSM business segment of the Sellers;

WHEREAS, the EMEA Sellers, the Joint Administrators, and Kapsch CarrierCom AG (the "EMEA Purchaser") have entered into that certain Asset Sale Agreement dated as of November 24, 2009 (as amended and restated on March 8, 2010 and on the date hereof and as may be further amended and/or restated from time to time in accordance with its terms, the "EMEA ASA" and, together with the North American ASA, the "Sale Agreements"), whereby the EMEA Purchaser and/or certain EMEA Designated Purchasers will acquire substantially all of the assets related to the GSM business segment of the EMEA Sellers;

WHEREAS, on March 3, 2010, and in accordance with Clause 7.1 of the EMEA ASA, the EMEA Purchaser made an irrevocable offer to the French Office Holders to purchase the NNSA Business (as subsequently amended and/or supplemented on March 22 and March 24, 2010, the "NNSA Irrevocable Offer");

WHEREAS, on November 16, 2009, the Purchaser delivered to Citibank, N.A. ("Citibank") cash in a non-interest bearing account (the "Good Faith Deposit Escrow Account") in an amount of USD 5,000,000 (the "Ericsson Good Faith Deposit");

WHEREAS, on November 13, 2009, the EMEA Purchaser delivered to Citibank cash in the Good Faith Deposit Escrow Account in an amount of USD 4,999,975 (the "Kapsch Good Faith Deposit");

WHEREAS, it is contemplated under Section 2.3.2(d) of the North American ASA that, at Closing, NNL, NNI and NNUK shall cause Citibank to deliver to the Distribution Agent the Ericsson Good Faith Deposit by wire transfer in immediately available funds to an account designated by the Distribution Agent;

WHEREAS, it is contemplated under Clause 3.1.3 of the EMEA ASA that, at Closing, the EMEA Purchaser shall direct Citibank to release to the Distribution Agent the Kapsch Good Faith Deposit together with all interest earned on such amount as at Closing;

WHEREAS, it is contemplated under Section 27 of the Transition Services Agreement and Section 2.3.2(c)(iii) of the North American ASA that, at Closing, the Purchaser will deliver or cause to be delivered on behalf of the Sellers to Citibank by wire transfer in immediately available funds the TSA Escrow Amount to be held pursuant to the terms of the escrow agreement contemplated thereby (the "NA TSA Escrow Agreement");

3

WHEREAS, it is contemplated under Clause 3.1.4 of the EMEA ASA that, at Closing, the EMEA Purchaser will deposit the sum of US$ 12 million into an account with Citibank (the "EMEA TSA Escrow Amount") to be held pursuant to the terms of the escrow agreement contemplated thereby (the "EMEA TSA Escrow Agreement");

WHEREAS, it is contemplated under Sections 2.3.2(c)(i) and 5.30 of the North American ASA that, at Closing, the Purchaser shall deliver to the Distribution Agent an amount (the "Ericsson Deposited Purchase Price"), by wire transfer in immediately available funds, equal to USD 68,142,449.00 representing (a) the Estimated Purchase Price minus (b) the sum of (i) the Ericsson Good Faith Deposit and (ii) the TSA Escrow Amount;

WHEREAS, it is contemplated under Clause 3.1.2 of the EMEA ASA that, at Closing, the EMEA Purchaser shall pay to the Distribution Agent an amount (the "Kapsch Deposited Purchase Price", and collectively with the Ericsson Deposited Purchase Price, the "Deposited Purchase Price"), equal to USD 16,000,025.00 representing (a) the Purchase Price (as defined under the EMEA ASA) minus (b) the sum of (i) the EMEA TSA Escrow Amount and (ii) the Kapsch Good Faith Deposit, together with all interest earned on such amount as at Closing; as adjusted pursuant to the EMEA ASA;

WHEREAS, the Sellers, the EMEA Sellers, the Joint Administrators, NNSA, the French Office Holders, the North American ALT Selling Debtors and the EMEA ALT Selling Debtors have entered into that certain GSM/GSM-R Side Agreement, dated as of March 31, 2010 (the "Side Agreement"), pursuant to which, in accordance with Section 12.b of the IFSA, the Selling Parties (as defined therein) agree to enter into an escrow agreement with the Distribution Agent governing, among other things, the Distribution Agent's collection, holding in escrow and distribution to the Depositors and any other party deemed to be a Selling Debtor pursuant to the IFSA (in accordance with the Allocation Rules (as defined in the Side Agreement)) of the proceeds of the Transaction (as defined therein) and other payments to be made by the Purchaser and the EMEA Purchaser (or any Designated Purchaser or EMEA Designated Purchaser) to the Depositors under or in relation to the Sale Agreements;

WHEREAS, the Closing is expected to occur on March 31, 2010 and the Depositors desire to establish an account prior to Closing for the escrow of the Deposited Purchase Price and the amounts of cash in the Good Faith Deposit Escrow Account pursuant to this Agreement, it being understood by the Depositors that this Agreement is subject to amendment in accordance with Paragraph 15(a) to, among other things, reflect further agreement among the Depositors as to the terms of the escrow of the Deposited Purchase Price;

WHEREAS, the Depositors and certain other parties (together, the "IFSA Parties") have entered into that certain agreement to address interim funding and the settlement of certain intercompany matters dated June 9, 2009 (the "IFSA"), pursuant to clause 12.c and clause 12.g of which, the IFSA Parties have agreed to negotiate in good faith a protocol for resolving disputes concerning the allocation of sale proceeds from sale transactions (the "Allocation Protocol"), which shall provide binding procedures for the allocation of sales proceeds where the IFSA Parties in accordance with the terms of the IFSA are otherwise unable to reach agreement;

4

408

WHEREAS, on December 2, 2009, the U.S. Sale Order authorized the U.S. Debtors to enter into an escrow agreement, on terms and conditions reasonably satisfactory to the Committee and the Monitor acting in good faith, with an escrow agent to establish an escrow account without further order of the U.S. Bankruptcy Court.

WHEREAS, on March 30, 2010, the Canadian Court authorized NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation to enter into one or more distribution escrow agreements on terms and conditions reasonably satisfactory to the Monitor, with one or more escrow agent, without further order from the Canadian Court; and

WHEREAS, the Depositors wish to appoint JPMorgan as escrow and distribution agent and JPMorgan is willing to accept such appointment and to act as escrow and distribution agent, in each case upon the terms and conditions of the Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which is hereby irrevocably acknowledged, the Depositors and the Distribution Agent hereto agree as follows:

1.    Appointment of Distribution Agent. The Depositors hereby jointly nominate, constitute and appoint the Distribution Agent as escrow and distribution agent to hold the Escrow Property (as defined below) in the Distribution Account (as defined below) upon the terms and conditions set forth herein. The Distribution Agent hereby accepts such appointment and agrees that deposits to, and disbursements from, the Distribution Account, or applicable portions thereof, shall only be made in accordance with the terms and conditions of this Agreement. The Distribution Agent hereby represents to each of the Depositors that it has the corporate power and legal authority to execute this Agreement and to perform its obligations hereunder. The Depositors and the Distribution Agent agree that any action specified in this Agreement as to be taken by all of the Depositors, acting jointly, when taken by all of the Depositors shall be binding upon each of the Depositors and the Distribution Agent shall be entitled to act and rely upon any action taken by all of the Depositors, acting jointly, and to the extent required hereunder, the Estate Fiduciaries, as provided in this Agreement.

2.    Deposit of Escrow Property. Funds and property shall be deposited in the Distribution Account (as defined below) as follows:

(a)    At the Closing:

(i)    the Sellers shall instruct the Purchaser to deposit the Ericsson Deposited Purchase Price with the Distribution Agent, in immediately available funds, in an account established with the Distribution Agent being account number 865364897 (ABA: 021000021 and SWIFT: CHASUS33) (the "Distribution Account");

*409*

(ii) the EMEA Sellers shall instruct the EMEA Purchaser to deposit the Kapsch Deposited Purchase Price with the Distribution Agent, in immediately available funds, in the Distribution Account;

(iii) NNL, NNI and NNUK shall cause Citibank to deposit the Ericsson Good Faith Deposit with the Distribution Agent, in immediately available funds, in the Distribution Account;

(iv) NNL, NNI and NNUK shall cause Citibank to deposit the Kapsch Good Faith Deposit with the Distribution Agent, in immediately available funds, in the Distribution Account; and

(v) subject to Section 2.4(d) of the Side Agreement and in accordance with Section 12.b of the IFSA, the Selling Parties shall instruct the Purchaser and the EMEA Purchaser to deposit any payment due by the Purchaser or the EMEA Purchaser (and any Designated Purchaser and any EMEA Designated Purchaser) to the Selling Parties under the Sale Agreements that is included in the Total Proceeds (as defined in the Side Agreement) with the Distribution Agent, in immediately available funds, in the Distribution Account.

(b) After the Closing:

(i) the Sellers shall instruct the Purchaser to deposit, or to cause to be deposited, any purchase price adjustments to be paid to the Sellers under the North American ASA with the Distribution Agent, in immediately available funds, in the Distribution Account;

(ii) the EMEA Sellers shall instruct the EMEA Purchaser to deposit, or to cause to be deposited, any purchase price adjustments to be paid to the EMEA Sellers under the EMEA ASA with the Distribution Agent, in immediately available funds, in the Distribution Account; and

(iii) subject to Section 2.4(d) of the Side Agreement and in accordance with Section 12.b of the IFSA, all amounts released from escrow pursuant to any escrow agreements provided for in the Sale Agreements or the other Transaction Documents, including without limitation the NA TSA Escrow Agreement and the EMEA TSA Escrow Agreement, shall be deposited with the Distribution Agent, in immediately available funds, in the Distribution Account.

(all funds deposited in accordance with sub-paragraphs (a) and (b) above collectively, the "Escrow Funds"). The Escrow Funds together with the Permitted Investments (as defined below) and all interest and other income therefrom received by the Distribution Agent, less any funds distributed or paid in accordance with this Agreement are collectively referred to herein as

6

410

"Escrow Property". The Distribution Agent shall provide written confirmation to the Depositors, the Estate Fiduciaries and the Bondholder Group upon its receipt of any Escrow Funds from the Purchaser, the EMEA Purchaser, any Designated Purchaser, any EMEA Designated Purchaser, Citibank or otherwise. Prior to the deposits in accordance with sub-paragraphs (a) and (b) above, there shall be no other funds in the Distribution Account. The Escrow Property shall at all times, until disbursement as provided herein, remain segregated and separately identified by the Distribution Agent and shall not be commingled with the other assets held by the Distribution Agent. Each of the Depositors, the Estate Fiduciaries and the Bondholder Group acknowledges and consents to the direct payment by the Purchaser (or a Designated Purchaser) of the China Purchase Amount to Nortel Networks (China) Limited.

3.    Investment of Escrow Funds.

(a)    Until otherwise jointly directed by all of the Depositors and the Estate Fiduciaries, the Distribution Agent shall invest the Escrow Funds in Permitted Investments only. "Permitted Investments" means (1) United States Treasury obligations with maturities not in excess of one year, (2) money market funds invested solely in such United States Treasury obligations and (3) the JPMorgan Chase Bank Collateralized Money Market Deposit Account; provided, however, that in no event shall Permitted Investments include investments that are not eligible for the portfolio interest exemption or other similar exception to U.S. withholding tax. The Distribution Agent shall invest the Escrow Funds on the date of deposit so long as the relevant funds are received on or before 11:00 a.m. New York City time. Any written notice to remit payment received by the Distribution Agent after 11:00 a.m. New York City time shall be treated as if received on the following Business Day. For purposes of this Agreement, "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which the Distribution Agent located at the notice address set forth on Schedule F is authorized or required by law or executive order to remain closed. In the absence of joint written instruction from the Depositors and the Estate Fiduciaries, the Distribution Agent will invest the Escrow Funds in item (3) referenced above. The parties hereto recognize and agree that the Distribution Agent will not provide supervision, recommendations or advice relating to either the investment of the Escrow Funds or the purchase, sale, retention or other disposition of any investment described herein. The Distribution Agent shall not have any liability for any loss sustained as a result of any investment made pursuant to the terms of this Agreement or as a result of any liquidation of any investment prior to its maturity or for the failure of the Depositors to give the Distribution Agent instructions to invest or reinvest the Escrow Funds.

(b)    Any investment direction contained herein may be executed through an affiliated broker-dealer of the Distribution Agent, which shall be entitled to such affiliated broker-dealer's usual and customary fee. Neither the Distribution Agent nor any of its affiliates assume any duty or liability for monitoring the investment rating of the investments.

(c)    The Distribution Agent shall have the right to liquidate investments as necessary to distribute Escrow Property pursuant to Paragraph 5.

4.    Ownership of Escrow Property; Taxes.

(a)    The Escrow Property at all times is and shall be the exclusive property of the Depositors. Interest or other income earned on or with respect to the Escrow Property shall,

7

411

as of the end of each calendar year and to the extent required by law, be reported by the Distribution Agent on Form 1099 or Form 1042-S as the income of Depositors or their affiliates, based upon the disbursement of the Escrow Property to Depositors or their affiliates pursuant to Paragraph 5 if such income was disbursed during such calendar year or, with respect to any Escrow Property not disbursed during such calendar year, based upon each Depositor's pro rata share of such income, with each Depositor's pro rata share being deemed to be equal to such Depositor's interest allocation percentage as set forth on Exhibit 1. The Distribution Agent acknowledges and agrees that the interest percentages set forth on Exhibit 1 are not indicative of the final allocation of the Escrow Property and, accordingly, the Distribution Agent agrees to amend Form 1099 and Form 1042-S upon a joint written request from the Depositors and the Estate Fiduciaries, which request shall set forth the re-allocation of all interest and any other earnings on Escrow Property previously reported on Form 1099 and Form 1042-S; provided, however, that the Distribution Agent shall be permitted to rely at all times upon the interest percentages then set forth on Exhibit 1 delivered to the Distribution Agent and the Distribution Agent shall be entitled to act upon the allocations and interest percentages as then set forth in Exhibit 1 without liability to any Depositor, notwithstanding any subsequent amendment to Exhibit 1 setting forth any new allocation or interest percentage. Any other tax returns required to be filed will be prepared and filed by the Depositors with the IRS and any other taxing authority as required by law, including but not limited to, any applicable reporting or withholding pursuant to the Foreign Investment in Real Property Tax Act ("FIRPTA"). The Depositors acknowledge and agree that the Distribution Agent shall have no responsibility for the preparation and/or filing of any tax return or any applicable FIRPTA reporting or withholding with respect to the Escrow Property or any income earned by the Escrow Property. Each Depositor further acknowledges and agrees that any taxes payable from the income earned by such Depositor on the investment of any sums held in the Escrow Property shall be paid by such Depositor. All proceeds of the Escrow Property shall be retained in the Distribution Account and reinvested from time to time by the Distribution Agent as provided in this Agreement. The Distribution Agent shall withhold any taxes required by law, including but not limited to required withholding in the absence of proper tax documentation, and shall remit such taxes to the appropriate authorities. The parties hereto hereby agree and acknowledge that the Distribution Agent has no ownership interest in the Escrow Property but is serving solely as escrow holder having only possession thereof. This Paragraph 4 shall survive notwithstanding any termination of this Agreement or the resignation of the Distribution Agent. Each Depositor will provide the Distribution Agent with the appropriate form W-9 or W-8 either (x) if any of the Escrow Property are to be disbursed to such Depositor prior to December 31, 2010, as a condition to such Depositor's receipt of such Escrow Property from the Distribution Agent, prior to the Distribution Agent making such disbursement hereunder or (y) if none of the Escrow Property is to be disbursed to such Depositor prior to December 31, 2010, on or before December 31, 2010. If W-8 or W-9 forms, validated by the Distribution Agent, have not been provided by all of the Depositors prior to December 31, 2010 the Distribution Agent shall report taxes on a disbursement basis in the year they are disbursed.

(b)     To the extent that the Distribution Agent becomes liable for the payment of any taxes in respect of income derived from the investment of the Escrow Funds, the Distribution Agent shall satisfy such liability to the extent possible from the Escrow Property. The Depositors shall, jointly and severally, indemnify, defend and hold the Distribution Agent harmless from and against any tax, late payment, interest, penalty or other cost or expense that

8

412

may be assessed against the Distribution Agent on or with respect to the Escrow Property and the investment thereof unless such tax, late payment, interest, penalty or other expense was caused by the gross negligence or willful misconduct of the Distribution Agent. Any indemnification payments arising from the indemnification provided by this Paragraph 4(b) shall be initially satisfied out of the Escrow Property to the extent available. As among themselves, the Depositors agree that the costs of any such indemnification shall be borne on a pro rata basis by the Depositors in accordance with the percentage of the Escrow Property allocable to each of the Depositors pursuant to the Allocation Protocol or a letter of direction as described in clause (a) of Paragraph 5, and any Depositor or any of its Respective Affiliates paying in excess of its pro rata share of the cost of such indemnification shall have rights of contribution vis-à-vis any Depositor that has paid less than its pro rata share of such costs either directly to the Distribution Agent or by payment to another Depositor pursuant to this sentence; provided, that if the costs of any such indemnification arise from a breach of this Agreement or other fault of a Depositor, the Depositor(s) so in breach or at fault shall bear the cost of such indemnification and any Depositor paying in excess of its share of the cost of such indemnification, after taking into account the breach or fault of the other Depositors, shall have rights of contribution vis-à-vis any Depositor that has paid less than its share of such costs either directly to the Distribution Agent or by payment to another Depositor. The indemnification provided by this Paragraph 4(b) is in addition to the indemnification provided in Paragraph 9 and shall survive the resignation or removal of the Distribution Agent and the termination of this Agreement.

5.     Distribution of Escrow Property. The Depositors, the Estate Fiduciaries and the Distribution Agent hereby agree that, until the termination of the escrow established pursuant to this Agreement, the Distribution Agent shall hold the Escrow Property and not disburse any amounts from the Distribution Account except in accordance with the following terms and conditions:

(a)     The Distribution Agent shall disburse to any person amounts from the Escrow Property if and as so instructed pursuant to (i) a letter of direction jointly executed by the Depositors and the Estate Fiduciaries, a copy of which shall be provided by the Depositors to the Bondholder Group or (ii) where the Depositors have entered into the Allocation Protocol in accordance with clause 12 of the IFSA (the existence of the Allocation Protocol and the identity of the relevant dispute resolver(s) shall be set forth in a written notice jointly executed by the Depositors and delivered to the Distribution Agent), any Depositor's delivery to the Distribution Agent, with copies to the other Depositors, the Estate Fiduciaries and the Bondholder Group, of a duly authenticated copy of the binding decision made by the relevant dispute resolver(s) under that protocol regarding the allocation of the sales proceeds relating to the GSM/GSM-R business of the Depositors (a "Decision") which is not stayed or subject to appeal, accompanied by a certificate from such Depositor certifying as to the finality of the Decision; provided, however, that any amounts owing under Paragraph 4(b) or Paragraph 9 by any Depositor (a "Debtor Depositor") to any other Depositor at the time of an intended distribution from the Escrow Account shall be paid out of the share of the Escrow Property otherwise payable to such Debtor Depositor.

(b)     The Depositors understand and agree that no payments or reimbursements made pursuant to Section 6.1 of the North American ASA in respect of Transfer Taxes or Clause 11 of the EMEA ASA in respect of VAT and Transfer Taxes (as that term is defined in

9

413

the EMEA ASA) shall constitute any part of the Deposited Purchase Price, the amount transferred from the Good Faith Deposit Escrow Account (including any actual earnings thereon) or the Escrow Property, or shall be required to be paid by the Purchaser into the Distribution Account. In the event, however, that the Purchaser, the EMEA Purchaser or their affiliates make any payments with respect to Transfer Taxes or VAT or Transfer Taxes (as that term is defined in the EMEA ASA), as applicable, that are payable to or intended for the benefit of one or more Sellers or any affiliate or agent thereof pursuant to Section 6.1 of the North American ASA or one or more EMEA Sellers or any affiliate or agent thereof pursuant to Clause 11 of the EMEA ASA, but which are deposited into the Distribution Account (any such payment, "Misdirected Tax Payment"), then the applicable Depositor(s) shall have the right to request the release of such Misdirected Tax Payment by providing the Distribution Agent with a letter of direction executed by an Authorized Representative of such Depositor identifying the amount that is represented to be a Misdirected Tax Payment(s) and further directing the release of such Misdirected Tax Payment to the appropriate beneficiary in accordance with Paragraph 12 below. The requesting Depositor(s) shall (A) send a copy of such letter of direction to each of the other Depositors, the Estate Fiduciaries and the Bondholder Group at the same time as such letter is sent to the Distribution Agent and (B) attach thereto (i) supporting documentation evidencing the amount of the Transfer Taxes or VAT or Transfer Taxes (as that term is defined in the EMEA ASA), as applicable, payable (it being understood that the Distribution Agent shall have no responsibility for verifying the accuracy, delivery or sufficiency of such supporting documentation) and (ii) a certification of an Authorized Representative of such Depositor that the amount requested by such Depositor represents amounts deposited into escrow that are payable to or intended for the benefit of such Depositor by the Purchaser or its affiliates with respect to Transfer Taxes pursuant to the North American ASA or VAT or Transfer Taxes (as that term is defined in the EMEA ASA) pursuant to the EMEA ASA, as applicable. The Distribution Agent shall on or as soon as reasonably practicable following the tenth (10th) day following receipt of such letter of direction, disburse to such Depositor the amounts requested therein; provided, however, that if the Distribution Agent receives a notice of objection from one or more of the Depositors or an Estate Fiduciary prior to making such disbursement (but in no event later than 3:00 p.m. EST on such release date), the Distribution Agent shall not make such disbursement until the Distribution Agent either (x) receives an order of a court of competent jurisdiction (as provided in Paragraph 21 below), which is not stayed or subject to appeal, instructing it to make such distribution or (y) the objecting Depositor(s) and/or Estate Fiduciary(ies) provide written notice to the Distribution Agent withdrawing such objection. Subject to the proviso to the preceding sentence, the Distribution Agent shall be entitled to act upon any such written letter of direction even if not countersigned by one or more of the other Depositors and/or Estate Fiduciary(ies).

(c)    The Distribution Agent shall have no responsibility or obligation for investigating or determining the validity or sufficiency of any matter asserted in a letter of direction or of any pending claim for entitlement to release of funds from the Distribution Account. The Distribution Agent shall have the right to withhold an amount equal to the amount due and owing to the Distribution Agent, plus any reasonable costs and expenses incurred by Distribution Agent in accordance with the terms of this Agreement in connection with the termination of the Distribution Account.