414

(d)    No Depositor shall submit to the Distribution Agent a certificate that falsely certifies to the finality of a Decision.

(e)    Any request for a distribution pursuant to this Paragraph 5 shall be accompanied by a completed Schedule E with respect to the Depositors participating in such distribution, unless a completed Schedule E with respect to such Depositor has previously been provided to the Distribution Agent (in which case the Schedule E to be provided to the Distribution Agent need only contain the requisite information with respect to the Depositors as to whom no previous Schedule E has been provided to the Distribution Agent). The Depositors shall comply with any request from another Depositor for information necessary for inclusion in Schedule E.

(f)    The Depositors and the Estate Fiduciaries hereby agree that they shall cause the Distribution Agent to disburse amounts from the Distribution Account in accordance with the procedures set forth in this Paragraph 5 to satisfy (i) any obligations to make the Total Payments (as defined in the Side Agreement) in accordance with the terms of the Side Agreement; and (ii) the obligation of NNI to pay USD 100,000 to the Pension Benefit Guaranty Corporation at Closing.

6.    Termination of Distribution Account.    The Agreement shall terminate upon the distribution of all Escrow Property from the Distribution Account established hereunder in accordance with Paragraph 5 hereof, subject to the survival of provisions which expressly survive the termination of this Agreement; provided, however, that this Agreement shall not terminate prior to the date on which the Depositors and the Estate Fiduciaries notify the Distribution Agent that (i) all purchase price adjustment amounts owing to the Sellers under the terms of the North American ASA have been deposited in the Distribution Account by the Purchaser, (ii) all purchase price adjustment amounts owing to the EMEA Sellers under the terms of the EMEA ASA have been deposited in the Distribution Account by the EMEA Purchaser, and (iii) all amounts released from escrow pursuant to any escrow agreements provided for in the Sale Agreements or the other Transaction Documents have been deposited in the Distribution Account by the Purchaser and the EMEA Purchaser in accordance herewith and subsequently distributed as provided hereunder.

7.    Method of Payment.    Any payments to be made hereunder shall be made by wire transfer in immediately available funds to the account of such party designated on Schedule E annexed hereto (collectively, the "Standing Settlement Instructions"). Any Depositor shall have the right, from time to time, to provide written notice to the Distribution Agent and the other Depositors updating its Standing Settlement Instructions, and the Distribution Agent shall thereafter use such revised Standing Settlement Instructions for purposes of any subsequent distributions to such Depositor pursuant to Paragraph 5 until such Standing Settlement Instructions have been further updated pursuant to this Paragraph 7.

The Depositors acknowledge that the Distribution Agent may rely upon all identifying information set forth in the Standing Settlement Instructions. The Distribution Agent and the Depositors agree that such Standing Settlement Instructions shall be effective as the

11

funds transfer instructions of the Depositors, without requiring a verifying callback, whether or not authorized, if the Distribution Agent has previously authenticated such Standing Settlement Instructions with respect to such Depositor. The Depositors acknowledge that such Standing Settlement Instructions are a security procedure and are commercially reasonable.

8.   Monthly Reports.   The Distribution Agent shall, promptly following the end of each calendar month, provide monthly account statements to the Depositors with respect to the Distribution Account, with copies to the Estate Fiduciaries and the Bondholder Group.

9.   Liability of Distribution Agent.   The Distribution Agent's sole liability hereunder shall be to hold and invest the Escrow Property and any moneys or other properties received with respect thereto, to make payments and distributions therefrom in accordance with the terms of this Agreement, and otherwise to discharge its obligations hereunder. It shall be under no obligation to institute or defend any action, suit or legal proceeding in connection herewith, or to take any other action likely to involve it in expense unless first indemnified to its satisfaction by the party or parties who desire that it undertake such action. The Distribution Agent may execute any of its powers and perform any of its duties hereunder directly or through agents or attorneys (and shall be liable only for the careful selection of any such agent or attorney) and may consult with counsel, accountants and other skilled persons to be selected and retained by it. The Distribution Agent shall not be liable for anything done, suffered or omitted by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons. The Distribution Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction (as set forth in Paragraph 21 below) determines that the Distribution Agent's gross negligence or willful misconduct was the cause of any loss to any Depositor. The Distribution Agent may rely upon and shall not be liable for acting or refraining from acting pursuant to any written notice, document, instruction or request furnished to it hereunder and reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties without inquiry and without requiring substantiating evidence of any kind. The Distribution Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, notice, instruction or request. The Distribution Agent shall have no duty to solicit any payments which may be due to it or in connection with the Distribution Account, including, without limitation, the Escrow Property, nor shall the Distribution Agent have any duty or obligation to confirm or verify the accuracy or correctness of any amounts deposited with it hereunder. The Distribution Agent shall have no duty or obligation to make any calculations of any kind hereunder. In the event that the Distribution Agent shall be uncertain or believe there is some ambiguity as to its duties or rights hereunder or shall receive instructions, claims or demands from any party hereto which, in its opinion, conflict with any of the provisions of this Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be given a direction in writing by the parties pursuant to Paragraph 5 which eliminates such

12

416

ambiguity or uncertainty to the satisfaction of the Distribution Agent or by a final and non-appealable order or judgment of a court of competent jurisdiction (as set forth in Paragraph 21 below).

Anything in this Agreement to the contrary notwithstanding, in no event shall the Distribution Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Distribution Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

If any dispute should arise with respect to the payment or ownership or right of possession of the Escrow Property, or any part thereof, at any time, that cannot be settled under other provisions hereof, the Distribution Agent is authorized to retain in its possession, without liability to anyone, all or any part of the Escrow Property, as applicable, or the proceeds from any sale thereof until a distribution is requested in accordance with Paragraph 5.

The Depositors shall, jointly and severally, indemnify and hold harmless the Distribution Agent and its affiliates and their respective successors, assigns, directors, agents and employees (the "Indemnitees") from all losses, costs, damages, claims, liabilities, penalties, judgments, settlements, litigation, investigations, and expenses (including, without limitation, the reasonable fees and expenses of outside counsel) (collectively, "Losses") arising out of or in connection with (a) the Distribution Agent's execution and performance of this Agreement, tax reporting or withholding, the enforcement by the Distribution Agent of any of its rights or remedies under or in connection with this Agreement, or as may arise by reason of any act, omission or error of the Indemnitee, except, in the case of any Indemnitee, to the extent that such Losses are finally adjudicated by a court of competent jurisdiction (as set forth in Paragraph 21 below) to have been caused by the gross negligence or willful misconduct of such Indemnitee, or (b) its following any instructions or directions, whether joint or singular, from the parties, except to the extent that its following any such instruction or direction is expressly forbidden by the terms hereof. The parties hereto acknowledge that the foregoing indemnities shall survive the resignation, replacement or removal of the Distribution Agent or the termination of this Agreement. Any indemnity payments to the Distribution Agent arising from the indemnification provided by this Paragraph 9 shall be initially satisfied from the Escrow Property to the extent available. As among themselves, the Depositors agree that the costs of any such indemnification shall be borne on a pro rata basis by the Depositors in accordance with the percentage of the Escrow Property allocable to each of the Depositors pursuant to the Allocation Protocol or a letter of direction as described in clause (a) of Paragraph 5, and any Depositor or any of their Respective Affiliates paying in excess of its pro rata share of the cost of such indemnification shall have rights of contribution vis-à-vis any Depositor that has paid less than its pro rata share of such costs either directly to the Distribution Agent or by payment to another Depositor pursuant to this sentence; provided, that if the costs of any such indemnification arise from a breach of this Agreement or other fault of a Depositor, the Depositor(s) so in breach or at fault shall bear the cost of such indemnification and any Depositor paying in excess of its share of the cost of such indemnification, after taking into account the breach or fault of the other Depositors, shall have rights of contribution vis-à-vis any Depositor that has paid less than its share of such costs either directly to the Distribution Agent or by payment to another Depositor. The indemnification provided by this Paragraph 9 is in addition to the indemnification provided in

417

Paragraph 4(b) and shall survive the resignation or removal of the Distribution Agent and the termination of this Agreement.

The duties and responsibilities of the Distribution Agent hereunder shall be determined solely by the express provisions of this Agreement, which shall be deemed purely ministerial in nature, and no other or further duties or responsibilities shall be implied. The Distribution Agent shall not have any liability under, nor duty to inquire into, the terms and provisions of any agreement or instructions, including the Sale Agreements, the Side Agreement, the Transaction Documents, the IFSA and the Allocation Protocol, other than as outlined in this Agreement, nor shall the Distribution Agent be required to determine if any person or entity has complied with any such agreements, nor shall any additional obligations of the Distribution Agent be inferred from the terms of such agreements, even though reference thereto may be made in this Agreement. In the event of any conflict between the terms and provisions of this Agreement, those of the Sale Agreements, any schedule or exhibit attached to the Sale Agreements, the Side Agreement, the Transaction Documents, the IFSA, the Allocation Protocol, or any other agreement among Depositors, or any of them, the terms and conditions of this Agreement shall control solely to the extent such conflict is with respect to the rights, duties, obligations and liabilities of the Distribution Agent.

10.     [Reserved].

11.     Resignation or Removal of Distribution Agent. The Distribution Agent may resign as such following the giving of thirty (30) days' prior written notice to the other parties hereto and upon selection of a successor escrow agent pursuant to the provisions of this Agreement. Similarly, the Distribution Agent may be removed and replaced following the giving of thirty (30) days' prior written notice to the Distribution Agent by the Depositors and the Estate Fiduciaries. In either event the Distribution Agent shall then deliver the balance of the Escrow Property then in its possession to a successor escrow agent as shall be appointed by the Depositors and the Estate Fiduciaries as evidenced by a written notice sent to the Distribution Agent and signed by the Depositors and the Estate Fiduciaries.

If the Depositors and the Estate Fiduciaries are unable to agree upon a successor or shall have failed to appoint a successor prior to the expiration of thirty (30) days following the date of notice of resignation or removal, the then-acting escrow agent may petition any court of competent jurisdiction (as set forth in Paragraph 21 below) for the appointment of a successor escrow agent or otherwise appropriate relief, and any such resulting appointment shall be binding upon all of the parties hereto. For the avoidance of doubt, the parties hereto acknowledge that under no circumstances shall any party hereto be entitled to obtain a distribution from the Distribution Account as a result of the resignation of the Distribution Agent.

The successor escrow agent shall be a bank or trust company having assets in excess of USD5,000,000,000.

Upon acknowledgement by any successor escrow agent of the receipt of the then-remaining balance of the Escrow Property, the then-acting escrow agent shall be fully released and relieved of all duties, responsibilities and obligations under this Agreement.

14

Any corporation into which the Distribution Agent in its individual capacity may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Distribution Agent in its individual capacity shall be a party, or any corporation to which substantially all the corporate trust business of the Distribution Agent in its individual capacity may be transferred, shall be the Distribution Agent under this Agreement without further act.

12.    Notices.  All communications hereunder shall be in writing and shall be deemed to be duly given and received:  (i) upon delivery, if delivered personally, or upon confirmed transmittal, if by facsimile; (ii) on the next Business Day if sent by overnight courier; or (iii) four (4) Business Days after mailing if mailed by prepaid registered mail, return receipt requested, to the appropriate notice address set forth in Schedule F or at such other address as any party hereto may have furnished to the other parties hereto in writing by registered mail, return receipt requested.

Notwithstanding the above, in the case of communications delivered to the Distribution Agent pursuant to (i), (ii) or (iii) of this Paragraph 12, such communications shall be deemed to have been given on the date received by an officer of the Distribution Agent or any employee of the Distribution Agent who reports directly to any such officer at the above-referenced office.  In the event that the Distribution Agent, in its sole discretion, shall determine that an emergency exists, the Distribution Agent may use such other means of communication as the Distribution Agent deems appropriate.

In the event wire transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile or otherwise, the Distribution Agent is authorized to seek confirmation of such instructions by telephone call-back to the person or persons designated on Schedule G hereto (each an "Authorized Representative" of the applicable Depositor), and the Distribution Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated.  The persons and telephone numbers for call-backs may be changed only in writing actually received and acknowledged by the Distribution Agent, it being understood that each Depositor shall have the right to replace its Authorized Representative from time to time by providing written notice to the Distribution Agent, the other Depositors, the Estate Fiduciaries and the Bondholder Group or by providing a copy of a court order of a court of competent jurisdiction (as provided in Paragraph 21 below) to the Distribution Agent designating a successor Authorized Representative.  The Depositors acknowledge that such security procedure is commercially reasonable.

If, at any time prior to the termination of this Agreement, any of the Estate Fiduciaries is discharged, removed or dissolved, whether pursuant to an approved plan of reorganization or liquidation by order of the Canadian Court or U.S. Bankruptcy Court or otherwise, any Depositor or Estate Fiduciary may present to the Distribution Agent evidence of such discharge, removal or dissolution in the form of a court order or other officially certified document which upon receipt by the Distribution Agent shall constitute an effective amendment to this Agreement, and such Estate Fiduciary by operation of this Agreement, as amended, shall cease to be such for all purposes of this Agreement and the consent of such removed or dissolved Estate Fiduciary shall no longer be required for any purposes hereunder.  If such discharge, removal or dissolution provides for a successor to the duties and responsibilities of such removed

15

or dissolved Estate Fiduciary, or a successor to the same or substantially similar duties and responsibilities of such removed or dissolved Estate Fiduciary (including, without limitation, a trustee in bankruptcy) is otherwise appointed, then the preceding sentence shall be of no effect with respect to such successor entity, the rights and responsibilities of such Estate Fiduciary hereunder shall pass automatically to such successor entity and such successor entity shall be deemed to be a party to this Agreement as if it were a signatory hereto.

If, at any time prior to the termination of this Agreement, any of the Depositors is liquidated or dissolved, whether pursuant to an approved plan of reorganization or liquidation by order of the Canadian Court or U.S. Bankruptcy Court (or, in the case of the EMEA Sellers, such order of a court of competent jurisdiction or by operation of law) or otherwise, any Depositor, or Estate Fiduciary (as the case may be) shall present to the Distribution Agent evidence of such dissolution or liquidation in the form of a court order or other officially certified document which upon receipt by the Distribution Agent shall constitute an effective amendment to this Agreement, and such dissolved or liquidated Depositor by operation of this Agreement, as so amended, shall cease to be such for all purposes of this Agreement, as amended, and the consent of such dissolved or liquidated Depositor shall no longer be required for any purposes hereunder. If such dissolution or liquidation provides for a successor to such dissolved or liquidated Depositor, then such rights and responsibilities shall pass automatically to such successor entity.

The Depositors represent, warrant and covenant that each document, notice, instruction or request provided by such party to the Distribution Agent shall comply with applicable laws and regulations. Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the Depositors to the fullest extent permitted by law, to the end that this Agreement shall be enforced as written.

13.    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but such counterparts shall constitute one and the same agreement. Facsimile copies may be deemed originals for the purpose of this Agreement.

14.    Paragraph Headings. The paragraph headings of this Agreement are for convenience of reference only and shall not be deemed to limit or affect any of the provisions hereof.

15.    Amendments; No Waivers.

(a)    Except for the resignation, removal or replacement of an Estate Fiduciary as set forth in Paragraph 12 or the liquidation or dissolution of a Depositor as set forth in Paragraph 12, any provision of this Agreement may be waived or amended if, and only if, such amendment or waiver is in writing and is signed by the Depositors, the Estate Fiduciaries and the Distribution Agent (with a copy thereof to the Bondholder Group) and, if prior to the entry of a final decree closing the Bankruptcy Cases, such amendment or waiver is approved by both the U.S. Bankruptcy Court and the Canadian Court; provided, however, that (i) court approval shall not be required of any applicable court (whether the U.S. Bankruptcy Court or the Canadian Court) if a final decree closing the Bankruptcy Cases pending before such court shall have been entered by such court and (ii) court approval shall not be required of any court if final decrees

16

420

terminating the Bankruptcy Cases shall have been entered by the U.S. Bankruptcy Court and the Canadian Court.

(b)   No failure by any party hereto to insist upon the strict performance of any covenant, duty, agreement or condition of this Agreement, or to exercise any right or remedy consequent upon a breach hereof, shall constitute a waiver of any such breach or any other covenant, duty, agreement or condition hereof.

16.   Entire Agreement; No Third Party Beneficiaries. This Agreement (including any exhibits, schedules and amendments hereto) and (solely with respect to the Depositors that are parties thereto) the North American ASA, the EMEA ASA, the Transition Services Agreement, the EMEA TSA, the Side Agreement, the IFSA, the Appropriate License Termination (as defined in the IFSA) and the Allocation Protocol to be entered into pursuant thereto (a) constitute the entire Agreement and understandings of the parties hereto and supersedes all prior agreements and understandings, both written and oral, among the parties hereto with respect to the subject matter hereof and (b) is not intended to confer upon any other Person any rights or remedies hereunder; provided, however, that the Joint Administrators shall be entitled to enforce and take the benefit of Paragraph 20 hereof.

17.   Governing Law. Subject to Paragraph 20, this Agreement shall be governed by and construed in accordance with the Laws of the State of New York (without regard to the rules of conflict of laws of the State of New York or any other jurisdiction).

18.   Account Opening Information. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. When an account is opened, the Distribution Agent will ask for information that will allow it to identify relevant parties.

19.   Severability. If any provision of this Agreement is determined by a court of competent jurisdiction (as set forth in Paragraph 21 below) to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.

20.   Exclusion of Liability for the Joint Administrators and the French Office Holders.

(a)   Subject to Paragraph 20(c) below, the parties hereto agree that the Joint Administrators have negotiated this Agreement both in their capacities as administrators of the EMEA Debtors and for and on behalf of the EMEA Debtors and that none of the Joint Administrators or their respective firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own

17

421

part or in respect of any failure on the part of any EMEA Debtor to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations whether such liability would arise under Paragraph 99(4) of Schedule B1 to the Insolvency Act or otherwise howsoever.

(b)     Subject to Paragraph 20(c) below, the parties hereto agree that the French Office Holders have negotiated this Agreement for and on behalf of NNSA, and that none of the French Office Holders or their respective firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of NNSA to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations whether such liability would arise under applicable laws or otherwise howsoever.

(c)     Nothing in this Section 20 or any other provision of this Agreement shall prevent the Sellers or the Distribution Agent from bringing any action against the EMEA Debtors, NNSA, the French Office Holders or the Joint Administrators for fraud.

Notwithstanding anything in Paragraph 21, (i) any claim, action or proceeding against the Joint Administrators in their personal capacities (and not as agents for any EMEA Debtor or NNSA) under this Agreement shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English Courts; and (ii) any claim, action or proceeding against the French Office Holders in their personal capacities (and not as agents for NNSA) under this Agreement shall be governed by the laws of France and subject to the exclusive jurisdiction of the French courts.

21.     JURISDICTION.  SUBJECT TO PARAGRAPH 20, FOR ANY CLAIM, ACTION OR PROCEEDING ARISING UNDER OR OUT OF, IN RESPECT OF, OR IN CONNECTION WITH THIS AGREEMENT, EACH PARTY HEREBY IRREVOCABLY SUBMITS TO AND ACCEPTS FOR ITSELF AND ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF AND SERVICE OF PROCESS PURSUANT TO THE RULES OF BOTH (I) THE U.S. BANKRUPTCY COURT AND THE CANADIAN COURT, IF SUCH CLAIM, ACTION OR PROCEEDING IS BROUGHT PRIOR TO THE ENTRY OF A FINAL DECREE CLOSING THE BANKRUPTCY CASES INVOLVING THE RELEVANT DEPOSITORS PENDING BEFORE SUCH COURTS, INCLUDING THAT CERTAIN CROSS-BORDER INSOLVENCY PROTOCOL APPROVED BY THE U.S. BANKRUPTCY COURT PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE IN AN ORDER DATED JANUARY 15, 2009, AND BY THE CANADIAN COURT PURSUANT TO AN ORDER DATED JANUARY 14, 2009, AS AMENDED OR AS AMENDED AND RESTATED FROM TIME TO TIME, AND (II) THE FEDERAL COURTS IN THE SOUTHERN DISTRICT OF NEW YORK AND THE STATE COURTS OF THE STATE OF NEW YORK, COUNTY OF NEW YORK (COLLECTIVELY, THE "NEW YORK COURTS"), IF BROUGHT AFTER ENTRY OF SUCH FINAL DECREE CLOSING SUCH BANKRUPTCY CASES INVOLVING THE

18

RELEVANT DEPOSITORS PENDING BEFORE THE U.S. BANKRUPTCY COURT OR THE CANADIAN COURT, WAIVES ANY DEFENSE OF FORUM NON CONVENIENS AND AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY ARISING UNDER OR OUT OF, IN RESPECT OF, OR IN CONNECTION WITH THIS AGREEMENT. EXCEPT AS PROVIDED IN THE FOREGOING NO PARTY HERETO SHALL INITIATE ANY CLAIM, ACTION OR PROCEEDING ARISING UNDER OR OUT OF, IN RESPECT OF, OR IN CONNECTION WITH THIS AGREEMENT IN ANY OTHER STATE OR FEDERAL COURT IN THE UNITED STATES OF AMERICA, CANADA OR ANY COURT IN ANY OTHER COUNTRY. EACH PARTY FURTHER IRREVOCABLY DESIGNATES AND APPOINTS THE INDIVIDUAL IDENTIFIED PURSUANT TO PARAGRAPH 12 HEREOF (OR, IN THE CASE THAT A SUCCESSOR PERSON IS APPOINTED AS AUTHORIZED REPRESENTATIVE PURSUANT TO PARAGRAPH 12, SUCH SUCCESSOR PERSON) TO RECEIVE NOTICES ON ITS BEHALF, AS ITS AGENT TO RECEIVE ON ITS BEHALF SERVICE OF ALL PROCESS IN ANY SUCH CLAIM, ACTION OR PROCEEDING BEFORE ANY BODY, SUCH SERVICE BEING HEREBY ACKNOWLEDGED TO BE EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT. A COPY OF ANY SUCH PROCESS SO SERVED SHALL BE MAILED BY REGISTERED MAIL TO EACH PARTY AT ITS ADDRESS PROVIDED PURSUANT TO PARAGRAPH 12; PROVIDED THAT, UNLESS OTHERWISE PROVIDED BY APPLICABLE LAW, ANY FAILURE TO MAIL SUCH COPY SHALL NOT AFFECT THE VALIDITY OF THE SERVICE OF SUCH PROCESS. IF ANY AGENT SO APPOINTED REFUSES TO ACCEPT SERVICE, THE DESIGNATING PARTY HEREBY AGREES THAT SERVICE OF PROCESS SUFFICIENT FOR PERSONAL JURISDICTION IN ANY CLAIM, ACTION OR PROCEEDING AGAINST IT IN THE APPLICABLE JURISDICTION MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO ITS ADDRESS PROVIDED PURSUANT TO PARAGRAPH 12, EACH PARTY HEREBY ACKNOWLEDGES THAT SUCH SERVICE SHALL BE EFFECTIVE AND BINDING IN EVERY RESPECT. NOTHING HEREIN SHALL AFFECT THE RIGHT TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR SHALL LIMIT THE RIGHT OF ANY PARTY TO BRING ANY CLAIM, ACTION OR PROCEEDING AGAINST THE OTHER PARTY IN ANY OTHER JURISDICTION. NOTWITHSTANDING ANYTHING IN THIS PARAGRAPH 21 TO THE CONTRARY, ANY CLAIM, ACTION OR PROCEEDING SET FORTH IN PARAGRAPH 20 SHALL BE BROUGHT EXCLUSIVELY IN THE COURTS CONTEMPLATED IN PARAGRAPH 20. FINALLY, REGARDLESS OF THE JURISDICTION OF THE APPLICABLE COURT, THE PARTIES FURTHER HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY LAWSUIT OR JUDICIAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

22.    Interpretation. As used in this Agreement (including all exhibits, schedules and amendments hereto), the masculine, feminine or neuter gender and

19

the singular or plural number shall be deemed to include the others whenever the context so requires. References to Paragraphs and Articles refer to sections and articles of this Agreement, unless the context otherwise requires. Words such as "herein," "hereinafter," "hereof," "hereto," "hereby" and "hereunder," and words of like import, unless the context requires otherwise, refer to this Agreement. The captions contained herein are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.

23.    <u>Compliance with Court Orders.</u>    In the event that any of the Escrow Property shall be attached, garnished or levied upon by any court order, or the distribution or disbursement thereof shall be stayed or enjoined by an order of a court of competent jurisdiction (as set forth in <u>Paragraph 21</u> above), or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Agreement, the Distribution Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Distribution Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

24.    <u>Force Majeure.</u>    In the event that any party hereto or the Distribution Agent is unable to perform its obligations under the terms of this Agreement because of acts of God, strikes, equipment or transmission failure or damage reasonably beyond its control, or other cause reasonably beyond its control, the Distribution Agent shall not be liable for damages to the other parties for any damages resulting from such failure to perform otherwise from such causes. Performance under this Agreement shall resume when the Distribution Agent is able to perform substantially.

25.    <u>Patriot Act Disclosure.</u>    Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (the "USA PATRIOT Act") requires the Distribution Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it. Accordingly, each Depositor acknowledges that Section 326 of the USA PATRIOT Act and the Distribution Agent's identity verification procedures require the Distribution Agent to obtain information which may be used to confirm such Depositor's identity including without limitation name, address and organizational documents ("Identifying Information"). Each Depositor agrees to provide the Distribution Agent with and consent to the Distribution Agent obtaining from third parties any such Identifying Information with respect to it required as a condition of opening an account with or using any service provided by the Distribution Agent.

26.    <u>Taxpayer Identification Numbers ("TIN").</u>    Each Depositor will provide the Distribution Agent with its fully executed Internal Revenue Service ("IRS") Form W-8, or W-9 and/or other required documentation as set forth in

20

Paragraph 4(a). Each Depositor providing such documentation represents that its correct TIN assigned by the IRS, or any other taxing authority, shall be set forth in the delivered forms.

27.    Allocation Protocol. The Depositors and the Estate Fiduciaries agree and acknowledge that nothing in this Agreement including, without limitation, Paragraph 5(f), shall prejudice any pre-existing rights or obligations of any of the Depositors and the Estate Fiduciaries to argue the appropriateness of any allocation of the Escrow Property before a dispute resolver(s) appointed pursuant to the Allocation Protocol. Without limitation to the foregoing, the Depositors' interest allocation percentages set forth on Exhibit 1 are not indicative of the final allocation of the Escrow Property and shall not be presented by any of the Depositors and the Estate Fiduciaries in any of their submissions (whether in writing or orally) as to the appropriate allocation of the Escrow Property before the dispute resolver(s) appointed pursuant to the Allocation Protocol. Furthermore, the Depositors and the Estate Fiduciaries agree that (i) the China Purchase Amount agreed to solely for the purpose of complying with local law requirements and to facilitate the closing of the transactions contemplated by the North American ASA and the EMEA ASA and such allocation shall have no precedential impact on the allocation of the Escrow Property to any other Depositor or any other sales proceeds before a dispute resolver appointed pursuant to the Allocation Protocol and (ii) any consideration paid pursuant to or evidenced by any Local Sale Agreement or any agreement or instrument, including bills of sale and/or assignment or assumption agreements providing for (x) the sale, transfer, assignment or other conveyance to the EMEA Purchaser and relevant EMEA Designated Purchasers, in accordance with the requirements of local Law, of any EMEA Assets located in countries where such local sale agreements are required or desirable; and (y) the assumption by the EMEA Designated Purchasers of any EMEA Assumed Liabilities that the EMEA Purchaser intends to allocate to them (other than the China Purchase Amount) was agreed to solely for the purpose of complying with local law requirements and to facilitate the closing of the transactions contemplated by the North American ASA the EMEA ASA and the NNSA Irrevocable Offer and such consideration shall have no precedential impact on the allocation of the Escrow Property to any Depositor of any sales proceeds before a dispute resolver appointed pursuant to the Allocation Protocol.

28.    Exclusion of Liability for Estate Fiduciaries. The Depositors and the Distribution Agent agree that (a) each of the Estate Fiduciaries has negotiated and is entering into this Agreement as a representative of its applicable creditor constituency for the purpose of benefiting from the rights being granted hereunder and to allow the Distribution Agent to be able to rely on any joint instructions signed by the Estate Fiduciaries and (b) none of the Estate Fiduciaries, their firms, members or affiliates of such parties and such parties respective partners, associates, employees, advisers, representatives or agents shall incur any liability whatsoever under this Agreement.

425

*[Signature Pages follow]*

GSM/GSM-R Escrow Agreement

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed on the day and year first above written.

NORTEL NETWORKS LIMITED

By:_____
Name:  John Doolittle
Title:   Senior Vice-President, Corporate
Services and Chief Financial Officer

By:_____
Name:  Clarke Glaspell
Title:    Controller

NORTEL NETWORKS INC.

By:_____
Name:  Lynn C. Egan
Title:  Secretary

NORTEL NETWORKS CORPORATION

By:_____
Name:  John Doolittle
Title:  Senior Vice-President, Corporate
Services and Chief Financial Officer

By:_____
Name:  Clarke Glaspell
Title:   Controller

DISTRIBUTION AGENT

JPMorgan Chase Bank, N.A., as Distribution
Agent

By:_____
Name:
Title:

ERNST & YOUNG INC. IN ITS CAPACITY
AS THE MONITOR OF NORTEL
NETWORKS CORPORATION ET AL.,
AND NOT IN ITS PERSONAL CAPACITY

By:_____
Name:
Title:

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF NORTEL
NETWORKS INC., ET. AL.

By:  Flextronics Corporation, solely in its
capacity as Chair of the Committee and not in
its individual capacity

By:_____
Name:  Timothy Burling
Title:   Vice President, Finance

S-1

GSM/GSM-R Escrow Agreement

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed on the day and year first above written.

NORTEL NETWORKS LIMITED

By: _____
Name:  John Doolittle
Title:  Senior Vice-President, Corporate Services and Chief Financial Officer

By: _____
Name:  Clarke Glaspell
Title:  Controller

NORTEL NETWORKS INC.

By: _____
Name:  Lynn Egan
Title:  Secretary

NORTEL NETWORKS CORPORATION

By: _____
Name:  John Doolittle
Title:  Senior Vice-President, Corporate Services and Chief Financial Officer

By: _____
Name:  Clarke Glaspell
Title:  Controller

DISTRIBUTION AGENT

JPMorgan Chase Bank, N.A., as Distribution Agent

By: _____
Name:
Title:

ERNST & YOUNG INC. IN ITS CAPACITY AS THE MONITOR OF NORTEL NETWORKS CORPORATION ET AL., AND NOT IN ITS PERSONAL CAPACITY

By: _____
Name:
Title:

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NORTEL NETWORKS INC., ET. AL.

By:  Flextronics Corporation, solely in its capacity as Chair of the Committee and not in its individual capacity

By: _____
Name:  Timothy Burling
Title:   Vice President, Finance

S-1

DISTRIBUTION AGENT

JPMorgan Chase Bank, N.A., as Distribution
Agent

By:
Name:        SAVERIO A. LUNETTA
Title:        VICE PRESIDENT

429

ERNST & YOUNG INC. IN ITS CAPACITY
AS THE MONITOR OF NORTEL
NETWORKS CORPORATION ET AL.,
AND NOT IN ITS PERSONAL CAPACITY

By: _____
Name:  Sharon  Hamilton
Title:  Senior  Vice - President

GSM/GSM-R Escrow Agreement

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed on the day and year first above written.

NORTEL NETWORKS LIMITED

By:_____
Name: John Doolittle
Title:   Senior Vice-President, Finance and
Corporate Services

By:_____
Name:   Anna Ventresca
Title:    General Counsel – Corporate and
Corporate Secretary

NORTEL NETWORKS INC.

By:_____
Name:  Anna Ventresca
Title:   Chief Legal Officer

NORTEL NETWORKS CORPORATION

By:_____
Name: John Doolittle
Title:   Senior Vice-President, Finance and
Corporate Services

By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and
Corporate Secretary

DISTRIBUTION AGENT

JPMorgan Chase Bank, N.A., as Distribution
Agent

By:_____
Name:
Title:

ERNST & YOUNG INC. IN ITS CAPACITY
AS THE MONITOR OF NORTEL
NETWORKS CORPORATION ET AL.,
AND NOT IN ITS PERSONAL CAPACITY




By:_____
Name:
Title:

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF NORTEL
NETWORKS INC., ET. AL.

By: Flextronics Corporation, solely in its
capacity as Chair of the Committee and not in
its individual capacity

By:_____
Name:  Timothy Burling
Title:    Vice President, Finance

S-1

GSM/GSM-R Escrow Agreement

SIGNED in the name and on behalf of **NORTEL NETWORKS TECHNOLOGY CORPORATION** by

NORTEL NETWORKS LIMITED, as Representative

By: _____
Name:  John Doolittle
Title:   Senior Vice-President, Corporate Services and Chief Financial Officer

By: _____
Name:  Clarke Glaspell
Title:   Controller

SIGNED in the name and on behalf of **NORTEL DE MÉXICO, S. DE R.L. DE C.V.** by

NORTEL NETWORKS LIMITED, as Representative

By: _____
Name:  John Doolittle
Title:   Senior Vice-President, Corporate Services and Chief Financial Officer

By: _____
Name:  Clarke Glaspell
Title:   Controller

432

GSM/GSM-R Escrow Agreement

SIGNED in the name and on behalf of NORTEL NETWORKS (CHINA) LIMITED by

NORTEL NETWORKS LIMITED, as Representative

By:
Name:  John Doolittle
Title:   Senior Vice-President, Corporate Services
and Chief Financial Officer.

By:
Name:  Clarke Glaspell
Title:   Controller

SIGNED in the name and on behalf of NORTEL NETWORKS GLOBAL CORPORATION
by

NORTEL NETWORKS LIMITED, as Representative

By:
Name:  John Doolittle
Title:   Senior Vice-President, Corporate Services
and Chief Financial Officer

By:
Name:  Clarke Glaspell
Title:   Controller

433

ARCHITEL SYSTEMS (U.S.)
CORPORATION

By _____
    Name: John Doolittle
    Title: President

CORETEK, INC.

By _____
    Name: John Doolittle
    Title: President

NORTEL ALTSYSTEMS INC.

By _____
    Name: John Doolittle
    Title: President

NORTEL ALTSYSTEMS
INTERNATIONAL INC.

By _____
    Name: John Doolittle
    Title: President

[Signature Page to Distribution Escrow Agreement]

NORTEL NETWORKS APPLICATIONS
MANAGEMENT SOLUTIONS INC.

By _____
Name: John Doolittle
Title: President

NORTEL NETWORKS CABLE
SOLUTIONS INC.

By _____
Name: John Doolittle
Title: Vice-President

NORTEL NETWORKS CAPITAL
CORPORATION

By _____
Name: John Doolittle
Title: President

NORTEL NETWORKS HPOCS INC.

By _____
Name: John Doolittle
Title: President

[Signature Page to Distribution Escrow Agreement]

NORTEL NETWORKS INTERNATIONAL INC.

By

Name: John Doolittle
Title:  President

NORTEL NETWORKS OPTICAL COMPONENTS INC.

By

Name: John Doolittle
Title:  President

NORTHERN TELECOM INTERNATIONAL INC.

By

Name: John Doolittle
Title:  President

QTERA CORPORATION

By

Name: John Doolittle
Title:  President

[Signature Page to Distribution Escrow Agreement]

436

SONOMA SYSTEMS

By _____
Name: John Doolittle
Title: President and Treasurer

XROS, INC.

By _____
Name: John Doolittle
Title: President

[Signature Page to Distribution Escrow Agreement]

*437*

GSM/GSM-R Escrow Agreement

SIGNED in the name and on behalf of NORTEL NETWORKS (ASIA) LIMITED by

NORTEL NETWORKS LIMITED, as Representative

By: _____

Name:  John Doolittle
Title:  Senior Vice-President, Corporate
Services and Chief Financial Officer

By: _____

Name:  Clarke Glaspell
Title:  Controller

438

**SIGNED** for and on behalf of Nortel Networks    )
UK Limited (in administration) by Stephen    )
Harris as Joint Administrator (acting as agent    )
and without personal liability) in the presence    )
of:

Stephen Harris

Witness signature

Name: Emilia Law    )
Address: Herbert Smith LLP, Exchange House,    )
Primrose Street, London EC2A 2HS

**SIGNED** for and on behalf of Nortel GmbH    )
(in administration) by Stephen Harris as Joint    )
Administrator (acting as agent and without    )
personal liability) in the presence of:    )

Stephen Harris

Witness signature

Name: Emilia Law    )
Address: Herbert Smith LLP, Exchange House,    )
Primrose Street, London EC2A 2HS

**SIGNED** for and on behalf of Nortel Networks    )
SpA (in administration) by Stephen Harris as    )
Joint Administrator (acting as agent and without    )
personal liability) in the presence of:    )

Stephen Harris

Witness signature

Name: Emilia Law    )
Address: Herbert Smith LLP, Exchange House,    )
Primrose Street, London EC2A 2HS

Signature Page to Distribution Escrow Agreement

SIGNED for and on behalf of Nortel Networks )
Hispania S.A. (in administration) by Stephen )
Harris as Joint Administrator (acting as agent )
and without personal liability) in the presence )
of:

Stephen Harris

Witness signature

Name: Olivia Schofield

Address: Herbert Smith LLP, Exchange House, )
Primrose Street, London EC2A 2HS

SIGNED for and on behalf of Nortel Networks )
B.V. (in administration) by Stephen Harris as )
Joint Administrator (acting as agent and without )
personal liability) in the presence of: )

Stephen Harris

Witness signature

Name: Olivia Schofield

Address: Herbert Smith LLP, Exchange House, )
Primrose Street, London EC2A 2HS

440

**SIGNED** for and on behalf of Nortel Networks )
N.V. (in administration) by Stephen Harris as )
Joint Administrator (acting as agent and without )
personal liability) in the presence of: )

Stephen Harris

Witness signature

Name: Olivia Schofield )

Address: Herbert Smith LLP, Exchange House, )
Primrose Street, London EC2A 2HS

**SIGNED** for and on behalf of Nortel Networks )
(Austria) GmbH (in administration) by )
Stephen Harris as Joint Administrator (acting as )
agent and without personal liability) in the )
presence of: )

Stephen Harris

Witness signature

Name: Olivia Schofield )

Address: Herbert Smith LLP, Exchange House,
Primrose Street, London EC2A 2HS

Signature Page to Distribution Escrow Agreement

**SIGNED** for and on behalf of Nortel Networks    )
Polska Sp. z.o.o. (in administration) by Stephen    )
Harris as Joint Administrator (acting as agent    )
and without personal liability) in the presence    )
of:

Stephen Harris

Witness signature

.......... O. Schofield ..........    )

Name: Olivia Schofield    )

Address: Herbert Smith LLP, Exchange House,    )
Primrose Street, London EC2A 2HS

**SIGNED** for and on behalf of Nortel Networks    )
s.r.o. (in administration) by Stephen Harris as    )
Joint Administrator (acting as agent and without    )
personal liability) in the presence of:    )

Stephen Harris

Witness signature

.......... O. Schofield ..........    )

Name: Olivia Schofield    )

Address: Herbert Smith LLP, Exchange House,    )
Primrose Street, London EC2A 2HS

Signature Page to Distribution Escrow Agreement

442

SIGNED for and on behalf of Nortel Networks )
Engineering Service kft (in administration) by )
Stephen Harris as Joint Administrator (acting as )
agent and without personal liability) in the )
presence of: )

Stephen Harris

Witness signature

Name: Olivia Schofield )

Address: Herbert Smith LLP, Exchange House, )
Primrose Street, London EC2A 2HS

SIGNED for and on behalf of Nortel Networks )
Slovensko s.r.o. (in administration) by Stephen )
Harris as Joint Administrator (acting as agent )
and without personal liability) in the presence )
of: )

Stephen Harris

Witness signature

Name: Olivia Schofield )

Address: Herbert Smith LLP, Exchange House, )
Primrose Street, London EC2A 2HS

Signature Page to Distribution Escrow Agreement

SIGNED for and on behalf of Nortel Networks )
Romania Srl (in administration) by Stephen )
Harris as Joint Administrator (acting as agent )
and without personal liability) in the presence )
of:

Stephen Harris

Witness signature

.................................................................... )
Name: Olivia Schofield )

Address: Herbert Smith LLP, Exchange House, )
Primrose Street, London EC2A 2HS

444

SIGNED for and on behalf of Nortel )
Networks OY (in administration) )
by Stephen Harris as Joint Administrator (acting )
as agent and without personal liability) in the )
presence of:

Stephen Harris

Witness signature
Name: Emilia Law
Address: Herbert Smith LLP, Exchange House,
Primrose Street, London EC2A 2HS

Signature Page to Distribution Escrow Agreement

445

SIGNED for and on behalf of Nortel          )
Networks AB (in administration)              )
by Stephen Harris as Joint Administrator (acting  )
as agent and without personal liability) in the  )
presence of:

Stephen Harris

Witness signature
Name: Emilia Law
Address: Herbert Smith LLP, Exchange House,
Primrose Street, London EC2A 2HS


SIGNED for and on behalf of Nortel          )
Networks International Finance & Holding     )
BV (in administration)                       )
by Stephen Harris as Joint Administrator (acting  )
as agent and without personal liability) in the
presence of:

Stephen Harris

Witness signature
Name: Emilia Law
Address: Herbert Smith LLP, Exchange House,
Primrose Street, London EC2A 2HS


SIGNED for and on behalf of Nortel          )
Networks Portugal SA (in administration)     )
by Stephen Harris as Joint Administrator (acting  )
as agent and without personal liability) in the  )
presence of:

Stephen Harris

Witness signature
Name: Emilia Law
Address: Herbert Smith LLP, Exchange House,
Primrose Street, London EC2A 2HS


Signature Page to Distribution Escrow Agreement

446

SIGNED for and on behalf of Nortel Networks )
France S.A.S. (in administration) by Kerry )       Kerry Trigg
Trigg acting as authorised representative for )
Stephen Harris as Joint Administrator (acting as )
agent and without personal liability) in the )
presence of: )

Witness signature
.................................................... )
Name:    SHARON  PERLMUTTER
Address:        Ell ERNST & YOUNG LLP
               1 More London Place
               London
               SE1 2AF

Signature Page to Distribution Escrow Agreement

**SIGNED** by Alan Bloom

)
)
)

....................................................

Alan Bloom

In his own capacity and on behalf of the Joint
Administrators without personal liability and
solely for the benefit of the provisions of this
Agreement expressed to be conferred on or
given to the Joint Administrators:

Witness signature

....................................................  )

Name:        TRACEY REAP                            )

Address:                                            )

        *ERNST & YOUNG LLP*
        **1 More London Place**
        **London**
        **SE1 2AF**

Signature Page to Distribution Escrow Agreement

SIGNED by Sharon Rolston )
duly authorised for and on behalf of Nortel )
Networks AG in the presence of; )

*Sharon Rolston (signature)*

Sharon Rolston

Witness signature

*B. Scherwat (signature)*

Name: B. SCHERWATH

Address: c/o NORTEL NETWORKS UK LTD.
WESTACOTT WAY
MAIDENHEAD
SL6 0AT
UK

Signature Page to Distribution Escrow Agreement

449

SIGNED by John Freebairn                          )
duly authorised for and on behalf of Nortel       )        ..................................................
Networks (Northern Ireland) Limited in the        )        John Freebairn
presence of;                                       )


Witness signature

.................Tina McCullough.................  )
Name:   TINA McCULLEY                              )
Address:  10 KNOCKIAGH HEIGHTS                     )
          CARRICKFERGUS
          BT38 8QZ


Signature Page to Distribution Escrow Agreement

450

SIGNED by Maria Stanko                          )
duly authorised for and on behalf of o.o.o.     )     Maria Stanko
Nortel Networks in the presence of:             )


Witness signature

Name:  Maxim Degnika

Address:  Russia, Moscow;
          13·70, Dubninskaya str.

451

Signed by MAÎTRE COSME ROGEAU,
acting in the capacity of *Liquidateur
Judiciaire* of NNSA, without personal
liability as provided in Article Three of this
Agreement and solely for the purpose of
obtaining the benefit of the provisions of this
Agreement expressed to be conferred on or
given to the French Liquidator

By

Name: Maître Cosme Rogeau
Title: *Liquidateur Judiciaire*

In the presence of:

Witness signature

Name:    Nicolas Gricourt

Address:  10 Allee P. de Coubertin
          78000 Versailles

SIGNED for and on behalf of NORTEL          )
NETWORKS SA (IN                             )
ADMINISTRATION)                             )    MAÎTRE COSME ROGEAU
                                            )
by MAÎTRE COSME ROGEAU as                   )
*Liquidateur Judiciaire* (acting as agent and )
without personal liability) in the presence  )
of

Witness signature

Name:    Nicolas Gricourt

Address:  10 Allee P. de Coubertin
          78000 Versailles

*Signature Page to Distribution Escrow Agreement*

452

## SCHEDULE A

## OTHER SELLERS

Nortel Networks Technology Corporation

Nortel Networks Global Corporation

Nortel de México, S. de R.L. de C.V.

Nortel Networks (China) Limited

453

## SCHEDULE B

### EMEA Sellers

Nortel Networks UK Limited

Nortel Networks (Ireland) Limited

Nortel GmbH

Nortel Networks SpA

Nortel Networks Hispania SA

Nortel Networks B.V.

o.o.o. Nortel Networks

Nortel Networks AG

Nortel Networks N.V.

Nortel Networks (Austria) GmbH

Nortel Networks Polska Sp. z.o.o.

Nortel Networks Engineering Services kft

Nortel Networks Slovensko s.r.o.

Nortel Networks (Northern Ireland) Limited

Nortel Networks France SAS

Nortel Networks Romania Srl

Nortel Networks s.r.o.

454

**SCHEDULE C**
**AFFILIATES OF MAIN SELLERS THAT**
**ARE DEEMED TO BE "SELLING DEBTORS"**

Architel Systems (U.S.) Corporation

CoreTek, Inc.

Nortel Altsystems, Inc. (previously "Alteon WebSystems, Inc.")

Nortel Altsystems International Inc. (previously "Alteon WebSystems International, Inc.")

Nortel Networks Applications Management Solutions Inc.

Nortel Networks Cable Solutions Inc.

Nortel Networks Capital Corporation

Nortel Networks HPOCS Inc.

Nortel Networks International Inc.

Nortel Networks Optical Components Inc.

Northern Telecom International Inc.

Qtera Corporation

Sonoma Systems

Xros, Inc.

455

## SCHEDULE D
## AFFILIATES OF THE EMEA SELLERS THAT
## ARE DEEMED TO BE A "SELLING DEBTOR"

Nortel Networks Oy (In Administration)

Nortel Networks AB (In Administration)

Nortel Networks International Finance & Holding BV (In Administration)

Nortel Networks Portugal SA (In Administration)

## SCHEDULE E

## STANDING SETTLEMENT INSTRUCTIONS

Nortel Networks Limited
Bank: Citibank, N.A.
ABA#: 021000089
SWIFT: CITIUS33
A/C#: 38545364

Nortel Networks Inc.
Bank: Citibank, N.A.
ABA#: 021000089
SWIFT: CITIUS33
A/C#: 30463444

Nortel Networks Corporation
Bank: Citibank, N.A.
ABA#: 021000089
SWIFT: CITIUS33
A/C#: 30428374

Nortel Networks Technology Corporation
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Global Corporation
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel de México, S. de R.L. de C.V.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (China) Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (Asia) Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks UK Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (Ireland) Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel GmbH
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks France SAS
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks SpA
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Hispania SA
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks B.V.
Bank: tbc
ABA#:

Schedule F-2

SWIFT:
A/C#:

o.o.o. Nortel Networks
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (Northern Ireland) Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks AG
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks N.V.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (Austria) GmbH
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Polska Sp. z.o.o.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks s.r.o.
Bank: tbc
ABA#:
SWIFT:
A/C#: