IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 09-10138 (KG) |
| NORTEL NETWORKS INC., *et al.* ) | Jointly Administered |
| Debtors. ) | Re: D.I. 4345, 4347, 4786, 5459, 5550, 5553 |
| ) | Hearing Date: June 7, 2011 at 9:30 a.m. |

**REPLY OF GENBAND US LLC TO THE U.S. DEBTORS' AND THE JOINT ADMINISTRATORS' OBJECTIONS TO THE MOTION OF GENBAND US LLC FOR AN ORDER COMPELLING COMPLIANCE WITH SETTLEMENT AGREEMENT AND APPROVING THE SETTLEMENT AGREEMENT <u>PURSUANT TO BANKRUPTCY RULE 9019</u>**

GENBAND US LLC (formerly GENBAND Inc., ("<u>GENBAND</u>")), by and through its undersigned counsel, hereby files this reply (the "<u>Reply</u>") to Nortel Networks Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "<u>U.S. Debtors</u>")[1] *Objection to Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5553] (the "<u>US Debtors' Objection</u>") and to the court-appointed administrators and authorized foreign representatives (collectively, the "<u>Joint Administrators</u>")[2] *Objection to Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5550] (the "<u>Joint Administrators' Objection</u>"). In support of this Reply, as well as its previously filed *Motion for Entry of an Order Compelling Compliance with Settlement Agreement and Approving the Settlement*

---

[1]   As defined in the US Debtors' Objection.

[2]   As defined in the Joint Administrators' Objection.

*Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5459] ("GENBAND's Motion"),³ GENBAND respectfully submits as follows:

## PRELIMINARY STATEMENT

1.  GENBAND brought its motion because despite the Mediation Parties' affirmative obligation to use their "best efforts" to give effect to the settlement "as soon as reasonably practicable," GENBAND was met with nothing but delays—often coupled with attempts to extract additional value or other concessions regarding matters that were not covered by the parties' Memorandum of Understanding ("MOU"). Because the Mediation Parties plainly had no intention of honoring their "best efforts" obligation, GENBAND moved to enforce that duty in the hope that this matter could finally be put to rest.

2.  At the time GENBAND filed its motion, there were no outstanding objections to the terms of either the MOU or the formal Settlement Agreement. That is still true. The only holdup is that after more than eight weeks since the mediation, four of the Nortel Sellers (the "Missing Sellers") have yet to indicate their views to GENBAND *one way or the other*. To put it bluntly, they have gone radio silent. GENBAND had hoped that bringing this motion would rouse the Missing Sellers from their slumber, and that they would do GENBAND and this Court the honor of actually *stating their views*. That was apparently too much to ask: none of them has filed a response, and none of them has contacted GENBAND.

3.  The only objections to GENBAND's Motion seek to profit from the Missing Sellers' recalcitrance. Both the U.S. Debtors and the Joint Administrators argue that they cannot be forced to comply with the MOU because the consent of all Nortel Sellers— including the Missing Sellers—is required. However, they ignore the fact that the same MOU obligates

---

³ Capitalized terms used but not defined herein shall have the same meaning ascribed to them in GENBAND's Motion.

2

the Mediation Parties to use their "best efforts" to *obtain* that consent. And neither the U.S. Debtors nor any of the Mediation Parties has put forth any evidence that they have done *anything* to accomplish that task. There are no affidavits attesting to any efforts to contact the Missing Sellers, no emails or other communications documenting any such efforts, no records of phone calls—*nothing*. For all the record shows, the Mediation Parties have simply sat back and waited—all the while holding onto GENBAND's money. Having taken no steps to obtain those consents (as they were obligated to do), the objectors now seek to use that very lack of consent as an excuse.

4. Indeed, the U.S. Debtors' Objection demonstrates exactly why GENBAND's Motion was necessary. In that objection, the U.S. Debtors yet again seek to add an entirely new condition that is not covered by either the MOU or the Settlement Agreement: namely, that they be permitted to "offset" the amounts they owe against unrelated amounts pursuant to an unrelated dispute that is not before this Court, and *that is admittedly the subject of ongoing settlement negotiations.* The U.S. Debtors' Objection confirms beyond question that they have *no* intention of honoring their "best efforts" commitment, and that they instead wish to drag this process out as long as possible, so that they can try to extract additional concessions.

5. This cannot continue. GENBAND negotiated in good faith and agreed to compromise its claim, but part of that agreement was the Mediation Parties' obligation to use their "best efforts." The record amply demonstrates that the Mediation Parties have breached that obligation, and that they are now seeking to use the resulting delay for their tactical advantage.

6. The Court should not tolerate such games. The Court has jurisdiction over all of the relevant parties, including the Missing Sellers, and its equitable powers provide ample

authority to rectify the situation. This case presents the sort of "exceptional circumstances" in which a non-debtor is permitted to file a Rule 9019 motion. There being no objection to the settlement agreement's terms—despite every possible opportunity to raise them—the Court should order and authorize the settlement. Alternatively, the Court should order the Debtors to file the Rule 9019 motion and require them to demonstrate at the hearing on the motion that they have used their "best efforts" to effectuate the settlement.

7. The object of settlement is not further litigation. GENBAND regrets that it has become necessary to involve the Court in what should have been a fast and orderly process. However, at this point it is clear that absent the Court's intervention this process will continue to drag on, and the Debtors will continue to use that delay as leverage. GENBAND therefore respectfully requests the Court's assistance in putting this matter to rest once and for all.

## **ARGUMENT**

### I. **Nortel Has Breached Its Affirmative Duty to Use Its "Best Efforts" to Give Effect to the Settlement "As Soon As Reasonably Practicable"**

8. A "best efforts" clause is enforceable, and parties that fail to use their best efforts are in breach of an agreement containing such a clause. Crum & Crum Enters. v. NDC of Cal., L.P., 2010 U.S. Dist. LEXIS 116818, *11–12 (D. Del. Nov. 1, 2010) (citations omitted); Conley v. Dan-Webforming Intern. A/S (Ltd.), No. 91-401, 1992 U.S. Dist. LEXIS 20251, at *19 (D. Del. Dec. 29, 1992) (citing Corwin et al. v. deTrey et al., C.A. No. 6808, 1989 Del. Ch. LEXIS 166, at *6 (Del. Ch. Dec. 1, 1989)). A "[b]est efforts clause . . . insures the parties *will do their best to accomplish the conditions necessary* to complete the contract." Conley, 1992 U.S. Dist. LEXIS 20251, at *19 (emphasis added); see also Foster Wheeler Broome Cnty, Inc. v. Cnty of Broome, 275 A.D.2d 592, 593–94 (N.Y. App. Div. 2000) (holding that the obligation to use best efforts is satisfied by showing that promisor "made a genuine effort to assist [the] plaintiff in

4

securing the required permit"); Kroboth v. Brent, 215 A.D.2d 813 (N.Y. App. Div. 1995) ("'Best efforts' requires that the plaintiffs pursue all reasonable methods for obtaining subdivision approval . . . ."); E. Allan Farnsworth, On Trying to Keep One's Promises: The Duty of Best Efforts in Contract Law, 46 U. PITT. L. REV. 1, 8 (1984) ("Best efforts is a standard that has diligence as its essence and is imposed only on those contracting parties that have undertaken such performance.").

9. On April 4, 2011, GENBAND, the U.S. Debtors, the Canadian Debtors, the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases, and Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (collectively, the "Mediation Parties") engaged in mandatory mediation (the "Mediation") pursuant to a Standing Order of the U.S. District Court dated July 23, 2004 (the "Standing Order").  Pursuant to the Standing Order, the Mediation "must be attended by the senior lawyer for each party responsible for the appeal and by the person or persons with actual authority to negotiate a settlement of the case."  At the Mediation, the Mediation Parties agreed to the Settlement, and commemorated such agreement in the form of the MOU.  The MOU included the express affirmative duty that the Mediation Parties use their "best efforts to document and give effect to" the terms of the MOU "as soon as reasonably practicable."

10. The facts, as provided in GENBAND's Motion, are not in dispute.  The MOU was agreed to on April 4, 2011, almost two months ago.  The MOU included all the commercial terms of the Settlement.  By May 17, 2011, there were no substantive issues open for discussion or negotiation in the Settlement Agreement.  By that date, sixteen days ago, both the commercial terms originally provided in the MOU and the exact wording of the Settlement Agreement were complete.  The U.S. Debtors and the Joint Administrators both indicate that they agree to the

Settlement Agreement.  See U.S. Debtors' Objection, at ¶ 22 and n.6; Joint Administrators' Objection, at ¶ 9.  Although the Joint Administrators assert that the Mediation Parties "continue to engage" in negotiations, see Joint Administrators' Objection, at ¶ 22–23, that is not true—there are no ongoing discussions, all open issues have been resolved, including the wording of the Settlement Agreement, and the Joint Administrators point to no open issues or evidence of ongoing negotiations.  Simply put, the parties have a deal, and they have had a deal for a long time.

11. The only reason that the U.S. Debtors did not file the Rule 9019 motion in time for the Courts to consider the Settlement Agreement at the June 7, 2011 joint omnibus hearing is because the Mediation Parties have not received consent from Nortel Networks Israel (Sales and Marketing) Limited, Nortel Networks S.A., both in administration, and Nortel Networks o.o.o. and Nortel Networks A.G., both non-filed entities (collectively, the previously defined Missing Sellers).  As of today, sixteen days after the terms of the Settlement Agreement were fully agreed to, and approximately two months after the underlying commercial terms were agreed to by the Mediation Parties, GENBAND has been given explanation neither as to why the Missing Sellers have not consented nor the status of the Missing Sellers' deliberation, including when the Missing Sellers were provided the MOU, drafts of the Settlement Agreement, and the final version agreed to on May 17, 2011.

12. That cannot be "best efforts."  GENBAND made clear throughout the process that time is of the essence, and told the Mediation Parties on multiple occasions that it desired that the parties seek Court approvals as early as possible.  The Mediation Parties expressly agreed to use their "best efforts," which includes the duty to make affirmative efforts to seek the approvals necessary from the Missing Sellers.  The U.S. Debtors' Objection and the Joint Administrators'

Objection demonstrates that they have not made "best efforts;" rather, they use the lack of the Missing Sellers' consents as a hindrance to approval of the Settlement Agreement, <u>without providing any explanation as to what (if anything) has been done to obtain such consents</u>.

13.  GENBAND bargained for the "best efforts" clause, and the duty on the part of the Mediation parties to give effect to" the terms of the MOU "as soon as reasonably practicable" because GENBAND understood that Nortel could use delay as a tactic to extract additional, not-bargained-for concessions from GENBAND.  To be clear, Nortel holds the money, and delay inures to Nortel's benefit.  GENBAND bargained for a quick resolution and approval process for the Settlement Agreement to avoid the prospect that Nortel would drag its feet, retrade the agreement reached in the MOU, and extract additional concessions.

14.  The U.S. Debtors' inclusion of the disputes regarding the Transition Services Agreement dated May 28, 2010 (the "<u>TSA</u>"), proves that GENBAND was correct to be concerned with the prospect of retrading.  The inclusion of the TSA disputes, and the proposed offset with the payments under the Settlement Agreement, should be rejected for many reasons. First, as the U.S. Debtors note in the U.S. Debtors' Objection, the disputes regarding the TSA are subject to ongoing negotiations.  It is true that the parties are in negotiations regarding the TSA, and GENBAND seeks in good faith to resolve the differences.  Those negotiations are not finalized, however, and it is not clear when they will be complete.  Such disputes are thus not ripe for consideration by this Court.[4]

15.  Second, those negotiations are subject to Federal Rule of Evidence 408, and are thus inadmissible.  And the U.S. Debtors are also in breach of the TSA, which provides that the

---

[4]  Note that under the TSA there is a process that must be exhausted before it is even <u>possible</u> to bring the dispute before this Court.  <u>See</u> TSA § 3(f).

7

negotiations regarding the TSA disputes are not admissible as evidence in <u>any</u> litigation. <u>See</u> TSA § 3(f).

16. Third, the U.S. Debtors' attempt to link the TSA disputes with the approval of the Settlement Agreement violates the clear terms of the MOU, which states all the terms agreed to by the U.S. Debtors at the Mediation, and includes the stipulation that the U.S. Debtors use their "best efforts" to seek approval of <u>those</u> terms by the Courts. There is nothing in the MOU regarding the TSA, for good reason: The TSA has nothing to do with the Settlement Agreement. Introducing an extraneous and unrelated issue at this juncture violates the U.S. Debtors' affirmative duty to use their "best efforts" to obtain approval of the terms actually set forth in the MOU.

17. Fourth, and most importantly, this new issue regarding the TSA demonstrates exactly why this Court should provide relief. Further delays will merely give Nortel yet another opportunity to make additional improper demands. Indeed, the U.S. Debtors prove as much by their improper inclusion of the TSA disputes in the U.S. Debtors' Objection. This is exactly why GENBAND bargained for this process to be resolved "as soon as reasonably practicable," and obtained an affirmative "best efforts" obligation to go along with that.

**II.     The Relief GENBAND Requests Is Both Appropriate and Necessary**

18. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease the property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363. Section 363 applies when an agreement involves the disposition of the estate's assets in such a way that it ventures beyond an ordinary course transaction. <u>Myers v. Martin (In re Martin)</u>, 91 F.3d 389, 394–95 (3d Cir. 1996).

19. The use or transfer of estate property under § 363(b) must be supported by a sound business purpose. Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991); Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward Holding Corp., 242 B.R. at 153–54 & n.1 (quoting In re Lionel Corp., 722 F.2d at 1071).

20. Although it is true that Rule 9019(a) authorizes a "trustee" to seek an order approving a settlement, "in extraordinary situations . . . a party in interest other than a trustee [will] be permitted to seek approval over the objections of a trustee or debtor in possession." 10 COLLIER ON BANKRUPTCY ¶ 9019.01 (16th ed. 2011) (citing Smart World Tech., LLC v. Juno Online Servs., Inc. (*In re* Smart World Tech.), 423 F.3d 166 (2d Cir. 2005); Liani v. Baker (*In re* Baker), 374 B.R. 498 (Bankr. E.D.N.Y. 2007)).

21. This Court has jurisdiction to provide relief. This Court approved the sale of the CVAS Business to GENBAND by order dated March 4, 2010 [D.I. 2632] (the "Sale Order"), and the Canadian Court likewise approved the sale of the CVAS Business to GENBAND by order dated March 4, 2010. In the Sale Order, this Court stated that the Sale Agreement shall be binding in all respects upon, in relevant part, all creditors and interest holders of any of the Debtors, as well as all successors and assigns of the Debtors and their affiliates, subsidiaries, and

9

trustees. In the Sale Order, this Court retained jurisdiction with respect to all matters arising from or related to the implementation of the Sale Order, including resolving any disputes arising under or related to the Sale Agreement. The Sale Agreement provides, at Section 10.6(b), that all Parties to the Sale Agreement agree that any claim, action, or proceeding seeking relief in any way whatsoever arising out of or in connection with the Sale Agreement may be brought to this Court or the Canadian Court. Those "Parties" include <u>all</u> of the Nortel Sellers, including the Missing Sellers who have gone radio silent.

22. GENBAND has standing to request relief. As discussed above, the Mediation Parties agreed to use their "best efforts" to give effect to" the terms of the MOU "as soon as reasonably practicable." Nortel has not lived up to its contractual obligation, provided in the MOU, which relates directly to the Sale Agreement. As such, GENBAND has standing to enforce its contractual right.

23. Additionally, there is no need for a Rule 7001 adversary proceeding for the relief requested. Section 105(a) and Section 363(b), as well as the jurisdiction of this Court agreed to by the Parties to the Sale Agreement, provide sound basis for this Court to enforce the MOU. The Court has broad powers, under Section 105(a) to compel compliance by Nortel to provide its "best efforts" to obtain the outlying consents. Indeed, the U.S. Debtors and the Joint Administrators both concede that they agree to the terms of the Settlement Agreement, but that they simply have not heard from the Missing Sellers. The Court has the ability to compel Nortel to live up to its affirmative duty to use its best efforts to get such consents. Finally, should the Court compel compliance with the Settlement Agreement, it may do so under Section 363(b), rather than through an adversary proceeding. The relief requested does not require an injunction, and as such the Joint Administrators' challenge that GENBAND must use a Rule 7001 adversary

proceeding only further demonstrates that the Joint Administrators seek to delay this process as much as possible—this would only invite protracted litigation regarding the MOU and the Settlement Agreement.

24. No party raises a substantive objection to the Settlement Agreement. The only claim is that we cannot proceed because we have not heard from the Missing Sellers. How long must GENBAND wait? Nortel cannot rely on the lack of consents from the Missing Sellers when it has failed to honor its affirmative duty to use "best efforts" to secure those consents. Nortel has not provided any indication of what it has done to comply with its affirmative duty. The Mediation Parties have not attempted, in any way, to state or demonstrate that they have attempted to secure the consents that remain to be collected.[5] That is not "best efforts" and is thus a breach of the MOU.

---

[5] The U.S. Debtors state that they "disagree with any suggestion that they or any other Nortel entity that is party to the MOU has not worked expeditiously to finalize the [Settlement Agreement] in accordance with the MOU," U.S. Debtors' Objection at n.7, and the Joint Administrators state that they "are working diligently . . . and have contacted the Missing Sellers in an attempt to encourage them to consider and to consent" to the Settlement Agreement, but neither the U.S. Debtors' Objection nor the Joint Administrators' Objection states with any particularity efforts taken or even the status of the needed consents, or provided any evidence to back up those conclusory assertions.

**CONCLUSION**

WHEREFORE, GENBAND respectfully requests that the Court provide the relief requested in the GENBAND Motion, compel the U.S. Debtors and the Joint Administrator to use their "best efforts" to obtain the consents from the Missing Sellers, and grant such further and other relief as the Court deems just.

Dated:  June 2, 2010  
       Wilmington, Delaware

Respectfully submitted,

/s/ *Michael R . Lastowski*  
Michael R. Lastowski (No. 3892)  
Sommer L. Ross (No. 4598)  
DUANE MORRIS, LLP  
1100 North Market Street, Suite 1200  
Wilmington, Delaware 19801  
Telephone: (302) 657-4900  
Facsimile: (302) 657-4901  
E-mail:    mlastowski@duanemorris.com  
           slross@duanemorris.com