**EXHIBIT E**

Date: 5/3/2010 4:03:33 PM

To: "'aleblanc@milbank.com'" <aleblanc@milbank.com>, "Alex MacFarlane" <alex.macfarlane@fmc-law.com>, amark@ogilvyrenault.com, "'annav@nortel.com'" <annav@nortel.com>, "'apisa@milbank.com'" <apisa@milbank.com>, "Qureshi, Abid" <aqureshi@AkinGump.com>, "Kahn, Brad" <bkahn@akingump.com>, "'Brent.R.Beekenkamp@ca.ey.com'" <Brent.R.Beekenkamp@ca.ey.com>, "'bzarnett@goodmans.ca'" <bzarnett@goodmans.ca>, Craig B BROD, David.Descoteaux@Lazard.com, "Botter, David" <dbotter@AkinGump.com>, "'dtay@ogilvyrenault.com'" <dtay@ogilvyrenault.com>, "Hodara, Fred" <fhodara@AkinGump.com>, "'Gavin.Davies@herbertsmith.com'" <Gavin.Davies@herbertsmith.com>, "Giles Boothman" <giles.boothman@ashurst.com>, Howard ZELBO, James L BROMLEY, "'jcarfagnini@goodmans.ca'" <jcarfagnini@goodmans.ca>, jharris@milbank.com, "Joanne.Segger@herbertsmith.com'" <Joanne.Segger@herbertsmith.com>, "'John.Whiteoak@herbertsmith.com'" <John.Whiteoak@herbertsmith.com>, "'jpasquariello@goodmans.ca'" <jpasquariello@goodmans.ca>, "'jstam@ogilvyrenault.com'" <jstam@ogilvyrenault.com>, "Sturm, Joshua" <jsturm@akingump.com>, "'Kevin.Lloyd@herbertsmith.com'" <Kevin.Lloyd@herbertsmith.com>, "Rowe, Kevin" <krowe@akingump.com>, Lisa M SCHWEITZER, "'Matthew.Hart@lazard.com'" <Matthew.Hart@lazard.com>, "Michael Wunder" <michael.wunder@fmc-law.com>, "'mlang@ogilvyrenault.com'" <mlang@ogilvyrenault.com>, mnolan@milbank.com, "'Murray.A.McDonald@ca.ey.com'" <Murray.A.McDonald@ca.ey.com>, 'Nortel' <Nortel@capstoneag.com>, "'Orzyr@bennettjones.com'" <Orzyr@bennettjones.com>, "Bagon, Paul" <paul.bagon@ashurst.com>, "Jacobs, Ryan" <rjacobs@AkinGump.com>, "Pees, Robert" <rpees@AkinGump.com>, "'SDrymer@ogilvyrenault.com'" <SDrymer@ogilvyrenault.com>, "Shayne Kukulowicz" <shayne.kukulowicz@fmc-law.com>, stenai@ogilvyrenault.com, "'Stephen.Gale@herbertsmith.com'" <Stephen.Gale@herbertsmith.com>, "tkreller@milbank.com" <tkreller@milbank.com>, "'ZychK@bennettjones.com'" <ZychK@bennettjones.com>, Sanjeet Malik, jravidity@earthlink.net, "Jacobs, Ryan" <ryan.jacobs@fmc-law.com>, Lauren Peacock

Copy:

From: Inna Rozenberg

Subject: Fw: Nortel - Allocation Protocol

**3 attachments appear as related documents in the Virtual Fileroom.**


Dear all,

Please see the attached agenda for tomorrow's meeting regarding the Allocation Protocol.  You will also find below the location and dial-in details for tomorrow's meeting, as well as the latest draft of the Protocol in clean and blackline form.

Best regards,

Inna Rozenberg


Agenda.pdf

_____

Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999
www.clearygottlieb.com | irozenberg@cgsh.com
----- Forwarded by Inna Rozenberg/NY/Cgsh on 05/03/2010 03:59 PM -----

Inna Rozenberg/NY/Cgsh

22 April 2010  01:03 PM

o

'aleblanc@milbank.com'"
<aleblanc@milbank.com>,
"Alex MacFarlane"
<alex.macfarlane@fmc-
law.com>,
amark@ogilvyrenault.com,
"'annav@nortel.com'"
<annav@nortel.com>,
"'apisa@milbank.com'"
<apisa@milbank.com>,
"Qureshi, Abid"
<aqureshi@AkinGump.com>,
"Kahn, Brad"
<bkahn@akingump.com>,
"'Brent.R.Beekenkamp@ca.ey
.com'"
<Brent.R.Beekenkamp@ca.ey
.com>,
"'bzarnett@goodmans.ca'"
<bzarnett@goodmans.ca>,
Craig B
BROD/NY/Cgsh@CGSH,
David.Descoteaux@Lazard.co
m, "Botter, David"
<dbotter@AkinGump.com>,
"'dtay@ogilvyrenault.com'"
<dtay@ogilvyrenault.com>,
"Hodara, Fred"
<fhodara@AkinGump.com>,
"'Gavin.Davies@herbertsmith.
com'"
<Gavin.Davies@herbertsmith.
com>, "Giles Boothman"
<giles.boothman@ashurst.co
m>, Howard
ZELBO/NY/Cgsh@CGSH,
James L
BROMLEY/NY/Cgsh@CGSH,
"'jcarfagnini@goodmans.ca'"
<jcarfagnini@goodmans.ca>,
jharris@milbank.com,
"'Joanne.Segger@herbertsmit
h.com'"
<Joanne.Segger@herbertsmit
h.com>,
"'John.Whiteoak@herbertsmit
h.com'"
<John.Whiteoak@herbertsmit
h.com>,
"'jpasquariello@goodmans.ca'
"
<jpasquariello@goodmans.ca
>, "'jstam@ogilvyrenault.com'"
<jstam@ogilvyrenault.com>,

3

Dear all,

I am writing to confirm that the meeting to discuss the latest draft of the Allocation Protocol (circulated below) has been rescheduled to May 4.  The meeting will be held in Cleary Gottlieb's midtown offices, which are located at 450 Park Avenue on the 28th Floor, between 56th and 57th Streets.  We will be in Room 3.  The meeting will start at 9:00 a.m.

For those participating by telephone, the dial-in details are as follows:

Domestic dial-in:  877-492-4010
International dial-in:  719-955-0541
Passcode:  212 225 2972

I will circulate an agenda beforehand.  Please feel free to contact me with any questions.

Best regards,
Inna Rozenberg

---

Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999
www.clearygottlieb.com | irozenberg@cgsh.com

Inna Rozenberg/NY/Cgsh

07 April 2010  05:01 PM

o

'aleblanc@milbank.com'"
<aleblanc@milbank.com>,
"Alex MacFarlane"
<alex.macfarlane@fmc-
law.com>,
amark@ogilvyrenault.com,
"'annav@nortel.com'"
<annav@nortel.com>,
"'apisa@milbank.com'"
<apisa@milbank.com>,
"Qureshi, Abid"
<aqureshi@AkinGump.com>,
"Kahn, Brad"
<bkahn@akingump.com>,
"'Brent.R.Beekenkamp@ca.ey
.com'"
<Brent.R.Beekenkamp@ca.ey
.com>,
"'bzarnett@goodmans.ca'"
<bzarnett@goodmans.ca>,
Craig B
BROD/NY/Cgsh@CGSH,
David.Descoteaux@Lazard.co
m, "Botter, David"
<dbotter@AkinGump.com>,
"'dtay@ogilvyrenault.com'"
<dtay@ogilvyrenault.com>,
"Hodara, Fred"
<fhodara@AkinGump.com>,
"'Gavin.Davies@herbertsmith.
com'"
<Gavin.Davies@herbertsmith.
com>, "Giles Boothman"
<giles.boothman@ashurst.co
m>, Howard
ZELBO/NY/Cgsh@CGSH,
James L
BROMLEY/NY/Cgsh@CGSH,
"'jcarfagnini@goodmans.ca'"
<jcarfagnini@goodmans.ca>,
jharris@milbank.com,
"'Joanne.Segger@herbertsmit
h.com'"
<Joanne.Segger@herbertsmit
h.com>,
"'John.Whiteoak@herbertsmit
h.com'"
<John.Whiteoak@herbertsmit
h.com>,
"'jpasquariello@goodmans.ca'
"
<jpasquariello@goodmans.ca
>, "'jstam@ogilvyrenault.com'"
<jstam@ogilvyrenault.com>,

5

Dear all,

Please find attached the latest draft of the Allocation Protocol, along with a blackline against the last version circulated.

This draft incorporates comments received from Ogilvy and Goodmans (denoted as OR/G) and Herbert Smith (denoted as HS), as well as some smaller language changes that Cleary implemented.

Suggested additions to the text are bracketed and preceded by an indication of the firm making the proposal (using the initials described above). Suggested deletions to the text are bracketed, and the firm suggesting the deletion is indicated by the legend [OR/G: delete] or [HS:delete], which appears immediately following the language at issue. More substantive comments are included in the footnotes, preceded by an indication of which firm made the comment (again, using the initials).

Best regards,
Inna Rozenberg

  

Allocation Protocol 4-7-10.doc    Protocol blackline.doc

Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999
www.clearygottlieb.com | irozenberg@cgsh.com

THIS AGENDA HAS BEEN PREPARED FOR DISCUSSION AND SETTLEMENT PURPOSES ONLY AND IS SUBJECT TO THE PROVISIONS OF RULE 408 OF THE RULES OF EVIDENCE FOR UNITED STATES COURTS AND MAGISTRATES AND ANY OTHER SIMILAR APPLICABLE RULES IN ALL PERTINENT JURISDICTIONS

**<u>Agenda for Allocation Protocol Meeting</u>**
May 4, 2010

I.     Principal Issues

      A.     Scope of the Panel's Jurisdiction

            1.     Who is entitled to seek an allocation (Recitals p.4)

            2.     Standard of Review:  "fair and reasonable" vs. "fair and equitable" (Sections 1.1, 8.1)

            3.     Issues that can be raised before the Panel (Sections 8.6, 10.7)

      B.     The Panel Members

            1.     Appointment of Panel members (Section 2.2)

            2.     Standard for conflict disclosures (Sections 2.2, 2.3)

            3.     Ongoing disclosures (Section 2.3)

            4.     Replacement Panel members (Section 2.4)

      C.     Access to Information

            1.     Pre-petition privileged materials (Sections 5.6, 5.11)

            2.     Use of courts to compel third-party discovery (Article VI)

            3.     Examination of experts (Section 5.9)

      D.     Mediation / Negotiation (Sections 1.2, 1.3 and 1.4)

      E.     Law and Jurisdiction

            1.     Law applicable to the Panel's allocation decision (Sections 8.5, 10.3)

            2.     Forum for resolution of disputes under the Protocol (Section 10.4)

II.    Other Provisions of the Protocol

      •    Discuss comments reflected in April 7 draft

III.   Document Collection and Review Process

      •    Address scope of confidentiality agreement for data site

IV.    Next Steps

THIS DRAFT AGREEMENT HAS BEEN PRODUCED
FOR DISCUSSION AND SETTLEMENT PURPOSES
ONLY AND IS SUBJECT TO THE PROVISIONS OF
RULE 408 OF THE RULES OF EVIDENCE FOR
UNITED STATES COURTS AND MAGISTRATES AND
ANY OTHER SIMILAR APPLICABLE RULES IN ALL
PERTINENT JURISDICTIONS.

*Draft of April 7, 2010*
*Privileged and Confidential*

## PROTOCOL FOR RESOLVING DISPUTES
## CONCERNING ALLOCATION OF SALE PROCEEDS

This Protocol for Resolving Disputes Concerning Allocation of Sale Proceeds, dated ●, 2010 (the "Protocol"), is entered into by and among Nortel Networks Limited ("NNL") and the other entities set forth in Schedule 1 attached hereto, Nortel Networks Inc. ("NNI") and the other entities set forth in Schedule 2 attached hereto, the Joint Administrators (as defined below), the Joint Israeli Administrators (as defined below) and the entities set forth in Schedule 3 attached hereto (the "EMEA Debtors"), certain affiliates of the Debtors (as defined below) set forth in Schedule 4 hereto (the "Non-Filed Affiliates"), the Monitor (as defined below), the Official Committee of Unsecured Creditors appointed in the US Proceedings (as defined below) (the "Creditors' Committee") and the steering committee members of the ad hoc group of bondholders that have executed confidentiality or non-disclosure agreements with the Canadian Debtors and the US Debtors (each, as defined below) (the "Bondholders' Committee," and along with the Creditors' Committee, the "Committees") (each, a "Party," and collectively, the "Parties").  The Joint Administrators, in their personal capacity, shall be Party to this Protocol as provided in Section 10.8 and solely for the purposes of obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to the Joint Administrators and references to the Parties shall be construed accordingly.  The Joint Israeli Administrators,[1] in their personal capacity, shall be Party to this Protocol as provided in Section 10.9 and solely for the purposes of obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to the Joint Israeli Administrators and references to the Parties shall be construed accordingly.[2]

WHEREAS, on January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC," and together with its debtor and non-debtor affiliates, the "Company" or the "Nortel Group"), NNL and certain of NNC's other Canadian affiliates included in Schedule 1 (collectively, the "Canadian Debtors"), commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and the "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor"); and

WHEREAS, on the Filing Date and on July 14, 2009 (with respect to Nortel Networks (CALA) Inc.), NNI and certain of NNI's United States affiliates included in Schedule 2 (collectively, the "US Debtors" and, together with the Canadian Debtors and the EMEA Debtors, the "Debtors") filed petitions in the United States Bankruptcy Court for the District of Delaware (the "US Court") under chapter 11 of title 11 of the United States Code (respectively, the "US Proceedings" and the "Bankruptcy Code"); and

---

[1] HS to speak to the Israeli Joint Administrators to find out what they intend to do in relation to representation

[2] Subject to review by NNI's UK counsel.

WHEREAS, on the Filing Date, Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel Networks S.A. ("NNSA") and certain of NNUK's affiliates in the Europe, Middle East and Africa ("EMEA") region, including those in Schedule 3 attached hereto, commenced administration proceedings (the "UK Proceedings" and, together with the Canadian Proceedings and the US Proceedings, the "Proceedings") before the High Court of Justice in London, England (the "UK Court" and, together with the Canadian Court and the US Court, the "Courts"), and the UK Court appointed individuals from Ernst & Young LLP (the "UK Administrator") and, in the case of NNIR only, Ernst & Young Chartered Accountants (the "NNIR Administrator"), as administrators in the UK Proceedings (the UK Administrator and the NNIR Administrator collectively, and including their respective successors, replacements and any subsequent office holders appointed to the relevant EMEA Debtors, the "Joint Administrators");[3] and

WHEREAS, subsequent to the Filing Date, Nortel Networks Israel (Sales and Marketing) Limited (the "Israeli Company") filed applications with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings, and the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof (the "Joint Israeli Administrators") on January 19, 2009, as joint administrators of the Israeli Company under the Israeli Companies Law, and further on November 25, 2009, the Israeli Court sanctioned a scheme of arrangement, which automatically means that the Israeli Company is no longer under a stay of proceedings, and further on November 29, 2009, the Israeli Court ordered that the Joint Israeli Administrators remain in office until the scheme of arrangement is completed in full, including up until the time when all funds arising from the sale of the Israeli Company's assets, are received and allocated; and

WHEREAS, subsequent to the Filing Date, NNSA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator (the "NNSA Liquidator") and an administrator (the "NNSA Administrator") have been appointed by the Versailles Commercial Court (Docket No. 2009P00492) for NNSA; and

WHEREAS, the Debtors and their respective subsidiaries and affiliates have sold, have agreed to sell, or may in the future sell, license or otherwise monetize their tangible and intangible assets outside the ordinary course of business in several transactions (any such transaction, a "Sale"), including in connection with a sale of a particular line of business or portfolio of technologies (each, a "Business"), to third party buyers (each such buyer, a "Buyer"); and

WHEREAS, the Company has provided, or intends to provide, Buyers and potential Buyers, as applicable, with access to a data room (which may be an electronic data room) containing the books and records of the relevant Business and other financial information relating to such Business (each such electronic data room, an "Asset Sale EDR"); and

---

[3] HS to determine whether it can represent EMEA Non-Fileds

WHEREAS, with respect to each Business, the Debtors and their respective affiliates have entered, or intend to enter, into one or more acquisition, sale, license, transfer and/or other ancillary agreements (each such agreement, with respect to the sale, transfer and/or license of each Business, an "<u>Acquisition Agreement</u>") with the Buyer to govern the sale of such Business; and

WHEREAS, after entering into an Acquisition Agreement in the case where a so-called "stalking horse" bidder has been selected, or prior to entering into an Acquisition Agreement in the case where no "stalking horse" bidder has been selected, certain of the Debtors, as applicable, have applied or intend to apply to the applicable Courts for orders authorizing such Debtors to establish notice, bidding and sale procedures for the Sale of the particular Business (the "<u>Bidding Procedures Orders</u>"); and

WHEREAS, after entry of the Bidding Procedures Orders, such Debtors intend to conduct, or have conducted, an auction for the Sale of each Business in accordance with the Bidding Procedures Orders; and

WHEREAS, after conclusion of the auction, certain of the Debtors intend to apply, or have applied, to certain of the Courts for orders approving the Sale of each Business to the relevant Buyer (the "<u>Sale Orders</u>"); and

WHEREAS, in connection with certain Sales, the relevant Debtors intend to request, or have requested, that the Sale Orders contain procedures for the establishment of one or more escrow accounts (the "<u>Escrow Account</u>") overseen by an independent agent (the "<u>Escrow Agent</u>") for deposit of the proceeds of the Sale (the "<u>Sale Proceeds</u>") pending the allocation thereof in accordance with the provisions of this Protocol (each such Sale, as set forth in <u>Schedule 5</u> attached hereto, an "<u>In-Scope Sale</u>")[4]; and

WHEREAS, after entry of the Sale Orders and satisfaction or waiver of the conditions to closing set forth in the relevant Acquisition Agreement, the Debtors and their respective affiliates intend to consummate, or have consummated, the Sale in accordance with the Sale Orders (in each case, a "<u>Closing</u>"); and

WHEREAS, the Debtors and certain other parties previously agreed, pursuant to the Interim Funding and Settlement Agreement, dated as of June 9, 2009 (as amended from time to time, the "<u>Interim Funding Agreement</u>"), as soon as reasonably practical following the execution of such agreement, to negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds, which would provide binding procedures for the allocation of Sale Proceeds where the Selling Debtors (as defined therein) have been unable to reach agreement regarding such allocation; and

WHEREAS, the Parties wish to agree on procedures for determining allocation of Sale Proceeds of each In-Scope Sale between and among each of the Debtors and the Non-Filed

---

[4] Schedule 5 will include monetization transactions related to intellectual property of the Debtors and Non-Filed Affiliates.

Affiliates, [OR/G: in each case that are participating as Selling Debtors in such In-Scope Sale] (each, a "Participating Party," and collectively, the "Participating Parties"); and

WHEREAS, the Parties wish to give each Participating Party an opportunity to assert, pursuant to the procedures set forth in this Protocol, an entitlement to an allocation of Sale Proceeds with respect to any In-Scope Sale, regardless of whether or not such Participating Party was a party or signatory to the Acquisition Agreements applicable to such In-Scope Sale; and

WHEREAS, each Party wishes to participate in the procedures set forth in this Protocol, and has agreed to be bound by this Protocol, any Partial Allocation Amount (as defined below) and any outcome with respect to the Allocation (as defined below) of Sale Proceeds of each In-Scope Sale pursuant to a Decision or a Supplementary Decision of the Panel (each, as defined below); and

WHEREAS, the Non-Filed Affiliates have appointed ●[5] as their representative, which shall represent the Non-Filed Affiliates in connection with the negotiations and other procedures with respect to the Allocation of Sale Proceeds of each In-Scope Sale under this Protocol ("Affiliates' Representative"), and the Non-Filed Affiliates have also appointed an independent financial advisor and an independent counsel to assist the Affiliates' Representative.

NOW THEREFORE, IT IS HEREBY CONSENTED TO, STIPULATED, AGREED AND ORDERED THAT:

## ARTICLE I
## INITIAL NEGOTIATIONS

*Section 1.1*        The Negotiating Parties (as defined below) shall use commercially reasonable efforts to negotiate in good faith and as expeditiously as possible a [fair and equitable][6] allocation of the Sale Proceeds of each In-Scope Sale among the Participating Parties, where "Negotiating Parties" means NNL, NNI, the Monitor, the Creditors' Committee, the Bondholders' Committee, the Joint Administrators and the Affiliates' Representative.

*Section 1.2*        [HS: With the respect to all In-Scope Sales that closed before the date of this Protocol, if the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of such In-Scope Sales within [80] calendar days after the date of this Protocol, then the dispute as to the allocation of the relevant Sale Proceeds among the Participating Parties shall be automatically referred to mediation.  Such mediation shall be held within [20] calendar days therefrom.  Such mediation will cover the allocation of proceeds of all In-Scope Sales that have closed before the date of this Protocol unless the Negotiating Parties agree otherwise.  The identity of the mediator shall be agreed between the Parties or in circumstances where no such agreement can be reached shall be appointed by _____.]

---

[5] Identity of Affiliates' Representative to be discussed

[6] OR/G: standard should be "fair and reasonable."  Scope of dispute to be discussed.

*Section 1.3*        [HS: If the mediation in Section 1.2 above is not successful and the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of such In-Scope Sales within [10] calendar days after the commencement of the mediation, then the dispute as to the allocation of the Sale Proceeds from the sale of the Enterprise business shall be automatically referred to the Panel (as defined below) pursuant to this Protocol.  For the avoidance of doubt with respect to any and all In-Scope Sales that close after the date of this Protocol, the allocation of Sale Proceeds of such In-Scope Sales shall be determined by agreement between the Negotiating Parties and/or if possible by the mediation set out at Section 1.2 above, failing which by subsequent reference to the Panel.]

*Section 1.4*        [With respect to any In-Scope Sale that closed before the date of this Protocol, if the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of such In-Scope Sale within [100] calendar days after the date of this Protocol, then the dispute as to the allocation of the relevant Sale Proceeds among the Participating Parties shall be automatically referred to the Panel (as defined below) pursuant to this Protocol.  With respect to any In-Scope Sale that closes after the date of this Protocol, if the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of such In-Scope Sale within [100] calendar days after the closing of such In-Scope Sale, then the dispute as to the allocation of the relevant Sale Proceeds among the Participating Parties shall be automatically referred to the Panel (as defined below) pursuant to this Protocol.][HS: delete]  If an allocation dispute is referred to the Panel, the Panel shall determine a [fair and equitable] allocation of the Sale Proceeds of the relevant In-Scope Sale to be distributed to the Participating Parties.  The Parties hereby agree that the negotiation periods provided for in this Section 1.4 [HS would instead include Sections 1.2 and 1.3] may be extended by mutual written agreement of all the Negotiating Parties or may be terminated before their expiration upon written notice by any Negotiating Party delivered to all other Negotiating Parties.

*Section 1.5*        Upon the automatic referral of an allocation dispute to the Panel as contemplated by Section 1.4, NNI shall be responsible for promptly sending a notice to the Panel and the other Negotiating Parties, indicating in such notice that pursuant to the terms of Section 1.4, an allocation dispute has been automatically referred to the Panel.  If for any reason NNI shall fail to send such notification to the Panel and the other Parties within three days (excluding Saturdays, Sundays and national public holidays in any of the United States, Canada or the United Kingdom) (each a "<u>Business Day</u>") of the automatic referral of the allocation dispute to the Panel, any other Negotiating Party may undertake to send such notice to the Panel and the other Negotiating Parties.

*Section 1.6*        The Negotiating Parties, in their sole discretion, may agree to a partial allocation of the Sale Proceeds [of an In-Scope Sale][HS: delete] (each such partial allocation, a "<u>Partial Allocation Amount</u>").[7]  If the Negotiating Parties agree to a Partial Allocation Amount, such Partial Allocation Amount shall be released from the Escrow Account and distributed to one or more Participating Parties immediately following the later of (x) the closing of the In-

---

[7] Prior to signing of this Protocol (by which time the timing of the CDMA and Equinox closing should be known to the Parties), this Protocol will be revised to add language to accommodate EMEA's request that the Equinox dispute be the first allocation dispute to be handled by the Panel so long as it does not unreasonably delay the allocation for CDMA.

Scope Sale and (y) the date when the Negotiating Parties agree to such Partial Allocation Amount. Any remaining amounts shall remain in the Escrow Account until released from the Escrow Account in accordance with the provisions of this Protocol. [HS: Any release of a Partial Allocation Amount shall be in accordance with the terms of the relevant escrow agreement for any relevant In-Scope Sale.]

## ARTICLE II
## REFERRAL OF ALLOCATION DISPUTES TO THE PANEL

*Section 2.1*        As contemplated by Section 1.4, an allocation dispute shall be automatically referred to a dispute resolution panel constituted in accordance with Sections 2.2, 2.3 and 2.4 (the "Panel").

*Section 2.2*        The Parties have previously requested and received from the members of the Panel initial conflict disclosures [in accordance with the standard for "disinterestedness" under the Bankruptcy Code][8] as well as agreed upon procedures for identifying and preventing any potential current or future conflicts, and have determined based on such disclosures that the following individuals are acceptable and shall serve as the members of the Panel:  ●, ● and ●. For the purposes of administrative convenience, the Panel may appoint an administrative secretary.[9]

*Section 2.3*        Each member of the Panel shall be and remain at all times impartial and independent of the Parties.  Each member of the Panel shall disclose to the Parties any new or previously undisclosed conflict, [pursuant to the "disinterestedness" standard under the Bankruptcy Code,] that comes to the Panel member's attention from time to time, as well as any proposed remedy with respect to such conflict.  Following any such disclosure, the Negotiating Parties agree to confer regarding whether such disclosure requires disqualification of the Panel member, it being understood that a Panel member's disclosure under this Section 2.3 does not automatically render the Panel member conflicted or require the Panel member's disqualification.  If the Negotiating Parties cannot reach an agreement within [x] days of the Panel member's disclosure as to whether such Panel member should be disqualified, the US Court and the Canadian Court, in a joint hearing conducted under the Cross-Border Protocol (as defined below), shall decide the issue.  Notwithstanding anything to the contrary in this Protocol, if a member of the Panel is disqualified pursuant to this Section 2.3, the sole method for replacement of such member shall be as set forth in Section 2.4.

*Section 2.4*        If any member of the Panel is unable or unwilling to serve after receiving notice of the referral of any matter to the Panel or at any time thereafter, or is disqualified as a result of a conflict pursuant to the procedures in Section 2.3, such member shall be replaced as soon as possible by another individual to be selected by the Participating Party that originally proposed the inclusion of the outgoing Panel member in Section 2.2, [as previously set forth in writing provided to all Negotiating Parties, but the Negotiating Parties must give prior written consent to the appointment of the replacement Panel member, which

---

[8] OR/G: Conflict disclosure standard to be discussed.

[9] OR/G: If the Negotiating Parties cannot agree upon Panel members, each estate should be permitted to select one member of the Panel.

6

consent shall not be unreasonably withheld.][10]  [HS: delete and add:  Such Participating Party will provide written notification to all other Negotiating Parties of the identity of the replacement Panel Member.  The Negotiating Parties hereby consent to the concept of a replacement Panel Member being appointed but shall have the opportunity to consent to the identity of such replacement Panel Member.  Such consent will not be unreasonably withheld.  Following such consent from all Negotiating Parties, the appointment of the replacement Panel Member will be effective.  Such potential replacement Panel member shall meet the standards of impartiality and independence set out in Section 2.3 above and shall be from the same country as the Panel member being replaced.]  The Panel may not consider or continue to consider issues or render any Decision, Supplementary Decision or other decision during the period when a Panel member is being replaced.

     *Section 2.5*     Each of the Negotiating Parties (other than the Non-Filed Affiliates, as represented by the Affiliates' Representative) shall bear its respective costs and expenses, including attorneys' fees, associated with the preparation and presentation of its case to the Panel and any other costs and expenses incurred by such Negotiating Party in connection with the proceedings pursuant to this Protocol, <u>provided that</u> nothing herein shall in any way affect any arrangements or agreements to cover [certain] fees and expenses of the Committees, including, without limitation, pursuant to any order by the US Court approving the fee applications of the Committees, as applicable.  The Panel shall specify in each Decision the total amount of the costs and other expenses of the Panel in connection with such Decision (the "<u>Panel Costs</u>"), and the proportions in which the Participating Parties shall bear such Panel Costs.  The costs and expenses of the Affiliates' Representative and the portion of the Panel Costs to be paid by the Non-Filed Affiliates shall be paid or reimbursed from the Sale Proceeds of [the particular][HS: delete and replace with: an] In-Scope Sale allocated to the Non-Filed Affiliates.  [HS: If the Sales Proceeds are insufficient to pay the costs and expenses of the Affiliates' Representative and their portion of the Panel costs, the Non-Filed Affiliates shall pay such costs jointly and severally in proportion to the allocation they receive from the Sale Proceeds.[11]  The Panel may direct the Parties to make one or several interim payments on account of their costs in reaching a Decision ("<u>Interim Costs</u>").  The Parties agree to instruct the Escrow Agent to pay such Interim Costs from the Escrow Account associated with such a Decision.]  The incremental costs and other expenses of the Panel in connection with a Supplementary Decision (as defined below) shall be paid from the Sale Proceeds [of the particular In-Scope Sale][HS: delete] allocated to the Participating Party or Participating Parties requesting such Supplementary Decision.  [HS: Such incremental costs and other expenses shall only be those costs and expenses in connection with the Supplementary Decision incurred after the rendering of the Decision.]

     *Section 2.6*     To the maximum extent permitted by applicable law, none of the members of the Panel shall be liable to any Party or any third party howsoever for any act or omission in connection with any proceedings under this Protocol.

     *Section 2.7*     The place of arbitration shall be New York, New York.  Other than as expressly specified otherwise in this Protocol, or as agreed by the Parties, all proceedings

---

[10] OR/G: Veto right to be discussed.  Consider going back to concept of categories.

[11] HS: This is a matter for the Non- Filed Affiliates to discuss between themselves.

pursuant to this Protocol, including, but not limited to, in-person Administrative Meetings,[12] Evidentiary Hearings and Oral Arguments (as defined herein), shall be held in New York, New York and shall be conducted in the English language, <u>provided that</u> Administrative Meetings may be held by telephone or videoconference.

*Section 2.8*        No members of the Panel, whether before or after appointment to the Panel, shall advise any Party on the merits or outcome of a dispute.  There shall be no communications between any member of the Panel after appointment to the Panel and a Party unless all other Parties are given the opportunity to be present during such communication.  For the avoidance of doubt, written communication (whether transmitted by email, facsimile or post) between any member of the Panel and a Party must also be transmitted contemporaneously to all other Parties.

**ARTICLE III**
**ADMINISTRATIVE MEETINGS**

*Section 3.1*        Within ● (●) calendar days of an allocation dispute being referred to the Panel, the Negotiating Parties and the Panel shall hold a meeting to discuss any administrative, procedural or other relevant matters (the "<u>Administrative Meeting</u>"), which shall be convened by the Panel.  Each of the Negotiating Parties must be given (i) at least seven (7) calendar days' notice prior to the Administrative Meeting and (ii) the opportunity to attend and participate in the Administrative Meeting.  The Panel shall determine whether to hold the Administrative Meeting by telephone, videoconference or in person, and shall determine a time and, for in-person Administrative Meetings only, a location within New York, New York, such that each Negotiating Party and/or its counsel shall be able to participate.  At the Administrative Meeting and at any other proceeding before the Panel, each of the Negotiating Parties shall be entitled to be represented by counsel.

*Section 3.2*        Except as specifically provided in this Protocol, the Panel shall, after taking into account, among other things, the facts and circumstances of [the relevant][HS: delete and substitute "any"] In-Scope Sale, the multiple jurisdictions involved in such In-Scope Sale or the applicable dispute and such other factors as the Panel considers relevant, establish the procedure and manner in which the resolution of the allocation dispute shall be conducted, including, without limitation, (i) the due dates for Written Submissions, (ii) the timing of the identification of Experts (as defined below), the submission of Expert Reports (as defined below), the identification of witnesses and the submission of Witness Statements (as defined below), (iii) the time, place, length and number of oral arguments for each Negotiating Party (the number of oral arguments for a given Negotiating Party multiplied by the length of each such oral argument, the "<u>Oral Argument Duration</u>"), (iv) whether to order the Negotiating Parties to prepare a joint agreed statement of facts, and (v) other administrative, procedural, or other relevant matters such as the scheduling of the Evidentiary Hearings (as defined below) and subsequent Administrative Meetings (if necessary), <u>provided</u> that the right of the Non-Filed Affiliates to participate and present their Interests (as defined below and as determined by the

---

[12] HS: Consider having in-person Administrative Meetings outside of New York City and add: Notwithstanding Section 2.7, Administrative Meetings may be held outside New York, State of New York or by telephone conference.

Panel) to the Panel shall reflect, to the extent reasonably practicable and determinable under the circumstances, the Panel's assessment of the relative contribution of the assets (tangible and intangible) and the rights transferred or relinquished by and liabilities assumed from the Non-Filed Affiliates in comparison to other Participating Parties with regards to a given Sale. Notwithstanding anything else in this Protocol, the Panel shall have the right in its discretion, and after providing an opportunity for all Negotiating Parties to be heard on the issue, to modify the procedures decided at any Administrative Meeting or otherwise either upon request of any Negotiating Party or on the Panel's own initiative.

*Section 3.3*        [HS: Subject to Section 3.4 below,] if any Negotiating Party determines that there is an actual or potential conflict with respect to the dispute among any of the Respective Participating Parties (as such term is defined in Schedule 6 attached hereto) of such Negotiating Party or that such Negotiating Party represents a diversity of interests with regard to such Negotiating Party's Respective Participating Parties (each such interest, an "Interest"), such Negotiating Party may petition in writing the Panel to further modify the procedures, including, without limitation, by increasing the Oral Argument Duration allocated to such Negotiating Party or providing separate representation to address such potential conflict of interest or diversity of interests,[provided that in the case of the Joint Administrators or the Monitor, their respective petitions to the Panel to represent up to three separate Interests shall not be opposed by any other Negotiating Party, and provided, further that any other Negotiating Party shall be free to make submissions as to the extent and scope of any additional representation rights.  Nothing herein shall prevent any Negotiating Party from opposing any arguments raised by the various Interests, or Presented Positions (as defined below) with respect to such Interests, represented by any Negotiating Party.][HS: delete]

*Section 3.4*        [HS: The Parties agree that the Joint Administrators may represent up to three separate Interests and the Parties will not object to such representation.  The procedures will be modified to enable this (including, without limitation, by increasing the Oral Argument Duration allocated to the Joint Administrators and allowing for separate representation).  If the Joint Administrators determine that they want to represent more than three separate Interests, they will petition the Panel in writing in the same manner as the other Negotiating Parties as set out in Section 3.3.  Nothing in Section 3.3 or  Section 3.4 shall prevent: (a) any Negotiating Party from opposing any arguments which may subsequently be raised by the various Interests, or Presented Positions (as defined below) with respect to such Interests, represented by any Negotiating Party; or (b) any Negotiating Party making submissions as to the extent and scope of any additional representation rights.]

*Section 3.5*        Nothing in Section 3.1 shall affect the right of the Panel to call additional Administrative Meetings to discuss administrative, procedural or other relevant matters after the initial Administrative Meeting.  Each such meeting shall constitute a separate Administrative Meeting for the purposes of this Protocol and must comply with the requirements set forth in Section 3.1.

## ARTICLE IV
## WRITTEN SUBMISSION BY THE NEGOTIATING PARTIES

*Section 4.1*            Each Negotiating Party may submit a written statement to the Panel,

including, without limitation, Expert Reports (as defined below) and written Witness Statements (as defined below), of such Negotiating Party's one or more Interests (as permitted by the Panel pursuant to Sections 3.3 and 3.4) with regards to the allocation of the relevant Sale Proceeds (such submission, the "First Round Submission").

*Section 4.2*        Each Negotiating Party shall present in its First Round Submission its methodology for the allocation of the relevant Sale Proceeds (the "Presented Position").  In the case of a Negotiating Party that represents more than one Interest (as determined by the Panel [HS: or pursuant to Sections 3.3 and 3.4 above]), such Negotiating Party may offer more than one Presented Position to the Panel.  The Presented Positions may also address any allocation or allocation methodology adopted or employed by any Buyer.  [HS: The Presented Position should include the legal basis for the entitlement of the Negotiating Party and any Interest(s) it represents to the Sale Proceeds and also the valuation methodology by which it is valued.]

*Section 4.3*        A Negotiating Party may rely, in its sole discretion, on one or more experts as a means of evidence on specific issues (each such expert, an "Expert").  A report by an Expert (each such report, an "Expert Report") shall include the following information:  (i) a description of the qualifications of such Expert, (ii) a description of the scope of work or mandate of such Expert together with a copy of the engagement letter of such Expert, (iii) a description of the compensation paid or to be paid to such Expert, (iv) a description of any relationship on the part of such Expert within the two years immediately preceding the date that such Expert was first contacted with respect to the engagement that could reasonably be considered relevant to an assessment of the Expert's independence or objectivity, (v) a description of the scope of review conducted by such Expert (including a list of the materials and other information relied upon by such expert in preparing such report, the identity of all current or former employees, officers or directors of Nortel Group entities who such expert interviewed and relied upon in connection with the preparation of such report, and any limitation on the scope of such review), (vi) a statement of the facts on which such Expert is basing its opinions and conclusions, (vii) the allocation approach and methodology or methodologies selected by such Expert and the reasons for selecting the particular allocation approach and methodology or methodologies, (viii) the key assumptions made by such Expert, (ix) such Expert's findings, opinions and conclusions, and (x) any qualifications or limitations to which such Expert's findings, opinions or conclusions are subject.  Notwithstanding anything to the contrary in this Protocol, a Negotiating Party need not disclose, and shall not be required to disclose, any information (other than the information set forth in the preceding sentence) concerning its Experts, including but not limited to (1) drafts of an Expert Report and (2) communications between a Negotiating Party (including its counsel) and an Expert (or documents reflecting such communications).[13]

*Section 4.4*        A Negotiating Party may rely on a written statement by any person, including, without limitation, any Party's officer, employee or other representative.  Such witness statement must contain a full and detailed description of the facts, and the source of the witness's information as to those facts, sufficient to serve as that witness's evidence in the matter

---

[13] HS: To be discussed: mechanism whereby Expert Evidence may be given by those advisers already engaged and objections will not be made to their independence.

in dispute (each such statement, a "<u>Witness Statement</u>").[14]

   *Section 4.5*          No Witness Statement or Expert Report shall be admissible unless such witness or Expert makes himself or herself available for an Examination (as defined below) and at the Evidentiary Hearing (as defined below), or unless the Negotiating Party or Negotiating Parties who requested such witness's or Expert's Examination or presence at the Evidentiary Hearing otherwise consents.[15]

   *Section 4.6*          Each Negotiating Party shall provide a First Round Submission to the Panel, with a copy to all other Negotiating Parties, no later than the deadline established by the Panel for such submission (the "<u>First Round Submission Deadline</u>").  The First Round Submission of each Negotiating Party shall not be subject to any page limits.

   *Section 4.7*     Each Negotiating Party, in its sole discretion, may opt to submit a second written submission to the Panel, with a copy to all other Negotiating Parties, no later than the deadline established by the Panel for such submission, which shall be at least ● calendar days after the First Round Submission Deadline (respectively, the "<u>Second Round Submission</u>" and the "<u>Second Round Submission Deadline</u>").  The Second Round Submission of each Negotiating Party shall not be subject to any page limits, <u>provided</u> that the Second Round Submission shall be limited to (a) responding to the First Round Submissions of other Negotiating Parties with regards to each Interest of the relevant Party and (b) presenting additional information or arguments in support of such Negotiating Party's Presented Position(s) based on Examination Testimony (as defined below) or new document discovery.  For the purposes of this Protocol, the First Round Submission, the Second Round Submission, the Post-Hearing Submission (as defined below) and any other written submissions by any Negotiating Party to the Panel shall be collectively referred to as the "<u>Written Submissions</u>."

   *Section 4.8*     Each Negotiating Party, in its sole discretion, may opt to submit one or more reports prepared by their Expert to respond to Expert Reports submitted by the other Negotiating Parties (each such report, a "<u>Rebuttal Expert Report</u>").  Such Rebuttal Expert Reports, to the extent such information is different from the Negotiating Party's Expert Reports or relevant to the Rebuttal Expert Report, shall include the information required in Section 4.3 herein for the submission of Expert Reports.

**ARTICLE V**
**ACCESS TO INFORMATION**

   *Section 5.1*     Each Party shall have prompt and equal access to the Asset Sale EDR for any sale that the Negotiating Parties reasonably anticipate to fall within the scope of the Protocol.  In addition, the Company has established an electronic data room (the "<u>Data Room</u>") to serve as a repository of all documents reasonably requested by the Negotiating Parties pursuant to Data Requests (as defined below) issued in accordance with Section 5.2.  It has been the intention of the Parties to use reasonable best efforts to provide prompt and equal access to the Data Room to

---

[14] HS: Discuss whether Witness Statements should be by sworn affidavits or an equivalent statement of truth.

[15] HS: Discuss mechanism to deal with circumstances where (a) an employee has left the employment of one of the Negotiating Parties; or (b) where a person is being uncooperative with the process.

all Parties, and the Parties agree to continue using their reasonable best efforts to provide such prompt and equal access to the Data Room to all Parties.  [For the avoidance of doubt, all information requested by or supplied to any Party shall be made available to all Parties.][16]

*Section 5.2*        Any Negotiating Party may send a written request to any Nortel Group entity, with a copy to all Negotiating Parties, for access to [pre-existing][17] documents [concerning such Nortel Group entity][HS: delete] in the possession of such Nortel Group entity that may be reasonably relevant to resolution of any dispute in respect of an In-Scope Sale (each a "Data Request").  The relevant Nortel Group entity shall use reasonable best efforts to make such documents available in the Data Room as soon as reasonably practicable.  [HS: The Parties agree that the categories of documents set out in the information requests set forth in Schedule ___ [previously exchanged requests] are relevant for the purposes of this Section.]

*Section 5.3*        [HS: Counsel for any Nortel Group entity who has been requested to provide documents shall provide a timely written certification confirming that persons acting under the supervision of counsel have made a reasonably diligent search for the requested documents and, except as otherwise indicated, all requested materials have been made available in the Data Room.]

*Section 5.4*        [Commencing as early as the start of the negotiations for any Sale that the Parties reasonably anticipate to fall within the scope of this Protocol,][HS: delete] the Negotiating Parties shall use their reasonable best efforts to permit each Negotiating Party the same prompt and equal access to employees of NNC, NNL, and their debtor and non-debtor affiliates, including the Debtors and the Non-Filed Affiliates (each an "Employee"), for purposes of obtaining information relevant to a dispute and having the Employee provide a Witness Statement.  To enable an Employee to prepare for an interview requested pursuant to this Section 5.4, the Negotiating Party requesting such an interview shall deliver to the Employee, reasonably in advance of such an interview, a list of topics or subject matters which the requesting Negotiating Party intends to cover with the Employee together with a list of information, if any, that the requesting Negotiating Party requests the Employee provide in writing.  Any written information provided by such Employee in response to a request from a Negotiating Party shall be made available in the relevant Data Room as soon as reasonably practicable after it has been so provided.  Interviews conducted pursuant to this Section 5.4 with Employees shall be expressly identified as being for such purpose and shall be separate from any discussions for the purpose of or in furtherance of a negotiated settlement of a dispute.

*Section 5.5*        It is the intention of the Parties that each Employee will use its reasonable best efforts to assist any Negotiating Party that seeks assistance of such Employee.  The Parties, however, acknowledge and recognize that (i) Employees have a corporate job function to perform with priorities that must be accommodated and (ii) each Employee's available time must be equitably shared with all Negotiating Parties.  Each Negotiating Party shall use its reasonable best efforts to ensure that Employees within its control provide the assistance reasonably requested of them by any Negotiating Party consistent with the considerations mentioned herein.

---

[16] OR/G: To be discussed.

[17] OR/G: To be discussed.

*Section 5.6*    Each Negotiating Party shall be permitted reasonable access to third parties that have rendered advice to another Negotiating Party relevant to a dispute (each a "Third Party").  Any Nortel Debtor to whom such advice was rendered shall use its reasonable best efforts to ensure that such Third Parties are made available to the Negotiating Parties. Notwithstanding the foregoing or anything to the contrary contained in Section 5.10 below, a Negotiating Party shall not be permitted access to Third Party advice rendered after the Filing Date [that is protected from disclosure by the attorney-client privilege, the solicitor-client privilege, the attorney work product doctrine or any other similar privilege.][HS: delete][18]

*Section 5.7*    Each witness that a Negotiating Party intends to call as a witness at an Evidentiary Hearing or from whom a Negotiating Party intends to submit a Witness Statement must be made available for a pre-hearing examination under oath (an "Examination") to take place following the First Round Submissions but no later than **[●]** days before the commencement of the Evidentiary Hearing,[19] provided further that the Witness Statement of any individual that does not submit to an Examination, if requested, shall only be considered by the Panel upon the prior written consent of the Negotiating Party or Negotiating Parties that requested the Examination.  A Negotiating Party may also request an Examination of any other Employee of another Party or Third Party.  Each examination will be held at the location of the relevant witness unless otherwise agreed [by the Negotiating Parties][HS: delete].  Each Negotiating Party may attend an Examination and may ask questions at such Examination regardless of whether such Negotiating Party requested the Examination of the witness.  The Negotiating Parties shall agree in advance of an Examination on the length and scope of such Examination, or failing such agreement within ● days in advance, the Panel shall determine the length and scope of such Examination.  Except for witnesses that a Negotiating Party intends to call as a witness at an Evidentiary Hearing or from whom a Negotiating Party intends to submit a Witness Statement, and unless the Party or Third Party whose Employee is requested to submit to an Examination consents to such Examination, the Panel, after submissions by the relevant Negotiating Parties and a hearing, may prevent an Examination solely on the grounds that such Examination would be unduly burdensome or would not likely lead to the discovery of relevant evidence.[20]

*Section 5.8*    Each Negotiating Party shall use its reasonable best efforts to make available any Employee within its control for Examinations pursuant to Section 5.7 or for the Evidentiary Hearing if they may be properly called pursuant to Section 6.2 as a non-expert witness for such Evidentiary Hearing.[21]

*Section 5.9*    [Each Expert that a Negotiating Party intends to present at an Evidentiary Hearing, if requested by another Negotiating Party, must be made available for an Examination no later than ● days before the commencement of the Evidentiary Hearing, provided, further that the Expert Report or Rebuttal Expert Report of any Expert that does not submit to an

---

[18] OR/G: To be discussed.

[19] Parties to consider whether this should be tied to the Second Round Submission Deadline.

[20] OR/G: Issue of Third Parties to be discussed.  HS: Witnesses may want or require their own counsel and we will need to provide a mechanism to pay for such representation.

[21] HS: To be discussed.

Examination, if requested, shall only be considered by the Panel upon the prior written consent of the Negotiating Party or Negotiating Parties that requested the Examination.  Such Examination will be conducted in the manner described in Section 5.7.][HS: delete]

Section 5.10    Testimony from an Examination ("Examination Testimony") shall be admissible at an Evidentiary Hearing [HS: keep only preceding language] if (i) the witness giving such Examination Testimony is unavailable to testify at the Evidentiary Hearing, or (ii) agreed upon by all of the Negotiating Parties.  Where a witness will testify at an Evidentiary Hearing, such witness's Examination Testimony, [and, in the case of an Expert, the Expert Report or the Rebuttal Expert Report of such Expert,][OR/G: delete] shall not be admissible except for the purpose of impeaching such witness's live testimony at the Evidentiary Hearing. [Nothing herein shall prevent a Negotiating Party from quoting or referring to Examination Testimony in their Written Submissions.][22]

Section 5.11    [With respect to information created before the Filing Date that may be requested pursuant to this Article 5, the Parties agree not to withhold such information on the basis that such information is protected from disclosure by the attorney-client privilege, the solicitor-client privilege, the attorney work product doctrine or under any other similar privilege, provided that by so agreeing, the Parties do not intend to waive any such applicable privilege or protection from disclosure with respect to any non-parties to this Protocol, and provided further that no Party shall be compelled to disclose any information potentially subject to any applicable privilege or protection from disclosure until the Parties have entered into a common interest agreement in substantially the form set forth in Schedule 8.][23]

Section 5.12    All disagreements or controversies arising from or related to access to information and pre-hearing Examinations provided for under this Protocol including, but not limited to, any disagreements related to the Data Room, the scope and reasonableness of questions on Examinations, Witness Statements and Experts Reports (each, a "Discovery Matter") shall be referred to the Panel for resolution, which resolution shall be determined by at least a majority of the members of the Panel and shall be final and binding upon the Parties.  The procedure for resolution of a Discovery Matter shall be left to the discretion of the Panel.

## ARTICLE VI[24]
## COMPULSION OF THIRD PARTY DOCUMENTS AND WITNESSES;
## OPERATION OF THE COURTS

Section 6.1    The Parties shall use their best endeavors to ensure that any witnesses or documents required by any other Party are procured.  To assist in this, the Parties agree to support each other and assist in any application to the Courts for assistance to compel the production of documents and witnesses.

---

[22] OR/G: To be discussed whether Examination Testimony should be allowed to be used in Written Submissions, which may be inconsistent with only using Examination Testimony for impeachment purposes.

[23] OR/G:  Delete provision on the grounds that disclosure should not be required if to do so would compromise a party's ability to assert privilege and this provision does not protect privilege under Canadian law.

[24] HS suggests including this Article as a way to ensure the Courts' support of the arbitration process.

*Section 6.2*    The Parties agree to use the powers they have available under their respective insolvency regimes to ensure that any witnesses or documents required by any other Party are procured.

*Section 6.3*    The Joint Administrators acknowledge that Sections 234 to 236 of the Insolvency Act 1986 apply with respect to this Protocol and that documents gathered and evidence obtained through the interview of witnesses pursuant to such sections may be used in the Protocol and for the benefit of the EMEA Debtors.

*Section 6.4*    The US Court Order approving the Protocol will provide that any proceeding under the Protocol shall be considered an adversary proceeding for purposes of the power to obtain discovery from non-parties by issuing subpoenas under Bankruptcy Rule 7045, and that the US Court shall enforce such non-party subpoenas in the same manner as if they were issued from an adversary proceeding.  The US Bankruptcy Court shall have the jurisdiction to decide any claims by any third parties that documents held by them or any party are not subject to such disclosure for any reason.

*Section 6.5*    In seeking the approval of the US and Canadian Courts to the entirety of this Protocol (as required by Section 10.6 herein), the US and Canadian Debtors will move that such order of the US and Canadian Courts approving this Protocol contain provisions, acceptable to each of the Parties acting reasonably, which entitle each Party to return to the US and Canadian Courts for an order to compel any person in the US or Canada that the Panel requests attend an Examination to attend to be examined as provided for under this Protocol, if such person fails to attend in accordance with Panel's initial request as served on such person.

## ARTICLE VII
## EVIDENTIARY HEARING; ORAL ARGUMENT

*Section 7.1*    Following submission of all Written Submissions, the Panel shall schedule one or more days of hearings, which may or may not be consecutive, at which the Panel shall receive oral evidence from the Negotiating Parties (an "Evidentiary Hearing").

*Section 7.2*    Each Negotiating Party may present oral testimony from (a) an Expert who has submitted an Expert Report or (b) a non-expert witness who has submitted a Witness Statement, so long as the Negotiating Party has given prior written notice to all other Negotiating Parties, in a timely manner and in accordance with any deadline established by the Panel for such notification, that such witness shall be called to provide evidence during an Evidentiary Hearing. Following the direct testimony of an Expert or non-expert witness, any other Negotiating Party may cross-examine such witness in an order to be determined by the Panel.  The Negotiating Party that initially presented the Expert or non-expert witness shall subsequently have the opportunity to ask additional questions raised in the other Negotiating Parties' cross-examination.

*Section 7.3*    Evidence from proceedings held in connection with the resolution of [another][HS: delete and substitute "any"] dispute under this Protocol, including, without limitation, evidence from a prior Evidentiary Hearing, Administrative Meeting, Written Submission, Witness Statement, or Expert Report (as defined below) for a given In-Scope Sale

("Prior Evidence") shall be admissible in the proceedings for [subsequent][HS: delete and substitute "all"] In-Scope Sales, unless, on motion by any Negotiating Party, the Panel decides that the Prior Evidence shall not be admitted or otherwise limits the admissibility of the Prior Evidence, provided that each Negotiating Party shall have the right to further re-direct and cross-examine[25] such Prior Evidence.[26]

Section 7.4    At the Evidentiary Hearing, each of the Negotiating Parties shall be entitled to examine witnesses, including Experts, from whom Witness Statements, Expert Reports or Rebuttal Expert Reports, as applicable, have been submitted by another Negotiating Party and present oral arguments in favor of their Presented Positions (the "Oral Argument").

Section 7.5    Evidentiary Hearings and Oral Argument shall be held at a time and location within New York, New York specified by the Panel, but in no event before ● (●) calendar days or after ● (●) calendar days of the Second Round Submission Deadline.  For the avoidance of doubt, Evidentiary Hearings and Oral Argument shall be held in person.

Section 7.6    At the close of the final Evidentiary Hearing or final Oral Argument, whichever is later, the Panel shall determine whether to require post-hearing submissions, and if so, the scope, length and due dates for such submissions (each such submission, a "Post-Hearing Submission").

## ARTICLE VIII
## THE DECISION OF THE PANEL

Section 8.1    The Panel shall render a written decision (the "Decision") as soon as reasonably practicable after the completion of the final Evidentiary Hearing or final Oral Argument in the particular dispute.  Each Decision, Supplementary Decision and any other decision of the Panel shall be made by at least a majority of the members of the Panel.

[OR/G:  Each Decision or Supplementary Decision, as the case may be:

(i)    shall reflect the Panel's determination of a fair and reasonable allocation of the Sale Proceeds of the particular In-Scope Sale between and among each of the relevant Participating Parties based on an evaluation of the assets, rights, properties and liabilities of each such Participating Party sold, assigned, transferred or licensed to, or assumed by, the Buyer in such In-Scope Sale (including, without limitation, any intellectual property license rights of a Participating Party that were terminated pursuant to an Appropriate License Termination, as such term is defined in the Interim Funding Agreement, in connection with such In-Scope Sale), provided that the foregoing shall not require the Panel to allocate any amount of such Sale Proceeds to any or all of such assets, rights, properties or liabilities; and

---

[25] OR/G: Scope of cross to be discussed.

[26] TBD - Whether Prior Evidence should be subject to limitations set forth herein regarding the binding nature of previous agreements and/or Decisions.  Canadian Debtors/Monitor also question whether cross-examination should be limited to the scope of direct examination.

      (ii)    shall be determined without regard to, or adjustment for, any other claims, entitlements, set-offs or adjustments of any nature whatsoever.

For greater certainty, the Panel shall have no duty or authority to inquire into or determine (i) whether any Participating Party is responsible for any alleged breach or non-performance of, or any indemnification obligation under, the terms of any Acquisition Agreement, or (ii) any Adverse Claim (as defined below) that may be asserted by any Participating Party (an "<u>Adverse Person</u>").  For this purpose, "<u>Adverse Claim</u>" means a claim that a particular Adverse Person is or was the rightful owner of or has or had an interest in the particular asset, right, property or liability that was not recorded in the instrument of title, deed, grant, lease, license or agreement governing the ownership, creation, invention, development or establishment of the asset, right, property or liability.]

    *Section 8.2*    The Decision shall contain:  (a) the percentage,[27] if any, (rounded to four decimal points) of the Sale Proceeds of a given In-Scope Sale to be allocated to the Canadian Debtors, the US Debtors, the EMEA Debtors and the Non-Filed Affiliates (an "<u>Allocation</u>"); (b) if the Panel deems appropriate, instructions to the Escrow Agent to distribute the relevant Sale Proceeds to NNL (on behalf of the Canadian Debtors), NNI (on behalf of the US Debtors), the Joint Administrators (on behalf of the EMEA Debtors) and to the Non-Filed Affiliates in accordance with the applicable Allocation immediately after the 15-day period set forth in Section 8.10 has elapsed without any application by a Party for a correction thereunder; and (c) [if necessary, a ruling on the allocation of any amounts to be returned to the Participating Parties from any reserves or escrow accounts established as part of the applicable In-Scope Sale.][28] Following the issuance of a Decision, and upon the written request of any of NNL, NNI (with the consent of the Creditors' Committee), the Joint Administrators (on behalf of the EMEA Debtors) or the Affiliates' Representative, the Panel, [only after submissions by all reasonably affected Parties and a hearing,][HS: delete] may issue a supplementary decision containing the percentage, if any, (rounded to four decimal points) of the applicable Allocation of the Sale Proceeds of such In-Scope Sale to be allocated amongst the group of debtors or affiliates represented by the Party requesting the supplementary decision (each such supplementary decision, a "<u>Supplementary Decision</u>").  [HS: Before issuing a Supplementary Decision, the Panel will provide the group of debtors or affiliates represented by the Party requesting the Supplementary Decision the opportunity to make submissions and, if necessary, hold a hearing.] Any incremental costs incurred in connection with the prosecution and rendering of a Supplementary Decision shall be borne solely by the Party or Parties requesting such Supplementary Decision, including any Panel Costs incurred in accordance with Section 2.5.  No Party will deliver a duly authenticated copy of any Decision or Supplementary Decision of the Panel to any Escrow Agent directing a release of any  Sale Proceeds from any Escrow Account unless such Decision or Supplementary Decision contains an express direction to the Escrow Agent for the release of such Sale Proceeds to some or all of the Participating Parties.

---

[27] OR/G:  To be discussed whether an Allocation may alternatively be expressed in U.S. dollars.

[28] TBD – Whether to include a schedule of the reserve or escrow accounts from the sales to be dealt with in a Decision.

*Section 8.3*      Each Decision, Supplementary Decision and any other decision of the Panel shall be made in writing, and shall contain a statement signed by each member of the Panel certifying that such writing constitutes the decision of the Panel.  Any Decision or Supplementary Decision, [in the sole discretion of the Panel, may][HS: delete and change "may" to "shall"] contain a short statement of the reasons upon which such Decision or Supplementary Decision, as the case may be, is based, <u>provided</u> that such Decision or Supplementary Decision, as the case may be, shall not include any dissenting reasons.

*Section 8.4*        In rendering a Decision or Supplementary Decision and an Allocation set forth in such Decision or Supplementary Decision, the Panel shall (i) treat as final and binding any Partial Allocation Amount, and (ii) not be bound to adopt, follow or place any weight in rendering a Decision on (x) any allocation contained in the relevant Transaction Documents, other than as set forth in <u>Schedule 7</u> attached hereto (such schedule to be supplemented from time to time with the consent of the Negotiating Parties), where "<u>Transaction Documents</u>" means, with respect to an In-Scope Sale, any agreement (a) among the one or more Participating Parties, or (b) one or more Participating Parties and the Purchaser, relating to or in connection with such In-Scope Sale, or (y) any previous Decision or Allocation of Sale Proceeds of the Panel relating to another In-Scope Sale.  Additionally, in rendering such a Decision, Supplementary Decision or an Allocation contained in such Decision or Supplementary Decision the Panel shall not be bound (a) to select one of the Presented Positions; (b) to adopt, follow or place any weight on anything contained in the Acquisition Agreements or any side or related agreement, [including any allocation agreed with the Buyer in or pursuant to the relevant Acquisition Agreement or any side or related agreement; [(c) by any previous Decision or Allocation of Sale Proceeds by the Panel relating to another In-Scope Sale; or (d) by the rules, provisions or administrative practices of any particular national, provincial, state or other law or legal system or government agency or the principles or standards of any particular organization or association (each such rule, provision, administrative practice, principles or standards, an "<u>Allocation Rule</u>"), <u>provided</u> that the Panel may, in its sole discretion, base a Decision, an Allocation or a Supplementary Decision or any element thereof upon one or more Allocation Rules.][HS: delete]

*Section 8.5*      [HS: The Panel shall base a Decision, an Allocation or a Supplementary Decision or any element thereof upon the relevant laws of the state or country governing or relating to the underlying transaction or issue.  The Panel in its own discretion may also have regard to valuation principles and practices which it considers relevant.]

*Section 8.6*      [HS: The Parties agree that they shall not tender as evidence or rely on as evidence of an allocation (i) any allocation contained in the relevant Transaction Documents (as defined in Section 8.4 above), other than as set forth in <u>Schedule 7</u> attached hereto (such schedule to be supplemented from time to time with the consent of the Negotiating Parties), (ii) any agreement (a) among the one or more Parties, or (b) one or more Parties and the Purchaser, relating to or in connection with such In-Scope Sale, and (iii) [further condition to reflect tax situation.]]

*Section 8.7*      [Placeholder for language excluding tax returns.]

18

*Section 8.8*        If the Negotiating Parties agree at any point in time prior to the relevant Decision as to a Partial Allocation Amount in respect of the Sale Proceeds of a particular In-Scope Sale, then the [Panel shall render a Decision only with respect to the allocation of] [HS: delete and substitute with: Decision of the Panel shall take into account the Partial Allocation Amount in allocating] the remaining portion of such Sale Proceeds.  If the relevant Parties agree at any point in time prior to the relevant Supplementary Decision as to the Allocation of any portion of the relevant Sale Proceeds allocated to the applicable Participating Parties pursuant to the applicable Decision, [then the Panel shall render a Supplementary Decision only with respect to the allocation of the remaining portion of the Sale Proceeds allocated to such Participating Parties pursuant to the applicable Decision][HS: delete and add: (the "Supplementary Partial Allocation"), then the Panel shall take into account the Supplementary Partial Allocation in allocating  the remaining portion of the Sale Proceeds to the entities affected by the Supplementary Decision.]

*Section 8.9*        The Panel shall not use, consult with or appoint any expert to report to the Panel on any issue.

*Section 8.10*        After the Panel has entered a Decision or Supplementary Decision, the Panel shall be barred from modifying such Decision or Supplementary Decision, as the case may be, other than to correct a clerical, computational or typographical error contained in the Decision or Supplementary Decision.  If the Panel makes such a correction on its own initiative, it shall do so within 15 days of the date of the Decision or Supplementary Decision, as the case may be.  Any application by a Party for such a correction must be made within 15 days of the date of the Decision or Supplementary Decision, as the case may be.

*Section 8.11*        Any Decision and Supplementary Decision of the Panel shall be conclusive, final and binding in connection with the applicable In-Scope Sale and, to the fullest extent permitted by applicable law, may not be challenged, appealed or sought to be vacated or set aside by any Party in any jurisdiction.

*Section 8.12*        Any Decision and Supplementary Decision of the Panel shall be deemed an arbitral award enforceable under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and all legislation implementing the Convention, including, in the United States, the United States Federal Arbitration Act.

*Section 8.13*        Provided that a Decision contains an appropriate instruction to the Escrow Agent, the Sale Proceeds for an In-Scope Sale shall be transferred by the Escrow Agent, in accordance with the Allocation contained in such Decision and the terms of the relevant escrow agreement, after the relevant Decision has been rendered, without the need for an order from any of the Courts.

*Section 8.14*        [Except as expressly provided for in any agreement of the relevant parties, neither this Protocol nor any Decision of the Panel shall preclude any Participating Party from asserting any legally cognizable claim or defense against any other Participating Party

pursuant to the applicable claims procedure approved by the applicable Court by or on behalf of any Participating Party against any other Participating Party.][29]

## ARTICLE IX
## CONFIDENTIALITY

*Section 9.1*        Except as may be required by applicable law or court order or by an authority having appropriate jurisdiction, each Party agrees (i) to maintain confidentiality as to all aspects of these procedures, including, without limitation, any Information (as defined below), the presentation of any issue to the Panel, any discussions, deliberations or proceedings of the dispute resolution procedure set forth in this Protocol, including without limitation any Submissions, Oral Arguments or Post-Hearing Submissions (the "Confidential Material") and (ii) not to use any Confidential Material for its own benefit or the benefit of any of its affiliates, including, without limitation, for the purpose of asserting or proving a Claim (as defined in Section 101(5) of the Bankruptcy Code) against any Debtor in any of the Proceedings, it being understood that the Parties may disclose the existence and nature of this Protocol and the dispute resolution procedure conducted hereunder as may be necessary to (x) satisfy any Condition (as defined below) or (y) comply with the applicable laws, including, without limitation, the U.S. federal or state securities laws or any Canadian federal, provincial or territorial securities laws, and it being further understood that the Parties may disclose any Decision or Supplementary Decision by the Panel.  As used in this Section 8.1, "Information" means any and all documents and information obtained by or on behalf of a Party from another Party or Nortel Group entity pursuant to this Protocol, including, without limitation, documents and information made available in the Data Room, Witness Statements, Written Submissions, responses given by Employees in interviews pursuant to Section 5.3, Examination Testimony and oral testimony given in any Evidentiary Hearing (but excluding any Decision or Supplementary Decision).

*Section 9.2*        In the event that a Party is served with or otherwise subject to legal process (including subpoena or discovery notice) requiring it to testify about, to produce, or otherwise to divulge Confidential Material, to the extent permitted by applicable law such Party will as soon as practicable inform the provider(s) of such Confidential Material so that the provider may seek a protective order or other remedy.  In the event that such protective order or other remedy has not been obtained and such entity is advised, in the opinion of counsel, that it is legally compelled to disclose any of the Confidential Material, such Party may disclose only such Confidential Material so advised to be disclosed.

*Section 9.3*        The Parties further agree that prior to the appointment of any individual to the Panel or appointment as an Expert by any Party, such individual shall agree in writing to preserve the confidentiality of the dispute resolution procedure conducted under this Protocol and all Confidential Material obtained hereunder.

*Section 9.4*        Nothing herein shall prevent any Party from disclosing information regarding the dispute resolution procedure conducted under this Protocol or all Confidential

---

[29] OR/G: Delete this section because claims against an estate should be asserted in the applicable claims resolution procedure and not under the Protocol.  HS also requests deletion of this section.

Material obtained hereunder for purposes of any legal proceedings brought in accordance with Section 10.4 to resolve any dispute arising from, relating to or in connection with the enforcement or implementation of this Protocol, including, without limitation, any matters relating to enforcement or otherwise of any Decision or Supplementary Decision.

*Section 9.5* [HS: On the entering into of an appropriate confidentiality agreement, the Parties agree that representatives of the Parties' creditors may attend all proceedings relating to this Protocol, including, but not limited to, Administrative Meetings, Evidentiary Hearings and Oral Arguments. Notwithstanding this, if any Party is of the view that a certain subject matter requires further confidentiality restrictions, they may petition the Panel for that proceeding or part of it to be held in camera.]

*Section 9.6* [HS: The Parties agree that the Parties may disclose the terms, existence and nature of this Protocol to their creditors.]

## ARTICLE X
## MISCELLANEOUS

*Section 10.1* In all matters not expressly provided for in this Protocol, the Panel and the Parties shall act in the spirit of this Protocol and shall make every reasonable effort to ensure that any Allocation pursuant to this Protocol will be legally enforceable.

*Section 10.2* All notices, requests, instructions, directions and other communications provided for herein shall be made in writing (including by facsimile) delivered to the intended recipient as follows:

**If to the US Debtors:**
c/o Nortel Networks Inc.
Attention: John Ray
Address: 2221 Lakeside Boulevard
         Richardson, Texas 75082
         U.S.A.
Facsimile No.: [ ]
Telephone No.: [+1 312 259 7627]

**With a copy to:**
Cleary Gottlieb Steen & Hamilton LLP
Attention: James L. Bromley, Esq.
Address: One Liberty Plaza
         New York, New York 10006
         U.S.A.
Facsimile No.: +1 212 225 3999
Telephone No.: +1 212 225 2163

**If to the Canadian Debtors:**
c/o Nortel Networks Limited
Attention: Anna Ventresca, Esq.
         Chief Legal Officer
Address: 5945 Airport Road, Suite 360
         Mississauga, Ontario L4V 1R9
         Canada
Facsimile No.: +1 905 863 2075
Telephone No.: +1 905 863 1204

**With a copy to:**
Ogilvy Renault LLP
Attention: Derrick Tay, Esq. and Michael J. Lang, Esq.
Address: Suite 3800
         Royal Bank Plaza, South Tower
         200 Bay Street, P.O. Box 84
         Toronto, Ontario M5J 2Z4
         Canada
Facsimile No.: +1 416 216 4832 / 216 3930
Telephone No.: +1 416 216 4832 / 216 3939

21

**If to the EMEA Debtors:**
c/o Ernst & Young LLP
Attention:  Alan Bloom
Address:  One More London Place
          London SE1 2AF
          United Kingdom
Facsimile No.:  +44 (0) 20 7951 1345
Telephone No.:  +44 (0) 20 7951 9898

**With a copy to:**
Herbert Smith LLP
Attention:  Stephen Gale, Esq. and Kevin Lloyd, Esq.
Address:  Exchange House
          Primrose Street
          London EC2A 2HS
          United Kingdom
Facsimile No.:  +44 (0) 20 7098 4878
Telephone No.:  +44 (0) 20 7466 2271

**If to the Monitor:**
c/o Ernst & Young, Inc.
Attention:  Murray A. McDonald
Address:  Ernst & Young Tower
          222 Bay Street, P.O. Box 251
          Toronto, ON M5K 1J7
          Canada
Facsimile No.:  +1 416 943 3300
Telephone No.:  +1 416 943 3016

**With a copy to:**
Goodmans LLP
Attention:  Jay Carfagnini, Esq.
Address:  250 Yonge Street, Suite 2400
          Toronto, Ontario M5B 2M6
          Canada
Facsimile No.:  +1 416 979 1234
Telephone No.:  +1 416 597 4107

**If to the Creditors' Committee:**
c/o Akin Gump Strauss Hauer & Feld LLP
Attention:  Fred S.  Hodara, Esq.
            David H. Botter, Esq.
Address:  One Bryant Park
          New York, New York 10036
          U.S.A.
Facsimile No.:  +1 212 872 1002
Telephone No.:  +1 212 872 8040

**If to the Bondholders' Committee:**
c/o Milbank, Tweed, Hadley & McCloy LLP
Attention: Albert A.  Pisa, Esq.
Address:  One Chase Manhattan Plaza
          New York, New York 10005-1413
          U.S.A.
Facsimile No.:  +1 212 530 5219
Telephone No.:  +1 212 530 5319

All notices, requests, instructions, directions and other communications to be sent under this Protocol to the Non-Filed Affiliates shall be made in writing (including by facsimile) and delivered to the contact addresses or facsimile numbers set forth in Schedule 4 hereto.

*Section 10.3*       The terms of this Protocol shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction, except to the extent that the United States Federal Arbitration Act applies, provided that Section 10.7 shall be governed exclusively by English law.  [HS: For the avoidance of doubt, the Parties do not agree that the underlying issues and the subject of the dispute are governed by New York law, and the Panel will determine the relevant laws pertaining to such issues.]

*Section 10.4*       To the fullest extent permitted by applicable law, each Party (i) agrees to submit to the exclusive jurisdiction of the [US Court and the Canadian Court (in a joint hearing conducted under the cross-border protocol adopted by such courts, as it may be in effect from time to time (the "Cross-Border Protocol"))][HS: delete and add: federal and state courts

22

sitting in New York County, State of New York], for purposes of all legal proceedings arising from, relating to or in connection with the enforcement or implementation of this Protocol, including, without limitation, any matters relating to enforcement or otherwise of any Decision or Supplementary Decision, (ii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such action brought in such courts or any claim that any such action brought in such courts has been brought in an inconvenient forum, (iii) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by law shall be valid and sufficient service thereof, and (iv) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law, provided that any claim, action or proceeding set forth in Section 10.8 shall be brought exclusively in the English courts.

     *Section 10.5*     Each Party set forth on Schedule 6[30] (each such party, "Designating Party") has appointed ● as its authorized agent (the "Process Agent"), upon whom process may be served in any legal proceeding arising from, relating to or in connection with the enforcement or implementation of this Protocol.  Each Designating Party consents to process being served in any legal proceeding arising from, relating to or in connection with the enforcement or implementation of this Protocol by mailing a copy thereof by registered or certified mail to the Process Agent.  Each Designating Party hereby represents and warrants that the Process Agent has accepted such appointment and has agreed to act as said agent for service of process, and each Designating Party agrees to take any and all action, including the filing of any and all documents that may be necessary to continue such appointment in full force and effect as aforesaid.  Service of process upon the Process Agent shall be deemed, in every respect, effective service of process upon the relevant Designating Party.

     *Section 10.6*     No provision of this Protocol (other than as set forth in Sections [9.2, 9.3, 9.4, 9.6, 9.7, 9.10, 9.11, 9.15, 9.17 and 9.18]) shall be effective until the satisfaction of the following conditions:  (A) each of the US Court and the Canadian Court approve the entirety of this Protocol and all of the provisions hereof and (B) the Joint Administrators apply to the UK Court and receive a direction from the UK Court that they are at liberty to enter into this Protocol [and it approves the entirety of this Protocol and all of the provisions hereof] (the "Conditions").[31]

     *Section 10.7*     [Nothing contained in any Transaction Document, including without limitation any intellectual property license termination agreements, shall be with prejudice to (A) any right, entitlement or claim by or on behalf of NNL or any affiliate or subsidiary which licensed any intellectual property from NNL (each a "Nortel Licensee") to assert solely as (x) between NNL and any such Nortel Licensee or (y) between two or more Nortel Licensees any ownership or proprietary interest in and to the intellectual property subject to the intellectual property licenses, whether in respect of or pursuant to that certain Master Research and Development Agreement, dated as of December 22, 2004 (as amended and supplemented from time to time, the "Master R&D Agreement"), or otherwise, for the purpose of advocating such

---

[30] Non-Filed Affiliates + EMEA Non-Filed entities.  TBD – whether EMEA Debtors should be included in this list.

[31] Section revised by HS.

position in connection with an allocation of the Sale Proceeds resulting from the sale, license or other disposition of the intellectual property in an In-Scope Sale, or (B) the right, entitlement or claim by or on behalf of NNL or any Nortel Licensee to dispute and defend any such assertions in connection with an allocation of Sale Proceeds from an In-Scope Sale.][32]

*Section 10.8*      The Parties agree that the Joint Administrators have negotiated and are entering into this Protocol as agents for the EMEA Debtors to which they are appointed and that none of the Joint Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Nortel Group company to observe, perform or comply with any of its obligations under this Protocol or under or in relation to any associated arrangements or negotiations.  The Joint Administrators are a Party to this Protocol:  (i) as agents of certain of the respective EMEA Debtors of which they are administrators; and (ii) in their own capacities solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the United Kingdom Insolvency Act 1986 and enforcing the obligations of certain other Parties to this Protocol.  Notwithstanding anything to the contrary in this Protocol, any claim, action or proceeding against the Joint Administrators in their personal capacities (and not as agents for any EMEA Debtors) under this Protocol shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English courts.[33]

*Section 10.9*      The Parties agree that the Joint Israeli Administrators have negotiated and are entering into this Agreement as agents for the Israeli Company and that none of the Joint Israeli Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Nortel Group company to observe, perform or comply with any of its obligations under this Protocol or under or in relation to any associated arrangements or negotiations.  The Joint Israeli Administrators are a party to this Protocol:  (i) as agents of the Israeli Company; and (ii) in their own capacities solely for (a) obtaining the benefit of any provisions of this Protocol expressed to be conferred on them and (b) enforcing the obligations of the other Parties to this Protocol.  Notwithstanding anything to the contrary in this Protocol, any claim, action or proceeding against the Joint Israeli Administrators arising from or related to the personal liability of the Joint Israeli Administrators, their firm, partners, employees, advisers, representatives or agents, (and not as agents for any Israeli Company) under this Agreement shall be governed exclusively by Israeli law and subject to the exclusive jurisdiction of the courts of Israel.

*Section 10.10*      Except as specifically set forth in this Protocol, this Protocol is not intended to, and shall not, create rights in any person or entity not a Party hereto.

*Section 10.11*      Other parties may be added to this Protocol only with the prior unanimous written consent of all Parties hereto, which consent shall not be unreasonably withheld.

---

[32] OR/G: Delete as it is beyond the scope of the Protocol and intrudes on the jurisdiction of the applicable claims resolution procedures.

[33] UK counsel to advice whether we need language delegating authority from NNSA to the Joint Administrators.

*Section 10.12*    This Protocol may be executed in separate counterparts (which may include counterparts delivered by facsimile transmission) and all of said counterparts taken together shall be deemed to be an original, shall be binding on the Party who signed the counterpart and together shall constitute a single agreement.

*Section 10.13*    This Protocol constitutes the complete agreement among the Parties with respect to the subject matter herein, and supersedes all other agreements among some or all of the Parties with respect to the subject matter herein.  This Protocol may be amended, on no less than 10 Business Days' notice, only by means of a writing signed by all the remaining Parties to this Protocol, which amendments, if material in the judgment of the Parties, must be approved by each of the Courts.

*Section 10.14*    This Protocol does not affect the confidentiality of any information exchanged between or among any of the Parties pursuant to any prior agreements or understandings.

*Section 10.15*    This Protocol shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns from the date of its execution, but is expressly subject to and contingent upon its approval and entry by the Courts.

*Section 10.16*    Each Party to this Protocol shall (a) use commercially reasonable efforts to satisfy the Conditions as soon as possible, taking into account the availability of the respective Courts to address the matters set forth in this Protocol; (b) keep all other Parties reasonably apprised of the progress of the satisfaction of the Conditions and provide such other information regarding the satisfaction of the Conditions as reasonably requested by other Parties; and (c) use commercially reasonable efforts to allow any other Party, which so requests in writing, reasonable participation in connection with any proceedings in any Court related to the satisfaction of the Conditions.

*Section 10.17*    Subject to satisfaction of the Conditions, each Party (but, for the avoidance of doubt, not the Joint Administrators in their personal capacities) hereby severally represents and warrants to each other that, as of the date hereof:  (a) such Party has the power and authority to enter into this Protocol and to carry out its obligations hereunder; (b) the execution of this Protocol, and the consummation of the transactions contemplated herein, have been authorized by all necessary approvals, and no other act or proceeding on its part is necessary to authorize the execution of this Protocol; and (c) this Protocol has been duly executed by such Party and constitutes the legal, valid and binding obligations of such Party.

*Section 10.18*     In the event that any provision of this Protocol shall be illegal, invalid or unenforceable, such provision shall be construed by limiting it in such a way so as to render it legal, valid and enforceable to the maximum extent provided by applicable law, and the legality, validity and enforceability of the remaining provisions shall not in any way be affected or impaired by any illegality, invalidity or unenforceability of any provision.  The Parties shall negotiate in good faith with respect to any provision to this Protocol found to be illegal, invalid or unenforceable, in order to agree on a substitute provision giving effect, to the maximum extent possible, to the original intent of such provision.  [Notwithstanding anything to the contrary in this Section, in the event that all or any part of Section(s) ● of this Protocol shall be found

pursuant to a final order of a court or tribunal with competent jurisdiction to be illegal, invalid or unenforceable, or any part of Section(s) ● is any way struck down or modified without the consent of the Parties, this Protocol in its entirety shall automatically terminate and shall cease to have any force and effect.][34]

*Section 10.19*    Except as specifically set forth in this Protocol, the obligations of each Party hereunder are several, and not joint and several.

*Section 10.20*    If any of the Parties, the Experts, the Affiliates' Representative or the Panel shall have an obligation or deadline imposed pursuant to this Protocol that shall fall on any of a Saturday, Sunday or a national public holiday in any of the United States, Canada or the United Kingdom, such Party, Expert or the Panel shall have until the next Business Day immediately following such day to comply with such deadline or obligation.

*Section 10.21*    The Parties agree that, if after the date hereof, any subsidiary of any US Debtor commences chapter 11 proceedings in the US Court, then the Parties and such entity shall enter into an accession agreement whereby such entity shall accede to this Protocol as a US Debtor.

*Section 10.22*    The Non-Filed Affiliates hereby appoint [●] as the Affiliates' Representative and grant the Affiliates' Representative the authority to represent each Non-Filed Affiliate in all matters relating to this Protocol, including, without limitation, the power (a) to agree to any Partial Allocation Amount on behalf of the Non-Filed Affiliates, (b) to agree to a [fair and equitable] allocation of the Sale Proceeds pursuant to Section 1.1 or otherwise, (c) to amend or waive any provision of this Protocol, (d) to deliver and receive any notices permitted or required under this Protocol, and (e) to perform on behalf of the Non-Filed Affiliates any other act which the Affiliates' Representative deems necessary or desirable in the performance of the Affiliates' Representative's role under this Protocol.  Any action taken by the Affiliates' Representative and any agreement or settlement entered into by the Affiliates' Representative on behalf of the Non-Filed Affiliates in connection with the performance of this Protocol shall be binding upon and enforceable against the Non-Filed Affiliates without any need for further ratification by the Non-Filed Affiliates.  In addition, the Non-Filed Affiliates hereby grant the Affiliates' Representative the authority to select and retain one counsel and financial advisor to assist the Affiliates' Representative in connection with any proceedings or matters under this Protocol.

---

[34] OR/G: Is this provision intended to apply retroactively?  HS: Which provisions are intended to be non-severable?

IN WITNESS WHEREOF, the Parties hereto have caused this Protocol to be duly executed and delivered as of this **[●]**th day of **[●]**.

NORTEL NETWORKS CORPORATION

By _____
    Name:
    Title:

NORTEL NETWORKS LIMITED

By _____
    Name:
    Title:

NORTEL NETWORKS GLOBAL CORPORATION

By _____
    Name:
    Title:

NORTEL NETWORKS INTERNATIONAL CORPORATION

By _____
    Name:
    Title:

NORTEL NETWORKS TECHNOLOGY CORPORATION

By _____
    Name:
    Title:

NORTEL NETWORKS INC.


By _____
   Name:
   Title:


ARCHITEL SYSTEMS (U.S.)
CORPORATION


By _____
   Name:
   Title:


CORETEK, INC.


By _____
   Name:
   Title:


NORTEL ALTSYSTEMS, INC.


By _____
   Name:
   Title:


NORTEL ALTSYSTEMS
INTERNATIONAL INC.


By _____
   Name:
   Title:


NORTEL NETWORKS APPLICATIONS
MANAGEMENT SOLUTIONS INC.


By _____
   Name:
   Title:


**Signature page to Protocol**

NORTEL NETWORKS CABLE
SOLUTIONS INC.


By _____
    Name:
    Title:


NORTEL NETWORKS CAPITAL
CORPORATION


By _____
    Name:
    Title:


NORTEL NETWORKS HPOCS INC.


By _____
    Name:
    Title:


NORTEL NETWORKS
INTERNATIONAL INC.


By _____
    Name:
    Title:


NORTEL NETWORKS OPTICAL
COMPONENTS INC.


By _____
    Name:
    Title:

**Signature page to Protocol**

NORTHERN TELECOM
INTERNATIONAL INC.


By _____
    Name:
    Title:


QTERA CORPORATION


By _____
    Name:
    Title:


SONOMA SYSTEMS


By _____
    Name:
    Title:


XROS, INC.


By _____
    Name:
    Title:


NORTEL NETWORKS (CALA) INC.


By _____
    Name:
    Title:

**Signature page to Protocol**

Signed by ALAN BLOOM on behalf of each of the Joint Administrators of each of the EMEA Debtors over which they have been appointed, without personal liability as provided in Section 9.4 of this Protocol and solely for the purpose of obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to each of the Joint Administrators

By _____

    Name:
    Title:

in the presence of:

Witness Signature

_____

    Name:
    Address:


| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL NETWORK UK LIMITED (IN ADMINISTRATION)** by **ALAN BLOOM** as Joint Administrator (acting as agent and without personal liability) in the presence of: | )<br>)<br>)<br>)<br>)<br>) | **ALAN BLOOM** |

Witness signature:


Name:
Address:


**Signature page to Protocol**

**SIGNED** for and on behalf of **NORTEL**    )
**NETWORKS (IRELAND) LIMITED**    )    **ALAN BLOOM**
**(IN ADMINISTRATION)**    )
by **ALAN BLOOM** as Joint Administrator    )
(acting as agent and without personal    )
liability) in the presence of:    )

Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL**    )
**NETWORKS NV (IN**    )    **ALAN BLOOM**
**ADMINISTRATION)**    )
by **ALAN BLOOM** as Joint Administrator    )
(acting as agent and without personal    )
liability) in the presence of:    )

Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL**    )
**NETWORKS SPA (IN**    )    **ALAN BLOOM**
**ADMINISTRATION)**    )
by **ALAN BLOOM** as Joint Administrator    )
(acting as agent and without personal    )
liability) in the presence of:    )

Witness signature:


Name:
Address:

**SIGNED** for and on behalf of **NORTEL**          )
**NETWORKS BV (IN**                                  )          **ALAN BLOOM**
**ADMINISTRATION)**                                  )
by **ALAN BLOOM** as Joint Administrator            )
(acting as agent and without personal               )
liability) in the presence of:                      )

Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL**          )
**NETWORKS POLSKA SP Z.O.O.  (IN**                  )          **ALAN BLOOM**
**ADMINISTRATION)**                                  )
by **ALAN BLOOM** as Joint Administrator            )
(acting as agent and without personal               )
liability) in the presence of:                      )

Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL**          )
**NETWORKS HISPANIA SA (IN**                         )          **ALAN BLOOM**
**ADMINISTRATION)**                                  )
by **ALAN BLOOM** as Joint Administrator            )
(acting as agent and without personal               )
liability) in the presence of:                      )

Witness signature:


Name:
Address:


**Signature page to Protocol**

**SIGNED** for and on behalf of **NORTEL**  )
**NETWORKS (AUSTRIA) GMBH (IN**  )    **ALAN BLOOM**
**ADMINISTRATION)**  )
by **ALAN BLOOM** as Joint Administrator  )
(acting as agent and without personal  )
liability) in the presence of:  )


Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL**  )
**NETWORKS SRO (IN**  )    **ALAN BLOOM**
**ADMINISTRATION)**  )
by **ALAN BLOOM** as Joint Administrator  )
(acting as agent and without personal  )
liability) in the presence of:  )


Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL**  )
**NETWORKS ENGINEERING**  )
**SERVICES KFT (IN**  )    **ALAN BLOOM**
**ADMINISTRATION)**  )
by **ALAN BLOOM** as Joint Administrator  )
(acting as agent and without personal  )
liability) in the presence of:  )


Witness signature:


Name:
Address:


**Signature page to Protocol**

**SIGNED** for and on behalf of **NORTEL**        )
**NETWORKS PORTUGAL SA (IN**              )        **ALAN BLOOM**
**ADMINISTRATION)**                       )
by **ALAN BLOOM** as Joint Administrator  )
(acting as agent and without personal     )
liability) in the presence of:            )


Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL**        )
**NETWORKS SLOVENSKO SRO (IN**            )        **ALAN BLOOM**
**ADMINISTRATION)**                       )
by **ALAN BLOOM** as Joint Administrator  )
(acting as agent and without personal     )
liability) in the presence of:            )


Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL**        )
**NETWORKS ROMANIA SRL (IN**              )        **ALAN BLOOM**
**ADMINISTRATION)**                       )
by **ALAN BLOOM** as Joint Administrator  )
(acting as agent and without personal     )
liability) in the presence of:            )


Witness signature:


Name:
Address:


**Signature page to Protocol**

**SIGNED** for and on behalf of **NORTEL**  )
**GMBH (IN ADMINISTRATION)**  )      **ALAN BLOOM**
by **ALAN BLOOM** as Joint Administrator  )
(acting as agent and without personal  )
liability) in the presence of:  )


Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL**  )
**NETWORKS OY (IN**  )      **ALAN BLOOM**
**ADMINISTRATION)**  )
by **ALAN BLOOM** as Joint Administrator  )
(acting as agent and without personal  )
liability) in the presence of:  )


Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL**  )
**NETWORKS AB (IN**  )      **ALAN BLOOM**
**ADMINISTRATION)**  )
by **ALAN BLOOM** as Joint Administrator  )
(acting as agent and without personal  )
liability) in the presence of:  )


Witness signature:


Name:
Address:


**Signature page to Protocol**

**SIGNED** for and on behalf of **NORTEL**   )
**NETWORKS INTERNATIONAL**   )   **ALAN BLOOM**
**FINANCE AND HOLDING BV (IN**   )
**ADMINISTRATION)**   )
by **ALAN BLOOM** as Joint Administrator   )
(acting as agent and without personal   )
liability) in the presence of:   )

Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL**   )
**NETWORKS FRANCE S.A.S.  (IN**      )   **ALAN BLOOM**
**ADMINISTRATION)**   )
by **ALAN BLOOM** as Joint Administrator   )
(acting as agent and without personal   )
liability) in the presence of:   )

Witness signature:


Name:
Address:

**Signature page to Protocol**

**[NOTE: Additional signature blocks to be added for NNSA, the Monitor, the Creditors' Committee, the Bondholders' Committee, the Non-Filed Affiliates]**

**SCHEDULE 1**

**Canadian Debtors**

Nortel Networks Corporation

Nortel Networks Limited

Nortel Networks Global Corporation

Nortel Networks International Corporation

Nortel Networks Technology Corporation

**SCHEDULE 2**

**US Debtors**

Nortel Networks Inc.

Architel Systems (U.S.) Corporation

CoreTek, Inc.

Nortel Altsystems, Inc.  (previously "Alteon WebSystems, Inc.")

Nortel Altsystems International Inc.  (previously "Alteon WebSystems International, Inc.")

Nortel Networks Applications Management Solutions Inc.

Nortel Networks Cable Solutions Inc.

Nortel Networks Capital Corporation

Nortel Networks HPOCS Inc.

Nortel Networks International Inc.

Nortel Networks Optical Components Inc.

Northern Telecom International Inc.

Qtera Corporation

Sonoma Systems

Xros, Inc.

Nortel Networks (Cala), Inc.

**SCHEDULE 3**

**EMEA Debtors**

Nortel Networks UK Limited (In Administration)

Nortel Networks (Ireland) Limited (In Administration)

Nortel Networks NV (In Administration)

Nortel Networks SpA (In Administration)

Nortel Networks BV (In Administration)

Nortel Networks Polska Sp z.o.o.  (In Administration)

Nortel Networks Hispania, SA (In Administration)

Nortel Networks (Austria) GmbH (In Administration)

Nortel Networks sro (In Administration)

Nortel Networks Engineering Services Kft (In Administration)

Nortel Networks Portugal SA (In Administration)

Nortel Networks Slovensko, sro (In Administration)

Nortel Networks Romania Srl (In Administration)

Nortel GmbH (In Administration)

Nortel Networks Oy (In Administration)

Nortel Networks AB (In Administration)

Nortel Networks International Finance & Holding BV (In Administration)

Nortel Networks France S.A.S.  (In Administration)

Nortel Networks Israel (Sales and Marketing) Limited (In Administration)

**SCHEDULE 4**

**Names of Non-Filed Affiliates**

**and Notice Information**

**SCHEDULE 5**

**List of In-Scope Sales**

**SCHEDULE 6**

**Names of Respective Participating Parties**

**for each Party**

**SCHEDULE 7**

**List of Transaction Documents**

THIS DRAFT AGREEMENT HAS BEEN PRODUCED
FOR DISCUSSION AND SETTLEMENT PURPOSES
ONLY AND IS SUBJECT TO THE PROVISIONS OF
RULE 408 OF THE RULES OF EVIDENCE FOR
UNITED STATES COURTS AND MAGISTRATES AND
ANY OTHER SIMILAR APPLICABLE RULES IN ALL
PERTINENT JURISDICTIONS.

*Draft of* ~~February 26,~~**April 7,** 2010
*Privileged and Confidential*

## PROTOCOL FOR RESOLVING DISPUTES
## CONCERNING ALLOCATION OF SALE PROCEEDS

This Protocol for Resolving Disputes Concerning Allocation of Sale Proceeds, dated ●, 2010 (the "Protocol"), is entered into by and among Nortel Networks Limited ("NNL") and the other entities set forth in Schedule 1 attached hereto, Nortel Networks Inc. ("NNI") and the other entities set forth in Schedule 2 attached hereto, the Joint Administrators (as defined below), the Joint Israeli Administrators (as defined below) and the entities set forth in Schedule 3 attached hereto (the "EMEA Debtors"), certain affiliates of the Debtors (as defined below) set forth in Schedule 4 attached hereto (the "Non-Filed Affiliates"), the Monitor (as defined below), the Official Committee of Unsecured Creditors appointed in the US Proceedings (as defined below) (the "Creditors' Committee") and the steering committee members of the ad hoc group of bondholders that have executed confidentiality or non-disclosure agreements with the Canadian Debtors and the US Debtors (each, as defined below) (the "Bondholders' Committee," and along with the Creditors' Committee, the "Committees") (each, a "Party," and collectively, the "Parties").  The Joint Administrators, in their personal capacity, shall be Party to this Protocol as provided in Section ~~9.7~~**10.8** and solely for the purposes of obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to the Joint Administrators and references to the Parties shall be construed accordingly.  The Joint Israeli Administrators,[1] in their personal capacity, shall be Party to this Protocol as provided in Section ~~9.8~~**10.9** and solely for the purposes of obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to the Joint Israeli Administrators and references to the Parties shall be construed accordingly.[~~1~~2]

WHEREAS, on January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC," and together with its debtor and non-debtor affiliates, the "Company" or the "Nortel Group"), NNL and certain of NNC's other Canadian affiliates included in Schedule 1 (collectively, the "Canadian Debtors"), commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and the "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor"); and

WHEREAS, on the Filing Date and on July 14, 2009 (with respect to Nortel Networks (CALA) Inc.), NNI and certain of NNI's United States affiliates included in Schedule 2 (collectively, the "US Debtors" and, together with the Canadian Debtors and the EMEA Debtors, the "Debtors") filed petitions in the United States Bankruptcy Court for the District of

---

[1] **HS to speak to the Israeli Joint Administrators to find out what they intend to do in relation to representation**

[~~1~~2] Subject to review by NNI's UK counsel.

Delaware (the "US Court") under chapter 11 of title 11 of the United States Code (respectively, the "US Proceedings" and the "Bankruptcy Code"); and

WHEREAS, on the Filing Date, Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel Networks S.A. ("NNSA") and certain of NNUK's affiliates in the Europe, Middle East and Africa ("EMEA") region, including those in Schedule 3 attached hereto, commenced administration proceedings (the "UK Proceedings" and, together with the Canadian Proceedings and the US Proceedings, the "Proceedings") before the High Court of Justice in London, England (the "UK Court" and, together with the Canadian Court and the US Court, the "Courts"), and the UK Court appointed individuals from Ernst & Young LLP (the "UK Administrator") and, in the case of NNIR only, Ernst & Young Chartered Accountants (the "NNIR Administrator"), as administrators in the UK Proceedings (the UK Administrator and the NNIR Administrator collectively, and including their respective successors, replacements and any subsequent office holders appointed to the relevant EMEA Debtors, the "Joint Administrators");[3] and

WHEREAS, subsequent to the Filing Date, Nortel Networks Israel (Sales and Marketing) Limited (In Administration)(the "Israeli Company") filed applications with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings, and the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof (the "Joint Israeli Administrators") on January 19, 2009, as joint administrators of the Israeli Company under the Israeli Companies Law, and further on November 25, 2009, the Israeli Court sanctioned a scheme of arrangement, which automatically means that the Israeli Company is no longer under a stay of proceedings, and further on November 29, 2009, the Israeli Court ordered that the Joint Israeli Administrators remain in office until the scheme of arrangement is completed in full, including up until the time when all funds arising from the sale of the Israeli Company's assets, are received and allocated; and

WHEREAS, subsequent to the Filing Date, NNSA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator (the "NNSA Liquidator") and an administrator (the "NNSA Administrator") have been appointed by the Versailles Commercial Court (Docket No. 2009P00492) for NNSA; and

WHEREAS, the Debtors and their respective subsidiaries and affiliates have sold, have agreed to sell, or may in the future sell, license or otherwise monetize their tangible and intangible assets outside the ordinary course of business in several transactions (any such transaction, a "Sale"), including in connection with a sale of a particular line of business or portfolio of technologies (each, a "Business"), to third party buyers (each such buyer, a "Buyer"); and

WHEREAS, the Company has provided, or intends to provide, Buyers and potential Buyers, as applicable, with access to a data room (which may be an electronic data

---

[3] HS to determine whether it can represent EMEA Non-Fileds

room) containing the books and records of the relevant Business and other financial information relating to such Business (each such electronic data room, an "Asset Sale EDR"); and

WHEREAS, with respect to each Business, the Debtors and their respective affiliates have entered, or intend to enter, into one or more acquisition, sale, license, transfer and/or other ancillary agreements (each such agreement, with respect to the sale, transfer and/or license of each Business, an "Acquisition Agreement") with the Buyer to govern the sale of such Business; and

WHEREAS, after entering into an Acquisition Agreement in the case where a so-called "stalking horse" bidder has been selected, or prior to entering into an Acquisition Agreement in the case where no "stalking horse" bidder has been selected, certain of the Debtors, as applicable, have applied or intend to apply to the applicable Courts for orders authorizing such Debtors to establish notice, bidding and sale procedures for the Sale of ~~each~~**the particular** Business (the "Bidding Procedures Orders"); and

WHEREAS, after entry of the Bidding Procedures Orders, such Debtors intend to conduct, or have conducted, an auction for the Sale of each Business in accordance with the Bidding Procedures Orders; and

WHEREAS, after conclusion of the auction, certain of the Debtors intend to apply, or have applied, to certain of the Courts for orders approving the Sale of each Business to the relevant Buyer (the "Sale Orders"); and

WHEREAS, in connection with certain Sales, the relevant Debtors intend to request, or have requested, that the Sale Orders contain procedures for the establishment of one or more escrow accounts (the "Escrow Account") overseen by an independent agent (the "Escrow Agent") for deposit of the proceeds of the Sale (the "Sale Proceeds") pending the allocation thereof in accordance with the provisions of this Protocol (each such Sale, as set forth in Schedule 5 attached hereto, an "In-Scope Sale")[~~3~~4]; and

WHEREAS, after entry of the Sale Orders and satisfaction or waiver of the conditions to closing set forth in the relevant Acquisition Agreement, the Debtors and their respective affiliates intend to consummate, or have consummated, the Sale in accordance with the Sale Orders (in each case, a "Closing"); and

WHEREAS, the Debtors and certain other parties previously agreed, pursuant to the Interim Funding and Settlement Agreement, dated as of June 9, 2009 (as amended from time to time, the "Interim Funding Agreement"), as soon as reasonably practical following the execution of such agreement, to negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds, which would provide binding procedures for the allocation of Sale Proceeds where the Selling Debtors (as defined therein) have been unable to reach agreement regarding such allocation; and

---

[~~3~~4] Schedule 5 will include monetization transactions related to intellectual property of the Debtors and Non-Filed Affiliates.

WHEREAS, the Parties wish to agree on procedures for determining allocation of Sale Proceeds of each In-Scope Sale between and among each of the Debtors and the Non-Filed Affiliates**, [OR/G: in each case that are participating as Selling Debtors in such In-Scope Sale]** (each, a "Participating Party," and collectively, the "Participating Parties"); and

WHEREAS, the Parties wish to give each Participating Party an opportunity to assert, pursuant to the procedures set forth in this Protocol, an entitlement to an allocation of Sale Proceeds with respect to any In-Scope Sale, regardless of whether or not such Participating Party was a party or signatory to the Acquisition Agreements applicable to such In-Scope Sale; and

WHEREAS, each Party wishes to participate in the procedures set forth in this Protocol, and has agreed to be bound by this Protocol**, any Partial Allocation Amount (as defined below)** and any outcome with respect to the Allocation (as defined below) of Sale Proceeds of each In-Scope Sale pursuant to a Decision or a Supplementary Decision of the Panel (each, as defined below); and

WHEREAS, the Non-Filed Affiliates have appointed ●[5] as their representative, which shall represent the Non-Filed Affiliates in connection with the negotiations and other procedures with respect to the Allocation of Sale Proceeds of each In-Scope Sale under this Protocol ("Affiliates' Representative"), and the Non-Filed Affiliates have also appointed an independent financial advisor and an independent counsel to assist the Affiliates' Representative.

NOW THEREFORE, IT IS HEREBY CONSENTED TO, STIPULATED, AGREED AND ORDERED THAT:

## ARTICLE I
## INITIAL NEGOTIATIONS

*Section 1.1*        The Negotiating Parties (as defined below) shall use commercially reasonable efforts to negotiate in good faith and as expeditiously as possible a [fair and equitable][6] allocation of the Sale Proceeds of each In-Scope Sale among the Participating Parties, where "Negotiating Parties" means NNL, NNI, the Monitor, the Creditors' Committee, the Bondholders' Committee, the Joint Administrators and the Affiliates' Representative.

***Section 1.2***        **[HS: With the respect to all In-Scope Sales that closed before the date of this Protocol, if the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of such In-Scope Sales within [80] calendar days after the date of this Protocol, then the dispute as to the allocation of the relevant Sale Proceeds among the Participating Parties shall be automatically referred to mediation.  Such mediation shall be held within [20] calendar days therefrom.  Such mediation will cover the allocation of proceeds of all In-Scope Sales that have closed before the date of this Protocol unless the Negotiating Parties agree otherwise.  The identity of the mediator shall be agreed**

---

[3][5] Identity of Affiliates' Representative to be discussed

**[6] OR/G: standard should be "fair and reasonable."  Scope of dispute to be discussed.**

4

**between the Parties or in circumstances where no such agreement can be reached shall be appointed by _____.]**

*Section 1.3*    **[HS: If the mediation in Section 1.2 above is not successful and the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of such In-Scope Sales within [10] calendar days after the commencement of the mediation, then the dispute as to the allocation of the Sale Proceeds from the sale of the Enterprise business shall be automatically referred to the Panel (as defined below) pursuant to this Protocol.  For the avoidance of doubt with respect to any and all In-Scope Sales that close after the date of this Protocol, the allocation of Sale Proceeds of such In-Scope Sales shall be determined by agreement between the Negotiating Parties and/or if possible by the mediation set out at Section 1.2 above, failing which by subsequent reference to the Panel.]**

*Section* **1.4**    ~~*Section 1.2*~~ [With respect to any In-Scope Sale that closed before the date of this Protocol, if the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of such In-Scope Sale within [100] calendar days after the date of this Protocol, then the dispute as to the allocation of the relevant Sale Proceeds among the Participating Parties shall be automatically referred to the Panel (as defined below) pursuant to this Protocol.  With respect to any In-Scope Sale that closes after the date of this Protocol, if the Negotiating Parties fail to reach an agreement regarding the allocation of the Sale Proceeds of such In-Scope Sale within [100] calendar days after the closing of such In-Scope Sale, then the dispute as to the allocation of the relevant Sale Proceeds among the Participating Parties shall be automatically referred to the Panel (as defined below) pursuant to this Protocol.]**[HS: delete]**  If an allocation dispute is referred to the Panel, the Panel shall determine a **[**fair and equitable**]** allocation of the Sale Proceeds of the relevant In-Scope Sale to be distributed to the Participating Parties.  The Parties hereby agree that the negotiation periods provided for in this Section ~~1.2~~**1.4 [HS would instead include Sections 1.2 and 1.3]** may be extended by mutual written agreement of all the Negotiating Parties or may be terminated before their expiration upon written notice by any Negotiating Party delivered to all other Negotiating Parties.

*Section* **1.5**    ~~*Section 1.3*~~ Upon the automatic referral of an allocation dispute to the Panel as contemplated by Section ~~1.2,~~**1.4,** NNI shall be responsible for promptly sending a notice to the Panel and the other Negotiating Parties, indicating in such notice that pursuant to the terms of Section ~~1.2 of this Protocol,~~**1.4,** an allocation dispute has been automatically referred to the Panel.  If for any reason NNI shall fail to send such notification to the Panel and the other Parties within three days (excluding Saturdays, Sundays and national public holidays in any of the United States, Canada or the United Kingdom) (each a "Business Day") of the automatic referral of the allocation dispute to the Panel, any other Negotiating Party may undertake to send such notice to the Panel and the other Negotiating Parties.

*Section* **1.6**    ~~*Section 1.4*~~ The Negotiating Parties, in their sole discretion, may agree to a partial allocation of the Sale Proceeds **[**of an In-Scope Sale**][HS: delete]** (each such partial allocation, a "Partial Allocation Amount").[47]  If the Negotiating Parties agree to a Partial

---

[47] Prior to signing of this Protocol (by which time the timing of the CDMA and Equinox closing should be known to the Parties), this Protocol will be revised to add language to accommodate EMEA's request that the Equinox dispute

Allocation Amount, such Partial Allocation Amount shall be released from the Escrow Account and distributed to one or more Participating Parties immediately following the later of (x) the closing of the In-Scope Sale and (y) the date when the Negotiating Parties agree to such Partial Allocation Amount.  Any remaining amounts shall remain in the Escrow Account until released from the Escrow Account in accordance with the provisions of this Protocol.  **[HS: Any release of a Partial Allocation Amount shall be in accordance with the terms of the relevant escrow agreement for any relevant In-Scope Sale.]**

## ARTICLE II
## REFERRAL OF ALLOCATION DISPUTES TO THE PANEL

*Section 2.1*        As contemplated by Section ~~1.2 of this Protocol.~~**1.4,** an allocation dispute shall be automatically referred to a dispute resolution panel constituted in accordance with Sections 2.2, 2.3 and 2.4 (the "Panel").

*Section 2.2*        The Parties have previously requested and received from the members of the Panel initial conflict disclosures **[**in accordance with the standard for "disinterestedness" under the Bankruptcy Code**]**[8] as well as agreed upon procedures for identifying and preventing any potential current or future conflicts, and have determined based on such disclosures that the following individuals are acceptable and shall serve as the members of the Panel:  ●, ● and ●.  For the purposes of administrative convenience, the Panel may appoint an administrative secretary.[9]

*Section 2.3*        Each member of the Panel shall be and remain at all times impartial and independent of the Parties.  Each member of the Panel shall disclose to the Parties any new or previously undisclosed conflict, **[**pursuant to the "disinterestedness" standard under the Bankruptcy Code,**]** that comes to the Panel member's attention from time to time, as well as any proposed remedy with respect to such conflict.  Following any such disclosure, the Negotiating Parties agree to confer regarding whether such disclosure requires disqualification of the Panel member, it being understood that a Panel member's disclosure under this Section 2.3 does not automatically render the Panel member conflicted or require the Panel member's disqualification.  If the Negotiating Parties cannot reach an agreement within [x] days of the Panel member's disclosure as to whether such Panel member should be disqualified, the US Court and the Canadian Court, in a joint hearing conducted under the Cross-Border Protocol (as defined below), shall decide the issue.  Notwithstanding anything to the contrary in this Protocol, if a member of the Panel is disqualified pursuant to this Section 2.3, the sole method for replacement of such member shall be as set forth in Section ~~2.4 of this Protocol.~~**2.4.**

*Section 2.4*        If any member of the Panel is unable or unwilling to serve after receiving notice of the referral of any matter to the Panel or at any time thereafter, or is

---

be the first allocation dispute to be handled by the Panel so long as it does not unreasonably delay the allocation for CDMA.

**[8] OR/G: Conflict disclosure standard to be discussed.**

**[9] OR/G: If the Negotiating Parties cannot agree upon Panel members, each estate should be permitted to select one member of the Panel.**

disqualified as a result of a conflict pursuant to the procedures in ~~section~~**Section** 2.3, such member shall be replaced as soon as possible by another individual to be selected by the Participating Party that originally proposed the inclusion of the outgoing Panel member in Section 2.2, **[**as previously set forth in writing provided to all Negotiating Parties, but ~~only upon~~ the **Negotiating Parties must give** prior written consent **to the appointment** of the ~~other Negotiating Parties~~**replacement Panel member**, which consent shall not be unreasonably withheld.**]**[10]   **[HS: delete and add:  Such Participating Party will provide written notification to all other Negotiating Parties of the identity of the replacement Panel Member.  The Negotiating Parties hereby consent to the concept of a replacement Panel Member being appointed but shall have the opportunity to consent to the identity of such replacement Panel Member.  Such consent will not be unreasonably withheld.  Following such consent from all Negotiating Parties, the appointment of the replacement Panel Member will be effective.  Such potential replacement Panel member shall meet the standards of impartiality and independence set out in Section 2.3 above and shall be from the same country as the Panel member being replaced.]**  The Panel may not consider or continue to consider issues or render any Decision, Supplementary Decision or other decision during the period when a Panel member is being replaced.

*Section 2.5*        Each of the Negotiating Parties (other than the Non-Filed Affiliates, as represented by the Affiliates' Representative) shall bear its respective costs and expenses, including attorneys' fees, associated with the preparation and presentation of its case to the Panel and any other costs and expenses incurred by such Negotiating Party in connection with the proceedings pursuant to this Protocol, <u>provided that</u> nothing herein shall in any way affect any arrangements or agreements to cover [certain] fees and expenses of the Committees, including, without limitation, pursuant to any order by the US Court approving the fee applications of the Committees, as applicable.  The Panel shall specify in each Decision the total amount of the costs and other expenses of the Panel in connection with such Decision (the "<u>Panel Costs</u>"), and the proportions in which the Participating Parties shall bear such Panel Costs.  The costs and expenses of the Affiliates' Representative and the portion of the Panel Costs to be paid by the Non-Filed Affiliates shall be paid **or reimbursed** from the Sale Proceeds of **[**the particular**][HS: delete and replace with: an]** In-Scope Sale allocated to the Non-Filed Affiliates.  **[HS: If the Sales Proceeds are insufficient to pay the costs and expenses of the Affiliates' Representative and their portion of the Panel costs, the Non-Filed Affiliates shall pay such costs jointly and severally in proportion to the allocation they receive from the Sale Proceeds.[11]  The Panel may direct the Parties to make one or several interim payments on account of their costs in reaching a Decision ("Interim Costs").  The Parties agree to instruct the Escrow Agent to pay such Interim Costs from the Escrow Account associated with such a Decision.]**  The incremental costs and other expenses of the Panel in connection with a Supplementary Decision (as defined below) shall be paid from the Sale Proceeds **[**of the particular In-Scope Sale**][HS: delete]** allocated to the Participating Party or Participating Parties requesting such Supplementary Decision.  **[HS: Such incremental costs and other expenses**

---

[10] **OR/G: Veto right to be discussed.  Consider going back to concept of categories.**

[11] **HS: This is a matter for the Non- Filed Affiliates to discuss between themselves.**

**shall only be those costs and expenses in connection with the Supplementary Decision incurred after the rendering of the Decision.]**

Section 2.6        To the maximum extent permitted by applicable law, none of the members of the Panel shall be liable to any Party or any third party howsoever for any act or omission in connection with any proceedings under this Protocol.

Section 2.7        The place of arbitration shall be New York, New York.  Other than as expressly specified otherwise in this Protocol, or as agreed by the Parties, all proceedings pursuant to this Protocol, including, but not limited to, **in-person** Administrative Meetings,[12] Evidentiary Hearings and Oral Arguments (as defined herein), shall be held in New York, New York and shall be conducted in the English language**, provided that Administrative Meetings may be held by telephone or videoconference**.

Section 2.8        No members of the Panel, whether before or after appointment to the Panel, shall advise any Party on the merits or outcome of a dispute.  There shall be no communications between any member of the Panel **after appointment to the Panel** and a Party unless all other Parties are given the opportunity to be present during such communication.  For the avoidance of doubt, written communication (whether transmitted by email, facsimile or post) between any member of the Panel and a Party must also be transmitted contemporaneously to all other Parties.

## ARTICLE III
## ADMINISTRATIVE MEETINGS

Section 3.1        Within ● (●) calendar days of an allocation dispute being referred to the Panel, the Negotiating Parties and the Panel shall hold a meeting to discuss any administrative, procedural or other relevant matters (the "Administrative Meeting"), which shall be convened by the Panel.  Each of the Negotiating Parties must be given (i) at least seven (7) calendar days' notice prior to the Administrative Meeting and (ii) the opportunity to attend and participate in the Administrative Meeting.  The **Panel shall determine whether to hold the** Administrative Meeting ~~shall be held at a time and in~~**by telephone, videoconference or in person, and shall determine a time and, for in-person Administrative Meetings only,** a location~~, as determined by the Panel~~ **within New York, New York**, such that each Negotiating Party and/or its counsel shall be able to participate ~~by telephone, videoconference or in person~~.  At the Administrative Meeting and at any other proceeding before the Panel, each of the Negotiating Parties shall be entitled to be represented by counsel.

Section 3.2        Except as specifically provided in this Protocol, the Panel shall, after taking into account, among other things, the facts and circumstances of **[**the relevant**][HS: delete and substitute "any"]** In-Scope Sale, the multiple jurisdictions involved in such In-Scope Sale or the applicable dispute and such other factors as the Panel considers relevant, establish the procedure and manner in which the resolution of the allocation dispute shall be conducted,

---

[12] **HS: Consider having in-person Administrative Meetings outside of New York City and add: Notwithstanding Section 2.7, Administrative Meetings may be held outside New York, State of New York or by telephone conference.**

including, without limitation, (i) the due dates for Written Submissions, (ii) the timing of the identification of Experts (as defined below), the submission of Expert Reports (as defined below), the identification of witnesses and the submission of Witness Statements (as defined below), (iii) the time, place, length and number of oral arguments for each Negotiating Party (the number of oral arguments for a given Negotiating Party multiplied by the length of each such oral argument, the "Oral Argument Duration"), (iv) whether to order the Negotiating Parties to prepare a joint **agreed** statement of facts, and (v) other administrative, procedural, or other relevant matters such as the scheduling of the Evidentiary Hearings (as defined below) and subsequent Administrative Meetings (if necessary), provided that the right of the Non-Filed Affiliates to participate and present their Interests (as defined below and as determined by the Panel) to the Panel shall reflect, to the extent reasonably practicable and determinable under the circumstances, the Panel's assessment of the relative contribution of the assets (tangible and intangible) and the rights transferred or relinquished by and liabilities assumed from the Non-Filed Affiliates in comparison to other Participating Parties with regards to a given Sale. Notwithstanding anything else in this Protocol, the Panel shall have the right in its discretion, and after providing an opportunity for all Negotiating Parties to be heard on the issue, to modify the procedures decided at any Administrative ~~Hearing~~**Meeting** or otherwise either upon request of any Negotiating Party or on the Panel's own initiative.

*Section 3.3* ~~If~~**[HS: Subject to Section 3.4 below,] if** any Negotiating Party determines that there is an actual or potential conflict with respect to the dispute among any of the Respective Participating Parties (as such term is defined in Schedule 6 attached hereto) of such Negotiating Party or that such Negotiating Party represents a diversity of interests with regard to such Negotiating Party's Respective Participating Parties (each such interest, an "Interest"), such Negotiating Party may petition in writing the Panel to further modify the procedures, including, without limitation, by increasing the Oral Argument Duration allocated to such Negotiating Party or providing separate representation to address such potential conflict of interest or diversity of interests, [provided that in the case of the Joint Administrators or the Monitor, their respective petitions to the Panel to represent up to three separate Interests shall not be opposed by any other Negotiating Party, and provided, further that any other Negotiating Party shall be free to make submissions as to the extent and scope of any additional representation rights.[5] Nothing herein shall prevent any Negotiating Party from opposing any arguments raised by the various Interests, or Presented Positions (as defined below) with respect to such Interests, represented by any Negotiating Party.]**[HS: delete]**

*Section 3.4* **[HS: The Parties agree that the Joint Administrators may represent up to three separate Interests and the Parties will not object to such representation. The procedures will be modified to enable this (including, without limitation, by increasing the Oral Argument Duration allocated to the Joint Administrators and allowing for separate representation). If the Joint Administrators determine that they want to represent more than three separate Interests, they will petition the Panel in writing in the same manner as the other Negotiating Parties as set out in Section 3.3. Nothing in Section 3.3 or Section 3.4 shall prevent: (a) any Negotiating Party from opposing any arguments which may subsequently be raised by the various Interests, or Presented Positions (as defined below)**

---

[5] ~~TBD: Retention of multiple professionals by Parties that represent more than one Interest~~

**with respect to such Interests, represented by any Negotiating Party; or (b) any Negotiating Party making submissions as to the extent and scope of any additional representation rights.]**

*Section 3.5*        *Section 3.4* Nothing in ~~the preceding section~~**Section 3.1** shall affect the right of the Panel to call ~~other administrative meetings~~**additional Administrative Meetings** to discuss administrative, procedural or other relevant matters after the initial Administrative Meeting.  Each such meeting shall constitute a separate Administrative Meeting for the purposes of this Protocol and must comply with the requirements set forth in Section ~~3.1 of this Protocol.~~**3.1.**

## ARTICLE IV
## WRITTEN SUBMISSION BY THE NEGOTIATING PARTIES

*Section 4.1*        Each Negotiating Party may submit a written statement to the Panel, including, without limitation, Expert Reports (as defined below) and written Witness Statements (as defined below), of such Negotiating Party's one or more Interests (as permitted by the Panel pursuant to ~~Section~~**Sections** 3.3 **and 3.4**) with regards to the ~~Allocation~~**allocation** of the relevant Sale Proceeds ~~to the Panel~~ (such submission, the "First Round Submission").

*Section 4.2*        Each Negotiating Party shall present in its First Round Submission its methodology for the allocation of the relevant Sale Proceeds (the "Presented Position").  In the case of a Negotiating Party that represents more than one Interest (as determined by the Panel **[HS: or pursuant to Sections 3.3 and 3.4 above]**), such Negotiating Party may offer more than one Presented Position to the Panel.  The Presented Positions may also address any allocation or allocation methodology adopted or employed by any Buyer.  **[HS: The Presented Position should include the legal basis for the entitlement of the Negotiating Party and any Interest(s) it represents to the Sale Proceeds and also the valuation methodology by which it is valued.]**

*Section 4.3*        A Negotiating Party may rely, in its sole discretion, on one or more experts as a means of evidence on specific issues (each such expert, an "Expert").  A report by an Expert (each such report, an "Expert Report") shall ~~provide~~**include** the following information: (i) a description of the qualifications of such Expert, (ii) a description of the scope of work or mandate of such Expert together with a copy of the engagement letter of such Expert, (iii) a description of the compensation paid or to be paid to such Expert, (iv) a description of any relationship on the part of such Expert within the two years immediately preceding the date that such Expert was first contacted with respect to the engagement that could reasonably be considered relevant to an assessment of the Expert's independence or objectivity, (v) a description of the scope of review conducted by such Expert (including a list of the materials and other information relied upon by such expert in preparing such report, the identity of all current or former employees, officers or directors of Nortel Group entities who such expert interviewed and relied upon in connection with the preparation of such report, and any limitation on the scope of such review), (vi) a statement of the facts on which such Expert is basing its opinions and conclusions, (vii) the allocation approach and **methodology or** methodologies selected by such Expert and the reasons for selecting the particular allocation approach and methodology or methodologies, (viii) the key assumptions made by such Expert, (ix) such Expert's findings,

opinions and conclusions, and (x) any qualifications or limitations to which such Expert's findings, opinions or conclusions are subject.  Notwithstanding anything to the contrary in this Protocol, a Negotiating Party need not disclose, and shall not be required to disclose, any information (other than the information set forth in the preceding sentence) concerning its Experts, including but not limited to (1) drafts of an Expert Report and (2) communications between a Negotiating Party (including its counsel) and an Expert (or documents reflecting such communications).[13]

Section 4.4        A Negotiating Party may rely on a written statement by any person, including, without limitation, any Party's officer, employee or other representative.  Such witness statement must contain a full and detailed description of the facts, and the source of the witness's information as to those facts, sufficient to serve as that witness's evidence in the matter in dispute (each such statement, a "Witness Statement").[14]

Section 4.5        No Witness Statement or Expert Report shall be admissible unless such witness or ~~expert~~**Expert** makes himself or herself available for an Examination (as defined below) and at the Evidentiary Hearing (as defined below), or unless the Negotiating Party or Negotiating Parties who requested such witness's or ~~expert~~**Expert**'s Examination or presence at the Evidentiary Hearing otherwise consents.[15]

Section 4.6        Each Negotiating Party shall provide a First Round Submission to the Panel, with a copy to all other Negotiating Parties, no later than the deadline established by the Panel for such submission (the "First Round Submission Deadline").  The First Round Submission of each Negotiating Party shall not be subject to any page limits.

Section 4.7        Each Negotiating Party, in its sole discretion, may opt to submit a second written submission to the Panel, with a copy to all other Negotiating Parties, no later than the deadline established by the Panel for such submission, which shall be at least ● calendar days after the First Round Submission Deadline (respectively, the "Second Round Submission" and the "Second Round Submission Deadline").  The Second Round Submission of each Negotiating Party shall not be subject to any page limits, provided that the Second Round Submission shall be limited to (a) responding to the First Round Submissions of other Negotiating Parties with regards to each Interest of the relevant Party and (b) presenting additional information or arguments in support of such Negotiating Party's Presented Position(s) based on Examination Testimony (as defined below) or new document discovery.  For the purposes of this Protocol, the First Round Submission, the Second Round Submission, the Post-Hearing Submission (as defined below) and any other written submissions by any Negotiating Party to the Panel shall be collectively referred to as the "Written Submissions."

---

[13] **HS: To be discussed: mechanism whereby Expert Evidence may be given by those advisers already engaged and objections will not be made to their independence.**

[14] **HS: Discuss whether Witness Statements should be by sworn affidavits or an equivalent statement of truth.**

[15] **HS: Discuss mechanism to deal with circumstances where (a) an employee has left the employment of one of the Negotiating Parties; or (b) where a person is being uncooperative with the process.**

*Section 4.8*    Each Negotiating Party, in its sole discretion, may opt to submit one or more reports prepared by their Expert to respond to Expert Reports submitted by the other Negotiating Parties (each such report, a "Rebuttal Expert Report").  Such Rebuttal Expert Reports, to the extent such information is different from the Negotiating Party's Expert Reports or relevant to the Rebuttal Expert Report, shall include the information required in Section 4.3 herein for the submission of Expert Reports.

**ARTICLE V**
**ACCESS TO INFORMATION**

*Section 5.1*    Each Party shall have prompt and equal access to the Asset Sale EDR for any sale that the Negotiating Parties reasonably anticipate to fall within the scope of the Protocol. In addition, the Company has established an electronic data room (the "Data Room") ~~that shall contain any~~**to serve as a repository of all** documents reasonably requested by ~~any~~**the** Negotiating ~~Party~~**Parties** pursuant to ~~a~~ Data ~~Request~~**Requests** (as defined below) issued in accordance with Section ~~5.2 of this Protocol.~~**5.2.**  It has been the intention of the Parties to use reasonable best efforts to provide prompt and equal access to the Data Room to all Parties, and the Parties agree to continue using their reasonable best efforts to provide such prompt and equal access to the Data Room to all Parties.  **[**For the avoidance of doubt, all information requested by or supplied to any Party shall be made available to all Parties.**]<u>16</u>**

*Section 5.2*    Any Negotiating Party may send a written request to any Nortel Group entity, with a copy to all Negotiating Parties, for access to **[pre-existing]<u>17</u>** documents **[**concerning such Nortel Group entity**][HS: delete]** in the possession of such Nortel Group entity that may be reasonably relevant to resolution of any dispute in respect of an In-Scope Sale (**each** a "Data Request").  The relevant Nortel Group entity shall use reasonable best efforts to make such documents available in the Data Room as soon as reasonably practicable.  **[HS: The Parties agree that the categories of documents set out in the information requests set forth in Schedule ____ [previously exchanged requests] are relevant for the purposes of this Section.]**

*Section 5.3*    **[HS: Counsel for any Nortel Group entity who has been requested to provide documents shall provide a timely written certification confirming that persons acting under the supervision of counsel have made a reasonably diligent search for the requested documents and, except as otherwise indicated, all requested materials have been made available in the Data Room.]**

*Section 5.4*    *Section 5.3* **[**Commencing as early as the start of the negotiations for any Sale that ~~parties~~**the Parties** reasonably anticipate to fall within the scope of this Protocol,**][HS: delete]** the Negotiating Parties shall use their reasonable best efforts to permit each Negotiating Party the same prompt and equal access to employees of NNC, NNL, and their debtor and non-debtor affiliates, including the Debtors and the Non-Filed Affiliates (each an "Employee"), for purposes of obtaining information relevant to a dispute and having the Employee provide a

---

**<u>16</u> OR/G: To be discussed.**

**<u>17</u> OR/G: To be discussed.**

Witness Statement.  To enable an Employee to prepare for an interview, **requested pursuant to this Section 5.4,** the Negotiating Party requesting such an interview shall deliver to the Employee, reasonably in advance of such an interview, a list of topics or subject matters which the requesting Negotiating Party intends to cover with the Employee together with a list of information, if any, that the requesting Negotiating Party requests the Employee provide in writing.  Any written information provided by such Employee in response to a request from a Negotiating Party shall be made available in the relevant Data Room as soon as reasonably practicable after it has been so provided.  Interviews conducted pursuant to this Section 5.3**5.4** with Employees shall be expressly identified as being for such purpose and shall be separate from any discussions for the purpose of or in furtherance of a negotiated settlement of a dispute.

   *Section 5.5*    *Section 5.4* It is the intention of the Parties that each Employee will use its reasonable best efforts to assist any Negotiating Party that seeks assistance of such Employee.  The Parties, however, acknowledge and recognize that (i) Employees have a corporate job function to perform with priorities that must be accommodated and (ii) each Employee's available time must be equitably shared with all Negotiating Parties.  Each Negotiating Party shall use its reasonable best efforts to ensure that Employees within its control provide the assistance **reasonably** requested of them by any Negotiating Party consistent with the considerations mentioned herein.

   *Section 5.6*    *Section 5.5* [Each Negotiating Party shall be permitted reasonable access to third parties that have rendered advice to another Negotiating Party relevant to a dispute (each a "Third Party").  Any Nortel Debtor to whom such advice was rendered shall use its reasonable best efforts to ensure that such Third Parties are made available to the Negotiating Parties.  Notwithstanding the foregoing or anything to the contrary contained in Section 5.10 below, a Negotiating Party shall not be permitted access to Third Party advice rendered before**after** the Filing Date [that is protected from disclosure by the attorney-client privilege, the solicitor-client privilege, the attorney work product doctrine or any other similar privilege.]⁶**[HS: delete]¹⁸**

   *Section 5.7*    *Section 5.6* Each witness that a Negotiating Party intends to call as a witness at an Evidentiary Hearing or from whom a Negotiating Party intends to submit a Witness Statement must be made available for a pre-hearing examination under oath (an "Examination") to take place following the First Round Submissions but no later than [●] days before the commencement of the Evidentiary Hearing,**¹⁹** provided, **further** that the Witness Statement of any individual that does not submit to an Examination, if requested, shall only be considered by the panel**Panel** upon the prior written consent of the Negotiating Party or Negotiating Parties that requested the Examination.⁷  A Negotiating Party may also request an Examination of any other Employee of another Party or Third Party.⁸  Each examination will be held at the location of the relevant witness unless otherwise agreed [to by the Negotiating Parties]**[HS: delete]**.  Each Negotiating Party may attend an Examination and may ask questions at such Examination

---

⁶**¹⁸ OR/G:** To be discussed.

**¹⁹ Parties to consider whether this should be tied to the Second Round Submission Deadline.**

⁷ Parties to consider whether this should be tied to the Second Round Submission Deadline.

⁸ TBD:  Procedure for compelling third parties to appear for Examination.

regardless of whether such Negotiating Party requested the Examination of the witness.  The Negotiating Parties shall agree in advance of an Examination on the length and scope of such Examination, or failing such agreement within ● days in advance, the Panel shall determine the length and scope of such Examination.  Except for witnesses that a Negotiating Party intends to call as a witness at an Evidentiary Hearing or from whom a Negotiating Party intends to submit a Witness Statement, and unless the Party or Third Party whose Employee is requested to submit to an Examination consents to such Examination, the Panel, after submissions by the relevant Negotiating Parties and a hearing, may prevent an Examination solely on the grounds that such Examination would be unduly burdensome or would not likely lead to the discovery of relevant evidence.**[20]**

**Section 5.8** ~~Section 5.7~~ Each Negotiating Party shall use its reasonable best efforts to make available any Employee within its control for Examinations pursuant to Section 5.7 or for the Evidentiary Hearing if they may be properly called pursuant to Section 6.2 ~~of this Protocol~~ as a non-expert witness for such Evidentiary Hearing.**[21]**

**Section 5.9** ~~Section 5.8~~ [Each Expert that a Negotiating Party intends to present at an Evidentiary Hearing, if requested by another Negotiating Party, must be made available for an Examination no later than ● days before the commencement of the Evidentiary Hearing, provided, <u>further</u> that the Expert Report or Rebuttal Expert Report of any Expert that does not submit to an Examination, if requested, shall only be considered by the ~~panel~~**Panel** upon the prior written consent of the Negotiating Party or Negotiating Parties that requested the Examination.  Such Examination will be conducted in the manner described in Section 5.7.]**[HS: delete]**

**Section 5.10** ~~Section 5.9~~ Testimony from an Examination ("<u>Examination Testimony</u>") shall be admissible at an Evidentiary Hearing **[HS: keep only preceding language]** if (i) the witness giving such Examination Testimony is unavailable to testify at the Evidentiary Hearing, or (ii) agreed upon by all of the Negotiating Parties.  Where a witness will testify at an Evidentiary Hearing, such witness's Examination Testimony, **[**and, in the case of an Expert, the Expert Report or the Rebuttal Expert Report of such Expert,**][OR/G: delete]** shall not be admissible except for the purpose of impeaching such witness's live testimony at the Evidentiary Hearing.  **[**Nothing herein shall prevent a Negotiating Party from quoting or referring to Examination Testimony in their Written Submissions.**]**[22]

**Section 5.11** ~~Section 5.10~~ [With respect to information created before the Filing Date that may be requested pursuant to this Article 5, the Parties agree not to withhold such information on the basis that such information is protected from disclosure by the attorney-client privilege, the solicitor-client privilege, the attorney work product doctrine or under any other similar privilege, <u>provided that</u> by so agreeing, the Parties do not intend to waive any such

---

**[20]** OR/G: Issue of Third Parties to be discussed.  HS: Witnesses may want or require their own counsel and we will need to provide a mechanism to pay for such representation.

**[21]** HS: To be discussed.

**[22]** OR/G: To be discussed whether Examination Testimony should be allowed to be used in Written Submissions, which may be inconsistent with only using Examination Testimony for impeachment purposes.

applicable privilege or protection from disclosure with respect to any non-parties to this Protocol, and <u>provided further that</u> no Party shall be compelled to disclose any information potentially subject to any applicable privilege or protection from disclosure until the Parties have entered into a common interest agreement in substantially the form set forth in <u>Schedule 8.</u>]**[23]**

**_Section 5.12_** ~~_Section 5.11_~~ All disagreements or controversies arising from or related to access to information and pre-hearing Examinations provided for under this Protocol including, but not limited to, any disagreements related to the Data Room, the scope and reasonableness of questions on Examinations, Witness Statements and Experts Reports (each, a "<u>Discovery Matter</u>") shall be referred to the Panel for resolution, which resolution shall be determined by **<u>at least</u>** a majority **<u>of the members</u>** of the Panel and shall be final and binding upon the Parties. The procedure for resolution of a Discovery Matter shall be left to the discretion of the Panel.

<u>**ARTICLE VI**</u>**[24]**
<u>**COMPULSION OF THIRD PARTY DOCUMENTS AND WITNESSES;**</u>
<u>**OPERATION OF THE COURTS**</u>

**_<u>Section 6.1</u>_    <u>The Parties shall use their best endeavors to ensure that any witnesses or documents required by any other Party are procured.  To assist in this, the Parties agree to support each other and assist in any application to the Courts for assistance to compel the production of documents and witnesses.</u>**

**_<u>Section 6.2</u>_    <u>The Parties agree to use the powers they have available under their respective insolvency regimes to ensure that any witnesses or documents required by any other Party are procured.</u>**

**_<u>Section 6.3</u>_    <u>The Joint Administrators acknowledge that Sections 234 to 236 of the Insolvency Act 1986 apply with respect to this Protocol and that documents gathered and evidence obtained through the interview of witnesses pursuant to such sections may be used in the Protocol and for the benefit of the EMEA Debtors.</u>**

**_<u>Section 6.4</u>_    <u>The US Court Order approving the Protocol will provide that any proceeding under the Protocol shall be considered an adversary proceeding for purposes of the power to obtain discovery from non-parties by issuing subpoenas under Bankruptcy Rule 7045, and that the US Court shall enforce such non-party subpoenas in the same manner as if they were issued from an adversary proceeding.  The US Bankruptcy Court shall have the jurisdiction to decide any claims by any third parties that documents held by them or any party are not subject to such disclosure for any reason.</u>**

**_<u>Section 6.5</u>_    <u>In seeking the approval of the US and Canadian Courts to the entirety of this Protocol (as required by Section 10.6 herein), the US and Canadian Debtors will</u>**

---

**[23]** **OR/G:  Delete provision on the grounds that disclosure should not be required if to do so would compromise a party's ability to assert privilege and this provision does not protect privilege under Canadian law.**

**[24]** **HS suggests including this Article as a way to ensure the Courts' support of the arbitration process.**

**move that such order of the US and Canadian Courts approving this Protocol contain provisions, acceptable to each of the Parties acting reasonably, which entitle each Party to return to the US and Canadian Courts for an order to compel any person in the US or Canada that the Panel requests attend an Examination to attend to be examined as provided for under this Protocol, if such person fails to attend in accordance with Panel's initial request as served on such person.**

### ARTICLE VII~~ARTICLE VI~~
### EVIDENTIARY HEARING; ORAL ARGUMENT

*Section 7.1*        ~~*Section 6.1*~~ Following submission of all Written Submissions, the Panel shall schedule one or more days of hearings, which may or may not be consecutive, at which the Panel shall receive oral evidence from the Negotiating Parties (an "Evidentiary Hearing").

*Section 7.2*        ~~*Section 6.2*~~ Each Negotiating Party may present oral testimony from (a) an Expert who has submitted an Expert Report or (b) a non-expert witness who has submitted a Witness Statement, so long as the Negotiating Party has given prior written notice to all other Negotiating Parties, in a timely manner and in accordance with any deadline established by the Panel for such notification, that such witness shall be called to provide evidence during an Evidentiary Hearing.  Following **the** direct testimony ~~by a~~**of an Expert or non-expert** witness, any other Negotiating Party may ~~question the~~**cross-examine such** witness in an order to be determined by the Panel.  The Negotiating Party that initially presented the **Expert or non-expert** witness shall subsequently have the opportunity to ask additional questions raised in the other Negotiating Parties' ~~questioning~~**cross-examination**.

*Section 7.3*        ~~*Section 6.3*~~ Evidence from proceedings held in connection with the resolution of **[**another**][HS: delete and substitute "any"]** dispute under this Protocol, including, without limitation, evidence from a prior Evidentiary Hearing, Administrative Meeting, Written Submission, Witness Statement, or Expert Report (as defined below) for a given In-Scope Sale ("Prior Evidence") shall be admissible in the proceedings for **[**subsequent**][HS: delete and substitute "all"]** In-Scope Sales, unless, on motion by any Negotiating Party, the Panel decides that the Prior Evidence shall not be admitted or otherwise limits the admissibility of the Prior Evidence, provided that each Negotiating Party shall have the right to further re-direct and cross-examine[25] such Prior Evidence ~~to the extent it consists of a witness's testimony.~~[9] **[26]**

*Section 7.4*        ~~*Section 6.4*~~ At the Evidentiary Hearing, each of the Negotiating Parties shall be entitled to ~~present orally arguments in favor of their Presented Positions (the "Oral Argument") and to~~ examine witnesses, including Experts, from whom Witness Statements ~~and~~**, Expert Reports or Rebuttal** Expert Reports, as applicable, have been submitted by another Negotiating Party **and present oral arguments in favor of their Presented Positions (the "Oral Argument")**.

---

[25] **OR/G: Scope of cross to be discussed.**

[9]**[26]** TBD - Whether Prior Evidence should be subject to limitations set forth herein regarding the binding nature of previous agreements and/or Decisions.  **Canadian Debtors/Monitor also question whether cross-examination should be limited to the scope of direct examination.**

*Section 7.5*        ~~Section 6.5~~ Evidentiary Hearings **and Oral Argument** shall be held at a time and ~~place~~**location within New York, New York** specified by the Panel, but in no event before ● (●) calendar days or after ● (●) calendar days of the Second Round Submission Deadline.  For the avoidance of doubt, Evidentiary Hearings and Oral Argument shall be held in person.

*Section 7.6*        ~~Section 6.6~~ At the close of the final Evidentiary Hearing or final Oral Argument, whichever is later, the Panel shall determine whether to require post-hearing submissions, and if so, the scope, length and due dates for such submissions (each such submission, a "<u>Post-Hearing Submission</u>").

**ARTICLE VIII~~ARTICLE VII~~**
**THE DECISION OF THE PANEL**

*Section 8.1*        ~~Section 7.1~~ The Panel shall render a written decision (the "<u>Decision</u>") as soon as reasonably practicable after the completion of the final Evidentiary Hearing or final Oral Argument in the particular dispute.  Each Decision, Supplementary Decision and any other decision of the Panel shall be made by at least a majority of the members of the Panel.

**[OR/G:  Each Decision or Supplementary Decision, as the case may be:**

**(i)    shall reflect the Panel's determination of a fair and reasonable allocation of the Sale Proceeds of the particular In-Scope Sale between and among each of the relevant Participating Parties based on an evaluation of the assets, rights, properties and liabilities of each such Participating Party sold, assigned, transferred or licensed to, or assumed by, the Buyer in such In-Scope Sale (including, without limitation, any intellectual property license rights of a Participating Party that were terminated pursuant to an Appropriate License Termination, as such term is defined in the Interim Funding Agreement, in connection with such In-Scope Sale), provided that the foregoing shall not require the Panel to allocate any amount of such Sale Proceeds to any or all of such assets, rights, properties or liabilities; and**

**(ii)    shall be determined without regard to, or adjustment for, any other claims, entitlements, set-offs or adjustments of any nature whatsoever.**

**For greater certainty, the Panel shall have no duty or authority to inquire into or determine (i) whether any Participating Party is responsible for any alleged breach or non-performance of, or any indemnification obligation under, the terms of any Acquisition Agreement, or (ii) any Adverse Claim (as defined below) that may be asserted by any Participating Party (an "Adverse Person").  For this purpose, "Adverse Claim" means a claim that a particular Adverse Person is or was the rightful owner of or has or had an interest in the particular asset, right, property or liability that was not recorded in the instrument of title, deed, grant, lease, license or agreement governing the ownership, creation, invention, development or establishment of the asset, right, property or liability.]**

*Section 8.2* ~~Section 7.2~~ The Decision shall contain:  (a) the percentage,[27] if any, (rounded to four decimal points) of the Sale Proceeds of a given In-Scope Sale to be allocated to the Canadian Debtors, the US Debtors, the EMEA Debtors and the Non-Filed Affiliates (an "Allocation"); (b) if the Panel deems appropriate, instructions to the Escrow Agent to distribute the relevant Sale Proceeds to NNL (on behalf of the Canadian Debtors), NNI (on behalf of the US Debtors), the Joint Administrators (on behalf of the EMEA Debtors) and to the Non-Filed Affiliates in accordance with the applicable Allocation **immediately after the 15-day period set forth in Section 8.10 has elapsed without any application by a Party for a correction thereunder**; and (c) [if necessary, a ruling on the allocation of any amounts to be returned to the Participating Parties from any reserves or escrow accounts established as part of the applicable In-Scope Sale.]~~10~~**28**  Following the issuance of a Decision, and upon the written request of **any of** NNL, NNI (with the consent of the Creditors' Committee), the Joint Administrators (on behalf of the EMEA Debtors) or the Affiliates' Representative, the Panel, [only after submissions by all reasonably affected Parties and a hearing,]**[HS: delete]** may~~]~~ issue a supplementary decision containing the percentage, if any, (rounded to four decimal points) of the applicable Allocation of the Sale Proceeds of such In-Scope Sale to be allocated amongst the group of debtors or affiliates represented by the Party requesting the supplementary decision (each such supplementary decision, a "Supplementary Decision").  **[HS: Before issuing a Supplementary Decision, the Panel will provide the group of debtors or affiliates represented by the Party requesting the Supplementary Decision the opportunity to make submissions and, if necessary, hold a hearing.]**  Any incremental costs incurred in connection with the prosecution and rendering of a Supplementary Decision shall be borne solely by the Party or Parties requesting such Supplementary Decision, including any Panel Costs incurred in accordance with Section ~~2.5 herein.~~**2.5.**  No Party will deliver a duly authenticated copy of any Decision or Supplementary Decision of the Panel to any Escrow Agent directing a release of any  Sale Proceeds from any Escrow Account unless such Decision or Supplementary Decision contains an express direction to the Escrow Agent for the release of such Sale Proceeds to some or all of the Participating Parties.

*Section 8.3* ~~Section 7.3~~ Each Decision, Supplementary Decision and any other decision of the Panel shall be made in writing, and shall contain a statement signed by each member of the Panel certifying that such writing constitutes the decision of the Panel.  Any Decision or Supplementary Decision, **[**in the sole discretion of the Panel, may**][HS: delete and change "may" to "shall"]** contain a short statement **of** the reasons upon which such Decision or Supplementary Decision, as the case may be, is based, <u>provided</u> that such Decision or Supplementary Decision, as the case may be, shall not include any dissenting reasons.

*Section 8.4*      ~~Section 7.4~~ In rendering a Decision or Supplementary Decision and an Allocation set forth in such Decision or Supplementary Decision, the Panel shall (i) treat as final and binding any Partial Allocation Amount, and (ii) not be bound to adopt, follow or place any weight in rendering a Decision on (x) any allocation contained in the relevant Transaction Documents, other than as set forth in Schedule 7 attached hereto (such schedule to be

---

[27] **OR/G:  To be discussed whether an Allocation may alternatively be expressed in U.S. dollars.**

~~10~~**28** TBD – Whether to include a schedule of the reserve or escrow accounts from the sales to be dealt with in a Decision.

supplemented from time to time with the consent of the Negotiating Parties), where "Transaction Documents" means, with respect to an In-Scope Sale, any agreement (a) among the one or more **Participating** Parties, or (b) one or more **Participating** Parties and the Purchaser, relating to or in connection with such In-Scope Sale, or (y) any previous Decision or Allocation of Sale Proceeds of the Panel relating to another In-Scope Sale.  Additionally, in rendering such a Decision, Supplementary Decision or an Allocation contained in such Decision or Supplementary Decision the Panel shall not be bound (a) to select one of the Presented Positions; (b) to adopt, follow or place any weight on anything contained in the Acquisition Agreements or any side or related agreement, [including any allocation agreed with the Buyer in or pursuant to the relevant Acquisition Agreement or any side or related agreement]; [11] [(c) by any previous Decision or Allocation of Sale Proceeds by the Panel relating to another In-Scope Sale; or (d) by the rules, provisions or administrative practices of any particular national, provincial, state or other law or legal system or government agency or the principles or standards of any particular organization or association (each such rule, provision, administrative practice, principles or standards, an "Allocation Rule"), provided that the Panel may, in its sole discretion, base a Decision, an Allocation or a Supplementary Decision or any element thereof upon one or more Allocation Rules. **][HS: delete]**

**Section 8.5**        **[HS: The Panel shall base a Decision, an Allocation or a Supplementary Decision or any element thereof upon the relevant laws of the state or country governing or relating to the underlying transaction or issue.  The Panel in its own discretion may also have regard to valuation principles and practices which it considers relevant.]**

**Section 8.6**        **[HS: The Parties agree that they shall not tender as evidence or rely on as evidence of an allocation (i) any allocation contained in the relevant Transaction Documents (as defined in Section 8.4 above), other than as set forth in Schedule 7 attached hereto (such schedule to be supplemented from time to time with the consent of the Negotiating Parties), (ii) any agreement (a) among the one or more Parties, or (b) one or more Parties and the Purchaser, relating to or in connection with such In-Scope Sale, and (iii) [further condition to reflect tax situation.]]**

**Section 8.7**        ~~*Section 7.5*~~ **[Rider[Placeholder for language** excluding tax returns ~~in connection with M&A transactions to follow~~].**]**

**Section 8.8**        ~~*Section 7.6*~~ If the Negotiating Parties agree at any point in time prior to the relevant Decision as to a Partial Allocation Amount in respect of the Sale Proceeds of a particular In-Scope Sale, then the **[**Panel shall render a Decision only with respect to the allocation of**] [HS: delete and substitute with: Decision of the Panel shall take into account the Partial Allocation Amount in allocating]** the remaining portion of such Sale Proceeds.  If the relevant Parties agree at any point in time prior to the relevant Supplementary Decision as to the Allocation of any portion of the relevant Sale Proceeds allocated to the applicable Participating Parties pursuant to the applicable Decision, **[**then the Panel shall render a

---

[11] ~~Tax counsel to provide rider to carve-out an exception to this rule b/c Nortel has agreed to allocate at least the book value to each tangible asset and the Panel has to respect this allocation principle.~~

Supplementary Decision only with respect to the allocation of the remaining portion of the Sale Proceeds allocated to such Participating Parties pursuant to the applicable Decision.**][HS: delete and add: (the "Supplementary Partial Allocation"), then the Panel shall take into account the Supplementary Partial Allocation in allocating  the remaining portion of the Sale Proceeds to the entities affected by the Supplementary Decision.]**

**Section 8.9**        *Section 7.7* The Panel shall not use, consult with or appoint any expert to report to the Panel on any issue.

**Section 8.10**        *Section 7.8* After the Panel has entered a Decision or Supplementary Decision, the Panel shall be barred from modifying such Decision or Supplementary Decision, as the case may be, other than to correct a clerical, computational or typographical error contained in the Decision or Supplementary Decision.  If the Panel makes such a correction on its own initiative, it shall do so within 30**15** days of the date of the Decision or Supplementary Decision, as the case may be.  Any application by a Party for such a correction must be made within 30**15** days of the date of the Decision or Supplementary Decision, as the case may be.

**Section 8.11**        *Section 7.9* Any Decision and Supplementary Decision of the Panel shall be conclusive, final and binding in connection with the applicable In-Scope Sale and, to the fullest extent permitted by applicable law, may not be challenged, appealed or sought to be vacated or set aside by any Party in any jurisdiction.

**Section 8.12**        *Section 7.10* Any Decision and Supplementary Decision of the Panel shall be deemed an arbitral award enforceable under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and all legislation implementing the Convention, including, in the United States, the United States Federal Arbitration Act.

**Section 8.13**        *Section 7.11* Provided that a Decision contains an appropriate instruction to the Escrow Agent, the Sale Proceeds for an In-Scope Sale shall be transferred by the Escrow Agent, in accordance with the Allocation contained in such Decision and the terms of the relevant escrow agreement, after the relevant Decision has been rendered, without the need for an order from any of the Courts.

**Section 8.14**        *Section 7.12* [Except as expressly provided for in any agreement of the relevant parties, neither this Protocol nor any Decision of the Panel shall preclude any Participating Party from asserting any legally cognizable claim or defense against any other Participating Party pursuant to the applicable claims procedure approved by the applicable Court by or on behalf of any Participating Party against any other Participating Party.]**[29]**

---

**[29] OR/G: Delete this section because claims against an estate should be asserted in the applicable claims resolution procedure and not under the Protocol.  HS also requests deletion of this section.**

## ARTICLE IX~~ARTICLE VIII~~
## CONFIDENTIALITY

**Section 9.1**        ~~*Section 8.1*~~ Except as may be required by applicable law or court order or by an authority having appropriate jurisdiction, each Party agrees (i) to maintain confidentiality as to all aspects of these procedures, including, without limitation, any Information (as defined below), the presentation of any issue to the Panel, any discussions, deliberations or proceedings of the dispute resolution procedure set forth in this Protocol, ~~and~~**including without limitation** any Submissions ~~or~~**,** Oral Arguments **or Post-Hearing Submissions** (the "Confidential Material") and (ii) not to use any Confidential Material for its own benefit or the benefit of any of its affiliates, including, without limitation, for the purpose of asserting or proving a Claim (as defined in Section 101(5) of the Bankruptcy Code) against any Debtor in any of the Proceedings, it being understood that the Parties may disclose the existence and nature of this Protocol and the dispute resolution procedure conducted hereunder as may be necessary to (x) satisfy any Condition (as defined below) or (y) comply with the applicable laws, including, without limitation, the U.S. federal or state securities laws or any Canadian federal, provincial or territorial securities laws, and it being further understood that the Parties may disclose any Decision or Supplementary Decision by the Panel.  As used in this Section 8.1, "Information" means any and all documents and information obtained by or on behalf of a Party from another Party or Nortel Group entity pursuant to this Protocol, including, without limitation, documents and information made available in the Data Room, Witness Statements, Written Submissions, responses given by Employees in interviews pursuant to Section 5.3, ~~responses to Questionnaires served pursuant to Section 5.5,~~ Examination Testimony and oral testimony given in any Evidentiary Hearing (but excluding any Decision or Supplementary Decision).

**Section 9.2**        ~~*Section 8.2*~~ In the event that a Party is served with or otherwise subject to legal process (including subpoena or discovery notice) requiring it to testify about, to produce, or otherwise to divulge Confidential Material, to the extent permitted by applicable law such Party will as soon as practicable inform the provider(s) of such Confidential Material so that the provider may seek a protective order or other remedy.  In the event that such protective order or other remedy has not been obtained and such entity is advised, in the opinion of counsel, that it is legally compelled to disclose any of the Confidential Material, such Party may disclose only such Confidential Material so advised to be disclosed.

**Section 9.3**        ~~*Section 8.3*~~ The Parties further agree that prior to the appointment of any individual to the Panel or appointment as an Expert by any Party, such individual shall agree in writing to preserve the confidentiality of the dispute resolution procedure conducted under this Protocol and all Confidential Material obtained hereunder.

**Section 9.4**        ~~*Section 8.4*~~ Nothing herein shall prevent any Party from disclosing information regarding the dispute resolution procedure conducted under ~~Section 9.4 of~~ this Protocol or all Confidential Material obtained hereunder for purposes of ~~proceedings to resolve any disputes arising from, relating to or in connection for purposes of all~~**any** legal proceedings **brought in accordance with Section 10.4 to resolve any dispute** arising from, relating to or in connection with the enforcement or implementation of this Protocol, including, without

limitation, any matters relating to enforcement or otherwise of any Decision or Supplementary Decision.

**Section 9.5    [HS: On the entering into of an appropriate confidentiality agreement, the Parties agree that representatives of the Parties' creditors may attend all proceedings relating to this Protocol, including, but not limited to, Administrative Meetings, Evidentiary Hearings and Oral Arguments. Notwithstanding this, if any Party is of the view that a certain subject matter requires further confidentiality restrictions, they may petition the Panel for that proceeding or part of it to be held in camera.]**

**Section 9.6    [HS: The Parties agree that the Parties may disclose the terms, existence and nature of this Protocol to their creditors.]**

**ARTICLE X~~ARTICLE IX~~**
**MISCELLANEOUS**

**Section 10.1**    ~~Section 9.1~~ In all matters not expressly provided for in this Protocol, the Panel and the Parties shall act in the spirit of this Protocol and shall make every reasonable effort to ensure that any Allocation pursuant to this Protocol will be legally enforceable.

**Section 10.2**    ~~Section 9.2~~ All notices, requests, instructions, directions and other communications provided for herein shall be made in writing (including by facsimile) delivered to the intended recipient as follows:

**If to the US Debtors:**
c/o Nortel Networks Inc.
Attention: John Ray
Address: 2221 Lakeside Boulevard
       Richardson, Texas 75082
       U.S.A.
Facsimile No.:  [  ]
Telephone No.:  [+1 312 259 7627]

**With a copy to:**
Cleary Gottlieb Steen & Hamilton LLP
Attention:  James L.  Bromley, Esq.
Address:  One Liberty Plaza
       New York, New York 10006
       U.S.A.
Facsimile No.:  +1 212 225 3999
Telephone No.:  +1 212 225 2163

**If to the Canadian Debtors:**
c/o Nortel Networks Limited
Attention:  Anna Ventresca, Esq.
     Chief Legal Officer
Address: 5945 Airport Road, Suite 360
       Mississauga, Ontario L4V 1R9
       Canada
Facsimile No.:  +1 905 863 2075
Telephone No.:  +1 905 863 1204

**With a copy to:**
Ogilvy Renault LLP
Attention:  Derrick Tay, Esq. and Michael J. Lang, Esq.
Address:  Suite 3800
       Royal Bank Plaza, South Tower
       200 Bay Street, P.O.  Box 84
       Toronto, Ontario M5J 2Z4
       Canada
Facsimile No.:  +1 416 216 4832 / 216 3930
Telephone No.:  +1 416 216 4832 / 216 3939

**If to the EMEA Debtors:**
c/o Ernst & Young LLP

**With a copy to:**
Herbert Smith LLP

| | |
|---|---|
| Attention:  Alan Bloom<br>Address:  One More London Place<br>      London SE1 2AF<br>      United Kingdom<br>Facsimile No.:  +44 (0) 20 7951 1345<br>Telephone No.:  +44 (0) 20 7951 9898 | Attention:  Stephen Gale, Esq. and Kevin Lloyd, Esq.<br>Address:  Exchange House<br>      Primrose Street<br>      London EC2A 2HS<br>      United Kingdom<br>Facsimile No.:  +44 (0) 20 7098 4878<br>Telephone No.:  +44 (0) 20 7466 ~~2878~~**2271** |

**If to the Monitor:**
c/o Ernst & Young, Inc.
Attention:  Murray A. McDonald
Address:  Ernst & Young Tower
      222 Bay Street, P.O.  Box 251
      Toronto, ON M5K 1J7
      Canada
Facsimile No.:  +1 416 943 3300
Telephone No.:  +1 416 943 3016

**With a copy to:**
Goodmans LLP
Attention:  Jay Carfagnini, Esq.
Address:  250 Yonge Street, Suite 2400
      Toronto, Ontario M5B 2M6
      Canada
Facsimile No.:  +1 416 979 1234
Telephone No.:  +1 416 597 4107

**If to the Creditors' Committee:**
c/o Akin Gump Strauss Hauer & Feld LLP
Attention:  Fred S.  Hodara, Esq.
      David H. Botter, Esq.
Address:  One Bryant Park
      New York, New York 10036
      U.S.A.
Facsimile No.:  +1 212 872 1002
Telephone No.:  +1 212 872 8040

**If to the Bondholders' Committee:**
c/o Milbank, Tweed, Hadley & McCloy LLP
Attention: Albert A.  Pisa, Esq.
Address:  One Chase Manhattan Plaza
      New York, New York 10005-1413
      U.S.A.
Facsimile No.:  +1 212 530 5219
Telephone No.:  +1 212 530 5319

All notices, requests, instructions, directions and other communications to be sent under this Protocol to the Non-Filed Affiliates shall be made in writing (including by facsimile) and delivered to the contact addresses or facsimile numbers set forth in Schedule 4 hereto.

*Section 10.3*    ~~*Section 9.3* This~~**The terms of this** Protocol shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction, except to the extent that the United States Federal Arbitration Act applies, provided that Section ~~9.7~~**10.7** shall be governed exclusively by English law.  **[HS: For the avoidance of doubt, the Parties do not agree that the underlying issues and the subject of the dispute are governed by New York law, and the Panel will determine the relevant laws pertaining to such issues.]**

*Section 10.4*    ~~*Section 9.4*~~To the fullest extent permitted by applicable law, each Party (i) agrees to submit to the exclusive jurisdiction of the **[**US Court and the Canadian Court (in a joint hearing conducted under the cross-border protocol adopted by such courts, as it may be in effect from time to time (the "Cross-Border Protocol"))**][HS: delete and add: federal and state courts sitting in New York County, State of New York]**, for purposes of all legal proceedings

arising from, relating to or in connection with the enforcement or implementation of this Protocol, including, without limitation, any matters relating to enforcement or otherwise of any Decision or Supplementary Decision, (ii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such action brought in such courts or any claim that any such action brought in such courts has been brought in an inconvenient forum, (iii) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by law shall be valid and sufficient service thereof, and (iv) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law, <u>provided</u> that any claim, action or proceeding set forth in Section ~~9.6 of this Protocol~~**10.8** shall be brought exclusively in the English courts.

**_Section 10.5_**    ~~_Section 9.5_~~ Each Party set forth on <u>Schedule 6</u>~~¹²~~**³⁰** (each such party, "<u>Designating Party</u>") has appointed ● as its authorized agent (the "<u>Process Agent</u>"), upon whom process may be served in any legal proceeding arising from, relating to or in connection with the enforcement or implementation of this Protocol.  Each Designating Party consents to process being served in any legal proceeding arising from, relating to or in connection with the enforcement or implementation of this Protocol by mailing a copy thereof by registered or certified mail to the Process Agent.  Each Designating Party hereby represents and warrants that the Process Agent has accepted such appointment and has agreed to act as said agent for service of process, and each Designating Party agrees to take any and all action, including the filing of any and all documents that may be necessary to continue such appointment in full force and effect as aforesaid.  Service of process upon the Process Agent shall be deemed, in every respect, effective service of process upon the relevant Designating Party.

**_Section 10.6_**    ~~_Section 9.6_~~ No provision of this Protocol (other than as set forth in Sections [9.2, 9.3, 9.4, 9.6, 9.7, 9.10, 9.11, 9.15, 9.17 and 9.18]~~of this Protocol~~) shall be effective until the satisfaction of the following conditions:  (A) each of the US Court~~,~~ **and** the Canadian Court ~~and the UK Court~~ approve the entirety of this Protocol and all of the provisions hereof ~~(the "Conditions").~~**and (B) the Joint Administrators apply to the UK Court and receive a direction from the UK Court that they are at liberty to enter into this Protocol [and it approves the entirety of this Protocol and all of the provisions hereof] (the "Conditions").³¹**

**_Section 10.7_**    ~~_Section 9.7_~~ [Nothing contained in any Transaction Document, including without limitation any intellectual property license termination agreements, shall be with prejudice to (A) any right, entitlement or claim by or on behalf of NNL or any affiliate or subsidiary which licensed any intellectual property from NNL (each a "<u>Nortel Licensee</u>") to assert solely as (x) between NNL and any such Nortel Licensee or (y) between two or more Nortel Licensees any ownership or proprietary interest in and to the intellectual property subject to the intellectual property licenses, whether in respect of or pursuant to that certain Master Research and Development Agreement, dated as of December 22, 2004 (as amended and

---

~~¹²~~**³⁰** Non-Filed Affiliates + EMEA Non-Filed entities.  TBD – whether EMEA Debtors should be included in this list.

**³¹ Section revised by HS.**

supplemented from time to time, the "Master R&D Agreement"), or otherwise, for the purpose of advocating such position in connection with an allocation of the Sale Proceeds resulting from the sale, license or other disposition of the intellectual property in an In-Scope Sale, or (B) the right, entitlement or claim by or on behalf of NNL or any Nortel Licensee to dispute and defend any such assertions in connection with an allocation of Sale Proceeds from an In-Scope Sale; and].]**32**

**Section 10.8**        *Section 9.8* The Parties agree that the Joint Administrators have negotiated and are entering into this Protocol as agents for the EMEA Debtors to which they are appointed and that none of the Joint Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Nortel Group company to observe, perform or comply with any of its obligations under this Protocol or under or in relation to any associated arrangements or negotiations.  The Joint Administrators are a Party to this Protocol:  (i) as agents of certain of the respective EMEA Debtors of which they are administrators; and (ii) in their own capacities solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the United Kingdom Insolvency Act 1986 and enforcing the obligations of certain other Parties to this Protocol.  Notwithstanding anything to the contrary in this Protocol, any claim, action or proceeding against the Joint Administrators in their personal capacities (and not as agents for any EMEA Debtors) under this Protocol shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English courts.[14][33]

**Section 10.9**        *Section 9.9* The Parties agree that the Joint Israeli Administrators have negotiated and are entering into this Agreement as agents for the Israeli Company and that none of the Joint Israeli Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Nortel Group company to observe, perform or comply with any of its obligations under this Protocol or under or in relation to any associated arrangements or negotiations.  The Joint Israeli Administrators are a party to this Protocol:  (i) as agents of the Israeli Company; and (ii) in their own capacities solely for (a) obtaining the benefit of any provisions of this Protocol expressed to be conferred on them and (b) enforcing the obligations of the other Parties to this Protocol.  Notwithstanding anything to the contrary in this Protocol, any claim, action or proceeding against the Joint Israeli Administrators arising from or related to the personal liability of the Joint Israeli Administrators, their firm, partners, employees, advisers, representatives or agents, (and not as agents for any Israeli Company) under this Agreement shall be governed exclusively by Israeli law and subject to the exclusive jurisdiction of the Courts**courts** of Israel.

**Section 10.10**        *Section 9.10* Except as specifically set forth in this Protocol, this Protocol is not intended to, and shall not, create rights in any person or entity not a Party hereto.

---

[13] To be discussed**32 OR/G: Delete as it is beyond the scope of the Protocol and intrudes on the jurisdiction of the applicable claims resolution procedures**.

[14][33] UK counsel to advice whether we need language delegating authority from NNSA to the Joint Administrators.

**Section 10.11**    ~~Section 9.11~~ Other parties may be added to this Protocol only with the prior unanimous written consent of all Parties hereto, which consent shall not be unreasonably withheld.

**Section 10.12**    ~~Section 9.12~~ This Protocol may be executed in separate counterparts (which may include counterparts delivered by facsimile transmission) and all of said counterparts taken together shall be deemed to be an original, shall be binding on the Party who signed the counterpart and together shall constitute a single agreement.

**Section 10.13**    ~~Section 9.13~~ This Protocol constitutes the complete agreement among the Parties with respect to the subject matter herein, and supersedes all other agreements among some or all of the Parties with respect to the subject matter herein.  This Protocol may be amended, on no less than 10 Business Days' notice, only by means of a writing signed by all the remaining Parties to this Protocol, which amendments, if material in the judgment of the Parties, must be approved by each of the Courts.

**Section 10.14**    ~~Section 9.14~~ This Protocol does not affect the confidentiality of any information exchanged between or among any of the Parties pursuant to any prior agreements or understandings.

**Section 10.15**    ~~Section 9.15~~ This Protocol shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns from the date of its execution, but is expressly subject to and contingent upon its approval and entry by the Courts.

**Section 10.16**    ~~Section 9.16~~ Each Party to this Protocol shall (a) use commercially reasonable efforts to satisfy the Conditions as soon as possible, taking into account the availability of the respective Courts to address the matters set forth in this Protocol; (b) keep all other Parties reasonably apprised of the progress of the satisfaction of the Conditions and provide such other information regarding the satisfaction of the Conditions as reasonably requested by other Parties; and (c) use commercially reasonable efforts to allow any other Party, which so requests in writing, reasonable participation in connection with any proceedings in any Court related to the satisfaction of the Conditions.

**Section 10.17**    ~~Section 9.17~~ Subject to satisfaction of the Conditions, each Party (but, for the avoidance of doubt, not the Joint Administrators in their personal capacities) hereby severally represents and warrants to each other that, as of the date hereof:  (a) such Party has the power and authority to enter into this Protocol and to carry out its obligations hereunder; (b) the execution of this Protocol, and the consummation of the transactions contemplated herein, have been authorized by all necessary approvals, and no other act or proceeding on its part is necessary to authorize the execution of this Protocol; and (c) this Protocol has been duly executed by such Party and constitutes the legal, valid and binding obligations of such Party.

**Section 10.18**    ~~Section 9.18~~ In the event that any provision of this Protocol shall be illegal, invalid or unenforceable, such provision shall be construed by limiting it in such a way so as to render it legal, valid and enforceable to the maximum extent provided by applicable law, and the legality, validity and enforceability of the remaining provisions shall not in any way be affected or impaired by any illegality, invalidity or unenforceability of any provision.  The

Parties shall negotiate in good faith with respect to any provision to this Protocol found to be illegal, invalid or unenforceable, in order to agree on a substitute provision giving effect, to the maximum extent possible, to the original intent of such provision.  [Notwithstanding anything to the contrary in this Section, in the event that all or any part of Section(s) ● of this Protocol shall be found pursuant to a final order of a court or tribunal with competent jurisdiction to be illegal, invalid or unenforceable, or any part of Section(s) ● is any way struck down or modified without the consent of the Parties, this Protocol in its entirety shall automatically terminate and shall cease to have any force and effect.]³⁴

*Section 10.19*    *Section 9.19* Except as specifically set forth in this Protocol, the obligations of each Party hereunder are several, and not joint and several.

*Section 10.20*    *Section 9.20* If any of the Parties, the Experts, the Affiliates' Representative or the Panel shall have an obligation or deadline imposed pursuant to this Protocol that shall fall on any of a Saturday, Sunday or a national public holiday in any of the United States, Canada or the United Kingdom, such Party, Expert or the Panel shall have until the next Business Day immediately following such day to comply with such deadline or obligation.

*Section 10.21*    *Section 9.21* The Parties agree that, if after the date hereof, any subsidiary of any US Debtor commences chapter 11 proceedings in the US Court, then the Parties and such entity shall enter into an accession agreement whereby such entity shall accede to this Protocol as a US Debtor.

*Section 10.22*    *Section 9.22* The Non-Filed Affiliates hereby appoint [●] as the Affiliates' Representative and grant the Affiliates' Representative the authority to represent each Non-Filed Affiliate in all matters relating to this Protocol, including, without limitation, the power (a) to agree to any Partial Allocation Amount on behalf of the Non-Filed Affiliates, (b) to agree to a [fair and equitable] allocation of the Sale Proceeds pursuant to Section 1.1 or otherwise, (c) to amend or waive any provision of this Protocol, (d) to deliver and receive any notices permitted or required under this Protocol, and (e) to perform on behalf of the Non-Filed Affiliates any other act which the Affiliates' Representative deems necessary or desirable in the performance of the Affiliates' Representative's role under this Protocol.  Any action taken by the Affiliates' Representative and any agreement or settlement entered into by the Affiliates' Representative on behalf of the Non-Filed Affiliates in connection with the performance of this Protocol shall be binding upon and enforceable against the Non-Filed Affiliates without any need for further ratification by the Non-Filed Affiliates.  In addition, the Non-Filed Affiliates hereby grant the Affiliates' Representative the authority to select and retain one counsel and financial advisor to assist the Affiliates' Representative in connection with any proceedings or matters under this Protocol.

---

³⁴ OR/G: Is this provision intended to apply retroactively?  HS: Which provisions are intended to be non-severable?

IN WITNESS WHEREOF, the Parties hereto have caused this Protocol to be duly executed and delivered as of this **[●]**th day of **[●]**.

NORTEL NETWORKS CORPORATION


By _____
    Name:
    Title:


NORTEL NETWORKS LIMITED


By _____
    Name:
    Title:


NORTEL NETWORKS GLOBAL CORPORATION


By _____
    Name:
    Title:


NORTEL NETWORKS INTERNATIONAL CORPORATION


By _____
    Name:
    Title:


NORTEL NETWORKS TECHNOLOGY CORPORATION


By _____
    Name:
    Title:

**Signature page to Protocol**

NORTEL NETWORKS INC.


By _____
    Name:
    Title:


ARCHITEL SYSTEMS (U.S.)
CORPORATION


By _____
    Name:
    Title:


CORETEK, INC.


By _____
    Name:
    Title:


NORTEL ALTSYSTEMS, INC.


By _____
    Name:
    Title:


NORTEL ALTSYSTEMS
INTERNATIONAL INC.


By _____
    Name:
    Title:


NORTEL NETWORKS APPLICATIONS
MANAGEMENT SOLUTIONS INC.


By _____
    Name:
    Title:


**Signature page to Protocol**

NORTEL NETWORKS CABLE
SOLUTIONS INC.


By _____
      Name:
      Title:


NORTEL NETWORKS CAPITAL
CORPORATION


By _____
      Name:
      Title:


NORTEL NETWORKS HPOCS INC.


By _____
      Name:
      Title:


NORTEL NETWORKS
INTERNATIONAL INC.


By _____
      Name:
      Title:


NORTEL NETWORKS OPTICAL
COMPONENTS INC.


By _____
      Name:
      Title:


**Signature page to Protocol**

NORTHERN TELECOM
INTERNATIONAL INC.


By _____
    Name:
    Title:


QTERA CORPORATION


By _____
    Name:
    Title:


SONOMA SYSTEMS


By _____
    Name:
    Title:


XROS, INC.


By _____
    Name:
    Title:


NORTEL NETWORKS (CALA) INC.


By _____
    Name:
    Title:


**Signature page to Protocol**

Signed by ALAN BLOOM on behalf of each of the Joint Administrators of each of the EMEA Debtors over which they have been appointed, without personal liability as provided in Section 9.4 of this Protocol and solely for the purpose of obtaining the benefit of the provisions of this Protocol expressed to be conferred on or given to each of the Joint Administrators

By _____

    Name:
    Title:

in the presence of:

Witness Signature

_____

    Name:
    Address:


| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL NETWORK UK LIMITED (IN ADMINISTRATION)** by **ALAN BLOOM** as Joint Administrator (acting as agent and without personal liability) in the presence of: | ) ) ) ) ) ) | **ALAN BLOOM** |

Witness signature:


Name:
Address:

**Signature page to Protocol**

| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL NETWORKS (IRELAND) LIMITED (IN ADMINISTRATION)** by **ALAN BLOOM** as Joint Administrator (acting as agent and without personal liability) in the presence of: | ) ) ) ) ) ) | **ALAN BLOOM** |

Witness signature:


Name:
Address:


| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL NETWORKS NV (IN ADMINISTRATION)** by **ALAN BLOOM** as Joint Administrator (acting as agent and without personal liability) in the presence of: | ) ) ) ) ) ) | **ALAN BLOOM** |

Witness signature:


Name:
Address:



| | | |
|---|---|---|
| **SIGNED** for and on behalf of **NORTEL NETWORKS SPA (IN ADMINISTRATION)** by **ALAN BLOOM** as Joint Administrator (acting as agent and without personal liability) in the presence of: | ) ) ) ) ) ) | **ALAN BLOOM** |

Witness signature:


Name:
Address:


**Signature page to Protocol**

**SIGNED** for and on behalf of **NORTEL**   )
**NETWORKS BV (IN**   )      **ALAN BLOOM**
**ADMINISTRATION)**   )
by **ALAN BLOOM** as Joint Administrator   )
(acting as agent and without personal   )
liability) in the presence of:   )

Witness signature:

Name:
Address:

**SIGNED** for and on behalf of **NORTEL**   )
**NETWORKS POLSKA SP Z.O.O. (IN**   )      **ALAN BLOOM**
**ADMINISTRATION)**   )
by **ALAN BLOOM** as Joint Administrator   )
(acting as agent and without personal   )
liability) in the presence of:   )

Witness signature:

Name:
Address:

**SIGNED** for and on behalf of **NORTEL**   )
**NETWORKS HISPANIA SA (IN**   )      **ALAN BLOOM**
**ADMINISTRATION)**   )
by **ALAN BLOOM** as Joint Administrator   )
(acting as agent and without personal   )
liability) in the presence of:   )

Witness signature:

Name:
Address:

**SIGNED** for and on behalf of **NORTEL** )
**NETWORKS (AUSTRIA) GMBH (IN** )          **ALAN BLOOM**
**ADMINISTRATION)** )
by **ALAN BLOOM** as Joint Administrator )
(acting as agent and without personal )
liability) in the presence of: )

Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL** )
**NETWORKS SRO (IN** )          **ALAN BLOOM**
**ADMINISTRATION)** )
by **ALAN BLOOM** as Joint Administrator )
(acting as agent and without personal )
liability) in the presence of: )

Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL** )
**NETWORKS ENGINEERING** )
**SERVICES KFT (IN** )          **ALAN BLOOM**
**ADMINISTRATION)** )
by **ALAN BLOOM** as Joint Administrator )
(acting as agent and without personal )
liability) in the presence of: )

Witness signature:


Name:
Address:


**Signature page to Protocol**

**SIGNED** for and on behalf of **NORTEL**    )
**NETWORKS PORTUGAL SA (IN**    )    **ALAN BLOOM**
**ADMINISTRATION)**    )
by **ALAN BLOOM** as Joint Administrator    )
(acting as agent and without personal    )
liability) in the presence of:    )

Witness signature:

Name:
Address:

**SIGNED** for and on behalf of **NORTEL**    )
**NETWORKS SLOVENSKO SRO (IN**    )    **ALAN BLOOM**
**ADMINISTRATION)**    )
by **ALAN BLOOM** as Joint Administrator    )
(acting as agent and without personal    )
liability) in the presence of:    )

Witness signature:

Name:
Address:

**SIGNED** for and on behalf of **NORTEL**    )
**NETWORKS ROMANIA SRL (IN**    )    **ALAN BLOOM**
**ADMINISTRATION)**    )
by **ALAN BLOOM** as Joint Administrator    )
(acting as agent and without personal    )
liability) in the presence of:    )

Witness signature:

Name:
Address:

**Signature page to Protocol**

SIGNED for and on behalf of **NORTEL** )
**GMBH (IN ADMINISTRATION)** )  **ALAN BLOOM**
by **ALAN BLOOM** as Joint Administrator )
(acting as agent and without personal )
liability) in the presence of: )


Witness signature:


Name:
Address:


SIGNED for and on behalf of **NORTEL** )
**NETWORKS OY (IN** )  **ALAN BLOOM**
**ADMINISTRATION)** )
by **ALAN BLOOM** as Joint Administrator )
(acting as agent and without personal )
liability) in the presence of: )


Witness signature:


Name:
Address:


SIGNED for and on behalf of **NORTEL** )
**NETWORKS AB (IN** )  **ALAN BLOOM**
**ADMINISTRATION)** )
by **ALAN BLOOM** as Joint Administrator )
(acting as agent and without personal )
liability) in the presence of: )


Witness signature:


Name:
Address:


**Signature page to Protocol**

**SIGNED** for and on behalf of **NORTEL**   )
**NETWORKS INTERNATIONAL**   )   **ALAN BLOOM**
**FINANCE AND HOLDING BV (IN**   )
**ADMINISTRATION)**   )
by **ALAN BLOOM** as Joint Administrator   )
(acting as agent and without personal   )
liability) in the presence of:   )

Witness signature:


Name:
Address:


**SIGNED** for and on behalf of **NORTEL**   )
**NETWORKS FRANCE S.A.S.  (IN**   )   **ALAN BLOOM**
**ADMINISTRATION)**   )
by **ALAN BLOOM** as Joint Administrator   )
(acting as agent and without personal   )
liability) in the presence of:   )

Witness signature:


Name:
Address:

**Signature page to Protocol**

**[NOTE: Additional signature blocks to be added for NNSA, the Monitor, the Creditors' Committee, the Bondholders' Committee, the Non-Filed Affiliates]**

**SCHEDULE 1**

**Canadian Debtors**

Nortel Networks Corporation

Nortel Networks Limited

Nortel Networks Global Corporation

Nortel Networks International Corporation

Nortel Networks Technology Corporation

**SCHEDULE 2**

**US Debtors**

Nortel Networks Inc.

Architel Systems (U.S.) Corporation

CoreTek, Inc.

Nortel Altsystems, Inc.  (previously "Alteon WebSystems, Inc.")

Nortel Altsystems International Inc.  (previously "Alteon WebSystems International, Inc.")

Nortel Networks Applications Management Solutions Inc.

Nortel Networks Cable Solutions Inc.

Nortel Networks Capital Corporation

Nortel Networks HPOCS Inc.

Nortel Networks International Inc.

Nortel Networks Optical Components Inc.

Northern Telecom International Inc.

Qtera Corporation

Sonoma Systems

Xros, Inc.

Nortel Networks (Cala), Inc.

**SCHEDULE 3**

**EMEA Debtors**

Nortel Networks UK Limited (In Administration)

Nortel Networks (Ireland) Limited (In Administration)

Nortel Networks NV (In Administration)

Nortel Networks SpA (In Administration)

Nortel Networks BV (In Administration)

Nortel Networks Polska Sp z.o.o.  (In Administration)

Nortel Networks Hispania, SA (In Administration)

Nortel Networks (Austria) GmbH (In Administration)

Nortel Networks sro (In Administration)

Nortel Networks Engineering Services Kft (In Administration)

Nortel Networks Portugal SA (In Administration)

Nortel Networks Slovensko, sro (In Administration)

Nortel Networks Romania Srl (In Administration)

Nortel GmbH (In Administration)

Nortel Networks Oy (In Administration)

Nortel Networks AB (In Administration)

Nortel Networks International Finance & Holding BV (In Administration)

Nortel Networks France S.A.S.  (In Administration)

Nortel Networks Israel (Sales and Marketing) Limited (In Administration)

**SCHEDULE 4**

**Names of Non-Filed Affiliates**

**and Notice Information**

**SCHEDULE 5**

**List of In-Scope Sales**

**SCHEDULE 6**

**Names of Respective Participating Parties**

**for each Party**

**SCHEDULE 7**

**List of Transaction Documents**