16

(f) The Purchaser and/or any Polish Purchaser Party shall reasonably cooperate with the EMEA Sellers to obtain any certificate, ruling or other documentation or other written evidence referred to in Section 6.10(e) above (including but not limited to (i) submitting or filing a request or application prepared by the EMEA Sellers and/or being included as an addressee of any certificate, ruling or other documentation or other written evidence, and (ii) on request by the EMEA Sellers, using good faith efforts to agree to the form and content of any request or application for any certificate, ruling or other documentation or other written evidence in advance of such request or application being made; provided, for the avoidance of doubt, that agreeing to the form and content of any such request or application shall not compromise or foreclose the Purchaser's or any Polish Purchaser Party's rights under Section 6.10(e) to approve the form and content of the certificate, ruling, other documentation or other evidence actually received from a Tax Authority)."

19.   A new Section 2.2.8 is hereby added and shall read as follows:

"**2.2.8 Post-Closing Transfers of Assets in Colombia.** In the event that additional tangible Assets of Nortel Colombia which are not otherwise transferred as of the Closing are identified and transferred to Ciena Colombia post-Closing in accordance with the terms of this Agreement (the "**Additional Colombian Assets**"), (i) the Purchaser shall cause Ciena Colombia to pay to Nortel Colombia in COP, the net book value of the Additional Colombian Assets (the "**Additional Colombian Payment**") as expressed in the invoice issued by Nortel Colombia in connection therewith and (ii) prior to such payment, the Sellers (other than Nortel Colombia) shall reimburse the Purchaser for the Additional Colombian Payment and any associated transaction fees or expenses (including Transfer Taxes); provided, however, that the Sellers shall not reimburse the Purchaser for any fees or expenses for which the Purchaser would have borne responsibility under the terms of the Agreement had the Additional Colombian Assets been transferred to Ciena Colombia on the Closing Date, except to the extent such fees or expenses exceed the amounts for which the Purchaser would have been liable had the Additional Colombian Assets been transferred to Ciena Colombia on the Closing Date and provided further, however, that the Sellers shall not reimburse the Purchaser for any legal fees and expenses.

20.   Section 2.3.1 of the Agreement is hereby deleted and replaced with:

"**2.3.1. Closing Date.** The completion of the purchase and sale of the Assets and the assumption of the Assumed Liabilities (the "**Closing**") shall occur simultaneously with closing of the transaction contemplated by the EMEA Asset Sale Agreement and shall take place at the offices of Ogilvy Renault LLP in Toronto, Canada commencing at 9:00 a.m. local time on the date which is the later of (i) March 19, 2010, (ii) the date that is the earlier of (x) the Service Readiness Date and (y) May 7, 2010, and (iii) five (5) Business Days after the day upon which all of the conditions set forth under Article IX (other than conditions to be satisfied at the Closing, but subject to the waiver or fulfillment of those

conditions) have been satisfied or, if permissible, waived by the Main Sellers and/or the Purchaser (as applicable), or on such other place, date and time as shall be mutually agreed upon in writing by the Purchaser and the Main Sellers (the day on which the Closing takes place being the "**Closing Date**").

Legal title, equitable title and risk of loss with respect to the Assets will transfer to the Purchaser or the relevant Designated Purchaser, and the Assumed Liabilities will be assumed by the Purchaser and the relevant Designated Purchasers simultaneously in all jurisdictions at such time as the Closing actually occurs. For the avoidance of doubt, (i) all Transferred Employees shall transfer at the Employee Transfer Date and (ii) for the purposes of calculating the Net Working Capital Transferred as of the Closing Date, all components thereof shall be determined as of 11:59 p.m. local time on the Closing Date in each applicable jurisdiction."

21.     Section 2.3.2(b) is hereby deleted and replaced with:

"(b)  the Purchaser shall deliver or cause to be delivered (i) to the Distribution Agent, an amount in cash equal to the Base Cash Purchase Price (as adjusted in accordance with Sections 2.2.2 and 2.2.3) less the sum of (A) the Escrow Amount and (B) one hundred and seventeen thousand dollars ($117,000) (in respect of the Colombia Allocation), by wire transfer in immediately available funds to an account or accounts designated at least two (2) Business Days prior to the Closing Date by the Distribution Agent in a written notice to the Purchaser, (ii) to the Escrow Agent, an amount equal to the Escrow Amount to be held and disbursed in accordance with the Escrow Agreement, this Agreement and the Carling Property Lease Agreements, and (iii) as directed by the Sellers, the amount owing pursuant to Section 4(a)(ii) of the Transition Services Agreement;"

22.     A new Section 2.3.2.1 is hereby added and shall read as follows:

"**2.3.2.1 Post-Closing Purchase Price Payments.** No later than Friday, March 26, 2010, Ciena Colombia shall deliver to Nortel Colombia an amount equal to the Colombia Allocation by wire transfer of COP to an account in immediately available funds to an account designated prior to the Closing Date by the Sellers to the Purchaser."

23.     The following is hereby added to the end of Section 5.34 of the Agreement:

"To the extent that, prior to the Closing Date, the Sellers have not completed their work under this Section 5.34 and to the extent that the Purchaser has notified the Sellers in writing prior to the Closing Date of a material defect in title of any of the Transferred Patents, and to the extent that the Purchaser has allowed the Sellers to retain the necessary documentation and have access to the necessary Transferred Employees to correct the defect, the Sellers shall, as soon as reasonably practicable and in any event within thirty (30) days after the Closing Date, take, at their sole cost and expense, all reasonable steps requested by the Purchaser in order to correct all material defects in title as specified by the

18

Purchaser in writing prior to the Closing Date and affecting any of the Transferred Patents, including without limitation, making any filings with any relevant government registry or patent office, as applicable."

24.     A new Section 5.38 is hereby added and shall read as follows:

"**SECTION 5.38.  Patent Segmentation.**  The Sellers agree to review, within 90 days of the Closing Date, the Sellers' patent applications with a priority filing date after October 16, 2009 and prior to the Closing Date to determine whether they (or the inventions they claim) were predominantly used in the Business as of the Closing Date; it being understood that in making such determination, the Sellers will act in good faith, using the same standard and substantially similar evaluation mechanism as was applied by the Sellers prior to the Closing Date to determine which patents should be assigned to the Purchaser and to the purchasers of other business units of the Sellers and which patents should be retained by the Sellers because they were not predominantly used by the Business or any other business unit of the Sellers.  The Purchaser will have the right to have Gord Mein and Jean-Pierre Fortin participate in such review, including the right to review all such patent applications which may be relevant and the right to make recommendations concerning which of such patent applications (or inventions claimed by such applications) were predominantly used in the Business as of the Closing Date.  However, the final determination of whether any of such reviewed patent applications are predominantly used in the Business as of the Closing Date will be in the Sellers' discretion in accordance with this Section 5.38; provided, however in the event that the Purchaser disagrees, the Purchaser shall notify the Main Sellers of its disagreement and in the event that they are unable to agree, any dispute shall be resolved in accordance with Section 11.6(b) of the Agreement. The Sellers shall notify the Purchaser in writing not later than 100 days after the Closing Date whether any of such reviewed patent applications were found by the Sellers, based on the foregoing review, to be predominantly used in the Business as of the Closing Date (such predominantly-used patent applications, the "New Assigned Patents").  The Sellers hereby assign all their right, title and interest in the New Assigned Patents to the Purchaser and shall execute, as soon as practicable after delivery of the foregoing notice, any further documentation reasonably requested by the Purchaser to confirm and record such assignment."

25.     A new Section 5.39 is hereby added and shall read as follows:

"**SECTION 5.39.  ReManufacturing Assets and Operations.**  Notwithstanding anything to the contrary contained in this Agreement or any of the Transaction Documents, on or before May 15, 2010, the Purchaser, at its sole expense, shall relocate all of the Owned Equipment located at the premises leased by the Sellers in Research Triangle Park, North Carolina from GEEP (the "ReMan Owned Equipment").  Until such time as the Purchaser relocates the ReMan Owned Equipment, the Sellers shall be permitted to use the ReMan Equipment to provide interoperability and other similar testing for the Sellers' retained businesses and for purchasers of other business units of the Sellers pursuant to agreements that

are similar to the Transition Services Agreement. The Purchaser and the Sellers shall cooperate to ensure that each of Purchaser and Sellers have reasonable access to the ReMan Owned Equipment on a basis that is consistent with past practice."

26.   A new Section 7.4(h) is hereby added and shall read as follows:

"(h)   The Sellers and the Purchaser hereby agree to the following with respect to Transferred Employees who participate as of the Closing Date in Nortel's Global Sales Incentive Compensation Plan (effective January 1, 2010) (the "SIC Plan," and such employees, "Non-EMEA Transferred Sales Employees"):

(i)   The Sellers shall be responsible for paying sums due under the SIC Plan in respect of the Non-EMEA Transferred Sales Employees to the extent accrued prior to and on the Closing Date and shall pay such amounts (and any related employment and withholding Taxes arising out of such payment) on approximately the same date the Sellers pay similarly-situated employees of the Sellers who participate in the SIC Plan. The Purchaser shall, or shall procure that the relevant Designated Purchaser shall, be responsible for paying sums due under the SIC Plan in respect of the Non-EMEA Transferred Sales Employees to the extent accrued after the Closing Date. The Sellers shall calculate the amounts payable by the Purchaser for the period starting the day after the Closing Date to April 30, 2010 (inclusive) in accordance with the applicable terms of Annex B2 to Schedule B of the Transition Services Agreement and shall deliver such calculations to the Purchaser as provided therein. The Purchaser shall, or shall procure that the relevant Designated Purchaser shall, pay such calculated sums (and any related employment and withholding Taxes arising out of such payment) to the Non-EMEA Transferred Sales Employees within 20 Business Days of the receipt of such calculations from the Sellers.

The Sellers and the Purchaser hereby further agree to the following with respect to the Employees with the employee identification numbers set forth on Schedule 7.4(h) attached as Annex A hereto, each of whom participate as of March 1, 2010, in the SIC Plan (such employees being the "Non-Transferred Sales Employees"):

(ii)   The Sellers shall pay to each Non-Transferred Sales Employee the amount of sales compensation relating to the period prior to and including the Closing Date, as determined in accordance with the terms of the SIC Plan and the Sellers' customary practices (the "Pre-Closing Sales Compensation Amount"). Such payment shall be made on approximately the same date the Sellers pay similarly-situated employees of the Sellers who participate in the SIC Plan.

20

   (iii)    The Sellers shall calculate the amount of sales compensation for each Non-Transferred Sales Employee relating to the period from but excluding the Closing Date through March 31, 2010, in accordance with the methodology set out in Annex B2 to Schedule B of the Transition Services Agreement ("Post-Closing Sales Compensation Amount") at such time as the Sellers perform similar calculations for similarly-situated employees of the Sellers who participate in the SIC Plan. Such calculations shall be delivered promptly by Sellers in writing to the Purchaser along with a calculation of the employer tax due on such Post-Closing Sales Compensation Amount ("Employer Tax" and, together with the Post-Closing Sales Compensation Amount, the "Total Post-Closing Payment").

   (iv)    Within ten (10) Business Days of receipt of such calculations with respect to the Total Post-Closing Payment with respect to each Non-Transferred Sales Employee, the Purchaser shall remit to the Sellers the Total Post-Closing Payment with respect to each such Non-Transferred Sales Employee; provided, however, in no event shall Purchaser have any obligation in respect of the Total Post-Closing Payment in excess of $56,000.

   (v)    Following Sellers' receipt of such amounts as set out in paragraph (iv) above, the Sellers shall pay the Post-Closing Sales Compensation Amount, less applicable withholdings, to each Non-Transferred Sales Employee at the end of the next complete payroll period applicable to Sellers' similarly situated employees, and Sellers shall remit to the appropriate Government Entity such sums as may be required to be paid by an employer or deducted or withheld from each such Non-Transferred Sales Employee's Post-Closing Sales Compensation Amount under applicable Law. If a Seller fails to make pay such Post-Closing Sales Compensation Amount to any Non-Transferred Sales Employee by the end of such payroll period, Seller shall remit to the Purchaser within ten (10) Business Days the Total Post-Closing Payment with respect to such Non-Transferred Sales Employee.

   (vi)    The Purchaser shall have the right to review the calculations made by the Sellers with respect to amounts for which the Purchaser or the Designated Purchaser are responsible in accordance with Section 7.4(h)(iii) and (iv) and with respect to amounts for which either the Sellers or the Purchaser are responsible in accordance with Section 7.4(h)(i) (and any supporting information reasonably requested by the Purchaser) and in the event that Purchaser disagrees with the calculations, the Purchaser shall notify the Main Sellers and the Purchaser and the Sellers shall cooperate to resolve any such disagreement."

21

27. Certain Exhibits and Sections of the Sellers Disclosure Schedule are hereby deleted and replaced as more specifically detailed in Annex B hereto.

28. Annex C hereto is hereby added to Schedule B of the Transition Services Agreement.

29. The Intellectual Property License Agreement attached to the Agreement as Exhibit F is hereby deleted and replaced in its entirety with the Intellectual Property License Agreement attached hereto as Annex D hereto.

30. The Trademark License Agreement attached to the Agreement as Exhibit P is hereby deleted and replaced in its entirety with the Trademark License Agreement attached hereto as Annex E hereto.

31. This Amendment No. 5 shall not constitute a modification of any provision, term or condition of the Agreement or any other Transaction Document except solely to the extent and solely for the purposes described herein. Except to the extent that provisions of the Agreement are hereby expressly modified as set forth herein, the Agreement and the other Transaction Documents shall remain unchanged and in full force and effect. By execution of this Amendment No. 5 as set forth on the signature pages hereto, the EMEA Sellers, the Joint Administrators and the Joint Israeli Administrators acknowledge and agree to any revision, amendment or alteration of any Third Party Provision as set forth herein or as set forth in the Agreement, Amendment No. 2 to the Agreement dated as of December 23, 2009 or Amendment No. 4 to the Agreement dated as of March 15, 2010.

32. The recitals to this Amendment No. 5 form an integral part hereof.

33. This Amendment No. 5 may be executed in multiple counterparts (including by facsimile or other electronic means), each of which shall constitute one and the same document.

34. This Amendment No. 5 shall be binding upon the parties hereto and their respective successors and assigns.

35. Any term or provision of this Amendment No. 5 that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

36. This Amendment No. 5 shall be governed by and construed in all respects by the Laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction. Any Action arising out of or relating to this Amendment No. 5 shall be resolved in accordance with Section 11.6 of the Agreement.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties hereto have signed, or caused this Amendment No. 5 to be signed by their respective officers thereunto duly authorized, as of the date first written above.

**NORTEL NETWORKS CORPORATION,**
on its own behalf and on behalf of the Other Sellers listed in Section 11.15(a)(i) of the Sellers Disclosure Schedule

By: _____
Name: Anna Ventresca
Title:  General Counsel-Corporate and Corporate Secretary

By: _____
Name: John Doolittle
Title:  Senior Vice-President, Finance and Corporate Services


**NORTEL NETWORKS LIMITED,**
on its own behalf and on behalf of the Other Sellers listed in Section 11.15(a)(ii) of the Sellers Disclosure Schedule

By: _____
Name: Anna Ventresca
Title:  General Counsel-Corporate and Corporate Secretary

By: _____
Name: John Doolittle
Title:  Senior Vice-President, Finance and Corporate Services


**NORTEL NETWORKS INC.,**
on its own behalf and on behalf of the Other Sellers listed in Section 11.15(a)(iii) of the Sellers Disclosure Schedule

By: _____
Name: Anna Ventresca
Title:  Chief Legal Officer


*[Signature page to Amendment No. 5 to ASA]*

**CIENA CORPORATION**

By: _____

    Name: David M. Rothenstein
    Title:  Senior Vice President, General Counsel
           and Secretary

**Acknowledged and Agreed:**



**SIGNED** for and on behalf of **Nortel Networks**
**UK Limited** (in administration) by Christopher
Hill
as Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)

Christopher Hill

*Ezuhul* (DANIEL EZIEFULA)

**SIGNED** for and on behalf of **Nortel GmbH**
(in administration) by Christopher Hill

as Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)

Christopher Hill

*Ezuhul* (DANIEL EZIEFULA)

**SIGNED** for and on behalf of **Nortel Networks**
**SpA** (in administration) by Christopher Hill

as Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)

Christopher Hill

*Ezuhul* (DANIEL EZIEFULA)

**SIGNED** for and on behalf of **Nortel Networks**
**Hispania S.A.** (in administration) by
Christopher Hill
as Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)

Christopher Hill

*Ezuhul* (DANIEL EZIEFULA)

**SIGNED** for and on behalf of **Nortel Networks**
**B.V.** (in administration) by Christopher Hill

as Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)

Christopher Hill

*Ezuhul* (DANIEL EZIEFULA)

SIGNED for and on behalf of **Nortel Networks**    )
**AB** (in administration) by Christopher Hill    )    ...................................................
    )    Christopher Hill
    )

as Joint Administrator (acting as agent and    )
without personal liability) in the presence of:

*Ebajula* ( DANIEL EZIEFULA)

SIGNED for and on behalf of **Nortel Networks**    )
**N.V.** (in administration) by Christopher Hill    )    ...................................................
    )    Christopher Hill
    )

as Joint Administrator (acting as agent and    )
without personal liability) in the presence of:

*Ebajula* ( DANIEL EZIEFULA)

SIGNED for and on behalf of **Nortel Networks**    )
**(Austria) GmbH** (in administration) by    )    ...................................................
Christopher Hill    )    Christopher Hill
as Joint Administrator (acting as agent and    )
without personal liability) in the presence of:

*Ebajula* ( DANIEL EZIEFULA)

SIGNED for and on behalf of **Nortel Networks**    )
**Portugal S.A.** (in administration) by    )    ...................................................
Christopher Hill    )    Christopher Hill
    )
    )

as Joint Administrator (acting as agent and
without personal liability) in the presence of:

*Ebajula* ( DANIEL EZIEFULA)

SIGNED for and on behalf of **Nortel Networks**    )
**s.r.o.** (in administration) by Christopher Hill    )    ...................................................
    )    Christopher Hill
    )

as Joint Administrator (acting as agent and    )
without personal liability) in the presence of:

*Ebajula* (DANIEL EZIEFULA)

SIGNED for and on behalf of **Nortel Networks**　　)
**Polska Sp. z.o.o.** (in administration) by　　　　)
Christopher Hill　　　　　　　　　　　　　　　)
as Joint Administrator (acting as agent and　　　　)
without personal liability) in the presence of:

.......................................................................
Christopher Hill

(DANIEL EZIEFULA)

**SIGNED** for and on behalf of **Nortel Networks**   )
**France S.A.S.** (in administration) by Kerry   )
Trigg acting as authorised representative for   )
Christopher Hill as Joint Administrator (acting   )
as agent and without personal liability) in the   )
presence of:   )

Kerry Trigg

Witness signature

.......................................................   )
Name:   SHARON PERLMUTTER   )
Address:   )

**⦿ *ERNST & YOUNG* LLP**
**1 More London Place**
**London**
**SE1 2AF**

**SIGNED** outside of the Republic of Ireland for )
and on behalf of **Nortel Networks (Ireland)** )
**Limited** (in administration) by Alan Bloom in )
the presence of: )

.................................................................

Alan Bloom

Location: London

Witness signature

.................................................................  )
Name:      WILMA GRAHAM                    )
Address:                                                        )
     ERNST & YOUNG LLP
     1 More London Place
     London
     SE1 2AF

**SIGNED** by John Freebairn                )
duly authorised for and on behalf of **Nortel**    )    ......................................,
**Networks (Northern Ireland) Limited** in the    )    John Freebairn
presence of:                                )
                                            )


Witness signature

..................................................    )
Name:    Tina McAuley                       )
Address:  10 Knockagh Heights               )
          Carrickfergus  BT38 8QZ

*[Signature page to Amendment No. 5 to ASA]*

SIGNED by  Maria Stanko                )    ..................................................
duly authorised for and on behalf of **o.o.o.**        )    Maria Stanko
**Nortel Networks** in the presence of:        )


Witness signature

..................................................    )
Name:  *Maxim Deyneka*            )
Address:  *Russia, Moscow*        )
*13-70,  Dubninskaya str.*

**SIGNED** by Sharon Rolston )   *Sharon Rolston* .................

duly authorised for and on behalf of **Nortel** )

**Networks AG** in the presence of: )   Sharon Rolston


Witness signature

..............*Ezfula*.................................. )

Name: Daniel Eziefula )

Address: Herbert Smith LLP, Exchange House, )

London, EC2A 2HS

SIGNED for and on behalf of **Nortel Networks**
**Israel (Sales and Marketing) Limited** (in
administration) by Yaron Har-Zvi and Avi D.
Pelossof as Joint Israeli Administrators (acting
jointly and without personal liability) in
connection with the Israeli Assets  and
Liabilities:

)
)
)
)
)
)
)
)
)

.........................................................

Yaron Har-Zvi

.........................................................

Avi D. Pelossof

הנאמן בהקפאת הליכים

הנאמן בהקפאת הליכים

Witness signature

.....................................................

Name:

Address:

)
)
)

הנאמן בהקפאת הליכים

**SIGNED** by Yaron Har-Zvi        )

          )      .................................................................

          )      Yaron Har-Zvi

in his own capacity and on behalf of the Joint     )

Israeli Administrators without personal liability

and solely for the benefit of the provisions of

this Agreement expressed to be conferred on or

given to the Joint Israeli Administrators:

Witness signature

.................................................... )

Name:     )

Address:     )

*[Signature page to Amendment No. 5 to ASA]*

הנאמן בהקפאת הליכים

**SIGNED** by Avi D. Pelossof                                    )
                                                                 )    ...........................................................................
                                                                 )    Avi D. Pelossof

in his own capacity and on behalf of the Joint
Israeli Administrators without personal liability
and solely for the benefit of the provisions of
this Agreement expressed to be conferred on or
given to the Joint Israeli Administrators:

Witness signature

Gilad Grikm                                                      )
Name:   1 Aminadav  St. tel Aviv                                 )
Address:                                                         )

**SIGNED** by Alan Bloom                          )
                                                  )    .................. *[signature]* ..........................
                                                  )    Alan Bloom
in his own capacity and on behalf of the Joint
Administrators without personal liability and
solely for the benefit of the provisions of this
Agreement expressed to be conferred on or
given to the Joint Administrators:


Witness signature

.................. *W. Graham* .........................    )
Name:         *WILMA GRAHAM*                                )
Address:                                                   )

      *ERNST & YOUNG* LLP
      **1 More London Place**
      **London**
      **SE1 2AF**

**APPENDIX "C"**

**[ATTACHED]**

Date: April 13, 2011

To:   Nortel Networks Inc. ("Nortel US")

Nortel Networks UK Limited (in administration) ("NNUK") (acting by its joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (the "Joint Administrators")

Nortel Networks Israel (Sales and Marketing) Ltd. (in administration) ("Nortel Sales and Marketing")

Nortel Communications Holdings (1997) Ltd. (in administration) ("Nortel Communications" and, together with Nortel Sales and Marketing, "Nortel Israel")

### Re: Letter of Agreement

Subject to the satisfaction of all the terms and conditions set forth herein, and for the good and valuable consideration set forth herein, the value of which is hereby acknowledged, the undersigned hereby confirm and agree as follows:

1. Subject to the terms hereof, Nortel US and NNUK (each a "**Participating Party**" and together the "**Participating Parties**") hereby agree to waive any right to payment from Nortel Israel (the "**Waiver**") on account of such parties' claims pursuant to the scheme of arrangement of Nortel Israel's creditors approved by the Tel-Aviv District Court on November 24, 2009 (the "**Scheme of Arrangement**"), and acknowledge and agree that the Assignment (as defined herein), once consummated pursuant to paragraph 5 hereof, shall constitute a full and final payment of Nortel Israel's obligations to the Participating Parties pursuant to the Scheme of Arrangement.

2. All of the obligations of Nortel Israel to the Participating Parties and of the Participating Parties to Nortel Israel which are set forth in Exhibit A remain due and payable and are unaffected by this Agreement. All outstanding invoices between each Participating Party and Nortel Israel, attached hereto as Exhibit B, shall be paid in full no later than April 30, 2011. The Parties hereby acknowledge and agree that no material orders will be placed by or to Nortel Israel subsequent to the date of this Agreement.

3. Nortel Israel waives any right to payment under any invoices relating to services rendered by Nortel Israel in connection with Nortel Networks Eastern Mediterranean Ltd. prior to the date hereof. Nortel Israel shall not provide, and Nortel US hereby agrees that Nortel Israel shall not be obligated to Nortel US to provide, services to or in connection with Nortel Networks Eastern Mediterranean Ltd. subsequent to the date of this Agreement.

4. In exchange for, and effective upon the receipt of, US$2,000,000 (two million United States dollars) (the "**Payment**") according to the terms hereof, which shall comprise a payment by Nortel US of US$813,819 (eight hundred thirteen thousand and eight hundred nineteen United States dollars) and a payment by Nortel UK of US$1,186,181 (one million, one hundred eighty-six thousand and one hundred eighty-one United States dollars), and the Waiver, Nortel Israel

hereby irrevocably assigns, transfers and conveys to the Participating Parties, jointly, all of its present and future rights, title and interest to any portion of (the "**Assignment**") the proceeds of the sale of any Nortel business or asset (the "**Israeli Proceeds**"), including any and all rights of Nortel Israel under that certain Interim Funding and Settlement Agreement, dated June 9, 2009 (the "**IFSA**").

5.  Each Participating Party shall be entitled to a ratable share of the Israeli Proceeds proportional to that Participating Party's contribution to the Payment, until Nortel US has been paid an amount equivalent to its outstanding claims against Nortel Israel as of the date of this Agreement pursuant to the Scheme of Arrangement plus its share of the Payment, after which all amounts shall be paid solely to NNUK as the sole shareholder of Nortel Israel.

6.  Nortel Israel hereby agrees that, prior to its dissolution, in relation to any sale of any Nortel business or asset in which Nortel Israel would, save for the terms of this Agreement, have had any rights, title or interest in any portion of the proceeds of, it shall take, or cause to be taken, all actions as are lawful, reasonable and within its power and to do, or cause to be done, to give effect to sale of such Nortel business or asset. Nortel Israel further agrees to execute a limited power of attorney (the "**Power of Attorney**") as provided in <u>Exhibit C</u> hereto, authorizing NNUK and Nortel US to act jointly on behalf of Nortel Israel as necessary to effectuate the sale of any Nortel asset in which Nortel Israel has now or may ever have had an interest, whether such sale takes place before or after dissolution of Nortel Israel.

7.  Nortel Israel hereby acknowledges and agrees that the Payment and Waiver shall constitute full and complete payment and final satisfaction of any and all claims (including any claims for interest), whether known, knowable or unknown, contingent or non-contingent, stated or unstated, arising from or affected by any change in the law or any other change of circumstances of any sort, that Nortel Israel ever had, now has, or may have in the future against the Participating Parties and any of their subsidiaries or affiliates, or their respective directors, officer, employees and agents (including for the avoidance of doubt the Joint Administrators), for any share in any Israeli Proceeds.

8.  In the event that the Israeli Tax Authorities require Nortel Israel to issue invoices with respect to the transactions contemplated in this Agreement, these obligations shall not be transferred to the Participating Parties, and shall be the sole responsibility of and shall be satisfied in full by Nortel Israel. For the avoidance of doubt, the Participating Parties shall not be responsible for any obligations to any Israeli government agency or authority, including without limitation any taxing authorities, and Nortel Israel shall indemnify and hold harmless the Participating Parties for any such liabilities that may attach or attempt to attach to any of the Participating Parties as a result of their relationship with Nortel Israel.

9.  Each party shall execute and deliver any and all documents, motions, applications and agreements required in connection with the Assignment, including, without limitation, the amendment under New York law of all escrow agreements created in connection with any global sale of Nortel assets to which Nortel Israel is a party, eliminating Nortel Israel's rights thereunder, as provided in <u>Exhibit D</u> hereto, and the Power of Attorney, and shall use commercially

2

reasonable efforts to cooperate on execution of any documents that may be required in the future to implement this Agreement.

10. Each party shall have an opportunity to review and provide comments to the motions to be filed by Nortel US with the United States Bankruptcy Court for the District of Delaware (the "US Court") and by Nortel Israel with the Tel Aviv District Court, the form and substance of which must be reasonably acceptable to all parties.

11. The Joint Administrators are entering into this Agreement as agents for NNUK only and the other Parties hereto acknowledge that none of the Joint Administrators or their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of NNUK to observe, perform or comply with any of their obligations under this Agreement or under or in relation to any associated arrangements or negotiations.

12. In exercising their rights under this Agreement, the Joint Administrators are required to act in the best interests of the creditors of NNUK to which they have been appointed. Therefore nothing in this Agreement shall operate so as to derogate from, restrict or prevent the Joint Administrators from complying with their statutory duties or legal obligations in relation to the exercise of their powers, duties or functions as administrators of NUNK under the Insolvency Act 1986 or any other applicable legislation or statutory instrument as they see fit, acting in good faith.

13. For the purposes of the acknowledgements or agreements to, or exclusions of, liability in favor of the Joint Administrators in this Agreement, references to the Joint Administrators where the context so permits shall mean and include any additional or successor administrator of NNUK and their respective firms or future firms, employees, agents, members, partners and personal representatives.

14. Each of the Participating Parties will transfer its portion of the Payment to Nortel Israel within 10 business days from receipt of the last of the approvals described in Section 16 hereunder.

15. This Agreement and each party's obligations hereunder are subject to and conditioned upon the receipt within ninety (90) days of the date hereof of (a) the approval of an amendment to the Scheme of Arrangement incorporating the terms of this Agreement (the "Amended Scheme") by a 75% majority of the Pension-10 Group (as such term is defined in the Scheme of Arrangement), (b) the approval of the Amended Scheme by the Participating Parties, (c) approvals by any relevant governmental authority, including confirmation by the Israeli Tax Authority that the Amended Scheme does not give rise to a taxable event, or agreement by the Israeli Tax Authority to an alternative tax arrangement consistent with the Amended Scheme and this Agreement, (d) the approval of the Tel-Aviv District Court of the Amended Scheme, (e) the approval by the US Court of the terms of this Agreement, and (f) the approval by the US Court and the Ontario Superior Court of Justice (Commercial List) of the escrow amendments provided in Exhibit D hereto.

16. With the exception of Sections 11, 12 and 13, which shall be subject to English law, and subsections (a), (c) and (d) of Section 15, which shall be subject to the

3

laws of the State of Israel, this agreement will be governed by and construed in accordance with the laws of the State of New York, United States of America. The parties hereto consent to the exclusive jurisdiction of the US Court for all matters concerning this Agreement during the pendency of Nortel US's chapter 11 case and, thereafter, consent to any action or proceeding to interpret or enforce this agreement being brought in a United States District Court having jurisdiction over such matter.

17. Delivery of an executed counterpart of the signature page of this agreement by facsimile or e-mail attachment shall be effective as delivery of a manually executed counterpart of this agreement.

18. Nortel Israel hereby acknowledges and agrees that:

a.    in entering into this agreement NNUK is acting for and on behalf of Nortel Networks S.A. (in administration and in liquidation), Nortel Networks France S.A.S. (in administration), Nortel Networks BV (in administration), and Nortel Networks (S.p.A) (in administration) (together, the "Nortel EMEA Participants"); and

b.    with the exception of paragraphs 4, 5 and 14 all references in this Agreement to the "Participating Parties" shall be deemed to include the Nortel EMEA Participants.

*[Signature pages follow]*

4

In witness whereof, the parties set forth their signatures as of the date first above written:

Nortel Networks UK Limited
(in administration)

By: ALAN BLOOM
as Joint Administrator (acting as agent and without personal liability).

Nortel Networks Inc.

By: John J. Ray, III
Title: Principal Officer

הנאמן בהקפאת הליכים     הנאמן בהקפאת הליכים

Nortel Communications
Holdings (1997) Limited (in administration)

By: Avi D. Pelossof and Yaron Har-Zvi
Title: Joint Administrators

הנאמן בהקפאת הליכים     הנאמן בהקפאת הליכים ומנכים

Nortel Networks Israel (Sales
and Marketing) Ltd. (in administration)

By: Avi D. Pelossof and Yaron Har-Zvi
Title: Joint Administrators

By: ALAN BLOOM
In his own capacity and on behalf of the Joint Administrators without personal liability and solely for the benefit of the provisions of this Agreement expressed to be conferred on or given to the Joint Administrators.

5

## EXHIBIT A

## OUTSTANDING OBLIGATIONS

All of the obligations of Nortel Israel to the Participating Parties and of the Participating Parties to Nortel Israel set forth in the following agreements, for as long as Nortel Israel has not been liquidated, are unaffected by this Agreement and, where appropriate, remain due and payable, save, for the avoidance of doubt, the Israeli Proceeds which shall be payable to the Participating Parties pursuant to the terms of this Agreement:

1. the amended and restated asset and share sale agreement between Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and the other entities identified therein as Sellers and the entities identified therein as EMEA Sellers and Avaya Inc, dated September 14, 2009, as amended on 18 December 2009 and 10 March 2011 and as may be amended and restated from time to time;

2. the amended and restated asset sale agreement relating to the sale and purchase of the EMEA Assets between the EMEA Sellers (as defined therein), Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, Yaron Har-Zvi and Avi D. Pelossof as Joint Israeli Administrators and Avaya Inc, dated 14 September 2011, as amended on 22 December 2009 and as may be amended and restated from time to time;

3. the amended and restated asset sale agreement between Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and the other entities identified therein as Sellers and Ciena Corporation dated November 24, 2009, as amended on 3 December 2009, 23 December 2009, 15 March 2009, 15 March 2009 and 19 March 2009 and as may be amended and stated from time to time;

4. the asset sale agreement relating to the sale and purchase of the EMEA Assets between the EMEA Sellers (as defined therein), Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, Yaron Har-Zvi and Avi D. Pelossof as Joint Israeli Administrators and Ciena Corporation dated 7 October 2009, as amended on 20 October 2009, 24 November 2009, 16 December 2009, 13 January 2010 and 19 March 2010 and as may be amended and restated from time to time;

5. the asset sale agreement between Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and the other entities identified therein as Sellers and Genband Inc. dated December 22, 2009 as amended on 28 May 2010 and as may be amended and restated from time to time;

6. the asset sale agreement relating to the sale and purchase of the EMEA assets between the EMEA Sellers (as defined therein), Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, Yaron Har-Zvi and Avi D. Pelossof as Joint Israeli Administrators and Genband, Inc. dated 23 December 2009, as amended on 28 May 2010 and as may be amended and restated from time to time;

7. the asset sale agreement between Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and the other entities identified therein

as Sellers and Telefonaktiebolaget L M Ericsson (publ) dated September 24, 2010, as amended on 11 March 2010 and as may be amended and restated from time to time; and

8.  the asset sale agreement relating to the sale and purchase of the EMEA assets between the EMEA Sellers (as defined therein), Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, Yaron Har-Zvi and Avi D. Pelossof as Joint Israeli Administrators and Telefonaktiebolaget L M Ericsson (publ) dated 24 September 2010, as amended and restated on 11 March 2011 and as may be amended and restated from time to time.

**EXHIBIT B**

**Nortel Israel – Accounts Receivable (as of March 2011)**

| Affiliate | Outstanding AR Balance | Currency |
|---|---|---|
| Canada | 5,809.01 | ILS |
| Italy | 12,118.81 | ILS |
| UK | 208,667.53 | ILS |
| India | 211,462.52 | ILS |
| Austria | 7,028.38 | ILS |

**Nortel Israel – Accounts Payable (as of March 2011)**

| Affiliate | Outstanding AP Balance | Currency |
|---|---|---|
| Canada | 42,778.41 | CAD |
| US | 40,457.44 | USD |
| Mexico | 10,409.66 | USD |
| Italy | 3,070.74 | EUR |
| Netherlands | 9,030.21 | EUR |
| Spain | 14,516.22 | EUR |
| UK | 4,966.32 | GBP |

**EXHIBIT C**

**POWER OF ATTORNEY**

## IRREVOCABLE POWER OF ATTORNEY

The undersigned Nortel Networks Israel (Sales and Marketing) Ltd. (in administration) ("**Nortel Sales and Marketing**") and Nortel Communications Holdings (1997) Ltd. (in administration) ("**Nortel Communications**" and, together with Nortel Sales and Marketing, "**Nortel Israel**"), acting by and through their joint administrators Yaron Har-Zvi and Avi D. Pelossof , in their respective capacities as Joint Administrators of Nortel Israel and without any personal liability (hereinafter, the "**Israeli Administrators**"), have entered into that certain agreement dated as of April 13, 2011 (the "**Israel Agreement**") with Nortel Networks, Inc. ("**Nortel US**") and Nortel Networks UK Limited (in administration) ("**NNUK**") (acting by its joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (the "**Joint Administrators**") in their capacity as Joint Administrators of NUK and without any personal liability), pursuant to which, among other things, Nortel Israel irrevocably assigned, transferred, and conveyed to Nortel US and NNUK all of its present and future rights, title and interest to any portion of the proceeds (an "**Israeli Allocation**") of the sale of any Nortel business or asset in which Nortel Israel has now or may ever have an interest, whether such sale takes place before or after the dissolution of Nortel Israel (each, an "**Asset Sale**", and collectively, the "**Asset Sales**").  The Israeli Agreement is in full force and effect, all conditions to its effectiveness having been satisfied.

1.  In furtherance of the Israel Agreement, and in consideration of the actual promises and initial obligations set forth herein, the undersigned hereby irrevocably constitutes and appoints NNUK and Nortel US (acting jointly, the "**Israeli Representatives**") as its agent and attorney-in-fact, with full power of substitution, to act in the name, place and stead of Nortel Israel with respect to all matters arising in connection with the Israel Agreement, as the same may be amended from time to time, including, but not limited to, the power and authority on behalf of the undersigned to do or cause to be done any of the following things:

    - sign, arrange and file on behalf Nortel Israel all and any correspondence, agreements, or other documents necessary to effectuate the Asset Sales and the Israeli Agreement and to receive any Israeli Allocation in accordance with the terms of the Israel Agreement;

    - amend and waive any provisions of any document entered into by Nortel Israel in connection with any Asset Sale or relating in any way to any Israeli Allocation, provided that any Israeli Allocation shall be distributed between Nortel US and NNUK in accordance with the terms of the Israel Agreement;

    - otherwise take all actions and do all things necessary or proper, required, contemplated or deemed advisable or desirable by the Israeli Representatives in their discretion, including the execution and delivery of any documents, and generally act for and in the name of the undersigned with respect to the Israel Agreement, the Asset Sales and any Israeli Allocation, as fully as could the undersigned if then personally present and acting; and

    - receive all notices, communications, and deliveries under any document relating to the Asset Sales, the Israeli Agreement or any Israeli Allocation.

2.  The Israeli Representatives are hereby empowered to determine, in their sole and absolute discretion, the time or times when, the purposes for which, and the manner in which, any power herein conferred upon the Israeli Representatives shall be exercised.

3.  This Power of Attorney shall be irrevocable, and any other Person may conclusively and absolutely rely, without inquiry, upon the actions of the Israeli Representatives as the acts of Nortel Israel in all matters relating to this Agreement; provided, however, that Nortel US and NNUK may, acting together and upon written notice to Nortel Israel, replace such individual as Israeli Representative with any other person, who will thereupon be deemed to be the Israeli Representative for purposes hereof.

4.  The Joint Administrators are entering into this Power of Attorney as agents for NNUK only and the other parties hereto acknowledge that none of the Joint Administrators or their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever on their own part or in respect of any failure on the part of NNUK to observe, perform or comply with any of their obligations under this Power of Attorney or under or in relation to any associated arrangements or negotiations.

5.  In exercising their rights under this Power of Attorney, the Joint Administrators are required to act in the best interests of the creditors of NNUK to which they have been appointed. Therefore nothing in this Power of Attorney shall operate so as to derogate from, restrict or prevent the Joint Administrators from complying with their statutory duties or legal obligations in relation to the exercise of their powers, duties or functions as administrators of NNUK under the Insolvency Act 1986 or any other applicable legislation or statutory instrument as they see fit, acting in good faith.

6.  For the purposes of the acknowledgements or agreements to, or exclusions of, liability in favor of the Joint Administrators in this Power of Attorney, references to the Joint Administrators where the context so permits shall mean and include any additional or successor administrator of NNUK and their respective firms or future firms, employees, agents, members, partners and personal representatives.

7.  The parties hereto consent to the exclusive jurisdiction of the US Court for all matters concerning this Power of Attorney during the pendency of Nortel US's chapter 11 case and, thereafter, consent to any action or proceeding to interpret or enforce this Power of Attorney being brought in a United States District Court having jurisdiction over such matter.

IN WITNESS WHEREOF, the undersigned has executed this Power of Attorney this __ day of _____, 2011.


| | |
|---|---|
| **Nortel Communications Holdings (1997) Limited (in administration)** | **Nortel Networks Israel (Sales and Marketing) Ltd. (in administration)** |
| By: | By: |
| Title: | Title: |

ACCEPTED by each Israeli Representative as of
the date above set forth:

In his own capacity and on behalf of the Joint
Administrators without personal liability and
solely for the benefit of the provisions of this
Power of Attorney expressed to be conferred on
or given to the Joint Administrators

By: _____

Title:

ACCEPTED by each Israeli Representative as of
the date above set forth:

By: _____

Title:

**EXHIBIT D**

**CANADIAN ACKNOWLEDGEMENT**

**APPENDIX "D"**

**[ATTACHED]**

## ACKNOWLEDGEMENT RE ISRAEL SETTLEMENT AGREEMENT

**TO:**    Nortel Networks, Inc. ("Nortel US")

Nortel Networks UK Limited ("NNUK") (acting by its joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (the "Joint Administrators")

Nortel Networks Limited, and its affiliated debtors in the CCAA Proceedings ("Nortel Canada")

Nortel Networks Israel (Sales and Marketing) Ltd. (in administration) ("Nortel Sales and Marketing")

Nortel Communications Holdings (1997) Ltd. (in administration) ("Nortel Communications" and, together with Nortel Sales and Marketing, "Nortel Israel")

**RE:**    Settlement Agreement dated as of April 12, 2011 (the "Israel Settlement Agreement") by and among Nortel US, NNUK, Nortel Israel, and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al. (the "Committee

**DATE:**    April___, 2011

Without waiver of any rights or claims they may have against Nortel Israel or its successors and assigns (which successors and assigns do not include Nortel US or NNUK), upon the effectiveness of the Israel Settlement Agreement, Nortel Canada acknowledges that it will have no rights or entitlements in, or to the Israeli Proceeds (as defined in the Israel Settlement Agreement), or against Nortel US or NNUK with respect to their rights to the Israeli Proceeds.

Nortel Israel hereby releases Nortel Canada (including all Canadian affiliates, directors, officers, successors and assigns, collectively, the "Canadian Releasees") from any and all claims ( including, without limitation, any claims it may have asserted, alleged or otherwise filed against one or more of the Canadian Releasees in connection with any claims process in connection with Nortel Canada's CCAA proceedings) it ever had, may now have or in the future have against the Canadian Releasees.

NORTEL NETWORKS LIMITED

Per: _____

Name: Anna Ventresca

Title: General Counsel - Corporate & Corporate Secretary

Per: _____

Name:

Title:

### ACKNOWLEDGEMENT RE ISRAEL SETTLEMENT AGREEMENT

**TO:**    Nortel Networks, Inc. ("Nortel US")

Nortel Networks UK Limited ("NNUK") (acting by its joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (the "Joint Administrators")

Nortel Networks Limited, and its affiliated debtors in the CCAA Proceedings ("Nortel Canada")

Nortel Networks Israel (Sales and Marketing) Ltd. (in administration) ("Nortel Sales and Marketing")

Nortel Communications Holdings (1997) Ltd. (in administration) ("Nortel Communications" and, together with Nortel Sales and Marketing, "Nortel Israel")

**RE:**    Settlement Agreement dated as of April 12, 2011 (the "Israel Settlement Agreement") by and among Nortel US, NNUK, Nortel Israel, and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al. (the "Committee

**DATE:**    April ___, 2011

Without waiver of any rights or claims they may have against Nortel Israel or its successors and assigns (which successors and assigns do not include Nortel US or NNUK), upon the effectiveness of the Israel Settlement Agreement, Nortel Canada acknowledges that it will have no rights or entitlements in or to the Israeli Proceeds (as defined in the Israel Settlement Agreement), or against Nortel US or NNUK with respect to their rights to the Israeli Proceeds.

Nortel Israel hereby releases Nortel Canada (including all Canadian affiliates, directors, officers, successors and assigns, collectively, the "Canadian Releasees") from any and all claims ( including, without limitation, any claims it may have asserted, alleged or otherwise filed against one or more of the Canadian Releasees in connection with any claims process in connection with Nortel Canada's CCAA proceedings) it ever had, may now have or in the future have against the Canadian Releasees.

**NORTEL NETWORKS LIMITED**

Per: _____

    Name: _____

    Title: _____

Per: _____

    Name: CLARKE GLASPOLL

    Title: CONTROLLER

- 2 -

**Nortel Networks UK Limited**
**(in administration)**

By: ALAN BLOOM
as Joint Administrator (acting as
agent and without personal
liability)

**Nortel Networks Inc.**

By: John J. Ray, III
Title: Principal Officer

הנאמן בהקפאת הליכים          נאמן הליכים

**Nortel Communications**
**Holdings (1997) Limited (in**
**administration)**

By: Avi D. Pelossof and Yaron Har-Zvi
Title: Joint Administrators

נ בהקפאת הליכים          הנאמן הליכים

**Nortel Networks Israel (Sales**
**and Marketing) Ltd. (in**
**administration)**

By: Avi D. Pelossof and Yaron Har-Zvi
Title: Joint Administrators

**Acknowledged, this ___ day of**
**April, 2011**

_____

**Ernst & Young Inc., solely in**
**its capacity as monitor in the**
**CCAA proceedings of Nortel**
**Canada, and not in its personal**
**capacity**

- 2 -

**Nortel Networks UK Limited
(in administration)**

By:
as Joint Administrator (acting as
agent and without personal
liability)

**Nortel Networks Inc.**

By:
Title:

**Nortel Communications
Holdings (1997) Limited (in
administration)**

By:
Title:

**Nortel Networks Israel (Sales
and Marketing) Ltd. (in
administration)**

By:
Title:

**Acknowledged, this ___ day of
April, 2011**

**Ernst & Young Inc., solely in
its capacity as monitor in the
CCAA proceedings of Nortel
Canada, and not in its personal
capacity**

**APPENDIX "E"**

**[ATTACHED]**

**AMENDMENT TO CVAS DISTRIBUTION ESCROW AGREEMENT**

**AMENDMENT TO CVAS DISTRIBUTION ESCROW AGREEMENT**

This Amendment, dated as of [●], 2011 (this "Amendment") to the CVAS Distribution Escrow Agreement (the "Distribution Escrow Agreement"), dated as of May 27, 2010, by and among (i) Nortel Networks Corporation ("NNC"), (ii) Nortel Networks Limited ("NNL"), (iii) Nortel Networks Inc. ("NNI," and together with NNC and NNL, the "Main Sellers"), (iv) the affiliates of the Main Sellers listed on Schedule A of the Distribution Escrow Agreement (collectively, the "Other Sellers" and, together with the Main Sellers, the "Sellers"), (v) the companies listed on Schedule B of the Distribution Escrow Agreement (the "EMEA Sellers"), acting by their joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively, the "Joint Administrators")) who act as agents for the EMEA Debtors (as defined in the Distribution Escrow Agreement), and, in the case of the Israeli Company (as defined in the Distribution Escrow Agreement), acting by its joint administrators Yaron Har-Zvi and Avi D. Pelossof (the "Joint Israeli Administrators"), (vi) Nortel Networks S.A. (In Administration) ("NNSA") acting by the French Liquidator (as defined in the Distribution Escrow Agreement) (NNSA, the Seller and the EMEA Sellers together, the "Depositors"), (vii) the Estate Fiduciaries (as defined in the Distribution Escrow Agreement), and (viii) JPMorgan Chase Bank, N.A., as escrow and distribution agent under the Distribution Escrow Agreement (the "Distribution Agent"). Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

WITNESSETH:

WHEREAS, the Depositors, the Estate Fiduciaries and the Distribution Agent (the "Parties") desire to amend the Distribution Escrow Agreement.

WHEREAS, this Amendment has been approved by both the U.S. Bankruptcy Court and the Canadian Court as required pursuant to Paragraph 14(a) of the Distribution Escrow Agreement.

WHEREAS, on April 13, 2011 the NNI, Nortel Networks (UK) Limited (in administration) ("NNUK") and the Israeli Company entered into that certain Letter Agreement pursuant to which the Joint Israeli Administrators transferred all of the Israeli Company's right, title and interest in the Escrow Property to NNI and NNUK, jointly (the "Israeli Agreement").

WHEREAS the Parties acknowledge that the consideration exchanged by the parties to the Israeli Agreement was neither a reference to nor an indication of the ultimate value of the amount of the Escrow Property that may be attributed to the Israeli Company when the allocation of the sales proceeds relating to the business of the Israeli Company is determined or otherwise agreed upon.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.    <u>Amendment of Preamble</u>.  The Preamble of the Distribution Escrow Agreement shall be amended to remove the phrase "and, in the case of the Israeli Company (as defined below), is acting by its joint administrators Yaron Har-Zvi and Avi D. Pelossof (the "**Joint Israeli Administrators**") who act as agents of the Israeli Company without any personal liability as set forth in Paragraph 19 below".

2.    <u>Amendment of Recitals</u>.  The sixth recital shall be deleted in its entirety. The eighth, eighteenth, and nineteenth recitals shall be amended to substitute the phrase "certain other parties" for the phrase "the Joint Israeli Administrators."

3.    <u>Amendment of Paragraph 19</u>.  Paragraph 19 shall be amended to remove all references to the Israeli Companies and the Joint Israeli Administrators.  In particular, Paragraph 19(a) shall be amended and restated in full as follows:

> Subject to Paragraph19(c) below, the parties hereto agree that the Joint Administrators have negotiated this agreement in their capacities as administrators of the EMEA Debtors, and for and on behalf of, the EMEA Debtors, and that none of the Joint Administrators or their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any EMEA Debtor to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations, whether such liability would arise under Paragraph 99(4) of Schedule B1 to the Insolvency Act or otherwise howsoever.

Paragraph 19(c) shall be amended to remove the phrases "the Joint Israeli Administrators" and "the Israeli Company." Paragraph 19(d)(iii) shall be deleted in its entirety.

4.    <u>Amendment of Schedules</u>.  Schedule B of the Distribution Escrow Agreement shall be amended to delete Part 3 in full, removing the Israeli Company from the list of EMEA Sellers party to the Distribution Escrow Agreement.  Schedule C shall be amended to remove the standing settlement instructions for the Israeli Company.  Schedule D shall be amended to remove the Israeli Company from the list of Depositors under the Distribution Escrow Agreement.  Schedule E shall be amended to remove the contact information for the Israeli Company.

5.    <u>Effect</u>.  Upon the effectiveness of this Amendment, the Israeli Company shall immediately and irrevocably cease to be a Depositor under the Distribution Escrow Agreement for any and all purposes, and the consent of the Israeli Company shall no longer be required for any purposes thereunder.  For the avoidance of doubt, and subject to that certain Irrevocable Power of Attorney executed by the Israeli Company, dated [●], 2011, appointing NNI and NNUK as agent and attorney-in-fact, no party appointed in any proceeding with respect to the Israeli Company's estates, including, without limitation, any successor, assign, trustee, liquidator or similar person, shall have any rights, title, or interest under the Distribution Escrow Agreement.

6.      <u>Authorization</u>.  Each Party hereto represents to the others that (a) such party has all necessary power and authority to enter into this Amendment; (b) the execution and delivery by such Party of this Amendment has been duly authorized by all requisite corporate or other action on the part of such Party; and (c) this Amendment has been duly executed and delivered by such Party.

7.      <u>Distribution Escrow Agreement Remains in Effect</u>.  This Amendment and the Distribution Escrow Agreement set forth the entire agreement among the Parties with respect to the matters set forth herein.  Except as amended hereby, the Distribution Escrow Agreement shall remain in full force and effect, and nothing herein shall affect any other provision of the Distribution Escrow Agreement or the rights and obligations of the parties thereto.  This Amendment shall be governed by and interpreted and enforced in accordance with the terms of the Distribution Escrow Agreement.

8.      <u>Counterparts</u>.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement, it being understood that all of the Parties need not sign the same counterpart.  All signatures of the parties to this Amendment may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.

*[Signature pages follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed on the day and year first above written.

NORTEL NETWORKS LIMITED                    NORTEL NETWORKS CORPORATION


By:_____              By:_____
Name:                                      Name:
Title:                                     Title:


By:_____              By:_____
Name:                                      Name:
Title:                                     Title:



NORTEL NETWORKS INC.


By:_____
Name:
Title:




ERNST & YOUNG INC. IN ITS CAPACITY        THE OFFICIAL COMMITTEE OF
AS THE MONITOR OF NORTEL                  UNSECURED CREDITORS OF NORTEL
NETWORKS CORPORATION ET AL.,              NETWORKS INC., ET. AL.
AND NOT IN ITS PERSONAL CAPACITY
                                          By:  AKIN GUMP STRAUSS HAUER &
                                          FELD LLP, as Counsel to the Committee and
                                          authorized signatory and not in its individual
                                          capacity


By:_____              By:_____
Name:                                      Name:
Title:                                     Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS TECHNOLOGY CORPORATION** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS DE MEXICO, S.A. DE C.V.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL DE MEXICO, S. DE R.L. DE C.V.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:


By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS PERU S.A.C.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS AUSTRALIA PTY LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS (INDIA) PRIVATE LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:


By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **PT NORTEL NETWORKS INDONESIA** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS MALAYSIA SDN. BHD.** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS NEW ZEALAND LIMITED** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS SINGAPORE PTE. LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS (ASIA) LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS (CHINA) LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:


By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (THAILAND) LTD.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL VIETNAM LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS DE ARGENTINA, S.A.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS INTERNATIONAL INC.** by

NORTEL NETWORKS INC., as Representative

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (CALA) INC.** by

NORTEL NETWORKS INC., as Representative

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS KABUSHIKI KAISHA** by

NORTEL NETWORKS INC., as Representative

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS DE GUATEMALA, LTDA.** by

NORTEL NETWORKS INC., as Representative

By:_____
Name:
Title:

**SIGNED** for and on behalf of **NORTEL NETWORKS UK LIMITED** (in administration) by _____ as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)
)

…………………………………………………..
_____

Witness signature

…………………………………………..
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL NETWORKS NV** (in administration) by _____ as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)
)

…………………………………………..
_____

Witness signature

…………………………………………..
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL NETWORKS SPA** (in administration) by _____ as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)
)

…………………………………………
_____

Witness signature

…………………………………………..
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL**          )
**NETWORKS (IRELAND) LIMITED** (in          )          ………………………………………………
administration) by _____ as Joint          )          _____
Administrator (acting as agent and without          )
personal liability) in the presence of:          )


Witness signature

…………………………………………….          )
Name:          )
Address:          )

**SIGNED** for and on behalf of **NORTEL**  )       ……………………………………………
**NETWORKS FRANCE S.A.S.** (in            )       ⎯⎯⎯⎯⎯
administration) by ⎯⎯⎯⎯ acting as     )
authorised representative for    ⎯⎯⎯⎯ as )
Joint Administrator (acting as agent and without )
personal liability) in the presence of:    )


Witness signature

…………………………………………….    )
Name:                                     )
Address:                                  )

**SIGNED** by _____          )          ……………………………………………
Duly authorized for and on behalf of **O.O.O.**          )          _____
**NORTEL NETWORKS** in the presence of:          )


Witness signature

……………………………………………          )
Name:          )
Address:          )

**SIGNED** for and on behalf of **NORTEL**                )
**NETWORKS ISRAEL (SALES AND**                )    ……………………………………………
**MARKETING) LIMITED** (in administration)    )    _____
by _____ and _____ as Joint         )
Israeli Administrators (acting jointly and          )
without personal liability) in connection with     )    ……………………………………………
the Israeli Assets and Liabilities:                      )    _____
                                                                       )
                                                                       )

Witness signature

……………………………………………    )
Name:                                                               )
Address:                                                            )

**SIGNED** by _____ )    ………………………………………….
Duly authorized for and on behalf of **NORTEL** )    _____
**NETWORKS AG** in the presence of: )

Witness signature

………………………………………… )
Name: )
Address: )

**SIGNED** for and on behalf of **NORTEL**                )       ……………………………………………
**NETWORKS S.A.** (in administration and              )       _____
secondary proceedings) by _____ as          )
_____ (acting as agent and without            )
personal liability) in the presence of:                    )


Witness signature


……………………………………………          )
Name:                                                                )
Address:                                                             )

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS BV** (in administration) by
_____as Joint Administrator
(acting as agent and without personal liability)
in the presence of:

)
)
)
)
)

…………………………………………

_____

…………………………………………
Witness signature

)
Name:                                                                  )
Address:                                                               )

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS POLSKA SP Z.O.O.** (in
administration) by _____ as
Joint Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)
)

…………………………………………

_____

Witness signature

…………………………………………                )
Name:                                                                  )
Address:                                                               )

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS HISPANIA S.A.** (in
administration) by _____ as
Joint Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)
)

…………………………………………

_____

Witness signature

…………………………………………                )
Name:                                                                  )
Address:                                                               )

**SIGNED** for and on behalf of **NORTEL**                )    ……………………………………………
**NETWORKS (AUSTRIA) GMBH** (in                          )    _____
administration) by _____ as               )
Joint Administrator (acting as agent and without        )
personal liability) in the presence of:                 )

Witness signature

……………………………………………                )
Name:                                                   )
Address:                                                )


**SIGNED** for and on behalf of **NORTEL**                )    ……………………………………………
**NETWORKS PORTUGAL SA** (in                            )    _____
administration) by _____ as               )
Joint Administrator (acting as agent and without        )
personal liability) in the presence of:                 )

Witness signature

……………………………………………                )
Name:                                                   )
Address:                                                )


**SIGNED** for and on behalf of **NORTEL**                )    ……………………………………………
**GMBH** (in administration) by                          )    _____
_____ as Joint Administrator                 )
(acting as agent and without personal liability)        )
in the presence of:

Witness signature

……………………………………………                )
Name:                                                   )
Address:                                                )

S-16

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS SLOVENSKO S.R.O.** (in
administration) by
_____
as Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)
)
)

………………………………………
_____

Witness signature

………………………………………
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS S.R.O.** (in administration) by
_____
as Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)
)

………………………………………
_____

Witness signature

………………………………………
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS ROMANIA S.R.L.** (in
administration) by
_____
as Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)
)
)

………………………………………
_____

Witness signature

………………………………………
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL** )
**NETWORKS AB** (in administration) by )
_____ as Joint Administrator )
(acting as agent and without personal liability) )
in the presence of: )

Witness signature

…………………………………………. )
Name: )
Address: )

…………………………………………………

_____

S-18

**AMENDMENT TO ENTERPRISE DISTRIBUTION ESCROW AGREEMENT**

## AMENDMENT TO ENTERPRISE DISTRIBUTION ESCROW AGREEMENT

       This Amendment, dated as of [●], 2011 (this "Amendment") to the Enterprise Distribution Escrow Agreement (the "Distribution Escrow Agreement"), dated as of December 18, 2009, by and among (i) Nortel Networks Corporation ("NNC"), (ii) Nortel Networks Limited ("NNL"), (iii) Nortel Networks Inc. ("NNI," and together with NNC and NNL, the "Main Sellers"), (iv) the affiliates of the Main Sellers listed on Schedule A Parts 1 and 2 of the Distribution Escrow Agreement (the "Other Sellers"), (v) the companies listed on Schedule B Part 1 of the Distribution Escrow Agreement (the "EMEA Filed Entities"), acting by Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively the "Joint Administrators")) who act as agents for the EMEA Filed Entities; (vi) the companies listed on Schedule B Part 2 of the Distribution Escrow Agreement (the "EMEA Non-Filed Entities"), (vii) the companies listed on Schedule B Part 3 of the Distribution Escrow Agreement (the "Israeli Companies"), acting by Yaron Har-Zvi and Avi D. Pelossof (the "Joint Israeli Administrators") who act as agents of the Israeli Companies (the Israeli Companies together with the Main Sellers, the Other Sellers, the EMEA Filed Entities and the EMEA Non-Filed Entities, the "Depositors"), (viii) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with the Canadian Cases (the "Monitor"), (ix) the Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "Committee," and together with the Monitor, the "Estate Fiduciaries"), and (x) JPMorgan Chase Bank, N.A., as distribution agent (the "Distribution Agent"), entered into in connection with the ASSA and the EMEA ASA (each as defined in the Escrow Agreement).  Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.
     .

WITNESSETH:

       WHEREAS, the Depositors, the Estate Fiduciaries and the Distribution Agent (the "Parties") desire to amend the Distribution Escrow Agreement.

       WHEREAS, this Amendment has been approved by both the U.S. Bankruptcy Court and the Canadian Court as required pursuant to Paragraph 15(a) of the Distribution Escrow Agreement.

       WHEREAS, on April 13, 2011 the NNI, Nortel Networks (UK) Limited (in administration) ("NNUK") and the Israeli Company entered into that certain Letter Agreement pursuant to which the Joint Israeli Administrators transferred all of the Israeli Company's right, title and interest in the Escrow Funds to NNI and NNUK, jointly (the "Israeli Agreement").

       WHEREAS the Parties acknowledge that the consideration exchanged by the parties to the Israeli Agreement was neither a reference to nor an indication of the ultimate value of the amount of the Escrow Funds that may be attributed to the Israeli Company when the allocation of the sales proceeds relating to the business of the Israeli Company is determined or otherwise agreed upon.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.    <u>Amendment of Preamble</u>.  The Preamble of the Distribution Escrow Agreement shall be amended such that the second subsection (v) is revised to read "the companies listed in <u>Schedule B</u> <u>Part 2</u> (the '**EMEA Non-Filed Entities**' and, collectively with the EMEA Non-Filed Entities, the Main Sellers and the Other Sellers, the '**Depositors**')." Subsection (vi) shall be deleted in its entirety, and subsections (vii) and (viii) shall be renumbered subsections (vi) and (vii), respectively.

2.    <u>Amendment of Recitals</u>.  The fifth recital shall be deleted in its entirety. The eighth recital shall be amended to delete the phrase "the Israeli Companies" and to substitute the phrase "certain other parties" for the phrase "the Joint Israeli Administrators."

3.    <u>Amendment of Paragraph 16</u>.  Paragraph 16 shall be amended to delete the phrase "and the Joint Israeli Administrators."

4.    <u>Amendment of Paragraph 20</u>.  Paragraph 20 shall be amended to delete all references to the Israeli Companies and the Joint Israeli Administrators.  In particular, Paragraph 20(a) shall be amended and restated in full as follows:

> Subject to Paragraph 20(b) below, the parties hereto agree that the Joint Administrators have negotiated this agreement in their capacities as administrators of the EMEA Debtors, and for and on behalf of, the EMEA Debtors, and that none of the Joint Administrators or their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any EMEA Debtor to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations, whether such liability would arise under Paragraph 99(4) of Schedule B1 to the Insolvency Act or otherwise howsoever.

Paragraph 20(b) shall be amended and restated in full as follows:

> Nothing in this Section 20 or any other provision of this Agreement shall prevent the Sellers or the Distribution Agent from bringing any action against the EMEA Filed Entities or the Joint Administrators for fraud.

Paragraph 20(c) shall be amended to remove the phrases "or the Joint Israeli Administrators" and "or the Israeli Companies, respectively."

4.    <u>Amendment of Schedules</u>.  Schedule B of the Distribution Escrow Agreement shall be amended to delete Part 3 in full.   Schedule D shall be amended to remove the Israeli Companies from the list of Depositors under the Distribution Escrow Agreement. Schedule E shall be amended to remove the contact information for the Israeli Companies. Exhibit 1 shall be amended to remove the interest allocation percentage to the Israeli Companies.

5.    <u>Effect</u>.  Upon the effectiveness of this Amendment, the Israeli Companies shall immediately and irrevocably cease to be Depositors under the Distribution Escrow Agreement for any and all purposes, and the consent of the Israeli Companies shall no longer be required for any purposes thereunder.  For the avoidance of doubt, and subject to that certain Irrevocable Power of Attorney executed by the Israeli Company, dated [●], 2011, appointing NNI and NNUK as agent and attorney-in-fact, no party appointed in any proceeding with respect to the the Israeli Company's estates, including, without limitation, any successor, assign, trustee, liquidator or similar person, shall have any rights, title, or interest under the Distribution Escrow Agreement.

6.    <u>Authorization</u>.  Each Party hereto represents to the others that (a) such party has all necessary power and authority to enter into this Amendment; (b) the execution and delivery by such Party of this Amendment has been duly authorized by all requisite corporate or other action on the part of such Party; and (c) this Amendment has been duly executed and delivered by such Party.

7.    <u>Distribution Escrow Agreement Remains in Effect</u>.  This Amendment and the Distribution Agreement set forth the entire agreement among the Parties with respect to the matters set forth herein.  Except as amended hereby, the Distribution Escrow Agreement shall remain in full force and effect, and nothing herein shall affect any other provision of the Escrow Agreement or the rights and obligations of the parties thereto.  This Amendment shall be governed by and interpreted and enforced in accordance with the terms of the Distribution Escrow Agreement.

8.    <u>Counterparts</u>.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement, it being understood that all of the Parties need not sign the same counterpart. All signatures of the parties to this Amendment may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.

*[Signature pages follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed on the day and year first above written.

<table>
<tr><td><strong>NORTEL NETWORKS LIMITED</strong></td><td><strong>NORTEL NETWORKS CORPORATION</strong></td></tr>
</table>

By:_____

Name:  John Doolittle

Title:    Senior Vice President, Corporate
Services and Chief Financial Officer

By:_____

Name:

Title:

By:_____

Name: John Doolittle

Title:   Senior Vice President, Corporate
Services and Chief Financial Officer

By:_____

Name:

Title:

**NORTEL NETWORKS INC.**

By:_____

Name:  John J. Ray, III

Title:    Principal Officer

**ERNST & YOUNG INC.** IN ITS
CAPACITY AS THE MONITOR OF
NORTEL NETWORKS CORPORATION ET
AL., AND NOT IN ITS PERSONAL
CAPACITY

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF NORTEL
NETWORKS INC., ET. AL.**

BY: AKIN GUMP STRAUSS HAUER &
FELD LLP, as Counsel to the Committee and
authorized signatory and not in its individual
capacity

By:_____

Name:

Title:

By: _____

Name:  Stephen B. Kuhn

Title:   Partner

5

**NORTEL ALTSYSTEMS, INC.**

By:_____
Name:  John J. Ray, III
Title:    Principal Officer


**SIGNED** in the name and on behalf of **NORTEL NETWORKS TECHNOLOGY CORPORATION.** by

    NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS CHILE S.A.** by

    NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS DE MEXICO, S.A. DE C.V.** by

    NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL DE MEXICO, S. DE R.L. DE C.V.** by

    NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS PERU S.A.C.** by

    NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS AUSTRALIA PTY LIMITED** by

    NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (INDIA) PRIVATE LIMITED** by

    NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **PT NORTEL NETWORKS INDONESIA** by

    NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS MALAYSIA SDN. BHD.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS NEW ZEALAND LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS SINGAPORE PTE. LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (ASIA) LIMITED** by

    NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:



**SIGNED** in the name and on behalf of **NORTEL NETWORKS (CHINA) LIMITED** by

    NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:



**SIGNED** in the name and on behalf of **NORTEL NETWORKS (THAILAND) LTD.** by

    NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL VIETNAM LIMITED** by

    NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS TELECOMMUNICATIONS EQUIPMENT (SHANGHAI) CO., LTD.** by

    NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:

**NORTEL NETWORKS INTERNATIONAL INC.**


By:_____
Name:  John J. Ray, III
Title:    Principal Officer


**NORTEL NETWORKS (CALA) INC.**


By:_____
Name:  John J. Ray, III
Title:    Principal Officer


**SIGNED** in the name and on behalf of **NORTEL TECHNOLOGY EXCELLENCE CENTRE PRIVATE LIMITED** by

NORTEL NETWORKS INC., as Representative


By:_____
Name:  John J. Ray, III
Title:    Principal Officer


**SIGNED** in the name and on behalf of **NORTEL NETWORKS KABUSHIKI KAISHA** by

NORTEL NETWORKS INC., as Representative


By:_____
Name:  John J. Ray, III
Title:    Principal Officer

**SIGNED** for and on behalf of **Nortel Networks** )  ..............................................................
**UK Limited** (in administration) by _____ )  _____
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )


Witness signature

.......................................................... )
Name: )
Address: )

**SIGNED** for and on behalf of **Nortel GmbH** )  ..............................................................
(in administration) by _____ as Joint )  _____
Administrator (acting as agent and without )
personal liability) in the presence of: )


Witness signature

.......................................................... )
Name: )
Address: )

**SIGNED** for and on behalf of **Nortel Networks** )  ..............................................................
**SpA** (in administration) by _____ as )  _____
Joint Administrator (acting as agent and without )
personal liability) in the presence of: )


Witness signature

.......................................................... )
Name: )
Address: )

**SIGNED** for and on behalf of **Nortel Networks**  )    ..........................................................................
**Hispania S.A.** (in administration) by                )    _____
_____ as Joint Administrator (acting as           )
agent and without personal liability) in the           )
presence of:

Witness signature

..........................................................................  )
Name:                                                     )
Address:                                                  )

**SIGNED** for and on behalf of **Nortel Networks**  )    ..........................................................................
**B.V.** (in administration) by _____ as          )    _____
Joint Administrator (acting as agent and without       )
personal liability) in the presence of:                 )

Witness signature

..........................................................................  )
Name:                                                     )
Address:                                                  )

**SIGNED** for and on behalf of **Nortel Networks**  )    ..........................................................................
**AB** (in administration) by _____ as            )    _____
Joint Administrator (acting as agent and without       )
personal liability) in the presence of:                 )

Witness signature

..........................................................................  )
Name:                                                     )
Address:                                                  )

14

**SIGNED** for and on behalf of **Nortel Networks**  )  ...................................................................
**N.V.** (in administration) by _____ as  )  _____
Joint Administrator (acting as agent and without  )
personal liability) in the presence of:  )


Witness signature

...................................................................  )
Name:  )
Address:  )

**SIGNED** for and on behalf of **Nortel Networks**  )  ...................................................................
**(Austria) GmbH** (in administration) by  )  _____
_____ as Joint Administrator (acting  )
as agent and without personal liability) in the  )
presence of:  )


Witness signature

...................................................................  )
Name:  )
Address:  )

**SIGNED** for and on behalf of **Nortel Networks**  )  ...................................................................
**Polska Sp. z.o.o.** (in administration) by  )  _____
_____ as Joint Administrator (acting  )
as agent and without personal liability) in the  )
presence of:  )


Witness signature

...................................................................  )
Name:  )
Address:  )

**SIGNED** for and on behalf of **Nortel Networks** )    ...........................................................
**Oy** (in administration) by _____ )    _____
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )


Witness signature

...........................................................    )
Name:                                                       )
Address:                                                    )

**SIGNED** for and on behalf of **Nortel Networks** )    ...........................................................
**Portugal S.A.** (in administration) by )    _____
_____ as Joint Administrator (acting )
as agent and without personal liability) in the )
presence of: )


Witness signature

...........................................................    )
Name:                                                       )
Address:                                                    )

**SIGNED** for and on behalf of **Nortel Networks** )    ...........................................................
**s.r.o.** (in administration) by _____ )    _____
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )


Witness signature

...........................................................    )
Name:                                                       )
Address:                                                    )

**SIGNED** for and on behalf of **Nortel Networks**                )        ............................................................
**Romania s.r.l.** (in administration) by                          )        _____
_____ as Joint Administrator (acting                      )
as agent and without personal liability) in the                   )
presence of:                                                      )


Witness signature

............................................................      )
Name:                                                             )
Address:                                                          )


**SIGNED** for and on behalf of **Nortel Networks**                )        ............................................................
**Engineering Service kft** (in administration) by                )        _____
_____ as Joint Administrator (acting                      )
as agent and without personal liability) in the                   )
presence of:                                                      )


Witness signature

............................................................      )
Name:                                                             )
Address:                                                          )


**SIGNED** for and on behalf of **Nortel Networks**                )        ............................................................
**Slovensko s.r.o.** (in administration) by                       )        _____
_____ as Joint Administrator (acting                      )
as agent and without personal liability) in the                   )
presence of:                                                      )


Witness signature

............................................................      )
Name:                                                             )
Address:                                                          )

**SIGNED** for and on behalf of **Nortel Networks**     )      ...........................................................................
**France S.A.S** (in administration) by _____     )      _____
acting as authorised representative for                    )
                                                           )
as Joint Administrator (acting as agent and                )
without personal liability) in the presence of:

Witness signature

............................................................     )
Name:                                                             )
Address:                                                          )

**SIGNED** for and on behalf of **Nortel Networks** )    ............................................................................
**(Ireland) Limited** (in administration) by )    _____
_____ as Joint Administrator (acting as agent )
and without personal liability) in the presence )
of:

Witness signature

............................................................    )
Name:                                                        )
Address:                                                     )

**SIGNED** by _____                                )        ..........................................................................

duly authorised for and on behalf of **o.o.o.**      )        _____

**Nortel Networks** in the presence of:              )


Witness signature

...............................................................        )

Name:                                                )

Address:                                             )

**SIGNED** by _____                    )      .............................................................
duly authorized for and on behalf of **Nortel**    )      _____
**Networks AG** in the presence of:                )


Witness signature


..............................................................    )
Name:                                              )
Address:                                           )


**SIGNED** by _____                    )      .............................................................
duly authorized for and on behalf of **Nortel**    )      _____
**Networks South Africa (Pty) Limited** in the     )
presence of:


Witness signature


..............................................................    )
Name:                                              )
Address:                                           )


**SIGNED** by _____                    )      .............................................................
duly authorized for and on behalf of **Nortel**    )      _____
**Networks AS** in the presence of:                )

                                                   .............................................................
                                                   _____


Witness signature


..............................................................    )
Name:                                              )
Address:                                           )

**SIGNED** for and on behalf of **Nortel**     )
**Communications Holdings (1997) Limited**    )   ...........................................................
by _____ and _____ as Joint   )   _____
Israeli Administrators (acting jointly and   )
without personal liability) in the presence of:   )
   )   ...........................................................
   )   =_____

Witness signature

..............................................................   )
Name:   )
Address:   )

**SIGNED** for and on behalf of **Nortel Networks**   )
**Israel (Sales and Marketing) Limited** by   )   ...........................................................
_____ and _____ as Joint   )   _____
Israeli Administrators (acting jointly and
without personal liability) in the presence of:
   )
   )   ...........................................................
   )   =_____
   )
   )

Witness signature

..............................................................   )
Name:   )
Address:   )

**SIGNED** by _____ in his own capacity )     ...........................................................................
and on behalf of the Joint Administrators )     _____
without personal liability and solely for the )
benefit of the provisions of this Agreement
expressed to be conferred on or given to the
Joint Administrators in the presence of:


Witness signature

.............................................................. )
Name:                                                    )
Address:                                                 )

| | |
|---|---|
| **SIGNED** for and on behalf of **NORTEL** | ) |
| **NETWORKS SA** (in administration) | ) |
| by **Maître Cosme Rogeau**, in his capacity as | ) |
| French Liquidator (Mandataire Liquidateur), | ) |
| acting as agent and without personal liability, in | |
| the presence of: | |

           _____

Cosme Rogeau

Witness signature

..........................................................................  )

Name:                                                                           )

Address:                                                                       )

**SECOND AMENDMENT TO MEN DISTRIBUTION ESCROW AGREEMENT**

**SECOND AMENDMENT TO MEN DISTRIBUTION ESCROW AGREEMENT**

This Second Amendment, dated as of [●], 2011 (this "Amendment") to the MEN Distribution Escrow Agreement (the "Distribution Escrow Agreement"), dated as of March 19, 2010, is by and among (i) Nortel Networks Corporation ("NNC"), (ii) Nortel Networks Limited ("NNL"), (iii) Nortel Networks Inc. ("NNI," and together with NNC and NNL, the "Main Sellers"), (iv) the Additional U.S. Debtors (as defined in the Distribution Escrow Agreement) and the other affiliates of the Main Sellers listed on Schedule A of the Distribution Escrow Agreement (collectively, the "Other Sellers" and, together with the Main Sellers, the "Sellers"), (v) the companies listed on Schedule B of the Distribution Escrow Agreement (the "EMEA Sellers"), acting by their joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively, the "Joint Administrators")) who act as agents for the EMEA Debtors (as defined in the Distribution Escrow Agreement), and, in the case of the Israeli Company (as defined in the Distribution Escrow Agreement), acting by its joint administrators Yaron Har-Zvi and Avi D. Pelossof (the "Joint Israeli Administrators"), (vi) Nortel Networks S.A. (In Administration) ("NNSA") acting by the NNSA Office Holders (as defined in the Distribution Escrow Agreement), (vii) each affiliate of the Main Sellers listed on Schedule C of the Distribution Escrow Agreement (each such entity, a "North American ALT Selling Debtor"), (viii) each affiliate of the EMEA Sellers listed on Schedule D of the Distribution Escrow Agreement (each such entity, an "EMEA ALT Selling Debtor," and together with the Sellers, the EMEA Sellers, NNSA and the North American ALT Selling Debtors, the "Depositors"), (ix) the Estate Fiduciaries (as defined in the Distribution Escrow Agreement), and (x) JPMorgan Chase Bank, N.A., as escrow and distribution agent under the Distribution Escrow Agreement (the "Distribution Agent"). Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

WITNESSETH:

WHEREAS, the Depositors, the Estate Fiduciaries and the Distribution Agent (the "Parties") desire to amend the Distribution Escrow Agreement.

WHEREAS, this Amendment has been approved by both the U.S. Bankruptcy Court and the Canadian Court as required pursuant to Paragraph 15(a) of the Distribution Escrow Agreement.

WHEREAS, on April 13, 2011 the NNI, Nortel Networks (UK) Limited (in administration) ("NNUK") and the Israeli Company entered into that certain Letter Agreement pursuant to which the Joint Israeli Administrators transferred all of the Israeli Company's right, title and interest in the Escrow Property to NNI and NNUK, jointly (the "Israeli Agreement").

WHEREAS the Parties acknowledge that the consideration exchanged by the parties to the Israeli Agreement was neither a reference to nor an indication of the ultimate value of the amount of the Escrow Property that may be attributed to the Israeli Company when the

allocation of the sales proceeds relating to the business of the Israeli Company is determined or otherwise agreed upon.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.    Amendment of Preamble.  The Preamble of the Distribution Escrow Agreement shall be amended to remove the phrase "and, in the case of the Israeli Company (as defined below), is acting by its joint administrators Yaron Har-Zvi and Avi D. Pelossof (the "**Joint Israeli Administrators**") who act as agents of the Israeli Company without any personal liability as set forth in Paragraph 20 below".

2.    Amendment of Recitals.  The fifth recital shall be deleted in its entirety. The tenth recital shall be amended to substitute the phrase "certain other parties" for the phrase "Joint Israeli Administrators."

3.    Amendment of Paragraph 20.  Paragraph 20 shall be amended to remove all references to the Israeli Companies and the Joint Israeli Administrators.  In particular, Paragraph 20(a) shall be amended and restated in full as follows:

Subject to Paragraph 20(c) below, the parties hereto agree that the Joint Administrators and the NNSA Office Holders in their respective capacities as administrators, in the case of the Joint Administrators, of the EMEA Debtors, and, in the case of the NNSA Office Holders, of NNSA, and for and on behalf of, in the case of the Joint Administrators, the EMEA Debtors, and, in the case of the NNSA Office Holders, NNSA, and that none of the Joint Administrators, the NNSA Office Holders, or their respective firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any EMEA Debtor or NNSA, as applicable, to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations, whether such liability would arise under Paragraph 99(4) of Schedule B1 to the Insolvency Act or otherwise howsoever.

Paragraph 20(b) shall be amended to remove the phrases "the Joint Israeli Administrators" and "the Israeli Company." Paragraph 20(c)(ii) shall be deleted in its entirety.

4.    Amendment of Schedules.  Schedule B of the Distribution Escrow Agreement shall be amended to remove the Israeli Company from the list of EMEA Sellers party to the Distribution Escrow Agreement.  Schedule E shall be amended to remove the standing settlement instructions for the Israeli Company.  Schedule F shall be amended to remove the notice address for the Israeli Company.  Schedule G shall be amended to remove the contact information for the Israeli Company.  Exhibit 1 shall be amended to remove the interest allocation percentage to the Israeli Company.

5.    Effect.  Upon the effectiveness of this Amendment, the Israeli Company shall immediately and irrevocably cease to be a Depositor under the Distribution Escrow

Agreement for any and all purposes, and the consent of the Israeli Company shall no longer be required for any purposes thereunder.  For the avoidance of doubt, and subject to that certain Irrevocable Power of Attorney executed by the Israeli Company, dated [●], 2011, appointing NNI and NNUK as agent and attorney-in-fact, no party appointed in any proceeding with respect to the the Israeli Company's estates, including, without limitation, any successor, assign, trustee, liquidator or similar person, shall have any rights, title, or interest under the Distribution Escrow Agreement.

6.    Authorization.  Each Party hereto represents to the others that (a) such party has all necessary power and authority to enter into this Amendment; (b) the execution and delivery by such Party of this Amendment has been duly authorized by all requisite corporate or other action on the part of such Party; and (c) this Amendment has been duly executed and delivered by such Party.

7.    Distribution Escrow Agreement Remains in Effect.  This Amendment and the Distribution Agreement set forth the entire agreement among the Parties with respect to the matters set forth herein.  Except as amended hereby, the Distribution Escrow Agreement shall remain in full force and effect, and nothing herein shall affect any other provision of the Escrow Agreement or the rights and obligations of the parties thereto.  This Amendment shall be governed by and interpreted and enforced in accordance with the terms of the Distribution Escrow Agreement.

8.    Counterparts.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement, it being understood that all of the Parties need not sign the same counterpart. All signatures of the parties to this Amendment may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.

*[Signature pages follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed on the day and year first above written.

NORTEL NETWORKS LIMITED

By:_____
Name:
Title:

By:_____
Name:
Title:

NORTEL NETWORKS CORPORATION

By:_____
Name:
Title:

By:_____
Name:
Title:

NORTEL NETWORKS INC.

By:_____
Name:
Title:

DISTRIBUTION AGENT

JPMorgan Chase Bank, N.A., as Distribution Agent

By:_____
Name:
Title:

ERNST & YOUNG INC. IN ITS CAPACITY AS THE MONITOR OF NORTEL NETWORKS CORPORATION ET AL., AND NOT IN ITS PERSONAL CAPACITY

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NORTEL NETWORKS INC., ET. AL.

By:  AKIN GUMP STRAUSS HAUER & FELD LLP, as Counsel to the Committee and authorized signatory and not in its individual capacity

By:_____
Name:
Title:

By:_____
Name:
Title:

S-1

**ARCHITEL SYSTEMS (U.S.)**
**CORPORATION**


By: _____
Name:
Title:



**NORTEL ALTSYSTEMS INC.**


By: _____
Name:
Title:



**NORTEL ALTSYSTEMS**
**INTERNATIONAL INC.**


By: _____
Name:
Title:



**NORTEL NETWORKS APPLICATIONS**
**MANAGEMENT SOLUTIONS INC.**


By: _____
Name:
Title:

**NORTEL NETWORKS CABLE
SOLUTIONS INC.**

By:_____
Name:
Title:

**NORTEL NETWORKS CAPITAL
CORPORATION**

By _____
Name:
Title:

**NORTEL NETWORKS HPOCS INC.**

By _____
Name:
Title:

**NORTEL NETWORKS INTERNATIONAL
INC.**

By:_____
Name:
Title:

**NORTEL NETWORKS OPTICAL
COMPONENTS INC.**

By _____
Name:
Title:

**NORTHERN TELECOM
INTERNATIONAL INC.**


By:_____
Name:
Title:


**SONOMA SYSTEMS**


By _____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS TECHNOLOGY CORPORATION** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS DE COLOMBIA S.A.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS DE MEXICO S.A. DE C.V.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL DE MEXICO S. DE R.L. DE C.V.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS PERU S.A.C.** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS AUSTRALIA PTY. LIMITED** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **PT NORTEL NETWORKS INDONESIA** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS MALAYSIA SDN. BHD.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS NEW ZEALAND LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By: _____
Name:
Title:

By: _____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS SINGAPORE PTE. LTD** by

NORTEL NETWORKS LIMITED, as Representative

By: _____
Name:
Title:

By: _____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (ASIA) LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:


By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (CHINA) LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (THAILAND) LTD** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL VIETNAM LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:
Title:

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS TELECOMMUNICATIONS EQUIPMENT (SHANGHAI) CO. LIMITED** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:


**SIGNED** in the name and on behalf of **NORTEL NETWORKS DE ARGENTINA S.A.** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS DE ECUADOR S.A.** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:
Title:


By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS DE GUATEMALA LTDA.** by

NORTEL NETWORKS INC., as Representative

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (CALA) INC.** by

NORTEL NETWORKS INC., as Representative

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL TRINIDAD & TOBAGO LIMITED** by

NORTEL NETWORKS INC., as Representative

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **NORTEL NETWORKS KABUSHIKI KAISHA** by

NORTEL NETWORKS INC., as Representative

By:_____
Name:
Title:

**SIGNED** in the name and on behalf of **QTERA CORPORATION** by

NORTEL NETWORKS INC., as Representative

By: _____
Name:
Title:

**SIGNED** in the name and on behalf of **XROS, INC.** by

NORTEL NETWORKS CORPORATION, as Representative

By: _____
Name:
Title:

By: _____
Name:
Title:

**SIGNED** in the name and on behalf of **CORETEK, INC.** by

NORTEL NETWORKS CORPORATION, as Representative

By: _____
Name:
Title:

By: _____
Name:
Title:

*CGSH DRAFT 5/17/2011*
*PRIVILEGED & CONFIDENTIAL*

**SIGNED** for and on behalf of **Nortel Networks**  )  .................................................................
**UK Limited** (in administration) by as Joint  )
Administrator (acting as agent and without  )
personal liability) in the presence of:  )

Witness signature

..............................................................  )
Name:  )
Address:  )

**SIGNED** for and on behalf of **Nortel GmbH** (in  )  ................................................................
administration) by as Joint Administrator (acting  )
as agent and without personal liability) in the  )
presence of:  )

Witness signature

..............................................................  )
Name:  )
Address:  )

**SIGNED** for and on behalf of **Nortel Networks**     )     ...............................................................
**SpA** (in administration) by as Joint     )
Administrator (acting as agent and without     )
personal liability) in the presence of:     )

Witness signature

............................................................     )
Name:     )
Address:     )

**SIGNED** for and on behalf of **Nortel Networks**     )     ...............................................................
**Hispania S.A.** (in administration) by as Joint     )
Administrator (acting as agent and without     )
personal liability) in the presence of:     )

Witness signature

............................................................     )
Name:     )
Address:     )

**SIGNED** for and on behalf of **Nortel Networks**
**B.V.** (in administration) by as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)

.................................................................

Witness signature

.............................................................
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **Nortel Networks**
**AB** (in administration) by as Joint Administrator
(acting as agent and without personal liability) in
the presence of:

)
)
)
)

.................................................................

Witness signature

.............................................................
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **Nortel Networks**   )      ............................................................
**N.V.** (in administration) by as Joint          )
Administrator (acting as agent and without    )
personal liability) in the presence of:       )

Witness signature

............................................................    )
Name:                                    )
Address:                             )

**SIGNED** for and on behalf of **Nortel Networks**   )      ............................................................
**(Austria) GmbH** (in administration) by as Joint   )
Administrator (acting as agent and without    )
personal liability) in the presence of:       )

Witness signature

............................................................    )
Name:                                    )
Address:                             )

**SIGNED** for and on behalf of **Nortel Networks**  )          .................................................................
**Portugal S.A.** (in administration) by as Joint        )
Administrator (acting as agent and without             )
personal liability) in the presence of:                )

Witness signature

...........................................................          )
Name:                                                 )
Address:                                              )

**SIGNED** for and on behalf of **Nortel Networks**  )          .................................................................
**s.r.o.** (in administration) by as Joint            )
Administrator (acting as agent and without             )
personal liability) in the presence of:                )

Witness signature

...........................................................          )
Name:                                                 )
Address:                                              )

**SIGNED** for and on behalf of **Nortel Networks** )  ...............................................................
**Polska Sp. z.o.o.** (in administration) by as Joint )
Administrator (acting as agent and without )
personal liability) in the presence of: )

Witness signature

............................................................... )
Name: )
Address: )

**SIGNED** for and on behalf of **Nortel Networks** )  ...............................................................
**Engineering Service kft** (in administration) by )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )

Witness signature

............................................................... )
Name: )
Address: )

**SIGNED** for and on behalf of **Nortel Networks**   )   ..............................................................
**Slovensko s.r.o.** (in administration) by as Joint   )
Administrator (acting as agent and without   )
personal liability) in the presence of:   )

Witness signature

..........................................................   )
Name:   )
Address:   )

**SIGNED** for and on behalf of **Nortel Networks**   )   ..............................................................
**Romania Srl** (in administration) by as Joint   )
Administrator (acting as agent and without   )
personal liability) in the presence of:   )

Witness signature

..........................................................   )
Name:   )
Address:   )

**SIGNED** for and on behalf of **Nortel Networks**          )          ...............................................................
**Oy** (in administration) by as Joint Administrator          )
(acting as agent and without personal liability) in          )
the presence of:          )

Witness signature

.......................................................          )
Name:          )
Address:          )

**SIGNED** for and on behalf of **Nortel Networks**          )          ...............................................................
**International Finance & Holding B.V.** (in          )
administration) by as Joint Administrator (acting          )
as agent and without personal liability) in the          )
presence of:

Witness signature
          )
.......................................................          )
Name:          )
Address:

**SIGNED** for and on behalf of **Nortel Networks**  )     ...............................................................
**France S.A.S.** (in administration) by as Joint  )
Administrator (acting as agent and without  )
personal liability) in the presence of:  )


Witness signature

...........................................................  )
Name:  )
Address:  )


**SIGNED** for and on behalf of **Nortel Networks**  )     ...............................................................
**(Ireland) Limited** (in administration) by as  )
Joint Administrator (acting as agent and without  )
personal liability) in the presence of:  )


Witness signature

...........................................................  )
Name:  )
Address:  )

**SIGNED** for and on behalf of **Nortel Networks**                    )    ...............................................................
**Networks (Northern Ireland) Limited** (in                            )
administration) by as Joint Administrator (acting                      )
as agent and without personal liability) in the                        )
presence of:                                                           )


Witness signature
                                                                       )
...............................................................        )
Name:                                                                  )
Address:




**SIGNED** for and on behalf of **o.o.o. Nortel**                      )    ...............................................................
**Networks International Finance & Holding**                           )
**B.V.** (in administration) by as Joint                               )
Administrator (acting as agent and without                             )
personal liability) in the presence of:


Witness signature
                                                                       )
...............................................................        )
Name:                                                                  )
Address:

**SIGNED** for and on behalf of **Nortel Networks** )    ................................................................
**AG** (in administration) by as Joint Administrator )
(acting as agent and without personal liability) in )
the presence of: )

Witness signature

.............................................................. )
Name: )
Address: )

**SIGNED** for and on behalf of **Nortel Networks** )    ................................................................
**Optical Components Limited** (in )
administration) by as Joint Administrator (acting )
as agent and without personal liability) in the )
presence of: )

Witness signature

)
.............................................................. )
Name: )
Address:

**SIGNED** in his own capacity and on behalf of )        ............................................................
the Joint Administrators without personal          )
liability and solely for the benefit of the        )
provisions of this Agreement expressed to be       )
conferred on or given to the Joint
Administrators:


Witness signature
                                                   )
............................................................ )
Name:                                              )
Address:




**SIGNED** for and on behalf of **Nortel Networks** )        ............................................................
**Israel (Sales and Marketing) Limited** (in        )
administration) by as Joint Israeli Administrators  )
(acting jointly and without personal liability) in  )
connection with the Israeli Assets  and
Liabilities:


Witness signature
                                                   )
                                                   )
............................................................ )
Name:
Address:

**SIGNED** by in his own capacity and on behalf )          ....................................................................
of the Joint Israeli Administrators without )
personal liability and solely for the benefit of the )
provisions of this Agreement expressed to be )
conferred on or given to the Joint Israeli
Administrators:


Witness signature                                    )
                                                     )
....................................................  )
Name:
Address:




**SIGNED** by in his own capacity and on behalf )          ....................................................................
of the Joint Israeli Administrators without )
personal liability and solely for the benefit of the )
provisions of this Agreement expressed to be )
conferred on or given to the Joint Israeli
Administrators:


Witness signature                                    )
                                                     )
....................................................  )
Name:
Address:

**SIGNED** his own capacity and on behalf of the )     ...............................................................
Joint Israeli Administrators without personal )
liability and solely for the benefit of the )
provisions of this Agreement expressed to be )
conferred on or given to the Joint Israeli
Administrators:


Witness signature )
)
...........................................................   )
Name:
Address:


**SIGNED** for and on behalf of **NORTEL** )     ..............................................................
**NETWORKS SA (IN** )
**ADMINISTRATION)** by as liquidator )
(acting as agent and without personal )
liability) and by as administrator (acting as
agent and without personal liability) in the
presence of:


)
)
Witness signature )

...........................................................
Name:
Address:

**AMENDMENT TO MSS DISTRIBUTION ESCROW AGREEMENT**

**AMENDMENT TO MSS DISTRIBUTION ESCROW AGREEMENT**

This Amendment, dated as of [●], 2011 (this "Amendment") to the MSS Distribution Escrow Agreement (the "Distribution Escrow Agreement"), dated as of March 11, 2011, is by and among (i) Nortel Networks Corporation ("NNC"), (ii) Nortel Networks Limited ("NNL"), (iii) Nortel Networks Inc. ("NNI," and together with NNC and NNL, the "Main Sellers"), (iv) the affiliates of the Main Sellers listed on Schedule A of the Distribution Escrow Agreement (collectively, the "Other Sellers" and, together with the Main Sellers, the "Sellers"), (v) the companies listed on Schedule B of the Distribution Escrow Agreement (the "EMEA Sellers"), which in the case of the EMEA Sellers are acting by their joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively, the "Joint Administrators")) who act as agents for the EMEA Debtors (as defined in the Distribution Escrow Agreement), and, in the case of the Israeli Company (as defined in the Distribution Escrow Agreement), is acting by its joint administrators Yaron Har-Zvi and Avi D. Pelossof (the "Joint Israeli Administrators"), (vi) Nortel Networks S.A. (In Administration) ("NNSA", together with the Sellers and the EMEA Sellers, the "Depositors" ) acting by the French Liquidator (as defined in the Distribution Escrow Agreement), (vii) the Estate Fiduciaries (as defined in the Distribution Escrow Agreement), and (x) JPMorgan Chase Bank, N.A., as escrow and distribution agent under the Distribution Escrow Agreement (the "Distribution Agent").  Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

WITNESSETH:

WHEREAS, the Depositors, the Estate Fiduciaries and the Distribution Agent (the "Parties") desire to amend the Distribution Escrow Agreement.

WHEREAS, this Amendment has been approved by both the U.S. Bankruptcy Court and the Canadian Court as required pursuant to Paragraph 14(a) of the Distribution Escrow Agreement.

WHEREAS, on April 13, 2011 the NNI, Nortel Networks (UK) Limited (in administration) ("NNUK") and the Israeli Company entered into that certain Letter Agreement pursuant to which the Joint Israeli Administrators transferred all of the Israeli Company's right, title and interest in the Escrow Property to NNI and NNUK, jointly (the "Israeli Agreement").

WHEREAS the Parties acknowledge that the consideration exchanged by the parties to the Israeli Agreement was neither a reference to nor an indication of the ultimate value of the amount of the Escrow Property that may be attributed to the Israeli Company when the allocation of the sales proceeds relating to the business of the Israeli Company is determined or otherwise agreed upon.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.     Amendment of Preamble.  The Preamble of the Distribution Escrow Agreement shall be amended to remove the phrase "and, in the case of the Israeli Company (as defined below), is acting by its joint administrators Yaron Har-Zvi and Avi D. Pelossof (the "**Joint Israeli Administrators**") who act as agents of the Israeli Company without any personal liability as set forth in Paragraph 19 below".

2.     Amendment of Recitals.  The sixth recital shall be deleted in its entirety. The eighth and eighteenth recitals shall be amended to substitute the phrase "certain other parties" for the phrase "Joint Israeli Administrators."

3.     Amendment of Paragraph 15.  Paragraph 15 shall be amended to remove the phrase "and the Joint Israeli Administrators."

4.     Amendment of Paragraph 19.  Paragraph 19 shall be amended to remove all references to the Israeli Companies and the Joint Israeli Administrators.  In particular, Paragraph 19(a) shall be amended and restated in full as follows:

> Subject to Paragraph 19(c) below, the parties hereto agree that the Joint Administrators have negotiated this Agreement in their capacities as administrators of the EMEA Debtors, and for and on behalf of the EMEA Debtors, and that none of the Joint Administrators or their respective firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any EMEA Debtor to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations, whether such liability would arise under Paragraph 99(4) of Schedule B1 to the Insolvency Act or otherwise howsoever.

Paragraph 19(c) shall be amended and restated in full as follows:

> Nothing in this Section 19 or any other provision of this Agreement shall prevent the Sellers or the Distribution Agent from bringing any action against the EMEA Debtors, NNSA, the NNSA Office Holders or the Joint Administrators for fraud.

Paragraph 19(d)(iii) shall be deleted in its entirety.

4.     Amendment of Schedules.  Schedule B of the Distribution Escrow Agreement shall be amended to delete Part 3 in full.  Schedule C shall be amended to remove the standing settlement instructions for the Israeli Company.  Schedule D shall be amended to remove the Israeli Company from the list of Depositors under the Distribution Escrow Agreement. Schedule E shall be amended to remove the persons designated to give funds transfer instructions for the Israeli Company.

5.     Effect.  Upon the effectiveness of this Amendment, the Israeli Company shall immediately and irrevocably cease to be a Depositor under the Distribution Escrow Agreement for any and all purposes, and the consent of the Israeli Company shall no longer be required for any purposes thereunder.  For the avoidance of doubt, and subject to that certain Irrevocable Power of Attorney executed by the Israeli Company, dated [●], 2011, appointing

NNI and NNUK as agent and attorney-in-fact, no party appointed in any proceeding with respect to the Israeli Company's estates, including, without limitation, any successor, assign, trustee, liquidator or similar person, shall have any rights, title, or interest under the Distribution Escrow Agreement.

6       Authorization.  Each Party hereto represents to the others that (a) such party has all necessary power and authority to enter into this Amendment; (b) the execution and delivery by such Party of this Amendment has been duly authorized by all requisite corporate or other action on the part of such Party; and (c) this Amendment has been duly executed and delivered by such Party.

7.      Distribution Escrow Agreement Remains in Effect.  This Amendment and the Distribution Escrow Agreement set forth the entire agreement among the Parties with respect to the matters set forth herein.  Except as amended hereby, the Distribution Escrow Agreement shall remain in full force and effect, and nothing herein shall affect any other provision of the Distribution Escrow Agreement or the rights and obligations of the parties thereto.  This Amendment shall be governed by and interpreted and enforced in accordance with the terms of the Distribution Escrow Agreement.

8.      Counterparts.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement, it being understood that all of the Parties need not sign the same counterpart. All signatures of the parties to this Amendment may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.

*[Signature pages follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed on the day and year first above written.

NORTEL NETWORKS LIMITED                    NORTEL NETWORKS CORPORATION


By:_____              By:_____
Name:                                      Name:
Title:                                     Title:


By:_____              By:_____
Name:                                      Name:
Title:                                     Title:


NORTEL NETWORKS INC.


By:_____
Name:
Title:


ERNST & YOUNG INC. IN ITS CAPACITY         THE OFFICIAL COMMITTEE OF
AS THE MONITOR OF NORTEL                   UNSECURED CREDITORS OF NORTEL
NETWORKS CORPORATION ET AL.,               NETWORKS INC., ET. AL.
AND NOT IN ITS PERSONAL CAPACITY
                                           By:  AKIN GUMP STRAUSS HAUER &
                                           FELD LLP, as Counsel to the Committee and
                                           authorized signatory and not in its individual
                                           capacity


By:_____              By:_____
Name:                                      Name:
Title:                                     Title:

**NORTEL NETWORKS TECHNOLOGY CORPORATION**


By:_____
Name:  John M. Doolittle
Title:    Director


**NORTEL NETWORKS DE MEXICO, S.A. DE C.V.**


By:_____
Name:  Karla Lizet Dorantes Aguilar
Title:    Attorney-in-fact


**NORTEL DE MEXICO, S. DE R.L. DE C.V.**


By:_____
Name:  Karla Lizet Dorantes Aguilar
Title:    Attorney-in-fact


**NORTEL NETWORKS PERU S.A.C.**


By:_____
Name:  Luis Gastañeta
Title:    Attorney-in-fact

**NORTEL NETWORKS AUSTRALIA PTY LIMITED**


By:_____
Name:  John M. Doolittle
Title:    Director


**NORTEL NETWORKS MALAYSIA SDN. BHD.**


By:_____
Name:  John M. Doolittle
Title:    Director


**NORTEL NETWORKS NEW ZEALAND LIMITED**


By:_____
Name:  John M. Doolittle
Title:    Director


**PT NORTEL NETWORKS INDONESIA**


By:_____
Name:  John M. Doolittle
Title:    Director

**NORTEL NETWORKS SINGAPORE PTE. LIMITED**


By:_____
Name:  John M. Doolittle
Title:    Director


**NORTEL NETWORKS (ASIA) LIMITED**


By:_____
Name:  John M. Doolittle
Title:    Director


**NORTEL NETWORKS (CHINA) LIMITED**


By:_____
Name:  John M. Doolittle
Title:    Director


**NORTEL NETWORKS (THAILAND) LTD.**


By:_____
Name:  John M. Doolittle
Title:    Director

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (CALA) INC.** by

NORTEL NETWORKS INC., as Representative

By:_____
Name:  Christopher Ricaurte
Title:    President

**SIGNED** in the name and on behalf of **NORTEL NETWORKS INTERNATIONAL INC.** by

NORTEL NETWORKS INC., as Representative

By:_____
Name:  Christopher Ricaurte
Title:    President

NORTEL NETWORKS INC., as Representative

By:_____
Name:  Christopher Ricaurte
Title:    President

**SIGNED** for and on behalf of **NORTEL** )    ………………………………………..
**NETWORKS UK LIMITED** (in )    Christopher Hill
administration) by **CHRISTOPHER HILL** )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )

Witness signature

………………………………………..    )
Name:    )
Address:    )
**SIGNED** for and on behalf of **NORTEL** )    ………………………………………..
**NETWORKS NV** (in administration) by )    Christopher Hill
**CHRISTOPHER HILL** as Joint )
Administrator (acting as agent and without )
personal liability) in the presence of: )

Witness signature

………………………………………..    )
Name:    )
Address:    )

**SIGNED** for and on behalf of **NORTEL** )    ………………………………………
**NETWORKS SPA** (in administration) by )    Christopher Hill
**CHRISTOPHER HILL** as Joint )
Administrator (acting as agent and without )
personal liability) in the presence of: )

Witness signature

………………………………………..    )
Name:    )
Address:    )

**SIGNED** for and on behalf of **NORTEL** )    ………………………………………
**NETWORKS BV** (in administration) by )    Christopher Hill
**CHRISTOPHER HILL** as Joint )
Administrator (acting as agent and without )
personal liability) in the presence of: )

………………………………………
Witness signature

9

Name:                                                    )
Address:                                                 )

**SIGNED** for and on behalf of **NORTEL**      )      ………………………………………
**NETWORKS POLSKA SP Z.O.O.** (in               )      Christopher Hill
administration) by **CHRISTOPHER HILL**         )
as Joint Administrator (acting as agent and     )
without personal liability) in the presence of: )


Witness signature

………………………………………….      )
Name:                                                    )
Address:                                                 )

**SIGNED** for and on behalf of **NORTEL**      )      ………………………………………
**NETWORKS HISPANIA SA** (in                    )      Christopher Hill
administration) by **CHRISTOPHER HILL**         )
as Joint Administrator (acting as agent and     )
without personal liability) in the presence of: )


Witness signature

………………………………………….      )
Name:                                                    )
Address:                                                 )

**SIGNED** for and on behalf of **NORTEL**      )      ………………………………………
**NETWORKS (AUSTRIA) GMBH** (in                 )      Christopher Hill
administration) by **CHRISTOPHER HILL**         )
as Joint Administrator (acting as agent and     )
without personal liability) in the presence of: )


Witness signature

………………………………………….      )
Name:                                                    )
Address:                                                 )

**SIGNED** for and on behalf of **NORTEL NETWORKS PORTUGAL SA** (in administration) by **CHRISTOPHER HILL** as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)
)

…………………………………………
Christopher Hill

Witness signature

…………………………………………
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL GMBH** (in administration) by **CHRISTOPHER HILL** as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)
)

…………………………………………
Christopher Hill

Witness signature

…………………………………………
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL NETWORKS AB** (in administration) by **CHRISTOPHER HILL** as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)
)

…………………………………………
Christopher Hill

Witness signature

…………………………………………
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL NETWORKS (IRELAND) LIMITED** (in administration) by **CHRISTOPHER HILL** as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)
)

…………………………………………
David Hughes

Witness signature

………………………………………….    )
Name:                                    )
Address:                                 )


SIGNED by Simon Freemantle               )
Duly authorized for and on behalf of **NORTEL**
**NETWORKS AG** in the presence of:
                                         )    Simon Freemantle
                                         )
                                         )


Witness signature

………………………………………….    )
Name:                                    )
Address:                                 )


**SIGNED** for and on behalf of **Nortel Networks**    )    ………………………………………….
**Slovensko s.r.o.** (in administration) by            )    Christopher Hill
Christopher Hill                                        )
as Joint Administrator (acting as agent and            )
without personal liability) in the presence of:        )


Witness signature

………………………………………….    )
Name:                                    )
Address:                                 )

**SIGNED** for and on behalf of **Nortel Networks**    )    ………………………………………….
**s.r.o.** (in administration) by                      )    Christopher Hill
Christopher Hill                                        )
as Joint Administrator (acting as agent and            )
without personal liability) in the presence of:        )


Witness signature

………………………………………….    )

12

Name:                                          )
Address:                                       )


**SIGNED** for and on behalf of **Nortel Networks**    )    …………………………………………….
**Romania s.r.l.** (in administration) by              )    Christopher Hill
Christopher Hill                                       )
as Joint Administrator (acting as agent and            )
without personal liability) in the presence of:        )


Witness signature

…………………………………………….    )
Name:                                          )
Address:                                       )

**SIGNED** for and on behalf of **Nortel Networks**  )      ……………………………………………
**France S.A.S.** (in administration) by Kerry          )      Kerry Trigg
Trigg acting as authorised representative for          )
Stephen Harris as Joint Administrator (acting as       )
agent and without personal liability) in the           )
presence of:                                           )


Witness signature

……………………………………………      )
Name:                                         )
Address:                                      )

14

SIGNED for and on behalf of **Nortel Networks Israel (Sales and Marketing) Limited** (in administration) by Yaron Har-Zvi and Avi D. Pelossof as Joint Israeli Administrators (acting jointly and without personal liability) in connection with the Israeli Assets and Liabilities:

)
)
)
)
)
)
)
)
)

………………………………………………

Yaron Har-Zvi

………………………………………………

Avi D. Pelossof

Witness signature

…………………………………………………

Name:

Address:

)
)
)

SIGNED for and on behalf of **NORTEL**          )          …………………………………………………
**NETWORKS S.A.** (in administration and          )          Maître Cosme Rogeau
liquidation judiciaire) by **MAÎTRE COSME**          )
**ROGEAU** as *Mandataire Judiciaire* (acting as          )
agent and without personal liability) in the          )
presence of:          )


Witness signature


…………………………………………          )
Name:          )
Address:          )

**NORTEL NETWORKS JAPAN (NORTEL NETWORKS KABUSHIKI KAISHA)**


By:_____
Name:  John Ray
Title:   Director

**NORTEL NETWORKS TELECOMMUNICATIONS EQUIPMENT (SHANGHAI) CO., LTD.**

By:_____
Name:  John Marshall Doolittle
Title:    Chairman of the Board and Legal Representative

**AMENDMENT TO RADWARE ESCROW AGREEMENT**

## AMENDMENT TO RADWARE ESCROW AGREEMENT

This Amendment, dated as of [●], 2011 (this "Amendment") to the Radware Distribution Escrow Agreement (the "Distribution Escrow Agreement"), dated as of March 31, 2009, is by and among (i) Nortel Networks Inc. ("NNI"), acting on behalf of itself and on behalf of its wholly-owned subsidiary Alteon WebSystems Inc., (ii) Nortel Networks Limited ("NNL"), acting on behalf of itself and on behalf of Nortel Networks Technology Corporation and NNL's wholly-owned subsidiaries identified as Non-Debtor Nortel Networks Entities on Exhibit I of the Distribution Escrow Agreement (collectively, the "Non-Debtor Nortel Networks Entities"), those entities listed under the heading EMEA Sellers on the signature pages of the Distribution Escrow Agreement (collectively, the "Depositors" and each a "Depositor"), and A.R. Bloom, S. Harris, A. M. Hudson and C. Hill of Ernst & Young LLP, in their capacity as the joint administrators of the EMEA Sellers (other than Nortel Networks (Ireland) Limited) and A.R. Bloom and D. Hughes in their capacity as the joint administrators of Nortel Networks (Ireland) Limited (the "Joint Administrators"), and JP Morgan Chase Bank, N.A., as escrow agent ("Escrow Agent"). Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

WITNESSETH:

WHEREAS, the Requisite Depositors, the Joint Administrators and the Escrow Agent (the "Parties") desire to amend the Distribution Escrow Agreement.

WHEREAS, this Amendment has been approved by both the U.S. Bankruptcy Court and the Applicable Canadian Court as required pursuant to Paragraph 15(a) of the Distribution Escrow Agreement.

WHEREAS, on April 13, 2011 the NNI, Nortel Networks (UK) Limited (in administration) ("NNUK") and Nortel Networks Israel (Sales and Marketing) Limited (the "Israeli Company") entered into that certain Letter Agreement pursuant to which the Joint Israeli Administrators transferred all of the Israeli Company's right, title and interest in the Escrow Funds to NNI and NNUK, jointly (the "Israeli Agreement").

WHEREAS the Parties acknowledge that the consideration exchanged by the parties to the Israeli Agreement was neither a reference to nor an indication of the ultimate value of the amount of the Escrow Funds that may be attributed to the Israeli Company when the allocation of the sales proceeds relating to the business of the Israeli Company is determined or otherwise agreed upon.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.    Exhibit I.  Exhibit I shall be amended to remove the entry for the Israeli Company, and the 0.0333% Interest Allocation Percentage attributed to the Israeli Company shall be divided between NNUK and Nortel Networks Inc., such that 0.0200% is added to the

NNUK Interest Allocation Percentage, and 0.0133% is added to the Nortel Networks Inc. Interest Allocation Percentage.

2.    <u>Effect</u>.  Upon the effectiveness of this Amendment, the Israeli Company shall immediately and irrevocably cease to be a Non-Debtor Nortel Networks Entity under the Distribution Escrow Agreement for any and all purposes.  For the avoidance of doubt, and subject to that certain Irrevocable Power of Attorney executed by the Israeli Company, dated [●], 2011, appointing NNI and NNUK as agent and attorney-in-fact, no party appointed in any proceeding with respect to the Israeli Company's estates, including, without limitation, any successor, assign, trustee, liquidator or similar person, shall have any rights, title, or interest under the Distribution Escrow Agreement.

3.    <u>Authorization</u>.  Each Party hereto represents to the others that (a) such party has all necessary power and authority to enter into this Amendment; (b) the execution and delivery by such Party of this Amendment has been duly authorized by all requisite corporate or other action on the part of such Party; and (c) this Amendment has been duly executed and delivered by such Party.

4.    <u>Distribution Escrow Agreement Remains in Effect</u>.  This Amendment and the Distribution Escrow Agreement set forth the entire agreement among the Parties with respect to the matters set forth herein.  Except as amended hereby, the Distribution Escrow Agreement shall remain in full force and effect, and nothing herein shall affect any other provision of the Distribution Escrow Agreement or the rights and obligations of the parties thereto.  This Amendment shall be governed by and interpreted and enforced in accordance with the terms of the Distribution Escrow Agreement.

5.    <u>Counterparts</u>.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement, it being understood that all of the Parties need not sign the same counterpart. All signatures of the parties to this Amendment may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.

*[Signature pages follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed on the day and year first above written.

NORTEL NETWORKS INC. , on behalf of itself and Alteaon WebSystems Inc.

_____

Name:  Hyacinth DeAlmeida
Title:  Leader, Corporate Business Development

NORTEL NETWORKS LIMITED, on behalf of itself, Nortel Networks Technology Corporation and the Non-Debtor Nortel Networks Entities

_____

Name:
Title:

_____

Name:
Title:

**EMEA SELLERS**

NORTEL NETWORKS UK LIMITED (in administration) by C. Hill as Joint Administrator (acting as agent and without personal liability)

_____

Name:
Title:

NORTEL NETWORKS N.V. (in administration) by C. Hill as Joint Administrator (acting as agent and without personal liability)

_____

Name:
Title:


NORTEL NETWORKS S.A. (in administration) by Kerry Trigg acting as authorised representative for C. Hill as Joint Administrator (acting as agent and without personal liability) under an authorisation dated 15 January 2009

_____

Name:
Title:


NORTEL NETWORKS FRANCE S.A.S. (in administration) by Kerry Trigg acting as authorised representative for C. Hill as Joint Administrator (acting as agent and without personal liability) under an authorisation dated 15 January 2009

_____

Name:  Kerry Trigg
Title:    Authorized Representative


NORTEL NETWORKS (AUSTRIA) GMBH (in administration) by C. Hill as Joint Administrator (acting as agent and without personal liability)

_____

Name:
Title:

NORTEL NETWORKS, S.R.O. (in administration) by C. Hill as Joint Administrator (acting as agent and without personal liability)


_____
Name:
Title:

NORTEL NETWORKS AB – DENMARK BRANCH (in administration) by C. Hill as Joint Administrator (acting as agent and without personal liability)


_____
Name:
Title:

NORTEL NETWORKS B.V. (in administration) by C. Hill as Joint Administrator (acting as agent and without personal liability)


_____
Name:
Title:


NORTEL GMBH (in administration) by C. Hill as Joint Administrator (acting as agent and without personal liability)


_____
Name:
Title:

NORTEL NETWORKS (IRELAND) LIMITED (in administration) by D. Hughes as Joint Administrator (acting as agent and without personal liability)

_____

Name:
Title:

NORTEL NETWORKS S.P.A. (in administration) by C. Hill as Joint Administrator (acting as agent and without personal liability)

_____

Name:
Title:

NORTEL NETWORKS POLSKA SP. Z O.O. (in administration) by C. Hill as Joint Administrator (acting as agent and without personal liability)

_____

Name:
Title:

NORTEL NETWORKS PORTUGAL S.A. (in administration) by C. Hill as Joint Administrator (acting as agent and without personal liability)

_____

Name:
Title:

6

NORTEL NETWORKS ROMANIA SRL (in administration) by C. Hill as Joint Administrator (acting as agent and without personal liability)

_____
Name:
Title:


## JOINT ADMINISTRATORS

C. HILL, in his own capacity and on behalf of the Joint Administrators without personal liability and solely for the benefit of the provisions of this Agreement expressed to be conferred on or given to the Joint Administrators:

_____
Name:
Title:


## ESCROW AGENT

JP MORGAN CHASE BANK, N.A., as Escrow Agent


By: _____
Name:  Natalie B. Pesce
Title:    Vice President

7

**IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED**
**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION et al.**

Court File No: 09-CL-7950

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

---

**SIXTY-EIGHTH REPORT OF THE MONITOR**
**DATED JUNE 3, 2011**

---

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7

Jay A. Carfagnini  (LSUC#: 222936)
Joseph Pasquariello (LSUC# 37389C)
Christopher G. Armstrong (LSUC# 55148B)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.