## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Hearing Date: June 21, 2011 at 9:30 a.m.** |
| | ) | **Objections Due: June 14, 2011 at 4:00 p.m.** |

## MOTION FOR ENTRY OF AN ORDER PURSUANT TO
## SECTION 1102(a)(2) OF THE BANKRUPTCY CODE APPOINTING AN
## OFFICIAL COMMITTEE OF LONG-TERM DISABILITY PLAN PARTICIPANTS

Barbara Gallagher and 58 other disabled individuals (the "Disabled Participants") of the total 245 disabled individuals ("LTD Plan Participants") who are participants in the long-term disability plan (the "LTD Plan") of the above-captioned debtors (collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court (the "Motion") for entry of an order pursuant to section 1102(a)(2) of title 11 of the United States Code, 11 U.S.C. § 101, *et al.* (the "Bankruptcy Code"), (i) directing the appointment of a committee (the "LTD Committee") to serve as the official representative for the Debtors' LTD Plan participants; and (ii) granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Disabled Participants respectfully represent as follows:

---

[1]    The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

**Preliminary Statement**

1.      The LTD Plan Participants are a diverse group in terms of economic means; some have been able to contribute to their representation in the bankruptcy cases on a very limited basis, but a large number have no such ability.  Some are able to function on their own volition despite their disability, but many are under guardianship and unable to care for themselves without full time care.  It is no understatement that all of them are severely disabled and the result of the disposition of their interests in this bankruptcy case will be life changing for them.

2.      In the case of the LTD Plan Participants, there is a need for both these creditors and the estate to reach a resolution regarding their interests, but a lack of any avenue for doing so other than the appointment of an additional committee under section 1102(a)(2) of the Bankruptcy Code.  As detailed herein and in the *Debtors' Motion of Entry of an Order Pursuant to Section 1114 of the Bankruptcy Code Appointing an Official Committee of Retired Employees* (the "Retiree Committee Motion") (Docket No. 5568), and deduced from discussions between the Disabled Participant's counsel with each of the following constituencies in the case, there is a recognition by the United States Trustee (the "UST"), the Official Committee of Unsecured Creditors (the "Creditors Committee") and the Disabled Participants, that the LTD Plan Participants and the estate would benefit from the LTD Plan Participants engagement in the collective bargaining and negotiation that will be afforded to the retirees pursuant to the proposed Retiree Committee Motion -- but that the Bankruptcy Code does not allow their full participation under section 1114 of the Bankruptcy Code.

3.      Likewise, in discussions with counsel to the Creditors Committee, the issue of recusal of the LTD Plan Participants from the issues they need resolved by Committee counsel,

because of their unique interests in the case was cited as an obstacle to providing this constituency adequate representation in the case.

4.      The Disabled Participants believe that without an official committee in place they may not be able to actively and appropriately negotiate and take advantage of the settlement discussions that will be occurring if an official committee of retirees is appointed and discussions begin under the process contemplated under section 1114 of the Bankruptcy Code.

5.      The Disabled Participants have not submitted a written request to the UST for the appointment of an official committee of LTD Plan Participants because the Disabled Participants had been in discussions with the Debtors in regards to formation of a committee in which the Disabled Participants would have some involvement, but nothing had been agreed upon and the Debtors had not shared the final draft of their Retiree Committee Motion until shortly before filing it on June 2, 2011.  In order to have a motion timely heard to request the appointment of an additional committee, the Disabled Participants were required to file a motion by June 3, 2011. In light of these circumstances, the Disabled Participants request that this Motion also serve as their formal written request to the United States Trustee for the appointment of a LTD Committee.  Counsel for the Disabled Participants have had informal discussions with the UST that have included the potential appointment of an additional committee, and looks forward to continuing a dialogue with the UST regarding these issues.

6.      The Debtors and undersigned counsel have been in discussions, for quite some time and the Retiree Committee Motion is the result of both parties' efforts to try and find an acceptable consensual resolution that not only addresses the interests of the 59 Disabled Participants currently represented by undersigned counsel, but also potentially addresses and provides a resolution for the interests of all 245 LTD Plan Participants.  Current drafts of the

Debtors' disclosure statement provide no indication of how the interests of the LTD Plan Participants will be handled. The LTD Plan Participants are in dire need of some finality and structure in the process and are hopeful that they can fully participate in the 1114 process or parallel to it so that they and the Debtors can take advantage of the fact that many of the same issues will be addressed that are common to the retirees and LTD Plan Participants. It is the hope of the Disabled Participants that an additional committee will allow a voice for all LTD Plan Participants in the 1114 process or a process adjunct or parallel to it.

7.     The Disabled Participants respectfully move the Court to direct the appointment of a LTD Committee so that there is an official body in these cases that can adequately represent and engage counsel to advise it in the proposed negotiations with the Debtors either as part or alongside the proposed 1114 process contemplated for the retirees and for any other reasons that they Court deems necessary for their full and active participation in the Debtors' bankruptcy.

### Jurisdiction

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. The predicate for the relief requested is 11 U.S.C. §§ 105, 327, 328 and 1102(a)(2) and rules 2020 and 9014 of the Federal Rules of Bankruptcy Procedure .

### Background

9.     On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc., filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which are consolidated for procedural purposes only. The Debtors continue to operate

4

their remaining businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.    The UST has appointed the Creditors Committee (Docket Nos. 141 and 142), and an ad hoc group of bondholders has been organized (the "Bondholder Group").

### Relief Requested

11.    By this Motion and pursuant to section 1102 of the Bankruptcy Code, the Disabled Participants seek an order (i) directing the UST to appoint an LTD Committee consisting of the Debtors' disabled employees who are currently receiving benefits under the LTD Plan (as defined below) who are willing to serve on the LTD Committee as the official representative for the LTD Plan participants; and (ii) granting them such other and further relief as the Court deems just and proper.

### Facts Relevant to the Relief Requested

12.    As set forth in the Debtors' Retiree Committee Motion, the Debtors have historically provided benefits to their disabled employees through LTD Plans.  Copies of the LTD Plan were filed by the Debtors with the Court on July 9, 2010 (Docket No. 3515), and are available at http://dm.epiq11.com/nortel.  The LTD Plan includes income benefits in addition to medical and life insurance benefits.  During the course of the Debtors' chapter 11 cases, the Debtors have continued to provide benefits under the LTD Plan, as authorized by the Court's January 15, 2009 *Order Authorizing, But Not Directing, Debtors to Pay Certain Prepetition (I) Wages, Salaries and Other Compensation, (II) Reimbursable Expenses, and (III) Medical, Retirement and Similar Benefits* (Docket No. 59).

13.    Under the LTD Plan, the Debtors provide employer-paid long-term disability benefits for the Plan Participants.  According to the Debtors' Retiree Committee Motion, the

LTD Plan is included as part of the Nortel FLEX Program, which provides employees with the flexibility to choose benefits from a range of options.  The LTD Plan, according to the Retiree Committee Motion, has no assets and is funded on a pay-as-you-go basis.  Currently, the Debtors estimate that there are approximately there are 245 participants under the LTD Plan, with an average benefit of approximately $42,500 per year.  The Debtors' current projected cost of providing benefits under the LTD Plan is approximately $1 million per month.[2]

14.     On June 21, 2010, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing Debtors to Terminate Certain Retiree and Long-Term Disability Plans* (the "Plan Termination Motion") (Docket No. 3204), which sought approval to terminate the Retiree Welfare Plans and the LTD Plans.  In connection with the proposed termination of the Retiree Welfare Plans and the LTD Plans, the Debtors had negotiated with a health insurance provided to provide the retirees and long-term disabled individuals with replacement medical coverage options not readily available on the open market.

15.     Shortly after the Debtors filing of the Plan Termination Motion, the Nortel US Retirement Protection Committee, an ad hoc steering committee or retired executives of the Debtors (the "Ad Hoc Retiree Committee"), filed the *Motion for an Order Authorizing Formation of a Voluntary Employee Benefit Association to Provide Tax Credit-Eligible Retiree Benefits* (Docket 3671) (the "VEBA Motion"), which sought authorization to form a voluntary employee benefit association.  In light of the filing of the VEBA Motion and discussions with counsel to the Ad Hoc Retiree committee and the Third Circuit's ruling in *Int'l Union of Elec. Workers of Am. v. Visteon Corp. (In re Visteon)*, 612 F.3d 210 (3d. Cir. 2010), on July 16, 2010,

---

[2]   The Debtors maintain in their Retiree Committee Motion, that the LTD Plan provides the Debtors with the unequivocal contractual right to unilaterally amend or terminate the plan at any time.

the Debtors ultimately withdrew the Plan Termination Motion without prejudice (Docket No. 3651).

16.    The Debtors have continued to provide benefits under the LTD Plan and the Retiree Welfare Plans during the last ten months since the Plan Termination Motion was withdrawn, at an approximate cost of $19 million to the estates.

17.    On June 2, 2011, the Debtors filed the Retiree Committee Motion, in order to engage in discussion regarding the modification or termination of the Retiree Welfare Plans, "[i]n light of the substantial cost of continuing to maintain the Retiree Welfare Plans and the LTD Plan, at a time when the Debtors have divested their various businesses and are winding down their other remaining operations."  Retiree Committee Motion at ¶ 12.

18.    The Debtors contend in the Retiree Committee Motion the LTD Employees are not eligible to serve on a 1114 committee; the Debtors also have conferred with the UST and concluded that the LTD Employees are not eligible to serve on the Retiree Committee.  Retiree Committee Motion at ¶ 19.  However, the Debtors state that they are ready and willing to confer with the LTD Employees regarding the modification or termination of the LTD Plan in parallel with the Retiree Discussion.  Retiree Committee Motion at ¶ 12 and 19.  Nonetheless, the Debtors have made clear that they fully reserve their right to modify or terminate the LTD Plan in their discretion, as permitted under the plan documents, irrespective of the formation of a section 1114 committee for retirees for other purposes.  Retiree Committee Motion at ¶ 19 n. 12.

## Basis for Relief

19.    A bankruptcy court may appoint an additional committee in a bankruptcy case pursuant to section 1102(a)(2) of the Bankruptcy Code.  Section 1102(a)(2) provides that:

> [o]n request of a party in interest, the court may order the
> appointment of additional committees of creditors or of equity

> security holders if necessary to assure adequate representation of
> creditors or of equity security holders.  The United States trustee
> shall appoint any such committee.

11 U.S.C. § 1102(a)(2).

20.    The Court's decision under section 1102(a)(2) involves *de novo* consideration of the issues and is not controlled by any prior determination of the UST.  *See In re Enron Corp.*, 279 B.R. 671, 684 (Bankr. S.D.N.Y. 2002) (holding that the UST's decision is subject to *de novo* review, and "the court must arrive at its own judgment") (citations omitted); *In re Oneida Ltd.*, 2006 Bankr. LEXIS 780, No. 06-10489 (ALG), at *3 (Bankr. S.D.N.Y. May 4, 2006) (same).

21.    The Disabled Participants, as movants, have the burden of establishing that an additional committee is necessary for adequate representation.  *Victor v. Edison Bros. Stores (In re Edison Bros. Stores, Inc.)*, 1996 WL 534853, at *4 (D. Del. Sept. 17, 1996).  The Code does not define "adequate representation," but the Court has discretion to make the appointment based upon the facts of the case.  *Id.* at *3; *see also In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) ("Bankruptcy courts have discretion to examine the circumstances on a case-by-case basis to determine if additional committees are warranted.").

22.    Courts have generally applied a number of factors in analyzing the adequacy of a committee's representation, including:

> (a)    the ability of the committee to function;
> (b)    the nature of the case;
> (c)    the standing and desires of the various constituencies;
> (d)    the cost associated with the appointment;
> (e)    the timing of the application;
> (f)    the potential for added complexity; and
> (g)    the presence of other avenues for creditor participation.

*See In re Garden Ridge Corp.*, 2005 Bankr. LEXIS 323, No. 04-10324 (DDS), at *6 (Bankr. D. Del. Mar. 2, 2005) (citing *Enron Corp.*, 279 B.R. at 685); *see also In re Dana Corp.*, 344 B.R.

35, 38 (Bankr. S.D.N.Y. 2006) ("No one factor is dispositive, and the amount of due consideration given to each depends on the circumstances of the particular chapter 11 case."); *In re Edison Bros. Stores, Inc.* 1996 WL 534853, at *3 (D. Del. 1996) ("however, these factors are simply guidelines for the court to consider and 'every case must be judged on its own facts.'").

## Legal Analysis

23.     As set forth above, neither the Debtors nor the UST are of the opinion that the LTD Employees are eligible to serve on the proposed section 1114 Retiree Committee. Moreover, conversations with the UST and the Official Committee of Unsecured Creditors (the "Creditors Committee") have resulted in similar conclusions regarding the LTD Employees participation on Creditors Committee.  Accordingly, in order to obtain adequate representation, excluding the Court entering an Order approving the participation of the LTD Plan Participants on either of the proposed Retiree Committee or the Creditors Committee, the LTD Plan Participants require the formation of their own committee for the following reasons.

**A.**      ***A LTD Committee is Necessary to Adequately Represent the Interests of the LTD Plan Participants***

24.     The important role of official committees in Chapter 11 cases arose from a major shift in bankruptcy law that removed the bankruptcy court from the day to day affairs of a debtor and, instead, relegated such functions to the UST, court appointed trustees and, in large part, to an official committee. *See In re AKF Foods, Inc.*, 36 B.R. 288, 289-90 (Bankr. E.D.N.Y. 1984) (discussing Congress' intent in creating legislation mandating the appointment of a committee of unsecured creditors). Without any official committee, these Chapter 11 cases lack the necessary "watchdog" over the self-interests of other constituencies in the case.  In this case in particular, the issues of the LTD Plan Participants have been deemed important to the estate by the Debtors

as evidenced by the inclusion of relief requesting their participation in the Retiree Committee Motion.

**B.      *A LTD  Committee Will Not Impose any Incremental Costs to the Chapter 11 Process***

25.      Because the proposed activities of the proposed LTD Committee would be focused on participation in the 1114 process or adjunct to it to reach a settlement and appropriately review the limited issues of such a settlement and address any issues related to the resolution of their interests in the context of the proposed plan and disclosure statement, the costs associated with such a committee are relatively small.  This is particularly true in light of the advantage to the estate in formulating a solution for the issues that will collectively address all the disabled LTD Plan Participants as opposed to some of them.

26.      There would be no duplication of efforts because the there is currently no committee addressing the issues of the LTD Plan Participants and if the LTD Plan Participants are excluded from officially being on the retiree committee by virtue of the language of section 1114 then the counsel to any retiree committee would be unable to represent the LTD Plan Participants.  *See In re Dana Corp.*, 344 B.R. at 40 (denying appointment of *additional* committee of asbestos claimants because such would lead to duplicative efforts) (emphasis added). Moreover, the timing for such an official committee is on track with the Debtors' efforts to engage in an 1114 process which will further promote efficiency if approved.  Finally, the Disabled Participants are open to discuss restrictions to control costs that would be suggested by the Court or other constituencies in the case as long as they can meaningfully participate in the process contemplated by the Retiree Committee Motion.

**C.**      ***There is No Equitable Alternative Available to Assure Adequate Representation of the Disabled Plan Participants***

27.      The Disabled Participants should not be forced to bear the significant burden of performing the function of a statutory watchdog like an official committee of creditors. Notably, the Disabled Participants, currently, have paid for all efforts to negotiate and discuss the issues facing the LTD Plan Participants as a whole for several months.   The cost of protecting the interests of the entire class, as a whole, should not be shouldered by the Disabled Participants alone.

28.      The Disabled Participants are composed of individuals who have in fact engaged professionals in connection with these cases.   However, this is not a disqualifying fact for appointment of an official committee.   Even where a party can fund their own representation, courts still appoint official committees to represent the larger class of claim/interest holders and to provide the "checks and balances" essential to the fairness of the Chapter 11 process. *See, e.g., Exide Techs. v. State of Wis. Inv. Bd.*, 2002 U.S. Dist. LEXIS 27210, No. 02-1572-SLR, at \*6-7 (D. Del. Dec. 23, 2002) (affirming bankruptcy court's decision to appoint an equity committee where the equity holder requesting such appointment would be capable of representing itself in the bankruptcy proceeding, but concluding that "the Chapter 11 process would benefit from having an official committee of equity holders"); *see also In re SemCrude, L.P.*, No. 08-11525 (BLS), Dk. No. 1774, Oct. 15, 2008 (appointing an official committee of oil and gas producers and suppliers notwithstanding the existence of several ad hoc groups of oil and gas producers who had been active and vigilant since the outset of the case without official committee status). Perhaps most important is that the Disabled Participants are also not without limits to their resources, which have been strained by the necessity of engaging counsel.

29.    Finally, we note that, while the Disabled Participants would accept inclusion onto the Official Committee, or an 1114 Committee, to adequately represent the interests of the LTD Plan Participants, the LTD Committee respectfully believes that such a committee should be comprised only of LTD Plan Participants because their interests diverge from both general unsecured creditors and the retirees and were part of a distinct plan from other employees and retirees, though they shared similar benefits. *See In re Mercury Finance Co.*, 240 B.R. 270, 272-73 (N.D. Ill. 1999) (affirming decision of bankruptcy court dissolving a combined committee of creditors and equity holders, where such creditors were former equity holders of the debtor and their claims were based on securities fraud litigation, and ordering the appointment of separate committees).

30.    As noted in the preliminary statement to this motion, the LTD Plan Participants are not yet unsecured creditors as they are still receiving their monthly benefits, but likely will be terminated once a final plan and disclosure statement are finalized by the Debtors.  However, there are still unanswered questions relating to funds held by the Debtor potentially for the benefit of the LTD Plan Participants that would diverge from the interests of the unsecured creditors in stark fashion.  In addition to any unsecured claim or claim to trust funds, they have other significant interests in finding alternative healthcare and insurance that because of their condition would be difficult in the market outside of a process that is assisted by the Debtors.  In some senses that makes them very much like the retirees, but unlike the retirees, the PBGC does not have responsibility for the plan under which the LTD Plan Participants fall.  In addition, there is doubt that the 1114 process applies to the LTD Plan Participants by the letter of the statute.  The Disabled Participants have explored every path to a facilitating the consensual resolution of their issues with the Debtors and getting a meaningful seat at the table for the LTD

Plan Participants, and all have some significant failing. It is in that light that they request the formation of an additional committee comprised of representatives of the LTD Plan Participants.

31.     In conclusion, the Disabled Participants respectfully request the formation of an official committee so that they may be given a full and fair voice in these proceedings. Of all of the constituents involved in this case, the LTD Plan Participants are the least able to adequately protect their interests given their physical limitations, as well as the unique statutory limitations in that they arguably do not fall into the same category as retirees pursuant to section 1114 of the Bankruptcy Code, are not yet unsecured creditors until the Debtors terminate the LTD Plan, and potentially have significant divergent interests from the unsecured creditors because of unanswered trust fund issues.

32.     Alternatively, the Disabled Participants respectfully requests this Court direct the UST to appoint one or two representatives of the Disabled Participants to the Creditors Committee or the proposed Retiree Committee.

## Notice

33.     Notice of this Motion has been given via first class mail to (i) the UST; (ii) counsel to the Committee; (iii) counsel to the Debtors; (iv) counsel to the Bondholder Group; (v) counsel to the Nortel US Retirement Protection Committee; and (vi) participants of the LTD Plan. The Disabled Participants submit that under the circumstances no other or further notice is necessary.

## **No Prior Request**

34.    No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Disabled Participants respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  June 3, 2011                                ELLIOTT GREENLEAF


*/s/ Rafael X. Zahralddin-Aravena*
Rafael X. Zahralddin-Aravena (DE 4166)
Shelley A. Kinsella (DE 4023)
Jonathan M. Stemerman (DE 4510)
1105 N. Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone:  (302) 384-9400
Facsimile:  (302) 384-9399
Email:  rxza@elliottgreenleaf.com
Email: sak@elliottgreenleaf.com
Email: jms@elliottgreenleaf.com

*Attorneys for the Disabled Participants*