Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

B E T W E E N :

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER PART IV OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED.

---

# RESPONDING AND CROSS-MOTION RECORD OF THE JOINT ADMINISTRATORS OF NORTEL NETWORKS UK LIMITED AND THE COMPANIES LISTED IN SCHEDULE "A" HERETO
### (Returnable June 7, 2011)

---

DAVIES WARD PHILLIPS & VINEBERG LLP
1 First Canadian Place
Suite 4400
Toronto, ON  M5X 1B1

Matthew P. Gottlieb (LSUC #32268B)
Robin B. Schwill (LSUC #38452I)
Sean R. Campbell (LSUC #49514J)
Tel:    416.863.0900
Fax:    416.863.0871

Lawyers for the Joint Administrators of Nortel Networks UK Limited

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

B E T W E E N :

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER PART IV OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

## TABLE OF CONTENTS

| Tab # | | Document | Page # |
|---|---|---|---|
| 1. | | Notice of Cross-Motion dated May 31, 2011 | 1 - 32 |
| 2. | | Affidavit of Kevin Francis Lloyd sworn May 31, 2011 | 33 - 35 |
| | A | Exhibit "A" – Declaration of Kevin Francis Lloyd dated May 19, 2011 | 36 |
| | B | Exhibit "B" – Email from Kevin Lloyd to counsel to Bondholder Committee, the Canadian Debtor, the US Debtor, the UCC and the Canadian Monitor dated May 23, 2011 | 37 |
| | C | Exhibit "C" – Email from James Bromley to Kevin Lloyd dated May 25, 2011 | 38 |
| | D | Exhibit "D" – Email from Mark Alan to Kevin Lloyd dated May 25, 2011 | 40 - 42 |
| 3 | | Affidavit of Tai-Heng Cheng sworn May 31, 2011 | 43 - 69 |
| | A | Exhibit "A" – *Curriculum Vitae* | 70 - 79 |

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER PART IV OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED.

# NOTICE OF CROSS-MOTION
## (June 7, 2011)

The court appointed administrators and authorized foreign representatives (collectively, the "Joint Administrators") for Nortel Networks UK Limited ("NNUK") and certain of its subsidiaries and affiliates located in the region known as EMEA (Europe, Middle East and Africa) and as listed in Schedule "A" hereto (collectively, the "EMEA Debtors"), will make a motion to the Honourable Mr. Justice Morawetz on June 7, 2011, or such other date as this Honourable Court may set, at 10:00 a.m., or as soon after that time as the motion can be heard, at 330 University Avenue, Toronto, Ontario.

PROPOSED METHOD OF HEARING:

The motion is to be heard orally.

THE MOTION IS FOR:

1.        an Order dismissing the motion brought by Nortel Networks Inc. and certain of its affiliates (the "U.S. Debtors") and the Official Committee of Unsecured Creditors;

2.        an Order compelling and directing the parties to the Interim Funding and Settlement Agreement dated June 9, 2009 (the "IFSA") to engage in arbitration regarding all disputes concerning the allocation of Sales Proceeds (as defined in the IFSA); and

3.        such further and other Orders as counsel may request and this Court may permit.

THE GROUNDS FOR THE MOTION ARE:

(a)    on January 14, 2009, Nortel Networks Corporation, Nortel Networks Limited and certain of their Canadian affiliates (collectively, the "Canadian Debtors") commenced a proceeding in this Court (the "Canadian Court") under the *Companies' Creditors Arrangement Act* (the "CCAA") seeking, among other things, protection from their creditors. Ernst & Young Inc. was appointed as Monitor by the Canadian Court;

(b)    also on January 14, 2009, the U.S. Debtors (other than Nortel Networks (CALA) Inc.), filed voluntary petitions for relief under chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court");

(c)     also on January 14, 2009, the High Court of England and Wales placed the nineteen EMEA Debtors into administration under the control of the Joint Administrators. Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world;

(d)     on January 15, 2009, the U.S. and Canadian Courts each approved the Cross-Border Insolvency Protocol, which was later amended by order of both courts (as amended, the "Cross-Border Protocol");

(e)     the Cross-Border Protocol was implemented to coordinate administrative aspects of the insolvency proceedings in the United Sates and Canada but was not to, in any way, interfere with the U.S. Court or the Canadian Court's independence, jurisdiction and sovereignty;

(f)     on or about June 9, 2009, the U.S. Debtors, the Canadian Debtors and the EMEA Debtors, excluding Nortel Networks S.A. and Nortel Networks AG (which is not one of the filed EMEA Debtors) entered into the IFSA. Nortel Networks S.A. and Nortel Networks AG acceded to the IFSA on or about September 11, 2009;

(g)     the IFSA provides that it shall "be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction";

(h)     the IFSA addressed several issues facing the parties at that time, including liquidity issues at Nortel Networks Limited. Furthermore, in

4

order to ensure that the planned sale of Nortel's businesses and assets ("Sale Transactions", and each a "Sale Transaction") could progress unimpeded by disputes, the IFSA also addressed the allocation of sale proceeds (the "Sale Proceeds").

(i)     indeed, in reliance on the terms of the IFSA, the EMEA Debtors and other debtors that were not filed in the EMEA region (such as Nortel AG) sold their businesses and substantial assets that comprised them, and put the sales proceeds in escrow accounts on the basis that the money would not be released other than pursuant to s. 12(b) of the IFSA (as referred to below);

(j)     in particular, the parties agreed, in s. 12(a) of the IFSA, not to condition the execution of any sale agreement upon reaching agreement with other IFSA parties proposed to be a party to such Sale Transaction regarding the allocation (or a binding procedure for allocation) of the ultimate Sale Proceeds;

(k)     also, the IFSA provides, in s. 12(b), that all Sale Proceeds shall be held in escrow accounts corresponding to each Sale Transaction (each, an "Escrow Account"), and shall not be distributed "in advance of either (i) agreement of all of the Selling Debtors or (ii) in the case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the Protocol (as defined below) applicable to the Sale Proceeds, and subject in each case to payment

of the agreed or determined amount of allocation of Sale Proceeds to all Selling Debtors";

(l)     the parties to the IFSA also agreed in s. 12(c) to "negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (the "Interim Sales Protocol"), which Protocol shall provide binding procedures for the allocation of Sale Proceeds where the Selling Debtors in such Sale Transaction have been unable to reach agreement regarding such allocation";

(m)    the parties did not (for the reason set out below) finalize their negotiations towards the Protocol on procedures to be followed in the dispute resolution proceeding for resolving disputes over allocation of Sales Proceeds;

(n)     as a matter of New York law, the provisions of the IFSA compel the parties to the IFSA to resolve any dispute over the allocation of the Sale Proceeds through arbitration.  Simply, the IFSA and, in particular s. 12(b), contains a binding arbitration agreement that requires the parties to resolve all disputes concerning the allocation of the Sale Proceeds through an *ad hoc* arbitration;

(o)     further, the conduct of the parties, both before and after entering into the IFSA (evidence of such conduct being admissible under New York law), and specifically the negotiation of the IFSA and the negotiation of the terms of the procedural Protocol, unequivocally show that the

parties intended that all disputes regarding the Sale Proceeds would be determined by an *ad hoc* arbitration and not by the Court(s);

(p)    because the parties to IFSA have specifically agreed to arbitrate, the parties have agreed not to have their dispute resolved by the U.S. and Canadian Courts and, as a result, U.S. Court and the Canadian Court do not have the jurisdiction to determine the merits of the disputes over allocation of the Sale Proceeds;

(q)    the fact that the parties to IFSA have not agreed on the Protocol specifying procedures to be followed in the *ad hoc* arbitration, does not, in any way, invalidate or otherwise impact the arbitration agreement and the fact that the parties are bound by the arbitration agreement;

(r)    in any event, the Canadian Debtors did not comply with their obligation to negotiate in good faith with respect to agreeing on the terms of a Protocol. Indeed, the Canadian Debtors insisted upon provisions being in the Protocol that would have prevented the EMEA Debtors from raising significant arguments in the arbitration regarding the EMEA Debtors' right to Sale Proceeds;

(s)    moreover, since the US Debtors filed their motion, they and the Canadian Debtors have refused to discuss any protocol that contemplates arbitration, in clear violation of the IFSA;

(t)    further, the Canadian Court does not have the jurisdiction to render a joint decision with the court of any other country. It would be a violation

<div style="margin-left:2em">

of Canadian sovereignty for the Canadian Court to be bound, by court order or otherwise, to issue a joint decision with the U.S. Court;

(u)    further, the U.S. and Canadian Courts do not have the jurisdiction to allocate the Sale Proceeds with respect to assets owned by Nortel entities outside of North America;

(v)    it would be completely impractical and unworkable for the U.S. Court and Canadian Court to attempt to jointly decide the disputes surrounding the Sale Proceeds;

(w)    it would be appropriate, practical and efficient for the dispute over the allocation of the Sale Proceeds to be determined by international arbitration;

(x)    the Court has the jurisdiction to require the Canadian Debtors to resolve their dispute regarding the Sale Proceeds through arbitration;

(y)    Nortel Switzerland, Nortel Norway and Nortel South Africa support the resolution of the purchase price allocation issue by means of international arbitration rather than by decisions of the U.S. and/or the Canadian courts. These entities are not in the control of the Joint Administrators nor subject to the insolvency proceedings in the English Court but were party to several sales and have an entitlement to the sales proceeds;

(z)    the EMEA Debtors are eager and willing to commence an arbitration to determine the proper allocation of Sale Proceeds;

(aa)    the provisions of the CCAA;

</div>

(bb)     sections 96 and 97 of the *Courts of Justice Act* and Rules 38 and 39 of

the *Rules of Civil Procedure*;

(cc)     the provisions of the Cross-Border Protocol;

(dd)     the provisions of the IFSA; and

(ee)     such further and other grounds as counsel may advise and this Court

may permit.

THE FOLLOWING DOCUMENTARY EVIDENCE will be used at the hearing of the
motion:

(i)      the Affidavit of Kevin Francis Lloyd, sworn May 31, 2011 and all

exhibits attached thereto;

(ii)     the Affidavit of Tai-Heng Cheng, sworn May 31, 2011; and

(iii)    such further and other materials as counsel may advise and this

Court may permit.

Date:   May 31, 2011          DAVIES WARD PHILLIPS & VINEBERG LLP
                              1 First Canadian Place
                              Suite 4400
                              Toronto, ON  M5X 1B1

                              Matthew P. Gottlieb (LSUC #32268B)
                              Robin B. Schwill (LSUC #38452I)
                              Sean R. Campbell (LSUC #49514J)
                              Tel:    416.863.0900
                              Fax:   416.863.0871

                              Lawyers for the Joint Administrators

TO:     ATTACHED SERVICE LIST

## Schedule A

(a)    Nortel Networks UK Limited

(b)    Nortel Networks SA (France)

(c)    Nortel GmbH (Germany)

(d)    Nortel Networks (Ireland) Limited (Ireland)

(e)    Nortel Networks N.V. (Belgium)

(f)    Nortel Networks S.p.A. (Italy)

(g)    Nortel Networks B.V. (Netherlands)

(h)    Nortel Networks Polska S.p. z.o.o. (Poland)

(i)    Nortel Networks Hispania S.A. (Spain)

(j)    Nortel Networks International Finance & Holding B.V. (Netherlands)

(k)    Nortel Networks (Austria) GmbH (Austria)

(l)    Nortel Networks s.r.o. (Czech Republic)

(m)    Nortel Networks Engineering Service Kft. (Hungary)

(n)    Nortel Networks Portugal S.A. (Portugal)

(o)    Nortel Networks Slovensko s.r.o. (Slovakia)

(p)    Nortel Networks France S.A.S. (France)

(q)    Nortel Networks Oy (Finland)

(r)    Nortel Networks Romania SRL (Romania)

(s)    Nortel Networks AB (Sweden)

*January 4, 2011*   10

Court File No.  09-CL-7950

## ONTARIO
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

## SERVICE LIST

TO:     **OGILVY RENAULT LLP**
        Royal Bank Plaza, South Tower
        200 Bay Street, Suite 3800
        Toronto, Ontario M5J 2Z4

        Derrick Tay
        Tony Reyes
        Jennifer Stam

        Email:   dtay@ogilvyrenault.com
                 treyes@ogilvyrenault.com
                 jstam@ogilvyrenault.com

        Tel:     416.216.4000
        Fax:     416.216.3930

        Lawyers for the Applicants

TO: **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, ON  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:  nortel.monitor@ca.ey.com

Tel:    416.943.3016
Fax:    416.943.3300

AND
TO: **GOODMANS LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Fred Myers
Chris Armstrong

Email:  jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
grubenstein@goodmans.ca
fmyers@goodmans.ca
carmstrong@goodmans.ca

Tel:    416.597.4107
Fax:    416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND
TO: **OSLER HOSKIN AND HARCOURT LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, ON  M5X 1B8

Lyndon Barnes
Rupert Chartrand
Edward Sellers
Adam Hirsh

Email:  lbarnes@osler.com
rchartrand@osler.com
esellers@osler.com
ahirsh@osler.com

Tel:    416.362.2111
Fax:    416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND
TO: **FASKEN MARTINEAU DUMOULIN LLP**
66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, ON  M5K 1N6

Donald E. Milner
Aubrey Kauffman
Edmond Lamek
Jon Levin

Email:  dmilner@fasken.com
akauffman@fasken.com
elamek@fasken.com
jlevin@fasken.com

Tel:    416.868.3538
Fax:    416.364.7813

Lawyers for Export Development Canada

**AND TO:** **EXPORT DEVELOPMENT CANADA**
151 O'Connor Street
Ottawa, ON  K1A 1K3

Jennifer Sullivan

Email:  jsullivan@edc.ca

Tel:    613.597.8651
Fax:   613.598.3113

**AND TO:** **McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS  B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email:  john.stringer@mcinnescooper.com
stephen.kingston@mcinnescooper.com

Tel:    902.425.6500
Fax:   902.425.6350

Lawyers for Convergys EMEA Limited

**AND TO:** **CAW-CANADA**
Legal Department
205 Placer Court
Toronto, ON M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:  barry.wadsworth@caw.ca
lewis.gottheil@caw.ca

Tel.:   416.495.3776
Fax:   416.495.3786

Lawyers for all active and retired Nortel
employees represented by the CAW-
Canada

**AND TO:** **THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific
Tower
Toronto, ON  M5K 1K7

Robert I. Thornton
Rachelle Moncur
Leanne M. Williams

Email:  rthornton@tgf.ca
rmoncur@tgf.ca
lwilliams@tgf.ca

Tel:    416.304.1616
Fax:   416.304.1313

Lawyers for Flextronics Telecom Systems
Ltd.

**AND TO:** **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart

Email:  jcarhart@millerthomson.com

Tel:    416.595.8615/8577
Fax:   416.595.8695

Lawyers for Toronto-Dominion Bank

**AND TO:** **BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC  V7X 1S8

R. Hoops Harrison

Email:  hharrison@boughton.ca

Tel:    604.687.6789
Fax:   604.683.5317

Lawyers for Tonko Realty Advisors (BC)
Ltd., in its capacity as duly authorized agent
for Holdings 1506 Enterprises Ltd.

AND
TO:

**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, ON  M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:  mmacnaughton@blgcanada.com
Tel:    416. 367.6646
Fax:    416. 682.2837

Email:  rjaipargas@blgcanada.com
Tel:    416.367.6266
Fax:    416.361.7067

Email:  srappos@blgcanada.com
Tel:    416.367.6033
Fax:    416.361.7306

Lawyers for Bell Canada

AND
TO:

**SISKINDS LLP**
680 Waterloo Street
London, ON  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein

Email:  ray.leach@siskinds.com
        dimitri.lascaris@siskinds.com
        monique.radlein@siskinds.com

Tel:    519.672.2121
Fax:    519.672.6065

Lawyers for Indiana Electrical Workers
Pension Trust Fund IBEW, Laborers Local
100 and 397 Pension Fund, and Bruce
William Lapare

AND
TO:

**LANG MICHENER LLP**
Brookfield Place, Suite 2500
181 Bay Street
Toronto, ON  M5J 2T7

John Contini
Aaron Rousseau

Email   jcontini@langmichener.ca
Tel:    416.307.4148
Fax:    416.304.3767

Email   arousseau@langmichener.ca
Tel:    416.307.4081
Fax:    416.365.1719

Lawyers for ABN AMRO Bank N.V.

AND
TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, ON  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson
Richard Swan

Email:  zychk@bennettjones.com
Tel:    416.777.5738
Fax:    416.863.1716

Email:  orzyr@bennettjones.com
Tel:    416.777.5737
Fax:    416.863.1716

Email:  finlaysong@bennettjones.com
Tel:    416.777.5762
Fax:    416.863.1716

Email:  swanr@bennettjones.com
Tel:    416.777.7479
Fax:    416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

| | | |
|---|---|---|
| AND TO: | **KOSKIE MINSKY** | |

AND
TO:        **KOSKIE MINSKY**
           20 Queen Street West
           Suite 900
           Toronto, ON  M5H 3R3

           Mark Zigler
           Susan Philpott
           Demetrios Yiokaris
           Andrea McKinnon
           Celeste Poltak

           Email:   mzigler@kmlaw.ca
           Tel:     416.595.2090
           Fax:     416.204.2877

           Email:   sphilpott@kmlaw.ca
           Tel:     416.595.2104
           Fax:     416.204.2882

           Email:   dyiokaris@kmlaw.ca
           Tel:     416.595.2130
           Fax:     416.204.2810

           Email:   amckinnon@kmlaw.ca
           Tel:     416.595.2150
           Fax:     416.204.2874

           Email:   cpoltak@kmlaw.ca
           Tel:     416.595.2701
           Fax:     416.204.2909

           Lawyers for the Former Employees of Nortel

AND
TO:        **KOSKIE MINSKY**
           20 Queen Street West
           Suite 900
           Toronto, ON  M5H 3R3

           Mark Zigler
           Susan Philpott
           Demetrios Yiokaris
           Andrea McKinnon
           Celeste Poltak

           Email:   mzigler@kmlaw.ca
           Tel:     416.595.2090
           Fax:     416.204.2877

           Email:   sphilpott@kmlaw.ca
           Tel:     416.595.2104
           Fax:     416.204.2882

           Email:   dyiokaris@kmlaw.ca
           Tel:     416.595.2130
           Fax:     416.204.2810

           Email:   amckinnon@kmlaw.ca
           Tel:     416.595.2150
           Fax:     416.204.2874

           Email:   cpoltak@kmlaw.ca
           Tel:     416.595.2701
           Fax:     416.204.2909

           Lawyers for the LTD Beneficiaries

AND
TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:   jcarhart@millerthomson.com
Tel:     416.595.8615
Fax:     416.595.8695

Email:   msims@millerthomson.com
Tel:     416.595.8577
Fax:     416.595.8695

Email:   jmklotz@millerthomson.com
Tel:     416.595.4373
Fax:     416.595.8695

Lawyers for LG Electronics Inc.

AND
TO:
**LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongduengpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:   joseph.kim@lge.com

Tel:     +82.2.3777.3171
Fax:     +82.2.3777.5345

AND
TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:   jcarhart@millerthomson.com
Tel:     416.595.8615
Fax:     416.595.8695

Email   msims@millerthomson.com
Tel:     416.595.8577
Fax:     416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision
Communication Services, Inc.

AND
TO:
**CHAITONS LLP**
185 Sheppard Avenue West
Toronto, ON  M2N 1M9

Harvey G. Chaiton

Email:   harvey@chaitons.com

Tel:     416.218.1129
Fax:     416.218.1849

Lawyers for IBM Canada Limited

AND
TO:

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, ON  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:  ken.rosenberg@paliareroland.com
Tel:      416.646.4304
Fax:     416.646.4301

Email:  max.starnino@paliareroland.com
Tel:      416.646.7431
Fax:     416.646.4301

Email:  lily.harmer@paliareroland.com
Tel:      416.646.4326
Fax:     416.646.4301

Email:  tina.lie@paliareroland.com
Tel:      416.646.4332
Fax:     416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

E. Patrick Shea

Email:  patrick.shea@gowlings.com

Tel:      416.369.7399
Fax:     416.862.7661

Lawyers for Westcon Group

AND
TO:

**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, ON  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder
Ryan Jacobs

Email:  Shayne.kukulowicz@fmc-law.com
             Alex.macfarlane@fmc-law.com
             Michael.wunder@fmc-law.com
             ryan.jacobs@fmc-law.com

Tel:      416.863.4511
Fax:     416.863.4592

Canadian Lawyers for the Official Committee
of Unsecured Creditors

AND
TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, ON  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:  rslattery@mindengross.com
             dullmann@mindengross.com
Tel:      416.369.4149
Fax:     416.864.9223

Lawyers for Verizon Communications Inc.

AND TO: **AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:   hfogul@airdberlis.com
Tel:     416.865.7773
Fax:     416.863.1515

Email:   pczegledy@airdberlis.com
Tel:     416.865.7749
Fax:     416.863.1515

Lawyers for Microsoft Corporation

AND TO: **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:   renglish@airdberlis.com
         smitra@airdberlis.com

Tel:     416.863.1500
Fax:     416.863.1515

Lawyers for Tata Consultancy Services
Limited and Tata America International
Corporation

AND TO: **ALEXANDER HOLBURN BEAUDIN &
LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:   surquhart@ahbl.ca
Tel:     604.484.1757
Fax:     604.484.1957

Lawyers for Algo Communication Products
Ltd.

AND TO: **GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:   jwigley@gardiner-roberts.com
Tel:     416.865.6655
Fax:     416.865.6636

Email:   vdare@foglers.com
Tel:     416.865.6641
Fax:     416.865.6636

Lawyers for Andrew, LLC

AND TO: **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND TO: **MILLER THOMSON LLP**
Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Maurice Fleming

Email:   mfleming@millerthomson.com
Tel:     416.595.8686
Fax:     416.595.8695

Lawyers for Verint Americas Inc. and Verint
Systems, Inc.

AND
TO:
**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:  bdarlington@davis.ca
Tel:    416.365.3529
Fax:    416.369.5210

Email:  jdavissydor@davis.ca
Tel:    416.941.5397
Fax:    416.365.7886

Lawyers for Brookfield LePage Johnson
Controls Facility Management Services


AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:    416.865.7726
Fax:    416.863.1515

Email:  iaversa@airdberlis.com
Tel:    416.865.3082
Fax:    416.863.1515

Lawyers for Perot Systems Corporation


AND
TO:
**CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario  M5H 3C2

Deborah S. Grieve

Email:  dgrieve@casselsbrock.com
Tel:    416.860.5219
Fax:    416.350.6923

Lawyers for Alvarion Ltd.


AND
TO:
**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:  andrew.kent@mcmillan.ca
Tel:    416.865.7160
Fax:    416.865.7048

Email:  hilary.clarke@mcmillan.ca
Tel:    416.865.7286
Fax:    416.865.7048

Email:  tushara.weerasooriya@mcmillan.ca
Tel:    416.865.7262
Fax:    416.865.7048

Lawyers for Royal Bank of Canada


AND
TO:
**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Lawrence J. Crozier
Adam C. Maerov

Email:  lawrence.crozier@mcmillan.ca
Tel:    416.865.7178
Fax:    416.865.7048

Email:  adam.maerov@mcmillan.ca
Tel:    416.865.7285
Fax:    416.865.7048

Lawyers for Citibank


AND
TO:
**BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario  M5C 3G5

Domenico Magisano

Email:  dmagisano@blaney.com
Tel:    416.593.2996
Fax:    416.593.5437

Lawyers for Expertech Network Installation

AND
TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:    416.865.6655
Fax:    416.865.6636

Email:  vdare@foglers.com
Tel:    416.865.6641
Fax:    416.865.6636

Lawyers for Amphenol Corporation

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Sanjeev P.R. Mitra

Email:  smitra@airdberlis.com

Tel:    416.863.1500
Fax:    416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

Inc.

AND
TO:

**LANG MICHENER LLP**
Brookfield Place
Suite 2500, 181 Bay Street
P.O. Box 747
Toronto, Ontario  M5J 2T7

Aaron Rousseau

Email:  arousseau@langmichener.ca
Tel:    416.307.4081
Fax:    416.365.1719

Lawyer for Right Management Inc.

AND
TO:

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
Harvey Garman
Michael Casey

Email:  bleonard@casselsbrock.com
        hgarman@casselsbrock.com
        mcasey@casselsbrock.com

Tel:    416.860.6455
Fax:    416.640.3054

Lawyers for the UK Pension Protection Fund
and Nortel Networks UK Pension Trust
Limited

Tor#: 2672379.1

AND
TO:
**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario  K2P 0A2

Paul K. Lepsoe

Email:   pklepsoe@mcfarlanelaw.com

Tel:     613.233.2679
Fax:    613.233.3774

Lawyers for Iron Mountain Canada
Corporation and Iron Mountain Information
Management, Inc.

AND
TO:
**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:   theintzm@mccarthy.ca
Tel:     416.601.7627
Fax:    416.868.0673

Email:   jsirivar@mccarthy.ca
Tel:     416.601.7750
Fax:    416.868.0673

Lawyers for Frank Andrew Dunn

AND
TO:
**IRVING MITCHELL KALICHMAN LLP**
Place Alexis Nihon, Tour 2
3500 Boulevard De Maisonneuve Ouest
Bureau 1400
Montreal, Quebec  H3Z 3C1

Kurt A. Johnson

Email : kjohnson@imk.ca
Tel:     514.935.5755
Fax :    514.935.2999

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

AND
TO:
**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:   janice.payne@nelligan.ca
            steven.levitt@nelligan.ca
            christopher.rootham@nelligan.ca

Tel:     613.231.8245
Fax:    613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post
CCAA as at January 14, 2009

| | | | | |
|---|---|---|---|---|
| AND TO: | **BAKER & McKENZIE LLP** | | AND TO: | **BENNETT JONES LLP** |

AND TO:  **BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Chris Besant
Lydia Salvi

Email:  chris.besant@bakernet.com

Tel:    416.865.2318
Fax:   416.863.6275

Email:  lydia.salvi@bakernet.com

Tel:    416.865.6944
Fax:   416.863.6275

Lawyers for Jabil Circuit Inc.

AND TO:  **BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email:  ryanbellr@bennettjones.com
          laugesenm@bennettjones.com

Tel:    416.863.1200
Fax:   416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and Tel-e Connect Systems (Toronto) Ltd.

AND TO:  **SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec  H9S 2A5

Dan Goldstein
Marco Gaggino

Email:  dgoldstein@schneidergaggino.com
          mgaggino@schneidergaggino.com

Tel:    514.631.8787
Fax:   514.631.0220

Lawyers for the Teamsters Quebec Local 1999

AND TO:  **MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Timothy R. Dunn

Email:  tdunn@mindengross.com
Tel:    416.369.4335
Fax:   416.864.9223

Lawyers for 2748355 Canada Inc.

AND TO:  **EURODATA**
2574 Sheffield Road
Ottawa, Ontario  K1B 3V7

Nanci Shore

Email:  nanci@eurodata.ca
Tel:    613.745.0921
Fax:   613.745.1172

AND TO:  **BALDWIN LAW PROFESSIONAL CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email:  lbrady@baldwinlaw.ca
Tel:    613.771.9991
Fax:   613.771.9998

Lawyers for Sydney Street Properties Corp.

AND
TO:
**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Raffy Lorentzian

Email:  raffy.lorentzian@ntscorp.com
Tel:     714.998.4351
Fax:     714.998.7142

Lawyers for AETL Testing, Inc.

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:  iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:  arthur.jacques@shibleyrighton.com
Tel:     416.214.5213
Fax:     416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :    416.214.5206
Fax :    416.214.5400

Lawyers for The Recently Severed
Canadian Nortel Employees Committee

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:  arthur.jacques@shibleyrighton.com
Tel:     416.214.5213
Fax:     416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :    416.214.5206
Fax :    416.214.5400

Co-Counsel for the Steering Committee of
Nortel Canadian Continuing Employees –
Post CCAA as at January 14, 2009

AND
TO:
**NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Raffy Lorentzian

Email:  raffy.lorentzian@ntscorp.com
Tel:     714.998.4351

AND
TO:
**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email:  david.cohen@gowlings.com

Tel:     416.369.6667
Fax:     416.862.7661

Lawyers for General Electric Canada
Equipment Finance G.P. and GE Capital
Canada Leasing Services Inc.

AND TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:  bdarlington@davis.ca
Tel:     416.365.3529
Fax:    416.369.5210

Email:  jdavissydor@davis.ca
Tel:     416.941.5397
Fax:    416.365.7886

Lawyers for Computershare Trust Company of Canada

AND TO:

**DAVIES WARD PHILLIPS & VINEBERG LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:  rschwill@dwpv.com
Tel:     416.863.0900
Fax:    416.863.0871

Email:  mgottlieb@dwpv.com
Tel:     416.863.0900
Fax:    416.863.0871

Lawyers for Nortel Networks UK Limited (In Administration)

AND TO:

**LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:  tosullivan@counsel-toronto.com
Tel:      416.598.1744
Fax:     416.598.3730

Email:  slaubman@counsel-toronto.com
Tel:     416.598.1744
Fax:    416.598.3730

Lawyers for William A. Owens

AND TO:

**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Lydia Salvi

Email:  lydia.salvi@bakernet.com

Tel:     416.865.6944
Fax:    416.863.6275

Lawyers for Wipro Limited

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Lawyers for the Current and Former
Employees of Nortel Networks Inc. who are
or were Participants in the Long-Term
Investment Plan Sponsored by Nortel
Networks Inc.

AND
TO:
**TORYS LLP**
79 Wellington Street West, Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Scott Bomhof

Email:   sbomhof@torys.com
Tel:      416.865.7370
Fax:      416.865.7380

Lawyers for Nokia Siemens Networks B.V.

AND
TO:
**LANG MICHENER LLP**
Brookfield Place
181 Bay Street, Suite 2500
Toronto, Ontario, M5J 2T7

Sheryl E. Seigel

Email:  sseigel@langmichener.ca
Tel:      416.307.4063
Fax:      416.365.1719

Lawyers for The Bank of New York Mellon

AND
TO:
**McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario  M5K 1E6

Heather Meredith

Email:   hmeredith@mccarthy.ca
Tel:      416.601.8342
Fax:      416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND
TO:
**DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:  dwinters@justice.gc.ca
Tel:      416.973.3172
Fax:      416.973.0810

AND
TO:
**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Susan M. Grundy
Marc Flynn

Email:  susan.grundy@blakes.com
Tel:      416.863.2572
Fax:      416.863.2653

Email:  marc.flynn@blakes.com
Tel:      416.863.2685
Fax:      416.863.2653

Lawyers for Telefonaktiebolaget L M
Ericsson (publ)

AND TO: **BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:    416.863.2958
Fax:    416.863.2653

Email:  milly.chow@blakes.com
Tel:    416.863.2594
Fax:    416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:    416.863.2426
Fax:    416.863.2653

Email:  craig.thorburn@blakes.com
Tel:    416.863.2965
Fax:    416.863.2653

Lawyers for MatlinPatterson Global
Advisers LLC, MatlinPatterson Global
Opportunities Partners III L.P. and
MatlinPatterson Opportunities Partners
(Cayman) III L.P.

AND TO: **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:  kmcelcheran@mccarthy.ca
Tel:    416.601.7730
Fax:    416.868.0673

Email:  rstabile@mccarthy.ca
Tel:    416.601.8335
Fax:    416.868.0673

Lawyers for Avaya Inc.

AND TO: **SACK GOLDBLATT MITCHELL LLP**
20 Dundas Street West
Suite 1100
Toronto, Ontario  M5G 2G8

James McDonald
Darrell Brown

Email:  jmcdonald@sgmlaw.com
Tel:    416.979.6425
Fax:    416.591.7333

Email:  dbrown@sgmlaw.com
Tel:    416.979.4050
Fax:    416.591.7333

Lawyers for Edmund Fitzgerald

AND TO: **FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:  jspiegelman@foglers.com
Tel:    416.864.9700
Fax:    416.941.8852

Lawyers for Belden (Canada) Inc.

AND
TO:

**STIKEMAN ELLIOTT LLP**
5300 Commerce Court West
199 Bay Street
Toronto, ON  M5L 1B9

Sean F. Dunphy

Email:   sdunphy@stikeman.com
Tel:     416.869.5662
Fax:     416.947.0866

Lawyers for GENBAND Inc.

AND
TO:

**STIKEMAN ELLIOTT LLP**
445 Park Avenue, 7th Floor
New York, NY  10022

Gordon Cameron
Ron Ferguson

Email:   gncameron@stikeman.com
Tel:     212.845.7464
Fax:     212.371.7087

Email:   rferguson@stikeman.com
Tel:     212.845.7477
Fax:     212.371.7087

Lawyers for GENBAND Inc.

AND
TO:

**BORDEN LADNER GERVAIS LLP**
Barristers and Solicitors
Scotia Plaza, Suite 4400
40 King Street West
Toronto, ON  M4H 3Y4

John D. Marshall
Craig J. Hill

Email:   jmarshall@blgcanada.com
Tel:     416.367.6024
Fax:     416.361.2763

Email:   chill@blgcanada.com
Tel:     416.367.6156
Fax:     416.631.7301

Lawyers for the U.K. Pensions Regulator

AND
TO:

**VINCENT DAGENAIS GIBSON LLP/s.r.l**
Barristers and Solicitors
600-325 Dalhousie Street
Ottawa, ON  K1N 7G2

Thomas Wallis

E-mail:  thomas.wallis@vdg.ca
Tel:     613.241.2701
Fax:     613.241.2599

Lawyers for La Regie des Rentes du Quebec

AND
TO:

**ROCHON GENOVA LLP**
121 Richmond Street West
Suite 900
Toronto, ON  M5H 2K1

Joel P. Rochon

Email:   jrochon@rochongenova.com
Tel:     416.363.1867
Fax:     416.363.0263

Lawyers for the Opposing LTD Employees

AND
TO:

**BLAKE, CASSELS & GRAYDON**
Box 25, Commerce Court West
199 Bay Street, Suite 2800
Toronto, Ontario  M5L 1A9

Pamela J. Huff
J. Jeremy Forgie

Email:   pamela.huff@blakes.com
Tel:     416.863.2958
Fax:     416.863.2653

Email:   jeremy.forgie@blakes.com
Tel:     416.863.3888
Fax:     416.863.2653

Lawyers for The Northern Trust Company,
Canada

AND TO:
**MACLEOD DIXON LLP**
3700 Canterra Tower
400 Third Avenue SW
Calgary, Alberta
T2P 4H2

Kyle D. Kashuba

Email:   kyle.kashuba@macleoddixon.com
Tel:     403.267.8399
Fax:     403.264.5973

Constellation NewEnergy Canada Inc.

AND TO:
**SACK GOLDBLATT MITCHELL**
500 – 30 rue Metcalfe St.
Ottawa, ON  K1P 5L4

Peter Engelmann
Fiona Campbell

Email:   pengelmann@sgmlaw.com
Tel:     613-482-2452
Fax:     613-235-3041

Email:   fcampbell@sgmlaw.com
Tel:     613-482-2451
Fax:     613-235-3041

Lawyers for the LTD Beneficiaries in Respect of the Distribution of the Corpus of the Health and Welfare Trust

AND TO:
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006

James Bromley
Lisa Schweitzer

Email:   jbromley@cgsh.com
         lschweitzer@cgsh.com
Tel:     212.225.2000
Fax:     212.225.3999

Lawyers for Nortel Networks Inc.

AND TO:
**LERNERS LLP**
130 Adelaide St. West
Suite 2400
Toronto, ON  M5H 3P5

William E. Pepall

Email:   wpepall@lerners.ca
Tel:     416.601.2352
Fax:     416.867.2415

Lawyers for the Former Employees in Respect of the Distribution of the Corpus of the Health and Welfare Trust

AND TO:
**LANG MICHENER LLP**
Brookfield Place, Suite 2500
181 Bay Street
Toronto, ON  M5J 2T7

D. Brent McPherson

Email:   bmcpherson@langmichener.ca
Tel:     416.307.4103
Fax:     416.304.3769

Lawyers for Wells Fargo Bank, National Association, as successor by merger to Wachovia Bank, N.A., in its capacity as Servicer for the Nortel Networks Pass-Through Trust, Series 1-1

AND TO:
**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Barbara J. Boake
James D. Gage

E-mail:  bboake@mccarthy.ca
Tel:     416.601.7557
Fax:     416.868.0673

Email:   jgage@mccarthy.ca
Tel:     416.601.7539
Fax:     416.686.0673

Lawyers for Morneau Sobeco Limited Partnership

AND
TO:

**DAVID STEER**
10 Cypress Court
Nepean, ON  K2H 8Z8

E-mail:  davidsteer127@sympatico.ca

AND
TO:

**TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Tony DeMarinis
Scott Bomhof
Sheila Block
Andrew Gray

Email:   tdemarinis@torys.com
            sbomhof@torys.com
            sblock@torys.com
            agray@torys.com
Tel:       416.865.0040
Fax:      416.865.8730

Lawyers for Nortel Networks Inc.

**COURTESY COPIES:**

AND
TO:
**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email:   sbrown@lrlaw.com

Tel:      602.262.5321
Fax:      602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND
TO:
**CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail:  sreisman@curtis.com
          jdrew@curtis.com

Tel:      212.696.6000
Fax:      212-697-1559

Lawyers for Flextronics International

AND
TO:
**AKIN GUMP STRAUSS HAUER &
FELD LLP**
One Bryant Park
New York, NY  10036

Fred S. Hodara

Email:   fhodara@akingump.com

Tel:      212.872.1000
Fax:      212.872.1002

U.S. Lawyers for the Official Committee
of Unsecured Creditors

AND
TO:
**MILBANK, TWEED, HADLEY
McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY  10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email:   DDunne@milbank.com
Tel:      212.530.5770
Fax:      212.530.5219

Email:   ALeblanc@milbank.com
Tel:      212.835.7574
Fax:      212.530.5219

Email:   APisa@milbank.com
Tel:      212.530.5319
Fax:      212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

AND
TO:
**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York  10019

Michael L. Schein

Email:  mschein@vedderprice.com

Tel:    212.407.6920
Fax:    212.407.7799

U.S. Lawyers for Telmar Network
Technology, Inc. and Precision
Communication Services, Inc.


AND
TO:
**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :
    andrew.robertson@macleoddixon.co
m
    caylee.rieger@macleoddixon.com

Tel :    403.267.8222
Fax :    403.264.5973

Agent for Nelligan O'Brien Payne LLP,
lawyers for the Steering Committee of
Recently Severed Canadian Nortel
Employees and lawyers for the Steering
Committee of Nortel Canadian Continuing
Employees – Post CCAA as at January 14,
2009


AND
TO:
**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois  60601

Eric S. Prezant

Email:    eric.prezant@bryancave.com
Tel:      312.602.5033
Fax:      312.602.5050

U.S. Lawyers for Tellabs, Inc.


AND
TO:
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4834

Michael J. Riela

Email: michael.riela@lw.com

Tel :    212.906.1373
Fax :    212.751.4864

U.S. Lawyers for The Bank of New York
Mellon

Court File No. 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding Commenced at Toronto

**NOTICE OF CROSS-MOTION**
**(June 7, 2011)**

DAVIES WARD PHILLIPS & VINEBERG LLP
1 First Canadian Place
Suite 4400
Toronto, ON M5X 1B1

Matthew P. Gottlieb (LSUC #32268B)
Robin B. Schwill (LSUC #38452I)
Sean R. Campbell (LSUC #49514J)
Tel:    416.863.0900
Fax:   416.863.0871

Lawyers for the Joint Administrators

Court File No.  09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE COMPANIES' CREDITORS
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS
AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT       OF       NORTEL       NETWORKS
CORPORATION,   NORTEL   NETWORKS   LIMITED,
NORTEL   NETWORKS   GLOBAL   CORPORATION,
NORTEL NETWORKS INTERNATIONAL CORPORATION
AND      NORTEL      NETWORKS      TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS
AMENDED

## AFFIDAVIT OF KEVIN FRANCIS LLOYD

I, KEVIN FRANCIS LLOYD, of the City of London, in the Country of
England , MAKE OATH AND SAY:

1.        I am a partner of Herbert Smith LLP, solicitors for the Joint Administrators
to the EMEA Debtors and, as such, I have knowledge of the matters to which I
hereinafter depose in this Affidavit.

2.        On May 19, 2011, I made a declaration in the United States Bankruptcy
Court for the District of Delaware, Case No. 09-10138(KG) (the "Declaration") (the "US

- 2 -

Action"). I made the Declaration in opposition to the Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and in support of the EMEA Debtor's Cross-Motion to Compel Arbitration in the US Action.

3.          I attach as Exhibit "A" to my Affidavit, a copy of the Declaration in the U.S. Action so that the Declaration will be filed as evidence in this proceeding. I swear that the facts contained in the Declaration are true.

4.          By way of update since I made the Declaration, I emailed counsel for the Bondholder Committee, the Canadian Debtor, the US Debtor, the UCC and the Canadian Monitor, on 23 May 2011, repeating my request that the parties confer in order to agree a protocol under clause 12 of the Interim Funding and Settlement Agreement (the "IFSA"). I attach as Exhibit "B" to my Affidavit a copy of this email.

5.          By return email on 25 May 2011, counsel for the US Debtor stated that "*given your client's insistence on arbitration, discussions on that issue [i.e. the Joint Administrators proposed protocol] would not be productive*". I attach as Exhibit "C" to my Affidavit a copy of this email.

6.          By return email on 25 May 2011, counsel for the Canadian Debtor stated that they "*did not believe any discussions regarding arbitration would be productive*". I attach as Exhibit "D" to my Affidavit a copy of this email.

- 3 -

7.        The Joint Administrators remain available to enter into discussions to
agree binding procedures under the IFSA for an international arbitration to determine
the allocation of sales proceeds.


SWORN BEFORE ME at the        )
City of London, in the         )
Country of England, this       )
_31_ day of May, 2011          )

                                        KEVIN FRANCIS LLOYD

Alexander Evans
A Solicitor / A Commissioner for taking
        Affidavits, etc.

            ASHURST LLP
            BROADWALK HOUSE
             5 APPOLD STREET
              LONDON  EC2A 2HA

"Exhibit "A" is the Declaration of Kevin Francis Lloyd dated May 19, 2011 which has been filed with the U.S. Court and will be filed separately in the Ontario Court.

Due to its size, it will not be duplicated here.

## McGhee, Kristofer

**From:** LLOYD, KEVIN

**Sent:** 23 May 2011 16:21

**To:** Luskin, Michael; 'Adler, Derek J.T.'; Botter, David; 'Hodara, Fred'; tkreller@milbank.com; 'APisa@milbank.com'; 'dtay@ogilvyrenault.com'; 'jpasquariello@goodmans.ca'; 'jstam@ogilvyrenault.com'; eharron@ycst.com; 'rschwill@dwpv.com'; 'MGottlieb@dwpv.com'; 'jcarfagnini@goodmans.ca'; 'Jbromley@cgsh.com'

**Cc:** McGhee, Kristofer; WHITEOAK, JOHN

All

I refer to my letter of 9 May 2011.

As noted in that letter and in my declaration sworn on Thursday, a finalised protocol should be able to be readily achieved between us between now and 7 June (building on the substantial agreement already in place). Indeed, our Memorandum of Law attaches a protocol which would be acceptable (and which was substantially in the form of the protocol suggested by the US estate, save that we made that protocol consistent with the IFSA).

Notwithstanding Cleary's response to my letter, we would again request the parties confer in order to enter into a protocol under clause 12 of the IFSA.

To this end, we are generally available to discuss, other than between Wednesday and Friday of this week when I am away.

Please let us know your availability.

Further, we have received a request from the UK Pension Authorities for a copy of the material which we filed in the US last week. As you are aware, we filed that material under seal in case any party wishes to assert confidentiality over any portion of that material. Notwithstanding that, we see no reason why the Pension Authorities should not be provided a copy and intend to provide a copy to them tomorrow morning subject to them agreeing to hold the information in confidence pending determination of any confidentiality order on 7 June. We assume that no one has any objection with this approach bearing in mind that the UK Pension Authorities are a party to the mediation. If, however, our assumption is incorrect then please let us know by tomorrow morning (our time).

Regards,

Kevin

## McGhee, Kristofer

| | |
|---|---|
| **From:** | James L BROMLEY [jbromley@cgsh.com] |
| **Sent:** | 25 May 2011 16:16 |
| **To:** | LLOYD, KEVIN |
| **Cc:** | Adler, Derek J.T.; APisa@milbank.com; Botter, David; dtay@ogilvyrenault.com; eharron@ycst.com; Hodara, Fred; jcarfagnini@goodmans.ca; WHITEOAK, JOHN; jpasquariello@goodmans.ca; jstam@ogilvyrenault.com; McGhee, Kristofer; Luskin, Michael; MGottlieb@dwpv.com; rschwill@dwpv.com; tkreller@milbank.com |

**Subject:** Re:

Dear Kevin,

As we said in our May 12 letter, we are available at your convenience to discuss scheduling and similar issues regarding the proposed allocation protocol submitted with our allocation motion. Your email is quite incorrect, however, in describing a "substantial agreement already in place" regarding a protocol, as your own submissions on the allocation motion demonstrate. In particular, given your client's insistence on arbitration, discussions on that issue would not be productive.

We do not object to your sharing of the materials with counsel to the UK pension trustees on the terms you describe.

Best regards,

Jim

---

James L. Bromley
Cleary Gottlieb Steen & Hamilton LLP
Assistant: bhouston@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2264 | f: +1 212 225 3999 | m: +1 646 894 3014
www.clearygottlieb.com | jbromley@cgsh.com

| | |
|---|---|
| **From:** | "LLOYD, KEVIN" <Kevin.Lloyd@herbertsmith.com> |
| **To:** | "Luskin, Michael" <luskin@hugheshubbard.com>, "Adler, Derek J.T." <adler@hugheshubbard.com>, "Botter, David" <dbotter@AkinGump.com>, "Hodara, Fred" <fhodara@AkinGump.com>, <tkreller@milbank.com>, <APisa@milbank.com>, <dtay@ogilvyrenault.com>, <jpasquariello@goodmans.ca>, <jstam@ogilvyrenault.com>, <eharron@ycst.com>, <rschwill@dwpv.com>, <MGottlieb@dwpv.com>, <jcarfagnini@goodmans.ca>, <Jbromley@cgsh.com> |
| **Cc:** | "McGhee, Kristofer" <Kristofer.McGhee@herbertsmith.com>, "WHITEOAK, JOHN" <John.Whiteoak@herbertsmith.com> |
| **Date:** | 05/23/2011 11:21 AM |
| **Subject:** | |

All

I refer to my letter of 9 May 2011.

As noted in that letter and in my declaration sworn on Thursday, a finalised protocol should be able to be readily achieved between us between now and 7 June (building on the substantial agreement already in place). Indeed, our Memorandum of Law attaches a protocol which would be acceptable (and which was substantially in the form of the protocol suggested by the US estate, save that we made that protocol consistent with the IFSA).

Notwithstanding Cleary's response to my letter, we would again request the parties confer in order to enter into a protocol under clause 12 of the IFSA.

31/05/2011

To this end, we are generally available to discuss, other than between Wednesday and Friday of this week when I am away.

Please let us know your availability.

Further, we have received a request from the UK Pension Authorities for a copy of the material which we filed in the US last week. As you are aware, we filed that material under seal in case any party wishes to assert confidentiality over any portion of that material. Notwithstanding that, we see no reason why the Pension Authorities should not be provided a copy and intend to provide a copy to them tomorrow morning subject to them agreeing to hold the information in confidence pending determination of any confidentiality order on 7 June. We assume that no one has any objection with this approach bearing in mind that the UK Pension Authorities are a party to the mediation. If, however, our assumption is incorrect then please let us know by tomorrow morning (our time).

Regards,

Kevin

This message is confidential and may be covered by legal professional privilege. If you have received this message in error please delete it and notify the sender immediately by contacting our main switchboard +44 (0)20 7374 8000; you should not retain the message or disclose its contents to anyone. Herbert Smith LLP may monitor e-mail communications in accordance with applicable law and regulations.

Herbert Smith LLP is a Limited Liability Partnership registered in England and Wales with registered number OC310989. It is regulated by the Solicitors' Regulation Authority of England and Wales whose rules can be accessed via www.sra.org.uk/code-of-conduct.page. A list of the members and their professional qualifications is open to inspection at the registered office, Exchange House, Primrose Street, London EC2A 2HS. We use the word partner to refer to a member of Herbert Smith LLP, or an employee or consultant with equivalent standing and qualifications. Herbert Smith LLP's registration number for Value Added Tax in the United Kingdom is GB 927 1996 83.

Herbert Smith LLP, Gleiss Lutz and Stibbe are three independent firms which have a formal alliance. Further information is available from www.herbertsmith.com.

This message is being sent from a law firm and may contain confidential or privil intended recipient, please advise the sender immediately by reply e-mail attachments without retaining a copy.

## McGhee, Kristofer

**From:** Mark, Alan [amark@ogilvyrenault.com]
**Sent:** 25 May 2011 18:56
**To:** LLOYD, KEVIN
**Cc:** luskin@hugheshubbard.com; adler@hugheshubbard.com; 'Botter, David'; 'Hodara, Fred'; tkreller@milbank.com; apisa@milbank.com; Tay, Derrick C.; 'Pasquariello, Joe'; Stam, Jennifer; eharron@ycst.com; 'Schwill, Robin'; 'Gottlieb, Matthew'; 'Carfagnini, Jay'; 'James L BROMLEY'; WHITEOAK, JOHN

Dear Kevin,

On behalf of the Canadian estate, we agree with the substance of Jim Bromley's email below with respect to your mischaracterization of the previous protocol discussions. Having said that, the Canadian estate is similarly willing to discuss the allocation protocol proposed by the US estate and UCC including certain changes that it may require prior to June 7 with the same caveat that we do not believe any discussions regarding arbitration would be productive.

We do not object to your sharing of the materials with counsel for the UK pension trustees as requested, provided you agree that we may share them with the CCC on similar terms. Please let me know forthwith if this is a problem for you.

Regards,


**From:** James L BROMLEY [mailto:jbromley@cgsh.com]
**Sent:** May 25, 2011 11:16 AM
**To:** LLOYD, KEVIN
**Cc:** Adler, Derek J.T.; APisa@milbank.com; Botter, David; Tay, Derrick C.; eharron@ycst.com; Hodara, Fred; jcarfagnini@goodmans.ca; WHITEOAK, JOHN; jpasquariello@goodmans.ca; Stam, Jennifer; McGhee, Kristofer; Luskin, Michael; MGottlieb@dwpv.com; rschwill@dwpv.com; tkreller@milbank.com
**Subject:** Re:

Dear Kevin,

As we said in our May 12 letter, we are available at your convenience to discuss scheduling and similar issues regarding the proposed allocation protocol submitted with our allocation motion. Your email is quite incorrect, however, in describing a "substantial agreement already in place" regarding a protocol, as your own submissions on the allocation motion demonstrate. In particular, given your client's insistence on arbitration, discussions on that issue would not be productive.

We do not object to your sharing of the materials with counsel to the UK pension trustees on the terms you describe.

Best regards,

Jim

James L. Bromley
Cleary Gottlieb Steen & Hamilton LLP
Assistant: bhouston@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2264 | f: +1 212 225 3999 | m: +1 646 894 3014
www.clearygottlieb.com | jbromley@cgsh.com


**Alan H. Mark**


31/05/2011

T: 416.216.4865
F: 416.216.3930
M: 416.505.8066
amark@ogilvyrenault.com

**Ogilvy Renault joins Norton Rose Group on June 1, 2011 / Le 1ᵉʳ juin 2011, Ogilvy Renault se joint au Groupe Norton Rose**



**OGILVY RENAULT** LLP / S.E.N.C.R.L., s.r.l.

Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, Ontario, M5J 2Z4

**T : 416.216.4000**
Montréal / Ottawa / Québec / Toronto / Calgary / London
ogilvyrenault.com

*This message is intended for the exclusive use of its addressee and may contain confidential information and be protected under solicitor-client privilege. To view Ogilvy Renault's confidentiality message, please click here. Please advise if you wish us to use a mode of communication other than regular, unsecured e-mail in our communications with you.*

*Ce message est à l'usage exclusif de son destinataire et peut contenir des renseignements confidentiels et être protégé par le secret professionnel. Pour prendre connaissance de l'avis de confidentialité d'Ogilvy Renault, veuillez cliquer ici. Si vous désirez que nous communiquions avec vous par un autre moyen de transmission que le courrier électronique ordinaire non sécurisé, veuillez nous en aviser.*

42

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION,
NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION.
APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

Court File No: 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

AFFIDAVIT OF KEVIN FRANCES LLOYD

DAVIES WARD PHILLIPS & VINEBERG LLP
44TH FLOOR
1 FIRST CANADIAN PLACE
TORONTO, ON M5X 1B1

Robin B. Schwill (LSUC #38452I)
Matthew P. Gottlieb (LSUC #32268B)
Tel:   416.863.0900
Fax:   416.863.0871

Lawyers for the Joint Administrators of Nortel
Networks UK Limited

Court File No: 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### COMMERICAL LIST

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORTATION

### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AFFIDAVIT OF TAI-HENG CHENG
### (sworn May 31, 2011)

I, Tai-Heng Cheng, of the City of New York, in the State of New York, MAKE OATH AND SAY:

1.     I have been asked to provide my independent expert opinion under New York law, as well as applicable U.S. federal law and international law, on certain issues relating to this case.

## I.   QUALIFICATIONS

2.     I am Senior Legal Advisor at Hoguet Newman Regal & Kenney, LLP.  I am a member of the bars of the State of New York, the U.S. District Courts for the Southern, Eastern and Western Districts of New York, and the U.S. Court of Appeals for the Second Circuit.  I have litigated several cases involving contract law in New York state and U.S. federal courts, and have assisted the U.S. Court of Appeals for the Second Circuit as *amicus curiae* on international law issues.

3.     I have served as an arbitrator, expert and counsel in international arbitrations under ICSID, UNCITRAL, ICDR, ICC, SCC, and JAMS rules, and am a member of the panels of neutrals of the ICDR, CPR, and HKIAC.  I have also advised the Republic of Kosovo on international law matters, including treaties.  In 2010, I chaired an arbitration tribunal that resolved an international contract dispute governed by New York law.  I am presently serving as an expert in international law and arbitration agreements in two international arbitrations.

4.     In addition to being a practicing New York attorney, I am a tenured Professor of Law and Director of the Institute for Global Law, Justice and Policy at New York Law School, where I have taught contract law and international arbitration almost annually since 2006.  I am the author of forty published and forthcoming books, articles and essays in international law, of which a dozen of them address international dispute resolution.  I have given sixty lectures worldwide on international law, including twenty addressing international dispute resolution.  U.S. federal appeals and district court decisions, as well

as U.S. Supreme Court briefs, have cited and relied on my scholarship as authoritative on international law.  I have been a visiting professor at Vanderbilt Law School and City University of Hong Kong School of Law, in 2010 and 2008, respectively, and will be a visiting professor at Hebrew University School of Law in 2012.  In all my visiting professorships, I teach courses and give public lectures on international law and international dispute resolution.

5.      I am an elected member of the Executive Council of the American Society of International Law ("ASIL"), and was co-chair of its 2011 Annual Meeting.  In 2008, I served on its Awards Committee, which selected preeminent works to receive ASIL's Certificate of Merit, its highest award for scholarship.  I am also an elected member of the American Law Institute, and serve on its Members Consultative Committees that assist in the preparation of the Restatement (Third) of the U.S. Law of International Commercial Arbitration, and the Principles of World Trade Organization Law.  I also serve on the Academic Council of the Institute for Transnational Arbitration, and am Honorary Fellow of the Foreign Policy Association.

6.      I hold Doctor of the Science of Law and Master of Laws degrees from Yale Law School from 2004 and 2000, respectively, where I was a Howard M. Holtzmann Fellow for International Law.  I also received a Bachelor of Arts in Law with First Class Honors from Oxford University in 1999, where I was an Oxford University Scholar.

7.      A *curriculum vitae* setting forth a complete list of my professional activities and publications is appended to this affidavit as Exhibit A.

## II.    SUMMARY OF OPINION

8.      The court-appointed administrators and authorized foreign representatives for Nortel Networks UK Limited and the EMEA Debtors (collectively, the "Joint Administrators") have asked me to express my independent expert opinion, under New York law and applicable U.S. federal law: (i) on whether the Joint Administrators and

2

other debtors of the Nortel estate are required to resolve disputes over the allocation of the sale proceeds of Nortel assets (the "Sale Proceeds") through arbitration (as opposed to judicial adjudication); (ii) on whether courts have jurisdiction to resolve the merits of any dispute over the allocation of the Sale Proceeds considering the provisions of the IFSA; and (iii) on what evidence would be admissible to interpret an ambiguous arbitration agreement.

9.      In my opinion, under New York law and the U.S. Federal Arbitration Act (the "FAA"), the Joint Administrators and other debtors of the Nortel estate are required to resolve any disputes over the allocation of the Sale Proceeds through international arbitration, by which I mean an arbitration involving parties of more than one nationality. They must resolve such disputes through international arbitration because they signed the Interim Funding and Settlement Agreement dated as of June 9, 2009 ("IFSA"), which contains a binding arbitration agreement in Section 12(b). In light of international commercial practices and terminology, and the entire context of Section 12, the words of Section 12(b) plainly and unequivocally require the parties to the IFSA to resolve all disputes concerning the allocation of the Sale Proceeds through an *ad hoc* arbitration. An *ad hoc* arbitration is an arbitration in which the parties did not select the rules of any arbitral institution in their arbitration agreement. As with some other *ad hoc* arbitration agreements, the IFSA parties agreed to negotiate in good faith to establish binding procedures for the *ad hoc* arbitration. As an objective matter, this further shows that the parties did not intend for their disputes to be resolved by a court because they do not have the legal authority to bind a court to the procedures to which they agreed.

10.     Because the IFSA parties have specifically agreed to *ad hoc* arbitration, the general jurisdiction provision in Section 16(b) of the IFSA granting jurisdiction to U.S. and Ontario courts must be interpreted, as a matter of contract law, to confer only limited jurisdiction to courts. This limited jurisdiction is jurisdiction to determine whether the arbitration agreement is valid and if so, to compel arbitration, and to review the arbitration award after an arbitration tribunal issues it, bearing in mind that the standard of review is much higher than an appellate standard. This interpretation is consistent

3

with the FAA and the U.N. Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), to which both the United States and Canada are treaty parties and which the United States implemented domestically through the FAA. The court has no jurisdiction to adjudicate the merits of a dispute over the allocation of the Sale Proceeds, which is subject to dispute resolution only through international arbitration.

11.     In New York, if a court were to find that Section 12 is ambiguous, extrinsic evidence of the parties' intent to arbitrate these issues is admissible to resolve the ambiguity. Such evidence includes oral agreements or writings between the parties made prior to or contemporaneous with the execution of the IFSA, as well as evidence of the course of conduct between the parties following the execution of the IFSA. If, after reviewing all evidence submitted, any doubt remained as to the existence of an agreement to arbitrate between the parties, New York law requires courts to support the federal policy favoring arbitration and therefore to resolve any ambiguities in favor of arbitration.

12.     My opinions are explained fully below and are supported by statutes, binding precedents, and persuasive authority.

## III.     QUESTIONS PRESENTED AND ANSWERS

13.     The Joint Administrators have asked me to express an opinion on the following specific questions of New York law:

> (A)     The requirements for there to be an enforceable agreement to arbitrate a dispute;
>
> (B)     Whether Section 12(b) of the IFSA constitutes an agreement to arbitrate relating to the allocation of Sales Proceeds;

(C)     Whether Section 16(b) of the IFSA provides the Court with jurisdiction to determine any disputes relating to the allocation of Sales Proceeds;

(D)     Whether Section 12(c) of the IFSA creates a binding obligation on any party to negotiate in good faith towards an agreement on the Interim Sales Protocol referred to in the IFSA;

(E)     Whether extrinsic evidence is admissible in order to consider and determine the proper interpretation of the IFSA with respect to whether the parties agreed to arbitration and regarding what the term "dispute resolver(s)" in the IFSA means; and

(F)     Whether evidence regarding the parties' negotiations is admissible to determine whether such negotiations were conducted in good faith.

14.    For the reasons set forth in more detail below, it is my opinion that:

(A)     Under New York law, an arbitration agreement is valid and enforceable if it is in writing and evinces an intent of the parties to the agreement to submit themselves to binding arbitration. The parties need not agree to the arbitration procedures; rather, New York law only requires an agreement to be bound. Additionally, the terms "arbitration," "arbitrator," or "arbitrate" need not appear in the text of the agreement so long as the agreement evidences the intent of the parties to submit to arbitration. Where the parties' intent is discernible from the plain meaning of the language of the contract, there is no need to look further.

(B)     Section 12(b) of the IFSA is a valid and enforceable arbitration agreement because it is a written agreement evidencing the intent of the parties to submit themselves to binding *ad hoc* arbitration and is consistent with public policy favoring arbitration of international commercial disputes.

(C)     Section 16(b) of the IFSA does not provide a court with jurisdiction to determine the merits of any dispute relating to the allocation of the Sales Proceeds because it is displaced by and must be interpreted consistently with the more specific arbitration clause contained in Section 12(b). Section 16(b) confers on the court limited jurisdiction to determine the validity of the arbitration agreement in Section 12(b) and to enforce it, as well as to review the arbitration award after an arbitration tribunal renders it. If the parties are unable to reach an agreement on binding procedures for arbitration, the FAA requires the court to appoint an arbitral tribunal, and the tribunal will decide the rules of the arbitration as well as the merits of the arbitral dispute.

(D)     Section 12(c) of the IFSA creates a binding obligation on the parties to negotiate in good faith towards an agreement on the Interim Sales Protocol referred to in the IFSA. As noted above, where the parties are unable to reach such agreement, the court shall, under the FAA, appoint an arbitration panel, which will then decide the rules to apply and adjudicate the merits of the dispute. The fact that the parties do not agree on a protocol will not invalidate either the arbitration agreement or the obligation to arbitrate thereunder.

(E)     To the extent that a court determines that Section 12(b) is ambiguous as to the parties' intent to enter into an arbitration agreement, extrinsic evidence of words and actions before and after the conclusion of the IFSA is admissible to determine the parties' intent.

(F)     Evidence regarding the parties' negotiations after the IFSA was concluded is admissible to determine whether such negotiations were conducted in good faith.

6

IV.    **MATERIALS CONSIDERED**

15.    In preparing this opinion, I have reviewed the following documents:

(A)    Notice of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief, filed in *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Bankr. Del. Apr. 25, 2011);

(B)    Declaration of Inna Rozenberg in Support of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief, and its attached exhibits, filed in *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Bankr. Del. Apr. 25, 2011);

(C)    Declaration of Kevin Francis Lloyd ("Lloyd Declaration" or "Lloyd Decl.") in Opposition to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and in Support of Cross-Motion to Compel Arbitration, and its attached exhibits, filed in *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Bankr. Del. May 19, 2011);

(D)    The Joint Administrators' Motion for an Order Pursuant to § 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018 for Authorization To File Under Seal (i) the Joint Administrators' Memorandum of Law in Opposition to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and in Support of Cross-Motion to Compel Arbitration, filed in *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Bankr. Del. May 19, 2011);

(E)    The Joint Administrators' (i) Objection To Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and (ii) Cross-Motion

to Compel Arbitration, filed in *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Bankr. Del. May 19, 2011);

(F)    The Joint Administrators' Memorandum of Law in Support of Their (i) Objection to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and (ii) Cross-Motion to Compel Arbitration, in *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Bankr. Del. May 19, 2011);

(G)    Motion Record for *In re Companies' Creditors Arrangement Act, R.S.C.1985, c. C-36, as Amended*, (Ontario Sup. Ct., Commercial List, returnable June 7, 2011).

## V.    APPLICABLE LAW

16.    I have been asked to provide my opinion under New York law, as well as applicable U.S. federal law and international law.  Preliminarily, I note that New York law is harmonized with and modified by the FAA on issues relating to international arbitration.[1]  The FAA is the implementing legislation in the United States of the New York Convention.

## VI.    THE REQUIREMENTS FOR AN ENFORCEABLE AGREEMENT TO ARBITRATE UNDER NEW YORK LAW

17.    The requirements for an enforceable agreement to arbitrate a dispute under New York law are that there must be a written agreement to arbitrate that evinces an intent of

---

[1] *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (noting that where New York law applies to interpreting an arbitration agreement, "under the FAA certain presumptions inform the analysis," including "the federal policy in favor of arbitration [which] requires that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

the parties to submit themselves to binding arbitration.[2]  Such an arbitration agreement is valid and must be enforced unless there is a clear public policy against arbitrating the dispute covered by the agreement.[3]

### A.    The Agreement to Arbitrate

18.    When deciding if there is an enforceable arbitration agreement, New York courts first consider whether the parties agreed to arbitrate the dispute at issue.  Whether an arbitration agreement exists raises basic questions of contract formation, such as whether the parties have assented to arbitration, either by agreeing to a freestanding arbitration agreement or by agreeing to an arbitration clause in a contract.[4]  An arbitration agreement must be in writing, and evince an intent by the parties to arbitrate.[5]

19.    The Court will infer the parties' intention from all the provisions of the agreement, interpreting the "document as a whole to determine the parties' purpose and intent, giving a practical interpretation to the language employed so that the parties' reasonable expectations are realized."[6]  Where the parties' intent is discernible from the plain meaning of the language of the contract, there is no need to look further.[7]

20.    It is not necessary to use the terms "arbitrate," "arbitration," or "arbitrator" for an agreement to arbitrate to be enforceable as such.[8]  "[N]o particular wording is required to

---

[2] *Crawford v. Feldman*, 604 N.Y.S.2d 585, 587 (N.Y. App. Div. 1993); *Just In-Material Designs, Ltd. v. I.T.A.D. Assocs., Inc.*, 463 N.Y.S.2d 202, 204-06 (N.Y. App. Div. 1983).

[3] *Broome v. N.Y. State Law Enforcement Officers Union. Dist. Council 82, AFSCME, AFL-CIO*, 915 N.Y.S.2d 708, 710 (N.Y. App. Div. 2011); *In re Arbitration Between City of Kingston and Kingston Prof'l Fire Fighters Assoc.*, 921 N.Y.S.2d 384 (N.Y. App. Div. 2011).

[4] *See, e.g., Merrill Lynch Int'l Fin., Inc. v. Donaldson*, 895 N.Y.S.2d 698, 702 (N.Y. Sup. Ct. 2010) (noting that ordinary principles of contract interpretation determine whether a party is bound by an agreement to arbitrate).

[5] *Crawford*, 604 N.Y.S.2d at 586-86; *Just In-Material Designs*, 463 N.Y.S.2d at 204-06.

[6] *In re Same Time Holdings Ltd. & Red Board Ltd.*, No. 101119/06, 2006 WL 2079332, at *3 (N.Y. Sup. Ct. May 20, 2006).

[7] *Evan v. Famous Music Corp.*, 807 N.E.2d 869, 872 (N.Y. 2004).

[8] Carmody-Wait 2d § 141:14; 5 N.Y. Jur. 2d Arbitration & Award § 89.

constitute a valid, binding arbitration agreement, nor even the inclusion of the words 'arbitrate' or 'arbitrator.'"[9]

21.     In interpreting whether an agreement evinces an intention to arbitrate, New York law is consistent with the federal presumption in favor of arbitration enacted in the FAA. The FAA "creates a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act."[10]   It was implemented to give effect to the "liberal federal policy favoring arbitration agreements."[11]  "[U]nder the FAA, certain presumptions inform the analysis," including "the federal policy in favor of arbitration [which] requires that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[12]

22.     Like the FAA, New York law follows a liberal policy of promoting arbitration both to give effect to the intention of the parties and to ease congestion of court calendars.[13]  The New York Court of Appeals has instructed that New York "favors and encourages arbitration as a means of conserving time and resources of the courts and the contracting parties."[14]  As such, New York courts "interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration."[15]  Accordingly, New

---

[9] *Railworks Corp. v. Villafane Elec. Corp.*, 788 N.Y.S2d 834, 837 (N.Y. Sup. Ct. 2004) (quoting *Lovisa Constr. Co. v. Ctny. of Suffolk.*, 485 N.Y.S.2d 309, 310 (N.Y. App. Div. 1985)).

[10] 9 U.S.C. §§ 1-16; *PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) (quoting *Moses*, 460 U.S. at 24-25.).

[11] *Moses*, 460 U.S. at 24; *Singer v. Jeffries & Co. Inc.*, 575 N.E.2d 98, 100-01 (N.Y. 1991).

[12] *Shaw Group*, 322 F.3d at 120 (quoting *Moses*, 460 U.S. at 24-25.).

[13] *Grayson-Robinson Stores, Inc. v. Iris Const. Corp.*, 168 N.E.2d 377, 379 (N.Y. 1960).

[14] *Smith Barney Shearson v. Sacharow*, 689 N.E.2d 884, 890 (N.Y. 1997) (quoting *Matter of Nationwide Gen. Ins. Co. v. Investors Ins. Co.*, 332 N.E.2d 333, 335 (N.Y. 1975).

[15] *Smith Barney*, 689 N.E.2d at 890 (quoting *Matter of 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 575 N.E.2d 104, 107 (N.Y. 1991).

York courts have favored arbitration as a practical means to dispose of differences between parties in commercial settings.[16]

23.     If there is a written agreement evincing an intention to arbitrate, New York courts will examine whether the dispute is arbitrable.  In other words, the court will inquire whether there is any statute, decisional law, or public policy that would prohibit arbitration of the subject matter in dispute.[17]  In light of the overriding New York and federal policy favoring arbitration, New York law invalidates arbitration agreements only very rarely and on narrow public policy grounds, which, in any event, do not apply to this arbitrable dispute.  These limited situations "constitute a very narrow exception to the otherwise broad power of parties to agree to arbitrate all of the disputes arising out of their juridical relationships."[18]

## VII.   WHETHER SECTION 12(B) OF THE IFSA IS AN ENFORCEABLE AGREEMENT TO ARBITRATE

24.     According to New York law, Section 12(b) of the IFSA is a valid and enforceable agreement to submit any disputes among the IFSA parties regarding the allocation of the Sale Proceeds to *ad hoc* arbitration.  It is an enforceable arbitration agreement because it is a written agreement evidencing the intent of the parties to submit themselves to binding *ad hoc* arbitration, and there is no policy against the arbitrability of disputes among debtors to allocate assets from the estate of a bankrupt corporation.

### A.     Section 12(b) Is a Written Agreement that Evinces an Intent to Arbitrate

25.     Section 12(b) of the IFSA is a binding agreement of the IFSA parties to submit disputes on the allocation of Sale Proceeds to *ad hoc* arbitration.  Although Section 12(b)

---

[16] *Maye v. Bluestein*, 351 N.E.2d 717, 720 (N.Y. 1967); *Guadano v. Long Isl. Plastic Surgical Group, P.C.*, 607 F. Supp. 136, 139 (E.D.N.Y. 1982).
[17] *Broome v. N.Y. State Law Enforcement Officers Union. Dist. Council 82, AFSCME, AFL-CIO*, 915 N.Y.S.2d 708, 710 (N.Y. App. Div. 2011); *City of Kingston v. Kingston Prof'l Fire Fighters Assoc.*, 921 N.Y.S.2d 384, 385-86 (N.Y. App. Div. 2011).
[18] *Broome*, 915 N.Y.S.2d at 710; *Kingston*, 921 N.Y.S.2d at 385-86.

does not adopt the wording of model arbitration clauses provided by arbitral institutions because it is an *ad hoc* arbitration agreement, it is nonetheless evident from a straightforward interpretation of the words of Section 12(b), in the context of the other sub-sections of Section 12, that the parties intended to submit disputes about the allocation of Sale Proceeds to arbitration.

26.    Section 12(b) states:

> In no case shall there be any distribution from the Escrow Account in advance of either (i) agreement of all of the Selling Debtors or (ii) in a case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the Protocol applicable to the Sale Proceeds.[19]

27.    There is no dispute that Section 12(b) is a written agreement.

28.    It also unambiguously refers to *ad hoc* arbitration, even though the word "arbitration" is not used. Contract language is ambiguous when it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."[20]  When viewed objectively by a reasonably intelligent person who has examined the entire context of Section 12 and international commercial usages, Section 12(b) can only mean that disputes would be submitted to *ad hoc* arbitration. The agreement provides that any disputes over the allocation of the Sale Proceeds would be resolved by "dispute resolver(s)." There is no need to use the word "arbitrator,"[21] when the phrase "dispute resolver" is commonly used internationally to refer to decision-makers in alternative dispute resolution.  Under the terminology of international commercial practices, the reference to "dispute resolver(s)" evinces a clear intention of

---

[19] IFSA § 12(b).
[20] *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396-97 (2d Cir. 2009) (quoting *Reuson v. Cinque & Cinque P.C.*, 221 F.3d 59, 66 (2d Cir. 2008)); *Mellon Bank, N.A. v. United Bank Corp. of N.Y.*, 31 F.3d 113, 115 (2d Cir. 1994)
[21] Carmody-Wait 2d § 141:14; 5 N.Y. Jur. 2d Arbitration & Award § 89; *Railworks Corp.*, 788 N.Y.S.2d at 837.

the multinational parties to the IFSA to have any dispute arising from the allocation of the Nortel Sale Proceeds adjudicated by an alternative form of dispute resolution rather than through the judicial system.

29.     Section 12(c) further confirms that Section 12(b) is an agreement to submit disputes over the allocation of Sale Proceeds to *ad hoc* arbitration. Section 12(c) states:

> [T]he Debtors shall, as soon as reasonably practicable, following the execution of this Agreement, negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (the "Interim Sales Protocol"), which Protocol shall provide binding procedures for the allocation of Sales Proceeds where the Selling Debtors in such transactions have been unable to reach agreement regarding such allocation.[22]

30.     Section 12(c) thus envisages good faith negotiations to agree on a binding procedure for the arbitration. This is similar to other *ad hoc* arbitration agreements, where the parties agree to binding resolution of their disagreements, but do not set forth the procedure for such arbitration in the arbitration agreement. Such *ad hoc* arbitration agreements are valid under New York law. As the New York Appellate Division has instructed, where "[t]he dominant intent was to arbitrate," the machinery of procedures is "subordinate and incidental."[23]

31.     Further, because Section 12(c) explicitly refers to procedures to which the parties would bind themselves and the "dispute resolver(s)," the reference to "dispute resolver(s)" cannot mean courts under New York law. In New York, procedures for adjudication in court are set by the New York Civil Practice Law and Rules and not by the parties.[24] It is not open to the parties in a court case to mutually agree to set those rules aside. Although they could seek the court's permission to vary procedures and

---

[22] IFSA § 12(c).

[23] *Lory Fabrics v. Dress Rehearsal, Inc.*, 434 N.Y.S.2d 359 (N.Y. App. Div. 1980) (quoting *Delma Eng'g Corp. v. K & L Constr. Co.*, 155 N.E.2d 675 (N.Y. 1958)).

[24] N.Y. C.P.L.R § 101 (the CPLR governs "the procedure in civil judicial proceedings in all courts of the state and before all judges"); *see also Ling Ling Yung v. Cnty of Nassau*, 571 N.E.2d 669, 670-71 (N.Y. 1991).

stipulate that the parties all agree to make the request, it is ultimately the court's decision whether to grant the motion. In contrast, Section 12(c) explicitly provides that the parties determine the binding procedures for dispute resolution. Because the parties cannot exert such authority over a New York court, it is clear that the parties did not intend to submit their disputes to a court when they expressed their agreement to arbitrate in Section 12(b).

32.      Section 12(c) is consistent with the parties' agreement in Section 12(b) to submit disputes relating to allocation of the Sales Proceeds to arbitration because in an *ad hoc* arbitration, the parties can agree to the rules governing arbitration. Although it will be up to the arbitral tribunal to apply those rules, should the tribunal depart from any of those mutually agreed arbitration rules, it may have committed a reviewable error that could result in annulment of the award.

### B.      New York Public Policy Supports Arbitrating Disputes Over the Proper Allocation of the Sale Proceeds

33.      Because Section 12(b) is a clear arbitration agreement, it is unenforceable only if arbitrating the disputes it covers violates public policy.[25] I am not aware of any policy, in the form of statute or otherwise, that would prohibit the arbitrability of disputes over the allocation of the Sale Proceeds.[26] On the contrary, the consistent public policy of New York and the FAA, as recognized by New York courts, is to favor arbitration of international commercial disputes such as the one here.[27] International arbitration provides a neutral forum for dispute resolution that avoids giving any one party real or perceived advantages by bringing claims in their own courts rather than the courts of another foreign party. It also promotes comity among courts around the world by avoiding different courts asserting jurisdiction over the same dispute when an international arbitration tribunal can resolve it. Enforcing the *ad hoc* arbitration

---

[25] *Broome*, 915 N.Y.S.2d at 710; *Kingston*, 921 N.Y.S.2d at 385-86.

[26] *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) (holding that an international commercial dispute was arbitrable even though it involved U.S. antitrust issues).

[27] *Grayson-Robinson Stores, Inc. v. Iris Const. Corp.*, 168 N.E.2d 377, 379 (N.Y. 1960).

agreement contained in Section 12 would thus promote judicially-recognized public policy.

## VIII.    THE JURISDICTION OF THE COURT UNDER SECTION 16(B) OF THE IFSA

34.    Section 16(b) of the IFSA does not provide the U.S. and Ontario courts with jurisdiction to determine disputes relating to the allocation of Nortel Sales Proceeds. As explained at Part VII, *supra*, Section 12(b) is a valid and enforceable arbitration agreement. Because Section 12(b) is a more specific provision providing for arbitration, it precludes interpreting the more general jurisdiction provision in Section 16(b) to grant jurisdiction to the court to resolve disputes that are subject to arbitration under Section 12(b). Instead, under New York principles of contract interpretation, Sections 16(b) must be harmonized with Section 12(b) by interpreting Section 16(b) to confer jurisdiction to the court only to determine the validity of the Section 12 arbitration agreement, and to confirm, enforce or annul the arbitration award after an arbitral tribunal issues the award. Notably, however, the grounds for review of arbitral awards under the FAA and the New York Convention, to which the United States and Canada are both parties, is significantly narrower than the grounds for appeal of court decisions by an appellate court.[28]

35.    Under New York law, when a contract contains an arbitration provision, the existence of a general jurisdiction provision in that contract does not negate the enforceability of the arbitration agreement.   This is true regardless of whether the

---

[28] *Compare* FAA §§ 10-11, 9 U.S.C. §§ 10-11 (limiting review of arbitral awards to instances where (1) the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators; (3) where the arbitrators were guilty of misconduct; (4) where the arbitrators exceeded their powers; or (5) where there was evident miscalculation of figures in the award) *with* Fed. R. App. Proc. 4 & 5 (providing permissive procedures for appeals of lower court decisions, through which a lower court's legal and factual findings may both be reviewed (generally under "de novo" and clearly erroneous standards, respectively)). *See also* U.N. Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 10 June 1958), 330 U.N.T.S. 3, 21 U.S.T. 2517, codified at 9 U.S.C. § 201 et. seq. (the "New York Convention"), Art. V(2) (restricting non-recognition of arbitral awards to limited instances, such as if the award is contrary to the public policy of the New York Convention signatory state where enforcement is sought).

arbitration agreement is contained in a specific clause and pertains only to a subset of disputes within the agreement, or whether the arbitration agreement is broader and refers to the disputes embodied in the entire contract.[29]  The New York Appellate Division has instructed:

> The express provision in the parties' agreement to arbitrate disputes was not negated by an additional clause in the agreement vesting the courts of this State with exclusive jurisdiction in all actions and proceedings, particularly where there was no express denial of the agreement to arbitrate.    The purpose of the exclusive jurisdiction provision was simply to fix "the required venue of applications to compel arbitration or confirm or reject arbitration awards."[30]

36.    These legal principles apply to Section 16(b) of the IFSA.  That section provides, in relevant part:

> To the fullest extent permitted by applicable law, each Party (i) agrees to submit to the non-exclusive jurisdiction of the US and Canadian Courts . . . for purposes of all legal proceedings to the extent relating to the matters agreed in this Agreement (but not, for any doubt, any Transfer Pricing Agreement matter generally) . . . .[31]

37.    Here, the broader jurisdictional provision of Section 16(b) does not negate the specific arbitration agreement embodied in Section 12.  Moreover, the *ejusdem generis* principle of contract interpretation would give precedence to the specific clause for arbitration rather than the general clause for the exclusive jurisdiction of the courts.[32]

38.    The principle that conflicting contract provisions should be harmonized, if reasonably possible, so as not to leave any provision without force and effect, would also require that the arbitration agreement be given full force such that any dispute arising

---

[29] *Isaacs v. Westchester Wood Works, Inc.*, 718 N.Y.S.2d 338 (N.Y. App. Div. 2000); *Edgewater Growth Capital Partners, LP v. Greenstar N. Am. Holdings, Inc.*, 891 N.Y.S.2d 278 (N.Y. App. Div. 2010).

[30] *Isaacs,* 718 N.Y.S.2d at 338.

[31] IFSA § 16(b).

[32] *Edgewater Growth N. Am.*, 891 N.Y.S.2d at 278-79; *Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956).

from the allocation of the Sales Proceeds would need to be adjudicated by an arbitrator, as required by Section 12 and discussed more fully below.[33]  The court's jurisdiction under Section 16(b) is thus restricted to examining the validity of the arbitration agreement in Section 12(b), and to enforcing it.

39.     If parties cannot agree on a protocol for dispute resolution including the appointment of arbitrators, the court must, pursuant to Section 5 of the FAA, appoint arbitrators, who themselves can determine the rules to apply, as well as to adjudicate the merits of the dispute.[34]

40.     At the end of the arbitration, a court may review the award of arbitration.[35] However, as noted earlier, the standard of review by a court of an arbitral award is very narrow.[36]  The U.S. Court of Appeals for the Second Circuit has instructed that "the courts will not assume the role of overseers to mold the award to conform to their sense of justice.  Thus, an arbitrator's award will not be vacated for errors of law and fact

---

[33] *Edgewater Growth*, 891 N.Y.S.2d at 278-79 ; *Muzak*, 133 N.E.2d at 690.

[34] FAA § 5 ("[I]f for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein[.]"); *CAE Ind., Ltd. v. Aerospace Holdings Co.*, 741 F. Supp. 388, 392 (S.D.N.Y. 1989) ("[I]n the absence of an explicit provision in the Agreement, or if for any other reason there shall be a lapse in the naming of an arbitrator, [Section 5 of the FAA] authorizes the court to appoint an arbitrator which it will do pursuant to an order accompanying this opinion."); *Neptune Maritime, Ltd. v. H&J Isbrandtsen, Ltd.*, 559 F. Supp. 531, 532 (S.D.N.Y. 1983) (district court had authority to appoint arbitrator to decide carrier's claim against merchant where merchant refused to comply with proper demand for arbitration); *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 642 F. Supp. 1155 (N.D. Ill. 1986), *aff'd* 831 F.2d 709 (even if parties' prior dealings did not dictate who would arbitrate dispute, court was authorized, under Arbitration Act, to designate and appoint arbitrator upon either parties' application).

[35] FAA § 9.

[36] *See* FAA §§ 10, 11.

17

committed by the arbitrator[.]"[37]  A decision can be annulled only if, for example, the arbitrators committed fraud or were corrupt.[38]

41.    This interpretation of Section 16(b) is consistent with New York legislation on arbitration. Section 7501 of New York's Civil Practice Laws and Rules provides:

> A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award. In determining any matter arising under this article, the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute.

42.    It is also consistent with the FAA. Section 3 of the FAA provides that when a court is confronted with a lawsuit involving a dispute that is subject to an arbitration agreement, the court shall, on an application of one of the parties, stay the suit.[39]

---

[37] *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 689 F.2d 301, 306 (2d Cir. 1982) (*citing Sprinzen v. Nomberg*, 389 N.E.2d 456, 458 (1979); *accord Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008) ("[I]t would stretch basic interpretive principles to expand the stated grounds [Sections 10 and 11] to the point of evidentiary and legal review generally.").

[38] *See* FAA § 10; *see, e.g., Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32, 34 (2d Cir. 1951) (recognizing that although there should be "great hesitation in upsetting an arbitration award," an award may be overturned under the FAA when it is made "abundantly clear" that it has been obtained through "corruption, fraud, or undue means"); *Geyer Roofing Inc. v. Roofers Local 30B, United Union of Roofers, Water Proofers and Allied Workers, AFL-CIO*, 736 F. Supp. 573, 578 (D.N.J. 1990) (in spite of deference owed arbitration awards, courts will not enforce awards procured by fraud or coercion).

[39] FAA § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.")

Likewise, Section 4 of the FAA provides that if a party fails to arbitrate a dispute subject to an arbitration agreement, the court shall compel the parties to arbitrate the dispute.[40]

43.    Similarly, the New York Convention, to which both the United States and Canada are signatories, and which was implemented by the FAA in the United States, requires a court that is faced with a dispute that is subject to an arbitration agreement to refer the dispute to arbitration.[41]    The court may not adjudicate the merits of the dispute, and may only review the award under narrow grounds when it is asked to enforce the award.[42]

## IV.    THE OBLIGATION TO NEGOTIATE A PROTOCOL IN GOOD FAITH UNDER SECTION 12(C)

44.    In my opinion, Section 12(c) of the IFSA creates a binding obligation on each party to negotiate in good faith towards an agreement on the Interim Sales Protocol referred to in the IFSA.  Section 12(c) explicitly states, in relevant part:

> [t]he Debtors shall, as soon as reasonably practicable, following the execution of this Agreement, negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (the "Interim Sales Protocol")[.][43]

45.    Neither party has argued that Section 12(c) is invalid, and there is no reason to interpret it any differently than as expressly stated to impose an obligation of negotiating in good faith.  Importantly, however, as stated above in Part VII, the obligation to agree to a protocol setting forth procedures for an *ad hoc* arbitration in Section 12(c) does not nullify the *ad hoc* arbitration agreement contained in Section 12(b) of the IFSA.

46.    Further, as explained in Section VIII, *supra*, to the extent the parties are unable to agree on such a protocol, the courts shall, under Section 5 of the FAA, appoint

---

[40] FAA § 4.
[41] New York Convention, Art. II(3).
[42] New York Convention, Art. V(2).
[43] IFSA § 12(c).

arbitrators.[44]  The arbitrators will then, themselves, determine what arbitral rules to apply, and will render an award on the merits of the dispute.

## X.   RELEVANCE AND ADMISSIBILITY OF EXTRINSIC EVIDENCE TO DETERMINE THE PARTIES' INTENT AND MEANING IN SECTION 12(B)

47.     Even though it is my view that Section 12(b) clearly and unequivocally provides for *ad hoc* arbitration on its face, I have been asked to opine on what evidence would be relevant to resolve any ambiguity in Section 12(b).

48.     If Section 12(b) is found to be ambiguous as to the parties' intent to enter into an arbitration agreement, extrinsic evidence would be relevant and admissible to prove the parties' intent.  In New York, it is well-settled that when an agreement's terms are "ambiguous, indefinite or uncertain" extrinsic or parol evidence is relevant and admissible to determine their meaning.[45]  The purpose of permitting the introduction of parol evidence is to "place the court in the position of the parties when they made the contract," which "enables it to appreciate the force of the words [the parties] used in reducing it to writing."[46]  Such evidence is explanatory and admissible unless the contract explicitly prohibits reference to parol and extrinsic evidence to interpret the contract.[47]

49.     Parol evidence may include evidence of preliminary negotiations and all dealings between the parties, which may be considered to "explain the meaning of particular terms

---

[44] 9 U.S.C. § 5; *CAE Ind.*, 741 F. Supp. at 392; *Neptune*, 559 F. Supp. at 532; *Schultze & Burch*, 642 F. Supp. at 1155.

[45] *Korff v. Corbett*, 794 N.Y.S.2d 374, 377 (N.Y. App. Div. 2005) ("To the extent that any of the agreement's terms may be ambiguous, indefinite or uncertain, it is well settled that extrinsic or parol evidence is admissible to determine their meaning."); N.Y. Jur. 2d Evidence & Witnesses § 583 ("Whenever the terms of a contract are susceptible of more than one interpretation, or an ambiguity arises, or the extent and object of the contract cannot be ascertained from the language employed, parol evidence may be introduced to show what was in the minds of the parties at the time of making the contract. . . . The construction of the instrument is aided by the admission of parol evidence explaining ambiguities.").

[46] N.Y. Jur. 2d Evidence & Witnesses § 585.

[47] N.Y. Jur. 2d Evidence & Witnesses § 583.

used."[48]  Additionally, when contract language is ambiguous, the parties can testify as to the intent of the provisions.[49]  It also may include not only the subject matter of the contract, but also the relations of the parties to each other, and the facts and circumstances surrounding the parties when they entered into the contract.[50]  Prior course of conduct is also relevant to proving intent.[51]

50.     Evidence of industry custom or practice may also be considered to determine the parties' intent.[52]  As stated in the American Law Institute's Restatement (Second) of Contracts, "[u]nless otherwise agreed, a usage of trade in the vocation or trade in which the parties are engaged or a usage or trade of which they know or have reason to know gives meaning to or supplements or qualifies their agreement."[53]

51.     Moreover, New York law is clear that consideration of extrinsic evidence is not limited to negotiations or agreements made prior to or contemporaneous with the execution of a contract, but may also include an examination of the parties' conduct after signing of the agreement.  As the U.S. Supreme Court recognized in *Old Colony Trust Co. v. Omaha* in 1913, in a principle that has since been endorsed by numerous New York courts: "the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence."[54]  In fact, the parties' course of performance under

---

[48] *Korff*, 794 N.Y.S.2d at 377; *see also Kenneth D. Laub & Co. v. 101 Park Ave. Assocs.*, 556 N.Y.S.2d 881, 882 (N.Y. App. Div. 1990).

[49] *Carter v. Broadway 48th-49th Street Assocs.*, No. 103378/03, 2008 WL 1745143, at *7 (N.Y. Sup. Ct. Apr. 7, 2008); *Phalen v. Vineyard L.V., Inc.*, 683 N.Y.S.2d 615, 616 (N.Y. App. Div. 1998).

[50] N.Y. Jur. 2d Evidence & Witnesses § 583.

[51] *Railworks Corp.*, 788 N.Y.S.2d at 837 ("[T]he parties' course of conduct prior to their execution of the Stipulation makes clear that [respondent] intended that the dispute be settled by arbitration.").

[52] *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044, 1049 (2d Cir. 1989).

[53] Restatement (Second) of Contracts § 222(3).

[54] *Old Colony Trust Co. v. Omaha*, 230 U.S. 100, 118, (1913).  As the Supreme Court observed, although not strictly treated as such, this rule is sometimes treated as a branch of estoppel.  In effect, by permitting consideration of subsequent conduct, courts prevent parties from asserting a meaning of a contract in litigation that is inconsistent with their

the contract has often been considered by New York courts to be the "best" and "most persuasive evidence of the agreed intention of the parties."[55]  As explained in the Restatement (Second) of Contracts, "[t]he parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning."[56]

52.    In my view, Section 12 is not ambiguous; however, were a court to determine that any party's intent was not clear from the face of the agreement, or that the term "dispute resolver" is ambiguous, the Lloyd Declaration and the exhibits attached to it provide relevant extrinsic evidence to clarify the ambiguity.  Such evidence includes the written or oral communications among the IFSA parties made prior to or contemporaneous with the execution of the IFSA, as well as drafts of the IFSA and communications regarding the drafting thereof.

53.    Admissible extrinsic evidence also extends to words and conduct after the conclusion of the IFSA.  This includes drafts of the Interim Protocol negotiated by the parties and any related communications during that negotiation process as course of conduct evidence that the parties intended for the disputes to be adjudicated by arbitrators.  This same evidence could be admitted to prove the meaning of the term "dispute resolver."  The Joint Administrators could also introduce expert evidence

---

pre-litigation conduct.  *See also Coliseum Towers Assoc. v. Cnty of Nassau*, 769 N.Y.S.2d 293, 296 (N.Y. App. Div. 2003) (finding plaintiff's payment of land taxes without protest for seven years to be probative of the parties' intent that plaintiff was obligated to pay land taxes); *Fed. Ins. Co. v. Americas Ins. Co.*, 691 N.Y.S.2d 508, 512-13 (N.Y. App. Div. 1999) (viewing examination of subsequent conduct as part and parcel of judicial function to give effect to the parties' pre-contractual intentions).

[55] *Fed. Ins. Co.*, 691 N.Y.S.2d at 512-13 (citing *Webster's Red Seal Publ. v. Gilberton World-Wide Publ.*, 415 N.Y.S.2d 229, 230 (N.Y. App. Div. 1979), *aff'd* 421 N.E.2d 118. *See also T.L.C. West, LLC v. Fashion Outlets of Niagara, LLC*, 875 N.Y.S.2d 367, 369 (N.Y. App. Div. 2009) ("[t]he best evidence of the intent of parties to a contract is their conduct after the contract is formed") (citing *Waverly Corp. v. City of New York*, 851 N.Y.S.2d 176, 179 (N.Y. App. Div. 2008)).

[56] Restatement (Second) of Contracts § 202(comment g); *see also* N.Y. Jur. Contracts § 216 (In the determination of the meaning of an indefinite or ambiguous contract, "the practical construction put upon a contract by the parties to it, is sometimes almost conclusive as to its meaning.").

regarding the use of the term "dispute resolver" internationally to encompass arbitrators.[57]

54.    In my opinion, the extrinsic evidence detailed in the Declaration of Kevin Lloyd and the transcripts of hearings to which he refers – including his description of the negotiations predating entry of the IFSA, representations made by various parties to various courts in connection with seeking approval of the IFSA, and the conduct of the parties' post-dating execution of the IFSA, including the various drafts of an Interim Sales Protocol which contained reference to binding arbitration by a three-person panel – confirms that the parties intended to submit any disputes regarding the distribution of the Sales Proceeds to binding arbitration.[58]

## XI.    EVIDENCE REGARDING THE PARTIES' NEGOTIATIONS IS ADMISSIBLE TO DETERMINE WHETHER SUCH NEGOTIATIONS WERE CONDUCTED IN GOOD FAITH

55.    As described in Section IX, above, Section 12(c) of the IFSA imposed on all parties a binding obligation to negotiate in good faith to arrive at a protocol for resolving disputes concerning the allocation of the Sales Proceeds. It appears clear that beginning soon after the IFSA was agreed, the parties did undertake negotiations towards agreement on an Interim Sales Protocol, which extended off and on for close to one year. However, neither the fact that those negotiations occurred, nor that the negotiations spanned a significant time period, is the end of the inquiry. To ascertain whether the parties in fact complied with their contractual obligations, a factfinder must necessarily look to the negotiations to ascertain whether the parties were in fact negotiating in good faith.[59]

---

[57] *See, e.g.,* Restatement (Second) of Contracts § 222(3) (evidence of industry custom admissible to determine meaning of ambiguous contractual provision).

[58] *See, e.g.,* Lloyd Decl. at ¶¶ 12-22, 40, 44, 49-52, 85. *See also* Transcript of June 29, 2009 Hearing, at 34.

[59] *See, e.g., CanWest Global Commc'ns Corp. v. Mirkaei Tikshort Ltd.,* 804 N.Y.S.2d 549, 570 (N.Y. Sup. Ct. 2005) (concluding that party had failed to meet his obligation to negotiate in good faith upon review of course and conduct of such negotiations).

56.    Although the determination of whether a party met an obligation to negotiate in good faith is necessarily a highly-fact based inquiry, the obligation to negotiate in good faith has been generally described as preventing one party from "renouncing the deal, abandoning the negotiations or insisting on conditions that do not conform to the preliminary agreement."[60] A party might also breach its obligation to bargain in good faith by unreasonably insisting on a condition outside of the scope of the parties' preliminary agreement, especially where such insistence is a "thinly disguised pretext for scotching the deal . . . ."[61]

57.    As set forth in the Lloyd Declaration, although the U.S. and Canadian Debtors participated in negotiations towards an Interim Sales Protocol, and now insist their efforts were in good faith, it appears from the Lloyd Declaration that ultimately the agreement broke down when the Canadian Debtors sought to limit the information and arguments that could be put before the dispute resolvers, including by attempting to limit the ability of the EMEA Debtors to make certain arguments respecting the allocation of the Sale Proceeds.[62] Effectively, the Canadian Debtors made their agreement to participate in arbitration contingent on the EMEA Debtors' agreement to not make certain arguments in their dispute.    A negotiating posture through which a party insists on objectively unreasonable conditions as a pretext for reneging on a deal altogether cannot possibly meet a standard of good faith.

## XII.    CONCLUSION

58.    For the foregoing reasons, my opinions may be summarized as follows:

---

[60] *Teachers Ins. & Annuity Assoc. of Am. v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987); *see also CanWest*, 804 N.Y.S.2d at 570 (injunctive relief appropriate where defendant breached its duty to negotiate partnership agreement in good faith by "drastically altering the terms" previously agreed by the parties).
[61] *Milex Products, Inc. v. Alra Labs., Inc.*, 603 N.E.2d 1226, 1234 (Ill. App. Ct. 1992).
[62] Lloyd Decl. at ¶ 57.

(A)     Under New York law, an arbitration agreement is valid and enforceable if it is in writing and evinces an intent of the parties to the agreement to submit themselves to binding arbitration.  The parties need not agree to the arbitration procedures; rather, New York law only requires an agreement to be bound.  Additionally, the terms "arbitration," "arbitrator," or "arbitrate" need not appear in the text of the agreement so long as the agreement evidences the intent of the parties to submit to arbitration.  Where the parties' intent is discernible from the plain meaning of the language of the contract, there is no need to look further.

(B)     Section 12(b) of the IFSA is a valid and enforceable arbitration agreement because it is a written agreement evidencing the intent of the parties to submit themselves to binding *ad hoc* arbitration and is consistent with public policy favoring arbitration of international commercial disputes.

(C)     Section 16(b) of the IFSA does not provide a court with jurisdiction to determine the merits of any dispute relating to the allocation of the Sales Proceeds because it is displaced by and must be interpreted consistently with the more specific arbitration clause contained in Section 12(b).  Section 16(b) confers on the court limited jurisdiction to determine the validity of the arbitration agreement in Section 12(b) and to enforce it, as well as to review the arbitration award after an arbitration tribunal renders it.  If the parties are unable to reach an agreement on binding procedures for arbitration, the FAA requires the court to appoint an arbitral tribunal, and the tribunal will decide the rules of the arbitration as well as the merits of the arbitral dispute.

(D)     Section 12(c) of the IFSA creates a binding obligation on the parties to negotiate in good faith towards an agreement on the Interim Sales Protocol referred to in the IFSA.  As noted above, where the parties are unable to reach such agreement, the court

25

shall, under the FAA, appoint an arbitration panel, which will then decide the rules to apply and adjudicate the merits of the dispute.

(E)    To the extent that a court determines that Section 12(b) is ambiguous as to the parties' intent to enter into an arbitration agreement, extrinsic evidence of words and actions before and after the conclusion of the IFSA is admissible to determine the parties' intent.

(F)    Evidence regarding the parties' negotiations after the IFSA was concluded is admissible to determine whether such negotiations were conducted in good faith.

59.    At the Court's request, a case book containing all of the case law and other authority referenced herein will be made available.

_____
Tai-Heng Cheng

STATE OF NEW YORK      }
                       }
COUNTY OF NEW YORK  }

Sworn to before me this
31 day of May, 2011

_____
Notary Public

**MARC AARON MELZER**
Notary Public, State of New York
No. 02ME6150927
Qualified in New York County
Commission Expires Dec. 20, 2014

### PROFESSOR TAI-HENG CHENG
HOGUET NEWMAN REGAL & KENNEY, LLP
10 East 40th Street
New York, NY 10016
tcheng@hnrklaw.com; (646) 239 4054

## EMPLOYMENT

- New York Law School, Professor of Law & Co-Director, Institute for Global Law, Justice & Policy, 2006-present.

  Classes taught: international law, international commercial arbitration, investment treaty arbitration, contracts.

- Hoguet Newman Regal & Kenney, LLP, Senior Legal Advisor, 2007-present.

- Vanderbilt Law School, Visiting Associate Professor, 2010.

- City University of Hong Kong School of Law, Visiting Associate Professor, 2008.

- Sarah Lawrence College, Visiting Professor, 2006-2008.

- Simpson Thacher & Bartlett LLP, New York, Associate, 2003-2006.

- National University of Singapore School of Law, Tutor-in-Law (Adjunct Professor), 2001.

## RECENT ARBITRATION AND LITIGATION MATTERS

- Expert on arbitration agreements in an SCC arbitration.

- Expert on international law in an ICSID bilateral investment treaty arbitration.

- Amicus curiae in a $400 mn. appeal in U.S. federal court concerning Germany's liability for Prussian bonds.

- Chair of an ICDR tribunal in a franchise dispute between European and Latin American corporations (drafted the award).

- Arbitrator on a three-person ICC tribunal in an intellectual property dispute between an American and Japanese corporation.

- Consultant to the Republic of Kosovo Ministry of Foreign Affairs on international law issues.

- Consultant to the UN Transitional Administration in East Timor on their criminal procedure code.

- Consultant to the Singapore Police Force on operations and international matters.

- Lead counsel for an English hedgefund in a JAMS international arbitration against a French financial institution (won $5mn. award and 90% of fees).

- Counsel for a CFO in a white collar trial in U.S. federal court.

- Counsel for a corporate executive in parallel lawsuits in New York, Atlanta, Singapore and the Cayman Islands.

- Counsel for Blackrock, Inc., in securities litigation in U.S. federal court.

- Counsel for Toys "R" Us, Inc., in securities litigation in Delaware chancery court.

- Counsel for GE and Bechtel in a $6.6 bn. international arbitration against the Republic of India.

## ARBITRATION PANELS

- Panel of Neutrals, ICDR, 2009-present.

- Panel of Neutrals, HKIAC, 2009-present.

- Panel of Neutrals, CPR, 2009-present.

## BAR ADMISSIONS

- U.S. District Court for the Western District of New York, 2009.

- U.S. Court for Appeals for the Second Circuit, 2008.

- U.S. District Court for the Eastern District of New York, 2005.

- U.S. District Court for the Southern District of New York, 2005.

- State of New York, 2004.

## EDUCATION

- J.S.D., Yale Law School, 2004.

- M.A., Oxford University, 2004.

- LL.M., Yale Law School, 2000.

- B.A. (Law), First Class Honors, Oxford University, 1999.

## LEARNED SOCIETIES, HONORS, AND AWARDS

- Elected Member, Executive Council, American Society of International Law, 2010-present.

- Co-Chair, American Society of International Law 2011 Annual Meeting.

- Elected Member, American Law Institute, 2009-present.

- Elected Member, Academic Council, Institute for Transnational Arbitration, 2008-present.

- Awards Committee, American Society of International Law, 2008-2009.

- Elected Honorary Fellow, Foreign Policy Association, 2007-present.

- Howard M. Holtzman Fellow for International Law, Yale Law School, 2000-01.

- Oxford University Scholar, Oxford University, 1997-99.

## SCHOLARSHIP

**Book Monographs**
- WHEN INTERNATIONAL LAW WORKS (Oxford University Press, forthcoming 2011).

- STATE SUCCESSION AND COMMERCIAL OBLIGATIONS (BRILL, 2006).

  Cited as authoritative in Mortimer Offshore Servs. Ltd. v. Fed. Rep. Germany, 05 Civ. 10699 (S.D.N.Y. Apr. 9, 2008), slip op. at 2, *aff'd*, 615 F.3d 27 (2010).

  Reviewed in 2007 SING. Y.B. INT'L L., 25 WIS. J. INT'L L. 129 (2007), 30 FORD. J. INT'L L. 1288 (2007), 6 CHI. J. INT'L L. 254 (2007), 23 ARB. INT'L 511 (2007), 51 N.Y.L.S. L. REV. 580 (2007).

**Law Review Articles**
- *Why New States Accept Old Obligations*, 2011 U. ILL. L. REV. 1 (2011).

- *Making International Law Without Agreeing What It Is*, 10 WASH. U. GLOBAL STUDIES L. REV. _ (forthcoming 2011).

- *Shaping an Obama Doctrine of Preemptive Force*, 82 TEMPLE L. REV. 737 (2010) (with E. Valaitis, Statistics Professsor, American University).

  Selected as a "New Voice" at the American Society of International Law 2008 Annual Meeting.

- *Reasons, Reasoning and Reasonableness*, 32 SUFFOLK TRANSNATIONAL L. REV. 409 (2009) (with R. Trisotto, NYLS J.D., 2009).

- *The Universal Declaration of Human Rights at Sixty: Is it Still Right for the United States?*, 41 CORNELL J. INT'L L. 251 (2008).

- *Renegotiating the Odious Debt Doctrine*, 70 L. & CONTEMP. PROBS. 7 (2007).

  Cited as authoritative in <u>Mortimer Offshore Servs., Ltd. v. Fed. Rep. Germany</u>, 08-1783-cv, 615 F.3d 110, n. 12 (2d Cir. 2010); <u>Iraq v. Beaty & Simon</u>, 07-1090, Resp. Br. at 54 (U.S. Supreme Court, Mar. 18, 2009).

- *Precedent and Control in Investment Treaty Arbitration,* 30 FORD. J. INT'L L. 1014 (2007).

  Presented at the British Institute of International & Comparative Law (2007), republished 5:3 TRANSNAT'L DISPUTE MGMT. (May, 2008).

- *Power, Norms and International Intellectual Property Law*, 28 MICH. J. INT'L L. 109 (2006).

- *Power, Authority and International Investment Law*, 20 AM. U. INT'L L. REV. 465 (2005).

- *The Central Case Approach to Human Rights*, 13 PAC. RIM L. & POL'Y 257 (2004).

**Book Chapters, Essays & Other Publications**

- 106 AM. SOC'Y INT'L L. PROC. (T. Cheng et al eds., forthcoming 2012).

- *International Arbitration, in* JUDICIAL BENCHBOOK ON INTERNATIONAL LAW (D. Amann ed., ASIL, forthcoming 2011).

- *Developing Narratives in Investment Treaty Arbitration,* 8 SANTA CLARA TRANSNAT'L L. J _ (forthcoming 2010).

- *Positivism, New Haven Jurisprudence and the Fragmentation of International Law, in* ESSAYS IN HONOR OF THOMAS WALDE _ (T Weiler ed., forthcoming 2010).

- *The Structure and Policies of International Mediation*, 5 CONTEMPORARY ISSUES IN INTERNATIONAL ARBITRATION AND MEDIATION _ (R. Rovine ed. forthcoming 2010)

- *Law on Loan: Legal Reconstruction after Armed Conflict, in* CORPORATE SOCIAL RESPONSIBILITY IN ZONES OF CONFLICT _ (forthcoming 2010).

- *The Idea of Law*, 104 PROC. AM. SOC'Y INT'L L. _ (forthcoming 2010).

- *State Succession and Commercial Obligations: Reflections on Kosovo, in* LOOKING TO THE FUTURE: ESSAYS IN HONOR OF W. MICHAEL REISMAN 675 (M. Arsanjani et al. eds.

2010).

- Preface, *in* TRANSNATIONAL DISPUTE MANAGEMENT SPECIAL EDITION: INTERNATIONAL ARBITRATION IN CHINA (T. Cheng & P. Thorp eds, 2010).

- Remarks, *"Consent and the Jurisdiction of Investment Arbitrations, in* INVESTMENT TREATY ARBITRATION AND INTERNATIONAL LAW 85 (I. Laird & T. Weiler eds., 2010).

- Expert Opinion, *Bosh Int'l v. Republic of Ukraine*, ICSID Case No. ARB/008/11 (2010).

- *Reflections on Culture Med-Arb*, 4 CONTEMPORARY ISSUES IN INTERNATIONAL ARBITRATION AND MEDIATION 421 (A Rovine ed. 2010).

- *Is Investment Treaty Arbitration Undertheorized?*, Kluwerarbitrationblog (Apr. 16, 2010).

- *A Renaissance Career in International Law, in* ASIL, *in* CAREERS IN INTERNATIONAL LAW 7 (2009-2010 ed.)

- *New Tools for an Old Quest*, 3 WORLD 3 MED. & ARB. REV. 121 (2009).

- *Some Limits in Applying Chinese Med-Arb Internationally*, 2 NYBSA N.Y. DISPUTE RESOLUTION LAW. 95 (2009) (with A. Kohtio).

- *A Policy and Empirical Appraisal of U.S. Preemptive Self-Defense*, 102 AM. SOC'Y INT'L L. PROC. 430 (2009).

- *What's Reasonable Depends on Who's Asking*, 8 BALTIC Y.B. INT'L L. 382 (2008).

- Brief Amici Curiae, *Mortimer Offshore Servs. Ltd. v. Fed. Rep. Germany*, 08-1783-cv, _ F.3d _ (2d Cir. 2010), 2010 WL 2891069.

- *Commentary on "Who is Sovereign in Sovereign Debt?,"* in Opinio Juris blog (June 10, 2008)

- *The Succession of Kosovo and Minimum Public Order*, in Opinio Juris blog (Feb. 21, 2008).

- *Precedent and Control in Investment Treaty Arbitration, in* INVESTMENT TREATY LAW: CURRENT ISSUES III (A. Bjorklund *et al.* eds., BIICL, 2009)*, revising* 30 FORD. J INT'L L. 1014 (2007).

- *Reframing Iran: A View from the Field* (2007) (with P. Huntington and G. Billard)

- *HIV Surveillance: Individual Rights Versus the Common Good*, 1 YALE J. HUM. RTS. 17 (2001).

- LAW MANUAL FOR FRONTLINE POLICING (Singapore Police Force, 2002).

## INVITED PRESENTATIONS

- Governance Trends in Singapore, Pennsylvania University, 2011.

- Why New States Accept Old Obligations, Michigan State University, 2011.

- Why New States Accept Old Obligations, Florida State University, 2011.

- State Succession After Kosovo, International Civilian Office, Kosovo, 2010.

- Negotiating Bilateral Investment Treaties, Ministry of Foreign Affairs, Kosovo, 2010.

- Arbitration in Asia, ICC San Francisco Meeting, 2010.

- Narratives in Investment Treaty Arbitration, Santa Clara Law School, 2010.

- Making International Law Without Agreeing What It Is, Maryland Law School, 2010.

- Emerging Trends in ADR, Vanderbilt Law School, 2010.

- Why New States Accept Old Obligations, Vanderbilt Law School, 2010.

- Arbitration in Singapore, CPR Annual Meeting, 2010.

- Confidentiality and Privilege in Asia, ABA/NYU Law School, 2010.

- The Fragmentation of International Law, Conference in Honor of Thomas Walde, Scotland, 2009.

- The Future of FTAs and BITS, New York State Bar Association Singapore Meeting, 2009.

- Developments in Med-Arb, Fordham Law School, 2009.

- International Law as Paradigm, Vanderbilt Law School, 2009.

- The Idea of Law, American Society of International Law Annual Meeting, 2009.

- The Global Regulation of Intellectual Property, Hong Kong University School of Law, 2009.

- International Law as Paradigm, Temple Law School, 2009.

- Public Interests and Arbitration's Efficiency, Institute for Transnational Arbitration Academic Council Retreat, 2009.

- The Use of Force by the United States: A Policy & Empirical Appraisal, American Society of International Law Annual Meeting, 2008.

- The Law and Practice of Secession: Kosovo and the International Court of Justice, American Foreign Law Association, 2008.

- State Succession and Recognition, International Civilian Office, Kosovo, 2008.

- Secession, Succession, and Recognition, University of Pristina, Kosovo, 2008.

- Pakistan: A Different Kind of Partner, New York Law School C.V. Starr Presentation, 2008.

- Pakistan: A Different Kind of Partner, U.S. Trust Corporation, 2008.

- Emerging Trends in Investment Treaty Arbitration, Michigan Law School, 2008.

- Would Wider Authorization to Use Force Make Us Safer: Lessons from Iran, Pakistan and 60 Years of U.S. Practice, City University of Hong Kong School of Law, 2008.

- Would Wider Authorization to Use Force Make the United States Safer, Junior International Law Scholars Annual Meeting, 2008.

- New Developments in Med-Arb, Southeast Association of Law Schools Annual Meeting, 2008.

- Med-Arb in China, American Bar Association, ADR Section, 2008.

- Reasons and Reasoning in Investment Treaty Arbitration, Suffolk Law School, 2008.

- The Universal Declaration of Human Rights at Sixty, Sarah Lawrence College, 2008.

- The Reasons Requirement in Investor State Arbitration, Association of the Bar of the City of New York.

- Corruption in Investment Treaty Arbitration, Yale Law School, 2007.

- Precedent and Control in Investment Treaty Arbitration, British Institute of International and Comparative Law, 2007.

- Attracting Foreign Direct Investment in Post-Conflict Zones, Cardozo School of Law, 2007.

- Are There Lawful Exceptions to Investment Treaty Obligations, International Bar Association International Law Weekend, 2007.

- Power, Norms and International Intellectual Property Law, Humbolt University, 2007.

- The Universal Declaration at Sixty, New York Law School, 2007.

- Finding Your Voice as an Emerging Legal Scholar, Yale Law School, 2007.

- Iran: What Next?, United Nations Association of New York, 2007.

- Reframing Iran, U.S. Trust Corporation, New York, 2007.

- Iran: What Next?, New York Law School, 2007.

- The UN's Strategy in Iran and Middle East, UN Department of Political Affairs, 2007.

- Dialogues: Islamic World-U.S.-The West, Singapore Mission to the UN, 2007.

- Renegotiating the Doctrine of Odious Debt, Duke Law School, 2007.

- International Investment Law During and After Armed Conflict, UNCTAD Conference on Corporate Responsibility in Conflict Zones, 2007.

- Pursuing an Advanced Law Degree, Yale Law School, 2006.

- Is the Fair and Equitable Treatment Standard Fair and Equitable?, International Bar Association International Law Weekend, 2006.

- Precedent in Investment Treaty Arbitration, USCIB Young Arbitrators Form, 2006.

- Intellectual Property, International Law and Power, Southeast Association of Law Schools Annual Meeting, 2006.

- State Succession and Iraq, Duke Law School, 2006.

- State Succession and Commercial Obligations, William & Mary School of Law, 2005.

- Current Issues in U.S.-Turkey Relations, U.S. House of Representatives, Committee on International Relations, 2005.

- Seoul Train and North Korean Refugees, Columbia University School of International and Public Affairs, 2005.

- Harmonizing International IP Law: Why Processes Matter, Seton Hall School of Law, 2005.

- Talking Turkey: A Private Perspective on Public Diplomacy, Turkey Consulate, New York, 2005.

- Report on Turkey, United Nations Committee, Association of the Bar of the City of New York, 2005.

- Human Rights in Singapore: Flying Below the Radar, Yale Law School, 2003.

- Enforcing Private Morality: A Cautionary Note, Yale Law School, 2000.

- Introduction to International Law, Lowenstein International Human Rights Clinic, Yale Law School, 1999.

## MEDIA APPERANCES

- *Somali Pirates,* Al-Jeezera English News, February 15, 2011.

- *Palestine Turns to UN in Battle for Statehood,* Al-Jeezera English News, Dec. 10, 2010.

- *Dominican Republic Settles Triple Proceedings*, WORLD MEDIATION AND ARBITRATION REVIEW, Sept. 21, 2009.

- *International Law Forum Addresses Foreign Direct Investment in High-Risk Developing Countries*, 2008:1 CARDOZO LIFE 9.

- *BIICL Forum Draws a Crowd*, GLOBAL ARBITRATION REVIEW, Sept. 14, 2007.

- *Australia-EEUU: Cuestionado Canje de Refugiados*, GLOBAL INFORMATION NETWORK NOTICIAS EN ESPAÑOL, Apr. 23, 2007.

- *Inside the Glass House*, SRI LANKA SUNDAY TIMES, Apr. 22, 2007.

- *U.S.-Aussie Refugee Swap Comes Under Fire*, INTER PRESS NEWS SERVICE AGENCY, Apr. 19, 2007.

- *Next Stop: Iran*, NEW YORK LAW JOURNAL, Sept. 22, 2006.

- *Next Stop: Iran*, NYLAWYER.COM, Sept. 22, 2006.

- *For These Law Students, the Next Stop is Tehran*, THE NATIONAL LAW JOURNAL, Sept. 11, 2006.

- *Diplomacy Newsline*, TURKISH DAILY NEWS, Jan. 20, 2005.

- *Deals and Suits, KKR/Vornado/Toys "R" Us,* 12:7 CORPORATE COUNSEL, July 2005.

- *Big Deals, KKR/Vornado/Toys "R" Us*, 27:6 AMERICAN LAWYER, June 2005.

- *New Deals: Lawyers on Major Transactions*, 231 NEW YORK LAW JOURNAL, Mar. 2005.

- *Criminal Justice in Singapore: Not Just Black and White*, THE STRAITS TIMES, Nov. 25, 2005.

**LANGUAGES**

- English and Mandarin.

**CITIZENSHIP**

- Singapore citizen; United States permanent resident.

Court File No: 09-CL-7950

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, et al.

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

Proceeding commenced at Toronto

**RESPONDING AND CROSS-MOTION RECORD OF THE JOINT ADMINISTRATORS OF NORTEL NETWORKS UK LIMITED AND THE COMPANIES LISTED IN SCHEDULE "A" HERETO**
**(Returnable June 7, 2011)**

DAVIES WARD PHILLIPS & VINEBERG LLP
44th Floor, 1 First Canadian Place
Toronto, ON  M5X 1B1

Matthew P. Gottlieb (LSUC #32268B)
Robin B. Schwill (LSUC #38452I)
Sean R. Campbell (LSUC #49514J)
Tel:     416.863.0900
Fax:    416.863.0971

Lawyers for the Joint Administrators of
Nortel Networks UK Limited