**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------- X

| | |
|---|---|
| *In re* : | Chapter 11 |
| : | |
| Nortel Networks Inc., *et al.*,[1] : | Case No. 09-10138 (KG) |
| : | |
| Debtors. : | Jointly Administered |
| : | |
| : | **Hearing Date:  TBD** |
| : | **Responses Due:  June 6, 2011 at 4:00 PM (ET)[2]** |
| : | |
| : | **RE:  Docket No. 5202, 5363** |

------------------------------------------------------- X

**RESPONSE OF HITACHI, LTD.
TO JOINT NOTICE OF (I) SALE OF PATENTS SUBJECT TO CERTAIN PATENT
LICENSES AND (II) REJECTION OF CERTAIN PATENT LICENSES, AND
<u>NOTICE OF ELECTION</u>**

Hitachi, Ltd. and its affiliates (collectively, "<u>Hitachi</u>"), by and through its

undersigned counsel, hereby submits this Response to the Joint Notice of (I) Sale of Patents

Subject to Certain Patent Licenses and (II) Rejection of Certain Patent Licenses, and Notice

of Election ("<u>Response</u>") and, in support thereof, represents as follows:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226) (collectively, the "<u>Debtors</u>"). The Debtors' ultimate
corporate parent Nortel Networks Corporation ("<u>NNC</u>"), Nortel Networks Inc.'s ("<u>NNI</u>") direct corporate parent
Nortel Networks Limited ("<u>NNL</u>," and together with NNC and their affiliates, including the Debtors, "<u>Nortel</u>"), and
certain of their Canadian affiliates (collectively, the "<u>Canadian Debtors</u>") filed an application with the Ontario
Superior Court of Justice (the "<u>Canadian Court</u>") under the Companies' Creditors Arrangement Act (Canada),
seeking relief from their creditors.

[2]      While the original Response deadline was scheduled for May 31, 2011 at 4:00 PM (ET), the Debtors
extended the deadline for Hitachi to file a Response in an effort to resolve Hitachi's concerns addressed herein and
avoid the necessity of filing a Response.

#14374258 v2

**BACKGROUND**

1.      On April 4, 2011, the Debtors in the above-captioned case filed a motion ("Sale Motion")[3] under sections 363 and 365 of the Bankruptcy Code to authorize the sale of their right, title and interest in all or substantially all of their patents and certain related assets (collectively, the "Assets") to either Ranger, Inc. ("Ranger"), a wholly owned subsidiary of Google, Inc., or to another bidder submitting a higher and better offer for the Assets. [Docket No. 5202].

2.      As part of the Sale Motion, the Debtors requested that the Bankruptcy Court approve their entry into a proposed Asset Purchase Agreement by and among: (i) Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks, Inc., Nortel Networks UK Limited ("Nortel UK"), Nortel Networks (Ireland) Limited ("Nortel Ireland"), Nortel Networks, S.A., and certain other entities identified therein (as Sellers); (ii) Alan Bloom, Stephen Harris, Alan Judson, David Hughes and Christopher Hill as Joint Administrators (of insolvency proceedings in the United Kingdom and Ireland to which Nortel UK and Nortel Ireland, respectively, are subject); (iii) Maitre Cosme Regeau as French Liquidator; (iv) Ranger (as purchaser) and (v) Google, Inc. (as Ranger's parent) ("Sale Agreement"). [Docket No. 5202, Exh. A].

3.      Further, the Debtors have asked the Bankruptcy Court to approve the sale of the Assets free and clear of all "Liens" and "Claims." [Docket No. 5202, ¶ 11, p. 8].

4.      As set forth in the Sale Motion and pursuant to section 2.1.1(a) of the Sale Agreement, Ranger has agreed to purchase the Assets subject to substantially all existing patent

---

[3] Capitalized terms used herein but not otherwise defined shall have the meaning given to such terms in the Sale Motion.

licenses granted pursuant to Commercial Licenses of which the Debtors are aware. [Docket No. 5202, ¶¶ 11, 22, 23 and 25; Exh. A, § 2.2.1(a)].

5.      On May 2, 2011, the Bankruptcy Court entered an Order (A) Authorizing Debtors' Entry Into The Stalking Horse Asset Sale Agreement, (B) Authoring And Approving The Bidding Procedures and Bid Protections, (C) Approving The Notice Procedures And The Assumption And Assignment Procedures, (D) Approving The License Rejection Procedures, (E) Approving A Side Agreement, (F) Approving The Filing Of Certain Documents Under Seal, and (G) Setting A Date For The Sale Hearing ("Sale Procedures Order") [Docket No. 5359].

6.      The Sale Procedures Order approved, among other things, certain license rejection procedures (the "License Rejection Procedures") set forth in the Sale Motion.

7.      Specifically, the License Rejection Procedures permit the Debtors to:  "reject pursuant to section 365 of the Bankruptcy Code, effective as of and conditioned on the occurrence of the Closing, any pre-petition Contract pursuant to which any Debtor is a party and pursuant to which such Debtor grants a license under the Transferred Patents, Specified UK Patents or Jointly Owned Patents, other than (i) the Scheduled Licenses, (ii) the Commercial Licenses, (iii) the Disclosed Intercompany Licenses…" (Sale Motion at 22).

8.      The License Rejection Procedures further provide that the Debtors shall serve notice on each counterparty to any license listed on the Sellers' Disclosure Schedules of any license with such counterparty that is considered a "Known License."  Identification of a license as a "Known License," according to the License Rejection Procedures, indicates that the sale of the Assets to Ranger is being made subject to that Known License.  By contrast, any licenses *not* listed as a "Known License" is deemed an "Unknown License," which the Debtors intend to

reject as of, and conditioned on, the occurrence of the closing of the sale to Ranger.  (Sale Motion at 23).

9.    In accordance with these License Rejection Procedures, the Debtors filed a finalized Sale Notice with the Court on May 2, 2011.  In the Sale Notice, the Debtors reiterated Ranger's agreement to purchase the Assets subject to substantially all known and existing outbound and patent cross-licenses to their patents. [Docket No. 5362, p. 2].

10.    On May 2, 2011, the Debtors filed a final form of Known License Notice with the Bankruptcy Court. [Docket No. 5363].  Consistent with the License Rejection Procedures approved by the Court, the Known License Notice provides for the rejection of any patent licenses not listed as a "Known License."

<u>DEFICIENCIES IN HITACHI KNOWN LICENSE NOTICE</u>

11.    The Debtors have served a Known License Notice on Hitachi (the "<u>Hitachi Known License Notice</u>").

12.    The Hitachi Known License Notice provides that Ranger has agreed to purchase the Assets subject to the following two license agreements between Hitachi and certain of the Debtors, specifically:  (i) an Intellectual Property License Agreement, dated as of December 8, 2009, between Hitachi, Ltd. and Nortel Networks Limited (the "<u>IPLA</u>"); and (ii) a Transition Services Agreement, dated as of December 8, 2009, between Hitachi Communication Technologies America, Inc. and Nortel Networks Limited and Nortel Networks Inc. ("<u>TSA</u>") (collectively, "<u>Hitachi Known Licenses</u>").

13.    While the Hitachi Known License Notice included information sufficient to identify the Hitachi Known Licenses, including partially redacted copies of the Hitachi

Known Licenses, the Notice was deficient in certain respects described below (collectively, the "Deficiencies", with the missing information and documentation referred to collectively as the "Missing Information and Documentation").  Specifically, the Hitachi Known License Notice did not include complete copies of the Hitachi Known Licenses.  In particular, an amendment to both the IPLA and the TSA was executed on May 3, 2010 (the "Amendment"). The Hitachi Known License Notice did not reflect or formally acknowledge the Amendment.

14.      In addition, the Hitachi Known License Notice did not reflect revisions to the TSA effected through two notice letters which served to extend the term of the TSA for a 30 day period.

15.      Finally, the partially redacted copies of the Hitachi Known Licenses included with the Hitachi Known License Notice lacked certain additional documentation elements.  In particular, the IPLA is missing Hitachi's signature page.  The TSA is missing the entire Schedule 1 (pertinently, Section 3.0 of Part B of Schedule 1 that includes the license grant to Hitachi of certain Licensed Applications).

16.      Hitachi, through its counsel, has consulted with the Debtors' counsel numerous times in an effort to address these Deficiencies.  Counsel to the Debtors have provided verbal and informal written e-mail assurances that these Deficiencies are purely inadvertent and that Ranger has agreed to purchase the Assets subject to the Hitachi Known Licenses in their most complete forms, notwithstanding the Deficiencies.  Nevertheless, Nortel has not provided a revised Known License Notice to correct the Deficiencies.

## FAILURE TO LIST CROSS-LICENSE IN HITACHI KNOWN LICENSE NOTICE

17.    In addition to the Deficiencies already noted, the Hitachi Known License Notice did not list a known cross-license agreement with Hitachi which, Nortel's counsel has assured Hitachi, Ranger considers and will treat as a "Known License."  Specifically, the Known License Notice fails to list the Settlement and Patent Cross-License agreement, dated as of April 1, 1995, between Hitachi, Ltd. and Northern Telecom Limited[4] (the "Cross-License").

18.    Under the terms of the License Rejection Procedures, the Hitachi Known License Notice provides for the rejection of any patent license between Hitachi and the Debtors that is not specifically listed in the Hitachi Known License Notice.

19.    Nortel has, through its counsel, acknowledged that the Cross-License is a "Known License."  Nortel has informally assured Hitachi that the Cross-License is listed in a generic way (due to confidentiality concerns) on the Disclosure Schedules of the Sale Agreement, and that any sale to Ranger would be made subject to the Cross-License.  Nevertheless, Nortel has not provided a revised Known License Notice specifically incorporating the Cross-License.

## RESPONSE AND RESERVATION OF RIGHTS

20.    In light of the specific License Rejection Procedures adopted by the Debtors and approved by this Court, Hitachi files this Response out of an abundance of caution in order to preserve its rights, and the rights of its affiliates, related entities, and sublicensees, with respect to

_____

[4] Northern Telecom Limited is a predecessor in interest to Debtor Nortel Networks Corporation.

the Cross-License and other Missing Information and Documentation in the Hitachi Known

License Notice.

21.    Therefore, to the extent that Nortel's failure to revise the Hitachi Known License

Notice to correct the Deficiencies and to include the Missing Information and Documentation

and Cross-License can be argued to permit a sale free and clear of the Missing Information and

Documentation or constitute a rejection of the Cross-License, Hitachi objects to any attempt to

sell free and clear of the Missing Information and Documentation or Cross-License and to any

rejection or attempted rejection of the Cross-License or Missing Information and Documentation,

and Hitachi requests that any Court order approving the sale of the Assets to Ranger or other

successful bidder explicitly state that the sale will not affect or otherwise impair the Hitachi

Known Licenses, specifically including the Cross-License and Missing Information and

Documentation.

22.    Furthermore, out of an abundance of caution, Hitachi objects to any rejection or

attempted rejection of the Amendment or any other rejection or attempted rejection of any part of

the Hitachi Known Licenses or Cross-License, stemming from the Deficiencies in the Hitachi

Known License Notice.

## NOTICE OF § 365(n) ELECTION

23.    In any event and under all circumstances, Hitachi reserves, and expressly does not

waive its rights, or the rights of its affiliates, related entities, or sublicensees, if any, under 11

U.S.C. § 365(n)(1)(B) and (n)(2), and under any similar applicable Canadian law provisions, or

under any applicable provisions of the bankruptcy code and/or insolvency laws of any other

jurisdiction in which any Nortel entity is formed or operates, to retain its rights under any license

agreement the Debtors purport to reject by virtue of the License Rejection Procedures set forth in the Known License Notice.  If and to the extent that an election is now required to preserve those rights, Hitachi hereby makes that election under 11 U.S.C. § 365(n)(1)(B) and (n)(2), and any other applicable law, as to any rejected Hitachi Known Licenses, Missing Information and Documentation, or Cross-License.

### CONFIDENTIAL TREATMENT OF MISSING INFORMATION AND DOCUMENTATION AND CROSS-LICENSE

24.     In order to comply with the License Rejection Procedures adopted by the Debtors and approved by this Court, Hitachi intends to provide counsel to the Debtors, the Canadian Debtors, and Ernst & Young Inc. in its capacity as monitor (the "Monitor") of the Canadian Debtors, with a written copy of the Cross-License and the Missing Information and Documentation, together with notice of this Response.  The information contained in both the Missing Information and Documentation and the Cross-License is considered by Hitachi to be highly confidential.  Therefore, while Hitachi is providing copies of the Missing Information and Documentation and the Cross-License in an effort to abide by the License Rejection Procedures, the copies are being provided with the expectation that they will be treated by the Debtors, the Canadian Debtors, and the Monitor as strictly confidential.

**WHEREFORE**, Hitachi respectfully requests that this Court modify the proposed order attached as Exhibit D to the Sale Motion to (A) provide that (i) the sale to Ranger or other successful bidder will not affect or in any way impair Hitachi's license agreements with Nortel entities, and (ii) the sale to Ranger or another successful bidder will be subject to Hitachi's Known Licenses, in their respective complete forms, including the Amendment

and all Missing Information and Documentation, and the Cross-License; and (B) grant

Hitachi such other and further relief as it deems just and proper.

Dated:  June 6, 2011
Wilmington, Delaware                         PEPPER HAMILTON LLP


                                             By:  /s/ David M. Fournier
                                             David M. Fournier (DE No. 2812)
                                             Hercules Plaza, Suite 5100
                                             1313 N. Market Street
                                             P.O. Box 1709
                                             Wilmington, Delaware 19801-1709
                                             Telephone:  (302) 777-6500
                                             Facsimile:  (302) 421-8390
                                             fournierd@pepperlaw.com

                                                  -AND-

                                             MORRISON & FOERSTER LLP
                                             G. Larry Engel
                                             Pamela Pasti
                                             Kristin A. Hiensch
                                             425 Market Street
                                             San Francisco, CA  94105-2482
                                             Telephone:  (415) 268-6126
                                             Facsimile:  (415) 268-7522
                                             lengel@mofo.com
                                             ppasti@mofo.com
                                             khiensch@mofo.com

                                             *Counsel to Hitachi, Ltd.*