## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Nortel Networks, Inc., *et al.*, | ) | Case Nos. 09-10138 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

**LIMITED OBJECTION OF MOTOROLA, INC. TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING DEBTORS' ENTRY INTO THE STALKING HORSE ASSET SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES AND BID PROTECTIONS, (C) APPROVING THE NOTICE PROCEDURES AND THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (D) APPROVING THE LICENSE REJECTION PROCEDURES, (E) APPROVING A SIDE AGREEMENT, (F) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL AND (G) SETTING A DATE FOR THE SALE HEARING AND (II) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN PATENT AND RELATED ASSETS FREE AND CLEAR OF ALL CLAIMS AND INTERESTS, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, (C) THE REJECTION OF CERTAIN PATENT LICENSES AND (D) THE LICENSE NON-ASSIGNMENT AND NON-RENEWAL PROTECTIONS, AND NOTICE OF ELECTION OF SECTION 365(n)(1)(B) RIGHTS**

Motorola Solutions, Inc., formerly Motorola, Inc. (collectively, together with any affiliated entities participating in the business or transactions referenced herein, "Motorola"), by its undersigned counsel and in compliance with this Court's prior orders, makes and files this limited objection ("Limited Objection") to *Debtors' Motion for Orders (I)(A) Authorizing Debtors' Entry into the Stalking Horse Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures and Bid Protections, (C) Approving the procedures and the Assumption and Assignment Procedures, (D) Approving the License Rejection Procedures, (E) Approving a Side Agreement, (F) Authorizing the Filing of Certain Documents Under Seal and (G) Setting a Date for the Sale Hearing and (II) Authorizing and Approving (A) the Sale of Certain Patent and Related Assets Free and Clear of All Claims and Interests, (B) the Assumption and Assignment of*

*Certain Executory Contracts, (C) the Rejection of Certain Patent Licenses and (D) the License Non-Assignment and Non-Renewal Protections* [D.I. 5202] (the "Sale Motion"). This filing also serves as notice of Motorola's election under sections 365(n)(1)(B) and (n)(2) to retain its rights under any agreements or licenses held by Motorola that are deemed to be Unknown Licenses (as defined in the Sale Motion) or otherwise deemed to be rejected in connection with the Sale Motion. As and for its Limited Objection, Motorola states the following:

### Preliminary Statement

1.     Motorola is a leading provider of mission-critical communication products and services for enterprise and government customers. It is a global communications company that develops, implements, and executes a portfolio of technologies, solutions, and services focused on the government and enterprise segments of the communications market—including, without limitation, mobile computing technology, public safety solutions, advanced data capture, integrated command and control communications, WLAN solutions, and other advanced services.

2.     To deliver the high quality and specialized products and services in its portfolio, Motorola maintains a supply chain of vendors and other third-party service providers. An integral part of this supply chain is entering into license agreements for the use of vendors' intellectual property, including patents. Motorola employs a rigorous qualification process for each of its vendors and providers, continuously monitors the quality of performance under each of these arrangements, and obtains rights to use vendors' intellectual property to facilitate their work with Motorola.

3.     Nortel Networks, Inc. is a qualified Motorola supplier and furnishes both goods and services to Motorola pursuant to that certain Supply, Installation and Service Agreement, replacing a prior Supply, Installation and Service Agreement dated July 22, 2002, as amended

and modified from time to time by certain amendments and annexed agreements (collectively, the "Supply Agreement"). The Supply Agreement as well as other related agreements that govern the business relationship between Motorola and the Debtors—including, without limitation, any licenses for the use of the Debtors' patents—are collectively hereinafter referred to as the "Motorola Agreements."

4.      Since the beginning of this case, the Debtors have sold many of their business units and assets to various purchasers, including the sale of substantially all of the CDMA[1] business and LTE Access assets to Telefonaktiebolget LM Ericsson (publ); the sale of assets of the Wireless Networks business associated with the development of the Next Generation Packet Core network components to Hitachi Ltd.; the sale of substantially all of the assets of the Enterprise Solutions business globally, including the sale of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya, Inc.; the sale of substantially all the assets of the Optical Networking and Carrier Ethernet businesses associated with the Metro Ethernet Networks business unit to Ciena Corporation; the sale of substantially all of its GSM/GSM-R business to Ericsson and Dapsch CarrierCom AG; the sale of certain assets of its Carrier Voice Over IP and Applications Solutions business to GENBAND US LLC; and the sale of substantially all the assets of Nortel's Multi-Service Switch business to Ericsson. *See* Sale Motion ¶ 8. The residual patent assets are one of the Debtors' largest remaining assets. *See id.* ¶ 9.

5.      Pursuant to Debtors' Sale Motion, the Debtors seek, among other things, approval of the Debtors' proposed sale of the Debtors' right, title and interest in the residual patents and certain related assets (the "Assets") to Ranger, Inc., as purchaser and Google, Inc. as guarantor

---

[1] Capitalized terms used herein as defined terms and not otherwise defined shall have the meanings ascribed to them in the Sale Motion.

(collectively, the "Stalking Horse Bidder" or the "Purchaser"). The Assets have been described by the Debtors as "approximately 6,000 U.S. and foreign patents and patent applications spanning wireless, wireless 4G, data networking, optical, voice, internet service provider, semiconductors and other patent portfolios." *See* Sale Motion ¶ 9.

6.    Pursuant to the Sale Motion, "the Stalking Horse Bidder has agreed to take the Assets subject to all Commercial Licenses, certain Intercompany Licenses and all licenses under known Outbound License Agreements and Cross-License Agreements, and the Debtors have agreed to reject Unknown Licenses . . . pursuant to section 365(n) of the Bankruptcy Code." *See* Sale Motion, ¶ 11. The Debtors have further represented "they do not believe there are any Contracts pursuant to which the Debtors grant licenses under the Transferred Patents, the Jointly Owned Patents or the Specified UK Patents, which licenses are in force, and to which the Debtors are a party other than (i) the Outbound License Agreements . . . and the Cross-License Agreements . . . (the "Scheduled Licenses"), (ii) the Commercial Licenses and (iii) license rights with respect to the Transferred Patents, Specified UK Patents or Jointly Owned Patents granted under certain intercompany contracts, arrangements or understandings to which the Debtors are a party." *See id.* ¶ 23.

7.    However, the Debtors have agreed to reject, pursuant to section 365 of the Bankruptcy Code, the Unknown Licenses, defined as any "pre-petition Contract pursuant to which any Debtor is a party and pursuant to which such Debtors grant a license under the Transferred Patents, Specified UK Patents or Jointly Owned Patents, other than (i) the Scheduled Licenses, (ii) the Commercial Licenses, (iii) the Disclosed Intercompany Licenses . . . and (iv) any intercompany contract, arrangement or understanding that is not a Disclosed Intercompany

License but that is in effect and that is similar in kind to the Disclosed Intercompany Licenses." *See* Sale Motion, ¶¶ 23-24.

8.     Pursuant to the Sale Motion, the Debtors served all counterparties to licenses set forth on Schedule A.I(d) and Schedule A.I(e) of the Sellers' Disclosure Schedules (the "Scheduled Licenses") informing such counterparties that the Assets are being sold subject to the license set forth in that notice. *See* Sale Motion, ¶ 25. The Debtors further served a notice of their intent to reject all Unknown Licenses pursuant to section 365 to their creditors and parties in interest. *See id.* ¶ 24. It is important to note that there were no notice procedures set up to provide Commercial License holders with notice that the licenses granted under certain commercial agreements will not be rejected and that, instead, the Assets will be sold subject to the Commercial License holders' Commercial Licenses.

9.     Pursuant to the order entered May 2, 2011 related to the Sale Motion (the "Sale Order") [D.I. 5359], any counterparty of an Unknown License or party in interest must file and serve an objection to the rejection of any Unknown License on or before May 31, 2011. Debtors' counsel agreed to extend this deadline to June 6, 2011 at 4:00 p.m. for Motorola.

10.     Motorola has confirmed the receipt of one notice for the Patent Cross-License Agreement between Motorola, Inc. and Northern Telecom Limited.

11.     While some of the Motorola Agreements may not be denominated license agreements, or may have a primary purpose other than a license agreement, provisions of the Motorola Agreements may grant Motorola licenses to use patents the Debtors seek to sell pursuant to the Sale Motion. Accordingly, such Motorola Agreements constitute Commercial Licenses. However, the treatment of the Motorola Agreements described above—and specifically the Supply Agreement—is unclear because the Sale Motion and related procedures

provide no mechanism to determine whether the Supply Agreement, or any of the Motorola Agreements, are—or will be—considered Commercial Licenses or Unknown Licenses. A determination on this issue is critical to Motorola because, if the Motorola Agreements are deemed to be Unknown Licenses, they will be rejected as part of the Sale—absent an acknowledgement to the contrary by the Debtors or a successful objection to the Sale Motion by Motorola.

12.    Accordingly, out of an abundance of caution—and until Motorola is able to confirm that its licenses with the Debtors will not be rejected as Unknown Licenses or otherwise prejudiced by the Sale Motion's the license rejection procedures, Motorola hereby objects to the Sale Motion and the rejection of the Motorola Agreements that are licenses related to the Assets.

13.    Furthermore, Motorola: (a) elects to exercise its rights under 11 U.S.C. §§ 365(n)(1)(B) and 365(n)(2) with respect to any license agreement the Debtors purport to reject as an Unknown License, or otherwise, by virtue of the license rejection procedures; and (b) objects to the sale of the Assets free and clear of the SSO Commitments (as defined below) and hereby joins in the Nokia Objection (as defined below) to the extent that Nokia Corporation requests that the sale of Assets will be subject to the Debtors' enforceable SSO Commitments, on the same basis set forth in the Nokia Objection as though fully set forth herein.

## Limited Objection

I.    **Any Order Approving the Sale Motion Should Acknowledge that the Motorola Agreements Are Commercial Licenses.**

14.    As of the date of this Limited Objection, the Debtors have been unable to confirm whether the Motorola Agreements—and specifically the Supply Agreement and its related licenses to use patents that the Debtors may be seeking to sell pursuant to the Sale Motion—are deemed by the Debtors to be Commercial Licenses. However, the Motorola Agreements fit well

within the definition of Commercial Licenses. As Commercial Licenses, the Motorola Agreements—and in particular the Supply Agreement and its related licenses—should not be deemed rejected as Unknown Licenses. *See* Sale Motion, Ex. A. Accordingly, Motorola respectfully requests that any order approving the Sale Motion specifically acknowledge that the Motorola Agreements are Commercial Licenses and are not, and shall not be deemed to be, rejected.

II.    **To the Extent that Any of the Motorola Agreements Are Deemed to Be Unknown Licenses, Motorola Elects to Exercise Its Rights Under Sections 365(n)(1)(B) and (n)(2) of the Bankruptcy Code.**

15.    To the extent that any of the Motorola Agreements represent licenses sought to be rejected in connection with the sale of the Assets Motorola hereby elects to retain its rights under sections 365(n)(1)(B) and (n)(2) of the Bankruptcy Code.

16.    Where a licensor-debtor decides to reject an intellectual property license, the Bankruptcy Code grants the licensee certain limited rights to retain the licensed property or to treat the license as terminated. *See* 11 U.S.C. § 365(n).

17.    Section 365(n) provides that,

> If the trustee rejects an executory contract under which the debtor is a licensor of a right to intellectual property, the licensee under such contract may elect –
>
> (A) to treat such contract as terminated by such rejection if such rejection by the trustee amounts to such a breach as would entitle the licensee to treat such contract as terminated by virtue of its own terms, applicable nonbankruptcy law, or an agreement made by the licensee with another entity; or
>
> (B) to retain its rights (including a right to enforce any exclusivity provision of such contract, but excluding any other right under applicable nonbankruptcy law to specific performance of such contract and under any agreement supplementary to such contract, to such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law).

18.    Accordingly, Motorola respectfully requests that any order approving the sale of the Assets explicitly state that: (a) to the extent any of the Motorola Agreements are, or are deemed to be, Unknown licenses, Motorola retains its rights to any and all use of intellectual property granted under such Motorola Agreements pursuant to sections 365(n)(1)(B) and (n)(2) of the Bankruptcy Code; and (b) such sale will not affect or otherwise impair Motorola's license agreements with any Nortel company or affiliate that is not a debtor before this Court.

### III.    Motorola Objects to the Sale of the Assets Free and Clear of SSO Commitments and Joins in the Nokia Objection.

19.    Motorola further objects to the sale of the Assets free and clear of the enforceable obligations, promises, declarations and commitments, including, without limitation, obligations to disclose or identify patents or intellectual property that have been made or should have been made to various standard-setting bodies or industry groups (collectively, the "SSO Commitments").    Motorola hereby joins Nokia Corporation's Objection to Rejection of Unknown Licenses [D.I. 5526] (the "Nokia Objection") to the extent that Nokia Corporation requests that the sale of Assets will be subject to the Debtors' enforceable SSO Commitments on the same basis set forth in the Nokia Objection as though fully set forth herein.

WHEREFORE, for the foregoing reasons, Motorola, Inc. respectfully requests that this Court:

(a)    require that any order approving the sale of the Assets specifically provide (i) that the Motorola Agreements are Commercial Licenses, or (ii) that Motorola shall retain its rights to use any and all of the intellectual property granted under any Motorola Agreement sought to be rejected by the Debtors pursuant to sections 365(n)(1)(B) and (n)(2) of the Bankruptcy Code;

(b)     explicitly state in any order approving the sale of the Assets that such sale will not

affect or otherwise impair Motorola's license agreements with any Nortel

company or affiliate that is not a debtor before this Court;

(c)     explicitly state in any order approving the sale of the Assets that such Assets sold

shall be subject to the Debtors' enforceable SSO Commitments; and

(d)     grant such other and further relief as may be just and fitting under the

circumstances.

Dated: June 6, 2011
      Wilmington, Delaware

        **SULLIVAN · HAZELTINE · ALLINSON · LLC**

        *E.E. Allinson III*
        Elihu Ezekiel Allinson, III (No. 3476)
        901 North Market Street, Suite 1300
        Wilmington, DE 19801
        Telephone: (302) 428-8191
        Facsimile: (302) 428-8195

        -and-

        Jonathan W. Young
        WILDMAN, HARROLD, ALLEN & DIXON LLP
        225 West Wacker Drive
        Chicago, IL  60606-1229
        Telephone:  (312) 201-2000
        Facsimile:  (312) 201-2555

        *Attorneys for Motorola Solutions, Inc., formerly*
        *Motorola, Inc., and its affiliated entities.*

## CERTIFICATE OF SERVICE

I, Elihu E. Allinson, III, hereby certify that on this 6th day of June, 2011, I did cause a true and correct copy of the *Limited Objection of Motorola, Inc. to Debtors' Motion for Orders (I)(A) Authorizing Debtors' Entry into the Stalking Horse Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures and Bid Protections, (C) Approving the Notice Procedures and the Assumption and Assignment Procedures, (D) Approving the License Rejection Procedures, (E) Approving a Side Agreement, (F) Authorizing the Filing of Certain Documents Under Seal and (G) Setting a Date for the Sale Hearing and (II) Authorizing and Approving (A) the Sale of Certain Patent and Related Assets Free and Clear of All Claims and Interests, (B) the Assumption and Assignment of Certain Executory Contracts, (C) the Rejection of Certain Patent Licenses and (D) the License Non-Assignment and Non-Renewal Protections, and Notice of Election of Section 365(n)(1)(B) Rights* to be served upon the following parties in the manner indicated:

**HAND DELIVERY**
Derek C. Abbott, Esq.
Eric D. Schwartz, Esq.
Ann C. Cordo, Esq.
Alissa T. Gazze, Esq.
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19801

**FIRST CLASS MAIL**
James L. Bromley, Esq.
Lisa M. Schweitzer, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY  10006

Under penalty of perjury, I declare the foregoing to be true and correct.

*June 6, 2011*
Date

*/s/ E.E. Allinson III*
Elihu E. Allinson, III