**BERNSTEIN SHUR**

COUNSELORS AT LAW

207 774-1200 main
207 774-1127 facsimile
bernsteinshur.com

100 Middle Street
PO Box 9729
Portland, ME 04104-5029

Daniel J. Murphy
(207) 228-7120 direct
dmurphy@bernsteinshur.com

*Via* Electronic Mail and First-Class U.S. Mail

April 13, 2011

Jane Kim, Esquire
Cleary Gottlieb Steen & Hamilton, LLP
One Liberty Plaza,
New York, NY
10006

Re:  In re Nortel Networks, Inc., Case No. 09-10138

Dear Jane:

On March 28, 2011, you and I (along with others) participated in a "meet and confer conference" (the "Conference"), in which we discussed, among other things, the Document Requests and Interrogatories (collectively, the "Discovery Requests") propounded by Robert Horne, James Young and the *Ad Hoc* Group of Beneficiaries of the Nortel Networks U.S. Deferred Compensation Plan (collectively, the "Beneficiaries") on the Debtors, as well as the Debtors' Responses and Objections to the Discovery Requests. The purpose of this letter is to confirm and follow up on several issues that we discussed in the Conference.

## Initial Matters

1.  Reservation of Rights.  As described more fully below, we attempted during the Conference to narrow or resolve by compromise certain areas of dispute between the parties. Among other compromises, the Beneficiaries have agreed to defer filing a motion to compel at this time. Instead, the Beneficiaries will await the Debtors' responses to certain information requests, amendment of Interrogatory Responses, and/or commencement of the Debtors' document production before making any motion to compel. The Beneficiaries, of course, reserve all rights to challenge the objections asserted by the Debtors and the scope of their production of information and documents in response to the Document Requests.

Jane Kim, Esquire
April 13, 2011
Page 2

2.      Production Deadline.  You offered to produce documents on a rolling basis, with a target completion deadline of May 31, 2011.  You also indicated that we could expect to begin receiving responsive documents in the near future.  Moreover, you confirmed that the production would be truly "rolling," in the sense that we would not simply receive a large document production provided at or near the Debtors expected production date of May 31, 2011.

I note that, to date, the Debtors' document production has totaled approximately five hundred pages, most of which is comprised of documents that were attached to prior Court filings.  The Debtors' Interrogatory Responses repeatedly reference unidentified documents in lieu of required sworn interrogatory responses; however, we have not yet received those documents.  We expect that the documents allegedly serving as Interrogatory Responses will be produced forthwith.  We also expect that we will begin receiving a meaningful document production within a week of the date of this letter.

3.      Limited Electronic Document Production.  You reported that the Debtors are in the process of compiling responsive documents -- both hard copy and electronically stored information ("ESI") -- from the individuals identified in the Interrogatory Response Nos. 1 and 4 (the "Key Players").  You stated that there exists ESI for only three Key Players -- Daniel Ray, Debbie Lorimer and Cindy Kanaday -- and that there is no ESI (in either active or archive/backup format) for any of the other Key Players.  We advised you that we believe the Beneficiaries are entitled to production of *all* responsive documents from whatever source, but acknowledged that the Debtors cannot produce what does not exist.  We have requested, and you agreed to provide, a written description of the steps taken by the Debtors to search for and produce ESI.  We expect to receive that information within one week of the date of this letter.  We will await receipt of this information and/or the documents from the files of Daniel Ray, Debbie Lorimer and Cindy Kanaday before deciding whether to challenge the Debtors' position on the scope of their document production.

4.      Hard Copies of Documents.  You stated that, at this time, the Debtors did not know whether there are responsive documents that exist in hard copy form or not, but that you would get back to us on this item.  We expect to begin receiving this information within one week of the date of this letter.

### The Debtors' General Objections to the Discovery Requests

5.      Third Party Documents.  In General Objection No. 3, the Debtors assert that they are not obliged to produce documents on behalf of any third parties, including their agents.  We requested that you reconsider that position in light of the Debtors' obligations under Rule 26 and the fact that the Debtors presumably have control over documents that are in the possession of third parties who are their agents, including Mullin TBG ("Mullin").  You responded that the Debtors are receiving selected documents from Mullin, but that you did not think it was appropriate to ask Mullin to produce all documents.  You then agreed to produce certain Mullin documents from 2005 forward.  Both sides agreed that we would resume this discussion after we receive the Mullin documents.

Jane Kim, Esquire
April 13, 2011
Page 3

6.  Privilege Log. You agreed to withdraw General Objection No. 6 -- in which the Debtors refused to provide a privilege log -- with one exception. The Debtors will provide a privilege log identifying each document withheld on the grounds of privilege; however, in the event the Debtors discover a large cache of documents, all of which appear to be privileged, the Debtors would not individually catalogue each document in the cache. In that case, the Debtors will sufficiently identify the cache to enable the Beneficiaries to mount a challenge to claim of privilege, if necessary.

7.  Canadian Debtors. Concerning General Objection No. 13, addressed to documents from the Canadian Debtors, you reiterated what you had told us previously: that the Canadian Debtors would object to a subpoena and are not willing to provide any documents voluntarily to the Debtors. However, at the same time, you advised that the Debtors have received *some* information from the Canadian Debtors such as a list of employees eligible for the Northern Telecom Plan for certain years. We advised you that "control" within the meaning of Fed. R. Civ. P. 26 may be established by the existence of a principal-agent relationship, as well as the legal right to obtain the documents on demand.

You advised that you would provide a final answer as to whether the Canadian Debtors are willing to provide information and documents responsive to the Discovery Requests. You stated that you would provide that response by April 8, 2011. To date, we have not received a response on this issue. We expect to receive that information within one week of the date of this letter.

8.  Affiliates of Mullin TBG. Concerning General Objection No. 15, which is addressed to affiliates of Mullin, you stated that there are no other affiliates beyond Mullin that would be providing documents or would have responsive documents.

9.  Executive/Management Teams. General Objection No. 17 is addressed to the definition of "Executive Teams." You have confirmed that eligibility for the "Northern Telecom Plan" (as defined in General Objection No. 14) for Plan Years 1996 through 1999 was based *solely* on management status, and that eligible employees included all those with a title of Assistant Vice President status or higher. You further confirmed that from 2000 through 2009, the sole criterion employed for eligibility determinations under the Nortel Plan was an employee's targeted compensation; managerial status was not considered at all for those Plan Years.

You agreed to provide us documents and information based on "bands" which were used in relation to managerial status from 1996 to 1999. From 2000 onward, the analysis will center on compensation data only for eligible employees. Based on this representation, executive team data would appear to be of less importance from 2000 onward.

10.     <u>Addresses for Eligible Employees</u>.  Concerning General Objection No. 18, the Debtors have refused to provide addresses for eligible employees, instead proposing to produce documents with redacted information.  We noted that the Beneficiaries have the right to ask for and receive unaltered copies of original documents and that redaction was only proper to preserve a valid privilege.  We also noted that you were to have circulated by now a proposed confidentiality agreement/order, which should obviate your concerns in this regard.  We expect that you will provide the draft proposed confidentiality agreement/order within one week of the date of this letter.

### Objections and Responses to Specific Document Requests

11.     <u>Documents Reviewed for Interrogatory Responses</u>.  Document Request No. 1 asked for documents that were reviewed or used by any party in order to prepare Interrogatory Responses.  You represented that, other than privileged documents that will be reflected on the privilege log, the Debtors *would* produce everything that was consulted or reviewed in preparing the Debtors' Interrogatory Responses.

12.     <u>Drafts</u>.  Concerning Document Request No. 2, you agreed that the Debtors *would* produce drafts of plan documents, to the extent they exist.

13.     <u>Omitted Date Ranges</u>.  In several instances, including their Responses to Document Requests 14-20 and 26, the Debtors purported to limit their document production by cutting off or omitting certain years, including declining to produce documents for 2009 and 2010. You confirmed that the Debtors *would* produce eligibility data for Plan Year 2009, but that there are no eligibility or participation related documents that were generated after the Debtors' bankruptcy filing in January 2009.  You also represented that the Debtors will produce targeted income data and also actual income data, but that you did not think that they had data for the years 2000 and 2001.  The Beneficiaries are entitled to receive responsive documents that pertain to all Plan Years, and expect to receive all such documents.

14.     <u>W-2's</u>.  We stated that the Debtors were obligated to produce W-2s for employees. You balked at producing W-2s because you claimed it was too burdensome.  We countered that the Debtors should consult with ADP or similar service provider because this data is often very easy to obtain.  You agreed that the Debtors would look into this and follow up with us.  We expect to receive that information within one week of the date of this letter.

15.     <u>Documents Prior to 1996</u>.  With respect to Document Request Nos. 15, 16 and 18, we noted that eligibility determinations for Plan Year 1996 were made in 1995.  As such, the Debtors' stated limitation on production, commencing from 1996 onward, was not appropriate.  You agreed that the Debtors *would* produce responsive documents that are dated 1995, notwithstanding their offer to produce documents from 1996 onward.

16. <u>Withdrawal Data From 2005-2009</u>. Document Request No. 26 concerns withdrawals for the Nortel Plan. The Debtors' Response purports to limit the document production to 2005-2009. We explained why the Beneficiaries seek withdrawal communications and data for the years prior to 2005; namely, to determine whether any potential violation of IRC § 409-A have occurred. You understood our reasoning and agreed to look into our requests. For the time being, the documents and data will be confined to 2005-2009.

17. <u>Contributions</u>. In Document Request No. 34, the Beneficiaries asked for documents reflecting amounts contributed to the Plan. You agreed that the Debtors *would* provide this information to the extent that they could find it.

### Interrogatory Objections and Answers

18. <u>Individuals with Plan Knowledge</u>. In Interrogatory Nos. 1 and 4, the Beneficiaries asked for the identification of individuals who had the most knowledge of the Plan and related items. Previously, you had asked us not to contact any individuals identified in response to these Interrogatories because your firm may have been retained by the individuals as counsel. In prior communications, we stated that we did not see how your firm could simultaneously represent the Debtors and these individuals and remain disinterested under sections 327 and 101(14) of the Bankruptcy Code. You agreed to provide a list of individuals who had been retained by your firm. You also agreed to provide an amended answer that breaks out which individual had knowledge of the various categories set forth in Interrogatory Nos. 1 and 4. We expect to receive that information within one week of the date of this letter.

19. <u>Actual Compensation Data and Targeted Compensation Data</u>. Concerning Interrogatories Nos. 5/6, 7/8, and 9/10, you confirmed that the Debtors *would* be producing documents and information for each Plan Year reflecting: (i) actual compensation of all employees; and (ii) targeted compensation for eligible employees, which was employed to determine eligibility.

20. <u>Executive/Managerial Teams</u>. Interrogatory No. 11 asks for identification of members of Executive Teams. You advised that the Debtors will be providing that information to us in relation to individuals who were members of managerial band designations from 1996-1999.

21. <u>Employees Participating After Commencement of Plan Year</u>. Interrogatory Nos. 12 and 13 asks for identification of employees who were allowed to participate after the Plan Year commenced. The Debtors stated that they did not know if they had that information but they would look for it and provide it if existed. We expect to receive that information within one week of the date of this letter.

22.  <u>Employees Failing to Meet Compensation Thresholds</u>. Interrogatory No. 16 seeks to obtain identification of all employees who failed to meet the target compensation thresholds during the Plan Year to which such target compensation thresholds applied. We made clear that the information we have requested requires a comparison of each eligible employee's *actual* compensation for each Plan Year and a determination whether that amount fell below that compensation target for that particular Plan Year. In light of the criteria addressed in <u>*In re New Century Holdings, Inc.*</u>, 387 B.R. 95, 110 (Bankr. D. Del. 2008), as well as the Debtors' burden to establish top hat status, we underscored that employees who were deemed eligible still need to meet eligibility thresholds through actual compensation, not just prior estimates or targets. You acknowledged that the Debtors would be providing the requested information.

I look forward to receiving the information and documents discussed above.

Sincerely,

Daniel J. Murphy

DM/js
cc:  Lisa Schweitzer, Esquire (*via* electronic mail)
     Bonnie Glantz Fatell, Esquire (*via* electronic mail)
     Robert J. Keach, Esquire (*via* electronic mail)
     Paul McDonald, Esquire (*via* electronic mail)