# Exhibit A

—

Court File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT**
**OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION and**
**NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**SECOND AFFIDAVIT OF DAVID M. LINDSEY**
**(sworn June 7, 2011)**

I, David M. Lindsey, of the City of New York, in the State of New York, MAKE
OATH AND SAY:

1.       I submit this affidavit in response to the Second Affidavit of Tai-Heng Cheng,
dated June 6, 2011 ("Second Cheng Affidavit").  While I do not purport to respond herein
to all of the statements made in the Second Cheng Affidavit, I wish to express my
disagreement with Professor Cheng's insistence that the federal policy in favor of
arbitration applies to threshold questions of the existence of an agreement to arbitrate,
and to comment on several of the cases he has cited in support of this proposition.

2.       As I set forth in my first affidavit, the federal policy in favor of arbitration applies
to matters such as the interpretation of the *scope* of an agreement to arbitrate once it has
already been established that an agreement to arbitrate in fact exists.  The policy does not

apply to put a thumb on the scales to establish that an agreement to arbitrate exists where none in fact does.  This is true in both the domestic and the international arbitration contexts.  The federal policy in favor of arbitration was intended to encourage the use of arbitration, not to force it upon parties.  At its core, arbitration remains a consensual process, not a mandatory one unless the parties agree to it in the first place.  The cases that Professor Cheng cites do not stand for any contrary proposition, and indeed only confirm the statements made in my first affidavit.  None of the cases cited by Professor Cheng applies a federal presumption in favor of arbitration where the very existence of any agreement to arbitrate between the parties is in dispute.

3.     For example, *David L. Threlkeld & Co. v. Metallgesellshaft Ltd. (London)*, 923 F.2d 245 (2d Cir. 1991),[1] is plainly a case concerning the scope of an arbitration agreement.  The main dispute was whether a collateral agreement entered into separately by the parties was subject to the same explicit arbitration clause contained in the principal contracts between the parties.[2]  Similarly, *Simula Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999)[3] concerned the scope and not the existence of the arbitration agreement.  The case focused on whether antitrust and federal trademark claims fell within the scope of the arbitration clause.[4]  Scope was also at issue in *Meadows Indem. Co. Ltd. v. Baccala &*

---

[1]     Second Cheng Aff.. n. 16.

[2]     *Threlkeld*, 923 F.2d at 247.  In addition to scope arguments, *Threlkeld* argued that it had not signed a specific acknowledgement of arbitration and that the arbitration agreement was contained in a contract of adhesion.  *Id.* at 249.  It did not challenge, however, the existence of the arbitration agreement itself.

[3]     Second Cheng Aff. n. 19.

[4]     In the very opening line of *Simula*, the court stated, "This appeal presents the question of how broadly an arbitration clause containing the phrase 'arising in connection with this Agreement' should be construed."  *Simula*, 175 F.3d at 717.

*Schoop Ins. Servs., Inc.*, 760 F. Supp. 1036 (E.D.N.Y. 1991).[5]  *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440 (3d Cir. 2003), is also inapposite. The court in *Standard Bent* applied the federal presumption in favor of arbitration only to its analysis of whether the arbitration agreement was incorporated by reference in the parties' exchange of letters, but not to the question of whether the parties had the intent to arbitrate in the first place.[6]

4.       The analysis in *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156 (3d Cir. 2009) is directly on point.  In *Kirleis*, the U.S. Court of Appeals for the Third Circuit clarified that the presumption in favor of arbitration "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties."[7]  I disagree with Professor Cheng's statement that *Kirleis* and others like it are limited to the domestic arbitration context, and that a policy in favor of finding an agreement to arbitrate applies with more force in the international arbitration context.  There is simply no substantial support for the proposition that U.S. courts tilt the scales in favor of arbitration when determining whether an agreement to arbitrate exists in the first instance between the parties, no matter whether in the context of the New York Convention (for international cases) or Chapter 1 of the Federal Arbitration Act (for domestic cases).

5.       The only other support Professor Cheng provides for his assertion that a pro-arbitration presumption applies to the existence of an arbitration agreement is an excerpt

---

[5]       Second Cheng Aff. n. 19.  In *Meadows*, the court analyzed whether a fraud claim fell within the scope of the parties' arbitration clause.

[6]       *Standard Bent*, 333 F.3d at 448.  The court in *Standard Bent* analyzed the arbitration clause to see whether it complied with the formal "agreement in writing" requirements of the New York Convention, in which an "agreement in writing" is defined to include an arbitration agreement contained in an exchange of letters between the parties.  *See* New York Convention, art. II.  The existence of an enforceable arbitration clause in a standard form contract was not in question.

[7]       *Kirleis*, 560 F.3d at 160 (citations omitted).

- 4 -

from Gary Born's treatise on international commercial arbitration.[8]  However, the

quotation Professor Cheng provides is from a section that does not specifically address

U.S. law, but rather aims to summarize and comment on various standards applied to this

question by jurisdictions around the world.  Two pages further along in Mr. Born's

treatise, however, in a section entitled "Standards of Proof for Establishing Existence of

Arbitration Agreement under FAA," the following paragraph may be found:

> ***Preliminarily, it is important under the FAA to distinguish between the standards of proof applicable to the existence of an agreement to arbitrate and those applicable to the question whether a particular dispute falls within the scope of an existing agreement.***  As discussed below, U.S. courts have held that the FAA imposes a strongly "pro-arbitration" approach to interpreting the scope of arbitration clauses: under this approach, doubts about the scope of the clause (*e.g.*, whether it encompasses a particular dispute) will be resolved in favor of coverage.  ***Importantly, these decisions concerning interpretation of the scope of arbitration agreements do not, by their terms, apply to the questions concerning the existence or formation of an arbitration agreement.  A number of U.S. lower courts have made exactly this point, in refusing to apply presumptions regarding the interpretation of arbitration agreements to issues of formation or existence***.[9]

I believe Mr. Born's treatise, as quoted here, accurately reflects U.S. law.

6.    I must point out, however, that even if there *were* a presumption in favor of

finding that an agreement to arbitrate exists, that presumption would have no effect on

the proper analysis of Section 12 of the IFSA.  Professor Cheng cannot mean to imply

that a presumption in favor of arbitration means that any and all dispute resolution

agreements should be viewed with an eye toward finding arbitration.  Here, as set forth in

more detail in my first affidavit, there is nothing in Section 12 of the IFSA that would

---

[8]    Second Cheng Aff. ¶ 12, quoting GARY BORN, INTERNATIONAL COMMERCIAL ARBITRATION 646–47 (3d ed. 2009).

[9]    BORN, *supra* n. 8, at 649 (emphasis added) (citations and quotations omitted).

- 5 -

give rise to a finding that the parties intended anything other than simply to agree to negotiate in good faith to try to reach agreement on a procedure for resolving disputes.

7.      Further to this point, I must also express my disagreement with Professor Cheng's suggestion that my first affidavit relies solely on the absence of some of the more commonly expected arbitration indicia (e.g., seat, number of arbitrators, etc.) in reaching the conclusion that IFSA Section 12(b) is not an agreement to arbitrate.  To the contrary, I viewed the IFSA as a whole in order to determine whether any intent to arbitrate could be discerned from the four corners of the contract.  My conclusion was that for many reasons, including but certainly not limited to the absence of any of those typical indicia of an arbitration agreement, I saw nothing to suggest an intent by the parties to refer their allocation disputes to binding arbitration, but instead merely an agreement to negotiate on a procedure for resolving allocation disputes.

**SWORN** before me in the City of Toronto in the Province of Ontario, this 7th  day of June 2011.

A Commissioner for taking affidavits.                    David M. Lindsey

Court File No. 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at TORONTO

**SECOND AFFIDAVIT OF DAVID M. LINDSEY
(SWORN JUNE 7, 2011)**

Torys LLP
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, Ontario
M5K 1N2  Canada

Tony DeMarinis (LSUC #: 29451Q)
Scott Bomhof (LSUC #: 37006F)
Sheila Block (LSUC #: 14089N)
Andrew Gray (LSUC #: 46626N)

Email:  tdemarinis@torys.com
sbomhof@torys.com
sblock@torys.com
agray@torys.com

Tel:    416.865.0040
Fax:    416.865.8730

Lawyers for Nortel Networks Inc. and the other U.S. Debtors