|  |  |
|---|---|
| ------------------------------------------------------X<br>*In re*<br><br>Nortel Networks Inc., *et al.*,[1]<br><br>                   Debtors.<br><br>------------------------------------------------------ X | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>Jointly Administered<br><br>Hearing Date: June 30, 2011 at 10:00 a.m.<br>Objections Due: June 13, 2011 at 4:00 PM (ET)<br><br>**RE: D.I. 5202** |

**RESPONSE OF HEWLETT-PACKARD COMPANY TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING DEBTORS' ENTRY INTO THE STALKING HORSE ASSET SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES AND BID PROTECTIONS, (C) APPROVING THE NOTICE PROCEDURES AND THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (D) APPROVING THE LICENSE REJECTION PROCEDURES, (E) APPROVING A SIDE AGREEMENT, (F) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL AND (G) SETTING A DATE FOR SALE HEARING AND (II) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN PATENTS AND RELATED ASSETS FREE AND CLEAR OF ALL CLAIMS AND INTERESTS, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, (C) THE REJECTION OF CERTAIN PATENT LICENSES AND (D) THE LICENSE NON-ASSIGNMENT AND NON-RENEWAL PROTECTIONS**

Hewlett-Packard Company ("HP"), a creditor and party-in-interest in the above-captioned Chapter 11 bankruptcy cases, by and through its undersigned counsel, hereby submits this Response ("Response") of Hewlett Packard-Company to the Debtors' Motions for Orders

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

(I)(A) Authorizing Debtors' Entry into the Stalking Horse Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures and Bid Protections, (C) Approving the Notice Procedures and the Assumption and Assignment Procedures, (D) Approving the License Rejection Procedures, (E) Approving a Side Agreement, (F) Authorizing the filing of Certain Documents under Seal and (g) Setting a Date for the sale Hearing and (II) Authorizing and Approving (A) the Sale of Certain Patents and Related Assets Free and Clear of all Claims and Interests, (B) the Assumption and Assignment of Certain Executory Contracts, (c) the Rejection of Certain Patent Licenses and (D) the License Non-Assignment and Non-Renewal Protections ("Sale Motion"), and, in support thereof, represents as follows:

## Background

**A. Procedural History**

1. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

4. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), Nortel Networks Inc.'s ("NNI") direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"),

and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

5. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

6. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.     The Proposed Sale of the Debtors' Patents.**

7. The Debtors filed the Sale Motion, pursuant to sections 363 and 365 of the Bankruptcy Code, on April 4, 2011 to authorize the sale ("Sale Motion") of their right, title and interest throughout the world in approximately 6,000 U.S. and non-U.S. patents and certain

---

[2]     The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

related assets (collectively, the "Assets") to either Ranger, Inc. ("Ranger"), a wholly owned subsidiary of Google, Inc., or to another bidder submitting a higher and better offer for the Assets. [D.I. 5202]

8. To that end, the Debtors requested that the Bankruptcy Court approve their entry into a proposed Asset Purchase Agreement by and among: (i) Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks, Inc., Nortel Networks UK Limited ("Nortel UK"), Nortel Networks (Ireland) Limited ("Nortel Ireland"), Nortel Networks, S.A., and certain other entities identified therein (as Sellers); (ii) Alan Bloom, Stephen Harris, Alan Judson, David Hughes and Christopher as Joint Administrators (of insolvency proceedings in the United Kingdom and Ireland to which Nortel UK and Nortel Ireland, respectively, are subject); (iii) Maitre Cosme Regeau as French Liquidator; (iv) Ranger (as purchaser) and (v) Google, Inc. (as Ranger's parent) ("Sale Agreement"). [D.I. 5202, Exh. A].

9. The Debtors have asked the Bankruptcy Court to approve the sale of the Assets free and clear of all "Interests" and "Claims." [D.I. 5202, ¶ 11, p. 8].

10. Notwithstanding the Debtors' request that the sale of the Assets be free and clear of "Interests" and "Claims" and as set forth in the Sale Motion and pursuant to section 2.2.1(a) of the Sale Agreement, Ranger has agreed to purchase the Assets "subject to" most existing patent licenses granted pursuant to Commercial Licenses of which the Debtors are aware. [D.I. 5202, ¶¶ 11, 22, 23 and 25; Exh. A, § 2.2.1(a)].

11. On May 2, 2011, the Bankruptcy Court entered an Order ("Bidding Procedures Order") establishing bidding procedures in connection with the sale of the Assets. [D.I. 5359].

12. On May 2, 2011, the Debtors filed a finalized Sale Notice with this Court that complies with their representations in the Sale Motion and the provisions of the Bidding

4

Procedures Order. [D.I. 5362]. In the Sale Notice, the Debtors reiterated Ranger's agreement to purchase the Assets "subject to" substantially all known and existing outbound and patent cross-licenses to their patents. [D.I. 5362, p. 2]. The Debtors have served the Sale Notice on HP.

**C.      The Proposed Rejection of "Unknown Licenses."**

13.     In connection with the sale of the Assets, the Debtors have agreed to reject so-called Unknown Licenses, that is, pre-petition license agreements between the Debtors and any other parties which are not identified in the Sellers Disclosures to the Sale Motion as being licenses to which the sale of the Assets will be subject. [D.I. 5202, ¶ 36].

14.     To that end, the Bidding Procedures Order approved the form, as proposed by the Debtors in the Sale Motion, of a Joint Notice of (I) Sale of Patents Subject to Certain Patent Licenses and (II) Rejection of Certain Patent Licenses ("Known License Notice"), [D.I. 5359, ¶¶ 6-9, 21], a final form of which was filed with the Court on May 2, 2011. [DI 5363] The Debtors have served a Known License Notice on HP.

15.     The Known License Notice provides that Ranger has agreed to purchase the Assets subject to license agreements between HP and Northern Telecom (collectively, "Known HP Licenses"). Pursuant to the license rejection procedures set forth therein, the Known License Notice provides for the rejection of any other patent licenses between HP and the Debtors.

16.     Since being served with the Known License Notice, HP has discovered the existence of additional license agreements (collectively, "Recently Discovered HP Licenses"). Additionally, HP and Nortel currently have operative license agreements that are embedded in other agreements ("Embedded HP Licenses").

17.     By virtue of the license rejection procedures set forth in the Known License Notice, absent a successful objection by HP to their proposed rejection, the Recently Discovered HP Licenses, the Embedded HP Licenses and any other currently operative license agreements

between the Debtors and HP that were not identified in the Known License Notice, will be rejected.

**D.     Contract Assumption Procedures.**

18.     At present, Ranger does not seek to have the Debtors assume and assign any executory contracts to it in connection with the of the Assets. [D.I. 5202, ¶ 35]. Nevertheless, by the Sale Motion, the Debtors seek the approval of procedures for the assumption of executory contracts by the Debtors and their assignment to Ranger or, if Ranger is not the successful bidder for the assets, the successful bidder. [D.I. 5202, ¶¶ 35-41].

19.     The contract assumption procedures do not contemplate the service on non-debtor counterparties to contracts with the Debtors notices of the Debtors' proposed assumption of the contracts until after the auction of the Assets, which is currently set for June 20, 2011, a date subsequent to the June 13, 2011 deadline for filing this response. [D.I. 5202, ¶ 36].

20.     HP has not been served with a notice that the Debtors propose to assume any of their executory contracts with HP.

**Relief Requested**

21.     As noted above, Ranger has agreed to purchase the Assets "subject to" most of the Debtors' patent licenses granted pursuant to Commercial Licenses.

22.     However, at this point the Debtors do not contemplate assuming any of their Commercial Licenses with non-debtor licensees and assigning them to the purchaser of the Assets. Conversely, except for the Unknown Licenses, which they propose to reject pursuant to the license rejection procedures set forth in the Known License Notice, the Debtors are not, at this point, rejecting their Commercial Licenses.

23.     Neither the Sale Motion nor the Sale Contract explain or specify what is meant by the phrase, "subject to." Because the Debtors do not, at this point contemplate assuming any of

the Commercial Licenses and will be rejecting only the Unknown Licenses, that omission is problematic.

24. Sub-sections 365(a), (c) and (f) of the Bankruptcy Code provide the Debtors with three options with respect to the Commercial Licenses: (i) assumption; (ii) assumption and assignment to a third party; and (iii) rejection. Neither section 365 nor any other provision of the Bankruptcy Code provides, as a fourth alternative, for the sale of the Assets "subject to" the Commercial Licenses.

25. The Debtors' assumption, assumption and assignment or rejection of a Commercial License would clarify the rights of the non-debtor licensee and, if applicable, the Debtor licensor(s) or purchaser of the Assets under the Commercial Licenses.

26. The assumption of the Commercial Licenses and their assignment to the purchaser of the Assets would be the only means by which the purchaser could obtain rights under the Commercial Licenses.[3] For example, the assumption of the Known HP Licenses by the Debtors and their assignment to the purchaser of the Assets would make clear that HP would continue to enjoy its license to those of the Debtor's patents to which HP enjoys a license pursuant to the Known HP Licenses, and that the purchaser would enjoy the rights provided under the Known HP Licenses to the Debtors. Each party to the Known HP Licenses would be required to perform its obligations thereunder and would be entitled to the benefits thereunder.

27. The rejection of a Commercial License would trigger the protections accorded non-debtor licensees under section 365(n) of the Bankruptcy Code. More specifically, the

---

[3] By raising this argument, HP does not consent to the assignment of the Commercial Licenses to the purchaser of the Assets and expressly reserves its right to object to the assumption of any Commercial License to which it is a party.

7

rejection of the Known HP Licenses would permit HP to elect, pursuant to sub-sections 365(n)(1)(b) and (n)(2) of the Bankruptcy Code, to continue to use the patents to which it enjoys a license pursuant to the Known HP Licenses.

28. The use of the phrase, "subject to," in the Sale Motion and Agreement does not clearly fit either (a) an assumption or assignment of a Commercial License or (b) a rejection of it, and so the use of the phrase does not allow a non-debtor licensee like HP to determine how much protection it will actually receive from the purchase by Ranger or some other third party of those of the Assets "subject to" a Commercial License. In sum, merely selling the Assets "subject to" Commercial Licenses, creates confusion over the respective parties' post-sale rights under the Commercial Licenses.

29. Such confusion creates the potential for the purchaser of the Assets to argue that it has succeeded to some, if not all, of the Debtors' rights under the Commercial Licenses to the patents of non-debtor licensors.

30. Such confusion potentially gives rise to the possibility of infringement claims arising out of a non-debtor licensee's exploitation of a patent of the Debtors that is subject to a Commercial License.

31. Notwithstanding the confusion created by the Debtors' proposal to sell the Assets "subject to" Commercial Licenses, but without assuming or rejecting them, the phrase, "subject to," (under its most patent meaning) must mean that a non-debtor licensee like HP would have a continuing right to use those patents of the Debtors which it is currently entitled to use. In other words, "subject to," would have to function, at the very least, as an estoppel of Ranger (or any other purchaser of the Debtors' patents under the Sale Agreement or a substantially similar

agreement) from suing the non-Debtor licensee for infringement as a result of its post-sale exploitation of those of the Debtors' patents to which it currently enjoys a license.

32. Nevertheless, it is submitted that the matter be clarified through the inclusion of language in the order approving the sale of the Assets clarifying the meaning of a sale of the Assets "subject to" Commercial Licenses.

33. By suggesting such language, HP is not attempting to pressure the Debtors into assuming[4] or rejecting any of the Commercial Licenses. The Debtors have their own reasons for not assuming or rejecting Commercial licenses at this time. HP merely seeks to clarify the concept of a sale of the Assets "subject to" Commercial Licenses.

34. HP proposes the addition of a new paragraph 11 to the proposed Order approving a sale of the Assets to provide as follows:

> 11. After the sale of any Transferred Patent (as defined in the Sale Agreement) to the Purchaser, if the non-debtor licensee (or licensees) of the Transferred Patent pursuant to a Commercial License (as defined in the Sale Motion, Agreement and Order, including all Patent Cross-Licenses) to which it is a party has not waived or relinquished its rights to a Transferred Patent under such Commercial License, then notwithstanding any provision of this Order (including but not limited to section 10): (A) the non-debtor licensee shall continue to enjoy its rights to such Transferred Patents under any Commercial License to which it is a party, including any license rights, any embodiments of said Transferred Patents that are protected by applicable non-bankruptcy law, and any ancillary rights necessary to the full exercise of those rights, without being subject to suit by the Purchaser, the Purchaser's successors or assigns or the Debtors; (B) except as provided in

---

[4] In point of fact, the Debtors are not going to be able to assume, over the objection of non-debtor licensees like HP Commercial Licenses pursuant to which the Debtors enjoy non-exclusive licenses to a non-debtor's patents. *See, e.g., In re Catapult Entertainment, Inc.*, 165 F. 3d 747, 750 (9th Cir. 1999) (holding that section 365(c) of the Bankruptcy Code precludes a debtor's assignment of its rights as a licensee under a non-exclusive patent license to a third part over the objection of the non-debtor licensor); *In re Access Beyond Technologies, Inc.*, 237 B.R. 43 (Bankr. D. Del. 1999) (same).

9

subsection (D) of this Section 11, the rights of a non-debtor licensee under a Commercial License shall be co-extensive with the rights the non-debtor licensee enjoyed before the Petition Date in the bankruptcy case (or cases) filed by the Debtor party (or parties) to said Commercial License; (C) the rights of the non-debtor licensee under a Commercial License shall continue for the duration of said Commercial License and for any period for which the Commercial License may be extended by the non-debtor license; (D) unless a Commercial License is assumed by the Debtor party (or parties) to the Commercial License and assigned to the Purchaser, the non-debtor licensee shall have no right to specific performance by the Purchaser except the right to compel the Purchaser to provide the non-debtor licensee with any intellectual property (or the embodiment thereof) to which the non-debtor licensee may be entitled pursuant to the Commercial License. Notwithstanding the provisions of this Section 11 or any other provision of this Order, neither the sale of the Transferred Patents nor the assignment of any Transferred Licenses (as defined in the Sale Agreement) shall result in the transfer to the Purchaser of any rights the Debtors may enjoy under non-exclusive licenses to the patents of non-debtors.

35. Finally, because the Sale Motion and Agreement do not identify what licenses are actually considered Commercial Licenses, the order approving the sale of the Assets should expressly state that (i) to the extent that they contain licenses of patents or intellectual property to HP, the Known HP Licenses, the Recently Discovered HP Licenses and the Embedded HP Licenses constitute Commercial Licenses for purposes of the Sale Motion and Sale Agreement; and (ii) the sale of the Assets shall not effect any licenses of intellectual property that do not contain a patent license;

**WHEREFORE**, HP respectfully request that this Court:

(a) include any order approving the sale of the Assets a provision identical to or substantially similar to that set forth in paragraph 33 above;

(b) expressly state in any such Order that such sale shall not affect or otherwise impair HP's license agreements with any affiliate of the Debtors that is not a debtor before this Court;

10

(c) expressly state in any such Order that, to the extent that they contain licenses of patents to HP, the Known HP Licenses, the Recently Discovered HP Licenses and the Embedded HP Licenses constitute Commercial Licenses for purposes of the Sale Motion and Sale Agreement;

(d) expressly state in any such order that such sale shall not effect any licenses of intellectual property that do not contain a patent license;

(e) that HP shall retain its rights to use any and all of the intellectual property granted under any license agreement the Debtors seek to reject pursuant to sub-sections 365(n)(1)(B), (n)(2) and (n)(3); and

(f) grant HP such other and further relief to which it shows itself entitled.

Dated: June 13, 2011  
       Newark, New Jersey

GIBBONS P.C.

By: /s/ Natasha M. Songonuga  
Natasha M. Songonuga, Esq. (Bar No. 5391)  
1000 N. West Street, Suite 1200  
Wilmington, DE 19801-1058  
Telephone: (302) 295-4875  
Facsimile: (302) 295-4876  
E-mail: nsongonuga@gibbonslaw.com

-and-

David N. Crapo, Esq.  
One Gateway Center  
Telephone: (973) 596-4523  
Facsimile: (973) 639-6244  
E-mail: dcrapo@gibbonslaw.com

*Counsel for Hewlett-Packard Company*