**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **Nortel Networks Inc., *et al.*,** | : | **Bankruptcy No. 09-10138 (KG)** |
| | : | |
| **Debtors.** | : | **Jointly Administered** |
| | : | |
| | : | **RE: DI 5202, 5359** |

**LIMITED OBJECTION OF MICROSOFT CORPORATION TO MOTION OF
DEBTORS TO SELL CERTAIN PATENTS AND RELATED ASSETS FREE AND
CLEAR OF ALL CLAIMS AND INTERESTS AND RELATED RELIEF**

Microsoft Corporation ("**Microsoft**"), by and through its undersigned counsel,

objects to the *Debtors' Motion for Orders (I) (A) Authorizing Debtors' Entry into the Stalking*

*Horse Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures and the Bid*

*Protections, (C) Approving the Notice Procedures and the Assumption and Assignment*

*Procedures, (D) Approving the License Rejection Procedures, (E) Approving a Side Agreement,*

*(F) Authorizing the Filing of Certain Documents Under Seal and (G) Setting a Date for the Sale*

*Hearing and (II) Authorizing and Approving (A) the Sale of Certain Patents and Related Assets*

*Free and Clear of All Claims and Interests, (B) the Assumption and Assignment of Certain*

*Executory Contracts, (C) the Rejection of Certain Patent Licenses and (D) the License Non-*

*Assignment and Non-Renewal Protections* (the "**Sale Motion**").  In support hereof, Microsoft

respectfully represents as follows:

1

## FACTUAL BACKGROUND

1.      On January 14, 2009 and thereafter, each of the above-captioned debtors (the "**Debtors**") commenced cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2.      On April 4, 2011, the Debtors filed the Sale Motion.  The Sale Motion seeks, among other things, to approve the sale of certain patents and related assets (the "**Transferred Patents**") free and clear of all claims and interests pursuant to section 363 of the Bankruptcy Code.

3.      In connection therewith, the Debtors sought and obtained approval of the Court (the "**Bidding Procedures Order**") to enter into a stalking horse agreement (the "**Sale Agreement**") with Ranger, Inc. (the "**Proposed Purchaser**"), a wholly-owned subsidiary of Google, Inc.

4.      The Bidding Procedures Order approved, among other things, a Joint Notice of (I) Sale of Patents Subject to Certain Patent Licenses and (II) Rejection of Certain Patent Licenses (the "**Known License Notice**").

5.      Microsoft received a Known License Notice, which provides that the Proposed Purchaser has agreed to purchase the Transferred Patents subject to the licenses granted pursuant to that certain Patent Cross License Agreement, effective as of July 17, 2006 (the "**PCL**"), by and among Microsoft and various of the Debtors.  A true and correct copy of the PCL is annexed hereto as Exhibit A.[1]

---

[1]   Contemporaneously herewith, Microsoft is filing a motion to file the PCL under seal (the "**Seal Motion**") because, pursuant to the terms of the PCL, its terms and conditions (but not its existence) are to be kept confidential by the parties.  Accordingly, Exhibit A and sections

6.       **[REDACTED**\*\*\*\*\*\*\*\***REDACTED**\*\*\*\*\*\*\*\*\***REDACTED]**.  *See*

PCL, at § **[** \*\*\***REDACTED**\*\*\*]

7.       Under the Sale Agreement, the Proposed Purchaser is not requiring the

Debtors to assume and assign any executory contracts to it, including the PCL.  Accordingly, the

Sale Motion does not seek authority to assume the PCL.

8.        Further, pursuant to the Sale Agreement, the Debtors seek to sell the

Transferred Patents free and clear of claims or interests, other than claims or interests that are

"Permitted Encumbrances."  Sale Agreement, at § 2.1.1.

9.       Included in the definition of "Permitted Encumbrances" are certain

commitments (the "**SSO Commitments**") of the Debtors either (a) made directly to standard

setting bodies (the "**SSOs**") with respect to the Transferred Patents, or (b) resulting from

obligations of the Debtors arising from their membership in the SSO with respect to the

Transferred Patents.  In either case, only those SSO Commitments that are set forth on Section

1.1(g) of the disclosure schedule of the Sale Agreement are "Permitted Encumbrances" (such

SSO Commitments on Section 1.1(g) of the disclosure schedule, the "**Scheduled SSO**

**Commitments**").  *Id.* at 16-17.

10.       In other words, if a particular SSO Commitment is **not** a Scheduled SSO

Commitment, the Sale Agreement attempts to sell the Transferred Patents to the Proposed

Purchaser free and clear of such SSO Commitment.

11.       In addition, the Debtors filed a proposed form of order authorizing the sale

to the Proposed Purchaser (the "**Proposed Sale Order**").  Paragraph 28 of the Proposed Sale

Order seeks an order of the Court amending, among other things, the PCL, in a manner so that

---

herein discussing specific provisions of the PCL have been redacted pending the Court's
ruling on the Seal Motion.

the Debtors will be deemed to have refused to consent to any renewal, extension, assignment,

amendment, waiver or modification of the PCL without the prior written consent of the Proposed

Purchaser:

> [T]he Debtors shall be deemed to have affirmatively and reasonably refused to give consent (including any consent of any Debtor that may be deemed to be given as a result of inaction by such Debtor) to any renewal, extension, assignment, amendment, waiver or modification of any license under the Transferred Patents, Specified UK Patents or Jointly Owned Patents pursuant to any Cross-License Agreement … that require the consent of any Debtor pursuant to the terms of such License Agreement and that would have the practical effect of expanding the scope or term of the licenses to the Transferred Patents, the Specified UK Patents or Jointly Owned Patents thereunder (regardless of whether such renewal, extension, assignment, amendment, waiver or modification is sought prior to or after the Debtors dissolve or otherwise cease to exist), in each case unless the [Proposed] Purchaser shall otherwise agree in writing, in its sole discretion.

Proposed Sale Order, ¶ 28.a.

12.     Similarly, Paragraph 28.g. of the Proposed Sale Order seeks to prohibit the

Debtors from transferring any of their "obligations, right, title or interest in the licenses" under

the Transferred Patents arising under, among others, the PCL, to any person from and after the

closing of the sale to the Proposed Purchaser. *Id.* at ¶ 28.g.

13.     Furthermore, the Debtors seek to appoint the Proposed Purchaser as

"attorney-in-fact" for each of the Debtors, which would give the Proposed Purchaser, among

other things, the power to (a) execute instruments on behalf of the Debtors in connection with the

limitations contained in Paragraph 28 of the Proposed Sale Order, and (b) terminate the licenses

granted under the PCL upon the occurrence of any specific event giving rise to such termination

right. *Id.* at ¶ 28.h.

## LIMITED OBJECTION

**A.    The Sale of the Transferred Patents**
      **Should be Subject to All SSO Obligations**

14.    The Court authorized the Debtors to file the Sellers Disclosure Schedule,

including Section 1.1(g) thereof, under seal.  Nevertheless, upon information and belief,

Microsoft believes that not all of the Debtors' SSO Commitments are Scheduled SSO

Commitments.  Accordingly, Microsoft objects to the Sale Motion to the extent it seeks to

approve the sale of the Transferred Patents to the Proposed Purchaser – or, for that matter, any

other bidder – free and clear of any SSO Commitments, regardless of whether such SSO

Commitment is a Scheduled SSO Commitment.

15.    Microsoft and other industry members rely on these SSO Commitments

being honored with respect to the Transferred Patents.  Microsoft believes that the SSO

Commitments are enforceable against the Debtors, and must remain enforceable against the

purchasers of the Transferred Patents, be it the Proposed Purchaser or another successful bidder.

Microsoft believes that, absent all of the Debtors' SSO Commitments being Scheduled SSO

Commitments, the proposed sale pursuant to the Sale Motion would result in considerable

disruption in the development and enhancement of various existing technologies and give the

Prospective Purchaser an unfair competitive advantage.

16.    In any event, given the unique rights and obligations to third parties

created by the SSO Obligations, the Debtors cannot provide adequate protection to third parties

such as Microsoft absent transferring the Transferred Patents subject to all such SSO

Commitments, and not just the Scheduled SSO Commitments, as required by section 363(e) of

the Bankruptcy Code.  *See In re Dewey Ranch Hockey, LLC*, 414 B.R. 577, 591-92 (Bankr. D.

Ariz. 2009) (holding that a debtor could not sell the Phoenix Coyotes, a professional hockey

team, to a potential purchaser free and clear of the National Hockey League's right to control

where the Coyotes played its home games, among other rights, because the debtor could not

adequately protect such interest of the National Hockey League as required by section 363(e) of

the Bankruptcy Code).

17.    Accordingly, to the extent the Court approves the sale of the Transferred

Patents to the Proposed Purchaser (or any other successful bidder), the Transferred Patents must

be sold subject to **all** of the SSO Commitments.  This requirement should be included in the final

executed version of the Sale Agreement or any other asset purchase agreement involving the

Transferred Patents and included in the Court's order approving the Sale Motion.

**B.    The Debtors Cannot Amend the
        PCL Without Microsoft's Consent**

18.    The Proposed Sale Order seeks to amend the PCL by providing that the

Debtors have deemed "affirmatively and reasonably" to have refused to give consent to

Microsoft to a request to, among other things, amend, waiver or modify the PCL unless the

Proposed Purchasers otherwise agrees in writing, in its sole discretion.  *See* Proposed Sale Order,

at ¶ 28.a.  Additionally, the Proposed Sale Order seeks to limit the Debtors ability to transfer

rights under the PCL and to authorize the Proposed Purchaser to exercise certain rights under the

PCL.  *See id.* at ¶¶ 28.g., 28.h.  The Court should refuse to include these provisions in any order

that approves the sale of the Transferred Patents to the Proposed Purchaser relative to the PCL

because such provisions effect an impermissible amendment to the PCL in violation of its terms.

19.    **[REDACTED**\*\*\*\*\*\*\*\*\*\*\***REDACTED**\*\*\*\*\*\*\***REDACTED**\*\*\*\*\*\*\*
**REDACTED**\*\*\*\*\*\*\*\***REDACTED**\*\*\*\*\*\*\***REDACTED**\*\*\*\*\*\*\*\***REDACTED**\*\*\*\*\*\*\*\*\*
**REDACTED**\*\*\*\*\*\*\*\***REDACTED**\*\*\*\*\*\*\***REDACTED]**.  The Court should not permit the

Debtors to do this and should strike Paragraph 28 of the Proposed Order at least to the extent that it purports to apply to the PCL.

20.    Additionally, unilateral modification of a contract is generally impermissible **[REDACTED**********REDACTED*******]**:  "Under general contract rules, an obligation may not be altered without the consent of the party who assumed the obligation." *Bier Pension Plan Trust v. Estate of Schneierson*, 74 N.Y.2d 312, 315 (NY 1989).  Accordingly, the provisions of Paragraph 28 of the Proposed Sale Order that purport to alter the terms of the PCL should not be authorized by the Court.

WHEREFORE, the Court should deny the Sale Motion to the limited extent requested herein, sustain Microsoft's objection, and grant such other or further relief as is just and proper.

Dated:  Wilmington, DE
      June 13, 2011                                    Respectfully Submitted,

                                                      BROWN STONE NIMEROFF LLC

                                                      s/ Jami B. Nimeroff
                                                      Jami Nimeroff, Esquire (No. 4049)
                                                      901 N. Market Street, Suite 1300
                                                      Wilmington, DE 19801
                                                      (302) 428-8142 Tel
                                                      (302) 351-2744 Fax
                                                      jnimeroff@bsnlawyers.com

                                                      and

                                                      David M. Feldman, Esquire
                                                      Matthew K. Kelsey, Esquire
                                                      GIBSON, DUNN & CRUTCHER LLP
                                                      200 Park Avenue
                                                      New York, NY 10166
                                                      (212) 351-4000 Tel
                                                      (212) 351-6351 Fax
                                                      DFeldman@gibsondunn.com
                                                      MKelsey@gibsondunn.com