**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| _____ ) | Chapter 11 | |
| In re: ) | | |
| ) | Case No. 09-10138 (KG) | |
| NORTEL NETWORKS INC., *et al.*[1] ) | | |
| ) | Jointly Administered | |
| Debtors. ) | | |
| ) | | |
| _____ ) | | |
| ) | | |
| GENBAND US LLC ) | | |
| ) | | |
| Plaintiff, ) | | |
| v. ) | Adv. No. 11-_____ (KG) | |
| ) | | |
| NORTEL NETWORKS INC., *et al.* ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |
| _____ ) | | |

## COMPLAINT FOR DECLARATORY RELIEF AND SPECIFIC PERFORMANCE

GENBAND US LLC (formerly GENBAND Inc., "GENBAND" or "Plaintiff"), by and

through its undersigned counsel, hereby files this Complaint for Declaratory Relief and Specific

Performance against Nortel Networks Inc., and its affiliated entities in the above-captioned

chapter 11 case (collectively, the "Defendants").  The allegations set forth in this Complaint are

alleged upon knowledge with respect to Plaintiff and its own acts, and upon information and

belief, as to all other matters.

---

[1]      The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

## PRELIMINARY STATEMENT

1.     This is an action to enforce a settlement.  GENBAND agreed to compromise its significant claims against Defendants and accept a lower amount, but only if it were paid promptly.  Because various debtor entities would need to sign off on the settlement, the parties' memorandum of understanding ("MOU") states that it is subject to those entities' approval. However, the MOU also states that Defendants are obligated to use their "best efforts" to document and "give effect to" the settlement "as soon as reasonably practicable."  The purpose of that clause was to ensure that Defendants would not use the need to obtain "approvals" as an artifice to extract additional concessions beyond what the parties actually agreed upon or to delay payment.

2.     That, however, is exactly what Defendants have done.  Although Defendants have an affirmative duty to use their "best efforts" to effectuate the terms of the MOU as soon as reasonably practicable, Defendants have instead repeatedly dragged their feet and delayed the process, and have sought to use those delays as leverage to obtain different and additional terms. In short, Defendants have used delay tactics to try to re-trade the deal—precisely the opposite of what their "best efforts" obligation requires.

3.     It is now more than two months since the parties entered into the MOU.  The parties have agreed upon a full, formal settlement agreement.  Every single debtor entity has now approved the substantive terms of the settlement.  Indeed, the only thing that is currently holding up the process is that one of those entities (Nortel Networks o.o.o.) is withholding its formal consent to the settlement because of an issue that is entirely between the debtors and has nothing whatsoever to do with GENBAND.  In other words, GENBAND's settlement is now being held

hostage to a purely intramural dispute amongst the debtors (the precise nature of which the debtors refuse to disclose).

4.      There is no reason why GENBAND should have to continue waiting until the debtors resolve their various internal squabbles before GENBAND can finally get what it bargained for.  The MOU permits Defendants to obtain the other debtors' approval <u>of the settlement</u>, and they have done so.  The MOU does <u>not</u> permit Defendants to delay the settlement until each and every <u>unrelated</u> dispute <u>amongst the debtors</u> has been resolved.  That was not what the parties agreed to in the MOU.  Indeed, that would render Defendants' "best efforts" obligation illusory, would allow the debtors to unilaterally delay the resolution indefinitely (all the while holding GENBAND's money), and would effectively convert the MOU into an option.

5.      Even if Defendants had the right to delay its settlement with GENBAND based on a completely unrelated dispute amongst the debtors (which it does not), Defendants still cannot refuse to perform because Defendants' breach of their best efforts obligation materially contributed to the problem on which Defendants rely.  Based on representations the debtors have made to GENBAND, it is apparent that the dispute among Nortel Networks o.o.o. could have been addressed weeks, if not months, ago, and that it is only because of GENBAND's efforts to compel enforcement of the MOU that Defendants have done anything at all in that regard.  If Defendants had complied with their "best efforts" duties (rather than seeking to extract further concessions through delaying tactics) the intra-debtor dispute could have been addressed and resolved long ago.  Defendants cannot excuse their performance based on a situation to which Defendants themselves materially contributed.

6.      In short, a deal is a deal.  The Defendants have proven through their conduct that Defendants cannot be relied upon to keep their word, that they regard contracts as merely an

opportunity for further negotiations, and that only judicial action will cause them to take any

action.  GENBAND therefore finds itself in the absurd position of being forced to *litigate* to

obtain the benefits of a *settlement*.  GENBAND brings this action to compel Nortel to finally live

up to its promises.

## PARTIES

7.     Plaintiff, GENBAND, is a Delaware limited liability company with its principal

place of business at 2801 Network Boulevard, Suite 300, Frisco, TX 75034.  GENBAND is a

global leader of IP infrastructure and application solutions, enabling fixed, mobile and cable

service providers around the world to evolve communications networks through IP innovation.

8.     Defendants consist of Nortel Networks Corporation, Nortel Networks Limited,

and Nortel Networks Inc. (together with its affiliate filing entities, the "U.S. Debtors").

9.     Defendants' principal place of business is located at 220 Athens Way, Suite 300,

Nashville, Tennessee 37228.  Defendants operate an integrated, multinational business,

providing networking and communications technology and services to customers in the United

States, Canada, and around the world.

## JURISDICTION AND VENUE

10.     This adversary proceeding relates to the above-captioned chapter 11 bankruptcy

cases now pending before the United States Bankruptcy Court for the District of Delaware (the

"Court").

11.     This is an adversary proceeding initiated by GENBAND pursuant to Rule 7001(7)

(to obtain an injunction or other equitable relief), Rule 7001(9) (to obtain a declaratory

judgment), and Rule 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules").

12.     This Court has jurisdiction over the parties and the subject matter of this

adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

13.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b).

14.     Venue for this adversary proceeding is proper pursuant to 28 U.S.C. §§ 1408 and

1409.

## FACTS

### A.     Nortel Enters Bankruptcy

15.     On January 14, 2009 (the "Petition Date"), the U.S. Debtors filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code with the Court (hereinafter, the

"Chapter 11 Cases").  On the Petition Date, Nortel Networks Corporation, Nortel Networks

Limited (together with their affiliates, including the EMEA Debtors (as defined below) and the

U.S. Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian

Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court"

and together with the Court, the "Courts") under the Companies' Creditors Arrangement Act

(Canada), seeking relief from their creditors and a Monitor, Ernst & Young Inc. (the "Monitor"),

was appointed by the Canadian Court.

16.     On the Petition Date, the High Court of England and Wales placed nineteen of the

U.S. Debtors' European affiliates (collectively, the "EMEA Debtors")[3] into administration under

---

[2]      The Canadian Debtors include the following entities:  Nortel Networks Corporation, Nortel Networks
Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks
International Corporation.

[3]      The EMEA Debtors include the following entities:  NNUK (in administration), Nortel Networks S.A.,
Nortel Networks (Ireland) Limited (in administration), Nortel GmbH (in administration), Nortel Networks France
S.A.S. (in administration), Nortel Networks Oy (in administration), Nortel Networks Romania SRL (in
administration), Nortel Networks AB (in administration), Nortel Networks N.V. (in administration), Nortel
Networks S.p.A. (in administration), Nortel Networks B.V. (in administration), Nortel Networks Polska Sp. z.o.o.
(in administration), Nortel Networks Hispania, S.A. (in administration), Nortel Networks (Austria) GmbH (in
administration), Nortel Networks, s.r.o. (in administration), Nortel Networks Engineering Service Kft (in

the control of individuals from Ernst & Young LLP and Ernst & Young Chartered Accountants (the "Joint Administrators").

**B.      GENBAND Purchases Nortel's CVAS Business**

17.     On December 22, 2009, GENBAND agreed to purchase substantially all of the assets relating to Nortel's Carrier Voice over IP and Communications Solutions Business (the "CVAS Business").  This was done pursuant to an Asset Sale Agreement by and among Nortel, GENBAND, and the other Designated Purchasers that became parties thereto, dated December 22, 2009, as amended from time to time (the "Sale Agreement").

18.     This Court approved the sale of the CVAS Business to GENBAND by order dated March 4, 2010 [D.I. 2632].  The Canadian Court likewise approved the sale of the CVAS Business to GENBAND by order dated March 4, 2010.

19.     On May 28, 2010, the Sale Agreement closed (the "Closing").

**C.      Disputes Arise Over Various Matters Under the Sale Agreement**

20.     Subsequent to the Closing, GENBAND and Nortel had a disagreement over the "Deferred Profit Amount," as provided in the Sale Agreement.

21.     On November 18, 2010, GENBAND filed the *Motion for Entry of an Order Pursuant to Section 362(d) of the Bankruptcy Code Granting Relief from the Automatic Stay to Compel Arbitration* [D.I. 4347] (the "U.S. Motion to Compel Arbitration"), seeking, *inter alia*, an order requiring that the disagreement regarding the Deferred Profit Amount under the Sale Agreement be submitted to fast and final arbitration.

22.     On November 17, 2010, the U.S. Debtors filed the *Debtors' Motion for Entry of an Order Enforcing the Order Authorizing the Sale of Certain Assets of the Debtors' Carrier*

---

administration), Nortel Networks Portugal S.A. (in administration), Nortel Networks Slovensko (in administration), s.r.o. (in administration) and Nortel Networks International Finance & Holding B.V. (in administration).

*Voice Over IP and Application Solutions Business, and Directing the Release of Certain Escrowed Funds* [D.I. 4345] which motion sought, *inter alia*, a determination that the U.S. Court maintained jurisdiction over the dispute regarding the definition of Deferred Profit Amount (the "Debtors' U.S. Motion").

23.     On or about November 30, 2010 the Canadian Debtors filed a motion with the Canadian Court seeking, *inter alia*, a declaration that the Canadian Court and this Court have the exclusive authority and jurisdiction to determine the dispute relating to the Deferred Profit Amount (the "Debtors' Canada Motion").

24.     On or about December 9, 2010, GENBAND filed a motion with the Canadian Court seeking, *inter alia*, an order requiring Nortel to submit the Deferred Profit Amount dispute to efficient and final arbitration (the "Canadian Motion to Compel Arbitration" and with the U.S. Motion to Compel Arbitration, the Debtors' U.S. Motion, and the Debtors' Canada Motion, the "Mediated Motions").

25.     On December 15, 2010, this Court and the Canadian Court held a joint hearing regarding the U.S. Motion to Compel Arbitration and the Canadian Motion to Compel Arbitration.

26.     On January 21, 2011, this Court denied the U.S. Motion to Compel Arbitration (the "U.S. Order") [D.I. 4737].  On that same date, the Canadian Court denied the Canadian Motion to Compel Arbitration.

27.     GENBAND appealed the U.S. Order pursuant to a Notice of Appeal filed on February 1, 2011 [D.I. 4786].

28.     On March 8, 2011, the U.S. Appeal was docketed in the United States District Court for the District of Delaware.

29.     On February 11, 2011, GENBAND served a notice of motion seeking leave to appeal the Canadian Order.

**D.      The Parties Engage in a Court-Ordered Mediation and Agree to Settle Pursuant to a Written Memorandum of Understanding**

30.     On April 4, 2011, GENBAND, the U.S. Debtors, the Canadian Debtors, the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases, and Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (collectively, the "Mediation Parties") engaged in mandatory mediation (the "Mediation") pursuant to a Standing Order of the U.S. District Court dated July 23, 2004.

31.     By agreement of the Mediation Parties, the scope of the Mediation was the entire underlying dispute regarding the Purchase Price Adjustment under the Sale Agreement, as well as the other issues raised in the Mediated Motions, rather than the more limited question of whether that dispute was subject to mandatory arbitration.  However, neither the Mediated Motions nor the Mediation itself addressed any other issues between GENBAND and the Defendants (or any other debtors).  Indeed, there is a complex and ongoing commercial relationship between the Defendants and GENBAND, and the scope of the Mediation was intentionally limited to specific issues.

32.     After participating in the Mediation and engaging in arms' length negotiations, the Mediation Parties agreed (the "Settlement"), *inter alia*, that: (a) Nortel would pay GENBAND $26,920,863, subject to verification of certain amounts;[4] (b) the parties would exchange full releases with respect to the disagreements that were raised in the motions; (c) Nortel's entry into the Settlement would be subject to the receipt of approvals from all Nortel

---

[4]     This amount represents a settlement of all open disputes regarding the Deferred Profit Amount, and other issues.  After verification of certain amounts, and pursuant to the Post-Close Credit Memo Issue (defined below), this number was reduced to $24,905,244.

Sellers (as defined in the Sale Agreement) and approval by the Courts; and (d) the parties would use their "best efforts to document and give effect to" the terms of the Settlement "as soon as reasonably practicable."

33.     The requirement that the Settlement was conditioned upon approval by all the "Nortel Sellers" was included only to ensure that all the Sellers under the Sale Agreement approve the commercial and substantive terms of the Settlement.

34.     The requirement that the parties use their best efforts to effect the settlement "as soon as reasonably practicable" was a critical element of the settlement, as part of the reason GENBAND agreed to accept a discount on its claim was the time value of money that would be lost if GENBAND had been forced to litigate.

35.     On April 4, 2011, at the conclusion of the Mediation, the Mediation Parties memorialized the settlement in the MOU, a true and correct copy of which is attached hereto as **Exhibit A**.

36.     At that time, the Mediation Parties discussed the proposed timeline, including the goal that Nortel would provide payment to GENBAND under the Settlement by the end of May 2011.

**E.     Nortel Delays Completion of the Settlement Agreement for More than Six Weeks and Demands Concessions Beyond What Was Agreed in the MOU**

37.     On April 6, 2011, in furtherance of the requirement in the MOU that the parties use their best efforts to memorialize the terms of the MOU as soon as reasonably practicable, GENBAND requested that Nortel provide a first draft of the Settlement Agreement.

38.     On April 11, 2011, and again on April 13, 2011, GENBAND asked Nortel to provide a first draft of the Settlement Agreement.

39.     On April 19, 2011, fifteen days after the Mediation Parties agreed to the terms of the Settlement and entered into the MOU, Nortel provided the first draft of the Settlement Agreement, which included many terms and issues that had not been discussed at the April 4, 2011 Mediation and were not included in the MOU.

40.     Among other things, Nortel's draft sought a release from an entity that was not a party to the Sale Agreement or to any of the Mediated Motions.  The MOU did not provide for such a release.

41.     The Nortel draft also sought concessions regarding a tax issue that was not discussed in the MOU and was not at issue in the Mediated Motions.

42.     On April 26, 2011, GENBAND's counsel provided its comments to Nortel's first draft of the Settlement Agreement.

43.     On April 27, 2011, counsel for GENBAND and Nortel had a conference call to discuss the draft Settlement Agreement.

44.     On April 29, 2011 and May 2, 2011, counsel for GENBAND and Nortel exchanged correspondence regarding the wording of specific sections of the Settlement Agreement.  By this time the parties had limited their differences to only three open items.  The first was that Nortel continued to demand a release from a party that was not a signatory to the Sale Agreement, was not represented at the Mediation, and was not party to the MOU (the "Non-Party Release Issue").  The second disagreement pertained to the amount of the Settlement, particularly with regard to post-close credit memorandums (the "Post-Close Credit Memo Issue"), which, if Nortel prevailed, would decrease the amount of the payment by Nortel to GENBAND by over $2 million.  The third open issue pertained only to the wording of certain releases regarding Canadian taxes.

45.     On May 3, 2011, counsel for GENBAND inquired as to when Nortel would send a new version of the draft Settlement Agreement.  Counsel for Nortel stated that such a draft was forthcoming.

46.     On May 4, 2011 and again on May 5, 2011, counsel for GENBAND requested that Nortel send the working draft of the Settlement Agreement.  Counsel for Nortel repeated that such a draft was forthcoming.

47.     On May 6, 2011, Nortel finally sent a new draft of the Settlement Agreement which confirmed that, aside from slight wording differences regarding the aforementioned Canadian taxes, the only remaining substantive issues left to be resolved were the Non-Party Release Issue and the Post-Close Credit Memo Issue.

48.     On May 6, 2011, counsel for GENBAND spoke with counsel for Nortel regarding the deadline for filing a motion pursuant to Bankruptcy Rule 9019 seeking approval of the Settlement Agreement (a "9019 Motion") so that it could be heard by the Courts at the next joint hearing scheduled for June 7, 2011.

49.     Specifically, counsel for Nortel made clear that the 9019 Motion had to be filed by May 17, 2011, twenty-one (21) days prior to the June 7, 2011 joint omnibus hearing before the Courts.[5]  Counsel for GENBAND requested that Nortel cooperate in filing the 9019 Motion by May 17, 2011.  That deadline was eleven days away at that time, and the Settlement Agreement was fully negotiated save for two issues.

50.     On May 10, 2011, counsel for GENBAND and counsel for Nortel participated in a conference call during which the parties attempted to resolve the Non-Party Release Issue and the Post-Close Credit Memo Issue.  Afterwards, counsel for GENBAND sent a new version of

---

[5]     Counsel for GENBAND believed that under the relevant Bankruptcy Rules, the 9019 Motion could have been filed on May 18, 2011, but that disagreement is now academic.

the Settlement Agreement to counsel for Nortel that confirmed that only those issues remained to be resolved. All other open issues, as well as the form and wording of the document, were agreed to at that time.

51.     On May 12, 2011, counsel for Nortel circulated a new version of the Settlement Agreement which demonstrated again that the only two issues left for resolution were the Non-Party Release Issue and the Post-Close Credit Memo Issue. Nortel proposed that the parties resolve the Non-Party Release Issue by instead providing a side letter from the non-party affirming that it was not a party to the dispute and did not have any of the claims covered by the Settlement Agreement.

52.     On May 13, 2011, counsel for GENBAND sent counsel for Nortel minor and insubstantial changes to the Settlement Agreement, noted that only the Non-Party Release Issue and the Post-Close Credit Memo Issue remained outstanding, and requested that Nortel provide a draft of the 9019 Motion for GENBAND's review.

53.     On May 13, 2011, counsel for Nortel sent counsel for GENBAND its draft 9019 Motion.

**F.     The Parties Reach Agreement on the Two Remaining Issues**

54.     On May 16, 2011, GENBAND accepted Nortel's proposal regarding both the Post-Close Credit Memo Issue and the Non-Party Release Issue, agreeing that Nortel would instead receive a letter from the non-party affirming that it did not have the right to assert any of the claims covered by the Settlement Agreement.

55.     On May 17, 2011, counsel for GENBAND circulated a revised draft of the Settlement Agreement, a true and correct copy of which is attached hereto as **Exhibit B**, and the 9019 Motion that indicated its agreement with Nortel; stated that all open issues, including the

Non-Party Release Issue and the Post-Close Credit Memo Issue, were resolved; and requested

that Nortel file the 9019 Motion promptly.[6]

**G.      Hours Before the Filing Deadline, Nortel Refuses to File the 9019 Motion Based on Previously-Undisclosed Issues**

56.      On the morning of May 17, 2011, counsel for Nortel asked, for the first time, that

additional language be added to the Settlement Agreement regarding a point that had not

previously been discussed.  Despite the last-minute nature of the request, GENBAND

nonetheless in good faith agreed to consider it and proposed language to counsel for Nortel.

57.      That afternoon, mere hours before the filing deadline, counsel for Nortel

requested further changes to the proposed language.  Even though the new terms were not

required under the MOU, GENBAND nonetheless agreed to consider the request—and even

proposed some additional language to address it.

58.      Then, at 4:07 p.m., literally minutes before GENBAND expected the 9019

Motion to be filed with the U.S. Court by the Debtors, the counsel for the Joint Administrators

sent an email stating that due to a tax issue that was wholly unrelated to the Settlement

Agreement, the MOU, and all the negotiations over the six weeks since the mediation (the

"Unrelated Tax Issue"), the Joint Administrators would not approve the Settlement Agreement or

the draft 9019 Motion.

59.      Less than two hours later, and with ample time to file the 9019 Motion before the

filing deadline, GENBAND directly responded to the counsel for the Joint Administrators and

---

[6]      On May 27, 2011, GENBAND filed a *Notice of Filing of Amended Exhibit "A" to Motion of GENBAND US LLC for an Order Compelling Compliance With Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5509] and included a slightly modified draft of the Settlement Agreement, with wording that resolved the language issue that the U.S. Debtors had introduced on May 17, 2011.  A true and correct copy of the Settlement Agreement submitted on that date is attached hereto as **Exhibit C**.

represented that the Unrelated Tax Issue was resolved because the payments requested had either already been paid, or had been approved for payment by GENBAND.

60.     GENBAND received no response from the counsel for the Joint Administrators on the filing deadline.

**H.    Nortel Continues to Refuse to File the 9019 Motion, And GENBAND Seeks Relief From This Court**

61.     On May 18, 2011, the counsel for the Joint Administrators stated—in response to GENBAND's request as to whether the Unrelated Tax Issue remained open and whether the Joint Administrators would consent to filing the 9019 Motion—that counsel for the Joint Administrators had not been made aware of the urgency of the need to file the 9019 Motion until May 17, 2011, and as such was not yet in a position to approve the filing.[7]  Counsel for the Joint Administrators stated that they would revert "in due course."

62.     GENBAND was subsequently informed that as of May 18, 2011, only four of the Nortel Sellers—Nortel Networks Israel, Nortel Networks S.A., Nortel Networks A.G., and Nortel Networks o.o.o. (the "Missing Sellers")—had not yet consented to the Settlement Agreement, although none had expressed any affirmative objection to it.

63.     This was the first time that GENBAND heard anything from the Defendants about the fact that approval from the Missing Sellers was needed or that the Missing Sellers had yet to approve.

64.     Despite the parties' contractual agreement in the MOU to "use their best efforts to document and give effect to [the terms of the MOU] as soon as reasonably practicable,"

---

[7]     *See* Email dated May 18, 2011, attached hereto as **Exhibit D**, evidence that the Joint Administrators had not yet been made aware of the urgency to file the 9019 Motion.  *See also* Email dated May 25, 2011, attached hereto as **Exhibit E**.

Defendants thus refused to file the 9019 Motion and caused the parties to miss the filing deadline.

65.     On May 18, 2011, GENBAND demanded that Nortel file the papers along with a motion to shorten notice so that the motions could nonetheless be heard at the June 7, 2011 hearing.  However, Nortel did not do so.

66.     On May 19, 2011, GENBAND again requested that Nortel file the 9019 Motion and a motion to shorten notice such that the Settlement Agreement may be heard by the Courts at the June 7, 2011 hearing.  Nortel did not respond.

67.     On May 20, 2011, GENBAND filed the *Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5459].

## I.     Despite Its Affirmative Duty to Use "Best Efforts" to Effectuate the Terms of the MOU, Nortel Once Again Seeks to Delay the Settlement and Obtain Additional Concessions

68.     On June 1, 2011, Nortel filed the *U.S. Debtors' Objection to the Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5553] (the "U.S. Debtors' Objection").

69.     In the U.S. Debtors' Objection, Nortel once again sought to gain concessions beyond what was agreed in the MOU and to delay the approval of the Settlement Agreement.  In the U.S. Debtors' Objection, Nortel sought to add an entirely new condition that is not covered by either the MOU or the Settlement Agreement: namely, that Nortel be permitted to "offset" the amounts Nortel owes under the Settlement against unrelated amounts pursuant to an unrelated dispute that was not before the Court, that was not addressed in the Mediated Motions, that was

not a part of the Mediation, that was not within the scope of the MOU, that had not been fully

resolved, and that was admittedly the subject of ongoing settlement negotiations.

70.    Such a setoff is contrary to the express terms of the MOU, which requires Nortel

to pay GENBAND the full amount agreed upon.  Nortel's request was, in itself, a breach of the

MOU because Nortel is obligated to use its "best efforts" to give effect to the terms of the

MOU—a duty that is not consistent with seeking to obtain new and different terms as a condition

of giving effect to the Settlement.  The request demonstrates not only Nortel's refusal to use its

"best efforts" to obtain approval of the Settlement Agreement, but its affirmative attempt to

hinder the approval process as a means to gain further concessions from GENBAND.

71.    On June 1, 2011, the Joint Administrators filed the *Objection of the Joint*

*Administrators to Motion of GENBAND US LLC for an Order Compelling Compliance with*

*Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule*

*9019* [D.I. 5550] (the "Joint Administrators' Objection").

72.    On June 2, 2011, GENBAND filed the *Reply of GENBAND US LLC to the U.S.*

*Debtors' and the Joint Administrators' Objections to the Motion of GENBAND US LLC for an*

*Order Compelling Compliance with Settlement Agreement and Approving the Settlement*

*Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5570].

**J.    This Court Orders the Parties to Meet and Confer, and Nortel Makes Clear that
All Nortel Sellers Now Approve of the Settlement, but that Nortel Networks
o.o.o. is Withholding Formal Consent Based on an Unrelated Issue that Has
Nothing to Do with GENBAND**

73.    During a telephonic hearing among this Court, the Monitor, and counsel for

GENBAND, the U.S. Debtors, the EMEA Debtors, the Joint Administrators, and the Canadian

Debtors, held on June 10, 2011, this Court ordered the parties to meet and confer by June 15,

2011.

74.     During the hearing that day, the Joint Administrators stated to this Court that they had not been made aware of the urgency of the need to file a 9019 Motion until May 17, 2011.

75.     On June 15, 2011, the parties held the first Court-ordered meet-and-confer conference.  During this meeting, counsel for the EMEA Debtors stated that three of the four Nortel Sellers who had previously not provided their consent—Nortel Networks Israel, Nortel Networks S.A., and Nortel Networks A.G.—had finally provided their consent to enter into the Settlement Agreement.

76.     Counsel for the EMEA Debtors also stated that the sole remaining entity—Nortel Networks o.o.o.—agrees with the commercial and substantive terms of the Settlement Agreement and has no objection to the Settlement Agreement, but has refused to provide an affirmative consent due to an issue wholly unrelated to GENBAND, the Settlement, or the Settlement Agreement, and pertaining only to an undisclosed issue among some or all of the Sellers (the "Unrelated Intra-Debtor Dispute").

77.     The Sellers participating in the June 15, 2011 meet-and-confer would not describe the nature of the Unrelated Intra-Debtor Dispute, but stated that they were all working to resolve it, and that the consent of Nortel Networks o.o.o. would be provided upon its resolution.

K.    **The Parties Meet and Confer Again, But Despite the Fact that All Nortel Sellers Agree with the Commercial Terms of the Settlement Agreement, No Progress Has Been Made**

78.     The parties held another meet-and-confer conference on June 17, 2011, but Nortel had no update as to the formal consent of Nortel Networks o.o.o.  Indeed, no party had met with any representative of Nortel Networks o.o.o. since the first meet-and-confer conference on June 15, 2011 and nothing had been done to obtain Nortel Networks o.o.o.'s consent.

79.     Counsel for the Joint Administrators stated that the Moscow office of counsel for the U.S. Debtors were organizing a meeting in Russia to try to resolve the Unrelated Intra-Debtor

17

Dispute, by meeting with a representative of Nortel Networks o.o.o.  Although it was reiterated that the Unrelated Intra-Debtor Dispute has nothing to do with GENBAND or the Settlement Agreement, no party to the June 17, 2011 meet and confer had any update as to when such a meeting would occur.

80.    Thus, as of June 17, 2011, almost two and a half months after the Mediation, Defendants are just now starting to organize meetings with representatives from Nortel Networks o.o.o.  This is, by all accounts, the "last impediment" to moving forward with a 9019 Motion. The Defendants thus promised to try to schedule a meeting regarding the Unrelated Intra-Debtor Dispute the following week, and to report back, although Defendants refused to provide any schedule or deadline for doing this.

81.    The MOU requires that all parties to it use "best efforts" to effectuate the terms of the Settlement as soon as reasonably practicable.  As of today, all Nortel Sellers <u>have approved</u> the commercial and substantive terms of the Settlement Agreement.  The <u>only</u> holdup at this point is the Unrelated Intra-Debtor Dispute, which has <u>nothing</u> to do with GENBAND and is only a dispute amongst the debtors.  The commercial terms have been set since April 4, 2011, and the Settlement Agreement has been finalized since May 17, 2011.  Despite these facts, and their contractual obligations, the Defendants still have not filed a 9019 Motion.

## <u>COUNT I</u>

### <u>(Declaratory Judgment that All "Nortel Sellers" Approve the Settlement and that Defendants May Not Rely on the Failure of a Condition They Themselves Control)</u>

82.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 81 above as if set forth fully in this paragraph.

83.    The MOU states, in relevant part, that entry into the Settlement is "subject to the receipt of approvals from all Nortel Sellers."

84.     The U.S. Debtors argue that they cannot file a 9019 Motion because Nortel Networks o.o.o. has not approved of the Settlement.  But Nortel Networks o.o.o. has approved the commercial and substantive terms of the Settlement Agreement.  Nortel Networks o.o.o. only withholds its formal consent to due to the Unrelated Intra-Debtor Dispute.

85.     The Unrelated Intra-Debtor Dispute has nothing to do with either GENBAND or the Settlement Agreement.

86.     "Approval" of the Settlement is all that the MOU requires, and Nortel Networks o.o.o. has done so.  All other Nortel Sellers have also approved the Settlement.

87.     Despite these facts, the U.S. Debtors and the Joint Administrators argue that they cannot file a 9019 Motion because the formal consent of Nortel Networks o.o.o., which Nortel Networks o.o.o. has conditioned upon resolution of the Unrelated Intra-Debtor Dispute, is required.  Defendants are wrong: the MOU only requires that the Nortel Sellers approve the substantive terms of the Settlement; it does not require their agreement on unrelated, intra-debtor disputes.

88.     Even if Defendants' position were correct (which it is not), the same MOU obligates Nortel to use its "best efforts" to obtain any necessary approvals, and Nortel's failure to use such "best efforts" materially contributed to any alleged failure of this condition.  Defendants cannot excuse their performance based on the failure of a condition to whose failure Defendants themselves materially contributed.  Defendants therefore cannot rely on the absence of Nortel Network o.o.o.'s consent to excuse their performance.

89.     On information and belief, Defendants deny that they are currently obligated to perform their duties under the MOU, including their duty to submit the Settlement to this Court for approval.

90.     A justiciable controversy exists between GENBAND and Defendants concerning Defendants' obligations under the MOU.

91.     GENBAND is entitled to a declaratory judgment that the conditions to Defendants' performance under the MOU have been satisfied.  Alternatively, GENBAND is entitled to a declaratory judgment that Defendants cannot rely upon the alleged failure of such conditions to excuse their performance due to Defendants' breach of their obligations under the MOU.

## COUNT II

### (Declaratory Judgment that Defendants Have Breached the MOU)

92.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 91 above as if set forth fully in this paragraph.

93.     At the mediation, Defendants entered into the MOU, by which they agreed that: (a) Nortel would pay GENBAND $26,920,863, subject to verification of certain amounts; (b) the Mediation Parties would exchange full releases with respect to the disagreements that were raised in the motions; (c) Nortel's entry into the Settlement would be subject to the receipt of approvals from all Nortel Sellers (as defined in the Sale Agreement) and approval by the Courts; and (d) the Mediation Parties would use their "best efforts to document and give effect to" the terms of the MOU "as soon as reasonably practicable."

94.     Thus, Defendants were obligated to take all necessary steps within their power to obtain promptly any necessary approvals for the Settlement Agreement.

95.     Once the required approvals were obtained, Defendants were also obligated to submit promptly the Settlement Agreement to this Court for approval under Bankruptcy Rule 9019.

96.     Defendants have breached their obligation under the MOU to use their best efforts to obtain the required approvals from the requisite parties as soon as reasonably practicable.

97.     Rather than use their "best efforts" to effectuate the Settlement, Defendants have delayed the process and, worse, attempted to use that delay as leverage to seek additional concessions beyond what was agreed in the MOU.

98.     Defendants have likewise breached their obligation to seek approval of the Settlement Agreement by this Court under Bankruptcy Rule 9019 as soon as reasonably practicable.

99.     Defendants have denied that they have breached their "best efforts" obligations under the MOU.

100.    A justiciable controversy exists between GENBAND and Defendants concerning Defendants' performance of its obligations under the MOU.

101.    GENBAND is entitled to a declaratory judgment that Defendants have breached their obligations under the MOU.

## **COUNT III**

### **(Specific Performance Ordering Defendant to File 9019 Motion Seeking Court Approval of the Settlement Agreement)**

102.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 101 above as if set forth fully in this paragraph.

103.    Pursuant to the terms of the MOU, the condition precedent in the MOU requiring that the Settlement Agreement be approved by all the Nortel Sellers has been fulfilled.  Formal consents have been received from all of the Nortel Sellers except Nortel Networks o.o.o., and Nortel Networks o.o.o. has approved of both the commercial and substantive terms of the

Settlement Agreement, as was explained during the June 15, 2011 meet-and-confer.  All Nortel

Sellers approve of the Settlement.

104.    Having obtained approval of the Settlement Agreement from each of the Nortel

Sellers, pursuant to the terms of the MOU, the Defendants are obligated to file a 9019 Motion

requesting this Court's approval of the Settlement Agreement.

105.    Alternatively, if further approval of Nortel Networks o.o.o. is indeed still

required, Defendants are obligated to file a 9019 Motion requesting this Court's approval of the

Settlement Agreement because Defendants cannot rely on the failure of that condition, to which

Defendants' breach of its "best efforts" obligation materially contributed, to excuse their

performance.

106.    Due to the Defendants' conduct and the facts stated above, Plaintiff seeks the

entry of an order compelling the Defendants to file a 9019 Motion seeking this Court's approval

of the Settlement Agreement immediately, and on an expedited basis.

## COUNT IV

### (Declaratory Judgment that Defendant Has Breached the Implied Duty of Good Faith and Fair Dealing)

107.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs

1 through 106 above as if set forth fully in this paragraph.

108.    The implied covenant of good faith and fair dealing is breached where a party to a

contract has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the

asserting party reasonably expected.  A court must look to the parties' reasonable expectations at

the time of contracting to determine whether a breach of the implied covenant of good faith and

fair dealing has occurred.

109.    GENBAND entered into the MOU with the reasonable expectation that, in return for its agreement to accept a discount on its claim, it would be able to avoid the time and costs associated with litigating the claim.

110.    The inclusion of the provision in the MOU that Defendants would use their "best efforts" to obtain the required approvals of the Settlement Agreement "as soon as reasonably practicable" lead GENBAND reasonably to expect that Defendants would do everything in their power to obtain necessary consents for the Settlement Agreement.

111.    Defendants have breached the implied covenant of good faith and fair dealing by acting unreasonably, not only in failing to make any effort to obtain the requisite consents, but in intentionally hindering the approval process.  As such, GENBAND has been denied the benefit of its bargain.

## COUNT V

### (Damages for Breach of Contract)

112.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 111 above as if set forth fully in this paragraph.

113.    Due to the Defendants' conduct and the facts stated above, Plaintiff seeks the entry of an order awarding GENBAND damages for breach of contract equal to the sum of (i) the interest accrued on $24,905,244—the payment owed to GENBAND under the Settlement— from the date a 9019 Motion should have been filed through the date such order is entered, and (ii) fees and expenses incurred in connection with litigating this dispute from the date a 9019 Motion should have been filed through the date such order is entered.

## PRAYERS FOR RELIEF

WHEREFORE, GENBAND respectfully requests:

a)        A Declaratory Judgment of the Court decreeing that Defendants are in default of their obligations under the MOU and that such default constitutes a breach of the MOU.

b)        A Declaratory Judgment of the Court decreeing that all "Nortel Sellers" have approved the Settlement, and that Defendants may not rely upon the failure of receipt of formal consent from Nortel Networks o.o.o. to justify their failure to file a 9019 Motion.

c)        An order compelling Defendants to file a 9019 Motion seeking this Court's approval of the Settlement Agreement immediately, on an expedited basis.

d)        A Declaratory Judgment of the Court decreeing that Defendants have breached the implied duty of good faith and fair dealing.

e)        An order awarding GENBAND damages for breach of contract in an amount equal to the sum of (i) the interest accrued on $24,905,244 from the date that a 9019 Motion should have been filed through the date such order is entered, and (ii) fees and expenses incurred in connection with litigating this dispute from the date that a 9019 Motion should have been filed through the date such order is entered.

f)        Such other and further relief as the Court deems just and proper.

Dated: June 20, 2011
Wilmington, Delaware

 _/s/ Michael R. Lastowski_____
Michael R. Lastowski (No. 3892)
Sommer L. Ross (No. 4598)
DUANE MORRIS, LLP
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801
Telephone:      (302) 657-4900
Facsimile:       (302) 657-4901
Email:            mlastowski@duanemorris.com
                   slross@duanemorris.com