IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br><br> Nortel Networks Inc., *et al.*,[1] <br><br>                   Debtors. | Chapter 11 <br><br> Case No. 09-10138 (KG) <br><br> Jointly Administered <br><br> Hearing Date: July 11, 2011 at 9:30 a.m. <br> Objections Due: May 31, 2011 at 4:00 PM (ET) <br><br> **Ref. D.I. 5202, 5363** |

**AMENDED RESPONSE OF HEWLETT-PACKARD COMPANY TO JOINT NOTICE OF (I) SALE OF PATENTS SUBJECT TO CERTAIN PATENT LICENSES AND (II) REJECTION OF CERTAIN PATENT LICENSES**

Hewlett-Packard Company ("HP"), a creditor and party-in-interest in the above-captioned Chapter 11 bankruptcy cases, by and through its undersigned counsel, hereby submits this Amended Response of Hewlett Packard-Company to Joint Notice of (I) Sale of Patents Subject to Certain Patent Licenses and (II) Rejection of Certain Patent Licenses ("Amended Response") and, in support thereof, represents as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

#1660404 v4
108627-73770

**Background**

A.   **Procedural History**

1. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

4. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), Nortel Networks Inc.'s ("NNI") direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

5. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"),

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

6. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I. 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

7. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.     The Proposed Sale of the Debtors' Patents.**

8. On April 4, 2011, the Debtors filed a motion under sections 363 and 365 of the Bankruptcy Code to authorize the sale ("Sale Motion") of their right, title and interest throughout the world in all or substantially all of their patents and certain related assets (collectively, the "Assets") to either Ranger, Inc. ("Ranger"), a wholly owned subsidiary of Google, Inc., or to another bidder submitting a higher and better offer for the Assets. [D.I. 5202]

9. To that end, the Debtors have requested that the Bankruptcy Court approve their entry into a proposed Asset Purchase Agreement by and among: (i) Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks, Inc., Nortel Networks UK Limited ("Nortel UK"), Nortel Networks (Ireland) Limited ("Nortel Ireland"), Nortel Networks, S.A.,

3

and certain other entities identified therein (as Sellers); (ii) Alan Bloom, Stephen Harris, Alan Judson, David Hughes and Christopher as Joint Administrators (of insolvency proceedings in the United Kingdom and Ireland to which Nortel UK and Nortel Ireland, respectively, are subject); (iii) Maitre Cosme Regeau as French Liquidator; (iv) Ranger (as purchaser) and (v) Google, Inc. (as Ranger's parent) ("Sale Agreement").  [D.I. 5202, Exh. A].

10. The Debtors have asked the Bankruptcy Court to approve the sale of the Assets free and clear of all "Liens" and "Claims."  [D.I. 5202, ¶ 11, p. 8].

11. As set forth in the Sale Motion and pursuant to section 2.2.1(a) of the Sale Agreement, Ranger has agreed to purchase the Assets subject to most existing patent licenses granted pursuant to Commercial Licenses of which the Debtors are aware.  [D.I. 5202, ¶¶ 11, 22, 23 and 25; Exh. A, § 2.2.1(a)].

12. On May 2, 2011, the Bankruptcy Court entered an Order ("Bidding Procedures Order") establishing bidding procedures in connection with the sale of the Assets.  [D.I. 5359].

13. On May 2, 2011, the Debtors filed a finalized Sale Notice with this Court that complies with their representations in the Sale Motion and the provisions of the Bidding Procedures Order.  [D.I. 5362].  In the Sale Notice, the Debtors reiterated Ranger's agreement to purchase the Assets subject to substantially all known and existing outbound and patent cross-licenses to their patents.  [D.I. 5362, p. 2].  The Debtors have served the Sale Notice on HP.

**C.     The Proposed Rejection of "Unknown Licenses."**

14. In connection with the sale of the Assets, the Debtors have agreed to reject so-called Unknown Licenses, that is, pre-petition license agreements between the Debtors and any other parties of which the Debtors are not currently aware or which are not identified in the Sellers Disclosures to the Sale Motion as being licenses to which the sale of the Assets will be subject.  [D.I. 5202, ¶ 36].

15. To that end, the Bidding Procedures Order approved the form, as proposed by the Debtors in the Sale Motion, of a Joint Notice of (I) Sale of Patents Subject to Certain Patent Licenses and (II) Rejection of Certain Patent Licenses ("Known License Notice"). [D.I. 5359, ¶¶ 6-9, 21].

16. On May 2, 2011, the Debtors filed a final form of Known License Notice with the Bankruptcy Court. [DI 5363]

17. The Debtors have served a Known License Notice on HP.

18. The Known License Notice provides that Ranger has agreed to purchase the Assets subject to the following two license agreements between HP and Northern Telecom: (i) a Patent License Agreement, dated as of January 1, 1994 ("PCL"); and (ii) a Technology Agreement, dated as of October 30, 1985 ("Technology Agreement") (collectively, "Known HP Licenses"). The Known HP Licenses are not the subject of this Response.

19. Pursuant to the license rejection procedures set forth therein, the Known License Notice also provides for the rejection of any other patent licenses between HP and the Debtors.

20. Since being served with the Known License Notice, HP has discovered the existence of additional license agreements (collectively, "Recently Discovered HP Licenses")[3] between HP and one or more of the Debtors:

> i. a Patent License Agreement, dated as of September 11, 1987, between HP and Northern Telecom Limited;
>
> ii. a License Agreement, dated as of September 14, 1977, between HP and Northern Telecom Limited;

---

[3] Because of the confidentiality provisions contained in these agreements, they are not attached to this motion. Copies have been served on counsel to the Debtors.

    iii.    Operating Agreement, dated August 8, 1983, between HP and Northern Telecom, Inc.;

    iv.    Master Agreement #MA-02-006, dated May 5, 2003, between Nortel Networks Incorporated ("NNI"), on the one hand, and HP and Hewlett-Packard Development Company, LP ("HPDC"), on the other hand;

    v.    Amendment No. 1 to Master Agreement (#MA-02-006), effective as of October 29, 2004, between HP and HPDC, on the one hand, and NNI, on the other hand;

    vi.    Project Statement #1 to Master Agreement No. MA-02-006, dated May 5, 2003, between HP and HPDC, on the one hand, and NNI, on the other hand; and

    vii.    Project Statement #3 to Master Agreement No. MA-02-006, dated May 5, 2003, between HP and HPDC, on the one hand, and NNI, on the other hand; as well as

    viii.    any and all other license agreements between HP and the Debtors which have not yet been discovered but under which the Debtors and HP are currently operating.

21. By virtue of the license rejection procedures set forth in the Known License Notice, absent a successful objection by HP to their rejection, the Recently Discovered HP Licenses, as well as other currently operative license agreements that have not yet been discovered, will be rejected.

22. Additionally, HP has numerous other agreements with the Debtors. Those agreements many not be denominated license agreements and, in fact, may not be primarily license agreements. However, they may contain provisions providing HP with licenses to use patents the Debtor proposes to sell pursuant to the Sale Motion.

23. It would be burdensome for both HP and the Debtors to search through all of their agreements with each other to determine whether a specific agreement contains a license that

would be deemed an Unknown License to be rejected pursuant to the procedures set forth in the Known License Notice absent a successful objection by HP to their rejection.

### Relief Requested

24.     Debtors may reject contracts if, in the exercise of their business judgment, they determine that the contracts are burdensome or involve some loss or detriment to the estate.  3 *Collier on Bankruptcy* ¶ 365.03[2] at 365-25 (15th ed. rev. 2010), *citing In re Jackson Brewing Co.*, 567 F.2d 618 (5th Cir. 1978).

25.     To enjoy the deference accorded under the business judgment rule, however, the debtor's decision to reject a contract must have been made on an informed basis.  *In re Pomona Valley Medical Group*, 476 F.3d 665 (9th Cir. 2007).

26.     Here, the Debtors appear not to have been aware of the continued existence of the Recently Discovered HP Licenses.  Nor do they appear to have considered the existence of license provisions in their many other agreements with HP.  There may be additional agreements between the Debtors and HP under which they are operating, but of which they are not aware.  Under the circumstances, therefore, the rejection of all but two license agreements between HP and the Debtors by virtue of the license rejection provisions contained in the Known Notice License do not constitute a decision to reject made on an informed basis.

27.     In point of fact, the Debtors have reversed the process for determining whether a contract should be rejected.  They have effectively abdicated, in part at least, their obligation to review their contracts to determine which should be assumed and which should be rejected.  Instead, the Debtors appear to be relying on non-debtor counterparties to those contracts to find them and bring them to their attention.

28. Under the circumstances, therefore, the Debtors should not be permitted to reject their contracts with HP without presenting evidence that they have reviewed them and have made an informed decision to reject them.

29. Alternatively, if locating, identifying and reviewing all of their agreements (other than the Known HP Licenses) pursuant to which HP enjoys a license to patents is too burdensome for the Debtors, HP should simply be permitted to reserve its rights under sub-sections 365(n)(1)(B) and (n)(2) with respect to those agreements between HP and the Debtors that are rejected by operation of the license rejection procedures set forth in the Known License Notice.

30. In any event and under all circumstances, HP reserves, and expressly does not waive its rights under 11 U.S.C. § 365(n)(1)(B) and (n)(2) to retain its rights under any license agreement the Debtors purport to reject by virtue of the license rejection procedures set forth in the Known License Notice.

**WHEREFORE**, HP respectfully requests that this Court: (i) set a hearing on HP's objection to the rejection of the Recently Discovered HP License Agreements and any other agreements providing for the license to HP of any of the Debtors' patents; (ii) deny the Debtors' request to reject any of its license agreements with HP pending such hearing; (iii) as an alternative to such a hearing, authorize HP to reserve its rights under 11 U.S.C. § 365(n)(1)(B) and (n)(2) with respect to those agreements between HP and the Debtors that are rejected by

operation of the license rejection procedures set forth in the Known License Notice; and (iv) grant such other and further relief as it deems just and proper.

Dated: June 30, 2011                    GIBBONS P.C.

                                        By:    /s/ Natasha M. Songonuga
                                                  Natasha M. Songonuga, Esq. (Bar No. 5391)
                                                  1000 N. West Street, Suite 1200
                                                  Wilmington, DE 19801-1058
                                                  Telephone: (302) 295-4875
                                                  Facsimile: (302) 295-4876
                                                  E-mail: nsongonuga@gibbonslaw.com

                                                              -and-

                                                  David N. Crapo, Esq.
                                                  One Gateway Center
                                                  Newark, New Jersey 07102-5310
                                                  Telephone: (973) 596-4523
                                                  Facsimile: (973) 639-6244
                                                  E-mail: dcrapo@gibbonslaw.com

*Counsel for Hewlett-Packard Company*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: Jointly Administered
           Debtors. :
:
--------------------------------------------------------- X

**CERTIFICATION OF SERVICE**

I, David N. Crapo, hereby certify as follows:

1. I am an attorney at law of the States of New Jersey and Texas and am counsel to Gibbons P.C., the attorneys for Hewlett-Packard Company in the above-captioned jointly administered Chapter 11 cases.

2. On May 31, 2011, I caused the Response of Hewlett-Packard Company to Joint Notice of (II) Sale of Patents Subject to Certain Patent Licenses and (II) Rejection of Certain Patent License ("Response") to be filed with this Court according to the Objection Procedures set forth in that certain Joint Notice of (I) Sale of Patents Subject to Certain Patent Licenses and (II) Rejection of Certain Patent License and to be served electronically and by facsimile on the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

parties listed on the Service List attached to the Certificate of Service filed concurrently with the Response.

      3.      On June 30, 2011, I caused the Amended Response of Hewlett-Packard Company to Joint Notice of (I) Sale of Patents Subject to Certain Patent Licenses and (II) Rejection of Certain Patent License to be filed with this Court according to the Objection Procedures set forth in that certain Joint Notice of (I) Sale of Patents Subject to Certain Patent Licenses and (II) Rejection of Certain Patent License and to be served electronically and by facsimile on the parties listed on the Service List attached hereto.

      I certify that the foregoing statements made by me are true.  I understand that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: June 30, 2011                     /s/ David N. Crapo
      Newark, New Jersey                    David N. Crapo

**SERVICE LIST**

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York  10006
Fax:   212-225-3999
Attention:  James L. Bromley and
Lisa M. Schweitzer

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York  10019
Fax:   212-403-2000
Attention:  Philip Mindlin
Adam O. Emmerich
Benjamin M. Roth

Akin Gump Strauss Hauer & Feld L.L.P.
One Bryant Park
New York, New York  10036
Fax:   212-872-1002
Attention:  Fred Hodara
Stephen Kuhn
Kenneth Davis

Milbank, Tweed, Hadley & McCloy
One Chase Manhattan Plaza
New York, New York  10006
Fax:   212-822-5735
Attention:  Roland Hlawaty

Morris, Nichols, Arsht & Tunnell, LLP
1201 North Market Street
Wilmington, Delaware  19801
Fax:   302-658-3989
Attention:  Derek C. Abbott

Torys LLP
79 Wellington Street West
Suite 3000
Box 270
TD Centre
Toronto, Ontario
M5K 1N2 Canada
Fax:   416-865-7380
Attention:  Michael Rotsztain
Adam Slavens

Richards, Layton & Finger, P.S.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Fax: 302-651-7701
Attention:  Christopher M. Samis

Ogilvy Renault LLP
Royal Bank Plaza
South Tower
Suite 3800
200 Bay Street
Toronto, Ontario
Canada
Fax:   416-216-3930
Attention:  Jennifer Stam

Ernst & Young Tower
222 Bay Street
P.O. Box 251
Toronto, Ontario
M5K 1J7 Canada
Fax:    416-943-3300
Attention:  Sharon Hamilton

Goodmans LLP
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, Ontario
M5H 2S7 Canada
Fax:    416-979-1234
Attention:  Jay Carfagnini
Joseph Pasquariello

The Office of the United States Trustee
844 King Street
Suite 2207
Wilmington, Delaware  19801
Fax:    302-573-6497
Attention:  Patrick Tinker