## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
:     Chapter 11
:
*In re*     :
:
Nortel Networks Inc., *et al.*,[1]     :     Case No. 09-10138 (KG)
:
          Debtors.     :     (Jointly Administered)
:
----------------------------------------------------------- X
:
Nortel Networks Inc.,     :
:
          Plaintiff,     :
:     Adv. Proc. No. 10-53171 (KG)
v.     :
:
Gail & Rice, Inc.,     :
:
          Defendant.     :     **Hearing date:  July 26, 2011 at 9:30 am (ET)**
:     **Objections due:  July 19, 2011 at 4:00 pm (ET)**
-----------------------------------------------------------X

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION OF SETTLEMENT OF AVOIDANCE CLAIMS BY AND BETWEEN <u>NORTEL NETWORKS INC. AND GAIL & RICE, INC.</u>

Nortel Networks Inc. ("<u>NNI</u>") and certain of its affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), hereby move this Court (the "<u>Motion</u>"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 502, 547, and 550 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authorizing the Debtors to

---

[1]  In addition to Nortel Networks Inc. ("<u>NNI</u>"), the Debtors in the Chapter 11 cases are:  Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("<u>NN CALA</u>").  Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

enter into and approving a stipulation (the "Stipulation") with Gail & Rice, Inc. ("Defendant", and together with NNI, the "Parties"), in the form attached hereto as **Exhibit B**, resolving the Adversary Proceeding entitled Nortel Networks Inc. v. Gail & Rice, Inc., Adv. Proc. No. 10-53171 (KG) (the "Adversary Proceeding"); and granting such other and further relief as the Court (the "Court" or the "Bankruptcy Court") deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate their remaining businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

---

[2]  Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [Main D.I. 1098].

respect of the Debtors [Main D.I.s 141, 142][3], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it was unable to maximize value through sales.  Since then, Nortel

---

[3]   Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __."  Citations herein to the docket in this adversary proceeding (Adv. Pro. No. 10-53171) are in the form "Adv. D.I. __."

[4]   The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]   The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

has sold many of its business units and assets to various purchasers.  Efforts continue to be made

with respect to the realization of value from Nortel's remaining assets.  For further information

regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed

by the Debtors and http://dm.epiq11.com/nortel.

### Relief Requested

7.    By this Motion, the Debtors seek an order, pursuant to sections 105(a), 502, 547,

and 550 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Stipulation, (ii)

authorizing but not directing the Debtors to take all actions reasonably appropriate to perform

their obligations under the Stipulation, and (iii) granting them such other and further relief as the

Bankruptcy Court deems just and proper.

### Facts Relevant to this Motion

8.    The Parties had a history of business dealings going back to at least 2006, during

which time Defendant provided event services to NNI.

9.    NNI's books and records indicate that within ninety (90) days prior to the Petition

Date, NNI made one or more transfers of an interest in its property to or for the benefit of

Defendant in the aggregate amount of $1,744,539.50 (the "Subject Transfers").

10.    On October 4, 2010, NNI filed its Complaint To Avoid And Recover Preferential

Transfers And To Disallow Claims pursuant to sections 547, 550, 551 and 502(d) of the

Bankruptcy Code (Adv. Pro. No. 10-53171) (the "Complaint") against the Defendant in this

Court, pursuant to which NNI sought to avoid and recover the Subject Transfers (the "Avoidance

Claim").

11.    On October 27, 2010, the  Court entered an Order Authorizing And Approving

Settlement Procedures To Settle Certain Avoidance Claims (the Settlement Procedures Order")

which requires the Debtors to obtain Bankruptcy Court approval pursuant to Bankruptcy Rule

9019 before they settle certain avoidance claims where the asserted claim amount is greater than $1,000,000 [Main D.I. 4211].

12.     Since the Complaint was filed, the Parties have engaged in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by further litigation of the Avoidance Claim, the Parties have agreed to settle the Adversary Proceeding on the terms set forth in the Stipulation, attached hereto as **Exhibit B**.

13.     Pursuant to the Stipulation[6] and subject to the Bankruptcy Court's approval, NNI has agreed to settle the Avoidance Claim in the amount of $96,000.   In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration, Defendant has agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release the Debtors, their past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "Debtor Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that Defendant now has, had, may have had, or hereafter may have against any of the Debtor Releasees, including, without limitation, any claim regarding the Avoidance Claim, the Adversary Proceeding, and any transaction described or referred to in the Complaint in the Adversary Proceeding, and any claim arising under § 502(h) of the Bankruptcy Code.

14.     In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration, NNI has agreed, subject to the Bankruptcy Court's

---

[6] In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

approval, to, *inter alia*, release the Defendant, its past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "Defendant Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that Plaintiff now has, had, may have had, or hereafter may have against any of the Defendant Releasees regarding the Avoidance Claim, the Adversary Proceeding, and any transaction described or referred to in the Complaint in the Adversary Proceeding.

## Basis for Relief

15.     The Debtors seek authorization for NNI to enter into the Stipulation under sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."   11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

16.     Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."   Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to

6

___

arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

17.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

18.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62

B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

19.     The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation. While NNI is prepared to litigate the Avoidance Claim, Defendant has contended that the ordinary course of business defense pursuant to 11 U.S.C. § 547(c)(2) is particularly strong based on the average payment time during the history of the parties' dealings. Specifically, the Subject Transfers were made on invoices from zero to thirteen days after the average historical payment time and all Subject Transfers were made within the common payment range.  NNI recognizes that litigation of the Avoidance Claim carries with it inherent uncertainties and there can be no assurance that litigation of the Avoidance Claim would achieve a better result than the one set forth in the Stipulation.  The settlement reflected in the Stipulation states that Defendant will pay NNI $96,000 with a waiver of the 502(h) claim.  This resolution fairly balances NNI's likelihood of success on the merits of the Avoidance Claim against its interest in avoiding the uncertainty of litigation.

20.     In addition, further litigation of the Avoidance Claim would result in the estate's expenditure of considerable additional legal fees.  These would include fees associated with formal discovery and litigation.  In the absence of a settlement, the estate would be burdened with the time and costs of ongoing litigation, which would be disruptive of the estate's efforts to resolve the matters that are essential to the ultimate resolution of these cases.

21.     Finally, the interests of the creditors weigh in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Avoidance Claim and the avoidance of litigation risk and substantial legal expenses that would be incurred if the Avoidance Claim were to be further litigated.

22.    In light of the foregoing, the Debtors respectfully seek authorization for NNI to enter into the Stipulation and approval of the Stipulation.

<strong><u>Notice</u></strong>

23.    Notice of the Motion has been given via first class mail to (i) the Defendant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

<strong><u>No Prior Request</u></strong>

24.    No prior request for the relief sought herein has been made to this or any other court.

[<em>Remainder of Page Intentionally Left Blank</em>]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  July 1, 2011
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Alissa T. Gazze*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa T. Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*