**EXHIBIT A**

Court File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION
APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AMENDED AND RESTATED MOTION RECORD
Canadian Approval and Vesting Order regarding
Certain Patents and other Assets
(returnable July 11, 2011)

July 5, 2011

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jennifer.stam@nortonrose.com

· Fax: (416) 216-3930

Lawyers for the Applicants

# INDEX

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

INDEX

| TAB | DOCUMENT | PAGE |
|-----|----------|------|
| 1. | Amended and Restated Notice of Motion returnable July 11, 2011 | 1 |
| 2. | Affidavit of George Riedel, sworn April 7, 2011 (Canadian Sales Process Order regarding Certain Patents and Other Assets) | 49 |
| 3. | Affidavit of George Riedel, sworn April 7, 2011 (Canadian Approval and Vesting Order regarding Certain Patents and Other Assets) | 68 |
| 4. | Supplemental Affidavit of George Riedel, sworn July 5, 2011 (Canadian Approval and Vesting Order regarding Certain Patents and Other Assets) | 79 |
| 5. | Sixty-Third Report of the Monitor, Ernst & Young Inc., dated April 14, 2011 | 94 |
| 6. | Draft Approval and Vesting Order (Certain Patents and Other Assets) | 138 |
| 7. | Blackline of draft Approval and Vesting Order to Model Approval and Vesting Order | 155 |

# TAB 1

Court File No.  09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

**IN THE MATTER OF THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

### AMENDED AND RESTATED NOTICE OF MOTION
**Canadian Approval and Vesting Order re Certain Patents and Other Assets
(returnable July 11, 2011)**

Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Applicants") will make a motion to Justice Morawetz of the Commercial List court on Thursday, July 11, 2011 at 10:00 a.m., or as soon after that time as the motion can be heard, at 393 University Avenue, Toronto, Ontario.

PROPOSED METHOD OF HEARING: The motion is to be heard:

☐    in writing under subrule 37.12.1(1) because it is on consent or unopposed or made without notice;

☐    in writing as an opposed motion under subrule 37.12.1(4);

☒    orally.

THE MOTION IS FOR AN ORDER:

    (a)    approving the transactions contemplated by an asset sale agreement dated as of June 30, 2011 (the "Sale Agreement") among:

(i) NNC, NNL, Nortel Networks Inc. ("NNI"), Nortel Networks UK Limited (in administration) ("NNUK"), Nortel Networks (Ireland) Limited (in administration), Nortel Networks S.A. (in administration and liquidation judiciaire) ("NNSA"), Nortel Networks France S.A.S. (in administration), Nortel GmbH (in administration), the other entities identified therein as sellers (collectively, the "Sellers"), Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson, David Hughes and Christopher John Wilkinson Hill as Joint Administrators, and Maître Cosme Rogeau as French Liquidator, and

(ii) Rockstar Bidco, LP ("Rockstar" or the " Purchaser"),

for the sale of the Assets to the Purchaser in accordance with the provisions of the Sale Agreement (including the licenses under the Jointly Owned Patents, the Specified UK Patents, the Undisclosed Patent Interests and any other Patents granted by one or more of the Applicants to the Purchaser pursuant to the Sale Agreement and, effective upon receipt by the Sellers or any successor or assign or any receiver, trustee or liquidator appointed in respect of a Seller (or its Property as defined in the order of this Court dated January 14, 2009 in these proceedings) of the applicable Exercise Price pursuant to Section 5.19 of the Sale Agreement, any Undisclosed Patent Interests sought to be transferred, granted and/or assigned by the Applicants to the Purchaser pursuant to the Sale Agreement, together with all the other Assets, collectively, the "Purchased Assets"); and

. (b)    vesting all of the Applicants' right, title and interest in and to the Purchased Assets absolutely in the Purchaser free and clear of and from all Claims and Encumbrances (in each case as defined in the Canadian Approval and Vesting Order) other than Permitted Encumbrances (other than those specifically contemplated to be discharged by virtue of the Canadian Approval and Vesting Order, if any), the Standards Obligations[1], Liens created by or through the

---

[1] "Standards Obligations" means, to the extent valid and enforceable under applicable non- bankruptcy law, any promises, declarations and commitments granted, made or committed in writing by the Sellers to standard-setting

- 3 -

3

Purchaser or its Affiliates, Assumed Liabilities, or as set forth in Section 2.1.1(a) or 5.21 of the Sale Agreement or as provided in the Nokia Agreement (as defined in the Supplemental Affidavit of George Riedel to be sworn July 5, 2011);

(c)    approving certain License Non-Assignment and Non-Renewal Protections (as defined in the Canadian Approval and Vesting Order);

(d)    approving the IP Side Agreement re Certain Structural Matters (as defined below); and

(e)    sealing certain confidential information.

THE GROUNDS FOR THE MOTION ARE:

**BACKGROUND**

(a)    On January 14, 2009 (the "Filing Date"), NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order (as subsequently amended and restated, the "Initial Order") of this Honourable Court and Ernst & Young Inc. was appointed as monitor in the CCAA proceedings (in such capacity, the "Monitor");

(b)    References to "Nortel" herein are references to the global enterprise of NNC, NNL, NNI and their respective affiliates as a whole;

(c)    All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Agreement;

(d)    All dollar references are US$ unless otherwise indicated;

---

bodies concerning the licensing of any of the Transferred Patents, Purchased Specified UK Patents or Undisclosed Patent Interests (including those commitments contained in the membership agreements, by-laws or policies of standard-setting bodies), whether or not listed in Section 1.1(g) of the Sellers Disclosure Schedule.

- 4 -

4

**THE ASSETS**

(e)     At this time, Nortel's residual patent assets are one of Nortel's largest remaining assets;

(f)     The Sale Agreement contemplates the sale of more than 6,000 Canadian, U.S. and foreign patents and patent applications;

(g)     The extensive patent portfolio touches nearly every aspect of telecommunications and additional markets as well, including internet search and social networking;

**SALE AGREEMENT**

(h)     Following the granting of an order by this Honourable Court (the "Canadian Sales Process Order") and the corresponding Order by the U.S. Court on May 2, 2011 approving the sale process for the Purchased Assets, Nortel and its advisors proceeded to implement the bidding process contemplated by those orders

(i)     A bid deadline was set for 4:00 pm (Eastern) on June 13, 2011 (the "Bid Deadline");

(j)     Nortel received four (4) initial bids for the Purchased Assets, which were deemed to be "Qualified Bids", along with the bid by the Stalking Horse Purchaser (as defined in the Canadian Sales Process Order), for the purposes of the auction of the Purchased Assets;

(k)     The auction commenced at or about 9:15am on June 27, 2011;

(l)     On June 30, 2011, in the 20th round of bidding, no further bids were received and the bid submitted jointly by Apple Inc. and the Rockstar consortium pursuant to the Sale Agreement at the end of the 19th round of bidding was declared the winning bid;

(m)     The Purchaser will pay to the Sellers a purchase price of $4.5 billion in cash (including a good faith deposit of $54 million, which has been paid to the Sellers);

(n)     The terms and conditions of the Sale Agreement are described in further detail in the Supplemental Affidavit of George Riedel, to be sworn July 5, 2011 and the Seventy-First Report of the Monitor (the "Seventy-First Report");

5

(o)     The Applicants have determined that the Sale Agreement represents the best offer available for the Purchased Assets;

**LICENSE NON-ASSIGNMENT AND NON-RENEWAL PROTECTIONS**

(p)     In view of the potential impact of continuing licenses on the value of the Sellers' patent assets, the Applicants also have agreed in furtherance of the sale of the Purchased Assets to the License Non-Assignment and Non-Renewal Protections which contain various limitations and prohibitions on their rights to renew, extend, assign, amend, waive or modify contracts containing licenses to the patents offered for sale;

(q)     These limitations and prohibitions, which are set forth in full in paragraph 14 of the Canadian Approval and Vesting Order, include:

> (i)     the deemed non-consent by the Applicants to requests to amend or modify these agreements in manners that would have the practical effect of expanding the scope or term of the licenses to the patents to be transferred to the Purchaser pursuant to the Sale Agreement;

> (ii)    the deemed non-consent by the Applicants to the assignment of certain of these agreements by the counterparties thereto to third parties;

> (iii)   restrictions on the Applicants' ability to assign such contracts; and

> (iv)    a power of attorney for the Purchaser to enforce these protections and terminate certain licenses upon the occurrence of events, dates or circumstances entitling the Applicants to terminate such licenses pursuant to the terms of such licenses.

(r)     The License Non-Assignment and Non-Renewal Protections limit the impact of the applicable license agreements on the Purchased Assets, which benefit the Applicants, their creditors, estates and all interested parties through their ability to realize a higher price for the Purchased Assets, and these protections are tailored to respect the

- 6 -

6

Applicants' current obligations under their existing contracts (while limiting their discretion to extend or modify those obligations after the Closing);

(s)     Such counterparties will retain any rights under their contracts that can be exercised without the Applicants' consent;

## LICENSE REJECTION PROCEDURES

(t)     As set out in the Supplemental Affidavit of George Riedel, to be sworn July 5, 2011, and the Seventy-First Report, the Applicants, or parties on behalf of the Applicants, have taken steps to serve the Known License Notice upon all Nortel affiliates, as well as counterparties to Cross-License Agreements and Outbound License Agreements, to the extent that those parties could be contacted, all in compliance with the May 2, 2011 Order;

(u)     As a result, the Applicants received Unknown License objection notices from 10 parties[2] and the U.S. Debtors received Unknown License objection notices from 11 parties;

(v)     To the extent that such objections contained agreements in accordance with the approved procedures, the Purchaser has agreed to take the Purchased Assets subject to those agreements (pursuant to amended Sellers Disclosures Schedules, an acknowledgement provided by the Sellers to the Purchaser, or otherwise);

## IP SIDE AGREEMENT RE CERTAIN STRUCTURAL MATTERS

(w)     In connection with the proposed transaction, the Sellers, the Joint Administrators and the French Liquidator have entered into a certain IP Side Agreement re Certain Structural Matters dated as of June 30, 2011 to address certain inter-estate matters;

---

[2] One additional party provided a Canadian Unknown License objection notice, which was received well after the bar date set by order of this Court on May 2, 2011

- 7 -

*7*

**SEALING**

(x)     The Monitor has or will be filing confidential appendices to the Seventy-First Report which contain the disclosure schedules and exhibits to the Sale Agreement;

(y)     The disclosure schedules and exhibits contain sensitive competitive, commercial and, in some instances, personal information, including lists of the Transferred Patents and licensees to such patents;

(z)     The confidential exhibits to the Service Affidavits will contain a list of the Known Licensees and information related to their service of the materials. This information is commercially sensitive and confidential;

(aa)    Disclosure of this confidential information would be damaging to the Applicants and the other Sellers and the Purchaser if it is disclosed to their competitors;

**MISCELLANEOUS**

(bb)    The Applicants may file further supplemental materials prior to the return of this Motion;

(cc)    The provisions of the CCAA; and

(dd)    Such further and other grounds as counsel may advise and this Honourable Court permit;

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the motion:

(a)     the Affidavits of George Riedel, sworn April 7, 2011;

(b)     the Supplemental Affidavit of George Riedel, to be sworn July 5, 2011;

(c)     the Service Affidavits;

(d)     the Sixty-Third Report;

- 8 -

ß

    (e)     the Seventy-First Report; and

    (f)     such further and other material as may be filed.

July 5, 2011
                                 **NORTON ROSE OR LLP**
                                 Suite 3800
                                 Royal Bank Plaza, South Tower
                                 200 Bay Street
                                 Toronto, Ontario  M5J 2Z4  CANADA

                                 **Derrick Tay LSUC#: 21152A**
                                 Tel:  (416) 216-4832
                                 Email: derrick.tay@nortonrose.com

                                 **Jennifer Stam LSUC #46735J**
                                 Tel: (416) 216-2327
                                 Email: jennifer.stam@nortonrose.com

                                 Fax: (416) 216-3930
                                 Lawyers for the Applicants

TO:      Attached Service List

*July 4, 2011*          9

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**SERVICE LIST**

TO:     **NORTON ROSE OR LLP**
        Royal Bank Plaza, South Tower
        200 Bay Street, Suite 3800
        Toronto, Ontario M5J 2Z4

        Derrick Tay
        Tony Reyes
        Jennifer Stam

        Email:    derrick.tay@nortonrose.com
                  tony.reyes@nortonrose.com
                  jennifer.stam@nortonrose.com

        Tel:      416.216.4000
        Fax:      416.216.3930

        Lawyers for the Applicants

- 2 -

10

TO:    **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, Ontario  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:   nortel.monitor@ca.ey.com

Tel:    416.943.3016
Fax:    416.943.3300

AND    **GOODMANS LLP**
TO:    Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario  M5H 2S7

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Fred Myers
Chris Armstrong

Email:   jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
grubenstein@goodmans.ca
fmyers@goodmans.ca
carmstrong@goodmans.ca

Tel:    416.597.4107
Fax:    416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND    **OSLER HOSKIN AND HARCOURT**
TO:    **LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, Ontario  M5X 1B8

Lyndon Barnes
Rupert Chartrand
Edward Sellers
Betsy Putnam

Email:   lbarnes@osler.com
rchartrand@osler.com
esellers@osler.com
eputnam@osler.com

Tel:    416.362.2111
Fax:    416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND    **FASKEN MARTINEAU DUMOULIN LLP**
TO:    66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, Ontario  M5K 1N6

Donald E. Milner
Aubrey Kauffman
Edmond Lamek
Jon Levin

Email:   dmilner@fasken.com
akauffman@fasken.com
elamek@fasken.com
jlevin@fasken.com

Tel:    416.868.3538
Fax:    416.364.7813

Lawyers for Export Development Canada

- 3 -

1 1

| | |
|---|---|
| AND TO: | **EXPORT DEVELOPMENT CANADA**<br>151 O'Connor Street<br>Ottawa, Ontario  K1A 1K3<br><br>Jennifer Sullivan<br><br>Email:  jsullivan@edc.ca<br><br>Tel:     613.597.8651<br>Fax:    613.598.3113 | **THORNTON GROUT FINNIGAN LLP**<br>3200-100 Wellington Street West<br>Toronto-Dominion Centre, Canadian Pacific Tower<br>Toronto, Ontario  M5K 1K7<br><br>Leanne M. Williams<br><br>Email:  lwilliams@tgf.ca<br><br>Tel:     416.304.1616<br>Fax:    416.304.1313<br><br>Lawyers for Flextronics Telecom Systems Ltd. |

**EXPORT DEVELOPMENT CANADA**
AND
TO:
151 O'Connor Street
Ottawa, Ontario  K1A 1K3

Jennifer Sullivan

Email:  jsullivan@edc.ca

Tel:     613.597.8651
Fax:    613.598.3113

AND
TO:
**THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific
Tower
Toronto, Ontario  M5K 1K7

Leanne M. Williams

Email:  lwilliams@tgf.ca

Tel:     416.304.1616
Fax:    416.304.1313

Lawyers for Flextronics Telecom Systems
Ltd.

AND
TO:
**McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS  B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email:  john.stringer@mcinnescooper.com
stephen.kingston@mcinnescooper.com

Tel:     902.425.6500
Fax:    902.425.6350

Lawyers for Convergys EMEA Limited

AND
TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Jeffrey Carhart

Email:  jcarhart@millerthomson.com

Tel:     416.595.8615/8577
Fax:    416.595.8695

Lawyers for Toronto-Dominion Bank

AND
TO:
**CAW-CANADA**
Legal Department
205 Placer Court
Toronto, Ontario M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:  barry.wadsworth@caw.ca
lewis.gottheil@caw.ca

Tel.:    416.495.3776
Fax:    416.495.3786

Lawyers for all active and retired Nortel
employees represented by the CAW-Canada

AND
TO:
**BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC  V7X 1S8

R. Hoops Harrison

Email:  hharrison@boughton.ca

Tel:     604.687.6789
Fax:    604.683.5317

Lawyers for Tonko Realty Advisors (BC)
Ltd., in its capacity as duly authorized agent
for Holdings 1506 Enterprises Ltd.

- 4 -

*12*

AND
TO:
**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, Ontario  M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:  mmacnaughton@blgcanada.com
Tel:     416. 367.6646
Fax:    416. 682.2837

Email:  rjaipargas@blgcanada.com
Tel:     416.367.6266
Fax:    416.361.7067

Email:  srappos@blgcanada.com
Tel:     416.367.6033
Fax:    416.361.7306

Lawyers for Bell Canada

AND
TO:
**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario  M5J 2T3

John Contini
Aaron Rousseau

Email   john.contini@mcmillan.ca
Tel:     416.307.4148
Fax:    416.304.3767

Email   aaron.rousseau@mcmillan.ca
Tel:     416.307.4081
Fax:    416.365.1719

Lawyers for ABN AMRO Bank N.V.

AND
TO:
**SISKINDS LLP**
680 Waterloo Street
London, Ontario  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Emilie E. M. Maxwell

Email:  ray.leach@siskinds.com
         dimitri.lascaris@siskinds.com
         emilie.maxwell@siskinds.com

Tel:     519.672.2121
Fax:    519.672.6065

Lawyers for Indiana Electrical Workers
Pension Trust Fund IBEW, Laborers Local
100 and 397 Pension Fund, and Bruce
William Lapare

AND
TO:
**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson
Richard Swan

Email:  zychk@bennettjones.com
Tel:     416.777.5738
Fax:    416.863.1716

Email:  orzyr@bennettjones.com
Tel:     416.777.5737
Fax:    416.863.1716

Email:  finlaysong@bennettjones.com
Tel:     416.777.5762
Fax:    416.863.1716

Email:  swanr@bennettjones.com
Tel:     416.777.7479
Fax:    416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

- 5 -

13

| | | | | |
|---|---|---|---|---|
| AND<br>TO: | **KOSKIE MINSKY**<br>20 Queen Street West<br>Suite 900<br>Toronto, Ontario  M5H 3R3 | | AND<br>TO: | **KOSKIE MINSKY**<br>20 Queen Street West<br>Suite 900<br>Toronto, Ontario  M5H 3R3 |
| | Mark Zigler<br>Susan Philpott<br>Demetrios Yiokaris<br>Andrea McKinnon<br>Celeste Poltak | | | Mark Zigler<br>Susan Philpott<br>Demetrios Yiokaris<br>Andrea McKinnon<br>Celeste Poltak |

AND
TO:

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, Ontario  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon
Celeste Poltak

Email:   mzigler@kmlaw.ca
Tel:      416.595.2090
Fax:     416.204.2877

Email:   sphilpott@kmlaw.ca
Tel:      416.595.2104
Fax:     416.204.2882

Email:   dyiokaris@kmlaw.ca
Tel:      416.595.2130
Fax:     416.204.2810

Email:   amckinnon@kmlaw.ca
Tel:      416.595.2150
Fax:     416.204.2874

Email:   cpoltak@kmlaw.ca
Tel:      416.595.2701
Fax:     416.204.2909

Lawyers for the Former Employees of Nortel

AND
TO:

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, Ontario  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon
Celeste Poltak

Email:   mzigler@kmlaw.ca
Tel:      416.595.2090
Fax:     416.204.2877

Email:   sphilpott@kmlaw.ca
Tel:      416.595.2104
Fax:     416.204.2882

Email:   dyiokaris@kmlaw.ca
Tel:      416.595.2130
Fax:     416.204.2810

Email:   amckinnon@kmlaw.ca
Tel:      416.595.2150
Fax:     416.204.2874

Email:   cpoltak@kmlaw.ca
Tel:      416.595.2701
Fax:     416.204.2909

Lawyers for the LTD Beneficiaries

- 6 -

*14*

AND
TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:   jcarhart@millerthomson.com
Tel:       416.595.8615
Fax:       416.595.8695

Email:   msims@millerthomson.com
Tel:       416.595.8577
Fax:       416.595.8695

Email:   jmklotz@millerthomson.com
Tel:       416.595.4373
Fax:       416.595.8695

Lawyers for LG Electronics Inc.

AND
TO:
**LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongdeungpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:   joseph.kim@lge.com

Tel:       +82.2.3777.3171
Fax:       +82.2.3777.5345

AND
TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:   jcarhart@millerthomson.com
Tel:       416.595.8615
Fax:       416.595.8695

Email   msims@millerthomson.com
Tel:       416.595.8577
Fax:       416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision
Communication Services, Inc.

AND
TO:
**CHAITONS LLP**
185 Sheppard Avenue West
Toronto, Ontario  M2N 1M9

Harvey G. Chaiton

Email:   harvey@chaitons.com

Tel:       416.218.1129
Fax:       416.218.1849

Lawyers for IBM Canada Limited

AND
TO:
**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, Ontario  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:   ken.rosenberg@paliareroland.com
Tel:      416.646.4304
Fax:     416.646.4301

Email:   max.starnino@paliareroland.com
Tel:      416.646.7431
Fax:     416.646.4301

Email:   lily.harmer@paliareroland.com
Tel:      416.646.4326
Fax:     416.646.4301

Email:   tina.lie@paliareroland.com
Tel:      416.646.4332
Fax:     416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

AND
TO:
**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder
Ryan Jacobs

Email:   Shayne.kukulowicz@fmc-law.com
         Alex.macfarlane@fmc-law.com
         Michael.wunder@fmc-law.com
         ryan.jacobs@fmc-law.com

Tel:      416.863.4511
Fax:     416.863.4592

Canadian Lawyers for the Official Committee
of Unsecured Creditors

AND
TO:
**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1G5

E. Patrick Shea

Email:   patrick.shea@gowlings.com

Tel:      416.369.7399
Fax:     416.862.7661

Lawyers for Westcon Group

AND
TO:
**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:   rslattery@mindengross.com
         dullmann@mindengross.com
Tel:      416.369.4149
Fax:     416.864.9223

Lawyers for Verizon Communications Inc.

- 8 -

16

AND **AIRD & BERLIS**
TO: Brookfield Place
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:  hfogul@airdberlis.com
Tel:    416.865.7773
Fax:    416.863.1515

Email:  pczegledy@airdberlis.com
Tel:    416.865.7749
Fax:    416.863.1515

Lawyers for Microsoft Corporation

AND **AIRD & BERLIS LLP**
TO: Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:  renglish@airdberlis.com
        smitra@airdberlis.com

Tel:    416.863.1500
Fax:    416.863.1515

Lawyers for Tata Consultancy Services
Limited and Tata America International
Corporation

AND **ALEXANDER HOLBURN BEAUDIN &**
TO: **LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:  surquhart@ahbl.ca
Tel:    604.484.1757
Fax:    604.484.1957

Lawyers for Algo Communication Products
Ltd.

AND **GARDINER ROBERTS LLP**
TO: Suite 3100, Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:    416.865.6655
Fax:    416.865.6636

Email:  vdare@foglers.com
Tel:    416.865.6641
Fax:    416.865.6636

Lawyers for Andrew, LLC

AND **AIRD & BERLIS LLP**
TO: Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:    416.865.7726
Fax:    416.863.1515

Email:  iaversa@airdberlis.com
Tel:    416.865.3082
Fax:    416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND **MILLER THOMSON LLP**
TO: Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Maurice Fleming

Email:  mfleming@millerthomson.com
Tel:    416.595.8686
Fax:    416.595.8695

Lawyers for Verint Americas Inc. and Verint
Systems, Inc.

| | | | | |
|---|---|---|---|---|
| AND TO: | **DAVIS LLP**<br>1 First Canadian Place<br>Suite 5600<br>100 King Street West<br>Toronto, Ontario  M5X 1E2 | | AND TO: | **McMILLAN LLP**<br>Brookfield Place, Suite 4400<br>181 Bay Street<br>Toronto, Ontario  M5J 2T3 |

AND TO: **DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, Ontario  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:      416.365.3529
Fax:      416.369.5210

Email:   jdavissydor@davis.ca
Tel:      416.941.5397
Fax:      416.365.7886

Lawyers for Brookfield LePage Johnson
Controls Facility Management Services


AND TO: **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Lawyers for Perot Systems Corporation


AND TO: **McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:   andrew.kent@mcmillan.ca
Tel:      416.865.7160
Fax:      416.865.7048

Email:   hilary.clarke@mcmillan.ca
Tel:      416.865.7286
Fax:      416.865.7048

Email:   tushara.weerasooriya@mcmillan.ca
Tel:      416.865.7262
Fax:      416.865.7048

Lawyers for Royal Bank of Canada


AND TO: **McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Brett Harrison
Adam C. Maerov

Email:   brett.harrison@mcmillan.ca
Tel :     416.865.7932
Fax :     416.865.7048

Email:   adam.maerov@mcmillan.ca
Tel:      416.865.7285
Fax:      416.865.7048

Lawyers for Citibank

- 10 -

AND
TO:

**CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario  M5H 3C2

Deborah S. Grieve

Email:  dgrieve@casselsbrock.com
Tel:    416.860.5219
Fax:    416.350.6923

Lawyers for Alvarion Ltd.

AND
TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:    416.865.6655
Fax:    416.865.6636

Email:  vdare@foglers.com
Tel:    416.865.6641
Fax:    416.865.6636

Lawyers for Amphenol Corporation

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Sanjeev P.R. Mitra

Email:  smitra@airdberlis.com

Tel:    416.863.1500
Fax:    416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

AND
TO:

**BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario  M5C 3G5

Domenico Magisano

Email:  dmagisano@blaney.com
Tel:    416.593.2996
Fax:    416.593.5437

Lawyers for Expertech Network Installation Inc.

AND
TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario  M5J 2T3

Aaron Rousseau

Email:  aaron.rousseau@mcmillan.ca
Tel:    416.307.4081
Fax:    416.365.1719

Lawyer for Right Management Inc.

AND
TO:

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
David S. Ward
Michael Casey

Email:  bleonard@casselsbrock.com
        dward@casselsbrock.com
        mcasey@casselsbrock.com

Tel:    416.860.6455
Fax:    416.640.3054

Lawyers for the UK Pension Protection Fund and Nortel Networks UK Pension Trust Limited

19

| | |
|---|---|
| **AND TO:** | **MCFARLANE LEPSOE**<br>Barristers & Solicitors<br>70 Gloucester Street, Third Floor<br>Ottawa, Ontario  K2P 0A2<br><br>Paul K. Lepsoe<br><br>Email:  pklepsoe@mcfarlanelaw.com<br><br>Tel:    613.233.2679<br>Fax:   613.233.3774<br><br>Lawyers for Iron Mountain Canada<br>Corporation and Iron Mountain Information<br>Management, Inc. | **AND TO:** | **IRVING MITCHELL KALICHMAN LLP**<br>Place Alexis Nihon, Tour 2<br>3500 Boulevard De Maisonneuve Ouest<br>Bureau 1400<br>Montreal, Quebec  H3Z 3C1<br><br>Kurt A. Johnson<br><br>Email : kjohnson@imk.ca<br>Tel:    514.935.5755<br>Fax :   514.935.2999<br><br>Lawyers for GFI INC., a division of Thomas &<br>Betts Manufacturing Inc. |

**AND TO:** **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:  theintzm@mccarthy.ca
Tel:    416.601.7627
Fax:   416.868.0673

Email:  jsirivar@mccarthy.ca
Tel:    416.601.7750
Fax:   416.868.0673

Lawyers for Frank Andrew Dunn

**AND TO:** **NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:  janice.payne@nelligan.ca
       steven.levitt@nelligan.ca
       christopher.rootham@nelligan.ca

Tel:    613.231.8245
Fax:   613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post
CCAA as at January 14, 2009

- 12 -                                                                     2U

| | |
|---|---|
| AND<br>TO: | **BAKER & McKENZIE LLP**<br>Brookfield Place, P.O. Box 874<br>181 Bay Street, Suite 2100<br>Toronto, Ontario  M5J 2T3 |

Chris Besant
Lydia Salvi

Email:  chris.besant@bakernet.com

Tel:     416.865.2318
Fax:    416.863.6275

Email:  lydia.salvi@bakernet.com

Tel:     416.865.6944
Fax:    416.863.6275

Lawyers for Jabil Circuit Inc.

AND
TO:  **SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec  H9S 2A5

Dan Goldstein
Marco Gaggino

Email:  dgoldstein@schneidergaggino.com
           mgaggino@schneidergaggino.com

Tel:     514.631.8787
Fax:    514.631.0220

Lawyers for the Teamsters Quebec Local
1999

AND
TO:  **EURODATA**
2574 Sheffield Road
Ottawa, Ontario  K1B 3V7

Nanci Shore

Email:  nanci@eurodata.ca
Tel:     613.745.0921
Fax:    613.745.1172

AND
TO:  **BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email:  ryanbellr@bennettjones.com
           laugesenm@bennettjones.com

Tel:     416.863.1200
Fax:    416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and
Tel-e Connect Systems (Toronto) Ltd.

AND
TO:  **MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Timothy R. Dunn

Email:  tdunn@mindengross.com
Tel:     416.369.4335
Fax:    416.864.9223

Lawyers for 2748355 Canada Inc.

AND
TO:  **BALDWIN LAW PROFESSIONAL
CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email:  ibrady@baldwinlaw.ca
Tel:     613.771.9991
Fax:    613.771.9998

Lawyers for Sydney Street Properties Corp.

- 13 -

2 i

| | |
|---|---|
| AND TO: | **AETL TESTING, INC.**<br>130 Chaparral Court, Suite 250<br>Anaheim, California 92808<br><br>Raffy Lorentzian<br><br>Email:  raffy.lorentzian@ntscorp.com<br>Tel:      714.998.4351<br>Fax:     714.998.7142<br><br>Lawyers for AETL Testing, Inc. | AND TO: | **AIRD & BERLIS LLP**<br>Barristers & Solicitors<br>Brookfield Place, P.O. Box 754<br>181 Bay Street, Suite 1800<br>Toronto, ON  M5J 2T9<br><br>Steven L. Graff<br>Ian E. Aversa<br><br>Email:  sgraff@airdberlis.com<br>Tel:      416.865.7726<br>Fax:     416.863.1515<br><br>Email:  iaversa@airdberlis.com<br>Tel:      416.865.3082<br>Fax:     416.863.1515<br><br>Lawyers for Huawei Technologies Co. Ltd. |

AND
TO:     **AETL TESTING, INC.**
        130 Chaparral Court, Suite 250
        Anaheim, California 92808

        Raffy Lorentzian

        Email:  raffy.lorentzian@ntscorp.com
        Tel:      714.998.4351
        Fax:     714.998.7142

        Lawyers for AETL Testing, Inc.

AND
TO:     **AIRD & BERLIS LLP**
        Barristers & Solicitors
        Brookfield Place, P.O. Box 754
        181 Bay Street, Suite 1800
        Toronto, ON  M5J 2T9

        Steven L. Graff
        Ian E. Aversa

        Email:  sgraff@airdberlis.com
        Tel:      416.865.7726
        Fax:     416.863.1515

        Email:  iaversa@airdberlis.com
        Tel:      416.865.3082
        Fax:     416.863.1515

        Lawyers for Huawei Technologies Co. Ltd.

AND
TO:     **SHIBLEY RIGHTON LLP**
        Barristers and Solicitors
        250 University Avenue, Suite 700
        Toronto, Ontario M5H 3E5

        Arthur O. Jacques
        Thomas McRae

        Email:  arthur.jacques@shibleyrighton.com
        Tel:      416.214.5213
        Fax:     416.214.5413

        Email : thomas.mcrae@shibleyrighton.com
        Tel :     416.214.5206
        Fax :     416.214.5400

        Lawyers for The Recently Severed
        Canadian Nortel Employees Committee

AND
TO:     **SHIBLEY RIGHTON LLP**
        Barristers and Solicitors
        250 University Avenue, Suite 700
        Toronto, Ontario M5H 3E5

        Arthur O. Jacques
        Thomas McRae

        Email:  arthur.jacques@shibleyrighton.com
        Tel:      416.214.5213
        Fax:     416.214.5413

        Email : thomas.mcrae@shibleyrighton.com
        Tel :     416.214.5206
        Fax :     416.214.5400

        Co-Counsel for the Steering Committee of
        Nortel Canadian Continuing Employees –
        Post CCAA as at January 14, 2009

AND
TO:     **NATIONAL TECHNICAL SYSTEMS**
        130 Chaparral Ct., Suite 250
        Anaheim, California, U.S.A.
        92808

        Raffy Lorentzian

        Email:  raffy.lorentzian@ntscorp.com
        Tel:      714.998.4351

AND
TO:     **GOWLING LAFLEUR HENDERSON LLP**
        Suite 1600, First Canadian Place
        100 King Street West
        Toronto, ON  M5X 1G5

        David F.W. Cohen

        Email:  david.cohen@gowlings.com

        Tel:      416.369.6667
        Fax:     416.862.7661

        Lawyers for General Electric Canada
        Equipment Finance G.P. and GE Capital
        Canada Leasing Services Inc.

- 14 -

22

AND
TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:      416.365.3529
Fax:     416.369.5210

Email:   jdavissydor@davis.ca
Tel:      416.941.5397
Fax:     416.365.7886

Lawyers for Computershare Trust Company
of Canada

AND
TO:

**LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:  tosullivan@counsel-toronto.com
Tel:      416.598.1744
Fax:     416.598.3730

Email:   slaubman@counsel-toronto.com
Tel:      416.598.1744
Fax:     416.598.3730

Lawyers for William A. Owens

AND
TO:

**DAVIES WARD PHILLIPS & VINEBERG
LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:   rschwill@dwpv.com
Tel:      416.863.0900
Fax:     416.863.0871

Email:   mgottlieb@dwpv.com
Tel:      416.863.0900
Fax:     416.863.0871

Lawyers for Nortel Networks UK Limited (In
Administration)

AND
TO:

**SIMMONS, DA SILVA & SINTON LLP**
Suite 200, 201 County Court Blvd.
Brampton, Ontario
L6W 4L2

Howard Simmons
Email:  howard@sdslawfirm.com

Puneet S. Kohli
Email:  puneet@sdslawfirm.com

Tel:      905.861.2819

Lawyers for Wipro Limited

- 15 -

23

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Lawyers for the Current and Former
Employees of Nortel Networks Inc. who are
or were Participants in the Long-Term
Investment Plan Sponsored by Nortel
Networks Inc.

AND
TO:
**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario, M5J 2T3

Sheryl E. Seigel

Email:   sheryl.seigel@mcmillan.ca
Tel:      416.307.4063
Fax:      416.365.1719

Lawyers for The Bank of New York Mellon

AND
TO:
**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Susan M. Grundy
Marc Flynn

Email:   susan.grundy@blakes.com
Tel:      416.863.2572
Fax:      416.863.2653

Email:   marc.flynn@blakes.com
Tel:      416.863.2685
Fax:      416.863.2653

Lawyers for Telefonaktiebolaget L M
Ericsson (publ)

AND
TO:
**McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario  M5K 1E6

Heather Meredith

Email:   hmeredith@mccarthy.ca
Tel:      416.601.8342
Fax:      416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND
TO:
**DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:  dwinters@justice.gc.ca
Tel:      416.973.3172
Fax:      416.973.0810

AND
TO:
**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:   kmcelcheran@mccarthy.ca
Tel:      416.601.7730
Fax:      416.868.0673

Email:   rstabile@mccarthy.ca
Tel:      416.601.8335
Fax:      416.868.0673

Lawyers for Avaya Inc.

- 16 -

24

| | |
|---|---|
| AND TO: | **BLAKE, CASSELS & GRAYDON LLP**<br>199 Bay Street, Suite 2800<br>Commerce Court West<br>Toronto, Ontario  M5L 1A9 |

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:    416.863.2958
Fax:    416.863.2653

Email:  milly.chow@blakes.com
Tel:    416.863.2594
Fax:    416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:    416.863.2426
Fax:    416.863.2653

Email:  craig.thorburn@blakes.com
Tel:    416.863.2965
Fax:    416.863.2653

Lawyers for MatlinPatterson Global
Advisers LLC, MatlinPatterson Global
Opportunities Partners III L.P. and
MatlinPatterson Opportunities Partners
(Cayman) III L.P.

AND TO:  **SACK GOLDBLATT MITCHELL LLP**
20 Dundas Street West
Suite 1100
Toronto, Ontario  M5G 2G8

James McDonald
Darrell Brown

Email:  jmcdonald@sgmlaw.com
Tel:    416.979.6425
Fax:    416.591.7333

Email:  dbrown@sgmlaw.com
Tel:    416.979.4050
Fax:    416.591.7333

Lawyers for Edmund Fitzgerald

AND TO:  **FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:  jspiegelman@foglers.com
Tel:    416.864.9700
Fax:    416.941.8852

Lawyers for Belden (Canada) Inc.

AND TO:  **VINCENT DAGENAIS GIBSON LLP/s.r.l**
Barristers and Solicitors
600-325 Dalhousie Street
Ottawa, ON  K1N 7G2

Thomas Wallis

E-mail:  thomas.wallis@vdg.ca
Tel:    613.241.2701
Fax:    613.241.2599

Lawyers for La Regie des Rentes du Quebec

AND **STIKEMAN ELLIOTT LLP**
TO:    5300 Commerce Court West
       199 Bay Street
       Toronto, ON  M5L 1B9

       Sean F. Dunphy

       Email:  sdunphy@stikeman.com
       Tel:    416.869.5662
       Fax:    416.947.0866

       Lawyers for GENBAND Inc.


AND **BORDEN LADNER GERVAIS LLP**
TO:    Barristers and Solicitors
       Scotia Plaza, Suite 4400
       40 King Street West
       Toronto, ON  M4H 3Y4

       John D. Marshall
       Craig J. Hill

       Email:  jmarshall@blgcanada.com
       Tel:    416.367.6024
       Fax:    416.361.2763

       Email:  chill@blgcanada.com
       Tel:    416.367.6156
       Fax:    416.631.7301

       Lawyers for the U.K. Pensions Regulator


AND **ROCHON GENOVA LLP**
TO:    121 Richmond Street West
       Suite 900
       Toronto, ON  M5H 2K1

       Joel P. Rochon

       Email:  jrochon@rochongenova.com
       Tel:    416.363.1867
       Fax:    416.363.0263

       Lawyers for the Opposing LTD Employees


AND **STIKEMAN ELLIOTT LLP**
TO:    445 Park Avenue, 7th Floor
       New York, NY  10022

       Gordon Cameron
       Ron Ferguson

       Email:  gncameron@stikeman.com
       Tel:    212.845.7464
       Fax:    212.371.7087

       Email:  rferguson@stikeman.com
       Tel:    212.845.7477
       Fax:    212.371.7087

       Lawyers for GENBAND Inc.


AND **BLAKE, CASSELS & GRAYDON**
TO:    Box 25, Commerce Court West
       199 Bay Street, Suite 2800
       Toronto, Ontario  M5L 1A9

       Pamela J. Huff
       J. Jeremy Forgie

       Email:  pamela.huff@blakes.com
       Tel:    416.863.2958
       Fax:    416.863.2653

       Email:  jeremy.forgie@blakes.com
       Tel:    416.863.3888
       Fax:    416.863.2653

       Lawyers for The Northern Trust Company,
       Canada


AND **LERNERS LLP**
TO:    130 Adelaide St. West
       Suite 2400
       Toronto, ON  M5H 3P5

       William E. Pepall

       Email:  wpepall@lerners.ca
       Tel:    416.601.2352
       Fax:    416.867.2415

       Lawyers for the Former Employees in Respect
       of the Distribution of the Corpus of the Health
       and Welfare Trust

- 18 -

26

| | |
|---|---|
| AND TO: | **MACLEOD DIXON LLP**<br>3700 Canterra Tower<br>400 Third Avenue SW<br>Calgary, Alberta<br>T2P 4H2<br><br>Kyle D. Kashuba<br><br>Email:  kyle.kashuba@macleoddixon.com<br>Tel:      403.267.8399<br>Fax:     403.264.5973<br><br>Constellation NewEnergy Canada Inc. | AND TO: | **SACK GOLDBLATT MITCHELL**<br>500 – 30 rue Metcalfe St.<br>Ottawa, ON  K1P 5L4<br><br>Peter Engelmann<br>Fiona Campbell<br><br>Email:  pengelmann@sgmlaw.com<br>Tel:      613-482-2452<br>Fax:     613-235-3041<br><br>Email:  fcampbell@sgmlaw.com<br>Tel:      613-482-2451<br>Fax:     613-235-3041<br><br>Lawyers for the LTD Beneficiaries in Respect of the Distribution of the Corpus of the Health and Welfare Trust |
| AND TO: | **CLEARY GOTTLIEB STEEN & HAMILTON LLP**<br>One Liberty Plaza<br>New York, NY 10006<br><br>James Bromley<br>Lisa Schweitzer<br>Martin N. Kostov<br><br>Email:  jbromley@cgsh.com<br>            lschweitzer@cgsh.com<br>            mkostov@cgsh.com<br>Tel:      212.225.2000<br>Fax:     212.225.3999<br><br>Lawyers for Nortel Networks Inc. | AND TO: | **McCARTHY TETRAULT LLP**<br>Suite 5300, Toronto Dominion Bank Tower<br>Toronto, Ontario  M5K 1E6<br><br>Barbara J. Boake<br>James D. Gage<br>Elder C. Marques<br><br>E-mail:  bboake@mccarthy.ca<br>Tel:      416.601.7557<br>Fax:     416.868.0673<br><br>Email:  jgage@mccarthy.ca<br>Tel:      416.601.7539<br>Fax:     416.686.0673<br><br>Email:  emarques@mccarthy.ca<br>Tel:      416.601.7822<br>Fax:     416.686.0673<br><br>Lawyers for Morneau Shepell Limited |

- 19 -                                            *27*

| | |
|---|---|
| AND TO: | **McMILLAN LLP** |

AND TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, ON  M5J 2T3

D. Brent McPherson

Email:  brent.mcpherson@mcmillan.ca
Tel:      416.307.4103
Fax:     416.304.3769

Lawyers for Wells Fargo Bank, National
Association, as successor by merger to
Wachovia Bank, N.A., in its capacity as
Servicer for the Nortel Networks Pass-
Through Trust, Series 1-1

AND TO:

**FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:  jspiegelman@foglers.com

Tel:      416.864.9700
Fax:     416.941.8852

Lawyers for Apex Logistics Inc.

AND TO:

**TORYS LLP**
79 Wellington St. W., Suite 3000
Toronto-Dominion Centre
Toronto, Ontario  M5K 1N2

Michael Rotsztain
Adam M. Slavens

Email:  mrotsztain@torys.com
Tel:      416.865.7508
Fax:     416.865.7380

Email:  aslavens@torys.com
Tel:      416.865.7333
Fax:     416.865.7380

Lawyers for Ranger, Inc.

AND TO:

**DAVID STEER**
10 Cypress Court
Nepean, ON  K2H 8Z8

E-mail:  davidsteer127@sympatico.ca

AND TO:

**TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Tony DeMarinis
Scott Bomhof
Sheila Block
Andrew Gray

Email:  tdemarinis@torys.com
           sbomhof@torys.com
           sblock@torys.com
           agray@torys.com
Tel:      416.865.0040
Fax:     416.865.8730

Lawyers for Nortel Networks Inc.

AND TO:

**TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario  K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email:  hvw@tmlegal.ca
           rbm@tmlegal.ca

Tel:      613.542.1889
Fax:     613.542.8202

Lawyers for The Corporation of the City of
Belleville

- 20 -

| | | | |
|---|---|---|---|
| AND TO: | **MACLEOD DIXON LLP**<br>3700 Canterra Tower<br>400, 3rd Avenue N.W.<br>Calgary, Alberta  T2P 4H2 | AND TO: | **McMILLAN LLP**<br>Brookfield Place<br>181 Bay Street, Suite 4400<br>Toronto, Ontario M5J 2T3 |

AND TO: **MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson

Email :
andrew.robertson@macleoddixon.com

Tel :    403.267.8222
Fax :   403.264.5973

Lawyers for Recently Severed Calgary
Employees

AND TO: **ATTORNEY GENERAL FOR ONTARIO**
Crown Law Office – Civil
720 Bay Street, 8th Floor
Toronto, Ontario  M7A 2S9

Leonard Marsello
William MacLarkey

Email:  leonard.marsello@ontario.ca
Tel:     416.326.4939
Fax:    416.326.4181

Email:  William.MacLarkey@ontario.ca
Tel:     416.326.4082
Fax:    416.326.4181

Lawyers for Her Majesty the Queen in right
of Ontario, as represented by the Ministry of
the Environment

AND TO: **TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario  K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email:  hvw@tmlegal.ca
          rbm@tmlegal.ca

Tel:     613.542.1889
Fax:    613.542.8202

Lawyers for Algonquin and Lakeshore
Catholic District School Board

AND TO: **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Brett Harrison

Email:  brett.harrison@mcmillan.ca
Tel :    416.865.7932
Fax :   416.865.7048

Lawyers for Rogers Communications Inc.

AND TO: **BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Steven J. Weisz
Jackie Moher

Email:  steven.weisz@blakes.com
Tel:     416.863.2616
Fax:    416.863.2653

Email:  jackie.moher@blakes.com
Tel:     416.863.3174
Fax:    416.863.2653

Lawyers for the American Registry for Internet
Numbers

AND TO: **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Andrew J. F. Kent
Wael Rostom

Email:  andrew.kent@mcmillan.ca
Tel :    416.865.7160
Fax :   416.865.7048

Email:  wael.rostom@mcmillan.ca
Tel :    416.865.7790
Fax :   416.865.7048

Lawyers for the Norpax LLC and RPX
Corporation, in its capacity as Managing
Member of Norpax LLC

28

- 21 -

29

| | | | | |
|---|---|---|---|---|
| AND TO: | **MILLER THOMSON LLP**<br>Scotia Plaza<br>40 King Street West, Suite 5800<br>P.O. Box 1011<br>Toronto, Ontario  M6H 3S1 | | AND TO: | **STIKEMAN ELLIOTT LLP**<br>Barristers & Solicitors<br>5300 Commerce Court West<br>199 Bay Street<br>Toronto, Ontario  M5L 1B9 |

MILLER THOMSON side:

Craig A. Mills

Email:   cmills@millerthomson.com
Tel :    416.595.8596
Fax :    416.595.8695

Lawyers for 2058756 Ontario Limited

STIKEMAN ELLIOTT side:

Elizabeth Pillon
Dan Murdoch

Email:   lpillon@stikeman.com
Tel:     416.869.5623
Fax:     416.947.0866

Email:   dmurdoch@stikeman.com
Tel:     416.869.5529
Fax:     416.947.0866

Lawyers for Apple Inc.

- 22 -

**COURTESY COPIES:**                                                    30

AND   **LEWIS AND ROCA**                  AND   **AKIN GUMP STRAUSS HAUER &**
TO:   40 North Central Avenue            TO:   **FELD LLP**
      Phoenix, Arizona                         One Bryant Park
      USA 85004-4429                           New York, NY  10036

      Scott K. Brown                           Fred S. Hodara

      Email:  sbrown@lrlaw.com                 Email:  fhodara@akingump.com

      Tel:    602.262.5321                     Tel:    212.872.1000
      Fax:    602.734.3866                     Fax:    212.872.1002

      Lawyers for The Prudential Insurance     U.S. Lawyers for the Official Committee
      Company of America                       of Unsecured Creditors

AND   **CURTIS, MALLET-PREVOST, COLT &**   AND   **MILBANK, TWEED, HADLEY**
TO:   **MOSLE LLP**                         TO:   **McCLOY LLP**
      101 Park Avenue                             1 Chase Manhattan Plaza
      New York, New York 10178-0061              New York, NY  10005

      Steven J. Reisman                          Thomas R. Kreller
      James V. Drew                              Jennifer P. Harris
                                                 Albert A. Pisa
      E-mail: sreisman@curtis.com
              jdrew@curtis.com                   Email:  TKreller@milbank.com
                                                 Tel:    213.892.4463
      Tel:    212.696.6000                       Fax:    213.629.5063
      Fax:    212-697-1559
                                                 Email:  JHarris@milbank.com
      Lawyers for Flextronics International       Tel:    212.530.5475
                                                 Fax:    212.530.5219

                                                 Email:  APisa@milbank.com
                                                 Tel:    212.530.5319
                                                 Fax:    212.530.5219

                                                 U.S. Lawyers for The Informal Nortel
                                                 Noteholder Group

- 23 -

31

AND
TO:
**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York 10019

Michael L. Schein

Email: mschein@vedderprice.com

Tel:    212.407.6920
Fax:    212.407.7799

U.S. Lawyers for Telmar Network
Technology, Inc. and Precision
Communication Services, Inc.

AND
TO:
**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :
andrew.robertson@macleoddixon.com
caylee.rieger@macleoddixon.com

Tel :    403.267.8222
Fax :    403.264.5973

Agent for Nelligan O'Brien Payne LLP,
lawyers for the Steering Committee of
Recently Severed Canadian Nortel
Employees and lawyers for the Steering
Committee of Nortel Canadian Continuing
Employees – Post CCAA as at January 14,
2009

AND
TO:
**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois 60601

Eric S. Prezant

Email:  eric.prezant@bryancave.com
Tel:    312.602.5033
Fax:    312.602.5050

U.S. Lawyers for Tellabs, Inc.

AND
TO:
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4834

Michael J. Riela

Email: michael.riela@lw.com

Tel :    212.906.1373
Fax :    212.751.4864

U.S. Lawyers for The Bank of New York
Mellon

32

Court File No.  09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION,
NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**SUPPLEMENTAL SERVICE LIST**

TO:      **NORTON ROSE OR LLP**
         Royal Bank Plaza, South Tower
         200 Bay Street, Suite 3800
         Toronto, Ontario M5J 2Z4

         Derrick Tay
         Tony Reyes
         Jennifer Stam

         Email:    derrick.tay@nortonrose.com
                   tony.reyes@nortonrose.com
                   jennifer.stam@nortonrose.com

         Tel:      416.216.4000
         Fax:      416.216.3930

         Lawyers for the Applicants

33

**BY E-MAIL:**

AND
TO:

**STIKEMAN ELLIOTT LLP**
5300 Commerce Court West
199 Bay Street
Toronto, ON  M5L 1B9

Ashley John Taylor

Email:  ataylor@stikeman.com
Tel:    416.869.5236
Fax:    416.947.0866

Lawyers for Ciena Corporation

AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600
1 First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1G5

Scott Kugler

Email:  scott.kugler@gowlings.com
Tel:    416.369.7107
Fax:    416.862.7661

Lawyers for BreconRidge Ltd.

AND
TO:

**DELL CANADA INC.**
Dell Canada Inc.
155 Gordon Baker Rd., Suite 501
North York, Ontario M2H 3N5

Stephanie Cantalini

Email:  Stephanie_cantalini@dell.com
Tel:    416.410.8966
Fax:    866.884.5022

AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600
1 First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1G5

Scott Kugler

Email:  scott.kugler@gowlings.com
Tel:    416.369.7107
Fax:    416.862.7661

Laweyrs for Sanmina SCI Corporation

AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600
1 First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1G5

Scott Kugler

Email:  scott.kugler@gowlings.com
Tel:    416.369.7107
Fax:    416.862.7661

Lawyers for SCI Brockville Corp.

**BY COURIER:**

34

AND
TO:     **RADWARE LTD.**
        22 Raoul Wallenberg Street
        Tel Aviv 69710
        Israel

        Roy Zisapel

        Tel:    +972-3-7668610
        Fax:    +972-3-7668982

        with a copy to:

        **Kramer Levin Naftalis & Frankel LLP**
        1177 Avenue of the Americas
        New York, New York 10036

        Ernest S. Wechsler

        Tel:    212.715.9100
        Fax:    212.715.8000

AND
TO:     **KAPSCH CARRIERCOM AG**
        Am Europlatz 5, A1120
        Vienna, Austria

        Attention: Petra Pracher-Ratnik


AND
TO:     **OEP RHEA TURKEY TECH B.V.**
        21 South Clark Street, 14th Floor
        Chicago, IL
        60670 U.S.A.

        Attention: Joseph Huffsmith / Andrew Dunn

AND
TO:     **THARINI SHANMUGANATHAR**
        218 Edenbrook Hill Drive
        Brampton, ON  L7A 2W7

AND
TO:     **YUAN ZHUO XIE**
        54 Snowball Crescent
        Toronto, ON  M1B 1R9

AND
TO:     **7522312 CANADA INC.**
        800-515 Legget Drive
        Kanata, ON  K2K 3G4

        Carleton Miller, Chief Executive Officer

        Tel:    214.862.7154

        with a copy to:

        **LaBarge Weinstein Professional Corporation**
        515 Legget Drive, Suite 800
        Kanata, ON  K2K 3G4

        Michael Dunleavy

        Tel:    613.599.9600 ext. 268
        Fax:    613.599.0018


AND
TO:     **ERICSSON (CHINA) COMMUNICATIONS
        COMPANY LTD.**

        No. 5 Lize East Street
        Chaoyang District
        Beijing 1001102 PRC

        Attention: Tom Nygren

AND
TO:     **WIRELESS TECHNOLOGY LABORATORIES
        LIMITED**
        Witan Gate House
        400-600 Witan Gate West
        Milton Keynes
        Buckinghamshire  MK9 1SH

AND
TO:     **ROY WILLIAM VOKEY**
        702-1001 Main Street West
        Hamilton, ON  L8S 1A9

AND
TO:     **TERRY LASCHUK**
        3033 Dangerfield Road
        Kemptville, ON  K0G 1J0

**COURTESY COPIES:**                                                          35

AND      **RICHARD B. JONES**
TO:      Business Counsel at Law
         100 Yonge Street, Suite 1201
         Toronto, Ontario  M5C 2W1

         Richard B. Jones

         Email:  Richard.jones@sympatico.ca

         Tel:     416.863.0576
         Fax:    416.863.0092

         Canadian Counsel for Telstra Corporation
         Limited

May 5, 2011

Court File No.  09-CL-7950          36

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION,
NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

SUPPLEMENTARY SERVICE LIST OF PPSA REGISTRANTS

TO:        **NORTON ROSE OR LLP**
           Royal Bank Plaza, South Tower
           200 Bay Street, Suite 3800
           Toronto, Ontario M5J 2Z4

           Derrick Tay
           Tony Reyes
           Jennifer Stam

           Email:      derrick.tay@nortonrose.com
                       tony.reyes@nortonrose.com
                       jennifer.stam@nortonrose.com

           Tel:        416.216.4000
           Fax:        416.216.3930

           Lawyers for the Applicants

*37*

**BY EMAIL:**

AND TO: **ARI FINANCIAL SERVICES INC.**
600-1270 Central Parkway West
Mississauga, ON L5C 4P4

    Tel:   905-803-8000
    Fax:   905-803-8644

    Email:  ldearborn@arifleet.ca

AND TO: **EXPORT DEVELOPMENT CANADA**
151 O'Connor Street
Ottawa, ON K1A 1K3

    Jennifer Sullivan

    Email:  jsullivan@edc.ca

    Tel:   613.597.8651
    Fax:  613.598.3113

AND TO: **GENERAL ELECTRIC CAPITAL EQUIPMENT FINANCE INC.**
5420 North Service Road
Burlington, ON L7L 6C7

    Christopher Rankin

    Tel:   514.394.2919
    Fax:  514.397.5300

    Email : christopher.rankin@ge.com

AND TO: **GE CAPITAL CANADA LEASING SERVICES INC.**
5420 North Service Road
4th Floor
Burlington, ON L7L 6C7

    Christopher Rankin

    Tel:   514.394.2919
    Fax:  514.397.5300

    Email : christopher.rankin@ge.com

AND TO: **GE CAPITAL CANADA LEASING SERVICES INC.**
1 Place Ville Marie
Suite 1401
Montreal, QC H3B 2B2

    Christopher Rankin

    Tel:   514.394.2919
    Fax:  514.397.5300

    Email : christopher.rankin@ge.com

AND TO: **GENERAL ELECTRIC CANADA EQUIPMENT FINANCE G.P.**
500 North Service Road
8th Floor
Burlington, ON L7L 6W6

    Christopher Rankin

    Tel:   514.394.2919
    Fax:  514.397.5300

    Email : christopher.rankin@ge.com

30

| | | | | |
|---|---|---|---|---|
| AND TO: | **NEXCAP FINANCE CORPORATION** | | AND TO: | **STEELCASE FINANCIAL SERVICES LTD.** |

AND
TO:   **NEXCAP FINANCE
      CORPORATION**
      3027 Harvester Road
      Suite 212
      Burlington, ON L7N 3G7


      Scott Lowes


      Tel:   905.637.4467 ext. 117
      Fax:   905-637-1882


      Email:  slowes@nexcap.com

AND
TO:   **STEELCASE FINANCIAL SERVICES
      LTD.**
      1 Steelcase Rd. W.
      Markham, ON L3R 0T3


      Janeen Treur


      Tel:   616.246.4389


      Email:  jtreur@steelcase.com

AND
TO:   **THE ROYAL BANK OF
      SCOTLAND N.V., (CANADA)
      BRANCH**

      79 Wellington Street West
      Suite 1610
      Toronto,  ON M5K 1G8


      Email:
              loan.admin.canada@rbs.co
      m

AND
TO:   **ABN AMRO BANK N.V.**
      Canada Branch
      79 Wellington Street West
      Suite 1500
      Toronto, ON M5K 1G8


      Email:  loan.admin.canada@rbs.com
      Tel:    416-367-0850
      Fax:    416-367-1485

BY FAX:

39

| | | | |
|---|---|---|---|
| AND TO: | **ABN AMRO BANK N.V.**<br>600 De Maissonneuve Blvd. W.<br>Suite 1500<br>Montreal, QC H3A 3J2 | AND TO: | **DELL FINANCIAL SERVICES CANADA LIMITED**<br>155 Gordon Baker Road<br>Suite 501<br>North York, ON M2H 3N5 |

Tel:    514.284.1133
Fax:    514.284.2357

Tel:    1.877.814.4142
Fax:    1.888.438..1117

| | | | |
|---|---|---|---|
| AND TO: | **GENERAL ELECTRIC CAPITAL CANADA INC.**<br>2300 Meadowvale Boulevard<br>Suite 200<br>Mississauga, ON L5N 5P9 | AND TO: | **ST MICROELECTRONICS (CANADA), INC.**<br>1310 Electronics Drive<br>Carrollton, Texas 75006 |

Bethany St. Pierre

Tel:    613.768.9011
Fax:    613.768.9001

Tel:    1.866.329.4323
Fax:    1.866.993.1902

| | | | |
|---|---|---|---|
| AND TO: | **PRODAIR CANADA LTEE**<br>291 Rue Quinlan<br>Ville Lasalle, QC H8R 3W4 | AND TO: | **HEWLETT-PACKARD FINANCIAL SERVICES CANADA COMPANY**<br>5150 Spectrum Way<br>Mississauga, ON L4W 5G1 |

Alain Cote

Attn:    Anna Gagliardi

Tel:    1.800.363.3572 ext. 1
Fax:    418.878.3235

Tel:    905.206.4725
Fax:    905.614.5391

40

**BY COURIER:**

AND  **CIT FINANCIAL LTD. (formerly**            AND  **HOLMAN CANADA LIMITED**
TO:   **known as CIT Technologles Inc.)**          TO:   **PARTNERSHIP**

207 Queens Quay West                              9000 Midlantice Drive
Suite 700                                          Mt. Laurel, New Jersey
Toronto, Ontario  M5J 1A7                          USA  08054


      **THE ROYAL BANK OF SCOTLAND**
AND  **N.V., (CANADA) BRANCH**
TO:

      600 De Maissonneuve Blvd. W.
      Suite 2810
      Montreal, QC H3A 3J2

$4\,j$

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
**R.S.C. 1985, c. c-36, AS AMENDED**

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION,
NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
**R.S.C. 1985, c. C-36, AS AMENDED**

**SUPPLEMENTARY SERVICE LIST OF**
**PROVINCIAL TAX AUTHORITIES**

TO:      **NORTON ROSE OR LLP**
         Royal Bank Plaza, South Tower
         200 Bay Street, Suite 3800
         Toronto, Ontario M5J 2Z4

         Derrick Tay
         Tony Reyes
         Jennifer Stam

         Email:    derrick.tay@nortonrose.com
                   tony.reyes@nortonrose.com
                   jennifer.stam@nortonrose.com

         Tel:      416.216.4000
         Fax:      416.216.3930

         Lawyers for the Applicants

42

**BY EMAIL:**

**ALBERTA**

AND
TO:
    **ALBERTA MINISTRY OF FINANCE**
The Tax and Revenue Administration
9811-109 Street
Edmonton, Alberta  T5K 2L5

Sue Jamieson, Assistant Deputy Minister

Email:   sue.jamieson@gov.ab.ca
Tel:      780.427.9403
Fax:     780.427.0348

**MANITOBA**

AND
TO:
    **HER MAJESTY THE QUEEN IN RIGHT OF THE
PROVINCE OF MANITOBA AS REPRESENTED BY
THE MINISTER OF FINANCE**

450 Broadway
Winnipeg, Manitoba  R3C 0V8

Barry Draward

E-mail:   barry.draward@gov.mb.ca
Tel:      204.945.3758
Fax:     204.948.2360

43

**NEW BRUNSWICK**

AND
TO:
**HER MAJESTY THE QUEEN IN RIGHT OF THE
PROVINCE OF NEW BRUNSWICK AS
REPRESENTED BY THE MINISTER OF FINANCE**

Centennial Building
Room: 371, Floor: 3
P. O. Box 6000
Fredericton, New Brunswick
E3B 5H1

Lynn Noel

Email:    lynn.noel@gnb.ca
Tel:      506.457.3550
Fax:      506.444.4920


**NEWFOUNDLAND**

AND
TO:
**HER MAJESTY THE QUEEN IN RIGHT OF THE
PROVINCE OF NEWFOUNDLAND AS REPRESENTED
BY THE MINISTER OF FINANCE**

Department of Finance
3rd Floor, East Block, Confederation Complex
P.O. Box 8700, St. John's, Newfoundland
A1B 4J6

Keith Rees

Email:    krees@gov.nl.ca
Tel:      709.729.6297
Fax:      709.729.2856

44

**NOVA SCOTIA**

AND
TO:

**HER MAJESTY THE QUEEN IN RIGHT OF
THE PROVINCE OF NOVA SCOTIA AS
REPRESENTED BY THE MINISTER OF
FINANCE**

P.O. Box 187
1723 Hollis St.
Halifax, Nova Scotia  B3J 2N3

Doug Moodie

Email:   moodiedj@gov.ns.ca
Tel:       902.424.5720
Fax:      902.424.6635


**ONTARIO**

AND
TO:

**ONTARIO MINISTRY OF FINANCE**
Legal Services Branch
6th Floor
33 King Street West
Oshawa, Ontario
L1H 8H5

Kevin O'Hara

Email:   kevin.ohara@ontario.ca
Tel:       905.433.6934
Fax:      905.436.4510

**PRINCE EDWARD ISLAND**                                          45

AND
TO:
**HER MAJESTY THE QUEEN IN RIGHT OF THE
PROVINCE OF PRINCE EDWARD ISLAND AS
REPRESENTED BY THE PROVINCIAL TREASURY**

Shaw Building, 1st Floor
95 Rochford Street
PO Box 2000
Charlottetown, PE  C1A 7N8

Mary Hennessey

Email:   mihennessey@gov.pe.ca
Tel:     902.368.4070
Fax:     902.368.6164

**SASKATCHEWAN**

AND
TO:
**HER MAJESTY THE QUEEN IN RIGHT OF THE
PROVINCE OF SASKATCHEWAN AS
REPRESENTED BY THE MINISTER OF FINANCE**

2350 Albert Street
Regina, Saskatchewan  S4P 4A6

Margaret Johannsson, Assistant Deputy Minister

Email:   Margaret.johannsson@gov.sk.ca
Tel:     306.787.6685
Fax:     306.787.0241

46

**BRITISH COLUMBIA**

AND
TO:
**HER MAJESTY THE QUEEN IN RIGHT OF THE
PROVINCE OF BRITISH COLUMBIA, AS
REPRESENTED BY THE MINISTER OF FINANCE,
REVENUE DIVISION**

Legal Services Branch
PO Box 9289, Stn Prov Govt, Suite 400, 1675
Douglas Street, Victoria, BC, V8W 9J7

Aaron Welch

Email:  Aaron.Welch@gov.bc.ca


**FEDERAL**

AND
TO:
**CANADA REVENUE AGENCY**
c/o Department of Justice
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:  diane.winters@justice.gc.ca
Tel:     416.973.3172
Fax:    416.973.0810

4 ?

**BY FAX:**

**QUEBEC**

AND
TO:

**HER MAJESTY THE QUEEN IN RIGHT OF THE
PROVINCE OF QUEBEC AS REPRESENTED BY THE
MINISTER OF FINANCE**

**Ministère des Finances**
12, rue Saint-Louis
Québec (Québec) G1R 5L3

Tel:    418.528.9323
Fax:    418.646.1631

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding commenced at Toronto

**AMENDED AND RESTATED NOTICE OF
MOTION**
**Canadian Approval and Vesting Order re
Certain Patents and Other Assets**
(returnable July 11, 2011)

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4
CANADA

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jennifer.stam@nortonrose.com
Fax: (416) 216-3930

Lawyers for the Applicants

48

DOCSTOR: 2110660/3A

· · · ·

49

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

**AFFIDAVIT OF GEORGE RIEDEL**

**Canadian Sales Process Order re. Certain Patents and Other Assets**

**(sworn April 7, 2011)**

I, George Riedel, of the city of Boston in the State of Massachusetts, MAKE OATH
AND SAY:

1.    I am the Chief Strategy Officer of Nortel Networks Corporation ("NNC") and Nortel
Networks Limited ("NNL") and have held those positions since February, 2006.  As
such, I have personal knowledge of the matters to which I hereinafter depose in this
Affidavit.  Where I do not possess personal knowledge, I have stated the source of my
information and, in all such cases, believe it to be true.

2.    I swear this Affidavit in support of the motion for an order or orders to approve the relief
fully set out in the draft order included in the Motion Record herein, which includes,
among other things,

(a)    the Bidding Procedures (as defined below);

(b)    an asset sale agreement dated as of April 4, 2011 (the "Stalking Horse
Agreement") among:

- 59 -

(i)     Ranger Inc. as purchaser (the "Stalking Horse Purchaser");

(ii)    NNC, NNL, Nortel Networks Inc. ("NNI"), Nortel Networks UK Limited (in administration) ("NNUK"), Nortel Networks (Ireland) Limited (in administration), Nortel Networks S.A. (in administration and liquidation judiciare)("NNSA"), Nortel Networks France S.A.S. (in administration) and Nortel GmbH (in administration), the other entities identified therein as sellers, Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, and Maître Cosme Rogeau as French Liquidator (collectively, the "Sellers"), and

(iii)   Google Inc., as guarantor,

as a "stalking horse" sale agreement, including the Bid Protections (as defined below) provided for therein. A copy of the Stalking Horse Agreement (without exhibits or schedules) will be attached as an appendix to the sixty-third report (the "Sixty-Third Report") of the Monitor (as defined below) to be filed in connection with this motion;

(c)     certain License Rejection Procedures (as defined below);

(d)     a side agreement dated as of April 4, 2011 among the Sellers (the "Side Agreement"). A copy of the Side Agreement will be attached as a confidential appendix to the Sixty-Third Report; and

(e)     the sealing of certain confidential appendices to the Sixty-Third Report and confidential exhibits to one or more affidavits of service (the "Service Affidavits").

3.    This affidavit is also sworn in support of the motion for the Canadian Approval and Vesting Order referred to below.

4.    References to "Nortel" herein are references to the global enterprise of NNC, NNL, NNI and their respective affiliates as a whole.

5.    All dollar references are US$ unless otherwise indicated.

DOCSTOR: 2149856\5

**BACKGROUND**

6.  On January 14, 2009 (the "Filing Date"), NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order (as subsequently amended and restated, the "Initial Order") of this Honourable Court and Ernst & Young Inc. was appointed as monitor (the "Monitor") in the CCAA proceedings.

7.  Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including its principal U.S. operating subsidiary NNI (together with the other U.S. filing entities, the "U.S. Debtors"), made voluntary filings in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") under Chapter 11 of the United States Bankruptcy Code (the "Code")(such proceedings, the "U.S. Proceedings"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases as "foreign proceedings" in Canada and giving effect in Canada to the automatic stay under the Code.

8.  Additionally, on January 15, 2009, NNUK and certain subsidiaries of the Nortel group incorporated in Europe, the Middle East or Africa ("EMEA") each obtained an administration order for the appointment of administrators from the English High Court of Justice under the Insolvency Act 1986.

9.  On February 27, 2009, the U.S. Court granted petitions recognizing the CCAA proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code.

10. On May 28, 2009, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary insolvency proceedings in respect of NNSA, which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months which period was subsequently extended. On October 1, 2009, the French Court approved an order to (i) suspend the liquidation operation relating to the sale of the assets and/or business of NNSA for a renewal period of two months; and (ii) authorize the continuation

of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French administrator and liquidator during that period except with respect to the sale of assets and/or businesses of NNSA. In accordance with the European Union's Counsel Regulation, the English law proceedings remain the main proceedings in respect of NNSA.

11. On June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK (the "English Proceedings") under Chapter 15 of the Code. On June 26, 2009, the U.S. Court entered an order recognizing the English Proceedings as foreign main proceedings under Chapter 15 of the Code.

12. On July 14, 2009, Nortel Networks (CALA) Inc. made a voluntary filing with the U.S. Court under Chapter 11 of the Code.

13. Further details regarding the background to these proceedings are set out in the affidavit of John Doolittle sworn January 14, 2009 previously filed in these proceedings and are therefore not repeated herein.

14. The Applicants have previously obtained various relief related to the sale of certain other assets relating to their business units including Nortel's Layer 4-7 Application Delivery business, CDMA and LTE related assets, Enterprise Solutions business, Optical Networking and Carrier Ethernet businesses (associated with its Metro Ethernet Networks Business), Carrier Voice Over IP and Application Solutions business, GSM/GSM-R business and Multi-Service Switch business. NNL has also sold, among other assets, its "Westwinds Facility" in Alberta, its interest in its joint venture with LG Electronics Inc., and real property in Ottawa, Ontario known as the Carling Campus.

**THE TRANSACTION**

15. Capitalized terms used in this section of my Affidavit and not otherwise defined herein shall have the meanings given to them in the Stalking Horse Agreement.

*The Assets*

53

16.    At this time, Nortel's residual patent assets are one of Nortel's largest remaining assets. The Stalking Horse Agreement contemplates the sale of approximately 6,000 Canadian, U.S. and foreign patents and patent applications spanning wireless, wireless 4G, data networking, optical, voice, internet, service provider, semiconductors and other patent portfolios.    The extensive patent portfolio touches nearly every aspect of telecommunications and additional markets as well, including Internet search and social networking.

*Previous Marketing Efforts*

17.    Nortel first began to solicit interest in a divestiture of its patent assets in May 2010.  In connection with this initial effort:

   (a)    Nortel, in consultation with its financial advisors, engaged in discussions with approximately one hundred and five (105) parties likely to be interested and able to acquire the patent assets, including a mix of financial investors and strategic buyers;

   (b)    a teaser intended to pique interest in the Assets was sent to approximately ninety-five (95) entities; and

   (c)    forty (40) companies who executed confidentiality agreements were given access to an electronic data room containing confidential diligence materials regarding the Assets.

18.    During the solicitation process, Nortel management also gave several presentations to interested parties.

19.    I am aware that the Sixty-Third Report will also include information regarding Nortel's sale efforts in this regard.

20.     After extensive arm's-length, good faith negotiations among the Sellers and the Stalking
        Horse Purchaser and their respective advisors, the Sellers have agreed, among other
        things, to convey the Assets in accordance with the terms and conditions of the Stalking
        Horse Agreement, subject to certain Court approvals including this Honourable Court and
        the U.S. Court. The Applicants have determined that the Stalking Horse Agreement
        represents the best opportunity for the Applicants to maximize the value of the Purchased
        Assets by serving as a basis for conducting an auction to seek higher and/or better offers.
        The Stalking Horse Agreement contemplates the sale of the Assets, subject to higher
        and/or better bids, on the following material terms:

        (a)     *Purchase Price.* The Stalking Horse Purchaser will pay to the Sellers, through
                their Distribution Agent, a purchase price of $900 million in cash, which includes
                $45 million to be held in escrow to secure indemnity obligations of the Sellers as
                further discussed below (Stalking Horse Agreement §§ 2.2.1 and 2.3.2);

        (b)     *Certain Fees.* As further described below, in certain circumstances the Sellers
                may be required to pay to the Stalking Horse Purchaser a Break-Up Fee and/or an
                Expense Reimbursement (Stalking Horse Agreement § 8.2) ;

        (c)     *Good Faith Deposit.* No later than three (3) Business Days following the later of
                the entry of the Order sought in the within motion and the entry of the U.S.
                Debtors' Bidding Procedures Order, the Stalking Horse Purchaser will deliver to
                the Escrow Agent a good faith deposit in the amount of $27 million in cash. The
                good faith deposit will be applied to the Purchase Price to be paid by the Stalking
                Horse Purchaser at Closing (Stalking Horse Agreement § 2.2.2);

        (d)     *Assets Sale Free and Clear.* The Assets to be acquired by the Stalking Horse
                Purchaser include, among other things, the Sellers' right, title and interest in (i)
                the Transferred Patents and Purchased Specified UK Patents, subject to certain
                licenses granted thereunder, (ii) certain Patent Related Documentation and (iii) the

---

[1]  To the extent there are inconsistencies between any summary of the Stalking Horse Agreement contained herein
and the terms and conditions of the Stalking Horse Agreement, the terms and conditions of the Stalking Horse
Agreement shall control.

Sellers' rights under certain patent-related data applications. The Assets to be transferred by the Sellers will be transferred free and clear of all claims and interests other than those expressly assumed by the Stalking Horse Purchaser or otherwise expressly permitted under the Stalking Horse Agreement (Stalking Horse Agreement § 2.1.1);

(e) *Assumed Liabilities.* The liabilities to be assumed by the Stalking Horse Purchaser include, among others, (i) all Liabilities with respect to the ownership or exploitation of the Assets by or through the Stalking Horse Purchaser arising after the Closing Date, (ii) all Liabilities arising from or in connection with the performance of the Assigned Contracts (or breach thereof), if any, after the Closing Date and (iii) all Liabilities for any Tax that the Stalking Horse Purchaser bears under Article VI of the Stalking Horse Agreement other than pursuant to Section 6.9(a) thereof (Stalking Horse Agreement § 2.1.3);

(f) *License to the Transferred Patents.* Concurrently with the Closing, the Stalking Horse Purchaser shall grant to the Sellers a license under the Transferred Patents, the Purchased Specified UK Patents and certain other patents acquired under the Stalking Horse Agreement (Stalking Horse Agreement § 5.13);

(g) *Undisclosed Patents.* Concurrently with the Closing, the Sellers shall grant the Stalking Horse Purchaser and its Affiliates a license under the Licensed Residual Patents pursuant to the terms of the Closing Date License Agreement. Upon the Sellers' discovery of any Undisclosed Patent Interest, the Stalking Horse Purchaser shall have an option to purchase the Undisclosed Patent Interest at a price of $50,000. Prior to the Sellers' anticipated dissolution or winding up, the Stalking Horse Purchaser will have an option to purchase any remaining Undisclosed Patent Interests on a quitclaim basis for a price of $1.00 (Stalking Horse Agreement §§ 5.13 and 5.19);

(h) *License Rejections and Terminations.* As further discussed below, the Stalking Horse Purchaser has agreed to take the Assets subject to all Commercial Licenses, certain Intercompany Licenses and all licenses under known Outbound License Agreements and Cross-License Agreements, and the Applicants have agreed to

55

terminate Unknown Licenses (as defined below) in accordance with the procedures described below. The Sellers also have agreed to terminate certain intercompany patent license rights (Stalking Horse Agreement § 5.13(b);

(i)    *Ongoing Covenants and Restrictions*: In addition to certain other obligations, the Sellers have agreed to reasonably cooperate with the Stalking Horse Purchaser to provide the Stalking Horse Purchaser the benefit of Assets that cannot be transferred at Closing, including by granting a royalty free, perpetual, exclusive (subject to pre-existing licenses), transferrable license under such patents (Stalking Horse Agreement § 2.1.8);

(j)    *License Non-Assignment and Non-Renewal Protections.* In furtherance of the sale, the Applicants agree under paragraph 14 of the agreed form of Approval and Vesting Order to (i) limit or refrain from exercising any rights that they may have to renew, extend, assign, amend, waive or modify any rights under various agreements containing licenses absent the Stalking Horse Purchaser's consent in its sole and absolute discretion, and (ii) grant the Stalking Horse Purchaser a power of attorney. The Stalking Horse Purchaser has provided an indemnity related to its exercise of the power of attorney. The Licenses Non-Assignment and Non-Renewal Protections are discussed in further detail below (Stalking Horse Agreement §§ 10.1);

(k)    *Maintenance of Books and Records.* After the Closing, the Sellers generally shall preserve until the third (3rd) anniversary of the Closing Date (or such longer period as may be required by applicable law) all pre-Closing Date records relating to the Assets, subject to certain limitations (Stalking Horse Agreement § 5.24);

(l)    *Restrictions on Solicitation of Competing Bids and other Transactions.* The Sellers agree that they will not, until the entry of the Canadian Sales Process Order and the U.S. Debtors Bidding Procedures Order, initiate, solicit, encourage or induce the submission or announcement of any offer for an Alternative Transaction or enter into any negotiations or execute any agreements for an Alternative Transaction. During this period, the Sellers continue to be able to negotiate and execute non-disclosure agreements, and from and after April 18,

2011, may provide access to the Data Room to Persons who have entered into non-disclosure agreements with the Primary Seller Parties. From and after the entry of the Canadian Sales Process Order, the Sellers agree not to affirmatively take any material steps in furtherance of an Asset Retention Transaction, provided that the Sellers may consider an Alternative Transaction as part of an auction process under the Bidding Procedures (Stalking Horse Agreement §§ 5.5(d), 5.26);

(m)    *Closing Conditions.* In addition to certain other customary closing conditions, including conditions relating to bankruptcy court approvals and regulatory approvals, the obligation of the Stalking Horse Purchaser to close the sale is subject to the satisfaction of the performance in all material respects of all material covenants, obligations and agreements required to be performed by the Sellers on or before the Closing (Stalking Horse Agreement § 7.3);

(n)    *Indemnity.* On the Closing Date, $45 million of the Purchase Price will be placed in an escrow account to secure an indemnity provided by the Sellers for certain breaches of the Stalking Horse Agreement (Stalking Horse Agreement Article IX, § 2.3.2).

*Break Up Fee and Expense Reimbursement*

21.    The Stalking Horse Purchaser and its advisors have expended, and likely will continue to expend, considerable time, energy and resources pursuing the purchase of the Assets and have engaged in extended, good faith negotiations with the Sellers to facilitate such transaction. The Stalking Horse Agreement is the culmination of these efforts.

22.    In recognition of this expenditure of time, energy, and resources, the Sellers, in accordance with section 8.2 of the Stalking Horse Agreement and upon the termination events described therein, have agreed to pay the Stalking Horse Purchaser an aggregate fee of twenty-five million dollars and 00/100 ($25,000,000), which break-up fee is equal to approximately two and eight-tenths percent (2.8%) of the estimated aggregate Purchase Price (the "Break-Up Fee"). In accordance with section 8.2 of the Stalking Horse Agreement and upon the termination events described therein, the Sellers also have

agreed to pay the Stalking Horse Purchaser's reasonable and documented out-of-pocket costs and expenses in connection with the preparation, execution and performance of the Stalking Horse Agreement, which shall not exceed four million dollars and 00/100 ($4,000,000), which is equal to approximately four-tenths of one percent (0.4%) of the estimated aggregate Purchase Price (the "Expense Reimbursement," and together with the Break-Up Fee, the "Bid Protections").

23.    I am aware that the Sixty-Third Report will contain more detail with respect to the Bid Protections including outlining the circumstances in which they may become payable.

24.    Except in the event of actual fraud by the Sellers, the Stalking Horse Purchaser's monetary remedies against the Sellers for pre-Closing breaches of the Stalking Horse Agreement are capped at twenty-nine million dollars and 00/100 ($29,000,000), which is equal to the amount of the Expense Reimbursement and the Break-Up Fee payable by the Sellers under the Stalking Horse Agreement.    The Break-Up Fee and the Expense Reimbursement are not remedies for any post-Closing breach by the Sellers.

*License Rejection Procedures*

25.    As a condition to the proposed transaction, the Applicants in these proceedings and the U.S. Debtors in the U.S. Proceedings have both agreed to implement a process for the rejection or termination of Unknown Licenses.

26.    As described in the Stalking Horse Agreement, the Applicants have informed the Stalking Horse Purchaser that they do not believe that there are any Contracts pursuant to which the Applicants grant licenses under the Transferred Patents, the Jointly Owned Patents or the Specified UK Patents, which licenses are in force, and to which the Applicants are a party other than:

       (a)    the Outbound License Agreements listed in Schedule A.I(e) of the Sellers Disclosure Schedule and the Cross-License Agreements listed in Schedule A.I(d) of the Sellers Disclosure Schedule (collectively, the "Known Licenses"),

       (b)    the Commercial Licenses, and

(c)    license rights with respect to the Transferred Patents, Specified UK Patents or Jointly Owned Patents granted under certain intercompany contracts, arrangements or understandings to which the Applicants are a party.

27.    Nevertheless, in view of the potential impact of continuing licenses on the value of the Sellers' patent assets, the Applicants have agreed in furtherance of the sale of the Purchased Assets to reject, pursuant to certain agreed upon procedures as set out in the proposed Canadian Sales Process Order and described below, effective as of and conditioned on the occurrence of the Closing, any pre-filing Contract pursuant to which any Applicant is a party and pursuant to which such Applicant grants a license under the Transferred Patents, Specified UK Patents or Jointly Owned Patents, other than (i) the Known Licenses, (ii) the Commercial Licenses, (iii) the Disclosed Intercompany Licenses, and (iv) any intercompany contract, arrangement or understanding that is not a Disclosed Intercompany License but that is in effect and that is similar in kind to the Disclosed Intercompany Licenses (it being understood that any such intercompany contract, arrangement or understanding that grants license rights to the Transferred Patents, Specified UK Patents or Jointly Owned Patents that is broader in scope or longer in duration than the broadest license or longest license to such patents granted under any of the Disclosed Intercompany Licenses is not similar in kind to the Disclosed Intercompany Licenses).

28.    The Applicants propose the following procedures with respect to the rejection of Unknown Licenses (as defined below) (the "Canadian License Rejection Procedures"):

(a)    in conjunction and coordination with the equivalent US license rejection procedures, the Applicants (or another a person on behalf of the Applicants) shall serve on each counterparty to a Known License (such counterparties, collectively, the "Known Licensees") a notice substantially in the form that will be attached as an appendix to the Sixty-Third Report (the "Known License Notice"), identifying the Known Licenses that such counterparty has with the Applicants. The Known License Notices shall be served by the Applicants (or another person on behalf of the Applicants) by no later than five (5) Business Days following the entry of the Canadian Sales Process Order or as soon thereafter as is reasonably practicable.

69

(b)    the Applicants (or another person on behalf of the Applicants) shall publish a notice (the "Published License Notice") of the Canadian License Rejection Procedures described in this paragraph 27, substantially in the form that will be attached as an appendix to the Sixty-Third Report, in The Wall Street Journal (National Edition), The Globe and Mail (National Edition), The Financial Times (International Edition) and The New York Times (National Edition) within five (5) Business Days of entry of the Canadian Sales Process Order or as soon thereafter as is reasonably practicable.

(c)    any counterparty to any pre-filing Contract pursuant to which any Applicant is a party and pursuant to which such Applicant has granted a license under any Transferred Patents, Specified UK Patents or Jointly Owned Patents, other than (i) the Known Licenses, (ii) the Commercial Licenses, (iii) the Disclosed Intercompany Licenses (as defined in the Stalking Horse Agreement) and (iv) any intercompany contract, arrangement or understanding that is not a Disclosed Intercompany License but that is in effect and that is similar in kind to the Disclosed Intercompany Licenses (it being understood that any such intercompany contract, arrangement or understanding that grants license rights under the Transferred Patents, Specified UK Patents or Jointly Owned Patents that is broader in scope or longer in duration than the broadest license or longest license to such patents granted under any of the Disclosed Intercompany Licenses is not similar in kind to the Disclosed Intercompany Licenses) (any such licenses, collectively, the "Unknown Licenses") who wishes to assert an Unknown License must serve an objection notice substantially in the form that will be attached as an appendix to the Sixty-Third Report (an "Objection Notice") on the parties listed on Schedule "B" thereto (the "License Objection Notice Parties"), prior to 4 p.m (ET) on June 6, 2011 (the "Canadian License Bar Date").  The Monitor has advised that it intends to post the form of Objection Notice on its website within two (2) Business Days of the entry of the proposed Canadian Sales Process Order.

(d)    without prejudice, as between the Sellers and the Stalking Horse Purchaser, to the rights of the Stalking Horse Purchaser under the Stalking Horse Agreement, to the extent that a party asserts an Unknown License prior to the 4:00 p.m. (ET) on the

61

Canadian License Bar Date (and if so asserted, an "Additional License"), the Assets shall only be sold subject to such Additional License, provided however that the validity of the Additional License has been established by Court Order prior to Closing.

(e)     except as provided for in subparagraph (d) above, all Unknown Licenses to which the Applicants are a party are deemed to be terminated as of the Closing and shall forever be barred, released and extinguished, and any claim arising from such deemed termination shall be a claim against the Applicants, which claim shall be deemed to be a Restructuring Claim as such term is defined in the Claims Procedure Order granted by this Court on July 30, 2009, as amended from time to time, (the "Claims Procedure Order") and must be filed within thirty (30) days of the date of Closing and otherwise in compliance with the Claims Procedure Order.

(f)     subject to the consent of the Stalking Horse Purchaser, in its sole and absolute discretion, or any other Successful Bidder, as applicable, the Applicants reserve their right to not terminate an Unknown License at any time prior to the occurrence of the Closing.

(g)     a counterparty seeking to retain rights under an Unknown License with both the U.S. Debtors and the Applicants that is subject to rejection and termination under the Canadian License Rejection Procedures must (i) file and serve an Objection Notice; and (ii) elect to retain its license rights in accordance with the procedures contained in the motion of the U.S. Debtors for the granting of the U.S. Bidding Procedures Order, respectively. Such a counterparty may not attempt to retain license rights in one jurisdiction and terminate such license rights in the other.

*License Non-Assignment and Non-Renewal Protections*

29.     In view of the potential impact of continuing licenses on the value of the Sellers' patent assets, the Applicants also have agreed in furtherance of the Sale to various limitations and prohibitions on their rights to renew, extend, assign, amend, waive or modify contracts containing licenses to the patents offered for sale.

30.   These prohibitions, which are set forth in full in paragraph 14 of the proposed Approval and Vesting Order (which is attached as Exhibit "A" hereto), apply to Outbound License Agreements, Cross License Agreements, Commercial Licenses, intercompany contracts among the Sellers and their affiliates and certain agreements entered into in connection with the post-petition divestiture of Nortel's business units, and include:

(a)   the deemed non-consent by the Applicants to requests to amend or modify these agreements in manners that would have the practical effect of expanding the scope or term of the licenses to the patents to be transferred to the Stalking Horse Purchaser pursuant to the Stalking Horse Agreement;

(b)   the deemed non-consent by the Applicants to the assignment of certain of these agreements by the counterparties thereto to third parties;

(c)   restrictions on the Applicants' ability to assign such contracts; and

(d)   a power of attorney for the Stalking Horse Purchaser to enforce these protections and terminate the Outbound License Agreements and Cross License Agreements upon the occurrence of events, dates or circumstances entitling the Applicants to terminate such licenses pursuant to the terms of such license.

**SERVICE PROCEDURES**

31.   In addition to the standard process for service of motions within these proceedings, I am advised by Jennifer Stam of Ogilvy Renault LLP that the Applicants intend to serve notice of this motion as well as the motion for the Approval and Vesting Order on a number of additional parties including: (a) all registrants of *Personal Property Security Act* ("PPSA") financing statements based on the Applicants' PPSA searches; (b) federal tax authorities and provincial tax authorities; (c) known Nortel affiliates; and (d) post-filing purchasers of Nortel business units (to the extent their counsel is not already on the Service List).

32.   In connection with such service efforts, I am further advised by Ms. Stam that the Applicants (or another person on behalf of the Applicants) will send a notice of sale substantially in the form that will be attached as an appendix to the Sixty-Third Report

`63

(the "Notice of Sale") to additional parties as contemplated by the Canadian Sales Process Order within five (5) Business Days of the granting of the Order. Those parties will include: (a) all parties who receive notice of the Canadian Sales Process Order Motion and Canadian Approval and Vesting Order Motion; (b) known owners of Jointly Owned Patents; and (c) certain other parties as the Stalking Horse Purchaser and the Sellers may reasonably agree (collectively, the "Additional Service Parties").

33.    Lastly, as set out above, the Applicants (in coordination with the U.S. Debtors) intend to publish the Publication Notice substantially in the form that will be attached as an appendix to the Sixty-Third Report and serve the Known License Notice as contemplated by the Canadian License Rejection Procedures.

34.    These additional service efforts are being taken for the sake of ensuring adequate notice of the relief being requested.  I believe that the service of the Additional Service Parties along with the publishing of the Publication Notice is fair, reasonable and adequate in the circumstances.

**THE SALE AND BID PROCESS**

35.    In connection with having entered into the Stalking Horse Agreement and subject to approvals by the U.S. Court and this Honourable Court, Nortel will conduct an auction process for the sale of the Assets to ensure that the Sellers receive the maximum value for the Assets and the Sellers and the Stalking Horse Purchaser have agreed that, in accordance with the provisions of the Bidding Procedures and the Canadian Sales Process Order, the Stalking Horse Agreement is subject to higher or better offers.

36.    It is anticipated that if the U.S. Debtors' Bidding Procedures Order and the Canadian Sales Process Orders are granted, Nortel will conduct an expedited sale process and follow the bidding procedures in the form attached to the proposed Canadian Sales Process Order (the "Bidding Procedures") with a view to ultimately conducting an auction.

37.    An agreed upon set of Bidding Procedures have been developed, which provide for a process through which an interested party may become a "Qualified Bidder".  Bids from

Qualified Bidders must be submitted no later than June 13, 2011. The auction is scheduled to take place at the offices of Cleary Gottlieb Steen & Hamilton LLP in New York City at 9:00 a.m. (ET) on June 20, 2011 or such other location as the Sellers may designate prior to the auction.

38.    I am aware that the Sixty-Third Report will attach and outline the proposed sale process and the Bidding Procedures in more detail. I have reviewed the Bidding Procedures and believe them to be fair in the circumstances.

**SIDE AGREEMENT**

39.    In connection with the entry into the Stalking Horse Agreement, the Applicants and certain of the other Sellers have negotiated and executed the Side Agreement, to address certain issues among such parties relating to the transaction contemplated by the Stalking Horse Agreement, including the allocation of certain costs incurred or that may potentially be incurred as part of the proposed transaction with the Stalking Horse Purchaser or other Successful Bidder. The Side Agreement also makes clear the Sellers' understanding that complying with their obligations under Section 5.13(b) of the Stalking Horse Agreement will not have any impact, positive or negative, on the rights of the Sellers with respect to the allocation of the proceeds of the Sale or the proceeds of any other transaction. I am aware that a copy of the Side Agreement will be attached as a confidential appendix to the Sixty-Third Report.

**US PROCEEDINGS**

40.    The U.S. Debtors who are Sellers subject to the U.S. Proceedings are seeking approval from the U.S. Court of certain of the relief sought in this Motion. The Applicants and the U.S. Debtors are requesting their respective Court approval pursuant to a joint hearing between the U.S. Court and this Honourable Court. The Applicants and the U.S. Debtors also intend to seek approval of the final sale of the Assets as part of a joint hearing between this Honourable Court and the U.S. Court. The Applicants (or the Monitor as foreign representative of the Applicants in their Chapter 15 proceedings) may seek recognition of the orders of this Honourable Court approving the sale from the U.S. Court.

65

**SEALING**

41.    I am aware that the Monitor has or will be filing confidential appendices to the Sixty-Third Report which contain the disclosure schedules and exhibits to the Stalking Horse Agreement as well as the Side Agreement. The disclosure schedules and exhibits contain sensitive competitive, commercial and, in some instances, personal information, including lists of the Transferred Patents and licensees to such patents. Disclosure of this confidential information would be damaging to the Applicants and the other Sellers and any Successful Bidder if it is disclosed to their competitors. The filing of the disclosure schedules and exhibits to the Stalking Horse Agreement under seal is in the best interests of the Applicants and their estates, creditors and all other interested parties herein. The Side Agreement contains sensitive information relating to certain inter-estate matters.

42.    Further, the confidential exhibits to the Service Affidavits will contain a list of the Known Licensees and information related to their service of the materials. This information is commercially sensitive and confidential.

43.    I believe sealing these confidential appendices and confidential exhibits to the Service Affidavits is appropriate in the circumstances.

**CONCLUSION**

44.    I believe that the Canadian License Rejection Procedures and the License Non-Assignment and Non-Renewal Protections are beneficial to the Applicants' ability to realize the full value of the Assets through this sale process, as the procedures provide comfort to the Stalking Horse Purchaser or other Successful Bidder as to the scope and duration of licenses and other agreements that presently encumber and will continue to encumber the Assets they are purchasing. I believe that the proposed process for the termination of the Unknown Licenses will give comfort to the Stalking Horse Purchaser that there are not material unidentified encumbrances on the Assets and is therefore fair and reasonable in the circumstances.

45.    I believe that the Stalking Horse Agreement is the product of a vigorous, comprehensive and fair process.

66

46.   Based on the Applicants' previous consideration of potential transactions involving the Assets, I believe that the proposed transaction with the Stalking Horse Purchaser represents the highest and best proposal available for the Assets, subject to the receipt of higher or better offers through the auction process contemplated in this motion.

47.   The Stalking Horse Agreement requires an expeditious sale process and provides the Stalking Horse Purchaser the right to terminate the Stalking Horse Agreement if certain milestones in the sale process are not timely met. For these reasons, the expeditious sale of the Assets is critical to the maximization of the value of the Applicants' assets and, in turn, to a recovery for the Applicants' estates

SWORN BEFORE ME at the City of
Boston, in the State of Massachusetts
on this 7th day of April, 2011.

_____
Commissioner for Taking Affidavits or
Notary Public

_____
George Riedel

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**AFFIDAVIT OF GEORGE RIEDEL**
(sworn April 7, 2011)

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930
Lawyers for the Applicants

*67*

DOCSTOR: 2149856\5

**TAB 3**

68

Court File No. 09-CL-7950

***ONTARIO***
***SUPERIOR COURT OF JUSTICE***
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**AFFIDAVIT OF GEORGE RIEDEL**
Canadian Approval and Vesting Order re Certain Patents and Other Assets
(sworn April 7, 2011)

I, George Riedel, of the City of Boston in the State of Massachusetts, MAKE OATH AND SAY:

1.     I am the Chief Strategy Officer and President, Business Units, of Nortel Networks Corporation ("NNC") and Nortel Networks Limited ("NNL") and have held the position of Chief Strategy Officer since February, 2006. As such, I have personal knowledge of the matters to which I hereinafter depose in this Affidavit. Where I do not possess personal knowledge, I have stated the source of my information and, in all such cases, believe it to be true.

2.     This Affidavit is sworn in addition to another affidavit that I have sworn in support of the Applicants' motion for the Canadian Sales Process Order (the "First Affidavit"). Capitalized terms used in this affidavit and not otherwise defined herein shall have the meanings given to them in the Proposed Sale Agreement (as defined below) or in the First Affidavit.

- 2 -                                        69

3.      I swear this Affidavit in support of the motion to grant an approval and vesting order in the form attached as Exhibit "A" hereto (the "Canadian Approval and Vesting Order") for, among other things, the following relief:

    a) approving a transaction contemplated by an asset sale agreement dated as of April 4, 2011 (the "Proposed Sale Agreement") among:

        i.   NNC, NNL, Nortel Networks Inc. ("NNI"), Nortel Networks UK Limited (in administration) ("NNUK"), Nortel Networks (Ireland) Limited (in administration), Nortel Networks S.A. (in administration and liquidation judiciaire) ("NNSA"), Nortel Networks France S.A.S. (in administration), Nortel GmbH (in administration), the other entities identified therein as sellers, Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators, and Maître Cosme Rogeau as French Liquidator (collectively, the "Sellers"),

        ii.  Ranger Inc. (the "Proposed Purchaser"),

        iii. and Google Inc., as guarantor,

    for the sale of the Assets of the Sellers as defined in the Proposed Sale Agreement (together with, the licenses under the Jointly Owned Patents, the Specified UK Patents, the Undisclosed Patent Interests and any other Patents granted by one or more of the Applicants to the Proposed Purchaser pursuant to the Proposed Sale Agreement and, effective upon receipt by the Sellers or any successor or assign or any receiver, trustee or liquidator appointed in respect of a Seller (or its Property as defined in the Initial Order) of the applicable Exercise Price pursuant to Section 5.19 of the Proposed Sale Agreement, any Undisclosed Patent Interests, together with all the other Assets, collectively the "Purchased Assets"); and

    b) vesting all of the Applicants' right, title and interest in and to the Purchased Assets absolutely in the Proposed Purchaser free and clear of and from all Encumbrances (as defined in the Canadian Approval and Vesting Order);

DOCSTOR: 2147842\7A

- 3 -

70

    c)  the approval of certain License Non-Assignment and Non-Renewal Protections (as defined below); and

    d)  the sealing of certain confidential information

4.      A copy of the Proposed Sale Agreement (without exhibits or schedules) will be attached as an appendix to the sixty-third report (the "Sixty-Third Report") of the Monitor (as defined below) to be filed in connection with this motion.

5.      References to "Nortel" herein are references to the global enterprise as a whole.

6.      All dollar references are US$ unless otherwise indicated.

**BACKGROUND**

7.      On January 14, 2009 (the "Filing Date"), NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order (as subsequently amended and restated, the "Initial Order") of this Honourable Court and Ernst & Young Inc. was appointed as monitor (in such capacity, the "Monitor") in the CCAA proceedings.

8.      Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including its principal U.S. operating subsidiary NNI (together with the other U.S. filing entities, the "U.S. Debtors"), made voluntary filings in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") under Chapter 11 of the United States Bankruptcy Code (the "Code") (such proceedings, the "U.S. Proceedings"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases as "foreign proceedings" in Canada and giving effect in Canada to the automatic stay under the Code.

9.      Additionally, on January 15, 2009, NNUK and certain subsidiaries of the Nortel group incorporated in Europe, the Middle East or Africa ("EMEA") each obtained an

- 4 -

administration order for the appointment of administrators from the English High Court of Justice under the Insolvency Act 1986.

10.     On February 27, 2009, the U.S. Court granted petitions recognizing the CCAA proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code.

11.     On May 28, 2009, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary insolvency proceedings in respect of NNSA, which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months which period was subsequently extended. On October 1, 2009, the French Court approved an order to (i) suspend the liquidation operation relating to the sale of the assets and/or business of NNSA for a renewal period of two months; and (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French administrator and liquidator during that period except with respect to the sale of assets and/or businesses of NNSA.   In accordance with the European Union's Counsel Regulation, the English law proceedings remain the main proceedings in respect of NNSA.

12.     On June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK (the "English Proceedings") under Chapter 15 of the Code.   On June 26, 2009, the U.S. Court entered an order recognizing the English Proceedings as foreign main proceedings under Chapter 15 of the Code.

13.     On July 14, 2009, Nortel Networks (CALA) Inc. made a voluntary filing with the U.S. Court under Chapter 11 of the Code.

14.     Further details regarding the background to these proceedings are set out in the affidavit of John Doolittle sworn January 14, 2009 previously filed in these proceedings and are therefore not repeated herein.

15.     The Applicants have previously obtained various relief related to the sale of certain other assets relating to their business units including Nortel's Layer 4-7 Application Delivery business, CDMA and LTE related assets, Enterprise Solutions business, Optical Networking

- 5 -

72

and Carrier Ethernet businesses (associated with its Metro Ethernet Networks Business), Carrier Voice Over IP and Application Solutions business, GSM/GSM-R business and Multi-Service Switch business. NNL has also sold, among other assets, its "Westwinds Facility" in Alberta, its interest in its joint venture with LG Electronics Inc., and real property in Ottawa, Ontario known as the Carling Campus.

## THE ASSETS

16.    At this time, Nortel's residual patent assets are one of Nortel's largest remaining assets.  The Proposed Sale Agreement contemplates the sale of approximately 6,000 Canadian, U.S. and foreign patents and patent applications spanning wireless, wireless 4G, data networking, optical, voice, internet, service provider, semiconductors and other patent portfolios. The extensive patent portfolio touches nearly every aspect of telecommunications and additional markets as well, including Internet search and social networking.

## PROPOSED SALE AGREEMENT[1]

17.    After extensive arm's-length, good faith negotiations among the Sellers and the Proposed Purchaser and their respective advisors, the Sellers have agreed, among other things, to convey the Purchased Assets in accordance with the terms and conditions of the Proposed Sale Agreement, subject to certain Court approvals including this Honourable Court and the U.S. Court.

18.    The Proposed Sale Agreement contemplates the sale of the Assets for a price of $900 million on the terms and conditions set out in my First Affidavit.

19.    The proposed transaction will be subject to higher or better offers in the event that an auction occurs in accordance with the relief requested in the Canadian Sales Process Order Motion and the U.S. Bidding Procedures Order Motion which is scheduled to be heard on May 2, 2011.

---

[1] To the extent there are inconsistencies between any summary of the Proposed Sale Agreement contained herein and the terms and conditions of the Proposed Sale Agreement, the terms and conditions of the Proposed Sale Agreement shall control.

- 6 -

7 5

20.    The material terms of the Proposed Sale Agreement are summarized in the First Affidavit.

**THE LICENSE NON-ASSIGNMENT AND NON-RENEWAL PROTECTIONS**

21.    In view of the potential impact of continuing licenses on the value of the Sellers' patent assets, the Applicants also have agreed in furtherance of the sale of the Purchased Assets, to the License Non-Assignment and Non-Renewal Protections (as defined in the Canadian Approval and Vesting Order) which contain various limitations and prohibitions on their rights to renew, extend, assign, amend, waive or modify contracts containing licenses to the patents offered for sale.

22.    These limitations and prohibitions, which are set forth in full in paragraph 14 of the proposed Canadian Approval and Vesting Order, apply to Outbound License Agreements, Cross License Agreements, Commercial Licenses, intercompany contracts among the Sellers and their affiliates and certain agreements entered into in connection with the post-petition divestiture of Nortel's business units, and include:

   a) the deemed non-consent by the Applicants to requests to amend or modify these agreements in manners that would have the practical effect of expanding the scope or term of the licenses to the patents to be transferred to the Proposed Purchaser pursuant to the Proposed Sale Agreement;

   b) the deemed non-consent by the Applicants to the assignment of certain of these agreements by the counterparties thereto to third parties;

   c) restrictions on the Applicants' ability to assign such contracts; and

   d) a power of attorney for the Proposed Purchaser to enforce these protections and terminate the Outbound License Agreements and Cross License Agreements upon the occurrence of events, dates or circumstances entitling the Applicants to terminate such licenses pursuant to the terms of such licenses.

23.    I believe that it is reasonable for the Applicants to agree at this time to these restrictions on the above described agreements as part of the consideration for the proceeds to

- 7 -

74

be realized from the sale of the Purchased Assets. The License Non-Assignment and Non-Renewal Protections limit the impact of the applicable license agreements on the Purchased Assets, which benefit the Applicants, their creditors, estates and all interested parties through their expected ability to realize a higher price for the Purchased Assets, and these protections are tailored to respect the Applicants' current obligations under their existing contracts (while limiting their discretion to extend or modify those obligations after the Closing). Such counterparties will retain any rights under their contracts that can be exercised without the Applicants' consent.

24.   The terms and conditions negotiated with respect to the License Non-Assignment and Non-Renewal Protections are material to the proposed transaction and significant to the Proposed Purchaser.

**SERVICE PROCEDURES**

25.   In addition to the standard process for service of motions within these proceedings, I am advised by Jennifer Stam of Ogilvy Renault LLP that the Applicants intend to serve notice of this motion on a number of additional parties including: (a) all registrants of *Personal Property Security Act* ("PPSA") financing statements based on the Applicants' PPSA searches; (b) federal tax authorities and provincial tax authorities; (c) known Nortel affiliates; and (d) post-filing purchasers of Nortel business units (to the extent their counsel is not already on the Service List).

26.   In connection with such service efforts, I am further advised by Ms. Stam that the Applicants (or another person on behalf of the Applicants) will send a Notice of Sale to the Additional Service Parties if the Canadian Sales Process Order and the U.S. Bidding Procedures Order are each granted. I anticipate that supplemental materials will be prepared providing an update with respect to the service of the Notice of Sale.

27.   Lastly, as set out above, the Applicants (in coordination with the U.S. Debtors) intend to publish the Publication Notice. I anticipate that supplemental materials will be prepared providing an update with respect to the publication of the Publication Notice.

28.   These additional service efforts are being taken for the sake of ensuring adequate notice of the relief being requested.   I believe that the service of the Additional Service

- 8 -

75

Parties along with the publishing of the Publication Notice is fair, reasonable and adequate in the circumstances.

## US PROCEEDINGS

29.    The U.S. Debtors who are Sellers subject to the U.S. Proceedings are seeking approval from the U.S. Court of certain of the relief sought in this Motion. The Applicants and the U.S. Debtors are requesting their respective Court approval pursuant to a joint hearing between the U.S. Court and this Honourable Court. The Applicants (or the Monitor as foreign representative of the Applicants in their Chapter 15 proceedings) may seek recognition of the orders of this Honourable Court approving the sale from the U.S. Court.

## SEALING

30.    -I am aware that the Monitor has or will be filing confidential appendices to the Sixty-Third Report, as well as confidential appendices to other reports to be filed in connection with this motion, which contain or will contain, among other things, the disclosure schedules and exhibits to the Proposed Sale Agreement.  The disclosure schedules and exhibits contain sensitive competitive, commercial and, in some instances, personal information, including lists of the Transferred Patents and licensees to such patents. Disclosure of this confidential information would be damaging to the Applicants and the other Sellers and any Successful Bidder if it is disclosed to their competitors.  The filing of the disclosure schedules and exhibits to the Proposed Sale Agreement under seal is in the best interests of the Applicants and their estates, creditors and all other interested parties herein.

31.    Further, exhibits to one or more affidavits of service (the "Service Affidavits") will contain a list of the Known Licensees and information related to their service of the materials. This information is commercially sensitive and confidential.

32.    I believe sealing these confidential appendices and the confidential exhibits to the Service Affidavits is appropriate in the circumstances.

- 9 -

76

## CONCLUSIONS

33.    I anticipate that further supplemental materials will be filed in support of the motion for the Canadian Approval and Vesting Order prior to the hearing of this motion which materials will include further information regarding: (a) the results of the implementation of the Bidding Procedures; (b) the service of the Notice of Sale on the Additional Service Parties; (c) the steps taken to comply with, and any results of, the Canadian License Rejection Procedures (including service of the Known License Notice); and (d) the outcome of any auction, if convened.

34.    The Proposed Sale Agreement was sufficiently negotiated at arm's length and in good faith and numerous potential purchasers were contacted, as more fully described in the First Affidavit and the Sixty-Third Report.  The terms and conditions of the Proposed Sale Agreement, including the License Non-Renewal and Non-Assignment Protections, are fair and reasonable.  I believe that the proposed transaction as set out in the Proposed Sale Agreement is the best offer available for the Purchased Assets and is critical to the maximization of the value of the Applicants assets, subject to any higher and/or better offers received through the bidding procedures further described in the First Affidavit.

- 10 -

77

**SWORN BEFORE ME** at the City of
Boston, in the State of Massachusetts
on this 7th day of April, 2011.

_Margaret _____

Commissioner for Taking Affidavits
or Notary Public

George Riedel

78

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL
CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL
NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**AFFIDAVIT OF GEORGE RIEDEL**
**(sworn April 7, 2011)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930
Lawyers for the Applicants

# TAB 4

*79*

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**SUPPLEMENTAL AFFIDAVIT OF GEORGE RIEDEL**
**Canadian Approval and Vesting Order re Certain Patents and Other Assets**
**(sworn July 5, 2011)**

I, **George Riedel**, of the City of Boston in the State of Massachusetts, MAKE OATH
AND SAY:

1.      I am the Chief Strategy Officer and President, Business Units, of Nortel Networks
Corporation ("NNC") and Nortel Networks Limited ("NNL") and have held the position of
Chief Strategy Officer since February, 2006. As such, I have personal knowledge of the matters
to which I hereinafter depose in this Affidavit. Where I do not possess personal knowledge, I
have stated the source of my information and, in all such cases, believe it to be true.

2.      This Affidavit is sworn in addition to, and should be read in conjunction with, two other
affidavits that I have sworn (i) in support of the Applicants' motion for the Canadian Sales
Process Order (the "First Affidavit") and (ii) in support of the Applicants' motion for an order,
*inter alia*, approving the sale of the Purchased Assets (as defined herein) (the "Second
Affidavit"), each sworn April 7, 2011. Capitalized terms used in this Affidavit and not
otherwise defined herein shall have the meanings given to them in the Sale Agreement (as
defined below).

90

- 2 -

3.      I swear this Affidavit in support of the motion to grant an approval and vesting order substantially in the form included in the Applicants' amended and restated motion record with which this Affidavit is served (the "Canadian Approval and Vesting Order") for, among other things, the following relief:

(a)      Approval of the transactions contemplated by an asset sale agreement dated as of June 30, 2011 (the "Sale Agreement") among:

I.      NNC, NNL, Nortel Networks Inc. ("NNI"), Nortel Networks UK Limited (in administration) ("NNUK"), Nortel Networks (Ireland) Limited (in administration), Nortel Networks S.A. (in administration and liquidation judiciaire) ("NNSA"), Nortel Networks France S.A.S. (in administration), Nortel GmbH (in administration), the other entities identified therein as sellers (collectively, the "Sellers"), Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson, David Hughes and Christopher John Wilkinson Hill as Joint Administrators, and Maître Cosme Rogeau as French Liquidator, and

II.      Rockstar Bidco, LP ("Rockstar" or the "Purchaser"),

for the sale of the Assets to the Purchaser in accordance with the provisions of the Sale Agreement (including the licenses under the Jointly Owned Patents, the Specified UK Patents, the Undisclosed Patent Interests and any other Patents granted by one or more of the Applicants to the Purchaser pursuant to the Sale Agreement and, effective upon receipt by the Sellers or any successor or assign or any receiver, trustee or liquidator appointed in respect of a Seller (or its Property as defined in the Initial Order) of the applicable Exercise Price pursuant to Section 5.19 of the Sale Agreement, any Undisclosed Patent Interests sought to be transferred, granted and/or assigned by the Applicants to the Purchaser pursuant to the Sale Agreement, together with all the other Assets, collectively, the "Purchased Assets"); and

(b)      Vesting of all of the Applicants' right, title and interest in and to the Purchased Assets absolutely in the Purchaser free and clear of and from all Claims and Encumbrances (in each case as defined in the Canadian Approval and Vesting

81

- 3 -

Order), which for greater certainty does not include Permitted Encumbrances (other than those specifically contemplated to be discharged by virtue of the Canadian Approval and Vesting Order, if any), Standards Obligations[1], Liens created by or through the Purchaser or its Affiliates, Assumed Liabilities, or as set forth in Section 2.1.1(a) or 5.21 of the Sale Agreement or as provided in the Nokia Agreement[2];

(c)    Approval of certain License Non-Assignment and Non-Renewal Protections (as defined in the Canadian Approval and Vesting Order);

(d)    Sealing of certain confidential information; and

(e)    Approval of the IP Side Agreement re Certain Structural Matters (as defined below).

4.    A copy of the Sale Agreement (without exhibits or schedules) will be attached as an appendix to the seventy-first report (the "Seventy-First Report") of the Monitor (as defined below) to be filed in connection with this motion.

5.    References to "Nortel" herein are references to the global enterprise as a whole.

6.    All dollar references are US$ unless otherwise indicated.

**BACKGROUND**

7.    On January 14, 2009 (the "Filing Date"), NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order (as subsequently amended and restated, the "Initial Order") of this Honourable

---

[1] "Standards Obligations" means, to the extent valid and enforceable under applicable non- bankruptcy law, any promises, declarations and commitments granted, made or committed in writing by the Sellers to standard-setting bodies concerning the licensing of any of the Transferred Patents, Purchased Specified UK Patents or Undisclosed Patent Interests (including those commitments contained in the membership agreements, by-laws or policies of standard-setting bodies), whether or not listed in Section 1.1(g) of the Sellers Disclosure Schedule.

[2] See Note 11 and Paragraph 35 hereof.

82

- 4 -

Court, and Ernst & Young Inc. was appointed as monitor (in such capacity, the "Monitor") in the CCAA proceedings.

8.      Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including its principal U.S. operating subsidiary NNI (together with the other U.S. filing entities, the "U.S. Debtors"), made voluntary filings in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") under Chapter 11 of the United States Bankruptcy Code (the "Code") (such proceedings, the "U.S. Proceedings"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases as "foreign proceedings" in Canada and giving effect in Canada to the automatic stay under the Code.

9.      Additionally, on January 15, 2009, NNUK and certain subsidiaries of the Nortel group incorporated in Europe, the Middle East or Africa ("EMEA") each obtained an administration order for the appointment of administrators from the English High Court of Justice under the Insolvency Act 1986.

10.     On February 27, 2009, the U.S. Court granted petitions recognizing the CCAA proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code.

11.     On May 28, 2009, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary insolvency proceedings in respect of NNSA, which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months which period was subsequently extended. In accordance with the European Union's Counsel Regulation, the English law proceedings remain the main proceedings in respect of NNSA.

12.     On June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK (the "English Proceedings") under Chapter 15 of the Code. On June 26, 2009, the U.S. Court entered an order recognizing the English Proceedings as foreign main proceedings under Chapter 15 of the Code.

13.     The Applicants have previously obtained various relief related to the sale of certain other assets relating to their business units including Nortel's Layer 4-7 Application Delivery

83

- 5 -

business, CDMA and LTE related assets, Enterprise Solutions business, Optical Networking and Carrier Ethernet businesses (associated with its Metro Ethernet Networks Business), Carrier Voice Over IP and Application Solutions business, GSM/GSM-R business and Multi-Service Switch business.  NNL has also sold, among other assets, its "Westwinds Facility" in Alberta, its interest in its joint venture with LG Electronics Inc., and real property in Ottawa, Ontario known as the Carling Campus.

14.    Further details regarding the background to these proceedings are set out in the affidavit of John Doolittle sworn January 14, 2009 previously filed in these proceedings and are therefore not repeated herein.

**THE ASSETS**

15.    At this time, Nortel's residual patent assets are one of Nortel's largest remaining assets. The Sale Agreement contemplates the sale of more than 6,000 Canadian, U.S. and foreign patents and patent applications spanning wireless, wireless 4G, data networking, optical, voice, internet, service provider, semiconductors and other patent portfolios.  The extensive patent portfolio touches nearly every aspect of telecommunications and additional markets as well, including internet search and social networking.

**THE BIDDING PROCESS**

16.    Following the granting of the Canadian Sales Process Order by this Honourable Court and the corresponding Order by the U.S. Court, Nortel and its advisors proceeded to implement the bidding process contemplated by the Bidding Procedures (as defined in the Canadian Sales Process Order).  A brief summary of the events that took place during the bidding process is provided below.  I am aware that the Seventy-First Report will contain further details on such events.

17.    Pursuant to the Bidding Procedures, a bid deadline was set for 4:00 pm (Eastern) on June 13, 2011 (the "Bid Deadline"), and the time for the auction was scheduled for 9:00 am on June 20, 2011.

18.    In connection with the Bidding Procedures, Nortel received four (4) bids for the Purchased Assets, in addition to the bid contemplated by the Stalking Horse Agreement (as

84

- 6 -

defined in my First Affidavit), which bids were deemed "Qualified Bids" in accordance with the Bidding Procedures. The four (4) bidders were deemed "Qualified Bidders" (collectively, with Ranger Inc., the "Qualified Bidders") on or prior to June 15, 2011. Also on June 15, 2011, copies of all Qualified Bids (as defined in the Bidding Procedures) were provided to all of the Qualified Bidders. On June 16, 2011, the Qualified Bidders were notified that the commencement of the auction would be postponed until June 27, 2011.

19. On June 23, 2011, all Qualified Bidders were given notice of the starting bid and that the auction would start at 9:00am on June 27, 2011.

20. The Monitor was involved at all material times throughout the bidding process and Nortel has kept the official committee of unsecured creditors of NNI and the *ad hoc* bondholders committee apprised of all significant developments in the process.

**THE AUCTION**

21. As contemplated by the Bidding Procedures, the auction was held at the offices of Cleary Gottlieb Steen & Hamilton LLP. The auction commenced at approximately 9:15 am on June 27, 2011. The initial bid increment was set at $5 million. A second round of bidding took place in which the minimum bid increment was set at $50 million. In subsequent rounds of bidding, the bid increment was set at $100 million. On June 30, 2011, in the 20th round of bidding, no further bids were received and the bid submitted jointly by Apple Inc. and Rockstar[3] for $4.5 billion in the 19th round was declared the winning bid.

**THE SALE AGREEMENT[4]**

22. The Sixty-Third Report of the Monitor contained a detailed description of the Stalking Horse Agreement. I am aware that the Seventy-First Report will contain a more comprehensive summary of the terms of the Sale Agreement insofar as they differ from the Stalking Horse Agreement. Some of the more significant changes from the Stalking Horse Agreement that are reflected in the Sale Agreement are as follows:

---

[3] Apple Inc. was one of the Qualified Bidders. I am aware that the Seventy-First Report will contain more information regarding the circumstances preceding the joint bid submitted by Apple Inc and Rockstar.
[4] To the extent there are inconsistencies between any summary of the Sale Agreement contained herein and the terms and conditions of the Sale Agreement, the terms and conditions of the Sale Agreement shall control.

85

- 7 -

(a)  Purchase Price. The Purchaser will pay to the Sellers, through their Distribution Agent, a purchase price of $4.5 billion in cash, a portion of which may be paid in the form of a license fee not to exceed $1 billion in respect of certain of the Purchased Assets. (Sale Agreement §§ 2.2.1 and 5.27)

(b)  Optioned License. The Sale Agreement provides for the licensing by the Purchaser, and/or one or more of the Purchaser's limited partners, from the Sellers of certain of the Purchased Assets prior to their purchase. The Purchaser has agreed to provide certain customary indemnities associated with the licensing of assets of the nature of the Purchased Assets. The Purchaser has also agreed to indemnify the Applicants, among others, in respect of Incremental Taxes paid or payable pursuant to applicable law. The Purchaser shall pay on Closing to the Canadian Sellers $15 million in respect of the utilization of tax attributes of the Canadian Sellers as a result of the receipt of the Optioned Licenses Fees. (Sale Agreement § 5.27)

(c)  Good Faith Deposit. The Purchaser delivered a good faith deposit in the amount of $54 million in cash. The good faith deposit will be applied to the Purchase Price to be paid by the Purchaser at Closing. (Sale Agreement § 2.2.2, Bidding Procedures)

(d)  Sale Free and Clear. The Purchased Assets to be transferred by the Sellers will be transferred free and clear of all Claims and Encumbrances, which for greater certainty does not include the following: Permitted Encumbrances (other than those specifically contemplated to be discharged by virtue of the Canadian Approval and Vesting Order, if any), Standards Obligations, Liens created by or through the Purchaser or its Affiliates, Assumed Liabilities, or as set forth in Section 2.1.1(a) or 5.21 of the Sale Agreement or as provided in the Nokia Agreement. (Sale Agreement § 2.1.1)

(e)  License Rejections and Terminations. The license rejection procedures were implemented in accordance with the terms of the Canadian Sales Process Order and the U.S. Bidding Procedures Order and are discussed in more detail below. The Purchaser has agreed to take the Purchased Assets subject to, among others,

B.6

- 8 -

those licenses specifically identified in licensees' objection notices, as discussed below. The Purchaser has also agreed to enter into the Acknowledgment discussed in more detail below.

(f)     Closing Conditions. The Closing is subject to certain customary closing conditions, including approval of this Court and the U.S. Court (which must occur within 45 days of execution of the Sale Agreement). (Sale Agreement, Article VII and § 5.1 and § 5.2)

(g)     Indemnity. As set out in my First Affidavit, the Stalking Horse Agreement provided for $45 million to be placed in an escrow account to secure an indemnity provided by the Sellers for certain breaches of the Stalking Horse Agreement. The Sale Agreement does not contemplate any such indemnity or escrow in respect of an indemnity.

**Employee Matters[5]**

23.     Pursuant to the terms of an Employee Transfer Side Letter ("ETSA") between an affiliate of the Purchaser, NNI and NNL, an affiliate of the Purchaser has agreed that it, or one of its subsidiaries, will offer employment to at least 16 Employees of NNL and NNI, whose names are found on a larger pre-determined list of current employees of NNL and NNI, collectively. Employees offered such employment will have a consideration period of at least seven days, or such longer period as required by applicable Law. NNL and NNI must be in agreement with the terms and conditions of employment offered to such employees in order for such offers to be acceptable. The overall employment package offered to such employees must be at least as favourable as the overall employment package provided to such employees by NNL, NNI or their Affiliates, immediately prior to Closing (excluding any defined benefit pension, equity or retiree medical benefits provided by NNL or NNI or their Affiliates).

---

[5] To the extent there are inconsistencies between any summary of the ETSA or the Sale Agreement contained herein and the terms and conditions of the ETSA or the Sale Agreement, the terms and conditions of the ETSA and the Sale Agreement shall control.

87

- 9 -

24.    Further, the Purchaser has agreed to make employees accepting such offers available to provide certain assistance to Nortel for a period of three years following Closing. Nortel shall be responsible for the actual costs of such assistance.

25.    The Sale Agreement provides that the Purchaser shall bear severance costs incurred by the Sellers in connection with the termination of employment by Sellers of the Employees (other than the Transferring Employees (as defined in the ETSA)) provided, however, that the amount of such severance costs to be paid by the Purchaser shall not exceed $2.6 million.

Acknowledgment[6]

26.    The Purchaser has executed an acknowledgment (the "Acknowledgment") pursuant to which, among other things, the Purchaser has acknowledged that all agreements listed in a schedule thereto as well as amendments and supplements to those agreements and other substantially similar agreements with the counterparties listed in the Acknowledgment are deemed to constitute Commercial Licenses, to which the Purchased Assets will remain subject. The Purchaser has also acknowledged that it shall have no entitlement to indemnification or other remedy from any of the Sellers, including in respect of Damages suffered, or that may be suffered, as a result of the existence of any licenses granted under such agreements.

IP SIDE AGREEMENT RE CERTAIN STRUCTURAL MATTERS[7]

27.    In connection with the Sale Agreement, the Sellers, the Joint Administrators and the French Liquidator have entered into an IP side agreement re certain structural matters dated as of June 30, 2011 (the "IP Side Agreement re Certain Structural Matters") to address certain inter-estate matters arising out of the Sale Agreement. The IP Side Agreement re Certain Structural Matters, among other things, acknowledges the direct payment of $15 million in connection with the Optioned License to be paid to the Canadian Sellers in the circumstances set out in the Sale Agreement. I am aware that a copy of the IP Side Agreement re Certain Structural Matters will be attached as an appendix to the Seventy –First Report.

---

[6] To the extent there are inconsistencies between any summary of the Acknowledgment contained herein and the terms and conditions of the Acknowledgment, the terms and conditions of the Acknowledgment shall control.

[7] To the extent there are inconsistencies between any summary of the IP Side Agreement re Certain Structural Matters contained herein and the terms and conditions of the IP Side Agreement re Certain Structural Matters, the terms and conditions of the IP Side Agreement re Certain Structural Matters shall control.

88

- 10 -

**LICENSE REJECTION**

28.    Pursuant to the License Rejection Procedures (as defined in the First Affidavit) and the Canadian Sales Process Order, the Applicants were required to:

(a)    Serve the Known License Notice (as defined in the Canadian Sales Process Order) upon each counterparty to an Outbound License Agreement with the Applicants listed on Schedule A.I(e) of the Sellers Disclosure Schedules to the Stalking Horse Agreement and each counterparty to a Cross-License Agreement with the Applicants listed on Schedule A.I.(d) of the Sellers Disclosure Schedules to the Stalking Horse Agreement by no later than five (5) Business Days following the entry of the Canadian Sales Process Order or as soon thereafter as is reasonably practicable; and

(b)    Publish the Published License Notice in The Wall Street Journal (National Edition), The Globe and Mail (National Edition); The Financial Times (International Edition) and The New York Times (National Edition) within five (5) Business Days of entry of the Canadian Sales Process Order or as soon thereafter as is reasonably practicable.

29.    Pursuant to the License Rejection Procedures and the Canadian Sales Process Order, the Monitor was required to:

(a)    Post the form of Objection Notice (as defined in the Canadian Sales Process Order) on its website within two (2) Business Days of the entry of the Canadian Sales Process Order.

*Service in Compliance with Canadian Sales Process Order*

30.    I am advised by the Monitor that, in accordance with the terms of the Canadian Sales Process Order, on May 6, 2011 the Monitor served the Known License Notice, on behalf of the Applicants, upon: Nortel affiliates, as well as substantially all of the counterparties to Cross-License Agreements and Outbound License Agreements listed in Schedules A.I.(d) and A.I.(e) of the Sellers Disclosure Schedules to the Stalking Horse Agreement, to the extent that those

- 11 -

parties could be contacted.[8]  In each case, the Known License Notice served on a particular addressee identified the Known Licenses to which the Applicants believed that addressee was a party.

31.    The Applicants also complied with the Published License Notice requirements in the Canadian Sales Process Order.  I am aware that attached as appendices to the Seventy-First Report will be affidavits and/or certifications attesting to the publication of the Published License Notice in accordance with the terms of the Canadian Sales Process Order.  Those affidavits and certifications show that a Published License Notice was published in the newspapers specified in the Canadian Sales Process Order on May 6, 2011.

32.    I am informed by the Monitor that it posted the form of Objection Notice (as such term is defined in the Canadian Sales Process Order) on its website within two (2) Business Days of entry of the Canadian Sales Process Order.

33.    I am aware that the Seventy-First Report will attach evidence showing that Epiq Bankruptcy Solutions, LLC, the US claims agent to Nortel Networks Inc. served a joint notice of sale on May 12, 2011 upon: the Service List, Nortel affiliates, as well as counterparties to Cross-License Agreements and Outbound License Agreements, owners of Jointly Owned Patents and certain other parties as Ranger Inc. and the Sellers reasonably agreed.

*Objection Notices*

34.    Following the entry of the Canadian Sales Process Order, Canadian Objection Notices as well as US objection and/or election notices were received in respect of claimed licenses from various parties.  A total of ten parties provided such notices under the Canadian license rejection procedures.[9]  A total of eleven parties provided such notices under the US license rejection procedures.[10]

---

[8] Five additional notices were sent out on May 11, 2011 and May 16, 2011 as additional contact information became available. Out of an abundance of caution, two additional notices were sent to additional counterparties on or about June 21st and 23rd. To date neither of these two parties have contacted the Applicants or the Monitor indicating that they have any questions or concerns about the subject matter of their Known License Notices.
[9] One additional party provided a Canadian Objection Notice, which was received well after the bar date set by order of this Court on May 2, 2011 (the "Late Notice").
[10] Of the 11 notices received in the U.S., seven (including the Late Notice) were overlapping with those notices received in Canada.

DOCSTOR: 2207791\7A

*90*

- 12 -

35.    The specific agreements delivered in connection with the above notices in compliance with the License Rejection Procedures were handled in one of two ways in the transaction documents associated with the Sale Agreement (with the exception of specific agreements delivered by Nokia Corporation)[11].    Certain of these agreements were added to the Sellers Disclosure Schedules to the Sale Agreement, either as Outbound License Agreements or Cross-License Agreements.    The remainder of these agreements (as well as amendments and supplements thereto and other substantially similar agreements with the same counterparties) were incorporated into the Acknowledgment discussed above.[12]   In either case, the inclusion of these agreements in the Acknowledgment or the Sellers Disclosure Schedules is intended to clarify that the Purchased Assets are taken by the Purchaser subject to any licenses granted under such agreements.

36.    I am aware that further details on the license rejection procedures of the Applicants are provided in the Seventy-First Report.

## LICENSE NON-ASSIGNMENT AND NON-RENEWAL PROTECTIONS

37.    In view of the potential impact of continuing licenses on the value of the Sellers' patent assets, the Applicants have agreed in furtherance of the transaction contemplated by the Sale Agreement to various limitations and prohibitions on their rights to renew, extend, assign, amend, waive or modify contracts containing licenses to the patents being sold.

38.    These prohibitions, which are set forth in full in paragraph 14 of the Canadian Approval and Vesting Order, apply to Outbound License Agreements, Cross License Agreements, Commercial Licenses, intercompany contracts among the Sellers and their affiliates and certain agreements entered into in connection with the post-petition divestiture of Nortel's business units, and include:

(a)    the deemed non-consent by the Applicants to requests to amend or modify these agreements in manners that would have the practical effect of expanding the

---

[11] Four agreements submitted by Nokia Corporation in connection with the License Rejection Procedures (the "Nokia Contracts") have been made the subject of a side agreement between the Purchaser and the Sellers (the "Nokia Agreement"). This agreement provides, *inter alia*, that the Purchased Assets will be transferred subject to any valid and enforceable license, if any, under the Nokia Contracts solely in accordance with their terms.

9 1

- 13 -

    scope or term of the licenses to the patents to be transferred to the Purchaser pursuant to the Sale Agreement;

(b)    the deemed non-consent by the Applicants to the assignment of certain of these agreements by the counterparties thereto to third parties;

(c)    restrictions on the Applicants' ability to assign such contracts; and

(d)    a power of attorney for the Purchaser to enforce these protections and terminate the Outbound License Agreements and Cross License Agreements upon the occurrence of events, dates or circumstances entitling the Applicants to terminate such licenses pursuant to the terms of such license.

39.    No changes have been made to these provisions since they were originally included in a draft form of approval and vesting order served on the service list prior to the hearing for the Canadian Sales Process Order on May 2, 2011.

**SEALING**

40.    I am aware that the Monitor has or will be filing confidential appendices to the Seventy-First Report which contain the disclosure schedules and exhibits to the Sale Agreement. The disclosure schedules and exhibits contain sensitive competitive, commercial and, in some instances, personal information, including lists of the Transferred Patents and licensees to such patents. Disclosure of this confidential information would be damaging to the Applicants and the other Sellers and the Purchaser if it is disclosed to their competitors. The filing of the disclosure schedules and exhibits to the Sale Agreement under seal is in the best interests of the Applicants and their estates, creditors and all other interested parties herein.

41.    Further, the confidential exhibits to the affidavits of service filed in connection with this motion (the "Service Affidavits") will contain a list of licensees and information related to their service of the materials. This information is commercially sensitive and confidential.

42.    I believe sealing these confidential appendices and confidential exhibits to the Service Affidavits is appropriate in the circumstances.