IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
: 
In re : Chapter 11
:
Nortel Networks Inc., et al.[1] : Case No. 09-10138 (KG)
:
Debtors. : Jointly Administered
:
: **RE: D.I. 5202, 5835**
-----------------------------------------------------------X

**DEBTORS' REPLY IN FURTHER SUPPORT OF
THEIR MOTION FOR AN ORDER APPROVING (A) THE
SALE OF CERTAIN PATENTS AND RELATED ASSETS FREE AND
CLEAR OF ALL CLAIMS AND INTERESTS, (B) THE REJECTION OF
CERTAIN PATENT LICENSES, (C) THE LICENSE NON-ASSIGNMENT
AND NON-RENEWAL PROTECTIONS, AND SEEKING RELATED RELIEF**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), respectfully submit this reply (the "Reply") in reply to Responses (as defined below) to the Debtors' Motion for Orders (I)(A) authorizing Debtors' entry into the Stalking Horse Asset Sale Agreement, (B) authorizing and approving the Bidding Procedures and Bid Protections, (C) approving the Notice Procedures and the Assumption and Assignment Procedures, (D) approving the License Rejection Procedures, (E) approving a side agreement, (F) authorizing the filing of certain documents under seal and (G) setting a date for the Sale Hearing, and (II) authorizing and approving (A) the sale of certain patents and related assets free and clear of all claims and interests, (B) the assumption and assignment of certain

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620, Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226)Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

executory contracts, (C) the rejection of certain patent licenses and (D) the License Non-Assignment and Non-Renewal Protections [D.I. 5202] (the "Motion"),[2] and in further support of the Motion, the Debtors respectfully represent as follows:

## Preliminary Statement

1. As previously announced in the Notice of Filing of Successful Bid filed with the Court on June 30, 2011 [D.I. 5835], the Debtors seek approval of the sale of the Purchased Assets to Rockstar Bidco, LP (the "Purchaser"). The Debtors file this Reply for the limited purpose of responding to certain objections, responses and notices of election (collectively, the "Responses") filed with respect to the Sale.[3] As set forth herein, to the extent any Response is not withdrawn prior to the Sale Hearing, it should be overruled as either moot, resolved through certain provisions included in the Transaction Documents (as defined below), or as otherwise lacking a valid legal basis.[4]

## Background

2. The Debtors filed the Motion on April 4, 2011. On May 2, 2011, the Court entered the U.S. Bidding Procedures Order, which approved a process for the auction of the Purchased Assets and the ultimate sale of the Purchased Assets to Successful Bidder at the Auction.

3. As contemplated by the Bidding Procedures Order, the Sellers conducted an Auction beginning on June 27, 2011 and concluding on June 30, 2011. On June 30, 2011, the

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Sale Motion.

[3] Certain parties have filed Responses that relate to agreements to which the Debtors are not a party. To the extent such Responses are not otherwise resolved, the Debtors reserve all rights with respect to such parties, including with respect to their standing to seek relief from the Court related to the Sale.

[4] The Debtors reserve their right to file an additional reply to any further objections that may be filed on or prior to the Supplemental Objection Deadline, and to both file further supplemental pleadings and documents and to raise additional arguments in reply to the Responses and in further support of the Motion.

Debtors filed the Notice of Filing of Successful Bid [D.I. 5835], which announced the Successful Bid at the Auction and attached that certain asset sale agreement dated as of June 30, 2011, among NNI, Nortel Networks Limited ("NNL"), Nortel Networks Corporation ("NNC"), Nortel Networks UK Limited, Nortel Networks (Ireland) Limited (in administration), Nortel Networks S.A. (in administration and liquidation judiciaire) and certain other entities identified therein as sellers[5] (together, the "Sellers"), and the Purchaser (the "Sale Agreement").

4. A limited number of license counterparties and other parties filed Responses to the proposed sale. As set forth below, the Sale Agreement and other ancillary agreements with the Purchaser (collectively, the "Transaction Documents") either moot or resolve the majority of the Responses. The remaining issues raised by the Responses lack a valid legal basis and those Reponses should be overruled.

### Argument in Support of Reply

5. Generally, the Responses can be grouped into three categories: (i) Responses requesting clarity regarding the treatment of specific licenses or other agreements to which the objector is a party (the "License Related Responses"); (ii) Responses related to certain obligations to standard-setting bodies that may encumber the Purchased Assets (the "Standards Responses"); and (iii) other miscellaneous Responses (the "Other Responses").[6]

### I.     The License Related Responses Are Resolved By The Transaction Documents

6. Certain parties have, through the filing of license related Responses, sought comfort or clarity with respect to the classification of their agreements with the Sellers. The Sellers and the Purchaser have taken two steps to resolve License Related Responses. First, the

---

[5]  The Debtors who are Sellers include: NNI, NN Applications Management Solutions Inc., Nortel Altsystems, Inc. (previously "Alteon Networks, Inc."), CoreTek, Inc., Qtera Corporation and Xros, Inc.

[6]  To the extent a Response includes multiple arguments, it is identified in each of the relevant categories.

3

Sellers have revised Section 2.1.1(a) of the Sellers Disclosure Schedule, which lists Known Licenses, to include additions and amendments requested by certain objecting parties with respect to the identification of specific licenses. Pursuant to Section 2.1.1(a) of the Sale Agreement, the Purchased Assets shall be taken subject to any licenses listed on Section 2.1.1(a) of the Sellers Disclosure Schedule and entered into prior to the date of the Sale Agreement. Second, the Purchaser has executed a Commercial Licenses Acknowledgement (as attached hereto as Exhibit A, the "Acknowledgement"). Pursuant to the Acknowledgement, the Purchaser has agreed that certain agreements enumerated by objecting parties in the License Related Responses will be deemed to constitute Commercial Licenses for purposes of the Sale Agreement. Specifically, the Acknowledgement provides:

> All agreements listed in Schedule "A" hereto, as well as all amendments and supplements thereto (whether or not listed in Schedule "A") and all agreements that are substantially similar to those listed in Schedule "A" (and with licensing terms that are substantially similar to or no more broad than the licensing terms in the agreements listed in Schedule "A") and that are between any of the Sellers and the counterparties to the agreements listed in Schedule "A" and their respective affiliates, as well as all amendments and supplements thereto (collectively, the "**Subject Agreements**") shall be deemed to constitute Commercial Licenses.

7.      The chart attached hereto as Exhibit B summarizes the treatment of the licenses and other agreements enumerated in the License Related Responses under the Transaction Documents. The Debtors believe that the steps taken by the Sellers and Purchaser as described on Exhibit B either moot or resolve any valid License Related Responses in their entirety.

**II.     Provisions In The Transaction Documents Moot The Standards Objections**

8.      The entities identified on Exhibit C attached hereto have filed Responses seeking comfort or clarification with respect to the manner in which certain obligations to standards-setting bodies are being affected by the proposed sale. In order to address such Responses, the

Purchaser and the Sellers have agreed to include provisions in the Transaction Documents as set forth below.

9. First, the relevant sections of the definition of the term Permitted Encumbrances in the Sale Agreement has been revised as follows:

> . . . (x) the promises, declarations and commitments granted, made or committed in writing by the Sellers to standard-setting bodies or industry groups concerning the Transferred Patents, Purchased Specified UK Patents or Undisclosed Patent Interests, ~~solely to the extent such standard setting bodies or industry groups, together with the title and number of the standard and the Transferred Patents to which such promises, declarations or commitments apply (in each case, to the extent identified in the respective promise, declaration or commitment) are listed in Section 1.1(g) of the Sellers Disclosure Schedule,~~ and (y) the commitments concerning the Transferred Patents, Purchased Specified UK Patents or Undisclosed Patent Interests granted in writing by the Sellers pursuant to the membership agreements, by-laws or policies of standard-setting bodies or industry groups in which Sellers were participants, ~~solely to the extent such standard-setting bodies or industry groups and the related membership agreements, by-laws or policies, pursuant to which such commitments were granted are listed in Section 1.1(g) of the Sellers Disclosure Schedule, and~~ solely to the extent the Sellers are bound by such standard-setting bodies' or industry groups' membership agreements, by-laws or policies to bind the Purchaser to such commitments.[7]

By this amendment, the obligations to standard-setting bodies and industry groups that constitute Permitted Encumbrances are not limited merely to those identified on a schedule to the Sale Agreement.

10. Second, the Sellers and the Purchaser have agreed to add language to the U.S. Sale Order[8] confirming that the Purchased Assets will not be sold free and clear of "Standards Obligations," where "Standards Obligations" is defined as:

> to the extent valid and enforceable under applicable non-bankruptcy law, any promises, declarations and commitments granted, made or committed in writing

---

[7]  This provision is marked to indicate the revisions of the Sale Agreement against the Stalking Horse Sale Agreement.

[8]  Similar language is included in the revised form of the Canadian Approval and Vesting Order filed with the Canadian Court.

5

by the Sellers to standard-setting bodies concerning the licensing of any of the Transferred Patents, Purchased Specified UK Patents or Undisclosed Patent Interests (including those commitments contained in the membership agreements, by-laws or policies of standard-setting bodies), whether or not listed in Section 1.1(g) of the Sellers Disclosure Schedule.

11. The Debtors believe that, when taken in combination, the inclusion of the provisions in the Transaction Documents fully addresses and resolves any legal obligations of the Debtors and the Purchaser in connection with the proposed sale.

### III. The Other Responses Lack A Valid Legal Basis

12. Attached as Exhibit D hereto is a list of other Responses to the Motion, which do not fall into the categories described above. Although the Debtors believe that each of the Other Responses is addressed by the existing Transaction Documents or otherwise without a valid legal basis, the Sellers and the Purchaser continue to work to resolve each Response prior to the Sale Hearing. The Debtors will update the Court as more information regarding the resolution of the Responses becomes available.

WHEREFORE, the Debtors respectfully request that this Court (i) grant the Motion, and the relief requested therein, including approval of the Sale Agreement and the sale of the Purchased Assets to the Purchaser, (ii) overrule the Responses to the extent the Responses are not withdrawn prior to the Sale Hearing, and (iii) grant such other and further relief as it deems just and proper.

Dated: July 6, 2011
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989
*Counsel for the Debtors and Debtors in Possession*

– and –

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

*/s/ Raymond H. Lemisch*
Raymond H. Lemisch, Esquire (No. 4204)
Jennifer R. Hoover, Esquire (No. 5111)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
Telephone: (302) 442-7006
Facsimile: (302) 442-7012
*Special Counsel to the Debtors with respect to the EADS, Nokia and AT&T Responses*