## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
           :
           :    Chapter 11
           :
*In re*         :    Case No. 09-10138 (KG)
           :
Nortel Networks Inc., *et al.*,[1]  :
           :    Jointly Administered
        Debtors.  :
           :    **Hearing date: July 11, 2011 at 9:30 a.m.**
           :    **(ET) (proposed)**
           :    **Objections due: July 10 at 12:00 p.m. (ET)**
           :    **(proposed)**
---------------------------------------------------------X

## DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND
## 363(b) FOR ENTRY OF AN ORDER APPROVING THE
## AMENDED AND RESTATED IP TRANSACTION SIDE AGREEMENT RE
## CERTAIN STRUCTURAL MATTERS AND GRANTING RELATED RELIEF

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors") hereby move this Court (the "Motion") for the entry of

an order, substantially in the form attached hereto as Exhibit A, approving that certain Amended

and Restated IP Transaction Side Agreement re: Certain Structural Matters dated June 29, 2011

attached hereto as Exhibit B (the "Side Agreement"), entered into by and among NNI, Nortel

Networks Limited ("NNL"), Nortel Networks Corporation ("NNC"), Nortel Networks UK

Limited (in administration), Nortel Networks (Ireland) Limited (in administration), Nortel

Networks S.A. (in administration and liquidation judiciaire), Nortel Networks France S.A.S. (in

administration) and Nortel GmbH (in administration) and certain other entities identified therein

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable

(collectively, the "Sellers"), the Joint Administrators (as defined below) and the French

Liquidator (as defined therein); and granting them such other and further relief as the Court

deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 363(b)

of title 11 of the United States Code (the "Bankruptcy Code").

## Background

A.      **Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate their remaining businesses and manage their properties as debtors in possession pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

---

Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code
on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases
for procedural purposes [D.I. 1098].

5.      On the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL, and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it was unable to maximize value through sales.  Since then, Nortel has sold its various business units and other assets to various purchasers.  Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

## Relief Requested

7.     By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, (a) approving the terms and conditions of the Side Agreement, and (b) granting such related relief as the Court deems just and appropriate.

## Facts Relevant to this Motion

**A.     The Interim Funding and Settlement Agreement**

8.     On June 9, 2009, the Debtors, the Canadian Debtors, the EMEA Debtors and the Joint Administrators entered into an Interim Funding and Settlement Agreement (the "IFSA") [5] governing certain intercompany matters, including the obligations of the parties to the IFSA with respect to the negotiation of an allocation protocol and the ultimate allocation of Sale Proceeds (as defined in the IFSA) from Sale Transactions (as defined in the IFSA), as more fully set forth therein.  On June 29, 2009, this Court entered an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 993].

**B.     Sale of Nortel's Residual Patents**

9.     On April 4, 2011 the Debtors filed a motion to sell their interest in Nortel's residual patents [D.I. 5202], and following an auction in accordance with the bidding procedures approved by this Court [D.I. 5359] entered into an asset sale agreement dated June 30, 2011 (the "Sale Agreement") by and among Rockstar Bidco, LP (the "Purchaser") and NNI, NNL, NNC, Nortel Networks UK Limited (in administration), Nortel Networks (Ireland) Limited (in administration), Nortel Networks S.A. (in administration and liquidation judiciaire), Nortel Networks France S.A.S. (in administration) and Nortel GmbH (in administration), certain other

---

[5]     The summaries and descriptions of the terms and conditions of the IFSA set forth in the Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such.  The summaries and descriptions are qualified in

entities identified therein as sellers, the Joint Administrators and the French Liquidator, which agreement is subject to Court approval.  A joint hearing of this Court and the Canadian Court to consider the sale of Nortel's residual patent assets to the Purchaser is scheduled for July 11, 2011.

## C.    The Side Agreement

10.    In connection with the entry into the Sale Agreement, and pursuant to the framework set forth in the IFSA, the Debtors and certain other Nortel entities negotiated the Side Agreement[6] to address certain issues among the Parties raised by their entry into the Sale Agreement, including certain issues related to the tax treatment of the Transaction proposed in the Sale Agreement.

11.    Certain terms of the Side Agreement are as follows:

- Collection of Total Proceeds.  The Parties have agreed that, subject to the IP Transaction Side Agreement, in accordance with Section 12 of the IFSA, any payment due by the Purchaser (and any designated purchaser) to the Nortel Parties under the Sale Agreement that is included in the Total Proceeds shall be collected and held in escrow by the Distribution Agent (as agent for the Sellers).

- Direct Canadian Payment.  The Parties have agreed that, (i) at the Closing, NNL shall receive a payment of US$15,000,000 from the Purchaser in respect of certain tax attributes, which amount shall be paid by the Purchaser in addition to the Purchase Price (as defined in the Sale Agreement), (ii) the Canadian Debtors shall have no right to seek a further allocation of the Total Proceeds based on such tax attributes of the Canadian Debtors as are or may be used in connection with the Transaction, and that (iii) subject to receipt of such funds, the use of such tax attributes shall not, and shall not be deemed to, determine, ratify, adopt or have any further impact whatsoever on the

---

their entirety by the IFSA.  In the event there is a conflict between the Motion and the IFSA, the IFSA shall control in all respects.

[6]    Capitalized terms used in this section but not defined herein have the meanings ascribed to them in the Side Agreement.  To the extent that there are inconsistencies between the description of the provisions of the Side Agreement contained in this Motion and the terms and conditions of the Side Agreement, the terms and conditions of the Side Agreement shall control.

allocation of proceeds from the Transaction among the Sellers.

- License/Patent Designation.  The Parties have agreed that if, in connection with the Transaction, the Purchaser provides for separate consideration to be paid for the intellectual property license being granted to the Purchaser or its affiliates by one or more of the Sellers including any waivers or consents granted by the Sellers in relation to such license (the "IP License"), on the one hand, and the other Assets being transferred to the Purchaser by the Sellers on the other, or otherwise ascribes or allocates a portion of the Total Proceeds or a value to such IP License, on the one hand, and to the other Assets being transferred on the other (any such separate consideration or allocation, a "License/Patent Designation"), the Parties agree that any such License/Patent Designation or the structure of both the IP License and any waiver or consent in relation to the IP License shall not, and shall not be deemed to, determine, ratify, adopt or have any impact whatsoever on the allocation of proceeds from the Transaction among the Sellers, and it is the express intent of the Parties that the allocation of the Total Proceeds shall be effected as if the Transaction had been structured so that the Total Proceeds were paid in consideration for the sale of the Assets in a manner similar to that provided in the Stalking Horse Agreement.  Additionally, the Parties agree to oppose and to cooperate in opposing the use of the License/Patent Designation or the structure of both the IP License and any waiver or consents in relation to the IP License by any entity before any dispute resolver(s) appointed pursuant to the Interim Sales Protocol, any court, or such other judicial or quasi-judicial body or similar authority that may determine the allocation or distribution of the Total Proceeds, in a manner inconsistent with this Agreement.

- Tax Cooperation.  The Parties have agreed that (i) in the event that the preparation or filing of a Tax Return could reasonably be expected to require a Partial Allocation  or a Seller is preparing any Partial Allocation with the Purchaser (whether by agreement or submission to the Accounting Arbitrator), the Seller responsible for filing such Tax Return or preparing such Partial Allocation shall provide notice to the other Sellers and shall consider in good faith any comments by the other Sellers with respect to such Tax Return and any Partial Allocation related thereto, provided, and for the avoidance of doubt, that the other Sellers shall not have a consent or veto right with respect to such Tax Returns or Partial Allocations related thereto, (ii) any such Partial Allocation, the filing of a Tax Return by the Purchaser or any Valuation shall not, and shall not be deemed to, determine, ratify, adopt or have any impact whatsoever on the allocation of proceeds from the Transaction among the Sellers and (iii) in the event a Party becomes aware that the Purchaser or a designated purchaser intends to deduct and withhold an amount from the Transaction proceeds as may be contemplated by the Sale Agreement (a "Withholding"), such Party shall forthwith consult with each of NNL, NNI and NNUK with respect to such Withholding.

6

**Basis for Relief**

12.     The relief requested in this Motion is authorized by sections 105(a) and 363(b) of

the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may

issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11

U.S.C. § 105.  See In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting

that section 105(a) of the Bankruptcy Code "has been construed to give a bankruptcy court

'broad authority' to provide equitable relief appropriate to assure the orderly conduct of

reorganization proceedings."); In re VII Holdings Co., 362 B.R. 663, 668 (Bankr. D. Del. 2007)

(BLS) (noting that "[s]ection 105(a) bestows broad equitable powers on the Court.") (citing In re

Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004)).

13.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease

property of the estate outside of the ordinary course of business after notice and a hearing.  11

U.S.C.  § 363.  Section 363 applies when an agreement involves the disposition of the estate's

assets in a way that ventures beyond an ordinary course transaction.  Myers v. Martin (In re

Martin), 91 F.3d 389, 395 (3d Cir. 1996).

14.     The use or transfer of estate property under section 363 of the Bankruptcy Code

must be supported by a sound business purpose.  Comm. of Equity Sec. Holders v. Lionel Corp.

(In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-

4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v.

Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153

(D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); Travelers

Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4

(D.N.J. Mar. 25, 2008).  A court determining whether a sound business purpose justifies the

transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike."   In re Montgomery Ward, 242 B.R. at 153-54 (quoting In re Lionel, 722 F.2d at 1071).  In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided, and that it is receiving fair and reasonable value in exchange.  See In re Delaware & Hudson Ry. Co., 124 B.R. at 176; In re Decora Indus., Inc., 2002 WL 32332749, at *2.

15.     The Debtors respectfully submit that the Side Agreement meets each of the requirements under section 363 of the Bankruptcy Code.  The Side Agreement is supported by a sound business purpose because cooperation amongst the Sellers is essential to maximizing value in connection with the sale of Nortel's residual patents, particularly given the ongoing creditor protection proceedings in various jurisdictions.  The Debtors entered into the Side Agreement in order to facilitate cooperation amongst the Parties in working towards completion of the sale to the Purchaser and to determine the allocation of the benefits and burdens of the transaction.

## Notice

16.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) counsel to the Purchaser, (ii) U.S. Trustee; (iii) Monitor (iv) counsel to the Committee; (v) counsel to the Bondholder Group; (vi) counsel to the Joint Administrators; and (vii) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

17.     No prior request for the relief sought herein has been made to this or any other court.

8

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: July 6, 2011
   Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*