## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Nortel Networks Inc., et al.,[1] | Bankr. Case. No. 09-10138 (KG) |
| Debtors. | (Jointly Administered) |
| | **Objections Due: August 1, 2011 at 4:00 p.m.** |
| | **Hearing Date: August 23, 2011 at 10:00 a.m.** |

## MOTION OF EDMUND B. FITZGERALD FOR
## RELIEF FROM THE AUTOMATIC STAY

Edmund B. Fitzgerald ("Fitzgerald"), an individual, out of an abundance of caution, hereby moves for relief from the automatic stay imposed by 11 U.S.C. § 362(a), so that he may commence an action in the CCAA proceedings of Nortel Networks Limited ("Nortel Canada") in the Superior Court of Justice, Ontario, Canada to declare rights with respect to a certain Annuity (as described below).  In support hereof, Fitzgerald states as follows:

### PRELIMINARY STATEMENT

1.      Fitzgerald, as former Chairman and CEO of Northern Telecom Limited n/k/a Nortel Networks Ltd. ("Nortel Canada"), is entitled to certain retirement benefits arising out of and as a result of his employment by Nortel Canada including, as set forth in more detail below, certain Special Retirement Benefits, Supplementary Pensions and a Supplementary Retirement Benefit/Annuity (the "Annuity").  This Motion currently only seeks stay relief with respect to issues arising out of the Annuity.

---

[1]    In addition to Nortel Networks Inc. ("NNI"), the Debtors in the Chapter 11 cases are: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA").  Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

3113962/1

2.      On June 25, 2010, as set forth in more detail below, Justice Morawetz, in connection with the CCAA proceedings, issued his Endorsement directing that certain former employees of Nortel Canada were entitled to payments under annuities notwithstanding that Nortel Canada was listed as the "owner" of the annuities, where the former employees were listed as the "annuitant." The annuities were found to be held in trust for the benefit of the annuitants.

3.      Fitzgerald is also a former employee of Nortel Canada, having retired therefrom in 1990. Likewise, he was issued an Annuity upon which payments have now stopped. For reasons unknown to Fitzgerald, Northern Telecom, Inc., a U.S. entity now known as Nortel Networks, Inc. ("Nortel US") and a debtor herein, Fitzgerald's Annuity lists Nortel US as the "Contract Holder" with Fitzgerald nonetheless being identified as the "Annuitant." Because of Nortel US's identification as the "Contract Holder," Fitzgerald has been threatened by Nortel Canada and Nortel US with claims of possible stay violations should he seek to assert claims similar to those raised by other Canadian employees in the CCAA proceedings of Nortel Canada without first obtaining stay relief. Accordingly, Fitzgerald is moving for relief from the automatic stay so that he may assert and prosecute his rights to the Annuity in the CCAA proceedings. In support hereof, Fitzgerald states as follows:

## BACKGROUND

4.      In 1980, Fitzgerald, an individual, was recruited by Walter Light, former Nortel Canada Chairman and Chief Executive Officer, and Jean de Grandpre, then serving on the Board of Directors of Nortel Canada to serve as Nortel Canada's Chief Executive Officer. Prior to assuming that position in 1984, however, Fitzgerald first worked on a temporary basis as the

Chief Executive Officer of Nortel US, since significant reorganizing was required at the U.S. level.

5.       In 1982, Fitzgerald assumed the position of President and Chief Operating Officer of Nortel Canada.  In 1984, Fitzgerald became Chairman and Chief Executive Officer of Nortel Canada.  He held those positions until he retired from Nortel Canada on June 30, 1990.

6.       As part of his compensation and retirement benefit package, Fitzgerald received certain Special Retirement Benefits, Supplementary Pension benefits, and an Annuity.

**I.       The Special Retirement Benefit.**

7.       On January 19, 1984, Nortel Canada and Fitzgerald entered into a Memorandum of Agreement (the "1984 MOA"), a copy of which is attached hereto as <u>Exhibit A</u>, which provided that Fitzgerald would receive a Special Retirement Benefit from Nortel Canada in recognition of his significant contributions to the company.  This benefit was to be paid "[i]n lieu of any benefit or pension to which [Fitzgerald] may, in the future, become entitled to receive under the Northern Telecom Managerial and Non-negotiated Pension Plan . . .or the pension plan of any of its subsidiaries."

8.       The benefits payable under the 1984 MOA was based on a formula that considered credited service and final average remuneration.

**II.      The Supplementary Pension.**

9.       On February 24, 1987, Nortel Canada and Fitzgerald entered into a Memorandum of Agreement (the "1987 MOA"), a copy of which is attached hereto as <u>Exhibit B</u>, which provided that he would receive a "Supplementary Pension" in recognition of his service, in the amount of $1,417.00 USD per month.

10.     On February 10, 1988, Nortel Canada and Fitzgerald entered into an Amending Agreement (the "1988 MOA"), a copy of which is attached hereto as Exhibit C, which modified certain provisions of the 1987 MOA and increased the amount of the Supplementary Pension to $2,792.00 USD per month.  In accordance with the provisions of the 1988 MOA, the Board of Directors of Nortel Canada increased the value of the Supplementary Pension to $4,566.67 USD per month.

**III.    The Annuity.**

11.     On June 24, 1986, Terminal Funding Annuity Contract S-0179-A was executed by Sun Life Assurance Company ("Sun Life") with an effective date of October 1, 1985 (the "Master Contract"), a copy of which is attached hereto as Exhibit D.  On May 22, 1990, shortly prior to Fitzgerald's retirement, George P. Thomson, then Assistant Vice President of Executive Administration at Nortel Canada, sent - on Nortel Canada letterhead – a letter to Mr. L.G. Nobel of Sun Life confirming the request to purchase an Annuity in Fitzgerald's name.  The letter, a copy of which is attached hereto as Exhibit E, stated, "This annuity purchase relates to Mr. Fitzgerald's Thrift/Savings Plan savings which cannot be made available until his retirement on July 1, 1990."  In addition, the letter provided, "We understand that the monthly payments will be US $4,004.77 and that the premium payment will be approximately US $395,000. . . . Northern Telecom will forward a cheque in this amount to you."

12.     Thereafter, a Group Pension Immediate Annuity Certificate No. 11 was issued naming Fitzgerald as the Annuitant.  A copy of the Certificate is attached here to as Exhibit F. Both the covering letter to the benefits entitlement summary and the summary of pension and estimates of other supplementary retirement income state that the Annuity related to Fitzgerald's Thrift/Savings Plan.

13.     At the time Fitzgerald entered into all the aforementioned agreements, he was an executive of Nortel Canada working at its Canadian head office.  He did not work for Nortel US after 1982.  At the time of his retirement, Fitzgerald was working in Canada for Nortel Canada.

## IV.    Cessation Of Payments.

14.     From his retirement in 1990 until December 2008 and January 2009, Fitzgerald received payments for the Special Retirement Benefit, the Supplementary Pension and the Annuity.  A portion of the benefits stopped on December 2008.  By January 2009, all three payments had stopped, including the Annuity.

## V.    Canadian Court Rules For Former Employees Of Nortel Canada.

15.     In connection with the proceedings involving Nortel Canada pursuant to the Companies' Creditors Arrangement Act pending in the Superior Court of Justice, Ontario, Canada (the "CCAA proceedings"), certain former employees of Nortel Canada commenced an action to recover payments owed to such former employees pursuant to certain annuities on which the employees were listed as the Annuitants and on which Nortel Canada was listed as the "Owner."   The payments to former employees under the annuities had stopped upon commencement of the CCAA proceedings.

16.     Following briefing and litigation, on June 25, 2010, Justice Morawetz directed Nortel Canada to pay the annuity proceeds to Canadian executives who were entitled to annuity payments under the Canadian-based Sun Life annuity contracts.  In doing so, Justice Morawetz determined that the annuities were akin to trusts where funds were essentially segregated from Nortel Canada's general assets through transfers to Sun Life, and that Nortel Canada was a mere conduit through which the payments were made.  A true and correct copy of Justice Morawetz's Endorsement is attached hereto as Exhibit G.

VI.    **Fitzgerald To Commence An Action In The CCAA Proceedings.**

17.    As a former employee of Nortel Canada, and a holder of an annuity under a Sun Life annuity contract, Fitzgerald wishes to assert rights to his Annuity in the CCAA proceedings on a basis similar to the action already litigated by other former employees of Nortel Canada. Fitzgerald, however, has been threatened with claims that he would be violating the automatic stay imposed by this Court should he attempt to do so.  The basis for such threats is that, for reasons unknown to Mr. Fitzgerald and contrary to what Fitzgerald anticipated, the Contract Holder of his Annuity is listed as Nortel US and not Nortel Canada.  As such, Fitzgerald has been told that his Annuity, unlike the annuities of other former employees of Nortel Canada, is owned by the U.S. debtor, and is therefore subject to the jurisdiction of this Court and is subject to the automatic stay imposed by this Court.

18.    Fitzgerald believes that, notwithstanding that Nortel US is listed as the Contract Holder of his Annuity, it is a distinction without a meaningful difference.  Fitzgerald, like other former employees of Nortel Canada, was employed by and retired from Nortel Canada.  Like the former employees of Nortel Canada, Fitzgerald is listed as the "Annuitant" under the Annuity. Fitzgerald has no understanding of why the Contract Holder is Nortel US.  Fitzgerald believes that stay relief should be granted to him to allow him to proceed with his claim as to the Annuity in the CCAA proceedings.

## FITZGERALD IS ENTITLED TO RELIEF FROM THE STAY

19.    Section 362(a) of the Bankruptcy Code provides that "a petition filed under section 301, 302, or 303 of this title operates . . . as a stay, applicable to all entities, of any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).  A debtor's estate is comprised of "all legal and

equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §

541(a)(1). The bankruptcy estate also includes "[p]roceeds . . . of or from property of the estate," 11

U.S.C. § 541(a)(6), and "[a]ny interest in property that the estate acquires after the commencement

of the case." 11 U.S.C. § 541(a)(7).

20.     "On request of a party in interest and after notice and a hearing, the court shall grant

relief from the stay . . . for cause." 11 U.S.C. § 362(d)(1). "Cause" is not defined by the

Bankruptcy Code. Consequently, a Bankruptcy Court must decide what constitutes "cause" to

lift the automatic stay on a case-by-case basis. *In re: Rexene Products Company*, 141 B.R. 574,

576 (Bankr. D. Del. 1992), citing *In re: Fernstrom Storage and Van Co.*, 938 F.2d, 731, 735 (7th

Cir. 1991); *American Airlines, Inc. v. Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del.

1993). The legislative history of Section 362 states that cause may be established by a single

factor such as "a desire to permit an action to proceed ... in another tribunal," or "lack of any

connection with or interference with the pending bankruptcy case." *In re: Rexene*, 141 B.R. at

576 citing H.R.Rep. No. 95-595, 95th Cong, 1st Sess., 343-44(1977). Generally, however, in

balancing the interests of the debtor and the movant, three factors are considered: "(1) the

prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing

the parties; and (3) the probable success on the merits if the stay is lifted." *American Airlines*,

152 B.R. at 424.

21.     As discussed below, the granting of Fitzgerald's motion will not result in

prejudice to the Debtors, but the denial of the motion will cause severe prejudice to Fitzgerald,

and there is a definite probability that Fitzgerald will prevail on the merits of action. In addition,

granting Fitzgerald's motion will not contravene any of the policies underlying the automatic

stay.

I.      **Lifting the stay will not prejudice the Debtors.**

22.     Allowing Fitzgerald to commence his action in the CCAA proceedings will cause little, if any, prejudice to the Debtors. The Debtors and the other former employees have already been involved in similar litigation in Canada. Thus, the Debtors are well poised to be able to address Fitzgerald's claims promptly and with a minimum of effort. The Debtors have counsel in Canada and this proposed litigation will be of minimal impact on the Debtors.

23.     Likewise, resolving Fitzgerald's claim to the Annuity, before a court that is already well versed in the issues relating to the annuities, will benefit the Debtors by declaring the rights of the Debtors and Fitzgerald to the Annuity.

24.     While it is true that the Debtors may undoubtedly incur some costs in litigating the proposed action, such costs are inevitable. Fitzgerald's and the Debtors' dispute with respect to Fitzgerald's entitlement to the Annuity will have to be litigated at some point in this Court or in Canada, and the Debtors will incur costs at whatever stage that occurs. The fact that the Debtors may incur litigation costs does not provide a claim of prejudice necessary to overcome Fitzgerald's motion. For example, The Court of Appeals for the Third Circuit has declared that litigation expenses do not constitute an injury sufficient to justify the enjoining of litigation against a debtor. *In re Davis*, 691 F.2d 176, 178 (3d Cir. 1982). Indeed, "Courts have generally not ascribed much significance to the fact that a Debtor will have to participate in litigation." *In re Winterland*, 101 B.R. 547, 549 (Bankr. C.D. Ill. 1988), citing *In re Bock Laundry Mach. Co.*, 37 B.R. 564, 567 (Bankr. N.D. Ohio 1984). Thus, there is no cognizable prejudice to the Debtors' estates in granting Fitzgerald's motion.

II.     **Balancing the hardships weighs in favor of lifting the stay.**

25.     In contrast to the lack of prejudice to the Debtors, the harm that Fitzgerald will sustain if relief is not granted is significant.  If Fitzgerald is not permitted to file and prosecute the action in Canada, Fitzgerald will be forced to commence a separate action here, when such a proceeding has already been litigated in Canada, the parties have knowledgeable counsel and both the Court and counsel have already dealt with similar issues.  Just as significantly, Fitzgerald, as a retiree from Nortel Canada, may also be potentially prejudiced to the extent of inconsistent rulings between the Bankruptcy Court and the Canadian Court when the only fact differentiating the employees in the action pending in Canada from Mr. Fitzgerald is that the Contract Holder of his Annuity was Nortel US.  This is at odds with Mr. Fitzgerald's 8 years of employment with Nortel Canada, is inconsistent with which entity was liable to Fitzgerald under his Thrift/Saving Plan, and is inconsistent with how other retiring Canadian annuitants were treated by Nortel Canada and have been treated by the Canadian Court.

26.     There is also a policy in favor of treating similarly situated parties similarly. "Equality of distribution among creditors is a central policy of the Bankruptcy Code." *Begier v. IRS*, 496 U.S. 53, 58 (1990).  This policy should not only require similar treatment of similarly situated creditors, it should, as a practical, fair and equitable matter, require similar treatment of all retirees from Nortel Canada, including Fitzgerald.  To deny Fitzgerald relief from this Court's stay while other former Canadian employees successfully obtain relief in Canada is extremely prejudicial to Fitzgerald.  A Court already familiar with Fitzgerald's type of claim has heard the claims of similarly situated former employees of Nortel Canada.  Fitzgerald should be entitled to the same opportunity.

27.     In addition to the policies favoring Fitzgerald proceeding in Canada, the Cross Border Insolvency Protocols entered in this case also weigh in favor of allowing Mr. Fitzgerald to

proceed in Canada. On or about December 17, 2007, the Canadian Court and the Delaware

Bankruptcy Court adopted a Cross Border Insolvency Protocol (the "Protocol"). A copy of the

Protocol is attached hereto as Exhibit H. The Protocol explained the intertwined nature of the

proceedings relating to Nortel US and Nortel Canada and in the Delaware Bankruptcy Court.

Among the goals and objectives of the Protocol was to:

> Promote the orderly and efficient administration of the Insolvency Proceedings to,
> among other things, maximize the efficiency of the Insolvency Proceedings,
> reduce the costs associated therewith and avoid duplication of effort;
>
> . . .
>
> Promote international co-operation and respect for comity among the Courts, the
> Debtors, the Creditors Committee, the Estate Representatives (which include the
> Chapter 11 Representatives and the Canadian Representatives . . . , and other
> creditors and interested parties in the Insolvency Proceedings.
>
> Facilitate the fair, open and efficient administration of the Insolvency Proceedings
> for the benefit of all of the Debtors' creditors and other interested parties,
> wherever located.

Further, the Protocol provided that:

> To harmonize and coordinate the administration of the Insolvency Proceedings,
> the U.S. Court and the Canadian Court each may coordinate activities and
> consider whether it is appropriate to defer to the judgment of the other Court:
>
> . . .

28.     The Protocol thus provided and contemplated fair and efficient administration of the

Insolvency Proceedings for the benefit of all of the creditors wherever located. Likewise, the

Protocol promoted comity between the Courts so that they could coordinate efforts that would avoid

duplication of effort.

29.     Here, denying stay relief to Fitzgerald would not only violate the fairness to which

Fitzgerald should be entitled as a former Canadian employee of Nortel Canada to be heard on a

matter relating to and arising from that employment, it would also likely result in duplication of

effort in these proceedings as similar issues would end up being litigated in both the Canadian and United States' Courts.

30.    In light of these considerations, the balance of hardships tips decisively in favor of granting Fitzgerald's motion.

**III.    Fitzgerald is likely to prevail on the merits.**

31.    Fitzgerald believes that, by virtue of Justice Morawetz's Endorsement of June 25, 2010, he will prevail on in any litigation regarding his rights to the Annuity payments. He is a similarly situated former employee of Nortel Canada. He retired from Nortel Canada, and should be treated like other former Canadian employees. Like the annuity payments referenced in the Endorsement, payments to Fitzgerald were paid by Sun Trust and simply passed through one of the Debtors to Fitzgerald. Given the strong Canadian policy in favor of protecting employee rights, and given Justice Morawetz's Endorsement that upheld those rights, Fitzgerald believes that this factor weighs in favor of granting him relief from the stay.

*[Remainder of page intentionally left blank]*

3113962/1                                                        11

## CONCLUSION

32.    For all the foregoing reasons, all factors weigh in favor of granting Fitzgerald's motion. Fitzgerald therefore respectfully requests that the Court enter an order in the form attached hereto as Exhibit I, granting relief from the automatic stay so that, like other former Canadian employees of Nortel Canada, Fitzgerald can commence and prosecute an action in the CCAA proceedings to recover the payments required under his Annuity.

Dated:  7/13 , 2011

**MORRIS JAMES LLP**

Carl N. Kunz, III (DE Bar No. 3201)
500 Delaware Avenue, Suite 1500
P. O. Box 2306
Wilmington, DE  19899-2306
Telephone:  302.888.6800
Facsimile:  302.571.1750
Email:  ckunz@morrisjames.com

*Counsel for Edmund B. Fitzgerald*

3113962/1                                    12