# **EXHIBIT P**

**(Amended and Restated Revolving Loan Agreement, dated December 29, 2005)**

### AMENDED AND RESTATED REVOLVING LOAN AGREEMENT (Interest Free)

THIS AMENDED AND RESTATED REVOLVING LOAN AGREEMENT (the "**Agreement**") is entered into as of the 29th day of December 2005 ("**Effective Date**"), by and between Nortel Networks UK Limited, a company incorporated in England, with its registered office at Maidenhead Business Park, Westacott Way, Maidenhead, Berkshire SL6 3QH, UK, represented herein by its duly authorised representative identified below (the "**Lender**") and Nortel Networks Limited, a company incorporated in Canada, with head offices at 8200 Dixie Road, ~~Suite~~ Brampton, Ontario L6T 5P6, Canada, herein represented by its authorised representative identified below (the "**Borrower**").

WHEREAS, the Lender desires to make periodic loan advances to the Borrower in exchange for an interest free obligation payable to the Lender at a future date.

AND WHEREAS, the Lender and Borrower had previously entered into a credit agreement dated 1st April 2005 ("the April 2005 Agreement") with respect to a credit facility of GBP 350,000,000.00 of which GBP 349,500,000.00 is outstanding (the "Current Outstanding Amount") as of the Effective Date (as defined above).

AND WHEREAS, it is the intention of the Lender and Borrower that, as of the Effective Date, this Agreement shall replace the April 2005 Agreement and that the Current Outstanding Amount shall henceforth be governed by the terms of this Agreement.

AND WHEREAS, as of the Effective Date, this Agreement supersedes the April 2005 Agreement for all purposes with respect to actions occurring either before or after the Effective Date, including without limitation, regarding the Current Outstanding Amount.

NOW THEREFORE, in consideration of the obligations described herein, the Lender and the Borrower agree as follows:

### ARTICLE 1 - DEFINITIONS

**Section 1.1   Defined Terms.** As used in this Agreement, the following terms have the following meanings:

"**Advance**" means any amount advanced by the Lender to the Borrower pursuant to Section 2.2;

"**Agreement**" means this revolving loan agreement between the parties hereto, including the Funding Report referred to herein and attached hereto, as either such document may be amended or supplemented in writing from time to time;

NNI_00161429

"**Banking Day**" means any day (other than a Saturday or Sunday) on which the banks are open for business in the United Kingdom and Canada.

"**Effective Date**" has the meaning set forth for such term in the first paragraph of this Agreement;

"**Funding Report**" means the schedule substantially in the form attached as Exhibit A hereto and hereby made a part hereof, which shall be completed in accordance with Section 2.3 hereof to reflect all Advances made under this Agreement;

"**Maximum Facility Amount**" means GBP 500,000,000.00 (Five Hundred Million Pounds Sterling); and

"**Term**" has the meaning set forth for such term in Section 2.4 hereof.

### ARTICLE 2 – THE FACILITY, REPORTS, TERM, COVENANT

**Section 2.1    Maximum Facility Amount; Revolver:** The Lender agrees to make Advances to the Borrower during the Term from time to time in accordance with this Agreement. The outstanding principal amount of all Advances may not exceed the Maximum Facility Amount. In the sole discretion of the Lender, amounts prepaid or repaid hereunder may be re-borrowed during the Term, so long as the total amount of Advances borrowed and not yet pre-paid or repaid does not at any time exceed the Maximum Facility Amount.

**Section 2.2    Advances:** The Lender shall make the Advances available to the Borrower on any Banking Day upon the Lender's receipt of a written request from the Borrower specifying the amount and date of a particular Advance, together with the bank account details.

**Section 2.3    Funding Report:** The Funding Report shall be prepared by the Lender on any Banking Day and updated by the Lender within five (5) days following any changes in the amount remaining due and payable under any Advance. A copy of the Funding Report shall be provided to the Borrower upon request. Each of the Borrower and the Lender hereby acknowledge, confirm and agree that all amounts set out in each Funding Report shall be considered true and correct, and shall be accepted by the Borrower and Lender and become a part of this Agreement, absent manifest error. However, the failure to prepare such Funding Report shall not affect the liability of the Borrower to the Lender in respect of the relevant indebtedness.

**Section 2.4    Term:** This Agreement shall continue in full force and effect from the Effective Date until the earlier of (the "Term"):

(a)    364 days from the Effective Date;

NNI_00161430

(b) The effective date of any notice delivered by either party to this Agreement to the other declaring a termination of this Agreement for any reason whatsoever, which effective date shall be no earlier than five (5) days following the other party's receipt of such notice; or

(c) Automatic termination without notice upon the occurrence of any of the following events:

(i) If the Borrower fails to pay any principal due with respect to any Advance made hereunder within five (5) business days of the due date thereof (unless such failure is cured, and this provision waived by the Lender);

(ii) If the Borrower generally does not pay its debts as they become due or admits in writing its inability to pay its debts generally or makes a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against the Borrower in any such case, seeking to adjudicate it bankrupt or insolvent, or seeking liquidation, winding up, reorganisation, arrangement, adjustment, protection, relief or composition of it or its debts under any law relating to bankruptcy, insolvency or reorganisation or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, custodian or other similar official for it or any substantial part of its property, and such proceeding shall remain undismissed or unvacated for a period of thirty (30) days, or any of the actions sought in any such proceeding shall be granted;

(iii) If the Borrower takes any corporate action to authorise any of the actions set forth in clause (ii) above in this Section 2.4(c); or

(iv) If the Borrower fails to observe the covenant set forth at Section 2.5 hereof.

**Section 2.5  Covenant--Material Adverse Change:** During the period in which any Advances are outstanding, the Borrower shall notify the Lender of any material adverse change in the business, financial position or results of operations of the Borrower, within ten (10) business days after any director or officer of the Borrower obtains actual knowledge of such material adverse change. Notwithstanding the foregoing, nothing contained in this Agreement shall prevent the Borrower, from amalgamating, merging or consolidating with or into any related party, affiliate or subsidiary.

NNI_00161431

## ARTICLE 3 - REPAYMENT

**Section 3.1    Repayment:** The principal outstanding in respect of all Advances, as documented in the Funding Report, is due and payable by the Borrower to the Lender on an interest free basis on the last day of the Term.

**Section 3.2    Prepayment:** The Borrower may, in its sole and absolute discretion, from time to time without notice, bonus or penalty, make prepayments in any amounts desired, on account of the principal outstanding on any Advance. If more than one Advance is outstanding at the time the Borrower elects to make a prepayment, the Borrower shall be entitled to specify the Advance to which the prepayment will apply.

**Section 3.3    Repayment upon Early Termination:** Upon the early termination of this Agreement pursuant to Section 2.4(b) or Section 2.4(c) hereof, a final Funding Report shall be prepared which shall indicate the Advances outstanding. The Borrower shall repay the total amount due in a manner and by a date agreed to by the parties but not later than the last day of the Term.

## ARTICLE 4 - REPRESENTATIONS AND WARRANTIES

**Section 4.1    Representations of the Borrower:** The Borrower represents and warrants to the Lender on the date hereof and on each date of an Advance that:

(a)    the Borrower is a corporation duly incorporated and validly existing under the laws of Canada;

(b)    the execution, delivery and performance by the Borrower of this Agreement (i) are within its corporate powers and have been duly authorized by all necessary corporate action, (ii) require no action by or in respect of or filing with, any governmental body, agency or official and (iii) do not contravene any provision of applicable law or its certificate of incorporation or by-laws or any material contractual restriction, order, decree or other instrument binding upon the Borrower (including without limitation any loan or other financing agreement), except, in the case of (ii) and (iii) above, any such action, filing or contravention which would not have a material adverse effect on the Borrower; and

(c)    as of the date hereof and the date of each Advance, the Borrower has not ceased paying its current obligations in the ordinary course of business as they generally become due.

**Section 4.2    Representations of the Lender:** The Lender represents and warrants to the Borrower on the date hereof and on each date of an Advance that:

4

(a)  the Lender is a corporation duly incorporated and validly existing under the laws of England; and

(b)  the execution, delivery and performance by the Lender of this Agreement (i) are within its corporate powers and have been duly authorized by all necessary corporate action, (ii) require no action by or in respect of or filing with, any governmental body, agency or official and (iii) do not contravene any provision of applicable law or its certificate of incorporation or by-laws or any contractual restriction, order, decree or other instrument binding upon the Lender, except, in the case of (ii) and (iii) above, any such action, filing or contravention which would not have a material adverse effect on the Lender.

## ARTICLE 5 - GENERAL PROVISIONS

**Section 5.1    Amendments to this Agreement:** This Agreement may be amended only by written agreement signed by both parties.

**Section 5.2    Waiver:** The Lender may waive in writing any breach by the Borrower of any of the provisions contained in this Agreement or any default by the Borrower in the observance or performance of any covenant or condition required to be observed or performed by the Borrower under this Agreement; provided that no act or omission by the Lender with regard to any such breach or default by the Borrower will be taken in any manner whatsoever to affect any subsequent breach or default or the rights resulting therefrom.

**Section 5.3    Notices:** Any request, notice or demand made or given in connection with this Agreement must be in writing and delivered to the relevant party at its address or facsimile number set forth below, or any other address or facsimile number that a party may direct:

if to the Borrower:

        Nortel Networks Limited
        8200 Dixie Road, Suite 100,
        Brampton, Ontario
        L6T 5P6
        Attention: Treasury Manager
        Facsimile number: 001 905-863-8259 (ESN 333-8259)

NNI_00161433

inner_view [https://v5.lextranet.com/lcs/customDB/omni/inner_view.lcs?session_key=64602_1308344202_1016572objectID=2067393uniqueID=0fileID=2141250tiPage 6 of 8

With copy to:              Attention: Corporate Secretary
                           Facsimile Number: 001 905 863 8386

if to the Lender:
                           Nortel Networks UK Limited
                           Maidenhead Business Park,
                           Westacott Way,
                           Maidenhead, Berkshire,
                           Attention: Loans Administration, Treasury Operations
                           Facsimile number: 00 44 1628 432884 (ESN 560 2136)

**Section 5.4   Assignment of Agreement:** All of the covenants, stipulations, promises and agreements in this Agreement shall bind the parties' respective successors and permitted assigns, whether so expressed or not; provided, however, that neither party may, without the prior written consent of the other, assign any rights, powers, duties, or obligations under this Agreement.

**Section 5.5   Headings:** The headings of this Agreement are included for convenience of reference only and do not constitute a part of this Agreement for any other purpose.

**Section 5.6   Governing Law:** This Agreement and all other documents and instruments referred to will be construed in accordance with and governed by the laws of England and the Courts of England will have jurisdiction over all disputes that may arise under it.

**Section 5.7   Severability:** If any term or provision of this Agreement shall be determined to be invalid or unenforceable in any situation in any jurisdiction, such invalidity or unenforceability shall not affect the validity or enforceability of the remaining terms and provisions hereof.

NNI_00161434

IN WITNESS WHEREOF, the parties hereto have caused this Revolving Loan Agreement to be executed by their duly authorized persons as of the Effective Date.

**NORTEL NETWORKS LIMITED**

By: _____
Name: **Katharine B. Stevenson**
Title: **Treasurer**

By: _____
Name: **Gordon A. Davies**
Title: **General Counsel – Corporate and Corporate Secretary**

**NORTEL NETWORKS UK LIMITED**

By: _____
Name: **Henry Birt**
Title: **Vice President F P&A EMEA**

By: _____
Name: **Christian Waida**
Title: **General Counsel EMEA**

NNI_00161435

LOAN FROM NORTEL NETWORKS UK LTD TO NORTEL NETWORKS LTD - SCHEDULE A UNDER REVOLVING LOAN AGREEMENT

| DATE | CCY | FACILITY AMOUNT | AMOUNT DRAWN / (REPAID) | NOTES | LOAN BALANCE | AVAILABLE BALANCE | INTEREST PERIOD FROM | TO | NO. OF DAYS | Interest Rate | Margin | All-in INT. Rate | INTEREST DUE | INTEREST PAID | DATE PAID | Quantum Deal No |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17-Dec-03 | GBP | 200,000,000.00 | -112,985,142.04 | Drawing Against Interco Position | -112,985,142.04 | 87,014,857.96 | 17-Dec-03 | 16-Jan-04 | 30 | N/A | N/A | N/A | N/A | N/A | N/A | 109983 109994 |
| 16-Jan-04 | GBP | 200,000,000.00 | 0.00 | rollover | -112,985,142.04 | 87,014,857.96 | 16-Jan-04 | 16-Feb-04 | 31 | N/A | N/A | N/A | N/A | N/A | N/A | 115989 115992 |
| 16-Feb-04 | GBP | 200,000,000.00 | 0.00 | rollover | -112,985,142.04 | 87,014,857.96 | 16-Feb-04 | 19-Mar-04 | 32 | N/A | N/A | N/A | N/A | N/A | N/A | 117021 117022 |
| 19-Mar-04 | GBP | 200,000,000.00 | 0.00 | rollover | -112,985,142.04 | 87,014,857.96 | 19-Mar-04 | 20-Apr-04 | 32 | N/A | N/A | N/A | N/A | N/A | N/A | 119505 119506 |
| 20-Apr-04 | GBP | 200,000,000.00 | -23,715,754.95 | Drawing Against Interco Position | -136,701,896.99 | 63,298,103.01 | 20-Apr-04 | 20-May-04 | 0 | N/A | N/A | N/A | N/A | N/A | N/A | |
| 20-Apr-04 | GBP | 200,000,000.00 | 0.00 | rollover | -136,701,896.99 | 63,298,103.01 | 20-Apr-04 | 21-May-04 | 31 | N/A | N/A | N/A | N/A | N/A | N/A | 123111 123112 |
| 21-May-04 | GBP | 200,000,000.00 | 0.00 | rollover | -136,701,896.99 | 63,298,103.01 | 21-May-04 | 21-Jun-04 | 31 | N/A | N/A | N/A | N/A | N/A | N/A | 125899 125900 |
| 21-Jun-04 | GBP | 200,000,000.00 | 0.00 | rollover | -136,701,896.99 | 63,298,103.01 | 21-Jun-04 | 23-Jul-04 | 32 | N/A | N/A | N/A | N/A | N/A | N/A | 128471 128472 |
| 23-Jul-04 | GBP | 200,000,000.00 | 0.00 | rollover | -136,701,896.99 | 63,298,103.01 | 23-Jul-04 | 23-Aug-04 | 31 | N/A | N/A | N/A | N/A | N/A | N/A | 133258 133257 |
| 23-Aug-04 | GBP | 200,000,000.00 | -27,298,103.01 | Drawing Against Interco Position | -164,000,000.00 | 36,000,000.00 | 23-Aug-04 | 17-Sep-04 | 25 | N/A | N/A | N/A | N/A | N/A | N/A | 135360 135363 |
| 17-Sep-04 | GBP | 200,000,000.00 | 0.00 | rollover | -164,000,000.00 | 36,000,000.00 | 17-Sep-04 | 17-Sep-04 | 0 | N/A | N/A | N/A | N/A | N/A | N/A | |
| 17-Sep-04 | GBP | 200,000,000.00 | 0.00 | rollover | -164,000,000.00 | 36,000,000.00 | 17-Sep-04 | 18-Oct-04 | 31 | N/A | N/A | N/A | N/A | N/A | N/A | 137282 137283 |
| 18-Oct-04 | GBP | 200,000,000.00 | 0.00 | rollover | -164,000,000.00 | 36,000,000.00 | 18-Oct-04 | 29-Oct-04 | 11 | N/A | N/A | N/A | N/A | N/A | N/A | 140028 140029 |
| 29-Oct-04 | GBP | 250,000,000.00 | 0.00 | rollover | -164,000,000.00 | 85,000,000.00 | 29-Oct-04 | 25-Nov-04 | 27 | N/A | N/A | N/A | N/A | N/A | N/A | 141046 141047 |
| 25-Nov-04 | GBP | 250,000,000.00 | -30,000,000.00 | Drawing Against Interco Position | -194,000,000.00 | 56,000,000.00 | 25-Nov-04 | 17-Dec-04 | 22 | N/A | N/A | N/A | N/A | N/A | N/A | 143314 143315 |
| 17-Dec-04 | GBP | 250,000,000.00 | 0.00 | rollover | -194,000,000.00 | 56,000,000.00 | 17-Dec-04 | 17-Jan-05 | 31 | N/A | N/A | N/A | N/A | N/A | N/A | 144885 144886 |
| 17-Jan-05 | GBP | 250,000,000.00 | 0.00 | rollover | -194,000,000.00 | 56,000,000.00 | 17-Jan-05 | 18-Feb-05 | 32 | N/A | N/A | N/A | N/A | N/A | N/A | 146877 146878 |
| 18-Feb-05 | GBP | 250,000,000.00 | -36,000,000.00 | Drawing Against Interco Position | -230,000,000.00 | 20,000,000.00 | 18-Feb-05 | 18-Mar-05 | 28 | N/A | N/A | N/A | N/A | N/A | N/A | 148420 150421 |
| 18-Mar-05 | GBP | 250,000,000.00 | 0.00 | rollover | -230,000,000.00 | 20,000,000.00 | 18-Mar-05 | 22-Apr-05 | 35 | N/A | N/A | N/A | N/A | N/A | N/A | 152603 152604 |
| 22-Apr-05 | GBP | 250,000,000.00 | 0.00 | rollover | -230,000,000.00 | 20,000,000.00 | 22-Apr-05 | 20-May-05 | 28 | N/A | N/A | N/A | N/A | N/A | N/A | 155770 155771 |
| 20-May-05 | GBP | 350,000,000.00 | 0.00 | rollover | -230,000,000.00 | 120,000,000.00 | 20-May-05 | 20-Jun-05 | 31 | N/A | N/A | N/A | N/A | N/A | N/A | 158068 158072 |
| 20-Jun-05 | GBP | 350,000,000.00 | -38,000,000.00 | Drawing Against Interco Position | -268,000,000.00 | 82,000,000.00 | 20-Jun-05 | 20-Jul-05 | 30 | N/A | N/A | N/A | N/A | N/A | N/A | 160035 160037 |
| 20-Jul-05 | GBP | 350,000,000.00 | 0.00 | rollover | -268,000,000.00 | 82,000,000.00 | 20-Jul-05 | 22-Aug-05 | 33 | N/A | N/A | N/A | N/A | N/A | N/A | 162850 162851 |
| 22-Aug-05 | GBP | 350,000,000.00 | 0.00 | rollover | -268,000,000.00 | 82,000,000.00 | 22-Aug-05 | 26-Sep-05 | 35 | N/A | N/A | N/A | N/A | N/A | N/A | 165137 165138 |
| 26-Sep-05 | GBP | 350,000,000.00 | -81,500,000.00 | Drawing Against Interco Position | -349,500,000.00 | 500,000.00 | 26-Sep-05 | 24-Oct-05 | 28 | N/A | N/A | N/A | N/A | N/A | N/A | 167552 167553 |
| 24-Oct-05 | GBP | 350,000,000.00 | 0.00 | rollover | -349,500,000.00 | 500,000.00 | 24-Oct-05 | 21-Nov-05 | 28 | N/A | N/A | N/A | N/A | N/A | N/A | 169746 169747 |
| 21-Nov-05 | GBP | 500,000,000.00 | 0.00 | rollover | -349,500,000.00 | 150,500,000.00 | 21-Nov-05 | 16-Dec-05 | 25 | N/A | N/A | N/A | N/A | N/A | N/A | 172014 172015 |
| 16-Dec-05 | GBP | 500,000,000.00 | 0.00 | rollover | -349,500,000.00 | 150,500,000.00 | 16-Dec-05 | 16-Jan-06 | 31 | N/A | N/A | N/A | N/A | N/A | N/A | 174152 174153 |
| 16-Jan-06 | GBP | 500,000,000.00 | -26,700,000.00 | Drawing Against Interco Position | -376,200,000.00 | 123,800,000.00 | 16-Jan-06 | 16-Feb-06 | 31 | N/A | N/A | N/A | N/A | N/A | N/A | 176323 176324 |
| 16-Feb-06 | GBP | 500,000,000.00 | 0.00 | rollover | -376,200,000.00 | 123,800,000.00 | 16-Feb-06 | 16-Mar-06 | 28 | N/A | N/A | N/A | N/A | N/A | N/A | 179122 179123 |
| 16-Mar-06 | GBP | 500,000,000.00 | 0.00 | rollover | -376,200,000.00 | 123,800,000.00 | 16-Mar-06 | 13-Apr-06 | 28 | N/A | N/A | N/A | N/A | N/A | N/A | 181271 181275 |
| 13-Apr-06 | GBP | 500,000,000.00 | 0.00 | rollover | -376,200,000.00 | 123,800,000.00 | 13-Apr-06 | 12-May-06 | 29 | N/A | N/A | N/A | N/A | N/A | N/A | 184060 184061 |
| 12-May-06 | GBP | 500,000,000.00 | 0.00 | rollover | -376,200,000.00 | 123,800,000.00 | 12-May-06 | 12-Jun-06 | 31 | N/A | N/A | N/A | N/A | N/A | N/A | 186158 186157 |
| 12-Jun-06 | GBP | 500,000,000.00 | 0.00 | rollover | -376,200,000.00 | 123,800,000.00 | 12-Jun-06 | 10-Jul-06 | 28 | N/A | N/A | N/A | N/A | N/A | N/A | 188398 188399 |