**<u>Exhibit B</u>**

**LPT Agreement**

## SETTLEMENT AND LOSS PORTFOLIO TRANSFER AGREEMENT

This AGREEMENT (the "Agreement") is entered into as of July 18, 2011 by and between Liberty Mutual Insurance Company on behalf of itself and its subsidiaries and affiliated companies (including but not limited to Helmsman Management Services, LLC ("Helmsman")) (collectively, "Liberty"), and Nortel Networks Corporation ("NNC"), Nortel Networks Inc. ("NNI") and Nortel Networks Limited ("NNL") (NNC, NNL and NNI collectively, "Nortel"), and Ernst & Young Inc., the court-appointed monitor (the "Monitor") and authorized foreign representative of NNC and certain of its direct and indirect subsidiaries in proceedings under Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court").

### RECITALS

WHEREAS, Liberty issued Workers Compensation and Employers' Liability insurance policies for NNI, covering the periods 5/15/1992 through 5/14/1997 (all such policies, the "WC Deductible Policies"), under which NNI is required to: (i) pay premiums for variable expenses ("WC Variable Expense"), and (ii) pay losses within a deductible amount, or reimburse Liberty for losses advanced on NNI's behalf within that deductible amount.

WHEREAS, Liberty issued Commercial Auto insurance policies for NNI, covering the periods 1/1/1979 through 5/14/1997 (all such policies, the "Auto Deductible Policies"), under which NNI is required to pay losses within a deductible amount, or reimburse Liberty for losses advanced on NNI's behalf within that deductible amount.

WHEREAS, Liberty issued certain retrospectively rated Workers Compensation and Employers' Liability insurance policies for NNI, covering the periods 1/1/1979 through 5/14/1997 (collectively, the "WC Retro Policies" and together with the WC Deductible Policies and the Auto Deductible Policies, the "Insurance Program"), under which Liberty adjusts

retrospective premium annually based upon losses with such adjustments resulting in additional premium due from NNI if premium increases or the return of premium by Liberty if premium decreases; and

WHEREAS, Nortel provided, in respect of the deductible portions of the Insurance Program, Liberty with security to ensure payment of its various financial obligations to Liberty in respect of the deductible portions of the Insurance Program, which security included a letter of credit issued by RBC Financial Group (the "Letter or Credit"), which Liberty asserts has been drawn for the full balance of $2,898,225 (the "Letter of Credit Proceeds") pursuant to its rights under the Letter of Credit and Insurance Program and remains unapplied; and an escrow provided by NNI with a balance of $750,802 as of 7/1/2011 ("Escrow"); and

WHEREAS, NNI acted as a self-insured employer for workers compensation in the State of California for the period 5/15/1990 through 5/15/1996; and

WHEREAS, Helmsman and NNI entered into one or more agreements under which Helmsman provides third-party administration of NNI's California self-insured workers compensation claims (the "Helmsman Agreement").  Pursuant to the Helmsman Agreement, Helmsman has and continues to pay claims on behalf of NNI, for which Helmsman bills NNI on a monthly basis.  NNI has provided Helmsman with a loss deposit (the "Loss Deposit"). The balance of the Loss Deposit was $234,887 as of 7/1/2011; and

WHEREAS, on January 14, 2009, NNC and certain of its affiliates, including NNL, filed an application for protection under the Companies' Creditors Arrangement Act (Canada) and were granted creditor protection, and on the same date NNI and certain of its affiliates commenced cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the U.S. Bankruptcy Court for the District of

Delaware (the "Bankruptcy Court" and those cases the "Chapter 11 Cases") (such creditor protection cases together, the "Bankruptcy Cases"); and

WHEREAS, Liberty filed the following proofs of claim in the Chapter 11 Cases against NNI and its affiliates based on the Insurance Program, the Helmsman Agreement and other related agreements:  proof of claim number 5664 filed by Helmsman and proofs of claim number 5665 through 5680 filed by Liberty (collectively, the "Proofs of Claim"); and

WHEREAS, Liberty, Nortel and the Monitor seek to: resolve all amounts described herein currently outstanding between and among Liberty, NNI, NNC and NNL; transfer NNI's payment obligations within the deductibles of the Workers Compensation Deductible Policies and Auto Deductible Policies to Liberty; transfer all of NNI's financial obligations with respect to the Insurance Program and the Helmsman Agreement, regardless of the deductibles, including any and all past, present and future claims, to Liberty; complete a final adjustment of the WC Retro Policies; transfer financial responsibility for NNI's liability as a self-insured employer for workers compensation in the State of California for the period 5/15/1990 through 5/15/1996 to Liberty; withdraw, or cause to be withdrawn, with prejudice the Proofs of Claim; release NNL and NNC from any liability in connection with the Letter of Credit and Letter of Credit Proceeds as to Liberty and as to NNI; mutually release NNI, NNC and NNL from any liability related to or arising out of the Insurance Program; and release the Monitor from any liability related to or arising out of the Insurance Program.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained in this Agreement, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      The foregoing recitals are incorporated herein as if fully set forth in the text of the

Agreement.

2.      This Agreement is subject in all respects to: (i) the entry of a final order by the

Bankruptcy Court approving all terms and conditions contained in this Agreement (the

"US Approval Order"); and (ii) the entry of a final order by the Canadian Court

approving all terms and conditions contained in this Agreement (the "Canadian Approval

Order").  Upon full execution of this Agreement, NNI shall file a motion with the

Bankruptcy Court seeking the US Approval Order and the Monitor shall file a motion

with the Canadian Court seeking the Canadian Approval Order, and this Agreement will

become effective upon entry of the US Approval Order and the Canadian Approval Order

(the "Effective Date").

3.      Nortel agrees to pay Liberty $3,351,681.48 (the "Nortel Payment") by the method

described in Paragraph 4 for the following:

    a.      $386,113.48 due from NNI to Liberty in reimbursement for losses within the

            deductible of the WC Deductible Policies advanced by Liberty;

    b.      $7,560 in premium due from NNI to Liberty for WC Variable Expense under the

            WC Deductible Policies;

    c.      $3,022,486.00 as premium (including premium tax of $59,264) due from NNI to

            Liberty for the loss portfolio transfer policy described in Paragraph 5, which

            amount shall constitute the entire premium owed by Nortel with respect to the

            LPT Policy; and

    d.      $64,478 due from Liberty to NNI as a final adjustment of the WC Retro Policies.

4.      Promptly on or after the Effective Date, Liberty shall collect the Nortel Payment as

follows:

a.      Liberty shall retain the full Letter of Credit Proceeds of $2,898,225; and

b.      Liberty shall return $297,345.52 of the Escrow to Nortel (the "Liberty Payment")

through the payment of one-half of the Liberty Payment to each of NNI and NNL,

and Liberty shall retain the balance of $453,456.48.

5.      Immediately upon receipt of the Nortel Payment, Liberty shall issue a Loss Portfolio

Transfer policy to NNI in the form attached as Exhibit 1, together with the Information

Page in the form attached as Exhibit 2, effective as of January 1, 2011:

a.      Liberty shall assume all of NNI's payment obligations for Claims (as defined

below) within the deductibles of the WC Deductible Policies and Auto Deductible

Policies and NNI shall have no further liability for those deductible amounts or

premium, for variable expense or otherwise, under the WC Deductible Policies or

the Auto Deductible Policies.

b.      Liberty shall also assume financial responsibility for Claims pertaining to NNI's

liability as a qualified self-insurer for workers compensation in the State of

California for the period 5/15/1990 through 5/15/1996.  If NNI has rights to

recover all or part of any payment made by Liberty under this paragraph (the

"Recovery Rights"), those rights are transferred to Liberty.  Upon the reasonable

request of Liberty, NNI will cooperate in all reasonable respects with Liberty to

transfer or assert the Recovery Rights.

c.      Liberty, either through Helmsman or otherwise, shall adjust and pay Claims

pertaining to NNI's liability as a qualified self-insurer for workers compensation

in the State of California for the period 5/15/1990 through 5/15/1996 at Liberty's

expense.

d.   Without limiting subparagraph 5.c above, NNI will remain a self-insured employer, and Liberty will not become NNI's statutory workers compensation carrier.  The Loss Portfolio Transfer policy will not act as a novation of NNI's obligations as a self-insured employer to Liberty.

e.   For purpose of this paragraph 5., "Claims" shall mean any demand for, or an assertion of a right to, civil compensation or civil damages, including penalties and interest, or an intimation of an intention to seek such compensation or damages in respect of any and all past, present and future actions, causes of action, suits, debts, liens, contracts, rights, agreements, obligations, promises, liabilities, regulatory sanctions or penalties, claims, counterclaims, demands, damages, controversies, losses, costs and expenses (including attorneys' fees and costs actually incurred relating to any investigation, settlement or defense thereof) of any kind, character, description or nature whatsoever, known or unknown, suspected or unsuspected, reported or unreported, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, whether grounded in law or equity or sounding in tort or contract or otherwise.

Liberty and NNI expressly agree that the loss portfolio transfer is intended as a full transfer of NNI's obligations as described in Subparagraph 5.a. and b.

6.   Helmsman shall return $187,869.09 of the Loss Deposit (the "Helmsman Payment") to Nortel through the payment of one-half of the Helmsman Payment to each of NNI and NNL, and Helmsman shall retain the balance of $47,017.91 to satisfy all of NNI's outstanding financial obligations to Helmsman in respect of the Helmsman Agreement. Upon the payment of the Helmsman Payment, Helmsman and NNI will be released from

all outstanding financial obligations under the Helmsman Agreement and the Helmsman

Agreement will terminate except to the extent NNI is required by law to utilize a third-

party administrator as a self-insured for workers compensation in California, in which

case Liberty will assume all of NNI's obligations under the Helmsman Agreement.

7.      Except as provided for herein, upon receipt of the Liberty Payment and the Helmsman

Payment, each of NNI, NNL and NNC hereby releases and forever discharges Liberty

and all its affiliates, subsidiaries, officers, directors, partners, employees, agents,

attorneys, shareholders, successors, assigns and other representatives from liability to it

for any and all claims, controversies, actions, causes of action, demands, debts, damages,

costs, attorneys' fees, monies due on account, obligations, judgments and liabilities of

any nature whatsoever at law or in equity, past or present, in contract, in tort or otherwise,

whether or not now or heretofore known, suspected, or claimed against Liberty, relating

to (i) the Insurance Program, the Escrow, the Letter of Credit, or the Letter of Credit

Proceeds, including without limitation any and all return premiums should loss incurred

for any additional year(s) decrease and return payments be earned with respect to the

Insurance Program and/or any agreement pertaining thereto, and (ii) any claims against

Liberty in the Bankruptcy Cases under any of the avoidance provisions of the Bankruptcy

Code or analogous law; provided, if Liberty fails to defend and pay any Claim described

in paragraph 5. herein, the release in this paragraph shall be null and void; and further

provided, that Nortel does not release Liberty for any Claims (as defined in subparagraph

5.e above), including without limitation contribution or indemnity claims, that may be

made now or in the future in respect of Nortel's rights existing outside the Insurance

Program.  For the avoidance of doubt, nothing herein is intended to release any claims arising out of or based on this Agreement.

8.      Except as provided for herein, upon the receipt of the Nortel Payment, Liberty hereby releases and forever discharges each of NNI, NNL and NNC and all of their respective affiliates, subsidiaries, officers, directors, partners, employees, agents, attorneys, shareholders, successors, assigns and other representatives from liability for any and all claims, controversies, actions, causes of action, demands, debts, damages, costs, attorneys' fees, monies due on account, obligations, judgments and liabilities of any nature whatsoever at law or in equity, past or present, in contract, in tort or otherwise, whether or not now or heretofore known, suspected, or claimed against them relating to the Insurance Program, the Escrow, the Letter of Credit, or the Letter of Credit Proceeds, including without limitation any and all increases in premiums should loss incurred for any additional year(s) increase and additional premiums otherwise would be able to be assessed with respect to the Insurance Program and/or any agreement pertaining thereto. For the avoidance of doubt, nothing herein is intended to release any claims arising out of or based on this Agreement.

9.      On the Effective Date or as promptly as reasonably practicable thereafter, Liberty shall file, or cause to be filed, with the Bankruptcy Court notices of withdrawal with prejudice of the Proofs of Claim, substantially in the form attached hereto as Exhibit 3.

10.     Except as provided for herein, upon receipt of the Nortel Payment, Liberty hereby releases and forever discharges the Monitor and all of its respective affiliates, subsidiaries, officers, directors, partners, employees, agents, attorneys, shareholders, successors, assigns and other representatives from liability for any and all claims,

controversies, actions, causes of action, demands, debts, damages, costs, attorneys' fees, monies due on account, obligations, judgments and liabilities of any nature whatsoever at law or in equity, past or present, in contract, in tort or otherwise, whether or not now or heretofore known, suspected, or claimed against them relating to the Insurance Program, the Escrow, the Letter of Credit, or the Letter of Credit Proceeds.  For the avoidance of doubt, nothing herein is intended to release any claims arising out of or based on this Agreement.

11.    Except as provided for herein, upon receipt of the Nortel Payment, the Monitor hereby releases and forever discharges the Liberty and all of its respective affiliates, subsidiaries, officers, directors, partners, employees, agents, attorneys, shareholders, successors, assigns and other representatives from liability for any and all claims, controversies, actions, causes of action, demands, debts, damages, costs, attorneys' fees, monies due on account, obligations, judgments and liabilities of any nature whatsoever at law or in equity, past or present, in contract, in tort or otherwise, whether or not now or heretofore known, suspected, or claimed against them relating to the Insurance Program, the Escrow, the Letter of Credit, or the Letter of Credit Proceeds.  For the avoidance of doubt, nothing herein is intended to release any claims arising out of or based on this Agreement.

12.    Liberty shall indemnify Nortel and the Monitor for any and all liability arising out of Liberty's obligation hereunder to manage the Insurance Program and to pay Claims as described in Paragraph 5. herein, <u>provided</u> that with respect to NNI's obligation as a qualified self-insurer for workers compensation in the State of California, such indemnity obligation shall only extend to the related financial responsibilities.

13.     Except as provided for herein, upon receipt of the Liberty Payment, NNI hereby releases

and forever discharges each of NNL, NNC, their affiliated Canadian debtor entities and

all of their respective officers, directors, employees, agents, attorneys, successors, assigns

and other representatives (each in their capacity as such) and the Monitor from liability

for any and all claims, controversies, actions, causes of action, demands, debts, damages,

costs, attorneys' fees, monies due on account, obligations, judgments and liabilities of

any nature whatsoever at law or in equity, past or present, in contract, in tort or otherwise,

whether or not now or heretofore known, suspected, or claimed against them relating to

the Insurance Program, the Escrow, the Letter of Credit, or the Letter of Credit Proceeds,

including, for the avoidance of doubt, claims for contribution and indemnity relating to

the Insurance Program, the Escrow, the Letter of Credit, or the Letter of Credit Proceeds.

For the avoidance of doubt, nothing herein is intended to release any claims arising out of

or based on this Agreement.

14.     Except as provided for herein, upon receipt of the Liberty Payment, each of NNL, NNC

and the Monitor hereby releases and forever discharges NNI and its affiliated U.S. debtor

entities in the Chapter 11 Cases and all of their respective officers, directors, employees,

agents, attorneys, successors, assigns and other representatives (each in their capacity as

such) from liability for any and all claims, controversies, actions, causes of action,

demands, debts, damages, costs, attorneys' fees, monies due on account, obligations,

judgments and liabilities of any nature whatsoever at law or in equity, past or present, in

contract, in tort or otherwise, whether or not now or heretofore known, suspected, or

claimed against them relating to the Insurance Program, the Escrow, the Letter of Credit,

or the Letter of Credit Proceeds, including, for the avoidance of doubt, claims for

contribution and indemnity relating to the Insurance Program, the Escrow, the Letter of Credit, or the Letter of Credit Proceeds. For the avoidance of doubt, nothing herein is intended to release any claims arising out of or based on this Agreement.

15. Each party hereto shall have the right at any time to enforce the provisions of this Agreement in strict accordance with the terms hereof, notwithstanding any conduct or custom on the part of such party in refraining from doing so at any time or times. The failure of any party at any time or times to enforce its rights under such provisions shall not be construed as having created a custom in any way or manner contrary to specific provisions of this Agreement or as having in any way or manner modified or waived the same.

16. Any notices or consents required or permitted by this Agreement shall be in writing and shall be deemed delivered if delivered in person or if sent by telecopier, certified main, postage prepaid, return receipt requested, or telegraph, as follows, unless such address is changed by written notice hereunder:

If to Liberty or Helmsman:                    Richard Rey
                                             Liberty Mutual Group
                                             175 Berkeley Street
                                             Boston, MA 02117

With a copy to:                              General Counsel
                                             Liberty Mutual Group
                                             175 Berkeley Street
                                             Boston, MA 02117

If to NNC:                                   Anna Ventresca
                                             General Counsel
                                             5945 Airport Road, Suite 360
                                             Mississauga, Ontario L4V 1R9

With a copy to:                          Ken Coleman
                                         Allen & Overy LLP
                                     1221 Avenue of the Americas
                                         New York, NY 10020

If to NNL:                               Anna Ventresca
                                         General Counsel
                                     5945 Airport Road, Suite 360
                                     Mississauga, Ontario L4V 1R9

With a copy to:                          Ken Coleman
                                         Allen & Overy LLP
                                     1221 Avenue of the Americas
                                         New York, NY 10020

If to NNI:                               Timothy Ross
                                         Nortel Networks Inc.
                                 4001 E. Chapel Hill Nelson Highway
                                    Research Triangle Park, NC 27709

With a copy to:               James L. Bromley & Lisa M. Schweitzer
                              Cleary Gottlieb Steen & Hamilton LLP
                                         One Liberty Plaza
                                         New York, NY 10006

If to the Monitor:                       Tom C. Ayres
                                         Ernst & Young Inc.
                                     One London Place, Suite 1800
                                   255 Queens Avenue, P.O. Box 5332
                                         London, ON N6A 5S7
                                              Canada

With a copy to:                          Ken Coleman
                                         Allen & Overy LLP
                                     1221 Avenue of the Americas
                                         New York, NY 10020

17.    Each party represents and warrants that:

       (a)    it has been advised by counsel in the negotiations, execution and delivery of this

              Agreement and the releases herein;

(b)    subject to Paragraph 2., it is duly authorized to enter into, execute, deliver and

perform this Agreement and to give the releases set forth herein: and

(c)    it has voluntarily, with full knowledge and without fraud, coercion, duress or

undue influence of any kind, entered into this Agreement.

18.    Liberty represents and warrants that:

(a)    the Schedule of Covered Policies contained in Part One, Section B of the form

LPT Policy is, to the best of Liberty's knowledge, the comprehensive and

exhaustive list; and

(b)    to the extent that any other policy that is not included in the Schedule of Covered

Policies is identified, such additional policy will be treated in the same manner as

the policies included in the Schedule of Covered Policies.

19.    The Agreement contains the entire agreement between the parties as respects its subject

matter.  All discussions and agreements previously entertained between the parties

concerning the subject matter of the Agreement are merged into this Agreement.  In the

case of a conflict between any provision of this Agreement and any schedule to this

Agreement, including the Loss Portfolio Transfer policy, the terms of this Agreement

shall control.  This Agreement may not be modified or amended, nor any of its provisions

waived, except by an instrument in writing, signed by all parties hereunder.

20.    This Agreement and any amendment hereto may be executed in several counterparts and

by each party on a separate counterpart, each of which, when so executed and delivered

shall be an original, but all of which together shall constitute but one and the same

instrument.  In providing this Agreement, it shall not be necessary to produce or account

for more than one such counterpart signed by the party against whom enforcement is

sought.  A signed counterpart transmitted by facsimile or pdf shall be treated as an original.

21.     This Agreement shall be binding upon all successors and assigns of each of the parties to the Agreement.

22.     This Agreement shall be deemed to have been executed and delivered in the Commonwealth of Massachusetts and shall be governed by and construed in accordance with Massachusetts law (without regard to its principles concerning conflicts of law).

23.     For any action or proceeding arising out of or related to this agreement, each party hereby irrevocably submits to and accepts the exclusive jurisdiction of (a) the Bankruptcy Court and the Canadian Court, if such action or proceeding is brought prior to the entry of a final decree closing either of the Bankruptcy Cases; provided that parties retain their rights to request the matter to be heard in a joint hearing as provided for under, and in accordance with, the Amended Cross-Border Protocol approved by the Bankruptcy Court and by the Canadian Court on June 29, 2009, as the same may be further amended from time to time; and (b) any state or federal court sitting in Suffolk County, Commonwealth of Massachusetts, if such action or proceeding is brought after entry of a final decree closing the Bankruptcy Cases, and waives any defense of forum non conveniens or other objection to venue in such action or proceeding.

24.     It is understood by the parties hereto that this Agreement represents a compromise of disputed claims, and that this Agreement is not to be construed as an admission of liability on any claims, except as expressly stated herein.  Neither the fact of this Agreement, nor any provision contained herein, nor any action taken hereunder, shall constitute an admission with respect to any claims or facts alleged by any of the parties

hereto, except as expressly stated herein. In the event that this Agreement is not approved by either the Bankruptcy Court or the Canadian Court, this Agreement shall be of no force or effect and the parties reserve all of their rights and defenses with respect to the Insurance Program, the Escrow, the Letter of Credit, the Letter of Credit Proceeds, and the Proofs of Claim.

(Signature Page Follows)

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and date first written above.

LIBERTY MUTUAL INSURANCE COMPANY

By: _Richard Pey_____

Its: Senior Underwriting Manager

NORTEL NETWORKS INC.

By: _____

Its: _____

NORTEL NETWORKS CORPORATION

By:_____

Its:

By:_____

Its:

NORTEL NETWORKS LIMITED

By:_____

Its:

By:_____

Its:

16

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and date first written above.


LIBERTY MUTUAL INSURANCE COMPANY

By:_____

Its:


NORTEL NETWORKS INC.

By:_____

Its:


NORTEL NETWORKS CORPORATION

By:_____
    John M. Doolittle

Its: Senior Vice President, Corporate Services
    and Chief Financial Officer

By:_____
    Clarke E. Glaspell

Its: Controller


NORTEL NETWORKS LIMITED

By:_____
    John M. Doolittle

Its: Senior Vice-President, Corporate Services
    and Chief Financial Officer

By:_____
    Clarke E. Glaspell

Its: Controller


16

ERNST & YOUNG INC.
In its capacity as Monitor of the Canadian debtor entities

By Allen & Overy LLP
As Counsel and Authorized Agent for ERNST & YOUNG INC.


By  Ken Coleman
Title:  Partner

## <u>Exhibit 1</u>

**Form of Loss Portfolio Transfer Policy**



**LOSS PORTFOLIO TRANSFER INSURANCE POLICY**

Throughout this policy the words "you", "your" and "Insured" refer to the insured shown in Item 1 of the Information Page. The words "we", "us", "our" and "Company" refer to the Company providing the excess insurance.  Please read the entire policy carefully.

In return for the payment of the premium shown in Item 6 of the Information Page, and subject to all the terms and conditions of this policy we agree with you as follows:

**GENERAL SECTION**

A.   THE POLICY

This is a contract of insurance between you and us.  It includes the Information Page.  The only agreements relating to this insurance are stated in this policy.  The terms of this policy may not be changed or waived except by an endorsement issued by us to be part of this policy.

B.   POLICY PERIOD

This policy is effective for the period stated in Item 3 of the Information Page.

C.   WHO IS INSURED

The Insured is named in Item 1 of the Information Page.  If you are a partnership or joint venture, each of your partners or members of the joint venture is insured but only in their capacity as such.

**PART ONE -  Coverage**

A.   Insuring Agreement

We will pay on your behalf those Payment Amounts that exceed your Retention but not for more than our Aggregate Limit of Liability, both as stated in Item 5 of the Information Page.

B.   Payment Amounts

Payment Amounts means the following:

1. All amounts the insured becomes obligated to pay within the applicable deductibles of the workers compensation and employers' liability insurance policies issued by Company to you for the periods May 15, 1992 through May 14, 1997, including without limitation the policies listed in the Schedule of Covered Policies (whether for loss or allocated adjustment expenses).

2. All amounts the insured becomes obligated to pay as a qualified self-insurer for Worker's Compensation in California for the period May 15, 1990 through May 15, 1996.

3. All amounts the insured becomes obligated to pay within the applicable deductibles of the commercial auto insurance policies issued by Company to you for the periods January 1, 1979 through May 14, 1997.

Schedule of Covered Policies

| Policy Number | Effective Date | Expiration Date | Deductible |
|---|---|---|---|
| WA1-65D-004057-152 | 05/15/1992 | 05/14/1993 | $1,000,000 |
| WA2-65D-004057-162 | 05/15/1992 | 05/14/1993 | $1,000,000 |
| WA1-65D-004057-153 | 05/15/1993 | 05/14/1994 | $1,000,000 |
| WA2-65D-004057-163 | 05/15/1993 | 05/14/1994 | $1,000,000 |
| WA1-C5D-004057-164 | 05/15/1994 | 05/14/1995 | $1,000,000 |
| WA1-C5D-004057-165 | 05/15/1995 | 05/14/1996 | $1,000,000 |
| WA1-C5D-004057-166 | 05/15/1996 | 05/14/1997 | $750,000 |

| Contract Number | Effective Date | Expiration Date | Retention |
|---|---|---|---|
| WP8-65B-004057-1190 | 05/15/1990 | 05/14/1991 | Unlimited |
| WC8-65A-004057-1390 | 07/01/1990 | 06/30/1991 | Unlimited |
| WP8-65B-004057-1191 | 05/15/1991 | 05/14/1992 | Unlimited |
| WP8-65B-004057-1192 | 05/15/1992 | 05/14/1993 | $500,000 |
| WP8-65B-004057-1193 | 05/15/1993 | 05/14/1994 | $500,000 |
| WP8-65B-004057-1194 | 05/15/1994 | 05/14/1995 | $250,000 |
| WP8-65B-004057-1195 | 05/15/1995 | 05/14/1996 | $250,000 |
| WP8-65B-004057-1196 | 05/15/1996 | 05/14/1997 | $250,000 |

| Policy Number | Effective Date | Expiration Date | Deductible |
|---|---|---|---|
| AS1-651-004057-078; -088 | 5/15/1988 | 5/14/1989 | Unknown |

| | | | |
|---|---|---|---|
| AS1-651-004057-079; -089 | 5/15/1989 | 5/14/1990 | Unknown |
| AS1-651-004057-070; -080 | 5/15/1990 | 5/14/1991 | Unknown |
| AS1-651-004057-071; -081; -101 | 5/15/1991 | 5/14/1992 | Unknown |
| AS2-651-004057-072; -082; -102; -142 | 5/15/1992 | 5/14/1993 | Unknown |
| AS2-651-004057-073; -083; -103; -143; -193 | 5/15/1993 | 5/14/1994 | Unknown |
| AS2-651-004057-074; -084; -104; -144; -194 | 5/15/1994 | 5/14/1995 | Unknown |
| AS2-651-004057-075; -085; -105; -145; -195; -225 | 5/15/1995 | 5/14/1996 | Unknown |
| AS2-651-004057-076 | 5/15/1996 | 5/14/1997 | Unknown |

## PART TWO- Your Retention and Our Limit of Liability

A.  Your Retention

You are responsible for all Payment Amounts up to the Insured's Retention.

Insured's Retention means the following:

The Insured's Retention is the total amount, as shown in Item 5 of the Information Page, you have already paid in Payment Amounts. For the avoidance of doubt, because you already have paid the Payment Amounts, you will not be required to pay any further Payment Amounts toward the Insured's Retention after the effective date of this Policy.

B.  Our Limit of Liability

The Company's Aggregate Limit of Liability, shown in Item 5 of the Information Page, is the most we will pay for all Payment Amounts (as defined in Part One-B.) that exceed the amount stated as Insured's Retention in Item 5 of the Information Page.

C.  How Retention and Limit of Liability Apply

1.  We will NOT pay any Payment Amounts within the Insured's Retention.

2.  The inclusion of more than one insured in Item 1 of the Information Page will not increase either the Insured's Retention or the Company's Aggregate Limit of Liability.

## PART THREE - Premium

A.  Premium Determination and Payment

All Insureds listed in Item 1 of the Information Page are jointly and severally liable for payment of the policy premium. Premium is indicated in Item 6 of the Information Page.

B.  Final Policy Premium

The final policy premium is shown on the Information Page in Item 6.

C.   Deposit Premium

The deposit premium shown in Item 6 of the Information Page is a premium payable at the inception of this policy and will be retained by us until the end of the policy period.

## PART FOUR - Conditions

A.   Duties of Insured and Company

1.   Other than as set forth in (i) the Settlement and Loss Portfolio Transfer Agreement by and among Nortel Networks Inc., Nortel Networks Corporation, Nortel Networks Limited, Ernst & Young, Inc. (acting as the court-appointed monitor) and Liberty Mutual on behalf of itself and its subsidiaries and affiliated companies, dated as of July 18, 2011, and (ii) the policies referred to in Part One, Section B of this Loss Portfolio Policy, we have no duty to investigate, handle, settle or defend any claims, suits, or proceedings against you, other than as set forth in the scheduled policies.

2.   Special Servicing Instructions executed or in force prior to the effective date of this policy or any other claims handling agreements shall not apply.

B.   Appeals

If you do not appeal an award or judgment which exceeds your retention, we have the right to appeal at our own cost and expense and shall be liable for costs, disbursement and interest related to the appeal. If we elect to appeal, our liability on the award or judgment shall not exceed the applicable limit of liability in Item 5 of the Information Page plus the cost and expense of the appeal.

C.   Subrogation and Recovery

If the Insured has rights to recover all or part of any payment made under this Coverage Part, those rights are transferred to us.  The Insured must do nothing after loss to impair them.  At our request, the Insured will bring suit or transfer those rights to us and help us enforce them.

D.   Actions Against Company

You will have no right of action against us unless you have complied with all the terms and conditions of this policy.

E.   Assignment

An assignment of interest under this policy will not bind us unless an endorsement assigning interest under this policy is issued by us to be part of the policy.

F.   Bankruptcy or Insolvency of Insured

Your bankruptcy or insolvency will not relieve us of our duties under this policy.

G.   Sole Representative

If more than one Insured is named in Item 1 of this policy, the Insured first named in Item 1 of the Information Page will act on behalf of all Insureds to give or receive notice of cancellation, receive return premium, or request change in this policy.

H.   Captions

The headings or captions used in this policy are for the purpose of reference only and shall not otherwise affect the meaning of this policy.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and secretary in Boston, Massachusetts.

SECRETARY                    PRESIDENT

## Exhibit 2

**Form Information Page**

☐ Liberty Mutual Insurance Company
☐ Liberty Mutual Fire Insurance Company
☒ Liberty Insurance Corporation
☐ LM Insurance Corp.
☐ The First Liberty Insurance Corp.

**Liberty Mutual.**

**Loss Portfolio Transfer
Insurance Policy**

## Information Page

| Account No. | Sub Acct No.<br>0000 | **Liberty Mutual Insurance Group/Boston** |
|---|---|---|

| Policy No. | TD/CD | Sales Office | Code | Sales Representative | Code | N/R<br><br>N | 1st Year |
|---|---|---|---|---|---|---|---|

Item 1.   Name of Insured        Nortel Networks Inc. and its successor and reorganized entity

Item 2.   Mailing Address

| | Mo. | Day | Year | To | Mo. | Day | Year |
|---|---|---|---|---|---|---|---|

Item 3.   Policy Period: From                                      *Continuous
12:01 AM  Standard time at the address of the insured as stated herein.

Item 4.   N/A

Item 5.  Excess Indemnity Coverage:  We will pay on your behalf all Payment Amounts that exceed the Insured's Retention but not for more than the Insurer's Aggregate Limit of Indemnity:

Insured's Retention:                                                     $

Insurer's Aggregate Limit of Indemnity each policy period:                    $ Unlimited

| Item 6.  Premium | Code | Estimated Annual Remuneration | Rate per $100 Remuneration | Estimated Policy Premium |
|---|---|---|---|---|
| | | | | $ |
| Minimum Policy Premium  $ | | | Deposit Premium $ 100% at Policy Inception | |

This policy, including all endorsements therewith, is hereby countersigned by    _____
                                                                                 Authorized Representative

| Loc. Code | Issued | Audit  Basis<br><br>0 | Periodic Payment | Rating Basis<br><br>R | Home State | Renewal of:<br><br>New |
|---|---|---|---|---|---|---|

## Exhibit 3

**Form Notice of Withdrawal of Proof of Claim**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
              :

*In re*                          :      Chapter 11
              :

Nortel Networks Inc., *et al.*,[1]    :      Case No. 09-10138 (KG)
              :

              Debtors.    :      Jointly Administered
              :

-----------------------------------------------------------X

### <u>NOTICE OF WITHDRAWAL OF PROOF(S) OF CLAIM</u>

*[Claimant]* hereby withdraws its proof(s) of claim with prejudice in the above-captioned cases (Proof of Claim No(s). *[insert]*).

Dated: *[insert city and state]*
       *[insert date]*, 2011

                                    *[Insert Claimant Name]*

                                    _____
                                    *[insert name and address]*
                                    Tel. *[insert]*
                                    Fax *[insert]*
                                    *[insert email address]*

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.