IT IS ORDERED AND DIRECTED THAT:

1.  Pursuant to rule 12.9(2) of the Insolvency Rules 1986 ("the Rules"), the period of time for service of the application provided by rule 2.8(1) of the Rules be abridged.

2.  Pursuant to rule 12.9(2) of the Rules, the period of time for filing evidence of service of the administration application provided by rule 2.9(2) of the Rules be abridged.

3.  For the period during which this Order is in force, the affairs, business and property of the Company be managed by the Administrators appointed by paragraph 4 of this Order.

4.  The Administrators of the Company shall be Alan Robert Bloom, Alan Michael Hudson, Stephen John Harris and Christopher John Wilkinson Hill of Ernst & Young LLP ("the Joint Administrators").

5.  The responsibilities and powers of the Joint Administrators and the material effect of the making of this Order are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 ("IA 1986"), and the provisions summarised in the schedule hereto will apply.

6.  Pursuant to paragraph 3 of Schedule 1, IA 1986, the Joint Administrators be at liberty to enter into and to procure the Company to enter into an administration expense facility agreement in the same or substantially the same terms as the draft shown to the Court (whether as borrower or lender thereunder), such agreement to take effect as a contract entered into by the Joint Administrators within the meaning of paragraph 99(4) of Schedule B1, IA 1986.

7.  Pursuant to paragraph 66 of Schedule B1, IA 1986, provided that they consider the making of such payments is likely to assist achievement of the purpose of the administration, the Joint Administrators may:

    (1) make such payments to the employees of the Company as they would receive from the assets of the Company if secondary proceedings were to be commenced in Belgium under Article 27 of the EC Regulation;

    (2) make such payments from the assets of the Company to those creditors of the Company whose claims against the Company would be preferential under the laws of

Belgium if secondary proceedings were to be commenced there under Article 27 of the EC Regulation, as they would receive in such secondary proceedings; and

(3) make payment in respect of pre-administration liabilities.

8.  The Joint Administrators, being officers of this Court, may apply to the relevant judicial authorities in any other country or territory for such assistance as they consider they may require in connection with the exercise of their functions.

9.  Pursuant to paragraph 100(2) of Schedule B1, IA 1986, any function to be exercised or performed by an administrator may be done by all or any of one or more of the persons for the time being holding that office.

10. Pursuant to rule 7.31(5) of the Rules, the First Witness Statement of Sharon Lynette Rolston and the exhibits thereto shall not be available for public inspection without the Court's leave.

11. The costs of and occasioned by this Application, including the costs of Ernst & Young LLP, be paid as an expense of the administration.

12. This Order shall take effect from [     ] on 14 January 2009.

## SCHEDULE

1.  The objectives of the Joint Administrators are those set out in paragraphs 3 and 4 of Schedule B1 to the Insolvency Act 1986 ("Schedule B1").

2.  Without prejudice to the provisions of Schedule B1 and by way of summary the functions and objectives of the Joint Administrators are:

    (1)  Under paragraph 3(1) of Schedule B1, the Joint Administrators must perform their functions with the objective of:

        (a)  rescuing the Company as a going concern ("objective (a)"); or

        (b)  achieving a better result for the Company's creditors as a whole than would be likely if the Company were wound up (without first being in Administration) ("objective (b)"), but only if the Joint Administrators think that it is not reasonably practicable to achieve objective (a) or that objective (b) would achieve a better result for the company's creditors as a whole; or

        (c)  realising property in order to make a distribution to one or more secured or preferential creditors, but only if the Joint Administrators think it is not reasonably practicable to achieve objective (a) or objective (b) and they do not unnecessarily harm the interests of the creditors of the Company as a whole.

    (2)  Under paragraphs 49-51 of Schedule B1, the Joint Administrators must make a statement setting out their proposals for achieving the purpose of administration and must, inter alia, send those proposals to every creditor of the Company of whose details they are aware.

    (3)  Under paragraphs 51 and 52 of Schedule B1, unless the Joint Administrators are of the view that no monies will be available to distribute to the creditors of the Company or that creditors will be paid in full they must convene and hold within 10 weeks of the making of the Administration Order a meeting of creditors for the purposes of considering and, if thought fit, approving their proposals with or without modification or seek the approval of creditors by correspondence.

(4) Under paragraph 67 of Schedule B1, the Joint Administrators have a duty to take custody or control of all property of the Company on being appointed.

(5) Under paragraph 68 of Schedule B1, the Joint Administrators are under a duty to manage the affairs, business and property of the Company in accordance with their proposals as approved by the Company's creditors and subject to any directions that the English Court may give them.

(6) The Joint Administrators must obtain approval for payment of their fees and disbursements from the creditors of the Company or from a committee of the Company's creditors or from the English Court.

3. The powers of the Joint Administrators are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 (a copy of which is annexed to this Order as Appendix A).

4. Without prejudice to those provisions and by way of summary, the Joint Administrators have the following powers under Schedule B1:

(1) The power to do anything necessary or expedient for the management of the affairs, business and property of the Company.

(2) The Joint Administrators may remove and appoint directors of the Company, and no officer of the Company may exercise a management power without consent of the Joint Administrators.

(3) The Joint Administrators may convene and hold meetings of members and creditors of the Company.

(4) The Joint Administrators may apply to the English Court for directions in connection with their functions.

(5) The Joint Administrators may pay monies to secured or preferential creditors of the Company and, with the consent of the English Court, may make a distribution to unsecured creditors.

(6) In exercising their functions, the Joint Administrators act as agents of the Company.

5. The effect of the moratorium on insolvency and other proceedings against the Company which came into effect on 14 January 2009 is set out in Schedule B1.

6. Without prejudice to the provisions of Schedule B1 and by way of summary the moratorium has the following effect on insolvency and other proceedings:

(1) No resolution may be passed to wind up the Company;

(2) No order may be made for the winding up of the Company;

(3) No step may be taken to enforce any security over the Company's property without the consent of the Joint Administrators or the permission of the English Court;

(4) No step may be taken to repossess any goods in the Company's possession under any hire purchase agreement, except with the consent of the Joint Administrators or the permission of the English Court;

(5) A landlord may not exercise a right of forfeiture by peaceable re-entry in relation to any premises let to the Company except with the consent of the Joint Administrators or the permission of the English Court; and

(6) No legal process (including legal proceedings, execution, distress and diligence) may be instituted or continued against the Company or the property of the Company, except with the consent of the Joint Administrators or the permission of the English Court.

**APPENDIX A**

**Schedule 1 to the Insolvency Act 1986**

**Powers of Administrator**

(1)  Power to take possession of, collect and get in the property of the Company and, for that purpose, to take such proceedings as may seem to him expedient.

(2)  Power to sell or otherwise dispose of the property of the Company by public auction or private contract or, in Scotland, to sell, feu, hire out or otherwise dispose of the property of the company by public roup or private bargain.

(3)  Power to raise or borrow money and grant security therefor over the property of the company.

(4)  Power to appoint a solicitor or accountant or other professionally qualified person to assist him in the performance of his functions.

(5)  Power to bring or defend any action or other legal proceedings in the name and on behalf of the company.

(6)  Power to refer to arbitration any question affecting the company.

(7)  Power to effect and maintain insurances in respect of the business and property of the company.

(8)  Power to use the company's seal.

(9)  Power to do all acts and to execute in the name and on behalf of the company any deed, receipt or other document.

(10)  Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company.

(11)  Power to appoint any agent to do any business which he is unable to do himself or which can more conveniently be done by an agent and power to employ and dismiss employees.

(12)  Power to do all such things (including the carrying out of works) as may be necessary for the realisation of the property of the company.

(13)  Power to make any payment which is necessary or incidental to the performance of his functions.

(14)  Power to carry on the business of the company.

(15)  Power to establish subsidiaries of the company.

(16)  Power to transfer to subsidiaries of the company the whole or any part of the business and property of the company.

(17)  Power to grant or accept a surrender of a lease or tenancy of any of the property of the company, and to take a lease or tenancy of any property required or convenient for the business of the company.

(18)  Power to make any arrangement or compromise on behalf of the company.

(19)  Power to call up any uncalled capital of the company.

(20)  Power to rank and claim in the bankruptcy, insolvency, sequestration or liquidation of any person indebted to the company and to receive dividends, and to accede to trust deeds for the creditors of any such person.

(21)  Power to present of defend a petition for the winding up of the company.

(22)  Power to change the situation of the company's registered office.

(23)  Power to do all other things incidental to the exercise of the foregoing powers.

550

**IN THE HIGH COURT OF JUSTICE**                    No.   of 2009

**CHANCERY DIVISION**

**COMPANIES COURT**


THE HONOURABLE MR JUSTICE BLACKBURNE

14 JANUARY 2009


IN THE MATTER OF NORTEL NETWORKS N.V.

AND IN THE MATTER OF THE INSOLVENCY ACT 1986


--------------------------

**Draft/ORDER**

--------------------------


**HERBERT SMITH LLP**
Exchange House
Primrose Street
London EC2A 2HS
Tel: 020 7374 8000
Fax: 020 7374 0888
Ref: 3946/30895329

<u>IN THE HIGH COURT OF JUSTICE</u>                 No. $545$    of 2009

<u>CHANCERY DIVISION</u>

<u>COMPANIES COURT</u>

**THE HONOURABLE MR JUSTICE BLACKBURNE**

**14 JANUARY 2009**



**IN THE MATTER OF NORTEL NETWORKS OY**

**AND IN THE MATTER OF THE INSOLVENCY ACT 1986**



~~Draft/~~ORDER

UPON THE APPLICATION of the directors of Nortel Networks Oy ("the Company")

AND UPON HEARING Leading Counsel for the Applicants

AND UPON READING the evidence relating to this Application

AND UPON THE COURT being satisfied on the evidence before it that the EC Regulation on Insolvency Proceedings 2000 ("the EC Regulation") does apply and that these proceedings are main proceedings as defined in Article 3 of the EC Regulation

AND UPON the Applicants undertaking by their Counsel that they will issue and file an Ordinary Application in the same or substantially the same terms as the draft shown to the Court

IT IS ORDERED AND DIRECTED THAT:

1.  Pursuant to rule 12.9(2) of the Insolvency Rules 1986 ("the Rules"), the period of time for service of the application provided by rule 2.8(1) of the Rules be abridged.

2.  Pursuant to rule 12.9(2) of the Rules, the period of time for filing evidence of service of the administration application provided by rule 2.9(2) of the Rules be abridged.

3.  For the period during which this Order is in force, the affairs, business and property of the Company be managed by the Administrators appointed by paragraph 4 of this Order.

4.  The Administrators of the Company shall be Alan Robert Bloom, Alan Michael Hudson, Stephen John Harris and Christopher John Wilkinson Hill of Ernst & Young LLP ("the Joint Administrators").

5.  The responsibilities and powers of the Joint Administrators and the material effect of the making of this Order are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 ("IA 1986"), and the provisions summarised in the schedule hereto will apply.

6.  Pursuant to paragraph 3 of Schedule 1, IA 1986, the Joint Administrators be at liberty to enter into and to procure the Company to enter into an administration expense facility agreement in the same or substantially the same terms as the draft shown to the Court (whether as borrower or lender thereunder), such agreement to take effect as a contract entered into by the Joint Administrators within the meaning of paragraph 99(4) of Schedule B1, IA 1986.

7.  Pursuant to paragraph 66 of Schedule B1, IA 1986, provided that they consider the making of such payments is likely to assist achievement of the purpose of the administration, the Joint Administrators may:

    (1) make such payments to the employees of the Company as they would receive from the assets of the Company if secondary proceedings were to be commenced in Finland under Article 27 of the EC Regulation;

    (2) make such payments from the assets of the Company to those creditors of the Company whose claims against the Company would be preferential under the laws of

Finland if secondary proceedings were to be commenced there under Article 27 of the EC Regulation, as they would receive in such secondary proceedings; and

(3) make payment in respect of pre-administration liabilities.

8. The Joint Administrators, being officers of this Court, may apply to the relevant judicial authorities in any other country or territory for such assistance as they consider they may require in connection with the exercise of their functions.

9. Pursuant to paragraph 100(2) of Schedule B1, IA 1986, any function to be exercised or performed by an administrator may be done by all or any of one or more of the persons for the time being holding that office.

10. Pursuant to rule 7.31(5) of the Rules, the First Witness Statement of Sharon Lynette Rolston and the exhibits thereto shall not be available for public inspection without the Court's leave.

11. The costs of and occasioned by this Application, including the costs of Ernst & Young LLP, be paid as an expense of the administration.

12. This Order shall take effect from on 14 January 2009.

# SCHEDULE

1. The objectives of the Joint Administrators are those set out in paragraphs 3 and 4 of Schedule B1 to the Insolvency Act 1986 ("Schedule B1").

2. Without prejudice to the provisions of Schedule B1 and by way of summary the functions and objectives of the Joint Administrators are:

   (1) Under paragraph 3(1) of Schedule B1, the Joint Administrators must perform their functions with the objective of:

      (a) rescuing the Company as a going concern ("objective (a)"); or

      (b) achieving a better result for the Company's creditors as a whole than would be likely if the Company were wound up (without first being in Administration) ("objective (b)"), but only if the Joint Administrators think that it is not reasonably practicable to achieve objective (a) or that objective (b) would achieve a better result for the company's creditors as a whole; or

      (c) realising property in order to make a distribution to one or more secured or preferential creditors, but only if the Joint Administrators think it is not reasonably practicable to achieve objective (a) or objective (b) and they do not unnecessarily harm the interests of the creditors of the Company as a whole.

   (2) Under paragraphs 49-51 of Schedule B1, the Joint Administrators must make a statement setting out their proposals for achieving the purpose of administration and must, inter alia, send those proposals to every creditor of the Company of whose details they are aware.

   (3) Under paragraphs 51 and 52 of Schedule B1, unless the Joint Administrators are of the view that no monies will be available to distribute to the creditors of the Company or that creditors will be paid in full they must convene and hold within 10 weeks of the making of the Administration Order a meeting of creditors for the purposes of considering and, if thought fit, approving their proposals with or without modification or seek the approval of creditors by correspondence.

10/18054470_1                                                                    4

(4) Under paragraph 67 of Schedule B1, the Joint Administrators have a duty to take custody or control of all property of the Company on being appointed.

(5) Under paragraph 68 of Schedule B1, the Joint Administrators are under a duty to manage the affairs, business and property of the Company in accordance with their proposals as approved by the Company's creditors and subject to any directions that the English Court may give them.

(6) The Joint Administrators must obtain approval for payment of their fees and disbursements from the creditors of the Company or from a committee of the Company's creditors or from the English Court.

3. The powers of the Joint Administrators are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 (a copy of which is annexed to this Order as Appendix A).

4. Without prejudice to those provisions and by way of summary, the Joint Administrators have the following powers under Schedule B1:

(1) The power to do anything necessary or expedient for the management of the affairs, business and property of the Company.

(2) The Joint Administrators may remove and appoint directors of the Company, and no officer of the Company may exercise a management power without consent of the Joint Administrators.

(3) The Joint Administrators may convene and hold meetings of members and creditors of the Company.

(4) The Joint Administrators may apply to the English Court for directions in connection with their functions.

(5) The Joint Administrators may pay monies to secured or preferential creditors of the Company and, with the consent of the English Court, may make a distribution to unsecured creditors.

(6) In exercising their functions, the Joint Administrators act as agents of the Company.

5. The effect of the moratorium on insolvency and other proceedings against the Company which came into effect on 14 January 2009 is set out in Schedule B1.

6. Without prejudice to the provisions of Schedule B1 and by way of summary the moratorium has the following effect on insolvency and other proceedings:

(1) No resolution may be passed to wind up the Company;

(2) No order may be made for the winding up of the Company;

(3) No step may be taken to enforce any security over the Company's property without the consent of the Joint Administrators or the permission of the English Court;

(4) No step may be taken to repossess any goods in the Company's possession under any hire purchase agreement, except with the consent of the Joint Administrators or the permission of the English Court;

(5) A landlord may not exercise a right of forfeiture by peaceable re-entry in relation to any premises let to the Company except with the consent of the Joint Administrators or the permission of the English Court; and

(6) No legal process (including legal proceedings, execution, distress and diligence) may be instituted or continued against the Company or the property of the Company, except with the consent of the Joint Administrators or the permission of the English Court.

# APPENDIX A

## Schedule 1 to the Insolvency Act 1986

### Powers of Administrator

(1)   Power to take possession of, collect and get in the property of the Company and, for that purpose, to take such proceedings as may seem to him expedient.

(2)   Power to sell or otherwise dispose of the property of the Company by public auction or private contract or, in Scotland, to sell, feu, hire out or otherwise dispose of the property of the company by public roup or private bargain.

(3)   Power to raise or borrow money and grant security therefor over the property of the company.

(4)   Power to appoint a solicitor or accountant or other professionally qualified person to assist him in the performance of his functions.

(5)   Power to bring or defend any action or other legal proceedings in the name and on behalf of the company.

(6)   Power to refer to arbitration any question affecting the company.

(7)   Power to effect and maintain insurances in respect of the business and property of the company.

(8)   Power to use the company's seal.

(9)   Power to do all acts and to execute in the name and on behalf of the company any deed, receipt or other document.

(10)  Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company.

(11)  Power to appoint any agent to do any business which he is unable to do himself or which can more conveniently be done by an agent and power to employ and dismiss employees.

(12) Power to do all such things (including the carrying out of works) as may be necessary for the realisation of the property of the company.

(13) Power to make any payment which is necessary or incidental to the performance of his functions.

(14) Power to carry on the business of the company.

(15) Power to establish subsidiaries of the company.

(16) Power to transfer to subsidiaries of the company the whole or any part of the business and property of the company.

(17) Power to grant or accept a surrender of a lease or tenancy of any of the property of the company, and to take a lease or tenancy of any property required or convenient for the business of the company.

(18) Power to make any arrangement or compromise on behalf of the company.

(19) Power to call up any uncalled capital of the company.

(20) Power to rank and claim in the bankruptcy, insolvency, sequestration or liquidation of any person indebted to the company and to receive dividends, and to accede to trust deeds for the creditors of any such person.

(21) Power to present of defend a petition for the winding up of the company.

(22) Power to change the situation of the company's registered office.

(23) Power to do all other things incidental to the exercise of the foregoing powers.

IN THE HIGH COURT OF JUSTICE                    No.  ~545~  of 2009

CHANCERY DIVISION

COMPANIES COURT


THE HONOURABLE MR JUSTICE BLACKBURNE

14 JANUARY 2009


IN THE MATTER OF NORTEL NETWORKS OY

AND IN THE MATTER OF THE INSOLVENCY ACT 1986


—————————————

**Draft/ORDER**

—————————————


**HERBERT SMITH LLP**
Exchange House
Primrose Street
London EC2A 2HS
Tel: 020 7374 8000
Fax: 020 7374 0888
Ref: 3946/30895329

<u>**IN THE HIGH COURT OF JUSTICE**</u>              No. 554      of 2009

<u>**CHANCERY DIVISION**</u>

<u>**COMPANIES COURT**</u>


**THE HONOURABLE MR JUSTICE BLACKBURNE**

**14 JANUARY 2009**


**IN THE MATTER OF NORTEL NETWORKS POLSKA SP.Z O.O.**

**AND IN THE MATTER OF THE INSOLVENCY ACT 1986**




~~Draft~~/ORDER


UPON THE APPLICATION of the directors of Nortel Networks Polska SP.Z o.o. ("the Company")

AND UPON HEARING Leading Counsel for the Applicants

AND UPON READING the evidence relating to this Application

AND UPON THE COURT being satisfied on the evidence before it that the EC Regulation on Insolvency Proceedings 2000 ("the EC Regulation") does apply and that these proceedings are main proceedings as defined in Article 3 of the EC Regulation

AND UPON the Applicants undertaking by their Counsel that they will issue and file an Ordinary Application in the same or substantially the same terms as the draft shown to the Court

IT IS ORDERED AND DIRECTED THAT:

1. Pursuant to rule 12.9(2) of the Insolvency Rules 1986 ("the Rules"), the period of time for service of the application provided by rule 2.8(1) of the Rules be abridged.

2. Pursuant to rule 12.9(2) of the Rules, the period of time for filing evidence of service of the administration application provided by rule 2.9(2) of the Rules be abridged.

3. For the period during which this Order is in force, the affairs, business and property of the Company be managed by the Administrators appointed by paragraph 4 of this Order.

4. The Administrators of the Company shall be Alan Robert Bloom, Alan Michael Hudson, Stephen John Harris and Christopher John Wilkinson Hill of Ernst & Young LLP ("the Joint Administrators").

5. The responsibilities and powers of the Joint Administrators and the material effect of the making of this Order are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 ("IA 1986"), and the provisions summarised in the schedule hereto will apply.

6. Pursuant to paragraph 3 of Schedule 1, IA 1986, the Joint Administrators be at liberty to enter into and to procure the Company to enter into an administration expense facility agreement in the same or substantially the same terms as the draft shown to the Court, such agreement to take effect as a contract entered into by the Joint Administrators within the meaning of paragraph 99(4) of Schedule B1, IA 1986.

7. Pursuant to paragraph 66 of Schedule B1, IA 1986, provided that they consider the making of such payments is likely to assist achievement of the purpose of the administration, the Joint Administrators may:

   (1) make such payments to the employees of the Company as they would receive from the assets of the Company if secondary proceedings were to be commenced in Poland under Article 27 of the EC Regulation;

   (2) make such payments from the assets of the Company to those creditors of the Company whose claims against the Company would be preferential under the laws of

Poland if secondary proceedings were to be commenced there under Article 27 of the EC Regulation, as they would receive in such secondary proceedings; and

(3) make payment in respect of pre-administration liabilities.

8. The Joint Administrators, being officers of this Court, may apply to the relevant judicial authorities in any other country or territory for such assistance as they consider they may require in connection with the exercise of their functions.

9. Pursuant to paragraph 100(2) of Schedule B1, IA 1986, any function to be exercised or performed by an administrator may be done by all or any of one or more of the persons for the time being holding that office.

10. Pursuant to rule 7.31(5) of the Rules, the First Witness Statement of Sharon Lynette Rolston and the exhibits thereto shall not be available for public inspection without the Court's leave.

11. The costs of and occasioned by this Application, including the costs of Ernst & Young LLP, be paid as an expense of the administration.

12. This Order shall take effect from [ 5pm ] on 14 January 2009.

SCHEDULE

1.  The objectives of the Joint Administrators are those set out in paragraphs 3 and 4 of Schedule B1 to the Insolvency Act 1986 ("Schedule B1").

2.  Without prejudice to the provisions of Schedule B1 and by way of summary the functions and objectives of the Joint Administrators are:

    (1) Under paragraph 3(1) of Schedule B1, the Joint Administrators must perform their functions with the objective of:

        (a) rescuing the Company as a going concern ("objective (a)"); or

        (b) achieving a better result for the Company's creditors as a whole than would be likely if the Company were wound up (without first being in Administration) ("objective (b)"), but only if the Joint Administrators think that it is not reasonably practicable to achieve objective (a) or that objective (b) would achieve a better result for the company's creditors as a whole; or

        (c) realising property in order to make a distribution to one or more secured or preferential creditors, but only if the Joint Administrators think it is not reasonably practicable to achieve objective (a) or objective (b) and they do not unnecessarily harm the interests of the creditors of the Company as a whole.

    (2) Under paragraphs 49-51 of Schedule B1, the Joint Administrators must make a statement setting out their proposals for achieving the purpose of administration and must, inter alia, send those proposals to every creditor of the Company of whose details they are aware.

    (3) Under paragraphs 51 and 52 of Schedule B1, unless the Joint Administrators are of the view that no monies will be available to distribute to the creditors of the Company or that creditors will be paid in full they must convene and hold within 10 weeks of the making of the Administration Order a meeting of creditors for the purposes of considering and, if thought fit, approving their proposals with or without modification or seek the approval of creditors by correspondence.

(4) Under paragraph 67 of Schedule B1, the Joint Administrators have a duty to take custody or control of all property of the Company on being appointed.

(5) Under paragraph 68 of Schedule B1, the Joint Administrators are under a duty to manage the affairs, business and property of the Company in accordance with their proposals as approved by the Company's creditors and subject to any directions that the English Court may give them.

(6) The Joint Administrators must obtain approval for payment of their fees and disbursements from the creditors of the Company or from a committee of the Company's creditors or from the English Court.

3.  The powers of the Joint Administrators are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 (a copy of which is annexed to this Order as Appendix A).

4.  Without prejudice to those provisions and by way of summary, the Joint Administrators have the following powers under Schedule B1:

(1) The power to do anything necessary or expedient for the management of the affairs, business and property of the Company.

(2) The Joint Administrators may remove and appoint directors of the Company, and no officer of the Company may exercise a management power without consent of the Joint Administrators.

(3) The Joint Administrators may convene and hold meetings of members and creditors of the Company.

(4) The Joint Administrators may apply to the English Court for directions in connection with their functions.

(5) The Joint Administrators may pay monies to secured or preferential creditors of the Company and, with the consent of the English Court, may make a distribution to unsecured creditors.

(6) In exercising their functions, the Joint Administrators act as agents of the Company.

5.  The effect of the moratorium on insolvency and other proceedings against the Company which came into effect on 14 January 2009 is set out in Schedule B1.

6.  Without prejudice to the provisions of Schedule B1 and by way of summary the moratorium has the following effect on insolvency and other proceedings:

(1) No resolution may be passed to wind up the Company;

(2) No order may be made for the winding up of the Company;

(3) No step may be taken to enforce any security over the Company's property without the consent of the Joint Administrators or the permission of the English Court;

(4) No step may be taken to repossess any goods in the Company's possession under any hire purchase agreement, except with the consent of the Joint Administrators or the permission of the English Court;

(5) A landlord may not exercise a right of forfeiture by peaceable re-entry in relation to any premises let to the Company except with the consent of the Joint Administrators or the permission of the English Court; and

(6) No legal process (including legal proceedings, execution, distress and diligence) may be instituted or continued against the Company or the property of the Company, except with the consent of the Joint Administrators or the permission of the English Court.

# APPENDIX A

## Schedule 1 to the Insolvency Act 1986

### Powers of Administrator

(1)    Power to take possession of, collect and get in the property of the Company and, for that purpose, to take such proceedings as may seem to him expedient.

(2)    Power to sell or otherwise dispose of the property of the Company by public auction or private contract or, in Scotland, to sell, feu, hire out or otherwise dispose of the property of the company by public roup or private bargain.

(3)    Power to raise or borrow money and grant security therefor over the property of the company.

(4)    Power to appoint a solicitor or accountant or other professionally qualified person to assist him in the performance of his functions.

(5)    Power to bring or defend any action or other legal proceedings in the name and on behalf of the company.

(6)    Power to refer to arbitration any question affecting the company.

(7)    Power to effect and maintain insurances in respect of the business and property of the company.

(8)    Power to use the company's seal.

(9)    Power to do all acts and to execute in the name and on behalf of the company any deed, receipt or other document.

(10)    Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company.

(11)    Power to appoint any agent to do any business which he is unable to do himself or which can more conveniently be done by an agent and power to employ and dismiss employees.

(12) Power to do all such things (including the carrying out of works) as may be necessary for the realisation of the property of the company.

(13) Power to make any payment which is necessary or incidental to the performance of his functions.

(14) Power to carry on the business of the company.

(15) Power to establish subsidiaries of the company.

(16) Power to transfer to subsidiaries of the company the whole or any part of the business and property of the company.

(17) Power to grant or accept a surrender of a lease or tenancy of any of the property of the company, and to take a lease or tenancy of any property required or convenient for the business of the company.

(18) Power to make any arrangement or compromise on behalf of the company.

(19) Power to call up any uncalled capital of the company.

(20) Power to rank and claim in the bankruptcy, insolvency, sequestration or liquidation of any person indebted to the company and to receive dividends, and to accede to trust deeds for the creditors of any such person.

(21) Power to present of defend a petition for the winding up of the company.

(22) Power to change the situation of the company's registered office.

(23) Power to do all other things incidental to the exercise of the foregoing powers.

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

COMPANIES COURT

5.54

No.     of 2009


THE HONOURABLE MR JUSTICE BLACKBURNE

14 JANUARY 2009


IN THE MATTER OF NORTEL NETWORKS POLSKA SP.Z O.O.

AND IN THE MATTER OF THE INSOLVENCY ACT 1986



————————————

**Draft/ORDER**

————————————



**HERBERT SMITH LLP**
**Exchange House**
**Primrose Street**
**London EC2A 2HS**
**Tel: 020 7374 8000**
**Fax: 020 7374 0888**
**Ref: 3946/30895329**


I0/18053561_1                                              9

**IN THE HIGH COURT OF JUSTICE**                          No. 547 of 2009

**CHANCERY DIVISION**

**COMPANIES COURT**



**THE HONOURABLE MR JUSTICE BLACKBURNE**

**14 JANUARY 2009**

**IN THE MATTER OF NORTEL NETWORKS PORTUGAL, S.A.**

**AND IN THE MATTER OF THE INSOLVENCY ACT 1986**

---

**ORDER**

---

UPON THE APPLICATION of the directors of Nortel Networks Portugal, S.A. ("the Company")

AND UPON HEARING Leading Counsel for the Applicants

AND UPON READING the evidence relating to this Application

AND UPON THE COURT being satisfied on the evidence before it that the EC Regulation on Insolvency Proceedings 2000 ("the EC Regulation") does apply and that these proceedings are main proceedings as defined in Article 3 of the EC Regulation

AND UPON the Applicants undertaking by their Counsel that they will issue and file an Ordinary Application in the same or substantially the same terms as the draft shown to the Court

IT IS ORDERED AND DIRECTED THAT:

1.  Pursuant to rule 12.9(2) of the Insolvency Rules 1986 ("the Rules"), the period of time for service of the application provided by rule 2.8(1) of the Rules be abridged.

2.  Pursuant to rule 12.9(2) of the Rules, the period of time for filing evidence of service of the administration application provided by rule 2.9(2) of the Rules be abridged.

3.  For the period during which this Order is in force, the affairs, business and property of the Company be managed by the Administrators appointed by paragraph 4 of this Order.

4.  The Administrators of the Company shall be Alan Robert Bloom, Alan Michael Hudson, Stephen John Harris and Christopher John Wilkinson Hill of Ernst & Young LLP ("the Joint Administrators").

5.  The responsibilities and powers of the Joint Administrators and the material effect of the making of this Order are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 ("IA 1986"), and the provisions summarised in the schedule hereto will apply.

6.  Pursuant to paragraph 3 of Schedule 1, IA 1986, the Joint Administrators be at liberty to enter into and to procure the Company to enter into an administration expense facility agreement in the same or substantially the same terms as the draft shown to the Court (whether as borrower or lender thereunder), such agreement to take effect as a contract entered into by the Joint Administrators within the meaning of paragraph 99(4) of Schedule B1, IA 1986.

7.  Pursuant to paragraph 66 of Schedule B1, IA 1986, provided that they consider the making of such payments is likely to assist achievement of the purpose of the administration, the Joint Administrators may:

    (1) make such payments to the employees of the Company as they would receive from the assets of the Company if secondary proceedings were to be commenced in Portugal under Article 27 of the EC Regulation;

    (2) make such payments from the assets of the Company to those creditors of the Company whose claims against the Company would be preferential under the laws of

Portugal if secondary proceedings were to be commenced there under Article 27 of the EC Regulation, as they would receive in such secondary proceedings; and

(3) make payment in respect of pre-administration liabilities.

8. The Joint Administrators, being officers of this Court, may apply to the relevant judicial authorities in any other country or territory for such assistance as they consider they may require in connection with the exercise of their functions.

9. Pursuant to paragraph 100(2) of Schedule B1, IA 1986, any function to be exercised or performed by an administrator may be done by all or any of one or more of the persons for the time being holding that office.

10. Pursuant to rule 7.31(5) of the Rules, the First Witness Statement of Sharon Lynette Rolston and the exhibits thereto shall not be available for public inspection without the Court's leave.

11. The costs of and occasioned by this Application, including the costs of Ernst & Young LLP, be paid as an expense of the administration.

12. This Order shall take effect from 8.00 p.m. on 14 January 2009.

SCHEDULE

1. The objectives of the Joint Administrators are those set out in paragraphs 3 and 4 of Schedule B1 to the Insolvency Act 1986 ("Schedule B1").

2. Without prejudice to the provisions of Schedule B1 and by way of summary the functions and objectives of the Joint Administrators are:

   (1) Under paragraph 3(1) of Schedule B1, the Joint Administrators must perform their functions with the objective of:

   (a) rescuing the Company as a going concern ("objective (a)"); or

   (b) achieving a better result for the Company's creditors as a whole than would be likely if the Company were wound up (without first being in Administration) ("objective (b)"), but only if the Joint Administrators think that it is not reasonably practicable to achieve objective (a) or that objective (b) would achieve a better result for the company's creditors as a whole; or

   (c) realising property in order to make a distribution to one or more secured or preferential creditors, but only if the Joint Administrators think it is not reasonably practicable to achieve objective (a) or objective (b) and they do not unnecessarily harm the interests of the creditors of the Company as a whole.

   (2) Under paragraphs 49-51 of Schedule B1, the Joint Administrators must make a statement setting out their proposals for achieving the purpose of administration and must, inter alia, send those proposals to every creditor of the Company of whose details they are aware.

   (3) Under paragraphs 51 and 52 of Schedule B1, unless the Joint Administrators are of the view that no monies will be available to distribute to the creditors of the Company or that creditors will be paid in full they must convene and hold within 10 weeks of the making of the Administration Order a meeting of creditors for the purposes of considering and, if thought fit, approving their proposals with or without modification or seek the approval of creditors by correspondence.

(4) Under paragraph 67 of Schedule B1, the Joint Administrators have a duty to take custody or control of all property of the Company on being appointed.

(5) Under paragraph 68 of Schedule B1, the Joint Administrators are under a duty to manage the affairs, business and property of the Company in accordance with their proposals as approved by the Company's creditors and subject to any directions that the English Court may give them.

(6) The Joint Administrators must obtain approval for payment of their fees and disbursements from the creditors of the Company or from a committee of the Company's creditors or from the English Court.

3.  The powers of the Joint Administrators are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 (a copy of which is annexed to this Order as Appendix A).

4.  Without prejudice to those provisions and by way of summary, the Joint Administrators have the following powers under Schedule B1:

(1) The power to do anything necessary or expedient for the management of the affairs, business and property of the Company.

(2) The Joint Administrators may remove and appoint directors of the Company, and no officer of the Company may exercise a management power without consent of the Joint Administrators.

(3) The Joint Administrators may convene and hold meetings of members and creditors of the Company.

(4) The Joint Administrators may apply to the English Court for directions in connection with their functions.

(5) The Joint Administrators may pay monies to secured or preferential creditors of the Company and, with the consent of the English Court, may make a distribution to unsecured creditors.

(6) In exercising their functions, the Joint Administrators act as agents of the Company.

5.   The effect of the moratorium on insolvency and other proceedings against the Company which came into effect on 14 January 2009 is set out in Schedule B1.

6.   Without prejudice to the provisions of Schedule B1 and by way of summary the moratorium has the following effect on insolvency and other proceedings:

(1) No resolution may be passed to wind up the Company;

(2) No order may be made for the winding up of the Company;

(3) No step may be taken to enforce any security over the Company's property without the consent of the Joint Administrators or the permission of the English Court;

(4) No step may be taken to repossess any goods in the Company's possession under any hire purchase agreement, except with the consent of the Joint Administrators or the permission of the English Court;

(5) A landlord may not exercise a right of forfeiture by peaceable re-entry in relation to any premises let to the Company except with the consent of the Joint Administrators or the permission of the English Court; and

(6) No legal process (including legal proceedings, execution, distress and diligence) may be instituted or continued against the Company or the property of the Company, except with the consent of the Joint Administrators or the permission of the English Court.

**APPENDIX A**

**Schedule 1 to the Insolvency Act 1986**

**Powers of Administrator**

(1)  Power to take possession of, collect and get in the property of the Company and, for that purpose, to take such proceedings as may seem to him expedient.

(2)  Power to sell or otherwise dispose of the property of the Company by public auction or private contract or, in Scotland, to sell, feu, hire out or otherwise dispose of the property of the company by public roup or private bargain.

(3)  Power to raise or borrow money and grant security therefor over the property of the company.

(4)  Power to appoint a solicitor or accountant or other professionally qualified person to assist him in the performance of his functions.

(5)  Power to bring or defend any action or other legal proceedings in the name and on behalf of the company.

(6)  Power to refer to arbitration any question affecting the company.

(7)  Power to effect and maintain insurances in respect of the business and property of the company.

(8)  Power to use the company's seal.

(9)  Power to do all acts and to execute in the name and on behalf of the company any deed, receipt or other document.

(10)  Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company.

(11)  Power to appoint any agent to do any business which he is unable to do himself or which can more conveniently be done by an agent and power to employ and dismiss employees.

(12)  Power to do all such things (including the carrying out of works) as may be necessary for the realisation of the property of the company.

(13)  Power to make any payment which is necessary or incidental to the performance of his functions.

(14)  Power to carry on the business of the company.

(15)  Power to establish subsidiaries of the company.

(16)  Power to transfer to subsidiaries of the company the whole or any part of the business and property of the company.

(17)  Power to grant or accept a surrender of a lease or tenancy of any of the property of the company, and to take a lease or tenancy of any property required or convenient for the business of the company.

(18)  Power to make any arrangement or compromise on behalf of the company.

(19)  Power to call up any uncalled capital of the company.

(20)  Power to rank and claim in the bankruptcy, insolvency, sequestration or liquidation of any person indebted to the company and to receive dividends, and to accede to trust deeds for the creditors of any such person.

(21)  Power to present of defend a petition for the winding up of the company.

(22)  Power to change the situation of the company's registered office.

(23)  Power to do all other things incidental to the exercise of the foregoing powers.

547

IN THE HIGH COURT OF JUSTICE                    No.    of 2009

CHANCERY DIVISION

COMPANIES COURT


THE HONOURABLE MR JUSTICE BLACKBURNE

14 JANUARY 2009


IN THE MATTER OF NORTEL NETWORKS PORTUGAL, S.A

AND IN THE MATTER OF THE INSOLVENCY ACT 1986



_____

**Draft/ORDER**

_____



**HERBERT SMITH LLP**
**Exchange House**
**Primrose Street**
**London EC2A 2HS**
**Tel: 020 7374 8000**
**Fax: 020 7374 0888**
**Ref: 3946/30895329**

10/18055592_1

THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

COMPANIES COURT

No. 546    of 2009

THE HONOURABLE MR JUSTICE BLACKBURNE

14 JANUARY 2009



IN THE MATTER OF NORTEL NETWORKS ROMANIA SRL

AND IN THE MATTER OF THE INSOLVENCY ACT 1986



Draft/ORDER

UPON THE APPLICATION of the directors of Nortel Networks Romania SRL ("the Company")

AND UPON HEARING Leading Counsel for the Applicants

AND UPON READING the evidence relating to this Application

AND UPON THE COURT being satisfied on the evidence before it that the EC Regulation on Insolvency Proceedings 2000 ("the EC Regulation") does apply and that these proceedings are main proceedings as defined in Article 3 of the EC Regulation

AND UPON the Applicants undertaking by their Counsel that they will issue and file an Ordinary Application in the same or substantially the same terms as the draft shown to the Court

IT IS ORDERED AND DIRECTED THAT:

1.  Pursuant to rule 12.9(2) of the Insolvency Rules 1986 ("the Rules"), the period of time for service of the application provided by rule 2.8(1) of the Rules be abridged.

2.  Pursuant to rule 12.9(2) of the Rules, the period of time for filing evidence of service of the administration application provided by rule 2.9(2) of the Rules be abridged.

3.  For the period during which this Order is in force, the affairs, business and property of the Company be managed by the Administrators appointed by paragraph 4 of this Order.

4.  The Administrators of the Company shall be Alan Robert Bloom, Alan Michael Hudson, Stephen John Harris and Christopher John Wilkinson Hill of Ernst & Young LLP ("the Joint Administrators").

5.  The responsibilities and powers of the Joint Administrators and the material effect of the making of this Order are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 ("IA 1986"), and the provisions summarised in the schedule hereto will apply.

6.  Pursuant to paragraph 3 of Schedule 1, IA 1986, the Joint Administrators be at liberty to enter into and to procure the Company to enter into an administration expense facility agreement in the same or substantially the same terms as the draft shown to the Court (whether as a borrower or lender thereunder), such agreement to take effect as a contract entered into by the Joint Administrators within the meaning of paragraph 99(4) of Schedule B1, IA 1986.

7.  Pursuant to paragraph 66 of Schedule B1, IA 1986, provided that they consider the making of such payments is likely to assist achievement of the purpose of the administration, the Joint Administrators may:

    (1) make such payments to the employees of the Company as they would receive from the assets of the Company if secondary proceedings were to be commenced in Romania under Article 27 of the EC Regulation;

    (2) make such payments from the assets of the Company to those creditors of the Company whose claims against the Company would be preferential under the laws of

Romania if secondary proceedings were to be commenced there under Article 27 of the EC Regulation, as they would receive in such secondary proceedings; and

(3) make payment in respect of pre-administration liabilities.

8. The Joint Administrators, being officers of this Court, may apply to the relevant judicial authorities in any other country or territory for such assistance as they consider they may require in connection with the exercise of their functions.

9. Pursuant to paragraph 100(2) of Schedule B1, IA 1986, any function to be exercised or performed by an administrator may be done by all or any of one or more of the persons for the time being holding that office.

10. Pursuant to rule 7.31(5) of the Rules, the First Witness Statement of Sharon Lynette Rolston and the exhibits thereto shall not be available for public inspection without the Court's leave.

11. The costs of and occasioned by this Application, including the costs of Ernst & Young LLP, be paid as an expense of the administration.

12. This Order shall take effect from [      ] on 14 January 2009.

## SCHEDULE

1.  The objectives of the Joint Administrators are those set out in paragraphs 3 and 4 of Schedule B1 to the Insolvency Act 1986 ("Schedule B1").

2.  Without prejudice to the provisions of Schedule B1 and by way of summary the functions and objectives of the Joint Administrators are:

    (1) Under paragraph 3(1) of Schedule B1, the Joint Administrators must perform their functions with the objective of:

        (a) rescuing the Company as a going concern ("objective (a)"); or

        (b) achieving a better result for the Company's creditors as a whole than would be likely if the Company were wound up (without first being in Administration) ("objective (b)"), but only if the Joint Administrators think that it is not reasonably practicable to achieve objective (a) or that objective (b) would achieve a better result for the company's creditors as a whole; or

        (c) realising property in order to make a distribution to one or more secured or preferential creditors, but only if the Joint Administrators think it is not reasonably practicable to achieve objective (a) or objective (b) and they do not unnecessarily harm the interests of the creditors of the Company as a whole.

    (2) Under paragraphs 49-51 of Schedule B1, the Joint Administrators must make a statement setting out their proposals for achieving the purpose of administration and must, inter alia, send those proposals to every creditor of the Company of whose details they are aware.

    (3) Under paragraphs 51 and 52 of Schedule B1, unless the Joint Administrators are of the view that no monies will be available to distribute to the creditors of the Company or that creditors will be paid in full they must convene and hold within 10 weeks of the making of the Administration Order a meeting of creditors for the purposes of considering and, if thought fit, approving their proposals with or without modification or seek the approval of creditors by correspondence.

(4) Under paragraph 67 of Schedule B1, the Joint Administrators have a duty to take custody or control of all property of the Company on being appointed.

(5) Under paragraph 68 of Schedule B1, the Joint Administrators are under a duty to manage the affairs, business and property of the Company in accordance with their proposals as approved by the Company's creditors and subject to any directions that the English Court may give them.

(6) The Joint Administrators must obtain approval for payment of their fees and disbursements from the creditors of the Company or from a committee of the Company's creditors or from the English Court.

3. The powers of the Joint Administrators are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 (a copy of which is annexed to this Order as Appendix A).

4. Without prejudice to those provisions and by way of summary, the Joint Administrators have the following powers under Schedule B1:

(1) The power to do anything necessary or expedient for the management of the affairs, business and property of the Company.

(2) The Joint Administrators may remove and appoint directors of the Company, and no officer of the Company may exercise a management power without consent of the Joint Administrators.

(3) The Joint Administrators may convene and hold meetings of members and creditors of the Company.

(4) The Joint Administrators may apply to the English Court for directions in connection with their functions.

(5) The Joint Administrators may pay monies to secured or preferential creditors of the Company and, with the consent of the English Court, may make a distribution to unsecured creditors.

(6) In exercising their functions, the Joint Administrators act as agents of the Company.

5. The effect of the moratorium on insolvency and other proceedings against the Company which came into effect on 14 January 2009 is set out in Schedule B1.

6. Without prejudice to the provisions of Schedule B1 and by way of summary the moratorium has the following effect on insolvency and other proceedings:

(1) No resolution may be passed to wind up the Company;

(2) No order may be made for the winding up of the Company;

(3) No step may be taken to enforce any security over the Company's property without the consent of the Joint Administrators or the permission of the English Court;

(4) No step may be taken to repossess any goods in the Company's possession under any hire purchase agreement, except with the consent of the Joint Administrators or the permission of the English Court;

(5) A landlord may not exercise a right of forfeiture by peaceable re-entry in relation to any premises let to the Company except with the consent of the Joint Administrators or the permission of the English Court; and

(6) No legal process (including legal proceedings, execution, distress and diligence) may be instituted or continued against the Company or the property of the Company, except with the consent of the Joint Administrators or the permission of the English Court.

# APPENDIX A

## Schedule 1 to the Insolvency Act 1986

### Powers of Administrator

(1)   Power to take possession of, collect and get in the property of the Company and, for that purpose, to take such proceedings as may seem to him expedient.

(2)   Power to sell or otherwise dispose of the property of the Company by public auction or private contract or, in Scotland, to sell, feu, hire out or otherwise dispose of the property of the company by public roup or private bargain.

(3)   Power to raise or borrow money and grant security therefor over the property of the company.

(4)   Power to appoint a solicitor or accountant or other professionally qualified person to assist him in the performance of his functions.

(5)   Power to bring or defend any action or other legal proceedings in the name and on behalf of the company.

(6)   Power to refer to arbitration any question affecting the company.

(7)   Power to effect and maintain insurances in respect of the business and property of the company.

(8)   Power to use the company's seal.

(9)   Power to do all acts and to execute in the name and on behalf of the company any deed, receipt or other document.

(10)  Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company.

(11)  Power to appoint any agent to do any business which he is unable to do himself or which can more conveniently be done by an agent and power to employ and dismiss employees.

(12) Power to do all such things (including the carrying out of works) as may be necessary for the realisation of the property of the company.

(13) Power to make any payment which is necessary or incidental to the performance of his functions.

(14) Power to carry on the business of the company.

(15) Power to establish subsidiaries of the company.

(16) Power to transfer to subsidiaries of the company the whole or any part of the business and property of the company.

(17) Power to grant or accept a surrender of a lease or tenancy of any of the property of the company, and to take a lease or tenancy of any property required or convenient for the business of the company.

(18) Power to make any arrangement or compromise on behalf of the company.

(19) Power to call up any uncalled capital of the company.

(20) Power to rank and claim in the bankruptcy, insolvency, sequestration or liquidation of any person indebted to the company and to receive dividends, and to accede to trust deeds for the creditors of any such person.

(21) Power to present of defend a petition for the winding up of the company.

(22) Power to change the situation of the company's registered office.

(23) Power to do all other things incidental to the exercise of the foregoing powers.

IN THE HIGH COURT OF JUSTICE

No.  546 of 2009

CHANCERY DIVISION

COMPANIES COURT


THE HONOURABLE MR JUSTICE BLACKBURNE

14 JANUARY 2009


IN THE MATTER OF NORTEL NETWORKS ROMANIA SRL

AND IN THE MATTER OF THE INSOLVENCY ACT 1986


———————————

**Draft/ORDER**

———————————


**HERBERT SMITH LLP**
Exchange House
Primrose Street
London EC2A 2HS
Tel: 020 7374 8000
Fax: 020 7374 0888
Ref: 3946/30895329

IN THE HIGH COURT OF JUSTICE        No. 539     of 2009

CHANCERY DIVISION

COMPANIES COURT

THE HONOURABLE MR JUSTICE BLACKBURNE

14 JANUARY 2009



IN THE MATTER OF NORTEL NETWORKS S.A.

AND IN THE MATTER OF THE INSOLVENCY ACT 1986



~~Draft/~~ORDER

UPON THE APPLICATION of the directors of Nortel Networks S.A. ("the Company")

AND UPON HEARING Leading Counsel for the Applicants

AND UPON READING the evidence relating to this Application

AND UPON THE COURT being satisfied on the evidence before it that the EC Regulation on Insolvency Proceedings 2000 ("the EC Regulation") does apply and that these proceedings are main proceedings as defined in Article 3 of the EC Regulation

AND UPON the Applicants undertaking by their Counsel that they will issue and file an Ordinary Application in the same or substantially the same terms as the draft shown to the Court

IG/18047038_1                                              1

IT IS ORDERED AND DIRECTED THAT:

1.  Pursuant to rule 12.9(2) of the Insolvency Rules 1986 ("the Rules"), the period of time for service of the application provided by rule 2.8(1) of the Rules be abridged.

2.  Pursuant to rule 12.9(2) of the Rules, the period of time for filing evidence of service of the administration application provided by rule 2.9(2) of the Rules be abridged.

3.  For the period during which this Order is in force, the affairs, business and property of the Company be managed by the Administrators appointed by paragraph 4 of this Order.

4.  The Administrators of the Company shall be Alan Robert Bloom, Alan Michael Hudson, Stephen John Harris and Christopher John Wilkinson Hill of Ernst & Young LLP ("the Joint Administrators").

5.  The responsibilities and powers of the Joint Administrators and the material effect of the making of this Order are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 ("IA 1986"), and the provisions summarised in the schedule hereto will apply.

6.  Pursuant to paragraph 3 of Schedule 1, IA 1986, the Joint Administrators be at liberty to enter into and to procure the Company to enter into an administration expense facility agreement in the same or substantially the same terms as the draft shown to the Court (whether as a borrower or lender thereunder), such agreement to take effect as a contract entered into by the Joint Administrators within the meaning of paragraph 99(4) of Schedule B1, IA 1986.

7.  Pursuant to paragraph 66 of Schedule B1, IA 1986, provided that they consider the making of such payments is likely to assist achievement of the purpose of the administration, the Joint Administrators may:

    (1) make such payments to the employees of the Company as they would receive from the assets of the Company if secondary proceedings were to be commenced in France under Article 27 of the EC Regulation;

    (2) make such payments from the assets of the Company to those creditors of the Company whose claims against the Company would be preferential under the laws of

IO/IS047038_1                                                                2

France if secondary proceedings were to be commenced there under Article 27 of the EC Regulation, as they would receive in such secondary proceedings; and

(3) make payment in respect of pre-administration liabilities.

8. The Joint Administrators, being officers of this Court, may apply to the relevant judicial authorities in any other country or territory for such assistance as they consider they may require in connection with the exercise of their functions.

9. Pursuant to paragraph 100(2) of Schedule B1, IA 1986, any function to be exercised or performed by an administrator may be done by all or any of one or more of the persons for the time being holding that office.

10. Pursuant to rule 7.31(5) of the Rules, the First Witness Statement of Michel Clément and the exhibits thereto shall not be available for public inspection without the Court's leave.

11. The costs of and occasioned by this Application, including the costs of Ernst & Young LLP, be paid as an expense of the administration.

12. This Order shall take effect from 8pm on 14 January 2009.

## SCHEDULE

1. The objectives of the Joint Administrators are those set out in paragraphs 3 and 4 of Schedule B1 to the Insolvency Act 1986 ("Schedule B1").

2. Without prejudice to the provisions of Schedule B1 and by way of summary the functions and objectives of the Joint Administrators are:

   (1) Under paragraph 3(1) of Schedule B1, the Joint Administrators must perform their functions with the objective of:

   (a) rescuing the Company as a going concern ("objective (a)"); or

   (b) achieving a better result for the Company's creditors as a whole than would be likely if the Company were wound up (without first being in Administration) ("objective (b)"), but only if the Joint Administrators think that it is not reasonably practicable to achieve objective (a) or that objective (b) would achieve a better result for the company's creditors as a whole; or

   (c) realising property in order to make a distribution to one or more secured or preferential creditors, but only if the Joint Administrators think it is not reasonably practicable to achieve objective (a) or objective (b) and they do not unnecessarily harm the interests of the creditors of the Company as a whole.

   (2) Under paragraphs 49-51 of Schedule B1, the Joint Administrators must make a statement setting out their proposals for achieving the purpose of administration and must, inter alia, send those proposals to every creditor of the Company of whose details they are aware.

   (3) Under paragraphs 51 and 52 of Schedule B1, unless the Joint Administrators are of the view that no monies will be available to distribute to the creditors of the Company or that creditors will be paid in full they must convene and hold within 10 weeks of the making of the Administration Order a meeting of creditors for the purposes of considering and, if thought fit, approving their proposals with or without modification or seek the approval of creditors by correspondence.

(4) Under paragraph 67 of Schedule B1, the Joint Administrators have a duty to take custody or control of all property of the Company on being appointed.

(5) Under paragraph 68 of Schedule B1, the Joint Administrators are under a duty to manage the affairs, business and property of the Company in accordance with their proposals as approved by the Company's creditors and subject to any directions that the English Court may give them.

(6) The Joint Administrators must obtain approval for payment of their fees and disbursements from the creditors of the Company or from a committee of the Company's creditors or from the English Court.

3. The powers of the Joint Administrators are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 (a copy of which is annexed to this Order as Appendix A).

4. Without prejudice to those provisions and by way of summary, the Joint Administrators have the following powers under Schedule B1:

(1) The power to do anything necessary or expedient for the management of the affairs, business and property of the Company.

(2) The Joint Administrators may remove and appoint directors of the Company, and no officer of the Company may exercise a management power without consent of the Joint Administrators.

(3) The Joint Administrators may convene and hold meetings of members and creditors of the Company.

(4) The Joint Administrators may apply to the English Court for directions in connection with their functions.

(5) The Joint Administrators may pay monies to secured or preferential creditors of the Company and, with the consent of the English Court, may make a distribution to unsecured creditors.

(6) In exercising their functions, the Joint Administrators act as agents of the Company.

5. The effect of the moratorium on insolvency and other proceedings against the Company which came into effect on 14 January 2009 is set out in Schedule B1.

6. Without prejudice to the provisions of Schedule B1 and by way of summary the moratorium has the following effect on insolvency and other proceedings:

(1) No resolution may be passed to wind up the Company;

(2) No order may be made for the winding up of the Company;

(3) No step may be taken to enforce any security over the Company's property without the consent of the Joint Administrators or the permission of the English Court;

(4) No step may be taken to repossess any goods in the Company's possession under any hire purchase agreement, except with the consent of the Joint Administrators or the permission of the English Court;

(5) A landlord may not exercise a right of forfeiture by peaceable re-entry in relation to any premises let to the Company except with the consent of the Joint Administrators or the permission of the English Court; and

(6) No legal process (including legal proceedings, execution, distress and diligence) may be instituted or continued against the Company or the property of the Company, except with the consent of the Joint Administrators or the permission of the English Court.

# APPENDIX A

## Schedule 1 to the Insolvency Act 1986

### Powers of Administrator

(1)    Power to take possession of, collect and get in the property of the Company and, for that purpose, to take such proceedings as may seem to him expedient.

(2)    Power to sell or otherwise dispose of the property of the Company by public auction or private contract or, in Scotland, to sell, feu, hire out or otherwise dispose of the property of the company by public roup or private bargain.

(3)    Power to raise or borrow money and grant security therefor over the property of the company.

(4)    Power to appoint a solicitor or accountant or other professionally qualified person to assist him in the performance of his functions.

(5)    Power to bring or defend any action or other legal proceedings in the name and on behalf of the company.

(6)    Power to refer to arbitration any question affecting the company.

(7)    Power to effect and maintain insurances in respect of the business and property of the company.

(8)    Power to use the company's seal.

(9)    Power to do all acts and to execute in the name and on behalf of the company any deed, receipt or other document.

(10)    Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company.

(11)    Power to appoint any agent to do any business which he is unable to do himself or which can more conveniently be done by an agent and power to employ and dismiss employees.

(12) Power to do all such things (including the carrying out of works) as may be necessary for the realisation of the property of the company.

(13) Power to make any payment which is necessary or incidental to the performance of his functions.

(14) Power to carry on the business of the company.

(15) Power to establish subsidiaries of the company.

(16) Power to transfer to subsidiaries of the company the whole or any part of the business and property of the company.

(17) Power to grant or accept a surrender of a lease or tenancy of any of the property of the company, and to take a lease or tenancy of any property required or convenient for the business of the company.

(18) Power to make any arrangement or compromise on behalf of the company.

(19) Power to call up any uncalled capital of the company.

(20) Power to rank and claim in the bankruptcy, insolvency, sequestration or liquidation of any person indebted to the company and to receive dividends, and to accede to trust deeds for the creditors of any such person.

(21) Power to present of defend a petition for the winding up of the company.

(22) Power to change the situation of the company's registered office.

(23) Power to do all other things incidental to the exercise of the foregoing powers.

539

**IN THE HIGH COURT OF JUSTICE**                    No.___ of 2009

**CHANCERY DIVISION**

**COMPANIES COURT**


THE HONOURABLE MR JUSTICE BLACKBURNE

14 JANUARY 2009


IN THE MATTER OF NORTEL NETWORKS S.A.

AND IN THE MATTER OF THE INSOLVENCY ACT 1986


———————————

**Draft/ORDER**

———————————


**HERBERT SMITH LLP**
**Exchange House**
**Primrose Street**
**London EC2A 2HS**
**Tel: 020 7374 8000**
**Fax: 020 7374 0888**
**Ref: **

10/18047038_1                                              9

**IN THE HIGH COURT OF JUSTICE**  No. 552  of 2009

**CHANCERY DIVISION**

**COMPANIES COURT**

**THE HONOURABLE MR JUSTICE BLACKBURNE**

**14 JANUARY 2009**

**IN THE MATTER OF NORTEL NETWORKS S.P.A.**

**AND IN THE MATTER OF THE INSOLVENCY ACT 1986**



────────────────────

~~Draft~~/ORDER

────────────────────

UPON THE APPLICATION of the directors of Nortel Networks S.p.A. ("the Company")

AND UPON HEARING Leading Counsel for the Applicants

AND UPON READING the evidence relating to this Application

AND UPON THE COURT being satisfied on the evidence before it that the EC Regulation on Insolvency Proceedings 2000 ("the EC Regulation") does apply and that these proceedings are main proceedings as defined in Article 3 of the EC Regulation

AND UPON the Applicants undertaking by their Counsel that they will issue and file an Ordinary Application in the same or substantially the same terms as the draft shown to the Court

IT IS ORDERED AND DIRECTED THAT:

1.  Pursuant to rule 12.9(2) of the Insolvency Rules 1986 ("the Rules"), the period of time for service of the application provided by rule 2.8(1) of the Rules be abridged.

2.  Pursuant to rule 12.9(2) of the Rules, the period of time for filing evidence of service of the administration application provided by rule 2.9(2) of the Rules be abridged.

3.  For the period during which this Order is in force, the affairs, business and property of the Company be managed by the Administrators appointed by paragraph 4 of this Order.

4.  The Administrators of the Company shall be Alan Robert Bloom, Alan Michael Hudson, Stephen John Harris and Christopher John Wilkinson Hill of Ernst & Young LLP ("the Joint Administrators").

5.  The responsibilities and powers of the Joint Administrators and the material effect of the making of this Order are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 ("IA 1986"), and the provisions summarised in the schedule hereto will apply.

6.  Pursuant to paragraph 3 of Schedule 1, IA 1986, the Joint Administrators be at liberty to enter into and to procure the Company to enter into an administration expense facility agreement in the same or substantially the same terms as the draft shown to the Court (whether as borrower or lender thereunder), such agreement to take effect as a contract entered into by the Joint Administrators within the meaning of paragraph 99(4) of Schedule B1, IA 1986.

7.  Pursuant to paragraph 66 of Schedule B1, IA 1986, provided that they consider the making of such payments is likely to assist achievement of the purpose of the administration, the Joint Administrators may:

    (1) make such payments to the employees of the Company as they would receive from the assets of the Company if secondary proceedings were to be commenced in Italy under Article 27 of the EC Regulation;

    (2) make such payments from the assets of the Company to those creditors of the Company whose claims against the Company would be preferential under the laws of

Italy if secondary proceedings were to be commenced there under Article 27 of the EC Regulation, as they would receive in such secondary proceedings; and

(3) make payment in respect of pre-administration liabilities.

8. The Joint Administrators, being officers of this Court, may apply to the relevant judicial authorities in any other country or territory for such assistance as they consider they may require in connection with the exercise of their functions.

9. Pursuant to paragraph 100(2) of Schedule B1, IA 1986, any function to be exercised or performed by an administrator may be done by all or any of one or more of the persons for the time being holding that office.

10. Pursuant to rule 7.31(5) of the Rules, the First Witness Statement of Sharon Lynette Rolston and the exhibits thereto shall not be available for public inspection without the Court's leave.

11. The costs of and occasioned by this Application, including the costs of Ernst & Young LLP, be paid as an expense of the administration.

12. This Order shall take effect from [     ] on 14 January 2009.

## SCHEDULE

1. The objectives of the Joint Administrators are those set out in paragraphs 3 and 4 of Schedule B1 to the Insolvency Act 1986 ("Schedule B1").

2. Without prejudice to the provisions of Schedule B1 and by way of summary the functions and objectives of the Joint Administrators are:

   (1) Under paragraph 3(1) of Schedule B1, the Joint Administrators must perform their functions with the objective of:

      (a) rescuing the Company as a going concern ("objective (a)"); or

      (b) achieving a better result for the Company's creditors as a whole than would be likely if the Company were wound up (without first being in Administration) ("objective (b)"), but only if the Joint Administrators think that it is not reasonably practicable to achieve objective (a) or that objective (b) would achieve a better result for the company's creditors as a whole; or

      (c) realising property in order to make a distribution to one or more secured or preferential creditors, but only if the Joint Administrators think it is not reasonably practicable to achieve objective (a) or objective (b) and they do not unnecessarily harm the interests of the creditors of the Company as a whole.

   (2) Under paragraphs 49-51 of Schedule B1, the Joint Administrators must make a statement setting out their proposals for achieving the purpose of administration and must, inter alia, send those proposals to every creditor of the Company of whose details they are aware.

   (3) Under paragraphs 51 and 52 of Schedule B1, unless the Joint Administrators are of the view that no monies will be available to distribute to the creditors of the Company or that creditors will be paid in full they must convene and hold within 10 weeks of the making of the Administration Order a meeting of creditors for the purposes of considering and, if thought fit, approving their proposals with or without modification or seek the approval of creditors by correspondence.

(4) Under paragraph 67 of Schedule B1, the Joint Administrators have a duty to take custody or control of all property of the Company on being appointed.

(5) Under paragraph 68 of Schedule B1, the Joint Administrators are under a duty to manage the affairs, business and property of the Company in accordance with their proposals as approved by the Company's creditors and subject to any directions that the English Court may give them.

(6) The Joint Administrators must obtain approval for payment of their fees and disbursements from the creditors of the Company or from a committee of the Company's creditors or from the English Court.

3. The powers of the Joint Administrators are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 (a copy of which is annexed to this Order as Appendix A).

4. Without prejudice to those provisions and by way of summary, the Joint Administrators have the following powers under Schedule B1:

(1) The power to do anything necessary or expedient for the management of the affairs, business and property of the Company.

(2) The Joint Administrators may remove and appoint directors of the Company, and no officer of the Company may exercise a management power without consent of the Joint Administrators.

(3) The Joint Administrators may convene and hold meetings of members and creditors of the Company.

(4) The Joint Administrators may apply to the English Court for directions in connection with their functions.

(5) The Joint Administrators may pay monies to secured or preferential creditors of the Company and, with the consent of the English Court, may make a distribution to unsecured creditors.

(6) In exercising their functions, the Joint Administrators act as agents of the Company.

5. The effect of the moratorium on insolvency and other proceedings against the Company which came into effect on 14 January 2009 is set out in Schedule B1.

6. Without prejudice to the provisions of Schedule B1 and by way of summary the moratorium has the following effect on insolvency and other proceedings:

(1) No resolution may be passed to wind up the Company;

(2) No order may be made for the winding up of the Company;

(3) No step may be taken to enforce any security over the Company's property without the consent of the Joint Administrators or the permission of the English Court;

(4) No step may be taken to repossess any goods in the Company's possession under any hire purchase agreement, except with the consent of the Joint Administrators or the permission of the English Court;

(5) A landlord may not exercise a right of forfeiture by peaceable re-entry in relation to any premises let to the Company except with the consent of the Joint Administrators or the permission of the English Court; and

(6) No legal process (including legal proceedings, execution, distress and diligence) may be instituted or continued against the Company or the property of the Company, except with the consent of the Joint Administrators or the permission of the English Court.

**APPENDIX A**

**Schedule 1 to the Insolvency Act 1986**

**Powers of Administrator**

(1)    Power to take possession of, collect and get in the property of the Company and, for that purpose, to take such proceedings as may seem to him expedient.

(2)    Power to sell or otherwise dispose of the property of the Company by public auction or private contract or, in Scotland, to sell, feu, hire out or otherwise dispose of the property of the company by public roup or private bargain.

(3)    Power to raise or borrow money and grant security therefor over the property of the company.

(4)    Power to appoint a solicitor or accountant or other professionally qualified person to assist him in the performance of his functions.

(5)    Power to bring or defend any action or other legal proceedings in the name and on behalf of the company.

(6)    Power to refer to arbitration any question affecting the company.

(7)    Power to effect and maintain insurances in respect of the business and property of the company.

(8)    Power to use the company's seal.

(9)    Power to do all acts and to execute in the name and on behalf of the company any deed, receipt or other document.

(10)   Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company.

(11)   Power to appoint any agent to do any business which he is unable to do himself or which can more conveniently be done by an agent and power to employ and dismiss employees.

(12) Power to do all such things (including the carrying out of works) as may be necessary for the realisation of the property of the company.

(13) Power to make any payment which is necessary or incidental to the performance of his functions.

(14) Power to carry on the business of the company.

(15) Power to establish subsidiaries of the company.

(16) Power to transfer to subsidiaries of the company the whole or any part of the business and property of the company.

(17) Power to grant or accept a surrender of a lease or tenancy of any of the property of the company, and to take a lease or tenancy of any property required or convenient for the business of the company.

(18) Power to make any arrangement or compromise on behalf of the company.

(19) Power to call up any uncalled capital of the company.

(20) Power to rank and claim in the bankruptcy, insolvency, sequestration or liquidation of any person indebted to the company and to receive dividends, and to accede to trust deeds for the creditors of any such person.

(21) Power to present or defend a petition for the winding up of the company.

(22) Power to change the situation of the company's registered office.

(23) Power to do all other things incidental to the exercise of the foregoing powers.

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

COMPANIES COURT

552

No.    of 2009

THE HONOURABLE MR JUSTICE BLACKBURNE

14 JANUARY 2009

IN THE MATTER OF NORTEL NETWORKS S.P.A.

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

---

**Draft/ORDER**

---

**HERBERT SMITH LLP**
**Exchange House**
**Primrose Street**
**London EC2A 2HS**
**Tel: 020 7374 8000**
**Fax: 020 7374 0888**
**Ref: 3946/30895329**

<u>IN THE HIGH COURT OF JUSTICE</u>          No. 551        of 2009

<u>CHANCERY DIVISION</u>

<u>COMPANIES COURT</u>



THE HONOURABLE MR JUSTICE BLACKBURNE

14 JANUARY 2009

IN THE MATTER OF NORTEL NETWORKS SLOVENSKO, S.R.O.

AND IN THE MATTER OF THE INSOLVENCY ACT 1986



~~Draft~~/ORDER

UPON THE APPLICATION of the directors of Nortel Networks Slovensko, s.r.o. ("the Company")

AND UPON HEARING Leading Counsel for the Applicants

AND UPON READING the evidence relating to this Application

AND UPON THE COURT being satisfied on the evidence before it that the EC Regulation on Insolvency Proceedings 2000 ("the EC Regulation") does apply and that these proceedings are main proceedings as defined in Article 3 of the EC Regulation

AND UPON the Applicants undertaking by their Counsel that they will issue and file an Ordinary Application in the same or substantially the same terms as the draft shown to the Court

IT IS ORDERED AND DIRECTED THAT:

1. Pursuant to rule 12.9(2) of the Insolvency Rules 1986 ("the Rules"), the period of time for service of the application provided by rule 2.8(1) of the Rules be abridged.

2. Pursuant to rule 12.9(2) of the Rules, the period of time for filing evidence of service of the administration application provided by rule 2.9(2) of the Rules be abridged.

3. For the period during which this Order is in force, the affairs, business and property of the Company be managed by the Administrators appointed by paragraph 4 of this Order.

4. The Administrators of the Company shall be Alan Robert Bloom, Alan Michael Hudson, Stephen John Harris and Christopher John Wilkinson Hill of Ernst & Young LLP ("the Joint Administrators").

5. The responsibilities and powers of the Joint Administrators and the material effect of the making of this Order are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 ("IA 1986"), and the provisions summarised in the schedule hereto will apply.

6. Pursuant to paragraph 3 of Schedule 1, IA 1986, the Joint Administrators be at liberty to enter into and to procure the Company to enter into an administration expense facility agreement in the same or substantially the same terms as the draft shown to the Court (whether as a borrower or lender thereunder), such agreement to take effect as a contract entered into by the Joint Administrators within the meaning of paragraph 99(4) of Schedule B1, IA 1986.

7. Pursuant to paragraph 66 of Schedule B1, IA 1986, provided that they consider the making of such payments is likely to assist achievement of the purpose of the administration, the Joint Administrators may:

   (1) make such payments to the employees of the Company as they would receive from the assets of the Company if secondary proceedings were to be commenced in the Slovak Republic under Article 27 of the EC Regulation;

   (2) make such payments from the assets of the Company to those creditors of the Company whose claims against the Company would be preferential under the laws of

the Slovak Republic if secondary proceedings were to be commenced there under Article 27 of the EC Regulation, as they would receive in such secondary proceedings; and

(3) make payment in respect of pre-administration liabilities.

8. The Joint Administrators, being officers of this Court, may apply to the relevant judicial authorities in any other country or territory for such assistance as they consider they may require in connection with the exercise of their functions.

9. Pursuant to paragraph 100(2) of Schedule B1, IA 1986, any function to be exercised or performed by an administrator may be done by all or any of one or more of the persons for the time being holding that office.

10. Pursuant to rule 7.31(5) of the Rules, the First Witness Statement of Sharon Rolston and the exhibits thereto shall not be available for public inspection without the Court's leave.

11. The costs of and occasioned by this Application, including the costs of Ernst & Young LLP, be paid as an expense of the administration.

12. This Order shall take effect from [time] 8pm on 14 January 2009.

## SCHEDULE

1.  The objectives of the Joint Administrators are those set out in paragraphs 3 and 4 of Schedule B1 to the Insolvency Act 1986 ("Schedule B1").

2.  Without prejudice to the provisions of Schedule B1 and by way of summary the functions and objectives of the Joint Administrators are:

    (1) Under paragraph 3(1) of Schedule B1, the Joint Administrators must perform their functions with the objective of:

    (a) rescuing the Company as a going concern ("objective (a)"); or

    (b) achieving a better result for the Company's creditors as a whole than would be likely if the Company were wound up (without first being in Administration) ("objective (b)"), but only if the Joint Administrators think that it is not reasonably practicable to achieve objective (a) or that objective (b) would achieve a better result for the company's creditors as a whole; or

    (c) realising property in order to make a distribution to one or more secured or preferential creditors, but only if the Joint Administrators think it is not reasonably practicable to achieve objective (a) or objective (b) and they do not unnecessarily harm the interests of the creditors of the Company as a whole.

    (2) Under paragraphs 49-51 of Schedule B1, the Joint Administrators must make a statement setting out their proposals for achieving the purpose of administration and must, inter alia, send those proposals to every creditor of the Company of whose details they are aware.

    (3) Under paragraphs 51 and 52 of Schedule B1, unless the Joint Administrators are of the view that no monies will be available to distribute to the creditors of the Company or that creditors will be paid in full they must convene and hold within 10 weeks of the making of the Administration Order a meeting of creditors for the purposes of considering and, if thought fit, approving their proposals with or without modification or seek the approval of creditors by correspondence.

(4) Under paragraph 67 of Schedule B1, the Joint Administrators have a duty to take custody or control of all property of the Company on being appointed.

(5) Under paragraph 68 of Schedule B1, the Joint Administrators are under a duty to manage the affairs, business and property of the Company in accordance with their proposals as approved by the Company's creditors and subject to any directions that the English Court may give them.

(6) The Joint Administrators must obtain approval for payment of their fees and disbursements from the creditors of the Company or from a committee of the Company's creditors or from the English Court.

3. The powers of the Joint Administrators are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 (a copy of which is annexed to this Order as Appendix A).

4. Without prejudice to those provisions and by way of summary, the Joint Administrators have the following powers under Schedule B1:

(1) The power to do anything necessary or expedient for the management of the affairs, business and property of the Company.

(2) The Joint Administrators may remove and appoint directors of the Company, and no officer of the Company may exercise a management power without consent of the Joint Administrators.

(3) The Joint Administrators may convene and hold meetings of members and creditors of the Company.

(4) The Joint Administrators may apply to the English Court for directions in connection with their functions.

(5) The Joint Administrators may pay monies to secured or preferential creditors of the Company and, with the consent of the English Court, may make a distribution to unsecured creditors.

(6) In exercising their functions, the Joint Administrators act as agents of the Company.

5. The effect of the moratorium on insolvency and other proceedings against the Company which came into effect on 14 January 2009 is set out in Schedule B1.

6. Without prejudice to the provisions of Schedule B1 and by way of summary the moratorium has the following effect on insolvency and other proceedings:

(1) No resolution may be passed to wind up the Company;

(2) No order may be made for the winding up of the Company;

(3) No step may be taken to enforce any security over the Company's property without the consent of the Joint Administrators or the permission of the English Court;

(4) No step may be taken to repossess any goods in the Company's possession under any hire purchase agreement, except with the consent of the Joint Administrators or the permission of the English Court;

(5) A landlord may not exercise a right of forfeiture by peaceable re-entry in relation to any premises let to the Company except with the consent of the Joint Administrators or the permission of the English Court; and

(6) No legal process (including legal proceedings, execution, distress and diligence) may be instituted or continued against the Company or the property of the Company, except with the consent of the Joint Administrators or the permission of the English Court.

**APPENDIX A**

**Schedule 1 to the Insolvency Act 1986**

**Powers of Administrator**

(1)  Power to take possession of, collect and get in the property of the Company and, for that purpose, to take such proceedings as may seem to him expedient.

(2)  Power to sell or otherwise dispose of the property of the Company by public auction or private contract or, in Scotland, to sell, feu, hire out or otherwise dispose of the property of the company by public roup or private bargain.

(3)  Power to raise or borrow money and grant security therefor over the property of the company.

(4)  Power to appoint a solicitor or accountant or other professionally qualified person to assist him in the performance of his functions.

(5)  Power to bring or defend any action or other legal proceedings in the name and on behalf of the company.

(6)  Power to refer to arbitration any question affecting the company.

(7)  Power to effect and maintain insurances in respect of the business and property of the company.

(8)  Power to use the company's seal.

(9)  Power to do all acts and to execute in the name and on behalf of the company any deed, receipt or other document.

(10)  Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company.

(11)  Power to appoint any agent to do any business which he is unable to do himself or which can more conveniently be done by an agent and power to employ and dismiss employees.

(12)  Power to do all such things (including the carrying out of works) as may be necessary for the realisation of the property of the company.

(13)  Power to make any payment which is necessary or incidental to the performance of his functions.

(14)  Power to carry on the business of the company.

(15)  Power to establish subsidiaries of the company.

(16)  Power to transfer to subsidiaries of the company the whole or any part of the business and property of the company.

(17)  Power to grant or accept a surrender of a lease or tenancy of any of the property of the company, and to take a lease or tenancy of any property required or convenient for the business of the company.

(18)  Power to make any arrangement or compromise on behalf of the company.

(19)  Power to call up any uncalled capital of the company.

(20)  Power to rank and claim in the bankruptcy, insolvency, sequestration or liquidation of any person indebted to the company and to receive dividends, and to accede to trust deeds for the creditors of any such person.

(21)  Power to present of defend a petition for the winding up of the company.

(22)  Power to change the situation of the company's registered office.

(23)  Power to do all other things incidental to the exercise of the foregoing powers.

<u>IN THE HIGH COURT OF JUSTICE</u>

No.    of 2009    551

<u>CHANCERY DIVISION</u>

<u>COMPANIES COURT</u>

THE HONOURABLE MR JUSTICE BLACKBURNE

14 JANUARY 2009

IN THE MATTER OF NORTEL NETWORKS SLOVENSKO, S.R.O

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

---------------------------

**Draft/ORDER**

---------------------------

**HERBERT SMITH LLP**
**Exchange House**
**Primrose Street**
**London EC2A 2HS**
**Tel: 020 7374 8000**
**Fax: 020 7374 0888**
**Ref: 3946/30895329**

JD/18054844_1

**THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**COMPANIES COURT**

No. 00538 of 2009

THE HONOURABLE MR JUSTICE BLACKBURNE

14 JANUARY 2009

IN THE MATTER OF NORTEL NETWORKS, S.R.O.

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

---

~~Draft~~/ORDER

---

UPON THE APPLICATION of the directors of Nortel Networks s.r.o. ("the Company")

AND UPON HEARING Leading Counsel for the Applicants

AND UPON READING the evidence relating to this Application

AND UPON THE COURT being satisfied on the evidence before it that the EC Regulation on Insolvency Proceedings 2000 ("the EC Regulation") does apply and that these proceedings are main proceedings as defined in Article 3 of the EC Regulation

AND UPON the Applicants undertaking by their Counsel that they will issue and file an Ordinary Application in the same or substantially the same terms as the draft shown to the Court

10/18051815_1

1

**IT IS ORDERED AND DIRECTED THAT:**

1. Pursuant to rule 12.9(2) of the Insolvency Rules 1986 ("the Rules"), the period of time for service of the application provided by rule 2.8(1) of the Rules be abridged.

2. Pursuant to rule 12.9(2) of the Rules, the period of time for filing evidence of service of the administration application provided by rule 2.9(2) of the Rules be abridged.

3. For the period during which this Order is in force, the affairs, business and property of the Company be managed by the Administrators appointed by paragraph 4 of this Order.

4. The Administrators of the Company shall be Alan Robert Bloom, Alan Michael Hudson, Stephen John Harris and Christopher John Wilkinson Hill of Ernst & Young LLP ("the Joint Administrators").

5. The responsibilities and powers of the Joint Administrators and the material effect of the making of this Order are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 ("IA 1986"), and the provisions summarised in the schedule hereto will apply.

6. Pursuant to paragraph 3 of Schedule 1, IA 1986, the Joint Administrators be at liberty to enter into and to procure the Company to enter into an administration expenses facility agreement in the same or substantially the same terms as the draft shown to the Court (whether as borrower or lender), such agreement to take effect as a contract entered into by the Joint Administrators within the meaning of paragraph 99(4) of Schedule B1, IA 1986.

7. Pursuant to paragraph 66 of Schedule B1, IA 1986, provided that they consider the making of such payments is likely to assist achievement of the purpose of the administration, the Joint Administrators may:

   (1) make such payments to the employees of the Company as they would receive from the assets of the Company if secondary proceedings were to be commenced in the Czech Republic under Article 27 of the EC Regulation;

   (2) make such payments from the assets of the Company to those creditors of the Company whose claims against the Company would be preferential under the laws of the Czech Republic if secondary proceedings were to be commenced there under

Article 27 of the EC Regulation, as they would receive in such secondary proceedings; and

(3) make payment in respect of pre-administration liabilities.

8.  The Joint Administrators, being officers of this Court, may apply to the relevant judicial authorities in any other country or territory for such assistance as they consider they may require in connection with the exercise of their functions.

9.  Pursuant to paragraph 100(2) of Schedule B1, IA 1986, any function to be exercised or performed by an administrator may be done by all or any of one or more of the persons for the time being holding that office.

10.  Pursuant to rule 7.31(5) of the Rules, the First Witness Statement of Sharon Lynette Rolston and the exhibits thereto shall not be available for public inspection without the Court's leave.

11.  The costs of and occasioned by this Application, including the costs of Ernst & Young LLP, be paid as an expense of the administration.

12.  This Order shall take effect from [ *3pm* ] on 14 January 2009.

## SCHEDULE

1.  The objectives of the Joint Administrators are those set out in paragraphs 3 and 4 of Schedule B1 to the Insolvency Act 1986 ("Schedule B1").

2.  Without prejudice to the provisions of Schedule B1 and by way of summary the functions and objectives of the Joint Administrators are:

    (1) Under paragraph 3(1) of Schedule B1, the Joint Administrators must perform their functions with the objective of:

        (a) rescuing the Company as a going concern ("objective (a)"); or

        (b) achieving a better result for the Company's creditors as a whole than would be likely if the Company were wound up (without first being in Administration) ("objective (b)"), but only if the Joint Administrators think that it is not reasonably practicable to achieve objective (a) or that objective (b) would achieve a better result for the company's creditors as a whole; or

        (c) realising property in order to make a distribution to one or more secured or preferential creditors, but only if the Joint Administrators think it is not reasonably practicable to achieve objective (a) or objective (b) and they do not unnecessarily harm the interests of the creditors of the Company as a whole.

    (2) Under paragraphs 49-51 of Schedule B1, the Joint Administrators must make a statement setting out their proposals for achieving the purpose of administration and must, inter alia, send those proposals to every creditor of the Company of whose details they are aware.

    (3) Under paragraphs 51 and 52 of Schedule B1, unless the Joint Administrators are of the view that no monies will be available to distribute to the creditors of the Company or that creditors will be paid in full they must convene and hold within 10 weeks of the making of the Administration Order a meeting of creditors for the purposes of considering and, if thought fit, approving their proposals with or without modification or seek the approval of creditors by correspondence.

(4) Under paragraph 67 of Schedule B1, the Joint Administrators have a duty to take custody or control of all property of the Company on being appointed.

(5) Under paragraph 68 of Schedule B1, the Joint Administrators are under a duty to manage the affairs, business and property of the Company in accordance with their proposals as approved by the Company's creditors and subject to any directions that the English Court may give them.

(6) The Joint Administrators must obtain approval for payment of their fees and disbursements from the creditors of the Company or from a committee of the Company's creditors or from the English Court.

3.  The powers of the Joint Administrators are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 (a copy of which is annexed to this Order as Appendix A).

4.  Without prejudice to those provisions and by way of summary, the Joint Administrators have the following powers under Schedule B1:

(1) The power to do anything necessary or expedient for the management of the affairs, business and property of the Company.

(2) The Joint Administrators may remove and appoint directors of the Company, and no officer of the Company may exercise a management power without consent of the Joint Administrators.

(3) The Joint Administrators may convene and hold meetings of members and creditors of the Company.

(4) The Joint Administrators may apply to the English Court for directions in connection with their functions.

(5) The Joint Administrators may pay monies to secured or preferential creditors of the Company and, with the consent of the English Court, may make a distribution to unsecured creditors.

(6) In exercising their functions, the Joint Administrators act as agents of the Company.

5. The effect of the moratorium on insolvency and other proceedings against the Company which came into effect on 14 January 2009 is set out in Schedule B1.

6. Without prejudice to the provisions of Schedule B1 and by way of summary the moratorium has the following effect on insolvency and other proceedings:

(1) No resolution may be passed to wind up the Company;

(2) No order may be made for the winding up of the Company;

(3) No step may be taken to enforce any security over the Company's property without the consent of the Joint Administrators or the permission of the English Court;

(4) No step may be taken to repossess any goods in the Company's possession under any hire purchase agreement, except with the consent of the Joint Administrators or the permission of the English Court;

(5) A landlord may not exercise a right of forfeiture by peaceable re-entry in relation to any premises let to the Company except with the consent of the Joint Administrators or the permission of the English Court; and

(6) No legal process (including legal proceedings, execution, distress and diligence) may be instituted or continued against the Company or the property of the Company, except with the consent of the Joint Administrators or the permission of the English Court.

# APPENDIX A

## Schedule 1 to the Insolvency Act 1986

### Powers of Administrator

(1)  Power to take possession of, collect and get in the property of the Company and, for that purpose, to take such proceedings as may seem to him expedient.

(2)  Power to sell or otherwise dispose of the property of the Company by public auction or private contract or, in Scotland, to sell, feu, hire out or otherwise dispose of the property of the company by public roup or private bargain.

(3)  Power to raise or borrow money and grant security therefor over the property of the company.

(4)  Power to appoint a solicitor or accountant or other professionally qualified person to assist him in the performance of his functions.

(5)  Power to bring or defend any action or other legal proceedings in the name and on behalf of the company.

(6)  Power to refer to arbitration any question affecting the company.

(7)  Power to effect and maintain insurances in respect of the business and property of the company.

(8)  Power to use the company's seal.

(9)  Power to do all acts and to execute in the name and on behalf of the company any deed, receipt or other document.

(10)  Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company.

(11)  Power to appoint any agent to do any business which he is unable to do himself or which can more conveniently be done by an agent and power to employ and dismiss employees.

IO/1R051815_1

(12) Power to do all such things (including the carrying out of works) as may be necessary for the realisation of the property of the company.

(13) Power to make any payment which is necessary or incidental to the performance of his functions.

(14) Power to carry on the business of the company.

(15) Power to establish subsidiaries of the company.

(16) Power to transfer to subsidiaries of the company the whole or any part of the business and property of the company.

(17) Power to grant or accept a surrender of a lease or tenancy of any of the property of the company, and to take a lease or tenancy of any property required or convenient for the business of the company.

(18) Power to make any arrangement or compromise on behalf of the company.

(19) Power to call up any uncalled capital of the company.

(20) Power to rank and claim in the bankruptcy, insolvency, sequestration or liquidation of any person indebted to the company and to receive dividends, and to accede to trust deeds for the creditors of any such person.

(21) Power to present of defend a petition for the winding up of the company.

(22) Power to change the situation of the company's registered office.

(23) Power to do all other things incidental to the exercise of the foregoing powers.

IN THE HIGH COURT OF JUSTICE                          No. 538 of 2009

CHANCERY DIVISION

COMPANIES COURT


THE HONOURABLE MR JUSTICE BLACKBURNE

14 JANUARY 2009


IN THE MATTER OF NORTEL NETWORKS, S.R.O.

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

---

**Draft/ORDER**

---


HERBERT SMITH LLP
Exchange House
Primrose Street
London EC2A 2HS
Tel: 020 7374 8000
Fax: 020 7374 0888
Ref: 3946/30895329

10/18051815_1

9