# **EXHIBIT S**

**(Excerpts of February 26, 2010 Hearing Transcript)**

1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

Case No. 09-10138 (KG)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


NORTEL NETWORKS INC, et al.,


            Debtors.


- - - - - - - - - - - - - - - - - - - -x


           U.S. Bankruptcy Court

           824 North Market Street

           Wilmington, Delaware


           February 26, 2010

           12:05 AM


B E F O R E:

HON. KEVIN GROSS

U.S. BANKRUPTCY JUDGE


ECR OPERATOR:  JENNIFER PASIERB

```
 1
 2    Debtors' Fourth Omnibus Motion For An Order (A) Approving The
 3    Assumption And Assignment Of Certain Additional Executory
 4    Contracts In Connection With The Sale Of The Debtors'
 5    Enterprise Solutions Business And (B) Authorizing The Debtors
 6    To File Information Under Seal
 7
 8    Debtors' Motion For An Order Approving A Compromise Of A
 9    Controversy Between (I) Nortel Networks Inc., (II) Nortel
10    Networks Limited, III) Peacock Communications, ATSSC, Inc. And
11    (IV) John Peacock
12
13    Debtors' Motion For An Order Authorizing The Debtors To File
14    Under Seal The Unredacted Settlement Agreement Between (I)
15    Nortel Networks Inc., (II) Nortel Networks Limited, (III)
16    Peacock Communications, ATSSC, Inc. And (IV) John Peacock
17
18    Motion Of Communications Test Design, Inc. Pursuant To Section
19    362 And 553 Of The Bankruptcy Code For Relief From The
20    Automatic Stay To Effectuate A Set Off Of Pre-Petition Amounts
21    Owed By And Between Communication Test Design, Inc. And Debtors
22
23    Debtors' Application For Entry Of An Order Approving An
24    Amendment To The Terms Of Compensation Of Lazard Freres & Co.
25    LLC As Financial Advisor And Investment Banker To The Debtors
```

3

1
2   Application Of The Official Committee Of Unsecured Creditors
3   For An Order Approving An Expansion Of Scope Of Services And
4   Amendment To Terms Of Retention Of Jefferies & Company, Inc. As
5   Investment Banker To The Official Committee Of Unsecured
6   Creditors
7
8   Debtors' Fourth Omnibus Objection (Non-Substantive) To Certain
9   Claims Pursuant To 11 U.S.C. § 502, Fed. R. Bankr. 3007 And
10  Del. L.R. 3007-1 (Amended; Duplicate; Insufficient
11  Documentation)
12
13  Debtors' Motion To Add Certain Additional Debtors As Sellers In
14  The Sale Of The Debtors' Metro Ethernet Networks Business To
15  Ciena Corporation
16
17  Debtors' Motion For Entry Of An Order Enforcing The Automatic
18  Stay Against Certain Claimants With Respect To The U.K. Pension
19  Proceedings
20
21
22
23
24  Transcribed By:   Clara Rubin
25

1  THE COURT: I've got a lot already to take into
2  consideration, and what I propose to do is, and I hate to hold
3  everyone here longer, but I do think this is something that
4  requires decision today, if not a full explanation at least a
5  ruling, and I'd like to go back and give it a little bit of
6  thought and a little bit of organization. I think I'm talking
7  about, maybe, twenty or twenty-five minutes, and, hopefully,
8  that won't delay anybody getting home at a decent hour, but I
9  guess it's already an indecent hour for some who have to travel
10 out of town, so I'm just going to take my notes and some of the
11 documents and come up with a ruling that I think will,
12 hopefully, make sense. Not everybody happy, but at least it
13 will advance things to a great extent.
14  MR. O'CONNOR: Thank you, Your Honor.
15  THE COURT: Thank you. We'll stand in recess. You
16 can find a cold drink somewhere or just relax for a few minutes
17 and we'll certainly give you ample notice before I come back
18 in.
19  MR. O'CONNOR: Thank you.
20  (Recess from 5:27 p.m. until 5:56 p.m.)
21  THE CLERK: Please rise.
22  THE COURT: Thank you, everyone. Please be seated.
23  Well, I know I haven't said a lot because I've been
24 listening very closely to the evidence and the arguments of
25 counsel, and this is always the tough part of the job, and

1  that's making a ruling, but I do think that a ruling at this
2  point is appropriate given the timing, and I will issue
3  something in writing explaining the ruling in greater detail.
4         But obviously we have a motion to enforce the
5  automatic stay pending before me involving the United Kingdom
6  regulatory proceedings, and I think it's certainly a
7  complicated legal issue, but, frankly, I don't think it's as
8  difficult for the Court to arrive at a decision to grant the
9  motion as might appear as first blush.  And I'm going to
10 primarily premise my ruling on the facts that the trustee and
11 the PPF are clearly subject to this Court's jurisdiction.
12 They've filed proofs of claim for their pending pre-petition
13 claim.  This is a claim which the Court, not easily but,
14 certainly, capably, can decide at the appropriate time.  And
15 also of significance to me is the fact that the outcome of the
16 pension issue is directly impacted by the allocation issues
17 which the parties are so vigorously trying to resolve.
18         The trustees and the PPF talked about comity, and the
19 Court is very sensitive to comity, but it really runs both
20 ways.  And it's a two-way street, and the debtors, in multiple
21 jurisdictions, are expending their limited resources to arrive
22 at a resolution of asset allocation.  And to some extent that
23 asset allocation puts the United Kingdom proceeding as the cart
24 before the horse, because the ultimate disposition of the
25 pension claim will require a reasonableness determination, and

1   that, in turn, requires a determination of the allocation
2   issues.
3        I also find that not to enforce the automatic stay
4   would result in a significant hardship, and hardship, I think,
5   I know that the claimants talked about the fact that resources
6   are not identified in the statute in Section 362, but, clearly,
7   hardship is something that Courts consider, and resources
8   directly impact whether or not a hardship and prejudice would
9   result to these debtors, and I find that it would.  We have
10  very limited resources, and it would require those resources to
11  be redirected away from the primary issue which the parties are
12  addressing, and that is the issue of allocation.
13       I'm also finding that the police power exception in
14  Section 362(b)(4) does not apply here.  Obviously the exception
15  is one which Courts are supposed to very narrowly apply.
16  Courts generally look to whether or not the impact relates to
17  health or welfare or morals or safety issues and not race or
18  property issues.  And, clearly, this is primarily a property
19  issue, so that the pecuniary purpose test and the public policy
20  tests both, I think, require the Court to deny the exception,
21  that the exception applies.
22       The language "moral hazard", which the Court has heard
23  much about, does not appear in the pension statute in the
24  United Kingdom, and I will note that in every case in which
25  creditors are unpaid there is a moral hazard, I suppose, and I