# EXHIBIT G
## (Verified Chapter 15 Petition re NNUK)

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------- X

In re:                                          :    Chapter 15
                                                :
NORTEL NETWORKS UK LIMITED,                     :    Case No. 09 - 11972
                                                :
    Debtor in a Foreign Proceeding.             :    Proposed Hearing Date: June 26,
                                                     2009 at 3 p.m.

                                                     Proposed Objection Deadline:
                                                     June 23, 2009 at 4 p.m.

----------------------------------------------------------------- X

### VERIFIED PETITION FOR RECOGNITION
### OF FOREIGN PROCEEDINGS PURSUANT TO CHAPTER 15
### OF THE UNITED STATES BANKRUPTCY CODE

Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson and Stephen

John Harris are the court-appointed administrators and authorized foreign representatives (the

"Administrators") of Nortel Networks UK Limited ("NNUK" or the "Foreign Debtor") in

proceedings (the "English Proceedings") under the *Insolvency Act 1986* (the "English Insolvency

Act"), pending before the High Court of Justice of England and Wales (the "English Court").

The Administrators have commenced this chapter 15 case ancillary to the English

Proceedings and respectfully submit this Verified Petition for Recognition of Foreign

Proceedings Pursuant to Chapter 15 of the United States Bankruptcy Code (the "Verified

Petition") with the documentation required by sections 1504 and 1515 of title 11 of the United

States Code (the "Bankruptcy Code") seeking entry of an order: (i) recognizing the English

Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code (the

"Recognition Order"); (ii) enforcing the initial order of the English Court, dated January 14,

2009 (as it may be amended or extended from time to time by the English Court, the "Initial

Order") in the United States; and (iii) granting such other and further relief as this Court deems

just and proper.  In support of the Verified Petition, the Administrators respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(P).  Venue in this district is proper pursuant to 28 U.S.C. § 1410(3).

2.      The statutory predicates for the relief requested herein are sections 1504, 1507, 1515, 1517, 1520, 1521 and 105(a) of the Bankruptcy Code.

## BACKGROUND

**A.      The Nortel Global Enterprise**

3.      Nortel Networks Corporation ("NNC") is the direct or indirect parent of 142 subsidiaries operating worldwide, including Nortel Networks Limited ("NNL"), the primary Canadian operating company and holding company for most of the global subsidiaries, Nortel Networks Inc. ("NNI"), the primary U.S. operating company, and NNUK, the center of operations for Nortel's Europe, Middle East and Africa region (the "EMEA Region" or the "EMEA Companies").  See Declaration of Sharon L. Rolston, dated June 6, 2009 (including the exhibits thereto, the "Rolston Declaration"), Exhibit A (Witness Statement of Sharon Lynette Rolston, dated January 14, 2009 ("Rolston Witness Statement")), at ¶¶ 11-12, 25.

4.      Nortel is a global supplier of networking solutions, i.e. telecommunications, computer networks and software, and provides hardware and software solutions and related services to customers in North America, Europe, the Middle East, Africa,

2

Latin America and Asia.[1]  Id. at ¶ 22.  Nortel has a history of innovation in the design, development and deployment of products, systems and communications solutions.  Nortel's activities include internal Research & Development ("R&D") initiatives and external R&D partnerships.  Id. at ¶ 23.

5.      The Nortel Companies, including the Foreign Debtor, operate in a highly integrated manner globally, and the individual entities are interdependent.  Id. at ¶¶ 57-68.  In particular, Nortel employs a complex internal purchasing system for its hardware and software products and the Nortel Companies engage in frequent intercompany trading (the "Intercompany Trading").  Id. ¶¶ 76-79.  The resulting large number of intercompany receivables and payables necessitates transfer payment and intercompany settlement methods, including a suite of agreements governing transfer pricing and Intercompany Trading.  Id. at ¶ 80.

6.      Due to the highly competitive nature of the telecommunications industry in which the Nortel Companies operate and several years of consolidated net loss, the Nortel Companies attempted unsuccessfully to restructure the business.[2]  Id. at ¶¶ 90-97.

**B.      The Nortel Enterprise Bankruptcy**

7.      Insolvency proceedings for NNC and certain of its direct and indirect Canadian subsidiaries, including NNL, (collectively, the "Canadian Companies") were initiated on January 14, 2009, and are pending before the Ontario Superior Court of Justice (Commercial List) (the "Ontario Court").  In addition, chapter 11 proceedings for NNI and certain of its direct and indirect U.S. subsidiaries (together, the "U.S. Companies") were initiated in this Court on

---

[1]    References to "Nortel" or the "Nortel Companies" refer to the global enterprise as a whole.

[2]    For additional information regarding the Nortel Companies' operations, the Administrators respectfully refer the Court to the Rolston Declaration and Rolston Witness Statement, attached thereto, which are incorporated herein by reference.

January 14, 2009, and are pending before this Court.[3]  Chapter 15 proceedings for the Canadian

Companies are pending before this Court as well.[4]

## EVENTS LEADING TO THE
## COMMENCEMENT OF THE ENGLISH PROCEEDINGS

8.      The Nortel Companies operate in a highly competitive industry that is

consolidating.  Id. at ¶ 92.  For example, during recent years, two of Nortel's largest customers

merged, as did two of its largest competitors.  Id. at ¶¶ 92-93.  Also in recent years, the Nortel

Companies' operating losses have generally exceeded their revenues.  Id. at ¶ 90.  Factors

contributing to these results include Nortel's inability to reduce operating expenses, restructuring

costs, competitor and customer consolidation, and customers cutting back on capital

expenditures and deferring new investments.  Id. at ¶ 93.

9.      More specifically, the Nortel Companies have reported only losses or

break even financial results in the last five fiscal years.  Id. at ¶ 90.  Total losses increased

dramatically between 2007 and 2008.  For the nine months ended September 30, 2008, the Nortel

Companies incurred a consolidated net loss after tax of $3.7 billion, as compared to a net loss

after tax of $1 billion for the year ended December 31, 2007.  Id.  The EMEA Companies,

including the Foreign Debtor, are loss-making, and incurred combined losses after tax of $261

million and $134 million during the same periods, respectively.  Id. at ¶ 91.

10.      Beginning in September 2008, in response to increasing pressure on its

businesses resulting from the general economic downturn, Nortel began to restructure its

businesses and workforce in order to reduce costs.  These efforts, which included asset sale

negotiations, were ultimately unsuccessful.  Id. at ¶¶ 94-97.

---

[3]    In re Nortel Networks Inc., et al., Case No. 09-10138 (Bankr. D. Del. Jan. 14, 2009).

[4]    In re Nortel Networks Corp., et al., Case No. 09-10164 (Bankr. D. Del. Jan. 14, 2009).

4

11.    Consequently, on January 14, 2009, the Canadian and U.S. Companies, the Foreign Debtor and certain other EMEA Companies[5] simultaneously commenced insolvency proceedings in the U.S., Canada and England.  Id. at ¶ 99.  That same day, the English Court approved the Initial Order that, among other things, appointed the Administrators and stayed proceedings against the Foreign Debtor and its property.  See Initial Order at ¶¶ 3-4 and Schedule at ¶ 6(6), attached hereto as Exhibit A.

12.    As noted above, insolvency proceedings for the U.S. and Canadian Companies are pending before this Court.  The Administrators seek chapter 15 recognition in order to: (i) promote full cooperation between the Nortel Companies and the various courts in which their insolvency proceedings are pending; (ii) protect the Foreign Debtor's assets and interests in the United States; and (iii) ensure that the comprehensive cross-border restructuring of the Nortel Companies progresses in an orderly and efficient way.  Due to the highly interdependent nature of the Nortel Companies, an orderly reorganization is crucial to avoid the threat of disrupted operations and Intercompany Trading and the resulting loss in value for all interested parties that could result if there are chaotic, piecemeal or competing insolvency proceedings.

13.    The Administrators are not aware of any other foreign proceedings within the meaning of Bankruptcy Code § 101(23) with respect to the Foreign Debtor.

---

[5]    The following EMEA Companies, which are direct or indirect subsidiaries of the Foreign Debtor, commenced insolvency proceedings under the English Insolvency Act in the English Court on January 14, 2009: Nortel GmbH; Nortel Networks NV; Nortel Networks SpA; Nortel Networks BV; Nortel Networks Polska SP Zoo; Nortel Networks Hispania SA; Nortel Networks (Austria) GmbH; Nortel Networks sro; Nortel Networks Engineering Service Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko sro; Nortel Networks Oy; Nortel Networks Romania SRL; Nortel Networks AB; and Nortel Networks International Finance & Holding BV. In addition Nortel Networks (Ireland) Limited, Nortel Networks SA, Nortel Networks France SAS, which are not subsidiaries of the Foreign Debtor, also commenced insolvency proceedings under the English Insolvency Act in the English Court on January 14, 2009.  With the exception of Nortel Networks (Ireland) Limited, the Administrators are the court-appointed administrators and foreign representatives for all of the EMEA Companies that have commenced insolvency proceedings in the English Court.  Alan Robert Bloom and David Martin Hughes are the court-appointed administrators and foreign representatives of Nortel Networks (Ireland) Limited.

## CENTER OF MAIN INTERESTS OF THE FOREIGN DEBTOR

14.     The center of main interests, or "COMI", for the Foreign Debtor is in England.

15.     The Foreign Debtor is organized under English law and has its registered, headquarter office in England.  Rolston Decl., Ex. A, at ¶¶ 8-9, 14; Declaration of Stephen John Harris, dated June 5, 2009 (the "Harris Declaration"), at ¶ 4.d.  Pursuant to Bankruptcy Code § 1516(c), therefore, the presumptive COMI for the Foreign Debtor is England.  Moreover, even in the absence of this presumption, the COMI would undoubtedly be established in England for the following reasons:

(a)     In the Initial Order, the English Court found that the English Proceedings are main proceedings as defined in Article 3 of Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings.  By definition, a main proceeding is one that takes place in the jurisdiction where the debtor has its center of main interests.  Therefore, the English Court concluded that the COMI for the Foreign Debtor was, in fact, England.  See Initial Order; Council Regulation (EC) No 1346/2000 (June 29, 2000);

(b)     As NNC itself recognized in its chapter 15 petition, "The majority of the Nortel Companies within the EMEA . . . are subsidiaries of NNUK, which is by far the largest business in the EMEA, is the headquarters for the EMEA region." In re Nortel Networks Corp., et al., Case No. 09-10164, Verified Petition for Recognition of Foreign Proceedings, Docket Entry No. 1 at 8;

(c)     The Foreign Debtor is the center of operations and headquarters for the EMEA Region.  As a result, key sales, legal, finance, compliance and human resource functions for the entire EMEA Region are carried out in England;

(d)     The Foreign Debtor funds and conducts R&D initiatives in England.  As a result, key intellectual property assets are developed in England;

(e)     The Foreign Debtor's books and records are maintained in England.  Finance and internal audit control functions for the EMEA Region are also run from England;

6

(f)     The majority of the Foreign Debtor's creditors, by number, are located in England;

(g)     Third parties, including customers, are thought to recognize that key governance and decision making for the EMEA Region takes place in England, and would understand that England is the center of operations for the Foreign Debtor;

(h)     The majority of the Foreign Debtor's employees are located in England. In addition, senior management for the EMEA Region work at the Foreign Debtor's Maidenhead campus in England where they make the vast majority of decisions concerning the EMEA Companies' operations.

See Rolston Decl., Ex. A, at ¶¶ 15, 87, 114, 118, 120, 148-49; Harris Declaration, at ¶¶ 4.a-c, e.

## RELIEF SOUGHT

16.     By this Verified Petition, the Administrators seek ancillary relief under chapter 15 of the Bankruptcy Code in order to maximize value for all interested parties and to facilitate a comprehensive cross-border restructuring of the Foreign Debtor in cooperation with the Nortel Companies worldwide.  Specifically, the Administrators seek entry of the Recognition Order, after notice and a hearing: (i) granting recognition of the English Proceedings as a foreign main proceeding pursuant to section 1517(b)(1) and relief related thereto; (ii) enforcing the Initial Order (or such further order of the English Court as may then be appropriate) in the U.S. on a permanent basis; and (iii) such further relief as this Court deems just and proper.

17.     For the reasons set forth herein, and in Administrator's Memorandum of Law in Support of Verified Petition for Recognition of Foreign Proceeding Pursuant to Chapter 15 of the United States Bankruptcy Code (the "Memorandum of Law"), the English Proceedings are (i) foreign proceedings within the meaning of Bankruptcy Code section 101(23) and (ii) foreign main proceedings within the meaning of Bankruptcy Code section 1502(4).  As described above, the Foreign Debtor's management, strategic planning, decision making and key functions are located in England, which is the Foreign Debtor's center of main interests within the meaning

7

of Bankruptcy Code section 1516(c).  The Administrators are foreign representatives within the meaning of Bankruptcy Code section 101(24).  Moreover, the chapter 15 Petition and this Verified Petition meet the requirements of Bankruptcy Code section 1515.

18.    In addition, the requested relief is consistent with the goals of chapter 15.  The Administrators submit that granting the relief sought herein will aid the English Proceedings, best assure an opportunity for the Foreign Debtor to conduct an orderly reorganization of its financial affairs in cooperation with the efforts of the Canadian and U.S. Companies, and maximize enterprise value for the benefit of all parties in interest.  See 11 U.S.C. § 1501(a)(3) (among the objectives of chapter 15 is to contribute to the fair and efficient administration of cross-border insolvencies).

19.    Moreover, recognizing the English Proceedings would not be manifestly contrary to the public policy of the United States under Bankruptcy Code section 1506.  In fact, granting recognition will promote the public policy respecting foreign proceedings as articulated in, inter alia, Bankruptcy Code sections 1501(a) and 1508.  Thus, the conditions for recognition of the Administrators and the English Proceedings under Bankruptcy Code section 1517 have been satisfied.

20.    The English Proceedings and the facts of this case support the Administrators' request for additional assistance in the form of enforcement by this Court of the Initial Order of the English Court to the extent such relief cannot be granted directly pursuant to sections 105(a), 1520, and 1521 of the Bankruptcy Code.  Indeed, proceedings under the English Insolvency Act have uniformly been found to meet the requirements for additional assistance set forth in section 1507(b) of the Bankruptcy Code, including: (1) just treatment of all holders of claims against or interests in the debtor's property; (2) protection of claimholders in the United

8

States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; and (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title.[6]  Accordingly, granting additional assistance to the Foreign Debtor to aid the English Proceedings is warranted and justified.

## CONCLUSION

WHEREFORE, the Administrators respectfully request that this Court (a) enter the Recognition Order, after notice and a hearing, in substantially the form attached hereto as Exhibit B; (b) enforce the Initial Order of the English Court; and (c) grant such other further relief and additional assistance as this Court may deem just and proper.


Dated:  June 8, 2009              By: _____/s/ Daniel Connolly_____
        Wilmington, Delaware      BRACEWELL & GIULIANI LLP
                                  Daniel Connolly
                                  David Albalah
                                  1177 Avenue of the Americas
                                  New York, New York  10036-2714
                                  Telephone: (212) 508-6100
                                  Facsimile: (212) 508-6101
                                  daniel.connolly@bgllp.com
                                  david.albalah@bgllp.com

                                  Evan Flaschen
                                  Katherine Lindsay
                                  225 Asylum Street, Suite 2600
                                  Hartford, Connecticut  06103-1534
                                  Telephone: (860) 947-9000
                                  Facsimile: (860) 246-3201
                                  evan.flaschen@bgllp.com
                                  katherine.lindsay@bgllp.com

                                  -and-

---

[6]    Section 1507(b) provides a fifth element, "the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns," that is inapplicable to these circumstances.  11 U.S.C. § 1507(b)(5).

9

YOUNG CONAWAY STARGATT & TAYLOR, LLP
James L. Patton, Jr. (No. 2202)
Edwin J. Harron (No. 3396)
The Brandywine Building
100 West Street, 17th Floor
Wilmington, DE 09801
Telephone: (302) 571-6600
Facsimile:  (302) 571-1253
jpatton@ycst.com
eharron@ycst.com

*Attorneys for Alan Robert Bloom, Christopher John
Wilkinson Hill, Alan Michael Hudson, and Stephen John
Harris In their Capacity as Joint Administrators and
Foreign Representatives for the Foreign Debtor*

## VERIFICATION

Stephen John Harris declares under the penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. §1746, as follows:

Christopher John Wilkinson Hill, Alan Michael Hudson and Alan Robert Bloom and I are the administrators appointed and authorized to act as foreign representative of the Foreign Debtor, by the High Court of Justice of England and Wales. I have full authority to verify the foregoing Verified Petition for Recognition of Foreign Proceedings Pursuant to Chapter 15 of the United States Bankruptcy Code ("Verified Petition"). I have read the foregoing Verified Petition and am informed and do believe that the allegations contained therein are true and correct to the best of my knowledge, information, and belief. I also have relied on the contents of the Declaration of Sharon L. Rolston, dated June 5, 2009 ("Rolston Declaration") and Exhibit A (Witness Statement of Sharon Lynette Rolston, dated January 14, 2009) thereto, and am informed and do believe that the allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Dated: London, England.
      June 5, 2009

_____
Stephen John Harris
In his capacity as Administrator for the Foreign Debtor

# EXHIBIT A

# INITIAL ORDER

**IN THE HIGH COURT OF JUSTICE**                    No. 00536 of 2009

**CHANCERY DIVISION**

**COMPANIES COURT**

**THE HONOURABLE MR JUSTICE BLACKBURNE**

**14TH JANUARY 2009**



**IN THE MATTER OF NORTEL NETWORKS UK LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT 1986**

---

**Draft/ORDER**

---

UPON THE APPLICATION of the directors of Nortel Networks UK Limited ("the Company")

AND UPON HEARING Leading Counsel for the Applicants

AND UPON READING the evidence relating to this Application

AND UPON THE COURT being satisfied on the evidence before it that the EC Regulation on Insolvency Proceedings 2000 ("the EC Regulation") does apply and that these proceedings are main proceedings as defined in Article 3 of the EC Regulation

AND UPON the Applicants undertaking by their Counsel that they will issue and file an Ordinary Application in the same or substantially the same terms as the draft shown to the Court

WE HEREBY CERTIFY
THIS TO BE A TRUE AND
ACCURATE COPY OF
THE ORIGINAL

Herbert Smith LLP

**HERBERT SMITH LLP**
Exchange House
Primrose Street
London EC2A 2HS

Date... 4/8/2009

10/18042781_2                                                                                                 1

**IT IS ORDERED AND DIRECTED THAT:**

1. Pursuant to rule 12.9(2) of the Insolvency Rules 1986 ("the Rules"), the period of time for service of the application provided by rule 2.8(1) of the Rules be abridged.

2. Pursuant to rule 12.9(2) of the Rules, the period of time for filing evidence of service of the administration application provided by rule 2.9(2) of the Rules be abridged.

3. For the period during which this Order is in force, the affairs, business and property of the Company be managed by the Administrators appointed by paragraph 4 of this Order.

4. The Administrators of the Company shall be Alan Robert Bloom, Alan Michael Hudson, Stephen John Harris, David Hughes and Christopher John Wilkinson Hill of Ernst & Young LLP ("the Joint Administrators").

5. The responsibilities and powers of the Joint Administrators and the material effect of the making of this Order are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986 ("IA 1986"), and the provisions summarised in the schedule hereto will apply.

6. Pursuant to paragraph 3 of Schedule 1, IA 1986, the Joint Administrators be at liberty to enter into and to procure the Company to enter into an administration expense funding agreement (whether as borrower or lender thereunder) in the same or substantially the same terms as the draft shown to the Court, such agreement to take effect as a contract entered into by the Joint Administrators within the meaning of paragraph 99(4) of Schedule B1, IA 1986.

7. Pursuant to paragraph 66 of Schedule B1, IA 1986, provided that they consider the making of such payments is likely to assist achievement of the purpose of the administration, the Joint Administrators may make payment in respect of pre-administration liabilities of the Company.

8. The Joint Administrators, being officers of this Court, may apply to the relevant judicial authorities in any other country or territory for such assistance as they consider they may require in connection with the exercise of their functions.

9. The Joint Administrators may appoint a duly qualified professional person resident in or licensed to act in Saudi Arabia to assist them in the performance of their functions, if

they consider that it is necessary or expedient to do so for the management of the affairs, business and property of the Company, pursuant to paragraph 4 of Schedule 1, IA 1986 and/or paragraph 59(1) of Schedule B1, IA 1986.

10. Pursuant to paragraph 100(2) of Schedule B1, IA 1986, any function to be exercised or performed by an administrator may be done by all or any of one or more of the persons for the time being holding that office.

11. Pursuant to rule 7.31(5) of the Rules, the First Witness Statement of Sharon Lynette Rolston and the exhibits thereto shall not be available for public inspection without the Court's leave.

12. The costs of and occasioned by this Application, including the costs of Ernst & Young LLP, be paid as an expense of the administration.

13. This Order shall take effect from 8 p.m on 14 January 2009.

## SCHEDULE

1.  The objectives of the Joint Administrators are those set out in paragraphs 3 and 4 of Schedule B1 to the Insolvency Act 1986 ("Schedule B1").

2.  Without prejudice to the provisions of Schedule B1 and by way of summary the functions and objectives of the Joint Administrators are:

    (1) Under paragraph 3(1) of Schedule B1, the Joint Administrators must perform their functions with the objective of:

    (a) rescuing the company as a going concern ("objective (a)"); or

    (b) achieving a better result for the Company's creditors as a whole than would be likely if the Company were wound up (without first being in Administration) ("objective (b)"), but only if the Joint Administrators think that it is not reasonably practicable to achieve objective (a) or that objective (b) would achieve a better result for the company's creditors as a whole; or

    (c) realising property in order to make a distribution to one or more secured or preferential creditors, but only if the Joint Administrators think it is not reasonably practicable to achieve objective (a) or objective (b) and they do not unnecessarily harm the interests of the Company as a whole.

    (2) Under paragraphs 49-51 of Schedule B1, the Joint Administrators must make a statement setting out their proposals for achieving the purpose of administration and must, inter alia, send those proposals to every creditor of the Company of whose details they are aware.

    (3) Under paragraphs 51 and 52 of Schedule B1, unless the Joint Administrators are of the view that no monies will be available to distribute to the creditors of the Company or that creditors will be paid in full they must convene and hold within 10 weeks of the making of the Administration Order a meeting of creditors for the purposes of considering and, if thought fit, approving their proposals with or without modification or seek the approval of creditors by correspondence.

(4) Under paragraph 67 of Schedule B1, the Joint Administrators have a duty to take custody or control of all property of the Company on being appointed.

(5) Under paragraph 68 of Schedule B1, the Joint Administrators are under a duty to manage the affairs, business and property of the Company in accordance with their proposals as approved by the Company's creditors and subject to any directions that the English Court may give them.

(6) The Joint Administrators must obtain approval for payment of their fees and disbursements from the creditors of the Company or from a committee of the Company's creditors or from the English Court.

3. The powers of the Joint Administrators are those set out in Schedule B1 and in Schedule 1 to the Insolvency Act 1986.

4. Without prejudice to those provisions and by way of summary, the Joint Administrators have the following powers under Schedule B1:

(1) The power to do anything necessary or expedient for the management of the affairs, business and property of the Company.

(2) The Joint Administrators may remove and appoint directors of the Company, and no officer of the Company may exercise a management power without consent of the Joint Administrators.

(3) The Joint Administrators may convene and hold meetings of members and creditors of the Company.

(4) The Joint Administrators may apply to the English Court for directions in connection with their functions.

(5) The Joint Administrators may pay monies to secured or preferential creditors of the Company and, with the consent of the English Court, may make a distribution to unsecured creditors.

(6) In exercising their functions, the Joint Administrators act as agents of the Company.

5. The effect of the moratorium on insolvency and other proceedings against the Company which came into effect on 14 January 2009 is set out in Schedule B1.

6. Without prejudice to the provisions of Schedule B1 and by way of summary the moratorium has the following effect on insolvency and other proceedings:

    (1) No resolution may be passed to wind up the Company;

    (2) No order may be made for the winding up of the Company;

    (3) No step may be taken to enforce any security over the Company's property without the consent of the Joint Administrators or the permission of the English Court;

    (4) No step may be taken to repossess any goods in the Company's possession under any hire purchase agreement, except with the consent of the Joint Administrators or the permission of the English Court;

    (5) A landlord may not exercise a right of forfeiture by peaceable re-entry in relation to any premises let to the Company except with the consent of the Joint Administrators or the permission of the English Court; and

    (6) No legal process (including legal proceedings, execution, distress and diligence) may be instituted or continued against the Company or the property of the Company, except with the consent of the Joint Administrators or the permission of the English Court.

**IN THE HIGH COURT OF JUSTICE**                          **No.    of 2009**

**CHANCERY DIVISION**

**COMPANIES COURT**


**THE HONOURABLE MR JUSTICE BLACKBURNE**

**14 TH  JANUARY 2009**


**IN THE MATTER OF NORTEL NETWORKS UK LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT 1986**


---

**Draft/ORDER**

---


**HERBERT SMITH LLP**
**Exchange House**
**Primrose Street**
**London EC2A 2HS**
**Tel: 020 7374 8000**
**Fax: 020 7374 0888**
**Ref: 3946/30895329**


10/18042781_2                                                          7

# EXHIBIT B

## PROPOSED FORM OF RECOGNITION ORDER

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- X

In re:                                                  :  Chapter 15
                                                        :
NORTEL NETWORKS UK LIMITED,                             :  Case No. 09 - _____
                                                        :
      Debtor in a Foreign Proceeding.                   :
---------------------------------------------------------------- X

## ORDER GRANTING RECOGNITION
## AND RELIEF IN AID OF FOREIGN MAIN PROCEEDINGS

A hearing having been held before this Court on June __, 2009 (the "Hearing") to

consider the Official Form B-1 Petition (the "Chapter 15 Petition") and the Verified Petition for

Recognition of Foreign Proceedings Pursuant to Chapter 15 of the United States Bankruptcy

Code (together, with all exhibits appended thereto, the "Verified Petition") of Nortel Networks

UK Limited ("NNUK" or the "Foreign Debtor") presented by Alan Robert Bloom, Christopher

John Wilkinson Hill, Alan Michael Hudson and Stephen John Harris in their capacity as court-

appointed administrators and authorized foreign representative of the Foreign Debtor (the

"Administrators"), for recognition of foreign main proceedings (the "English Proceedings")

under the *Insolvency Act 1986* (the "English Insolvency Act") pending before the High Court of

Justice of England and Wales (the "English Court"), and seeking enforcement, pursuant to

sections 105(a), 1504, 1507, 1515, 1517, 1520, and 1521 of title 11 of the United States Code

(the "Bankruptcy Code"), of the initial order of the English Court dated January 14, 2009 (as

amended or extended from time to time by the English Court, the "Initial Order") in the United

States; and upon this Court's review and consideration of the Chapter 15 Petition, the Verified

Petition, the Declaration of Sharon L. Rolston, dated June 6, 2009, and Exhibit A (Witness

Statement of Sharon Lynette Rolston, dated January 14, 2009) thereto, the Declaration of

Stephen John Harris, dated June 5, 2009, the Memorandum of Law in Support of Verified

Petition for Recognition of Foreign Proceeding Pursuant to Chapter 15 of the United States

Bankruptcy Code, and all other documents filed in support of thereof on behalf of the Foreign

Debtor; and this Court having concluded that appropriate and timely notice of the filing of the

Chapter 15 Petition and the Verified Petition has been given; and the Hearing having been held;

and upon the record of the statements made at the Hearing; and after due deliberation and

sufficient cause appearing therefore, this Court finds and concludes as follows:

A.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.

B.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

C.     Venue is properly located in this District pursuant to 28 U.S.C. § 1410.

D.     These chapter 15 cases were properly commenced pursuant to sections 1504 and

1515 of the Bankruptcy Code.

E.     The Administrators are each a person within the meaning of sections 101(24) and

1517(a)(2) of the Bankruptcy Code; and the Administrators are the duly appointed foreign

representatives of the Foreign Debtor, as required by section 101(24) of the Bankruptcy Code.

F.     The English Proceedings currently pending before the English Court for the

Foreign Debtor constitute "foreign proceedings" within the meaning of section 101(23) of the

Bankruptcy Code.

G.     The English Proceedings are pending in England, which is where the center of

main interests of the Foreign Debtor is located, and are "foreign main proceedings" within the

meaning of section 1502(4) of the Bankruptcy Code and under section 1517(b)(1) of the

Bankruptcy Code.

H.    The Chapter 15 Petition and the Verified Petition meet the requirements of section 1515 of the Bankruptcy Code.

I.    The English Proceedings are entitled to recognition as foreign main proceedings under section 1517 of the Bankruptcy Code.

J.    The Administrators are entitled to all of the relief provided under sections 1520 and 1521 of the Bankruptcy Code, without limitation.

K.    The relief granted hereby is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted pursuant to sections 1517, 1520 and 1521 of the Bankruptcy Code.

L.    To the extent not already provided by virtue of sections 105(a), 1517, 1520 and 1521 of the Bankruptcy Code, and as may be necessary to effectuate the Initial Order in the United States, additional assistance pursuant to section 1507 of the Bankruptcy Code is consistent with the principles of comity as the English Proceedings reasonably assure: (1) just treatment of all holders of claims against or interests in the Foreign Debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in the English Proceedings; (3) prevention of preferential or fraudulent dispositions of property of the Foreign Debtor; and (4) distribution of proceeds of the Foreign Debtor's property substantially in accordance with the order prescribed by title 11 of the United States Code.

THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.    The English Proceedings are recognized as foreign main proceedings under section 1517(b)(1) of the Bankruptcy Code.

DB02:8280447.1    900002.0001

2.    All provisions of sections 1520 and 1521(a) of the Bankruptcy Code apply in this chapter 15 case, including, without limitations, the stay under section 362 of the Bankruptcy Code and the provisions of section 363 of the Bankruptcy Code throughout the duration of this chapter 15 case or until otherwise ordered by this Court.

3.    Pursuant to sections 1520 and 1521 of the Bankruptcy Code and, as necessary, sections 105(a) and 1507 of the Bankruptcy Code, the Initial Order is hereby given full force and effect in the United States as to the Foreign Debtor so long as such Initial Order is in effect in the English Proceedings.

4.    Nothing in this Order shall be construed to limit, in any way, any additional relief granted by this Court or any other additional injunctive relief the Court may grant from time to time.

5.    Notwithstanding anything to the contrary in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the Federal Rules of Civil Procedure, all persons and entities (other than the Administrators and their expressly authorized representatives and agents) are hereby enjoined from invoking, enforcing or relying on the benefits of any statute, rule or requirement of federal, state or local law or regulation requiring the Administrators or the Foreign Debtor to establish or post security in the form of a bond, letter of credit or otherwise as a condition of prosecuting or defending any proceeding, and such statute, rules or requirement will be rendered null and void for the purposes of such proceedings.

6.    The Administrators shall provide service and notice of this Order in accordance with this Court's Order Scheduling Hearing and Specifying Form and Manner of Service of Notice dated June __, 2009 (Docket No. __) on or before June __, 2009 which service and notice shall constitute sufficient service and notice of this Order.

4

7.    The Chapter 15 Petition and the Verified Petition, including all documents attached thereto, shall be made available by the Administrators upon request in writing to their counsel (i) Bracewell & Giuliani LLP, 225 Asylum Street, Suite 2600, Hartford, CT 06103, Attention Evan Flaschen (evan.flaschen@bgllp.com) and Katherine Lindsay (katherine.lindsay@bgllp.com) and (ii) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, 1000 West Street, Wilmington, Delaware 19801, Attention: Edwin J. Harron (eharron@ycst.com).

8.    Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon its entry; (b) the Administrators are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Administrators are authorized, empowered, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

9.    This Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order, any request for additional relief and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

June __, 2009
Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE

900002.0001