# EXHIBIT O

**(Brief in Support of Verified Chapter 15 Petitions
re EMEA Debtors Other than NNUK)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ X
                                                                    :
In re:                                                              :   Chapter 15
                                                                    :
NORTEL NETWORKS UK LIMITED, *et al.*,[1]                            :   Case No. 09-11972 (KG)
                                                                    :
     Debtors in a Foreign Proceeding.                           :   (Joint Administration Pending)
                                                                    :
------------------------------------------------------------------ X


## MEMORANDUM OF LAW IN SUPPORT OF VERIFIED CHAPTER 15 PETITIONS FOR RECOGNITION OF FOREIGN PROCEEDINGS AND RELATED RELIEF WITH RESPECT TO THE EMEA DEBTORS

---

[1]      The Debtors in these cases are:  Nortel Networks UK Limited; Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks (Ireland) Limited; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z. o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A.; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks, s.r.o.  The mailing address for each Debtor is:  Ernst & Young LLP, Attn:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson and Stephen John Harris, 1 More London Place, London, SE1 2AF.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

BACKGROUND ................................................................................................................. 2

ARUGMENT ....................................................................................................................... 2

I.   THE COURT SHOULD RECOGNIZE THE ENGLISH
     PROCEEDINGS AS FOREIGN MAIN PROCEEDINGS. ........................................... 2

     A.   These Chapter 15 Cases Concern Foreign Proceedings. ....................................... 3
     B.   Foreign Representatives Commenced these Chapter 15 Cases. ............................. 4
     C.   These Chapter 15 Cases Were Properly Commenced. ........................................... 5
     D.   The English Proceedings are Foreign Main Proceedings. ..................................... 6
     E.   The Administrators are Entitled to an Order Granting Recognition...................... 8

II.  THE ADMINISTRATORS ARE ENTITLED TO RELIEF  PURSUANT
     TO §§ 1507 AND 1520 OF THE BANKRUPTCY CODE........................................... 10

     A.   Automatic Relief Pursuant to § 1520 of the Bankruptcy Code ........................... 10
     B.   Additional Assistance Pursuant § 1507 of the Bankruptcy Code........................ 11

# TABLE OF AUTHORITIES

Page

**Cases**

*Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996 (2d Cir. 1993) .........................................9

*In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37 (Bankr. S.D.N.Y. 2008) ...............................7

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*
    *(In Provision Liquidation), et al.*, 374 B.R. 122 (Bankr. S.D.N.Y. 2007)...........................7

*In re Brierley*, 145 B.R. 151 (Bankr. S.D.N.Y. 1992) ........................................................4, 10, 12

*In re Kingscroft Ins. Co.*, 138 B.R. 121 (Bankr. S.D. Fla. 1992). ..............................................4

*In re Lloyd* (Bankr. S.D.N.Y. Dec. 7, 2005) ...............................................................................4

*In re Loy*, 380 B.R. 154 (Bankr. E.D. Va. 2007) ....................................................................4, 5

*In re Pro Fit Holdings Ltd.* (C.D. Cal. Aug. 28, 2008)..............................................................4

*In re Singer*, 205 B.R. 355 (S.D.N.Y. 1997)..............................................................................4

*In re SPhinX, Ltd.*, 351 B.R. 103 (Bankr. S.D.N.Y. 2006) .......................................................7

*Maxwell Comm'cn Corp. Homan v. Societe Generale*
    *(In re Maxwell Comm'cn Corp. plc by Homan)*, 93 F.3d 1036 (2d Cir. 1996)................10

*Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V.*
    310 F.3d 118 (3d Cir. 2002)................................................................................................9

**Statutes**

11 U.S.C. § 101(23) ...................................................................................................................3

11 U.S.C. § 101(24) ...................................................................................................................3

11 U.S.C. § 1501(a) ................................................................................................................8, 9

11 U.S.C. § 1502 ....................................................................................................................3, 8

11 U.S.C. § 1502(4) ...............................................................................................................6, 7

11 U.S.C. § 1504 .........................................................................................................................5

11 U.S.C. § 1506 .........................................................................................................................8

11 U.S.C. § 1507 ...............................................................................................11, 12

11 U.S.C. § 1507(a) ...................................................................................................11

11 U.S.C. § 1507(b) ..................................................................................................12

11 U.S.C. § 1515(a) .....................................................................................................5

11 U.S.C. § 1515(b) .....................................................................................................6

11 U.S.C. § 1516(b) .....................................................................................................5

11 U.S.C. § 1516(c) .....................................................................................................6

11 U.S.C. § 1517 ...............................................................................................2, 8, 10

11 U.S.C. § 1517(a) .....................................................................................................3

11 U.S.C. § 1520 ...................................................................................................10, 11

11 U.S.C. § 1520(a) ..............................................................................................10, 11

11 U.S.C. § 304 ............................................................................................................4

11 U.S.C. §§ 1515(a)–(c) .............................................................................................5

11 U.S.C. §§ 1516(b)–(c) .............................................................................................6

U.S.C. §§ 1507(b)(1)–(4) ...........................................................................................11

## Other Authorities

8 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY
    ¶ 1507.01 (16th ed. 2010) ............................................................................11

Council Regulation (EC) (June 29, 2000) ......................................................................8

H.R. REP. NO. 109-31, pt. 1, at 109, *as reprinted in* 2005 U.S.C.C.A.N. 88, 172 ...........................8

H.R. REP. NO. 109-31, pt. 1, at 113 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 175 ...........3, 6

H.R. REP. NO. 109-31, pt. 1, at 95 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 113 .................8

*Insolvency Act*, 1986 ................................................................................................12

Jay Lawrence Westbrook, *Locating the Eye of the Financial Storm*,
    32 BROOK. J. INT'L L. 3, 15 (2007) ..............................................................................7

The court-appointed administrators and authorized foreign representatives (collectively, the "Administrators")[1] for Nortel Networks UK Limited ("NNUK") and certain of its affiliates (collectively, the "EMEA Debtors" and together with NNUK, the "Debtors") located in the region known as EMEA (Europe, Middle East, and Africa) in proceedings (the "English Proceedings") under the *Insolvency Act 1986* (the "English Insolvency Act"), pending before the High Court of Justice of England and Wales (the "English Court"), respectfully submit this *Memorandum of Law in Support of Verified Chapter 15 Petitions for Recognition of Foreign Proceedings and Related Relief With Respect to the EMEA Debtors.*   On October 19, 2010, the Administrators commenced these cases (the "Chapter 15 Cases") under chapter 15 ("Chapter 15") of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), by filing Chapter 15 petition forms and the *Verified Chapter 15 Petitions for Recognition of Foreign Proceedings and Related Relief With Respect to the EMEA Debtors* (collectively, the "Chapter 15 Petitions") on behalf of each of the EMEA Debtors, pursuant to §§ 1504 and 1515 of the Bankruptcy Code, seeking the entry of an order recognizing the English Proceedings as "foreign main proceedings" and certain relief in aid thereof.  In support hereof, the Administrators rely upon the *Declaration of Alan Robert Bloom* (the "Bloom Declaration") attached as Exhibit A to the *Transmittal Declaration of Edwin J. Harron* (the "Transmittal Declaration") filed contemporaneously herewith and incorporated herein by reference, and respectfully state as follows:

---

[1]    The Administrators in the English Proceedings for all of the Debtors, with the exception of Nortel Networks (Ireland) Limited are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Administrators in the English Proceedings for Nortel Networks (Ireland) Limited are: Alan Robert Bloom and David Martin Hughes.

## PRELIMINARY STATEMENT

The Administrators seek ancillary relief under Chapter 15 to:  (i) ensure that the comprehensive cross-border restructuring of Nortel Networks Corporation ("NNC") and its affiliates and subsidiaries (collectively, "Nortel" or the "Nortel Companies") progresses in an orderly and efficient way; (ii) promote full cooperation between the Nortel Companies and the various courts in which their insolvency proceedings are pending; and (iii) protect the EMEA Debtors' assets and interests in the United States.  Specifically, the Administrators are requesting entry of an order (the "Recognition Order") with respect to the EMEA Debtors:  (i) recognizing the English Proceedings as "foreign main proceedings" under § 1517 of the Bankruptcy Code and (ii) enforcing the initial orders of the English Court, dated January 14, 2009 (as may be amended or extended from time to time by the English Court, collectively, the "Initial Orders") in the United States.

## BACKGROUND

For a detailed discussion of the factual background regarding the EMEA Debtors, the English Proceedings, the circumstances leading to the commencement of these Chapter 15 Cases, and the bases for these Chapter 15 Cases, the Administrators respectfully refer the Court to the Chapter 15 Petitions and each of the witness statements attached as Exhibits I and II to the Bloom Declaration.

## ARGUMENT

## I.    THE COURT SHOULD RECOGNIZE THE ENGLISH PROCEEDINGS AS FOREIGN MAIN PROCEEDINGS.

Unless manifestly contrary to the public policy of the United States, a court *shall* enter an order recognizing a foreign proceeding if—

(1)     such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;

(2)     the foreign representative applying for recognition is a person or body; and

(3)     the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a).

Chapter 15 provides a simple, objective standard for recognition of a foreign insolvency proceeding. A court's decision whether to grant recognition does not depend on any findings about the nature of the foreign proceeding itself. All the Bankruptcy Code requires is compliance with the statutory elements. As Congress intended,

> the decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304 of the Bankruptcy Code. The requirements of this section, which incorporates the definitions in § 1502 and §§ 101(23) and 101(24) are all that must be fulfilled to attain recognition.

H.R. REP. NO. 109-31, pt. 1, at 113 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 175.

A.     *These Chapter 15 Cases Concern Foreign Proceedings.*

A foreign proceeding is:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

As more fully described in the Bloom Declaration, the English Proceedings represent a statutory means of comprehensively restructuring the EMEA Debtors' liabilities under the supervision of the English Court. The English Proceedings were instituted by each of the EMEA Debtors, pursuant to the English Insolvency Act, for the purpose of implementing an

orderly and equitable restructuring plan for the benefit of its creditor body as a whole. The English Court already has exercised its authority over the EMEA Debtors by issuing the Initial Orders. Thus, it is clear that the English Proceedings fall within the definition of "foreign proceedings" as set forth in § 101(23) of the Bankruptcy Code.

Since the passage of Chapter 15, numerous proceedings under the English Insolvency Act have been recognized by bankruptcy courts in the United States. *See, e.g., In re Lloyd*, No. 05-60100, 2005 WL 3764946, at *3 (Bankr. S.D.N.Y. Dec. 7, 2005) (recognizing proceeding under English Insolvency Act as foreign proceeding under Chapter 15); *In re Pro Fit Holdings Ltd.*, Case No. 08-17043, (C.D. Cal. Aug. 28, 2008) (same); *see also In re Loy*, 380 B.R. 154, 163 (Bankr. E.D. Va. 2007) ("[The English Insolvency Act] has significant parallels to the United States Bankruptcy Code such that an action under the [English Insolvency Act] meets the definition of foreign proceeding under § 101(23)."). Further, under former § 304 of the Bankruptcy Code, the statutory predecessor to Chapter 15, English proceedings, including insolvency proceedings, were recognized regularly. *See, e.g., In re Singer*, 205 B.R. 355, 356 (S.D.N.Y. 1997); *In re Brierley*, 145 B.R. 151, 166 (Bankr. S.D.N.Y. 1992); *In re Kingscroft Ins. Co.*, 138 B.R. 121, 125 (Bankr. S.D. Fla. 1992).

B.     *Foreign Representatives Commenced these Chapter 15 Cases.*

Each of these Chapter 15 Cases has been commenced by the relevant Administrators who are the duly appointed and authorized administrators of the EMEA Debtors in the English Proceedings. By virtue of their appointment by the English Court, the Administrators also are "foreign representative[s]" within the meaning of § 101(24) of the Bankruptcy Code, which defines a "foreign representative" in pertinent part as a "person or body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." *See* Initial

Orders ¶ 8 (stating that the "Administrators, being officers of [the English Court], may apply to

the relevant judicial authorities in any other country or territory for such assistance as they

consider they may require in connection with the exercise of their functions"); *see also In re Loy*,

380 B.R. at 162–63 (recognizing English proceeding as a "foreign proceeding" and court-

appointed administrator as "foreign representative" under the Bankruptcy Code).  In addition, the

Court is entitled to presume that the Administrators are foreign representatives because they

were identified as such in the Initial Orders.  *See* 11 U.S.C. § 1516(b).

> C.      *These Chapter 15 Cases Were Properly Commenced.*

The filing of a petition for recognition of a foreign proceeding under § 1515 of the

Bankruptcy Code commences a Chapter 15 case.  11 U.S.C. § 1504.  Section 1515 of the

Bankruptcy Code identifies the process by which a foreign representative applies for recognition.

11 U.S.C. § 1515.  It provides, in relevant part, that:

> (a)      A foreign representative applies to the court for recognition
> of a foreign proceeding in which the foreign representative has
> been appointed by filing a petition for recognition.
>
> (b)      A petition for recognition shall be accompanied by –
> (1)      a certified copy of the decision commencing such
> foreign    proceeding    and    appointing    the    foreign
> representative . . .
>
> (c)      A petition for recognition shall also be accompanied by a
> statement identifying all foreign proceedings with respect to the
> debtor that are known to the foreign representative . . . .

11 U.S.C. §§ 1515(a)–(c).

The Administrators commenced these Chapter 15 Cases by filing the Chapter 15

Petitions for recognition of foreign proceedings under § 1515(a) of the Bankruptcy Code, which

were accompanied by all documents and information required by § 1515 of the Bankruptcy Code

and Bankruptcy Rules 1007 and 1008, including:  (i) a copy of each of the respective Initial

Orders;[2] (ii) a statement identifying all foreign proceedings with respect to the EMEA Debtors that are known to the Administrators; (iii) a corporate ownership statement of each of the EMEA Debtors; (iv) a list containing the names and addresses of all persons authorized to administer foreign proceedings of each of the EMEA Debtors; (v) a list of all parties to litigation pending in the United States in which one of the EMEA Debtors is a party; and (vi) verification of the Chapter 15 Petitions. The above-referenced documents having been filed and, as set forth above, the English Court having authorized the Administrators to represent the English Proceedings in the United States, these Chapter 15 Cases have been commenced properly under 11 U.S.C. § 1515(b).

D.    *The English Proceedings are Foreign Main Proceedings.*

This Court should recognize the English Proceedings as "foreign main proceedings," as defined in § 1502(4) of the Bankruptcy Code. A foreign proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has the "center of its main interests." 11 U.S.C. §§ 1502(4) and 1517(b)(l). The center of main interests, or "COMI," for each of the EMEA Debtors is England.

While the Bankruptcy Code does not define "center of main interests" or "COMI," it does provide that, in the absence of evidence to the contrary, the debtor's registered offices are presumed to be the COMI. 11 U.S.C. § 1516(c). However, such presumption "is included for speed and convenience of proof . . . ." *See* H.R. REP. NO. 109-31, pt. 1, at 113 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 175. This presumption "permits and encourages fast action in cases where speed may be essential, while leaving the debtor's true 'center' open to dispute in cases where the facts are more doubtful." *See* Jay Lawrence Westbrook, *Locating the*

---

[2]    Section 1516 of the Bankruptcy Code permits the Court to presume the authenticity of the documents submitted in support of the Chapter 15 Petitions, including the Initial Orders, in conformance with § 1515 of the Bankruptcy Code. *See* 11 U.S.C. §§ 1516(b)–(c).

*Eye of the Financial Storm*, 32 BROOK. J. INT'L L. 3, 15 (2007). Moreover, "[t]his presumption is not a preferred alternative where there is a separation between a corporation's jurisdiction of incorporation and its real seat." *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd. (In Provisional Liquidation),* 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007).

Courts have listed an array of objective factors, singly or combined, which could be relevant to a COMI determination, such as: (a) the location of the debtor's headquarters; (b) the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); (c) the location of the debtor's primary assets; (d) the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and (e) the jurisdiction whose law would apply to most disputes. *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 47 (Bankr. S.D.N.Y. 2008); *Bear Stearns*, 374 B.R. at 128; *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007).

The EMEA Debtors' businesses are integrated seamlessly and span national boundaries, but the center of main interests for each of the EMEA Debtors is England. While NNC is the ultimate parent of all Nortel Companies worldwide and NNC's headquarters in Toronto serves as the global headquarters, the EMEA Debtors' central management and control is directed from the head office in Maidenhead, England, where all major decisions specific to the EMEA Debtors are made. The witness statements attached as Exhibit I and II to the Bloom Declaration detail the many additional facts demonstrating that the English Proceedings are pending in the center of each of the EMEA Debtors' main interests and constitute "foreign main proceedings" as defined in § 1502(4) of the Bankruptcy Code. Viewing these same facts to determine if each of the EMEA Debtors was a proper debtor under the English Insolvency Act,

the English Court held that England is the center of main interest for each of the EMEA Debtors.[3]

   E. *The Administrators are Entitled to an Order Granting Recognition.*

   As set forth above, (i) the English Proceedings are "main proceedings" within the meaning of § 1502 of the Bankruptcy Code; (ii) the Administrators, applying for recognition on behalf of the EMEA Debtors, are "foreign representatives" within the meaning of § 101(24) of the Bankruptcy Code; and (iii) the Chapter 15 Petitions meet the requirements of § 1515 of the Bankruptcy Code with respect to each of the EMEA Debtors.  Accordingly, the Court should enter an Order recognizing the English Proceedings, pursuant to § 1517 of the Bankruptcy Code, for each of the EMEA Debtors.[4]

   Moreover, recognizing the English Proceedings would not be manifestly contrary to the public policy of the United States.  *See* 11 U.S.C. § 1506 (stating that court may refuse to grant relief under Chapter 15 if inconsistent with public policy).[5]  Indeed, granting such recognition affects United States public policy regarding foreign proceedings as articulated, among other ways, through the objectives set forth in §§ 1501(a) and 1508 of the Bankruptcy

---

[3]  In the Initial Orders, the English Court found that the English Proceedings are main proceedings as defined in Article 3 of Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings. Initial Orders 1. By definition, a main proceeding is one that takes place in the jurisdiction where the debtor has its center of main interests. Council Regulation (EC) No 1346/2000 (June 29, 2000).

[4]  The legislative history of § 1517 of the Bankruptcy Code provides that the "decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of this section, which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition."  H.R. REP. NO. 109-31, pt. 1, at 95 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 113.

[5]  As the legislative history explains, § 1506 of the Bankruptcy Code follows article 5 of the UNCITRAL Model Law on Cross-Border Insolvency (1997) "exactly, [which] is standard in UNCITRAL texts, and has been narrowly interpreted on a consistent basis in courts around the world. The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States."  H.R. REP. NO. 109-31, pt. 1, at 109, *as reprinted in* 2005 U.S.C.C.A.N. 88, 172.

Code.[6]  Consistent with those objectives, the Administrators seek Chapter 15 recognition for the

EMEA Debtors to:  (i) promote full cooperation between the Nortel Companies and the various

courts in which their insolvency proceedings are pending; (ii) protect the EMEA Debtors' assets

and interests in the United States; and (iii) ensure that the comprehensive cross-border

restructuring of the Nortel Companies progresses in an orderly and efficient way.

　　　　In addition, recognition of the English Proceedings is consistent wholly with the

principles of international comity, and courts typically grant recognition in such circumstances.

*See Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V.*, 310 F.3d 118, 126 (3d

Cir. 2002) ("The principles of comity are particularly appropriately applied in the bankruptcy

context because of the challenges posed by transnational insolvencies and because Congress

specifically listed 'comity' as an element to be considered in the context of such insolvencies,

albeit in relation to ancillary proceedings."); *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d

996, 999 (2d Cir. 1993) ("[W]e have recognized that comity is particularly appropriate where, as

here, the court is confronted with foreign bankruptcy proceedings." (citation omitted)).  In

particular, courts regularly extend comity in the context of English proceedings. *See, e.g.,*

*Maxwell Comm'cn Corp. Homan v. Societe Generale (In re Maxwell Comm'cn Corp. plc by*

---

[6]　　　Section 1501 of the Bankruptcy Code provides, in pertinent part:
　　　　　(a)　　　The purpose of this chapter is . . . to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—
　　　　　　　　(1)　　　cooperation between—
　　　　　　　　　　(A)　　courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
　　　　　　　　　　(B)　　the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
　　　　　　　　(2)　　　creating greater legal certainty for trade and investment;
　　　　　　　　(3)　　　fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested parties, including the debtor;
　　　　　　　　(4)　　　protection and maximization of the value of the debtor's assets;
　　　　　　　　(5)　　　facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.
11 U.S.C. § 1501(a).

*Homan*), 93 F.3d 1036, 1046–50 (2d Cir. 1996) (analyzing principles of comity and applying to English proceeding); *In re Brierley*, 145 B.R. at 162 n.5 ("The federal courts have repeatedly granted comity to foreign proceedings where the foreign proceeding was in the United Kingdom or in a country whose laws were derived from the United Kingdom's laws." (collecting cases)). Similarly, such comity should be extended here and the English Proceedings should be recognized pursuant to § 1517 of the Bankruptcy Code.

For the reasons set forth above, the conditions for mandatory recognition of the English Proceedings as foreign main proceedings under § 1517 of the Bankruptcy Code have been satisfied.

## II.    THE ADMINISTRATORS ARE ENTITLED TO RELIEF PURSUANT TO §§ 1507 AND 1520 OF THE BANKRUPTCY CODE.

### A.    *Automatic Relief Pursuant to § 1520 of the Bankruptcy Code*

Upon recognition of the English Proceedings as foreign main proceedings, the Administrators automatically are entitled to certain relief under § 1520 of the Bankruptcy Code. Specifically, § 1520(a) provides that, upon recognition:

> (1)    sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;
>
> (2)    sections 363, 549 and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;
>
> (3)    unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552; and
>
> (4)    section 552 applies to property of the debtor that is within the territorial jurisdiction of the United States.

11 U.S.C. § 1520(a).  These benefits will (i) afford the requisite deference to the English Proceedings; (ii) permit the orderly and efficient distribution of the EMEA Debtors' assets;

10

(iii) protect the interests of the EMEA Debtors, the Administrators, the EMEA Debtors'

creditors, and other parties in interest; and (iv) preserve the integrity of the English Proceedings.

Accordingly, the Administrators are entitled to the relief provided under § 1520(a) of the

Bankruptcy Code.

> B.    *Additional Assistance Pursuant § 1507 of the Bankruptcy Code*

The English Proceedings and the facts of these Chapter 15 Cases support the

Administrators' request for additional assistance, pursuant to § 1507 of the Bankruptcy Code, in

the form of enforcement by this Court of the Initial Orders of the English Court to the extent

such relief is not automatically afforded by § 1520 of the Bankruptcy Code.  Section 1507 of the

Bankruptcy Code provides that "[s]ubject to the specific limitations stated elsewhere in this

chapter, the court, if recognition is granted, may provide additional assistance to a foreign

representative under this title or under other laws of the United States." 11 U.S.C. § 1507(a); *see*

*also* 8 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 1507.01 (16th ed.

2010) ("[Section 1507] was added to the Bankruptcy Code because Congress recognized that

chapter 15 may not anticipate all of the types of relief that a foreign representative may require

and which would otherwise be available to such foreign representative.").  In order for the Court

to grant the Administrators' request, the additional assistance, consistent with the principles of

comity, must reasonably assure the following:  (i) just treatment of all holders of claims against

or interests in the EMEA Debtors' property; (ii) protection of claimholders in the United States

against prejudice and inconvenience in the processing of claims in the English Proceedings; (iii)

prevention of preferential or fraudulent dispositions of property of the EMEA Debtors; and (iv)

distribution of proceeds of the EMEA Debtors' property substantially in accordance with the

order prescribed by the Bankruptcy Code. *See* 11 U.S.C. §§ 1507(b)(1)–(4).

The Administrators' request for additional assistance in the form of enforcement by this Court of the Initial Orders of the English Court satisfies the requirements of § 1507(b) of the Bankruptcy Code. As set forth above, recognition of the English Proceedings and, correspondingly, enforcement of the Initial Orders is consistent wholly with the principles of international comity. The Initial Orders provide relief under the English Insolvency Act that is similar to what the Bankruptcy Code affords to chapter 11 debtors and consistent with the requirements of § 1507(b). *See, e.g., Insolvency Act*, 1986, c. 45, sched. B1, ¶¶ 42–43 (Eng.) (staying the commencement or continuation of any legal process against the company or its property); § 175 (applicable to companies in administration through ¶ 65 of Schedule B1) (requiring wind-up expenses to be paid first, followed by preferential claims, such as certain government claims, employee pension plans, employee remuneration, and certain other items, and requiring such claims to be paid on a pro-rata basis to the extent such claims are not paid in full); § 239 (allowing a company in administration to recover preferential dispositions of property); *see also In re Brierley*, 145 B.R. at 164 ("An administration under the Insolvency Act is in its broad contours and vis-a-vis the creditors very much like a chapter 11 case . . . ."). Enforcement of the Initial Orders in the United States will allow the EMEA Debtors to: (i) promote full cooperation between the Nortel Companies and the various courts in which their insolvency proceedings are pending; (ii) protect the EMEA Debtors' assets and interests in the United States; and (iii) ensure that the comprehensive cross-border restructuring of the Nortel Companies progresses in an orderly and efficient way. Accordingly, granting the request for such enforcement, pursuant to § 1507 of the Bankruptcy Code, is appropriate under the circumstances.

## CONCLUSION

Wherefore, the Administrators respectfully request that the Court grant the relief requested herein and such other relief as may be just and proper.

Dated:  Wilmington, Delaware
        October 20, 2010

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

James I. Patton (No. 2202)
Edwin J. Harron (No. 3396)
Jaime N. Luton (No. 4936)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571–6600
Facsimile: (302) 571–1253

- and -

**HUGHES HUBBARD & REED LLP**
Michael Luskin
Derek J.T. Adler
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837–6000
Facsimile: (212) 422–4726

*Counsel for the Administrators*