## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
*In re*                                               :     Chapter 11
                                                      :
Nortel Networks Inc., *et al.*,[1]                    :     Case No. 09-10138 (KG)
                                                      :
                  Debtors. :     Jointly Administered
                                                      :
                                                      :     **Hearing date: August 23, 2011, 10:00 AM (ET)**
                                                      :     **Objections due: August 16, 2011 4:00 PM (ET)**
------------------------------------------------------------X

### DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363 APPROVING AGREEMENTS REGARDING NORTEL RUSSIA AND APPROVING AMENDMENT OF CERTAIN ESCROW AGREEMENTS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (a) approving that certain Agreement (substantially in the form attached hereto as Exhibit B, the "MEN Russia Agreement"), by and among (i) NNI, (ii) Nortel Networks Limited ("NNL"), (iii) Nortel Networks Corporation ("NNC"), (iv) the other Depositors (as defined in that certain MEN Distribution Escrow Agreement dated March

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

19, 2009 (the "MEN Escrow Agreement")), (v) the Estate Fiduciaries (as defined in the MEN Escrow Agreement), and (vi) JPMorgan Chase Bank, N.A., as escrow and distribution agent under the MEN Escrow Agreement (collectively, the "MEN Russia Agreement Parties"), (b) approving that certain Agreement (substantially in the form attached hereto as Exhibit C, the "Enterprise Russia Agreement"), by and among (i) NNI, (ii) NNL, (iii), NNC, (iv) the other Depositors (as defined in that certain Enterprise Distribution Escrow Agreement dated December 18, 2009 (the "Enterprise Escrow Agreement")), (v) the Estate Fiduciaries (as defined in the Enterprise Escrow Agreement), and (vi) JPMorgan Chase Bank, N.A., as escrow and distribution agent under the Enterprise Escrow Agreement (collectively, the "Enterprise Russia Agreement Parties"), (c) approving that certain Agreement (substantially in the form attached hereto as Exhibit D, the "GSM/GSM-R Russia Agreement"), by and among (i) NNI, (ii) NNL, (iii), NNC, (iv) the other Depositors (as defined in that certain GSM/GSM-R Distribution Escrow Agreement dated March 31, 2010 (the "GSM/GSM-R Escrow Agreement")), (v) the Estate Fiduciaries (as defined in the GSM/GSM-R Escrow Agreement), and (vi) JPMorgan Chase Bank, N.A., as escrow and distribution agent under the GSM/GSM-R Escrow Agreement (collectively, the "GSM/GSM-R Russia Agreement Parties"), (d) approving that certain Agreement (substantially in the form attached hereto as Exhibit E, the "CVAS Russia Agreement" and, together with the MEN, Enterprise, and GSM/GSM-R Russia Agreements, the "Russia Agreements"), by and among (i) NNI, (ii) NNL (iii), NNC, (iv) the other Depositors (as defined in that certain CVAS Distribution Escrow Agreement dated May 27, 2010 (the "CVAS Escrow Agreement" and, together with the MEN, Enterprise, and GSM/GSM-R Escrow Agreements, the "Escrow Agreements")), (v) the Estate Fiduciaries (as defined in the CVAS Escrow Agreement), and (vi) JPMorgan Chase Bank, N.A., as escrow and distribution agent

under the CVAS Escrow Agreement (collectively, the "CVAS Russia Agreement Parties" and, together with the MEN, Enterprise, and GSM/GSM-R Russia Agreement Parties, the "Parties"), (e) approving amendments to the Escrow Agreements, substantially in the form attached hereto (the "Escrow Amendments"), and (f) granting such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code, as supplemented by Rule(s) 2002 and 6004 of the Bankruptcy Rules and Rule 6004-1 of the Local Rules.

## Background

**A.    Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

5.   On the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL (together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.   Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7.   By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, (a) approving the Russia Agreements, (b) approving the Escrow Amendments, and (c) granting such other and further relief as the Court deems just and proper.

---

[3]   The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]   The EMEA Debtors include the following entities:  NNUK, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V. ("NNIFH")

4

**Facts Relevant to this Motion**

8. Nortel Russia is 99% owned by NNIFH, one of the EMEA Debtors, and 1% owned by Nortel Networks B.V., another EMEA Debtor which in turn is wholly owned by NNIFH. The Debtors have been informed that Nortel Russia has ceased active operations and is preparing to appoint a liquidator and commence a voluntary solvent liquidation of its assets. Nortel Russia has participated in the Enterprise, CVAS, MEN, and GSM/GSM-R Sale Transactions, and is a party to each of the Escrow Agreements. As contemplated by the Escrow Agreements, Nortel Russia may be entitled to a portion of the proceeds from each of those transactions (the "Sale Proceeds"). The Sale Proceeds are currently held in escrow accounts governed by the Escrow Agreements (the "Escrow Accounts"). The Escrow Agreements are governed by the laws of the State of New York, and each of the Escrow Accounts is located in the State of New York. Each of the Escrow Agreements provides that, subject to certain exceptions not applicable to the Escrow Amendments, it may not be amended without consent of all the parties thereto, including Nortel Russia, and the approval of both this Court and the Canadian Court.[5] In addition, under the terms of each of the Escrow Agreements, Nortel Russia, along with all other Depositors and Estate Fiduciaries (as defined in the applicable Escrow Agreements) must provide a joint letter of instruction to the distribution agent prior to the release of any funds from the Escrow Accounts.[6]

9. The Parties, including the Debtors, have concluded that it is in the best interests of all concerned if Nortel Russia be removed from the allocation negotiations and its rights under

---

[5] MEN Escrow Agreement at ¶ 15(a); CVAS Escrow Agreement at ¶ 14(a); GSM/GSM-R Escrow Agreement at ¶ 15(a); Enterprise Escrow Agreement at ¶ 15(a). Pursuant to orders of this Court and the Canadian Court, the MEN Escrow Agreement may be amended and escrow funds may be released without the consent or participation of Nortel Networks de Colombia S.A. See Order Authorizing Action Under the MEN Sale Escrow Agreement Without the Consent or Participation of Nortel Colombia and Granting Related Relief [D.I. 5726].

[6] MEN Escrow Agreement at ¶ 5(a)(i); CVAS Escrow Agreement at ¶ 5(a)(i); GSM/GSM-R Escrow Agreement at ¶ 5(a)(i); Enterprise Escrow Agreement at ¶ 5(a)(i).

5

the Escrow Agreements be terminated at this time. After a review of several alternatives, Nortel Russia has advised that such rights should be fully assigned to NNIFH upon the payment of its estimated entitlement to the Sale Proceeds from the Escrow Account for the MEN and CVAS Sale Transactions, since it has not yet received, in its view, sufficient payment in connection with those Sale Transactions. To that end, the Parties have negotiated with Nortel Russia and arrived at a three-step transaction, pursuant to which the Parties will enter into the proposed Russia Agreements and NNIFH will purchase all of Nortel Russia's present and future rights, title and interest, if any, to a share of the Sale Proceeds (the "Nortel Russia Rights"), such that any rights that Nortel Russia has under the Escrow Agreements are to be terminated or assigned to NNIFH.

10.     NNI's ability to participate in this transaction is subject to the approval of this Court. NNL's ability to participate in this transaction is subject to the approval of the Canadian Court. NNI and NNL will seek these respective approvals in a Joint Hearing conducted pursuant to that certain Cross-Border Insolvency Protocol approved by this Court pursuant to Section 105(a) of the Bankruptcy Code in an order dated January 15, 2009 and by the Canadian Court pursuant to an order dated January 14, 2009 as amended from time to time. The Debtors have been informed that, prior to executing the Russia Agreements, the General Director of Nortel Russia (the "General Director") will be seeking shareholder approval of its ability to sign the Russia Agreements. The Debtors are filing this Motion prior to the execution of such agreements based on representations made to them by counsel to the EMEA Debtors that all necessary approvals and execution will be forthcoming on or before August 16, one week before a hearing on this Motion is currently scheduled.

11.     First, under the terms of the Russia Agreements, Nortel Russia will assign the Nortel Russia Rights to NNIFH (the "Assignment"). In addition to the Assignment, Nortel

Russia and the other Parties will execute the Escrow Amendments, which will remove any reference to Nortel Russia as a Depositor under the Escrow Agreements such that the consent of Nortel Russia will no longer be required for any purposes thereunder. The Escrow Amendments will also assign Nortel Russia's rights and obligations under the Escrow Agreements to NNIFH and, with respect to the Enterprise and CVAS Escrow Agreements, add NNIFH as a depositor because NNIFH currently is not a party to those agreements. The General Director will provide a certification that Nortel Russia is solvent under Russian law (substantially in the form attached to each of the Russia Agreements, the "Solvency Certificate"), to provide comfort to the other Parties that the General Director is acting within the scope of his authority.

12. Second, upon execution of the Agreements, and in consideration for the Assignment, NNIFH will pay approximately $6 million[7] into the MEN Escrow Account and approximately $1.4 million[8] into the CVAS Escrow Account (collectively, the "NNIFH Payment"), which is inclusive of any applicable value-added tax obligations related to the payment. These amounts are based on the value-added tax estimates put forward by the purchasers of the CVAS and MEN assets at the time of those transactions. As clearly indicated in the Russia Agreements, the selection of these amounts shall have no effect whatsoever on the ultimate allocation of Sale Proceeds to Nortel Russia, or to NNIFH as its assignee. While NNIFH, as Nortel Russia's assignee under the Russia Agreements, retains rights to argue for an allocation from the Enterprise and GSM Sale Proceeds, no payments shall be made into or out of those two Escrow Accounts pursuant to the Russia Agreements, since Nortel Russia has already

---

[7] The precise amount of the payment into the MEN Escrow Account will be $6,022,659.88, plus the equivalent amount in U.S. Dollars of RUR 207,060.49, converted on the basis of the exchange rate published in the Wall Street Journal on the day of payment.

[8] The precise amount of the payment into the CVAS Escrow Account will be $1,404,740.00, plus the equivalent amount in U.S. Dollars of RUR 434,317.94, converted on the basis of the exchange rate published in the Russian Central Bank on the day of payment.

received consideration directly from the respective purchasers for the sale of its assets in those transactions. In addition, under the terms of the Russia Agreements, NNIFH shall (a) bear any and all risk that the ultimate allocation of the Sale Proceeds to NNIFH as assignee to Nortel Russia is less than the amount of the NNIFH Payment; (b) assume any remaining obligations of Nortel Russia under the Escrow Agreements; and (c) cooperate in the defense of any effort to void or set aside actions taken pursuant to the Russia Agreements under preference, fraudulent conveyance, currency control, or other similar provisions in any jurisdiction.

13. Once the NNIFH Payment is received, the Parties will direct, via the delivery of a letter of instruction to JPMorgan Chase Bank, N.A., as distribution agent under the MEN and CVAS Escrow Agreements, the payment of an amount equal to the NNIFH Payment from the CVAS and MEN Escrow Accounts to Nortel Russia (the "Russia Payment"). In the event that Nortel Russia is placed into insolvent liquidation, or is otherwise deemed insolvent, before these steps are complete, Parties each shall have the right to terminate all obligations under the Russia Agreements, such that the Parties shall have no further obligations thereunder and their rights shall revert to the *status quo ante*.

14. The effect of the Russia Agreements and the Escrow Amendments is to facilitate the timely and final payment of Sale Proceeds to Nortel Russia in a manner that minimizes any risks to the Parties presented by a change in Nortel Russia's status. More importantly, the Russia Agreements and Escrow Amendments will simplify the future release of funds from the Escrow Accounts, by removing Nortel Russia as a party to the Escrow Agreements. Finally, Nortel Russia has agreed that, in connection with the filing of this Motion and the parallel motion for court approval of the Russia Agreements and the Escrow Amendments in the Canadian Proceedings, it will consent to a number of other interstate settlement agreements, including the

settlement with GENBAND US LLC (the "GENBAND Agreement"), which will benefit the Debtors and facilitate the timely consummation of these cases.  These benefits will be obtained without any effect on the proceeds that are ultimately allocated to Nortel Russia, and without any assumption of risk by the Debtors that the ultimate amount of the Sale Proceeds is determined to be less than the amount of the NNIFH Payment.  In addition, the entry into the Russia Agreements will facilitate the consummation of certain other inter-estate settlements that are the subjects of a motion that will be heard together with this Motion, namely the Debtors' Motion for Entry of an Order Approving Adjustments to Certain Transfer Pricing Agreements.

**B.     Entry into the Russia Agreements and Related Agreements Is the Product of the Debtors' Reasonable Business Judgment**

15.     The Debtors seek authorization to enter into the Russia Agreements and Escrow Amendments under sections 105 and 363 of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

16.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease the property of the estate outside of the ordinary course of business after notice and a hearing.  11 U.S.C. § 363. Section 363 applies when an agreement involves the disposition of the estate's assets in such a way that it ventures beyond an ordinary course transaction. Myers v. Martin (In re Martin), 91 F.3d 389, 394-95 (3d Cir. 1996).  Entry into the Russia Agreements falls within the scope of section 363 because it requires the disbursement (and reimbursement) of funds from the MEN and CVAS Escrow Accounts, which the Debtors retain property interests in as sellers in those respective Sale Transactions.  It does not, however, amount to a compromise or settlement of amounts owed to the Debtors under section 9019 of the Bankruptcy Rules because NNIFH, through its payment of the NNIFH Payment, advances the disbursements from the MEN

9

and CVAS Escrow Accounts in full and assumes any risk that the ultimate allocation of Sale Proceeds to Nortel Russia is less than the amount of the NNIFH Payment.

17.     The use or transfer of estate property under this provision must be supported by a sound business purpose. Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991); Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward Holding Corp., 242 B.R. at 153-54 & n.1 (quoting In re Lionel Corp., 722 F.2d at 1071). In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided and that it is receiving fair and reasonable value in exchange. See In re Decora Industries, Inc., 2002 WL 32332749, at *2; In re Delaware & Hudson Ry. Co., 124 B.R. at 176.

18.     The Debtors respectfully submit that the Russia Agreements and the Escrow Amendments meet each of the requirements under section 363 of the Bankruptcy Code. As required by section 363, the Russia Agreements are proposed as a good faith means to mitigate risks regarding payment of Nortel Russia's claims, if any, to the Sale Proceeds, and to facilitate the orderly wind-down of Nortel Russia and the future distribution of Sale Proceeds. Absent such a resolution, uncertainties regarding the payment to Nortel Russia of any Sale Proceeds will

create greater risks of litigation, delay and added costs to the Debtors. Furthemore, Nortel Russia's willingness to consent to the GENBAND Agreement will remove uncertainty and litigation relating to that dispute, which will benefit the Debtors' estates. As such, the Debtors submit that the benefits of the Russia Agreements and Escrow Amendments are manifest and the Debtors' entry into the Russia Agreements and the Escrow Amendments is within the sound business judgment of the Debtors.

19. The Debtors have consulted with the Committee on the negotiation and entry into the Russia Agreements and Escrow Amendments and both support approval of the Motion. Accordingly, the Debtors submit that the Russia Agreements and the Escrow Amendments are in the best interest of the Debtors, their estates and their creditors and should, therefore, be approved by the Court.

### Notice

20. Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to each of the other Parties; (v) counsel to JPMorgan Chase Bank, N.A.; and (vi) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

21. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: July 28, 2011  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)  
Lisa M. Schweitzer (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone: (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors  
and Debtors in Possession*