# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
::::::::::::
*In re*

Nortel Networks Inc., *et al.*,[1]

         Debtors.

----------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: August 23, 2011 at 10:00 a.m. (ET)**

**Objections due: August 16, 2011 at 4:00 p.m. (ET)**

## DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) FOR ENTRY OF AN ORDER APPROVING SUPPLEMENTAL IP TRANSACTION SIDE AGREEMENTS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors") hereby move this Court (the "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A, approving that certain Supplemental IP Transaction Side Agreement re Certain Transaction Costs and Related Matters dated July 27, 2011 attached hereto as Exhibit B (the "Side Agreement"), entered into by and among NNI, Nortel Networks Limited ("NNL"), Nortel Networks Corporation ("NNC"), Nortel Networks UK Limited (in administration) ("NNUK"), Nortel Networks (Ireland) Limited (in administration), Nortel Networks S.A. (in administration and liquidation judiciaire) ("NNSA"),

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Nortel Networks France S.A.S. (in administration) and Nortel GmbH (in administration) and certain other entities identified therein (collectively, the "Sellers"), the Joint Administrators (as defined below) and the French Liquidator (as defined therein); approving that certain Second Amended and Restated IP Transaction Side Agreement re Certain Structural Matters dated July 27, 2011 attached hereto as Exhibit C (the "Second Amended Tax Side Agreement"), entered into by and among NNI, NNL, NNC, NNUK, Nortel Networks (Ireland) Limited (in administration), NNSA (in administration and liquidation judiciaire), Nortel Networks France S.A.S. (in administration) and Nortel GmbH (in administration) and certain other entities identified therein, the Joint Administrators and the French Liquidator (as defined therein); and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code").

## Background

**A. Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

2

Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") has appointed an Official Committee of Unsecured Creditors (the "<u>Committee</u>") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "<u>Bondholder Group</u>").

5. On the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL, and together with NNC and their affiliates, including the Debtors, ("<u>Nortel</u>"), and certain of their Canadian affiliates (collectively, the "<u>Canadian Debtors</u>")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "<u>Canadian Court</u>") under the Companies' Creditors Arrangement Act (Canada) (the "<u>CCAA</u>"), seeking relief from their creditors (collectively, the "<u>Canadian Proceedings</u>") and a Monitor, Ernst & Young Inc. (the "<u>Monitor</u>"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "<u>EMEA Debtors</u>")[4] into administration (the "<u>English Proceedings</u>") under the control of individuals from Ernst & Young LLP (collectively, the "<u>Joint Administrators</u>"). Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

---

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

6. Since the Petition Date, Nortel has sold its business units and other assets to various purchasers. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

### Relief Requested

7. By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, (a) approving the terms and conditions of the Side Agreement, (b) approving the terms and conditions of the Second Amended Tax Side Agreement and (c) granting such related relief as the Court deems just and appropriate.

### Facts Relevant to this Motion

**A.    The Interim Funding and Settlement Agreement**

8. On June 9, 2009, the Debtors, the Canadian Debtors, the EMEA Debtors and the Joint Administrators entered into an Interim Funding and Settlement Agreement (the "IFSA") [5] governing certain intercompany matters, including the obligations of the parties to the IFSA with respect to the negotiation of an allocation protocol and the ultimate allocation of Sale Proceeds (as defined in the IFSA) from Sale Transactions (as defined in the IFSA), as more fully set forth therein. On June 29, 2009, this Court entered an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 993].

**B.    Sale of Nortel's Residual Patents**

9. On April 4, 2011 the Debtors filed a motion to sell their interest in Nortel's residual patents [D.I. 5202], and following an auction in accordance with the bidding procedures approved by this Court [D.I. 5359] entered into an asset sale agreement dated June 30, 2011 (as

---

[5]    The summaries and descriptions of the terms and conditions of the IFSA set forth in the Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in

may be amended and/or restated from time to time in accordance with its terms, the "Sale Agreement") by and among Rockstar Bidco, LP (the "Purchaser") and NNI, NNL, NNC, Nortel Networks UK Limited (in administration), Nortel Networks (Ireland) Limited (in administration), Nortel Networks S.A. (in administration and liquidation judiciaire), Nortel Networks France S.A.S. (in administration) and Nortel GmbH (in administration), certain other entities identified therein as sellers, the Joint Administrators and the French Liquidator, which agreement is subject to Court approval.  This Court approved the sale of Nortel's residual patent assets to the Purchaser in an order dated July 11, 2011 [D.I. 5935].

**C.    The Side Agreement**

10.    In connection with the entry into the Sale Agreement, and pursuant to the framework set forth in the IFSA, the Debtors and certain other Nortel entities negotiated the Side Agreement[6] to address certain issues among the Parties, including the allocation of certain costs incurred or that may potentially be incurred as part of the proposed transaction with the Purchaser.

11.    Certain terms of the Side Agreement are as follows:

- Allocation of Total Payments.  The Parties have agreed that, except as otherwise provided in the Side Agreement, the Signing Side Agreement or the Auction Side Agreement, the Total Proceeds shall be allocated and distributed in accordance with the Allocation Rules, the Side Agreement and the Distribution Escrow Agreement.

- VAT and Transfer Taxes not Part of Total Proceeds.  The Parties have agreed that, the Total Proceeds do not include amounts of or in respect of VAT or Transfer Taxes paid or payable by the Purchaser or, if relevant, any of the

---

their entirety by the IFSA. In the event there is a conflict between the Motion and the IFSA, the IFSA shall control in all respects.

[6]    Capitalized terms used in this section but not defined herein have the meanings ascribed to them in the Side Agreement. To the extent that there are inconsistencies between the description of the provisions of the Side Agreement contained in this Motion and the terms and conditions of the Side Agreement, the terms and conditions of the Side Agreement shall control.

Purchaser's limited partners to the Sellers, Joint Administrators or French Liquidator pursuant to the terms of the Sale Agreement. The Parties agree that it is not intended that such amounts of VAT or Transfer Taxes will be payable into the Distribution Escrow Account but, notwithstanding this Agreement, where such amounts are paid into the Distribution Escrow Account, the Distribution Agent shall be instructed under the procedures in the Distribution Escrow Agreement to promptly pay such amounts to the Sellers, the Joint Administrators or the French Liquidator (as applicable).

- Allocation of Total Payments. The Parties have agreed that, to the extent that there are funds available in the Distribution Escrow Account that are attributable to the Transaction, the obligation of the Sellers to make any payment that constitutes part of the Total Payments (which amounts include (i) Advisor Fees, (ii) the Dispute Resolver Retainer and (iii) disbursements necessary to pay Lazard Frères & Co. LLC (and reimburse NNI, as applicable) in connection with fees and expenses reimbursable solely in connection with the Transaction upon such fees and expenses becoming due and payable) shall be satisfied by causing the Distribution Agent to pay the relevant amount out of the Distribution Escrow Account. To the extent that any payment that constitutes part of the Total Payments cannot be satisfied by payment out of the Distribution Escrow Account or is required to be paid prior to the Closing Date, any such amounts actually paid by any Seller to the Distribution Agent, or any other Person, as applicable, shall be deducted from any subsequent amounts payable or paid into the Distribution Escrow Account and shall be paid directly to such Seller that made the relevant payment. It is acknowledged and agreed that, in determining how to allocate and distribute the Total Proceeds, except for the items constituting Total Payments and the other expenses, damages, liabilities and payouts specifically allocated herein, in the Signing Side Agreement or the Auction Side Agreement, the Parties reserve all rights in respect of expenses, damages, and all other liabilities, incurred in connection with the performance of their obligations under or pursuant to the Sale Agreement and/or the Transaction Documents, and, in particular, whether such expenses, damages and other liabilities should be deducted from the Total Proceeds, or otherwise considered in connection with a distribution to the Sellers.

- Indemnification of Distribution Agent. The Parties have agreed that the costs of any indemnification of the Distribution Agent pursuant to the Distribution Escrow Agreement shall be borne on a pro rata basis by the Sellers in a proportion equal to the aggregate Total Proceeds allocated to such party and any Seller paying in excess of such pro rata share of the cost of such indemnification shall have rights of contribution vis-à-vis any Seller that has paid less than such pro rata share of such costs either directly to the Distribution Agent or by payment to another Seller pursuant to this sentence; provided that if the costs of any such indemnification arise solely from a breach of the Distribution Escrow Agreement or other fault of a single Seller

6

       or Sellers, the Seller(s) so in breach or at fault shall bear the cost of such indemnification and any Seller paying in excess of its share of the cost of such indemnification, after taking into account the breach or fault of the other Seller(s), shall have rights of contribution vis-à-vis any Seller that has paid less than its share of such costs either directly to the Distribution Agent or by payment to another Seller.

- <u>Reimbursement of Global IP Costs</u>. The Parties have agreed that the amount necessary to fully reimburse NNL, NNI and NNUK for all Global IP Costs (as defined in the Signing Side Agreement) paid by NNL, NNI and NNUK as of the closing of the Transaction, which amounts equal $2,679,027.74 reimbursable to NNL, $804,676.69 reimbursable to NNI and $893,742.50 reimbursable to NNUK, shall be deducted from the Total Proceeds payable by the Purchaser at the closing of the Transaction and such amount shall be paid at the closing of the Transaction to NNL, NNI and NNUK, as applicable, to reimburse each for the payment of such Global IP Costs. After the closing of the Transaction, the obligation of any Nortel Debtor (as defined in the Signing Side Agreement) to make a distribution or payment on account of Global IP Costs shall be satisfied by causing the Distribution Escrow Agent to pay the relevant amount out of the Distribution Escrow Account to Global IP (as defined in the Signing Side Agreement). The Parties further agree that should the Transaction fail to be consummated, nothing herein shall prejudice NNL's, NNI's or NNUK's rights to seek reimbursement of the Global IP Costs from the other Nortel Debtors, including any such rights arising under existing agreements. This provision of the Side Agreement supersedes Paragraph 10 of the Signing Side Agreement in its entirety.

12.    The Sellers also entered into an Amended and Restated IP Transaction Side Agreement Re: Certain Structural Matters dated June 29, 2011 (the "<u>Tax Side Agreement</u>") in connection with the Sale Agreement, which Tax Side Agreement the Court authorized by order dated July 11, 2011 [D.I. 5934]. On July 27, 2011, the Sellers entered into the Second Amended Tax Side Agreement, which amends and restates the Tax Side Agreement in its entirety. A blackline of the Second Amended Tax Side Agreement compared against the Tax Side Agreement is attached hereto as <u>Exhibit D</u>. While the amendments to the Tax Side Agreement that are embodied in the Second Amended Tax Side Agreement are largely conforming changes to the amendment to the Sale Agreement, in an abundance of caution, the Debtors seek approval of the Second Amended Tax Side Agreement through this motion.

**Basis for Relief**

13. The relief requested in this Motion is authorized by sections 105(a) and 363(b) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. See In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105(a) of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings."); In re VII Holdings Co., 362 B.R. 663, 668 (Bankr. D. Del. 2007) (BLS) (noting that "[s]ection 105(a) bestows broad equitable powers on the Court.") (citing In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004)).

14. Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363. Section 363 applies when an agreement involves the disposition of the estate's assets in a way that ventures beyond an ordinary course transaction. Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996).

15. The use or transfer of estate property under section 363 of the Bankruptcy Code must be supported by a sound business purpose. Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the

transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward, 242 B.R. at 153-54 (quoting In re Lionel, 722 F.2d at 1071). In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided, and that it is receiving fair and reasonable value in exchange. See In re Delaware & Hudson Ry. Co., 124 B.R. at 176; In re Decora Indus., Inc., 2002 WL 32332749, at *2.

16.     The Debtors respectfully submit that the Side Agreement and the Second Amended Tax Side Agreement meet each of the requirements under section 363 of the Bankruptcy Code. The Side Agreement and the Second Amended Tax Side Agreement are supported by sound business purposes because cooperation amongst the Sellers is essential to maximizing value in connection with the sale of Nortel's residual patents, particularly given the ongoing creditor protection proceedings in various jurisdictions. The Debtors entered into the Side Agreement and the Second Amended Tax Side Agreement in order to facilitate cooperation amongst the Parties in working towards completion of the sale to the Purchaser and to determine the allocation of the benefits and burdens of the transaction.

**Notice**

17.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) counsel to the Purchaser, (ii) U.S. Trustee; (iii) Monitor (iv) counsel to the Committee; (v) counsel to the Bondholder Group; (vi) counsel to the Joint Administrators; and (vii) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## **No Prior Request**

18. No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated:  August 2, 2011<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley (admitted *pro hac vice*)<br>Lisa M. Schweitzer (admitted *pro hac vice*)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone:  (212) 225-2000<br>Facsimile:  (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>　　*/s/ Chad A. Fights*<br>Derek C. Abbott (No. 3376)<br>Eric D. Schwartz (No. 3134)<br>Ann C. Cordo (No. 4817)<br>Chad A. Fights (No. 5006)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone:  (302) 658-9200<br>Facsimile:  (302) 658-3989<br><br>*Counsel for the Debtors*<br>*and Debtors in Possession* |