**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------X
: 
*In re* : Chapter 11
: 
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
: 
          Debtors. : Jointly Administered
:
: Hearing Date: September 6, 2011 at 10:00 a.m. (ET)
: Objections Due:  August 30, 2011 at 4:00 p.m. (ET)
---------------------------------------------------------X

**THIRD MONTHLY (FOR PERIOD JUNE 1, 2011 THROUGH JULY 31, 2011) AND
FINAL APPLICATION OF ADDREX INC. AS A BROKER
TO DEBTORS AND DEBTORS-IN-POSSESSION, FOR ALLOWANCE
OF INTERIM COMPENSATION AND FOR INTERIM REIMBURSEMENT
OF ALL ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE
<u>PERIOD NOVEMBER 24, 2010 THROUGH AUGUST 2, 2011</u>**

| | |
|---|---|
| Name of Applicant: | **ADDREX, Inc**. |
| Authorized to Provide Professional Services to: | Debtors |
| Date of Retention: | December 15, 2010 nunc pro tunc to November 24, 2010 |
| Interim Period for which compensation and reimbursement is sought: | June 1, 2011 Through August 2, 2011 |
| Final Period for which compensation and reimbursement is sought: | November 24, 2010 Through August 2, 2011 |
| Amount of interim compensation sought as actual, reasonable and necessary: | $73,732.72 |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Amount of interim
expenses sought as actual,   $0.00
reasonable and necessary:

Amount of final
compensation   $375,000.00
sought as actual,
reasonable and necessary:

Amount of final expenses
sought as actual reasonable   $51,421.12
and necessary:

This is an __ interim     x   final application

If this is not the first application filed, disclose the following for each prior application:

| DATE FILED | PERIOD COVERED | REQUESTED FEES/EXPENSES | APPROVED FEES/EXPENSES |
|---|---|---|---|
| 5/4/11 | 11/24/10-3/31/11 | $0.00/$51,421.12 | $0.00/$51,421.12 |
| 6/16/11 | 5/1/11-5/31/11 | $101,267.28/$0.00 | $81,013.83/$0.00 |

# CUMULATIVE COMPENSATION BY PROFESSIONAL

Nortel Networks Inc., *et al.*
(Case No. 09-10138 (KG))

June 1, 2011 Through August 2, 2011 (Interim Period)

November 24, 2010 Through August 2, 2011

| Name of Professional Person | Position of the Applicant/ Area of Expertise | Hourly Billing Rate (including changes) | Total Billed Hours For Interim Period | Total Billed Hours For Final Period | Total Fees For Interim Period | Total Fees For Final Period |
|---|---|---|---|---|---|---|
| N/A | | | | | | |
| **TOTALS** | | | | | $73,732.72 | $375,000.00 |

## COMPENSATION BY PROJECT CATEGORY

Nortel Networks, Inc, *et al.*
(Case No. 09-10138 (KG))

June 1, 2011 Through August 2, 2011 (Interim Period)

November 24, 2011 Through August 2, 2011

| Project Category | Total Hours for the Interim Period | Total Hours from the Petition Date | Total Fees for the Interim Period | Total Fees from the Petition Date |
|---|---|---|---|---|
| N/A | | | | |
| Totals | | | $73,732.72 | $375,000.00 |

## CUMLATIVE EXPENSE SUMMARY

Nortel Networks, Inc, *et al.*
(Case No. 09-10138 (KG))

June 1, 2011 Through August 2, 2011 (Interim Period)

November 24, 2011 Through August 2, 2011

| Expense Category | Service Provider (if applicable) | Expenses for the Interim Period | Total Expenses from the Petition Date |
|---|---|---|---|
| Outside Research | Depository, Inc. | $0.00 | $50,000.00 |
| Other – Incorporation Records | Commonwealth of Massachusetts | $0.00 | $16.00 |
| Other – Incorporation Records | Delaware State Division of Corporation | $0.00 | $474.00 |
| Other – Incorporation Records | Corporation Service Company | $0.00 | $559.00 |
| Out-of-Town Travel | Mileage & hotel | $0.00 | $332.12 |
| **Grand Total Expenses** | | **$0.00** | **$51,421.12** |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------X
:
*In re*                                              :    Chapter 11
:
Nortel Networks Inc., *et al.*,[2]                    :    Case No. 09-10138 (KG)
:
             Debtors.       :    Jointly Administered
:
:    **Hearing Date: September 6, 2011 at 10:00 a.m. (ET)**
:    **Objections Due:  August 30, 2011 at 4:00 p.m. (ET)**
------------------------------------------------------X

**THIRD MONTHLY (FOR PERIOD JUNE 1, 2011 THROUGH AUGUST 2, 2011) AND
FINAL APPLICATION OF ADDREX INC. AS A BROKER
TO DEBTORS AND DEBTORS-IN-POSSESSION, FOR ALLOWANCE
OF INTERIM COMPENSATION AND FOR INTERIM REIMBURSEMENT
OF ALL ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE
<u>PERIOD NOVEMBER 24, 2010 THROUGH AUGUST 2, 2011</u>**

      Addrex, Inc. ("<u>Addrex</u>"), as a broker for Nortel Networks, Inc and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "<u>Debtors</u>"), submits its Third and Final Application (the "<u>Application</u>") pursuant to 331 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court of the District of Delaware (the "<u>Local Rules</u>"), and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330, effective January

---

[2]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

1

30, 1996 (the "U.S. Trustee Guidelines") and the Order Under 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and Reimbursement of Fees and Expenses for Professionals and Official Committee Members (D.I. 222) (the "Interim Compensation Procedures Order")[3] for (i) an allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses incurred in connection with such services form June 1, 2011 through and including August 2, 2011 (the "Interim Compensation Period") and (ii) final allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses incurred in connection with such services from November 24, 2011 through and including August 2, 2011 (the "Final Compensation Period") as set forth in their engagement letter (the "Engagement Letter"). In support of this Application, Addrex represents as follows:

## JURISDICTION

1.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.     On January 14, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in

---

[3]     Terms used but not otherwise defined herein have the meanings ascribed to them in the Interim Compensation Procedures Order.

the Debtors' jointly administered bankruptcy cases.

3. On January 26, 2009, the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors.

## ADDREX'S RETENTION

4. On December 15, 2010, this Court entered the Order Authorizing Retention and Employment of Addrex Inc. *nunc pro tunc* to November 24, 2010 (D.I. 4603).

## FEE PROCEDURES ORDER

5. On February 4, 2009, the Court entered the Interim Compensation Procedures Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

6. In particular, the Interim Compensation Procedures Order provides that a Professional may file and serve a Monthly Fee Application with the Court after the first day of each calendar month. Provided that there are no objections to such Monthly Fee Application filed within twenty (20) days after the service of a Monthly Fee Application, the Professional may file a certificate of no objection with the Court, after which the Debtors are authorized to pay such Professional 80 percent of the fees and 100 percent of the expenses requested in such Monthly Fee Application. If a partial objection to the Monthly Fee Application is filed, then the Debtors are authorized to pay 80 percent of the fees and 100 percent of the expenses not subject to an objection.

## RELIEF REQUESTED

7. Pursuant to the instant Application, Addrex seeks approval and allowance: i) on an interim basis, of compensation for professional services rendered and for reimbursement of actual and necessary expenses incurred in connection with such services during the Interim Compensation Period and ii) on a final basis, of compensation for professional services rendered

3

and for reimbursement of actual and necessary expenses incurred in connection with such services during the Final Compensation Period.

8. Addrex submits that the services it provided to the Debtors during these cases necessary and of significant value to the Debtors' estates. It further submits that the compensation for professional services rendered and expenses incurred are reasonable and properly reflect Addrex's contributions to these cases.

9. Courts review transaction fees or success fees under the "reasonableness standard" of section 330 of the Bankruptcy Code. *In re XO Communications, Inc.*, 398 B.R. 106 (Bankr. S.D.N.Y. 2008); *In re Northwest Airlines Corporation*, 400 B.R. 393 (Bankr. S.D.N.Y. 2009). In considering a success fee, courts consider, among other factors, not only whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases outside of bankruptcy but also whether the services were necessary and beneficial to the debtors' estates at the time the services were rendered. *In re XO Communications, Inc.*, 398 B.R. at 113.

10. In determining the reasonableness of a success fee and whether the services rendered were necessary and beneficial to the debtors' estate, courts will look "at the nexus between what was achieved . . . and the impact of the advisor's effort in that regard." *In re XO Communications, Inc.*, 398 B.R. at 116; see also, *In re Northwest Airlines Corporation*, 400 B.R. 393 (court denied success fee for the financial advisor to the unsecured creditors' committee because, among other reasons, the financial advisor could not show a sufficient nexus between its services and the success of the case). Where a success fee is tied to the results of the bankruptcy case, time spent on the case "may shed little light on the actual value that a financial advisor brought to a transaction." *In re XO Communications, Inc.*, 398 B.R. at 113, n. 9.

11. During the Interim Application Period, Addrex (a) provided professional services to the Debtors and incurred fees totaling $73,732.72 and (b) incurred actual, reasonable and necessary expenses totaling $0.00. With respect to these amounts, as of the date of this Application, Addrex has received no payments.

12. During the Interim Compensation Period, NNI closed on the subsequent (final) transaction for the sale of the IPv4 numbers to Microsoft. A portion of the IPv4 numbers contracted for sale were subject to one or more Transaction Services Agreements ("TSA") and were in use at the time of the initial closing. During the Interim Compensation Period, the remaining TSAs were terminated, the IPv4 numbers cleared of use and transferred to Microsoft at the subsequent (final) closing. At this final closing the balance of the $7.5M purchase price was paid to Nortel. The Addrex engagement terms required a sale to be closed and funds received by NNI for Addrex to earn its deferred fees. The balance of the deferred fees owed to Addrex,, $73,732.72, were earned upon the final closing.

13. During the Final Compensation Period, NNI closed on the initial transaction and the subsequent (final) transaction for the sale of the IPv4 numbers to Microsoft. The Addrex engagement terms required a sale to be closed and funds received by NNI for Addrex to earn its deferred fees. Leading up to the initial closing and the subsequent (final) closing in the Final Compensation Period, Addrex provided extensive services to facilitate the sale of 666,624 Internet Protocol v4 (IPv4) numbers. Addrex provided advice and analysis to NNI on the potential market for IPv4 numbers, various sale scenarios, categorization of potential buyers, and the technical and business mechanics for the transfer of the IPv4 numbers. Addrex identified and confirmed with NNI the relevant IPv4 number blocks to be offered for sale, their allocation and current sub-allocations (if any). Incorporation documents for NNI and

5

predecessor organizations were obtained from the relevant State Departments of Corporations. These documents were reviewed to track the succession of ownership of the various IPv4 blocks. Addrex caused to be produced extensive documentation tracing the IPv4 number blocks from their original allocation authority to the original recipient organization, through the succession of corporate ownership (mergers, acquisitions, name changes, restructuring, etc.). Documentation reflecting the (then) current status in the relevant Whois databases, blacklisting (if any), pending litigation and any other encumbrances of the IPv4 number blocks were added to the succession of corporate ownership materials to document the full chain of ownership of the IPv4 number blocks. These materials were placed into an electronic dataroom administered by Addrex on behalf of NNI. Addrex, in collaboration with NNI and their counsel, created a marketing plan, produced offering materials and a series of informational documents and FAQ materials that were placed in the electronic dataroom upon approval of NNI. Addrex also placed bidding process materials, a draft Asset Purchase Agreement and other documentation in the electronic dataroom at the direction of NNI. Addrex developed solicitation materials to advise potential buyers of the process and how to participate. Once these materials were approved by NNI and their release was authorized, Addrex identified and solicited over 80 companies to invite their participation in the sale process. Companies who expressed an interest in participating were provided with an initial non-disclosure agreement to review and were placed in contact with counsel for NNI for execution of the final non-disclosure agreement. Once counsel for NNI informed Addrex of the execution of the non-disclosure agreement, the interested party was granted access to the electronic dataroom to gain access to the process, draft Asset Purchase Agreement and diligence materials. Addrex provided administration of the electronic dataroom and received initial inquiries from interested parties. These inquiries were directed to

appropriate personnel at NNI and their counsel for response. Addrex and NNI counsel received proposals from potential buyers and qualified proposals were evaluated by NNI and their counsel to determine the superior offer under the terms of the sale process and the bankruptcy requirements. Following the identification of the superior offer and the negotiation and execution of the Asset Purchase Agreement, Addrex provided notification to the other interested parties that a superior offer had been received and would be presented to the court for approval.

14. **Exhibit A** attached hereto contains a breakdown of disbursements incurred by Addrex during the Final Compensation Period.

15. Addrex has endeavored to represent the Debtors in the most expeditious and economical manner possible.

16. No agreement or understanding exists between Addrex and any other person for the sharing of compensation received or to be received for services rendered in or in connection with these cases.

17. The undersigned has reviewed the requirements of Local Rule 2016-2 and certifies to the best of his information, knowledge and belief that this Application complies with that Rule.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, Addrex respectfully requests that this Court enter a final order: (a) allowing Addrex interim compensation in the amount of 73,732.72 for actual, reasonable and necessary professional services rendered on behalf of the Debtors during the Interim Application Period and interim reimbursement in the amount of $0.00 for actual, reasonable and necessary expenses incurred during the same period; (b) allowing Addrex final compensation in the amount of $375,000.00, for actual, reasonable and necessary services rendered to or on behalf of the Debtors during the Final Application Period and final reimbursement of $51,421.12 for actual, reasonable and necessary expenses incurred during the Final Application Period; (c) authorizing and directing the Debtors to pay Addrex an amount equal to the sum of such allowed compensation and reimbursement, less any amounts previously paid by the Debtors; and (d) granting such other further relief as the Court deems just and proper.

Dated: August 10, 2011

ADDREX INC.

_____
Charles M. Lee
1775 Wiehle Ave. Suite 400
Reston, VA 20190

*Broker for the Debtors and Debtors in Possession*