## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                         :

*In re*                              :

Nortel Networks Inc., *et al.*,[1]      :

               Debtors.    :

                         :

                         :

                         :

                         :

                         :

-------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Related Docket Nos. 4345, 4347, and 4786**

**Hearing date: August 23, 2011 10:00 AM (ET) (PROPOSED)**
**Objections due: August 18, 2011 4:00 PM (ET) (PROPOSED)**

## DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019 APPROVING A SETTLEMENT STIPULATION WITH GENBAND INC.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and

363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing NNI to enter into that

certain stipulation and settlement agreement (the "Settlement"), by and among Nortel Networks

Corporation ("NNC"), Nortel Networks Limited ("NNL"), NNI, the EMEA Sellers[2] and the

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]      Capitalized terms used but not defined herein shall have the meaning ascribed to them in that certain Asset Sale Agreement by and among NNC, NNL, NNI, the other entities identified therein as Sellers and GENBAND Inc. dated December 22, 2009 (the "Sale Agreement").

Other Sellers, each as identified in the Sale Agreement (together with NNC, NNL, NNI and the

EMEA Sellers, the "Sellers"), the Joint Administrators (as defined below) and GENBAND US

LLC (f/k/a GENBAND Inc.) ("GENBAND" or the "Purchaser," and with the Sellers, Nortel

Networks S.A. (in administration and liquidation judiciaire) and the Joint Administrators, the

"Parties"), attached hereto as Exhibit B, and granting such other and further relief as the Court

deems just and proper.[3]  In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 363(b)

of the Bankruptcy Code and Bankruptcy Rule 9019.

### Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[4] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

---

[3]      The Debtors understand that the Canadian Debtors (defined below) plan to seek similar relief from the
Canadian Court (defined below).

[4]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code
on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases
for procedural purposes [D.I. 1098].

5.      On the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL (together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[5] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[6] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

---

[5]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[6]      The EMEA Debtors include the following entities:  NNUK (in administration), Nortel Networks S.A., Nortel Networks (Ireland) Limited (in administration), Nortel GmbH (in administration), Nortel Networks France S.A.S. (in administration), Nortel Networks Oy (in administration), Nortel Networks Romania SRL (in administration), Nortel Networks AB (in administration), Nortel Networks N.V. (in administration), Nortel Networks S.p.A. (in administration), Nortel Networks B.V. (in administration), Nortel Networks Polska Sp. z.o.o. (in administration), Nortel Networks Hispania, S.A. (in administration), Nortel Networks (Austria) GmbH (in administration), Nortel Networks, s.r.o. (in administration), Nortel Networks Engineering Service Kft (in administration), Nortel Networks Portugal S.A. (in administration), Nortel Networks Slovensko (in administration), s.r.o. (in administration) and Nortel Networks International Finance & Holding B.V. (in administration).

3

**Relief Requested**

7.        By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, authorizing NNI to enter into the Settlement and such other and further relief as the Court deems just and proper.

**Facts Relevant to this Motion**

8.        On December 23, 2009, the U.S Debtors filed the *Debtors' Motion For Orders (I) (A) Authorizing Debtors' Entry Into The Stalking Horse Agreement, (B) Authorizing And Approving The Bidding Procedures And Bid Protections, (C) Approving Payment Of An Incentive Fee, (D) Approving The Notice Procedures And The Assumption And Assignment Procedures, (E) Authorizing The Filing Of Certain Documents Under Seal And (F) Setting A Date For The Sale Hearing, And (II) Authorizing And Approving (A) The Sale Of Certain Assets Of Debtors' Carrier Voice Over IP And Application Solutions Business Free and Clear Of All Liens, Claims And Encumbrances And (B) The Assumption And Assignment Of Certain Executory Contracts* [D.I. 2193] seeking approval of the sale of substantially all of the assets relating to Nortel's Carrier Voice over IP and Communications Solutions Business (the "CVAS Business") to GENBAND pursuant to a stalking-horse purchase agreement (the "Stalking Horse Agreement"), subject to the receipt of a higher and better offer at auction.

9.        On or about December 29, 2009, the Canadian Debtors filed a motion with the Canadian Court seeking approval of the Stalking Horse Agreement and bidding procedures in relation to the sale of the CVAS Business.

10.       Following the Canadian Court's and U.S. Court's approval of the bidding procedures by orders dated January 6, 2010, and January 8, 2010 [D.I. 2259], respectively, Nortel marketed the CVAS Business to other potentially interested parties, based on the terms of

4

the Stalking Horse Agreement, but ultimately announced that it would not proceed to auction and would work toward closing the sale of the CVAS Business with GENBAND.

11.    Following a joint hearing between the Canadian Court and the U.S. Court on March 3, 2010, the Canadian Court approved the sale of the CVAS Business to GENBAND pursuant to the Sale Agreement by order dated March 3, 2010, and the U.S. Court approved the sale of the CVAS Business to GENBAND pursuant to the Sale Agreement by order dated March 4, 2010 [D.I. 2632], and the sale of the CVAS Business by the Sellers to the Purchaser closed on May 28, 2010 (the "Closing").  At the Closing the Purchaser paid $182,485,250 based on the Sellers' calculated Estimated Purchase Price of $182,649,000, as set forth in its Estimated Purchase Price Statement dated May 25, 2010.

12.    On September 15, 2010, the Purchaser delivered to the Sellers a Closing Statement that contained its calculation of certain post-closing purchase price adjustments provided for under the Sale Agreement and provided for a net purchase price adjustment in favor of the Purchaser in the amount of $139,096,000, and on October 13, 2010, the Sellers delivered a Disagreement Notice to the Purchaser that disputed, among other things, the Purchaser's calculation of the Deferred Profit Amount and provided for a net purchase price adjustment in favor of the Purchaser in the amount of $102,271,863.[7]

13.    On November 17, 2010, the U.S. Debtors filed the *Debtors' Motion for Entry of an Order Enforcing the Order Authorizing the Sale of Certain Assets of the Debtors' Carrier Voice Over IP and Application Solutions Business, and Directing the Release of Certain Escrowed Funds* [D.I. 4345] (the "U.S. Motion to Enforce the Sale Agreement") which motion

---

[7]    To account for certain corrections, on November 16, 2010, the Sellers delivered to the Purchaser a revised Disagreement Notice that provided for a net purchase price adjustment in favor of the Purchaser in the amount of $102,491,255; on January 18, 2011, the Sellers delivered to the Purchaser a further revised Disagreement Notice that provided for a net purchase price adjustment in favor of the Purchaser in the amount of $99,947,239.

sought determination that (i) the Courts maintained jurisdiction over the dispute between the

Parties, (ii) a determination of the Final Purchase Price, (iii) a determination that GENBAND

was liable for payment of a settlement payment received from Verizon and (iv) a determination

that GENBAND was liable for payment of the Canadian Transfer Tax Amount.

14.    On November 18, 2010, GENBAND filed the *Motion of GENBAND Inc. for
Entry of an Order Pursuant to Section 362(d) of the Bankruptcy Code Granting Relief from the
Automatic Stay to Compel Arbitration* [D.I. 4347] (the "U.S. Motion to Compel Arbitration").

15.    On or about November 30, 2010 the Canadian Debtors filed a motion with the
Canadian Court seeking, *inter alia*, a declaration that the Canadian Court and the U.S. Court
have the exclusive authority and jurisdiction to determine the dispute relating to the Deferred
Profit Amount, an order directing GENBAND to execute instructions to Wells Fargo for the
release of amounts held pursuant to an escrow agreement consistent with the Sellers' calculation
of the Deferred Profit Amount and relief in respect of the Canadian Transfer Tax Amount (the
"Canadian Motion to Enforce the Sale Agreement", and together with the U.S. Motion to
Enforce the Sale Agreement, the "Motions to Enforce the Sale Agreement").

16.    On or about December 9, 2010, GENBAND filed a motion with the Canadian
Court seeking, *inter alia*, an order requiring Nortel to submit the Deferred Profit Amount dispute
to the Accounting Arbitrator (the "Canadian Motion to Compel Arbitration").

17.    At a telephonic conference held on November 29, 2010, the U.S. Court
determined that the U.S. Motion to Compel Arbitration would be determined prior to the U.S.
Motion to Enforce the Sale Agreement.

18.    On December 15, 2010, the U.S. Court and the Canadian Court held a joint
hearing to determine the U.S. Motion to Compel Arbitration and the Canadian Motion to Compel

Arbitration, and on January 21, 2011, the U.S. Court denied the U.S. Motion to Compel

Arbitration (the "U.S. Order") and the Canadian Court denied the Canadian Motion to Compel

Arbitration (the "Canadian Order").

19.    Pursuant to a Notice of Appeal filed on February 1, 2011 [D.I. 4786], GENBAND

appealed the U.S. Order (the "U.S. Appeal"), and the U.S. Appeal was docketed in the United

States District Court for the District of Delaware.  Thereafter, on February 11, 2011, GENBAND

served a notice of motion seeking leave to appeal the Canadian Order (the "Canadian Appeal"

and together with the U.S. Appeal, the "Appeals").

20.    On April 4, 2011, GENBAND, the Debtors, the Canadian Debtors, the Official

Committee of Unsecured Creditors, and Ernst & Young Inc. in its capacity as Monitor of the

Canadian Debtors (the "Mediation Parties") engaged in mediation pursuant to the Standing Order

of the District Court of Delaware dated July 23, 2004.  None of the EMEA Sellers participated in

the mediation, nor were they required to do so.  The mediation produced a Memorandum of

Understanding (the "MOU") among the Mediation Parties for a potential settlement of certain

issues.  The MOU expressly provides that "Nortel's entry into this settlement is subject to the

receipt of approvals from all Nortel Sellers and approval by the relevant Courts" (emphasis

supplied).

21.    Since the conclusion of the mediation, the Mediation Parties have negotiated

toward the terms of a settlement agreement, the Proposed Settlement Agreement, which, if

finally agreed to and executed by the relevant parties (which includes all Nortel Sellers) and

approved by the relevant courts, would resolve the Motions, the Appeals and certain other issues.

In summary, the Proposed Settlement Agreement would provide, inter alia, that (i) the Deferred

Profit Amount shall be $56,049,381, and, after giving effect to the Deferred Profit Amount, the

7

Final Purchase Price under the Sale Agreement shall be $157,743,756, which shall resolve all disputes among the parties with respect to the Deferred Profit Amount; (ii) the dispute over the Canadian Transfer Tax Amount shall be resolved by the Nortel Sellers deducting an amount equal to the Canadian Transfer Tax Amount from the Balance payable to GENBAND and the Nortel Sellers paying such amount to NNL; (iii) as of the Settlement Date, the U.S. Debtors and Canadian Debtors shall withdraw the Motions to Enforce the Sale Agreement and GENBAND shall file notices of withdrawal of the Appeals; and (iv) that withdrawal of the Motions shall resolve the dispute concerning the Verizon Settlement Amount.

22.     As of May 20, 2011, certain Nortel Sellers had not yet given their approval and consent to the Proposed Settlement Agreement.  On that date, GENBAND filed the *Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5459].  On June 1, 2011, the U.S. Debtors filed the *U.S. Debtors' Objection to the Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5553].  On June 1, 2011, the Joint Administrators filed the *Objection of the Joint Administrators to Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5550].  On June 2, 2011, GENBAND filed *Reply of GENBAND US LLC to the U.S. Debtors' and the Joint Administrators' Objections to the Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5570].  On June 10, 2011, during a telephone call among the Court, the Monitor, counsel for GENBAND, the U.S. Debtors, the EMEA Debtors, the Joint Administrators and the Canadian

Debtors (the "Telephonic Conference") this Court stated that it would not hear GENBAND's

9019 Motion as presented and that GENBAND should instead bring its claims in an adversary

proceeding.  Additionally, during the Telephonic Conference the Court indicated that all the

Nortel Sellers should meet and confer with GENBAND by June 15, 2011.

        23.     On June 15, 2011 and again on June 17, 2011 the Nortel Sellers participated in

conference calls with GENBAND (the "Meet and Confer Calls").  In these calls, it was reported

that o.o.o. Nortel Networks ("Nortel Russia") had agreed to approve the Proposed Settlement

Agreement on the understanding that certain unrelated inter-estate matters would be resolved

(the "Unrelated Inter-Estate Issue").  At the time, the Unrelated Inter-Estate Issue remained

unresolved.

        24.     On June 20, 2011, GENBAND initiated an adversary proceeding against the

Debtors by filing a Complaint for Declaratory Relief and Specific Performance (Adv. Proc. No.

11-52332-KG) [Adv. D.I. 1] (the "Complaint") against the Debtors in this Court.  On June 28,

2011, GENBAND also filed the Plaintiff's Motion to Expedite the Adversary Proceeding [Adv.

D.I. 5] (the "Motion to Expedite," and collectively with the U.S. Motion to Compel Arbitration,

the Motions to Enforce the Sale Agreement and the Motion to Compel Settlement, the

"Motions").  On July 20, 2011, the Debtors filed their Answer to the Complaint [Adv. D.I. 7] and

their Objection to the Motion to Expedite [Adv. D.I. 8].  On August 1, 2011, GENBAND filed

its Reply to the Debtors' Objection to the Motion to Expedite [Adv. D.I. 9].

        25.     On July 28, 2011, the Debtors filed a motion with the Court for an order

approving certain agreements that, if approved and executed, will address the Unrelated Inter-

Estate Issue, among other matters.  See Debtors' Motion for Entry of an Order Pursuant to 11

U.S.C. §§ 105 and 363 Approving Agreements Regarding Nortel Russia and Approving

Amendment of Certain Escrow Agreements [D.I. 6047] (the "Inter-Estate Settlement".)[8]  The Inter-Estate Settlement removes Nortel Russia as a depositor to the CVAS sellers' escrow account, and Nortel Russia has agreed to provide its consent to the Settlement upon the filing of motions to approve the Inter-Estate Settlement in both this Court and the Canadian Court.

26.     On or about August 9, 2011, the Nortel TSA Parties (defined below) agreed to a settlement agreement (the "TSA Settlement Agreement") resolving certain disputes concerning the Transition Services Agreement (the "TSA"), dated May 28, 2010, by and between NNC, NNL, NNI, NNUK, NN Ireland, Nortel Networks de Mexico, S.A. de C.V., Nortel de Mexico, S. de R.L. de C.V., Nortel Networks (China) Limited, Nortel Networks Australia Pty Limited, Nortel Networks (India) Private Limited, and each of the Joint Administrators in their respective capacities as joint administrator of respectively NNUK and NN Ireland only (collectively, the "Nortel TSA Parties").  Pursuant to the terms of the TSA Settlement Agreement, GENBAND agrees, *inter alia*, to direct $9,072,647.61 of the amount payable to GENBAND under the Settlement to certain of the Sellers and their Affiliates (as identified by NNI, NNL and NNUK) on GENBAND's behalf in satisfaction of GENBAND's liabilities under the TSA Settlement Agreement.

27.     The Debtors therefore bring this Motion seeking an order authorizing, but not requiring, them to execute the Settlement, but only if the Inter-Estate Settlement is approved and executed, such that Nortel Russia and Nortel France, and all other required parties, are willing to approve and execute the Stipulation.

---

[8]     The Debtors have been informed that the Canadian Debtors will be seeking similar relief from the Canadian Court.

**Basis For Relief**

28.     The Debtors seek authorization under sections 105 and 363 of the Bankruptcy

Code and Bankruptcy Rule 9019 to enter into the Settlement, if the conditions outlined above

have been satisfied.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue

any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C.

§ 105(a).

29.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease the

property of the estate outside of the ordinary course of business after notice and a hearing.  11

U.S.C. § 363.  Section 363 applies when an agreement involves the disposition of the estate's

assets in such a way that it ventures beyond an ordinary course transaction.  Myers v. Martin (In

re Martin), 91 F.3d 389, 394-95 (3d Cir. 1996).

30.     The use or transfer of estate property under this provision must be supported by a

sound business purpose.  Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),

722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459, 2002 WL

32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward

Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re

Del. & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991); Travelers Cas. & Sur. Co. v.

Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008).

A court determining whether a sound business purpose justifies the transaction "should consider

all salient factors pertaining to the proceeding and, accordingly, act to further the diverse

interests of the debtor, creditors and equity holders, alike."  In re Montgomery Ward Holding

Corp., 242 B.R. at 153-54 & n.1 (quoting In re Lionel Corp., 722 F.2d at 1071).  In addition, a

debtor must show that the transaction has been proposed in good faith, that adequate and

reasonable notice has been provided and that it is receiving fair and reasonable value in exchange.  See In re Decora Indus., Inc., 2002 WL 32332749, at *2; In re Del. & Hudson Ry. Co., 124 B.R. at 176.

31.    Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.  Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  In re Pa. Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

32.    Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best

possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.

Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below

the lowest point in a range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of

Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at

330.

33.     The Third Circuit has set out four criteria for a bankruptcy court to consider when

evaluating a settlement proposal:  "(1) the probability of success in litigation; (2) the likely

difficulties in collection; (3) the complexity of the litigation involved, and the expense,

inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."

In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803

(E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159,

165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

34.     The Debtors respectfully submit that the Settlement meets the requirements under

section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  The Settlement is proposed as a

good faith means to resolve the Motions and Appeals.  While the Debtors are prepared to litigate

the Motions and Appeals and believe that they would prevail in such litigation, litigation carries

with it inherent uncertainties and there is no assurance that such litigation would achieve a better

result than the one set forth in the Settlement.  The Settlement fairly balances the Debtors'

likelihood of success on the merits of the Motions and Appeals against their interest in avoiding

the uncertainty of litigation.

35.     In addition, the disputes underlying the Motions and Appeals are extremely

complex and further litigation would result in the estate's expenditure of considerable additional

13

legal fees.  Thus, in the absence of a settlement between the Parties, NNI's estate would be burdened with the time and costs of continuing litigation, which would be disruptive of the estate's efforts to resolve the many matters that are essential to the ultimate resolution of these cases.

36.    Finally, the interests of the creditors militate in favor of approval of the Settlement.  The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Motions and Appeals and the avoidance of legal expenses that would be incurred if the Motions and Appeals were to be further litigated.  In light of the foregoing, the Debtors respectfully seek authorization to enter into the Settlement and approval of the Settlement.

## Notice

37.    Notice of the Motion has been given via first class mail, facsimile, electronic transmission, hand delivery or overnight mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to GENBAND; (v) counsel to the Canadian Debtors; (vi) each of the other Parties; and (vii) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

38.    No prior request for the relief sought herein has been made to this or any other court.

14

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  August 11, 2011
   Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
David H. Herrington (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*