## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------X
                                                      :
                                                      :     Chapter 11
                                                      :
In re                                                 :
                                                      :     Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,¹                        :
                                                      :     Jointly Administered
                              Debtors.                :
                                                      :
                                                      :
                                                      :
------------------------------------------------------X
```

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## SHORTENING NOTICE RELATING TO DEBTORS'
## MOTION FOR ENTRY OF AN ORDER PURSUANT TO
## 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019
## APPROVING A SETTLEMENT STIPULATION WITH GENBAND INC.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors") hereby move this Court (the "Motion") for the entry of

an order, substantially in the form attached hereto as Exhibit A, pursuant to sections 102(1) and

105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1(e) of the Local Rules

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules") (i) shortening notice to allow the *Debtors' Motion For Entry Of*

*An Order Pursuant To 11 U.S.C. §§ 105 And 363 And Fed. R. Bankr. P. 9019 Approving A*

---

¹       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

*Settlement Stipulation With GENBAND Inc.* (the "Approval Motion"),[2] filed contemporaneously herewith, to be considered on an expedited basis; (ii) setting August 18, 2011 at 4:00PM (Eastern Time) as the deadline to file objections to the Approval Motion (the "Objection Deadline"); and (iii) scheduling a hearing on the Approval Motion for the joint omnibus hearing currently scheduled for August 23, 2011 at 10:00 AM (Eastern Time) (the "Hearing").  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 102(1) and 105(a) of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9006 and Local Rule 9006-1(e).

## Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[3] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

---

[2]      Capitalized terms used but not defined herein have the meanings ascribed to them in the Approval Motion.

[3]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

5.      On the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL (together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7.      By this Motion, the Debtors seek an order (i) shortening the notice period for the Approval Motion to allow it to be considered on an expedited basis; (ii) setting August 18, 2011

---

[4]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]      The EMEA Debtors include the following entities:  NNUK, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V. ("NNIFH")

at 4:00 PM (Eastern Time) as the Objection Deadline; and (iii) scheduling the Hearing on the

Approval Motion for August 23, 2011 at 10:00 AM (Eastern Time).

**Facts Relevant to this Motion**

8.      On December 23, 2009, the U.S Debtors filed the *Debtors' Motion For Orders (I)*

*(A) Authorizing Debtors' Entry Into The Stalking Horse Agreement, (B) Authorizing And*

*Approving The Bidding Procedures And Bid Protections, (C) Approving Payment Of An*

*Incentive Fee, (D) Approving The Notice Procedures And The Assumption And Assignment*

*Procedures, (E) Authorizing The Filing Of Certain Documents Under Seal And (F) Setting A*

*Date For The Sale Hearing, And (II) Authorizing And Approving (A) The Sale Of Certain Assets*

*Of Debtors' Carrier Voice Over IP And Application Solutions Business Free and Clear Of All*

*Liens, Claims And Encumbrances And (B) The Assumption And Assignment Of Certain*

*Executory Contracts* [D.I. 2193] seeking approval of the sale of substantially all of the assets

relating to Nortel's Carrier Voice over IP and Communications Solutions Business (the "CVAS

Business") to GENBAND pursuant to a stalking-horse purchase agreement (the "Stalking Horse

Agreement"), subject to the receipt of a higher and better offer at auction.

9.       On or about December 29, 2009, the Canadian Debtors filed a motion with the

Canadian Court seeking approval of the Stalking Horse Agreement and bidding procedures in

relation to the sale of the CVAS Business.

10.     Following the Canadian Court's and U.S. Court's approval of the bidding

procedures by orders dated January 6, 2010, and January 8, 2010 [D.I. 2259], respectively,

Nortel marketed the CVAS Business to other potentially interested parties, based on the terms of

the Stalking Horse Agreement, but ultimately announced that it would not proceed to auction and

would work toward closing the sale of the CVAS Business with GENBAND.

11.     Following a joint hearing between the Canadian Court and the U.S. Court on March 3, 2010, the Canadian Court approved the sale of the CVAS Business to GENBAND pursuant to the Sale Agreement by order dated March 3, 2010, and the U.S. Court approved the sale of the CVAS Business to GENBAND pursuant to the Sale Agreement by order dated March 4, 2010 [D.I. 2632], and the sale of the CVAS Business by the Sellers to the Purchaser closed on May 28, 2010 (the "Closing").  At the Closing the Purchaser paid $182,485,250 based on the Sellers' calculated Estimated Purchase Price of $182,649,000, as set forth in its Estimated Purchase Price Statement dated May 25, 2010.

12.     On September 15, 2010, the Purchaser delivered to the Sellers a Closing Statement that contained its calculation of certain post-closing purchase price adjustments provided for under the Sale Agreement and provided for a net purchase price adjustment in favor of the Purchaser in the amount of $139,096,000, and on October 13, 2010, the Sellers delivered a Disagreement Notice to the Purchaser that disputed, among other things, the Purchaser's calculation of the Deferred Profit Amount and provided for a net purchase price adjustment in favor of the Purchaser in the amount of $102,271,863.[6]

13.     On November 17, 2010, the U.S. Debtors filed the *Debtors' Motion for Entry of an Order Enforcing the Order Authorizing the Sale of Certain Assets of the Debtors' Carrier Voice Over IP and Application Solutions Business, and Directing the Release of Certain Escrowed Funds* [D.I. 4345] (the "U.S. Motion to Enforce the Sale Agreement") which motion sought determination that (i) the Courts maintained jurisdiction over the dispute between the

---

[6]     To account for certain corrections, on November 16, 2010, the Sellers delivered to the Purchaser a revised Disagreement Notice that provided for a net purchase price adjustment in favor of the Purchaser in the amount of $102,491,255; on January 18, 2011, the Sellers delivered to the Purchaser a further revised Disagreement Notice that provided for a net purchase price adjustment in favor of the Purchaser in the amount of $99,947,239.

Parties, (ii) a determination of the Final Purchase Price, (iii) a determination that GENBAND

was liable for payment of a settlement payment received from Verizon and (iv) a determination

that GENBAND was liable for payment of the Canadian Transfer Tax Amount.

14.    On November 18, 2010, GENBAND filed the *Motion of GENBAND Inc. for*

*Entry of an Order Pursuant to Section 362(d) of the Bankruptcy Code Granting Relief from the*

*Automatic Stay to Compel Arbitration* [D.I. 4347] (the "U.S. Motion to Compel Arbitration").

15.    On or about November 30, 2010 the Canadian Debtors filed a motion with the

Canadian Court seeking, *inter alia*, a declaration that the Canadian Court and the U.S. Court

have the exclusive authority and jurisdiction to determine the dispute relating to the Deferred

Profit Amount, an order directing GENBAND to execute instructions to Wells Fargo for the

release of amounts held pursuant to an escrow agreement consistent with the Sellers' calculation

of the Deferred Profit Amount and relief in respect of the Canadian Transfer Tax Amount (the

"Canadian Motion to Enforce the Sale Agreement", and together with the U.S. Motion to

Enforce the Sale Agreement, the "Motions to Enforce the Sale Agreement").

16.    On or about December 9, 2010, GENBAND filed a motion with the Canadian

Court seeking, *inter alia*, an order requiring Nortel to submit the Deferred Profit Amount dispute

to the Accounting Arbitrator (the "Canadian Motion to Compel Arbitration").

17.    At a telephonic conference held on November 29, 2010, the U.S. Court

determined that the U.S. Motion to Compel Arbitration would be determined prior to the U.S.

Motion to Enforce the Sale Agreement.

18.    On December 15, 2010, the U.S. Court and the Canadian Court held a joint

hearing to determine the U.S. Motion to Compel Arbitration and the Canadian Motion to Compel

Arbitration, and on January 21, 2011, the U.S. Court denied the U.S. Motion to Compel

Arbitration (the "U.S. Order") and the Canadian Court denied the Canadian Motion to Compel

Arbitration (the "Canadian Order").

19.     Pursuant to a Notice of Appeal filed on February 1, 2011 [D.I. 4786], GENBAND

appealed the U.S. Order (the "U.S. Appeal"), and the U.S. Appeal was docketed in the United

States District Court for the District of Delaware.  Thereafter, on February 11, 2011, GENBAND

served a notice of motion seeking leave to appeal the Canadian Order (the "Canadian Appeal"

and together with the U.S. Appeal, the "Appeals").

20.     On April 4, 2011, GENBAND, the Debtors, the Canadian Debtors, the Official

Committee of Unsecured Creditors, and Ernst & Young Inc. in its capacity as Monitor of the

Canadian Debtors (the "Mediation Parties") engaged in mediation pursuant to the Standing Order

of the District Court of Delaware dated July 23, 2004.  None of the EMEA Sellers participated in

the mediation, nor were they required to do so.  The mediation produced a Memorandum of

Understanding (the "MOU") among the Mediation Parties for a potential settlement of certain

issues.  The MOU expressly provides that "Nortel's entry into this settlement is subject to the

receipt of approvals from all Nortel Sellers and approval by the relevant Courts."  (emphasis

supplied).

21.     Since the conclusion of the mediation, the Mediation Parties have negotiated

toward the terms of a settlement agreement, the Proposed Settlement Agreement, which, if

finally agreed to and executed by the relevant parties (which includes all Nortel Sellers) and

approved by the relevant courts, would resolve the Motions, the Appeals and certain other issues.

In summary, the Proposed Settlement Agreement would provide, inter alia, that (i) the Deferred

Profit Amount shall be $56,049,381, and, after giving effect to the Deferred Profit Amount, the

Final Purchase Price under the Sale Agreement shall be $157,743,756, which shall resolve all

disputes among the parties with respect to the Deferred Profit Amount; (ii) the dispute over the Canadian Transfer Tax Amount shall be resolved by the Nortel Sellers deducting an amount equal to the Canadian Transfer Tax Amount from the Balance payable to GENBAND and the Nortel Sellers paying such amount to NNL; (iii) as of the Settlement Date, the U.S. Debtors and Canadian Debtors shall withdraw the Motions to Enforce the Sale Agreement and GENBAND shall file notices of withdrawal of the Appeals; and (iv) that withdrawal of the Motions shall resolve the dispute concerning the Verizon Settlement Amount.

22.     As of May 20, 2011, certain Nortel Sellers had not yet given their approval and consent to the Proposed Settlement Agreement.  On May 20, 2011, even though not all Nortel Sellers had approved the proposed settlement, GENBAND filed the *Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5459] (the "Motion to Compel Settlement").  On June 1, 2011, the U.S. Debtors filed the *U.S. Debtors' Objection to the Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5553].  On June 1, 2011, the Joint Administrators filed the *Objection of the Joint Administrators to Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5550].  On June 2, 2011, GENBAND filed *Reply of GENBAND US LLC to the U.S. Debtors' and the Joint Administrators' Objections to the Motion of GENBAND US LLC for an Order Compelling Compliance with Settlement Agreement and Approving the Settlement Agreement Pursuant to Bankruptcy Rule 9019* [D.I. 5570].  On June 10, 2011, during a telephone call among the Court, the Monitor, counsel for GENBAND, the U.S. Debtors, the EMEA Debtors, the Joint

Administrators and the Canadian Debtors (the "Telephonic Conference") this Court made clear

that GENBAND's 9019 Motion was procedurally improper and that in any event the order

sought by GENBAND must be a joint order to avoid inconsistent judgments.  Additionally,

during the Telephonic Conference the Court indicated that all the Nortel Sellers should meet and

confer with GENBAND by June 15, 2011.

23.     On June 15, 2011 and again on June 17, 2011 the Nortel Sellers participated in

conference calls with GENBAND (the "Meet and Confer Calls").  In these calls, Herbert Smith

reported that o.o.o. Nortel Networks ("Nortel Russia") would not approve the Proposed

Settlement Agreement unless certain arrangements were made concerning other, unrelated inter-

estate matters (the "Unrelated Inter-Estate Issue").

24.     On June 20, 2011, GENBAND initiated an adversary proceeding against the

Debtors by filing a Complaint for Declaratory Relief and Specific Performance (Adv. Proc. No.

11-52332-KG) [Adv. D.I. 1] (the "Complaint") against the Debtors in this Court.  On June 28,

2011, GENBAND also filed the Plaintiff's Motion to Expedite the Adversary Proceeding [Adv.

D.I. 5] (the "Motion to Expedite," and collectively with the U.S. Motion to Compel Arbitration,

the Motions to Enforce the Sale Agreement and the Motion to Compel Settlement, the

"Motions").  On July 20, 2011, the Debtors filed their Answer to the Complaint [Adv. D.I. 7] and

their Objection to the Motion to Expedite [Adv. D.I. 8].  On August 1, 2011, GENBAND filed

its Reply to the Debtors' Objection to the Motion to Expedite [Adv. D.I. 9].

25.     On July 28, 2011, the Debtors filed a motion with the Court for an order

approving certain agreements that, if approved and executed, will address the Unrelated Inter-

Estate Issue, among other matters.  See Debtors' Motion for Entry of an Order Pursuant to 11

U.S.C. §§ 105 and 363 Approving Agreements Regarding Nortel Russia and Approving

9

Amendment of Certain Escrow Agreements [D.I. 6047] (the "Inter-Estate Settlement".)[7]  The

Inter-Estate Settlement removes Nortel Russia as a depositor to the CVAS sellers' escrow

account, and Nortel Russia has agreed to provide its consent to the Settlement upon the filing of

motions to approve the Inter-Estate Settlement in both this Court and the Canadian Court.

26.      Contemporaneously with the filing of this Motion, the Debtors have filed the

Approval Motion, seeking the Court's approval of the settlement stipulation (the "Settlement")

but only if the Inter-Estate Settlement is approved and executed, such that Nortel Russia and

Nortel France, and all other required parties, are willing to approve and execute the Settlement.

### Basis for Relief

27.      Local Rule 9006-1(e) provides for shortened notice "by order of the Court, on

written motion (served on all interested parties) specifying the exigencies justifying shortened

notice." Del. Bankr. L.R. 9006-1(e).   As set forth below, shortening notice is justified here.

28.      The Debtors respectfully submit that shortened notice is appropriate in this

instance because the MOU provides that the parties to the MOU must use their best efforts to

give effect to the terms of the MOU as soon as reasonably practicable.  Although the parties have

worked diligently to document the terms of the MOU in the Settlement, the Settlement is only

effective upon the entry of an order by both this Court and the Canadian Court.   The next

available hearing, currently scheduled for August 23, 2011, is scheduled to be a joint hearing

with the Canadian Court, and the Debtors understand that the Canadian Debtors intend to seek

approval of the Proposed Settlement Agreement at that hearing.  Accordingly, the Debtors

respectfully request that the Motion be scheduled for the August 23, 2011 hearing as well.

---

[7]       The Debtors have been informed that the Canadian Debtors will be seeking similar relief from the
Canadian Court.

29.     Additionally, since the conclusion of the mediation the Purchaser has brought the Motion to Compel Settlement and filed the Complaint and the related Motion to Expedite in an attempt to compel the Debtors to enter into the Settlement.  Although the Debtors believe that, should these matters proceed to litigation, the Debtors would prevail, such litigation would cause the Debtors to expend further, unnecessary time and resources resolving this dispute.   For this reason, the Debtors believe that a hearing on the Approval Motion on shortened notice is in the best interests of the Debtors' estates and creditors.

30.     For these reasons, the Debtors respectfully submit that allowing the Approval Motion to be considered on shortened notice is reasonable and appropriate under the circumstances.

## Notice

31.     Notice of the Motion has been given via first class mail, facsimile, electronic transmission, hand delivery or overnight mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to GENBAND; (v) counsel to the Canadian Debtors; (vi) each of the other Parties; and (vii) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

32.     No prior request for the relief sought herein has been made to this or any other court.

11

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  August 11, 2011
          Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (*admitted pro hac vice*)
Lisa M. Schweitzer (*admitted pro hac vice*)
David H. Herrington (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*