## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Hearing date: September 6, 2011 at 10:00am (ET)** |
| | : | **Objections due:  August 30, 2011 at 4:00pm (ET)** |

-------------------------------------------------------- X

### DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019
### FOR ENTRY OF AN ORDER APPROVING THE STIPULATION
### RESOLVING THE PROOFS OF CLAIMS FILED BY EMERSON NETWORK POWER
### – EMBEDDED COMPUTING, INC., EMERSON, ENERGY SYSTEMS, NORTH
### AMERICA, INC. AND ASTEC AMERICA, INC.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 502,

503(b)(9) and 553 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the

Debtors' entry into and approving a stipulation (the "Stipulation") with Emerson Electric Co. on

behalf of its wholly-owned subsidiaries Emerson Network Power – Embedded Computing, Inc.,;

Emerson, Energy Systems, North America, Inc.; and Astec America, Inc. ("Claimants," and

together with the Debtors, the "Parties"), attached hereto as **Exhibit B**, which resolves

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

Claimants' proofs of claim against NNI and Nortel Networks (CALA) Inc. as well as several additional contested issues; and granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 502, 503(b)(9) and 553 of the Bankruptcy Code and Bankruptcy Rule 9019.

### Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration

(the "English Proceedings") under the control of individuals from Ernst & Young LLP

(collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the

future may commence additional creditor protection, insolvency and dissolution proceedings

around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to

various purchasers.  For further information regarding these chapter 11 cases, reference may be

made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Facts Relevant to this Motion**

7.      On or about September 24, 2009, Claimants filed proofs of claim against NNI for

goods sold and repair services, which are listed on the Debtors' claim register as claims number

3552, 3553, 3554, 3555, 3556 and 3557 (together, the "NNI Claims").  Specifically, Claimant

Astec America, Inc. filed Claim No. 3552 as a general unsecured claim in the amount of

$132,939.52 and Claim No. 3555 as an administrative priority claim in the amount of $8,542.00.

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A.,
Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel
Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks
B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel
Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks
Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

Claimant Emerson Network Power – Embedded Computing, Inc. filed Claim No. 3553 as a secured claim in the amount of $245,546.64 and a general unsecured claim in the amount of $1,438,904.86, for a total of $1,684,451.50.  Claimant Emerson Network Power – Embedded Computing, Inc. also filed Claim No. 3556 as an administrative priority claim in the amount of $222,220.15.   Claimant Emerson Network Power, Energy Systems, North America, Inc. filed Claim No. 3554 as a general unsecured claim in the amount of $355,196.38 and Claim No. 3557 as an administrative priority claim in the amount of $29,837.25.

8.      On or about January 22, 2010, Claimants Astec America, Inc. and Emerson Network Power – Embedded Computing, Inc. filed proofs of claim against Debtor Nortel Networks (CALA) Inc. for goods sold and repair services, which are listed on the Debtors' claim register as claims 6859 and 6860 (together, the "CALA Claims," and together with the NNI Claims, the "Claims").  Specifically, Claimant Astec America, Inc. filed Claim No. 6859 as a general unsecured claim in the amount of $9,039.32 and Claimant Emerson Network Power – Embedded Computing, Inc. filed Claim No. 6860 as a general unsecured claim in the amount of $530.00.

9.      Combined, the Claims result in a total $1,936,610.08 in alleged unsecured claims, $260,599.71 in alleged administrative priority claims, and $245,546.64 in alleged secured claims.

10.      In an effort to negotiate an expeditious resolution of the disputes between the Debtors and the Claimants, the Parties entered into settlement discussions.  As a result of these negotiations, the Debtors, subject to this Court's approval, have reached a compromise with Claimants with respect to the resolution of the Claims as well as the additional contested issues set out below in paragraphs 12 – 15 (the "Additional Contested Issues").

11.     With respect to the Claims, the Parties initially agreed that the proofs of claim for Claim Nos. 3552, 3553, 3554, 3556, 3557, 6859 and 6860 support valid claims in the following amounts (the "Supported Claim Amounts"):  Claim No. 3552  supports a valid general unsecured claim in the amount of $132,939.52; Claim No. 3553 supports a valid general unsecured claim in the amount of $1,303,277.18; Claim No. 3554 supports a valid general unsecured claim in the amount of $348,710.73; Claim No. 3556 supports a valid claim with administrative priority under 11 U.S.C. § 503(b)(9) in the amount of $222,220.15; Claim No. 3557 supports a valid claim with administrative priority under 11 U.S.C. § 503(b)(9) in the amount of $4,033.50; Claim No. 6859 supports a valid general unsecured claim in the amount of $9,039.32; and Claim No. 6860 supports a valid general unsecured claim in the amount of $530.00.  The Parties have also agreed that the amounts claimed in Claim No. 3555 are not entitled to administrative priority and are duplicative of amounts claimed in Claim No. 3552, and that Claim No. 3555 should thus be disallowed in full.  The Parties have further agreed that the allowed portion of the Supported Claim Amounts set out in this paragraph should be adjusted based on the resolution of the Additional Contested Issues as set out below.

12.     On January 12, 2009, a Letter Agreement was executed under which "Nortel Networks," together with "its subsidiaries," were entitled to a credit in the amount of $859,000.00 to be applied to outstanding accounts receivable owed by Nortel Networks and its subsidiaries to "Emerson and its affiliates" in settlement of a warranty dispute (the "Warranty Settlement Credit").  The Debtors and the Canadian Debtors have entered into negotiations with respect to the application of the Warranty Settlement Credit across Claimants' claims in the U.S. and Canadian proceedings and have agreed to apply the credit according to the relative percentage each entity used the part in question, providing 86.5% of the credit to the Debtors

5

($743,035.00) and 13.5% of the credit to the debtors in the Canadian proceedings ($115,965.00). The Parties have agreed that the following Claims should reduced as a result: (1) the Supported Claim Amount of Claim No. 3553 will be reduced by $733,465.68; (2) Claim No. 6859 will be disallowed in full and expunged; and (3) Claim No. 6860 will be disallowed in full and expunged.

13.     While reconciling their books and records after the Petition Date, the Debtors discovered that 51 NTRY58AB components (the "Components") were missing from their location on consignment at an Emerson warehouse, and only 32 of those NTRY58AB components were able to be located.  The Parties have agreed to a resolution of NNI's claim for damages stemming from the loss of the Components (the "Component Damages"), whereby the Supported Claim Amount of Claim No. 3556 will be reduced by $154,147.00, the agreed value of the Components that remain missing, and the 32 located Components will be transferred by Emerson to NNI.

14.     NNI's books and records indicate that within ninety (90) days prior to the Petition Date, NNI made one or more transfers of an interest in its property to or for the benefit of Claimant Astec America, Inc. in the aggregate amount of $164,213.43 (the "Transfers") and that on November 9, 2010, the Debtors sent counsel for Astec America, Inc. a letter asserting the prospect of litigation to recover the Transfers pursuant to 11 U.S.C. § 547 (the "Avoidance Claim").  The Parties have agreed to resolve the Avoidance Claim by reducing the Supported Claim Amount of Claim No. 3556 for administrative priority by $25,000.00 (the "Avoidance Claim Settlement Amount") and increasing the Supported Claim Amount of general unsecured Claim No. 3552 by $25,000.00 (in respect of Claimant's prospective section 502(h) claim).

15.     The Debtors have filed their Thirty-Third Notice of Rejection of Executory Contract(s) and/or Nonresidential Real Property Lease(s) ("Notice") concurrently with this

Motion.  The Notice rejects an OEM Purchase and Sale Agreement between Nortel Networks Inc.

and Motorola, Inc., with an effective date of April 14, 2005, which was assigned to Emerson

Network Power – Embedded Computing, Inc. on December 31, 2007 (the "OEM Agreement"),

as well all schedules, appendices, amendments, addenda, notices of assignment, and all other

documents, agreements, or work orders executed or issued by any party or parties pursuant to the

OEM Agreement (the "Contract Rejection").  The Parties have agreed that as a result of the

Contract Rejection, Emerson is entitled to a pre-petition general unsecured claim for rejection

damages in the amount of $51,273.00 based on last-time-buy commitments memorialized in the

OEM Agreement (the "Rejection Damages Claim"), and that in consideration of the Rejection

Damages Claim, the Supported Claim Amount of Claim No. 3553 will be increased by

$51,273.00.  Emerson and its affiliates have agreed to waive the assertion of any and all further

claims related to or arising out of the Contract Rejection.

16.    As a result of these negotiations, the Debtors, subject to this Court's approval,

have reached a compromise with Claimants reducing and allowing Claim Nos. 3552, 3553, 3554,

3556 and 3557 against NNI for a total general unsecured amount $1,127,734.75 and a total

administrative priority amount of $47,106.65, and disallowing in full and expunging Claim Nos.

3555, 6859 and 6860 as memorialized in the Stipulation.  The Debtors believe, in the exercise of

their reasonable business judgment, that the resolution of the Claims through the Stipulation is

appropriate and in the best interest of both their estates and their creditors.

17.    Specifically, pursuant to the Stipulation[5] and subject to this Court's approval, the

Parties have agreed that Claim No. 3552 will be an allowed general unsecured claim of

$157,939.52; Claim No. 3553 will be an allowed general unsecured claim of $621,084.50; Claim

---

[5]    In the event of any discrepancy between the description of the Stipulation herein and the terms of the
Stipulation, the terms of the Stipulation shall govern.

No. 3554 will be an allowed general unsecured claim of $348,710.73; Claim No. 3556 will be an allowed administrative priority claim under 11 U.S.C. § 503(b)(9) of $43,073.15; and Claim No. 3557 will be an allowed administrative priority claim under 11 U.S.C. § 503(b)(9) of $4,033.50 (the "Allowed Claims").  The Parties have further agreed that Claim Nos. 3555, 6859 and 6860 should be disallowed in full and expunged.  In consideration of the partial allowance of these Claims against NNI, Claimants have agreed, subject to this Court's approval, to release all claims against the Debtors other than the Allowed Claims.

### Relief Requested

18.     By this Motion, the Debtors seek an order, pursuant to sections 105(a), 502, 503(b)(9) and 553 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing the Debtors' entry into the Stipulation and approving the Stipulation, and (ii) granting them such other and further relief as the Court deems just and proper.

### Basis for Relief

19.     The Debtors seek authorization to enter into the Stipulation under sections 105, 502, 503(b)(9) and 553 of the Bankruptcy Code and Bankruptcy Rule 9019.[6]  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

20.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.  Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)

---

[6]     Although the Parties do not believe that settlement of the pre-petition Warranty Claim involves a setoff pursuant to section 553 of the Bankruptcy Code, out of an abundance of caution the Debtors also request approval of the Stipulation pursuant to section 553 of the Bankruptcy Code and request related relief from the automatic stay.

(quoting <u>Collier on Bankruptcy</u> ¶ 9019.03[1] (15th ed. 1993)); <u>see also</u> <u>In re World Health</u>

<u>Alternatives, Inc.</u>, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally

favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'[i]n administering

reorganization proceedings in an economical and practical manner it will often be wise to

arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  <u>In re</u>

<u>Penn Cent. Transp. Co.</u>, 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting <u>Protective Comm. for</u>

<u>Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968)).  And

courts in this District have recognized that the approval of a proposed compromise and

settlement is committed to the sound discretion of the bankruptcy court.  <u>See, e.g.</u>, <u>In re Coram</u>

<u>Healthcare Corp.</u>, 315 B.R. 321, 329 (Bankr. D. Del. 2004).

   21. Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate."  <u>In re</u>

<u>Marvel Entm't Group, Inc.</u>, 222 B.R. 243, 249 (D. Del. 1998) (quoting <u>In re Louise's, Inc.</u>, 211

B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the

need to compare the terms of the compromise with the likely rewards of litigation."  <u>TMT Trailer</u>

<u>Ferry</u>, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best

possible compromise in order to approve it.  <u>In re Coram Healthcare Corp.</u>, 315 B.R. at 330.

Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below

the lowest point in a range of reasonableness."  <u>Travelers Cas. & Sur. Co. v. Future Claimants</u>

<u>Representative</u>, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing <u>Matter of</u>

<u>Jasmine, Ltd.</u>, 258 B.R. 119 (D.N.J. 2000)); <u>see also</u> <u>In re Coram Healthcare Corp.</u>, 315 B.R. at

330.

22.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

23.     The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation and request that their entry into the Stipulation be authorized under Bankruptcy Rule 9019.  While the Debtors are prepared to litigate the Claims and Additional Contested Issues described herein, and believe that they would prevail in such litigation, litigation carries with it inherent uncertainties and there are no assurances that such litigation would achieve a better result than the one set forth in the Stipulation.  Also, the settlement reflected in the Stipulation reduces a purported $2,442,756.43 in claims filed by Claimants, $245,546.64 of which was claimed as secured and $260,599.71 of which was claimed as entitled to administrative priority, to an overall allowed administrative priority claim of $47,106.65 and an overall allowed unsecured claim of $1,127,734.75.  The Stipulation also resolves the Additional Contested Issues potentially subject to litigation between the Parties.  This resolution fairly balances the Debtors' likelihood of success on the merits of the Claims and Additional Contested Issues against their interest in avoiding the uncertainty of litigation.

24.     In addition, litigation of the Claims and Additional Contested Issues would result in the estate's expenditure of legal fees, which could exceed the amounts in dispute between the Parties.  Finally, the interests of the creditors militate in favor of approval of the Stipulation.  The

Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Claims and the Additional Contested Issues and the avoidance of legal expenses that would be incurred if the Claims and Additional Contested Issues were to be litigated.

25.    In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

### Notice

26.    Notice of the Motion has been given via first class mail to (i) counsel to the Claimants; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

27.    No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: August 16, 2011  
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)  
Lisa M. Schweitzer (admitted *pro hac vice*)  
James L. Bromley (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone:  (212) 225-2000  
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
Chad A. Fights (No. 5006)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone:  (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors*  
*and Debtors in Possession*