### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NORTEL NETWORKS INC., *et al.,*[1] | : | Case No. 09-10138 (KG) |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | |
| NORTEL NETWORKS INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No. 10-55391 (KG) |
| | : | |
| NOKIA SIEMENS NETWORKS US LLC | : | |
| and NOKIA SIEMENS NETWORKS OY, | : | |
| | : | |
| Defendants. | : | **Hearing Date: September 6, 2011 at 10:00 a.m. (ET)** |
| | : | **Objection Deadline: August 30, 2011 at 4:00 p.m. (ET)** |

### DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION OF SETTLEMENT BY AND BETWEEN NORTEL NETWORKS, INC. AND NOKIA SIEMENS NETWORKS US LLC AND NOKIA SIEMENS NETWORKS OY

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and

debtors in possession, (collectively, the "Debtors"), hereby move this Court (the

"Motion"), for entry of an order substantially in the form attached hereto as Exhibit A,

pursuant to section 541of title 11 of the United States Code (the "Bankruptcy Code") and

Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

authorizing the Debtors to enter into and approving the stipulation by and between NNI

---

[1] In addition to Nortel Networks Inc., the Debtors in the Chapter 11 cases are: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA"). Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

and Nokia Siemens Networks US LLC ("NSN US") and Nokia Siemens Networks Oy

("NSN Oy", together with NSN US, "NSN" or "Defendants") (the "Stipulation"),

attached hereto as Exhibit B,[2] resolving the Adversary Proceeding entitled Nortel

Networks Inc. v. Nokia Siemens Networks US LLC *et al.*, Adv. Proc. No. 10-55391

(KG) (the "Adversary Proceeding"); and granting NNI such other and further relief as the

Court (the "Court" or the "Bankruptcy Court") deems just and proper.  In support of this

Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105 and 541

of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9019.

### Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[3] filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code, which cases are consolidated for procedural purposes only.  The

Debtors continue to operate their remaining businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]    The Stipulation attached hereto as Exhibit B is a redacted version of the Stipulation.  Contemporaneous with this Motion, Debtors have filed a motion seeking to file the unredacted version of the Stipulation under seal.

[3]    Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an *ad hoc* group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

---

[4]     The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]     The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

6.      On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it was unable to maximize value through sales.  Since then, Nortel has sold many of its business units and assets to various purchasers.  Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors at http://dm.epiq11.com/nortel.

## Relief Requested

7.      By this Motion, the Debtors seek an order (i) approving the Stipulation; (ii) authorizing but not directing the Debtors to take all actions reasonably appropriate to perform their obligations under the Stipulation; and (iii) granting them such other and further relief as the Bankruptcy Court deems just and proper.

## Facts Relevant to this Motion

A.      **Background of Dispute.**

8.      NNI commenced the Adversary Proceeding against NSN for the recovery of compensation for costs associated with the manufacture by NNI of certain trial equipment designed to operate under the Long Term Evolution networking standard ("LTE Trial Equipment") pursuant to a purchase and license agreement between NNI and NSN, dated June 26, 2009 (as amended effective July 13, 2009, the "Purchase and License Agreement").

9.      On or about June 19, 2009, NNI and Nokia Siemens Network B.V. ("NSN B.V.") entered into an asset sale agreement in relation to the sale of Nortel's mobility

networking solutions business and LTE technology (respectively, the "CDMA Sale" and the "CDMA Business"), whereby NSN B.V. agreed to serve as the stalking-horse bidder in the auction for the sale of the CDMA Business.

10.     On June 26, 2009, NNI and NSN Oy and its subsidiaries and affiliated companies entered into the Purchase and License Agreement relating to the manufacture of the LTE Trial Equipment.  NNI and NSN Oy and its subsidiaries and affiliated companies subsequently amended the Purchase and License Agreement, effective July 13, 2009, to allow NSN US to become a designated purchaser authorized to place orders with NNI directly.  Pursuant to the Purchase and License Agreement, NSN US issued four purchase orders to NNI for certain LTE Trial Equipment.

11.     On or about July 24, 2009, NNI held an auction in connection with the CDMA Sale.  After several rounds of bidding, NSN B.V. was outbid by the successful bidder and NSN B.V. was designated as the alternate bidder.  On July 28, 2009, the Bankruptcy Court authorized and approved the sale of the CDMA Business to the successful bidder.  On or about the same day, NSN notified NNI that it intended to cancel the orders for LTE Trial Equipment under the Purchase and License Agreement.

12.     On or about August 3, 2009, NNI notified NSN of the estimated out-of-pocket costs associated with the cancelled orders under the Purchase and License Agreement.  The parties were unable to resolve the dispute.

13.     On November 18, 2010, NNI commenced the Adversary Proceeding seeking recovery for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel and damages in an amount not less than $1,774,186.00.

14.    On April 9, 2009, the Bankruptcy Court entered an Order Authorizing And Approving Omnibus Settlement Procedures To Resolve, Mediate, Compromise or Otherwise Settle Certain Claims and Controversies (the "Settlement Procedures Order"), which requires the Debtors to obtain Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 before, *inter alia,* they settle claims where the asserted claim amount is greater than $200,000 [Case No. 09-10138 (KG), D.I. 586].

15.    Since the Complaint was filed, the parties have engaged in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by further litigation of the Adversary Proceeding, the parties desire to fully and completely resolve any and all disputes that have been raised or could be raised between them. The parties therefore seek an order of the Bankruptcy Court approving the Stipulation.

**B.  Summary of the Settlement Agreement.**[6]

16.    Pursuant to the Stipulation and subject to the Bankruptcy Court's approval, the parties have agreed to settle the Adversary Proceeding in the amount set forth in the Stipulation to be paid by Defendants to the Debtors' estate. In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration, Defendants have agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release NNI, its past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "Debtor Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or

---

[6]    The below is intended to summarize the material terms of the Stipulation. To the extent that there is inconsistency, the terms of the Stipulation control.

unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or

present, fixed or contingent, liquidated or unliquidated, that Defendants now have, had,

may have had, or hereafter may have against any of the Debtor Releasees, regarding the

Adversary Proceeding, and any transaction described or referred to in the Complaint in

the Adversary Proceeding.

17.     In consideration of the mutual promises and covenants set forth in the

Stipulation and other good and valuable consideration, NNI has agreed, subject to the

Bankruptcy Court's approval, to, *inter alia*, release the Defendants, their past and present

parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors,

officers, employees, agents, and attorneys, and each of their predecessors, successors and

assigns (collectively, the "Defendant Releasees"), from any and all claims, rights,

defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and

setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued,

matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated,

that NNI now has, had, may have had, or hereafter may have against any of the

Defendant Releasees, regarding the Adversary Proceeding, and any transaction described

or referred to in the Complaint in the Adversary Proceeding.

### Bases for Relief Requested

18.     Bankruptcy Rule 9019 provides, in pertinent part, that, "[o]n motion by

the trustee and after notice and a hearing, the court may approve a compromise or

settlement." Fed. R. Bankr. P. 9019(a).  Under this authority, the Third Circuit has

emphasized that compromises and settlements are favored in bankruptcy.  Myers v.

Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).  In addition, the District of

Delaware has recognized "[t]he consensual resolution of claims minimizes litigation and expedites the administration of [the] bankruptcy estate" and the approval of a proposed compromise and settlement falls within the sounds discretion of the bankruptcy court.  In re Coram Healthcare Corp., Inc., 315 B.R. 321, 329-30 (Bankr. D. Del. 2004); see also In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).  Furthermore, the Third Circuit has held that settlements typically reduce the "complexity and inconvenience of litigation." In re Nutraquest, Inc., 434 F.3d 639, 646 (3d Cir. 2006).

19.    Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the best interest of the estate."  In re Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005); In re Marvel Entm't. Group, 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. at 801); see also In re Nutritional Sourcing Corp., 398 B.R. 816, 832-33 (Bankr. D. Del. 2008).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation."  Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414., 424-25 (1968).  The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in [a] range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785 (FLW), 2008 WL 821088, at *5 (D. N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119 (D. N.J. 2000)); Official Unsecured Creditors' Comm. Of Pa. Truck Lines, Inc. v. Pa. Truck Lines, Inc. (In re Pa. Truck Lines, Inc.), 150 B.R. 595, 598 (E.D. Pa. 1992)).

20.    The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the

probability of success in litigation; (2) the likely difficulties in collection; (3) the

complexity of the litigation involved, and the expense, inconvenience and delay

necessarily attending it; and (4) the paramount interest of the creditors." In re Martin,

91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa.

1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165

(3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

21.     The Debtors respectfully submit that the Martin Factors weigh in favor of

approving the Stipulation.  While NNI is prepared to litigate the claims in the Adversary

Proceeding, NNI recognizes that litigation of the claims carries with it inherent

uncertainties and there can be no assurance that litigation would achieve a better result

than the one set forth in the Stipulation.  The settlement reflected in the Stipulation, and

the resolution achieved thereby, fairly balances NNI's likelihood of success on the merits

of the claims against its interest in avoiding the uncertainty of litigation.

22.     In addition, further litigation would result in the estate's expenditure of

considerable additional legal fees.  These would include fees associated with formal

discovery and litigation.  In the absence of a settlement, the estate would be burdened

with the time and costs of ongoing litigation, which would be disruptive of the estate's

efforts to resolve the matters that are essential to the ultimate resolution of these cases.

23.     Finally, the interests of the creditors weighs in favor of approval of the

Stipulation.  The Debtors believe that the interests of their creditors are served by the

prompt and efficient resolution of the Adversary Proceeding and the avoidance of

litigation risk and substantial legal expenses that would be incurred if the Adversary

Proceeding were to be further litigated.

24.    Accordingly, in light of the foregoing, by this Motion, the Debtors respectfully seek approval of the Stipulation

### Notice

25.    Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) counsel for Defendants.  All other parties designated to receive electronic notifications in these proceedings shall receive electronic notification of the Motion.  The Debtors submit that, under the circumstances, no other or further notice is necessary.

### No Prior Request

26.    No prior request for relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems proper.

Dated: August 19, 2011

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

By:    _/s/ Sarah R. Stafford_____
Raymond H. Lemisch, Esquire (No. 4204)
Jennifer R. Hoover, Esquire (No. 5111)
Sarah R. Stafford, Esquire (No. 5234)
222 Delaware Ave., Suite 801
Wilmington, DE 19801
302-442-7010 (telephone)
302-442-7012 (facsimile)
rlemisch@beneschlaw.com
jhoover@beneschlaw.com
sstafford@beneschlaw.com

*Attorneys for the Debtors*