## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:    Chapter 11
:
*In re*    :
:    Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,    :
:
Debtors.    :    (Jointly Administered)
:
-------------------------------------------------------- X
:
Nortel Networks Inc.,    :
:
Plaintiff,    :
:    Adv. Proc. No. 11-50021 (KG)
v.    :
:    **Hearing date:  September 21, 2011 at 10:00 a.m. (ET)**
Telmar Network Technology, Inc., Precision    :    **Objections due:  September 9, 2011 at 4:00 p.m. (ET)**
Communication Services, Inc., and Precision    :
Communication Services Corporation,    :
:
Defendants.    :
---------------------------------------------------------X

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR AN ORDER AUTHORIZING ENTRY INTO, AND APPROVING, THE STIPULATION OF SETTLEMENT BETWEEN AND AMONG NORTEL NETWORKS, INC., NORTEL NETWORKS (CALA) INC., NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, TELMAR NETWORK TECHNOLOGY, INC., PRECISION COMMUNICATION SERVICES, INC., AND PRECISION COMMUNICATION <u>SERVICES CORPORATION</u>**

Nortel Networks Inc. ("<u>NNI</u>"), Nortel Networks (CALA) Inc. ("<u>CALA</u>") and certain of

their affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), hereby move

this Court (the "<u>Motion</u>"), for the entry of an order substantially in the form attached hereto as

**Exhibit A**, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") authorizing NNI and CALA to enter into, and approving, that certain

stipulation of settlement dated August 11, 2011 (the "Stipulation"), attached hereto as **Exhibit B**,

between and among NNI, CALA, Nortel Networks Corporation, Nortel Networks Limited,

Telmar Network Technology, Inc. ("Telmar"), Precision Communication Services, Inc. ("PCSI")

and Precision Communication Services Corporation ("PCSC") resolving, *inter alia*, the above-

captioned adversary proceeding (the "Adversary Proceeding"), and the claims filed by Telmar,

PCSI and PCSC against the Debtors' estate, and granting such other and further relief as the

Court (the "Court" or the "Bankruptcy Court") deems just and proper.  In support of this Motion,

the Debtors respectfully represent as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory basis for the relief requested herein is sections 105(a) and 363(b) of

the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than CALA, filed

voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are

consolidated for procedural purposes only.  The Debtors continue to operate as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [Main D.I.s 141, 142], and an ad hoc group of bondholders has been

organized (the "Bondholder Group").

5.       On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors") commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors") into administration

(the "English Proceedings") under the control of individuals from Ernst & Young LLP

(collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the

future may commence additional creditor protection, insolvency and dissolution proceedings

around the world.

6.       Since the Petition Date, Nortel has sold its business units and other assets to

various purchasers.  For further information regarding these chapter 11 cases, reference may be

made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

### Relief Requested

7.       By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b)

of the Bankruptcy Code and Bankruptcy Rule 9019, authorizing NNI and CALA to enter into,

and approving, a stipulation of settlement with Telmar, PCSI, PCSC, NNC and NNL (the

"Stipulation").  The Stipulation, *inter alia*, resolves all claims in the above-referenced Adversary

Proceeding for a lump sum cash payment, will result in the withdrawal of all claims filed by

Telmar, PCSI and PCSC against the Debtors' estates and will provide for mutual releases among the parties.

### Facts Relevant to this Motion

8.      Both prior to and subsequent to the Petition Date, the parties to the Stipulation provided goods and services to each other, including, without limitation, switches, modules, circuits and related repair services.

9.      On January 3, 2011, Plaintiffs[1] commenced the Adversary Proceeding against the Defendants.  The claims asserted in the complaint in the Adversary Proceeding fall into three general categories: (i) claims relating to unpaid goods and services provided by the Plaintiffs to the Defendants ("Goods And Services Claims"); (ii) preference claims under § 547 of the Bankruptcy Code ("Preference Claims"); and (iii) objections to the claims filed by the Defendants against the Debtors' estates (the "Claims Objections").

10.     Specifically, the Goods And Services Claims assert that the Defendants were indebted to Plaintiffs in the amount of $2,183,030.75 for unpaid goods and services.  The Preference Claim asserts that the Defendants received preferential transfers in the amount of $648,819.97.  The Claims Objections assert that in excess of $5,000,000 in claims filed by the Defendants against the Debtors' estates were not allowable for several reasons including, *inter alia*, that such claims by the Defendants were not rendered to, or for the benefit, of  any of the Debtors.

11.     Subsequent to the commencement of the Adversary Proceeding, counsel for the Plaintiffs and the Defendants, along with the Canadian Debtors, determined that it was in all of the parties' best interests to attempt to reach an amicable, global resolution of the respective

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Stipulation.

claims between and among the Debtors and Canadian Debtors, on one hand, and the Defendants, on the other hand.

12.     As part of their attempt to reach a global settlement, the parties agreed to seek a comprehensive reconciliation of the hundreds of invoices between the Defendants and the Debtors and Canadian Debtors for goods and services to determine the actual amount owed by the Defendants to the Debtors and Canadian Debtors, subject to possible defenses or set-offs, claimed by the Defendants.

13.     This task was undertaken by the business people at the Debtors and the Defendants over an approximately four month period.

14.     Additionally, with respect to the Preference Claims, substantial materials relating to new value and other defenses were provided by the Defendants to the Debtors, which were analyzed by the Debtors' preference consultant.

15.     Following the review of this voluminous material, the parties engaged in negotiations which resulted in a settlement, which is evidenced by the Stipulation, for which the Debtors seek this Court's approval.  Additionally, the Stipulation has been acknowledged and approved by the Monitor.

16.     Pursuant to the Stipulation and subject to the Bankruptcy Court's approval,[2] NNI and CALA have agreed to settle the Adversary Proceeding for a lump sum payment from the Defendants in an amount which is to be kept confidential under the Stipulation (the "Settlement Amount").  A copy of the Stipulation, with the Settlement Amount redacted therefrom, is annexed hereto as **Exhibit B**.  Pursuant to the Stipulation, the Debtors may disclose the Settlement Amount to the Creditors' Committee and Bondholder Group.

---

[2]  In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

17.     Additionally, the Defendants have agreed in the Stipulation to withdraw all claims against the Debtors' estates, and have agreed not to file or re-file any claims in the future against the Debtors; provided however, the Defendants are entitled to the payment by the Debtors of those invoices listed on Exhibit A to the Stipulation, which aggregate $17,634.77 (the "Exhibit A Invoices").

18.     Under the Stipulation, the  Defendants have also agreed to release, *inter alia*, Plaintiffs, NNC and NNL and their past and present parents, subsidiaries, general partners, limited partners, shareholders, directors, officers, employees, agents and attorneys (collectively, the "Debtor Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, in law or equity, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the Defendants now have, had, may have had or hereafter may have against any of the Debtor Releasees, including, without limitation, all claims asserted in the Adversary Proceeding, the Defendants' U.S. Claims, the Defendants' Canadian Claims, all claims relating to the Master Agreement and any accessions thereto, any claims under warranty relating to goods or services sold prior to the Settlement Date, and any claims arising under § 502(h) of the Bankruptcy Code.  However, such release is not intended to, nor shall it constitute or be deemed to, include or waive (a) the payment obligations of Plaintiffs with respect to the Exhibit A Invoices and (b) the claims, rights, interests and actions of the Defendants and their affiliates *solely* as against the Brazilian Affiliates which are located in Brazil.  The term "Brazilian Affiliates" is defined in the Stipulation to expressly exclude the Debtors in this Chapter 11 case, the Canadian Debtors and those other parties released under the Stipulation.

19.     The Plaintiffs, NNC and NNL have agreed under the Stipulation to release and forever discharge the Defendants and their past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents and attorneys (collectively, the "<u>Defendant Releasees</u>"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, in law or equity, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that Plaintiffs, NNC and/or NNL have, had, may have had or hereafter may have against any of the Defendant Releasees, including, without limitation, all claims asserted in the Adversary Proceeding, the Adversary Proceeding Claims, the Canadian Debtors' Claims and any claims relating to the Master Agreement and any accessions thereto, and any claims under warranty relating to goods and services sold prior to the Settlement Date.

20.     The Stipulation also provides for an allocation of the Settlement Amount between the Debtors and Canadian Debtors.  Since approximately 94% of the Nortel invoices to the Defendants related to the United States Debtors, NNI will retain approximately 94% of the Settlement Payment and transfer approximately 6% to NNL, which is one of the Canadian Debtors.

## Basis for Relief

21.     NNI and CALA seek authorization under sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 to enter into the Stipulation.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §105(a).  Bankruptcy Rule 9019

provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019.

22.    Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease the property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363. Section 363 applies when an agreement involves the disposition of the estate's assets in such a way that it ventures beyond an ordinary course transaction. Myers v. Martin (In re Martin), 91 F.3d 389, 394-95 (3d Cir. 1996).

23.    The use or transfer of estate property under this provision must be supported by a sound business purpose. Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Del. & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991); Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward Holding Corp., 242 B.R. at 153-54 & n.1 (quoting In re Lionel Corp., 722 F.2d at 1071). In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided and that it is receiving fair and reasonable value in exchange. See In re Decora Indus., Inc., 2002 WL 32332749, at *2; In re Del. & Hudson Ry. Co., 124 B.R. at 176.

24.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019.  Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  Courts in this District have also recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

25.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330.  Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at \*5 (D.N.J. Mar. 25, 2008) (citing Matter of

Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at

330.

26.     The Third Circuit has set out four criteria for a bankruptcy court to consider when

evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62

B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.),

283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

27.     The Debtors respectfully submit that the Martin Factors weigh in favor of

approving the Stipulation and that the Stipulation meets the requirements under section 363 of

the Bankruptcy Code and Bankruptcy Rule 9019.

28.     First, the probability of success cannot be ensured.  The reconciliation of invoices

by the Debtors and Defendants showed disparities between amounts claimed as valid by each

side.  Additionally, Defendants have contended that they have defenses or set-offs to such

claims.

29.     The Defendants also provided documentation to the Debtors, purporting to show,

among other things, that "new value" provided by the Defendants exceeded the alleged

preferential payments in this case.

30.     The Defendants also filed numerous proofs of claim in excess of $5 million for

goods and services allegedly performed on behalf of the Debtors under the Plan.  The Debtors

disputed these claims.  However, a determination of such claims would require the resolution of

numerous factual issues. This would inevitably lead to substantial, expensive and protracted discovery. Under the Stipulation, the Defendants have waived all of these claims.

31.     The litigation is also complex since it would require the analysis of literally hundreds of invoices between the parties over an extended period of time to determine the validity of each of the invoices, whether the goods and services reflected in such invoices were actually provided, whether payments were made in the ordinary course of business, and to what extent new value was actually provided by the Defendants to the Plaintiffs within the meaning of the preference provisions of § 547 of the Bankruptcy Code.

32.     Further litigation of the Adversary Proceeding would result in the estates' expenditure of considerable additional legal fees. These would include fees associated with formal discovery and litigation. In the absence of a settlement, the estate would be burdened with the time and costs of ongoing litigation concerning the validity of hundreds of invoices for goods and services. Litigation concerning the validity of those invoices would be burdensome and would be disruptive of the estate's efforts to resolve the matters that are essential to the ultimate resolution of these cases.

33.     Finally, the interests of the creditors weigh in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Adversary Proceeding and the avoidance of litigation risk and substantial legal expenses that would be incurred if the Adversary Proceeding were to be further litigated.

34.     In light of the foregoing, the Debtors respectfully seek authorization for NNI and CALA to enter into the Stipulation and approval of the Stipulation.

**Notice**

35.     Notice of the Motion has been given via first class mail to (i) counsel for the
Defendants; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder
Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit
that under the circumstances no other or further notice is necessary.

**No Prior Request**

36.     No prior request for the relief sought herein has been made to this or any other
court.


[Remainder of Page Intentionally Left Blank]

12

WHEREFORE, the Debtors respectfully request that this Court (i) grant this

Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A**

hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  August 25, 2011
       Wilmington, Delaware

CROWELL & MORING LLP

Bruce J. Zabarauskas (admitted *pro hac vice*)
3 Park Plaza, 20th Floor
Irvine, California 92614
Telephone:  (949) 263-8400
Facsimile:  (949) 263-8414

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____*/s/ Chad A. Fights*_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Chad A. Fights (No. 5006)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*