## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
                                  :     Chapter 11

*In re*                            :

Nortel Networks Inc., *et al.*,[1]     :     Case No. 09-10138 (KG)
:
            Debtors.     :     (Jointly Administered)
:
--------------------------------------------------- X
:
Nortel Networks Inc.,          :
:
            Plaintiff,     :
:     Adv. Proc. No. 11-50021 (KG)
v.                      :
:     **Hearing date:  September 21, 2011 at 10:00 a.m. (ET)**
Telmar Network Technology, Inc., Precision     :     **Objections due:  September 9, 2011 at 4:00 p.m. (ET)**
Communication Services, Inc., and Precision     :
Communication Services Corporation,     :
:
            Defendants.     :
---------------------------------------------------------X

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## AUTHORIZING THE DEBTORS TO FILE UNDER SEAL, IN PART,
## EXHIBIT B TO DEBTORS' MOTION PURSUANT
## TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019
## FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT

Nortel Networks Inc. ("NNI"), Nortel Networks (CALA) Inc. ("CALA") and certain of

their affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move

this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as

---

[1]  In addition to Nortel Networks Inc. ("NNI"), the Debtors in the Chapter 11 cases are:  Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA").  Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

**Exhibit A**, pursuant to sections 105(a) and 107(b) of title 11 of the United States Code (the

"Bankruptcy Code"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and Rule 9018-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing the

Debtors to file under seal, in part, Exhibit B ("Exhibit B") to the *Debtors' Motion Pursuant to*

*Bankruptcy Rule 9019 For An Order Authorizing Entry Into, And Approving, The Stipulation Of*

*Settlement Between And Among Nortel Networks, Inc., Nortel Networks (CALA) Inc., Nortel*

*Networks Corporation, Nortel Networks Limited, Telmar Network Technology, Inc., Precision*

*Communication Services, Inc., And Precision Communication Services Corporation* (the

"Approval Motion").[2]  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 107(b)

of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9018 and Local Rule 9018-1.

## Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than CALA,[3] filed

voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are

consolidated for procedural purposes only.  The Debtors continue to operate as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]  Capitalized terms used but not defined herein have the meanings ascribed to them in the Approval Motion.

[3]  CALA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [Main D.I. 1098].

4.       The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [Main D.I.s 141, 142][4], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.       On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[5] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[6] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

---

[4]   Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __."  Citations herein to the docket in this adversary proceeding (Adv. Pro. No. 10-55159) are in the form "Adv. D.I. __."

[5]   The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[6]   The EMEA Debtors include the following entities:  NNUK (in administration), Nortel Networks S.A., Nortel Networks (Ireland) Limited (in administration), Nortel GmbH (in administration), Nortel Networks France S.A.S. (in administration), Nortel Networks Oy (in administration), Nortel Networks Romania SRL (in administration), Nortel Networks AB (in administration), Nortel Networks N.V. (in administration), Nortel Networks S.p.A. (in administration), Nortel Networks B.V. (in administration), Nortel Networks Polska Sp. z.o.o. (in administration), Nortel Networks Hispania, S.A. (in administration), Nortel Networks (Austria) GmbH (in administration), Nortel Networks, s.r.o. (in administration), Nortel Networks Engineering Service Kft (in administration), Nortel Networks Portugal S.A. (in administration), Nortel Networks Slovensko (in administration), s.r.o. (in administration) and Nortel Networks International Finance & Holding B.V. (in administration).

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

### Relief Requested

7.      By this Motion, the Debtors seek an order pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1 authorizing the Debtors to file a certain portion of Exhibit B to the Approval Motion under seal.

### Facts Relevant to this Motion

8.      Both prior to and subsequent to the Petition Date, the parties to the Stipulation provided goods and services to each other, including, without limitation, switches, modules, circuits and related repair services.

9.      On January 3, 2011, Plaintiffs commenced the  Adversary Proceeding against the Defendants.  The claims asserted in the complaint in the Adversary Proceeding fall into three general categories: (i) claims relating to unpaid goods and services provided by the Plaintiffs to the Defendants ("Goods And Services Claims"); (ii) preference claims under § 547 of the Bankruptcy Code ("Preference Claims"); and (iii) objections to the claims filed by the Defendants against the Debtors' estates (the "Claims Objections").

10.      Specifically, the Goods And Services Claims assert that the Defendants were indebted to Plaintiffs in the amount of $2,183,030.75 for unpaid goods and services.  The Preference Claim asserts that the Defendants received preferential transfers in the amount of $648,819.97.  The Claims Objections assert that in excess of $5,000,000 in claims filed by the Defendants against the Debtors' estate were not allowable for several reasons including, *inter alia*, that such claims by the Defendants were not rendered to, or for the benefit of  any of the Debtors.

11.     Subsequent to the commencement of the Adversary Proceeding, counsel for the Plaintiffs and the Defendants, along with the Canadian Debtors, determined that it was in all of the parties' best interests to attempt to reach an amicable, global resolution of the respective claims between and among the Debtors and Canadian Debtors, on one hand, and the Defendants, on the other hand.

12.     As part of their attempt to reach a global settlement, the parties agreed to seek a comprehensive reconciliation of the hundreds of invoices between the Defendants and the Debtors and Canadian Debtors for goods and services to determine the actual amount owed by the Defendants to the Debtors and Canadian Debtors, subject to possible defenses or set-offs, claimed by the Defendants.

13.     This task was undertaken by the business people at the Debtors and the Defendants over an approximately four month period.

14.     Additionally, with respect to the Preference Claims, substantial materials relating to new value and other defenses were provided by the Defendants to the Debtors, which were analyzed by the Debtors' preference consultant.

15.     Following the review of this voluminous material, the parties engaged in negotiations which resulted in a settlement, which is evidenced by the Stipulation, for which the Debtors seek this Court's approval.  Additionally, the Stipulation has been acknowledged and approved by the Monitor.

16.     Pursuant to the Stipulation[7] and subject to the Bankruptcy Court's approval, NNI and CALA have agreed to settle the Adversary Proceeding for a lump sum payment from the Defendants in an amount which is to be kept confidential under the Stipulation (the "<u>Settlement</u>

---

[7]  In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

Amount").[8]  A copy of the Stipulation, with the Settlement Amount redacted therefrom, is annexed to the Approval Motion as Exhibit B.  Pursuant to the Stipulation, the Debtors may disclose the Settlement Amount to the Creditors' Committee and Bondholder Group.

17.    Additionally, the Defendants have agreed in the Stipulation to withdraw all claims against the Debtors' estates, and have agreed not to file or re-file any claims in the future against the Debtors, provided however, the Defendants are entitled to the payment by the Debtors of those invoices listed on Exhibit A to the Stipulation, which aggregate $17,634.77 (the "Exhibit A Invoices").[9]

18.    Under the Stipulation, the  Defendants have also agreed to release, *inter alia*, Plaintiffs, NNC and NNL and their past and present parents, subsidiaries, general partners, limited partners, shareholders, directors, officers, employees, agents and attorneys (collectively, the "Debtor Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, in law or equity, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the Defendants now have, had, may have had or hereafter may have against any of the Debtor Releasees, including without limitation all claims asserted in the Adversary Proceeding, the Defendants' U.S. Claims, the Defendants' Canadian Claims, all claims relating to the Master Agreement and any accessions thereto, any claims under warranty relating to goods or services sold prior to the Settlement Date, and any claims arising under § 502(h) of the Bankruptcy Code.  However, such release is not

---

[8]  The Stipulation provides that the Settlement Amount may be disclosed to the Creditors' Committee and Ad Hoc Bondholders Group.

[9]  The invoices listed on Exhibit A to the Stipulation are invoices for goods and services which were sent subsequent to the parties' settlement discussions, and were not included as part of the settlement discussions between and among the parties.

intended to, nor shall it constitute or be deemed to, include or waive (a) the payment obligations

of Plaintiffs with respect to the Exhibit A Invoices and (b) the claims, rights, interests and actions

of the Defendants and their affiliates _solely_ as against the Brazilian Affiliates which are located

in Brazil.  The term "Brazilian Affiliates" is defined in the Stipulation to expressly exclude the

Debtors in this Chapter 11 case, the Canadian Debtors and those other parties released under the

Stipulation.

19.     The Plaintiffs have agreed under the Stipulation to release and forever discharge

Defendants and their past and present parents, subsidiaries, affiliates, general partners, limited

partners, shareholders, directors, officers, employees, agents and attorneys (collectively, the

"Defendant Releasees"), from any and all claims, rights, defenses, demands, liabilities,

obligations, damages, actions, suits, causes of action, and setoffs, in law or equity, whether

known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past

or present, fixed or contingent, liquidated or unliquidated, that Plaintiffs, NNC and/or NNL have,

had, may have had or hereafter may have against any of the Defendant Releasees, including

without limitation all claims asserted in the Adversary Proceeding, the Adversary Proceeding

Claims, the Canadian Debtors' Claims and any claims relating to the Master Agreement and any

accessions thereto, and any claims under warranty relating to goods and services sold prior to the

Settlement Date.

20.     The Stipulation also provides for an allocation of the Settlement Amount between

the Debtors and Canadian Debtors.  Since approximately 94% of the Nortel invoices to the

Defendants related to the United States Debtors, NNI will retain approximately 94% of the

Settlement Payment and transfer approximately 6% to NNL, which is one of the Canadian

Debtors.

21.     The Approval Motion, filed simultaneously with this Motion, seeks approval of the Stipulation.  By this Motion, the Debtors seek to seal a portion of the Stipulation, which is attached as Exhibit B to the Approval Motion.  The Stipulation contains confidential information concerning the Settlement Amount agreed to by and among the NNI, CALA and the Defendants.

### Basis for Relief

22.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the authority to issue orders that will protect entities from potential harm that may result from the disclosure of certain confidential information including "trade secret or confidential research, development, or commercial information."  11 U.S.C. § 107(b).  Commercial information has been defined as information that would cause "an unfair advantage to competitors by providing them information as to the commercial operation of the debtor."  Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.), 21 F.3d 24, 27 (2d Cir. 1994) (quoting Ad Hoc Protective Comm. for 10 1/2 % Debenture Holders v. Itel Corp. (In re Itel Corp.), 17 B.R. 942, 944 (9th Cir. BAP 1982)).

23.     A movant is not required to demonstrate "good cause" to file under seal.  Rather, if the material sought to be filed under seal falls within one of the categories identified in section 107(b) of the Bankruptcy Code, "the court is required to protect a requesting party and has no discretion to deny the application."  Orion, 21 F.3d at 27.

24.     Bankruptcy Rule 9018 sets forth the procedures by which a party may move for relief under Bankruptcy Code section 107(b), and provides, in relevant part, that "[o]n motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research,

8

development, or commercial information . . . ." Fed. R. Bankr. P. 9018. Local Rule 9018-1

requires any party who seeks to file documents under seal to file a motion to that effect. Del.

Bankr. L.R. 9018-1(b).

25.    The Debtors respectfully submit that the redacted information in the Stipulation is

confidential and sensitive commercial information and that it is appropriate that the unredacted

Settlement Agreement be filed under seal.

26.    Absent the relief requested herein, the Stipulation would divulge confidential

commercial information relating to the settlement by the parties of a contract, preference and

claims objection action. It is important for Nortel to maintain its ability to protect its property

and pursue its assets; such actual and potential claimants of Nortel should not be privy to the

terms pursuant to which Nortel has settled an individual contract claim based on the individual

relevant circumstances related to that claim. Keeping such settlement terms confidential will

further the Debtors' ability to maximize the value of their estates through protection of their

property.

27.    Unredacted copies of the Settlement Agreement will be provided to (i) this Court,

(ii) the U.S. Trustee, (iii) the Committee and (iv) the Bondholder Group.

### Notice

28.    Notice of the Motion has been given via first class mail to (i) the Defendants; (ii)

the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v)

the general service list established in these chapter 11 cases. The Debtors submit that under the

circumstances no other or further notice is necessary.

### No Prior Request

29.    No prior request for the relief sought herein has been made to this or any other

court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  August 25, 2011
       Wilmington, Delaware

CROWELL & MORING LLP

Bruce J. Zabarauskas (admitted *pro hac vice*)
3 Park Plaza, 20th Floor
Irvine, California  92614
Telephone:  (949) 263-8400
Facsimile:  (949) 263-8414

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____*/s/ Chad A. Fights*_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Chad A. Fights (No. 5006)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*