## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re:* | ) | Chapter 11 |
| | ) | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | <u>Objection Deadline</u>: September 20, 2011 at 4:00 pm (ET) |
| | ) | <u>Hearing Date</u>: Scheduled only if necessary |
| | ) | |

## THIRTIETH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM <u>JULY 1 TO JULY 31, 2011</u>
### (All Amounts in Canadian Dollars)

This is a(n): <u>x</u> monthly _____ interim _____ final application.

| | |
|---|---|
| Name of Applicant: | Fraser Milner Casgrain LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | March 5, 2009 (nunc pro tunc to January 26, 2009) |
| Period for which Compensation And Reimbursement is sought: | July 1 to July 31, 2011 |
| Amount of Compensation sought as actual, reasonable and necessary: | CDN $124,863.25 Equivalent to USD $127,785.05[2] |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | CDN $1,045.40 Equivalent to USD $1,069.86[2] |

The total time expended during this Compensation Period for the preparation of Fraser Milner Casgrain's Twenty-Ninth Monthly Fee Application was 3.1 hours and the corresponding compensation is CDN. $2,402.50).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

[2] Reuters Exchange Rate as of close of business on August 30, 2011 was CDN. $1.00 : U.S. $1.0234

## SUMMARY OF LAWYERS AND PARALEGALS
### RENDERING SERVICES DURING THE PERIOD
### JULY 1, 2011 THROUGH JULY 31, 2011
### (All Amounts in Canadian Dollars)

| Timekeeper | Title | Department | Province of Bar Admission/Year | Hours | Rate | Fees |
|---|---|---|---|---|---|---|
| Alex L. MacFarlane | Partner | Financial Restructuring | Ontario - 1988 | 24.6 | $800.00 | 19,680.00 |
| Alexandra North | Associate | Financial Restructuring | Ontario - 2009 | 4.2 | $350.00 | 1,470.00 |
| Jarvis Hétu | Associate | Financial Restructuring | Ontario - 2009 | 0.9 | $350.00 | 315.00 |
| Mary Picard | Partner | Pensions/Benefits | Ontario - 1985 | 0.4 | $775.00 | 310.00 |
| Matthew Peters | Partner | Taxation | Ontario - 2002 | 3.9 | $600.00 | 2,340.00 |
| Michael Wunder | Partner | Financial Restructuring | Ontario - 1990 | 66.2 | $775.00 | 51,305.00 |
| Paul Shantz | Consultant | Real Estate/Environmental | Ontario - 1979 | 0.4 | $650.00 | 260.00 |
| Ryan Jacobs | Partner | Financial Restructuring | Ontario - 2011 | 60.6 | $675.00 | 40,905.00 |
| Shayne Kukulowicz | Partner | Financial Restructuring | Ontario - 1990 | 5.0 | $850.00 | 4,250.00 |
| Susan Paul | Partner | Competition/Anti-Trust | Ontario - 1983 | 5.3 | $700.00 | 3,710.00 |
| Zahra Nurmohamed | Partner | Taxation | Ontario - 2001 | 0.8 | $640.00 | 512.00 |
| | | | | | | |
| TOTAL | | | | | CDN. | $125,057.00 |
| | Less Non-Working Travel Time Discount (50% $387.50) | | | | | -$193.75 |
| TOTAL | | | | | CDN. | $124,863.25 |

**COMPENSATION BY PROJECT CATEGORY**
**JULY 1, TO JULY 31, 2011**
**(All Amounts in Canadian Dollars)**

| Project Category | Hours | Value |
|---|---|---|
| General Case Administration | 1.6 | $1,110.00 |
| FMC Fee Application/Monthly Billing Reports | 4.9 | $3,797.50 |
| Creditors Committee Meetings | 17.1 | $12,677.50 |
| Court Hearings | 10.9 | $8,605.00 |
| General Claims Analysis/Claims Objections | 42.3 | $29,772.50 |
| CCAA Order/Court-Ordered Charges/Canadian Analysis | 0.7 | $472.50 |
| Lift Stay Litigation | 4.4 | $3,330.00 |
| General Adversary Proceedings | 1.0 | $725.00 |
| Tax Issues | 5.0 | $3,262.00 |
| Labor Issues/Employee Benefits | 0.2 | $155.00 |
| Telecommunications/Regulatory | 0.5 | 350.00 |
| Asset/Stock Transaction/Business Liquidations | 22.2 | $16,137.50 |
| Travel | 0.5 | $387.50 |
| Intercompany Analysis | 22.3 | $16,032.50 |
| Canadian Proceedings/Matters | 38.4 | $28,005.00 |
| U.S. Proceedings/Matters | 0.3 | $237.50 |
| Total | 172.3 | $125,057.00 |
| Less Non-Working Travel Discount (50% of $387.50) | | -$193.75 |
| **TOTAL** | **172.3** | **$124,863.25** |

**DISBURSEMENT SUMMARY**
**JULY 1 TO JULY 31, 2011**
**(All Amounts in Canadian Dollars)**

Non-Taxable Disbursements

| | | |
|---|---|---|
| Binding Books / Documents | $ | 6.00 |
| Ground Transportation (Taxi Charges/Courier) | $ | 234.17 |
| Library Computer Research | $ | 309.70 |
| Long Distance Telephone Calls | $ | 11.73 |
| Photocopy Charges | $ | 483.80 |
| | | |
| Total Non-Taxable Disbursements | **$1,045.40 CDN.** | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
                                          :
In re                                     : Chapter 11
                                          : Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,[1]          : Jointly Administered
                                          :
                        Debtors           : Objection Deadline: September 20, 2011 at 4:00 pm (ET)
                                          : Hearing Date: Scheduled only if necessary
---------------------------------------------------------X

THIRTIETH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP,
CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF
COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES
FOR SERVICES RENDERED DURING THE PERIOD FROM
JULY 1, 2011 THROUGH JULY 31, 2011

Fraser Milner Casgrain LLP ("FMC" or the "Applicant"), Canadian counsel to the

Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc., et al.

(the "Debtors"), hereby submits its thirtieth monthly application (the "Application") pursuant to

(i) sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2

of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local Rules"), and

(iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016

and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and

Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "Administrative Fee Order"), for interim allowance of

compensation for services rendered in the aggregate amount of CDN. $124,863.25 and for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

reimbursement of actual and necessary expenses incurred by FMC in connection therewith in the amount of CDN. $1,045.40 for the period from July 1 through July 31, 2011 (the "Compensation Period"). In support of this Application, FMC respectfully states as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II. BACKGROUND

2.      On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.      On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act (Canada) ("CCAA"). The Canadian Debtors continue to operate their businesses and manage their properties under the supervision of the Canadian Court.

5.      On January 14, 2009, the High Court of Justice in England placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrators").

6.      On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. The Committee currently consists of three members, as follows: (i) Law Debenture Trust Company of New York, as indenture trustee; (ii) Pension Benefit Guaranty Corporation; and (iii) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases.

7.      On March 5, 2009, this Court entered an order authorizing the retention of FMC as Canadian counsel to the Committee, *nunc pro tunc* to January 26, 2009. On that same day, the Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.      On June 10, 2009, FMC filed its First Interim Fee Application Request for the period January 26, 2009 through April 30, 2009 (the "First Interim Application"). In its First Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,321,010.79 (including applicable taxes) and the reimbursement of expenses in the amount of CDN. $18,604.14 (including applicable taxes). On July 17, 2009, this Court entered an order

approving 100% of the fees and expenses sought in the First Interim Application, and FMC has received payment of such amounts.

9.     On September 10, 2009, FMC filed its Second Interim Fee Application Request for the period May 1, 2009 through July 31, 2009 (the "Second Interim Application"). In its Second Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,335,961.21 (including applicable taxes) and the reimbursement of expenses in the amount of CDN. $21,483.56 (including applicable taxes). On September 30, 2009, this Court entered an order approving 100% of the fees and expenses sought in the Second Interim Application, and FMC has received payment of such amounts.

10.     On November 25, 2009, FMC filed its Third Interim Fee Application for the period from August 1, 2009 through October 31, 2009 (the "Third Interim Application"). In its Third Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,252,173.56 (including applicable taxes) and the reimbursement of expenses in the amount of CDN. $29,664.94 (including applicable taxes). On December 15, 2009, this Court entered an order approving 100% of the fees and expenses sought in the Third Interim Application, and FMC has received payment of such amounts.

11.     On February 24, 2010, FMC filed its Fourth Interim Fee Application for the period from November 1, 2009 through January 31, 2010 (the "Fourth Interim Application"). In its Fourth Interim Application, FMC sought the award and allowance of its fees in the amount of CDN.$1,222,600.68 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$24,078.44 (including applicable taxes). On March 17, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Fourth Interim Application, and FMC has received payment of such amounts.

12.     On June 1, 2010, FMC filed its Fifth Interim Application Request for the fee period from February 1, 2010 through April 30, 2010 (the "Fifth Interim Application"). In its Fifth Interim Application, FMC sought the award and allowance of fees in the amount of CDN.$1,545,435,79 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$30,093.86 (including applicable taxes). On June 24, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Fifth Interim Application, and FMC has received payment of such amounts.

13.     On September 8, 2010, FMC filed its Sixth Interim Application Request for the fee period from May 1, 2010 through July 31, 2010 (the "Sixth Interim Application"). In its Sixth Interim Application, FMC sought the award and the allowance of fees in the amount of CDN.$737,880.08 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$30,971.07 (including applicable taxes). Upon September 30, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Sixth Interim Application and FMC has received payment of such amounts.

14.     On December 13, 2010, FMC filed its Amended Seventh Interim Application Request for the fee period from August 1, 2010 through October 31, 2010 (the "Seventh Interim Application"). In its Seventh Interim Application, FMC sought the award and the allowance of fees in the amount of CDN.$1,069,919.50 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$22,207.78 (including applicable taxes). On December 15, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Seventh Interim Application and FMC has received payment of such amounts.

15.     On March 2, 2011, FMC filed its Eighth Interim Application Request for the fee period from November 1, 2010 through January 31, 2011 (the "Eighth Interim Application"). In its Eighth Interim Application, FMC sought the award and allowance of fees in the amount of

CDN. $1,018,317.00 and the reimbursement of expenses in the amount of CDN. $27,950.74. On March 23, 2011, this Court entered an order approving 100% of the fees and expenses sought in the Eighth Interim Application. FMC has received payment of such amounts.

16.    On June 1, 2011, FMC filed its Ninth Interim Fee Application Request for the fee period from February 1, 2011 through April 30, 2011 (the "Ninth Interim Application"). In its Ninth Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,023,851.00 and the reimbursements of expenses in the amount of CDN. $32,082.90. On June 21, 2011, this Court entered an order approving 100% of the fees and expenses sought in the Ninth Interim Application. FMC has received payment of such amounts.

17.    On July 19, 2011, FMC filed its Twenty-Eighth Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period May 1, 2011 through May 31, 2011 (the "Twenty-Eighth Monthly Application"). In its Twenty-Eighth Monthly Application, FMC sought the award and allowance of fees in the amount of CDN. $278,165.00 and the reimbursement of expenses in the amount of CDN. $5,504.24. A certificate of no objection was entered with respect to the Twenty-Eighth Monthly Application on August 10, 2011. FMC has received 80% of the fees and 100% of the expenses requested in the Twenty-Eighth Monthly Application.

18.    On August 12, 2011, FMC filed its Twenty-Ninth Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period June 1, 2011 through June 30, 2011 (the "Twenty-Ninth Monthly Application"). In its Twenty-Ninth Monthly Application, FMC sought the award and allowance of fees in the amount of CDN. $242,654.50 and the reimbursement of expenses in the amount of CDN. $4,764.90. A certificate of no objection was entered with respect to the Twenty-Ninth Monthly Application on

September 2, 2011. FMC has not yet received payment on account of the fees and expenses requested in the Twenty-Ninth Monthly Application.

## III.   RELIEF REQUESTED

19.   By this Application, FMC seeks (i) interim allowance and award of compensation for the professional services rendered by FMC during the Compensation Period in the amount of CDN. $124,863.25 representing 172.30 hours in professional services; and (ii) reimbursement of actual and necessary expenses incurred by FMC during the Compensation Period in connection with the rendition of such professional services in the amount of CDN. $1,045.40.

20.   Pursuant to the Administrative Fee Order, FMC is seeking payment of 80% of its fees (CDN $99,890.60) and 100% of its expenses (CDN. $1,045.40) relating to services rendered during the Compensation Period.

21.   FMC has received no payment and no promises for payment from any source for services rendered in connection with these Insolvency Proceedings. There is no agreement or understanding between the Applicant and any other person (other than members of FMC) for the sharing of compensation to be received for the services rendered in these cases.

22.   As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

## IV.   SUMMARY OF SERVICES RENDERED

23.   FMC has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to issues on an

expedited basis in furtherance of the Committee's needs have required the expenditure of

significant time by FMC personnel from several legal disciplines.

    24.    In the ordinary course of its practice, FMC maintains written records of the time

expended by lawyers and paraprofessionals in the rendition of their professional services.  In

accordance with the provisions of the Administrative Fee Order, a compilation showing the name

of the lawyer or paraprofessional, the date on which the services were performed, a description

of the services rendered, and the amount of time spent in performing the services for the

Committee during the Compensation Period is annexed hereto as <u>Exhibit B</u>.

    25.    In the ordinary course of its practice, FMC also maintains records of all actual and

necessary out-of-pocket expenses incurred in connection with the rendition of its professional

services, all of which are available for inspection.  A schedule of the categories of expenses and

amounts for which reimbursement is requested is annexed hereto as <u>Exhibit C</u>.  A detailed

summary of the expenses is attached hereto as <u>Exhibit D</u>.

    26.    FMC respectfully submits that the professional services that it rendered on behalf

of the Committee were necessary and appropriate, and have directly and indirectly contributed to

the effective administration of these chapter 11 cases, including the Committee's interest in the

Canadian Proceeding.

    27.    The following summary of services rendered during the Compensation Period is

not intended to be a detailed description of the work performed, as those day-to-day services and

the time expended in performing such services are fully set forth in Exhibit B.  Rather, it is

merely an attempt to highlight certain of those areas in which services were rendered to the

Committee, as well as to identify some of the problems and issues that FMC was required to

address.

### Case Administration

(Fees: CDN. $1,110.00; Hours 1.60)

28.     During the Compensation Period, FMC routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee in the most efficient matter with the least cost to these estates with respect to the Canadian Proceeding. FMC ensured that it coordinated its activities with those of Akin Gump and the other professionals acting on behalf of the Committee, including Jefferies, Capstone, and Ashurst.

29.     FMC believes it was able to efficiently address all issues relating to the case administration that have arisen during the pendency of the Canadian Proceeding.

### Canadian Proceedings

(Fees: CDN. $28,005.00; Hours 38.40)

30.     During the Compensation Period, FMC analyzed the amended and restated order (the "Initial Order") granted by the Canadian Court in the Canadian Proceeding in connection with various issues and transactions arising or proposed in the Canadian Proceeding.  FMC also reviewed and analyzed material filed with the Canadian Court by the Canadian Debtors and Ernst & Young Inc. in its capacity as the CCAA monitor of the Canadian Debtors (the "Monitor") in the Canadian Proceeding.  In connection therewith, FMC, carefully analyzed the relief requested in proposed orders, participated in conference calls with the Monitor, Nortel Debtors' Canadian counsel, as well as other major stakeholders, to discuss the issues associated therewith. In connection with such analyses, FMC conducted diligence on the subject matter of each motion in order to determine the effect that the relief requested by the Canadian Debtors in the Canadian Proceeding would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of the Debtors' cases. FMC, with the assistance of Akin Gump, ensured that the Committee had a complete understanding of the Canadian Proceeding and was apprised of all

material developments in the Canadian Proceeding through regular conference calls and, as appropriate, detailed memoranda.

31.     During the Compensation Period, the Monitor filed reports with the Canadian court with updates on the progress of the Canadian Debtors' activities and/or the Monitor's recommendations with respect to relief requested by the Canadian Debtors.  FMC reviewed each of these reports and discussed the reports with Akin Gump and the Committee's advisors, as well as the professionals for the Canadian Debtors.

32.     Finally, FMC attorneys spent time during the Compensation Period assessing Canadian issues relating to allocation and distributions from the Canadian estate, and liaised with Akin Gump and Capstone in connection therewith.

## **FMC Fee Application/Monthly Billing Rates**

(Fees: CDN. $3,797.50; Hours 4.90)

33.     This subject matter relates to time spent reviewing invoices and drafting monthly and interim fee statements as required under the Administrative Fee Order, including paraprofessional and attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses.

## Committee Meetings

(Fees: CDN. $12,677.50; Hours 17.10)

34.    This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, and with the Committee's other legal and financial advisors. FMC, together with the other Committee professionals, held three telephonic meetings with the full Committee during the Compensation Period.  In addition, during the Compensation Period, FMC had numerous telephonic conferences with Akin Gump and other Committee professionals.

35.    Prior to its meetings with the Committee, FMC reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith which related to the Canadian Proceeding.  Thereafter, FMC discussed each of these matters with Akin Gump and the Committee's other advisors and the Committee.  During these discussions, FMC assisted the Committee in formulating a position with respect to various pending matters.

36.    During the Compensation Period, FMC, together with Akin Gump, routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee in an efficient manner.  FMC also regularly consulted with Jefferies, Capstone, Akin Gump and Ashurst with respect to Canadian legal issues on documents and other information received from the Debtors and their representatives, and other sources.

37.    Through meetings, telephone conferences, and correspondence, FMC has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding, as same relate to the Debtors, and to reach independent conclusions on the merits of specific matters.

## Court Hearings

### (Fees: CDN $8,605.00; Hours 10.90)

38.     This subject matter relates to preparation for and attendance at hearings and other proceedings before the Canadian Court in respect of the Canadian Proceeding, and reviewing material filed with the Canadian Court. FMC lawyers appeared at hearings held before the Canadian Court during the Compensation Period where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered. During the Compensation Period, FMC lawyers attended to hearings before the Canadian Court for, among other matters, a cross-border joint hearing before this Court and the Canadian Court to approve the IP Sale (as that term is defined below) on July 11, 2011 and other motions to approve certain transaction agreements to which the Canadian Debtors are party relating to the IP Sale. FMC lawyers prepared for the Court hearings by reviewing all applicable motions and applications filed with the Canadian Court, including any responses thereto and consulted with Akin Gump, the Committee's other professionals and the advisors for the Canadian Debtors' and the Monitor in order to formulate appropriate strategies. FMC's participation at such hearings was necessary to protect the interests of the Debtors' unsecured creditors.

## Intercompany Issues

### (Fees: CDN. $16,032.50; Hours 22.30)

39.     This subject matter relates to time spent by FMC attorneys reviewing and analyzing certain intercompany issues arising among the various Nortel entities around the world, and their impact on the Nortel Debtors' Insolvency Proceedings. FMC attorneys, along with the Committee's other professionals spent significant time, during the Compensation Period analyzing and examining issues related to the allocation of sale proceeds and discussing such

issues with the Committee and the Committee's advisors, including in-depth analyses of various methodologies for allocating value among the Nortel Entities.

40.     On April 25, 2011, the Debtors and the Committee filed the *Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief* in both this Court and the Canadian Court (the "Allocation Procedures Motion"). On May 19, 2011, the Administrators, on behalf of the EMEA Debtors, filed in the U.S. Proceeding an objection to the Allocation Procedures Motion and cross-motion to compel the Nortel Debtors to enter into binding arbitration to resolve the allocation dispute, and the Administrators, on behalf of the EMEA Debtors, subsequently filed similar material and a cross-motion in the Canadian Proceeding (collectively, the "EMEA Objection and Cross Motion"). A joint hearing of the U.S. and Canadian Courts on the Allocation Procedures Motion took place on June 7, 2011, following which the Courts reserved judgment. On June 17, this Court filed an order and the Canadian Court issued an endorsement directing further mediation of the allocation dispute pending the Courts' decisions on the Allocation Procedures Motion and the EMEA Objection and Cross Motion. On June 29, 2011, this Court entered a supplemental order and the Canadian Court issued an endorsement appointing the Honourable Warren K. Winkler, Chief Justice of Ontario, to serve as mediator. During the Compensation Period, FMC, together with Akin Gump and the Committee's other advisors, continued to analyze issues related to the allocation of sale proceeds and related issues. Further, FMC together with Akin Gump, on behalf of the Committee, has continued to engage with the other relevant parties to discuss matters regarding the allocation of sale proceeds and related issues.

41.     Additionally, during the Compensation Period, FMC attorneys spent time continuing to analyze various intercompany claims and related issues. On March 18, 2011, the

Administrators, on behalf of the EMEA Debtors, submitted 84 intercompany claims against the

Canadian Debtors in the Canadian Proceeding. During the Compensation Period, FMC, along

with Akin Gump, continued its review and analysis of the EMEA intercompany claims and their

potential impact on the Nortel Debtors' estates.

### General Claims Analysis

(Fees: CDN. $29,772.50; Hours 42.30)

42.    This subject matter relates to the analysis of claims asserted or contemplated to be

asserted against the Debtors' estates and the estates of the Canadian Debtors. During the

Compensation Period, FMC attorneys, together with Akin Gump, spent time working with

Capstone to analyze claims filed against the Nortel Debtors in the Insolvency Proceedings

including claims asserted pursuant to the various note indentures into which the Debtors entered

prepetition, and researching and examining legal issues in connection with certain of those

claims. FMC, together with Akin Gump and Capstone, kept the Committee apprised of all

material developments with respect to the adjudication and reconciliation of claims in the

Canadian Proceeding.

43.    Additionally, during the Compensation Period, FMC, working with Akin Gump

and Ashurst, continued its analysis of the alleged claims asserted by Nortel Networks U.K.

Pension Trust Limited, as trustee of the Nortel Networks UK Pension Plan, the Board of the

Pension Protection Fund, and the EMEA Debtors against the Nortel Debtors in the various

Insolvency Proceedings including contractual and non-contractual claims against the Canadian

Debtors. Further, FMC, together with Akin Gump and Ashurst, continued to apprise the

Committee of such issues and their potential impact on these Insolvency Proceedings.

## Asset Sale/Intellectual Property

(Fees: CDN. $16,137.50; Hours 22.20)

44.    During the Compensation Period, FMC attorneys spent time working with the Committee's other professionals and professionals for the Nortel Debtors to consummate the sale (the "IP Sale") of the Nortel Debtors' intellectual property portfolio (the "Nortel IP"). As this Court is aware, following an auction with respect to the IP Sale on June 27-30, 2011, the Nortel Debtors announced a winning bid of $4.5 billion by a consortium comprising Apple, EMC, Ericsson, Microsoft, Research In Motion and Sony Corporation (collectively, the "IP Purchasers"). A joint hearing was held by this Court and the Canadian Court on July 11, 2011, following which this Court and the Canadian Court entered orders approving the sale of the Nortel IP to the IP Purchasers. Subsequent to the approval of the IP Sale, FMC attorneys, along with Akin Gump and the Committee's other professionals, spent time working with professionals for the Nortel Debtors to analyze issues and finalize relevant documents in advance of closing. The IP Sale was consummated on July 29, 2011.

## Non-Working Travel

(Fees: CDN. $387.50; Hours 0.50)

45.    During the Compensation Period, FMC attorneys spent 0.50 non-working hours traveling to court hearings and/or meetings. Pursuant to Local Rule 2016-2(d)(viii), FMC has discounted this time by 50% and, accordingly, has billed 0.25 working hours traveling for the Compensation Period.

## V.    ALLOWANCE OF COMPENSATION

46.    The professional services rendered by FMC required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by

the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

47.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to the Administrative Fee Order.

48.    With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

49.    The total time spent by FMC lawyers during the Compensation Period was 172.30 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

50.    As shown by this application and supporting documents, FMC spent its time economically and without unnecessary duplication of time. Attached hereto as <u>Exhibit E</u> is a schedule of the hours expended by the lawyers and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, FMC incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $1,045.40 for which FMC respectfully requests reimbursement in full.

51.    The disbursements and expenses have been incurred in accordance with FMC's normal practice of charging clients for expenses clearly related to and required by particular matters. FMC has endeavored to minimize these expenses to the fullest extent possible.

52.    FMC's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," postage and certain other office services, since the needs of each client for such services differ. FMC believes that it

is fairest to charge each client only for the services actually used in performing services for it.  In these proceedings, FMC charges $.10 per page for internal duplicating.

53.     No agreement or understanding exists between FMC and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

54.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**[The Remainder of Page Intentionally Left Blank]**

**WHEREFORE**, FMC respectfully requests that this Court:

(a)    approve the allowance of CDN. $124,863.25 for compensation for professional services rendered to the Committee during the period from July 1, 2011 through and including July 31, 2011;

(b)    approve the reimbursement of FMC's out-of-pocket expenses incurred in connection with the rendering of such services during the period July 1, 2011 through and including July 31, 2011 in the amount of CDN. $1,045.40; and

(c)    authorize and direct the Debtors to immediately pay to FMC the amount of CDN. $100,936.00 (USD $103,297.90[2]), which is equal to the sum of 80% of FMC's fees and 100% of FMC's expenses incurred during the Compensation Period.

Dated:    Toronto, Ontario
          August 31, 2011

FRASER MILNER CASGRAIN LLP

By: _____
    Michael J. Wunder (*pro hac vice*)
    A Member of the Firm

    77 King Street West, Suite 400
    Toronto-Dominion Centre
    Toronto, Ontario  M5K 0A1
    (416) 863-4511
    Canadian Counsel to the Official Committee of
    Unsecured Creditors

---

[2] Reuters Exchange Rate as of close of business on August 30, 2011 was CDN. $1.00 : U.S. $1.0234