## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                        :

*In re*                     :      Chapter 11

Nortel Networks Inc., *et al.*,[1]   :      Case No. 09-10138 (KG)

              Debtors.   :      Jointly Administered
                     :

                     :      **Hearing date:  September 22, 2011 at 10:00am (ET)**
                     :      **Objections due:  September 15, 2011 at 4:00pm (ET)**
-------------------------------------------------------X

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019
## FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT OF
## THE NORTEL ERISA LITIGATION, AMENDING THE AUTOMATIC STAY AS
## NECESSARY IN CONNECTION WITH SUCH SETTLEMENT, AND
## APPROVING THE STIPULATION RESOLVING PROOF OF CLAIM NO. 5043
## FILED BY CHUBB INSURANCE COMPANY OF CANADA

        Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and

362 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving the stipulation of

settlement  (the "Stipulation of Settlement"), attached hereto as **Exhibit B**, between NNI, Nortel

Networks Corporation ("NNC"), Nortel Networks Limited ("NNL" and together with NNI and

NNC, "Nortel"), certain former and current Nortel directors, officers and employees (together

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

with Nortel, the "Defendants"), and plaintiffs in the case In re Nortel Networks Corp. ERISA

Litigation, No. 03-MD-1537 (M.D. Tenn.) ("Plaintiffs"); (ii) approving the stipulation (the

"Chubb Stipulation") between Nortel and Chubb Insurance Company of Canada ("Chubb"),

attached hereto as **Exhibit C**, concerning Chubb's rights and obligations in relation to the

Stipulation of Settlement and resolving the proof of claim against NNI filed by Chubb, which is

listed on the Debtors' claim registry as Proof of Claim No. 5043 (the "Chubb Proof of Claim");

(iii) modifying the automatic stay as necessary to allow Chubb to pay the Settlement Amount, as

defined in the Stipulation of Settlement, using the proceeds of Chubb's Executive Protection

Policy No. 8091-66-461 (the "Chubb Policy"); (iv) modifying the automatic stay as necessary to

allow the United States District Court for the Middle District of Tennessee (the "District Court")

to approve the Stipulation of Settlement and to conduct such other proceedings and issue such

orders as may be necessary to approve the Stipulation of Settlement; and (v) granting them such

other and further relief as the Court deems just and proper.  In support of this Motion, the

Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 362 of

the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

3.    On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

5.    On the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct

corporate parent NNL, and certain of their Canadian affiliates (collectively, the "Canadian

Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian

Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking

relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst &

Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date,

the High Court of England and Wales placed nineteen of Nortel's European affiliates

(collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the

control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other

---

[2]  Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]  The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]  The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.     Since the Petition Date, Nortel has sold its business units and other assets to various purchasers. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

### Relief Requested

7.     By this Motion, the Debtors seek the entry of an order, pursuant to sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the proposed Stipulation of Settlement between the Defendants and the Plaintiffs with respect to the consolidated litigation styled as In re Nortel Networks Corp. ERISA Litigation, No. 03-MD-1537 (M.D. Tenn.) (the "ERISA Litigation"), which is currently pending in the District Court; (ii) approving the Chubb Stipulation between Nortel and Chubb concerning Chubb's rights and obligations in relation to the Stipulation of Settlement and resolving the Chubb Proof of Claim; (iii) modifying the automatic stay as necessary to allow Chubb to pay the Settlement Amount, as defined in the Stipulation of Settlement, using the proceeds of the Chubb Policy; (iv) modifying the automatic stay as necessary to allow the District Court to approve the Stipulation of Settlement and to conduct such other proceedings and issue such orders as may be necessary to approve the Stipulation of Settlement; and (v) granting them such other and further relief as the Court deems just and proper.  The Debtors further request that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

<u>**Facts Relevant to this Motion**</u>

**A.    Background of Current Dispute Between the Parties**

8.    On March 24, 1999, Chubb issued the Chubb Policy to Northern Telecom Limited, which became NNC that same year.[5]  Coverage was extended to NNC and its subsidiaries, including NNI (so-called "entity coverage"), as well as directors and officers with regard to claims arising from Nortel employee benefits programs.[6]  (Such covered entities and individuals are referred to herein as the "<u>Insureds</u>.")  Specifically, subject to various terms, conditions, limitations and exclusions, the Chubb Policy provides coverage for, among other things, litigation defense costs and fees and potential settlements and/or judgments arising from the litigation of claims under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1101 <u>et seq.</u> ("<u>ERISA</u>")  in the United States.  The Chubb Policy provides a primary layer of coverage in the amount of $30 million.  The policy period of the Chubb Policy commenced on March 3, 1999 and was extended through March 2, 2003.  Because the Chubb Policy is a claims-made policy, it only covers claims made or deemed to be made during the relevant policy period.

9.    NNI is a defendant in the ERISA Litigation, which was commenced as to NNI in March 2003.[7]  NNI is represented by Jackson Lewis LLP in that matter.  In addition, Jackson Lewis LLP also represents NNL, NNC and certain former and current Nortel directors and officers also named as defendants in the ERISA Litigation.[8]  Certain other former and/or current

---

[5]  NNC was substituted for Northern Telecom Limited as the named "Parent Organization" in the Chubb Policy by Endorsement No. 1 to that Policy, effective April 29, 1999.

[6]  The description of the Chubb Policy contained herein is provided for background purposes and is qualified in all instances by the terms of the Chubb Policy.

[7]  The Second Amended Complaint was filed on June 17, 2005.  The first lawsuit related to this matter was filed on December 21, 2001.

[8]  The Debtors filed an application with this Court requesting approval of the Debtors' retention of Jackson Lewis as defense counsel in the ERISA Litigation [D.I. 296], which this Court granted by order dated March 4, 2009 [D.I. 427].  In connection with the relief sought therein, the Debtors requested that they be authorized to compensate

Nortel directors, officers and employees are named as defendants in the ERISA Litigation and are represented by other counsel or appear *pro se*.

10.    The Plaintiffs in the ERISA Litigation allege that the Defendants (including NNI and former NNI officers and directors) breached their duties under ERISA by, among other things, (1) offering NNC stock as an investment option in the employee benefit plan at issue when it was imprudent to do so; (2) failing to disclose the risks associated with investment in NNC stock; (3) failing to disclose or misrepresenting material information about NNC; and (4) failing to monitor the conduct of other fiduciaries.  The ERISA Litigation is currently stayed under section 362 of the Bankruptcy Code and under the Amended and Restated Initial Order entered by the Canadian Court on January 14, 2009, as extended by the Canadian Court on February 10, 2009 and recognized by this Court in the Canadian Debtors' chapter 15 proceedings.[9]

11.    On September 30, 2009, the named Plaintiffs in the ERISA Litigation filed a purported class proof of claim against NNI, which is listed on the Debtors' claim registry as Claim No. 5509 (the "ERISA Proof of Claim").  The ERISA Proof of Claim was filed in an unliquidated amount in excess of $100,000,000, seeking relief on the same basis advanced by Plaintiffs in the ERISA Litigation.

---

Jackson Lewis for professional services rendered at its normal and customary hourly rates in effect from time to time as more fully set forth in the Application of the Debtors Pursuant to 11 U.S.C. § 327(e) to Retain and Employ Jackson Lewis LLP as Counsel for the Debtors *Nunc Pro Tunc* to January 14, 2009, plus reimbursement of actual, necessary expenses incurred by Jackson Lewis on the Debtors' behalf.

[9]  Plaintiffs originally disputed that the stay issued by the Canadian Court under the Companies' Creditors Arrangement Act (the "CCAA Stay") applied to the director and officer Defendants as well as to NNC and NNL. However, on August 18, 2009, Justice Morawetz of the Superior Court of Justice in Ontario held that the ERISA Litigation fell within the terms of the CCAA Stay, and that because the Nortel restructuring was "at a critical stage," permitting the ERISA Litigation to continue against the director and officer defendants would result in significant distraction and diversion of resources at an inconvenient time.  Accordingly, there is no dispute that the ERISA Litigation is currently stayed as to all Defendants.

12.     To the best of the Debtors' knowledge, there are no other claims besides those arising out of the pending ERISA Litigation that are covered by the Chubb Policy.  In addition, the Debtors, in consultation with their advisors, have concluded that it is unlikely that any claims besides those arising out of the ERISA Litigation would be claimed against the Chubb Policy in the future because the time period for doing so has long since expired.

13.     Prior to the Petition Date, and as a result of a previous settlement and exhaustion of a related insurance policy, "Nortel" (which term was not further defined) and Chubb agreed to split litigation defense costs and fees relating to the ERISA Litigation on an equal basis, and to split any settlement amount pertaining to the ERISA Litigation on a 30/70 basis, with Nortel paying 30% and Chubb paying 70%.

14.     On April 9, 2009, this Court entered an order authorizing Chubb to compensate various vendors, including but not limited to Jackson Lewis, and to reimburse litigation defense costs and fees incurred by Nortel or other Insureds under the Chubb Policy in connection with the ERISA Litigation, including amounts incurred both pre- and post-petition, and amending the automatic stay to the extent necessary to allow such payments to be made [D.I. 587].

15.     On September 30, 2009, Chubb filed a proof of claim against NNI, which is listed on the Debtors' claim registry as Claim No. 5043 (the "Chubb Proof of Claim").  In its proof of claim, Chubb seeks (1) amounts NNI is allegedly obliged to pay to Chubb pursuant to a settlement agreement between Chubb and NNC; (2) 50% of costs related to the defense of the ERISA Litigation; and (3) 30% of any settlement of the ERISA Litigation.  Chubb has also filed proofs of claim against NNC and NNL in the Canadian Proceedings, which, among other claims, assert claims similar to those asserted in the Chubb Proof of Claim filed against NNI.

**B.      The Proposed Settlement**

16.     As a result of extensive negotiations, the Debtors have determined that it is in

their best interest to settle the ERISA Litigation for an amount covered by the Chubb Policy.

The Plaintiffs and Defendants have proposed to settle all claims and counterclaims asserted in

the ERISA Litigation pursuant to the Stipulation of Settlement, which includes the following

substantive components:[10]

- <u>Settlement Consideration</u>.  On behalf of the Settling Defendants, Chubb shall pay $21,500,000 in cash into an escrow account using the proceeds of the Chubb Policy to be administered as set forth in the Stipulation of Settlement.

- <u>District Court Approval</u>.  After the Bankruptcy Court Orders approving the Stipulation of Settlement have been entered, the Settling Defendants shall support the Plaintiffs' motion before the District Court for preliminary approval of the Stipulation of Settlement and for an order establishing class notice procedures and a date for a hearing for final approval of the Stipulation of Settlement.

- <u>Releases</u>. Upon the Effective Date, (i) the ERISA Litigation shall be dismissed with prejudice; (ii) each member of the Settlement Class on behalf of themselves, their personal representatives, heirs, executors, successors and assigns shall release the Settling Defendants, the Released Defendants, Chubb and all Plan fiduciaries from all Released Claims; and (iii) each Settling Defendant/Counter-Plaintiff shall release each member of the Settlement Class (including their past and present trustees, attorneys, predecessors, and successors) from all Released Claims.

- <u>ERISA Proof of Claim</u>.  Lead Counsel for the Plaintiffs shall withdraw the ERISA Proof of Claim filed in the U.S. Bankruptcy Case upon the District Court order granting final approval of the Stipulation of Settlement becoming Final.

- <u>Director and Officer Proofs of Claim</u>.  The director and officer Defendants shall withdraw with prejudice their proofs of claim for indemnification filed in the U.S. Bankruptcy Case and shall be forever barred from submitting future proofs of claim in the U.S. Bankruptcy Case in connection with the ERISA Litigation upon the District Court order granting final approval of the Stipulation of Settlement becoming Final.

---

[10]   This overview is merely intended to provide a general summary of the Stipulation of Settlement.  To the extent that it conflicts with the Stipulation of Settlement, the Stipulation of Settlement shall control.  Defined terms not otherwise defined herein shall have the meaning ascribed to them in the Stipulation of Settlement.

17.     To facilitate the settlement contemplated in the Stipulation of Settlement and as a result of extensive parallel discussions between Nortel and Chubb, the Debtors have determined that it is in their best interest to resolve the Chubb Proof of Claim by allowing Chubb's claim against NNI in the general unsecured amount of $3,383,554.13.  This amount represents approximately 25% of the costs related to the defense of the ERISA Litigation and 15% of the settlement amount in the proposed Stipulation of Settlement.  This agreement is memorialized in the Chubb Stipulation.

## Basis for Relief

**A.     Approval of the Stipulation of Settlement and the Chubb Stipulation**

18.     The Debtors seek an order pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 approving the Stipulation of Settlement and the Chubb Stipulation.

**(i)     Standards for Approval**

19.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §105(a).  This is consistent with the broad equitable authority of the bankruptcy courts.  See, e.g., United States v. Energy Res. Co., 495 U.S. 545, 549 (1990).

20.     Bankruptcy Rule 9019 provides, in pertinent part, that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Citing this authority, the Third Circuit has emphasized that "'[c]ompromises are favored in bankruptcy.'"  Martin v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'(i)n administering

reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

21.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best possible compromise in order to approve it. Coram Healthcare Corp., 315 B.R. at 330.  Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785 (FLW), 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also Coram Healthcare Corp., 315 B.R. at 330.

22.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R.

10

798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283

F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

   **(ii)  Approval of the Stipulation of Settlement**

  23.  Applying the standards set forth above, including the Martin Factors, to the

instant matter, the Debtors submit that approval of the Stipulation of Settlement is in the best

interest of the Debtors' estates and their creditors.  The Stipulation of Settlement was reached

after thorough analysis of the legal issues by the Debtors' in-house, bankruptcy, and litigation

counsel and extensive negotiations between all parties concerned, and it falls well within the

range of reasonableness.

  24.  While the Debtors believe that they have strong defenses to the Plaintiffs' claims

in the ERISA Litigation, the issues are complex and would likely be the subject of costly and

protracted further litigation.  The Debtors have determined that settlement of the ERISA

Litigation on the terms set forth in the Stipulation of Settlement spares the Debtors' estates

considerable defense and potentially crippling liability costs, as pursuant to the Stipulation's

terms, the District Court's final order of approval shall provide for the dismissal with prejudice

of all claims and counterclaims asserted in the ERISA Litigation.  Further, the Stipulation of

Settlement provides that both the ERISA Proof of Claim and any proofs of claim filed in these

cases by current or former Nortel directors or officers based upon the ERISA Litigation shall be

withdrawn with prejudice.

  25.  Settlement of the ERISA Litigation on the terms set forth in the Stipulation of

Settlement does not adversely impact the estates because, under the Stipulation, the Settlement

Amount as defined therein will be funded solely by the proceeds of the Chubb Policy.  To the

best of the Debtors' knowledge, the Chubb Policy will not be subject to any additional claims.

Indeed, to the best of the Debtors' knowledge, the proceeds of the Chubb Policy may only be used to cover litigation expenses and any settlement costs or judgment associated with the ERISA Litigation. Thus, use of the Chubb Policy in this manner will not harm the Debtors' estates, since the Chubb Policy does not actually protect any of the estates' other assets.

26.     Finally, the interests of the Debtors' creditors strongly militate in favor of approval of the Stipulation of Settlement. The Debtors believe that their creditors would be benefited by the efficient and economical resolution of the ERISA Litigation, as the proposed settlement will considerably reduce the pool of unsecured claims against the Debtors' estates at virtually no cost to the Debtors. The Debtors consulted the Creditors' Committee with regard to the Stipulation of Settlement prior to its execution, and the Creditors' Committee expressed no objection to the proposed settlement.

27.     In light of the foregoing, the Debtors believe that the settlement set forth in the Stipulation of Settlement falls comfortably within the range of reasonableness and is in the best interests of the Debtors' estates and their creditors. Accordingly, it should be approved.

### (iii)     Approval of the Chubb Stipulation

28.     The Debtors also respectfully submit that the Martin Factors weigh in favor of approving the Chubb Stipulation and request that their entry into the Chubb Stipulation be authorized under Bankruptcy Rule 9019. The settlement reflected in the Chubb Stipulation reasonably resolves a claim against NNI's estate by eliminating portions of that claim that should only have been asserted against NNC's and/or NNL's bankruptcy estates in the Canadian Proceedings.

29.     Specifically, the Chubb Proof of Claim, as filed, seeks (1) amounts NNI is allegedly obliged to pay to Chubb pursuant to a settlement agreement between Chubb and NNC;

12

(2) 50% of costs related to the defense of the ERISA Litigation; and (3) 30% of any settlement of the ERISA Litigation.  With regard to (1), the Chubb Stipulation eliminates NNI's liability for amounts allegedly due to Chubb pursuant to a settlement agreement between Chubb and NNC, since NNI was not a party to that agreement.  With regard to (2) and (3), in recognition of the prepetition cost-sharing agreement between "Nortel," which term was not further defined, and Chubb, the Chubb Stipulation reduces NNI's liability as to costs related to the defense of the ERISA Litigation from 50% to 25% and as to any amount paid to settle the ERISA Litigation from 30% to 15%.  Accordingly, as further described therein, the Chubb Stipulation provides that Chubb's claim against NNI shall be allowed in the general unsecured amount of $3,383,554.13.

30.     The Debtors believe that the agreement reflected in the Chubb Stipulation is a reasonable reflection of NNI's liability to Chubb, and that no more favorable resolution of the Chubb Proof of Claim is likely to be secured should the Debtors proceed to litigate the Claim.  In addition, resolution of the Chubb Proof of Claim through the claims objection process would burden the estates with the delay and legal costs attendant to such proceedings, which would be disruptive of the estates' efforts to resolve the matters that are essential to the ultimate resolution of these cases.  Therefore, resolution of the Chubb Proof of Claim through the Chubb Stipulation is preferable to liquidation of the Chubb Proof of Claim through the claims objection process.

31.     Finally, the interests of the creditors militate in favor of approval of the Chubb Stipulation.  The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Chubb Proof of Claim and the avoidance of legal expenses that would be incurred if the Claim were to be litigated.  The Debtors consulted the Creditors' Committee

with regard to the Chubb Stipulation prior to filing this Motion, and the Creditors' Committee expressed no objection to the Chubb Stipulation.

32.    In light of the foregoing, the Debtors respectfully seek approval of the Chubb Stipulation.

**B.    Modifying the Automatic Stay**

33.    The automatic stay provision of section 362(a) of the Bankruptcy Code constitutes a fundamental debtor protection designed to allow debtors to make a smooth and orderly transition into bankruptcy.    See, e.g., Mar. Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991) ("The automatic stay . . . gives a bankrupt a breathing spell from creditors by stopping all collection efforts, all harassment, and all foreclosure actions.  The stay permits a bankrupt to attempt a repayment or reorganization plan") (citation omitted).  The scope of the automatic stay is broad, encompassing and temporarily enjoining, among other things, attempts to obtain property of the debtor's bankruptcy estate and prepetition judicial proceedings against the debtor.  See 11 U.S.C. § 362(a)(1), (3).

34.    Section 362(d)(1) of the Bankruptcy Code provides that after notice and a hearing, the court shall grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1). The Bankruptcy Code "does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." Wilson v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997) (citation omitted).  Where sufficient cause is found, the court grants relief from the automatic stay "by terminating, annulling, modifying or conditioning the stay."  11 U.S.C. § 362(d).

**(i)     Modifying the Automatic Stay to Allow Chubb to Pay the
            Settlement Amount**

35.     Under the terms of the Stipulation of Settlement, the Debtors are required to

secure all necessary approval from this Court in order for the settlement to become effective.

Accordingly, to the extent that the proceeds of the Chubb Policy constitute estate property,[11] the

Debtors seek an order modifying the automatic stay as necessary to permit Chubb to make

payments as set forth in the Stipulation of Settlement using the proceeds of the Chubb Policy.

36.     Generally, in Chapter 11 proceedings, courts have held that a debtor's liability

insurance *policies* are property of the bankruptcy estate.  See, e.g., Louisiana World Exposition,

Inc. v. Fed. Ins. Co. (In re Louisiana World Exposition, Inc.), 832 F.2d 1391, 1399 (5th Cir.

1987) (collecting cases).  Courts are divided as to the circumstances under which the *proceeds*

of a debtor's liability insurance policy constitute property of the estate.  In general, where a debtor's

insurance policy provides direct coverage to the debtor alone, the proceeds are considered

property of the estate.  Conversely, where the insurance policy only provides coverage to a

debtor's directors and officers, the proceeds are not considered property of the estate.  Id. at

1399-1400.  Where, as here, a liability insurance policy provides direct coverage to the debtor as

well as the debtor's directors and officers, "the general rule is that since the insurance proceeds

may be payable to the debtor they are property of the debtor's estate."  In re Allied Digital Techs.

Corp., 306 B.R. 505, 511 (Bankr. D. Del. 2004) (citing In re Sacred Heart Hosp. of Norristown,

182 B.R. 413, 419-20 (Bankr. E.D. Pa. 1995).  A court in this district has clarified, however, that

"when there is coverage for the directors and officers and the debtor, the proceeds will be

property of the estate if depletion of the proceeds would have an adverse effect on the estate to

---

[11]  The Debtors do not request that this Court make a definitive determination as to whether the proceeds of the
Chubb Policy are property of the Debtors' estates.  The rights of all parties in interest to assert that the proceeds of
the Chubb Policy are, or are not, property of the Debtors' estates are reserved.

the extent the policy actually protects the estate's other assets from diminution." Allied, 306

B.R. at 512; see also SN Liquidation, Inc. v. Icon Int'l, Inc. (In re SN Liquidation, Inc.), 388

B.R. 579, 586 (Bankr. D. Del. 2008) (Gross, J.) (adopting In re Allied analysis).

37.     Notably, even where insurance proceeds are considered property of the estate,

courts have modified the automatic stay to allow payments using the proceeds of insurance

policies where cause exists.  See, e.g., In re CyberMedica, Inc., 280 B.R. 12, 17-18 (Bankr. D.

Mass. 2002); Allied, 306 B.R. at 513 ("Even if the proceeds from the D & O Policy were

property of the bankruptcy estate, however, the automatic stay should be lifted.").  In addition,

this Court has already determined that to the extent necessary, the automatic stay should be

modified to allow Chubb to pay for defense costs arising from the ERISA Litigation using the

proceeds of the Chubb Policy.  See supra ¶ 14.

38.     Considering the totality of the circumstances, even if the proceeds of the Chubb

Policy constitute estate property, cause exists to modify the automatic stay to the extent

necessary to permit Chubb to pay the Settlement Amount as set forth in the Stipulation of

Settlement.  First, the Debtors have determined with reasonable certainty that it is unlikely that

any additional claims could be filed against the Chubb Policy or that the Chubb Policy could be

used for any other purpose than to pay costs arising out of the ERISA Litigation.  Therefore, use

of the Chubb Policy proceeds to pay the Settlement Amount would not have an adverse effect on

the Debtors' estates, since the Chubb Policy does not actually protect the estates' other assets

from diminution.  Second, the settlement described in the Stipulation of Settlement confers a net

benefit on NNI's estate specifically and on the Debtors' estates in general.  The economical

resolution of the ERISA Litigation benefits the Debtors and their creditors by reducing the pool

of unsecured claims against the Debtors' estates and increasing recovery for other unsecured

creditors, particularly as Plaintiffs have alleged damages in the billions of dollars, far in excess of the limits of the Chubb Policy. Further, the settlement reduces the Debtors' exposure to continued litigation, defense costs and fees because all claims asserted in the ERISA Litigation will be dismissed, and all indemnification claims made against NNI's bankruptcy estate in connection with the ERISA Litigation will be withdrawn.

39.     It is not uncommon for courts to grant relief from the automatic stay in order to allow payment of defense costs and settlement amounts. Allied, 306 B.R. at 513. In light of the foregoing, the Debtors request that the stay be lifted, to the extent necessary, to authorize Chubb to pay the Settlement Amount out of the proceeds of the Chubb Policy.

       **(ii)**    **Modifying the Automatic Stay to Allow the District Court to Approve the Stipulation of Settlement and to Conduct Related Proceedings and Issue Related Orders**

40.     It is well established that the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings pending against a debtor at the time the debtor files a bankruptcy petition. See, e.g., Mar. Elec., 959 F.2d at 1206. Therefore, the debtors seek an order modifying the automatic stay to permit the District Court to oversee the approval process of the Stipulation of Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23(e)"), including proceedings to determine whether preliminary and/or final approval of the Stipulation of Settlement should be granted, supervision of class notice procedures, and other related proceedings.

41.     In the context of a request for relief from the automatic stay to continue proceedings elsewhere, courts in this District generally consider three factors to determine whether "cause" to modify the stay exists: "(1) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (2) whether the

hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor, and (3) whether the creditor has a probability of prevailing on the merits." Tribune Media Servs., Inc. v. Warren Beatty (In re Tribune Co.), 418 B.R. 116, 126 (Bankr. D. Del. 2009) (citing Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 576 (Bankr. D. Del. 1992).  In addition, courts have identified a variety of other factors relevant to the analysis, including:  "(a) whether relief would result in a partial or complete resolution of the issues; (b) lack of any connection or interference with the bankruptcy case; (c) whether the other proceeding involves the debtor as a fiduciary; (d) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (e) whether the action primarily involves third parties; and (f) the interest in judicial economy and the expeditious and economic resolution of litigation."  In re Cooke, No. 07-10192(BLS), 2007 WL 2102687, at *1 (Bankr. D. Del. July 13, 2007).

42.     Further, the legislative history of section 362(d) discusses circumstances under which the automatic stay may be lifted to permit proceedings in another tribunal.  "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere."  H. R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6297, cited in In re The SCO Group, Inc., 395 B.R. 852, 856 (Bankr. D. Del. 2007).

43.     Application of the standards cited above to the circumstances present here warrants a finding that sufficient cause exists to modify the automatic stay.  Under the first prong of this District's three-factor test, no prejudice will result to the Debtors or their estates from permitting the District Court to oversee the Rule 23(e) class settlement procedures relating to the

Stipulation of Settlement.  Second, the hardship to both the Debtors and the Plaintiffs in the ERISA Litigation should this Court retain jurisdiction over the Rule 23(e) procedures is greater than if the District Court is permitted to oversee such procedures.  Both the Debtors and the Plaintiffs are represented by local counsel before the District Court, and both local counsel and the District Court are more familiar with the issues at stake in the ERISA Litigation than are the Debtors' bankruptcy counsel and this Court.  Therefore, requiring the Rule 23(e) settlement approval process to take place in this Court would burden the Plaintiffs, the Debtors, and this Court alike.  Finally, because, in this case, the Debtors seek an order modifying the automatic stay to permit the District Court to oversee approval of a settlement, whether Plaintiffs have a probability of prevailing on the merits of the ERISA Litigation is irrelevant to the cause analysis.

44.    Other relevant factors similarly militate in favor of modifying the automatic stay. The District Court's final approval of the Stipulation of Settlement would result in complete resolution of the issues involved in the ERISA Litigation, as the action itself would be dismissed and any related proofs of claim filed in these cases would be withdrawn.  Further, NNI is the only Debtor party to the ERISA Litigation, which also involves non-Debtor parties such as Plaintiffs, the director and officer Defendants, and certain Canadian Debtors.  Permitting Rule 23(e) settlement approval to proceed in the District Court would not interfere with these cases, and in fact would preserve judicial economy and encourage expeditious resolution of the ERISA Litigation.

45.    In light of the foregoing, and because no prejudice to the Debtors' estates would result, the Debtors request an Order authorizing the District Court to oversee the Rule 23(e) approval process with regard to the Stipulation of Settlement.

### <u>Notice</u>

46.     Notice of the Motion has been given via first class mail, facsimile, electronic transmission, hand delivery or overnight mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) Lead Counsel to Plaintiffs; (v) counsel to Frank A. Dunn; (vi) counsel to Mary Cross; and (vii) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

### <u>No Prior Request</u>

47.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto as **Exhibit A**; and (iii) grant such other and further relief as it deems just and proper.

Dated:  September 1, 2011
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*