**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE NORTEL NETWORKS CORP. "ERISA" LITIGATION | ) ) ) ) ) ) ) ) ) | **MDL Docket No. 3:03-MD-1537**<br><br>Judge John T. Nixon<br>Magistrate Judge John S. Bryant<br><br>This Document Relates to:<br>All Cases |

### STIPULATION OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation") is made and entered into pursuant to Rule 23 of the Federal Rules of Civil Procedure and contains the terms of settlement of all claims and counterclaims by and among the parties to *In re Nortel Networks Corp. "ERISA" Litigation*, MDL Docket No. 3:03-MD-1357 (the "Nortel ERISA Action").

This Stipulation is entered into among Named Plaintiffs James Kauffman, Michael Zafarano, and Carol Felts (hereinafter "Named Plaintiffs") on behalf of themselves and the Class (as defined herein), and Defendants Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL") and Nortel Networks Inc. ("NNI" and together with NNC and NNL, "Nortel"), and James J. Blanchard, John Edward Cleghorn, L. Yves Fortier, Robert Alexander Ingram, John Andrew Roth, Guylaine Saucier, Sherwood Hubbard Smith, Jr., Lynton Ronald Wilson, Dr. Manfred Bischoff, Robert Ellis Brown, John P. Manley, Richard David McCormick, William Arthur Owens, Harry Jonathan Pearce, Katharine B. Stevenson, Nicholas DeRoma, William J. Donovan, and John M. Doolittle, Mary Cross and Frank A. Dunn (hereinafter "Defendants").

It is a condition to the Settlement (as defined herein) that the Settlement of the Nortel ERISA Action be (i) approved by the United States District Court of the Middle District of Tennessee (the "Court"); (ii) approved by the United States Bankruptcy Court for the District of

Case 09-10138-MFW    Doc 6288-3    Filed 09/01/11    Page 3 of 44

*In Re Nortel Networks Corp. "Erisa" Litigation* –
Stipulation of Settlement
Page 2

Delaware (the "Bankruptcy Court") administering *In re Nortel Networks Inc., et al.,* Case No. 09-10138 (KG) (the "U.S. Bankruptcy Case"), and (iii) approved by the Ontario Superior Court of Justice administering *IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, et al.* No. 09-CL-7950 (the "Canadian Insolvency Case").

**WHEREAS:**

A.    Beginning in 2001, class actions were filed in the United States District Court for the Middle District of Tennessee and in the Southern District of New York alleging ERISA claims against Defendants.  On June 25, 2003, the Judicial Panel on Multidistrict Litigation ordered the transfer of the Nortel ERISA Action to the Middle District of Tennessee to this Court for coordinated or consolidated pre-trial proceedings.  On October 15, 2003, Judge Nixon appointed James Kauffman, Michael Zafarano and Carol Felts as Named Plaintiffs to prosecute the actions on behalf of participants in the Plans during the putative class period and appointed Jane B. Stranch of Branstetter, Stranch & Jennings, PLLC and Todd S. Collins of Berger & Montague, P.C. as Co-Lead Counsel.  The actions filed in the Court were consolidated under the caption *In re Nortel Networks Corp. "ERISA" Litigation*, MDL Docket No. 3:03-MD-1357.

B.    Named Plaintiffs filed their initial consolidated class action complaint on September 12, 2003, filed an amended consolidated class action complaint on June 15, 2004 and filed the operative Second Amended Class Action Complaint on June 17, 2005 (the "Complaint").  The Complaint was filed on behalf of all participants and beneficiaries of the Long -Term Investment Plan (the "Plan"), a 401(k) plan sponsored by Nortel Networks, Inc. who held shares of the Nortel Networks Stock Fund during the period from March 7, 2000 through January 1, 2008.  The case alleged breach of fiduciary duties, including prudence and loyalty, in

Case 09-10138-MFW   Doc 6288-3   Filed 09/01/11   Page 4 of 44

*In Re Nortel Networks Corp. "Erisa" Litigation* –
Stipulation of Settlement
Page 3

violation of the Employee Retirement Income Security Act (ERISA) as well as violations of fiduciary duties under common law.

C.     The primary group of Defendants filed an initial motion to dismiss in 2003. During its pendency, limited discovery was undertaken. Prior to decision on that motion and following the filing of subsequent complaints, the operative Motion to Dismiss the Complaint was filed on July 8, 2005, in which other individual Defendants subsequently joined. By June of 2005, substantial discovery had been undertaken, requiring the production and review of many millions of documents from the Nortel securities litigations.  On October 11, 2006, the Motions to Dismiss were denied in large part, and on April 30, 2007, the Defendants answered the Complaint and filed a counter-claim.

D.     Discovery was then fully undertaken, including extensive written and deposition discovery regarding both fact and expert information.  The parties also engaged in significant motion practice regarding discovery throughout this litigation.

E.     On January 14, 2009, NNI filed for protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.  NNL and NNC filed a comparable case under Canadian law in the Ontario Superior Court of Justice.  On September 25, 2009, the Nortel ERISA Action was stayed pending the outcome of the bankruptcy proceedings.

F.     The parties initiated formal settlement discussions.   The Honorable Daniel Weinstein, a former Superior Court Judge of San Francisco, California, was employed to provide mediation services regarding settlement. The negotiations occurred over a lengthy period of time and included a number of formal sessions interspersed with ongoing informal discussions.  The

Case 09-10138-MFW    Doc 6288-3    Filed 09/01/11    Page 5 of 44

*In Re Nortel Networks Corp. "Erisa" Litigation –*
Stipulation of Settlement
Page 4

mediator oversaw the procedure and played a significant role in establishing the consideration Defendants have agreed to pay in Settlement.

G.     Defendants in the Nortel ERISA Action deny any wrongdoing whatsoever, and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Defendant with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have asserted or would assert.

H.     The parties to this Stipulation recognize that the Nortel ERISA Action has been filed by the Named Plaintiffs and defended by the Defendants in good faith, that the Nortel ERISA Action is being voluntarily settled upon advice of counsel, and that the terms of the Settlement are fair, reasonable and adequate. This Stipulation shall not be construed or deemed to be a concession by Named Plaintiffs or any Class Member of any infirmity in the claims asserted in the Nortel ERISA Action or any other action.

I.     Lead Counsel have conducted investigations relating to the claims and the underlying events and transactions alleged in the Nortel ERISA Action. Lead Counsel have analyzed the evidence adduced during pretrial discovery and have researched the applicable law with respect to the claims of the Named Plaintiffs and the Class against the Defendants and the potential defenses thereto. Lead Counsel have also researched the applicable Canadian and American law related to the bankruptcy filings, participated in both cases, and have evaluated the impact of such filings on this litigation.

J.     The parties recognize that the claims asserted in the Nortel ERISA Action, if proven by the plaintiffs in those actions, could have exposed Defendants to substantial damages awards. The parties also recognize the impact of the bankruptcy filings on the prosecution of the

litigation and the viability of collecting any judgment. Accordingly, the parties considered that a resolution of the Nortel ERISA Action was advisable from the point of view of all parties.

K.   With the assistance of the Honorable Daniel Weinstein, Named Plaintiffs in the Nortel ERISA Action, by their counsel, have conducted good faith discussions and arm's-length negotiations with defendants' counsel with respect to a compromise and settlement of the Nortel ERISA Action and with a view to settling the issues in dispute and achieving the best relief possible under the circumstances consistent with the interests of the class in the Nortel ERISA Action.

L.   Based upon their investigation and pretrial discovery as set forth above, Named Plaintiffs and their counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Named Plaintiffs and the Class, and are in their best interests, and Named Plaintiffs have agreed to settle the claims raised in the Nortel ERISA Action pursuant to the terms and provisions of this Stipulation, after considering (a) the substantial benefits that the members of the Class will receive from settlement of the Nortel ERISA Action, (b) the uncertain outcome and attendant risks of litigation, (c) the delays inherent in litigation and particularly those in this litigation related to bankruptcy and government proceedings, (d) the desirability of permitting the Settlement of this almost decade long litigation to be consummated as provided by the terms of this Stipulation, and (e) the risk that sources would not be available to fund any potential judgment in the litigation as a result of the U. S. Bankruptcy case, the Canadian insolvency case filed by Nortel and the other governmental proceedings.

## TERMS OF STIPULATION OF SETTLEMENT

**NOW THEREFORE**, without any admission or concession on the part of Named Plaintiffs of any lack of merit of the Nortel ERISA Action whatsoever, and without any

Case 09-10138-MFW   Doc 6288-3   Filed 09/01/11   Page 7 of 44

*In Re Nortel Networks Corp. "Erisa" Litigation –*
Stipulation of Settlement
Page 6

admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by Defendants, it is hereby STIPULATED AND AGREED, by and between the parties to this Stipulation, through their respective counsel, subject to approval of the Bankruptcy Court, the Ontario Superior Court of Justice, and the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and other rules applicable in each jurisdiction, in consideration of the benefits flowing to the parties hereto from the Settlement herein set forth, that all settled claims, as against the Released Parties (as defined herein), and all Settling Defendants' (as defined herein) claims shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

## 1.      DEFINITIONS

As used in this Stipulation, the following terms shall have the following meanings:

1.1     "Administrative Expenses" means the expenses incurred in the administration of this settlement, including, without limitation, all expenses or costs associated with providing notice to the Class, locating Class Members, determining the eligibility of any person to be a Class Member or Authorized Claimant, obtaining information regarding the Plan account of each Class Member, and administering, calculating and distributing the Net Settlement Fund to Authorized Claimants. Administrative Expenses also include all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Stipulation.

1.2     "Authorized Claimant" means any Class Member entitled to recovery pursuant to the terms of the Stipulation and the Plan of Allocation.

Case 09-10138-MFW    Doc 6288-3    Filed 09/01/11    Page 8 of 44

*In Re Nortel Networks Corp. "Erisa" Litigation –*
Stipulation of Settlement
Page 7

1.3    "Bankruptcy Cases" means the Chapter 11 bankruptcy filing of Nortel in the United States Bankruptcy Court for the District Delaware and the Canadian Insolvency Proceeding filed in the Ontario Superior Court of Justice;

1.4    "Bankruptcy Court Orders" means any Judgment or Order entered regarding this case approving this Stipulation in the U.S. Bankruptcy Case or the Canadian Insolvency Case.

1.5    "Chubb Stipulation" means the document titled "Stipulation Among NNC, NNL, NNI and Chubb Insurance Company of Canada," attached hereto as Exhibit A.

1.6    "Settlement Class" means, for the purposes of this Settlement only, a non-opt-out class consisting of all persons who were participants and beneficiaries in the Nortel Long-Term Investment Plan (the "Plan") who held Nortel stock in their 401(k) individual accounts at any time from March 7, 2000 through January 1, 2008; *provided*, however, that the Class shall not include (i) the Settling Defendants; (ii) members of the immediate families of each of the Settling Defendants; and (iii) the legal representatives, heirs, predecessors, successors, or assigns of any such excluded person or entity.

1.7    "Class Member" means a member of the Class defined in Section 1.6.

1.8    "Class Period" means, for the purposes of this Settlement only, the period of time from March 7, 2000 through January 1, 2008.

1.9    "Co-Lead Counsel" means James G. Stranch, III of Branstetter, Stranch & Jennings, PLLC (to replace Jane B. Stranch, who is no longer in practice, or such other counsel as may be appointed by the Court), and Todd S. Collins of Berger & Montague, P.C.

1.10    "Court" means the United States District Court for the Middle District of Tennessee.

1.11    "Dismissed Defendants" means William Kerr, David L. Burn, Oswald D'Mello, Mary Anne Pahapill, and Tracey Vickruck.

1.12    "Effective Date" means the date upon which the Settlement contemplated by this Stipulation shall become effective as set forth in ¶ 9 hereof.

1.13    "Escrow Agent" means a federally-insured financial institution proposed by Lead Counsel and acceptable to counsel for Settling Defendants and the Underwriter.

1.14    "Fairness Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy and reasonableness of the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure and whether to issue the Final Settlement Approval Order.

1.15    "Final" or "Finality," with respect to the Final Settlement Approval Order and/or the Bankruptcy Court Orders, means: (1) if no appeal is filed, the expiration date of the time provided for under the corresponding rules of the applicable court or legislation for filing or noticing of any appeal from the Order; or (2) if there is an appeal from the Order, the date of (a) final dismissal of any appeal from the Order, or (b) the date of final affirmance on an appeal of the Order, the expiration of the time to file a petition for a writ of certiorari or other form of review of the denial of a writ of certiorari or other form of review of the Order, and, if certiorari or other form of review is granted, the date of final affirmance of the Order following review pursuant to that grant.

Any proceeding or order, or any appeal or petition for a writ of certiorari or other form of review pertaining solely to (i) any application for attorneys' fees, costs or expenses, and/or (ii) the Plan of Allocation, shall not in any way delay or preclude the Order from becoming Final.

1.16    "Final Settlement Approval Order" means an Order by the United States District Court for the Middle District of Tennessee finally approving the terms of this Stipulation

Case 09-10138-MFW    Doc 6288-3    Filed 09/01/11    Page 10 of 44

*In Re Nortel Networks Corp. "Erisa" Litigation –*
Stipulation of Settlement
Page 9

pursuant to Federal Rules of Civil Procedure 23, substantially in the form attached hereto as Exhibit B.

1.17    "Gross Settlement Fund" means (1) the amount of the Insurance Payment; and, (2) any interest on or other income or gains earned while such amount is held by the Escrow Agent.

1.18    "Individual Claim Amount" means the portion of the Net Settlement Fund that the Settlement Administrator determines, pursuant to the terms of this Stipulation and the Plan of Allocation, shall be allocated to each Class Member.

1.19    "Insurance Payment" means Twenty One Million, Five Hundred Thousand United States Dollars ($21,500,000) that Settling Defendants shall cause the Underwriter to pay into the escrow account pursuant to the terms of this Stipulation and the Chubb Stipulation.

1.20    "Lead Counsel" for purposes of this Settlement only shall mean the firms of Branstetter, Stranch & Jennings, PLLC, Berger & Montague, P.C. and Keller Rohrback, LLP.

1.21    "Named Plaintiffs" means James Kauffman, Michael Zafarano and Carol Felts.

1.22    "Named Plaintiffs' Case Contribution Compensation" means compensation approved by the Court in an amount not to exceed Ten Thousand United States Dollars ($10,000.00) which shall be paid from the Settlement Fund to each Named Plaintiff pursuant to Section 8.2(b) in recognition of his or her contributions to the litigation and for reimbursement of his or her expenses, if approved by the Court.    It shall also include compensation approved by the Court and paid from the Settlement Fund to Named Plaintiff Carol Felts as provided in Section 6.4 hereof.

1.23    "Net Settlement Fund" has the meaning defined in Section 2.5 hereof.

1.24    "Nortel's Counsel" means Jackson Lewis, LLP.

1.25    "Nortel ERISA Action" means *In re Nortel Networks Corp. "ERISA" Litigation, MDL Docket No. 3:03-MD-1357* in the United States District Court for the Middle District of Tennessee.

1.26    "Notice" means the Notice of Proposed Settlement which is to be sent to members of the Class substantially in the form attached hereto as Exhibit C-1.

1.27    "Plaintiffs' Counsel" means Lead Counsel and any other counsel representing the Class.

1.28    "Plan" means the Nortel Long-Term Investment Plan and any successor plan thereof.

1.29    "Plan of Allocation" means the plan or formula of allocation of the Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants. While the Plan of Allocation is incorporated in ¶ 8 of this Stipulation, alteration of the Plan of Allocation by the Court shall not provide any party with the right to terminate this Stipulation. The Settling Defendants and the Plan shall have no responsibility for and no liability with respect to the Plan of Allocation or any distributions made pursuant thereto. Provided that the Settlement Administrator follows the Plan of Allocation and the Plan complies with its obligations under Section 8.8(a) hereof, there shall be no claims under ERISA § 502(a)(1)(B) related in any way to the Plan of Allocation or any distributions made pursuant thereto against any of the Released Parties.

1.30    "Preliminary Settlement Approval Order" means an order by the Court preliminarily approving this Stipulation, including the forms and procedure for providing notice

to the Class, conditionally certifying the Named Plaintiffs as the representatives of the Class and Lead Counsel as counsel to the Class, establishing a procedure for members of the Class to follow in order to object to the Settlement set forth in this Stipulation, and setting a date for a hearing for final Settlement approval substantially in the form attached as Exhibit C.

1.31    "Publication Notice" means the summary notice of proposed Settlement and hearing for publication substantially in the form attached as Exhibit C-2.

1.32    "Released Claims" shall mean all claims, counterclaims, rights, causes of action, or liabilities of every nature and description, whether known or Unknown (as defined herein), whether arising under federal, state, common or foreign law, that were or could have been asserted in the Nortel ERISA Litigation, or that would be barred by *res judicata* or *collateral estoppel* if the claims asserted in the Nortel ERISA Litigation had been fully litigated on the merits to a final judgment in favor of the party against whom such claims were brought.

"Released Claims" does not include (i) all claims, rights or causes of action or liabilities whatsoever related to the enforcement of the Settlement, including, without limitation, any of the terms of this Stipulation or orders or judgments issued by the courts in connection with the Settlement; (ii) any ERISA Section 502(a)(1)(B) claim for individual vested benefits brought by an individual Plan participant or beneficiary where such claims are unrelated to any claim, matter or cause of action that has been asserted in the Nortel ERISA Action or that could have been asserted in the Nortel ERISA Action arising out of, based upon, or in any way relating to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Nortel ERISA Action; or (iii) any all claims, rights or causes of action or liabilities expressly retained pursuant to the Chubb Stipulation.

Case 09-10138-MFW    Doc 6288-3    Filed 09/01/11    Page 13 of 44

*In Re Nortel Networks Corp. "Erisa" Litigation* –
Stipulation of Settlement
Page 12

1.33    "Released Defendants" means all Settling Defendants listed in Paragraph 1.35 below, Douglas Beatty and Michael Gollogly.

1.34    "Released Parties" means all Settling Defendants listed in Paragraph 1.35 below, Douglas Beatty, Michael Gollogly, the Underwriter, Named Plaintiffs James Kauffman, Michael Zafarano and Carol Felts, and all members of the Class. Released Parties shall include for those persons and entities listed their current and former subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees, fiduciaries, attorneys, advisors, auditors, investment advisors, investment bankers, underwriters, insurers, co-insurers, re-insurers, consultants, administrators, estates, executors, trustees, personal representatives, all Plan fiduciaries or alleged Plan fiduciaries, unions, and union representatives.

1.35    "Settling Defendants" means NNC, NNL, and NNI, and James J. Blanchard, John Edward Cleghorn, L. Yves Fortier, Robert Alexander Ingram, John Andrew Roth, Guylaine Saucier, Sherwood Hubbard Smith, Jr., Lynton Ronald Wilson, Dr. Manfred Bischoff, Robert Ellis Brown, John P. Manley, Richard David McCormick, William Arthur Owens, Harry Jonathan Pearce, Katharine B. Stevenson, Nicholas DeRoma, William J. Donovan, John M. Doolittle, Mary Cross, and Frank A. Dunn.

1.36    "Settlement" means the settlement of the Nortel ERISA Action contemplated by this Stipulation.

1.37    "Settlement Administrator" means Heffler, Radetich & Saitta, LLP, engaged by Lead Counsel and appointed by the Court to perform duties including but not limited to provision of notice to the Class, calculation of Individual Claim Amounts, implementation of

the Plan of Allocation as provided for herein, and preparation of or provision of information for tax-related documents.

    1.38    "Settlement Amount" means the Insurance Payment.

    1.39    "Stipulation" means this Stipulation and Agreement of Settlement.

    1.40    "Taxes" means (i) any and all applicable taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any (A) with respect to the income or gains earned by or in respect of the Gross Settlement Fund, including, without limitation, any taxes that may be imposed upon Settling Defendants or their counsel with respect to any income or gains earned by or in respect of the Gross Settlement Fund for any period while it is held by the Escrow Agent during which the Gross Settlement Fund does not qualify as a Qualified Settlement Fund for federal or state income tax purposes; or (B) by way of withholding as required by applicable law on any distribution by the Escrow Agent or the Settlement Administrator of any portion of the Gross Settlement Fund to Authorized Claimants and other persons entitled hereto pursuant to this Stipulation; and (ii) any and all expenses, liabilities and costs incurred in connection with the taxation of the Gross Settlement Fund (including without limitation, expenses of tax attorneys and accountants). For the purposes of (A) in this paragraph "1.40" taxes imposed on Settling Defendants shall include amounts equivalent to taxes that would be payable by Settling Defendants but for the existence of relief from taxes by virtue of loss carryforwards or other tax attributes, determined by Settling Defendants, acting reasonably, and accepted by the Escrow Agent, acting reasonably.

    1.41    "Underwriter" means Chubb Insurance Company of Canada.

1.42    "Unknown Claims" means any and all Released Claims which any of the Named Plaintiffs, Class Members or Settling Defendants does not know or suspect to exist in his, her or its favor as of the Effective Date and which, if known by him, her or it, might have affected his, her or its decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the parties stipulate and agree that upon the Effective Date, the Named Plaintiffs and the Settling Defendants shall expressly waive, and each Class Member shall be deemed to have waived, and by operation of the Judgments shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Named Plaintiffs and Settling Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement.

## 2.    THE SETTLEMENT

### a.    Scope and Effect of Settlement

2.1    The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Nortel ERISA Action as a part of the Settlement.

### b.    Settlement Consideration

2.2    In consideration for the release and discharge provided herein, the Settling Defendants shall cause the Underwriter to pay the Settlement Amount into the escrow account on behalf of the Settling Defendants, pursuant to the Chubb Stipulation.

2.3     The Settlement Amount shall be paid by the Underwriter as follows:

a.      On the later of the date that is either ten (10) business days after entry of the Bankruptcy Court Orders approving the Settlement, or ten (10) business days after entry of the Court's order preliminarily approving the Settlement, the sum of two hundred fifty thousand dollars ($250,000) shall be deposited into the escrow account; and

b.      On the later of (a) the date on which oppositions to the motion for final approval of the Settlement are due to be filed or (b) the date on which the Bankruptcy Court Orders become Final, the balance of the Settlement Amount shall be deposited into the escrow account.

2.4     In the event the Stipulation does not receive Final approval from the Court, the Bankruptcy Court and the Ontario Superior Court of Justice as specified herein, or does not become Final for some other reason, all of the funds in the Escrow Account not previously spent or committed pursuant to Section 8.2, shall be returned to the Underwriter, including interest earned thereon.

**c.  Settlement Fund Investments and Taxes**

2.5     The Gross Settlement Fund shall be used to pay (i) the Notice, Publication Notice, and Administrative Costs referred to in Section 8.2.a hereof; and (ii) the attorneys' fee and expense award and the Named Plaintiffs' Case Contribution Compensation referred to in Section 8.2.b hereof. The balance of the Gross Settlement Fund (inclusive of interest earned) after the matters described in clauses (i) and (ii) of this paragraph and after the payment of any Taxes (as defined herein), shall be the Net Settlement Fund. At a time following the Effective Date and the expiration of the 45-day period following the Settlement Administrator's dispatch of Calculation Notices to Authorized Claimants as provided for in Section 8.7(b) hereof, the Net

Case 09-10138-MFW   Doc 6288-3   Filed 09/01/11   Page 17 of 44

*In Re Nortel Networks Corp. "Erisa" Litigation –*
Stipulation of Settlement
Page 16

Settlement Fund shall be transferred by the Escrow Agent to the Plan, subject to the Plan of Allocation proposed by Lead Counsel and approved by the Court. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court until such time as the funds shall be distributed to the Plan or otherwise disbursed pursuant to this Stipulation and/or further order of the Court. No distributions shall be made from the Net Settlement Fund except in compliance with the provisions of Section 8 hereof.

2.6     The Escrow Agent shall invest any funds in excess of U.S. $250,000 in short term United States Agency or Treasury Securities, repurchase agreements collateralized by such instruments, or a mutual fund invested solely in such instruments, and shall collect and reinvest all earnings accrued thereon. Any funds held in escrow in an amount of less than U.S. $250,000 may be held in a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") or may be invested as funds in excess of U.S. $250,000 are invested.

2.7     The parties hereto agree that the Gross Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1, and that the Escrow Agent as administrator of the Gross Cash Settlement Fund within the meaning of Treasury Regulation § I.468B-2(k)(3), shall be responsible, with the assistance of the Settlement Administrator, for filing tax returns and any other tax reporting for or in respect of the Gross Settlement Fund and paying from the Gross Settlement Fund any Taxes owed with respect to the Gross Settlement Fund. The parties hereto agree that the Gross Settlement Fund shall be treated as a Qualified Settlement Fund from the earliest date possible, and agree to any relation-back election required to treat the Gross Settlement Fund as a Qualified Settlement Fund from the earliest date possible. Nortel agrees to provide promptly to the Escrow Agent the statement described in Treasury Regulation § I.468B-3(e).

2.8     All Taxes (as defined herein) shall be paid out of the Gross Settlement Fund, shall be considered to be a cost of administration of the Settlement and shall be timely paid by the Escrow Agent without prior Order of the Court.   The Gross Settlement Fund or the Escrow Agent shall, to the extent required by law, be obligated to withhold from any distributions to Authorized Claimants and other persons entitled thereto pursuant to this Stipulation any funds necessary to pay Taxes including the establishment of adequate reserves for Taxes as well as any amount that may be required to be withheld under Treasury Reg. 1.468B-(1)(2) or otherwise under applicable law in respect of such distributions.   Further, the Gross Settlement Fund shall indemnify and hold harmless the Defendants and their counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments).

2.9     Released Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Named Plaintiff, Class Member or Authorized Claimant of any payment or transfer made pursuant to this Stipulation or derived from or made pursuant to the Settlement Fund.

2.10     Each Authorized Claimant and Named Plaintiff shall be solely responsible for the federal, state and local tax consequences to him, her or it of the crediting of an allocable share of the Net Settlement Fund to his, her or its Plan Account pursuant to this Stipulation and, if applicable, the Named Plaintiffs' Case Contribution Compensation. Unless advised to the contrary by its counsel, the Settlement Administrator shall take the position for federal, state and local tax purposes that the amounts so credited to a Plan Account are not reportable as income to the Authorized Claimants or Class Members until distributed pursuant to the Plan, but no Released Party or Plaintiffs' Counsel shall have any liability to any Authorized Claimant, Class

Member or other person if a taxing authority determines that the Plan Administrator's position is incorrect.

2.11    The Defendants, the Released Parties (including but not limited to the Underwriter), the Plan and their respective counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Lead Counsel, the Escrow Agent or the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Gross Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation or payment of any claims asserted against the Gross Settlement Fund; (v) any losses suffered by, or fluctuations in the value of, the Gross Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Gross Settlement Fund or the filing of any returns.

3.    **SETTLEMENT ADMINISTRATION**

a. **Settlement Administrator and Plan of Allocation**

3.1    Lead Counsel propose Heffler, Radetich & Saitta, LLP to be the Settlement Administrator to be appointed by the Court and propose a Plan of Allocation in Section 8 herein.  Settling Defendants and the Underwriter will have no involvement in the selection of the Settlement Administrator or the formulation of the Plan of Allocation.

3.2    The Settlement Administrator shall be responsible for performing all calculations necessary for the implementation of the Plan of Allocation, and the expenses for and of the Settlement Administrator shall be paid from the Gross Settlement Fund.

3.3    One half of the costs associated with cutting and mailing checks to Class Members pursuant to the Plan of Allocation will be paid out of the Gross Settlement Fund, and

one half shall be paid by the Underwriter. The Underwriter's payment of its share of such costs shall be made on the date the payment from the Gross Settlement Fund is made, provided that the Underwriter is given written notice of such date ten (10) business days in advance of such date. Except as otherwise specified herein, the parties agree that the Underwriter and the Settling Defendants shall not be requested or required to pay any portion of any fees and costs relating to the Settlement Administrator or the formulation of or implementation of the Plan of Allocation except to the extent such fees and costs are paid from the Gross Settlement Fund.

**b.  The Escrow Agent**

3.4     The Escrow Agent, acting solely in its capacity as escrow agent, shall be subject to the jurisdiction of the Court.

3.5     Lead Counsel may pay from the Gross Settlement Fund deposited in the escrow account the actual reasonable costs of notice to Class Members and settlement administration without further order of the Court.  If the actual reasonable costs of notice to Class Members and such settlement administration exceed $250,000, Lead Counsel will have the right to seek permission from the Court (with notice to Settling Defendants and Underwriter) to pay any excess from the Settlement Amount, and if such permission is granted, the Settling Defendants shall cause the Underwriter, pursuant to the Chubb Stipulation, to promptly deposit in the escrow account such additional portion of the Settlement Amount as may be necessary to fund the excess as permitted by the Court.  In the event that the Settlement does not become finally effective, money paid or incurred for Administrative Expenses shall not be returned or repaid to the Settling Defendants or Underwriter.

3.6     The Escrow Agent may rely upon any notice, certificate, instrument, request, paper or other document reasonably believed by it to be genuine and to have been made,

Case 09-10138-MFW   Doc 6288-3   Filed 09/01/11   Page 21 of 44

*In Re Nortel Networks Corp. "Erisa" Litigation* –
Stipulation of Settlement
Page 20

sent or signed by an authorized signatory in accordance with this Stipulation, and shall not be

liable for (and will be indemnified from the Gross Settlement Fund and held harmless from and

against) any and all claims, actions, damages, costs (including reasonable attorneys' fees) and

expenses claimed against or incurred by the Escrow Agent for any action taken or omitted by it,

consistent with the terms hereof and those of any escrow agreement concerning the Gross

Settlement Fund, in connection with the performance by it of its duties pursuant to the provisions

of this Stipulation or order of the courts, except for its gross negligence or willful misconduct.  If

the Escrow Agent is uncertain as to its duties hereunder, the Escrow Agent may request that

Named Plaintiffs (and, prior to the Effective Date, Nortel) sign a document which states the

action or non-action to be taken by the Escrow Agent.  In the event the Settlement is terminated,

as provided for herein, indemnified amounts and expenses incurred by the Escrow Agent in

connection with this paragraph shall not be returned to the persons who paid the Settlement

Amount.

### c. Retention of Independent Fiduciary and Department of Labor

3.7     Settling Defendants or the Underwriter shall each have the right and

option to retain no later than thirty (30) days after the Court's entry of an order preliminarily

approving the Settlement an independent fiduciary to consider whether to approve and authorize

in writing the Settlement in accordance with Department of Labor Prohibited Transaction Class

Exemption 2003-39.  If such an independent fiduciary is retained and declines to so approve and

authorize the Settlement no later than the fifth (5th) business day prior to the final approval

hearing in the Court with respect to the Settlement, Nortel and the Underwriter shall each have

the option to terminate the Settlement.

3.8     All fees and expenses of the independent fiduciary, if retained, shall be the

sole responsibility of the Underwriter.

      3.9     Nortel shall initiate discussions about the Settlement with the Department of Labor no later than fourteen (14) days after the execution of this Stipulation of Settlement. If Nortel fails to obtain at least twenty-five (25) days prior to the Fairness Hearing reasonable oral assurance from the Department of Labor that it will not object to the Settlement or institute suit or an administrative proceeding against any Settling Defendant for the conduct the subject of the Nortel ERISA Litigation, Nortel and the Underwriter shall each have the right to terminate the Settlement.

      **d.  Administration and Initial Provision of Data**

      3.10    Unless otherwise agreed by the Parties, within fifteen (15) days after the Preliminary Settlement Approval Order is entered, Nortel or the Plan shall use reasonable best efforts to facilitate the provision to the Settlement Administrator of the name, last known address and social security number of each Class Member in a searchable database or other format agreed to by the Parties.

      3.11    In the event that this Stipulation is held to be invalid, nothing contained in it shall constitute an admission by the Settling Defendants, Released Defendants or Dismissed Defendants as to any facts or the existence of or amount of any liability owed to another party.

    **4.**     **BANKRUPTCY CASE ADMINISTRATION**

      4.1     Promptly upon the execution of this Stipulation, Nortel will take all necessary actions to present such Stipulation of Settlement to the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") administering *IN RE NORTEL NETWORKS INC., et al.,* Case No. 09-10138 (KG) (the "U.S. Bankruptcy Case"), and the Ontario Superior Court of Justice administering *IN THE MATTER OF A PLAN OF*

*COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, et al.* No. 09-CL-7950 (the "Canadian Insolvency Case"), and seek all necessary approval thereof by such courts.

      4.2     All parties hereto shall cooperate reasonably and in good faith to seek the Final approvals of the Stipulation of Settlement by the Bankruptcy Court, the Ontario Superior Court of Justice, and the Court. The Settlement is contingent on the Stipulation of Settlement receiving Final approval from each of these Courts.

      4.3     Nortel and its affiliates do not waive any of the protections of the automatic stay provided by 11 U.S.C. § 362 or the stay provided by the Initial Order in the Canadian Insolvency Case.

      4.4     Nothing in this Stipulation shall limit, reduce or impact in any way any individual, non-class claim asserted against Nortel in the Bankruptcy Cases by Named Plaintiffs or any Class Member that is not based on or related to the Released Claims in this ERISA litigation.

      4.5     Upon the Court order approving the Settlement becoming Final, (i) Lead Counsel shall withdraw with prejudice the Proofs of Claim submitted in the U.S. Bankruptcy Case and the Canadian Insolvency Case on behalf of the Settlement Class which are attached hereto as Exhibit D-1; (ii) each Settling Defendant will withdraw with prejudice any and all Proofs of Claim submitted in the U.S. Bankruptcy Case and the Canadian Insolvency Case to the extent related to a claim arising from the Nortel ERISA Litigation, which are attached hereto as Exhibit D-2; and (iii) the Released and Dismissed Defendants shall be forever barred from submitting future Proofs of Claim in the U.S. Bankruptcy Case and the Canadian Insolvency Case in connection with the Nortel ERISA Litigation; provided, however, that nothing in this

Section 4.5 shall affect any person's rights and obligations under the Chubb Stipulation.

### 5.    NOTICE ORDER AND SETTLEMENT HEARING

5.1    Promptly upon the execution of this Stipulation, Plaintiffs will file a motion for preliminary approval of the Stipulation with the Court, to be heard after entry of the Bankruptcy Court Orders, and Settling Defendants shall support such motion.

5.2    Lead Counsel shall apply to the Court for entry of a Preliminary Settlement Approval Order, substantially in the form annexed hereto as Exhibit C, which Order shall, among other provisions, certify the Class as a Rule 23(b)(1) or (b)(2) Class, for settlement purposes only. Such Order shall include approval for the mailing of a Notice and publication of a Publication Notice, substantially in the forms of Exhibits C-1 and C-2 attached hereto.

5.3    The mailing or publication of the Notice and Publication Notice shall not occur until the Court enters the Preliminary Settlement Approval Order.

5.4    Lead Counsel shall request that, after notice is given, the Court hold a hearing and enter a Final Settlement Approval Order for the litigation, in substantially the form annexed hereto as Exhibit B.

### 6.    ATTORNEYS' FEES AND EXPENSES

6.1    Lead Counsel will apply to the Court for an award of attorneys' fees and reimbursement of expenses payable from the Gross Settlement Fund and shall further provide to the Court, as part of the motion for approval of the settlement, all necessary information required by the Court concerning the total award of attorneys' fees and reimbursement of expenses.

6.2    Settling Defendants shall not take a position with respect to Lead Counsel's requested attorneys' fees and expenses nor Lead Counsel's request for Named Plaintiffs' Case Contribution Compensation.

6.3     Any attorneys' fees and expenses and Named Plaintiffs' Case Contribution Compensation approved by the Court shall be paid from the Gross Settlement Fund after the Settlement becomes Final.

6.4     Lead Counsel may also apply to the Court for Named Plaintiffs' Case Contribution Compensation for each of the three Named Plaintiffs in an amount not to exceed $10,000 per Named Plaintiff.  In addition, Lead Counsel may also apply to the Court for Named Plaintiff Carol Felts to receive as additional Case Contribution Compensation $10,852, that being the amount of severance compensation or allowance that was available to her under the Nortel Networks Severance Allowance Plan but not accepted by Plaintiff Carol Felts due to her participation as a Named Plaintiff in this litigation.

**7.     RELEASES**

7.1     Upon (a) the Bankruptcy Court Orders and the Final Settlement Approval Order becoming Final, (i) each member of the Class on behalf of themselves, their personal representatives, heirs, executors, successors and assigns, will release the Settling Defendants, the Released Defendants, the Underwriter (including, without limitation, their past and present trustees, directors, officers, employees, auditors, advisors, agents, principals, attorneys, predecessors, successors, assigns, parents, affiliates and subsidiaries) and all Plan fiduciaries or alleged Plan fiduciaries, from all Released Claims, and (ii) each Settling Defendant/Counter-Plaintiff in the Nortel ERISA Litigation will release each member of the Class (including their past and present trustees, attorneys, predecessors, and successors) from all Released Claims.

7.2     The Court's Final Settlement Approval Order shall provide for the dismissal with prejudice of all claims and counterclaims asserted in the Nortel ERISA Litigation.

7.3     This release does not apply to bar, waive or release any claims by any

state or federal governmental entity of agency.

## 8.    CALCULATION OF CLAIMS, FINAL AWARDS AND SUPERVISION AND DISTRIBUTION OF SETTLEMENT FUND

8.1    The Settlement Administrator, subject to such supervision and direction of the Court and/or Lead Counsel as may be necessary or as circumstances may require, shall administer and/or oversee allocation of the Net Settlement Fund to the Plan Account for each Authorized Claimant.

8.2    The Gross Settlement Fund shall be applied as follows:

a.    to pay all the costs and expenses reasonably and actually incurred in connection with providing notice to the Class, locating Class Members, determining the eligibility of any person to be a Class Member or Authorized Claimant, obtaining information regarding the Plan Account of each Class Member, administering, calculating and distributing the Net Settlement Fund to Authorized Claimants, paying reasonable escrow fees and costs, if any;

b.    to pay the attorneys' fees and expenses awarded to Plaintiffs' Counsel by the Court, with interest thereon, and to pay Named Plaintiffs' Case Contribution Compensation as approved by the Court;

c.    to pay the Taxes described in ¶¶ 1.42, 2.7 and 2.8 hereof; and

d.    to distribute the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation and the Court.

8.3    Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be

distributed to Authorized Claimants, subject to and in accordance with this ¶ 8.

      8.4     Unless otherwise agreed by the Parties, within fifteen (15) days after Final Settlement Approval, Nortel or the Plan shall authorize the release to the Settlement Administrator of the following information pertaining to the Plan account of each Class Member as identified and maintained in the records of the Plan:

      a.     The Class Member's name, last known address, and social security number;

      b.     The following information for each Class Member:

      i.     the dollar value of the interest of each Class Member in Nortel Stock on March 7, 2000 or such later date thereafter as the Class Member entered the Class;

      ii.     the dollar value of additions of Nortel Stock of each Class Member between March 7, 2000 and January 1, 2008 (inclusive);

      iii.     the dollar value of any reduction or sale of Nortel Stock between March 7, 2000 and January 1, 2008 (inclusive) on behalf of each Class Member;

      iv.     the dollar value of the interest of each Class Member in Nortel Stock on January 1, 2008; and

      v.     whether the Class Member is a current participant in the Plan as of the most recent date for which such information is reasonably available.

No person shall have any claim whatsoever against the Released Parties or the Plan arising from or related to the disclosure of information as required by Section 8.4 or the Settlement Administrator's use thereof.

     8.5    The Settlement Administrator shall calculate the Individual Claim Amount based on the information on the Plan account of each Class Member described in paragraph 8.4 above and according to the following Plan of Allocation:

     a.    The Settlement Administrator shall determine the approximate loss ("Loss") for each Class Member as follows:

$$Loss = (A + B) - C - D$$

The components of this computation are defined as follows:

$A$ = The dollar value of the interest of the Class Member in Nortel Stock on March 7, 2000 or such later date thereafter as the Class Member entered the Class.

$B$ = The dollar value of any additions of Nortel Stock to the Class Member between March 7, 2000 and January 1, 2008 (inclusive).

$C$ = The dollar value of any reductions or sales of Nortel Stock by the Class Member between March 7, 2000 and January 1, 2008 (inclusive).

$D$ = The dollar value of the interest of the Class Member in Nortel Stock on January 1, 2008.

     b.    The Loss of each Class Member as calculated above will be totaled to yield the Loss of the Plan as a whole over the Class Period (the "Plan Loss").

     c.    The Settlement Administrator shall calculate for each Class Member the Individual Claim Amount, which is that amount that is the same percentage of the amount of the Net Settlement Fund allocated to the Plan as the Class Member's Loss bears to the Plan Loss.

d.    The Settlement Administrator shall identify each Class Member whose Individual Claim Amount is less than twenty dollars ($20.00) ("De Minimis Amount"). Each Class Member whose Individual Claim Amount is a De Minimis Amount shall not receive any distribution from the Net Settlement Fund. The Class Members whose Individual Claim Amount is twenty dollars ($20.00) or greater shall become Authorized Claimants. The sum of the De Minimis Amounts shall then be allocated to the Authorized Claimants in the same proportion as described in paragraph 8.5.c. above, and such amounts shall be added to the Individual Claim Amount for each Authorized Claimant.

e.    Absent good cause shown, the Settlement Administrator shall complete all calculations necessary to determine the Individual Claim Amount for each Authorized Claimant by such date as the Court orders. In the event the Settlement Administrator has not completed all such calculations by such date, on or before the fifth day of each month thereafter until the date all such calculations have been completed, the Settlement Administrator shall file a status report with the Court setting forth the reasons such calculations have not been completed.

8.6    In light of the manner in which the data is kept and the extent to which it can be used, it may be appropriate to simplify some of the features of the calculations described in paragraphs 8.4 and 8.5 above. Such simplifications are acceptable as long as the two basic features of the distribution are preserved: (i) all Authorized Claimants receive a share of the Net Settlement Fund based approximately on the formula referenced that calculates relative Loss of Class Members as compared with one another, and (ii) the distribution takes place pursuant to ¶ 8.8 below.

8.7     Promptly after calculating each Authorized Claimant's Individual Claim Amount, the Settlement Administrator shall:

      a.     provide to the Plan the name, social security number, and the amount of each Authorized Claimant's Individual Claim Amount; and

      b.     send to each Authorized Claimant a notice (the "Calculation Notice") by certified mail dated on or about the date of such mailing informing such Authorized Claimant of his or her Individual Claim Amount as calculated by the Settlement Administrator.  The Calculation Notice shall state that distributions of Individual Claim Amounts are expected to be made approximately 45 days following the date of the Calculation Notice, and in any event, shall be made no earlier than 45 days following the date of the Calculation Notice.  The reasonable costs associated with mailing Calculation Notices shall be borne by NNI.

8.8     Individual Claim Amounts shall be distributed as follows:

      a.     Subject to paragraph 8.8(b) below, as soon as practicable after the Escrow Agent transfers the Net Settlement Fund to the Plan pursuant to Section 2.5 hereof (the "Settlement Fund Transfer Date"), the Plan, or its agents, shall cause an amount to be allocated to the Plan Account of each Authorized Claimant equal to the Individual Claim Amount.  Such amount shall be allocated to the Authorized Claimant's Plan Account, and (i) if the Authorized Claimant is a current Plan participant, shall be invested in accordance with the Authorized Claimant's elections existing at the time of the Settlement Fund Transfer Date, or (ii) if the Authorized Claimant is a former participant in the Plan, shall be invested in the default investment option in accordance with the terms existing at

the time of the Settlement Fund Transfer Date. All such allocations in any Plan

account shall be administered in accordance with the applicable provisions of the

Plan; and

      b.      Reference is made to the possibility that the Plan may be

terminated following the execution date hereof and that the termination involves,

in effect, authorization from the Internal Revenue Service to distribute all of the

assets of the Plan to the participants thereunder and their beneficiaries within a

certain time period (such time period, as determined by the Plan fiduciaries, the

"Window Period," and the expiration of such period, the "Plan Termination

Date"). In the event that the Settlement Fund Transfer Date has not occurred or

may not occur prior to the Plan Termination Date, then (i) on or before such Plan

Termination Date, the Plan at its sole election may distribute to each Authorized

Claimant a notice of claim (the "Notice of Claim") regarding the Individual Claim

Amount of such Authorized Claimant (which may be fixed or subject to future

calculation), and the Settlement Administrator shall thereafter, as soon as is

practicable, distribute to each Authorized Claimant from the Net Settlement Fund

an amount equal to the Individual Claim Amount of such Authorized Claimant,

which shall be deemed to have been distributed by the Plan during the Window

Period pursuant to the Notice of Claim distributed to such Authorized Claimant;

or (ii) if the Plan has not distributed Notices of Claim, the Settlement

Administrator shall, as soon as is practicable after the Plan Termination Date,

distribute to each Authorized Claimant from the Net Settlement Fund an amount

equal to the Individual Claim Amount of such Authorized Claimant, which shall

be treated, to the maximum extent permissible by law, as a qualified retirement plan distribution pursuant to ERISA and the Internal Revenue Code. Plaintiffs expressly acknowledge that neither the Settling Defendants nor the Plan have any responsibility for the treatment of distributions made by the Settlement Administrator for tax purposes or any other purpose. The reasonable costs associated with mailing Notices of Claim, if any, shall be borne by NNI.

8.9    No person shall have any claim against Lead Counsel, the Settlement Administrator, Lead Plaintiffs, or Plaintiffs' Counsel, based on distributions made substantially in accordance with the Stipulation and the settlement contained therein, the Plan of Allocation, or further order(s) of the Court. No person shall have any claim whatsoever against Defendants, Defendants' Counsel, the Plan or any Released Party arising from or related to any allocations or calculations thereof to any Authorized Claimant or distributions made, or not made, from the Settlement Fund.

## 9.    EFFECTIVE DATE OF SETTLEMENT

9.1    The Effective Date of the Settlement shall be the date when all the following conditions of settlement shall have occurred:

(a) Payment of the Insurance Payment into the escrow account; (b) approval by the Court of the Settlement, following Notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; (c) entry by the Court of the Final Settlement Approval Order and such Order becoming Final; and (d) Final approvals of the Stipulation of Settlement by the Bankruptcy Court and the Ontario Superior Court of Justice.

9.2    Unless otherwise ordered by the Court, in the event this Stipulation shall terminate, be cancelled or not become effective for any reason, within ten (10) business days after written notification of such event is sent by counsel for Nortel or the Underwriter to the Escrow Agent, the Escrow Agent shall pay to the Underwriter an amount equal to the insurance payment made by the Underwriter together with any interest or other income earned thereon, less any taxes paid or due with respect to such income, less any amounts required to be paid to the Escrow Agent pursuant to the relevant Escrow Agreement and less any reasonable Administrative Expenses actually incurred and paid or payable from the Gross Settlement Fund as authorized in this Stipulation.

9.3    Except as otherwise provided herein, in the event the Settlement is terminated, the parties to this Stipulation shall be deemed to have reverted to their respective status in the Nortel ERISA Action and in the Bankruptcy Cases immediately prior to the execution of this Stipulation and, except as otherwise expressly provided, the parties shall proceed in all respects as if this Stipulation and any related Orders had not been entered.

## 10.    NO ADMISSION OF WRONGDOING

10.1    This Stipulation, whether or not consummated, and any proceedings taken pursuant to it:

a.    shall not be offered or received against any of the Released Parties as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of those Released Parties with respect to the truth of any fact alleged by any of the plaintiffs or the validity of any claim that has been or could have been asserted in the Nortel ERISA Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the

Nortel ERISA Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of the Released Parties;

      b.    shall not be offered or received against the Settling Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of the Settling Defendants;

      c.    shall not be offered or received against the Settling Defendants as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Settling Defendants, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that if this Stipulation is approved by the Court, the Released Parties may refer to it to effectuate the liability protection granted them hereunder;

      d.    shall not be construed against any of the Settling Defendants as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

      e.    shall not be construed as or received in evidence as an admission, concession or presumption against Named Plaintiffs or any of the Class Members that any of their claims are without merit, or that any defenses asserted by the Settling Defendants have any merit, or that damages recoverable under the Nortel ERISA Action would not have exceeded the Gross Settlement Fund.

**11.    MISCELLANEOUS PROVISIONS**

11.1    All of the exhibits attached hereto are incorporated by reference as though fully set forth herein.

11.2    The parties to this Stipulation intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Class Members or any Defendant against the Released Parties with respect to the Released Claims. Accordingly, Named Plaintiffs and Released Parties agree not to assert in any forum that the Nortel ERISA Action was brought by the plaintiffs or defended by Settling Defendants in those actions in bad faith or without a reasonable basis. The parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Nortel ERISA Action. The parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's length in good faith by the parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

11.3    Prior to entry of the Order preliminarily approving the Settlement, Named Plaintiffs shall dismiss from the Nortel ERISA Action defendants William Kerr, David L. Burn, Oswald D'Mello, MaryAnne Pahapill, and Tracey Vickruck, with prejudice.

11.4    This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all parties hereto or their successors-in-interest.

11.5    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

11.6    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and that Court shall retain jurisdiction

for the purpose of enforcing the terms of this Stipulation.

11.7   The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

11.8   This Stipulation and its exhibits, and any related escrow agreements constitute the entire agreement concerning the Settlement of the Nortel ERISA Action, and no representations, warranties, or inducements have been made by any party hereto concerning this Stipulation or its exhibits other than those contained and memorialized in such documents.

11.9   This Stipulation may be executed in one or more counterparts.   All executed counterparts and each of them shall be deemed to be one and the same instrument.

11.10   This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

11.11   The construction and interpretation of this Stipulation shall be governed by the internal laws of the State of Tennessee without regard to conflicts of laws, except to the extent that federal law of the United States requires that federal law governs.

11.12   This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's length negotiations between the parties and all parties have contributed substantially and materially to the preparation of this Stipulation.

11.13   All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action, required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

permitted to be taken pursuant to the Stipulation to effectuate its terms.

      11.14  Named Plaintiffs and Settling Defendants agree to use reasonable best efforts to cooperate with one another in seeking: (i) Court entry of the Preliminary Settlement Approval Order and the Final Settlement Approval Order and approval of the Stipulation and the Settlement; (ii) confirmation by the Bankruptcy Court and the Ontario Superior Court of Justice of approval of this Settlement; and (iii) to promptly agree upon and execute all such other documentations as may be reasonably required to obtain Final approval by the Court of the Settlement, and Final approval of any request made to the Bankruptcy Court and/or the Ontario Superior Court of Justice to approve this Settlement.

      ACKNOWLEDGED AND AGREED BY THE UNDERSIGNED PARTIES AS OF THE LAST DATE BELOW:

BRANSTETTER, STRANCH & JENNINGS, PLLC

By: _____
      James G. Stranch, III
      Co-Lead Counsel for Plaintiffs

Date: _May 23, 2011_____

*In Re Nortel Networks Corp. "Erisa" Litigation –*
Stipulation of Settlement
Page 37

BERGER & MONTAGUE, P.C.

By: _____
    Todd S. Collins
    Co-Lead Counsel for Plaintiffs

Date: _____May 23, 2011_____

KELLER ROHRBACK LLP

By: _____

Ron Kilgard
Co-Lead Counsel for Plaintiffs

Date: _____5-24-2011_____

*In Re Nortel Networks Corp. "Erisa" Litigation —*
Stipulation of Settlement
Page 39

JACKSON LEWIS LLP

By: _____
   René E. Thorne

Date: _____8/10/11_____

On behalf of Defendants Nortel Networks Inc., James
J. Blanchard, John Edward Cleghorn, L. Ives Fortier,
Robert Alexander Ingram, John Andrew Roth,
Guylaine Saucier, Sherwood Hubbard Smith, Jr.,
Lynton Ronald Wilson, Dr. Manfred Bischoff, Robert
Ellis Brown, John P. Manley, Richard David
McCormick, William Arthur Owens, Harry Jonathan
Pearce, Katharine B. Stevenson, Nicholas DeRoma,
William J. Donovan and John M. Doolittle

*In Re Nortel Networks Corp. "Erisa" Litigation –*
Stipulation of Settlement
Page 40

By: _____

Anna Ventresca
General Counsel – Corporate and Corporate Secretary


Date: _MAY 24, 2011_____

On behalf of Nortel Networks Corporation and Nortel
Networks Limited

*In Re Nortel Networks Corp. "Erisa" Litigation –*
Stipulation of Settlement
Page 41

By: _____

    John Doolittle, Senior Vice-President, Corporate and Chief Financial Officer

Date:_____MAY 24, 2011_____

On behalf of Nortel Networks Corporation and Nortel Networks Limited

*In Re Nortel Networks Corp. "Erisa" Litigation –*
Stipulation of Settlement
Page 42

MORVILLO, ABRAMOWITZ, GRAND, IASON,
ANELLO & BOHRER, P.C.

By: _____
   Counsel for Frank A. Dunn

Date: _____7/25/11_____

ARNOLD & PORTER LLP

By: _____
        Counsel for Mary Cross

Date: __July 26, 2011_____

4851-5121-8954, v. 1