**EXHIBIT C**

### STIPULATION AMONG NNC, NNL, NNI AND CHUBB INSURANCE COMPANY OF CANADA

This stipulation (the "Stipulation") is entered into among Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Inc. ("NNI") and Chubb Insurance Company of Canada ("Chubb", and together with NNC, NNL and NNI, the "Parties").

WHEREAS, on January 14, 2009 and July 14, 2009 (the "Petition Dates"), NNI and its affiliated debtors and debtors in possession (the "U.S. Debtors") filed voluntary petitions for relief under chapter 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "U.S. Bankruptcy Court") (Case No. 09-10138 (KG) (Jointly Administered)) (the "U.S. Proceedings"); and

WHEREAS, on January 14, 2009, NNC and certain of its subsidiaries (the "Canadian Applicants") filed applications with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors (Case No. 09-CL-7950) (collectively, the "Canadian Proceedings"); and

WHEREAS, the U.S. Bankruptcy Court and the Canadian Court established the general bar date of September 30, 2009 (other than for claims against Nortel Networks (CALA) Inc.) for filing proofs of claim in the U.S. Proceedings and in the Canadian Proceedings; and

WHEREAS, prior to the Petition Dates and related to certain insurance policies, Eric Schall, on behalf of Chubb, and Joseph F. Dearing, on behalf of "Nortel" (which term was not further defined), agreed to split evenly defense costs and fees arising from the case *In Re Nortel Networks Corp. ERISA Litigation*, No. 03-MD-1537 (M.D. Tenn.)

1

(the "ERISA Litigation") and to divide any payment of settlement of the ERISA Litigation, with Chubb paying seventy percent of such a settlement (up to the limits of EPP/Fiduciary Policy No. 8091-66-46(l)), and Nortel paying thirty percent of such a settlement; and

WHEREAS, on or about September 30, 2009, Chubb filed proof of claim number 5043 against NNI in the U.S. Proceedings for US$529,046.55, plus an unliquidated amount relating to the potential settlement of the ERISA Litigation and attorneys' fees and costs that have been or will be incurred and for which Chubb claims it is entitled to indemnification under a 2006 Settlement Agreement, (the "U.S. Claim"); and

WHEREAS, on or about September 30, 2009, Chubb filed proof of claim numbers 1912 and 1916 against NNC and its subsidiary, NNL, in the Canadian Proceedings for C$545,651.19 and US$35,529,046.55, plus an unliquidated amount relating to attorneys' fees and costs that have been or will be incurred and for which Chubb claims it is entitled to indemnification under a 2006 Settlement Agreement (the "Canadian Claim" and together with the U.S. Claim, the "Claims"); and

WHEREAS, the Claims relate by reference to the following insurance policies issued by Chubb that provide coverage to, inter alia, NNC, NNL, and NNI, together with their directors and officers: (i) EPP/Executive Liability and Indemnification Policy No. 8156-36-67 for the Policy Period of November 1, 1999 to November 1, 2001; (ii) EPP/Executive Liability and Indemnification Excess Policy No. 8160-15-14 for the Policy Period of November 1, 1999 to November 1, 2001; (iii) EPP/Fiduciary Policy No. 8091-66-46(l) for the Policy Period of March 3, 2000 to March 3, 2003; (iv) EPP/Executive Liability and Indemnification Policy No. 8168-6982 for the Policy Period

of November 1, 2001 to November 1, 2003; (v) EPP/Executive Liability and Indemnification Excess Policy No. 8168-6983 for the Policy Period of November 1, 2001 to November 1, 2003; (vi) EPP/Executive Liability and Indemnification Policy No. 8168-6982 for the Policy Period of November 1, 2003 to November 1, 2004; (vii) EPP/Fiduciary Policy No. 8091-6646 for the Policy Period of March 3, 2003 to November 1, 2003; (viii) EPP/Fiduciary Policy No. 8171-0910 for the Policy Period of March 3, 2003 to November 1, 2003, and (ix) EPP/Fiduciary Policy No. 8091-6646 for the Policy Period of November 1, 2003 to November 1, 2004 (collectively, the "Chubb Policies"); and

WHEREAS, NNI and NNC are defendants (along with NNL and certain former and current directors of NNI, NNC, and/or NNL, collectively, the "Defendants") in the ERISA Litigation filed in 2003 in the Middle District of Tennessee. The plaintiffs in the ERISA Litigation ("Plaintiffs") allege that the Defendants breached their fiduciary duties under ERISA with regard to the Nortel Long Term Investment Plan. Defendants deny any liability in the ERISA Litigation. Defendants and Plaintiffs (collectively, the "ERISA Litigation Parties") have engaged in arm's-length settlement negotiations, resulting in the ERISA Litigation Settlement Memorandum of Understanding (the "Settlement MOU"), attached hereto as Exhibit 1; and

WHEREAS, the Parties have each reviewed the Settlement MOU and intend to implement the Settlement,[1] subject to necessary court approvals; and

WHEREAS, the Parties have engaged in arm's-length negotiations in connection with the Claims; and

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement MOU.

3

WHEREAS, NNI and Chubb have agreed that the U.S. Claim should be reduced and allowed as a general unsecured claim in the amount of US$3,383,554.13, which shall not be subject to further amendment, offset, counterclaim or subordination; and

WHEREAS, NNC, NNL and Chubb have agreed that the Canadian Claim will be allowed as a general unsecured claim in the amount of US$3,595,492.43 (the "Minimum Amount"), which Minimum Amount shall not be subject to further amendment below the Minimum Amount, offset, counterclaim or subordination, with NNC and Chubb fully reserving their rights as to claim components 1 and 4 as described in Schedule A of the Canadian Claim, and reserving their rights as to claim component 2, as described in Schedule A of the Canadian Claim, to the extent claim component 2 exceeds US$211,938.30 (which is included in the Minimum Amount).

NOW, THEREFORE, the Parties agree and stipulate as follows:

1.  Court Approvals. All provisions of this Stipulation are subject to (i) the approvals of this Stipulation by the U.S. Bankruptcy Court and the Canadian Court, (ii) the approvals of the ERISA Litigation Settlement by the U.S. Bankruptcy Court, the Canadian Court and the District Court, and (iii) all such approvals becoming final and not subject to appeal. This Stipulation will be presented in both the U.S. Bankruptcy Court and the Canadian Court simultaneously along with the requests for approval of the ERISA Litigation Settlement. In the event this Stipulation is not approved by both the U.S. Bankruptcy Court and the Canadian Court or the ERISA Litigation Settlement is not approved by the U.S. Bankruptcy Court, the Canadian Court and the District Court or any such approvals do not become final and not subject to appeal, this Stipulation shall have no effect and the Parties shall have reserved all of their rights and defenses with respect

to the Claims. This Stipulation and any draft thereof shall not constitute an admission of liability or lack thereof by any Party or the U.S. Debtors, the Canadian Applicants or their affiliates, and shall not be admissible as evidence in any court of law or other legal proceeding for any purpose, other than for the purpose of enforcing the Stipulation.

2. <u>Agreement on Parties' Obligations</u>.

(a) Chubb agrees that it will honor the payment obligations as described in the Settlement MOU, as directed by the Settling Defendants, including but not limited to:

(1) on the later of the date that is either (i) ten (10) business days after entry of orders in the U.S. Bankruptcy Court and the Canadian Court approving the Settlement, or (ii) ten (10) business days after entry of the District Court's order preliminarily approving the Settlement, Chubb shall deposit the sum of two hundred fifty thousand dollars ($250,000) into the appointed Settlement escrow account (and provide any excess amount needed to provide notice or cover settlement administration as contemplated by the Settlement MOU and approved by the District Court);

(2) on the later of (i) the date on which oppositions to the motion for final approval of the Settlement are due to be filed or (ii) the date on which the orders approving the Settlement in both the U.S. Bankruptcy Court and the Canadian Court become final (i.e., the first day following which any order of the U.S. Bankruptcy Court or the Canadian Court cannot be the subject of further appeal or if an appeal has been taken such appeal has been finally dismissed by a court a court of competent jurisdiction), Chubb shall deposit the balance of the Settlement

Consideration into the appointed Settlement escrow account (the "Final Settlement Payment");

(3) Upon final approvals of the Settlement by the U.S. Bankruptcy Court and the Canadian Court and preliminary approval of the Settlement by the District Court, Chubb shall pay the the costs of an independent fiduciary, if retained, to consider whether to approve and authorize the Settlement; and

(4) After final approvals of the Settlement by the U.S. Bankruptcy Court, the Canadian Court, and the District Court, Chubb shall pay 50% of the costs associated with the implementation of the Settlement plan of allocation.

(b) upon deposit of the Final Settlement Payment, the U.S. Claim shall be reduced and allowed as a general unsecured claim by Chubb against NNI in the amount of US$3,383,554.13 (the "Allowed U.S. Claim"), and shall not be subject to further amendment, offset, counterclaim or subordination, and all other amounts claimed as part of the U.S. Claim shall be disallowed;

(c) this Stipulation shall be deemed to amend and supersede the U.S. Debtors' schedules with respect to Chubb, and aside from the Allowed U.S. Claim, Chubb shall have no other or further claims against the U.S. Debtors relating to the Chubb Policies; and

(d) upon deposit of the Final Settlement Payment, the Canadian Claim shall be allowed as a general unsecured claim by Chubb against NNC in the agreed Minimum Amount of US$3,595,492.43, which Minimum Amount shall not be

subject to further amendment below the agreed Minimum Amount, offset, counterclaim or subordination (the "Allowed Minimum Amount Canadian Claim"), with NNC and Chubb fully reserving their rights as to (i) claim components 1 and 4 as described in Schedule A of the Canadian Claim, and (ii) claim component 2, as described in Schedule A of the Canadian Claim, to the extent claim component 2 exceeds US$211,938.30 (which is included in the Minimum Amount) (collectively, the "Reserved Canadian Claim").

3.  Releases. Upon the last of the court approvals referenced in paragraph 1 above becoming final and not subject to appeal, the Parties shall release each other as follows:

(a) Chubb releases and forever discharges the U.S. Debtors and their respective affiliates, subsidiaries, shareholders, directors, officers, employees, agents, attorneys, and their personal representatives, successors and assigns, from any and all claims, defenses, demands, liabilities, obligations, damages, actions, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorney's fees), known or unknown, past or present, fixed or contingent, liquidated or unliquidated, that Chubb now has or hereafter may have arising in connection with the Chubb Policies, including, without limitation, any claim arising from or related to the U.S. Claim; provided, however, that this release shall not apply with respect to (i) the Allowed U.S. Claim and (ii) any director, officer, or employee of NNC, NNL, or NNI who was terminated for cause.

(b) Chubb releases and forever discharges the Canadian Applicants and their respective affiliates, subsidiaries, shareholders, directors, officers, employees,

agents, attorneys, and their personal representatives, successors and assigns, from any and all claims, defenses, demands, liabilities, obligations, damages, actions, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorney's fees), known or unknown, past or present, fixed or contingent, liquidated or unliquidated, that Chubb now has or hereafter may have against any of the Canadian Applicants arising in connection with the Chubb Policies, but only to the extent they arise from or are related to claim components 2, 3 and 5 as described in Schedule A of the Canadian Claim; provided, however, that this release shall not apply with respect to (i) the Allowed Minimum Amount Canadian Claim, (ii) the Reserved Canadian Claim, and (iii) any director, officer, or employee of NNC, NNL, or NNI who was terminated for cause.

(c) The U.S. Debtors release and forever discharge Chubb and its respective affiliates, subsidiaries, shareholders, directors, officers, employees, agents, attorneys, and their personal representatives, successors and assigns, from any and all claims, defenses, demands, liabilities, obligations, damages, actions, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorney's fees), known or unknown, past or present, fixed or contingent, liquidated or unliquidated, that the U.S. Debtors now have or hereafter may have arising in connection with the Chubb Policies, including, without limitation, any claim arising from or related to the U.S. Claim.

(d) The Canadian Applicants release and forever discharge Chubb and its respective affiliates, subsidiaries, shareholders, directors, officers, employees, agents, attorneys, and their personal representatives, successors and assigns, from

any and all claims, defenses, demands, liabilities, obligations, damages, actions, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorney's fees), known or unknown, past or present, fixed or contingent, liquidated or unliquidated, that the Canadian Applicants now have or hereafter may have arising in connection with the Chubb Policies, but only to the extent they arise from or are related to claim components 2, 3 and 5 as described in Schedule A of the Canadian Claim; provided, however, that this release shall not apply with respect to the Reserved Canadian Claim,

4. <u>No Further Claims</u>. Upon the last of the court approvals referenced in paragraph 1 above becoming final and not subject to appeal, Chubb shall be forever barred from (i) amending the U.S. Claim or the Allowed U.S. Claim, (ii) filing any further proofs of claim against any of the U.S. Debtors in the Debtors' Chapter 11 cases relating to the Chubb Policies, and (iii) filing any further proofs of claim against the Canadian Applicants in the Canadian Proceedings relating to the Chubb Policies except as to claims 1 and 4 as described in Schedule A of the Canadian Claim, and as to claim 2, as described in Schedule A of the Canadian Claim, to the extent claim 2 exceeds US$ 211,938.30 (which is included in the Minimum Amount). Nothing herein shall be construed to enlarge or restore the right of Chubb, if any, to file a proof of claim in the Chapter 11 cases as of the date hereof.

5. <u>Binding Effect</u>. This Stipulation and the orders of the U.S. Bankruptcy Court and Canadian Court approving the Stipulation shall be binding upon any successors or assigns of the Parties, including any trustee or receiver subsequently appointed in the U.S. Debtors' Chapter 11 cases or in the Canadian Proceedings.

6.   Entire Agreement. This Stipulation constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof and this Stipulation cannot be amended except by an authorized agreement between the Parties.

7.   No Transfer. Chubb represents that it has not sold, assigned or otherwise transferred the Claims to a third party.

8.   No Admissions. Each Party acknowledges and agrees that nothing in this Stipulation constitutes an admission or concession on any legal issue raised in or relating to the Claims.

9.   Costs and Expenses. Each Party agrees to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations related to and preparation of this Stipulation and to not seek from each other reimbursement of any such costs, expenses or attorneys' fees.

10.   Jurisdiction. The U.S. Bankruptcy Court and Canadian Court shall each retain jurisdiction over the implementation of this Stipulation and any disputes arising hereunder.

11.   Manner of Execution. This Stipulation may be executed in counterparts, each of which shall be an original, and such counterparts shall be construed together as one instrument. Facsimile or pdf signatures shall be deemed original signatures.

12.   Claims Register. The U.S. Debtors, the U.S. Debtors claims' agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to this Stipulation.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated: ~~July~~ August 26th, 2010

Nortel Networks Corporation

By: _____
Name:  Anna Ventresca
Title:   General Counsel - Corporate and Corporate Secretary

By: _____
Name:  John Doolittle
Title:   Senior Vice-President, Corporate Services and Chief Financial Officer

Nortel Networks Limited

By: _____
Name:  Anna Ventresca
Title:   General Counsel – Corporate and Corporate Secretary

By: _____
Name:  John Doolittle
Title:   Senior Vice-President, Corporate Services and Chief Financial Officer

Nortel Networks Inc.

By: _____
Name:
Title

Chubb Insurance Co. of Canada

By: _____

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated: August 26, 2010

Nortel Networks Corporation                    Chubb Insurance Co. of Canada

By:_____                   By:_____

Nortel Networks Limited

By:_____

Nortel Networks Inc.

By: *[signature]*

11

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated: ~~July ___, 2010~~ August 26, 2010

Nortel Networks Corporation         Chubb Insurance Co. of Canada

By: _____          By: _*Judy W. Haas*_
                                        *Assistant Vice President*

Nortel Networks Limited

By: _____

Nortel Networks Inc.

By: _____

11