IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
: 
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
               Debtors. : Jointly Administered
:
: **RE: D.I. 5951**
: Hearing Date: September 21, 2011 at 10:00 a.m.
:
------------------------------------------------------------X

**DEBTORS' OBJECTION TO THE MOTION OF
EDMUND B. FITZGERALD FOR RELIEF FROM THE AUTOMATIC STAY**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "U.S. Debtors"), hereby respectfully submit this objection (the "Objection") to the *Motion of Edmund B. Fitzgerald for Relief from the Automatic Stay* [D.I. 5951] (the "Motion").

Through his Motion for relief from the automatic stay, Mr. Fitzgerald seeks permission to bring a turnover action before the Ontario Superior Court of Justice (the "Canadian Court") overseeing the CCAA proceedings of Nortel Networks Limited ("NNL") and certain of its affiliates (the "Canadian Debtors") that relates to the proceeds of an annuity issued by Sun Life Assurance Company of Canada (U.S.) ("Sun Life U.S."). While Mr. Fitzgerald notes that other Canadian employees obtained a favorable ruling with respect to the turnover of Canadian

---

[1] The U.S. Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

policies issued by another Sun Life affiliate, Sun Life Assurance Company of Canada ("Sun Life Canada"), in his Motion he admits to certain facts that warrant denial of relief from the stay by this Court – including that Mr. Fitzgerald served as a senior U.S. employee during his tenure at Nortel, and unlike the policies that were the subject of the prior Canadian Court ruling, the Sun Life policy for which he seeks to bring a turnover action is a U.S. policy with NNI as the named contract holder and beneficiary. Accordingly, any claims by Mr. Fitzgerald with respect to the policy – whether for turnover or a general unsecured claim against NNI – must be brought in this Court and his request for relief from the stay must be denied.

**Background Facts**

1.   Mr. Fitzgerald worked for the Nortel group, then known as Northern Telecom, from May 1980 until his retirement in July 1990. During his tenure with Nortel, Mr. Fitzgerald held a variety of executive positions at both Northern Telecom Inc. ("NTI", now known as NNI) and Northern Telecom Limited ("NTL", now known as NNL).

2.   During his employment with the Nortel group, Mr. Fitzgerald participated in the Employee Thrift/Savings Plan established by NTI in July 1979 (the "Thrift/Savings Plan"), attached hereto as Exhibit 1. In 1985, NTI (now known as NNI) entered into a group pension contract, attached hereto as Exhibit 2, with Sun Life U.S. for the purchase of annuities, subject by its terms to the laws of Tennessee.

3.   In connection with Mr. Fitzgerald's retirement in 1990, on May 22, 1990, Nortel sent a letter to "SunLife Assurance Company" requesting to purchase a "U.S. annuity" for Mr. Fitzgerald. Motion, Ex. E at 1. The letter states that the premium payment will be approximately U.S. $395,000 and that "[t]his annuity purchase relates to Mr. Fitzgerald's Thrift/Savings Plan savings which cannot be made available until his retirement July 1, 1990."

2

<u>Id.</u> On June 7, 1990, Mr. Fitzgerald notified Nortel that he would be withdrawing the funds in his Thrift/Savings Account (<u>see</u> "Employee Thrift/Savings Plan Withdrawal/Termination Notification", attached hereto as <u>Exhibit 3</u>) and on July 30, 1990, Mr. Fitzgerald was sent a "Northern Telecom Inc. – Employee Thrift/Savings Plan Distribution Statement," attached hereto as <u>Exhibit 4</u>, which states that the gross value of the distribution was $397,325.25. Objection, Ex. 4 at 1. Shortly thereafter, the annuity was purchased under the group pension contract and an Annuity Certificate was issued. The certificate, attached as Exhibit F to the Motion, named the contract holder and recipient of payments under the annuity as Northern Telecom, Inc. and Mr. Fitzgerald as the Annuitant. Motion, Ex. F at 1. None of the Canadian Debtors are named on the contract and they have never asserted an interest in the policy to date. Mr. Fitzgerald concedes in his Motion that "[b]oth the covering letter to the benefits entitlement summary and the summary of pension and estimates of other supplementary retirement income state that the Annuity related to Fitzgerald's Thrift/Savings Plan." Motion ¶ 12.

4. On September 28, 2009, Mr. Fitzgerald filed a proof of claim against NNI for the present value of his retirement benefits in the amount of $2,681,085. On September 29, 2009, Mr. Fitzgerald filed an amended proof of claim against NNI in the amount of $3,041,751 (Claim No. 5641). Although a formal claims process has not yet been established for Canadian employees, Mr. Fitzgerald informed the U.S. Debtors that he also has filed claims against the Canadian Debtors.

## **Objection**

5. While the Motion summarizes various claims Mr. Fitzgerald purports to hold against the Canadian Debtors, Mr. Fitzgerald's request for relief from the stay to bring his claims in front of the Canadian Court is limited to "issues arising out of the Annuity." Motion ¶ 1. The

various documents show that the contract holder in the case of Mr. Fitzgerald's annuity is the U.S. Debtor, NNI, and thus granting Mr. Fitzgerald relief from the stay to pursue a turnover proceeding in Canadian Court with respect to the annuity would be contrary to the purposes of the automatic stay provided for by the U.S. Bankruptcy Code.[2]  The U.S. Debtors take no position in this Objection on the ultimate merits of any claim Mr. Fitzgerald may have against the U.S. Debtors, the Canadian Debtors or against any other Nortel entities, including with respect to his pension, special retirement benefit and any other benefits.

### I. Proceeding In The Canadian Court Is Improper

6.   Mr. Fitzgerald makes clear in his Motion that he wishes to prosecute his claim in the Canadian Court to take advantage of a ruling of that Court with respect to certain Sun Life Canada annuities (the "Canadian Annuities") that relate to Canadian employees.  This basis is not sufficient to vitiate the automatic stay which protects the U.S. Debtors and their property.  In fact, there are several reasons why the ruling embodied in the Canadian Court's endorsement (Motion, Ex. G) does not and cannot apply to Mr. Fitzgerald.

7.   First, NNL was the contract holder for the Canadian Annuities that were the subject of the Canadian Court ruling.  See Motion, Ex. G at 2.  By contrast, NTI, a predecessor to NNI, is listed as the "contract holder" on Mr. Fitzgerald's annuity certificate.  See Motion, Ex. F at 1.  Second, the Canadian Annuities related to NNL's Supplementary Pension and Retirement Allowance Plan.  See Motion, Ex. G at 2.  By contrast, Mr. Fitzgerald's annuity related to NTI's (and later NNI's) Thrift/Savings Plan.  See supra ¶ 3.  Third, the Canadian Annuities were created under a 1980 group annuity contract between NNL and Sun Life Canada.  Motion, Ex. G at 3.  Mr. Fitzgerald's annuity was created under a different group annuity contract between NNI

---

[2]   The U.S. Debtors also have been informed by counsel to the Canadian Debtors that a process has not yet been established for the filing or resolution of employee claims such as Mr. Fitzgerald's in the CCAA proceedings, and that any resolution of his claims against the Canadian Debtors would be premature at this time.

and Sun Life U.S., entered into six years later, subject by its terms to the laws of Tennessee. <u>See supra</u> ¶ 2. Fourth, unlike the Canadian Annuitants, Mr. Fitzgerald has not asserted that NNL made monthly payments to him with respect to his annuity prior to the petition date in these cases. Mr. Fitzgerald does not contest any of these facts.

8. In addition, the Canadian Court analyzed the facts related to the Canadian Annuities under Canadian law and, in so doing, only considered the narrow question of whether the Canadian Annuities were property of the Canadian Debtors. <u>See</u> Motion, Ex. G at 1, 9 (limiting ruling to funds administered under NNL's contract with Sun Life Canada and citing Canadian unjust enrichment law to support ruling). The U.S. Debtors were not parties to the policies that were implicated by the Canadian ruling and neither appeared nor filed any papers in the Canadian Proceedings with respect to the Canadian Annuities. In fact, the distinction between the annuity that is the subject of Mr. Fitzgerald's Motion and the Canadian Annuities was recognized prior to issuance of the Canadian Court ruling. Mr. Fitzgerald contacted the Canadian Debtors to ask that they seek direction from the Canadian Court with respect to the annuity that is the subject of the Motion, and the Canadian Debtors specifically declined to do so because the annuity listed the predecessor to NNI, a U.S. Debtor subject to the supervision of this Court, as the owner. <u>See</u> Affidavit of Elena King, sworn Nov. 11, 2009, attached hereto as <u>Exhibit 5</u>, at 7-8.

9. Mr. Fitzgerald's attempt to use the Cross-Border Insolvency Protocol adopted by this Court and the Canadian Court [D.I. 990] (the "<u>Cross-Border Protocol</u>") as a basis for being able to proceed before the Canadian Court rather than this Court is similarly misguided. The Cross-Border Protocol specifically states, "[n]othing contained herein shall affect or limit the Debtors' or other parties' rights to assert the applicability or nonapplicability of the U.S. Stay or

the Canadian Stay to any particular proceeding, property, asset, activity or other matter, wherever pending or located . . . . [M]otions brought respecting the application of the stay of proceedings with respect to assets or operations of the U.S. Debtors shall be heard and determined by the U.S. Court." Cross-Border Protocol ¶ 18.  In addition, Mr. Fitzgerald's arguments regarding fairness to creditors and judicial efficiency are unpersuasive.  This Court has held that a creditor's effort to litigate a claim filed against a chapter 11 debtor in another forum "clear of the Court's jurisdiction and the automatic stay" is inimical to the efforts of the debtor to assemble and distribute assets to all creditors.  In re Nortel Networks Inc., 426 B.R. 84, 93 (Bankr. D. Del. 2010), aff'd sub nom. Tr. of Nortel Networks U.K. Pension Plan and the Bd. of the Pension Prot. Fund v. Nortel Networks Inc., et al. (In re Nortel Networks Inc.), No. 09-10138-KG, CA 10-230-LPS, 2011 WL 1154225 (D. Del. Mar. 29, 2011).  Granting Mr. Fitzgerald extraordinary relief to pursue his claim against a U.S. Debtor and its assets in Canadian Court merely because he also was a Canadian employee who may hold other claims against the Canadian Debtors would create an end run around this Court's jurisdiction over the claim and the U.S. Debtors' estates, allow him to step in front of other U.S. creditors, force the U.S. Debtors to appear in a foreign forum to defend their interests and their property, and defeat the fundamental principle of fairness to creditors that is essential to the Bankruptcy Code.

10.    Moreover, Mr. Fitzgerald has submitted to this Court's jurisdiction by filing proofs of claim against the U.S. Debtors, and the U.S. Debtors understand that the proof of claim includes a claim based on the annuity.  See Lagenkamp v. Culp, 498 U.S. 42, 44 (1990) (stating that "by filing a claim against a bankruptcy estate the creditor triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power") (internal quotation marks omitted).  The determination of whether Mr. Fitzgerald's

annuity constitutes property of the estates of the U.S. Debtors is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (B), (E) and (O).  Courts also have repeatedly recognized that attempts to assess, impose and/or liquidate a debt against a chapter 11 debtor outside of the bankruptcy court go to the essence of the chapter 11 claims process, and are the very reason for the automatic stay.  See, e.g., Mar. Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1207 (3d Cir. 1991) ("Consolidating all pre-petition claims against the debtor in one collective proceeding before a bankruptcy court is the essence of bankruptcy.") (citation omitted).  To allow proceedings regarding property of NNI's estate to occur elsewhere simply because of a ruling made on distinguishable facts under different law by a court in another jurisdiction would violate fundamental bankruptcy principles and interfere with the administration of NNI's estate.

### II.    Mr. Fitzgerald Has Failed To Show Cause For Relief From The Automatic Stay

11.    Pursuant to section 362 of the Bankruptcy Code, relief from the automatic stay may only be granted "for cause."  11 U.S.C. § 362(d)(1).  In order to establish "cause" for relief under section 362(d)(1), "'the party seeking relief from the stay must show that the balance of hardships from not obtaining relief tips significantly in [its] favor.'"  In re RNI Wind Down Corp., 348 B.R. 286, 299 (Bankr. D. Del. 2006), aff'd, 359 F. App'x 352 (3d Cir. 2010) (quoting Atl. Marine, Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.), 298 B.R. 222, 225 (D. Del. 2003)).  The moving party must first establish a prima facie case for relief from the automatic stay.  RNI Wind Down, 348 B.R. at 299.  Failure to prove a prima facie case requires denial of the relief.  Id.; see also Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2d Cir. 1990); Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.), 193 B.R. 713, 718 (Bankr. D. Del. 1996).

12.  Mr. Fitzgerald has not made a prima facie showing that the balance of hardships favors relief from the automatic stay. In fact, such a weighing of interests clearly indicates that relief from the automatic stay must not be granted in this instance. Allowing Mr. Fitzgerald to proceed before the Canadian Court would cause significant harm to NNI by forcing it to protect the assets of its estate in front of another court in a different jurisdiction and potentially under laws that do not properly apply to it. In addition, because Mr. Fitzgerald has already submitted to the U.S. claims process, any harm he alleges as resulting from this Court's exercise of jurisdiction over his claim and refusal to allow him to proceed before the Canadian Court, is justified. Finally, there is no greater hardship imposed by requiring Mr. Fitzgerald, a resident of Nashville, Tennessee, to pursue his claims before this Court rather than the Canadian Court.

## Conclusion

For the reasons set forth above, Mr. Fitzgerald's Motion should be denied. Mr. Fitzgerald has failed to meet his burden to establish cause to lift the automatic stay and any modification of the automatic stay in this instance would thwart its purpose to provide for the orderly maximization of the U.S. Debtors' estates and the expeditious recovery of all creditors. Accordingly, the U.S. Debtors respectfully request that this Court deny the Motion and the relief requested therein.

WHEREFORE, for the reasons stated in this Objection, the Debtors respectfully request that the relief requested in the Motion be denied.

Dated: September 7, 2011  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)  
Lisa M. Schweitzer (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone:  (212) 225-2000  
Facsimile:  (212) 225-3999

  - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone:  (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors  
and Debtors in Possession*