**EXHIBIT 1**

EXHIBIT C

NORTHERN TELECOM INC.

EMPLOYEE THRIFT/SAVINGS PLAN

EFFECTIVE JULY 1, 1979

Amended and restated effective June 1, 1990

INDEX

### ARTICLE 1 - PURPOSE AND DEFINITIONS                    Page(s)

| | | |
|---|---|---|
| 1.1. | Purpose | 1 |
| 1.2. | Definitions | 1. |
| 1.3. | Use of Pronouns | 7 |


### ARTICLE 2 - PARTICIPATION

| | | |
|---|---|---|
| 2.1. | Eligibility for Plan Membership | 8 |
| 2.2. | Active Participation in the Plan | 8 |
| 2.3. | Termination of Active Participation in the Plan | 9 |


### ARTICLE 3 - THE FUND

| | | |
|---|---|---|
| 3.1. | Plan Fund | 11 |
| 3.2. | Constituency of the Fund | 11 |


### ARTICLE 4 - CONTRIBUTIONS

| | | |
|---|---|---|
| 4.1. | Participant Contributions | 12 |
| 4.2. | Company Contributions | 14 |
| 4.3. | Amounts Contributed in Error By the Company | 15 |
| 4.4. | Account Transfers | 15 |
| 4.5. | Valuation of Common Shares | 16 |
| 4.6. | Valuation of Guaranteed Interest Contract Investments | 17 |
| 4.7. | Valuation of Equity Fund Investment | 17 |


### ARTICLE 5 - ALLOCATION OF CONTRIBUTIONS AND EARNINGS

| | | |
|---|---|---|
| 5.1. | Deposit of Contributions in the Fund | 18 |
| 5.2. | Separate Participant Accounts | 18 |
| 5.3. | Report to Participants | 18 |
| 5.4. | Allocation of Earnings | 18 |
| 5.5. | Definition of "Earnings" | 18 |

INDEX (Continued)

Page(s)

### ARTICLE 6 - VESTING

| | | |
|---|---|---|
| 6.1. | Vesting of Participant Account Value | 19 |
| 6.2. | Vesting of Company Contributions Account Value | |
| 6.3. | Vesting of Company Contributions Account | 19 |
| | Value on Certain Events | 19 |
| 6.4. | Distribution of Vested Amounts; Forfeitures | 19 |
| 6.5. | Disposition of Forfeitures | 21 |
| 6.6. | Vesting of Participants Employed by NYNEX Meridian Systems | 21 |

### ARTICLE 7 - WITHDRAWAL OF ACCOUNT VALUES WHILE A PARTICIPANT

| | | |
|---|---|---|
| 7.1. | Employee Contribution Withdrawals | 22 |
| 7.2. | Suspension Following Certain Withdrawals | 22 |
| 7.3. | Withdrawal of Certain Vested Company Contributions | 23 |
| | Account Values | |
| 7.4. | Withdrawal for Reasons of Financial Hardship | 23 |
| .5. | Effect of Hardship Withdrawals | 23 |
| 7.6. | Company Contributions Not Withdrawn | 23 |
| 7.7. | Effective Date of Withdrawal | 24 |
| 7.8. | Qualified Domestic Relations Orders | 24 |

### ARTICLE 8 - PAYMENT OF BENEFITS

| | | |
|---|---|---|
| 8.1. | Form of Payments | 25 |
| 8.2. | Facility of Payment | 26 |
| 8.3. | Effective Date of Distribution | 26 |

### ARTICLE 9 - ADMINISTRATION

| | | |
|---|---|---|
| 9.1. | Form of Trust | 27 |
| 9.2. | Plan Administrator | 27 |
| 9.3. | Employee Benefits Committee | 27 |
| 9.4. | Fiduciary Duties | 28 |
| 9.5. | Appeals Procedures | 29 |
| 9.6. | Costs and Expenses | 30 |

INDEX (Continued)

Page(s)

ARTICLE 10 - AMENDMENT, DURATION
TERMINATION AND MERGER

| | | |
|---|---|---|
| 10.1. | Amendment and Duration of the Plan | 31 |
| 10.2. | Termination of the Plan | 31 |
| 10.3. | Merger of the Plan | 31 |

ARTICLE 11 - LIMITATIONS ON BENEFITS
AND CONTRIBUTIONS

| | | |
|---|---|---|
| 11.1. | Maximum Annual Addition | 32 |
| 11.2. | Limitation on Compensation | 32 |
| 11.3. | Nondiscrimination Requirements | 32 |
| 11.4. | Adjustments by Administrator | 33 |
| 11.5. | Special Contributions | 33 |
| 11.6. | Aggregation of Defined Contribution Plans | 33 |
| 11.7. | Limitations Applicable to Participants who also | |
| | Participate in a Defined Benefit Plan | 34 |

ARTICLE 12 - MISCELLANEOUS

| | | |
|---|---|---|
| 12.1. | Inalienability of Benefits | 35 |
| 12.2. | Rights of Participants | 35 |
| 12.3. | Applicable Law | 35 |
| 12.4. | Voting of Common Shares | 35 |
| 12.5. | Certain Employees of PacTel Meridian Systems | |
| | and Northern Telecom Meridian Systems Inc. | 36 |

ARTICLE 13 - TOP HEAVY RESTRICTIONS

| | | |
|---|---|---|
| 13.1. | Definitions | 37 |
| 13.2. | Vesting | 38 |

# ARTICLE 1

## PURPOSE AND DEFINITIONS

### 1.1.  Purpose

Northern Telecom Inc. ("NTI") established a Thrift/Savings Plan on July 1, 1979 for the benefit of certain of its employees.

The primary purpose of the Plan is to provide encouragement to employees to accumulate personal savings so that they may enjoy a higher standard of living at retirement. This accumulation is to be facilitated through convenient, systematic payroll deductions, the addition of defined company contributions, and an investment vehicle which protects principal and provides a relatively predictable and stable rate of return. The secondary purpose of the Plan is to provide the capability to accept "Rollover Contributions" directly from other qualified plans or from qualified special Individual Retirement Accounts which employees may have established as a result of prior distributions from qualified plans. The Plan contained herein governs the rights of all persons actively employed after June 30, 1979.

The Plan was last amended and restated effective as of the date set forth on the cover page hereof. The Plan as amended is subject to change to meet applicable rules and regulations of the Internal Revenue Service and the U.S. Department of Labor or such other reasons as NTI may determine.

### 1.2.  Definitions

Where the following capitalized words and phrases appear in this Plan, they shall have the respective meanings set forth below, unless the context clearly indicates to the contrary.

    a.    "Active Participant" means a Participant who is making current contributions to the Plan in accordance with the provisions of the Plan.

    b.    "Affiliated Group" means, with respect to any Company, the group of corporations which are described in Section 1504 of the Internal Revenue Code. "Affiliated Company" means any company which is a member of an Affiliated Group.

    c.    "Anniversary Date" means any January 1 which falls after the Effective Date.

    d.    "Base Pay Deferred Amount" means the amount equal to up to 12% of Base Pay which may be deferred by an Employee who elects to participate in this Plan.

    e.    "Beneficiary" means, if so required by Section 8.1.a, the spouse of a Participant, or, if not so required, either (1) that person or persons named by a Participant

to receive the Participant's credit under the Plan in the event of the Participant's death, or (2) if the Participant has made no such nomination, the Participant's estate.

     f.     "Board" and "Board of Directors" means the Board of Directors of NTI.

     g.     "Code" means the Internal Revenue Code of 1986, as amended.

     h.     "Committee" means the Employee Benefits Committee.

     i.     "Common Shares" means shares of common stock issued by Northern Telecom Limited.

     j.     "Company" means NTI or any present or future subsidiary or affiliated employer which adopts this Plan by action of its board of directors and which is permitted to participate in this Plan by action of the Board of Directors.

     k.     "Company Contribution" means the value contributed to a Participant's account by the Participant's employer as a partial match of the Employee Contribution or the Employee Elected Company Contribution, made in the form of either cash or Common Shares as elected by the Participant in accordance with the provisions of this Plan.

     l.     "Company Contributions Account Value" means that portion of a Participant's Total Account Value which consists of amounts or Common Shares contributed by the Company and interest, earnings and changes in market value thereon.

     m.     "Effective Date" means July 1, 1979.

     n.     "Employee" means any employee of a Company who is carried on the payroll register, but excluding employees covered by a collective bargaining agreement which agreement does not provide for participation of such employees in the Plan.

     o.     "Employee Benefits Committee" means the committee established by the Board with the powers, duties, and responsibilities which are defined under Article 9.

     p.     "Employee Contributions" means the amount from 2%, not to exceed 10%, of Base Pay, contributed by a Participant to the Thrift/Savings Plan prior to January 1, 1983.

     q.     "Employee Elected Company Contribution" means the amount contributed to the Fund out of the Base Pay Deferred Amount as selected by Active Participants under Sections 4.1.a . and 4.1.b .

     r.     "Employment Service" means the total years of employment with companies in the Affiliated Group measured from the appropriate Employee's employment commencement date calculated in accordance with the provisions of Treasury Regulation Sec. 1.401(a)-7 .

s.    "Equity Fund" means a designated Standard and Poors 500 indexed product administered as part of the Fund.

t.    "Fiscal Month" means each or any period of four or more consecutive weeks, as the case may be, designated as a "fiscal month" by the NTI Vice President, Finance for purposes of the financial reporting and administration of NTI .

u.    "Fiscal Quarter" means each or any of the three-month periods of January through March, April through June, July through September, and October through December, as those Fiscal Months are defined by the NTI Vice President, Finance for purposes of the financial reporting and administration of NTI .

v.    "Formula Price" means the average of the high and low prices for board lots (100 shares or multiples thereof ) of Common Shares on the Montreal and Toronto Stock Exchanges traded in Canadian currency during the five trading days immediately preceding the last business day of a calendar month on which at least one board lot of Common Shares was traded on either exchange and on which a noon rate of exchange was reported by Bank of Canada (the "Exchange Rate"), with such average price being converted from Canadian to United States dollars at the average of the Exchange Rates; provided, however, that if the volume of Common Shares traded during the same five days, as reported on the composite tape in the United States, exceeds the combined volume of Common Shares traded on the Montreal and Toronto Stock Exchanges traded in Canadian currency, the price shall be the average of the high and low prices for round lots (100 shares or multiples thereof) of Common Shares on The New York Stock Exchange on the five trading days immediately preceding the last business day of the month on which at least one round lot of Common Shares was traded.

w.    "Fund" means the trust fund established under the Plan.

x.    "Guaranteed Interest Contract" means a designated cash account administered as part of the Fund.

x.(i)    "Highly Compensated" shall have the meaning assigned to such term in Code Section 414(q) and the regulations promulgated thereunder.

y.    "Hour of Service" shall mean:

1.    Each hour for which an Employee is directly or indirectly paid, or entitled to payment by a Company for the performance of duties during the Plan Year; and

2.    Each hour for which an Employee is paid, or entitled to payment by a Company for a period of time during which no duties were performed (regardless of whether or not the Employee has terminated his employment relationship with that

- 3 -

Company) due to vacation, holiday, illness, incapacity (disability), layoff, jury duty, military duty, or authorized leave of absence; and

       3.     Each hour for which back pay (irrespective of mitigation of damages) has been either awarded or agreed to by a Company, and shall be credited for the Plan Year to which the agreement or award pertains.

Notwithstanding any provisions contained herein, no Employee shall be credited with an Hour of Service under more than one of Sections 1., 2., or 3. above, nor shall more than Five Hundred and One (501) Hours of Service be credited to an Employee on account of any single continuous period during which the Employee performs no duties. No Hours of Service shall be credited pursuant to Sections 1. or 2. above if payment to the Employee is made or due under a plan maintained solely for the purpose of complying with applicable workers' compensation, unemployment compensation or disability insurance laws. One Hundred Ninety (190) Hours of Service shall be credited for, and in respect of, each calendar month in which an Employee is directly or indirectly paid by a Company or entitled to payment for one Hour of Service. For the purpose of this subsection: (a) the term "Company" shall include, in addition to those entities described in Section 1.2.j., any other employer which is a member of a controlled group of corporations, or of a group of companies under common control (as described in Sections 414 and 415 of the Internal Revenue Code) and of which any Company is a member, and any corporation which is a member of the same affiliated service group as any other entity included within the term "Company", and (b) the Department of Labor Regulations, Sections 2530.200b-2 (B) and 2530.200b-2 (C) are incorporated herein by reference.

       z. "Investment option(s) " shall have the meaning specified in Section 4.1.a. (2) .

       aa.     "Matching Stock" means Common Shares credited to the Participant's Company Contributions Account as the Company's Contribution with respect to either the Employee Contribution or the Employee Elected Company Contribution, following the Employee's election to have Common Shares contributed to the Fund rather than cash contributed to the Fund.

       bb.     "Monthly Distribution Date" means the date selected by the Plan Administrator in any given calendar month as the date for distribution to Participants and Beneficiaries of all withdrawals (other than Emergency Hardship Withdrawals) and distributions processed by the Plan Administrator during the preceding calendar month .

       cc.     "Participant" means an Employee who has satisfied the requirements of Sections 2.1. and 2.2. of the Plan, and refers to both an "Active Participant" and a "Suspended Participant".

       dd.     "Participant Account Value" means that portion of a Participant's Total Account Value which consists of a Participant's Employee Contributions and interest

thereon, Employee Elected Company Contributions and interest, earnings and·changes in market value thereon, and Rollover Contributions and interest thereon.

ee.    "Pay" or "Base Pay" means an Employee's base salary or wage, including sales incentive earnings if and when paid, but excluding bonus, premium or shift differential, overtime, severance payments, and any other forms of additional compensation .

ff.    "Plan" means this Northern Telecom Inc. Employee Thrift/Savings Plan.

gg.    "Plan Administrator" means NTI.

hh.    "Plan Year" means each twelve (12) month period which begins on January 1 of each calendar year.

ii.    "Price" means, with respect to Common Shares issued by Northern Telecom Limited and purchased by the Trustee from Northern Telecom Limited in a particular Trading Period, the Formula Price;

"Price" means, with respect to Common Shares purchased by the Trustee on the open market or by private transaction in a particular Trading Period or with respect to Common Shares sold by the Trustee in a particular Trading Period, the weighted average, excluding transaction expenses, of the prices paid for the Common Shares purchased by the Trustee or the prices obtained for the Common Shares sold by the Trustee during the particular Trading Period expressed in United States dollars;

"Price" means, with respect to any given Trading Period during which the Trustee has neither bought nor sold any Common Shares, the Formula Price .

jj.    "Rollover Contribution" means the value of a Special Individual Retirement Account ( "Special IRA" ) established by an Employee in accordance with the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, and Section 408 (d) of the Internal Revenue Code, as amended, and which the Participant places in the Fund in accordance with ERISA or the value of a rollover directly from another qualified plan. Notwithstanding the previous sentence, a Rollover Contribution shall not include Special IRA'S or rollovers directly from another qualified plan if any amount in such Special IRA or proposed to be rolled over from another qualified plan consists of amounts, in whole or in part, previously rolled over from a plan described in Section 205(b) (1) (A) or (B) of ERISA, as amended .

kk.    "Special IRA" means a separate Individual Retirement Account, as defined in Section 408 of the Internal Revenue Code of 1986, which had been created by a Participant to receive the entire amount paid or distributed from the employees' trust fund of a qualified plan and which contains no other funds except such payment or distribution and any accumulated earnings thereon.

ll.    "Suspended Participant" means a Participant who either is no longer receiving Base Pay from the Company and therefore is unable to satisfy the requirements of Section 2.2 ., or prior to January 1, 1985 exercised the withdrawal option described in Section 7.1. and has not yet met the requirements to again become an Active Participant pursuant to Section 7.2., or has temporarily suspended the Employee Elected Company Contribution to the Fund, or is transferred to an Affiliated Company which is not a Company or to a unit of a Company which is not participating in the Plan, or has reached an applicable contribution limitation specified in Article 11.

ll (i).    "Testing Compensation" means Pay and any other form of remuneration from a Company for services performed including bonus, premium, shift differential, overtime, severance payments and any other forms of additional compensation.

mm.    "Total Account Value" consists of the Participant Account Value (which includes any Employee Elected Company Contribution) and the Company Contributions Account Value and means the entire balance in a Participant's account.

nn.    "Trading Period" means the five business days preceding the final business day of a calendar month.

oo.    "Trust Agreement" means the agreement by which Plan funds are held by the Trustee and which covers the rights and duties of the Trustee with respect to such funds.

pp.    "Trustee" means the trustee appointed by the Board upon the recommendation of the Committee to oversee the management of the Fund, maintenance of accounts, and payment of benefits under the Plan.

qq.    "Vested" means having a nonforfeitable right to an accrued value, even though the right to receive distribution of that value may be deferred until some time in the future under the terms and conditions of the Plan.

rr.    "Vested Stock Account" means an account aggregating the Common Shares inventoried in the Company Contribution Account Value which have Vested and the Common Shares inventoried in the Participant Account Value.

ss.    "Year of Service" means, with respect to an Employee, a Plan Year in which that Employee has at least one-thousand (1,000) Hours of Service. For purposes of determining eligibility for Plan membership pursuant to Section 2.1.a., the initial eligibility computation period shall be the period of twelve (12) consecutive months beginning with the appropriate Employee's employment commencement date. For purposes of determining eligibility for Plan membership pursuant to Section 2.1.c., the initial eligibility computation period shall be the period of six (6) consecutive months beginning with the appropriate Employee's employment commencement date, and 500 Hours of Service shall be considered a Year of Service.

1.3    <u>Use of Pronouns</u>

The masculine pronoun whenever used in this Plan shall include the feminine gender.

ARTICLE 2

PARTICIPATION

2.1.   Eligibility for Plan Membership

The following are eligible for Plan membership:

a.      Any Employee who on July 1, 1979, has completed at least one (1) Year of Service. Such an Employee shall be eligible to become an Active Participant of the Plan on the Effective Date or on the first day of any Fiscal Month thereafter.

b.      An Employee who is not eligible on July 1, 1979 shall be eligible to become an Active Participant on the first day of any Fiscal Month following his or her completion of one (1) Year of Service.

c.      An Employee who is not otherwise eligible on January 1, 1982 shall be eligible to become an Active Participant on the later of January 1, 1982 or the first day of any Fiscal Month thereafter after having completed 6 months of Employment Service and 500 Hours of Service.

d.      An Employee who is not otherwise eligible on January 1, 1986 shall be eligible to become an Active Participant on the later of January 1, 1986 or the first day of any fiscal month beginning after the Employee's employment commencement date.

e.      An Employee who becomes eligible as the result of a Company arranged transfer from an Affiliated Company shall be eligible to participate on the first day of any Fiscal Month following the effective date of transfer, provided the Employee is otherwise eligible pursuant to Section 2.1.b. or 2.1.c. when service with the Affiliated Company is considered.

f.      Any Employee whose status has changed from an Active Participant to a Suspended Participant, as described in Section 2.3.a., may return to the status of Active Participant, as provided in Section 2.2.a., without regard to the service requirement described in Section 2.1.b. or 2.1.c.

2.2.   Active Participation in the Plan

a.      An Employee may become an Active Participant in the Plan on the first day of a pay period which occurs on or after the date the Employee becomes eligible to become an Active Participant, provided that the Employee completes and submits in due time the necessary forms which, among other things, authorize the Company to make the proper Employee Elected Company Contribution to the Plan.

- 8 -

b.      Any forms relating to the Plan and the administration thereof shall be designed and provided by the Plan Administrator and may be modified from time to time.

2.3.    Termination of Active Participation in the Plan

a.      An Active Participant shall become a Suspended Participant in the Plan on the date on which any of the following occur:

(1)      Termination of employment by the Company;
(2)      Termination of employment by the Employee;
(3)      Layoff;
(4)      Approved leave-of-absence, whether for medical or other than medical reasons;
(5)      Various forms of withdrawal as may be permitted by the Plan of any or all monies or Common Shares of a Participant included within the Participant's Total Account Value to the extent specified in Article 7;
(6)      Death;
(7)      Qualified retirement of any type under the rules of a qualified retirement plan of the Company and/or a qualified retirement plan in which the Company participates;
(8)      Termination of active participation (i) at the option of the Participant by virtue of suspending all contributions or (ii) by virtue of a Company arranged transfer o an employer which is a member of the Affiliated Group but which is not a Company or (iii) transfer to a position within a Company which does not qualify the Participant as an Employee.

b.      Unless a Suspended Participant again becomes an Active Participant, distribution of his Total Account Value shall be made (subject to Article 6, Vesting), by the Trustee as follows:

(1)      In the event of any layoff or termination of employment, whether at Participant or Company option, distribution shall be made not later than the end of the Fiscal Quarter following the Fiscal Quarter in which layoff or termination occurs; provided, that in the event the Vested portion of the Participant's Total Account Value is more than $3,500 on the date the amount to be distributed is calculated, then such distribution shall not be made without the Participant's consent.

(2)      In the event of an approved leave of absence, whether for medical or non-medical reasons, distribution shall be made upon the earlier of:

(a)      the end of the Fiscal Quarter following the Fiscal Quarter in which the approved leave of absence expires if the Suspended Participant does not then return to work as an Employee; or
(b)      one (1) year after the beginning of the leave of absence occurs, .ovided, that if the Vested portion of the Participant's Total Account Value is more than

- 9 -

$3,500 on the date the amount to be distributed is calculated, then such distribution shall not be made without the Participant's consent.

(3)     In the event of withdrawal of any or all of a Participant's Employee Contributions, such Participant remains a Suspended Participant in accordance with Article 7.

(4)     In the event of death, distribution shall be made no later than the end of the Fiscal Quarter following the Fiscal Quarter in which the Plan Administrator receives notice of such death.

(5)     In the event of retirement per Section 2.3.a.(7), distribution shall be made in accordance with the option exercised while a Participant, pursuant to Article 8, and in no event later than sixty (60) days after the close of the Plan Year in which the Participant attained age sixty-five (65), or, if later, the close of the Plan Year in which the Participant terminated employment with the Company. Notwithstanding the foregoing sentence, distribution to a Participant shall commence not later than April 1 of the calendar year following the calendar year in which such Participant attains age seventy and one-half (70 1/2).

(6)     In the event an Active Participant becomes a Suspended Participant through the operation of Subsection 2.3.a.(5) or (8), such Participant shall remain in suspense until one of the events described in Subsection 2.3.a.(1), (2), (3), (4), (6) or (7) occurs, at which time the applicable provision of this Section 2.3.b. shall govern.

ARTICLE 3

THE FUND

3.1.  Plan Fund

The accumulation of money in the Plan and the payment of benefits therefrom shall be provided for through the medium of a Fund held by a Trustee under the provisions of a Trust Agreement, pursuant to and in accordance with the provisions of this document.

3.2.  Constituency of the Fund

The contributions of the Company and the Participants to the Fund, including Rollover Contributions, together with any income, gains, profits, distributions and losses, shall constitute the entire Fund.

ARTICLE 4

CONTRIBUTIONS

4.1.    <u>Participant Contributions</u>

a.    A Participant may elect to have an Employee Elected Company Contribution contributed to the Fund in accordance with the following provisions:

(1)    A Participant may elect to have any whole percentage from 2% to 12%, inclusive, of the Participant's Base Pay contributed as his Employee Elected Company Contribution, subject to the total dollar limitations on Employee Elected Company Contributions specified in Article 11.

(2)    A Participant may elect to have a portion of his Employee Elected Company Contribution invested in one or more of the following investment options ("Investment Option(s)"); provided, however, that the portion of a Participant's Employee Elected Company Contribution elected by a Participant to be invested in a particular Investment Option must be designated in increments of 25% (i.e. 0%, 25%, 50%, 75% or 100%):

       (i)    Guaranteed Interest Contract deposit;
      (ii)    Purchase of Common Shares; and/or
    (iii)    Investment in the Equity Fund.

The total of the percentages of a Participant's Employee Elected Company Contribution (in increments of 25%) elected to be invested in one or more of the above stated Investment Options shall equal 100% of such Participant's Employee Elected Company Contribution.

(3)    A Participant's election hereunder with respect to his Employee Elected Company Contribution shall be effective as of the first day of the Fiscal Month immediately following such election, provided proper and timely notice, as determined by the Plan Administrator, is given by the Participant. In the case of an Employee who was not previously a Participant, or who is a Suspended Participant, the election shall be effective on the date participation in the Plan begins or resumes.

(4)    A Participant who fails to notify the Plan Administrator of his election hereunder shall be presumed to have elected to have his entire Employee Elected Company Contribution deposited in the Guaranteed Interest Contract Investment Option.

(5)    A Participant may elect to change his previously elected percentage investment of his Employee Elected Company Contribution in any of the Investment Options as of the first day of the Fiscal Month immediately following such election,

provided proper and timely notice of the change, as determined by the Plan Administrator, is given by the Participant to the Plan, and further provided that any such change shall be in increments of 25% unless otherwise determined by the Plan Administrator in a consistent and non-discriminatory manner.

(6)    A Participant's election or change of election as to the percentage investment of his Employee Elected Company Contribution in any of the Investment Options shall apply to future contributions only, effective as provided herein, and shall not operate to alter the Guaranteed Interest Contract, Equity Fund or Common Share balances in the Participant Account Value which are attributable to previously made Employee Elected Company Contributions.

b.    An Active Participant may elect to suspend, increase or decrease future Employee Elected Company Contributions within the allowable percentage limitations of Section 4.1.a. effective as of the first day of the Fiscal Quarter immediately following such election or sooner as determined by the Plan Administrator in a consistent and non-discriminatory manner, provided proper notice of the change, as determined by the Plan Administrator, is given by the Active Participant to the Plan, and subject to the total dollar limitations on Employee Elected Company Contributions specified in Article 11.

The portion of an Active Participant's Base Pay Deferred Amount that such Participant does not elect to have contributed to the Fund as an Employee Elected Company Contribution (or the entire amount of such Base Pay Deferred Amount during any period of suspension) shall be paid to the Participant in cash as part of the Participant's Base Pay.

c.    When a Participant's Employee Elected Company Contributions made in a Plan Year reach the limitation specified in Article 11, no further Employee Elected Company Contributions shall be made on behalf of such Participant during the balance of such Plan Year. Such Participant's Employee Elected Company Contributions shall automatically resume as of the first day of the immediately following Plan Year unless the Participant elects otherwise pursuant to Section 4.1.b.

d.    The Plan shall accept eligible Rollover Contributions from an Active Participant. Rollover Contributions shall be deposited in the Guaranteed Interest Contract Investment Option unless such Active Participant elects to deposit such Rollover Contribution into another Investment Option.

e.    A Participant may elect to transfer the entire portion of his Employee Elected Company Contribution invested in a particular Investment Option to another Investment Option in accordance with the provisions of Section 4.4.

f.    If the Plan Administrator determines that the Plan may not pass certain discrimination tests imposed by Section 401 of the Code caused by the level of contributions made by Active Participants who are Highly Compensated Employees, the

- 13 -

Plan Administrator may either discontinue accepting Employee Elected Company Contributions from such highly compensated employees and/or return a portion of previously contributed Employee Elected Company Contributions made by such highly compensated employees in an amount sufficient to allow the Plan to pass the discrimination tests imposed by Code as determined necessary by the Plan Administrator. Such highly compensated employees' Employee Elected Company Contributions shall automatically resume as of the first day of the immediately following Plan Year unless such affected Participants elect otherwise.

4.2.    Company Contributions

        a.    Subject to the rights of the Company per Article 10 and Section 4.2.b. hereof, and subject to Section 4.2.e. regarding certain employees of the Cook Electric Division, the Company shall contribute on behalf of each Active Participant an amount which is fifty percent (50%) of each Participant's Employee Elected Company Contribution, provided, that the Company Contribution shall not exceed three percent (3%) of that Participant's Base Pay. Effective April 1, 1991, the percentage fifty percent (50%) set forth in this Section 4.2.a. shall be replaced by the percentage sixty percent (60%) and the percentage three percent (3%) set forth in this Section 4.2.a. shall be replaced by the percentage three and six-tenths percent (3.6%). A Participant may elect to have his Company Contribution contributed to the Fund in accordance with the following provisions:

        (1)    A Participant may elect to have 100% of his Company Contribution made either in the form of cash deposited in the Guaranteed Interest Contract Investment Option or in Common Shares. A Participant who fails to notify the Plan of his election hereunder shall be presumed to have elected to have 100% of his Company Contribution made in the form of cash deposited in the Guaranteed Interest Contract Investment Option.

        (2)    A Participant's election with respect to the form of his Company Contribution shall be effective as of the first day of the Fiscal Quarter immediately following such election or sooner as  determined by the Plan Administrator in a consistent and non-discriminatory manner, provided that proper notice of the election, as determined by the Plan Administrator, is given by the Participant to the Plan. In the case of an Employee who was not previously a Participant or who is a Suspended Participant, such election shall be effective on the date participation in the Plan begins or resumes, subject to the foregoing notice requirements.

        (3)    A Participant may elect to change the form of his Company Contribution from 100% cash deposited in the Guaranteed Interest Contract Investment Option to 100% Common Shares, or vice versa, such election to be effective as of the first day of the Fiscal Month immediately following such election, provided proper notice of the change, as determined by the Plan Administrator, is given by the Participant to the Plan.

b.       A Participant's election or change of election as to the form of his Company Contribution shall apply to future contributions only, effective as provided herein, and shall not operate to alter the Guaranteed Interest Contract or Common Share balances in the Company Contributions Account Value which are attributable to previously made Company Contributions.

c.       After Company Contributions become Vested in accordance with Article 6, a Participant may elect to transfer his Vested Company Contributions from one Investment Option to another in accordance with the provisions of Section 4.4.

d.       All contributions are made subject to deductibility and continued qualification of the Plan for federal income tax purposes.

e.       Employees of Cook Electric Division who have elected to participate in the Cook Electric Company Salaried Employees Pension Plan shall not be eligible to receive the Company Contribution as provided in Section 4.2.a. However, these Employees shall be allowed to participate in the Plan subject to all other Plan provisions.

4.3.    Amounts Contributed in Error By the Company

a.       Company Contributions made due to mistake of fact shall be returned to the Company within one (1) year of the date such Company Contributions were made.

b.       If the Internal Revenue Service rescinds the status of the Plan as "Qualified", amounts of Company Contributions made prior to the date the unfavorable ruling is made by the Internal Revenue Service shall be returned within one (1) year of the date such unfavorable ruling is made.

c.       If the Internal Revenue Service disallows deductibility of any amount of any Company Contributions, such disallowed amount shall be returned to the Company within one (1) year of the date of disallowance.

d.       If, for any reason or mistake, aggregate Company Contributions for any fiscal year (as such "fiscal year" may be defined by the NTI Vice President, Finance for purposes of the financial reporting and administration of NTI) exceed the amount of Company Contributions properly payable under the terms and conditions of this Plan or the rules and regulations of the Internal Revenue Service, and such excess is not returned to the Company per Section 4.3., it shall be allocated to Participants in accordance with their respective, aggregate Company Contributions for the applicable period.

4.4.    Account Transfers

a.       Until March 31, 1991, the provisions set forth in Section 4.4.b. shall be in full e and effect. On April 1, 1991, the provisions set forth in Section 4.4.c. shall be in full

force and effect and the provisions of 4.4.b. shall be null and void.

b.      Provided proper notice, as determined by the Plan Administrator, is given by a Participant to the Plan, a Participant may elect, effective as of the first day of the last month of the Fiscal Quarter immediately following such election, to reallocate or transfer the total portion of his Participant Account Value and Vested Company Contributions Account Value invested at the time of election in a particular Investment Option to any other Investment Option in increments of 25% of such total portion. Only one (1) such reallocation or transfer among the Investment Options is permitted in any Fiscal Quarter. Such reallocation or transfer shall be executed as of the last day of the month in which the election is effective.

c.      Provided proper and timely notice, as determined by the Plan Administrator, is given by a Participant to the Plan, a Participant may elect to reallocate or transfer the total portion of his Participant Account Value and Vested Company Contributions Account Value invested at the time of election in a particular Investment Option to any other Investment Option in increments of 25% of such total portion; provided, however, that immediately after such reallocation or transfer the Participant's Participant Account Value and Vested Company Contributions Account Value is invested among the Investment Options in which contributions are invested in increments of 25%. Transfers and reallocations in percentages of less than 25% shall be permitted as determined by the Plan Administrator in a consistent and non-discriminatory manner. Only one (1) such reallocation or transfer among the Investment Options shall be permitted in any Fiscal Quarter; provided, however, additional reallocations or transfers shall be permitted when administratively feasible as determined in the sole discretion of the Plan Administrator; Such reallocation or transfer shall be executed as of the last day of the month in which the election is made. If notice is not received in time to execute the transfer on the last day of the month in which the election is made, the reallocation or transfer shall be executed as of the last day of the following month.

d.      With respect to amounts invested in the Guaranteed Interest Option prior to January 1, 1989, a Participant may elect, when a Guaranteed Interest Contract(s) matures, to (i) have his Participant Account Value and Vested Company Contribution Account Value held in such maturing Guaranteed Interest Contract(s) reinvested in one or more of the Investment Options in increments of 25%, and (ii) have his unvested Company Contribution Account Value held in such maturing Guaranteed Interest Contract(s) reinvested in either the Guaranteed Interest Contract Investment Option or the Common Shares Investment Option, or both (but not in the Equity Fund Investment Option), in increments of 25%. A Participant who fails to make such election shall be presumed to have elected to have his Participant Account Value and the Vested and unvested Company Contribution Account Value held in such maturing Guaranteed Interest Contract(s) reinvested in the Guaranteed Interest Contract Investment Option.

4.5.   Valuation of Common Shares

- 16 -

a.     Whenever Common Shares in a Participant's Vested Stock Account are sold in accordance with the provisions of the Plan, such Participant's Total Account Value shall be credited as follows:

(i)     In the case of an Emergency Hardship Withdrawal, with the value calculated using the Price established with respect to the Trading Period preceding the calendar month in which the withdrawal is effective; or

(ii)     In the case of any other withdrawal or distribution, with the value calculated using the Price established with respect to the Trading Period preceding the Monthly Distribution Date on which the withdrawal or distribution is effective.

b.     In the event of a Participant's election to transfer the value of his Vested Stock Account to another Investment Option, as provided in Section 4.4., the value of such Participant's Vested Stock Account to be so transferred shall be calculated using the Price established with respect to the Trading Period immediately following the date on which the transfer is effective.

c.     The price of Common Shares acquired for accounts under the Plan shall be the Price at which they are acquired.

4.6.    Valuation of Guaranteed Interest Contract Investments

Whenever a Participant's Vested Guaranteed Interest Contract Investment Option is to be withdrawn or distributed in accordance with the provisions of the Plan, such Investment Option shall be valued in cash as of the Monthly Distribution Date on which such withdrawal or distribution is effective. Whenever a Participant's Guaranteed Interest Contract Investment Option is to be transferred in accordance with Section 4.4, such Investment Option shall be valued in cash as of the last business day of the month in which the transfer was effective.

4.7.    Valuation of Equity Fund Investment

Whenever a Participant's Equity Fund Investment Option is to be withdrawn or distributed in accordance with the provisions of the Plan, such Investment Option shall be valued in cash as of the Monthly Distribution Date on which such withdrawal or distribution is effective. Whenever a Participant's Equity Fund investment is to be transferred in accordance with Section 4.4, such investment shall be valued in cash as of the last day of the month in which the transfer was effective.

## ARTICLE 5

## ALLOCATION OF CONTRIBUTIONS AND EARNINGS

5.1.   Deposit of Contributions in the Fund

All contributions shall be deposited in the Fund. The Trustee shall invest the contributions on behalf of Participants in accordance with the terms of the Plan and the Trust Agreement.

5.2.   Separate Participant Accounts

An account shall be maintained on behalf of each Participant. A reporting of a Participant's account and the activity thereunder shall be made to each Participant not more often than quarterly nor less often than annually.

5.3.   Report to Participants

A reporting of a Participant's account shall contain the following information:

      a.     Participant Employee Contributions;
      b.     Earnings on Participant Employee Contributions;
      c.     Participant Rollover Contributions;
      d.     Earnings on Participant Rollover Contributions;
      e.     Employee Elected Company Contributions;
      f.     Earnings on Employee Elected Company Contributions;
      g.     Company Contributions;
      h.     Earnings on Company Contributions;
      i.     Vested balances;
      j.     Amounts withdrawn.

5.4.   Allocation of Earnings

The earnings of the Fund shall be allocated to the Participant Account Value and the Company Contributions Account Value of all Active Participants and Suspended Participants, in proportion to the balance of such accounts, and in proportion to the balance of each element constituting such accounts, as of the last day of the Plan Year, or more frequently as determined by the Plan Administrator.

5.5.   Definition of "Earnings"

For purposes of this Article 5, the term "earnings" shall mean the net gain or loss of the Fund from investments, as reflected by interest payments, dividends, and realized and unrealized gains and losses on securities and transaction costs.

- 18 -

ARTICLE 6

VESTING

6.1.    Vesting of Participant Account Value

A Participant is always Vested in one hundred percent (100%) of his Participant Account
Value and the value of any Rollover Contributions and the earnings thereon.

6.2.    Vesting of Company Contributions Account Value

     a.    A Participant who has less than five (5) Years of Service becomes Vested in
the Company Contributions Account Value made with respect to each calendar year on the
December 31 which falls at the end of the second full calendar year following the Plan Year
for which such contributions were made, unless such Participant's Company
Contributions Account Value is forfeited prior to such date pursuant to Section 6.4.  A
Participant who has five (5) or more Years of Service shall be immediately Vested in all
Company Contributions made to his Company Contributions Account Value.

     b.    Participants with less than five (5) Years of Employment whose employment
is terminated solely as the result of a designated "divestiture" or "plant closing" shall
become Vested in the Company Contributions Account Value. Such Participants shall only
become Vested when and if a "divestiture" or "plant closing" occurs and is designated as
such by the Board, the President of NTI, the Executive Vice-President, Finance and
Administration of NTI, or the Vice-President, Human Resources of NTI and such
designation is set forth on Appendix A. Any such designation shall be made in the sole
and absolute discretion of the Board or such officer. Upon the making of any such
designation, the Plan Administrator shall prepare a list with the name of each Participant
who is eligible to become Vested as aforementioned, and only those Participants on such
list shall be eligible to become Vested pursuant to this Section 6.2.b.

6.3.    Vesting of Company Contributions Account Value on Certain Events

     In the event of:

     a.    Total and permanent disability; or
     b.    Death;

A Participant shall be Vested in one hundred percent (100%) of his Company
Contributions Account Value.

6.4.    Distribution of Vested Amounts; Forfeitures

. the event of termination for any reason other than as stated in Section 6.3., the

- 19 -

Company Contributions Account Value in which a Participant is Vested pursuant to Section 6.2. shall be distributed in accordance with Section 2.3.

    a.    The non-Vested portion of a Participant's Total Account Value shall be forfeited, as of December 31 of the Plan Year in which he terminates, provided that such Participant is not re-employed in the same Plan Year as the Plan Year of termination, by: (a) a Company, (b) any other employer which is a member of a controlled group of corporations, or of a group of companies under common control (as described in Sections 414 and 415 of the Internal Revenue Code) and of which any Company is a member, or (c) any Affiliated Company.

    b.    A Participant may reverse the forfeiture described in Subsection a. if:

    (1)    Such Participant is re-employed, prior to the fifth anniversary of his termination, by: (a) a Company, (b) any other employer which is a member of a controlled group of corporations, or a group of companies under common control (as described in Sections 414 and 415 of the Code) and of which any Company is a member, or (c) any Affiliated Company, and

    (2)    Within five (5) years of the date of such reemployment, such Participant repays to the Fund the full amount of all distributions received from the Participant's account in accordance with Section 2.3.

    c.    Notwithstanding the provisions of Subsection b., in the event of termination in connection with a leave of absence from work beginning on or after January 1, 1985, which is due to pregnancy or, with respect to either a male or a female Participant, birth of a child, placement of a child in connection with the child's adoption by a Participant, or post-natal care of a child, then a Participant may reverse the forfeiture described in Subsection a. if:

    (1)    Such Participant is re-employed, prior to the sixth anniversary of his termination, by: (a) a Company, (b) any other employer which is a member of a controlled group of corporations, or of a group of companies under common control (as described in Sections 414 and 415 of the Internal Revenue Code) and of which any Company is a member, or (c) any Affiliated Company, and

    (2)    Within five (5) years of the date of such reemployment, such Participant repays to the Fund the full amount of all distributions received from such Participant's account in accordance with Section 2.3; provided, that in no event shall such repayment be required to be made earlier than the end of a period of five (5) consecutive one-year breaks in service.

    d.    Notwithstanding Subsection a. above, in the event of termination due to layoff (as determined by the Plan Administrator) occurring in the fourth quarter of a calendar year, a Participant so terminated who has less than five (5) years of Employment

- 20 -

Service may elect to have his Total Account Value remain in the Plan through December 31 of the Plan Year in which he was terminated and the Company Contribution Account Value which would Vest as of December 31 of such year shall so Vest and shall be distributed to such Participant as described at the outset of this Section 6.4. Such Participant shall not be credited with Employment Service from the time he is subject to layoff through December 31 of such year.

## 6.5.    Disposition of Forfeitures

All forfeitures resulting from the applicability of Section 6.4. shall remain in the Fund and in a forfeiture account which shall reduce future Company Contributions by the amount of such forfeitures.

## 6.6.    Vesting of Participants Employed by NYNEX Meridian Systems

To the extent an Employee was, on May 31, 1990, a participant in the NYNEX Corporation Savings Plan for Salaried Employees or the NYNEX Corporation Savings and Security Plan (Non-Salaried Employees) (each "a NYNEX Plan") as in effect on May 31, 1990, and such Employee became an employee of NYNEX Meridian Systems on June 1, 1990, such Employee's Years of Service under the Plan shall include service recognized under either NYNEX Plan.

ARTICLE 7

WITHDRAWAL OF ACCOUNT VALUES WHILE A PARTICIPANT

7.1.   Employee Contribution Withdrawals

Prior to January 1, 1983, Active Participants were required to make Employee
Contributions to this Plan. After December 31, 1982 no Employee Contributions shall be
made to this Plan.

a.      A Participant may elect to withdraw any part or all, but not less than One
Hundred Dollars ($100), of the Employee Contributions plus interest not previously
withdrawn, and of the Company Contributions Account Value in which he is Vested as of
the last day of any calendar month, except for that portion of such Vested interest which
temporarily is inaccessible to such Participant in accordance with federal law, provided the
Plan Administrator receives proper notification to that effect upon-the Plan
Administrator's appropriate form, signed by the Participant.

b.      If Common Shares are included in the Company Contributions Account
Value and are less than fifty (50) Common Shares, the Vested Stock Account value
distribution shall be made in cash. If fifty (50) Common Shares or more are in the
Company Contributions Account Value portion of the Vested Stock Account, a Participant
may elect to receive the distribution in either cash or shares, provided at least fifty (50)
Common Shares are being so distributed.

7.2.   Suspension Following Certain Withdrawals

a.      A Participant whose in-service withdrawal election as described in Section
7.1.a. became effective prior to January 1, 1985 shall become a Suspended Participant from
the date that such election took effect until the later of:

(1)     The first day of any Fiscal Month which begins six (6) months after the
date the withdrawal election takes effect; or

(2)     The beginning of any Fiscal Month after which the Plan Administrator
has received proper written notice from such Suspended Participant (upon the appropriate
form) that the Participant wishes Employee Elected Company Contributions to be made to
the Trust, at which time, a Suspended Participant shall again become an Active Participant.

b.      If reinstatement is not elected as permitted in this Section, a Participant shall
be treated as though he had elected to discontinue his Employee Elected Company
Contribution.

c.      No suspension of participation shall be imposed with respect to withdrawals
which take effect after December 31, 1984.

- 22 -

7.3.   Withdrawal of Certain Vested Company Contributions Account Values

A Participant may elect to withdraw the portion of the Company Contributions Account Value in which he becomes Vested in accordance with Section 7.1. to the extent such Company Contributions Account Value represents Company Contributions made before January 1, 1983 and subsequent Company Contributions thereafter, with respect to the calendar year which ended at least two (2) full calendar years prior to the December 31 preceding such Participant's election to withdraw.

7.4.   Withdrawal for Reasons of Financial Hardship

a.   A Participant may request a distribution for reason of financial hardship. Such request shall be deemed to be "for reason of financial hardship" if the distribution is both made on account of an immediate and heavy financial need of the Participant and is necessary to satisfy such financial need. A Participant desiring such distribution shall present to the Plan Administrator sufficient facts which shall permit the Plan Administrator to determine, in a uniform and nondiscriminatory manner, the existence of a financial hardship, the amount which is necessary to meet the hardship, and the fact that funds are not reasonably available from other resources of the Participant. Such a withdrawal shall be made in the following order of priority: first, Employee Contributions and interest thereon; Vested Company Contributions and interest and earnings thereon; Rollover Contributions and interest thereon; and, finally, Employee Elected Company Contributions (but not interest and earnings thereon).

b.   All distributions made for reason of financial hardship shall be made in cash.

c.   If the Plan Administrator finds that the nature of the financial hardship is such that a Participant could not have foreseen its occurrence prior to the most recent administrative deadline for requesting an in-service withdrawal and the delay of payment of the withdrawal under prevailing administrative procedures would fail to ease such financial hardship, then the Plan Administrator may declare the Participant's request to be one for an emergency financial hardship ("Emergency Financial Hardship") and permit the withdrawal to take effect as soon as practicable.

7.5.   Effect of Hardship Withdrawals

The election of the option described in Section 7.4. shall not affect a Participant's status as an Active Participant.

7.6.   Company Contributions Not Withdrawn

The Company Contributions Account Value in which a Participant becomes Vested and which is not withdrawn by a Participant in accordance with this Article 7 shall remain in the Participant's account in the Fund and shall be distributed to the Participant in accordance with the provisions of Article 8.

- 23 -

7.7.    Effective Date of Withdrawal

a.    The effective date of a withdrawal made in accordance with the provisions of this Article 7 (unless it is an Emergency Hardship Withdrawal) shall be the Monthly Distribution Date next following the date on which the Plan Administrator completes any necessary valuations and approves such withdrawal.

b.    The effective date of an Emergency Hardship Withdrawal made in accordance with the provisions of this Article 7 shall be the date selected at the discretion of the Plan Administrator, but in no event later than the Monthly Distribution Date on which a withdrawal would have been effective if no emergency had existed.

7.8.    Qualified Domestic Relations Orders

In the event the Plan Administrator receives a "Qualified Domestic Relations Order" (as that term is defined in Section 206(d)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA")) which assigns all or a portion of a Participant's Total Account Value to an "Alternate Payee" (as that term is defined in Section 206(d)(3) of ERISA), the Plan Administrator shall, if the Qualified Domestic Relations Order so provides or upon proper application made by or on behalf of the Alternate Payee, distribute the entire interest of the Alternate Payee in the Participant's Total Account Value to the Alternate Payee.

# ARTICLE 8

## PAYMENT OF BENEFITS

8.1.   <u>Form of Payments</u>

a.    A Suspended Participant who falls within Subsections (1), (2), (3) or (4) of Section 2.3.a., or the Beneficiary of a Participant whose death places the Participant in the category of Suspended Participant under Subsection 2.3.a.(6), shall automatically receive a lump sum distribution of the Total Account Value to which he or she is entitled in accordance with the provisions of Section 2.3.b. In the event of the death of a Participant who had been married for one year at the time of death, such Participant's spouse shall be deemed to be such Participant's Beneficiary unless the Participant had previously filed with the Plan Administrator either a waiver of the spouse's right to a death benefit that is consented to by the Participant's spouse or an affidavit that the spouse cannot be located. Such consent is irrevocable, must be witnessed by a Plan representative or acknowledged by a notary public, and must indicate the effect of the Participant's election. In the case of a benefit payable after death, the consent may be made after the Participant's death. Such waiver or affidavit shall be in a manner acceptable to the Plan Administrator and/or in compliance with any federal laws, rules or regulations which provide rights to the spouse and/or protect any such rights which may exist.

b.    A Suspended Participant who retires from the Company in accordance with Section 2.3.a.(7) may request, with the consent of his spouse, if applicable, in the form required by Section 8.1.a., in advance of his retirement date, that the Trustee purchase with all or a portion of his Total Account Value an annuity which has, as its present .value, the portion of his Total Account Value utilized to purchase such annuity. Such annuity shall be purchased from a source which does not consider the gender of the Participant and/or the Participant's spouse in calculating the value or cost of the annuity. Such annuity shall take one of the following forms of payout:

(1)    Payment monthly for a specified number of calendar months, not exceeding the Participant's life expectancy, payable to the Participant or the Participant's Beneficiary if the Participant does not survive the specified number of calendar months. If the Participant is married and names his spouse as Beneficiary, the specified number of calendar months may exceed the Participant's life expectancy so long as it does not exceed the joint life expectancy of the Participant and the Participant's spouse.

(2)    Payment monthly for the life of the Participant ("Life Annuity").

(3)    If the Participant is married, payment monthly for the life of the Participant followed by payment monthly (in amounts equal to not less than 50% nor more than 100% of the Participant's monthly payment) to the Participant's spouse for the life of the spouse in the event the Participant predeceases the spouse ("Joint and Survivor Annuity").

- 25 -

c.    A Suspended Participant who retires from the Company in accordance with Section 2.3.a.(7) may request, with the consent of the Participant's spouse, if applicable, in the form required by Section 8.1.a. in advance of the Participant's retirement date that all or a portion of his Total Account Value be payable to him in installment payments which shall be an income payable in substantially equal monthly payments. Such installments shall be of such amount and on such a schedule that, at commencement, they are projected to extend no longer than the longer of: (i) the Participant's life expectancy as determined at the commencement of the distribution or (ii) the life expectancy of the Participant and his or her spouse if such spouse is the Participant's designated beneficiary, as determined at the commencement of the distribution. In all events, such installments shall extend for only such period that the present value of the payments expected thereunder to the Participant at their commencement exceeds 50% of the then present value of the total payments anticipated to the Participant and his beneficiaries thereunder. The Trustee shall adjust payments to the Participant or another pursuant to this subsection to reflect the Earnings allocated to the Participant's Account subsequent to the commencement of payments, as determined by the Plan Administrator.

8.2.    <u>Facility of Payment</u>

a.    If the Plan Administrator finds that any person to whom a benefit is payable from the Fund is unable to care for his affairs because of mental incapacity, illness, or accident, any payment due may be paid only to a duly appointed guardian, committee, conservator, or other legal representative. Any such payments shall be a complete discharge of any liability of the Fund to the Company under the Plan therefor.

b.    Whenever benefits become payable to a Participant's estate, the Fund shall make a single-sum cash distribution to the estate in lieu of periodic payments.

c.    In the case of any distribution pursuant to Article 8, if Common Shares are included in the Participant Account Value or the Company Contributions Account Value and are less than fifty (50) Common Shares, the Vested Stock Account value distribution shall be made in cash. If fifty (50) Common Shares or more are in the Vested Stock Account, the Participant may elect to receive the distribution in cash or shares, provided at least fifty (50) Common Shares are being so distributed.

8.3.    <u>Effective Date of Distribution</u>

The effective date of a distribution made in accordance with the provisions of this Article 8 shall be the Monthly Distribution Date next following the date on which the Plan Administrator completes any necessary valuations and approves such distribution.

- 26 -

ARTICLE 9

ADMINISTRATION

9.1.    Form of Trust

The Board and Trustee shall determine the form and terms of the Trust Agreement and shall modify the Trust Agreement from time to time to accomplish the purposes of this Plan. The Trust Agreement shall provide that the Board may remove any Trustee and appoint any successor.

9.2.    Plan Administrator

a.    The Plan shall be administered by the Plan Administrator. Any act which the Plan authorizes or requires the Plan Administrator to do may be done by such persons to whom the Plan Administrator delegates authority.

b.    In its relationship with the Trustee, any insurance company or companies or any investment advisor pertaining to any matter or thing included in this Plan, any officer of the Company may sign or execute any document or instrument.

9.3.    Employee Benefits Committee

a.    Certain Plan Administrative duties in connection with appeals (as set forth in Section 9.5) shall be carried out by the Employee Benefits Committee of the Company (the "Committee"). The number of members of the Committee shall be fixed by the Board from time to time. The Board may remove any member of the Committee as it deems appropriate. Names of the current members of the Committee shall be available from the Secretary of the Company. The Committee shall discharge its duties in accordance with the terms of the Plan and all such decisions of the Committee shall be final and binding upon the Company and the members of the Committee. The Committee shall have no power to add to or subtract from or to modify any of the terms of the Plan, nor to change or add to any benefits provided by the Plan. The Employee Benefits Committee and the Plan Administrator shall each have discretionary authority to determine eligibility for benefits and to otherwise construe the terms of the Plan.

b.    Any act which this Plan authorizes or requires the Committee to do may be done at a meeting of the Committee by a majority of the members of the Committee then voting.

c.    The Committee shall appoint a secretary and such other agents and representatives as it may deem advisable (who may, but need not, be members of the Committee) to keep its records and to assist it in doing any other act or thing to be done or performed by the Committee.

- 27 -

d.     The members of the Committee shall serve without compensation for services, but all expenses of the Committee shall be paid by the Company.

9.4.   Fiduciary Duties

a.     The Plan Administrator, the Committee and the Investment Committee (as hereinafter defined) shall each be named fiduciaries, as defined in 402(a)(2) of ERISA, for the Plan. For purposes hereof the Investment Committee shall consist of such individual or individuals as are selected by the Plan Administrator from time to time.

b.     The Plan Administrator shall have the following powers, duties, and responsibilities, which it may retain or delegate in writing among the below mentioned bodies:

(1)     Powers, duties and responsibilities of administration are delegable to another administrator and

(2)     Powers, duties and responsibilities of custody and disbursement are delegable to the Trustee, an administrator, or an insurance company.

c.     The Investment Committee shall have the powers, duties and responsibilities of investment with respect to the Plan unless, and to the extent, such powers, duties and responsibilities are delegated to the Trustee, an investment manager, or an insurance company, by the Investment Committee or the Plan Administrator.

d.     The Plan Administrator may appoint another administrator, an investment advisor, or an insurance company, and review or redelegate the exercise of the powers, duties and responsibilities described in Section 9.4.b. at any time.

e.     The Plan Administrator shall prescribe, in writing, and shall review from time to time, a funding policy which considers both immediate and long range financial goals of the Plan and which satisfies the requirements of Part 3 of Title 1 of ERISA.

f.     The Company shall provide appropriate insurance coverage to cover financial liability for the members of the Committee and may provide such coverage for other fiduciaries of the Plan who are not otherwise appropriately insured.

g.     The Trustee shall, in the course of its management of the Fund, purchase or sell Common Shares, as necessary to implement the provisions of the Plan, during the Trading Period of each calendar month. From time to time but no more frequently than once during each calendar year, the Board shall determine whether Common Shares to be purchased by the Trustee pursuant to the above shall be (i) acquired from Northern Telecom Limited through treasury issues to the Trustee, subject to confirmation from Northern Telecom Limited that Common Shares shall be issued by Northern Telecom

- 28 -

Limited during such period, or (ii) purchased by the Trustee on the open market or by private transaction. The Board shall notify both the Trustee and Northern Telecom Limited forthwith, in writing, of the Board's determination of the manner of purchase of Common Shares to be followed by the Trustee.

1.     In the event the Board determines that the Common Shares to be purchased by the Trustee shall be acquired from Northern Telecom Limited and Northern Telecom Limited agrees to make such treasury issues, the Board shall take all necessary steps to cause such Common Shares to be issued by Northern Telecom Limited on the last business day of each calendar month and delivered to the Trustee as soon as reasonably practicable.

2.     In the event the Board determines that the Common Shares to be purchased by the Trustee shall be purchased by the Trustee on the open market or by private transaction, such Common Shares as may be required to be purchased by the Trustee in each calendar month may be made by the Trustee at such time or times during the Trading Period of each calendar month as the Trustee may determine at its discretion. In such case, it is understood that neither the Board, nor the Plan Administrator, nor the Committee, nor the Investment Committee, nor any Participant or Active Participant, nor any other party shall have any authority or power to direct either (i) the price at which any such Common Shares may be purchased, or (ii) the time or times during any Trading Period when any such Common Shares may be purchased, or (iii) the quantity of any such Common Shares that may be purchased, or (iv) the selection of any brokers or dealers to be utilized in any such purchase of Common Shares, or (v) the sources from which any such Common Shares may be purchased, or (vi) any other aspect of the manner in which any such Common Shares may be purchased.

## 9.5.   Appeals Procedure

All claims for benefits under the Plan shall be directed in writing to the attention of the Committee. If the Committee determines that any individual who has claimed a right to receive benefits under the Plan is not entitled to receive all or any part of the benefits claimed, it shall inform the claimant by certified mail of its determination and the reasons therefor in layman's terms, with specific references to pertinent Plan provisions and with a description of the review procedures set forth below. The claimant may, within sixty (60) days thereafter, submit to the Committee by certified or registered mail such further information as will, in the claimant's opinion, establish his or her right to such benefits. If, upon receipt of this further information, the Committee determines that the claimant is not entitled to the benefits claimed, it shall so advise the claimant by certified mail and give the claimant or the claimant's representative ninety (90) days from the date of such advice to request an opportunity to appear personally before a majority of its members, at the claimant's expense, to submit issues and comments in writing, and to review pertinent documents. The Committee shall render its final decision with the specific reasons therefor, in writing, and shall transmit it to the claimant by certified mail within sixty (60) days of any such appearance.

9.6.    Costs and Expenses

a.    The Company shall be responsible for payment of all administrative expenses, including but not limited to the administrative expenses and counsel fees, if any, of the Trustee, the agreed-upon charges of the insurance company or other financial organization holding funds under the Guaranteed Interest Contract, brokerage fees, investment commissions, stock transfer taxes, taxes on Fund assets for income attributable to such assets, and any other charges and expenses directly incurred in connection with the acquisition or disposition of property for or of the Fund or distribution from the Fund.

(1)    Such costs and expenses shall be paid from the forfeiture account established in accordance with Section 6.5. to the extent funds are available from such account.

(2)    In the event no funds are available in accordance with Subsection (1), then such costs and expenses shall be paid from the general funds of the Company.

b.    Notwithstanding Section 9.5.a, transaction costs, such as brokerage commissions, in connection with any of the Investment Options shall not be paid by the Company. Such transaction costs shall be deducted from earnings on a Participant's applicable Investment Option prior to such earnings being credited to the Participant's Investment Option account.

## ARTICLE 10

## AMENDMENT, DURATION, TERMINATION AND MERGER

### 10.1.  Amendment and Duration of the Plan

The Company hopes and expects to continue the Plan, but necessarily reserves the right to amend the Plan from time to time or terminate the Plan at any time. Amendments shall be made or a termination effected by the Board upon the recommendation of the Committee. Except as provided in Section 4.3., no such action shall operate to recapture for the Company any part of the Fund previously contributed under the Plan, nor, except to the extent necessary to meet the requirements of the Internal Revenue Service or any other governmental authority, affect adversely either the accounts of Participants or the Fund which secures such accounts.

### 10.2.  Termination of the Plan

If the Board terminates the Plan in accordance with Section 10.1., it shall discontinue Company Contributions under Section 4.2. and Employee Elected Company Contributions shall be discontinued. After the date of termination, no Employees may become Participants.  Payments to Participants shall continue pursuant to the provisions of Article 8.

      a.     Upon termination of the Plan, or upon the complete discontinuance of Employer contributions under the Plan, the Company Contributions Account Value with respect to each Participant shall be immediately Vested.

      b.     Upon partial termination of the Plan, the Company Contributions Account Value with respect to each Participant whose participation ceases as a result of the partial termination shall be immediately Vested.

### 10.3.  Merger of the Plan

If the Plan is merged into or consolidated with any other plan, or if the Plan's assets or liabilities are transferred to any other plan, each Participant shall be entitled to receive a benefit immediately after the merger, consolidation, or transfer (if the Plan was then terminated) equal to or greater than the benefit he or she would have received had the Plan been terminated immediately before the merger, consolidation or transfer.

## ARTICLE 11

## LIMITATIONS ON BENEFITS AND CONTRIBUTIONS

### 11.1.  Maximum Annual Addition

a.      In any one Plan Year, the sum of Company Contributions allocated to a Participant's Account, plus the Employee Elected Company Contributions, excluding Rollover Contributions, cannot exceed the lesser of (i) twenty-five percent (25%) of the Participant's total compensation from the Company and (ii) Thirty Thousand Dollars or such other amount determined pursuant to the provisions of the Code.  In addition, in any one Plan Year the total Employee Elected Company Contributions which may be made to the Fund by a Participant shall not exceed the amount specified in Code Section 402(g).

b.      If the limits in Section 11.1.a. are exceeded, a Participant shall, to the extent permitted by the Code and regulations promulgated thereunder, receive a distribution of his or her Employee Elected Company Contributions for the Plan Year as is necessary to comply with the limitations.

c.      If the distribution under Section 11.1.b. does not satisfy the limitations described in Section 11.1.a., the Plan Administrator shall take additional measures in conformity with Code Section 415 and the regulations promulgated thereunder in order that the limitations set forth in Section 11.1.a. are satisfied.

### 11.2.  Limitation on Compensation

With respect to any Plan Year, no more than the amount specified in Code Section 401(a)(17) of a Participant's compensation shall be taken into account under the Plan.

### 11.3.  Nondiscrimination Requirements

a.      Employee Elected Company Contributions for any Plan Year must satisfy at least one of the following tests:

(1)      The average of the individual ratios of Employee Elected Company Contributions to Testing Compensation (the "deferral ratios") for the Plan Year for all Highly Compensated Employees eligible to participate in the Plan does not exceed the product of 1.25 and the average of the deferral ratios for all other employees eligible to participate in the Plan, or

(2)      The excess of the average of the deferral ratios for all Highly Compensated Employees eligible to participate in the Plan over that for all other employees eligible to participate in the Plan does not exceed two percentage points, and the average of the deferral ratios for all Highly Compensated Employees eligible to participate

in the Plan does not exceed twice the average of the deferral ratios for all other eligible employees eligible to participate in the Plan.

   b.    Company Contributions for any Plan Year must satisfy at least one of the following tests:

   (1)    the average of the individual ratios of Company Contributions to Testing Compensation (the "contribution ratios") for the Plan Year for all Highly Compensated Employees eligible to participate in the Plan does not exceed 125 percent of the average of the contribution ratios for all other employees eligible to participate in the Plan, or

   (2)    the excess of the average of the contribution ratios for all Highly Compensated Employees eligible to participate in the Plan over that for all other eligible employees does not exceed two percentage points, and the average of the contribution ratios for all Highly Compensated Employees eligible to participate in the Plan does not exceed twice the average of the contribution ratios for all other employees eligible to participate in the Plan.

## 11.4.  Adjustments by Administrator

The Plan Administrator may, in its sole discretion, decrease the amount of the Employee Elected Company Contributions to be made for the benefit of any Participant, and pay the amount of the decrease to the Participant in cash, if the Plan Administrator deems such a decrease to be necessary in order to satisfy either the nondiscrimination requirement of Section 11.3. or the limitations described in Section 11.1., or both.  Any decrease in the Employee Elected Company Contributions for a Participant will also be effective for purposes of determining the amount of the Company Contributions to be made for the Participant's benefit under Section 4.2.

## 11.5.  Special Contributions

In addition to the Employee Elected Company Contributions and Company Contributions for a Plan Year, the Company may, in its discretion, make Special Contributions to the Trust for the benefit of (a) all Participants, or (b) all Participants other than Highly Compensated Participants in order to satisfy the requirements contained in Section 11.3. hereof.  For all Participants who benefit from a Special Contribution, the Special Contribution shall be in an amount equal to the same percentage of Base Pay from the Company.

## 11.6.  Aggregation of Defined Contribution Plans

For the purpose of this Article 11, all defined contribution programs, qualified under Code Section 401(a), of the Company and those of all Employers which constitute a controlled group of corporations, or a group of companies under common control (as described in

Sections 414 and 415 of the Code) of which the Company is a member, shall be treated as one defined contribution plan, and all defined benefit programs, qualified under Section 401(a) of the Internal Revenue Code of 1986, of the Company and those of the employers (as described above), shall be treated as one defined benefit plan.

11.7.   Limitations Applicable to Participants who also Participate in a Defined Benefit Plan

In the case of a Participant who also participates in a defined benefit plan maintained by a Company, the Annual Addition set forth in Section 11.1.a. for a Plan Year will, if necessary, be further limited so that the sum of the Participant's "defined contribution fraction" (as determined under Section 415(e) of the Code and the regulations promulgated thereunder) and his "defined benefit plan fraction" (as determined under Section 415(e) of the Code and the regulations promulgated thereunder) for such Plan Year does not exceed 1.0.

ARTICLE 12

MISCELLANEOUS

12.1.  Inalienability of Benefits

The Trustee shall make benefit payments only to Participants or Beneficiaries entitled to benefits under the Plan or persons designated under Section 8.2. No right or claim to benefit payments from the Fund or assets of the Fund shall be assignable or alienable, nor shall such rights or claims be taken by attachment, execution, levy, or other legal or equitable proceedings, except, that rights of a Participant may be transferred to an alternate payee by a "qualified domestic relations order" as such term is defined by Section 414(p) of the Code.

12.2.  Rights of Participants

Nothing herein contained shall be deemed to give any Employee the right to be retained in the service of the Company or to interfere with the right of the Company to discharge such Employee at any time, nor shall it be deemed to give the Company the right to require the Employee to remain in its service, nor shall it interfere with the Employee's right to terminate his service at any time.

12.3.  Applicable Law

The provisions of this Plan shall be construed according to the law of the State of Tennessee.

12.4.  Voting of Common Shares

a.    The Trustee shall furnish to each Participant in the Plan who has Common Shares in his Vested Stock Account notice of the date and purpose of each meeting of shareholders of Northern Telecom Limited at which Common Shares are entitled to be voted and shall request from each such Participant, instructions as to the voting at such meeting of the number of such whole Common Shares attributable to the Participant's Vested Stock Account on the record date of such meeting.

(i)    If the Participant furnishes such instructions to the Trustee on a timely basis, the Trustee shall vote such number of whole Common Shares in accordance with the instructions of the Participant.

(ii)    If the Participant fails to furnish timely instructions, then the Trustee shall not vote such number of whole Common Shares.

b.    The Trustee shall not vote the number of whole Common Shares attributable

- 35 -

to Company Contributions which have not Vested in the Participants on the record date of such meeting.

12.5.   Certain Employees of PacTel Meridian Systems and Northern Telecom Meridian Systems Inc.

a.      The Employment Service of Participants employed by either PacTel Meridian Systems or Northern Telecom Meridian Systems Inc. on February 29, 1988 ("Acquisition Participants") shall be deemed to have commenced and to include service with a Company, PacTel Meridian Systems, Northern Telecom Meridian Systems Inc., PacTel Corporation, and/or any affiliate of PacTel Corporation (as defined in Section 1504 of the Code) in accordance with the provisions of the Plan which govern crediting of Employment Service.

b.      The Account Values of Acquisition Participants which are transferred, pursuant to a trust to trust transfer, from the PacTel Corporation Retirement Plan to the Plan effective January 1, 1989 shall, in their entirety (with earnings thereon), be invested in the Guaranteed Interest Contract Investment Option of the Plan ("Acquisition Account Values"). Acquisition Participants shall not be permitted to transfer their Acquisition Account Values to any other Fund before July 1, 1989.

ARTICLE 13

TOP-HEAVY RESTRICTIONS

13.1.  Definitions

For purposes of this Article 13, the following terms shall have the following meanings unless the context indicates otherwise:

a.   Aggregation-Group-of-Plans: For any calendar year, each plan qualified under Code Section 401(a) of the Company or an Affiliated Company if, on the Determination Date for such plan which occurs in the preceding calendar year (or, in the case of a plan whose first plan year ends in such calendar year, on the Determination Date which occurs in such calendar year),

(1)   One or more Key Employees is a participant in such plan year in which such Determination Date occurs or was a participant in such plan at any time during the four plan years preceding such plan year, or

(2)   Such plan enables any plan described in subparagraph (a) to meet the requirements of Code Sections 401(a)(4) or 410, or

(3)   The Company elects to include such plan in the Aggregation Group of Plans (but only if the Aggregation Group of Plans including such plan, treated as a single plan, would meet the requirements of Code Sections 401(a)(4) and 410). For purposes of this definition, any simplified employee pension (as defined as Code Section 408(k)) of the Company or an Affiliated Company shall be treated as a plan of the Company or an Affiliated Company qualified under Code Section 401(a).

b.   Annual Adjustment Factor:  A factor reflecting changes in the Consumer Price Index, as determined from time to time by the Secretary of the Treasury pursuant to Code Section 415(d)(1)(B).

c.   Determination Date: The last day of any Plan Year.

d.   Key Employee:  For any Plan Year, a person who is a "key employee" of the Company or an Affiliated Company within the meaning of Code Section 416(i)(1).

e.   Top Heavy Plan Year:  A Plan Year beginning after December 31, 1983 and ending in a calendar year for which the Plan is included in the Aggregation Group of Plans and with respect to which the Aggregation Group of Plans is a "top heavy group" within the meaning of Code Section 416(g)(2)(B).

f.   Top Heavy Vesting Percentage:  The percentage determined under Section .2.

- 37 -

13.2.  Vesting

Notwithstanding Article 6, a Participant's Top Heavy Vesting Percentage shall be the greater of

a.      His vesting percentage determined under Article 6, and

b.      His vesting percentage determined under the following table (but disregarding any years of Vesting Service completed by such Participant after the end of the last Top Heavy Plan Year in which he completed an Hour of Service):

| Years of<br>Vesting Service | Vesting Percentage |
|---|---|
| Less than 3 | 0 |
| 3 or more | 100 |

Notwithstanding Article 6 and notwithstanding the preceding sentence, the vesting percentage of a Participant who has completed five years of Vesting Service as of the end of any Top Heavy Plan Year in which he completed an Hour of Service shall, upon the completion of his third year of Vesting Service, be 100%.

## APPENDIX A

### "DIVESTITURES" & "PLANT CLOSINGS"

Pursuant to Section 6.2.b of the Plan, the following have been designated as either a "divestiture" or a "plant closing." The Plan Administrator shall prepare a list of Active Participants with less than five (5) years of Vesting Service whose Company Contributions Account Value shall be fully vested.

| Plant Closing (PC) or Divestiture (D) | Location | Date | Designated By |
|---|---|---|---|
| Meridian Terminals Div. (PC) | Nashville | 09/29/89 | Vice-President, Human Resources |
| Meridian Data Systems (PC) | Minnetonka | 09/29/89 | Vice-President, Human Resources |
| Network Support Systems (PC) | Concord | 09/29/89 | Vice-President, Human Resources |
| BNR Inc. (PC) | Ann Arbor | 09/29/89 | Vice-President, Human Resources |
| Data Communications  (PC) | Richardson | 09/29/89 | Vice-President, Human Resources |
| Sale of Assets to Bell Atlanticom (D) | Various | 06/04/90 | Vice President, Human Resources |
| Sale of Assets to US West (D) | Various | 07/16/89 | Vice President, Human Resources |