## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
             :

*In re*

Nortel Networks Inc., *et al.*,[1]

             Debtors.

-----------------------------------------------------------X

Nortel Networks Inc.,

             Plaintiff,

v.

Nathanson and Company LLC,

             Defendant.

-----------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

(Jointly Administered)

Adv. Proc. No. 10-53176 (KG)

**Hearing date:  October 19, 2011 at 10:00 am (ET)**
**Objections due:  October 5, 2011 at 4:00 p.m. pm(ET)**

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION OF SETTLEMENT OF AVOIDANCE CLAIMS BY AND BETWEEN NORTEL NETWORKS INC. AND NATHANSON AND COMPANY LLC

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 502,

---

[1]  In addition to Nortel Networks Inc. the Debtors in the Chapter 11 cases are:  Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc.  Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

547, and 550 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to

enter into and approving a stipulation (the "Stipulation") with Nathanson and Company LLC

("Defendant", and together with NNI, the "Parties"), in the form attached hereto as **Exhibit B**,

resolving the adversary proceeding entitled Nortel Networks Inc. v. Nathanson and Company

LLC, Adv. Proc. No. 10-53176 (KG) (the "Adversary Proceeding") and granting such other and

further relief as the Court (the "Court" or the "Bankruptcy Court") deems just and proper.  In

support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 502, 547,

and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.

### Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the
Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the
other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

respect of the Debtors [Main D.I.s 141, 142],[3] and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.       On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

---

[3]       Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __." Citations herein to the docket in this adversary proceeding (Adv. Pro. No. 10-53176) are in the form "Adv. D.I. __."

[4]       The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]       The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

6.    Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7.    By this Motion, the Debtors seek an order, pursuant to sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Stipulation, (ii) authorizing but not directing the Debtors to take all actions reasonably appropriate to perform their obligations under the Stipulation, and (iii) granting them such other and further relief as the Bankruptcy Court deems just and proper.

**Facts Relevant to this Motion**

8.    NNI retained the Defendant to provide consulting services relating to information technology cost reduction and certain supplier contract negotiations from the end of 2007 through 2009.  The Defendant invoiced NNI according to a schedule agreed to by the Parties in various Statements of Work.

9.    NNI's books and records indicate that within ninety (90) days prior to the Petition Date, NNI made one or more transfers of an interest in its property to or for the benefit of Defendant in the aggregate amount of $1,243,182.00 (the "Subject Transfers").

10.    On October 4, 2010, NNI filed its Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code (Adv. Pro. No. 10-53176) [Adv. D.I. 1] (the "Complaint") against the Defendant in this Court, pursuant to which NNI sought to avoid and recover the Subject Transfers (the "Avoidance Claim").

11.    On or about September 10, 2009, Defendant filed against Plaintiff Claim 2801 in the amount of $419,832.00 ("Claim 2801").

4

12.     On or about September 10, 2009, Defendant filed claim number 1190 (the "CCAA Claim") in the Canadian Proceedings in an amount identical to that asserted in Claim 2801, and appending the same invoices Defendant submitted in support of Claim 2801.  The Monitor has provisionally allowed $178,326.11 (CAN) of the CCAA Claim corresponding to services rendered by Defendant to one or more Canadian affiliates of Plaintiff and has provisionally disallowed the remainder of the CCAA Claim on the ground that it relates to services rendered by Defendant to Plaintiff

13.     On October 27, 2010, the  Court entered an Order Authorizing And Approving Settlement Procedures To Settle Certain Avoidance Claims (the "Avoidance Claims Settlement Procedures Order"), which requires the Debtors to obtain Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 before they settle certain avoidance claims where the asserted claim amount is greater than $1,000,000 [Main D.I. 4211].

14.     On September 16, 2010, the Court entered an Order Authorizing and Approving Settlement Procedures to Settle Certain Prepetition Claims (the "Prepetition Claims Settlement Procedures Order") authorizing the Debtors, *inter alia*, to settle Proofs of Claim where the Proof of Claim was originally filed in an amount equal to or greater than $250,000 and less than $500,000 and the Claim Difference (as that term is defined the Debtors' motion seeking approval of the Prepetition Claims Settlement Procedures Order) is greater than $50,000 without further notice or order of the Bankruptcy Court, provided the Debtors notify the Notice Parties, as defined in the Prepetition Claims Settlement Procedures Order (the "Prepetition Claims Notice Parties"), of a settlement and provided no Prepetition Claims Notice Party objects in writing within ten (10) calendar days of receipt of notice of such settlement (the "Prepetition Claims Notice Period") [Main D.I. 3953].

15.    On May 10, 2011, the Parties filed a Stipulation Regarding Appointment of a Mediator (the "Mediation Stipulation"), stipulating to the appointment of Charles A. Stanziale, Jr., Esq. as the mediator in the Adversary Proceeding [Adv. D.I. 23] and on May 11, 2011, the Court entered an order approving the Mediation Stipulation [Adv. D.I. 24].

16.    On July 7, 2011, the Parties took part in a mediation session with Mr. Stanziale and, in order to avoid the cost, risks, and burden that would be imposed by further litigation of the Avoidance Claim, have agreed to settle the Adversary Proceeding and Claim 2801 on the terms set forth in the Stipulation, attached hereto as **Exhibit B**.

17.    Pursuant to the Stipulation[6] and subject to the Bankruptcy Court's approval, NNI has agreed to settle the Avoidance Claim for a cash payment of $15,000 (the "Settlement Amount") and the reduction of Claim 2801 from $419,832.00 to $273,693.00 and the allowance of Claim 2801 in that reduced amount.[7]  In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration, Defendant has agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release and forever discharge Plaintiff, its past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "Debtor Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that

---

[6]    In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

[7]    Because the settlement contemplated by the Stipulation provides for the reduction and allowance of Claim 2801, the Debtors have also notified the Prepetition Claims Notice Parties of the settlement contemplated by the Stipulation pursuant to the Prepetition Claims Settlement Procedures Order.

Defendant now has, had, may have had, or hereafter may have against any of the Debtor

Releasees regarding the Avoidance Claim, the Adversary Proceeding, and any transaction

described or referred to in the Complaint in the Adversary Proceeding.  Notwithstanding the

foregoing, Defendant's release of the Debtor Releasees does not extend to Claim 2801 to the

extent such claim is allowed or to the CCAA Claim to the extent that such claim does not exceed

$178,326.11 (CAN), the amount provisionally allowed by the Monitor.  Defendant has also

agreed to release any and all claims arising under § 502(h) of the Bankruptcy Code against

Plaintiff.

18.    In consideration of the mutual promises and covenants set forth in the Stipulation

and other good and valuable consideration, NNI has agreed, subject to the Bankruptcy Court's

approval, to, *inter alia*, release and forever discharge Defendant, its past and present parents,

subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers,

employees, agents, and attorneys, and each of their predecessors, successors and assigns

(collectively, the "Defendant Releasees"), from any and all claims, rights, defenses, demands,

liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or

unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or

present, fixed or contingent, liquidated or unliquidated, that Plaintiff now has, had, may have

had, or hereafter may have against any of the Defendant Releasees regarding the Avoidance

Claim, the Adversary Proceeding, and any transaction described or referred to in the Complaint

in the Adversary Proceeding.

## Basis for Relief

19.    The Debtors seek authorization for NNI to enter into the Stipulation under

sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section

105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

20.     Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  Courts in this District have also recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

21.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.

8

Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

22.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

23.     The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation.  While NNI is prepared to litigate the Avoidance Claim, Defendant has contended that the ordinary course of business defense pursuant to 11 U.S.C. § 547(c)(2) is particularly strong.  Specifically, Defendant has contended that the Subject Transfers were made within the time frames contemplated by the Parties' agreements, and were also consistent with standard times to payment in the consulting industry.  NNI recognizes that litigation of the Avoidance Claim carries with it inherent uncertainties and there can be no assurance that litigation of the Avoidance Claim would achieve a better result than the one set forth in the Stipulation.  Pursuant to the settlement reflected in the Stipulation, and upon the Settlement Date (as defined in the Stipulation), the Defendant will pay to NNI the sum of $15,000 and waive any claim arising from such payment under section 502(h) of the Bankruptcy Code.  Further,

Defendant's Claim 2801 shall be reduced by $146,139.00 and allowed according to the terms set forth in the Stipulation, benefiting the estate by reducing to a sum certain this unsecured claim against the estate. This resolution fairly balances NNI's likelihood of success on the merits of the Avoidance Claim against its interest in avoiding the uncertainty of litigation.

24. In addition, further litigation of the Avoidance Claim would result in the estate's expenditure of considerable additional legal fees. These would include fees associated with formal discovery, retention of an expert, briefing of dispositive motions and potentially trial of the Avoidance Claim. In the absence of a settlement, the estate would be burdened with the time and costs of ongoing litigation, which would be disruptive of the estate's efforts to resolve the matters that are essential to the ultimate resolution of these cases.

25. Finally, the interests of the creditors weigh in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Avoidance Claim and the avoidance of litigation risk and substantial legal expenses that would be incurred if the Avoidance Claim were to be further litigated.

26. In light of the foregoing, the Debtors respectfully seek authorization for NNI to enter into the Stipulation and approval of the Stipulation.

## Notice

27. Notice of the Motion has been given via first class mail to (i) the Defendant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

28. No prior request for the relief sought herein has been made to this or any other court.

10

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the

relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant

such other and further relief as it deems just and proper.

Dated:  September 14, 2011  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)  
Neil P. Forrest (admitted *pro hac vice*)  
Matthew J. Vanek (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone:  (212) 225-2000  
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____/s/ Chad A. Fights_____  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
Chad A. Fights (No. 5006)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone:  (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors*  
*and Debtors in Possession*