**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------X
                       :
                       :    Chapter 11
*In re*                     :
                       :
Nortel Networks Inc., *et al.*,[1]    :    Case No. 09-10138 (KG)
                     :
            Debtors.     :    (Jointly Administered)
                     :
--------------------------------------------------------- X
                     :
Nortel Networks Inc.,       :
                     :
           Plaintiff,   :
                     :    Adv. Proc. No. 10-55167 (KG)
v.                     :
                     :    **Hearing date: October 19, 2011 at 10:00AM (ET)**
NeoPhotonics Corporation,  :    **Objections due: October 5, 2011 at 4:00PM (ET)**
                     :
           Defendant.  :
                     :
                     :
---------------------------------------------------------X

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY**
**RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION**
**OF SETTLEMENT OF AVOIDANCE CLAIMS BY AND BETWEEN**
**NORTEL NETWORKS INC. AND NEOPHOTONICS CORPORATION**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 502,

503(b)(9), 546(c), 547, and 550 of title 11 of the United States Code (the "Bankruptcy Code")

---

[1]  In addition to Nortel Networks Inc. ("NNI"), the Debtors in the Chapter 11 cases are:  Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA").  Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

authorizing the Debtors to enter into and approving a stipulation (the "Stipulation") with

NeoPhotonics Corporation ("Defendant", and together with NNI, the "Parties"), in the form

attached hereto as **Exhibit B**, (i) resolving the Adversary Proceeding entitled Nortel Networks

Inc. v. NeoPhotonics Corporation, Adv. Proc. No. 10-55167 (KG) (the "Adversary Proceeding");

(ii) deeming Defendant's general unsecured proof of claim filed against NNI as allowed up to a

certain agreed-upon amount, and withdrawing with prejudice Defendant's section 503(b)(9)

claim and section 546(c) reclamation demand as discussed below; and (iii) granting such other

and further relief as the Court (the "Court" or the "Bankruptcy Court") deems just and proper.  In

support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 502,

503(b)(9), 546(c), 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.

### Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [Main D.I. 1098].

4.    The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [Main D.I.s 141, 142][3], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.    On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

---

[3]  Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __."  Citations herein to the docket in this adversary proceeding (Adv. Pro. No. 10-55167) are in the form "Adv. D.I. __."

[4]  The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]  The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

6.      Since the Petition Date, Nortel has sold its business units and assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## Relief Requested

7.      By this Motion, the Debtors seek an order, pursuant to sections 105(a), 502, 503(b)(9), 546(c), 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Stipulation, (ii) authorizing but not directing the Debtors to take all actions reasonably appropriate to perform their obligations under the Stipulation, and (iii) granting them such other and further relief as the Bankruptcy Court deems just and proper.

## Facts Relevant to this Motion

8.      Defendant supplied NNI with advanced technologies for use in NNI's telecommunications networks prior to the Petition Date.

9.      NNI's books and records indicate that within ninety (90) days prior to the Petition Date, NNI made one or more transfers of an interest in its property to or for the benefit of Defendant in the aggregate amount of $1,085,180.00 (the "Subject Transfers").

10.      On November 9, 2010, NNI filed its Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code (Adv. Pro. No. 10-55167) [Adv. D.I. 1] (the "Complaint") against the Defendant in this Court, pursuant to which NNI sought to avoid and recover the Subject Transfers (the "Avoidance Claim").

11.      On February 14, 2011, Defendant filed an Answer to the Complaint (Adv. D.I. 14) in the Adversary Proceeding, denying certain allegations and asserting various defenses.

12.      On or about February 3, 2009, NeoPhotonics filed a Notice of Reclamation Demand in the amount of $475,540 [Main D.I. 206] (the "NeoPhotonics Reclamation Demand").

4

13.     On February 19, 2009, the Court entered an Order Establishing Procedures for Addressing Reclamation Demands  [Main D.I. 336] (the "Reclamation Demands Procedures Order") authorizing the Debtors, *inter alia*, to settle reclamation demands provided the Debtors file a notice of settlement notifying certain notice parties, specified in the Reclamation Demands Procedures Order (the "Reclamation Demands Notice Parties"), of a settlement and provided no Reclamation Demands Notice Party objects in writing within ten (10) calendar days of such notice of settlement (the "Reclamation Demands Notice Period").

14.     On or about May 14, 2009, pursuant to the Reclamation Demands Procedures Order, the Debtors filed a reclamation notice identifying the NeoPhotonics Reclamation Demand as being invalid due to a lack of sufficient information [Main D.I. 756].

15.     On or about June 3, 2009, pursuant to the Reclamation Demands Procedures Order, Defendant filed an objection to the treatment of the NeoPhotonics Reclamation Demand in the reclamation notice [Main D.I. 847].

16.     On or about May 11, 2009, NeoPhotonics filed proof of claim No. 1157 in the amount of $179,840.00 ("Claim 1157"), pursuant to section 503(b)(9) of the Bankruptcy Code.

17.     On or about September 29, 2009, NeoPhotonics filed proof of claim No. 4910 in the amount of $599,600.00 ("Claim 4910", and collectively with Claim 1157, the "NeoPhotonics Claims").

18.     On September 16, 2010, the Court entered an Order Authorizing and Approving Settlement Procedures to Settle Certain Prepetition Claims (the "Prepetition Claims Settlement Procedures Order") authorizing the Debtors, *inter alia*, to settle Proofs of Claim (1) where the Proof of Claim was originally filed in an amount less than $250,000 and without filing or serving any advance notice of such settlement and without further notice or order of the Bankruptcy

Court or (2) where the Proof of Claim was originally filed in an amount equal to or greater than $500,000 and less than $1,000,000 without further notice or order of the Bankruptcy Court provided the Debtors notify the Notice Parties, as defined in the Claims Settlement Procedures Order (the "Prepetition Claims Notice Parties"), of a settlement and provided no Prepetition Claims Notice Party objects in writing within ten (10) calendar days of receipt of notice of such settlement (the "Prepetition Claims Notice Period") [Main D.I. 3953].

19.    Since the Complaint and Answer were filed, the Parties have engaged in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by further litigation of the Avoidance Claim, the NeoPhotonics Claims and the NeoPhotonics Reclamation Demand, the Parties have agreed to settle the Adversary Proceeding, the NeoPhotonics Claims and the NeoPhotonics Reclamation Demand on the terms set forth in the Stipulation, attached hereto as **Exhibit B**.  The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of the Avoidance Claim, the NeoPhotonics Claims and the NeoPhotonics Reclamation Demand through the Stipulation is appropriate and in the best interest of both their estates and their creditors.

20.    Pursuant to the Stipulation[6] and subject to the Bankruptcy Court's approval, NNI has agreed to settle the Avoidance Claim by reduction of Claim 4910 from $599,600.00 to $300,000.00, which shall be an allowed general unsecured claim by Defendant against Plaintiff in that reduced amount, and the withdrawal with prejudice of both Claim 1157 and the NeoPhotonics Reclamation Demand.

21.    In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration, Defendant has agreed, subject to the Bankruptcy

---

[6]  In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

Court's approval, to, *inter alia*, release and forever discharge NNI, its past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "Debtor Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that Defendant now has, had, may have had, or hereafter may have against any of the Debtor Releasees regarding the Avoidance Claim, the Adversary Proceeding, any transaction described or referred to in the Complaint in the Adversary Proceeding, from any and all claims arising under section 502(h) of the Bankruptcy Code, from the NeoPhotonics Reclamation Demand and any other claims for reclamation the Defendant may have against any of the Debtors, and from the claims set forth in the NeoPhotonics Claims, except to the extent Claim 4910 is allowed as reduced as set forth in paragraph 20 above.

22.     In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration, NNI has agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release and forever discharge Defendant, its past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "Defendant Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that Plaintiff now has, had, may have

had, or hereafter may have against any of the Defendant Releasees regarding the Avoidance

Claim, the Adversary Proceeding, and any transaction described or referred to in the Complaint

in the Adversary Proceeding.

## Basis for Relief

23.      The Debtors seek authorization for NNI to enter into the Stipulation under

sections 105(a), 502, 503(b)(9), 546(c), 547, and 550 of the Bankruptcy Code and Bankruptcy

Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any

order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §

105(a).  Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and

after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr.

P. 9019.

24.      Citing this authority, the Third Circuit has emphasized that "[c]ompromises are

favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)

(quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health

Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally

favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'(i)n administering

reorganization proceedings in an economical and practical manner it will often be wise to

arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  In re

Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for

Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  Courts

in this District have also recognized that the approval of a proposed compromise and settlement

is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram Healthcare

Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

25.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

26.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

27.     The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation. While NNI is prepared to litigate the Avoidance Claim, Defendant has claimed to have provided $599,600.00 in new value to NNI subsequent to the transfers, such that Defendant asserted a new value defense pursuant to 11 U.S.C. § 547(c)(4) in that amount.  In

addition, Defendant has contended that the ordinary course of business defense pursuant to 11 U.S.C. § 547(c)(2) is particularly strong based on the average payment time during the history of the parties' dealings.

28.     NNI recognizes that litigation of the Avoidance Claim carries with it inherent uncertainties and there can be no assurance that litigation of the Avoidance Claim would achieve a better result than the one set forth in the Stipulation.  Pursuant to the settlement reflected in the Stipulation, Claim 4910 shall be reduced by $299,600.00, from $599,600.00 to $300,000.00, and the NeoPhotonics Reclamation Demand in the amount of $475,540.00 and Claim 1157 in the amount of $179,840.00 shall both be withdrawn with prejudice.  This resolution fairly balances NNI's likelihood of success on the merits of the Avoidance Claim against its interest in avoiding the uncertainty of litigation.

29.     In addition, further litigation of the Avoidance Claim, Claim 4910, the NeoPhotonics Reclamation Demand, and Claim 1157 would result in the estate's expenditure of considerable additional legal fees.  These would include fees associated with formal discovery and litigation.  In the absence of a settlement, the estate would be burdened with the time and costs of ongoing litigation, which would be disruptive of the estate's efforts to resolve the matters that are essential to the ultimate resolution of these cases.

30.     Finally, the interests of the creditors weigh in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Avoidance Claim, Claim 4910, the NeoPhotonics Reclamation Demand, and Claim 1157 and the avoidance of litigation risk and substantial legal expenses that would be incurred if these claims were to be further litigated.

31.     Because the settlement contemplated by the Stipulation provides for the reduction and allowance of Claim 4910, the Debtors have given notice to the Prepetition Claims Notice Parties pursuant to the Prepetition Claims Procedures Order prior to the filing of this Motion, and they have expressed no objection to the Stipulation.  In addition, the Debtors consulted with counsel to the Canadian Debtors pursuant to the Cross Border Protocol on the Resolution of Claims [D.I. 3922, 3956].  By filing this Motion, the Debtors are also providing formal notice of the resolution of the Neophotonics Reclamation Demand to the Reclamation Demands Notice Parties pursuant to the Reclamation Demands Procedures Order.

32.     In light of the foregoing, the Debtors respectfully seek authorization for NNI to enter into the Stipulation and approval of the Stipulation.

## Notice

33.     Notice of the Motion has been given via first class mail to (i) the Defendant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

34.     No prior request for the relief sought herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

11

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  September 21, 2011
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
Brendan H. Gibbon (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____*/s/ Chad A. Fights*_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Chad Fights (No. 5006)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*