**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NORTEL NETWORKS, INC., *et al.*, | : | Case No. 09-10138 (KG) |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | |
| In re: | : | Chapter 15 |
| | : | |
| NORTEL NETWORKS CORPORATION, *et al.*, FOREIGN APPLICANTS IN FOREIGN PROCEEDINGS. | : | Case No. 09-10164 (KG) |
| | : | Jointly Administered |
| | : | |
| Nortel Networks Inc. and Nortel Networks Limited, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Adv. Pro. No. 10-53065 (KG) |
| | : | Jointly Administered |
| Communications Test Design, Inc., | : | |
| | : | |
| Defendant. | : | **Hearing date: October 19, 2011 at 10:00 a.m. (ET)** |
| | : | **Objections due: October 12, 2011 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
APPROVING (I) SETTLEMENT AGREEMENT AMONG
NORTEL PARTIES AND COMMUNICATIONS TEST DESIGN, INC.
AND (II) RELATED SIDE AGREEMENT AMONG NORTEL PARTIES**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving (i) that certain Stipulation and Settlement Agreement dated as of September 26, 2011 by and among NNI, Nortel Networks Limited ("NNL", and together with NNI, the "Plaintiffs"), Nortel Networks Corporation ("NNC", and together with the Plaintiffs, the "Nortel Parties") and Communications Test Design, Inc. ("CTDI" or "Defendant", and together with the Nortel Parties, the "Parties"),

attached hereto as Exhibit B (the "Settlement Agreement"), and (ii) that certain Side Agreement

dated as of September 26, 2011 among the Nortel Parties, attached hereto as Exhibit C (the "Side

Agreement"), and granting the Debtors such other and further relief as the Court deems just and

proper.  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory bases for the relief requested herein are section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.       On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[1] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.       The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

5.       On the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct

corporate parent NNL, and certain of their Canadian affiliates (collectively, the "Canadian

---

[1]        Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code
on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases
for procedural purposes [D.I. 1098].

Debtors" and, together with NNI and its affiliates, including the Debtors, "Nortel")[2] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.    Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## Relief Requested

7.    By this Motion, the Debtors seek an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019:  (a) approving the Settlement Agreement, (b) approving the Side Agreement, and (c) granting the Debtors such other and further relief as the Court deems just and proper.

---

[2]    The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]    The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

<u>**Facts Relevant to this Motion**</u>

A.    **The 2010 Action**[4]

8.    On September 21, 2010, NNI filed a complaint against CTDI in this Court asserting claims for misappropriation of trade secrets, fraud, breach of contract, breach of the implied duty of good faith and fair dealing, and unjust enrichment.  NNL also filed a complaint on the same date and asserted the same claims against CTDI and claims for trademark infringement, trademark dilution and false designation of origin (the NNI and NNL complaints together as amended, the "<u>Complaints</u>").  The NNI and NNL actions were consolidated for all purposes and administered as <u>Nortel Networks Inc. and Nortel Networks Limited v. Communications Test Design, Inc.</u>, Adversary No. 10-53065 (KG).

9.    Defendant moved to dismiss the Complaints on October 27, 2010 [D.I. 14]; on January 3, 2011, Defendant filed answers and counterclaims (the "<u>Counterclaim</u>" and, together with the Complaints, the "<u>Adversary Proceeding</u>") [D.I. 53, 54] and simultaneously moved to join NNC as a Counterclaim Defendant [D.I. 55].   On January 31, 2011, NNI filed a motion to dismiss the Counterclaims, in which NNL joined in part [D.I. 96].

10.    On March 18, 2011, the Court entered an order granting Defendant's motion to join NNC as a Counterclaim Defendant [D.I. 156], and March 22, 2011, the Court entered an order denying both the Plaintiffs' and Defendant's motions to dismiss [D.I. 159].  Following the entry of these decisions and after determining that it was in their respective best interests to compromise and settle the Adversary Proceeding without further litigation, the Parties agreed to attempt to resolve the action through mediation.

---

[4]    References to docket items in this section are made to <u>Nortel Networks Inc. and Nortel Networks Ltd. v. Communications Test Design, Inc.</u>, Adversary No. 10-53065 (KG).

11.     This Court appointed a mediator to aid the Parties, and the Parties participated in a mediation on June 10, 2011.  After comprehensive briefing of the issues and several hours of extensive negotiation and mediation, the Parties reached agreement on a settlement of the Adversary Proceeding, memorialized in the Settlement Agreement.  In connection with its entry into the Settlement Agreement, NNI entered into the Side Agreement with NNL and NNC to provide for the apportionment of the settlement proceeds (the Settlement Agreement and Side Agreement together, the "Settlement Documents").[5]

**B.     The Settlement Documents[6]**

12.     After arms' length, good faith negotiation with CTDI, the Nortel Parties, in consultation with the Committee and the Monitor, entered into the Settlement Agreement to resolve the issues raised through the Adversary Proceeding.  Under the terms of the Settlement Agreement, and as fully and completely described therein, the Plaintiffs have agreed to release certain claims against Defendant as set forth in the Complaints.  In return, the Defendant has agreed to make a settlement payment to the Plaintiffs, as detailed in the Settlement Agreement, and has agreed to release certain claims against the Nortel Parties as set forth in the Counterclaim.[7]

---

[5]     The execution of the Settlement Documents is conditioned on the approval of such documents by this Court.  The Settlement Documents are intended to settle disputes between the parties and, absent approval by this Court, shall not constitute an admission or be otherwise binding on the parties.

[6]     The summary of the Settlement Documents in this Motion is provided solely for the benefit of the Court and parties in interest.  To the extent that the summary and the terms of the Settlement Documents are inconsistent, the terms of the Settlement Documents shall control.

[7]     In addition, separate and apart from the Adversary Proceeding and the settlement of the Adversary proceeding, the parties have also resolved accounts receivable and accounts payable amounts relating to the post-petition period in the ordinary course.  Under this resolution, CTDI has agreed to pay NNI and NNL USD 67,696.69, and NNI and NNL have agreed to pay CTDI USD 386,080.78.

**Basis for Relief**

13.     The relief requested herein is authorized by section 105 of the Bankruptcy Code

and Rule 9019 of the Bankruptcy Rules.  Section 105(a) of the Bankruptcy Code provides that

"[t]he court may issue any order…that is necessary or appropriate to carry out the provisions of

this title."  11 U.S.C. § 105(a).

14.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee

and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R.

Bankr. P. 9019.  Pursuant to this authority, the Third Circuit has emphasized that

"[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393

(3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).  In addition, the

District of Delaware has recognized that the approval of a proposed compromise and settlement

is committed to the sound discretion of the bankruptcy court.  See In re Coram Healthcare Corp.,

315 B.R. 321, 329 (Bankr. D. Del. 2004).

15.     The settlement of time-consuming and burdensome litigation, especially in the

bankruptcy context, is encouraged and "generally favored in bankruptcy."  In re World Health

Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Cent. Transp.

Co., 596 F.2d 1102, 1112 (3d Cir. 1979) ("'administering reorganization proceedings in an

economical and practical manner it will often be wise to arrange the settlement of claims . . . .'")

(quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390

U.S. 414, 424 (1968)).

16.     In determining whether to approve a settlement under Bankruptcy Rule 9019, a

court assesses whether "the compromise is fair, reasonable, and in the best interest of the estate."

In re Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005); see also In re Marvel

Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R.

798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer Ferry, 390 U.S. at 424-25.  The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119, 123 (D.N.J. 2000)).  The court should not substitute its judgment for that of the debtor and need not be convinced that the settlement is the best possible compromise.  See Coram, 315 B.R. at 330; In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

17.     The Third Circuit has enumerated four factors for a bankruptcy court to consider when evaluating a settlement proposal:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Martin, 91 F.3d at 393 (citing Neshaminy, 62 B.R. at 803); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

18.     The Debtors respectfully submit that the Settlement meets the requirements under Bankruptcy Rule 9019.  The Settlement is proposed as a good faith means to resolve the Adversary Proceeding.  While the Debtors are prepared to litigate the Adversary Proceeding and believe that they would prevail in such litigation, litigation carries with it inherent uncertainties and there is no assurance that such litigation would achieve a better result than the one set forth in the Settlement Agreement.  CTDI has vigorously litigated the Adversary Proceeding and has indicated that it believes it would prevail if the Adversary Proceeding should go to trial.  The

7

Settlement Agreement fairly balances the Debtors' likelihood of success on the merits of the Adversary Proceeding against their interest in avoiding the uncertainty of litigation.

19.     In addition, the disputes underlying the Adversary Proceeding are extremely complex and costly to litigate, and further litigation would result in the estate's expenditure of considerable additional legal fees.  Thus, in the absence of the Settlement Agreement, NNI's estate would be burdened with the time and costs of continuing litigation, which would be disruptive of the estate's efforts to resolve the many matters that are essential to the ultimate resolution of these cases.

20.     Finally, the interests of the creditors militate in favor of approval of the Settlement.  The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Adversary Proceeding and the avoidance of legal expenses that would be incurred if the Adversary Proceeding were to be further litigated.  In light of the foregoing, the Debtors respectfully seek authorization to enter into the Settlement and approval of the Settlement.

21.     Additionally, the Side Agreement benefits NNI by providing for a fair and equitable method for allocating among the parties thereto (i) the costs of litigation, mediation, and settlement preparation; and (ii) the proceeds of the Settlement Agreement.

22.     Accordingly, the Debtors believe that a settlement on the terms contemplated in the Settlement Agreement and Side Agreement is preferable to further litigation against the Defendant.  The proposed settlement reflects a valuable resolution in light of:  (i) the value being given; (ii) the contingencies of success in litigation and the costs and delays attendant thereto; and (iii) the fact that the settlement is well within the range of reasonableness when considering the potential outcomes associated with litigating the claim.  For these reasons, the Debtors assert

that the Settlement Agreement and Side Agreement should be approved, as it is in the best interests of the Debtors, their estates and their creditors.

**Notice**

23.     Notice of the Motion has been given via first class mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to the Defendant; (v) the purchasers in the Debtors' post-petition asset sales; and (vi) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

24.     No prior request for the relief sought herein has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this

Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and

(iii) grant such other and further relief as it deems just and proper.

Dated:  September 28, 2011

**BENESCH, FRIEDLANDER, COPLAN
 & ARONOFF LLP**

By:     */s/ Raymond H. Lemisch*
Raymond H. Lemisch, Esq. (No. 4204)
Jennifer R. Hoover, Esquire (No. 5111)
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801
Telephone:  (302) 442-7010
Facsimile: (302) 442-7012
rlemisch@beneschlaw.com
jhoover@beneschlaw.com

- and -

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
David H. Herrington (admitted *pro hac vice*)
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

*Counsel for the Debtors and Debtors in Possession*