**EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| NORTEL NETWORKS INC., *et al.*, | : | Case No. 09-10138 (KG) |
| Debtors. | : | Jointly Administered |

- - - - - - - - - - - - - - - - - - - - - - - - - - - :

| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| NORTEL NETWORKS CORPORATION, *et al.*, | : | Case No. 09-10164 (KG) |
| Foreign Applicants in Foreign Proceedings. | : | Jointly Administered |

- - - - - - - - - - - - - - - - - - - - - - - - - - - :

| | | |
|---|---|---|
| NORTEL NETWORKS INC. and NORTEL NETWORKS LIMITED, | : | |
| Plaintiffs, | : | |
| v. | : | Adversary Proceeding No. 10-53065 (KG) |
| COMMUNICATIONS TEST DESIGN, INC., | : | |
| Defendant, | : | (Jointly Administered) |
| and | : | |
| COMMUNICATIONS TEST DESIGN, INC., | : | |
| Counterclaim Plaintiff, | : | |
| v. | : | |
| NORTEL NETWORKS INC., NORTEL NETWORKS LIMITED, and NORTEL NETWORKS CORPORATION, | : | |
| Counterclaim Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**STIPULATION AND SETTLEMENT AGREEMENT BY AND AMONG NORTEL
NETWORKS INC., NORTEL NETWORKS CORPORATION,
NORTEL NETWORKS LIMITED, AND COMMUNICATIONS TEST DESIGN, INC.**

1

This stipulation and settlement agreement (this "<u>Stipulation</u>") is entered into among Nortel Networks Inc. ("<u>NNI</u>"), Nortel Networks Limited ("<u>NNL</u>", and together with NNI, the "<u>Plaintiffs</u>"), Nortel Networks Corporation ("<u>NNC</u>", and together with NNI and NNL, the "<u>Nortel Parties</u>"), and Communications Test Design, Inc. ("<u>CTDI</u>" or "<u>Defendant</u>" and, together with Plaintiffs and NNC, the "<u>Parties</u>").  The Parties hereby stipulate and agree as follows:

<b>RECITALS</b>

WHEREAS, on January 14, 2009 (the "<u>Petition Date</u>"), NNI and certain of its affiliates (collectively, the "<u>U.S. Debtors</u>"[1]) filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>U.S. Court</u>");

WHEREAS, also on the Petition Date, NNC, NNL and certain of their Canadian affiliates (together, "<u>Nortel Canada</u>") filed an application with the Ontario Superior Court of Justice (the "<u>Canadian Court</u>", and together with the U.S. Court, the "<u>Courts</u>") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors;

WHEREAS, also on the Petition Date, Ernst & Young Inc., as the court-appointed monitor (the "<u>Monitor</u>") and authorized foreign representative for Nortel Canada commenced chapter 15 cases ancillary to the proceedings in the Canadian Court and filed with the U.S. Court petitions for recognition of foreign proceedings under chapter 15 of the Bankruptcy Code;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

WHEREAS, the Monitor's petitions for recognition were granted on February 27, 2009, and the chapter 15 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b);

WHEREAS, CTDI, Nortel Canada, and/or NNI entered into various agreements prior to the Petition Date, including without limitation the agreements set forth on Exhibit A hereto (the "Prior License Agreements");

WHEREAS, CTDI has a claim against NNL in the Canadian proceeding, Claim Reference No. 1541, as further described in that certain Notice of Disallowance with respect to Claim Reference No. 1541 dated December 15, 2010 and sent by the Monitor to Defendant, and CTDI's Notice of Dispute dated December 28, 2010 (the "Canadian Claim");

WHEREAS, on March 11, 2010, Defendant proffered, and Plaintiffs subsequently accepted without prejudice, and held in escrow while reserving in full all claims and rights, a payment in contemplation of partial settlement in the amount of ███████ (the "March 2010 Payment");

WHEREAS, on September 21, 2010, NNI instituted an adversary proceeding, Adv. Proc. No. 10-53065 (KG), by filing a complaint against Defendant CTDI (D.I. 1), alleging claims of breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, and unjust enrichment, and NNL instituted an adversary proceeding, Adv. Proc. No. 10-53066 (KG), by filing a complaint against Defendant CTDI (D.I. 1), which alleged claims of trade secret misappropriation, trademark infringement, breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, and unjust enrichment;

WHEREAS, on November 12, 2010, NNI filed its Amended Complaint (D.I. 20), alleging claims of breach of contract, fraud, breach of the implied covenant of good faith and fair

dealing, and unjust enrichment, and NNL filed its Amended Complaint (D.I. 25) (together with NNI's Amended Complaint, the "Complaints"), alleging claims of trade secret misappropriation, trademark infringement, breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, and unjust enrichment (the "Claims");

WHEREAS, on November 15, 2010, Defendant CTDI filed a motion to dismiss the Complaints (D.I. 22);

WHEREAS, on December 10, 2010, the adversary proceedings were consolidated for all purposes under Adv. Proc. No. 10-53065 (KG) (the "Adversary Proceeding") (D.I. 40);

WHEREAS, on January 3, 2011, Defendant filed Answers to the Complaints and Counterclaims (D.I. 53 and D.I. 54) in the Adversary Proceeding, denying certain allegations and asserting various defenses and asserting counterclaims against NNI, NNL and NNC (the "Counterclaims") and simultaneously moved to join NNC as a Counterclaim Defendant (D.I. 55);

WHEREAS, on January 18, 2011, NNL filed its opposition to CTDI's motion to join NNC as a Counterclaim Defendant (D.I. 65);

WHEREAS, on January 30, 2011, NNL filed its Answer to the Counterclaims, denying certain allegations and asserting various defenses (D.I. 88);

WHEREAS, on January 31, 2011, NNI and NNL moved to dismiss the Counterclaims (D.I. 96);

WHEREAS, on March 18, 2011, the U.S. Court granted CTDI's motion to join NNC as a Counterclaim Defendant (D.I. 156);

WHEREAS, on March 22, 2011, the U.S. Court issued a decision (D.I. 159) and Order (D.I. 160) denying Defendant CTDI's motion to dismiss the Complaints, denying the motions of

NNI and NNL to dismiss the Counterclaims, and holding that any recovery by CTDI pursuant to the Counterclaims would be limited to setoff against any recovery the Plaintiffs or NNC may obtain against CTDI;

WHEREAS, on March 25, 2011, CTDI served a summons and notice of pretrial conference on NNC (D.I. 165);

WHEREAS, on April 5, 2011, NNI filed its Answer to CTDI's Counterclaims, denying certain allegations and asserting various defenses (D.I. 168);

WHEREAS, on April 25, 2011, NNC filed a motion to dismiss, or in the alternative for summary judgment on CTDI's Counterclaims (D.I. 186);

WHEREAS, on May 20, 2011, the U.S. Court issued an order relating to NNC's motion to dismiss, or in the alternative for summary judgment, setting a schedule for expedited discovery (D.I. 212);

WHEREAS, the Plaintiffs and Defendant determined that it was in their respective best interests to attempt to compromise and settle the issues without further litigation, and, in furtherance thereof, the Court appointed as mediator the Hon. Raymond T. Lyons (D.I. 202);

WHEREAS, since the Complaints, Answers and Counterclaims were filed, including in connection with the mediation that took place on June 10, 2011, the Parties have engaged in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by further litigation of the Claims and Counterclaims, have agreed to settle the Adversary Proceeding on the terms set forth herein; and

WHEREAS, for the purposes of facilitating the allocation of the Settlement Amount (as defined below) among them, the Plaintiffs have agreed to a division as set forth fully and completely in a separate side-agreement (the "Side Agreement");

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is stipulated and agreed by and between the Parties, as follows:

1.     <u>Effectiveness</u>.  This Stipulation shall become effective upon the entry of an order, in form and substance reasonably acceptable to the Parties, of the U.S. Court approving this Stipulation and the settlement reflected herein pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Approval Order</u>," and the date upon which the Approval Order becomes final and not subject to any pending or further appeal, the "<u>Approval Date</u>").  All Parties to this Stipulation shall cooperate and participate in good faith in connection with any notice and/or hearing or other proceeding required by the U.S. Court related to the Rule 9019 motion and/or the entry of the Approval Order, and the Nortel Parties will provide actual notice of this Stipulation, the Rule 9019 notice and proceedings to approve it to all third parties, as set forth in Exhibit B herein, who have acquired assets in these cases pursuant to Section 363 of the Bankruptcy Code.  The Parties irrevocably consent to the entry of final judgment by the U.S. Court pursuant to 28 U.S.C. § 157(c)(2) upon this Stipulation and all matters addressed herein. Upon the Approval Date, this Stipulation shall be effective and binding, by its terms, upon the Parties, and their respective successors and assigns.

2.     <u>Resolution of the Claims</u>.  Within five (5) business days after the Approval Date, Defendant shall remit to Plaintiffs a sum of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "<u>Settlement Amount</u>"), less the March 2010 Payment, as follows:

a.     <u>The Settlement Balance</u>.  The difference between the Settlement Amount and the March 2010 Payment is ▮▮▮▮▮ (the "<u>Settlement Balance</u>").

b. <u>Remittance by CTDI</u>.  Defendant shall tender the Settlement Balance, which, together with the March 2010 Payment, shall be in full and final settlement and satisfaction of the Claims, as provided herein, by sending a wire transfer in the amount of the Settlement Balance to Nortel Networks Inc., ██████

██████████████████████████████████████████

██████████████████████ (the "<u>Settlement Balance Payment</u>").

The date on which NNI receives the Settlement Balance Payment shall be referred to as the "<u>Settlement Date</u>."  From and after the Settlement Date, the Settlement Balance Payment shall, together with the March 2010 Payment, constitute a full and final satisfaction of all claims asserted in the Adversary Proceeding, subject to the reservations contained in Section 10 below.

c. <u>Remittance by NNI to NNL</u>.  Within three (3) business days of the Settlement Date, NNI shall remit a portion of the Settlement Amount to NNL in accordance with the Side Agreement between them.

3.  <u>Releases</u>.  The Parties agree to the following releases:

a. <u>Release of Plaintiffs</u>.  Effective upon the Settlement Date, Defendant, on behalf of itself and, to the extent permitted by law, on behalf of its directors, officers, employees, agents, attorneys and advisors, and all persons and entities controlled by or under common control with Defendant, and each of their respective, successors and assigns (collectively, the "<u>CTDI Releasors</u>"), hereby releases and forever discharges each of NNI, NNL and NNC, their past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, attorneys and advisors,

and each of their predecessors, successors and assigns, (collectively, the
"Nortel Releasees"), from any and all claims, rights, defenses, demands,
liabilities, obligations, damages, actions, suits, causes of action, and setoffs,
whether known or unknown, suspected or unsuspected, accrued or unaccrued,
matured or unmatured, past or present, fixed or contingent, liquidated or
unliquidated, that the CTDI Releasors now have, had, may have had, or
hereafter may have against any of the Nortel Releasees relating in any way to
the Counterclaims, Claims, the Adversary Proceeding, any transaction
described or referred to in the Complaints or Counterclaims in the Adversary
Proceeding, and any claim or cause of action which was asserted or could
have been asserted in the Adversary Proceeding, including, without limitation,
any claim which relates to or arises under the Prior License Agreements;
provided, however, that the foregoing release shall not apply to (i) any claims
arising under this Stipulation; and (ii) the Canadian Claim, which is hereby
fixed and liquidated in amount at $827,000 (Canadian).  For the avoidance of
doubt, CTDI hereby withdraws its Notice of Dispute, dated December 28,
2010, and abandons any further dispute to the Notice of Disallowance.  The
CTDI Releasors further covenant and agree not to assert or permit any CTDI
affiliate that they control to assert against any Nortel Releasee any claim or
cause of action which is released pursuant to this Stipulation.

b.  Release of Defendant.  Effective upon the Settlement Date, each of NNI, NNL
and NNC, on behalf of themselves and, to the extent permitted by law, on
behalf of their respective directors, officers, employees, agents, attorneys and

advisors, the other U.S. Debtors and the other Canadian Debtors, as set forth in Exhibit C herein, and each of their respective successors and assigns (collectively, the "Nortel Releasors"), hereby releases and forever discharges Defendant, its past and present parents, subsidiaries, and affiliates, as set forth in Exibit D herein, as well as Defendant's general partners, limited partners, shareholders, directors, officers, employees, agents, attorneys and advisors, and each of their predecessors, successors and assigns, (collectively, the "Defendant Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that each of the Nortel Releasors now have, had, may have had, or hereafter may have against any of the Defendant Releasees relating in any way to the Claims, the Counterclaims, the Adversary Proceeding, any transaction described or referred to in the Complaints or Counterclaims in the Adversary Proceeding, and any claim or cause of action which was asserted or could have been asserted in the Adversary Proceeding, including, without limitation, any claim which relates to or arises under the Prior License Agreements; provided, however, that the foregoing release shall not apply to any claims arising under this Stipulation. The Nortel Releasors further covenant and agree not to assert or permit any Nortel affiliate that they control to assert against any Defendant Releasee any claim or cause of action which is released pursuant to this Stipulation.

4.      <u>Dismissal of the Adversary Proceeding</u>.  Promptly following the Settlement Date, Plaintiffs will file with the U.S. Court a notice of dismissal of the Adversary Proceeding with prejudice and Defendant will file with the U.S. Court a notice of dismissal of the Counterclaims with prejudice.

5.      <u>Applicable Law</u>.  This Stipulation shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code, and, where not inconsistent, the laws of the State of Delaware, without regard to its conflict of laws rules and jurisprudence.

6.      <u>Entire Agreement</u>.  This Stipulation constitutes the entire agreement among the Parties to the Stipulation and supersedes all prior or contemporaneous written or oral communications, understandings and agreements with respect to the subject matter hereof, and this Stipulation cannot be amended except by an authorized agreement in writing between the Parties.

7.      <u>Costs and Expenses</u>.  Each of the Parties agrees to bear its own costs, expenses and attorneys' fees incurred in connection with the Adversary Proceeding, this Stipulation and the negotiations related to and preparation of this Stipulation, not to seek from each other reimbursement of any such costs, expenses or attorneys' fees; <u>provided</u>, however, that nothing in this Stipulation shall modify or supersede any agreement among NNI, NNL and NNC concerning payment for any costs, expenses or attorneys' fees.

8.      <u>No Admissions</u>.  This Stipulation and any draft thereof shall not constitute an admission of liability or lack thereof by any of the Parties with respect to any Claim or defense asserted in the Adversary Proceeding or a concession of any Claim or legal issue or argument raised in the proceeding and shall not be admissible as evidence in any court of law or other legal

proceeding for any purpose, other than for the purpose of enforcing the Stipulation or enforcing

or relying upon a representation and warranty set forth in Section 9 below.

    9.    <u>Representations and Warranties</u>.

      a.  <u>Defendant Representations</u>:  Defendant represents and warrants the following:

        i.  Defendant has all necessary power and authority to enter into and perform under this Stipulation;

      ii.  Defendant is solvent and shall be solvent following payment to the Nortel Parties of the Settlement Amount, and payment of the Settlement Amount, including the Settlement Balance, shall not cause Defendant to become insolvent;

     iii.  Defendant is fully capable of paying the Settlement Amount, including the Settlement Balance, to the Nortel Parties in accordance with this Stipulation, and is and will be, following such payment, able to pay its debts generally as they come due;

     iv.  Defendant is not now in default under any loan, bond, indenture, lease or other financial obligation aggregating more than $3 million (a "<u>Material Financial Obligation</u>") and entry into this Stipulation or performance of the obligations hereunder, including, without limitation, the payment of the Settlement Amount, including the Settlement Balance, shall not cause or create a default under any Material Financial Obligation;

     v.  Neither Defendant, nor any of Defendant's officers or directors, are "insiders" in respect of any Nortel Party as the term "insider" is

defined in Section 101 of the Bankruptcy Code, or as otherwise used in the Bankruptcy Code;

vi.  Defendant is entering into the Stipulation in good faith and without the intention of delaying, hindering or defrauding any present or future creditor of Defendant;

vii.  In settling the Adversary Proceeding, Defendant is receiving at least reasonably equivalent value for the Settlement Amount;

viii.  As of the date hereof, the Defendant is not owed any money or property by the Nortel Parties, under the Prior License Agreements or otherwise, other than the claims which are compromised and released in this Stipulation and the Canadian Claim;

ix.  As of the date hereof, Defendant does not have any knowledge of any claim or assertion by any third party that Defendant owes money or property to such third party on account of the Counterclaims that are being settled and released in this Stipulation;

x.  Entry into and performance under this Stipulation will not violate any law, rule, order, regulation, contract or other legal obligation of Defendant;

xi.  Defendant has fully informed itself as to the terms, contents, and provisions of this Stipulation and is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth herein;

xii. Defendant has had the benefit of the advice of counsel chosen and employed by it concerning this Stipulation;

xiii. No promise or representation of any kind with respect to the Claims, Counterclaims or Adversary Proceeding has been made to Defendant or its representatives by any of the Nortel Parties or their representatives, except as expressly set forth in this Stipulation; and

xiv. Defendant is the sole owner and holder of the claims it is releasing under this Stipulation, and none of those claims have been assigned, pledged, encumbered, or otherwise transferred, in whole or in part, to any other person or entity.

b. Nortel Party Representations:

i. Each Nortel Party represents and warrants that it has all necessary power and authority to enter into and perform under this Stipulation, subject only to entry of the Approval Order as to NNI. NNL and NNC represent and warrant that neither entry of the Approval Order nor any other similar court or other approval of this Stipulation is necessary in order for them to enter into and perform under this Stipulation or to make this representation.

ii. Each Nortel Party represents and warrants that entry into and performance under this Stipulation following entry of the Approval Order will not violate any law, rule, order, regulation, contract or other legal obligation of such Nortel Party.

iii. Each Nortel Party represents and warrants that, as of the date hereof, neither it nor any other Nortel Releasor is owed any money or property by Defendant, under the Prior License Agreements or otherwise, other than the claims which are compromised and released in this Stipulation.

iv. Each Nortel Party represents and warrants that, as of the date hereof, neither it nor any Nortel Releasor has any knowledge of any claim or assertion by any third party that Defendant owes money or property to such third party on account of the Claims that are being settled and released in this Stipulation.

v. Each Nortel Party fully has informed itself as to the terms, contents, and provisions of this Stipulation and is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth herein.

vi. Each Nortel Party has had the benefit of the advice of counsel chosen and employed by it concerning this Stipulation.

vii. In settling the Adversary Proceeding, each Nortel Party is receiving at least reasonably equivalent value for the consideration provided hereunder;

viii. No promise or representation of any kind with respect to the Claims, Counterclaims or Adversary Proceeding has been made to any of the Nortel Parties or their representatives by Defendant or its representatives, except as expressly set forth in this Stipulation.

ix.  The Nortel Parties are the sole owners and holders of the Claims they are releasing under this Stipulation, and none of those Claims have been assigned, pledged, encumbered, or otherwise transferred, in whole or in part, to any other person or entity.

c.  Survival of Representations.  The foregoing representations and warranties are a material inducement for each Party's entry into this Stipulation and shall survive the execution of this Stipulation and the closing of the transactions hereunder indefinitely.  In no event shall any Party be subject to any punitive or consequential damages for breach of this Section 9, and the Parties agree that in any action for such breach, damages shall be limited to compensatory damages.

10.  Bankruptcy.  In the event that all or any portion of this Stipulation or any payment made hereunder is set aside or voided as a preference, fraudulent conveyance or under any similar provision of the Bankruptcy Code (11 U.S.C. § 101, et seq.), including, without limitation, under Sections 544, 545, 547, 548 549 or 553 of the Bankruptcy Code, or any other bankruptcy or insolvency or creditor rights law or in any similar claim or proceeding under the laws of any jurisdiction:  (i) the Stipulation shall be, and shall be deemed to be, null and void, (ii) the Parties' rights, Claims and Counterclaims as they existed immediately  prior to the execution of this Stipulation shall be restored, and (iii) nothing herein shall constitute an admission, limitation or waiver with respect to Plaintiffs' claims against the Defendant or Defendant's claims against the Nortel Parties.

11.  Statute of Limitations Tolled.  In the event that all or any portion of this Stipulation or any payment made hereunder is set aside or voided as set forth in Section 10

above, each Party agrees that all applicable statutes of limitations, statutes of repose, notice

periods, periods of prescription, contractual periods of limitation, or any other analogous

limitations periods, time-based limitations or defenses, whether at law, in equity, under statute,

contract or otherwise (including, but not limited to the doctrines of laches or waiver, and the time

limitation set forth in sections 546 and 549 of the Bankruptcy Code), relating to the timeliness of

any claims, which might be asserted as a time bar and/or limitation to or in any action to enforce

a claim, or to the assertion of any defense, or right of setoff or recoupment in respect of any

counterclaim, under the laws of any jurisdiction, is tolled as of and from and including

September 21, 2010 for any Claim or Counterclaims asserted in the Adversary Proceeding as of

and from and including the Approval Date for any other claim, until the date that is six years

from the date the Settlement Balance is received (the "Expiration Date").  No Party shall have

either greater or fewer rights to assert any claim or any counterclaim, defense, or right of setoff

or recoupment thereto than as existed immediately prior to the execution of this Stipulation.

Nothing in this Agreement shall operate to revive or extend the time for filing or asserting any

claim, counterclaim, defense, or right of setoff or recoupment that is now time barred or barred

by any applicable statute or period of limitations, statute of repose, or other time-based limitation

or defense as of the Approval Date.

      12.   Construction.  This Stipulation shall be construed without regard to any

presumption or other rule requiring construction against the party causing the document to be

drafted.  Each Party warrants that it has been represented and advised by counsel in connection

with the negotiation, preparation, and execution of this Stipulation and all matters covered by it.

      13.   Jurisdiction.  In light of the fact that the Adversary Proceeding is pending in the

U.S. Court, for any action or proceeding arising out of or related to this Stipulation of settlement

of the Adversary Proceeding, each Party hereby (a) irrevocably submits to and accepts the exclusive jurisdiction of (i) the U.S. Court, if such action or proceeding is brought prior to the entry of a final decree closing the U.S. Debtors' chapter 11 cases pending in the U.S. Court, and (ii) the U.S. District Court for the District of Delaware in New Castle County, state of Delaware, if such action or proceeding is brought after entry of a final decree closing such bankruptcy cases, and (b) waives any defense of forum non conveniens or other objection to venue in such action or proceeding.  Nothing in this provision shall, or be deemed to, determine, ratify, or adopt, or have any impact whatsoever on any issue or subject not addressed in this Stipulation, including without limitation any issue of jurisdiction relating to NNL, NNC, NNI or the allocation or distribution of the Settlement Amount (which is governed by the Side Agreement) or the allocation or distribution of any other funds or proceeds among any Nortel entities.

14.    Jury Waiver.  Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect of any litigation directly or indirectly arising out of, under or in connection with this Stipulation or any transaction contemplated hereby or thereby.  Each Party (i) certifies that no representative, agent or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties hereto have been induced to enter into this Stipulation, by, among other things, the mutual waivers and certifications in this paragraph.

15.    Signing Authority.  The Parties represent and warrant to each other that the signatories to this Stipulation on their respective behalf have full power and authority to enter into it.

16.    <u>Manner of Execution</u>.  This Stipulation may be executed in counterparts, each of which shall constitute an original, and such counterparts shall be construed together as one instrument.  Facsimile or pdf signatures shall be deemed original signatures.

*[Remainder of this page left intentionally blank]*

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed

this Stipulation.

Dated: September 26, 2011

Communications Test Design, Inc.

By _____

Name: Gerald J. Parsons

Title: Chairman & CEO

IN WITNESS WHEREOF, each of the parties hereto has caused this Stipulation to be executed on the day and year first above written.

NORTEL NETWORKS LIMITED        NORTEL NETWORKS CORPORATION

By:_____       By:_____
Name:                           Name:
Title:                            Title:

By:_____       By:_____
Name:                           Name:
Title:                            Title:

NORTEL NETWORKS INC.

By:_____
Name:  John Ray
Title:    Principal Officer

IN WITNESS WHEREOF, each of the parties hereto has caused this Stipulation to be executed on the day and year first above written.

NORTEL NETWORKS LIMITED

By: _____
Name:   CLARKE GLASPELL
Title:   CONTROLLER

By: _____
Name:   J Doolittle
Title:   CFO

NORTEL NETWORKS INC.


By: _____
Name:   John Ray
Title:   Principal Officer

NORTEL NETWORKS CORPORATION

By: _____
Name:   CLARKE GLASPELL
Title:   CONTROLLER

By: _____
Name:   J Doolittle
Title:   CFO

## ACKNOWLEDGMENT OF MONITOR

Ernst & Young Inc., as Monitor of Nortel Canada under the *Companies' Creditors Arrangement Act* approves of NNC and NNL entering into the Stipulation and performing their obligations hereunder.

**Ernst & Young Inc., in its capacity as Monitor of Nortel Networks Corporation *et al*. not in its personal capacity**

Per:

Name:

Title:

EXHIBIT A

PRIOR LICENSE AGREEMENTS[2]

| |
|---|
| Technical Information Agreement dated December 6, 1994 between CTDI and Northern Telecom Inc. |
| Asset Purchase Agreement among Nortel Networks Corporation, CTDI and Communications Repair Logistics Corporation dated July 22, 1999 |
| Addendum to Asset Purchase Agreement dated September 1, 1999 |
| License Agreement between Nortel Networks Corporation and CTDI dated September 1, 1999 |
| Master Contract Repair Services Agreement between Nortel Networks Corporation and CTDI dated September 1, 1999 |
| Transition Services Agreement between Nortel Networks Corporation and CTDI dated September 1, 1999 |
| Alliance Agreement between Nortel Networks Limited and CTDI dated February 22, 2006 |
| Technical Information License Agreement between Nortel Networks Limited and CTDI effective February 22, 2006 |

---

[2]        All agreements listed above includes by reference each and every exhibit, schedule, modification, or amendment to such agreement whether or not identified. The list set forth above is intended to be comprehensive but not exclusive, and to the extent that any other agreements exist, the omission of such agreement(s) from the list set forth above is inadvertent and shall have no impact on the existence, performance, status, or enforcement of such other agreements.

EXHIBIT B

THIRD PARTIES TO BE NOTICED

| |
|---|
| Avaya Inc. |
| Baker Botts LLP |
| Blade Network Technologies, Inc. |
| Blake, Cassels & Graydon LLP |
| Cherry Petersen Landry Albert LLP |
| Ciena Corporation |
| GENBAND Inc. |
| Hitachi Communication Technologies America, Inc. |
| Hitachi, Ltd. Telecommunications & Network Systems Division |
| Kapsch CarrierCom AG |
| Kapsch CarrierCom France SAS |
| Kramer Levin Naftalis & Frankel LLP |
| Latham & Watkins |
| McCarthy Tetrault |
| Microsoft Corporation |
| Morrison & Foerster LLP |
| Paul, Weiss, Rifkind, Wharton & Garrison LLP |
| Pillar Commercial, LLC |
| Radware Ltd. |
| Rockstar Bidco, LP |
| Ropes & Gray LLP |
| Stikeman Elliott LLP |
| Telefonaktiebolaget LM Ericsson |
| Weil, Gotshal & Manges LLP |

EXHIBIT C

NORTEL DEBTOR ENTITIES

| US Debtors | US Tax ID |
|---|---|
| Architel Systems (U.S.) Corporation | 3826 |
| CoreTek, Inc. | 5722 |
| Nortel Altsystems Inc. | 9769 |
| Nortel Altsystems International inc. | 5596 |
| Nortel Networks (CALA) Inc. | 4226 |
| Nortel Networks Applications Management Solutions Inc. | 2846 |
| Nortel Networks Cable Solutions Inc. | 567 |
| Nortel Networks Capital Corporation | 9620 |
| Nortel Networks HPOCS Inc. | 3546 |
| Nortel Networks Inc. | 6332 |
| Nortel Networks International Inc. | 358 |
| Nortel Networks Optical Components Inc. | 36456 |
| Northern Telecom International Inc. | 6286 |
| Qtera Corporation | 251 |
| Sonoma Systems | 2073 |
| Xros. Inc. | 4181 |

| Canadian Debtors |
|---|
| Nortel Networks Corporation |
| Nortel Networks Global Corporation |
| Nortel Networks International Corporation |
| Nortel Networks Ltd. |

EXHIBIT D

## CTDI ENTITIES TO BE RELEASED

| |
|---|
| Communications Repair Logistics Company |
| Communications Test Design Singapore, Ptd. Ltd. |
| Communications Test Design, Inc. |
| Communications Test Design, India Pvt. Ltd. |
| CTDI Asia Pacific, Inc. |
| CTDI Canada, Inc. |
| CTDI Do Brasil, Ltda. |
| CTDI GmbH |
| CTDI Kft (Hungary) |
| CTDI Korea, Ltd. |
| CTDI Ltd. (UK) |
| CTDI Mexico, S.A. de C.V. |
| CTDI S.L. (Spain) |
| CTDI s.r.l. (Italy) |
| CTDI Telecommunications Equipment (Beijing) Co. Ltd. |
| Link America, Inc., |
| Phoenix Wireless, Inc. |
| Trillion Communications Corp. |