**EXHIBIT C**

### SIDE AGREEMENT REGARDING
### CTDI ADVERSARY PROCEEDING SETTLEMENT

This SIDE AGREEMENT REGARDING CTDI ADVERSARY PROCEEDING SETTLEMENT (the "CTDI Side Agreement") is dated as of September 26, 2011, among (i) Nortel Networks Inc., a corporation organized under the laws of Delaware ("NNI"); (ii) Nortel Networks Limited, a corporation organized under the laws of Canada ("NNL"); and (iii) Nortel Networks Corporation, a corporation organized under the laws of Canada ("NNC," together with NNL, the "Canadian Entities," and together with NNI, the "Nortel Parties"); regarding the terms of settlement of an adversary proceeding pending between NNI, the Canadian Entities, and Communications Test Design, Inc. ("CTDI") in the U.S. Bankruptcy Court for the District of Delaware (the "Court").

### W I T N E S S E T H:

WHEREAS, on January 14, 2009 (the "Petition Date"), NNI and certain of its affiliates (the "U.S. Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Court;

WHEREAS, also on the Petition Date, NNC, NNL and certain of their Canadian affiliates filed an application with the Ontario Superior Court of Justice (the "Canadian Court" and together with the Court, the "Courts") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors;

WHEREAS, an Official Committee of Unsecured Creditors (the "Committee") was appointed in respect of the U.S. Debtors, and Ernst & Young Inc., was appointed by the Canadian Court as Monitor of the Canadian Entities (the "Monitor") and certain of their Canadian affiliates;

WHEREAS, on September 21, 2010, NNI instituted an adversary proceeding, Adv. Proc. No. 10-53065 (KG), by filing a complaint against Defendant CTDI (D.I. 1), and NNL instituted an adversary proceeding, Adv. Proc. No. 10-53066 (KG), by filing a complaint against Defendant CTDI (D.I. 1), which alleged claims of trade secret misappropriation, trademark infringement, breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, and unjust enrichment;

WHEREAS, on December 10, 2010, the adversary proceedings were consolidated into a single adversary proceeding, Adv. Proc. No. 10-53065 (KG) (the "Adversary Proceeding") (D.I. 40);

WHEREAS, on January 3, 2011, Defendant CTDI filed Answers to the Complaints and Counterclaims (D.I. 53 and D.I. 54) in the Adversary Proceeding, denying certain allegations and asserting various defenses and asserting counterclaims against NNI, NNL and NNC (the "Counterclaims") and simultaneously moved to join NNC as a Counterclaim Defendant (D.I. 55);

WHEREAS, on March 18, 2011, the Court granted CTDI's motion to join NNC as a Counterclaim Defendant (D.I. 156);

WHEREAS, the Nortel Parties and CTDI determined that it was in their respective best interests to attempt to compromise and settle the issues without further litigation and, in furtherance thereof, the Court appointed as mediator the Hon. Raymond T. Lyons (D.I. 202);

WHEREAS, since the Complaints, Answers and Counterclaims were filed, including in connection with the mediation that took place on June 10, 2011, CTDI, the Nortel Parties, the Monitor, and the Committee engaged in arm's-length negotiations and, to avoid the costs, risks, and burdens that further litigation of the Claims and Counterclaims would entail, CTDI and the Nortel Parties agreed to a full and final settlement of any and all Claims by any of the Nortel Parties against CTDI, and Counterclaims by CTDI against any of the Nortel Parties, that were raised in the Adversary Proceeding or of any claims or counterclaims that arise out of or relate to the facts and circumstances alleged in the Adversary Proceeding, by entering into a stipulation and settlement agreement (the "<u>Stipulation</u>"),[1] which remains subject to approval by the Court;

and

WHEREAS, for the purposes of facilitating the allocation of the Settlement Amount among the Nortel Parties, the Nortel Parties have agreed to the division of the Settlement Amount on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is stipulated and agreed by and between the Nortel Parties, as follows:

1. <u>Allocation of Settlement Amount; Reimbursement of Expenses</u>.

a. Subject to subsections 1.b., 1.c., and 1.d. below, the Nortel Parties agree that the Settlement Amount shall be distributed among the Nortel Parties, *first*, to pay and reimburse each of the Nortel Parties for their respective, reasonable legal fees and expenses (including, without limitation, the cost of document review and processing) incurred in connection with the litigation, mediation and resolution of the parties' disputes resolved by the Stipulation through the date of the entry of an order by the Court approving the Stipulation (each a "<u>CTDI Related Expense</u>"), and, *second*, any remaining Settlement Amount (the "<u>Remaining Settlement Amount</u>") shall be allocated and shared ▓▓▓▓▓▓▓▓▓▓ payable to NNI and ▓▓▓▓▓▓▓▓▓▓ payable to NNL.

b. Each of the Nortel Parties agrees to the final, total amounts of their respective CTDI Related Expense as follows:

(i) The Canadian Entities' CTDI Related Expense totals ▓▓▓▓▓▓▓▓▓▓

(ii) NNI's CTDI Related Expense totals ▓▓▓▓▓▓▓▓▓▓

The Settlement Amount ▓▓▓▓▓▓▓▓▓▓, *minus* the total CTDI Related Expense ▓▓▓▓▓▓▓▓▓▓, yields a Remaining Settlement Amount of ▓▓▓▓▓▓▓▓▓▓.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Stipulation.

c. Within three (3) business days after the Settlement Date, NNI shall remit to NNL, on behalf of the Canadian Entities, by wire transfer of immediately available funds (pursuant to directions provided by the Canadian entities) the amount of ▮▮▮▮▮ which is the sum of: (i) the Canadian Entities' CTDI Related Expense ▮▮▮▮▮, *plus* (ii) USD ▮▮▮▮▮, which is the product of (A) the Remaining Settlement Amount ▮▮▮▮▮ *multiplied by* (B) ▮▮▮▮▮ Such payment shall be made by NNI to NNL in full without any set-off, deduction, withholding or counterclaim howsoever arising, and NNL acknowledges that NNI shall retain the remaining portion of the Settlement Amount without any claim by NNL to such remaining portion howsoever arising.

d. Upon receipt by NNL of the payment contemplated in subsection 1.c. hereof, the Canadian Entities shall release any and all claim to, and NNI shall retain as a portion of its share of the Settlement Amount, the payment in the amount of ▮▮▮▮▮ that CTDI proffered in contemplation of partial settlement on March 11, 2010 (the "March 2010 Payment").

2. Cooperation. The Nortel Parties agree to support the allocation of the Settlement Amount and oppose, and to cooperate in opposing, any third party objection to the allocation of the Settlement Amount pursuant to the terms of this CTDI Side Agreement. Each Nortel Party shall cooperate in the defense of, and use commercially reasonable efforts to defend against, such third party objections to the allocation of the Settlement Amount pursuant to this CTDI Side Agreement.

3. Jurisdiction. The Nortel Parties agree that the Courts (in a joint hearing conducted pursuant to the Amended Cross-Border Court-to-Court Protocol) shall determine any disputes among them in connection with this CTDI Side Agreement.

4. Conditions to Effectiveness. This CTDI Side Agreement shall only become effective and binding on the Nortel Parties if the Court enters an order approving the Stipulation (the "Court Approval") by no later than December 15, 2011 (the "Termination Date"), which Termination Date may be extended upon consent of the Canadian Entities and NNI, provided that NNI shall provide prior written notice of any such extension to the Committee. If Court Approval does not occur on or before the Termination Date, (a) this CTDI Side Agreement, without further notice or action by any of the Nortel Parties, shall be deemed to be null and void, (b) the Nortel Parties' rights as they existed immediately prior to the execution of this CTDI Side Agreement shall be restored, and (c) nothing herein shall constitute an admission, limitation or waiver with respect to the Nortel Parties' rights or claims to any ultimate recovery from CTDI, including, without limitation, the Nortel Parties' rights or claims to recovery of any legal fees and expenses, provided that section 6 hereof shall survive indefinitely.

5. Bankruptcy. If, after the implementation of the transactions contemplated in the Stipulation, any attempt is made to set aside or void as a preference, fraudulent conveyance or under any similar provision of the Bankruptcy Code (11 U.S.C. § 101, et seq.) or any other bankruptcy or insolvency or creditor rights law or in any similar claim or proceeding under the laws of any jurisdiction, any portion of the transactions effected pursuant to the Stipulation or any transfer or payment made by CTDI thereunder (an "Avoidance Action"), each Nortel Party shall cooperate in the defense of, and use commercially reasonable efforts to defend against, such Avoidance Action.

3

6. <u>Without Prejudice to Allocation</u>. The allocation of the Settlement Amount agreed to herein shall not, and shall not be deemed to, determine, ratify, adopt or have any impact whatsoever on the allocation of proceeds from any sale transaction among the various Nortel entities. The Nortel Parties agree to oppose and to cooperate in opposing the use of the Settlement Amount allocation agreed to herein by any entity before any dispute resolver(s) appointed pursuant to the Interim Sales Protocol (as defined in the Interim Funding and Settlement Agreement entered into by, among others, the Nortel Parties, on June 9, 2009), any court, or such other judicial or quasijudicial body or similar authority that may determine the allocation or distribution of such sale proceeds.

7. <u>Governing Law</u>. The Nortel Parties agree that this Agreement shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

8. <u>Jury Trial Waived</u>. Each Nortel Party hereby waives, to the fullest extent permitted by law, any right it may have to a trial by jury in respect of any litigation directly or indirectly arising out of, under or in connection with this agreement or any transaction or matter contemplated hereby. Each party (i) certifies that no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other parties hereto have been induced to enter this agreement by, among other things, mutual waivers and certifications in this section.

9. <u>Signing Authority</u>. The Nortel Parties represent and warrant to each other that the signatories to the CTDI Side Agreement on their respective behalf have full power and authority to enter into it, provided, however, (i) that the power and authority of NNI is expressly subject to approval by the Court; and (ii) The Canadian Entities represent that they have the corporate authority to perform their obligations under this CTDI Side Agreement.

10. <u>Manner of Execution</u>. The CTDI Side Agreement may be executed in counterparts, each of which shall constitute an original, and such counterparts shall be construed together as one instrument. Facsimile or pdf signatures shall be deemed original signatures.

IN WITNESS WHEREOF, the Nortel Parties have duly executed this CTDI Side Agreement as of the date first written above.

*[Remainder of Page Intentionally Left Blank]*

Dated: September __27__, 2011

        **Nortel Networks Corporation**

By: _____/s/_____
   Name: J Doolittle
   Title: CFO

By: _____/s/_____
   Name: Anna Ventresca
   Title: General Counsel – Corporate and Corporate Secretary

**Nortel Networks Limited**

By: _____/s/_____
   Name: J Doolittle
   Title: CFO

By: _____/s/_____
   Name: Anna Ventresca
   Title: General Counsel – Corporate and Corporate Secretary

**Nortel Networks Inc.**

By: _____
   Name:
   Title:

5

Dated: Sept. 26, 2011

**Nortel Networks Corporation**

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

**Nortel Networks Limited**

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

**Nortel Networks Inc.**

By:_____
    Name: John Ray
    Title: Principal Officer

...

## ACKNOWLEDGMENT OF MONITOR

Ernst & Young Inc., as Monitor of the Canadian Entities under the *Companies' Creditors Arrangement Act* approves the CTDI Side Agreement.

**Ernst & Young Inc., in its capacity as Monitor of Nortel Networks Corporation *et al.* not in its personal capacity**

Per: _____

Name: Tom Ayres
Title: Senior Vice President

6