IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
*In re*  : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
                    Debtors. : Jointly Administered
:
: Hearing date: October 26, 2011, 10:00 am
: Objections due: October 19, 2011, 4:00 pm
------------------------------------------------------------X

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING A SECOND AMENDMENT TO THE TERMS OF COMPENSATION OF LAZARD FRÈRES & CO. LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), approving a second amendment to the terms under which Lazard Frères & Co. LLC ("Lazard") is compensated as financial advisor and investment banker to the Debtors, and granting such other related and further relief as the Court deems just and proper. In support of the Motion, the Debtors respectfully represent as follows:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

**Jurisdiction and Venue**

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and this matter is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1.

**Background**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6. Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7. By this Motion, the Debtors seek entry of an order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1, approving a second amendment to the terms under which Lazard is compensated as financial advisor and investment banker to the Debtors, and granting such related and further relief as the Court deems just and proper.  As set forth in more detail below, the amendment reflects the current posture of these chapter 11 proceedings and the winding down of the expert and outstanding services that have been provided by Lazard in these cases.  Specifically, as set forth further below, Lazard has agreed to forego the payment of any Monthly Fees payable on and

---

[4] The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

3

after May 2011 (even though its engagement is not being terminated at this time and Lazard will remain available to assist the Debtors and other Nortel affiliates as needed in the final stages of these proceedings) and the Debtors have agreed that the remaining Minority Sale Transaction Fees payable to Lazard shall be paid upon approval of the relevant Fees (subject to this Court's final approval of those Fees).  The amendment does not result in any additional fees or compensation to be paid to Lazard.

## Facts Relevant to this Application

8. On February 13, 2009, the Debtors filed an Application for an Order Authorizing Employment and Retention of Lazard as Financial Advisor and Investment Banker *Nunc Pro Tunc* to the Petition Date [D.I. 294] (the "Original Application").

9. On March 20, 2009, the Court entered the Order under Sections 327(a) and 328(a) of the Bankruptcy Code Authorizing Retention and Employment of Lazard as Financial Advisor and Investment Banker to the Debtors *Nunc Pro Tunc* to the Petition Date [D.I. 507] (the "Original Retention Order"), which approved the terms and conditions of the Lazard engagement as set forth in that certain letter agreement dated March 16, 2009, attached as Exhibit A to the Original Retention Order (the "Engagement Agreement").  A copy of the Engagement Agreement is attached hereto as **Exhibit B**.

10. On February 9, 2010, the Debtors filed an Application for Entry of an Order Approving an Amendment to the Terms of Compensation of Lazard as Financial Advisor and Investment Banker to the Debtors [D.I. 2397] (the "First Amendment Application").

11. On February 26, 2010, the Court entered the Order Approving an Amendment to the Terms of Compensation of Lazard as Financial Advisor and Investment Banker for the Debtors and Debtors in Possession [D.I. 2561] (the "First Amendment Order").  The First

Amendment Order provided, among other things, that "with respect to any fees chargeable by Lazard to Nortel under Section 3(d) of the Engagement Agreement for any transaction that has not been approved by this Court prior to February 1, 2010, any such fees shall become due and payable on the date that the Debtors make a distribution or distributions equal to or exceeding 35% of the amount estimated in an approved disclosure statement for distribution to general unsecured creditors under a Bankruptcy Court approved plan." (See the First Amendment Order, ¶ 7.)

12. Lazard was jointly retained by the Debtors, the Canadian Debtors and the EMEA Debtors at the beginning of the creditor protection proceedings in the U.S., Canada and Europe. The fees paid and expenses reimbursed to date have been borne collectively by the various Nortel sellers as the fees and expenses have been paid from the sale escrow accounts. Payment of the remaining fees and expenses will also be made out of the relevant sale escrow accounts, and as such borne by the relevant Nortel sellers in proportion to their ultimate pro rata share of the sale proceeds.

13. Since the Amendment Order was entered, three additional sale transactions have closed, and with respect to those three transactions, Minority Sale Transaction Fees have accrued in the aggregate amount of $19,393,651.09, subject to necessary court approval.[5] Under Lazard's current compensation structure (the "Current Fee Structure"), these Minority Sale Transaction Fees would become due and payable upon satisfaction of the 35% distribution condition.

---

[5] The CVAS Minority Sale Transaction Fee of $1,562,000 has been approved in the Sixth Omnibus Order Allowing Certain Professionals Interim Compensation for Services Rendered and Reimbursement of Expenses [D.I. 4048], dated September 30, 2010, subject to certain possible adjustments. As noted below, after taking into account of certain purchase price adjustments, the CVAS Minority Sale Transaction Fee has been adjusted to $1,400,334.41. The Minority Sale Transaction Fees with respect to the sale of Multi-Service Switch Business Assets (the "MSS Sale Transaction") and the sale of Residual Patent Assets (the "IP Sale Transaction") will be submitted for approval after the filing of this Motion.

5

14. With respect to each of Nortel's post-petition sale transactions, Lazard has devoted tremendous amounts of time and resources, successfully closing seven sale transactions which have generated approximately $7.5 billion in cash proceeds for the estates. Lazard served as investment banker responsible for all aspects of these transactions over a two and a half year period including, but not limited to assessing and marketing the business assets, engaging in countless meetings and negotiation sessions with multiple parties, educating creditor constituencies on various aspects of a potential sale, engaging in multiple auction processes, providing court testimony and closing each of the deals. Over all, Lazard has performed its role as a financial advisor and investment banker in successful, effective and prudent manner, assisting Nortel to maximize the value of its businesses and the Debtors to maximize the value of their estates through unprecedented multi-jurisdictional auctions, culminating in the record-setting patent sale which generated $4.5 billion in proceeds.

15. Against the backdrop of reduced M&A activity and the beginning of a new stage in Nortel's insolvency proceedings worldwide, these proceedings are entering a new phase. As a part of this transition, the Debtors, the Canadian Debtors and the Joint Administrators (acting on behalf of the EMEA Debtors) entered into discussions with Lazard in order to reassess the Current Fee Structure in light of the tremendous efforts undertaken by Lazard throughout these chapter 11 proceedings and the reduced need for continued assistance from Lazard going forward. After careful consideration of all aspects of the development of the case, Nortel's remaining assets and businesses, the quality and quantity of services provided by Lazard, the Debtors, the Canadian Debtors, the Monitor, the Joint Administrators and Lazard have agreed, subject to the Court's approval, to amend the Current Fee Structure as described below (the "<u>Amended Fee Structure</u>"). The Committee has also reviewed the Amended Fee Structure and

does not object to the proposed amendments.

    16.    The Amended Fee Structure, if approved, will provide as follows:

    (a)    <u>Monthly Fee</u>.  The Current Fee Structure provides a monthly fee of $250,000 (the "<u>Monthly Fee</u>"), payable in advance on the first day of each month beginning February 1, 2009 until the earlier of the completion of the Restructuring or the termination of Lazard's engagement.  One-half of each Monthly Fee that becomes payable on or after July 1, 2009 and 100% of each Monthly Fee that becomes payable on or after January 1, 2011 and is paid thereafter, respectively, is credited against any Restructuring/Breakup Fee, Sale Transaction Fee or any Minority Sale Transaction Fee.  As modified, the Monthly Fees will not be charged on or after May 1, 2011.  For the avoidance of doubt, Nortel will continue to reimburse any reasonable expenses in accordance with the terms and conditions set forth in the Engagement Agreement and subject to court approval.

    (b)    <u>Minority Sale Transaction Fees</u>.  Under the Current Fee Structure, a fee equal to 50% of the fee calculated based on the Aggregate Consideration as set forth in Schedule I to the Engagement Agreement (the "<u>Minority Sale Transaction Fee</u>") with respect to any transaction that has not been approved by this Court prior to February 1, 2010 become due and payable on the date that the Debtors make a distribution or distributions equal to or exceeding 35% of the amount estimated in an approved disclosure statement for distribution to general unsecured creditors under a Bankruptcy Court approved plan.  The parties agree to waive this condition, and as modified, such Minority Sale Transaction Fees will be due and payable (i) with respect to the CVAS Sale Transaction, upon approval of the Amended Fee Structure by the Court, and (ii) with respect to the MSS Sale Transaction and IP Sale Transaction, upon approval of the relevant Minority Sale Transaction Fee by this Court.  For the avoidance of doubt, all Minority Sale Transaction Fees, including the Fees for the CVAS, MSS and IP Sale Transactions, will remain subject to the final fee approval by the Court pursuant to the relevant provisions of the Bankruptcy Code.

Other than the amendments specifically identified above, the Debtors are seeking no further changes to the Current Fee Structure.

    17.    As a result of the Amended Fee Structure, the net Minority Sale Transaction Fees with respect to the CVAS, MSS and IP Sale Transactions that will be payable to Lazard are $17,357,467.29, after credit of the Monthly Fees.  The CVAS Minority Sale Transaction Fee will

become due and payable if and when this Court approves the Amended Fee Structure (subject to final approval of the Fee by this Court) and would be paid out of the CVAS sale proceeds escrow account. In addition, the MSS and IP Minority Sale Transaction Fees will become due and payable if and when this Court approves such Fees, and those Fees would be paid out of the relevant sale proceeds escrow accounts.

|  | Aggregate Consideration | Minority Sale Transaction Fees | Applicable Credit of Monthly Fees | Amount to become due and payable |
| --- | --- | --- | --- | --- |
| CVAS Sale Transaction | $157,743,756.00 | $1,400,334.41 | $384,868.20 | $1,015,466.21 |
| MSS Sale Transaction | $53,521,906.00 | $618,316.68 | $266,447.40 | $351,869.28 |
| IP Sale Transaction | $4,500,000,000.00 | $17,375,000.00 | $1,384,868.20 | $15,990,131.80 |
| Total |  | $19,393,651.09 | $2,036,183.80 | $17,357,467.29 |

**Basis for Relief**

18. Under section 327(a) of the Bankruptcy Code, a debtor-in-possession may employ one or more professionals that do not hold or represent an interest adverse to the estate and that are disinterested persons to assist the debtor-in-possession in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327(a).

19. Section 328(a) of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

20. By this Motion, the Debtors respectfully request that the Court approve the Amended Fee Structure.

21. The Debtors believe that the Amended Fee Structure is fair and reasonable in light of the successful conclusion of all major sale transactions and Lazard's resources and efforts

extended in those transactions. In reaching this conclusion, the Debtors have considered the leading role Lazard has taken in the remarkable period of M&A activity. Also, given the fact that all major divesture efforts have concluded, the Debtors believe that the Debtors and their affiliates will no longer require Lazard's services on the scale they have demanded to date. In addition, Lazard remains willing to provide additional services to the Debtors (as well as the Canadian Debtors and the EMEA Debtors) on a project-by-project basis for additional fees to be determined, subject to necessary Court approval. After such consideration, the Debtors came to believe, as does Lazard, that amending the Current Fee Structure as described above is in fact reasonable and compensates fairly Lazard for its services without any unnecessary delay.

22.     The Debtors believe that, with respect to each and every one of the global divesture transactions that have taken place since the commencement of these chapter 11 proceedings, Lazard has performed its role as a financial advisor and investment banker in an effective and prudent manner, successfully assisting the Debtors to maximize the value of the estate.

23.     The Debtors also believe that the 35% distribution condition imposed in the First Amendment Order is no longer relevant. Lazard is taking no part in the allocation discussions among various Nortel debtor entities and other constituencies, and there is nothing Lazard can do to accelerate the allocation of the sale proceeds or distributions to the creditors. Lazard's role in Nortel's creditor proceedings has been recently exclusively focused on various M&A strategies and transactions, and that critical phase has concluded in a very successful fashion in large part as a result of Lazard's excellent work. Lazard should be paid now and not be held up by disputes over allocation.

24.     Accordingly, the Debtors respectfully submit that the Amended Fee Structure is

fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

25. Except as expressly set forth in this Motion, all other terms and conditions of the Engagement Agreement, as amended by the Amendment Order, shall remain the same.

### Reservation of Rights

26. Should this Court determine not to approve this Motion for any reason, then the Engagement Agreement, as approved by the Original Retention Order and amended by the First Amendment Order, shall remain in full force and effect, without interruption. The Debtors hereby reserve any and all of their rights to further amend, restate or terminate the Engagement Agreement pursuant to such Agreement's terms, and subject to any necessary court approval.

### Notice

27. Notice of this Motion has been provided via electronic transmission, hand delivery or first class mail to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Joint Administrators; (iv) counsel to the Monitor; (v) counsel to the Canadian Debtors; (vi) counsel to the Bondholder Group; (vii) Lazard; and (viii) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

28. No prior request for the relief sought herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that the Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto as **Exhibit A**; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: October 7, 2011<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley *(admitted pro hac vice)*<br>Lisa M. Schweitzer *(admitted pro hac vice)*<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Chad A. Fights*<br>Derek C. Abbott (No. 3376)<br>Eric D. Schwartz (No. 3134)<br>Ann C. Cordo (No. 4817)<br>Chad A. Fights (No. 5006)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors*<br>*  and Debtors-in-Possession* |