**<u>EXHIBIT A</u>**

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**SEVENTY-FOURTH REPORT OF THE MONITOR**
**DATED SEPTEMBER 14, 2011**

## INTRODUCTION

1.  On January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC" and collectively with all its subsidiaries "Nortel" or the "Company"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation ("NNTC"), Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "Applicants") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("CCAA"). Pursuant to the Order of this Honourable Court dated January 14, 2009, as amended and restated (the "Initial Order"), Ernst & Young Inc. was appointed as the Monitor of the Applicants (the "Monitor") in the CCAA proceedings. The stay of proceedings was extended to December 14, 2011, by this Honourable Court in its Order dated June 30, 2011.

2.  Nortel Networks Inc. ("NNI") and certain of its U.S. subsidiaries and affiliates concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") on January 14, 2009 (the "Chapter 11 Proceedings"). As required by U.S. law, an official unsecured creditors committee (the "Committee") was established in January, 2009.

3.  An ad hoc group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "Bondholder Group"). In addition, pursuant to Orders of this Honourable Court dated May 27, 2009, July 22, 2009 and July 30, 2009, respectively, representative counsel was appointed on behalf of the former employees of the Applicants, the continuing employees of the Applicants and the LTD Beneficiaries and each of these groups is participating in the CCAA proceedings.

4.  Nortel Networks (CALA) Inc. ("NN CALA" and together with NNI and certain of its subsidiaries and affiliates that filed on January 14, 2009, the "U.S. Debtors") filed a voluntary petition under Chapter 11 of the Code in the U.S. Court on July 14, 2009.

5.  Nortel Networks UK Limited ("NNUK") and certain of its affiliates located in EMEA were granted administration orders (the "UK Administration Orders") by the High Court of England and Wales on January 14, 2009 (collectively the "EMEA Debtors"). The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as administrators of the various EMEA Debtors, except for Nortel Networks (Ireland) Limited ("NN Ireland"), to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively the "Joint Administrators").

6.  Subsequent to the filing date, Nortel Networks SA ("NNSA") commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court.

7.  The CCAA proceedings and the UK Administration proceedings of NNUK and the other EMEA Debtors have been recognized by the U.S. Court as foreign main proceedings under Chapter 15 of the Code.

8.  Subsequent to the Filing Date, certain other Nortel subsidiaries have filed for creditor protection or bankruptcy proceedings in the local jurisdiction in which they are located.

**PURPOSE**

9.  The purpose of this Seventy-Fourth Report of the Monitor (the "Seventy-Fourth Report") is:

    a)  to support the Applicants' request for approval of that certain Brampton Property Transition Agreement dated June 30, 2011, between Rogers Communications Inc. ("Rogers") and Nortel Networks Limited (the "Brampton Property Transition Agreement");

    b)  to provide information concerning the motions brought by Sidney Street Properties Corp. and the City of Belleville/Algonquin and Lakeshore Catholic District School Board returnable September 19, 2011, and provide the Monitor's views in respect thereof; and

    c)  to provide an update to this Honourable Court as to the status of various matters pertaining to the former Nortel properties that are the subject of the Applicants' motion pertaining to environmental matters returnable September 19, 2011 (the "Environmental Motion").

**TERMS OF REFERENCE**

10. In preparing this Seventy-Fourth Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with management of Nortel. The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of the information and accordingly, the Monitor expresses no opinion or other form of assurance on the information contained in this Seventy-Fourth Report.

11. Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

12. Capitalized terms not defined in this Seventy-Fourth Report are as defined in the Affidavit of John Doolittle sworn on January 14, 2009, the Pre-Filing Report, the Sixty-Sixth Report of the Monitor dated May 18, 2011, or the Claims Procedure Order dated July 30, 2009 (as amended and restated, the "Claims Procedure Order"). A copy of the Claims Procedure Order is attached as Appendix "A" hereto.

13. The Monitor has made various materials relating to the CCAA proceedings available on its website at www.ey.com/ca/nortel. The Monitor's website also contains a dynamic link to Epiq Bankruptcy LLC's website where materials relating to the Chapter 11 Proceedings are posted.

## BRAMPTON PROPERTY TRANSITION AGREEMENT

14. Following the service of the Applicants' Environmental Motion, the Applicants, the Monitor and Rogers engaged in negotiations regarding the transition of NNL's environmental responsibilities in relation to the Brampton Property to Rogers. These negotiations subsequently resulted in NNL and Rogers entering into the Brampton Property Transition Agreement, the terms of which include NNL's agreement to perform certain limited activities in relation to a pending environmental risk assessment at the Brampton Property in exchange for Rogers agreeing to consent to the repudiation of various contractual obligations of NNL to Rogers in relation to the Brampton Property and otherwise not oppose the relief being sought by the Applicants at the Environmental Motion. As such, the sole remaining issue to be addressed in connection with the Brampton Property is the resolution of any Restructuring Claim asserted by Rogers.

15. The Monitor is of the view that the Brampton Property Transition Agreement represents a reasonable resolution of the various issues between NNL and Rogers pertaining to the transition of environmental responsibilities at the Brampton Property and supports the Applicants' request seeking approval of same.

**MOTIONS IN RELATION TO THE BELLEVILLE SITE**

16. As reported in the Sixty-Sixth Report of the Monitor dated May 18, 2011, NNL was the owner of 250 Sidney Street, Belleville, Ontario (the "Belleville Site") from 1946 until 1999, at which point NNL sold the Belleville Site to Sidney Street Properties Corp. ("SSPC").

17. Pursuant to an Amending Agreement between NNL and an affiliate of SSPC dated July 20, 2000, NNL agreed to assume responsibility for dealing with certain known contamination at the Belleville Site for a period of time. NNL also provided a time limited indemnity in favour of Sidney for certain environmental liabilities.

18. On September 30, 2009 (being the Prefiling Claims Bar Date), SSPC filed a proof of claim against NNL in relation to the Belleville Site claiming: (i) $5,489.96 for unpaid realty taxes; and (ii) $1,000,000 to $10,000,000 in relation to alleged obligations of NNL to SSPC regarding certain environmental matters at the Belleville Site.

19. On August 22, 2011, SSPC filed an "Amended Proof of Loss re: Nortel Networks Corporation" claiming an amount of $34,464,000 to $51,431,000 in relation to alleged obligations of NNL to SSPC regarding certain environmental matters at the Belleville Site (the "Amended SSPC Claim"). The Amended SSPC Claim also purports to amend SSPC's claim to name "all directors and officers of Nortel Network from 1948 to August 22, 2011".

20. While the Monitor and the Applicants have reviewed the claims filed by SSPC on a preliminary basis, the Monitor has not sought to disallow or otherwise deal with these claims as yet.

21. On September 19, 2011, SSPC filed a motion seeking:

    a) an Order directing NNL and its environmental consultants to disclose and produce to SSPC all non-privileged documentation related to the historical environmental monitoring and remediation of the Belleville Site;

    b) an extension of the Claims Bar Date in relation to any claim filed by SSPC or any other person in relation to pollution at the Belleville Site to the later of (i) 90 days

from the date of this Court's order with respect to the Environmental Motion; and (ii) 15 days from the date of the approval by the Ministry of the Environment of the work plan for the Belleville Site required pursuant to the Director's Order of September 7, 2011; and

    c) a declaration that the Amended SSPC Claim is permitted to be filed and is not barred by the Claims Procedure Order.

22. For the reasons outlined below, the Monitor is of the view that each portion of the relief sought by SSPC is either premature or not required.

***Production Relief***

23. With respect to the production relief sought, the Monitor understands, as noted in the Affidavit of Thomas McKenna sworn March 14, 2011, that SSPC has been kept apprised of the monitoring and remediation work undertaken by the Applicants at the Belleville Site through the provision of annual reports prepared by the Applicants' environmental consultant.

24. Further, the Monitor understands that, following a request by counsel to SSPC made on or about June 27, 2011, the Applicants provided all environmental data related to the Belleville Site in their possession to SSPC.

25. The Monitor had not received (nor, it understands, had the Applicants received) any further requests for production from SSPC until its motion was served on the service list on September 9, 2011.

26. The production relief sought by SSPC is at best premature in that the Applicants and the Monitor should be given the opportunity to consider and respond to any further production requests made by SSPC prior to the Applicants being ordered to make such production (and, indeed, the past conduct of the Applicants demonstrates that they have produced relevant documentation in relation to the Belleville Site to SSPC when it has been requested). Moreover, it is not even clear at this time that there exists any dispute in relation to SSPC's

claims for which production would be necessary. In the event that production becomes necessary at a future point and cannot be resolved on a consensual basis, any disputes regarding production can be brought before this Court (or the Claims Officer) at that time.

27. Accordingly, the Monitor is of the view that the production relief requested by SSPC is not required and should not be granted at this time.

***Claims Bar Date Relief and Relief Sought Concerning the Amended SSPC Claim***

28. With respect to the extension of the Claims Bar Date[1] and the declaration that the Amended SSPC Claim is not barred, the Monitor is of the view that such relief is not required or, in the alternative, premature.

29. First, as noted above, SSPC filed a proof of claim with the Monitor prior to the Prefiling Claims Bar Date that has yet to be disallowed or otherwise addressed. As such, SSPC presently holds an unresolved claim in the claims process. In such a circumstance, the extension of any Claims Bar Date or related relief seems unnecessary.

30. To the extent SSPC seeks an extension of the Restructuring Claims Bar Date in relation to any contractual obligations to SSPC the Applicants may seek to repudiate, such a request is premature as, among other reasons, the Restructuring Claims Bar Date in such a circumstance is only triggered by the Monitor sending a proof of claim document package to SSPC, which it has not done as of yet.[2]

31. Finally, it is inappropriate to link either the Prefiling Claims Bar Date or the Restructuring Claims Bar Date to the date of approval by the MOE of a work plan in relation to the Belleville Site. As the Monitor understands it, SSPC is requesting this relief as it takes the position that the value of any claim it holds against the Applicants will be informed by the outcome of the MOE proceedings in relation to the Belleville Site and, in particular, any

---

[1] The term "Claims Bar Date" as defined and used in the Claims Procedure Order references one of two potentially applicable bar dates: the Prefiling Claims Bar Date, being 4:00 pm (prevailing Eastern time) on September 30, 2009, or the Restructuring Claims Bar Date, discussed below.

[2] The Restructuring Claims Bar Date being, in these circumstances, the date that is 30 days after the date on which the Monitor sends such a package to a claimant.

remediation work it may be required to perform pursuant to a Director's Order issued in respect of the Belleville Site. While the Monitor acknowledges that the outcome of the MOE proceedings in relation to the Belleville Site *may* be relevant to quantifying any claim SSPC may ultimately hold against the Applicants, the completion of such proceedings is not a prerequisite to SSPC filing a claim in the within proceedings (as SSPC has, in fact, done). In the event SSPC's claim is subsequently disputed and in the event SSPC maintains its position that its claim cannot be quantified prior to the completion of the MOE proceedings in relation to the Belleville Site, the issue can be addressed and resolved at that time in the context of the claims resolution procedures established by this Court in its Claims Resolution Order dated September 16, 2010.

32. As regards the relief sought concerning the Amended SSPC Claim, the Monitor has not opposed SSPC's purported ability to amend its initial proof of claim or otherwise asserted that the Amended SSPC Claim is barred pursuant to the Claims Procedure Order. As such, as with dozens of other proofs of claim received by the Monitor after the Prefiling Claims Bar Date, including a number of proofs of claim that purport to amend timely filed proofs of claim, the issues raised by the Amended SSPC Claim have yet to be addressed in these CCAA proceedings.

33. The Monitor recognizes that the issue of late claims, including late claims that purport to amend timely filed proofs of claim, will have to be addressed at some point in these proceedings; however, it is not necessary to resolve these issues now and the Monitor is of the view that the issue should be considered and resolved on the basis of a complete record regarding late claims. As such, the relief sought by SSPC as regards the Amended Proof of Claim is premature and may ultimately be unnecessary depending on how late claims are addressed in these proceedings.

34. Accordingly, the Monitor is of the view that the relief requested by SSPC in relation to the Claims Bar Date and the Amended SSPC Claim should not be granted.

*City of Belleville and Algonquin and Lakeshore Catholic District School Board Motion*

35. Like SSPC, the City of Belleville and Algonquin and Lakeshore Catholic District School Board (collectively, the "Adjacent Property Owners"), whom the Monitor understands to be owners of properties adjacent to the Belleville Site, have sought an extension of the Restructuring Claims Bar Date. For the reasons outlined below, the Monitor is of the view that such an extension is either unnecessary or, at the least, premature.

36. To date, neither of the Adjacent Property Owners have filed proofs of claim in these proceedings[3]; however, from the materials filed by them in connection with the Environmental Motion it appears they allege that certain contaminants at the Belleville Site have migrated to their respective properties and that Nortel is liable for such migration.

37. To the Monitor's knowledge the Applicants have no contractual or other obligation to the Adjacent Property Owners which they seek to repudiate. As such, the Adjacent Property Owners alleged claims are not and will not be subject to the Restructuring Claims Bar Date.

38. The Monitor therefore regards the Adjacent Property Owner's motion as, in effect, seeking a waiver of the Prefiling Claims Bar Date in relation to any claims the Adjacent Property Owners may hold.  For the same reasons as outlined above at paragraphs 32 and 33 in relation to the Amended SSPC Claim, the Monitor is of the view that such relief is premature and, potentially, unnecessary. Moreover, even if the Adjacent Property Owners continue to assert that they hold a Restructuring Claim as opposed to a Prefiling Claim, such a distinction ultimately only becomes relevant should the Monitor take the position that any claims the Adjacent Property Owners assert are barred.

39. Accordingly, the Monitor is of the view that the Adjacent Property Owners' motion should be denied.

---

[3] Without prejudice to any position the Monitor or the Applicants may take regarding late claims, the Monitor has invited the Adjacent Property Owners to file proofs of claim in relation to any claims they allege.

**ENVIRONMENTAL STATUS UPDATE**

40. The Monitor provided an overview of the status of the various properties that are the subject of the Environmental Motion in its Sixty-Sixth Report, including the status of the Applicants ongoing monitoring and remediation activities at those properties. The following paragraphs provide an update on various environmental matters in the period subsequent to the issuance of the Sixty-Sixth Report.

*Ongoing Remediation/Monitoring Efforts and Related Costs*

41. The Applicants have continued to perform "status quo" remediation and monitoring activities at each of the Brockville Site, the Kingston Site, the Belleville Site and the London Site in accordance with past practice. The Monitor understands this consists primarily of monitoring and the continuation of existing "pump and treat" operations.

42. The Applicants have advised the Monitor that the approximate costs incurred by them in relation to these activities for Q1 and Q2 2011, plus costs incurred in connection with the Brampton Property and performing NNL's obligations under the Brampton Property Transition Agreement, were $459,000. Estimated aggregate costs for Q3 and Q4 2011 are $404,000 assuming status quo activities are continued.

*MOE Director's Orders*

43. The MOE posted draft Director's Orders in relation to the Brockville Site, the Kingston Site, the Belleville Site and a new draft Director's Order in relation to the London Site for public comment, which Orders would, *inter alia*, require NNL and certain other named parties to develop and implement work plans to remediate each of the subject properties.

44. Notwithstanding the position of the Applicants and the Monitor that the issuance and service of such orders against the Applicants was stayed and the pending motion before this Honourable Court to determine same, the MOE subsequently issued and served the Director's Order in relation to the London Site (the "London Order") on the Applicants on or about July 20, 2011, necessitating that the Applicants file a notice of appeal with the ERT

to preserve their rights in relation to those proceedings. Following negotiations among the Applicants, the Monitor, the MOE and the other named parties in the London Order, it was agreed that the parties would consent to the filing of a placeholder notice of appeal by Nortel with the ERT and an interim stay of the London Order pending this Honourable Court's decision in respect of the Environmental Motion and that the Applicants would continue to perform status quo remediation at the London Site during the interim stay period. The ERT granted an interim stay of the Director's Order on this basis on August 25, 2011.

45. On or about September 7, 2011, the MOE issued and served Director's Orders in relation to the Brockville Site, the Kingston Site and the Belleville Site. Without prejudice to the Applicants and the Monitor's position that the issuance and service of such orders is stayed, the Applicants, the MOE and the other relevant parties are in the process of negotiating a stay of these orders on the same terms agreed to in connection with the London Order.

## MONITOR'S RECOMMENDATIONS

46.  For the reasons outlined herein, the Monitor recommends that:

      a)  this Honourable Court approve the Brampton Property Transition Agreement; and

      b)  the motions brought by SSPC and the Adjacent Property Owners be denied.


All of which is respectfully submitted this 14th day of September, 2011.



**ERNST & YOUNG INC.**
**in its capacity as Monitor of the Applicants**
**and not in its personal capacity**

Per:



Murray A. McDonald
President

APPENDIX "A"

[ATTACHED]

File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE- COMMERCIAL LIST**


| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | THURSDAY, THE 30TH |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF JULY, 2009 |


IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION (the "Applicants")

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

*AMENDED AND RESTATED*
**CLAIMS PROCEDURE ORDER**

THIS MOTION, made by the Applicants for an Order substantially in the form included

in the Applicants' Motion Record was heard this day at 330 University Avenue, Toronto,

Ontario.

ON READING the Applicants' Notice of Motion, the affidavit of John Doolittle sworn

on July 24, 2009, the Sixteenth report of Ernst & Young Inc. (the "Monitor") dated July 24,

2009, and on hearing the submissions of counsel for the Applicants, the Monitor, and those other

parties present, no one appearing for the other parties served with the Applicants' Motion

Record, although duly served as appears from the affidavit of service of Marna McGeorge sworn

July 24, 2009, filed:

DOCSTOR: 1724621\14

- 2 -

**SERVICE**

1.     THIS COURT ORDERS that the time for service of the Notice of Motion and the Motion
Record filed by the Applicants in support of this Motion be and it is hereby abridged such
that the Motion is properly returnable today.

**MONITOR'S ROLE**

2.     THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and
obligations under the CCAA (as hereinafter defined) and under the Third Amended and
Restated Initial Order of this Court dated January 14, 2009 (such Order, as further
supplemented, amended or varied from time to time, is referred to herein as the "Initial
Order"), is hereby directed and empowered to take such other actions and fulfill such
other roles as are authorized by this Order, and that in taking such other actions and in
fulfilling such other roles, the Monitor shall have the protections given to it in the Initial
Order and this Order, including without limitation the protections provided in paragraph
21 of this Order.

**DEFINITIONS**

3.     The following terms shall have the following meanings ascribed thereto:

(a)     "Bond" means a bond, note or debenture issued pursuant to any of the Bondholder
Trust Indentures and any bonds, notes or debentures issued in substitution or
replacement thereof;

(b)     "Bondholder" means a registered or beneficial holder of a Bond;

(c)     "Bondholder Trustee" means a trustee in respect of any issue of Bonds, being The
Bank of New York Mellon with respect to the first three Bondholder Trust

- 3 -

Indentures identified in paragraph 3(d) below and Law Debenture Trust Company of New York with respect to the fourth of such Bondholder Trust Indentures;

(d)     "Bondholder Trust Indentures" means collectively (i) the Indenture dated as of March 28, 2007 governing the 1.75% Convertible Senior Notes due 2012 and the 2.125% Convertible Senior Notes due 2014 issued by Nortel Networks Corporation and guaranteed by Nortel Networks Limited and Nortel Networks Inc.; (ii) the Indenture dated as of July 5, 2006, as supplemented by the First Supplemental Indenture dated as of July 5, 2006, the Second Supplemental Indenture dated as of May 1, 2007, and the Third Supplemental Indenture dated as of May 28, 2008, governing the Floating Rate Senior Notes due 2011, the 10.125% Senior Notes due 2013 and the 10.750% Senior Notes due 2016 issued by Nortel Networks Limited and guaranteed by Nortel Networks Corporation and Nortel Networks Inc.; (iii) the Indenture dated as of November 30, 1988, governing the 6.875% Notes due 2023 issued by Northern Telecom Limited (now Nortel Networks Limited); and (iv) the Indenture dated as of February 15, 1996, governing the 7.875% Notes due 2026 issued by Northern Telecom Capital Corporation (now Nortel Networks Capital Corporation) and guaranteed by Northern Telecom Limited (now Nortel Networks Limited);

(e)     "Business Day" means a day, other than a Saturday or a Sunday, on which banks are generally open for business in Toronto, Ontario;

(f)     "CCAA" means *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended;

- 4 -

(g)    "Chapter 11 Cases" means the proceedings commenced by Nortel Networks Inc. and others in the United States Bankruptcy Court for the District of Delaware, lead case number 09-10138;

(h)    "Charges" means the Charges as defined in the Initial Order, other than the Directors' Charge, as defined in the Initial Order;

(i)    "Claim" means each of:

　　(i)    any right of any Person against the Applicants, or any of them, in connection with any indebtedness, liability or obligation of any kind of the Applicants, or any of them, whether liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present, future, known or unknown, by guarantee, surety or otherwise and whether or not such right is executory in nature, including the right or ability of any Person to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, which indebtedness, liability or obligation (A) is based in whole or in part on facts existing prior to the Filing Date, (B) relates to a time period prior to the Filing Date, or (C) would have been a claim provable in bankruptcy had the Applicants become bankrupt on the Filing Date (each, a "Prefiling Claim", and collectively, the "Prefiling Claims"),

　　(ii)    any indebtedness, liability or obligation of any kind arising out of the restructuring, termination, repudiation or disclaimer of any lease, contract,

- 5 -

or other agreement or obligation on or after the Filing Date and whether such restructuring, termination, repudiation or disclaimer took place or takes place before or after the date of this Order (each, a "Restructuring Claim", and collectively, the "Restructuring Claims"); and

(iii)   any right of any Person against the Directors or Officers of the Applicants, or any of them, that relates to a Prefiling Claim or a Restructuring Claim for which the Directors or Officers of the Applicants are by law liable to pay in their capacity as Directors or Officers or in any other capacity, including without limitation, any capacity relating to the administration, management or oversight of any of the pension plans or employee benefit plans administered or sponsored by the Applicants or their subsidiaries (each, a "Director/Officer Claim", and collectively, the "Directors/Officers Claims"),

provided however, that "Claim" shall not include an Excluded Claim;

(j)   "Claims Bar Date" means the Prefiling Claims Bar Date or the Restructuring Claims Bar Date, as the case may be;

(k)   "Claims Resolution Order" has the meaning ascribed to that term in paragraph 17 of this Order;

(l)   "Compensation Claims" has the meaning ascribed to that term in paragraph 3(t)(iii) of this Order;

(m)   "Court" means the Ontario Superior Court of Justice (Commercial List);

- 6 -

(n)     "Creditor" means any Person having a Claim;

(o)     "Creditors' Guide to Completing the Proof of Claim form" means the guide to completing the Proof of Claim form, in substantially the form attached as Schedule "C" hereto;

(p)     "Creditors' Meeting" means the meeting or meetings of Creditors scheduled pursuant to further Order of this Court, or by a Plan if and when filed with this Court;

(q)     "Cross Border Claims Protocol" means a protocol for the resolution of cross-border claims filed in these CCAA proceedings and/or in the Chapter 11 Cases, once approved by the courts presiding in these CCAA proceedings and in the Chapter 11 Cases;

(r)     "Directors" means all current and former directors of the Applicants, and "Director" means any one of them;

(s)     "Directors/Officers Claim" has the meaning ascribed to that term in paragraph 3(i)(iii) of this Order;

(t)     "Excluded Claim" means the following claims, whether liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present, future, known or unknown:

    (i)     claims secured by any of the Charges;

    (ii)     inter-company claims , as between any of the Applicants (and any person appointed in respect of any of the Applicants), and as between any of the

- 7 -

Applicants and any of the Applicants' direct or indirect subsidiaries or affiliates (and any person appointed in respect of such subsidiaries or affiliates of the Applicants), including, for greater certainty, claims by such entities against the Directors and Officers, other than claims by any Joint Venture;

(iii)    claims of (A) any current or former employee of any of the Applicants, for amounts owing to him or her in his or her capacity as a current or former employee of any of the Applicants, including without limitation claims on account of wages, salaries, any other form of compensation (whether sales-based, incentive-based, deferred, retention-based, share-based, or otherwise), severance or termination pay, employee benefits (including, but not limited to, medical and similar benefits, disability benefits, relocation or mobility benefits, and benefits under employee assistance programs), pension and retirement benefits, vacation pay, and employee expenses, (B) any current or former employee of any of the Applicants arising from the administration, management or oversight of any of the pension plans or employee benefit plans administered or sponsored by the Applicants or their subsidiaries, and (C) any Director for compensation for acting as a Director, including without limitation fees, deferred share-based compensation, benefits and Director expenses (collectively, including employee and Director claims of the above nature, "Compensation Claims");

- 8 -

  (iv)  grievances under any collective agreements to which the Applicants, or any of them, are a party; and

  (v)  claims of any Director or Officer for indemnification and/or contribution arising from such Director's or Officer's service to any Applicant;

(u)  "Filing Date" means January 14, 2009, the date of the Initial Order;

(v)  "Initial Order" has the meaning ascribed to that term in paragraph 2 of this Order;

(w)  "Joint Venture" means each of Nortel Networks Netas Telekomunikasyon A.S., L-G Nortel Co. Ltd., Senyang Nortel Telecommunications Co. Ltd., Guangdong-Nortel Telecommunications Equipment Company Ltd., and Nortel Networks Communications Engineering Ltd.;

(x)  "Known Creditors" means:

  (i)  those Creditors which, to the knowledge of the Applicants and the Monitor, were owed monies by any Applicant as of the Filing Date and which monies remain unpaid in whole or in part;

  (ii)  any Person who commenced a legal proceeding against the Applicants, or any of them, which legal proceeding was commenced and served upon an Applicant prior to the Filing Date, and which legal proceeding is known to the Monitor;

  (iii)  any Person who is party to a lease, contract, or other agreement or obligation of any Applicant which was (to the knowledge of the Applicants and the Monitor) restructured, terminated, repudiated or

- 9 -

disclaimed by such Applicant between the Filing Date and the date of this Order; and

    (iv)    any other Creditor actually known to the Applicants and the Monitor as of the date of this Order;

(y)    "Monitor" means Ernst & Young Inc. in its capacity as monitor pursuant to the Initial Order;

(z)    "Notice to Creditors" means the notice to Creditors for publication in substantially the form attached as Schedule "A" hereto;

(aa)    "Officers" means all current and former officers of the Applicants, and "Officer" means any one of them;

(bb)    "Person" includes any individual, partnership, joint venture, trust, corporation, unlimited liability company, unincorporated organization, government body or agency or instrumentality thereof, or any other juridical entity howsoever designated or constituted;

(cc)    "Plan" means any plan of compromise and arrangement by one or more of the Applicants, if and when filed and approved by this Court, as revised, amended, modified or supplemented from time to time in accordance with its terms;

(dd)    "Prefiling Claim" has the meaning ascribed to that term in paragraph 3(i)(i) of this Order;

(ee)    "Prefiling Claims Bar Date" means 4:00 p.m. (prevailing Eastern Time) on September 30, 2009;

- 10 -

(ff)   "Proof of Claim" means the form of Proof of Claim in substantially the form attached as Schedule "B" hereto;

(gg)   "Proof of Claim Document Package" means a document package that includes a copy of the Notice to Creditors, the Creditors' Guide to Completing the Proof of Claim form, a Proof of Claim, and such other materials as the Monitor may consider appropriate or desirable;

(hh)   "Proven Claim" means a Claim as finally determined, including for the purposes of voting and distribution under the Plan;

(ii)   "Restructuring Claim" has the meaning ascribed to that term in paragraph 3(i)(ii) of this Order; and

(jj)   "Restructuring Claims Bar Date" means, in respect of each Restructuring Claim and each Person having a Restructuring Claim, 4:00 p.m. (prevailing Eastern Time) on the later of (i) September 30, 2009, and (ii) the date that is 30 days after the date on which the Monitor sends a Proof of Claim Document Package to the Person with respect to a Restructuring Claim that arose or that may have arisen by virtue of the restructuring, termination, repudiation or disclaimer of any lease, contract, or other agreement or obligation on or after the Filing Date.

**NOTICE TO CREDITORS**

4.     THIS COURT ORDERS that:

- 11 -

(a)    the Monitor shall no later than five (5) days following the making of this Order, post a copy of the Proof of Claim Document Package on its website at "www.ey.com/ca/nortel";

(b)    the Monitor shall no later than five (5) days following the making of this Order, send on behalf of the Applicants to each Bondholder Trustee a copy of the Proof of Claim Document Package;

(c)    the Monitor shall no later than ten (10) days following the making of this Order, send on behalf of the Applicants to each of the Known Creditors (for which it has an address) a copy of the Proof of Claim Document Package, provided however that the Monitor is not required to send Proof of Claim Document Packages to Bondholders or to the current or former employees of any Applicant;

(d)    the Monitor shall cause to be published, on or before August 15, 2009, the Notice to Creditors in *The Globe and Mail* (National Edition) and *The Wall Street Journal* (national and global editions);

(e)    with respect to Restructuring Claims arising from the restructuring, termination, repudiation or disclaimer of any lease, contract, or other agreement or obligation, the Monitor shall send to the counterparty(ies) to such lease, contract, or other agreement or obligation a Proof of Claim Document Package no later than ten (10) days following the time that the Monitor becomes aware of the restructuring, termination, repudiation or disclaimer of any such lease, contract, or other agreement or obligation; and

- 12 -

(f)     the Monitor shall, provided such request is received by the Monitor prior to the applicable Claims Bar Date, deliver as soon as reasonably possible following receipt of a request therefor a copy of the Proof of Claim Document Package to any Person claiming to be a Creditor and requesting such material.

5.     THIS COURT ORDERS that neither the Applicants nor the Monitor are under any obligation to give notice to or deal with any Person other than the Creditor holding a Claim, and without limitation shall have no obligation to give notice to or deal with any Person having a security interest in the Claim (including the holder of a security interest created by way of a pledge or a security interest created by way of an assignment of the Claim), and such Persons shall be bound by any notices given to the Creditor and any steps taken in respect of such Claim in accordance with this Order.

6.     THIS COURT ORDERS that a separate process shall be established by further Order of this Court, to deal with Compensation Claims, and that this Order shall be without prejudice to any matter relating to any Compensation Claims now existing or arising in the future, and without prejudice to any claims that now exist or that may in the future exist against the Ontario Pension Benefits Guarantee Fund.

**CLAIMS BAR DATES**

7.     THIS COURT ORDERS that Proofs of Claim with respect to (i) a Prefiling Claim, shall be filed with the Monitor on or before the Prefiling Claims Bar Date, (ii) a Restructuring Claim, shall be filed with the Monitor on or before the Restructuring Claims Bar Date, and (iii) a Directors/Officers Claim, shall be filed on or before the Prefiling Claims Bar Date, except to the extent that the Directors/Officers Claim relates to a Restructuring

- 13 -

Claim, in which case such Directors/Officers Claim shall be filed with the Monitor on or before the applicable Restructuring Claims Bar Date.

8.      THIS COURT ORDERS that any Creditor that does not file a Proof of Claim as provided for herein such that such Proof of Claim is received by the Monitor on or before the applicable Claims Bar Date (a) shall be and is hereby forever barred from making or enforcing any Claim against the Applicants, or any of them, or the Directors or Officers, or any of them; (b) shall not be entitled to vote at the Creditors' Meeting in respect of the Plan or to receive any distribution thereunder; and (c) shall not be entitled to any further notice in, and shall not be entitled to participate as a creditor in, these proceedings.

**PROOFS OF CLAIM**

9.      THIS COURT ORDERS that each Creditor shall file a separate Proof of Claim for each Applicant against whom it asserts a Claim and, if the Claim is also being asserted against the Directors or Officers of that Applicant, such Claim against those Directors or Officers shall be included in the same Proof of Claim.

10.      THIS COURT ORDERS that each Creditor shall include any and all Claims it asserts against an Applicant in a single Proof of Claim, provided however that where a Creditor has taken an assignment or transfer of a Claim after the Filing Date, that Creditor shall file a separate Proof of Claim for each such assigned or transferred Claim.

11.      THIS COURT ORDERS that where a Claim against any Applicant is based on that Applicant's guarantee of the repayment of a debt of another Applicant or the debt of any other Person, the Proof of Claim in respect of such Claim shall clearly state that it is based on such a guarantee, and that where any Applicant has guaranteed the repayment of

- 14 -

the debt of any other Applicant, a Proof of Claim in respect of that debt shall be filed against each such Applicant.

12.     THIS COURT ORDERS that if any Claim arose in a currency other than Canadian dollars, then the Creditor making the Claim shall complete its Proof of Claim indicating the amount of the Claim in such currency, rather than in Canadian dollars or any other currency.   The Monitor shall subsequently calculate the amount of such Claim in Canadian dollars, using the Reuters closing rate on January 13, 2009, without prejudice to the ability of the Applicants to utilize a different exchange rate in any Plan.

13.     THIS COURT ORDERS that each Bondholder Trustee is authorized and directed to file one or more Proofs of Claim on or before the Prefiling Claims Bar Date in respect of all of the Bonds for which such Bondholder Trustee acts, indicating the amount owing on an aggregate basis for each separate series of Bonds issued under each Bondholder Trust Indenture.   Notwithstanding any other provisions of this Order, Bondholders are not required to file individual Proofs of Claim in respect of Claims relating solely to the debt evidenced by their Bonds.  The Applicants and the Monitor may disregard any Proof of Claim filed by any individual Bondholder claiming the debt evidenced by the Bonds, or any of them, and such Proofs of Claims shall be ineffective for all purposes.  The process for determining each individual Bondholder's Claim for voting purposes with respect to the Plan will be established by further order of the Court.

14.     THIS COURT ORDERS that the Monitor may, where it is satisfied that a Claim has been adequately filed, waive strict compliance with the requirements of this Order as to completion and execution of Proofs of Claim.

- 15 -

**REVIEW OF PROOFS OF CLAIM**

15.    THIS COURT ORDERS that the Monitor, in consultation with the Applicants, shall review all Proofs of Claims that are filed on or before the applicable Claims Bar Date.  At any time, the Monitor or the Applicants may request additional information from a Creditor with respect to a Claim, and the Monitor may request that the Creditor file a revised Proof of Claim.

16.    THIS COURT ORDERS that a Claim shall not be a Proven Claim unless and until the Claim has been allowed or otherwise finally determined in accordance with the claims dispute and resolution procedures to be set out in the Claims Resolution Order and the Cross Border Claims Protocol.

**DETERMINATION OF PROVEN CLAIM**

17.    THIS COURT ORDERS that the Proven Claim of a Creditor shall be as allowed or as finally determined in accordance with the other forms and claim procedures to be authorized by further Order of this Court (the "Claims Resolution Order") and in the Cross Border Claims Protocol, provided however that no Claim may be allowed or may be established as a Proven Claim unless a Proof of Claim with respect to that Claim is filed in accordance with this Order, on or prior to the applicable Claims Bar Date.

**NOTICE OF TRANSFEREES**

18.    THIS COURT ORDERS that neither the Applicants nor the Monitor shall be obligated to give notice to or to otherwise deal with a transferee or assignee of a Claim as the Creditor in respect thereof unless and until (i) actual written notice of transfer or assignment, together with satisfactory evidence of such transfer or assignment, shall have been received by the Monitor, and (ii) the Monitor shall have acknowledged in writing such

- 16 -

transfer or assignment, and thereafter such transferee or assignee shall for the purposes hereof constitute the "Creditor" in respect of such Claim. Any such transferee or assignee of a Claim, and such Claim, shall be bound by any notices given or steps taken in respect of such Claim in accordance with this Order prior to the written acknowledgement by the Monitor of such transfer or assignment.

19. THIS COURT ORDERS that if the holder of a Claim has transferred or assigned the whole of such Claim to more than one Person or part of such Claim to another Person or Persons, such transfer or assignment shall not create a separate Claim or Claims and such Claim shall continue to constitute and be dealt with as a single Claim notwithstanding such transfer or assignment, and the Applicants and the Monitor shall in each such case not be bound to acknowledge or recognize any such transfer or assignment and shall be entitled to give notices to and to otherwise deal with such Claim only as a whole and then only to and with the Person last holding such Claim in whole as the Creditor in respect of such Claim. Provided that a transfer or assignment of the Claim has taken place in accordance with paragraph 18 of this Order and the Monitor has acknowledged in writing such transfer or assignment, the Person last holding such Claim in whole as the Creditor in respect of such Claim may by notice in writing to the Monitor direct that subsequent dealings in respect of such Claim, but only as a whole, shall be with a specified Person and, in such event, such Creditor, such transferee or assignee of the Claim and the whole of such Claim shall be bound by any notices given or steps taken in respect of such Claim by or with respect to such Person in accordance with this Order.

20. THIS COURT ORDERS that the transferee or assignee of any Claim (i) shall take the Claim subject to the rights and obligations of the transferor/assignor of the Claim, and

- 17 -

subject to the rights of any Applicant against any such transferor or assignor, including any rights of set-off which any Applicant had against such transferor or assignor, and (ii) cannot use any transferred or assigned Claim to reduce any amount owing by the transferee or assignee to any Applicant, whether by way of set off, application, merger, consolidation or otherwise.

**PROTECTIONS FOR MONITOR**

21.    THIS COURT ORDERS that (i) in carrying out the terms of this Order, the Monitor shall have all of the protections given to it by the CCAA and the Initial Order or as an officer of this Court, including the stay of proceedings in its favour, (ii) the Monitor shall incur no liability or obligation as a result of the carrying out of the provisions of this Order, (iii) the Monitor shall be entitled to rely on the books and records of the Applicants, and any information provided by the Applicants, all without independent investigation, and (iv) the Monitor shall not be liable for any claims or damages resulting from any errors or omissions in such books, records or information.

**DIRECTIONS**

22.    THIS COURT ORDERS that any Applicant or the Monitor may, at any time, and with such notice as this Court may require, seek directions from the Court with respect to this Order and the Claims process set out herein, including the forms attached as Schedules hereto.

- 18 -

**SERVICE AND NOTICE**

23.    THIS COURT ORDERS that the Monitor or the Applicants, as the case may be, are at liberty to deliver the Proof of Claim Document Package, and any letters, notices or other documents to Creditors or other interested Persons, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic or digital transmission to such Persons at the address as last shown on the records of the Applicants and that any such service or notice by courier, personal delivery or electronic or digital transmission shall be deemed to be received on the next Business Day following the date of forwarding thereof, or if sent by prepaid ordinary mail, on the fourth Business Day after mailing.

24.    THIS COURT ORDERS that any notice or other communication (including, without limitation, Proofs of Claim) to be given under this Order by a Creditor to the Monitor shall be in writing in substantially the form, if any, provided for in this Order and will be sufficiently given only if given by prepaid ordinary mail, courier, personal delivery or electronic or digital transmission addressed to:

> ERNST & YOUNG INC.
> Court-appointed Monitor of Nortel Networks Corporation & others
> 222 Bay Street, Suite 1600
> Toronto, Ontario
> Canada M5K 1J7
>
> Attention:    Nortel Claims
> Telephone:    1-416-943-4439 or 1-866-942-7177
> E-mail        nortel.monitor@ca.ey.com
> Fax:          1-416-943-2808

Any such notice or other communication by a Creditor shall be deemed received only upon actual receipt thereof during normal business hours on a Business Day.

- 19 -

**MISCELLANEOUS**

25.     THIS COURT ORDERS AND REQUESTS the aid and recognition of any court of any

judicial, regulatory or administrative body in any province or territory of Canada

(including the assistance of any court in Canada pursuant to Section 17 of the CCAA)

and any court or any judicial, regulatory or administrative body of the United States of

America, the United Kingdom, the French Republic, the State of Israel, and the Republic

- 20 -

of Korea, and of any other nation or state, to act in aid of and to be complementary to this

Court in carrying out the terms of this Order.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

OCT 0 7 2009

PER / PAR:

## SCHEDULE "A"

### NOTICE TO CREDITORS
#### of NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION
(hereinafter referred to as the "Debtors")

**RE:   NOTICE OF CLAIMS PROCEDURE FOR THE DEBTORS PURSUANT TO THE** *COMPANIES' CREDITORS ARRANGEMENT ACT* **(the "CCAA")**

**PLEASE TAKE NOTICE** that this notice is being published pursuant to an Order of the Superior Court of Justice of Ontario made July 30, 2009 (the "Order").  Pursuant to the Order, Proof of Claim packages will be sent to creditors by mail, on or before August 15, 2009, if those creditors are known to the Debtors, and if the Debtors have a current address.  Creditors may also obtain the Order and a Proof of Claim package from the website of Ernst & Young Inc., Court-appointed monitor of the Debtors, at "www.ey.com/ca/nortel", or by contacting the Monitor by telephone (1-416-943-4439 or 1-866-942-7177) or by fax (1-416-943-2808).

Proofs of Claim must be submitted to the Monitor for any claim against any Debtor, whether unliquidated, contingent or otherwise, or a claim against any current or former officer or director of the Debtors, or any of them, in each case where the claim (i) arose prior to January 14, 2009, or (ii) arose on or after January 14, 2009 as a result of the restructuring, termination, repudiation or disclaimer of any lease, contract, or other agreement or obligation.  Please consult the Proof of Claim package for more details.

**Completed Proofs of Claim must be received by the Monitor by 4:00 p.m. (prevailing Eastern Time) on the applicable Claims Bar Date, as set out in the Order.  The Claims Bar Date for most claims is SEPTEMBER 30, 2009.  It is your responsibility to ensure that the Monitor receives your Proof of Claim by the applicable Claims Bar Date.**

**Certain Creditors are exempted from the requirement to file a Proof of Claim.  Among those creditors who do not need to file a Proof of Claim are (i) current or former employees of the Debtors, for amounts owing to him or her in his or her capacity as a current or former employee of any of the Debtors, and (ii) individual bondholders in respect of Claims relating solely to the debt evidenced by their bonds.  Please consult the Claims Procedure Order made on July 30, 2009 for details with respect to these and other exemptions.**

**PLEASE NOTE that these procedures apply ONLY to claims filed against the Debtors in the CCAA proceedings.  Several of the Debtors' affiliates are subject to creditor protection proceedings in other jurisdictions, including in the United States.  Separate proceedings and deadlines have been or will be established in those cases for the filing of claims.  With respect to the U.S. proceedings, a general bar date of September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) has been established by the U.S. Court.  If you believe you have claims against the U.S. Debtors, any such claims must be filed in, and only in, the U.S.**

- 2 -

proceedings with the U.S. Debtors' claims agent.  A list of the U.S. Debtors and procedures for filing such claims in the U.S. Proceedings can be found by going to the following internet link:  www.chapter11.epiqsystems.com/nortel.

**CLAIMS WHICH ARE NOT RECEIVED BY THE APPLICABLE CLAIMS BAR DATE WILL BE BARRED AND EXTINGUISHED FOREVER.**

**DATED** at Toronto this ● day of ●, 2009.

## SCHEDULE "B"

**(form of Proof of Claim attached)**

- 2 -

## SCHEDULE "C"

## GUIDE TO COMPLETING THE PROOF OF CLAIM FORM

This Guide has been prepared to assist Creditors in filling out the Proof of Claim form with respect to the Debtors listed in Section 1, below.  If you have any additional questions regarding completion of the Proof of Claim form, please consult the Monitor's website at www.ey.com/ca/nortel or contact the Monitor, whose contact information is shown below.

Additional copies of the Proof of Claim form may be found at the Monitor's website address noted above.

Please note that this is a guide only, and that in the event of any inconsistency between the terms of this guide and the terms of the Claims Procedure Order made on July 30, 2009, the terms of the Claims Procedure Order will govern.

**Section 1 – Name of Debtor:**
- A separate Proof of Claim form must be filed for each Debtor against whom a claim is being asserted.
- The following is a list of Debtor companies against whom a claim may be asserted in this claims process:
  - Nortel Networks Corporation
  - Nortel Networks Limited
  - Nortel Networks Global Corporation
  - Nortel Networks International Corporation
  - Nortel Networks Technology Corporation.
- Please note that these procedures apply ONLY to claims filed against the five Debtor companies listed above.  Several of the Debtors' affiliates are subject to creditor protection proceedings in other jurisdictions, including in the United States.  Separate proceedings and deadlines have been or will be established in those cases for the filing of claims.  With respect to the U.S. proceedings, a general bar date of September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) has been established by the U.S. Court.  If you believe you have claims against the U.S. Debtors,[1] any such claims must be filed in, and only in, the U.S. proceedings with the U.S. Debtors' claims agent.  Procedures for filing such claims in the U.S. Proceedings can be found by going to the following internet link: www.chapter11.epiqsystems.com/nortel.

---

[1] The U.S. Debtors are: Nortel Networks Inc.; Nortel Networks Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros Inc.; Sonoma Systems; Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks Optical Components Inc.; Nortel Networks HPOCS Inc.; Nortel Networks (CALA) Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; and Nortel Networks Cable Solutions Inc.

DOCSTOR: 1724621\14

- 3 -

**Section 2 – Original Creditor**
- A separate Proof of Claim form must be filed by each legal entity or person asserting a claim against a Debtor listed in Section 1.
- The Creditor shall include any and all Claims it asserts against a single Debtor in a single Proof of Claim[2].
- The full legal name of the Creditor must be provided.
- If the Creditor operates under a different name, or names, please indicate this in a separate schedule in the supporting documentation.
- If the Claim has been assigned or transferred to another party, Section 3 must also be completed.
- Unless the Claim is assigned or transferred, all future correspondence, notices, etc. regarding the Claim will be directed to the address and contact indicated in this section.
- Certain Creditors are exempted from the requirement to file a Proof of Claim. Among those creditors who do not need to file a Proof of Claim are (i) current or former employees of the Debtors, for amounts owing to him or her in his or her capacity as a current or former employee of any of the Debtors, and (ii) individual bondholders in respect of Claims relating solely to the debt evidenced by their bonds. Please consult the Claims Procedure Order made on July 30, 2009 for details with respect to these and other exemptions.

**Section 3 – Assignee**
- If the Creditor has assigned or otherwise transferred its Claim, then Section 3 must be completed.
- The full legal name of the Assignee must be provided.
- If the Assignee operates under a different name, or names, please indicate this in a separate schedule in the supporting documentation.
- If the Monitor is satisfied that an assignment or transfer has occurred, all future correspondence, notices, etc. regarding the Claim will be directed to the Assignee at the address and contact indicated in this section.

**Section 4 – Amount of Claim of Creditor against Debtor**
- Indicate the amount the Debtor / Officer(s) or Director(s) was, and still is indebted to the Creditor

*Currency, Original Currency Amount*
- The amount of the Claim must be provided in the currency in which it arose.
- Indicate the appropriate currency in the Currency column.
- If the Claim is denominated in multiple currencies, use a separate line to indicate the Claim amount in each such currency. If there are insufficient lines to record these amounts, attach a separate schedule indicating the required information.

---

[2] Paragraph 10 of the Claims Procedure Order made on [DATE] provides that: "THIS COURT ORDERS that each Creditor shall include any and all Claims it asserts against an Applicant in a single Proof of Claim, provided however that where a Creditor has taken an assignment or transfer of a Claim after the Filing Date, that Creditor shall file a separate Proof of Claim for each such assigned or transferred Claim."

- 4 -

- Claims denominated in a currency other than Canadian dollars will be converted into Canadian dollars by the Monitor using the exchange rates set out in Appendix A.

*Secured*
- Check the Secured box ONLY if the Claim recorded on that line is secured.  Do not check this box if your Claim is unsecured
- If the value of the collateral securing your Claim is less than the amount of your Claim, enter the shortfall portion on a separate line as an unsecured claim
- Evidence supporting the security you hold must be submitted with the Proof of Claim form.  Provide full particulars of the nature of the security, including the date on which the security was given and the value you attribute to the collateral securing your Claim. Attach a copy of all related security documents.

*S. 136 Priority*
- Check this box ONLY if the amount of your Claim has a right to priority pursuant to Section 136 of the Bankruptcy and Insolvency Act (Canada) (the "BIA") or would be entitled to claim such a priority if this Proof of Claim were being filed in accordance the provisions of the BIA.
- If a priority claim is being asserted, please provide details as to the nature of the claim being asserted, and the basis for priority on which you rely.

*Restructuring*
- Check this box ONLY if the amount of the Claim against the Debtor arose out of the restructuring, termination, repudiation or disclaimer of a lease, contract, or other agreement or obligation on or after January 14, 2009.

*Officers and Directors*
- Check this box only if the Claim you are making is also being asserted against a current or former officer or director of the Debtor.
- You must identify the individual officer(s) or director(s) against whom you are asserting the Claim.

**Section 5 – Documentation**
- Attach to the claim form all particulars of the Claim and supporting documentation, including amount, description of transaction(s) or agreement(s) giving rise to the Claim, name of any guarantor which has guaranteed the Claim[3], and amount of invoices, particulars of all credits, discounts, etc. claimed, description of the security, if any, granted by the debtor or any officer or director to the Creditor and estimated value of such security, and particulars of any restructuring claim.

**Section 6 – Certification**
- The person signing the Proof of Claim form should

---

[3] If the guarantor is another of the Debtors listed in Section 1, or one of the U.S. Debtors, a Proof of Claim against that Debtor or U.S. Debtor, as the case may be, must also be filed in these Canadian Proceedings or (in the case of U.S. Debtors) in the U.S. proceedings.

- 5 -

- o  Be the Creditor, or authorized Representative of the Creditor.
- o  Have knowledge of all the circumstances connected with this Claim.
- By signing and submitting the Proof of Claim, the Creditor is asserting the claim against the Debtor and / or the indicated officer(s) or director(s)

**Section 7 – Filing of Claim**

- This Proof of Claim **must be received** by the Monitor by no later than 4:00 p.m. (prevailing Eastern Time) on SEPTEMBER 30, 2009.  Proofs of Claim should be send by prepaid ordinary mail, courier, personal delivery or electronic or digital transmission to the following address:

> Ernst & Young Inc.
> Court-appointed Monitor of Nortel Networks Corporation & others
> 222 Bay Street, Suite 1600
> Toronto, Ontario
> Canada M5K 1J7
> Attention:    Nortel Claims
>
> Telephone:    1-866.942-7177  or  416-943-4439
> E-mail:       Nortel.monitor@ca.ey.com
> Fax:          416-943-2808

**Failure to file your Proof of Claim so that it is received by the Monitor by 4:00 p.m., on the Claims Bar Date of September 30, 2009 will result in your claim being barred and you will be prevented from making or enforcing a Claim against the Debtor or any current or former officer or director of any of the Debtors.  In addition, you shall not be entitled to further notice in and shall not be entitled to participate as a creditor in these proceedings.**

Appendix A

Currency conversion factors
Source: Reuters, January 14, 2009

**This Appendix is for information only. You are to make your claim in the currency in which it arose. The Monitor will calculate all currency conversions.**

| | | CAD per unit of Currency |
|---|---|---|
| CAD | Canadian Dollar | 1 |
| USD | United States Dollar | 1.22025 |
| EUR | Euro | 1.6170753 |
| GBP | United Kingdom: Pnd Ster | 1.77741615 |
| JPY | Japan: Yen | 0.01362647 |

| | | | | | |
|---|---|---|---|---|---|
| AED | United Arab Emir.: Dirham | 0.33221709 | LTL | Lithuanian Litas | 0.46830925 |
| ARS | Argentine Peso | 0.35410621 | LVL | Latvian Lats | 2.29456567 |
| AUD | Australian Dollar | 0.82275356 | MAD | Moroccan Dirham | 0.14500201 |
| BBD | Barbados Dollar | 0.61319095 | MXN | Mexican Peso | 0.08842392 |
| BDT | Bangladeshi Taka | 0.01772331 | MYR | Malaysian Ringgit | 0.34156754 |
| BGN | Bulgaria: New Lev | 0.82683968 | NGN | Nigerian Naira | 0.00816494 |
| BOB | Bolivian Boliviano | 0.17345416 | NOK | Norwegian Krone | 0.17167276 |
| BRL | Brazilian Real | 0.52726527 | NZD | New Zealand Dollar | 0.6711375 |
| CHF | Swiss Franc | 1.09468915 | OMR | Oman: Rial Omani | 3.16980987 |
| CLP | Chilean Peso | 0.0019827 | PAB | Panama: Balb0A | 1.22025 |
| CNY | China: Yuan Renminbi | 0.17854268 | PEN | Peru: Nuevo Sol | 0.3889243 |
| COP | Colombian Peso | 0.00054867 | PGK | Papua New Guinea Kina | 0.4671117 |
| CRC | Costa Rican Colon | 0.00219273 | PHP | Philippine Peso | 0.02592415 |
| CZK | Czech Koruna | 0.06004872 | PKR | Pakistan Rupee | 0.015414 |
| DKK | Danish Krone | 0.21701242 | PLN | Poland: Zloty | 0.39077386 |
| DOP | Dominican Peso | 0.03444601 | PYG | Paraguay: Guarani | 0.0002498 |
| DZD | Algerian Dinar | 0.01682672 | QAR | Qatar: Qatari Rial | 0.33516446 |
| EEK | Estonian Kroon | 0.10334226 | RON | New Romania Leu | 0.37703348 |
| EGP | Egyptian Pound | 0.22086973 | RUB | Russian Ruble | 0.03847246 |
| FJD | Fiji Dollar | 0.67418812 | SAR | Saudi Arabia: Saudi Riyal | 0.32539566 |
| GTQ | Guatemala: Quetzal | 0.15495238 | SEK | Swedish Krona | 0.14788041 |
| HKD | Hong Kong Dollar | 0.15732068 | SGD | Singapore Dollar | 0.82052921 |
| HUF | Hungary: Forint | 0.00583154 | THB | Thailand: Baht | 0.03495417 |
| IDR | Indonesia: Rupiah | 0.00010993 | TND | Tunisian Dinar | 0.89144172 |
| ILS | Israel: Shekel | 0.31449742 | TRY | New Turkish Lira | 0.76914592 |
| INR | Indian Rupee | 0.02499872 | TTD | Trinidad & Tobago Dollar | 0.19524 |
| ISK | Iceland Krona | 0.00966994 | UAH | Ukraine: Hryvnia | 0.13945714 |
| JMD | Jamaican Dollar | 0.01515838 | UYU | Uruguay: Peso | 0.05016444 |
| JOD | Jordanian Dinar | 1.72084329 | VEF | Bolivar Fuerte | 0.56827178 |
| KPW | North Korean Won | 0.00853023 | VND | Vietnam: Dong | 0.00006981 |
| KRW | Republic Of Korea: Won | 0.00090543 | XCD | East Caribbean Dollar | 0.4587406 |
| KWD | Kuwaiti Dinar | 4.28157891 | ZAR | South Africa: Rand | 0.12249969 |
| LBP | Lebanese Pound | 0.00080945 | ZMK | Zambia: Kwacha | 0.00024601 |
| LKR | Sri Lanka Rupee | 0.01072276 | | | |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, C. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, C. C-36, AS AMENDED

Court File No:  09-CL-7950

---

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

---

**CLAIMS PROCEDURE ORDER**

---

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 1724621\14

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al*.

Court File No:  09-CL-7950

---

### ONTARIO
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

Proceeding commenced at Toronto

---

### SEVENTY-FOURTH REPORT OF
### THE MONITOR DATED
### SEPTEMBER 14, 2011

---

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

Jay A. Carfagnini  (LSUC#: 222936)
Joseph Pasquariello (LSUC# 37389C)
Christopher G. Armstrong (LSUC# 55148B)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.