Canada – General
*May 9, 2007*

00306

Nortel
**Capital Accumulation and Retirement Program Changes Effective January 1, 2008
Questions and Answers for Active Canadian Employees**

## GENERAL OVERVIEW

**Q1.    What is the current Nortel retirement program for Canadian employees?**

The current Nortel program, known as the Capital Accumulation and Retirement Program (CARP), includes the Traditional program (Part I) and (Part II), the Balanced program and the Investor program. Below are highlights of the current provisions of each program:

| | Traditional (Part I) | Traditional (Part II) | Balanced | Investor |
|---|---|---|---|---|
| **Pension Plan** | Defined benefit pension plan (Part I formula) plus Transitional Retirement Allowance (TRA) | Defined benefit pension plan (Part II formula) | Defined contribution pension plan (DCPP) – Nortel contributes 4% of eligible earnings to individual members' DCPP accounts | No pension plan |
| **Investment Plan** | 50% company match on the first 6% of eligible earnings employees contribute through payroll deductions | 60% company match on the first 6% of eligible earnings employees contribute through payroll deductions | 50% company match on the first 6% of eligible earnings employees contribute through payroll deductions | 100% company match on the first 6% of eligible earnings employees contribute through payroll deductions |
| **Retiree Healthcare and Life Insurance** | Company-subsidized benefits based on eligibility criteria | Company-subsidized benefits based on eligibility criteria | Company-subsidized benefits based on eligibility criteria | Access to individual healthcare insurance through Sun Life Financial at own cost; no retiree life insurance |

1

Canada – General
May 9, 2007

00307

**Q2.    What is happening to the Capital Accumulation and Retirement Program (CARP) for Canadian employees?**

Effective January 1, 2008, all CARP members in Canada will move to the amended Balanced program for retirement benefits that are based on service from that date (with the exception of current Traditional program members who meet certain age and/or service conditions). Highlights are summarized below:

| CARP Provisions Effective January 1, 2008[1] | |
|---|---|
| Pension Plan[1] | Defined contribution pension plan (DCPP) – Nortel will automatically contribute 2% of your eligible earnings to your DCPP account in the registered pension plan |
| Investment Plan | You may make optional contributions to supplement your DCPP account and Nortel will match 50% of the first 6% of eligible earnings you contribute through payroll deductions |
| Retiree Healthcare and Life Insurance [2] | You will have access to individual healthcare insurance through Sun Life Financial on preferred terms at your own cost<br><br>You will be eligible for a company-paid non-taxable death benefit of $10,000 if, at retirement, you are at least age 55 with 10 years of service (not applicable for current Investor program members or employees hired on or after January 1, 2008) |

Notes:

1   If you currently participate in the Traditional program (Part I) or (Part II), you will continue to participate in your current program after January 1, 2008 if, as of December 31, 2007:

- you are at least age 55 with at least 70 points (age plus service), or
- you are at least age 60, regardless of service, or
- you have at least 30 years of service, regardless of age

2   If you currently participate in the Traditional program (Part I) or (Part II) or the Balanced program and you are at least age 50 with 5 or more years of service on July 1, 2006, you will remain under the provisions of the current CARP retiree healthcare and life insurance.

**Q3.    Why do some Traditional program members get to keep their current program and others do not?**

The Traditional program (Part I) and (Part II), which has been closed to new members for several years, contains the largest number of long-service employees who are fairly close to retirement. In Canada, when employees are transitioned from a defined benefit plan to a defined contribution plan, it is common practice to make exceptions for those who are close to retirement and/or have very long service, since they will have limited time to adjust their retirement savings strategies.

2

**Q4.    Why are these changes being announced now when they are not effective until 2008?**

Nortel is providing 18 months' advance notice of the CARP changes to give you sufficient time to understand and prepare for the changes that will take effect January 1, 2008. Nortel will continue to provide information, modeling tools and resources to assist you in planning for your retirement.  We strongly encourage you to take advantage of all of the resources available to you and learn what else you can do to continue to prepare for retirement.

**Q5.    Are all Nortel employees affected by these changes?  Is Nortel making similar changes to its retirement plans in other countries?**

These changes, effective January 1, 2008, affect employees in the U.S. and Canada. Changes to the retirement program may be made in other countries where Nortel is an employer, where appropriate and permissible by law.

**Q6.    What changes is Nortel making to the program for employees hired on or after January 1, 2008?**

Nortel is making the same changes to the program for new hires. Employees who join Nortel on or after January 1, 2008 will be eligible for employer contributions in the CARP after they meet its eligibility requirements.  They will also have access to post-retirement healthcare coverage through Nortel's preferred provider at their own cost.

**Q7.    How do these changes affect an employee who retires or leaves Nortel before January 1, 2008?**

The CARP changes are effective January 1, 2008, so they will not impact employees who retire or terminate employment before January 1, 2008.

**Q8.    How do these changes affect recently hired employees who have not yet enrolled in the CARP or any new hires before January 1, 2008?**

These employees will continue with the same options as are available to current new hires (the Balanced and Investor programs) through December 31, 2007.  Effective January 1, 2008 they will be impacted by the CARP changes in the same way as existing employees.

**Q9.    How are current retirees and former employees with vested retirement benefits impacted by these changes?**

Current retirees and former employees with vested retirement benefits are unaffected by the CARP changes (unless they are subsequently rehired on or after January 1, 2008, in which case they would be subject to the terms of the amended CARP).

3

00309

**Q10.  How are part-time employees affected by these changes?**

Part-time employees who participate in Nortel's retirement plans are affected in the same way as full-time employees.

**Q11.  How are employees on a leave of absence affected by these changes?**

Employees on a leave of absence status as of January 1, 2008 who were participants in the CARP as of December 31, 2007 will be treated the same as current active employees.

**Q12.  How are Canadian expats who are still participating in the Canadian CARP affected by these changes?**

Expats who are still participating in the Canadian CARP will be treated in the same way as all other current active Canadian CARP participants.

**Q13.  How are employees currently on long-term disability affected by these changes?**

Employees on long-term disability (LTD) as of January 1, 2008 who are participants in the CARP as of December 31, 2007 will not be affected by the CARP changes and will continue to earn benefits under the terms of their current program, as long as they continue to receive company-sponsored LTD benefits.

Those employees who return to active employment and/or cease to qualify for LTD benefits will transition to the amended Balanced program as of the date they return to employment or no longer qualify, unless, as of December 31, 2007, they are in the Traditional program (Part I or Part II) and:
- are at least age 55 with at least 70 points (age plus service), or
- are at least age 60, regardless of service, or
- have at least 30 years of service, regardless of age.

Traditional program members on LTD who meet these requirements as of December 31, 2007 will continue under the provisions of their current program even after they return to active employment. However, employees on LTD who do not satisfy the grandfathering criteria at December 31, 2007 will not be eligible to continue in the current plan after returning to active employment, even if they satisfy the criteria at the date of their return. Instead, they will transition to the amended Balanced program as of that date.

Employees on LTD who are in the Traditional program (Part I or Part II) and then transition to the amended Balanced program upon returning to active employment will receive a pension benefit at retirement based on years of pensionable service and average earnings as of the date of their return to active employment.

00310

**Q14.  Why has Nortel decided to make these changes?**

As part of the CARP review, Nortel gathered data on where our Traditional, Balanced and Investor retirement benefits stand today in relation to the retirement programs of some of our key competitors. Although we are unable to share the data from other companies (due to confidentiality agreements) the analysis did show that Nortel's current retirement plans are above market.

The CARP changes Nortel is making are necessary to better align our cost structure with the market and to help us to remain competitive in our industry.

**Q15.  What is the financial impact for Nortel of these retirement program changes?**

In bringing the retirement program more in line with the market in Canada and the U.S., Nortel expects to save close to USD $100 million per year starting in 2008. This represents a significant cost reduction and is one of many cost saving steps we are taking.

**Q16.  Will the benefits provided after the CARP changes take effect still be competitive with those offered by other companies in our industry or geography?**

Our market analysis shows that the CARP will still be competitive — even by today's standards. What's more, if current trends continue, we anticipate that more of our competitors and large companies in general will reduce their retirement benefits in the near future.

**Q17.  Are Nortel's competitors also reducing their retirement benefits?**

Our research shows that our competitors are also making changes to their retirement programs with a goal of reducing their current and future costs. In particular, most are moving away from the unpredictable costs of defined benefit pension plans.

**Q18.  Where can employees go for answers to additional questions about the CARP changes?**

First, you should review the program-specific questions and answers in the applicable folder on Services@Work: http://services-canada.ca.nortel.com/Livelink/livelink.exe?func=ll&objId=1595578&objAction=sawbrowse . There, you will find answers to many anticipated questions about how the CARP changes affect your particular program (Traditional (Part I), Traditional (Part II), Balanced or Investor).

Benefit related questions can be directed to HR Shared Services at ESN 355-9351 or 1-919-905-9351 (toll-free 1-800-676-4636) or by email to hrssna@nortel.com.

Part I or Part II questions can be directed to the Pension Administration Service Centre at toll-free 1-866-667-8358 or by email to nortelpensionadmin@mercer.com.

Canada – General
*May 9, 2007*

00311

**Q19.   What modeling tools are available to help me with my financial planning and how do I access them?**

Employees are encouraged to visit the **Financial Education and Modeling Tools for January 1/08 CARP Programs** folder on Services@Work at http://services-canada.ca.nortel.com/Livelink/livelink.exe?func=ll&objId=1595582&objAction=sawbrowse.

- The Mercer OneView modeler, available at www.MercerOneView.com/nortel , will continue to calculate the value of Traditional program pension benefits at any age, based on certain assumptions.

- In addition, there is a link to a new CARP modeling tool available within the above-noted folder on Services@Work.

- For current DCPP and Investment plan members, Sun Life Financial offers an updated online Investor Risk Profiler and Retirement Income Planner/Tracker tool that you can use to project your account balances. This tool is pre-populated with your current account balances and you may input other financial information, such as Traditional program pension balances, other personal savings and anticipated future contributions. You can access this tool on the Sun Life Financial Plan Member web site at www.sunlife.ca/member .

**Q20.   What other sources of retirement income should Nortel employees include in their retirement planning?**

Employees should also consider government benefits, such as Canada/Quebec Pension Plan and Old Age Security benefits, that they may be entitled to receive, as well as any personal savings or investments.

**Q21.   Did you solicit input from employees like you did in 2000 when you introduced the CARP?  If not, why not?**

No, we did not. These changes have been driven by the need to reduce our cost structure.

**Q22.   In 2000, employee choice was the major focus in introducing CARP. Why not offer some type of choice now?**

Our main competitors offer defined contribution retirement plans and no subsidized retiree healthcare or post-retirement life insurance. In line with this, we determined that the defined contribution pension plan and investment plan would be the only vehicles for Nortel's contributions to employees' retirement going forward. There is still flexibility within the investment plan to choose different contribution levels and retirement savings vehicles (before-tax and/or after-tax).

**Q23.    Why are you making such a major change all at once?  Why not phase in the changes?**

It has been a very difficult decision for us to make these changes, but we cannot afford to continue providing such costly benefits that are out of line with the market. By making these changes all at once we expect to save close to USD $100 million per year beginning in 2008. Also, Nortel is providing an 18-month transition period from the date of announcement to the effective date of the changes.

**Q24.    How can employees confirm what CARP program they participate in?**

Letters received in the mail (dated June 22, 2006 and titled "Capital Accumulation Retirement Program Changes Effective January 1. 2008") will indicate which CARP program employees participate in.  Anyone who thinks this designation is incorrect should call HR Shared Services at ESN 355-9351 or 1-919-905-9351 (toll-free 1-800-676-4636) to verify.  Questions may also be emailed to hrssna@nortel.com.

**Q25.    How will the changes affect employees who have transferred from Canada to the U.S. and earned a previous pension benefit under the Canadian Traditional program?**

If you have earned a benefit under the Canadian Traditional program, that benefit will not be affected by the January 1, 2008 CARP changes if, as of December 31, 2007:

- you are at least age 55 with at least 70 points (age plus service), or
- you are at least age 60, regardless of service, or
- you have at least 30 years of service, regardless of age

The calculation of your Canadian Traditional pension benefit* will be based on your service in that program and on your eligible earnings when you retire or leave Nortel. If you return to Canada under the terms of Nortel's Reciprocal Agreement, you will resume participation in the Traditional program you were in prior to your transfer.

If you do not meet any of the above age/service conditions on December 31, 2007, the calculation of your Canadian Traditional pension benefit will be based on your service in that program and on your eligible earnings as at December 31, 2007.  If you return to Canada after December 31, 2007 under the terms of Nortel's Reciprocal Agreement, you will not be eligible to resume participation in the Traditional program, but will be eligible to participate in the Balanced program.

* and Transitional Retirement Allowance upon retirement where applicable

00313

Canada – General
*May 9, 2007*

**Q26.    How will the changes affect employees who have transferred from the U.S. to Canada and earned a previous pension benefit under the U.S. Traditional program?**

If you have earned a benefit under the U.S. Traditional program, the calculation of that benefit will be based on your service in that program and on your final average earnings as of December 31, 2007. If you return to the U.S. under the terms of Nortel's Reciprocal Agreement, you will not be eligible to resume your participation in the Traditional program, but will be eligible to participate in the Long-Term Investment Plan (LTIP).

**Q27.    Will the investment options in the CARP change on January 1, 2008?**

The DCPP and the investment plan currently offer a broad range of investment options to participants. The selection and performance of the various investment managers and funds are continually monitored and changes may be made at any time. However, no such changes are part of the CARP changes that Nortel is announcing at this time.

In any case, Traditional program and Investor program members who will be required to join the defined contribution pension plan on January 1, 2008 will have the same investment options as those available on January 1, 2008 under the investment plan.

**Q28.    Will I have to re-enroll in the CARP on January 1, 2008?**

Complete details related to the administrative aspects of your CARP participation will be communicated well before January 1, 2008.

**Q29.    Can an employee opt out of the pension plan, or is participation compulsory?**

Employees will be required to participate in the defined contribution pension plan under the amended Balanced program. Participation in the investment plan is optional. However, employees who opt not to contribute to the investment plan, will lose Nortel's matching contributions.

**Q30.    Will the CARP changes affect my Pension Adjustment (PA)?**

The CARP changes will have an impact on Pension Adjustments for most Traditional, Balanced and Investor program members. For most people currently participating in the Traditional and Balanced programs, Pension Adjustments will be lower than under the current CARP design, which will result in increased RRSP contribution room.
Investor Program members who will be joining the registered pension plan will have a Pension Adjustment starting in 2008.

Refer to your program-specific Questions and Answers for details.

00314

**Q31.    Have the Ontario pension regulators approved the CARP changes?**

Nortel will file an amendment to the Managerial and Non-Negotiated Pension Plan with the Ontario pension regulators closer to the effective date of the changes, in accordance with applicable legislation. At that time, you will receive the required legal notice of the changes, which will include instructions on where to address any comments or questions you may have. In the meantime, if you have comments or questions, you may contact HR Shared Services at ESN 355-9351 or 1-919-905-9351 (toll-free 1-800-676-4636). You may also email questions to  hrssna@nortel.com.

**Q32.    Will the CARP changes trigger a wind-up of the defined benefit pension plan?**

No. The Nortel Networks Limited Managerial and Non-Negotiated Pension Plan has three parts – Part I and Part II (which are defined benefit pension plans) and Part III (which is the defined contribution pension plan). Some current Part I and Part II members will continue to participate in these plans after January 1, 2008 and Nortel will continue to fund all benefits earned by Part I and Part II participants. The defined contribution pension plan (Part III) will be the ongoing part of the plan for most existing and all new CARP members starting in 2008.

**Q33.    Will there be additional communication about how to plan and invest for retirement?**

Over the next several months, employee support will continue to be provided to increase financial planning knowledge and awareness, so that employees can determine how much to contribute towards their retirements savings and learn more about their investment options. Currently employees can access some financial modelling tools through Services@Work to see how the announced changes will affect them. Employees have also been given a significant amount of time to review and implement any necessary changes to their personal financial planning before the changes come into effect.

Company contributions to pension arrangements are one part of the overall value proposition provided to employees. There are many issues to consider that may be uniquely different for each employee depending on what fits in with his/her own personal financial and retirement strategy. You may wish to seek independent professional financial planning advice.

**Q34.    Should the company find itself more profitable in the future, will Nortel's contributions to the CARP increase?**

This change has been driven by the market practice of our competitors and the general industry which is moving towards defined contribution arrangements like the amended CARP and away from subsidized post-retirement benefits. We will continue to track the market and reassess our package of retirement benefits periodically.

**Q35.    Did Nortel consider any alternatives before making this decision?**

We considered many different options as part of a comprehensive review of the CARP.

00315

The CARP changes, effective on January 1, 2008, best meet our business needs while continuing to provide our employees with a competitive retirement benefit.

**Q36. Will Traditional program members moving to the amended Balanced program on January 1, 2008 be eligible to participate in the Nortel Stock Purchase Plan?**

Yes, all Balanced program members on January 1, 2008 will be eligible to participate in the Nortel Stock Purchase Plan.  More information will be provided closer to that date.

Traditional program members who will remain in their current program on January 1, 2008 will not be eligible to participate in the Nortel Stock Purchase Plan.

**Q37. What is the difference between the current DPSP that the company contributions are directed to now and the future DCPP?**

**DCPP** - this is a registered pension plan and is subject to locking-in under pension rules (which means that funds can only be taken as "pension", not withdrawn as cash at any time). The company contributes to the DCPP on behalf of the employee; these company contributions vest after 2 years of continuous service (which means the account balance is portable). The employee will then use these funds to provide a pension when they retire, or if they leave, they can only transfer it to another pension arrangement such as a locked-in RRSP or another employer's pension plan if that plan accepts transfers (so it is considered locked-in).

**DPSP** - this is not a registered pension plan. The company contributes to this vehicle for the company matching portion for the voluntary Investment Plan when an employee contributes to the RRSP or the ATSV vehicle. Employees can withdraw from the DPSP at any time and pay the taxes accordingly or can transfer it to a regular RRSP (not locked-in) to maintain the tax shelter and can also withdraw it at any time after doing so and pay the appropriate taxes.

**Q38. Why can't we take out the lump sum amount (the commuted value) when the defined benefit pension plan is wound up Dec. 31, 2007?**

The non-contributory registered pension plan is comprised of Part I and Part II (Trad I and Trad II) which are defined benefit arrangements and Part III (the DCPP) is a defined contribution arrangement. The pension plan is <u>not</u> being wound up. Effective January 1, 2008 Part I and Part II defined benefit accruals will stop and participants will see company contributions made on their behalf directed to the DCPP, except for employees who meet the recently announced criteria for grandfathering.

Providing transfers from the defined benefit portion of the plan to the DCPP was considered but it was ultimately decided it would not allow Nortel to meet the cost savings goal. The plan is not fully funded and transfers would trigger settlement costs and accelerated funding contributions.

Canada – General
*May 9, 2007*

00316

**Q39.  How did you decide where to make the Grandfathering cut-offs?**

Where to make a cut-off is a difficult decision; it was based on business and economic considerations. No matter where the cut-off, employees who just miss meeting the eligibility criteria will always feel badly. The criteria were developed after careful consideration of the business and economic issues that were described in the CARP change announcement. Alternatives were also carefully considered. Grandfathering will be granted consistently under the standards that have been previously announced.

**Disclaimer**
If there are any discrepancies between the information in this communication and the applicable Nortel benefit plan, the actual plan document will, in all cases, govern the details of the benefit coverage and the plan administration. In accordance with applicable law and each plan and/or program, Nortel reserves the right to further amend or discontinue the plan(s) and/or program(s) described in this communication at any time without prior notice to, or consent by, employees.

# APPENDIX "G"

00317

# NORTEL NETWORKS LIMITED
## EXCESS PLAN

### ADOPTION OF AMENDMENT

WHEREAS Nortel Networks Limited ("Nortel") sponsors and maintains the Nortel Networks Limited Excess Plan (the "Plan");

AND WHEREAS Nortel reserves the right to amend the Plan pursuant to section 9 of the Plan;

AND WHEREAS the Board of Directors of Nortel ("Board") approved, in its meeting of June 2, 2006, important changes to the Plan, which were announced June 27, 2006;

AND WHEREAS those changes are reflected and detailed in the attached amendment and restatement to the Plan;

AND WHEREAS the amendment and restatement was proposed by the Retirement Plan Committee ("RPC"), a Nortel management committee, to which Nortel has delegated the authority to act as administrator of the Plan;

AND WHEREAS the amendment and restatement proposed by the RPC has been reviewed and approved by the additional committees and entities required for approval of such an amendment and restatement pursuant to the applicable governance mandates for the Plan, with the final approval granted by the:  Pension Investment Committee;

NOW THEREFORE, the following amendment and restatement to the Plan is approved, such amendment and restatement to be effective January 1, 2008, and the following individuals are hereby authorized to execute such amendment and restatement and to perform such other acts as may be necessary to put into effect the amendments as of January 1, 2008 (including, but not limited to making any minor and non-material corrections to such amendment and restatement): William J. Lasalle, General Counsel – Operations and Gordon A. Davies, General Counsel – Corporate and Corporate Secretary.

00318

# "NORTEL NETWORKS LIMITED

# EXCESS PLAN

Original Document Effective as at January 1, 2004.

This Document Effective as at January 1, 2008

00319

# Table of Contents

SECTION 1 DEFINITIONS.................................................................................................... 1

SECTION 2 APPLICATION OF THE PLAN ...................................................................... 3

SECTION 3 MEMBERSHIP.................................................................................................. 4

SECTION 4 CONTRIBUTIONS .......................................................................................... 5

SECTION 5 EXCESS BENEFIT FOR PART I MEMBERS ............................................ 6

SECTION 6 EXCESS BENEFIT FOR PART II MEMBERS .......................................... 9

SECTION 7 EXCESS BENEFIT FOR PART III MEMBERS........................................ 12

SECTION 8 ADMINISTRATION...................................................................................... 13

SECTION 9 AMENDMENT AND TERMINATION ...................................................... 15

SECTION 10 GENERAL PROVISIONS .......................................................................... 16

00320

# SECTION 1

## DEFINITIONS

In the Plan, all capitalized words shall have the meanings assigned to them in the Managerial Plan, unless a different meaning is clearly and specifically required in the context.

For greater certainty, the following words and phrases shall have the meanings described below:

"**Employee Benefits Committee**" means the committee established by the Company to provide a last and final internal review of all employee claims that have been denied by the Company in relation to certain benefit programs and plans offered by the Company including this Plan.

"**Excess Benefit**" means the benefit payable to a Member under this Plan.

"**Global Employee Services**" means the Global Employee Services department of the Company.

"**Investment Plan**" means the Nortel Networks Limited Investment Plan for Employees - Canada.

"**Managerial Plan**" means the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan. A reference to the Managerial Plan in Section 5.1(a), 5.4(A), 6.1(a) and 6.2(a) of this Plan shall be construed as a reference to the Managerial Plan, read without reference to the final sentence of the definition "Earnings Termination Date" in that Plan.

"**Member**" means an individual who:

(a)     is employed by and receives a stated compensation from the Company;

(b)     is not eligible for membership in the Nortel Networks Limited Negotiated Pension Plan or in any other pension plan sponsored for hourly or union employees;

(c)     is entitled to pension benefits under Parts I, II or III of the Managerial Plan as applicable; and

(d)     meets the criteria specified in Section 3.1.

00321

"**Part I Member**" means a Member who is a member under Part I of the Managerial Plan.

"**Part II Member**" means a Member who is a member under Part II of the Managerial Plan.

"**Part III Member**" means a Member who is a member under Part III of the Managerial Plan.

"**Plan**" means the Nortel Networks Limited Excess Plan.

"**Retirement Date**" means the Normal Retirement Date, early retirement date, or postponed retirement date of the Member under the Managerial Plan.

"**SERP**" means the Nortel Networks Supplementary Executive Retirement Plan.

"**SPCP**" means the Special Pension Credit Plan sponsored by the Company.

"**Terminate**" means a cessation of employment with the Company not caused by retirement, death or work force reduction. "Termination" shall have a corresponding meaning.

In this document, reference to the male gender will include the female gender and vice versa, and words imparting the singular number will include the plural number and vice versa.

00322

# SECTION 2
## APPLICATION OF THE PLAN

2.1    <u>Purpose</u>

The primary purpose of the Plan is to:

(a)    provide pension benefits in excess of those permitted under Part I and Part II of the Managerial Plan in accordance with the Income Tax Act.

(b)    permit contributions in excess of those permitted under Part III of the Managerial Plan in accordance with the Income Tax Act.

2.2    <u>Effective Date</u>

The provisions of this text of the Plan shall apply with effect as of and from January 1, 2004 except as otherwise specifically provided in the Plan.  Accordingly, this text applies to Members who terminate, retire or die on or after January 1, 2004.

2.3    <u>Non-Registered Plan</u>

The Plan provides pension benefits only in excess of those that my be provided from a pension plan registered under the Income Tax Act and, as a consequence, shall not be registered under the terms of any pension standards legislation.

00323

# SECTION 3
# MEMBERSHIP

3.1    <u>Membership</u>

An Employee who is a member of the Managerial Plan shall become a Member of the Plan if the Employee's benefits under the Managerial Plan are limited by the Income Tax Act and such Employee shall continue to be a Member of the Plan as long as he is entitled to benefits hereunder.

00324

## SECTION 4
## CONTRIBUTIONS

4.1    <u>Member Contributions</u>

Members are neither required nor permitted to contribute to the Plan nor to transfer any
amount to the Plan from another plan or arrangement.

4.2    <u>Company Contributions</u>

The Company shall pay benefits under Section 6 and Section 7 of the Plan and make the
contributions contemplated under Section 8 of the Plan out of the Company's general
funds as such benefits or contributions become payable.  The Company is not required to
pre-fund or secure the benefits or contributions in any way.

00325

## SECTION 5
## EXCESS BENEFIT FOR PART I MEMBERS

5.1    Retirement

A Part I Member who retires on his Retirement Date shall receive an Excess Benefit from the Plan in an amount equal to:

(a)    the amount of the annual pension that would be payable under Part I of the Managerial Plan determined according to the applicable formula under the Managerial Plan if such pension were determined without regard to the maximum pension limitations under the Income Tax Act specified in Section 7.13 of the Managerial Plan;

reduced by

(b)    the amount of the annual pension payable under Part I of the Managerial Plan, it being understood that the amount of the annual pension payable from the Managerial Plan shall be determined according to the applicable formula under the Managerial Plan without regard to any reduction in benefits that may be applied, by operation of statute or otherwise, as a result of the funded status of the Managerial Plan on the date of such determination (it being further understood that the foregoing assumption shall also be applicable to the determination of the amount of survivor pension payable to the Member's Spouse under Part I of the Managerial Plan following the death of the Member and to any amount payable under Part I of the Managerial Plan to the Member's Beneficiary following the death of the Member).

5.2    Non-Vested Termination

If a Part I Member Terminates prior to qualifying for a deferred pension in accordance with Section 11.1.1 of the Managerial Plan, no benefits shall be payable from the Plan.

00326

**5.3**    <u>Vested Termination – Deferred Pension</u>

If a Part I Member Terminates after becoming entitled to a deferred pension in accordance with Section 11.1.1 of the Managerial Plan, but prior to the Part I Member's Retirement Date, and the Part I Member elects to receive a deferred pension under the Managerial Plan, the Part I Member shall be entitled to receive a deferred pension calculated in accordance with Section 5.1 commencing on his Retirement Date.  For greater certainty, in the event a Member elects to commence his deferred pension prior to Normal Retirement Date, the amount determined under Section 5 shall be reduced in the same manner as the Part I Member's Pension under the Managerial Plan.

**5.4**    <u>Vested Termination - Commutation</u>

If a Part I Member:

(a)    Terminates after becoming entitled to a deferred pension in accordance with Section 11.1.1 of the Managerial Plan; and

(b)    Terminates prior to the Part I Member's Retirement Date or under circumstances under which the Part I Member is otherwise entitled to exercise portability options under the Managerial Plan; and

(c)    elects a transfer pursuant to Section 11.3 of the Managerial Plan,

the Part I Member shall be entitled to receive from the Plan a lump sum payment equal to:

(A)    the Commuted Value of his deferred pension determined pursuant to the provisions of Part I of the Managerial Plan, but without the application of the maximum pension limitations under the Income Tax Act specified in Section 7.13 of the Managerial Plan,

less

(B)    the Commuted Value of the Part I Member's pension payable under Part I of the Managerial Plan,

it being understood that the pension payable from the Managerial Plan shall be determined according to the applicable formula under the Managerial Plan without regard to any reduction in benefits that may be applied, by operation of statute or otherwise, as a

00327

result of the funded status of the Managerial Plan on the date of such determination.   For greater certainty, any lump sum payment made in accordance with Section 5.4 shall not be grossed-up for applicable taxes.

5.5     Pre-Retirement Death

If a Part I Member dies before his pension commences to be paid under the Plan, the Part I Member's Beneficiary shall be entitled to receive the benefit accrued by the Part I Member determined in accordance with Section 5.1, assuming the Part I Member retired as of the his date of death, payable in the same manner and subject to the same terms and conditions (with the exception of portability options) as under the Managerial Plan.

5.6     Form of Payment

The Excess Benefit payable under Section 5.1 shall be paid in the same form and manner and subject to the same conditions as the pension payable to the Part I Member under the Managerial Plan.

00328

## SECTION 6

## EXCESS BENEFIT FOR PART II MEMBERS

6.1    <u>Retirement and Vested Termination – Cash Value</u>

A Part II Member who retires on his or her Retirement Date or Terminates after qualifying for a deferred pension in accordance with Section 17.1 of the Managerial Plan, and elects to receive the Cash Value of his pension benefit under Part II of the Managerial Plan, or the Beneficiary of a Part II Member who dies before his pension commences to be paid under the Plan, shall be entitled to receive an Excess Benefit from the Plan in an amount equal to:

(a)    the Member's Cash Value payable under Part II of the Managerial Plan determined according to the applicable formula under the Managerial Plan if such amount were determined without regard to the maximum pension limitations under the Income Tax Act specified in Section 7.13 of the Managerial Plan;

reduced by

(b)    the Member's Cash Value payable under Part II of the Managerial Plan determined according to the applicable formula under the Managerial Plan without regard to any reduction in benefits that may be applied, by operation of statute or otherwise as a result of the funded status of the Managerial Plan on the date of such determination.

If the sum of the Cash Value payable under Section 6.1 plus the value of any benefit payable to the Part II Member under the SERP (in respect of service in Canada) or under the SPCP (if granted in Canada) is equal to or greater than 50% of the Part II Member's Final Average Earnings, the Cash Value will be paid in the form of a 15 year term certain annuity commencing on the last day of the month in which the Part II Member's Retirement Date or Termination occurs.  In all other circumstances, the Cash Value will be paid in a lump sum.  For greater certainty, any payment made in accordance with Section 6.1 shall not be grossed-up for applicable taxes.

- 9 -

00329

6.2    Retirement and Vested Termination – Pension

A Part II Member who retires on his Retirement Date or Terminates after qualifying for a deferred pension in accordance with Section 17.1 of the Managerial Plan and elects to receive a pension all pursuant to the terms of Part II of the Managerial Plan, shall receive an Excess Benefit from the Plan in an amount equal to:

(a)    the amount of the annual pension payable that would be payable under Part II of the Managerial Plan determined according to the applicable formula under the Managerial Plan if such pension were determined without regard to the maximum pension limitations under the Income Tax Act specified in Section 7.13 of the Managerial Plan;

reduced by

(b)    the amount of the annual pension payable under Part II of the Managerial Plan, it being understood that the amount of the annual pension payable from the Managerial Plan shall be determined according to the applicable formula under the Managerial Plan without regard to any reduction in benefits that may be applied, by operation of statute or otherwise, as a result of the funded status of the Managerial Plan on the date of such determination (it being further understood that the foregoing assumption shall also be applicable to the determination of the amount of survivor pension payable to the Member's Spouse under Part II of the Managerial Plan following the death of the Member and to any amount payable under Part II of the Managerial Plan to the Member's Beneficiary following the death of the Member).

6.3    Non-Vested Termination

If a Part II Member Terminates prior to qualifying for a deferred pension in accordance with Section 17.1 of the Managerial Plan, no benefits shall be payable from the Plan.

00330

6.4    Pre-Retirement Death

If a Part II Member dies before his pension commences to be paid under the Plan, the Part II Member's Beneficiary shall be entitled to receive the benefit accrued by the Member under Section 6.1 determined as of the Part II Member's date of death, payable in the same manner and subject to the same terms and conditions (with the exception of portability options) as under the Managerial Plan.

6.5    Form of Payment

The Excess Benefit payable under Section 6.2 shall be paid in the same form and manner (with the exception of portability rights) and subject to the same conditions, including any applicable indexation, as the pension payable to the Part II Member under the Managerial Plan.

00331

# SECTION 7
## EXCESS BENEFIT FOR PART III MEMBERS

7.1     Excess Benefit Under Part III

Part III Members shall not be entitled to an Excess Benefit under the Plan at retirement, Termination or death.  Rather than provide a benefit under the Plan to Part III Members, the Company shall contribute to each Part III Member's after-tax savings account under the Investment Plan for each contribution period an amount equal to:

(a)     the amount of the contribution that would be made under Part III of the Managerial Plan for the period in question determined according to the applicable formula under the Managerial Plan without regard to any limits applied by operation of the Income Tax Act on the date of such determination; less

(b)     the amount of contribution made in respect of the Member under Part III of the Managerial Plan.

- 12 -

00332

# SECTION 8
# ADMINISTRATION

8.1    Role of Company

The Company shall be responsible for the administration of the Plan. The Company shall have the exclusive right to decide all matters arising under the Plan or in connection with its administration, including determinations as to the periods of Continuous Service, eligibility for, and the amount of any benefit under the Plan. All decisions by the Company shall be final and binding on all persons affected hereby. The Company, in the performance of its responsibilities may act through such persons, including the Employee Benefits Committee, other committees, employees and agents, as it deems appropriate.

8.2    Administrative Procedures and Benefit Practices

The Company, from time to time, may adopt rules, including administrative procedures and benefit practices, for the administration of the Plan which shall be consistent with the provisions of the Plan.

8.3    Evidence of Entitlement to Benefits

Every person eligible for a benefit under the Plan shall, on request, provide to the Company evidence, including evidence by way of affidavit, declaration or certificate, and including but not limited to proof of age, satisfactory to the Company, as it may require to determine the entitlement to or the amount of such benefit.

8.4    Expenses

All costs related to the administration of the Plan shall be borne by the Company.

8.5    Liability

The Company, its directors, officers, employees and agents, shall not be liable for any action taken, suffered or omitted by them in good faith in carrying into effect the provisions of the Plan. Without limiting the generality of the foregoing, the Company

- 13 -

00333

shall be entitled to rely on information and documentation supplied or elections made by, a Member or Former Member, from time to time, for purposes of the Plan; and the Company, its directors, officers, employees and agents, shall not be liable for any error or omission or loss of any kind or adverse income tax or other consequences arising there from, or from any failure or delay in connection therewith including the failure to secure and provide the consent or agreement thereto of another part as necessary or appropriate.

8.6    Appeal Process

(a)    Subject to Section 8.6(b), where a Member's periods of Service, eligibility for Excess Benefits, the amount of Excess Benefits payable or any other right or entitlement under the Plan is in dispute, the Member may, in writing, seek a review of the issue in dispute from Global Employee Services.

(b)    Where a dispute identified in Section 8.6(a) remains in dispute after review by Global Employee Services, the Member may, in writing, seek a final review of the issue in dispute from the Employee Benefits Committee. The decision of the Employee Benefits Committee shall be final and binding on both the Company and the Member.

00334

## SECTION 9
## AMENDMENT AND TERMINATION

9.1    Continuation

While the Company intends to continue the Plan, it reserves the right, at any time, to amend or terminate the Plan in whole or in part, without the consent of any Member or any other person.

9.2    Amendment

The Company reserves the right to amend the Plan in any way and at any time.

- 15 -

00335

# SECTION 10
## GENERAL PROVISIONS

10.1    Employment Rights

Participation in the Plan does not confer on a Member any rights that he did not otherwise possess as an Employee, except to such benefits as have specifically accrued to him under the terms of the Plan. Nothing contained in the Plan may be deemed to give a Member the right to be retained in the employ of the Company or to interfere with the right of the Company to discharge a Member at any time without regard to the effect that such discharge might have upon him as a Member of the Plan.

10.2    No Duplication of Benefits

There shall be no duplication of the benefits under any one section of the Plan and the benefits under any other section of the Plan, or of the benefits under the Plan and the benefits under any other supplemental retirement plan sponsored by the Company or by any associated, subsidiary or affiliated company with respect to the same period of service.

10.3    Non-Alienation

Except as otherwise directed by a court of competent jurisdiction or permitted by law, all benefits provided under the terms of the Plan to a Member are for the Member's own use and benefit, are not capable of assignment or alienation and do not confer upon any Member, personal representative or dependant, or any other person, any right or interest in the benefit or deferred benefit that is capable of being assigned or otherwise alienated.

10.4    Notices and Elections

Any notice or election to be given, made or communicated pursuant to or for any purpose of the Plan shall be given, made or communicated, as the case may be, in such manner as the Company may determine from time to time. Without limiting the generality of the foregoing, any person entitled to a benefit under the Plan shall be responsible for

- 16 -

00336

notifying the Company in writing of his or her mailing address and subsequent changes of mailing address.

10.5    Beneficiary Designation

Subject to applicable law, a Member may, by notice in writing to the Company, and on such form as the Company may provide from time to time, designate one or more persons as beneficiary to receive, upon the Member's death, payment of the benefits provided for under this Plan.  The Member may alter or revoke such designation in like manner from time to time, subject to applicable law.

10.6    Records

Whenever used for the purposes of the Plan, the records of the Company will be deemed to be conclusive as to the facts with which they are concerned.

10.7    Payments to Incapacitated Persons

If the Company receives evidence satisfactory to it that any person receiving a benefit or entitled to receive a benefit under the Plan is physically, mentally or legally incompetent to receive the benefit and to give a valid receipt therefore, the Company may pay such benefits to the person's legal representative or, if no guardian, committee or other representative of the estate of that person has been duly appointed, benefit payments may be made, in the discretion of the Company, to the applicable court for the credit of the person pursuant to the laws governing such payments into court. Any such payment will be deemed to be a payment for the account of the person and will constitute a complete discharge for the payment.  If a person dies before receiving all the payments to which he is entitled under the Plan, the remaining payments will be made to his estate in a lump sum.

10.8    Construction

The Plan and all rights thereunder will be governed, construed and administered in accordance with the laws of Ontario.

00337

10.9   Severability

If any provision of the Plan is held to be invalid or unenforceable by a court of competent jurisdiction, its invalidity or unenforceability shall not affect any other provision of the Plan and the Plan shall be construed and enforced as if such provision had not been in the Plan.

10.10   Surplus from Managerial Plan

Notwithstanding any other provision of the Plan, in the event that a Member or Beneficiary receives a payment of surplus from the Managerial Plan, the benefit to which the Member or Beneficiary is otherwise entitled to receive from the Plan shall be reduced, on a basis to be determined by the Company, to reflect the amount of the surplus payment.

10.11   No Tax Adjustments

All payments provided for under the Plan shall be made in the form applicable to the Member's corresponding benefit under the Managerial Plan. In no event will any benefit payment made under the Plan be adjusted for taxes that may be payable by the Member in connection with the benefit payment."

00338

\* \* \* \* \*

We hereby execute the foregoing amendment to the Plan, effective January 1, 2008, for and on behalf of Nortel Networks Limited and in accordance with the approvals granted pursuant to the governance mandates that are applicable to the Plan.


_William J. LaSalle_
Signature
William J. LaSalle
General Counsel - Operations

Title

_November 12, 2007_
Date


_Gordon A. Davies_
Signature
Gordon A. Davies
General Counsel - Corporate
and Corporate Secretary

Title

_November 13, 2007_
Date

- 19 -

# APPENDIX "H"

00339

FINAL – October 23, 2002

NORTEL NETWORKS

SUPPLEMENTARY EXECUTIVE RETIREMENT PLAN

00340

# CONTENTS

| SECTION | | PAGE |
|---|---|---|
| 1. | PURPOSE OF THE PLAN | 1 |
| 2. | DEFINITIONS | 1 |
| 3. | ELIGIBILITY TO PARTICIPATE IN THE PLAN | 7 |
| 4. | TOTAL RETIREMENT BENEFIT | 7 |
| 5. | SERP BENEFIT | 9 |
| 6. | TRANSFERS<br>6.1 Transfers Prior to May 1, 2000<br>6.2 Transfers After April 30, 2000 | 10 |
| 7. | SURVIVOR BENEFIT | 11 |
| 8. | PAYMENT OF BENEFITS<br>8.1 Mode of Payment<br>8.2 Company Effecting Payment<br>8.3 Currency | 11 |
| 9. | ADMINISTRATION<br>9.1 Committee<br>9.2 Limitation of Liability<br>9.3 Evidence of Entitlement to Benefits | 13 |
| 10. | EFFECTIVE DATE OF PLAN | 14 |
| 11. | AMENDMENT, TERMINATION | 14 |
| 12. | GENERAL PROVISIONS<br>12.1 Assignment<br>12.2 No Right to Continuation of Employment<br>12.3 No Additional Rights to Benefits under Pension Plan<br>12.4 Funding<br>12.5 Tax Treatment | 15 |

NORTEL NETWORKS
SUPPLEMENTARY EXECUTIVE RETIREMENT PLAN

00341

## 1. PURPOSE OF PLAN

The Nortel Networks Supplementary Executive Retirement Plan, together with other employer-sponsored retirement plans, is designed to provide eligible Executives of Nortel Networks with retirement benefits.

## 2. DEFINITIONS

In the Plan,

"Accumulated Percentage" means, in respect of the determination of the SERP III Benefit pursuant to section 4(c) hereof, the sum of Percentage Credits attributed to the Executive's Actual Years of Service.

"Actual Years of Service" means years and months of service with Nortel Networks, including periods of extended salary continuance paid as a severance benefit, measured from the date that the Executive becomes a member of the Canadian Pension Plan (including any additional service credits that may be granted due to service bridging) or, if the Executive is first hired by a U.S. subsidiary or affiliate of Nortel Networks and is a member of the U.S. Pension Plan or the Canadian Pension Plan, the Executive's employment date in the U.S. Any part of a month of service will be considered a full month for purposes of this definition.

"Actuarial Equivalent" means a benefit that has the equivalent value of another Total Retirement Benefit payable under the Plan, determined by using the actuarial tables and other methods and assumptions that are used by the Corporation in actuarial equivalency determinations under the Pension Plan under which an Executive is or was a Participant, provided that the interest assumption on which the calculation of equivalent value is based shall be six percent (6%) compounded annually.

For greater certainty, in determining the Actuarial Equivalent lump sum of a Total Retirement Benefit under the Plan as at any particular time, the fact that the Plan does not benefit from the same favorable tax treatment as is afforded to the Pension Plan shall not be taken into account.

The Actuarial Equivalent of any Total Retirement Benefit or part thereof, the payment of which is within the discretion of the Corporation, shall be deemed to be nil.

00342

"Age + Service Points" means the sum of the Executive's age and Service Points as of the determination date. "Age" for this purpose is the age on the Executive's birthday during the calendar year that contains the determination date.

"Board of Directors" means the Board of Directors of Nortel Networks Limited;

"Capital Accumulation and Retirement Program" means the employee benefit program established as of May 1, 2000 by Nortel Networks for certain of its employees in the United States and Canada. Such program includes options concerning pension benefit plans for such employees. The options available for selection under that program are referred to as the "traditional", "balanced" and "investor" options ("Traditional Option", "Balanced Option", and "Investor Option").

"Committee" means the Joint Leadership Resources Committee of the Board of Directors or its predecessors and successors;

"Corporation" means Nortel Networks Limited or its successors;

"Earnings" of an Executive for a particular month means the base pay of the Executive for that month, plus the incentive award or bonus, if any, granted to the Executive for such month under the SUCCESS Plan or one of its predecessors (including the Senior Management Incentive Award Plan or the Executive Management Incentive Plan) and commissions. Bonuses and/or commissions are taken into account in the year in which they are paid or would have been paid if the Executive had not elected a deferral of such payment.

The inclusion of bonuses and commissions in the definition of Earnings is subject to the following limitations:

With respect to calculation of a SERP I Benefit under section 4(a) hereof for an Executive:

(a)    only fifty percent (50%) of the bonus or commission granted to an Executive shall be included in Earnings in the case of an Executive who was classified as a Band 11 under the Nortel Networks employment classification system as of December 31, 1998.

(b)    if an Executive retires on or after reaching age fifty eight (58) but before reaching age fifty nine (59), only thirty three and one third percent (33-1/3%) of the bonus or commission which would otherwise be included for a particular month as provided above shall be included in Earnings; and

(c)    if an Executive retires on or after reaching age fifty nine (59) but before reaching age sixty (60), only sixty six and two thirds percent

00343

(66-2/3%) of the bonus or commission which would otherwise be included in Earnings for a particular month as provided above shall be included in Earnings;

With respect to calculation of a SERP II or III Benefit under section 4 hereof for an Executive who was classified as a Band 12 or higher under the Nortel Networks employment classification system as of December 31, 1998 or whose base salary is at least equal to either one of the following table amounts as of the corresponding stated date, then one hundred percent (100%) of the bonus or commission shall be included in Earnings. (Amounts in the table are stated in the currency of the Executive's country of employment at the date indicated). Otherwise, then fifty percent (50%) of the bonus or commission shall be included in Earnings:

| Date | Amount*[1] |
|------|-----------|
| December 31, 1998 | $200,000 |
| December 31, 1999 | $215,000 |

However, the bonus or commission will not be included for a given year to the extent that it exceeds sixty percent (60%) of the final base pay of the Executive effective as of the last day of that calendar year.

"Excess Plan Benefit" means the annual benefit payable upon Retirement to the Executive under the pension benefit plan that pays the difference between the amount determined under the applicable formula under the Pension Plan that applies to the Executive and the actual amount paid to the Executive under such Pension Plan after taking into consideration regulatory restrictions on maximum amounts that may be paid from such Pension Plan.  For U.S. Executives, such pension benefit plan is the Nortel Networks Restoration Plan. For Canadian Executives, such pension benefit plan is the Nortel Networks Excess Plan.

"Executive" means an employee of Nortel Networks who is a participant in the Plan pursuant to section 3;

"Final Average Earnings" means (a) with respect to the calculation of a SERP I and SERP II Benefit, the average of the three (3) highest consecutive years of Earnings of the Executive; or (b) with respect to the calculation of a SERP III benefit, the average of the three (3) highest consecutive years of the Earnings of the Executive during the last ten (10) years of the Executive's employment with Nortel Networks.

"Nortel Networks" means Nortel Networks Limited and its subsidiaries and affiliates in the United States and Canada that have adopted the Nortel Networks

---

[1] Canadian or US dollars, as applicable.

- 3 -

00344

Retirement Income Plan or the Nortel Networks Managerial and Non-Negotiated Pension Plan for the benefit of their employees;

"Pension Plan" in respect of an Executive means the Pension Service Plan portion of the Nortel Networks Retirement Income Plan (the "U.S. Pension Plan") or the Nortel Networks Managerial and Non-Negotiated Pension Plan, Parts I and II (the "Canadian Pension Plan") from which the Executive becomes entitled to receive a benefit upon Retirement;

"Pension Plan Benefit" in respect of an Executive means the amount of the annual pension payable upon Retirement to the Executive under the Pension Plan;

"Percentage Credit" means the credit attributed to a year granted to the Executive based on the Executive's Age + Service Points for that year. For each year of Pension Plan membership, including the extended salary continuance period, an Executive shall be credited with a Percentage Credit determined from the following chart. The Percentage Credit awarded shall be based on the Executive's Age + Service Points in that calendar year:

| Sum of Age Plus Service Points | Percentage Credit |
|---|---|
| Up to 45 | 2% |
| 46 – 55 | 5% |
| 56 – 65 | 20% |
| 66 – 75 | 22% |
| over 75 | 24% |

An Executive's Percentage Credit for a particular calendar year shall be prorated if the Executive has less than a full year of Actual Years of Service in that calendar year.

"Plan" means the Supplementary Executive Retirement Plan (SERP) as set forth herein and as may be modified from time to time;

"Retirement" and "Retired" in respect of an Executive means the termination of employment of the Executive in circumstances where the Executive is not re-employed by Nortel Networks, provided the Executive satisfies one of the following conditions. However, satisfaction of the conditions described in subsections (d) and (e) below shall not qualify an Executive for a SERP I Benefit:

(a)     the Executive has attained sixty five (65) years of age;

(b)     the Executive has attained age sixty (60) and has at least twenty (20) Years of Eligible Retirement Service;

- 4 -

00345

(c)    the Executive has attained age fifty eight (58) and the sum of the Executive's age and Years of Eligible Retirement Service equals or exceeds eighty five (85);

(d)    the Executive has attained age sixty (60) and has at least five (5) years of continuous service, provided such Executive was hired directly into what was then known as the Executive Leadership Team on or after January 1, 1999 and prior to January 1, 2000; or

(e)    the termination of employment is initiated by Nortel Networks and the Executive has attained fifty five (55) years of age (provided that no severance benefit is paid in connection with such Retirement, unless severance benefits payable in connection with such Retirement are approved by the Committee or its delegate).

"SERP Benefit" in respect of an Executive shall have the meaning set forth in section 5;

"Service Points" means the number of years of the Executive's continuous service with Nortel Networks that the Executive would have completed on his employment anniversary date that occurred in that calendar year, regardless of whether the Executive remains employed to such anniversary date in that calendar year that contains the determination date.

Service Points will be granted for service with Nortel Networks in a country other than Canada and the U.S. if the Executive qualifies for a benefit under the U.S. Pension Plan or the Canadian Pension Plan.

"Special Pension Credits" means, for Executives hired after attaining age thirty five (35) and prior to January 1, 1999 and for purposes of this Plan only, additional years of service calculated as thirty five (35) subtracted from the Executive's attained age on his date of hire by Nortel Networks.  Such Special Pension Credits are only taken into account for purposes of this Plan if the Executive retires or his employment is otherwise terminated on or after attaining age sixty (60).

"Special Pension Credit Plan Benefit" means the benefit that is payable to the Executive upon his retirement under the terms of the Nortel Networks Special Pension Credit Plan.

"Spouse" of an Executive means an individual who at the time of Retirement and death of the Executive is the person who otherwise qualifies as a spouse under the Pension Plan;

"Survivor Benefit" means the benefit payable under the Plan to an Executive's Spouse as described in section 7;

00346

"Total Retirement Benefit" shall have the meaning set forth in section 4;

"Years of Credited Service" in respect of an Executive means Actual Years of Service plus fifty percent (50%) of Special Pension Credits. For an Executive hired at age fifty one (51) or greater, Years of Credited Service may not exceed two (2) times the Executive's Actual Years of Service, with a minimum of five (5) years of actual service required. Special Pension Credits are only taken into account for purposes of this Plan if the Executive retires or his employment is otherwise terminated on or after attaining age sixty (60).

"Years of Eligible Retirement Service" in respect of an Executive means the Executive's actual years of service recognized under the Pension Plan for purposes of eligibility for benefits, plus Special Pension Credits, if applicable.

- 6 -

3.    ELIGIBILITY TO PARTICIPATE IN THE PLAN                    00347

The following employees are Executives who may be entitled to benefits from the Plan:

(a)    Employees who had an annual base salary of two hundred thousand dollars ($200,000) or more at any time during the period January 1, 1999 to December 31, 1999.

(b)    Employees who were designated as Band 11 or higher under the Nortel Networks employment classification system on or before April 30, 1998. Membership in the Plan was closed during the period from May 1, 1998 to December 31, 1998. No individual who became a Band 11 or higher employee under the Nortel Networks employment classification system during the period from May 1, 1998 to December 31, 1998 qualifies as an Executive under this Plan.

To qualify as an Executive, such an employee must also be a participant in the Traditional Option. An employee becomes an Executive with respect to the Plan upon his or her attainment of such criteria and does not cease to be an Executive prior to his or her Retirement or death (even if the employee ceases to meet the definition of an Executive). However, no employee shall become an "Executive" after December 31, 1999.

Executives and their Spouses shall be entitled to receive benefits under the Plan only in the event the conditions for entitlement to such benefit (as described in the Plan) have been satisfied.

4.    **TOTAL RETIREMENT BENEFIT**

"Total Retirement Benefit" in respect of an Executive

(i)    with respect to service while working in the US or service while working in Canada and enrolled in Part II of the Canadian Pension Plan, means the Actuarial Equivalent of the form of payment applicable to the Executive under this Plan of the greatest of (1) the Actuarial Equivalent lump sum value of the amount calculated under subsection (a); (2) the Actuarial Equivalent lump sum value of the amount calculated under subsection (b); or (3) the amount calculated under subsection (c); but only to extent that each such subsection is applicable to the Executive, as described therein:

(ii)    with respect to service while working in Canada and enrolled in Part I of the Canadian Pension Plan, means the form of payment

00348

applicable to the Executive under this Plan of the greatest of (1) the amount calculated under subsection (a); or (2) the amount calculated under subsection (b) but only to extent that each such subsection is applicable to the Executive, as described therein:

(iii)    with respect to each country should be calculated separately.

SERP Benefits shall be calculated as follows:

    (a) SERP I Benefit--an annual amount equal to the lesser of:

        (i)    one and three tenths percent (1.3%) multiplied by the Executive's Final Average Earnings and Years of Credited Service; and

        (ii)    seventy percent (70%) of the Executive's final base salary (exclusive of any bonus, incentive award, or commission) immediately prior to Retirement.

        If an executive has Actual Years of Service in both Canada and the US, the cap outlined in subsection (ii) above shall be prorated by Actual Years of Service in each country.

An Executive will qualify for a SERP I Benefit if the Executive (1) was classified as a Band 11 or higher under Nortel Networks' employment classification system on or before April 30, 1998, (2) became an Executive on or before May 1, 1998, and (3) elected the Traditional Option effective as of May 1, 2000.

    (b) SERP II Benefit--an annual amount equal to the lesser of the following amounts and subject to a seven percent (7%) reduction (prorated for partial years) for each year by which the Executive's Retirement precedes his attainment of age sixty (60):

        (i)    one and three tenths percent (1.3%) multiplied by the Executive's Final Average  Earnings and Years of Credited Service; and

        (ii)    sixty percent (60%) of the Executive's Final Average Earnings.

        If an executive has Actual Years of Service in both Canada and the US, the cap outlined in subsection (ii) above shall be prorated by Actual Years of Service in each country.

An Executive will qualify for a SERP II Benefit if the Executive (1) receives a Pension Plan Benefit from the Canadian Pension Plan, Part 1, or (2) receives a Pension Plan Benefit from the U.S. Pension Plan and was a member of the version of that plan that was in effect as of December 31,

- 8 -

00349

1998; had attained age fifty (50) and completed at least four (4) years of vesting service under the terms of that plan as of that date; and has met the requirements described in the last paragraph of Section 4(a) to qualify for a SERP I Benefit.

(c) SERP III Benefit—the lump sum value determined by multiplying the Executive's total Percentage Credits by his Final Average Earnings. The lump sum value shall be limited to an amount equal to five hundred fifty percent (550%) of the Executive's Final Average Earnings (including the bonus included after any adjustment for maximum limits).

The SERP III Benefit for the Actual Years of Service in each country shall be calculated based on the sum of the actual Percentage Credits for each calendar year of Actual Years of Service in each country. Percentage Credits will be prorated for the year of transfer.

If the retirement cap applies, the accumulated credits in each country are determined as the maximum (i.e. 550% of Final Average Earnings) multiplied by the ratio of the Accumulated Percentage (before the cap) in each country to the total Accumulated Percentage (before the cap).

An Executive will qualify for a SERP III Benefit if the Executive (1) receives a Pension Plan Benefit from the Canadian Pension Plan, Part II, or (2) receives a Pension Plan Benefit from the U.S Pension Plan.

## 5.    SERP BENEFIT

Upon Retirement, an Executive shall receive a benefit under this Plan (herein referred to as the "SERP Benefit") which is the excess, if any, of the amount determined as the Executive's Total Retirement Benefit under Section 4 hereof with respect to the Actual Years of Service in each country, over the Executive's Pension Plan Benefit, Excess Plan Benefit, and Special Pension Credit Plan Benefit, if any, in each country, in accordance with the administrative practice established by Nortel Networks for such offset calculations. The determination of the amount of such SERP Benefit shall be subject to the terms of Section 6 hereof, however, with respect to an Executive who receives both a U.S. Pension Plan benefit and a Canadian Pension Plan benefit.

00350

## 6. TRANSFERS

### 6.1    Transfers Prior to May 1, 2000

In determining the SERP Benefit for an Executive who transferred between employment with a U.S. Nortel Networks subsidiary or affiliate and a Canadian Nortel Networks subsidiary or affiliate prior to May 1, 2000, the following provisions shall apply rather than the provisions that would otherwise apply to the determination of the SERP Benefit for the Executive if there had been no such transfer:

(a) The Executive's total combined service in both countries shall equal no more than the Executive's total service (years and partial months, with any part of a month considered a full month). The Canadian service will always be rounded up to the next month. The US service will only be rounded up if required to equal total combined service.

(b) Earnings as defined in the Plan shall be converted based on the administrative practice in effect at the time of the conversion, as determined at the discretion of the Committee.

(c) For benefit purposes, Special Pension Credits shall be recognized with respect to the service completed by the Executive in the country in which the Executive Retires.

(d) "Service Points" - Under SERP III Benefit calculation, Executives who transfer between the US and Canada (or other countries under the reciprocal agreement) will remain whole under the Service Points calculation. A Canadian transfer to the US would start accruing Service Points in the U.S. where he or she was at the time of the transfer (and vice versa).

(e) Service in the year of a transfer is prorated so that total service in both countries equals no more than one year of Benefit Service. Correspondingly, in the year of transfer, the Executive's Percentage Credit is prorated between the service earned in each country.

### 6.2    Transfers after April 30, 2000

In determining the SERP Benefit for an Executive who transferred between employment with a U.S. Nortel Networks subsidiary or affiliate and a Canadian Nortel Networks subsidiary or affiliate after April 30, 2000, the following provisions shall apply rather than the provisions that would otherwise apply to the determination of the SERP Benefit for the Executive if there had been no such transfer:

(a) Executives who transfer either to/from Canada/US will be given the options available in the Capital Accumulation and Retirement Program in the new country that are open to such Executive. If the Executive elects the

00351

Balanced Option or the Investor Option upon his or her transfer to the new country, his or her participation in the SERP will be suspended during his or her employment in the new country.

(b) If the Executive returns to the country of origin and if the Executive recommences participation in the Traditional option in accordance with policy established in the country of origin, the Executive will accrue SERP benefits with respect to the service after the return to the country of origin. If the Executive elects the Balanced or the Investor option upon return to the country of origin in accordance with the policy established in the country of origin, the Executive would forfeit all SERP Benefits, even for service earned during the period preceding the initial transfer.

(c) SERP benefits will not be forfeited under this transfer arrangement (except as noted above).

(d) The SERP benefit determined in respect of the country of transfer, would be determined as if the Executive was participating in the Traditional program in the receiving country.

7.     SURVIVOR BENEFIT

In the event of the death of an Executive after payment of the SERP Benefit payable at Retirement to such Executive has commenced, the Executive's Spouse, if any, shall be paid an annual amount under this Plan during his or her lifetime equal to sixty percent (60%) of the SERP Benefit that was payable to the Executive. However, if the Executive was receiving a Pension Plan benefit under the U.S. Pension Plan or under the Canadian Pension Plan, Part II, and elects the lump sum option (and a fifteen (15) year payment is applicable, as referenced in section 8.1) then payment of the SERP Benefit shall continue to the Spouse until the completion of the fifteen (15) year term that began on the Executive's Retirement Date or, if there is no Spouse, the actuarial value of the remaining payments under the annuity shall be paid to the Executive's estate.

8.     PAYMENT OF BENEFITS

8.1    Mode of Payment

(a) Canadian Pension Plan, Part I Benefit

A SERP Benefit that is payable to an Executive who receives a Canadian Pension Plan, Part I benefit for the same period of service shall be paid monthly for the remaining life of the Executive after Retirement and the first payment thereof shall become due at the end of the month during which Retirement occurs. Subsequent payments shall be due the last day of each calendar month during the period the benefit is payable. Payment for the first month in respect of which the benefit is payable, if less than a full month, shall

- 11 -

00352

be prorated. Payment of the benefit in respect of the month the Executive dies shall be made as if the Executive survived until the end of the month.

(b) Canadian Pension Plan, Part II Benefit

A SERP Benefit that is payable to an Executive who receives a Canadian Pension Plan, Part II benefit for the same period of service may be paid monthly for life as described in the preceding paragraph. However, if the Executive elects a lump sum payment of his Canadian Pension Plan, Part II benefit and if the total value of the Executive's Excess Plan Benefit, SERP Benefit, and Special Pension Credit Plan Benefit, if applicable, is equal to or greater than fifty percent (50%) of the "final average earnings" determined for the Executive under the Canadian Pension Plan, Part II, the SERP Benefit will be paid in the form of a fifteen (15) year term certain annuity commencing on the last day of the month during which Retirement occurs. If the Executive elects payment of the Canadian Pension Plan, Part II benefit in a lump sum and the total value of his Excess Plan Benefit, SERP Benefit, and Special Pension Credit Plan Benefit, if applicable, is less than fifty percent (50%) of the "final average earnings" determined for the Executive under the Canadian Pension Plan, Part II, the SERP Benefit will be paid in a lump sum.

(c) U.S. Pension Plan Benefit

A SERP Benefit that is payable to an Executive who receives a U.S. Pension Plan benefit will be paid in a form of payment that is based on how the Executive's U.S. Pension Plan benefit is paid to the Executive. If the Executive is unmarried and his U.S. Pension Plan benefit is paid in the form of a life annuity, the SERP Benefit will normally be paid in the form of a life annuity. If the Executive has a Spouse and the U.S. Pension Plan benefit is paid in the form of a joint and survivor annuity, the SERP Benefit will normally be paid in the form of a sixty percent (60%) joint and survivor annuity, with the Spouse receiving the survivor benefit. If, however, the Executive elects payment of the U.S. Pension Plan benefit in the form of a lump sum and the total value of his Excess Plan Benefit, SERP Benefit, and Special Pension Credit Plan Benefit, if applicable, is less than fifty percent (50%) of the "final average earnings", the SERP Benefit will be paid in a lump sum. ("Final average earnings" for purposes of this sentence and the following sentence means the definition of such term under the U.S. Pension Plan but without regard to the dollar limitation imposed upon "final average earnings" for purposes of determining the amount of a benefit that is payable under the U.S. Pension Plan.) However, if the Executive elects payment of the U.S. Pension Plan benefit in the form of a lump sum and the total value of his Excess Plan Benefit, SERP Benefit, and Special Pension Credit Plan Benefit, if applicable, is equal to or greater than fifty percent (50%) of the "final average earnings" determined under the U.S. Pension Plan (as described above), the SERP Benefit will be paid in the form of a fifteen (15) year term certain annuity with the Spouse as the beneficiary. If there is no Spouse, the Executive may elect another individual to be the beneficiary with respect to the fifteen (15) year certain annuity.

8.2    Company Effecting Payment

- 12 -

00353

The SERP Benefit payable under the Plan shall be paid by the Corporation and/or any subsidiary or affiliate of the Corporation, as may be determined by the Corporation in its sole discretion.

## 8.3    Currency

All benefits payable under the Plan in respect of an Executive shall be payable in the same currency as benefits are payable under the Pension Plan from which the Executive Retired, provided that where the Executive is entitled to receive a pension from more than one pension plan established by Nortel Networks, benefits shall generally be payable in the currency of the country where the Executive earned the service attributable to the benefit, or portion of the benefit, in question.   Currency conversion shall occur in accordance with established administrative guidelines under the Plan.   However, the Committee shall have the sole discretion to alter the provisions of this section as it deems appropriate.

## 9.    ADMINISTRATION

## 9.1    Committee

The Plan shall be administered by the Committee, which shall have full and exclusive power to interpret the Plan, to adopt such rules, regulations and guidelines as it may deem necessary or proper and to make all determinations necessary or desirable for the administration of the Plan.    Any such interpretation, rule, determination or other act of the Committee shall be conclusively binding upon all persons.

The Committee shall have the authority to modify any provision of the Plan in respect of any Executive including the granting of additional service for purposes of calculating Years of Credited Service or Years of Eligible Retirement Service, waiving early retirement reductions, and waiving the bonus recognition limitations of the Plan.

The Committee may delegate to any person or persons any power or authority it deems appropriate.

## 9.2    Limitation of Liability

Neither the Corporation, its subsidiaries or affiliates nor any member of the Committee or the Board of Directors shall be liable for any action or determination made in good faith pursuant to the Plan.   To the full extent permitted by law, the Corporation shall indemnify and save harmless each person made, or threatened to be made, a party to any action or proceeding by reason of the fact that such person is or was a member of the Committee or is or was a member of the Board of Directors and, as such, is or was required to take action pursuant to the terms of the Plan.

00354

### 9.3     Evidence of Entitlement to Benefits

Every person eligible for a benefit under the Plan shall, on request, provide the Committee evidence, including evidence by way of affidavit, declaration or certificate, and including but not limited to proof of age, satisfactory to the Committee, as it may require to determine the entitlement to or the amount of such benefit.

## 10.     EFFECTIVE DATE OF PLAN

The Plan was adopted by the Board of Directors on April 29, 1983 effective January 1, 1983 and was subsequently amended by the Board of Directors on July 23, 1998, and on September 24, 1998 effective January 1, 1999. The Plan was subsequently amended by the Committee on December 16, 1999 effective January 1, 2000, on April 25, 2001 with immediate effect and a restated version of the Plan was adopted by the Committee on October 25, 2001 with immediate effect. The Plan was subsequently amended by the Committee on October 23, 2002 with immediate effect.

Any subsequent amendments to the Plan shall become effective upon their adoption by the Committee.

## 11.     AMENDMENT, TERMINATION

The Committee reserves the right to amend, suspend or terminate the Plan at any time without the consent of any Executive or Spouse, provided that no such action affects amounts in payment under the Plan nor affects the right of an Executive or Spouse to receive any benefit which such person is eligible to receive at the time of such amendment, suspension, or termination.

## 12.     GENERAL PROVISIONS

### 12.1   Assignment

No right of a person and no benefit payable under the Plan shall be capable of or may be assigned, alienated, charged, pledged or given as security and no such benefit shall confer upon any Executive, Spouse, personal

- 14 -

00355

representative or dependent, or other person, any right or interest therein that is capable of being assigned, alienated, charged, pledged or given as security, except as required by law.

## 12.2    No Right to Continuation of Employment

This Plan shall not be construed as giving an Executive any right to continue in the employment of Nortel Networks or affect the right of Nortel Networks to terminate the employment of an Executive without regard to the effect such action might have upon the Executive's rights under the Plan.

## 12.3    No Additional Rights to benefits under Pension Plan

Nothing herein shall entitle an Executive or any other person to any benefit under a Pension Plan or a Restoration Plan to which such Executive or other person is not otherwise entitled pursuant to the provisions of the Pension Plan.

## 12.4    Funding

All benefits payable hereunder shall be payable from the general funds of Nortel Networks and Nortel Networks shall have no liability whatsoever to segregate any assets or establish any special funding arrangements to provide for payment of amounts payable under the Plan.

## 12.5    Tax Treatment

No representations are made regarding the tax treatment under any jurisdiction of amounts paid as a benefit under this Plan. No additional payments will be made to compensate an Executive or an Executive's Spouse for any tax effect or for the lack of availability of any preferred tax-favored treatment of such benefit.

00356

NORTEL NETWORKS
SUPPLEMENTARY EXECUTIVE RETIREMENT PLAN

ADOPTION OF AMENDMENT

WHEREAS Nortel Networks Limited ("Nortel") sponsors and maintains the Nortel Networks Supplementary Executive Retirement Plan (the "Plan");

AND WHEREAS Nortel reserves the right to amend the Plan pursuant to section 6.1 of the Plan;

AND WHEREAS the Board of Directors of Nortel ("Board") approved, in its meeting of June 2, 2006, important changes to the Plan, which were announced June 27, 2006;

AND WHEREAS those changes are reflected and detailed in the attached amendment to the Plan;

AND WHEREAS the amendments were proposed by the Retirement Plan Committee ("RPC"), a Nortel management committee, to which Nortel has delegated the authority to act as administrator of the Plan;

AND WHEREAS the amendments proposed by the RPC have been reviewed and approved by the additional committees and entities required for approval of such an amendment pursuant to the applicable governance mandates for the Plan, with the final approval granted by the Pension Investment Committee;

NOW THEREFORE, the following amendments to the Plan are approved, such amendments to be effective January 1, 2008, and the following individuals are hereby authorized to execute such amendments: any officer of Nortel. Such individuals are also authorized to execute and give effect to a subsequent restatement of the Plan which incorporates these amendments and the amendments adopted to achieve compliance with Section 409A of the U. S. Internal Revenue Code.

1.      Section 2 of the Plan is amended by adding, in the appropriate alphabetical order, the following definitions.

**""Earnings Termination Date"** means:

    (a) in the case of a Grandfathered Executive, the date of termination of employment;

    (b) in the case of a Temporarily Grandfathered Executive who does not become a Grandfathered Executive and who does not return to active employment with the Corporation or an affiliate or subsidiary of the Corporation, the date of termination of employment;

    (c) in the case of a Temporarily Grandfathered Executive who does not become a Grandfathered Executive and who returns to active employment, on a

00357

particular date, with the Corporation or an affiliate or subsidiary of the
Corporation, the particular date;

(d) in any other case, the earlier of the date of termination of employment and
December 31, 2007."

""Grandfathered Executive" means an Executive who, as of December 31, 2007:

(a) has at least 30 Actual Years of Service;

(b) has attained age 55, where the total of the Executive's age and Actual Years
of Service equals at least 70 years; or

(c) has attained age 60;

and includes

(d) an Executive who, on June 27, 2006, was on a special leave of absence before
retirement, as provided under the Corporation's policies with respect to such
leaves of absence; and

(e) a Temporarily Grandfathered Executive who returns to active employment
with the Corporation at a particular date and who, as of December 31, 2007,
meets the requirements of any of paragraphs (a) to (c) of this definition."

""Temporarily Grandfathered Executive" means an Executive who, as of December
31, 2007, is absent from work and is being paid benefits under the Corporation's Long
Term Disability Plan. An Executive ceases to be a Temporarily Grandfathered Executive
on the date, if any, that the Executive returns to active employment with the Corporation
or an affiliate or subsidiary of the Corporation."

2.        Section 2 of the Plan is amended by adding to the definition "Actual Years of
Service" the following paragraph:

""Actual Years of Service" does not include:

(a)        in the case of a Temporarily Grandfathered Executive who does not become a
Grandfathered Executive, any period after the Executive returns to active
employment with the Corporation or an affiliate or subsidiary of the
Corporation;

(b)        in the case of an Executive who is neither a Grandfathered Executive nor an
Executive described in paragraph (a) of this definition, any period after 2007."

3.    .    Section 2 of the Plan is amended by adding to the definition "Capital
Accumulation and Retirement Program" the following sentence:

"After 2007, the Investor Option will no longer be offered."

Supplementary Executive Retirement Plan
Amendment
Page 3 of 4

00358

4.    Section 2 of the Plan is amended by deleting the definition "Final Average Earnings" and by substituting the following:

""Final Average Earnings", in relation to an Executive, means:

(a)    with respect to the calculation of a SERP I and SERP II benefit, the average of the three (3) highest consecutive years of Earnings of the Executive before the Executive's Earnings Termination Date; and

(b)    with respect to the calculation of a SERP III benefit, the average of the three (3) highest consecutive years of Earnings of the Executive during the last ten (10) years of the Executive's employment with Nortel Networks before the Executive's Earnings Termination Date."

5.    Section 2 of the Plan is amended by adding to the definition "Percentage Credit" the following paragraph:

"For greater certainty, no credit shall be attributed:

(a)    in the case of a Temporarily Grandfathered Executive who does not become a Grandfathered Executive, to any year or part year after the Executive returns to active employment with the Corporation or an affiliate or subsidiary of the Corporation;

(b)    in the case of an Executive who is neither a Grandfathered Executive nor an Executive described in paragraph (a) of this definition, to any year after 2007."

6.    Section 2 of the Plan is amended by changing the last sentence of the first paragraph to read as follows and by adding to the definition "Retirement" and "Retired", the following subsection "(f)":

"However, satisfaction of the conditions described in subsections (d), (e), and (f) below shall not qualify an Executive for a SERP I Benefit:"

"(f)  the termination of employment is a "Termination Due to Change in Control" as defined under the Nortel Networks Corporation Change in Control Plan (the "CIC Plan") as approved May 31, 2007, section 4.1(h) and the "Specified Executive" (as defined under the CIC Plan) has attained fifty (50) years of age on or before the "Termination Date" (as defined under the CIC Plan)."

7.    Section 3 of the Plan is amended by deleting the first sentence of the second paragraph and by substituting the following sentence:

"To qualify as an Executive, such an employee must also have been a participant in the Traditional Option before 2008."

Supplementary Executive Retirement Plan
Amendment
Page 4 of 4

00359

8.    Section 6.2 of the Plan is amended by deleting paragraphs (a) and (b) and by substituting the following:

"(a)    Executives who transfer either to/from Canada/US will be given the options available in the Capital Accumulation and Retirement Program in the new country that are open to such Executive.  If the Executive elects the Balanced Option or the Investor Option before 2008 upon his or her transfer to the new country, his or her participation in the SERP will be suspended during his or her employment in the new country.

(b)    If the Executive returns to the country of origin and if the Executive recommences participation in the Traditional option in accordance with policy established in the country of origin, the Executive will accrue SERP benefits with respect to the service after the return to the country of origin.  If the Executive elects the Balanced or the Investor option before 2008 upon return to the country of origin in accordance with the policy established in the country of origin, the Executive would forfeit all SERP Benefits, even for service earned during the period preceding the initial transfer."

*    *    *    *    *

I hereby execute the foregoing amendment to the Plan, effective January 1, 2008, for and on behalf of Nortel Networks Limited and in accordance with the approvals granted pursuant to the governance mandates that are applicable to the Plan.

_____
Signature
    Gordon A. Davies
    General Counsel - Corporate
    and Corporate Secretary
Title

_____
Date
December 19, 2007.

_____
Signature
    Tracy S.J. Connelly McGilley
    Assistant Secretary

_____
Title

_____
Date
December 20, 2007

CODE SECTION 409A AMENDMENT

00360

TO THE

NORTEL NETWORKS SUPPLEMENTARY EXECUTIVE RETIREMENT PLAN

WHEREAS, Nortel Networks Limited (the "Company") sponsors the Nortel Networks Supplementary Executive Retirement Plan (the "Plan") and has reserved the right to amend the Plan at any time; and

WHEREAS, the Plan provides for the deferral of compensation within the meaning of Section 409A of the Internal Revenue Code of 1986, as amended ("Code"); and

WHEREAS, the Company desires to amend the Plan to comply with Code Section 409A and the regulations promulgated thereunder; and

WHEREAS, the Retirement Plan Committee proposed this amendment and the other committees responsible for review and approval of such an amendment have granted such approvals in accordance with the governance mandates applicable to the Plan;

NOW, THEREFORE, the Plan is hereby amended, solely with respect to the portion of any Plan benefit which accrues, ceases to be subject to a substantial risk of forfeiture, or both, after 2004, provided such benefits are benefits not excluded under the "foreign plan" exception of Code Section 409A, as follows; and

FURTHER, and officer of the Company is hereby authorized to execute the amendment and perform such other acts as may be necessary to put the amendment into effect and to approve any minor, non-material corrections to this amendment; and

FURTHER, the Retirement Plan Committee is authorized to review and adopt a restatement of the Plan which incorporates these amendments:

1.

Effective January 1, 2005, and ending December 31, 2007, the existing provisions of the Plan shall be administered in accordance with a good faith, reasonable interpretation of Code Section 409A, including Treasury Department and legislative guidance upon which good faith reliance is permitted for such period. Effective December 31, 2007, the provisions of this Amendment shall apply with respect to the provisions of the Plan affecting the time and method of payment of Non-Grandfathered Benefits. Effective January 1, 2008, the following provisions of this Amendment shall apply in their entirety with respect to Non-Grandfathered Benefits.

2.

Section 2 of the Plan is amended by adding the following definitions for purposes of applying the provisions of this Amendment:

"Grandfathered Benefit" shall mean the portion of the Total Retirement Benefit representing the value of the vested accrued benefit under the Plan as of December 31, 2004.

"Non-Grandfathered Benefit" shall mean the portion of the Total Retirement Benefit representing the benefit of an Executive under the Plan which is either accrued or ceases to be

B ALB 760241 v5
2789126-000007 10/6/2007

00361

subject to a substantial risk of forfeiture after 2004, i.e., any Plan benefit other than a Grandfathered Benefit. Only those benefits which are not exempt under the foreign plan rules of Code Section 409A shall be deemed Non-Grandfathered Benefits.

"Specified Executive" means a key employee (as defined in Section 416(i) of the Code without regard to paragraph 5 thereof) of the Company.

"Termination of Employment" means the termination of the Executive's employment with the Company for reasons other than death. Whether a Termination of Employment takes place is determined based on the facts and circumstances surrounding the termination of the Executive's employment and whether the Company and the Executive intended for the Executive to provide significant services for the Company following such termination. A change in the Executive's employment status will not be considered a Termination of Employment if:

   a.   the Executive continues to provide services as an employee of the Company at an annual rate that is twenty percent (20%) or more of the services rendered, on average, during the immediately preceding three full calendar years of employment (or, if employed less than three years, such lesser period) and the annual remuneration for such services is twenty percent (20%) or more of the average annual remuneration earned during the final three full calendar years of employment (or, if less, such lesser period), or

   b.   the Executive continues to provide services to the Company in a capacity other than as an employee of the Company at an annual rate that is fifty percent (50%) or more of the services rendered, on average, during the immediately preceding three full calendar years of employment (or if employed less than three years, such lesser period) and the annual remuneration for such services is fifty percent (50%) or more of the average annual remuneration earned during the final three full calendar years of employment (or if less, such lesser period).

For purposes of this Amendment the definition of "Termination of Employment" shall apply to all uses of such term, whether capitalized or not.

3.

Section 8.1(b) of the Plan is amended to add the following language to the end therof:

"Notwithstanding the foregoing, any Non-Grandfathered Benefit payable hereunder shall be paid in the form of a payment monthly for a period of fifteen (15) years with the Spouse as the beneficiary (or in a lump sum payment if the value of the benefit is $50,000 or less) following the Executive's Retirement. If there is no Spouse, the Executive may elect another individual to be the beneficiary with respect to the remaining portion of the payment monthly for fifteen (15) years."

4.

Section 8.1(c) of the Plan is amended to add the following language to the end therof:

-2-

B ALB 760241 v5
2789126-000007 10/6/2007

00362

"Notwithstanding the foregoing, any Non-Grandfathered Benefit payable hereunder shall be paid in the form of a payment monthly for a period of fifteen (15) years with the Spouse as the beneficiary (or in a lump sum payment if the value of the benefit is $50,000 or less) following the Executive's Retirement.  If there is no Spouse, the Executive may elect another individual to be the beneficiary with respect to the remaining portion of the payment monthly for fifteen (15) years."

5.

Section 8 of the Plan is amended by adding, as a new section 8.4, the following:

"8.4   Restriction on Timing of Distributions.

Notwithstanding any provision of this Plan to the contrary, if the Executive is considered a Specified Employee at Retirement under such procedures as established by the Company in accordance with Section 409A of the Code, distributions of Non-Grandfathered Benefits that are made upon Retirement may not commence earlier than six (6) months after the date of such Termination of Employment.  Therefore, in the event this Section 8.4 is applicable to the Executive, any distribution of Non-Grandfathered Benefits which would otherwise be paid to the Executive within the first six months following the Termination of Employment shall be accumulated and paid to the Executive in a lump sum on the first day of the seventh month following the Termination of Employment.  All subsequent distributions shall be paid in the manner specified."

6.

Plan Section 11 "Amendment, Termination" is hereby amended to add the following to the end thereof:

"Effective January 1, 2008, the Plan will only permit an acceleration of the time and form of payment of Non-Grandfathered Benefits where the right to the payment arises in accordance with the following:

(a)      Within thirty (30) days before or twelve (12) months after a Change in Control, as such is defined under Code Section 409A and the regulations promulgated thereunder, provided that all distributions are made no later than twelve (12) months following such termination of the Plan and further provided that all the Company's arrangements which are substantially similar to the Plan are terminated so the Executive and all participants in the similar arrangements are required to receive all amounts of compensation deferred under the terminated arrangements within twelve (12) months of the termination of the arrangements;

(b)      Upon the Company's dissolution or with the approval of a bankruptcy court provided that the amounts deferred under the Plan are included in the Executive's gross income in the latest of (i) the calendar year in which the Plan terminates; (ii) the calendar year in which the amount is no longer subject to a substantial risk of

B.ALB 760241 v5
2789126-000007 10/6/2007