00363

forfeiture; or (iii) the first calendar year in which the distribution is administratively practical; or

(c)    Upon the Company's termination of this and all other arrangements that would be aggregated with this Plan pursuant to Treasury Regulations Section 1.409A-1(c) if the Executive participated in such arrangements ("Similar Arrangements"), provided that (i) the termination and liquidation does not occur proximate to a downturn in the financial health of the Company, (ii) all termination distributions are made no earlier than twelve (12) months and no later than twenty-four (24) months following such termination, and (iii) the Company does not adopt any new arrangement that would be a Similar Arrangement for a minimum of three (3) years following the date the Company takes all necessary action to irrevocably terminate and liquidate the Agreement;

In the event of an occurrence described in (a), (b), or (c) above, the Company may distribute a Non-Grandfathered Benefit to the Executive in a lump sum subject to the above terms."

7.

The provisions of this Plan which apply to Non-Grandfathered Benefits are intended to be applied in a manner consistent with the requirements of Code Section 409A, and will be construed accordingly.  However, the Company shall bear no responsibility for any determination by any other person or persons that the arrangement or the administration thereof is subject to the tax provisions of Code Section 409A.

IN WITNESS WHEREOF, the undersigned duly authorized officer or delegate of the Company has caused this Amendment to be adopted by affixing his or her Signature hereto.

DATED the _____ day of_____, 2007.

NORTEL NETWORKS LIMITED

By:_____

Title:_____
Gordon A. Davies
General Counsel Corporate
and Corporate Secretary

Date: December 19, 2007

By: J Connelly McGilley

Title:_____
Tracy S.J. Connelly McGilley
Assistant Secretary

Date: December 20, 2007

-4-

# APPENDIX "I"

00364

NORTEL International Pension Plan

(Effective January 1, 1996)

00365

Table of Contents
_____

<u>Section</u>                                                          <u>Page</u>

1.     Establishment of the Plan                              1

2.     Definitions                                                   2

3.     Retirement Benefits                                        7

4.     Termination Benefits                                       9

5.     Death Benefits                                              10

6.     Funding                                                      11

7.     General Provisions                                      12

8.     Amendment or Discontinuance of Plan           14

00366

## 1.    Establishment of the Plan

### 1.01    Purpose

Northern Telecom Limited (the "Company") is hereby establishing the NORTEL International Pension Plan (the "Plan") with effect from January 1, 1996 to provide retirement benefits for eligible employees. Employees who are eligible for participation in the Plan are those who have transferred permanently from employment with the Company or a subsidiary of the Company in one country to employment with a subsidiary of the Company or the Company in another country, where the new employer does not sponsor a pension plan or where social security benefits will not be payable.

### 1.02    Application

The Plan shall apply in determining pension benefits payable in respect of eligible employees who retire, die or terminate employment on or after January 1, 1996.

## 2.    Definitions

In this Plan, the following words and phrases shall have the following meanings respectively.

**2.01    Beneficiary** means the person or persons designated as such by an Eligible Employee, in accordance with the requirements of the Company.

**2.02    Best Average Earnings** means, in respect of an Eligible Employee, the Eligible Employee's average monthly rate of Earnings for the best 36 consecutive months out of the 60 consecutive months immediately preceding the Eligible Employee's retirement, termination of employment or death.  At the discretion of the Company, where an Eligible Employee demonstrates that his or her Earnings have decreased during the Eligible Employee's period of Continuous Service, Best Average Earnings may be determined based on a longer period than the 60 months preceding the Eligible Employee's retirement, termination of employment or death.

**2.03    Company** means Northern Telecom Limited and its successors and assigns.  Where any reference in the Plan is made to any action to be taken, consent, approval or opinion to be given, direction or decision to be exercised or made by the Company, it shall be read as Northern Telecom Limited acting through its Board of Directors or any persons authorized by the Company for purposes of the Plan.

**2.04    Commuted Value** means, in relation to benefits that a person has a present or future entitlement to receive, a lump sum amount which is the actuarial present value of those benefits computed using interest rates and other assumptions adopted by the Company for purposes of the Plan.

**2.05    Continuous Service** means an Eligible Employee's uninterrupted    period of employment with one or more Employers, as determined in         accordance with the rules of the Company.  An Eligible Employee's         Continuous Service shall not be considered interrupted for purposes of    the Plan by temporary leaves of absence permitted by the Employer.   An Eligible Employee's Continuous Service shall be considered   terminated upon transfer to a company which is not an Employer for        purposes of the Plan.

2

00368

2.06    **Earnings** means the base earnings of an Eligible Employee, excluding any merit or performance bonuses received by an Eligible Employee from an Employer and, in the case of an Eligible Employee who is compensated on a sales incentive plan, the Eligible Employee's target compensation for the applicable year.  Earnings do not include any foreign service premiums, any other allowances or taxable benefits.

For purposes of the Plan all references to Earnings shall be considered to be in US dollars.  Where an Eligible Employee is compensated in a currency other than US dollars, the Company shall convert the Eligible Employee's Earnings to a US dollar equivalent, based on the average of the applicable foreign exchange conversion rates as of the last day of each of the 12 months preceding the Eligible Employee's date of retirement, termination of employment or death.

2.07    **Effective Date** means January 1, 1996.

2.08    **Eligible Employee** means an employee of an Employer who:

(1)    has been transferred on a permanent or indefinite basis, either before, on or after the Effective Date, from employment with an Employer in one country to employment in another country with the same or another Employer; and

(2)    during the period of employment with the Employer in the other country:

(a)    does not accrue benefits under a Local Retirement Plan, either because there is no Local Retirement Plan or the Employee is not eligible for participation in the Local Retirement Plan, but will be entitled to receive a Social Security Benefit;

(b)    accrues benefits under a Local Retirement Plan, but will not be entitled to receive a Social Security Benefit; or

(c)    does not accrue benefits under a Local Retirement Plan and will not be entitled to receive a Social Security Benefit; and

(3)    has been designated in writing by the Company as a participant in this Plan.

3

00369

2.09   **Employer** means the Company and any subsidiary of the Company as may be designated in writing by the Company from time to time to participate in the Plan.

2.10   **Local Retirement Plan** means any Employer-initiated plan or scheme for the provision of retirement benefits or termination indemnities to employees, other than Social Security Benefits, to which an Employer has made contributions or has funded all or a portion of the benefits or in respect of which an Employer otherwise has an obligation to pay benefits to employees.

2.11   **Normal Retirement Date** means the first day of the calendar month following an Eligible Employee's attainment of age 65.

2.12   **Pensionable Service** means an Eligible Employee's years and completed months of Continuous Service with an Employer, following the date on which the Eligible Employee first becomes an Eligible Employee, and during which the Eligible Employee:

(1)   does not accrue benefits under a Local Retirement Plan and is not in a waiting period for coverage under a Local Retirement Plan, but will be entitled to receive a Social Security Benefit;

(2)   accrues benefits under a Local Retirement Plan, but will not be entitled to receive a Social Security Benefit in respect of employment with the Employer; or

(3)   does not accrue benefits under a Local Retirement Plan and is not in a waiting period for coverage under a Local Retirement Plan and will not be entitled to receive a Social Security Benefit.

In no event will Pensionable Service exceed 35 years, including all periods during which the Eligible Employee accrues benefits under any Local Retirement Plans.

2.13   **Plan** means the NORTEL International Pension Plan as set forth herein and as amended from time to time.

2.14   **Plan Year** means the accounting period of twelve (12) months commencing with January 1st and ending on December 31st in each

4

00370

year, or such other twelve-month period as may be adopted by the Company from time to time.

2.15    Social Security Benefit(s) means the vested benefit payable to an Eligible Employee under:

(1)    any plan or scheme of Government Social Insurance, National Insurance or any other government administered, public or semi-public system of retirement benefits in effect at the time a determination is required under the Plan;

(2)    any plan or scheme, the primary purpose of which is to replace all or part of any programs described in (1) above, and to which an Employer and, if applicable, the Eligible Employee have made contributions, whether or not such contributions are required by law; or

(3)    a mandatory retirement or termination program to which an Employer and, if applicable, the Eligible Employee are required by law to make contributions, but only that portion of the benefit funded from such mandatory Employer and Employee contributions.

An Eligible Employee's Social Security Benefit shall be estimated by the Company based on the amount which the Eligible Employee would have been entitled to receive under the applicable program, based on the benefit rates in effect, and assuming that the Eligible Employee had attained age 65, on the date of termination of Continuous Service.

If the Company determines that the Eligible Employee is required by law to repay all or a portion of the Social Security Benefit, the Company may assume that either a reduced amount or no Social Security Benefit at all will be payable for purposes of this Plan.

2.16    Spouse of a person means an individual who, at the relevant date is:

(1)    legally married to that person and not living separate and apart from that person; or

(2)    not married to that person, but is an individual with whom that person is living together in a conjugal relationship and is publicly represented as the latter's spouse to the satisfaction of

5

00371

the Company by that person prior to that person's death, and who

> (a)    if not prohibited from marrying that person by reason of the marriage of that person or such individual to another person, has resided with that person for a period of not less than one year immediately prior to the relevant date; or

> (b)    if prohibited from marrying that person by reason of the marriage of that person or such individual to another person, has resided with that person for a period of not less than three years immediately prior to the relevant date;

> provided that only one individual will be recognized as the Spouse for purposes of this Plan; and provided further that where there is an individual who is married to that person there shall be a    presumption that such individual is not living separate and apart from    that person for purposes of this Plan.

Words in the masculine include the feminine, and the singular includes the plural, unless the context specifically provides otherwise.

00372

3.    Retirement Benefits

### 3.01    Normal Retirement Pension

(1)    An Eligible Employee whose Continuous Service is terminated on or after his or her Normal Retirement Date shall receive a monthly pension, commencing on his or her Normal Retirement Date and payable for life, equal to 1.67% of the Eligible Employee's Best Average Earnings multiplied by the Eligible Employee's years of Pensionable Service, reduced by the amount described in Section 3.01(2).

(2)    The monthly pension under Section 3.01(1) shall be reduced by:

(a)    benefits payable to the Eligible Employee under Local Retirement Plans, if any; and

(b)    the Eligible Employee's Social Security Benefits, if any;

earned in respect of the Eligible Employee's Pensionable Service.

Where an Eligible Employee's benefits from a Local Retirement Plan or Social Security Benefits are not paid in the form of a life annuity, the benefits shall be converted into an annuity for purposes of the offset described in this Section 3.01(2).  This annuity shall be determined based on the same form of payment as that applicable to the Eligible Employee's pension under the Plan and on the same interest rates and other assumptions as those adopted by the Company for purposes of determining the Commuted Value of pensions under the Plan.

(3)    If the total of the amounts in paragraphs (a) and (b) of Section 3.01(2) above exceed the amount determined in accordance with Section 3.01(1), no pension or any other benefit shall be payable under this Plan.

(4)    Where an Eligible Employee was transferred to an Employer prior to the Effective Date, the Company may, at its discretion, grant that Eligible Employee additional amounts of pension to that determined in accordance with Sections 3.01(1) and (2).

7

00373

### 3.02    Early Retirement Pension

(1)    An Eligible Employee whose Continuous Service is terminated following the attainment of age 60, otherwise than by death, but prior to his or her Normal Retirement Date shall be entitled to receive a monthly pension, commencing on the first day of the month following termination of Continuous Service, payable for life and determined in accordance with Section 3.01.

(2)    An Eligible Employee whose Continuous Service is terminated following the attainment of age 55, but prior to the attainment of age 60, shall be entitled to receive a monthly pension, commencing on the first day of the month following termination of Continuous Service, payable for life and determined in accordance with Section 3.01 above, but reduced by 1/3 of 1% for each month by which the Eligible Employee's pension commencement date precedes the Eligible Employee's attainment of age 60.

### 3.03    Lump Sum Settlement

In lieu of the pension otherwise payable under Sections 3.01 or 3.02, an Eligible Employee whose Continuous Service is terminated may, to the extent not prohibited by law, elect, prior to pension commencement, to receive a lump sum payment equal to the Commuted Value of the pension.  The receipt of the lump sum payment shall constitute a full settlement of all entitlements in respect of the Eligible Employee under the Plan.

00374

## 4.    Termination Benefits

### 4.01    Termination Benefit

An Eligible Employee whose Continuous Service is terminated before attainment of age 55 shall be entitled to receive a deferred pension commencing on his or her Normal Retirement Date, calculated in accordance with Section 3.01, based on the Eligible Employee's Best Average Earnings and Pensionable Service as at the Eligible Employee's termination date.

In lieu of the deferred pension, such Eligible Employee may, to the extent not prohibited by law, elect to receive a lump sum payment equal to the Commuted Value of the deferred pension. Such an election will not be valid unless it is made in the form required by the Company and is received by the Company within 90 days of the Eligible Employee's termination of employment, or such other time period permitted by the Company.

### 4.02    Early Commencement of Deferred Pension

An Eligible Employee who is entitled to receive a deferred pension under Section 4.01 may, to the extent not prohibited by law, elect to have the pension commence on the first day of any calendar month following attainment of age 55 and prior to his or her Normal Retirement Date. The amount of this pension shall be calculated in accordance with Section 3.01, but reduced by 1/2 of 1% for each calendar month by which the commencement date of the Eligible Employee's pension precedes his or her Normal Retirement Date.

9

00375

## 5.   Death Benefits

### 5.01   Death Benefit After Commencement of Pension

If an Eligible Employee has a Spouse at his or her retirement date, the Eligible Employee's pension calculated in accordance with Section 3.01 shall be payable in equal monthly installments for life.  Upon the Eligible Employee's death, if his or her Spouse is surviving, the Spouse shall be entitled to receive a death benefit.  This death benefit shall be paid in the form of a monthly pension, commencing on the first day of the month following the Eligible Employee's death, payable for the Spouse's lifetime and in an amount equal to 60% of the amount of the Eligible Employee's pension.

If an Eligible Employee does not have a Spouse at his or her retirement date, the Eligible Employee's pension shall be payable in equal monthly installments for life.  If such Eligible Employee dies before receiving at least 60 monthly pension payments, the Eligible Employee's  Beneficiary shall receive, as a death benefit, the remainder of the 60      monthly payments.

In lieu of either of the death benefits described above, the Eligible Employee's Spouse or Beneficiary, as applicable, may elect to receive a lump sum payment equal to the Commuted Value of the death benefit. Such an election will not be valid unless it is made in the form required by the Company and is received by the Company within 90 days of the Eligible Employee's death, or such other time period permitted by the Company.

### 5.02   Death Benefit Prior to Commencement of Pension

If an Eligible Employee dies prior to pension commencement, the Eligible Employee's Spouse or, if there is no Spouse, the Eligible Employee's Beneficiary shall be entitled to receive a lump sum payment equal to the Commuted Value of the Eligible Employee's pension determined as follows:

(a)    in accordance with Section 3.03, if the Eligible Employee had attained age 55 prior to the date of death; or

(b)    in accordance with Section 4.01, if the Eligible Employee had not attained age 55 at the date of death.

00376

6.    Funding

6.01   Payment of Pension Benefits

(1)    All benefits payable to Eligible Employees under the Plan shall be paid out of the general corporate revenues of the Company.

(2)    The Company may, at its sole discretion, establish a trust fund for the purpose of pre-funding benefits accrued under the Plan. The payment of any benefit out of such a trust fund shall reduce, pro tanto, the amount which any Eligible Employee is entitled to receive from the Company under the terms of the Plan.

6.02   Employer Contributions

If a trust fund is established under Section 6.01(2), the Employers may be required to make such contributions to the trust fund as the Company determines are necessary, after taking into account the assets in the trust fund, to meet the cost of benefits arising in respect of each Plan Year and to make provision for the amortization of any unfunded liabilities with respect to benefits previously accrued to Eligible Employees under the Plan.

6.03   Eligible Employee Contributions

Eligible Employees are neither permitted nor required to make contributions to the Plan.

00377

7.    General Provisions

### 7.01    Administration

The Plan shall be administered by the Company. The Company may, however, delegate certain duties with respect to the administration of the Plan to other Employers or to third party service providers.

### 7.02    Currency

All benefits under the Plan shall be determined and be payable in US dollars. All Earnings and benefits payable under the Plan shall be expressed in US dollars.

### 7.03    Non-Assignability of Benefits

No benefit, right or interest of any person under the Plan shall be capable of anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, seizure, attachment or other legal or equitable process. A pension payable under the Plan shall not be capable of surrender or commutation, except as provided under the Plan. Any commutation of benefits, in accordance with the Plan, shall be in full satisfaction of all obligations in respect of the Eligible Employee under the Plan.

### 7.04    Re-Employment

An Eligible Employee whose Continuous Service is interrupted and who later becomes re-employed by an Employer will thereafter for all purposes of the Plan be treated as a newly employed person who has not had previous service with an Employer. However, if such an Eligible Employee did not receive a lump sum settlement of his or her benefits under the Plan at termination of employment, the Company may, at its discretion, include the prior period of employment by any Employer in the Eligible Employee's Pensionable Service.

### 7.05    Payment to Minors or Incompetents

If any payment is to be made under the Plan to a minor or other person who is physically, mentally or legally incompetent, the Company may pay the same to the parent or guardian or other person having custody of, or being the legally appointed representative of, such person to be

00378

applied by such parent, guardian, person having custody or legally appointed representative for the benefit of such person, without the Company or any Employer being further liable to see to the application thereof and so that any such payment shall be a complete discharge of any liability of the Plan, the Company or any other Employer therefor.

7.06    <u>Governing Law</u>

This Plan shall be governed in accordance with the laws of Canada.

13

00379

## 8.    Amendment or Discontinuance of Plan

### 8.01    Continuation of the Plan

The Company intends to maintain the Plan indefinitely, but reserves the right to amend or discontinue the Plan either in whole or in part.

### 8.02    Amendment to the Plan

No amendment shall operate to reduce the benefits which have accrued to any Eligible Employee or to any individual entitled to benefits under the Plan to the date of such amendment.

### 8.03    Termination of the Plan

If the Plan is discontinued or wound-up, each Eligible Employee shall, for the purposes of the Plan, be deemed to have terminated   employment with the Company on the date of discontinuance or    wind-up.  If after provisions for all accrued benefits and liabilities         under the Plan, it should be found that assets remain in any trust fund    established for purposes of the Plan, such assets shall revert to the         Company, or be used as the Company directs.

Approved this _____ day of February 1996.

_____
A. J. Lafleur
Vice President and Associate
General Counsel

_____
D. S. McCreesh
Senior Vice President,
Human Resources

14

# APPENDIX "J"

00380

# NORTEL NETWORKS LIMITED
# TRANSITIONAL RETIREMENT ALLOWANCE PLAN

## ADOPTION OF AMENDMENT AND RESTATEMENT

**WHEREAS** Nortel Networks Limited ("Nortel") sponsors and maintains the Nortel Networks Limited Transitional Retirement Allowance Plan (the "Plan");

**AND WHEREAS** Nortel reserves the right to amend the Plan pursuant to section 5 of the Plan;

**AND WHEREAS** the Board of Directors of Nortel ("Board") approved, in its meeting of June 2, 2006, important changes to the Plan, which were announced June 27, 2006;

**AND WHEREAS** those changes are reflected and detailed in the attached amendment and restatement to the Plan;

**AND WHEREAS** the amendments and restatement were proposed by the Retirement Plan Committee ("RPC"), a Nortel management committee, to which Nortel has delegated the authority to act as administrator of the Plan;

**AND WHEREAS** the amendments proposed by the RPC have been reviewed and approved by the additional committees and entities required for approval of such an amendment pursuant to the applicable governance mandates for the Plan, with the final approval granted by the: Pension Investment Committee;

**NOW THEREFORE**, the following amendments and restatement to the Plan are approved, such amendments to be effective January 1, 2008, and the following individuals are hereby authorized to execute such amendments and restatement and to perform such other acts as may be necessary to put into effect the amendments as of January 1, 2008 (including, but not limited to making any minor and non-material corrections to such amendment and restatement): William J. Lasalle, General Counsel – Operations and Gordon A. Davies, General Counsel – Corporate and Corporate Secretary.

00381

# NORTEL NETWORKS LIMITED

# TRANSITIONAL RETIREMENT ALLOWANCE PLAN

Plan Originally Effective January 1, 1988

This Document Effective as at January 1, 2008

00382

# TABLE OF CONTENTS

SECTION 1 DEFINITIONS.................................................................................. 4

SECTION 2 APPLICATION OF PLAN............................................................... 15

SECTION 3 FUNDING......................................................................................... 17

SECTION 4 ADMINISTRATION........................................................................ 18

SECTION 5 AMENDMENT AND TERMINATION ....................................... 20

SECTION 6 TRA BENEFIT................................................................................ 21

SECTION 7 FORM OF TRA BENEFIT............................................................. 27

SECTION 8 DEATH BENEFIT........................................................................... 30

SECTION 9 SPECIAL TRA BENEFITS FOR DIVESTED MEMBERS..................... 31

APPENDIX A RTB RATE.................................................................................... 32

APPENDIX B RTB FACTOR ............................................................................. 33

APPENDIX C ERS FACTOR .............................................................................. 35

APPENDIX D SAMPLE TRA BENEFIT CALCULATIONS ....................................... 36

APPENDIX E DIVESTITURES ........................................................................... 41

00383

SECTION 1

DEFINITIONS

1.1    Definitions

In this Plan, the following words and phrases shall have the following meanings respectively, unless a different meaning is required by the context:

"**Actuary**" means a Fellow of the Canadian Institute of Actuaries appointed by the Company to render actuarial services in respect of the Plan.

"**Applicable Legislation**" has the meaning assigned to that expression in the Managerial Plan.

"**Benefit Group**" means the Member's benefit group as determined by the Company based on the Member's employment range level with the Company.

"**Best Average Earnings**" has the meaning assigned to that expression in the Managerial Plan.

"**BNR**" means Bell-Northern Research Ltd.

"**Class A**" means the early retirement unreduced pension available to a Member, at the Member's sole request or upon Company initiative with Member consent, under Part I where the Member has attained age 60, but not age 65, is not on lay-off, and whose years of Eligibility Service and age equals at least 80.

"**Class B Early**" means the early retirement unreduced pension available to a Member, upon Company initiative with Member consent, under Part I where the

- 4 -

00384

Member has attained age 55, but not age 65, is not on lay-off, and has at least 25 years of Eligibility Service.

"**Class B Voluntary**" means the early retirement unreduced pension available to a Member, at the Member's sole request or upon Company initiative with Member consent, under Part I where the Member has attained age 55, but not age 65, is not on lay-off, and whose years of Eligibility Service and age equals at least 85.

"**Class C**" means the early retirement unreduced pension available to a Member, upon Company initiative with Member consent, under Part I where the Member is not on lay-off and has at least 30 years of Eligibility Service.

"**Class E**" means an actuarially reduced early retirement pension available to a Member under Part I where the Member has attained age 55, is not on lay-off, and is entitled to a deferred pension on termination of employment.

"**Company**" means Nortel Networks Limited, its successors and any other subsidiary or affiliated company which is designated, in whole or in part, by Nortel Networks Limited for the purpose hereof and which elects to participate in the Plan.

"**Continuous Service**" means:

(a)  in the case of a Grandfathered Member, RTB Service;

(b)  in the case of a Temporarily Grandfathered Member who does not become a Grandfathered Member and who does not return to active employment with the Company, RTB Service;

(c)  in the case of a Temporarily Grandfathered Member who does not become a Grandfathered Member and who does return to active employment with the Company at a particular date, RTB Service before the particular date; and

- 5 -

00385

(d)    in any other case, RTB Service before 2008.

"Disqualified Employee", at any time, means an Employee who is a Part I Member, at that time, and who, before that time, elected to become a Part III Member or elected to suspend all participation in the Managerial Plan.

"Early Retirement Date" means the date at which a Member who has not attained age 65 and who is not on lay-off, retires with an early retirement Class A, Class B Early, Class B Voluntary, Class C or Class E pension pursuant to Part I.

"Earnings" means for the purpose of determining the benefit, the Member's base salary received from the Company and, where applicable, overtime (recognized when paid) (except that for BNR Members overtime shall only be included as of and from July 1, 1996), off-shift differential payments, and the individual commission factor for the period over which Earnings are being determined (as determined annually by the Company and used for purposes of employee benefits including, but not limited to, Company pensions and disability benefits and life insurance). A Member who is absent from work and receiving benefits under the Company's Short Term Disability Plan or Long Term Disability Plan shall be deemed to be in receipt of Earnings during such period at the rate of basic salary (not including bonus, overtime, commission or offshift differential payments) received immediately before becoming disabled.

"Earnings Termination Date" means:

(a)    in the case of a Grandfathered Member, the date of termination of employment;

(b)    in the case of a Temporarily Grandfathered Member who does not become a Grandfathered Member and who does not return to active employment with the Company, the date of termination of employment;

- 6 -

00385

(c)    in the case of a Temporarily Grandfathered Member who does not become a Grandfathered Member and who returns to active employment with the Company on a particular date, that particular date; and

(d)    in any other case, the earlier of:

      (i)    the date of the Member's termination of employment; and

      (ii)   December 31, 2007.

"**Eligibility Service**" of a Member means

(a)    the period of the Member's MP Service inside and outside of Canada while a member of the Managerial Plan,

(b)    the period of MP Service with the Company while the Employee was a member of another plan sponsored by the Company,

(c)    where the Company has agreed to credit service for benefit eligibility purposes for the period of MP Service with a subsidiary or an affiliated company while a member of the pension plan of such company in accordance with a Reciprocal Agreement, certain periods of MP Service outside of Canada with a subsidiary or affiliated company, as provided under the Company's written policies on foreign transfers,

(d)    any period of continuous employment with a predecessor company which the Company is obligated to recognize pursuant to Applicable Legislation, and

(e)    for Former Prism Employees employed on December 31, 1990, the period of continuous service recognized under the Prism Plan as of such date, less any period of absence from work or lay-off as determined in accordance with the rules of the Company and Applicable Legislation, and consistent with the *Income Tax Act* (Canada) and Income Tax Regulations.

"**Employee Benefits Committee**" means the committee established by the Company to provide a last and final internal review of all employee claims that have been denied by the Company in relation to certain benefit programs and plans offered by the Company, including this Plan.

00387

"**ERS**" means the "Early Retirement Supplement" which was formerly payable to members who retired under Part I.

"**ERS Factor**" means the factor that corresponds to the Member's age and is used to determine the value of each dollar of monthly ERS payable from early retirement until age 65 and which is specified in Appendix C and which Appendix may be amended from time to time. If retirement is at age 65 or later, the ERS Factor is 0.

"**Foreign Affiliate**" means a foreign affiliate as recognized by the Company.

"**Former Prism Employee**" means a salaried Member formerly employed by Prism.

"**Foreign Service**" of a Member means the period of the Member's continuous employment outside of Canada with a Foreign Affiliate.

"**Global Employee Services**" means the Global Employee Services department of the Company.

"**Grandfathered Member**" means a Member who, as of December 31, 2007, is a Qualified Employee who:

(a)     has at least 30 years of Eligibility Service;

(b)     has attained age 55, where the total of the Member's age and years of Eligibility Service equals at least 70 years; or

(c)     has attained age 60;

and includes

00388

(d)    a Member who, as of December 31, 2007, is a Qualified Employee and who, on June 27, 2006, was on a special Leave of Absence before retirement, as provided under the Company's policies with respect to such Leaves of Absence; and

(e)    a Temporarily Grandfathered Member who returns to active employment with the Company at a particular date and who, as of December 31, 2007, meets the requirements of any of paragraphs (a) to (c) of this definition.

"**Income Tax Act**" means the *Income Tax Act* (Canada) and the Regulations thereunder, as amended or replaced from time to time.

"**Leave of Absence**" means

(a)    a leave of absence granted in conformity with the rules of the Company, and

(b)    a period of absence from working during which benefits are payable under the Company's Short Term Disability Plan or Long Term Disability Plan,

subject to the limitations under the Managerial Plan.

"**Managerial Plan**" means the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan.

"**Member**" means an individual:

(a)    who is employed by and receives a stated compensation from the Company;

(b)    who is not eligible to receive a benefit under the Nortel Networks Retirement Allowance Plan or in any pension plan sponsored for hourly or union Members;

00389

(c)     who has neither elected to become a Part III Member nor elected to suspend all participation in the Managerial Plan;

(d)     who retires under Part I after completing 4 or more years of Continuous Service with the Company; and

(e)     whose membership in the Managerial Plan has not been terminated.

"**MP Service**" has the same meaning as Continuous Service under the Managerial Plan.

"**Normal Retirement Date**" means the first day of the month after a Member's 65th birthday.

"**Part I**" means Part I of the Managerial Plan.

"**Part I Member**" has the meaning assigned to that expression in the Managerial Plan.

"**Part III Member**" has the meaning assigned to that expression in the Managerial Plan.

"**Plan**" means the Nortel Networks Transitional Retirement Allowance Plan as set forth herein and as amended from time to time.

"**Postponed Retirement Date**" means the date on which a Member retires with a postponed retirement pension where such date is later than his Normal Retirement Date.

"**Prism**" means Prism Systems Inc.

00390

"Prism Plan" means the Prism Systems Pension Plan for Salaried Employees in effect on December 31, 1994.

"Qualified Employee", at any time, means an Employee, other than an Disqualified Employee, who is a Part I Member , at that time.

"Reciprocal Agreement" means an agreement whereby a period of continuous employment with one company in the Nortel family of companies is credited under the Plan for the purpose of determining eligibility for, or the computation of, TRA Benefits, and which agreement may provide for the payment or receipt of moneys in respect thereof.

"Registered Retirement Savings Plan" means a registered retirement savings plan as defined under the Income Tax Act.

"Retiring Allowance" means a payment to an individual upon loss of office or employment, or on or after retirement, in recognition of long service, as defined in the Income Tax Act.

"RTB" means the "Retirement Transition Benefit" which was formerly payable to members who retired under Part I.

"RTB Factor" means the factor, dependent on a Member's RTB Service, used to determine the RTB payable from retirement and which is specified in the third column of Appendix B, and which Appendix may be amended from time to time.

"RTB Months" means the number of months, dependent on a Member's RTB Service, that the RTB Rate is paid, which is specified in the second column of Appendix B, and which Appendix may be amended from time to time.

00391

"RTB Rate" means the benefit rate that corresponds to the Member's Benefit Group which is specified in Appendix A and which Appendix may be amended or replaced from time to time.

"RTB Service" of a Member means:

(a)    the period of continuous employment with the Company in Canada, as shown by the Company's records, calculated in accordance with applicable rules of the Company, without regard to periods of temporary suspension of employment, membership or service and without regard to periods of lay-off from employment and including any Leave of Absence;

(b)    a period of continuous employment with Prism pursuant to Section 6.6.1 or with another company in Canada which the Company has agreed to recognize;

(c)    a period of Foreign Service where the Member is transferred to a Foreign Affiliate on a temporary basis or on a permanent basis as part of a Reciprocal Agreement; and

(d)    a period of continuous employment with another company that the Company has agreed to recognize.

Where a measure of RTB Service is required, RTB Service shall be measured only as full years. Part years shall not be counted in a measure of RTB Service unless the Member has completed at least 11 months. For sake of clarity, if a Member has 95 months of RTB Service, he will be deemed to have 8 years of RTB Service for purposes of the Plan. By comparison, if a Member has 93 months of RTB Service, he will be deemed to have 7 years of RTB Service for purposes of the Plan.

- 12 -

00392

"Spouse" of a person means

(a)     an individual who is legally married to that person and not living separate and apart from that person; or

(b)     an individual who is not legally married to that person, but is an individual with whom that person is living together in a conjugal relationship and is publicly represented as the latter's spouse to the satisfaction of the Company, and who

    (i)     if not prohibited from marrying that person by reason of the marriage of that person or such individual to another person, has resided with person for a period of not less than one year immediately prior to the relevant date; or

    (ii)     if prohibited from marrying that person by reason of the marriage of that person or such individual to another person, has resided with that person for a period of not less than three years immediately prior to the relevant date.

"Temporarily Grandfathered Member" means a Member who, as of December 31, 2007, is a Qualified Employee who is absent from work and is being paid benefits under the Company's Long Term Disability Plan. A Member ceases to be a Temporarily Grandfathered Member on the date, if any, that the Member returns to active employment with the Company.

"Terminated" means a cessation of employment with the Company not caused by retirement, death or work force reduction.

00393

"TRA Benefit" means the benefit payable to a Member under this Plan.

00394

## SECTION 2
## APPLICATION OF PLAN

**2.1**    Purpose

The primary purpose of the Plan is to recognize the long service of employees of Nortel Networks, BNR and Prism who retire under Part I after completing at least 4 years of Continuous Service by providing a lump-sum transitional retiring allowance or equivalent monthly payments

**2.2**    Effective Date

The provisions of the Plan apply with effect as of and from January 1, 1988 except as otherwise specifically provided in the Plan.  This text applies to Members who terminate, retire or die on or after January 1, 2004.

**2.3**    Non-Registered Plan

The Plan does not and is not intended to provide pension benefits and, as a consequence, shall not be registered under the terms of any pension standards legislation.

**2.4**    History

The Plan provides benefits that prior to 1988 were payable under the RTB and as ERS under the Managerial Plan.  The RTB was a retiring allowance in recognition of a Member's long service with the Company. It was calculated based on the Member's Continuous Service at retirement, Best Average Earnings and Benefit Group.  The RTB was payable upon cessation of active employment with the Company.  The ERS was equal to a flat benefit for each year of credited service,

- 15 -

00395

payable monthly from the date of early retirement until age 65 under the
Managerial Plan.

00396

## SECTION 3
## FUNDING

3.1    Employer Funding

The Company shall pay benefits under the Plan in a form provided for in Section 7 out of the Company's operating income as such benefits become payable. The Company is not required to pre-fund or secure the benefits in any way.

SECTION 4

00397

ADMINISTRATION

4.1     Role of Company

The Company shall be responsible for the administration of the Plan.  The
Company shall have the exclusive right to decide all matters arising under the
Plan or in connection with its administration, including determinations as to the
periods of Continuous Service, eligibility for, and the amount of any benefit under
the Plan.  Subject to Section 4.6, all decisions by the Company shall be final and
binding on all persons affected hereby.  The Company, in the performance of its
responsibilities may act through such persons, including the Employee Benefits
Committee, other committees, employees and agents, as it deems appropriate.

4.2     Administrative Procedures and Benefit Practices

The Company, from time to time, may adopt rules, including administrative
procedures and benefit practices, for the administration of the Plan which shall be
consistent with the provisions of the Plan.

4.3     Evidence of Entitlement to Benefits

Every person eligible for a benefit under the Plan shall, on request, provide to the
Company evidence, including evidence by way of affidavit, declaration or
certificate, and including but not limited to proof of age, satisfactory to the
Company, as it may require to determine the entitlement to or the amount of such
benefit.

4.4    Expenses

00393

All costs related to the administration of the Plan shall be borne by the Company.

4.5    Liability

The Company, its directors, officers, employees and agents, shall not be liable for any action taken, suffered or omitted by them in good faith in carrying into effect the provisions of the Plan.  Without limiting the generality of the foregoing, the Company shall be entitled to rely on information and documentation supplied or elections made by, a Member or Former member, from time to time, for purposes of the Plan; and the Company, its directors, officers, employees and agents, shall not be liable for any error or omission or loss of any kind or adverse income tax or other consequences arising therefrom, or from any failure or delay in connection therewith including the failure to secure and provide the consent or agreement thereto of another part as necessary or appropriate.

4.6    Appeal Process

4.6.1    Subject to Section 4.6.2, where a Member's periods of Continuous Service, eligibility for TRA Benefits, the amount of the TRA Benefit payable or any other right or entitlement under the Plan is in dispute, the Member may, in writing, seek a review of the issue in dispute from Global Employee Services.

4.6.2    Where a dispute identified in Section 4.6.1 remains in dispute after review by Global Employee Services, the Member may, in writing, seek a final review of the issue in dispute from the Employee Benefits Committee. The decision of the Employee Benefits Committee shall be final and binding on both the Company and the Member.

- 19 -

00399

## SECTION 5
## AMENDMENT AND TERMINATION

5.1     Continuation

While the Company intends to continue the Plan, it reserves the right, at any time, to amend or terminate the Plan in whole or in part, without the consent of any Member or any other person.

5.2     Amendment

The Company reserves the right to amend or terminate the Plan in any way and at any time.

00400

# SECTION 6
## TRA BENEFIT

**6.1**   TRA Benefit at Normal Retirement Date

A Member who retires under Part I on his Normal Retirement Date and elects to receive an immediate pension shall be entitled to a lump sum TRA Benefit equal to the sum of (A), (B) and (C), where (A), (B) and (C) are as follows:

(A)   $11 multiplied by the Member's Continuous Service (measured in completed years) multiplied by the Member's ERS Factor.

(B)   the Member's RTB Rate multiplied by the Member's Continuous Service (measured in completed years) multiplied by the Member's RTB Months.

(C)   3% of the Member's Best Average Earnings in excess of $32,000 multiplied by the Member's Continuous Service (measured in completed years), in excess of 10.

Items (A) and (B) are referred to as the flat benefit portion of the TRA Benefit and item (C) is known as the Best Average Earnings portion of the TRA Benefit.

Appendix D (Samples 1 and 2) contains examples of how the TRA Benefit is calculated for a Member who retires on his Normal Retirement Date.

**6.2**   TRA Benefit at Early Retirement

6.2.1   A Member who retires on his Early Retirement Date and immediately commences receiving a Class A, Class B Early, Class B Voluntary or Class C pension under Part I, as applicable, shall be entitled to a lump sum

- 21 -

00401

TRA Benefit equal to the sum of (A), (B) and (C), where (A), (B) and (C) are as follows:

(A)     $11 multiplied by the Member's Continuous Service (measured in completed years) multiplied by the Member's ERS Factor.

(B)     the Member's RTB Rate multiplied by the Member's Continuous Service (measured in completed years) multiplied by the Member's RTB Factor.

(C)     3% of the Member's Best Average Earnings in excess of $32,000 multiplied by the Member's Continuous Service (measured in completed years), in excess of 10.

Items (A) and (B) are referred to as the flat benefit portion of the TRA Benefit and item (C) is known as the Best Average Earnings portion of the TRA Benefit.

Appendix D (Samples 3 and 4) contains examples of how the TRA Benefit is calculated for a Member who retires on his Early Retirement Date with a Class A, Class B Early, Class B Voluntary or Class C pension.

6.2.2    A Member who retires on his Early Retirement Date and immediately commences receiving a Class E pension under Part I, shall be entitled a lump sum TRA Benefit that is the Actuarial Equivalent of the lump sum TRA Benefit that would be payable at the earliest age the Member would become entitled to a Class A or Class B Voluntary pension under Part I based on the Member's Continuous Service on his or her Early Retirement Date and determined in accordance with Section 6.2.1.

Appendix D (Samples 5 and 6) contains examples of how the TRA Benefit

- 22 -

00402

is calculated for a Member who retires on his Early Retirement Date with a Class E pension.

### 6.3    TRA Benefit at Postponed Retirement  Date

A Member who retires on his Postponed Retirement Date will receive a lump sum TRA Benefit calculated, as provided under Section 6.1, as if he is age 65 on his Postponed Retirement Date.

### 6.4    TRA Benefit on Termination

No TRA Benefit is payable to a Member whose employment with the Company is Terminated except as provided under Section 6.5.

### 6.5    Work Force Reduction

#### 6.5.1    Members Eligible for an Immediate Class A, Class B Early, Class B Voluntary or Class C Early Retirement Pension

If a Member's employment with the Company is terminated due to a workforce reduction program by the Company and that Member is eligible for an immediate Class A, Class B Early, Class B Voluntary or Class C pension under Part I, at the Company's discretion the Member,

(a)    may be entitled  to receive 100% of the lump sum TRA Benefit calculated under Section 6.2.1 at the date of retirement if the Member elects to receive an immediate Class A, Class B Early, Class  B Voluntary or Class C early retirement pension; or

(b)    may not be entitled to receive a TRA Benefit if the Member elects to receive either the deferred or the commuted value of the

- 23 -

00403

deferred, Class A, Class B Early, Class B Voluntary or Class C early retirement pension under Part I.

6.5.2    Members Eligible for an Immediate Class E Early Retirement Pension

If a Member's employment with the Company is terminated due to a workforce reduction program by the Company and that Member is eligible for an immediate Class E early retirement pension under Part I, at the Company's discretion the Member,

(a)    may be entitled to receive 100% of the lump sum TRA Benefit calculated under Section 6.2.2 if the Member elects to receive an immediate Class E early retirement pension; or

(b)    may not be entitled to receive a TRA Benefit if the Member elects to receive either the deferred or the commuted value of the deferred Class E early retirement pension under Part I.

6.5.3    Terminated Members Not Eligible for an Immediate Retirement

If a Member's employment with the Company is Terminated due to a workforce reduction program by the Company and the Member is entitled to workforce reduction provisions, but that Member is not eligible to receive an immediate pension under Part I, at the Company's discretion the Member,

(a)    may be entitled to receive 50% of the Class E lump sum TRA Benefit determined in accordance with Section 6.2.2, payable as determined at his termination date and calculated as if he was eligible for a Class E TRA Benefit based on his actual Continuous Service at the date of termination if the Member has 20 or more

- 24 -

00404

years of RTB Service.

(b)    may not be entitled to receive a TRA Benefit if the Member has less than 20 years of RTB Service.

6.6    Former Prism Employees

6.6.1    The RTB Service of a Former Prism Employee whose employment is continued with the Company and who is a member under Part I, shall, for the purposes of determining the Member's Continuous Service and TRA Benefit, be equal to the aggregate of the Member's RTB Service with the Company and Prism.

6.6.2    The TRA Benefit calculated for a Former Prism Employee pursuant to Section 6.6.1 shall be prorated by the completed years of the Member's Continuous Service on and after January 1, 1990 over the completed years of the Member's total Continuous Service as determined under Section 6.6.1.

6.7    Foreign Service

6.7.1    Member Transferred to a Foreign Affiliate on a Temporary Basis

If a Member is transferred to a Foreign Affiliate on a temporary basis, the Member's service with that Foreign Affiliate shall be included in the Member's RTB Service for purposes of determining the Member's Continuous Service and TRA Benefit.

6.7.2    Member Transferred on a Permanent Basis to a Foreign Affiliate that is a Party to a Reciprocal Agreement

- 25 -

00405

If a Member is transferred to a Foreign Affiliate on a permanent basis and the Foreign Affiliate is a party to a Reciprocal Agreement, the Member's TRA Benefit determined under section 6 shall be prorated by the Member's Continuous Service with the Company in Canada over the Member's total Continuous Service.

6.7.3    Member Transferred on a Permanent Basis to a Foreign Affiliate who is not a Party to a Reciprocal Agreement

If a Member is transferred to a Foreign Affiliate on a permanent basis and the Foreign Affiliate is not party to a Reciprocal Agreement, a TRA Benefit shall only be payable to the Member if the Member is eligible to retire under Part I at the date of transfer.

00406

# SECTION 7
## FORM OF TRA BENEFIT

**7.1**    Lump Sum TRA Benefit

Subject to Section 7.2, the TRA Benefit shall be payable to a Member in the form of a lump sum following the date of the Member's retirement under Part I.

**7.2**    Optional Forms of Payment

A Member may elect to receive his TRA Benefit in one of the following optional forms:

7.2.1    Monthly Payment

(a)    A Member may elect to receive his TRA Benefit as a monthly annuity certain based on a rate of return adopted by the Company based on consultation with the Actuary.

(b)    Where a Member elects to receive TRA Benefits on a monthly basis, the Company shall not be obligated to secure or otherwise pre-fund the TRA Benefit.

(c)    Once a Member elects to receive TRA benefits on a monthly basis, the Member is prohibited from then electing to receive any remaining TRA Benefit in a lump sum at some future date.

(d)    Each monthly installment of the TRA Benefit shall be payable from the general operating funds of the Company.

- 27 -

00437

### 7.2.2    Cash and Monthly Payments

(a)    A Member may elect to receive his TRA Benefit in a combination of a lump sum cash payment and monthly payments.

(b)    Any portion of the TRA Benefit paid to a Member in monthly payments shall be subject to Section 7.2.1.

### 7.2.3    Cash and Transfer to RRSP

(a)    A Member may elect to receive his TRA Benefit in a combination of a lump sum cash payment and a transfer to a Registered Retirement Savings Plan.

(b)    The amount of the TRA Benefit transferred to a Registered Retirement Savings Plan cannot be greater than the limit prescribed under the Income Tax Act for Retiring Allowances.

### 7.2.4    Monthly Payments and Transfer to RRSP

(a)    A Member may elect to receive his TRA benefit in a combination of monthly payments and a transfer to a Registered Retirement Savings Plan.

(b)    Any portion of the TRA Benefit paid to a Member in monthly payments shall be subject to Section 7.2.1.

(c)    The amount of the TRA Benefit transferred to a Registered Retirement Savings Plan cannot be greater than the limit prescribed under the Income Tax Act for Retiring Allowances.

00408

### 7.2.5    Cash, Monthly Payments and Transfer to RRSP

(a)    A Member may elect to receive his TRA Benefit in a combination of lump sum cash payment, monthly payments and a transfer to a Registered Retirement Savings Plan.

(b)    Any portion of the TRA Benefit paid to a Member in monthly payments shall be subject to Section 7.2.1.

(c)    The amount of the TRA Benefit transferred to a Registered Retirement Savings Plan cannot be greater than the limit prescribed under the Income Tax Act for Retiring Allowances.

### 7.2.6    Transfer to RRSP

(a)    A Member may elect to have his TRA benefit transferred to a Registered Retirement Savings Plan.

(b)    The amount of the TRA Benefit transferred to a Registered Retirement Savings Plan cannot be greater than the limit prescribed under the Income Tax Act for Retiring Allowances.

(c)    Any amount of the TRA Benefit that is in excess of the limit prescribed under the Income Tax Act for Retiring Allowances must be paid to the Member in cash or converted to monthly payments pursuant to Section 7.2.1.

00409

# SECTION 8
## DEATH BENEFIT

8.1     Pre-Retirement TRA Death Benefit

If a Member dies while in the employment of the Company, no TRA Benefit is payable.

8.2     Post-Retirement TRA Death Benefit

8.2.1   If a Member has a Spouse on the date of death, any remaining TRA Benefit that is payable pursuant to Section 7.2, if any, shall be payable to such Spouse in the form elected by the Member at the time of the Member's retirement.

8.2.2   If a Member does not have a Spouse on the date of death, the remaining TRA Benefit that is payable pursuant to Section 7.2, if any, shall be paid in a lump sum to the Member's estate.

00410

## SECTION 9
## SPECIAL TRA BENEFITS FOR DIVESTED MEMBERS

9.1.    This Section 9 applies with respect to Members (in this section referred to as "Affected Members") who cease to be employed by the Company as a result of a divestiture and continue employment with the purchaser, where the purchase and sale agreement pertaining to the divestiture (in this section referred to as a "Purchase and Sale Agreement") promises benefits under this Plan that are not specifically provided under the terms of the Plan, read without reference to this section.  A summary of divestitures is provided in Appendix E, which Appendix shall be updated as new divestitures occur from time to time.

9.2    Where a Purchase and Sale Agreement stipulates that benefits are to be paid under this Plan in respect of an Affected Member, this Plan shall be read as providing those stipulated benefits.

00411

APPENDIX A

RTB RATE

| Benefit Group | Benefit Rate |
|---------------|--------------|
| 1 | $19.00 |
| 2 | $20.00 |
| 3 | $22.00 |
| 4 | $25.00 |
| 5 | $27.00 |

00412

APPENDIX B

RTB FACTOR

| Completed Years of RTB Service | Number of RTB Months Used for Members Retiring on or Eligible for a TRA Benefit on Normal Retirement Date | Value of Monthly Payments Used for Members Retiring on or Eligible for a TRA Benefit on Early Retirement Date |
|---|---|---|
| Less than 4 | 0 | 0 |
| 4 – 11 | 6 | 5.88 |
| 12 | 7 | 6.83 |
| 13 | 8 | 7.78 |
| 14 | 9 | 8.71 |
| 15 | 10 | 9.64 |
| 16 | 11 | 10.57 |
| 17 | 13 | 12.39 |
| 18 | 14 | 13.29 |
| 19 | 15 | 14.18 |
| 20 | 16 | 15.06 |
| 21 | 17 | 15.94 |
| 22 | 18 | 16.81 |
| 23 | 20 | 18.53 |
| 24 | 21 | 19.38 |
| 25 | 23 | 21.06 |
| 26 | 24 | 21.89 |
| 27 | 26 | 23.53 |
| 28 | 27 | 24.34 |
| 29 | 29 | 25.94 |

00413

| Completed Years of RTB Service | Number of RTB Months Used for Members Retiring on or Eligible for a TRA Benefit on Normal Retirement Date | Value of Monthly Payments Used for Members Retiring on or Eligible for a TRA Benefit on Early Retirement Date |
|---|---|---|
| 30 | 30 | 26.73 |
| 31 | 32 | 28.29 |
| 32 | 33 | 29.06 |
| 33 | 35 | 30.58 |
| 34 | 36 | 31.34 |
| 35 | 38 | 32.82 |
| 36 | 39 | 33.56 |
| 37 | 41 | 35.01 |
| 38 | 42 | 35.72 |
| 39 or more | 44 | 37.14 |

00411

APPENDIX C

ERS FACTOR

| Age | ERS Factors |
|---|---|
| 47 | 99.89 |
| 48 | 97.67 |
| 49 | 95.25 |
| 50 | 92.60 |
| 51 | 89.70 |
| 52 | 86.53 |
| 53 | 83.05 |
| 54 | 79.24 |
| 55 | 75.06 |
| 56 | 70.46 |
| 57 | 65.39 |
| 58 | 59.81 |
| 59 | 53.65 |
| 60 | 46.84 |
| 61 | 39.30 |
| 62 | 30.96 |
| 63 | 21.70 |
| 64 | 11.43 |
| 65 and over | 0.00 |

00415

## APPENDIX D

### SAMPLE TRA BENEFIT CALCULATIONS

This appendix D was added to illustrate how the TRA Benefits described in Sections 6.1 and 6.2 are calculated and show that these results match the previous tables provided for the flat benefit portion of the TRA Benefit.

**Sample 1:**

Consider a Grandfathered Member who is in Benefit Group 5 who retires at age 65 with 25 years of Continuous Service and Best Average Earnings of $70,000. From the tables the flat benefit amount is equal to $15,525. The flat benefit portion of the TRA Benefit is described in Section 6.1 and produces the following result:

$$(A) = \$11 \times 25 \times 0.00 = \$0.00$$

$$(B) = \$27 \times 25 \times 23 = \$15,525.00$$

Note that in the calculation of (B) for Members at their Normal Retirement Date the RTB Rate is multiplied by the years of Continuous Service and the RTB Months (the RTB Factor is used for Members retiring before their Normal Retirement Date only). The number of RTB Months is determined by the years of RTB Service which, for this member, is the same as Continuous Service.

The Best Average Earnings portion of the TRA Benefit is described in Section 6.1 and is determined as follows:

$$(C) = (\$70,000 - \$32,000) \times .03 \times (25 - 10) = \$17,100$$

Therefore the total TRA Benefit is:

- 36 -

00415

$$(A) + (B) + (C) = \$32,625.00$$

**Sample 2:**

Consider a Member who is not a Grandfathered Member, who is in Benefit Group 5 and who retires at age 65 with 24 years of RTB Service and 14 years of Continuous Service. The Best Average Earnings, which include earnings only to the Earnings Termination Date, are $60,000. The flat benefit portion of the TRA Benefit is described in Section 6.1 and produces the following result:

$$(A) = \$11 \times 14 \times 0.00 = \$0.00$$

$$(B) = \$27 \times 14 \times 21 = \$7,938$$

Note that, in the calculation of (B) for this member, the number of RTB Months is determined from Appendix B by reference to the RTB Service, which is greater than the Continuous Service. For this member the Continuous Service is defined to be RTB Service prior to 2008.

The Best Average Earnings portion of the TRA Benefit is described in Section 6.1 and is determined as follows:

$$(C) = (\$60,000 - \$32,000) \times .03 \times (14 - 10) = \$3,360$$

Therefore the total TRA Benefit is:

$$(A) + (B) + (C) = \$11,298$$

**Sample 3:**

Consider a Grandfathered Member who is in Benefit Group 4 who retires at age 57 with

- 37 -

00417

30 years of Continuous Service and Best Average Earnings of $60,000. From the tables the flat benefit amount is equal to $41,626.20. The flat benefit portion of the TRA Benefit is described in Section 6.2 and produces the following result:

(A) = $11 X 30 X 65.39 = $21,578.70

(B) = $25 X 30 X 26.73 = $20,047.50

The flat benefit portion is the sum of (A) + (B) = $41,626.20. Note that, for this member, Continuous Service is the same as RTB Service.

The Best Average Earnings portion of the TRA Benefit is described in Section 6.2 and is determined as follows:

(C) = ($60,000 - $32,000) X .03 X (30 – 10) = $16,800.00

Therefore the total TRA Benefit is:

(A) + (B) + (C) = $58,426.20

**Sample 4:**

Consider a Member who is not a Grandfathered Member, who is in Benefit Group 4 and who retires at age 57 with 30 years of RTB Service and 15 years of Continuous Service. His Best Average Earnings, which include earnings only to the Earnings Termination Date, are $50,000. The flat benefit portion of the TRA Benefit is described in Section 6.2 and produces the following result:

(A) = $11 X 15 X 65.39 = $10,789.35

(B) = $25 X 15 X 26.73 = $10,023.75

The flat benefit portion is the sum of (A) + (B) = $20,813.10. Note that, in the calculation of (B) for this member, the RTB Factor is determined from Appendix B by reference to the RTB Service, which is greater than the Continuous Service. For this member the Continuous Service is defined to be RTB Service prior to 2008.

- 38 -

00418

The Best Average Earnings portion of the TRA Benefit is described in Section 6.2 and is determined as follows:

$$(C) = (\$50,000 - \$32,000) \text{ X } .03 \text{ X } (15 - 10) = \$2,700$$

Therefore the total TRA Benefit is:

$$(A) + (B) + (C) = \$23,513.10$$

## Sample 5:

Consider a Grandfathered Member who is in Benefit Group 3 who retires at age 55 with 20 years of Continuous Service, and Best Average Earnings of $40,000. This Member would be eligible to retire as a Class E retirement only. Therefore we have to determine when he would first become eligible for a Class A or Class B Voluntary pension, based on his actual service at retirement. He would be eligible for a Class A TRA Benefit at age 60. Therefore his TRA Benefit would be determined as follows:

$$(A) = \$11 \text{ X } 20 \text{ X } 46.84 = \$10,304.80$$

$$(B) = \$22 \text{ X } 20 \text{ X } 15.06 = \$ 6,626.40$$

$$(C) = (\$40,000 - \$32,000) \text{ X } .03 \text{ X } (20 - 10) = \$2,400.00$$

Therefore the TRA Benefit payable at age 60 is $19,331.20. This value must be discounted back to the Member's current age using current interest rates. Let's assume the interest rate is currently 6.00% for the first 15 years and 6.00% thereafter. As a result the TRA Benefit payable at age 55 would be determined as follows:

$$\$19,331.20 \text{ X } (1 / 1.06)^5 = \$14,445.40$$

## Sample 6:

Consider a Member who is not a Grandfathered Member, who is in Benefit Group 3 and

00419

who retires at age 56 with 21 years of RTB Service and 16 years of Continuous Service. His Best Average Earnings, which include earnings only to the Earnings Termination Date are $39,000. This Member would be eligible to retire as a Class E retirement only. Therefore we have to determine when he would first become eligible for a Class A or Class B Voluntary pension, based on his actual service at retirement. He would be eligible for a Class A TRA Benefit at age 60. Therefore his TRA Benefit would be determined as follows:

$$(A) = \$11 \text{ X } 16 \text{ X } 46.84 = \$8,243.84$$

$$(B) = \$22 \text{ X } 16 \text{ X } 15.94 = \$ 5,610.88$$

$$(C) = (\$39,000 - \$32,000) \text{ X } .03 \text{ X } (16 - 10) = \$1,260.00$$

Therefore the TRA Benefit payable at age 60 is $15,114.72. This value must be discounted back to the Member's current age using current interest rates. Let's assume the interest rate is currently 6.00% for the first 15 years and 6.00% thereafter. As a result the TRA Benefit payable at age 56 would be determined as follows:

$$\$15,114.72 \text{ X } (1 \text{ / } 1.06)^4 = \$11,972.27$$

- 40 -

00429

APPENDIX E

DIVESTITURES

| DIVESTITURE | EFFECTIVE DATE | KEY TERMS |
|---|---|---|
| Nordx/CDT | February 2, 1996 | • Nordx/CDT to pay full TRA for divested Nortel employees who are retiring from Nordx/CDT<br><br>• Nortel to reimburse Nordx/CDT for Nortel's portion of TRA payment |
| Expertech | May 26, 2000 | • Expertech to pay full TRA for divested Nortel employees who are retiring from Expertech<br><br>• Nortel to reimburse Expertech for Nortel's portion of TRA payment |
| Precision | March 3, 2000 | • Nortel responsible for paying its share of TRA Benefit directly to individual retiring from Precision |

- 41 -

00421

*  *  *  *  *

We hereby execute the foregoing amendment to and restatement of the Plan, effective January 1, 2008, for and on behalf of Nortel Networks Limited and in accordance with the approvals granted pursuant to the governance mandates that are applicable to the Plan.

_____    _____
Signature                    Signature
  William J. LaSalle           Gordon A. Davies
  General Counsel - Operations  General Counsel - Corporate
                                and Corporate Secretary

_____    _____
Title                        Title

_____    _____
November 12, 2007            November 13, 2007
Date                         Date

# APPENDIX "K"

00422

# NORTEL NETWORKS LIMITED
## RETIREMENT ALLOWANCE PLAN

Plan Originally Effective January 1, 1988
This Document Effective as at January 1, 2004

# TABLE OF CONTENTS

00423

SECTION 1 DEFINITIONS ............................................................................. 1

SECTION 2 APPLICATION OF PLAN ......................................................... 13

SECTION 3 FUNDING ................................................................................... 15

SECTION 4 ADMINISTRATION .................................................................. 16

SECTION 5 AMENDMENT AND TERMINATION .................................... 18

SECTION 6 RAP BENEFIT ........................................................................... 19

SECTION 7 FORM OF RAP BENEFIT ........................................................ 25

SECTION 8 DEATH BENEFIT ...................................................................... 30

SECTION 9 SPECIAL RAP BENEFITS FOR DIVESTED MEMBERS ...... 31

APPENDIX A RAP RATE .............................................................................. 32

APPENDIX B RAP MONTHS ....................................................................... 33

APPENDIX C ADDITIONAL RAP RATE .................................................... 35

APPENDIX D SAMPLE CALCULATIONS ................................................. 37

APPENDIX E DIVESTITURES ..................................................................... 45

I:\nortelcm\rap\rap-final-april2005.doc

00424

# SECTION 1
## DEFINITIONS

1.1     <u>Definitions</u>

In this Plan, the following words and phrases shall have the following meanings, respectively, unless a different meaning is required by the context:

"**Actuarial Equivalent**" of a benefit means a benefit of equivalent value determined using actuarial tables, methods and assumptions determined in accordance with the *Recommendations for the Computation of Transfer Values from Registered Pension Plans* issued by the Canadian Institute of Actuaries effective September 1, 1993, or a similar professional standard for registered pension plans adopted after that date.

"**Actuary**" means a Fellow of the Canadian Institute of Actuaries appointed by the Company to render actuarial services in respect of the Plan.

"**Additional RAP Rate**" means the additional monthly benefit rate that is applied to a Member who retires before age 65 and that corresponds to the Member's collective bargaining unit and Benefit Group and is the product of:

(a)     0.981;

(b)     the Member's ERS Rate as at December 31, 1990; and

(c)     1 + the Member's Cumulative Negotiated RAP Increase at the Member's Pension Date.

- 1 -

00425

"**Benefit Group**" means the Member's benefit group as determined by the Company in conjunction with the applicable Collective Labour Agreement for a Member otherwise entitled to a defined benefit pension under Program I, based on the Member's union membership and job classification.

"**CAW**" means the National Union of Automobile, Aerospace, Transportation and General Workers of Canada, Belleville and Brampton (CAW#1530 and #1535).

"**CEP**" means the Communications, Energy and Paper Workers Union of Canada.

"**Class A Pension**" means on of the following:

(a)    the early retirement unreduced pension available to a Member, at the Member's sole request or upon Company initiative with Member consent, under Program I of the Negotiated Plan where the Member has attained age 60, but not age 65 and is not on lay-off, and the sum of the Member's years of Pensionable Service and age equals at least 80;

(b)    the early retirement unreduced pension available to a female Member, at the female Member's sole request or upon Company initiative with female Member consent, under Program I of the Negotiated Plan where the female Member has attained age 55, and has at least 20 years of Pensionable Service, provided that on May 31, 1973 she was on the payroll of the Company or a company which has entered into an Interchange Agreement and there was no break in the continuity of her employment after May 31, 1973; however in the event of a break in the continuity of employment, a period of employment after re-employment, as determined by the Company's applicable administrative procedures, shall make such female Member again eligible hereunder.

00426

"**Class B Early Pension**" means the early retirement unreduced pension available to a Member, upon Company initiative with Member consent, under Program I of the Negotiated Plan where the Member has attained age 55, but not age 65, is not on lay-off, and has at least 25 years of Pensionable Service.

"**Class B Voluntary Pension**" means the early retirement unreduced pension available to a Member, at the Member's sole request or upon Company initiative with Member consent, under Program I of the Negotiated Plan where the Member has attained age 55, but not age 65 and is not on lay-off, and the sum of the Member's years of Pensionable Service and age equals at least 85.

"**Class C Pension**" means the early retirement unreduced pension available to a Member, upon Company initiative with Member consent, under Program I of the Negotiated Plan where the Member is not on lay-off and has at least 30 years of Pensionable Service.

"**Class E Pension**" means an actuarially reduced early retirement pension available to a Member under Program I of the Negotiated Plan where the Member has attained age 55, is not on lay-off, and is entitled to a deferred pension on termination of employment.

"**COEU**" means the Canadian Office Employees Union.

"**Collective Labour Agreement**" means a collective labour agreement between the Company and CAW, CEP, COEU, CUCW1, CUCW2 or SIPIQ.

"**Company**" means Nortel Networks Limited, its successors and any other subsidiary or affiliated company which is designated, in whole or in part, by Nortel Networks Limited for the purpose hereof and which elects to participate in the Plan.

00427



"Continuous Service" of a Member means:

(a)     the period of continuous employment with the Company in Canada, as shown by the Company's records, calculated in accordance with applicable rules of the Company, without regard to periods of suspension of employment, membership or service and without regard to periods of lay-off from employment and including any Leave of Absence; and

(b)     a period of continuous employment with another company that the Company has agreed to recognize for the purposes of pension and/or Plan eligibility. Specifically, continuous employment for divested members in the following companies listed in Appendix E shall be recognized: Nordx/CDT, Expertech, Precison and Flextronics.

Where a measure of Continuous Service is required, Continuous Service shall be measured in completed years and months.

"CUCW1" means the Canadian Union of Communication Workers, Unit 1, certified by the Labour Relations Board of the Province of Quebec, and recognized by the Company as exclusive bargaining agent for all hourly-rates, non-supervisory employees in the Province of Quebec, excluding plant security staff.

"CUCW2" means the Canadian Union of Communications Workers, Unit 2, certified by the Canada Industrial Relations Board, and recognized by the Company as the exclusive bargaining agent for Eastern Region installation employees.

00428

"**Cumulative Negotiated RAP Increase**" means the cumulative increase in the RAP Rate for each collective bargaining unit which is specified in Table 2 of Appendix A and which Appendix A shall be updated as new Cumulative Negotiated RAP Increases are agreed upon from time to time.

"**Early Retirement Date**" means the date at which a Member, who has not attained age 65, who is not on lay-off and who has not received a notice of termination of employment unless such notice has been withdrawn, retires with an early retirement pension pursuant to the Negotiated Plan.

"**Eligible Dependent**" means:

an individual of the opposite sex or same sex who is legally married to the Member and not living separate and apart from the Member or, if the Member so elects, who is not living with the Member at the time of the Member's death; or if neither of these is applicable, a person of the opposite sex or same sex who is not married to the Member, but is an individual with whom the Member has been cohabiting for a period of one year immediately preceding the Member's death and who had been publicly represented as the domestic partner of the Member (a "Spouse").

(a)    An unmarried natural or legally adopted, dependent child of the Member or Spouse who is:

    (i)    living or deemed to be living with the Member, including those where support for benefit coverage has been dictated by a court order;  and

    (ii)    (A)    under age 21, or

           (B)    over age 21, but not over age 25, and is full-time students at an accredited college or university; and,

00429

    (iii)    eligible for provincial health care coverage (a Canadian Citizen or landed immigrant).

  (b)    a physically or mentally handicapped, financially dependent child, regardless of age, provided the child:

    (i)    was handicapped and dependent prior to age 21, or

    (ii)    was handicapped and dependent between age 21 and age 25, and was a full-time student at an accredited college or university at the time the child became handicapped and dependent, and

    (iii)    is eligible for provincial health care coverage (Canadian citizens or landed immigrants).

  (c)    a dependent parent.

The above Eligible Dependents are ranked in descending order of priority.

"ERS" means the "Early Retirement Supplement" which was formerly payable to members who retired under Program I of the Negotiated Plan.

"ERS Factor" means the factor that corresponds to the Member's age and is used to determine the value of each dollar of monthly ERS payable from early retirement until age 65 and which is specified in third column of Appendix C.

"ERS Rate" means the benefit rate that corresponds to the Member's Benefit Group which is specified in the third column of Table 1 of Appendix A.

00430

"**Income Tax Act**" means the *Income Tax Act* (Canada) and the Regulations thereunder, as amended or replaced from time to time.

"**IUOE**" means the International Union of Operating Engineers (IUOE Local 772).

"**Leave of Absence**" means:

(a)      a leave of absence granted in conformity with the rules of the Company and/or applicable legislation, and

(b)      a period of absence from working during which benefits are payable under the Company's Short Term Disability Plan or Long Term Disability Plan subject to the limitations under the Negotiated Plan.

"**Managerial Plan**" means the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan.

"**Member**" means an individual who meets each of the following criteria:

(a)      the individual has been employed by and received a stated compensation from the Company;

(b)      the individual has completed 10 or more years of Continuous Service with the Company;

(c)      the individual was a member under Program I and, subject to paragraph (f) of this definition, has not Terminated membership in the Negotiated Plan;

(d)      the individual is ceasing employment with the Company and will immediately commence a pension benefit under Program I;

00431

(e) if the individual has transferred from the Managerial Plan to the Negotiated Plan, the individual is not eligible to receive a benefit under the Nortel Networks Limited Transitional Retirement Allowance Plan or the Managerial Plan by virtue of active membership in Program I; and

(f) if the individual has transferred to employment with the Company in a position that is not eligible for membership in Program I, the individual has elected to retain benefits under Program I.

For greater clarity, a Program II Member shall not be entitled to RAP Benefits whether or not such member has elected to retain benefits under Program I, unless paragraph (f) of this definition applies to such a member. Without limiting the generality of the foregoing, the following describes how to address specific scenarios:

(I) if an individual was a member of a Program II Union on December 31, 2000 and elected to continue as a Program I Member after December 31, 2000, the individual will be eligible for a RAP Benefit;

(II) if an individual was a member of a Program II Union on December 31, 2000 and elected to become a Program II Member after December 31, 2000, the individual will not be eligible for a RAP Benefit;

(III) if, on or after January 1, 2001, a Program I Member transfers union membership from a Program I Union, CEP or CUCW2 to a Program II Union, and the individual remains a Program I Member and continues to accrue benefits under Program I, the individual will be eligible for a RAP Benefit;

00432

(IV)    if, on or after January 1, 2001, a Program I Member transfers union membership from a Program I Union, CEP or CUCW2 to a Program II Union and the individual elects to become a Program II Member and accrue benefits in accordance with Program II, the individual will not be eligible for a RAP benefit; and

(V)    if a Program I Member transfers to employment with the Company that is eligible for membership in the Managerial Plan and the individual elects to retain Program I benefits under the Negotiated Plan, the individual will be eligible for a RAP benefit.

"Negotiated Plan" means the Nortel Networks Negotiated Pension Plan.

"Normal Retirement Date" means the first day of the month after a Member attains age 65.

"Pension Date" means the date of commencement of a Member's immediate pension.

"Pensionable Service" of a Member means "Pensionable Service" as defined under the Negotiated Plan for the purposes of determining Program I benefits.

"Plan" means the Nortel Networks Limited Retirement Allowance Plan as set forth herein and as amended from time to time.

"Program I" means Program I (defined benefit provisions) of the Negotiated Plan.

"Program I Member" means an employee who:

00433

(a)  is a member of a Program I Union and who was a member of the Negotiated Plan on December 31, 2000 or becomes a member of the Negotiated Plan after December 31, 2000;

(b)  is a member of CAW or COEU and a member of the Negotiated Plan on December 31, 2000 and who, after January 1, 2001 accrues Pensionable Service under Program I;

(c)  was a member of CEP or CUCW2 and a member of the Negotiated Plan on the date that the business in which the employee worked was divested, and was in receipt of benefits under a short term disability plan or a long term disability plan sponsored by the Company or was on another approved leave of absence as of the date of such divestiture; or

(d)  has accrued benefits under the Negotiated Plan, is employed by the Company in a position that is not eligible for membership in the Negotiated Plan and has retained benefits under Program I;

and whose membership in the Negotiated Plan has not Terminated.

"**Program I Union**" means CUCW1, SIPIQ and IUOE.

"**Program II**" means Program II (defined contribution provisions) of the Negotiated Plan.

"**Program II Member**" means an employee who is a member of a Program II Union who:

(a)  was a member of the Negotiated Plan prior to January 1, 2001 and who has elected to become a member under Program II;

00434

(b)    becomes a member of the Negotiated Plan after December 31, 2000; or

(c)    was a Program I Member immediately prior to transferring employment from a Program I Union to a Program II Union and has elected to become a member under Program II;

and whose membership in the Negotiated Plan has not been Terminated.

"**Program II Union**" means CAW and COEU.

"**Postponed Retirement Date**" means the date on which a Member retires with a postponed retirement pension where such date is later than his Normal Retirement Date.

"**RAP Benefit**" means the benefit payable under the Plan.

"**RAP Rate**" means the monthly benefit rate that corresponds to the Member's collective bargaining unit and Benefit Group and is the product of:

(a)    the Member's RTB Rate as at December 31, 1990; and

(b)    1 + the Member's Cumulative Negotiated RAP Increase at the Member's Pension Date.

"**RAP Months**" means the number of months, dependent on a Member's Continuous Service, that the RAP Rate is paid which is specified in the second column of Appendix B.

"**Registered Retirement Savings Plan**" means a registered retirement savings plan as defined under the Income Tax Act.

00435

"**Retiring Allowance**" means a payment to an individual upon loss of office or employment, or on or after retirement, in recognition of long service, as defined in the Income Tax Act.

"**RTB**" means the "Retirement Transition Benefit" which was formerly payable to members who retired under Program I of the Negotiated Plan.

"**RTB Rate**" means the benefit rate that corresponds to the Member's Benefit Group which is specified in the second column of Table 1 of the Appendix A and which Appendix A.

"**RTB Factor**" means the factor, dependent on a Member's Continuous Service, used to determine the RAP Benefit payable from retirement and which is specified in the third column of Appendix B.

"**SIPIQ**" means Le Syndicat Independent des Policiers Industriels du Quebec.

"**Terminated**" means a cessation of employment with the Company not caused by retirement, death or work force reduction.

00435

# SECTION 2
## APPLICATION OF PLAN

2.1    Purpose

The primary purpose of the Plan is to recognize the long service of employees of Nortel Networks who retire under Program I of the Negotiated Plan after completing at least 10 years of Continuous Service with the Company, by providing a lump sum retiring allowance or equivalent monthly payments.

2.2    Effective Date

The provisions of the Plan shall apply with effect as of and from January 1, 1988 except as otherwise specifically provided in the Plan. This text applies to Members who terminate, retire or die on or after January 1, 2004.

2.3    Non-Registered Plan

The Plan does not and is not intended to provide pension benefits and, as a consequence, shall not be registered under the terms of any pension standards legislation.

00437

2.4    <u>History</u>

The Plan provides benefits that prior to 1988 were payable under the RTB and as ERS under the Negotiated Plan. The RTB was a retiring allowance in recognition of a Member's long service with the Company. It was calculated based on the Member's Continuous Service at retirement and Benefit Group. The RTB was payable upon cessation of active employment with the Company. The ERS was equal to a flat benefit for each year of Pensionable Service, payable monthly until age 65, under the Negotiated Plan.

00438

## SECTION 3
## FUNDING

3.1    Employer Funding

The Company shall pay benefits under the Plan in a form provided for in Section 7 from the Company's operating income as such benefits become payable.  The Company is not required to pre-fund or secure the benefits in any way.

00439

## SECTION 4
## ADMINISTRATION

### 4.1    Role of Company

The Company shall be responsible for the administration of the Plan.  The
Company shall have the exclusive right to decide all matters arising under the
Plan or in connection with its administration, including determinations as to the
periods of Continuous Service, eligibility for, and the amount of any benefit under
the Plan.  Subject to Section 4.6, all decisions by the Company shall be final and
binding on all persons affected hereby.  The Company, in the performance of its
responsibilities may act through such persons, including the Employee Benefits
Committee, other committees, employees and agents, as it deems appropriate.

### 4.2    Administrative Procedures and Benefit Practices

The Company, from time to time, may adopt rules, including administrative
procedures and benefit practices, for the administration of the Plan which shall be
consistent with the provisions of the Plan.

### 4.3    Evidence of Entitlement to Benefits

Every person eligible for a benefit under the Plan shall, on request, provide to the
Company evidence, including evidence by way of affidavit, declaration or
certificate, and including but not limited to proof of age, satisfactory to the
Company, as it may require to determine the entitlement to or the amount of such
benefit.

00440

4.4     Expenses

All costs related to the administration of the Plan shall be borne by the Company.

4.5     Liability

The Company, its directors, officers, employees and agents, shall not be liable for any action taken, suffered or omitted by them in good faith in carrying into effect the provisions of the Plan.  Without limiting the generality of the foregoing, the Company shall be entitled to rely on information and documentation supplied or elections made by, a Member or Former member, from time to time, for purposes of the Plan; and the Company, its directors, officers, employees and agents, shall not be liable for any error or omission or loss of any kind or adverse income tax or other consequences arising there from, or from any failure or delay in connection therewith including the failure to secure and provide the consent or agreement thereto of another part as necessary or appropriate.

4.6     Appeal Process

Where a Member's periods of Continuous Service, eligibility for a RAP Benefit, the amount of the RAP benefit payable or any other right or entitlement under the Plan is in dispute, the Member shall seek a review of the issue in dispute through the grievance process provided for in the applicable Collective Labour Agreement.

00441

## SECTION 5
## AMENDMENT AND TERMINATION

5.1     Continuation

While the Company intends to continue the Plan, it reserves the right, at any time, and subject to the terms of the applicable Collective Labour Agreement and the negotiated approval of the applicable collective bargaining unit, to amend or terminate the Plan in whole or in part.

5.2     Amendment

Subject to the terms of the applicable Collective Labour Agreement and the negotiated approval of the applicable collective bargaining unit, the Company reserves the right to amend the Plan in any way and at any time.

SECTION 6

00442

RAP BENEFIT

### 6.1    RAP Benefit at Normal Pension Date

A Member who retires on his Normal Retirement Date shall be entitled to a lump sum RAP Benefit equal to the product of (A), (B) and (C), where (A), (B) and (C) are as follows:

(A)    the Member's RAP Rate.

(B)    the Member's number of completed years and months of Continuous Service credited under Program I.

(C)    the Member's RAP Months.

Appendix D (Sample 1) contains an example of how the RAP Benefit is calculated for a Member who retires on his Normal Retirement Date.

### 6.2    RAP Benefit at Early Retirement

6.2.1    A Member who retires on his Early Retirement Date at or before age 64 and commences receiving a Class A Pension, Class B Early Pension, Class B Voluntary Pension or Class C Pension under Program I, as applicable, shall be entitled to a monthly RAP Benefit equal to the sum of (A) and (B), where (A) and (B) are as follows:

(A)    The product of (i), (ii), (iii) and (iv), where (i), (ii), (iii) and (iv) are as follows:

- 19 -

00443

(i)    the Member's RAP Rate.

(ii)    the Member's number of completed years and months of Continuous Service accrued under Program I.

(iii)    the RTB Factor for the Member.

(iv)    1 divided by the ERS Factor for the Member.

(B)    The product of (v) and (vi), where (v) and (vi) are as follows:

(v)    the Members Additional RAP Rate.

(vi)    the Member's number of completed years and months of Continuous Service accrued under Program I.

For the purpose of determining the ERS Factor under Section 6.2.1(A)(iv), the age of the Member shall equal the actual age of the Member at date of determination, computed on the basis of completed months. Where a Member's age falls between two integral ages identified in Appendix C, the RAP Benefit for that Member will be based on an interpolation of the RAP Benefit determined using the ERS Factor for the integral age which immediately precedes that Member's age and the RAP Benefit determined using the ERS Factor for the integral age which immediately follows that Member's age.

6.2.2    A Member who retires on his Early Retirement Date after attaining age 64 and commences receiving a Class A Pension, under Program I, shall be entitled to a monthly RAP Benefit equal to the sum of (A) and (B), multiplied by (C),  where (A), (B) and (C) are as follows:

00441

(A)     The product of (i), (ii) and (iii) where (i), (ii) and (iii) are as follows:

      (i)      The monthly RAP Benefit calculated based on age 64 and service at Early Retirement Date, in accordance with Section 6.2.1.

      (ii)     The ERS Factor at age 64.

      (iii)    The number of months by which the Member's age in completed months at Early Retirement Date precedes age 65, divided by 12

(B)     The product of (iv) and (v) where (iv) and (v) are as follows:

      (iv)     The RAP Benefit calculated in accordance with Section 6.1, based on service at the Member's Early Retirement Date.

      (v)      The number of months by which the Member's age in completed months at Early Retirement Date exceeds age 64, divided by 12

(C)     1 divided by the ERS Factor for the Member. For the purpose of determining the ERS Factor under this section, the age of the Member shall equal the age in completed months of the Member at the Member's Early Retirement Date.

00445

6.2.3    A Member who retires on his Early Retirement Date and commences receiving a Class E Pension under the early retirement provisions of Program I, shall be entitled to a monthly RAP Benefit that is the Actuarial Equivalent of the RAP Benefit that would be payable at the earliest age the Member would become entitled to a Class A Pension or Class B Voluntary Pension under the early retirement provisions of Program I, or Normal Retirement Date, if earlier, based on the Member's Continuous Service on his or her Early Retirement Date and determined in accordance with Section 6.1 or 6.2 as applicable.

Appendix D (Samples 2, 3 and 4) contains examples of how RAP Benefits are calculated at Early Retirement Dates under Section 6.2.

**6.3    RAP Benefit at Postponed Retirement**

A Member who meets the requirements specified in Section 6.1 and who has postponed retirement will receive a lump sum RAP Benefit calculated, as provided under Section 6.1, as if he is age 65 on his Postponed Retirement Date.

**6.4    RAP Benefit on Termination**

No RAP Benefit is payable to a Member whose employment with the Company is Terminated except as provided under Section 6.5.

00449

6.5    Work Force Reduction

6.5.1    Members Eligible for an Immediate Class A, Class B Early, Class B
Voluntary or Class C Early Retirement Pension under Program I

If a Member's employment with the Company is Terminated due to a
workforce reduction program by the Company and that Member is eligible
for an immediate Class A, Class B Early, Class B Voluntary or Class C
pension under Program I of the Negotiated Plan, at the Company's
discretion the Member:

(a)    may be entitled to receive 100% of the lump sum RAP Benefit
calculated under Section 6.2.1 at the date of retirement if the
Member elects to receive an immediate Class A, Class B Early,
Class B Voluntary or Class C early retirement pension; or

(b)    may not be entitled to receive a RAP Benefit if the Member elects
to receive either the deferred or the commuted value of the
deferred, Class A, Class B Early, Class B Voluntary or Class C
early retirement pension.

6.5.2    Members Eligible for an Immediate Class E Early Retirement Pension
under Program I

If a Member's employment with the Company is Terminated due to a
workforce reduction program by the Company and that Member is eligible
for an immediate Class E early retirement pension under Program I, at the
Company's discretion the Member:

00447

(a)    may be entitled to receive 100% of the lump sum RAP Benefit calculated under Section 6.2.2 if the Member elects to receive an immediate Class E early retirement pension; or

(b)    may not be entitled to receive a RAP Benefit if the Member elects to receive either the deferred or the commuted value of the deferred Class E early retirement pension.

6.5.3    Terminated Members Not Eligible for an Immediate Retirement under Program I

If a Member's employment with the Company is Terminated due to a workforce reduction program by the Company and the Member is entitled to work force reduction provisions, but that Member is not eligible to receive an immediate pension under Program I, the Member shall not be entitled to receive a RAP Benefit.

00448

# SECTION 7
## FORM OF RAP BENEFIT

**7.1** <u>RAP Benefit at Normal Retirement Date and Postponed Retirement Date</u>

### 7.1.1   Lump Sum

The RAP Benefit paid at Normal Retirement Date or Postponed Retirement Date, calculated in accordance with Section 6.1 or Section 6.3, as applicable, shall be payable to a Member in the form of a lump sum less withholding tax following the date the Member's retirement under Program I commences.

### 7.1.2   Optional Forms of Payment

A Member who retires at Normal Retirement Date or Postponed Retirement Date may elect, in lieu of the lump sum described in Section 7.1.1, to receive his RAP Benefit in one of the following optional forms:

(a)   Monthly Payment

(i)   A Member may elect to receive his RAP Benefit in the form of monthly payments commencing on his retirement date and ending on the first day of any month prior to the date on which the Member attains age 69.

00449

(ii) If a Member elects to receive his RAP Benefit pursuant to Section 7.1.2(a)(i), such monthly payments shall be calculated as the Actuarial Equivalent of the RAP Benefit determined pursuant to Section 6.1 or Section 6.3 as applicable.

(iii) Once a Member elects to receive RAP benefits on a monthly basis, the Member is prohibited from electing to receive any remaining RAP Benefit in a lump sum at some future date.

(iv) Where a Member elects to receive RAP Benefits on a monthly basis, the Company shall not be obligated to secure or otherwise pre-fund the RAP Benefit.

(v) Each monthly installment of the RAP Benefit shall be payable from the general operating funds of the Company.

(b) Cash and Transfer to RRSP

(i) A Member may elect to receive his RAP Benefit in a combination of cash and transfer to a Registered Retirement Savings Plan.

(ii) The amount of the RAP Benefit transferred to a Registered Retirement Savings Plan cannot be greater than the limit prescribed under the Income Tax Act for Retiring Allowances.

(c) Transfer to RRSP

00450

(i)     A Member may elect to have his RAP Benefit transferred to a Registered Retirement Savings Plan.

(ii)    The amount of the RAP Benefit transferred to a Registered Retirement Savings Plan cannot be greater than the limit prescribed under the Income Tax Act for Retiring Allowances.

(iii)   Any amount of the RAP Benefit that is in excess of the limit prescribed under the Income Tax Act for Retiring Allowances must be paid to the member in cash.

## 7.2    RAP Benefit at Early Retirement

### 7.2.1   Monthly Payment

The RAP Benefit at Early Retirement, calculated in accordance with Section 6.2 or Section 8, as applicable, shall be payable to a Member in the form of a monthly annuity certain commencing the first of the month coincident with or next following the Member's Early Retirement Date to the first day of the month immediately prior the date on which the Member attains age 65, less withholding tax.

### 7.2.2   Optional Forms of Payment

Prior to the commencement of the RAP Benefit at Early Retirement, a Member may elect to receive his RAP Benefit in one of the following optional forms:

(a)     Lump Sum RAP Benefit

00451

(i)    In lieu of the monthly benefit described under Section 7.2.1, a Member may elect to receive a lump sum RAP Benefit.

(ii)    If a Member elects to receive his RAP Benefit pursuant to Section 7.2.2(a)(i), the RAP Benefit calculated pursuant to Section 6.2 or 8, as applicable, shall be converted into a lump sum amount that is the Actuarial Equivalent of the monthly annuity certain to age 65.

(iii)    The lump sum RAP Benefit, at the option of the Member, may be paid in one of the following forms:

(1) Cash, less withholding tax;
(2) Cash and Transfer to RRSP; or
(3) Transfer to RRSP.

(iv)    The amount of the RAP Benefit transferred to a Registered Retirement Savings Plan cannot be greater than the limit prescribed under the Income Tax Act for Retiring Allowances.

(v)    Any amount of the RAP Benefit that is in excess of the limit prescribed under the Income Tax Act for Retiring Allowances must be paid to the Member in cash.

(b)    Other Forms of Monthly Payment

(i)    A Member may elect to receive his RAP Benefit in the form of monthly payments commencing on his retirement date and ending on the first day of any month prior to the date on which the Member attains of age 69.

00452

(ii)    If a Member elects to receive his RAP Benefit pursuant to Section 7.2.2(b)(i), such monthly payments shall be calculated as the Actuarial Equivalent of the RAP Benefit determined pursuant to Section 6.2 or Section 8 as the case may be.

(iii)   Once a Member elects to receive RAP benefits on a monthly basis, the Member is prohibited from electing to receive any remaining RAP Benefit in a lump sum at some future date.

(iv)    Where a Member elects to receive RAP Benefits on a monthly basis, the Company shall not be obligated to secure or otherwise pre-fund the RAP Benefit.

(v)     Each monthly installment of the RAP Benefit shall be payable from the general operating funds of the Company.

00453

## SECTION 8
## DEATH BENEFIT

**8.1**    Pre-Retirement RAP Death Benefit

8.1.1    Subject to Section 8.1.2, if a Member dies while in the employment of the Company, no RAP Benefit is payable.

8.1.2    If a Member, other than a member of CUCW2 or CEP, dies while in the employment of the Company on and after:

(a)    March 5, 2000, where that Member is a member of CAW;

(b)    March 13, 2000, where that Member is a member of COEU;

(c)    April 27, 2000, where that Member is a member of CUCW1;

(d)    September 1, 2000, where that Member is a member of SIPIQ; or

(e)    September 1, 2000, where that Member is a member of IUOE,

after having met the conditions for a Class A Pension, Class B Voluntary Pension, Class B Early Pension, Class C Pension or Class E Pension, the Eligible Dependent of that Member, or where that Member does not have an Eligible Dependent on the date of death that Member's estate, will receive the RAP Benefit that would otherwise have been made to that Member had that Member retired immediately prior to his death.

**8.2**    Post-Retirement RAP Death Benefit

8.2.1    If a Member has an Eligible Dependent on the date of death any remaining RAP Benefit that is payable pursuant to Section 7.2, if any, shall be payable to such Eligible Dependent on the same basis.

- 30 -

00454

8.2.2   If a Member does not have an Eligible Dependent on the date of death, the remaining RAP Benefit that is payable pursuant to Section 7.2, if any, shall be paid on the same basis to the Member's estate.

00455

# SECTION 9

## SPECIAL RAP BENEFITS FOR DIVESTED MEMBERS

9.1     Members who cease to be employed by the Company as a result of a divestiture and continue employment with the purchaser, may, subject to the conditions stipulated in the purchase and sale agreement pertaining to the relevant divesture, be entitled to a portion of the RAP Benefits based on the Member's accrued Continuous Service and RAP Rate in effect as at the date of divesture or date of termination.

A summary of divestitures is provided in Appendix E, which Appendix shall be updated as new divestures occur from time to time.

00456

APPENDIX A

RAP RATE

Table 1: RTB and ERS Rate at 31.12.1990 (All Unions)

| Benefit Group | RTB Rate as at 31.12.1990 | ERS Rate as at 31.12.1990 |
|---|---|---|
| 1 | $19 | $11 |
| 2 | $20 | $11 |
| 3 | $22 | $11 |
| 4 | $25 | $11 |
| 5 | $27 | $11 |

Table 2: Cumulative Negotiated RAP Increases Since 1990

| Effective Date of Change | Union | | | |
|---|---|---|---|---|
| | CUCW1 | COEU | CAW/IUOE | Divested Unions [1] |
| 01.01.1998 | 27.9950% | 27.9950% | 27.9950% | 27.9950% |
| 01.01.1999 | 30.4330% | 30.4330% | 30.4330% | 27.9950% |
| 01.01.2000 | 34.3460% | 34.3460% | 34.3460% | 27.9950% |
| 01.01.2001 | 36.9547% | 36.9547% | 36.9547% | 27.9950% |
| 01.01.2002 | 40.8676% | 39.5633% | 39.5633% | 27.9950% |
| 01.01.2003 | 42.1720% | 39.5633% | 42.3546% | 27.9950% |
| 13.06.2003 | 42.1720% | 45.0154% | 42.3546% | 27.9950% |
| 01.01.2004 | 42.1720% | 45.0154% | 45.1458% | 27.9950% |
| 01.01.2005 | 42.1720% | 45.0154% | 47.9371% | 27.9950% |
| 01.01.2006 | 42.1720% | 45.0154% | | 27.9950% |
| Expiry date of current collective labor agreements | 28.02.2006 | 28.02.2014 | CAW: 26.02.2006 IUOE: 15.08.2006 | No longer actively bargained |

[1]. Employees who were members of the Negotiated Plan prior to January 1, 2001, who belong to unions that no longer are actively bargained, e.g. CEP, CUCW2 and other orphan groups.

- 33 -

00457

APPENDIX B

RAP MONTHS AND RTB FACTOR

| Completed Years of Continuous Service | RAP MONTHS — Number of RAP Months Used for Members Retiring on or Eligible for a RAP Benefit on Normal Retirement Date | RTB FACTOR — Value of $1 Monthly Payments Used for Members Retiring on or Eligible for a RAP Benefit on Early Retirement Date |
|---|---|---|
| Less than 10 | 0 | 0 |
| 10 | 5 | 4.91967 |
| 11 | 6 | 5.87982 |
| 12 | 7 | 6.83220 |
| 13 | 8 | 7.77687 |
| 14 | 9 | 8.71389 |
| 15 | 10 | 9.64332 |
| 16 | 11 | 10.56522 |
| 17 | 13 | 12.38668 |
| 18 | 14 | 13.28637 |
| 19 | 15 | 14.17877 |
| 20 | 16 | 15.06394 |
| 21 | 17 | 15.94194 |
| 22 | 18 | 16.81283 |
| 23 | 20 | 18.53351 |
| 24 | 21 | 19.38341 |
| 25 | 23 | 21.06262 |
| 26 | 24 | 21.89204 |
| 27 | 26 | 23.53078 |
| 28 | 27 | 24.34021 |
| 29 | 29 | 25.93946 |

00453

| Completed Years of Continuous Service | RAP MONTHS Number of RAP Months Used for Members Retiring on or Eligible for a RAP Benefit on Normal Retirement Date | RTB FACTOR Value of $1 Monthly Payments Used for Members Retiring on or Eligible for a RAP Benefit on Early Retirement Date |
|---|---|---|
| 30 | 30 | 26.72938 |
| 31 | 32 | 28.29009 |
| 32 | 33 | 29.06098 |
| 33 | 35 | 30.58407 |
| 34 | 36 | 31.33638 |
| 35 | 38 | 32.82277 |
| 36 | 39 | 33.55794 |
| 37 | 41 | 35.00751 |
| 38 | 42 | 35.72399 |
| 39 or more | 44 | 37.13960 |

00459

APPENDIX C

ERS FACTOR

| Age at RAP Eligible Date | Number of Monthly Payments to age 65 | ERS FACTORS |
| --- | --- | --- |
| | | Value of $1 Monthly Payments Used for Members Retiring on or Eligible for a RAP Benefit on Early Retirement Date to age 65 |
| 47 | 216 | 102.15719 |
| 48 | 204 | 99.97198 |
| 49 | 192 | 97.56279 |
| 50 | 180 | 94.90666 |
| 51 | 168 | 91.97827 |
| 52 | 156 | 88.74972 |
| 53 | 144 | 85.19025 |
| 54 | 132 | 81.26593 |
| 55 | 120 | 76.93937 |
| 56 | 108 | 72.16938 |
| 57 | 96 | 66.91038 |
| 58 | 84 | 61.11237 |
| 59 | 72 | 54.72007 |
| 60 | 60 | 47.67256 |
| 61 | 48 | 39.90267 |
| 62 | 36 | 31.33638 |
| 63 | 24 | 21.89204 |
| 64 | 12 | 11.47965 |
| 64 $^{1}/_{12}$ | 11 | 10.56522 |
| 64 $^{2}/_{12}$ | 10 | 9.64332 |
| 64 $^{3}/_{12}$ | 9 | 8.71389 |
| 64 $^{4}/_{12}$ | 8 | 7.77687 |

00460

| Age at RAP Eligible Date | Number of Monthly Payments to age 65 | ERS FACTORS |
|---|---|---|
| | | Value of $1 Monthly Payments Used for Members Retiring on or Eligible for a RAP Benefit on Early Retirement Date to age 65 |
| 64 $^5/_{12}$ | 7 | 6.83220 |
| 64 $^6/_{12}$ | 6 | 5.87982 |
| 64 $^7/_{12}$ | 5 | 4.91967 |
| 64 $^8/_{12}$ | 4 | 3.95167 |
| 64 $^9/_{12}$ | 3 | 2.97577 |
| 64 $^{10}/_{12}$ | 2 | 1.99190 |
| 64 $^{11}/_{12}$ | 1 | 1.0000 |
| 65 and over | 0 | 0.00 |

00461

APPENDIX D

SAMPLE CALCULATIONS

This appendix D illustrates how the RAP Benefits described in Sections 6.1 and 6.2 are calculated and show that these results match the previous tables provided for the RAP Benefit.

## Sample 1: Normal Retirement

Consider a CUCW1 member, who is not a divested member, who is in Benefit Group 3 and who retires at age 65 in 2005 with 25 years and 4 months of Continuous Service. From the tables in Appendix A, the lump sum RAP amount is equal to $17,985. The RAP Benefit, as described in Section 6.1, produces the following result:

(A)　　= RAP Rate

　　= RTB rate (from Table 1) x (1 + RAP increase since 1990) (from Table 2)

　　= $22 x 142.1720%

(B)　　= Continuous Service (years and months) = $25\,^4/_{12}$ years

(C)　　= RAP months, based on completed years of Continuous Service at pension date (column 2 of Appendix B)

　　= 23 months

### Normal Form - Lump Sum

Therefore, the total lump sum RAP Benefit at normal retirement is:

(A) x (B) x (C) = $22 x 142.1720% x $25\,^4/_{12}$ x 23 = $18,224.55

### Alternative Form - Monthly Installments

A Member may elect to receive his RAP Benefit in the form of monthly payments over a period up to age 69.

Assume the current CIA non-indexed interest rate is 4.75% for the first 10 years and 5.75% thereafter. As a result, the monthly RAP Benefit payable from age 65 for 48 monthly payments would be determined as follows:

00462

$18,224.55 divided by monthly annuity certain factor for 48 monthly payments

$18,224.55 ÷ 43.89307 = $415.20 per month

**Sample 2: Class A, Class B (Early or Voluntary) or Class C Early Retirement**

Consider a COEU Member, who is not a divested member, who is in Benefit Group 4 and who retires with a Class B Voluntary pension in 2005 at age 55 and 10 months with 37 years and 1 month of Continuous Service.

*Normal Form - Installment Option payable to age 65*

As a result, the monthly RAP Benefit payable from current age to age 65 would be determined as follows:

*Step 1: Determine monthly RAP Benefit payable from age 55 to age 65:*

(A)  = RAP Rate x Continuous Service (years and months) x RTB factor payable for 41 RAP Months (Appendix B) ÷ ERS factor for 120 payments (Column 3 of Appendix C)

= ($25 x 1.450154) x 37 $^1/_{12}$ x 35.00751 ÷ 76.93937

= $611.71

(B)  = Additional RAP Rate x Continuous Service (years and months)

= (.981 x $11 x 1.450154) x 37 $^1/_{12}$

= $580.30

Sum of (A) and (B) = $611.71 + $580.30 = $1,192.01

*Step 2: Determine monthly RAP Benefit payable from age 56 to age 65:*

(A)  = RAP Rate x Continuous Service (years and months) x RTB factor payable for 41 RAP Months (Appendix B) ÷ ERS factor for 108 payments (Column 3 of Appendix C)

= ($25 x 1.450154) x 37 $^1/_{12}$ x 35.00751 ÷ 72.16938

= $652.14

(B)  = Additional RAP Rate x Continuous Service (years and months)

- 39 -

00463

$$= (.981 \times \$11 \times 1.450154) \times 37\,^1/_{12}$$
$$= \$580.30$$

Sum of (A) and (B) = $652.14 + $580.30 = $1,232.44

*Step 3: Determine monthly RAP Benefits payable from current age (age 55 and 10 months) to age 65 by interpolating the monthly RAP Benefits payable from age 55 and age 56.*

$$= 2/12 \times \$1,192.01 \text{ (from Step 1)} + 10/12 \times \$1,232.44 \text{ (from Step 2)}$$
$$= \$1,225.70$$

**Alternative Form - Lump Sum Option**

*Step 4: Determine the lump sum RAP Benefit*

The lump sum value is equal to the monthly RAP benefit calculated from above (Step 3), multiplied by an annuity certain factor to age 65 based on the current CIA non-indexed interest rates at the retirement date. Assume the current CIA non-indexed interest rate is 4.75% for the first 10 years and 5.75% thereafter, the lump sum RAP Benefit is determined as follows:

Monthly RAP Benefit from current age to age 65  (from Step 3) x  Monthy annuity certain factor (using CIA non-indexed interest rates) payable from current age to 65 (i.e. 110 monthly payments)

$$= \$1,225.70 \times 89.76957$$
$$= \$110,030.56$$

**Alternative Form – other installment options**

- 40 -

00464

Other payment periods up to the lesser of 180 monthly payments or the number of payments until age 69 are available. The monthly RAP Benefit payment under other payment period is based on the lump sum value (from Step 4) divided by the monthly annuity certain factor to the payment end date. Assume the current CIA non-indexed interest rate is 4.75% for the first 10 years and 5.75% thereafter, the monthly RAP Benefit payment payable for 50 monthly payments (i.e. payable until age 60) is determined as follows:

= Lump sum RAP benefit (from Step 4) divided by Monthly annuity certain factor (using CIA non-indexed interest rates) for 50 monthly payments

= $110,030.56 ÷ 45.55104

= $2,415.54

## Sample 3: Class E Early Retirement

Consider a CAW Member, who is not a divested member, who is in Benefit Group 3 and who retires in 2005 at age 55 and 3 months with 19 years and 8 months of Continuous and Pensionable Service. This Member would be eligible to retire as a Class E retirement only. Therefore, we have to determine when he would first become eligible for a Class A or Class B Voluntary pension, based on his actual Pensionable Service at retirement. He would be eligible for a Class A RAP Benefit at age 60 and 4 months. Therefore his monthly RAP Benefit at RAP eligible retirement age (i.e. age 60 and 4 months) would be determined as follows:

*Normal Form – Installment Option payable to age 65*

*Step 1: Determine monthly RAP Benefit at age 60 (RAP eligible retirement age based on completed years of age)*

(A)      = RAP rate x Continuous Service (years and months) x RTB factor payable for 15 RAP months ÷ ERS factor (payable from age 60 to 65)

= ($22 x 1.479371) x 19 $^8/_{12}$ x 14.17877 ÷ 47.67256

= $190.37

(B)      = Additional RAP Rate x Continuous Service (years and month)

= (.981 x $11 x 1.479371) x 19 $^8/_{12}$

- 41 -

00465

= $313.96

Sum of (A) + (B) = $190.37 + $313.96 = $504.33

*Step 2: Determine the monthly RAP Benefit at age 61 (RAP eligible retirement age based on completed years of age plus 1)*

    (A)    = RAP rate x Continuous Service (years and months) x RTB factor

             payable for 15 RAP months ÷ ERS factor (payable from age 61 to 65)

             = ($22 x 1.479371) x $19 \, ^8/_{12}$ x 14.17877 ÷ 39.90267

             = $227.44

    (B)    = Additional RAP Rate x Continuous Service (years and month)

             = (.981 x $11 x 1.479371) x $19 \, ^8/_{12}$

             = $313.96

Sum of (A) + (B) = $227.44 + $313.96 = $541.40

*Step 3: Determine the monthly RAP Benefit at RAP eligible retirement age (age 60 and 4 months) by interpolating the monthly RAP Benefits payable from age 60 and age 61*

= 8/12 x $504.33 (from Step 1) + 4/12 x $541.40 (from Step 2)

= $516.69

*Step 4: Determine the monthly RAP Benefit at current retirement age.*

The monthly RAP benefit payable at RAP eligible age must be discounted back to the Member's current age (i.e. age 55 and 3 months in this example) using current interest rates and further adjusted due to a longer payment period from 4 years and 8 months (i.e from RAP eligible age of age 60 and 4 months to 65) to 9 years and 9 months (i.e. from current age of age 55 and 3 months to 65).  Let's assume the current CIA non-indexed interest rate at retirement date is 4.75% for the first 10 years and 5.75% thereafter. As a result the monthly RAP Benefit payable from current age (age 55 and 3 months) would be determined as follows:

00466

Monthly RAP payable at RAP eligible retirement age to age 65 (determined under Step 3) x $(1/1.0475)^{61/12}$ x Monthly annuity certain factor (using CIA non-indexed interest rates) for 56 monthly payments, divided by Monthly annuity certain factor (using CIA non-indexed interest rates) for 117 monthly payments

= $516.69 x $(1/1.0475)^{61/12}$ x 50.44868 ÷ 94.29154

= $218.35 per month

### Alternative Form - Lump Sum Option

Assume the current CIA non-indexed interest rate is 4.75% for the first 10 years and 5.75% thereafter, the lump sum RAP Benefit payable from current age would be determined as follows:

Monthly RAP payable at current age (from Step 4) x

Monthly annuity certain factor (using CIA non-indexed interest rates) for 117 monthly payments

= $218.35 (from Step 4) x 94.29154

=$20,588.56

### Sample 4: Class E Early Retirement, eligible for RAP benefits between age 64 and 65

Consider a CAW Member, who is not a divested member, who is in Benefit Group 3 and also retires in 2005 at age 55 and 3 months with 15 years and 8 months of Continuous and Pensionable Service. This Member would be eligible to retire as a Class E retirement only. Therefore, we have to determine when he would first become eligible for a Class A pension, based on his actual Pensionable Service at retirement. He would be eligible for a Class A RAP Benefit at age 64 and 4 months. Therefore his monthly RAP Benefit at RAP eligibility age (i.e. age 64 and 4 months) would be determined as follows:

- 43 -

00467

**Step 1:** *Determine monthly RAP benefit at age 64*

(A)  = RAP rate x Continuous Service x RTB factor payable for 10 RAP

months ÷ ERS factor (payable from age 64 to 65)

= $22 x 1.479371 x 15 $^8/_{12}$ x 9.64332 ÷ 11.47965

= $428.33

(B)  = Additional RAP rate x Cont. Serv.

= .981 x $11 x 1.479371 x 15 $^8/_{12}$ = $250.10

Sum of (A) + (B) = $428.33 + $250.10 = $678.43

**Step 2:** *Determine Lump Sum RAP at age 65*

RAP Rate x Continuous Service x RAP months

= $22 x 1.479371 x 15 $^8/_{12}$ x 10 = $5,098.90

**Step 3:** *Determine Monthly RAP benefit payable from RAP eligible age 64 $^4/_{12}$ by (A) converting the monthly RAP at 64 into a value and then (B) interpolating with the age 65 value and then (C) converting back into a monthly pension*

(A)  Value of age 64 RAP

$678.43 x ERS Factor

$678.43 x 11.47965 = $7,788.14

(B)  Interpolation

$^8/_{12}$ x [$7,788.14] + $^4/_{12}$ [$5,098.90] = $6,891.73

(C)  To convert back to a monthly pension

use Appendix C:

TRA eligibility – Age 64 $^4/_{12}$ factor = 7.77687

Monthly TRA benefit = $6,891.73 ÷ 7.77687 = $886.18

**Step 4:** *Determine the monthly RAP at current retirement age*

(Same as Step 4 in Sample 3, based on 4.75%)

$(1./1.0475)^{109/12}$ = .6560459

Annuity factor for 8 months = 7.892758

Annuity factor for 117 months = 94.29154

- 44 -

00463

$886.18 x .6560459 x 7.892758 ÷ 94.29154
= $48.66 per month

00469

APPENDIX E

DIVESTITURES

| DIVESTITURE | EFFECTIVE DATE | KEY TERMS |
|---|---|---|
| Nordx/CDT | February 2, 1996 | • Nordx/CDT to pay full RAP for divested Nortel employees who are retiring from Nordx/CDT<br>• Nortel to reimburse Nordx/CDT for Nortel's portion of RAP payment provided that Nordx/CDT applies Nortel age and service requirements for eligibility that were in place on February 2, 1996.<br>• If benefit rate is increased after the Effective Date in respect of service prior to the Effective Date, the Plan is not assuming the cost of the increase |
| Expertech | May 26, 2000 | • Expertech to pay full RAP for divested Nortel employees who are retiring from Expertech<br>• Nortel to reimburse Expertech for Nortel's portion of the RAP payment<br>• If benefit rate is increased after the Effective Date in respect of service prior to the Effective Date, the Plan is not assuming the cost of the increase |
| Precision | March 3, 2000 | • Nortel responsible for paying its share of RAP Benefit directly to individual retiring from Precision<br>• If benefit rate is increased after the Effective Date in respect of service prior to the Effective Date, the Plan is not assuming the cost of the increase |
| Flextronics | February 1, 2005 | • Cumulative RAP increase will be based on the applicable RAP increase as of employment transfer date to the purchaser<br>• If benefit rate is increased after the Effective Date in respect of service prior to the Effective Date, the Plan is not assuming the cost of the increase |

- 46 -

00470

Certified to be a true and complete copy of the Nortel Networks Limited Retirement Allowance Plan as at January 1, 2004.


_____        _____
Signature                              Date


_____
Name (*please print*)


_____
Title


_____        _____
Signature                              Date


_____
Name (*please print*)


_____
Title

# APPENDIX "L"

00471

**APPENDIX "L"**
**SUMMARY OF PATENT AWARDS PROGRAM[1]**

The following is a summary of the patent awards program:

1.    The Patent Filing Award was:

    (a)    payable at the time of the filing of a first formal and complete application for a patent on an invention with a national, international or regional patent office;

    (b)    in the amount of US$1,350 or the equivalent amount in local currency for employee-inventors employed in countries other than the United States; and

    (c)    payable to each employee-inventor to a maximum of three inventors. However, where there were more than three eligible inventors, a total award of US$4,050 (or equivalent in local currency) was divided equally among all of the eligible inventors.

2.    The Patent Issuance Award was:

    (a)    payable at the time a first patent for an invention was issued by a patent office after a formal examination for patentability and other statutory requirements;

    (b)    in the amount of US$350 or the equivalent amount in local currency for employee-inventors employed in countries other than the United States; and

---

[1] Capitalized terms used but not otherwise defined herein have the meaning given to them in the Seventy-Fifth Report.

- 2 -

00472

(c)    payable to each employee-inventor to a maximum of three inventor. However, where there were more than three eligible inventors, a total award of US$1,050 (or equivalent in local currency) was divided equally among all of the eligible inventors.

3.    The Cumulative Patent Issuance Award, which was payable upon the following issuance of patents in the following amounts:

(a)    upon the issuance of the fifth patent to the employee-inventor – US$1,250 (or its equivalent in local currency);

(b)    upon the issuance of the tenth patent to the employee-inventor – US$2,500 (or its equivalent in local currency);

(c)    upon the issuance of the fifteenth patent to the employee-inventor – US$3,750 (or its equivalent in local currency); and

(d)    upon the issuance of the twentieth (or more, in increments of five) patent to the employee-inventor – US$5,000 (or its equivalent in local currency).

4.    To be eligible for a Patent Filing Award, Patent Issuance Award or Cumulative Patent Issuance Award (collectively, a "**Patent Award**"), an employee-inventor must:

(a)    have made the invention in respect of which the patent is filed or issued during his or her active employment with Nortel;[2]

---

[2] Or during his or her employment with a company acquired by Nortel upon completion of the acquisition, provided that the patent application was filed or the patent was issued on or after Nortel has publicly announced its intention to acquire such company and the invention is assigned to Nortel as part of the acquisition.

- 3 -                                                                00473

(b)    have still been in the employ of Nortel when the award became payable (the actual filing date in the case of a Patent Filing Award or the date of issue in the case of a Patent Issuance Award); and

(c)    notwithstanding (b) above:

    (i)    if, as a result of retirement or death, the employment with Nortel terminated prior to the date of patent issue, the Patent Filing Award and Patent Issuance Award was made to the employee-inventor or his or her estate, as the case may be; and

    (ii)    if, as a result of a workforce reduction or the divestiture of a business, the employment with Nortel terminated prior to the date of patent filing or patent issue, the Patent Filing Award was payable to the employee-inventor but he or she was not eligible for the Patent Issuance Award.

\6002903

# APPENDIX "M"

00474

APPENDIX "M"
### DIFFERENCES BETWEEN THE MERCER HWT REPORT AND THE MERCER 2011 NON-PENSION BENEFITS VALUATION

## POST RETIREMENT MEDICAL, DENTAL & LIFE INSURANCE BENEFITS

- **Income Tax/Administration Gross-Up** - the liability estimates presented in the Mercer 2011 Non-Pension Benefits Valuation reflect the agreed upon Income Tax Gross Up and Administrative Costs Gross Up not previously included in the Mercer HWT Report.
- **Discount Rate** - The discount rate assumption was changed for the Mercer 2011 Non-Pension Benefits Valuation based on the bond yields at the end of December 2010 instead of the bond yields at the end of July 2010 used for the Mercer HWT Report. The Mercer HWT Report used 3.70% per annum for 10 years and 5.10% per annum thereafter. The Mercer 2011 Non-Pension Benefits Valuation used 3.60% per annum for 10 years and 4.90% per annum thereafter.
- **Terminated Employees and Post-Filing Transferred Employees** - were included in the Mercer 2011 Non-Pension Benefits Valuation. These members were not included in the Mercer HWT Report.
- **Health Care Trend Rate (Provincial Non-BC Premium)** - The trend assumption has been removed off the RAMQ premium reimbursement, for Pensioners who reside in Quebec and have the RAMQ premium reimbursement as part of their benefit plan.
- **Out of Country Addresses** - For calculation of the Pensioner, Active Employee, LTD Beneficiaries, Terminated Employees, Post-Filing Transferred Employees Non-Pension Benefits liability if identified as residing outside of Canada, no liability for their medical/dental coverage has been included in the Mercer 2011 Non-Pension Benefits Valuation.
- **2011 Per Capita Claims Cost** - separate claims cost were developed for Pensioners and covered dependents in the Mercer 2011 Non-Pension Benefits Valuation along with updates to the aggregate claims and the number of covered Pensioners used in the development of the per capita claims cost.
- **Prescription Drug Offset At & After Age 65** – Mercer HWT Report used offset specific to individual's province. Mercer 2011 Non-Pension Benefits Valuation used a weighted average offset amount.
- **Plan Grandfathering for LTD Beneficiaries** - corrections to the post-retirement non-pension benefit plan applicable for grandfathered LTD Beneficiaries were reflected in the Mercer 2011 Non-Pension Benefits Valuation.
- **Pensioner Life** - Updates to the Pensioner Life amounts for LTD Beneficiaries and Pensioners were reflected in the Mercer 2011 Non-Pension Benefits Valuation.
- **Membership data** was updated from 8.31.2009 to 12.31.2010 based on known information in the Mercer 2011 Non-Pension Benefits Valuation.
- **Flextronics** - Pensioners identified as having been part of the Flextronics transaction have been removed from the Mercer 2011 Non-Pension Benefits Valuation.

00475

## BENEFITS PROVIDED TO LTD BENEFICIARIES

- **Income Tax/Administration Gross-Up** - the liability estimates presented in the Mercer 2011 Non-Pension Benefits Valuation reflect the agreed upon Income Tax Gross Up and Administrative Costs Gross Up not previously included in the Mercer HWT Report.
- **Discount Rate** - The discount rate assumption was changed for the Mercer 2011 Non-Pension Benefits Valuation based on the bond yields at the end of December 2010 instead of the bond yields at the end of July 2010 used for the Mercer HWT Report. The Mercer HWT Report used 3.70% per annum for 10 years and 5.10% per annum thereafter. The Mercer 2011 Non-Pension Benefits Valuation used 3.60% per annum for 10 years and 4.90% per annum thereafter.
- **COLA Rate** - The inflation rate assumption was changed for the Mercer 2011 Non-Pension Benefits Valuation based on the bond yields at the end of December 2010 instead of the bond yields at the end of July 2010 used for the Mercer HWT Report. The Mercer HWT Report used 60% of (1.66% per annum for 10 years and 2.49% per annum thereafter). The Mercer 2011 Non-Pension Benefits Valuation used 60% of (1.77% per annum for 10 years and 2.64% per annum thereafter).
- **Termination Rates (due to termination, mortality or recovery)** - table of rates vary by Quebec versus Non-Quebec. Blended Quebec/Non-Quebec rates are used in the valuations. The Mercer HWT Report assumed 11.99% Quebec and the Mercer 2011 Non-Pension Benefits Valuation assumed 15% Quebec. The updated percentage reflects closer distribution of the Nortel covered group based on the updated membership data.
- **LTD AD&D Benefit and LTD Dependent Life Benefit** - not valued in the Mercer HWT Report and now included in the Mercer 2011 Non-Pension Benefits Valuation.
- **BC MSP Premiums** - A liability estimate for reimbursement of the BC MSP premiums has now been included in the Mercer 2011 Non-Pension Benefits Valuation for LTD Beneficiaries who reside in BC.
- **Out of Country Addresses** - For LTD Beneficiaries identified as residing outside of Canada, no liability for their medical/dental coverage has been included in the Mercer 2011 Non-Pension Benefits Valuation.
- **Membership data** was updated from 6.30.2010 to 12.31.2010 based on known information in the Mercer 2011 Non-Pension Benefits Valuation.
- **LTD IBNR** - The liability included in the Mercer 2011 Non-Pension Benefits Valuation was for LTD Beneficiaries who were in receipt of an income benefit as at December 31, 2010. No liability was included in the Mercer 2011 Non-Pension Benefits Valuation for members whose LTD status was unresolved as at December 31, 2010. The Mercer HWT Report was based on membership data as at 6.30.2010 and therefore included a liability for 4 members on short-term disability and 2 members on LTD claims under appeal as at June 30, 2010.

## SURVIVOR BENEFITS

- **Income Tax/Administration Gross-Up** - the liability estimates presented in the Mercer 2011 Non-Pension Benefits Valuation reflect the agreed upon Income Tax Gross Up and Administrative Costs Gross Up not previously included in the Mercer HWT Report.
- **Discount Rate** - The discount rate assumption was changed for the Mercer 2011 Non-Pension Benefits Valuation based on the bond yields at the end of December 2010 instead

00476

of the bond yields at the end of July 2010 used for the Mercer HWT Report.  The Mercer HWT Report used 3.70% per annum for 10 years and 5.10% per annum thereafter.  The Mercer 2011 Non-Pension Benefits Valuation used 3.60% per annum for 10 years and 4.90% per annum thereafter.

- **Out of Country Addresses -** For beneficiaries identified as residing outside of Canada, no liability for their medical/dental coverage has been included in the Mercer 2011 Non-Pension Benefits Valuation.
- **Membership data** was updated from 6.30.2010 to 12.31.2010 based on known information in the Mercer 2011 Non-Pension Benefits Valuation.

\6003667

# APPENDIX "N"

| APPENDIX N | Form A - <NAME> <EEID> |

## Your Information Statement Package

00477

In the Matter of Nortel Canada CCAA Proceedings

Personal & Confidential

<NAME>                                          <SEQNO>
<ADDR1>
[*Variable print – ADDRPRT – for employees with a second address line*]
<<ADDR2>>
<CITY>, <PROV> <POSTAL>
<COUNTRY>

---

THIS DOCUMENT CONTAINS IMPORTANT LEGAL INFORMATION - YOU (OR YOUR AUHORIZED REPRESENTATIVE) MUST READ IT CAREFULLY AND REVIEW THE INFORMATION CONTAINED HEREIN.  YOU DO NOT NEED TO TAKE ANY ACTION IF THE INFORMATION IS CORRECT.  HOWEVER, IF CORRECTIONS ARE REQUIRED, YOU MUST TAKE THE ACTIONS BY **DECEMBER 23, 2011**.

---

As you know, Nortel Networks Limited, Nortel Networks Corporation, Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively "Nortel Canada") filed for protection under the *Companies' Creditors Arrangement Act* (CCAA) on January 14, 2009 and Ernst & Young Inc. was appointed as the Monitor. This package has been prepared with the input of your Court-appointed Representatives and your Court-appointed Representative Legal Counsel, as well as with the input of counsel to CAW-Canada. Capitalized terms not defined in this package are as defined in the 75th Report of the Monitor.

Assessing and valuing the losses that employees, former employees, pensioners and their survivors have experienced due to Nortel Canada's insolvency is a key step in the CCAA proceedings.  A claims process has been established for employment-related claims which is referred to as the "Compensation Claims Procedure" in the Court material.  This process, including the basis for calculating your employment-related claim ("Compensation Claim"), has been approved by the Ontario Superior Court of Justice (the "Court"). Unless otherwise stated, all monetary amounts contained in this package are expressed in Canadian dollars.

Nortel Canada's records indicate you have a Compensation Claim against Nortel Canada.  As set out in *Form A* and based on the personal information shown on *Form B* of this package, your aggregate Compensation Claim[1] against Nortel Canada is: CAD • and USD • less an amount owed to Nortel Canada of •<SOVCUR>.[2]

Since Nortel Canada is insolvent you will receive only a percentage of the full value of your Compensation Claim, in the form of one or more payments of money from the Nortel Canada estate.  At this point, the timing and the amount is not yet known, but you will receive further information during the claims process to keep you up to date.

If you need assistance with respect to this package, please refer to the contact information for your court-appointed Representative Legal Counsel at the end of this letter.

FORM A      <SEQNO>                                                                    1

Form A - <NAME> GEID #

**Note:**  This Compensation Claims Process does not include claims for **the funding deficits** in the registered pension plans.  Those claims have been made by the Administrator of the registered pension plan on behalf of all plan members.  Any payments on those claims will be paid to the registered pension plans and will ultimately benefit the plan members.  Any questions regarding your registered pension plans should be directed to Morneau Shepell Ltd. at: website: www.pensionwindups.morneausobeco.com, phone: Negotiated Plan: 1-877-392-2073, phone: Managerial Plan: 1-877-392-2074, email: nortelwindup@morneausobeco.com

[1]The total of all the payments that you receive from Nortel Canada will be reduced by payments made to you, if any, from the Hardship Fund.

*[Variable print – FOOTPRT13 – for employees with foreign overpayment]*
[2]Your Aggregate Compensation Claim Amount will be offset by the amount that you owe Nortel Canada.

*[Variable print – FOOTPRT1 – for employees with a severance claim]*
Your Base Severance Claim amount has been reduced by payments made to you, if any, from the Termination Fund.

*[Variable print – FOOTPRT2 – for employees with a non-pension claim]*
Your Compensation Claim will be reduced by any payments received from the Health & Welfare Trust.

*[Variable print – FOOTPRTN – For employees with negative claims – CDN Only]*
A negative claim value indicates that the amount that you owe to Nortel Canada exceeds the Compensation Claim calculated for you.

*[Variable print – FOOTPRTN – For employees with negative CDN claim and a USD claim]*
A negative claim value indicates that the amount that you owe to Nortel Canada exceeds the Canadian dollar claim calculated for you.  You may either: have a Compensation Claim if the negative CAD claim is offset by the USD claim; or owe an amount to Nortel Canada.