EXHIBIT C



**ALVAREZ & MARSAL**

600 Lexington Avenue, 6th Floor, New York, NY 10022
Phone: 212.759.4433 Fax: 212.759.6302
www.alvarezandmarsal.com

September 8, 2011

Official Committee of Retired Employees
c/o Albert Togut, Esq.
Togut, Segal & Segal, LLP
One Penn Plaza, Suite 3335
New York, New York
**Attention:** Gary R. Donahee, Chairman

Official Committee of Long-term Disability
Participants
c/o Rafael X. Zahralddin-Aravena, Esq.
Elliott Greenleaf
1105 Market Street, Suite 1700
Wilmington, Delaware 19801
**Attention:** Barbara Gallagher, Chairperson

Ladies and Gentlemen:

This letter agreement ("Agreement") confirms and sets forth the terms and conditions of the joint engagement of Alvarez & Marsal Healthcare Industry Group, LLC ("A&M") by the Official Committee of Retired Employees and the Official Committee of Long-Term Disability Participants (collectively, the "Committees") appointed in the chapter 11 bankruptcy case(s) of Nortel Networks Inc. ("NNI"), *et al* and its affiliated debtors (collectively, the "Debtors") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") to provide certain advisory services, as described below. We understand that this engagement is subject to Bankruptcy Court approval.

In connection therewith, you have requested us to provide the following professional services:

(1)    <u>Advisory Services</u>

In connection with this engagement, the Committees have requested that A&M provide the following services:

a.  Review and analysis of the Debtors' proposals to each of the Committees, including requesting and assessing any supporting information, including:

i.  Analyzing the financial impact of various scenarios including any underlying actuarial assumptions used or prepared by the Debtors as necessary;

ii.  Reviewing, to the extent relevant and necessary, the Debtors' allocation of asset sale proceeds to NNI in order to determine (x) the criteria and potential impact on the rights and obligations of the

Atlanta • Chicago • Dallas • Denver • Houston • Los Angeles • New York • Phoenix • San Francisco • Frankfurt • London • Paris • Hong Kong

Official Committee of Retired Employees
**Attention:** Gary R. Donahee, Chairman

Official Committee of Long-term Disability Participants
**Attention:**  Barbara Gallagher, Chairperson

September 8, 2011

Page 2

its retiree and long-term disability benefit obligations, including but not limited to, under the Nortel Networks, Inc. Retiree Medical Plan and the Nortel Networks, Inc. Retiree Life Insurance and Long-Term Care Plan for Retirees (together, the "Benefit Plans"), in each case to assist the Committees and their legal counsel to determine whether proposals by the Debtors to modify the Benefit Plans meet the applicable standards under section 1114 of the Bankruptcy Code;

b.  Work with each of the Committees and their legal counsel to ensure that alternatives that maximize retiree and long-term disability benefits under each of the Benefit Plans have been pursued including, but not limited to, assisting to contest any actions or efforts by the Debtors which may affect the rights and interest of the Committees and actions or efforts to modify or terminate benefits under either of the Benefit Plans without the mutual agreement of the Committees;

c.  Analyze both of the Benefit Plans and the underlying assumptions used by the Debtors to determine the true economic costs of those plans;

d.  Compare the pre & post-proposal benefits offered to constituents of each of the Committees to those that have been offered to other relevant parties, including current (remaining) employees, management, etc., and determine the following:

— Absolute and relative economic value to the parties prior to the proposed changes;
— Absolute and relative economic value to the parties with the proposed changes;  and
— The degree to which the proposed changes alter the relative/proportional economic value received by each party;

e.  Conduct a financial review of proposed solutions against appropriate legislation and tax considerations to optimize economic value for the constituents of each of the Committees;

f.  Participate and assist in meetings and negotiations with the Debtors, their advisors and counsel, including meetings and negotiations regarding any



ALVAREZ & MARSAL

Official Committee of Retired Employees
<u>Attention</u>: Gary R. Donahee, Chairman

Official Committee of Long-term Disability Participants
<u>Attention</u>: Barbara Gallagher, Chairperson

September 8, 2011

Page 3

proposed terminations or modifications of either of the Benefit Plans, all underlying assumptions, and supporting information;

g.  Providing expert testimony on related matters, as appropriate; and

h.  Such other consulting or such other assistance as either of the Committees or their counsel may deem necessary.

(2)    <u>Fees and Expenses</u>

A&M will receive fees based on hourly rates as follows:

| A&M Professionals | Hourly Rates | | |
|---|---|---|---|
| Managing Directors / Senior Advisors | $550 | – | $825 |
| Managers / Directors / Senior Directors | $375 | – | $550 |
| Associates / Senior Associates: | $275 | – | $375 |
| Analysts | $200 | – | $275 |

Ronald Winters, a Managing Director at A&M will be responsible for the overall engagement including the services of other A&M professionals and contractors. Additionally Bettina Whyte, a Managing Director at A&M will serve as Senior Advisor on the engagement. Mr. Winters's and Ms. Whyte's billing rates are $650 and $825 per hour, respectively.

In connection with the actuarial services to be provided hereunder, from time to time A&M may utilize the services of Vincent L. Bodnar, ASA, MAAA ("Bodnar"), a principal and consulting actuary with DaVinci Consulting Group, LLC ("DaVinci"), an actuarial consulting firm, as a subcontractor to perform a portion of the services described hereunder. DaVinci's fees and expenses will be included with requests for fees and expenses by A&M without any mark-up or profit to A&M on account of such fees and expenses. Bodnar's hourly rate is $475 per hour. In addition, from time to time, A&M may utilize the services of employees of its affiliates. Such affiliates are wholly owned by A&M's parent company and employees. A&M personnel providing services to the Committee may also work with other A&M clients in conjunction with unrelated matters.

ALVAREZ & MARSAL

Official Committee of Retired Employees
**Attention:** Gary R. Donahee, Chairman

Official Committee of Long-term Disability Participants
**Attention:** Barbara Gallagher, Chairperson

September 8, 2011

Page 4

In addition, A&M will be reimbursed for its reasonable out-of-pocket expenses (which shall be charged at cost) incurred in connection with this engagement, such as travel, lodging, duplicating, research, messenger and telephone charges. In addition, A&M shall be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the preparation, approval and enforcement of this Agreement.

We will submit to the Bankruptcy Court, the Debtors, each of the Committees, and the Official Committee of Unsecured Creditors monthly fee applications for all services rendered and expenses incurred during the prior month, as well as interim and final fee applications. It is our understanding that all invoices will be paid by the Debtors, subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and pursuant to any additional procedures that may be established by the Bankruptcy Court in the Debtors' case. We acknowledge that neither of the Committees nor any of their respective individual members shall have any obligation to pay our fees and expenses, costs, damages, or other liabilities in connection with this engagement.

(3)    <u>Term</u>

The term of A&M's engagement hereunder shall commence on the date hereof and may be terminated by either A&M or the Committee, upon entry of an order of the Bankruptcy Court after notice and a hearing; <u>provided,</u> however, that no such termination shall affect the right of A&M to receive any fees and reimbursement of out-of-pocket expenses that have accrued prior to such termination. A&M normally does not withdraw from an engagement unless the Committee misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue to represent the Committee, or unless other just cause exists.

(4)    <u>Access to Information / Other Issues</u>

It is understood that A&M is not being requested to perform an audit and that A&M is entitled to rely on the accuracy and validity of the data disclosed to A&M or supplied to A&M by or on behalf of employees and representatives of the Debtors or the Committees. A&M is not updating, nor


ALVAREZ & MARSAL

Official Committee of Retired Employees
**Attention:** Gary R. Donahee, Chairman

Official Committee of Long-term Disability Participants
**Attention:** Barbara Gallagher, Chairperson

September 8, 2011

Page 5

is A&M under any obligation to, update data submitted to A&M or review any other areas unless specifically requested to do so.

The Committees understand that the services to be rendered may include a review and assessment or preparation of projections and other forward looking statements and that numerous factors can affect the actual results of the Debtors' operations, which may materially and adversely differ from those projections and other forward looking statements.

The Committees acknowledge that A&M's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

(5)   Conflicts

A&M is not currently aware of any relationship that would create a conflict of interest with the members of either of the Committees or those parties-in-interest of which you have made us aware. Because A&M is part of a consulting firm that serves clients on an international basis in numerous cases, both in and out of court, it is possible that A&M may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Committees and the Committee Members. In the event you accept the terms of this engagement, A&M will not represent, and A&M has not represented, the interests of any such entities or people in connection with this matter. In A&M's declarations attached to the Committees' application for authority to retain A&M, A&M and DaVinci will include required relationship disclosures with parties-in-interest to the case as well as the following which we wish to call to your attention but do not believe present a conflict of interest:

1) A&M's affiliate currently holds a general unsecured claim against the Debtors on account of pre-petition business consulting services provided. This claim is in the process of being transferred to a third party and A&M will not exercise any interest thereon; and

2) In 2009, A&M's affiliates advised a noteholder of the Debtors regarding matters relating to the Debtors. Such engagement is complete, no personnel that provided such services will work on this engagement nor does A&M believe that the matters in which its



ALVAREZ & MARSAL

Official Committee of Retired Employees
**Attention:** Gary R. Donahee, Chairman

Official Committee of Long-term Disability Participants
**Attention:** Barbara Gallagher, Chairperson

September 8, 2011

Page 6

affiliates provided such services have any relation to the matters in
which A&M is advising the Committee hereunder.

(6)    Confidential Information

We recognize and acknowledge that certain information and documentation
which we may receive in connection with our engagement is proprietary and
confidential, including, without limitation, nonpublic financial and business
information and documents hereafter furnished to us by the Debtors or by the
Committees. By signing this Agreement, we confirm and agree that A&M
shall be subject to and comply with all orders of the Bankruptcy Court and
Bylaws of each of the Committees concerning the maintenance and protection
of confidential information, and that A&M will not, without the prior consent
of the Committees, disclose, distribute, publish or release to any third party
(excluding counsel and the Committees or their members) any nonpublic
information or documents now or hereafter received or obtained by us in this
engagement, except as required by law, subpoena, or other process and as to
which we will, if possible, provide the Debtors and the Committees prior
notice. All obligations as to non-disclosure shall cease as to any part of such
information to the extent that such information is or becomes public other
than as a result of acts by us.

(7)    No Third Party Beneficiary

The Committees acknowledge that all advice (written or oral) provided by
A&M to each of the Committees in connection with this engagement is
intended solely for the benefit and use of each of the Committees to which
such advice is given in considering the matters to which this engagement
relates. The Committees each agree that no such advice shall be used for any
other purpose or reproduced, disseminated, quoted or referred to at any time
in any manner or for any purpose other than accomplishing the tasks referred
to herein without A&M's prior approval (which shall not be unreasonably
withheld), except as required by law.

ALVAREZ & MARSAL

Official Committee of Retired Employees
<u>Attention</u>: Gary R. Donahee, Chairman

Official Committee of Long-term Disability Participants
<u>Attention</u>: Barbara Gallagher, Chairperson

September 8, 2011

Page 7

As to the services that the Committees have requested and A&M has agreed to provide as set forth in this Agreement, the total aggregate liability of A&M under this Agreement to the Committees and their successors and assigns, shall be limited to the actual damages incurred by the Committee that is asserting a claim for damages or its successors or assigns, respectively. In no event will A&M or any of its affiliates be liable to either of the Committees or their successors or assigns for consequential, special or punitive damages, including loss of profit, data, business or goodwill.

In no event shall A&M incur any liability to the Debtors (including their estates), their successors and assigns. Further, in no event shall the total aggregate liability of A&M under this Agreement to the Committees, the Debtors and their successors and assigns, exceed the total amount of fees received and retained by A&M hereunder.

Notwithstanding the foregoing, the Debtors acknowledge that A&M, as advisor to the Committees, is not providing any services to the Debtors and accordingly owes no duty to the Debtors.

(9)     <u>Certain Acknowledgements/ Indemnification</u>

The Debtors acknowledge and agree that the reports and any oral advice A&M may give are solely for the benefit of the Committee to which such reports and oral advise is given and that no other party other than retained professionals for each of the Committees, is entitled to receive or rely on such reports or advice.

The attached indemnification agreement is incorporated herein by reference and shall be executed by the parties upon the acceptance of this Agreement. Termination of this engagement shall not affect any of these indemnification provisions, which shall remain in full force and effect.

(10)    <u>Non-Solicitation</u>

The Committees, on behalf of their members, and the Debtors agree that, until two years subsequent to termination of this engagement, they will not solicit, recruit or hire any employee of A&M or its affiliates, while employed by A&M or its affiliates, who worked on this engagement ("Solicited Person"). Should a party extend an offer of employment to or otherwise engage any



ALVAREZ & MARSAL

Official Committee of Retired Employees
**Attention:** Gary R. Donahee, Chairman

Official Committee of Long-term Disability Participants
**Attention:** Barbara Gallagher, Chairperson

September 8, 2011

Page 8

A&M or its affiliates, who worked on this engagement ("Solicited Person"). Should a party extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the party extending such offer equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The fee shall be payable to A&M by the party breaching this provision at the time of the Solicited Person's acceptance of employment or engagement.

(11)    Miscellaneous

This Agreement (a) shall be governed and construed in accordance with the laws of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter hereof; and (c) may not be amended or modified except in writing executed by the parties hereto and an Order of the Bankruptcy Court (not including the Debtors; provided that the Debtors' obligations under paragraphs 2, 4, 9-11 hereof may not be modified without their consent). Each of the parties hereto (including the Debtors) agrees (a) to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of A&M hereunder; (b) that, the Bankruptcy Court shall have exclusive original jurisdiction over any litigation arising out of this Agreement; (c) to submit to the personal jurisdiction of the Bankruptcy Court; and (d) waives any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of Delaware for any litigation arising in connection with this Agreement.
Notwithstanding anything herein to the contrary, A&M may reference or list the Committee's name and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website.

*Please turn to following page*

ALVAREZ & MARSAL

Official Committee of Retired Employees
<u>Attention:</u> Gary R. Donahee, Chairman

Official Committee of Long-term Disability Participants
<u>Attention:</u>  Barbara Gallagher, Chairperson

September 8, 2011

Page 9

Please sign and return a copy of this engagement letter signifying your agreement with
the terms and provisions herein.

Very truly yours,

Alvarez & Marsal Healthcare Industry Group, LLC


By:  _____
Ronald M. Winters
Managing Director

Accepted & Agreed
OFFICIAL COMMITTEE OF RETIRED EMPLOYEES
For Nortel Networks, Inc. and affiliated debtors

By:  _____
Chairperson

OFFICIAL COMMITTEE OF LONG-TERM DISABILITY PARTICIPANTS
For Nortel Networks, Inc. and affiliated debtors

By:  _____
Chairperson

ALVAREZ & MARSAL

## INDEMNIFICATION AGREEMENT

This indemnity is made part of an agreement, dated September 8, 2011 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement") among Alvarez & Marsal Healthcare Industry Group, LLC ("A&M"), Nortel Networks Inc. and its affiliated chapter 11 debtors (collectively, the "Debtors") and the Official Committee of Retired Employees and Official Committee of Long-term Disability Participants appointed in the Debtors' cases (together, the "Committees"), for services to be rendered to the Committees by A&M.

A.    The Debtors agree to indemnify and hold harmless each of A&M, its affiliates and their respective members, managers, shareholders, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this agreement ("Agreement") (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Committees also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Committees for or in connection with the engagement of A&M, except to the extent for any such liability for losses, claims, damages, liabilities or expenses that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Debtors and the Committees further agree that they will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.    These indemnification provisions shall be in addition to any liability which the Debtors or the Committees may otherwise have to the Indemnified Parties.

C.    If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Debtors with reasonable promptness; provided, however, that any failure by such Indemnified Party to

notify the Debtors will not relieve the Debtors from their obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action. The Debtors shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefore, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Debtors hereby accept its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore. If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Debtors, the Debtors may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Debtors, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Debtors such counsel is unable to represent both the Indemnified Party and the Debtors then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Debtors shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefore. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Debtors will be liable for any settlement of any claim against an Indemnified Party made with the Debtors' written consent, which consent shall not be unreasonably withheld.

D.    In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Debtors, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.    The Debtors will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.  Neither termination of the Agreement nor termination of A&M's engagement (nor the conversion of the Debtors' chapter 11 case to a chapter 7 case) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.  For the avoidance of doubt, nothing herein (including, without limitation, the Debtors' acceptance and acknowledgement of the Agreement) shall in any way limit the right of the Debtors to object to any interim or final fee application filed by A&M (including any request for the reimbursement of expenses) on any grounds provided for under the Bankruptcy Code (including, without limitation, the reasonableness standard provided for in section 330 thereof), the Bankruptcy Rules, or any Local Rules or Orders of the Court (including, without limitation, the Court's Order Pursuant to Section 1114 of the Bankruptcy Code Appointing an Official Committee of Retired Employees [D.I. 5783] and the Order Appointing an Official Committee of Long-Term Disability Participants [D.I. 5790]).

Acknowledged and Agreed                          Alvarez & Marsal Healthcare Industry Group,
Nortel Networks Inc., debtor in possession       LLC
For itself, and its affiliated debtors


By: _____                    By: _____
    Name: _____                          Ronald M. Winters
    Title: _____                          Managing Director

Accepted & Agreed
OFFICIAL COMMITTEE OF RETIRED EMPLOYEES
For Nortel Networks, Inc. and affiliated debtors



By: _____
    Chairperson

Official Committee of Long-Term Disability Participants
For Nortel Networks, Inc. and affiliated debtors



By: _____
    Chairperson

-3-

F.    Neither termination of the Agreement nor termination of A&M's engagement (nor the conversion of the Debtors' chapter 11 case to a chapter 7 case) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.    For the avoidance of doubt, nothing herein (including, without limitation, the Debtors' acceptance and acknowledgement of the Agreement) shall in any way limit the right of the Debtors to object to any interim or final fee application filed by A&M (including any request for the reimbursement of expenses) on any grounds provided for under the Bankruptcy Code (including, without limitation, the reasonableness standard provided for in section 330 thereof), the Bankruptcy Rules, or any Local Rules or Orders of the Court (including, without limitation, the Court's Order Pursuant to Section 1114 of the Bankruptcy Code Appointing an Official Committee of Retired Employees [D.I. 5783] and the Order Appointing an Official Committee of Long-Term Disability Participants [D.I. 5790]).

Acknowledged and Agreed                            Alvarez & Marsal Healthcare Industry Group,
Nortel Networks Inc., debtor in possession          LLC
For itself, and its affiliated debtors


                                                   By: _____
By: _____                 Ronald M. Winters
       Name:                                           Managing Director
       Title:

Accepted & Agreed
OFFICIAL COMMITTEE OF RETIRED EMPLOYEES
For Nortel Networks, Inc. and affiliated debtors


By: _____
       Chairperson

Official Committee of Long-Term Disability Participants
For Nortel Networks, Inc. and affiliated debtors


By: _____
       Chairperson


-3-