```
              IN THE UNITED STATES BANKRUPTCY COURT
                 FOR THE DISTRICT OF DELAWARE


IN RE:                         )    Case No. 09-10138
                               )    (Jointly Administered)
                               )
NORTEL NETWORKS, INC.,         )    Chapter 11
                               )    Courtroom
          et al.,              )
                               )    824 Market Street
          Debtors.            )    Wilmington, Delaware
                               )
                               )    October 14, 2011
                               )    9:00 a.m.



                    TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE KEVIN GROSS
                 UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtor:                    Morris, Nichols, Arsht & Tunnell
                               BY: ANN CORDO, ESQ.
                               BY: DEREK ABBOTT, ESQ.
                               1201 North Market Street
                               18th Floor
                               Wilmington, DE 19899-1347
                               (302) 351-9459


                               Cleary Gottlieb Steen & Hamilton
                               BY: LISA SCHWEITZER, ESQ.
                               BY: HOWARD ZELBO, ESQ.
                               BY: DEBORAH BUELL, ESQ.
                               BY: LUKE BAREFOOT, ESQ.
                               One Liberty Plaza
                               New York, NY  10006
                               (212) 225-2629


ECRO:                          GINGER MACE

Transcription Service:         DIAZ DATA SERVICES
                               331 Schuylkill Street
                               Harrisburg, Pennsylvania 17110
                               (717) 233-6664
                               www.diazdata.com



Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

```
APPEARANCES:
(Continued)

For Unsecured Creditors'
Committee:                      Akin Gump
                                BY: ABID QUERSHI, ESQ.
                                BY: FRED HODARA, ESQ.
                                One Bryant Park
                                New York, NY 10036
                                (212) 872-1000

                                Richards Layton & Finger
                                BY: CHRIS SAMIS, ESQ.
                                One Rodney Square
                                920 North King Street
                                Wilmington, DE  19801
                                (302) 651-7531

For EMEA Debtors:               Young Conaway Stargatt &
                                Taylor, LLP
                                BY: JOHN DORSEY, ESQ.
                                BY: EDWIN HARON, ESQ.
                                The Brandywine Building
                                1000 West Street, 17th Floor
                                Wilmington, DE  19801
                                (302) 571-6703

                                Hughes Hubbard & Reed, LLP
                                BY: ASHLEY LAURIE, ESQ.
                                BY: MICHAEL LUSKIN, ESQ.
                                BY: DEREK J.T. ADLER, ESQ.
                                One Battery Park Plaza
                                New York, NY  10004-1482
                                (212) 837-6086

                                Herbert Smith
                                BY: KEVIN LLOYD,ESQ.
                                BY: RICHARD LAWTON, ESQ.
                                BY: JOHN WHITEOAK, ESQ.
                                Exchange House
                                Primrose Street
                                London EC2A 2ST
                                United Kingdom

For Bondholder Group:           Millbank Tweed
                                BY: THOMAS R. KRELLER, ESQ
                                601 South Figueroa Street
                                30th Floor
                                Los Angeles, CA  90017
                                (213) 892-4463
```

```
APPEARANCES:
(Continued)

For UK Pension Claimants:      Bayard, PA
                               BY: JUSTIN R. ALBERTO, ESQ.
                               222 Delaware Ave., Ste. 900
                               Wilmington, DE  19899
                               (302) 429-4226

                               Wilkie Farr & Gallagher, LLP
                               BY: BRIAN E. O'CONNOR, ESQ.
                               787 Seventh Avenue
                               New York, NY  10019-6099
                               (212) 728-8251

TELEPHONIC APPEARANCES:

For Barclay's Capital, Inc.:   Barclays Capital, Inc.
                               BY: OLIVIA MAURO
                               (212) 412-6773

For Hondo Sen:                 Cetus Capital
                               BY: HONDO SEN
                               (203) 552-3528

For Joint Administrators
To the Foreign Debtors:        Herbert Smith
                               BY: CHRIS HILL, ESQ.
                               (302) 571-6710

For Trustee of Nortel
Network UK Pension Plan:       Wilkie Farr & Gallagher, LLP
                               BY: SAMEER ADVANI, ESQ.
                               (212)728-3593
                               BY: WESTON T. EGUCHI, ESQ.
                               (212) 728-8881

For Dax Atkinson:              Carval Investors
                               BY: DAX ATKINSON, ESQ.
                               (952) 984-3202

For Monitor, Ernst & Young:    Ernst & Young
                               BY: BRENT BEEKENKAMP, ESQ
                               (416) 943-2652

                               Norton Rose OR LLP
                               BY: JENNIFER STAM, ESQ.

                               Allen & Overy, LLP
                               BY: LISA KRAIDIN, ESQ.
                               (212) 610-7300
```

TELEPHONIC APPEARANCES:
(Continued)

For Solus LP:                    Solus LP
                                 BY: STEPHEN BLAUNER, ESQ.
                                 (212) 373-1562

For PSAM:                        PSAM, LP
                                 BY: PHILIP E. BROWN, ESQ.
                                 (212) 649-9596

For Debtor:                      Cleary Gottlieb Steen &
                                 Hamilton
                                 BY: MEGAN FLEMING-DE LA CRUZ,
                                 ESQ.
                                 (212)225-2108

                                 Chilmark Partners
                                 BY: MICHAEL J. KENNEDY, ESQ.
                                 BY: MITTHEW ROSENBERG, ESQ.
                                 (312) 984-9711

For Oliver Butt:                 JPMorgan Chase & Co.
                                 BY: OLIVER BUTT, ESQ.
                                 (212) 270-3228

For Macquarie Bank:              Macquarie Bank
                                 BY: SUSAN S. CHEN, ESQ.
                                 (212) 231-2386

For Halcyon Asset Management:    Halcyon Asset Management
                                 BY: ANDREW G. FRIEDMAN, ESQ.
                                 (212) 303-9444

For Chicago Fundamental
Investment Partners:             Chicago Fundamental Investment
                                 BY: PETER GRUSZKA, ESQ.
                                 (312) 416-4215

For Nortel Networks UK:          Lax O'Sullivan Scott & Lisus
                                 BY: MATTHEW GOTTLIEB, ESQ.
                                 (416) 598-1744

For Tibita P:                    DebtWire
                                 BY: TIBITA P. KANEENE, ESQ.
                                 (212) 500-1383

For Monarch Alternative
Capital LP:                      Monarch Alternative Capital LP
                                 BY: MICHAEL J. KELLY, ESQ.
                                 (212) 554-1760

TELEPHONIC APPEARANCES:
(Continued)

For Ad Hoc Committee:              Milbank Tweed Hadley & McCloy
                                   BY: MELANIE A. MCLAUGHLIN,
                                   ESQ.
                                   (212) 530-5327

For Interested Party:              Goldman Sachs
                                   BY: PHILIP PALONE, ESQ.
                                   (212) 902-1316

For Interested Party:              Avenue Capital
                                   BY: AMIT P. PATEL, ESQ.
                                   (212) 850-7585

For Interested Party:              Aristeia Capital
                                   BY: STEVEN ROBINSON, ESQ.
                                   (212) 842-1961

For Creditor:                      USB Securities, LLC
                                   BY: DENNIS RUGGERE, ESQ.
                                   (203) 719-7875

For Interested Party:              Davies Ward Phillips &
                                   Vineberg, LLP
                                   BY: ROBIN SCHWILL, ESQ.
                                   (416) 863-5502

For Official Committee
of Retirees:                       Togut Segal & Segal, LLP
                                   BY: LARA R. SHEIKH, ESQ.
                                   (212) 201-6582

For CITI:                          CITI
                                   BY: REBECCA SONG, ESQ.
                                   (212) 230-4510

For Debtor, Nortel Networks
Corporation and Nortel
Networks Limited:                  Norton Rose OR LLP
                                   BY: RUTH WAHL, ESQ.
                                   (416) 216-3910

For Creditor:                      Aurelius Capital Management LP
                                   BY: MATTHEW A. ZLOTO, ESQ.
                                   (646) 445-6518

1  *WILMINGTON, DELAWARE, FRIDAY, OCTOBER 14, 2011, 9:07 A.M.*

2          THE COURT:  Good morning, everyone.  Thank you

3  and please be seated.  This is a much anticipated argument

4  of course and Mr. Abbott, good morning.

5          MR. ABBOTT:  Good morning, Your Honor.  Derek

6  Abbott here on behalf of the Nortel debtors.

7          Your Honor has the notice agenda and obviously we

8  had our scheduling call the other day.

9          THE COURT:  Yes.

10          MR. ABBOTT:  So I think we know generally what's

11  ahead.  As you'll recall, Your Honor, Mr. Zelbo from Cleary,

12  I think will lead off.  Mr. Barefoot is going to participate

13  in the auction and Mr. Qureshi from the U.S. debtor

14  committee estate side, if you will.

15          THE COURT:  Yes.

16          MR. ABBOTT:  And so without further adieu, Your

17  Honor, I will turn the podium over to Mr. Zelbo.

18          THE COURT:  All right, thank you.  Good morning.

19  It's good to see you.

20          MR. ZELBO:  Good to see you, Your Honor.

21          THE COURT:  And I will say in advance that I have

22  read the papers exhaustively, and I'm prepared for the

23  argument, but my intention is largely to listen because I

24  know you've all prepared your arguments very carefully.  I'm

25  anxious to hear those arguments and I'm going to save

1  questions for the end so that you have an opportunity to

2  just tell me everything that you would like to.

3          MR. ZELBO:  Thank you, Your Honor.  And we do

4  greatly appreciate it.  I think I can say that of all

5  parties you making the time for us today and also reading

6  all the papers.

7          THE COURT:  Yes.

8          MR. ZELBO:  I'm sure that took quite some time.

9          THE COURT:  It did.

10  (Laughter)

11          THE COURT:  And I enjoyed it because they were

12  brilliantly prepared, they really were.

13          MR. ZELBO:  Your Honor, as Mr. Abbott just said

14  I'm Howard Zelbo from Cleary Gottlieb representing Nortel

15  Networks, Inc., which I'll be referring to as NNI --

16          THE COURT:  Okay.

17          MR. ZELBO:  -- and its affiliated debtors.  Now

18  as Your Honor is aware, the U.S. debtors and the unsecured

19  creditors' committee have jointly brought three pending

20  motions to dismiss, which are scheduled to be heard today.

21          First, a motion to dismiss a claim against NNI

22  brought by the joint administrators on behalf of NNUK.

23          Second, a motion to dismiss the claims against

24  NNI brought by the joint administrators on behalf of NN

25  Ireland.

1              THE COURT:  Yes.

2              MR. ZELBO:  And thirdly, a motion to dismiss the

3    duplicative claims brought by both the joint administrators

4    and the French liquidator on behalf of NNSA which is the

5    Nortel French affiliate of NNI.

6              Now as set forth in our briefs, the claims

7    brought on behalf of NNUK, NN Ireland, and NNSA all fail as

8    a matter of the governing substances of law, as well as,

9    settled U.S. pleading standards.

10             In all three amended proofs of claims, they're

11   based on an implausible on its face premise that NNI, a mere

12   sister company of NNUK, NN Ireland, and NNSA had the ability

13   to, and did, control the board members of those European

14   entities and caused the actual board members of those

15   companies to abdicate their fiduciary duties.

16             Now notably, with the exception of one allegation

17   that I'll talk about later that wouldn't pass muster under

18   any pleading standard, no matter how lenient, the joint

19   administrators do not and cannot allege that NNI benefited

20   in any way from anything they allege occurred here.

21             Now just to simplify this, I think the best way

22   to look at this is that there are really four steps of

23   transactions.  The first is transfer pricing and contingent

24   tax claims.  In our briefs, we broke out contingent tax

25   claims.

1          THE COURT:  Yes.

2          MR. ZELBO:  The more I thought about it, since

3   they're really based on transfer pricing, it's best to

4   consider those together.  Secondly, there's Project Swift, a

5   transaction which NNI was not a party to.  Intercompany

6   loans and to be clear here, the intercompany loans that are

7   being discussed are loans between the Canadian parent, NNL

8   and/or NNUK, NN Ireland, NN France, NNSA, excuse me.  NNI is

9   not alleged to be a party to those transactions.

10          The fourth category is prepetition asset sales.

11   I'm not going to spend a lot of time on those.  As a

12   practical matter, the allegations there are almost non-

13   existent.  We'll deal with that later, but I don't think

14   that's really a transaction that needs to be spent -- have

15   too much time spent on it.

16          And there's no question they're not alleging NNI

17   benefited.  And, in fact, the entire theme, the entire theme

18   of their proofs of claim is that there was a so called cash

19   to Canada strategy.  The proofs of claim do not allege a

20   cash to America strategy.

21          Now at the outset, the factual claims that the

22   joint administrators make are all refuted by sworn

23   declarations that the joint administrators twice provide to

24   this Court in support of applications for Chapter 15

25   recognition.  These direct -- these allegations were from

1   directors and senior officers of the Nortel European

2   affiliates of NNI.  These were people who had actual

3   contemporaneous knowledge of what happened and they affirmed

4   under oath that the European Nortel entities including the

5   entities at issue here were controlled on both a strategic

6   and operational level by NNUK.  And specifically with

7   respect to tax and treasury matters that are at the heart of

8   all of these proofs of claims that we're discussing today.

9   Judicial estoppel precludes most of the claims including all

10  of the claims for breach of fiduciary duty.

11          Now there are two particularly striking aspects

12  of the joint administrator's response in the motions that I

13  want to mention right at the outset in this introduction.

14          First, and this important, that the joint

15  administrators, with respect to all of these motions, are

16  asking this Court to expand existing foreign law beyond what

17  any foreign Court has ever done in any of these

18  jurisdictions.

19          Let's take English law first.  There's no dispute

20  that no English Court has ever found a company in a

21  corporate group to be either a de facto or shadow director

22  of its sister corporation.  And of course that make sense,

23  for the reasons I mentioned at the outset because why would

24  a sister corporation be able to control another sister

25  corporation?

1                At his deposition, we asked NNUK's English law

2     expert whether he was aware of any such case and he candidly

3     said no.  Now to combat this, what does NNUK say?  They say

4     well sure, no English Court has ever done this, but it

5     doesn't mean they can't.  It's possible.  There's not -- it

6     doesn't mean they can't.  Maybe so.  Maybe so, but we think

7     it is very, very significant that in the over 170 years

8     since the wonderfully named jurist, Sir Lancelot Shadwell --

9     (Laughter)

10               MR. ZELBO:  -- first announced, under English

11    law, the concept of de factor director.  In 170 years, since

12    1840 when he first announced that concept, no English Court

13    has ever done what they are asking this Court to now do.

14               You're going to hear a lot of discussion, I

15    suspect with respect to what's the test for de facto

16    director and what's the test for shadow.  It's not that

17    complicated.  The test for de facto directorship is whether

18    the defendant performed functions in relation to the other

19    company which could only be properly performed by that -- by

20    a director of that company.  In other words, if you acted as

21    a director on equal footing with the de jure directors.  The

22    test for shadow director is whether the defendant gave

23    instructions to the de jure directors of the company in

24    question, and whether those directors were accustomed to act

25    in accordance with those instructions.

1             And, in addition, under English law, and there

2    will be a lot of debate about this, but I don't think your

3    Court's -- the Court's going to need to reach this issue.

4    On shadow director, shadow directors do not owe fiduciary

5    duties.  I think it's quite clear they haven't adequately

6    pled a shadow directorship.  Full stop, we can end there.

7    But even if they had, the breach of fiduciary duty claims

8    would fail because shadow directors don't have fiduciary

9    duties.

10            Now you may, I'm guessing, hear a lot from NNUK

11   about a November 2010 decision by the English Supreme Court,

12   *Holland* case.  And they're going to try to tell you well

13   *Holland*, you know, overruled all the cases we rely on and

14   basically the test is now, are the facts alleged sufficient

15   to impose a fiduciary duty?  In other words, they read that

16   to mean, you know, one of my favorite songs, anything goes.

17   Okay?  That's not English law.  Yes, it's true the question

18   is, are there sufficient facts alleged to impose fiduciary

19   duty.  But the English Courts give guidance, otherwise it's

20   completely circular and meaningless.  And the English Courts

21   do give guidance.  And the tests I just referred to are the

22   tests referred as the English Court, by the English Courts

23   none of which were purported to be or were overruled by

24   *Holland.*

25            In fact, Your Honor, the test that I just

1  mentioned was very straightforward tests, are the exact

2  tests set forth by NNUK in its proof of claim in Paragraph

3  88.  A proof of claim that was filed well after the *Holland*

4  decision.  They didn't think *Holland* overruled these tests

5  when they filed their proof of claim.

6          To give another example under English law of how

7  NNUK's trying to expand.  There's no dispute under English

8  law that there's no duty of care.  You can't sue for

9  economic loss for duty of care because there is no duty of

10 care between entities absent a special relationship, unique

11 circumstance is not present here.  That is the law.  What

12 their English law expert comes back and says is well the

13 law's expanding, has been expanding for the last 20 years so

14 who knows, maybe one day it will expand to this.  Well it

15 hasn't in the last 20 years.  And I think this Court should

16 not accept an invitation to be announcing a new dramatic

17 expansion of English law in these proceedings and could take

18 the law as it is today.

19          With respect to English law, as I'll describe

20 later in detail in this argument, all of NNU claims of

21 primary and secondary liability are defeated as a matter of

22 English law.  Also because the proof of claim makes it

23 absolutely clear that the Canadian parent ratified anything

24 they allege was done by NNI and they alleged very little,

25 but we'll get to that.  Ratification is an absolute defense.

1    The only way they can get out ratification is if they had

2    adequately pled NNUK was insolvent.  They have not.

3            Now with respect to Irish law, again, no Irish

4    Court similarly has ever held the company to be a de facto

5    or shadow director of a sister corporation in a corporate

6    group.  In fact, under Irish law, Your Honor, no Irish

7    Court's ever held a company can be a de facto director,

8    period.  And there's a reason for that.  The law in Ireland

9    and England is not the same.  Irish Courts don't just

10   blindly follow English Courts.  That's just common sense.

11           THE COURT:  Yes.

12   (Laughter)

13           MR. ZELBO:  They -- it's obviously authority they

14   look to, but they're not bound to follow it and they don't

15   always.  Under Irish law, and this is statutory, a director

16   has to be a person, a director can't be a company.  That's

17   different than English law.  And because a director, a de

18   jure director can't be a person, it logically follows that a

19   de jure director -- a de facto director, excuse me, can't be

20   a company as well, it's got to be a person.  So they have no

21   de facto director claim.

22           With respect to shadow director, the test is

23   essentially the same.  One wrinkle under Irish law is that

24   the rule that shadow directors don't owe fiduciary duties,

25   same as England is actually codified in the statute.  As I

1    mentioned, the joint administrator's response to this is

2    well you should look to English law.  That's not

3    appropriate.  We think on the Irish law claims, it's

4    probably best to look to Irish law.

5          They do the same thing with NNSA, the French

6    entity in terms of expansion of law.  What they advocate is

7    a new fangled theory of strict liability that their own

8    expert says is controversial and never been adopted in

9    circumstances such as are presented here.  But they say well

10   this Court should go do it.  You should go ahead, get out

11   ahead of French Courts.

12         So when you unravel the law, it's quite clear

13   that they're not applying the law as it is today, but as the

14   laws they wish it will become maybe after another 170 years

15   of further development.

16         The second notable aspect of their proofs of

17   claim are the lengths to which they seek to avoid basic U.S.

18   pleading standards.  And it's just like the substantive law,

19   they can't meet the substantive law so they want to escape

20   it.  They can't meet the pleading standards, they want to go

21   beyond it.

22         When you look at the allegations with respect to

23   both primary and secondary liability, these allegations

24   either completely neglect to even plead the key elements of

25   the case or are largely conclusory which under *Twombly and*

1  *Iqbal* need to be ignored.  Or they're entirely implausible

2  which under *Twombly and Iqbal* need to be ignored.

3          Indeed, by lumping together as they repeatedly do

4  in the proofs of claims, NNI and the Canadian entities, you

5  can't tell what it is they're claiming NNI actually did.  In

6  fact, when you read the proofs of claim, it's quite clear

7  what they're saying.  To the extent they allege anything was

8  done, they're saying it was done as part of a global

9  function on behalf of Canada, not on behalf of NNI.

10         Now just to be clear, Your Honor, we're not

11  blaming Canada here.  NNI is not blaming Canada.  But when

12  you read the proof of claim, it's quite clear they're

13  pointing the finger at Canada not NNI.  And I'll go through

14  that in detail as this argument progresses today.

15         The argument that basic pleading rules under

16  12(b)(6) Rule 8, *Twombly* and *Iqbal* should not apply here

17  simply doesn't hold water.  Their basic argument seems to be

18  that well, we weren't on notice.  They were.  Then they

19  argue, well you shouldn't hold us to that because we're not

20  that familiar with the facts.

21         The joint administrators have been running these

22  European companies since January of 2009.  They have spent

23  countless hours and enormous, millions of pounds of money

24  all well spent.  I'm not criticizing them, but investigating

25  these claims.  The European entities were parties to the

1  transactions they're complaining about, not NNI.  They've

2  had full access to the officers and directors of the

3  European entities as the submissions of declarations that

4  they've put to Your Honor show.  They have documents.  They

5  have their board minutes, Your Honor.  If they -- this is

6  the best they can do.  The fact that after all this

7  investigation and all these years of looking at this and all

8  this time and money spent, the best they can do are

9  threadbare allegations and arguing for an expansion of

10 foreign law tells the story here.  The time has come for

11 these claims to be dismissed.

12         Your Honor, their claims have been like a maze.

13 They're like a maze, but each one leads to a blind alley, a

14 legal dead end.  There is no way out.  Every time you follow

15 one of their myriad of claims, it hits a legal bar.

16         The joint administrators say that these motions

17 to dismiss should be considered in light of all the

18 circumstances.  That's fine.  But one circumstance we should

19 all keep in mind is that these claims which we believe

20 clearly fails a matter of law are a major impediment to the

21 resolution of allocation issues here and the distribution to

22 Nortel creditors worldwide.  There are $7.4 billion in

23 assets that need to get distributed to creditors.  That's

24 being held up by these claims.  If as we contend the claims

25 here fail as a matter of law, then the Court should not

1   hesitate to dismiss them which would clear the way for the

2   allocation process.

3          What the Court should not and cannot do is create

4   new foreign law or fail to measure these claims on the basic

5   U.S. pleading standards.  The fact that the claims seek

6   enormous damages, billions of dollars is not as the joint

7   administrators suggest in their motion papers, a reason to

8   hesitate to dismiss them.  To the contrary, it's a reason to

9   dismiss them if they fail as a matter of law.  As the U.S.

10  Supreme Court said in *Twombly*, defendants should not be put

11  to the cost of enormous discovery on enormous claims when

12  they fail to allege a plausible case.  The sooner these

13  claims are dismissed, the sooner the parties can get on with

14  the important business of addressing allocation and

15  distribution to creditors.

16         Your Honor will recall from the conference call

17  yesterday, that we divided the arguments up into four

18  tranches.

19         THE COURT:  Yes.

20         MR. ZELBO:  So we're going to do an introduction

21  and also deal with applicable pleading requirements.

22         THE COURT:  Right.

23         MR. ZELBO:  So I'm going to turn to applicable

24  pleading requirements now.  And we do have a PowerPoint

25  presentation that goes with it.  Your Honor can follow

1  along, listen to me or do both, whichever you prefer.

2  (Laughter)

3          THE COURT:  Okay.

4          MR. ZELBO:  There is no dispute that the Court

5  has discretion to apply Rule 12(b)(6).  Bankruptcy Rule 9014

6  says that.  As I mentioned in my opening, NNUK and all of

7  these entities were on notice that Rule 12(b)(6) and Rule 8

8  would apply.  In the motion for a more definitive statement,

9  we specifically said the Court should exercise its

10  discretion and apply Bankruptcy Rule 7012 to the proof of

11  claims.  And then we said under Bankruptcy Rule 7012 and

12  Federal Rule 12(b)(6), the motion we're now proceeding

13  under, a pleading must contain sufficient factual matter

14  except it is true to state a claims relief that is plausible

15  on its face.  And we specifically cited to *Twombly and*

16  *Iqbal*.  We made it perfectly clear.

17          They were also on notice because the fact that we

18  had moved to dismiss was discussed at the May 10 hearings.

19  I've got the quotes here.  I won't go over them because I

20  know the Court was there at that hearing.  In addition, a

21  motion for a more definitive statement alone, it requires in

22  fact more particularity than what would normally be measured

23  under Rule 8.  That's the purpose of the motion for more

24  particular statements.  So that alone put them on clear

25  notice.  The argument that they're somehow surprised to have

1    seen a 12(b)(6) motion and they didn't realize that their

2    amended pleadings were going to be judged by Rule 8, really

3    doesn't hold water, Your Honor, in light of the clear

4    record.

5         And despite EMEA's assertions, Your Honor,

6    numerous Courts and we've cited them in our brief, I won't

7    go over them now, but numerous Courts have applied Rule 8

8    and Rule 12(b)(6) to proofs of claim in bankruptcy.  So

9    putting aside the notice point, the issue really is okay,

10   should the Court exercise its discretion to do so and we say

11   the Court clearly should.

12        As I mentioned, perhaps the most important issue

13   is that exercising discretion to apply Rule 12(b)(6) will

14   expedite resolution of the allocation issues.  Secondly, it

15   promotes the federal policy of not forcing defendants to

16   incur costs and burdens against legally insufficient claims.

17   Let me read I think an apt quote from *Twombly*.  "Plaintiffs

18   should not be permitted to proceed with a largely groundless

19   claim to create an interim increment of the settlement

20   value.  Instead, this basic deficiency should be exposed at

21   the point of a minimum expenditure of time and money by the

22   parties and the Court."

23        EMEA's suggestion which is in their brief at Page

24   20 in the NNUK brief, that the most efficient approach

25   instead is to deal with our objections after discovery on a

1  summary judgment motion has it completely backwards.  It is

2  contrary to years of precedent under U.S. pleading rules

3  including specific statements in *Twombly* that I mentioned

4  earlier during the introduction.

5            Okay.  So what are the standards, Your Honor?

6  Following the Supreme Court's teachings in *Iqbal and*

7  *Twombly*, it's a three part test and the Third Circuit's laid

8  this out in *Malleus and Santiago.*  First, determine the

9  elements of the claim.  In many cases, that's going to be

10 foreign law.  Second, eliminate the conclusory allegations.

11 Let me pause there for a minute to explain what that means.

12 And in *Santiago*, the Third Circuit made clear what that

13 means.  There's really two subparts to that.

14            First, you disregard any legal conclusions, but

15 you -- and you also disregard and this is a quote "naked

16 assertions to avoid factual enhancements and threadbare

17 recitals of the elements of a cause of action."  The third

18 thing then that happens is you determine looking at any well

19 played allegations if there are any left, whether the claim

20 plausibly states a case.  And I think it's useful, although

21 we're all well familiar with them, to be reminded about what

22 the Supreme Court said on plausibility.  In *Iqbal*, the

23 Supreme Court made it clear that it's a context specific

24 task requiring the Court to draw on its judicial experience

25 and common sense.  Possibility is no longer the touchstone.

1  Allegations that are merely consistent with defendant's

2  liability or show the mere possibility of misconduct are not

3  enough.

4          One more key point on pleading standards is Rule

5  9(b) automatically applies to contested matters when the

6  claim applied sounds in fraud.  So, you know, the whole

7  argument about 12(b)(6) and whether there were on notice

8  really doesn't apply to 9(b).  Everybody agrees 9(b) applies

9  and it applies not only to claims that are labeled fraud,

10 but claims that sound in fraud.  They also apply to mistake

11 claims.  I will deal with this as I go through the argument,

12 but we think many of their claims are subject to Rule 9(b)'s

13 heightened pleading requirements.  That said, ultimately,

14 they don't satisfy even Rule 8.

15         Now as I mentioned earlier, the joint

16 administrators try to escape the settled pleading standards

17 and they plead for a relaxed pleading standard.  As I

18 mentioned, they're not newcomers.  They've been intensively

19 investigating this for a long time now.  They have access to

20 information.  They have access to people.  It's not going to

21 get any better.  This is the best they can do on these

22 proofs of claim and they've failed.

23         By contrast, NNUK, NNI Ireland, and NNSA, NNI

24 wasn't even a party to most of the transactions that are

25 alluding to.  NNI wasn't a party to Project Swift.  Wasn't a

1  party to loans from Canada to these European entities.  And

2  there's no allegation in the proof of claim that NNI

3  concealed any facts or -- from NNUK or even transactions

4  from NNUK, NN Ireland, or NNSA.

5           So, Your Honor, we believe that basic fundamental

6  U.S. pleading standards apply.  We believe foreign law

7  should not be expanded.  And if those two basic principles

8  that are adhered to, these claims as I'll demonstrate

9  further today and in our motion papers have already

10 demonstrated, should be dismissed.  Thank you.

11           THE COURT:  Thank you, Mr. Zelbo.  Good morning,

12 Mr. Adler.  Good to see --

13           MR. ADLER:  Good morning, Your Honor.  It's a

14 pleasure to appear before you this morning in this

15 comparative law seminar that we're engage in here.

16  (Laughter)

17           THE COURT:  Yes.

18           MR. ADLER:  Well I'm not going to go through the

19 details of the specific legal provisions of foreign law in

20 my opening here, but what I will say is that the overall key

21 is really whether the joint administrators have provided the

22 Court with enough information, enough detail to determine

23 that there is a good faith basis for their claims.

24           And what I will say about the foreign law is that

25 while we've had a very interesting time and while the

1    expert's competing declarations and their depositions make

2    for fascinating reading, we win on their tests.  We win on

3    the elements as their experts say they need to apply.  And

4    I'll go through that in more detail as we go through the

5    individual claims.

6                    THE COURT:  Yes.

7                    MR. ADLER:  Now Mr. Zelbo has described the

8    implausibility of the idea that a subsidiary would control

9    and influence the management of a sister subsidiary.  He

10   said that that's implausible.  Obviously, a subsidiary

11   doesn't have any inherent power to do that.  But the most

12   important thing to recognize here is that the relationship

13   between NNL, the Canadian Company, and NNI, the U.S. company

14   was completely unlike any normal parent subsidiary

15   relationship.

16                   NNI was the biggest, most important business unit

17   in Nortel.  It was the center of gravity of the company for

18   many reasons.  Although the company was founded in Canada

19   and always headquartered in Canada, the Canadian parent was

20   always the parent company, over time, NNI became the most

21   important business unit and it was a joint effort of NNI and

22   NNL to expand internationally to control the world in

23   effect, to takeover various foreign subsidiaries and to

24   expand the international business.  In many ways, NNI

25   overshadowed its parent.

1          Now the U.S. debtors' counsel has suggested and I

2    think is still trying to suggest that the joint

3    administrators are seeking to impose liabilities on NNI

4    based simply on the fact that they were sister subsidiaries.

5    That's not correct.  The joint administrator's claims are

6    clearly based on actions which are laid out in the proof of

7    claim that NNI itself took, the affirmative role that it

8    played in making and implementing decisions for the

9    worldwide business all of the subsidiaries outside of North

10   America.  And the law in all the various jurisdictions is

11   clear that when a party assumes responsibility for decision

12   making regarding the property and business of another

13   company, it will be called upon to answer for the

14   consequences of that.  This principle is clear and

15   undisputed in every jurisdiction that we're dealing with

16   here.

17          Now although there may be no precedent for

18   applying these types of duties in a sister subsidiary

19   context, the principles are clear.  They clearly apply.

20   There are also no cases which have rejected that application

21   either.  And when the legal principle applies when you meet

22   the elements, it's the responsibility of the Court to apply

23   the law as it's written.

24          The basic facts about how money was funneled from

25   the various EMEA entities to North America are not disputed.

1   The proofs of claim detail a series of transactions whose

2   expressed purpose was to take cash away from EMEA and move

3   it to North America.  Although NNL was the primary

4   beneficiary of this, NNI also benefitted and it was also an

5   integral part of the management team that devised these

6   transactions and forced them onto Nortel's overseas

7   subsidiaries.  And we'll walk through the proof of claim

8   later on and we'll show you how the allegations in great

9   detail show NNI's involvement in that.

10          It's not disputed that these transactions removed

11  hundreds of millions of dollars that should have been

12  available to pay EMEA's creditors.  Indeed, on this

13  application, the U.S. debtor doesn't contest the fact that

14  there was mismanagement.  That these transactions caused

15  tremendous harm as we've pleaded to the EMEA entities.  They

16  say we didn't have a duty.  Whatever we might have done,

17  whatever bad effects might have occurred as a result of

18  that, what you failed to plead is to show that we had a duty

19  to take into account EMEA's interests in exercising the

20  functions that we exercised.  It's a technicality they're

21  trying to seek to get out on.

22          Now Mr. Zelbo referred to the pending discussions

23  about allocation and we agree that it's important to look at

24  the overall context in which this motion is being litigated.

25  To date, the various Nortel debtors have devoted the bulk of

1   their time to the extremely successful asset sales and also

2   to trying to negotiate, reach a consensual resolution of how

3   to allocate the proceeds of those sales.  And as a result,

4   there really has never been a robust, a serious intercompany

5   investigation here.  We've never served Rule 2004 requests

6   or other types of disclosure requests on the Canadian

7   company or the U.S. company.  The investigation and

8   exchanges, voluntary exchanges of documents that were done

9   in connection with the mediation exercise were very limited.

10  They were -- you know, there was not clear response to broad

11  requests.  There simply hasn't been an investigation of what

12  went on inside the Canadian company and the U.S. company

13  that forms the basis of the joint administrator's claims.

14  Nevertheless, the facts that have come to light make it

15  clear that those claims are well founded.

16          But as far as Mr. Zelbo's suggestion that this is

17  the best we can do, that's simply not the case.  The

18  interactions between NNL, the internal communications

19  between NNL and NNI, what happened at particular meetings in

20  these various efforts that are described, those have not

21  been investigated.  They took place behind closed doors.

22  The facts relating to those are not available to the EMEA

23  debtors.  And I would note, incidentally, that even

24  electronic documents like emails that belong to NNUK were

25  located in North America and are not in the control of the

1  joint administrators.

2         Now the transactions that form the basis of the

3  joint administrator's claims are going to be examined in

4  detail in several parallel venues.  And Your Honor has

5  already noted that the facts here are closely intertwined in

6  the pension decision I think you had noted that in several

7  other contexts where we've been before you as well.  There

8  will be a Canadian claims process.  As you can see from the

9  proof of claim here, much of the activity that we alleged

10  NNI participated in was joint activity with the Canadian

11  company.  So naturally, we've asserted analogous claims,

12  parallel claims against the Canadian company.

13         There will also be the allocation mediation

14  dispute resolution process of some kind.  We're very hopeful

15  that the sessions with Justice Winkler, she -- Justice

16  Winkler will be productive.  But in any event, there will be

17  some process.  And when these procedures go forward, there

18  will be discovery.  There certainly will be discovery in

19  relation to the Canadian's claim process.  There will need

20  to be exchanges of information in connection with the

21  allocation dispute.  The transactions that form the basis

22  for the joint administrator's claims will be investigated

23  further.

24         The U.S. debtor has actually only recently moved

25  to set a general bar date later on this autumn for

1  intercompany claims.  Although the joint administrators were

2  not required to do so, the filed their protective claims

3  years ago.  It's been suggested that we somehow have been

4  dilatory in pursuing the claims and that's clearly not the

5  case.  What's actually happening here is that they're

6  seeking to address the joint administrator's claims

7  prematurely.  There really is no reason to address the

8  claims at this juncture on this record when the facts will

9  be further developed hopefully soon.

10             By the way, the joint administrators proposed six

11  months ago, five or six months ago that we should start

12  coordinated discovery for all processes, for the allocation

13  process, for the Canadian claims process, and for this

14  claims process that we should get together and get that

15  going.  And Canada and the United States have ignored that

16  suggestion.  They're trying to litigate these things

17  piecemeal.  We would suggest to gain a tactical advantage to

18  decide an issue here that really has much broader

19  implications and is intertwined with other broader

20  transactions.

21             So the joint administrator's position remains

22  that the best approach for dealing with all of these

23  interrelated issues is in some type of coordinated forum, a

24  mediation.  We've argued that it should be an arbitration

25  obviously, as you know.  We remain prepared to engage in

1    that arbitration immediately to get it going.  It would be

2    binding.  It would lead to a quick and sure resolution with

3    a clear appeal path and one decision.  We continue to

4    believe that that would be the best approach to paying

5    creditors and resolving all of these issues as quickly as

6    possible.

7              The U.S. debtor has suggested repeatedly that

8    we're pursuing the claims here to gain some kind of

9    advantage in the allocation negotiations or for some other

10   improper purpose.  This suggestion is not well taken.  Like

11   the U.S. debtor, the joint administrators are fiduciaries

12   with an obligation to their own creditors.  What is being

13   decided as we all see is how much will be available for the

14   various creditors in different jurisdiction.  The equities

15   are equal in the sense that we're all pursuing the best

16   interests of our various creditor groups.  And we think it's

17   quite clear from the proof of claim that these claims are

18   being pursued in good faith.  They're well founded.

19             Now although they have characterized this as a

20   motion to dismiss or an objection to the claims and a motion

21   to dismiss, the U.S. debtor is, in fact, trying to make a

22   summary judgment motion.  What they're really trying to do

23   here is use *Iqbal and Twombly* to ask the Court to make a

24   factual determination that NNI didn't play the role that we

25   say they played.  The very size and complexity of the motion

1  papers makes it clear that there are a huge number of

2  factual issues that will need to be resolved in order to get

3  to the merits.  And the Court is simply not in a position to

4  address that on this motion.

5       So our position is that the claims are well

6  founded.  We've laid out enough to survive any pleading

7  standard and to satisfy any of the elements under foreign

8  law.  And that the approach should be to go forward with

9  those claims.

10       I'll just take a quick drink of water and go onto

11  the pleading standard.

12       THE COURT:  You bet, of course, Mr. Adler.

13       MR. ADLER:  All right.  Well with respect to

14  pleading, obviously what we're addressing here is not a

15  complaint in a lawsuit, it's a proof of claim.  And it's

16  well settled that proofs of claim are not subject to the

17  same rules of pleadings as adversary proceedings or other

18  forms of civil actions.  That the requirements for a proof

19  of claim are set forth in Rule 3001.  And it's very simple.

20  There just has to be a form, you follow the form.  You have

21  to provide some sense of what the basis of the claim is.

22       In making their motion for a more definite

23  statement, this is all the U.S. debtor requested the joint

24  administrators to do, to comply with Bankruptcy Rule 3001.

25  If you read that objection and I don't think we need to go

1   back through and look at it in detail right now, but if you

2   read their objection, they expressly argue that the claims

3   did not meet the Bankruptcy Rule of 3001(f) standard that

4   was at page -- Paragraph 20 of their objection.

5           They argued that they needed additional detail in

6   order to be able to "frame a responsive pleading".  They

7   stated that as presently drafted, the proofs of claim are so

8   vague and ambiguous that the debtors cannot respond to them.

9   Nor do they enable the debtors to begin to investigate the

10  validity of any of the allegations, accordingly, requiring a

11  more definite statement is appropriate in this case.  That's

12  in their objection at Paragraph 25.

13          Now the U.S. debtor doesn't contest that the

14  proofs of claim now meet the requirements of Rule 3000.  And

15  based on that, the proofs of claim constitute prima facie

16  evidence of the validity and the amount of the claim.  In

17  fact, they haven't complied with the requirements for filing

18  a valid objection to the proofs of claim.  It's interesting

19  to note by the way, that they don't even object to all the

20  claims.  They're taking them on piecemeal.  There's -- the

21  initial claim which they've left alone.  So they're crafting

22  a procedure here where they file kind of a limited objection

23  and hack it up and take things in pieces.

24          In their so called objection, they don't dispute

25  or respond to any of the factual allegations.  They don't

1  carry their burden of introducing evidence sufficient to

2  rebut the presumption of validity or make clear which facts

3  are disputed or allege any of the facts necessary to support

4  their affirmative defenses.  This is important here, Your

5  Honor, because we would be moving the ball along much better

6  if we had had a substantive response to the claims.  We

7  would be in a much better position globally and on this

8  motion if they had filed their response, an actual response

9  to the allegations to say what their story is of what their

10  evidence will show.  It would help with the allocation

11  process.  It would help Your Honor assess the present

12  motion, but instead, they've gone ahead and made in effect a

13  Rule 12(b)(6) motion without getting a prior leave to do

14  that.

15          Now they do note that they mentioned *Iqbal and*

16  *Twombly* in their motion to apply Rule 12(e) and require a

17  more definite statement. They only did -- they argued that

18  the original proof of claim didn't meet that test, but they

19  didn't ask the Court to apply Rule 8(a).  There is an order

20  that was entered and it just says apply Rule 12(e).

21  Although if you look at their papers, they do in a few cases

22  say apply Rule 12 -- 7012 without having a little paragraph

23  at the end that says the (e).  The order is clear.  They

24  didn't ask Your Honor to exercise his discretion to enter

25  Rule 8, to apply Rule 8(a) or 12(b)(6).

1          Now you do obviously have discretion to apply

2    those rules.  It's interesting to note by the way that 8(a)

3    and 12(b)(6) are expressly omitted, but Rule 26 and Rule 56

4    apply automatically in contested matters.

5          THE COURT:  Yes.

6          MR. ADLER:  It seems to us that the normal

7    bankruptcy procedure is to go forward with discovery and

8    deal with all these issues at the summary judgment stage.

9          They haven't given good reasons why it would be

10   more efficient or effective to apply Rule 12(b)(6) and Rule

11   8(a) here.  As we'll go through, we think we meet the test

12   anyway, but also here where there are other proceedings that

13   are going to continue where there will be further discovery,

14   where fairness suggests that the U.S. claims should be

15   addressed in the same forum as the Canadian claims or

16   certainly in harmony and at the same time.  It doesn't make

17   sense to try and take these things piecemeal.  It won't be

18   efficient.

19         In addition, Bankruptcy Rule 9014 on its face

20   requires advance notice and an opportunity to comply with

21   any new rules that are going to be applied here.  We don't

22   want to delay things.  We don't think that its -- it would

23   be useful to try and re-plead again.  We will do so if we're

24   given the opportunity.  There are additional facts that we

25   can put in, but this will lead to further delay.  We think

1    it's clear we've done enough and that there's no basis to

2    exercise the discretion to apply Rule 8(a) and 12(b)(6).

3            Now as far as what the Rule 8(a) standard is

4    under the *Iqbal and Twombly* decisions, obviously those cases

5    didn't amend Rule 8(a).  It remains the case that all that's

6    required is a short and plain statement of the claims

7    showing that the pleader is entitled to relief.  It's still

8    a notice pleading.  You're not required to plead evidence.

9    And particularity is not required in all cases.  Courts are

10   still required on a motion to dismiss to accept the factual

11   allegations as true, construe the complaint in the light

12   most favorable to the plaintiff, and determine whether any -

13   - under any reasonable pleading of the complaint, the

14   plaintiff may be entitled to relief.

15           *Iqbal and Twombly* added two refinements to the

16   test.  First of all, it's clearly no longer sufficient to

17   file a complaint that just parrots the legal elements of the

18   claims with no factual detail.  Labels and conclusions

19   formulaic recitations of the elements are no longer entitled

20   to the presumption of truth.

21           Now it's not -- this applies primarily to legal

22   conclusions notwithstanding the *Santiago* case.  But if you

23   read Justice Souter's decision in *Iqbal*, he refers to it as

24   applying to the legal conclusions.  He also says that it's

25   not inappropriate to include legal conclusions.  While legal

1   conclusions can provide the framework of a complaint, they

2   must be supported by factual allegations.  So the Court

3   looks at the two things together and determines by applying

4   as Mr. Zelbo said common sense whether the complaint is

5   plausible on its face.  And what is clear if you look at the

6   various decisions on this is that the primary concern is in

7   instances where the plaintiff in a case, the pleader is

8   alleging facts that are not in his own knowledge.

9            So in the *Twombly* case, there were allegations of

10  a conspiracy that took place, an anti-trust conspiracy.  And

11  what the Court said is that where you have independent

12  private actors that are behaving in a parallel fashion, the

13  mere fact that they're behaving in a parallel fashion does

14  not allow the Court to infer that there was an agreement to

15  do so.  That there was a conspiracy.  It's not enough.

16           And in *Iqbal*, you have a prisoner who claimed he

17  was mistreated and who alleged that he was mistreated.  He

18  was an Arab.  This was after 9/11.  He claimed he was

19  mistreated on the basis of a discriminatory policy that

20  emanated down from the Attorney General of the United States

21  to Court officials in wherever it was he had been abused.

22  And the Court said on the basis of the fact that you were

23  treated badly, we're not going to infer that Ashcroft was

24  responsible for a policy that flowed all the way down.  In

25  discrimination cases, these are typically applied.

1          The key here is that the Court is looking to see

2    when a pleader pleads facts that are not in their direct

3    knowledge, pleads events that happen someplace else among

4    other people.  Do they have a good faith basis for believing

5    that things are the way they say they are?  And we will go

6    through the proof of claim.  There is ample evidence of the

7    type of agreements and understandings that happen here

8    between Canada and North America, Canada and the U.S.

9    company.

10          THE COURT:  Um-hum.

11          MR. ADLER:  There -- it is clear that there's a

12    good faith basis for asserting these claims.

13          Now the test interestingly under 9(b), it's

14    essentially the same concept.  There is no formula.  But

15    again, the Courts looked to see whether the claim is

16    substantiated.  Whether there's a reason to believe that the

17    fraud happened.  That a party acted with the necessary

18    intent.  And again, we do meet that test as we'll see when

19    we look through the proof of claim.

20          Now it is well settled that the pleading

21    standards are lighter for parties who were strangers to the

22    underlying events such as bankruptcy trustees and other

23    office holders.  That's well settled.  We cited a bunch of

24    cases in our brief, Page 29, Note 41.  There's a long string

25    cite.

1          The U.S. debtor is arguing that this principle

2    shouldn't apply here because the joint administrators have

3    been able to investigate the EMEA debtors own books and

4    records and should be able to do better in terms of alleging

5    this.  But as I've already said, we have not had the

6    opportunity to interview North American witnesses, to depose

7    North American witnesses, to examine the books and records

8    of the two entities that were engaged in the activity that

9    we're talking about here.

10          With respect to access to our own people, we've

11   noted in our papers that the joint administrators have, in

12   fact, commenced claims against many of the directors of the

13   EMEA companies alleging breach of duty.  We've commenced

14   those actions.  And you might suppose that people who have

15   been sued, who have had claims asserted against them are not

16   going to be very cooperative in not providing additional

17   information at that point.

18          And I think we'll leave it at there.  We look

19   forward to addressing the breach of duty in the next phase.

20   And I don't know if we want to continue with that now or --

21          MR. ZELBO:  We're happy to go forward.  Whatever

22   Your Honor wants to do.

23          THE COURT:  I'm prepared for you to proceed

24   forward, yes.  Thank you, Mr. Adler.

25          MR. ADLER:  Thank you.

1          MR. ZELBO:  Your Honor, standing next to me is

2     one of my colleagues, Jackie Mosner.

3          THE COURT:  Welcome.

4          MS. MOSNER:  Good morning, Your Honor.

5          MR. ZELBO:  She's just going to help me with some

6     technological things that are beyond by capabilities.

7     (Laughter)

8          THE COURT:  Okay.

9          MR. ZELBO:  But a couple words very briefly, Your

10    Honor.  Just let's -- I want to remind the Court of the

11    procedural timeline here, okay?  There was a bar date set.

12    In September of '09, the EMEA entities filed completely

13    insufficient proofs of claims.  We made it clear on numerous

14    occasions we wanted to move to dismiss these claims.  We

15    filed an objection and a motion for a more definitive

16    statement which made clear that we were going to go under

17    12(b), apply *Twombly and Iqbal*.  We said it in the Courts.

18    We said it in chambers.  We said it to them in

19    correspondence.  They then file a document.  What do they

20    file?  It's a complaint, Your Honor.  It looks like a

21    complaint.  It is a complaint.  We moved to dismiss.  Okay?

22    There's no rule in bankruptcy, no rule in bankruptcy that

23    you automatically go to summary judgment and discovery after

24    a proof of claim is filed.  That's just not the rule.

25          Now they say we don't dispute that there were

1    problems with some of these transactions, you know, all the

2    problems they allege a transfer price in Project Swift.

3    It's a 12(b)(6) motion, Your Honor.  What we do say is they

4    haven't sufficiently alleged that NNI -- NNI did anything

5    with respect to that that could plausibly stated claim

6    against NNI.

7              A couple of quick observations.  One, we've just

8    heard an acknowledgement that there's no precedent for their

9    claims under the foreign law in which they're pursuing.

10             Number two, I just heard Mr. Adler say that they

11   believe that NNI was the center of gravity.  And I think

12   that was the phrase he used.  You won't find that allegation

13   anywhere in the proof of claim.

14             I also heard a new wrinkle.  Cash to Canada has

15   now become cash to North America.  That's not what the

16   complaint says.

17             Okay.  As Your Honor will recall, what we decided

18   in this next act of our play today, we would be doing

19   judicial estoppel and then, you know, the fiduciary duty

20   claims --

21             THE COURT:  Yes.

22             MR. ZELBO:  -- and duty of care claims.  I'm

23   going to start with judicial estoppel.  Judicial estoppel is

24   appropriate where a party has played fast and loose with the

25   Court by invoking inconsistent positions.  The joint

1  administrator's claims that they're now bringing are

2  entirely and irreconcilably inconsistent with their prior

3  representations to this Court on two separate occasions in

4  seeking and obtaining Chapter 15 recognition.  With those

5  representations, they submitted sworn witness statements

6  that NNUK and the other EMEA entities including NN Ireland

7  and NNSA were controlled from London on a strategic and

8  managerial level including with respect to tax and treasury

9  functions.  The joint administrators tried to explain away

10  this inconsistency by saying that those statements

11  previously submitted to this Court only dealt with day to

12  day operations, basic day to day, run of the mill business

13  decisions.

14         Let's look at what they said before.  We have

15  that on the screen, Your Honor.

16         THE COURT:  Yes.

17         MR. ZELBO:  Their prior representation, this

18  relates to central management and control in Maidenhead.

19  That's just outside of London.  Their central management and

20  control is directed from the head office in Maidenhead,

21  England where all major decisions specific to the EMEA

22  debtors are made.  This is what they're now saying.  NNI's

23  domination and control over tax and treasury was pervasive

24  and making -- and NNI was making major strategic decisions.

25         Now that's what they may be alleging, that's in

1  their brief.  But what we're going to see is their proof of

2  claim actually has no well pleaded facts to support that.

3  But the point simply here is these are not reconcilable at

4  all.

5          Continuing on strategic and high level decisions,

6  they submitted a witness statement that said in relation to

7  corporate matters such as financial, tax, distribution

8  issues, strategic and high level decisions are generally

9  made by the financing tax functions of the EMEA group all

10  located in England.  What do they say today?  Today, NNUK

11  had no substantive involvement actually.  Never mind what we

12  said before, actually they had no substantive involvement.

13          Let's look at tax because this is a big part of

14  their claim.  Management's supervision and decision making

15  in relation to tax, England.  They said it twice.  NNUK's

16  taxation affairs were controlled by NNI and NNL.  And by the

17  way, this is one of the themes I'm going to bring out later

18  this -- these allegations of joint between NNI and NNL.

19          THE COURT:  Yes.

20          MR. ZELBO:  That really doesn't cut it under

21  *Twombly and Iqbal* and we'll talk about that.  But that

22  doesn't work.

23          Let's talk about treasury.  That's the other

24  function they focused on.  Treasury and banking functions to

25  the EMEA companies are managed out of England.  They say it

1   three times.  They even identified the person who does it,

2   Simon Freemantle.  What do they say now?  NNI controls the

3   NNUK's treasury function.

4           Loans are an issue.  Global intercompany

5   facilities and loans are all managed from EMEA treasury in

6   England.  Decisions not day to day run of the mill stuff in

7   relation to settlement of those accounts, are made by EMEA

8   treasury team in England.  Now decisions were imposed on

9   NNUK.  Not made my NNUK, imposed on them.  They're

10  irreconcilably inconsistent.

11          With all due respect, Your Honor, the joint

12  administrators offer no good excuse for their inconsistent

13  positions.  They can't excuse it based on inadequate

14  information.  They submitted this six months after they were

15  appointed the first time in June 2009.  They submitted it

16  again in January of 2011.  Mr. Bloom in his deposition which

17  they refer to and try to take advantage of, repeatedly

18  affirmed that those witness statements were true and

19  correct.  We cited to Mr. Bloom's deposition in our briefs.

20  I can give Your Honor the cite, too, today.

21          In addition, I think it's important to know that,

22  and I mentioned this already, the people who submitted these

23  witness statements weren't newcomers.  They knew what

24  happened.  They say well the Court didn't need those witness

25  statements.  Didn't need them to enter the Chapter 15 order.

1   I think in the first place it's belied by the fact that they

2   submitted them.  Lawyers can be verbose, but it's rare that

3   they submit such pointed and direct affidavits if they don't

4   think the issue is relevant.  They even said in their motion

5   papers that these issues were relevant as to where central

6   control and management was in connection with the Chapter 15

7   order.  And we cite to Your Honor the *Bear Stearns* case in

8   which the Bankruptcy Court in the Southern District made it

9   clear that even if you're incorporated abroad, if your

10  management and decisions are, in fact, being made in the

11  U.S., you're not going to get Chapter 15.  That's why they

12  submitted these affidavits.  They wanted Chapter 15

13  recognition.  They got it.  They can't now come to Court

14  with inconsistent allegations.

15          Contrary to what the joint administrators say,

16  Courts have applied judicial estoppel to fiduciaries.  We

17  cited the *Network Assets Solutions* case where Judge Walrath

18  did just that in applying judicial estoppel to a creditors'

19  committee.

20          In addition, I think it's important to note that

21  the judicial estoppel we're talking about here relates to

22  purely factual matters.  This wasn't a situation like in the

23  Third Circuit's *Montrose* case where they gave a quasi-legal

24  or a legal statement and then they wanted to take a

25  different legal position.  These were facts submitted under

1   oath by people with knowledge who they vouched for.

2           Your Honor, we think the judicial estoppel

3   argument disposes of their breach of fiduciary duty claims.

4   It also will dispose of their secondary liability claims to

5   the extent and most of them do, they rely on a primary

6   breach of fiduciary duty.  Again, that's based on this

7   control theory.

8           THE COURT:  Um-hum.

9           MR. ZELBO:  That's contrary to what they told

10  this Court in connection with obtaining and seeking Chapter

11  15 recognition.  Okay.

12          Let's go to breach of fiduciary duty.  And I'm

13  going to start with NNUK.  This is the Claims 2, 8, 16, 28,

14  and 32.  Now I was interested to hear and I think relieved -

15  -

16  (Laughter)

17          MR. ZELBO:  -- that Mr. Adler said they'll accept

18  our legal tests.  Because a lot of their expert witness

19  statements here that were submitted, there was a lot of

20  paper submitted trying to show that we were all wet on our

21  legal tasks.  I think the reason for the change of heart

22  here is that in our reply brief we pointed out that the

23  legal tests are also set forth in their proof of claim and

24  here it is.  This is Paragraph 88, their proof of claim.  A

25  company's a de facto director of a second company if it can

1  be shown that the company performed a function in relation

2  to the second company which can only be properly performed

3  by a director of the second company.  Their response brief

4  is all about saying that's not the test and I think when

5  they read our reply they decided maybe we should take a

6  slightly different tack.  Shadow director same thing, we'll

7  get to that, but were accustom to acting in accordance with

8  the company's instructions or directions.

9        Even though Mr. Adler said they now agree with us

10  on the law or at least they're willing to accept our view of

11  the law for purposes of this motion, I do think it's worth a

12  brief tour through the law.  Let's start with de facto

13  director.

14        The English Courts have developed factors that

15  one looks at to determine whether someone's a de facto

16  director, whether they're acting as a director.  I mean, the

17  word de facto means you're acting in fact.  And you've

18  directors of the law, the de jure directors, you've got the

19  de facto directors.  Are you, in fact, acting as a director?

20  Are you doing things only a director could do?  Are you

21  doing things that maybe a director could do, but management

22  could also do?  That's not enough.

23        And English case law has developed certain

24  additional things they look at.  Basically, three are key

25  here.  Whether the defendant acted on equal footing with the

1  de jure directors, whether the defendant exercised a real

2  influence, whether the defendant held himself out as a

3  director under -- I will say because I know Your Honor

4  during the conference call wanted to be alerted to

5  differences in the law.

6             THE COURT:  Yes.

7             MR. ZELBO:  Under English law, holding out as

8  they call it, that's not a prerequisite, it's a factor a

9  Court will look to.  Under Irish law, holding out is a much

10  more -- is a stronger factor.

11             THE COURT:  Okay.

12             MR. ZELBO:  And may very well be dispositive.  So

13  it's a difference there.  And I think it's also helpful to

14  look at the types of situations when English Courts have

15  found a de facto director and when they have not.  Let's

16  start with the famous *Holland* case.

17             THE COURT:  Yes.

18             MR. ZELBO:  No de facto director even though Mr.

19  Holland and his wife were the sole directors of the sole

20  corporate director of the companies in question.  And even

21  though the Court found Mr. Holland was the guiding mind and

22  sole decision maker for the subsidiaries.  Now the reason

23  for that is because, you know, they make a lot about *Holland*

24  but *Holland* really involves a totally different issue here

25  which is what happens when you have a corporation interposed

1    between the guiding mind and the companies in question.

2                  THE COURT:  Right.

3                  MR. ZELBO:  Really it's not that.  That case

4    really is not factually on point with this case and that's

5    what the Court's grappling in *Holland*.  *Gemma* is a case that

6    the textbooks all continue to cite after *Holland*

7    notwithstanding, you know, their briefs saying *Gemma* no

8    longer matters.  In that case, you have a corporation owned

9    by a husband and wife.  The wife was held not to be a de

10   facto director even though she was held out as a director in

11   certain instances because she had no real influence in the

12   company.  And interestingly, Your Honor, a lot of these

13   cases under English law are sole proprietorships, mom and

14   pop shops, that's when this law gets applied, not

15   exclusively, but a lot of them really are.

16                  In *Richborough Furniture* no de facto director

17   even though an actual de jure director of the company relied

18   on that individual as a finance director.  The individual

19   negotiated with creditors for the company.  That wasn't

20   enough.

21                  Now in *Kaytech*, the Court did find a de facto

22   director, but look at what the Court said.  There the

23   defendant was basically a liar and a crook.  He creates this

24   company and it wasn't even a real company, didn't have a

25   real board that ever sat.  So the Court called him a

1    dishonest and unscrupulous man.  He incorporated the

2    company.  He held himself out as a director to creditors.

3    He lied about the company's financial condition to

4    creditors.  There the Court said okay, that's a de facto

5    director.  That's the type of situation where this gets

6    applied.  And interestingly, even there the Court said you

7    know what, this defendant might not have been a de facto

8    director had there been an identifiable group of directors

9    who actually met on a regular basis.  And if you weren't

10   part of that group, but since there they didn't even have an

11   active acting board.  And it was essentially a fraudulent

12   company at the end of the day.  The Court said that won't

13   save you.

14            I think that that's useful to bear in mind the

15   types of situations because when you go expand English law

16   to a case where there's no precedent at all, it's useful to

17   see the types of cases and the distinctions English Courts

18   are making because they're very different from this

19   situation.

20            I'm not going to spend a lot of time on this

21   because of Mr. Adler's statement that he's going to take the

22   law as we say it, but *Holland* didn't overrule any of this.

23   And I just want to point out one of the leading treatises is

24   *Palmers* on company law.  It's the last line in this chart.

25   That continued -- and their expert admitted *Palmers* is a

1  leading treatise.  That continued to cite *Gemma* which is the

2  case our experts cited that laid out the factors.  Continues

3  to cite *Gemma* as a useful review of the authorities.  It

4  also separately discussed *Holland* in connection with the

5  issue I talked about about what happens when you interpose a

6  corporate directorship in the middle.  That doesn't say

7  *Holland* overturned decades of English law and de facto

8  director because it didn't.

9          Okay.  Let's look at the proof of claim.  Again,

10  we're going to stick with NNUK for to start.  Three things I

11  just want to make right -- points I want to make right up

12  front.  There's no plausible allegation that named

13  individuals in this complaint were acting for NNI.  They

14  name a lot of individuals and they say, you know, somebody

15  was the treasurer of Canada, but also happened to be a

16  director of NNI.  Well what's missing is any allegation that

17  anyone was acting on behalf of NNI.  We'll go through that.

18          Secondly, there's no plausible allegations and no

19  well pled facts that any of these named individuals even if

20  they were acting on behalf of NNI, were doing things that

21  only an NNUK director could do.

22          Lastly, they have conclusory allegations of

23  control.  They restate the tests and I think we all agree

24  those allegations aren't going to help them in connection

25  with these proofs of claim.

1          As I mentioned earlier and I think just for ease

2   going through this analysis, you've got the four

3   transactions.

4          THE COURT:  Um-hum.

5          MR. ZELBO:  Transfer pricing and tax, pre-

6   petition asset sales, Project Swift, intercompany loans.

7   Let's start with transfer pricing and tax.  Okay?  When one

8   reads this proof of claim, you really see that they're

9   alleging certain individuals who had a global function, a

10  global function as part of the Nortel's global tax group, as

11  well as, some affiliation with CC -- NNI, assisted the

12  Canadian parent from developing and implementing and

13  operating this transfer pricing system.  And I said this

14  earlier, I'll say it again.  We're not pointing the finger

15  at Canada here, but the fact is that's what the proof of

16  claim is doing.

17         There's no plausible allocation that the named

18  individuals are acting for NNI.  Let's look at what they

19  allege.  Okay.  First, we have the proof of claim in

20  Paragraph 13.  Control of the Nortel Group's operations were

21  highly centralized and on a general basis was maintained

22  primarily by NNC and NNIL.  Those are the Canadian entities.

23  As Your Honor well knows --

24         THE COURT:  Yes.

25         MR. ZELBO:  -- and, you know, Mr. Adler may say

1  today that they're alleging NNI was the center of gravity,

2  that's not what their proof of claim says.  This is

3  obviously a conclusory statement anyway, but my only point

4  is it doesn't point to NNI.  Okay.

5        Then in Paragraph 19 of the NNUK proof of claim,

6  the Nortel Group tax department was a joint function.  Okay.

7  That's a conclusory statement but there it is.  Let's look

8  at what they say.  Many of the key individuals were NNI

9  personnel.  Okay.  And let's look at who they look at.  They

10  look at the International Tax Director, Mark Weiss, the

11  global transfer pricing leader, the vice president of global

12  tax.  Every one of these people they're pointing to, they

13  even point to the EMEA tax leader, okay.  Everyone of these

14  people they're talking about in a global function.  There's

15  no allegation that when they were doing their global

16  function, they were acting on behalf of NNI, as opposed to

17  at best assisting the parent.  And perhaps the parent's

18  agent, assisting the parent.

19        Let's look at Nortel treasury and what they say.

20  Again, it's important to really look at the allegations.  In

21  a similar way to tax department, Nortel treasury also

22  performed a central role.  And let's look at what they say.

23  Katherine Stephenson was treasurer and had overall

24  responsibility for global treasury.  John Doolittle was

25  treasurer from 2008.  And Paul Kerr, Carr, excuse me, was

1    controller.

2            Your Honor, I submit that it's not surprising

3    that the treasurer in Canada, Katherine Stephenson was

4    involved in global treasury functions.  They elsewhere say

5    but she was also a director of NNI.  So what?  What's

6    plausible, Your Honor?  When Katherine Stephenson, the

7    treasurer in Canada is working on treasury functions, is it

8    plausible that she's doing that as an NNI director?  She's

9    the treasurer, of course, she's doing treasury functions.

10   NNI's English law expert testified that NNI was simply

11   acting as an agent for the Canadian entities and NNI cannot

12   be independently liable.

13           There are also no well pleaded factual

14   allegations here.  Again, we're still dealing with transfer

15   pricing and tax and take each one of these things

16   separately.  Nowell [ph] pleaded factual allegations for

17   which it could be plausibly inferred the work done by these

18   individuals which are never alleged to be done on behalf of

19   NNI was something only an NNUK director could do.  And think

20   about it for a minute, right, on a plausibility level.  As

21   they claim, they state in their proof of claim every

22   multinational company has to have transfer pricing.  And you

23   can't have sixteen different transfer pricing arrangements,

24   it's one transfer pricing arrangement for the company.  And,

25   of course, the global transfer pricing is going to develop

1  that formula and they're going to operate it and make sure

2  it works.  Are they seriously saying that only an NNUK

3  director could do that?  That's not plausible.  It's not

4  plausible.  To be -- an NNUK director to be sure may very

5  well have to be the entity that says okay, should NNUK sign

6  onto this global thing, right?  Okay.  And we'll deal with

7  that.  But implementation, operation, an NNUK director can

8  only do that?  That's not plausible and it's not alleged.

9           So let's talk about decision making.  There's no

10  allegation that NNI instructed NNUK's board members to

11  authorize NNUK's signing of the MRDA which they concede is

12  the governing document for the transfer pricing.  Now they

13  say NNUK had no substantive involvement.  We've looked at

14  this slide already in judicial estoppel.  Completely

15  inconsistent to what they say before.  They say NNUK just

16  implemented decisions taken by NNI and the Canadian

17  entities.  Okay.  It doesn't say NNI was the one sitting

18  wearing an NNUK director hat as an NNUK director making a

19  decision on behalf of NNUK that I'm going to accept this

20  global transfer pricing.  It doesn't say that, nor would it

21  be plausible.  This is where I started.  Is it remotely

22  plausible that an NNUK director would sit there and let NNI

23  make that decision for it?

24           Look at what they say.  Once the terms of the

25  MRDA have been decided by NNI and NNL.  Let's pause there.

1  What does that mean?  They mean you devise the transfer

2  pricing system.  Okay, fine.  Again, we don't think they're

3  alleging any of the actions taken by NNI in relation to that

4  were done on behalf of NNI as opposed to for the parent, but

5  so what.  NNUK's directors it's not plausible they would be

6  the ones devising a system.  There it is.  NNUK was simply

7  instructed to sign the MRDA, passive voice.  It does not

8  allege that NNI instructed NNUK to do this.  It does not

9  allege that NNUK followed an instruction from NNI.  It does

10  not allege facts from which one could plausibly infer that

11  NNUK directors would follow any instruction from NNI.  It's

12  not there.

13         In their brief, they say well what we meant, what

14  we meant to say was that NNI and NNL jointly instructed

15  NNUK.  You can't amend a brief, a complaint by a brief.  But

16  what does that even mean?  Did NNI and NNUK sit in a room

17  together and shout simultaneously to NNUK directors, sign

18  the MRDA?  It makes no sense.  Okay.  And what's plausible?

19  If an instruction was given, what's plausible?  Who at NNI

20  UK listened?

21         Then they come to this for the reason set out

22  above and below, NNI was a de facto or shadow director by

23  virtue of making decisions in relating to treasury and tax

24  which could only be made by a director of NNUK.  That is the

25  classic *Twombly Iqbal* conclusory statement putting in the

1   elements of the claim and I'm glad they acknowledge that is

2   the elements of the claim, but that's not enough.  It's good

3   that they, you know, sometimes they don't even include a

4   pleading that covers the elements of the claim so I guess

5   it's nice that they did here, but it's totally conclusory

6   and doesn't carry the day.

7          I'd like to look at Project Swift.  This is their

8   key allegation on Project Swift, Your Honor.  And just to be

9   clear, what Project Swift is, it's a little complicated, but

10  I'm going to try to simplify it.  It took me awhile.

11  (Laughter)

12          MR. ZELBO:  NNUK made loans to Canada, if I could

13  just use that phrase, the Canadian parent.

14          THE COURT:  Yes.

15          MR. ZELBO:  NNI is not a party.

16          THE COURT:  Right.

17          MR. ZELBO:  To repay those loans, Canada instead

18  of paying cash, transfers subsidiaries.

19          THE COURT:  Um-hum.

20          MR. ZELBO:  That's Project Swift.  NNI's not a

21  party to it.  Okay.  Directors and officers of NNI,

22  including Mr. Paul Carr, there's Mr. Paul Carr again.  He's

23  the Controller of the Nortel Group.  There's no allegation

24  he's acting in this capacity as somebody at NNI.  The fact

25  that he may be a director or officer of NNI doesn't mean he

1    was acting in that capacity.  What's plausible?  And, you

2    know, what did they say?  You were aware of Project Swift.

3    Okay.  You implemented.  Okay.  That's not director

4    functions.

5         Then they go on.  On the ground, Mr. Smith of

6    NNI, I want to stop right there.  On the ground.  Do you

7    know what ground they're talking about, Your Honor?  They're

8    talking about Europe. They're talking about London, on the

9    ground.  Mr. Smith was in London.  You know why?  Because he

10   was secunded to NNUK and they allege that in their proof of

11   claim.  He wasn't an NNI employee at the time, he secunded

12   to NNUK.  He was one of the key driving forces behind the

13   implementation and structuring of the transaction.  Okay.

14   Again, implementation and structuring.  That's not director

15   only functions.  And look what they say he did.  Look at the

16   bold.  He and his team, Ryan Smith, the EMEA tax leader on

17   the ground secunded to NNUK were responsible for preparing

18   the briefing notes to the various Nortel boards.  There you

19   have it, Your Honor.  That's what a manager does.  A manager

20   comes in, an employee comes in and you make a presentation

21   to the board and the board decides what to do.  This is an

22   admission that Mr. Ryan Smith secunded to NNUK was not the

23   NNUK board.  He was making a presentation to the NNUK.

24        As I mentioned earlier, NNUK admits NNI was not a

25   party to Project Swift.  The claim and this is their claim,

1  focuses on NNL. It was NNL, NNL that elected to wipe out the

2  loan balance by making a paper transfer.  That was NNL's

3  election.  Okay.

4          I'm going to go now, Your Honor, to intercompany

5  loans.

6          THE COURT:  All right.

7          MR. ZELBO:  Here it is.  The implementation of

8  the interest free loan facilities, again, these are loans

9  between NNUK and NNI, just to be clear.  Excuse me, not to

10  be --

11  (Laughter)

12          THE COURT:  No.

13          MR. ZELBO:  I got that wrong, didn't I?

14          THE COURT:  Yes, you did.

15          MR. ZELBO:  It's very annoying that those

16  initials are so similar.  NNUK loans to NNL, okay?  Was

17  conducted on the ultimate direction of Katherine Stephenson,

18  Group Treasurer.  And by the way, who happened to also be a

19  director of NNI.  When Katherine Stephenson is directing

20  treasury operations, again, is it plausible she's doing this

21  because she's a director of NNI or is she doing it as the

22  group treasurer?  And by the way, there's no allegation, you

23  won't find it, that NN -- Katherine Stephenson is acting as

24  her NNI director capacity when she does anything they allege

25  that she did.  It's not there.  They just say she was a

1  director of NNI, not that she was acting as a director of

2  NNI and it's not plausible.

3        And I think the next sentence really brings this

4  point home because what they say is Ms. Stephenson herself

5  signed the formal interest free loan facility agreements.

6  This brings it home.  Here they are.  They're telling you

7  Katherine Stephenson because she happens also to be a

8  director, you need to tar NNI with anything she did because

9  she happened just to be a director.  You know, I'm a member

10 of my -- the board of my daughter's school.  I think they

11 would be quite surprised to learn that when I'm speaking

12 today, I'm speaking on behalf of that board.  And to be

13 clear, I'm not.

14 (Laughter)

15        THE COURT:  Okay.

16        MR. ZELBO:  Let's just look at the loan facility.

17 We were able to put at least one of these which was not

18 unburdened by a confidentiality agreement in our papers.

19 This is Barefoot Declaration Exhibit P.  This is just the

20 cover page.  There's her signature.  This is on behalf of

21 Canada and we're not even a party to this loan.  Title,

22 treasurer.  She didn't write treasurer and by the way

23 director of NNI.  And that's the type of allegation they

24 want to base a $4 billion claim on against NNI.

25        Prepetition asset sales.  I mentioned earlier

1  that we don't need to dwell on this and we truly don't.

2  This is their allegation.  The only thing they say about NNI

3  is that we participated in the sale of a business.  And

4  that's it.  And they don't even mention what sales other

5  than one, Alcatel.  But so what, we participated in the sale

6  of a business, that's it.  And we're not going to spend a

7  lot of time on that today.

8          Summing up de facto director, Your Honor.

9  There's no allegation that NNI attended or voted at an NNUK

10 board meeting.  There is no allegation that NNI ever held

11 itself out as a board member of NNUK to anybody, to the

12 board of NNUK, to creditors, to third parties, to anybody.

13 There is no allegation that anyone believed NNI was acting

14 as a board member of NNUK.  There's no allegation that NNI

15 signed any document on behalf of NNUK.  And there is no

16 allegation that NNI instructed NNUK to sign any document,

17 nor is there any allegation exploring why NNUK's de jure

18 directors would follow such an instruction were one given.

19          A shadow director I think we can deal with quite

20 easily.  Again, to their proof of claim.  You have to show

21 that an instruction was given and that the de jure directors

22 here and in UK were accustomed to acting in accordance with

23 NNI's instructions.  There's no allegation that NNI issued

24 any instruction to NNUK.  And I think we can take the word

25 well pled out of that sentence there because there's no well

1   pled or period.  It just doesn't exist.  There's also no

2   allegation full stop that NNUK's de jure directors were

3   accustom to acting.  Interestingly, the NNUK proof of claim

4   in a footnote says NNL Canada was a person in accordance to

5   instructions the de jure directors of NNUK were accustom to

6   act.  That allegation is not there.  It's conclusory anyway,

7   but it's not there as to NNI.

8           So I think Your Honor could just stop there on

9   shadow director very quickly.  A shadow director even if one

10  was found or adequately pled for purposes of this motion,

11  doesn't owe fiduciary duties.  The most recent case under

12  this is *Ultra Frame*.  Your Honor, this case goes into a

13  detailed analysis on the subject.  This case is huge.  It's

14  like this thick.  I strained my back carrying this thing

15  back and forth to London.

16  (Laughter)

17          MR. ZELBO:  It's huge.  It's like reading *War and*

18  *Peace*.  It is a very detailed analysis of the issue.  And it

19  concludes and there's no dispute amongst the experts that

20  *Ultra Frame* concludes that shadow directors don't owe

21  fiduciary duties except in circumstances that aren't pled

22  here.  So they're -- only response is to rely on an earlier

23  High Court case.  And just to be clear, the High Court is

24  the Lower Court.

25  (Laughter)

1          THE COURT:  Okay.  Yes.

2          MR. ZELBO:  It's like New York, it's very

3    confusing.

4          THE COURT:  Yes.

5          MR. ZELBO:  You've got the High Court, the Court

6    of Appeals, and then the Supreme Court which I think used to

7    be called the House of Lords.

8          THE COURT:  Yes.

9          MR. ZELBO:  Okay.  Anyway, it says an earlier

10   High Court case, *Uconn* [ph] that's what they rely on,

11   proceeded *Ultra Frame* by seven years.  Has about two

12   sentences on the subject and are horribly confused and it's

13   thoroughly distinguished by *Ultra Frame.*

14          I want to now, Your Honor, proceed to

15   ratification because it's part of the fiduciary duty

16   argument.  Under English law, absent insolvency, it's not a

17   breach of fiduciary duty for a shareholder's board to act in

18   the interests of the parent company.  Probably not

19   surprising rule.  The parent company can ratify any alleged

20   breach of fiduciary duty by its subsidiaries directors, also

21   not surprising.  The only exception that NNUK's English law

22   expert notes is that if there's an unlawful distribution or

23   unlawful return of capital, it's just not alleged here,

24   that's not in the proof of claim.

25          NNUK has failed to plead insolvency or near

1    insolvency and that's fatal under English law to its breach

2    of fiduciary duty claims.  Even before *Twombly*, Your Honor,

3    Courts would dismiss their conclusory pleadings of

4    insolvency.  You have to plead more.  You can't just say

5    insolvency.  By the way, they don't even say insolvency,

6    much less present well pleaded facts.

7            There's two tests under English law.  These won't

8    be unfamiliar to Your Honor to determine insolvency, the

9    cash flow test and the balance sheet test.  Cash flow unable

10   to pay debts as they fall due, balance sheet your

11   liabilities exceed your assets.  The only thing I'll add to

12   this is the English Court of Appeals made it clear that on

13   balance sheet insolvency, the company really has to be at

14   the point of no return.  And one of those British phrases

15   that I love, the company would have to be at a position

16   where it needs to put up the shutters.

17           Let's look at their insolvency allegations, if

18   any.  A lot of it are general allegations as to the Nortel

19   Group.  They need to show NNUK was insolvent, okay, not

20   something generally.  But what do they even say?  There was

21   a dot.com crisis and Nortel had losses.  Probably a lot of

22   companies in 2001 that were in that category.  Then in 2008,

23   which really is kind of when a lot of these transactions

24   happened, they said the company did restructuring.  Well

25   doing restructuring doesn't mean you're insolvent.   And

1  then the only other thing they say is they registered

2  losses.  Okay.  I mean, having losses doesn't mean

3  insolvency.  Again, nothing about NNUK.

4          So let's look at what they say about NNUK because

5  there's only three sentences.  Given the doubtful solvency

6  and/or risk of insolvency of NNUK from 2000 onwards, okay,

7  that's conclusory, but think about that sentence.  They're

8  claiming NNUK was near insolvency for nine full years on a

9  continuous basis before the bankruptcy.  That's

10  extraordinary.  That's implausible.  That is not backed up

11  by a single well pleaded fact.  And that's not backed up by

12  a single fact alleged in the claim.  At the time of Project

13  Swift, NNUK was in a parlous financial state.  That's not

14  going to work.  Then this is it.  This is the only other

15  sentence and all it is is a legal conclusion about if they

16  were insolvent what the directors would be obliged to do.

17  They have not adequately pled insolvency, Your Honor, at

18  NNUK for a nine year period which is what they now say is

19  the case.  That's the end of their fiduciary duty claims.

20  They have to be dismissed.

21          Duty of care.  Your Honor, there are no English

22  authorities and the experts agree on this, that have ever

23  imposed a duty of care for pure economic losses between

24  companies and the group.  You can only super economic loss

25  which is what they're doing here and alleged duty of care in

1  special situations, special relationships that are not pled

2  here.  NNUK's English law expert doesn't dispute this.  What

3  he instead invites this Court to do is expand English law.

4  What he says is the circumstances in which a duty of care

5  may be held to arise and not closed.  Have undergone steady

6  development over the course of the last two decades.  Well

7  over the last two decades, it hasn't expanded to where they

8  want it to go and I dare say this Court sitting in the

9  United States shouldn't get out in front of the English

10  Courts.

11           Ireland and the associates on my team assisted --

12           THE COURT:  Green.

13           MR. ZELBO:  -- that it be in green.

14           THE COURT:  Yes.

15  (Laughter)

16           MR. ZELBO:  And I suspect that's why Mr.

17  Bromley's wearing a green tie.

18  (Laughter)

19           MR. ZELBO:  Again, I just want to sort of assist

20  Your Honor in pointing out the differences in the law

21  because at the end of the day the allocations on fiduciary

22  duty are pretty much the same --

23           THE COURT:  Okay.

24           MR. ZELBO:  -- and suffer the same deficiencies

25  so I'm going to focus on the law for Ireland.  Everything I

1  said regarding the failure to plead the facts applies

2  equally to Ireland.  As I mentioned before, in Ireland, the

3  holding out argument for de facto director that you held

4  yourself out as a director is more important if not

5  dispositive and the *Moorview* case says that.

6           The more important point for now is that a

7  company in Ireland unlike in England can't be a de jure

8  director.  It's not allowed under the statute.  In England

9  they can, in Ireland, they can't because the company --

10          THE COURT:  It specifically says a company can't?

11          MR. ZELBO:  Yes.

12          THE COURT:  Okay.  All right.

13          MR. ZELBO:  And there's no dispute about this,

14  Your Honor.

15          THE COURT:  Okay.

16          MR. ZELBO:  That de jure director cannot be a

17  company, can only be a person.  And, in fact, it's Section

18  173 of the company's act.  And I said the opposite is true

19  in England, that's why there's a person -- a company, excuse

20  me, can be a de facto director --

21          THE COURT:  Right.

22          MR. ZELBO:  -- in England.  Because a company

23  can't be a de jure director.  It logically follows they

24  can't be a de facto director.  It would be very difficult

25  for a company to hold itself out as a de facto director if

1   everybody in the world knows a company can't be a director.

2            This is perhaps a good point of time to just

3   pause and make the proof I made in my introduction that

4   although the common and statutory law of Ireland share many

5   common features with the law of the UK, they are distinct

6   and independent bodies of law.  And --

7            THE COURT:  Yes.

8            MR. ZELBO:  -- we cited Irish cases which make

9   the point clear that Irish Courts make their own judgments

10  as to whether to follow the decisions of English Courts.

11  They certainly can, but they also needn't.

12           The statutory definition of shadow director in

13  Ireland is not, I think dissimilar in any material way from

14  the English definition.  There's case law in the *Fife's* case

15  that adds gloss to that in Ireland, the majority of the

16  board must act in accordance with the person's directions or

17  instructions.  A person has to exercise a controlling

18  influence in the boardroom.  None of that's alleged here.

19           Again, the allegations, those four transactions

20  vis-a-vis Ireland and England for purposes of this issue are

21  similar enough that the same reasons that they're not well

22  pled in England apply to Ireland.

23           In Ireland, rather than sort of needing to look

24  at case law for the fiduciary duties of a shadow director,

25  it's in the statute.  They only owe the duties set forth in

1   the statute.  And interestingly, what NN Ireland seeks to do

2   is they're relying on some draft legislation and it's not

3   been enacted which may if it's ever passed, impose duties on

4   shadow directors.  I think that proves our point, not theirs

5   as to what the existing law in Ireland is today.

6            I won't dwell on this, but it's also clear under

7   Irish law that de facto and shadow directors are distinct

8   categories. More of UK makes that quite clear.  And the

9   reason this is interesting is because NN Ireland has a

10  problem, right?  A company can't be a de facto director, but

11  a shadow director has no fiduciary duties so they kind of

12  want to mush them together.  You can't, they're separate.

13  But even if you do, they haven't pled it, but you can't.

14           Your Honor as I said, I'm not going to go through

15  all the allegations again.  The same reasons that apply to

16  NNUK apply to NN Ireland.

17           Breach of fiduciary -- duty of care in Ireland.

18  It is very similar to English law in that you can't apply a

19  duty of care except in special relationships that aren't

20  alleged here.  But you won't be surprised to learn instead

21  of English case law, we're actually looking at Irish case

22  law, but they're not dissimilar.  In *Glencar* in 2002, the

23  chief justice of the Irish Supreme Court made clear that

24  damages for pure economic loss are normally not recoverable

25  for breaches of duty of care.  The experts agree on what

1  *Glencar* says.  What NN Ireland relies on is a Lower Court

2  case *McShane* that proceeded *Glencar* by five years.  We

3  respectfully think, Your Honor, should follow the subsequent

4  Supreme Court case, not the prior Lower Court case.  There's

5  also no dispute that no Irish Court has ever imposed a duty

6  of care whereas here are solely economic and between

7  affiliates.

8           I have now gone through the breach of fiduciary

9  for U.S., excuse me, for NNUK and NN Ireland.

10          THE COURT:  Right.

11          MR. ZELBO:  Mr. Qureshi is going to talk about

12  France and then we'll yield the floor to Mr. Adler.

13          THE COURT:  All right, thank you.  By the way, if

14  people need a break, don't hesitate to ask.  It's certainly

15  not my intention to have people suffering in here.  Mr.

16  Qureshi, good afternoon -- good morning, I'm sorry.

17          MR. QURESHI:  Good morning, Your Honor.  Your

18  Honor, just for planning, I think I can get through the

19  French piece of this.  It's largely repetitive --

20          THE COURT:  Yes.

21          MR. QURESHI:  -- in about ten or fifteen minutes

22  so.

23          THE COURT:  Okay, fine.  Take your time.

24          MR. QURESHI:  Would Your Honor like me to proceed

25  or take a break?

1          THE COURT:  Does anyone -- would anyone like a

2    break at this point?  Why don't we take a break after your

3    presentation --

4          MR. QURESHI:  Certainly.

5          THE COURT:  -- Mr. Qureshi.

6          MR. QURESHI:  Okay.  Well again for the record,

7    Abid Qureshi, Akin, Gump, Strauss, Hauer and Feld on behalf

8    of the official committee.  And I guess I can say bon jour.

9          THE COURT:  Okay.

10          MR. QURESHI:  And as I promised on the phone, I'm

11    surely going to do all of this in English.

12    (Laughter)

13          THE COURT:  Good.

14          MR. QURESHI:  Your Honor, before we get into the

15    details of the French claim, just a couple of words on sort

16    of background of French law here.  The hierarchy, if you

17    will, of the legal norms in the French system and there's no

18    disagreement on this, you start with the Commercial Code.

19    That's where the statement of the law exists.  Then

20    jurisprudence which unlike in the U.S. system is not

21    binding, however it is something that other Courts look to

22    for guidance.  And then lastly, you look to what the French

23    refer to as ductain [ph] which is scholarly opinion in

24    journals and treatises.  And you will hear discussion of all

25    three and read that in the two expert reports.

1          Now I mentioned the case law and this is I think

2    an important point as we go through this.  It is, in fact,

3    not binding precedent.  That being said, what you will see

4    in Mr. Bremond's declaration, he is our French law expert,

5    is that decisions from the highest Courts in France, the

6    Cour de Cassation is the highest Court, as well as, the

7    Courts of Appeal are, in fact, regularly cited in decisions

8    of other Courts and are considered to have persuasive value.

9          So with that introduction, let me turn to what

10   the French claims are.  So they arise under this section

11   that's up on the screen of the French Commercial Code.  And

12   the elements, I think again are largely not in dispute.  And

13   we're going to be stuck on the first one.  Is the person

14   sued a de jure or de facto director of the legal entity?

15   And so again, the discussion here is going to be centered on

16   the de facto director.

17         So let's start with what is the standard in

18   French law for a de facto director?  And again, there's no

19   disagreement here between the two experts, Your Honor, that

20   a de facto director is shown by the performance of positive

21   acts of management that occur independently and

22   consistently.  When we get into the details of that, that is

23   where we see that there is, in fact, a difference of opinion

24   between their expert, Professor Menjucq, I'm sure I'm

25   mispronouncing his name for which I apologize, and Mr.

1   Bremond.

2              What NNSA says is that in looking at the de facto

3   director inquiry, the question is whether the performance of

4   predominate influence through the performance of acts of

5   management as would a de jure director act.  Now in Mr.

6   Bremond's declaration, he sets forth an analysis of the

7   French case law and also of the scholarly opinion and

8   articulates a standard for a de facto director that is

9   somewhat different than how it is presented by EMEA's

10  expert.  And his formulation is that the acts of the de

11  facto director must have so reduced the decision making

12  independence of the company's de jure directors, that the

13  alleged de facto director dominated the debtor.  And that,

14  Your Honor, is the key point.

15             There are a number of cases that are cited on the

16  screen.  Your Honor has some summaries of a few of them.

17  I'm not going to go through all of them in detail.  The

18  point is that the wording in some of these cases differs.

19  Some say strict control, some refer to total subordination

20  of the de jure directors by the alleged de facto director.

21  But the theme is clear that what is required is that there

22  be domination, however, expressed.  The words might be

23  different in the cases, but the substantive standard is

24  clear.  It's domination.

25             Now as was the case with NNUK, it's also

1    important to note, Your Honor, what is not in the case law.

2    There is no French case that we are aware of or that is

3    cited by EMEA's expert that has ever held that one

4    subsidiary can be a de facto director of a sister

5    subsidiary.  And nor might I add, does EMEA's French law

6    expert cite to any scholarly opinion that says that that is

7    the case.  So again, I think Your Honor is faced with not a

8    statement of what the law is in France today on this issue,

9    but rather what EMEA wishes it would be.

10            Now I'll turn in a minute to the specifics of

11   what they claim and the deficiencies in what they claim.

12   But before I get to the details in that, it's important to

13   note that there is just no allegation in the proof of claim

14   that NNI specifically undertook any conduct that expressly

15   dominated the de jure directors of its sister subsidiary.

16   It's just not there.  Your Honor is effectively being asked

17   to read that in to the allegations that are there.  They've

18   -- the sum and substance of their argument is it can be

19   implied from what they do allege.

20            Judicial estoppel no need to repeat it.  The

21   allegations here are exactly the same, Your Honor, as they

22   were with respect to NNUK and NN Ireland, so need to repeat

23   anything there.

24            So next we go in NNSA's proof of claim.  And

25   again, it's virtually identical and so here we have again

1   Mr. Ryan Smith.  And again, no need to repeat it.  But there

2   is one important distinction here with respect to French

3   law.  And this demonstrates why it just cannot be the case

4   that there is a de facto directorship under French law.

5   What we are told in this paragraph is that first, Mr. Smith

6   or NNI rather was involved in the planning and

7   implementation of Project Swift.  That's Paragraph 74 that

8   proceeds this quote.  And that clearly is not enough to give

9   rise to the type of domination that French law requires.

10  But the next thing we're told is that Mr. Smith, in fact,

11  pushed the NNSA controller, the French Controller, it said

12  in connection with Project Swift, repay 50 million Euros.

13  That's what I want you to do.  Now we don't know in what

14  capacity he was doing that as was pointed out.  He was at

15  the time secunded to NNUK.  But regardless of what capacity

16  he was doing that in, the answer in their pleading, Your

17  Honor, was no, I'm not going to do it.  NNSA said because of

18  our financial predicament, because of our financial state,

19  we will not pay the 50 million Euros.  We will pay half of

20  it.  Well that, Your Honor, is squarely and 100 percent

21  inconsistent with the type of domination that is required in

22  order for there to be a de facto directorship under French

23  law.  It's cut and dry.

24          Now with respect to the other claims, and again,

25  Your Honor, I won't belabor this because the allegations are

1  virtually identical to what Mr. Zelbo reviewed with respect

2  to NNUK and NN Ireland.  They're generalized allegations.

3  The only individuals that are named are individuals that

4  have global functions and again, that's just not enough to

5  have the type of domination and the specificity that is

6  necessary to plead that.

7           With respect to all of the transactions, the

8  allegations are much as you see here, Your Honor, very

9  generalized.  And again, with respect to the French claims,

10  there is no distinction drawn between the role of NNI and

11  the role of NNL.  So with respect to the MRDA for example,

12  what you see on the screen, Your Honor, is that there was an

13  instruction given and it stated in the passive in the proof

14  of claim.  There's no allegation as to who gave the

15  instruction.  And then that's followed by NNI and NNL both

16  being alleged to have decided the terms of the MRDA.  What

17  is utterly lacking is any allegation that NNI specifically

18  told NNSA to do anything at all.  And Mr. Bremond is very

19  clear, Your Honor, that as a matter of French law, that's

20  insufficient.  You can't simply say that two people did

21  something and, therefore, one of them must be a de facto

22  director.  It does not cut it.  You must be clear.  You must

23  allege specific acts in this case against NNI and that

24  wasn't done.

25           And just a brief comment on plausibility.  While

1   in certain portions of the claim it is alleged that NNI and

2   NNL together exerted control, exerted, you know, made

3   certain decisions, but again, without distinction as between

4   the two.  What we are told in the proof of claim in

5   Paragraph 13 is that Nortel was highly centralized and that

6   control was maintained primarily by the Canadian entities.

7   And so even asking Your Honor to read into the allegations

8   which is what they are doing, that it was NNI and not NNL

9   that exerted the type of dominance and influence that would

10  be necessary to give rise to this type of claim under French

11  law, even that, Your Honor, is just inconsistent with what

12  they plead elsewhere.

13          So to sum up the deficiencies in the pleadings,

14  what this slide shows you is what they would need to have

15  pled in order to have a claim that could survive the *Twombly*

16  *and Iqbal* standards.  There is no allegation that NNI gave

17  any instructions to NNSA's de jure directors.  I think the

18  de jury directors of NNSA actually aren't even named in the

19  proof of claim.  There's no allegation that those de jure

20  directors actually did what NNI instructed them to do.

21          Again, all we know about that, Your Honor, is

22  that the controller said no with respect to payments

23  demanded by Mr. Smith in whatever capacity he was acting.

24  No allegation that NNI signed any document on behalf of

25  NNSA.  Entered into any agreements on their behalf.  No

1  allegation that NNI directed or required NNSA to sign any

2  document.  No allegation explaining why it would be logical

3  or plausible that NNSA as de jure directors would follow any

4  direction from its sister subsidiary NNI.  And so, there's

5  nothing there.

6              The remainder of the allegations are entirely

7  conclusory.  They don't point to any affirmative act by NNI

8  management at all.  And as I mentioned, no distinction of

9  the role between NNI and NNL and fall far short of alleging

10 the type of domination and control that is necessary in

11 order for this claim to arise under French law.

12             So that's all I have, Your Honor.  Again, I think

13 it largely follows what Your Honor heard factually with

14 respect to the UK and Ireland.  I'll be back to deal with

15 the French law issues on the secondary liability claims.

16             THE COURT:  Sure.

17             MR. QURESHI:  But that's it for now.

18             THE COURT:  Thank you, Mr. Qureshi.

19             MR. QURESHI:  Thank you.

20             THE COURT:  Thank you, sir.  All right.  Mr.

21 Adler?

22             MR. ADLER:  I think -- I have a lot to cover.  I

23 think this probably is a good time for a break.

24             THE COURT:  Oh, sure.

25             MR. ADLER:  Maybe a --

1          THE COURT:  Fifteen minute break?

2          MR. ADLER:  That sounds about right, Your Honor.

3          THE COURT:  Yes, with the number of people here

4    and the limitations.  Why don't we take a fifteen minute

5    break?  Did you have anything further?

6          MR. ADLER:  Nope.

7          THE COURT:  Okay.  All right.  We'll stand in

8    recess for -- until about 20 after then.  Thank you.

9    (Recess from 11:01 a.m. to 11:20 a.m.)

10          THE CLERK:  Please rise.

11          THE COURT:  Thank you, everyone.  Please be

12    seated again.  I will just tell you in advance that I may

13    have to take an emergency call.  They're threatening to turn

14    off utility service to one of my debtors so they're trying

15    to talk them out of it, but if they can't, then they'll have

16    to call me before noon today.

17          MR. ADLER:  Of course we understand, Your Honor.

18    Thank you for the warning though.

19          THE COURT:  Thank you.  Sure.

20          MR. ADLER:  All right.  Well this is my segment

21    on the breach of duty claims.

22          THE COURT:  Yes.

23          MR. ADLER:  Responding to the arguments we've

24    just heard.  And I'll just say at the outset, I said before

25    we win on their test.  It is not a plausible inference from

1   that statement that we accept their view of the law on all

2   those points as I think Mr. Zelbo well understands.  We

3   still disagree about the law, but we say that even if you

4   apply the views of their foreign experts, we've pleaded

5   sufficient facts to make out our claims.

6          Well as I alluded to before, having engaged in

7   this extensive comparative law exercise, what's clear is

8   that there's a universal principle at work in all of these

9   jurisdictions with only slight variations.  Which is that if

10  a party which is not a de jure director assumes a role in

11  directing or influencing the business affairs of a company,

12  that person will have to answer further consequences.  The

13  Courts around the world impose duties on such a person.

14  There are some variations about the way its approached in

15  different jurisdictions, but it appears to be a kind of a

16  fundamental principle of justice or equity that a person who

17  has treated in, involved itself in the affairs of a business

18  entity will have to answer for the consequences of that and

19  has to do that in the best interests of the entity.

20         Now a few words about the declarations that have

21  been submitted here by the foreign experts.  As Your Honor

22  reviews them, I think you'll see that they have really

23  overstepped the boundaries of what they've been asked to

24  opine on.  Every one of the U.S. debtors' experts actually

25  purports to apply the pleading test.  They don't say they're

1   doing it, but they say they're somehow around the world

2   everyone now knows that you strike conclusory statements

3   from a pleading.

4   (Laughter)

5            THE COURT:  Yes.

6            MR. ADLER:  And they've all been applying that

7   test without, I should say, without really saying what they

8   mean by striking conclusory statements.  I would suggest

9   that those parts of the declarations are interesting, but

10  it's obviously Your Honor's job to determine whether the

11  U.S. pleading test is met.

12           THE COURT:  Certainly.

13           MR. ADLER:  It's really only the elements that

14  are meant to be taken from those foreign affidavits.

15           THE COURT:  Yes, I had the same thought, Mr.

16  Adler.

17  (Laughter)

18           MR. ADLER:  Thank you, Your Honor.  I'll talk

19  about de facto and shadow directors.  This is breach of

20  fiduciary duty claim supported by de facto and shadow

21  director allegations under English law.  I'll treat them

22  together because they really are related concepts.  And as

23  we'll see when we get to the *Holland* case, they're now seen

24  by the English Courts as a kind of a continuum, overlapping

25  concepts.

1          The principle of de facto directorships comes

2   from Section 250 of the Companies Act, the English Companies

3   Act which basically provides that a "director" includes any

4   person occupying the position of a director by whatever name

5   that person may be called.  And from this principle has

6   arisen the doctrine that a person who functions like a

7   director will be considered a de facto director with all of

8   the attendant duties and liabilities.

9          And the English law experts agree on a number of

10  important points.  They agree that under English law, a

11  company can be a de facto director of another company or a

12  shadow director also.  They agree that there's no statutory

13  definition of the types of activities that would make you a

14  de facto director.  They agree that once a party is

15  considered a de facto director, they're subject to all of

16  the duties that apply to that office, including a fiduciary

17  duty and a duty of care.  They have a disagreement about the

18  type of functions or role, what the test is that you have to

19  show in order to demonstrate that someone's a de factor

20  director.  What the factors are that should be taken into

21  consideration and then how to apply those factors.

22          Now the related concept of a shadow director as

23  Mr. Zelbo alluded to before, this is defined in Section 251

24  of the Companies Act.  As a person in accordance with whose

25  directions or instructions, the directors of a company are

1  accustom to act.

2          Now one point that's quite important for

3  examining the allegations here is that those instructions

4  don't have to be terribly formal.  It's a very factual

5  question as to whether instructions have been given.  One of

6  the leading English cases on shadow directorship is the

7  *Devereux* case, *Secretary of State for Trade and Industry vs.*

8  *Devereux* which was a 2001 Court of Appeals case.  That's

9  their intermediate Appellate Court in which Lord Justice

10  Morritt observed whether any particular communication from

11  the alleged shadow director whether by words or conduct is

12  to be classified as a direction or instruction must be

13  objectively ascertained by the Court in light of all the

14  evidence.  In that connection, I do not accept that it is

15  necessary to prove the understanding or expectation of

16  either the giver or the receiver.  And so instructions don't

17  have to be formal.  They don't have to stand there and order

18  somebody to do something.  If there's an understanding that

19  the directors acted on behalf of -- act in accordance with

20  the will of an outside party that is sufficient.  That's

21  quoted in Mr. Marshall's declaration at Paragraph 28 where

22  he discusses that principle.

23          Once again, the English law experts agree on a

24  number of points about shadow directorship.  They agree that

25  a professional who gives advice to directors in a

1  professional capacity doesn't become a shadow director if

2  they follow his advice so that that doesn't apply here.  A

3  parent company will not generally be considered the shadow

4  director of a subsidiary.  It's not necessary to show that a

5  shadow director had influence over the whole field of a

6  company's activities.  It's enough to show that there were

7  selective transactions that in which the directors followed

8  the will of the outside party.

9          They agree that in order to be considered a

10 shadow director, a party must have real influence over

11 certain decisions.  I just said this, I'm sorry, I'm

12 repeating myself.  But it's not necessary that influence be

13 exercised over the whole field of corporate activities.  Mr.

14 Todd also admits and which is the U.S. debtors' expert also

15 admits that the concept has to be construed broadly in order

16 to give effect to parliamentary intent and not strictly

17 construed.

18         Now as I said before, the two experts, Mr. Todd

19 and Mr. Marshall disagree about how to apply this test.  And

20 in considering their respective opinions, with all due

21 respect to Mr. Todd who is a respected jurist at QC over in

22 England, there are a number of reasons why you should give

23 Mr. Marshall's opinion more weight than Mr. Todd's.

24         First of all, he admitted in his declaration, he

25 admitted at his deposition that his declaration was actually

1  prepared for him by counsel for NNI.  Although he reviewed

2  and approved it, the report was drafted by Philip Gillian

3  who's another barrister who was actually counsel to NNI,

4  appeared as counsel to NNI at the depositions over there.  I

5  mean, that raises questions about his independence in

6  issuing his opinion.

7           More significantly, Mr. Todd's report is

8  discredited by the fact that he relied on older Trial Court

9  cases, the *Gemma* case in relation to the standards for a de

10 facto director while completely failing to bring the Court's

11 attention to the *Holland* case which is a 2010 House of Lords

12 case.  I beg your pardon, Supreme Court case as it is now.

13 It's a 2011 decision, I beg your pardon, that squarely

14 addresses the test for determining de facto and shadow

15 director status.

16           At his deposition, Mr. Todd was unable to

17 adequately explain why he would have failed to mention the

18 leading controlling case in this area.  He was evasive and

19 seemed reluctant to admit that he understood what the term

20 leading authority even was.  In fact, if you look at Mr.

21 Todd's overall performance at his deposition, I think if you

22 read the transcript, you'll see that he was very evasive and

23 unconvincing.  It's not time to go through that in detail

24 now, but we would invite Your Honor's attention to read the

25 two transcripts together and consider which one of the two

1    experts is more credible and convincing.

2             Now in order to approach the question of whether

3    someone can be considered a de facto director, you have to

4    know about the role of directors in an English company which

5    is not exactly the same as what we think of here.  Mr.

6    Marshall asserts that a party can only be considered a de

7    facto director if he's undertaken functions that can only be

8    undertaken by a director.  The role of directors is broader

9    in England and less well defined than under U.S. law.  They

10   have greater involvement typically in the day to day

11   management of a company unless they've delegated it.  The

12   starting point under English law is that all of the

13   management functions are vested in the directors.  The

14   articles of association of a company dictate what the

15   director's responsibilities are.

16            We've actually brought along some additional

17   authorities on this that actually, I think all of them are

18   things that the U.S. debtor has seen previously in the

19   depositions, I believe.  Actually, I take that back, they've

20   seen one of the items.  We have a declaration that I'd like

21   to tender of John Whiteoak who's an English lawyer.  We're

22   just attaching three exhibits so one of them is the form of

23   standard articles of association in England.  The second is

24   the actual articles of NNUK which the -- Mr. Zelbo and other

25   U.S. debtors' counsel have seen at the depositions in

1  London.  And the third item is just some excerpts from an

2  English treatise on company law which I'd like to hand up.

3  These are just legal authorities and not factual matters.

4            THE COURT:  Mr. Zelbo?

5            MR. ZELBO:  Your Honor, we would object to this.

6  I think if they wanted to -- I guess I'd divide it up into

7  two categories.  First of all, any factual documents they're

8  putting in such as NNUK's articles of incorporation or

9  something like that are completely inadmissible both because

10 that's not in their pleading and it's not to be considered

11 on this motion.  So those clearly should not be admissible.

12            Secondly, with respect to this -- some --

13 whatever sample, I obviously haven't looked at these

14 documents, I don't know what they are, but as far as the

15 sample articles of incorporation are utterly irrelevant to

16 anything and whatever treatise they want to put in, I would

17 just say look, they had plenty of opportunity to put in

18 whatever they wanted.  And to hear at oral argument for the

19 first time new authorities being submitted, I think is

20 inappropriate so we would object to the admission of all

21 this.

22            MR. ADLER:  Your Honor, a couple of points.  The

23 articles and association of NNUK are a publically filed

24 document that are filed in Companies House in London.  The

25 copy we have here has the little Companies House seal on it.

1  That's entitled to judicial notice.  They were presented to

2  Mr. Todd at his deposition.  And there's a series of

3  questions that he was asked about these matters at his

4  deposition that I'll refer to in a moment.  The standard

5  form of articles is also, I think a part of a statute in

6  England, I believe.  And so we're actually citing Your Honor

7  to a statutory authority.  This is no different than saying

8  that some statute in England is relevant and we want to

9  provide you with a copy of it.  And the same is true of the

10 treatise.  It happens to be the *Gore Brown Treatise* which

11 Mr. Marshall, excuse me, Mr. Todd, their expert is one of

12 the general editors of that he cited in his own declaration,

13 although not the particular sections we're handing up.

14         So again, it's just a legal authority and this is

15 a convenient way of presenting and this is at treatise, it's

16 not even a case or anything like that, presenting that to

17 Your Honor.  But it became clear at Mr. Todd's deposition

18 that there were some matters here that needed to be

19 addressed more fully in order to understand the context of

20 his opinion and the weaknesses of his own opinion.

21         MR. ZELBO:  Your Honor, I don't know when this

22 became clear to them, but I seem to think it became clear at

23 the deposition which was awhile ago still.  They had plenty

24 of opportunity. I don't think it's appropriate on the day of

25 the argument, not even the day before, Your Honor, to come

1    here and give new and response sources that our experts

2    haven't had a chance to respond to.  We haven't had even a

3    chance to see.  I don't think it's appropriate, Your Honor.

4            THE COURT:  I'm going to agree with you, Mr.

5    Zelbo and there's been so much work already done and the

6    submissions are very extensive and I think it -- to take the

7    debtors by surprise on this, on these is I don't think

8    appropriate here.

9            MR. ADLER:  All right.

10           THE COURT:  I certainly will hear -- I'm hearing

11   your arguments, of course, but I have to sustain that

12   objection.

13           MR. ADLER:  Okay, Your Honor, I understand.  Well

14   let me just take you through then a little bit of what Mr.

15   Todd actually said about this --

16           THE COURT:  Sure.

17           MR. ADLER:  -- in relation to -- in his

18   declaration first of all and then at his deposition.  Well,

19   I mean, the subject that we're discussing is how you

20   determine what functions are functions that can only be

21   performed by a director which is what Mr. Todd says is the

22   standard here.  Now Mr. Todd expressed the conclusion that

23   the allegations in the proof of claim do not satisfy the

24   requirements that NNI performed functions that could only

25   have been properly performed by a director of NNUK.  That's

1   in his first declaration at Paragraph 44.

2          At his deposition, he admitted that there's no

3   standard definition of director's functions under English

4   law.  That's at Page 107 of his deposition.  By the way, the

5   parties have agreed that we will hand up at some point full

6   copies --

7          THE COURT:  The designations.

8          MR. ADLER:  -- of the two deposition transcripts

9   so --

10          THE COURT:  Very well.

11          MR. ADLER:  -- I think each side has highlighted

12  the parts they like of the other side's deposition.

13          THE COURT:  Okay.

14          MR. ADLER:  And we've agreed to just hand them up

15  in full at some point, I believe.

16          THE COURT:  That's fine.

17          MR. ADLER:  Now in being questioned about how you

18  would decide whether a particular company's -- the actions

19  of people in relation to a particular company were director

20  only actions, he admitted that the first place you would

21  look for a particular company would have to be the articles

22  of incorporation.  That's at his deposition at Page 108.

23  But he also admitted that he had never looked at NNUK's

24  articles of incorporation prior to the time when they were

25  handed to him at his deposition.  That's in the deposition

1  transcript at Paragraph 14.

2         So the question arises as to how he formed the

3  view that the allegations in the proof of claim were

4  director only functions.  This -- there's no specific

5  definition of this at U.S. law, in U.K. law and he didn't

6  look at the document that he admitted would be the key

7  document in deciding for a particular company whether the

8  activities of an alleged de facto director were director

9  only activities.

10        Now we mentioned, you know, several times it's

11  been mentioned the English Supreme Court's case, the *Holland*

12  case.

13        THE COURT:  Yes.

14        MR. ADLER:  This is the as we said, the Supreme

15  Court.  It's binding on all English Courts and establishes

16  the principles that apply to all cases involving an

17  allegation of de facto directorship.  And I think it is

18  worthwhile to look at a couple of the speeches.  The -- in

19  Supreme Court decisions, they issue five separate speeches,

20  the different Lords.  And there is -- and it's often they'll

21  agree on what the outcome is and you have to read the

22  various speeches to determine what the rational is and they

23  may or may not overlap, but everyone on this team has spent

24  a lot of time reading these.  They're worse than our Supreme

25  Court in terms of trying to get together and agree on what

1  they're saying in these cases.  So the first --

2           THE COURT:  At least you don't have to read them

3  with the accent.

4  (Laughter)

5           THE COURT:  That would be even worse.

6           MR. ADLER:  I wouldn't even try that.

7           THE COURT:  Right.

8           MR. ADLER:  All right.  The first one and these

9  are all quoted.  The quotations I'm going to give you are

10  all quoted in Mr. Marshall's declaration, our expert's

11  declaration at Paragraphs 19 and 20.  I don't think you need

12  to read along with me, but just a few excerpts that I'd like

13  to read.

14           The first is from the speech of Lord Hope who was

15  addressing how you would -- how it is to be pleaded and

16  proved that a particular party would be de facto director.

17  And he said it is plain from the authorities that the

18  circumstances vary widely from case to case.  Jacob, Justice

19  Jacob declined to formulate a single decisive test in the

20  *Chally* case.  And he saw the questions very much as one of

21  fact and degree.  He was commended by Robert Walker, LJ in

22  the *Kaytech* case.  I'm not giving you all the citations for

23  not doing so.  And I respectfully agree that there is much

24  force in Justice Jacobs' observation.  All one can say as a

25  generality is that all the relevant factors must be taken

1  into account.  He's rejecting the idea that there's a single

2  test for this.  It's something that you have to look at on

3  the totality of the facts.

4          And Lord Hope goes on to say it's possible to

5  obtain some guidance by looking at the purpose of the

6  section.  Reliability is imposed on those who were in a

7  position to prevent damage to creditors by taking proper

8  steps to prevent their interests.  As he put it, those who

9  assume to act as directors and who thereby exercise the

10  powers and discharge the functions of a director whether

11  validly appointed or not, must accept the responsibilities

12  of the office.  So one must look at what the person actually

13  did to see whether he assumed those responsibilities in

14  relation to the subject company.

15          And from this we see that it's a highly factual

16  question. It depends on the particular company.  And the

17  underlying principle is that if you're in a position to

18  protect the interest of creditors, if you're acting in

19  relation to the property of a company, that is you're in

20  solvency, that is where you impose the duty.

21          Now the -- this is another speech.  This is in

22  Paragraph 20 of Mr. Marshall's declaration.  It's the speech

23  of Lord Collins who noted first of all and we've already

24  said this.  It's not necessary for anybody to be held out as

25  a director in order to be considered a de facto director.

1    But Lord Collins discusses the nature of the relationship

2    between the de facto director concept and the shadow

3    director concept.  And he says once the concept of a de

4    facto director was divorced from the unlawful holding of

5    office, there were two consequences.  The first consequence

6    was that the distinction between de facto directors and

7    shadow directors was eroded.  A shadow director is a person

8    in accordance with whose directions or instructions the

9    company -- the directors of the company are accustomed to

10   act.

11           In *In Re: Hydrodam*, Judge Millett said that de

12   facto and shadow directorship do not overlap.  They are

13   alternatives and in most and perhaps all cases are mutually

14   exclusive.  That's a quote.  But then Lord Collins goes on

15   to say the distinction was impossible to maintain with the

16   extension of the concept of de facto directorship and the

17   consideration of such matters as taking of major decisions

18   by the individual which might be through instructions to the

19   de jure directors and the evaluation of his real influence

20   in the affairs of the company.

21           The second consequence is that the Courts were

22   confronted with, the very difficult problem of identifying

23   what functions were in essence the sole responsibility of a

24   director or board of directors.  And he's discussing exactly

25   what we've been talking about here.  A number of tests have

1   been suggested of which the following are most relevant and

2   I'll just abbreviate whether the person was the sole person

3   directing the affairs of the company, whether there was a

4   holding out of the individual as a director, taking all of

5   the circumstances into account, whether the individual was

6   part of the corporate governing structure.  Those are the

7   three separate factors.  He's quoting the opinion in the

8   *Chally* case where Justice Jacobs said the concepts of the

9   shadow director and de factor director had in common that an

10  individual who was not a de jure director is alleged to have

11  exercised real influence, otherwise than in a professional

12  capacity in the corporate governance of a company.

13          And Lord Collins goes on to observe, in fact, it

14  is just as difficult to define corporate governance as it is

15  to identify those activities which are essentially the sole

16  responsibility of a director or board of directors.

17  Although perhaps the most quoted definition is that of the

18  Cadbury report.  Corporate governance is the system by which

19  businesses are directed or controlled.  So this is a very

20  broad test.  And the English Courts have trouble figuring

21  out how to apply it.

22          One final piece of this is Lord Collins' again

23  observation.  It does not follow that a de facto director

24  must be given the same meaning in all of the different

25  contexts in which a director may be liable.  It seems to me

1   that in the present context of the fiduciary duty of the

2   director, not to dispose wrongfully of the company's assets,

3   the crucial question is whether the person assumed the

4   duties of a director.

5           Turning -- the person must be part of the

6   corporate governing structure and the claimants had to --

7   I'm sorry, he's reading from a case where he says that in a

8   particular case it was found that the person must be part of

9   the corporate governing structure and the claimants had to

10  prove that he assumed a role in the company sufficient to

11  impose on him a fiduciary duty to the company and make him

12  responsible for the misuse of its assets.  It seems to me

13  that that is the correct formulation in a case of the

14  present time -- present kind.

15          So based on these speeches, the following points

16  are clear.  There's no fixed test for determining whether

17  someone is a de facto director.  It's a factual

18  determination that has to be made by looking at all of those

19  circumstances and in relation to a particular company.  The

20  touchstone is whether the person in question was in a

21  position to prevent damage to creditors by taking proper

22  steps to protect their interests.  This is someone who

23  assumed the duties of a director by participating in the

24  governance of the company.  A Court has to look to all the

25  evidence to determine whether the entity in question assumed

1   such a role and whether it's appropriate to impose a

2   fiduciary duty on that basis.

3          It's also clear that there's no reason why you

4   have to distinguish now between de facto and shadow

5   directors.  It's -- the concepts are overlapping.  They're

6   not mutually exclusive as had been suggested by Mr. Todd in

7   his original declaration and in the U.S. debtors' first

8   brief.  In fact, if you're a shadow director, if you're

9   giving instructions or otherwise controlling the board of

10  directors, you're almost certainly also going to be

11  considered a de facto director because you will be

12  exercising the same degree of influence.

13         Now Mr. Todd in his declaration cited the *Gemma*

14  case which is several years old, it's a Lower Court case as

15  providing the factors that should be considered.  He seemed

16  to suggest that this was a kind of exclusive test.  The

17  factors he referred to are still part of English law, but

18  they're not controlling as he suggested.  The *Holland* test

19  is the current test.  The *Gemma* factors that he referred to

20  are again whether the person performed functions that could

21  only be performed by a director.  Whether he was held out is

22  a factor to consider, it's not dispositive.  Participating

23  in directing the affairs of the company on an equal footing,

24  that's one that Mr. Todd makes a lot of.  Participating on

25  an equal footing with the other directors and not in a

1    subordinate role.  And finally, that the person exercised

2    real influence on the corporate governance.

3            So those, I mean, those factors are still

4    relevant, but they're not dispositive.  Mr. Todd, I should

5    say by the way, admitted the factual nature of this inquiry.

6    He said it wouldn't be possible to strike out this pleaded

7    claim in the English Courts.  This is at page -- his

8    deposition at Page 37 to 38 and 47.  And he admitted that

9    whether a party would be considered a de facto director --

10   I'm sorry.  Whether the -- a party could be considered part

11   of the corporate governance structure would be a jury

12   question he said.  This is at Page 26 of his deposition.

13   Now the U.S. debtor makes much of the fact that the experts

14   are not aware of any English case in which one -- a Court

15   has found one subsidiary to be a de facto or shadow director

16   of a fellow subsidiary.

17           THE COURT:  Right.

18           MR. ADLER:  They also were not aware of any case

19   in which that concept had been rejected.  This doesn't mean

20   we're arguing for an extension of the law.  It's simply an

21   application of existing principles to a set of facts that

22   they clearly apply to.  That's not an extension of the law.

23   Mr. Todd admitted also that there's no rule that would

24   prohibit applying the de factor director test in this

25   context.  That was at Page 108 and 109 of his deposition.

1              Now in applying these facts, these factors to the

2     proof of claim here, first of all, the approach that the

3     U.S. debtor has taken has been to kind of slice and dice the

4     proof of claim.  To look at individual words and sentences

5     involvement and things like that, participation in isolation

6     and argue that they don't satisfy the necessary test when

7     you view them piecemeal like that.  But that's not the

8     appropriate test. Under U.S. pleading rules, you are

9     supposed to apply common sense in looking at the

10    circumstances alleged in the complaint as a whole.

11             THE COURT:  Yes.

12             MR. ADLER:  It's also not a correct application

13    of English law where they examine the totality of the

14    circumstances.  And here, all of the facts taken

15    cumulatively do establish a proper basis for a claim that

16    NNI was a de facto director of NNUK in relation to the

17    transactions that we're addressing here.

18             With the Court's indulgence, I'd like to walk you

19    through the proof of claim itself.

20             THE COURT:  Yes, I would like that.

21             MR. ADLER:  Because I think it -- now it's

22    Exhibit A to Mr. Barefoot's declaration.  I do have extra

23    copies if you'd like one though.

24             THE COURT:  I've got it right in front of me.

25             MR. ADLER:  Okay, very good, thank you.

1          THE COURT:  Thank you, Mr. Adler.

2          MR. ADLER:  All right.  Well first of all, Mr.

3    Zelbo before suggested that we were giving some new -- that

4    what we said about how NNL and NNI kind of dominated the

5    world and is some sort of a new allegation, I would just

6    like to point out in Paragraph 3 of the proof of claim, the

7    Nortel Group was originally founded in Canada and

8    subsequently expanded into the U.S.  From this Canada and

9    North American base, Nortel sought to expand overseas.  And

10   I think that we did make it clear that that was the original

11   entity.  We don't use the words anywhere here, I've already

12   forgotten what the words were, the center of gravity.  But

13   it's factually correct and we think it's clear from the

14   allegations we've made here.

15          Now turning to the next page, we have the

16   allegations, the first set of allegations relating to the

17   insolvency of the Nortel Group.  Now it is relevant by the

18   way, to look at the group's solvency.  This is something

19   that the two experts agree on.  This is the *Faysha [ph]*

20   *Footwear* case, an English case referred to by Mr. Marshall

21   at Paragraph 35.5.2, Note 21 of his declaration and also

22   referred to by Mr. Todd, Paragraph 27, also in a footnote,

23   Note 27.  The *Faysha Footwear* case says that when you're

24   determining insolvency or near insolvency, the test is --

25   can include looking at the status of the entire group.

1          Now by the way, I was going to discuss this test

2    for insolvency a little further on, but I'll do it now.  The

3    balance sheet or cash flow insolvency is not required.

4    Under English law, there's a case recognized by Mr. Todd the

5    *West Mercia Safety Wear* case.  There's a line of cases which

6    have established that under English law, directors have a

7    duty to consider creditors' interests as paramount when a

8    company is of doubtful solvency or risk of insolvency.  Mr.

9    Todd refers to this at Paragraph 74 of his declaration.  So

10   he admits at Paragraph 71 that the interest of creditors

11   must be taken into account where the company is "near

12   insolvent or of doubtful solvency."  Again, that's Paragraph

13   71 of Mr. Todd's declaration.  In such circumstances, the

14   shareholders of the company are not able to ratify any

15   breach of duty that might take place by the directors.

16          So the standards that the U.S. debtor has been

17   arguing for of balance sheet or cash flow insolvency are not

18   --

19          THE COURT:  Um-hum.

20          MR. ADLER:  -- the only tests under English law.

21   It's sufficient to show near insolvency or at risk of

22   insolvency.  And that is, in fact, alleged in the proof of

23   claim.  It's alleged in general terms on -- in Paragraph 87,

24   Subheading 5 at the top of 29 in which it states given the

25   doubtful solvency and/or risk of insolvency of NNUK from

1    2000 onwards, failing to consider the best interests of the

2    creditors of NNUK as paramount and to take those interests

3    fully into account in exercising their powers and

4    discretions.  It's part of a longer clause, but it clearly

5    incorporates an allegation that NNUK was of doubtful

6    solvency and/or risk of insolvency from 2000 onwards.  So

7    whether we meet that test, whether we can prove that trial

8    is highly factual.  But it's not correct to state that

9    there's anything further we needed to allege on that.

10            The allegation is not implausible, however, given

11   the facts that are set forth in Paragraph 6 and onward which

12   we were starting to look at where it states that beginning

13   in 2001, the demand for Nortel's products dropped

14   dramatically in the wake of the dot.com crisis.  Nortel

15   Group reported losses of $25.7 billion, described the

16   downturn as severe and dramatic.  The next paragraph goes on

17   to describe the restructuring efforts they attempted to

18   undertake to revive their fortunes.  It notes that this

19   restructuring did not solve the group's financial troubles

20   which continued.  Nevertheless, it helped provide a stay of

21   execution and had the effect of ensuring that the collapse

22   of the group did not occur until early 2009.

23            In the period leading up to the collapse of the -

24   - the resources of NNUK were depleted at the direction of

25   the, there's an extra word there, NNL and NNI.

1          THE COURT:  That's right.

2          MR. ADLER:  So that's the factual background that

3    supports the plausibility of the fact that NNUK itself as

4    part of this group that was suffering was near insolvency or

5    at risk for insolvency.  And it leads into what I just read

6    is one of the first of many very clear statements indicating

7    that the resources of NNUK were depleted at the direction of

8    NNI.  It says those words at the direction of NNI.  That is

9    a factual allegation that when proven, will indicate that

10   we're -- it's supported by the way by many other allegations

11   we're going to get to, that when proven will show that the

12   joint administrators are entitled to recover on their

13   claims.

14          Going on from there at Paragraph 9, there's a

15   summary about the removal of value from the EMEA companies.

16   At all relevant points, the Nortel Group was operating in

17   such matter that cash and value were improperly removed from

18   NNUK and the other EMEA companies and transferred to NNL.

19   The claims in this rider concern such improper value

20   transfers and NNI's involvement in the same.

21          Going down to Paragraph 12.  Although NNL was the

22   primary beneficiary of such value removal, NNI also

23   benefitted on certain occasions.  These occasions include at

24   the time of the Project Swift transaction when NNI received

25   payments in cash from NNL in respect of its intercompany

1  loan facility while NNUK received the illiquid and

2  undervalued shares referred to above.  Now that's a basis

3  for inferring there that there was actually a transfer of

4  value, a traceable transfer of value in that instance from

5  NNUK to NNI through those transactions.  It also contradicts

6  the suggestion that's been made by Mr. Zelbo that NNI never

7  benefitted from any of these transactions that we allege

8  here.

9           Moving on, we have the first of many very clear

10  allegations of control in Paragraph 15 on Page 5.  While the

11  Canadian entities controlled the group on a general basis,

12  NNI was also involved in jointly controlling certain aspects

13  of the group's operation together with the Canadian

14  entities.  The control exerted by NNI related to group tax

15  matters, in particular transfer pricing and group treasury

16  matters.  These group tax and treasury functions were

17  responsible for the transactions pursuant to which value was

18  improperly removed from NNUK.  These are clear and

19  unmistakable allegations that NNI was part of the team that

20  actually controlled the transactions that are shown here.

21           Moving on to transfer pricing, Paragraph 16.  NNI

22  was heavily involved in the implementation and operation of

23  transfer pricing arrangements that deprived NNUK of so much

24  value as explained below.  NNI was also involved in the

25  advance pricing agreement negotiations with the Internal

1   Revenue Services, the Canadian Revenue Authority, and Her

2   Majesty's Revenue and Customs.  Pursuant to which the

3   approval of those revenue authorities was being sought to

4   the transfer pricing arrangements.  The key individuals

5   involved moving onto Paragraph 17, included in particular

6   John Doolittle of both NNI and the Canadian entities and

7   Mark Weiss, Mike Orlando, Lori Krebs, and John Payne of NNI.

8   Now Mr. Zelbo took you through before and showed you that

9   many of the individuals referred to wore dual hats. Not all

10  of them did.  The four people that were just named were --

11  my understanding is and it's certainly pleaded here were

12  only from NNI.

13          THE COURT:  Right.

14          MR. ADLER:  And I would also note I mean, what

15  they're really trying to ask you to do in reviewing this and

16  saying we can't tell whether somebody was acting on behalf

17  of NNI, this is really a summary judgment standard.  They're

18  actually making you -- asking you to make a finding of

19  something that is not clear from this as to what roles

20  people were alleging.  Obviously, we contend that they were

21  acting on the behalf of NNI and that's clear from our

22  pleading.

23          Paragraph 18, NNI had no substantive involvement.

24  It's role was limited to providing information for the

25  individuals as and when required and implementing the

1  decisions that had been taken by NNI and the Canadian

2  entities.  Now that shows that NNI, the decisions were taken

3  by NNI.  It says that right there.  It shows that they're

4  being instructed, they're being -- in the meaning of the

5  shadow director concept, NNI is being caused by -- I beg

6  your pardon, NNUK is being caused by NNI and the Canadian

7  entities to enter into these transactions.

8          Subparagraph A, the policy decision to change

9  from the previous cost sharing arrangements and to implement

10  the RPSM was taken by NNI and NNL.  They made that decision.

11  NNI and NNUK was not involved or consulted.  Now this is

12  clearly a directorial function on any way you construe that.

13  Deciding to change a major policy of the company is a

14  directorial function.  It's being pushed down on NNUK by NNL

15  and NNI.  The process by which the RPSM electronic model was

16  created and structured was also one that was handled by NNI

17  and NNL.  The terms of the master research and development

18  agreement were determined by NNI and NNL.

19          Once again, the terms of a key contract, on the

20  most important contracts this company entered into are

21  alleged to have been determined by NNI and NNL and not by

22  NNUK.  This is a specific factual allegation that supports

23  the claim that NNI was acting as both a de facto and a

24  shadow director in this context.

25          And NNUK was not consulted in relation to or

1   involved in the decision to implement the MRDA or the

2   decision regarding what the terms of the MRDA would be.

3   Again, this is a decision that's being foisted on NNUK by

4   NNI and NNL.  They're the ones who made the decision

5   according to this allegation.  NNI and NNL were also

6   responsible for instructing the legal advisors in relation

7   to the MRDA and transfer pricing generally.  Once the terms

8   have been decided, NNUK was simply instructed to sign the

9   MRDA.  There was no arm's length negotiation of its terms.

10  Again, that is clearly -- supports a shadow director

11  allegation.  The company was instructed.  It's clear from

12  this context that the instructions came from NNI and NNL.

13              Now, you know, a few words about some of the

14  other claims here.  They've said that we don't plead a

15  conspiracy claim.  The said that we don't plead facts

16  showing that NNL and NNI had an agreement to do any of the

17  things that we allege here.  This is not a case where you

18  have two independent entities engaging in parallel conduct.

19  It's clear that NNL and NNI are joined together.  They're

20  part of the same corporate structure, the management

21  functions and the management people are overlapping.

22  They're in constant communication.  It is not a leap to

23  suggest that they had an agreement and an understanding to

24  undertake the actions.  And that supports the conspiracy

25  claim.  It also shows here by the way, their knowledge,

1   their awareness of the effect that this was going to have on

2   NNUK and their intent that it would have at that affect.

3           Moving on with the allegations, NNI and NNL

4   controlled the all important advance pricing arrangement,

5   agreement application process.  Of the [indiscernible] of

6   Mike Weiss of NNY, Mike Orlando of NNY, and John Doolittle.

7   Again, two out of three of those people are NNI people.

8   They don't wear dual hats.  Took the lead in negotiations

9   with the IRS, the CRA, and Her Majesty's Revenue.

10          Moving on to the next page of Subparagraph E at

11  the bottom.  Later, John Payne also of NNI, that's another

12  NNI only individual, joined the lead team together with

13  Peter Look [ph].  NNI and NNL took sole responsibility for

14  instructing Nortel's professional advisors in relation to

15  the APA application process.

16          Next paragraph, once more, NNUK and its directors

17  and officers were excluded from the process even in relation

18  to negotiations with NNUK's own revenue authority.  All

19  dealings with HMRC were conducted by NNI and NNL.

20          Moving on and I don't want to belabor this, but

21  there are so many allegations here that, you know, when you

22  look at them together, it just it seems quite and plausible

23  to us that there was control.  There was influence.  It

24  shows incidentally, that the NNI was functioning on the same

25  basis as the other directors of the company.  NNL is clearly

1  also a de facto director here.  They're participating in an

2  equal manner as the other de facto director and a superior

3  manner to NNUK's own directors.

4          We allege in Paragraph 19 that the Nortel tax

5  department was effectively a joint function between NNI and

6  the Canadian entities.  Many of the key individuals within

7  the tax department were NNI personnel.  This was

8  particularly so in respect of the members of the tax

9  department who had responsibility for NNUK and EMEA.  It was

10  also particularly so in relation to the transfer of pricing

11  function which was heavily dominated by individuals from

12  NNI.  And then again, in a list of specific names there, we

13  have Mark Weiss, Mike Orlando, and Clare Barviari [ph] who

14  are NNI only individuals, they're not people that wear dual

15  hats.

16          And we move on to treasury matters.  The loan

17  facilities in Project Swift.  NNI through its personnel was

18  together with the Canadian entities, involved in the

19  implementation and initiative described above pursuant to

20  which Nortel companies were instructed to identify

21  opportunities to transfer cash and value to NNL.

22          Paragraph 21 goes interest free loan facilities

23  were put in place for the benefit of NNL and to the

24  detriment of NNUK.  Both the Canadian entities and NNI were

25  involved in the implementation of these facilities for this

1  very purpose.  It shows their knowledge.  It shows their

2  intent to put these in place to benefit NNL to the detriment

3  of NNUK.

4         Now the U.S. debtor is saying that you should

5  decide that it's not logical that NNI would have taken

6  actions which benefit NNL and not NNI.  There are multiple

7  plausible interpretations of some of the allegations that

8  are made here, some of the events that happened.  We think

9  it's quite clear from the totality that NNI, in fact, did

10 take actions that helped NNL.  That it was part of

11 implementing broad global initiatives that benefitted

12 primarily NNL, but that is not -- that doesn't mean that

13 they didn't do it.  The fact that they didn't have a direct

14 gain from it, they were part of this corporate governance

15 process and implemented these transactions.

16        Paragraph 22, the implementation of the interest

17 free loan facilities was conducted under the ultimate

18 direction of Katherine Stephenson, Group Treasurer and a

19 Director of NNI.

20        Paragraph 23, in respect of Paragraph Swift

21 again, NNI's directors, officers, and senior employees were

22 part of the management group that implemented Project Swift

23 to the detriment of NNUK.  Directors and officers of NNI,

24 including Paul Carr and William LaSalle were fully aware of

25 Project Swift.  This again shows their knowledge of the

1    consequences of their actions and were actively involved in

2    its implementation.  On the ground, Mr. Smith of NNI was one

3    of the key driving forces behind the implementation and

4    structuring of Project Swift.  His team came up with the

5    idea for Project Swift as a way of purportedly reducing

6    NNL's debt to NNUK and was then largely responsible for the

7    structuring and implementation of the transaction.

8         Your Honor, these are not conclusory allegations.

9    They're very specific.  They're tied to NNI.  They're

10   factual allegations that when proven will support the joint

11   administrator's claims.  He and his team were also

12   responsible for preparing the briefing notes to the various

13   Nortel boards and various presentations in support of the

14   transaction, as well as, being closely involved in the

15   valuation of the Swift subsidiaries.

16        Now we've talked about how instructions to the

17   board don't necessarily have to be given verbally.  You

18   don't have to say sign this.  By the way, one of the things

19   Mr. Zelbo said before about how there's nobody here whoever

20   signed an agreement as a de facto director.  Well I'd like

21   to see somebody that signs an agreement on behalf of a

22   company as a de facto director.  Obviously, that didn't

23   happen here.  But here, you've got NNI personnel who are

24   interacting directly with the Nortel board in order to cause

25   these transactions to take place.  That certainly is an

1  allegation that supports the shadow director claim.

2         Now we as I said before, the Supreme Court has

3  said you don't have to not have any conclusory allegations,

4  they just have to be supported by sufficient facts to show

5  that there's a good faith basis for them.  In Paragraphs 26,

6  we have allegations that allege expressly some of the things

7  that Mr. Zelbo said we don't allege.  It's a summary

8  paragraph.  For the reasons set out above and as explained

9  further below, NNI was a de facto or shadow director of NNUK

10 under English law by virtue of NNI making decisions in

11 relation to tax and treasury, treasury and tax issues which

12 could only properly be made by a director of NNUK or by

13 causing the de jure directors to act in accordance with his

14 instructions in relation to such issue.  In particular,

15 regarding NNUK's involvement in transfer pricing

16 arrangements and interest free loan facilities in Project

17 Swift.

18         Mr. Zelbo said we didn't allege that NNI

19 performed functions that could only be made by a director.

20 We did allege that here.  We've alleged it here.  And we've

21 enumerated what the functions are.  That satisfies the

22 pleading requirements under any reading of *Iqbal and*

23 *Twombly*.

24         Paragraph 27, by reason of the fact that NNI

25 jointly controlled each of these transactions and that the

1  transactions themselves improperly removed value from NNUK

2  and were contrary to its interests, NNI breached the duties

3  owed to NNUK.  Again, the allegation of joint control.

4           Paragraph 29, by causing or allowing NNUK to be

5  involved in the prejudicial transfer of pricing

6  arrangements, the interest free loan facilities and Project

7  Swift all of which resulted in NNUK's suffering losses and

8  by allowing NNI and NNL to control decision making in

9  relation to those transactions, the de jure directors of

10  NNUK also breached the duties which they owed.  There is an

11  expressed assertion that the de jure directors of NNUK

12  allowed NNI and NNL to control the decision making.  That

13  satisfies the test for shadow directorship.

14           Now we go on and this discusses, provides an

15  overview of the transfer pricing systems.  Then Paragraph 32

16  the proof of claim alleges that the decision to implement

17  the RPSM was taken by the Canadian entities at NNI.  It was

18  primarily motivated by a desire to allocate more profit to

19  the Canadian entities in order to benefit NNL at the expense

20  of NNUK.  Both NNL and NNI knew that this was to be the

21  case.  So once again, you have a key decision that's being

22  made by the Canadian entities and NNI.  You've got the

23  motivation for it and the knowledge that this was being done

24  to benefit NNL and to harm NNUK.  That satisfies elements of

25  several of the different claims.  Intent, knowledge, and

1  knowledge of the harm.

2         There are more allegations like this.  I won't

3  take you through every single one.  I'll note in Paragraph

4  38, there is another allegation that supports the doubtful

5  solvency.  The Nortel Group registered losses or at best

6  broke even during the entire period in which the RSPM was --

7  RPSM was in force.

8         Moving on to the MRDA, obviously one of the most

9  important agreements that the company entered and one that's

10 had a very bad affect on NNUK.  In Paragraph 40, we allege

11 again NNUK was not involved in the decision to implement the

12 MRDA or in negotiating its terms.  The terms of the MRDA

13 were determined by NNI and NNL based mainly on the

14 requirements of Canadian and U.S. tax laws in negotiations

15 with the Canadian and U.S. taxing agencies.  Again, a clear,

16 affirmative allegation that these matters were determined by

17 NNI and NNL.  This shows influence.  It shows control.

18        Moving on to Paragraph 47, referring to the

19 effects that the RPSM had on NNUK.  The RPSM as applied

20 under the MRDA, did not comply with the arm's length

21 principle.  It deprived certain entities including NNUK of

22 revenue and resulted in an intentional and improper transfer

23 of value away from NNUK and the other EMEA entities and

24 towards NNL.  NNI facilitated this value transfer.  These

25 allegations show that the intent of this was clear.  The

1  intent was to take money away from NNUK, a facilitation

2  certainly satisfied the aiding and abetting claim that we've

3  alleged here.

4          Going on to Paragraph 55.  Further, the RPSM

5  which is in the middle of the paragraph, also allocated NNL

6  and NNI's corporate costs to the residual profit pool.  As a

7  result, the amount of loss to be shared among the RPE's

8  including NNUK was increased.  Given the industry decline

9  and the sudden reduction in the volume of business, the

10  corporate costs of NNL and NNI were significantly in excess

11  of what was necessary to oversee and manage the global

12  Nortel Group.  This is an instance of NNI benefitting,

13  specifically benefitting from the arrangements that are

14  being put into place here.

15          Your Honor, I apologize and I thank you for your

16  patience where there's still more to cover actually in this.

17          THE COURT:  I understand.

18          MR. ADLER:  So we have a few more pages of this

19  but, you know, we just think it's important to show that

20  when you view this in totality, when you view the specific

21  allegations, there is a lot here that supports and there's

22  very specific factual allegations that support the claims

23  that we've asserted.

24          In Paragraph 57 on Page 17, there's the part of

25  this that addresses the cash to Canada program.  And in the

1  middle of the Paragraph 57, in line with this general

2  practice, in or around May 2003, NNI and NNL commenced the

3  search for cash to Canada.  This was a joint effort by the

4  two companies.  Initiatives to identify new schemes which

5  would enable the transfer of cash and/or value from NNL --

6  to NNL from NNUK and the other EMEA companies.  The cash --

7  the movement of cash wasn't accidental, it was the purpose

8  of this.  It was done knowingly and with intent.  The policy

9  was effectively a group treasury product headed up by

10  Katherine Stephenson of NNI.  NNI personnel were actively

11  involved in devising and implementing the resulting

12  initiatives.  They actually made the decision to ask how

13  this would be done to remove cash from NNUK and move it to

14  NNL.

15          The next paragraph, NNL was not the only

16  beneficiary of the cash to Canada initiatives.  NNI itself

17  also benefitted by virtue of cash being channeled from NNL -

18  - excuse me, from NN -- to NNL from NNUK and the EMEA

19  entities, NNL was able to and did make large cash payments

20  in respect of outstanding loan balance which it owed to NNI.

21  For example, repayments were made to NNI of $150 million on

22  21 December -- 21 November 2007, $154 million on 20 December

23  2007, $131 million on 28 March 2008, and $100 million on 24

24  April 2008, as well as, various smaller repayments around

25  the same time.  This is a clear benefit that went to NNI.

1          It's alleged to come as a result of the efforts

2    it took to strip NNUK of cash.  Had cash not been channeled

3    in this way, NNL could not have made such repayments and NNI

4    would not have benefitted the way it did.  One cash to

5    Canada initiative was to use interest free loan facilities

6    as a means of transferring the value from NNUK to NNL.

7    Again, this is -- shows the clear intent and knowledge of

8    what effect these efforts would have on NNUK in its cash

9    position.

10          Paragraph 61, another one of these loan

11    facilities.  The first interest free loan facility was

12    established on 10 December 2003 when NNUK was required by

13    NNL and NNI to make available to NNL an unsecured interest

14    free loan facility of 200 million pounds until 31 October of

15    2004.  Again, a specific allegation about NNI's involvement

16    in a specific transaction where it jointly with NNL imposed

17    its will on NNUK.

18          Moving on to Paragraph 63, again, NNI's benefit,

19    the benefit they received in relation to the loan

20    facilities.  During the period that NNI was involved in the

21    establishment of the interest free loan facilities and the

22    continued decisions to increase the size of the facility and

23    enable larger and larger draw downs by NNL, NNI also made a

24    number of loans to NNL.  Unlike the interest free loan

25    facilities provided by NNUK, the loans provided by NNI were

1  made on an interest bearing basis.   Further, the balances

2  under the NNI loans along with the interest which accrued

3  under the same, were regularly were paid in cash.

4           NNI is being treated completely differently here

5  from the foreign subsidiaries.   The foreign subsidiaries are

6  being stripped of cash.   On those occasions when NNI does

7  make loans, it gets interest on the loans and it gets

8  repaid.   This gives rise -- it shows that they were acting

9  in concert.   It shows the motivations for all this.   The

10 effect of this in Paragraph 64 was that NNUK lost value

11 while NNI benefitted and received cash.   The treatment of

12 the NNI loans by NNL contrast starkly with the treatment of

13 the interest free loan facilities.

14          And then the final sentence of that paragraph,

15 the directors, officers, and senior of employees of NNI were

16 or should have been aware of this.   Either way, NNI

17 benefitted as a result.   The motivation is clear.   The

18 knowledge is clear.   The result is clear.

19          There are additional allegations along those

20 lines.   I'll skip ahead to Project Swift, Paragraph 70 in

21 relation to Project Swift.   In late 2007, it was decided by

22 NNI and NNL that part of the loan should be repaid by NNL.

23 As explained above, Ryan Smith of NNI under the supervision

24 of Mark Weiss was a key individual in the implication of

25 Project Swift.   Again, the decision to make -- to implement

1  this transaction was made by them jointly.  It shows an

2  agreement and it shows NNI's role.

3           Paragraph 75, another benefit that NNI received

4  under a transaction that it had decided to undertake.  The

5  value of the Swift subsidiaries to NNUK was further reduced

6  by the extraction of approximately $275 million of value

7  from those subsidiaries including $120 million of cash prior

8  to Project Swift.  The beneficiary of that cash extraction

9  was NNI.  The cash in question was used to reduce sums owed

10  by NNL to NNI.  If paid to anyone, this cash should have

11  been paid to NNUK, not NNI.  This again shows the

12  motivation. It shows the benefit.  These were specific

13  factual allegations.  These are not conclusory.

14           Paragraph 76 includes another solvency

15  allegation.  Prior to implementing Project Swift at a time

16  when there was a significant likelihood of the Nortel Group

17  being or becoming insolvent.  It's another allegation of

18  mere insolvency.

19           Now there's more here, but I'll just try and skip

20  over and hit one or two more.  In Paragraph 84, in relation

21  to taxation matters, as explained above, NNUK's taxation

22  affairs were controlled by NNI and NNL.  Again, it's a

23  directorial function.  It shows control, knowledge,

24  awareness, and supports all of the different claims.

25           Your Honor, there are -- you know, frankly, it

1    goes on and on.  And perhaps I've hit the point enough to

2    show that the allegations here are specific and factual and

3    they pertain to specific people, specific transactions.

4    These are not conclusory.  There are conclusory allegations,

5    but they're alleged in order to provide a summary and a

6    framework, but the claims are very well supported and they

7    establish each of the elements of the causes of action we've

8    been discussing.  And we've clearly met the 12(b)(6)

9    standard and there's certainly no question that we've met

10   the Rule 3001 standard for a proof of claim in this.

11          Now the U.S. debtor has tried to spin these facts

12   to encourage you to make findings that are not reflected in

13   the allegations.  They'd like you to find that all of NNI's

14   actions were done on behalf of or at the behest of the

15   parent company of NNL.  I think we've just shown that that's

16   not the case.  They clearly did act independently.  They

17   made decisions and imposed them and they've benefitted from

18   those decisions.  This is a defense that they apparently

19   will assert, but it can't be decided on this record.  The

20   joint administrators certainly dispute that assertion.

21          The facts stated in the proof of claim certainly

22   don't support a finding that either NNI was not acting on

23   its own behalf here or that everything was done at the

24   behest or for the benefit of NNL.

25          Moving onto a bit more law here.  We've discussed

1    and Mr. Zelbo referred to the dispute about what duties are

2    imposed on shadow directors.  The main disagreement is about

3    whether shadow directors owe fiduciary duties to the company

4    in respect of which is a shadow director.  As we've seen,

5    the concepts of shadow and de facto directors are

6    overlapping.  There's no dispute that de facto directors do

7    owe fiduciary duties to the company.  But nevertheless, we

8    do contend and Mr. Marshall supports this quite clearly that

9    under the circumstances presented here, a shadow

10   directorship would impose fiduciary duties.

11           Yeah, the only authority that Mr. Todd supports,

12   or cites in support of his decision, his position on not

13   imposing fiduciary duties is the *Ultra Frame* decision which

14   Mr. Zelbo referred to.  That is a 500 page decision.  The

15   reason it's a 500 page decision is because that it was a

16   decision that was entered after trial.  Most of that is a

17   summary of the facts and the evidence that were presented to

18   the Court.  This is a highly factual inquiry.  If you read

19   the two expert's declarations, you'll see that there is

20   another case, the *Uconn* authority, the *Uconn* case.  It is an

21   earlier case, but it's given by a Judge at the same level.

22   These are two Trial Court decisions.  One says shadow

23   directors have fiduciary duties, the other says they don't.

24   There -- they have equal weight as matters of law.

25           Now even if the *Ultra Frame* decision is correct,

1   it is still the case that fiduciary duties are owed where a

2   shadow director takes control of the company's property.

3   Mr. Todd admits that there can be circumstances where if a

4   shadow director takes control of a company's property and

5   makes actions, makes -- directs how that property used to be

6   disposed, that a fiduciary duty will apply.  As we've just

7   seen in looking at the proof of claim, that is what is

8   alleged here.

9          Now we get to the question of an independent duty

10  of care under English law.  This is asserted on three

11  grounds.  A duty of care is imposed on a de factor director,

12  that's not disputed.  The shadow director status also

13  imposes a duty of care and we assert that there's a duty of

14  care of that arises from the relationship between the

15  parties here.

16         On this third ground, the principle is simply

17  that if there is a relationship of sufficient proximity

18  between the parties and the harm suffered was reasonably

19  foreseeable and the Court finds it appropriate under the

20  circumstances, it will impose a duty of care.  Mr. Todd is

21  aware of no previous case in which such a duty has been held

22  to exist between two companies in a group.  And he also says

23  that he doesn't find the situation analogous to other

24  situations.  But as Mr. Marshall notes, this is an evolving

25  area, the circumstances in which a duty may be imposed are

1  not a closed set.

2          Ireland.  I don't have a green PowerPoint slide,

3  but as we've said already, as Mr. Zelbo said, the law is

4  essentially analogous.  The experts have a disagreement

5  about the deference that the Irish Courts will pay, will

6  give to English decisions.  It's common ground that English

7  Appellate Court decisions are persuasive authority in

8  Ireland.  But Mr. Redmond fights hard against the suggestion

9  that we haven't made which is that English decisions should

10 be considered dispositive and there's a debate between the

11 two experts about what degree of weight that an Irish Court

12 would give to an English House of Lords decisions or Supreme

13 Court decision, like the decision in *Holland.*

14         If you read those two declarations together, the

15 common ground seems to be that it is more likely than not

16 that an Irish Court will follow an English decision if it's

17 not contrary to principles of Irish law and if it provides a

18 rule that applies in this situation, more likely than not.

19 And that's really all you need in order to apply the English

20 decisions we're referring to here, the *Holland* case and

21 others in the Irish context.

22         The basic principle in Ireland is the same as

23 under English law.  A director includes anyone who performs

24 that role.  It's common ground that a de facto director in

25 Ireland owes all the same fiduciary duties to the company as

1    a de jure director.  He, Mr. Redmond asserts as Mr. Zelbo

2    said that a company can never be a de facto director of

3    another company under Irish law because a company is

4    prohibited by statute from having a company as one of its de

5    jure directors.

6              THE COURT:  Um-hum.

7              MR. ADLER:  The cases that they refer to talk

8    about shadow directors as those who take -- I'm sorry, de

9    facto directors as those who take up a certain role,

10   although they're not validly appointed.  And he interprets

11   this as meaning that they must be persons who are capable of

12   being validly appointed, but exactly the opposite is true.

13   The de facto director concept has been created in order to

14   impose duties on those who assume responsibilities in

15   relation to corporation precisely in situations where

16   they're not de jure directors.  And it would leave a big

17   hole in the doctrine if you exclude corporations from this.

18   If you allow corporations to come in and exercise

19   directorial functions without any kind of liability or

20   responsibility.

21             The principles governing shadow directors are the

22   same as English law, but not as well developed.  The basic

23   disagreement between the experts is whether *Holland* and the

24   other English case law relied on by the joint administrators

25   would be applied in an Irish Court.  We submit that there's

1  no real dispute that the Irish Courts are more likely to

2  follow these cases than not.  This wouldn't be an expansion

3  of the law, it would be an application of principles that

4  exist in areas that have not yet been addressed.

5           Now there are a few additional allegations in

6  relation to Ireland.  I think we're -- I've used a lot of

7  time on this, but perhaps I could just direct the Court's

8  attention to the Irish proof of claim.  There's series of

9  transactions, the so called Irish re-patrician strategy that

10 do include a lot of additional allegations like the ones --

11 you have all the same allegations of control.

12           THE COURT:  Yes.

13           MR. ADLER:  But I would just direct the Court's

14 attention there.  We don't need to read them through, but

15 Paragraphs 20 to 25 include again, detailed allegations

16 describing how NNI imposed the Irish loans and the Irish

17 dividends on NNL.  And then Paragraphs 51 through 60 which

18 go through in similar detail the allegations about NNI's

19 involvement and direct decision making and so on in the same

20 set of transactions.  Which takes us now to France.

21           THE COURT:  Okay.

22           MR. ADLER:  And the French mismanagement claim.

23 This is slightly different type of cause of action.

24 Everything about the French is different.  This is a claim

25 that arises under the French Civil Code.  The elements are

1  that the defendant was de jure or de facto director of the

2  company.  The director's committed acts of mismanagement and

3  these actions contributed to the company's insufficiency of

4  assets.  It's useful to note here, that the U.S. debtor

5  doesn't contest that we have alleged acts of mismanagement.

6  Or that they contributed to the insufficiency of assets.

7  Again, here there only contention is that we haven't alleged

8  facts supporting a finding that NNI was a de facto director

9  of NNSA, the French company.

10           There's a few unique aspects of French law.  It's

11 governed by a civil code as Mr. Qureshi referred to.  The

12 Judges apply the language of the code with broad discretion.

13 They're not actually bond to follow a precedence.  The

14 exception is the Cour de cassation, the Supreme Court whose

15 decisions are still not controlling, but the Lower Courts

16 will generally follow and this Menjucq refers to this in

17 Paragraph 17 of his declaration.

18           Now it should be noted here that there is a

19 substantial disparity between the qualifications of the

20 experts on the two sides.  The joint administrator's expert,

21 Professor Menjucq is among the highest ranks of law

22 professors.  He's a Professor Aggregate, which is a whole

23 extra level of qualification and testing above a normal

24 doctorate.  The U.S. debtors' expert, Mr. Bremond is only an

25 advocate.  He's essentially a practicing lawyer.  His

1    background in publications are undistinguished.  This may

2    not sound like a big difference, but actually in the French

3    system it is.  If a French Court is looking for an expert

4    opinion, they will normally call on a Professor Aggregate to

5    give independent expert opinions, not advocate.

6              In addition, Professor Aggregate actually have a

7    role in articulating what the law is in France.  Mr. Qureshi

8    referred to doctrine.  The French Judges rely on doctrine in

9    reaching their decisions.  This is actually produced by

10   legal academics like Professor Aggregate.  In other words,

11   Professor Menjucq has a status within the French legal

12   system that actually gives him unique authority here to

13   state what the law is.  Mr. Bremond has no such authority.

14             With respect to how to determine if someone was a

15   de facto director under French law, there's now definition

16   in the French Civil Code.  The doctrine is therefore

17   relevant and guides and the Courts.  The status has been

18   imposed in a wide variety of contexts which are detailed in

19   the declarations of the two experts so there's really quite

20   a few different scenarios on which these have been imposed.

21   The person must have imposed, performed positive acts of

22   management.  The two experts agree.  And they say exerted a

23   predominate influence.  These are words that have been

24   translated for us.  Mr. Bremond also uses the word

25   subordination and he suggests that the company has to have

1    been exercised total subordination over the foreign company

2    in order to be a de facto director.

3         But what's significant here is that both experts

4    agree that you can have multiple de facto directors of a

5    company.  In other words, the idea of subordination does not

6    mean that the alleged de facto director has to have been the

7    sole mind or the sole directing force.  They both accept

8    that you can have multiple de facto directors.

9         Now although there's no case in which a

10   subsidiary has been held to be a de facto director of a

11   sister subsidiary under French law, this again is not a

12   material point.  There's no rule that prevents this

13   application.  And there actually was a French case.  The

14   *Powell* case which was referred to by Mr. Bremond in which a

15   sister company had been found by a Lower Court to be a de

16   facto director of a sister company.  This was reversed on

17   appeal on unrelated grounds, but it's clearly not a --

18   there's no rule against it.  In fact, one Court in France

19   has found it and it had been reversed on other grounds.

20        The experts also agree that in determining the

21   necessary level of influence, the French Courts apply the

22   bundle of concurring elements analysis.  This means that you

23   have to look at all of the facts alleged in the proof of

24   claim together to determine whether they support a de facto

25   directorship.  You have to look at them in the aggregate.

1   Mr. Bremond's initial analysis in his first declaration is

2   therefore incorrect because he adopted the same approach

3   that the U.S. debtor has taken of slicing and dicing,

4   looking at each individual allegation in the complaint in

5   isolation.

6           Professor Menjucq has actually gone through the

7   proof of claim and has quite a persuasive discussion about

8   why the elements are satisfied.  It is at Paragraphs 52 to

9   75 of his declaration.

10          Now moving onto estoppel.  May I continue?  Are

11  we --

12          THE COURT:  You bet.  Oh, yes, as long as you're

13  prepared to.

14          MR. ADLER:  I'm prepared to.

15          THE COURT:  Yes.

16          MR. ADLER:  Moving onto estoppel.  And what

17  struck me about Mr. Zelbo's presentation on this is that

18  they don't like conclusory statements in the statement of

19  claim, but they give them great weight when they're made in

20  the context of the Chapter 15 filings.  Generic statements

21  about where control was, where management was, are given

22  tremendous weight in that context.

23          Now it's common ground that in order to invoke

24  judicial estoppel, the U.S. debtor has to prove that the

25  present position is inconsistent with the position that we

1   took before.  That there was bad faith.  That the joint

2   administrators were intentionally trying to play fast and

3   loose with the Court.  And that the remedies sought that's

4   striking the claims here, dismissing the claims is tailored

5   to address the harm identified.  And that no lesser sanction

6   would adequately remedy the damage done by the litigant's

7   misconduct.  This is perceived as a Draconian remedy.  The

8   U.S. debtor hasn't shown that they satisfy any of the

9   elements.

10          With respect to inconsistencies, demonstrating

11  that the UK was the EMEA debtors center of main interest

12  their COMI, it's simply not inconsistent with the fact that

13  specific policies and transactions as asserted in the proof

14  of claim were forced on the EMEA debtors by NNI and NNL.

15  The focus in the COMI analysis is really on where the

16  administrative headquarters of the company is where it's day

17  to day operations are.  The presumption is that it would be

18  under the European Council regulation, the presumption that

19  it would be in the location of the company's registered

20  office in the absence of proof to the contrary.  It also

21  notes that COMI should correspond to the place where the

22  company conducts the administration of its interests on a

23  regular basis and, therefore, can be ascertained by third

24  parties.  It's the place where the company appears to do

25  business.

1          We submit that all the statements that have been

2   made are not inconsistent with the idea that specific

3   transactions and occurrences were imposed from above by NNI

4   and NNL.  And actually, there is in the *Euro Food* case which

5   Mr. Marshall referred to in Paragraph 69 of his declaration,

6   there's actually an observation that the fact that a

7   company's economic choices can be controlled by a company

8   does -- by a parent company, doesn't change the presumption

9   of having COMI be where the administrative office is.

10          We've shown by the way in our opposition brief,

11  that a lot of the quotations they've picked, this is at Page

12  50 our opposition brief are actually very selective.  When

13  you read them in a broader context, you can see that they're

14  -- that they cherry picked the allegations.

15          So at best, what we see is that there is -- there

16  may be an evidentiary issue here.  We understand that the

17  U.S. debtor is going to point out any purported

18  inconsistencies as a an evidentiary matter at the trial

19  here, but it's not something that is actually an

20  inconsistent position for purposes of applying judicial

21  estoppel.

22          Incidentally, the COMI test is the same in

23  relation to the Chapter 15 proceedings.  Again, the Courts

24  have looked at factors such as the location of the

25  headquarters, the location of those who actually manage a

1    debtor, the location of the primary assets, the location of

2    the majority of the creditors, the majority of the creditors

3    who would be affected by the case, the jurisdiction whose

4    bar would apply in most disputes.  There's a variety of

5    factors that the U.S. Courts have looked at and that's from

6    the *Sphinx* case in relation to what COMI would be.

7          Mr. Zelbo referred to the *Bear Stearns* case.  I

8    mean, that was a case where you had an offshore letter box.

9    It was a letter box company really.  An offshore company

10   that had all of its operations here.  That's not at all

11   analogous to NNUK.  It was a real company with a real

12   administrative headquarters in England.

13         Now the joint administrators have clearly acted

14   in good faith based on the information that they've learned

15   during the course of their investigation.  The cases

16   indicate that bad faith means intentional wrongdoing.  And

17   you can't infer bad faith just from the fact that a litigant

18   took inconsistent positions.  The U.S. debtor hasn't

19   actually said what improper advantage we've allegedly sought

20   to gain by taking these allegedly inconsistent positions.

21   We're not trying to press the same claim and recover on the

22   same claim in two different jurisdictions.  The COMI

23   analysis is obviously done to create an orderly

24   administration of the various estates internationally.  And

25   as a result of that, the remedy of dismissal would be unduly

1  harsh.  It wouldn't be tailored to match any harm because

2  there's actually no harm to the U.S. debtor by allowing the

3  claims to proceed here.  They're not at risk of a double

4  recovery or anything else.

5       Now the U.S. debtor has also alleged that

6  collateral estoppel should apply here.  We think it's quite

7  clear that that's not the case.  The identical issues that

8  we've alleged here in relation to the control of NNUK

9  exercised by NNI and NNL have not been litigated in any

10 prior proceeding.  They were not necessary to be decided or

11 essential in relation to the COMI determination.   In fact,

12 they wouldn't even be relevant to the COMI decision.

13       So if Your Honor doesn't have any questions, I

14 think I've finished the duty of care section.

15       THE COURT:  All right.  Thank you.  Thank you,

16 Mr. Adler.  Mr. Zelbo what's your preference, come back

17 after lunch and do rebuttal or to do it now?

18       MR. ZELBO:  Your Honor, I'm actually perfectly

19 happy to proceed either way.  I'm going to defer to Your

20 Honor, if you don't mind.

21       THE COURT:  Tell me how much time you think

22 you're going to take.  Probably more than 15 or 20 minutes,

23 I would assume.

24       MR. ZELBO:  I think it's fair to say that it will

25 probably be about 30 minutes.

1              THE COURT:  All right.  All right.  Let me just

2    tell you where you are time-wise and I'll -- and, you know,

3    look.  I'm not going to be ridiculous of course, but you

4    have roughly 2 hours left as I have it.  I don't know what

5    your records shows.  And it looks like the EMEA debtors have

6    about an hour and 36 minutes to go.  I've got this running

7    clock here so.  But again, you know, I want to be fair to

8    the parties, but --

9              MR. ZELBO:  Well, I don't think meeting that 2

10   hours is going to be a problem.

11             THE COURT:  All right.

12             MR. ZELBO:  And I'm happy to do this after lunch

13   if going another half an hour now is going to be

14   problematic.

15             THE COURT:  Let's -- why do we do it after lunch?

16             MR. ZELBO:  Okay.

17             THE COURT:  Why don't we return at 2:00 and we'll

18   proceed with your rebuttal.  All right?

19             MR. ZELBO:  Thank you, Your Honor.

20             THE COURT:  All right.  Thank you, Counsel.

21             ALL:  Thank you, Your Honor.

22             THE COURT:  Enjoy lunch.  Is that enough time for

23   everyone?  All right, good.  I'll see you at 2:00.  Thank

24   you.

25             ALL:  Thank you, Your Honor.

1   (Recess from 12:48 p.m. to 2:09 p.m.)

2          THE COURT:  Good afternoon everyone.  Thank you.

3   Please be seated.  I want to tell you that you've been

4   addressing my questions.  Unfortunately, you've not been

5   agreeing on the answers.  But you at least are addressing

6   them.  Mr. Zelbo.

7          MR. ZELBO:  Thank you, Your Honor.  I want to

8   start off by responding to some of the somewhat surprising

9   attacks on our English expert, Michael Todd; in particular,

10  the attacks on his credibility I found surprising.  He is

11  the Chairman-Elect of the English Bar and a very well-

12  respected Barrister.

13         The first thing they said and which I really was

14  taken aback by is they said that Mr. Philip Giaum was

15  basically NNI's lawyer.  Essentially, they said writing the

16  report for Mr. Todd.  Just to clarify this, okay?  Mr. Giaum

17  is a junior Barrister in Mr. Todd's Chambers.  He's worked

18  -- Mr. Todd hired him.  Shouldn't be surprising that a

19  senior respected Barrister had a junior Barrister working

20  with him.  Mr. Todd also, he doesn't type.  They're his

21  words.  Mr. Giaum typed it for him while he dictated it to

22  him.  Okay?

23         I think their confusion came from, but they could

24  have asked us before they made an accusation like this in

25  all fairness, because at the deposition, Mr. Giaum said

1   junior counsel, NNI.  I don't think he appreciated what he

2   said.  Frankly, I didn't.  We were all sitting on the NNI

3   side of the table.  Frankly, the lawyers for Ashers who were

4   there for the UCC also said it.  I don't think people were

5   focused on the introductions.  He's not retained by Cleary

6   Gottlieb or NNI as Counsel.  He was working with Mr. Todd.

7   The engagement letter for Mr. Todd, which they have,

8   specifically says he can employ a junior barrister.  And by

9   the way, their expert, their accusee, testified at the

10  deposition that he worked on his report with a junior

11  barrister, Mr. Allister Thompson.  So I hope we can dispense

12  with that nonsense.

13       They also attacked Mr. Todd for not looking at

14  NNUK's articles of incorporation.  Well, he didn't because

15  it's a motion to dismiss and they didn't reference it in

16  their proof of claim.  Mr. Todd is not the only who didn't

17  look at didn't look at their articles of incorporation

18  before preparing the report.

19       Questions to Mr. Marshall, their expert during

20  his deposition:  Am I correct in understanding this

21  paragraph, sir, that you did not, in preparing your report,

22  rely upon the Articles of Association of NNUK?  Mr. Marshall

23  responds:  No I didn't.  In fact, I've not seen them.  So

24  they can attack Mr. Todd for not looking at it because he

25  didn't because it would have been inappropriate on a motion

1    to dismiss.  Their own expert testified he did not as well.

2           They also say that Mr. Todd agreed during his

3    deposition something was a jury question.

4           THE COURT:  Yes.

5           MR. ZELBO:  That's not what happened.  The person

6    who was deposing Mr. Todd who was also a QC was -- and so

7    conducted a very un-American-style deposition where he was

8    reading; perhaps this is the way they do it in England,

9    reading long passages from opinions and then saying Mr.

10   Todd, is that what it says?  So here's what Mr. Adler was

11   referring to.  Here's the question:  And he, and the he here

12   is the Judge; he's reading one of the Judge's speeches,

13   right?

14          THE COURT:  Yes.

15          MR. ZELBO:  He also suggests, does he not, that

16   it's appropriate to ask the question:  Was this individual

17   part of the corporate governing structure answering it is as

18   a kind of jury question.  Mr. Todd's response:  That's

19   certainly what he says at the bottom of page 2,807 and the

20   top of page 2,808.  Mr. Todd is confirming to his learned

21   colleague that his reading skills are excellent and that he

22   had read the opinion correctly.

23          And on that subject of jury questions, their

24   expert, and I can get you the cite; I don't have it with me

25   now, agreed that de facto director, shadow directors, that

1   can be the subject of a motion to dismiss in London.  Of

2   course, we're going with our own procedures and I understand

3   that.

4           THE COURT:  Yes.

5           MR. ZELBO:  They call it a strike-out motion.

6   And my only point is even in England procedures, it's not

7   always a jury question.  It's -- the fact that one looks at

8   totality of factors doesn't make it a jury question.  They

9   still have to plead adequate facts to state the claim in a

10  plausible way.  If they get over that hurdle, then we have

11  discovery.  Even Mr. Adler concedes that if we ever get any

12  further and we don't think we should, there could be a

13  summary judgment motion.  Of course, there could be a motion

14  to dismiss.  The English Courts have not said that de facto

15  director and shadow director issues are always a question of

16  fact for the jury.  It's not the law.  It's not the law

17  there; it's not the law here.

18          THE COURT:  But just so we're all clear.

19  Procedurally, it's my determination as to whether or not I

20  can grant the motion to dismiss.  That's not an issue of

21  foreign law.

22          MR. ZELBO:  Absolutely correct.  We could not

23  agree more.

24          THE COURT:  Okay.

25          MR. ZELBO:  I think there's substantive foreign

1   law --

2            THE COURT:  Yes.

3            MR. ZELBO:  -- at play here.  But the question of

4   whether the allegations are sufficient to state a claim

5   governed by U.S. procedures *Twombly*, *Iqbal* in our view.

6            THE COURT:  Yes.

7            MR. ZELBO:  We agree completely on that.

8            THE COURT:  Okay.

9            MR. ZELBO:  And I heard Mr. Adler say the same.

10           THE COURT:  Yes.

11           MR. ZELBO:  So we are in agreement on that.

12  Okay.  Let me talk about ratification because that really is

13  a show-stopper here.

14           THE COURT:  Yes.

15           MR. ZELBO:  Under -- for NNUK's claims.  Your

16  Honor, I totally agree, and if I said otherwise in my

17  opening, and I don't think I did, but if I did, I didn't

18  mean to imply this.  It is correct, as we say in our briefs

19  and as Mr. Todd says in his witness statement, near

20  insolvency, right, will take you outside of ratification as

21  will insolvency.  Okay?

22           The point is they haven't adequately pled

23  insolvency or near insolvency.  The same allegations that

24  Mr. Adler pointed to are the exact ones I put up on the

25  screen earlier.  Your Honor can look at them and decide if

1    that's enough.  There is clearly case law that says when you

2    haven't pled insolvency or zone of insolvency, and we cited

3    them in our brief, sufficiently with facts, you're out.

4    Now, we've showed those very sparse conclusory paragraphs.

5    I don't think they come close to saying NNUK was in the zone

6    of insolvency for a 10-year period or any period.  Your

7    Honor will look at those allegations and decide that issue.

8    We think if you decide that those allegations are not

9    sufficiently well pled, their NNUK fiduciary duty claims are

10   dismissed.

11             Let me talk about the law --

12             THE COURT:  Is the reverse true?  In other words,

13   if I find that there was sufficient pleading of insolvency,

14   that, of course, would prohibit ratification of finding of

15   ratification?

16             MR. ZELBO:  If they have sufficiently pled

17   insolvency or zone of insolvency on a motion to dismiss at

18   least --

19             THE COURT:  Right.

20             MR. ZELBO:  -- we would not be relying -- we

21   could not rely on the ratification defense.

22             THE COURT:  Okay.

23             MR. ZELBO:  That is correct, Your Honor.  So that

24   issue is straightforward.  You can look at those allegations

25   and conclude that.

1          Okay.  Let's talk about the law on de facto and

2    shadow directors.  I won't spend too much on this.  Just

3    like on the allegations I just alluded to where they're

4    trying to say because one looks at totality of factors,

5    therefore, it must be a question of fact, they're trying to

6    make a mush of the law as if there's no test, there's no

7    standards, there's no law.  It's whatever the Court believes

8    should be enough.  And it's just not what English law said.

9    It's not surprisingly.  I heard Mr. Adler talk about well,

10   all the jurisdictions are the same.  It's just a question of

11   universal justice.  That's -- no expert says that.  No case

12   says that.  That's not the law.  I heard Mr. Adler also say

13   if you involve yourself -- if you involved yourself in the

14   affairs, that is not the law.  It's not what their own

15   expert says is the law.  It's not what they said in their

16   proof of claim at paragraph 88.  Involve yourself in the

17   affairs is not enough.  Unquestionably not enough.

18              THE COURT:  You have to assert your domination.

19              MR. ZELBO:  Correct, Your Honor.  And control.

20              THE COURT:  And control.  Yes.

21              MR. ZELBO:  I'm sorry, Your Honor.  This is what

22   happens when you're --

23              THE COURT:  Take your time, Mr. Zelbo.

24              MR. ZELBO:  Can you give me Marshall's

25   deposition, please?  I apologize, Your Honor.  This is what

1   -- you'll remember paragraph 88, we put up twice.  They say

2   de facto director is if you've engaged in director-only

3   functions.

4             THE COURT:  Right.

5             MR. ZELBO:  Let's look at what their own expert

6   witness says.  The question was -- and the questioner, which

7   was Mr. Qureshi according from Lord Collins, the famous Lord

8   Collins, is one of five opinions in Holland.  And he's

9   quoting, "It seems to me that in the present context of the

10  fiduciary duty of the director, not to disclose wrongfully

11  of the company's assets.  The crucial question is whether

12  the person assumed the duties of a director."  Did you

13  follow that?  Yes.  Is it your opinion that passage

14  correctly states that the English law test for de facto

15  director the U.S. Judge should apply in this case?  Yes.

16  And page 33, lines 12 through 20.  Do I understand you

17  correctly, sir, that at least one component to the test that

18  you believe should apply here is as set forth in the second

19  sentence in the quote from Lord Justice Collins? And then he

20  quotes it, the last part of the sentence.  "The crucial

21  question is whether the person assumed the duties of a

22  director?"  Answer:  That's right.  You have to basically

23  become a director.  You engage in director-only functions.

24             Now, they claim that the cases that Mr. Todd

25  relied on, *Richborough* or *Katech* and *Gemma*, somehow

1    evaporated after Holland.  I will get you the cites as well,

2    Your Honor, but their expert witness, Mr. Marshall,

3    repeatedly affirms that there's still good law; they're

4    relevant factors.  All he says is look, it's not hard to

5    pass the test but all the factors in *Gemma*, *Katech*, and

6    *Richborough* are all relevant, equal footing, holding out,

7    real influence.  It's not this wholly amorphous blob.  There

8    are contours to this test.

9             Your Honor, I'll try not to do this too much, but

10   a couple quotes from *Holland* since we're doing that.

11            THE COURT:  Certainly.

12            MR. ZELBO:  Okay.  But first of all, as I

13   mentioned before, leading treatises after *Holland* continue

14   to cite the *Gemma* test, the *Katech* test, and *Richborough*

15   test.  They're still good law.  Lord Hope, who is in the

16   majority, this is on paragraph 21, persons with real

17   directorial control, but who, for whatever reason, lack a

18   formal appointment are held responsible in law to the

19   conduct of the affairs of the company.  Real directorial

20   control.  Lord Hope also quotes from the *Richborough* case

21   saying in paragraph 30, saying the person directed the

22   affairs of the company or there were others who were true

23   directors that he was acting on equal footing with the

24   others in directing the affairs of the company.

25            THE COURT:  My sense of *Holland*, Mr. Zelbo, is

1  that it's almost a course of dealing as opposed to a one

2  shot or one time exercise.  Is there any basis upon which I

3  can sort of make that conclusion in *Holland*?

4          MR. ZELBO:  Well, I think it's not only in

5  *Holland*; it's in *Gemma*, it's in *Katech*, it's in *Richborough*.

6  It's in the treatises.  The point is, over a period of time

7  in a course of dealing, I think that's exactly the way to

8  look at it.  Have you become a director?  Have you done

9  things that only a director can do?  And -- okay, and by the

10 way, just -- when we're talking about the articles of

11 incorporation, the fact that a director may or may not have

12 the authority to manage the entire affairs of the company,

13 that's not the point.  Right?  That doesn't mean that

14 anything happens as a company is something only a director

15 can do.  And Mr. Adler said, of course, a director can

16 delegate.  Okay.  The question is, is it something only a

17 director could do and a course of conduct showing that?  And

18 you know they could have -- I'm getting a little ahead of

19 myself, but I think it's worth doing this.  They could have

20 alleged, right, and this -- they could have said NNUK is a

21 real special corporation and in NNUK, they had a rule that

22 only directors could implement or structure global transfer

23 pricing arrangements for a multi-national group.  It's sort

24 of an odd thing to say.  It's a little silly.  But that

25 would have been easy to allege if they had a good faith

1   basis to say it.  Okay?  They didn't because it's not a

2   director function.

3           I was going to read more quotes but I think it's

4   clear Your Honor has read *Holland*.

5           THE COURT:  Yes.

6           MR. ZELBO:  And so I'm going to move on now to

7   the allegations in the statement of claim and I promise not

8   to go on too long because we've done this earlier but I do

9   think it's worth a couple of comments.  I don't know if you

10  still have the NNUK statement of claim in front of you.

11          THE COURT:  I do.

12          MR. ZELBO:  Okay.

13          THE COURT:  Right in front of me.

14          MR. ZELBO:  Because I don't have slides for this.

15          THE COURT:  Sure.

16          MR. ZELBO:  But I'm going to just go through some

17  of the paragraphs that Mr. Adler pointed to.  If you start

18  on paragraph seven, and I've already been through this, but

19  this is one of the allegations that he points to to show a

20  zone of insolvency or insolvency.  Again, nothing about

21  NNUK.  Nothing saying here that they were in the zone of

22  being -- their liabilities exceeding assets.  Nothing here

23  saying they were in the zone of being unable to pay their

24  debts as they became due.  And the tests of insolvency are

25  still there.  There's nothing here saying they're in the

1  zone of those tests.  This is just all about Nortel

2  generally.

3         The other point that I think I was struck by with

4  this paragraph is -- I mean this shows they've got good

5  information.  They've got information about this company.

6  They're not in the dark.  This is just the best they could

7  do and it's not enough, Your Honor.

8         Let me turn to paragraph 15.  And here, you've

9  got -- second sentence.  Control exerted by NNI related to

10 group tax matters, in particular, transfer pricing and group

11 treasury matters.  Okay?  A couple observations.  That

12 obviously is conclusory if you're just going to say we

13 control the group treasury and control tax.  And during my

14 earlier presentation, Your Honor, I went through the actual

15 paragraphs that named the people and talked about who was

16 exercising control and as I mentioned, it's quite obvious

17 from their own pleading that they're talking about people

18 who were engaged in some -- in a global function, okay, not

19 acting on behalf of NNI.  It's in their own pleading.  And

20 by the way, Your Honor, they mention a lot of people.  The

21 only people they allege; sometimes they say of NNI.  I don't

22 even know what that means.  But the only time they actually

23 say somebody's an employee of NNI is Mr. Weis and Mr. Smith.

24 Ryan Smith and Mark Weis.  A lot of times they say of NNI,

25 Of NN Ireland.  But the only time they actually say someone

1  is an employee is Weis and Smith.  Smith we know is

2  [indiscernible] to EMEA.  That's why he was on the ground in

3  Europe.  And Weis is the Director of International Tax.  It

4  is not plausible that the Director of International Tax

5  every multi-national company in the world who obviously is

6  going to look at transfer pricing arrangements becomes a de

7  facto direct -- causes a company he may have been an

8  employee of, one of the subs, to become de facto director of

9  all the other sister companies.  It's not plausible.

10            Paragraph 16.  NNI was heavily involved in

11  implementation and operation of the transfer pricing

12  arrangements.  In addition to being conclusory, okay, this

13  doesn't meet their own expert's test.  It doesn't meet their

14  paragraph 88 test.  Okay?  Implementation and operation of a

15  global transfer pricing system, they have not adequately

16  pled that that's an NNUK-only director function.  They could

17  have.  I crafted those words earlier, a few minutes ago.

18  They could have done those words or something similar and

19  they chose not to because they couldn't.

20            Now, I want to turn to paragraph 18(b) because

21  here they say -- and this is an interesting thing.  They say

22  the policy decision to change to the RPSM, right, which was

23  later then put into the MRDA, which is what their claim is

24  based on, was taken by NNA and -- NNI and NNL.  Again, not

25  identifying people.  You see what their claim is doing?

1   They identify people and when they identify people, it's

2   just general.  But when they get to actually saying what

3   happened, the people are gone now.  But we know from when

4   they identify people they're talking about the global

5   function and they're talking about people for the most part

6   who were in NNL, the Canadian parent's treasury.  But this

7   is interesting.  The last sentence of 18(a).  NNUK was only

8   informed of the change to the RPSM after the RPSM had been

9   implemented.  Okay?  So what Mr. Adler said, and I wrote

10  these words down, is it was pushed down.

11          THE COURT:  Yes.

12          MR. ZELBO:  The RPSM was pushed down to NNUK.

13  Where is the allegation that anyone in NNI did that pushing?

14  Where is that allegation?  It is not in here and that's the

15  key.  It's not here, not even in a conclusory fashion.

16          Paragraph (e), they say NNI and NNL controlled

17  the APA arrangement.  Are they seriously going to say that

18  only NNUK directors were permitted to negotiate with tax

19  authorities?  That's a global issue.  People negotiate with

20  tax authorities.  Okay?  The tax professionals do that.

21          Paragraph 20.  Loan facilities and project swift.

22  They say NNI, through its personnel, again sir, we're not

23  going to tell you who, was together with the Canadian

24  entities involved in the implementation.  You know, it's

25  funny.  When they want to say NNUK had no -- abdicated its

1  directorial functions in paragraph 18, they say we know that

2  because all NNUK did was implement decisions.  But the word

3  implement somehow means we're controlling when it's with us.

4  And again, it's NNI, together with Canada.  We're not going

5  to tell you what NNI itself did.  We're not going to tell

6  you who acted on behalf of NNI.

7           And again, in paragraph 22, Mr. Adler pointed to.

8  He says the implementation of the interest-free loans was

9  conducted and then he names the people.  Of course, he's

10  naming again, and we've been through this, Catherine

11  Stevenson, who is the treasurer at Nortel, and Ryan Smith.

12  Okay?  And Ryan Smith, again, was [indiscernible] to EMEA

13  and he's the person, Your Honor, you may recall they allege

14  made presentations to the Board.  It couldn't be more clear;

15  he's not acting as a Board member no matter who you

16  attribute his actions to.  He's the one they allege is

17  coming up with a plan.  Okay.  We'll deal with that.  I

18  don't think they've alleged it in anything but a conclusory

19  fashion nor do I think they even attach that to NNI.  But

20  he's not -- then he's presenting it to the Board.  That's

21  not a directorial function.  That's not enough for de facto

22  director.  And you'll notice that while Mr. Adler pulled out

23  quotes from the Judge's speeches, one of the things I've

24  learned with all these speeches, everybody writes a speech.

25  You can kind of find a quote for almost anything.  But

1    you'll notice he never talked about the facts of any of

2    those cases.  And when you look at the facts of the cases,

3    you really see and you really get the sense of what the U.S.

4    Courts are looking for for de facto directorship.  So I

5    think those cases are important when you look at the

6    circumstances where the Courts have found de facto director.

7    And there it is in paragraph 24, next to the last line, that

8    Ryan and his team prepared the briefing notes to the Boards.

9         Now, I may have mis-heard, but I could have sworn

10   this is when Mr. Adler said there's an allegation of NNI

11   interacting directly with the Nortel Board -- with an NNUK

12   Board.  That is the only allegation you will find in the

13   entire NNUK pleading of an interaction with a Board and it's

14   not control of that board.  It's making a report to that

15   Board.

16        Paragraph 26, Mr. Adler admitted and we agree is

17   totally conclusory.  Okay.  I want to talk about all the

18   benefits Mr. Adler went on about that NNI received.  Okay?

19   Their theory seems to be, Your Honor, that -- let me see if

20   I can understand this; that NNUK is making loans to NNL and

21   that somehow NNL then is paying out money to NNI.  NNI was

22   paying out and receiving billions of dollars during this

23   period.  The notion that you can trace one dollar to another

24   is absurd.  Okay?  Moreover, they admit -- they admit that

25   this cash to Canada idea led to over $2 billion in losses to

1  NNI on the transfer pricing alone, which is the only

2  transaction it was involved in.  So this notion that we got

3  a benefit, Your Honor, is without merit.

4          THE COURT:  Well, they also argue, of course,

5  that -- or allege that on the loans that NNI was repaid in

6  cash or they were, in fact, repaid through Project Swift.

7          MR. ZELBO:  Well --

8      THE COURT:  Which was not as beneficial.

9      MR. ZELBO:  Okay.  Your Honor, let's look at that.

10  Okay?  Because that's not exactly their allegation.  And I

11  understand they're saying under Project Swift they got

12  paper.

13      THE COURT:  Right.

14          MR. ZELBO:  They didn't get paper; they got

15  subsidiaries.  They claim the subsidiaries weren't valued

16  enough.  By the way, they don't have an allegation in this

17  complaint that they didn't have a fairness opinion for NNUK

18  on this, which they could have easily said.  They don't

19  allege that.  But putting that aside, Your Honor, okay,

20  what's the relationship between the two?  Canada paid a lot

21  of money to a lot of people.  They're not alleging that NNI

22  wasn't owed the money.  NNI made loans too.  It can't be the

23  mere fact that one company gets paid with subsidiaries; one

24  company gets paid with cash that there's a connection and a

25  benefit flowing to the other company.  And what they really

1    -- this is what they say on the benefit point.

2              THE COURT:  Yes.

3              MR. ZELBO:  And this is the slide I was going to

4    use later but this is a quote from their claim.  NNL was not

5    the only beneficiary from the cash to Canada initiatives.

6    NNI itself also benefited.  All right?  By virtue of cash --

7    so let me just pause there.  The benefit they're talking

8    about, Your Honor, is cash flowing.  No cash flowed from

9    NNUK, period, on Project Swift.  Okay?  So that's not what

10   they're talking about when they talk about the benefit.  By

11   virtue of cash being channeled to NNL from NNUK, NNL was

12   able to and did, in fact, make large cash payments with

13   respect to the loan balances which it owed to NNI.  Okay.

14   First of all, Canada owed that money.  But putting that

15   aside, the fact that NNI is paid money it's owed, it's

16   entitled to the money.  But let's go on.  Repayments are

17   made from NNL to NNI.  So this is NNI receiving money.  $150

18   million in November, '07; $154 million in December, '07;

19   $131 million in March, '08; $100 million in April, '08.

20   Now, I'm looking at cash because that's what they said up

21   here in paragraph 58.  I'm looking at cash.  They include in

22   paragraph #62 of their statement of claim a chart showing

23   the draw-downs by NNL on the loans from NNUK.  So we can see

24   the money that comes from NNUK.  Okay?  In 2007, the only

25   draw-downs, according to their chart, 17 million pounds on

1  October 23rd; 27 million pounds in February, '07; no further

2  draw-downs before all of these repayments.  So you've got

3  over $400 million, maybe up to $500 million, in payments

4  comes to NNI.  The amount coming to NNUK is not very large

5  during the same period.  It's completely illogical to show

6  that money from NNUK ended up with NNI.  And this is their

7  allegation, Your Honor.  So when you look at the actual

8  numbers, it doesn't work.  It's emblematic of their

9  allegations generally.  It's a little bit of a house of

10 mirrors.  But when you actually get deep into them, it

11 doesn't hold water.

12        Let me talk about Ireland.  A couple quick points

13 and then I'll get to France.  There is no vagary.  There's

14 no case in Ireland that's ever held a company could be a de

15 facto director.  Okay?  If you go to the Irish proof of

16 claim, I don't know if Your Honor has that?

17        THE COURT:  Yes.

18        MR. ZELBO:  Okay.  Terrific.  The paragraphs that

19 Mr. Adler pointed to are paragraphs 52 to 64.  Okay.  I

20 think we can go through this very quickly but if you want me

21 to slow down I can, Your Honor.  I'm trying to save some

22 Your Honor.  The first paragraph mentions NNI.  With the

23 participation and assistance of NNI; it doesn't say what

24 they did.  It's very conclusory.  Okay?  Paragraph 53,

25 paragraph 54, paragraph 55, paragraph 56, paragraph 57, no

1   mention of NNI.  Paragraph 58, NNL and NNI determine it.  It

2   doesn't say who at NNI did it.  It doesn't say what they did

3   apart from NNL.  Total conclusory.  They made a

4   determination.  That's it.  Go to 59.  No NNI.  Paragraph

5   60, again, utterly conclusory.  NNI was involved.  These are

6   classic conclusory allegations.  That's it.  If you go to

7   64, there's a little bit about NNI but it all goes to NNI's

8   alleged awareness, not what they did, not how they dominated

9   or gave any instructions to de jure directors.  In fact, the

10  only time that the de jure directors are mentioned in these

11  paragraphs are in paragraph 56 saying that de jure directors

12  of NNI are purported to approve something.  No allegation

13  here that NNI told the NNI -- NN Ireland directors to

14  approve this, ordered them to, or that they listen to it, or

15  that they were dominating.  Nothing.

16          Very quickly on France.  Mr. Bremond, our French

17  exert, is an expert on insolvency law.  I'm sure the good

18  professor is a fine lawyer in his own right.  But Mr.

19  Bremond practices every day in insolvency law, is routinely,

20  as his witness statement says, retained by other law firms

21  to provide expertise to them on that very specialized area

22  of French law and it is a specialized area as Mr. Bremond

23  says and their expert doesn't contest.  It may very well be

24  that in a French Court the thing to do is to come in with a

25  professor, but we happen to be in a U.S. Court.  And while

1    you can have a professor, you can also have a retired Judge,

2    you have a practitioner.  There's no sort of preferred

3    course in a U.S. Court.

4              I was astounded to say the least to hear Mr.

5    Adler imply that their professors arduous to be given more

6    weight because they make the law.  Their witness does not

7    say that in his witness statement he's purporting to write a

8    scholarly article that's going to be published, that's going

9    to be somehow part of the doctrine.  Okay?  Which, by the

10   way, isn't the law.  It's -- doctrine is just something

11   Courts look to.  They also look to cases.  And, in fact, the

12   learned professor, and we'll get to this later,

13   specifically, when you get to the tort claim, we doubt the

14   entire element of fault in a statute.  And by the way, under

15   French civil law, statutes are king.  He says well, we

16   should just read it out.  No doctrine has ever accepted

17   that.  They want to advocate strict liability; we'll get to

18   that.

19             Their expert doesn't cite any doctrine authored

20   by him or any other professor that supports the view he's

21   offered in his expert witness statement.  And, in fact, all

22   the doctrine he cites and that Mr. Bremond cites supports

23   our view that you need domination, which they pled not at

24   all and, in fact, have pled the opposite when you look at

25   the facts that they allege.

1              And the last part, this criticism of Mr. Bremond

2    because he looked at each of the allegations, they just have

3    it plain wrong.  The way French Court works -- French law

4    works, which is not that much different than English law, is

5    it's got to be a course of conduct.  One episode of

6    domination does not a de facto director make under French

7    law.  Okay?  So the way French law works is first you look

8    at the acts of domination.  See if there are any.  And if

9    there are, then you look at them in the totality and see if

10   it adds up to the requisite domination over a period of time

11   that would qualify it to be a de facto director.

12             The reason Mr. Bremond looked at them

13   individually was because he was looking to see is there even

14   one instance of domination and there isn't and if there

15   isn't one, there's no need to add them up.

16             Okay.  Your Honor, I think the way we had this

17   organized was that I was going to now discuss secondary

18   liability.

19             THE COURT:  Yes.

20             MR. ZELBO:  So I'm ready to do that if Your Honor

21   prefers to listen.

22             THE COURT:  Let me ask you one question before

23   you move on to secondary liability.

24             MR. ZELBO:  Yes.

25             THE COURT:  Should I read anything into the fact

1  that they have -- that, I guess, the UK, NNUK, has sued or

2  is seeking recovery from their own directors?

3           MR. ZELBO:  Your Honor, I don't know anything

4  about that to be honest --

5           THE COURT:  Okay.  Okay.

6           MR. ZELBO:  -- in terms of what they've claimed

7  but I don't think there's anything to be read into that.

8  Okay?  In the first place, to the extent Mr. Adler was

9  claiming that the significance of that is that, therefore,

10 they don't have enough information; I mean they had access

11 to these people for a long time.  We know they submitted a

12 Wellston.  We know they submitted Claymont declarations.

13 Okay?  If they chose to sue them and the people aren't

14 cooperating, that was their choice.  That's not a reason to

15 change pleading standards, number one.  Secondly, if they've

16 chosen to sue them, maybe their de jure directors did have

17 to keep their duties; maybe they didn't.  I have no idea.

18 Maybe the complaint there is as thin as it is here.  I don't

19 know what that complaint says.  But that certainly doesn't

20 support their view that NNI controlled these people.

21 There's no -- you can't leap from one -- from the fact that

22 they sued directors to the fact that somebody else is

23 responsible for their problems.

24           THE COURT:  Okay.  Thank you.

25           MR. ZELBO:  Okay.  Secondary liability.

```
 1                 THE COURT:  Yes.

 2                 MR. ZELBO:  And everything else.  Okay?  We're

 3   going to do it all.

 4                 THE COURT:  You're going to go into the defenses

 5   as well at this time or --

 6                 MR. ZELBO:  No, that I'm not.

 7                 THE COURT:  Okay.

 8                 MR. ZELBO:  Interpreting the statute of

 9   limitations will be done by Mr. Barefoot.

10                 THE COURT:  Okay.

11                 MR. ZELBO:  Because by then, I think I will have

12   lost my voice.

13                 THE COURT:  Okay.

14                 MR. ZELBO:  Speaking of which --

15                 THE COURT:  Take your time.

16                 MR. ZELBO:  May I, Your Honor?  Is that okay?

17                 THE COURT:  Absolutely.

18                 MR. ZELBO:  Thank you.  Your Honor, there are a

19   lot of reasons why these other claims legally should be

20   dismissed.  What I've done here is just sort of listed an

21   easy menu of some of the key reasons.  I really just tried

22   to pick one for each.  I just said okay, what's sort of -- I

23   think there's a lot, but what's sort of the best way to get

24   at this, to sort of try to get our arms around it and make

25   it manageable.
```

1              For dishonest assistance, Rule 9(b) applies.

2    I'll go into that.  They haven't come close to the requisite

3    particularity under 9(b).  For U.S. aiding and abetting,

4    Your Honor, those claims are largely time-barred, including,

5    and this is important, the key claims relating to transfer

6    pricing and this is true regardless of whether one applies

7    to borrowing statute.

8              THE COURT:  Okay.

9              MR. ZELBO:  And Mr. Barefoot will go into that.

10    For conspiracy, we hopefully have the *Twombly* case which

11    actually lays out what you need to plead for conspiracy

12    because that was a conspiracy case.

13              THE COURT:  That's right.

14              MR. ZELBO:  That's helpful.  They haven't met

15    that standard.  For unconscionable knowing receipt under

16    English law, both experts agree you have to trace funds from

17    NNUK, right, to NNI.  They haven't done that.  I actually

18    showed a little bit of that in that last chart, and we'll go

19    back to it.  They haven't done it.  Their own expert agrees

20    they haven't done it.  They agree they haven't done it.

21    Hold on one second.  Unjust enrichment.

22              THE COURT:  Well, would they have done it at this

23    stage of the case?

24              MR. ZELBO:  Excuse me?

25              THE COURT:  Would they have done that tracing at

1  this stage of the case?

2          MR. ZELBO:  Your Honor, they haven't alleged it

3  occurred.

4          THE COURT:  Oh, okay.

5          MR. ZELBO:  And they haven't alleged specific

6  facts to show that it -- factual allegations that it has

7  occurred and it's implausible.  Let's just be clear, okay,

8  because I understand where Your Honor is coming from that in

9  some cases, you may want to say well, maybe it's close

10 enough and they should have some discovery on the point.

11 But let's look at what they're alleging.  I'll come back to

12 this, but they're alleging that because NNI -- excuse me,

13 I'm so confused, because NNUK made loans to NNL --

14         THE COURT:  Yes.

15         MR. ZELBO:  So Project Swift is out of this.  No

16 cash happened there.  NNL was able to repay NNI's loans,

17 okay?  They would have to -- to succeed on this claim, they

18 would have to actually show that the dollars that went from

19 NNUK went into NNI -- excuse me, went into NNL and went

20 right back out to NNI.  It's impossible, Your Honor.  Money

21 is fungible.  This was a multi-billion dollar operation.  I

22 mean if that was true, then they can trace the money to the

23 UPS delivery man that Canada paid for during that time

24 period.  They can trace the money to anybody who received

25 money from Canada.  That's not the way it works.  Okay?

1   What knowing receipt is, is actual property.  Did you

2   receive my property?  If NNUK had paid property to NNI,

3   okay, but they didn't.  They paid it to someone else.  You

4   can't then say someone else paid it to me when you're

5   talking about cash.  Totally fungible.  There's no way they

6   complete this.  Okay?

7          Unjust enrichment fails because, number one, and

8   this chart -- this is backwards here and I apologize, Your

9   Honor, but there's no allegation that NNUK or NN Ireland

10  were acting for the benefit of NNI and that is an element of

11  unjust enrichment.  Plus there's no plausible causal

12  relationship alleged between any impoverishment of the

13  European entities and NNI.  I'll go through that in more

14  detail.

15         The quasi-contractual claims, I'll go over that too

16  too, but I think they essentially acknowledge their

17  pleadings are deficient.  I'm certain of that.  I don't

18  think we'll have to spend too much time on those.

19         Let's start with dishonest assistance and aiding

20  and abetting.  In the first place, both NNUK and NN

21  Ireland's dishonest assistance and aiding and abetting

22  claims fail since no primary underlying breach of fiduciary

23  duty by the alleged primary actor.  Okay?

24         For the UK, we have a ratification defense.  For

25  Ireland, they plead in their proof of claim, well, it's not

1  positioned as formally as ratification.  But they claimed a

2  breach of fiduciary is the failure to take into account the

3  interests of NNUK creditors -- excuse me, NN Ireland's

4  creditors at a time where it was in the zone of insolvency.

5  So you get there the same way.  Okay?  Sending money to a

6  sole shareholder if you're not in the zone of insolvency and

7  the interest of creditors aren't intruding isn't a problem.

8  So you get to the same place.  In addition, judicial

9  estoppel, Your Honor, which bars their primary claims.

10 Therefore, it bars their aiding and abetting because there's

11 no primary violator.

12        Let's talk about Rule 9(b).  There's only one

13 U.S. case that looked at the -- actually, it was Bermuda law

14 here but it's the same as English law on this.  Now, one

15 U.S. case to have considered claims of dishonest assistance

16 concluded that Rule 9(b) did apply and that's the *Alphastar*

17 case.  There's no dispute among English law experts that

18 dishonesty is an element of the claim for dishonest

19 assistance.  Not surprisingly given the title of the claim.

20        We picked out -- people often say England and

21 America are two Countries separated by a common language.

22 So I tried to pick out English dictionaries and we know that

23 the first dictionary is English because of the way they

24 spelled honorable, and American-style dictionaries and what

25 you get is it's fraudulent and we cited *O.J. Oakley* on

1  constructive trust, which is an English law treatise.  The

2  adjective dishonest and fraudulent have the same meaning.

3        Now, to get around this, they cite the case of

4  *Royal Brunei v. Tanning*.  Okay?  What they say is there, the

5  Judge -- first of all, the Judge made it clear again that

6  dishonesty is an element of dishonest assistance, but what

7  they say there is the Judge said commercially and reasonable

8  conduct could suffice.  That's not what the Judge said.

9  What the Judge was saying there, and this is set out in Mr.

10 Todd's expert witness statement, is that he's saying

11 commercially and acceptable conduct can be a tell tale --

12 that's a tongue-twister, tell tale sign of dishonesty.  I

13 think the best analogy of this is kind of what we have in

14 the U.S., the badges of fraud.

15       THE COURT:  Yes.

16       MR. ZELBO:  It's not that it eliminates the fact

17 that it's a fraud-based claim, it's just if you engage in

18 unusually -- you know, what one calls red flag-type

19 transactions, right, that can be a badge of fraud.  It

20 doesn't change the fact that it's a fraud-based claim.  And

21 one of the things I will note, just as a very general

22 matter, I know they say transfer pricing wasn't arms length,

23 Project Swift, it wasn't valued properly, none of these

24 transactions are inherently unusual.  Transfer pricing

25 happens everywhere.  Repayment of loans happens everywhere.

1  But in any event, the only point I wanted to make here is

2  that to the extent it can be --

3         THE COURT:  Okay.

4         MR. ZELBO:  Okay.

5         THE COURT:  I'll have a brief recess at 4:30, but

6  forgive me, Mr. Zelbo.

7         MR. ZELBO:  No problem.  To the extent that

8  commercially unreasonable conduct comes into the analysis,

9  it's just as a badge of fraud.  It doesn't change the fact

10  it's a fraud claim.  They failed to plead dishonest

11  assistance with the requisite particularity.  I'll deal with

12  this a little more when I get to aiding and abetting.  I'll

13  go through -- talk about the pleadings a little more.

14         Just we believe that 9(b) also applies to the

15  aiding and abetting claims.  I think it's a much -- I'll be

16  honest.  I think it's a much stronger claim than 90 applies

17  to dishonest assistance because it clearly is a fraud-based

18  claim under the U.S. aiding and abetting claims.  We also

19  think it applies because there are claims of asset

20  stripping.  We cited the *Foreman* case.  Sound and fraud, we

21  don't really need to get there for the U.S. aiding and

22  abetting claims but we do believe that it applies and we've

23  set forth why.  I just want to spend time today on that

24  because I think they fail under 9(b) or 8(a).  They're time-

25  barred and I said Mr. Barefoot would deal with this.  But

1   much in NNUK and NN Ireland, U.S. aiding and abetting

2   claims, as well as France, Your Honor; I don't want to step

3   on Mr. Qureshi's toes here.  I don't want to steel his

4   thunder, but France as well are time-barred, including the

5   entirety of the transfer price.  These are just the general

6   standards for aiding and abetting.  I won't spend too much

7   time on it.  The [indiscernible] case, the Court held that

8   actual knowledge is the kind of standard required for an

9   aiding and abetting claim.

10          There are no well-pled allegations of what anyone

11  took on behalf of -- what any actions anyone took on behalf

12  of NNI.  We've already gone through this.  Those are the

13  same allegations.  I won't do it again.  There's also no

14  well-pled allegation, they may make a conclusory one, they

15  state the legal standard, but there's no well-pled

16  allegation when you look through these proofs of claim of

17  dishonesty or knowledge.  And one point that I wanted to

18  bring out, this goes to the insolvency and near insolvency

19  point.  There is no well-pled allegation of insolvency or

20  near insolvency.  There's also no allegation in NNUK claim;

21  there's not even an allegation much less a well-pled one, of

22  knowledge of insolvency or near insolvency.  In the Ireland

23  claim, they have a passing reference to being aware of

24  financial problems but it's a conclusory, not well-pled

25  allegation and why don't we turn to that?

1          They say NN Ireland was a doubtful solvency

2   and/or risk of insolvency.  That's pretty much as far as it

3   gets in Ireland in terms of showing this.  That's a

4   conclusion.  That wouldn't pass muster of even pre-*Twombly*.

5          In addition, I think he's just doing what they

6   say in the claim.  They say at the end of the claim that NNI

7   Ireland had considerable liquid cash reserves of $100

8   million at the end of 2007, around the time a lot of these

9   transactions they allege occurred.

10          Your Honor, because I've been told I'm over time,

11   I'm not going to do this again, but these are the same

12   allegations relating to who did what that we think are

13   critical to this case.

14          So we think that the aiding and abetting claims

15   are gone because they're time-barred and because there's no

16   well-pled allegation of knowledge of wrongdoing,

17   particularly knowledge of insolvency, but also in its

18   entirety.  Dishonest assistance is a 9(b) claim.  It

19   completely fails under 9(b).  There's none of the who, what,

20   where, when, who said what to who that would be required in

21   9(b).

22          And now turn to conspiracy.  Put down the U.S.

23   tests and the English tests here.  I don't think we need to

24   dwell on that.  Again, we think 9(b) applies.  We think it

25   fails under both.  As I mentioned, *Twombly* was a conspiracy

1  case.  In *Twombly*, you had a seven-year alleged conspiracy

2  with no specific time, place, person involved in the alleged

3  conspiracies.  We have a reference to an agreement which has

4  not been sufficient.  Again, the *Twombly* standards and the

5  *Iqbal* standards just as a refresher on that.

6            This is sort of a typical allegation.  I don't

7  think it's any different with respect to the other

8  transactions.  I just picked this one out.  So here you go.

9  This is the allegation.  NNI and NNL had an agreement.

10 Well, maybe not.  Actually, maybe it was NNL, NNI, and

11 NNUK's de jure directors which, by the way, there's not even

12 an allegation of any communication between NNI and NNUK's de

13 jure directors other than a Board presentation being made by

14 Ryan Smith while he was secunded to EMEA.  Maybe it's not

15 that.  Actually, maybe it's NNI and NNUK's de jure directors

16 who they never -- we never allegedly talked to.  This just

17 doesn't work under *Twombly*.  This is not a sufficient

18 pleading, Your Honor.  There's no allegation of what people

19 agreed to things, when they reached an agreement, what was

20 agreed.  No well-pled allegation from which it could be

21 plausibly inferred it was an agreement to do an illegal act.

22            Ireland is -- the results in Ireland are no

23 better for them.  This is the basic law in Ireland.  There's

24 two types of conspiracies.  I don't think we need to dwell

25 on it because the allegations in Ireland are just like the

1    allegations I just read for England.  There's not enough.

2    In fact, there's nothing.  Certainly nothing that would

3    satisfy the *Twombly* standards.  There are generalities,

4    conclusions, statements that people were involved,

5    statements that they acted jointly.  That's not enough.

6              And to go back to a theme I mentioned earlier

7    because I don't want to lose this theme.  It is important to

8    remember that when they talk about Canada and NNI acting

9    jointly, when you look at their allegations, and they talk

10   about doing it in a global function, the only plausible

11   inference of anything is that NNI is basically being asked

12   by Canada to act as its agent and help formulate tax

13   strategies.  Okay.  An agent can't be held liable for the

14   actions of a disclosed principal and that's not a conspiracy

15   claim.

16             Unconscionable receipt and unjust enrichment.  I

17   think I've already touched on this, Your Honor, so I'm not

18   sure if I need to go through my whole slides here but both

19   English law experts agrees the funds must be traceable.  The

20   whole allegation is this was to get cash to Canada.  There

21   is not one allegation that any cash went from NNUK to NNI.

22   And again, they say the tracing exercise hasn't been set

23   out.  Their own expert agrees that they haven't -- not only

24   have they not set it out; I'm not sure what those words

25   mean; they haven't pled it and it is implausible and

1 impossible to plead and I've been through that, Your Honor.

2          Again, same thing.  Irish law, they concede funds

3 in question must be traceable.  There's no allegation again

4 that any money from NNI went to NNI as a result of either

5 Irish loans or pre-petition asset sales.  And there never --

6 it's not plausible that they could trace cash received by a

7 multi-billion entity -- enterprise that's day-to-day money

8 coming in and money coming out all over the place, that they

9 can trace those dollars that they sent in back out to NNI.

10          Unjust enrichment, U.S. claim.  I want to focus

11 on the last part first.  The plaintiff who acted for the

12 defendants' benefit.  They need to show that.  And that's

13 important because, you know, what is unjust enrichment?

14 These types of quasi-contractual claims, right?  It's

15 Person X paints somebody's house, right?  He's acting for

16 their benefit.  He's done something for them.  And, you

17 know, his neighbor, right?  And neighbor was a nice guy.

18 They did agree that eventually he's going to pay him.  So

19 he's like I painted your house; take me out to dinner or do

20 something.  Give me some money.  You've been enriched.  I

21 did something for you.  Okay?  There's no allegation that

22 NNUK was acting for NNI's benefit.  It's not there.  That is

23 fatal to their unjust enrichment claim and this is true for

24 NNUK, NNN Ireland.  There's also no plausible allegation

25 that NNI received a benefit that's causally related to

1  monies paid by NNUK to NNL and I've been through this before

2  and this is exactly what we were looking at earlier, Your

3  Honor.  This is showing -- this is their argument.  This is

4  the argument they're making because the cash flowed from

5  NNUK; it loaned money to Canada.  Canada was able to repay

6  you.  The numbers don't match.  I've walked through this

7  already.  That's their argument and it doesn't work.  And

8  this isn't the fact issue because they haven't pled it

9  adequately and it's not plausible.  This is essentially the

10 entirety of their Irish allegation.  Utterly conclusory,

11 utterly implausible.

12         Quasi-contract.  The one thing I want to say as

13 part of their quasi-contract is mistake and mistake is

14 governed by 9(b) we all agree.  They allege nothing.  In

15 fact, this is all based on the pre-petition asset sales.

16 Okay?

17         THE COURT:  Yes.

18         MR. ZELBO:  Number one, okay, as I showed you

19 early on in my presentation, there's no allegation NNI did

20 anything other than sold some assets.  They don't even

21 allege what was sold.  For NN Ireland, there's not a single

22 allegation identified what business was even sold, what NNUK

23 -- NN Ireland, if anything, sold in connection with that.

24 What it received.  Nothing.  And for NNUK, they only mention

25 one pre-petition asset sale, Alcatal.  That's it.  This is

1    their allegation, Your Honor.  Very telling.

2           To the extent that NNUK did not receive from any

3    pre-petition business sale.  I'm going to stop right there.

4    To the extent that?  Either they did or they didn't, Your

5    Honor.  They need to make an allegation.  They can't say to

6    the extent that.  But moreover, they know they haven't pled

7    this which will be further particularized following

8    discovery.  Their claim on pre-petition asset sales is

9    completely empty and it fails under basic pleading standards

10   and we don't even know what sales they're talking about.

11          Your Honor, I'm delighted to say that I'm on my

12   last subject.  FSD liability.  I think we can deal with this

13   very easily.  This Court has already ruled it will determine

14   the extent of any liability relating to the UK pension plan

15   and any purported liability arising from UK financial

16   support direction or a contribution notice will be deemed

17   void and have no force and effect in its proceeding.  This

18   claim, by the way, does not apply to NNUK.

19          THE COURT:  Okay.

20          MR. ZELBO:  NN Ireland hasn't pled any basis for

21   FSD liability under Rule 8 and no showing whatsoever why NNI

22   should be liable for NN Ireland's portion of any FSD

23   liability.

24          Finally, and independently of those reasons as to

25   why it should be dismissed, NN Ireland concedes that its FSD

1  claims are contingent co-debtor claims that shall be

2  disallowed pursuant to Section 502(e)(1)(b) of the Code.

3           So, Your Honor, unless you have any questions of

4  me, I'm going to sit down now.  I'll be back for rebuttal if

5  need be.

6           THE COURT:  All right.

7           MR. ZELBO:  Thank you very much.

8           THE COURT:  Thank you, Mr. Zelbo.  Mr. Qureshi?

9           MR. QURESHI:  Thank you, Your Honor.  So back we

10 go to France --

11          THE COURT:  Yes.

12          MR. QURESHI:  -- one more time.  May I proceed,

13 Your Honor?

14          THE COURT:  Certainly.

15          MR. QURESHI:  I don't think this section should

16 take too long.  So the secondary liability claims in French

17 law are asserted on the basis of Article 1382 of the French

18 Code and this claim is asserted with respect to transfer

19 pricing, pre-petition asset sales, the February, 2008

20 Project Swift repayment, as well as the contingent tax

21 claims.  Now, there is no dispute, Your Honor, under French

22 law what the standard is.  So there is no dispute, Your

23 Honor, under the statute, which of course is the source of

24 the law in France, what the elements are.  There has to be

25 fault, there must be damages, and there must be a causal

1  link between the two.  And despite what is self-evidently

2  quite clear wording of the statute, Your Honor, it is rather

3  surprising the degree to which the experts depart on what

4  those words actually mean and it amounts to this.  What Mr.

5  Bremond is telling Your Honor, we submit is what the state

6  of the law is in France today and again what Professor

7  Menjucq asks this Court to adopt is what the law might be at

8  some future point in time or indeed what the professor says

9  the law is.  But again, that does not accord with either the

10  statute, the case law, or the doctrine.  Now, in their

11  opposition, and this is the numb of the dispute.  NNSA, they

12  swap the requirement of fault for a formulation that they

13  call an event that causes damages or a damaging event.  They

14  change the standard.  Now, the professor concedes that his

15  formulation is controversial and you'll see a quote on this

16  slide where he says that, but what he argues, Your Honor, is

17  that his formulation of a damaging event better describes

18  the evolution of French law on civil liability.  So what

19  does it amount to?  What is the import of the difference?

20  The import, Your Honor, is that what the professor is urging

21  is a strict liability regime or fault, despite it being the

22  word used in the statute is read out of it.

23          Now, the professor not only concedes that his

24  interpretation is controversial, but also that it is not the

25  state of the law as it exists today.  In their opposition

1   briefs at paragraph 66, they write:  Although the concept of

2   fault has traditionally been incorporated, it has become

3   less and less important as French legal doctrines has

4   evolved.  Well, let's look into some of those cases and see

5   what they actually say.

6          So the statute itself, the word in the French

7   version of the statute is faut.  Now, Your Honor can look to

8   -- I should go back one slide.  Your Honor can look to any

9   French English dictionary, even one from Quebec, Your Honor,

10  and what you will find is that the word faut is translated

11  as fault.  Not surprisingly.  Now, so it would follow,

12  again, unsurprisingly, that the official French government

13  translation of Article 1382 uses the word fault and that is

14  referred to in Mr. Bremond's declaration at paragraph 38.

15  Yet in the English translation of the professor's

16  declaration, he just -- he takes the word out.  And I think

17  it's important to actually look, Your Honor, at what he

18  says.  It's in paragraph 98 of his declaration, and again,

19  his original declaration was submitted in French and so we

20  have a certified translation.  And he writes in paragraph

21  98:  The general principle of civil liability is stated at

22  Article 1382 of the Civil Code, which stipulates; and then

23  there is a quote which reads, "Any action by a person, and

24  here's the critical piece, which has caused damage to

25  another obliges that person to provide compensation for the

1    damaged caused.  So he's not purporting in this paragraph to

2    be giving Your Honor his view of what the statute means.  He

3    is purporting to tell Your Honor what it says.  And yet, the

4    official French government translation of the same statute

5    uses the word fault and he takes it out.

6              Now, Your Honor, I'm not going to play the games

7    of calling him names and saying he's not credible.  I will

8    leave it at this.  I think it's very easy for Your Honor to

9    come to your own conclusions about what inferences to draw

10   from this.  Mr. Bremond refers to what the professor has

11   done with this translation and as highly misleading and I

12   think I can leave it at that.

13             Now let's go to the case law.  Well, the only

14   case law where this notion of fault has allegedly become

15   less important is in entirely irrelevant context, Your

16   Honor.  And again, Mr. Bremond goes through this in his

17   reply declaration but those contexts are vicarious liability

18   of employers and a special regime for tort liability

19   involving traffic accidents.  I mean it just has nothing

20   whatsoever to do with the circumstances here.  What does the

21   doctrine say?  What do the learned authors say?  Well, Mr.

22   Bremond at his declaration in paragraph 38 again says that

23   the authors are virtually unanimous in confirming that fault

24   is indeed as the statute says, the first element of the

25   claim.

1          So let's look at what the fault is that is

2   alleged here.  Well, what they say is that NNI committed a

3   fault by conspiring with and/or aiding and abetting,

4   assisting and encouraging the actions of either NNL or of

5   NNSA's de jure directors.  So that's the allegation.  Now

6   Article 1382 also requires that the defendant knew that its

7   actions would cause a breach of duty owed to the third

8   party.  Now, Mr. Bremond makes clear that no French Court

9   has ever found fault in circumstances where there is

10  anything less than actual knowledge.  Now again, Professor

11  Menjucq wants to read the actual knowledge requirement out

12  of the statute.  He wants to read it out of the cases and

13  out of the doctrine that says that that is a necessary

14  showing.  And he does so without the benefit of any

15  authorities.

16          So on the next slide, we see his words.  I guess

17  because he's a professor under French law, EMEA would argue

18  that he can make the law but that's not how it works, Your

19  Honor.  And he cites what he would like the statute to say

20  without any authority whatsoever; no case authorities, no

21  academic authorities, and certainly not the words of the

22  statute, nothing.  And nor does he make any attempt to

23  distinguish the cases that are cited by Mr. Bremond.  There

24  are numerous cases, including from the Supreme Court, from

25  the Highest Court, that are cited that there is no effort

1   made to distinguish.

2           So with all of that in mind, Your Honor, let's

3   return once again to what must guide us here which is, of

4   course, the proof of claim.  Now, in the proof of claim,

5   there are no allegations that NNI actually knew that NNSA's

6   directors were in breach of any duty, whether it's general

7   fiduciary duties or specific duties with respect to any of

8   the transactions that are at issue here.  It's simply not

9   alleged.

10          Now, the paragraphs in the proof of claim that

11  NNSA points to to give support to these allegations, they're

12  flawed in a number of different ways.  First of all, a

13  number of them omit any mention of NNI entirely.  So

14  obviously, that can't be sufficient under French law.

15  Others of those paragraphs allege only that NNI employees

16  were aware of certain transactions that were going on.  But

17  again, don't allege the breach of any duty that was owed to

18  NNSA.  A number of those paragraphs failed to say anything

19  at all about NNI's knowledge.  And then the last group are

20  entirely conclusory and again without distinction to what

21  NNI might have done in any given situation versus NNL.

22          Now, NNSA does not dispute that causation is an

23  element but again, we are engaged it would seem in an

24  exercise of re-writing what the statute says.  And now they

25  want Your Honor to conclude that mere participation in the

1    damaging event is enough.  Now, Bremond again cites to

2    numerous authorities and, both case authorities and academic

3    authorities, that set forth a well-established causation

4    test in French law.  It is a but/for test.

5          Now, Professor Menjucq again does not cite any

6    cases, does not cite any doctrine to support his reading of

7    what that test is.  Instead, he simply ignores it and he

8    states that the only issue is whether a damaging event that

9    caused damages and not whether any individual, in this case

10   from NNI, actually engaged in conduct that can be linked to

11   damage that was suffered as a result.  Any why does he argue

12   that?  Because the proof of claim is entirely silent, Your

13   Honor, with respect to any such allegations.  It's simply

14   not there.

15         So, Your Honor, just to catch us up, I think

16   we're running a little over time, aiding and abetting and

17   conspiracy, I don't think I need to go through those.

18   Again, the allegations are virtually identical here for

19   conspiracy, as well as aiding and abetting.  What's in the

20   proof of claim just falls far short under *Twombly* and *Iqbal*.

21   So let me conclude the French section, if you will, before I

22   turn it over to Mr. Barefoot with this observation, Your

23   Honor.

24         In our reply brief, there is a cite to a case,

25   *Gilstrob v. Radiance*.  It's a 7 District of New York

1   decision from 2006.  It was affirmed by the 2nd Circuit.

2   It's cited at page 24 of the reply.  And it I think is

3   particularly apt, Your Honor, in considering what the French

4   expert for EMEA has done here.  And let me just read a short

5   quote.  The Federal Courts are called upon not infrequently

6   to apply the laws of other nations.  They should be more

7   hesitant to engage in such a task when doing so would

8   necessarily involve expanding, extending, or departing from

9   well-settled and long established principles of foreign law.

10  All Your Honor needs to know to put the French law issues to

11  bed and to dismiss on the basis of the inadequacy of the

12  French law pleadings is that the professor admits that his

13  interpretation is controversial, that it is contrary to what

14  established law is, and that he is advocating the way in

15  which he hopes French law might develop one day.  It is not

16  there yet, Your Honor, they do not argue to the contrary,

17  and that is enough to dismiss the French claims.  So unless

18  Your Honor has any questions, I think I'm now turning it

19  over to Mr. Barefoot.

20              THE COURT:  All right.

21              MR. ZELBO:  I think it's your turn.

22              MR. ADLER:  Oh, is it?

23              MR. ZELBO:  I think it's Mr. Adler's turn.

24              MR. ADLER:  I'm sorry.

25              MR. ZELBO:  Because Mr. Barefoot is going to

1  address section four.

2           THE COURT:  Understood.  Yes.

3           MR. ZELBO:  Right.

4           THE COURT:  Defenses.

5           MR. ZELBO:  So I think actually it's Mr. Adler's

6  turn.  I don't know if Your Honor wants a break or Mr. Adler

7  wants a break but --

8           THE COURT:  Would you like a break, Mr. Adler?

9           MR. ZELBO:  -- it is Mr. Adler's turn.

10           MR. ADLER:  Your Honor, I would like a short

11  break if we could.

12           THE COURT:  Like 10 minutes?

13           MR. ADLER:  Yes.

14           THE COURT:  No more than 10 minutes?

15           MR. ADLER:  Yes, Your Honor.

16           THE COURT:  Okay.  Let's do that and maybe my

17  4:30 won't be necessary but if it is, then I'll still at

18  least have allowed you some time to argue before then.

19           MR. ADLER:  That would be fine, Your Honor.

20           THE COURT:  All right.  A 10-minute recess.

21  Thank you.

22           MR. ADLER:  Thank you, Your Honor.

23  (Recess from 3:25 to 3:41 p.m.)

24           THE COURT:  Thank you everyone.  Please be

25  seated.

1          MR. ADLER:  Thank you, Your Honor.

2          THE COURT:  Mr. Adler?

3          MR. ADLER:  I just want to respond very quickly

4    to several of the points that Mr. Zelbo made that were part

5    of his rebuttal but I think they're important and worth

6    raising here.  The first point was that he pointed out that

7    the joint administrators, English expert, Mr. Marshall, also

8    didn't look at the articles of incorporation of NNUK before

9    forming his opinion.  That's not a significant affect here

10   because Mr. Marshall actually didn't opine, unlike Mr. Todd.

11   Mr. Marshall did not offer an opinion about whether the

12   actions that were alleged in the proof of claim were

13   director-only functions.  Mr. Todd said very clearly that in

14   order to determine what director-only functions are for a

15   particular company, a fact that he opined on in relation to

16   NNUK, you would need to look at their specific articles of

17   incorporation and he admitted that he hadn't done that.  And

18   what Mr. Marshall actually said about this is whether such

19   conduct could amount to an assumption by NNI of the role of

20   the director of NNUK will depend on matters such as a

21   consideration of the NNUK business as a whole; this is in

22   paragraph 24 of Mr. Marshall's declaration, and how

23   significant these matters were to it.  How precisely in the

24   evidence regarding these matters comes out at trial and the

25   manner in which creditors' interest should have been taken

1    into account which will depend on detailed evidence of how

2    and during what period the insolvency of NNUK came about.

3    If the matter were before an English Court, I have no doubt

4    that it would be treated as a highly sensitive matter which

5    should be tried and which is wholly unsuited for summary

6    determination in an application to strike out which is what

7    they call a motion to dismiss in England.

8              THE COURT:  Yes.

9              MR. ADLER:  The second point I want to talk about

10   was -- is this idea of ratification and I was very glad to

11   hear Mr. Zelbo refer to it as their ratification defense

12   because that's what it is.  And we need to look a little

13   more closely at how ratification fits in here because, in

14   fact, insolvency is not an element of any of NNUK's claims

15   here.  The -- it's not an element of the de facto director.

16   We don't have a burden of proving that the company was

17   insolvent in order to demonstrate that NNI was a de facto

18   director of NNUK.  There can be a de facto director and

19   breach their duties to the company.  In fact, that's what we

20   allege.

21             THE COURT:  Right.

22             MR. ADLER:  There's a paragraph in the proof of

23   claim.  It's paragraph 87 which states all the different

24   duties that we allege that NNI breached in its role as a de

25   facto director of NNUK and those include failing to act in

1  the best interest of the company.  And in that list though,

2  we state that also they failed to consider and act in the

3  best interest of the creditors in the near insolvency

4  scenario.  So it doesn't -- the finding of no insolvency

5  does not result in dismissing the claim of de facto

6  directorship; it would just modify one of the parts of that.

7  Now, in response to our de facto director claim, the U.S.

8  debtor will be entitled to assert as a defense that the

9  actions, the breaches of duty that were undertaken were

10 ratified by NNL, the Canadian company, acting as the

11 shareholder.  They're asking you to make a finding on the

12 basis of the proof of claim that that ratification occurred.

13 That is very significant that it has to be a shareholder

14 action.  Ratification is a shareholder action.  It is not a

15 director action.  And what the proof of claim shows, all the

16 activities in the proof of claim, all the actions that were

17 taken by NNL and NNI are alleged to be director actions.  So

18 they would have -- it would be their burden to prove this

19 defense of ratification.  It would be their burden to show

20 that there was either an express ratification where the NNL

21 sat down in its -- wearing its shareholder hat, NNL sat down

22 and said okay, we see all these breaches of duty and we

23 agree that they're fine.  We're accepting those

24 transactions.  Or they could show an implied ratification.

25 This is a highly factual defense.  And then in reply to that

1   defense, we would say that because the company was near

2   insolvent or at risk of insolvency, there can't be

3   ratification.

4            THE COURT:  Right.

5            MR. ADLER:  So this is -- we're several steps

6   away from that point and we've engaged on this issue.  It's

7   interesting, but it's simply not the case that we have the

8   burden of pleading near insolvency or risk of insolvency in

9   order to sustain the de facto director claim.

10           Mr. Zelbo said that we argued that all the pre-

11  *Holland* cases, *Gemma*, *Katech*, and *Richborough*, were now

12  void.  I really don't think I said that.  I think I said --

13           THE COURT:  No.

14           MR. ADLER:  -- that it was the factors that were

15  in those cases are to be taken into account.  Now, Your

16  Honor asked a question about whether the -- under *Holland*

17  it's a course of dealing, a kind of a course of dealing that

18  you look at.  And I think it's fair to say that you should

19  look at the totality of the circumstances in order to figure

20  out whether the alleged de facto director was performing a

21  role that would allow you to impose that liability on them.

22  But I just want to point out that it can be a role that you

23  take on in relation to a particular decision.

24           Now, Mr. Zelbo said we could have alleged that

25  directors are only allowed to enter into certain kinds of

1   transactions.  I mean I don't know how much detail he wants

2   here.  We have a general allegation that says they perform

3   director-only functions that checks off the box for the

4   elements of the claim.  We have a list of actions that they

5   undertook.  It's obvious that these are the actions we're

6   basing it on.  Then we have the -- a conclusory allegation,

7   if you will, that says those are director-only functions.  I

8   really don't think we have to go into the articles of

9   incorporation or staple them to the proof of claim and say

10  why each one is a director-only function.  The allegation is

11  there.  It's supported by facts.

12          Again, in his going through some of the proof of

13  claim paragraphs, he was cherry-picking.  Yes, we used the

14  word involvement in a number of cases.  But we also made it

15  clear again and again and again that NNI made decisions

16  about NNUK's business.  They made decisions.  They enforced

17  those decisions about the most major kind of corporate

18  matters involving huge sums of money.

19          Mr. Zelbo referred to the paragraphs that I had

20  cited in the Ireland proof of claim and I don't want to

21  belabor this but if I said the relevant paragraphs were just

22  52 to 64, then I skipped 51, which is -- which does mention

23  NNI and which says very specifically that, in relation to

24  the inter-company loans and dividends, NNI personnel were

25  actively involved in devising and implementing the

1    initiatives that are in question.  So I just wanted to point

2    out that paragraph.

3          The joint administrators have sued various

4    directors.  They haven't sued all of them at the moment but

5    they've sued various directors.  The relevance of that I

6    think is that it's consistent with the overall position that

7    we're taking here; that these directors breached their

8    duties to the company.  It's consistent with conspiracy

9    claims.  It's consistent with the overall approach that

10   we're talking here.  I mean I think if we hadn't done that,

11   Your Honor would be entitled to ask why since we clearly

12   allege that they breached their duties.

13         All right.  Now moving on, I had prepared my

14   notes not in exactly the same order as the way they

15   presented things.  I'm going to do the French tort claim

16   first.

17         THE COURT:  Okay.

18         MR. ADLER:  This is a claim -- Article 1382 of

19   the French Civil Code is actually their general tort

20   liability statute.  It's interesting.  It's the basis of all

21   tort liability in France apparently.  Any act, whatever, of

22   man which causes damage to another obliges the one by whose

23   fault it occurred to compensate them.  Now, as Mr. Qureshi

24   stated, the experts primarily disagree about the meaning of

25   fault.

1              THE COURT:  Yes.

2              MR. ADLER:  The word fault.  And what I would

3    like to say initially, I was flabbergasted really to hear

4    him bring up the point about the omission in the English

5    translation of the word fault.  That English translation was

6    not prepared by Professor Menjucq.  It was prepared by an

7    outside service that had been retained for this purpose.  I

8    can't tell you exactly why it happened.  There was some --

9    apparently on some French legal website somewhere there is

10   another translation of this that omits the word fault.  But

11   if Mr. Bremond who had filed his declarations in English,

12   but he's a Frenchman; I assume he speaks French.  If he read

13   Professor Menjucq's declaration in the original French, he

14   would see at paragraph 98 that Professor Menjucq includes

15   the word fault.  He quotes the statute correctly.  (Quoting

16   in French).  The person at fault to compensate the person.

17   So I mean that's just a complete red herring.  In the French

18   version, he did include the word fault and, in fact, much of

19   his declaration is about the meaning of the word fault.  He

20   didn't overlook that requirement.

21              With respect to the standard that actually

22   applies, this is a case where, as I said, we meet their test

23   because while it's very interesting that these two French

24   lawyers have gotten into this debate and where Professor

25   Menjucq says that he believes that this is moved towards a

1  strict liability standard, the word fault in Mr. Bremond's

2  interpretation he says it means negligence.  He says while

3  it is true as a general matter, this is paragraph 46, while

4  it is true as a general matter that fault for purposes of

5  1382 may also be established by conduct that is negligent in

6  nature.  So the standard here is negligence.

7           Now, Your Honor, I took you through the

8  allegations in the proof of claim about all the actions that

9  were taken by NNI.  This was a series of transactions whose

10 purpose was to move cash, move money, away from the EMEA

11 entities to North America.  And we don't have to show -- we

12 don't have to impose strict liability.  This was done

13 knowingly and intentionally.  We don't even have to rely on

14 a negligence standard here.  They knew they were taking

15 money away from France and moving it to NNL and that is --

16 it's not a case that we need to prove strict -- that French

17 law is strict liability.  The negligence standard is fine.

18 And that applies equally by the way to secondary liability.

19 Mr. Bremond tries to suggest that secondary liability -- I

20 should start by saying this tort statute encompasses both

21 what we would think of as primary and secondary tort

22 liability.  French law doesn't make a distinction between

23 the two concepts.  If you are a person that has caused harm

24 to another, whether what we would consider an accessory or

25 secondary position or a primary position, it's under the

1   same statute.  He tries to say that the Courts impose a

2   somewhat stricter test but he also says, for secondary

3   liability that is --

4              THE COURT:  Yes.  Yes.

5              MR. ADLER:  -- but he also says there's no

6   difference; that it's the same standard and that's in

7   paragraph 41 of his declaration.  All claims are analyzed

8   under the same principle.  So it's negligence.  We've taken

9   you through the allegations in the proof of claim.  We

10  clearly go way beyond that negligence standard.

11             Causation.  The experts have kind of an academic

12  disagreement about the pleading of causation.  The important

13  point here is but/for causation.  They agree that you can be

14  one of multiple causes.  You don't have to be the sole

15  cause.  And it was quite clear here that, in our

16  allegations, that NNI was one of several causes.  They were

17  intentionally taking these actions, implementing these

18  actions, making decisions, and affecting the property of

19  NNSA.

20             Now, it was amusing to me to hear Mr. Qureshi

21  suggest that we should be dismissed because we didn't use

22  the word but/for causation.  I mean if we don't include

23  conclusory allegations, they get upset.  If we do include

24  them, they find them insufficient.  I mean that's an

25  instance where the facts alleged in the complaint clearly

1   satisfy the but/for causation standard.  They show that NNI

2   is playing an integral role in the transactions we are

3   complaining about.

4          Now moving on to aiding and abetting, I won't say

5   very much about this.  It's, under U.S. law, it's a

6   knowledge standard.  It's providing material assistance.  We

7   went through the statement of -- the proof of claim and I

8   think it's quite clear that NNI knew what it was doing and

9   was acting so as to, not only to assist, but really to cause

10  the transactions.  This aiding and abetting claim is pleaded

11  in the alternative.  We say that the facts show enough for a

12  primary violation and for certiorari, there must be enough

13  there to entail the knowledge, the necessary knowledge and

14  assistance for a secondary liability claim.

15         Dishonest assistance under English law.

16  Actually, the experts agree that *Royal Brunei*, the *Royal*

17  *Brunei* case supplies the relevant test.  And the other thing

18  they agree on is that the standard of dishonesty, what does

19  dishonesty mean is an objective test.  And the slide that

20  Mr. Zelbo showed you before showing dictionary definitions

21  of what dishonesty means, several of those definitions were

22  based on a subjective test.  Those were not English law

23  definitions.  And if you look at the *Brunei* -- *Royal Brunei*

24  case, this is a privy counsel case, which is the equivalent

25  of the House of Lords; it was referred to by Professor

1    Marshall -- not Professor Marshall, Mr. Marshall at

2    paragraph 42 to 43.  He quotes the *Royal Brunei* case and

3    what does dishonesty mean?  Honest people do not knowingly

4    take other people's property.  Unless there is a very good

5    and compelling reason, an honest person does not participate

6    in a transaction if he knows it involves a misapplication of

7    trust assets to the detriment of the beneficiaries, nor does

8    an honest person in such a case deliberately close his eyes

9    and ears or deliberately not ask questions lest he learn

10   something he would rather not know and then proceed

11   regardless.  And then there's the further quotation.

12   Actually, it was in another case where somebody said that it

13   was referred to as part of a gloss on this that it could be

14   guilty of commercially unacceptable conduct.  Well, honest

15   people do not knowingly take another person's property.

16   That is what is clearly alleged in the allegations that we

17   went through in the proof of claim.  It is alleged that NNI

18   knowingly participated in transactions that moved money from

19   the EMEA entities to North America and that NNI was also the

20   beneficiary of some of those.

21            THE COURT:  Now, that would require tracing would

22   it not?

23            MR. ADLER:  Well, this was -- at the moment, I'm

24   on the dishonest assistance claim.

25            THE COURT:  Yes.

1              MR. ADLER:  Which is part of aiding and abetting

2    and I will get to the ones that entail tracing of

3    momentarily.

4              THE COURT:  But in order to determine that it's

5    somebody else's money, it would seem to me you would have to

6    trace that -- those funds.

7              MR. ADLER:  Well, for dishonest assistance

8    purposes, which is aiding and abetting, it would be enough

9    if I helped take the money from C to D and not to me.

10             THE COURT:  Okay.  Okay.

11             MR. ADLER:  Now, conspiracy.  The U.S. debtor

12   doesn't dispute that there are causes of action for

13   conspiracy under the laws of all the relevant jurisdictions.

14   The basic point they make is that we haven't pleaded

15   sufficient facts from which it can be inferred that there

16   was an agreement between NNI and any of the other parties

17   that it's alleged to have conspired with.  And it is pleaded

18   in the alternative that there are different entities they

19   were working together with.  But considering the overall

20   allegations that we've looked at, it's kind of hard to take

21   this argument seriously and particularly, the comparison to

22   the *Twombly* case.  As I said before, this is not a case

23   where you have a series of independent commercial parties

24   who happen to be acting in a parallel manner.  This is two

25   entities in a corporate group.  They have committees

1    together overlapping directors.  They work together.  The

2    allegations in the proof of claim clearly establish this to

3    implement these policies.  It is not in the slightest bit

4    implausible to say they had an agreement.  In fact, I don't

5    know how you could believe that they didn't have an

6    agreement if you accept the conduct as true that's being

7    done by these two entities in communication with each other,

8    committees and so on.  I mean how could they not have had an

9    understanding?  It's completely plausible.  And I do think,

10   by the way, the proof of claim indicates the overall period

11   of the conspiracy, the purpose, the means that were used to

12   effectuate it.  No, we are not in a position to say that

13   Mr. X met with Mr. Y in a hotel room on such and such a date

14   and agreed to such and such.  But the allegations here are

15   sufficient for Your Honor to infer that there was an

16   agreement.

17          Now, addressing the various claims to recover

18   property that was received by NNI.  This would be unjust

19   enrichment and unconscionable receipt.  There are a couple

20   of arguments that they've made.  They've made the tracing

21   argument in their papers.  They've also argued that the

22   facts here don't show that to allow NNI to keep it would be

23   inequitable.  I'll just dispense with that first.  We've

24   alleged that they knowingly transferred all of these assets

25   away from the EMEA entities.  We think it's quite clear from

1   that that we've pleaded a sufficient basis to say that it

2   would be unconscionable or inequitable to allow them to

3   retain it.

4          Now, while it's true that we are not in a

5   position to trace every dollar in every transaction, I was a

6   little surprised to hear Mr. Zelbo to say that it's

7   impossible that we would be able to do so.  Clearly, it's

8   not impossible whatever you might say about the cause of

9   action that we've pleaded here.  But there are a couple of

10  transactions I think Mr. Zelbo has overlooked in which the

11  tracing is quite clear.  In relation to the pre-petition

12  asset sales --

13          THE COURT:  Yes.

14          MR. ADLER:  -- we're alleging that these

15  businesses were sold and money that belonged to NNUK or the

16  other EMEA entities that should have gone to them, instead

17  flowed directly to NNI.  This is tracing.  That -- it is

18  those funds.  They're not fungible.  They're not dumped into

19  a big bank account.  We had a beneficial interest in the

20  proceeds and instead of coming to us, it goes to them.  The

21  same thing occurs in paragraph 75 of the proof of claim in

22  relation to Project Swift, where there's a bunch of value

23  that should have come to NNUK that instead goes to NNI prior

24  to Project Swift.  It's money that we say we had a

25  beneficial interest in that flows into their hands.  That is

1    tracing.

2              The pre-petition asset sales.  Admittedly, these

3    claims are less detailed than some of the others.  The

4    Alcatal sale, which is referred to specifically, is the

5    biggest one, the most important one.  What I should say

6    about this first is that the contention here, and it relates

7    closely to some of the arguments that the parties are making

8    in relation to the allocation of the sale proceeds is that

9    the allocations of these prior sales of businesses, because

10   they were done under the principles that were incorporated

11   in the MRDA, don't give a proper allocation of the values

12   among the various debtors.  It's that same concept.  It's

13   actually intertwined with the issues that the parties are

14   going to need to deal with in the allocation procedures.

15   Some of the relevant sales, by the way, we think we may not

16   even know about where the North American companies are

17   believed to have sold intellectual property rights that the

18   EMEA debtors should have had interests in that they may not

19   even have known about the sales; that they should have been

20   entitled to something and they weren't even aware of it.

21              Now, it's less detailed.  We did need to file a

22   claim to avoid the potential effect of the bar date.  We

23   certainly think we satisfy Rule 3001(f) on these claims.  We

24   think the U.S. debtor has adequate notice of the basis of

25   the claims.  We don't think that there's a reason to require

1  additional particulars at this time but we'd be prepared to

2  add them, increase that -- amend to add additional details

3  if the Court thinks it would be useful to do that.

4          The contingent claims on FSD liability, and this

5  is in Ireland and France.  The Bankruptcy Code allows you to

6  file claims whether or not they've been reduced to judgment,

7  liquidated, unliquidated, fixed, contingent, matured,

8  unmatured, that's not an unusual thing.  This is a proof of

9  claim and that has been filed to protect the joint

10 administrators'' right to recover that we can't articulate

11 the circumstances that would give rise to liability.  We

12 can't say if this liability will ever mature because it

13 hasn't happened yet.  It's simply a contingent claim.  And

14 again, we say it complies with Bankruptcy Rule 3001(f) and

15 that it should be allowed to stand at this point.  And I

16 believe that is it on my secondary liability and other

17 claims unless Your Honor has any questions.

18          THE COURT:  No, I don't.  Thank you, Mr. Adler.

19          MR. ADLER:  Thank you.  Sorry; I've been handed a

20 note here.

21          THE COURT:  See, I didn't stop the clock yet.

22          MR. ZELBO:  Too late.  You should have thrown the

23 flag before you did the next play.

24          MR. ADLER:  I should note that for the dishonest

25 assistance claim, just to be clear about it, you don't have

1  to show tracing.

2          THE COURT:  Okay.  Okay.

3          MR. ADLER:  All right.  Thank you, Your Honor.

4          THE COURT:  Thank you.  Thank you, Mr. Adler.

5  Mr. Zelbo?

6          MR. ZELBO:  Your Honor, since I want to make sure

7  I'm on the right clock, we think we have about 40 minutes

8  but I'm not sure what Your Honor thinks.

9          THE COURT:  I have you just under 42.

10          MR. ZELBO:  Close enough.

11          THE COURT:  Close enough.

12          MR. ZELBO:  Works for us.  Thank you, Your Honor.

13          THE COURT:  Sure.

14          MR. ZELBO:  I didn't realize, but I don't mind,

15  that there was going to be a sur-reply on the fiduciary

16  duties but that's okay.  But I would like to say a few words

17  then in response to that.  Thank you.

18          THE COURT:  All right.  Yes.

19          MR. ZELBO:  I'm going to be quick and they might

20  not necessarily flow because I'm going to respond point by

21  point to a couple things.

22          THE COURT:  Okay.

23          MR. ZELBO:  The reference to articles of

24  incorporation, I just want to go back to what I said before.

25  That a director may have authority under an article of

1    incorporation to do something, to manage, is not the same as

2    saying it's a director-only function.  They could have

3    alleged and explained why it was that these were director-

4    only functions.  Other than a conclusory allegation of just

5    saying it, there's no facts there and it really is

6    implausible.  That's point one.  Point two, on ratification,

7    I think they're making an argument you won't find anywhere

8    in any paper so far submitted about defenses and affirmative

9    defenses.  That's fine.  It's a brand new argument just to

10   be clear.  But Mr. Todd says quite clearly in his witness

11   statement, and had never refuted it, under English law,

12   absent insolvency, it is not a breach of fiduciary duty not

13   of the facts.  It's not a breach of fiduciary duty for a

14   subsidiary's Board to act in the interest of the parent

15   company.  And then in addition, the parent can ratify.

16   There's two prongs to this, Your Honor.  Okay?  So it's not

17   a breach of fiduciary duty.  And I don't think they can say

18   that this is an issue of fact for later.  The entire

19   complaint, that it says anything, this was all designed as

20   cash to Canada.  This was all being done by the Canadian

21   parent where is here it's clear on the face of the

22   allegations that this was for the benefit and in the

23   interest of the parent.  That's their whole theme.  It's for

24   the interest of the parent, not in their interest.  That's

25   their argument.  If it wasn't in the interest of the parent

1  and it was in their interest, they don't have a claim.  So

2  on its face, the ratification argument works and there is no

3  breach of fiduciary duty because it was in the interest of

4  the parent absent insolvency or zone of insolvency, and they

5  haven't adequately alleged it.  Okay?  Ireland.

6          THE COURT:  Yes.

7          MR. ZELBO:  Mr. Adler said he left off paragraph

8  51.  I don't remember if he did or he didn't.  It's possible

9  I left it off.  I hope the record will reflect but that's

10  fine.  He can refer to paragraph 51 because paragraph 51

11  says again, the policy giving rise to it resulted from a

12  group treasury project headed by Catherine Stevenson of NNI.

13  It's the same implausible allegation because she happened to

14  be a director when she was doing group treasury functions.

15  Is it plausible she was wearing her group treasury -- her

16  treasurer hat at Canada or her director hat at NNI?  And by

17  the way, I'm going to read it again.  The policy giving rise

18  to it resulted from a group treasury project headed by

19  Catherine Stevenson of NNI.  It doesn't say --

20          THE COURT:  On behalf of.

21          MR. ZELBO:  -- headed by Catherine Stevenson

22  acting on behalf of NNI as a director.

23          THE COURT:  Yes.

24          MR. ZELBO:  And I don't think this is sloppy

25  pleading.  I think that it's the best they could say but

1   it's not sufficient.

2           France, I don't want to dwell on this.  I thought

3   Mr. Qureshi was quite careful not to cast any aspersions on

4   the professor.  The fact is that's the translation they put

5   in.  We all agree it's not accurate.  We can move on.  And

6   we all agree fault is an element.  I just want to make clear

7   that when you read the France claim, you're going to see

8   they plead these as a secondary liability.  There is no

9   allegation that 1382 is a primary liability claim.  When you

10  look at the France proof of claim, you'll see it's pled

11  solely as aiding and abetting.

12          THE COURT:  Yes.

13          MR. ZELBO:  They say this is your French

14  equivalent of aiding and abetting and when it's an aiding

15  and abetting claim, as Mr. Bremond made clear, actual

16  knowledge, not negligence is the touchstone.  And the French

17  cases have made that clear.

18          And on causation, Your Honor, I think Mr. Adler

19  may be glossing over the real issue here.  Okay?  The debate

20  here is that their expert is saying if you just participated

21  in some act and then that act harms the plaintiff, that

22  satisfies causation.  That's not correct under French law.

23  The cases make it clear.  No, you have to be a cause.  Yes

24  there can be multiple causes but you have to be a cause.  So

25  the question is looking at these allegations, is it

1   plausible that NNI was to cause here?  Is it plausible that

2   NNI dominated these directors at NNSA and caused them to

3   abdicate their fiduciary duties by accepting these

4   transactions?  The allegations in the complaint say the

5   exact opposite.  They say that Ryan Smith, okay, well,

6   putting aside what he's attributed to, and you know our

7   argument on that, he went to the controller and it was one

8   word.  The controller expressed reluctance.  Okay.  Never

9   mind.  Okay?  That is not causation.  There's no allegation

10  much less a plausible one that NNI's actions caused the NNSA

11  de jure directors to either accept these transactions or to

12  abdicate their responsibility and just get rolled over.  We

13  didn't cause that.  It's not alleged.

14          Dishonest assistance very quickly.  I agree, the

15  *Royal Brunei*.  When Lord Nichols and *Royal Brunei* says it's

16  an objective test, I don't have a problem with that.  What

17  that means is, and he makes clear in the opinion, what that

18  means is if you engage in fraud, you can't come back and say

19  oh gees, I didn't realize that was fraud.  But you still

20  need fraud.  Dishonest assistance, you still need fraud, and

21  that's why 9(b) applies and once 9(b) applies, they haven't

22  satisfied it and that was our point.

23          On conspiracy, *Twombly* does state the test which

24  you need.  It's not there.  All you have is allusions to the

25  same conclusory allegations of involvement, the same

1  conclusory allegations that failed to identify any action

2  taken on behalf of NNI.  It's the same conclusory

3  allegations that *Twombly* is directly on point.

4         Tracing.  It is true I said it's impossible for

5  them to trace.  It is.  I heard Mr. Adler say well, it's

6  possible.  Possible isn't the test.  The fact that I believe

7  it's impossible doesn't change the test.  Possible is not

8  the test.  Plausible is the test and it's not remotely

9  plausible.

10         With respect -- and there's no allegation that

11  NNL, the parent, has money.  There's lots of money.  Okay?

12  There's no allegation that there were any dollars at NNL

13  that were earmarked for anything.  There's no allegation

14  that monies that came in from NNUK went into some lockbox

15  or, if you will, an escrow account holding allocation funds.

16  There's no allegation that this money went into a lockbox

17  and then was used.  There's no earmarking alleged and absent

18  the earmarking, they can't trace it.  There's no allocation

19  NNI wasn't owed the money that the Canadian parent paid to

20  it.  This was a revolving loan facility that went up and

21  down during the course of the year between NNL and NNI and

22  it was part of the cash management system.  They cannot show

23  that money from NNUK ended up at NNI.  It's not plausible.

24  It also isn't possible.

25         With respect to pre-business -- pre-petition

1    business sales, again, there's nothing -- they don't allege

2    anything is earmarked.  A business was sold.  Okay.  They

3    don't allege that NNI received some money that was earmarked

4    for NNUK or that any cash flowed from NNUK at all.  And the

5    allegations on the pre-petition business sales are

6    incredibly thin and really what Mr. Adler just said is it

7    satisfied Rule 3001.  It doesn't satisfy 12(b)(6).  And if,

8    as we submit, the Court should apply 12(b)(6), those claims

9    have to be dismissed.  Thank you, Your Honor.

10                THE COURT:  All right.  Thank you.  Thank you,

11   Mr. Zelbo.

12                MR. ZELBO:  Okay.  I will cede the floor to Mr.

13   Barefoot now.

14                THE COURT:  Very well.  Mr. Barefoot, good

15   afternoon.

16                MR. BAREFOOT:  Good afternoon, Your Honor.

17                THE COURT:  Good to see you again.

18                MR. BAREFOOT:  You as well, and I'm pleased to

19   report that we're at the conclusion of today's arguments,

20   Section 4.  Your Honor, just for the record, Luke Barefoot

21   from Cleary Gottlieb Steen & Hamilton, LLP.

22                THE COURT:  Yes sir.

23                MR. BAREFOOT:  Also for the U.S. debtors.  Your

24   Honor, I'll be addressing today what's colloquially been

25   referred to as the defense section of today's argument.

1              THE COURT:  Right.

2              MR. BAREFOOT:  Namely, the related doctrines of

3    in peri delicto and ex turpi causa and the statute of

4    limitations bars to certain of EMEA's claims.

5              Your Honor, at the outset, I think it's

6    appropriate to note that while it's, of course, technically

7    correct that these are the defenses and that this is the

8    defense's section of the argument, these bases for dismissal

9    of the claims are plain from the face of EMEA's complaints

10   or proofs of claim.  There's no disputing facts.  There's no

11   new issues that we're raising.  We're simply accepting their

12   claims as true, as we must on this 12(b)(6) motion.

13             THE COURT:  Right.

14             MR. BAREFOOT:  And noting the necessary

15   consequence of accepting those facts.  That certain of their

16   claims are time-barred and that certain of their claims are

17   precluded by virtue of the wrongdoing that is attributable

18   to NNUK or NN Ireland itself.  And in my remarks, Your

19   Honor, given that background, I'll try to point the Court to

20   the relevant operative allegations that make that true as I

21   go through.

22             THE COURT:  Thank you.

23             MR. BAREFOOT:  And turning first then to the, I

24   guess what I'll call the Latin portion of the remarks --

25             THE COURT:  Okay.

1          MR. BAREFOOT:   -- the doctrine of in peri delicto

2  and ex turpi causa.  As Your Honor is aware, in peri delicto

3  is a common law doctrine that precludes EMEA from recovering

4  where it itself has participated in the wrongdoing.  Or put

5  another way sometimes, where both the plaintiff and

6  defendant bear at least equal responsibility for the

7  underlying conduct.  And when you look at the secondary

8  liability claims that EMEA has brought in its proofs of

9  claim, claims for aiding and abetting, claims for

10  conspiracy, that's precisely what those claims are based on.

11  The wrongful acts of NNUK's own de jure directors and NNUK's

12  shareholder, NNL.

13          Pointing first to some of the allegations

14  concerning the actions of NNUK's de jure directors, and

15  these allegations are drawn from the NNUK proof of claim but

16  there are parallel allegations for each of the three

17  jurisdictions.  They plainly allege in paragraph 28 that

18  each of the de jure directors, unsurprisingly, owed

19  fiduciary duties and the duty of skill and care to NNUK and

20  that those de jure directors, with respect to each of the

21  fact patterns alleged; transfer pricing, the interest-free

22  loans, and Project Swift, that the de jure directors of NNUK

23  breached the duties which they owed to the company.  It's

24  notable, Your Honor, that this is made in general terms, all

25  of the de jure directors.  There's no suggestion that it was

1   just a subset or that there were innocent, unaware directors

2   with respect to these transactions.

3          THE COURT:  It's not a defined term as to certain

4   individuals.

5          MR. BAREFOOT:  Correct.  And when you go to the

6   operative allegations for these causes of action, it becomes

7   even clearer.  The aiding and abetting and conspiracy claims

8   actually depend as an element of the claim on breaches of

9   duty by either NNL as a shareholder -- as a de facto or

10  shadow director or their own de jure directors.  And again,

11  just drawing for illustrative purposes from the NNUK claim,

12  claims for aiding and abetting.  It is clear that in

13  bringing about and allowing NNUK's participation in the

14  transfer pricing systems on which they base their claims,

15  the directors of NNUK, both de jure and in the case of NNL,

16  de facto or shadow, breached their duties.  Same claims for

17  conspiracy; that the alleged conspiracy caused NNUK's

18  directors, including NNL as a de facto or shadow director to

19  breach their fiduciary duties and their duties of care under

20  English law.  That's the object of the conspiracy that's

21  alleged.  These allegations make clear that the secondary

22  liability claims for aiding and abetting and conspiracy are

23  based on the primary wrong of NNUK itself.  It follows from

24  that that NNUK bears at least substantial responsibility for

25  the harm or, put alternatively, that the wrongful acts of

1  its directors and shareholder form part of the basis for its

2  claim, thereby invoking the in peri delicto doctrine.

3          Now, EMEA wriggles to try to avoid that

4  application and there's numerous arguments that they bring

5  up but when you closely scrutinize them, Your Honor, or not

6  even so closely, none of them stick.  The first they suggest

7  is that NNI is an insider.  But the insider arguments ignore

8  the context of these claims.  These are the claims for

9  secondary liability which are not predicated on an

10  allegation, as Mr. Adler said are pled in the alternative to

11  the allegation that NNI was a de facto director.  The cases

12  that EMEA cites on this point stand only for really the

13  uncontroversial proposition that in peri delicto doesn't bar

14  claims against a fiduciary itself for breach of fiduciary

15  duty owed to the corporation.

16          EMEA also raises some insider arguments that turn

17  on the definition of an insider in the Bankruptcy Code.  But

18  that ignores that these are common law claims.  They're not

19  dependent on the definition of insider in the bankruptcy.

20  In fact, the Delaware Supreme Court in the *AIG* case that we

21  cite held that it would limit any exception to the in peri

22  delicto doctrine to seats  brought by the corporation

23  against its own fiduciary in that capacity.  Because to

24  expand it further to claims against third parties would

25  swallow the doctrine as a whole.

1              The second argument that EMEA raises to try to

2   avoid in peri delicto is the adverse interest exception.

3   But in order for the adverse interest exception to apply,

4   the corporation's interest must have been totally abandoned

5   so that there was no benefit to the corporation.  On that

6   point, I'd like to go back to the claim, Your Honor, which

7   is, of course, the touchstone for this analysis because

8   EMEA's claims admit significant benefits that they receive

9   from many of these transactions.  For the -- in fact, for

10  each of these transactions, they're not alleging that the

11  corporation's interests were totally abandoned or that there

12  was no benefit received by NNUK of the other affiliates.

13  It's simply that they wanted more or should have received

14  more.  For the pre-petition asset sales, they admit receipt

15  of 58 million and are only alleging that they should have

16  received 240 million.  And as Mr. Zelbo pointed out

17  separately, that's the only sale that they allege and that

18  is -- this is the one exception where this isn't generally

19  applicable because there are no sales alleged for NN

20  Ireland.  For the transfer pricing allegations, they allege

21  repeatedly that the RPSM failed to properly reward NNUK but

22  no where do they allege that it was completely detrimental

23  to NNUK's interests.  And as to Project Swift, they only can

24  test the value that was attributed to the assets they

25  received, the subsidiaries of the other EMEA debtors.  But

1    they don't allege that those assets had no value or that the

2    corporation's interests were completely disregarded.

3              Your Honor, finally, the EMEA claimants suggests

4    that the Court should wait until it conducts discovery or an

5    evidentiary hearing before apply the in peri delicto

6    defense.  But Delaware law is clear that the in peri delicto

7    defense is designed to avoid that very inquiry.  Because of

8    the judicial interests in avoiding meddling or involving

9    itself in suits between wrongdoers so that there is no

10   necessity for an inquiry into the relative fault based on

11   the evidence.  Now, we heard for the first time on EMEA's

12   opposition briefs that Texas law and Texas law alone would

13   govern this defense.  And I think it's telling because their

14   response didn't suggest that Texas law governed all of their

15   claims or that Texas law was the correct choice of law in

16   this case.  Instead, they were singling it out only for

17   application of the in peri delicto doctrine, which, Your

18   Honor, I think is illustrative of another example of them

19   trying to lower the standards to find a home for their

20   claims.  But in fact, Texas law, they fair no better.  Texas

21   Courts have conceded, at least in principle, that the in

22   peri delicto defense could be applied where the defense is

23   plain from the complaint itself.  And again, we're not

24   relying on facts that are in dispute and there's no

25   allegations that we've made to counter the application of

1 the in peri delicto.

2          So to the extent that under Texas law the Court

3 needs to conduct a balancing or a policy inquiry to

4 determine whether the parties there substantially equal

5 responsibility for the harm alleged, the Court can conduct

6 that analysis based on the facts that are alleged in the

7 proof of claim accepting them as true.  And to suggest

8 otherwise would be in contrary to the basic inquiry of a

9 12(b)(6) motion.

10          THE COURT:  So I don't need to wait for a finding

11 by a Court that the de jure directors breached their

12 fiduciary duties?

13          MR. BAREFOOT:  No, Your Honor.  You can do it

14 based on their allegations, accepting them as true.  They've

15 alleged plainly that those de jure directors or that NNL as

16 a de facto or shadow director --

17          THE COURT:  Right.

18          MR. BAREFOOT:  -- breached its duty to the

19 corporation and that's sufficient.

20          THE COURT:  Okay.

21          MR. BAREFOOT:  Otherwise, if you had to wait for

22 a finding by the English Court or some other Court, all of

23 their secondary liability claims would fail until that

24 finding was had.

25          Just briefly, Your Honor, on ex turpi causa.  It

1    is the English law corollary to in peri delicto.

2              THE COURT:  Okay.

3              MR. BAREFOOT:  So much of the same analysis that

4    we've just gone through with the adverse interest exception

5    is applicable to the ex turpi causa analysis.  There are

6    some differences.  I think they refer to the what we know as

7    the adverse interest exception as the Hampshire Land

8    Principle, but the analysis and the outcome is the same.

9              The only additional argument is that, under

10   English law, the ex turpi causa defense applies not only to

11   secondary liability claims it's the primary breach claim for

12   breach of duty and care and breach of fiduciary duty.  And

13   I'm sure you're going to hear from Mr. Adler, Your Honor,

14   that the experts do disagree on this question.  This is one

15   where they truly are at odds.  But as Mr. Todd, our expert

16   sets out, there is no separate or different analysis under

17   English law that's uniquely applicable to breach of duty, of

18   care or breach of fiduciary duty claims.  Instead, it's the

19   same basic analysis of attribution; whether the director's

20   conduct is attributable to the company.

21             THE COURT:  Okay.

22             MR. BAREFOOT:  And under English law, there's an

23   exception to the Hampshire Land or adverse interest

24   exception in the case of so-called one-man companies where

25   all of those involved in the concern were involved in the

1   conduct that's alleged.  And here, all of the individuals,

2   whether it was the de jure directors or the de facto or

3   shadow directors as alleged in EMEA's claim were not only

4   aware of but actively involved in the conduct that they

5   allege was a breach of duty.  And while EMEA is undoubtedly

6   going to point you to the *Belmont* case that they set forth

7   in their briefing, that case was not a one-man principle, a

8   one-man company case and the decision it still enrolls makes

9   that clear.

10          Finally, Your Honor, EMEA is going to -- has

11  suggested in its briefing anyway that it's going to argue

12  policy reasons, why the Court should not apply the ex turpi

13  causa or really the in peri delicto doctrine here.  But the

14  English Supreme Court has made clear that ex turpi causa is

15  absolute and inflexible.  I think the quote is unforgiving

16  and uncompromising.  The Court has already wrestled with

17  those policy decisions and come out with a test.  And the

18  Court should decline at a new case invitation to reconsider

19  the policy judgments that are embodied in the *Stone and*

20  *Rolls* decision to conduct an independent analysis of

21  competency.

22          Turning Your Honor to the statute of limitations,

23  I'd like to begin by focusing on the U.S. State law aiding

24  and abetting claims.  I think this got some headlining from

25  both Mr. Qureshi and Mr. Zelbo.  And the reason that I want

1  to turn to those first is that the Court can address and

2  dismiss the U.S. State law secondary liability claims for

3  aiding and abetting and for conspiracy without addressing

4  the legal question of whether the Delaware borrowing statute

5  governs.

6          And I also want to make clear at the outset, Your

7  Honor, that the movants are going to be withdrawing their

8  statute of limitations arguments to the extent that they

9  turn on the expiration of the limitations period during the

10 term of the debtors' cases.

11         THE COURT:  Okay.

12         MR. BAREFOOT:  So that, in other words, Your

13 Honor need not reach the Section 108(c) arguments that were

14 presented in the parties brief.

15         THE COURT:  Yes.

16         MR. BAREFOOT:  So turning back to the issue I

17 said I would address first, which is the timeliness of the

18 State law claims for aiding and abetting and conspiracy.

19 This is quite telling then, Your Honor, not separately

20 addressed in the briefing by the joint administrators.  What

21 they suggested instead, *Writlarge*, and without addressing

22 these claims in particular, was that longer foreign law

23 statutes of limitations could render their aiding and

24 abetting and conspiracy claims timely.  In particular, for

25 example, that the French Civil Code would render timely

1  claims brought under Delaware or Texas law.  But there's no

2  basis on which you can engraft a foreign law statute of

3  limitations on to a U.S. law claim.

4        The claimants have suggested that the internal

5  affairs doctrine would allow this, but that would require

6  the application of the jurisdiction and incorporations law

7  as a whole, not the selection only of the advantageous

8  longer statute of limitations.

9        So Your Honor has heard plenty about foreign law

10  today.  We're about to return to some familiar territory and

11  that's that these State law claims under State law for

12  secondary liability are time-barred.

13        THE COURT:  Mr. Barefoot, forgive me.  Maybe this

14  is a good time for us to adjourn briefly while I take on the

15  other matter and I'm going to go to another courtroom to do

16  that so all of you can remain here but -- and I don't think

17  it will take very long.  I'm hoping.

18        MR. BAREFOOT:  Certainly, Your Honor.

19        THE COURT:  But I have to make sure that the

20  water stays on so we'll stand in recess for probably 15

21  minutes or so.  I apologize, but thank you.

22  (Recess from 4:34 to 5:24 p.m.)

23        THE COURT:  Thank you everyone.  Please be

24  seated.  My apologies.  But I am now prepared to at least

25  concentrate on this particular matter.  Mr. Barefoot.

1              MR. BAREFOOT:  Hope you kept the lights on.

2              THE COURT:  Yes.  For the time being.

3              MR. BAREFOOT:  Your Honor, to pick up where we

4    left off --

5              THE COURT:  Yes.

6              MR. BAREFOOT:  -- with the State law --

7              THE COURT:  Statute of limitations.

8              MR. BAREFOOT:  -- statute of limitations.

9              THE COURT:  Absolutely.

10             MR. BAREFOOT:  Thank you.  Your Honor, I think

11   where we left off was that you cannot apply a foreign law

12   statute of limitations to engraft it on to a State law claim

13   to render it timely.  I was just about to turn to the

14   application of the actual governing State law limitations

15   period to the aiding and abetting and conspiracy claims.

16             THE COURT:  The basis for applying a Texas

17   statute of limitations is that there is property in Texas?

18             MR. BAREFOOT:  Your Honor, it's not specifically

19   been alleged.  What EMEA has alleged is that the State law,

20   the only State law they specifically reference that could

21   apply to their aiding and abetting and conspiracy claims is

22   alternatively Delaware or Texas.

23             THE COURT:  Okay.

24             MR. BAREFOOT:  I'm not going to speculate as to

25   why that is.  It could be that Nortel did have significant

1   facilities in Richardson, Texas.

2           THE COURT:  Yes.

3           MR. BAREFOOT:  But there's not been any

4   allegations as to any activities taking place in Texas and

5   both -- I think the EMEA debtors and the U.S. debtors have

6   reserved on the actual choice of law in question.

7           THE COURT:  Okay.

8           MR. BAREFOOT:  But importantly, Your Honor, it's

9   a good question because you need not reach whether Delaware

10  or Texas law applies because either the statutes of

11  limitations are the same or even under a longer Texas

12  limitations period that claims are untimely.  Specifically

13  for the State law, transfer pricing aiding and abetting and

14  conspiracy claims, those are untimely in their entirety and

15  for the inter-company loan claims, because those are a

16  discreet series of loan agreements that were extended over

17  time, certain significant portions of those claims are time-

18  barred as well.

19          And just walking through, again pointing to their

20  allegations and how we get there.  The transfer pricing

21  claims arose in 2004 when the MRDA was signed as NNUK

22  alleges.  They also allege that the MRDA provided the

23  contractual basis for this transfer pricing system.  And

24  Delaware law, as well as Texas law, is clear that the claims

25  arose upon their entry into the MRDA.  That's when they

1   became contractually obligated and it's the MRDA that

2   provided the system -- that provided the basis for the

3   transfer pricing system that they now challenge.

4            Marching forward from 2004, the aiding and

5   abetting claims under Delaware or Texas law have a maximum

6   of a four-year statute of limitations.  Delaware law is

7   clear that it's three years.  We cited cases in our brief

8   that Texas law is slightly unclear on what the governing

9   limitations period is but it's at max four years.  And for

10  conspiracy, it's three years under both.

11           THE COURT:  Okay.

12           MR. BAREFOOT:  So marching forward from 2004, for

13  the conspiracy claims, those all became time-barred in 2007,

14  before the debtors' petition date.  And similarly, the

15  aiding and abetting claims, even applying the longest

16  potential State law claim of -- State law limitations period

17  of four years gets you to December of 2008.  Again, before

18  the debtors filed these cases, those claims were untimely

19  and couldn't be revived, either by the tolling period in

20  Section 108 or by any tolling agreement that was entered

21  into between the parties.

22           THE COURT:  So it's not a discovery issue; a

23  discovery at the wrong --

24           MR. BAREFOOT:  Correct.

25           THE COURT:  Is your position?

1          MR. BAREFOOT:  And similarly, the same analysis

2  applies to significant portions of the NNUG inter-company

3  loan claims for aiding and abetting and conspiracy.  The

4  relevant loans were extended all the way back in 2003, 2004,

5  and 2005.  And applying the three-year conspiracy statute of

6  limitations, all of those 2003, 2004, and 2005 allegations

7  are time-barred, as well as for aiding and abetting or

8  applying the longer four-year statute of limitations the

9  loans -- the allegations to the extent they're based on the

10  2003, 2004 loans are also untimely.

11          Your Honor, that leaves the Delaware borrowing

12  statute.  We certainly recognize that this is a developing

13  area of the law where there is somewhat of a division of

14  authority.  And also, of course, recognize that Your Honor

15  has certainly come down on some aspects of the application

16  of the borrowing statute in the *Mervins* decision.  With that

17  said, we would, without taking up too much of the Court's

18  time, like to walk the Court briefly through why we believe

19  the borrowing statute should apply.

20          THE COURT:  All right.

21          MR. BAREFOOT:  The plain text of the borrowing

22  statute provides that for foreign plaintiffs such as EMEA,

23  the shorter of Delaware's limitations period or the

24  governing foreign law should apply in terms of the

25  limitations period.  So if the claim is time-barred under

1  Delaware law, you need not consider the foreign limitations

2  period.  And it's undisputed that Delaware applies a three-

3  year statute of limitations for breach of fiduciary duty,

4  breach of care, conspiracy, and aiding and abetting.

5        Now, EMEA has two main arguments why the Court

6  should vary the plain text of the Delaware borrowing statute

7  in this case.  First, is the internal affairs doctrine.

8  And, Your Honor, in our view, the internal affairs doctrine

9  is a substantive choice of law provisions, whereas statutes

10  of limitations are procedural.  That was held by Judge

11  Farnin in the *Norman v. Elkin* matter, as well as by your

12  colleague, Judge Carey in *Windstar*.  And because the statute

13  of limitations is procedural, there's no basis to vary the

14  borrowing statute of the forum State, Delaware, based on the

15  internal governance of a foreign corporation.

16        But even if Your Honor was to decide that the

17  internal affairs doctrine was a sufficient basis on which to

18  vary the borrowing statute, it wouldn't apply to their

19  claims for conspiracy.  *Mervins* didn't address any

20  conspiracy claims; it only addressed breach of fiduciary

21  duty claims.  And all of the cases that EMEA cites don't

22  actually consider the question of whether conspiracy is

23  governed by the internal affairs doctrine.  We cited

24  authorities in our brief, notably, the Court's decision in

25  *Arsaco* where Courts actually considered that question and

1  concluded that conspiracy claims were not subject to the

2  internal affairs doctrine.   Because unlike a breach of

3  fiduciary duty claim, they involve third parties and other

4  elements that go beyond the internal governance of the

5  corporation such that ordinary choice of law rules,

6  including the Delaware borrowing statute should govern

7  rather than the jurisdiction of information.

8          The second basis on which EMEA seeks to vary the

9  borrowing statute is the bankruptcy context.   Just two

10  points there, Your Honor.   First, there's no sufficient

11  federal interest to vary the general application of the

12  forum States.   Statute of limitations and choice of law

13  rules.   And I think it's important, the 2nd Circuit's

14  observation in *Gaston* and *Snow*, that if Bankruptcy Courts

15  generally began departing from the choice of law rules to

16  the forum, it would amount to federal common law, which the

17  Supreme Court has cautioned against the creation of,

18  especially in circumstances here where the federal interest

19  in uniformity is very attenuated.   But more importantly, I

20  think EMEA has focused on the automatic stay and that it

21  required EMEA to bring its claims here before the Court.

22          First, I'll point to the recent District of

23  Delaware decision in *Medical Mutual*.   There was a claimant

24  who claimed that it was forced to bring its claims in

25  Delaware because of a multi-district litigation class action

1  and a transfer order that required him to bring his claims

2  before the District Court in Delaware.  And the Court there

3  found that irrelevant; whether the plaintiff was forced to

4  bring his claims in Delaware or not, the borrowing statute

5  had no such exception.

6          I think this is also distinguishable, Your Honor,

7  from the factual scenario before the Delaware Supreme Court

8  in *Saudi Industries*, which a lot of the authorities that

9  relied on in excepting plaintiffs from the borrowing

10  statute.  In *Saudi Industries*, the Court found that the

11  plaintiffs had brought its action in Delaware seeking a

12  declaratory judgment that the defendants' counterclaims,

13  which would have been timely under foreign law, were

14  untimely under Delaware law.  So basically, the plaintiffs

15  brought their claims in Delaware and the Court found as much

16  their purpose of depriving the counterclaims -- depriving

17  the defendant of the counterclaims that would have been

18  timely elsewhere.  And it was also noted by the Court that

19  there was no other ties to the Delaware forum, that this had

20  been brought there because in order to take advantage of the

21  Delaware limitations period and the Delaware borrowing

22  statute.

23          Your Honor, there's no suggestion or allegation

24  here that the debtors chose Delaware as the venue for their

25  Chapter 11 cases solely in order to deprive the joint

1   administrators or any other claim -- of a claim that would

2   have been timely.  Delaware was the jurisdiction of the

3   corporation and there are obviously other significant ties

4   to Delaware that really distinguish this case from *Saudi*

5   *Industries* or cases that follow it in varying borrowing

6   statutes.

7            I will yield the podium to Mr. Adler but I just

8   want to point out, and we'll pass slides up to Your Honor at

9   the conclusion of the hearing, that this is the result if

10  you do apply the plain text of the borrowing statute.  It

11  operates to bar all of the foreign law transfer pricing

12  claims, the breach of duty, dishonest assistance, and

13  unlawful means of conspiracy on the same analysis that we

14  went through for the U.S. law claims, as well as additional

15  breach of duty and dishonest assistance claims just as with

16  the aiding and abetting and conspiracy claims as to

17  additional NNUK inter-company loans.  Thank you, Your Honor.

18           THE COURT:  Thank you, Mr. Barefoot.  You do have

19  a little bit of time left if you need it at the end.  Not

20  much.  Mr. Adler, you have a lot of time.

21           MR. ADLER:  Well, I'm not going to use it, Your

22  Honor.  I think we're getting close to the end.  Actually,

23  I'm sorry.  There's one housekeeping matter we ought to take

24  care of.

25           THE COURT:  Sure.

1          MR. ADLER:  We said we were going to hand the

2    deposition transcripts.

3          THE COURT:  Yes.

4          MR. ADLER:  Before I forget, I think we better do

5    that.  May I approach?

6          THE COURT:  Please.  Certainly, Mr. Adler.  Thank

7    you.  Thank you.  And they're probably nicely highlighted.

8          MR. ADLER:  They are nicely highlighted.  Yes,

9    Your Honor.  These are not joint highlights.  They're --

10   each side put its own highlights in on this case so.

11         THE COURT:  I have the Todd deposition here.

12         MR. BAREFOOT:  Your Honor, may I approach?

13         THE COURT:  Please.  Yes, Mr. Barefoot.

14         MR. BAREFOOT:  May we have one also?

15         THE COURT:  Thank you.  Thank you, sir.

16         MR. ADLER:  All right.  So we're on now the

17   doctrine first of in peri delicto.  This has been laid out I

18   think pretty thoroughly in the briefs that we filed but I

19   just want to touch on a few points here.  They're contending

20   that it doesn't -- that it bars the claims for aiding and

21   abetting and conspiracy.  By the way, Texas, it looks like

22   this so we had said well, if you apply a choice of law

23   analysis here, the company really didn't have much activity

24   here in Delaware.  It seems like their main focus of the

25   company's activities was in Texas.  The State law claims we

1  pleaded in the proof of claim would be valid under the law

2  of either of those jurisdictions and so we kind of left it

3  open regarding it the same way in relation to this motion.

4  So I mean neither side has really taken a position.  But it

5  was based on the fact that I believe the company was

6  headquartered in Texas.

7          It was slightly amusing to hear Mr. Barefoot say

8  that applying Texas law would be lowering of standards.  But

9  we won't say anything further about that.

10         THE COURT:  Okay.  There was once a very fine

11 District Court Judge in Delaware and I won't tell you what

12 he had to say about Texas law.

13         MR. ADLER:  Now, they are only applying this --

14 the in peri delicto, the secondary U.S. law claims and

15 secondary liability --

16         THE COURT:  Yes.

17         MR. ADLER:  -- U.S. law claims.  And they've said

18 that the insider exception -- we referred to an exception

19 that's applied where the in peri delicto defense doesn't

20 apply where a company sues its own director for a breach of

21 duty, which is pretty obvious so that that should be an

22 exception.

23         They've raised in their reply the idea that this

24 doctrine, the insider doctrine, doesn't apply in relation to

25 aiding and abetting an insider's breach or conspiracy

1    claims.  We did a little research on that and we did find a

2    Delaware case I'd like to call to Your Honor's attention.

3                THE COURT:  Please.

4                MR. ADLER:  In which the Court did find that

5    these doctrines apply.

6                THE COURT:  Please.  Yes, Mr. Adler.  Certainly.

7    Thank you.  Thank you.

8                MR. ADLER:  That's -- I've just handed up to you

9    the case of *Brown Schools*, 386 Bankruptcy Reporter 437, a

10   2008 District of Delaware case.  And at 55 to 56 of that

11   case, the Court said that it agreed with the trustee that

12   the in peri delicto doctrine is not applicable to the

13   trustee's claims made against Naples, who was a former

14   employee and a director of the parent company because the

15   trustee has alleged that he is a corporate insider.  As a

16   result, there's an ellipsis there, as a result, the Court

17   will deny Naples' motion to dismiss the claims of breach of

18   fiduciary duty, aiding and abetting, breach of fiduciary

19   duty, aiding and abetting, fraudulent transfers, corporate

20   waste, deepening insolvency and civil conspiracy claims.  So

21   the Courts do find that the insider exception applies to the

22   types of secondary claims that we've alleged here.

23                The adverse interest exception also clearly still

24   applies here to the third party claims.  This is a principle

25   that in peri delicto doesn't apply where the agent whose

1   conduct is sought to be attributed to the company acted

2   entirely for his own or another's purpose.  The proofs of

3   claim clearly allege that the relevant actions of NNUK's de

4   jure delictos were wholly contrary to the interest of NNUK

5   and inured to the benefit of the North American entities.

6   This is -- we've cited the right sections.  I won't take you

7   through them but that is all over the proof of claim.

8             The debtor, the U.S. debtor, tries to counter

9   this by pointing out that there's -- they suggest that this

10  exception doesn't apply where the company received some

11  benefit for it.  And that's an argument that's typically

12  made where someone -- an officer of the company has gone out

13  and committed a fraud that brings money into the company.

14  They've gone out and engaged in some kind of improper

15  conduct against a third party that allows the company to

16  engage in a transaction it otherwise would have.  It's not

17  plausible to look at the transactions here and say that they

18  brought some benefit to NNUK.  It's simply not possible for

19  Project Swift, for loans that were not paid back or that

20  were paid back with less than what was borrowed or interest

21  wasn't paid, where companies were sold, businesses were sold

22  and they received less than they were entitled to.  There

23  was no -- it didn't benefit them to sell for less.  If I

24  lend you money and you pay back half of what I lent you, you

25  can't say that that gives me a benefit.  I mean it's just --

1    that's not a plausible argument to make here.  The adverse

2    interest exception is also a highly factual inquiry.  We

3    don't deny that many of these issues are addressed on

4    motions to dismiss but this one, particularly here, is very

5    factual.

6                    There's also a separate doctrine referred to that

7    the defense doesn't apply in actions where an element of the

8    claim is that a controlling shareholder forced the

9    corporation to act for the benefit of the shareholder

10    through domination and control.  That's referred to in our

11    brief at page 83.

12                    There are undoubtedly plenty of cases in which

13    the in peri delicto defense is applied on the basis of the

14    face of complaint, but you can find an equal number of cases

15    where the Courts say that it requires factual determinations

16    and they defer it.  And the Courts do recognize that this

17    doctrine raises particular knotty issues in the bankruptcy

18    context where you have innocent trustees, innocent office

19    holders coming in and bringing claims.  We've referred to

20    the *Hill v. Day* case, *In Re:  Today's Destiny*, a Texas case

21    which reviews the policy issues that come up in that

22    context.

23                    Moving on back to England then, to the doctrine

24    of ex turpi causa.  This is a doctrine over there.  The

25    doctrine has been around for a long time but the application

1  in this type of scenario is relatively new and it comes from

2  a 2009 House of Lords case, which Mr. Barefoot referred to

3  called *Stone and Rolls*, which was really quite a

4  revolutionary case.  It shook the law seat in England up.

5  If you look at the depositions of the two English law

6  experts on this issue, you'll see that there's a

7  considerable debate about what the significance and

8  application is of the *Stone and Rolls* decision.  There are

9  five separate speeches by the Lords in that case.  They all

10 give different rationales and different descriptions of the

11 basis for it and as a result, people debate at length the

12 meaning and how it would apply to situations other than the

13 facts that were presented in *Stone and Rolls*.  It's a

14 decision that's effectively been limited to its facts and

15 the English Courts haven't figured out how it will apply in

16 other scenarios yet.

17         The facts of *Stone and Rolls*, the company in that

18 case was an archetypical one-man company run by Mr. *Stojevic*

19 who was the sole beneficial owner.  He exercised sole

20 control over the company.  It was undisputed that he was the

21 shadow director of the company and that he was the sole mind

22 and will of the company.  This was addressed on a strike-out

23 application, a motion to dismiss, and in that context, it

24 was accepted by the parties that this was a one-man company.

25 The claim in that case was brought by a liquidator against

1   Moore Stevens who had been the auditors of the company.  Mr.

2   Stojevic had committed fraud on the companies' banks by

3   producing false documents, false financial statements to

4   them based on which they issued letters of credit.  He

5   absconded with the money.  The liquidators subsequently sued

6   Moore Stevens for negligent auditing based on their failure

7   to discover the fraud and put an end to it.  House of Lords

8   held that the ex turpi causa doctrine barred the liquidator

9   from recovering from the auditors for a fraud that the

10  company itself had effectively committed against third

11  parties.

12          Now, there are a number of very important

13  distinctions between the facts in *Stone and Rolls* and the

14  facts that are presented here.  First of all, as I've noted,

15  as *Stone and Rolls*, it was undisputed that the company

16  should be considered a one-man company in which Mr.

17  Stojevic's will and mind were effectively identical with

18  that other company.  In a situation like that, it was found

19  to be acceptable, appropriate, to impute his actions, his

20  knowledge, and his actions to the company.

21          Now, the U.S. debtor suggests that you can make

22  the same finding here based only on what's in NNUK's proof

23  of claim.  But you really can't.  I mean as Lord Walker in

24  the *Stone and Rolls* case described a one-man company, it's a

25  company which has no individual concerned in its management

1  and ownership other than those who are or must be taken to

2  be aware of the fraud and breach of duty with which the

3  Court is concerned.  Obviously, we dispute that the Board of

4  -- that you can consider NNUK a one-man company in that

5  sense.  The allegations in the proof of claim, in fact, show

6  that there were multiple influences acting on NNUK,

7  including NNL, NNI, NNUK's own Board of Directors.  Some of

8  the players wore multiple hats.

9            Similarly, far from having a single beneficial

10  owner, the ultimate beneficial owners of NNUK were actually

11  the public shareholders in Canada.  This isn't a case where

12  you have one man owning the whole company.  There are

13  innocent private shareholders at the top of the corporate

14  chain here.

15            Now, we discussed the fact that the key to the

16  application of this doctrine is that the director's

17  knowledge and actions are imputed to the corporate entity.

18  This was -- there was a principle in England, the Hampshire

19  Land Principle, which is essentially similar to the adverse

20  interest exception under U.S. law.  In Hampshire Land, the

21  Court had held that the knowledge and conduct of a director

22  is not imputed to the company where the company itself is

23  the victim of the company's wrongdoing, which is what

24  happened here.  We claim that NNUK itself was the victim of

25  its directors' breaches of duty.

1              *Stone and Rolls* creates an exception to this

2    principle in the case where you have a one-man company but

3    you have to find that it's a one-man company in order to get

4    around the Hampshire Land principle.  It's really the same

5    as the adverse interest exception in U.S. law.

6              Another distinction is that the claims the U.S.

7    debtor is seeking to dismiss here are not being brought

8    against an outside third party, an auditor, for negligence

9    but against a party that is actually alleged to be a

10   director of the company, which breached direct duties to the

11   company.  They're trying to get you to dismiss the de factor

12   director claims based on this defense.

13             Their English law expert, Mr. Todd, admitted that

14   these are material differences that the fact if you're not

15   suing a third party is a material difference.  He said that

16   at page 167 of his deposition.  The fact that the breach of

17   an auditor's duty of care is a distinction from a director's

18   direct breach of duty.  He talked about that at 169 and 170

19   of his deposition.  He also accepted that this defense

20   should only apply where the conduct of the claimant was

21   fraudulent or dishonest.  This is at page 166-167 of his

22   deposition.  We don't assert that NNI acted fraudulently and

23   although we do have a dishonest assistance claim, it's not

24   dishonesty in the subject sense that's meant here in a fraud

25   case.  It's also a material distinction that the underlying

1  wrong here was done to a third party -- in the *Stone and*

2  *Rolls* case; I'm sorry, was done to a third party victim on

3  behalf of the company, as opposed to a wrong done by

4  insiders to the company itself.  Mr. Todd again admitted

5  that this was a material distinction at page 168 of his

6  deposition.

7         And most significantly, Mr. Todd admitted that he

8  was aware of no English case in which the ex turpi causa

9  doctrine has been applied to bar a company from recovering

10  from a director for a breach of duty owed by the director to

11  the company.  This is a relatively new body of law and it's

12  to be expected that the English law, like U.S. law, will not

13  apply the doctrine in such circumstances.  This is a case

14  where the U.S. debtor is asking you to extent English law.

15         It's also a material distinction that NNI -- I'm

16  sorry, NNUK was alleged to be near insolvency or at risk of

17  insolvency at the time of the breaches of duty.  Because of

18  this, the interests of creditors were engaged.  Mr. Todd

19  again admitted that this was a material distinction at page

20  170 of his deposition.

21         That was all I had to say about the Latin portion

22  of the argument.

23         THE COURT:  Okay.

24         MR. ADLER:  Unless Your Honor has any questions

25  about that, I'll go on to the limitations very briefly.

1          THE COURT:  Yes, please.

2          MR. ADLER:  I think this has been set forth very

3   thoroughly actually in the briefs the parties submitted and

4   I would note that they've actually dropped most of the

5   arguments actually that they had made in the original briefs

6   now.  Just a few quick points then.

7          First of all, with respect to the claims based on

8   the MRDA --

9          THE COURT:  Yes.

10          MR. ADLER:  -- we have said that it should be a

11   question of fact when those claims accrued.  I would note

12   from the proof of claim that the MRDA was actually amended

13   in 2006 on the underlying documents, the RPSM.  That's

14   referred to in paragraph 45 -- 31 and 45.  I'm sorry, 31,

15   36-37, and 45 of the proof of claim referred to the

16   amendments to the MRDA and the underlying arrangements that

17   occurred in 2006 and the effect that those had.  So we say

18   the accrual of that cause of action is a question of fact.

19          With regard to the Delaware borrowing statute, I

20   think the law is very clear.  We're obviously making

21   arguments that come from the *Mervins* decision.  Those are

22   set forth and I think Your Honor understands those issues

23   and comes out the way that we would agree with on those.

24          And finally, the remaining point is that there is

25   the principle of equitable tolling.  We've referred Your

1  Honor to the *Marvelle* case.  It's correct that that has been

2  followed in Delaware yet, but we think the principles apply

3  quite clearly here that the statutes of limitation should

4  have been tolled during the period when NNUK, NN Ireland,

5  and NNSA were controlled by the culpable directors, the

6  people who are the target here.  It's not realistic to think

7  that the company would have brought actions for those

8  breaches of duty while those directors were still in control

9  of the company.

10           And I would stop there.  I wanted just a couple

11  minutes for wrapping up.  Maybe -- could I wait and do that

12  after at the end?  Could we each have five minutes to --

13           THE COURT:  Yes.

14           MR. ADLER:  -- wrap up?

15           THE COURT:  I think that's fine.  I know Mr.

16  Barefoot has a little bit of time left so if he -- do you

17  have any rebuttal, Mr. Barefoot?

18           MR. BAREFOOT:  Very briefly, Your Honor.

19           THE COURT:  And then you'll have some time, Mr.

20  Adler, certainly to wrap up.

21           MR. ADLER:  Thank you.

22           MR. BAREFOOT:  Your Honor, I'll just take the

23  three issues and address them each very briefly in turn.  On

24  the in peri delicto doctrine, as I noted, they had alleged

25  in their brief that solely Texas law governed this claim.  I

1  see now Mr. Adler is addressing Delaware law with the *Brown*

2  *Schools* case.  Unfortunately, that case was decided in 2008

3  before the *AIG* case that we cite in our brief in which the

4  Delaware Supreme Court made clear it would not recognize any

5  insider exception beyond suits against the fiduciary itself.

6  So it remains inapplicable to their secondary liability

7  claims.

8          On the adverse interest exception, *AIG* is equally

9  fatal.  Mr. Adler had argued that it's not plausible that

10  these transactions could bring some benefit to the company.

11  But the *AIG* case makes clear that the adverse interest

12  exception applies even where the benefit is only temporary;

13  even if in the long term this was not in the best interest

14  of the corporation.  And remember that *AIG* was actually a

15  conspiracy case where there were fraudulent contracts being

16  entered into.  And the Delaware Supreme Court found it

17  sufficient that in the short term, there was some benefit

18  accruing to the corporation from those contracts.  Here,

19  there was proceeds delivered from the pre-petition asset

20  sales; there was the subsidiaries of the Project Swift

21  entities that were delivered to NNUK.  Even if in the long

22  term, NNUK and the other debtors now argue that those were

23  not in the best interest, they can't say that the

24  corporation's interest was entirely abandoned or that there

25  was no benefit given to the company.

1          On the controlling shareholder point, all of the

2    cases that EMEA cites stand only for the proposition that

3    the controlling shareholder exception applies again to suits

4    against the controlling shareholder himself and our own

5    research hasn't uncovered any cases allowing a further

6    expansion of that exception.  And Mr. Adler is certainly

7    correct that there are numerous cases where Courts have

8    declined to apply in peri delicto in a motion to dismiss.

9    We couldn't agree more but here where the facts are clear

10   from the face of the proof of claim and its implications,

11   there's no reason for the Court not to address that question

12   now.

13          On the *Stone and Rolls* case and the exterpe cowza

14   doctrine, it was undisputed that in *Stone and Rolls* it was a

15   one-man company because the owner of the company was the

16   directing will and mind.  But if you accept all of the

17   allegations again from -- the proofs of claim as true, it's

18   clear here that all of those involved in the management of

19   the company.  Again, we're not admitting those allegations,

20   but accepting them as true for purposes of this analysis,

21   that the controlling shareholder, NNL and all of the de jure

22   directors were aware of and involved in the breaches of duty

23   that they're now alleging.  And while Mr. Adler referred to

24   the beneficial ultimate owners at NNC, that would not only

25   require looking through two levels of the corporation, which

1    *Stone and Rolls* doesn't not suggest and has not been alleged

2    here, but moreover, the purpose of searching for what I'll

3    call -- from borrowing from the in peri delicto line,

4    innocent insider, is someone who would have had an incentive

5    to protect the interests of the corporation and stop the

6    transactions that are now being challenged.  If anything,

7    accepting their allegations as true, all of these

8    transactions were with the ultimate benefit of NNC and its

9    shareholders.

10           Finally, he draws a distinction that -- from

11   *Stone and Rolls* that NNI is not a third party; that NNI is

12   alleged to be a director.  Even if you accept that to be a

13   meaningful distinction from *Stone and Rolls*, Your Honor, it

14   would not undermine the application of the ex turpi causa

15   doctrine to their secondary liability claims, which are pled

16   in the alternative for dishonest assistance and English law,

17   unlawful means, conspiracy against NNI as a third party.

18           And just briefly on the statute of limitations.

19   On the MRDA, Mr. Adler suggested it was a question of fact

20   because the MRDA was amended in 2006.  First of all, there

21   was no response to the extent that these claims turn on the

22   MRDA's execution in 2004 and from the period 2004 to 2006.

23   But beyond that, if EMEA is now suggesting that its

24   secondary liability claims arise from the amendment of the

25   MRDA in 2006, that's not only unclear from the proof of

1  claim, but it raises a much bigger problem and that's that

2  there's absolutely no allegations as to the process by which

3  that amendment occurred or any involvement that NNI had in

4  that process.  All of the allegations, even if you accepted

5  them as true about NNI's involvement relate to 2004 when the

6  MRDA was signed, silent about 2006.

7            And just finally, Your Honor, on equitable

8  tolling --

9            THE COURT:  Yes.

10           MR. BAREFOOT:  -- the only case that they cite

11 makes clear that it doesn't apply and they've given the

12 comprehensive tolling arrangements that are otherwise

13 provided for in Delaware law that no Delaware Court has ever

14 recognized equitable tolling.  Thank you, Your Honor.

15           THE COURT:  Thank you, Mr. Barefoot.  Thank you,

16 sir.  Well, would you like a few minutes just to wrap up,

17 Mr. Zelbo?  I'm not insisting.  I know that Mr. Adler had

18 time and I think he wanted to use that time but I'll leave

19 it up to you.

20           MR. ZELBO:  Your Honor, I think we've pretty much

21 wrapped it up.  I just want to thank the Court for the

22 Court's time today.  I think this hearing today has been

23 very beneficial because it crystallized, I think, what the

24 laws are, right, under English law, French law, and Irish

25 law regarding de facto director, and at least under England

1  and Irish law shadow director, and I think it helped to

2  focus the Court on actually what the pleadings allege

3  because there's a lot of words in the pleadings, but you

4  need to look at what those words say.  And applying the

5  *Twombly* standards and, where applicable, 9(b), I think it's

6  quite clear that they have completely failed to state a

7  claim.  So I thank Your Honor for the time and --

8              THE COURT:  It was time well spent.

9              MR. ZELBO:  -- I'll cede the floor to --

10             THE COURT:  The arguments have been excellent.

11             MR. ZELBO:  I'll cede the floor to Mr. Adler.

12             THE COURT:  Sure.  I would say it's about the

13  densest argument I've ever had.

14             MR. ADLER:  I hope we're not the densest

15  advocates you've ever had, Your Honor.

16             THE COURT:  No.  Certainly not.  Certainly not.

17             MR. ZELBO:  One last thing, Your Honor?

18             THE COURT:  Yes.

19             MR. ZELBO:  We have a copy of the PowerPoint

20  which we'd like to leave with the Court.

21             MR. ADLER:  Your Honor, we object to having that

22  handed up.  It seems like another -- a written brief or

23  submission to us and we would object to that being left with

24  the Court.

25             THE COURT:  I will -- I'll sustain that

1  objection, but I do appreciate it.  I appreciate the offer.

2          MR. ZELBO:  Thank you, Your Honor.

3          THE COURT:  Certainly.

4          MR. ADLER:  Just very briefly.  I started by

5  saying that what this is really about is looking at the

6  proof of claim and seeing whether the joint administrators

7  have alleged a good faith basis for the claims that they are

8  pursuing here and I'm going to return to that.  We took you

9  through that in extreme detail, not even all the detail, but

10 I thank you for your patience in doing that.  But I think

11 that actually, it has to be read that way.

12         THE COURT:  Yes.

13         MR. ADLER:  In order to form a view using the

14 Court's common sense about whether there's a good faith

15 basis for these claims.  In a lot of cases, the U.S. debtor

16 has argued that there is more than one plausible

17 interpretation for fact scenarios that are alleged.  But if

18 there's more than one plausible interpretation, we win.  You

19 only have to find that our interpretation is one of the

20 plausible interpretations.  You only have to find that the

21 scenario we paint is not implausible to sustain the proof of

22 claim under the *Iqbal* and *Twombly* standard.  They're also I

23 think quite clearly asking you to make findings of fact

24 about numerous issues that are disputed.  We understand and

25 know very well that where a defense is made out clearly on

1    the face of a complaint that the Court can rule on that.

2    But again and again, they've been asking you to address some

3    very contested issues about who people were acting for when

4    they undertook various activities, about the idea that NNI

5    was only acting at the behest and on behalf of NNL when it

6    did these things.  They actually came and argued that it was

7    somehow more than an agency relationship.  One plausible

8    interpretation would be that they were acting as an agent

9    for NNI.  That's not pleaded here.  That would be a highly

10   disputed question of fact.

11           So in summary, we think that the claims are more

12   than plausible and we would just encourage the Court and ask

13   the Court to be patient in dealing with the proof of claim

14   and look at the totality of it in reaching its decision

15   here.  And we thank you again for your time.  It was a

16   pleasure to appear before you.

17           THE COURT:  Thank you, Mr. Adler.  It's been a

18   pleasure to have you here.  And I am going to go through

19   your analysis of the proof of claim very carefully and, you

20   know, it can be a little bit sometimes difficult to sort out

21   conclusions -- conclusory allegations versus factual

22   allegations but I think that I do have to do that here quite

23   carefully and I will.  And I know that everyone is waiting

24   for a result and I regret it's going to take a little bit of

25   time because as I said, the -- just the amount of material

1  in the foreign law and the importance of the matter really

2  will, I think, cause me to go a little more slowly than

3  perhaps normal.  But it is a matter that is at the top of my

4  list of importance for certain so you can all have that

5  assurance.  And I thought the arguments were excellent.  The

6  papers were excellent.  And now it's my turn to get back to

7  work.  So I thank you all very much.  It was a pleasure, and

8  I wish you all a good weekend, and a little bit of rest and

9  good dinner, and a few drinks tonight, and with that, we'll

10  stand in recess.

11

12   (Whereupon, at 6:06 p.m., the hearing was adjourned.)

13

14                          *CERTIFICATION*

15            I certify that the foregoing is a correct

16  transcript from the electronic sound recording of the

17  proceedings in the above-entitled matter.

18

19

20                                        18 June 2011
21  Tammy L. Kelly, Transcriber                Date

| Word | Page:Line |
| --- | --- |

**10-minute**(1) 179:20
**10-year**(1) 159:20
**12(b)(6**)(19) 16:16 19:5 19:7 19:12 20:1
20:8 20:13 22:7 33:13 33:25 34:3 34:10
35:2 40:3 119:8 202:7 202:8 203:12 209:9

**502(e)(1)(b**)(1) 171:2
**9(b)'s**(1) 22:12

**a.m**(4) 1:15 6:2 78:9 78:9
**aback**(1) 134:14
**abandoned**(3) 207:4 207:11 234:24
**abbott**(7) 1:26 6:5 6:6 6:7 6:11 6:17 7:13
**abbreviate**(1) 94:2
**abdicate**(3) 8:15 200:3 200:12
**abdicated**(1) 147:25
**abetting**(44) 114:2 158:3 160:20 160:21
161:10 163:12 163:15 163:18 163:22 164:
164:6 164:9 165:14 175:3 177:16 177:19
189:4 189:10 191:1 191:8 199:11 199:14
199:15 204:9 205:7 205:12 205:22 211:24
212:3 212:18 212:24 214:15 214:21 215:1
216:5 216:15 217:3 217:7 218:4 221:16
222:21 223:25 224:18 224:19

**abid**(2) 2:6 70:7
**ability**(1) 8:12
**able**(11) 10:24 32:6 38:3 38:4 59:17
100:14 115:19 151:12 159:16 169:5 193:7

**about**(136) 8:17 9:2 12:2 12:11 17:1
21:21 22:7 23:24 25:24 26:23 38:9 42:21
42:23 44:21 46:4 47:23 49:3 50:5 50:5
52:14 53:20 54:9 57:7 57:8 57:8 60:2
62:11 64:3 64:4 64:7 64:15 66:13 69:11
69:21 76:21 78:2 78:8 79:3 79:14 79:20
80:19 81:17 82:24 83:19 84:5 85:4 87:3
88:15 89:17 93:25 99:4 102:15 106:13
110:16 110:19 116:15 120:1 120:2 122:5
122:11 123:8 124:18 124:24 128:7 128:17
128:21 132:25 133:6 138:12 139:11 140:1
140:9 143:10 144:20 145:1 145:5 145:15
145:17 147:4 147:5 149:1 149:17 149:18
151:8 151:10 151:10 152:12 153:7 156:4
160:5 161:12 163:13 167:8 167:10 170:10
174:9 176:19 180:11 180:18 181:2 181:9
183:16 184:16 184:17 185:24 186:4 186:1
187:8 188:12 189:3 189:5 193:8 194:6
194:16 194:19 195:25 196:7 197:8 205:13
213:9 213:10 214:13 223:9 223:12 227:7
230:18 231:21 231:25 237:5 237:6 238:12
239:5 239:14 239:24 240:3 240:4

**above**(8) 55:22 103:2 108:19 111:8 117:23
118:21 125:23 130:3

**aboveentitled** (1) 241:17
**abroad**(1) 44:9
**absconded**(1) 228:5
**absence**(1) 129:20
**absent**(5) 13:10 62:16 197:12 198:4 201:1
**absolute**(2) 13:25 211:15
**absolutely**(3) 123:2 137:22 157:17 214:9
237:2

**absurd**(1) 149:24
**abused**(1) 36:21
**academic**(3) 175:21 177:2 188:11
**academics**(1) 126:10
**accent**(1) 91:3
**accept**(12) 13:16 35:10 45:17 46:10 54:19
79:1 82:14 92:11 127:7 192:6 200:11
235:16 236:12

**acceptable**(2) 162:11 228:19
**accepted**(4) 154:16 227:24 230:19 237:4
**accepting**(8) 182:23 200:3 203:11 203:15
209:7 209:14 235:20 236:7

**access**(5) 17:2 22:19 22:20 38:10 156:10
**accessory**(1) 187:24

**accidental**(1) 115:7
**accidents**(1) 174:19
**accord**(1) 172:9
**accordance**(9) 11:25 46:7 60:22 61:4
67:16 81:24 82:19 93:8 111:13

**according**(3) 106:5 141:7 151:25
**accordingly**(1) 32:10
**account**(10) 26:19 92:1 94:5 100:11 101:3
161:2 181:1 183:15 193:19 201:15

**accounts**(1) 43:7
**accrual**(1) 232:18
**accrued**(2) 117:2 232:11
**accruing**(1) 234:18
**accurate**(1) 199:5
**accusation**(1) 134:24
**accusee**(1) 135:9
**accustom**(4) 46:7 61:3 61:5 82:1
**accustomed**(1) 11:24 60:22 93:9
**acknowledge**(2) 56:1 160:16
**acknowledgement**(1) 40:8
**act**(26) 11:24 40:18 61:6 62:17 66:18
67:16 72:5 77:7 81:2 81:3 81:24 82:1
82:19 92:9 93:10 111:13 119:16 166:21
167:12 181:25 182:2 185:21 197:14 199:2
199:21 226:9

**acted**(10) 11:20 37:17 46:25 82:19 131:13
148:6 167:5 168:11 225:1 230:22

**acting**(40) 46:7 46:16 46:17 46:19 49:11
50:13 50:17 50:20 51:18 52:16 53:11
56:24 57:1 58:23 59:1 60:13 60:22 61:3
76:23 92:18 104:16 104:21 105:23 117:8
119:22 142:23 145:19 148:15 160:10 167:
168:15 168:22 182:10 189:9 189:22 191:24
198:22 229:6 240:3 240:5 240:8

**action**(14) 21:17 119:7 124:23 173:23
182:14 182:14 182:15 191:12 193:9 201:
205:6 219:25 220:11 232:18

**actions**(35) 25:6 31:18 38:14 55:3 89:18
89:20 106:24 109:6 109:10 110:1 119:14
121:5 125:3 148:16 164:11 167:14 175:4
175:7 180:12 182:9 182:16 182:17 184:4
184:5 187:8 188:17 188:18 200:10 204:14
225:3 226:7 228:19 228:20 229:17 233:7

**active**(1) 49:11
**actively**(4) 110:1 115:10 184:25 211:4
**activities**(10) 81:13 83:6 83:13 90:8 90:9
94:15 182:16 215:4 222:25 240:4

**activity**(4) 28:9 28:10 38:8 222:23
**actor**(1) 160:23
**actors**(1) 36:12
**acts**(10) 71:21 72:4 72:10 75:23 125:2
125:5 126:21 155:8 204:11 205:25

**actual**(14) 8:14 10:2 33:8 48:17 85:24
145:14 152:7 160:1 164:8 175:10 175:11
199:15 214:14 215:6

**actually**(77) 14:25 16:5 28:24 29:5 42:2
42:11 42:12 49:9 68:21 76:18 76:20 79:2
83:25 84:3 85:16 85:17 85:19 87:6 88:15
92:12 103:3 103:20 104:18 114:16 115:12
125:13 126:2 126:6 126:9 126:12 127:13
128:6 130:4 130:6 130:12 130:19 130:25
131:19 132:2 132:18 145:22 145:25 147:2
152:10 158:11 158:17 159:18 161:13
166:10 166:15 172:4 173:5 173:17 176:5
177:10 179:5 180:10 180:18 185:19 186:21
189:16 190:12 194:13 205:8 218:22
218:25 221:22 229:10 230:9 232:3 232:4
232:5 232:12 234:14 238:2 239:11 240:6

**add**(5) 63:11 73:5 155:15 195:2 195:2

**added**(1) 35:15
**addition**(10) 11:2 19:20 34:19 43:21 44:20
126:6 146:12 161:8 165:5 197:15

**additional**(13) 32:5 34:24 38:16 46:24
85:16 117:19 124:5 124:10 195:1 195:2
210:9 221:14 221:17

**address**(11) 29:6 29:7 31:4 129:5 179:1
212:1 212:17 218:19 233:23 235:11 240:2

**addressed**(7) 34:15 87:19 124:4 212:20
218:20 226:3 227:22

**addresses**(2) 84:14 114:25
**addressing**(12) 18:14 31:14 38:19 91:15
98:17 134:4 134:5 192:17 202:24 212:3
212:21 234:1

**adds**(2) 67:15 155:10
**adequate**(2) 137:9 194:24
**adequately**(10) 12:5 14:2 61:10 64:17
84:17 129:16 138:22 146:15 169:9 198:5

**adhered**(1) 23:8
**adieu**(1) 6:17
**adjective**(1) 162:2
**adjourn**(1) 213:14
**adjourned**(1) 241:12
**adler**(138) 2:31 23:12 23:13 23:18 24:7
31:12 31:13 34:6 37:11 38:24 38:25 40:10
45:17 46:9 51:25 69:12 77:21 77:22 77:25
78:2 78:6 78:17 78:20 78:23 80:6 80:13
80:16 80:18 86:22 88:9 88:13 88:17 89:8
89:11 89:14 89:17 90:14 91:6 91:8 97:18
98:12 98:21 98:25 99:1 99:2 100:20 102:
104:14 114:18 123:7 124:13 124:22 128:1
128:16 132:16 136:10 137:11 138:9
138:24 140:9 142:10 143:15 144:17 147:9
148:7 148:22 149:10 149:16 149:18 152:1
154:5 156:8 178:22 178:24 179:6 179:8
179:10 179:13 179:16 179:19 179:22 180:
180:2 180:3 180:9 181:22 183:5 183:14
185:18 186:2 186:5 188:5 190:23 191:1 191:7
191:11 193:14 195:18 195:19 196:9 196:
196:4 198:7 199:18 201:5 202:6 206:10
210:13 221:17 220:21 220:21 221:1 222:2
222:6 222:8 222:16 223:13 223:17 224:4
224:6 224:8 224:24 232:4 232:22 233:20
233:20 233:21 234:1 234:9 235:6 235:23
236:19 237:17 238:11 238:14 238:21 239:
239:13 240:17

**adler's**(1) 49:21
**adler's**(3) 178:23 179:5 179:9
**administered**(1) 1:6
**administration**(2) 129:22 131:24
**administrative**(3) 129:16 130:9 131:12
**administrator's**(11) 10:12 15:1 25:5 27:13
28:3 28:22 29:6 29:21 41:1 110:11 125:20

**administrators**(34) 3:26 7:22 7:24 8:3
8:19 9:22 9:23 10:15 16:21 17:16 30:7
22:16 23:21 25:3 28:1 29:1 29:10 30:11
31:24 38:2 38:11 41:9 43:12 44:15 102:
119:20 123:24 129:2 131:13 180:7 185:3
212:20 221:1 239:6

**administrators'**(1) 195:10
**admissible**(1) 86:11
**admission**(2) 57:22 86:20
**admit**(6) 57:24 83:14 83:15 100:10 121:3
178:12

**admitted**(16) 49:25 83:24 83:25 89:2
89:20 89:21 90:6 97:5 97:8 97:23 149:16
180:17 230:13 231:4 231:7 231:19

**admittedly**(1) 194:2

**admitting**(1) 235:19
**adopt**(1) 172:7
**adopted**(2) 15:8 128:2
**advance**(5) 6:22 34:20 78:12 103:25 107:4
**advani**(1) 3:33
**advantage**(5) 29:17 30:9 43:17 131:19
220:20

**advantageous**(1) 213:7
**adversary**(1) 31:17
**adverse**(11) 207:2 207:3 210:4 210:7
210:23 224:23 226:1 229:19 230:5 234:8
234:11

**advice**(2) 82:25 83:2
**advisors**(2) 106:6 107:14
**advocate**(4) 15:6 125:25 126:5 154:17
**advocates**(1) 238:15
**advocating**(1) 178:14

**affairs**(19) 42:16 79:11 79:17 93:20 94:3
96:23 118:22 140:14 140:17 142:19 142:22
142:24 143:12 213:5 218:7 218:8 218:17
218:23 219:2

**affect**(3) 107:2 113:10 180:9
**affected**(1) 131:3
**affecting**(1) 188:18
**affidavits**(4) 44:3 44:12 80:14
**affiliate**(1) 8:5
**affiliated**(1) 8:7
**affiliates**(3) 10:2 69:7 207:12
**affiliation**(1) 51:11
**affirmative**(5) 25:7 33:4 77:7 113:16 197:8
**affirmed**(3) 10:3 43:18 178:1
**affirms**(1) 142:3
**after**(18) 13:3 15:14 17:6 20:25 36:18
39:23 43:14 48:6 70:2 78:8 120:16 132:17
133:12 133:15 142:1 142:13 147:8 233:12

**afternoon**(6) 49:16 134:2 202:15 202:16
45:6 50:9 51:14 52:20 53:14 55:2 56:22
57:14 58:8 58:20 60:20 64:3 65:19 67:19
68:15 70:6 71:12 71:15 71:18 73:7 73:25
73:25 74:1 74:24 75:4 75:9 76:3 76:21
77:12 78:12 82:23 87:14 94:22 96:20
100:12 105:19 106:3 106:10 107:7 108:12
109:21 109:25 112:3 112:21 113:11 113:15
116:7 116:15 116:18 117:25 118:11
118:22 124:15 125:7 127:11 130:23 133:7
144:20 146:24 147:22 148:4 148:7 148:10
148:12 153:5 162:5 164:13 165:11 165:24
166:4 167:22 168:2 168:3 172:6 172:9
173:12 173:18 174:16 174:22 175:10 176:3
176:17 176:20 176:23 177:1 177:5 177:18
184:12 184:15 184:15 184:15 195:14
215:19 216:17 231:4 231:19 235:3 235:17
235:19 240:2 240:2 240:15

**against**(24) 7:21 7:23 20:16 28:12 38:12
38:15 40:6 59:24 75:23 122:8 127:18
206:14 206:23 206:24 219:17 224:13
225:15 227:25 228:10 230:8 230:9 234:5
235:4 236:17

**agencies**(1) 113:15
**agency**(1) 240:7
**agenda**(1) 6:8
**agent**(6) 52:18 53:11 167:12 167:13
224:25 240:8

**aggregate**(5) 125:22 126:4 126:6 126:10
127:25

**ago**(5) 29:3 29:11 29:11 87:23 146:17

| Word | Page:Line |
|------|-----------|
| **agree**(37) | 26:23 46:9 50:23 64:22 68:25 81:9 81:13 81:12 81:14 82:23 82:24 83:9 88:4 90:21 90:25 91:23 99:19 126:22 127:4 127:20 137:23 138:7 138:16 149:16 158:16 158:20 168:18 169:14 182:23 188:13 189:16 189:18 199:5 199:6 200:14 232:23 235:9 |
| **agreed**(8) | 89:5 89:14 136:2 136:25 166:19 166:20 192:14 224:11 |
| **agreeing**(1) | 134:5 |
| **agreement**(20) | 36:14 59:18 103:25 105:18 106:16 106:23 107:5 110:20 110:21 118:2 138:11 166:3 166:9 166:19 166:21 191:16 192:4 192:6 192:16 216:20 |
| **agreements**(5) | 37:7 59:5 76:25 113:9 215:16 |
| **agrees**(4) | 22:8 158:19 167:19 167:23 |
| **ahead**(6) | 6:12 15:10 15:11 33:12 117:20 143:18 |
| **aiding**(44) | 114:2 158:3 160:19 160:21 161:10 163:12 163:15 163:18 163:21 164:1 164:6 164:9 165:14 175:3 177:16 177:19 189:4 189:10 191:1 191:8 199:11 199:14 199:14 204:9 205:7 205:12 205:22 211:23 212:3 212:18 212:23 214:15 214:21 215:1 216:4 216:15 217:3 217:7 218:4 221:16 222:20 223:25 224:18 224:19 |
| **aig**(5) | 206:20 234:3 234:8 234:11 234:14 |
| **akin**(2) | 5:7 70:7 |
| **alberto**(1) | 3:5 |
| **alcatal**(1) | 194:4 |
| **alcatar**(1) | 169:25 |
| **alcatel**(1) | 60:5 |
| **alerted**(1) | 47:4 |
| **all**(199) | 6:19 6:25 7:4 7:6 8:7 8:10 9:22 10:8 10:9 10:15 12:13 13:20 16:24 17:6 17:7 17:7 17:17 17:19 19:6 21:21 25:9 25:10 29:12 29:22 30:5 30:13 30:15 31:13 31:23 32:19 34:8 35:5 35:9 35:16 36:24 40:1 41:21 42:4 42:9 43:5 43:11 45:20 46:4 48:6 49:16 50:23 58:6 64:15 66:2 68:15 69:13 70:11 70:24 72:17 75:7 75:18 76:21 77:8 77:12 77:20 78:7 78:20 79:1 79:8 80:6 81:7 81:15 82:13 83:20 83:24 85:12 85:17 86:7 86:20 88:9 88:18 90:15 90:16 91:8 91:9 91:10 91:22 91:24 91:25 92:23 93:13 94:4 94:24 95:18 95:24 98:2 98:14 99:2 99:2 102:16 104:9 107:4 107:18 112:7 117:9 118:24 119:13 122:19 122:25 124:11 127:23 130:1 131:10 131:1 132:15 133:1 133:1 133:11 133:18 133:20 133:21 133:23 133:25 134:25 135:2 137:1 140:10 142:4 142:5 142:6 142:12 145:1 146:9 148:2 148:24 149:17 151:6 151:14 152:2 153:7 154:21 154:24 157:3 162:5 168:8 169:14 169:15 171:6 176:2 176:12 176:19 178:10 178:20 179:20 181:23 182:15 182:16 182:22 183:10 185:4 185:1 185:20 187:8 188:7 191:13 192:24 196:3 196:18 197:19 197:20 199:5 199:6 200:24 202:4 202:10 204:24 208:14 209:22 210:2 211:1 213:16 216:13 217:4 217:6 217:20 218:21 221:11 222:16 225:7 227:9 228:14 231:21 232:7 235:1 235:16 235:18 235:21 236:7 236:20 237:4 239:9 241:4 241:7 241:8 |
| **allegation**(91) | 8:16 23:2 40:12 50:12 50:16 52:15 54:10 56:8 56:23 58:22 59:23 60:2 60:9 60:10 60:13 60:14 60:16 60:17 60:23 61:2 61:6 73:13 75:14 75:17 76:16 76:19 76:24 77:1 77:2 90:17 99:5 101:5 101:10 102:9 105:22 106:5 106:11 111:1 112:3 113:4 113:16 116:15 118:15 118:17 128:4 147:13 147:14 149:10 149:12 150:10 150:16 152:7 153:12 160:9 164:14 164:16 164:19 164:20 164:21 164:25 165:16 166:9 166:12 166:18 166:20 167:20 167:21 168:3 168:21 168:24 169:10 169:1 169:22 170:1 170:5 175:5 184:2 184:6 184:10 197:4 198:13 199:9 200:9 201:10 201:12 201:13 201:16 206:10 206:11 220:23 |
| **allegations**(124) | 9:12 9:25 15:22 15:23 17:9 21:10 21:19 22:1 26:8 32:10 32:25 33:9 35:11 36:2 36:9 42:8 44:14 50:18 50:22 50:24 52:20 53:14 53:16 63:17 63:18 67:19 68:15 73:17 73:21 74:25 75:2 75:8 76:7 77:6 80:21 82:3 88:20 90:3 99:14 99:16 99:16 102:10 103:10 103:19 107:3 107:21 109:7 110:8 110:10 111:3 111:6 113:2 113:25 114:21 114:22 117:19 118:13 119:2 119:4 119:13 124:5 124:10 124:11 124:15 124:18 130:14 138:4 138:2 139:7 139:8 139:24 140:3 144:7 144:19 152:9 153:6 155:2 159:6 164:10 164:13 165:12 166:25 167:1 167:9 176:5 176:11 177:13 177:18 187:8 188:9 188:16 188:23 190:16 191:20 192:2 192:14 197:22 199:2 200:4 200:25 201:1 201:3 202:5 203:20 204:13 204:15 204:16 205:6 205:21 207:2 208:25 209:14 215:4 215:20 217:6 217:9 229:5 235:17 235:19 236:7 237:2 237:4 240:21 240:22 |
| **allege**(51) | 8:19 8:20 9:19 13:24 16:7 18:12 33:3 40:2 51:19 55:8 55:9 55:10 57:10 58:24 73:19 75:23 101:9 103:7 106:17 108:4 111:6 111:7 111:18 111:20 113:10 143:25 145:21 148:13 148:16 150:5 150:19 154:25 165:9 169:14 169:21 176:15 176:17 181:20 181:24 185:12 202:3 204:17 207:17 207:20 207:22 208:1 211:5 215:22 225:3 238:2 |
| **alleged**(81) | 9:9 12:14 12:18 13:24 28:9 36:17 40:4 53:18 54:8 62:19 62:23 64:12 64:25 67:18 68:20 72:13 72:20 75:16 76:5 82:11 90:8 94:10 98:10 100:22 100:23 143:20 148:18 153:8 159:2 159:5 160:12 160:23 166:1 166:2 175:2 176:9 180:12 182:17 183:20 183:24 188:25 190:16 190:17 191:17 192:24 197:3 198:5 200:13 201:17 204:21 205:17 205:21 207:19 209:5 209:6 209:15 211:1 211:3 214:19 214:19 215:15 224:22 230:9 231:16 233:24 236:1 236:12 239:7 239:17 |
| **allegedly**(4) | 131:19 131:20 166:16 174:14 |
| **alleges**(2) | 112:16 215:22 |
| **alleging**(17) | 9:16 36:8 38:4 38:13 41:25 51:9 52:1 55:3 77:9 104:20 150:21 159:1 159:12 193:14 207:10 207:15 235:23 |
| **allen**(1) | 3:49 |
| **alley**(1) | 17:13 |
| **allister**(1) | 135:11 |
| **allocate**(2) | 27:3 112:18 |
| **allocated**(1) | 114:5 |
| **allocation**(16) | 17:21 18:2 18:14 20:14 26:23 28:13 28:21 29:12 30:9 33:10 51:11 194:8 194:11 194:14 201:15 201:18 |
| **allocations**(2) | 65:21 194:9 |
| **allow**(6) | 36:14 123:18 183:21 192:22 193:2 213:5 |
| **allowed**(5) | 66:8 112:12 179:18 183:25 195:15 |
| **allowing**(5) | 112:4 112:8 132:2 205:13 |
| **allows**(2) | 195:5 225:15 |
| **alluded**(3) | 79:6 81:23 140:3 |
| **alluding**(1) | 22:25 |
| **allusions**(1) | 200:24 |
| **almost**(4) | 9:12 96:10 143:1 148:25 |
| **alone**(5) | 19:21 19:24 32:21 150:1 208:12 |
| **along**(6) | 19:1 33:5 85:16 91:12 117:2 117:19 |
| **alphastar**(1) | 161:16 |
| **already**(15) | 23:9 28:5 38:5 43:22 54:14 88:5 92:23 99:11 122:3 144:18 164:12 167:17 169:7 170:13 211:16 |
| **also**(111) | 7:5 13:22 18:21 19:17 21:15 22:10 25:20 26:6 27:1 28:13 34:12 35:24 40:14 45:4 45:23 46:22 47:13 50:4 50:15 52:21 53:5 53:13 58:18 59:7 61:1 62:20 67:11 68:6 69:5 72:7 72:25 81:12 83:14 83:14 87:5 89:23 96:3 96:10 97:18 97:23 98:12 99:21 99:22 102:22 103:5 103:12 103:24 104:14 105:16 106:5 106:2 107:11 108:1 108:10 110:11 112:10 114:5 115:17 116:23 121:12 121:22 126:24 127:20 129:20 132:5 134:20 135:4 135:13 136:2 136:6 136:15 140:12 142:20 150:4 151:6 154:1 154:11 163:14 163:18 164:13 164:20 165:17 168:24 172:24 175:6 180:7 182:2 184:14 187:5 188:2 188:5 190:19 192:21 201:24 202:23 206:16 212:6 215:22 217:10 217:14 220:6 220:18 222:14 224:23 226:2 226:6 230:19 230:25 231:15 239:22 |
| **alternative**(6) | 4:48 4:49 189:11 191:18 206:10 236:16 |
| **alternatively**(2) | 205:25 214:22 |
| **alternatives**(1) | 93:13 |
| **although**(16) | 21:20 24:18 25:17 26:3 29:1 30:19 33:21 67:4 84:1 87:13 94:17 102:21 123:10 127:9 173:1 230:23 |
| **always**(5) | 14:15 24:19 24:20 137:7 137:15 |
| **ambiguous**(1) | 32:8 |
| **amend**(3) | 35:5 55:15 195:2 |
| **amended**(4) | 8:10 20:2 232:12 236:20 |
| **amendment**(2) | 236:24 237:3 |
| **amendments**(1) | 232:16 |
| **america**(10) | 9:20 25:10 25:25 26:3 27:25 37:8 40:15 161:21 187:11 190:19 |
| **american**(5) | 38:6 38:7 99:9 194:16 225:5 |
| **american-styl**(1) | 161:24 |
| **amit**(1) | 5:14 |
| **among**(5) | 37:3 114:7 125:21 161:17 194:12 |
| **amongst**(1) | 61:19 |
| **amorphous**(1) | 142:7 |
| **amount**(7) | 32:16 114:7 152:4 172:19 180:19 219:16 240:25 |
| **amounts**(1) | 172:4 |
| **ample**(1) | 37:6 |
| **amusing**(2) | 188:20 223:7 |
| **analogous**(4) | 28:11 122:23 122:4 131:11 |
| **analogy**(1) | 162:13 |
| **analysis**(22) | 51:2 61:13 61:18 72:6 127:22 128:1 129:15 131:23 163:8 207:7 209:6 210:3 210:5 210:8 210:16 210:19 211:20 217:21 221:13 222:23 235:20 240:19 |
| **analyzed**(1) | 188:7 |

| Word | Page:Line |
|------|-----------|

**and**(301) 55:22 55:23 56:1 56:6 56:8 56:21 57:1 57:10 57:13 57:14 57:15 57:16 57:20 57:21 57:25 58:9 58:18 58:22 59:2 59:3 59:12 59:21 59:22 59:23 60:1 60:3 60:4 60:6 60:15 60:21 60:22 60:24 61:15 61:17 61:18 61:19 61:23 62:6 62:12 62:21 63:1 63:9 63:14 63:21 63:25 64:11 64:15 64:22 64:24 64:25 65:5 65:8 65:11 65:16 65:24 66:5 66:13 66:17 66:18 67:3 67:4 67:6 67:6 67:20 68:1 68:2 68:7 68:8 69:6 69:9 69:12 70:7 70:8 70:10 70:17 70:22 70:24 70:25 71:1 71:8 71:11 71:12 71:15 71:18 71:21 71:25 72:7 72:7 72:10 72:13 73:5 73:11 73:18 73:22 73:24 73:25 74:1 74:3 74:6 74:8 74:20 74:23 74:24 75:2 75:4 75:5 75:9 75:10 75:13 75:15 75:15 75:18 75:21 75:23 75:25 76:1 76:5 76:7 76:8 76:9 76:16 77:4 77:8 77:9 77:10 77:14 78:4 78:24 79:18 80:6 80:19 80:20 80:22 81:5 81:8 81:9 81:17 81:21 82:7 82:16 82:17 83:14 83:16 83:19 83:19 84:2 84:14 84:18 84:22 84:25 85:1 85:9 85:24 86:1 86:3 86:10 86:16 86:23 87:2 87:6 87:8 87:9 87:14 87:15 87:20 88:1 88:1 88:5 88:5 88:6 88:18 89:14 90:5 90:15 90:17 90:20 90:20 90:21 90:22 90:25 91:8 91:11 91:15 91:17 91:20 91:21 91:23 92:4 92:9 92:10 92:15 92:16 92:23 93:2 93:3 93:6 93:12 93:13 93:13 93:16 93:19 93:24 94:1 94:9 94:13 94:20 95:6 95:9 95:15 95:19 96:1 96:4 96:7 96:25 97:1 97:8 97:9 97:25 98:3 98:4 98:5 98:6 98:14 99:4 99:5 99:7 99:8 99:9 99:13 99:21 100:2 100:12 101:1 101:11 101:16 101:21 101:25 102:5 102:17 102:18 102:1? 102:20 103:1 103:15 103:16 103:18 103:22 104:1 104:2 104:6 104:6 104:7 104:8 104:11 104:14 104:15 104:21 104:2? 104:25 105:1 105:6 105:9 105:10 105:11 105:15 105:16 105:17 105:17 105:18 105:21 105:21 105:23 105:25 106:4 106:5 106:7 106:12 106:16 106:19 106:21 106:2? 106:24 107:2 107:3 107:6 107:9 107:13 107:16 107:17 107:19 107:20 107:22 108:? 108:5 108:9 108:12 108:13 108:16

**and**(301) 108:19 108:21 108:23 108:24 109:6 109:15 109:18 109:21 109:23 109:2? 110:1 110:3 110:6 110:7 110:11 110:13 110:18 111:1 111:11 111:11 111:16 111:20 111:2? 111:25 112:1 112:6 112:7 112:8 112:12 112:14 112:20 112:22 112:23 112:24 112:25 113:9 113:13 113:14 113:14 113:15 113:1? 113:22 113:22 113:23 113:23 114:9 114:10 114:11 114:15 114:21 114:2? 115:2 115:6 115:8 115:11 115:13 115:18 115:19 115:23 116:3 116:7 116:13 116:21 116:22 116:23 117:7 117:11 117:14 117:1? 117:22 118:2 118:19 118:20 118:22 118:24 119:1 119:2 119:2 119:9 119:8 119:9 119:17 119:17 120:1 120:5 120:8 120:17 121:4 121:13 121:18 121:19 121:22 122:10 122:17 122:19 122:20 123:10 123:16 123:18 123:23 124:16 124:17 124:19 124:19 124:22 125:? 125:16 125:23 126:17 126:17 126:22 126:25 127:13 127:19 128:3 128:7 128:16 129:2 129:3 129:5 129:13 129:14 129:23 129:8 130:3 130:4 130:4 131:5 131:16 131:21 131:24 132:9 132:17 132:2 132:2 133:5 133:6 133:12 133:17 134:11 134:13 135:8 135:15 136:6 136:9 136:11 136:16 136:21 136:23 136:24 137:2 137:6 137:12 138:13 138:16 138:17 138:19 138:22 139:2 139:7 139:25 140:1 140:8 140:19 140:20 141:6 141:11 141:19 141:25 142:5 142:14 143:9 143:9 143:15 143:17 143:17 143:20 143:23 144:1 144:6 144:7 144:24 144:24 145:7 145:8 145:10 145:13 145:13 145:15 145:16 145:19 145:23 145:24 146:? 146:3 146:11 146:14 146:16 146:21 146:24 146:24 147:1 147:5 147:9 147:14 147:16 147:21 148:4 148:7 148:9 148:10 148:11 148:12 148:13 148:22 149:2 149:3 149:7 149:8 149:13 149:16 149:20 149:22 150:14 150:24 150:25 151:3 151:12 152:1 152:13 152:23 153:1 153:22 153:23 153:2 154:1 154:12 154:14 154:22 154:24 155:1 155:8 155:9 155:14 155:16 156:13 157:2 157:24 158:3 158:5 158:6 158:9 158:18 159:5 159:7 159:10 159:19 160:7 160:8 160:10 160:13 160:19 160:20 160:20 160:21 161:6 161:10 161:10 161:20 161:21 161:24 161:24 162:4 162:5 162:7 162:11 162:20 163:12 163:15 163:18 163:20 163:21 163:22 163:25 164:1 164:1 164:6 164:9 164:17 164:18 164:25 165:14 165:15 165:22 165:23

**and**(301) 166:4 166:9 166:10 166:12 166:15 167:6 167:8 167:9 167:12 167:14 167:16 167:22 167:25 167:25 168:1 168:5 168:8 168:12 168:16 168:18 168:23 169:1 169:2 169:7 169:7 169:9 169:13 169:24 170:9 170:10 170:15 170:17 170:17 170:20 170:24 171:18 171:25 172:1 172:4 172:6 172:11 172:17 173:2 173:4 173:10 173:13 173:16 173:18 173:19 173:20 173:22 173:23 174:3 174:5 174:7 174:11 174:11 174:16 174:18 175:3 175:4 175:12 175:14 175:19 175:21 175:22 176:19 176:20 176:24 177:2 177:2 177:7 177:9 177:16 177:16 177:19 177:20 178:2 178:4 178:11 178:14 178:17 179:16 180:5 180:13 180:17 180:22 180:24 181:2 181:5 181:11 181:12 181:18 181:25 182:1 182:2 182:15 182:17 182:22 182:22 182:25 183:6 183:13 183:18 184:9 184:15 184:15 184:20 184:23 184:24 184:25 186:2 186:18 186:25 187:1 187:13 187:15 187:15 187:18 187:21 188:6 188:15 188:18 189:4 189:7 189:8 189:10 189:12 189:13 189:17 189:23 190:2 190:5 190:9 190:10 190:11 190:19 191:1 191:2 191:8 191:9 191:16 191:17 191:21 192:8 192:9 192:13 192:14 192:14 192:19 193:15 193:20 194:6 194:20 195:4 195:5 195:9 195:13 195:14 195:16 196:19 197:3 197:5 197:8 197:11 197:15 197:17 197:19 197:22 198:1 198:2 198:4 198:16 198:24 199:5 199:14 199:16 199:21 200:2 200:7 200:12 200:15 200:17 200:18 200:20 200:21 200:22 201:8 201:10 201:17 201:17 201:20 201:21 201:21 202:4 202:6 202:7 202:18 203:3 203:3 203:7 203:14 203:18 203:23 204:2 204:5 204:7 204:9 204:11 204:14 204:19 204:19 204:19 204:22 205:5 205:7 205:7 205:10 205:12 205:13 205:15 205:19 205:22 205:22 206:4 207:15 207:16 207:17 207:23 208:12 208:13 208:23 208:24 209:7 209:11 210:8 210:12 210:12 210:12 210:22 211:1 211:5 211:8 211:15 211:16 211:17 211:1? 211:19 211:24 211:25 212:3 212:6 212:12 212:18 212:21 212:23 213:4 213:6 213:10 213:15 213:16 214:1 214:15 214:21 214:21 215:4 215:5 215:11 215:13 215:14 215:19 215:20 215:23 216:? 216:4 216:9 216:14 216:15 216:19 217:1 217:3 217:5 217:5 217:6 217:7 217:14 218:2 218:4

**and/or**(7) 9:8 64:6 100:25 101:6 115:5 165:2 175:3
**andrew**(1) 4:32
**angeles**(1) 2:49
**ann**(1) 1:25
**announced**(2) 11:10 11:12
**announcing**(1) 13:16
**annoying**(1) 58:15
**another**(28) 10:24 13:6 15:14 25:12 81:11 84:3 92:21 107:11 113:4 116:10 118:3 118:14 118:17 120:20 123:3 133:13 149:23 173:25 185:22 186:10 187:24 190:12 190:15 204:5 208:18 213:15 230:6 238:22
**another's**(1) 225:2
**answer**(5) 25:13 74:16 79:12 79:18 141:22
**answering**(1) 136:17
**answers**(1) 134:5
**anti-trust**(1) 36:10
**anticipated**(1) 6:4
**anxious**(1) 6:26

**and**(147) 218:4 218:8 218:12 218:21 218:25 219:3 219:12 219:14 219:14 219:20 220:1 220:2 220:15 220:18 220:21 221:3 221:8 221:12 221:15 221:16 221:16 222:7 222:20 222:21 223:2 223:11 223:14 223:17 223:25 224:1 224:10 224:14 224:18 224:19 224:20 225:5 225:11 225:13 225:14 225:17 225:22 225:24 226:10 226:16 226:16 226:19 227:1 227:3 227:7 227:8 227:10 227:11 227:12 227:13 227:14 227:17 227:21 227:22 227:23 228:7 228:13 228:15 228:17 228:20 228:24 229:1 229:2 229:17 229:21 230:1 230:18 230:22 231:1 231:7 231:11 232:3 232:14 232:15 232:16 232:17 232:22 232:23 232:24 233:5 233:10 233:11 233:19 233:28 234:14 234:16 234:22 235:4 235:6 235:10 235:13 235:14 235:15 235:21 235:22 235:23 236:1 236:1 236:5 236:8 236:11 236:13 236:16 236:18 236:22 237:1 237:7 237:11 237:18 237:24 237:25 238:1 238:4 238:5 238:7 238:20 239:6 239:8 239:22 239:24 240:2 240:5 240:6 240:12 240:12 240:14 240:15 240:18 240:19 240:23 240:23 240:24 241:1 241:5 241:6 241:7 241:8 241:8 241:9 241:9

**any**(115) 8:18 8:20 10:17 10:17 11:2 21:14 21:18 21:19 22:21 23:3 24:11 24:14 28:16 31:6 31:7 32:10 32:25 33:3 34:21 35:12 35:13 49:22 50:16 50:19 55:3 55:11 60:15 60:16 60:24 62:19 63:18 67:13 73:6 73:14 75:17 76:17 76:24 76:25 77:1 77:3 77:7 81:3 82:10 86:7 97:14 97:18 100:14 103:7 105:12 106:16 111:3 111:22 123:19 129:8 130:17 132:1 132:9 132:13 137:11 139:6 143:2 149:1 153:9 154:19 154:20 155:8 160:12 163:1 164:11 166:7 166:12 167:21 168:4 170:2 170:14 170:15 170:20 170:22 171:3 173:8 175:14 175:20 175:22 176:6 176:7 176:13 176:17 176:21 177:5 177:6 177:9 177:11 177:11 178:18 181:14 185:21 191:16 195:17 197:8 199:3 201:1 202:4 206:21 215:3 215:4 216:20 218:19 221:1 231:24 234:4 235:5 237:3

**anybody**(4) 60:11 60:12 92:24 159:24
**anyone**(9) 50:17 60:13 70:1 70:1 118:10 122:23 147:13 164:10 164:11
**anything**(30) 8:20 12:16 13:23 16:7 40:4 58:24 59:8 73:23 75:18 78:5 86:16 87:16 101:9 132:4 143:14 148:18 148:25 155:25 156:3 156:7 167:11 169:20 169:23 175:10 176:18 197:19 201:13 202:2 223:9 236:6
**anyway**(1) 34:12 52:3 61:6 62:9 211:11

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

anywhere(3) 40:13 99:11 197:7
apa(2) 107:15 147:17
apart(1) 153:3
apologies(1) 213:24
apologize(5) 71:25 114:15 140:25 160:8 213:21

apparently(3) 119:18 185:21 186:9
appeal(3) 30:3 71:7 127:17
appeals(3) 62:6 63:12 82:8
appear(2) 23:14 240:16
appearances(3) 3:16 4:1 5:1
appeared(1) 84:4
appellate(2) 82:9 122:7
applicable(7) 16:21 18:23 207:19 210:5 210:17 224:12 238:5

application(21) 25:20 26:13 97:21 98:12 107:5 107:15 124:3 127:13 181:6 206:4 208:17 208:25 213:6 214:14 217:15 219:1 226:25 227:8 227:23 229:16 236:14

applications(1) 9:24
applied(13) 20:7 22:6 34:21 36:25 44:16 48:14 49:6 113:19 123:25 208:22 223:19 226:13 231:9

applies(26) 22:5 22:8 22:9 25:21 35:21 66:1 122:18 158:1 158:6 163:14 163:16 163:19 163:22 165:24 186:22 187:18 200:21 200:21 210:10 215:10 217:2 218:2 224:21 224:24 234:12 235:3

apply(71) 16:16 19:5 19:8 19:10 20:13 22:8 22:10 23:6 24:3 25:19 25:22 33:16 33:19 33:20 33:22 33:25 34:1 34:4 34:10 35:2 38:2 39:17 67:22 68:15 68:16 68:18 79:4 79:25 81:16 81:21 83:2 83:19 90:16 94:21 97:22 98:9 121:6 122:19 125:12 127:21 131:4 132:6 141:15 141:18 161:16 170:18 178:6 202:8 207:3 208:5 211:12 214:11 214:21 217:19 217:24 218:18 221:10 222:22 223:20 223:24 224:5 224:2 225:10 226:7 227:12 227:15 230:20 231:13 233:2 235:8 237:11

applying(16) 15:13 15:18 35:24 36:3 44:18 80:6 97:24 98:1 130:24 214:16 216:15 217:5 217:8 223:8 223:13 238:4

appointed(4) 43:15 92:11 123:10 123:12
appointment(1) 142:18
appreciate(3) 7:4 239:1 239:1
appreciated(1) 135:1
approach(10) 24:29 29:22 30:4 31:8 95:2 98:2 128:2 185:9 222:5 222:12

approached(1) 79:14
appropriate(12) 15:3 32:11 40:24 87:24 88:3 88:8 96:1 99:8 121:19 136:16 203:6 228:19

approval(1) 104:3
approve(2) 153:12 153:14
approved(1) 84:2
approximately(1) 118:6
april(2) 115:24 151:19
apt(2) 20:17 178:3
arab(1) 36:18
arbitration(2) 29:24 30:1
archetypical(1) 227:18
arduous(1) 154:5

are(301) 7:20 8:22 9:6 9:7 9:12 9:22 10:7 10:11 10:15 11:13 12:14 12:18 12:21 13:21 15:9 15:17 15:25 17:18 17:20 17:22 18:13 21:5 21:19 22:1 22:2 22:9 22:12 22:24 23:8 25:3 25:5 25:6 25:19 25:20 25:25 27:15 27:20 27:22 27:25 28:3 28:5 30:11 30:15 30:17 31:1 31:5 31:16 31:19 32:7 33:3 34:3 34:12 34:13 34:21 34:24 35:9 35:19 36:8 36:12 36:25 37:2 37:5 37:5 37:21 38:15 39:6 41:1 41:22 42:3 42:8 42:25 43:4 43:5 43:7 44:10 45:23 46:19 46:20 46:20 46:24 48:13 48:15 49:18 51:18 51:22 53:13 53:18 54:2 58:8 58:16 59:6 62:12 63:18 64:21 65:1 65:22 67:5 67:20 68:7 68:24 69:6 71:7 71:8 71:10 71:12 72:15 72:15 73:2 73:17 73:2 74:5 74:25 75:3 75:3 75:8 76:4 76:8 77:9 79:14 80:9 80:14 80:22 81:20 81:25 82:4 85:13 85:15 85:17 86:3 86:9 86:14 86:15 86:23 86:24 88:6 88:20 91:9 91:9 93:9 93:12 93:13 94:1 94:6 94:15 94:19 95:16 96:5 96:17 96:20 97:3 97:14 98:8 100:14 100:17 101:11 102:12 103:18 103:20 105:20 106:19 106:21 107:7 107:21 108:1 109:6 109:8 110:8 110:23 111:21 113:2 114:13 117:5 117:19 118:13 118:25 119:2 119:4 119:4 119:6 119:12 120:1 120:5 120:22 121:1 121:25 122:7 123:11 123:21 124:1 124:5 124:25 125:15 126:1 126:18 126:23 128:8 128:10 128:21 129:17 130:2 130:12 133:2 134:5 136:21 137:15 138:4 138:11 138:24 139:8 139:9 140:10 142:6 142:8 142:18 144:24 147:3 147:17 149:4 149:5 151:16 152:19 153:10 153:11 153:12 154:15 155:8 155:9 157:18 158:4 160:7 161:21 162:24 163:19 164:4 164:5 164:10 164:12 165:11 165:12 165:15 166:22 166:25 167:3 171:1 171:17 171:24 174:17 174:23 175:23 175:24 175:25 176:1 176:8 176:19 176:23 177:18 178:5 180:1 182:17 183:15 183:25 184:5 184:7 185:1 187:23 188:7 189:2 191:12 191:18 192:12 192:19 193:4 193:9 194:3 194:7 194:13 194:16 202:25 203:8 203:9 203:16 204:10 204:15 204:16 205:22 206:9 206:10 206:18 207:15 207:19 208:24 209:6 210:5 210:15 211:19 212:7 213:12 215:11 215:12 215:14 215:15 215:17 217:7 217:10 218:10 221:3 222:8 222:9 223:13 226:3 226:12 227:8 228:12 228:14 229:1 229:12 229:17 230:7 230:14 232:21 233:6 235:7 235:9 236:8 236:15 237:12 237:24 237:9 239:17 239:2 240:11

area(5) 84:18 121:25 153:21 153:22 217:
areas(1) 124:4
aren't(4) 50:24 61:21 68:19 76:18
aren't(2) 156:13 161:7
argue(10) 16:19 32:2 98:6 150:4 175:17 177:11 178:16 179:18 211:11 234:22

argued(8) 29:24 32:5 33:17 183:10 192:21 234:9 239:16 240:6

argues(1) 172:16
arguing(4) 17:9 38:1 97:20 100:17
argument(33) 6:4 6:24 13:20 16:14 16:15 16:17 19:25 22:7 22:11 45:3 62:16 66:3 73:18 86:18 87:25 169:3 169:4 169:7 191:21 192:21 197:7 197:9 197:25 198:2 200:7 202:25 203:8 207:1 210:9 225:11 226:1 231:22 238:13

arguments(18) 6:25 6:26 18:17 78:23 88:11 192:20 194:7 202:19 206:4 206:7 206:16 212:8 212:13 218:5 232:5 232:21 238:10 241:5

arise(4) 65:5 71:10 77:11 236:24
arisen(1) 81:6

arises(3) 90:2 121:14 124:25
arising(1) 170:15
aristeia(1) 5:17
arm's(2) 106:9 113:20
arms(2) 157:24 162:22
arose(2) 215:21 215:25
around(9) 79:13 80:1 115:2 115:24 157:24 162:3 165:8 226:25 230:4

arrangement(3) 53:24 107:4 147:17
arrangements(12) 53:23 103:23 104:4 105:9 111:16 112:6 114:13 143:23 146:6 146:12 232:16 237:12

arsaco(1) 218:25
arsht(1) 1:24
article(7) 154:8 171:17 173:13 173:22 175:6 185:18 196:25

articles(17) 85:14 85:23 85:24 86:8 86:15 86:23 87:5 89:21 89:24 135:14 135:17 135:22 143:10 180:8 180:16 184:8 196:23

articulate(1) 195:10
articulates(1) 72:8
articulating(1) 126:7
ascertained(2) 82:13 129:23
ashcroft(1) 36:23
ashers(1) 135:3
ashley(1) 2:29
ask(11) 30:23 33:19 33:24 69:14 104:15 115:12 136:16 155:22 185:11 190:9 240:1

asked(7) 11:1 73:16 79:23 87:3 134:24 167:11 183:16

asking(8) 10:16 11:13 76:7 104:18 182:11 231:14 239:23 240:2

asks(1) 172:7
aspect(1) 15:16
aspects(4) 10:11 103:12 125:10 217:15
aspersions(1) 199:3
assert(5) 119:19 121:13 140:18 182:8 230:22

asserted(7) 28:11 38:15 114:23 121:10 129:13 171:17 171:18

asserting(1) 37:12
assertion(2) 112:11 119:20
assertions(2) 20:5 21:16
asserts(2) 85:6 123:1
assess(1) 33:11
asset(16) 4:31 4:31 9:10 27:1 51:6 59:25 163:19 168:5 169:15 169:25 170:8 171:19 193:12 194:2 207:14 234:19

assets(15) 17:23 44:17 63:11 95:2 95:12 125:4 125:6 131:1 141:11 144:22 169:20 190:7 192:24 207:24 208:1

assist(2) 65:19 189:9
assistance(22) 152:23 158:1 160:19 160:21 161:15 161:19 162:16 163:11 163:17 165:18 189:6 189:14 189:15 190:24 191:7 195:25 200:14 200:20 221:12 221:15 230:23 236:16

assisted(2) 51:11 65:11
assisting(3) 52:17 52:18 175:4
associates(1) 65:11
association(4) 85:14 85:23 86:23 135:22
assume(4) 92:9 123:14 132:23 186:12
assumed(7) 92:13 95:3 95:10 95:23 95:25 141:12 141:21

assumes(2) 25:11 79:10
assumption(1) 180:19

assurance(1) 241:5
astounded(1) 154:4
atkinson(2) 3:38 3:39
attach(1) 148:19
attaching(1) 85:22
attack(1) 135:24
attacked(1) 135:13
attacks(2) 134:9 134:10
attempt(1) 175:22
attempted(1) 101:17
attendant(1) 81:8
attended(1) 60:9
attention(5) 84:11 84:24 124:8 124:14 124:14

attorney(1) 36:20
attributable(2) 203:17 210:20
attribute(1) 148:16
attributed(3) 200:6 207:24 225:1
attribution(1) 210:19
authorities(17) 50:3 64:22 85:17 86:3 86:19 91:17 104:3 147:19 147:20 175:15 175:20 175:21 177:2 177:2 177:3 218:24 220:8

authority(15) 14:13 84:20 87:7 87:14 104:1 107:18 120:11 120:20 122:7 126:12 126:13 143:12 175:20 196:25 217:14

authorize(1) 54:11
authors(2) 174:21 174:23
automatic(1) 219:20
automatically(2) 22:5 34:4 39:23
autumn(1) 28:25
available(4) 26:12 27:22 30:13 116:13
ave(1) 3:6
avenue(2) 3:12 5:13
avoid(6) 15:17 21:16 194:22 206:3 207:2 208:7

avoiding(1) 208:8
aware(17) 7:18 11:2 57:2 73:2 97:14 97:18 109:24 117:16 121:21 164:23 176:16 194:20 204:2 211:4 229:2 231:8 235:22

awareness(3) 107:1 118:24 153:8
away(8) 26:2 41:9 113:23 114:1 183:6 187:10 187:15 192:25

awhile(2) 56:10 87:23
back(56) 13:12 32:1 61:14 61:15 77:14 85:19 132:16 158:19 159:11 159:20 167:6 168:9 171:4 171:9 173:8 196:24 200:18 207:6 212:16 217:4 225:19 225:20 225:24 226:23 241:6

backed(2) 64:10 64:11
background(4) 70:16 102:2 126:1 203:19
backwards(2) 21:1 160:8
bad(5) 26:17 113:10 129:1 131:16 131:17
badge(2) 162:19 163:9
badges(1) 162:14
badly(1) 36:23
balance(7) 58:2 63:9 63:10 63:13 100:3 100:17 115:20

balances(2) 117:1 151:13
balancing(1) 209:3
ball(1) 33:5
bank(3) 4:27 4:27 193:19
banking(1) 42:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **bankruptcy**(23) 1:1 1:20 19:5 19:10 19:11 20:8 31:24 32:3 34:7 34:19 37:22 39:22 39:22 44:8 64:9 195:5 195:14 206:17 206:19 219:9 219:14 224:9 226:17 | | **because**(114) 6:24 7:11 10:23 12:8 13:9 13:22 14:17 16:19 19:17 19:19 33:5 38:2 42:13 45:18 47:3 47:23 48:11 49:15 49:18 49:21 50:8 57:9 58:21 59:4 59:7 59:8 60:25 62:15 64:4 65:21 66:9 66:22 68:9 74:17 74:18 74:25 80:22 86:9 96:11 98:2 120:15 123:3 128:2 132:1 134:25 135:14 135:24 135:25 138:12 140:4 144:1 144:8 144:14 144:16 146:20 148:2 150:10 151:2 154:6 155:2 155:13 157:11 158:12 159:8 159:12 159:13 160:7 161:10 161:23 163:1 163:19 163:24 165:10 165:15 165:15 166:25 167:7 168:13 169:4 169:8 175:17 177:12 178:25 180:10 181:12 181:13 183:1 186:23 188:21 194:9 195:12 196:20 198:3 198:10 198:13 206:23 207:7 207:19 208:7 208:13 215:9 215:10 215:15 218:12 219:2 219:25 220:20 224:14 231:17 235:15 236:20 237:23 238:3 240:25 | | **believe**(17) 17:19 23:5 23:6 30:4 37:16 40:11 85:19 87:6 89:15 141:18 163:14 163:22 192:5 195:16 201:6 217:18 223:5 |  | **bon**(1) 70:8 **bond**(1) 125:13 **bondholder**(1) 2:45 **books**(2) 38:3 38:7 **borrowed**(1) 225:20 **borrowing**(18) 158:7 212:4 217:11 217:16 217:19 217:21 218:6 218:14 218:18 219:6 219:9 220:4 220:9 220:21 221:5 221:10 232:19 236:3 |
|  |  |  |  | **believed**(2) 60:13 194:17 **believes**(2) 140:7 186:25 **believing**(1) 37:4 **belmont**(1) 211:6 **belong**(1) 27:24 **belonged**(1) 193:15 **below**(3) 55:22 103:24 111:9 **beneficial**(8) 50:18 193:19 193:25 227:19 229:9 229:10 235:24 237:23 |  | **both**(23) 8:3 10:5 15:23 19:1 75:15 86:9 104:6 105:23 108:24 112:20 127:3 127:7 158:16 160:20 165:25 167:18 177:2 187:20 204:5 205:15 211:25 215:5 216:10 **bottom**(2) 107:11 136:19 **bound**(1) 14:14 **boundaries**(1) 79:23 **box**(3) 131:8 131:9 184:3 **brand**(1) 197:9 **brandywine**(1) 2:23 |
| **banks**(1) 228:2 **bar**(9) 17:15 28:25 39:11 131:4 134:11 194:22 206:13 221:11 231:9 |  |  |  | **beneficiaries**(1) 190:7 **beneficiary**(6) 26:4 102:22 115:16 118:8 151:5 190:20 | | **breach**(47) 10:10 12:7 38:13 38:19 45:3 45:6 45:12 62:17 62:20 63:1 68:7 69:8 78:21 80:19 100:15 160:22 161:2 175:7 176:6 176:17 181:19 197:12 197:13 197:17 198:3 205:19 206:14 210:11 210:12 210:12 210:17 210:18 211:5 218:3 218:4 218:20 219:2 221:12 221:15 223:20 223:25 224:17 224:18 229:2 230:16 230:18 231:10 |
| **barclays**(1) 3:18 **barclay's**(1) 3:18 |  |  |  | **benefit**(36) 108:23 109:2 109:6 112:19 112:24 115:25 116:18 116:19 118:3 118:11 119:24 150:3 150:25 151:1 151:7 151:10 160:10 168:12 168:16 168:22 168:25 175:14 197:22 207:5 207:12 225:5 225:11 225:18 225:23 225:25 226:9 234:10 234:1 234:17 234:25 236:8 | | **breached**(10) 112:2 112:10 181:24 185:7 185:12 204:23 205:16 209:11 209:18 230:10 |
| **barefoot(5)** 1:36 6:13 59:19 157:9 158:9 163:25 177:22 178:19 178:25 202:13 202:14 202:16 202:18 202:20 202:23 203: 203:14 203:23 204:1 205:5 209:13 209:18 209:21 210:3 210:22 212:12 212:16 213:1 213:18 213:25 214:1 214:3 214:6 214:8 214:10 214:18 214:24 215:3 215:8 216:12 216:24 217:1 217:21 221:18 222:12 222:1 222:14 223:7 227:2 233:16 233:17 233:18 233:22 237:10 237:15 |  |  |  | **benefited**(3) 8:19 9:17 151:6 **benefits**(2) 149:18 207:8 **benefitted**(9) 26:4 102:23 103:7 109:11 115:17 116:4 117:11 117:17 119:17 **benefitting**(2) 114:12 114:13 **bermuda**(1) 161:13 | | **breaches**(8) 68:25 182:9 182:22 205:8 229:25 231:17 233:8 235:22 |
| **barefoot's**(1) 98:22 **barred**(3) 163:25 215:18 228:8 **barrister**(7) 84:3 134:12 134:17 134:19 134:19 135:8 135:11 |  | **become**(8) 15:14 40:15 83:1 141:23 143:8 146:8 173:2 174:14 | | **best**(3) 8:21 9:3 15:4 17:6 17:8 22:21 27:17 29:22 30:4 30:15 52:17 79:19 101: 113:5 130:15 145:6 157:23 162:13 182:1 182:3 198:25 234:13 234:23 | | **break**(11) 69:14 69:25 70:2 70:2 77:23 78:1 78:5 179:6 179:7 179:8 179:11 |
| **bars**(4) 161:1 161:10 203:4 222:20 **barviari**(1) 108:13 **base**(3) 59:24 99:9 205:14 **based**(26) 8:11 9:3 25:4 25:6 32:15 43:13 45:6 95:15 113:13 131:14 146:24 169:15 189:22 204:10 205:23 208:10 209:6 209: 217:9 218:14 223:5 228:4 228:6 228:22 230:12 232:7 |  | **becomes**(2) 146:6 205:6 **becoming**(1) 118:17 **bed**(1) 178:11 **beekenkamp**(1) 3:43 **been**(95) 13:12 15:8 16:21 17:12 22:18 26:11 27:4 27:11 27:21 28:7 29:3 29:3 36:21 38:3 38:15 49:7 49:8 54:25 68:3 79:21 79:23 80:6 82:5 88:5 88:25 90:11 93:25 94:1 96:6 97:19 98:3 100:16 103:6 105:1 105:21 106:8 116:2 117:16 118:11 119:8 121:21 123:13 124:4 126:17 126:20 126:23 127:1 127:6 127:10 127:15 127:19 130:1 132:9 134:3 134:4 135:25 143:25 144:18 146:7 147:8 148:10 165:10 166:4 167:22 168:1 168:20 169:1 173:2 180:25 186:7 194:19 195:6 195:9 195:19 202:24 207:4 214:19 215:3 220:13 220:17 220:20 221:2 222:17 226:25 227:14 228:1 231:9 232:3 233:1 233:4 236:1 237:22 238:10 240:2 240:17 | | **bet**(2) 31:12 128:12 **better**(8) 22:21 33:5 33:7 38:4 166:23 172:17 208:20 222:4 **between**(36) 9:7 13:10 24:13 27:18 27:19 37:8 42:18 48:1 58:9 64:23 69:6 71:19 71:24 75:10 76:3 77:9 93:2 93:6 94:6 108:5 121:14 121:18 121:22 122:10 123:2 125:19 150:20 160:12 166:12 172:1 187:22 191:16 201:21 208:9 216:21 228:1 **beyond**(7) 10:16 15:21 39:6 188:10 219:4 234:5 236:23 | | **bremond**(22) 72:1 75:18 125:24 126:13 126:24 127:18 153:16 153:19 153:22 154:22 155:1 155:12 172:5 174:10 174:16 174:22 175:8 175:23 177:1 186:11 187:16 199:15 **bremond's**(3) 71:4 72:6 128:1 **bremond's**(2) 173:14 187:1 **brent**(1) 3:43 **brian**(1) 3:11 **brief**(25) 20:6 20:23 20:24 37:24 42:1 45:22 46:3 46:12 55:13 55:15 55:15 75:25 96:8 130:10 130:12 139:3 163:5 177:24 212:14 216:7 218:24 226:11 233:25 234:3 238:22 |
| **bases**(1) 203:8 **basic**(16) 15:17 16:15 16:17 18:4 20:20 23:5 23:7 25:24 41:12 122:22 123:22 166:23 170:9 191:14 209:8 210:19 |  |  |  |  |  | **briefing**(6) 57:18 110:12 149:8 211:7 211:11 212:20 |
| **basically**(8) 12:14 46:24 48:23 81:3 134:15 141:22 167:11 220:14 |  |  |  |  |  | **briefly**(9) 39:9 209:25 213:14 217:18 231:25 233:18 233:23 236:18 239:4 |
| **basing**(1) 184:6 **basis**(42) 23:23 27:13 28:2 28:21 31:21 35:1 36:19 36:22 37:4 37:12 49:9 51:21 64:9 96:2 98:15 103:2 103:11 107:25 111:5 117:1 129:23 143:2 144:1 170:20 171:17 178:11 182:12 185:20 193:1 194:2 206:1 213:2 214:16 215:23 216:2 218:13 218:17 219:8 226:13 227:11 239:7 239:15 |  | **before**(45) 1:19 23:14 28:7 41:14 42:12 54:15 63:2 64:9 66:2 70:14 73:12 74:24 78:24 79:6 81:23 83:18 87:25 99:3 104:8 110:19 111:2 129:11 134:24 135:18 142:13 152:2 155:22 169:1 177:21 179:18 180:8 181:3 189:20 191:22 195:23 196:24 208:5 216:14 216:17 219:21 220:2 220:7 222:4 234:3 240:16 | | **big**(4) 42:13 123:16 126:2 193:19 **bigger**(1) 237:1 **biggest**(2) 24:16 194:5 **billion**(4) 17:22 59:24 101:15 149:25 **billions**(2) 18:6 149:22 **binding**(4) 30:2 70:21 71:3 90:15 **bit**(11) 88:14 119:25 152:9 153:7 158:18 192:3 221:19 233:16 240:20 240:24 241:8 **blaming**(2) 16:11 16:11 **blauner**(1) 4:5 **blind**(1) 17:13 **blindly**(1) 14:10 **blob**(1) 142:7 **bloom**(1) 43:16 **bloom's**(1) 43:19 **board**(34) 8:13 8:14 17:5 48:25 49:11 54:10 57:21 57:21 57:23 59:10 59:12 60:10 60:11 60:22 60:14 62:17 67:16 93:24 94:16 96:9 110:17 110:24 148:14 148:15 148:20 149:11 149:12 149:13 149:14 149:15 166:13 197:14 229:3 229:7 **boardroom**(1) 67:18 **boards**(3) 57:18 110:13 149:8 **bodies**(1) 67:6 **body**(1) 231:11 **bold**(1) 57:16 | | **briefs**(10) 8:6 8:24 43:19 48:7 138:18 173:1 208:12 222:18 232:3 232:5 **brilliantly**(1) 7:12 **bring**(4) 42:17 84:10 164:18 186:4 206:4 219:21 219:24 220:1 220:4 234:10 **bringing**(3) 41:1 205:13 226:19 **brings**(3) 59:3 59:6 225:13 **british**(1) 63:14 **broad**(4) 27:10 94:20 109:11 125:12 **broader**(4) 29:18 29:19 85:8 130:13 **broadly**(1) 83:15 **broke**(2) 8:24 113:6 **bromley's**(1) 65:17 **brought**(16) 7:19 7:22 7:24 8:3 8:7 85:16 204:8 206:22 213:1 220:11 220:15 220:20 225:18 227:25 230:7 233:7 |
| **battery**(1) 2:32 **bayard**(1) 3:4 **bear**(4) 44:7 49:14 131:7 204:6 **bearing**(1) 117:1 **bears**(1) 205:24 **became**(7) 24:20 87:17 87:22 87:22 144:24 216:1 216:13 |  | **beg**(3) 84:12 84:13 105:5 **began**(1) 219:15 **begin**(2) 32:9 211:23 **beginning**(1) 101:12 **behalf**(34) 6:7 7:22 7:24 8:4 8:7 16:9 16:9 50:17 50:20 52:16 53:18 54:19 154: 59:12 59:20 60:15 70:7 76:24 76:25 82:1 104:16 104:21 110:21 110:14 119:22 145:19 148:6 164:11 164:11 198:20 198:2 201:2 231:3 240:5 | | | | **brown**(4) 4:9 87:10 224:9 234:1 |
|  |  | **behaving**(2) 36:12 36:13 **behest**(3) 119:14 119:24 240:5 **behind**(3) 27:21 57:12 110:3 **being**(42) 9:7 17:24 26:24 30:12 30:18 44:10 71:3 73:16 75:16 86:19 89:17 104: 105:4 105:4 105:5 105:6 105:14 106:3 110:14 112:21 112:23 114:14 115:17 117: 117:6 118:17 123:12 144:22 144:23 146:12 151:11 164:23 166:13 167:11 172:21 192:6 197:20 214:2 230:7 234:1 236:6 238:23 |  | | | |
|  |  | **belabor**(3) 74:25 107:20 184:21 **belied**(1) 44:1 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**brunei**(8) 162:4 189:16 189:17 189:23 189:23 190:2 200:15 200:15

**bryant**(1) 2:8
**buell**(1) 1:35
**building**(1) 2:23
**bulk**(1) 26:25
**bunch**(2) 37:23 193:22
**burden**(5) 33:1 181:16 182:18 182:19
**burdens**(1) 20:16
**business**(20) 18:14 24:16 24:21 24:24 25:9 25:12 41:12 60:3 60:6 79:11 79:17 114:9 129:25 169:22 170:3 180:21 184:16 202:1 202:2 202:5

**businesses**(4) 94:19 193:15 194:9 225:21
**but**(268) 6:24 9:13 11:4 11:6 12:2 12:7 12:19 13:25 14:14 15:9 15:13 16:11 16:22 17:13 17:18 20:7 21:14 22:10 22:12 23:20 24:11 27:16 28:16 32:1 33:12 33:18 34:3 34:12 34:25 35:22 37:14 38:5 39:9 42:1 42:3 42:21 44:2 46:7 46:21 47:24 48:15 48:22 49:10 49:22 50:15 51:15 52:3 52:7 53:5 54:7 55:4 55:15 56:2 56:5 56:9 60:5 61:7 63:20 64:7 67:11 68:6 68:10 68:13 68:13 68:20 68:22 72:21 72:23 73:9 73:12 74:1 74:10 74:15 76:3 77:17 78:15 79:3 79:15 80:1 80:9 83:12 84:24 86:14 87:17 87:22 88:11 89:23 90:23 91:12 93:1 93:14 96:17 97:4 98:7 99:12 100:2 101:4 101:8 107:20 109:12 110:23 114:19 118:19 119:5 119:6 119:19 120:7 120:21 121:24 122:3 122:8 123:12 123:22 124:7 124:13 124:14 125:15 126:2 127:3 127:17 128:19 130:19 133:3 133:7 133:8 134:5 134:23 137:18 138:3 138:17 142:2 142:5 142:9 142:12 142:17 143:19 143:24 144:3 144:8 144:16 144:18 145:22 145:25 147:2 147:3 147:6 148:2 148:18 148:19 148:25 149:9 150:19 151:4 151:14 151:16 152:10 152:20 153:7 153:18 153:25 156:7 156:19 157:23 159:1 159:12 160:3 160:9 160:16 161:1 161:14 162:6 163:1 163:5 163:22 163:25 164:4 164:15 164:24 165:11 165:17 167:18 170:6 172:9 172:16 172:24 174:17 175:18 176:16 176:23 177:19 177:19 180:5 183:7 183:22 184:14 184:21 185:4 186:10 186:1 188:2 188:5 189:9 191:4 191:19 192:14 193:9 195:1 196:8 196:14 196:16 196:16 197:10 198:9 198:25 199:24 200:19 204:1 206:5 206:7 206:17 207:3 207:21 207:25 208:6 208:20 210:8 210:15 211:4 211:13 213:1 213:5 213:16 213:19 213:21 213:24 215:3 215:8 216:9 218:16 219:19 221:7 222:18 223:4 223:8 225:7 226:4 226:14 226:25 228:23 230:2 230:9 233:2 234:11 235:9 235:16 235:20 236:2 236:23 237:1 237:18 238:3 239:1 239:9 239:10 239:17 240:2 240:22 241:3

**but/for**(4) 177:4 188:13 188:22 189:1
**butt**(2) 4:23 4:24
**cadbury**(1) 94:18
**call**(13) 6:9 18:16 47:4 47:8 78:13 78:16 126:4 137:5 172:13 181:7 203:24 224:2 236:3
**called**(9) 9:18 25:13 32:24 48:25 62:7 81:5 124:9 178:5 227:3

**calling**(1) 174:7
**calls**(1) 162:18
**came**(6) 106:12 110:4 134:23 181:2 201:14 240:6

**can**(100) 7:4 12:6 14:1 14:7 17:6 17:8 18:13 18:25 22:21 27:17 28:8 34:25 36:1 43:20 44:2 45:25 46:2 54:7 60:19 60:24 62:19 64:24 66:9 66:17 66:20 67:11 69:1 70:8 73:4 73:18 81:11 85:3 85:6 85:7 88:20 91:24 99:25 101:7 121:3 123:2 127:4 127:18 129:23 130:7 130:13 135:8 135:11 135:24 136:24 137:1 137:20 138:2 139:24 140:24 143:3 143:9 143:15 143:1 148:25 149:20 149:23 151:23 152:20 152:21 154:1 154:1 154:2 159:22 162:11 162:19 163:2 168:9 170:12 173:7 173:8 174:12 175:18 177:10 181:18 183:2 188:13 191:15 197:15 197:17 198:10 199:5 199:24 207:23 209:5 209:13 212:1 213:2 213:16 226:14 228:21 229:4 240:1 240:20 241:4

**can't**(29) 11:5 11:6 13:8 14:16 14:18 34:15 36:1 52:20 16:5 43:13 44:13 53:22 55:15 63:4 66:7 66:9 66:10 66:23 66:24 67:1 68:10 68:12 68:13 68:18 75:20 78:1 104:16 119:19 131:17

**canada**(41) 9:19 16:9 16:11 16:11 16:13 24:18 24:19 29:5 37:8 37:8 40:14 50:15 51:15 53:3 53:7 56:12 56:17 59:21 59:25 99:8 114:25 115:3 115:16 116:5 148:4 149:25 150:20 151:5 151:14 159:23 159:25 167:8 167:12 167:20 169:5 169:5 197:20 198:16 229:11

**canadian**(37) 9:7 13:23 16:4 24:13 24:19 27:6 27:12 28:8 28:10 28:12 29:3 34:15 51:12 51:22 53:11 54:16 56:13 76:6 103:11 103:13 104:1 104:6 105:1 105:6 108:6 108:18 108:24 112:17 112:19 112:2 113:14 113:15 147:6 147:23 182:10 197:20 201:19

**canadian's**(1) 28:19
**canadian**(1) 11:2
**candidly**(1) 1:8
**cannot**(8) 8:19 18:3 32:8 53:11 66:16 74:3 201:22 214:11

**can't**(15) 150:22 156:21 160:4 167:13 170:5 176:14 183:2 186:8 195:10 195:12 200:18 201:18 225:25 228:23 234:23

**capabilities**(1) 39:6
**capable**(1) 123:11
**capacity**(9) 56:24 57:1 58:24 74:14 74:15 76:23 83:1 94:12 206:23

**capital**(9) 3:18 3:18 3:22 4:49 4:49 5:17 5:45 62:23

**care**(26) 13:8 13:9 13:10 40:22 64:21 64:23 64:25 65:4 68:17 68:19 68:25 69:6 81:17 120:10 121:11 121:13 121:14 121:2 132:14 204:19 205:19 210:12 210:18 218:4 221:24 230:17

**careful**(1) 199:3
**carefully**(3) 6:25 240:19 240:23
**carey**(1) 218:12
**carr**(4) 52:25 56:22 56:22 109:24
**carry**(1) 33:1 56:6
**carrying**(1) 61:14
**carval**(1) 3:38

**case**(166) 1:5 11:2 12:12 15:25 18:12 21:20 27:17 29:5 32:11 35:5 35:22 36:7 36:9 44:7 44:17 44:23 46:23 47:16 48:3 48:4 48:5 48:8 49:16 50:2 61:11 61:12 61:13 61:23 62:10 64:19 66:5 67:14 67:14 67:24 68:21 68:21 69:2 69:4 69:4 71:1 72:7 72:25 73:1 73:2 73:7 74:3 75:23 76:3 82:7 82:8 84:9 84:11 84:12 84:12 84:18 87:16 90:11 90:12 91:18 91:18 91:20 91:22 94:8 95:7 95:8 95:13 96:14 96:14 97:14 97:18 99:20 99:20 99:23 100:4 100:5 106:17 112:21 119:16 120:20 120:20 120:21 121:1 121:21 122:20 123:2 127:9 127:13 127:14 130:4 131:3 131:6 131:7 131:8 132:7 139:1 140:11 141:15 142:20 152:14 158:10 158:12 158:23 159:1 161:1 161:15 161:17 162:3 163:20 164:7 165:13 166:1 172:10 174:13 174:17 177:2 177:9 177:24 183:7 186:22 187:16 189:17 189:24 189:24 190:2 190:8 190:12 191:22 192:12 205:15 206:20 208:16 210:24 211:6 211:7 211:8 211:18 218:7 221:4 222:10 224:2 224:10 224:11 226:20 226:20 227:7 227:4 227:9 227:18 227:25 228:24 229:11 230:2 230:25 231:2 231:8 231:13 233:1 234:2 234:2 234:3 234:11 234:15 235:13 237:10

**cases**(52) 12:13 21:9 25:20 33:21 35:4 35:9 36:25 37:24 48:13 49:17 67:8 72:15 72:18 72:23 82:6 84:9 90:16 91:1 93:13 100:5 123:7 124:2 131:15 141:24 149:2 149:2 149:5 154:11 159:9 173:4 175:12 175:23 175:24 177:6 183:11 183:15 184:1 197:17 199:23 206:11 212:10 216:7 216:18 218:21 220:25 221:5 226:12 226:1 235:2 235:5 235:7 239:15

**cash**(55) 9:18 9:20 26:2 40:14 40:15 56:18 63:9 63:9 100:3 100:17 102:17 102:25 108:21 114:25 115:3 115:5 115:6 115:7 115:13 115:16 115:17 115:19 116:2 116:2 116:4 116:8 117:3 117:6 117:11 118:7 118:8 118:9 118:10 149:25 150:6 150:24 151:5 151:6 151:8 151:8 151:11 151:12 151:20 151:21 159:16 160:5 165:7 167:20 167:21 168:6 169:4 187:10 197:20 201:22 202:4

**cassation**(2) 71:6 125:14
**cast**(1) 199:3
**catch**(1) 177:15
**categories**(2) 68:8 86:7
**category**(2) 9:10 63:22
**catherine**(4) 148:10 198:12 198:19 198:21
**causa**(11) 203:3 204:2 209:25 210:5 210:10 211:3 211:14 226:24 228:8 231:8 236:14
**causal**(2) 160:11 171:25
**causally**(1) 168:25
**causation**(10) 176:22 177:3 188:11 188:12 188:13 188:22 189:1 199:18 199:22 200:9

**cause**(13) 21:17 110:24 124:23 175:7 188:15 189:9 193:8 199:23 199:24 200:1 200:13 232:18 241:2

**caused**(11) 8:14 26:14 105:5 105:6 173:24 174:1 177:9 187:23 200:2 200:10 205:17

**causes**(9) 119:7 146:7 172:13 185:22 188:14 188:16 191:12 199:24 205:6

**causing**(2) 111:13 112:4
**cautioned**(1) 219:17
**cede**(3) 202:12 238:9 238:11
**center**(5) 24:17 40:11 52:1 99:12 129:11
**centered**(1) 71:15
**central**(4) 41:18 41:19 44:5 52:22
**centralized**(2) 51:21 76:5

**certain**(19) 46:23 48:11 51:9 76:1 76:3 83:11 102:23 103:12 113:21 123:9 160:17 176:16 183:25 203:4 203:15 203:16 205:3 215:17 241:4

**certainly**(31) 28:18 34:16 67:11 69:14 70:4 80:12 88:10 96:10 104:11 110:25 114:2 119:9 119:20 119:21 136:19 142:11 156:19 167:2 171:14 175:21 194:23 213:18 217:12 217:15 222:6 224:6 233:20 235:6 238:16 238:16 239:3

**certification**(1) 241:14
**certified**(1) 173:20
**certify**(1) 241:15
**certiorari**(1) 189:12
**cetus**(1) 3:22
**chain**(1) 229:14
**chairman-elect**(1) 134:11
**challenge**(1) 216:3
**challenged**(1) 236:6
**chally**(2) 91:20 94:8
**chambers**(2) 39:18 134:17
**chance**(2) 88:2 88:3
**change**(11) 45:21 105:8 105:13 130:8 146:22 147:8 156:15 162:20 163:9 172:14 201:7

**channeled**(3) 115:17 116:2 151:11
**chapter**(11) 1:8 9:24 41:4 43:25 44:6 44:11 44:12 45:10 128:20 130:23 220:25

**characterized**(1) 30:19
**chart**(5) 49:24 151:22 151:25 151:25 158:18 160:8
**chase**(1) 4:23
**checks**(1) 184:3
**chen**(1) 4:28
**cherry**(1) 130:14
**cherry-picking**(1) 184:13
**chicago**(2) 4:35 4:36
**chief**(1) 68:23
**chilmark**(1) 4:19
**choice**(8) 156:14 208:15 215:6 218:9 219:5 219:12 219:15 222:22

**choices**(1) 130:7
**chose**(3) 146:19 156:13 220:24
**chosen**(1) 156:16
**chris**(2) 2:13 3:28
**circuit**(2) 21:12 178:1
**circuit's**(2) 21:7 44:23
**circuit**(1) 219:13
**circular**(1) 12:20
**circumstance**(2) 13:11 17:18
**circumstances**(21) 15:9 17:18 61:21 65:4 91:18 94:5 95:19 98:8 98:14 100:13 120:9 121:3 121:20 121:25 149:6 174:20 175:9 183:19 195:11 219:18 231:13

**citations**(1) 91:22
**cite**(17) 37:25 43:20 44:7 48:6 50:1 50:3 73:6 136:24 142:14 154:19 162:3 177:5 177:6 177:24 206:21 234:3 237:10

**cited**(22) 19:15 20:6 37:23 43:19 44:17 50:2 67:8 71:7 72:15 73:3 87:12 96:13 139:2 161:25 163:20 175:23 175:25 178:2 184:20 216:7 218:23 225:6

**cites**(9) 120:12 142:1 154:22 154:22 175:19 177:1 206:12 218:21 235:2

**citi**(2) 5:35 5:35
**citing**(1) 87:6
**civil**(11) 31:18 124:25 125:11 126:16 154:15 172:18 173:21 173:22 185:19 212:25 224:20

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **claim**(217) 7:21 9:18 9:19 13:2 13:3 13:5 13:22 14:21 15:17 16:6 16:12 20:8 20:19 21:9 21:19 22:6 22:22 23:2 25:7 26:1 26:7 28:9 28:19 30:17 31:15 31:16 31:19 31:21 32:2 32:14 32:15 32:18 32:2 33:18 37:6 37:15 37:19 39:24 40:5 40:13 42:2 42:14 45:23 45:24 50:9 50:25 51:8 51:16 51:19 52:2 52:5 53:21 53:21 56:1 56:2 56:4 57:11 57:25 57:25 59:24 60:20 61:3 62:24 64:12 70:15 73:11 73:11 73:13 73:24 75:14 76:1 76:4 76:10 76:15 76:19 77:11 80:20 88:23 90:3 97:7 98:2 98:4 98:15 98:19 99:6 100:23 105:23 106:15 106:25 111:1 112:16 114:2 119:10 119:21 121:7 124:8 124:22 124:24 127:24 128:7 128:19 129:14 131:21 131:22 135:16 137:138:4 140:16 141:24 144:7 144:10 146:2 146:25 150:15 151:4 151:22 152:16 154:1 159:17 160:25 161:18 161:19 162:17 162:20 163:10 163:16 163:18 164:9 164:16 164:20 164:23 165:6 165:6 165:18 167:15 168:10 168:23 170:8 170:18 171:18 174:2 176:4 176:4 176:10 177:12 177:20 180:1 181:23 182:5 182:7 182:12 182:15 182:16 183:9 184:4 184:9 184:13 184:20 185:15 185:18 187:8 188:9 189:7 189:10 189:14 190:17 190:24 192:1 192:10 193:21 194:2 195:9 195:13 195:25 198:1 199:7 199:9 199:10 199:15 203:10 204:9 204:15 205:8 205:11 206:2 207:6 209:7 210:11 211:3 213:3 214:12 216:16 217:25 219:3 221:1 221:1 223:1 225:3 225:7 226:8 227:25 228:23 229:5 229:24 230:23 232:12 232:1 233:25 235:10 235:17 237:1 238:7 239:6 239:22 240:13 240:19 | | **clause**(1) 101:4 **claymont**(1) 156:12 **clear**(101) 9:6 12:5 13:23 15:12 16:6 16:10 16:12 18:1 19:16 19:24 20:3 21:12 21:23 25:11 25:14 25:19 27:10 27:15 30: 30:17 31:1 33:2 33:23 35:1 36:5 37:11 39:13 39:16 44:9 56:9 58:9 59:13 61:23 63:12 67:9 68:6 68:8 68:23 72:21 72:24 75:19 75:22 79:7 87:17 87:22 87:22 95:1 96:3 99:10 99:13 102:6 103:9 103:18 104:19 104:21 106:11 106:19 109:9 113:1 113:25 115:25 116:7 117:17 117:18 117:18 132:7 137:18 144:4 148:14 159:7 162:5 172:2 175:8 184:15 188:15 189:8 192:25 193:11 195:25 197:10 197:21 199:199:15 199:17 199:23 200:17 205:12 205:21 208:6 211:9 211:14 212:6 215:24 216:7 232:20 234:4 234:11 235:9 235:18 237:11 238:6 | | **common**(16) 14:10 21:25 36:4 67:4 67:5 94:9 98:9 122:6 122:15 122:24 128:23 161:21 204:3 206:18 219:16 239:14 **communication**(4) 82:10 106:22 166:12 192:7 **communication**(1) 27:18 **companies**(23) 8:15 16:22 38:13 42:25 47:20 48:1 63:22 64:24 81:2 81:2 81:24 86:24 86:25 102:15 102:18 108:20 115:4 115:6 121:22 146:9 194:16 210:24 225:21 **companies'**(1) 228:2 **company**(172) 8:12 10:20 11:19 11:20 11:23 14:4 14:7 14:16 14:20 24:13 24:13 24:17 24:18 24:20 25:13 27:7 27:7 27:12 27:12 28:11 28:12 37:9 45:25 46:1 46:2 46:3 48:12 48:17 48:19 48:24 48:24 49:12 49:24 53:22 53:24 62:18 62:19 63:13 63:15 63:24 65:9 66:10 66:17 66:19 66:22 66:25 70:3 74:6 77:7 81:11 81:25 83:3 85:4 85:11 85:14 86:2 89:19 89:21 90:7 92:14 92:16 92:19 93:9 93:9 93:20 94:3 94:12 95:10 95:11 95:18 95:24 96:23 100:8 100:11 100:14 105:13 105:20 106:11 107:25 110:22 113:9 119:1 120:3 120:7 122:25 123:2 123:2 123:3 123:4 125:2 125:9 126:25 127:1 127:5 127:15 127:16 129:16 129:22 129:24 130: 130:8 131:9 131:9 131:11 142:19 142:22 142:24 143:12 143:14 145:5 146:5 146:7 150:23 150:24 150:25 152:14 180:15 181:16 181:19 182:1 182:10 183:1 185:8 197:15 204:23 210:10 211:8 222:23 223:23:20 224:14 225:1 225:10 225:12 225:15 225:15 227:17 227:18 227:20 227:21 227:22 227:24 228:1 228:10 228:15 228:18 228:20 228:24 228:25 229:4 229:12 229:22 229:22 230:2 230:3 230:10 230:11 231:3 231:4 231:9 231:11 233:7 233:9 234:10 234:25 235:15 235:15 235: **company's**(13) 45:25 46:8 49:3 66:18 72:12 83:6 89:18 95:2 121:2 121:4 125:3 129:19 130:7 **comparative**(2) 23:15 79:7 **comparison**(1) 191:21 **compelling**(1) 190:5 **compensate**(2) 185:23 186:16 **compensation**(1) 173:25 **competency**(1) 211:21 **competing**(1) 24:1 **complaining**(2) 17:1 189:3 **complaint**(23) 31:15 35:11 35:13 35:17 36:1 36:4 39:20 39:21 39:21 40:16 50:13 55:15 98:10 128:4 150:17 156:18 156:19 188:25 197:19 200:4 208:23 226:14 240:1 **complaints**(1) 203:9 **complete**(2) 160:6 186:17 **completely**(17) 12:16 15:24 21:1 24:14 39:12 54:14 84:10 86:9 117:4 138:7 152: 165:19 170:19 192:9 207:22 208:23 208:6 **complexity**(1) 30:25 **complicated**(2) 111:17 56:9 **complied**(1) 32:17 **complies**(1) 195:14 **comply**(3) 31:24 34:20 113:20 **component**(1) 141:17 **comprehensiv**(1) 237:12 **conaway**(1) 2:19 **concealed**(1) 23:3 **concede**(2) 54:11 168:2 **conceded**(1) 208:21 **concedes**(4) 137:11 170:25 172:14 172:23 **concentrate**(1) 213:25 | | **concept**(14) 11:11 11:12 37:14 81:22 83:15 93:2 93:3 93:3 93:3 93:16 97:19 105:5 123:13 173:1 194:12 **concepts**(6) 80:22 80:25 94:8 96:5 120:5 187:23 **concern**(3) 36:6 102:19 210:25 **concerned**(2) 228:25 229:3 **concerning**(1) 204:14 **concert**(1) 117:9 **conclude**(3) 139:25 176:25 177:21 **concluded**(2) 161:16 219:1 **concludes**(2) 61:19 61:20 **conclusion**(2) 64:15 88:22 143:3 165:4 202:19 221:9 **conclusions**(9) 21:14 35:18 35:22 35:24 35:25 36:1 167:4 174:9 240:21 **conclusory**(40) 15:25 21:10 50:22 52:3 52:7 55:25 56:5 61:6 63:3 64:7 77:7 80:2 80:8 110:8 111:1 113:13 119:4 119:4 128:18 139:4 145:12 146:2 147:15 148:18 149:17 152:24 153:3 153:5 153:6 164:14 164:24 169:10 176:20 184:6 188:23 197:4 200:25 201:1 202:21 240:21 **concurring**(1) 127:22 **condition**(1) 49:3 **conduct**(25) 73:14 82:11 106:18 142:19 143:17 155:5 162:8 162:11 163:8 177:00 180:19 187:5 190:14 192:6 204:7 209:3 209:5 210:20 211:1 211:4 211:20 225:15 229:21 230:20 **conducted**(5) 58:17 107:19 109:17 136:7 148:9 **conducts**(2) 129:22 208:4 **conference**(2) 18:16 47:4 **confidentiality**(1) 59:18 **confirming**(1) 136:20 174:23 **confronted**(1) 93:22 **confused**(2) 62:12 159:13 **confusing**(1) 62:3 **confusion**(1) 134:23 **conspiracies**(1) 166:3 166:24 **conspiracy**(47) 36:6 36:10 36:15 106:15 106:24 158:10 158:11 158:12 165:22 166:15 166:1 167:14 177:17 177:19 185:8 191:11 191:13 192:11 200:23 204:10 205:7 205:17 205:17 205:20 205:22 212:3 212:18 212:24 214:15 214:21 216:3 216:10 216:11 217:3 217:5 218:4 218:19 218:20 218:22 219:1 221:13 221:16 222:21 223:25 224:20 234:15 236:17 **conspired**(1) 191:17 **conspiring**(1) 175:3 |
| **claimant**(2) 219:23 230:20 | | | | | | | |
| **claimants**(5) 3:4 95:6 95:9 208:3 213:4 | | **clearer**(1) 205:7 | | | | | |
| **claimed**(5) 36:16 36:18 156:6 161:1 219:2 | | **cleary**(6) 1:32 4:12 6:12 7:14 135:5 202:2 206:6 | | | | | |
| **claiming**(3) 16:5 64:8 156:9 | | **clerk**(1) 78:10 | | | | | |
| **claims**(205) 7:23 8:3 8:6 8:10 8:24 8:25 9:21 10:8 10:10 12:7 13:20 15:3 16:4 16:25 17:11 17:12 17:15 17:19 17:24 17:24 18:4 18:5 18:11 18:13 19:11 19:14 20:16 22:9 22:10 22:22 23:4 23:23 24:5 25:5 27:13 27:15 28:3 28:8 28:11 28:12 28:22 29:1 29:2 29:4 29:6 29:8 29:13 29:14 30:4 30:17 30:20 31:5 31:9 32:2 32:20 33:6 34:14 34:15 35:6 35:18 37:12 38:12 38:15 39:13 39:14 40:9 40:20 40:22 41:1 45:3 45:4 45:13 63:2 64:19 71:10 71:24 75:9 77:15 78:21 79:5 102:1 102:19 106:14 110:11 112:25 114:22 118:24 119:6 129:4 129:24 132:3 138:15 139:9 157:19 158:4 158:5 160:15 160:22 161:9 161:15 163:15 163:18 163:19 163:2 164:2 165:14 168:14 171:1 171:1 171:16 171:21 178:17 181:14 185:9 188:7 192:17 194:3 194:23 194:25 195:4 195:6 195:17 202:8 203:4 203:9 203:12 203:16 204:8 204:9 204:9 204:10 205:7 205:12 205:14 205:16 205:22 206:8 206:8 206:14 206:18 206:24 207:8 208:15 208:20 209:2 210:11 210:18 211:24 212:2 212:18 212:22 212:24 213:1 213:11 214:15 214:2 215:12 215:14 215:15 215:17 215:21 215:24 216:5 216:13 216:15 216:18 217:3 218:19 218:20 218:21 219:1 219:21 219:2 220:1 220:4 220:15 221:12 221:14 221:15 221:16 222:20 222:25 223:14 223:17 224: 224:13 224:17 224:20 224:22 224:24 226:19 230:6 230:12 232:7 232:11 234:7 236:15 236:21 236:24 239:7 239:15 240:1 | | | | | | | |
| | | **clare**(1) 108:13 | | | | | |
| | | **clarify**(1) 134:16 | | | | | |
| | | **class**(1) 219:25 | | | | | |
| | | **classic**(2) 55:25 153:6 | | | | | |
| | | **classified**(1) 82:12 | | **committee**(2) 7:5 5:4 5:30 6:15 7:19 44:19 70:8 | | | |
| | | | | **committed**(5) 125:2 175:2 225:13 228:2 228:10 | | | |
| | | | | **committees**(2) 191:25 192:8 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| constant(1) 106:22 | | corporate(25) 10:21 14:5 42:7 47:20 50:6 83:13 94:6 94:12 94:14 94:18 95:6 95:9 97:2 97:11 106:20 109:14 114:6 114:10 136:17 184:17 191:25 224:15 224:19 229:13 229:17 | | court(301) 1:1 6:3 6:10 6:16 6:19 6:22 7:7 7:9 7:11 7:16 8:1 9:1 9:24 10:16 10:17 10:20 11:4 11:12 11:13 12:11 12:24 13:15 14:4 14:11 15:10 17:25 18:3 18:10 18:19 18:22 19:3 19:4 19:9 19:20 20:10 20:11 20:22 21:22 21:23 21:24 23:11 23:17 23:22 24:6 25:22 30:23 31:3 31:12 33:19 34:5 36:2 36:11 36:14 36:21 36:22 37:1 37:10 38:23 39:3 39:8 39:10 40:21 40:25 41:3 41:11 41:16 42:19 43:24 44:8 44:13 45:8 45:10 47:6 47:9 47:11 47:17 47:21 48:2 48:21 48:22 48:25 49:4 49:6 49:12 51:4 51:24 56:14 56:16 56:19 58:6 58:12 58:14 59:15 61:23 61:23 61:24 62:4 62:5 62:5 62:6 62:8 62:10 63:12 65:3 65:8 65:12 65:14 65:23 66:10 66:12 66:15 66:21 67:7 68:23 69:1 69:4 69:4 69:5 69:10 69:13 69:20 69:23 70:1 70:5 70:9 70:13 71:6 77:16 77:18 77:20 77:24 78:1 78:3 78:7 78:11 78:19 78:22 80:5 80:12 80:15 82:8 82:9 82:13 84:8 84:12 86:4 88:4 88:10 88:16 89:7 89:10 89:13 89:16 90:13 90:15 90:19 90:25 91:2 91:5 91:7 95:24 96:14 97:14 97:17 98:11 98:20 98:24 99:1 100:19 102:1 104:13 111:2 114:17 120:18 120:22 121:19 122:7 122:1 122:13 122:16 123:6 123:25 124:12 124:21 125:14 126:3 127:15 127:18 128:1 128:15 129:3 132:15 132:21 133:1 133:1 133:15 133:17 133:20 133:22 134:2 136:4 136:14 137:4 137:18 137:24 138:2 138:6 138:8 138:10 138:14 139:12 139:19 139:22 140:7 140:18 140:20 140:23 141:4 142:1 142:25 144:5 144:11 144:13 144:15 147:1 150:4 150:8 150:13 151:2 152:17 153:24 153:25 154:3 155:3 155:19 155:22 155:25 156:5 156:24 157:1 157:4 157:7 157:10 157:13 157:15 157:17 158:8 158:13 158:22 158:25 159:4 159:14 162:15 163:3 163:5 164:7 169:17 170:13 170:19 171:6 171:8 171:11 171:14 172:7 175:8 175:24 175:25 178:20 179:2 179:4 179:8 179:12 179:14 179:16 179:20 179:24 180:2 181:3 181:8 181:21 183:4 183:13 185:17 186:1 186:4 190:21 190:25 191:4 191:10 193:13 195:3 195:18 195:21 196:2 196:4 196:9 196:11 196:13 196:18 196:22 | | courts(50) 12:19 12:20 12:22 14:9 14:10 15:11 20:6 20:7 35:9 37:15 39:17 44:16 46:14 47:14 49:17 63:3 65:10 67:9 67:10 70:21 71:5 71:7 71:8 79:13 80:24 90:15 93:21 94:20 97:7 122:5 124:1 125:15 126:17 127:21 130:23 131:5 137:14 149:4 149:6 154:11 178:5 188:1 208:21 218:25 219:14 224:21 226:15 226:16 227:15 235:7 |
| constitute(1) 32:15 | | | | | | | |
| constructive(1) 162:1 | | | | | | court's(4) 217:17 218:24 237:22 239:14 |
| construe(2) 35:11 105:12 | | | | | | cover(3) 59:20 77:22 114:16 |
| construed(2) 83:15 83:17 | | | | | | covers(1) 56:4 |
| consulted(2) 105:11 105:25 | | | | | | cowza(1) 235:13 |
| contain(1) 19:13 | | | | | | cra(1) 107:9 |
| contemporaneous(1) 10:3 | | | | | | crafted(1) 146:17 |
| contend(3) 17:24 104:20 120:8 | | | | | | crafting(1) 32:21 |
| contending(1) 222:19 | | corporation(21) 5:40 10:22 10:24 10:25 14:5 47:25 48:8 123:15 143:21 206:15 206:22 207:5 209:19 218:15 219:5 221:3 226:9 234:14 234:18 235:25 236:5 | | | | create(3) 18:3 20:19 131:23 |
| contention(2) 125:7 194:6 | | | | | | created(2) 105:16 123:13 |
| contest(4) 26:13 32:13 125:5 153:23 | | | | | | creates(2) 48:23 230:1 |
| contested(3) 22:5 34:4 240:3 | | | | | | creation(1) 219:17 |
| context(19) 21:23 25:19 26:24 87:19 95:1 97:25 105:24 106:12 122:21 128:20 128:2 130:13 141:9 174:15 206:8 219:9 226:18 226:22 227:23 | | corporations(2) 123:17 123:18 | | | | credibility(1) 134:10 |
| | | corporation's(4) 207:4 207:11 208:2 | | | | credible(2) 85:1 174:7 |
| | | correct(20) 25:5 43:19 95:13 98:12 99:13 101:8 120:25 135:20 137:22 138:18 139:2 140:19 199:22 203:7 205:5 208:15 216:24 233:1 235:7 241:15 | | | | credit(1) 228:4 |
| | | | | | | creditor(3) 5:21 5:45 30:16 |
| contexts(4) 28:7 94:25 126:18 174:17 | | | | | | creditors(26) 7:19 17:22 17:23 18:15 26:12 30:5 30:12 30:14 44:18 48:19 49:2 49:4 60:12 92:7 92:18 95:21 100:7 100:10 101:2 131:2 131:2 161:4 161:7 182:3 231:18 |
| contingent(1) 8:23 8:24 171:1 171:20 195:4 195:7 195:13 | | correctly(4) 136:22 141:14 141:17 186:15 | | | | |
| | | correspond(1) 129:21 | | | | |
| | | correspondence(1) 39:19 | | | | |
| continue(6) 30:3 34:13 38:20 48:6 128:10 142:13 | | cost(2) 18:11 105:9 | | | | creditors'(2) 2:4 180:25 |
| | | costs(3) 20:16 114:6 114:10 | | | | crisis(2) 63:21 101:14 |
| | | could(57) 11:19 13:17 40:5 46:20 46:21 46:22 50:21 53:17 53:19 54:3 55:10 55:2 56:12 61:8 76:15 88:24 96:20 97:10 111:12 111:19 116:3 124:7 134:23 137:12 137:13 137:22 139:21 143:17 143:18 143:19 143:20 143:22 145:6 146:16 146:1 149:9 150:18 152:14 162:8 166:20 168:6 179:11 180:19 182:24 183:24 190:13 192: 192:8 197:2 198:25 208:22 212:23 214:2 214:25 233:11 233:12 234:10 | | | | critical(2) 165:13 173:24 |
| continued(8) 2:2 3:2 4:2 5:2 49:25 50:1 101:20 116:22 | | | | | | criticism(1) 155:1 |
| | | | | | | criticizing(1) 16:24 |
| | | | | | | crook(1) 48:23 |
| continues(1) 50:2 | | | | | | crucial(3) 95:3 141:11 141:20 |
| continuing(1) 42:5 | | | | | | cruz(1) 4:14 |
| continuous(1) 64:9 | | | | | | crystallized(1) 237:23 |
| continuum(1) 80:24 | | | | | | culpable(1) 233:5 |
| contours(1) 142:8 | | | | | | cumulatively(1) 98:15 |
| contract(1) 105:19 | | couldn't(4) 146:19 148:14 216:19 235:9 | | | | current(1) 96:19 |
| contracts(3) 105:20 234:15 234:18 | | council(1) 129:18 | | | | customs(1) 104:2 |
| contractual(1) 215:23 | | counsel(9) 25:1 84:1 84:3 84:4 85:25 133:20 135:1 135:6 189:24 | | | | cut(3) 42:20 74:23 75:22 |
| contractually(1) 216:1 | | | | | | damage(6) 92:7 95:21 129:6 173:24 177:11 185:22 |
| contradicts(1) 103:5 | | | | | | |
| contrary(11) 18:8 21:2 44:15 45:9 112:2 122:17 129:20 178:13 178:15 209:8 225:4 | | counter(2) 208:25 225:8 | | | | |
| | | counterclaims(3) 220:12 220:16 220:17 | | | | damaged(1) 174:1 |
| | | countless(1) 16:23 | | | | damages(5) 18:6 68:24 171:25 172:13 |
| | | countries(1) 161:21 | | | | damaging(4) 172:13 172:17 177:1 177:8 |
| contrast(2) 22:23 117:12 | | couple(13) 39:9 40:7 70:15 86:22 90:18 142:10 144:9 145:11 152:12 192:19 193:9 196:21 233:10 | | | | dare(1) 65:8 |
| contributed(2) 123:5 125:6 | | | | | | dark(1) 145:6 |
| contribution(1) 170:16 | | | | | | data(1) 1:43 |
| control(41) 8:13 10:24 24:8 24:22 27:25 41:18 41:20 41:23 44:6 45:7 50:23 51:20 72:19 76:2 76:6 77:10 103:10 103:14 107:23 112:3 112:6 112:12 113:17 118:23 121:2 121:4 124:11 128:21 132:8 140:19 140:20 142:17 142:20 145:9 145:13 145:1 145:16 149:14 226:10 227:20 233:8 | | | | | | date(6) 26:25 28:25 39:11 192:13 194:22 216:14 |
| | | cour(2) 71:6 125:14 | | | | |
| | | course(29) 6:5 10:22 31:12 53:9 53:25 65:6 78:17 88:11 131:15 133:3 137:2 137:13 139:14 143:1 143:7 143:15 143:17 148:9 150:4 154:3 155:5 171:23 176:4 183:17 183:17 201:21 203:6 207:7 217:14 | | | | daughter's(1) 59:10 |
| | | | | | | davies(1) 5:25 |
| | | | | | | dax(2) 3:38 3:39 |
| | | | | | | day(20) 6:9 13:14 41:11 41:12 41:12 41:12 43:6 43:6 49:12 56:6 65:21 85:10 85:10 87:24 87:25 129:16 129:17 153:19 178:15 226:20 |
| controlled(13) 10:5 41:7 42:16 94:19 103:11 103:20 107:4 111:25 118:22 130:7 147:16 156:20 233:5 | | | | | | |
| | | | | | | day-to-day(1) 168:7 |
| | | | | | | dead(1) 17:14 |
| controller(7) 53:1 56:23 74:11 74:11 76:22 200:7 200:8 | | court(104) 198:6 198:20 198:23 199:12 202:8 202:10 202:14 202:17 202:22 203:1 203:13 203:19 203:22 203:25 205:3 206:2 208:4 209:2 209:5 209:10 209:11 209:17 209:20 209:22 209:22 210:2 210:21 211:1 211:14 211:16 211:18 212:1 212:11 212:15 213:13 213:19 213:23 214:2 214:5 214:7 214:9 214:16 214:23 215:2 215:7 216:11 216:22 216:25 217:18 217:20 219:17 219:21 220:2 220:7 220:10 220:15 220:18 221:18 221:25 222:3 222:6 222:11 222:13 222:15 223:10 223:11 223:16 224:3 224:4 224:6 224:11 224:16 229:3 229:21 231:23 232:1 232:9 233:13 233:15 233:19 234:4 234:16 235:11 237:9 237:13 237:15 237:21 238:2 238:8 238:10 238:12 238:16 238:18 238:20 238:24 238:25 239:3 239:12 240:1 240:12 240:13 240:17 | | | | deal(13) 9:13 18:21 20:25 22:11 34:8 54:6 60:19 77:14 148:17 163:11 163:25 170:12 194:14 |
| | | | | | | |
| controlling(12) 67:17 84:18 96:9 96:18 103:12 125:15 148:3 226:8 235:1 235:3 235:4 235:21 | | | | | | |
| | | | | | | dealing(8) 25:15 29:22 53:14 143:1 143:7 183:17 183:17 240:13 |
| controls(1) 43:2 | | | | | | |
| controversial(4) 15:8 172:15 172:24 178:13 | | | | | | dealings(1) 107:19 |
| convenient(1) 87:15 | | | | | | dealt(1) 41:11 |
| convincing(1) 85:1 | | court's(10) 12:3 12:3 14:7 21:6 48:5 84:10 90:11 98:18 124:7 124:13 | | | | debate(6) 12:2 122:10 186:24 199:19 227:7 227:11 |
| cooperating(1) 156:14 | | | | | | |
| cooperative(1) 38:16 | | | | | | |
| coordinated(2) 29:12 29:23 | | | | | | |
| copies(2) 89:6 98:23 | | courtroom(2) 1:9 213:15 | | | | deborah(1) 1:35 |
| copy(3) 86:25 87:9 238:19 | | | | | | debt(1) 110:6 |
| cordo(1) 1:25 | | | | | | |
| corollary(1) 210:1 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **debtor**(37) 1:24 4:12 5:39 6:14 26:13 28:24 30:7 30:11 30:21 31:23 32:13 38:1 72:13 85:18 97:13 98:3 100:16 109:4 119:11 125:4 128:3 128:24 129:8 130:17 131:1 131:18 132:2 132:5 182:8 191:11 194:24 225:8 225:8 228:21 230:7 231:14 239:15 | | **deference**(1) 122:5 | | **destiny**(1) 226:20 | | **directing**(7) 58:19 79:11 94:3 96:23 127:7 142:24 235:16 | |
| **debtors**(32) 1:12 2:19 3:27 6:7 7:17 7:18 25:1 26:25 27:23 32:8 32:9 38:3 41:22 78:14 79:24 83:14 85:25 88:7 96:7 125:24 129:11 129:14 133:5 194:12 194:18 202:2 207:25 215:5 215:5 216:18 220:24 234:22 | | **deficiencies**(3) 65:24 73:11 76:13 | | **detail**(17) 13:20 16:14 23:22 24:4 26:1 26:9 28:4 32:1 32:5 35:18 72:17 84:23 124:18 160:14 184:1 239:9 239:9 | | **direction**(8) 58:17 77:4 82:12 101:24 102:7 102:8 109:18 170:16 | |
| | | **deficiency**(1) 20:20 | | | | | |
| | | **deficient**(1) 160:17 | | **detailed**(7) 61:13 61:18 124:15 126:18 181:1 194:3 194:21 | | **directions**(4) 46:8 67:16 81:25 93:8 | |
| **debtors'**(2) 212:10 216:14 | | **define**(1) 94:14 | | | | **directly**(4) 110:24 149:11 193:17 201:3 | |
| **debts**(2) 63:10 144:24 | | **defined**(3) 81:23 85:9 205:3 | | **details**(5) 23:19 70:15 71:22 73:12 195:2 188:6 230:15 | | **director**(231) 10:21 11:11 11:16 11:20 11:21 11:22 12:4 14:5 14:7 14:15 14:16 14:17 14:18 14:19 14:19 14:21 14:22 45:25 46:3 46:6 46:13 46:16 46:16 46:19 46:20 46:21 47:3 47:15 47:18 47:20 48:10 48:10 48:16 48:17 48:18 48:22 49:2 49:5 49:8 50:8 50:16 50:21 52:10 53:5 53:8 53:19 54:3 54:4 54:7 54:18 54:18 54:22 55:22 55:24 56:25 57:3 57:14 58:19 58:21 58:24 59:1 59:1 59:8 59:9 59:23 60:8 60:19 61:9 61:9 66:3 66:4 66:8 66:16 66:20 66:23 66:24 66:25 67:1 67:12 67:24 68:10 68:11 71:14 71:16 71:18 71:20 72:3 72:5 72:8 72:11 72:13 72:20 73:4 75:22 79:10 80:21 81:3 81:4 81:7 81:7 81:11 81:12 81:14 81:15 81:20 81:22 82:11 83:1 83:4 83:5 83:10 84:10 84:15 85:3 85:7 85:8 88:21 88:25 89:19 90:4 90:8 90:8 91:16 92:10 92:25 92:25 93:2 93:3 93:4 93:7 93:24 94:4 94:9 94:9 94:10 94:16 94:23 94:25 95:2 95:4 95:17 95:23 96:8 96:11 96:21 97:9 97:15 97:24 98:16 105:5 105:24 106:10 108:1 108:2 109:19 110:20 110:22 111:1 111:9 111:12 111:19 120:4 121:2 121:4 121:11 121:12 122:23 122:24 123:1 123:2 123:3 123:5 125:8 126:15 127:2 127:6 127:10 127:16 136:25 137:15 137:15 141:2 141:10 141:15 141:23 143:8 143:9 143:11 143:14 143:15 143:17 144:2 146:3 146:4 146:8 146:16 148:22 149:6 152:15 155:6 155:11 180:20 181:15 181:18 181:18 181:25 182:7 182:15 182:17 183:9 183:20 196:25 197:3 198:14 198:16 198:22 205:10 205:18 206:11 209:16 223:20 224:14 227:21 229:21 230:10 230:12 231:10 231:10 236:12 237:25 238:1 | |
| **debtwire**(1) 4:44 | | **definite**(3) 31:22 32:11 33:17 | | | | | |
| **decades**(3) 50:7 65:6 65:7 | | **definition**(9) 67:12 67:14 81:13 89:3 90:5 94:17 126:15 206:17 206:19 | | **determination**(6) 30:24 95:18 132:11 137:19 153:4 181:6 | | | |
| **december**(5) 115:22 115:22 116:12 151:18 216:17 | | **definitions**(3) 189:20 189:21 189:23 | | | | | |
| | | **definitive**(3) 19:8 19:21 39:15 | | **determinations**(1) 226:15 | | | |
| **decide**(7) 29:18 89:18 109:5 138:25 139:7 139:8 218:16 | | **degree**(4) 91:21 96:12 122:11 172:3 | | **determine**(17) 21:8 21:18 23:22 35:12 46:15 63:8 80:10 88:20 90:22 95:25 126:14 127:24 153:1 170:13 180:14 191:4 209:4 | | | |
| | | **delaware**(44) 1:2 1:12 3:6 6:2 206:20 208:6 212:4 213:1 214:22 215:9 215:24 216:5 216:6 217:11 218:1 218:2 218:6 218:14 219:6 219:23 219:25 220:2 220:4 220:7 220:11 220:14 220:15 220:19 220:2 220:21 220:24 221:2 221:4 222:24 223:1 224:2 224:10 232:19 233:2 234:1 234:4 234:16 237:13 237:13 | | **determined**(4) 105:18 105:21 113:13 | | | |
| **decided**(11) 30:13 40:17 46:5 54:25 75:16 106:8 117:21 118:14 119:19 132:10 234:2 | | | | **determines**(1) 36:3 | | | |
| | | | | **determining**(4) 84:14 95:16 99:24 127:20 | | | |
| | | | | **detriment**(4) 108:24 109:2 109:23 190:7 | | | |
| **decides**(1) 57:21 | | | | **detrimental**(1) 207:22 | | | |
| **deciding**(2) 90:7 105:13 | | **delectos**(1) 225:4 | | | | | |
| **decision**(49) 12:11 13:4 25:11 28:6 30:3 35:23 42:14 47:22 54:9 54:19 54:23 72:1 84:13 105:8 105:10 106:1 106:2 106:3 106:4 112:8 112:12 112:16 112:21 113:11 115:12 117:25 120:12 120:13 120:14 120:15 120:16 120:25 122:13 122:13 122:16 124:19 132:12 146:22 178:1 183:2 211:8 211:20 217:16 218:24 219:23 227:8 227:14 232:21 240:14 | | **delighted**(1) 170:11 | | **develop**(2) 53:25 178:15 | | | |
| | | **delivered**(2) 234:19 234:21 | | **developed**(4) 29:9 46:14 46:23 123:22 | | | |
| | | **delivery**(1) 159:23 | | **developing**(1) 51:12 217:12 | | | |
| | | **demand**(1) 101:13 | | **development**(3) 51:15 65:6 105:17 | | **director's**(3) 85:15 89:3 125:2 | |
| | | **demanded**(1) 76:23 | | **devereux**(2) 82:7 82:8 | | **director-only**(8) 141:2 141:23 180:13 180:14 184:3 184:7 184:10 197:2 | |
| | | **demonstrate**(3) 23:8 81:19 181:17 | | **devise**(1) 55:1 | | | |
| | | **demonstrated**(1) 23:10 | | **devised**(1) 26:5 | | | |
| **decisions**(40) 25:8 35:4 36:6 41:13 41:21 41:24 42:5 42:8 43:6 43:8 44:10 54:16 55:23 67:10 71:5 71:7 76:3 83:11 90:19 93:17 105:1 105:2 111:10 116:22 119:17 119:18 120:22 122:6 122:7 122:9 122:12 122:20 125:15 126:9 148:2 184:15 184:16 184:17 188:18 211:17 | | **demonstrates**(1) 74:3 | | **devising**(3) 55:6 115:11 184:25 | | **directorial**(8) 105:12 105:14 118:23 123:19 142:17 142:19 148:1 148:21 | |
| | | **demonstrating**(1) 129:10 | | **devoted**(1) 26:25 | | | |
| | | **dennis**(1) 5:22 | | | | **directors**(119) 10:11 11:21 11:23 11:24 12:4 12:18 14:24 17:2 38:12 46:18 46:18 46:19 47:1 47:19 49:8 55:5 55:11 55:17 56:21 60:18 60:21 61:2 61:5 61:20 62:20 64:16 68:4 68:7 72:12 72:20 73:15 76:17 76:18 76:20 77:3 80:19 81:25 82:19 82:25 83:7 85:4 85:8 85:13 92:9 93:6 93:7 93:9 93:19 93:24 94:16 96:5 96:10 96:25 100:6 100:15 107:16 107:25 108:3 109:21 109:23 111:13 112:9 112:11 117:15 120:2 120:3 120:5 120:16 120:23 123:5 123:8 123:9 123:16 123:21 127:4 127:18 126:5 140:2 142:23 143:22 147:18 153:9 153:10 153:11 153:13 156:2 156:16 156:22 166:1 166:13 166:15 175:5 176:6 183:25 185:4 185:5 185:7 192:1 200:2 200:11 204:11 204:14 204:18 204:20 204:22 204:25 205:1 205:10 205:15 205:18 206:1 209:11 209:15 211:2 211:3 229:7 233:5 233:8 235:22 | |
| | | **densest**(2) 238:13 238:14 | | **did**(62) 7:9 8:13 16:5 32:3 33:17 40:4 44:18 48:21 55:16 56:5 57:2 57:15 58:14 58:25 59:8 63:24 75:20 76:20 78:5 92:13 99:10 101:19 101:22 104:10 109:9 111:20 113:20 115:19 116:4 119:16 135:21 136:1 138:17 138:17 141:12 147:13 148:2 148:5 151:12 152:24 153:2 153:2 153:8 156:16 160:1 161:16 165:12 168:18 168:21 169:1 170:2 170:4 180:11 186:18 194:21 195:23 198:8 214:25 224:1 224:1 224:4 240:6 | | | |
| | | **deny**(2) 224:17 226:3 | | | | | |
| **decisive**(1) 91:19 | | **depart**(1) 172:3 | | | | | |
| **declaration**(33) 59:19 71:4 72:6 82:21 83:24 83:25 85:20 87:12 88:18 89:1 91:10 91:11 92:22 96:7 96:13 98:22 99:21 100:9 100:13 125:17 128:1 128:9 129:1 130:5 173:14 173:16 173:18 173:19 174:17 174:22 180:22 186:13 186:19 188:7 | | **departing**(2) 178:8 219:15 | | **didn't**(21) 13:4 20:1 26:16 30:24 33:18 33:19 33:24 35:5 43:24 43:25 48:24 49:10 49:22 50:8 58:13 59:22 90:5 109:13 109:13 110:22 111:18 | | | |
| | | **department**(5) 52:6 52:21 108:5 108:7 108:9 | | | | | |
| | | **depend**(3) 180:20 181:1 205:8 | | **didn't**(28) 135:2 135:14 135:15 135:16 135:17 135:23 135:25 138:17 144:1 150:1 150:17 156:17 160:13 170:4 180:18 180:10 186:20 188:21 192:5 195:21 196:14 198:8 200:13 200:19 208:14 218:19 222:23 225:23 | | | |
| | | **dependent**(1) 206:19 | | | | | |
| **declarations**(10) 9:23 17:3 24:1 79:20 80:9 120:19 122:14 126:19 156:12 186:11 | | **depends**(1) 92:16 | | | | | |
| | | **depleted**(2) 101:24 102:7 | | | | | |
| | | **deposing**(1) 136:6 | | **difference**(6) 47:13 71:23 126:2 172:19 188:6 230:15 | | | |
| **declaratory**(1) 220:12 | | **depose**(1) 38:6 | | | | | |
| **decline**(2) 114:8 211:18 | | **deposition**(34) 11:1 43:16 43:19 83:25 84:16 84:21 87:2 87:4 87:17 87:23 88:18 89:2 89:4 89:8 89:12 89:22 89:25 89:25 97:8 97:12 97:25 134:25 135:10 135:20 136:3 136:7 140:25 222:2 222:11 230:16 230:19 230:22 231:6 231:20 | | **differences**(4) 47:5 65:20 210:6 230:14 | | | |
| **declined**(2) 91:19 235:8 | | | | **different**(27) 14:17 30:14 44:25 46:6 47:24 49:18 53:23 72:9 72:23 79:15 87:7 90:20 94:24 112:25 118:24 124:23 124:24 126:20 131:22 155:4 166:7 176:12 181:23 191:18 210:16 227:10 227:10 | | | |
| **deemed**(1) 170:16 | | | | | | | |
| **deep**(1) 152:10 | | | | | | | |
| **deepening**(1) 224:20 | | | | | | | |
| **defeated**(1) 13:21 | | | | **differently**(1) 117:4 | | | |
| **defendant**(11) 11:18 11:22 46:25 47:1 47:2 48:23 49:7 125:1 175:6 204:6 220:17 | | **depositions**(5) 24:1 84:4 85:19 85:25 227:5 | | **differs**(1) 72:18 | | **directorship**(15) 11:17 12:6 50:6 74:4 74:22 82:6 82:24 90:17 93:12 93:16 112:13 120:10 127:25 149:4 182:6 | |
| | | **deprive**(1) 220:25 | | **difficult**(4) 66:24 93:22 94:14 240:20 | | | |
| | | **deprived**(2) 103:23 113:21 | | **dilatory**(1) 29:4 | | | |
| **defendant's**(1) 22:1 | | **depriving**(2) 220:16 220:16 | | **dinner**(2) 168:19 241:9 | | | |
| **defendants**(2) 18:10 20:15 | | **derek**(3) 1:26 2:31 6:6 | | **direct**(10) 9:25 37:2 44:3 109:13 124:7 124:13 124:19 146:7 230:10 230:18 | | | |
| **defendants'**(2) 168:12 220:12 | | **describe**(2) 13:19 101:17 | | | | | |
| **defense**(22) 13:25 119:18 139:21 160:24 181:11 182:18 182:19 182:25 183:1 202:25 208:6 208:7 208:13 208:22 208:22 210:10 223:19 226:7 226:13 230:12 230:19 239:2 | | **described**(5) 24:7 27:20 101:15 108:19 228:24 | | | | | |
| | | **describes**(1) 172:17 | | | | | |
| | | **describing**(1) 124:16 | | | | | |
| **defenses**(6) 33:4 157:4 179:4 197:8 197:9 203:7 | | **descriptions**(1) 227:10 | | | | **directorships**(1) 81:1 | |
| | | **designations**(1) 89:7 | | | | | |
| **defense's**(1) 203:8 | | **designed**(2) 197:19 208:7 | | | | | |
| **defer**(2) 132:19 226:16 | | **desire**(1) 112:18 | | | | | |
| | | **despite**(3) 20:5 172:1 172:21 | | **directed**(4) 41:20 77:1 94:19 142:21 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| directors'(1) 229:25 | | distributed(1) 17:23 | | done(45) 10:17 11:4 11:13 13:24 16:8 | | duty(86) 10:10 12:7 12:15 12:19 13:8 |
| director's(3) 210:19 229:16 230:17 | | distribution(4) 17:21 18:15 42:7 62:22 | | 16:8 26:16 27:8 35:1 53:17 53:18 55:4 | | 13:9 13:9 26:16 26:18 38:13 38:19 40:19 |
| directs(1) 121:5 | | district(7) 1:2 44:8 177:25 219:22 220:2 | | 75:24 88:5 112:23 115:8 115:13 119:14 | | 40:22 45:3 45:6 45:12 62:15 62:17 62:20 |
| disagree(4) 79:3 83:19 185:24 210:14 | | 223:11 224:10 | | 119:23 129:6 131:23 143:8 144:8 146:18 | | 63:2 64:19 64:21 64:23 64:25 65:4 65:22 |
| disagreement(7) 70:18 71:19 81:17 120:2 | | | | 157:9 157:20 158:17 158:19 158:20 158:22 | | 68:17 68:19 68:25 69:5 78:21 80:20 81:17 |
| 122:4 123:23 188:12 | | divide(1) 86:6 | | 158:22 158:25 168:16 174:11 176:21 | | 81:17 92:20 95:1 95:11 96:2 100:7 100:15 |
| | | divided(1) 18:17 | | 178:4 180:17 185:10 187:12 192:7 194:10 | | 121:6 121:9 121:11 121:13 121:13 121:20 |
| disallowed(1) 171:2 | | dividends(2) 124:17 184:24 | | 197:20 231:1 231:2 231:3 | | 121:21 121:25 132:14 139:9 141:10 160:28 |
| discharge(1) 92:10 | | division(1) 217:13 | | | | 175:7 176:6 176:17 182:9 182:22 197:12 |
| disclose(1) 141:10 | | divorced(1) 93:4 | | don't(64) 135:1 135:4 136:24 137:12 | | 197:13 197:17 198:3 204:19 205:9 206:15 |
| disclosed(1) 167:14 | | doctorate(1) 125:24 | | 138:17 139:5 144:9 144:14 145:21 148:18 | | 209:18 210:12 210:12 210:17 210:18 211:5 |
| disclosure(1) 27:6 | | doctrine(43) 81:6 123:17 126:8 126:8 | | 150:16 150:18 152:16 156:3 156:7 156:10 | | 218:3 218:21 219:3 221:12 221:15 223:21 |
| discover(1) 228:7 | | 126:16 154:9 154:10 154:16 154:19 154:2 | | 156:18 160:17 163:21 164:2 164:3 164:25 | | 224:18 224:19 229:2 229:25 230:17 230:18 |
| discovery(14) 18:11 20:25 28:18 28:18 | | 172:10 174:21 175:13 177:6 204:1 204:3 | | 165:23 166:6 166:24 167:7 169:6 169:20 | | 231:10 231:17 233:8 235:22 |
| 29:12 34:7 34:13 39:23 137:11 159:10 | | 206:2 206:22 206:25 208:17 211:13 213:5 | | 170:10 171:15 176:17 177:17 179:6 181:16 | | |
| 170:8 208:4 216:22 216:23 | | 218:7 218:8 218:17 218:23 219:2 222:17 | | 183:12 184:1 184:8 184:20 187:11 187:12 | | dwell(5) 60:1 68:6 165:24 166:24 199:2 |
| | | 223:24 223:24 224:12 226:6 226:17 226:21 | | 187:13 188:14 188:22 192:4 192:22 194:1 | | each(17) 17:13 53:15 89:11 111:25 119:7 |
| discredited(1) 84:8 | | 226:24 226:25 228:8 229:16 231:9 231:13 | | 194:25 195:18 195:25 196:14 197:17 | | 128:4 155:2 157:22 184:10 192:7 204:16 |
| discreet(1) 215:16 | | 233:24 235:14 236:15 | | 198:1 198:8 198:24 199:2 200:16 202:1 | | 204:18 204:20 207:10 222:10 233:12 |
| discretion(8) 19:5 19:10 20:10 20:13 | | | | 202:3 208:1 209:10 213:16 218:21 226:3 | | 233:23 |
| 33:24 34:1 35:2 125:12 | | doctrines(3) 173:3 203:2 224:5 | | 230:22 | | earlier(15) 21:4 22:15 51:1 51:14 57:24 |
| | | document(9) 39:19 54:12 60:15 60:16 | | | | 59:25 61:22 62:9 120:21 138:25 144:8 |
| discretions(1) 101:4 | | 76:24 77:2 86:24 90:6 90:7 | | doolittle(3) 52:24 104:6 107:6 | | 145:14 146:17 167:6 169:2 |
| discrimination(1) 36:25 | | | | doors(1) 37:21 | | |
| discriminatory(1) 36:19 | | documents(7) 17:4 27:8 27:24 86:7 86:14 | | dorsey(1) 2:21 | | early(2) 101:22 169:19 |
| discuss(2) 100:1 155:17 | | 228:3 232:13 | | dot.com(2) 63:21 101:14 | | earmarked(3) 201:13 202:2 202:3 |
| discussed(5) 9:7 19:18 50:4 119:25 229:15 | | | | double(1) 132:3 | | earmarking(2) 201:17 201:18 |
| discusses(3) 82:22 93:1 112:14 | | does(37) 11:3 36:13 43:1 55:1 55:7 55:8 | | doubt(2) 154:13 181:3 | | ears(1) 190:9 |
| discussing(4) 10:8 88:19 93:24 119:8 | | 55:9 55:16 57:19 58:24 70:1 73:5 75:22 | | doubtful(7) 64:5 100:8 100:12 100:25 | | ease(1) 51:1 |
| discussion(4) 11:14 70:24 71:15 128:7 | | 94:23 117:6 127:5 130:8 136:15 154:6 | | 101:5 113:4 165:1 | | easily(3) 60:20 150:18 170:13 |
| discussions(1) 26:22 | | 155:6 170:18 172:9 172:19 174:20 175:14 | | | | easy(3) 143:25 157:21 174:8 |
| dishonest(22) 49:1 158:1 160:19 160:21 | | 175:22 176:22 177:5 177:6 177:11 182:5 | | down(14) 36:20 36:24 102:21 105:14 | | ec2a(1) 2:42 |
| 161:15 161:18 162:4 162:6 163:10 163:17 | | 184:22 189:18 190:3 190:5 190:7 200:23 | | 147:10 147:10 147:12 152:21 165:22 171: | | economic(6) 13:9 64:23 64:24 68:24 69:6 |
| 165:18 189:15 190:24 191:7 195:24 200:1 | | | | 182:21 182:21 201:21 217:15 | | 130:7 |
| 200:20 221:12 221:15 230:21 230:23 | | doesn't(30) 11:5 11:6 16:17 20:3 22:8 | | | | |
| 236:16 | | 24:11 26:13 32:13 34:16 42:20 42:22 50: | | downs(1) 116:23 | | ecro(1) 1:41 |
| | | 52:4 54:17 54:20 56:6 56:25 61:1 61:11 | | downturn(1) 101:16 | | editors(1) 87:12 |
| dishonesty(9) 161:18 162:6 162:12 164:17 | | 63:25 64:2 65:23 83:1 83:2 97:19 109:12 | | draconian(1) 129:7 | | edwin(1) 2:22 |
| 189:18 189:19 189:21 190:3 230:24 | | 121:23 125:5 130:8 132:13 | | draft(1) 68:2 | | effect(10) 24:23 33:12 83:16 101:21 107:1 |
| | | | | drafted(2) 32:7 84:2 | | 116:8 117:10 170:17 194:22 232:17 |
| dismiss(31) 7:20 7:21 7:23 8:2 17:17 18:1 | | doesn't(32) 134:20 137:8 143:13 146:13 | | dramatic(2) 13:16 101:16 | | |
| 18:8 18:9 19:18 30:20 30:21 35:10 39:14 | | 146:13 152:8 152:11 152:23 153:2 153:2 | | dramatically(1) 101:14 | | effective(1) 34:10 |
| 39:21 63:3 135:15 136:1 137:1 137:14 | | 153:23 154:19 156:19 162:20 163:9 166:1 | | draw(3) 21:24 116:23 174:9 | | effectively(6) 73:16 108:5 115:9 227:14 |
| 137:20 139:17 178:11 178:17 181:7 212:2 | | 169:7 182:4 187:22 191:12 198:19 201:7 | | draw-downs(3) 151:23 151:25 152:2 | | 228:10 228:17 |
| 224:17 226:4 227:23 230:7 230:11 235:8 | | 202:7 206:13 222:20 223:19 223:24 224:2 | | drawing(1) 205:11 | | |
| | | 225:10 226:7 236:1 237:11 | | drawn(2) 75:10 204:15 | | effects(2) 26:17 113:19 |
| dismissal(2) 131:25 203:8 | | | | draws(1) 231:16 | | effectuate(1) 192:12 |
| dismissed(9) 17:11 18:13 23:10 64:20 | | doing(26) 40:18 46:20 46:21 50:20 51:16 | | drink(1) 31:10 | | efficient(3) 20:24 34:10 34:18 |
| 139:10 157:20 170:25 188:21 202:9 | | 52:15 53:8 53:9 58:20 58:21 62:5 64:25 | | drinks(1) 241:9 | | effort(3) 24:21 115:3 175:25 |
| | | 74:14 74:16 76:8 80:1 91:23 142:10 | | driving(2) 57:12 110:3 | | efforts(4) 27:20 101:17 116:1 116:8 |
| dismissing(2) 129:4 182:5 | | 143:19 146:25 165:5 167:10 178:7 198:8 | | dropped(2) 101:13 232:4 | | eguchi(1) 3:35 |
| disparity(1) 125:19 | | 198:14 239:10 | | dry(1) 74:23 | | either(17) 10:21 15:24 25:2 82:16 117:16 |
| dispense(2) 135:11 192:23 | | | | dual(3) 104:9 107:8 108:14 | | 119:22 132:19 168:4 170:4 172:9 175:4 |
| dispose(2) 45:4 95:2 | | dollar(3) 149:23 159:21 193:5 | | ductain(1) 70:23 | | 182:20 200:11 205:9 215:10 216:19 223:2 |
| disposed(1) 121:6 | | dollars(6) 18:6 26:11 149:22 159:18 168:9 | | due(4) 43:11 63:10 83:20 144:24 | | |
| disposes(1) 45:3 | | 201:12 | | dumped(1) 193:18 | | elected(1) 58:1 |
| dispositive(5) 47:12 66:5 96:22 97:4 | | | | duplicative(1) 8:3 | | election(1) 58:3 |
| dispute(24) 10:19 13:7 19:4 28:14 28:21 | | dominance(1) 76:9 | | during(15) 21:4 47:4 113:6 116:20 131:15 | | electronic(4) 1:50 27:24 105:15 241:16 |
| 32:24 39:25 61:19 65:24 66:13 69:5 71:12 | | dominated(6) 72:13 73:15 99:4 108:11 | | 135:19 136:2 145:13 149:22 152:5 159:23 | | element(11) 154:14 160:10 161:18 162:6 |
| 119:20 120:1 120:6 124:1 161:17 171:21 | | 153:8 200:2 | | 181:2 201:21 212:9 233:4 | | 174:24 176:23 181:14 181:15 199:6 205:8 |
| 171:22 172:11 176:22 191:12 208:24 229: | | | | | | 226:7 |
| | | dominating(1) 153:15 | | duties(45) 8:15 12:5 12:9 14:24 25:18 | | elements(22) 15:24 21:9 21:17 24:3 25:22 |
| disputed(6) 25:25 26:10 33:3 121:12 | | domination(41) 41:23 72:22 72:24 74:9 | | 61:11 61:21 67:24 67:25 68:3 68:11 79:1 | | 31:7 35:17 56:1 56:2 56:4 71:12 |
| 239:24 240:10 | | 74:21 75:5 77:10 140:18 154:23 155:6 | | 81:8 81:16 95:4 95:23 112:2 112:10 120: | | 80:13 112:24 119:7 124:25 127:22 128:8 |
| | | 155:8 155:10 155:14 226:10 | | 120:3 120:7 120:10 120:13 120:23 121:1 | | 129:9 171:24 184:4 219:4 |
| disputes(1) 131:4 | | | | 122:25 123:14 141:12 141:21 156:17 176: | | |
| disputing(1) 203:10 | | don't(58) 9:13 12:2 12:18 14:9 14:14 14:24 | | 176:7 181:19 181:24 185:8 185:12 196:16 | | eliminate(1) 21:10 |
| disregard(2) 21:14 21:15 | | 22:14 31:25 32:19 32:24 32:25 34:21 | | 200:3 204:19 204:23 205:16 205:19 205:1 | | eliminates(1) 162:16 |
| disregarded(1) 208:2 | | 34:22 38:20 39:20 44:3 55:2 56:3 60:1 | | 209:12 230:10 | | elkin(1) 218:11 |
| dissimilar(2) 67:13 68:22 | | 60:1 60:4 61:20 63:5 69:14 70:2 74:13 | | | | ellipsis(1) 224:16 |
| distinct(2) 67:5 68:7 | | 77:7 78:4 79:25 82:4 82:16 82:17 86:14 | | | | else(6) 37:3 132:4 156:22 157:2 160:3 |
| distinction(16) 74:2 75:10 76:3 77:8 93:6 | | 87:21 87:24 88:3 88:7 91:2 91:11 98:6 | | | | elsewhere(3) 53:4 76:12 220:18 |
| 93:15 176:20 187:22 230:6 230:17 230:25 | | 90:11 106:14 106:15 107:8 107:20 110:17 | | | | else's(1) 191:5 |
| 231:5 231:15 231:19 236:10 236:13 | | 110:18 111:3 111:7 119:22 120:23 122:7 | | | | emails(1) 27:24 |
| | | 124:14 128:18 132:20 133:4 133:9 133:17 | | | | emanated(1) 36:20 |
| distinctions(2) 49:17 228:13 | | | | | | emblematic(1) 152:8 |
| distinguish(4) 96:4 175:23 176:1 221:4 | | | | | | embodied(1) 211:19 |
| distinguishabk(1) 220:6 | | | | | | |
| distinguished(1) 62:13 | | | | | | |

| Word | Page:Line |
|------|-----------|
| **emea(56)** | 2:19 25:25 26:2 26:15 27:22 38:3 38:13 39:12 41:6 41:21 42:9 42:25 43:5 43:7 52:13 57:16 73:9 102:15 102:18 108:9 113:23 115:6 115:18 129:11 129:14 133:5 146:2 148:12 166:14 175:17 178:4 187:10 190:19 192:25 193:16 194:18 204:8 206:3 206:12 206:16 207:1 207:25 208:3 211:5 211:10 214:19 215:5 217:22 218:5 218:21 219:8 219:20 219:21 235:2 236:23 |
| **emea's(7)** | 20:5 20:23 26:12 26:19 72:9 73:3 73:5 |
| **emea's(5)** | 203:4 203:9 207:8 208:11 211:3 |
| **emergency(1)** | 78:13 |
| **employ(1)** | 135:8 |
| **employee(6)** | 57:11 57:20 145:23 146:1 146:8 224:14 |
| **employees(3)** | 109:21 117:15 176:15 |
| **employers(1)** | 174:18 |
| **empty(1)** | 170:9 |
| **enable(3)** | 32:9 115:5 116:23 |
| **enacted(1)** | 68:3 |
| **encompasses(1)** | 187:20 |
| **encourage(2)** | 119:12 240:12 |
| **encouraging(1)** | 175:4 |
| **end(13)** | 7:1 12:6 17:14 33:23 49:12 64:19 65:21 165:6 165:8 221:19 221:22 228:7 233:12 |
| **ended(2)** | 152:6 201:23 |
| **enforced(1)** | 184:16 |
| **engage(7)** | 23:15 29:25 141:23 162:17 178:7 200:18 225:16 |
| **engaged(9)** | 38:8 79:6 141:2 145:18 176:23 177:10 183:6 225:14 231:18 |
| **engaging(1)** | 106:18 |
| **england(29)** | 14:9 14:25 41:21 42:10 42:15 42:25 43:6 43:8 66:7 66:8 66:19 66:22 67:20 67:22 83:22 85:9 85:23 87:6 87:8 131:12 136:8 137:6 161:20 167:1 181:7 226:23 227:4 229:18 237:25 |
| **english(118)** | 10:19 10:20 11:1 11:4 11:10 11:12 12:1 12:11 12:17 12:19 12:20 12:22 12:22 13:6 13:7 13:12 13:17 13:19 13:22 14:10 14:17 15:2 46:14 46:23 47:7 47:14 48:13 49:15 49:17 50:7 53:10 62:16 62:21 63:1 63:7 63:12 64:21 65:2 65:3 65:9 67:10 67:14 68:18 68:21 70:11 80:21 80:24 81:2 81:9 81:10 82:6 82:23 85:4 85:12 85:21 86:2 89:3 90:11 90:15 94:20 96:17 97:7 97:14 98:13 99:20 100:4 100:6 100:20 111:10 121:10 122:6 122:9 122:12 122:16 122:19 123:22 123:24 134:9 134:11 137:14 140:8 141:14 155:4 158:16 161:14 161:17 161:22 161:23 162:1 165:23 167:19 173:9 173:15 180:7 181:3 186:4 186:5 186:11 189:15 189:22 197:11 205:20 209:22 210:1 210:10 210:22 211:14 227:15 230:13 231:8 231:12 231:14 236:16 237:24 |
| **engraft(2)** | 213:2 214:12 |
| **enhancements(1)** | 21:16 |
| **enjoy(1)** | 133:22 |
| **enjoyed(1)** | 7:11 |
| **enormous(4)** | 16:23 18:6 18:11 18:11 |
| **enough(33)** | 22:3 23:22 23:22 31:6 35:1 36:15 46:22 48:20 56:2 67:21 74:8 75:4 83:6 119:1 133:22 139:1 140:8 140:17 140:17 145:7 148:21 150:16 156:10 159:1 167:1 167:5 177:1 178:17 189:11 189:12 191:8 196:10 196:11 |
| **enriched(1)** | 168:20 |
| **enrichment(8)** | 158:21 160:7 160:11 167:16 168:10 168:13 168:23 192:19 |
| **enrolls(1)** | 211:8 |
| **ensuring(1)** | 101:21 |
| **entail(2)** | 189:13 191:2 |
| **enter(4)** | 33:24 43:25 105:7 183:25 |
| **entered(7)** | 33:20 76:25 105:20 113:9 120:16 216:20 234:16 |
| **enterprise(1)** | 168:7 |
| **entire(8)** | 9:17 9:17 99:25 113:6 143:12 149:13 154:14 197:18 |
| **entirely(9)** | 16:1 41:2 77:6 174:15 176:13 176:20 177:12 225:2 234:24 |
| **entirety(4)** | 164:5 165:18 169:10 215:14 |
| **entities(44)** | 8:14 10:4 10:5 13:10 16:4 16:25 17:3 19:7 23:1 25:25 26:15 38:8 39:12 41:6 51:22 53:11 54:17 76:6 103:1 103:14 104:6 105:2 105:7 106:18 108:6 108:18 108:24 112:17 112:19 112:22 113:21 113:23 115:19 147:24 160:13 187:11 190:19 191:18 191:25 192:7 192:25 225:25 234:21 |
| **entitled(10)** | 35:7 35:14 35:19 87:1 102:12 151:16 182:8 185:11 194:20 225:22 |
| **entity(9)** | 15:6 54:5 71:14 79:18 79:19 95:25 99:11 168:7 229:17 |
| **entry(1)** | 215:25 |
| **enumerated(1)** | 111:21 |
| **episode(1)** | 155:5 |
| **equal(12)** | 11:21 30:15 46:25 96:23 96:25 108:2 120:24 142:6 142:23 204:6 209:4 226:14 |
| **equally(3)** | 66:2 187:18 234:8 |
| **equitable(3)** | 232:25 237:7 237:14 |
| **equities(1)** | 30:14 |
| **equity(1)** | 79:16 |
| **equivalent(2)** | 189:24 199:14 |
| **ernst(2)** | 3:42 3:42 |
| **eroded(1)** | 93:7 |
| **escape(2)** | 15:19 22:16 |
| **escrow(1)** | 201:15 |
| **especially(1)** | 219:18 |
| **esp(48)** | 1:25 1:26 1:33 1:34 1:35 1:36 2:2 2:7 2:13 2:21 2:22 2:29 2:30 2:31 2:38 2:39 2:46 3:5 3:11 3:28 3:33 3:35 3:39 3:43 3:47 3:50 4:5 4:9 4:15 4:19 4:20 4:24 4:28 4:32 4:37 4:41 4:45 4:50 5:6 5:10 5:14 5:18 5:22 5:27 5:32 5:36 5:42 5:46 |
| **essence(1)** | 93:23 |
| **essential(1)** | 132:11 |
| **essentially(10)** | 14:23 37:14 49:11 94:15 122:4 125:25 134:15 160:16 169:9 229:19 |
| **establish(3)** | 98:15 119:7 192:2 |
| **established(5)** | 100:6 116:12 178:9 178:14 187:5 |
| **establishes(1)** | 90:15 |
| **establishment(1)** | 116:21 |
| **estate(1)** | 6:15 |
| **estates(1)** | 131:24 |
| **estoppel(16)** | 10:9 40:19 40:23 40:23 44:16 44:18 44:21 45:2 54:14 73:20 128:10 128:16 128:24 130:21 132:6 161:9 |
| **euro(1)** | 130:4 |
| **europe(2)** | 57:8 146:3 |
| **european(9)** | 8:13 10:1 10:4 16:22 16:25 17:3 23:1 129:18 160:13 |
| **euros(2)** | 74:12 74:19 |
| **evaluation(1)** | 93:19 |
| **evaporated(1)** | 142:1 |
| **evasive(2)** | 84:18 84:22 |
| **even(71)** | 12:7 15:24 22:14 22:24 23:3 27:23 32:19 43:1 44:4 44:9 46:9 47:18 47:20 48:10 48:17 48:24 49:6 49:10 50:19 52:13 55:16 56:3 59:21 60:4 61:9 63:2 63:5 63:20 68:13 76:7 76:11 76:18 79:3 84:20 87:16 87:25 88:2 91:5 91:6 107:17 113:6 120:25 132:12 137:6 137:11 145:22 147:15 148:19 155:13 164:21 165:4 166:1 169:20 169:22 170:10 173:9 187:13 194:16 194:19 194:20 205:7 206:6 215:11 216:15 218:16 234:12 234:13 234:21 236:12 237:4 239:9 |
| **event(7)** | 28:16 163:1 172:13 172:13 172:17 177:1 177:8 |
| **events(3)** | 37:3 37:22 109:8 |
| **eventually(1)** | 168:18 |
| **ever(20)** | 10:17 10:20 11:4 11:13 14:4 14:7 48:25 60:10 64:22 68:3 69:5 73:3 137:11 152:14 154:16 175:9 195:12 237:13 238:1 238:15 |
| **every(10)** | 17:14 25:15 52:12 53:21 79:24 113:3 146:5 153:19 193:5 193:5 |
| **everybody(3)** | 22:8 67:1 148:24 |
| **everyone(10)** | 6:3 52:13 78:11 80:2 90:23 133:23 134:2 179:24 213:23 240:23 |
| **everything(5)** | 7:2 65:25 119:23 124:24 157:2 |
| **everywhere(2)** | 162:25 162:25 |
| **evidence(11)** | 32:16 33:1 33:10 35:8 37:6 82:14 95:25 120:17 180:24 181:1 208:11 |
| **evidentiary(3)** | 130:16 130:18 208:5 |
| **evolution(1)** | 172:18 |
| **evolved(1)** | 173:4 |
| **evolving(1)** | 121:24 |
| **exact(3)** | 13:1 138:24 200:5 |
| **exactly(9)** | 73:21 85:5 93:24 123:12 143:7 150:10 169:2 185:14 186:8 |
| **examine(2)** | 38:7 98:13 |
| **examined(1)** | 28:3 |
| **examining(1)** | 82:3 |
| **example(5)** | 13:6 75:11 115:21 208:18 212:25 |
| **exceed(1)** | 63:11 |
| **exceeding(1)** | 144:22 |
| **excellent(4)** | 136:21 238:10 241:5 241:8 |
| **except(3)** | 19:14 61:21 68:19 |
| **excepting(1)** | 220:9 |
| **exception(27)** | 8:16 62:21 125:14 206:21 207:2 207:3 207:18 210:4 210:7 210:23 210:24 220:5 223:18 223:18 223:22 224:2 224:23 225:6 226:2 229:20 230:1 230:5 234:5 234:8 234:12 235:3 235:6 |
| **excerpts(2)** | 86:1 91:12 |
| **excess(1)** | 114:10 |
| **exchange(1)** | 2:40 |
| **exchanges(3)** | 27:8 27:8 28:20 |
| **exclude(1)** | 123:17 |
| **excluded(1)** | 107:17 |
| **exclusive(3)** | 93:14 96:6 96:16 |
| **exclusively(1)** | 48:15 |
| **excuse(14)** | 9:8 14:19 43:12 43:13 52:25 58:9 66:19 69:9 87:11 115:18 158:24 159:12 159:19 161:3 |
| **execution(2)** | 101:21 236:22 |
| **exercise(12)** | 19:9 20:10 27:9 33:24 35:2 67:17 79:7 92:9 123:18 143:2 167:22 176:24 |
| **exercised(8)** | 26:20 47:1 83:13 94:11 97:1 127:1 132:9 227:19 |
| **exercising(5)** | 20:13 26:19 96:12 101:3 145:16 |
| **exert(1)** | 153:17 |
| **exerted(6)** | 76:2 76:2 76:9 103:14 126:22 145:9 |
| **exhaustively(1)** | 6:23 |
| **exhibit(2)** | 59:19 98:22 |
| **exhibits(1)** | 85:22 |
| **exist(3)** | 61:1 121:22 124:4 |
| **existent(1)** | 9:13 |
| **existing(3)** | 10:16 68:5 97:21 |
| **exists(2)** | 70:19 172:25 |
| **expand(9)** | 10:16 13:7 13:14 24:22 24:24 49:15 65:3 99:9 206:24 |
| **expanded(3)** | 23:7 65:7 99:8 |
| **expanding(3)** | 13:13 13:13 178:8 |
| **expansion(3)** | 13:17 15:6 17:9 142:3 235:6 |
| **expectation(1)** | 82:15 |
| **expected(1)** | 231:12 |
| **expedite(1)** | 20:14 |
| **expenditure(1)** | 20:21 |
| **expense(1)** | 112:19 |
| **experience(1)** | 21:24 |
| **expert(41)** | 11:2 13:12 15:8 45:18 49:25 53:10 62:22 65:2 70:25 71:4 71:24 72:10 73:3 73:6 83:14 87:11 125:20 125:24 126:3 126:5 134:9 135:9 135:19 136:1 136:24 140:11 140:15 141:5 142:2 153:17 153:23 154:19 154:21 158:19 162:10 167:23 178:4 180:7 199:20 210:15 230:13 |
| **expert's(3)** | 24:1 91:10 120:19 |
| **expertise(1)** | 153:21 |
| **experts(35)** | 24:3 50:2 61:19 64:22 68:25 71:19 79:4 79:24 81:9 82:23 83:18 85:1 88:1 97:13 99:19 122:4 122:11 123:23 125:20 126:19 126:22 127:3 127:20 158:16 161:17 161:17 172:3 185:24 188:11 189:16 210:14 227:6 |
| **expert's(1)** | 146:13 |
| **expiration(1)** | 217:4 |
| **explain(3)** | 21:11 41:9 84:17 |
| **explained(5)** | 103:24 111:8 117:23 118:21 197:3 |
| **explaining(1)** | 77:2 |
| **exploring(1)** | 60:17 |
| **exposed(1)** | 20:20 |
| **express(1)** | 182:20 |
| **expressed(5)** | 26:2 72:22 88:22 112:11 140:15 |
| **expressly(4)** | 32:2 34:3 73:14 111:6 |
| **extended(2)** | 215:16 217:4 |
| **extending(1)** | 178:8 |
| **extension(3)** | 93:16 97:20 97:22 |
| **extensive(2)** | 79:7 88:6 |
| **extent(14)** | 16:7 45:5 156:8 163:2 163:7 170:2 170:4 170:6 170:14 209:2 212:8 217:9 231:14 236:21 |
| **exterpe(1)** | 235:13 |
| **extra(3)** | 98:22 101:25 125:23 |
| **extraction(2)** | 118:6 118:8 |
| **extraordinary(1)** | 64:10 |
| **extreme(1)** | 239:9 |
| **extremely(1)** | 27:1 |
| **eyes(1)** | 190:8 |
| **face(10)** | 8:11 19:15 34:19 36:5 197:21 198:2 203:9 226:14 235:10 240:1 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

faced(1) 73:7
facie(1) 32:15
facilitated(1) 113:24
facilitation(1) 114:1
facilities(16) 43:5 58:8 108:17 108:22
108:25 109:17 111:16 112:6 116:5 116:11
116:20 116:11 116:25 117:13 147:21 215:

facility(7) 59:5 59:16 103:1 116:11 116:11
116:22 201:20

fact(89) 9:17 12:25 14:6 16:6 17:6 18:5
19:17 19:22 25:4 26:13 30:21 32:17 36:1
36:22 38:12 44:1 44:10 46:17 46:19 51:15
56:24 64:11 64:12 66:17 71:2 71:7 71:23
74:10 84:8 84:20 91:21 94:13 96:8 97:13
100:22 102:3 109:9 109:13 111:24 127:18
129:12 130:6 131:17 132:11 135:23 137:7
137:16 140:5 143:11 150:6 150:23 151:12
151:15 153:9 154:11 154:21 154:24 155:2
156:21 156:22 162:16 162:20 163:9 167:
169:8 169:15 180:15 181:14 181:19 186:1
192:4 197:18 199:4 201:6 204:21 206:20
207:9 208:20 223:5 229:5 229:15 230:14
230:16 232:11 232:18 236:19 239:17
239:23 240:10

facto(118) 10:21 11:15 11:17 14:4 14:7
14:19 14:21 45:25 46:12 46:15 46:17
46:19 47:15 47:18 48:10 48:16 48:21 49:
49:7 50:7 55:22 60:8 66:3 66:20 66:24
66:25 68:7 68:10 71:14 71:16 71:18 71:20
72:2 72:8 72:11 72:13 72:20 73:4 74:4
74:22 75:21 80:19 80:20 81:1 81:7 81:11
81:14 81:15 84:10 84:14 85:3 85:7 90:8
90:17 91:16 92:25 93:2 93:4 93:6 93:12
93:16 94:23 95:17 96:4 96:11 97:9 97:15
98:16 105:23 108:1 108:2 110:20 110:22
111:9 120:5 120:16 122:24 123:2 123:9
123:13 125:1 125:8 126:15 127:2 127:4
127:6 127:8 127:10 127:16 127:24 136:25
137:14 140:1 141:2 141:14 146:7 146:8
148:21 149:4 149:6 152:15 155:6 155:11
181:15 181:17 181:18 181:25 182:5 182:7
183:9 183:20 205:9 205:16 205:18 206:11
209:16 211:2 237:25

factor(9) 11:11 47:8 47:10 81:19 94:9
96:22 97:24 121:11 230:11

factors(18) 46:14 50:2 81:20 81:21 91:25
94:7 96:15 96:17 96:19 97:3 98:1 130:24
131:5 137:8 140:4 142:4 142:5 183:14

facts(56) 12:14 12:18 16:20 23:3 25:24
27:14 27:22 28:5 29:8 33:2 33:3 34:24
36:8 37:2 42:2 44:25 50:19 55:10 63:6
66:1 79:5 92:3 97:21 98:1 98:14 101:11
106:15 111:4 119:11 119:21 120:17 125:8
127:23 137:9 139:3 149:1 149:2 154:25
159:6 184:11 188:25 189:11 191:15 192:2
197:5 197:13 203:10 203:15 208:24 209:
227:13 227:14 227:17 228:13 228:14 235:

factual(34) 9:21 19:13 21:16 30:24 31:2
32:25 35:10 36:3 36:2 44:22 53:13 53:16
82:4 86:3 86:7 92:15 95:17 97:5 101:8
102:2 102:9 105:22 110:10 114:22 118:13
119:2 120:18 159:6 182:25 220:7 226:2
226:5 226:15 240:21

factually(3) 48:4 77:13 99:13
fail(9) 8:7 12:8 17:25 18:4 18:9 18:12
160:22 163:24 209:23

failed(10) 22:22 26:18 62:25 84:17 163:10
176:18 182:1 201:1 207:21 238:6

failing(3) 84:10 101:1 181:25
fails(5) 157:20 160:7 165:19 165:25 170:9

failure(3) 66:1 161:2 228:6
fair(4) 132:24 133:7 183:18 208:20
fairness(3) 34:14 134:25 150:17
faith(12) 23:23 30:18 37:4 37:12 111:5
129:1 131:14 131:16 131:17 143:25 239:7
239:14

fall(2) 63:10 77:9
falls(1) 177:20
false(2) 228:3 228:3
familiar(3) 16:20 21:21 213:10
famous(2) 47:16 141:7
fangled(1) 15:7
far(8) 27:16 35:3 77:9 86:14 165:2 177:20
197:8 229:9

farnin(1) 218:11
farr(3) 3:10 3:32
fascinating(1) 24:2
fashion(4) 36:12 36:13 147:15 148:19
fast(2) 40:24 129:2
fatal(3) 63:1 168:23 234:9
fault(26) 154:14 171:25 172:12 172:21
172:22 173:11 173:13 174:15 174:14 174:23
175:1 175:3 175:9 185:23 185:25 186:2
186:5 186:10 186:15 186:16 186:18 186:1
187:1 187:14 196:6 208:10

faut(2) 173:7 173:10
favorable(1) 35:12
favorite(1) 12:16
faysha(2) 99:19 99:23
features(1) 67:5
february(2) 152:1 171:19
federal(6) 19:12 20:15 178:5 219:11
219:16 219:18

feld(1) 70:7
fellow(1) 97:16
few(15) 33:21 72:16 79:20 91:12 106:13
114:18 124:5 125:10 126:20 146:17 196:1
222:19 232:6 237:16 241:9

fiduciaries(2) 30:11 44:16
fiduciary(62) 8:15 10:10 12:4 12:7 12:8
12:15 12:18 14:24 40:19 45:3 45:6 45:12
61:11 61:21 62:15 62:17 62:20 63:2 64:1
65:21 67:24 68:11 68:17 69:8 80:20 81:
95:1 95:11 96:2 120:3 120:7 120:10
120:13 120:23 121:1 121:6 122:25 139:9
141:10 160:22 161:2 176:7 196:15 197:12
197:13 197:17 198:3 200:3 204:19 205:19
206:14 206:14 206:23 209:12 210:12
210:18 218:3 218:20 219:3 224:18 224:18
234:5

field(2) 83:5 83:13
fife's(1) 67:14
fifteen(3) 69:21 78:1 78:4
fights(1) 122:8
figueroa(1) 2:47
figure(1) 183:19
figured(1) 227:15
figuring(1) 94:20
file(6) 32:22 35:17 39:19 39:20 194:21
195:6

filed(13) 13:3 13:5 29:2 33:8 39:12 39:15
39:24 86:23 86:24 186:11 195:9 216:18
222:18

filing(1) 32:17
filings(1) 128:20
final(2) 94:22 117:14
finally(7) 97:1 172:24 208:3 211:10
232:24 236:10 237:7

finance(1) 48:18
financial(9) 42:7 49:3 64:13 74:18 74:18
101:19 164:24 170:15 228:3

financing(1) 42:9

find(19) 40:12 48:21 58:23 119:13 121:23
139:13 148:25 149:12 173:10 188:24 197:
208:19 224:1 224:4 224:21 226:14 230:3
239:19 239:20

finding(10) 104:18 119:22 125:8 139:14
182:4 182:11 209:10 209:22 209:24 228:2

findings(2) 119:12 239:23
finds(1) 121:19
fine(12) 11:18 55:2 69:23 89:16 153:18
179:19 182:23 187:17 197:9 198:10 223:
233:15

finger(3) 2:12 16:13 51:14
finished(1) 132:14
firms(1) 153:20
first(62) 7:21 8:23 10:14 10:19 11:10
11:12 21:18 21:14 35:16 43:15 44:1 51:19
71:13 74:5 83:24 86:7 86:19 88:18 89:1
89:20 91:1 91:8 91:14 92:23 93:5 96:7
98:2 99:2 99:16 102:6 103:9 116:1 128:
134:13 142:12 151:14 152:22 155:7 156:8
160:20 161:23 162:5 168:11 174:24 176:1
180:6 185:16 192:23 194:6 203:23 204:1
206:6 208:11 212:1 212:17 218:7 219:10
219:22 222:17 228:14 232:7 236:20

fits(1) 181:13
five(6) 29:11 69:2 90:19 141:8 227:9
fixed(2) 95:16 195:7
flabbergasted(1) 186:3
flag(1) 195:23
flag-type(1) 162:18
flawed(1) 176:12
fleming-de(1) 4:14
floor(7) 1:28 2:24 2:48 69:12 202:12
238:9 238:11

flow(5) 63:9 63:9 100:3 100:17 196:20
flowed(5) 36:24 151:8 169:4 193:17 202:4
flowing(2) 150:25 151:8
flows(1) 193:25
focus(5) 65:25 129:15 168:10 222:24 238:
focused(3) 42:24 135:5 219:20
focuses(1) 58:1
focusing(1) 211:23
foisted(1) 106:3
follow(19) 14:10 14:14 17:14 18:25 31:20
55:11 60:18 67:10 69:3 77:3 83:2 94:23
122:16 124:2 125:13 125:16 141:13 173:1
221:5

followed(4) 55:9 75:15 83:7 233:2
following(4) 21:6 94:1 95:15 170:7
follows(4) 14:18 66:23 77:13 205:23
food(1) 130:4
footing(6) 11:21 46:25 96:23 96:25 142:6
142:23

footnote(2) 61:4 99:22
footwear(2) 99:20 99:23

for(301) 1:2 1:24 2:4 2:19 2:45 3:4 3:18
3:22 3:26 3:31 3:38 3:42 4:4 4:8 4:12
4:23 4:27 4:31 4:31 4:35 4:40 4:44 4:48 5:4
5:9 5:13 5:17 5:21 5:25 5:30 5:35 5:39
5:45 6:23 7:1 7:5 9:24 10:10 10:23 11:15
11:16 11:17 11:22 13:8 13:9 13:13 14:8
17:9 17:10 18:1 19:8 19:21 19:23 21:11
22:17 22:19 23:23 24:2 24:17 25:8 25:11
25:13 25:17 28:22 28:25 29:12 29:12
29:13 29:13 29:22 30:9 30:13 31:18 31:22
32:17 36:24 37:4 37:12 37:21 38:23 39:15
40:8 43:12 45:1 45:21 46:11 47:22 47:23
48:19 50:10 50:13 51:1 51:18 52:24 53:1
53:16 53:20 53:24 54:12 54:23 55:4 55:21
57:17 61:10 62:17 64:8 64:18 64:23 65:25
66:3 66:6 66:25 67:20 67:24 68:24 68:25
69:9 69:9 69:18 70:6 70:22 71:18 71:25
72:8 74:22 75:11 77:11 77:17 77:23 78:8
78:18 79:18 82:2 82:7 84:1 84:1 84:9
84:14 86:18 89:21 90:7 91:22 92:2 92:24
95:12 95:16 97:20 98:15 100:2 100:17
101:13 102:5 103:3 103:17 104:24 106:6
107:13 108:9 108:23 108:25 110:5 110:6
110:12 111:5 111:8 112:13 112:23 114:15
115:3 115:21 117:9 119:10 119:24 126:3
126:24 130:20 133:22 134:16 134:21 135:3
135:4 135:7 135:13 135:24 137:16 138:15
139:6 143:14 142:17 143:23 144:14 147:5
148:21 148:25 149:4 149:4 150:17 156:11
156:23 157:22 158:1 158:3 158:10 158:11
158:15 159:23 160:10 160:24 160:24
161:18 163:21 164:6 164:8 166:23 167:1
167:13 168:11 168:15 168:16 168:21
168:22 168:23 169:21 169:24 170:20
170:22 171:4 172:12 173:25 174:8 174:18
177:18 178:4 180:14 181:5 184:3 186:7
187:4 188:2 189:11 189:12 189:14 191:7
191:12 192:15 195:24 196:12 197:13
197:18 197:22 197:23 201:4 201:13 202:4
202:20 202:23 203:8 204:6 204:9 204:9
204:16 205:6 205:11 205:12 205:16 205:22
205:24 206:1 206:8 206:12 206:14 207:3
207:7 207:9 207:9 207:14 207:19 207:20
208:10 208:11 208:16 208:19 209:5 209:10
209:21 210:11 212:2 212:3 212:18 212:24
213:11 213:14 213:20 214:2 214:16 215:13
215:15 215:23 216:2 216:9 216:12 217:3

for(39) 217:7 217:22 218:3 218:19 220:24
221:14 222:20 223:20 225:2 225:11 225:18
225:19 225:23 226:9 226:25 227:11 228:6
228:9 230:8 231:10 233:7 233:11 235:2
235:11 235:20 236:2 236:16 237:13 237:21
238:7 239:7 239:10 239:15 239:17 240:3
240:9 240:15 240:24 241:4

force(4) 91:24 113:7 127:7 170:17
forced(5) 26:6 129:14 219:24 220:3 226:8
forces(2) 57:12 110:3
forcing(1) 20:15
foregoing(1) 241:15
foreign(32) 3:27 10:16 10:17 17:10 18:4
21:10 23:6 23:19 23:24 24:23 31:7 40:9
79:4 79:21 80:14 117:5 117:5 127:1
137:21 137:25 178:9 212:22 213:2 213:9
214:11 217:22 217:24 218:1 218:15 220:13
221:11 241:1

foreman(1) 163:20
foreseeable(1) 121:19
forget(1) 222:4
forgive(2) 163:6 213:13
forgotten(1) 99:12
form(8) 28:2 28:21 31:20 31:20 85:22
87:5 206:1 239:13

formally(1) 161:1
formed(1) 90:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **former**(1) 224:13 | | **from**(176) 6:12 6:14 7:14 8:20 9:25 12:10 18:16 20:17 23:1 23:3 23:4 25:24 26:2 28:8 30:17 36:20 41:7 41:20 43:5 49:18 51:12 52:25 59:5 55:10 55:11 64:6 67:13 71:5 73:19 77:4 78:9 78:25 80:3 80:14 81:2 81:5 82:10 86:1 91:14 91:17 91:18 92:15 93:4 95:7 99:8 99:13 100:25 101:6 102:14 102:15 102:17 102:25 103:4 103:7 103:18 104:12 104:19 104:21 105:9 106:1 106:12 107:17 108:11 109:9 109:14 112:13 113:23 114:1 114:13 115:5 115:6 115:13 115:17 115:18 115:18 116:6 117:5 118:7 119:17 121:14 123:4 123:17 130:3 131:5 131:17 134:1 134:23 136:9 141:7 141:19 142:10 142:20 145:17 147:3 148:23 151:4 151:5 151:8 151:11 151:17 151:23 151:24 152:6 153:3 156:2 156:21 156:21 158:16 159:8 159:18 159:25 166:20 167:21 168:4 169:4 170:2 170:15 173:9 174:10 175:24 175:24 177:10 178:1 178:8 179:23 183:6 187:10 187:15 190:18 191:9 191:15 192:2 192:25 198:11 198:18 201:14 201:23 202:4 202:21 203:9 204:3 204:15 205:11 205:23 207:9 208:23 210:13 211:24 213:2 216:4 216:12 219:15 220:7 220:9 221:4 227:1 228:9 228:9 229:9 230:17 231:9 231:10 232:12 232:21 234:18 234:19 235:10 235:17 236:3 236:3 236:10 236:13 236:22 236:24 236:25 241:16 | | **generally**(10) 6:11 42:8 63:20 83:3 106:7 125:16 145:2 152:9 207:18 219:15 | | **gore**(1) 87:10 |
| **forming**(1) 180:9 | | | | **generic**(1) 128:20 | | **got**(20) 14:20 19:19 44:13 46:18 51:2 58:13 62:5 98:24 110:23 112:22 133:6 145:4 145:5 145:9 150:2 150:11 150:14 152:2 155:5 211:24 |
| **forms**(2) 27:13 31:18 | | | | **get**(50) 13:25 14:1 15:10 17:23 18:13 22:21 26:21 29:14 29:14 30:1 31:2 44:11 46:7 65:9 69:18 70:14 71:22 73:12 80:23 90:25 102:11 123:9 136:24 137:10 137:15 142:1 147:2 149:3 150:14 152:10 152:13 154:12 154:13 154:17 157:23 157:24 161:5 161:8 161:25 162:3 163:12 163:21 167:20 188:23 191:2 200:12 215:20 230:3 230:11 241:6 | | |
| **formula**(2) 37:14 54:1 | | | | | | **gotten**(1) 186:24 |
| **formulaic**(1) 35:19 | | | | | | **gottlieb**(6) 1:32 4:12 4:41 7:14 135:6 202:21 |
| **formulate**(2) 91:19 167:12 | | | | | | |
| **formulation**(5) 72:10 95:13 172:12 172:15 172:17 | | | | | | **govern**(2) 208:13 219:6 |
| | | | | **gets**(8) 48:14 49:5 117:7 117:7 150:23 150:24 165:3 216:17 | | **governance**(9) 94:12 94:14 94:18 95:24 97:2 97:11 109:14 218:15 219:4 |
| **forth**(14) 8:6 13:2 31:19 45:23 61:15 67:25 72:6 101:11 141:18 163:23 177:3 211:6 232:2 232:22 | | | | **getting**(3) 33:13 143:18 221:22 | | |
| | | | | **giaum**(4) 134:14 134:16 134:21 134:25 | | **governed**(6) 125:11 138:5 169:14 208:14 218:23 233:25 |
| **fortunes**(1) 101:18 | | | | **gillian**(1) 84:2 | | |
| **forum**(6) 29:23 34:15 218:14 219:12 219:16 220:19 | | | | **gilstrob**(1) 177:25 | | **governing**(10) 8:8 54:12 94:6 95:6 95:9 123:21 136:17 214:14 216:8 217:24 |
| | | | | **ginger**(1) 1:41 | | |
| | | | | **give**(20) 12:19 12:21 13:6 43:20 74:8 76:10 83:16 83:22 88:1 91:9 122:6 122:12 126:5 128:19 140:24 168:20 176:11 194:1 195:11 227:10 | | **government**(2) 173:12 174:4 |
| **forward**(8) 28:17 31:8 34:7 38:19 38:21 38:24 216:4 216:12 | | | | | | **governs**(1) 212:5 |
| | | | | | | **grant**(1) 137:20 |
| | | **front**(5) 50:12 65:9 98:24 144:10 144:13 | | | | **grappling**(1) 48:5 |
| | | **fsd**(4) 170:12 170:21 170:22 170:25 195:4 | | **given**(21) 34:9 34:24 55:19 60:18 60:21 64:5 75:13 82:5 94:24 100:24 101:10 107:17 114:8 120:21 128:21 154:5 161:19 176:21 203:19 234:25 237:11 | | **gravity**(4) 24:17 40:11 52:1 99:12 |
| | | **full**(6) 12:6 17:2 61:2 64:8 89:5 89:15 | | | | **great**(2) 26:8 128:19 |
| **frame**(7) 32:6 61:12 61:20 62:11 62:13 120:13 120:25 | | **fully**(3) 87:19 101:3 109:24 | | | | **greater**(1) 85:10 |
| | | **function**(22) 16:9 42:24 43:3 46:1 51:9 51:10 52:6 52:14 52:16 105:12 105:14 108:5 108:11 118:23 144:2 145:18 146:16 147:5 148:21 167:10 184:10 197:2 | | **giver**(1) 82:16 | | **greatly**(1) 7:4 |
| | | | | **gives**(4) 82:25 117:8 126:12 225:25 | | **green**(4) 65:12 65:13 65:17 122:2 |
| | | | | **giving**(6) 91:22 96:9 99:3 174:2 198:11 198:17 | | **gross**(1) 1:19 |
| **framework**(2) 36:1 119:6 | | | | | | **ground**(12) 57:5 57:6 57:7 57:9 57:17 110:2 121:16 122:6 122:15 122:24 128:23 146:2 |
| **france**(20) 9:8 69:12 71:7 73:8 124:20 126:7 127:18 152:13 153:16 164:2 164:4 171:10 171:24 172:6 185:21 187:15 195:7 199:2 199:7 199:10 | | **functioning**(1) 107:24 | | | | **groundless**(1) 20:18 |
| | | **functions**(37) 11:18 26:20 41:9 42:9 42:24 53:4 53:7 53:9 57:4 57:15 75:4 81:6 81:18 85:7 85:13 88:20 88:20 88:24 89:3 90:4 92:10 93:23 96:20 103:16 106:21 111:19 111:21 123:19 141:3 141:23 148:1 180:13 180:14 184:3 184:7 197:4 198:14 | | **glad**(2) 56:1 181:10 | | **grounds**(3) 121:11 127:17 127:19 |
| | | | | **glencar**(3) 68:22 69:1 69:2 | | **group**(41) 2:45 10:21 14:6 42:9 49:8 49:10 51:10 52:6 56:23 58:18 58:22 63:19 64:24 99:7 99:19 99:25 101:15 101:22 102:4 102:16 103:11 103:14 103:15 103:15 109:18 109:22 113:5 114:12 115:19 118:16 121:22 143:23 145:10 145:10 145:13 176:19 191:25 198:12 198:14 198:18 198:18 |
| **frankly**(3) 118:25 135:2 135:3 | | | | **global**(23) 16:8 43:4 51:9 51:10 51:10 52:11 52:11 54:9 55:12 52:24 53:4 53:25 54:6 54:20 75:4 109:11 114:11 143:22 145:18 146:15 147:4 147:19 167:10 | | |
| **fraud**(19) 22:6 22:9 32:12 37:17 162:14 162:19 163:9 163:10 163:20 200:18 200:1 200:20 200:20 225:13 228:2 228:7 228:9 229:2 230:24 | | | | | | |
| | | | | **globally**(1) 33:7 | | **group's**(4) 51:20 99:18 101:19 103:13 |
| | | **fundamenta**(4) 4:35 4:36 23:5 79:16 193:18 201:15 | | **gloss**(2) 67:15 190:13 | | **groups**(1) 30:16 |
| | | | | **glossing**(1) 199:19 | | **gruszka**(1) 4:37 |
| | | | | **goes**(14) 12:16 18:25 61:12 92:4 93:14 94:13 101:16 108:22 119:1 153:7 164:18 174:16 193:20 193:23 | | **guess**(6) 56:4 70:8 86:6 156:1 175:16 203:24 |
| **fraud-based**(3) 162:17 162:20 163:17 | | **fungible**(3) 159:21 160:5 193:18 | | | | |
| **fraudulent**(6) 49:11 161:25 162:2 224:19 230:21 234:15 | | **funneled**(1) 25:24 | | **glad**... | | **guessing**(1) 12:10 |
| | | **funny**(1) 147:25 | | **going**(105) 6:13 6:26 9:11 11:14 12:3 12:12 18:20 18:23 20:2 21:9 22:20 23:18 28:3 29:15 30:1 34:13 34:21 36:23 38:16 39:5 39:16 40:23 42:1 42:17 44:11 45:13 49:20 49:21 50:10 50:24 51:2 53:25 54:1 54:19 56:10 58:4 60:6 64:14 65:25 68:14 69:11 70:1 71:13 71:15 72:7 74:17 88:7 91:9 96:10 100:1 102:11 102:14 102:21 107:1 114:4 130:17 132:19 132:22 133:1 133:10 133:13 133:13 137:2 144:3 144:6 144:16 145:12 146:6 147:17 147:23 148:4 148:5 151:3 154:8 154:8 155:17 157:3 157:4 165:11 168:18 170:3 171:4 174:6 176:14 178:25 184:12 185:15 194:14 196:15 196:19 196:20 198:17 199:7 210:1 211:6 211:10 211:11 212:7 213:15 214:24 221:21 222:1 239:8 240:18 240:24 | | **guidance**(4) 12:19 12:21 70:22 92:5 |
| **fraudulently**(1) 230:22 | | | | | | **guide**(1) 176:3 |
| **fred**(1) 2:7 | | **furniture**(1) 48:16 | | | | **guides**(1) 126:17 |
| **free**(12) 58:8 59:5 108:22 109:17 111:16 112:6 116:5 116:11 116:14 116:21 116:24 117:13 | | **further**(22) 6:17 15:15 23:9 28:23 29:9 34:13 34:25 78:5 79:12 100:2 101:9 111:1 144:4 117:1 118:5 137:12 152:1 170:7 190:11 206:24 223:9 235:5 | | | | **guiding**(2) 47:21 48:1 |
| | | | | | | **guilty**(1) 190:14 |
| **freemantle**(1) 43:2 | | | | | | **gump**(2) 2:5 70:7 |
| **french**(83) 8:4 8:5 15:5 15:11 69:19 70:15 70:16 70:17 70:22 71:4 71:10 71:11 71:15 72:7 73:2 73:5 74:2 74:4 74:9 74:11 74:22 75:9 75:19 76:10 77:11 77:15 124:22 124:24 124:25 125:9 125:10 126:2 126:3 126:8 126:11 126:15 126:16 127:11 127:13 127:21 153:16 153:22 153:24 154:15 155:3 155:5 155:6 155:7 171:16 171:17 171:21 172:18 173:3 173:6 173:7 173:12 173:19 174:4 175:8 175:17 176:14 177:4 177:21 178:3 178:10 178:12 178:15 178:17 185:15 185:19 186:9 186:12 186:1 186:16 186:17 186:23 187:16 187:22 199:13 199:16 199:22 212:25 237:24 | | **future**(1) 172:8 | | | | **guy**(1) 168:17 |
| | | **gain**(4) 29:17 30:8 109:14 131:20 | | | | **hack**(1) 32:23 |
| | | **gallagher**(2) 3:10 3:32 | | | | **had**(94) 6:9 8:12 10:2 12:7 14:1 17:2 19:18 23:25 26:18 28:6 33:6 33:6 33:8 36:21 38:5 38:15 42:11 42:12 48:11 49:8 51:9 52:23 54:13 63:21 80:15 83:5 86:17 87:23 88:2 88:2 89:23 94:9 95:6 95:9 96:6 97:19 101:21 104:23 105:1 106:16 106:23 108:9 113:10 113:19 116:2 118:4 127:15 127:19 131:8 131:10 134:19 136:22 143:21 143:25 147:8 147:25 155:16 156:10 160:2 165:7 166:1 166:9 184:19 185:13 186:7 186:11 192:4 192:8 193:19 193:24 194:18 197:11 208:1 209:21 209:24 220:5 220:11 220:19 222:22 223:12 228:1 228:2 228:10 229:21 231:21 232:5 232:17 233:24 234:9 236:4 237:3 237:17 238:13 238:15 |
| | | **games**(1) 174:6 | | | | |
| | | **gaston**(1) 219:14 | | | | |
| | | **gave**(5) 11:22 44:23 75:14 76:16 153:9 | | **good**(43) 6:3 6:5 6:6 6:19 6:20 6:21 23:11 23:12 23:13 23:23 30:18 34:9 37:4 37:12 39:4 43:12 56:2 67:2 69:16 69:16 69:17 70:13 77:23 98:25 111:5 131:14 133:23 134:2 142:3 142:15 143:25 145:4 153:17 190:4 202:14 202:16 202:17 213:14 215:9 239:7 239:14 241:8 241:9 | | |
| **frenchman**(1) 186:12 | | **gees**(1) 200:19 | | | | |
| **friday**(1) 6:2 | | **gemma**(12) 48:5 48:7 50:1 50:3 84:9 96:13 96:19 141:25 142:5 142:14 143:5 183:11 | | **goldman**(1) 5:9 | | **hadley**(1) 5:4 |
| **friedman**(1) 4:32 | | **general**(19) 28:25 36:20 51:21 63:18 87:12 100:23 103:11 115:1 147:12 162:21 164:5 173:21 176:6 184:2 185:19 187:3 187:4 204:24 219:11 | | **gone**(10) 33:12 69:8 128:6 147:3 164:12 165:15 193:16 210:4 225:12 225:14 | | **hadn't**(2) 180:17 185:10 |
| | | | | | | **halcyon**(2) 4:31 4:31 |
| | | | | | | **half**(3) 74:19 133:13 225:24 |
| | | **generalities**(1) 167:3 | | | | **hamilton**(3) 1:32 4:13 202:21 |
| | | **generality**(1) 91:25 | | | | |
| | | **generalized**(2) 75:2 75:9 | | | | |

| Word | Page:Line |
|---|---|
| **hampshire**(5) | 210:7  210:23  229:18  229:20  230:4 |
| **hand**(4) | 86:2  89:5  89:14  222:1 |
| **handed**(4) | 89:25  195:19  224:8  238:22 |
| **handing**(1) | 87:13 |
| **handled**(1) | 105:16 |
| **hands**(1) | 193:25 |
| **happen**(5) | 37:3  37:7  110:23  153:25  191:24 |
| **happened**(16) | 10:3  27:19  37:17  43:24  50:15  58:18  59:9  63:24  109:8  136:5  147:7  159:16  186:8  195:13  198:13  229:24 |
| **happening**(1) | 29:5 |
| **happens**(9) | 21:18  47:25  50:5  59:7  87:10  140:22  143:14  162:25  162:25 |
| **happy**(3) | 38:21  132:19  133:12 |
| **hard**(3) | 122:18  142:4  191:20 |
| **harm**(10) | 26:15  112:24  113:1  121:18  129:5  132:1  132:2  187:23  205:25  209:5 |
| **harmony**(1) | 34:16 |
| **harms**(1) | 199:21 |
| **haron**(1) | 2:22 |
| **harrisburg**(1) | 1:45 |
| **harsh**(1) | 132:1 |
| **has**(115) | 6:8  10:17  10:20  11:4  11:13  13:13  14:4  14:16  17:10  19:5  21:1  24:7  25:1  27:4  28:4  28:16  29:18  30:7  31:20  40:14  40:24  42:3  46:23  53:22  62:11  62:25  63:13  67:17  68:9  68:11  69:5  72:16  73:3  79:17  79:19  81:5  83:15  85:18  86:25  90:23  95:18  95:24  97:15  98:3  98:3  100:16  111:2  119:11  121:21  123:13  126:11  126:17  126:17  126:25  127:6  127:10  127:19  128:3  128:6  128:7  128:24  132:5  144:4  152:16  154:16  156:1  159:6  166:3  170:13  171:24  173:2  173:2  173:3  173:24  174:10  174:14  174:19  175:9  178:4  178:18  182:13  187:23  193:10  194:24  195:9  195:17  201:11  204:4  204:8  211:10  211:14  211:16  213:9  214:19  217:15  218:5  219:17  219:20  222:17  223:4  224:15  225:12  226:25  228:25  231:9  231:2  232:2  233:13  233:16  236:1  237:13  237:22  239:11  239:16 |
| **hasn't**(5) | 13:15  27:11  65:7  129:8  131:18 |
| **hasn't**(4) | 167:22  170:20  195:13  235:5 |
| **hat**(4) | 54:18  182:21  198:16  198:16 |
| **hats**(4) | 104:9  107:8  108:15  229:8 |
| **hauer**(1) | 70:7 |

| Word | Page:Line |
|---|---|
| **have**(301) | 6:22  7:1  7:19  9:14  12:8  14:2  14:20  16:21  16:22  17:4  17:5  17:12  18:24  19:25  20:7  22:19  22:20  22:20  23:9  23:21  24:11  25:20  26:11  26:16  26:16  26:17  26:25  27:14  27:20  29:3  29:15  30:19  31:20  34:1  36:11  36:16  37:4  38:2  38:5  38:11  38:14  38:15  41:14  44:16  46:14  47:14  47:15  47:25  48:8  48:24  49:7  49:10  50:22  51:19  53:22  53:23  54:5  54:25  57:19  60:20  63:4  63:15  64:17  64:20  64:22  65:5  69:8  69:15  71:8  72:11  73:25  75:4  75:5  75:16  76:14  78:15  77:12  77:22  78:5  78:13  78:15  79:1  79:18  79:20  79:22  81:17  81:18  82:4  82:5  82:17  82:17  83:10  84:17  85:3  85:10  85:20  85:25  86:25  88:11  88:25  89:5  89:21  90:21  91:2  92:2  93:25  94:10  94:20  96:4  98:22  99:15  100:6  100:6  103:9  105:21  106:8  106:18  107:1  107:22  108:13  109:5  109:13  110:17  110:18  111:3  111:3  111:4  111:6  112:21  114:18  116:3  116:4  116:8  117:16  118:10  120:23  120:24  122:2  122:4  124:4  124:11  125:5  126:6  127:8  127:23  127:25  126:25  127:4  126:7  127:8  127:23  127:25  130:1  130:24  131:5  131:13  132:9  132:13  133:4  133:4  133:5  134:24  135:7  135:25  136:24  137:9  137:10  137:14  139:16  140:16  141:22  143:8  143:8  143:11  143:18  143:19  143:20  143:25  144:10  144:14  146:7  146:17  146:18  146:18  149:6  149:9  149:9  150:16  150:17  150:18  154:1  154:1  154:2  154:24  152:2  156:1  156:10  156:16  156:17  157:11  158:10  158:16  158:22  158:25  159:10  159:17  159:18  160:18  160:24  161:15  162:3  162:13  163:5  164:23  166:3  167:24  170:11  171:3  173:20  176:21  179:18  180:25  181:3  181:16  182:18  183:7  183:24  184:2  184:4  184:6  184:8  185:3  186:24  187:11  187:12  187:13  188:11  188:14  191:5  191:17  191:2  191:25  192:5  192:8  193:16  193:23  194:17  194:18  194:19  194:19  195:22  195:25  196:1  196:9  196:25  197:2  198:1  199:17  199:23  199:24  200:16  200:24  202:9  207:4  207:13  207:15  208:21  213:4  213:19  214:25  215:5  216:5  220:13  220:17  221:2  221:18  221:20  221:11  221:14  222:23  225:16  226:18  228:6  238:10  238:19  239:7  239:19  239:20  240:18  240:22 |
| **have**(1) | 241:4 |
| **haven't**(10) | 12:5  32:17  34:9  40:4  68:13  86:13  88:2  88:2  122:9  125:7 |
| **haven't**(19) | 138:22  139:2  158:2  158:14  158:17  158:19  158:20  158:20  159:2  159:5  167:23  167:25  169:8  170:6  185:4  191:14  198:5  200:21  227:15 |
| **having**(7) | 33:22  64:2  79:6  123:4  130:9  229:9  238:21 |
| **he's**(10) | 49:21  56:22  56:24  85:7  92:1  93:24  94:7  95:7  125:22  125:25 |
| **head**(1) | 41:20 |
| **headed**(4) | 115:9  198:12  198:18  198:21 |
| **headlining**(1) | 211:24 |
| **headquartered**(2) | 24:19  223:6 |
| **headquarters**(3) | 129:16  130:25  131:12 |
| **hear**(14) | 6:26  11:14  12:10  45:14  70:24  86:18  88:10  154:4  181:11  186:3  188:20  193:6  210:13  223:7 |
| **heard**(12) | 7:20  40:8  40:10  40:14  77:13  78:24  138:9  140:9  140:12  201:5  208:11  213:9 |
| **hearing**(6) | 19:20  88:10  208:5  221:9  237:22  241:12 |

| Word | Page:Line |
|---|---|
| **hearings**(1) | 19:18 |
| **heart**(2) | 10:7  45:21 |
| **heavily**(3) | 103:22  108:11  146:10 |
| **heightened**(1) | 22:13 |
| **held**(23) | 14:4  14:7  17:24  47:2  48:9  48:10  49:2  60:10  65:5  66:3  73:3  92:24  96:21  121:21  127:10  142:18  152:14  164:7  167:1  206:21  218:10  228:8  229:21 |
| **help**(5) | 33:10  33:11  39:5  50:24  167:12 |
| **helped**(4) | 101:20  109:10  191:9  238:1 |
| **helpful**(2) | 47:13  158:14 |
| **her**(7) | 58:24  59:20  104:1  107:9  198:15  198:15  198:16 |
| **herbert**(2) | 2:36  3:27 |
| **here**(199) | 6:7  8:20  9:6  10:5  13:11  15:9  16:11  16:16  17:10  17:21  17:25  19:19  23:15  23:20  24:12  25:16  27:5  28:5  28:9  29:5  29:18  30:8  30:23  31:14  32:22  33:4  34:11  34:12  34:21  37:7  38:2  38:9  39:11  42:3  44:21  45:19  45:22  45:24  46:25  47:24  51:15  53:14  56:5  58:7  59:6  60:22  61:22  62:23  64:25  65:7  67:18  68:20  69:6  69:15  70:16  71:15  71:19  73:21  73:25  74:2  75:8  78:3  79:21  82:3  83:2  83:5  85:5  86:25  87:18  88:1  88:8  88:22  93:25  98:2  98:14  98:17  99:11  99:14  103:8  103:20  104:11  10:19  110:23  110:23  111:20  111:20  114:8  114:14  114:21  117:4  117:14  118:19  119:2  119:23  119:25  120:9  121:8  121:15  122:20  125:4  125:7  125:18  126:12  127:3  129:4  130:16  130:19  131:10  132:3  132:6  132:8  133:7  133:8  133:8  138:13  141:18  144:2  144:22  144:25  145:8  146:21  147:14  147:15  151:21  153:13  156:18  157:20  160:14  163:1  164:3  165:23  166:8  167:18  174:20  176:3  176:8  177:18  178:4  180:6  180:9  181:13  181:15  184:2  185:7  185:10  187:6  187:18  188:13  188:15  192:14  192:22  193:9  194:6  195:20  197:21  199:19  199:20  200:1  211:1  211:13  213:16  219:18  219:21  220:24  221:11  222:19  222:23  224:24  224:22  224:25  226:1  226:4  228:14  228:22  229:14  229:24  230:7  230:24  231:1  233:3  233:6  234:18  235:9  235:18  236:2  239:8  240:9  240:15  240:18  240:22 |
| **here's**(3) | 136:10  136:11  173:24 |
| **herring**(1) | 186:17 |
| **herself**(1) | 59:4 |
| **hesitant**(1) | 118:7 |
| **hesitate**(3) | 18:1  18:8  69:14 |
| **he's**(23) | 134:17  135:12  136:12  141:8  148:9  148:13  148:15  148:16  148:20  148:20  154:7  154:20  162:10  165:5  168:15  168:16  168:18  168:19  174:1  174:7  175:17  186:12  200:6 |
| **hierarchy**(1) | 70:16 |
| **high**(6) | 42:5  42:8  61:23  61:23  62:5  62:10 |
| **highest**(4) | 71:5  71:6  125:21  175:25 |
| **highlighted**(3) | 89:11  222:7  222:8 |
| **highlights**(2) | 222:9  222:10 |
| **highly**(10) | 51:21  76:5  92:15  101:8  120:18  174:11  181:4  182:25  226:2  240:9 |
| **hill**(2) | 3:28  220:25 |
| **him**(15) | 48:25  84:1  89:25  95:11  95:11  126:12  134:18  134:20  134:21  134:22  154:20  168:18  174:7  186:4  220:1 |
| **himself**(3) | 47:2  49:2  235:4 |
| **hired**(1) | 134:18 |

| Word | Page:Line |
|---|---|
| **his**(92) | 11:1  33:24  36:8  43:16  47:19  57:16  71:25  72:10  83:2  83:24  83:25  83:25  84:5  84:6  84:16  84:21  87:2  87:3  87:12  87:20  87:20  88:17  88:18  89:1  89:2  89:4  89:22  89:25  93:19  96:7  96:13  97:7  97:12  97:25  99:21  100:9  110:4  110:11  111:13  120:12  120:12  125:17  125:25  128:1  128:9  130:5  134:10  134:20  135:10  135:20  136:2  136:20  136:21  138:19  148:16  149:8  153:18  153:20  154:7  154:21  164:3  168:17  172:14  172:17  172:23  173:18  173:19  174:2  174:16  174:22  175:16  177:6  178:12  180:5  180:9  184:12  186:11  186:19  188:7  190:8  197:10  220:1  220:4  222:4  225:2  228:19  228:19  228:20  230:16  230:19  230:21  231:5  231:20 |
| **hit**(2) | 118:20  119:1 |
| **hits**(1) | 17:15 |
| **hmrc**(1) | 107:19 |
| **hoc**(1) | 5:4 |
| **hodara**(1) | 2:7 |
| **hold**(6) | 16:17  16:19  20:3  66:25  152:11  158:21 |
| **holders**(2) | 37:23  226:19 |
| **holding**(7) | 47:7  47:9  66:3  93:4  94:4  142:6  201:15 |
| **hole**(1) | 123:17 |
| **holland**(32) | 12:17  12:13  12:24  13:3  13:4  47:16  47:19  47:21  47:23  47:24  48:5  48:6  49:22  50:4  50:7  80:23  84:11  90:11  96:18  122:13  122:20  123:23  141:8  142:1  142:10  142:13  142:25  143:3  143:5  144:4  183:11  183:16 |
| **home**(1) | 59:4  59:6  208:19 |
| **hondo**(2) | 3:22  3:23 |
| **honest**(6) | 156:4  163:16  190:3  190:5  190:8  190:14 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| honor(242) 6:6 6:8 6:12 6:18 6:21 7:3 7:13 7:18 12:25 14:6 16:10 17:4 17:5 17:12 18:16 18:25 20:3 20:5 21:5 23:5 23:13 28:4 33:5 33:11 33:24 38:22 39:1 39:4 39:10 39:20 40:3 40:17 41:15 43:11 43:20 44:7 45:2 47:3 48:12 51:23 53:2 53:6 56:8 57:7 57:19 58:4 60:8 61:8 61:12 62:14 63:2 63:8 64:17 64:21 65:20 66:14 68:14 69:3 69:17 69:18 69:24 70:14 71:19 72:14 72:16 73:1 73:7 73:16 74:3 74:17 74:20 74:25 75:8 75:12 75:19 76:7 76:11 76:21 77:12 77:13 78:2 78:17 79:2 80:18 86:5 86:22 87:6 87:17 87:21 87:25 88:3 88:13 110:8 114:15 118:25 132:13 132:18 132:20 133:19 133:21 133:25 134:1 138:16 138:25 139:7 139:23 140:9 140:21 140:25 142:2 142:9 144:4 145:7 145:14 145:20 148:13 149:19 150:3 150:9 150:19 151:8 152:7 152:16 152:21 152:22 155:16 155:20 156:3 157:16 157:18 158:4 159:2 159:8 159:20 160:9 161:9 164:2 165:10 166:18 167:17 168:1 169:3 170:1 170:5 170:11 171:3 171:9 171:13 171:21 171:23 172:2 172:5 172:16 172:20 173:7 173:8 173:9 173:17 174:2 174:3 174:6 174:8 174:16 175:19 176:2 176:25 177:13 177:15 177:23 178:3 178:10 178:16 178:1 179:6 179:10 179:15 179:19 179:22 180:5 183:16 185:11 187:7 192:15 195:17 196:3 196:6 196:8 196:12 197:16 199:18 202:9 202:16 202:20 202:24 203:5 203:19 204:2 204:24 206:5 207:6 208:3 208:18 209:13 209:25 210:13 211:10 211:22 212:7 212:1 212:19 213:9 213:18 214:3 214:10 214:18 215:8 217:11 217:14 218:8 218:16 219:10 220:6 220:23 221:8 221:17 221:22 222:9 222:12 231:24 232:22 233:1 233:18 233:2 236:13 237:7 237:14 237:20 238:7 238:1 238:17 238:21 239:2 | honor's(2) 80:10 84:24 | i'll(22) 7:15 8:17 13:19 16:13 23:8 24:4 31:10 51:14 63:11 73:10 77:14 78:24 80:18 80:21 87:4 94:2 100:2 113:3 117:2 118:19 133:2 133:23 | impoverishment(1) 160:12 | information(11) 22:20 23:22 28:20 38:17 43:14 104:24 131:14 145:5 145:5 156:10 219:7 |
| | | | improper(5) 30:10 102:19 113:22 131:19 225:14 | |
| | | i'm(45) 6:23 6:25 6:26 7:8 7:14 9:11 12:10 16:24 18:23 23:18 38:23 40:22 43:17 45:12 49:20 54:19 56:1 56:10 58:4 59:9 59:11 59:12 59:13 65:25 68:14 69:16 70:1 70:24 71:24 72:17 74:17 83:11 83:11 88:4 88:10 91:9 91:22 95:7 97:10 123:8 128:14 132:18 132:19 133:3 133:12 | | informed(1) 147:8 |
| | | | improperly(3) 102:17 103:18 112:1 | infrequently(1) 178:5 |
| | | | impute(1) 228:19 | inherent(1) 24:11 |
| | | | imputed(2) 229:17 229:22 | inherently(1) 162:24 |
| | | | inadequacy(1) 178:11 | initial(2) 32:21 128:1 |
| | | | inadequate(1) 43:13 | initially(1) 186:3 |
| | | i've(8) 19:19 38:5 98:24 99:11 119:1 124:6 132:14 133:6 | inadmissible(1) 86:9 | initials(1) 58:16 |
| | | | inapplicable(1) 234:6 | initiative(2) 108:19 116:5 |
| | | idea(10) 24:8 92:1 110:5 127:5 130:2 149:25 156:17 181:10 223:23 240:4 | inappropriate(3) 35:25 86:20 135:25 | initiatives(6) 109:11 115:4 115:12 115:16 151:5 185:1 |
| | | | inc(4) 1:8 3:18 3:18 7:16 | |
| | | | incentive(1) 236:4 | innocent(5) 205:1 226:18 226:18 229:13 236:4 |
| | | identical(5) 73:25 75:1 132:7 177:18 | incidentally(3) 27:23 107:24 130:22 | |
| | | identifiable(1) 49:8 | include(11) 35:25 56:3 99:25 102:23 124:10 124:15 151:21 181:25 186:18 188:22 188:23 | inquiry(8) 72:3 97:5 120:18 208:7 208:10 209:3 209:8 226:2 |
| | | identified(3) 43:1 129:5 169:22 | | |
| | | identify(7) 94:15 108:20 115:4 147:1 147:1 147:4 201:1 | | inside(1) 27:12 |
| | | | included(1) 104:5 | insider(11) 206:7 206:7 206:16 206:17 206:19 223:18 223:24 224:15 224:21 234:5 236:4 |
| | | | includes(4) 81:3 118:14 122:23 186:14 | |
| | | identifying(2) 93:22 146:25 | including(17) 10:4 10:9 21:3 41:6 41:8 56:22 81:16 109:24 113:21 114:8 118:7 158:4 164:4 175:24 205:18 219:6 229:7 | |
| | | ignore(1) 206:7 | | insiders(1) 231:4 |
| | | ignored(3) 16:1 16:2 29:15 | inconsistencies(2) 129:10 130:18 | insider's(1) 223:25 |
| | | ignores(2) 177:7 206:18 | inconsistency(1) 41:10 | insisting(1) 237:17 |
| honor's(2) 80:10 84:24 | | illegal(1) 166:21 | inconsistent(14) 40:25 41:2 43:10 43:12 44:14 54:15 74:21 76:11 128:25 129:12 130:2 130:20 131:18 131:20 | insolvency(65) 62:16 62:25 63:1 63:4 63:5 63:5 63:8 63:13 63:17 64:3 64:6 64:8 64:17 99:17 99:24 99:24 100:2 100:3 100:8 100:17 100:21 100:22 100:25 101:6 102:4 102:5 118:18 138:20 138:21 138:23 138:23 139:2 139:2 139:6 139:13 139:17 139:17 144:20 144:20 144:24 153:17 153:19 161:4 161:6 164:18 164:18 164:19 164:20 164:22 164:22 165:2 165:17 181:2 181:14 182:3 182:4 183:2 183:8 183:8 197:12 198:4 198:4 224:20 231:16 231:17 |
| honorable(2) 1:19 161:24 | illicit(1) 103:1 | | |
| honor's(1) 224:2 | illogical(1) 152:5 | | |
| hope(8) 91:14 92:4 135:11 142:15 142:20 198:9 214:1 238:14 | illustrative(2) 205:11 208:18 | | |
| | immediately(1) 30:1 | incorporated(4) 44:9 49:1 173:2 194:10 | |
| | impediment(1) 17:20 | incorporates(1) 101:5 | |
| hopeful(1) 28:14 | implausibility(1) 24:8 | incorporation(12) 86:8 86:15 89:22 89:24 135:14 135:17 143:11 180:8 180:17 184:9 196:24 197:1 | |
| hopefully(2) 29:9 158:10 | implausible(12) 8:11 16:1 24:10 64:10 101:10 159:7 167:25 169:11 192:4 197:6 198:13 239:21 | | |
| hopes(1) 178:15 | | | insolvent(8) 14:2 63:19 63:25 64:16 100:12 118:17 181:17 183:2 |
| hoping(1) 213:17 | | incorporations(1) 213:6 | |
| horribly(1) 62:12 | implement(9) 105:9 106:1 112:16 113:11 117:25 143:22 148:2 148:3 192:3 | incorrect(1) 128:2 | instance(4) 103:4 114:12 155:14 188:25 |
| hotel(1) 192:13 | | increase(2) 116:22 195:2 | instances(2) 36:7 48:11 |
| hour(2) 133:6 133:13 | | increased(1) 114:8 | instead(13) 20:20 20:25 33:12 56:17 65:3 68:20 177:7 193:16 193:20 193:23 208:16 210:18 212:21 |
| hours(3) 16:23 133:4 133:10 | implementation(16) 54:7 57:13 57:14 58:7 74:7 103:22 108:19 108:25 109:16 110:2 110:3 110:7 146:11 146:14 147:24 148:8 | incredibly(1) 202:6 | |
| house(12) 2:40 62:7 84:11 86:24 86:25 122:12 152:9 168:5 188:19 189:25 227:2 228:7 | | increment(1) 20:19 | |
| | | incur(1) 20:16 | |
| housekeeping(1) 221:23 | | indeed(4) 16:3 26:12 172:8 174:24 | instructed(10) 54:10 55:7 55:8 55:14 60:16 76:20 105:4 106:8 106:11 108:20 |
| how(35) 8:18 13:6 25:24 26:8 27:2 30:13 72:9 81:21 83:19 88:19 89:17 90:2 91:15 91:15 94:21 99:4 110:16 110:19 115:12 121:5 124:16 126:14 132:21 153:8 175:18 180:22 180:23 181:1 181:13 184:1 192:8 215:20 227:12 227:15 | implemented(5) 54:16 57:3 109:15 109:22 147:9 | independence(2) 72:12 84:5 | |
| | | independent(7) 36:11 67:6 106:18 121:9 126:5 191:23 211:20 | |
| | implementing(8) 25:8 51:12 104:25 109:11 115:11 118:15 184:25 188:17 | | instructing(2) 106:6 107:14 |
| | | | instruction(9) 55:9 55:11 55:19 60:18 60:21 60:24 75:13 75:15 82:12 |
| | | independently(3) 53:12 71:21 119:16 | |
| | implication(1) 117:24 | indicate(2) 102:9 131:16 | |
| howard(1) 1:34 7:14 | implications(2) 29:19 235:10 | indicates(1) 192:10 | instructions(18) 11:23 11:25 46:8 60:23 61:5 67:17 76:17 81:25 82:3 82:5 82:16 93:8 93:18 96:9 106:12 110:16 111:14 153:9 |
| however(3) 70:21 72:22 101:10 | implied(2) 73:19 182:24 | indicating(1) 102:6 | |
| hubbard(1) 2:28 | imply(2) 138:18 154:5 | indiscernible(4) 107:5 146:2 148:12 164:7 | |
| huge(4) 31:1 61:3 61:17 184:18 | | individual(14) 24:5 48:18 48:18 93:18 94:4 94:5 94:10 98:4 107:12 117:24 128:4 136:16 177:9 228:25 | |
| hughes(1) 2:28 | | | insufficiency(2) 125:3 125:6 |
| hundreds(1) 26:11 | importantly(2) 215:8 219:19 | | insufficient(4) 20:16 39:13 75:20 188:24 |
| hurdle(1) 137:10 | impose(14) 12:15 12:18 25:3 68:3 79:13 92:20 95:11 96:1 120:10 121:20 123:14 123:21 187:12 188:1 | individually(1) 155:13 | integral(2) 26:5 189:2 |
| husband(1) 48:9 | | individuals(17) 50:13 50:14 50:19 51:9 51:18 52:8 53:18 75:3 75:3 104:4 104:9 104:25 108:6 108:11 108:14 205:4 211:1 | intellectual(1) 194:17 |
| hydrodam(1) 91:13 | | | intensively(1) 22:18 |
| i'd(7) 56:7 85:20 86:2 86:6 91:12 98:18 110:20 | imposed(15) 43:8 43:9 64:23 69:5 92:6 116:16 119:17 120:2 121:11 121:25 124:1 126:18 126:20 126:21 130:3 | | intent(9) 37:18 83:16 107:2 109:2 112:25 113:25 114:1 115:8 116:7 |
| | | indulgence(1) 98:18 | |
| | | industries(3) 220:8 220:10 221:5 | intention(2) 6:24 69:15 |
| | | industry(3) 82:7 114:8 | intentional(2) 113:22 131:16 |
| | | inequitable(2) 192:23 193:2 | intentionally(3) 129:2 187:13 188:17 |
| | imposes(1) 121:13 | infer(5) 36:14 36:23 55:10 131:17 192:15 | inter-company(4) 184:24 215:15 217:2 221:17 |
| | imposing(1) 120:13 | inference(2) 78:25 167:11 | |
| | impossible(7) 93:15 159:20 168:1 193:7 193:8 201:4 201:7 | inferences(1) 174:9 | |
| | | inferred(3) 53:17 166:21 191:15 | interacting(2) 110:24 149:11 |
| | | inferring(1) 103:3 | interaction(1) 149:13 |
| | | inflexible(1) 11:14 | interactions(1) 27:18 |
| | | influence(18) 24:9 47:2 48:11 67:18 72:4 76:9 83:5 83:10 83:12 93:19 94:11 96:12 97:2 107:23 113:17 126:23 127:21 142:7 | intercompany(8) 9:5 9:6 27:4 29:1 43:4 51:6 58:4 102:25 |
| | | influences(1) 229:6 | |
| | | influencing(1) 79:11 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**interest**(50) 58:8 59:5 92:18 100:10 108:22 109:16 111:16 112:6 116:5 116:11 116:13 116:21 116:24 117:1 117:2 117:7 117:13 129:11 161:7 180:25 182:1 182:3 193:19 193:25 197:14 197:23 197:24 197:24 197:25 198:1 198:3 207:2 207:3 207:4 210:4 210:7 210:23 219:11 219:18 224:23 225:4 225:20 226:2 229:20 230:5 234:8 234:11 234:13 234:23 234:24

**interest-free**(2) 148:8 204:21
**interested**(5) 5:9 5:13 5:17 5:25 45:14
**interesting**(10) 23:25 32:18 34:2 68:9 80:7 146:21 147:7 183:7 185:20 186:23

**interestingly**(5) 37:13 48:12 49:6 61:3 68:1
**interests**(19) 26:19 30:16 62:18 79:19 92:8 95:22 100:7 101:1 101:2 112:2 129:22 161:3 194:18 207:11 207:23 208:2 208:8 231:18 236:5

**interim**(1) 20:19
**intermediate**(1) 82:9
**internal**(10) 27:18 103:25 213:4 218:7 218:8 218:15 218:17 218:23 219:2 219:4

**international**(4) 24:24 52:10 146:3 146:4
**internationally**(2) 24:22 131:24
**interpose**(1) 50:5
**interposed**(1) 47:25
**interpretation**(7) 172:24 178:13 187:2 239:17 239:18 239:19 240:8

**interpretations**(2) 109:7 239:20
**interpreting**(1) 157:8
**interprets**(1) 123:10
**interrelated**(1) 29:23
**intertwined**(3) 28:5 29:19 194:13
**interview**(1) 38:6
**into**(44) 18:17 26:19 61:12 70:14 71:22 76:7 76:25 81:20 86:6 92:1 94:5 99:8 100:11 101:3 102:5 105:7 105:20 114:14 146:23 152:10 155:25 156:7 157:4 158:2 181:1 183:15 183:25 184:8 186:24 193:18 193:25 201:14 201:16 208:10 215:25 216:21 225:13 234:16

**introducing**(1) 33:1
**introduction**(5) 10:13 18:20 21:4 67:3 71:9
**introductions**(1) 135:5
**intruding**(1) 161:7
**inured**(1) 225:5
**investigate**(2) 32:9 38:3
**investigated**(2) 27:21 28:22
**investigating**(2) 16:24 22:19
**investigation**(5) 17:7 27:5 27:7 27:11 131:15

**investment**(2) 4:36 4:36
**investors**(1) 3:38
**invitation**(2) 13:16 211:18
**invite**(1) 84:24
**invites**(1) 65:3
**invoke**(1) 128:23
**invoking**(2) 40:25 206:2
**involve**(4) 140:13 140:16 178:8 219:3
**involved**(30) 53:4 74:6 79:17 103:12 103:22 103:24 104:5 105:11 106:1 108:18 108:25 110:1 110:14 112:5 113:11 115:11 116:20 140:13 146:10 147:24 150:2 153:5 166:2 167:4 184:25 210:25 210:25 211:4 235:18 235:22
**involvement**(15) 26:9 42:11 42:12 54:13 85:10 98:5 102:20 104:23 111:15 116:15 119:14 184:14 200:25 237:3 237:5

**involves**(2) 47:24 190:6
**involving**(4) 90:16 174:19 184:18 208:8

**iqbal**(21) 16:1 16:2 16:16 19:16 21:6 21:22 30:23 33:15 35:4 35:15 35:23 36:11 39:17 42:21 55:25 76:16 111:22 138:5 166:5 177:20 239:22

**ireland**(61) 7:25 8:7 8:12 9:8 14:8 22:23 23:4 41:6 65:11 65:25 66:2 66:2 66:7 66:9 67:4 67:13 67:15 67:20 67:22 67:23 68:1 68:5 68:8 68:16 68:17 69:1 69:9 73:22 75:2 77:14 122:2 122:8 122:22 122:25 124:6 145:25 152:12 152:14 153:13 160:9 160:25 164:1 164:22 165:1 165:5 165:7 166:22 166:22 166:23 166:25 168:2 169:21 169:23 170:20 170:25 184:20 195:5 198:5 203:18 207:20 233:4

**ireland's**(3) 160:21 161:3 170:22
**irish**(34) 14:3 14:3 14:6 14:6 14:9 14:15 14:23 15:3 15:4 47:9 67:8 67:9 68:7 68:21 68:23 69:5 122:5 122:11 122:16 122:17 122:21 123:3 123:25 124:1 124:8 124:9 124:16 124:16 152:15 168:2 168:5 169:10 237:24 238:1

**irreconcilably**(2) 41:2 43:10
**irrelevant**(3) 86:15 174:15 220:3
**irs**(1) 107:9
**isn't**(9) 154:10 155:14 155:15 161:7 169:8 201:6 201:24 207:18 229:11

**isolation**(2) 98:5 128:5
**issue**(28) 10:5 12:3 20:9 20:12 29:18 43:4 44:4 47:24 50:5 61:18 67:20 73:8 90:19 111:14 130:16 137:20 139:7 139:24 147:1 169:8 176:8 177:8 183:6 197:18 199:19 212:16 216:22 227:6

**issued**(2) 60:23 228:4
**issues**(22) 17:21 24:14 29:23 30:5 31:2 34:8 42:8 44:5 77:15 111:11 132:7 137:13 178:10 194:13 203:11 226:3 226:17 226:2 232:22 233:23 239:24 240:3

**issuing**(1) 84:6
**it's**(155) 6:20 9:3 11:5 11:16 12:5 12:17 12:19 14:13 14:20 15:3 15:12 15:18 16:6 16:12 18:8 21:7 21:20 21:23 22:20 23:3 25:22 25:23 26:10 26:20 26:23 29:3 30:16 31:15 31:15 31:19 32:18 34:2 35:1 35:7 35:16 35:21 35:24 36:15 37:13 39:20 40:3 43:21 44:1 44:2 44:20 46:11 47:8 47:13 47:13 48:3 49:16 49:24 52:20 53:2 53:24 54:3 54:8 55:5 55:11 56:2 56:5 56:10 58:15 58:25 59:2 61:6 61:7 61:13 61:17 61:17 62:2 62:2 62:12 62:15 62:16 62:23 66:8 66:17 67:25 68:2 68:3 68:6 69:14 69:19 72:24 72:25 73:12 73:16 73:25 74:23 80:10 80:13 82:4 83:4 83:6 83:12 84:13 84:23 86:10 87:14 87:15 87:24 88:2 90:10 90:15 90:20 92:2 92:4 92:15 92:22 92:24 95:17 96:1 96:3 96:5 96:14 96:22 97:20 98:12 98:21 99:13 99:13 100:21 100:23 101:4 101:8 102:10 104:11 104:24 105:14 106:11 106:19 109:5 109:9 111:7 114:19 116:1 118:17 118:22 120:15 120:25 122:6 122:16 122:24 125:4 125:10 127:1 128:23 129:12 129:16 129:24 130:19 132:1 132:24

**item**(1) 86:1
**items**(1) 85:20

**its**(60) 7:17 8:11 10:22 13:2 19:9 19:15 20:10 21:24 24:25 34:19 34:22 36:5 62:20 63:1 73:15 77:4 79:14 95:12 102:25 106:25 107:16 108:17 110:2 112:2 113:12 116:8 116:17 119:23 123:4 129:22 131:10 147:22 147:25 165:17 167:12 170:17 170:25 175:6 181:24 182:21 182:21 198:2 204:8 206:1 206:1 206:23 209:18 211:11 219:21 218:25 229:25 235:10 236:8 236:23 240:13

**itself**(21) 25:7 60:11 66:25 79:17 98:19 102:3 115:16 148:5 151:6 173:6 203:18 204:4 205:23 206:14 208:9 208:23 228:10 229:22 229:24 231:4 234:5

**it's**(175) 135:15 136:16 137:6 137:7 137:16 137:16 137:17 137:19 140:7 140:8 140:9 140:10 140:14 140:15 142:4 142:7 143:1 143:4 143:5 143:5 143:5 143:6 143:19 143:23 143:24 144:1 144:3 144:9 145:7 145:16 145:19 146:9 147:1 147:15 147:24 148:3 148:4 149:13 149:14 151:15 151:15 152:5 152:8 152:9 152:24 154:10 155:5 159:7 159:9 159:20 160:25 161:14 161:25 162:16 162:17 162:17 162:20 163:10 163:15 163:16 164:24 166:7 166:14 166:15 168:6 168:14 168:22 169:9 173:17 173:18 174:8 176:6 176:8 177:13 177:25 178:2 178:21 178:23 179:5 181:15 181:23 183:6 183:7 183:17 183:18 184:5 184:11 185:6 185:8 185:9 185:20 185:20 186:23 187:16 187:25 188:6 188:8 189:5 189:5 189:6 189:9 191:4 191:17 191:20 192:9 192:25 193:4 193:6 193:7 193:24 194:12 194:12 194:21 195:13 197:2 197:9 197:13 197:16 197:21 197:23 198:8 198:1 198:25 199:1 199:5 199:10 199:14 200:15 200:15 200:24 201:2 201:4 201:5 201:7 201:8 201:23 203:5 203:6 204:23 205:3 207:13 208:13 210:11 210:18 211:11 214:18 215:8 216:1 216:7 216:9 216:10 216:22 218:2 219:13 225:16 225:18 225:25 227:13 228:24 230:3 230:4 230:23 230:25 231:11 231:15 233:1 233:6 234:9 235:17 238:5 238:12 240:17 240:24 241:6

**i'd**(3) 207:6 211:23 224:2
**i'll**(24) 142:9 152:13 158:2 159:11 160:13 160:15 163:5 163:11 163:12 163:15 171:4 179:17 192:23 202:24 203:19 203:24 219:22 231:25 233:22 236:2 237:18 238:9 238:11 238:25

**i'm**(42) 140:21 143:18 144:6 144:16 151:20 151:21 152:21 153:17 155:20 157:5 159:13 160:17 165:10 165:11 167:17 167:24 170:3 170:11 170:11 171:4 174:6 178:18 178:24 185:15 190:23 196:7 196:8 196:19 196:20 198:17 202:18 210:13 213:15 213:17 214:24 221:21 221:23 231:15 232:14 237:17 239:8

**i've**(13) 135:23 144:18 148:23 157:20 165:10 167:17 168:1 169:1 169:6 195:19 224:8 228:14 238:13

**j.t**(1) 2:31
**jackie**(1) 39:2
**jacob**(2) 91:18 91:19
**jacobs**(2) 91:24 94:8
**january**(2) 16:22 43:16
**jennifer**(1) 3:47
**job**(1) 80:10
**john**(8) 2:21 2:39 52:24 85:21 104:6 104:7 107:6 107:11

**joined**(2) 106:19 107:12

**joint**(54) 3:26 7:22 7:24 8:3 8:18 9:22 9:23 10:12 10:14 15:1 16:21 17:16 18:6 22:15 23:21 24:21 25:2 25:5 27:13 28:1 28:3 28:10 28:22 29:1 29:6 29:10 29:21 30:11 31:23 38:2 38:11 40:25 41:9 42:18 43:11 44:15 52:6 102:12 108:5 110:10 112:3 115:13 119:20 123:24 125:20 129:1 131:13 180:7 185:3 195:9 212:20 220:25 222:9 239:6

**jointly**(9) 1:6 7:19 55:14 103:12 111:25 116:16 118:1 167:5 167:9

**jour**(1) 70:8
**journals**(1) 70:24
**jpmorgan**(1) 4:23
**judge**(15) 1:20 44:17 93:11 120:21 136:12 141:15 154:1 162:5 162:5 162:7 162:8 162:9 218:10 218:12 223:11

**judged**(1) 20:2
**judges**(2) 125:12 126:8
**judge's**(2) 136:12 148:23
**judgment**(8) 21:1 30:22 34:8 39:23 104:17 137:13 195:6 220:12

**judgments**(2) 67:9 211:19
**judicial**(16) 10:9 21:24 40:19 40:23 40:23 44:16 44:18 44:21 45:2 54:14 73:20 87:1 128:24 130:20 161:8 208:8

**juncture**(1) 29:8
**june**(2) 43:15 241:20
**junior**(5) 134:17 134:19 135:1 135:8
**jure**(54) 11:21 11:23 14:18 14:19 46:18 47:1 48:17 60:7 62:0 61:2 61:5 66:7 66:16 66:23 71:14 72:5 72:12 72:20 73:15 76:17 76:19 77:3 79:10 93:19 94:10 111:13 112:9 112:11 123:1 123:5 123:16 125:1 153:9 153:10 153:11 156:16 166:11 166:13 166:15 175:5 200:11 204:11 204:14 204:18 204:20 204:22 204:25 205:10 205:15 209:11 209:15 211:2 225:4 235:21

**jurisdiction**(6) 25:15 30:14 131:3 213:6 219:7 221:2

**jurisdictions**(9) 10:18 25:10 79:9 79:15 131:22 140:10 191:13 204:17 223:2

**jurisprudence**(1) 70:20
**jurist**(2) 11:8 83:21
**jury**(8) 76:18 97:11 136:3 136:18 136:23 137:7 137:8 137:16

**just**(149) 7:2 7:13 8:21 12:21 12:25 14:9 14:10 15:18 16:10 31:10 31:20 33:20 35:17 39:5 39:10 39:24 40:7 40:10 41:19 44:18 49:23 50:11 51:1 54:15 56:8 56:13 58:9 58:25 59:9 59:16 59:19 61:1 61:8 61:23 62:23 63:4 65:19 67:2 69:18 70:15 73:13 73:16 74:3 75:4 75:25 76:11 78:12 78:24 78:24 83:11 85:22 86:1 86:3 86:17 87:14 88:14 89:14 91:12 94:2 94:14 99:5 102:5 104:10 107:22 111:4 114:19 118:19 119:15 121:16 124:7 124:13 131:17 133:1 134:16 137:18 140:2 140:3 140:8 140:10 143:10 144:16 145:1 145:6 145:12 147:2 151:7 154:10 154:16 155:2 157:20 157:21 157:22 159:7 162:21 163:9 163:14 163:23 164:5 165:5 166:5 166:16 166:25 167:1 173:16 174:19 177:15 177:22 178:4 180:3 182:6 183:22 184:21 185:1 186:17 192:23 195:25 196:9 196:24 197:4 197:9 199:6 199:20 200:12 202:20 205:1 205:11 209:25 210:4 214:13 215:19 219:9 221:7 221:15 222:19 224:8 225:25 232:6 233:10 233:22 236:18 237:7 237:16 237:21 239:4 240:12 240:25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **justice**(11) 28:15  28:15  35:23  68:23  79:16  82:9  91:18  91:24  94:8  140:11  141:19 | | **last**(14) 13:13  13:15  49:24  65:6  65:7  141:20  147:7  149:7  155:1  158:18  168:11  170:12  176:19  238:17 | | **learned**(5) 131:14  136:20  148:24  154:12  174:21 | | **like**(57) 7:2  15:18  17:12  17:13  27:24  30:10  39:20  44:22  56:7  61:14  61:17  62:2  69:24  70:1  81:6  85:20  86:2  86:9  87:16  89:12  91:12  98:9  98:7  98:18  98:20  98:23  99:6  110:20  113:2  119:13  122:13  124:10  126:2  126:10  128:18  133:5  134:24  140:3  166:25  168:19  175:19  179:8  179:10  179:12  186:3  196:16  207:6  211:23  217:18  222:21  222:24  224:2  228:18  231:12  237:16  238:20  238:22 | |
| **justin**(1) 3:5 | | | | **least**(13) 46:10  59:17  91:2  134:5  139:18  141:17  154:4  179:18  204:6  205:24  208:21  213:24  237:25 | | | |
| **kaneene**(4) 4:45 | | **lastly**(2) 50:22  70:22 | | | | | |
| **katech**(5) 141:25  142:5  142:14  143:5 | | **late**(2) 117:21  195:22 | | **leave**(7) 33:13  38:18  123:16  174:8  174:12  175:17 | | | |
| **katherine**(9) 52:23  53:3  53:6  58:17  58:19  58:23  59:7  109:18  115:10 | | **later**(11) 8:17  9:13  13:20  26:8  28:25  42:17  107:11  146:23  151:4  154:12  197:18 | | **leaves**(1) 217:11 | | **likelihood**(1) 118:16 | |
| **kaytech**(2) 48:21  91:22 | | **latin**(2) 203:24  231:21 | | **led**(1) 149:25 | | **likely**(3) 122:15  122:18  124:1 | |
| **keep**(3) 17:19  156:17  192:22 | | **laughter**(18) 7:10  11:9  14:12  19:2  23:16  39:7  45:16  56:11  58:11  59:14  61:16  61:25  65:15  65:18  70:12  80:4  80:17  91:4 | | **legal**(27) 17:14  17:15  21:14  23:19  25:21  35:21  35:24  35:25  35:25  44:24  44:25  45:18  45:21  45:23  64:15  70:17  71:14  86:3  87:14  106:6  126:10  126:11  164:15  173:3  186:9  212:4 | | **limit**(1) 206:21 | |
| **kelly**(1) 4:50 | | | | | | **limitation**(1) 233:3 | |
| **kennedy**(1) 4:19 | | **laurie**(1) 2:29 | | | | **limitations**(11) 78:4  157:9  203:4  211:22  212:8  212:9  212:23  213:3  213:8  214:7  214:8  214:12  214:14  214:17  215:11  215:12  216:6  216:9  216:16  217:6  217:8  217:23  217:25  218:1  218:3  218:10  218:13  219:12  220:21  231:25  236:18 | |
| **kept**(1) 214:1 | | **law**(274) 8:8  10:16  10:19  11:1  11:11  12:1  12:17  13:6  13:8  13:11  13:12  13:17  13:18  13:19  13:22  14:3  14:6  14:8  14:15  14:17  14:23  15:2  15:3  15:4  15:6  15:12  15:13  15:18  15:19  17:10  17:20  17:25  18:4  18:9  21:10  23:6  23:15  23:19  23:24  25:10  25:23  31:8  40:9  46:10  46:11  46:12  46:18  46:21  47:5  47:7  47:9  48:13  48:14  49:15  49:22  49:24  50:7  53:10  62:16  62:21  63:1  63:7  65:2  65:3  65:20  65:25  67:4  67:5  67:6  67:14  67:24  68:5  68:7  68:18  68:21  68:22  70:16  70:19  71:1  71:4  71:18  72:7  73:1  73:5  73:8  74:3  74:4  74:9  74:23  75:19  76:11  77:11  77:15  77:91  79:3  79:7  80:21  80:24  81:1  81:10  82:23  85:9  85:12  86:8  90:5  90:5  90:5  96:17  97:20  97:22  98:13  100:4  100:6  100:20  111:10  119:25  120:24  121:21  122:3  122:17  122:23  123:3  123:22  123:24  124:3  125:10  125:21  126:7  126:13  126:15  127:1  137:16  137:16  137:17  137:21  138:1  139:1  139:11  140:1  140:6  140:7  140:8  140:12  140:14  140:15  141:14  142:3  142:1  142:18  153:17  153:19  153:20  153:22  154:6  154:10  154:15  155:3  155:4  155:7  155:7  158:16  161:3  161:14  161:17  162:1  166:23  167:19  168:2  171:17  171:22  171:24  172:6  172:7  172:9  172:10  172:18  172:25  174:13  174:14  175:17  175:18  176:14  177:5  178:9  178:10  178:12  178:14  178:15  187:17  187:22  189:5  189:15  189:22  197:1  199:22  204:3  205:20  206:18  208:6  208:12  208:14  208:15  208:15  208:20  209:1  210:1  210:10  210:17  210:22  211:23  212:18  212:22  213:1  213:2  213:3  213:6  213:9  213:11  213:11  214:6  214:11  214:12  214:14  214:19  214:20  215:6  215:10  215:13  215:24  215:24  216:5  216:6  216:8  216:16  216:16  217:13  217:24  218:1  218:9  219:5  219:12  219:15  219:16  220:13  220:14  221:11  221:14  222:22  222:25  223:1  223:3  223:12  223:14  223:17  227:4  227:5  229:20  230:5  230:13  231:11  231:12  231:12  231:17  232:20  233:25  234:1  236:16  237:13  237:24  237:24  237:25  238:1  241:1 | | **legally**(2) 20:16  157:19 | | | |
| **kerr**(1) 52:25 | | | | **legislation**(1) 68:2 | | | |
| **kevin**(2) 1:19  2:37 | | | | **lend**(1) 225:24 | | **limited**(5) 5:41  27:9  32:22  104:24  227:14 | |
| **key**(20) 15:24  22:4  23:20  37:1  46:24  52:5  56:8  57:12  72:14  90:6  104:4  105:19  108:6  110:3  112:21  117:24  147:15  157:21  158:5  229:15 | | | | **length**(4) 106:9  113:20  162:22  227:11 | | **line**(5) 49:24  100:5  115:1  149:7  236:3 | |
| | | | | **lengths**(1) 15:17 | | **lines**(2) 117:20  141:16 | |
| | | | | **lenient**(1) 8:18 | | **link**(1) 172:1 | |
| **kind**(22) 28:14  30:8  32:22  63:23  68:11  79:15  80:24  95:14  96:16  98:3  99:4  123:19  136:18  148:25  162:13  164:8  183:17  184:1  188:11  191:20  223:2  225:14 | | | | **lent**(1) 225:24 | | **linked**(1) 177:10 | |
| | | | | **less**(13) 63:6  85:9  164:21  173:3  173:3  174:15  175:10  194:3  194:21  200:10  225:2  225:22  225:23 | | **liquid**(1) 165:7 | |
| | | | | | | **liquidated**(1) 195:7 | |
| **kinds**(1) 183:25 | | | | | | **liquidator**(3) 8:4  227:25  228:8 | |
| **king**(2) 2:15  154:15 | | **law's**(1) 13:13 | | **lesser**(1) 129:5 | | **liquidators**(1) 228:5 | |
| **kingdom**(1) 2:43 | | **laws**(5) 15:14  113:14  178:6  191:13  237:24 | | **lest**(1) 190:9 | | **lisa**(2) 1:33  3:50 | |
| **knew**(6) 43:23  112:20  175:6  176:5  187:14  189:8 | | **lawsuit**(1) 31:15 | | **let**(15) 20:17  21:11  54:22  71:9  88:14  133:1  138:12  139:11  145:8  149:19  151:7  152:12  155:22  177:21  178:4 | | **list**(4) 108:12  182:1  184:4  241:4 | |
| | | **lawton**(1) 2:38 | | | | **listed**(1) 157:20 | |
| | | **lawyer**(4) 85:21  125:25  134:15  153:18 | | | | **listen**(4) 6:24  19:1  153:14  155:21 | |
| **knotty**(1) 226:17 | | **lawyers**(3) 44:2  135:3  186:24 | | **let's**(22) 10:19  39:10  41:14  42:13  42:23  45:12  46:12  47:15  50:9  51:7  51:18  52:7  52:9  52:19  52:22  54:9  54:25  59:16  63:17  64:4  71:17  133:15 | | **listened**(1) 55:20 | |
| **know**(69) 6:11  6:25  12:13  12:16  19:20  22:6  27:10  29:25  38:20  40:1  40:19  43:21  47:3  47:23  48:7  49:7  50:14  51:25  56:3  57:2  57:7  57:9  59:9  74:13  76:2  76:21  85:4  86:14  87:21  90:10  106:13  107:21  114:19  118:25  133:2  133:4  133:7  143:18  144:9  145:22  146:1  147:3  147:24  148:1  152:16  156:3  156:11  156:12  156:19  161:2  162:18  162:22  168:13  168:17  170:6  170:10  178:10  179:16  180:1  190:12  194:16  200:6  210:6  233:15  237:17  239:25  240:20  240:23 | | **lax**(1) 4:40 | | | | **lisus**(1) 4:40 | |
| | | **lays**(1) 158:11 | | | | **litigant**(1) 131:17 | |
| | | **layton**(1) 2:12 | | **letter**(3) 131:8  131:9  135:7 | | **litigant's**(1) 129:6 | |
| | | | | **letters**(1) 228:4 | | **litigate**(1) 29:16 | |
| | | | | **let's**(13) 140:1  141:5  150:9  151:16  159:7  159:11  160:19  161:12  173:4  174:13  175:1  176:2  179:16 | | **litigated**(2) 26:24  132:9 | |
| | | | | | | **litigation**(1) 219:25 | |
| **knowing**(2) 158:15  160:1 | | **law's**(1) 13:13 | | | | **little**(23) 13:24  33:22  56:9  86:25  88:14  100:2  143:18  143:24  152:9  153:7  158:18  163:12  163:13  177:16  181:12  193:6  221:19  224:1  233:16  240:20  240:24  241:2  241:8 | |
| **knowingly**(6) 115:8  187:13  190:3  190:15  190:18  192:24 | | | | **level**(8) 10:6  41:8  42:5  42:8  53:20  120:21  125:23  127:21 | | | |
| | | | | | | **llc**(1) 5:21 | |
| **knowledge**(28) 10:3  36:8  37:3  45:1  106:25  109:1  109:25  112:23  112:25  113:11  116:7  117:18  118:23  164:8  164:17  164:22  165:1  165:17  175:10  175:11  176:19  189:6  189:13  189:13  199:16  228:20  229:17  229:21 | | | | **levels**(1) 235:25 | | **lloyd,esq**(1) 2:37 | |
| | | | | **liabilities**(4) 25:3  63:11  81:8  144:22 | | **llp**(10) 2:20  2:28  3:10  3:32  3:46  3:49  5:26  5:31  5:41  202:21 | |
| | | | | **liability**(50) 13:21  15:7  15:23  22:2  45:4  77:15  123:19  154:17  155:18  155:23  156:2  170:12  170:14  170:15  170:21  170:23  171:16  172:18  172:21  173:21  174:17  174:18  183:21  185:20  185:21  187:1  187:1  187:17  187:18  187:19  187:22  188:3  189:14  195:4  195:11  195:12  195:16  199:9  199:9  204:8  205:22  206:9  209:23  210:11  212:21  223:12  223:15  234:6  236:15  236:24 | | **loan**(32) 58:2  58:8  59:5  59:16  59:21  103:1  108:16  108:22  109:17  111:16  112:6  115:20  116:5  116:10  116:11  116:14  116:19  116:21  116:24  117:13  117:22  147:21  151:13  201:20  215:15  215:16  217:3 | |
| **known**(1) 194:19 | | | | | | | |
| **knows**(5) 14:51  51:23  67:1  80:2  190:6 | | | | | | | |
| **kraidin**(1) 3:50 | | | | | | **loaned**(1) 169:5 | |
| **krebs**(1) 104:7 | | **lead**(5) 6:13  30:2  34:25  107:8  107:12 | | **liable**(4) 53:12  94:25  167:13  170:22 | | **loans**(35) 9:6  9:6  9:7  23:1  43:4  43:5  51:6  56:12  56:17  58:5  58:8  58:16  116:24  116:25  117:2  117:7  117:7  117:12  124:16  148:8  149:20  150:5  150:22  151:23  159:13  159:16  162:25  168:5  184:24  204:22  217:4  217:9  217:10  221:17  225:19 | |
| **kreller**(1) 2:46 | | **leader**(3) 52:11  52:13  57:16 | | **liar**(1) 48:23 | | | |
| **labeled**(1) 22:9 | | **leading**(7) 49:23  50:1  82:6  84:18  84:20  101:23  142:13 | | **liberty**(1) 1:37 | | | |
| **labels**(1) 35:18 | | | | **lied**(1) 49:3 | | | |
| **lack**(1) 142:17 | | | | **light**(5) 17:17  20:3  27:14  35:11  82:13 | | | |
| **lacking**(1) 75:17 | | **leads**(2) 17:13  102:5 | | **lighter**(1) 37:21 | | **located**(2) 27:25  42:10 | |
| **laid**(5) 21:7  25:6  31:6  50:2  222:17 | | **leap**(2) 106:22  156:21 | | **lights**(1) 214:1 | | **location**(5) 129:19  130:24  130:25  131:1  131:1 | |
| **lancelot**(1) 11:8 | | **learn**(3) 59:11  68:20  190:9 | | | | | |
| **land**(5) 210:7  210:23  229:19  229:20  230:4 | | | | | | **lockbox**(2) 201:14  201:16 | |
| **language**(2) 125:12  161:21 | | | | | | **logical**(2) 77:2  109:5 | |
| **lara**(1) 5:32 | | | | **liable**(4) 53:12  94:25  167:13  170:22 | | **logically**(2) 14:18  66:23 | |
| **large**(3) 115:19  151:12  152:4 | | | | | | **london**(9) 2:42  41:7  41:19  57:8  57:9  61:15  86:1  86:24  137:1 | |
| **largely**(6) 6:24  15:25  20:18  69:19  71:12  77:13  110:6  158:4 | | | | | | | |
| **larger**(2) 116:23  116:23 | | | | | | **long**(12) 22:19  37:24  128:12  136:9  144:8  156:11  171:16  178:9  213:17  226:25  234:13  234:21 | |
| **lasalle**(1) 109:24 | | | | | | | |

| Word | Page:Line |
|---|---|
| longer(9) 21:25 35:16 35:19 48:8 101:4 212:22 213:8 215:11 217:8 | |
| longest(1) 216:15 | |
| look(90) 8:22 14:14 15:2 15:4 15:22 26:23 32:1 33:21 36:5 37:19 38:18 41:14 42:13 46:24 47:9 47:14 48:22 50:9 51:18 52:7 52:9 52:9 52:10 52:19 52:20 52:22 54:24 56:7 57:15 57:15 59:16 63:17 64:4 67:23 70:21 70:22 84:20 86:17 89:21 90:6 90:18 92:2 92:12 95:24 98:4 99:18 101:12 107:13 107:22 127:23 127:25 133:3 135:1 135:17 138:25 139:7 139:24 141:5 142:4 143:8 146:6 149:2 149:5 150:9 152:7 154:11 154:11 154:24 155:7 155:9 155:11 164:16 167:9 173:4 173:7 173:8 173:17 175:1 180:8 180:16 181:12 183:18 183:19 189:23 199:10 204:7 225:17 227:5 238:4 240:14 | |
| looked(10) 37:15 54:13 86:13 89:23 130:24 131:5 155:2 155:12 161:13 191:20 | |
| looking(22) 17:7 21:18 37:1 68:21 72:2 92:5 95:18 98:9 99:25 121:7 126:3 128:4 135:13 135:24 149:4 151:20 151:21 155:1 169:2 199:25 235:25 239:5 | |
| looks(7) 36:3 39:20 46:15 133:5 137:7 140:4 222:21 | |
| loose(2) 40:24 129:3 | |
| lord(15) 82:9 91:14 92:4 92:23 93:1 93:14 94:13 94:22 141:7 141:7 141:19 142:15 142:20 200:15 228:23 | |
| lords(8) 62:7 81:11 90:20 122:12 189:25 227:2 227:9 228:7 | |
| lori(1) 104:7 | |
| los(1) 2:49 | |
| lose(1) 167:7 | |
| loss(4) 13:9 64:24 68:24 114:7 | |
| losses(8) 63:21 64:2 64:2 64:23 101:15 112:7 113:15 149:25 | |
| lost(2) 117:10 157:12 | |
| lot(33) 9:11 11:14 12:2 12:10 45:18 45:19 47:23 48:12 48:15 49:20 50:14 60:7 63:18 63:21 63:23 77:22 90:24 96:24 114:21 124:6 124:10 130:11 145:20 145:24 150:2 150:21 157:19 157:23 165:8 220:8 221:20 238:3 239:15 | |
| lots(1) 201:11 | |
| love(1) 63:15 | |
| lower(7) 61:24 69:1 69:4 96:14 125:15 127:15 208:19 | |
| lowering(1) 223:8 | |
| luke(2) 1:36 202:20 | |
| lumping(1) 16:3 | |
| lunch(4) 132:17 133:12 133:15 133:22 | |
| luskin(1) 2:30 | |
| mace(1) 1:41 | |
| macquarie(2) 4:27 4:27 | |
| made(62) 19:16 21:12 21:23 33:12 39:13 39:16 41:22 42:9 43:7 43:9 44:8 44:10 55:24 56:12 63:12 67:3 68:23 76:2 95:18 99:14 103:6 105:10 106:4 109:8 111:12 111:19 112:22 115:12 115:21 116:3 116:2 117:1 118:1 119:17 122:9 128:19 130:2 134:24 148:14 150:22 151:17 153:3 159:13 162:5 166:13 176:1 180:4 184:14 184:15 184:16 192:20 192:20 199:15 199:17 204:24 208:25 211:14 224:13 225:12 232:3 234:4 239:25 | |
| maidenhead(2) 41:18 41:20 | |
| main(4) 120:2 129:11 218:5 222:24 | |

| Word | Page:Line |
|---|---|
| mainly(1) 113:13 | |
| maintain(1) 93:15 | |
| maintained(2) 51:21 76:6 | |
| majesty's(2) 104:2 107:9 | |
| major(6) 17:20 41:21 41:24 43:17 105:13 184:17 | |
| majority(4) 67:15 131:2 131:2 142:16 | |
| make(52) 9:22 10:22 24:1 27:14 30:21 33:2 34:16 47:23 50:11 50:11 54:1 54:23 57:20 67:3 67:8 67:9 79:5 81:13 95:11 99:10 104:18 115:19 116:13 117:7 117:25 119:12 137:8 140:6 143:3 151:12 154:6 155:6 157:24 163:1 164:14 170:5 175:18 175:22 182:11 187:22 191:14 196:1 199:6 199:23 203:20 205:21 212:6 213:15 226:1 228:21 239:23 | |
| maker(1) 47:22 | |
| makes(13) 13:22 31:1 55:18 68:8 96:24 97:13 121:5 121:5 175:8 200:17 211:8 234:11 237:11 | |
| making(26) 7:5 25:8 25:12 31:22 41:24 41:24 42:14 49:18 54:9 54:18 55:23 57:23 58:2 72:11 104:18 111:10 112:8 112:12 124:19 149:14 149:20 169:4 188:18 194:7 197:7 232:20 | |
| malleus(1) 21:8 | |
| man(4) 49:1 159:23 185:22 229:12 | |
| manage(4) 114:11 130:25 143:12 197:1 | |
| manageable(1) 157:25 | |
| managed(2) 42:25 43:5 | |
| management(23) 4:31 4:31 5:45 24:9 26:5 41:18 41:19 44:6 44:10 46:21 71:21 72:5 77:8 85:11 85:13 106:20 106:21 109:22 126:22 128:21 201:22 228:25 235:18 | |
| management's(1) 42:14 | |
| manager(2) 57:19 57:19 | |
| managerial(1) 41:8 | |
| manner(4) 108:2 108:3 180:25 191:24 | |
| many(15) 21:9 22:12 24:18 24:24 38:12 52:8 67:4 102:6 102:10 103:9 104:9 107:21 108:6 207:9 226:3 | |
| march(2) 115:23 151:19 | |
| marching(2) 216:12 216:12 | |
| mark(5) 52:10 104:7 108:13 117:24 125:2 | |
| marshall(17) 83:19 85:6 87:11 99:20 120:8 121:24 130:5 135:19 135:22 142:2 180:7 180:10 180:11 180:18 190:1 190:1 190:1 | |
| marshall's(4) 82:21 83:23 91:10 92:22 | |
| marshall's(2) 140:24 180:22 | |
| marvelle(1) 233:1 | |
| master(1) 105:17 | |
| match(2) 132:1 169:6 | |
| material(10) 67:13 127:12 189:6 230:14 230:15 230:25 231:5 231:15 231:19 240:2 | |
| matter(24) 8:8 8:18 9:12 13:21 17:20 17:25 18:9 19:13 75:10 102:17 130:18 148:15 162:22 181:3 181:4 187:3 187:4 213:15 213:25 218:11 221:23 241:1 241:3 241:17 | |
| matthew(4) 4:41 5:46 | |
| mature(1) 195:12 | |
| matured(1) 195:7 | |
| mauro(1) 3:19 | |
| max(1) 216:9 | |
| maximum(1) 216:5 | |

| Word | Page:Line |
|---|---|
| may(39) 12:10 19:18 25:17 35:14 41:25 47:12 51:25 54:4 56:25 65:5 68:3 78:12 81:5 90:23 90:23 94:25 115:2 121:25 126:1 128:10 130:16 143:11 143:11 146:7 148:13 149:9 153:23 157:16 159:9 164:14 171:12 187:5 194:15 194:18 196:25 199:1 222:5 222:12 222:14 | |
| maybe(19) 11:6 11:6 13:14 15:14 46:5 46:21 77:25 152:3 156:16 156:17 156:18 159:9 166:10 166:10 166:14 166:15 179:1 213:13 233:11 | |
| maze(2) 17:12 17:13 | |
| mccloy(1) 5:4 | |
| mclaughlin(1) 5:5 | |
| mcshane(1) 69:2 | |
| mean(39) 11:15 11:16 12:16 46:16 55:1 55:1 55:16 56:25 63:25 64:2 64:2 80:8 84:5 88:19 97:3 97:19 104:14 109:12 127:6 131:8 138:18 143:13 145:4 156:10 159:22 167:25 172:4 174:19 184:1 185:10 186:17 188:22 188:24 189:19 190:3 192:8 223:4 225:25 228:23 | |
| meaning(7) 94:24 105:4 123:11 162:2 185:24 186:19 227:12 | |
| meaningful(1) 236:13 | |
| meaningless(1) 12:20 | |
| means(16) 21:11 21:13 46:17 116:6 127:22 131:16 145:22 148:3 174:2 187:2 189:21 192:11 200:17 200:18 221:13 236:17 | |
| meant(4) 55:13 55:14 80:14 230:24 | |
| measure(1) 18:4 | |
| measured(1) 19:22 | |
| meddling(1) 208:8 | |
| mediation(3) 27:9 28:13 29:24 | |
| medical(1) 219:23 | |
| meet(12) 15:19 15:20 25:21 32:3 32:14 33:18 34:11 37:18 101:7 146:13 146:13 186:22 | |
| meeting(2) 60:10 133:9 | |
| meetings(1) 27:19 | |
| megan(1) 4:14 | |
| melanie(1) 5:5 | |
| member(2) 59:9 60:11 60:14 148:15 | |
| members(4) 8:13 11:6 54:10 108:8 | |
| menjucq(11) 71:24 125:16 125:21 126:11 128:6 172:7 175:11 177:5 186:6 186:14 186:25 | |
| menjucq's(8) 80:13 60:4 84:17 145:20 153:1 169:24 176:13 184:22 | |
| mentioned(23) 10:23 13:1 15:1 19:6 20:12 21:3 22:15 22:18 33:15 43:22 51:1 57:24 59:25 66:2 71:1 77:8 90:10 90:11 142:13 145:16 153:10 165:25 167:6 | |
| mentions(1) 152:22 | |
| menu(1) 157:21 | |
| mercia(1) 100:5 | |
| mere(6) 8:11 22:2 36:13 118:18 150:23 176:25 | |
| merely(1) 22:1 | |
| merit(1) 150:3 | |
| merits(1) 31:3 | |
| mervins(3) 217:16 218:19 232:21 | |
| met(6) 49:9 80:11 119:8 119:9 158:14 192:13 | |
| michael(4) 2:30 4:19 4:50 134:9 | |
| middle(3) 50:6 114:5 115:1 | |
| might(13) 26:16 26:17 38:14 49:7 72:22 73:5 93:18 100:15 172:7 176:21 178:15 193:8 196:19 | |

| Word | Page:Line |
|---|---|
| mike(4) 104:7 106:7 107:6 108:13 | |
| milbank(1) 5:4 | |
| mill(2) 41:12 43:6 | |
| millbank(1) 2:45 | |
| millett(1) 93:11 | |
| million(20) 74:12 74:19 115:21 115:22 115:23 115:23 116:14 116:8 118:7 151:18 151:18 151:19 151:19 151:25 152:1 152:3 152:3 165:8 207:15 207:16 | |
| millions(2) 16:23 26:11 | |
| mind(13) 17:19 42:11 47:21 48:1 49:14 127:7 132:20 176:2 196:14 200:9 227:21 228:17 235:16 | |
| minimum(1) 20:21 | |
| minute(5) 21:11 53:20 73:10 78:1 78:4 133:6 146:17 179:12 179:14 196:7 213:21 233:11 233:12 237:16 | |
| minutes(13) 17:5 69:21 132:22 132:25 133:6 146:17 179:12 179:14 196:7 213:21 233:11 233:12 237:16 | |
| mirrors(1) 152:10 | |
| mis-heard(1) 149:9 | |
| misapplication(1) 190:6 | |
| misconduct(2) 22:2 129:7 | |
| misleading(1) 174:11 | |
| mismanagemen(4) 26:4 124:22 125:2 125:5 | |
| mispronouncing(1) 71:25 | |
| missing(1) 50:16 | |
| mistake(3) 22:10 169:13 169:13 | |
| mistreated(3) 36:17 36:17 36:19 | |
| misuse(1) 95:12 | |
| mitthew(1) 4:20 | |
| model(1) 105:15 | |
| modify(1) 182:6 | |
| mom(1) 48:13 | |
| moment(5) 87:4 185:4 190:23 | |
| momentarily(1) 191:3 | |
| monarch(2) 4:48 4:49 | |
| money(41) 16:23 19:28 19:21 19:22 20:8 24:4 31:22 32:11 33:17 34:10 39:15 47:10 63:4 66:4 66:6 68:8 83:23 84:7 85:1 87:19 107:16 112:18 113:2 114:16 114:18 118:19 118:20 119:25 122:15 122:18 124:1 132:22 137:23 144:3 148:14 154:5 160:13 163:12 163:13 171:12 178:6 179:14 181:13 207:13 207:14 219:19 235:9 239:16 239:18 240:7 240:11 241:2 | |
| monies(2) 169:1 201:14 | |
| monitor(1) 3:42 | |
| months(3) 29:11 29:11 43:14 | |
| montrose(1) 44:23 | |
| moore(2) 228:1 228:6 | |
| moorview(1) 66:5 | |
| more(53) 9:2 19:8 19:21 19:22 22:4 24:4 31:22 32:11 33:17 34:10 39:15 47:10 63:4 66:4 66:6 68:8 83:23 84:7 85:1 87:19 107:16 112:18 113:2 114:16 114:18 118:19 118:20 119:25 122:15 122:18 124:1 132:22 137:23 144:3 148:14 154:5 160:13 163:12 163:13 171:12 178:6 179:14 181:13 207:13 207:14 219:19 235:9 239:16 239:18 240:7 240:11 241:2 | |
| moreover(3) 149:24 170:6 236:2 | |
| morning(10) 6:3 6:5 6:6 6:19 23:11 23:13 23:14 39:4 69:16 69:17 | |
| morris(1) 1:24 | |
| morritt(1) 82:10 | |
| mosner(2) 39:2 39:4 | |
| most(20) 10:22 20:24 22:24 24:11 24:16 24:20 35:12 45:5 61:11 93:13 94:1 94:17 105:20 113:8 120:16 131:4 147:5 184:17 194:5 231:7 232:4 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**motion(44)** 7:21 7:23 8:2 18:7 19:8 19:12 19:21 19:23 20:1 21:1 23:9 26:24 30:20 30:20 30:22 30:25 31:4 31:22 33:8 33:12 33:13 33:16 35:10 39:15 40:3 44:4 46:11 61:10 86:11 135:15 135:25 137:1 137:5 137:13 137:13 137:20 139:17 181:7 203:1 209:9 223:3 224:17 227:23 235:8

**motions(5)** 7:20 10:12 10:15 17:16 226:4

**motivated(1)** 112:18
**motivation(3)** 112:23 117:17 118:12
**motivations(1)** 117:9
**movants(1)** 212:7
**move(9)** 26:2 39:14 108:16 115:13 144:6 155:23 187:10 187:10 199:5

**moved(5)** 19:18 28:24 39:21 186:25 190:18
**movement(1)** 115:7
**moving(17)** 33:5 103:9 103:21 104:5 107:3 107:10 107:20 113:8 113:18 116:18 119:25 128:10 128:16 185:13 187:15 189: 226:23

**mrda(27)** 54:11 54:25 55:7 55:18 75:11 75:16 106:1 106:2 106:7 106:9 113:8 113:12 113:12 113:20 146:23 194:11 215:21 215:22 215:25 216:1 232:8 232:12 232:16 236:19 236:20 236:25 237:6

**mrda's(1)** 236:22
**much(40)** 6:4 9:15 28:9 29:18 30:13 33:5 33:7 47:9 63:6 65:22 75:8 88:5 91:20 91:23 97:13 103:23 132:21 140:2 142:9 155:4 160:18 163:15 163:16 164:1 164:6 164:21 165:2 171:7 184:1 186:18 189:5 200:10 210:3 217:17 220:15 221:20 222: 237:1 237:20 241:7

**multi-billion(2)** 159:21 168:7
**multi-district(1)** 219:25
**multi-national(2)** 143:23 146:5
**multinational(1)** 53:22
**multiple(7)** 109:6 127:4 127:8 188:14 199:24 229:6 229:8

**mush(2)** 68:12 140:6
**must(28)** 19:13 36:2 67:16 72:11 75:21 75:22 82:12 83:10 91:25 92:11 92:12 92:12 94:24 95:5 95:8 100:11 123:11 126:21 140:5 167:19 168:3 171:25 171:25 176:3 189:12 203:12 207:4 229:1

**muster(2)** 8:17 165:4
**mutual(1)** 219:23
**mutually(2)** 93:13 96:6
**myriad(1)** 17:15
**myself(2)** 83:12 143:19
**naked(1)** 21:15
**name(3)** 50:14 71:25 81:4
**named(8)** 11:8 50:12 50:19 51:17 75:3 76:18 104:10 145:15

**namely(1)** 203:2
**names(3)** 108:12 148:9 174:7
**naming(1)** 148:10
**naples(1)** 224:13
**naples'(1)** 224:17
**nations(1)** 178:6
**naturally(1)** 28:11
**nature(3)** 93:1 97:5 187:6
**near(15)** 62:25 64:8 99:24 100:11 100:21 102:4 138:19 138:23 164:18 164:20 164:22 182:3 183:1 183:8 231:16

**necessarily(3)** 110:17 178:8 196:20
**necessary(17)** 33:3 37:17 75:6 76:10 77:10 82:15 83:4 83:12 92:24 98:6 114:11 127:21 132:10 175:13 179:17 189:13 203:14

**necessity(1)** 208:10

**need(46)** 12:3 16:1 16:2 17:23 24:3 28:19 31:2 31:25 43:24 43:25 59:8 60:1 63:19 69:14 73:20 73:22 74:1 76:14 91:11 122:19 124:14 154:23 155:15 158:11 163:21 165:23 166:24 167:18 168:12 170: 171:5 177:17 180:16 181:12 187:16 194:14 194:21 200:20 200:20 200:24 209:10 212:13 215:9 218:1 221:19 238:4

**needed(3)** 32:5 87:18 101:9
**needing(1)** 67:23
**needn't(1)** 67:11
**needs(4)** 9:14 63:16 178:10 209:3
**neglect(1)** 15:24
**negligence(8)** 187:2 187:6 187:14 187:17 188:8 188:10 199:16 230:8

**negligent(2)** 187:5 228:6
**negotiate(3)** 27:2 147:18 147:19
**negotiated(1)** 48:19
**negotiating(1)** 113:12
**negotiation(1)** 106:9
**negotiations(5)** 30:9 103:25 107:8 107:18 113:14

**neighbor(2)** 168:17 168:17
**neither(1)** 223:4
**network(2)** 3:32 44:17
**networks(5)** 1:8 4:40 5:39 5:47 7:15
**never(14)** 15:8 27:4 27:5 42:11 53:18 89:23 103:6 123:2 149:1 166:16 166:16 168:5 197:11 200:8

**nevertheless(3)** 27:14 101:20 120:7
**newcomers(2)** 22:18 43:23
**next(14)** 38:19 39:1 40:18 59:3 73:24 74:10 99:15 101:16 107:10 107:16 115:15 149:7 175:16 195:23

**nice(2)** 56:5 168:17
**nicely(2)** 222:7 222:8
**nichols(1)** 1:24 200:15
**nine(2)** 64:8 64:18
**nna(1)** 146:24
**nnc(5)** 51:22 235:24 236:8

**nni(301)** 7:15 7:21 7:24 8:5 8:11 8:19 9:5 9:8 9:16 10:2 13:24 16:4 16:5 16:9 16:1 16:13 17:1 22:23 22:23 22:25 23:2 24:16 24:16 24:20 24:21 24:24 25:3 25:7 26:4 27:19 28:10 30:24 40:4 40:4 40:4 40:6 40:11 41:24 42:16 42:18 43:2 50:13 50:16 50:17 50:20 51:11 51:18 52:1 52:8 52:16 53:5 53:8 53:10 53:11 53:19 54:10 54:16 54:17 54:22 54:25 55:3 55:3 55:4 55:8 55:9 55:11 55:14 55:16 55:22 55:22 56:15 56:21 56:24 56:25 57:6 57:11 57:24 58:9 58:19 58:21 58:24 59:1 59:2 59:8 59:23 59:24 60:2 60:9 60:10 60:13 60:14 60:16 60:23 61:7 73:14 74:6 75:10 75:15 75:17 75:23 76:1 76:8 76:16 76:20 76:24 77:1 77:4 77:7 77:9 84:1 84:4 84:24 88:24 98:16 99:4 101:25 102:8 102:8 102:22 102:24 103:5 103:6 103:12 103:14 103:19 103:21 104:6 104:7 104:12 104:17 104:21 104:23 105:1 105:2 105:3 105:5 105:6 105:10 105:11 105:15 105:16 105:18 105:21 105:23 106:4 106:5 106:12 106:16 106:19 107:3 107:7 107:11 107:12 107:13 107:19 107:24 108:5 108:7 108:12 108:12 108:14 109:5 109:6 109:9 109:19 109:23 110:2 110:9 110:23 111:9 111:11 111:18 112:2 112:8 112:12 112:12 112:12 113:13 113:19 118:9 118:10 118:11 118:22 119:22 124:16 125:8 129:14 130:3 135:1 135:2 135:6 145:9 145:19 145:21 145:23 145:24 146:14 147:13 147:16 147:22 148:4 148:5 148:6 148:19 149:10 149:18 149:21 149:21 150:1 150:5 150:21 150:22 151:6 151:13 151:15 151:17 151:17 152:4 152:6 152:22 152:23 153:1 153:1 153:3 153:4 153:5 153:7 153:12 153:13 153:13 156:20 158:17 159:12 159:19 159:20 160:2 160:9 160:20 160:23 164:1 165:6 166:9 166:10 166:12 166:15 167:8 167:11 167:21 168:4 168:4 168:9 168:25 169:19 170:21 175:2 176:5 176:13 176:15 176:21 177:10 180:19 181:7 181:24 182:17 184:15 184:23 184:24 187:9 188:1 189:1 189:8 190:17

**nni(28)** 190:19 191:16 192:18 192:22 193:17 193:23 198:12 198:16 198:19 198:22 200:1 200:2 201:2 201:19 201:21 201:23 202:3 206:7 206:11 229:7 230:22 231:15 236:11 236:11 236:17 237:3 240:4 240:9

**nni's(13)** 26:9 41:22 53:10 56:20 60:23 102:20 109:21 114:6 116:15 116:18 118:2 119:13 124:18

**nnil(1)** 51:22
**nni(7)** 134:15 153:7 159:16 168:22 176:19 200:10 237:5

**nnl(117)** 9:7 24:13 24:22 26:3 27:18 27:19 42:16 42:18 54:11 75:15 75:15 76:2 76:8 77:9 58:16 61:4 75:11 75:15 76:2 76:8 77:9 99:4 101:25 102:18 102:21 102:25 105:10 105:14 105:17 105:18 105:21 106:4 106:5 106:12 106:16 106:19 107:3 107:13 107:19 107:25 108:21 108:23 109:2 109:6 109:10 109:12 112:8 112:12 112:19 112:20 112:24 113:13 113:17 113:24 114:5 114:10 115:2 115:5 115:6 115:14 115:15 115:17 115:18 115:19 116:3 116:6 116:13 116:13 116:16 116:23 116:24 117:12 117:22 117:22 118:10 118:22 119:15 119:24 124:17 129:14 130:4 132:9 144:6 144:6 147:16 149:20 149:21 151:4 151:11 151:11 151:17 151:23 153:1 153:3 153:13 159:13 159:19 166:9 166:10 169:1 175:4 176:21 182:10 182:17 182:20 182:21 187:15 201:11 201:12 201:21 204:12 205:9 205:15 205:18 209:15 229:7 235:21 240:5

**nnl's(2)** 58:2 110:6
**nnn(1)** 168:24
**nnsa(25)** 8:4 8:7 8:12 9:8 15:5 22:23 23:4 41:7 72:2 74:1 74:17 75:18 76:18 76:25 77:1 77:3 125:9 172:11 176:11 176:18 176:22 188:19 200:2 200:10 233:5

**nnsa's(2)** 73:24 76:17
**nnsa's(2)** 175:5 176:5
**nnu(1)** 13:20
**nnug(1)** 217:2
**nnuk(210)** 7:22 8:7 8:12 9:8 10:6 11:3 12:10 13:2 14:2 19:6 20:24 22:23 23:3 23:4 27:24 41:6 42:10 43:9 43:9 45:13 50:10 50:21 52:5 53:19 54:2 54:4 54:5 54:7 54:13 54:15 54:18 54:18 54:19 54:22 55:6 55:8 55:9 55:11 55:15 55:16 55:17 55:24 56:12 57:10 57:12 57:17 57:22 57:23 57:23 57:24 58:9 58:16 60:9 60:11 60:12 60:14 60:15 60:16 60:24 61:3 61:5 62:25 63:19 64:3 64:4 64:6 64:8 64:13 64:18 68:16 69:9 72:25 73:22 74:15 75:2 85:24 86:23 88:25 98:16 100:25 101:2 101:5 101:24 102:3 102:7 102:18 103:1 103:5 103:18 103:23 105:6 105:11 105:14 105:22 105:25 106:3 106:8 107:2 107:16 108:9 108:24 109:3 109:23 110:6 111:9 111:12 112:1 112:3 112:4 112:10 112:11 112:20 112:24 113:10 113:11 113:19 113:21 113:23 114:1 114:8 115:6 115:13 115:18 116:2 116:6 116:8 116:12 116:17 116:25 117:10 118:5 118:11 131:11 132:8 135:22 139:5 139:9 143:20 143:21 144:10 144:21 147:7 147:12 147:18 147:25 148:2 149:11 149:13 149:20 150:17 151:9 151:11 151:23 151:24 152:4 152:6 156:1 158:17 159:13 159:19 160:2 160:9 160:20 161:3 164:1 164:20 167:21 168:22 168:24 169:1 169:5 169:22 169:24 170:2 170:18 180:8 180:16 180:20 180:21 181:2 181:18 181:18 181:25 193:15 193:23 201:14 201:23 202:4 202:4 203:18 204:15 204:19 204:22 205:11 205:15 205:23 205:24 207:12 207:21 215:21 221:17 225:4 225:18 229:4 229:6 229:10 229:24 231:16 233:4 234:21 234:22

**nnuk's(18)** 11:1 13:7 42:15 43:3 54:10 54:11 55:5 60:17 61:2 62:21 65:2 86:8 89:23 107:18 108:3 111:15 112:7 118:21

**nnuk-only(1)** 146:16
**nnuk's(16)** 135:14 138:15 166:11 166:12 166:15 181:14 184:16 204:11 204:11 204:14 205:13 205:17 207:23 225:3 228:22 229:7

**nny(2)** 107:6 107:6
**nobody(1)** 110:19
**non(1)** 9:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **none**(5) 12:23  67:18  162:23  165:19  206:6 | | **not**(162) 151:4  151:9  152:4  153:8  153:8  154:6  154:23  155:4  155:6  156:14  157:6  159:25  160:25  161:6  161:19  162:8  162:16  164:21  164:24  165:11  166:4  166:10  166:13  166:14  166:17  167:1  167:5  167:14  167:17  167:21  167:23  167:24  167:24  168:6  168:10  169:9  169:21  170:2  170:18  172:9  172:23  172:24  173:11  174:1  174:6  174:7  175:18  175:21  176:8  176:22  177:5  177:6  177:9  177:14  178:5  178:15  178:16  180:9  180:11  181:14  181:15  182:5  182:14  183:7  185:14  186:6  187:16  189:9  189:22  190:1  190:3  190:5  190:9  190:10  190:15  190:22  191:9  191:22  192:3  192:8  192:12  193:4  193:8  193:18  193:18  194:15  194:18  195:6  195:8  196:8  196:20  197:1  197:12  197:12  197:13  197:16  197:24  199:1  199:3  199:5  199:16  199:22  200:9  200:13  200:24  201:7  201:8  201:23  205:3  206:5  206:9  206:18  207:10  208:23  210:11  211:7  211:12  212:13  212:19  213:7  214:18  214:24  215:3  215:9  217:18  218:1  219:1  220:4  221:19  221:21  222:9  224:12  225:16  225:18  225:19  226:1  229:22  230:7  230:14  230:23  231:12  233:0  234:4  234:9  234:13  234:23  235:11  235:19  235:24  236:1  236:11  236:14  236:25  237:17  238:14  238:16  238:16  239:9  239:2  240:9 | | **nowell**(1) 53:16  **numb**(1) 172:11  **number**(18) 31:1  40:10  72:15  78:3  81:9  82:24  83:22  93:25  116:24  156:15  160:7  169:18  176:12  176:13  176:18  184:14  226:14  228:12 | | **okay**(142) 7:16  12:17  19:3  20:9  21:5  39:8  39:11  39:21  40:17  45:11  47:11  49:4  50:9  51:7  51:19  52:4  52:9  52:13  54:5  54:6  54:17  55:2  55:18  56:21  57:3  57:3  57:13  58:3  58:16  59:15  62:1  62:9  63:19  64:2  64:6  65:23  66:12  66:15  69:23  70:6  70:9  78:7  88:13  89:13  98:25  124:21  133:16  134:16  134:22  137:24  138:8  138:12  138:21  139:22  140:1  142:12  143:9  143:16  144:1  144:12  145:11  145:18  146:12  146:14  147:9  147:20  148:12  148:17  149:17  149:18  149:24  150:9  150:10  150:19  151:9  151:13  151:24  152:15  152:18  152:19  152:24  154:9  155:7  155:16  156:5  156:5  156:8  156:13  156:24  156:25  157:2  157:7  157:10  157:13  157:16  157:22  158:8  159:4  159:7  159:17  159:25  160:3  160:6  160:23  161:5  162:4  163:3  163:4  167:13  168:21  169:16  169:18  170:19  179:16  182:22  185:17  191:10  191:10  196:2  196:2  196:16  196:22  197:16  198:5  199:19  200:5  200:8  200:9  201:11  202:2  202:12  203:25  209:20  210:2  210:21  212:11  214:23  215:7  216:11  223:13  231:23 |
| **nonsense**(1) 135:12 | | | | | | | |
| **noon**(1) 78:16 | | | | | | | |
| **nope**(1) 78:6 | | | | **numbers**(2) 152:8  169:6  **numerous**(8) 20:6  20:7  39:13  175:24  177:2  206:4  235:7  239:24 | | | |
| **nor**(7) 32:9  54:20  60:17  73:5  148:19  175:22  190:7 | | | | | | | |
| | | | | **o.j**(1) 161:25  **oakley**(1) 161:25  **oath**(2) 41:4  45:11  **object**(6) 32:19  86:5  86:20  205:20  238:21  238:23 | | | |
| **normal**(4) 24:14  34:6  125:23  241:3 | | | | | | | |
| **normally**(3) 19:22  68:24  126:4 | | | | | | | |
| **norman**(1) 218:11 | | | | | | | |
| **norms**(1) 70:17 | | | | | | **old**(1) 96:14 |
| **nortel**(38) 1:18  3:31  4:40  5:39  5:40  6:7  7:14  8:5  10:1  10:4  17:22  24:17  26:25  51:20  52:6  52:19  52:21  56:3  57:18  63:18  63:21  76:5  99:7  99:9  99:17  101:14  102:16  108:4  108:20  110:13  110:24  113:5  114:12  118:16  145:1  148:11  149:11  214:25 | | **notable**(2) 15:16  204:24  **notably**(8) 8:16  218:24  **note**(19) 21:23  32:19  33:15  34:2  37:24  44:20  73:1  73:13  99:21  99:23  104:14  113:3  125:4  162:21  195:20  195:24  203:6  232:4  232:11 | | **objection**(11) 30:20  31:25  32:2  32:4  32:12  32:18  32:22  32:24  39:15  88:12  239:1 | | **older**(1) 84:8  **oliver**(2) 4:23  4:24  **olivia**(1) 3:19  **omission**(1) 186:4  **omit**(1) 176:13  **omits**(1) 186:10  **omitted**(1) 34:3 |
| | | | | **objections**(1) 20:25  **objective**(2) 189:19  200:16  **objectively**(1) 82:13  **obligated**(1) 216:1  **obligation**(1) 30:12  **obliged**(1) 64:16  **obliges**(2) 173:25  185:22  **observation**(5) 91:24  94:23  130:6  177:22  219:14 | | |
| **nortel's**(4) 26:5  51:10  101:13  107:14 | | | | | | | |
| **north**(15) 1:27  2:15  25:9  25:25  26:3  27:25  37:8  38:6  38:7  40:15  99:9  187:11  190:19  194:16  225:5 | | **noted**(8) 28:5  28:6  38:11  92:23  125:18  220:18  228:14  233:24 | | | | **once**(11) 54:24  81:14  82:23  93:3  105:19  106:7  107:16  112:21  176:3  200:21  223:10 |
| | | | | **observations**(2) 40:7  145:11  **observe**(1) 94:13  **observed**(1) 82:10  **obtain**(1) 92:5  **obtaining**(2) 41:4  45:10  **obvious**(3) 145:16  184:5  223:21  **obviously**(20) 6:8  14:13  24:10  29:25  31:14  34:1  35:4  52:3  80:10  86:13  104:20  110:2  113:8  131:23  145:12  146:5  176:14  221:3  229:3  232:20 | | **one**(125) 1:37  2:8  2:14  2:32  8:16  12:16  13:14  14:23  17:13  17:15  17:18  22:4  30:3  39:2  40:7  42:17  46:15  49:23  51:7  52:12  53:15  53:24  54:17  55:10  57:12  59:17  60:5  60:18  61:9  63:14  71:13  73:3  74:2  75:21  78:14  79:24  82:2  82:5  84:25  85:20  85:22  87:11  91:8  91:20  91:24  92:12  94:22  96:24  97:14  97:15  98:23  102:6  105:16  110:2  110:18  113:3  113:8  113:9  116:4  116:10  118:20  120:22  123:4  127:18  136:12  137:7  140:4  141:8  141:17  143:1  143:2  144:19  146:8  148:16  148:23  149:23  150:23  150:28  155:5  155:14  155:15  155:22  156:15  156:21  157:22  158:6  158:21  160:7  161:12  161:14  162:18  162:21  164:14  164:17  164:21  166:8  167:21  169:12  169:18  169:25  171:12  173:8  173:9  178:15  182:6  184:10  185:22  188:14  188:16  194:5  194:5  197:6  200:7  200:10  207:18  210:14  221:23  222:14  226:4  229:12  238:17  239:16  239:18  239:19  240:7 |
| **norton**(2) 3:46  5:41 | | | | | | | |
| **not**(301) 8:19  9:5  9:9  9:11  9:16  9:19  11:5  11:16  12:4  12:17  13:11  13:16  14:2  14:9  14:14  15:2  15:13  16:9  16:10  16:11  16:12  16:16  16:19  16:24  17:1  17:25  18:3  18:6  18:10  20:15  20:18  22:2  22:9  22:18  22:20  23:7  23:18  25:5  25:25  26:10  27:10  27:17  27:20  27:22  27:25  29:2  29:4  30:10  31:3  31:14  31:16  32:3  33:18  35:9  35:21  35:25  36:8  36:14  36:15  36:23  37:2  38:5  38:15  38:16  39:24  40:15  42:3  43:6  43:9  44:11  46:4  46:22  47:8  47:15  48:3  48:4  48:9  48:14  49:7  49:20  51:14  52:3  52:4  54:3  54:8  54:8  55:5  55:7  55:8  55:10  55:12  56:2  56:15  56:20  57:3  57:14  57:22  57:24  58:9  58:25  59:1  59:2  59:13  59:17  59:21  60:6  61:6  61:7  62:16  62:18  62:21  62:23  62:24  63:19  64:10  64:11  64:13  64:17  65:1  65:5  66:4  66:8  67:13  67:21  68:2  68:4  68:14  68:22  68:24  69:4  69:15  70:20  71:3  71:12  72:17  73:1  73:7  73:16  74:8  74:17  74:19  75:4  75:22  76:8  78:25  79:10  82:14  83:3  83:4  83:12  83:16  84:23  85:5  86:3  86:10  86:10  86:11  87:13  87:16  87:25  88:23  90:23  91:22  91:23  92:11  92:24  93:12  94:10  94:23  95:2  96:6  96:18  96:22  96:25  97:4  97:14  97:18  97:22  98:7  98:12  100:3  100:14  100:17  101:8  101:10  101:19  101:22  104:9  104:19  105:11  105:2  105:25  106:17  106:22  108:14  109:5  109:19  109:12  110:8  111:3  113:11  113:20  115:19  116:2  116:3  116:4  118:11  118:13  119:14  119:12  119:16  119:22  120:12  121:12  122:15  122:17  122:18  123:10  123:16  123:22  124:2  124:4  125:13  125:15  126:2  126:5  127:5  127:11  127:17  129:12  130:2  130:19  131:10  131:21  132:3  132:7  132:9  132:10  133:3  134:4  135:5  135:13  135:16  135:21  135:23  135:24  136:1  136:5  136:15  137:6  137:14  137:16  137:16  137:17  137:17  137:20  137:22  139:8  139:20  139:21  140:7  140:9  140:12  140:14  140:14  140:15  140:15  140:17  141:10  142:4  142:7  142:9  143:4  143:11  143:13  144:1  144:7  145:6  145:7  145:18  146:4  146:9  146:15  146:19  146:24  147:14  147:15  147:15  147:22  148:4  148:5  148:15  148:20  148:21  148:21  149:14  150:10  150:21 | | **notes**(8) 57:18  62:22  101:18  110:12  121:24  129:21  149:8  185:14  **nothing**(14) 64:3  77:5  144:20  144:21  144:22  144:25  153:15  167:2  167:2  169:14  169:24  174:19  175:22  202:1  **notice**(14) 6:8  16:18  19:7  19:17  19:25  20:9  22:7  34:20  35:8  87:1  148:22  149:1  170:16  194:24 | | **occasions**(5) 39:14  41:3  102:23  102:23  117:6  **occupying**(1) 81:4  **occur**(2) 71:21  101:22  **occurred**(9) 8:20  26:17  159:3  159:7  165:9  182:12  185:23  227:12  237:3  **occurrences**(1) 130:3  **occurs**(1) 193:21  **october**(4) 1:14  6:2  116:14  152:1  **odd**(1) 143:24  **odds**(1) 210:15  **off**(8) 6:13  78:14  134:8  184:3  198:7  198:9  214:4  214:11 | | |
| | | **noting**(1) 203:14  **notwithstanding**(2) 35:22  48:7  **november**(3) 12:11  115:22  151:18  **now**(168) 7:17  8:6  8:16  8:21  9:21  10:11  11:3  11:13  12:10  12:14  14:3  16:10  18:24  19:12  20:7  22:15  22:19  24:7  25:1  25:17  26:22  28:2  30:19  32:1  32:13  32:14  33:15  34:1  35:3  35:21  37:13  37:20  38:20  39:25  40:15  41:1  41:22  41:25  43:2  43:8  44:13  45:14  46:9  47:22  48:21  54:12  58:4  62:14  64:18  66:6  69:8  71:1  72:5  72:25  73:10  74:13  74:24  77:17  79:20  80:2  80:23  81:2  82:13  83:18  84:12  84:24  85:2  88:22  89:17  90:10  92:21  96:4  96:13  97:13  98:1  98:21  99:15  99:17  100:1  100:2  103:2  104:8  105:2  105:11  106:13  109:4  110:16  111:2  112:14  118:19  119:11  120:25  121:9  124:5  124:20  125:18  126:15  127:9  128:10  128:2  131:13  132:5  132:17  133:13  136:25  139:4  141:24  144:6  146:20  147:3  149:9  151:20  155:17  161:14  162:3  165:22  171:4  171:21  172:10  172:14  172:23  173:7  173:11  174:6  174:13  175:5  175:8  176:10  176:4  176:10  176:22  176:24  177:1  177:5  178:18  182:7  183:11  183:15  183:24  185:13  185:23  187:7  188:20  189:4  190:21  191:11  192:17  193:4  194:21  202:13  206:3  208:11  213:24  216:3  218:5  222:16  223:13  228:12  228:21  229:15  232:6  234:1  234:22  235:12  235:23  236:6  236:23  241:6 | | **offer**(3) 43:12  180:11  239:1  **offered**(1) 154:21  **office**(3) 37:23  41:20  81:16  92:12  93:5  129:20  130:9  226:18  **officer**(2) 56:25  225:12  **officers**(1) 107:1  17:2  56:21  107:17  109:21  109:23  117:15  **official**(4) 5:30  70:8  173:12  174:4  **officials**(1) 36:21  **offshore**(2) 131:8  131:9  **often**(2) 90:20  161:20 | | **one-man**(11) 210:24  211:7  211:8  227:18  227:24  228:16  228:24  229:4  230:2  230:3  235:15  **ones**(5) 55:6  106:4  124:10  138:24  191:2  **only**(97) 11:19  14:1  22:9  28:24  33:17  41:11  46:2  46:20  50:21  52:3  53:9  54:2  54:8  55:24  57:15  60:2  61:22  62:21  63:11  64:1  64:5  64:14  64:24  66:17  67:25  75:3  79:9  80:13  85:6  85:7  88:20  88:24  89:20  90:4  90:9  96:21  100:20  104:12  107:12  108:14  111:12  111:19  115:15  120:11  125:7  125:24  135:16  137:6  143:4  143:9  143:14  143:16  143:22  145:21  145:24  145:25  147:7  147:18  149:12  150:1  151:5  151:24  153:10  161:12  163:1  167:10  167:23  168:16  172:16  174:13  176:15  177:8  183:25  189:9  197:4  206:12  207:15  207:17  207:23  208:16  210:9  210:10  211:3  213:7  214:20  218:20  223:13  228:22  230:20  234:12  235:2  235:24  236:2  237:10  239:19  239:20  240:5 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

onto(7) 26:6 31:10 54:6 104:5 119:25 128:10 128:16

onward(1) 101:11

onwards(3) 64:6 101:1 101:6

open(1) 223:3

opening(3) 19:6 23:20 138:17

operate(1) 54:1

operates(1) 221:11

operation(6) 54:7 103:13 103:22 146:11 146:14 159:21

operational(1) 10:6

operations(5) 41:12 51:20 58:20 129:17 131:10

operative(2) 203:20 205:6

opine(2) 79:24 180:10

opined(1) 180:15

opinion(16) 70:23 71:23 72:7 73:6 83:23 84:6 87:20 87:20 94:7 126:4 136:22 141:13 150:17 180:9 180:11 200:17

opinions(4) 83:20 126:5 136:9 141:8

opportunities(1) 108:21

opportunity(6) 7:1 34:20 34:24 38:6 86:17 87:24

opposed(4) 52:16 55:4 143:1 231:3

opposite(4) 66:18 123:12 154:24 200:5

opposition(5) 130:10 130:12 172:11 172:25 208:12

oral(1) 86:18

order(35) 31:2 32:6 33:19 33:23 43:25 44:7 74:22 76:15 77:11 81:19 82:17 83:9 83:15 85:2 87:19 92:25 110:24 112:19 119:5 122:19 123:13 127:2 128:23 180:14 181:17 183:9 183:19 185:14 191:4 207:3 220:1 220:20 220:25 230:3 239:13

ordered(1) 153:14

orderly(1) 131:23

ordinary(1) 219:5

organized(1) 155:17

original(6) 33:18 96:7 99:10 173:19 186:13 232:5

originally(1) 99:7

orlando(3) 104:7 107:6 108:13

other(68) 6:9 11:18 11:20 12:15 27:6 28:7 29:19 30:9 31:17 34:12 37:4 37:22 42:23 60:4 64:1 64:14 70:21 71:8 74:24 85:24 89:12 96:25 102:10 102:18 106:14 107:25 108:2 113:23 115:6 120:23 121:23 123:24 126:10 127:5 127:19 139:12 145:3 146:9 150:25 153:20 154:20 157:19 166:7 166:13 169:20 178:6 189:17 190:4 191:16 192:7 193:16 195:16 197:4 207:12 207:25 209:22 212:12 213:15 219:3 220:19 221:1 221:3 227:12 227:16 228:18 229:1 234:22

others(5) 122:21 142:22 142:24 176:15 194:3

otherwise(8) 12:19 94:11 96:9 138:16 209:8 209:21 225:16 237:12

ought(1) 221:23

our(52) 6:9 8:6 8:24 20:6 20:25 23:9 30:6 31:5 37:24 38:10 38:11 40:18 43:19 45:18 45:20 45:22 46:5 46:10 50:2 59:18 68:4 71:4 74:18 74:18 79:5 88:1 90:24 91:10 104:21 130:10 130:12 134:9 137:2 138:5 138:18 139:3 153:16 154:23 157:24 177:24 182:7 188:15 200:6 200:22 210:15 217:8 218:8 218:24 226:10 234:3 235:4 239:19

out(83) 8:24 14:1 15:10 17:14 21:8 25:6 26:21 31:6 42:17 42:25 45:22 47:2 47:7 47:9 48:10 49:2 49:23 50:2 55:21 58:1 60:11 60:25 65:9 65:20 66:3 66:4 66:25 74:14 78:15 79:5 92:24 94:4 94:21 96:21 97:6 99:6 107:7 111:8 130:17 139:3 142:6 148:22 149:21 149:22 154:16 158:11 159:15 159:20 161:20 161:22 162:9 164:1 166:8 167:23 167:24 168:8 168:9 168:19 172:22 173:16 174:5 175:11 175:12 175:1 180:6 180:24 181:6 183:20 183:22 185:2 207:16 208:16 210:16 211:17 221:8 222:1 225:9 225:12 225:14 227:15 232:23 239:25 240:20

outcome(2) 90:21 210:8

outset(6) 9:21 10:13 10:23 78:24 203:5 212:6

outside(7) 25:9 41:19 82:20 83:8 138:20 186:7 230:8

outstanding(1) 115:20

over(32) 6:18 11:7 19:19 20:7 24:20 41:23 65:6 65:7 83:5 83:10 83:13 83:21 84:4 118:20 127:1 137:10 143:6 149:25 152:3 155:10 160:15 165:10 168:8 177:16 177:2 178:19 199:19 200:12 215:16 225:7 226:24 227:20

overall(8) 23:20 26:24 52:23 84:21 185:6 185:9 191:19 192:10

overlap(2) 90:23 93:12

overlapping(5) 80:24 96:5 106:21 120:6 192:1

overlook(1) 186:20

overlooked(1) 193:10

overrule(1) 49:22

overruled(3) 12:13 12:23 13:4

overseas(2) 26:6 99:9

oversee(1) 114:11

overshadowed(1) 24:25

overstepped(1) 79:23

overturned(1) 50:7

overview(1) 112:15

overy(1) 3:49

owe(7) 12:4 14:24 61:11 61:20 67:25 120:3 120:7

owed(16) 112:3 112:10 115:20 118:9 121:11 150:22 151:13 151:14 151:15 175:7 176:17 201:19 204:18 204:23 206:15 231:10

owes(1) 122:25

own(31) 15:7 30:12 36:8 38:3 38:10 67:9 87:12 87:20 107:18 108:3 119:23 136:1 137:22 140:14 141:5 145:17 145:19 146:13 153:18 156:2 158:19 167:23 174:9 204:11 205:10 206:23 222:10 223:20 225:2 229:7 235:4

owned(1) 48:8

owner(3) 227:19 229:10 235:15

owners(2) 229:10 235:24

ownership(1) 229:1

owning(1) 229:12

o'connor(1) 3:11

o'sullivan(1) 4:40

p.m(5) 134:1 134:1 179:23 213:22 241:12

page(26) 20:23 32:4 37:24 59:20 89:4 89:22 97:7 97:8 97:12 97:25 99:15 103:16 107:10 114:24 120:14 120:15 130:11 136:19 136:20 141:16 178:2 226:11 230:1 230:21 231:5 231:19

pages(1) 114:18

paid(16) 117:3 118:10 118:11 150:20 150:23 150:24 151:15 159:23 160:2 160:3 160:4 169:1 201:19 225:19 225:20 225:21

paint(1) 239:21

painted(1) 168:19

paints(1) 168:15

palmers(2) 49:24 49:25

palone(1) 5:10

paper(5) 45:20 58:2 150:12 150:14 197:8

papers(11) 6:23 7:6 18:7 23:9 31:1 33:21 38:11 44:5 59:18 192:21 241:6

paragraph(105) 13:2 32:4 32:12 33:22 45:24 51:20 52:5 74:5 74:7 76:5 82:21 89:1 90:1 92:22 99:6 99:21 99:22 100:9 100:10 100:12 100:23 101:11 101:16 102:14 102:21 103:10 103:21 104:5 104:2 107:16 108:4 108:22 109:16 109:20 109:20 111:8 111:24 112:4 112:15 113:3 113:10 113:18 114:4 114:5 114:24 115:1 115:15 116:10 116:18 117:10 117:14 117:20 118:3 118:14 118:20 125:17 130:5 135:21 140:16 141:1 142:16 142:21 144:1 145:4 145:8 146:10 146:14 146:20 147:16 147:21 148:1 148:7 149:7 149:16 151:21 151:22 152:22 152:24 152:25 152:25 152:25 153:1 153:4 153:11 173:1 173:14 173:18 173:20 174:1 174:22 180:22 181:22 181:23 185:2 186:14 187:3 188:7 190:2 193:21 198:7 198:10 198:10 204:17 232:14

paragraphs(17) 91:11 111:5 124:15 124:17 128:8 139:4 144:17 145:15 152:18 152:19 153:11 176:10 176:15 176:18 184:13 184:19 184:21

parallel(7) 28:4 28:12 36:12 36:13 106:18 191:24 204:16

paramount(2) 100:7 101:2

pardon(3) 84:12 84:13 105:6

parent(26) 9:7 13:23 24:14 24:19 24:20 24:25 51:12 52:17 52:18 55:4 56:13 62:18 62:19 83:3 119:15 130:8 197:14 197:15 197:21 197:23 197:24 197:25 198:4 201:1 201:19 224:14

parent's(1) 52:17

parent's(1) 147:6

park(2) 2:8 2:32

parliamentary(1) 83:16

parlous(1) 64:13

parrots(1) 35:17

part(34) 16:8 21:7 26:5 42:13 49:10 51:10 62:15 87:5 94:6 95:5 95:8 96:17 97:10 101:4 102:4 109:13 106:20 109:10 109:14 109:22 114:24 117:22 136:17 141:20 147:5 154:9 155:1 168:11 169:13 180:4 190:13 191:1 201:22 206:1

participate(2) 6:13 190:5

participated(6) 28:10 60:3 60:5 190:18 199:20 204:4

participating(4) 95:23 96:22 96:24 108:1

participation(4) 98:5 152:23 176:25 205:12

particular(23) 19:24 27:19 82:10 87:13 89:18 89:19 89:21 90:7 91:16 92:16 95:8 95:19 103:15 104:5 111:14 134:9 145:10 180:15 183:23 212:22 212:24 213:25 226:17

particularity(4) 19:22 35:9 158:3 163:11

particularized(1) 170:7

particularly(7) 10:11 108:8 108:10 165:17 178:3 191:21 226:4

particulars(1) 195:1

parties(23) 7:5 16:25 18:13 20:22 37:21 60:12 89:5 121:15 121:18 129:24 133:8 191:16 191:23 194:7 194:13 206:24 209:4 212:14 216:21 219:3 227:24 228:11 232:3

partners(2) 4:18 4:36

parts(3) 80:9 89:12 182:6

party(35) 5:9 5:13 5:17 5:25 9:5 9:9 22:24 22:25 23:1 25:11 37:17 40:24 56:15 56:21 57:25 59:21 79:10 81:14 82:20 83:8 83:10 85:6 91:16 97:9 97:10 175:8 224:24 225:15 230:8 230:9 230:15 231:1 231:2 236:11 236:17

pass(4) 8:17 142:5 165:4 221:8

passage(1) 141:13

passages(1) 136:9

passed(1) 68:3

passing(1) 164:23

passive(2) 55:7 75:13

patel(1) 5:14

path(1) 30:3

patience(2) 114:16 239:10

patient(1) 240:13

patterns(1) 204:21

paul(4) 52:25 56:22 56:22 109:24

pause(4) 21:11 54:25 67:3 151:7

pay(8) 26:12 63:10 74:19 74:19 122:5 144:23 168:18 225:24

paying(4) 30:4 56:18 149:21 149:22

payments(5) 76:22 102:25 115:19 151:12 152:3

payne(2) 104:7 107:11

peace(1) 61:18

pending(2) 7:19 26:22

pennsylvania(1) 1:45

pension(4) 3:4 3:32 28:6 170:14

people(46) 10:2 22:20 37:4 38:10 38:14 43:22 45:1 52:12 52:14 69:14 69:15 75:20 78:3 89:19 104:10 104:20 106:21 107:7 107:7 108:14 119:3 135:4 145:15 145:17 145:20 145:21 146:25 147:1 147:1 147:3 147:4 147:5 147:19 148:9 150:21 156:11 156:13 156:20 161:20 166:18 167:4 190:3 190:15 227:11 233:6 240:3

people's(1) 190:4

perceived(1) 129:7

percent(1) 74:20

perfectly(2) 19:16 132:18

perform(1) 184:2

performance(4) 71:20 72:3 72:4 84:21

performed(12) 11:18 11:19 46:1 46:2 52:22 88:21 88:24 88:25 96:20 96:21 111:19 126:21

performing(1) 183:20

performs(1) 122:23

perhaps(9) 20:12 52:17 67:2 93:13 94:17 119:1 124:7 136:8 241:3

peri(23) 203:3 204:1 204:2 206:2 206:13 206:21 207:2 208:5 208:6 208:17 208:22 209:1 210:1 211:13 222:17 223:14 223:19 224:12 224:25 233:24 235:8 236:3

period(28) 14:8 61:1 64:18 101:23 113:6 116:20 139:6 139:6 143:6 149:23 151:9 152:5 155:10 159:24 181:2 192:10 212:9 214:15 215:12 216:9 216:16 216:19 217:23 217:25 218:2 220:21 233:4 236:22

permitted(2) 20:18 147:18

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **person**(41) 14:16 14:18 14:20 43:1 61:4 66:17 66:19 67:17 71:13 79:12 79:13 79:16 81:4 81:5 81:6 81:24 92:12 93:7 94:2 94:2 95:3 95:5 95:8 95:20 96:20 97:1 126:21 136:5 141:12 141:21 142:21 148:13 166:2 168:15 173:23 173:25 186:1 186:16 187:23 190:5 190:8 | | **pleading**(41) 8:9 8:18 15:18 15:20 16:15 18:5 18:21 18:24 19:13 21:2 22:4 22:13 22:16 22:17 23:6 31:6 31:11 31:14 32:6 35:8 35:13 37:20 56:4 74:16 79:25 80:3 80:11 86:10 98:8 104:22 111:22 139:13 145:17 145:19 149:13 156:15 166:18 170:9 183:8 188:12 198:25 | | **pre**(2) 51:5 183:10 **pre-business**(1) 201:25 **pre-petition**(12) 168:5 169:15 169:25 170:3 170:8 171:19 193:11 194:2 201:25 202:5 207:14 234:19 **pre-twombly**(1) 165:4 **precedence**(1) 125:13 **precedent**(5) 21:2 25:17 40:8 49:16 71:3 **precisely**(3) 123:15 180:23 204:10 **precluded**(1) 203:17 **precludes**(2) 10:9 204:3 **predicament**(1) 74:18 **predicated**(1) 206:9 **predominate**(2) 72:4 126:23 | | **prior**(10) 33:13 41:2 41:17 69:4 89:24 118:7 118:15 132:10 193:23 194:9 **prisoner**(1) 36:16 **private**(2) 36:12 229:13 **privy**(1) 189:24 **probably**(8) 15:4 62:18 63:21 77:23 132:22 132:25 213:20 222:7 **problem**(7) 68:10 93:22 133:10 161:7 163:7 200:16 237:1 **problematic**(1) 133:14 **problems**(4) 40:1 40:2 156:23 164:24 **procedural**(3) 39:11 218:10 218:13 **procedurally**(1) 137:19 |
| **person's**(1) 67:16 **personnel**(7) 52:9 108:7 108:17 110:23 115:10 147:22 184:24 | | **pleadings**(9) 20:2 31:17 63:3 76:13 160:17 163:13 178:12 238:2 238:3 | | **prefer**(1) 19:1 **preference**(1) 132:16 **preferred**(1) 154:2 **prefers**(1) 155:21 | | **procedure**(2) 32:22 34:7 **procedures**(5) 28:17 137:2 137:6 138:5 194:14 |
| **persons**(2) 123:11 142:16 **person's**(1) 190:15 **persuasive**(3) 71:8 122:7 128:7 **pertain**(1) 119:3 **pervasive**(1) 41:23 **peter**(2) 4:37 107:13 **petition**(2) 51:6 216:14 **phase**(1) 38:19 | | **pleads**(2) 37:2 37:3 **please**(12) 6:4 78:10 78:11 134:3 140:25 179:24 213:23 222:6 222:13 224:3 224:6 232:1 **pleased**(1) 202:18 **pleasure**(4) 23:14 240:16 240:18 241:7 | | **prejudicial**(1) 112:5 **prematurely**(1) 29:7 **premise**(1) 8:11 **prepared**(14) 6:23 6:25 7:12 29:25 38:23 84:1 128:13 128:14 149:8 185:13 186:6 186:6 195:1 213:24 | | **proceed**(9) 20:18 38:23 62:14 69:24 132:3 132:19 133:18 171:12 190:10 **proceeded**(2) 62:11 69:2 **proceeding**(3) 19:12 132:10 170:17 **proceedings**(7) 1:18 1:50 13:17 31:17 34:12 130:23 241:17 |
| **philip**(4) 4:9 5:10 84:2 134:14 **phillips**(1) 5:25 **phone**(1) 70:10 **phrase**(2) 40:12 56:13 **phrases**(1) 63:14 **pick**(3) 157:22 161:22 214:3 | | **pled**(26) 12:6 14:2 50:19 60:25 61:1 61:16 61:21 64:17 65:1 67:22 68:13 76:15 138:22 139:2 139:9 139:16 146:16 154:23 154:24 167:25 169:8 170:6 170:20 199:10 206:10 236:15 | | **preparing**(4) 57:17 110:12 135:18 135:21 **prepetition**(2) 9:10 59:25 **prerequisite**(1) 47:8 **present**(8) 13:11 33:11 63:6 95:1 95:14 95:14 128:25 141:9 | | **proceeds**(5) 27:3 74:8 193:20 194:8 234:19 **process**(16) 18:2 28:8 28:14 28:17 28:19 29:13 29:13 29:14 33:11 105:15 107:5 107:15 107:17 109:15 237:2 237:4 |
| **picked**(4) 130:11 130:14 161:20 166:8 **piece**(3) 69:19 94:22 173:24 **piecemeal**(4) 29:17 32:20 34:17 98:7 **pieces**(1) 32:23 | | **plenty**(4) 86:17 87:23 213:9 226:12 **plus**(1) 160:11 **podium**(2) 6:18 221:7 **point**(63) 20:9 20:21 22:4 38:17 42:3 48:4 | | **presentation**(8) 18:25 57:20 57:23 70:3 128:17 145:14 166:13 169:19 | | **processes**(1) 29:12 **produced**(2) 1:51 126:9 **producing**(1) 228:3 **product**(1) 115:9 |
| **place**(17) 27:21 36:10 44:1 89:20 100:15 108:23 109:2 110:25 114:14 129:21 129:2 156:8 160:20 161:8 166:2 168:8 215:4 | | 49:23 52:5 52:13 59:4 63:14 66:6 67:2 67:9 68:4 70:2 71:2 72:14 72:18 77:7 82:2 85:17 89:15 89:15 99:6 119:1 127:12 130:17 137:6 138:22 143:6 143:13 145:3 151:1 159:10 163:1 164:17 164:19 172:8 180:6 181:9 183:6 183:22 185:1 186:4 188:13 191:14 195:15 196:20 196:2 197:6 197:6 200:22 203:19 206:12 207:6 211:6 219:22 221:8 232:24 235:1 | | **presentations**(2) 110:13 148:14 **presented**(9) 15:9 72:9 87:1 120:9 120:17 185:15 212:14 227:13 228:14 **presenting**(3) 87:15 87:16 148:20 **presently**(1) 32:7 | | **productive**(1) 28:16 **products**(1) 101:13 **professional**(4) 82:25 83:1 94:11 107:14 **professionals**(1) 147:20 **professor**(30) 71:24 125:21 125:22 126:4 126:6 126:10 126:11 128:6 153:18 153:25 154:1 154:12 154:20 172:6 172:8 172:14 172:20 172:23 174:10 175:10 175:17 177:5 178:12 186:6 186:13 186:14 186:24 189:25 190:1 199:4 |
| **plain**(8) 35:6 91:17 155:3 203:9 208:23 217:21 218:6 221:10 | | **pointed**(9) 44:3 45:22 74:14 138:24 144:17 148:7 152:19 180:6 207:16 | | **president**(1) 52:11 **press**(1) 131:21 **presumption**(5) 33:2 35:20 129:17 129:18 130:8 | | **professors**(2) 125:22 154:5 **professor's**(1) 173:15 |
| **plainly**(2) 204:17 209:15 **plaintiff**(7) 35:12 35:14 36:7 168:11 199:21 204:5 220:3 | | **pointing**(7) 16:13 51:14 52:12 65:20 204:13 215:19 225:9 | | **pretty**(5) 65:22 165:2 222:18 223:21 **prevent**(3) 92:7 92:8 95:21 **prevents**(1) 127:12 | | **profit**(2) 112:18 114:6 **program**(1) 114:25 **progresses**(1) 16:14 **prohibit**(2) 97:24 139:14 |
| **plaintiffs**(5) 20:17 217:22 220:9 220:11 220:14 | | **points**(14) 50:11 79:2 81:10 82:24 86:22 95:15 102:16 144:19 152:12 176:11 180:4 219:10 222:19 232:6 | | **previous**(2) 105:9 121:21 **previously**(2) 41:11 85:18 **price**(2) 40:2 164:5 | | **prohibited**(1) 123:4 **project**(41) 9:4 22:25 40:2 51:6 56:7 56:8 56:9 56:20 57:2 57:25 64:12 74:7 74:12 |
| **plan**(3) 3:32 148:17 170:14 **planning**(2) 69:18 74:6 **plausibility**(4) 21:22 53:20 75:25 102:3 **plausible**(47) 12:18 19:14 36:5 50:12 50:18 51:17 53:6 53:8 54:3 54:4 54:8 54:21 54:22 55:5 55:18 55:19 57:1 58:20 59:2 77:3 78:25 107:22 109:7 137:10 146:4 146:9 160:11 167:10 168:6 168:24 169:9 192:9 198:15 200:1 200:1 200:10 201:8 201:9 201:23 225:17 226:1 234:9 239:16 239:18 239:20 240:7 240:12 | | **policies**(2) 129:13 192:3 **policy**(14) 20:15 36:19 36:24 105:8 105:13 115:8 146:22 198:11 198:17 209:3 211:12 211:17 211:19 226:21 | | **pricing**(8) 8:23 9:3 51:5 51:7 51:13 52:11 53:15 53:22 53:23 53:24 53:25 54:12 54:20 55:2 103:15 103:21 103:23 103:25 104:4 106:7 107:4 108:10 111:15 112:5 112:15 143:23 145:10 146:6 146:11 146:15 150:1 158:6 162:22 162:24 171:19 204:21 205:14 207:20 215:13 215:20 215:23 216:3 221:11 | | 102:24 108:17 109:22 109:25 110:4 110:5 111:16 112:6 117:20 117:21 117:25 118:8 118:15 147:21 150:6 150:11 151:9 159:15 162:23 171:20 193:22 193:24 198:12 198:18 204:22 207:23 225:19 234:20 |
| **plausibly**(5) 21:20 40:5 53:17 55:10 166:2 **play**(6) 30:24 40:18 129:2 138:3 174:6 195:23 | | **pool**(1) 114:6 **pop**(1) 48:14 **portion**(3) 170:22 203:24 231:21 **portions**(3) 76:1 215:17 217:2 **position**(22) 29:21 31:3 31:5 33:7 44:25 63:15 81:4 92:7 92:17 95:21 116:9 120:11 128:25 128:25 130:20 185:6 187:25 187:2 192:12 193:5 216:25 223:4 | | **prima**(1) 32:15 **primarily**(6) 35:21 51:22 76:6 109:12 112:18 185:24 | | **promise**(1) 144:7 **promised**(1) 70:10 **promotes**(1) 20:15 **prongs**(1) 197:16 |
| **played**(4) 42:19 25:8 30:25 40:24 **players**(1) 229:8 **playing**(1) 189:2 **plaza**(2) 1:37 2:32 **plead**(17) 15:24 22:17 26:18 35:8 62:25 63:4 66:1 75:6 76:12 106:14 106:15 137:9 158:11 160:25 163:10 168:1 199:8 | | **positioned**(1) 161:1 **positions**(4) 40:25 43:13 131:18 131:20 **positive**(1) 71:20 126:21 **possibility**(2) 21:25 22:2 **possible**(10) 11:5 30:6 92:4 97:6 198:8 201:6 201:6 201:7 201:24 225:18 | | **primary**(17) 13:21 15:23 26:3 36:6 45:5 102:22 131:1 160:22 160:23 161:9 161:11 187:21 187:25 189:12 199:9 205:23 210:11 | | |
| **pleaded**(17) 26:15 42:2 53:13 53:16 63:6 64:11 79:4 91:15 97:6 104:11 189:10 191:14 191:17 193:1 193:9 223:1 240:9 **pleader**(3) 35:7 36:7 37:2 | | **potential**(2) 194:22 216:16 **pounds**(4) 16:23 116:14 151:25 152:1 **powell**(1) 127:14 **power**(1) 24:11 **powerpoint**(3) 18:24 122:2 238:19 **powers**(2) 92:10 101:3 **ppearances**(3) 1:22 2:1 3:1 **practical**(1) 119:2 **practice**(1) 115:2 **practices**(1) 153:19 **practicing**(1) 125:25 **practitioner**(1) 154:2 | | **primrose**(1) 2:41 **principal**(1) 167:14 **principle**(23) 25:14 25:21 38:1 79:8 79:16 81:1 81:5 82:22 92:17 113:21 121:16 122:22 173:21 188:8 208:21 210:8 211:7 224:24 229:18 229:19 230:2 230:4 232:25 **principles**(10) 23:7 25:19 90:16 97:21 122:17 123:21 124:3 178:9 194:10 233:2 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| proof(94) 13:2 13:3 13:5 13:22 16:12 19:10 23:2 25:6 26:7 28:9 30:17 31:15 31:18 33:18 37:6 37:19 39:24 40:13 42:1 45:23 45:24 50:9 50:9 51:8 51:15 51:19 52:2 52:5 53:21 57:10 60:20 61:3 62:24 67:3 73:13 73:24 75:13 76:4 76:19 88:23 90:3 98:2 98:4 98:19 99:6 100:22 112:16 119:10 119:21 121:7 124:8 127:23 128:7 129:13 129:20 135:16 140:16 152:15 160:25 176:4 176:4 176:10 177:12 177:20 180:12 181:22 182:12 182:15 182:16 184: 184:12 184:20 187:8 188:9 189:7 190:17 192:2 192:10 193:21 195:8 199:10 204:15 209:7 223:1 225:7 228:22 229:5 232:12 232:15 235:10 236:25 239:6 239:21 240:1 240:19 | | putting(6) 20:9 55:25 86:8 150:19 151:14 200:6 | | read(38) 6:23 12:15 16:6 16:12 20:17 31:25 32:2 35:23 46:5 70:25 73:17 76:7 84:22 84:24 90:21 91:2 91:12 91:13 102:5 120:18 122:14 124:14 130:13 136:22 144: 144:4 154:16 155:25 156:7 167:1 172:22 175:11 175:12 178:4 186:12 198:17 199:7 239:11 | | red(2) 162:18 186:17 redmond(2) 122:8 123:1 reduce(1) 118:9 reduced(3) 72:11 118:5 195:6 reducing(1) 110:5 reduction(1) 114:9 reed(1) 2:28 |
| | | qualification(1) 125:23 qualifications(1) 125:19 qualify(1) 155:11 | | | | refer(8) 43:17 70:23 72:19 87:4 123:7 181:11 198:10 210:6 | |
| proofs(22) 8:10 9:18 9:19 10:8 15:16 16:4 16:6 20:8 22:22 26:1 31:16 32:7 32:14 32:15 32:18 39:13 50:25 164:16 203:10 204:8 225:2 235:17 | | quasi-contract(2) 169:12 169:13 quasi-contractua(2) 160:15 168:14 quasi-legal(1) 44:23 quebec(1) 173:9 | | reading(11) 7:5 24:2 61:17 90:24 95:7 111:22 136:8 136:9 136:12 136:21 177:6 | | reference(5) 135:15 164:23 166:3 196:23 214:20 | |
| | | qureshi(1) 2:6 | | reads(2) 51:8 173:23 | | referred(31) 12:21 12:22 26:22 96:17 96:19 99:20 99:22 103:2 104:9 120:1 120:14 125:11 126:8 127:14 130:5 131:7 173:14 184:19 189:25 190:13 194:4 202:25 223:18 226:6 226:10 226:19 227:2 232:14 232:15 232:25 235:23 | |
| proper(4) 92:7 95:21 98:15 194:11 | | question(47) 9:16 11:24 12:17 47:20 48:1 72:3 82:5 85:2 90:2 92:16 95:3 95:20 95:25 97:12 118:9 119:9 121:9 136:3 136:11 136:16 136:18 137:7 137:8 137:15 138:3 140:5 140:10 141:6 141:11 141:21 143:16 155:22 168:3 183:16 185:1 199:25 210:14 212:4 215:6 215:9 218:22 218:25 232:11 232:18 235:11 236:19 240:10 | | ready(1) 155:20 | | | |
| properly(6) 11:19 46:2 88:25 111:12 162:23 207:21 | | | | real(16) 47:1 48:11 48:24 48:25 83:10 93:19 94:11 97:2 124:1 131:11 131:11 142:7 142:16 142:19 143:21 199:19 | | referring(4) 7:15 113:18 122:20 136:11 refers(4) 35:23 100:9 125:16 174:10 refinements(1) 35:15 |
| property(14) 25:12 92:19 121:2 121:4 121:5 160:1 160:2 160:2 188:18 190:4 190:15 192:18 194:17 214:17 | | | | realistic(1) 233:6 realize(3) 20:1 196:14 200:19 really(56) 7:12 8:22 9:3 9:14 20:2 20:9 21:13 22:8 23:21 27:4 29:7 29:18 30:22 42:20 47:24 48:3 48:4 48:15 51:8 52:20 59:3 63:13 63:23 79:22 80:7 80:13 80:22 104:15 104:17 122:19 126:19 129:15 131: 134:13 138:12 149:3 149:3 150:25 157:21 163:21 183:12 184:8 186:3 189:9 197:5 202:6 206:12 211:13 221:4 222:23 223:4 227:3 228:23 230:4 239:5 241:1 | | reflect(1) 198:9 reflected(1) 119:12 refresher(1) 166:5 refuted(2) 9:22 197:11 regard(1) 232:19 |
| proposed(1) 29:10 proposition(2) 206:13 235:2 proprietorships(1) 48:13 protect(4) 92:18 95:22 195:9 236:5 protective(1) 22:2 | | questioned(1) 89:17 questioner(1) 141:6 questions(13) 7:1 84:5 87:3 91:20 132:13 134:4 135:19 136:23 171:3 178:18 190:9 195:17 231:24 | | | | regarding(5) 12:2 66:1 106:2 111:15 180:24 223:3 237:25 |
| prove(6) 82:15 95:10 101:7 128:24 182:18 187:16 | | | | reason(19) 14:8 18:7 18:8 29:7 37:16 45:21 47:22 55:21 68:9 96:3 111:24 120:15 142:17 155:12 156:14 190:5 194:2 211:25 235:11 | | regardless(3) 74:15 158:6 190:11 regime(2) 172:21 174:18 registered(3) 64:1 113:5 129:19 regret(1) 240:24 |
| proved(1) 91:16 proven(3) 102:9 102:11 110:10 proves(1) 68:4 | | quick(6) 30:2 31:10 40:7 152:12 196:19 232:6 | | | | regular(4) 49:9 129:23 regularly(2) 71:7 117:3 regulation(1) 129:18 |
| provide(9) 9:23 31:21 36:1 87:9 101:20 119:5 153:21 173:25 | | quickly(6) 30:5 61:9 152:20 153:16 180:3 200:14 | | reasonable(2) 35:13 162:7 reasonably(1) 121:18 reasons(11) 10:23 24:18 34:9 67:21 68:15 83:22 111:8 157:19 157:21 170:24 211:12 | | rejected(2) 25:20 97:19 rejecting(1) 92:1 relate(1) 237:5 |
| provided(7) 23:21 116:25 116:25 215:22 216:2 216:2 237:13 | | quite(30) 7:8 12:5 15:12 16:6 16:12 30:17 59:11 60:19 68:8 82:2 107:22 109:9 120: 126:19 128:7 132:6 145:16 172:2 188:15 189:8 192:25 193:11 197:10 199:3 212:19 227:3 233:3 238:6 239:23 240:22 | | | | related(6) 80:22 81:22 103:14 145:9 168:25 203:2 |
| provides(4) 81:3 112:14 122:17 217:22 providing(4) 38:16 96:15 104:24 189:6 | | | | rebecca(1) 5:36 rebut(1) 33:2 rebuttal(5) 132:17 133:18 171:4 180:5 233:17 | | relates(3) 41:18 44:21 194:6 relating(6) 27:22 55:23 99:16 158:5 165:12 170:14 |
| proving(1) 181:16 | | quotation(1) 190:11 quotations(2) 91:9 130:11 quote(11) 20:17 21:15 74:8 93:14 141:19 148:25 151:4 172:15 173:23 178:5 211:15 | | | | relation(39) 11:18 28:19 42:6 42:15 43:7 46:1 55:3 84:9 88:17 89:19 92:14 92:19 95:19 98:16 105:25 106:6 107:14 107:17 108:10 111:11 111:14 112:9 116:19 117:21 118:20 123:15 124:6 130:23 131:6 132:8 132:11 180:15 183:23 184:23 193:11 193:22 194:8 223:3 223:24 |
| proximity(1) 121:17 psam(2) 4:8 4:8 public(1) 229:11 publically(1) 86:23 publications(1) 126:1 published(1) 154:8 pulled(1) 148:22 pure(2) 64:23 68:24 purely(1) 44:22 | | quoted(4) 82:21 91:9 91:10 94:17 quotes(8) 19:19 141:20 142:10 142:20 143:3 148:23 186:15 190:2 quoting(3) 94:7 141:9 186:15 | | receipt(5) 158:15 160:1 167:16 192:19 207:14 receive(3) 160:2 170:2 207:8 received(18) 102:24 103:1 116:19 117:11 118:3 149:18 159:24 168:6 168:25 169:24 192:18 202:3 207:12 207:13 207:16 207:2 225:10 225:22 | | |
| purported(4) 12:23 130:17 153:12 170:15 purportedly(1) 110:5 purporting(3) 154:7 174:1 174:3 purports(1) 79:25 | | qureshi(26) 6:14 69:11 69:16 69:17 69:21 69:24 70:4 70:5 70:6 70:7 70:10 70:14 77:17 77:18 77:19 125:11 126:7 141:7 171:8 171:9 171:12 171:15 185:23 188:20 199:3 211:21 | | receiver(1) 82:16 receiving(2) 149:22 151:17 recent(2) 61:11 219:22 recently(1) 28:24 recess(9) 78:8 78:9 134:1 163:5 179:20 179:23 213:20 213:22 241:10 | | relationship(9) 13:10 24:12 24:15 93:1 121:14 121:17 150:20 160:12 240:7 |
| purpose(12) 19:23 26:2 30:10 92:5 109:1 115:7 186:7 187:10 192:11 220:16 225:2 236:2 purposes(8) 46:11 61:10 67:20 130:20 187:4 191:8 205:11 235:20 | | qureshi's(1) 164:3 | | | | relationships(2) 65:1 68:19 relative(1) 208:10 relatively(2) 227:1 231:11 relaxed(1) 22:17 relevance(1) 185:5 |
| | | radiance(1) 177:25 raised(1) 223:23 raises(5) 84:5 206:16 207:1 226:17 237:1 raising(2) 180:6 203:11 ranks(1) 125:21 rare(1) 44:2 rather(6) 67:23 73:9 74:6 172:2 190:10 219:7 | | recitals(1) 21:17 recitations(1) 35:19 recognition(4) 9:25 41:4 44:13 45:11 recognize(5) 24:12 217:12 217:14 226:16 234:4 recognized(2) 100:4 237:14 reconcilable(1) 42:3 reconsider(1) 211:18 record(6) 20:4 29:8 70:6 119:19 198:9 202:20 | | relevant(19) 44:4 44:5 87:8 91:25 94:1 97:4 99:17 102:16 126:17 132:12 142:4 142:6 184:21 189:17 191:13 194:15 203:20 217:4 225:3 |
| pursuant(4) 103:17 104:2 108:19 171:2 pursued(1) 30:18 pursuing(5) 29:4 30:8 30:15 40:9 239:8 pushed(4) 74:11 105:14 147:10 147:12 pushing(1) 147:13 put(22) 17:4 18:10 19:24 34:25 59:17 63:16 86:16 86:17 92:8 108:23 109:2 114:14 138:24 141:1 146:23 165:22 178:1 199:4 204:4 205:25 222:10 228:7 | | ratification(21) 13:25 14:1 62:15 138:12 138:20 139:14 139:15 139:21 160:24 161: 181:10 181:11 181:13 182:12 182:14 182:19 182:20 182:24 183:3 197:6 198:2 ratified(2) 13:23 182:10 ratify(3) 62:19 100:14 197:15 rational(1) 90:22 rationales(1) 227:10 | | recorded(1) 1:50 recording(2) 1:50 241:16 records(3) 38:4 38:7 133:5 recover(4) 102:12 131:21 192:17 195:10 recoverable(1) 68:24 recovering(3) 204:3 228:9 231:9 recovery(2) 132:4 156:2 | | reliability(1) 92:6 relied(5) 48:17 84:8 123:24 141:25 220:9 relief(3) 19:14 35:7 35:14 relies(1) 69:1 relieved(1) 45:14 reluctance(1) 200:8 reluctant(1) 84:9 rely(8) 12:13 45:5 61:22 62:10 126:8 135:22 139:21 187:13 |
| re-patrician(1) 124:9 re-plead(1) 34:23 re-writing(1) 176:24 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**relying**(3) 68:2 139:20 208:24
**remain**(2) 29:25 213:16
**remainder**(1) 77:6
**remaining**(1) 232:24
**remains**(3) 29:21 35:5 234:6
**remarks**(2) 203:18 203:24
**remedies**(1) 129:3
**remedy**(3) 129:6 129:7 131:25
**remember**(4) 141:1 167:8 198:8 234:14
**remind**(1) 39:10
**reminded**(1) 21:21
**remotely**(2) 54:21 201:8
**removal**(2) 102:15 102:22
**remove**(1) 115:13
**removed**(4) 26:10 102:17 103:18 112:1
**render**(3) 212:23 212:25 214:13
**repaid**(4) 117:8 117:22 150:5 150:6
**repay**(4) 56:17 74:12 159:16 169:5
**repayment**(2) 162:25 171:20
**repayments**(5) 115:21 115:24 116:3 151:16 152:2

**repeat**(3) 73:20 73:22 74:1
**repeatedly**(5) 16:3 30:7 43:17 142:3
**repeating**(1) 83:12
**repetitive**(1) 69:19
**reply**(7) 45:22 46:5 174:17 177:24 178:2 182:25 223:23

**report**(9) 84:2 84:7 94:18 134:16 135:10 135:18 135:21 149:14 202:19

**reported**(1) 101:15
**reporter**(1) 224:9
**reports**(1) 70:25
**representation**(1) 41:17
**representations**(2) 41:3 41:5
**representing**(1) 7:14
**requested**(1) 31:23
**requests**(3) 27:5 27:6 27:11
**require**(5) 33:16 190:21 194:25 213:5 235:25

**required**(15) 29:2 35:6 35:8 35:9 35:10 72:21 74:21 77:1 100:3 104:25 116:12 164:8 165:20 219:21 220:1

**requirement**(3) 172:12 175:11 186:20
**requirements**(9) 18:21 18:24 22:13 31:18 32:14 32:17 88:24 111:22 113:14

**requires**(5) 19:21 34:20 74:9 175:6 226:15
**requiring**(2) 21:24 32:10
**requisite**(3) 155:10 158:2 163:11
**research**(3) 105:17 224:1 235:5
**reserved**(1) 215:6
**reserves**(1) 165:7
**residual**(1) 114:6
**resolution**(5) 17:21 20:14 27:2 28:14 30:2
**resolved**(1) 31:2
**resolving**(1) 30:5
**resources**(2) 101:24 102:7
**respect**(41) 10:7 10:15 11:15 13:19 14:3 14:22 15:22 31:13 38:10 40:5 41:8 43:11 73:22 74:2 74:24 75:1 75:7 75:9 75:11 76:22 77:14 83:21 86:12 102:25 108:8 109:20 115:20 120:4 126:14 129:10 151:1 166:7 171:18 176:7 177:13 186:21 201:10 201:25 204:20 205:2 232:7

**respected**(3) 83:21 134:12 134:19
**respectfully**(2) 69:3 91:23
**respective**(1) 83:20
**respond**(5) 32:8 32:25 88:2 180:3 196:20
**responding**(2) 78:23 134:19
**responds**(1) 135:23

**response**(14) 10:12 15:1 27:10 33:6 33:8 33:8 46:3 61:12 82:12 88:1 136:18 182:7 196:1 208:14 236:21

**responsibilities**(4) 85:15 92:11 92:13
**responsibility**(12) 25:11 25:22 52:24 93:23 94:16 107:13 108:9 123:20 200:12 204:6 205:24 209:5
**responsible**(9) 36:24 57:17 95:12 103:17 106:6 110:6 110:12 142:18 156:23

**responsive**(1) 32:6
**rest**(1) 241:8
**restate**(1) 50:23
**restructuring**(4) 63:24 63:25 101:17
**result**(15) 26:17 27:3 114:7 116:1 117:17 117:18 131:25 168:4 177:11 182:5 221:9 224:16 224:16 227:11 240:24

**resulted**(4) 112:7 113:22 198:11 198:18
**resulting**(1) 115:11
**results**(1) 116:22
**retain**(1) 193:3
**retained**(3) 135:5 153:20 186:7
**retired**(1) 154:1
**retirees**(1) 5:31
**return**(6) 62:23 63:14 133:17 176:3 213:10 239:8

**revenue**(7) 104:1 104:1 104:2 104:3 107:9 107:18 113:22

**reverse**(1) 139:12
**reversed**(2) 127:16 127:19
**review**(1) 50:3
**reviewed**(2) 75:1 84:1
**reviewing**(1) 104:15
**reviews**(2) 79:22 226:21
**revive**(1) 101:18
**revived**(1) 216:19
**revolutionary**(1) 227:4
**revolving**(1) 201:20
**reward**(1) 207:21
**richard**(1) 2:38
**richards**(1) 2:12
**richardson**(1) 215:1
**richborough**(7) 48:16 141:25 142:6 142:14 142:20 143:5 183:11

**rider**(1) 102:19
**ridiculous**(1) 133:3
**right**(77) 6:19 10:13 18:22 31:13 32:1 48:2 50:11 50:11 53:20 54:6 56:16 57:6 58:6 66:12 66:21 68:10 69:10 69:13 77:24 78:2 78:7 78:20 88:9 91:7 91:8 97:17 98:24 99:2 102:1 104:13 105:3 132:15 133:1 133:1 133:11 133:18 133:20 133:23 136:13 138:20 139:19 141:4 141:22 143:1 143:20 144:13 146:22 150:13 151:6 153:18 158:13 158:17 159:20 162:19 168:14 168:15 168:17 170:3 171:6 178:20 179:3 179:20 181:21 183:4 185:13 195:10 196:3 196:7 196:18 202:10 203:1 203:13 209:17 217:20 222:16 225:6 237:24

**rights**(1) 194:17
**rise**(7) 74:9 76:10 78:10 117:8 195:11 198:11 198:17
**risk**(11) 64:6 100:8 100:21 100:25 101:6 102:5 132:3 165:2 183:2 183:8 231:16

**robert**(1) 91:21
**robin**(1) 5:27
**robinson**(1) 5:18
**robust**(1) 27:4
**rodney**(1) 2:14

**role**(23) 25:7 30:24 52:22 75:10 75:11 77:9 79:10 81:18 85:4 85:8 95:10 96:1 97:1 104:24 118:2 122:24 123:9 126:7 180:19 181:24 183:21 183:22 189:2
**roles**(1) 104:19
**rolled**(1) 200:12
**rolls**(15) 211:20 227:3 227:8 227:13 227:17 228:13 228:15 228:24 230:1 231:2 235:13 235:14 236:1 236:11 236:13

**room**(2) 55:16 192:13
**rose**(2) 3:46 5:41
**rosenberg**(1) 4:20
**roughly**(1) 133:4
**routinely**(1) 153:19
**royal**(7) 162:4 189:16 189:16 189:23 190:2 200:15 200:15

**rpe's**(1) 114:7
**rpsm**(13) 105:10 105:15 112:17 113:7 113:19 113:19 114:4 146:22 147:8 147:8 147:12 207:21 232:13

**rspm**(1) 113:6
**ruggere**(1) 5:22
**rule**(55) 14:24 16:16 19:5 19:5 19:7 19:7 19:10 19:11 19:12 19:23 20:2 20:7 20:8 20:13 22:4 22:12 22:14 27:5 31:19 31:24 32:3 32:14 33:13 33:16 33:19 33:20 33:25 33:25 33:25 34:3 34:3 34:10 34:19 35:2 35:3 35:5 35:22 39:22 39:24 62:19 97:23 119:10 122:18 127:12 127:18 143:2 158:1 161:12 161:16 170:21 194:23 195:14 202:7 240:1

**ruled**(1) 170:13
**rules**(9) 16:15 21:2 31:17 34:2 34:21 98:8 219:5 219:13 219:15

**run**(3) 41:12 43:6 227:18
**running**(3) 16:21 133:6 177:16
**ruth**(1) 5:42
**ryan**(10) 57:16 57:22 74:1 117:23 145:24 148:11 148:12 149:8 166:14 200:5

**sachs**(1) 5:9
**safety**(1) 100:5
**said**(104) 7:13 11:3 18:10 19:9 19:11 21:22 22:13 24:10 36:4 36:11 36:22 38:5 39:17 39:18 39:18 41:14 42:6 42:12 42:15 44:4 45:17 46:9 48:22 49:4 49:6 49:12 51:13 63:24 66:1 66:18 68:14 71:3 74:11 74:17 76:22 78:24 83:11 83:18 88:15 90:14 91:17 92:24 93:11 94:8 97:6 97:12 99:4 106:14 106:15 110:19 111:2 111:3 111:7 111:18 122:3 122:3 123:2 131:19 134:13 134:14 134:15 134:25 135:2 135:4 137:14 138:16 140:8 140:15 143:15 143:20 147:9 149:10 150:18 151:20 157:22 162:7 162:8 163:25 165:20 180:13 180:18 182:2 183:10 183:12 183:12 183:24 184:21 186:22 190:12 192:16 196:24 198:7 201:4 202:6 206:10 212:17 217:17 222:1 222:22 223:17 224:11 230:15 232:10 240:25

**sale**(7) 60:3 60:5 169:25 170:3 194:4 194:8 207:17

**sales**(21) 9:10 27:1 27:3 51:6 59:25 60:4 168:5 169:15 170:8 170:10 171:19 193:12 194:2 194:9 194:15 194:19 202:1 202:5 207:14 207:19 234:20

**same**(67) 14:9 14:23 14:25 15:5 31:17 34:15 34:16 37:14 46:6 65:22 65:24 67:21 68:15 73:21 80:15 85:5 87:9 94:24 96:12 102:20 106:20 107:24 115:25 117:3 120:2 122:22 122:25 123:22 124:11 124:19 128:2 130:22 131:21 131:22 138:9 138:23 140:10 152:5 161:5 161:8 161:14 162:2 164:13 165:11 168:2 174:4 185:14 188:1 188:6 188:8 193:21 194:12 197:1 198:13 200:25 200:25 201:2 205:16 210:3 210:8 210:19 215:11 217:1 221:13 223:3 228:22 230:4

**sameer**(1) 3:33
**samis**(1) 2:13
**sample**(2) 86:13 86:15
**sanction**(1) 129:5
**santiago**(2) 21:8 21:12 35:22
**sat**(3) 48:25 182:21 182:21
**satisfied**(4) 114:22 128:8 200:22 202:7
**satisfies**(4) 111:21 112:13 112:24 199:22
**satisfy**(9) 22:14 31:7 88:23 98:6 129:8 167:3 189:1 194:23 202:7

**saudi**(3) 220:8 220:10 221:4
**save**(3) 6:26 49:13 152:21
**saw**(1) 91:20
**say**(150) 6:22 7:4 11:3 11:3 15:9 17:16 20:10 23:20 23:24 24:3 26:16 30:25 33:9 33:22 37:5 39:25 40:3 40:10 42:10 42:25 43:2 43:24 44:15 47:3 49:22 50:6 50:14 51:14 51:25 52:8 52:19 52:22 53:4 54:13 54:15 54:15 54:17 54:20 54:24 55:13 55:14 57:2 57:15 58:25 59:4 60:2 63:4 63:5 63:20 64:1 64:4 64:4 64:18 65:8 70:8 72:19 75:20 78:24 79:3 79:25 80:1 80:7 86:17 91:24 92:4 93:15 97:5 110:18 126:22 132:24 136:2 138:9 138:18 140:4 140:12 141:1 143:24 144:1 145:12 145:23 145:24 145:25 146:21 146:21 147:16 147:17 147:22 147:25 148:1 151:1 152:23 153:2 153:2 154:4 154:7 159:9 160:4 161:20 162:4 162:7 162:22 165:1 165:6 165:6 167:22 169:12 170:5 170:11 173:5 174:21 174:21 175:7 175:9 176:18 183:1 183:18 184:9 186:3 188:1 189:4 189:11 192:4 192:12 193:1 193:6 193:8 193:24 194:5 195:12 195:14 196:16 197:17 198:19 198:25 199:13 200:4 200:5 200:18 201:5 223:7 223:9 223:12 225:17 225:25 226:15 231:21 234:23 238:4 238:12

**saying**(30) 16:7 16:8 41:10 41:22 46:4 48:7 54:2 80:7 87:7 91:1 104:16 109:4 136:9 139:5 142:21 142:21 144:21 144:23 144:25 147:2 150:11 153:11 162:9 162:10 174:7 187:20 197:2 197:5 199:20 239:5

**says**(61) 13:12 15:8 19:6 33:20 33:23 35:24 40:16 52:2 54:5 61:4 62:9 65:4 66:5 66:10 69:1 72:2 73:6 88:21 93:3 95:7 99:23 102:8 105:3 120:22 120:23 121:22 135:8 136:10 136:19 138:9 139:11 140:11 140:12 140:15 141:6 142:4 148:8 153:20 153:23 154:15 156:19 172:8 172:15 173:18 174:3 174:22 174:24 175:13 176:24 184:2 184:7 184:23 186:25 187:2 187:2 188:2 188:5 197:10 197:19 198:11 200:15

**scenario**(4) 182:4 220:7 227:1 239:21
**scenarios**(3) 126:20 227:16 239:17
**scheduled**(1) 7:20
**scheduling**(1) 6:9
**schemes**(1) 115:4
**scholarly**(4) 70:23 72:7 73:6 154:8
**school**(1) 59:10
**schools**(2) 224:9 234:2
**schuylkill**(1) 1:44
**schweitzer**(1) 1:33
**schwill**(1) 5:27

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **scott**(1) 4:40 | | **series**(6) 26:1 87:2 124:8 187:9 191:23 215:16 | | **show**(32) 17:4 22:2 26:8 26:9 26:18 33:10 45:20 60:20 63:19 81:19 83:4 83:6 100:2 102:11 111:4 113:25 114:19 119:2 144:19 152:5 159:6 159:18 168:12 182:19 182:24 187:11 189:1 189:11 192:22 196:1 201:22 229:5 | | **skill**(1) 204:19 **skills**(1) 136:21 **skip**(2) 117:20 118:19 **skipped**(1) 184:22 **slice**(1) 98:3 **slicing**(1) 128:3 **slide**(8) 54:14 76:14 122:2 151:3 172:16 173:8 175:16 189:19 | |
| **screen**(5) 41:15 71:11 72:16 75:12 138:25 | | | | | | | |
| **scrutinize**(1) 206:5 | | **serious**(1) 27:4 | | | | | |
| **seal**(1) 86:25 | | **seriously**(3) 54:2 147:17 191:21 | | | | | |
| **search**(1) 115:3 | | **served**(1) 27:5 | | | | | |
| **searching**(1) 236:2 | | **service**(4) 1:43 1:51 78:14 186:7 | | | | | |
| **seat**(1) 227:4 | | **services**(2) 1:43 104:1 | | **show-stopper**(1) 138:13 | | **slides**(3) 144:14 167:18 221:8 | |
| **seated**(5) 6:4 78:12 134:3 179:25 213:24 | | **sessions**(1) 28:15 | | **showed**(5) 104:8 139:4 158:18 169:18 189:20 | | **slight**(1) 79:9 | |
| **seats**(1) 206:22 | | **set**(63) 8:6 13:2 28:25 31:19 39:11 45:23 55:21 67:25 97:21 99:16 101:11 111:8 122:1 124:20 141:18 162:9 163:23 167:22 167:24 177:3 211:6 232:2 232:22 | | | | **slightest**(1) 192:3 | |
| **second**(14) 7:23 15:16 21:10 45:25 46:2 46:3 85:23 93:21 141:18 145:9 158:21 181:9 207:1 219:8 | | | | **showing**(9) 35:7 106:16 143:17 151:22 165:3 169:3 170:21 175:14 189:20 | | **slightly**(4) 46:6 124:23 216:8 223:7 | |
| | | | | | | **sloppy**(1) 198:24 | |
| | | | | **shown**(6) 46:1 71:20 103:20 119:15 129:8 130:10 | | **slow**(1) 152:21 | |
| **secondary**(29) 13:21 15:23 45:4 77:15 155:17 155:23 156:25 171:16 187:18 187:19 187:21 187:25 188:2 189:14 195:1 199:8 204:7 205:21 206:9 209:23 210:11 212:2 213:12 223:14 223:15 224:22 234:6 236:15 236:24 | | **sets**(2) 72:6 210:16 | | | | **slowly**(1) 241:2 | |
| | | **settled**(5) 8:9 22:16 31:16 37:20 37:23 | | **shows**(21) 76:14 105:2 105:3 106:25 107:24 109:1 109:1 109:25 113:17 113:17 116:7 117:8 117:9 118:1 118:2 118:11 118:12 118:23 133:5 145:4 182:15 | | **smaller**(1) 115:24 | |
| | | **settlement**(2) 20:19 43:7 | | | | **smith**(20) 2:36 3:27 57:5 57:9 57:16 57:22 74:1 74:5 74:10 76:23 110:2 117:23 145:23 145:24 146:1 146:1 148:11 148:12 166:14 200:5 | |
| | | **seven**(2) 62:11 144:18 | | | | | |
| | | **seven-year**(1) 166:1 | | | | | |
| | | **seventh**(1) 3:12 | | **shutters**(1) 63:16 | | | |
| **secondly**(5) 9:4 20:14 50:18 86:12 156:15 | | **several**(9) 28:4 28:6 90:10 96:14 112:25 180:4 183:5 188:16 189:21 | | **side**(5) 6:15 89:11 135:3 222:10 223:4 | | **so-called**(1) 210:24 | |
| **secretary**(1) 82:7 | | | | **side's**(1) 89:12 | | **sold**(9) 169:20 169:21 169:22 169:23 193:15 194:17 202:2 225:21 225:21 | |
| **section**(5) 66:17 71:10 81:2 81:23 92:6 132:14 171:2 171:15 177:21 179:1 202:20 202:25 203:8 212:13 216:20 | | **severe**(1) 101:16 | | **sides**(1) 125:20 | | | |
| | | **shadow**(68) 10:21 11:16 11:22 12:4 12:4 12:6 12:8 14:5 14:22 14:24 44:6 55:22 60:19 61:9 61:9 61:20 67:12 67:24 68:4 68:7 68:11 80:19 80:20 81:12 81:12 82:6 82:11 82:24 83:1 83:3 83:5 83:10 84:14 93:2 93:7 93:7 93:12 94:9 94:6 96:8 97:15 105:5 105:24 106:10 111:1 111:9 112:13 120:2 120:3 120:4 120:5 120:9 120:22 121:2 121:4 121:12 123:8 123:21 136:25 137:15 140:2 205:10 205:16 205:1 209:16 211:3 227:21 238:1 | | **sign**(6) 54:5 55:7 55:17 60:16 77:1 106:8 110:18 162:12 | | **sole**(15) 47:19 47:19 47:22 48:13 93:23 94:2 94:15 107:13 127:7 127:7 161:6 188:14 227:19 227:19 227:21 | |
| **sections**(2) 87:13 225:6 | | | | | | | |
| **secunded**(6) 57:10 57:11 57:17 57:22 74:15 166:14 | | | | **signature**(1) 59:20 | | **solely**(4) 69:6 199:11 220:25 233:25 | |
| | | | | **signed**(6) 59:5 60:15 76:24 110:20 215:21 237:6 | | **solus**(2) 4:4 4:4 | |
| **securities**(1) 5:21 | | | | | | **solutions**(1) 44:17 | |
| **see**(44) 6:20 6:21 23:12 28:8 30:13 37:1 37:15 37:18 42:1 49:17 51:8 71:3 71:23 75:8 75:12 79:22 80:23 84:22 88:3 92:13 92:15 110:21 120:19 130:13 130:15 133:2 146:25 149:3 149:19 151:23 155:8 155:9 155:13 172:15 173:4 175:16 182:22 186:5 195:21 199:7 199:10 202:17 227:6 234:1 | | | | **significance**(2) 156:9 227:7 | | **solve**(1) 101:19 | |
| | | | | **significant**(11) 11:7 118:16 127:3 180:9 180:23 182:13 207:8 214:25 215:17 217:2 221:3 | | **solvency**(10) 64:5 92:20 99:18 100:8 100:12 100:25 101:6 113:5 118:14 165:1 | |
| | | | | | | | |
| | | **shadwell**(1) 11:8 | | **significantly**(3) 84:7 114:10 231:7 | | **some**(67) 7:8 28:14 28:17 29:23 30:8 30:9 31:21 39:5 40:1 51:11 68:2 72:16 72:18 72:19 72:19 79:4 85:16 86:1 86:12 87:8 87:18 89:5 89:15 92:5 99:3 99:5 106:13 109:7 109:8 111:6 134:8 144:16 145:18 152:21 157:21 159:9 159:10 168:20 169:20 172:8 173:4 179:18 184:12 186:8 186:9 190:20 194:3 194:7 194:15 199:21 201:14 202:3 204:13 206:16 209:22 210:6 211:24 213:10 217:15 225:10 225:14 225:18 229:7 233:19 234:10 234:17 240:2 | |
| | | **shall**(1) 171:1 | | | | | |
| | | **share**(1) 67:4 | | **signing**(1) 54:11 | | | |
| **seeing**(1) 239:6 | | **shared**(1) 114:7 | | **signs**(1) 110:21 | | | |
| **seek**(3) 15:17 18:5 26:21 | | **shareholder**(14) 161:6 182:11 182:13 182:14 182:21 204:12 205:9 206:1 226:8 226:9 235:1 235:3 235:4 235:21 | | **silent**(2) 177:12 237:6 | | | |
| **seeking**(5) 25:3 29:6 41:4 45:10 156:2 220:11 230:7 | | | | **silly**(1) 143:24 | | | |
| | | | | **similar**(7) 52:21 58:16 67:21 68:18 124:18 146:18 229:19 | | | |
| **seeks**(2) 68:1 219:8 | | **shareholder's**(1) 62:17 | | | | | |
| **seem**(3) 87:22 176:23 191:5 | | **shareholders**(4) 100:14 229:11 229:13 | | **similarly**(4) 14:4 216:14 217:1 229:9 | | **somebody**(5) 50:14 56:24 82:18 104:16 110:21 156:22 190:12 191:5 | |
| **seemed**(2) 84:19 96:15 | | **shares**(1) 103:2 | | **simon**(1) 43:2 | | | |
| **seems**(10) 16:17 34:6 94:25 95:12 107:22 122:15 141:9 149:19 222:24 238:22 | | **sharing**(1) 105:9 | | **simple**(1) 31:19 | | | |
| | | **she**(16) 28:15 48:10 48:11 53:5 58:21 58:24 58:25 58:25 59:1 59:7 59:8 59:9 59:22 198:13 198:14 198:15 | | **simplify**(3) 8:21 56:10 | | **somebody's**(2) 145:23 168:15 | |
| | | | | **simply**(21) 16:17 25:4 27:11 27:17 31:3 42:3 53:10 55:6 75:20 97:20 106:8 121:1 129:12 176:8 177:7 177:13 183:7 195:13 203:11 207:13 225:18 | | **somehow**(3) 19:25 29:3 80:1 141:25 148:3 149:21 154:9 240:7 | |
| **seen**(8) 20:1 80:23 85:18 85:20 85:25 120:4 121:7 135:23 | | | | | | | |
| | | **she's**(6) 39:5 53:8 53:8 53:9 58:20 58:21 58:24 58:25 | | | | **someone**(9) 85:3 95:17 95:22 126:14 145:25 160:3 160:4 225:12 236:4 | |
| **segal**(2) 5:31 5:31 | | | | **simultaneously**(1) 54:11 | | | |
| **segment**(1) 78:20 | | **sheet**(5) 63:9 63:10 63:13 100:3 100:17 | | **since**(9) 9:2 11:8 11:11 16:22 49:10 142:10 160:22 185:11 196:6 | | **someone's**(2) 46:15 81:19 | |
| **selection**(1) 213:7 | | **sheikh**(1) 5:32 | | | | **someplace**(1) 37:3 | |
| **selective**(2) 83:7 130:12 | | **shook**(1) 227:4 | | **single**(7) 64:11 64:12 91:19 92:1 113:3 169:21 229:9 | | **something**(22) 53:19 63:20 70:21 75:21 82:18 86:9 92:2 99:18 104:19 130:19 136:3 143:14 143:16 146:18 153:12 154:10 168:16 168:20 168:21 190:10 194:20 197:1 | |
| **self-evidently**(1) 172:1 | | **shops**(1) 48:14 | | | | | |
| **sell**(1) 225:23 | | **short**(6) 35:6 77:9 177:20 178:4 179:10 234:17 | | **singling**(1) 208:16 | | | |
| **seminar**(1) 23:15 | | | | **sir**(8) 11:8 77:20 135:21 141:17 147:22 202:22 222:15 237:16 | | | |
| **sen**(2) 3:22 3:23 | | **shorter**(1) 217:23 | | | | | |
| **sending**(1) 161:5 | | **shot**(1) 143:2 | | **sister**(15) 8:12 10:22 10:24 10:24 14:5 24:9 25:4 25:18 73:4 73:15 77:4 127:11 127:15 127:16 146:9 | | **sometimes**(4) 56:3 145:21 204:5 240:20 | |
| **senior**(4) 10:1 109:21 117:15 134:19 | | **should**(82) 13:15 15:2 15:10 15:10 16:16 17:17 17:18 17:25 18:3 18:10 19:9 20:10 20:11 20:18 20:20 23:7 23:10 26:11 29:1 29:14 29:24 31:8 34:14 38:4 46:5 54:5 69:3 80:7 81:20 83:22 86:11 96:15 97:4 109:4 117:16 117:22 118:10 122:9 125:18 129:21 132:6 137:12 140:8 141:15 141:18 154:16 155:25 157:19 158:21 170:25 171:15 173:8 178:6 180:25 181:5 183:18 187:20 188:21 193:16 193:23 194:3 194:18 194:19 195:15 195:22 195:24 202:8 207:13 207:15 208:4 211:12 211:18 217:19 217:24 218:6 219:6 223:21 228:16 230:20 232:10 233:3 | | | | **somewhat**(2) 92:9 134:8 188:2 217:13 | |
| **sense**(14) 13:17 14:10 21:25 30:15 31:21 34:17 36:4 55:18 98:9 142:25 149:3 229:2 230:24 239:14 | | | | **sit**(3) 54:22 55:16 171:4 | | **somewhere**(1) 186:9 | |
| | | | | **sitting**(3) 54:17 65:8 135:2 | | **song**(1) 5:36 | |
| | | | | **situation**(7) 44:22 49:5 49:19 121:23 122:18 176:21 228:18 | | **songs**(1) 12:16 | |
| | | | | | | **soon**(1) 29:9 | |
| | | | | **situations**(6) 47:14 49:15 65:1 121:24 123:15 227:12 | | **sooner**(2) 18:12 18:13 | |
| **sensitive**(1) 181:4 | | | | | | **sorry**(12) 69:16 83:11 95:7 97:10 123:8 140:21 178:24 191:19 221:23 231:2 231:15 232:14 | |
| **sent**(1) 168:9 | | | | | | | |
| **sentence**(9) 59:3 60:25 64:7 64:15 117:14 141:19 141:20 145:9 147:7 | | **shouldn't**(3) 16:19 38:2 65:9 | | **six**(3) 29:10 29:11 43:14 | | | |
| **sentences**(3) 62:12 64:5 98:4 | | **shouldn't**(1) 134:18 | | **sixteen**(1) 53:23 | | | |
| **separate**(7) 41:3 68:12 90:19 94:7 210:16 226:6 227:9 | | **shout**(1) 55:17 | | **size**(2) 30:25 116:22 | | | |
| **separated**(1) 161:21 | | | | | | | |
| **separately**(4) 50:4 53:16 207:17 212:19 | | | | | | | |
| **september**(1) 39:12 | | | | | | | |

| Word | Page:Line |
|------|-----------|
| sort(13) 65:19 67:23 70:15 99:5 143:3 143:23 154:2 157:20 157:22 157:23 157:2 166:6 240:20 | |
| sought(5) 99:9 104:3 129:3 131:19 225:1 | |
| sound(5) 1:50 22:10 126:2 163:20 241:16 | |
| sounds(2) 22:6 78:2 | |
| source(1) 171:23 | |
| sources(1) 88:1 | |
| souter's(1) 35:23 | |
| south(1) 2:47 | |
| southern(1) 44:8 | |
| sparse(1) 139:4 | |
| speaking(3) 59:11 59:12 157:14 | |
| speaks(1) 186:12 | |
| special(6) 13:10 65:1 65:1 68:19 143:21 174:18 | |
| specialized(2) 153:21 153:22 | |
| specific(23) 21:3 21:23 23:19 41:21 75:23 90:4 105:22 108:12 110:9 114:20 114:22 116:15 116:16 118:12 119:2 119:3 119:3 129:13 130:2 159:5 166:2 170:8 170:16 | |
| specifically(14) 10:6 19:9 19:15 66:10 73:14 75:17 114:15 135:8 154:13 184:23 194:4 214:18 214:20 215:12 | |
| specificity(1) 75:5 | |
| specifics(1) 73:10 | |
| speculate(1) 214:24 | |
| speech(4) 91:14 92:21 92:22 148:24 | |
| speeches(8) 90:18 90:19 90:22 95:15 136:12 148:23 148:24 227:9 | |
| spelled(1) 161:24 | |
| spend(5) 9:11 49:20 60:6 140:2 160:18 163:23 164:6 | |
| spent(7) 9:14 9:15 16:22 16:24 17:8 40:23 238:8 | |
| sphinx(1) 131:6 | |
| spin(1) 119:11 | |
| square(1) 2:14 | |
| squarely(2) 74:20 84:13 | |
| stage(3) 34:8 158:23 159:1 | |
| stam(1) 3:47 | |
| stand(7) 78:7 82:17 195:15 206:12 213:20 235:2 241:10 | |
| standard(32) 8:18 22:17 31:7 31:11 32:3 35:3 71:17 72:8 72:23 85:23 87:4 88:22 89:3 104:17 119:9 119:10 158:15 164:8 164:15 171:22 172:14 186:21 187:1 187:6 187:14 187:17 188:6 188:10 189:1 189:6 189:18 239:22 | |
| standards(22) 8:9 15:18 15:20 18:5 21:5 22:4 22:16 23:6 37:21 76:16 84:9 100:16 140:7 156:15 164:6 164:6 165:5 167:3 170:9 208:19 223:8 238:5 | |
| standing(1) 39:1 | |
| staple(1) 184:9 | |
| stargatt(1) 2:19 | |
| starkly(1) 117:12 | |
| start(13) 29:11 40:23 45:13 46:12 47:16 50:10 51:7 70:18 71:17 134:8 144:17 160:19 187:20 | |
| started(2) 54:21 239:4 | |
| starting(2) 85:12 101:12 | |
| state(30) 19:14 53:21 64:13 74:18 82:7 101:8 126:13 137:9 138:4 164:15 172:5 172:25 182:2 200:23 211:23 212:2 212:18 213:11 213:11 214:6 214:12 214:14 214:1 215:13 216:16 216:16 218:14 222:25 238:6 | |

| Word | Page:Line |
|------|-----------|
| stated(6) 32:7 40:5 75:13 119:21 173:21 185:24 | |
| statement(27) 19:8 19:21 31:23 32:11 33:17 35:6 39:16 42:6 44:24 49:21 52:3 52:7 55:25 70:19 73:8 79:1 128:18 138:15 144:7 144:10 151:22 153:20 154:7 154:21 162:10 189:7 197:11 | |
| statements(17) 19:24 21:3 41:5 41:10 43:18 43:23 43:25 45:19 80:2 80:8 102:6 128:18 128:20 130:1 167:4 167:5 228:3 | |
| states(12) 1:1 1:20 21:20 29:15 30:20 65:9 100:24 101:12 141:14 177:8 181:23 219:12 | |
| status(5) 84:15 99:25 121:12 126:11 | |
| statute(58) 14:25 66:8 67:25 68:1 87:5 87:8 123:4 154:14 157:8 158:7 171:23 172:2 172:10 172:22 173:6 173:7 174:2 174:4 174:24 175:12 175:19 175:22 176:2 185:20 186:15 187:20 188:1 203:3 211:22 212:4 212:8 212:3 213:8 214:7 214:8 214:12 214:17 216:6 217:5 217:8 217:12 217:16 217:19 217:22 218:3 218:6 218:12 218:14 218:18 219:6 219:9 219:12 220:4 220:10 220:22 221:10 232:19 236:18 | |
| statutes(6) 154:15 212:23 215:10 218:9 221:6 233:3 | |
| statutory(3) 14:15 67:4 67:12 81:12 87:7 | |
| stay(2) 101:20 219:20 | |
| stays(1) 213:20 | |
| ste(1) 3:6 | |
| steady(1) 65:5 | |
| stearns(2) 44:7 131:7 | |
| steel(1) 164:3 | |
| steen(3) 1:32 4:12 202:21 | |
| step(1) 164:2 | |
| stephen(1) 4:5 | |
| stephenson(10) 52:23 53:3 53:6 58:17 58:19 58:23 59:4 59:7 109:18 115:10 | |
| steps(8) 8:22 92:8 95:22 183:5 | |
| steven(1) 5:18 | |
| stevens(2) 228:1 228:6 | |
| stevenson(4) 148:11 198:12 198:19 198:2 | |
| stick(2) 50:10 206:6 | |
| still(22) 25:2 35:7 35:10 53:14 79:3 87:23 96:17 97:3 114:16 121:1 125:15 137:9 142:3 142:15 144:10 144:25 179:17 200:1 200:20 211:8 224:23 233:8 | |
| stipulates(1) 173:22 | |
| stojevic(2) 227:18 228:2 | |
| stojevic's(1) 228:17 | |
| stone(15) 211:19 227:3 227:8 227:13 227:17 228:13 228:15 228:24 230:1 231:1 235:13 235:14 236:1 236:11 236:13 | |
| stop(8) 12:6 57:6 61:2 61:8 170:3 195:21 233:10 236:5 | |
| story(2) 17:10 33:9 | |
| straightforward(2) 13:1 139:24 | |
| strained(1) 61:14 | |
| strangers(1) 37:21 | |
| strategic(5) 10:5 41:7 41:24 42:5 42:8 | |
| strategies(1) 167:13 | |
| strategy(3) 9:19 9:20 124:9 | |
| strauss(1) 70:8 | |
| street(7) 1:11 1:27 1:44 2:15 2:24 2:41 2:47 | |
| strict(8) 15:7 72:19 154:17 172:21 187:1 187:12 187:16 187:17 | |
| stricter(1) 188:2 | |
| strictly(1) 83:16 | |

| Word | Page:Line |
|------|-----------|
| strike(3) 80:2 97:6 181:6 | |
| strike-out(2) 137:5 227:22 | |
| striking(3) 10:11 10:80:8 129:4 | |
| string(1) 37:24 | |
| strip(1) 116:2 | |
| stripped(1) 117:6 | |
| stripping(1) 163:20 | |
| stronger(2) 47:10 163:16 | |
| struck(2) 128:17 145:3 | |
| structure(7) 94:6 95:6 95:9 97:11 106:20 136:17 143:22 | |
| structured(1) 105:16 | |
| structuring(4) 57:13 57:14 110:4 110:7 | |
| stuck(1) 71:13 | |
| stuff(1) 43:6 | |
| subheading(1) 100:24 | |
| subject(12) 22:12 31:16 61:13 62:12 81:15 88:19 92:14 136:23 137:1 170:12 219:1 230:24 | |
| subjective(1) 189:22 | |
| submission(1) 238:23 | |
| submissions(2) 17:3 88:6 | |
| submit(6) 44:3 53:2 122:25 130:1 172:5 202:8 | |
| submitted(18) 41:5 41:11 42:6 43:14 43:15 43:22 44:2 44:12 44:25 45:19 45:20 79:21 86:19 156:11 156:12 173:19 197:8 232:3 | |
| subordinate(1) 97:1 | |
| subordination(4) 72:19 126:25 127:1 127:5 | |
| subparagraph(2) 105:8 107:10 | |
| subparts(1) 21:13 | |
| subs(1) 146:8 | |
| subsequent(1) 69:3 | |
| subsequently(2) 99:8 228:5 | |
| subset(1) 205:1 | |
| subsidiaries(17) 24:23 25:4 25:9 26:7 47:22 56:18 62:20 110:15 117:5 117:5 118:5 118:7 150:15 150:15 150:23 207:25 234:20 | |
| subsidiary(14) 24:8 24:9 24:10 24:14 25:18 73:4 73:5 73:15 77:4 83:4 97:15 97:16 127:10 127:11 | |
| subsidiary's(1) 197:14 | |
| substance(1) 73:18 | |
| substances(1) 8:8 | |
| substantial(2) 125:19 205:24 | |
| substantially(1) 209:4 | |
| substantiv(10) 15:18 15:19 33:6 42:11 42:12 54:13 72:23 104:23 137:25 218:9 | |
| succeed(1) 159:17 | |
| successful(1) 27:1 | |
| such(32) 11:12 15:9 37:22 42:7 44:3 60:18 79:13 86:8 93:17 96:1 100:13 102:17 102:19 102:22 111:14 116:3 121:21 126:1 130:24 177:13 178:7 180:18 180:20 190:8 192:13 192:13 192:14 192:14 217:22 219:2 220:5 231:13 | |
| sudden(1) 114:9 | |
| sue(3) 13:8 156:13 156:16 | |
| sued(3) 38:15 71:14 156:1 156:22 185:3 185:5 228:5 | |
| sues(1) 223:20 | |
| suffer(1) 65:24 | |
| suffered(3) 69:15 102:4 112:7 | |
| suffering(3) 69:15 102:4 112:7 | |
| suffice(1) 162:8 | |
| sufficient(24) 12:14 12:18 19:13 33:1 35:16 79:5 82:20 95:10 100:21 111:4 121:17 138:4 139:13 166:4 166:17 176:14 191:15 192:15 193:1 199:1 209:19 218:17 219:10 234:17 | |

| Word | Page:Line |
|------|-----------|
| sufficiently(4) 40:4 139:3 139:9 139:16 | |
| suggest(13) 18:7 25:2 29:17 80:8 96:16 106:23 187:19 188:21 206:6 208:14 209:7 225:9 236:1 | |
| suggested(11) 25:1 29:3 30:7 94:1 96:6 96:18 99:3 211:11 212:21 213:4 236:19 | |
| suggesting(1) 236:23 | |
| suggestion(8) 20:23 27:16 29:16 30:10 103:6 122:8 204:25 220:23 | |
| suggests(5) 34:14 126:25 136:15 208:3 228:21 | |
| suing(1) 230:15 | |
| suits(3) 208:9 234:5 235:3 | |
| sum(2) 73:18 76:13 | |
| summaries(1) 72:16 | |
| summary(12) 21:1 30:22 34:8 39:23 102:15 104:17 111:7 119:5 120:17 137:13 181:5 240:11 | |
| summing(1) 60:8 | |
| sums(1) 118:9 184:18 | |
| super(1) 64:24 | |
| superior(1) 108:2 | |
| supervision(2) 42:14 117:23 | |
| supplies(1) 189:17 | |
| support(13) 9:24 33:3 42:2 110:10 110:13 114:22 119:22 120:12 127:24 156:20 170:16 176:11 177:6 | |
| supported(6) 36:2 80:20 102:10 111:4 119:6 184:11 | |
| supporting(1) 125:8 | |
| supports(12) 102:3 105:22 106:10 106:24 111:1 113:4 114:21 118:24 120:8 120:11 154:20 154:22 | |
| suppose(1) 38:14 | |
| supposed(1) 98:9 | |
| supreme(23) 12:11 18:10 21:6 21:22 21:23 62:6 68:23 69:4 84:12 90:11 90:14 90:19 90:24 111:2 122:12 125:14 175:24 206:20 211:14 219:17 220:7 234:4 234:16 | |
| sur-reply(1) 196:15 | |
| sure(21) 7:8 11:4 30:2 54:1 54:4 71:24 77:16 77:24 78:19 88:16 144:15 153:17 167:18 167:24 196:6 196:8 196:13 210:13 213:19 221:25 238:12 | |
| surely(1) 70:11 | |
| surprise(1) 88:7 | |
| surprised(4) 19:25 59:11 68:20 193:6 | |
| surprising(7) 53:2 62:19 62:21 134:8 134:10 134:18 172:3 | |
| surprisingly(3) 140:9 161:19 173:11 | |
| survive(2) 31:6 76:15 | |
| susan(1) 4:28 | |
| suspect(2) 115:11 65:16 | |
| sustain(4) 88:11 183:9 238:25 239:21 | |
| swallow(1) 206:25 | |
| swap(1) 172:12 | |
| swift(42) 9:4 22:25 40:2 51:6 56:7 56:8 56:9 56:20 57:2 57:25 64:13 74:7 74:12 102:24 108:17 109:20 109:22 109:25 110:4 110:5 110:15 111:17 112:7 117:20 117:2 117:25 118:5 118:8 118:15 147:21 150:6 150:11 151:9 159:15 162:23 171:20 193:2 193:24 204:22 207:23 225:19 234:20 | |
| sworn(3) 9:22 41:5 149:7 | |
| system(13) 51:13 55:2 55:6 70:17 70:20 94:18 126:3 126:12 146:15 201:22 215:23 216:2 216:3 | |
| systems(2) 112:15 205:14 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **table**(1) 135:3 | | **test**(64) 11:15 11:16 11:17 11:22 12:14 | | **that**(301) 6:22 7:1 7:2 7:4 7:8 8:11 8:17 | | **that**(301) 58:15 58:23 58:25 59:1 59:11 |
| **tack**(1) 46:6 | | 12:25 14:22 21:7 33:18 34:11 35:16 37:18 | | 8:17 8:19 8:22 9:6 9:13 9:14 9:18 9:21 | | 59:12 60:1 60:3 60:7 60:9 60:10 60:13 |
| **tactical**(1) 29:17 | | 37:18 46:4 63:9 63:9 78:25 79:25 80:7 | | 9:23 10:4 10:7 10:8 10:12 10:14 10:20 | | 60:14 60:16 60:21 60:21 60:23 60:25 61:2 |
| **tailored**(2) 129:4 132:1 | | 80:11 81:18 83:19 84:14 91:19 92:2 94:24 | | 10:22 11:7 11:12 11:16 11:19 11:20 12:15 | | 61:6 61:19 61:20 61:21 61:21 62:22 63:12 |
| **take**(48) 10:19 13:17 26:2 26:19 31:10 | | 95:16 96:16 96:18 96:19 97:24 98:6 98:8 | | 12:25 13:3 13:8 13:11 13:23 13:25 14:8 | | 63:15 63:22 63:22 64:7 64:10 64:22 65:1 |
| 32:23 34:17 43:17 44:24 46:5 49:21 53:15 | | 99:24 100:1 101:7 112:13 130:22 140:6 | | 14:18 14:23 14:24 15:7 15:13 16:14 16:15 | | 65:13 66:3 66:5 66:6 66:16 67:3 67:9 |
| 60:24 69:23 69:25 70:2 78:4 78:13 85:19 | | 141:14 141:17 142:5 142:8 142:14 142:14 | | 16:18 16:19 16:20 17:3 17:6 17:16 17:19 | | 67:15 67:15 67:21 67:21 68:4 68:7 68:8 |
| 88:6 88:14 100:15 101:2 109:10 110:25 | | 142:15 146:13 146:14 177:4 177:4 177:7 | | 17:23 18:5 18:17 18:25 19:4 19:6 19:7 | | 68:15 68:18 68:19 68:23 69:2 69:5 70:21 |
| 113:3 114:1 123:8 123:9 132:22 138:20 | | 186:22 188:2 189:17 189:19 189:22 200:1 | | 19:14 19:17 19:20 19:24 19:25 20:1 20:17 | | 70:25 71:3 71:5 71:9 71:9 71:19 71:21 71:22 |
| 140:23 157:15 161:2 169:18 171:16 183:2 | | 200:23 201:6 201:7 201:8 201:8 207:24 | | 20:24 21:3 21:11 21:12 21:13 21:18 21:23 | | 72:15 72:18 72:21 72:21 73:2 73:2 73:3 |
| 190:4 190:15 191:9 191:20 213:14 213:17 | | 211:17 | | 22:1 22:9 22:10 22:13 22:24 23:2 23:5 | | 73:3 73:6 73:6 73:12 73:12 73:13 73:14 |
| 220:20 221:23 225:6 233:22 240:24 | | | | 23:8 23:15 23:20 23:23 23:24 24:4 24:8 | | 73:14 73:17 73:17 74:4 74:5 74:7 74:8 |
| | | **testified**(3) 53:10 135:9 136:1 | | 24:10 24:11 24:12 25:2 25:4 25:7 25:7 | | 74:9 74:10 74:14 74:16 74:20 74:21 75:3 |
| **taken**(25) 30:10 54:16 55:3 80:14 81:20 | | **testing**(1) 125:23 | | 25:11 25:14 25:15 25:20 26:5 26:9 26:10 | | 75:3 75:5 75:6 75:12 75:17 75:19 75:20 |
| 91:25 98:3 98:14 100:11 105:1 105:2 | | **tests**(16) 12:21 12:22 13:1 13:2 13:4 24:2 | | 26:11 26:13 26:14 26:18 26:18 26:20 | | 75:22 76:1 76:5 76:6 76:8 76:9 76:9 |
| 105:10 109:5 112:17 128:3 134:14 146:24 | | 45:18 45:23 50:23 63:7 93:25 100:20 | | 26:23 27:8 27:13 27:14 27:15 27:16 27:20 | | 76:11 76:16 76:19 76:21 76:22 |
| 180:25 182:17 183:15 187:9 188:8 201:2 | | 144:24 145:1 165:23 165:23 | | 27:23 28:1 28:7 28:14 28:17 28:18 28:22 | | 76:24 77:1 77:3 77:10 78:2 78:12 78:19 |
| 223:4 229:1 | | | | 28:21 29:3 29:5 29:11 29:14 29:14 29:15 | | 79:1 79:3 79:8 79:9 79:9 79:12 79:16 79:18 |
| | | **texas**(25) 208:12 208:12 208:14 208:15 | | 29:18 29:22 29:24 30:1 30:4 30:7 30:7 | | 79:19 79:20 79:22 80:2 80:6 80:9 80:13 |
| **takeover**(1) 24:23 | | 208:20 208:20 209:2 213:1 214:16 214:17 | | 30:15 30:17 30:24 30:24 31:1 31:2 31:4 | | 81:3 81:5 81:6 81:10 81:12 81:13 81:14 |
| **takes**(5) 121:2 121:4 124:20 173:16 174:5 | | 214:22 215:1 215:4 215:10 215:11 215:24 | | 33:15 33:17 33:18 33:20 33:23 34:2 34:6 | | 81:16 81:16 81:18 81:19 81:20 82:3 82:7 |
| **taking**(11) 32:20 92:2 93:17 94:4 95:21 | | 216:5 216:8 222:21 222:25 223:6 223:8 | | 34:12 34:14 34:21 34:22 34:24 35:1 35:5 | | 82:14 82:18 82:20 82:22 82:24 83:2 83:2 |
| 131:20 185:7 187:14 188:17 215:4 217:17 | | 223:12 226:20 233:25 | | 35:7 35:17 35:24 36:6 36:8 36:10 36:11 | | 83:4 83:6 83:7 83:9 83:12 83:15 83:25 |
| | | | | 36:12 36:13 36:14 36:15 36:17 36:19 | | 84:5 84:8 84:13 84:19 84:22 84:23 85:6 |
| **talk**(20) 8:17 42:21 42:23 54:9 69:11 | | **text**(3) 217:21 218:6 221:10 | | 36:22 36:23 36:24 37:1 37:2 37:3 37:5 | | 85:7 85:12 85:17 85:18 85:19 85:20 86:9 |
| 78:15 80:18 123:7 138:12 139:11 140:1 | | **textbooks**(1) 48:6 | | 37:7 37:11 37:16 37:17 37:18 37:20 38:1 | | 87:18 87:18 88:1 88:11 88:19 88:20 88:22 |
| 140:9 149:17 151:10 152:12 161:12 163:5 | | **than**(32) 14:17 19:22 60:5 67:23 72:9 | | 38:8 38:8 38:11 38:14 38:17 38:20 39:6 | | 88:24 88:24 89:2 89:5 89:20 89:23 90:3 |
| 167:8 167:9 181:9 | | 83:23 85:9 87:7 90:24 94:11 122:15 | | 39:16 39:22 39:25 40:4 40:5 40:5 40:8 | | 90:6 90:16 91:9 91:16 91:16 91:17 |
| | | 122:18 124:2 132:22 155:4 163:16 166:13 | | 40:10 40:11 40:12 40:12 41:1 41:6 41:10 | | 91:23 91:25 92:1 92:2 92:15 92:17 92:19 |
| **talked**(6) 50:5 110:16 145:15 149:1 166:16 | | 169:20 175:10 179:14 194:3 197:4 219:7 | | 41:15 42:2 42:6 42:20 42:21 42:21 43:18 | | 92:20 93:6 93:13 93:21 94:9 94:17 94:23 |
| 230:18 | | 225:20 225:22 227:12 229:1 239:16 239:19 | | 43:21 44:1 44:2 44:5 44:9 44:18 44:20 | | 95:1 95:7 95:8 95:10 95:13 95:13 95:18 |
| | | 240:7 240:12 241:2 | | 45:17 45:19 45:20 45:22 45:22 46:1 46:7 | | 96:2 96:3 96:5 96:16 96:19 96:20 96:24 |
| **talking**(16) 38:9 44:21 52:14 57:7 57:8 | | | | 46:14 46:21 47:23 48:3 48:3 48:5 48:8 | | 97:1 97:8 97:13 97:19 97:21 97:23 97:23 |
| 57:8 93:25 143:10 145:17 147:4 147:5 | | **thank**(70) 6:3 6:19 7:3 23:10 23:11 38:24 | | 48:18 48:19 48:25 49:10 49:12 49:14 | | 97:25 98:2 98:5 98:6 98:7 98:15 98:17 |
| 151:7 151:10 160:5 170:10 185:10 | | 38:25 69:13 77:18 77:19 77:20 78:8 78:1 | | 49:21 49:25 50:1 50:2 50:4 50:6 50:12 | | 98:20 99:3 99:3 99:10 99:10 99:10 99:19 |
| | | 78:18 78:19 80:18 98:25 99:1 114:15 | | 50:16 50:17 50:19 50:20 51:8 51:17 52:1 | | 99:23 100:6 100:10 100:15 100:16 100:22 |
| **tanning**(1) 162:4 | | 132:15 132:15 133:19 133:20 133:21 | | 52:15 53:2 53:3 53:8 53:8 53:10 54:1 | | 101:5 101:7 101:7 101:8 101:9 101:11 |
| **tar**(1) 59:8 | | 133:23 133:25 134:2 134:7 156:24 157:18 | | 54:2 54:3 54:5 54:7 54:8 54:10 54:19 | | 101:12 101:18 101:21 102:2 102:3 102:4 |
| **target**(1) 233:6 | | 171:7 171:8 171:9 179:21 179:22 179:24 | | 54:20 54:22 54:23 55:1 55:3 55:8 55:9 | | 102:7 102:8 102:9 102:9 102:11 102:11 |
| **task**(2) 21:24 178:7 | | 180:1 195:18 195:19 196:3 196:4 196:4 | | 56:5 56:13 56:25 57:1 57:10 57:22 58:1 | | 102:17 103:3 103:4 103:6 103:7 103:19 |
| **tasks**(1) 45:21 | | 196:12 196:17 202:9 202:10 202:10 203:2 | | 58:2 58:13 | | 103:19 103:20 103:23 104:8 104:10 104:19 |
| **tax**(37) 8:24 8:24 10:7 41:8 41:23 42:7 | | 213:21 213:23 214:10 221:17 221:18 | | | | 104:20 105:1 105:2 105:2 105:3 105:3 |
| 42:9 42:13 42:15 51:5 51:7 51:10 52:6 | | 222:6 222:7 222:15 222:15 224:7 224:7 | | | | 105:10 105:12 105:16 |
| 52:10 52:12 52:13 52:21 53:15 55:23 | | 233:21 237:14 237:15 237:15 237:21 238: | | | | |
| 57:16 103:14 103:16 108:4 108:7 108:8 | | 239:2 239:10 240:15 240:17 241:7 | | | | |
| 111:11 111:11 113:14 145:10 145:13 146:3 | | | | | | |
| 146:4 147:18 147:20 147:20 167:12 | | | | | | |
| 171:20 | | | | | | |
| **taxation**(3) 42:16 118:21 118:21 | | | | | | |
| **taxing**(1) 113:15 | | | | | | |
| **taylor**(1) 2:20 | | | | | | |
| **teachings**(1) 21:6 | | | | | | |
| **team**(10) 26:5 43:8 57:16 65:11 90:23 | | | | | | |
| 103:19 107:12 110:4 110:11 149:8 | | | | | | |
| **technicality**(1) 26:20 | | | | | | |
| **technically**(1) 203:6 | | | | | | |
| **technological**(1) 39:6 | | | | | | |
| **telephonic**(3) 3:16 4:1 5:1 | | | | | | |
| **tell**(16) 7:2 12:12 16:5 78:12 104:16 | | | | | | |
| 132:21 133:2 134:3 147:23 148:5 148:5 | | | | | | |
| 162:11 162:12 174:3 186:8 223:11 | | | | | | |
| **telling**(5) 59:6 170:1 172:5 208:13 212:19 | | | | | | |
| **tells**(1) 17:10 | | | | | | |
| **temporary**(1) 234:12 | | | | | | |
| **ten**(1) 69:21 | | | | | | |
| **tender**(1) 85:21 | | | | | | |
| **term**(6) 84:19 205:3 212:10 234:13 234:17 | | | | | | |
| 234:22 | | | | | | |
| **terms**(17) 15:6 38:4 54:24 75:16 90:25 | | | | | | |
| 100:23 105:17 105:19 106:2 106:9 106:9 | | | | | | |
| 113:12 113:12 156:6 165:3 204:24 217:24 | | | | | | |
| **terribly**(1) 82:4 | | | | | | |
| **terrific**(1) 152:18 | | | | | | |
| **territory**(1) 213:10 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**that**(301) 105:12  105:23  106:10  106:12 106:14  106:15  106:16  106:17  106:19 106:23  106:24  107:1  107:2  107:2  107:21 107:23  107:24  108:4  108:14  109:4  109:5 109:5  109:7  109:8  109:9  109:10  109:10 109:11  109:12  109:12  109:12  109:13 109:22  110:10  110:21  110:22  110:25  111: 111:5  111:6  111:7  111:18  111:19  111:20 111:21  111:24  111:25  112:11  112:12 112:16  112:20  112:23  112:24  113:4  113:9 113:16  113:19  113:25  114:2  114:13  114: 114:21  114:22  114:23  114:25  115:25 116:20  117:8  117:10  117:14  117:22  118:3 118:4  118:8  119:2  119:9  119:12  119:13 119:15  119:18  119:20  119:22  119:23  120: 120:8  120:11  120:14  120:15  120:16 120:16  120:17  120:19  121:1  121:3  121:5 121:6  121:7  121:13  121:14  121:17  121:23 122:5  122:6  122:9  122:9  122:11  122:15 122:16  122:18  122:24  122:24  123:2  123:7 123:11  123:25  124:1  124:3  124:4  124:9 124:25  125:1  125:4  125:5  125:6  125:7 125:8  125:18  126:12  126:23  126:25  127:3 127:4  127:6  127:8  127:12  127:20  127:22 128:3  128:17  128:22  128:23  128:24  128:2 129:1  129:1  129:3  129:5  129:8  129:11 129:12  129:17  129:18  129:21  130:1  130:1 130:2  130:6  130:6  130:11  130:13  130:14 130:15  130:16  130:19  131:5  131:8  131:10 131:14  131:16  131:17  131:25  132:5  132:7 132:7  132:24  133:9  133:22  134:3  134:14 134:18  135:10  135:12  135:21  136:2  136:1 136:15  136:21  136:21  136:23  136:25 136:25  137:3  137:7  137:10  137:11  137:14 138:7  138:11  138:12  138:23  139:1  139:7 139:8  139:13  139:14  139:23  139:23  139:2 140:11  140:12  140:14  141:9  141:13 141:13  141:14  141:17  141:17  141:24 141:24  142:3  142:10  142:23  143:1  143:3 143:9  143:11  143:13  143:13  143:17  143:2 143:24  144:17  144:19  144:21  145:3 145:11  145:15  145:17  145:22  146:4  146:1 147:13  147:13  147:14  147:17  147:20 148:1  148:17  148:19  148:22  149:7  149:12 149:14  149:14  149:18  149:19  149:20 149:21  149:23  149:24  150:2  150:5  150:5 150:5  150:9  150:17  150:19  150:19  150:21 150:23  150:24  151:14  151:14  151:15 151:24  152:6  152:16  152:18  153:10  153:1 153:13  153:14  153:15  153:21  153:24 154:5  154:7  154:17  154:18  154:20  154:22 154:23  154:25  155:4  155:11  155:17  155:2 156:1  156:1  156:4  156:7

**that**(301) 156:9  156:9  156:9  156:14 156:19  156:19  156:20  156:21  156:22  157: 157:16  158:2  158:9  158:12  158:15  158:17 158:18  158:18  158:25  159:6  159:6  159:8 159:12  159:18  159:18  159:22  159:23 159:23  160:9  160:10  160:13  160:15  160:1 161:13  161:16  161:17  161:22  162:5 162:10  162:16  162:17  162:19  162:20  163: 163:7  163:14  163:22  163:23  164:7  164:17 164:25  165:4  165:6  165:12  165:14  165:20 165:24  166:5  166:15  167:2  167:4  167:5 167:8  167:11  167:21  167:23  168:1  168:4 168:6  168:8  168:9  168:12  168:18  168:21 168:22  168:25  169:23  170:2  170:4  170:6 170:11  170:25  171:1  172:9  172:12  172:13 172:14  172:16  172:17  172:20  172:23 172:24  173:10  173:12  173:13  173:25 174:12  174:22  174:23  175:1  175:2  175:6 175:6  175:8  175:13  175:13  175:13  175:18 175:23  175:25  175:25  176:2  176:5  176:5 176:8  176:10  176:14  176:15  176:16  176:1 176:22  176:25  177:3  177:7  177:8  177:8 177:10  177:11  177:12  178:12  178:12 178:13  178:14  178:17  179:16  179:19  180: 180:4  180:6  180:6  180:12  180:13  180:15 180:17  180:17  181:4  181:16  181:17  181:2 181:24  182:1  182:2  182:6  182:8  182:9 182:12  182:12  182:13  182:13  182:16 182:20  182:23  182:25  183:1  183:6  183:7 183:10  183:10  183:12  183:14  183:14 183:17  183:18  183:21  183:21  183:22 183:22  183:24  184:2  184:3  184:4  184:5 184:7  184:15  184:19  184:23  185:1  185:2 185:5  185:6  185:6  185:7  185:9  185:10 185:12  186:5  186:7  186:10  186:14  186:20 186:21  186:23  186:25  186:25  187:4  187:5 187:8  187:15  187:16  187:16  187:18  187:1 187:23  188:1  188:3  188:6  188:10  188:13 188:15  188:16  188:21  189:1  189:8  189:11 189:16  189:18  189:19  190:12  190:13 190:16  190:16  190:17  190:18  190:19 190:21  191:2  191:4  191:6  191:12  191:14 191:15  191:17  191:18  191:20  192:5  192:1 192:12  192:15  192:18  192:20  192:21 192:22  192:23  192:24  193:1  193:1  193:1 193:4  193:6  193:7  193:9  193:14  193:15 193:16  193:17  193:23  193:23  193:24 193:25  193:25  194:6  194:7  194:8  194:10 194:12  194:13  194:17  194:18  194:19 194:25  195:2  195:3  195:9  195:10  195:11 195:15  195:16  195:24  196:15  196:17 196:25  197:3  197:18  197:19  197:22  198:2 199:7  199:9  199:17  199:20  199:21

**that**(301) 199:21  200:1  200:1  200:5  200:7 200:9  200:10  200:13  200:16  200:17  200:1 200:19  200:22  201:1  201:3  201:6  201:10 201:12  201:13  201:14  201:14  201:16 201:19  201:20  201:23  202:3  202:3  202:4 202:19  203:6  203:7  203:7  203:11  203:15 203:16  203:17  203:19  203:20  203:20  204: 204:8  204:17  204:20  204:22  204:24 204:25  205:1  205:12  205:17  205:21  205:2 205:24  205:25  206:3  206:4  206:7  206:11 206:12  206:13  206:16  206:18  206:18 206:20  206:21  206:23  207:1  207:5  207:5 207:8  207:10  207:11  207:13  207:15  207:1 207:17  207:21  207:22  207:24  208:1  208: 208:4  208:6  208:7  208:9  208:12  208:14 208:15  208:21  208:24  208:25  209:2  209:6 209:6  209:11  209:15  209:15  209:23  210:3 210:9  210:14  211:4  211:6  211:7  211:9 211:11  211:14  211:19  211:25  212:1  212:7 212:8  212:12  212:12  212:22  212:25  213:4 213:5  213:11  213:16  213:19  214:11  214:1 214:19  214:20  214:25  214:25  215:12 215:16  215:22  215:24  216:1  216:2  216:3 216:7  216:8  216:20  217:11  217:12  217:14 217:16  217:22  218:2  218:10  218:16  218:2 218:25  219:1  219:4  219:5  219:14  219:20 219:24  220:1  220:3  220:8  220:10  220:12 220:17  220:18  220:19  220:24  221:1  221:4 221:5  221:9  221:13  222:5  222:18  222:20 222:20  223:5  223:8  223:9  223:18  223:21 223:21  223:23  224:1  224:4  224:10  224:11 224:11  224:15  224:21  224:22  224:25  225:2 225:7  225:9  225:9  225:13  225:15  225:17 225:19  225:19  225:25  225:25  226:3  226:6 226:8  226:15  226:16  226:21  226:21  227:6 227:9  227:13  227:17  227:20  227:21  227:2 227:24  227:25  228:8  228:9  228:14  228:15 228:18  228:18  228:21  229:3  229:4  229:4 229:6  229:15  229:16  229:21  229:24  230:3 230:18  230:19  230:22  230:25  231:5  231:7 231:12  231:15  231:19  231:21  231:25  232: 232:5  232:10  232:12  232:16  232:17 232:18  232:21  232:23  232:24  233:1  233:1 233:3  233:7  233:11  233:25  234:2  234:3 234:9  234:9  234:11  234:14  234:17  234:21 234:22  234:23  234:24  235:2  235:2  235:6 235:7  235:11  235:14  235:18  235:21  235:2 235:24  236:6  236:10  236:11  236:11 236:12  236:21  236:23  236:23  237:1  237:3 237:3  237:4  237:10  237:11  237:12  237:13 237:17  237:18

**that**(31) 238:6  238:21  238:23  238:25 239:5  239:7  239:8  239:9  239:10  239:11 239:11  239:16  239:17  239:19  239:20 239:24  239:25  240:1  240:1  240:4  240:6 240:8  240:9  240:11  240:22  240:22  240:23 241:3  241:4  241:9  241:15

**that's**(97) 9:14  12:17  14:16  15:2  17:18 17:23  19:23  21:9  24:10  25:5  27:17  29:4 32:11  35:5  37:23  39:24  40:15  41:19  41:25 41:25  42:23  44:11  45:6  45:9  46:4  46:22 47:8  48:4  48:14  49:4  49:5  49:14  51:15 52:2  52:7  54:3  54:8  56:2  56:20  57:3 57:14  57:19  59:23  60:4  60:6  62:10  62:24 63:1  64:7  64:9  64:10  64:11  64:13  64:19 65:16  66:19  67:18  70:19  71:11  74:7  74:13 75:4  75:15  75:19  77:12  77:17  82:2  82:8 82:20  86:10  87:1  88:25  89:4  89:16  89:22 89:25  93:14  96:24  97:22  98:7  100:12 102:1  102:2  103:2  103:6  104:21  106:3 107:11  112:21  113:9  119:15  121:12  122:19 129:3  131:5  131:10  132:7

**that's**(81) 14:10  13:6:5  136:18  137:20 139:1  140:11  140:12  141:22  143:7  143:13 146:2  146:16  147:14  147:19  148:20  148:2 150:10  151:9  151:20  152:14  153:4  153:6 154:8  154:8  156:14  158:13  158:14  159:25 161:16  162:8  162:12  165:2  165:3  167:5 167:14  168:7  168:12  168:25  169:7  169:25 175:5  175:18  180:9  181:12  181:19  186:17 188:6  188:24  192:6  195:8  196:16  197:6 197:9  197:23  197:24  198:9  199:4  199:22 200:21  204:10  205:20  205:20  207:17 209:19  210:17  211:1  213:11  215:25  223:19 224:8  225:11  225:11  226:1  226:10  227:14 230:24  232:13  233:15  236:25  237:1  240:9

**the**(301) 1:1  1:2  1:19  2:23  3:27  6:3  6:7 6:8  6:9  6:10  6:14  6:14  6:16  6:18  6:19 6:22  6:23  6:23  7:1  7:5  7:6  7:7  7:9  7:11 7:16  7:18  7:18  7:22  7:23  7:24  8:1  8:2  8:3 8:4  8:4  8:6  8:8  8:12  8:13  8:14  8:16  8:18 8:21  8:23  9:1  9:2  9:6  9:7  9:10  9:12  9:17 9:17  9:19  9:21  9:21  9:21  9:23  10:1  10:4 10:4  10:7  10:9  10:10  10:12  10:12  10:13 10:14  10:23  10:23  11:7  11:8  11:11  11:15 11:16  11:17  11:18  11:18  11:21  11:21 11:22  11:23  11:23  12:3  12:7  12:11  12:13 12:14  12:14  12:17  12:19  12:20  12:21 12:21  12:22  12:22  12:25  13:1  13:3  13:11 13:12  13:13  13:15  13:18  13:22  13:23  14:1 14:4  14:8  14:9  14:11  14:22  14:23  14:24 14:25  15:1  15:3  15:5  15:5  15:12  15:13 15:13  15:16  15:17  15:18  15:19  15:20 15:22  15:24  15:25  16:4  16:4  16:6  16:7 16:12  16:13  16:15  16:20  16:21  16:25 16:25  17:2  17:2  17:3  17:6  17:6  17:8 17:10  17:10  17:16  17:17  17:20  17:21 17:24  17:25  18:1  18:1  18:3  18:4  18:5 18:5  18:6  18:8  18:9  18:11  18:12  18:13 18:13  18:14  18:16  18:17  18:19  18:22  19:3 19:4  19:8  19:9  19:10  19:12  19:17  19:18 19:19  19:20  19:23  19:23  19:25  20:3  20:9 20:9  20:10  20:11  20:12  20:14  20:15  20:19 20:21  20:21  20:22  20:24  20:24  21:4  21:5 21:6  21:7  21:8  21:9  21:10  21:12  21:17 21:17  21:19  21:22  21:22  21:24  21:25  22:2 22:5  22:6  22:11  22:15  22:16  22:21  22:24 23:2  23:11  23:17  23:18  23:19  23:20  23:21 23:21  23:24  23:25  24:3  24:4  24:6  24:7 24:8  24:9  24:11  24:12  24:13  24:13  24:16 24:17  24:17  24:18  24:19  24:20  24:20 24:22  24:24  25:1  25:2  25:4  25:5  25:6 25:7  25:8  25:9  25:10  25:10  25:12  25:13 25:19  25:21  25:22  25:22  25:22  25:23 25:24  25:25  26:1  26:3  26:5  26:7  26:8 26:13  26:13  26:15  26:19  26:22  26:24 26:25  26:25  27:1  27:3  27:6  27:7  27:7 27:9  27:12  27:12  27:13  27:13  27:14  27:17 27:17  27:17  27:18  27:22  27:22

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **the**(301) 27:25 27:25 28:2 28:2 28:2 28:5 | | **the**(301) 51:10 51:11 51:14 51:15 51:15 | | **the**(301) 75:9 75:10 75:11 75:11 75:12 | | **the**(301) 95:15 95:19 95:20 95:23 | |

the(301) 27:25 27:25 28:2 28:2 28:2 28:5
28:6 28:8 28:9 28:10 28:12 28:13 28:15
28:19 28:20 28:21 28:21 28:22 28:24 29:
29:2 29:4 29:4 29:6 29:7 29:8 29:10
29:10 29:12 29:13 29:15 29:21 29:22 30:
30:7 30:8 30:9 30:11 30:11 30:13 30:14
30:15 30:15 30:17 30:20 30:20 30:23
30:24 30:25 30:25 31:3 31:3 31:5 31:7
31:8 31:11 31:12 31:16 31:18 31:20 31:21
31:21 31:23 31:23 32:2 32:3 32:7 32:8
32:9 32:9 32:10 32:13 32:13 32:14 32:15
32:16 32:16 32:16 32:17 32:18 32:19
32:19 32:20 32:25 33:2 33:3 33:5 33:6
33:9 33:10 33:11 33:18 33:19 33:23 33:25
33:23 34:2 34:5 34:6 34:8 34:11 34:14
34:15 34:15 34:16 34:24 35:2 35:3 35:4
35:5 35:6 35:7 35:10 35:11 35:11 35:12
35:13 35:13 35:15 35:17 35:17 35:19
35:20 35:22 35:24 36:1 36:2 36:3 36:4
36:5 36:6 36:7 36:7 36:9 36:11 36:12
36:14 36:19 36:20 36:20 36:22 36:22
36:22 36:24 37:1 37:1 37:5 37:6 37:6
37:8 37:10 37:13 37:14 37:15 37:15 37:16
37:17 37:19 37:20 37:21 38:1 38:2 38:3
38:5 38:7 38:8 38:8 38:11 38:12 38:12
38:19 38:19 38:23 39:3 39:8 39:10 39:10
39:12 39:17 39:24 40:1 40:9 40:11 40:12
40:13 40:15 40:19 40:21 40:24 40:25 41:6
41:9 41:12 41:15 41:16 41:20 41:21 42:3
42:9 42:9 42:16 42:17 42:19 42:23 42:25
43:1 43:2 43:6 43:11 43:15 43:20 43:22
43:24 43:25 44:1 44:1 44:4 44:6 44:7
44:8 44:8 44:10 44:15 44:17 44:21 44:22
45:2 45:5 45:8 45:13 45:21 45:21 45:22
46:1 46:2 46:3 46:4 46:8 46:10 46:11
46:12 46:14 46:16 46:18 46:18 46:24
46:25 46:25 47:1 47:2 47:4 47:5 47:6
47:11 47:14 47:16 47:17 47:19 47:19
47:20 47:21 47:21 47:22 47:22 48:1 48:1
48:2 48:5 48:6 48:9 48:11 48:17 48:18
48:19 48:21 48:22 48:22 48:25 49:1 49:3
49:4 49:5 49:6 49:12 49:12 49:12 49:14
49:17 49:17 49:21 49:23 49:24 50:1 50:2
50:3 50:6 50:9 50:15 50:23 51:2 51:4

the(301) 51:10 51:11 51:14 51:15 51:15
51:17 51:19 51:20 51:22 51:24 52:1 52:5
52:6 52:8 52:10 52:10 52:11 52:13 52:17
52:17 52:18 52:20 53:3 53:6 53:9 53:11
53:17 53:24 53:25 54:5 54:11 54:12 54:12
54:16 54:17 54:24 54:24 55:1 55:3 55:4
55:6 55:7 55:18 55:21 55:24 55:25 56:1
56:2 56:2 56:4 56:4 56:6 56:13 56:14
56:16 56:19 56:23 56:23 56:24 57:5 57:6
57:17 57:18 57:18 57:21 57:21 57:22
57:23 57:25 58:1 58:6 58:7 58:8 58:12
58:14 58:17 58:18 58:21 58:22 59:3 59:5
59:10 59:15 59:16 59:19 59:22 59:23 60:2
60:3 60:5 60:11 60:21 60:24 61:3 61:5
61:11 61:13 61:16 61:19 61:23 61:24 62:
62:4 62:5 62:5 62:6 62:7 62:8 62:12
62:15 62:18 62:18 62:19 62:21 62:24 63:
63:8 63:9 63:11 63:12 63:13 63:14 63:15
63:16 63:18 63:24 64:1 64:5 64:9 64:12
64:12 64:14 64:16 64:19 64:19 64:22
64:24 65:4 65:6 65:6 65:7 65:8 65:9
65:21 65:21 65:22 65:23 65:24 65:25 66:
66:1 66:2 66:5 66:6 66:8 66:9 66:10
66:12 66:15 66:18 66:18 66:21 67:1 67:3
67:4 67:5 67:5 67:7 67:9 67:10 67:12
67:14 67:14 67:15 67:15 67:16 67:18
67:19 67:21 67:24 67:25 67:25 68:1 68:5
68:8 68:15 68:15 68:22 68:23 68:25 69:2
69:4 69:8 69:10 69:12 69:13 69:13 69:18
69:20 69:23 70:1 70:5 70:6 70:8 70:9
70:10 70:13 70:14 70:15 70:16 70:17
70:17 70:18 70:19 70:20 70:22 70:22
70:25 71:1 71:5 71:5 71:6 71:6 71:10
71:11 71:11 71:12 71:13 71:13 71:14
71:15 71:16 71:17 71:19 71:20 71:22 72:
72:11 72:12 72:12 72:13 72:14 72:15
72:16 72:18 72:20 72:20 72:21 72:22
72:23 72:23 72:25 73:1 73:7 73:8 73:10
73:20 73:21 74:3 74:6 74:9 74:10 74:11
74:11 74:15 74:16 74:19 74:21 74:24
74:25 75:3 75:5 75:5 75:7 75:7

the(301) 75:9 75:10 75:11 75:11 75:12
75:13 75:13 75:14 75:16 75:16 76:1 76:4
76:4 76:6 76:7 76:9 76:13 76:13 76:15
76:17 76:18 76:22 77:6 77:6 77:9 77:10
77:14 77:15 77:15 77:16 77:18 77:20
78:11 78:18 78:19 78:21 78:22 78:23
78:24 79:1 79:3 79:4 79:11 79:12 79:13
79:14 79:17 79:18 79:19 79:19 79:20
80:10 80:12 80:13 80:15 80:15 80:23
80:24 81:1 81:2 81:2 81:4 81:6 81:8 81:9
81:24 81:25 82:3 82:6 82:6 82:11 82:13
82:13 82:15 82:16 82:16 82:19 82:20
82:23 83:3 83:5 83:7 83:8 83:8 83:13
83:14 83:15 83:18 84:2 84:4 84:8 84:9
84:9 84:10 84:11 84:14 84:17 84:19 84:22
84:24 84:25 85:2 85:4 85:5 85:8 85:10
85:11 85:12 85:13 85:13 85:14 85:18
85:18 85:20 85:22 85:23 85:24 85:24
85:25 86:1 86:4 86:14 86:18 86:20 86:22
86:24 86:25 87:4 87:9 87:9 87:10 87:12
87:13 87:19 87:20 87:23 87:24 87:25
87:25 88:4 88:5 88:6 88:10 88:16 88:19
88:21 88:22 88:23 88:23 89:4 89:4
89:7 89:7 89:8 89:10 89:12 89:12 89:13
89:16 89:18 89:20 89:21 89:24 89:25 90:
90:2 90:3 90:3 90:6 90:6 90:7 90:11
90:11 90:13 90:14 90:14 90:16 90:18
90:18 90:20 90:20 90:21 90:22 91:1 91:2
91:3 91:5 91:7 91:8 91:9 91:14 91:14
91:17 91:17 91:19 91:20 91:22 91:22
91:25 92:1 92:3 92:3 92:5 92:5 92:9
92:10 92:11 92:12 92:12 92:14 92:16
92:16 92:18 92:19 92:20 92:21 92:22 93:
93:1 93:2 93:2 93:3 93:4 93:5 93:6 93:8
93:9 93:9 93:15 93:15 93:16 93:16 93:18
93:18 93:19 93:20 93:20 93:21 93:21
93:22 93:23 94:1 94:2 94:2 94:3 94:3
94:4 94:5 94:5 94:6 94:6 94:7 94:7 94:8
94:8 94:12 94:15 94:17 94:18 94:20
94:24 94:24 95:1 95:1 95:1 95:2 95:3
95:3 95:3 95:5 95:5 95:6 95:8 95:9 95:9
95:10 95:11 95:12 95:13

the(301) 95:15 95:19 95:20 95:23
95:23 95:24 95:24 95:25 96:5 96:5 96:7
96:12 96:13 96:15 96:16 96:18 96:19
96:19 96:20 96:23 96:23 96:25 97:1 97:2
97:5 97:5 97:7 97:10 97:11 97:13 97:13
97:13 97:17 97:20 97:22 97:24 98:1 98:2
98:2 98:3 98:6 98:7 98:9 98:10 98:11
98:13 98:13 98:14 98:16 98:18 98:19
98:20 98:24 99:1 99:4 99:6 99:6 99:8
99:10 99:11 99:12 99:12 99:13 99:15
99:15 99:16 99:16 99:17 99:17 99:18
99:19 99:19 99:23 99:24 99:25 99:25
100:1 100:2 100:4 100:10 100:11 100:13
100:14 100:15 100:16 100:16 100:19
100:20 100:22 100:24 100:24 101:1 101:1
101:10 101:11 101:13 101:14 101:14
101:15 101:16 101:17 101:19 101:21
101:21 101:22 101:23 101:23 101:23
101:24 101:24 101:25 102:1 102:2 102:3
102:3 102:6 102:7 102:7 102:8 102:10
102:11 102:15 102:15 102:16 102:18
102:19 102:20 102:21 102:24 102:24 103:1
103:6 103:9 103:10 103:11 103:13 103:13
103:14 103:17 103:19 103:20 103:22
103:24 103:25 104:1 104:2 104:4 104:4
104:6 104:9 104:10 104:13 104:21 104:24
104:25 105:1 105:2 105:4 105:4 105:6
105:8 105:9 105:10 105:13 105:15 105:15
105:17 105:17 105:19 105:19 105:23 106:1
106:1 106:1 106:2 106:2 106:4 106:4
106:6 106:7 106:7 106:8 106:11 106:12
106:13 106:15 106:16 106:20 106:20
106:21 106:24 106:24 106:25 107:1 107:3
107:4 107:5 107:8 107:9 107:9 107:10
107:11 107:12 107:15 107:17 107:24
107:24 107:25 107:25 108:2 108:4 108:6
108:6 108:7 108:8 108:8 108:10 108:16
108:18 108:18 108:23 108:23 108:24
108:25 109:2 109:4 109:7 109:8 109:9
109:13 109:16 109:16 109:17 109:22
109:23 109:25 110:2 110:3 110:3 110:4
110:6 110:7 110:10 110:12 110:12 110:13
110:14 110:15 110:16 110:18 110:18
110:24 111:1 111:2 111:6 111:8 111:13
111:21 111:21 111:24 111:25 112:2 112:3
112:5 112:6 112:9 112:10 112:11 112:12
112:13 112:15 112:16 112:16 112:17
112:17 112:19 112:19 112:20 112:22
112:22 112:23 112:25 113:1 113:4 113:5
113:6 113:6 113:8 113:8 113:9 113:11
113:11 113:12 113:12 113:13 113:15
113:18 113:19 113:19 113:20

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the(301)** 113:20 113:23 113:25 113:25 114:2 114:4 114:5 114:5 114:6 114:7 114:7 114:8 114:9 114:9 114:9 114:11 114:13 114:17 114:20 114:22 114:24 114:25 114:25 115:1 115:2 115:3 115:5 115:6 115:6 115:7 115:7 115:8 115:11 115:12 115:15 115:15 115:16 115:18 115:25 116:1 116:4 116:6 116:7 116:11 116:19 116:19 116:20 116:20 116:21 116:21 116:22 116:22 116:24 116:25 117: 117:2 117:2 117:3 117:5 117:5 117:7 117:9 117:9 117:11 117:12 117:12 117:13 117:14 117:15 117:17 117:17 117:18 117:22 117:23 117:24 117:25 118:4 118:5 118:6 118:8 118:9 118:11 118:12 118:16 118:24 119:1 119:2 119:6 119:7 119:7 119:8 119:10 119:11 119:13 119:14 119:1 119:16 119:19 119:21 119:21 119:23 119:24 120:1 120:2 120:3 120:5 120:7 120:9 120:11 120:13 120:14 120:17 120:1 120:18 120:19 120:20 120:20 120:21 120:23 120:25 121:1 121:2 121:7 121:9 121:12 121:14 121:14 121:16 121:18 121:18 121:19 121:19 121:23 121:25 122: 122:4 122:5 122:5 122:8 122:10 122:13 122:14 122:19 122:20 122:21 122:22 122:22 122:25 122:25 123:6 123:7 123:12 123:13 123:17 123:21 123:21 123:22 123:23 123:23 123:24 124:1 124:3 124:7 124:8 124:9 124:10 124:11 124:12 124:13 124:16 124:16 124:18 124:19 124:21 124:22 124:24 124:25 124:25 125:1 125:1 125:2 125:3 125:4 125:6 125:9 125:11 125:12 125:12 125:13 125:14 125:14 125:15 125:19 125:19 125:20 125:20 125:21 125:24 126:2 126:7 126:8 126:11 126:13 126:16 126:16 126:17 126:17 126:19 126:19 126:21 126:22 126:24 126:25 127:1 127:5 127:6 127:6 127:7 127:13 127:20 127:20 127:21 127:21 127:23 127:23 127:25 128:2 128:3 128:4 128:6 128:8 128:12 128:15 128:18 128:20 128:20 128:24 128:24 128:25 129:1 129:3 129:3 129:4 129:4 129:5 129:6 129:6 129:7 129:8 129:11 129:12 129:12 129:13 129:14 129:15 129:15 129:15 129:16 129:17 129:18 129:18 129:19 129:19 129:20 129:20 129:21 129:21 129:22 129:24 129:24 130:1 130:2 130:4 130:6 130:8 130:9 130:10 130:11 130:14 130:16 130:18 130:22 130:22 130:23 130:23 130:24 130:24 130:25 131:1 131:1 131:1 131:2 131:2 131:2 131:2 131:3 131:3 131:5 131:6 131:7 131:13

**the(301)** 131:14 131:15 131:15 131:17 131:18 131:21 131:21 131:22 131:24 131:25 132:2 132:2 132:5 132:7 132:7 132:8 132:11 132:12 132:14 132:15 132:2 133:1 133:5 133:8 133:11 133:15 133:17 133:20 133:22 134:2 134:5 134:8 134:10 134:11 134:11 134:13 134:15 134:25 135: 135:3 135:3 135:4 135:5 135:7 135:9 135:9 135:16 135:18 135:22 136:4 136:5 136:16 136:16 136:11 136:12 136:12 136:1 136:16 136:17 136:19 136:19 136:22 136:24 137:1 137:4 137:7 137:9 137:14 137:16 137:16 137:16 137:17 137:18 137:20 137:24 138:2 138:3 138:4 138:6 138:8 138:9 138:10 138:14 138:22 138:23 138:24 138:24 139:5 139:11 139:12 139:1 139:19 139:21 139:22 140:1 140:3 140:6 140:7 140:10 140:10 140:12 140:13 140:1 140:15 140:16 140:18 140:20 140:23 141:4 141:6 141:6 141:7 141:9 141:9 141:10 141:11 141:11 141:12 141:12 141:14 141:15 141:17 141:18 141:19 141:20 141:20 141:21 141:21 141:24 142: 142:5 142:5 142:11 142:14 142:14 142:15 142:18 142:19 142:19 142:20 142:21 142:21 142:22 142:23 142:24 142:24 142:25 143:6 143:6 143:7 143:9 143:10 143:11 143:12 143:12 143:12 143:13 143:16 144:5 144:7 144:7 144:10 144:11 144:13 144:15 144:17 144:19 144:21 144:23 144:24 144:25 145:3 145:6 145:6 145:12 145:25 146:2 146:3 146:4 146:5 146:8 146:9 146:11 146:22 146:22 146:23 147:3 147:4 147:5 147:6 147:7 147:8 147:8 147:8 147:11 147:12 147:13 147:14 147:17 147:20 147:23 147:24 148:2 148:8 148:8 148:9 148:11 148:13 148:14 148:16 148:20 148:23 148:23 149:1 149:2 149:2 149:8 149:11 149:12 149:12 149:17 149:2 150:1 150:1 150:4 150:5 150:8 150:13 150:15 150:16 150:20 150:20 150:22 150:22 150:25 151:1 151:2 151:3 151:5 151:5 151:7 151:10 151:13 151:15 151:16 151:23 151:23 151:24 151:24 152:4 152:5 152:7 152:15 152:17 152:18 152:22 152:2 153:9 153:10 153:13 153:17 153:24 154:4 154:6 154:9 154:9 154:10 154:11 154:13 154:13 154:14 154:20 154:22 154:24 154:25 155:1 155:2 155:3 155:7 155:8 155:9 155:10 155:12 155:16 155:19 155:2 155:25 155:25 156:1 156:5

**the(301)** 156:8 156:8 156:9 156:13 156:18 156:21 156:22 156:24 157:1 157:4 157:4 157:7 157:8 157:10 157:13 157:15 157:17 157:21 157:23 158:2 158:5 158:8 158:10 158:13 158:22 158:23 158:25 159:1 159:4 159:10 159:14 159:18 159:22 159:22 159:24 159:25 160:10 160:12 160:15 160:20 160:23 160:24 161:2 161:2 161:4 161:6 161:6 161:7 161:8 161:13 161:14 161:16 161:18 161:19 161:19 161:23 161:23 162:1 162:2 162:3 162:4 162:5 162:7 162:8 162:9 162:13 162:14 162:14 162:15 162:16 162:20 162:21 163:1 163:2 163:3 163:5 163:7 163:8 163:9 163:11 163:13 163:14 163:18 163:20 163:21 164: 164:5 164:5 164:7 164:7 164:8 164:12 164:15 164:18 164:22 165:6 165:6 165:6 165:8 165:8 165:11 165:14 165:19 165:22 167:10 167:13 167:19 167:19 167:22 168:8 168:11 168:11 168:11 169:4 169:4 169:6 169:8 169:9 169:12 169:15 169:17 170:2 170:4 170:6 170:14 170:14 170:18 170:19 171:2 171:6 171:8 171:11 171:14 171:16 171:17 171:17 171:19 171:20 171:22 171:23 171:23 171:24 171:24 172: 172:2 172:3 172:5 172:6 172:7 172:8 172:9 172:9 172:10 172:10 172:11 172:11 172:12 172:14 172:14 172:18 172:19 172:19 172:20 172:20 172:21 172:22 172:23 172:24 172:25 173:1 173:6 173:6 173:6 173:7 173:10 173:12 173:13 173:15 173:15 173:16 173:21 173:22 173:24 173:25 174:2 174:3 174:4 174:5 174:6 174:10 174:13 174:13 174:20 174:2 174:21 174:23 174:24 174:24 174:24 175:1 175:4 175:5 175:6 175:7 175:11 175:12 175:12 175:13 175:14 175:16 175:18 175:19 175:21 175:21 175:23 175:24 175:25 176:4 176:4 176:8 176:10 176:10 176:17 176:19 176:24 176:25 177: 177:12 177:18 177:19 177:21 178:1 178:2 178:3 178:5 178:6 178:10 178:11 178:11 178:11 178:12 178:14 178:16 178:17 178:20 179:2 179:4 179:8 179:12 179:14 179:16 179:20 179:24 180:2 180:4 180:6 180:7 180:8 180:11 180:12 180:19 180:20 180:21 180:23 180:24 181:2 181:3 181:8 181:9 181:15 181:15 181:16 181:19 181:2 181:22 181:23 182:1 182:1 182:2 182:3 182:3 182:4 182:5 182:6 182:7 182:8 182:9 182:10

**the(301)** 182:10 182:11 182:12 182:15 182:15 182:16 182:16 182:20 183:1 183:4 183:7 183:7 183:9 183:10 183:13 183:14 183:16 183:19 183:19 183:20 184:3 184:3 184:4 184:5 184:6 184:8 184:9 184:10 184:12 184:13 184:17 184:19 184:20 184:21 184:24 184:25 185:3 185:4 185:5 185:6 185:8 185:9 185:14 185:14 185:15 185:17 185:19 185:20 185:22 185:24 185:24 186:1 186:2 186:4 186:4 186:4 186:5 186:10 186:13 186:15 186:15 186:16 186:16 186:17 186:18 186:19 186:19 186:21 187:1 187:6 187:7 187:8 187:8 187:10 187:17 187:18 187:23 187:25 188:1 188:4 188:6 188:8 188:8 188:9 188:11 188:12 188:12 188:14 188:18 188:22 188:25 188:25 189:1 189:2 189:7 189:7 189:10 189:11 189:11 189:13 189:13 189:16 189:16 189:17 189:17 189:18 189:19 189:23 189:24 189:25 190:2 190:7 190:7 190:11 190:16 190:17 190:19 190:19 190:21 190:23 190:24 190:25 191:2 191:4 191:9 191:10 191:11 191:13 191:13 191:14 191:16 191:18 191:19 191:21 191:22 192:1 192:2 192:3 192:6 192:10 192:10 192:10 192:11 192:11 192:11 192:14 192:17 192:20 192:21 192:25 193:8 193:10 193:11 193:13 193:15 193:19 193:20 193:21 194:2 194:3 194:3 194:4 194:5 194:6 194:7 194:7 194:8 194:8 194:9 194:10 194:11 194:11 194:12 194:13 194:17 194:19 194:22 194:22 194:24 194:24 194:25 195:3 195:4 195:5 195:9 195:11 195:18 195:21 195:21 195:22 195:23 195:24 196:2 196:4 196:7 196:9 196:11 196:15 196:18 196:22 196:23 197:1 197:13 197:14 197:14 197:15 197:18 197:20 197:21 197:21 197:22 197:22 197:23 197:24 197:24 197:25 197:25 198:2 198:3 198:4 198:6 198:9 198:11 198:13 198:17 198:17 198:20 198:23 198:25 199:4 199:4 199:4 199:7 199:10 199:12 199:16 199:16 199:19 199:19 199:21 199:23 199:25 200:4 200:4 200:4 200:7 200:8 200:10 200:14 200:17 200:23 200:24 200:25 201:2 201:6 201:6 201:7 201:8 201:8 201:11 201:18 201:19 201:19 201:21 201:21 201:22 202:4 202:5 202:8 202:10 202:12 202:14 202:17 202:19 202:20 202:22 202:23 202:25 203:1 203:2 203:3 203:5 203:7 203:7 203:8 203:9 203:9 203:13 203:14 203:17 203:19 203:20 203:22 203:23 203:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**the(301)** 203:24 203:25 204:1 204:4 204:5 204:6 204:7 204:11 204:13 204:14 204:15 204:16 204:18 204:19 204:20 204:21 204:22 204:23 204:23 204:25 205:3 205:5 205:7 205:8 205:11 205:13 205:15 205:15 205:17 205:20 205:20 205:21 205:23 205:25 205:25 206:1 206:2 206:6 206:7 206:8 206:8 206:10 206:11 206:11 206:12 206:15 206:17 206:17 206:19 206:19 206:20 206:20 206:21 206:22 206:25 207:2 207:3 207:4 207:5 207:6 207:7 207:9 207:10 207:12 207:14 207:17 207:1 207:20 207:21 207:24 207:24 207:25 207:25 208:1 208:3 208:4 208:5 208:6 208:8 208:10 208:11 208:11 208:15 208:1 208:19 208:21 208:22 208:23 208:25 209:1 209:2 209:2 209:4 209:5 209:5 209:6 209:6 209:8 209:10 209:11 209:17 209:18 209:20 209:22 210:1 210:2 210:3 210:4 210:5 210:6 210:7 210:7 210:8 210:8 210:8 210:9 210:10 210:11 210:14 210:18 210:19 210:20 210:21 210:23 210:24 210:25 210:25 211:1 211:2 211:2 211:4 211:6 211:8 211:12 211:12 211:13 211:13 211:15 211:16 211:17 211:19 211:19 211:22 211:23 211:25 212:1 212:2 212:4 212:4 212:6 212:7 212:8 212:9 212:9 212:9 212:10 212:11 212:13 212:14 212:15 212:16 212:17 212:17 212:20 212:20 212:25 213:4 213:4 213:6 213:6 213:7 213:7 213:13 213:14 213:19 213:19 213:23 214:1 214:2 214:2 214:5 214:6 214:7 214:9 214:13 214:14 214:15 214:16 214:16 214:19 214:20 214:23 215:2 215:5 215:5 215:6 215:7 215:10 215:11 215:13 215:15 215:20 215:21 215:22 215:22 215:24 215:25 216:1 216:2 216:2 216:2 216:4 216:8 216:11 216:13 216:14 216:14 216:15 216:18 216:19 216:21 216:22 216:23 216:25 217:1 217:2 217:3 217:4 217:5 217:8 217:8 217:9 217:9 217:9 217:11 217:13 217:15 217:16 217:16 217:17 217:18 217:19 217:20 217:21 217:21 217:23 217:23 217:24 217:25 218:5 218:6 218:6 218:7 218:8 218:11 218:12 218:13 218:14 218:14 218:16 218:18 218:21 218:22 218:23 218:24 219:4 219:4 219:6 219:7 219:8 219:8 219:9 219:11 219:11 219:13 219:15 219:1 219:16 219:17 219:18 219:20 219:21 219:22 220:2 220:2 220:3 220:4 220:7 220:7 220:8 220:9 220:10 220:10 220:12 220:14 220:15 220:16 220:17

**the(301)** 220:17 220:18 220:19 220:20 220:21 220:24 220:24 220:25 221:2 221:2 221:7 221:9 221:9 221:10 221:10 221:11 221:12 221:13 221:14 221:16 221:18 221:19 221:22 221:25 222:1 222:3 222:6 222:11 222:11 222:13 222:15 222:1 222:18 222:20 222:21 222:23 222:24 222:25 223:1 223:1 223:3 223:5 223:5 223:10 223:14 223:14 223:16 223:18 223:19 223:23 223:24 224:3 224:4 224:6 224:9 224:11 224:11 224:12 224:12 224:14 224:16 224:17 224:21 224:21 224:21 224:23 224:24 224:25 225:1 225:2 225:3 225:4 225:5 225:6 225:7 225:8 225:8 225:10 225:12 225:13 225:15 225:17 226:1 226:7 226:7 226:8 226:9 226:9 226:13 226:13 226:13 226:15 226:1 226:17 226:20 226:21 226:23 226:24 226:25 227:4 227:5 227:5 227:7 227:8 227:9 227:10 227:11 227:12 227:15 227:1 227:17 227:19 227:20 227:20 227:21 227:21 227:22 227:24 227:25 228:1 228:1 228:2 228:5 228:5 228:7 228:8 228:8 228:9 228:9 228:13 228:13 228:15 228:20 228:21 228:22 228:24 229:2 229:2 229:3 229:5 229:5 229:8 229:10 229:11 229:12 229:13 229:13 229:15 229:15 229:15 229:16 229:17 229:18 229:19 229:20 229:21 229:22 229:22 229:23 229:23 229:23 230:6 230:10 230:10 230:11 230:14 230:1 230:16 230:20 230:20 230:24 230:25 231:1 231:3 231:4 231:8 231:10 231:11 231:12 231:13 231:14 231:17 231:17 231:18 231:21 231:22 231:23 231:25 232: 232:3 232:3 232:4 232:5 232:7 232:8 232:9 232:12 232:12 232:13 232:13 232: 232:15 232:16 232:16 232:17 232:18 232:19 232:20 232:21 232:23 232:24 233:3 233:5 233:6 233:7 233:9 233:12 233:13 233:15 233:19 233:22 234:1 234:3 234:3 234:5 234:8 234:10 234:11 234:11 234:12 234:13 234:13 234:14 234:16 234:17 234:18 234:19 234:20 234:20 234:21 234:22 234:23 234:24 234:25 235: 235:1 235:2 235:3 235:4 235:9 235:10 235:10 235:11 235:13 235:13 235:15 235:15 235:15 235:16 235:17 235:18 235:19 235:21 235:21 235:22 235:24 235:25 236:2 236:3 236:5 236:5 236:5 236:8 236:14 236:14 236:16 236:18 236: 236:20 236:21 236:21 236:22 236:24 236:24 236:25 237:2 237:4

**the(64)** 237:5 237:9 237:10 237:11 237:15 237:21 237:21 237:23 238:2 238:2 238:3 238:4 238:7 238:8 238:9 238:10 238:10 238:11 238:12 238:12 238:14 238:16 238:18 238:19 238:20 238:24 238:25 239: 239:3 239:5 239:6 239:7 239:9 239:12 239:13 239:15 239:19 239:20 239:21 239:22 240:1 240:1 240:4 240:5 240:11 240:12 240:13 240:13 240:14 240:17 240:19 240:25 240:25 241:1 241:1 241:1 241:3 241:5 241:5 241:12 241:15 241:16 241:16 241:17

**their(196)** 8:15 9:18 13:5 13:12 15:7 15:16 16:17 17:5 17:12 17:15 18:7 20:1 20:23 22:12 23:23 24:1 24:2 24:3 27:1 29:2 30:12 31:22 32:2 32:4 32:12 32:24 33:1 33:4 33:8 33:9 33:9 33:16 33:21 37:2 40:8 41:2 41:17 41:19 42:1 42:1 42:14 43:12 44:4 45:3 45:4 45:18 45:23 45:24 46:3 48:7 49:25 52:2 52:15 53:21 55:13 56:7 57:10 57:25 60:2 60:20 63:3 63:17 64:19 67:9 71:24 73:18 74:16 76:5 78:25 79:1 79:4 82:9 83:20 86:10 87:11 92:8 95:22 101:3 101:18 102:12 106:25 107:1 107:2 109:1 109:1 109:25 110:1 126:9 129:12 131:15 134:23 135:9 135:9 135:16 135:17 135:19 136:1 136:23 139:9 140:14 140:15 141:5 142:2 144:22 144:23 145:17 145:19 146:13 146:13 146:23 146:25 149:19 150:10 151:4 151:22 152:1 152:6 152:8 153:23 154:5 154:6 154:19 156:2 156:14 156:16 156:17 156:20 156:2 158:19 160:16 160:25 161:9 161:10 167:9 167:23 168:16 168:23 169:3 169:7 169:10 169:13 170:1 170:8 172:10 172:25 180:16 181:11 181:19 182:18 182:19 185:7 185:1 185:19 186:22 192:21 193:25 197:23 197:24 197:25 198:1 199:20 200:3 200:12 203:11 203:15 203:16 205:10 205:14 205:16 205:19 205:19 208:13 208:14 208:19 209:11 209:14 209:23 211:7 212:7 212:23 214:21 215:14 215:19 215:25 218:18 220:15 220:16 220:24 222:24 223:23 228:6 230:13 233:25 234:6 236:7 236:15

**theirs(1)** 68:4

**them(81)** 16:24 18:1 18:8 18:9 19:19 19:24 20:6 20:7 21:21 26:6 32:8 32:20 38:15 39:18 43:9 43:25 44:2 45:5 48:15 50:24 68:12 72:16 72:17 75:21 76:20 78:15 79:22 80:21 85:17 85:22 87:22 89:14 91:2 98:7 104:10 107:22 111:5 118:1 119:17 124:14 127:25 128:19 130:1 134:6 135:23 138:25 139:3 152:10 153:1 153:21 155:9 155:12 155:15 156:13 156:1 166:23 168:16 176:13 183:21 184:9 185:4 185:23 188:24 188:24 193:2 193:16 193:2 195:2 200:2 201:5 206:5 206:6 208:18 209:7 209:14 225:7 225:23 228:4 233:23 235:20 237:5

**theme(6)** 9:17 9:17 72:21 167:6 167:7 197:23

**themes(1)** 42:17

**themselves(1)** 112:1

**then(59)** 16:18 17:25 19:11 21:18 39:19 40:19 44:24 52:5 55:21 57:5 62:6 63:22 64:1 64:14 69:12 70:19 70:22 75:15 78:8 78:15 81:21 88:14 88:18 93:14 108:12 110:6 112:15 117:14 124:17 135:9 139:1 141:19 146:23 148:9 148:20 149:21 152:1 155:9 157:11 159:22 160:4 173:22 176:19 179:17 179:18 182:25 184:6 184:22 190:1 190:11 196:17 197:15 199:21 201:17 203:23 212:19 226:23 232:6 233:19

**theory(3)** 15:7 45:7 149:19

**there(234)** 8:22 9:12 9:18 10:11 12:1 12:6 12:18 13:9 17:14 17:22 19:4 19:20 21:11 21:19 22:7 23:23 25:17 25:20 26:14 27:4 27:10 27:11 28:7 28:13 28:16 28:17 28:18 28:19 29:7 31:1 31:20 33:19 34:12 34:13 34:24 36:9 36:14 36:15 37:6 37:11 37:14 38:18 39:11 39:25 45:19 47:13 48:22 49: 49:6 49:8 49:10 52:7 53:13 54:22 54:25 55:6 55:12 57:6 57:18 58:25 60:10 60:13 60:15 60:17 60:25 61:6 61:7 61:8 63:20 64:21 71:23 72:15 72:21 73:2 73:13 73:16 73:17 73:23 74:1 74:4 74:22 75:10 75:12 76:16 77:5 79:14 82:17 83:6 83:22 84:4 87:18 90:20 91:23 93:5 94:3 101:25 102:14 103:3 103:3 105:3 106:9 107:21 107:23 107:23 108:12 109:6 112:10 113:2 113:4 114:21 117:19 118:16 118:25 119:4 120:19 120:24 121:3 121:17 124:5 124:14 125:7 125:18 127:13 129:1 130:4 130:15 130:15 135:4 137:12 137:13 137:17 139:1 139:13 142:7 142:22 143:2 144:25 149:7 151:7 152:13 155:8 155:9 155:13 155:14 155:14 156:18 157:18 159:16 161:5 162:4 162:7 162:9 163:19 163:21 164:10 164:19 167:3 167:20 168:5 168:22 170:3 171:21 171:22 171:24 171:25 173:23 175:9 175:23 175:25 176:5 177:14 177:24 178:16 181:18 182:20 183:2 184:11 186:8 186:9 189:12 189:13 190:4 191:12 191:15 191:18 192:15 192:19 193:9 196:15 197:5 198:2 199:8 199:24 200:24 201:16 205:1 207:5 207:11 207:19 208:9 209:4 210:5 210:16 214:17 215:20 217:13 219:10 219:23 220:2 220:19 220:20 221:3 223:10 224:16 225:22 226:12 226:24 227:8 228:12 229:6 229:12 229:18 232:24 233:10 234:15 234:17 234:19 234:20 234:24 235:7 236:20 239:16

**there's(81)** 9:4 9:16 10:19 11:5 13:7 13:8 14:8 21:13 23:2 32:20 35:1 37:11 37:16 37:24 39:22 40:8 49:16 50:12 50:18 51:17 54:9 56:22 56:23 58:22 59:20 60:9 64:5 66:13 66:19 67:14 69:4 70:17 71:18 75:14 76:19 77:4 79:8 81:12 82:18 87:2 88:5 89:2 90:4 92:1 95:16 96:3 97:23 100:4 100:5 101:9 101:25 102:14 110:19 111:5 114:16 114:21 114:24 118:19 119:9 120:6 121:13 122:10 123:25 124:8 125:10 126:15 126:19 127:9 127:12 127:18 130:6 131:4 132:2

**thereby(2)** 92:9 206:2

**therefore(7)** 75:21 126:16 128:2 129:23 140:5 156:9 161:10

**there's(74)** 137:25 140:6 140:6 140:7 142:3 144:25 149:10 150:24 152:13 153:7 154:2 155:15 156:7 156:21 157:23 160:5 160:9 160:11 161:10 161:12 161:17 164:13 164:15 164:20 164:21 165:15 165:19 166:11 166:18 166:23 167:1 167:2 168:3 168:21 168:24 169:19 169:21 181:22 188:5 190:11 193:22 194:25 197:5 197:16 200:9 201:10 201:11 201:12 201:13 201:16 201:17 201:18 202:1 203:10 203:10 204:25 206:4 208:24 210:22 213:1 215:3 218:13 219:10 220:23 221:23 224:16 225:9 226:6 227:6 235:11 237:2 238:3 239:14 239:18

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**these**(151) 9:25  9:25  10:2  10:8  10:15  10:17  13:4  13:17  15:23  16:21  16:25  17:7  17:11  17:16  17:19  17:24  18:4  18:12  19:7  22:21  23:1  23:8  25:18  26:5  26:10  26:14  27:20  28:17  29:16  29:22  30:5  30:17  34:8  34:17  36:25  37:12  39:14  40:1  42:3  42:18  43:22  44:5  44:12  44:25  48:12  50:19  50:25  52:12  52:13  53:15  53:17  58:8  59:17  63:7  63:23  72:18  79:8  86:3  86:13  87:3  88:7  90:24  91:1  91:8  95:15  98:1  98:1  102:23  103:7  103:16  103:18  105:7  108:25  109:2  109:15  110:8  110:25  111:25  113:16  113:2  116:8  116:10  118:12  118:13  119:4  119:11  120:22  124:2  125:3  126:20  126:23  131:20  147:10  148:24  152:2  153:5  153:10  156:11  156:20  157:19  162:23  164:5  164:16  165:8  165:11  168:14  176:11  180:23  180:24  182:22  184:5  185:7  186:23  187:18  188:17  192:3  192:7  192:24  193:14  194:2  194:9  194:23  197:3  199:8  199:25  200:2  200:3  200:11  203:7  203:8  204:15  205:2  205:6  205:21  206:8  206:8  206:18  207:9  207:10  212:22  213:11  216:18  222:9  224:5  226:3  230:14  234:10  236:7  236:21  239:15  240:6

**they**(301) 7:11  7:12  8:20  10:3  11:3  11:5  11:6  11:13  12:5  12:7  12:15  13:4  13:5  13:24  13:24  14:1  14:1  14:2  14:13  14:13  14:14  14:20  15:5  15:6  15:9  15:14  15:17  15:19  15:19  15:20  15:20  16:3  16:6  16:7  16:18  18:9  18:12  19:17  20:1  22:10  22:14  22:17  22:19  22:20  22:21  24:3  25:4  25:19  26:15  27:10  27:21  30:19  30:25  32:2  32:5  32:5  32:6  32:9  32:17  32:19  32:22  32:24  32:25  33:8  33:15  33:15  33:17  33:17  33:18  33:21  33:23  34:9  36:1  37:4  37:5  37:5  39:19  39:19  39:25  40:2  40:3  40:10  41:5  41:14  41:25  42:6  42:10  42:12  42:15  42:24  42:25  43:1  43:2  43:13  43:14  43:14  43:15  43:17  43:23  43:24  44:1  44:3  44:3  44:4  44:11  44:12  44:13  44:13  44:23  44:25  44:25  45:5  45:9  46:5  46:5  46:9  46:24  47:8  47:15  47:23  49:10  50:13  50:14  50:20  50:22  50:23  51:18  52:8  52:9  52:9  52:12  52:25  52:16  52:19  52:22  53:4  53:21  53:21  54:2  54:11  54:12  54:15  54:15  54:24  55:1  55:5  55:13  55:21  56:1  56:3  56:3  56:5  57:2  57:5  57:10  57:15  58:24  58:25  59:4  59:6  59:10  59:23  60:2  60:4  62:10  63:5  63:10  63:19  63:20  63:24  64:1  64:1  64:4  64:15  64:17  64:18  64:20  65:7  66:9  66:9  66:23  67:5  67:11  67:11  67:25  68:11  68:13  71:10  73:11  73:11  73:19  73:21  76:8  76:12  76:24  77:7  78:15  79:22  79:25  80:1  80:7  80:22  81:10  81:12  81:14  81:17  82:17  82:24  83:2  83:9  85:9  86:6  86:14  86:16  86:17  86:18  87:1  87:23  89:12  89:24  90:19  90:22  92:3  97:18  97:22  98:6  98:13  101:17  104:20  105:10  106:23  107:8  109:13  109:13  109:1  111:4  112:10  115:12  116:19  117:8  119:3  119:6  119:16  119:16  119:18  120:23  120:22  123:7  123:11  125:6  126:4  126:22  127:7  127:24  128:18  128:19  129:8  130:14  132:1  132:12  134:13  134:14  134:15  134:23  134:24  135:7  135:13  135:15  135:24  136:8  137:5  137:8  137:10  138:22  139:5  139:16  140:15  141:1  141:24  143:18  143:1  143:20  143:21  143:25  144:1  144:21  144:23  144:24  145:16  145:20  145:21  145:2  145:22  145:24

**they'd**(1) 119:13

**they'll**(3) 45:17  78:15  90:20

**they're**(59) 8:10  9:3  9:16  12:12  14:14  15:13  16:1  16:5  16:7  16:8  16:12  17:1  17:13  19:25  22:18  26:20  29:5  29:16  30:18  30:22  32:20  32:21  36:13  40:9  41:1  41:22  43:9  46:10  46:16  49:18  51:8  52:1  52:12  52:14  54:12  55:12  57:7  57:7  57:8  59:6  61:22  64:7  64:25  67:21  68:2  68:12  68:22  75:2  78:13  78:19  80:1  80:23  81:15  86:7  90:24  91:1  96:5  96:18  97:4  104:15  104:17  105:3  105:4  106:4  106:19  106:22  108:1  108:14  110:9  110:9  110:9  119:5  123:10  123:16  125:13  128:19  130:13  132:3

**they've**(15) 17:1  17:4  22:18  22:22  32:21  33:12  73:17  79:23  80:6  85:11  85:19  106:14  119:17  130:11  131:14

**they're**(36) 140:23  140:3  140:5  142:3  142:15  144:25  145:6  145:17  147:4  147:5  150:11  150:21  151:7  151:10  159:11  159:12  163:24  165:15  169:4  170:10  176:11  180:5  182:11  182:23  193:18  193:18  197:7  206:18  207:10  217:9  222:7  222:9  222:19  230:11  235:23  239:22

**they've**(17) 145:4  145:5  148:18  156:6  156:15  185:5  192:20  192:20  192:21  195:6  223:17  223:23  225:14  232:4  237:11  240:2

**thick**(1) 61:14
**thin**(2) 156:18  202:6
**thing**(20) 15:5  21:18  24:12  46:6  54:6  60:2  61:14  63:11  64:1  74:10  134:13  143:24  146:21  153:24  168:2  169:12  189:17  193:21  195:8  238:17

**things**(25) 29:16  32:23  34:17  34:22  36:3  37:5  39:6  46:20  46:21  46:24  50:10  50:20  53:15  85:18  98:5  106:17  110:18  111:6  143:19  148:23  162:21  166:19  185:15  196:2  240:6

**think**(188) 6:11  6:13  7:4  8:21  9:13  11:6  12:2  12:5  13:4  13:15  15:3  20:17  21:20  22:12  25:2  28:6  30:16  31:25  34:11  34:22  34:25  38:18  40:11  43:21  44:1  44:4  44:20  45:2  45:14  45:21  46:4  46:11  47:13  49:14  50:23  51:1  53:19  55:2  59:3  59:10  60:19  60:24  61:8  62:6  64:7  67:13  68:4  69:3  69:18  71:1  71:12  73:7  76:17  77:12  77:22  77:23  79:2  79:22  84:21  85:5  85:17  86:6  86:19  87:5  87:22  88:3  88:6  88:7  89:11  90:17  91:11  98:21  99:10  99:13  109:8  114:19  119:15  124:6  132:6  132:14  132:21  132:24  133:9  134:23  135:1  135:4  137:12  137:25  138:17  139:5  139:8  143:4  143:7  143:19  144:3  144:9  145:3  148:18  148:19  149:5  152:20  155:16  156:7  157:11  157:23  160:16  160:18  162:13  163:15  163:16  163:19  163:24  165:5  165:12  165:23  165:24  165:24  166:7  166:24  167:17  170:12  171:15  173:16  174:8  174:17  175:15  177:17  178:2  178:18  178:21  178:23  179:5  180:5  183:12  183:12  183:18  184:8  185:6  185:10  187:21  189:8  192:9  192:15  193:10  194:10  194:23  194:24  194:25  196:7  197:7  197:17  198:24  198:25  199:18  203:5  208:13  208:18  210:6  211:15  211:24  213:16  214:10  215:5  219:13  219:22  220:6  221:22  222:4  222:18  232:2  232:20  232:22  232:23  233:6  233:15  237:18  237:20  237:22  239:10  239:23  240:11  240:22  241:2

**thinks**(2) 195:3  196:8
**third**(20) 21:7  21:12  21:17  44:23  60:12  86:1  121:16  129:23  175:7  206:24  219:3  224:24  225:15  228:10  230:8  230:15  231:1  231:2  236:11  236:17

**thirdly**(1) 8:2

**this**(301) 6:4  8:21  8:22  9:24  10:13  10:14  10:16  11:3  11:4  11:13  12:2  12:3  13:14  13:15  13:20  14:15  15:1  15:10  16:14  17:5  17:6  17:7  17:8  20:20  21:8  21:15  22:11  22:19  22:21  23:14  23:14  25:14  26:4  26:12  26:24  27:16  28:25  29:8  29:8  29:13  30:10  30:19  31:4  31:23  32:11  33:4  33:7  34:25  35:21  36:6  36:18  38:1  38:5  40:18  41:3  41:10  41:11  41:17  41:22  42:13  42:17  42:18  43:14  43:22  44:22  45:6  45:10  45:13  45:24  46:11  48:4  48:14  48:23  49:5  49:7  49:18  49:20  49:22  49:24  50:13  51:2  51:8  51:13  51:13  52:2  54:6  54:14  54:19  54:21  55:8  55:21  56:7  56:24  57:21  57:25  58:20  59:3  59:6  59:19  59:19  59:20  59:21  60:1  60:2  61:10  61:12  61:12  61:13  61:14  61:24  63:12  64:14  64:14  64:22  65:2  65:3  65:8  66:13  67:2  67:20  68:6  68:9  69:19  70:2  70:11  70:18  71:1  71:2  71:10  73:8  74:3  74:5  74:8  74:25  75:23  76:10  76:14  77:11  77:23  78:20  79:7  80:19  81:5  81:23  83:11  83:19  84:18  85:17  86:5  86:11  86:12  86:21  87:7  87:14  87:15  87:21  88:7  88:15  90:4  90:5  90:14  90:22  92:15  92:21  92:21  92:24  94:19  94:22  95:22  96:16  97:5  97:6  97:7  97:12  97:19  97:24  99:8  99:18  99:19  100:1  100:9  101:18  102:4  102:19  104:15  104:17  104:19  105:11  105:20  105:22  105:24  106:3  106:5  106:12  106:17  107:1  107:20  108:7  108:25  109:14  109:25  110:18  112:14  112:20  112:23  113:2  113:17  113:24  113:25  114:12  114:16  114:18  114:20  114:25  115:1  115:3  115:8  115:13  115:25  116:3  116:7  117:8  117:9  117:10  117:16  118:1  118:10  118:11  119:10  119:18  119:19  120:8  120:18  121:10  121:16  121:24  122:18  123:11  123:17  124:2  124:7  124:23  124:24  125:16  125:16  126:1  126:9  127:11  127:12  127:16  127:22  128:17  129:7  130:11  133:6  133:12  134:16  134:24  135:20  136:8  136:16  138:18  140:2  140:21  140:25  141:15  142:7  142:8  142:9  142:16  143:19  143:20  144:8  144:14  144:18  144:19  145:1  145:4  145:5  145:9  145:6  146:12  146:21  147:6  148:10  149:10  149:20  149:22  149:25  150:2  150:16  150:18  151:1  151:3  151:4  151:17  152:6  152:20  153:14  154:12

**this**(167) 155:1  155:16  157:5  157:24  158:5  158:6  158:22  159:1  159:12  159:15  159:17  159:21  160:6  160:8  160:8  161:14  162:3  162:9  162:13  163:12  163:25  164:12  164:18  165:3  165:11  165:13  166:6  166:8  166:9  166:16  166:17  166:23  167:7  167:17  167:20  168:23  169:1  169:2  169:3  169:3  169:3  169:6  169:8  169:9  169:15  169:25  170:7  170:12  170:13  170:17  171:15  171:18  172:4  172:7  172:11  172:15  174:1  174:8  174:10  174:11  174:14  174:16  177:9  177:22  180:18  180:21  181:10  182:18  182:25  183:5  183:6  184:21  185:18  186:7  186:10  186:22  186:24  186:25  187:3  187:9  187:12  187:20  189:5  189:10  189:24  190:13  190:23  191:21  191:22  191:24  192:2  192:18  193:17  194:6  195:1  195:4  195:8  195:12  195:15  197:16  197:18  197:19  197:20  197:22  198:24  199:2  199:13  201:16  201:20  203:7  203:12  204:24  206:12  207:7  207:18  207:18  208:13  208:16  210:14  210:14  211:24  212:19  213:5  213:13  213:25  215:23  217:12  218:7  220:6  220:19  221:4  221:9  222:10  222:17  222:22  223:3  223:13  223:13  223:23  224:24  225:6  225:9  225:9  226:4  226:16  226:24  227:1  227:6  227:22  227:24  229:11  229:16  229:18  230:1  230:12  230:19  230:21  231:5  231:11  231:13  231:18  231:19  232:2  233:25  234:15  235:20  237:22  239:5

| Word | Page:Line |
|---|---|

**thomas**(1) 2:46
**thompson**(1) 135:11
**thoroughly**(3) 62:13 222:18 232:3
**those**(118) 6:26 8:13 8:14 9:4 9:9 9:11
11:24 11:25 23:7 27:3 27:15 27:20 27:22
31:9 34:2 35:4 38:14 41:4 41:10 43:7
43:18 43:24 50:24 51:22 56:17 58:15
63:14 67:19 76:19 79:2 80:9 80:14 81:21
82:3 86:11 92:6 92:8 92:13 94:6 94:15
95:18 97:3 97:3 101:2 102:8 103:5 104:3
107:7 112:9 117:6 117:19 118:7 119:18
122:14 123:8 123:9 123:14 130:25 139:4
139:7 139:8 139:24 145:1 146:17 146:18
149:2 149:5 158:4 160:18 164:12 167:24
168:9 170:24 172:4 173:4 174:17 176:15
176:18 177:17 181:25 182:23 183:15 184:1
184:17 189:21 189:22 190:20 191:6
193:18 202:8 203:15 204:10 204:20 208:1
209:15 210:25 211:17 212:1 215:14 215:15
215:17 216:13 216:18 217:6 223:2 229:1
232:11 232:17 232:21 232:22 232:23 233:1
233:8 234:18 234:22 235:18 235:19 238:

**though**(8) 46:9 47:18 47:21 48:10 48:17
78:18 98:23 182:1

**thought**(4) 9:2 80:15 199:2 241:5
**threadbare**(2) 17:9 21:16
**threatening**(1) 78:13
**three**(17) 7:19 8:10 21:7 43:1 46:24 50:10
64:5 70:25 85:22 94:7 107:7 121:10
204:16 216:7 216:10 218:2 233:23

**three-year**(1) 217:5
**through**(64) 16:13 22:11 23:18 24:4 24:4
26:7 32:1 34:11 37:6 37:19 46:12 50:17
51:2 68:14 69:8 69:18 71:2 72:4 72:17
84:23 88:14 93:18 98:19 103:5 104:8
108:17 113:3 124:14 124:17 124:18 128:6
141:16 144:16 144:18 145:14 147:22
148:10 150:6 152:20 160:13 163:13 164:1
164:16 167:18 168:1 169:6 174:16 176:16
177:17 184:12 187:7 188:9 189:7 190:17
203:21 210:4 215:19 217:18 221:14 225:7
226:10 235:25 239:9 240:18

**thrown**(1) 195:22
**thunder**(1) 164:4
**tibita**(2) 4:44 4:45
**tie**(1) 65:17
**tied**(1) 110:9
**ties**(2) 220:19 221:3
**time**(76) 7:5 7:8 9:11 9:15 17:8 17:10
17:14 20:21 22:19 23:25 24:20 27:1 34:4
43:15 49:20 57:11 60:7 64:12 67:2 69:23
74:15 77:23 84:23 86:19 89:24 90:24
95:14 102:24 115:25 118:15 124:7 132:21
133:22 140:23 143:2 143:6 145:22 145:25
153:10 155:10 156:11 157:5 157:15 159:2
160:18 161:4 163:23 163:24 164:7 165:8
165:10 166:2 171:12 172:8 177:16 179:18
195:1 208:11 213:14 214:2 215:17 215:17
217:18 221:19 221:20 226:25 231:17
233:16 233:19 237:18 237:18 237:22 238:
238:8 240:15 240:25

**time-barred**(8) 158:4 164:4 165:15 203:16
213:12 216:13 217:7 217:25

**time-wise**(1) 133:2
**timeline**(1) 39:11
**timeliness**(1) 212:17
**timely**(6) 212:24 212:25 214:13 220:13
220:18 221:2

**times**(3) 43:1 90:10 145:24
**title**(2) 59:21 161:19

**today**(24) 7:5 7:20 10:8 13:18 15:13 16:14
23:9 40:18 42:10 42:10 43:20 52:1 59:12
60:7 68:5 73:8 78:16 163:23 172:6 172:22
202:24 213:10 237:22 237:22

**today's**(3) 202:19 202:25 226:20
**todd**(44) 83:14 83:18 83:21 84:16 87:2
87:11 88:15 88:21 88:22 96:6 96:13 96:24
97:4 97:23 99:22 100:4 100:9 120:11
121:3 121:20 134:9 134:16 134:18 134:20
135:6 135:7 135:13 135:16 135:24 136:2
136:6 136:10 136:20 138:19 141:24 180:1
180:13 197:10 210:15 222:11 230:13
231:4 231:7 231:18

**todd's**(5) 83:23 84:7 84:21 87:17 100:13
**todd's**(3) 134:17 136:18 162:10
**toes**(1) 164:3
**together**(22) 9:4 16:3 29:14 36:3 55:17
68:12 76:2 80:22 84:25 90:25 103:3
106:19 107:12 107:22 108:18 122:14
127:24 147:23 148:4 191:19 192:1 192:1

**togut**(1) 5:31
**told**(7) 45:9 74:5 74:10 75:18 76:4 153:13
165:10

**tolled**(1) 233:4
**tolling**(6) 216:19 216:20 232:25 237:8
237:12 237:14

**tongue-twister**(1) 162:12
**tonight**(1) 241:9
**too**(12) 9:15 43:20 140:2 142:9 144:8
150:22 160:16 160:18 164:6 171:16 195:2
217:17

**took**(15) 7:8 25:7 27:21 36:10 56:10 104:5
107:8 107:13 116:2 129:1 131:18 164:11
164:11 187:7 239:8

**top**(4) 100:24 136:20 229:13 241:3
**tort**(7) 154:13 174:18 185:15 185:19
185:21 187:20 187:21

**total**(3) 72:19 127:1 153:3
**totality**(9) 92:3 98:13 109:9 114:20 137:8
140:4 155:9 183:19 240:14

**totally**(7) 47:24 56:5 138:16 149:17 160:5
207:4 207:11

**touch**(1) 222:19
**touched**(1) 167:17
**touchstone**(4) 21:25 95:20 199:16 207:7
**tour**(1) 46:12
**towards**(2) 113:24 186:25
**trace**(10) 149:23 158:16 159:22 159:24
168:6 168:9 191:6 193:5 201:5 201:18

**traceable**(3) 103:4 167:19 168:3
**tracing**(10) 158:25 167:22 190:21 191:2
192:20 193:11 193:17 194:1 196:1 201:4

**trade**(1) 82:7
**traditionally**(1) 173:2
**traffic**(1) 174:19
**tranches**(1) 18:18
**transaction**(13) 9:5 9:14 57:13 102:24
110:7 110:14 116:16 118:1 118:4 150:2
190:6 193:5 225:16

**transactions**(56) 8:23 9:9 17:1 22:24 23:3
26:1 26:6 26:10 26:14 28:2 28:21 29:20
40:1 51:3 63:23 67:19 75:7 83:7 98:17
103:5 103:7 103:17 103:20 105:7 109:15
110:25 111:25 112:1 112:9 119:3 124:9
124:20 129:13 130:3 162:19 162:24 165:9
166:8 176:8 176:16 182:24 184:1 187:9
189:2 189:10 190:18 193:10 200:4 200:11
205:2 207:9 207:10 225:17 234:10 236:6
236:8

**transcript**(5) 1:18 1:51 84:22 90:1 241:16
**transcription**(2) 1:43 1:51
**transcripts**(3) 84:25 89:8 222:2
**transfer**(51) 8:23 9:3 40:2 51:5 51:7
51:13 52:11 53:14 53:22 53:23 53:24
53:25 54:12 54:20 55:1 58:2 103:3 103:4
103:15 103:21 103:23 104:4 106:7 108:10
108:21 111:15 112:5 112:15 113:22 113:24
115:5 143:22 145:10 146:6 146:11 146:15
150:1 158:5 162:22 162:24 164:5 171:18
204:21 205:14 207:20 215:13 215:20
215:23 216:3 220:1 221:11

**transferred**(2) 102:18 192:24
**transferring**(1) 116:6
**transfers**(3) 56:18 102:20 224:19
**translated**(2) 126:24 173:10
**translation**(9) 173:13 173:15 173:20 174:4
174:11 186:5 186:15 186:10 199:4

**treasurer**(13) 50:15 52:23 52:25 53:3 53:7
53:9 58:18 58:22 59:22 59:22 109:18
148:11 198:16

**treat**(1) 80:21
**treated**(4) 36:23 79:17 117:4 181:4
**treatise**(7) 50:1 86:2 86:16 87:10 87:10
87:15 162:1

**treatises**(4) 49:23 70:24 142:13 143:6
**treatment**(2) 117:11 117:12
**tremendous**(2) 26:15 128:22
**trial**(6) 84:8 101:7 120:16 120:22 130:18
180:24

**tried**(5) 41:9 119:11 157:21 161:22 181:5
**tries**(3) 187:19 188:1 225:8
**trouble**(1) 94:20
**troubles**(1) 101:19
**true**(25) 12:17 19:14 35:11 43:18 66:18
87:9 123:12 139:12 142:22 158:6 159:22
168:23 187:3 187:4 192:6 193:4 201:4
203:12 203:20 209:7 209:14 235:17 235:20
236:7 237:5

**truly**(2) 60:1 210:15
**trust**(2) 162:1 190:7
**trustee**(3) 3:31 224:11 224:15
**trustees**(2) 37:22 226:18
**trustee's**(1) 224:13
**truth**(1) 35:20
**try**(13) 12:12 12:16 34:17 34:23 43:17
56:10 91:6 118:19 142:9 157:24 203:19
206:3 207:1

**trying**(18) 13:7 25:2 26:21 27:2 29:16
30:21 30:22 45:20 78:14 90:25 104:15
129:2 131:21 140:4 140:5 152:21 208:19
230:11

**tunnell**(1) 1:24
**turn**(21) 6:18 18:23 71:9 73:10 78:13
145:8 146:20 164:25 165:22 177:22 178:2
178:23 179:6 179:9 206:16 212:1 212:9
214:13 233:23 236:21 241:6

**turning**(6) 95:5 99:15 178:18 203:23
211:22 212:16

**turpin**(11) 203:3 204:2 209:25 210:5 210:10
211:12 211:14 226:24 228:8 231:8 236:14

**tweed**(2) 2:45 5:4
**twice**(3) 9:23 42:15 141:1
**two**(50) 10:11 21:13 23:7 35:15 36:3 38:8
40:10 41:3 62:11 63:7 65:6 65:7 70:25
71:19 75:20 76:4 83:18 84:25 84:25 86:7
89:8 93:5 99:19 106:18 107:7 115:4
118:20 120:19 120:22 121:22 122:11
122:14 125:20 126:19 126:22 131:22
150:20 161:21 166:24 172:1 186:23 187:23
191:24 192:7 197:6 197:16 218:5 219:9
227:5 235:25

**twombly**(32) 15:25 16:2 16:16 18:10
19:15 20:17 21:3 33:7 33:20 33:16 35:4
35:15 36:9 39:17 42:21 55:25 63:2 76:15
111:23 138:5 158:10 165:25 166:1 166:4
166:17 167:3 177:20 191:22 200:23 201:3
238:5 239:22

**type**(14) 29:23 37:7 49:5 59:23 74:9 74:21
75:5 76:9 76:10 77:10 81:18 124:23
134:20 227:1

**typed**(1) 134:21
**types**(9) 25:18 27:6 47:14 49:15 49:17
81:13 166:24 168:14 224:22

**typical**(1) 166:6
**typically**(3) 36:25 85:10 225:11
**u.k**(1) 90:5
**u.s**(86) 6:14 7:18 8:9 15:17 18:5 18:9
21:2 23:6 24:13 25:1 26:13 27:7 27:12
28:24 30:7 30:11 30:21 31:23 32:13 34:14
37:8 38:1 44:1 49:23 59:8 77:9 79:24 80:11
83:14 85:9 85:18 85:25 90:5 96:7 97:13
98:3 98:8 99:8 100:16 109:4 113:14
113:15 119:11 125:4 125:24 128:3 128:24
129:8 130:17 131:5 131:18 132:2 132:5
138:5 141:15 149:3 153:25 154:3 158:3
161:13 161:15 162:14 163:18 163:21 164:1
165:22 168:10 182:7 189:5 191:11 194:24
202:23 211:23 212:2 213:3 215:5 221:14
223:14 223:17 225:8 228:21 229:20 230:5
230:6 231:12 231:14 239:15

**ucc**(1) 135:4
**uconn**(3) 62:10 120:20 120:20
**ultimate**(5) 58:17 109:17 229:10 235:24
236:8

**ultimately**(1) 22:13
**ultra**(6) 61:12 61:20 62:11 62:13 120:13
120:25

**um-hum**(6) 37:10 45:8 51:4 56:19 100:19
123:6

**un-american-styl**(1) 136:7
**unable**(3) 63:9 84:16 144:23
**unacceptable**(1) 190:14
**unanimous**(1) 174:23
**unaware**(1) 205:1
**unburdened**(1) 59:18
**unclear**(2) 216:8 236:25
**uncompromising**(1) 211:16
**unconscionabl**(4) 158:15 167:16 192:19
193:2

**uncontroversial**(1) 206:13
**unconvincing**(1) 84:23
**uncovered**(1) 235:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **under**(112) 8:17 10:4 11:10 12:1 13:6 13:7 14:6 14:15 14:23 15:25 16:2 16:15 19:11 19:13 19:23 21:2 31:7 35:4 35:13 37:13 39:16 40:9 42:20 44:25 47:3 47:7 47:9 48:13 61:11 62:16 63:1 63:7 66:8 68:6 71:10 74:4 74:22 76:10 77:11 80:21 81:10 85:9 85:12 89:3 98:8 100:4 100:6 100:20 109:17 111:10 111:22 113:20 117:2 117:3 117:23 118:4 120:9 121:10 121:19 122:23 123:3 124:25 126:15 127:11 129:1 138:15 150:11 154:14 155:6 158:3 158:15 163:18 163:24 165:19 165:25 166:17 170:1 170:21 171:21 171:23 175:17 176:14 177:20 183:16 187:25 188:8 189:5 189:15 191:13 194:10 196:9 196:25 197:11 199:2 205:19 209:2 210:9 210:16 210:22 213:1 213:11 215:11 216:5 216:10 217:25 220:1 220:14 223:1 229:20 237:24 237:25 239:22 | **undergone**(1) 65:5 | **underlying**(7) 37:22 92:17 160:22 204:7 230:25 232:13 232:16 | **undermine**(1) 236:14 | **understand**(11) 78:17 87:19 88:13 114:17 130:16 137:2 141:16 149:20 150:11 159:8 239:24 | **understanding**(6) 82:15 82:18 104:11 106:23 135:20 192:9 | **understanding**(1) 37:7 | **understands**(2) 79:2 232:22 | **understood**(2) 84:19 179:2 | **undertake**(3) 101:18 106:24 118:4 | **undertaken**(3) 85:7 85:8 182:9 | **undertook**(2) 73:14 184:5 240:4 | **undervalued**(1) 103:2 | **undisputed**(5) 25:15 218:2 227:20 228:15 235:14 | **undistinguished**(1) 126:1 | **undoubtedly**(2) 211:5 226:12 | **unduly**(1) 131:25 | **unfamiliar**(1) 63:8 | **unforgiving**(1) 211:15 | **unfortunately**(2) 134:4 234:2 | **uniformity**(1) 219:19 | **unique**(3) 13:10 125:10 126:12 | **uniquely**(1) 210:17 | **unit**(2) 24:16 24:21 | **united**(6) 1:1 1:20 2:43 29:15 36:20 45:9 | **universal**(2) 79:8 140:11 | **unjust**(8) 158:21 160:7 160:11 167:16 168:10 168:13 168:23 192:18 | **unlawful**(5) 62:22 62:23 93:4 221:13 | **unless**(6) 85:11 171:3 178:17 190:4 195:11 231:24 | **unlike**(6) 24:14 66:7 70:20 116:24 180:10 219:2 | **unliquidated**(1) 195:7 | **unmatured**(1) 195:8 | **unmistakable**(1) 103:19 | **unquestionably**(1) 140:17 | **unravel**(1) 15:12 | **unreasonable**(1) 163:8 | **unrelated**(1) 127:17 | **unscrupulous**(1) 49:1 | **unsecured**(3) 2:4 7:18 116:13 | **unsuited**(1) 181:5 | **unsurprisingly**(2) 173:12 204:18 | **until**(5) 78:8 101:22 116:14 208:4 209:23 | **untimely**(5) 215:12 215:14 216:18 217:10 220:14 | **unusual**(2) 162:24 195:8 | **unusually**(1) 162:18 | **upon**(5) 25:13 135:22 143:2 178:5 215:25 | **ups**(1) 159:23 | **upset**(1) 188:23 | **urging**(1) 172:20 | **usb**(1) 5:21 | **use**(8) 30:23 56:13 99:11 116:5 151:4 188:21 221:21 237:18 | **used**(9) 40:12 62:6 118:9 121:5 124:6 172:22 184:13 192:11 201:17 | **useful**(7) 21:20 34:23 49:14 49:16 50:3 125:4 195:3 | **uses**(3) 126:24 173:13 174:5 | **using**(1) 239:13 | **utility**(1) 78:14 | **utterly**(5) 75:17 86:15 153:5 169:10 169:1 | **vagary**(1) 152:13 | **vague**(1) 32:8 | **valid**(2) 88:18 223:1 | **validity**(3) 32:10 32:16 33:2 | **validly**(3) 92:11 123:10 123:12 | **valuation**(1) 110:15 | **value**(22) 20:20 71:8 102:15 102:17 102:19 102:22 103:4 103:4 103:17 103:22 108:21 112:1 113:23 113:24 115:5 116:6 117:10 118:5 118:6 193:22 207:24 208:1 | **valued**(2) 150:15 162:23 | **values**(1) 194:11 | **variations**(2) 79:9 79:14 | **variety**(2) 126:18 131:4 | **various**(19) 24:23 25:10 25:25 26:25 27:20 30:14 30:16 36:6 57:18 90:22 110:12 110:13 115:24 131:24 185:3 185:5 192:17 194:12 240:4 | **vary**(6) 91:18 218:6 218:13 218:18 219:8 219:11 | **varying**(1) 221:5 | **venue**(1) 220:24 | **venues**(1) 28:4 | **verbally**(1) 110:17 | **verbose**(1) 44:2 | **version**(2) 173:7 186:18 | **versus**(2) 176:21 240:21 | **vested**(1) 85:13 | **vicarious**(1) 174:17 | **vice**(1) 52:11 | **victim**(3) 229:23 229:24 231:2 | **view**(13) 46:10 79:1 90:3 98:7 114:20 114:20 138:5 154:20 154:23 156:20 174:2 218:8 239:13 | **views**(1) 79:4 | **vineberg**(1) 5:26 | **violation**(1) 189:12 | **violator**(1) 161:11 | **virtually**(4) 73:25 75:1 174:23 177:18 | **virtue**(6) 55:23 111:10 115:17 151:4 151:11 203:17 | **vis-a-vis**(1) 67:20 | **voice**(2) 55:7 157:12 | **void**(2) 170:17 183:12 | **volume**(1) 114:9 | **voluntary**(1) 27:8 | **voted**(1) 60:9 | **vouched**(1) 45:1 | **wahl**(1) 5:42 | **wait**(4) 208:4 209:10 209:21 233:11 | **waiting**(1) 240:23 | **wake**(1) 101:14 | **walk**(3) 26:7 98:18 217:18 | **walked**(1) 169:6 | **walker**(2) 91:21 228:23 | **walking**(1) 215:19 | **walrath**(1) 44:17 | **want**(48) 10:13 15:19 15:20 34:22 38:20 39:10 49:23 50:11 50:11 57:6 59:24 62:14 65:8 65:19 68:12 74:13 86:16 87:8 107:20 133:7 134:3 134:7 146:20 147:25 149:17 152:20 154:17 159:9 163:23 164:2 164:3 167:7 168:10 169:12 176:25 180:3 181:9 183:22 184:20 196:6 196:24 199:2 199:6 211:25 212:6 221:8 222:19 237:21 | **wanted**(12) 39:14 44:12 44:24 47:4 86:6 86:18 163:1 164:17 185:1 207:13 233:10 237:18 | **wants**(6) 38:22 175:11 175:12 179:6 179:7 184:1 | **war**(1) 61:17 | **ward**(1) 5:25 | **warning**(1) 78:18 | **was**(301) 9:5 9:18 11:2 13:1 13:3 13:24 14:2 16:7 16:8 19:18 19:20 24:14 24:16 24:17 24:18 24:19 24:21 25:24 26:2 26:3 26:4 26:14 27:10 28:10 32:4 33:20 36:14 36:15 36:17 36:17 36:18 36:18 36:18 36:21 36:23 39:11 40:11 40:12 41:23 41:24 44:6 45:14 45:19 47:21 48:9 48:10 48:23 49:11 50:15 50:17 51:21 52:1 52:6 52:23 52:24 52:25 53:3 53:5 53:10 53:19 54:17 55:6 55:14 55:19 55:22 57:1 57:9 57:10 57:12 57:22 57:23 57:24 58:1 58:2 58:16 58:25 59:1 59:17 60:13 60:21 61:4 61:10 63:19 63:20 64:8 64:13 72:25 74:6 74:14 74:14 74:14 74:16 74:17 75:12 76:5 76:6 76:8 76:23 82:8 83:25 84:2 84:3 84:16 84:18 84:20 84:22 87:3 87:23 91:14 91:21 93:4 93:6 93:7 93:15 94:2 94:3 94:5 94:10 95:8 95:20 96:16 96:21 97:25 98:16 99:7 99:10 100:1 101:5 102:4 102:4 102:16 102:21 103:3 103:12 103:17 103:19 103:22 103:24 104:3 104:16 104:24 105:10 105:11 105:15 105:16 105:16 105:23 105:25 106:8 106:9 106:11 107:1 107:23 107:23 107:24 108:5 108:7 108:9 108:11 108:17 109:10 109:17 110:2 110:6 111:9 112:17 112:17 112:20 112:23 113:6 113:7 113:11 113:25 114:1 114:8 114:11 115:3 115:7 115:8 115:9 115:15 115:19 116:5 116:11 116:12 116:20 117:10 117:21 117:24 118:1 118:5 118:9 118:9 118:16 119:22 119:23 120:15 120:16 121:18 125:1 125:8 126:14 127:13 127:14 127:16 128:21 128:21 129:1 129:11 131:8 131:9 131:11 134:13 134:14 135:6 136:3 136:6 136:6 136:6 136:7 136:10 136:16 139:5 139:13 141:6 141:7 142:23 144:3 145:3 145:12 146:2 146:10 146:22 146:24 147:7 147:10 147:12 147:23 148:2 148:8 148:12 149:21 150:2 150:5 150:8 151:3 151:4 151:11 153:5 154:4 155:13 155:13 155:17 155:17 155:6 156:14 158:12 159:16 159:21 159:22 161:4 161:13 162:9 165:1 165:25 166:10 166:14 166:19 166:21 167:20 168:17 168:22 169:5 169:21 169:22 173:19 176:17 177:11 178:1 180:6 181:10 181:16 181:17 182:20 183:1 183:14 183:20 184:13 186:3 186:5 186:6 186:8 187:9 187:10 187:12 188:15 188:16 188:20 189:8 189:9 | **was**(106) 189:25 190:12 190:13 190:19 190:23 191:16 192:15 192:18 193:5 196:15 197:3 197:19 197:20 197:22 198:1 198:3 198:14 198:15 199:3 200:1 200:7 200:19 200:22 201:17 201:20 201:22 202:2 202:3 204:25 206:11 207:5 207:12 207:22 207:24 208:15 209:24 211:2 211:5 211:7 211:22 214:11 214:13 215:21 216:20 218:10 218:16 218:17 219:23 219:24 220:3 220:18 220:19 221:2 222:25 223:5 223:5 223:7 223:10 224:13 225:20 225:23 227:3 227:18 227:19 227:20 227:20 227:21 227:22 227:24 227:25 228:15 228:18 229:18 229:18 229:24 230:20 231:1 231:2 231:5 231:8 231:16 231:19 231:21 232:12 234:2 234:13 234:14 234:17 234:19 234:20 234:24 234:25 235:14 235:15 236:19 236:20 236:21 237:6 238:8 240:5 240:6 240:15 241:7 241:12 | **wasn't**(9) 22:24 22:25 22:25 44:22 48:19 48:24 57:11 75:24 115:7 | **wasn't**(6) 150:22 162:22 162:23 197:25 201:19 225:21 | **waste**(1) 224:2 | **water**(5) 16:17 20:3 31:10 152:11 213:20 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **way**(66) 8:20 8:21 14:1 17:14 18:1 29:10 32:19 34:2 36:24 37:5 42:17 52:21 58:18 58:22 59:22 63:5 67:13 69:13 79:14 87:11 89:4 97:5 99:18 100:1 102:10 105:12 106:25 110:5 110:18 116:3 116:4 117:16 130:10 132:19 135:9 136:8 137:10 143:7 143:10 145:20 150:16 154:10 154:14 155:7 155:7 155:16 157:23 159:25 160:5 161:5 161:23 166:11 170:18 178:14 185:14 187:18 188:10 192:10 194:15 198:17 204:7 217:4 222:21 223:3 232:23 239:11 | | **were**(190) 7:11 7:12 9:25 10:2 10:5 11:24 12:23 12:23 16:18 16:25 19:7 19:17 20:2 22:7 25:4 27:8 27:9 27:10 27:24 29:1 36:9 36:22 37:21 38:8 39:16 39:25 41:7 42:16 43:8 43:14 43:18 44:5 44:25 45:19 45:20 46:7 47:19 50:13 50:20 50:20 51:24 52:8 52:15 52:16 55:4 57:2 57:17 59:17 60:18 60:22 61:2 61:5 63:22 64:16 73:22 83:6 87:1 87:18 89:19 89:24 90:3 90:8 92:6 93:5 93:21 93:23 97:18 99:3 99:12 101:12 101:24 102:7 102:17 103:16 104:1 104:10 104:11 104:20 104:20 105:2 105:18 106:5 107:17 107:19 108:7 108:20 108:23 108:24 109:14 109:21 109:24 110:7 110:11 112:2 113:13 113:16 114:10 115:10 115:15 116:25 117:3 117:3 117:18 117:15 118:12 118:22 119:14 120:17 129:14 130:3 132:10 135:2 135:3 135:4 142:22 142:22 144:21 144:23 145:18 147:7 147:18 150:6 153:15 160:7 160:24 176:6 176:16 176:16 180:4 180:12 180:12 180:23 181:3 182:9 182:9 182:16 183:11 183:14 184:21 184:24 187:9 187:14 188:1 189:21 189:22 191:19 192:11 193:15 194:10 194:10 197:3 201:12 201:13 205:1 207:11 208:2 208:16 210:25 211:3 212:13 215:16 216:18 217:4 219:1 220:13 222:1 225:4 225:19 225:20 225:21 225:21 225:22 227:13 228:17 229:6 229:10 231:18 233:2 233:8 234:15 234:21 234:22 235:22 236:8 240:3 240:8 241:5 241:6 | | **what**(267) 10:3 10:16 11:3 11:13 13:11 15:6 16:5 16:7 18:3 19:22 21:5 21:11 21:12 21:21 23:20 23:24 26:18 27:11 27:19 30:12 30:22 31:14 31:21 33:9 33:9 35:3 36:5 36:11 39:19 40:3 40:15 40:17 41:14 41:22 41:25 42:1 42:10 42:11 43:2 43:23 44:15 45:9 47:25 48:5 48:22 49:7 50:5 51:15 51:18 52:2 52:8 52:19 52:22 53:5 54:15 54:24 55:1 55:5 55:13 55:13 55:16 56:9 57:2 57:7 57:15 57:9 57:21 59:4 60:4 60:5 62:10 63:20 64:4 64:16 64:18 64:25 65:2 65:4 68:1 68:5 68:25 69:1 70:22 71:3 71:9 71:17 72:2 72:21 73:1 73:8 73:9 73:11 73:17 73:19 74:5 74:13 74:13 74:15 75:1 75:12 75:16 76:4 76:9 76:11 76:14 76:14 76:20 77:13 79:22 80:7 81:18 81:20 84:19 85:5 85:14 86:14 88:14 88:20 88:21 90:21 90:22 90:25 92:12 93:23 93:25 99:4 99:12 102:5 104:14 104:19 106:2 111:21 114:11 116:8 120:1 121:7 122:11 126:7 126:13 128:16 130:15 131:6 131:19 133:4 135:1 136:5 136:10 136:10 136:19 140:8 140:14 140:1 140:21 140:25 141:5 145:22 146:23 146:25 147:2 147:9 148:5 149:3 150:25 151:1 151:9 151:20 152:23 153:2 153:8 156:6 156:19 157:20 158:11 159:11 160:1 161:24 162:4 162:6 162:8 162:9 162:13 162:18 164:10 164:11 165:5 165:12 165:11 165:20 166:18 166:19 167:24 168:13 169:2 169:21 169:22 169:22 169:24 170:1 171:22 171:24 172:1 172:3 172:4 172:5 172:6 172:7 172:8 172:16 172:18 172:19 172:20 173:5 173:10 173:17 174:2 174:3 174:9 174:10 174:20 174:21 175:1 175:2 175:19 176:3 176:20 176:24 177:7 178:3 178:13 180:14 180:18 181:2 181:6 181:12 181:19 182:15 186:2 187:21 187:24 189:8 189:18 189:21 190:3 190:16 194:5 196:8 196:24 200:6 200:17 202:6 204:24 204:10 210:6 212:20 214:19 216:8 223:11 225:20 225:24 227:7 229:23 236:2 237:23 238:2 238:4 239:5 | | **where**(93) 28:7 32:22 34:12 34:13 34:14 36:7 36:11 40:24 41:21 44:5 44:17 44:23 49:5 49:16 54:21 63:16 65:7 70:19 71:23 82:21 92:20 94:8 95:7 98:13 100:11 101:12 106:17 114:16 116:16 121:1 121:3 123:15 128:21 128:21 129:15 129:16 129:21 129:24 130:9 131:8 133:2 136:7 140:3 147:13 147:14 149:6 159:8 161:4 165:20 172:16 174:14 175:9 182:20 186:22 186:24 188:25 190:12 191:23 193:22 194:16 197:21 204:4 204:5 207:18 207:22 208:22 210:15 210:24 214:3 214:11 217:13 218:25 219:18 223:19 223:20 224:25 225:10 225:12 225:21 226:7 226:15 226:18 229:11 229:22 230:2 230:20 231:14 234:12 234:15 235:7 235:9 238:5 239:25 |
| **ways**(2) 24:24 176:12 | | | | | | | |
| **we'll**(15) 9:13 13:25 26:7 26:8 34:11 37:18 38:18 42:21 46:6 50:17 54:6 69:12 78:7 80:23 133:17 | | | | | | **whereas**(2) 69:6 218:9 | |
| | | | | | | **whereupon**(1) 241:12 | |
| | | | | | | **wherever**(1) 36:21 | |
| **we're**(37) 10:8 16:10 16:19 18:20 19:12 21:21 23:15 25:15 28:14 30:8 30:15 31:14 34:23 36:23 38:9 38:21 42:1 44:21 50:10 51:14 53:14 59:21 60:6 68:21 71:13 74:10 85:21 87:6 87:13 88:19 97:20 98:17 102:10 102:11 122:20 124:6 131:21 | | | | | | **whether**(68) 11:2 11:17 11:22 11:24 21:19 22:7 23:21 35:12 36:4 37:15 37:16 46:15 46:16 46:25 47:1 47:2 67:10 72:3 80:10 82:5 82:10 82:11 85:2 89:18 90:7 92:10 92:13 94:2 94:3 94:5 95:3 95:16 95:20 95:25 96:1 96:20 96:21 97:9 97:10 101:7 101:7 104:16 120:3 123:23 127:24 137:19 138:4 141:11 141:21 158:6 176:6 177:8 177:9 180:11 180:18 183:16 183:20 187:24 195:6 209:4 210:19 211:2 212:4 215:9 218:22 220:3 239:6 239:14 | |
| **we've**(36) 20:6 23:25 26:15 27:5 28:7 28:11 29:24 31:6 35:1 38:10 38:13 40:7 54:13 78:23 79:4 85:16 89:14 92:23 93:25 99:14 110:16 111:20 111:20 114:2 114:23 119:7 119:8 119:9 119:15 119:25 120:4 121:6 122:3 130:10 131:19 132:8 | | | | | | | |
| **weaknesses**(1) 87:20 | | | | | | | |
| **wear**(3) 100:5 107:8 108:14 | | | | | | **which**(172) 7:15 7:20 8:4 9:5 11:19 12:23 15:17 15:25 16:2 17:19 18:1 20:23 25:6 25:20 26:24 32:21 33:2 39:16 40:9 43:16 44:8 46:2 47:25 50:1 53:17 53:18 54:11 55:10 55:24 59:17 62:6 63:23 64:18 64:25 65:4 67:8 68:3 70:20 70:23 71:25 76:8 79:9 79:10 81:3 82:8 82:9 83:7 83:14 88:21 93:8 94:1 94:15 94:18 94:25 96:14 97:14 97:19 100:5 100:24 101:11 101:20 103:17 104:2 105:15 108:11 108:20 109:6 111:11 112:7 112:10 113:6 114:5 115:4 115:20 117:2 120:4 120:13 121:21 121:25 122:9 124:17 124:20 125:22 126:18 126:20 127:9 127:14 127:14 130:4 134:13 135:7 141:6 143:2 146:22 146:23 150:1 150:8 150:18 151:13 154:9 154:23 155:4 157:14 158:10 161:9 162:1 166:3 166:11 166:20 170:7 171:23 172:3 173:22 173:23 173:24 176:3 178:15 180:25 181:1 181:4 181:5 181:16 181:23 184:22 184:22 184:23 185:22 189:24 191:1 191:8 191:15 193:10 194:4 200:23 204:23 205:14 206:9 207:6 208:17 212:17 213:2 218:17 219:8 219:16 220:8 220:13 223:21 224:4 226:12 226:21 227:2 227:3 228:4 228:16 228:25 229:2 229:19 229:23 230:10 231:8 234:3 235:25 236:15 237:2 238:20 | |
| **wearing**(4) 54:18 65:17 182:21 198:15 | | | | | | | |
| **website**(1) 186:9 | | | | | | | |
| **weight**(6) 83:23 120:24 122:11 128:19 128:22 154:6 | | **weren't**(3) 16:18 43:23 49:9 | | | | | |
| | | **weren't**(2) 150:15 194:20 | | | | | |
| **weis**(4) 145:23 145:24 146:1 146:3 | | **west**(2) 2:24 100:5 | | | | | |
| **weiss**(5) 52:10 104:7 107:6 108:13 117:24 | | **weston**(1) 3:35 | | | | | |
| **welcome**(1) 39:3 | | **wet**(1) 45:20 | | | | | |
| | | **we'd**(2) 195:1 238:20 | | | | | |
| **well**(99) 8:8 11:4 12:12 13:3 13:12 13:14 14:20 15:2 15:9 16:18 16:19 16:24 21:18 21:21 23:18 27:15 28:7 30:10 30:18 31:5 31:13 31:16 37:20 37:23 42:2 43:24 47:11 50:16 50:19 51:11 51:23 53:13 54:5 55:11 60:25 60:25 63:6 63:24 64:11 65:6 67:21 70:6 71:6 74:20 78:20 79:2 79:6 85:9 88:13 88:18 89:10 99:2 110:14 110:20 115:24 119:6 123:22 133:9 134:11 135:14 136:1 139:9 140:9 142:1 143:4 150:4 150:7 153:23 154:15 157:5 158:22 159:9 160:25 162:4 164:4 166:10 171:20 173:4 174:13 174:21 175:2 177:19 190:14 190:23 191:7 200:5 201:5 202:14 202:18 215:18 215:24 217:7 218:11 221:14 221:21 222:22 237:16 238:8 239:25 | | **we'll**(8) 148:17 154:12 154:17 158:18 160:18 213:20 221:8 241:9 | | | | | |
| | | **we're**(26) 137:2 137:18 142:10 143:10 147:22 148:3 148:4 148:5 157:2 177:16 182:23 183:5 184:5 185:7 185:10 193:14 202:19 203:11 203:11 208:23 213:10 221:22 222:16 232:20 235:19 238:14 | | | | | |
| | | **we've**(18) 139:4 144:8 148:10 163:22 164:12 183:6 188:8 191:20 192:23 193:1 193:9 208:25 210:4 224:22 225:6 226:19 232:25 237:20 | | **what's**(12) 6:11 11:15 11:16 29:5 50:16 53:5 55:18 55:19 57:1 79:7 127:3 132:16 | | | |
| | | | | **whatever**(12) 26:16 26:17 38:21 76:23 81:4 86:13 86:16 86:18 140:7 142:17 185:21 193:8 | | | |
| | | | | **whatsoever**(3) 170:21 174:20 175:20 | | | |
| | | | | **what's**(6) 150:20 157:22 157:23 177:19 202:24 228:22 | | | |
| **well-established**(1) 177:3 | | | | | | | |
| **well-pled**(8) 164:10 164:14 164:15 164:19 164:21 164:24 165:16 166:20 | | | | **when**(88) 11:12 13:5 15:12 15:22 16:6 16:11 18:11 22:5 25:11 25:21 25:21 28:17 29:8 37:2 37:18 46:4 47:14 47:15 47:25 48:14 49:15 50:5 51:7 52:15 53:6 58:19 58:24 59:11 63:23 71:22 80:23 87:21 89:24 98:6 99:23 100:7 102:9 102:11 104:24 104:25 107:21 110:10 114:20 114:20 116:12 117:6 118:16 128:19 130:1 139:1 140:22 143:10 147:1 147:2 147:3 147:25 148:3 149:2 149:5 149:10 151:10 152:7 152:10 154:13 154:24 160:4 162:12 164:16 165:20 166:19 167:8 167:9 178:7 198:14 199:7 199:9 199:14 200:15 204:7 205:5 206:5 215:21 215:25 232:11 233:4 237:5 240:3 240:5 | | | |
| **well-settled**(1) 178:9 | | | | | | | |
| **wellston**(1) 156:12 | | | | | | | |
| **went**(17) 27:12 115:25 145:14 149:18 159:18 159:19 159:19 159:19 167:21 168:4 189:7 190:17 200:7 201:14 201:16 201:20 221:14 | | | | | | | |
| | | | | | | **whichever**(1) 19:1 | |
| | | | | | | **while**(21) 23:25 23:25 35:25 75:25 84:10 103:1 103:10 117:11 134:21 148:22 153:25 166:14 186:23 187:2 187:3 193:4 203:6 211:5 213:14 233:8 235:23 | |
| | | | | | | **whiteoak**(2) 2:39 85:21 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**who**(72) 10:2  13:14  36:16  36:17  37:21  38:14  38:15  43:1  43:22  45:1  49:9  51:9  52:9  55:19  58:18  75:14  79:16  81:6  82:25  83:21  84:3  91:14  92:6  92:8  92:9  92:23  94:10  95:22  106:4  108:9  108:13  110:23  122:23  123:8  123:9  123:11  123:14  130:25  131:3  135:3  135:16  136:6  136:6  142:15  142:17  142:22  145:15  145:18  146:5  147:5  147:23  148:6  148:11  148:15  153:2  159:24  165:12  165:19  165:20  166:20  166:16  168:11  186:11  191:24  219:24  224:13  227:19  228:1  229:1  233:6  236:4  240:3

**who's**(2) 84:3  85:21

**whoever**(1) 110:19

**whole**(12) 22:6  83:5  83:13  98:10  125:22  167:18  167:20  180:21  197:23  206:25  213:9  229:12

**wholly**(3) 142:7  181:5  225:4

**whose**(8) 26:1  81:24  93:8  125:14  131:3  185:22  187:9  224:25

**why**(33) 10:23  34:9  44:11  57:9  60:17  65:16  66:19  70:2  74:3  77:2  78:4  83:22  84:17  96:3  128:8  133:15  133:17  146:2  157:19  163:23  164:25  170:21  170:25  177:11  184:10  185:11  186:8  197:3  200:21  211:12  214:25  217:18  218:5

**wide**(1) 126:18

**widely**(1) 91:18

**wife**(3) 47:19  48:9  48:9

**wilkie**(2) 3:10  3:32

**will**(96) 6:13  6:15  6:18  6:22  12:2  13:14  15:14  18:16  20:13  22:11  23:20  23:24  25:13  28:8  28:13  28:16  28:16  28:18  28:18  28:19  28:22  29:8  30:13  31:2  33:10  34:13  34:23  34:25  37:5  40:17  45:4  47:3  47:9  70:17  70:24  71:3  74:19  74:19  78:12  79:12  79:18  81:7  82:20  83:3  83:8  88:10  89:5  96:11  102:9  102:11  110:10  116:17  119:19  121:6  121:20  122:5  122:5  122:16  125:16  126:4  132:24  138:20  138:21  139:7  142:1  149:12  157:9  157:11  158:9  162:21  170:7  170:13  170:16  173:10  174:7  177:21  180:20  181:1  182:8  184:7  191:2  195:12  198:9  201:15  202:12  213:17  221:7  224:17  227:1  227:22  228:17  231:12  235:16  238:25  240:23  241:2

**william**(1) 109:24

**willing**(1) 46:10

**wilmington**(6) 1:12  1:29  2:16  2:25  3:7  6:2

**win**(4) 24:2  24:2  78:25  239:18

**windstar**(1) 218:12

**winkler**(2) 28:15  28:16

**wipe**(1) 58:1

**wish**(2) 15:14  241:8

**wishes**(1) 73:9

**with**(219) 8:16  9:13  10:6  10:15  11:15  11:21  11:25  13:19  14:3  14:22  15:5  15:22  16:20  18:13  18:21  18:25  20:18  20:25  21:21  22:1  22:11  23:22  25:15  27:9  28:10  28:15  28:20  29:19  29:22  30:2  30:12  31:8  31:13  31:24  32:17  33:10  34:7  34:8  34:20  35:18  37:17  38:10  38:20  39:5  40:1  40:5  40:23  40:24  41:2  41:4  41:8  41:11  43:1  44:5  44:14  45:1  45:10  45:13  46:7  46:9  46:12  46:25  47:16  48:4  48:19  50:24  50:25  51:7  51:11  53:14  54:6  59:8  60:19  60:22  67:5  67:16  70:18  71:9  71:17  72:25  73:7  73:22  74:2  74:12  74:21  74:24  75:1  75:7  75:9  75:11  76:11  76:22  77:13  77:14  78:3  79:9  81:7  81:24  82:19  83:20  86:12  87:9  88:4  91:3  91:12  93:8  93:15  93:22  96:25  98:18  103:13  103:25  107:3  107:9  107:12  107:18  107:19  108:18  110:4  112:20  111:13  113:15  113:20  115:1  115:8  116:16  117:2  117:12  125:12  126:14  128:25  129:3  129:10  129:12  130:2  131:11  133:18  134:20  135:6  135:10  135:12  136:24  137:2  139:3  142:16  142:23  145:3  147:18  147:19  147:22  148:7  148:14  148:17  148:24  149:11  149:11  149:13  150:23  150:24  151:12  152:22  152:23  156:9  163:10  163:11  163:25  166:2  166:7  169:23  170:12  171:18  172:9  174:11  174:20  175:3  176:2  176:7  177:13  177:22  185:6  185:8  185:9  186:21  191:17  191:19  192:7  192:13  192:23  194:13  194:14  194:14  200:16  201:10  201:25  204:20  205:2  210:4  211:16  211:17  214:6  217:16  221:15  224:11  225:20  228:5  228:1  229:2  232:7  232:19  232:23  234:1  236:8  238:20  238:23  240:13  241:9

**withdrawing**(1) 212:7

**within**(2) 108:6  126:11

**without**(14) 6:17  33:13  33:22  76:3  80:7  80:7  123:19  150:3  175:14  175:20  176:20  212:3  212:21  217:17

**witness**(15) 41:5  42:6  43:18  43:23  43:24  45:18  138:19  141:6  142:2  153:20  154:6  154:7  154:21  162:10  197:10

**witnesses**(2) 38:6  38:7

**won't**(11) 19:19  20:6  34:17  40:12  49:12  58:23  63:7  68:6  68:20  74:25  113:2

**wonderfully**(1) 11:8

**won't**(9) 140:2  164:6  164:3  179:17  189:4  197:7  223:9  223:11  225:6

**word**(21) 46:17  60:24  101:25  126:24  148:2  172:22  173:6  173:10  173:13  173:16  174:5  184:14  186:2  186:5  186:10  186:15  186:18  186:19  187:1  188:22  200:8

**wording**(2) 72:18  172:2

**words**(28) 11:20  12:15  39:9  70:15  72:22  79:20  82:11  98:4  99:11  99:12  102:8  106:13  126:10  126:23  127:5  134:21  139:1  146:17  146:18  147:10  167:24  172:4  175:16  175:21  196:16  212:12  238:3  238:4

**wore**(2) 104:9  229:8

**work**(10) 42:22  53:17  64:14  79:8  88:5  152:8  166:17  169:7  192:1  241:7

**worked**(2) 134:17  135:10

**working**(4) 53:7  134:19  135:6  191:19

**works**(8) 54:2  155:3  155:4  155:7  159:25  175:18  196:12  198:2

**world**(6) 24:22  67:1  79:13  80:1  99:5  146:5

**worldwide**(2) 17:22  25:9

**worse**(2) 90:24  91:5

**worth**(4) 46:11  143:19  144:9  180:5

**worthwhile**(1) 90:18

**would**(158) 7:2  10:23  12:8  18:1  19:8  19:22  24:8  27:23  29:17  30:1  30:2  30:4  33:5  33:7  33:10  33:11  34:9  34:22  40:18  54:20  54:22  55:5  55:11  59:11  60:18  63:3  63:15  64:16  66:24  69:24  70:1  72:5  73:9  76:9  76:14  77:2  77:3  80:8  81:13  84:17  84:24  86:5  86:16  86:20  89:18  89:20  89:2  90:6  91:5  91:15  91:16  97:9  97:11  97:23  98:20  99:5  104:14  106:2  107:2  109:5  115:5  115:13  116:4  116:8  120:10  122:12  123:16  123:25  124:13  124:19  126:9  129:17  129:19  131:3  131:4  131:16  131:25  123:23  135:25  139:14  139:20  143:25  155:11  158:22  158:25  159:17  159:18  163:25  165:20  167:2  173:11  175:7  175:17  175:19  176:23  178:7  179:8  179:10  179:19  180:16  181:4  182:6  182:18  182:18  182:19  183:1  183:21  185:1  186:2  186:14  187:21  187:25  192:18  192:22  193:2  193:7  195:3  195:11  196:12  206:21  206:24  208:12  209:8  209:22  212:17  212:25  213:5  213:5  217:17  219:24  220:13  220:17  221:1  223:1  223:8  225:16  227:12  232:4  232:21  232:23  233:7  233:10  233:16  238:12  234:4  235:24  236:4  236:14  237:16  238:12  238:25  240:8  240:9  240:12

**york**(6) 1:38  2:9  2:33  3:13  62:1  177:25

**you**(301) 6:3  6:15  6:19  6:20  6:21  7:1  7:2  7:3  7:5  11:20  12:10  12:12  12:13  12:16  13:8  15:2  15:10  15:12  15:22  16:4  16:6  16:12  16:19  17:14  19:1  21:14  21:15  21:15  21:18  22:6  23:10  23:11  23:14  25:21  26:8  26:18  27:10  28:6  28:7  28:8  29:25  31:12  31:20  31:20  31:25  32:1  33:21  34:1  35:22  36:5  36:11  36:16  36:22  38:14  38:23  38:24  38:25  39:23  40:1  40:12  40:19  46:19  46:20  46:20  47:23  47:25  48:7  48:8  49:6  49:9  49:13  49:15  50:5  50:14  51:8  51:25  53:22  55:1  55:15  56:3  57:11  57:2  57:3  57:6  57:9  57:18  57:20  58:14  58:22  59:6  59:8  59:9  60:20  63:4  63:4  64:24  66:3  68:12  68:13  68:13  68:18  68:20  69:13  70:16  70:18  70:22  70:24  71:3  74:13  75:8  75:12  75:20  75:22  75:22  76:2  76:14  77:18  77:19  77:20  78:5  78:8  78:11  78:12  78:18  78:19  79:3  80:2  80:18  81:13  81:18  83:22  84:20  84:21  85:3  87:9  88:4  88:14  88:19  89:17  89:20  90:11  90:21  91:2  91:9  91:11  91:15  91:22  92:2  92:20  96:3  96:11  98:7  98:8  98:18  98:25  99:1  104:8  104:8  104:15  104:18  104:18  105:12  106:13  106:17  107:21  107:21  109:4  110:17  111:3  112:21  113:3  114:15  114:19  114:20  114:20  118:25  119:12  119:13  120:18  122:14  122:19  123:17  123:18  124:11  127:4  127:8  127:22  127:25  128:12  130:13  130:13  131:8  131:17  132:15  132:15  132:20  132:21  133:2  133:2  133:23  133:23  133:7  133:19  133:20  133:21  133:23  133:24  133:25  134:2  134:3  134:5  134:7  135:21  136:24  138:20  139:1  139:8  139:24  140:13  140:13  140:18  140:24  141:12  141:16  141:18  141:22  141:23  142:1  143:8  143:8  143:18  144:9  144:10  144:17  146:25  147:23  147:24  148:5  148:6  148:13  148:15  148:25  149:2  149:3  149:3  149:5  149:12  149:23  152:7  152:10  152:15  152:20  153:6  154:1  154:1  154:2  154:13  154:23  154:24  155:7  155:9  155:22  155:23  156:21  156:24  157:18  158:11  158:16  159:9  160:1  160:3  161:5  161:8  161:25  162:17  162:18  164:16  166:1  166:8  167:9  168:13  168:16  168:21  169:6  169:18  171:3  171:7  171:8  171:9  173:10  174:9  179:18  179:21  179:22  179:24  180:1  180:16  182:11  183:18  183:18

**you**(121) 183:21  183:22  184:7  186:8  187:7  187:23  188:9  188:13  188:14  189:20  189:23  191:5  191:23  192:5  192:6  193:8  195:5  195:18  195:19  195:22  195:23  195:25  196:3  196:4  196:4  196:9  196:12  196:17  197:7  199:7  199:9  199:20  199:23  199:24  200:6  200:18  200:18  200:19  200:20  200:24  200:24  201:15  202:9  202:10  202:10  202:17  202:18  203:22  204:7  205:5  206:5  209:13  209:21  211:6  213:2  213:16  213:21  213:23  214:1  214:10  214:11  215:9  216:17  218:1  221:10  221:17  221:18  221:18  221:19  221:20  222:7  222:7  222:15  222:15  222:22  223:11  224:7  224:7  224:8  225:6  225:24  225:24  225:24  225:24  226:14  226:18  227:5  228:21  228:23  229:4  229:12  230:2  230:3  230:11  231:14  233:16  233:23  235:16  236:12  237:4  237:14  237:15  237:15  237:18  237:23  238:3  239:10  239:18  239:20  239:23  240:2  240:15  240:16  240:17  240:18  240:19  241:4  241:7  241:8

**you'd**(1) 98:23

**you'll**(4) 6:12  79:22  84:22  120:19

**you're**(15) 11:14  35:8  44:9  44:11  46:17  63:25  92:17  92:18  92:19  96:8  96:8  96:10  99:23  128:12  132:22

**wouldn't**(6) 8:17  91:6  97:6  124:2  132:1  132:12

**wouldn't**(2) 165:4  218:18

**wrap**(3) 233:14  233:20  237:16

**wrapped**(1) 237:21

**wrapping**(1) 233:11

**wrestled**(1) 211:16

**wriggles**(1) 206:3

**wrinkle**(2) 14:23  40:14

**write**(3) 59:22  154:7  173:1

**writes**(2) 148:24  173:20

**writing**(1) 134:15

**writlarge**(1) 212:21

**written**(2) 25:23  238:22

**wrong**(6) 58:13  155:3  205:23  216:23  231:1  231:3

**wrongdoers**(1) 208:9

**wrongdoing**(5) 131:16  165:16  203:17  204:4  229:23

**wrongfuk**(2) 204:11  205:25

**wrongfully**(2) 95:2  141:10

**wrote**(1) 147:9

**www.diazdata.com**(1) 1:47

**yeah**(1) 120:11

**year**(3) 64:18  201:21  218:3

**years**(16) 11:7  11:11  13:13  13:15  15:14  17:7  21:2  29:3  62:1  64:8  69:2  96:14  216:7  216:9  216:10  216:17

**yes**(89) 6:10  6:16  7:7  8:1  9:1  12:17  14:11  18:19  23:17  24:6  34:5  38:24  40:21  41:16  42:19  47:6  47:17  51:24  56:14  58:14  62:1  62:4  62:8  65:14  66:11  67:7  69:20  78:3  78:22  80:5  80:15  90:13  98:11  98:20  124:12  128:12  128:15  136:4  136:14  137:4  138:2  138:6  138:10  138:14  140:20  141:13  141:15  144:5  147:11  151:2  152:17  155:19  155:24  157:1  159:14  162:15  169:17  171:11  179:2  179:13  179:15  181:8  184:13  186:1  188:4  188:4  190:25  193:13  196:18  198:6  198:23  199:12  199:23  202:22  212:15  214:5  214:5  215:2  222:3  222:8  222:13  223:16  226:4  232:1  232:9  233:13  237:9  238:18  239:12

**yesterday**(1) 18:17

**yet**(8) 124:4  173:15  174:3  178:16  195:13  195:21  227:16  233:2

**yield**(2) 69:12  221:7

| Word | Page:Line | Word | Page:Line |
|---|---|---|---|

**you've**(7) 6:25 46:17 46:18 51:2 62:5
110:23 112:22

**young**(3) 2:19 3:42 3:42

**your**(274) 6:6 6:8 6:12 6:17 6:21 6:25 7:3
7:13 7:18 12:2 12:25 14:6 16:10 17:4
17:5 17:12 18:16 18:25 20:3 20:5 21:5
23:5 23:13 28:4 33:4 33:11 33:24 38:22
39:1 39:4 39:9 39:20 40:3 40:17 41:15
43:11 43:20 44:7 44:9 45:2 47:3 48:12
51:23 53:2 53:6 56:8 57:7 57:19 58:4
60:8 61:8 61:12 62:14 63:2 63:8 63:10
63:11 64:17 64:21 65:20 66:14 68:14 69:3
69:17 69:17 69:23 69:24 70:2 70:14 71:19
72:14 72:16 73:1 73:7 73:16 73:21 74:16
74:20 74:25 75:8 75:12 75:19 76:7 76:11
76:21 77:12 77:13 78:2 78:17 79:21 80:10
80:18 84:12 84:13 84:24 86:5 86:22 87:6
87:17 87:21 87:25 88:3 88:11 88:13 105:6
110:8 114:15 114:15 118:25 132:13 132:13
132:18 132:19 133:5 133:18 133:19
133:21 133:25 134:7 135:21 138:15 138:23
139:6 139:23 140:18 140:19 140:21
140:23 140:25 141:13 142:2 142:9 144:4
145:7 145:14 145:20 148:13 149:19 150:3
150:9 150:19 151:8 152:7 152:16 152:21
152:22 155:16 155:20 156:3 157:15 157:18
157:18 158:4 159:2 159:8 159:20 160:8
161:9 164:2 165:10 166:18 167:17 168:1
168:19 169:2 170:1 170:4 170:11 171:3
171:9 171:13 171:21 171:22 172:2 172:5
172:16 172:20 173:7 173:8 173:9 173:17
174:2 174:3 174:6 174:8 174:9 174:15
175:18 176:2 176:25 177:12 177:15 177:2
178:3 178:10 178:16 178:18 178:21 179:6
179:10 179:15 179:19 179:22 180:1 183:15
185:11 187:7 192:15 195:17 196:3 196:6
196:8 196:12 197:16 199:13 199:18 202:9
202:16 202:20 202:23 203:5 203:18 204:2
204:24 206:5 207:6 208:3 208:17 209:13
209:25 210:13 211:10 211:22 212:6 212:12
212:19 213:9 213:18 214:3 214:10 214:18
215:8 216:25 217:11 217:14 218:8 218:11
218:16 219:10 220:6 220:23 221:8 221:17
221:21 222:9 222:12 224:2 231:24 232:22
232:25 233:18 233:22 236:13 237:7 237:14
237:20 238:7 238:15 238:17 238:21 239:2
239:10 240:15 240:19

**yourself**(4) 66:4 140:13 140:13 140:16

**you'll**(7) 141:1 148:22 149:1 172:15
199:10 227:6 233:19

**you're**(9) 139:3 140:22 145:12 157:4
160:4 161:6 199:7 210:13 230:14

**you've**(7) 134:3 134:4 141:2 145:8 152:2
168:20 238:15

**zelbo**(179) 1:34 6:12 6:18 6:21 7:3 7:8
7:13 7:14 7:17 8:2 9:2 11:10 14:13 18:20
18:23 19:4 23:11 24:7 26:22 36:4 38:21
39:1 39:5 39:9 40:22 41:17 42:20 45:9
45:17 47:7 47:12 47:18 48:3 51:5 51:25
56:12 56:15 56:17 56:20 58:7 58:13 58:15
59:16 61:17 62:2 62:5 62:9 65:13 65:16
65:19 65:24 66:11 66:13 66:16 66:22 67:8
69:11 75:1 79:2 81:23 85:24 86:4 86:5
87:21 88:5 99:3 103:6 104:8 110:19 111:7
111:18 120:1 120:14 122:3 123:1 131:7
132:16 132:18 132:24 133:9 133:12 133:16
133:19 134:6 134:7 136:5 136:15 137:5
137:22 137:25 138:3 138:7 138:9 138:11
138:15 139:16 139:20 139:23 140:19
140:21 140:23 140:24 141:5 142:12 142:25
143:4 144:6 144:12 144:14 144:16 147:12
150:7 150:9 150:14 151:3 152:18 155:20
155:24 156:3 156:6 156:25 157:2 157:6
157:8 157:11 157:14 157:16 157:18 158:9
158:14 158:24 159:2 159:5 159:15 162:16
163:4 163:6 163:7 169:18 170:20 171:7
171:8 178:21 178:23 178:25 179:3 179:5
179:9 180:4 181:11 183:10 183:24 184:19
189:20 193:6 193:10 195:22 196:5 196:6
196:10 196:12 196:14 196:19 196:23 198:7
198:21 198:24 199:13 202:11 202:12
207:16 211:25 237:17 237:20 238:9 238:11
238:17 238:19 239:2

**zelbo's**(2) 27:16 128:17

**zloto**(1) 5:46

**zone**(10) 139:2 139:5 139:17 144:20
144:21 144:23 145:1 161:4 161:6 198:4

**"any**(1) 173:23
**"the**(1) 141:20