## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- X
                              :

*In re*                          :       Chapter 11

                               :

Nortel Networks Inc., *et al.*,[1]       :       Case No. 09-10138 (KG)

                               :

                 Debtors.    :       Jointly Administered

                               :

                               :       **Hearing date: November 15, 2011 at 10:00 a.m. (ET)**
                               :       **Objections due: November 8, 2011 at 4:00 p.m. (ET)**

------------------------------------------------------- X

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## APPROVING THE DISPOSAL OF CERTAIN
## PRODUCT SHIPPING AND STORAGE DOCUMENTATION

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion") pursuant to sections 105, 363 and 554 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order substantially in the form attached hereto as Exhibit C, authorizing the Debtors to destroy or otherwise dispose of certain hard copy product shipping and storage documentation ("Shipping Documentation") that are of inconsequential value to the Debtors' estate, and the retention of which is burdensome to the Debtors' estate; and granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105, 363 and

554(a) of the Bankruptcy Code, as supplemented by Rule 6007 of the Bankruptcy Rules.

## Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

### Relief Requested

7.      By this Motion, the Debtors seek an order authorizing the Debtors to dispose of certain Shipping Documentation stored at Phoenix Telecom Solutions, a non-affiliated third party-owned storage facility in Durham, North Carolina (the "Phoenix Facility").

8.      The Shipping Documentation includes bills of lading, inventory reports, load inspection documents, requests for shipping and just-in-time files.  The Debtors have performed an inventory at the Phoenix Facility and estimate there are approximately 165 Tri-Wall cartons (the "Cartons") filled with Shipping Documentation.  See Kathryn Schultea Declaration, dated October 26, 2011 ¶ 5 (the "Schultea Decl."), attached hereto as Exhibit A.  Examples of the Shipping Documentation are attached to the Schultea Declaration as Exhibit 1.  The Shipping

---

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

Documentation relates to either the Northern Telecom Inc. or NNI's businesses and is dated as early as 1997 through dates in 2010.  <u>See</u> Schultea Decl. ¶¶ 5, 7.  Many of the Cartons are water-logged and otherwise damaged, and the Shipping Documentation stored therein is in poor condition.  <u>See</u> Schultea Decl. ¶7.

9.     The Debtors must vacate the facility where the Shipping Documentation is currently stored.  <u>See</u> Schultea Decl. ¶ 8.   If the Debtors are required to move the Shipping Documentation from one facility and store it in another, they would incur a cost that would be greater than the value of such materials.  <u>See</u> Schultea Decl. ¶ 15.  Therefore, the Debtors have determined in their business judgment that it is in the best interests of their estate and creditors to seek authority to dispose of the Shipping Documentation.

10.     This Motion seeks relief only with respect to the Shipping Documentation described herein.  At this time, the Debtors do not seek to destroy, abandon, or otherwise dispose of any other categories of documents or data in their possession and reserve their rights to do so at a later date.

<u>**Facts Relevant to this Motion**</u>

11.     Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers.  Nortel's technologies spanned access and core networks and supported multimedia and business-critical applications.  Nortel's networking solutions consisted of hardware, software and services.  Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

12.     Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

13.     In the ordinary course of the Debtors' business, the Debtors maintained shipping documentation, including outgoing and incoming bills of lading, inventory reports and just-in-time documents.   In May of 2010, the Shipping Documentation was sent to the Phoenix Facility from Kuehne + Nagel Inc., a pre-petition third party transportation and logistics provider. Schultea Decl. ¶ 4.

14.     The Debtors have a contract with the Phoenix Facility to store their inventory and currently pay $71,000 a month for these storage services.  The contract is set to expire on December 31, 2011 and is not renewable.  As a result, the Phoenix Facility will not continue to store the Shipping Documentation after December 31, 2011, and NNI must vacate the premises. Schultea Decl. ¶ 8.

15.     During the pre-petition period, the Debtors retained Iron Mountain to store, destroy and dispose of records, files and documents.  The Debtors have continued post-petition to use Iron Mountain for their storage and disposal needs.  The Debtors' consultants, RLKS, have obtained an estimate for costs associated with moving the Shipping Documentation from the Phoenix Facility and storing it at Iron Mountain for at least one year.  In addition, RLKS has calculated their own costs and labor for categorizing and reboxing the Shipping Documentation to send it to Iron Mountain.  The total costs are estimated to be $228,500, which includes Iron Mountain costs and storage fees and RLKS costs and labor. See Schultea Decl. ¶ 9.

---

[5]       Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

16.    The cost of Iron Mountain disposing of the Shipping Documentation is estimated to be $8,000.  See Schultea Decl. ¶ 10.

17.    The Debtors and RLKS have reviewed the aforementioned costs, and have found that the cost of disposing or destroying the Shipping Documentation is more economical than the cost of moving the Shipping Documentation from the Phoenix Facility and storing it at Iron Mountain.  See Schultea Decl. ¶ 11.

18.    The Debtors have determined that, as of 2004 NNI has stored electronically certain shipping and storage documentation, including waybill and bills of lading data, records of shipments, customer data and delivery data.  Unlike the Shipping Documentation, the electronic databases provide value to the estate, because they are searchable by sales order number, delivery document number, record of shipment number, waybill number, and bill of lading number.  See Theresa J. North Declaration, dated October 26, 2011 ¶ 5 (the "North Decl."), attached hereto as Exhibit B.  Therefore, continuing to maintain the Shipping Documentation would burden the Debtors' estates with unnecessary costs.

19.    Since May of 2010, when the Shipping Documentation was stored at the Phoenix Facility, no employee of NNI has requested that RLKS retrieve any of the Shipping Documentation.  See Schultea Decl. ¶ 14.  Nor has RLKS been requested to locate hard copy shipping documentation generally during the fourteen months they have been retained in this case.  Schultea Decl. ¶ 14.

20.    Further, with the closing of all asset sales, the expiration of the transition services agreements and the general winding down of operations, the inventory at the Phoenix Facility has been or is in the process of being transferred to the various purchasers.  On September 28, 2011, the Debtors provided notice of the proposed disposal of the Shipping Documentation to the

post-petition purchasers.  The Debtors have not received any requests for copies from a purchaser.  <u>See</u> Schultea Decl. ¶ 13.

   21. Certain retention laws may apply to some of the Shipping Documentation.  For example, 49 CFR § 379, 29 CFR § 516.6(b) and 19 CFR § 163.4 require that bills of lading be retained for one, two or five years respectively.  The only Shipping Documentation that these retention laws may apply to are the bills of lading.  <u>See</u> 49 CFR § 379, 29 CFR § 516.6(b) and 19 CFR § 163.4.  Nortel's Trade and Compliance group implemented a pre-petition retention program.  <u>See</u> Schultea Decl. ¶ 12.  As part of this retention program, since 2004 all data contained within the bills of lading are stored electronically and can be readily accessed and produced.  <u>See</u> North Decl. ¶5.  Therefore, applicable retention law does not require the retention of the Shipping Information currently stored at the Phoenix Facility.  Moreover, the data stored electronically is searchable by sales order number, delivery document number, record of shipment number, waybill number, and bill of lading number and would be far more useful for any investigation or audit than the Shipping Documentation in the Phoenix Facility, which is not practicably searchable and is water-logged and otherwise damaged.  <u>See</u> North Decl. ¶5; Schultea Decl. ¶7.

   22. Thus, after a reasonable inquiry, detailed above, the Debtors have determined that they have no business need to retain the Shipping Documentation stored at the Phoenix Facility and that removing the Shipping Documentation from its current location and storing it in a new storage facility would impose an unnecessary and substantial administrative burden upon the Debtors, resulting in a financial drain without any concomitant benefit to the estate or the creditors of the estate.

23.      As noted above, the Debtors do not by this Motion seek to destroy, abandon or otherwise dispose of documents or data, other than the Shipping Documentation.

**Basis for Relief**

24.      The Bankruptcy Court has "exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of [its] case, and of property of the estate." 28 U.S.C. § 1334(e). See also 28 U.S.C. § 157(a).  The Bankruptcy Court may implement this broad jurisdiction through the use of section 105 of the Bankruptcy Code, which permits Bankruptcy Courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

25.      Courts use the business judgment standard when reviewing the Debtors' decision to abandon property that is either of inconsequential value or burdensome to the estate.  See In re Slack, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) ("The trustee's power to abandon property is discretionary … The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority.").

26.      Indeed, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b)(1) of the Bankruptcy Code, courts should generally approve a non-ordinary course transaction if the proposed use of estate assets is within the debtor's reasonable business judgment.  See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (stating that the court generally defers to the trustee's judgment so long as there is a legitimate business justification); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) (noting that courts have applied the "sound business purpose" test to evaluate

8

motions brought pursuant to section 363(b)); In re Del. & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991).

27.     Generally, where a debtor seeks to use, sell or lease assets of the estate pursuant to section 363 of the Bankruptcy Code, the debtor's good faith business judgment regarding the proposed transaction should not be disturbed absent a showing that the transaction constitutes an abuse of discretion or is contrary to the interests of the creditors. See In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 149-50 (3d Cir. 1986).

28.     The Debtors submits that the proposed disposal of the Shipping Documentation is the only reasonable course of action, because this property has no value to the estates or creditors.  The Debtors believe they can do so within the ordinary course of business operating in accordance with section 363(c) of the Bankruptcy Code.  However, in an abundance of caution, the Debtors also ask that permission be granted to destroy or otherwise dispose of the Shipping Documentation pursuant to section 554(a) of the Bankruptcy Code.

29.     The same standard applies to a request to abandon property pursuant to section 554 of the Bankruptcy Code.  See In re Cult Awareness Network, Inc, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997) (court must examine trustee's decision to abandon property to ensure it reflects business judgment made in good faith).

30.     Section 554(a) provides that a debtor in possession may abandon, subject to court approval, "property of the estate that…is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  Before authorizing abandonments of property, a bankruptcy court must find either: (i) the property is burdensome to the estate or (ii) the property is both of inconsequential value and inconsequential benefit to the estate.  See, e.g., Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 497 (1986), reh'g denied sub nom. O'Neill v. City of New York, 475

U.S. 1091 (1986); Trans World Airlines, Inc. v. Texaco, Inc. (In re Texaco, Inc.), 92 B.R. 38, 44 (S.D.N.Y. 1988); In re Crowthers McCall Pattern, Inc., 114 B.R. 877, 882 n.7 (Bankr. S.D.N.Y. 1990).

31.    Section 554(a) of the Bankruptcy Code "serves the purpose of expeditious and equitable distribution by permitting the trustee to abandon property that consumes the resources and drains the income of the estate." In re Pilz Compact Disc, Inc., 229 B.R. 630, 635 (Bankr. E.D. Pa. 1999) (internal quotation marks and citation omitted).  See also Claybrook v. AutoZone Texas, L.P. (In re Am. Remanufacturers, Inc.), 439 B.R. 633, 635-36 (Bankr. D. Del. 2010) (noting burdensome property may be abandoned pursuant to 11 U.S.C. § 554(a)).

32.    The Debtors submit that the standard set forth in section 554(a) of the Bankruptcy Code is also satisfied.

33.    The Debtors also request relief from Bankruptcy Rule 6007 to the extent that this Bankruptcy Rule requires the Debtors to serve notice of this Motion on all of their creditors.

34.    The Debtors believe that serving notice of the Motion on all of their creditors would be costly and provide negligible benefit to the Debtors' estates and creditors given the issue in question.  The Debtors respectfully submit that providing notice to the Notice Parties (as defined herein below), but not to all creditors, will effectuate the goal of adequate notice while at the same time advancing the goal of preserving the assets of the Debtors' estates for the benefit of their creditors.  By providing for service upon the Rule 2002 list (as well as certain parties who have requested notice regarding document disposal), the Debtors intend to provide notice to all creditors who have appeared and specifically sought such notice in these cases.

35.    Accordingly, the Debtors submit that modifying the notice requirements of Bankruptcy Rule 6007 is in the best interests of the Debtors' estates and their creditors.

36.     Disposal of the Shipping Documentation will benefit the Debtors' estates and the creditor of the same not only by saving estate resources, but by alleviating the administrative burden upon the Debtors' personnel so that they can divert their attention to other pressing issues. The Debtors will exercise their business judgment in selecting the method of disposing of the Shipping Documentation.

37.     As noted above, the relief requested herein does not include disposing of any documents or data other than the Shipping Documentation.[6]

**Notice**

38.     Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counterparties to the 363 Sales (v) the Monitor (vi) the Joint Administrators (vii) the general service list established in these chapter 11 cases; and (viii) certain parties that have requested notice with respect to document disposal by the Debtors ("the Notice Parties").  The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

39.     No prior request for the relief sought herein has been made to this or any other court.

---

[6]         The Debtor reserves the right by subsequent Motion to seek authority to destroy or otherwise dispose of or abandon documents and data in addition to those covered by this Motion.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  October 28, 2011
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*