## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
:
                                 :     Chapter 11
:
*In re*                             :
:
Nortel Networks Inc., *et al.*,[1]       :     Case No. 09-10138 (KG)
:
               Debtors.    :     (Jointly Administered)
:
------------------------------------------------------- X
:
Nortel Networks Inc.             :
:
and                              :
:
Nortel Networks (CALA) Inc.,     :     Adv. Proc. No. 10-55840 (KG)
:
                     :     **Hearing date:  December 14, 2011 at 10:00 am**
             Plaintiffs,    :     **(ET)**
:    **Objections due:  December 2, 2011 at 4:00 pm**
v.                          :     **(ET)**
:
CoAMS, Inc.,                 :
:
               Defendant.    :
:
-------------------------------------------------------X

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY
## RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION
## OF SETTLEMENT OF AVOIDANCE CLAIMS BY AND BETWEEN
## NORTEL NETWORKS INC., NORTEL NETWORKS (CALA) INC. AND COAMS, INC.

Nortel Networks Inc. ("NNI"), Nortel Networks (CALA) Inc. ("NN CALA" and together

with NNI, "Plaintiffs") and certain of their affiliates, as debtors and debtors in possession

(collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order

---

[1]  In addition to Nortel Networks Inc. ("NNI"), the Debtors in the Chapter 11 cases are:  Nortel Networks
Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma
Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc.,
Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.)
Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks
Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA").  Additional information
regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at
http://dm.epiq11.com/nortel.

substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 502, 547, and 550 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to enter into and approving a stipulation (the "Stipulation") with CoAMS, Inc. ("CoAMS" or "Defendant", and together with Plaintiffs, the "Parties"), in the form attached hereto as **Exhibit B**, resolving the avoidance claim against CoAMS and the Adversary Proceeding entitled Nortel Networks Inc, et al v. CoAMS, Inc., Adv. Proc. No. 10-55840 (KG) (the "Adversary Proceeding"); and granting such other and further relief as the Court (the "Court" or the "Bankruptcy Court") deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.      On January 14, 2009 (the "NNI Petition Date"), the Debtors, other than NN CALA, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  NN CALA filed a petition under Chapter 11 of the Bankruptcy Code on July 14, 2009 (the "CALA Petition Date", and together with the NNI Petition Date, the "Petition Dates").  The cases are consolidated and are being jointly administered for procedural purposes only.  [Main D.I. 1098]. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [Main D.I.s 141, 142][2], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

---

[2]  Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __." Citations herein to the docket in this adversary proceeding (Adv. Pro. No. 10-55840) are in the form "Adv. D.I. __."

[3]  The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]  The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## Relief Requested

7.      By this Motion, the Debtors seek an order, pursuant to sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Stipulation, (ii) authorizing but not directing the Debtors to take all actions reasonably appropriate to perform their obligations under the Stipulation, and (iii) granting them such other and further relief as the Bankruptcy Court deems just and proper.

## Facts Relevant to this Motion

8.      Defendant provided Plaintiffs services related to the administration of and payment under various incentive programs for certain third-parties.

9.      Plaintiffs' books and records indicate that within ninety (90) days prior to the Petition Dates, Plaintiffs made one or more transfers of an interest in its property to or for the benefit of Defendant in the aggregate amount of $1,387,105.72 (the "Subject Transfers").

10.     On December 6, 2010, Plaintiffs filed their Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code (Adv. Pro. No. 10-55840) (the "Complaint") against the Defendant in this Court, pursuant to which NNI sought to avoid and recover the Subject Transfers.

11.     On January 10, 2011, Defendant filed an Answer to the Complaint (Adv. D.I. 4) in the Adversary Proceeding, denying certain allegations and asserting various defenses. Defendant has asserted to Plaintiffs that it acted as a mere conduit between Plaintiffs and third parties, including OneConnect Services Inc. ("OneConnect") and Pomeroy IT Solutions, Inc.

4

("Pomeroy"), with regard to certain portions of one or more of the Subject Transfers and that the Subject Transfers are not avoidable by Plaintiffs.

12.     On May 20, 2011, Plaintiffs filed an Amended Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims (the "Amended Complaint") pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code against CoAMS, OneConnect, and Pomeroy, in which Plaintiffs sought to avoid and recover the Subject Transfers in full from CoAMS (the "CoAMS Avoidance Claim"), or, in the alternative, certain portions of the Subject Transfers from OneConnect or Pomeroy (the "OneConnect and Pomeroy Avoidance Claims") [Adv. D.I. 30]. The OneConnect and Pomeroy Avoidance Claims have both been resolved and dismissed consistent with this Court's October 27, 2010 Order Authorizing And Approving Settlement Procedures To Settle Certain Avoidance Claims (the Settlement Procedures Order") which, *inter alia*, authorizes the Debtors to settle avoidance claims where the asserted claim amount is equal to or less than $250,000 without filing or serving any advance notice of such settlement and without further notice or order of the Bankruptcy Court.

13.     On June 16, 2011, CoAMS filed an Answer to the Amended Complaint [Adv. D.I. 42] in the Adversary Proceeding, denying certain allegations and asserting various defenses.

14.     The Settlement Procedures Order also requires the Debtors to obtain Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 before they settle certain avoidance claims where the asserted claim amount is greater than $1,000,000 [Main D.I. 4211].

15.     Since the Amended Complaint and Answer to the Amended Complaint were filed, the Parties have engaged in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by further litigation of the CoAMS Avoidance Claim, the Parties

have agreed to settle the CoAMS Avoidance Claim on the terms set forth in the Stipulation, attached hereto as **Exhibit B**.

16.     Pursuant to the Stipulation[5] and subject to the Bankruptcy Court's approval, Plaintiffs have agreed to settle the CoAMS Avoidance Claim in the amount of $35,000.00.  In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration, CoAMS has agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release the Debtors, their past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "Debtor Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that CoAMS now has, had, may have had, or hereafter may have against any of the Debtor Releasees regarding the CoAMS Avoidance Claim, the Adversary Proceeding, and any transaction described or referred to in the Complaint or the Amended Complaint in the Adversary Proceeding, and any claim arising under § 502(h) of the Bankruptcy Code.

17.     In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration, Plaintiffs have agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release the CoAMS and National Systems Inc. (successor by merger to CoAMS), their past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "CoAMS Releasees"), from any and

---

[5]  In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of

action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued,

matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that

Plaintiffs now have, had, may have had, or hereafter may have against any of the CoAMS

Releasees regarding (i) the CoAMS Avoidance Claim, the Adversary Proceeding, and any

transaction described or referred to in the Complaint in the Adversary Proceeding and/or (ii) any

claim relating to any transfer made prior to the Petition Date from Debtors to the CoAMS

Releasees arising under, based upon, or relating to the avoidance powers under Chapter 5 of the

Bankruptcy Code.

## Basis for Relief

18.    The Debtors seek authorization for Plaintiffs to enter into the Stipulation under

sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section

105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is

necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice

and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

19.    Citing this authority, the Third Circuit has emphasized that "[c]ompromises are

favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)

(quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health

Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally

favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'(i)n administering

reorganization proceedings in an economical and practical manner it will often be wise to

arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  In re

Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for

Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  And

courts in this District have recognized that the approval of a proposed compromise and

settlement is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram

Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

         20.     Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re

Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211

B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the

need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer

Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best

possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.

Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below

the lowest point in a range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of

Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at

330.

         21.     The Third Circuit has set out four criteria for a bankruptcy court to consider when

evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62

B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.),
283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

22.     The Debtors respectfully submit that the Martin Factors weigh heavily in favor of
approving the Stipulation. While Plaintiffs are prepared to litigate the CoAMS Avoidance Claim,
CoAMS has claimed that it has a strong "mere conduit" defense because it contends that all but a
portion of the Subject Transfers were not for its benefit but for the benefit of third-parties.
CoAMS further asserts that it has a strong ordinary course of business defense based on the
average payment time during the history of the parties' dealings.

23.     Plaintiffs recognize that litigation of the CoAMS Avoidance Claim carries with it
inherent uncertainties and there can be no assurance that litigation of the CoAMS Avoidance
Claim would achieve a better result than the one set forth in the Stipulation.  Pursuant to the
settlement reflected in the Stipulation, CoAMS will pay to Plaintiffs $35,000.00 with a waiver of
the resulting 502(h) claim.  This resolution fairly balances Plaintiffs's likelihood of success on
the merits of the CoAMS Avoidance Claim against their interest in avoiding the uncertainty of
litigation.

24.     In addition, further litigation of the CoAMS Avoidance Claim would result in the
estate's expenditure of considerable additional legal fees.  These would include fees associated
with formal discovery and litigation.  In the absence of a settlement, the estate would be
burdened with the time and costs of ongoing litigation, which would be disruptive of the estate's
efforts to resolve the matters that are essential to the ultimate resolution of these cases.

25.     Finally, the interests of the creditors weigh in favor of approval of the Stipulation.
The Debtors believe that the interests of their creditors are served by the prompt and efficient
resolution of the CoAMS Avoidance Claim and the avoidance of litigation risk and substantial

legal expenses that would be incurred if the CoAMS Avoidance Claim were to be further litigated.

26.     In light of the foregoing, the Debtors respectfully seek authorization for Plaintiffs to enter into the Stipulation and approval of the Stipulation.

### Notice

27.     Notice of the Motion has been given via first class mail to (i) the Defendant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

28.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  November 18, 2011  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)  
Neil P. Forrest (admitted *pro hac vice*)  
Brendan H. Gibbon (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone:  (212) 225-2000  
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

  */s/ Chad A. Fights*  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
Chad Fights (No. 5006)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone:  (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors*  
*and Debtors in Possession*

11