IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
| | |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*, | Bankr. Case No. 09-10138 (KG) |
| Debtors.[1] | |
| | (Jointly Administered) |
---------------------------------------------------------------X
| | |
| Nortel Networks, Inc., | |
| Plaintiff, | |
| v. | Adv. Pro. No. 11-50206 (KG) |
| International Business Machines Corporation, IBM Credit LLC and IBM Canada Limited, | |
| Defendants. | Hearing Date: December 14, 2011 at 10:00 a.m. (ET) |
| | Objection Deadline: December 7, 2011 at 4:00 p.m. (ET) |
---------------------------------------------------------------X

**NORTEL NETWORKS INC.'S MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION AND SETTLEMENT AGREEMENT OF AVOIDANCE AND OTHER CLAIMS AMONG NORTEL NETWORKS INC., THE CANADIAN DEBTORS, INTERNATIONAL BUSINESS MACHINES CORPORATION, IBM CREDIT LLC, <u>IBM CANADA LIMITED, AND IBM GLOBAL SERVICES (CHINA) CO. LTD.</u>**

Nortel Networks Inc. ("<u>NNI</u>"), as one of the above-captioned debtors and debtors in possession (collectively, the "<u>U.S. Debtors</u>"), hereby moves this Court (the "<u>Motion</u>"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 502 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of

---

[1] The U.S. Debtors in the above-captioned Chapter 11 cases are: Nortel Networks Inc., Nortel Networks (CALA) Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., and Nortel Networks Cable Solutions Inc. Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing NNI's entry into and approving a stipulation and settlement agreement of avoidance and other claims (the "Stipulation") by and between i) NNI; ii) Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation ("NNTC" collectively, the "Canadian Debtors"); and iii) International Business Machines Corporation ("IBMC"), IBM Credit LLC ("IBM Credit"), IBM Canada Limited ("IBM Canada," and collectively, with IBM and IBM Credit, the "Defendants") and IBM Global Services (China) Co. Ltd. ("IGSC" and, together with the Defendants, the "IBM Entities" or "IBM") (the foregoing entities, including NNI, are collectively referred to herein as the "Parties" and each a "Party"), attached hereto as **Exhibit B**, and (b) granting them such other and further relief as the Court deems just and proper. In support of this Motion, NNI respectfully represents as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 502, 547 and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3. On January 14, 2009 (the "Petition Date"), the U.S. Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The U.S.

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

2

Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

   4.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the U.S. Debtors [Main D.I.s 141, 142][3], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

   5.  Also on the Petition Date, the Canadian Debtors filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "CCAA Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

   6.  On January 14, 2009, the Canadian Court entered an order recognizing the U.S. Debtors' chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.

---

[3] Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __." Citations herein to the docket in this adversary proceeding (Adv. Pro. No. 11-50206) are in the form "Adv. D.I. __."

[4] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

7.     On or about February 2, 2009, Defendant IBMC filed against NNI a general unsecured pre-petition proof of claim in the amount of $5,629,500.31, which includes an unsecured priority component of $96,688.50, designated as Claim No. 192 in NNI's bankruptcy case ("Claim 192").

8.     Since the Petition Date, Nortel has sold its business units and other assets to various purchasers. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the U.S. Debtors and http://dm.epiq11.com/nortel.

9.     The U.S. Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the U.S. Debtors' cases.

10.     The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

## Relief Requested

11.     By this Motion, NNI seeks an order, pursuant to sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing NNI's entry into and approving the Stipulation and (ii) granting them such other and further relief as the Court deems just and proper.

## Facts Relevant to this Motion

12.     NNL, on behalf of itself, NNC and its subsidiaries, and IBMC were party to a certain master services agreement dated March 30, 2007 (including any statements of work, project change requests, schedules, exhibits, annexes, purchase orders, work requests or any other document issued pursuant to or in connection with such agreement and any portion of such

agreement, and the rights and obligations thereunder, that was assigned by IBMC to any other party, the "HLR/HSS Agreement").

13. NNL, on behalf of itself, NNC and NNI, and IBMC were parties to a certain master services agreement dated March 31, 2008 (including any statements of work, project change requests, contract change requests, request for new project services, schedules, exhibits, annexes, purchase orders, work requests or any other document issued pursuant to or in connection with such agreement, that portion of such agreement, and the rights and obligations thereunder, that were assigned by IBMC to IBM Canada by notice of assignment among IBMC, IBM Canada and NNL deemed to be effective June 9, 2008, that portion of such agreement, and the rights and obligations thereunder, that were assigned to IGSC by notice of assignment among IBMC, IGSC and NNL dated September 22, 2008, and any other portion of such agreement, and the rights and obligations thereunder, that was assigned by IBMC to any other party, the "PV&T Agreement" and, with the HLR/HSS Agreement, the "MSAs").

14. NNI's books and records indicate that within ninety (90) days prior to the Petition Date, NNI made one or more transfers of an interest in its property to or for the benefit of Defendants in the aggregate amount of $5,762,916.24 (the "Subject Transfers").

15. On or about January 30, 2009, Defendant IBM Credit filed against NNI a general unsecured pre-petition proof of claim in the amount of $88,229.20, which includes an unsecured priority component of $9,961.60, designated as Claim No. 191 in NNI's bankruptcy case ("Claim 191").

16. On or about February 2, 2009, Defendant IBMC filed against NNI a general secured pre-petition proof of claim in the amount of $5,629,500.31, which includes an

unsecured priority component of $96,688.50, designated as Claim No. 192 in NNI's bankruptcy case ("Claim 192").

17. On February 27, 2009, the Bankruptcy Court entered an order recognizing the CCCA Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

18. On or about September 30, 2009, IGSC filed against NNI a general unsecured pre-petition proof of claim in the amount of $485,750.96 and an administrative expense claim in the amount of $493,509.95, totaling $979,260.91 and collectively designated as Claim No. 5418 in NNI's bankruptcy case ("Claim 5418"), Defendant IBM Canada filed against NNI a general unsecured pre-petition proof of claim in the amount of CAD $2,308,982.81 and USD $576,343.04[5] and an administrative expense claim in the amount of CAD $13,384,621.97, totaling CAD $15,693,604.78 and USD $576,343.04 and collectively designated as Claim No. 5419 in NNI's bankruptcy case ("Claim 5419"), and Defendant IBMC filed against NNI a general unsecured pre-petition proof of claim in the amount of $22,299,106.76 and an administrative expense claim in the amount of $29,310,274.38, totaling $51,609,381.14 and collectively designated as Claim No. 5420 in NNI's bankruptcy case ("Claim 5420", and together with Claim 191, Claim 192, Claim 5418, and Claim 5419, the "IBM Original Proofs of Claim").

19. On December 15, 2009, the Bankruptcy Court entered the *Order Approving Settlement Agreement With The International Business Machines Corporation* (the "Postpetition Claims Settlement Order") which approved a confidential settlement agreement dated December 7, 2009, by and between NNI and Defendant IBMC regarding, *inter alia*, certain post-petition portions of Claim 192, Claim 5418, Claim 5419 and Claim 5420 [Main D.I. 2139].

---

[5] All claim amounts are listed in United States Dollars (USD) unless otherwise noted.

20.  On September 16, 2010, the Bankruptcy Court entered the *First Supplemental Order Granting Debtors' Tenth Omnibus Objection (Non-Substantive) To Certain Claims Pursuant To 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 And Del. L.R. 3007-1 (Amended; Duplicate)* which disallowed in full Claim 192 as being amended by Claim 5420 [Main D.I. 3952].

21.  On September 16, 2010, the Court entered an *Order Authorizing And Approving Settlement Procedures To Settle Certain Prepetition Claims*, which requires the U.S. Debtors to obtain Bankruptcy Court approval pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") before they settle certain disputed Proofs of Claim that were originally filed in an amount equal to or greater than $1,000,000 [Main D.I. 3953].

22.  On September 16, 2010, the Canadian Court granted that certain Claims Resolution Order (the "Claims Resolution Order") in the CCAA Proceedings.

23.  On October 27, 2010, the Bankruptcy Court entered an *Order Authorizing And Approving Settlement Procedures To Settle Certain Avoidance Claims*, which requires the U.S. Debtors to obtain Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 before they settle avoidance claims where the asserted claim amount is greater than $1,000,000 [Main D.I. 4211].

24.  On or about August 8, 2011, Defendant IBM Canada filed against NNI a general unsecured pre-petition proof of claim in the amount of CAD $2,275,778.86 and USD $576,343.04 designated as Claim No. 7894 in NNI's bankruptcy case ("Claim 7894"), IGSC filed against NNI a general unsecured pre-petition proof of claim in the amount of $485,751.28 designated as Claim No. 7895 in NNI's bankruptcy case ("Claim 7895"), Defendant IBM Credit

filed against NNI a general unsecured pre-petition proof of claim in the amount of $13,411.80 designated as Claim No. 7896 in NNI's bankruptcy case ("Claim 7896"), and Defendant IBMC filed against NNI a general unsecured pre-petition proof of claim in the amount of $36,005,119.45 designated as Claim No. 7897 in NNI's bankruptcy case ("Claim 7897", and together with Claim 7894, Claim 7895, Claim 7896, the "IBM Amended Proofs of Claim").

25. On January 14, 2011, NNI instituted an Adversary Proceeding, Adv. Proc. No. 11-50206 (the "Adversary Proceeding") by filing the *Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims* (the "Complaint") pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code against Defendants, in which it sought to avoid and recover the Subject Transfers (the "Avoidance Claim") [Adv. D.I. 1].

26. On March 30, 2011, Defendants filed the *Answer To Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims* [Adv. D.I. 6] in the Adversary Proceeding, denying certain allegations and asserting various defenses.

27. IBMC, IBM Canada and IGSC filed proofs of claim in the CCAA Proceedings as specified on Schedule "A" to the Stipulation (collectively, the "CCAA Claims"), which claims in part duplicate the IBM Amended Proofs of Claim.

28. Since the Complaint and the Answer were filed, the Parties have engaged in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by further litigation of the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, and the CCAA Claims, have agreed to settle the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, and the CCAA Claims on the terms set forth herein.

29. As a result of these negotiations, NNI, subject to this Court's approval, reached a compromise with the other Parties resolving the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, and the CCAA Claims such that, *inter alia*, as of the Effective Date (as defined in the Stipulation):

(a) i) the IBM Original Proofs of Claim shall be deemed as disallowed in full as such claims were amended by the IBM Amended Proofs of Claim and settled in part by the Postpetition Claims Settlement Order, ii) Claim 7894, Claim 7895, and Claim 7896 shall be deemed disallowed in full, and iii) Claim 7897 shall be reduced to $19,049,760.74 and allowed as a general unsecured pre-petition claim in NNI's bankruptcy case (the "Allowed Claim"), and

(b) in full and final settlement of the CCAA Claims, the following claims shall be allowed in the CCAA Proceedings:

(1) a general unsecured claim by IBM Canada against NNL in the amount of US$15,961,251; and

(2) a general unsecured claim by IGSC against NNTC in the amount of US$890,691.04 (collectively, the "Allowed CCAA Claims"), and such Allowed CCAA Claims shall constitute IBM's Proven Claims (as defined in the Claims Resolution Order) for all purposes, including, without limitation, for the purposes of voting and distribution under any Plan (as defined in the Claims Resolution Order). IBM acknowledges that for purposes of voting and distributions under any Plan or any other distribution in connection with the Allowed CCAA Claims, the claim amounts may be converted from U.S. dollars to Canadian dollars using the exchange rate established in connection with such Plan or other distribution. Nothing herein shall prejudice the Canadian Debtors' ability to effect a consolidation of their respective estates for purposes of a Plan or distribution in connection with the Allowed CCAA Claims.

The foregoing (a) and (b), together with the other consideration to be provided pursuant to the Stipulation, including certain releases set forth therein, shall be in full and final settlement and satisfaction of the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, the CCAA Claims and the other claims released thereunder.[6]

30. NNI believes, in the exercise of its reasonable business judgment, that the resolution of the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs

---

[6] In the event of a discrepancy between the description of the Stipulation herein and the terms of the terms of the Stipulation, the terms of the Stipulation shall control.

of Claim, the CCAA Claims and the other claims released through the Stipulation is appropriate and in the best interests of both its estate and its creditors. Further, IBM and the Canadian Debtors have settled the CCAA Claims pursuant to the Stipulation. Nothing in the Stipulation or this Motion shall constitute a waiver or amendment of the U.S. Debtors' rights concerning the resolution of any other claims in these proceedings under the Cross Border Protocol on the Resolution of Claims (the "Cross Border Claims Protocol") entered into by the U.S. Debtors and the Canadian Debtors, and approved by this Court and the Canadian Court; nor shall anything in the Stipulation or this Motion have any binding or precedential effect on the resolution of any other claims in these proceedings, including other Overlapping Claims or Same-Creditor Claims (as those terms are defined in the Cross Border Claims Protocol).

## Basis for Relief

31. NNI seeks authorization to enter into the Stipulation under sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

32. Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to

arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). Further, courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

33. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

34. The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office

Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

35. NNI respectfully submits that the Martin Factors weigh in favor of approving the Stipulation, and request that its entry into the Stipulation be authorized under Bankruptcy Rule 9019. While NNI is prepared to litigate the claims settled pursuant to the Stipulation and believe that they could prevail in such litigation, litigation carries with it inherent uncertainties and complexities and there are no assurances that such litigation would achieve a better result than the one set forth in the Stipulation. This resolution fairly balances NNI's likelihood of success on the merits of the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, the CCAA Claims and the other claims released against its interest in avoiding the uncertainty of litigation.

36. In addition, further litigation of the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, the CCAA Claims and the other claims released would result in the estate's expenditure of legal fees, which could diminish or eviscerate the benefits to be achieved through the compromise achieved through stipulating. Finally, the interests of the creditors militate in favor of approval of the Stipulation. NNI believes that the interests of its creditors are served by the prompt and efficient resolution of the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, the CCAA Claims and the other claims released and the avoidance of litigation risk and substantial legal expenses that would be incurred if the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, the CCAA Claims and the other claims released were to be litigated.

In light of the foregoing, NNI respectfully seeks authorization to enter into the Stipulation and approval of the Stipulation.

## Notice

37. Notice of the Motion has been given via electronic transmission, hand delivery or first class mail to (i) counsel to IBM; (ii) the Monitor; (iii) the U.S. Trustee; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; and (vi) the general service list established in these chapter 11 cases. NNI submits that under the circumstances no other or further notice is necessary.

## No Prior Request

38. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, NNI respectfully requests that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: November 23, 2011
       Wilmington, Delaware
4621028.1

                MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                */s/ Donna L. Culver*
                Donna L. Culver (No. 2983)
                Derek C. Abbott (No. 3376)
                Chad A. Fights (No. 5006)
                1201 North Market Street
                P.O. Box 1347
                Wilmington, Delaware 19801
                Telephone: (302) 658-9200
                Facsimile: (302) 658-3989

                *Counsel for the Debtors*
                *and Debtors in Possession*