**EXHIBIT B**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X

| | |
|---|---|
| *In re* : | Chapter 11 |
| Nortel Networks Inc., *et al.*, : | |
| : | Bankr. Case No. 09-10138 (KG) |
| Debtors.[1] : | |
| : | (Jointly Administered) |
| ----------------------------------------------------------X : | |
| Nortel Networks, Inc., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Adv. Pro. No. 11-50206 (KG) |
| : | |
| International Business Machines Corporation, : | |
| IBM Credit LLC and IBM Canada Limited, : | |
| : | |
| Defendants. : | |

----------------------------------------------------------X

Court File No. 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C., 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS

---

[1]     The U.S. Debtors in the above-captioned Chapter 11 cases are: Nortel Networks Inc., Nortel Networks (CALA) Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., and Nortel Networks Cable Solutions Inc. (collectively, the "US Debtors") Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., and Nortel Networks Cable Solutions Inc. (collectively, the "US Debtors") Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

1

INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

STIPULATION AND SETTLEMENT AGREEMENT OF AVOIDANCE AND OTHER
CLAIMS AMONG NORTEL NETWORKS INC., THE CANADIAN DEBTORS,
INTERNATIONAL BUSINESS MACHINES CORPORATION, IBM CREDIT LLC, IBM
CANADA LIMITED, AND  IBM GLOBAL SERVICES (CHINA) CO. LTD.

This stipulation and settlement agreement of avoidance and other claims
("Stipulation and Settlement Agreement") is entered into by and between: i) Nortel Networks
Inc. ("NNI") as one of the above-captioned debtors and debtors in possession (collectively, the
"U.S. Debtors"); ii) Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"),
Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel
Networks Technology Corporation ("NNTC") (collectively, the "Canadian Debtors"); and iii)
International Business Machines Corporation ("IBMC"), IBM Credit LLC ("IBM Credit"), IBM
Canada Limited ("IBM Canada," and collectively, with IBM and IBM Credit, the "Defendants")
and IBM Global Services (China) Co. Ltd. ("IGSC" and, together with the Defendants, the "IBM
Entities" or "IBM") (the foregoing entities are collectively referred to herein as the "Parties" and
each a "Party"). The Parties hereby stipulate and agree as follows:

## RECITALS

WHEREAS NNL, on behalf of itself, NNC and its subsidiaries, and IBMC were
party to a certain master services agreement dated March 30, 2007 (including any statements of
work, project change requests, schedules, exhibits, annexes, purchase orders, work requests or
any other document issued pursuant to or in connection with such agreement and any portion of
such agreement, and the rights and obligations thereunder, that was assigned by IBMC to any
other party, the "HLR/HSS Agreement"); and

2

WHEREAS NNL, on behalf of itself, NNC and NNI, and IBMC were parties to a certain master services agreement dated March 31, 2008 (including any statements of work, project change requests, contract change requests, request for new project services, schedules, exhibits, annexes, purchase orders, work requests or any other document issued pursuant to or in connection with such agreement, that portion of such agreement, and the rights and obligations thereunder, that were assigned by IBMC to IBM Canada by notice of assignment among IBMC, IBM Canada and NNL deemed to be effective June 9, 2008, that portion of such agreement, and the rights and obligations thereunder, that were assigned to IGSC by notice of assignment among IBMC, IGSC and NNL dated September 22, 2008, and any other portion of such agreement, and the rights and obligations thereunder, that was assigned by IBMC to any other party, the "PV&T Agreement" and, with the HLR/HSS Agreement, the "MSAs"); and

WHEREAS, on January 14, 2009 (the "Petition Date"), the U.S. Debtors (with the exception of NN CALA, which filed on July 14, 2009) each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (Case No. 09-10138 (KG) (Jointly Administered)); and

WHEREAS, the U.S. Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, no trustee or examiner has been appointed in the U.S. Debtors' cases; and

WHEREAS, also on the Petition Date, the Canadian Debtors filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies'

Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (the "CCAA Proceedings"); and

WHEREAS, the Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court; and

WHEREAS, Ernst & Young Inc. was appointed the monitor of the Canadian Debtors in the CCAA Proceedings (the "Monitor"); and

WHEREAS, on January 14, 2009, the Canadian Court entered an order recognizing the US Debtors' chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA; and

WHEREAS, NNI's books and records indicate that within ninety (90) days prior to the Petition Date, NNI made one or more transfers of an interest in its property to or for the benefit of Defendants in the aggregate amount of $5,762,916.24 (the "Subject Transfers"); and

WHEREAS, on or about January 30, 2009, Defendant IBM Credit filed against NNI a general unsecured pre-petition proof of claim in the amount of $88,229.20, which includes an unsecured priority component of $9,961.60, designated as Claim No. 191 in NNI's bankruptcy case ("Claim 191"); and

WHEREAS, on or about February 2, 2009, Defendant IBMC filed against NNI a general unsecured pre-petition proof of claim in the amount of $5,629,500.31, which includes an unsecured priority component of $96,688.50, designated as Claim No. 192 in NNI's bankruptcy case ("Claim 192"); and

WHEREAS, on February 27, 2009, the Bankruptcy Court entered an order recognizing the CCCA Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code; and

4

WHEREAS, on or about September 30, 2009, IGSC filed against NNI a general unsecured pre-petition proof of claim in the amount of $485,750.96 and an administrative expense claim in the amount of $493,509.95, totaling $979,260.91 and collectively designated as Claim No. 5418 in NNI's bankruptcy case ("Claim 5418"), Defendant IBM Canada filed against NNI a general unsecured pre-petition proof of claim in the amount of CAD $2,308,982.81 and USD $576,343.04[2] and an administrative expense claim in the amount of CAD $13,384,621.97, totaling CAD $15,693,604.78 and USD $576,343.04 and collectively designated as Claim No. 5419 in NNI's bankruptcy case ("Claim 5419"), and Defendant IBMC filed against NNI a general unsecured pre-petition proof of claim in the amount of $22,299,106.76 and an administrative expense claim in the amount of $29,310,274.38, totaling $51,609,381.14 and collectively designated as Claim No. 5420 in NNI's bankruptcy case ("Claim 5420", and together with Claim 191, Claim 192, Claim 5418, and Claim 5419, the "IBM Original Proofs of Claim"); and

WHEREAS, on December 15, 2009, the Bankruptcy Court entered the *Order Approving Settlement Agreement With The International Business Machines Corporation* (the "Postpetition Claims Settlement Order") which approved a confidential settlement agreement dated December 7, 2009, by and between NNI and Defendant IBMC regarding, *inter alia*, certain post-petition portions of Claim 192, Claim 5418, Claim 5419 and Claim 5420 [Main D.I. 2139]; and

WHEREAS, on September 16, 2010, the Bankruptcy Court entered the *First Supplemental Order Granting Debtors' Tenth Omnibus Objection (Non-Substantive) To Certain Claims Pursuant To 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 And Del. L.R. 3007-1 (Amended;*

---

[2]    All claim amounts are listed in United States Dollars (USD) unless otherwise noted.

*Duplicate)* which disallowed in full Claim 192 as being amended by Claim 5420 [Main D.I. 3952]; and

WHEREAS, on September 16, 2010, the Court entered an *Order Authorizing And Approving Settlement Procedures To Settle Certain Prepetition Claims*, which requires the Debtors to obtain Bankruptcy Court approval pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") before they settle certain disputed Proofs of Claim that were originally filed in an amount equal to or greater than $1,000,000 [Main D.I. 3953]; and

WHEREAS, on September 16, 2010, the Canadian Court granted that certain Claims Resolution Order (the "Claims Resolution Order") in the CCAA Proceedings; and

WHEREAS, on October 27, 2010, the Bankruptcy Court entered an *Order Authorizing And Approving Settlement Procedures To Settle Certain Avoidance Claims*, which requires the Debtors to obtain Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 before they settle avoidance claims where the asserted claim amount is greater than $1,000,000 [Main D.I. 4211]; and

WHEREAS, on or about August 8, 2011, Defendant IBM Canada filed against NNI a general unsecured pre-petition proof of claim in the amount of CAD $2,275,778.86 and USD $576,343.04 designated as Claim No. 7894 in NNI's bankruptcy case ("Claim 7894"), IGSC filed against NNI a general unsecured pre-petition proof of claim in the amount of $485,751.28 designated as Claim No. 7895 in NNI's bankruptcy case ("Claim 7895"), Defendant IBM Credit filed against NNI a general unsecured pre-petition proof of claim in the amount of $13,411.80 designated as Claim No. 7896 in NNI's bankruptcy case ("Claim 7896"), and Defendant IBMC filed against NNI a general unsecured pre-petition proof of claim in the amount

of $36,005,119.45 designated as Claim No. 7897 in NNI's bankruptcy case ("Claim 7897", and together with Claim 7894, Claim 7895, Claim 7896, the "IBM Amended Proofs of Claim"); and

WHEREAS, on January 14, 2011, NNI instituted an Adversary Proceeding, Adv. Proc. No. 11-50206 (the "Adversary Proceeding") by filing the *Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims* (the "Complaint") pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code against Defendants, in which it sought to avoid and recover the Subject Transfers (the "Avoidance Claim") [Adv. D.I. 1][3]; and

WHEREAS, on March 30, 2011, Defendants filed the *Answer To Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims* [Adv. D.I. 6] in the Adversary Proceeding, denying certain allegations and asserting various defenses; and

WHEREAS, IBMC, IBM Canada and IGSC filed proofs of claim in the CCAA Proceedings as specified on Schedule "A" hereto (collectively, the "CCAA Claims"), which claims in part duplicate the IBM Amended Proofs of Claim; and

WHEREAS, since the Complaint and the Answer were filed, the Parties have engaged in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by further litigation of the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, and the CCAA Claims, have agreed to settle the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, and the CCAA Claims on the terms set forth herein.

---

[3]     Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __." Citations herein to the docket in this adversary proceeding (Adv. Pro. No. 11-50206) are in the form "Adv. D.I. __."

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is stipulated and agreed by and between the Parties, as follows:

1.     Effective Date of the Stipulation and Settlement Agreement.  The Parties hereby agree and stipulate that the date on which the Bankruptcy Court order approving this Stipulation and Settlement Agreement and the settlement reflected herein becomes a Final Order (as defined below) shall be deemed the "Effective Date" of this Stipulation and Settlement Agreement.  The Bankruptcy Court order approving this Stipulation and Settlement Agreement and the settlement reflected herein shall become a "Final Order" upon the occurrence of:  (i) the entry by the Bankruptcy Court of a final order approving this Stipulation and Settlement Agreement, without modification of its terms, pursuant to Bankruptcy Rule 9019; and (ii) the expiration of the time for appeal or to seek permission to appeal from the Bankruptcy Court's final order approving this Stipulation and Settlement Agreement, or if an appeal from a final order is taken, (A) the affirmance of such order in its entirety, without modification, by the court of last resort to which an appeal of such order may be taken, or (B) withdrawal with prejudice of such appeal.

2.     Resolution of the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim and the CCAA Claims.  As of the Effective Date:

(a)     i) the IBM Original Proofs of Claim shall be deemed as disallowed in full as such claims were amended by the IBM Amended Proofs of Claim and settled in part by the Postpetition Claims Settlement Order, ii) Claim 7894, Claim 7895, and Claim 7896 shall be deemed disallowed in full, and iii) Claim 7897 shall be reduced to $19,049,760.74 and allowed as a general unsecured pre-petition claim in NNI's bankruptcy case (the "Allowed Claim"), and

8

(b)        in full and final settlement of the CCAA Claims, the following claims shall be allowed in the CCAA Proceedings:

(1)        a general unsecured claim by IBM Canada against NNL in the amount of US$15,961,251; and

(2)        a general unsecured claim by IGSC against NNTC in the amount of US$890,691.04 (collectively, the "Allowed CCAA Claims"),

and such Allowed CCAA Claims shall constitute IBM's Proven Claims (as defined in the Claims Resolution Order) for all purposes, including, without limitation, for the purposes of voting and distribution under any Plan (as defined in the Claims Resolution Order). IBM acknowledges that for purposes of voting and distributions under any Plan or any other distribution in connection with the Allowed CCAA Claims, the claim amounts may be converted from U.S. dollars to Canadian dollars using the exchange rate established in connection with such Plan or other distribution. Nothing herein shall prejudice the Canadian Debtors' ability to effect a consolidation of their respective estates for purposes of a Plan or distribution in connection with the Allowed CCAA Claims.

The foregoing (a) and (b), together with the other consideration to be provided pursuant to this Stipulation and Settlement Agreement, shall be in full and final settlement and satisfaction of the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, the CCAA Claims and the other claims released hereunder.   The IBM Entities agree that the dismissal of the Adversary Proceeding, the disallowance of the IBM Original Proofs of Claim, Claim 7894, Claim 7895, Claim 7896, the reduction and allowance of the Allowed Claim, and the settlement of the CCAA Claims as described herein shall be in full satisfaction of any and all

9

claims against the U.S. Debtors or the Canadian Debtors based on the transactions, agreements, events or circumstances as those that gave rise to the claims set forth in the Adversary Proceeding, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, and the CCAA Claims, and shall also be deemed to amend and supersede any and all claim amounts the U.S. Debtors list on their schedules filed with the Bankruptcy Court with respect to such transactions and occurrences and such claims. The IBM Entities shall not have any further claims against the Debtors or the Canadian Debtors other than as set forth herein.

3.     <u>Dismissal of the Adversary Proceeding</u>.  Promptly following the Effective Date, NNI will file with the Bankruptcy Court a stipulation of dismissal with prejudice of the Adversary Proceeding with each party to bear its own fees and costs.

4.     <u>Release of U.S. Debtors</u>.  Upon the Effective Date, the IBM Entities, for and on behalf of themselves and their respective affiliates, and the Canadian Debtors hereby release and forever discharge the U.S. Debtors, their respective past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their respective predecessors, successors and assigns (collectively, the "<u>U.S. Debtor Releasees</u>"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the IBM Entities, their respective affiliates or the Canadian Debtors now have, had, may have had, or hereafter may have against any of the U.S. Debtor Releasees arising from or related to the MSAs, the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, or the CCAA Claims, or any transaction, agreement, event or circumstance described or referred to in the Complaint, the IBM

10

Original Proofs of Claim, the IBM Amended Proofs of Claim, or the CCAA Claims, except that nothing herein shall be deemed to constitute a waiver or release of NNI's obligations hereunder. For the avoidance of doubt, Defendants release any and all claims arising under § 502(h) of the Bankruptcy Code.

5.     Release of the Canadian Debtors. Upon the Effective Date, the IBM Entities, for and on behalf of themselves and their respective affiliates, and the U.S. Debtors hereby release and forever discharge the Canadian Debtors, their respective past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their respective predecessors, successors and assigns (collectively, the "Canadian Debtor Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the IBM Entities, their respective affiliates or the U.S. Debtors now have, had, may have had, or hereafter may have against any of the Canadian Debtors Releasees arising from or related to the MSAs, the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, or the CCAA Claims, or any transaction, agreement, event or circumstance described or referred to in the Complaint, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, or the CCAA Claims, except that nothing herein shall be deemed to constitute a waiver or release of the Canadian Debtors' obligations hereunder.

6.     Release of the IBM Entities. Upon the Effective Date, the U.S. Debtors and the Canadian Debtors hereby release and forever discharge the IBM Entities, their past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors,

officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "IBM Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the U.S. Debtors or the Canadian Debtors now have, had, may have had, or hereafter may have against any of the IBM Releasees arising from or related to the MSAs, the Avoidance Claim, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, or the CCAA Claims, or any transaction, agreement, event or circumstance described or referred to in the Complaint, the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, or the CCAA Claims, except that nothing herein shall be deemed to constitute a waiver or release of the IBM Entities' obligations hereunder.

7.      No Further Claims. The IBM Entities shall be forever barred from amending the amount or priority of the Allowed Claim or the Allowed CCAA Claims or filing or otherwise asserting any further claim against the U.S. Debtors or the Canadian Debtors with respect to the matters released hereunder, whether in the U.S. Debtors' Chapter 11 cases, the CCAA Proceedings or otherwise. The Parties undertake, covenant and agree not to make any claim, participate in any proceeding or take any action in relation to the matters released hereunder against any other person or entity who would as a result of such claim, proceeding or action have a claim for contribution or indemnity against any of the other Parties hereto or any of their respective past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their respective predecessors, successors and assigns.

12

8.    <u>No Transfer</u>. The IBM Entities represent that they have not sold, assigned or otherwise transferred the IBM Original Proofs of Claim, the IBM Amended Proofs of Claim, the CCAA Claims, any part thereof, or any of the other claims being released pursuant to this Stipulation and Settlement Agreement.

9.    <u>Claims Register</u>. The U.S. Debtors, the U.S. Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of the Bankruptcy Court are authorized to take all necessary and appropriate actions to give effect to this Stipulation and Settlement Agreement.

10.    <u>Effectiveness</u>. Upon the Effective Date, this Stipulation and Settlement Agreement shall be effective and binding, by its terms, upon the Parties, and their respective successors and assigns, including, without limitation, any trustee or receiver that may hereafter be appointed in the U.S. Debtors' Chapter 11 cases.

11.    <u>Applicable Law</u>. This Stipulation and Settlement Agreement shall be interpreted and construed in accordance with the laws of the State of Delaware, without regard to its conflict of laws rules and jurisprudence.

12.    <u>Confidentiality</u>. Each of the Parties agrees to keep confidential and not to disclose (and shall use its reasonable best efforts to cause its officers, directors, employees, agents, and attorneys to keep confidential and not to disclose) the discussions and negotiations leading up to or relating to the preparation and execution of this Stipulation and Settlement Agreement, except (i) as required by law, or by any court, administrative or legislative body, (ii) as required to seek approval of this Stipulation and Settlement Agreement by the Bankruptcy Court, (iii) in the case of the Canadian Debtors, to the Monitor, and (iv) in the case of the U.S. Debtors and the Canadian Debtors, to their respective stakeholders who are subject to non-disclosure obligations.

13

13.    <u>Entire Agreement</u>.  This Stipulation and Settlement Agreement constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof and this Stipulation and Settlement Agreement cannot be amended except by an authorized agreement in writing between the Parties.

14.    <u>No Admissions</u>.  Each Party acknowledges and agrees that nothing in this Stipulation and Settlement Agreement constitutes an admission or concession of liability, culpability, statutory violation or damages on or in connection with any legal issue raised in or relating to the Avoidance Claim or any of the other claims addressed or released hereunder.

15.    <u>Costs and Expenses</u>.  Each Party agrees to bear its own costs (including, without limitation, attorneys' fees), expenses, and disbursements incurred in connection with the Adversary Proceeding, any of the other claims addressed or released hereunder, and the discussions and negotiations leading up to or relating to the preparation and execution of this Stipulation and Settlement Agreement, and to not seek from any other Party reimbursement of any such costs, expenses or disbursements.

16.    <u>Representations and Warranties</u>.  Each Party represents and warrants that it is authorized to enter into this Stipulation and Settlement Agreement.  Each individual signing this Stipulation and Settlement Agreement represents and warrants that he/she has full authority to do so.

17.    <u>Construction</u>.   This Stipulation and Settlement Agreement shall be construed without regard to any presumption or other rule requiring construction against the Party causing the document to be drafted.  Each Party warrants that it has been represented and

advised by counsel in connection with the negotiation, preparation, and execution of this Stipulation and Settlement Agreement and all matters covered by it.

18.    <u>Jurisdiction</u>.  The Bankruptcy Court and the Canadian Court shall have joint jurisdiction over the implementation of this Stipulation and Settlement Agreement and the determination of any matters relating to or arising from this Stipulation and Settlement Agreement or the implementation thereof.

19.    <u>Manner of Execution</u>.  This Stipulation and Settlement Agreement may be executed in counterparts, each of which shall constitute an original, and such counterparts shall be construed together as one instrument.  Facsimile or pdf signatures shall be deemed original signatures.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation and Settlement Agreement.

Dated: November 23, 2011

Nortel Networks Inc.                              Nortel Networks Corporation

By:_____          By:_____
Name:  John Ray                                   Name:
Title:  Principal Officer                            Title:

                                                          By:_____
                                                          Name:
                                                          Title:

advised by counsel in connection with the negotiation, preparation, and execution of this Stipulation and Settlement Agreement and all matters covered by it.

18.  Jurisdiction.  The Bankruptcy Court and the Canadian Court shall have joint jurisdiction over the implementation of this Stipulation and Settlement Agreement and the determination of any matters relating to or arising from this Stipulation and Settlement Agreement or the implementation thereof.

19.  Manner of Execution.  This Stipulation and Settlement Agreement may be executed in counterparts, each of which shall constitute an original, and such counterparts shall be construed together as one instrument.  Facsimile or pdf signatures shall be deemed original signatures.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation and Settlement Agreement.

Dated: _____, 2011

Nortel Networks Inc.

By:_____
John Ray
Principal Officer

Nortel Networks Corporation

By:_____
Name:  John M. Doolittle
Title:  Senior Vice-President, Corporate
        Services and Chief Financial Officer

By:_____
Name:  Clarke E. Glaspell
Title:  Controller

15

Nortel Networks Limited

By:_____
Name:    John M. Doolittle
Title:    Senior Vice-President, Corporate
         Services and Chief Financial
         Officer

By:_____
Name:    Clarke E. Glaspell
Title:    Controller


Nortel Networks Global Corporation

By:_____
Name:    John M. Doolittle
Title:    President

By:_____
Name:    Clarke E. Glaspell
Title:    Controller


Nortel Networks International
Corporation

By:_____
Name:    John M. Doolittle
Title:    President

By:_____
Name:    Clarke E. Glaspell
Title:    Treasurer


Nortel Networks Technology Corporation

By:_____
Name:    John M. Doolittle
Title:    Director

By:_____
Name:    Clarke E. Glaspell
Title:    President and Controller


16

Nortel Networks Limited

By:_____
Name:
Title:

By:_____
Name:
Title:

Nortel Networks International
Corporation

By:_____
Name:
Title:

By:_____
Name:
Title:

International Business Machines
Corporation

By: _R.S. Stahel_____
Name: _R. S. STAHEL_
Title: _ASSISTANT TO REGIONAL COUNSEL_

IBM Canada Limited

By: _R.S. Stahel_____
Name: _R. S. STAHEL_
Title: _ASSISTANT TO REGIONAL COUNSEL_

Nortel Networks Global Corporation

By:_____
Name:
Title:

By:_____
Name:
Title:

Nortel Networks Technology Corporation

By:_____
Name:
Title:

By:_____
Name:
Title:

IBM Credit LLC

By: _R.S. Stahel_____
Name: _R. S. STAHEL_
Title: _ASSISTANT TO REGIONAL COUNSEL_

IBM Global Services (China) Co. Ltd.

By: _R.S. Stahel_____
Name: _R. S. STAHEL_
Title: _ASSISTANT TO REGIONAL COUNSEL_

*Signature page for Stipulation And Settlement Agreement Of Avoidance And Other Claims Among Nortel Networks Inc., The Canadian Debtors, International Business Machines Corporation, IBM Credit LLC, IBM Canada Limited, And IBM Global Services (China) Co. Ltd.*

16

ACKNOWLEDGED BY:

Ernst & Young Inc. in its capacity
as Monitor of the Canadian Debtors
and not in its personal capacity

By: _____
Name: *Tom Ayres*
Title: *Senior President*

*Signature page for Stipulation And Settlement Agreement Of Avoidance And Other Claims Among Nortel Networks Inc., The Canadian Debtors, International Business Machines Corporation, IBM Credit LLC, IBM Canada Limited, And IBM Global Services (China) Co. Ltd.*

17

**SCHEDULE "A"**

**CCAA CLAIMS**

| Claim # | Date | Claimant | Debtor | Currency | Amount | Description |
|---------|------|----------|--------|----------|--------|-------------|
| 1685 | 29-Sep-09 | IBM Canada Limited | NNC | CAD | $2,308,982.81 | Unsecured |
| | | | | USD | $576,343.04 | Unsecured |
| | | | | CAD | $13,384,621.97 | Restructuring |
| 1687 | 29-Sep-09 | IBM Global Services (China) Co. Ltd. | NNL | USD | $485,750.96 | Unsecured |
| | | | | USD | $493,509.95 | Restructuring |
| 1688 | 29-Sep-09 | IBM Global Services (China) Co. Ltd. | NNC | USD | $485,750.96 | Unsecured |
| | | | | USD | $493,509.95 | Restructuring |
| 1689 | 29-Sep-09 | International Business Machines Corporation | NNL | USD | $22,299,106.76 | Unsecured |
| | | | | USD | $29,310,274.38 | Restructuring |
| 1690 | 29-Sep-09 | International Business Machines Corporation | NNC | USD | $22,299,106.76 | Unsecured |
| | | | | USD | $29,310,274.38 | Restructuring |