# EXHIBIT A

00033

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**SEVENTY-SEVENTH REPORT OF THE MONITOR**
**DATED NOVEMBER 4, 2011**

## INTRODUCTION

1.     On January 14, 2009 (the "**Filing Date**") Nortel Networks Corporation ("**NNC**" and

collectively with all its subsidiaries "**Nortel**" or the "**Company**"), Nortel Networks

Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks

International Corporation and Nortel Networks Global Corporation (collectively the

"**Applicants**") filed for and obtained protection under the Companies' Creditors

Arrangement Act ("**CCAA**"). Pursuant to the Order of this Honourable Court dated

January 14, 2009, as amended and restated (the "**Initial Order**"), Ernst & Young Inc.

was appointed as the Monitor of the Applicants (the "**Monitor**") in the CCAA

proceedings. The stay of proceedings was extended to December 14, 2011, by this

Honourable Court in its Order dated June 30, 2011.

2.     Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries concurrently filed

voluntary petitions under Chapter 11 of Title 11 of the U.S. Bankruptcy Code (the

"**Code**") in the United States Bankruptcy Court for the District of Delaware (the "**U.S. Court**") on January 14, 2009 (the "**Chapter 11 Proceedings**"). As required by U.S. law, an official unsecured creditors committee (the "**Committee**") was established in January, 2009.

3.    An ad hoc group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "**Bondholder Group**"). In addition, pursuant to Orders of this Honourable Court dated May 27, 2009, July 22, 2009 and July 30, 2009, representative counsel was appointed on behalf of the former employees of the Applicants, the continuing employees of the Applicants and the LTD Beneficiaries, respectively, and each of these groups is participating in the CCAA proceedings.

4.    Nortel Networks (CALA) Inc. (together with NNI and certain of its subsidiaries that filed on January 14, 2009, the "**U.S. Debtors**") filed a voluntary petition under Chapter 11 of Title 11 of the Code in the U.S. Court on July 14, 2009.

5.    Nortel Networks UK Limited ("**NNUK**") and certain of its subsidiaries located in EMEA were granted Administration orders (the "**UK Administration Orders**") by the High Court of England and Wales on January 14, 2009 (collectively the "**EMEA Debtors**"). The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as Administrators of the various EMEA Debtors, except for Ireland, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively the "**Joint Administrators**").

00035

6.  Subsequent to the Filing Date, Nortel Networks SA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court.

7.  The CCAA proceedings and the UK Administration proceedings of NNUK have been recognized by the U.S. Court as foreign main proceedings under Chapter 15 of the Code.

8.  Subsequent to the Filing Date, certain other Nortel subsidiaries have filed for creditor protection or bankruptcy proceedings in the local jurisdiction in which they are located.

**PURPOSE**

9.  The purpose of this Seventy-Seventh Report of the Monitor (the "**Seventy-Seventh Report**") is to provide this Honourable Court with:

    (a)  information regarding proposed amendments to the Compensation Claims Procedure Order to address Compensation Claims of Identified Claimants that are: (i) in excess of $5 million and subject to the Claims Resolution Order; or (ii) potentially Same-Creditor Claims or Overlapping Claims and subject to the Cross-Border Claims Protocol; and

    (b)  the Monitor's support for the *nunc pro tunc* amendments to the Compensation Claims Procedure Order in the form of the Amending Order submitted by the Applicants.

00036

10.     The proposed amendments to the Compensation Claims Procedure Order will allow the Monitor, the Applicants and the U.S. Debtors time to complete their review of Specific Claims, Same-Creditor Claims and Overlapping Claims in accordance with the Claims Resolution Order and the Cross-Border Claims Protocol.

11.     As described in the Applicants' factum in support of the Compensation Claims Process (the "**Applicants' Compensation Claims Factum**") and in the Affidavit of Juan Antonio Reyes sworn November 3, 2011 (the "**Reyes Affidavit**"), both the Claims Resolution Order and the Cross-Border Claims Protocol impose requirements relating to consultation and information sharing among the Applicants, the U.S. Debtors and the Monitor for certain large or cross-border compensation-related claims. The Monitor, Applicants and U.S. Debtors have been working diligently to establish: (a) a list of Identified Claimants whose Information Statements reflect claims in excess of $5 million (which claims are Specific Claims pursuant to the Claims Resolution Order); and (b) whether Identified Claimants also filed claims in the Chapter 11 Proceedings (which claims are Same-Creditor Claims pursuant to the Cross-Border Claims Protocol) and thereafter whether such Same-Creditor Claims or a portion thereof arise from the same underlying claim (which claims are Overlapping Claims pursuant to the Cross-Border Protocol). Although work has been done to establish and narrow the list of Specific Claims and Same-Creditor Claims and to review the nature of these claims, additional time is required for the Applicants, U.S. Debtors and Monitor to complete the review.

12.     As a result, approximately 194 Information Statements of Identified Claimants (from a total of approximately 14,000) representing claims in excess of $5 million or that could

00037

potentially represent Same-Creditor Claims or Overlapping Claims (collectively, the **"Potential Specific/Cross-Border Compensation Claims"**, with Employees holding such claims being **"Specific/Cross-Border Compensation Claim Employees"**) will not be mailed within 21 business days of the date of the Compensation Claims Procedure Order. The proposed Amending Order provides for, among other things: (a) the mailing of these Information Statements once the Applicants, U.S. Debtors and Monitor have completed the process set out in the Claims Resolution Order and Cross-Border Claims Protocol; and (b) a period of fifty (50) calendar days after the Information Statement Package is mailed to affected Identified Claimants to submit any Requests for Correction or a Proof of Claim.

13.     The Monitor has provided Representative Counsel with a list of the Identified Claimants with Potential Specific/Cross-Border Compensation Claims.

**TERMS OF REFERENCE**

14.     In preparing this Seventy-Seventh Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with management of Nortel. The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of the information and accordingly, expresses no opinion or other form of assurance on the information contained in this Seventy-Seventh Report. Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

15.     Capitalized terms used in this Seventy-Seventh Report (including in the preceding paragraphs) are as defined herein, in the Monitor's Seventy-Fifth Report (including the Glossary attached as Appendix "A" thereto) or in previous reports of the Monitor.

**BACKGROUND**

16.     The Seventy-Fifth Report was filed in support of the Applicants' motion for approval of the Compensation Claims Methodology Order and the Compensation Claims Procedure Order and contained information on or relevant to the Compensation Claims Process.

17.     On October 6, 2011, this Honourable Court granted the Compensation Claims Methodology Order and the Compensation Claims Procedure Order.

18.     The Compensation Claims Procedure Order provides, among other things:

(a)     for the mailing of Information Statements to Identified Claimants by November 7, 2011, being 21 business days from the date of the Compensation Claims Procedure Order; and

(b)     that nothing in the Order supersedes or shall be deemed to supersede any provision of the Cross-Border Protocol, the Cross-Border Claims Protocol, the Claims Procedure Order or the Claims Resolution Order, each of which remains in effect in these proceedings and/or the Chapter 11 Proceedings pursuant to the respective prior orders of this Honourable Court and the U.S. Court.

19.     The Monitor has undertaken a review of Compensation Claims and claims filed in the Chapter 11 Proceedings and has engaged in discussions with both the Applicants and the

00039

U.S. Debtors, as well as with Representative Counsel. Although the preparation of the Information Statements of Identified Claimants is substantially complete and the majority will be mailed prior to November 7, 2011, the Information Statements of Identified Claimants with Potential Specific/Cross Border Compensation Claims cannot be sent at this time as the Applicants, U.S. Debtors and Monitor require more time to review and consult with respect to these claims in accordance with the Claims Resolution Order and the Cross-Border Claims Protocol.

20.    As set out in the Applicants' Compensation Claims Factum and the Reyes Affidavit:

(a)    the Claims Resolution Order (attached as Appendix "A") contains additional requirements with respect to consultation and information-sharing with the U.S. Debtors, standing, notice and this Honourable Court's approval of certain categories of "Specific Claims" as defined therein, some of which are employee-related. Among the Specific Claims are claims of executives relating to their retention or compensation for an amount in excess of $5 million;

(b)    the Cross-Border Claims Protocol (attached as Appendix "B") governs the coordination and resolution of Overlapping Claims and Same-Creditor Claims filed in these proceedings and the Chapter 11 Proceedings; and

(c)    in order to be either an Overlapping Claim or a Same-Creditor Claim, the claim must be filed by the same creditor in both the CCAA Proceedings and the Chapter 11 Proceedings.

00040

21.     Through a review of the creditor listing in the Chapter 11 Proceedings and of the data and information relating to Compensation Claims in these proceedings, together with numerous discussions with the U.S. Debtors and the Applicants, the Monitor has identified:

(a)     4 Identified Claimants with Specific Claims in excess of $5 million; and

(b)     190 Identified Claimants who may have filed claims in the Chapter 11 Proceedings and may have Same-Creditor Claims or Overlapping Claims.

22.     With respect to Specific Claims of Identified Claimants, more time is required to allow the Applicants and Monitor to consult with the U.S. Debtors in accordance with the Claims Resolution Order. With respect to potential Same-Creditor Claims, more time is required for the Applicants, U.S. Debtors and Monitor to: (a) exchange information to determine which Identified Claimants have filed Same-Creditor Claims in the Chapter 11 Proceedings and which of those claims represent Overlapping Claims; and (b) consult with respect to such Overlapping Claims, all in accordance with the Cross-Border Claims Protocol.

23.     As a result, the Monitor is not in a position to mail the Information Statements to the approximately 194 Identified Claimants with Potential Specific/Cross-Border Compensation Claims within 21 business days of the date of the Compensation Claims Procedure Order. The proposed amendments to the Compensation Claims Procedure Order address the revised timing of mailing Information Statement Packages to those

00041

parties with Potential Specific/Cross Border Compensation Claims and an appropriate bar date.

**AMENDMENTS TO COMPENSATION CLAIMS PROCEDURE ORDER**

24.     The Applicants' are proposing amendments to the Compensation Claims Procedure Order primarily to:

(a)     allow for the mailing of an Information Statement Package to individuals with Potential Specific/Cross-Border Compensation Claims within seven (7) business days after the Applicants, U.S. Debtors and Monitor have completed the process set out in the Claims Resolution Order and the Cross-Border Claims Protocol; and

(b)     provide for a rolling bar date of fifty (50) calendar days after an Information Statement Package is sent during which individuals with Potential Specific/Cross-Border Compensation Claims must file a Request for Correction of Proof of Claim.

25.     The proposed amendments allow the Applicants, U.S. Debtors and Monitor time to complete their review and consultation process while ensuring, by way of a rolling bar date, no individual with a Potential Specific/Cross-Border Compensation Claim will be prejudiced by the additional time required.

26.     As soon as practicable following the granting of the proposed Order, the Monitor will send a letter to the Specific/Cross-Border Compensation Claim Employees informing them that their information Statements are not being mailed at this time and that a rolling

bar date will apply to them. The Monitor will also keep Representative Counsel apprised of the review and consultation process and will provide Representative Counsel with updates to the list of Potential Specific/Cross-Border Compensation Claims as Information Statements are mailed with respect to these claims.

## RECOMMENDATION

27.    The Monitor recommends this Honourable Court approve the Order in the form submitted by the Applicants.

All of which is respectfully submitted this 4th day of November, 2011.

**ERNST & YOUNG INC.**
In its capacity as Monitor of the Applicants

Per:

Murray A. McDonald
President

\6019252

# APPENDIX "A"

00043

File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE- COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | THURSDAY, THE 16TH |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF SEPTEMBER, 2010 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION (the "Applicants")

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**CLAIMS RESOLUTION ORDER**

THIS MOTION, made by the Applicants for an Order substantially in the form included in the Applicants' Amended Motion Record, was heard this day at 393 University Avenue, Toronto, Ontario.

ON READING the Applicants' Notice of Motion dated June 8, 2010, the Applicant's Amended Notice of Motion dated September 10, 2010, the affidavit of John Doolittle sworn on June 7, 2010, the supplemental affidavit of John Doolittle dated September 10, 2010, the forty-eighth report of the Monitor dated June 8, 2010, the fifty-third report of the Monitor dated September 13, 2010, and on hearing the submissions of counsel for the Applicants, the Monitor, and those other parties present, no one appearing for the other parties served with the Applicants'

1

00044

Motion Record and the Applicants' Amended Motion Record, although duly served as appears from the affidavit of service of Marna McGeorge sworn September 13, 2010, filed:

## SERVICE

1.      THIS COURT ORDERS that the time for service of the Notice of Motion, the Amended Notice of Motion and the Motion Records filed by the Applicants in support of this Motion be and it is hereby abridged and validated such that the Motion is properly returnable today.

## PURPOSE OF THIS ORDER

2.      THIS COURT ORDERS that this Order is the "Claims Resolution Order" as defined in the Amended and Restated Claims Procedure Order dated July 30, 2009 made in these proceedings, as such Claims Procedure Order may be further amended from time to time by order of this Court (the "Claims Procedure Order"), and that the purpose of this Order, together with the Cross-Border Claims Protocol, is to establish mechanisms to determine the Proven Claims of Creditors, including Protocol Claims.

3.      THIS COURT ORDERS that this Order shall apply to all Claims as defined in and governed by the Claims Procedure Order, including Protocol Claims. For the avoidance of doubt, the provisions of this Order dealing with Specific Claims, Same-Creditor Claims and Overlapping Claims and the reporting requirement in paragraph 11 hereof, shall not be construed as limited to Claims as defined in the Claims Procedure Order.

4.      THIS COURT ORDERS that in the event of a conflict between the terms of this Order and the terms of the Claims Procedure Order, the terms of this Order shall govern.

DOCSTOR: 2010978\3

00045

## MONITOR'S ROLE

5.      THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and
obligations pursuant to the CCAA, the Initial Order, the Order of this Court made on
August 14, 2009, the Claims Procedure Order and the Cross-Border Claims Protocol, is
hereby directed and empowered to take such other actions and fulfill such other roles as
are authorized by this Order and the Cross-Border Claims Protocol, and that in taking
such other actions and in fulfilling such other roles, the Monitor shall have the
protections given to it in the Initial Order, the August 14, 2009 Order, the Claims
Procedure Order and this Order, including without limitation the protections provided in
paragraph 24 of this Order.

## DEFINITIONS

6.      Unless otherwise defined herein, all capitalized terms used in this Order shall have the
meanings ascribed to those terms in the Claims Procedure Order.   In addition, the
following terms shall have the following meanings ascribed thereto:

(a)     "Bond Claims" means any claims arising from or related to the Bondholder Trust
Indentures including claims filed by the indenture trustees;

(b)     "Chapter 11 Cases" means the reorganization cases under chapter 11 of the United
States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, commenced by the U.S.
Debtors in the U.S. Court, and consolidated under Case No. 09-10138 (KG).

(c)     "Claims Officer" means the person or persons so designated by the Monitor and
approved by the Court, or designated by the Court, as the case may be;

00046

- 4 -

(d)    "Claims Procedure Order" has the meaning ascribed to that term in paragraph 2 of this Order;

(e)    "Cross-Border Claims Protocol" means the Cross-Border Claims Protocol approved by this Court and the U.S. Court on September 16, 2010, as such Cross Border Claims Protocol may be amended from time to time in accordance with its terms;

(f)    "Dispute Notice" means a written notice to the Monitor, in substantially the form attached as Schedule "B" hereto, delivered to the Monitor by a Creditor who has received a Notice of Disallowance, of its intention to dispute such Notice of Disallowance;

(g)    "EMEA Debtor" means Nortel Networks S. A. (in Administration) ("NNSA") and the "EMEA Debtors" as defined in that certain Interim Funding and Settlement Agreement dated June 9, 2009 ("IFSA") among the Applicants, the U.S. Debtors, the Joint Administrators (as defined in the IFSA) and as acceded to by NNSA;

(h)    "Notice of Disallowance" means a notice, in substantially the form attached as Schedule "A" hereto, advising a Creditor that the Monitor, in consultation with the Applicants, has revised or disallowed all or part of such Creditor's Claim set out in the Creditor's Proof of Claim;

(i)    "Overlapping Claims" shall have the meaning ascribed to that term in the Cross-Border Claims Protocol;

4

00047

(j)     "Protocol Claims" means the Claims governed by the Cross-Border Claims Protocol, being Overlapping Claims and Same-Creditor Claims;

(k)     "Proven Claim" has the meaning ascribed to that term in paragraph 12 of this Order;

(l)     "Same-Creditor Claims" shall have the meaning ascribed to that term in the Cross-Border Claims Protocol;

(m)     "Secured Claim" means any Claim or portion thereof that is secured by a security interest, pledge, mortgage, lien, hypothec or charge on any property of any Applicant, or any Claim of a Secured Creditor as defined in the CCAA, but only to the extent of the value of the security in respect of the Claim;

(n)     "Specific Claims" shall have the meaning ascribed to that term in paragraph 7 of this Order;

(o)     "U.S. Court" means the United States Bankruptcy Court for the District of Delaware, acting in the Chapter 11 Cases; and

(p)     "U.S. Debtors" means Nortel Networks Inc.; Nortel Networks Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros Inc.; Sonoma Systems; Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks Optical Components Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; Nortel

5

00048

Networks Cable Solutions Inc.; and Nortel Networks (CALA) Inc., and "U.S. Debtor" means any one of them.

**SPECIFIC CLAIMS**

7.     THIS COURT ORDERS that, in addition to complying with the requirements set forth in paragraph 8 below, the Monitor or the Applicants, as applicable, shall seek and obtain this Court's approval prior to the acceptance, stipulation or settlement of any of the following categories of claims or related procedures as noted below (each, a "Specific Claim", and collectively "Specific Claims"):

(a)     U.K. pension claims (including but not limited to, funding guarantee claims, insolvency guarantee claims, Financial Support Direction liability claims and claims by Nortel Networks U.K. Pension Trust Limited, the U.K. Pension Protection Fund, the Pensions Regulator under The Pensions Act 2004 (U.K.) and the joint administrators of the various EMEA Debtors related to the foregoing);

(b)     claims in respect of the determination of liabilities and funded status of the Nortel Networks Negotiated Pension Plan and the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan and in respect of the Ontario Pension Benefits Guarantee Fund;

(c)     Bond Claims;

(d)     the following employee-related matters: (i) any procedure, protocol or methodology for calculating termination and severance pay claims and any process for any resolution of disagreements regarding contract obligations and

6

00049

qualifications for eligibility of such claims (including the calculation of benefits or liabilities), (ii) the actuarial methods and assumptions that will be used to determine non-registered pension claims, LTD claims and benefit claims and any process for any resolution of disagreements regarding the interpretation or application of plan criteria for such claims (including the calculation of benefits or liabilities), (iii) the form of a an order approving procedures related to Compensation Claims (including, proposed procedures relating to any bar date for claims of employees and retirees), (iv) deferred compensation claims relating to the Nortel Networks U.S. Deferred Compensation Plan (to the extent not otherwise addressed by the Cross-Border Claims Protocol), (v) the Calgary employee claims contemplated by the action bearing court file number 0901-10504 in the Alberta Court of Queen's Bench, (vi) proposed allowance of any claims provided to executives relating to their retention or compensation for an amount over $5 million and (vii) proposed allowance of any claim for an amount over $10 million relating to an insurance policy that covers director and officer claims;

(e)     pre-filing U.K. and other EMEA Debtor intercompany claims against any Applicant; and

(f)     any other claim to be allowed for an amount over $50 million (CDN);

provided however that, subject to complying with the requirements of paragraph 8 below, in a Notice of Disallowance the Monitor may provisionally accept, stipulate, settle, disallow, modify or revise any Specific Claim, so long as such acceptance, stipulation,

00050

- 8 -

settlement, disallowance, modification or revision is expressly subject to the approval of the Court.

8. THIS COURT ORDERS that, prior to agreeing on a proposed allowed amount of any Specific Claim (or procedures related thereto) with any claimant(s) and prior to seeking Court approval thereof as set forth in paragraph 7, the Monitor and the Applicants shall first consult with the U.S. Debtors regarding the applicable Specific Claim (or procedures, as the case may be) and the proposed allowed amount of such claim.

**CROSS BORDER CLAIMS PROTOCOL AND PROTOCOL CLAIMS**

9. THIS COURT ORDERS that with respect to Protocol Claims:

(a) such claims shall be finally determined in accordance with the Cross-Border Claims Protocol, this Order and the Claims Procedure Order;

(b) in the event of a conflict between the terms of this Order or the Claims Procedure Order, on the one hand, and the Cross-Border Claims Protocol, on the other hand, the terms of the Cross-Border Claims Protocol shall govern in all such cases; and

(c) the provisions of this Order (including provisions applying to the determination of Proven Claims, review of Proofs of Claim, issuance of Notices of Disallowance, Dispute Notices, and the resolution of Claims), shall be subject in all cases to the terms of the Cross-Border Claims Protocol and the procedures set out therein.

DOCSTOR: 2010978\3

00051

**GENERAL PROVISIONS - SPECIFIC CLAIMS AND PROTOCOL CLAIMS**

10.     THIS COURT ORDERS that with respect to Specific Claims and Protocol Claims:

(a)     information exchanged between the Monitor, the Applicants and the U.S. Debtors as contemplated in this Order or in the Cross-Border Claims Protocol may be shared by such parties with their respective stakeholders, subject to appropriate written confidentiality agreements, and the Monitor, the Applicants and the U.S. Debtors may consult with their respective stakeholders with respect to all such information;

(b)     the Applicants, the U.S. Debtors, the Creditors' Committee (as defined in the Cross-Border Claims Protocol) and the Bondholder Group (also as defined in the Cross-Border Claims Protocol) shall have the right to support or object and to be heard at any hearing provided for in this Order or in the Cross-Border Claims Protocol with respect to Specific Claims or Protocol Claims, where such hearing is in either this Court or in a joint hearing of both this Court and the U.S. Court; and

(c)     that for any matter with respect to which this Order or the Cross-Border Claims Protocol requires the Monitor to seek and obtain this Court's approval, the Monitor shall serve its request for such approval along with its report on the Service List herein (which shall include the affected claimant in respect of the matter in question and its counsel if known) no less than 10 calendar days prior to the proposed hearing.

DOCSTOR: 2010978\3

- 10 -                                                    00052

**PERIODIC CLAIMS REPORTING**

11.    THIS COURT ORDERS that the Monitor will report as to the status of claims, including

without limitation the Specific Claims and the Protocol Claims, filed in Canada (a) on a

monthly basis, such reports to be posted on the Monitor's website in the form attached

hereto as Schedule "C"; and (b) to the Applicants and the U.S. Debtors, on not less than a

monthly basis, such reports to be in the form attached hereto as Schedule "D".

**DETERMINATION OF PROVEN CLAIM**

12.    THIS COURT ORDERS that the amount and status of every Claim of a Creditor as

finally determined in accordance with the forms and procedures authorized in the Claims

Procedure Order, this Order and the Cross-Border Claims Protocol, including any

determination as to the nature, amount, value, priority or validity of any Claim, including

any Secured Claim (each, a "Proven Claim"), shall be final for all purposes, including for

voting on and distributions made to Creditors of the Applicants pursuant to the Plan.

**REVIEW OF PROOFS OF CLAIM**

13.    THIS COURT ORDERS that the Monitor, subject to the terms of this Order, in

consultation with the Applicants, shall review all Proofs of Claims filed, and at any time:

(a)    may request additional information from a Creditor, in accordance with paragraph

15 of the Claims Procedure Order;

(b)    may request that the Creditor file a revised Proof of Claim, in accordance with

paragraph 15 of the Claims Procedure Order;

DOCSTOR: 2010978\3

00053

(c)    may attempt to resolve and settle any issue arising in the Proof of Claim or in respect of the Claim;

(d)    may accept (in whole or in part) the amount and/or status of any Claim; and

(e)    may by notice in writing revise or disallow (in whole or in part) the amount and/or status of any Claim.

14.    THIS COURT ORDERS that where a Claim has been accepted by the Monitor, such Claim shall constitute such Creditor's Proven Claim for all purposes, including for the purposes of voting and distribution under any Plan.

15.    THIS COURT ORDERS that where a Claim is revised or disallowed (in whole or in part, and whether as to amount and/or as to status), the Monitor shall deliver to the Creditor a Notice of Disallowance, attaching the form of Dispute Notice.

16.    THIS COURT ORDERS that where a Claim has been disallowed (in whole or in part, and whether as to amount and/or as to status), the disallowed Claim (or disallowed portion thereof) shall not be a Proven Claim unless the Creditor has disputed the disallowance and proven the disallowed Claim (or disallowed portion thereof) in accordance with paragraphs 17 to 22 of this Order, or as otherwise ordered by this Court.

**DISPUTE NOTICE**

17.    THIS COURT ORDERS that a Creditor who intends to dispute a Notice of Disallowance shall file a Dispute Notice with the Monitor as soon as reasonably possible but in any event such that such Dispute Notice shall be received by the Monitor on or before 4:00 p.m. (prevailing time in Toronto) on the day that is fourteen (14) days after the Creditor is

- 12 -                                              00054

deemed to have received the Notice of Disallowance in accordance with paragraph 25 of this Order. The filing of a Dispute Notice with the Monitor within the fourteen (14) day period specified in this paragraph shall constitute an application to have the amount or status of such Claim determined as set out in paragraphs 19 to 22 hereof.

18.    THIS COURT ORDERS that where a Creditor that receives a Notice of Disallowance fails to file a Dispute Notice with the Monitor within the time period provided therefore in paragraph 17 above, the amount and status of such Creditor's Claim shall be deemed to be as set out in the Notice of Disallowance and such amount and status, if any, shall constitute such Creditor's Proven Claim.

**RESOLUTION OF CLAIMS**

19.    THIS COURT ORDERS that as soon as practicable after the delivery of the Dispute Notice to the Monitor, the Creditor and the Monitor, in consultation with the Applicants, shall attempt to resolve and settle the Creditor's Claim.

20.    THIS COURT ORDERS that in the event that a dispute raised in a Dispute Notice is not settled within a time period or in a manner satisfactory to the Monitor, the Monitor may refer the dispute to a Claims Officer for determination, or in the alternative may in its sole discretion bring the dispute before the Court for determination. If the Monitor refers the dispute to a Claims Officer for determination, then (i) the Claims Officer shall determine the manner, if any, in which evidence may be brought before the Claims Officer by the parties as well as any other matters, procedural or substantive, which may arise in respect of the Claims Officer's determination of a Creditor's Claim, and (ii) the provisions of paragraphs 21 and 22 of this Order shall apply to the determination of the

12

00055

Claims Officer.   For greater certainty, the Claims Officer may require written submissions, and may limit submissions to written submissions, at the Claims Officer's discretion.

21.    THIS COURT ORDERS that the Claims Officer shall as soon as is practicable, and in any event by no later than (i) thirty (30) days from the closing of submissions (whether written or oral or both), or (ii) such other date as the Claims Officer may order, notify the Creditor, the Monitor and the Applicants in writing of the Claims Officer's determination of the amount and status of such Creditor's Claim.

22.    THIS COURT ORDERS that the Claims Officer's determination of any Creditor's Proven Claim shall be final and binding, unless within ten (10) days of the delivery of the Claims Officer's determination, the Applicants, the Monitor or the Creditor has filed with this Court an appeal, by way of Notice of Motion, of the Claims Officer's determination.

23.    THIS COURT ORDERS that with respect to Specific Claims, the procedures set out in paragraphs 13 through 22 hereof are expressly subject to paragraphs 7 and 8 of this Order.

**PROTECTIONS FOR MONITOR**

24.    THIS COURT ORDERS that (i) in carrying out the terms of this Order and the Cross-Border Claims Protocol, the Monitor shall have all of the protections given to it by the CCAA, the Initial Order, the August 14, 2009 Order and the Claims Procedure Order or as an officer of this Court, including without limitation the stay of proceedings in its favour, (ii) the Monitor shall incur no liability or obligation as a result of the carrying out

00056

of the provisions of this Order, except for its own wilful misconduct or gross negligence, (iii) the Monitor shall be entitled to rely on the books and records of the Applicants and any information provided by the Applicants, all without independent investigation, and (iv) the Monitor shall not be liable for any claims or damages resulting from any errors or omissions in such books, records and information.

## SERVICE AND NOTICE

25.     THIS COURT ORDERS that the Monitor or the Applicants, as the case may be, are at liberty to deliver any letters, notices or other documents relating to Claims to Creditors or other interested Persons, by forwarding true copies thereof by prepaid ordinary mail, registered mail, courier, personal delivery or electronic or digital transmission to such Persons (i) at the address shown on the Proof of Claim filed by that Person, or (ii) if a Proof of Claim has not been filed by that Person or does not contain a valid address, then at the address last shown on the records of the Applicants, and that any such service or notice by courier, personal delivery or electronic or digital transmission shall be deemed to be received on the next Business Day following the date of forwarding thereof, or if sent by prepaid ordinary mail or by registered mail, on the fourth Business Day after mailing.  Notwithstanding anything to the contrary in this paragraph 25, Notices of Disallowance shall be sent only by (i) facsimile to a number that has been provided in writing by the Creditor, (ii) registered mail, or (iii) courier.

26.     THIS COURT ORDERS that any notice or other communication to be given under this Order by a Creditor to the Monitor shall be in writing and will be sufficiently given only if given by prepaid ordinary mail, courier, personal delivery or electronic or digital transmission addressed to:

14

DOCSTOR: 2010978\3

- 15 -

00057

ERNST & YOUNG INC.
Court-appointed Monitor of Nortel Networks Corporation & others
222 Bay Street, Suite 1600
Toronto, Ontario
Canada M5K 1J7

Attention:    David Saldanha
Telephone:    1-416-943-4431
E-mail          david.saldanha@ca.ey.com
Fax:             1-416-943-3300

Any such notice or other communication by a Creditor shall be deemed received only upon actual receipt thereof during normal business hours on a Business Day. Where the communication is to be by way of a form attached as a Schedule to this Order, such communication shall be in substantially the form of the attached Schedule.

**MISCELLANEOUS**

27.    THIS COURT ORDERS AND REQUESTS the aid and recognition of any court or any judicial, regulatory or administrative body in any province or territory of Canada (including the assistance of any court in Canada pursuant to Section 17 of the CCAA) and any court or any judicial, regulatory or administrative body of the United States of America, the United Kingdom, the French Republic, the State of Israel, and the Republic of Korea, and of any other nation or state, to act in aid of and to be complementary to this Court in carrying out the terms of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

SEP 17 2010

15    PER / PAR:

DOCSTOR: 2010978\3

00058

## SCHEDULE "A"

### NOTICE OF DISALLOWANCE

**For creditors of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (each a "CCAA Applicant" and collectively, the "CCAA Applicants") and/or their respective Officers and Directors**

Claim Reference Number: _____

Name of CCAA Applicant: _____

TO: _____
      *(Name of Creditor)*

Defined terms not defined in this Notice of Disallowance have the meaning ascribed in the Orders of the Ontario Superior Court of Justice dated July 30, 2009 and September 16, 2010 (the "Claims Procedure Order" and "Claims Resolution Order" respectively). **All dollar values contained herein are in Canadian dollars unless otherwise noted.**

Pursuant to paragraph 15 of the Claims Resolution Order, Ernst & Young Inc., in its capacity as Court-appointed Monitor of the CCAA Applicant, hereby gives you notice that it has reviewed your Proof of Claim in conjunction with the CCAA Applicant and has disallowed all or part of your Claim. Subject to further dispute by you in accordance with the Claims Resolution Order, your Claim will be allowed as follows:

| | Proof of Claim amount as submitted | | Amount allowed by Monitor |
|---|---|---|---|
| | (original currency amount) | (in Canadian dollars) | (in Canadian dollars) |
| A. Unsecured Prefiling Claim | | $ | $ |
| B. Secured Prefiling Claim | | $ | $ |
| C. Section 136 Prefiling Claim | | $ | $ |
| D. Restructuring Claim | | $ | $ |

1

00059

- 2 -

| | Proof of Claim amount as submitted | | Amount allowed by Monitor |
|---|---|---|---|
| | (original currency amount) | (in Canadian dollars) | (in Canadian dollars) |
| E. Directors/Officers Claim | | $ | $ |
| F. Total Claim | | $ | $ |

**Reasons for Disallowance:**

_____

_____

_____

### SERVICE OF DISPUTE NOTICES

**If you intend to dispute this Notice of Disallowance, you must, no later than 4:00 pm (prevailing time in Toronto) on the day that is fourteen (14) days after this Notice of Disallowance is deemed to have been received by you (in accordance with paragraph 25 of the Claims Resolution Order), deliver a Notice of Dispute to the Monitor by prepaid ordinary mail, registered mail, courier, personal delivery or electronic or digital transmission to the address below.** In accordance with the Claims Resolution Order, notices shall be deemed to be received upon actual receipt thereof by the Monitor during normal business hours on a Business Day, or if delivered outside of normal business hours, on the next Business Day. The form of Dispute Notice is enclosed and can also be accessed on the Monitor's website at www.ey.com/ca/nortel.

ERNST & YOUNG INC.
Court-appointed Monitor of Nortel Networks Corporation & others
222 Bay Street, Suite 1600
Toronto, Ontario
Canada M5K 1J7

Attention:      David Saldanha
Telephone:    1-416-943-4431
E-mail           david.saldanha@ca.ey.com
Fax:              1-416-943-3300

DOCSTOR: 2010978\3

- 3 -

00060

**IF YOU FAIL TO FILE A DISPUTE NOTICE WITHIN THE PRESCRIBED TIME PERIOD, THIS NOTICE OF DISALLOWANCE WILL BE BINDING UPON YOU.**

**DATED** at Toronto, this        day of                    , 2010.

**ERNST & YOUNG INC.**, in its capacity as Court-appointed Monitor of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation.

Per:

DOCSTOR: 2010978\3

00061

**SCHEDULE "B"**

---

**DISPUTE NOTICE**

**For Voting And/Or Distribution Purposes with respect to Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (each a "CCAA Applicant" and collectively, the "CCAA Applicants") and/or their respective Officers and Directors**

---

Claim Reference Number: _____

Name of CCAA Debtor against
which a Claim is asserted: _____

1.    **Particulars of Creditor:**

      Full Legal Name of Creditor (include trade name, if different):

        _____

        _____

        *(the "Creditor").*

      Full Mailing Address of the Creditor:

        _____

        _____

      Other Contact Information of the Creditor:

        Telephone Number: _____

        Email Address: _____

        Facsimile Number: _____

        Attention (Contact Person): _____

1

- 2 -

00062

**2.**    **Particulars of original Creditor from whom you acquired the Claim, if applicable:**

Have you acquired this Claim by assignment?

Yes: ☐    No: ☐

If yes and if not already provided, attach documents evidencing assignment.

Full Legal Name of original Creditor(s): _____

**3.**    **Dispute of Disallowance of Claim:**

*For the purposes of the Claims Procedure Order and Claims Resolution Order only (and without prejudice to the terms of any plan of arrangement or compromise) claims in a foreign currency will be converted to Canadian dollars at the exchange rates approved by the Claims Procedure Order. A copy of the applicable exchange rate can be found on the Monitor's website at www.ey.com/ca/nortel.*

The Creditor hereby disagrees with the value of its Claim as set out in the Notice of Disallowance and asserts a Claim as follows:

|  | Amount allowed by Monitor: (Notice of Disallowance) (in Canadian dollars) | Amount claimed by Creditor: (in Canadian Dollars) |
|---|---|---|
| A.  Unsecur ed Prefiling Claim | $ | $ |
| B.  Secured Prefiling Claim | $ | $ |
| C.  Section 136 Prefiling Claim | $ | $ |
| D.  Restruct uring Claim | $ | $ |
| E.  Directors/Officers Claim | $ | $ |
| F.  Total Claim | $ | $ |

**REASON(S) FOR THE DISPUTE:**

*(You must include a list of reasons as to why you are disputing your Claim as set out in the Notice of Disallowance.)*

_____

_____

_____

_____

_____

2

DOCSTOR: 201097813

00063

---

**SERVICE OF DISPUTE NOTICES**

**If you intend to dispute the Notice of Disallowance, you must by no later than the date that is fourteen (14) days after the Notice of Disallowance is deemed to have been received by you (in accordance with paragraph 25 of the Claims Resolution Order) deliver to the Monitor this Dispute Notice by prepaid ordinary mail, registered mail, courier, personal delivery or electronic or digital transmission to the address below.** In accordance with the Claims Resolution Order, notices shall be deemed to be received upon actual receipt thereof by the Monitor during normal business hours on a Business Day, or if delivered outside of normal business hours, on the next Business Day.

ERNST & YOUNG INC.
Court-appointed Monitor of Nortel Networks Corporation & others
222 Bay Street, Suite 1600
Toronto, Ontario
Canada M5K 1J7

Attention:     David Saldanha
Telephone:    1-416-943-4431
E-mail         david.saldanha@ca.ey.com
Fax:           1-416-943-3300


DATED this _____ day of _____, 2010.

Name of Creditor: _____


_____     Per:   _____
Witness                               Name:
                                      Title:
                                      *(please print)*

3

- 4 -

00064

## SCHEDULE "C"

**FORM OF REPORT TO BE POSTED ON MONITOR'S WEBSITE MONTHLY**

**(NEXT PAGE)**

DOCSTOR: 2010978\3

00065

Schedule C

[NOT ACTUAL AMOUNTS - FOR ILLUSTRATIVE PURPOSES ONLY]

## Nortel Networks – CCAA Applicants Overall Claims Status

(Date)
All amounts in CAD $ millions

| Debtor | Claim Category | Filed Proof of Claim | | Current claim value – most recent stage (1)(2) | | | | | | | | | | | |
| | | | | Under Review | | Accepted or Reviewed and unadjusted | | Value per Notice of Disallowance | | Value per Notice of Dispute | | Valued by Claims Officer | | Valued by Court | |
| | | # | $ | # | $ | # | $ | # | $ | # | $ | # | $ | # | $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Debtor A** | | | | | | | | | | | | | | | |
| | Trade | 10 | 1,000 | 5 | 500 | 5 | 500 | | | | | | | | |
| | Bonds | 5 | 25,000 | | | | | | | | | | | | |
| | Term. & Severance | 30 | 10,000 | 10 | 1,000 | 5 | 1,000 | 5 | 3,000 | 5 | 25,000 | | | | |
| | Pension & Benefits | 40 | 25,000 | 25 | 2,000 | 5 | 5,000 | | | 5 | 5,000 | 40 | 7,000 | 10 | 15,000 |
| | Other | 50 | 10,000 | | | | | | | | | | | | |
| | **Total** | **135** | **71,000** | **40** | **3,500** | **15** | **6,500** | **5** | **3,000** | **10** | **30,000** | **40** | **7,000** | **10** | **15,000** |
| **Debtor B** | | | | | | | | | | | | | | | |
| | Trade | 5 | 25,000 | | | 2 | 1,000 | 3 | 10,000 | 3 | 10,000 | | | 5 | 10,000 |
| | Bonds | 5 | 10,000 | | | | | | | | | | | | |
| | Term. & Severance | 30 | 150,000 | 20 | 10,000 | 10 | 100,000 | 5 | 10,000 | | | | | | |
| | Pension & Benefits | 10 | 30,000 | | | 2 | 5,000 | | | 5 | 10,000 | 5 | 10,000 | | |
| | Other | 10 | 45,000 | | | | | | | | | | | | |
| | **Total** | **60** | **260,000** | **20** | **10,000** | **14** | **106,000** | **8** | **20,000** | **8** | **20,000** | **5** | **10,000** | **5** | **10,000** |
| **Debtor C** | | | | | | | | | | | | | | | |
| | Trade | 10 | 45,000 | | | 5 | 5,000 | 1 | 10,000 | 4 | 15,000 | | | 5 | 50,000 |
| | Bonds | 5 | 50,000 | | | | | | | | | | | | |
| | Term. & Severance | 5 | 75,000 | 1 | 10,000 | 4 | 50,000 | 5 | 100,000 | | | | | | |
| | Pension & Benefits | 5 | 100,000 | | | | | | | | | | | | |
| | Other | 20 | 50,000 | 10 | 15,000 | | | 1 | 10,000 | | | 9 | 10,000 | | |
| | **Total** | **45** | **320,000** | **11** | **25,000** | **9** | **55,000** | **7** | **120,000** | **4** | **15,000** | **9** | **10,000** | **5** | **50,000** |

Notes:

Note 1: The estimated value of individual claims by category is aggregated and shown in one claim stage only.

Note 2: All amounts (other than Accepted) are subject to potential material change (i.e., negotiation, appeal, etc.) as the process for the determination of claims proceeds.

Internal purposes only:
Trade claims include: Contract rejection, Non-Real Estate, Tax & Governmental and Late Claims
Other claims include: Employee, Equity, Litigation, Treasury and Real Estate Claims

- 5 -

00066

## SCHEDULE "D"

## FORM OF REPORT TO APPLICANTS AND U.S. DEBTORS

### (NEXT PAGE)

DOCSTOR: 2010978\3

00067

[NOT ACTUAL AMOUNTS - FOR ILLUSTRATIVE PURPOSES ONLY]

Schedule D

# Nortel Networks – CCAA Applicants Individual Claims Status
(Date)
All amounts in CAD $

| | | | | As filed per proof of claim | | | | | Current and previous to current claim stages | | | | | |
| Claim ID | Creditor Name | Debtor | Claim Category | Pref / Sec | Duplicate | Cross Border | Proof of claim amount | Under Review | Accepted or Reviewed and undisputed | Value per Notice of Disallowance | Value per Notice of Dispute | Valued by Claims Officer | Valued by Court | Estimated value based on current claim stage |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Creditor A | Debtor A | Trade | P | | X | 1,000 | 1,000 | 1,000 | | | | | 1,000 |
| 2 | Creditor B | Debtor A | Other | | D | | 10,000 | 10,000 | | | | | | 5,000 |
| 3 | Creditor C | Debtor B | Trade | | | | 10,000 | | | 5,000 | 10,000 | | | 10,000 |
| 4 | Creditor D | Debtor C | Trade | | | | 5,000 | | | 1,500 | | | | 1,500 |
| 5 | Creditor E | Debtor C | Contract Repudiation | | D | X | 10,000 | 5,000 | | 2,500 | 5,000 | | | 5,000 |
| 6 | Creditor F | Debtor C | Treasury | S | | | 1,015,000 | 1,015,000 | | 515,000 | | | | 515,000 |
| 7 | Creditor G | Debtor D | Trade | | | | 20,000 | | | | | 18,000 | 10,000 | 10,000 |
| 8 | Creditor H | Debtor D | Treasury | | | | 10,000 | | | | | | 10,000 | 10,000 |
| 9 | Creditor I | Debtor D | Employee | P | | X | 10,000 | | | | | 2,500 | 5,000 | 5,000 |
| 10 | Creditor J | Debtor E | Trade | | | X | 12,000 | 12,000 | 12,000 | | 10,000 | 8,000 | | 12,000 |
| | | | | | | | 1,098,000 | | 12,000 | | | | | 573,500 |

Notes:

Note 1    The claim values disclosed are as of the current and previous to current stages of claims determination. No further historic stage values of claims are presented.

Note 2    All amounts other than Accepted are subject to potential material change (i.e. negotiation, appeal, etc.) as the process for the determination of claims proceeds.

Note 3    All employee claims will be reported in aggregate with the exception of certain transition claims that are Specific Claims, which will be reported individually.

Note 4    The Claim Categories will consist of: Contract Repudiation - Non Real Estate, Employee, Equity / Loss Claims, Litigation, Pension & Benefits, Real Estate, Tax and Governmental, Trade Payables, Stocks, Treasury and Other.

Schedules to be provided by Monitor:
1) The form above sorted by Claim ID
2) The form above sorted by Claim Category / Debtor / Creditor Name
3) The form above sorted by Debtor / Claim Category / Creditor Name

00068

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

ORDER
(CLAIMS RESOLUTION ORDER)

OGILVY RENAULT LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

# APPENDIX "B"

00069

**Final Version**

## TABLE OF CONTENTS

PART I - BACKGROUND ........................................................................................................ 1

    Canadian and U.S. Proceedings........................................................................................ 1

    Cross-Border Insolvency Protocol.................................................................................... 3

    Notice of Deadline and of Procedures for Filing Claims................................................. 4

PART II – SCOPE OF THIS CLAIMS PROTOCOL ......................................................... 5

PART III – COOPERATION AND CONSULTATION ...................................................... 7

PART IV – APPLICABLE PROCEDURES FOR RESOLVING CLAIMS ...................... 7

    Resolution of Overlapping Claims ................................................................................... 7

    Resolution of Same-Creditor Claims.............................................................................. 10

PART V – THE COURTS AND THIS CLAIMS PROTOCOL ........................................ 11

    Comity and Independence of the Courts......................................................................... 11

    Effectiveness; Modification............................................................................................. 12

    Procedure for Resolving Disputes under the Claims Protocol........................................ 12

PART VI - GENERAL .......................................................................................................... 13

    Distributions on Overlapping Claims and Same-Creditor Claims .................................. 13

    Rights to Appear and Be Heard...................................................................................... 13

    Preservation of Rights .................................................................................................... 14

    Discharge, Removal or Dissolution of the Creditors' Committee or the Bondholders' Committee...................... 16

i

00070

## CROSS-BORDER PROTOCOL ON THE
## RESOLUTION OF CLAIMS

This cross-border claims protocol (the **"Claims Protocol"**) is intended to supplement the procedures established by each of the U.S. Court and the Canadian Court with respect to the resolution of claims filed against the U.S. Debtors and the Canadian Debtors in the Insolvency Proceedings (each as defined herein).

## PART I - BACKGROUND

*Canadian and U.S. Proceedings*

1.    On January 14, 2009, Nortel Networks Corporation and certain of its subsidiaries and affiliates (collectively, the **"Canadian Debtors"**)[1] commenced reorganization proceedings (the **"Canadian Proceedings"**) by filing an application under Canada's *Companies' Creditors Arrangement Act* (the **"CCAA"**) with the Ontario Superior Court of Justice, Commercial List (the **"Canadian Court"**) and an Order (as amended, the **"CCAA Order"**) has been granted under which (a) the Canadian Debtors have been determined to be entitled to relief under the CCAA, and (b) Ernst & Young Inc. was appointed as monitor (the **"Monitor"**) in the Canadian Proceedings.

2.    On January 14, 2009, Nortel Networks Inc. and certain of its subsidiaries and affiliates (collectively, the **"U.S. Debtors"**)[2] commenced reorganization cases (collectively, the

---

[1]    The Canadian Debtors are:  Nortel Networks Corporation; Nortel Networks Limited; Nortel Networks Technology Corporation; Nortel Networks Global Corporation; and Nortel Networks International Corporation.

[2]    The U.S. Debtors are:  Nortel Networks Inc.; Nortel Networks Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros Inc.; Sonoma Systems; Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks Optical Components Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom

00071

"**Chapter 11 Cases**") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**U.S. Court**"), and such cases have been consolidated (for procedural purposes only) under Case No. 09-10138 (KG). The U.S. Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases. An official committee of unsecured creditors (the "**Creditors' Committee**") was appointed by the United States Trustee (the "**U.S. Trustee**") in these Chapter 11 Cases on January 22, 2009. An ad hoc group of bondholders whose members have executed or in the future will execute confidentiality agreements with the Debtors (the "**Bondholder Group**") has also been organized.

3.      By Order dated January 15, 2009, the U.S. Court approved the U.S. Debtors' retention of Epiq Bankruptcy Solutions, LLC as the claims and noticing agent in the Chapter 11 Cases.

4.      The Monitor filed petitions and obtained an Order in the U.S. Court granting recognition of the Canadian Proceedings under chapter 15 of the Bankruptcy Code. Nortel Networks Inc. also filed an application and obtained an Order in the Canadian Court pursuant to section 18.6 of the CCAA recognizing the Chapter 11 Cases as "foreign proceedings" in Canada and giving effect to the automatic stay thereunder in Canada. None of the U.S.

---

International Inc.; Nortel Networks Cable Solutions Inc.; and Nortel Networks (CALA) Inc. Nortel Networks (CALA) Inc. commenced its Chapter 11 Case on July 14, 2009.

00072

Debtors or Canadian Debtors are applicants in both the Chapter 11 Cases and Canadian Proceedings.

5.    For convenience, (i) the U.S. Debtors and the Canadian Debtors shall be referred to herein collectively as the **"Debtors"**, (ii) the Chapter 11 Cases and the Canadian Proceedings shall be referred to herein collectively as the **"Insolvency Proceedings"**, (iii) the U.S. Court and the Canadian Court shall be referred to herein collectively as the **"Courts"**, and (iv) an order of the U.S. Court or the Canadian Court is referred to herein as an **"Order"**.

*Cross-Border Insolvency Protocol*

6.    An amended Cross-Border Insolvency Protocol (the **"Insolvency Protocol"**) was approved by the U.S. Court and Canadian Court pursuant to separate Orders entered by the Courts on June 29, 2009 and June 30, 2009, respectively. Nothing herein is intended to waive any party's rights under the Insolvency Protocol. To the extent of any direct and irreconcilable conflict between the Insolvency Protocol and this Claims Protocol with respect to any matter concerning claims administration and claims adjudication procedures, the term(s) of this Claims Protocol shall govern.

7.    The purpose of this Claims Protocol is to supplement the procedures established by the Courts in the Bar Date Orders (as defined herein) and in any subsequent Orders related to claims (including the claims resolution order sought by the Canadian Debtors from the Canadian Court concurrently with such Court's approval of this Claims Protocol, the **"Claims Resolution Order"**), including Excluded Claims (as defined herein), to

3

00073

establish an efficient and consistent procedure to address the filing and resolution of claims in the Insolvency Proceedings.

*Notice of Deadline and of Procedures for Filing Claims*

8.     By Orders dated July 30, 2009 (as has been or may be supplemented, the **"Canadian Bar Order"**) and August 4, 2009 (as has been or may be supplemented, the **"U.S. Bar Order"** and together with the Canadian Bar Order, the **"Bar Date Orders"**), the Canadian Court and U.S. Court each set a deadline of September 30, 2009 at 4:00 p.m. prevailing Eastern Time (as has been or may be supplemented, the **"Bar Date"**)[3] for the filing and receipt of claims in the Insolvency Proceedings, other than (i) certain claims that were subject to a later bar date and (ii) certain claims exempted from the provisions of the Bar Date Orders (**"Excluded Claims"**).

9.     As the Debtors' collective corporate structure includes 21 separate Debtor entities, the Debtors propose to implement this Claims Protocol to facilitate the resolution of claims that have been or may be filed in the Canadian Proceedings and the Chapter 11 Cases. Nothing in this Claims Protocol is intended to waive or modify the Bar Date or the protections afforded to the Debtors under the Bar Date Orders. To the extent of any direct and irreconcilable conflict between the Bar Date Orders and this Claims Protocol with respect to any matter concerning Overlapping Claims or Same-Creditor Claims, the term(s) of this Claims Protocol shall govern.

---

[3]     In the case of Nortel Networks (CALA) Inc., by an Order dated December 2, 2009, the U.S. Court set a deadline of January 25, 2010 at 4:00 p.m. prevailing Eastern Time for the filing and receipt of claims against Nortel Networks (CALA) Inc. in the Chapter 11 Cases.

4

00074

**PART II – SCOPE OF THIS CLAIMS PROTOCOL**

10. This Claims Protocol establishes procedures that shall govern the coordination and resolution of Overlapping Claims and Same-Creditor Claims (each as defined below) filed in the Canadian Proceedings and the Chapter 11 Cases.

11. For the purposes of this Claims Protocol, an **"Overlapping Claim"** is a claim or portion thereof that (i) has been filed in both the Canadian Proceedings and the Chapter 11 Cases; (ii) by the same party or by the same affiliated parties; and (iii) arises from the same underlying claim, action, liability, property, agreement, lease, debt or transaction. For the avoidance of doubt, the definition of Overlapping Claims shall include, but not be limited to, any (i) guarantee and indemnity claims where the direct claim is filed against a debtor in one jurisdiction and the guarantee or indemnity claim is filed against a debtor in the other jurisdiction; and (ii) duplicate claims filed in both jurisdictions (claims filed in both jurisdictions by the same or affiliated party asserting the same amount and underlying liability).

12. For the purposes of this Claims Protocol, **"Same-Creditor Claims"** are claims or portions thereof that: (i) have been filed in both the Canadian Proceedings and the Chapter 11 Cases; (ii) by the same party or by the same affiliated parties; and (iii) are not an Overlapping Claim (each such claim, a **"Same-Creditor Claim"**).

13. For the purposes of this Claims Protocol, the following categories of claims shall not constitute Overlapping Claims or Same-Creditor Claims regardless of whether they would otherwise fall within the definitions of Overlapping Claims or Same-Creditor Claims:

5

00075

(a)    U.K. pension claims (including, funding guarantee claims, insolvency guarantee claims, Financial Support Direction liability claims and claims by Nortel Networks U.K. Pension Trust Limited, the U.K. Pension Protection Fund, the Pensions Regulator under *The Pensions Act 2004* (U.K.) and the joint administrators of the various EMEA Debtors related to the foregoing);

(b)    claims in respect of the determination of liabilities and funded status of the Nortel Networks Negotiated Pension Plan and the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan and in respect of the Ontario Pension Benefits Guarantee Fund; and

(c)    the following employee-related matters:

   (i)    any procedure, protocol or methodology for calculating termination and severance pay claims and any process for any resolution of disagreements regarding contract obligations and qualifications for eligibility of such claims (including the calculation of benefits or liabilities),

   (ii)    the actuarial methods and assumptions that will be used to determine non-registered pension claims, Long Term Disability claims and benefit claims and any process for any resolution of disagreements regarding the interpretation or application of plan criteria for such claims (including the calculation of benefits or liabilities),

   (iii)    the form of an order related to Compensation Claims (including, proposed procedures relating to any bar date for claims of employees and retirees),

   (iv)    deferred compensation claims relating to the Nortel Networks U.S. Deferred Compensation Plan (to the extent not otherwise addressed by the Cross-Border Claims Protocol), and

   (v)    the Calgary employee claims contemplated by the action bearing court file number 0901-10504 in the Alberta Court of Queen's Bench.

6

00076

14.     For purposes of this Claims Protocol, a "**Bond Claim**" is any claim arising from or related to the Bondholder Trust Indenture (as defined in the Canadian Bar Order), including claims filed by the indenture trustees.

## PART III – COOPERATION AND CONSULTATION

15.     The Canadian Debtors, the Monitor, and the U.S. Debtors shall share information with respect to any Overlapping Claims and Same-Creditor Claims, including without limitation by meeting on a monthly basis to review these claims.  The Canadian Debtors, the Monitor and the U.S. Debtors shall cooperate and coordinate the collection of information regarding Overlapping Claims and Same-Creditor Claims from the Canadian Debtors, the U.S. Debtors and the claimants.

16.     Information exchanged between the Monitor, the Canadian Debtors and the U.S. Debtors pursuant to this Claims Protocol may be shared by such parties with their respective stakeholders, subject to appropriate written confidentiality agreements, and the Monitor, the Canadian Debtors and the U.S. Debtors may consult with their respective stakeholders with respect to all such information.  In the case of the U.S. Debtors, for the avoidance of doubt, such stakeholders include the Creditors' Committee and the Bondholder Group.

## PART IV – APPLICABLE PROCEDURES FOR RESOLVING CLAIMS

### *Resolution of Overlapping Claims*

17.     The following procedures shall apply with respect to the resolution of Overlapping Claims (other than the Bond Claims, to which Paragraph 17(e) shall apply):

00077

(a)     For Overlapping Claims that either (i) assert an amount greater than $500,000 in both jurisdictions or (ii) are wholly or partially unliquidated and the Monitor and the U.S. Debtors each propose to seek to allow, stipulate or settle for an amount greater than $500,000 in their respective jurisdictions: the Canadian Debtors, the Monitor and the U.S. Debtors shall not respond to or resolve an Overlapping Claim without first complying with the consultation procedures set forth in Paragraph 15 (and in the case of the U.S. Debtors, Paragraph 16) above.

(b)     For Overlapping Claims that either (i) assert an amount less than $1 million in both jurisdictions or (ii) are wholly or partially unliquidated and the Monitor and the U.S. Debtors each propose to seek to allow, stipulate or settle for an amount less than $1 million in their respective jurisdictions:  following satisfaction of Paragraph 17(a) above, the Monitor, the Canadian Debtors and the U.S. Debtors shall be entitled to respond to the Overlapping Claim and seek resolution of such claim in compliance with their respective claims resolution orders and procedures (including, in the case of the Canadian Debtors and the Monitor, the Claims Resolution Order).

(c)     For Overlapping Claims that either (i) assert an amount equal to or greater than $1 million in either jurisdiction or (ii) are wholly or partially unliquidated and the Monitor or the U.S. Debtors propose to seek to allow, stipulate or settle for an amount equal to or greater than $1 million in their respective jurisdictions (the "**Material Overlapping Claims**"):  if the Monitor, the Canadian Debtors and the U.S. Debtors (in the case of the U.S. Debtors, after consultation with the Creditors' Committee and the Bondholder Group) agree on the appropriate

8

00078

resolution (in each jurisdiction) with respect to any Material Overlapping Claim, then such Material Overlapping Claim can be dealt with in accordance with the agreed-upon approach (which may include utilizing the claims resolution procedures applicable in each jurisdiction).

(d)     If the Monitor, the Canadian Debtors and the U.S. Debtors in accordance with the terms hereof cannot agree on the appropriate resolution of Material Overlapping Claims in each jurisdiction, then the Monitor, the Canadian Debtors and the U.S. Debtors shall seek joint direction from the Judges of both the Canadian Court and the U.S. Court regarding the resolution of the claims, absent other agreement by the Canadian Debtors, the Monitor and the U.S. Debtors. Written notice of the request for court resolution of such Material Overlapping Claims along with the materials in support of such relief shall be served no less than 10 calendar days prior to the proposed hearing.[4]

(e)     If the Monitor and the Canadian Debtors, on the one hand, or the U.S. Debtors, on the other hand, proposes to allow, stipulate or settle the Bond Claims (the "**Settlement**") and, after consulting with the other party with respect to such Settlement as provided in Paragraph 15 (and in the case of the U.S. Debtors, Paragraph 16), the party not proposing such Settlement does not agree with such Settlement, such party may request that the hearing to allow the Bond Claims in the Settlement be a joint hearing.

9

00079

*Resolution of Same-Creditor Claims*

18.     The following procedures shall apply with respect to the resolution of Same-Creditor Claims (except with respect to the Bond Claims):

(a)     For Same-Creditor Claims that either (i) assert an amount greater than $500,000 in both jurisdictions or (ii) are wholly or partially unliquidated and the Monitor and the U.S. Debtors each propose to seek to allow, stipulate or settle for an amount greater than $500,000 in their respective jurisdictions:   the Canadian Debtors, the Monitor and the U.S. Debtors shall not respond to or resolve a Same-Creditor Claim without first complying with the consultation procedures set forth in Paragraph 15 (and in the case of the U.S. Debtors, Paragraph 16) above.

(b)     For Same-Creditor Claims that either (i) assert an amount less than $1 million in both jurisdictions or (ii) are wholly or partially unliquidated and the Monitor and the U.S. Debtors each propose to seek to allow, stipulate or settle for an amount less than $1 million in their respective jurisdictions:   following satisfaction of Paragraph 18(a) above, the Monitor, the Canadian Debtors and the U.S. Debtors shall be entitled to respond to the Same-Creditor Claim and seek resolution of such claim in compliance with their respective claims resolution orders and procedures (including, in the case of the Canadian Debtors and the Monitor, the Claims Resolution Order).

---

[4]     In Canada, (i) such materials shall include the Monitor's Report, if any, being filed with respect to the motion, and (ii) service shall be made on the Service List as posted on the Monitor's website (the "**Service List**") and on the party that filed the affected claim (and their counsel, if known).

00080

(c)  For Same-Creditor Claims that either (i) assert an amount equal to or greater than $1 million in either jurisdiction or (ii) are wholly or partially unliquidated and the Monitor or the U.S. Debtors propose to seek to allow, stipulate or settle for an amount equal to or greater than $1 million in their respective jurisdictions (the "**Material Same-Creditor Claims**"): if the Monitor, the Canadian Debtors and the U.S. Debtors (in the case of the U.S. Debtors, after consultation with the Creditors' Committee and the Bondholder Group) agree on the appropriate resolution (in each jurisdiction) with respect to any Material Same-Creditor Claim, then such claim can be dealt with in accordance with the agreed-upon approach (which may include utilizing the claims resolution procedures applicable in each jurisdiction).

(d)  If the Monitor, the Canadian Debtors and the U.S. Debtors (in the case of the U.S. Debtors, after consultation with the Creditors' Committee and the Bondholder Group) cannot agree on the appropriate resolution of Material Same-Creditor Claims in each jurisdiction, then such claims can be resolved in each jurisdiction in accordance with applicable claims resolution orders and procedures (including, in the case of the Canadian Debtors and the Monitor, the Claims Resolution Order).

## PART V – THE COURTS AND THIS CLAIMS PROTOCOL

### *Comity and Independence of the Courts*

19.  The approval and implementation of this Claims Protocol shall not divest or diminish the U.S. Court's and the Canadian Court's respective independent jurisdiction over the

00081

subject matter of the Chapter 11 Cases and the Canadian Proceedings, respectively.  By approving and implementing this Claims Protocol, none of the U.S. Court, the Canadian Court, the Debtors nor any creditor or any other party in interest shall be deemed to have approved or engaged in any infringement on the sovereignty of the United States or Canada.

### *Effectiveness; Modification*

20.     This Claims Protocol shall become effective only upon its approval by both the U.S. Court and the Canadian Court.

21.     This Claims Protocol may not be supplemented, modified, terminated or replaced in any manner except upon approval of such modifications by both the U.S. Court and the Canadian Court after appropriate notice to all parties in interest as required under the rules of the Courts and a hearing in both Courts.  Notice of any legal proceeding to supplement, modify, terminate or replace this Claims Protocol shall be given in accordance with paragraph 28 of the Insolvency Protocol, provided that, the party giving notice shall provide no less than 10 calendar days prior written notice of such proceeding and its materials in support of such relief.[5]

### *Procedure for Resolving Disputes under the Claims Protocol*

22.     Disputes relating to the terms, intent or application of this Claims Protocol may be addressed by interested parties to the U.S. Court, the Canadian Court or both Courts upon notice in accordance with paragraph 28 of the Insolvency Protocol.  In rendering a

---

[5]     In Canada, (i) such materials shall include the Monitor's Report, if any, being filed with respect to the motion, and (ii) service shall be made on the Service List.

00082

decision or Order in any such dispute, the Court to which the issue is addressed: (a) shall consult with the other Court; and (b) may, in its sole and exclusive discretion, either: (i) render a binding decision or Order after such consultation; (ii) defer to the other Court by transferring the matter, in whole or in part, to such other Court; or (iii) seek a Joint Hearing of both Courts in accordance with paragraph 12 of the Insolvency Protocol. Notwithstanding the foregoing, in making a decision or Order under this paragraph, each Court shall give due consideration to the independence, comity and inherent jurisdiction of the other Court established under existing law.

## PART VI - GENERAL

### *Distributions on Overlapping Claims and Same-Creditor Claims*

23.    No claimant holding an Overlapping Claim or Same-Creditor Claim shall receive aggregate distributions from the Debtors on account of such claim(s) in excess of 100% of the amount of such allowed claim(s) (including any post-petition interest or other amounts permitted under applicable law).

### *Rights to Appear and Be Heard*

24.    The Canadian Debtors, the Monitor, the U.S. Debtors, the Creditors' Committee and the Bondholder Group shall have the right to support or object and to be heard at any hearing provided for herein in either or both of the Canadian and U.S. Courts with respect to Specific Claims (as defined in the Claims Resolution Order), Overlapping Claims or Same-Creditor Claims.

00083

*Preservation of Rights*

25.   The resolution of an Overlapping Claim or a Same-Creditor Claim in one of the Chapter 11 Cases or the Canadian Proceedings shall be without prejudice to the rights and defenses of the Canadian Debtors, the Monitor or the U.S. Debtors with respect the Overlapping Claim or Same-Creditor Claim in the other jurisdiction (subject to any applicable limitations on distributions to which a creditor may be allowed to recover for its claim).

26.   Nothing in this Claims Protocol shall prejudice the right, if any, of any Debtor, the Monitor, the Creditors' Committee, the Bondholder Group or any other party in interest to dispute or assert set-offs or other defenses to any claim filed in the Insolvency Proceedings.

27.   Nothing in this Claims Protocol shall prejudice the right of any Debtor to seek, in compliance with any other Orders of the Courts and/or agreements between the Debtors, and after consultation with and prior notice to the U.S. Debtors in the case of relief sought by the Monitor or the Canadian Debtors and after consultation with and prior notice to the Canadian Debtors, the Creditors' Committee and Bondholder Group in the case of relief sought by the U.S. Debtors, a further Order or Orders of the applicable Courts (i) fixing a date by which holders of claims or interests not subject to the Bar Date Orders or the Bar Date established therein must file a proof of claim or interest or be barred from doing so, or (ii) establishing further claims procedures, including claims procedures relating to Excluded Claims and claims resolution procedures, *provided, however,* that any motion or application brought by any of the Debtors, the Monitor or any other party in interest, as applicable, with respect to the subject matter of (ii), shall

14

00084

not be heard on less than ten (10) business days notice to the other Debtors, the Monitor, the Creditors' Committee and the Bondholder Group, unless otherwise ordered by the applicable Court. This Claims Protocol shall apply to all such claims unless a Court orders otherwise in accordance with the terms hereof.

28.    Nothing in this Claims Protocol shall prejudice the right of the Monitor to perform its responsibilities and obligations as required under the Canadian Proceedings, pursuant to any applicable Order of the Canadian Court including, without limitation, the Fourth Amended and Restated Initial Order dated January 14, 2009 and the Order of the Canadian Court dated August 14, 2009, or otherwise under applicable law, and the provisions of this Claims Protocol are intended by the parties and the Courts to facilitate the performance of such responsibilities and obligations by the Monitor.

29.    Except as specifically provided herein (including all deeming provisions) and except as agreed in accordance with this Claims Protocol, neither the terms of this Claims Protocol nor any actions taken pursuant to this Claims Protocol shall: (i) prejudice or affect the powers, rights, claims and defenses of the Debtors and their respective estates, the Creditors' Committee, the U.S. Trustee, the Monitor, the Bondholder Group, any of the Debtors' creditors or any of the foregoing parties' representatives or professionals under applicable law, including, without limitation, the Bankruptcy Code, the CCAA and Orders of the Courts; (ii) preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of Canada or the United States or any other applicable laws; (iii) preclude or prejudice the rights of any person (including the Debtors) to contest the validity, amount or priority of any claim, or (iv) preclude or prejudice an assertion to the Court adjudicating the claim

15

00085

that the Court does not have jurisdiction to adjudicate the claim, or that the laws of another jurisdiction govern or affect the validity, amount or priority of a claim.

***Discharge, Removal or Dissolution of the Creditors' Committee or the Bondholder Group***

30.    If the Creditors' Committee shall cease to exist following the effective date of a plan of reorganization and the plan does not designate a successor to the Creditors' Committee, the consent of or consultation with the Creditors' Committee shall no longer be required for any purposes under this Claims Protocol and thereafter the Creditors' Committee will no longer be entitled to receive notices under this Claims Protocol or otherwise enforce or have any rights pursuant to this Claims Protocol.

31.    If at any time, the Bondholder Group is disbanded, the consent of or consultation with the Bondholder Group shall no longer be required for any purposes under this Claims Protocol and thereafter the Bondholder Group will no longer be entitled to receive notices under this Claims Protocol, or otherwise enforce or have any rights pursuant to this Claims Protocol.

00086

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

SEVENTY-SEVENTH REPORT
OF THE MONITOR
DATED NOVEMBER 4, 2011

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre, 333 Bay Street
Toronto, Canada M5H 2S7

Jay A. Carfagnini (LSUC# 222936)
Fred Myers (LSUC#: 26301A)
Gale Rubenstein (LSUC# 17088E)
Melaney J. Wagner (LSUC# 44063B)
Joseph Pasquariello (LSUC# 37389C)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.