## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------X
                                          :
                                          :      Chapter 11
                                          :
In re                                     :
                                          :      Case No. 09-10138 (KG)
Nortel Networks Inc., et al., [1]         :
                                          :      Jointly Administered
                        Debtors.          :
                                          :      Hearing date: December 30, 2011 at 10:00 a.m. (ET)
                                          :      (proposed)
                                          :      Objections due: December 23, 2011 at 4:00 p.m. (ET)
                                          :      (proposed)
-------------------------------------------------------X
```

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE FLEXTRONICS SETTLEMENT AND RELEASE AGREEMENT, (II) AUTHORIZING AND APPROVING THE RELATED SIDE AGREEMENT AND (III) GRANTING RELATED RELIEF**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and

363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing and approving a

settlement and release agreement (the "Settlement and Release Agreement"), attached hereto as

Exhibit B, by and among (a) Flextronics Corporation ("FC"), Flextronics Telecom Systems Ltd.

("FTS") and certain affiliates of FC and FTS that are signatories thereto, on behalf of themselves

and their respective affiliates (collectively, "Flextronics"), (b) the Canadian Debtors (as defined

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

below), (c) the Debtors, (d) the EMEA Entities,[2] and (e) the Joint Administrators (as defined

below) (Flextronics, the Canadian Debtors, the Debtors, the EMEA Entities and the Joint

Administrators, collectively the "Parties"); (ii) authorizing and approving a related side

agreement by and among the Debtors and the Canadian Debtors (as defined below) attached

hereto as Exhibit C (the "Side Agreement"); and (iii) granting them such other and further relief

as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent

as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 363(b)

of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

## Background

**A.      Introduction**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[3] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

---

[2]      Capitalized terms used but not defined herein have the meaning ascribed to them in the Settlement and
Release Agreement.

[3]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code
on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases
for procedural purposes [D.I. 1098].

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.     On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL", together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.     Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

---

[4]     The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]     The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

## Relief Requested

7.        By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules, (i) authorizing and approving the terms and conditions of the Settlement and Release Agreement, (ii) authorizing and approving the terms and conditions of the Side Agreement and (iii) granting them such other and further relief as the Court deems just and proper.

## Facts Relevant to this Motion

**A.        The Relationship Between Nortel and Flextronics**

8.        From 2004 through the divestitures of Nortel's various businesses, Nortel and Flextronics engaged in a complex, wide-ranging contract manufacturing relationship. Flextronics was by far Nortel's largest supplier.  As the Debtors informed this Court at the January 15, 2009 first day hearing, as of the Petition Date, Flextronics was responsible for the supply of approximately 70% of Nortel's hardware products.  In addition, Flextronics provided a significant portion of the logistics and repair services required in connection with those products. Indeed, as the Debtors explained to the Court, Flextronics was, in many respects, "the critical vendor" of Nortel.

**B.        Prior Settlement Agreements with Flextronics**

9.        Recognizing the importance that Flextronics would play in the Debtors' chapter 11 cases, the Canadian Proceedings and the English Proceedings, particularly with respect to Nortel's ability to monetize its various businesses, the Debtors and the Canadian Debtors have previously brought three settlement agreements with Flextronics before this Court or the Canadian Court: (i) a January 13, 2009 agreement by and among NNL, FTS and FC (the "Amending Agreement"), which was approved by the Canadian Court in its January 14, 2009 Initial Order; (ii) a May 22, 2009, NNL, FTS and FC agreement (the "May 2009 Settlement

4

Agreement") and a related side letter, which were approved by this Court on June 11, 2009 [D.I. 895] and by the Canadian Court on June 16, 2009; and (iii) a November 20, 2009 global settlement and release agreement among the Parties (the "November 2009 Settlement and Release Agreement"), which was approved by this Court on December 2, 2009 [D.I. 2063] and by the Canadian Court on December 3, 2009.

10.     Among other things, each of the Amending Agreement, the May 2009 Settlement Agreement and the November 2009 Settlement and Release Agreement amended the terms of the MCMSAs (the primary agreements governing Nortel's contractual relationship with Flextronics) to facilitate Nortel's post-petition operations and the divestitures of its businesses.  Additionally, the Amending Agreement and the May 2009 Settlement Agreement required NNL to purchase certain pre-filing Flextronics inventory in the aggregate amount of $145 million ($120 million of inventory was required to be purchased under the Amending Agreement and $25 million was required to be purchased under the May 2009 Settlement Agreement, and the obligation to purchase this aggregate $145 million of pre-filing Flextronics inventory is referred to as the "$145 Million Inventory Buy-Back Obligation").  The November 2009 Settlement and Release Agreement also resolved substantially all claims among the Parties related to the pre-petition period (including all proofs of claim filed by Flextronics in these chapter 11 cases) and documented Flextronics' agreement to enter into direct contractual arrangements with the purchasers of Nortel's business units in order to facilitate Nortel's sales of such businesses.

11.     As previously disclosed to this Court,[6] NNI has reimbursed NNL for a share of the $145 Million Inventory Buy-Back Obligation pursuant to ordinary course intercompany

---

[6]     See the Debtors' Motion to approve the May 2009 Settlement Agreement, D.I. 783, which, together with the Debtors' Motion to approve the November 2009 Settlement and Release Agreement, D.I. 1970, include further background information regarding Nortel's past relationship with Flextronics.

transactions.  Historically, Nortel allocated the cost of inventory purchases among the four

Nortel entities that served as transaction control centers ("TCCs"),[7] which were used to

coordinate Nortel's global purchasing and supply chain.  Under this system, Nortel determined

the product line for which inventory would be used and allocated the cost of such inventory

between Nortel entities based on the historical mix of purchases by product line that each TCC

made in the past.  As required by the Amending Agreement and the May 2009 Settlement

Agreement, Nortel paid for the inventory to be delivered by Flextronics in connection with the

$145 Million Inventory Buy-Back Obligation in advance of the delivery of such inventory;

Nortel anticipated the products lines of the inventory that would be delivered by Flextronics and

allocated the $145 Million Inventory Buy-Back Obligation among the Debtors, the Canadian

Debtors and the EMEA Entities based on such estimates.  Pursuant to such estimates, the

Debtors funded approximately $84.8 million of the $145 Million Inventory Buy-Back

Obligation.  The estimates of the product lines of the inventory to be delivered by Flextronics in

connection with the $145 Million Inventory Buy-Back Obligation proved to be inaccurate, and

the Debtors assert that NNI overfunded its share of such obligation.

**C.      The Terms of the Present Settlement and Release Agreement**

12.      Nortel has divested substantially all of its businesses, and Nortel is no longer in

need of Flextronics' products or services.  Accordingly, the Parties wish to consensually wind-

down the contractual relationships between Nortel on the one hand and Flextronics on the other

hand.

13.      The Settlement and Release Agreement is the result of lengthy and vigorous

negotiations between Nortel and Flextronics, including consultation with the Committee and the

---

[7]      The four TCCs are NNL, NNI, NNUK and NNSA.

Bondholder Group and participation by the Monitor.  The main terms of the Settlement and

Release Agreement include:[8]

- <u>Payment Obligations</u>.  In full and final settlement of the Released Claims, on the Effective Date, NNI will pay to Flextronics US$1,282,460.17 (such payment, the "<u>Payment Obligation</u>", and the date that such payment is made to Flextronics, the "<u>Settlement Date</u>").  To facilitate the payment of the Payment Obligation, NNL and NNUK will pay to NNI the amounts listed in Schedule B to the Settlement and Release Agreement at the time and in the manner prescribed in such Schedule.  As disclosed in Schedule B to the Settlement and Release Agreement, NNI will fund US$572,830.84 of this obligation.[9]

- <u>Termination of Agreements</u>.  The Flextronics MCMSA, any agreements being performed in accordance with the Flextronics MCMSA (including pursuant to section 5 of the November 2009 Settlement and Release Agreement), any agreements being performed in accordance with the SLR MCMSA (including pursuant to section 5 of the November 2009 Settlement and Release Agreement), and, except as provided in section 3(b) of the Settlement and Release Agreement, any other agreements between Nortel on the one hand and Flextronics on the other hand (the "<u>Related Agreements</u>"), in each case including any ancillary agreements referenced thereunder, transaction documents entered into therewith and all VSHAs, schedules, exhibits, annexes, purchase orders, work orders, amendments, memoranda of understanding or supplements thereunder or thereto (whether or not entered into before, on, or after the Petition Date), will terminate with no further liability or obligation by or among the Parties on the Effective Date.

- <u>Prior Settlements</u>.  The Parties acknowledge that, except as set forth in the Settlement and Release Agreement, there are no further obligations owed by any Parties under the Amending Agreement, the May 2009 Settlement Agreement, the related side letter or the November 2009 Settlement and Release Agreement.

---

[8]     This overview is intended as a summary of the terms of the Settlement and Release Agreement.  If any conflict arises between this overview and the Settlement and Release Agreement, the terms of the Settlement and Release Agreement shall control.

[9]     Nortel's obligation to pay the approximately $1.2 million to Flextronics represents a compromise of various claims between Nortel on the one hand and Flextronics on the other hand.  Though neither Nortel nor Flextronics admit the validity of such claims, such claims include (i) approximately $3.1 million owed by Nortel to Flextronics with respect to certain ordinary course inventory buy-back obligations, (ii) approximately $2.6 million of inventory purchased pursuant to the $145 Million Buy-Back Obligation owed by Flextronics to Nortel, (iii) approximately $300,000 of ordinary course obligations owed by Flextronics to Nortel, (iv) approximately $500,000 of ordinary course obligations owed by Nortel to Flextronics, and (v) approximately $800,000 of product credits owed by Flextronics to Nortel.

- <u>Release of Claims</u>.  On the Settlement Date, Nortel (including the Debtors) and Flextronics will give each other broad releases of prior obligations.  A corresponding covenant not to assert Released Claims in the future is also included in the Settlement and Release Agreement.

- <u>Effective Date</u>.  The Settlement and Release Agreement will become effective on the first day after both the US Approval Order and the Canadian Approval Order become Final.  Unless finality is waived by the Parties, the Settlement and Release Agreement requires the Debtors and the Canadian Debtors to obtain this Court's and the Canadian Court's approval of such agreement on or prior to January 31, 2011.  If such approval is not obtained, the Settlement and Release Agreement will become null and void pursuant to its terms.  Also, as a condition to its execution of the Settlement and Release Agreement, Flextronics has required the Debtors to request that this Court approve the Settlement and Release Agreement by December 31, 2011.

## F.    The Side Agreement

14.    As described above, the Debtors claim that NNI overfunded its share of the cost of the $145 Million Inventory Buy-Back Obligation.  In connection with the Settlement and Release Agreement, the Debtors and the Canadian Debtors entered into the Side Agreement to reconcile this overpayment with other intercompany receivables, as described therein.  Pursuant to the Side Agreement, $12.9 million that NNI asserts is owed by NNL with respect to such overfunding and certain other intercompany obligations between the Debtors and the Canadian Debtors will be reconciled, resulting in a net payment to NNI by NNL of $5,024,837.29.[10]

---

[10]    The Debtors believe that the reconciliation of such intercompany obligations can be done in the ordinary course, but seek this Court's approval of the Side Agreement because such agreement is an integral part of the overall settlement sought to be approved by this Motion.

**Basis for Relief**

15.     The approval of the Agreements requested herein is authorized by sections 105 and 363 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.

16.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell, or lease the property of the estate outside of the ordinary course of business after notice and a hearing.  11 U.S.C. § 363.  Section 363 applies when a settlement agreement involves the disposition of the estate's assets in such a way that it ventures beyond an ordinary course transaction.  Myers v. Martin (In re Martin), 91 F.3d 389, 394-95 (3d Cir. 1996).

17.     The use or transfer of estate property under this provision must be supported by a sound business purpose.  Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991); Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike."  In re Montgomery Ward Holding Corp., 242 B.R. at 153-54 & n.1 (quoting In re Lionel Corp., 722 F.2d at 1071).  In addition, a Debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided and that it is receiving fair and reasonable value in

9

exchange.  See In re Decora Industries, Inc., 2002 WL 32332749, at *2; In re Delaware & Hudson Ry. Co., 124 B.R. at 176.  Courts have distinguished the application of Section 363 to settlements as opposed to property sales, finding that the settlement of claims requires less scrutiny than asset sales because settlements must be approved quickly and are often an important first step in formulating a plan.  Official Unsecured Creditors' Comm. of Pennsylvania Truck Lines v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines), 150 B.R. 595, 599 (E.D. Pa., 1992) (quoting In re Grant Broadcasting of Phila., Inc., 71 B.R. 390, 398 (Bankr. E.D. Pa. 1987) and In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 805 (E.D. Pa. 1986)).

18.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.  Under this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  In re Martin, 91 F.3d at 393 (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).  In addition, the District of Delaware has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  See In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

19.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation."  Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).  The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness."  Travelers, 2008 WL 821088, at *5 (citing

Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)).  The court need not be convinced that the settlement is the best possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.

20.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. at 803).

21.     The Debtors respectfully submit that the Settlement and Release Agreement and Side Agreement meet each of the requirements under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  As required by section 363, the Agreements are proposed as a good faith means to reach agreement and to resolve claims and actual and potential disputes between the Parties.  The Debtors will benefit from the Settlement and Release Agreement by avoiding the time, cost and expense of resolving the claims between the Debtors and Flextronics associated with further negotiation or litigation, and by consensually winding-down the complex contractual relationship between the Debtors and Flextronics without the risk of further liability to the Debtors.  Likewise, the Side Agreement provides for the fair and efficient reconciliation of intercompany receivables between the Debtors and the Canadian Debtors, including related to the $145 Million Inventory Buy-Back Obligation.

22.     Accordingly, the Debtors submit that the Settlement and Release Agreement and the Side Agreement are in the best interest of the Debtors' estates, creditors and other stakeholders and should, therefore, be approved by the Court.

## **Notice**

23.     Notice of the Motion has been given via first class mail, facsimile, electronic transmission, hand delivery or overnight mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to Flextronics; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## **No Prior Request**

24.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: December 16, 2011  
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)  
Lisa M. Schweitzer (No. 1033)  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone: (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors*  
*and Debtors in Possession*