# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                                    :

|  |  |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |

Hearing date:  January 10, 2012 at 10:00am (ET)
Objections due:  January 3, 2012 at 4:00pm (ET)

-------------------------------------------------------- X

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION RESOLVING PROOF OF CLAIM NO. 4642 FILED BY COX COMMUNICATIONS INC.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing NNI to enter into and approving a stipulation (the "Stipulation") with Cox Communications Inc. ("Claimant"), attached hereto as **Exhibit B**, which resolves Claimant's proof of claim against NNI; and granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

**Jurisdiction**

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

3.       On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.       The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.       On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

---

[2]        Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]        The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.    Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## Facts Relevant to this Motion

7.    On or about January 11, 2008, Verizon Communications Inc. and certain of its affiliates (collectively, "Verizon") commenced a lawsuit against Claimant and certain of Claimant's affiliates in the United States District Court for the Eastern District of Virginia, Civ. Nos. 2:08-cv-00020-JBF-TEM, 1:08-cv-00157-CMH-TRJ (the "Verizon Litigation"), asserting claims against the Claimant for infringement of eight different patents.[5]  Claimant thereafter sought indemnification from NNI for litigation expenses incurred in the Verizon Litigation on account of products NNI sold to Claimant, alleging that Claimant was entitled to such indemnity

---

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

[5]      Verizon's claims under two of the eight patents allegedly infringed were dismissed during pre-trial proceedings, leaving claims under six patents to be resolved at trial.  An Eastern District of Virginia jury found that Cox did not infringe any of the six patents, and invalidated two of those patents.  See Verizon Servs. Corp. v. Cox Fibernet Va. Inc., 08-cv-00157 (E.D. Va. Oct. 6, 2008) (judgment).  This verdict was affirmed on appeal.  Verizon Servs. Corp. v. Cox Fibernet Va. Inc., 602 F.3d 1325 (Fed. Cir. 2010).

3

under the terms of a Purchase and License Agreement executed between the parties dated

January 1, 2002, as amended (the "<u>License Agreement</u>").  While NNI acknowledges a possible

obligation to indemnify Claimant for reasonable litigation expenses incurred in defense of one of

the eight patents at issue, it denies any indemnity obligation to Claimant with respect to the

seven remaining patents.

8.      On September 29, 2009, Claimant filed proof of claim number 4642 in the

amount of $7,977,892.36, reflecting the amount of indemnity sought from NNI on account of the

Verizon Litigation ("<u>Claim No. 4642</u>" or the "<u>Claim</u>").  Thereafter, in an effort to negotiate an

expeditious resolution of the dispute between NNI and Claimant, the parties entered into

settlement discussions.  As a result of these negotiations, NNI, subject to this Court's approval,

has reached a compromise with Claimant reducing and allowing the Claim in the reduced

amount, as memorialized in the Stipulation.  The Debtors believe, in the exercise of their

reasonable business judgment, that the resolution of the Claim through the Stipulation is

appropriate and in the best interest of both their estates and their creditors.

9.      Pursuant to the Stipulation and subject to this Court's approval, the Debtors have

agreed to reduce and allow the Claim in the amount of $2,400,000.  In consideration of the

partial allowance of its Claim, Claimant has agreed, subject to this Court's approval, to release

all claims against the Debtors arising out of or relating to the business relationship between NNI

and Claimant other than the Claim as allowed.

<u>**Relief Requested**</u>

10.     By this Motion, the Debtors seek an order, pursuant to section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Stipulation, (ii) authorizing NNI

to enter into the Stipulation, (iii) deeming the Claim allowed in the reduced amount of

4

$2,400,000, and (iv) granting them such other and further relief as the Court deems just and proper.

**Basis for Relief**

11.    The Debtors seek authorization for NNI to enter into the Stipulation under section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

12.    Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

13.    Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re

Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211

B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the

need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer

Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best

possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.

Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below

the lowest point in a range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of

Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at

330.

        14.     The Third Circuit has set out four criteria for a bankruptcy court to consider when

evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62

B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.),

283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

        15.     The Debtors respectfully submit that the Martin Factors weigh in favor of

approving the Stipulation.  While NNI is prepared to litigate the Claim and believes that there is

a reasonable likelihood it would prevail in such litigation, NNI recognizes that litigation of the

Claim carries with it inherent uncertainties and there can be no assurance that it would achieve a

better result than the one set forth in the Stipulation.  The settlement reflected in the Stipulation

takes into account NNI's recognition of its potential obligation to indemnify Cox with respect to

one of the patents at issue in the Verizon Litigation, as well as NNI's position that it has no liability to Cox with respect to the remaining patents.  This resolution fairly balances NNI's likelihood of success on the merits of the Claim against its interest in avoiding the uncertainty of litigation.

16.    In addition, further litigation of the Claim would result in the estate's expenditure of considerable additional legal fees.  In the absence of a settlement, the estate would be burdened with the time and costs of ongoing litigation, which would be disruptive of the estate's efforts to resolve the matters that are essential to the ultimate resolution of these cases.

17.    Finally, the interests of the creditors militate in favor of approval of the Stipulation.  The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Claim and the avoidance of litigation risk and substantial legal expenses that would be incurred if the Claim were to be further litigated.  The settlement reflected in the Stipulation eliminates a purported $7,977,892.36 claim against NNI's estate by allowing a claim against NNI in the lesser amount of $2,400,000.

18.    In light of the foregoing, the Debtors respectfully seek authorization for NNI to enter into the Stipulation and approval of the Stipulation.

## Notice

19.    Notice of the Motion has been given via first class mail to (i) the Claimant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

20.    No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  December 20, 2011
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____*/s/ Chad A. Fights*_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Chad A. Fights (No. 5006)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*