## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- X
                                                   :

*In re*                      :      Chapter 11

Nortel Networks Inc., *et al.*,[1]    :      Case No. 09-10138 (KG)

             Debtors.    :      Jointly Administered

                       :

                       :      **Hearing date: January 10, 2012 at 10:00 a.m. (ET)**
                       :      **Objections due: January 3, 2012 at 4:00 p.m. (ET)**

---------------------------------------------------------- X

## DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING NNI TO TAKE CERTAIN ACTIONS TO FACILITATE THE WIND-DOWN OF <u>NORTEL NETWORKS KABUSHIKI KAISHA</u>

Nortel Networks Inc. ("<u>NNI</u>") hereby moves this Court (the "<u>Motion</u>"), for the entry of an order substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), (a) authorizing NNI to take all necessary actions to facilitate the wind-down of Nortel Networks Kabushiki Kaisha ("<u>NN Japan</u>"), including, without limitation, the repatriation of funds from NN Japan to NNI (the "<u>Cash Repatriation</u>"); (b) authorizing NNI to take all necessary actions to remove NN Japan as a party to (i) that certain MEN Distribution Escrow Agreement dated March 19, 2009 (the "<u>MEN Escrow Agreement</u>"),

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

(ii) that certain Enterprise Distribution Escrow Agreement dated December 18, 2009 (the

"Enterprise Escrow Agreement"), (iii) that certain CVAS Distribution Escrow Agreement dated

May 27, 2010 (the "CVAS Escrow Agreement"), and (iv) that certain MSS Distribution Escrow

Agreement dated March 11, 2011 (the "MSS Escrow Agreement" and, together with the MEN,

Enterprise, and CVAS Escrow Agreements, the "Escrow Agreements"); (c) authorizing the

assignment to NNI of remaining rights and obligations of NN Japan, if any, under the Escrow

Agreements; (d) authorizing NNI to enter into an indemnification agreement substantially similar

to the form attached hereto as Exhibit B (the "Indemnification Agreement") to indemnify and

hold harmless NN Japan and its directors in connection with the Cash Repatriation; and (e)

granting such other and further relief as the Court deems just and proper.  In support of this

Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory bases for the relief requested herein are sections 105 and 363 of the

Bankruptcy Code, as supplemented by Rule(s) 2002 and 6004 of the Bankruptcy Rules and Rule

6004-1 of the Local Rules.

## Background

3.       On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

---

[2]       Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code
on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases
for procedural purposes [D.I. 1098].

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors and a Monitor, Ernst & Young Inc., was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration under the control of individuals from Ernst & Young LLP.  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

6.     Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## Relief Requested

7.     By this Motion, the Debtors seek an order (a) authorizing NNI to take all necessary actions to facilitate the wind-down of NN Japan, including, without limitation, the Cash Repatriation, (b) authorizing NNI to take all necessary actions to remove NN Japan as a party to the Escrow Agreements, (c) authorizing the assignment to NNI of remaining rights and obligations of NN Japan, if any, under the Escrow Agreements, (d) authorizing NNI to enter into an Indemnification Agreement and (e) granting such other and further relief as the Court deems just and proper.

## Facts Relevant to this Motion

**A.     The Cash Repatriation**

8.     NN Japan is a wholly-owned subsidiary of NNI incorporated under the laws of Japan.  Historically, NN Japan engaged in the sale and marketing of Nortel telecommunications equipment in Japan; however, it has ceased all active operations and is in the process of preparing a voluntary solvent liquidation of its assets.  After accounting for all of its liabilities, obligations, and liquidation costs, NN Japan anticipates that it will have a significant surplus cash balance, which it is willing to repatriate to NNI.

9.     NN Japan is a party to that certain Asia Restructuring Agreement dated November 5, 2009, as approved by this Court on December 2, 2009 [D.I. 2061] (the "ARA"), in its capacity as an APAC Debtor (as defined in the ARA).  Under Section 6(d)(i) of the ARA, each APAC Debtor covenants not to distribute profits to shareholders by way of dividend, return of capital or otherwise until it has paid or otherwise satisfied its Pre-Filing Intercompany Debt (as defined in

the ARA), unless it first obtains written consent to certain parties to the ARA.   NN Japan's Pre-Filing Intercompany Debt in the amount of $12,216,941.73 was paid on December 29, 2009, and NN Japan has satisfied all of its other payment obligations under the ARA.   Consequently, the proposed Cash Repatriation does not require the consent of any party under Section 6(d)(i) of the ARA.

**B.    The Escrow Agreements**

10.    NN Japan was a seller in (i) the sale of the Enterprise Solutions business [D.I. 1514]; (ii) the sale of Optical Networking and Carrier Ethernet businesses [D.I. 2070]; (iii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business  [D.I. 2632]; and (iv) the sale of certain assets of the Debtors' Multi-Service Switch (formerly known as "Passport") business [D.I. 4054] (each a "Sale Transaction", and collectively the "Sale Transactions"), and is a party (as a "Depositor" as defined in the Escrow Agreements) to each of the respective Escrow Agreements established to hold the proceeds from each Sale Transaction (the "Sale Proceeds").   As a party to the Escrow Agreements, and a seller in the Sale Transactions, NN Japan is entitled to a portion of the Sale Proceeds.   Each of the Escrow Agreements provides that, upon the liquidation or dissolution of any of the Depositors, the Escrow Agreements shall be automatically amended to remove such liquidated or dissolved entity upon the presentation of evidence of such dissolution or liquidation to JPMorgan Chase Bank, N.A. as Distribution Agent (as defined in the Escrow Agreements).   NNI, as NN Japan's parent corporation, will provide such evidence of dissolution or liquidation to the Distribution Agent upon NN Japan's dissolution.   The Escrow Agreements also provide that, if the terms of such dissolution or liquidation provides for a successor to the dissolved or liquidated Depositor's

rights and obligations under each of the Escrow Agreements, then such rights and obligations shall pass automatically to that successor.[5]

11.     Upon liquidation, NN Japan will no longer have the ability to deliver consents to any proposed amendments to the Escrow Agreements or execute any release instructions required to disburse Sale Proceeds from the accounts (the "Escrow Accounts") established pursuant to those agreements.  As such, the Debtors seek authority to have NNI assume NN Japan's remaining obligations under the Escrow Agreements.  NNI will not incur any additional material cost from its assumption of NN Japan's responsibilities under the Escrow Agreements upon its liquidation, since NNI is a party to the Escrow Agreements in its own right and must already carry out these responsibilities on its own behalf.  Furthermore, to the extent that NN Japan is entitled to Sale Proceeds after the conclusion of its liquidation, those proceeds (and any rights thereto) will be assigned to NNI along with the contemplated assignment of NN Japan's obligations.

## C.     Indemnification

12.     In connection with the Cash Repatriation, NNI has agreed to execute an Indemnification Agreement, pursuant to which it shall covenant to indemnify and hold harmless NN Japan and its directors from any loss arising out of, in connection with or related to the Cash Repatriation, limited to the total aggregate amount of cash repatriated and related costs and expenses incurred by the indemnified parties.  Although NNI and NN Japan believe that the amount of cash remaining at NN Japan is sufficient to pay NN Japan's anticipated liabilities, obligations, and liquidation costs, the Indemnification Agreement still is necessary and appropriate under the circumstances.

---

[5]     MEN Escrow Agreement at ¶ 12; CVAS Escrow Agreement at ¶ 11; MSS Escrow Agreement at ¶ 11; Enterprise Escrow Agreement at ¶ 12.

**Basis for Relief**

13.     The Debtors submit that the relief requested herein is reasonable and necessary under the circumstances and justified by applicable law.

14.     The relief requested by the Debtors is authorized under the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that '[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). The use or transfer of estate property under this provision must be supported by a sound business purpose. Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991); Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward Holding Corp., 242 B.R. at 153-54 & n.1 (quoting In re Lionel Corp., 722 F.2d at 1071). In addition, a Debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided and that it is receiving fair and reasonable value in exchange. See In re Decora Industries, Inc., 2002 WL 32332749, at *2; In re Delaware & Hudson Ry. Co., 124 B.R. at 176.

15.     The Cash Repatriation is in the best interests of NNI's estate, since it will entail the disbursement of millions of dollars in excess funds to NNI.  NNI and NN Japan have engaged in ongoing discussions to minimize any regulatory, tax, or other liability that might be associated with the repatriation and intend to employ a structure that minimizes risk and cost. The Debtors do not anticipate any exposure to liability greater than the amount of funds to be repatriated.

16.     NNI's delivery of evidence to effectuate the removal of NN Japan from the Escrow Agreements upon its liquidation is in the best interests of all the Debtors.  It will minimize the risk that NN Japan cannot fulfill its ongoing obligations under the Escrow Agreements to consent to any amendments to the Escrow Agreements or disbursement of funds from the Escrow Accounts.  In addition, NNI expects that its assumption of NN Japan's rights and obligations under the Escrow Agreements will entail no material increase in its obligations under those agreements, and will carry with it entitlement to any remaining entitlement NN Japan would have to the Sale Proceeds.

17.     In the Debtors' business judgment, entry into an Indemnification Agreement with NN Japan and performance of its obligations thereunder, including, but not limited to, payment of indemnification claims, constitute a proper and beneficial use of their assets under 363 of the Bankruptcy Code, consistent with ordinary course business practices prior to the Petition Date. Liability under the Indemnification Agreement will be limited to the amount to be repatriated by NN Japan to NNI and related costs and expenses incurred by the indemnified parties, so that, after accounting for the funds to be repatriated, it is unlikely that there will be any net liability to NNI.

## **Notice**

18.     Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to NN Japan; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## **No Prior Request**

19.     No prior request for the relief sought herein has been made to this or any other court.


[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  December 20, 2011
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*