**EXHIBIT B**

**Form of Indemnification Agreement**

## INDEMNITY AGREEMENT

This Indemnity Agreement (this "Agreement") is entered into as of [_____], by and among Nortel Networks Inc., a Delaware corporation ("NNI"), Nortel Networks Kabushiki Kaisha ("NN Japan"), a Japanese *kabushiki kaisha,* and each of the individuals signatory hereto in their capacity as a director of NN Japan (the "NN Japan Directors", and together with NNI and NN Japan, the "Parties").

WHEREAS, on January 14, 2009, NNI commenced a case (the "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "US Bankruptcy Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

WHEREAS, NN Japan, a wholly-owned subsidiary of NNI, has ceased all operations and is in the process of preparing a voluntary solvent liquidation of its assets.

WHEREAS, after accounting for all of its anticipated liabilities, obligations and liquidation costs, NN Japan estimates that it will have a surplus cash balance of $[___] (the "Surplus Cash") and is willing to permit the Surplus Cash to be repatriated to NNI (the "Cash Repatriation"), so long as such Cash Repatriation does not expose NN Japan to any additional liability.

WHEREAS, to facilitate the Cash Repatriation, NNI has agreed to indemnify NN Japan and its directors against liabilities and expenses they incur as a result of the Cash Repatriation, as described further below.

NOW, THEREFORE, in consideration of the premises and the covenants contained herein, the Parties hereby covenant and agree as follows:

### ARTICLE I. INDEMNIFICATION

**Section 1.1**     Indemnification.  Subject to the provisions of this Agreement and to the fullest extent permitted by applicable law, from and after the consummation of the Cash Repatriation, NNI shall indemnify and hold harmless NN Japan and the NN Japan Directors (collectively, the "Indemnified Parties") from and against any and all direct or indirect costs, expenses, damages, penalties, fines, liabilities (contingent or otherwise) and losses of any kind (including reasonable fees and expenses of attorneys, accountants and other experts, judgments, amounts paid or to be paid in settlement, the posting of any bonds and income or other taxes imposed on indemnification payments made to or for the account of an Indemnified Party) (collectively, "Losses") arising out of, relating to or in connection with, the Cash Repatriation, subject to the limitations described in Section 1.2 below.

**Section 1.2**     Limitations on Indemnification Liability.

(a)     The aggregate amount of all Losses for which NNI is obligated to indemnify the Indemnified Parties under this Agreement shall not exceed $[___][1], in addition to any direct or

---

[1] Insert amount of Surplus Cash repatriated.

indirect costs, expenses, fines or penalties incurred by the Indemnified Parties in connection with liability arising out of, relating to or in connection with the Cash Repatriation.

(b)     The amount of any Loss for which an Indemnified Party claims indemnification under this Agreement shall be (i) reduced by any insurance proceeds actually received from a third-party insurer (net of reasonable costs incurred by such Indemnified Party to enforce payment from such third-party insurer) by such Indemnified Party with respect to such Loss and (ii) reduced by indemnification, reimbursement, credits, rebates, refunds or other payments actually received by such Indemnified Party from third parties with respect to such Loss (net of reasonable costs incurred by such Indemnified Party to obtain such indemnification, reimbursement, credits, rebates, refunds or other payments).

(c)     NNI shall not have any liability under any provision of this Agreement for any punitive, incidental, consequential, special or indirect damages.

(d)     Any claim for indemnification made by an Indemnified Party under Section 1.1 shall be bona fide and made in good faith.

Section 1.3     Notice of Claims.   An Indemnified Party making a claim for indemnification under this Agreement (an "Indemnity Claim"), or who obtains knowledge of any proceeding involving such Indemnified Party that could reasonably be expected to give rise to an Indemnity Claim, shall provide written notice to NNI (a "Claim Notice") as promptly as reasonably practicable after the Indemnified Party has actual knowledge of such Indemnity Claim or proceeding; *provided*, *that,* failure of an Indemnified Party to timely provide such Claim Notice shall not affect the Indemnified Party's rights to indemnification hereunder unless (and only to the extent) that such failure shall have caused the indemnifiable Losses with respect to such Indemnity Claim to be greater than such Losses otherwise would have been had the Indemnified Party given timely notice in accordance with this Agreement.  The Claim Notice shall describe in reasonable detail the nature of the actual or potential Indemnity Claim, shall include a copy of all papers served in any proceeding with respect thereto, and shall state the basis of the Indemnified Party's request for indemnification under this Agreement.  Upon receipt of a Claim Notice, NNI shall notify the official committee of unsecured creditors in its chapter 11 cases, or any successor thereto appointed under a confirmed chapter 11 plan.

Section 1.4     Control of Proceedings; Cooperation; Settlement of Claims.

(a)     Upon receipt of a Claim Notice with respect to any proceeding, NNI shall have the right to elect to assume the defense of such proceeding (acting in the name and on behalf of, and as agent for, the Indemnified Party in accordance with this Agreement), with counsel reasonably acceptable to the Indemnified Party, at the sole cost and expense of NNI. Notwithstanding the foregoing, NNI shall not be entitled to assume the defense of any proceeding (unless otherwise agreed to in writing by the Indemnified Party) (i) that is a criminal or quasi-criminal proceeding, (ii) that could reasonably be expected to have an adverse effect on the ability of the Indemnified Party to maintain, or satisfy suitability requirements for, any license by or before any governmental authority or (iii) that seeks an injunction or other equitable relief.  The Indemnified Party shall have the right, with counsel of the Indemnified Party's choosing and at the Indemnified Party's sole cost and expense, to monitor any

proceeding of which NNI has assumed the defense and to reasonably consult with counsel selected by NNI concerning the proceeding.   If requested by NNI, the Indemnified Party agrees to cooperate with NNI and its counsel in the defense of any such proceeding at NNI's sole cost and expense, including providing access to documents, records and information and making itself and its personnel available to NNI and its counsel for conferences, discovery, proceedings, hearings, trials or appeals as may be reasonably required.   With the Indemnified Party's consent (not to be unreasonably withheld, conditioned or delayed), NNI shall have the right to settle in whole or in part any claims with respect to the Indemnified Party in any proceeding of which NNI has assumed the defense.

(b)     If NNI declines to assume or is not entitled under this Agreement to assume the defense of a proceeding after receipt of a Claim Notice, an Indemnified Party may, at its sole discretion, retain counsel and conduct such defense, at the sole cost and expense of NNI under this Agreement, subject to the limitations specified in Sections 1.1 and 1.2.   In such event, with NNI's consent (not to be unreasonably withheld, conditioned or delayed), the Indemnified Party shall have the right to settle in whole or in part any claims with respect to any proceeding of which such Indemnified Party is conducting the defense.  Notwithstanding anything herein to the contrary, NNI shall not be liable for any settlement effected without its prior written consent (not to be unreasonably withheld, conditioned or delayed).  NNI shall have the right (acting in the name and on behalf of, and as agent for, the Indemnified Party in accordance with this Agreement), with counsel of NNI's choosing, to monitor any proceeding of which the Indemnified Party is conducting the defense and to reasonably consult with counsel selected by the Indemnified Party concerning the proceeding.

Section 1.5     Advancement of Expenses; Payments in Respect of Losses.

(a)     Subject to the limitations of Sections 1.1 and 1.2, NNI shall, in advance of the final disposition of any proceeding for which indemnification is or may be available under this Agreement, (i) directly pay all costs, expenses and Losses incurred or required to be paid by an Indemnified Party in connection with such proceeding no later than the date that such costs, expenses or Losses are actually incurred or required to be paid by such Indemnified Party; and (ii) to the extent that an Indemnified Party is required to or elects to pay any costs, expenses and Losses in connection with such proceeding directly, reimburse such costs, expenses and Losses paid or incurred by such Indemnified Party.  NNI shall make such payments or reimbursements no later than twenty (20) calendar days after a written claim is made by the Indemnified Party to NNI for such payment reimbursement (itemizing and documenting such costs, expenses and/or Losses in reasonable detail); *provided, that,* the Indemnified Party shall promptly repay all such amounts to NNI if a court of competent jurisdiction has determined in a final non-appealable judgment that such Indemnified Party is not entitled to indemnification for such costs, expenses or Losses.

(b)     With respect to any Indemnity Claim in connection with a proceeding involving an Indemnified Party, NNI shall be required to make a determination whether the Indemnified Party making such Indemnity Claim is entitled to indemnification under this Agreement (a "Final Determination") prior to assuming the defense of such proceeding as provided for in Section 1.4, and, if NNI has not assumed the defense of such proceeding, on or prior to the date that is twenty (20) calendar days after the date of a final, non-appealable resolution of or with respect to such

proceeding.  With respect to any Indemnity Claim not involving a proceeding, NNI shall make a Final Determination within twenty (20) calendar days after receipt of the Claim Notice with respect to such Indemnity Claim.  With respect to any Indemnity Claim brought by an Indemnified Party arising out of, relating to or in connection with a liability that could have been satisfied, in whole or in part, by the Surplus Cash had the Cash Repatriation not occurred, a presumption shall exist (in connection with any determination by NNI of entitlement to indemnification or in any subsequent determination by a court of competent jurisdiction determining entitlement to indemnification) that the Indemnified Party is entitled to indemnification under this Agreement with respect to such  Indemnity Claim.

(c)     Any costs or expenses ("Litigation Costs") incurred by an Indemnified Party in connection with any proceeding commenced to determine whether such Party is entitled to indemnification hereunder shall not constitute Losses and shall not be subject to the limitations specified in Sections 1.1 and 1.2.   Furthermore, NNI shall reimburse such Indemnified Party for Litigation Costs in the event that a court of competent jurisdiction makes a final, non-appealable judgment in such proceeding that such Indemnified Party is entitled to indemnification hereunder.

(d)     Any payment to or for the account of an Indemnified Party with respect to any Losses (other than costs, expenses and other Losses previously advanced pursuant to Section 1.5(a)) covered by an Indemnity Claim and Litigation Costs, if any, shall be paid by NNI no later than twenty (20) calendar days after making a Final Determination that such Indemnified Party is entitled to indemnification hereunder, or, in the event NNI determines that such Indemnified Party is not entitled to indemnification, no later than twenty (20) calendar days after the date of a final, non-appealable judgment by a court of competent jurisdiction that such Indemnified Party is entitled to indemnification hereunder.

Section 1.6     Subrogation.  NNI shall, to the extent of any indemnification payment actually made to an Indemnified Party, be subrogated to all rights (if any) of the Indemnified Party against any third party in connection with the Losses to which such payment relates; *provided, however*, that NNI hereby postpones all rights of subrogation, reimbursement, indemnity and recourse (including any statutory rights of subrogation under Section 509 of the Bankruptcy Code, or otherwise) until such time as the applicable indemnification payment is paid in full to the Indemnified Party or otherwise satisfied in full. Without limiting the generality of the foregoing, any Indemnified Party receiving an indemnification payment pursuant to the preceding sentence shall execute, upon written request of NNI and as a condition to receipt of such indemnification payment, any instrument reasonably necessary to evidence such subrogation rights.

Section 1.7     Former Directors.  In the event any NN Japan Director ceases to be a director of NN Japan, such NN Japan Director shall continue to be entitled to indemnification hereunder in accordance with the terms hereof with respect to Indemnified Claims that relate to, arise from or are based on such NN Japan Director service in his capacity as a director of NN Japan, even though such NN Japan Director may no longer be acting in such capacity.

Section 1.8     No Third-Party Beneficiaries.  Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this

Agreement on any persons other than the Parties and their respective successors and assigns, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third parties to the Parties, nor shall any provision give any third persons any right of subrogation or action against any Party, nor shall any provision estop or otherwise limit the rights of the Parties to assert any claims, counterclaims or defenses against any third party.

Section 1.9    Counterparts.  This Agreement may be executed in one or more counterparts (including by facsimile transmission or electronic transmission of a PDF file), each of which shall constitute an original but all of which together shall constitute one and the same Agreement.

Section 1.10    Successors and Assigns.  This Agreement shall be binding upon and insure to the benefit of the Parties and each of their respective successors and assigns.  No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by each of the Parties.

Section 1.11    Governing Law; Submission to Jurisdiction.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.  Each of the Parties agrees that any claim, action or proceeding by such Party seeking any relief arising out of or in connection with this Agreement shall be brought only in (a) the US Bankruptcy Court, if brought prior to the entry of a final decree closing the Chapter 11 Case, or (b) a federal or state court sitting in the county and state of New York, if brought after the entry of such final decree.   Each Party irrevocably waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any such proceedings in any such court and any claim that any proceeding brought in any such court has been brought in an inconvenient forum.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.