becomes payable. Notwithstanding the foregoing, only those Bonuses that become payable on or after July 1, 2000 shall be eligible for deferral into the Plan.

   3.3.2 Notwithstanding any other provision herein to the contrary, a Participant may make a Bonus Deferral election upon his or her Initial Entry Date only if such Initial Entry Date is at least six (6) months prior to the end of the Plan Year in which such Initial Entry Date occurs.

   3.3.3 An election to make Bonus Deferrals shall be irrevocable throughout the Plan Year for which it was made. A Participant's Bonus Deferral election shall be valid only for the Bonus, if any, payable with respect to the Plan Year for which it was made. A new Bonus Deferral election must be filed each year.

  **3.4** **Limitations on Deferrals**. A Participant's Salary Deferrals, Bonus Deferrals, and Commission Deferrals shall be limited as follows:

   3.4.1 A Participant must defer a minimum of $5,000 each Plan Year. This minimum deferral amount may be satisfied by Salary Deferrals, Bonus Deferrals, Commission Deferrals, or a combination thereof. In the event the total deferral in a Plan Year is less than $5,000, the amount deferred during that Plan Year shall be paid out to the Participant as soon as administratively feasible after the end of the Plan Year.

   3.4.2 The Participant's Salary, Bonus, and/or Commission Deferral elections shall be reduced to the extent that any remaining Salary, Bonus and/or Commission (as applicable) is insufficient to satisfy applicable income and employment tax withholding obligations and FICA contributions, garnishments or other amounts required to be withheld by applicable law or court order, or contributions under the Company's employee stock purchase plan and other welfare benefit plans.

   3.4.3 Any salary deferral elections or discretionary profit sharing contributions made under the Company's 401(k) Plan shall be determined based on the Participant's compensation after reduction for the Salary Deferral, Bonus Deferral and/or Commission Deferral Contributions to this Plan.

   3.4.4 Notwithstanding any provisions herein to the contrary, in no event may the aggregate sum of deferral elections made by all Eligible Employees of a single Employer exceed $5 million in a single Plan Year. In the event such limitation is exceeded for a Plan Year with respect to an Employer, all the Deferral Elections made by Eligible Employees of such Employer shall be reduced on a pro rata basis to the extent necessary to prevent such limitation from being exceeded. Furthermore, the Plan Administrator reserves the right to refund to any Participant amounts previously deferred to the Plan for a Plan Year, to the extent necessary to avoid exceeding such limitation for a Plan Year.

  **3.5** **Time for Making Deferral Elections**. A Deferral Election for a Participant's initial participation must be received by the Committee at least fifteen (15) days prior to the Participant's Initial Entry Date and shall be effective as soon as administratively feasible after the properly completed Deferral Election is received by the Committee. A Deferral Election for any subsequent Plan Year must be received by the Committee at least fifteen (15) days prior to

10

the first day of such Plan Year (or such other time as the Committee may specify) and shall be effective for the first pay period which begins in the Plan Year for which such election is made.

**3.6    Vesting.** Salary Deferrals, Bonus Deferrals, Commission Deferrals and the Interest credited to the Participant's Account with respect thereto shall be 100% vested at all times.

## ARTICLE IV

## COMPANY CREDITS

**4.1    Company Credits.** In addition to Salary, Bonus and Commission Deferrals, a Participant's Account shall be credited with such amounts and at such times as the Participant's Employer may, in its sole discretion, determine and communicate to the Participant. The Employer shall be under no obligation to continue to make Company Credits and may discontinue or change the amount or method of calculating the amount of such Company Credits at any time.

**4.2    Vesting.** Company Credits and the Interest credited to the Participant's Account with respect thereto shall be 100% vested at all times, unless otherwise specified by the Committee, in its sole discretion.

## ARTICLE V

## ACCOUNTS

**5.1    Account.** An Account shall be established and maintained for each Participant. The Participant's Account shall be credited with the Participant's Salary Deferrals, Bonus Deferrals, Commission Deferrals and Company Credits, if any, made on behalf of each Participant. In addition, the amount, if any, credited as of December 31, 1999 to a Participant's account pursuant to the Prior Incentive Plans shall be credited to such Participant's Account under this Plan. The Participant's Account shall be credited (debited) with the applicable Interest, as set forth in Section 5.2. The Participant's Account shall be reduced by distributions therefrom and any charges which may be imposed on the Account pursuant to the terms of the Plan.

**5.2    Interest Credited to Accounts at Least Monthly.** Each Account shall be credited (debited) monthly, or more frequently as the Committee may specify, in an amount equal to the Account balance on the last day of the prior accounting period multiplied by the Interest Rate.

**5.3    Determination of Interest Rate.**

5.3.1   The Company shall designate the particular funds or contracts which shall constitute the Benchmark Funds, and may, in its sole discretion, change or add to the Benchmark Funds; provided, however, that the Company shall notify the Participants of any such change prior to the effective date thereof.

   5.3.2 Each Participant may select among the Benchmark Funds and specify the manner in which his or her Account shall be deemed to be invested, solely for purposes of determining the Participant's Interest Rate. The Company shall establish and communicate the rules, procedures and deadlines for making and changing Benchmark Fund selections. The Company shall have no obligation to acquire investments corresponding to the Participant's Benchmark Fund selections.

   5.3.3 The Interest Rate is the investment return, net of administrative fees and investment management fees and other applicable fees or charges for a specified accounting period, of the Benchmark Fund(s) designated by Participant and other applicable fees or charges. The Interest Rate may be negative if the applicable Benchmark Fund(s) sustained a loss during the specified accounting period.

## ARTICLE VI

## BENEFIT DISTRIBUTIONS AND ACCOUNT WITHDRAWALS

 **6.1** **Benefit Amount**. The value of the Participant's Benefit shall be equal to the vested value of the Participant's Account on the last day of the calendar month prior to the Distribution Date, adjusted for any Salary, Bonus or Commission Deferrals or withdrawals that have been subsequently credited thereto or made therefrom prior to the Distribution Date.

 **6.2** **Timing of Distributions**. Benefits shall be paid (or installment payments shall commence) as soon as practicable after the earlier of:

   6.2.1 The first day of the month following the end of the calendar quarter in which the Participant's employment with the Employer terminates; or

   6.2.2 The Distribution Date designated by the Participant in advance in accordance with Section 6.3; or

   6.2.3 The date that the Plan is terminated in accordance with Section 9.4;

provided, however, that for purposes of this Section 6.2., a Participant shall not be considered to terminate employment if he or she continues employment with any Employer (regardless of continued eligibility to make deferrals into the Plan).

 **6.3** **Planned Benefit Distributions**.

   6.3.1 Three-Year Advance Election. A Participant may elect a Distribution Date by filing a Benefit Distribution Election at such time and in such manner as the Committee shall specify. Such Benefit Distribution Election shall specify a Distribution Date that is at least three years after the date the Benefit Distribution Election is received by the Committee. Except as otherwise provided in this Article VI, the Benefit Distribution Election shall apply to the Participant's Salary Deferrals, Bonus Deferrals, and Commission Deferrals and shall also apply to Company Credits except to the extent the Company has specified otherwise, for the Plan Year(s) specified in the Benefit Distribution Election and the Interest credited thereto until the

Distribution Date, or to such lesser dollar amount as may be specified in the Benefit Distribution Election.

6.3.2 **Amendment of Benefit Distribution Election.** A Participant may amend a Benefit Distribution Election by filing an amended Benefit Distribution Election at least twelve (12) months in advance of the Distribution Date specified in the prior Benefit Distribution Election. Any new Distribution Date elected in an amended Benefit Distribution Election must be a date later than the Distribution Date specified in the prior Benefit Distribution Election that is being amended. A Participant may amend a Benefit Distribution Election no more than twice in such Participant's lifetime.

6.3.3 **Termination Before the Planned Distribution Date.** Notwithstanding any prior Benefit Distribution Election, if the employment of a Participant by the Employer terminates for any reason before his elected Distribution Date, distribution of the Participant's Account shall commence as soon as administratively feasible after the first day of the month following the end of the quarter in which the employment termination occurs.

6.4 **Distribution Following a Change of Control.** In the event of a Change of Control, as defined in Section 1.9, the Committee may decide, in its sole discretion, that the Plan shall be terminated and all Accounts shall be distributed as soon as administratively feasible after the termination date of the Plan.

6.5 **Form of Distribution of Benefits.**

6.5.1 **Lump Sum Payments.** Unless the Participant elects an installment distribution as provided in Section 6.5.2 below, the Participant's Benefits shall be distributed in a single lump sum payment.

6.5.2 **Election to Receive Installment Payments.** Notwithstanding the provisions of paragraph 6.5.1, a Participant who so elects, and who satisfies the requirements set forth in this Section 6.5.2 at the relevant time, may receive his or her Benefits in 20 or 40 quarterly installments.

6.5.2.1 A Participant may receive an installment distribution if the value of the Benefits payable, determined in accordance with Section 6.1, exceeds $25,000, and either (a) or (b) applies: (a) the Participant has completed at least five Years of Service for the Employer, and benefits are payable on account of a termination of employment after the Participant has attained age 55; or (b) Benefits are payable as a result of the Participant's Total Disability.

6.5.2.2 An election to receive installments may be made, revoked or amended by filing a written Benefit Distribution Election, in the form required by the Committee, at least one year in advance of the Distribution Date.

6.5.2.3 For purposes of this Section 6.5.2, installment payments shall be substantially equal payments. The amount of the quarterly payments shall be adjusted each year to account for deemed earnings and/or losses.

13

**6.6** **Method of Distribution Following Plan Termination**. Generally, all Benefits shall be paid in a lump sum cash payment following termination of the Plan. Notwithstanding the foregoing, if a lump sum payment will result in an "excess parachute payment" to a Participant, as that term is defined in the Code, the Committee, in its sole discretion, may determine that such Participant's Account shall be paid by some other method.

**6.7** **Death Benefits**. If a Participant dies before his Benefit payments have commenced, then such Participant's Benefits shall be paid to his designated Beneficiary in a lump sum cash payment as soon as administratively feasible after the Committee is notified of the Participant's death and receives evidence satisfactory to it thereof. If a Participant dies after his Benefit payments have commenced but before his or her Benefits have been fully distributed, the Participant's remaining Benefits shall be paid to his or her Beneficiary in the same manner, frequency and duration as they would otherwise have been payable to the Participant.

**6.8** **Early Withdrawal**. Notwithstanding any other provision of the Plan, a Participant or Beneficiary (including a Participant or Beneficiary in pay status) may withdraw ninety percent (90%) (but not less than 90%) of the total amount of his or her vested Benefits at any time. The amount so withdrawn shall be paid in a single lump sum. Upon such withdrawal, the remaining ten percent (10%) of the total Benefits and any unvested Benefits shall be forfeited and the Participant shall have no further right thereto. A Participant making such withdrawal shall be prohibited from making any further Salary Deferrals, Bonus Deferrals, or Commission Deferrals pursuant to the Plan and no Company Credits shall be made to the Participant's Account for the remainder of the Plan Year in which an early withdrawal occurs and for the entire Plan Year thereafter. A Participant shall be permitted to take a maximum of two early withdrawals.

**6.9** **Financial Hardship Withdrawal**. With the consent of the Committee, a Participant or Beneficiary (including a Participant or Beneficiary in pay status) may withdraw up to one hundred percent (100%) of his or her vested Benefits as may be required to meet an unforeseeable financial emergency of the Participant. Such hardship distribution shall be subject to the following provisions:

6.9.1 The hardship withdrawal must be necessary, in the sole discretion of the Committee, to satisfy the unforeseeable emergency.

6.9.2 The amount of the financial hardship withdrawal shall not exceed the amount reasonably required to relieve the financial need after taking into account other resources that are reasonably available to the Participant for this purpose.

6.9.3 The Participant must certify that the financial need cannot be relieved: (i) through reimbursement or compensation by insurance or otherwise; (ii) by reasonable liquidation of the Participant's assets, to the extent such liquidation would not itself cause an immediate and heavy financial need; (iii) by discontinuing the Participant's Salary and Bonus Deferrals; or (iv) by borrowing from commercial sources on reasonable commercial terms.

6.9.4 An "unforeseeable financial emergency" is defined as a severe financial hardship to Participant resulting from a sudden and unexpected illness or accident of Participant

14

or of a dependent of Participant (as defined in section 152(a) of the Code), loss of Participant's property due to casualty, or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of Participant. Neither the need to pay tuition expenses on behalf of the Participant or the Participant's spouse or children nor the desire to purchase a home shall be considered an unforeseeable emergency.

      6.9.5   The Committee, in its sole discretion, shall determine if there is an unforeseeable financial emergency, if the Participant has other resources to satisfy such emergency and the amount of the hardship withdrawal that is required to alleviate the Participant's financial hardship.

      6.9.6   A Participant shall be prohibited from making any further Salary Deferrals, Bonus Deferrals and Commission Deferrals and the Participant's Employer shall not make any Company Credits pursuant to the Plan for the remainder of the Plan Year in which a financial hardship withdrawal occurs and for the entire Plan Year thereafter.

      **6.10**   **Limitation on Distributions to Covered Employees**. Notwithstanding any other provision of this Article VI in the event that the Participant is a "covered employee" as that term is defined in section 162(m)(3) of the Code, or would be a covered employee if Benefits were distributed in accordance with his or her Benefit Distribution Election or early withdrawal request, the maximum amount which may be distributed from the Participant's Account in any Plan Year shall not exceed one million dollars ($1,000,000) less the amount of compensation paid to the Participant in such Plan Year which is not "performance-based" (as defined in Code section 162(m)(4)(C)), which amount shall be reasonably determined by the Committee at the time of the proposed distribution. Any amount that is not distributed to the Participant in a Plan Year as a result of this limitation shall be distributed to the Participant in the next Plan Year, subject to compliance with the foregoing limitation set forth in this Section 6.10.

      **6.11**   **Tax Withholding**. Distribution and withdrawal payments under this Article VI shall be subject to all applicable withholding requirements for federal, state, local and foreign income taxes and to any other federal, state, local or foreign taxes that may be applicable to such payments.

**ARTICLE VII**

**BENEFICIARIES**

      **7.1**   **Designation of Beneficiary**. The Participant shall have the right to designate on such form as may be prescribed by the Committee, one or more Beneficiaries to receive any Benefits due under Article VI which may remain unpaid on the date of the Participant's death. The Participant shall have the right at any time to revoke such designation by written notice on such form as may be prescribed by the Committee and to substitute one or more other Beneficiaries.

      **7.2**   **No Designated Beneficiary**. If, upon the death of the Participant, there is no valid Beneficiary designation, the Beneficiary shall be the Participant's surviving spouse. In the

event there is no surviving spouse, then the Participant's Beneficiary shall be the Participant's estate.

## ARTICLE VIII

## TRUST OBLIGATION TO PAY BENEFITS

**8.1** **Deferrals Transferred to the Trust**. The Company and the Employers may transfer Salary Deferrals, Bonus Deferrals, Commission Deferrals or Company Credits, if any, made by or on behalf of a Participant under this Plan or an interim agreement to the Trustee to be held pursuant to the terms of the Trust Agreement.

**8.2** **Source of Benefit Payments**. All benefits payable to a Participant hereunder shall be paid by the Trustee to the extent of the assets held in the Trust by the Trustee, and by the Company or the applicable Employer of the Participant to the extent the assets in the Trust are insufficient to pay a Participant's Benefits as provided under this Plan.

**8.3** **Investment Discretion**. The Benchmark Funds established pursuant to Section 5.3 shall be for the sole purpose of determining the Interest Rate to be used for determining the Interest credited to the Participant's Account. Neither the Trustee nor the Company shall have any obligation to invest the Participant's Account in accordance with his or her deemed investment directions or in any other investment.

**8.4** **No Secured Interest**. Except as otherwise provided by the Trust Agreement, the assets of the Trust, shall be subject to the claims of creditors of the Employers. Except as provided in the Trust Agreement, the Participant (or the Participant's Beneficiary) shall be a general unsecured creditor of the Employers with respect to the payment of Benefits under this Plan.

## ARTICLE IX

## PLAN ADMINISTRATION, AMENDMENT AND TERMINATION

**9.1** **Powers and Responsibilities**. The Company, or the Committee to the extent that the Company delegates such responsibilities to the Committee, shall have complete control of the administration of the Plan herein set forth with all powers necessary to enable it properly to carry out its duties in that respect. If the Company has not delegated a particular power to the Committee, wherever the Plan states that the Committee has authority to take an action that has not been delegated, the term Committee in such circumstance shall be deemed to mean the Company. Not in limitation, but in amplification of the foregoing, the Company or the Committee as its delegate shall have the power and authority to:

9.1.1 Construe the Plan and Trust Agreement to determine all questions that shall arise as to interpretations of the Plan's provisions including determination of which individuals are Eligible Employees designated by the Board and the determination of the amounts credited to a Participant's Account, and the appropriate timing and method of Benefit payments;

16

       9.1.2    Establish reasonable rules and procedures which shall be applied in a uniform and nondiscriminatory manner with respect to Deferral Elections and Benefit Distribution Elections;

       9.1.3    Require, as a condition to any distribution as to which the Committee believes there may be conflicting legal claims, that the recipient provide, as a condition to receiving the distribution, an indemnification of the Plan, Trust, Trustee and Committee in such form as the Company may specify;

       9.1.4    Establish rules and procedures by which the Plan will operate that are consistent with the terms of the Plan documents;

       9.1.5    Compile and maintain all records it determines to be necessary, appropriate or convenient in connection with the administration of the Plan;

       9.1.6    Employ such persons or organizations to render service or perform services with respect to the administrative responsibilities of the Committee under the Plan as the Committee determines to be necessary and appropriate, including but not limited to attorneys, accountants, and benefit, financial and administrative consultants;

       9.1.7    Allocate its responsibilities among its members and designate other persons (or committee(s) of persons) to carry out its responsibilities under the Plan; and

       9.1.8    Take such other action as may be necessary or appropriate to the management and investment of the Plan assets.

    **9.2**    **Decisions of the Committee**. Decisions of the Company or the Committee made in good faith upon any matter within the scope of its authority shall be final, conclusive and binding upon all persons, including Participants and their legal representatives or Beneficiaries. Any discretion granted to the Committee shall be exercised in accordance with rules and policies established by the Company or the Committee.

    **9.3**    **Plan Amendment**. This Plan may be amended by the Company at any time in its sole discretion. However, no amendment may be made that alters the nature of a Deferral Election or Benefit Distribution Election or which would reduce the amount credited to a Participant's Account on the date of such amendment; and provided further that no amendment that affects the Trustee's duties and obligations under the Plan may be made without the Trustee's consent.

    **9.4**    **Plan Termination**. The Company reserves the right to terminate the Plan in its entirety at any time upon fifteen (15) days notice to the Participants. The termination of the Plan shall automatically revoke all outstanding Benefit Distribution Elections and all elections to have Benefits paid in installments. If the Plan is terminated, all benefits shall be paid as set forth in Section 6.6. Any amounts remaining in the Trust after all benefits have been paid shall revert to the Employer. Notwithstanding the foregoing, in the event of a Change of Control, the Plan may be terminated in the sole discretion of the Committee.

**9.5    Additional Power and Responsibility Following a Change of Control.** In the event of a Change of Control, the Plan may be amended only by a unanimous vote of the Committee. Additionally, the successor to the Company shall have no right to dismiss any member of the Committee or add members to the Committee without the express unanimous consent of the Committee members. Such limitations on the rights of any successor Corporation or business entity shall take effect on the date of the Change of Control and shall remain in effect for a period of 12 months following the Change of Control unless the Committee unanimously agrees to withdraw these limitations earlier.

## ARTICLE X

## MISCELLANEOUS

**10.1    No Assignment.** The right of any Participant, any Beneficiary, or any other person to the payment of any benefits under this Plan shall not be subject to assignment, transfer, pledge, garnishment, alienation, anticipation or encumbrance, except pursuant to a qualified domestic relations order (as defined in Code section 414(p)) entered by a court of competent jurisdiction incident to a divorce.

**10.2    Successors.** This Plan shall be binding upon and inure to the benefit of the Employer, its successors and assigns and the Participant and his or her heirs, executors, administrators and' legal representatives.

**10.3    No Employment Agreement.** Nothing contained herein shall be construed as conferring upon any Participant the right to continue in the employ of the Employer as an employee.

NNI-0019

NNI-0020

**10.4    Governing Law.** This Plan shall be construed in accordance with and governed by the laws of the State of Tennessee.

**10.5    Entire Agreement.** This Plan constitutes the entire understanding and agreement with, respect to the subject matter contained herein, and there are no agreements, understandings, restrictions, representations or warranties among any Participant and the Employer other than those as set forth or provided for herein.

IN WITNESS WHEREOF, this Plan is executed effective January 1, 2000 pursuant to the resolutions dated _December 21, 1999_.

Dated: _Dec. 21, 1999_

NORTEL NETWORKS INC.

By: _Paula Horder_

70078513_23 DOC

19