# NORTEL NETWORKS U.S.

# DEFERRED COMPENSATION PLAN

## As Amended and Restated as of January 1, 2001

---

This document constitutes part of a prospectus covering securities that have been registered under the Securities Act of 1933.

# TABLE OF CONTENTS

Page

ARTICLE I  DEFINITIONS ........................................................................................................ 1
    1.1 Account ............................................................................................................................ 1
    1.2 Benchmark Fund ............................................................................................................ 2
    1.3 Beneficiary ...................................................................................................................... 2
    1.4 Benefit Distribution Election ........................................................................................ 2
    1.5 Benefit(s) ......................................................................................................................... 2
    1.6 Board of Directors ......................................................................................................... 2
    1.7 Bonus ............................................................................................................................... 2
    1.8 Bonus Deferral ............................................................................................................... 2
    1.9 Change of Control ......................................................................................................... 2
    1.10 Code ............................................................................................................................... 2
    1.11 Commissions ................................................................................................................ 2
    1.12 Commission Deferrals ................................................................................................. 2
    1.13 Committee .................................................................................................................... 2
    1.14 Company ....................................................................................................................... 3
    1.15 Company Credit .......................................................................................................... 3
    1.16 Deferral Election ......................................................................................................... 3
    1.17 Distribution Date ......................................................................................................... 3
    1.18 Effective Date ............................................................................................................... 3
    1.19 Eligible Employee ........................................................................................................ 3
    1.20 Employer ...................................................................................................................... 3
    1.21 Entry Date .................................................................................................................... 3
    1.22 Initial Entry Date ......................................................................................................... 3
    1.23 Interest .......................................................................................................................... 3
    1.24 Interest Rate ................................................................................................................. 3
    1.25 Participant .................................................................................................................... 3
    1.26 Plan ................................................................................................................................ 4
    1.27 Plan Year ...................................................................................................................... 4
    1.28 Salary ............................................................................................................................ 4
    1.29 Salary Deferral ............................................................................................................ 4
    1.30 Total Disability ............................................................................................................ 4
    1.31 Total Compensation .................................................................................................... 4
    1.32 Trust .............................................................................................................................. 5
    1.33 Trust Agreement ......................................................................................................... 5
    1.34 Trustee .......................................................................................................................... 5
    1.35 Year of Service ............................................................................................................. 5

ARTICLE II  ELIGIBILITY ....................................................................................................... 5
    2.1 Eligibility ......................................................................................................................... 5
    2.2 Commencement of Participation .................................................................................. 5
    2.3 Cessation of Participation ............................................................................................. 5

ARTICLE III  DEFERRALS ...................................................................................................... 6

NNI-0047

3.1 Salary Deferrals. ................................................................................................ 6
3.2 Commission Deferrals. ...................................................................................... 6
3.3 Bonus Deferrals. ................................................................................................ 7
3.4 Limitations on Deferrals. ................................................................................... 7
3.5 Time for Making Deferral Elections ................................................................. 8
3.6 Vesting. .............................................................................................................. 8

ARTICLE IV  COMPANY CREDITS ................................................................................ 8
4.1 Company Credits ............................................................................................... 8
4.2 Vesting. .............................................................................................................. 8

ARTICLE V  ACCOUNTS .................................................................................................. 8
5.1 Account .............................................................................................................. 8
5.2 Interest Credited to Accounts at Least Monthly. ............................................... 9
5.3 Determination of Interest Rate. ......................................................................... 9

ARTICLE VI  BENEFIT DISTRIBUTIONS AND ACCOUNT WITHDRAWALS ........... 9
6.1 Benefit Amount ................................................................................................. 9
6.2 Timing of Distributions ..................................................................................... 9
6.3 Planned Benefit Distributions. ........................................................................ 10
6.4 Distribution Following a Change of Control .................................................. 10
6.5 Form of Distribution of Benefits. .................................................................... 10
6.6 Method of Distribution Following Plan Termination ..................................... 11
6.7 Death Benefits. ................................................................................................ 11
6.8 Early Withdrawal ............................................................................................ 11
6.9 Financial Hardship Withdrawal. ..................................................................... 11
6.10 Limitation on Distributions on Covered Employees. ................................... 12
6.11 Tax Withholding ........................................................................................... 12

ARTICLE VII  BENEFICIARIES ..................................................................................... 13
7.1 Designation of Beneficiary ............................................................................. 13
7.2 No Designated Beneficiary ............................................................................. 13

ARTICLE VIII  TRUST OBLIGATION TO PAY BENEFITS ........................................ 13
8.1 Deferrals Transferred to the Trust .................................................................. 13
8.2 Source of Benefit Payments. ........................................................................... 13
8.3 Investment Discretion ..................................................................................... 13
8.4 No secured Interest ......................................................................................... 13

ARTICLE IX  PLAN ADMINISTRATION, AMENDMENT AND TERMINATION ...... 13
9.1 Powers and Responsibilities ........................................................................... 13
9.2 Decisions of the Committee ............................................................................ 14
9.3 Plan Amendment. ............................................................................................ 14
9.4 Plan Terminations. .......................................................................................... 15
9.5 Additional Power and Responsibility Following a Change of Control .......... 15

NNI-0048

**ARTICLE X  MISCELLANEOUS** ........................................................................................ 15
   **10.1 No Assignment**.............................................................................................. 15
   **10.2 Successors** .................................................................................................... 15
   **10.3 No Employment Agreement**...................................................................... 15
   **10.4 Governing Law**............................................................................................ 15
   **10.5 Entire Agreement**........................................................................................ 15

NNI-0049

# NORTEL NETWORKS U.S.
# DEFERRED COMPENSATION PLAN

The Nortel Networks U.S. Deferred Compensation Plan (the "Plan") was effective on January 1, 2000 as an amendment and restatement of the Bay Networks, Inc. Deferred Compensation Plan (the "Bay Plan") into which had been merged effective January 1, 2000 the Northern Telecom Inc. Agreement Regarding the Deferral Option of the Senior Management Incentive Award Plan and the Executive Management Incentive Plan (the "Northern Telecom Plan") (collectively, the "Prior Incentive Plans").

The Bay Plan was established by Bay Networks, Inc. (now called Nortel Networks NA Inc.) effective January 1, 1998, and the Northern Telecom Plan was last amended and restated by Northern Telecom effective in October 1996. The versions of the Bay Plan and the Northern Telecom Plan effective immediately before January 1, 2000 are attached hereto as Exhibits A and B, respectively. The merger of the Bay Plan with the Northern Telecom Plan and the amendment and restatement of the merged plan shall not alter the nature of a Deferral Election or a Benefit Distribution Election or reduce the amount credited to a Participant's account on the date of such actions.

The Plan was primarily sponsored effective as of January 1, 2000 by Nortel Networks Inc., a Delaware corporation, for the purpose of providing a tax-deferred capital accumulation program through the deferral of Salary, Bonuses and Commissions as well as additional, discretionary corporate contributions, if any, to a select group of management or highly compensated employees of Nortel Networks Inc. and certain other U.S. subsidiaries of Nortel Networks Inc. and Nortel Networks Corporation. (The Plan restatement as of January 1, 2000 is attached hereto). Nortel Networks Inc. and each other participating Employer are liable respectively for all deferrals regarding Salary, Commissions and Bonuses payable with respect to, and all Company Credits and Interest attributable to, the period ending on March 12, 2000 for Participants who were their Employees during this period. The Plan was and is intended to be an unfunded deferred compensation plan which is not qualified under Section 401(a) of the Internal Revenue Code. Plan participants shall have the status of unsecured creditors of the Company with respect to the payment of Plan benefits.

Effective on March 13, 2000, the Plan has been amended and restated as contained herein to change the primary sponsor of the Plan to Nortel Networks Corporation, a Canadian Corporation. Nortel Networks Corporation shall be solely liable for all deferrals regarding Salary, Commissions and Bonuses payable with respect to, and all Company Credits and Interest attributable to, the period commencing on March 13, 2000. This amendment and restatement shall not alter the nature of a Deferral Election or a Benefit Distribution Election (except that Participants on March 12, 2000 will have a one-time option to cancel their participation in the Plan) or reduce the amount credited to a Participant account on the date of such actions.

# ARTICLE I

## DEFINITIONS

Whenever used herein; the masculine pronoun shall be deemed to include the feminine, and the singular to include the plural, unless the context clearly indicates otherwise, and the following definitions shall govern the Plan:

**1.1** "**Account**" means the book entry account(s) established under the Plan for each Participant to which are credited Salary Deferrals, Bonus Deferrals, Commission Deferrals, Company Credits, amounts credited to a Participant's Account, if any, under an interim agreement and the Interest with respect thereto. Account balances shall be reduced by any distributions made to the Participant or the Participant's Beneficiary(ies) therefrom and any charges that may be imposed on such Account pursuant to the terms of the Plan.

**1.2** "**Benchmark Fund**" shall mean one or more of the mutual funds or contracts selected by the Committee pursuant to Section 5.3.1.

**1.3** "**Beneficiary**" means one, some, or all (as the context shall require) of those persons, trusts or other entities designated by a Participant to receive the undistributed value of his or her Account following the Participant's death.

**1.4** "**Benefit Distribution Election**" means the election, whereby a Participant may elect an installment distribution pursuant to Section 6.5.2, a planned Distribution Date pursuant to Section 6.3 or an early withdrawal of Benefits pursuant to Section 6.8. Such election shall be made in such manner as may be prescribed by the Committee from time to time.

**1.5** "**Benefit(s)**" means the total vested amount credited to a Participant's Account.

**1.6** "**Board of Directors**" or "**Board**" means the Board of Directors of the Company.

**1.7** "**Bonus**" shall mean cash amounts, if any, paid under such of the Employer's formal incentive plans included in Total Compensation (excluding any special, one-time bonuses), as may be designated by the Committee as eligible for deferral under the Plan.

**1.8** "**Bonus Deferral**" means the amount or percentage of a Participant's Bonus that the Participant elects to defer pursuant to Article III.

**1.9** "**Change of Control**" means (a) the purchase or other acquisition by any person(s) or entity(ies), within the meaning of section 13(d) or 14(d) of the Securities Exchange Act of 1934 (the "Act") or any comparable successor provisions, of beneficial ownership (within the meaning of Rule 13d-3 under the Act) of thirty percent (30%) or more of the outstanding shares of common stock or the combined voting power of the Company's outstanding voting securities; (b) the approval by the Company's stockholders of a reorganization, merger or consolidation transaction when after such transaction the Company's stockholders entitled to vote for the transaction own less than fifty percent (50%) of the combined voting power of the surviving or resulting entity owned before such transaction; (c) a dissolution or liquidation of the Company; or (d) the sale of all or substantially all of the Company assets.

NNI-0051

**1.10** "Code" means the Internal Revenue Code of 1986, as amended.

**1.11** "Commissions" " means sales incentive earnings, "merit cash" and "skill block awards" or comparable forms of sales commissions otherwise designated.

**1.12** "Commission Deferrals" means the amount or percentage of a Participant's Commission that the Participant elects to defer pursuant to Article III.

**1.13** "Committee" means the Committee composed of individuals appointed by the Board to administer such employee benefit plans, which shall include the Management Resources and Compensation Committee ("MRCC") or such other persons or committees of persons who may be designated by the MRCC to carry out responsibilities under the Plan. The Committee shall function as the Plan Administrator and shall interpret and administer this Plan and take such other actions as may be specified herein, in its sole discretion. If no Committee is appointed, the Board will serve as the Committee.

**1.14** "Company" means Nortel Networks Limited, a Canadian corporation, and any successor organization thereto.

**1.15** "Company Credit" means an amount credited to a Participant's Account by the Participant's Employer in its discretion on behalf of a Participant pursuant to Article IV.

**1.16** "Deferral Election" means the election whereby a Participant elects to make Salary Deferrals, Commission Deferrals, and/or Bonus Deferrals to the Plan. Deferral Elections shall be made in such manner as may be prescribed by the Committee from time to time.

**1.17** "Distribution Date" means the date on which the distribution of a Participant's Benefits is made or commenced pursuant to Article VI.

**1.18** "Effective Date" means January 1, 2000, the initial effective date of the Plan. The effective date of this amendment and restatement of the Plan is January 1, 2001.

**1.19** "Eligible Employee" means an employee who (i) is employed by an Employer that has adopted the Plan, (ii) is on the U.S. payroll of the Employer, and (iii) has been designated by the Board or the Committee, in its sole discretion, as a member of the select group of management or highly compensated employees who are eligible to participate in the Plan.

**1.20** "Employer" means Nortel Networks Inc. (a U.S. subsidiary of the Company) or any U.S. corporation that would be considered together with Nortel Networks Inc. as a single employer pursuant to Code sections 414(b), (c), (m) or (o).

**1.21** "Entry Date" means the first day of each Plan Year.

**1.22** "Initial Entry Date" means January 1, 2000, or, if later, the first Monday of the calendar quarter following the date on which an individual is designated as an Eligible Employee to participate in the Plan.

NNI-0052

**1.23** "<u>Interest</u>" means the investment return or loss determined in accordance with Article V, which shall be credited to the Participant's Account.

**1.24** "<u>Interest Rate</u>" has the meaning set forth in Section 5.3.3.

**1.25** "<u>Participant</u>" means an Eligible Employee who has elected to participate in the Plan by submitting a Deferral Election to the Committee. A Participant shall also mean an Eligible Employee for whom Company Credits are made, regardless of whether such Eligible Employee has submitted a Deferral Election. Any employee who (i) was a participant under a Prior Incentive Plan (ii) is not a Participant under this Plan, and (iii) has an Account under this Plan pursuant to Section 5.1, shall be an Inactive Participant. An Inactive Participant shall be deemed to be a Participant for those limited purposes under Articles V through X of this Plan, as the Committee shall determine.

**1.26** "<u>Plan</u>" means this Nortel Networks U.S. Deferred Compensation Plan, as amended and restated as of January 1, 2001, and as it may be amended from time to time in the future.

**1.27** "<u>Plan Year</u>" means the 12-month period beginning on January 1 and ending on December 31 of each calendar year.

**1.28** "<u>Salary</u>" means the base salary paid by the Employer, but shall not include any other form of compensation, whether taxable or non-taxable, including, but not limited to, Bonuses, Commissions, incentive payments, non-monetary awards, disability payments, payments under any severance plan, or other forms of additional compensation, whether or not included as a part of Total Compensation.

**1.29** "<u>Salary Deferral</u>" means the amount or percentage of a Participant's Salary that the Participant has elected to defer pursuant to Article III.

**1.30** "<u>Termination Date</u>" means the later of (i) the last day of the Participant's employment with all Employers, and (ii) the last day of his "severance period" as determined under the Nortel Networks Severance Allowance Plan or the Nortel Networks EMT Severance Allowance Plan, if applicable.

**1.31** "<u>Total Disability</u>" means a determination by the Social Security Administration that the Participant is totally and permanently disabled and eligible for Social Security disability benefits or a determination by the insurer under the Employer's long-term disability insurance policy that the Participant is disabled and eligible for long-term disability benefits under such policy.

**1.32** "<u>Total Compensation</u>" means the total of all base pay amounts paid to the employee and the total of all other amounts paid by the Employer to or for the benefit of an employee for services actually rendered or labor performed for the Employer. Such amounts shall be those which are required to be reported on the employee's Federal Income Tax Withholding Statement or statements (Form W-2 or its subsequent equivalent), as modified below, and shall include overtime pay, Bonuses paid pursuant to one or more formal incentive bonus programs of Nortel Networks Inc. or Nortel Networks NA Inc. or another Employer (to

the extent authorized by the Committee); sales incentive earnings, "merit cash," and "skill block awards" or comparable forms of sales commissions otherwise designated; and second shift differential pay, third shift differential pay, weekend differential pay, and lead pay, subject to the following adjustments and limitations:

  1.32.1 The following shall also be <u>included</u>: (a) elective contributions made on an employee's behalf by the Employer that are not includable in income under Code Sections 125, 402(e)(3), 402(h) or 403(b) and (b) benefits under the Employer's short-term disability and vacation plans;

  1.32.2 The following shall be <u>excluded</u>: (a) reimbursements and other expense allowances; (b) cash and noncash fringe benefits; (c) moving expenses; (d) Employer contributions to or payments from this or any other deferred compensation program (whether or not such program is qualified under Code Section 401(a)); (e) welfare benefits (except as described in section 1.31.1); (f) amounts realized from the receipt or exercise of a stock option that is not an incentive stock option within the meaning of Code Section 422; (g) amounts realized at the time property described in Code Section 83 is freely transferable or no longer subject to a substantial risk of forfeiture; (h) amounts realized as a result of an election described in Code Section 83(b); (i) any amounts realized as a result of a disqualifying disposition within the meaning of Code Section 421(a); (j) benefits under the Employer's severance plans; and (k) any other amounts that receive special tax benefits under the Code but are not hereinafter included.

  **1.33** "**Trust**" means the legal entity[ies] created by the Trust Agreement.

  **1.34** "**Trust Agreement**" means that trust agreement[s] entered into in connection with this Plan and any amendments thereto. The Trust Agreement is attached to this Plan as <u>Exhibit C</u>.

  **1.35** "**Trustee**" means the original Trustee(s) named in the Trust Agreement and any duly appointed successor or successors thereto.

  **1.36** "**Year of Service**" means a period of 12 consecutive months during which the Participant is employed by the Employer. Employment commences on the date the Participant first performs an hour of service for the Employer and ends on the date that the Participant's employment is terminated for any reason or on the date the Participant retires, is discharged, is determined to be Totally Disabled or dies.

## ARTICLE II

## ELIGIBILITY

  **2.1** **Eligibility**. Eligibility for participation in the Plan shall be limited to Eligible Employees. Individuals who are in this select group shall be notified as to their eligibility to participate in the Plan. Total Compensation shall be a factor taken into account by the Board or the Committee in deciding on the designation of an employee as an Eligible Employee.

NNI-0054

**2.2** **Commencement of Participation.** An Eligible Employee may begin participation in the Plan upon his Initial Entry Date or any subsequent Entry Date thereafter, subject to making a Deferral Election pursuant to Article III. In addition, participation of an Eligible Employee who has not otherwise commenced participation in the Plan shall commence when a Company Credit is made to the Account of such Eligible Employee pursuant to the provisions of Article IV.

**2.3** **Cessation of Participation.** Active participation in the Plan shall end when a Participant's employment with all Employers that have adopted the Plan terminates for any reason or when the Board or the Committee determines, in its sole discretion, to remove such Participant from active participation in the Plan. No contributions to the Plan shall be made with respect to Salary, Bonuses or Commissions paid after either such termination date. Upon termination of employment or of active participation, a Participant shall remain an inactive Participant in the Plan until all of the Benefits to which he or she is entitled under this Plan have been paid in full, as described in Article VI hereof.

## ARTICLE III

## DEFERRALS

**3.1** **Salary Deferrals.**

3.1.1  As of the Participant's Initial Entry Date, the Participant may elect to reduce his or her Salary by the amount or percentage (up to a maximum of 80% of Salary) set forth in a written and signed Deferral Election that is filed with the Committee. Salary Deferrals shall be subject to the limitations of Section 3.3 below. The Salary Deferral shall not be paid to the Participant, but shall be withheld from the Participant's Salary and an amount equal to the Salary Deferral shall be credited to the Participant's Account.

3.1.2  Each election to make or cease Salary Deferrals shall apply only to Salary earned after the effective date of such election.

3.1.3  A Participant's Salary Deferral may be revoked at any time during the Plan Year. Such revocation shall be effective only with respect to Salary not yet earned. Such Participant may not make further Salary Deferrals to the Plan during the remainder of the Plan Year in which the revocation occurs and during the entire following Plan Year.

3.1.4  Except as provided in section 3.1.3, a Participant's Salary Deferral Election may not be modified during the Plan Year. Effective as of the first day of each Plan Year, a Participant may modify, terminate, or resume Salary Deferrals by filing a new Deferral Election for such Plan Year. A Participant's Salary Deferral Election for a Plan Year shall terminate as of the last day of that Plan Year.

**3.2** **Commission Deferrals.**

3.2.1  As of the Participant's Initial Entry Date, the Participant may elect to reduce his or her Commissions by the amount or percentage (up to a maximum of 95%) set forth in a written and signed Deferral Election that is filed with the Committee. Commission Deferrals

NNI-0055

shall be subject to the limitations of Section 3.4 below. The Commission Deferral shall not be paid to the Participant, but shall be withheld from the Participant's Commissions and an amount equal to the Commission Deferral shall be credited to the Participant's Account.

   3.2.2 Each election to make or cease Commission Deferrals shall apply only to Commissions earned after the effective date of such election.

   3.2.3 A Participant's Commission Deferral may be revoked at any time during the Plan Year. Such revocation shall be effective only with respect to Commissions not yet earned. Such Participant may not make further Commission Deferrals to the Plan during the remainder of the Plan Year in which the revocation occurs and during the entire following Plan Year.

   3.2.4 Except as provided in section 3.2.3, a Participant's Commission Deferral Election may not be modified during the Plan Year. Effective as of the first day of each Plan Year, a Participant may modify, terminate, or resume Commission Deferrals by filing a new Deferral Election for such Plan Year. A Participant's Commission Deferral Election for a Plan Year shall terminate as of the last day of that Plan Year.

  **3.3** **Bonus Deferrals.**

   3.3.1 As of the Participant's Initial Entry Date, and the first day of each Plan Year thereafter, the Participant may elect to reduce his or her cash Bonus payable with respect to the bonus accrual periods within that Plan Year by the amount or percentage (up to a maximum of 95%) set forth in a written and signed Deferral Election form that is filed with the Committee. Bonus Deferrals shall be subject to the limitation provisions of Section 3.4 below. The Bonus Deferral shall not be paid to the Participant, but shall be withheld from the Participant's Bonus payments and an amount equal to the Bonus Deferral shall be credited to the Participant's Account. A "bonus accrual period" shall be a Plan Year or a portion of a Plan Year designated by the Employer as a period for the accrual of a Bonus which is paid after the end of the bonus accrual period. Notwithstanding the foregoing, those Bonuses relating to Plan Year 2000 that become payable on or after July 1, 2000 shall be eligible for deferral into the Plan by Participants whose Initial Entry Date is on or before January 1, 2000.

   3.3.2 Notwithstanding any other provision herein to the contrary, a Participant may make a Bonus Deferral election upon his or her Initial Entry Date only with regard to bonuses that are paid at least six (6) months after the Initial Entry Date with respect to a bonus accrual period that begins on or after the Initial Entry Date.

   3.3.3 An election to make Bonus Deferrals shall be irrevocable throughout the Plan Year for which it was made. A Participant's Bonus Deferral election shall be valid only for the Bonus(es), if any, payable with respect to the Plan Year for which it was made. A new Bonus Deferral election must be filed each year.

  **3.4** **Limitations on Deferrals**. A Participant's Salary Deferrals, Bonus Deferrals, and Commission Deferrals shall be limited as follows:

NNI-0056

3.4.1    A Participant must defer a minimum of $5,000 each Plan Year. This minimum deferral amount may be satisfied by Salary Deferrals, Bonus Deferrals, Commission Deferrals, or a combination thereof. In the event the total deferral in a Plan Year is less than $5,000, the amount deferred during that Plan Year shall be paid out to the Participant as soon as administratively feasible after the end of the Plan Year.

3.4.2    The Participant's Salary, Bonus, and/or Commission Deferral elections shall be reduced to the extent that any remaining Salary, Bonus and/or Commission (as applicable) is insufficient to satisfy applicable income and employment tax withholding obligations and FICA contributions, garnishments or other amounts required to be withheld by applicable law or court order, or contributions under the Employer's employee stock purchase plan and other welfare benefit plans.

3.4.3    Any salary deferral elections or discretionary profit sharing contributions made under the Employer's 401(k) Plan shall be determined based on the Participant's compensation after reduction for the Salary Deferral, Bonus Deferral and/or Commission Deferral Contributions to this Plan.

**3.5    Time for Making Deferral Elections.** A Deferral Election for a Participant's initial participation must be received by the Committee at least fifteen (15) days prior to the Participant's Initial Entry Date and shall be effective as soon as administratively feasible after the properly completed Deferral Election is received by the Committee. A Deferral Election for any subsequent Plan Year must be received by the Committee at least fifteen (15) days prior to the first day of such Plan Year (or such other time as the Committee may specify) and shall be effective for the first pay period which begins in the Plan Year for which such election is made.

**3.6    Vesting.** Salary Deferrals, Bonus Deferrals, Commission Deferrals and the Interest credited to the Participant's Account with respect thereto shall be 100% vested at all times.

## ARTICLE IV

## COMPANY CREDITS

**4.1    Company Credits.** In addition to Salary, Bonus and Commission Deferrals, a Participant's Account shall be credited with such amounts and at such times as the Participant's Employer may, in its sole discretion, determine and communicate to the Participant. The Employer shall be under no obligation to continue to make Company Credits and may discontinue or change the amount or method of calculating the amount of such Company Credits at any time.

**4.2    Vesting.** Company Credits and the Interest credited to the Participant's Account with respect thereto shall be 100% vested at all times, unless otherwise specified by the Employer making such contribution, in its sole discretion.

NNI-0057

## ARTICLE V

## ACCOUNTS

**5.1** <u>Account</u>. An Account shall be established and maintained for each Participant. The Participant's Account shall be credited with the Participant's Salary Deferrals, Bonus Deferrals, Commission Deferrals and Company Credits, if any, made on behalf of each Participant. In addition, the amount, if any, credited as of December 31, 1999 to a Participant's account pursuant to the Prior Incentive Plans and amounts credited under other similar plans maintained by Employers prior to the date that the Employer adopts the Plan (to the extent approved by the Committee) shall be credited to such Participant's Account under this Plan. The Participant's Account shall be credited (debited) with the applicable Interest, as set forth in Section 5.2. The Participant's Account shall be reduced by distributions therefrom and any charges which may be imposed on the Account pursuant to the terms of the Plan.

**5.2** <u>Interest Credited to Accounts at Least Monthly</u>. Each Account shall be credited (debited) monthly, or more frequently as the Committee may specify, in an amount equal to the Account balance on the last day of the prior accounting period multiplied by the Interest Rate.

**5.3** <u>Determination of Interest Rate</u>.

5.3.1   The Committee shall designate the particular funds or contracts which shall constitute the Benchmark Funds, and may, in its sole discretion, change or add to the Benchmark Funds; provided, however, that the Committee shall notify the Participants of any such change prior to the effective date thereof.

5.3.2   Each Participant may select among the Benchmark Funds and specify the manner in which his or her Account shall be deemed to be invested, solely for purposes of determining the Participant's Interest Rate. The Committee shall establish and communicate the rules, procedures and deadlines for making and changing Benchmark Fund selections. The Company shall have no obligation to acquire investments corresponding to the Participant's Benchmark Fund selections.

5.3.3   The Interest Rate is the investment return, net of administrative fees and investment management fees and other applicable fees or charges for a specified accounting period, of the Benchmark Fund(s) designated by Participant and other applicable fees or charges. The Interest Rate may be negative if the applicable Benchmark Fund(s) sustained a loss during the specified accounting period.

## ARTICLE VI

## BENEFIT DISTRIBUTIONS AND ACCOUNT WITHDRAWALS

**6.1** <u>Benefit Amount</u>. The value of the Participant's Benefit shall be equal to the vested value of the Participant's Account on the last day of the calendar month prior to the Distribution Date, adjusted for any Salary, Bonus or Commission Deferrals or withdrawals that have been subsequently credited thereto or made therefrom prior to the Distribution Date.

9

**6.2** **Timing of Distributions.** Benefits shall be paid (or installment payments shall commence) as soon as practicable after the earlier of:

    6.2.1 The first day of the month following the end of the calendar quarter in which the Participant's Termination Date occurs; or

    6.2.2 The Distribution Date designated by the Participant in advance in accordance with Section 6.3; or

    6.2.3 The date that the Plan is terminated in accordance with Section 9.4;

provided, however, that for purposes of this Section 6.2., a Participant shall not be considered to terminate employment if he or she continues employment with any Employer (regardless of continued eligibility to make deferrals into the Plan).

**6.3** **Planned Benefit Distributions.**

    6.3.1 **Three-Year Advance Election.** A Participant may elect a Distribution Date by filing a Benefit Distribution Election at such time and in such manner as the Committee shall specify. Such Benefit Distribution Election shall specify a Distribution Date that is at least three years after the date the Benefit Distribution Election is received by the Committee. Except as otherwise provided in this Article VI, the Benefit Distribution Election shall apply to the Participant's Salary Deferrals, Bonus Deferrals, and Commission Deferrals and shall also apply to Company Credits except to the extent the Employer has specified otherwise, for the Plan Year(s) specified in the Benefit Distribution Election and the Interest credited thereto until the Distribution Date, or to such lesser dollar amount as may be specified in the Benefit Distribution Election.

    6.3.2 **Amendment of Benefit Distribution Election.** A Participant may amend a Benefit Distribution Election by filing an amended Benefit Distribution Election at least twelve (12) months in advance of the Distribution Date specified in the prior Benefit Distribution Election. Any new Distribution Date elected in an amended Benefit Distribution Election must be a date later than the Distribution Date specified in the prior Benefit Distribution Election that is being amended. A Participant may amend any individual Benefit Distribution Election no more than twice in such Participant's lifetime.

    6.3.3 **Termination Before the Planned Distribution Date.** Notwithstanding any prior Benefit Distribution Election, if the employment of a Participant by all Employers terminates for any reason before his elected Distribution Date, distribution of the Participant's Account shall commence as soon as administratively feasible after the first day of the month following the end of the quarter in which the Participant's Termination Date occurs.

**6.4** **Distribution Following a Change of Control.** In the event of a Change of Control, as defined in Section 1.9, the Committee may decide, in its sole discretion, that the Plan shall be terminated and all Accounts shall be distributed as soon as administratively feasible after the termination date of the Plan.

NNI-0059

**6.5** **Form of Distribution of Benefits.**

6.5.1 <u>Lump Sum Payments</u>. Unless the Participant elects an installment distribution as provided in Section 6.5.2 below, the Participant's Benefits shall be distributed in a single lump sum payment.

6.5.2 <u>Election to Receive Installment Payments</u>. Notwithstanding the provisions of paragraph 6.5.1, a Participant who so elects, and who satisfies the requirements set forth in this Section 6.5.2 at the relevant time, may receive his or her Benefits in quarterly installments as specified below.

6.5.2.1 A Participant may receive the Benefit in 20, 40, or 60 installments (as elected by the Participant) if the value of the Benefits payable, determined in accordance with Section 6.1, exceeds $25,000, and either (a) or (b) applies: (a) the Participant has completed at least five Years of Service for the Employer, and benefits are payable on account of a termination of employment after the Participant has attained age 55; or (b) Benefits are payable as a result of the Participant's Total Disability.

6.5.2.1 A Participant may receive the Benefit in 20 installments if the Participant has completed at least ten (10) Years of Service.

6.5.2.3 An election to receive installments may be made, revoked or amended by filing a written Benefit Distribution Election, in the form required by the Committee, at least one year in advance of the Distribution Date.

6.5.2.4 For purposes of this Section 6.5.2, installment payments shall be substantially equal payments. The amount of the quarterly payments shall be adjusted each year to account for deemed earnings and/or losses.

**6.6** **Method of Distribution Following Plan Termination.** Generally, all Benefits shall be paid in a lump sum cash payment following termination of the Plan. Notwithstanding the foregoing, if a lump sum payment will result in an "excess parachute payment" to a Participant, as that term is defined in the Code, the Committee, in its sole discretion, may determine that such Participant's Account shall be paid by some other method.

**6.7** **Death Benefits.** If a Participant dies before his Benefit payments have commenced, then such Participant's Benefits shall be paid to his designated Beneficiary in a lump sum cash payment as soon as administratively feasible after the Committee is notified of the Participant's death and receives evidence satisfactory to it thereof. If a Participant dies after his Benefit payments have commenced but before his or her Benefits have been fully distributed, the Participant's remaining Benefits shall be paid to his or her Beneficiary in the same manner, frequency and duration as they would otherwise have been payable to the Participant.

**6.8** **Early Withdrawal.** Notwithstanding any other provision of the Plan, a Participant or Beneficiary (including a Participant or Beneficiary in pay status) may withdraw ninety percent (90%) (but not less than 90%) of the total amount of his or her vested Benefits at any time. The amount so withdrawn shall be paid in a single lump sum. Upon such withdrawal, the remaining ten percent (10%) of the total Benefits and any unvested Benefits shall be forfeited

NNI-0060

and the Participant shall have no further right thereto. A Participant making such withdrawal shall be prohibited from making any further Salary Deferrals, Bonus Deferrals, or Commission Deferrals pursuant to the Plan and no Company Credits shall be made to the Participant's Account for the remainder of the Plan Year in which an early withdrawal occurs and for the entire Plan Year thereafter. A Participant shall be permitted to take a maximum of two early withdrawals.

**6.9** **Financial Hardship Withdrawal.** With the consent of the Committee, a Participant or Beneficiary (including a Participant or Beneficiary in pay status) may withdraw up to one hundred percent (100%) of his or her vested Benefits as may be required to meet an unforeseeable financial emergency of the Participant. Such hardship distribution shall be subject to the following provisions:

6.9.1 The hardship withdrawal must be necessary, in the sole discretion of the Committee, to satisfy the unforeseeable emergency.

6.9.2 The amount of the financial hardship withdrawal shall not exceed the amount reasonably required to relieve the financial need after taking into account other resources that are reasonably available to the Participant for this purpose.

6.9.3 The Participant must certify that the financial need cannot be relieved: (i) through reimbursement or compensation by insurance or otherwise; (ii) by reasonable liquidation of the Participant's assets, to the extent such liquidation would not itself cause an immediate and heavy financial need; (iii) by discontinuing the Participant's Salary and Bonus Deferrals; or (iv) by borrowing from commercial sources on reasonable commercial terms.

6.9.4 An "unforeseeable financial emergency" is defined as a severe financial hardship to Participant resulting from a sudden and unexpected illness or accident of Participant or of a dependent of Participant (as defined in section 152(a) of the Code), loss of Participant's property due to casualty, or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of Participant. Neither the need to pay tuition expenses on behalf of the Participant or the Participant's spouse or children nor the desire to purchase a home shall be considered an unforeseeable emergency.

6.9.5 The Committee, in its sole discretion, shall determine if there is an unforeseeable financial emergency, if the Participant has other resources to satisfy such emergency and the amount of the hardship withdrawal that is required to alleviate the Participant's financial hardship.

6.9.6 A Participant shall be prohibited from making any further Salary Deferrals, Bonus Deferrals and Commission Deferrals and the Participant's Employer shall not make any Company Credits pursuant to the Plan for the remainder of the Plan Year in which a financial hardship withdrawal occurs and for the entire Plan Year thereafter.

**6.10** **Limitation on Distributions to Covered Employees.** Notwithstanding any other provision of this Article VI, in the event that the Participant is a "covered employee" as that term is defined in section 162(m)(3) of the Code, or would be a covered employee if Benefits were distributed in accordance with his or her Benefit Distribution Election or early withdrawal

12

NNI-0061

request, the maximum amount which may be distributed from the Participant's Account in any Plan Year shall not exceed one million dollars ($1,000,000) less the amount of compensation paid to the Participant in such Plan Year which is not "performance-based" (as defined in Code section 162(m)(4)(C)), which amount shall be reasonably determined by the Committee at the time of the proposed distribution. Any amount that is not distributed to the Participant in a Plan Year as a result of this limitation shall be distributed to the Participant in the next Plan Year, subject to compliance with the limitation set forth in this Section 6.10.

**6.11** **Tax Withholding**. Distribution and withdrawal payments under this Article VI shall be subject to all applicable withholding requirements for federal, state, local and foreign income taxes and to any other federal, state, local or foreign taxes that may be applicable to such payments.

## ARTICLE VII

### BENEFICIARIES

**7.1** **Designation of Beneficiary**. The Participant shall have the right to designate on such form as may be prescribed by the Committee, one or more Beneficiaries to receive any Benefits due under Article VI which may remain unpaid on the date of the Participant's death. The Participant shall have the right at any time to revoke such designation by written notice on such form as may be prescribed by the Committee and to substitute one or more other Beneficiaries.

**7.2** **No Designated Beneficiary**. If, upon the death of the Participant, there is no valid Beneficiary designation, the Beneficiary shall be the Participant's surviving spouse. In the event there is no surviving spouse, then the Participant's Beneficiary shall be the Participant's estate.

## ARTICLE VIII

### TRUST OBLIGATION TO PAY BENEFITS

**8.1** **Deferrals Transferred to the Trust**. The Company and the Employers that have adopted the Plan may transfer assets with respect to Salary Deferrals, Bonus Deferrals, Commission Deferrals or Company Credits, if any, made by or on behalf of a Participant under this Plan or an interim agreement to the Trustee to be held pursuant to the terms of the Trust Agreement.

**8.2** **Source of Benefit Payments**. With respect to all deferrals regarding Salary, Commissions and Bonuses payable with respect to, and all Company Credits and Interest attributable to, the period ending on March 12, 2000, all benefits payable to a Participant hereunder shall be paid by the Trustee to the extent of the assets held in the Trust by the Trustee, and by the applicable Employer of the Participant to the extent the assets in the Trust are insufficient to pay a Participant's Benefits as provided under this Plan. With respect to all deferrals regarding Salary, Commissions and Bonuses payable with respect to, and all Company

NNI-0062

Credits and Interest attributable to, the period commencing on March 13, 2000, all benefits payable to a Participant shall be paid by or at the direction of the Company.

**8.3** **Investment Discretion.** The Benchmark Funds established pursuant to Section 5.3 shall be for the sole purpose of determining the Interest Rate to be used for determining the Interest credited to the Participant's Account. Neither the Trustee, the Company nor any Employer shall have any obligation to invest the Participant's Account in accordance with his or her deemed investment directions or in any other investment.

**8.4** **No Secured Interest.** Except as otherwise provided by the Trust Agreement, the assets of the Trust shall be subject to the claims of creditors of the Employers. Except as provided in the Trust Agreement, the Participant (or the Participant's Beneficiary) shall be a general unsecured creditor of the Employers and the Company with respect to the payment of the respective Benefits provided by the Employers and the Company as described under Section 8.2 of this Plan.

## ARTICLE IX

## PLAN ADMINISTRATION, AMENDMENT AND TERMINATION

**9.1** **Powers and Responsibilities.** The Company, or the Committee to the extent that the Company delegates such responsibilities to the Committee, shall have complete control of the administration of the Plan herein set forth with all powers necessary to enable it properly to carry out its duties in that respect. If the Company has not delegated a particular power to the Committee, wherever the Plan states that the Committee has authority to take an action that has not been delegated, the term Committee in such circumstance shall be deemed to mean the Company. Not in limitation, but in amplification of the foregoing, the Company or the Committee as its delegate shall have the power and authority to:

9.1.1  Construe the Plan and Trust Agreement to determine all questions that shall arise as to interpretations of the Plan's provisions including determination of which individuals are Eligible Employees and the determination of the amounts credited to a Participant's Account, and the appropriate timing and method of Benefit payments;

9.1.2  Establish reasonable rules and procedures which shall be applied in a uniform and nondiscriminatory manner with respect to Deferral Elections and Benefit Distribution Elections;

9.1.3  Require, as a condition to any distribution as to which the Committee believes there may be conflicting legal claims, that the recipient provide, as a condition to receiving the distribution, an indemnification of the Plan, Trust, Trustee and Committee in such form as the Company may specify;

9.1.4  Establish rules and procedures by which the Plan will operate that are consistent with the terms of the Plan documents;

9.1.5  Compile and maintain all records it determines to be necessary, appropriate or convenient in connection with the administration of the Plan;

NNI-0063

    9.1.6 Employ such persons or organizations to render service or perform services with respect to the administrative responsibilities of the Committee under the Plan as the Committee determines to be necessary and appropriate, including but not limited to attorneys, accountants, and benefit, financial and administrative consultants;

    9.1.7 Allocate its responsibilities among its members and designate other persons (or committee(s) of persons) to carry out its responsibilities under the Plan; and

    9.1.8 Take such other action as may be necessary or appropriate to the management and investment of the Plan assets.

  **9.2** **Decisions of the Committee**. Decisions of the Company or the Committee made in good faith upon any matter within the scope of its authority shall be final, conclusive and binding upon all persons, including Participants and their legal representatives or Beneficiaries. Any discretion granted to the Committee shall be exercised in accordance with rules and policies established by the Company or the Committee.

  **9.3** **Plan Amendment**. This Plan may be amended by the Company at any time in its sole discretion. However, no amendment may be made that alters the nature of a Deferral Election or Benefit Distribution Election or which would reduce the amount credited to a Participant's Account on the date of such amendment; and provided further that no amendment that affects the Trustee's duties and obligations under the Plan may be made without the Trustee's consent.

  **9.4** **Plan Termination**. The Company reserves the right to terminate the Plan in its entirety at any time upon fifteen (15) days notice to the Participants. The termination of the Plan shall automatically revoke all outstanding Benefit Distribution Elections and all elections to have Benefits paid in installments. If the Plan is terminated, all benefits shall be paid as set forth in Section 6.6. Any amounts remaining in the Trust after all benefits have been paid shall revert to the Employer. Notwithstanding the foregoing, in the event of a Change of Control, the Plan may be terminated in the sole discretion of the Committee.

  **9.5** **Additional Power and Responsibility Following a Change of Control**. In the event of a Change of Control, the Plan may be amended only by a unanimous vote of the Committee. Additionally, the successor to the Company shall have no right to dismiss any member of the Committee or add members to the Committee without the express unanimous consent of the Committee members. Such limitations on the rights of any successor Corporation or business entity shall take effect on the date of the Change of Control and shall remain in effect for a period of 12 months following the Change of Control unless the Committee unanimously agrees to withdraw these limitations earlier.

**ARTICLE X**

**MISCELLANEOUS**

  **10.1** **No Assignment**. The right of any Participant, any Beneficiary, or any other person to the payment of any benefits under this Plan shall not be subject to assignment, transfer, pledge, garnishment, alienation, anticipation or encumbrance.

NNI-0064

**10.2 Successors.** This Plan shall be binding upon and inure to the benefit of the Company, each Employer, their successors and assigns and the Participant and his or her heirs, executors, administrators and legal representatives.

**10.3 No Employment Agreement.** Nothing contained herein shall be construed as conferring upon any Participant the right to continue in the employ of the Employer as an employee.

**10.4 Governing Law.** This Plan shall be construed in accordance with and governed by the laws of the State of Tennessee.

**10.5 Entire Agreement.** This Plan constitutes the entire understanding and agreement with respect to the subject matter contained herein, and there are no agreements, understandings, restrictions, representations or warranties among any Participant and the Company other than those as set forth or provided for herein.

Approved this 15th day of December, 2000.

_____
Nicholas DeRoma
Chief Legal Counsel

_____
William Donovan
Senior Vice-President,
Human Resources

16

NNI-0065