**EXHIBIT E**

# NORTEL NETWORKS U.S.

## DEFERRED COMPENSATION PLAN

**As Amended and Restated as of January 1, 2005**

---

This document constitutes part of a prospectus covering securities that have been registered under the Securities Act of 1933.

917175 v15
104205-016

# TABLE OF CONTENTS

Page

ARTICLE I      DEFINITIONS ................................................................................................ 2

    1.1    "Account" ....................................................................................... 2

    1.2    "Benchmark Fund" ........................................................................ 2

    1.3    "Beneficiary" ................................................................................ 2

    1.4    "Benefit Distribution Election" ..................................................... 2

    1.5    "Benefit(s)" ................................................................................... 2

    1.6    "Board of Directors" or "Board" ................................................... 2

    1.7    "Bonus" ......................................................................................... 3

    1.8    "Bonus Deferral" .......................................................................... 3

    1.9    "Change of Control" ..................................................................... 3

    1.10   "Code" ........................................................................................... 3

    1.11   "Commissions" ............................................................................. 3

    1.12   Commission Deferrals" ................................................................ 3

    1.13   "Committee" .................................................................................. 4

    1.14   "Company" .................................................................................... 4

    1.15   "Company Credit" ......................................................................... 4

    1.16   "Deferral Election" ....................................................................... 4

    1.17   "Distribution Date" ....................................................................... 4

    1.18   "Effective Date" ............................................................................ 4

    1.19   "Eligible Employee" ..................................................................... 4

    1.20   "Employer" .................................................................................... 4

    1.21   "Entry Date" .................................................................................. 4

    1.22   "Initial Entry Date" ....................................................................... 4

    1.23   "Interest" ....................................................................................... 4

    1.24   "Interest Rate" ............................................................................... 4

    1.25   "Participant" .................................................................................. 5

    1.26   "Plan" ............................................................................................ 5

    1.27   "Plan Year" ................................................................................... 5

    1.28   "Salary" ......................................................................................... 5

    1.29   "Salary Deferral" .......................................................................... 5

NNI-0067

# TABLE OF CONTENTS
## (continued)

Page

| | | |
|---|---|---|
| 1.30 | "Termination Date" | 5 |
| 1.31 | "Total Disability" | 5 |
| 1.32 | "Total Compensation" | 6 |
| 1.33 | "Trust" | 6 |
| 1.34 | "Trust Agreement" | 6 |
| 1.35 | "Trustee" | 6 |
| 1.36 | "Year of Service" | 6 |
| ARTICLE II | ELIGIBILITY | 7 |
| 2.1 | Eligibility | 7 |
| 2.2 | Commencement of Participation | 7 |
| 2.3 | Cessation of Participation | 7 |
| ARTICLE III | DEFERRALS | 7 |
| 3.1 | Salary Deferrals | 7 |
| 3.2 | Commission Deferrals | 8 |
| 3.3 | Bonus Deferrals | 8 |
| 3.4 | Limitations on Deferrals | 9 |
| 3.5 | Time for Making Deferral Elections | 10 |
| 3.6 | Vesting | 10 |
| ARTICLE IV | COMPANY CREDITS | 10 |
| 4.1 | Company Credits | 10 |
| 4.2 | Vesting | 10 |
| ARTICLE V | ACCOUNTS | 10 |
| 5.1 | Account | 10 |
| 5.2 | Interest Credited to Accounts at Least Monthly | 10 |
| 5.3 | Determination of Interest Rate | 11 |
| ARTICLE VI | BENEFIT DISTRIBUTIONS AND ACCOUNT WITHDRAWALS | 11 |
| 6.1 | Benefit Amount | 11 |
| 6.2 | Timing of Distributions | 11 |
| 6.3 | Planned Benefit Distributions. | 12 |
| 6.4 | Distribution Following a Change of Control | 12 |

NNI-0068

# TABLE OF CONTENTS
## (continued)

<strong>Page</strong>

| | | |
|---|---|---|
| 6.5 | Form of Distribution of Benefits | 12 |
| 6.6 | Method of Distribution Following Plan Termination | 13 |
| 6.7 | Death Benefits | 14 |
| 6.8 | Early Withdrawal | 14 |
| 6.9 | Financial Hardship Withdrawal | 14 |
| 6.10 | Limitation on Distributions to Covered Employees | 15 |
| 6.11 | Tax Withholding | 15 |
| 6.12 | Distributions After January 1, 2005 | 16 |
| ARTICLE VII | BENEFICIARIES | 16 |
| 7.1 | Designation of Beneficiary | 16 |
| 7.2 | No Designated Beneficiary | 16 |
| ARTICLE VIII | TRUST OBLIGATION TO PAY BENEFITS | 16 |
| 8.1 | Deferrals Transferred to the Trust | 16 |
| 8.2 | Source of Benefit Payments | 16 |
| 8.3 | Investment Discretion | 16 |
| 8.4 | No Secured Interest | 17 |
| ARTICLE IX | PLAN ADMINISTRATION, AMENDMENT AND TERMINATION | 17 |
| 9.1 | Powers and Responsibilities | 17 |
| 9.2 | Decisions of the Committee | 18 |
| 9.3 | Plan Amendment | 18 |
| 9.4 | Plan Termination | 18 |
| 9.5 | Additional Power and Responsibility Following a Change of Control | 18 |
| 9.6 | Submission of Claims | 19 |
| 9.7 | Appeal of Denied Claims | 19 |
| ARTICLE X | MISCELLANEOUS | 20 |
| 10.1 | No Assignment | 20 |
| 10.2 | Successors | 20 |
| 10.3 | No Employment Agreement | 20 |
| 10.4 | Governing Law | 20 |
| 10.5 | Entire Agreement | 20 |

NNI-0069

## NORTEL NETWORKS U.S.
## DEFERRED COMPENSATION PLAN

The Nortel Networks U.S. Deferred Compensation Plan (the "Plan") was effective on January 1, 2000 as an amendment and restatement of the Bay Networks, Inc. Deferred Compensation Plan (the "Bay Plan") into which had been merged effective January 1, 2000 the Northern Telecom Inc. Agreement Regarding the Deferral Option of the Senior Management Incentive Award Plan and the Executive Management Incentive Plan (the "Northern Telecom Plan") (collectively, the "Prior Incentive Plans").

The Bay Plan was established by Bay Networks, Inc. (now called Nortel Networks NA Inc.) effective January 1, 1998, and the Northern Telecom Plan was last amended and restated by Northern Telecom effective in October 1996. The versions of the Bay Plan and the Northern Telecom Plan effective immediately before January 1, 2000 are attached hereto as Exhibits A and B, respectively. The merger of the Bay Plan with the Northern Telecom Plan and the amendment and restatement of the merged plan shall not alter the nature of a Deferral Election or a Benefit Distribution Election or reduce the amount credited to a Participant's account on the date of such actions.

The Plan was primarily sponsored effective as of January 1, 2000 by Nortel Networks Inc., a Delaware corporation, for the purpose of providing a tax-deferred capital accumulation program through the deferral of Salary, Bonuses and Commissions as well as additional, discretionary corporate contributions, if any, to a select group of management or highly compensated employees of Nortel Networks Inc. and certain other U.S. subsidiaries of Nortel Networks Inc. and Nortel Networks Corporation. (The Plan restatement as of January 1, 2000 is attached hereto). Nortel Networks Inc. and each other participating Employer are liable respectively for all deferrals regarding Salary, Commissions, and Bonuses payable with respect to, and all Company Credits and Interest attributable to, the period ending on March 12, 2000 for Participants who were their Employees during this period. The Plan was and is intended to be an unfunded deferred compensation plan which is not qualified under Section 401(a) of the Internal Revenue Code. Plan participants shall have the status of unsecured creditors of the Company with respect to the payment of Plan benefits.

Effective on March 13, 2000, the Plan was amended and restated to change the primary sponsor of the Plan to Nortel Networks Corporation, a Canadian corporation. (The Plan restatement as of March 13, 2000, is attached hereto). Nortel Networks Corporation shall be solely liable for all deferrals regarding Salary, Commissions and Bonuses payable with respect to, and all Company Credits and Interest attributable to, the period commencing on March 13, 2000. This amendment and restatement shall not alter the nature of a Deferral Election or a Benefit Distribution Election (except that Participants on March 12, 2000 had a one-time option to cancel their participation in the Plan) or reduce the amount credited to a Participant account on the date of such actions.

Effective as of January 1, 2001, the Plan was again amended and restated. (The Plan restatement as of January 1, 2001, is attached hereto). Effective as of April 1, 2004, no new elections were permitted under the Plan. As a result, deferrals continued to be made but only

NNI-0070

with respect to elections previously made for the 2004 Plan Year. However, no elections or deferrals were permitted with respect to the 2005 Plan Year.

Effective as of January 1, 2005, the Plan has been amended and restated to comply with Internal Revenue Code Section 409A with respect to Company Credits made and amounts deferred on or after January 1, 2005, from Salary, Commissions, and Bonuses. This amended and restated Plan does not alter the nature of a Deferral Election or a Benefit Distribution Election previously made with respect to amounts deferred prior to January 1, 2005, or reduce the amount credited to a Participant's account on the date of such action. No provision of this amended and restated Plan document is intended to be and shall not be a material modification of the Plan and arrangement in place as of October 3, 2004, with respect to deferrals or credits made prior to January 1, 2005. Notwithstanding any term of this amended and restated Plan to the contrary, to the extent any term of this Plan document constitutes a material modification (that is, a benefit or right existing as of October 3, 2004, that has been enhanced or a new benefit or right that has been added) to the prior arrangement with respect to deferrals or credits made prior to January 1, 2005, such modification shall be of no force or effect with respect to such prior arrangement.

As part of the amendment and restatement of the Plan, the Plan will again permit elections effective with respect to the 2006 Plan Year.

**ARTICLE I**
**DEFINITIONS**

Whenever used herein; the masculine pronoun shall be deemed to include the feminine, and the singular to include the plural, unless the context clearly indicates otherwise, and the following definitions shall govern the Plan:

**1.1** "**Account**" means the book entry account(s) established under the Plan for each Participant to which are credited Salary Deferrals, Bonus Deferrals, Commission Deferrals, Company Credits, amounts credited to a Participant's Account, if any, under an interim agreement and the Interest with respect thereto. Account balances shall be reduced by any distributions made to the Participant or the Participant's Beneficiary(ies) therefrom and any charges that may be imposed on such Account pursuant to the terms of the Plan.

**1.2** "**Benchmark Fund**" shall mean one or more of the mutual funds or contracts selected by the Committee pursuant to Section 5.3.1.

**1.3** "**Beneficiary**" means one, some, or all (as the context shall require) of those persons, trusts or other entities designated by a Participant to receive the undistributed value of his or her Account following the Participant's death.

**1.4** "**Benefit Distribution Election**" means the election whereby a Participant may elect an installment distribution pursuant to Section 6.5.2, a planned Distribution Date pursuant to Section 6.3, or an early withdrawal of Benefits pursuant to Section 6.8. Such election shall be made in such manner as may be prescribed by the Committee from time to time.

NNI-0071

**1.5**    "**Benefit(s)**" means the total vested amount credited to a Participant's Account.

**1.6**    "**Board of Directors**" or "**Board**" means the Board of Directors of the Company.

**1.7**    "**Bonus**" shall mean cash amounts, if any, paid under such of the Employer's formal incentive plans included in Total Compensation (excluding any special, one-time bonuses), as may be designated by the Committee as eligible for deferral under the Plan.

**1.8**    "**Bonus Deferral**" means the amount or whole percentage of a Participant's Bonus that the Participant elects to defer pursuant to Article III.

**1.9**    "**Change of Control**" means (a) the purchase or other acquisition by any person(s) or entity(ies), within the meaning of section 13(d) or 14(d) of the Securities Exchange Act of 1934 (the "Act") or any comparable successor provisions, of beneficial ownership (within the meaning of Rule 13d-3 under the Act) of thirty percent (30%) or more of the outstanding shares of common stock or the combined voting power of the Company's outstanding voting securities; (b) the approval by the Company's stockholders of a reorganization, merger or consolidation transaction when after such transaction the Company's stockholders entitled to vote for the transaction own less than fifty percent (50%) of the combined voting power of the surviving or resulting entity owned before such transaction; (c) a dissolution or liquidation of the Company; or (d) the sale of all or substantially all of the Company assets.  Notwithstanding the foregoing, effective as of January 1, 2005, with respect to deferrals or credits made on or after January 1, 2005, Change of Control means (x) a change in ownership resulting from any one person, or more than one person acting as a group, acquiring ownership of stock of the Company that, together with stock held by such person or group, constitutes more than fifty percent (50%) of the total fair market value or total voting power of the stock of the Company; (y) a change in the effective control of the Company resulting from either (i) any one person, or more than one person acting as a group, acquiring (or having acquired during the 12-month period ending on the date of the most recent acquisition by such person or persons) ownership of stock of the Company possessing thirty-five percent (35%) or more of the total voting power of the stock of the Company; or (ii) a majority of members of the Company's Board being replaced during any 12-month period by directors whose appointment or election is not endorsed by a majority of the members of the Company's Board prior to the date of the appointment or election; or (z) a change in the ownership of a substantial portion of the Company's assets occurring on the date that any one person, or more than one person acting as a group, acquires (or has acquired during the 12-month period ending on the date of the most recent acquisition by such person or persons) assets from the Company that have a total gross fair market value equal to or more than forty percent (40%) of the total gross fair market value of all of the assets of the Company immediately prior to such acquisition or acquisitions; provided that the foregoing determinations of a Change of Control shall be limited by and made in accordance with Code Section 409A and any regulations issued and guidance provided by the Department of Treasury under Code Section 409A.

**1.10**    "**Code**" means the Internal Revenue Code of 1986, as amended.

**1.11**    "**Commissions**" means sales incentive earnings, "merit cash" and "skill block awards" or comparable forms of sales commissions otherwise designated.  Effective on and after

January 1, 2005, the Employee earning a Commission is treated as providing the services to which such Commission relates only in the year in which the customer remits payment to the Employer.

**1.12    Commission Deferrals"** means the amount or whole percentage of a Participant's Commission that the Participant elects to defer pursuant to Article III.

**1.13    "Committee"** means the Committee composed of individuals appointed by the Board to administer such employee benefit plans, which shall include the Joint Leadership Resources Committee of the boards of directors of Nortel Networks Corporation and the Company ("JLRC") or such other persons or committees of persons who may be designated by the JLRC to carry out responsibilities under the Plan, including the Administrative Committee of the Plan (as described in Section 9.6 hereof). The Committee shall function as the Plan Administrator and shall interpret and administer this Plan and take such other actions as may be specified herein, in its sole discretion, except to the extent that responsibility for such actions has been delegated to other persons or committees by the Committee or by the Board. If no Committee is appointed, the Board will serve as the Committee.

**1.14    "Company"** means Nortel Networks Limited, a Canadian corporation, and any successor organization thereto.

**1.15    "Company Credit"** means an amount credited to a Participant's Account by the Participant's Employer in its discretion on behalf of a Participant pursuant to Article IV.

**1.16    "Deferral Election"** means the election whereby a Participant elects to make Salary Deferrals, Commission Deferrals, and/or Bonus Deferrals to the Plan. Deferral Elections shall be made in such manner as may be prescribed by the Committee from time to time.

**1.17    "Distribution Date"** means the date on which the distribution of a Participant's Benefits is made or commenced pursuant to Article VI.

**1.18    "Effective Date"** means January 1, 2000, the initial effective date of the Plan. The effective date of this amendment and restatement of the Plan is January 1, 2005.

**1.19    "Eligible Employee"** means an employee who (i) is employed by an Employer that has adopted the Plan, (ii) is on the U.S. payroll of the Employer, and (iii) has been designated by the Board or the Committee, in its sole discretion, as a member of the select group of management or highly compensated employees who are eligible to participate in the Plan.

**1.20    "Employer"** means Nortel Networks Inc. (a U.S. subsidiary of the Company) or any U.S. corporation that would be considered together with Nortel Networks Inc. as a single employer pursuant to Code sections 414(b), (c), (m) or (o).

**1.21    "Entry Date"** means the first day of each Plan Year.

**1.22    "Initial Entry Date"** means January 1, 2000, or, if later, the first Monday of the calendar quarter following the date on which an individual is designated as an Eligible Employee

NNI-0073

to participate in the Plan, but no Initial Entry Date shall be available beginning October 1, 2004, and ending December 31, 2005, with respect to the 2004 or 2005 Plan Years. On or after January 1, 2005, with respect to deferrals made on or after January 1, 2005, Initial Entry Date means (i) with respect to the first year of eligibility, the first business day of the calendar quarter following an election made by a Participant within thirty (30) days after the date the Participant is designated as an Eligible Employee to participate in the Plan, or (ii) with respect to any subsequent year of eligibility, the first day of the Plan Year following an election made by a Participant designated as an Eligible Employee to participate in the Plan.

    **1.23** "**Interest**" means the investment return or loss determined in accordance with Article V, which shall be credited to the Participant's Account.

    **1.24** "**Interest Rate**" has the meaning set forth in Section 5.3.3.

    **1.25** "**Participant**" means an Eligible Employee who has elected to participate in the Plan by submitting a Deferral Election to the Committee. A Participant shall also mean an Eligible Employee for whom Company Credits are made, regardless of whether such Eligible Employee has submitted a Deferral Election. Any employee who (i) was a participant under a Prior Incentive Plan (ii) is not a Participant under this Plan, and (iii) has an Account under this Plan pursuant to Section 5.1, shall be an Inactive Participant. An Inactive Participant shall be deemed to be a Participant for those limited purposes under Articles V through X of this Plan, as the Committee shall determine.

    **1.26** "**Plan**" means this Nortel Networks U.S. Deferred Compensation Plan, as amended and restated as of January 1, 2005, and as it may be amended from time to time in the future.

    **1.27** "**Plan Year**" means the 12-month period beginning on January 1 and ending on December 31 of each calendar year. With respect to the provisions of Sections 3.1, 3.2 and 3.3 hereof concerning deferral elections that may be made as of the first day of a Plan Year, no such deferral elections may be made with respect to the 2005 Plan Year.

    **1.28** "**Salary**" means the base salary paid by the Employer, but shall not include any other form of compensation, whether taxable or non-taxable, including, but not limited to, Bonuses, Commissions, incentive payments, non-monetary awards, disability payments, payments under any severance plan, or other forms of additional compensation, whether or not included as a part of Total Compensation.

    **1.29** "**Salary Deferral**" means the amount or whole percentage of a Participant's Salary that the Participant has elected to defer pursuant to Article III, provided that Salary Deferrals for the 2006 Plan Year shall commence with the first full payroll period in the 2006 Plan Year following commencement of participation.

    **1.30** "**Separation from Service**" means the termination of employment with the Employer, provided that no separation from service shall occur while an Employee is on military leave, sick leave, or other bona fide leave of absence not extending beyond six months, or, if longer, so long as the Employee's right to reemployment is provided either by statute or by

917175 v15
104205-016

- 5 -

NNI-0074

contract. If a period of leave exceeds six months and the Employee's right to reemployment is not provided either by statute or contract, for the purposes of the Plan, the employment relationship is deemed to terminate on the first date immediately following such six-month period.

**1.31** "<u>Specified Employee</u>" means a key employee, as defined in Code Section 416(i) without regard to Section 416(i)(5), of an employer any stock of which is publicly traded on an established securities market or otherwise. The identification date for determining a key employee shall be December 31. For the purposes of this definition, the term employer shall refer to the entity for whom the services are performed by the Specified Employee and with respect to whom the legally binding right to compensation arises together with and all entities with whom such entity would be considered a single employer under Code Section 414(b) or Code Section 414(c).

**1.32** "<u>Termination Date</u>" means the later of (i) the last day of the Participant's employment with all Employers, and (ii) the last day of his "severance period" as determined under the Nortel Networks Severance Allowance Plan or the Nortel Networks EMT Severance Allowance Plan, if applicable.

**1.33** "<u>Total Disability</u>" means a determination by the Social Security Administration that the Participant is totally and permanently disabled and eligible for Social Security disability benefits or a determination by the insurer under the Employer's long-term disability insurance policy that the Participant is disabled and eligible for long-term disability benefits under such policy. Notwithstanding the foregoing, effective as of January 1, 2005, with respect to deferrals or credits made on or after January 1, 2005, the determination by the insurer under the Employer's long-term disability insurance policy shall constitute a Total Disability if such determination is that the Participant is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or can be expected to last for a continuous period of not less than 12 months.

**1.34** "<u>Total Compensation</u>" means the total of all base pay amounts paid to the employee and the total of all other amounts paid by the Employer to or for the benefit of an employee for services actually rendered or labor performed for the Employer. Such amounts shall be those which are required to be reported on the employee's Federal Income Tax Withholding Statement or statements (Form W-2 or its subsequent equivalent), as modified below, and shall include overtime pay, Bonuses paid pursuant to one or more formal incentive bonus programs of Nortel Networks Inc. or Nortel Networks NA Inc. or another Employer (to the extent authorized by the Committee); sales incentive earnings, "merit cash," and "skill block awards" or comparable forms of sales commissions otherwise designated; and second shift differential pay, third shift differential pay, weekend differential pay, and lead pay, subject to the following adjustments and limitations:

   1.34.1 The following shall also be <u>included</u>: (a) elective contributions made on an employee's behalf by the Employer that are not includable in income under Code Sections 125, 402(e)(3), 402(h) or 403(b) and (b) benefits under the Employer's short-term disability and vacation plans;

NNI-0075

1.34.2 The following shall be <u>excluded</u>: (a) reimbursements and other expense allowances; (b) cash and noncash fringe benefits; (c) moving expenses; (d) Employer contributions to or payments from this or any other deferred compensation program (whether or not such program is qualified under Code Section 401(a)); (e) welfare benefits (except as described in section 1.31.1); (f) amounts realized from the receipt or exercise of a stock option that is not an incentive stock option within the meaning of Code Section 422; (g) amounts realized at the time property described in Code Section 83 is freely transferable or no longer subject to a substantial risk of forfeiture; (h) amounts realized as a result of an election described in Code Section 83(b); (i) any amounts realized as a result of a disqualifying disposition within the meaning of Code Section 421(a); (j) benefits under the Employer's severance plans; and (k) any other amounts that receive special tax benefits under the Code but are not hereinafter included.

**1.35** "**Trust**" means the legal entity(ies) created by the Trust Agreement.

**1.36** "**Trust Agreement**" means that trust agreement(s) entered into in connection with this Plan and any amendments thereto. The Trust Agreement is attached to this Plan as <u>Exhibit E</u>.

**1.37** "**Trustee**" means the original Trustee(s) named in the Trust Agreement and any duly appointed successor or successors thereto.

**1.38** "**Year of Service**" means a period of 12 consecutive months during which the Participant is employed by the Employer. Employment commences on the date the Participant first performs an hour of service for the Employer and ends on the date that the Participant's employment is terminated for any reason or on the date the Participant retires, is discharged, is determined to be Totally Disabled or dies.

## ARTICLE II
## ELIGIBILITY

**2.1** **Eligibility.** Eligibility for participation in the Plan shall be limited to Eligible Employees. Individuals who are in this select group shall be notified as to their eligibility to participate in the Plan. Total Compensation shall be a factor taken into account by the Board or the Committee in deciding on the designation of an employee as an Eligible Employee.

**2.2** **Commencement of Participation.** An Eligible Employee shall be eligible and may begin participation in the Plan upon his Initial Entry Date or any subsequent Entry Date thereafter, subject to making a Deferral Election pursuant to Article III. In addition, participation of an Eligible Employee who has not otherwise commenced participation in the Plan shall commence when a Company Credit is made to the Account of such Eligible Employee pursuant to the provisions of Article IV.

**2.3** **Cessation of Participation.** Active participation in the Plan shall end when a Participant's employment with all Employers that have adopted the Plan terminates for any reason or when the Board or the Committee determines, in its sole discretion, to remove such Participant from active participation in the Plan. No contributions to the Plan shall be made with

NNI-0076

respect to Salary, Bonuses or Commissions paid after either such termination or removal date. Notwithstanding the foregoing, (i) no new Salary, Bonus, and/or Commission Deferrals elections shall be permitted from April 1, 2004, to December 31, 2004, with respect to the 2004 Plan Year; and (ii) no Salary, Bonus, and/or Commission Deferrals shall be permitted during and for the 2005 Plan Year, except with respect to Bonuses paid during 2005 for which the Participant elected a deferral prior to December 31, 2004.

## ARTICLE III
## DEFERRALS

### 3.1    Salary Deferrals.

3.1.1    As of the Participant's Initial Entry Date, the Participant may elect to reduce his or her Salary by the amount or whole percentage (up to a maximum of 80% of Salary) set forth in a written and signed Deferral Election that is filed with the Committee. Salary Deferrals shall be subject to the limitations of Section 3.3 below. The Salary Deferral shall not be paid to the Participant, but shall be withheld from the Participant's Salary and an amount equal to the Salary Deferral shall be credited to the Participant's Account.

3.1.2    Each election to make or cease Salary Deferrals shall apply only to Salary earned after the effective date of such election.

3.1.3    A Participant's Salary Deferral may be revoked at any time during the Plan Year. Such revocation shall be effective only with respect to Salary not yet earned. Such Participant may not make further Salary Deferrals to the Plan during the remainder of the Plan Year in which the revocation occurs and during the entire following Plan Year. Notwithstanding the foregoing, effective as of January 1, 2005, with respect to deferrals made on or after January 1, 2005, a Participant's Salary Deferral may not be revoked or modified at any time during the Plan Year.

3.1.4    Except as provided in section 3.1.3, a Participant's Salary Deferral Election may not be modified during the Plan Year. Prior to and effective as of the first day of each Plan Year, a Participant may modify, terminate, or resume Salary Deferrals by filing a new Deferral Election for such Plan Year, provided that the Plan administrator may specify a date by which such actions must be taken. A Participant's Salary Deferral Election for a Plan Year shall terminate as of the last day of that Plan Year.

### 3.2    Commission Deferrals.

3.2.1    As of the Participant's Initial Entry Date, the Participant may elect to reduce his or her Commissions by the amount or whole percentage (up to a maximum of 95%) set forth in a written and signed Deferral Election that is filed with the Committee. Commission Deferrals shall be subject to the limitations of Section 3.4 below. The Commission Deferral shall not be paid to the Participant, but shall be withheld from the Participant's Commissions and an amount equal to the Commission Deferral shall be credited to the Participant's Account.

NNI-0077

3.2.2   Each election to make or cease Commission Deferrals shall apply only to Commissions earned after the effective date of such election.

3.2.3   A Participant's Commission Deferral may be revoked at any time during the Plan Year.  Such revocation shall be effective only with respect to Commissions not yet earned.  Such Participant may not make further Commission Deferrals to the Plan during the remainder of the Plan Year in which the revocation occurs and during the entire following Plan Year.  Notwithstanding the foregoing, effective as of January 1, 2005, with respect to deferrals made on or after January 1, 2005, a Participant's Commission Deferral may not be revoked or modified at any time during the Plan Year.

3.2.4   Except as provided in section 3.2.3, a Participant's Commission Deferral Election may not be modified during the Plan Year.  Prior to and effective as of the first day of each Plan Year, a Participant may modify, terminate, or resume Commission Deferrals by filing a new Deferral Election for such Plan Year, provided that the Plan administrator may specify a date by which such actions must be taken.  A Participant's Commission Deferral Election for a Plan Year shall terminate as of the last day of that Plan Year.

**3.3    Bonus Deferrals.**

3.3.1   As of the Participant's Initial Entry Date, and the first day of each Plan Year thereafter, the Participant may elect to reduce his or her cash Bonus payable with respect to the bonus accrual periods within that Plan Year by the amount or whole percentage (up to a maximum of 95%) set forth in a written and signed Deferral Election form that is filed with the Committee.  Bonus Deferrals shall be subject to the limitation provisions of Section 3.4 below.  The Bonus Deferral shall not be paid to the Participant, but shall be withheld from the Participant's Bonus payments and an amount equal to the Bonus Deferral shall be credited to the Participant's Account.   A "bonus accrual period" shall be a Plan Year or a portion of a Plan Year designated by the Employer as a period for the accrual of a Bonus which is paid after the end of the bonus accrual period.  Notwithstanding the foregoing, those Bonuses relating to Plan Year 2000 that become payable on or after July 1, 2000 shall be eligible for deferral into the Plan by Participants whose Initial Entry Date is on or before January 1, 2000.

3.3.2   Notwithstanding any other provision herein to the contrary, a Participant may make a Bonus Deferral election upon his or her Initial Entry Date only with regard to bonuses that are paid at least six (6) months after the Initial Entry Date with respect to a bonus accrual period that begins on or after the Initial Entry Date.

3.3.3   An election to make Bonus Deferrals shall be irrevocable throughout the Plan Year for which it was made.  A Participant's Bonus Deferral election shall be valid only for the Bonus(es), if any, payable with respect to the Plan Year for which it was made.  A new Bonus Deferral election must be filed each year, provided that the Plan administrator may specify a date by which such election must be made.

**3.4    Limitations on Deferrals.**   A Participant's Salary Deferrals, Bonus Deferrals, and Commission Deferrals shall be limited as follows:

NNI-0078

3.4.1   A Participant must defer a minimum of $5,000 each Plan Year. This minimum deferral amount may be satisfied by Salary Deferrals, Bonus Deferrals, Commission Deferrals, or a combination thereof. In the event the total deferral in a Plan Year is less than $5,000, the amount deferred during that Plan Year shall be treated as an amount deferred under the Plan until a specified time. In such case, the deferral amount shall be distributed to the Participant by no later than December 31 of the Plan Year following the Plan Year in which the deferrals were made.

3.4.2   The Participant's Salary, Bonus, and/or Commission Deferral elections shall be reduced to the extent that any remaining Salary, Bonus, and/or Commission (as applicable) is insufficient to satisfy applicable income and employment tax withholding obligations and FICA contributions, garnishments, or other amounts required to be withheld by applicable law or court order, or contributions under the Employer's employee stock purchase plan and other welfare benefit plans.

3.4.3   Any salary deferral elections or discretionary profit sharing contributions made under the Employer's 401(k) plan shall be determined based on the Participant's compensation after reduction for the Salary Deferral, Bonus Deferral and/or Commission Deferral Contributions to this Plan.

3.4.4   Notwithstanding the foregoing, (i) no new Salary, Bonus, and/or Commission Deferrals elections shall be permitted from April 1, 2004, to December 31, 2004, with respect to the 2004 Plan Year; and (ii) no Salary, Bonus, and/or Commission Deferrals shall be permitted during and for the 2005 Plan Year, except with respect to Bonuses paid during 2005 for which the Participant elected a deferral prior to December 31, 2004.

**3.5   Time for Making Deferral Elections.**   A Deferral Election for a Participant's initial participation must be received by the Committee at least fifteen (15) days prior to the Participant's Initial Entry Date and shall be effective as soon as administratively feasible after the properly completed Deferral Election is received by the Committee. A Deferral Election for any subsequent Plan Year must be received by the Committee at least fifteen (15) days prior to the first day of such Plan Year (or such other time as the Committee may specify) and shall be effective for the first pay period which begins in the Plan Year for which such election is made. Notwithstanding the foregoing, effective as of January 1, 2005, (i) with respect to deferrals made on or after January 1, 2005, in the case of the first year in which a Participant becomes eligible to participate in the Plan, such Participant's election must be made (with respect to services to be performed subsequent to the election) within thirty (30) days after the date the Participant becomes eligible to participate in the Plan; and (ii) in addition, with respect to any Bonus Deferrals that constitute performance-based compensation (as such term is used under Code Section 409A and defined in any regulations issued and guidance provided by the Department of Treasury under Code Section 409A), such Participant's election must be made no later than six (6) months before the end of the period for which such the Bonus is earned.

**3.6   Vesting.**   Salary Deferrals, Bonus Deferrals, Commission Deferrals and the Interest credited to the Participant's Account with respect thereto shall be 100% vested at all times.

NNI-0079

## ARTICLE IV
## COMPANY CREDITS

**4.1** **Company Credits.**   In addition to Salary, Bonus, and Commission Deferrals, a Participant's Account shall be credited with such amounts and at such times as the Participant's Employer may, in its sole discretion, determine and communicate to the Participant. The Employer shall be under no obligation to continue to make Company Credits and may discontinue or change the amount or method of calculating the amount of such Company Credits at any time.

**4.2** **Vesting.**   Company Credits and the Interest credited to the Participant's Account with respect thereto shall be 100% vested at all times, unless otherwise specified by the Employer making such contribution, in its sole discretion.

## ARTICLE V
## ACCOUNTS

**5.1** **Account.**   An Account shall be established and maintained for each Participant. The Participant's Account shall be credited with the Participant's Salary Deferrals, Bonus Deferrals, Commission Deferrals and Company Credits, if any, made on behalf of each Participant. In addition, the amount, if any, credited as of December 31, 1999 to a Participant's account pursuant to the Prior Incentive Plans and amounts credited under other similar plans maintained by Employers prior to the date that the Employer adopts the Plan (to the extent approved by the Committee) shall be credited to such Participant's Account under this Plan. The Participant's Account shall be credited (debited) with the applicable Interest, as set forth in Section 5.2. The Participant's Account shall be reduced by distributions therefrom and any charges which may be imposed on the Account pursuant to the terms of the Plan.

**5.2** **Interest Credited to Accounts at Least Monthly.**   Each Account shall be credited (debited) monthly, or more frequently as the Committee may specify, in an amount equal to the Account balance on the last day of the prior accounting period multiplied by the Interest Rate.

**5.3** **Determination of Interest Rate.**

5.3.1   The Committee shall designate the particular funds or contracts which shall constitute the Benchmark Funds, and may, in its sole discretion, change or add to the Benchmark Funds; provided, however, that the Committee shall notify the Participants of any such change prior to the effective date thereof.

5.3.2   Each Participant may select among the Benchmark Funds and specify the manner in which his or her Account shall be deemed to be invested, solely for purposes of determining the Participant's Interest Rate. The Committee shall establish and communicate the rules, procedures and deadlines for making and changing Benchmark Fund selections. The Company shall have no obligation to acquire investments corresponding to the Participant's Benchmark Fund selections.

NNI-0080

5.3.3   The Interest Rate is the investment return, net of administrative fees and investment management fees and other applicable fees or charges for a specified accounting period, of the Benchmark Fund(s) designated by Participant and other applicable fees or charges. The Interest Rate may be negative if the applicable Benchmark Fund(s) sustained a loss during the specified accounting period.

**ARTICLE VI**
**BENEFIT DISTRIBUTIONS AND ACCOUNT WITHDRAWALS**

**6.1     Benefit Amount**.   The value of the Participant's Benefit shall be as determined under this Section 6.1. If the distribution is made as a result of the Participant's Separation from Service or Total Disability, the value of the Participant's Benefit shall equal to the vested value of the Participant's Account on the last day of the calendar quarter following the Termination Date or Total Disability and prior to the Distribution Date. If the distribution is made as a result of a planned benefit distribution pursuant to Section 6.3, the value of the Participant's Benefit shall equal to the vested value of the Participant's Account on the last day of the calendar year prior to the Distribution Date. If the distribution is made as a result of any reason other than foregoing, the value of the Participant's Benefit shall equal to the vested value of the Participant's Account on the last day of the calendar month prior to the Distribution Date. The value of the Participant's Benefit shall be adjusted in any case for any Salary, Bonus or Commission Deferrals or withdrawals that have been subsequently credited thereto or made therefrom prior to the Distribution Date.

**6.2     Timing of Distributions**.   Except to the extent otherwise permitted under Code Section 409A and any regulations issued and guidance provided by the Department of Treasury under Code Section 409A, benefits shall be paid (or installment payments shall commence) within ninety (90) days after:

6.2.1   In the case of Separation from Service, the first day of the month following the end of the calendar quarter in which the Participant's Termination Date occurs; or

6.2.2   In the case of a specified distribution, the last day of the year for which the specified date occurs in accordance with Section 6.3; or

6.2.3   With respect to deferrals or credits for Plan Years prior to January 1, 2005, the date that the Plan is terminated in accordance with Section 9.4, and with respect to deferrals or credits for Plan Years beginning on or after January 1, 2005, the date the Plan is terminated in accordance with Section 9.4 to the extent permitted under Code Section 409A and any regulations issued and guidance provided by the Department of Treasury under Code Section 409A; provided, however, that for purposes of this Section 6.2., a Participant shall not be considered to terminate employment if he or she continues employment with any Employer (regardless of continued eligibility to make deferrals into the Plan).

6.2.4   Effective as of January 1, 2005, payments shall be delayed as provided in Section 6.10, in the event that payments would violate a loan covenant or similar contractual arrangement of an Employer and such violation would cause material harm to the Employer, in the event payments would violate Federal securities laws or other applicable laws, or such other

NNI-0081

events and conditions as the Commissioner of the Internal Revenue Service shall prescribe in generally applicable guidance published in the Internal Revenue Bulletin.

**6.3     Planned Benefit Distributions.**

6.3.1     Three-Year Advance Election.     A Participant may elect a Distribution Date by filing a Benefit Distribution Election at such time and in such manner as the Committee shall specify.  Such Benefit Distribution Election shall specify a Distribution Date that is at least three years after the date the Benefit Distribution Election is received by the Committee. Except as otherwise provided in this Article VI, the Benefit Distribution Election shall apply to the Participant's Salary Deferrals, Bonus Deferrals, and Commission Deferrals and shall also apply to Company Credits except to the extent the Employer has specified otherwise, for the Plan Year(s) specified in the Benefit Distribution Election and the Interest credited thereto until the Distribution Date, or to such lesser dollar amount as may be specified in the Benefit Distribution Election.

6.3.2     Amendment of Benefit Distribution Election.     A Participant may amend a Benefit Distribution Election by filing an amended Benefit Distribution Election at least twelve (12) months in advance of the Distribution Date specified in the prior Benefit Distribution Election.  Any new Distribution Date elected in an amended Benefit Distribution Election must be a date later than the Distribution Date specified in the prior Benefit Distribution Election that is being amended.  A Participant may amend any individual Benefit Distribution Election no more than twice in such Participant's lifetime.  Notwithstanding the foregoing, effective as of January 1, 2005, with respect to deferrals or credits made on or after January 1, 2005, to the extent required under Code Section 409A and any regulations issued and guidance provided by the Department of Treasury under Code Section 409A, the Plan will require that the first payment with respect to which a new election is made be deferred for a period of not less than 5 years from the date such payment would otherwise have been made.

6.3.3     Termination Before the Planned Distribution Date.     Notwithstanding any prior Benefit Distribution Election, if the employment of a Participant by all Employers terminates for any reason before his elected Distribution Date, distribution of the Participant's Account shall commence by the first day of the month following the end of the quarter in which the Participant's Termination Date occurs, except to the extent otherwise permitted under Code Section 409A and any regulations issued and guidance provided by the Department of Treasury under Code Section 409A.

**6.4     Distribution Following a Change of Control**.     In the event of a Change of Control, as defined in Section 1.9, the Committee may decide, in its sole discretion, that the Plan shall be terminated and all Accounts shall be distributed as soon as administratively feasible after the termination date of the Plan.  Notwithstanding the foregoing, effective as of January 1, 2005, with respect to deferrals or credits made on or after January 1, 2005, the determination of a Change of Control event will be objectively determinable according to the terms of the Plan, and the Committee shall not have discretionary authority to determine whether a Change in Control has occurred.  In the event of a Change of Control event on or after January 1, 2005, Accounts shall be distributed only in accordance with the terms of the Plan as amended and restated as of

917175 v15
104205-016

- 13 -

January 1, 2005. Effective as of January 1, 2005, distribution of benefits following a Change of Control shall be made no later than (i) December 31 of the year of the Change of Control, or (ii) 3 months following the Change of Control.

**6.5     Form of Distribution of Benefits.**

      6.5.1   Lump Sum Payments.   Unless the Participant elects an installment distribution as provided in Section 6.5.2 below, the Participant's Benefits shall be distributed in a single lump sum payment.

      6.5.2   Election to Receive Installment Payments.   Notwithstanding the provisions of paragraph 6.5.1, a Participant who so elects, and who satisfies the requirements set forth in this Section 6.5.2 at the relevant time, may receive his or her Benefits in quarterly installments as specified below.

      6.5.2.1   A Participant may receive the Benefit in 20, 40, or 60 installments (as elected by the Participant) if the balance of the Participant's Account exceeds $25,000, and either (a) or (b) applies: (a) the Participant has completed at least five Years of Service for the Employer, and benefits are payable on account of a Separation from Service after the Participant has attained age 55; or (b) Benefits are payable as a result of the Participant's Total Disability.   Effective as of January 1, 2005, distribution of benefits following a Participant's Total Disability shall be made within ninety (90) days after the first day of the month following the end of the calendar quarter in which the Participant's Total Disability occurs.

      6.5.2.2   A Participant may receive the Benefit in 20 installments if the Participant has completed at least ten (10) Years of Service.

      6.5.2.3   An election to receive installments may be made, revoked, or amended by filing a written Benefit Distribution Election, in the form required by the Committee, at least one year in advance of the Distribution Date.

      6.5.2.4   For purposes of this Section 6.5.2, installment payments shall be substantially equal payments. The amount of the quarterly payments shall be adjusted each year to account for deemed earnings and/or losses. Effective as of January 1, 2005, installment payments shall be treated as a single payment for the purposes of Code Section 409A and the applicable regulations thereunder.

      6.5.2.5   Notwithstanding the foregoing, effective as of January 1, 2005, with respect to deferrals or credits made on or after January 1, 2005, the Plan will not permit the acceleration of the time or schedule of any payment under the Plan, except as provided in Code Section 409A and any regulations issued and guidance provided by the Department of Treasury under Code Section 409A, and, in the case of any subsequent election to delay payment or change the form of payment related to a Separation from Service, payment at a specified time or pursuant to a fixed schedule (pursuant to Section 6.3.1 or otherwise), or Change of Control, the Plan will require that the first payment with respect to which such election is made be deferred

NNI-0083

for a period of not less than five (5) years from the date such payment would otherwise have been made, and any election related to a payment at a specified time or pursuant to a fixed schedule shall not be made less than twelve (12) months prior to the date the first installment amount was scheduled to be paid, except to the extent otherwise permitted under Code Section 409A and any regulations issued and guidance provided by the Department of Treasury under Code Section 409A.

6.5.2.6   If a Participant has elected to receive installments but is not eligible to receive the number of installments permitted under Section 6.5.2.1 or 6.5.2.2, distributions will be made over the longest distribution period permitted under this Section 6.5.

**6.6   Method of Distribution Following Plan Termination.**   Generally, all Benefits shall be paid in a lump sum cash payment following termination of the Plan as provided for under Section 9.4.  Notwithstanding the foregoing, if a lump sum payment will result in an "excess parachute payment" to a Participant, as that term is defined in the Code, the Committee, in its sole discretion, may determine that such Participant's Account shall be paid by some other method.  Notwithstanding the foregoing, effective as of January 1, 2005, except to the extent otherwise permitted under Code Section 409A and any regulations issued and guidance provided by the Department of Treasury under Code Section 409A, the Plan will only permit an acceleration of the time and form of a payment where the right to the payment arises in accordance with one of the following: (i) the termination of the Plan within 12 months of a corporate dissolution under Code Section 331 or with the approval of a bankruptcy court pursuant to 11 U.S.C. 503(b)(1)(A); (ii) the termination of the Plan within the 30 days preceding or the 12 months following a Change in Control, provided that all substantially similar arrangements sponsored by the Employer are terminated so that the Participant in the Plan and all participants under substantially similar arrangements are required to receive all amounts of compensation deferred under the terminated arrangements within 12 months of the date of termination of the arrangements; (iii) the termination of the Plan together with all arrangements sponsored by the Employer that are required to be aggregated with any terminated arrangement under the regulations to Code Section 409A, provided that no payments other than payments that would be payable under the terms of the arrangements if the termination had not occurred are made within 12 months of the termination of the arrangements, all payments are made within 24 months of the termination of the arrangements, and the Employer does not adopt a new arrangement that would be aggregated with any terminated arrangement under the regulations to Code Section 409A if the same Employer participated in both arrangements at any time within five years following the date of termination of the arrangement; and (iv) such other events and conditions as the Commissioner may prescribe in generally applicable guidance published in the Internal Revenue Bulletin.  Effective as of January 1, 2005, distribution of benefits following termination of the Plan as provided for above shall be made no later than (i) December 31 of the year of termination, or (ii) 3 months following termination.

**6.7   Death Benefits.**   If a Participant dies before his Benefit payments have commenced, then such Participant's Benefits shall be paid to his designated Beneficiary in a lump sum cash payment as soon as administratively feasible after the Committee is notified of the Participant's death and receives evidence satisfactory to it thereof.  If a Participant dies after

917175 v15
104205-016

- 15 -

his Benefit payments have commenced but before his or her Benefits have been fully distributed, the Participant's remaining Benefits shall, except as otherwise permitted, be paid to his or her Beneficiary in the same manner, frequency and duration as they would otherwise have been payable to the Participant. Effective as of January 1, 2005, distribution of the death benefit shall be made no later than one year after the date of death, except to the extent otherwise permitted under Code Section 409A and any regulations issued and guidance provided by the Department of Treasury under Code Section 409A.

   **6.8    Early Withdrawal.**    Notwithstanding any other provision of the Plan, a Participant or Beneficiary (including a Participant or Beneficiary in pay status) may withdraw ninety percent (90%) (but not less than 90%) of the total amount of his or her vested Benefits at any time. The amount so withdrawn shall be paid in a single lump sum. Upon such withdrawal, the remaining ten percent (10%) of the total Benefits and any unvested Benefits shall be forfeited and the Participant shall have no further right thereto. A Participant making such withdrawal shall be prohibited from making any further Salary Deferrals, Bonus Deferrals, or Commission Deferrals pursuant to the Plan and no Company Credits shall be made to the Participant's Account for the remainder of the Plan Year in which an early withdrawal occurs and for the entire Plan Year thereafter. A Participant shall be permitted to take a maximum of two early withdrawals. Notwithstanding the foregoing, effective as of January 1, 2005, no early withdrawals shall be permitted to the extent required under Code Section 409A and any regulations issued and guidance provided by the Department of Treasury under Code Section 409A.

   **6.9    Financial Hardship Withdrawal.**    With the consent of the Committee, a Participant or Beneficiary (including a Participant or Beneficiary in pay status) may withdraw up to one hundred percent (100%) of his or her vested Benefits as may be required to meet an unforeseeable emergency of the Participant. Such hardship distribution shall be subject to the following provisions:

   6.9.1    The hardship withdrawal must be necessary, in the sole discretion of the Committee, to satisfy the unforeseeable emergency.

   6.9.2    The amount of the financial hardship withdrawal shall not exceed the amount reasonably required to relieve the financial need after taking into account other resources that are reasonably available to the Participant for this purpose. Notwithstanding the foregoing, effective as of January 1, 2005, with respect to deferrals or credits made on or after January 1, 2005, the amounts distributed with respect to an emergency shall not exceed the amounts necessary to satisfy such emergency plus amounts necessary to pay taxes reasonably anticipated as a result of the distribution, after taking into account the extent to which such hardship is or may be relieved through reimbursement or compensation by insurance or otherwise or by liquidation of the participant's assets (to the extent the liquidation of such assets would not itself cause severe financial hardship).

   6.9.3    The Participant must certify that the financial need cannot be relieved: (i) through reimbursement or compensation by insurance or otherwise; (ii) by reasonable liquidation of the Participant's assets, to the extent such liquidation would not itself cause an

NNI-0085

immediate and heavy financial need; (iii) by discontinuing the Participant's Salary and Bonus Deferrals; or (iv) by borrowing from commercial sources on reasonable commercial terms.

6.9.4    An "unforeseeable emergency" is defined as a severe financial hardship to the Participant resulting from a sudden and unexpected illness or accident of Participant or of a dependent of Participant (as defined in section 152(a) of the Code), loss of Participant's property due to casualty, or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of Participant. Neither the need to pay tuition expenses on behalf of the Participant or the Participant's spouse or children nor the desire to purchase a home shall be considered an unforeseeable emergency.

6.9.5    The Committee, in its sole discretion, shall determine if there is an unforeseeable emergency, if the Participant has other resources to satisfy such emergency and the amount of the hardship withdrawal that is required to alleviate the Participant's financial hardship.

6.9.6    A Participant shall be prohibited from making any further Salary Deferrals, Bonus Deferrals and Commission Deferrals and the Participant's Employer shall not make any Company Credits pursuant to the Plan for the remainder of the Plan Year in which a financial hardship withdrawal occurs and for the entire Plan Year thereafter; however, effective as of January 1, 2005, the deferral election will be cancelled and not postponed or otherwise delayed such that any later deferral election will be subject to the provisions governing initial deferral elections under the Plan.

6.9.7    Notwithstanding the foregoing, effective as of January 1, 2005, with respect to deferrals or credits made on or after January 1, 2005, eligibility for a hardship withdrawal shall be determined in accordance with Code Section 409A and any regulations issued and guidance provided by the Department of Treasury under Code Section 409A.

6.9.8    Effective as of January 1, 2005, distribution of benefits following a hardship shall be made no later than one year after the hardship, except to the extent otherwise permitted under Code Section 409A and any regulations issued and guidance provided by the Department of Treasury under Code Section 409A.

**6.10    Limitation on Distributions to Covered Employees.**    Notwithstanding any other provision of this Article VI, in the event that the Participant is a "covered employee" as that term is defined in section 162(m)(3) of the Code, or would be a covered employee if Benefits were distributed in accordance with his or her Benefit Distribution Election or early withdrawal request, the maximum amount which may be distributed from the Participant's Account in any Plan Year shall not exceed one million dollars ($1,000,000) less the amount of compensation paid to the Participant in such Plan Year which is not "performance-based" (as defined in Code section 162(m)(4)(C)), which amount shall be reasonably determined by the Committee at the time of the proposed distribution. Any amount that is not distributed to the Participant in a Plan Year as a result of this limitation shall be distributed to the Participant in the next Plan Year, subject to compliance with the limitation set forth in this Section 6.10. Effective as of January 1, 2005, a payment delayed due to the limitation under Code Section 162(m)(3) shall be made at the earliest date at which the Employer reasonably anticipates that the deduction

NNI-0086

of the payment of the amount will not be limited or eliminated by the application of Code Section 162(m)(3) or the calendar year in which the Employee Separates from Service. Notwithstanding the foregoing, effective as of January 1, 2005, with respect to deferrals or credits made on or after January 1, 2005, in the case of any subsequent election to delay payment or change the form of payment related to a Separation from Service, payment at a specified time or pursuant to a fixed schedule (pursuant to Section 6.3.1 or otherwise), or Change of Control, the Plan will require that the first payment with respect to which such election is made be deferred for a period of not less than five (5) years from the date such payment would otherwise have been made, and any election related to a payment at a specified time or pursuant to a fixed schedule shall not be made less than twelve (12) months prior to the date the first installment amount was scheduled to be paid, except to the extent otherwise permitted under Code Section 409A and any regulations issued and guidance provided by the Department of Treasury under Code Section 409A.

**6.11    Tax Withholding**.  Distribution and withdrawal payments under this Article VI shall be subject to all applicable withholding requirements for federal, state, local and foreign income taxes and to any other federal, state, local or foreign taxes that may be applicable to such payments.

**6.12    Distributions After January 1, 2005**.  Notwithstanding the foregoing, effective as of January 1, 2005, with respect to deferrals or credits made on or after January 1, 2005, distributions shall be permitted upon Separation from Service, Total Disability, death, the specified time provided for pursuant to Section 6.3.1, a Change of Control, or an unforeseeable emergency. However, in the case of any Specified Employee who has separated from service, distributions may not be made before the date that is six (6) months after the date of Separation from Service (or, if earlier, the date of death of the employee). In the case of a Specified Employee, payments to which the Specified Employee would otherwise be entitled during the first six months following the date of Separation from Service shall be accumulated and paid on the first date of the seventh month following the date of Separation from Service.

### ARTICLE VII
### BENEFICIARIES

**7.1    Designation of Beneficiary**.  The Participant shall have the right to designate on such form as may be prescribed by the Committee, one or more Beneficiaries to receive any Benefits due under Article VI which may remain unpaid on the date of the Participant's death. The Participant shall have the right at any time to revoke such designation by written notice on such form as may be prescribed by the Committee and to substitute one or more other Beneficiaries.

**7.2    No Designated Beneficiary**.  If, upon the death of the Participant, there is no valid Beneficiary designation, the Beneficiary shall be the Participant's surviving spouse. In the event there is no surviving spouse, then the Participant's Beneficiary shall be the Participant's estate.

## ARTICLE VIII
## TRUST OBLIGATION TO PAY BENEFITS

**8.1**  **Deferrals Transferred to the Trust**.  The Company and the Employers that have adopted the Plan may transfer assets with respect to Salary Deferrals, Bonus Deferrals, Commission Deferrals or Company Credits, if any, made by or on behalf of a Participant under this Plan or an interim agreement to the Trustee to be held pursuant to the terms of the Trust Agreement.

**8.2**  **Source of Benefit Payments**.  With respect to all deferrals regarding Salary, Commissions and Bonuses payable with respect to, and all Company Credits and Interest attributable to, the period ending on March 12, 2000, all benefits payable to a Participant hereunder shall be paid by the Trustee to the extent of the assets held in the Trust by the Trustee, and by the applicable Employer of the Participant to the extent the assets in the Trust are insufficient to pay a Participant's Benefits as provided under this Plan.  With respect to all deferrals regarding Salary, Commissions and Bonuses payable with respect to, and all Company Credits and Interest attributable to, the period commencing on March 13, 2000, all benefits payable to a Participant shall be paid by or at the direction of the Company.

**8.3**  **Investment Discretion**.  The Benchmark Funds established pursuant to Section 5.3 shall be for the sole purpose of determining the Interest Rate to be used for determining the Interest credited to the Participant's Account.  Neither the Trustee, the Company, nor any Employer shall have any obligation to invest the Participant's Account in accordance with his or her deemed investment directions or in any other investment.

**8.4**  **No Secured Interest**.  Except as otherwise provided by the Trust Agreement, the assets of the Trust shall be subject to the claims of creditors of the Employers.  Except as provided in the Trust Agreement, the Participant (or the Participant's Beneficiary) shall be a general unsecured creditor of the Employers and the Company with respect to the payment of the respective Benefits provided by the Employers and the Company as described under Section 8.2 of this Plan.

## ARTICLE IX
## PLAN ADMINISTRATION, AMENDMENT AND TERMINATION

**9.1**  **Powers and Responsibilities**.  The Company, or the Committee to the extent that the Company delegates such responsibilities to the Committee, shall have complete control of the administration of the Plan herein set forth with all powers necessary to enable it properly to carry out its duties in that respect.  If the Company has not delegated a particular power to the Committee, wherever the Plan states that the Committee has authority to take an action that has not been delegated, the term Committee in such circumstance shall be deemed to mean the Company.  Not in limitation, but in amplification of the foregoing, the Company or the Committee as its delegate shall have the power and authority to:

9.1.1  Construe the Plan and Trust Agreement to determine all questions that shall arise as to interpretations of the Plan's provisions including determination of which

917175 v15
104205-016

NNI-0088

individuals are Eligible Employees and the determination of the amounts credited to a Participant's Account, and the appropriate timing and method of Benefit payments;

9.1.2 Establish reasonable rules and procedures which shall be applied in a uniform and nondiscriminatory manner with respect to Deferral Elections and Benefit Distribution Elections;

9.1.3 Require, as a condition to any distribution as to which the Committee believes there may be conflicting legal claims, that the recipient provide, as a condition to receiving the distribution, an indemnification of the Plan, Trust, Trustee and Committee in such form as the Company may specify;

9.1.4 Establish rules and procedures by which the Plan will operate that are consistent with the terms of the Plan documents;

9.1.5 Compile and maintain all records it determines to be necessary, appropriate or convenient in connection with the administration of the Plan;

9.1.6 Employ such persons or organizations to render service or perform services with respect to the administrative responsibilities of the Committee under the Plan as the Committee determines to be necessary and appropriate, including but not limited to attorneys, accountants, and benefit, financial and administrative consultants;

9.1.7 Allocate its responsibilities among its members and designate other persons (or committee(s) of persons) to carry out its responsibilities under the Plan; and

9.1.8 Take such other action as may be necessary or appropriate to the management and investment of the Plan assets.

**9.2    Decisions of the Committee.**  Decisions of the Company or the Committee made in good faith upon any matter within the scope of its authority shall be final, conclusive and binding upon all persons, including Participants and their legal representatives or Beneficiaries. Any discretion granted to the Committee shall be exercised in accordance with rules and policies established by the Company or the Committee.

**9.3    Plan Amendment.**  This Plan may be amended by the Company at any time in its sole discretion.  However, no amendment may be made that alters the nature of a Deferral Election or Benefit Distribution Election or which would reduce the amount credited to a Participant's Account on the date of such amendment; and provided further that no amendment that affects the Trustee's duties and obligations under the Plan may be made without the Trustee's consent.  Furthermore, no amendment shall be effective if it would result in a material modification of the Plan and arrangement in place as of October 3, 2004, with respect to deferrals or credits made prior to January 1, 2005.

**9.4    Plan Termination.**  The Company reserves the right to terminate the Plan in its entirety at any time upon fifteen (15) days notice to the Participants. The termination of the Plan shall automatically revoke all outstanding Benefit Distribution Elections and all elections to have

NNI-0089

Benefits paid in installments. If the Plan is terminated, all benefits shall be paid as set forth in Section 6.6. Any amounts remaining in the Trust after all benefits have been paid shall revert to the Employer. Notwithstanding the foregoing, in the event of a Change of Control, the Plan may be terminated in the sole discretion of the Committee. Notwithstanding the foregoing, effective as of January 1, 2005, with respect to deferrals or credits made on or after January 1, 2005, the Plan will not permit an acceleration of the time and form of payment arising from the termination of the Plan except as provided in Section 6.6.

     **9.5**    **Additional Power and Responsibility Following a Change of Control.**  In the event of a Change of Control, the Plan may be amended only by a unanimous vote of the Committee. Additionally, the successor to the Company shall have no right to dismiss any member of the Committee or add members to the Committee without the express unanimous consent of the Committee members. Such limitations on the rights of any successor Corporation or business entity shall take effect on the date of the Change of Control and shall remain in effect for a period of 12 months following the Change of Control unless the Committee unanimously agrees to withdraw these limitations earlier.

     **9.6**    **Submission of Claims.**  All claims for benefits under the Plan, including early withdrawals and financial hardship withdrawals, shall be directed in writing to the attention of the Company. If the Company in its sole discretion determines that any individual who has claimed a right to receive benefits under the Plan is not entitled to receive all or any part of the benefits claimed, it shall inform the claimant by certified mail or by electronic notification of its determination and the reasons therefore in a manner calculated to be understood by the claimant. Such notification shall be given within a reasonable period of time, but not later than ninety (90) days after receipt of the claim by the Company, unless the Company determines that special circumstances require an extension of time for processing the claim. If the Company determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial ninety (90) day period. In no event shall such extension exceed a period of ninety (90) days from the end of such initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Plan expects to render the benefit determination.   Such notification shall set forth, in a manner calculated to be understood by the claimant: (i) the specific reason or reasons for the adverse determination; (ii) reference to the specific plan provisions on which the determination is based; (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; (iv) a description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

Appeal of Denied Claims. Following an initial adverse decision by the Company concerning a claim for benefits, a claimant may appeal such determination within sixty (60) days of receipt of the notification of the adverse benefit determination. A claimant who appeals a denied claim may submit to the Administrative Committee of the Plan written comments, documents, records, and other information relating to the claim for benefits. Such Administrative Committee shall be appointed by the JLRC to discharge this responsibility and shall consist of no less than two (2) and no more than five (5) persons as determined at the discretion of the JLRC. The claimant

NNI-0090

shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. A document, record, or other information is "relevant" to a claim for benefits if it: (i) was relied upon in making the benefit determination; (ii) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; or (iii) demonstrates compliance with the administrative processes and safeguards required by ERISA and the applicable regulations in making the benefit determination. The review of such an appeal by the Administrative Committee of the Plan shall take into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

The Administrative Committee of the Plan shall make a decision on the claimant's appeal no later than the date of the meeting of the Administrative Committee that immediately follows the Plan's receipt of a request for review, unless the request for review is filed within thirty (30) days preceding the date of such meeting. In such case, a benefit determination may be made by no later than the date of the second meeting following the Plan's receipt of the request for review. If special circumstances require a further extension of time for processing, a benefit determination shall be rendered not later than the third meeting of the Administrative Committee following the Plan's receipt of the request for review. If such an extension of time for review is required because of special circumstances, the Administrative Committee shall provide the claimant with written notice of the extension, describing the special circumstances and the date as of which the benefit determination will be made, prior to the commencement of the extension. The Administrative Committee shall notify the claimant of the benefit determination as soon as possible, but not later than five (5) days after the benefit determination is made.

If the Administrative Committee in its sole discretion determines that any individual who has filed an appeal of an initial adverse benefit determination is not entitled to receive all or any part of the benefits claimed, it shall inform the claimant by certified mail or by electronic notification of its determination and the reasons therefore in a manner calculated to be understood by the claimant. Such notification shall set forth, in a manner calculated to be understood by the claimant: (i) the specific reason or reasons for the adverse determination; (ii) reference to the specific plan provisions on which the determination is based; (iii) a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits; and (iv) a statement of the claimant's right to bring a civil action under section 502(a) of ERISA. A document, record, or other information is "relevant" to a claim for benefits if it: (i) was relied upon in making the benefit determination; (ii) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; or (iii) demonstrates compliance with the administrative processes and safeguards required by ERISA and the applicable regulations in making the benefit determination.

104205-016

- 22 -

NNI-0091

## ARTICLE X
## MISCELLANEOUS

**10.1    No Assignment**.    The right of any Participant, any Beneficiary, or any other person to the payment of any benefits under this Plan shall not be subject to assignment, transfer, pledge, garnishment, alienation, anticipation or encumbrance.

**10.2    Successors**.    This Plan shall be binding upon and inure to the benefit of the Company, each Employer, their successors and assigns and the Participant and his or her heirs, executors, administrators and legal representatives.

**10.3    No Employment Agreement**.    Nothing contained herein shall be construed as conferring upon any Participant the right to continue in the employ of the Employer as an employee.

**10.4    Governing Law**.    This Plan shall be construed in accordance with and governed by the laws of the State of Tennessee.

**10.5    Entire Agreement**.    This Plan constitutes the entire understanding and agreement with respect to the subject matter contained herein, and there are no agreements, understandings, restrictions, representations or warranties among any Participant and the Company other than those as set forth or provided for herein.

917175 v15
104205-016

NNI-0092

IN WITNESS WHEREOF, this amended Plan is executed on $\underline{Dec. 5^{th}}$, 2005, to be effective as of January 1, 2005.

Nortel Networks Limited

By: _____
W. J. Donovan

By: _____
William J. LaSalle
General Counsel - Operations

917175 v15
104205-016

- 24 -

NNI-0093

## Exhibit List

A.    Bay Networks, Inc. Deferred Compensation Plan

B.    Northern Telecom Inc. Agreement Regarding the Deferral Option of the Senior Management Incentive Award Plan and the Executive Management Incentive Plan

C.    The Nortel Networks U.S. Deferred Compensation Plan, restated as of January 1, 2000

D.    The Nortel Networks U.S. Deferred Compensation Plan, restated as of March 13, 2000

E.    The Nortel Networks U.S. Deferred Compensation Plan, restated as of January 1, 2001

F.    Trust Agreement

NNI-0094