**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------- X
                                                    :
In re                                               :    Chapter 11
                                                    :
Nortel Networks Inc., et al.,¹                      :    Case No. 09-10138 (KG)
                                                    :
                              Debtors.              :    Jointly Administered
                                                    :
                                                    :    Hearing date: February 9, 2012 at 10:00 a.m. (ET)
                                                    :    Objections due: February 2, 2012 at 4:00 p.m. (ET)
-------------------------------------------------- X
```

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR
ENTRY OF AN ORDER (I) APPROVING THE STIPULATION
RESOLVING CLAIMS WITH AVNET INTERNATIONAL (CANADA)
LTD. AND AVNET, INC. (AS SUCCESSORS IN INTEREST TO BELL
MICROPRODUCTS CANADA-TENEX DATA ULC AND BELL
MICROPRODUCTS INC.) AND (II) GRANTING LIMITED RELIEF
FROM THE AUTOMATIC STAY TO EFFECTUATE A SETOFF**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 362,

502, 503(b)(9), 547, 550 and 553 of title 11 of the United States Code (the "Bankruptcy Code")

and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i)

authorizing NNI's entry into and approving a stipulation (the "Stipulation") with Avnet

International (Canada) Ltd. ("Claimant"), as successor in interest to Bell Microproducts Canada-

Tenex Data ULC ("Bell Canada"), and Avnet, Inc. ("Avnet"), as successor in interest to Bell

---

¹        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their
petitions are available at http://dm.epiq11.com/nortel.

1

Microproducts Inc., ("Bell"), attached hereto as **Exhibit B**, which resolves Claimant's claims

against NNI including authorizing and approving the setoff of prepetition amounts; (ii) granting

limited relief from the automatic stay to effectuate the setoff; and (iii) granting them such other

and further relief as the Court deems just and proper.  In support of this Motion, the Debtors

respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 362, 502,

503(b)(9), 547, 550 and 553 of the Bankruptcy Code and Bankruptcy Rule 9019.

### Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code
on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases
for procedural purposes [D.I. 1098].

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration

(the "English Proceedings") under the control of individuals from Ernst & Young LLP

(collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the

future may commence additional creditor protection, insolvency and dissolution proceedings

around the world.

      6.      Since the Petition Date, Nortel has sold its business units and other assets to

various purchasers.  For further information regarding these chapter 11 cases, reference may be

made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

### Relief Requested

      7.      By this Motion, the Debtors seek an order, pursuant to sections 105(a), 362, 502,

503(b)(9), 547, 550 and 553 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing

NNI's entry into and approving the Stipulation including authorizing and approving the setoff of

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

prepetition amounts; (ii) granting limited relief from the automatic stay to effectuate the setoff; and (iii) granting them such other and further relief as the Court deems just and proper.

## Facts Relevant to this Motion

8.      NNI's books and records indicate that within ninety (90) days prior to the Petition Date, NNI made one or more transfers of an interest in its property to or for the benefit of Bell Canada in the aggregate approximate amount of $340,573.00 (the "Potential Avoidance Amount").

9.      On or about June 29, 2009, Bell filed proof of claim number 1432 against NNI in the amount of $590,099.98, comprised of (i) $61,290.00 as an administrative expense claim under 11 U.S.C. § 503(b)(9) and (ii) $528,809.98 as a general unsecured claim for goods sold ("Claim No. 1432").

10.     On or about June 29, 2009, Bell filed proof of claim number 1433 against NNI in the amount of $61,290.00 as an administrative expense claim under 11 U.S.C. § 503(b)(9) ("Claim No. 1433").

11.     On or about September 24, 2009, Bell Canada filed proof of claim number 3615 against NNI in the amount of $61,290.00 as an administrative expense claim under 11 U.S.C. § 503(b)(9), which amended Claim No. 1433 ("Claim No. 3615").

12.     On or about September 24, 2009, Bell Canada filed proof of claim number 3617 against NNI in the amount of $669,904.19, comprised of (i) $61,290.00 as an administrative expense claim under 11 U.S.C. § 503(b)(9) and (ii) $608,614.19 as a general unsecured claim for goods sold, which amended Claim No. 1432 ("Claim No. 3617").

13.     On or about September 30, 2009, Bell Canada filed proof of claim number 5467 against NNI in the amount of $669,904.19, comprised of (i) $61,290.00 as an administrative

expense claim under 11 U.S.C. § 503(b)(9) and (ii) $608,614.19 as a general unsecured claim for goods sold, which amended Claim No. 1432 ("Claim No. 5467").

14.     On or about September 30, 2009, Bell Canada filed proof of claim number 5468 against NNI in the amount of $61,290.00 as an administrative expense claim under 11 U.S.C. § 503(b)(9), which amended Claim No. 1433 ("Claim No. 5468").

15.     On March 23, 2010, NNI filed its Twenty-Ninth Notice of Rejection of Executory Contract(s) and/or Nonresidential Real Property Lease(s) by Debtors and Debtors in Possession [D.I. 2744] effecting a rejection of two "Last time buy agreements" (each dated October 16, 2008) between NNI and Bell Canada.

16.     On or about April 14, 2010, Bell Canada filed proof of claim number 7206 against NNI in the amount of $331,065.09 as a general unsecured claim for damages resulting from the above-noted contract rejections ("Claim No. 7206", and together with Claim No. 5467 and Claim No. 5468, the "Claims").

17.     On October 14, 2010, the Order Granting Debtors Fourteenth Omnibus Objection (Substantive) To Certain Claims Pursuant To 11 U.S.C. 502, Fed. R. Bankr. P. 3007 And Del. L.R. 3007-1 (No Liability Claims, Reduce And Allow Claims, Redundant Claims, Satisfied Claims, Wrong Debtor Claims, No-Basis 503(b)(9) Claims And Misclassified 503(b)(9) Claims) was entered by this Court [D.I. 4163] that expunged and disallowed Claim Nos. 1432 and 3617 as redundant of Claim No. 5467 and Claim Nos. 1433 and 3615 as redundant of Claim No. 5468.

18.     On or about October 2, 2010, Bell Canada merged with and into Claimant (and at that time Claimant became successor in interest to the Claims), and on or about December 17, 2010, Bell merged with and into Avnet.

19.    In an effort to negotiate an expeditious resolution of the dispute between the Debtors, Claimant and Avnet (the "Parties"), the Parties entered into arm's-length settlement discussions.

20.    As a result of these negotiations, subject to this Court's approval, NNI has reached a compromise with the Claimant and Avnet, as memorialized in the Stipulation, to allow (i) Claim No. 5467 as a general unsecured amount of $232,796.20, (ii) Claim No. 5468 as an administrative expense amount of $61,290.00 pursuant to section 503(b)(9) of the Bankruptcy Code, and (iii) Claim No. 7206 as a general unsecured amount of $331,065.09.[5]

21.    The settlement of Claim No. 5467 includes a reduction of that claim by (i) $61,290.00 of claimed administrative expense that is redundant of the amount allowed as an administrative expense amount in Claim No. 5468, (ii) $203,595.00 for two pre-petition credit memoranda issued and owed by Bell Canada to NNI that the Parties agree may be setoff against $203,595.00 in pre-petition invoices owed by NNI to Bell Canada and claimed as part of Claim No. 5467, (iii) $99,767.78 for invoices claimed as part of Claim No. 5467 and as part of claims filed in the Canadian Proceedings that relate to invoices against the Canadian Debtors, (iv) $2,651.00 for invoices claimed as part of Claim No. 5467 and as part of a claim filed in the Canadian Proceedings that have been disallowed in the Canadian Proceedings as these invoice amounts are greater than the amounts agreed upon under the purchase orders, and (v) $29,804.21 of "scrap costs" for excess, unusable parts manufactured for Nortel, claimed as part of Claim No. 5467 and as a part of a claim filed in the Canadian Proceedings that relate to a claim against the Canadian Debtors. In consideration for the partial allowance of the Claims, the Parties have agreed, subject to this Court's approval, to release and forever discharge each other from any and

---

[5]    This overview is intended as a summary of the terms of the Stipulation.  If any conflict arises between this overview and the Stipulation, the terms of the Stipulation shall control.

all liability from any claims which they now have or hereafter may have arising from or related to the contracts, agreements or other documents forming the basis for the Claims.

22.    Pursuant to the Stipulation and subject to this Court's approval, Claimant has also agreed to (i) reduce Claim No. 5467 by $40,000.00 in respect of the Potential Avoidance Amount and (ii) release any claims under section 502(h) of the Bankruptcy Code, and NNI has agreed not to commence an action against Claimant to avoid and recover the Potential Avoidance Amount pursuant to sections 547, 550, and 551 of the Bankruptcy Code with respect to any transactions between the Debtors and Claimant's predecessor entity, Bell Canada.

23.    The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of the Claims through the Stipulation is appropriate and in the best interest of both their estates and their creditors.

## Basis for Relief

24.    The Debtors seek authorization to enter into the Stipulation under sections 105(a), 362, 502, 503(b)(9), 547, 550 and 553 of the Bankruptcy Code and Bankruptcy Rule 9019.

A.    NNI Should Be Authorized to Enter Into the Stipulation With Claimant.

25.    Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in

bankruptcy"). Additionally, the Third Circuit has recognized that "[(i)]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (internal quotation omitted) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

26.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

27.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62

B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.),

283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

      28.     The Debtors respectfully submit that the Martin Factors weigh in favor of

approving the Stipulation, and request that NNI's entry into the Stipulation be authorized under

Bankruptcy Rule 9019. While the Debtors are prepared to litigate Claim No. 5467 and to file an

action to avoid and recover the Potential Avoidance Amount and believe that they would prevail

in such litigation, litigation carries with it inherent uncertainties and there is no assurance that

such litigation would achieve a better result than the one set forth in the Stipulation. Also, the

settlement reflected in the Stipulation reduces a purported $1,062,259.28 in Claims filed by the

Claimant against NNI's estate by $437,107.99 to the lesser amount of $625,151.29. This

resolution fairly balances the Debtors' likelihood of success on the merits of Claim No. 5467 and

any litigation to avoid and recover the Potential Avoidance Amount against their interest in

avoiding the uncertainty of litigation.

      29.     In addition, litigation of Claim No. 5467 and the filing and prosecution of a

complaint to avoid and recover the Potential Avoidance Amount would result in the estate's

expenditure of significant legal fees. Finally, the interests of the creditors militate in favor of

approval of the Stipulation. The Debtors believe that the interests of their creditors are served by

the prompt and efficient resolution of the Claims and the avoidance of legal expenses that would

be incurred if Claim No. 5467 were to be litigated and if an action to avoid and recover the

Potential Avoidance Amount were to be commenced.

30.    In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

B.    Claimant Should Be Permitted to Setoff a Portion of its Prepetition Claim.

31.    In order to establish a right to setoff under section 553 of the Bankruptcy Code, the party asserting the right must show: (1) a debt exists from the creditor to the debtor and that the debt arose prior to the commencement of the bankruptcy case; (2) the creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case; and (3) the debt must be owed by and to the same parties. Pardo v. Nylcare Health Plans (In re APF Co.), 274 B.R. 408, 421 (Bankr. D. Del. 2001).

32.    As set forth above, the Debtors have determined that Claimant holds a prepetition claim against and owes a prepetition debt to NNI. Further, Claimant has agreed with NNI as to the amount of the setoff to which it is entitled. Accordingly, the setoff satisfies the requirements of section 553 of the Bankruptcy Code.

33.    Notwithstanding that a right of setoff exists pursuant to section 553 of the Bankruptcy Code, the Court must grant relief from the automatic stay in order for the parties to exercise their right of setoff, as the setoff is stayed pursuant to section 362(a)(7) of the Bankruptcy Code. The Debtors submit that cause for limited relief from the automatic stay exists in the present case to permit Claimant and NNI to effectuate the setoff, as relief from the stay is in the best interests of the Debtors' estates. Authorizing relief from the automatic stay to permit the setoff will benefit these estates as it will allow the Debtors to reduce the amount of prepetition claims asserted against their estates at a minimum of expense and with as little delay as possible. Accordingly, the Debtors believe that the limited relief from the automatic stay will

aid in the Debtors' efforts to reduce expenses and maximize value for the benefit of their stakeholders.

<strong><u>Notice</u></strong>

34.     Notice of the Motion has been given via electronic transmission, hand delivery or first class mail to (i) counsel to Claimant and Avnet; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

<strong><u>No Prior Request</u></strong>

35.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  January 19, 2012       CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Chad A. Fights*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Chad A. Fights (No. 5006)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*