IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
:
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
:
      Debtors. : (Jointly Administered)
:
---------------------------------------------------------- X
:
Nortel Networks Inc., :
:
      Plaintiff, :
: Adv. Proc. No. 10-53177 (KG)
v. :
: **Hearing date: March 22, 2012 at 10:00 am (ET)**
Opnext Subsystems, Inc. f/k/a StrataLight : **Objections due: March 15, 2012 at 4:00 pm (ET)**
Communications, Inc. :
:
and :
:
Opnext, Inc., :
:
      Defendants. :
----------------------------------------------------------X

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY
RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION
OF SETTLEMENT OF AVOIDANCE CLAIM BY AND BETWEEN
<u>NORTEL NETWORKS INC. AND OPNEXT SUBSYSTEMS, INC. AND OPNEXT, INC.</u>**

   Nortel Networks Inc. ("<u>NNI</u>") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "<u>Debtors</u>"), hereby move this Court (the "<u>Motion</u>"), for the entry of

---

[1] In addition to Nortel Networks Inc. ("<u>NNI</u>"), the Debtors in the Chapter 11 cases are: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("<u>NN CALA</u>"). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 547, and 550 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to enter into and approving a stipulation (the "Stipulation") with Opnext Subsystems, Inc. f/k/a StrataLight Communications, Inc. and Opnext, Inc. (collectively "Defendants", and together with NNI, the "Parties"), in the form attached hereto as **Exhibit B**, (i) resolving the Adversary Proceeding entitled Nortel Networks Inc. v. Opnext Subsystems, Inc. f/k/a StrataLight Communications, Inc. and Opnext, Inc., Adv. Proc. No. 10-53177 (KG) (the "Adversary Proceeding"); (ii) deeming Defendant Opnext Inc.'s general unsecured proof of claim as allowed up to a certain agreed-upon amount against NNI, as discussed below; and (iii) granting such other and further relief as the Court (the "Court" or the "Bankruptcy Court") deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [Main D.I. 1098].

2

Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [Main D.I.s 141, 142][3], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). Other Nortel affiliates have commenced and in the

---

[3] Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __." Citations herein to the docket in this adversary proceeding (Adv. Pro. No. 10-53177) are in the form "Adv. D.I. __."

[4] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6. Since the Petition Date, Nortel has sold its business units and assets to various purchasers. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Facts Relevant to this Motion**

7. Defendants provided goods and services to NNI for several years prior to the Petition Date.

8. NNI's books and records indicate that within ninety (90) days prior to the Petition Date (the "Preference Period"), NNI made one or more transfers of an interest in its property to or for the benefit of Defendants in the aggregate amount of $1,117,180 (the "Subject Transfers").

9. On or about October 27, 2009, Defendant Opnext, Inc. filed proof of claim No. 6059 in the amount of $175,205 ("Claim No. 6059").

10. On September 16, 2010, the Court entered an Order Authorizing and Approving Settlement Procedures to Settle Certain Prepetition Claims (the "Prepetition Claims Settlement Procedures Order"), which authorizes the Debtors, *inter alia*, to settle Proofs of Claim where the Proof of Claim was originally filed in an amount less than $250,000 without filing or serving any advance notice of such settlement and without further notice or order of the Bankruptcy Court [Main D.I. 3953].

11. On October 27, 2010, the Court entered an Order Authorizing And Approving Settlement Procedures To Settle Certain Avoidance Claims (the "Avoidance Claim Settlement Procedures Order") which requires the Debtors to obtain Bankruptcy Court approval pursuant to

4

Bankruptcy Rule 9019 before they settle certain avoidance claims where the asserted claim amount is greater than $1,000,000 [Main D.I. 4211].

12. On October 4, 2010, NNI filed its Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code (Adv. Pro. No. 10-53177), which was amended on December 17, 2010 by filing an Amended Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code [Adv. D.I. 4] (the "Complaint") against the Defendants in this Court, pursuant to which NNI sought to avoid and recover the Subject Transfers (the "Avoidance Claim").

13. On January 20, 2011, Defendants filed an Answer to the Complaint [Adv. D.I. 6] (the "Answer") in the Adversary Proceeding, denying certain allegations and asserting various defenses.

14. Since the Complaint and Answer were filed, the Parties have engaged in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by further litigation of the Avoidance Claim, the Parties have agreed to settle the Adversary Proceeding on the terms set forth in the Stipulation, attached hereto as **Exhibit B**. The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of the Avoidance Claim and Claim No. 6059 through the Stipulation is appropriate and in the best interest of both their estates and their creditors.

15. Pursuant to the Stipulation[6] and subject to the Bankruptcy Court's approval, NNI has agreed to settle the Avoidance Claim by agreement with the Defendants that, as of the Effective Date (as defined in the Stipulation), Claim No. 6059 shall be reduced from $175,205 to

---

[6] In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

$104,985 and shall be an allowed general unsecured claim by Defendant Opnext, Inc. against Plaintiff in the reduced amount of $104,985 (the "Allowed Amount"), and Defendant Opnext, Inc. agrees not to assert any claim based on the same transaction or occurrence that gave rise to the claim set forth in Claim No. 6059.  In addition, as part of the proposed settlement, Defendant Opnext Inc. will release Claim No. 6059 for any amount over and above the Allowed Amount, and release Plaintiff and certain other parties defined in paragraph 16 hereof as the "Debtor Releasees" from any and all past, present, or future claims regarding the Avoidance Claim, the Adversary Proceeding, and any transaction described or referred to in the Complaint in the Adversary Proceeding. The allowance of Claim No. 6059 as reduced herein shall amend and supersede any and all claim amounts the Debtors list on their schedules filed with the Bankruptcy Court, and any previously filed proof of claims by Defendants against Plaintiff with respect to the transaction or occurrence that gave rise to Claim No. 6059.  Defendants shall not have any further claims against the Debtors based on the Debtors' schedules.

16.    In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration the receipt of which is acknowledged herein, Defendants have agreed, subject to the Bankruptcy Court's approval, that upon the "Effective Date," as defined in the Stipulation, they shall, *inter alia*, release NNI, its past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "Debtor Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that Defendants now have, had, may

have had, or hereafter may have against any of the Debtor Releasees regarding the Avoidance Claim, the Adversary Proceeding, any transaction described or referred to in the Complaint in the Adversary Proceeding, and Claim No. 6059 to the extent not deemed allowed pursuant to this Stipulation.

17. In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration the receipt of which is acknowledged herein, NNI has agreed, subject to the Bankruptcy Court's approval, that upon the "Effective Date," as defined in the Stipulation, it shall, *inter alia*, release the Defendants, their past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "Defendant Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that Plaintiff now has, had, may have had, or hereafter may have against any of the Defendant Releasees regarding the Avoidance Claim, the Adversary Proceeding, and any transaction described or referred to in the Complaint in the Adversary Proceeding.

## Relief Requested

18. By this Motion, the Debtors seek an order, pursuant to sections 105(a), 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Stipulation, (ii) authorizing but not directing the Debtors to take all actions reasonably appropriate to perform their obligations under the Stipulation, and (iii) granting them such other and further relief as the Bankruptcy Court deems just and proper.

## Basis for Relief

19. The Debtors seek authorization for NNI to enter into the Stipulation under sections 105(a), 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019.

20. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). Courts in this District have also recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

21. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the

need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

22. The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

23. The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation. While NNI is prepared to litigate the Avoidance Claim, Defendants have contended that the ordinary course of business defense pursuant to 11 U.S.C. § 547(c)(2) is particularly strong based on the average payment time during the history of the parties' dealings, and NNI believes that such defense poses a material litigation risk, and will require it to incur substantial legal fees to litigate.

24. NNI recognizes that litigation of the Avoidance Claim carries with it inherent uncertainties and there can be no assurance that litigation of the Avoidance Claim would achieve

9

a better result than the one set forth in the Stipulation. Pursuant to the settlement reflected in the Stipulation, Claim No. 6059 shall be reduced by $70,220 from $175,205 to $104,985. This resolution fairly balances NNI's likelihood of success on the merits of the Avoidance Claim against its interest in avoiding the uncertainty of litigation.

25. In addition, further litigation of the Avoidance Claim or of Claim No. 6059 would result in the estate's expenditure of considerable additional legal fees. These would include fees associated with formal discovery and litigation. In the absence of a settlement, the estate would be burdened with the time and costs of ongoing litigation, which would be disruptive of the estate's efforts to resolve the matters that are essential to the ultimate resolution of these cases.

26. Finally, the interests of the creditors weigh in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Avoidance Claim and Claim No. 6059 and the avoidance of litigation risk and substantial legal expenses that would be incurred if these claims were to be further litigated.

27. The Debtors consulted the Committee with regard to the Stipulation prior to the filing of this Motion, and the Committee has expressed no objection to the Stipulation.

28. In light of the foregoing, the Debtors respectfully seek authorization for NNI to enter into the Stipulation and approval of the Stipulation.

## Notice

29. Notice of the Motion has been given via first class mail to (i) the Defendants; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

30. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: March 1, 2012<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley (admitted *pro hac vice*)<br>Lisa M. Schweitzer (admitted *pro hac vice*)<br>Neil P. Forrest (admitted *pro hac vice*)<br>Nora K. Abularach (admitted *pro hac vice*)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>  */s/ Chad A. Fights*  <br>Donna L. Culver (No. 2983)<br>Derek C. Abbott (No. 3376)<br>Ann C. Cordo (No. 4817)<br>Chad A. Fights (No. 5006)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors*<br>*and Debtors in Possession* |