## EXHIBIT A

**Engagement Letter**

Confidential

**Engagement Letter**

As of February 1, 2009

**Official Committee of Unsecured Creditors
of Nortel Networks Inc.**
c/o Akin Gump Strauss Hauer & Feld, LLP
One Bryant Park
New York, NY 10036

Attention:  Terry Zale, Flextronics Corporation
                       Committee Chairman

Re: Investment Banking Services

     This agreement (the "Agreement") confirms that Jefferies & Company, Inc. ("Jefferies") has been engaged by the Official Committee of Unsecured Creditors (the "Committee"), appointed in the chapter 11 bankruptcy cases (the "Cases") of Nortel Networks Inc. and its chapter 11 debtor affiliates (collectively, the "Debtors"), which are now pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), to act as exclusive investment banker to the Committee in the Cases.

1.    Services.  In connection with the Cases, Jefferies will perform the following services for the Committee:

    (a)    become familiar with, to the extent Jefferies deems appropriate, and analyze the business, operations, assets, financial condition and prospects of the Debtors;

    (b)    provide a valuation analyses of the Company if requested, the form of which will be agreed upon by Jefferies and the Company, and provide expert testimony relating to any such valuation;

    (c)    advise the Committee on the current state of the restructuring and capital markets;

    (c)    assist and advise the Committee in examining and analyzing any potential or proposed strategy for restructuring, amending, redeeming or otherwise adjusting the Debtors' outstanding indebtedness or overall capital structure, whether pursuant to a plan of reorganization, any sale under section 363 of chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), a liquidation, or otherwise (the "Restructuring"), including, where appropriate, assisting the Committee in developing its own strategy for accomplishing a Restructuring;

    (d)    assist and advise the Committee in evaluating and analyzing the proposed implementation of any Restructuring, including the value of the securities, if any, that may be issued under any plan of reorganization;

Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.
As of February 1, 2009
Page 2

(e)    assist and advise the Committee in evaluating potential financing transactions by the Debtors;

(f)    assist and advise the Committee on tactics and strategies for negotiating with other stakeholders;

(g)    attend meetings of the Committee with respect to matters on which we have been engaged to advise the Committee;

(h)    provide testimony, as necessary and as agreed upon between Jefferies and the Committee, with respect to matters on which we have been engaged to advise the Committee in any proceeding before the Bankruptcy Court; and

(i)    render such other advisory services as may from time to time be agreed upon by the Committee and Jefferies, including, but not limited to, providing expert testimony, and other expert support related to any threatened, expected, or initiated litigation.

It is expressly agreed that, other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

Jefferies will work with the Committee's forensic account and financial advisors, Capstone Advisory Group, LLC ("Capstone"), to coordinate efforts and ensure that the services rendered by the two firms are not duplicative.

2.    Cooperation.

(a)    The Committee will furnish or use its best efforts to cause the Debtors to furnish Jefferies with all materials and information regarding the business and financial condition of the Debtors which the Committee and/or the Debtors believe are relevant to any Restructuring or other transaction contemplated herein, or which Jefferies requests (all such information gathered or furnished being the "Information"). The Committee shall advise Jefferies promptly of the occurrence of any event or any other change in fact or circumstance prior to the closing of any Restructuring or other transaction contemplated herein, upon which Jefferies formed part or all of its opinions, advice, or conclusions, or which could reasonably be expected to result in some or all of the Information being incorrect, inaccurate, or misleading.

(b)    Jefferies (i) will be relying on the Information and on information available from generally recognized public sources, without having independently verified the accuracy or completeness of the same, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) will not make an appraisal of any assets or liabilities of the Debtors, and (iv) retains the right to perform due diligence during the course of this engagement.

Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.
As of February 1, 2009
Page 3

3. _Use of Advice, Name, etc._

(a)    Jefferies' advice is solely for the use and information of the Committee, and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person, including, but not limited to, any member of the Committee in its individual capacity, and any other security holder, or employee or creditor of the Debtors, and may not be used or relied upon for any other purpose.

(b)    Any reference to Jefferies in any release, communication, or other material is subject to Jefferies' prior written approval, which may be given or withheld in its sole discretion and which approval, if given, will expire immediately upon the termination of Jefferies' services hereunder. No statements made or advice rendered by Jefferies in connection with the services performed by Jefferies pursuant to this Agreement will be quoted by, nor will any such statements or advice be referred to in, any communication, whether written or oral, prepared, issued or transmitted, directly or indirectly, without the prior written authorization of Jefferies, which may be given or withheld in its sole discretion, except to the extent required by law (in which case the appropriate party shall so advise Jefferies in writing prior to such use and shall consult with Jefferies with respect to the form and timing of disclosure).

(c)    The Committee acknowledges that Jefferies will act as an independent contractor hereunder, and that Jefferies' responsibility to the Committee is solely contractual in nature and that Jefferies does not owe the Committee, or any other person or entity, any fiduciary or similar duty as a result of its engagement hereunder or otherwise. Jefferies and the Indemnified Persons (as defined below) shall not be deemed agents or fiduciaries of the Committee, any of its members, or the Debtors, and will not have the authority to legally bind any of the foregoing.

4.    _Compensation_. In payment for services rendered and to be rendered hereunder by Jefferies, the Debtors and their estates shall agree to pay or cause to be paid to Jefferies in cash the following:

(a)    . a monthly fee (the "_Monthly Fee_") equal to USD$250,000 per month for the first four months of this Agreement and $200,000 per month thereafter until the expiration or termination of this Agreement. The first Monthly Fee shall accrue from the date of Jefferies' appointment and shall be payable upon the execution of this Agreement, and each subsequent Monthly Fee shall be payable in advance on the first day of each month thereafter. Fifty percent (50%) of any Monthly Fees actually paid to Jefferies in excess of $2.60 million shall be credited against the Transaction Fee (as defined below) payable to Jefferies.

Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.
As of February 1, 2009
Page 4

(b)     in addition, in consideration of the services rendered by Jefferies hereunder as investment banker to the Committee, the Debtors and their estates shall pay or cause to be paid to Jefferies a fee (the "Transaction Fee") equal to the sum of $2.90 million, which shall be earned in full upon (i) substantial consummation of a chapter 11 plan of reorganization, liquidation or otherwise (the "Plan") in these Cases, or (ii) sale of substantially all of the assets of the Debtors pursuant to section 363 of the Bankruptcy Code (the "363 Sale"), in each case that is supported by the Committee. The Transaction Fee shall be deemed earned and shall be paid on the effective date of any Plan (provided that, at the time of confirmation, the plan is not subject to a material objection to confirmability by the Committee, which is neither settled nor withdrawn, that is ultimately overruled by the Court) or upon the closing of a 363 Sale.

(c)     If the Debtors consummate a sale or other disposition, through a transaction or series of transactions, of all or substantially all of the assets of Metro Ethernet, Enterprise or Carrier Network (each a "Business Unit"), Jefferies shall be deemed to earn 33.33% of the Transaction Fee upon the closing of any such transaction with respect to each Business Unit (each such fee, a "Partial Transaction Fee"). Any Partial Transaction Fee shall be paid upon the earlier of (i) the effective date of any plan of reorganization, (ii) the closing of any sale or other disposition of substantially all of the assets of the Debtors or (iii) the dismissal of the Cases or conversion to Cases under chapter 7 of the Bankruptcy Code. Any Partial Transaction Fee shall be credited against the Transaction Fee, if ultimately payable pursuant to this Agreement.

(d)     Jefferies acknowledges and agrees that all obligations herein to pay a Monthly Fee, Transaction Fee, Partial Transaction Fee and expenses are exclusively obligations of the Debtors. Such obligations shall survive confirmation of a plan or dismissal or conversion of the Cases and shall be binding on (i) any plan trustee or plan administrator (ii) a chapter 7 or chapter 11 trustee or (iii) any other successor in interest to the Debtors.

The Committee acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services. The Committee further acknowledges that it believes that Jefferies' general restructuring expertise and experience, its knowledge of the capital markets and its other capabilities will inure to the benefit of the Committee in connection with any Restructuring, financing or other transaction and that the value to the Committee of Jefferies' services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the compensation hereunder, including the Monthly Fees and Transaction Fee, is reasonable regardless of the number of hours to be expended by Jefferies' professionals in the performance of the services to be provided hereunder and that none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law.

**Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.**
As of February 1, 2009
Page 5

5.      Expenses.  In addition to any fees that may be paid to Jefferies hereunder, whether or not any Restructuring occurs, the Debtors shall reimburse Jefferies, promptly upon receipt of an invoice therefor, for all court-approved out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, word processing charges, messenger and duplication services, facsimile expenses and other customary expenditures) incurred by Jefferies in connection with the engagement contemplated hereunder.

6.      Termination.  Jefferies' engagement hereunder will commence upon the execution of this Agreement by the parties hereto, nunc pro tunc to February 1, 2009, and will continue until the earlier of the date on which (A) each of the Cases is either (i) dismissed, (ii) converted to cases under chapter 7 of the Bankruptcy Code, or (iii) subject to a plan of reorganization that has been confirmed by the Bankruptcy Court and has been substantially consummated, or (B) Jefferies' services hereunder are terminated by either Jefferies or the Committee on thirty (30) days written notice to the other.  Upon any termination of this Agreement, the Debtors shall pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder.  In the event of any termination of this Agreement, Jefferies shall be entitled to the Transaction Fee, and such Transaction Fee shall be immediately payable, if a Plan or 363 Sale is consummated  prior to that date which is twelve (12) months from the date of any termination of this Agreement.  Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 2-8, 10-17, and Schedule A hereto.

7.      Indemnification, etc.  As further consideration under this Agreement, the Debtors and their estates shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A.  The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.

8.      Bankruptcy Court Approval.  The Committee shall use its best efforts to obtain prompt approval of this Agreement, pursuant to section 1103 of the Bankruptcy Code, from the Bankruptcy Court.  Such approval shall provide for the retention of Jefferies nunc pro tunc to February 1, 2009, shall incorporate all of the terms and conditions herein (explicitly including, but not limited to, the obligations and acknowledgements set forth in Schedule A), and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code.  The Committee agrees that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agrees that this Agreement (except for the obligations under Section 4 and Schedule A hereto) shall be null and void and Jefferies shall have no obligations hereunder unless such an order has been entered by the Bankruptcy Court and no appeal is pending as to such order.

Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.
As of February 1, 2009
Page 6

9.    Exclusivity.  The Committee agrees that it will not engage any other person to perform any investment banking services or other similar services with respect to any potential Restructuring or other transaction contemplated herein.  Notwithstanding the foregoing, Jefferies hereby acknowledges that Capstone Advisory Group, LLC has been retained by the Committee to perform certain distinct accounting-related and other financial advisory services to the Committee.  If the Committee is contacted by any person seeking to serve in an investment banking capacity for the Committee and concerning a potential Restructuring or other transaction contemplated herein, the Committee will inform Jefferies of such inquiry, and all relevant details thereof.

Notwithstanding the Debtors' and their estates' obligations hereunder, including, but not limited to, their obligation to pay the fees and expenses of Jefferies and to indemnify Jefferies, it is understood and agreed that Jefferies' sole and exclusive client is the Committee, and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

10.    No Assurances; Other Transactions; Disclaimer.

(a)    This Agreement does not constitute a commitment or obligation by Jefferies or any of its affiliates to provide any financing which may be required or advisable in connection with any Restructuring or other transaction contemplated herein. By signing this Agreement, the Committee expressly acknowledges that Jefferies does not guarantee, warrant or otherwise provide assurance that the Debtors will be able to implement or consummate any Restructuring or other transaction contemplated herein, or achieve any other result.

(b)    The Debtors and the Committee acknowledge that Jefferies' parent, Jefferies Group, Inc. (collectively with its subsidiaries and affiliates, the "Jefferies Group") is a full service financial institution engaged in a wide range of investment banking and other activities (including investment management, corporate finance, securities issuing, trading and research and brokerage activities) from which conflicting interests, or duties, may arise.  Information that is held elsewhere within the Jefferies Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Committee under this Agreement.  Neither Jefferies nor any other part of the Jefferies Group will have any duty to disclose to the Committee or the Debtors or utilize for the Committee's or the Debtors' benefit any non-public information acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business.  In addition, in the ordinary course of business, the Jefferies Group may trade the securities of the Debtors and of potential participants in the Transaction for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities.  Jefferies recognizes its responsibility for compliance with federal securities laws in connection with such activities.

Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.
As of February 1, 2009
Page 7

Further, the Committee and the Debtors acknowledge that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Committee's interests in connection with the Transaction or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences.

11.    Construction and Governing Law.  This Agreement and any issue arising out of or relating to the parties' relationship hereunder shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law.

12.    Arbitration.  The parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, including, but not limited to: (a) the termination or validity of this Agreement, (b) any alleged breach of this Agreement or (c) the engagement contemplated by this Agreement (any of the foregoing, a "Claim") shall be brought in the Bankruptcy Court.  If the Bankruptcy Court declines jurisdiction over any such matter, the parties agree that any Claim shall be submitted to JAMS, or its successor, in New York, New York, for final and binding arbitration in front of a panel of three arbitrators with JAMS in New York, New York under the JAMS Comprehensive Arbitration Rules and Procedures (with each of Jefferies and the plaintiff choosing one arbitrator, and the chosen arbitrators choosing the third arbitrator).  The arbitrators shall, in their award, allocate all of the costs of the arbitration, including the fees of the arbitrators and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail.  The award in the arbitration shall be final and binding.  The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1–16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof.  The parties agree and consent to personal jurisdiction, service of process and venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.

13.    Payments.  All payments to be made to Jefferies hereunder, unless otherwise agreed by Jefferies in its sole and absolute discretion, shall be made in cash by wire transfer of immediately available U.S. funds, without deduction for any tax, subject to any necessary Bankruptcy Court approval.  Except as expressly set forth herein, no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. Subject to Bankruptcy Court approval, the Debtors' obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

14.    Announcements.  Jefferies may, following any Restructuring or other transaction contemplated herein, place an announcement in such newspapers, electronic media and periodicals as it may choose, stating Jefferies' role and other material terms of the Restructuring or other transaction contemplated herein.  Jefferies shall be entitled to

Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.
As of February 1, 2009
Page 8

identify the Committee and use the Debtors' name and logo, if any, in connection
therewith. Any press release issued announcing the Restructuring or other transaction
contemplated herein will, at Jefferies' request, contain a reference to Jefferies' role in
such transaction.

15.    Notices. Notice given pursuant to any of the provisions of this Agreement shall
be in writing and shall be mailed or delivered (a) if to the Committee, at the address set
forth above, and (b) if to Jefferies, at 520 Madison Avenue, 12th Floor, New York, New
York 10022, Attention: General Counsel.

16.    Miscellaneous. This Agreement, including the attached Schedule A, constitutes
the entire agreement between the parties with respect to the subject matter hereof, and
may not be amended or modified except in writing signed by each party hereto. This
Agreement may not be assigned by either party hereto without the prior written consent
of the other, to be given in the sole discretion of the party from whom such consent is
being requested. Any attempted assignment of this Agreement made without such
consent shall be void and of no effect, at the option of the non-assigning party. This
Agreement is solely for the benefit of the Committee and Jefferies and no other person
shall acquire or have any rights under or by virtue of this Agreement. If any provision
hereof shall be held by a court of competent jurisdiction to be invalid, void or
unenforceable in any respect, or against public policy, such determination shall not affect
such provision in any other respect nor any other provision hereof. The Committee and
Jefferies shall endeavor in good faith negotiations to replace the invalid, void or
unenforceable provisions. Headings used herein are for convenience of reference only
and shall not affect the interpretation or construction of this Agreement. This Agreement
may be executed in facsimile counterparts, each of which will be deemed to be an
original and all of which together will be deemed to be one and the same document.

17.    Patriot Act. Jefferies hereby notifies the Debtors, the Committee, and the
Committee's members that pursuant to the requirements of the USA PATRIOT Act (the
"Patriot Act"), Jefferies may be required to obtain, verify and record information that
identifies the Debtors, the Committee and the members of the Committee in a manner
that satisfies the requirements of the Patriot Act. This notice is given in accordance with
the requirements of the Patriot Act.

Official Committee of Unsecured Creditors of Nortel Networks Corporation, et al.
As of February 1, 2009
Page 9

Please sign and return an original and one copy of this letter to the undersigned to indicate your acceptance of the terms set forth herein.

Sincerely,

JEFFERIES & COMPANY, INC.

By _____
     Name:  Michael Henkin
     Title:   Managing Director


Accepted and Agreed:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF NORTEL NETWORKS INC., ET AL.


By _____
     Name:  Terry Zale, Flextronics Corporation
     Title:   Chairman

Official Committee of Unsecured Creditors of Nortel Networks Corporation, et al.
As of February 1, 2009
Page 9

Please sign and return an original and one copy of this letter to the undersigned to
indicate your acceptance of the terms set forth herein.

Sincerely,

JEFFERIES & COMPANY, INC.

By _____
     Name:  Michael Henkin
     Title:   Managing Director

Accepted and Agreed:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF NORTEL NETWORKS INC., ET AL.

By: Flextronics Corporation, solely in its capacity
     as Chair of the Committee and not in its
     individual capacity

By: _____
     Name:  Terry Zale, Flextronics Corporation
     Title:   Vice President, Corporate Finance

## SCHEDULE A

Reference is hereby made to the engagement letter attached hereto (as amended from time to time in accordance with the terms thereof, the "Agreement") between Jefferies & Company, Inc. ("Jefferies") and the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy cases (the "Cases") of Nortel Networks Inc. and its chapter 11 debtor affiliates (collectively, the "Debtors"). Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

Any and all obligations and agreements of the Debtors under this Schedule A shall be equally applicable to, and binding upon, each of the Debtors' bankruptcy estates.

As further consideration under the Agreement, the Debtors and their estates agrees to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, damages and expenses (or any action, claim, suit or proceeding (an "Action") in respect thereof), as incurred, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that the Debtors shall not be responsible for any Losses to the extent such Losses are determined, by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct.

The Debtors and the Committee each agree that no Indemnified Person shall have any liability to the Debtors or the Committee (or any member thereof) or their respective owners, parents, affiliates, securityholders or creditors for any Losses, except to the extent such Losses are determined, by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct.

The Debtors agree that they will not settle or compromise or consent to the entry of any judgment in, or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission of fault on the part of any Indemnified Person.

If, for any reason (other than the gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Debtors agree to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Debtors on the one hand and by Jefferies on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Debtors on the one hand and Jefferies on the other, but also the relative fault of the Debtors and Jefferies, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Debtors, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The Debtors agree to reimburse the Indemnified Persons for all expenses (including, without limitation, fees and expenses of counsel) as they are incurred in connection with investigating, preparing, defending or settling any Action for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party; provided that if any such reimbursement is determined by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct, such Indemnified Person shall promptly repay such amount to the Debtors. If any of Jefferies' professional personnel appears as witness, is deposed or is otherwise involved in the defense of any Action against Jefferies, the Debtors or the Debtors' affiliates, officers, managers, directors or employees, the Debtors will pay Jefferies (i) with respect to each day that such person appears as a witness or is deposed and/or (ii) with respect to each day that such person is involved in the preparation therefor, (a) a fee of USD$4,000 per day for each such person with respect to each such appearance as a witness or a deponent and (b) at a rate of USD$400 per hour with respect to each hour of preparation for any such

## SCHEDULE A

appearance, and the Debtors will reimburse Jefferies for all reasonable out-of-pocket expenses incurred by Jefferies by reason of any of its personnel being involved in any such Action.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Debtors may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or completion of Jefferies' services hereunder, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtors and successors or assigns to the Debtors' business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.