# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Objection Deadline: March 28, 2012 at 4:00 p.m.** |
|  | ) | **Hearing Date: April 4, 2012 at 10:00 a.m.** |

## MOTION OF THE OFFICIAL COMMITTEE OF LONG-TERM DISABILITY PARTICIPANTS FOR AN ORDER LIFTING OR, IN THE ALTERNATIVE, INCREASING THE LIMITS ON FEES FOR LTD COMMITTEE COUNSEL

The Official Committee of Long-Term Disability Participants (the "LTD Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this motion for an order lifting or, in the alternative, increasing, the $400,000 cap on legal fees for LTD Committee counsel (the "Motion"). In support of this Motion, the LTD Committee respectfully represents as follows:

### BACKGROUND

1.     On January 14, 2009 (the "Petition Date"), each of the Debtors commenced their bankruptcy cases (the "Bankruptcy Cases") by filing voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

---

[1]   The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

2.      The Debtors continue to operate their business and manage their property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      A significant number of LTD Plan Participants (defined below) filed the *Joinder of the Disabled Participants to Debtors' Motion for Entry of an Order Pursuant to Section 114 of the Bankruptcy Code Appointing an Official Committee of Retired Employees* on June 3, 2011 (Docket No. 5595) (the "Appointment Motion").    Many other LTD Plan Participants who did not file the Appointment Motion filed correspondence with the Court supporting the relief sought in the Appointment Motion.    (*See, e.g.* Docket Nos. 5659-61, 5670-5676, 5678-81, 5694-5701, 5703-5708, 5712-5716 and 5760-5764).    On the record, counsel for the LTD Plan Participants requested that there be a cap on fees, based upon a projection that the process of resolving issues with the Debtors for the retirees and LTD Plan Participants would take approximately four months. *See* Jun. 21, 2011 Hr. Tr. at 36:25-37:10.

4.      On June 22, 2011, the Court authorized the appointment of the LTD Committee (Docket No. 5790) (the "LTD Committee Appointment Order").    Pursuant to the LTD Committee Appointment Order, fees for counsel to the LTD Committee were capped at $200,000 (the "Original Cap"), "subject to the LTD Committee's right to seek, upon notice and a hearing, to increase the cap for good cause shown." LTD Committee Appointment Order at 2.

5.      The LTD Committee consists of the following members: Wendy Boswell Mann, Daniel D. David, Dianna L. Irish, Paul E. Morrison, Barbara Gallagher, Michael Stutts, and Deborah Jones. *See* Amended Notice of Appointment of Unsecured Creditors (Docket No. 6080).

6.      On August 2, 2011, (the "Retention Date") the LTD Committee was formed and selected Elliott Greenleaf ("EG") as proposed counsel to the committee.    Prior to the

Retention Date, EG acted as counsel to Barbara Gallagher and 58 other disabled individuals (the "Disabled Participants") of the approximately 250 disabled individuals ("LTD Plan Participants") who are participants in the long-term disability plan (the "LTD Plan") of the Debtors.

7.      On September 20, 2009, this Court entered an Order authorizing the employment and retention of EG as LTD Committee counsel, *nunc pro tunc* to August 2, 2011 (Docket No. 6415) (the "EG Retention Order").

8.      On December 14, 2011 this Court entered an Order (Docket No. 6978) (the "LTD Cap Increase Order") increasing the Original Cap by an additional $200,000, for an aggregate cap of $400,000 (the "Current Cap"), "subject to the LTD Committee's right to seek, upon notice and a hearing, to increase the cap for good cause shown."[2] LTD Cap Increase Order at 1.

9.      As described more fully below, EG has spent considerable time compiling and analyzing documents and data necessary to properly represent the LTD Plan Participants' issues and concerns in any negotiations with the Debtors' and Creditors' Committee.

10.      EG's monthly fees since its retention are as follows:

a.      August 2011: $59,704.50

b.      September 2011: $53,242.00

c.      October 2011: $48,812.00

d.      November 2011: $49,172.50

---

[2] Approximately $4,160.50 in fees were incurred in preparing, filing and serving the motion to approve the LTD Cap Increase Order; an additional $1,264.00 in fees were incurred in analyzing and responding to the Debtors' response to the motion to approve the LTD Cap Increase Order; and an additional $632.00 in fees were incurred related to the hearing on the LTD Cap Increase Order. In total, $6056.50 in fees were incurred solely to raise the Original Cap.

       e.        December 2011: $39,164.50

       f.        January 2012: $62,379.50

       g.      February 2012: $71,418.50[3]

11.     EG's total fees through February 29, 2012, are broken down as follows:

| Bankruptcy Task Code | Fees |
|---|---|
| Asset Analysis and Recovery | $832.00 |
| Asset Disposition | $531.50 |
| Business Operations | $1,037.00 |
| Case Administration | $752.00 |
| Claims Administration and Objections | $412.00 |
| Court Hearings | $7,900.00 |
| EG Fee Applications | $17,749.00 |
| EG Retention | $20,048.50 |
| Employee Benefits/Pensions | $136,549.50 |
| Employment & Retention Application - Others | $9,925.50 |
| Fee Applications and Invoices - Others | $8,877.50 |
| Fee Objections - Others | $1,3440.00 |
| Fee Objections EGS | $2,871.50 |
| Financing/Cash Collections | $67.50 |
| Labor Issues | $350.00 |
| Litigation | $98,185.00 |

---

[3]   February's amount is unaudited and is therefore, at this time, estimated.

| | |
|---|---|
| Meetings of and Communications with Creditors | $77,749.00 |
| Non-Working Travel | $1,311.50 |
| Plan and Disclosure Statement | $1,057.00 |
| **Total:** | **$388,462.00** |

12.    EG's fees have been very lean in comparison to other professionals.

13.    A comparison of other professionals engaged in these cases for a limited purpose shows that EG's fees during the last quarterly period are on par with or lower than many of the other retained professionals who do not have caps on their fees.  To be clear, EG is not challenging the reasonableness of any of the fees for any of the other professionals retained in these cases.  Quite the opposite.  Other professionals' fees listed herein serve only to illustrate that the issues—including employee benefit issues—are complex and demand considerable time and expense.

| Firm | Role | Total Fees: November 1, 2011 – January 31, 2011 |
|---|---|---|
| Elliott Greenleaf | Counsel to LTD Committee | $150,716.50 |
| McCarter & English | Local Counsel to Retiree Committee | $117,482.20 |
| Togut Segal & Segal LLP | Counsel to Retiree Committee | $274,400.50[4] |
| Alvarez & Marsal Healthcare Industry Group, LLC | Financial Advisor to Retiree Committee and LTD Committee | $239,707.50 |
| Chilmark Partners, LLC | Consulting Expert to Debtors Related to Allocation Process | $750,000.00 |

---

[4]    For period November 1, 2011 – December 31, 2011 only.

| Mercer (US) Inc. | Employee Benefit and Compensation Specialist and Consulting Expert to Debtors | $169,170.30 |
| RLKS Executive Solutions LLC | Document Management and Data Preservation Consultants to the Debtors | $698,805.00 |
| Huron Consulting Group | Accounting and Restructuring Consultant for the Debtors | $126,056.70 |

14.     To date, no objection by any party, including the United States Trustee, has been voiced informally or formally to the reasonableness of EG's fees.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

16.     The statutory predicates for this Motion are Bankruptcy Code sections 328 and 330, and Federal Rule of Bankruptcy Procedure 2016.

## RELIEF REQUESTED

17.     By this Motion, the LTD Committee seeks to lift the Current Cap or, in the alternative, increase the Current Cap by an additional $200,000.

## BASIS FOR RELIEF

18.     "Cause" exists to increase the Current Cap. Since its retention, EG has zealously advocated on behalf of the LTD Committee and performed its duties enumerated in the EG Retention Order. Nevertheless, despite the best efforts EG and the Debtors, more work

remains to be done before the LTD Plan Participants' issues are fully addressed. The Current Cap must therefore be lifted or, alternatively, increased to allow EG to continue to represent the LTD Committee.

19.     Following the formation of the LTD Committee, it was anticipated that the LTD Committee's role would only last approximately four months. Due to the limited role of the LTD Committee, the Cap was set at $200,000 based on a calculation that EG, as LTD Committee counsel, would require approximately $50,000 in fees per month. That same calculation was used to increase the Original Cap by $200,000 for four additional months. EG has closely tracked that $50,000 per month estimate. Variances are limited and have been justified. However, the discipline that has to be applied when keeping to a budget cannot allow professionals to forsake adequately representing their client to adhere to a cap that the circumstances in the case do not justify. As will be discussed below, that unwanted consequence has been avoided by EG to date. As the LTD Committee will soon be negotiating with the Debtors and the Official Committee of Unsecured Creditors in this matter, EG's request to remove the cap is motivated by a desire to remove an unfair limitation on the LTD Committee professionals or use of the cap to limit EG's ability to execute its duties to represent the LTD Committee.

20.     Since its retention, EG has efficiently staffed its representation of the LTD Committee and zealously performed its duties as LTD Committee counsel, including, but not limited to:

a.      Regularly holding meetings and providing updates to the LTD Committee;

b       Drafting discovery requests directed to the Debtors and analyzing the Debtors' responses;

c.    Analyzing the Debtors' long-term disability plan documents;

d.    Analyzing ERISA and other long-term disability issues;

e.    Preparing committee by-laws;

f.    Negotiating with and retaining Kurtzman Carlton Consultants, LLC ("KCC") as website provider for the LTD Committee;

g.    Negotiating with and retaining Alvarez & Marsal Healthcare Industry Group ("A&M") as financial advisor;

h.    Providing the LTD Committee website with content, including answers to frequently asked questions;

i.    Attending court hearings;

j.    Attending meetings with the Debtors and benefit providers;

k.    Negotiating with the Debtors, Creditors' Committee and Retiree Committee regarding the continuation, modification or termination of LTD Plan Participant benefits following the Debtors' exit from these chapter 11 cases;

l.    Preparing for contingencies if a resolution of the LTD Plan Participant issues cannot occur without the intervention of a third party neutral; and

m.    Interacting with the Pension Benefit Guarantee Corporation ("PBGC").

21.    These cases are complex.  The issues related to the Debtors, retirees and LTD Plan Participants are intertwined.  Many LTD Plan Participants will become eligible to be retires and there are multiple plan years covering the various LTD Plan Participants.  Also, with respect to benefits, different options were available to LTD Plan Participants depending on the plan year in which they became disabled.  Both A&M  and EG have reviewed complicated data necessary for an actuarial claims analysis, as well as constructing a template for analyzing the strengths and weaknesses of the various LTD Plan Participants' claims which is essential in any negotiation with the Debtors and the Official Committee of Unsecured Creditors.

22.     In addition, the underlying data necessary to assess the offers of replacement insurance has consumed considerable time for the LTD Committee and its professionals to compile and analyze.  There have also been privacy concerns raised by the Debtors resulting in two negotiated confidentiality agreements containing multiple layers of protections and precautions which delayed EG's receipt of data.

23.     EG has also received many questions from LTD Plan Participants and has worked with the LTD Committee on providing answers to those questions on the LTD Committee website maintained by KCC.  It is understandable that people with severe disabilities would have a greater interest on the outcome of these chapter 11 cases than most creditors.  LTD Plan Participants depend on the insurance currently being funded by the Debtors to pay for their immediate medical needs including, but not limited to: hospital stays, medication, physical therapy, and other treatment for their ailments.

24.     EG has also participated in two meetings with the Debtors, the Retiree Committee, and Creditors' Committee and one professional's only meeting with the Retiree Committee and the Debtors.  Between those meetings, data and documents have been exchanged.  Indeed, just this week, the Debtors produced 2012 summary plan descriptions for eight benefits plans.

25.     The LTD Committee and its counsel have primarily focused on (a) litigation issues, (b) managing communications and communicating with the LTD Committee and various individual LTD Plan Participants, and (c) issues related to employee benefits.

26.     The litigation issues have focused on the preparation of a Rule 2004 examination, a request for documents in the alternative that would obviate the need for a Rule 2004 examination, and the negotiation and review of both the document production received

from the Debtors and data forwarded by the Debtors and analyzed by the LTD Committee's actuary and financial advisors. EG has provided legal counsel in guiding the LTD Committee's financial advisor and actuary in requesting and managing the voluminous data and document production provided by the Debtors and their professionals, including navigating the privacy and other related healthcare law issues related to the LTD Plan Participants. Because there are many years of long-term disability plans and related documents, the task has been a formidable one.

27.     The conflicting issues of privacy concerns and confidentiality (raised by the Debtors) on the one hand, and the need to facilitate free and open negotiation with the LTD Committee, on the other hand, has resulted in a multilayered confidentiality scheme. The LTD Committee has negotiated and vetted bylaws with confidentiality provisions and confidentiality orders (the "Section 1102 Orders"), with the amendments requested by the Debtors, to allow for further and necessary provision of data and plan documents to allow the LTD Committee to execute its work and comply with its fiduciary duties to the estate.

28.     Additionally, multiple inquiries have come from LTD Plan Participants. In order to facilitate communication and to avoid any implication of a violation or an implication of a violation of the Federal Anti-Spamming laws, the LTD Plan Participants have been asked to register and provide updated contact information and permission to contact via the LTD Committee website. There is also an option on the LTD Committee website to make an inquiry to allow the LTD Committee to comply with its statutory requirements to address creditor inquiries without violating confidentiality. The website and procedures related to addressing inquiries are governed by the Section 1102 Orders.

29.     LTD Plan Participants have either directly contacted the LTD professionals or submitted inquiries through the website. Some of the constituency, however,

has limited access to electronic mail or the internet because of their medical condition or economic circumstances. As a result, there has been an effort to communicate via the U.S. mail encouraging registration for electronic communication where feasible. As mandated by the supplement to the Section 1102 Orders, a procedure is also set up that requires any inquiry to be analyzed by counsel to determine if it must be brought to the attention of Debtors counsel as it might implicate a request for confidential information.

30.    The LTD Committee also meets once a week and has had to meet twice a week when there has been a request for more immediate committee approval to a request from the Debtors or their professionals. There have also been committee calls more frequently to address critical communications or pending meetings with the Debtors. Because of physical limitations on the LTD Committee members, the times and frequency of some meetings or communicates has also been accommodated.

31.    Issues related to employee benefits and any related claims against the estate have been analyzed, researched and presented to the LTD Committee on several occasions. ERISA issues have figured prominently as well as communicating the results of legal analysis to the Committee in various presentations. As documents have been reviewed over the multiple plan years and new information has come from the Debtors or from LTD Plan Participants, updates to EG's conclusions and analysis have been frequent. The LTD Committee has also discovered that many LTD Plan Participants are eligible for retirement benefits through the PBGC and have asked their counsel to communicate and coordinate with the PBGC to assess options for a potentially large part of its constituency. Issues regarding potential ERISA claims and vesting have been and continue to be analyzed. Managing the legal work flowing from the document production has not ended the analysis, which has had to incorporate the findings of

A&M and the LTD Committee actuary. Furthermore, in order to present the strongest arguments in favor of a settlement between the LTD Plan Participants and Debtors, an analysis of potential claims is a requisite to full and fair advocacy for the LTD Plan Participants.

32.     Despite these efforts, critical work for the LTD Committee and its counsel still remains. With the assistance of A&M, EG continues to construct and analyze the claims of all LTD Plan Participants. The process to construct the LTD Plan Participants' claims has been long and arduous. It has taken EG and A&M several months to obtain the proper information from the Debtors and their benefit providers. It is not clear that all of the proper information has been obtained.

33.     It is also very important to note that the Retiree Committee has been on an almost identical track with the LTD Committee in negotiations with the other parties in this case, and, to the best of the LTD Committee's knowledge, has not engaged in separate negotiations nor has it completed its negotiations. As a matter of fact, upon information and belief, both committees are at the same stage as of the filing of this motion in the process with the Debtors and the Creditors' Committee.

34.     EG and counsel to the Debtors continue to negotiate with respect to such plans and options. Until these issues are resolved, the LTD Plan Participants need counsel representing their interests. The process of negotiation has been ongoing but a formal negotiation has not yet occurred, but is imminent. Should negotiations prove unfruitful, the Debtors with the support of the Creditors' Committee will move to terminate or modify benefits. In order to complete an faithfully and fully perform its duties to the LTD Plan Participants, the LTD Committee will need to object, as necessary, and be allowed to fully exercise all its options,

including but not limited to objection to the termination or modification of the benefits of its constituency and be allowed to pursue all available appellate options.

35.     The presence of the Current Cap creates an artificial and unnecessary constraint on EG in it efforts to zealously represent the LTD Committee.  Should litigation with the Debtors and/or Creditors' Committee be necessary, the LTD Committee would be hamstrung by the presence of a cap, while counsel for the adverse parties would be able to operate without concern for such constraints, particularly as no other party has a similar restraint.  In fact, any adverse party could use the cap as leverage to force the LTD Committee to accept an inferior resolution than could be achieved if no cap was in place.  The cap was placed, voluntarily by the parties who argued for the formation of the LTD Committee, to demonstrate a willingness to carefully watch fees and reduce an unreasonable impact on the estate by the formation of the committee for the benefit of the constituency.  This is not the only consideration utilized by Courts when deciding whether or not to form an additional committee, nor is there any indication that this was the only consideration used by this Court in authorizing the appointment of the LTD Committee.  Most telling, however, has been that EG has staffed the case appropriately, utilized professionals who not only have multiple years of experience, but also an aggressive rate structure, that has positively impacted the estate.  EG has also efficiently and judiciously utilized the resources provided to it to assist the LTD Committee and its professionals.  To date, the reasonableness of EG's fee applications is evidenced by the fact that there have been no objections to any of EG's monthly or quarterly fee applications.

36.     If the cap were lifted, EG would not be entitled to unlimited compensation.  EG's fees and expenses would still be subject to the reasonableness requirements of section 330 of the Bankruptcy Code.  Moreover, EG's fees and expenses would continue to be

subject to the oversight of all parties in interest in these cases, including the Debtors and the U.S. Trustee, as well as the Court. Therefore, there is no reason to limit EG's fees to an artificial cap and continue to require EG to request further increases to the cap.

37.      It is therefore necessary and appropriate for this Court to lift the cap and allow the LTD counsel to be judged according to the same standards as other professionals in these cases receiving fees and expenses from the estate. Alternatively, the LTD Committee requests that this Court increase the Current Cap by an additional $200,000, to $600,000 in the aggregate.

## NOTICE

38.      Notice of this Motion has been provided to (a) counsel to the Debtors; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to the Official Committee of Retired Employees; (d) the United States Trustee for the District of Delaware; and (e) all parties required to receive service under Rule 2002-1(b) of the Local Rules. The LTD Committee respectfully submits that, given the administrative nature of the relief requested, no other notice of the relief requested herein need to be given.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, the LTD Committee respectfully requests the entry of an Order, in the form attached herewith, (i) lifting the cap or, alternatively, increasing the Current Cap an additional $200,000, to $600,000 in the aggregate, and (ii) granting the LTD Committee such other and further relief as is just and proper.

Dated: March 16, 2012
      Wilmington, Delaware

**ELLIOTT GREENLEAF**

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Shelley A. Kinsella (DE Bar No. 4023)
Jonathan M. Stemerman (DE Bar No. 4510)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com
Email: sak@elliottgreenleaf.com
Email: jms@elliottgreenleaf.com

*Counsel to the Official Committee of Long-Term Disability Participants*