## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
                 :

*In re*                          :      Chapter 11

                 :
Nortel Networks Inc., *et al.*,[1]       :      Case No. 09-10138 (KG)

                 :
               Debtors.    :      Jointly Administered

                 :
                 :      **Hearing date:  April 18, 2012 at 10:00 a.m. (ET)**
                 :      **Objections due:  April 11, 2012 at 4:00 p.m. (ET)**
                 :
---------------------------------------------------------X

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## EXPANDING AND CLARIFYING THE ORDER AUTHORIZING THE DEBTORS TO
## FUND CERTAIN SUBSIDIARY AND AFFILIATE WIND-DOWN COSTS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 327 and 363(c)(1) of title 11 of the United States Code (the "Bankruptcy Code"), (i) expanding and clarifying the Order Authorizing the Debtors to Fund Certain Subsidiary and Affiliate Wind-Down Costs, entered on January 11, 2011 [D.I. 4695] (the "Wind-Down Costs Order") to allow the Debtors to employ and retain the Foreign Professionals (as defined below) necessary to wind down their foreign branch offices in accordance with local law; and (ii) granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 327 and 363(c)(1) of the Bankruptcy Code.

## Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. ("NN CALA"),[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

---

[2]      NN CALA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].
[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## **Relief Requested**

7.      By this Motion, the Debtors seek an order, pursuant to sections 105(a), 327 and 363(c)(1) of the Bankruptcy Code, (i) expanding and clarifying the Wind-Down Costs Order to allow the Debtors to employ and retain the Foreign Professionals (as defined below) to wind down the Branch Offices (as defined below); (ii) authorizing, but not directing, the Debtors to enter into, execute, deliver, certify, file and/or record, and perform such agreements, instruments, certificates, or other documents, including providing limited indemnities to certain Foreign Professionals, and to take such other actions as shall be or become necessary, proper, and desirable to employ and retain the Foreign Professionals in connection with the wind down

---

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

processes of the Branch Offices; and (ii) granting them such other and further relief as the Court deems just and proper.

## Facts Relevant to this Motion

8.    As of the date hereof, the Debtors have seven branch offices registered under the laws of foreign jurisdictions (the "Branch Offices"), all of which the Debtors expect will be liquidated or deregistered pursuant to local law.  NNI has Branch Offices in Tunisia, Egypt and Puerto Rico; NN CALA has Branch Offices in Uruguay, Puerto Rico and Trinidad & Tobago; and Nortel Networks International Inc. ("NNII") has a Branch Office in Dubai.  None of these Branch Offices is incorporated separately as a corporate subsidiary, nor does any Branch Office otherwise constitute a separate legal entity for purposes of U.S. corporate law and bankruptcy law.

9.    Over the course of these chapter 11 cases, the Debtors have diligently worked to wind down the operations of the Branch Offices and to liquidate or deregister the Branch Offices pursuant to local law.  As part of the wind-down process, the Debtors have used and expect to continue to use the services of foreign professionals including, without limitation, lawyers, accountants, liquidators and tax advisors (the "Foreign Professionals") to assist the Debtors to prepare for liquidation and deregistration processes in relevant jurisdictions.  These Foreign Professionals have worked and will continue to work in consultation with and at the direction of the Debtors and their counsel for these chapter 11 cases.  A list of the Foreign Professionals who are currently employed and whom the Debtors expect to employ in the future is attached to this Motion as **Exhibit B**.

10.    The Debtors are authorized under the Wind-Down Costs Order to pay reasonable liquidation costs in an aggregate post-petition amount not to exceed $8 million without having to

obtain further Court approval.  However, it is not clear from the language of the Wind-Down

Costs Order whether or not retention of the Foreign Professionals is subject to section 327 of the

Bankruptcy Code or any other retention and/or fee approval procedure enunciated in the

Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Basis for Relief

11.    Because the Foreign Professionals will not be involved in the administration of

these chapter 11 cases, the Foreign Professionals are not "professionals" within the meaning of

section 327 of the Bankruptcy Code, whose retention must be approved by the Court.  See In re

First Merchants Acceptance Corp., 1997 Bankr. LEXIS 2245, 8-9 (Bankr. D. Del. 1997).  The

First Merchants criteria are consistent with those utilized by other courts when examining the

types of duties to be undertaken by a "professional."  See, e.g., Elastead v. Nolden (In re That's

Entm't Mktg. Group), 168 B.R. 226, 230-31 (N.D. Cal. 1994) (only retention of professionals

whose duties are central to administration of estate requires prior court approval under section

327); In re Madison Mgmt. Group, Inc., 137 B.R. 275, 283-84 (Bankr. N.D. Ill. 1992) (same); In

re Riker Indus., Inc., 122 B.R. 964, 973 (Bankr. N.D. Ohio 1990) (no need for section 327

approval of fees of management and consulting firm whose "services were not central to [the]

bankruptcy case"); In re D'Lites of Am., Inc., 108 B.R. 352, 355 (Bankr. N.D. Ga. 1989)

(section 327 approval not necessary for "one who provides services to debtor that are necessary

regardless of whether petition was filed"); In re Fretheim, 102 B.R. 298, 299 (Bankr. D. Conn.

1989) (only those professionals involved in the actual reorganization effort require approval

under section 327); In re Pacific Forest Indus., Inc., 95 B.R. 740, 743 (Bankr. C.D. Cal. 1989)

(same); In re Johns-Manville Corp., 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1989) (only those

professionals involved in the actual reorganization effort, rather than debtor's ongoing business, require approval under section 327).

12.    Nevertheless, out of abundance of caution and due to the essential nature of the Foreign Professionals in the Debtors' ongoing wind-down efforts, the Debtors seek the relief requested herein to avoid any subsequent controversy as to the Debtors' employment of the Foreign Professionals.[5]

13.    The purpose behind section 327 is "to allow the bankruptcy court to control administrative expenses."  In re Madison Management Group, Inc., 137 B.R. at 283 (citing 3 Collier on Bankruptcy ¶ 327.02 (Alan N. Resnick & Henry J. Sommer eds., 15th ed.)); see In re Morton Shoe Cos., 22 B.R. 449, 450-51 (Bankr. Mass. 1982) (The purpose of the rule is to "aid the court in controlling estate administrative expenses.") (citing In re Owl Drug Co., 16 F.Supp. 139, 148 (D.Nev. 1936)).  To the contrary, section 363(c)(1), pursuant to which the Wind-Down Costs Order was sought and granted, allows the debtor to use estate property in the ordinary course of business without a prior hearing so that the debtor can carry out its ordinary course of business while avoiding excessive judicial involvement in its reorganization.  See In re D'Lites of America, Inc., 108 B.R. at 355.

14.    In the instant case, the need to closely monitor and control the administrative expenses has been adequately addressed through the Wind-Down Costs Order, which provides a mechanism for the Court and other interested parties to effectively monitor and control the expenses incurred and paid out in connection with the wind down of the Debtors' non-debtor

---

[5]    The Debtors have already sought specific court approval under section 327 to employ other professionals involved in the actual administration of these chapter 11 cases, and will continue to do so as needed in these chapter 11 cases.  In addition, the Debtors have engaged and continue to engage certain professionals pursuant to the Order Authorizing the Debtors to Retain and Employ Professionals Used in the Ordinary Course of Business *Nunc Pro Tunc* to the Petition Date [D.I. 236].

subsidiaries and Branch Offices by:  (1) placing a cap on the aggregate amount of the expenses, and (2) implementing the notice procedure where the costs exceed certain threshold.

15.    Specifically, the Wind-Down Costs Order authorizes, but does not direct, the Debtors to "pay the Wind-Down Costs in an aggregate post-petition amount not to exceed $8 million without need to obtain further Court Approval."  (Wind-Down Costs Order ¶ 2.)  The term "Wind-Down Costs" is defined in the Debtors' Motion for Entry of an Order Authorizing the Debtors to Fund Certain Subsidiary and Affiliate Wind-Down Costs [D.I. 4639] (the "Wind-Down Costs Motion") as "reasonable liquidation costs, including payment of outstanding local tax obligations" incurred in connection with the wind down of the Debtors' non-debtor subsidiaries and Branch Offices.  (Wind-Down Costs Motion ¶ 13.)  In addition, under the Wind-Down Costs Order, prior to executing any payment, transfer, intercompany loan, or equity infusion that would result in outstanding post-petition payments in excess of $100,000 being extended to or for the benefit of a specific foreign office, the Debtors are required to file with the Court a notice and provide five (5) business day notice to the Committee and the U.S. Trustee. (Wind-Down Costs Order ¶ 2.)

16.    As part of the relief sought in this Motion, the Debtors seek authority to enter into, execute, deliver, certify, file and/or record, and perform such agreements, instruments, certificates, or other documents, including providing limited indemnities to certain Foreign Professionals, and to take such other actions as shall be or become necessary, proper, and desirable to employ and retain the Foreign Professionals in connection with the wind down processes of the Branch Offices.

17.    Flexibility is critical to allow the Foreign Professionals to comply with local laws applicable to wind down processes that govern the Branch Offices.  For example, in certain

jurisdictions (including without limitation Uruguay, Tunisia and Dubai), the Debtors are required to appoint, grant power of attorney to, and/or register with the corporate registry or other local authorities, local individuals to act as representative or liquidator of the relevant Branch Office. In such cases, in addition to the entities that are or will be retained as Foreign Professionals to provide wind down services to the Debtors, individuals from those entities may need to be separately engaged and designated to serve certain functions under local law that are necessary to wind down the Branch Offices. Given the possibility of shifting requirements in these jurisdictions, the Debtors need flexibility to enter into additional arrangements and execute documents – which despite the best efforts of the Debtors and their advisors are not known at this time – to the extent necessary to facilitate the wind downs. Also, in certain instances, as part of the engagement of the Foreign Professionals, the Debtors may need to provide limited indemnities to certain of the Foreign Professionals. Given the limited scope of engagement and size of the assets and potential liabilities of the Branch Offices, the Debtors believe that such indemnities, if required, will be immaterial compared to the size of the Debtors' estates. In any event, in order to minimize the potential exposure, any such indemnity will be provided in only limited circumstances by the relevant Branch Office, and will be paid only from funds held in the local jurisdiction in the name of the Branch Office. Moreover, these funds cannot be repatriated free and clear of potential liabilities until the liquidation or deregistration of the relevant Branch Offices are completed in accordance with local law.

18.    The Debtors respectfully submit that the retention and compensation of the Foreign Professionals under the expanded Wind-Down Costs Order are in the best interests of their estates, creditors, and other parties in interest. The Foreign Professionals are and will be performing necessary services for the Debtors to effectively and efficiently wind down the

Branch Offices in consultation with and at the direction of the Debtors and their chapter 11 counsel, and with no increase in the cap on costs approved in the Wind-Down Costs Order.

19.     Based on the foregoing, the Debtors submit that the relief sought herein is essential, appropriate, and in the best interests of the Debtors' estates and their creditors, and therefore should be granted in these chapter 11 cases.

## Notice

20.     Notice of the Motion has been given via first class mail, electronic transmission, hand delivery or overnight mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

21.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  March 28, 2012
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

    - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*