## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------- X
                           :

*In re*                       :      Chapter 11

                           :

Nortel Networks Inc., *et al.*,[1]    :      Case No. 09-10138 (KG)

                           :

                Debtors.    :      Jointly Administered

                           :

                           :      **Hearing date: May 9, 2012 10:00 a.m. (ET)**
                           :      **Objections due: April 24, 2012 4:00 p.m. (ET)**

--------------------------------------------------------- X

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION OF SETTLEMENT BY AND AMONG CERTAIN AMPHENOL AFFILIATES AND THE DEBTORS

The Debtors hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as **Exhibit A,** pursuant to sections 105(a), 501, 502, 503(b)(9), 547, and 550 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a)authorizing the Debtors to enter into and approving a stipulation with Amphenol Corporation ("Amphenol Corp."), and to the extent provided for therein, each of Amphenol Interconnect Products Corp. ("Amphenol Interconnect"), Amphenol Printed Circuits ("Amphenol Circuits") and Amphenol Technical Products International ("Amphenol International," collectively with Amphenol Corp., Amphenol Interconnect and Amphenol Circuits, the "Claimants"), Amphenol Connex Corporation

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are:  Nortel Networks Inc. (6332) ("NNI") Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226) (collectively, with each of their respective estates, the "Debtors").  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

("Amphenol Connex," and collectively with the Claimants and the Debtors, the "Parties"), in the form attached hereto as **Exhibit B** (the "Stipulation"), which: (i) settles and resolves the claims set forth in the proofs of claim listed on the Debtors' claim registry as claim numbers 5499 - 5506 (the "Claims"), (ii) settles and resolves potential preferential transfers against certain of the Claimants and Amphenol Connex, (iii) settles and resolves the Post-Petition Demand (as defined below) of Amphenol Corp., and (b) granting the Debtors such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 501, 502, 503(b)(9), 547 and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a)and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.    On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors and a Monitor, Ernst & Young Inc., was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration under the control of individuals from Ernst & Young LLP.  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.    Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

---

[3]    The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]    The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

## Facts Relevant to this Motion

**A.    The Claims**

7.    Amphenol Corp. and its affiliates have filed and asserted a number of prepetition

claims in these proceedings.  The details regarding each of such claims are as follows:

a.    On May 25, 2009, pursuant to the Bankruptcy Court's *Order Establishing Procedures for Addressing Reclamation Demands Pursuant to Sections 105(a), 362 and 546(c) and Rule 9019 of the Federal Rules of Bankruptcy Procedure* [D.I. 336] and the *Notice of Proposed Settlement of Reclamation Demands of Amphenol Corporation and its Affiliates* [D.I. 749], the *Stipulation of Settlement of Reclamation Demand of Amphenol Corporation and its Affiliates* (the "Reclamation Claim Settlement") was approved.  Under the Reclamation Claim Settlement, Amphenol Corp. was granted an allowed reclamation claim against NNI in the amount of $95,872.84 and NNI paid $95,872.84 to Amphenol Corp. in full and final satisfaction of such claim, which claim and payment are not affected by the Stipulation.

b.    On September 14, 2009, Amphenol Circuits filed proof of claim number 2930 asserting a claim in the amount of $5,828.74 against NNI ("Claim No. 2930").  Claim No.2930 was disallowed in full by the Bankruptcy Court's *Order Granting Debtors' First Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. §502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (Amended Claims)* [D.I. 2324].

c.    On September 30, 2009, Amphenol Corp. filed proof of claim number 5499 asserting a claim in the amount of $1,259,036.96 ($84,061.54 of which was asserted as entitled to administrative expense priority) and certain other contingent, unliquidated claims against NNI ("Claim No. 5499").

d.    On September 30, 2009, Amphenol Corp. filed proof of claim number 5500 on a 503(b)(9) claim form asserting an administrative expense priority claim in the amount of $64,009.49 against NNI ("Claim No. 5500").

e.    On September 30, 2009, Amphenol Corp. filed proof of claim number 5501 on a 503(b)(9) claim form asserting an administrative expense priority claim in the amount of $84,061.54 against NNI ("Claim No. 5501").

4

f.  On September 30, 2009, Amphenol International filed proof of claim number 5502 on a 503(b)(9) claim form asserting an administrative expense priority claim in the amount of $84,061.54 against NNI ("Claim No. 5502").

g.  On September 30, 2009, Amphenol Corp. filed proof of claim number 5503 asserting a claim in the amount of $205,172.54 ($64,009.49 of which was asserted as entitled to administrative expense priority) and certain other contingent, unliquidated claims against NNI ("Claim No. 5503").

h.  On September 30, 2009, Amphenol Circuits filed proof of claim number 5504 asserting a claim in the amount of $5,828.74 and certain other contingent, unliquidated claims against NNI ("Claim No. 5504").

i.  On September 30, 2009, Amphenol International filed proof of claim number 5505 asserting a claim in the amount of $1,202,924.83 ($84,061.54 of which was asserted as entitled to administrative expense priority) and certain other contingent, unliquidated claims against NNI ("Claim No. 5505").

j.  On September 30, 2009, Amphenol Interconnect filed proof of claim number 5506 asserting a claim in the amount of $50,283.39 and certain other contingent unliquidated claims against NNI ("Claim No. 5506").

8.  The Debtors objected to Claim Nos. 5500, 5501, 5502, 5505, and 5506 on the basis that these claims were redundant of Claim Nos. 5499 and 5503. *Debtors' Fourteenth Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. §502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No Liability Claims, Reduce and Allow Claims, Redundant Claims, Satisfied Claims, Wrong Debtor Claims, No Basis 503(b)(9) Claims and Misclassified 503(b)(9) Claims* [D.I. 3942]. Claimants dispute certain of the redundancies asserted by the Debtors. A hearing on this objection with respect to the claims filed by Amphenol Corp. and its affiliates has been continued numerous times, most recently to June 6, 2012.

**B.   The Potential Preference Action**

9.  NNI's books and records reflect that within ninety (90) days prior to the Petition Date, NNI made one or more transfers of an interest in its property to or for the benefit of

5

Amphenol Corp., Amphenol International, Amphenol Interconnect and Amphenol Connex (collectively, the "Subject Transfer Recipients") in the aggregate amount of $1,915,669.15.

10.    In October 2010, NNI informed Amphenol Corp. of the Subject Transfer Recipients' potential preference exposure according to NNI's books and records.

11.    NNI and Amphenol Corp., on behalf of itself and its affiliates, entered into a tolling agreement on January 12, 2011.  The tolling agreement provided that the running of any applicable limitations period, including the time period set out in section 546(a) of the Bankruptcy Code and any applicable statute of limitations, was to be deemed tolled until February 28, 2011 with respect to any claim, action or proceeding relating in any respect to the transfers identified at that time, pursuant to sections 547, 550, 551 or 502(d) of the Bankruptcy Code or under any other provision of law or legal theory (collectively, including for the avoidance of doubt, the Indirect Preference[5], the "Potential Preference Action").  The tolling agreement has been extended numerous times on consent of the Parties, most recently until May 20, 2012.  Amphenol Corp. has informed the Debtors that it disputes that it has any liability related to such alleged preferential transfers and has informally asserted various defenses with respect to them, including, without limitation, the ordinary course defense and the new value defense, the merits of which NNI disputes.

C.    **Post-Petition Demand**

12.    On July 14, 2009, in the ordinary course of business, Amphenol Corp., on behalf of itself and its affiliates (collectively, "Amphenol"), and NNI entered into an agreement (the "Post-Petition Agreement") under which, among other things, Amphenol Corp. agreed to purchase and maintain sufficient inventory in order to satisfy purchase orders placed by NNI on

---

[5]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Stipulation.

certain terms and NNI agreed to purchase certain remaining inventory from Amphenol in the event NNI discontinued its operations or in certain other circumstances in accordance with the Post-Petition Agreement (the "Remaining Inventory").

13.    On November 18, 2010, Amphenol Corp. asserted that NNI was obligated to purchase the Remaining Inventory in the amount of $1,030,522 under the Post-Petition Agreement, an amount later reduced to $1,024,676 (the "Post-Petition Demand") as a result of mitigation efforts by Amphenol.  NNI disputes this liability and has informally asserted various defenses to payment of the full amount of the Post-Petition Demand, which in turn Amphenol disputes.

**D.    The Stipulation of Settlement**

14.    In view of the quantum of the Claims, the Potential Preference Action and the Post-Petition Demand, as well as the attendant costs and risks of litigation, the Parties engaged in arm's-length settlement negotiations.  As a result of these negotiations, subject to this Court's approval, the Debtors have reached a compromise with the Claimants and Amphenol Connex to settle and resolve their disputes pursuant to the terms of the Stipulation.

15.    The Debtors believe, in the exercise of their business judgment, that resolving the Claims, the Potential Preference Action and the Post-Petition Demand pursuant to the terms of the Stipulation is appropriate and is in the best interest of both their estates and their creditors.

**Relief Requested**

16.    By this Motion, the Debtors seek an order, pursuant to sections 105(a), 501, 502, 503(b)(9), 547 and 550 of the Bankruptcy Code and Bankruptcy Rule 9019: (i) approving the Stipulation; (ii) authorizing the Debtors to enter into the Stipulation; (iii) allowing Claim No. 5499 on a final basis as a general unsecured claim in the reduced amount of $1,197,515.49 and separately disallowing the administrative expense portion of Claim No. 5499 in its entirety; (iv)

7

allowing Claim No. 5501 on a final basis as an administrative expense claim pursuant to section 503(b)(9) of the Bankruptcy Code in the reduced amount of $61,521.47; (v) allowing Claim No. 5503 on a final basis as a general unsecured claim in the reduced amount of $130,172.54 and separately disallowing the administrative expense portion of Claim No. 5503 in its entirety; (vi) disallowing and expunging Claim Nos. 5500, 5502, 5504, 5505 and 5506 in their entirety; (vii) authorizing NNI to pay Amphenol Corp. or its designee $595,000 in accordance with the terms of the Stipulation;  and (viii) granting the Debtors such other and further relief as the Court deems just and proper.

### Basis for Relief

17.    The Debtors seek authorization for the Debtors to enter into the Stipulation under sections 105, 501, 502, 503(b)(9), 547 and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

18.    Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts."  In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for

Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  And

courts in this District have recognized that the approval of a proposed compromise and

settlement is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram

Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

19.    Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re

Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211

B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the

need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer

Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best

possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.

Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below

the lowest point in a range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of

Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at

330.

20.    The Third Circuit has set out four criteria for a bankruptcy court to consider when

evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62

B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.),

283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

21.     The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation.  In particular, the Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Claims, the Potential Preference Action and the Post-Petition Demand.  The proposed settlement[6] (i) provides for the disallowance and expungement of Claims Nos. 5500, 5502, 5504, 5505 and 5506; (ii) reduces Claim No. 5499 from $1,259,036.96 to $1,197,515.49 (a reduction of $61,521.47); (iii) reduces Claim No. 5501 from $84,061.54 to $61,521.47 (a reduction of $22,540.07); (iv) reduces Claim No.5503 from $205,172.54 to $130,172.54 (a reduction of $75,000); (v) resolves the Post-Petition Demand by reducing NNI's potential cash liability by $429,676; and (vi) resolves the Potential Preference Action by NNI's agreement not to commence such action.

22.     In addition, the Stipulation provides for mutual releases, customary in a stipulation of this type, between the Debtors and the Claimants and Amphenol Connex, which provide the Debtors with additional certainty going forward in these proceedings.

23.     The Debtors consulted the Committee with regard to the Stipulation prior to the filing of this Motion, and the Committee has expressed no objection to the Stipulation.

24.     The Debtors are prepared to litigate the Claims, the Potential Preference Action and the Post-Petition Demand and believe that there is a reasonable likelihood they would succeed in such litigation by (a) reducing the amount of the Claims by a small margin, (b) prevailing on the Potential Preference Action, and (c) substantially reducing the amount asserted by Amphenol Corp. in the Post-Petition Demand.  However, the Debtors recognize that such litigation would carry inherent uncertainties and there can be no assurance that they would achieve a better result than the one set forth in the Stipulation.  One significant issue that the

---

[6]     In the event of any discrepancy between the description of the Stipulation in this Motion and the terms of the Stipulation, the terms of the Stipulation shall govern.

Debtors would ultimately face if they were to litigate the Post-Petition Demand is the need to take factual discovery regarding its contents. The Post-Petition Demand consists of an Excel spreadsheet with thousands of rows of data, reflecting asserted claims for various inventory items. In addition to the cost burden that such discovery would entail, at this late stage in these chapter 11 proceedings, the Debtors maintain a limited number of employees with the know-how and background in analyzing this sort of factual data. The resolution set forth in the Stipulation fairly balances the Debtors' likelihood of success on the merits of the Claims, the Potential Preference Action and the Post-Petition Demand against their interest in avoiding the costs, uncertainty and other burdens of litigation.

25.     Finally, further litigation of the Claims, the Potential Preference Action and the Post-Petition Demand would result in the estate's expenditure of considerable additional legal fees, including fees in connection with discovery that would be required to litigate the Post-Petition Demand. In the absence of a settlement, the Debtors' estates would be burdened with the time and costs of ongoing litigation, which would be disruptive of the estates' efforts to resolve the matters that are essential to the ultimate resolution of these cases.

26.     In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

## Notice

27.     Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Claimants and Amphenol Connex; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; (v) the Debtors' subsidiaries; and (vi) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

11

**No Prior Request**

28.     No prior request for the relief sought herein has been made to this or any other

court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and

the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.

Dated:  April 10, 2012                    CLEARY GOTTLIEB STEEN & HAMILTON LLP
        Wilmington, Delaware

                                          James L. Bromley (admitted *pro hac vice*)
                                          Lisa M. Schweitzer (admitted *pro hac vice*)
                                          One Liberty Plaza
                                          New York, New York 10006
                                          Telephone:  (212) 225-2000
                                          Facsimile:  (212) 225-3999

                                               - and -

                                          MORRIS, NICHOLS, ARSHT & TUNNELL LLP


                                          _____*/s/ Chad A. Fights*_____
                                          Derek C. Abbott (No. 3376)
                                          Eric D. Schwartz (No. 3134)
                                          Ann C. Cordo (No. 4817)
                                          Chad A. Fights (No. 5006)
                                          1201 North Market Street
                                          P.O. Box 1347
                                          Wilmington, Delaware 19801
                                          Telephone:  (302) 658-9200
                                          Facsimile: (302) 658-3989

                                          *Counsel for the Debtors*
                                          *and Debtors in Possession*