IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
: Chapter 11
In re: :
: Case No. 09-10138 (KG)
: (Jointly Administered)
Nortel Networks Inc., *et al.*,[1] :
: **Related Docket No.  7463**
Debtors. : **HRG. DT: April 18, 2012 @ 10:00 a.m.**
: **OBJ. DL: April 11, 2012 @ 4:00 p.m.**
---------------------------------------------------------------x

**RESPONSE OF THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES TO THE DEBTORS' MOTION FOR APPOINTMENT OF A NEUTRAL MEDIATOR CONCERNING THE MODIFICATION OR TERMINATION OF THE NORTEL RETIREE WELFARE PLANS AND THE NORTEL LONG-TERM DISABILITY PLAN**

The Official Committee of Retired Employees of the above-captioned Debtors (the "Retiree Committee") hereby responds (the "Response") to the Debtors' motion (the "Motion") for an order pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 9019-2, 9019-3 and 9019-5 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for, *inter alia*, the appointment of a neutral mediator concerning the Debtors' desire to modify or terminate the Retiree

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

Welfare Plans and the Nortel LTD Plan.[2] In support of this Response, the Retiree Committee respectfully represents:

## PRELIMINARY STATEMENT

1. After years of loyal service to the Debtors, the Retirees are among the most vulnerable creditors in these cases, despite having fully performed their duties and having contributed substantial value to the Debtors' businesses.

2. They are yesterday's news. Their needs are of no importance.

3. For different reasons than stated by the Debtors in the Motion, the Retiree Committee supports the appointment of a neutral mediator to facilitate a consensual resolution of issues concerning the future of the Retiree Welfare Plans.

4. The Debtors had intended to terminate all retiree benefits, relying on their belief that they had the unilateral right to do so. On June 21, 2010, the Debtors filed a termination motion that was opposed by several parties, including the United States Trustee.

5. Approximately one month later, the United States Court of Appeals for the Third Circuit issued an opinion in the Chapter 11 case of Visteon Corporation holding that all the procedures set forth in section 1114 of the Bankruptcy Code apply to all retiree benefits plans, even those plans that could have been terminated at will outside of bankruptcy. *See IUE-CWQ v. Visteon Corp. (In re Visteon Corp.),* 612 F.3d 210 (3d Cir. 2010).

---

[2] Capitalized terms which are not defined herein shall have the meanings set forth in the Motion.

6. Faced with Visteon, the Debtors withdrew their termination motion on July 15, 2010.

7. The Retiree Committee was not appointed until more than 2-1/2 years after the Petition Date, and a year after the original termination motion was made. Its professionals were not in place until the end of October, 2011.

8. These are large and complex cases and it has taken significant time for the Retiree Committee to become operational. It has required time to identify issues and obtain information from the Debtors, some of which has yet to be furnished, in no small part because now, nearly three years into the case, the Debtors only have an overburdened skeleton staff. The Retiree Committee has been patient and reasonable in its requests for documents and information that are needed to properly evaluate the Debtors' proposal.

9. Part of the dynamic here is that although the Debtors are in possession, they are really stakeholders for other constituents represented by the unsecured creditors committee ("UCC") and bondholders. It is clear from the last meeting with the Debtors, attended by representative of the UCC and bondholders, that an agreement requires their active involvement. Without any pecuniary interest in the outcome, the Debtors have been strident in their views, and not constructive in reaching a settlement.

**RESPONSE**

10. If mediation is to succeed, all parties must agree with the choice of mediator, but the Debtors' Motion and proposed Order deprive the Retiree Committee

3

of an opportunity to participate in the selection of a mediator. (*See* Motion at ¶25). It is universally accepted that the best and proper procedure is for the parties to discuss the choice of a mediator and attempt to reach agreement. Recognizing this fact, the Local Rules of this Court provide:

> Upon assignment of a matter to mediation … and unless special circumstances exist as determined by the Court, ***the parties shall select a mediator*** ….

Local Rule 9019-2(e)(i) (emphasis added).

11. The Retiree Committee requests that the Order require the parties to negotiate in good faith for a reasonable time concerning the choice of a mediator. If the parties cannot reach agreement, then the Court may appoint a mediator. This procedure is more likely to result in the prompt and consensual resolution of Retiree Welfare Plan issues. The Retiree Committee's revised proposed form of Order is annexed hereto as Exhibit "1." It was provided to the Debtor prior to the filing of the Motion and was summarily rejected. That will give the Court a sense of what the Retiree Committee is up against.

12. This Response must also, unfortunately, correct certain misstatements contained in the Debtors' Motion. The Debtors apparently felt it necessary to suggest that the parties have not yet reached resolution because of delays by the Retiree Committee. That is a mischaracterization of the record, and a brief clarification is appropriate.

13. Any proposal to modify retiree benefits must comply with Bankruptcy Code Section 1114, which provides, among other things, that a debtor

seeking to modify retiree benefits must propose "modifications in the retiree benefits that are *necessary*…and assure[] that *all creditors, the debtor and all of the affected parties are treated fairly and equitably*…." 11 U.S.C. § 1114(f)(1) (emphasis added). Debtors are also required to provide sufficient information to an authorized representative to enable it to evaluate such proposal. 11 U.S.C. § 1114(f)(1).

14. The Debtors have not demonstrated to the Retiree Committee that a proposed modification of benefits would be "necessary" or that retirees are being treated fairly and equitably. *See* 11 U.S.C. § 1114(f)(1)(B).

15. Given that the cost of retiree benefits is a very small fraction of the billions of dollars in dispute, it is unclear how Retirees could determine that the Debtors' proposed modification of their benefits is "generous and reasonable," as the Debtors self-servingly claim. (Motion at ¶ 23).

16. The Debtors have provided documents and information slowly and in a series of document productions over the course of months – the most recent of which occurred only one week before the Motion was filed. However, key benefit plan documents and communications between Nortel and its employees about those plan documents have not yet been produced.[3] On several occasions, including in their Motion, the Debtors have simply declared that producing requested documents would

---

[3] For example, the Debtors assert that they provide benefits to Retirees pursuant to the Retiree Welfare Plans "and other formal or informal benefit plans or arrangements made on a group or individual basis." Motion at ¶ 8. However, the Debtors have not produced to the Retiree Committee any "informal benefit plans or arrangements made on a group or individual basis," even though such documents would be responsive to prior requests by the Retiree Committee.

impose an unexplained "undue burden" but that is believed to be because of the small size of the Debtors' staff not that the documents are missing or destroyed. Also, the Retiree Committee's analysis of information that the Debtors have provided has been significantly delayed by the Debtors' provision of inconsistent and contradictory data.[4] The Retirees, whose lives could be dramatically affected by the Debtors' proposed modification of the Retiree Welfare Plans, have to date been deprived of important documents and information to which they are statutorily entitled.

17. Despite the Debtors' failure to produce complete and reliable retirement plan and financial information, the Retiree Committee has maintained a continuing dialogue with the Debtors, has made substantial efforts to resolve document disputes, and has met with the Debtors with the Retiree Committee members in attendance. The Retiree Committee has been willing to engage in meaningful negotiations to reach a fair and equitable resolution with the Debtors. Although to date, there have been none. The Debtors have seen the parties' meetings more as opportunities to attempt to dictate to the Retiree Committee than as opportunities to negotiate in an effort to reach common ground.

18. There are additional other points the Retiree Committee could

---

[4] The Debtors own pleadings in the Chapter 11 cases reveal these inaccuracies. For example, the Debtors' June 2, 2011 motion for an order directing the appointment of the Retiree Committee [D.I. 5568] stated that there were 3,306 individual participants in the retiree plans (2,119 retirees and 1,187 spouses or dependants). However, just one year earlier, the Debtors filed a motion to terminate the Retiree Welfare Plan and stated that there were 4,019 individual participants (2,592 retirees and 1,490 spouses/ dependants) -- a discrepancy of 713 participants which the Debtors never explained. Through diligence, the Retiree Committee has determined that the number of eligible retirees and their spouses and dependents will ultimately be closer to 4,800, an <u>increase</u> of approximately 700.

make to correct the record, to protest certain aspects of the Debtors' conduct to date, and to document the Committee's own diligence and good faith. Instead, however, the Retiree Committee is focused on a single goal: to help move discussions of Retirees' benefits to a consensual conclusion. For this reason, the Committee supports the Debtors' proposal that a mediator should be appointed. And for the same reason, the Retiree Committee requests that any order granting the Motion and the appointment of a mediator reflect the parties' joint consent to the person who is chosen to mediate with the parties.

19. Moreover, in view of the clarification of the record provided above, the revised proposed order that is annexed hereto provides that by granting the relief sought in the Motion, the Court is not making a finding that any party has or has not satisfied its obligations under Bankruptcy Code section 1114. In addition, the proposed order should be clarified to provide that mediation will not alter the legal *status quo*, and consequently that Retiree benefits will continue, as required by section 1114, during the mediation process.

**[Remainder of page intentionally left blank]**

WHEREFORE, the Retiree Committee respectfully request that this Court enter the proposed order attached hereto as **Exhibit "1."**

Dated: April 11, 2012  
      Wilmington, DE

**MCCARTER & ENGLISH, LLP**

/s/ William F. Taylor, Jr.  
William F. Taylor, Jr. (DE Bar I.D. #2936)  
Renaissance Centre  
405 N. King Street, 8th Floor  
Wilmington, DE 19801  
(302) 984-6300  
(302) 984-6399 Facsimile  
wtaylor@mccarter.com

-and-

Albert Togut, Esquire  
Neil Berger, Esquire  
Togut, Segal & Segal LLP  
One Penn Plaza  
New York, New York 10119  
(212) 594-5000  
(212) 967-4258 Facsimile  
neilberger@teamtogut.com

*Counsel to the Official Committee of Retirees*