**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| NORTEL NETWORKS INC., *et al.*,[1] | ) |
| | ) Case No. 09-10138 (KG) |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |
| | ) **Re: Docket No. 7463** |
| | ) |
| | ) Objection Deadline: April 11, 2012 |
| | ) Hearing Date: April 18, 2012 at 10:00 a.m. |

**THE OFFICIAL COMMITTEE OF LONG TERM DISABILITY PARTICIPANTS'
RESPONSE TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPOINTING
A NEUTRAL MEDIATOR CONCERNING THE MODIFICATION OR TERMINATION
OF THE NORTEL RETIREE WELFARE PLANS AND THE NORTEL LONG
TERM DISABILITY PLANS; (II) AUTHORIZING DEBTORS TO
PAY THE COSTS OF ENGAGEMENT; AND (III) GRANTING RELATED RELEIF**

The Official Committee of Long Term Disability Participants (the "LTD Committee")

hereby responds (the "Response") to the *Motion for Entry of an Order (I) Appointing a Neutral*

*Mediator Concerning the Modification or Termination of the Nortel Retiree Welfare Plans and*

*the Nortel Long Term Disability Plans; (II) Authorizing the Debtors to Pay the Costs of*

*Engagement; and (III) Granting Related Relief* (Docket No. 7463) (the "Mediation Motion"),

filed by the above-captioned debtors (collectively, the "Debtors") on March 28, 2012.  In support

of this Response, the LTD Committee respectfully submits as follows:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

## I.   PRELIMINARY STATEMENT

1.      The LTD Committee does not find offensive the idea of mediation and hopes to move forward to resolve the issues related to modification or termination of LTD and Retiree benefits with the Retiree Committee (as defined herein), the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and the Debtors.  The LTD Committee does not object to the relief requested in the Mediation Motion, with certain exceptions set forth herein.

2.      What the LTD Committee finds offensive is the mischaracterization of the actions of the LTD Committee and its professionals in the months that have passed since the LTD Committee and Retiree Committee were formed.

3.      Despite the request of the LTD Committee and Retiree Committee (collectively, the "Committees") for certain modest modifications to the Mediation Motion's proposed order and constructive discussions with the Creditors' Committee regarding the modification requests, the Debtors failed to timely respond to these overtures, which combined with the Debtors' mischaracterization of the progress to date, made the filing of this Response necessary.  The LTD Committee is hopeful that it will be able to reach an agreement regarding a consensual revised proposed order prior to the hearing and has been very recently contacted by the Debtors to that end.  It is the hope of the LTD Committee that the Debtors will agree to accommodate the very modest requests sought by the Committees.

4.      The LTD Committee objects to the Debtors' general mischaracterization of both the Committees in the Mediation Motion and cautions the Debtors that their disclosures of certain events allegedly having occurred at the meetings between the two Committees and

Debtors, as well as discussions between the parties, comes very close to a violation of the spirit of confidential negotiations memorialized by Federal Rules of Evidence 408.[2]

5. Another concern looms large for the LTD Committee, as the Debtors condition the extension of further fees for LTD Committee counsel to an agreement to mediate. It is extremely improper to condition access to further legal representation on agreement to mediate. *See Debtors' Objection to the Motion of the Official Committee of Long-Term Disability Participants for an Order Lifting, or in the Alternative, Increasing the Limits on Fees for LTD Committee Counsel* ("Cap Objection") (Docket No. 7464). This condition simply confirms the fears of the LTD Committee that the Debtors are manipulating the restrictions on the LTD Committee counsel's legal fees, a fee cap that was proposed and agreed to by undersigned counsel, to gain an unfair tactical litigation advantage that results in an inequitable and unequal bargaining advantage for the Debtors and the Creditors' Committee.[3] The LTD Committee will be preparing a reply to address the Cap Objection in detail, but addresses the issue here as it is directly relevant to the relief requested by the Debtors' in the Mediation Motion.

---

[2] Rule 408 of the Federal Rules of Evidence – Compromise Offers and Negotiations – provides as follows:
(a) Prohibited Uses. Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
(1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
(2) conduct or a statement made during compromise negotiations about the claim – except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

[3] To be clear, though the Creditors' Committee counsel does not support this same linkage of authority to pay legal counsel with agreement to mediation, its client and creditor constituency will benefit from it nonetheless.

## II.    RELEVANT BACKGROUND

6.    On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.[4] filed in the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which are consolidated for procedural purposes only.   The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.    Since the Petition Date, the Debtors have sold their business units and other assets to various purchasers. *See Mediation Motion,* ¶ 6.

8.    On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "UST") appointed the Creditors' Committee (Docket Nos. 141 and 142); an *ad hoc* group of bondholders was also organized.

9.    On June 2, 2011, the Debtors filed a motion seeking appointment of a committee of retirees (the "Retiree Committee") to serve as the official representatives for the retirees to engage in good faith negotiations regarding the termination or modification of the retiree welfare and benefit plans, pursuant to section 1114 of the Bankruptcy Code (Docket No.5568) (the "Retiree Committee Appointment Motion").

10.    On June 3, 2011, a significant number of participants of the Debtors long term disability plans ("LTD Participants") filed a joinder to the Retiree Committee Appointment Motion (Docket No. 5595).   Contemporaneously, the LTD Participants filed a motion seeking appointment of a committee as the official representative for LTD Participants (Docket No. 5595) (the "LTD Committee Appointment Motion").   Additionally, multiple other LTD Participants filed correspondence with the Court supporting the relief sought in the Retiree and

---

[4]   Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes (Docket No. 1098).

LTD Committee Appointment Motions. (*See, e.g.,* Docket Nos. 5659-61, 5670-76, 5678-81, 5694-5701, 5703-5708, 5712-5716 and 5760-5764).

11.     On June 21, 2011, the Court ordered the appointment of the Retiree Committee (Docket No. 5783) (the "Retiree Committee Appointment Order"). The Retiree Committee consists of the following members appointed by the UST:  Gary R. Donahee, Michael P. Ressner, Susan Kane, John T. Zalokar, and Mark M. Haupt, Sr.. On September 20, 2011, this Court entered an Order authorizing the employment and retention of Togut, Segal & Segal LLP as Retiree Committee counsel, *nunc pro tunc* to August 22, 2011 (Docket No. 6412). On September 20, 2011, this Court entered an Order authorizing the employment and retention of McCarter & English, LLP as local counsel to the Retiree Committee *nunc pro tunc* to August 26, 2011 (Docket No. 6413).

12.     On June 22, 2011, the Court authorized the appointment of the LTD Committee (Docket No. 5790) (the "LTD Committee Appointment Order"). On August 2, 2011 (the "Retention Date"), the LTD Committee was formed and selected Elliott Greenleaf ("EG") as proposed counsel to the committee. The LTD Committee consists of the following members: Wendy Boswell Mann, Daniel D. David, Dianna L. Irish, Paul E. Morrison, Barbara Gallagher, Michael Stutts, and Deborah Jones. *See Amended Notice of Appointment of Unsecured Creditors* (Docket No. 6080). Prior to the Retention Date, EG acted as counsel to Barbara Gallagher and 58 other LTD Participants. On September 20, 2011, the Court entered an Order authorizing the employment and retention of EG as LTD Committee counsel, *nunc pro tunc* to August 2, 2011 (Docket No. 6415) (the "EG Retention Order").

13.     The LTD Committee was appointed under section 1102(a)(2) "for the sole purpose of serving as the authorized representative of the LTD Participants in connection with

negotiations regarding the modification or termination of the LTD Plan, **and** any claims

**relating thereto** and for no other purpose . . . ." *See EG Retention Order* (emphasis added).   EG

and the LTD Committee have a fiduciary duty to examine any claims related to modification and

termination of the LTD Plans, including investigating whether any welfare benefits are vested,

and to both analyze any proposal put forth by the Debtors, *ad hoc* committee of bondholders or

Creditors' Committee, as well as develop a legal position and financial analysis to negotiate with

these constituencies.

14.     On October 24, 2011, this Court entered an Order authorizing the employment

and retention of Alvarez & Marsal Healthcare Industry Group, LLC ("A&M") as Financial

Advisors to both the Retiree Committee and the LTD Committee *nunc pro tunc* to September 8,

2011 (Docket No. 6679).   The LTD Committee Appointment Order provides that the Retiree

Committee and the LTD Committee share financial advisors and actuarial services.

15.     Soon after, in order to enter into negotiations in an informed manner and as

quickly as possible, the LTD Committee, pursuant to Rule 2004-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware, participated in several conferences with the Debtors regarding a pending 2004 request

for an examination and production of documents.   In lieu of an examination, the parties agreed to

respond to document requests related to the LTD constituency's benefits and claims.   These

requests were supplemented by data requests in order for A&M to prepare the complicated

analysis necessary to allow the LTD Committee and its professionals to both 1) evaluate any

proposal by the Debtors or the Creditors' Committee and 2) to provide for the LTD Committee

the basis for alternatives and options related to the negotiations.

## III.   RESPONSE

16.    The LTD Committee does not object to the relief requested in the Mediation

Motion, with the following minor exceptions:

- the mediator should be acceptable to the Retiree Committee and LTD Committee;

- the mediator should also choose the location of the mediation;

- the Debtors are both authorized and directed to pay the mediator's fees, not just
  authorized;

- the Debtor may not take any steps to seek to modify or terminate benefits under
  the Nortel Retiree Welfare Plans and the Nortel LTD Plans while the mediation is
  being conducted; and

- nothing contained in the order will constitute a finding or a determination as to
  whether the parties have conferred in good faith in attempting to reach mutually
  satisfactory modifications of benefits under the Nortel Retiree Welfare Plans and
  the Nortel LTD Plans or have otherwise satisfied any of the provisions of section
  1114 of the Bankruptcy Code.

17.    Any mediation in this matter must be fair and open.  It is inherently inequitable

and a waste of estate resources to request mediation of the parties and then not place some

restriction on the Debtors' ability to literally or effectively walk away from the mediation by

filing a motion to terminate benefits during the pendency of the mediation.  The extreme

positions being taken by the Debtors and the arguments in their public filings support that

without the protections requested, the mediation process will not be a full one.  While the Retiree

Committee has the protections of section 1114 of the Bankruptcy Code to defend against such a

motion, it is the Debtors' position that the LTD Participants are not covered by any of the

protections of section 1114.  Thus, the only way to protect the integrity of the mediation for both the Retiree Committee, but especially the LTD Committee, is by providing procedural protections as discussed in this Response in the proposed Order.

18.    The LTD Committee strongly objects to the Debtors' mischaracterization of the Committees and their professionals; the Debtors spend no less than seven pages of their Mediation Motion disparaging the efforts of the Committees in an obvious attempt to poison the well and distort the picture of what has been transpiring between the parties with inaccuracies and hyperbole.  While the LTD Committee does not want to engage in similar behavior, realizing that the Court has little taste for such tactics, it is necessary that certain particularly offensive statements be addressed herein.

19.    While the LTD Committee appreciates that "the Debtors remain willing to explore the possibility of negotiating consensual termination of the benefit plans before seeking more substantive relief from the Court" (*Mediation Motion, ¶ 7),*   and agrees that "such negotiations must proceed promptly and in earnest, rather than the plodding pace seen to date." *Id.*  However, the LTD Committee believes the pace has been entirely of the Debtors' own making.   For example, the parties spent considerable expense in vetting the relevant confidentiality provisions of the LTD Committee bylaws with the Debtors and Creditors' Committee, and the Debtors further required not one, but two additional layers of confidentiality restrictions, which were presented to the Court and agreed upon by the LTD Committee in two Court Orders.  Particularly troubling is that despite the multiple layers of confidentiality, the Debtors still bog down requests with unnecessary redaction and withhold basic information -- without specific reasons for not providing the information -- under a thick cloak of asserted confidentiality.

20.    The LTD Committee does not doubt that the Debtors have acted with some level of diligence and good faith in providing the Committees' requested information necessary to properly evaluate any proposal and the Debtors' potential liabilities.    However, the LTD Committee -- on top of analyzing the voluminous documents already described in the Mediation Motion that have been supplied at best in a piecemeal fashion to the LTD Committee -- had to obtain and review multiple documents related to the vast number of operative plans that the Debtors claimed were non-existent, but have since been otherwise located through the LTD constituency.  Document production was often not Bates stamped and poorly organized.  This, of course, could very well be related to the condition of the Debtors' files at this point in time as the Debtors are winding down, a fact acknowledged by the LTD Committee in prior filings.  One thing is certain, the state of affairs of the Debtors' books and records are in no way the fault of the LTD Committee or their professionals.

21.    The allegation that the requests have been overbroad is lacking in any basis in fact.  The document requests were limited to long term disability plan documents and summary plan descriptions, LTD related annual reports, related tax filings for the plan and any related LTD trust, related LTD trust agreements, files related to the decision to move from a fully insured plan to a self insured plan, actuarial calculations and related files for the LTD constituency, insurance policies for stop loss or fiduciary liability related to the LTD plans, and benefit forms for the LTD constituency.  The LTD Committee also asked for the contact information and dates when LTD Participants went out on disability to help identify which plan corresponded with each disabled employee, information related to current plans for active employees, and information related to whether or not employees opted for higher levels of long

term disability insurance.  Subsequent related inquiries have been made as the LTD professionals and LTD Committee members analyze documents received from the Debtors and other parties.

22.    In addition, as many of the LTD Participants may be eligible to receive retirement benefits pursuant to language of the plan documents, the Committees have been working diligently to identify these individuals and attempt to find both common ground with the Debtors and the Creditors' Committee, as well as identify those that are the most vulnerable in the LTD constituency.  To characterize the actions of the Committees as "plodding" is simply untrue and can be easily verified by a quick review of the public filings related to fee requests by the Committees' professionals and comparing them to the Debtors' fee requests during the same time period.  It is telling that despite the strict adherence to the approximately $50,000 a month self imposed budget by LTD Committee counsel, the Debtors state in the Mediation Motion that "Since the Committees' appointment, the Debtors have incurred well over $15 million in costs related to the Plans and the Committee process." *Id.* at ¶ 13.

23.    The LTD Committee is respectful of "the substantial cost of continuing to maintain the Plans, at a time when the Debtors have divested their various businesses and are winding down their remaining operations" (*Mediation Motion*, ¶ 9), but the Debtors must remain mindful of the ultimate cost to the LTD Participants – many of whom have no other means or possibility of earning an income, much less paying for any insurance benefits themselves or their dependents.  Only recently, within the past two weeks, have the Debtors and their professionals provided sufficient data to LTD Committee to the satisfaction of their professionals, including A&M and DaVinci Actuaries, who requested necessary data to complete their financial and actuarial analysis.  A&M have been requesting this information since the first meeting with the Debtors in October.  It is improper for the Debtors to delay requests for documents and data

based upon arguments that the data is unnecessary to assess a proposal put forth by the Debtors. It is well within, and required by, the fiduciary duties of the LTD Committee, to formulate its own analysis of the circumstances surrounding benefits and related claims so it may engage in an informed manner in the pending negotiations.

24.    Moreover, the LTD Committee disputes the Debtors' position that "the LTD Participants are not conferred with the protections afforded to retirees under section 1114 of the Bankruptcy Code" (*Mediation Motion,* ¶ 7), that "[e]ach of the Plans provides the Debtors with the unequivocal contractual right to unilaterally amend or terminate the Plan at any time" (*id.* at ¶ 18), or that the Debtors "could terminate the LTD Plans without Court authorization." *Id.* at ¶ 24. As such, this Response serves as a full reservation of rights as to these and any other legal arguments that have been encapsulated in the Debtors' Mediation Motion. These statements reveal the position that the Debtors have taken in the discussions to date and justify the protections sought by the modest modifications requested by the Committees to the proposed order.

25.    Finally, the LTD Committee takes issue with the Debtors' potential disclosure – albeit not wholly accurate – of events and conversations that transpired during the two meetings between the parties.[5]    The LTD Committee will not dispute the Debtors' version of events/discussions regarding these confidential meetings at the risk of engaging in the same

---

[5]    *See, e.g., Mediation Motion,* ¶ *15:* "At the October 2011 meeting, the Debtors provided the Committees with substantial financial information regarding the current benefit plans. Representatives of a potential alternative insurer also attended the meeting and were prepared to make a presentation on the insurance program they could offer, but the Committee declined to meet with the insurer despite being informed that further delays would increase the cost of the replacement insurance because the insurance company would be unable to honor rates indefinitely." *See also:* "At the February 27, 2012 meeting, counsel to each of the Committees stated that they were still unprepared to engage in substantive negotiations regarding the Debtors' proposals. Once again, the Committees were informed by the insurance carrier that the rates, which increased since the failed October meeting, would again be at risk for increase without action by the Committees. After the meeting, the advisors to the Committees said they needed certain additional discrete information and a little more time to respond to the proposals." *Id.* at ¶ 17. Both the Retiree Committee and the LTD Committee have been in constant contact with the alternative insurer, and other insurers, since the October meeting.

potential transgressions except as necessary to refute the unwarranted allegation that it has engaged in undue delay pursuant to Federal Rules of Evidence 408(b).

26.     The LTD Committee believes that the general relief requested in the Mediation Motion is likely to better assist the Debtors in understanding why the LTD Committee has had difficulties finalizing a response to their proposal given the complexity of the information involved, the sheer volume of the related documents, and the fact that the Debtors have not been able to or have been unwilling to provide requested materials that are relevant to a careful evaluation of the Debtors' proposal. The Debtors are very cognizant of these issues and attempt to minimize their importance: "Predictably, the Committee will attempt to rationalize the delay by responding that all of their questions were in earnest, the matter is complicated, the data is difficult and changing as the employee populations change and the Committees may wish to talk to other carriers, but such excuses do not justify the significant passage of time without any substantive discussion and merely reinforce the impression that the Committees would be content to delay matters until confirmation." *Id.* at ¶ 17. Despite the Debtors' attempts in the Mediation Motion to disparage the Committees' efforts, which is especially irrelevant to their motion and egregious given that the LTD Committee had already agreed to mediation prior to the filing of the motion, subject to the modest revisions requested and noted herein, the LTD Committee remains hopeful that the parties, with the assistance of a neutral mediator, will be able to move forward in this process.

## IV.    CONCLUSION

WHEREFORE, the LTD Committee respectfully submits this Response and requests that the Court (i) enter the proposed Order approving the Mediation Motion, with the exceptions set forth herein, and (ii) grant such other and further relief as it deems just and proper.

Dated:  April 11, 2012                     **ELLIOTT GREENLEAF**

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Shelley A. Kinsella (DE Bar No. 4023)
Jonathan M. Stemerman (DE Bar No. 4510)
1105 North Market Street, Suite 1700
Wilmington, Delaware  19801
Telephone:  (302) 384-9400
Facsimile:  (302) 384-9399
Email:  rxza@elliottgreenleaf.com
Email:  sak@elliottgreenleaf.com
Email:  jms@elliottgreenleaf.com

*Counsel to the Official Committee of*
*Long Term Disability Participants*