# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
: Chapter 11
:
*In re* :
:
Nortel Networks Inc., *et al.*,[1] : Bankr. Case No. 09-10138 (KG)
:
                Debtors. : (Jointly Administered)
:
---------------------------------------------------------X
:
Nortel Networks Inc., :
:
                Plaintiff, :
: Adv. Proc. No. 12-_____ (KG)
v. :
:
Commonwealth of Virginia :
Department of Taxation, :
:
                Defendant. :
:
---------------------------------------------------------X

## ADVERSARY COMPLAINT

Plaintiff Nortel Networks Inc. ("NNI"), as one of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby files this Complaint against the Department of Taxation (the "Department") of the Commonwealth of Virginia ("Virginia") and, in support thereof, alleges as follows:

---

[1] In addition to Nortel Networks Inc. ("NNI"), the Debtors in the Chapter 11 cases are: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA"). Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

## NATURE OF THIS ACTION

1. This is an action for determination of NNI's tax liability arising out of an audit of sales and use taxes in Virginia for the period December 1, 2003 through November 30, 2006 (the "<u>Audit Period</u>")[2] and for reduction and allowance of the Department's claim with respect to such liability. The vast majority of the $1,090,146.33 tax assessed by the Department has been satisfied by payments made by NNI's customers. The Department has acknowledged this by crediting NNI with amounts paid by customers for each of the three months that comprised the sample period used by the Department in conducting the audit. Notwithstanding this acknowledgement, the Department has refused repeatedly to take into account amounts paid by customers on transactions that took place during the other twenty-four months of the Audit Period. In response to this inexplicable refusal, NNI delivered to the Department detailed supporting documentation conclusively demonstrating that its liability for the entire Audit Period is approximately $106,000. Notwithstanding this uncontroverted evidence, the Department again refused to review its assessment for twenty-four of the twenty-seven month Audit Period. Thus, NNI is left with no choice but to request that this Court determine the appropriate tax liability arising from the Audit Period and reduce and allow the Department's claim in that amount.

---

[2] Although the Audit Period consists of thirty-six months in total, there was no additional tax assessed by the Department for the first nine months of the Audit Period (December 2003 – August 2004). As described in this Complaint, in September 2004, Virginia's public service corporation exemption from sales and use tax was eliminated, which resulted in certain of NNI's customers becoming subject to the tax. NNI was not notified of this change in law by its customers, and did not charge sales and use tax to the customers that formerly qualified as public service corporations. However, NNI has documentation showing that these customers self-assessed and paid the Department the appropriate taxes. As the Department only assessed additional tax for the twenty-seven months after Virginia's elimination of the exemption in September 2004, we will refer to the Audit Period as twenty-seven months for the purpose of this Complaint.

## JURISDICTION AND VENUE

2. This adversary proceeding is brought pursuant to sections 105, 502, 505 and 558 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3007 and 7001 et seq. of the Federal Rules of Bankruptcy Procedure (the "Rules").

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final adjudication of the merits of this Complaint.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

5. Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

6. NNI is a corporation duly incorporated under the laws of the state of Delaware with its principal place of business located at 4001 E. Chapel Hill-Nelson Hwy., P.O. Box 13010, Research Triangle Park, NC 27709-3010. On January 14, 2009 (the "Petition Date"), the Debtors (with the exception of NN CALA, which filed a petition on July 14, 2009) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, NNI has sold its business units and other assets to various purchasers and has ceased sales in Virginia. NNI continues to operate as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. Defendant Department is the state tax agency charged with assessing and collecting tax for Virginia. The Department assessed the sales and use taxes at issue in this Complaint.

**FACTS**

8. During the Audit Period, NNI was in the business of developing and selling telecommunications solutions to carrier and enterprise customers. NNI's networking solutions consisted of hardware, software and services provided to customers throughout the world. Specifically, during the Audit Period, NNI sold networking products to entities in Virginia, including the United States government, state and local governments, non-profit organizations and telecommunications companies, and in some instances provided services to such purchasers.

9. As a customer of NNI, Virginia, through the Virginia Department of Lottery and Virginia Retirement System, owes NNI $44,516.90 for goods provided and services rendered in 2007 and 2008.

10. Virginia imposes a sales and use tax on the sale, lease, or rental of tangible personal property, or the use or consumption of tangible personal property in Virginia, as well as taxable services in Virginia as set forth in Section 58.1 of the Code of Virginia of 1950, as amended (the "Virginia Code").

11. Before September 1, 2004, certain of NNI's largest customers in Virginia were exempt from the sales and use tax as "public service corporations." Effective September 1, 2004, Virginia repealed this exemption for certain corporations including telecommunications companies and certain other telephone companies. NNI was not notified of the repeal by its customers who had formerly fallen within the exemption, and during the Audit Period did not charge sales and use tax on transactions with those customers. However, Virginia received payment on those taxes as the customers self-assessed the tax and paid the Department the proper amounts owing.

12. On or about December 20, 2007, the Department assessed NNI with additional sales and use taxes, including interest, in the aggregate amount of $1,311,895.79, with respect to transactions during the Audit Period. A copy of the Department's Notice of Assessment is attached as Exhibit A (the "Assessment").

13. To arrive at this Assessment, the Department applied a sampling technique. This technique involved the selection by the Department of three separate months during the Audit Period. For each of these three sample months, the Department reviewed NNI's transactions for taxes assessed and collected. The Department then calculated an average "error rate" for payment of taxes for these three sample months. Finally, the Department multiplied this error rate over the entire twenty-seven month Audit Period to determine the entire tax amount owed.

14. Because the Department did not take into account the self-payment of the tax by NNI's customers during the three sample months, the error rate grossly overstated NNI's alleged non-compliance with respect to the collection of sales and use taxes.[3]

15. After receiving the results of the audit, NNI provided the Department with evidence demonstrating the payment of sales and use taxes by its customers during the three sample months. NNI then requested that the Department perform a detailed review of the sale transactions and recalculate the error rate as a result of that review. The Department refused to undertake a further review, but did remove amounts from the Assessment that related to taxes paid by NNI's customers during the three sample months. As a result, the Department paradoxically agreed to the corrections for the sample period, but at the same time refused either

---

[3] In fact, NNI believes that if the Department calculated the appropriate "error rate," taking into consideration self-payments by NNI's customers, and extrapolated this rate over the Audit Period, the assessed amount would have been approximately $644.99, significantly less than the actual assessment of $1,090,146.33.

5

to remove amounts paid by customers on transactions that occurred during the remaining twenty-four months of the Audit Period or to amend the error rate it applied to these twenty-four months to account for the self-payments.

16. In response to the Department's position, NNI conducted a detailed, transaction-by-transaction review of the entire Audit Period, examining each invoice sent to its 538 customers who purchased products during the Audit Period and were subject to Virginia's sales and use tax absent an exemption. This detailed analysis demonstrates that NNI's maximum liability to Virginia is approximately $106,000 – an amount significantly less than that assessed by the Department.

17. On March 7, 2008, pursuant to Section 58.1-1821 of the Virginia Code, NNI filed a timely application with the Commissioner of Taxation (the "Commissioner") seeking administrative relief from the Assessment on the basis that the taxes assessed were paid by NNI's customers. On or about March 19, 2009, the Department filed a proof of claim against NNI in these bankruptcy proceedings, subjecting itself to the jurisdiction of this court and seeking recovery of $1,404,048.56 in sales and use taxes, including interest, for the Audit Period (Claim No. 641) (the "Claim"). By letter dated July 31, 2009, six months after the Petition Date, the Commissioner issued a determination denying the administrative relief sought by NNI. NNI subsequently requested a redetermination of the July 31, 2009 letter ruling, and on August 10, 2010, the Commissioner issued a letter determination further denying the relief sought by NNI.

18. On October 8, 2010, the Debtors filed the *Debtors' Fifteenth Omnibus Objection to Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No Liability Claims, Reduce and Allow Claims, Redundant Claims, Satisfied Claims, Wrong Debtor Claims and No-Basis 503(b)(9) Claims)* [D.I. 4126], in which the Debtors sought to

reduce the amount of the Claim (the "Objection"). The Department filed a response to the Objection on October 22, 2010 [D.I. 4187].

19. On August 9, 2011, NNI filed an Application for Correction of Erroneous Assessment of Sales and Use Taxes in the Circuit Court of the City of Richmond (Case No. 760CL11003772-00) (the "Virginia Application"). The Virginia Application was filed solely to preserve and protect NNI's rights under Virginia Code § 58.1-1825. In the Virginia Application, NNI clearly reserved all rights to proceed with the Objection and maintained the jurisdiction of this Court over the Department's Assessment and Claim.

20. On April 18, 2012, at a status conference in front of this Court, NNI agreed to convert the Objection into this Complaint.

## CLAIMS FOR RELIEF

### First Claim for Relief

### (Determination of Tax– 11 U.S.C. § 505(a))

21. NNI restates and realleges the allegations of paragraphs "1" through "20" above as if fully set forth herein.

22. Pursuant to 11 U.S.C. § 505(a)(1), this Court has authority to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1).

23. None of the exceptions to this authority set forth in 11 U.S.C. § 505(a)(2) apply. The Assessment was not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of NNI's chapter 11 proceedings,

within the meaning of 11 U.S.C. § 505(a)(2)(A). This Complaint does not seek a refund within the meaning of 11 U.S.C. § 505(a)(2)(B), and this Complaint does not relate to an ad valorem tax on real or personal property of the estate within the meaning of 11 U.S.C. § 505(a)(2)(C).

24. This Court's exercise of authority to determine NNI's tax liability is warranted under the circumstances.

25. The Assessment is arbitrary and unreasonable, would result in a windfall to the Department and should be determined by this Court at the true value of NNI's outstanding obligations to the Department with respect to sales and use tax during the Audit Period. In light of the stage of these proceedings and the multiple taxing jurisdictions that have asserted claims against NNI and the other Debtors, the determination of the Debtors' tax liabilities should take place before this Court.

## Second Claim for Relief

### (Reduction and Allowance of Department's Proof of Claim – 11 U.S.C. § 502)

26. NNI restates and realleges the allegations of paragraphs "1" through "25" above as if fully set forth herein.

27. The Department filed the Claim under section 501 of the Bankruptcy Code and asserted liabilities against NNI that have been satisfied by NNI's customers. 11 U.S.C. § 501.

28. Section 502(a) of the Bankruptcy Code provides that a claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). Section 502(b) provides that, in the event of such an objection, a claim is allowed "except to the extent that such claim is unenforceable against the debtor or property of the debtor, under any agreement or applicable

law . . . ." 11 U.S.C. § 502(b). Pursuant to Rule 3007(b), "a party in interest . . . may include the objection in an adversary proceeding." Fed. R. Bankr. P. 3007(b).

29. NNI incorporates the Objection into this Complaint as if set forth herein in its entirety and objects to the Claim under section 502 of the Bankruptcy Code and Rule 3007 because amounts asserted in the Claim were based on a flawed audit, do not constitute liabilities of NNI or its estate and are unenforceable against NNI under applicable law.

30. Furthermore, any amounts asserted in the Claim with respect to unmatured interest as of the Petition Date should be disallowed pursuant to section 502(b)(2) of the Bankruptcy Code. 11 U.S.C. § 502(b)(2).

31. Unless the Claim is reduced as requested, the Department will receive a disproportionately large distribution in NNI's chapter 11 proceeding in contravention of the provisions and policies of the Bankruptcy Code and to the direct detriment of NNI's estate and other creditors.

### Third Claim for Relief

**(Setoff of Amounts Owing to NNI – 11 U.S.C. § 558)**

32. NNI restates and realleges the allegations of paragraphs "1" through "31" above as if fully set forth herein.

33. Under section 558 of the Bankruptcy Code, NNI has "the benefit of any defense available to the debtor as against any entity other than the estate," including the right of setoff or recoupment with respect to the amounts owing by the Commonwealth of Virginia. 11 U.S.C. § 558.

34. The Claim is subject to setoff or recoupment on account of debts owed by Virginia to NNI in the amount of $44,516.90 and should be further reduced by such amount.

WHEREFORE, NNI demands judgment against Defendant as follows: (1) a determination of NNI's outstanding liability to the Department with respect to sales and use tax during the Audit Period; (2) reduction of the Claim to the true value of NNI's outstanding obligations to the Department with respect to sales and use taxes during the Audit Period; (3) further reduction of the Claim to account for amounts owing by the Commonwealth of Virginia to NNI; and (4) granting such other and further relief as the Court deems just and proper.

Dated: April 27, 2012
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

  */s/ Chad A. Fights*
Donna L. Culver (No. 2983)
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
Chad A. Fights (No. 5006)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*