## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re:* | ) | Chapter 11 |
|  | ) | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) | **Objection Deadline:** May 24, 2012 at 4:00 pm (ET) |
|  | ) | **Hearing Date:** Scheduled only if necessary |
|  | ) |  |

**THIRTY-SEVENTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP
CANADIAN COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM
ALLOWANCE OF COMPENSATION AND FOR
REIMBURSEMENT OF EXPENSES FOR SERVICES
RENDERED DURING THE PERIOD FROM
FEBRUARY 1 TO FEBRUARY 29, 2012
(All Amounts in Canadian Dollars)**

This is a(n): x monthly _____ interim _____ final application.

| | |
|---|---|
| Name of Applicant: | Fraser Milner Casgrain LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | March 5, 2009 (nunc pro tunc to January 26, 2009) |
| Period for which Compensation And Reimbursement is sought: | February 1 to February 29, 2012 |
| Amount of Compensation sought as actual, reasonable and necessary: | CDN $41,424.50 Equivalent to USD $42,038.41[2] |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | CDN $104.40 Equivalent to USD $105.95[2] |

The total time expended during this Compensation Period for the preparation of Fraser Milner Casgrain's Thirty-Sixth Monthly Fee Application was 4.4 hours and the corresponding compensation is CDN. $3,454.00).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

[2] Reuters Exchange Rate as of close of business on May 1, 2012 was CDN. $1.00 : U.S. $1.01482

### SUMMARY OF LAWYERS AND PARALEGALS
### RENDERING SERVICES DURING THE PERIOD
### FEBRUARY 1, 2012 THROUGH FEBRUARY 29, 2012
### (All Amounts in Canadian Dollars)

| Name | Title | Department | Province of Bar Admission/Year | Hours | Rate | Billed Value |
|---|---|---|---|---|---|---|
| Mary Picard | Partner | Pensions/Benefits | Ontario - 1985 | 4.5 | $800.00 | $ 3,600.00 |
| Matthew Peters | Partner | Taxation | Ontario - 2002 | 0.2 | $650.00 | $ 130.00 |
| Michael Wunder | Partner | Financial Restructuring | Ontario - 1990 | 37.4 | $785.00 | $ 29,359.00 |
| Ryan Jacobs | Partner | Financial Restructuring | Ontario - 2011 | 2.3 | $725.00 | $ 1,667.50 |
| Shayne Kukulowicz | Partner | Financial Restructuring | Ontario - 1990 | 7.8 | $875.00 | $ 6,825.00 |
| | | | | | | |
| TOTAL | | | | 52.2 | CDN. | $ 41,581.50 |
| | Less: Non-Working Travel Time Discount (50% of $314.00) | | | | | -$157.00 |
| TOTAL | | | | 52.2 | CDN. | $ 41,424.50 |

**Note:** Fraser Milner Casgrain LLP provides information regarding a change in its hourly billing rates effective February 1, 2012 as more particularly set out on the immediately following page.

### SUMMARY OF LAWYERS AND PARALEGALS HOURLY RATES
### REFLECTING CHANGES EFFECTIVE FEBRUARY 1, 2012
### (All Amounts in Canadian Dollars)

| Name | Title | Department | Province of Bar Admission/Year | Hourly Billing Rate Before February 1, 2012 | Hourly Billing Rate After February 1, 2012 |
|---|---|---|---|---|---|
| Jacobs, R. C. | Partner | Financial Restructuring | Ontario - 2011 | $675 | $725 |
| Wunder, M.J. | Partner | Financial Restructuring | Ontario - 1990 | $775 | $785 |
| Picard, M.M. | Partner | Pensions/Benefits | Ontario - 1985 | $775 | $800 |
| Dunsmuir, M.J. | Associate | Pensions/Benefits | Ontario - 2006 | $450 | $490 |
| Banks, T.M. | Partner | Employment/Pension/ Research | Ontario - 2002 | $650 | $675 |
| Pushalik, A.G. | Associate | Employment/Labour | Ontario - 2009 | $390 | $430 |
| North, A.R. | Associate | Financial Restructuring | Ontario - 2009 | $350 | $400 |
| Kukulowicz, R.S. | Partner | Financial Restructuring | Ontario - 1990 | $850 | $875 |
| Matheson, R.J. | Partner | Corporate/M&A/Finance/Real Estate | Ontario - 1980 | $800 | $825 |
| Peters, M.I. | Partner | Taxation | Ontario - 2002 | $600 | $650 |
| Kaplan, M.N. | Partner | Corporate/M&A/Finance | Ontario - 1982 | $700 | $725 |
| LeGault, N.A. | Partner | Employment/Labour | Ontario - 1982 | $775 | $800 |
| Beairsto, M.G. | Partner | Information Technology/ Intellectual Property | Ontario - 1989 | $625 | $650 |
| Shay, R.H. | Partner | Corporate | Ontario - 1979 | $800 | $850 |
| Riel, W. D. | Partner | Intellectual Property | Ontario - 1997 | $450 | $475 |
| Walker, R.W. | Partner | Financial Restructuring | Ontario - 1976 | $800 | $825 |
| Beer, A. | Associate | Financial Restructuring | Ontario - 2010 | $320 | $360 |
| Villeneuve, C.A. | Paralegal | | | $210 | $210 |
| Nurmohamed, Z. | Partner | Taxation | Ontario - 2001 | $615 | $680 |
| Dietrich, J.O. | Partner | Financial Restructuring | Ontario - 2004 | $550 | $580 |
| Bass, N.E. | Partner | Taxation | Ontario - 1990 | $800 | $825 |
| Colvin, I. | Researcher | | | $100 | $150 |
| | Articling Student | | | $215 | $220 |

**COMPENSATION BY PROJECT CATEGORY**
**FEBRUARY 1, TO FEBRUARY 29, 2012**
**(All Amounts in Canadian Dollars)**

| Project Category | Hours | Value |
|---|---|---|
| General Case Administration | 0.3 | $262.50 |
| FMC Fee Application/Monthly Billing Reports | 7.3 | $5,730.50 |
| Creditors Committee Meetings | 8 | $6,388.00 |
| Court Hearings | 2.9 | $2,276.50 |
| General Claims Analysis/Claims Objections | 5.6 | $4,495.00 |
| General Adversary Proceedings | 0.3 | $235.50 |
| Tax Issues | 0.2 | $130.00 |
| Labour Issues/Employee Benefits | 4.7 | $3,775.00 |
| Asset/Stock Transaction/Business Liquidations | 2 | $1,633.00 |
| Travel | 0.4 | $314.00 |
| Intercompany Analysis | 9.8 | $7,777.00 |
| Canadian Proceedings/Matters | 10.2 | $8,154.00 |
| U.S. Proceedings/Matters | 0.5 | $410.50 |
| **Total** | **52.2** | **$41,581.50** |
| Less Non-Working Travel Time Discount (50% $314.00) | | ($157.00) |
| **Total** | **52.2** | **$41,424.50** |

**DISBURSEMENT SUMMARY**
**FEBRUARY 1 TO FEBRUARY 29, 2012**
**(All Amounts in Canadian Dollars)**

<u>Non-Taxable Disbursements</u>
Photocopy & Printing Charges                          $104.40

Total Non-Taxable Disbursements                **$104.40 CDN.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

|  |  |
|---|---|
| In re | : Chapter 11 |
|  | : Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | : Jointly Administered |
|  | : |
| Debtors | :<u>Objection Deadline</u>: May 24, 2012 at 4:00 pm (ET) |
|  | :<u>Hearing Date</u>: Scheduled only if necessary |

-------------------------------------------------------X

### THIRTY-SEVENTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP, CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM <u>FEBRUARY 1, 2012 THROUGH FEBRUARY 29, 2012</u>

Fraser Milner Casgrain LLP ("<u>FMC</u>" or the "<u>Applicant</u>"), Canadian counsel to the

Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Nortel Networks Inc., et al.

(the "<u>Debtors</u>"), hereby submits its thirty-seventh monthly application (the "<u>Application</u>")

pursuant to (i) sections 330 and 331 of title 11 of the United States Code (the "<u>Bankruptcy</u>

<u>Code</u>"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"),

(iii) Rule 2016-2 of the Local Rules of Bankruptcy Procedure for the District of Delaware (the

"<u>Local Rules</u>"), and (iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed.

R. Bankr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim

Compensation and Reimbursement of Fees and Expenses for Professionals and Official

Committee Members entered on February 4, 2009 (the "<u>Administrative Fee Order</u>"), for interim

allowance of compensation for services rendered in the aggregate amount of CDN. $41,424.50

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. ("<u>NN CALA</u>") (4226).

and for reimbursement of actual and necessary expenses incurred by FMC in connection

therewith in the amount of CDN. $104.40 for the period from February 1 through February 29,

2012 (the "Compensation Period"). In support of this Application, FMC respectfully states as

follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein

are sections 1103 and 330 of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2.    On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United

States Bankruptcy Court for the District of Delaware (the "Court"), except for NN CALA which

filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009.

3.    The Debtors are operating their businesses and managing their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On

January 15, 2009, the Court entered an order for the joint administration of these cases pursuant

to Bankruptcy Rule 1015(b) for procedural purposes only.

4.    On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks

Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian

affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel

Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior

Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the

Companies' Creditors Arrangement Act (Canada) ("CCAA"). The Canadian Debtors continue to

operate their businesses and manage their properties under the supervision of the Canadian
Court.

5.      On January 14, 2009, the High Court of Justice in England placed nineteen of the
Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the
"European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the
"Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the
"Administrators").

6.      On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102
of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US
Trustee") appointed the Committee.  The Committee currently consists of three members, as
follows: (i) Law Debenture Trust Company of New York, as indenture trustee; (ii) Pension
Benefit Guaranty Corporation; and (iii) The Bank of New York Mellon, as indenture trustee.  No
trustee or examiner has been appointed in these chapter 11 cases.

7.      On March 5, 2009, this Court entered an order authorizing the retention of FMC
as Canadian counsel to the Committee, *nunc pro tunc* to January 26, 2009.  On that same day, the
Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP
("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the
Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the
Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel,
and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.      On June 10, 2009, FMC filed its First Interim Fee Application Request for the
period January 26, 2009 through April 30, 2009 (the "First Interim Application").  In its First
Interim Application, FMC sought the award and allowance of fees in the amount of CDN.
$1,321,010.79 (including applicable taxes) and the reimbursement of expenses in the amount of

CDN. $18,604.14 (including applicable taxes). On July 17, 2009, this Court entered an order approving 100% of the fees and expenses sought in the First Interim Application, and FMC has received payment of such amounts.

9.      On September 10, 2009, FMC filed its Second Interim Fee Application Request for the period May 1, 2009 through July 31, 2009 (the "Second Interim Application"). In its Second Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,335,961.21 (including applicable taxes) and the reimbursement of expenses in the amount of CDN. $21,483.56 (including applicable taxes). On September 30, 2009, this Court entered an order approving 100% of the fees and expenses sought in the Second Interim Application, and FMC has received payment of such amounts.

10.     On November 25, 2009, FMC filed its Third Interim Fee Application for the period from August 1, 2009 through October 31, 2009 (the "Third Interim Application"). In its Third Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,252,173.56 (including applicable taxes) and the reimbursement of expenses in the amount of CDN. $29,664.94 (including applicable taxes). On December 15, 2009, this Court entered an order approving 100% of the fees and expenses sought in the Third Interim Application, and FMC has received payment of such amounts.

11.     On February 24, 2010, FMC filed its Fourth Interim Fee Application for the period from November 1, 2009 through January 31, 2010 (the "Fourth Interim Application"). In its Fourth Interim Application, FMC sought the award and allowance of its fees in the amount of CDN.$1,222,600.68 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$24,078.44 (including applicable taxes). On March 17, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Fourth Interim Application, and FMC has received payment of such amounts.

12.      On June 1, 2010, FMC filed its Fifth Interim Application Request for the fee

period from February 1, 2010 through April 30, 2010 (the "Fifth Interim Application"). In its

Fifth Interim Application, FMC sought the award and allowance of fees in the amount of

CDN.$1,545,435,79 (including applicable taxes) and the reimbursement of expenses in the

amount of CDN.$30,093.86 (including applicable taxes). On June 24, 2010, this Court entered

an order approving 100% of the fees and expenses sought in the Fifth Interim Application, and

FMC has received payment of such amounts.

13.      On September 8, 2010, FMC filed its Sixth Interim Application Request for the

fee period from May 1, 2010 through July 31, 2010 (the "Sixth Interim Application"). In its

Sixth Interim Application, FMC sought the award and the allowance of fees in the amount of

CDN.$737,880.08 (including applicable taxes) and the reimbursement of expenses in the amount

of CDN.$30,971.07 (including applicable taxes). Upon September 30, 2010, this Court entered

an order approving 100% of the fees and expenses sought in the Sixth Interim Application and

FMC has received payment of such amounts.

14.      On December 13, 2010, FMC filed its Amended Seventh Interim Application

Request for the fee period from August 1, 2010 through October 31, 2010 (the "Seventh Interim

Application"). In its Seventh Interim Application, FMC sought the award and the allowance of

fees in the amount of CDN.$1,069,919.50 (including applicable taxes) and the reimbursement of

expenses in the amount of CDN.$22,207.78 (including applicable taxes). On December 15,

2010, this Court entered an order approving 100% of the fees and expenses sought in the Seventh

Interim Application and FMC has received payment of such amounts.

15.      On March 2, 2011, FMC filed its Eighth Interim Application Request for the fee

period from November 1, 2010 through January 31, 2011 (the "Eighth Interim Application"). In

its Eighth Interim Application, FMC sought the award and allowance of fees in the amount of

CDN. $1,018,317.00 and the reimbursement of expenses in the amount of CDN. $27,950.74. On March 23, 2011, this Court entered an order approving 100% of the fees and expenses sought in the Eighth Interim Application. FMC has received payment of such amounts.

16.     On June 1, 2011, FMC filed its Ninth Interim Fee Application Request for the fee period from February 1, 2011 through April 30, 2011 (the "Ninth Interim Application"). In its Ninth Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,023,851.00 and the reimbursements of expenses in the amount of CDN. $32,082.90. On June 21, 2011, this Court entered an order approving 100% of the fees and expenses sought in the Ninth Interim Application. FMC has received payment of such amounts.

17.     On September 1, 2011, FMC filed its Tenth Interim Fee Application Request for the fee period from May 1, 2011 through July 31, 2011 (the "Tenth Interim Application"). In its Tenth Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $645,682.75 and the reimbursement of expenses in the amount of CDN. $11,314.54. On September 21, 2011, this Court entered an order approving 100% of the fees and expenses sought in the Tenth Interim Application. FMC has received payment of such amounts.

18.     On November 23, 2011, FMC filed its Eleventh Interim Fee Application Request for the fee period from August 1, 2011 through October 31, 2011 (the "Eleventh Interim Application"). In its Eleventh Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $801,049.75 and the reimbursement of expenses in the amount of CDN. $14,684.25. On December 14, 2011, this Court entered an order approving 100% of the fees and expenses sought in the Eleventh Interim Application. FMC has received payment of such amounts.

19.     On February 29, 2012, FMC filed its Twelfth Interim Fee Application Request for the fee period from November 1, 2011 through January 31, 2012 (the "Twelfth Interim

Application"). In its Twelfth Interim Application, FMC sought the award and allowance of fees

in the amount of CDN. $171,686.25 and the reimbursement of expenses in the amount of CDN.

$3,389.79. On March 22, 2012, this Court entered an order approving 100% of the fees and

expenses sought in the Twelfth Interim Application. FMC has received payment of such

amounts.

### III.   RELIEF REQUESTED

20.     By this Application, FMC seeks (i) interim allowance and award of compensation

for the professional services rendered by FMC during the Compensation Period in the amount of

CDN. $41,424.50 representing 52.20 hours in professional services; and (ii) reimbursement of

actual and necessary expenses incurred by FMC during the Compensation Period in connection

with the rendition of such professional services in the amount of CDN. $104.40.

21.     Pursuant to the Administrative Fee Order, FMC is seeking payment of 80% of its

fees (CDN $33,139.60) and 100% of its expenses (CDN. $104.40) relating to services rendered

during the Compensation Period.

22.     FMC has received no payment and no promises for payment from any source for

services rendered in connection with these Insolvency Proceedings. There is no agreement or

understanding between the Applicant and any other person (other than members of FMC) for the

sharing of compensation to be received for the services rendered in these cases.

23.     As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder

Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is

sought herein were rendered for or on behalf of the Committee solely in connection with these

cases.

## IV.    SUMMARY OF SERVICES RENDERED

24.    FMC has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of significant time by FMC personnel from several legal disciplines.

25.    In the ordinary course of its practice, FMC maintains written records of the time expended by lawyers and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the lawyer or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

26.    In the ordinary course of its practice, FMC also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

27.    FMC respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly and indirectly contributed to the effective administration of these chapter 11 cases, including the Committee's interest in the Canadian Proceeding.

28.    The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and

the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that FMC was required to address.

## Case Administration

### (Fees: CDN. $262.50; Hours 0.30)

29.     During the Compensation Period, FMC routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee in the most efficient matter with the least cost to these estates with respect to the Canadian Proceeding. FMC ensured that it coordinated its activities with those of Akin Gump and the other professionals acting on behalf of the Committee, including Jefferies, Capstone, and Ashurst. During the Compensation Period, FMC, together with Akin Gump and the Committee's other professionals, participated in routine telephone conferences with the U.S. Principal Officer, John Ray, and the Debtors' professionals to review and discuss the status of these proceedings, and to coordinate the efficient administration of these cases, and the Canadian Proceeding.

30.     FMC believes it was able to efficiently address all issues relating to the case administration that have arisen during the pendency of the Canadian Proceeding.

## Canadian Proceedings

### (Fees: CDN. $8,154.00; Hours 10.20)

31.     During the Compensation Period, FMC analyzed proposed orders in connection with various relief being sought in the Canadian Proceeding. FMC also reviewed and analyzed material filed with the Canadian Court by the Canadian Debtors and Ernst & Young Inc. in its capacity as the CCAA monitor of the Canadian Debtors (the "Monitor") in the Canadian Proceeding. In connection therewith, FMC, carefully analyzed the relief requested in proposed

orders, participated in conference calls with the Monitor, Nortel Debtors' Canadian counsel, as well as other major stakeholders, to discuss the issues associated therewith. In connection with such analyses, FMC conducted diligence on the subject matter of each motion in order to determine the effect that the relief requested by the Canadian Debtors in the Canadian Proceeding would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of the Debtors' cases and the Canadian proceeding. FMC, with the assistance of Akin Gump, ensured that the Committee had a complete understanding of the Canadian Proceeding and was apprised of all material developments in the Canadian Proceeding through regular conference calls and, as appropriate, detailed memoranda.

32.     During the Compensation Period, the Monitor filed reports with the Canadian court with updates on the progress of the Canadian Debtors' activities and/or the Monitor's recommendations with respect to relief requested by the Canadian Debtors. FMC reviewed each of these reports and discussed the reports with Akin Gump and the Committee's advisors, as well as the professionals for the Canadian Debtors.

33.     Finally, FMC attorneys spent time during the Compensation Period assessing Canadian issues relating to allocation and distributions from the Canadian estate, and liaised with Akin Gump and Capstone in connection therewith to advise the Committee.

### Committee Meetings

(Fees: CDN. $6,388.00; Hours 8.00)

34.     This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, and with the Committee's other legal and financial advisors. FMC, together with the other Committee professionals, participated on four telephonic meetings with the full Committee during the Compensation Period. In addition, during the Compensation

Period, FMC had numerous telephonic conferences with Akin Gump and other Committee advisors.

35.     Prior to its meetings with the Committee, FMC reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith which related to the Canadian Proceeding.  Thereafter, FMC discussed each of these matters with Akin Gump and the Committee's other advisors and the Committee.  During these discussions, FMC assisted the Committee in formulating a position with respect to various pending matters.

36.     During the Compensation Period, FMC, together with Akin Gump, routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee on Canadian issues in an efficient manner.  FMC also regularly consulted with Akin Gump, Jefferies, Capstone and Ashurst with respect to Canadian legal issues on documents and other information received from the Debtors and their representatives, and other sources.

37.     Through meetings, telephone conferences, and correspondence, FMC has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding, as same relate to the Debtors, and to reach independent conclusions on the merits of specific matters.

### Court Hearings

(Fees: CDN $2,276.50; Hours 2.90)

38.     This subject matter relates to preparation for and attendance at hearings and other proceedings before the Canadian Court in respect of the Canadian Proceeding, and reviewing material filed with the Canadian Court.  FMC lawyers appeared at hearings held before the Canadian Court during the Compensation Period where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered.

39.     During the Compensation Period, FMC lawyers attended to hearings before the Canadian Court for (i) approval of the sale of certain internet protocol addresses by the Canadian Debtors and (ii) an order regarding certain specified claims filed against the Debtors which are properly pre-filing claims against the Canadian Debtors.  FMC lawyers prepared for the court hearings and conferences by reviewing all applicable motions and applications filed with the Canadian Court, including any responses thereto and consulted with Akin Gump, the Committee's other professionals and the advisors for the Canadian Debtors', the Monitor and the Debtors in order to formulate appropriate strategies.  FMC's participation at such hearings was necessary to protect the interests of the Debtors' unsecured creditors.

## Intercompany Issues

(Fees: CDN. $7,777.00; Hours 9.80)

40.     This subject matter relates to time spent by FMC attorneys reviewing and analyzing certain intercompany issues arising among the various Nortel entities around the world, and their impact on the Nortel Debtors' Insolvency Proceedings.  FMC attorneys, along with the Committee's other professionals spent time during the Compensation Period analyzing and examining issues related to the allocation of sale proceeds and discussing such issues with the Committee and the Committee's advisors, including in-depth analyses of various methodologies for allocating value among the Nortel entities.  Additionally, during the Compensation Period, FMC, along with Committee's other advisors, continued to prepare for the allocation mediation which has been ordered by the U.S. and Canadian Courts and will be mediated by the Honorable Warren K. Winkler, Chief Justice of Ontario.  Further, FMC together with Akin Gump and Capstone, on behalf of the Committee, has continued to engage with the other relevant parties to discuss matters regarding the allocation of sale proceeds and related issues.

### General Claims Analysis

(Fees: CDN. $4,495.00; Hours 5.60)

41.    This subject matter relates to the analysis of claims asserted or contemplated to be asserted against the Debtors' estates and the estates of the Canadian Debtors.  During the Compensation Period, FMC attorneys, together with Akin Gump, spent time working with Capstone to analyze claims filed against the Nortel Debtors in the Insolvency Proceedings including claims asserted pursuant to the various note indentures into which the Debtors entered prepetition, and researching and examining legal issues in connection with certain of those claims.  FMC, together with Akin Gump and Capstone, kept the Committee apprised of all material developments with respect to the adjudication and reconciliation of claims in the Canadian Proceeding.

## V.    ALLOWANCE OF COMPENSATION

42.    The professional services rendered by FMC required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

43.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to the Administrative Fee Order.

44.     With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

45.     The total time spent by FMC lawyers during the Compensation Period was 52.20 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

46.     As shown by this application and supporting documents, FMC spent its time economically and without unnecessary duplication of time. Attached hereto as <u>Exhibit E</u> is a schedule of the hours expended by the lawyers and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, FMC incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $104.40 for which FMC respectfully requests reimbursement in full.

47.     The disbursements and expenses have been incurred in accordance with FMC's normal practice of charging clients for expenses clearly related to and required by particular matters. FMC has endeavored to minimize these expenses to the fullest extent possible.

48.     FMC's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," postage and certain other office services, since the needs of each client for such services differ. FMC believes that it is fairest to charge each client only for the services actually used in performing services for it. In these proceedings, FMC charges $.10 per page for internal duplicating.

49.     No agreement or understanding exists between FMC and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

50.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**[The Remainder of Page Intentionally Left Blank]**

**WHEREFORE**, FMC respectfully requests that this Court:

(a)     approve the allowance of CDN. $41,424.50 for compensation for professional services rendered to the Committee during the period from February 1, 2012 through and including February 29, 2012;

(b)     approve the reimbursement of FMC's out-of-pocket expenses incurred in connection with the rendering of such services during the period February 1, 2012 through and including February 29, 2012 in the amount of CDN. $104.40; and

(c)     authorize and direct the Debtors to immediately pay to FMC the amount of CDN. $33,244.00 (USD $33,736.68[2]), which is equal to the sum of 80% of FMC's fees and 100% of FMC's expenses incurred during the Compensation Period.

Dated:   Toronto, Ontario
         May 2, 2012

FRASER MILNER CASGRAIN LLP

By: _____
     Michael J. Wunder (*pro hac vice*)
     A Member of the Firm

     77 King Street West, Suite 400
     Toronto-Dominion Centre
     Toronto, Ontario  M5K 0A1
     (416) 863-4511
     Canadian Counsel to the Official Committee of
     Unsecured Creditors

---

[2] Reuters Exchange Rate as of close of business on May 1, 2012 was CDN. $1.00 : U.S. $1.01482