**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------X
                         :

*In re*                          :      Chapter 11
                         :

Nortel Networks Inc., *et al.*,[1]      :      Case No. 09-10138 (KG)
                         :

             Debtors.      :      Jointly Administered
                         :

                         :      **Hearing date: May 24, 2012 at 10:00 a.m. (ET)**
                         :      **Objections due: May 17, 2012 at 4:00 p.m. (ET)**
                         :

------------------------------------------------------------ X

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING AND
APPROVING PROCEDURES TO RESOLVE OR OTHERWISE
SETTLE CLAIMS OF EMPLOYEES TERMINATED POST-PETITION**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and

363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving

procedures to resolve or otherwise settle Post-Petition Employee Claims (as defined herein) of

employees terminated from employment by the Debtors following the Petition Date (as defined

herein); and granting them such other and further relief as the Court deems just and proper.  In

support of this Motion, the Debtors respectfully represent as follows:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 502

and 503 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

**Background**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration

(the "English Proceedings") under the control of individuals from Ernst & Young LLP

(collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the

future may commence additional creditor protection, insolvency and dissolution proceedings

around the world.

6.     Since the Petition Date, Nortel has sold its business units and other assets to

various purchasers.  For further information regarding these chapter 11 cases, reference may be

made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7.     By this Motion, the Debtors seek an order pursuant to sections 105(a), 363(b), 502

and 503 of the Bankruptcy Code and Bankruptcy Rule 9019 approving certain proposed

procedures, as described more fully below (the "Settlement Procedures"), pursuant to which the

Debtors may resolve, compromise and settle claims of employees who were terminated by the

Debtors following the Petition Date on a consensual basis.[5]  The Settlement Procedures are

intended to minimize the costs associated with formal claims objections and the drafting, filing

and noticing of individual settlements under Rule 9019 where the Debtors and the relevant

---

[4]     The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

[5]     The relief sought in this Motion is not intended to limit the Debtors' authority to settle claims granted under any prior orders entered by this Court.

claimant agree to a claim amount, while preserving all parties' rights where consensus is not

possible.

## Facts Relevant to this Motion

8.       To date, the Debtors have taken numerous steps to establish claims resolution

processes and to address, reconcile and resolve claims filed against their estates.  This Court

entered an order [D.I. 1280] fixing September 30, 2009 at 4:00 p.m. (Eastern Time) as the

general bar date for filing proofs of claim or interests against the Debtors (other than NN CALA)

and an order [D.I. 2059] fixing January 25, 2010 at 4:00 p.m. (Eastern Time) as the general bar

date for filing proofs of claim or interests against NN CALA.   This Court also entered an order

[D.I. 6464] fixing November 15, 2011 at 4:00 p.m. (Eastern Time) as the bar date for filing

proofs of claim in respect of certain Non-Canadian intercompany and director and officer claims.

In response to these calls for claims, over 8,000 claims have been filed against the Debtors.  To

date, the Debtors have worked to reconcile these claims through negotiations with claimants, the

filing of claims objections directed at particular claimants and the filing of twenty-seven

omnibus claims objections.

9.       Of the claims filed against the Debtors, over 4,000 claims have been filed by

current or former employees of the Debtors ("Employees," and claims held by Employees,

"Employee Claims").  The Debtors are diligently working through such claims and are

reconciling such claims with their books and records in an attempt to determine which claims are

valid, either in whole or in part.  To that end, the Debtors have filed amended Schedules of

Assets and Liabilities for NNI, NN CALA and Nortel Altsystems Inc. with respect to certain

liabilities to such Employees[6] and filed the Debtors' Twenty-Third through Twenty-Fifth Omnibus Objections to Claims [D.I.s 7232, 7233 and 7234], which objections were granted by this Court [D.I.s 7408, 7431, 7432] and which objections resolved close to 500 Employee Claims.  The Debtors also filed their Twenty-Sixth Omnibus Objection to Claims [D.I. 7505], which addresses an additional 170 Employee Claims and is currently pending before this Court. The Debtors anticipate that this reconciliation process will continue in the upcoming months.

10.     Of the remaining Employee Claims, one of the largest categories of claims consists of claims held by Employees whose employment with the Debtors was terminated after the Petition Date.  As a result of the Debtors' divestitures of their various business operations, the Debtors' workforce has decreased significantly, such that the Debtors, which employed over 8,000 Employees as of the Petition Date, now employ less than 50.  Over 2,300 claims have been filed to date by Employees terminated post-petition, and the Debtors anticipate that other Employees who were terminated post-petition may not have filed claims yet.  Many of the claims filed by Employees terminated post-petition relate to severance benefits; some of such claims also relate to pension or other employee benefits.[7]  The Debtors seek the flexibility to deal with the claims of Employees terminated following the Petition Date in a fair and efficient manner without the need to request the establishment of a post-petition employee bar date or to wait for the establishment of an administrative claims bar date, which bar date likely would not be established until confirmation of a chapter 11 plan with respect to the Debtors' chapter 11 cases.

---

[6]     These amendments to the Schedules of Assets and Liabilities of NNI, NN CALA and Nortel Altsystems Inc., which were filed on October 31, 2011, November 7, 2011, November 15, 2011 and November 21, 2011, relate to certain severance claims asserted against the Debtors and can be found at D.I.s 6702, 6719, 6780 and 6827.

[7]     By filing this Motion, the Debtors do not concede the validity of any individual Employee Claims filed, which, for example, may have been waived in connection with the transfer of employment to the purchasers of Nortel's business units, pursuant to individual employment agreements entered into since the Petition Date, or otherwise.

11.     Specifically, by this Motion, the Debtors are seeking the approval of Settlement Procedures that will permit the Debtors to resolve claims of Employees terminated from employment by the Debtors following the Petition Date (including the priority, classification and amount of the claims).  Such claims primarily include, but are not limited to, claims under the Nortel Networks Severance Allowance Plan and the Nortel Networks Enhanced Severance Allowance Plan[8] (whether evidenced by proofs of claim, claims listed on the Debtors' Schedules of Assets and Liabilities or obligations reflected in the Debtors' books and records) as well as any other claims such employees have filed against the Debtors (the "Post-Petition Employee Claims").

12.     Specifically, the Debtors propose to implement the following Settlement Procedures by which the Debtors may consensually resolve Post-Petition Employee Claims:

a.      Any settlement of a Post-Petition Employee Claim pursuant to these Settlement Procedures shall be based on the reasonable business judgment of the Debtors, upon consideration of (i) the probability of success if the claim is litigated, (ii) the complexity, expense and likely duration of any litigation with respect to the claim, (iii) other factors relevant to assessing the wisdom of the settlement, and (iv) the fairness of the settlement vis-à-vis the Debtors' estates and their creditors.

b.      The Debtors' employees, counsel and other representatives responsible for negotiating or settling Post-Petition Employee Claims may attempt to resolve, mediate, compromise or otherwise settle any Post-Petition Employee Claim without further hearing or notice to this Court or other parties in interest in these proceedings.

c.      The Debtors are authorized to settle any Post-Petition Employee Claim where such settlement would result in such claim being allowed in an amount less than $100,000 without further hearing or notice to this Court or other parties in interest in these proceedings.

---

[8]     The Nortel Networks Severance Allowance Plan and the Nortel Networks Enhanced Severance Allowance Plan provide certain terminated Employees with termination benefits.  Benefits have not been paid under such plans to Employees who were terminated following the Petition Date.  Further descriptions of such plans can be found in the Debtors' Twenty-Third Omnibus Objection to Claims [D.I. 7232].

d.      For any Post-Petition Employee Claim that the Debtors propose to allow in an amount greater than or equal to $100,000 and less than $250,000, where the amount of the relevant proof(s) of claim do not exceed the proposed allowed amount of such claim by more than $25,000,[9] the Debtors shall notify (i) the U.S. Trustee, (ii) counsel to the Committee and (iii) counsel to the Bondholder Group (the "Notice Parties") in writing of the proposed settlement of such Post-Petition Employee Claim.  If no Notice Party objects in writing to the settlement of a Post-Petition Employee Claim within ten (10) calendar days of receipt of notice under this paragraph, then the Debtors may proceed immediately with the settlement of such claim.[10]  If an objection is received within such period that cannot be resolved, such Post-Petition Employee Claim may not be settled except upon further order of the Court after notice and a hearing.

e.      Where the Debtors propose to allow a Post-Petition Employee Claim (i) in an amount greater than or equal to $250,000 and less than $1,000,000 or (ii) in an amount greater than or equal to $100,000 and less than $250,000, where the amount of the relevant proof(s) of claim exceed the proposed allowed amount of such claim by more than $25,000, the Debtors shall file one or more notices (each a "Proposed Post-Petition Employee Claims Settlement Notice") with the Court listing (a) the claimant(s) with whom the Debtors propose to settle Post-Petition Employee Claim(s), (b) the asserted amount and priority of any proof(s) of claim proposed to be settled, and (c) the proposed allowed amount and priority of such Post-Petition Employee Claim(s).  If no party in interest files an objection with the Court to a proposed settlement of a Post-Petition Employee Claim listed in a Post-Petition Employee Claims Notice within twenty (20) days of the date of such notice, then the Debtors may proceed immediately with the settlement of such claim.  If an objection is filed within such period that cannot be resolved, such Post-Petition Employee Claim may not be settled except upon further order of the Court after notice and a hearing.

---

[9]      For purposes of the relevant thresholds and calculations in these Settlement Procedures, the Debtors would exclude any redundant or otherwise duplicative claims, claims asserted against multiple debtors, and claims asserting entitlement to benefits or amounts for which the Debtors categorically deny liability (e.g., claims for benefits under the Nortel Networks Retirement Income Plan, which this Court has held are not liabilities of the Debtors' estates).  See Hearing Tr. 30:9-20, Mar. 22, 2012.

[10]     The Notice Parties shall be deemed to have received notice the day after such notice has been sent by a properly addressed facsimile, email or overnight delivery to the Notice Parties or their counsel or designated representative.  If such notice is made solely by U.S. mail, the deemed receipt date shall be three (3) days after mailing.

f.    With respect to a proposed settlement reached and approved pursuant to these Settlement Procedures, such settlement shall be binding upon the parties to the settlement and all other parties in interest as if the settlement had been approved by the Court after notice and a hearing.  The Debtors shall periodically file with the Court a Notice of Settlement of Post-Petition Employee Claims (the "Settled Post-Petition Employee Claims Notice") that lists the Post-Petition Employee Claims settled pursuant to these Settlement Procedures and the allowed amount and priority of such Post-Petition Employee Claims.

g.    Nothing in the foregoing Settlement Procedures shall prevent the Debtors, in their sole discretion, from seeking the Court's approval at any time of any proposed settlement upon notice and a hearing.

h.    The Debtors, in their sole discretion, shall have the authority to exchange mutual releases as part of any settlement of any Post-Petition Employee Claim.

i.    The entry by the Debtors into settlement, mediation or compromise negotiations does not constitute a waiver of the automatic stay applicable to judicial, administrative or other actions or proceedings against the Debtors pursuant to section 362 of the Bankruptcy Code.

13.    The Debtors believe that the implementation of the Settlement Procedures will benefit the Debtors, the Employees and the Debtors' estates generally.  Allowing the Debtors the flexibility to settle these Employee Claims where possible without having to incur the substantial costs necessary to file formal claims objections will save estate resources, including the costs that would otherwise be incurred drafting, filing, surveying and conducting hearings with respect to individual settlements under Rule 9019 (including the fees of the Debtors' advisors).  Such Settlement Procedures also will enable Employees the opportunity to resolve such claims on a consensual basis.  Court approval still will be sought for larger employee claims and Employees' rights will not be prejudiced by these procedures since the Employees' right to have their claims resolved by the Court will be preserved where a consensual settlement is not reached.

**Basis for Relief**

14.     The Debtors seek an order granting the relief sought in this Motion pursuant to

sections 105(a) and 363(b) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue

any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy

Code]."  11 U.S.C. § 105(a).

15.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell, or lease the

property of the estate outside of the ordinary course of business after notice and a hearing.  11

U.S.C. § 363.  Section 363 applies when a settlement agreement involves the disposition of the

estate's assets in such a way that it ventures beyond an ordinary course transaction.  Myers v.

Martin (In re Martin), 91 F.3d 389, 394-95 (3d Cir. 1996).

16.     The use or transfer of estate property under this provision must be supported by a

sound business purpose.  Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),

722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459, 2002 WL

32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward

Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re

Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991); Travelers Cas. & Sur. Co. v.

Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008).

A court determining whether a sound business purpose justifies the transaction "should consider

all salient factors pertaining to the proceeding and, accordingly, act to further the diverse

interests of the debtor, creditors and equity holders, alike."  In re Montgomery Ward Holding

Corp., 242 B.R. at 153-54 & n.1 (quoting In re Lionel Corp., 722 F.2d at 1071).  Courts have

distinguished the application of Section 363 to settlements as opposed to property sales, finding

that the settlement of claims requires less scrutiny than asset sales because settlements must be approved quickly and are often an important first step in formulating a plan. Official Unsecured Creditors' Comm. of Pennsylvania Truck Lines v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines), 150 B.R. 595, 599 (E.D. Pa., 1992) (quoting In re Grant Broadcasting of Phila., Inc., 71 B.R. 390, 398 (Bankr. E.D. Pa. 1987) and In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 805 (E.D. Pa. 1986)).

17.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Under this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." In re Martin, 91 F.3d at 393 (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). In addition, the District of Delaware has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See In re Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004).

18.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers, 2008 WL 821088, at *5 (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)). The court need not be convinced that the

settlement is the best possible compromise in order to approve it.  In re Coram Healthcare Corp.,

315 B.R. at 330.

19.     The Third Circuit has set out four criteria for a bankruptcy court to consider when

evaluating a settlement proposal:  "(1) the probability of success in litigation; (2) the likely

difficulties in collection; (3) the complexity of the litigation involved, and the expense,

inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."

In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. at 803).  The

approval of the Settlement Procedures proposed herein supports the application of these criteria.

20.     Pursuant to Bankruptcy Rule 9019(b), the Court may authorize the Debtors to

settle certain classes of controversies without requiring separate notice and hearing with respect

to each separate controversy.  Specifically, Rule 9019(b) provides that "the court may fix a class

or classes of controversies and authorize the Trustee [or debtor in possession] to compromise or

settle controversies within such class or classes without further hearing or notice."  Fed. R. Bank.

P. 9019(b).  As stated in the 1983 Advisory Committee Notes to Rule 9019, the rule "permits the

court to deal efficiently with a case in which there may be a large number of settlements."

21.     Omnibus claims settlement procedures similar to those requested in this Motion

have been established in this case and other chapter 11 cases in this District.  See, e.g., In re

Nortel Networks Inc., Case No. 09-10138 (KG) (Bankr. D. Del. Sept. 16, 2010); In re Nortel

Networks Inc., Case No. 09-10138 (KG) (Bankr. D. Del. April 7, 2009); In re Aleris

International, Inc., (Case No. 09-10478 (BLS) (Bankr. D. Del. June 23, 2009) (expressly

references the settlement of post-petition employee claims); In re Mortgage Lenders Network

USA, Inc., Case No. 07-10146 (PJW) (Bankr. D. Del. Jan. 22, 2009); In re River Oaks Holdings,

Inc., Case No. 08-11264 (BLS) (Bankr. D. Del. Sept. 4, 2008); In re Amp'd Mobile, Inc., Case

No. 07-10739 (BLS) (Bankr. D. Del. Feb. 14, 2008); In re S-Tran Holdings, Inc., Case No. 05-11391 (KJC) (Bankr. D. Del. Mar. 30, 2006).

22.     The Debtors respectfully submit that the Settlement Procedures proposed in this Motion are reasonable and in the best interests of the Debtors, their creditors and their estates. Moreover, the Debtors believe that the implementation of the Settlement Procedures is an appropriate exercise of the authority granted to the Court under Bankruptcy Rule 9019(b). The Debtors believe that, in view of the number of Post-Petition Employee Claims, many of which may be able to be resolved consensually, and the fact that, in many circumstances, the resolution of these claims primarily consists of reconciling the claimed amount to the Debtors' records, the Settlement Procedures would appropriately mitigate the otherwise substantial costs associated with negotiating, drafting, filing and pursuing court approval of individual settlements under Bankruptcy Rule 9019(a). Specifically, given the high costs of preparing and noticing objections to Employee Claims and/or individual settlements associated with such claims (including the fees of the Debtors' advisors), particularly as compared to the relatively small size of certain Employee Claims and the small differences between the Debtors' and Employees' valuation of such claims, such procedures enable the Debtors to resolve such claims in a cost-effective and consensual manner, where possible.

23.     The Settlement Procedures contemplated herein are an efficient means of resolving the Post-Petition Employee Claims while preserving more formal notice and due process requirements where necessary. In addition, implementation of the Settlement Procedures allows the Debtors to avoid incurring the costs, administrative burden and delay associated with preparing separate motions and obtaining separate court approval for each proposed settlement. For the foregoing reasons, the Debtors seek approval of the proposed Settlement Procedures in

order to settle Post-Petition Employee Claims within the parameters set forth herein in a cost-effective and streamlined manner.

## Notice

24.    Notice of the Motion has been given via first class mail, facsimile, electronic transmission, hand delivery or overnight mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

25.    No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  May 7, 2012               CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware

James L. Bromley
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


      */s/ Chad A. Fights*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Chad A. Fights (No. 5006)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989


*Counsel for the Debtors*
*and Debtors in Possession*