## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS, INC., *et al.*, | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | **Hearing Date: June 6, 2012 at 10:00 a.m.** |
| | ) | **Objection Deadline: May 29, 2012** |
| | ) | |

## MOTION OF GENBAND US LLC FOR LEAVE TO CONDUCT DISCOVERY PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL RULE 2004-1

GENBAND US LLC, formerly GENBAND Inc. ("GENBAND"), pursuant to Rule 2004

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2004-1 of the

Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "Local

Rules"), hereby moves the Court for entry of an order authorizing and directing discovery from

Nortel Networks, Inc. ("NNI"), Nortel Networks Limited ("NNL") and their affiliated companies

(collectively "Nortel") related to the intellectual property and other assets that formed the basis

for the allegations in the consolidated action *Nortel Networks, Inc. and Nortel Networks Limited

v. Communications Test Design, Inc.*, Adversary No. 10-53065 (KG) the ("Adversary

Proceeding") and the subsequent settlement of the Adversary Proceeding.  In support of this

Motion, GENDBAND respectfully represents as follows:

### JURISDICTION AND VENUE

1.    The Court has jurisdiction pursuant to 28 U.S.C. §§1334(b) and 157(a).

2.    Venue is proper pursuant to 28 U.S.C. §1409.

3.    This motion is a "core" matter pursuant to 28 U.S.C. §157 (b)(2)(A), inasmuch as

it relates to the administration of the Debtor's bankruptcy estate.

4.     The statutory predicates for the relief sought in this motion are Rule 2004 of the Bankruptcy Rules and Rule 2004-1 of the Local Rules.

## BACKGROUND

5.     On September 21, 2010, NNI and NNL commenced adversary proceedings by filing complaints (as amended, the "Complaints")  against Communications Test Design, Inc. ("CTDI") asserting claims for misappropriation of trade secrets, trademark infringement, trademark dilution, false designation of origin, fraud, breach of contract, breach of implied duty of good faith and fair dealing, and unjust enrichment based on CTDI's alleged unauthorized use of Nortel's intellectual property by improperly manufacturing and selling Nortel telephone sets and circuit packs.   The adversary proceedings were consolidated for all purposes and administered as the Adversary Proceeding.

6.     On September 28, 2011, NNI and certain of its affiliates (the "Debtors") filed Debtors' Motion For Entry Of An Order Approving (I) Settlement Agreement Among Nortel Parties And Communications Test Design, Inc. And (II) Related Side Agreement Among Nortel Parties (the "CTDI Settlement Motion") pursuant to which the Debtors requested court approval of, among other things, a certain Stipulation and Settlement Agreement dated as of September 26, 2011 by and among Nortel Networks Corporation, NNL, NNI and CTDI (the "CTDI Settlement Agreement").

7.     The Court entered an order approving the CTDI Settlement Motion on October 17, 2011.

8.     Prior to Nortel's commencement of the Adversary Proceeding against CTDI, GENBAND purchased substantially all of the assets related to Nortel's carrier voice over IP and Applications Solutions Business (the "CVAS Business") pursuant to, among other agreements, a

certain Asset Sale Agreement by and among GENBAND, NNC, NNL, NNI and Other Sellers,

dated December 22, 2009, as amended from time to time (the "Sale Agreement").

9.      This Court, as well the Ontario Superior Court of Justice Court, approved the sale

of the CVAS Business to GENBAND by order dated March 4, 2010.

10.     The parties closed on the Sale Agreement on May 28, 2010.

11.     Pursuant to Section 2.1.1.(h) of the Sale Agreement, the Assets purchased by

GENBAND included, among other things, the Transferred Intellectual Property.  Specifically,

Section 2.1.1.(h) of the Sale Agreement states that the Assets sold and transferred to GENBAND

included:

> (h) the Transferred Intellectual Property as of the Closing Date, subject to the
> licenses granted to NNL, NNI and each of the EMEA Sellers pursuant to the
> Intellectual Property License Agreement and subject to any and all licenses
> granted under such Intellectual Property prior to the Closing Date not in violation
> of Section 5.9, together with (A) **all income, royalties, damages and payments
> due or payable after the Closing Date relating to the Transferred Intellectual
> Property** (except for (x) any income, royalties, damages and payments from
> claims asserted prior to the Closing Date or payment obligations accrued for
> periods prior to the Closing date, whether or not due or payable after the Closing
> Date, and (y) any income or royalties payable under any contract, arrangement or
> agreement other than the Assigned Contracts), (B) the right, if any, to register,
> prosecute, maintain and defend the Transferred Intellectual Property before any
> public or private agency or registrar, and (C) **the right to sue and recover
> damages or other compensation for past, present or future infringements,
> dilutions, misappropriations, or other violations thereof, the right to sue and
> obtain equitable relief in respect of such infringements, dilutions,
> misappropriations and other violations, and the right to fully and entirely
> stand in the place of the Sellers in all matters related thereto.** (emphasis
> added)

12.     Based on its purchase of the CVAS Business which included, among other Assets,

the Transferred Intellectual Property, GENBAND is investigating whether it is the owner of any

of the intellectual property or other assets at issue in the Adversary Proceeding and therefore

may have rights, interests and/or claims to all or a portion of the settlement amounts Nortel

received from CTDI pursuant to the CTDI Settlement Agreement.

3

13.    To that end, pursuant to this Motion, GENBAND seeks production of documents from Nortel in order to determine whether the claims and causes of action asserted by Nortel in the Adversary Proceeding and/or settled by the parties pursuant to the CTDI Settlement Agreement related to Transferred Intellectual Property or any other Assets sold to GENBAND pursuant to the Sale Agreement.

14.    Through this Motion, GENBAND seeks entry of an order pursuant to Rule 2004 of the Bankruptcy Rules ("Rule 2004") (i) requiring Nortel to produce any and all documents and things concerning, reflecting, identifying or referring to the intellectual property and other assets purportedly owned by Nortel that Nortel asserts CTDI used in connection with its improper and unauthorized manufacture and sale of Nortel products including, without limitation, documents described and/or identifying Nortel Components (as defined in the Complaints), Nortel Know-How (as defined in the Complaints), Software (as defined in the Complaints), Nortel Circuit Packs (as defined in the Complaints), as well as any and all documents produced by CTDI in response to Nortel's exercise of its audit rights under the Master Contract Service Agreement with CTDI; and (ii) permitting GENBAND to depose representatives of Nortel on the subject matter of the information and documents.

## ARGUMENT

15.    Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). As the purchaser of the CVAS Business with a potential claim or right to settlement proceeds in the possession of Nortel, GENBAND is a party in interest for purposes of Rule 2004.

16.    Rule 2004 is recognized as the "basic discovery device used  [in] bankruptcy cases." *In re French*, 145 B.R. 991, 992 (Bankr. D.S.D. 1992).

4

17.     The purpose of Rule 2004 is to permit a broad investigation into the financial affairs of the debtor to assure the proper administration of bankruptcy estates, to discover assets (including claims), to examine transactions, and to expose any improper conduct. *See, e.g. In re Washington Mutual, Inc.*, 408 B.R. 45 (Bankr. D. Del. 2009); *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997).

18.     A Rule 2004 examination is not limited to the debtor. *See, e.g. Recoton Corp.*, 307 B.R. at 755 ("Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation.").

19.     Rule 2004(b) provides that the scope of the examination may relate to:

"the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate... In a...case under chapter 11 of the Code . . . the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan."

Fed. R. Bankr. P. 2004(b).

20.     While GENBAND seeks limited and tailored discovery regarding the intellectual property that was basis for the Adversary Proceeding and settlement, courts have recognized that the scope of Rule 2004 examinations is broad, unfettered, and can legitimately be in the nature of a "fishing expedition." *Washington Mutual*, 408 B.R. at 50 (quoting *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)).

21.     The discovery requested herein is within the scope of Rule 2004 because it seeks information related to GENBAND's rights, interests and/or claims to settlement proceeds in the possession of Nortel. The requested discovery clearly relates to a "matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b). Moreover, the requested discovery relates to the "source of any money or property acquired or to be acquired by the

5

debtor for purposes of consummating a plan…and any other matter relevant to the case or to the formulation of a plan. *Id.*

22.    Pursuant to Rule 2004-1(b) of the Local Rules, undersigned counsel certifies that, prior to filing this Motion, undersigned counsel attempted to confer with Nortel's counsel regarding the discovery requested by GENBAND.  Nortel has categorically refused to provide any information to GENBAND.  A copy of a letter sent to Nortel's counsel requesting a meet and confer is attached hereto as Exhibit A.  Nortel's counsel's responsive letter is attached hereto as Exhibit B.

**WHEREFORE**, GENBAND respectfully requests that the Court enter an Order substantially in the form accompanying this Motion, and grant such other and further relief as the Court deems appropriate.

Dated: May 18, 2012

DUANE MORRIS LLP

*/s/ Richard W. Riley*
Michael L. Lastowski (No. 3892)
Richard W. Riley (No. 4052)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-Mail:  mlastowski@duanemorris.com
          rwriley@duanmorris.com

*Counsel for GENBAND US LLC*