# EXHIBIT A

# Duane Morris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SAN DIEGO
BOSTON
HOUSTON
LOS ANGELES
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
BOCA RATON
LAKE TAHOE

MEXICO CITY
ALLIANCE WITH
MIRANDA & ESTAVILLO

RICHARD W. RILEY
DIRECT DIAL: +1 302 657 4928
PERSONAL FAX: +1 302 397 0801
E-MAIL: rwriley@duanemorris.com

www.duanemorris.com

May 7, 2012

*VIA E-MAIL AND U.S. MAIL*
Raymond H. Lemisch, Esq.
Jennifer R. Hoover, Esq.
Benesch, Friedlander, Coplan
& Aronoff, LLP
222 Delaware Avenue, Suite 801
Wilmington, DE 19801

*VIA E-MAIL AND U.S. MAIL*
James L. Bromley, Esq.
Lisa M. Schweitzer, Esq.
David H. Herrington, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

*VIA E-MAIL AND U.S. MAIL*
Mary F. Caloway, Esq.
Buchanan Ingersoll & Rooney PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801

*VIA E-MAIL AND U.S. MAIL*
Ken Coleman, Esq.
Laura Hall, Esq.
Allen & Overy LLP
1221 Avenue of the Americas
New York NY  10020

Re:   **In re Nortel Networks, Inc.**

Dear Counsel:

We represent GENBAND US LLC, formerly GENBAND Inc. ("GENBAND"). We understand that Nortel Networks Inc. ("NNI") and Nortel Networks Limited ("NNL") commenced adversary proceedings by filing complaints (as amended, the "Complaints")[1] against Communications Test Design, Inc. ("CTDI") asserting claims for misappropriation of trade secrets, trademark infringement, trademark dilution, false designation of origin, fraud, breach of contract, breach of implied duty of good faith and fair dealing, and unjust enrichment based on CTDI's alleged unauthorized use of Nortel's intellectual property by improperly manufacturing and selling Nortel telephone sets and circuit packs. It is our understanding that the adversary proceedings were consolidated as *Nortel Networks Inc. and Nortel Networks Limited v. Communications Test Design, Inc.*, Ad. Proc. No. 10-53065 (KG) (the "Adversary Proceeding").

---

[1] As in the Complaints, NNI and its affiliates will be referred to generally as "Nortel".

222 DELAWARE AVENUE, SUITE 1600   WILMINGTON, DE 19801-1659         PHONE: +1 302 657 4900   FAX: +1 302 657 4901
DM3\2175081.1

May 7, 2012
Page 2

DuaneMorris

We also understand that on September 28, 2011, NNI and certain of its affiliates (the "Debtors") filed Debtors' Motion For Entry Of An Order Approving (I) Settlement Agreement Among Nortel Parties And Communications Test Design, Inc. And (II) Related Side Agreement Among Nortel Parties (the "CTDI Settlement Motion") pursuant to which the Debtors requested court approval of, among other things, a certain Stipulation and Settlement Agreement dated as of September 26, 2011 by and among Nortel Networks Corporation ("NNC"), NNL, NNI and CTDI (the "CTDI Settlement Agreement"). Pursuant to the CTDI Settlement Agreement, the parties settled the claims and causes of action which were or could have been asserted in the Adversary Proceeding. The Court entered an order approving the CTDI Settlement Motion on October 17, 2011.

As you know, pursuant to, among other agreements, a certain Asset Sale Agreement by and among GENBAND, NNC, NNL, NNI and Other Sellers[2], dated December 22, 2009, as amended from time to time (the "Sale Agreement"), GENBAND purchased substantially all of the assets related to Nortel's Carrier Voice over IP and Communications Solutions Business (the "CVAS Business"). The Court approved the sale of the CVAS Business to GENBAND by order dated March 4, 2010. The Canadian Court likewise approved the sale of the CVAS Business to GENBAND by order dated March 4, 2010. The parties closed on the Sale Agreement on May 28, 2010. Pursuant to Section 2.1.1.(h) of the Sale Agreement, the Assets purchased by GENBAND included, among other things, the Transferred Intellectual Property. Specifically, Section 2.1.1.(h) of the Sale Agreement states that the Assets sold and transferred to GENBAND included:

> (h) the Transferred Intellectual Property as of the Closing Date, subject to the licenses granted to NNL, NNI and each of the EMEA Sellers pursuant to the Intellectual Property License Agreement and subject to any and all licenses granted under such Intellectual Property prior to the Closing Date not in violation of Section 5.9, together with (A) <u>all income, royalties, damages and payments due or payable after the Closing Date relating to the Transferred Intellectual Property</u> (except for (x) any income, royalties, damages and payments from claims asserted prior to the Closing Date or payment obligations accrued for periods prior to the Closing date, whether or not due or payable after the Closing Date, and (y) any income or royalties payable under any contract, arrangement or agreement other than the Assigned Contracts), (B) the right, if any, to register, prosecute, maintain and defend the Transferred Intellectual Property before any public or private agency or registrar, and (C) <u>the right to sue and recover damages</u>

---

[2] Capitalized terms used herein and not defined herein shall have the meaning given such terms in the Sale Agreement.

May 7, 2012
Page 3

DuaneMorris

>or other compensation for past, present or future infringements, dilutions, misappropriations, or other violations thereof, the right to sue and obtain equitable relief in respect of such infringements, dilutions, misappropriations and other violations, and the right to fully and entirely stand in the place of the Sellers in all matters related thereto. (emphasis added)

Based on its purchase of the Transferred Intellectual Property, GENBAND is investigating whether the claims and causes of action asserted by Nortel in the Adversary Proceeding and/or settled by the parties pursuant to the CTDI Settlement Agreement relate to Transferred Intellectual Property or any other Assets sold to GENBAND pursuant to the Sale Agreement. To that end, GENBAND requests that the Debtors and/or Nortel produce any and all documents and things concerning, reflecting, identifying or referring to the intellectual property and other assets purportedly owned by Nortel that Nortel asserts CTDI used in connection with its improper and unauthorized manufacture and sale of Nortel products including, without limitation, documents described and/or identifying Nortel Components (as defined in the Complaints), Nortel Know-How (as defined in the Complaints), Software (as defined in the Complaints), Nortel Circuit Packs (as defined in the Complaints), as well as any and all documents produced by CTDI in response to Nortel's exercise of its audit rights under the Master Contract Service Agreement with CTDI.

Pursuant to Del. Bankr. L.R. 2004-1, we are requesting a meet and confer with you within seven (7) days of the date of this letter to attempt to reach an agreement on Nortel's production of the above documents and potential subsequent examinations of appropriate representatives of the Debtors and/or Nortel. To the extent we cannot reach an agreement, GENBAND intends to file a motion pursuant to Fed. R. Bankr. P. 2004 for the production of documents from the Debtors and/or Nortel and examination of the Debtors and/or Nortel regarding the claims and causes of action asserted in the Adversary Proceeding and/or settled by the CTDI Settlement Agreement, and whether such claims and causes of action relate the Transferred Intellectual Property or any other Assets sold to GENBAND.

Sincerely,

Richard W. Riley

RWR/slr
cc: Michael R. Lastowski, Esq.

DM3\2175081.1