## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X

*In re*

Nortel Networks Inc., *et al.*,[1]

                Debtors.

----------------------------------------------------------- X

Nortel Networks Inc.,

                Plaintiff,

v.

Thomas & Betts Manufacturing, Inc. a/k/a
Thomas & Betts Fabrication Inc., d/b/a its GFI
Division,

                Defendant.

-----------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

(Jointly Administered)

Adv. Proc. No. 11-50203(KG)

Hearing date:  June 21, 2012 at 10:00 a.m. (ET)
Objections due:  June 12, 2012 at 4:00 p.m. (ET)

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION OF SETTLEMENT OF AVOIDANCE CLAIMS BY AND BETWEEN NORTEL NETWORKS INC. AND THOMAS & BETTS MANUFACTURING, INC. A/K/A THOMAS & BETTS FABRICATION INC., D/B/A ITS GFI DIVISION

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 502,

---

[1]      In addition to Nortel Networks Inc. the Debtors in the Chapter 11 cases are:  Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc.  Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

547, and 550 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to

enter into and approving a stipulation (the "Stipulation") with Thomas & Betts Manufacturing,

Inc. a/k/a Thomas & Betts Fabrication Inc., d/b/a its GFI Division ("Defendant", and together

with NNI, the "Parties"), in the form attached hereto as **Exhibit B**, resolving the adversary

proceeding entitled Nortel Networks Inc. v. Thomas & Betts Manufacturing, Inc. a/k/a Thomas

& Betts Fabrication Inc., d/b/a its GFI Division, Adv. Proc. No. 11-50203 (KG) (the "Adversary

Proceeding") and granting such other and further relief as the Court (the "Court" or the

"Bankruptcy Court") deems just and proper.  In support of this Motion, the Debtors respectfully

represent as follows:

## Jurisdiction

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory bases for the relief requested herein are sections 105(a), 502, 547,

and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.       On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]       Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the
Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the
other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [Main D.I.s 141, 142],[3] and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

---

[3]      Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __." Citations herein to the docket in this adversary proceeding (Adv. Pro. No. 11-50203) are in the form "Adv. D.I. __."

[4]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors, available at http://dm.epiq11.com/nortel.

## Relief Requested

7.      By this Motion, the Debtors seek an order, pursuant to sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Stipulation, (ii) authorizing but not directing the Debtors to take all actions reasonably appropriate to perform their obligations under the Stipulation, and (iii) granting them such other and further relief as the Bankruptcy Court deems just and proper.

## Facts Relevant to this Motion

8.      Defendant supplied NNI with prefabricated and sheet metal products which NNI purchased for its manufacturing needs.

9.      On or about September 25, 2009, Defendant timely filed general unsecured proof of claim number 3830 against NNI in the amount of $1,050,439.37 with respect to its delivery of goods to NNI ("Claim No. 3830").

10.      On or about September 25, 2009, Defendant timely filed claim number 3834 against NNI in the amount of $40,951.30 as an administrative claim with respect to its delivery of goods to NNI.

11.      On June 7, 2011 the Court entered an order granting Debtors' Motion to Deem Satisfied [Main D.I. 5625] whereby Defendant's claim number 3834 against NNI was reduced from $40,951.30 to $35,162.30 and deemed an allowed administrative claim in the amount of $35,162.30 (the "Administrative Claim").

12.     NNI's books and records indicate that within ninety (90) days prior to the Petition Date, NNI made one or more transfers of an interest in its property to or for the benefit of Defendant in the aggregate amount of $5,466,378.15  (the "Subject Transfers").

13.     On January 14, 2011, NNI filed its Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code [Adv. D.I. 1] (the "Complaint") against Defendant in this Court, pursuant to which NNI sought to avoid and recover the Subject Transfers (the "Avoidance Claim").

14.     On April 15, 2011, Defendant filed an Answer to the Complaint [Adv. D.I. 6] in the Adversary Proceeding, denying certain allegations and asserting various defenses.

15.     On September 16, 2010, the Court entered an Order Authorizing and Approving Settlement Procedures to Settle Certain Prepetition Claims (the "Prepetition Claims Settlement Procedures Order") which requires the Debtors to obtain Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 before they settle certain disputed Proofs of Claim that were originally filed in an amount equal to or greater than $1,000,000 [Main D.I. 3953].

16.     On October 27, 2010, the  Court entered an Order Authorizing And Approving Settlement Procedures To Settle Certain Avoidance Claims (the "Avoidance Claims Settlement Procedures Order"), which requires the Debtors to obtain Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 before they settle certain avoidance claims where the asserted claim amount is greater than $1,000,000 [Main D.I. 4211].

17.     Since the Complaint and Answer were filed, the Parties have engaged in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by further litigation of the Avoidance Claim, the Parties have agreed to settle the Adversary Proceeding on the terms set forth in the Stipulation, attached hereto as **Exhibit B**.

5

18.     Pursuant to the Stipulation[6] and subject to the Bankruptcy Court's approval, NNI has agreed to settle the Avoidance Claim in return for Defendant's reducing Claim No. 3830 from $1,050,439.37 to $925,439.37, which amount shall be deemed an allowed general unsecured claim by Defendant against NNI in the amount of $925,439.37, which shall not be subject to further objection, disallowance, reduction, subordination, offset, avoidance or expungement (the "Allowed Amount").  In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration, Defendant has agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release and forever discharge Plaintiff, its past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "Debtor Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that Defendant now has, had, may have had, or hereafter may have against any of the Debtor Releasees regarding the Avoidance Claim, the Adversary Proceeding, Claim 3830 in excess of the Allowed Amount, and any transaction described or referred to in the Complaint or in Claim 3830 (in excess of the Allowed Amount).  For the avoidance of doubt, Defendant releases any and all claims arising under § 502(h) of the Bankruptcy Code.

19.     In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration, NNI has agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release and forever discharge Defendant, its past and present parents,

---

[6]     In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of its predecessors, successors and assigns (collectively, the "Defendant Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that NNI now has, had, may have had, or hereafter may have against any of the Defendant Releasees regarding the Avoidance Claim, the Adversary Proceeding, Claim 3830 (in excess of the Allowed Amount) and any transaction described or referred to in the Complaint, in Claim 3830 or the Administrative Claim (except as provided herein).

### Basis for Relief

20.     The Debtors seek authorization for NNI to enter into the Stipulation under sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

21.     Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  In re

Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for

Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  Courts

in this District have also recognized that the approval of a proposed compromise and settlement

is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram Healthcare

Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

   22.  Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re

Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211

B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the

need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer

Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best

possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.

Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below

the lowest point in a range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of

Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at

330.

   23.  The Third Circuit has set out four criteria for a bankruptcy court to consider when

evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62

B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.),

283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

24.    The Debtors respectfully submit that the Martin Factors weigh heavily in favor of

approving the Stipulation.  While NNI is prepared to litigate the Avoidance Claim, Defendant

has interposed an ordinary course of business defense pursuant to 11 U.S.C. § 547(c)(2) that,

upon analysis, appears to be  particularly strong.  Specifically, Defendant has contended and the

data supports the contention that the most of the Subject Transfers were made within time frames

consistent with the Parties' prior dealings and consistent with the ordinary course of dealings in

the Defendant's industry.  Furthermore, Defendant has a strong argument that the remaining

Subject Transfers are substantially reduced by the subsequent new value defense pursuant to 11

U.S.C. § 547(c)(4).

25.    NNI recognizes that litigation of the Avoidance Claim carries with it inherent

uncertainties and there can be no assurance that litigation of the Avoidance Claim would achieve

a better result than the one set forth in the Stipulation.  Pursuant to the settlement reflected in the

Stipulation, and upon the Settlement Date (as defined in the Stipulation), Defendant will reduce

Claim No. 3830 by $125,000 and waive any claim arising out of Section 502(h) of the

Bankruptcy Code.  This resolution fairly balances NNI's likelihood of success on the merits of

the Avoidance Claim against its interest in avoiding the uncertainty of litigation.

26.    In addition, further litigation of the Avoidance Claim would result in the estate's

expenditure of considerable additional legal fees.  These would include fees associated with

formal discovery, retention of an expert, briefing of dispositive motions and potentially

conducting a trial of the Avoidance Claim.  In the absence of a settlement, the estate would be

burdened with the time and costs of ongoing litigation, which would be disruptive of the estate's efforts to resolve the matters that are essential to the ultimate resolution of these cases.

27.     Finally, the interests of the creditors weigh in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Avoidance Claim and the avoidance of litigation risk and substantial legal expenses that would be incurred if the Avoidance Claim were to be further litigated.

28.     In light of the foregoing, the Debtors respectfully seek authorization for NNI to enter into the Stipulation and approval of the Stipulation.

## Notice

29.     Notice of the Motion has been given via first class mail to (i) Defendant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

30.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

10

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion, approve the Stipulation, and authorize the Debtors to enter into the Stipulation; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: May 29, 2012
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
Scott McCoy (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____*/s/ Chad A. Fights*_____
Donna L. Culver (No. 2983)
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
Chad A. Fights (No. 5006)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*