**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------- X

|  |  |  |
|---|---|---|
| *In re* | : | Chapter 11 |
|  | : |  |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |
|  | : | **RE:  D.I. 7660** |
|  | : |  |

-------------------------------------------------------- X

**DEBTORS' OBJECTION TO GENBAND US LLC'S
MOTION FOR DISCOVERY PURSUANT TO RULE 2004**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors

in possession (collectively, the "Debtors"), by their undersigned attorneys, hereby respectfully

respond and object to GENBAND US LLC's ("GENBAND") motion (the "Motion") seeking

leave to conduct discovery pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and Rule 2004-1 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules") [D.I. 7660].

## PRELIMINARY STATEMENT

1.     GENBAND's Rule 2004 Motion seeks to impose unnecessary burden and

expense on the Nortel estates by demanding discovery in pursuit of a belated and facially

meritless potential claim.  GENBAND suggests that it may be entitled to "all or a portion" of the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

proceeds of the settlement of the litigation between NNI and Nortel Networks Limited ("NNL" and together with NNI, "Nortel") and a former supplier of repair services, Communications Test Design, Inc. ("CTDI") – a settlement that the Court expressly approved based on a Rule 9019 motion that was served on, *inter alia*, GENBAND more than half a year ago.  GENBAND never had any rights to the causes of action that Nortel settled in the CTDI suit, but it certainly cannot pursue such a claim now.

2.       In October 2011, when this Court addressed and approved the settlement between Nortel and CTDI (the "Settlement"), GENBAND and its counsel were served with notice of the 9019 Motion that both referenced the adversary proceeding brought by Nortel against CTDI and described the settlement, its terms and the claims between Nortel and CTDI.  *See* Affidavit of Service, filed Oct. 6, 2011 [D.I. 6561], attached hereto as Exhibit B.  If GENBAND had wished to raise any potential claim, concern or question concerning the Settlement or the claims Nortel asserted in the litigation with CTDI, the time to raise it was then – ***before*** the Court approved the Settlement that resolved and terminated the suit.  But GENBAND raised no objection at all. Having made that choice, GENBAND cannot now subject Nortel to discovery in the hope of manufacturing a claim against Nortel based on the Settlement.

3.       Beyond this threshold bar, GENBAND's Motion is procedurally improper and substantively unfounded for several other reasons.  As an initial matter, GENBAND sold its pre-petition trade claim against Nortel long ago and is no longer a creditor of Nortel.  Because it has no pecuniary interest in NNI's estate, GENBAND lacks standing to invoke Rule 2004 to seek pre-complaint discovery in pursuit of a potential lawsuit against Nortel.

4.       Finally, GENBAND simply has no right to any of the proceeds of the Settlement. The claims that Nortel asserted against CTDI – and resolved through the compromise embodied

in the Settlement – are for fraud, breach of contract, breach of the implied duty of good faith and fair dealing, trademark infringement, trademark dilution, misappropriation of trade secrets and unjust enrichment.  GENBAND purports to have an interest in only one of these many causes of action, for misappropriation of trade secrets, and has no purported interest in the many other causes of action that Nortel asserted against CTDI and resolved in the Settlement.

5.       Even as to the cause of action for trade secret misappropriation, GENBAND has no basis for a claim that it has an interest in any part of that cause of action.  To make such a claim, GENBAND would need to establish that the trade secret misappropriation claim that Nortel asserted against CTDI encompassed "Transferred Intellectual Property" under the asset sale agreement between Nortel and GENBAND.  This in turn would require GENBAND to demonstrate that the cause of action involved trade secrets that were "used *exclusively* in connection with the Business" that was sold to GENBAND.  GENBAND cannot make such a showing, and it does not even try to do so.  As importantly, it is wholly inappropriate for GENBAND to raise such unfounded allegations more than half a year after the Settlement was approved in an attempt to reopen an integrated global settlement of claims between Nortel and CTDI.

6.       In sum, there is no basis for GENBAND's attempt to impose on Nortel and their estates the substantial burden and cost of discovery in pursuit of a claim that would require reopening the Settlement that this Court has approved – after full notice to GENBAND and with no objection from GENBAND whatsoever – based on a purported potential claim that is meritless on its face.

## FACTUAL BACKGROUND

**A.    Sale of the CVAS Business**

7.    On March 4, 2010, this Court approved Nortel's sale of the CVAS business to

GENBAND, pursuant to an asset sale agreement, dated December 22, 2009, as amended (the

"Sale Agreement") [D.I. 2632].  An analogous order was entered by the Canadian Court on

March 3, 2010.   The sale closed on May 28, 2010.

8.    The Sale Agreement provided that Nortel would transfer to GENBAND

intellectual property that met the definition of "Transferred Intellectual Property," as follows:

> . . . (i) the Transferred Patents, (ii) the Trademarks set forth in Section 1.1(k) of
> the Sellers Disclosure Schedule, and (iii) any Intellectual Property (other than
> Patents or Trademarks) owned by any of the Sellers that is used exclusively in
> connection with the Business.

Sale Agreement §1.1.  Thus, apart from specifically identified "Transferred Patents" and

"Trademarks," Intellectual Property would qualify as "Transferred Intellectual Property" only if

it was "used *exclusively* in connection with the Business" being sold to GENBAND.  *Id.*  In

addition, even as to intellectual property that might otherwise meet these requirements, the Sale

Agreement carved out from the scope of Transferred Intellectual Property "any income or

royalties payable under any contact, arrangement or agreement other than the Assigned

Contracts" and "any income, royalties, damages and payments from claims asserted prior to the

Closing Date."  Sale Agreement § 2.1.1(h).

**B.    The CTDI Adversary Proceeding**

9.    On September 21, 2010, after approximately a year of pre-litigation settlement

negotiations, Nortel filed an adversary proceeding against CTDI in this Court asserting claims of

fraud, breach of contract, breach of the implied duty of good faith and fair dealing, trademark

infringement, trademark dilution, misappropriation of trade secrets and unjust enrichment (the

"CTDI Adversary Proceeding").  *See* Compl., *Nortel Networks Inc v. Commc'ns Test Design Inc.*, Adv. Proc. 10-53065 (Bankr. D. Del. Sept. 21, 2010) [D.I. 1]; Compl., *Nortel Networks Ltd. v Commc'ns Test Design Inc.*, Adv. Proc. 10-53066 (Bankr. D. Del. Sept. 21, 2010) [D.I. 1] (as amended, collectively the "Complaints").[2]  During six months of active litigation, GENBAND received notification of hearings with respect to the CTDI Adversary Proceeding.  *See, e.g.*, Notice of Service, filed Jan. 3, 2011 [D.I. 4671] (noticing service of agenda for hearing on motion to dismiss CTDI Adversary Proceeding on GENBAND's counsel, Duane Morris).

10.     In May 2011, NNI, NNL and CTDI (the "Parties") agreed to enter into mediation in an effort to resolve the claims raised in the CTDI Adversary Proceeding, and this Court referred the mediation to Judge Raymond T. Lyons, United States Bankruptcy Judge for the District of New Jersey Court.  On June 10, 2011, after several hours of extensive negotiation, the Parties reached a settlement in principle resolving all of Nortel's claims against CTDI.  The settlement involved a payment by CTDI to resolve all of Nortel's claims, without an allocation of particular amounts to particular claims.

11.     On September 28, 2011, NNI filed a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure with this Court for approval of the Settlement, which attached the Parties' definitive settlement agreement, dated September 26, 2011 (the "CTDI Settlement Agreement").  *See* CTDI Settlement Motion, filed Sept. 28, 2011 [D.I. 6518], attached hereto as Exhibit A.  The Rule 9019 motion and accompanying exhibits, including the CTDI Settlement Agreement, were served on both GENBAND and its counsel.  *See* Affidavit of Service, filed Oct. 6, 2011 [D.I. 6561], attached hereto as Exhibit B.

---

[2]     Both NNI and NNL amended their complaints on November 12, 2010.

12.     GENBAND therefore received full notice of the Settlement, and it had an opportunity to raise any objection, concern or question it might have.  But GENBAND said nothing.  Rather, having been provided with the Rule 9019 motion and with an opportunity to review the CTDI Settlement Agreement, GENBAND chose not to file an objection to the motion seeking approval of the CTDI Settlement Agreement, chose not to raise any questions or concerns, either formally or informally, concerning Nortel's litigation with CTDI or the CTDI Settlement Agreement, and chose not to assert any claim for any part of the proceeds of the Settlement.  Any putative claim by GENBAND to the proceeds of the Settlement would have been meritless, but if GENBAND had wished to attempt to pursue such a claim the time to do so obviously was *before* the Court approved the Settlement and the litigation was terminated.

13.     On October 17, 2011, having received no objection to the Settlement, this Court entered an order approving the CTDI Settlement Agreement.  *See* Order, filed Oct. 17, 2011 [D.I. 6626], attached hereto as Exhibit C.

14.     On May 7, 2012, almost seven months after the Settlement was approved, GENBAND sent a letter to Nortel, for the first time purporting to "investigate" the claims and causes of action settled in the CTDI Adversary Proceeding.  Nortel responded on May 14, 2012, noting that GENBAND's substantive claim was meritless, and that, having failed to object to Nortel's 9019 Motion for approval of the CTDI Settlement Agreement, it was barred from pursuing discovery under Rule 2004.  Four days later, GENBAND filed the instant motion.

## ARGUMENT

### I.    THE RELIEF REQUESTED BY GENBAND IS FORECLOSED BY THIS COURT'S APPROVAL OF THE CTDI SETTLEMENT AGREEMENT

15.    GENBAND's request for Rule 2004 discovery is a belated and meritless attempt to reopen a settlement that the Court approved more than half a year ago, after full notice to GENBAND, and therefore must be rejected.

16.    Settlements are encouraged and "generally favored in bankruptcy." *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). In determining whether to approve a settlement under Bankruptcy Rule 9019, courts assess whether "the compromise is fair, reasonable, and in the best interest of the estate," *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005), and must "compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424-25 (1968). In deciding whether the settlement is fair and in the best interest of the estate, courts necessarily rely on the finality of the settlement under consideration. *See Schwab v. United States (In re Shop N' Go P'ship)*, 261 B.R. 810, 817 (Bankr. M.D. Pa. 2001) ("[P]olicy considerations weigh heavily in favor of honoring the settlement agreement. Expectations of the parties that entered into the settlement agreement should be upheld. If not, neither the IRS nor the [debtor] would have entered into the agreement and there would exist a chilling effect on all future settlement agreements."); *In re Carlton Concrete Corp.*, No. 08-CV-242 (JFB), 2008 WL 4443233, at **7–8 (E.D.N.Y. Sept. 26, 2008) (discussing the fact that parties often agree to settle contingent on the bankruptcy court's approval of the terms, and that the absence of finality in an approval order may disrupt the possibility of settlement entirely); *cf. In re W.R. Grace & Co.*, 468 B.R. 81, 130-131 (D. Del. 2012) (noting that, absent the principle of estoppel of subsequent

claimants in the face of "a fair and equitable settlement, there would be no finality to litigation and no realistic likelihood of settlement" (citation omitted)).  As the prompt and final settlement of claims in bankruptcy is essential, settlements are rarely set aside.  *See Bradlees Stores, Inc. v. St. Paul Fire & Marine Ins. Co. (In re Bradlees Stores, Inc.)*, 291 B.R. 307, 311 (Bankr. S.D.N.Y. 2003) (denying request to set aside settlement); *McHale v Huff (In re Huff)*, 118 B.R. 146, 148 (Bankr. S.D. Fla. 1990) (same); *In re N. Broadway Funding Corp.*, 34 B.R. 620, 622 (Bankr. E.D.N.Y. 1983) (same).

17.    In light of the importance courts ascribe to the finality of a court approved settlements, where, as here, a party is provided with notice of a settlement and the opportunity to oppose such settlement, courts have held that a failure to timely object to a settlement bars later attempts to disturb that settlement, including by seeking a portion of the settlement proceeds. *See Carlton*, 2008 WL 4443233, at *8; *see also Shop N' Go*, 261 B.R. at 816 (denying chapter 7 trustee's motion to disgorge settlement proceeds paid by debtor-in-possession to IRS where "settlement agreement . . . was noticed, not objected to by any creditor or party in interest, and approved by this Court").

18.    In *Carlton*, a case analogous to this one, the bankruptcy court approved a settlement agreement between the Carlton Concrete Corporation ("Carlton"), the debtor sub-contractor, and 30 Main, a general contractor, with respect to the debtor's adversary proceeding against the general contractor.  *Id.* at *3.  The motion seeking the settlement's approval, together with the settlement agreement, was served on all parties, including a supplier to the debtor, EDC. *Id.*  EDC chose not to object to the settlement agreement, which was then approved by the court. *Id.*  Approximately six months later, EDC sought to vacate a portion of the order approving the

settlement between Carlton and 30 Main that enjoined third parties, including EDC, from pursuing claims against 30 Main as a result of their relationship with Carlton.  *Id.*

19.    The district court affirmed the bankruptcy court's denial of EDC's motion on the basis that EDC "should have . . . objected to [the settlement agreement] during the time provided in the [notice of settlement], not after the Approval Order was placed into effect."  *Id.* at *8.  In denying EDC's motion, the bankruptcy court held that to "[t]o allow EDC to partially vacate the Approval Order and reopen the adversary proceeding after the settlement money has been paid to Debtor and the settlement funds were made available to . . . creditors, would be unfair, prejudicial and contrary to the policy of preserving the finality of judgments."  *Id.* at *6, *8.

20.    In affirming the bankruptcy court's order, the district court in *Carlton* stressed two factors relevant here.  First, a publicly filed settlement agreement describing the claims resolved by the settlement places third parties on notice that, if approved, the settlement agreement may impact their rights.  *Carlton*, 2008 WL 4443233, at *7.  Here, GENBAND does not, and cannot, deny that it was aware of the CTDI Adversary Proceeding and of the settlement of those claims in accordance with the CTDI Settlement Agreement.  Hence, to the extent that GENBAND believed that it might have any potential claim or objection concerning the Settlement (and in fact it has no such claim, *see infra,* Argument-III), GENBAND was on notice that those claims were being settled, and that, if the Settlement Agreement was approved, Nortel would receive the settlement proceeds.  If GENBAND had raised any claims or objections concerning the Settlement in response to the Rule 9019 motion, those claims and objections would have been addressed ***before*** the Court approved the Settlement and the Parties terminated the CTDI Adversary Proceeding.  But, again, GENBAND raised no objection whatsoever to the Settlement.

21.     Second, to even partially reopen or attempt to change the Settlement would "ultimately prejudice those parties that relied upon the agreement." *Carlton*, 2008 WL 4443233, at *8 ("To have the court excise the injunctive language and allow EDC to pursue tort claims relating to the Premises/Project would substantially undermine the value of settling the case to the defendants – who contend that they would not have settled for $300,000 had those claims not been extinguished and, thus, argue they should be entitled to relief from the entire settlement if EDC's motion is granted."). GENBAND's attempt to pursue a belated "investigation" into a potential claim against the Settlement would vitiate the fundamental goal of final and conclusive resolution that Nortel and CTDI achieved through the 9019 motion, of which GENBAND was given notice, seeking the Court's approval of the CTDI Settlement Agreement.

22.     These considerations are especially powerful here. Nortel expended substantial resources litigating the CTDI Adversary Proceeding, including the significant costs of discovery. Upon the Court's approval of the Settlement and the termination of the CTDI Adversary Proceeding in October of 2011, Nortel disassembled the infrastructure it had erected for the CTDI litigation and, among other things, it destroyed or returned to CTDI large volumes of documents that CTDI had produced. Further, at the time of the Settlement, the Nortel team had reviewed and digested thousands of CTDI documents and prepared for depositions that were to begin shortly after the date of the mediation. To reopen the Settlement and force Nortel to recreate its knowledge base in order to defend the propriety of the Settlement, and potentially to reactivate the CTDI Adversary Proceeding, would require Nortel to bear substantial and duplicative expense. Nortel and its creditors should not be forced to bear such a large and unjustified expense, solely to enable GENBAND to undertake a fruitless search in the hope of

reopening or undoing the Settlement or of manufacturing claims to extract nuisance value from Nortel.

## II.     GENBAND IS NOT ENTITLED TO RULE 2004 DISCOVERY

23.     Rule 2004 permits only a "party in interest" to seek discovery, Fed. R. Bankr. P. 2004(a), and any such discovery is circumscribed by Rule 2004's purpose: "to discover the nature and extent of the bankruptcy estate." *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009); *see also In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 377 (Bankr. E.D. Pa. 1988) ("The primary purpose of a 2004 examination 'is to permit the trustee to quickly ascertain the extent and location of the estate's assets.'") (quoting *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985)).  Whether to grant a motion for examination under Rule 2004 is left to the discretion of the Bankruptcy Court in light of whether a good cause is shown.  *See In re Subpoena Duces Tecum*, 461 B.R. 823 (Bankr. C.D. Cal. 2011).  "The further a motion for examination strays from [Rule 2004's] purpose, the more carefully it should be scrutinized." *In re Sheetz*, 452 B.R. 746, 749 (Bankr. N.D. Ind. 2011); *see also In re El Toro Exterminator of Fla., Inc.*, No. 05-60015-BKC-LMI, 2006 WL 2882519, at *2 (Bankr. S.D. Fla. July 6, 2006) ("Limitation of discovery using Rule 2004 is especially appropriate when the actual motion for the request is an improper purpose.").  A Rule 2004 examination "may not be used for purposes of abuse or harassment and it cannot stray into matters which are not relevant to the basic inquiry." *Wash. Mut.*, 408 B.R. at 50 (citation omitted) (internal quotation marks omitted).

24.     Here, Rule 2004 discovery is inappropriate for at least three reasons.  First, GENBAND is seeking discovery regarding a claim that is barred by operation of this Court's order approving the CTDI Settlement Agreement.  Where a court order has foreclosed the claim that the movant is attempting to investigate through Rule 2004 discovery, the discovery must be

denied.  *See In re Wilcher*, 56 B.R. 428, 431-32 (Bankr. N.D. Ill. 1985); *see also Cinderella*

*Clothing*, 93 B.R. at 378 (denying Rule 2004 examination where cause of action sought to be

investigated was time-barred by operation of section 1144).  In *Wilcher*, a limited partnership in

which Mr. Wilcher was the sole general partner filed for bankruptcy.  Two years later, Mr.

Wilcher filed for personal bankruptcy.  A trustee was appointed in the partnership's bankruptcy

and sold the real property owned by the bankrupt partnership pursuant to an order of the

bankruptcy court.  Mr. Wilcher claimed that the sales were improper, and appealed the orders of

the bankruptcy court approving the sales.  After Mr. Wilcher's appeal was denied, an examiner

was appointed in Mr. Wilcher's personal bankruptcy case.

       25.      In order to investigate Mr. Wilcher's claims regarding the propriety of the sales

approved by the bankruptcy court, the examiner sought discovery pursuant to Rule 2004 from

the purchaser of one of the properties.  The court denied the requested discovery, holding:

> [I]t is clear that the discovery sought from [the purchaser] could only lead to
> causes of action against [the purchaser] which have been foreclosed.  Since this is
> so, the discovery sought is largely if not entirely irrelevant.  This reinforces the
> conclusions earlier reached, that the proposed discovery far exceeds the scope of
> any legitimate Rule 2004 examination, and that the examiner has failed to show
> good cause for the subpoena.

*Wilcher*, 56 B.R. at 440.  So too here, any potential claim by GENBAND against Nortel's

settlement proceeds is foreclosed by the order of this Court approving the Settlement and

GENBAND's failure to object to the Rule 9019 Settlement motion.  The discovery sought by

GENBAND therefore is not relevant to any viable or valid claim and accordingly would only

impose a burden on NNI that GENBAND could seek to exploit to extract value from NNI's

estate.  GENBAND's request thus exceeds the scope of Rule 2004 and should be denied.

26.     Second, GENBAND's attempt to seek discovery to determine whether it can pursue a claim against Nortel is outside the scope of permissible Rule 2004 discovery.  *See In re Interpictures, Inc.*, 86 B.R. 24, 29 (Bankr. E.D.N.Y. 1988).  In *Interpictures*, the bankruptcy court denied a shareholder's request for Rule 2004 discovery where the shareholder sought examination "not so much to discover the existence of assets **on behalf of the debtor**, but rather for the purpose of discovery in a pending or proposed proceeding."  *Id.* (emphasis supplied).  Furthermore, where there is no evidence that the movant has any potential claim against the bankruptcy estate, courts have denied Rule 2004 discovery, finding that "perhaps as an intended consequence, under the circumstances such as these, the motions to produce documents and supply information under Fed. R. Bankr. P. 2004 tend to harass, intimidate, and/or coerce debtors into (a) summarily seeking unwise or forced settlements, (b) incurring unnecessary and burdensome attorney's fees and other costs, or (c) paying off [movant] to avoid a trial, or complete denial of a discharge."  *In re Strecker*, 251 B.R. 878, 883 (Bankr. D. Colo. 2000).  By asserting a meritless claim against Nortel, GENBAND attempts to manipulate Rule 2004 – which is meant to enable creditors to aid in marshalling assets **into** a debtor's estate – to attempt to develop a potential lawsuit aimed at removing assets **out of** NNI's estate to the detriment of NNI's true creditors.

27.     Finally, Rule 2004 discovery is not appropriate because GENBAND is not a "party in interest" within the meaning of Rule 2004.  In considering whether a party seeking Rule 2004 discovery is a "party in interest," courts act as gate-keepers.  *See, e.g., In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985) (requiring courts to "determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding"); *In re Aronson*, No. Civ. A. 94-2497, 1994 WL 497541, at *7 (E.D. Pa. Sept. 12, 1994) (party in

interest should be interpreted narrowly to avoid a "clash with the need for prompt and efficient resolution of a bankrupt's estate"); *see also In re Lifeco Inv. Grp. Inc.*, 173 B.R. 478, 487 (Bankr. D. Del. 1994) (denying Rule 2004 discovery and finding not all parties "with an economic stake in the outcome of a bankruptcy case ha[ve] standing to participate in that case").

28.    Here, GENBAND is indisputably not a creditor of NNI and thus it has no interest in NNI's estate, and is not entitled to Rule 2004 discovery.[3] *See Aronson*, 1994 WL 497541, at *6 (quoting *In re Kutner*, 3 B.R. 422, 425 (N.D. Tex. 1980)) (a party without a claim lacks a sufficient interest to confer standing for the purposes of Rule 2004 discovery). Instead, GENBAND is simply a party to a sale agreement with Nortel, and it now wishes to pursue a potential claim against Nortel based on that agreement. *See* Motion ¶ 15 ("As the purchaser of the CVAS Business *with a potential claim or right to settlement proceeds* in the possession of Nortel, GENBAND is a party in interest for purposes of Rule 2004." (emphasis supplied)). Rule 2004 is not intended to enable an adverse party to obtain pre-suit discovery in order to develop a potential claim against the debtor. *See Interpictures*, 86 B.R. at 29; *Strecker*, 251 B.R. at 883. Such pre-complaint discovery is not available to sale counterparties outside of bankruptcy, and GENBAND should not be allowed to play fast and loose with the bankruptcy rules to gain such a result here.

## III.    GENBAND HAS NO CLAIM TO PROCEEDS FROM THE CTDI SETTLEMENT

29.    Finally, GENBAND's attempt to force burdensome discovery upon Nortel and its creditors must be rejected because GENBAND simply has no basis for a claim to the proceeds of the Settlement. As discussed, the claims that Nortel asserted against CTDI were for fraud,

---

[3]    Although GENBAND filed a pre-petition claim against NNI on August 3, 2009 (Claim No. 1637), GENBAND subsequently sold its claim to Corre Opportunities Fund, L.P. pursuant to a claim transfer notice filed on July 22, 2011 [D.I. 6013].

breach of contract, breach of the implied duty of good faith and fair dealing, trademark

infringement, trademark dilution, misappropriation of trade secrets and unjust enrichment.

GENBAND purports to have an interest in only one of these many causes of action, for

misappropriation of trade secrets, and has no claimed interest in the many other causes of action

that were asserted and settled.

30.     Even as to the cause of action for trade secret misappropriation, GENBAND has

no basis for a claim.  The Sale Agreement provides that "Transferred Intellectual Property" sold

to GENBAND includes **only** "Intellectual Property (other than Patents or Trademarks) owned by

any of the Sellers that is used **exclusively** in connection with the Business."  Sale Agreement §

1.1 (emphasis supplied).  Thus, any Nortel intellectual property used in more than one business

unit was not included in the "Transferred Intellectual Property" and, as a result, Nortel retained

ownership of the intellectual property.  Because much of Nortel's intellectual property crossed

business lines, such non-exclusive intellectual property was retained by Nortel and licensed to

the purchasers of Nortel's business units.  *See* Sale Agreement, Exhibit H, Intellectual Property

License Agreement (granting non-exclusive license to GENBAND to use certain retained

intellectual property assets of Nortel).  GENBAND has not shown, and could not show, that any

of the technology at issue in the trade secret misappropriation claim would have been exclusive

to the CVAS business and therefore would qualify as "Transferred Intellectual Property" under

the Sale Agreement.  And, again, as noted, the cause of action for trade secret misappropriation

was only one of many claims that Nortel asserted against CTDI and resolved in the settlement.

31.     Even as to intellectual property that might qualify as "Transferred Intellectual

Property," the Sale Agreement expressly excludes from the sale "any income or royalties payable

under any contact, arrangement or agreement other than the Assigned Contracts."  Sale

Agreement § 2.1.1(h). Nortel's contracts with CTDI are not "Assigned Contracts" as defined in the Sale Agreement. Sale Agreement § 1.1. Nortel therefore retained the right to assert any contract-based claims against CTDI in connection with the various agreements between Nortel and CTDI. Nortel's contract claims were a core part of the Adversary Proceeding and resolved through the Settlement, and GENBAND has no possible basis to claim an interest in them.

32.    Still further, if GENBAND actually did have any claims to pursue against CTDI, those claims would not have been released under the Settlement. Under the terms of the Settlement, CTDI paid Nortel a settlement amount, and in exchange certain "Nortel Releasors" (as defined in the CTDI Settlement Agreement) released and discharged CTDI from any liability with respect to claims asserted in the CTDI Adversary Proceeding. GENBAND was not a "Nortel Releasor." *See* CTDI Settlement Agreement, at 8-9. Thus, the Settlement did not purport to release any claims or rights that might belong to GENBAND.

## CONCLUSION

33.     For the reasons set forth above, the Debtors respectfully request that

GENBAND's motion for discovery pursuant to Rule 2004 be denied.[4]


Dated:  June 6, 2012
        Wilmington, Delaware


                              CLEARY GOTTLIEB STEEN & HAMILTON LLP

                              James L. Bromley (admitted *pro hac vice*)
                              Lisa M. Schweitzer (admitted *pro hac vice*)
                              David H. Herrington (admitted *pro hac vice*)
                              One Liberty Plaza
                              New York, New York 10006
                              Telephone:  (212) 225-2000
                              Facsimile:  (212) 225-3999

                                  - and -

                              MORRIS, NICHOLS, ARSHT & TUNNELL LLP


                                _/s/ Ann C. Cordo_____
                              Derek C. Abbott (No. 3376)
                              Eric D. Schwartz (No. 3134)
                              Ann C. Cordo (No. 4817)
                              1201 North Market Street
                              P.O. Box 1347
                              Wilmington, Delaware 19801
                              Telephone:  (302) 658-9200
                              Facsimile: (302) 658-3989

                              *Counsel for the U.S. Debtors*
                              *and Debtors in Possession*

---

[4]      In the event that this Court were to grant GENBAND's motion – which NNI strongly believes it should not do – NNI hereby reserves all of its rights with respect to GENBAND's request, including without limitation, the right to object to the scope of the request and to assert any applicable claim of privilege.