# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NORTEL NETWORKS, INC., *et al.*, | : | Case No. 09-10138 (KG) |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | |
| In re: | : | Chapter 15 |
| | : | |
| NORTEL NETWORKS CORPORATION, *et al.*, FOREIGN APPLICANTS IN FOREIGN PROCEEDINGS. | : | Case No. 09-10164 (KG) Jointly Administered |
| | : | |
| Nortel Networks Inc. and Nortel Networks Limited, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Adv. Pro. No. 10-53065 (KG) |
| | : | Jointly Administered |
| Communications Test Design, Inc., | : | |
| | : | |
| Defendant. | : | **Hearing date: October 19, 2011 at 10:00 a.m. (ET)** |
| | : | **Objections due: October 12, 2011 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
APPROVING (I) SETTLEMENT AGREEMENT AMONG
NORTEL PARTIES AND COMMUNICATIONS TEST DESIGN, INC.
AND (II) RELATED SIDE AGREEMENT AMONG NORTEL PARTIES**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving (i) that certain Stipulation and Settlement Agreement dated as of September 26, 2011 by and among NNI, Nortel Networks Limited ("NNL", and together with NNI, the "Plaintiffs"), Nortel Networks Corporation ("NNC", and together with the Plaintiffs, the "Nortel Parties") and Communications Test Design, Inc. ("CTDI" or "Defendant", and together with the Nortel Parties, the "Parties"),

attached hereto as Exhibit B (the "Settlement Agreement"), and (ii) that certain Side Agreement dated as of September 26, 2011 among the Nortel Parties, attached hereto as Exhibit C (the "Side Agreement"), and granting the Debtors such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[1] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL, and certain of their Canadian affiliates (collectively, the "Canadian

---

[1]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

Debtors" and, together with NNI and its affiliates, including the Debtors, "Nortel")[2] commenced

a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the

Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their

creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the

"Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of

England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA

Debtors")[3] into administration (the "English Proceedings") under the control of individuals from

Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have

commenced and in the future may commence additional creditor protection, insolvency and

dissolution proceedings around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to

various purchasers.  For further information regarding these chapter 11 cases, reference may be

made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## **Relief Requested**

7.      By this Motion, the Debtors seek an order, pursuant to section 105 of the

Bankruptcy Code and Bankruptcy Rule 9019:  (a) approving the Settlement Agreement, (b)

approving the Side Agreement, and (c) granting the Debtors such other and further relief as the

Court deems just and proper.

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A.,
Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel
Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks
B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel
Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks
Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

**Facts Relevant to this Motion**

A.    **The 2010 Action**[4]

8.    On September 21, 2010, NNI filed a complaint against CTDI in this Court asserting claims for misappropriation of trade secrets, fraud, breach of contract, breach of the implied duty of good faith and fair dealing, and unjust enrichment.  NNL also filed a complaint on the same date and asserted the same claims against CTDI and claims for trademark infringement, trademark dilution and false designation of origin (the NNI and NNL complaints together as amended, the "Complaints").  The NNI and NNL actions were consolidated for all purposes and administered as Nortel Networks Inc. and Nortel Networks Limited v. Communications Test Design, Inc., Adversary No. 10-53065 (KG).

9.    Defendant moved to dismiss the Complaints on October 27, 2010 [D.I. 14]; on January 3, 2011, Defendant filed answers and counterclaims (the "Counterclaim" and, together with the Complaints, the "Adversary Proceeding") [D.I. 53, 54] and simultaneously moved to join NNC as a Counterclaim Defendant [D.I. 55].   On January 31, 2011, NNI filed a motion to dismiss the Counterclaims, in which NNL joined in part [D.I. 96].

10.    On March 18, 2011, the Court entered an order granting Defendant's motion to join NNC as a Counterclaim Defendant [D.I. 156], and March 22, 2011, the Court entered an order denying both the Plaintiffs' and Defendant's motions to dismiss [D.I. 159].  Following the entry of these decisions and after determining that it was in their respective best interests to compromise and settle the Adversary Proceeding without further litigation, the Parties agreed to attempt to resolve the action through mediation.

---

[4]    References to docket items in this section are made to Nortel Networks Inc. and Nortel Networks Ltd. v. Communications Test Design, Inc., Adversary No. 10-53065 (KG).

11.     This Court appointed a mediator to aid the Parties, and the Parties participated in a mediation on June 10, 2011.  After comprehensive briefing of the issues and several hours of extensive negotiation and mediation, the Parties reached agreement on a settlement of the Adversary Proceeding, memorialized in the Settlement Agreement.  In connection with its entry into the Settlement Agreement, NNI entered into the Side Agreement with NNL and NNC to provide for the apportionment of the settlement proceeds (the Settlement Agreement and Side Agreement together, the "Settlement Documents").[5]

**B.     The Settlement Documents[6]**

12.     After arms' length, good faith negotiation with CTDI, the Nortel Parties, in consultation with the Committee and the Monitor, entered into the Settlement Agreement to resolve the issues raised through the Adversary Proceeding.  Under the terms of the Settlement Agreement, and as fully and completely described therein, the Plaintiffs have agreed to release certain claims against Defendant as set forth in the Complaints.  In return, the Defendant has agreed to make a settlement payment to the Plaintiffs, as detailed in the Settlement Agreement, and has agreed to release certain claims against the Nortel Parties as set forth in the Counterclaim.[7]

---

[5]     The execution of the Settlement Documents is conditioned on the approval of such documents by this Court.  The Settlement Documents are intended to settle disputes between the parties and, absent approval by this Court, shall not constitute an admission or be otherwise binding on the parties.

[6]     The summary of the Settlement Documents in this Motion is provided solely for the benefit of the Court and parties in interest.  To the extent that the summary and the terms of the Settlement Documents are inconsistent, the terms of the Settlement Documents shall control.

[7]     In addition, separate and apart from the Adversary Proceeding and the settlement of the Adversary proceeding, the parties have also resolved accounts receivable and accounts payable amounts relating to the post-petition period in the ordinary course.  Under this resolution, CTDI has agreed to pay NNI and NNL USD 67,696.69, and NNI and NNL have agreed to pay CTDI USD 386,080.78.

**Basis for Relief**

13.     The relief requested herein is authorized by section 105 of the Bankruptcy Code

and Rule 9019 of the Bankruptcy Rules.  Section 105(a) of the Bankruptcy Code provides that

"[t]he court may issue any order…that is necessary or appropriate to carry out the provisions of

this title."  11 U.S.C. § 105(a).

14.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee

and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R.

Bankr. P. 9019.  Pursuant to this authority, the Third Circuit has emphasized that

"[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393

(3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).  In addition, the

District of Delaware has recognized that the approval of a proposed compromise and settlement

is committed to the sound discretion of the bankruptcy court.  See In re Coram Healthcare Corp.,

315 B.R. 321, 329 (Bankr. D. Del. 2004).

15.     The settlement of time-consuming and burdensome litigation, especially in the

bankruptcy context, is encouraged and "generally favored in bankruptcy."  In re World Health

Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Cent. Transp.

Co., 596 F.2d 1102, 1112 (3d Cir. 1979) ("'administering reorganization proceedings in an

economical and practical manner it will often be wise to arrange the settlement of claims . . . .'")

(quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390

U.S. 414, 424 (1968)).

16.     In determining whether to approve a settlement under Bankruptcy Rule 9019, a

court assesses whether "the compromise is fair, reasonable, and in the best interest of the estate."

In re Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005); see also In re Marvel

Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R.

798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer Ferry, 390 U.S. at 424-25.  The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119, 123 (D.N.J. 2000)).  The court should not substitute its judgment for that of the debtor and need not be convinced that the settlement is the best possible compromise.  See Coram, 315 B.R. at 330; In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

17.     The Third Circuit has enumerated four factors for a bankruptcy court to consider when evaluating a settlement proposal:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Martin, 91 F.3d at 393 (citing Neshaminy, 62 B.R. at 803); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

18.     The Debtors respectfully submit that the Settlement meets the requirements under Bankruptcy Rule 9019.  The Settlement is proposed as a good faith means to resolve the Adversary Proceeding.  While the Debtors are prepared to litigate the Adversary Proceeding and believe that they would prevail in such litigation, litigation carries with it inherent uncertainties and there is no assurance that such litigation would achieve a better result than the one set forth in the Settlement Agreement.  CTDI has vigorously litigated the Adversary Proceeding and has indicated that it believes it would prevail if the Adversary Proceeding should go to trial.  The

Settlement Agreement fairly balances the Debtors' likelihood of success on the merits of the Adversary Proceeding against their interest in avoiding the uncertainty of litigation.

19.     In addition, the disputes underlying the Adversary Proceeding are extremely complex and costly to litigate, and further litigation would result in the estate's expenditure of considerable additional legal fees.  Thus, in the absence of the Settlement Agreement, NNI's estate would be burdened with the time and costs of continuing litigation, which would be disruptive of the estate's efforts to resolve the many matters that are essential to the ultimate resolution of these cases.

20.     Finally, the interests of the creditors militate in favor of approval of the Settlement.  The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Adversary Proceeding and the avoidance of legal expenses that would be incurred if the Adversary Proceeding were to be further litigated.  In light of the foregoing, the Debtors respectfully seek authorization to enter into the Settlement and approval of the Settlement.

21.     Additionally, the Side Agreement benefits NNI by providing for a fair and equitable method for allocating among the parties thereto (i) the costs of litigation, mediation, and settlement preparation; and (ii) the proceeds of the Settlement Agreement.

22.     Accordingly, the Debtors believe that a settlement on the terms contemplated in the Settlement Agreement and Side Agreement is preferable to further litigation against the Defendant.  The proposed settlement reflects a valuable resolution in light of:  (i) the value being given; (ii) the contingencies of success in litigation and the costs and delays attendant thereto; and (iii) the fact that the settlement is well within the range of reasonableness when considering the potential outcomes associated with litigating the claim.  For these reasons, the Debtors assert

that the Settlement Agreement and Side Agreement should be approved, as it is in the best interests of the Debtors, their estates and their creditors.

### Notice

23.     Notice of the Motion has been given via first class mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to the Defendant; (v) the purchasers in the Debtors' post-petition asset sales; and (vi) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

24.     No prior request for the relief sought herein has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this

Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and

(iii) grant such other and further relief as it deems just and proper.

Dated:  September 28, 2011

**BENESCH, FRIEDLANDER, COPLAN**
**  & ARONOFF LLP**

By:   _/s/ Raymond H. Lemisch_
Raymond H. Lemisch, Esq. (No. 4204)
Jennifer R. Hoover, Esquire (No. 5111)
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801
Telephone:  (302) 442-7010
Facsimile: (302) 442-7012
rlemisch@beneschlaw.com
jhoover@beneschlaw.com

- and -

James L. Bromley (admitted _pro hac vice_)
Lisa M. Schweitzer (admitted _pro hac vice_)
David H. Herrington (admitted _pro hac vice_)
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

_Counsel for the Debtors and Debtors in Possession_

10

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NORTEL NETWORKS, INC., *et al.*, | : | Case No. 09-10138 (KG) |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | |
| In re: | : | Chapter 15 |
| | : | |
| NORTEL NETWORKS | : | Case No. 09-10164 (KG) |
| CORPORATION, *et al.*, FOREIGN | : | Jointly Administered |
| APPLICANTS IN FOREIGN | : | |
| PROCEEDINGS. | : | |
| | : | |
| Nortel Networks Inc. and Nortel | : | |
| Networks Limited, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Adv. Pro. No. 10-53065 (KG) |
| | : | Jointly Administered |
| Communications Test Design, Inc., | : | |
| | : | |
| Defendant. | : | **Hearing date: October 19, 2011 at 10:00 a.m. (ET)** |
| | : | **Objections due: October 12, 2011 at 4:00 p.m. (ET)** |

<u>**NOTICE OF MOTION**</u>

TO:   (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group;
(iv) counsel to the Defendant; (v) the purchasers in the Debtors' post-petition asset sales;
and (vi) the general service list established in these chapter 11 cases.

Nortel Networks Inc. and certain of its affiliates, as debtors and debtors in possession

(collectively, the "Debtors"), by and through their undersigned counsel, have filed the *Motion for*

*Entry of an Order Approving (I) Settlement Agreement Among Nortel Parties and*

*Communications Test Design, Inc. and (II) Related Side Agreement Among Nortel Parties* (the

"Motion").

You are required to file a response, if any, to the attached Motion on or before **October 12, 2011 at 4:00 pm. (ET)**.

At the same time, you must serve a copy of the response upon the Debtors' attorneys:

| | |
|---|---|
| Raymond H. Lemisch, Esquire<br>Jennifer R. Hoover, Esquire<br>BENESCH, FRIEDLANDER,<br>COPLAN & ARONOFF LLP<br>222 Delaware Avenue, Suite 801<br>Wilmington, DE  19801 | James L. Bromley, Esquire<br>Lisa M. Schweitzer, Esquire<br>David H. Herrington, Esquire<br>CLEARY GOTTLIEB STEEN &<br>HAMILTON LLP<br>One Liberty Plaza<br>New York, New York 10006 |

A HEARING ON THIS MATTER WILL BE HELD ON **OCTOBER 19, 2011 AT 10:00 A.M. (ET)** BEFORE THE HONORABLE KEVIN GROSS AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, 6TH FLOOR, COURTROOM NO. 3, WILMINGTON, DELAWARE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER NOTICE OR HEARING.

Date:  September 28, 2011

**BENESCH, FRIEDLANDER, COPLAN**
**& ARONOFF, LLP**

By:     _/s/ Raymond H. Lemisch_
Raymond H. Lemisch, Esquire (No. 4204)
Jennifer R. Hoover, Esquire (No. 5111)
222 Delaware Ave., Suite 801
Wilmington, DE 19801
302-442-7010  telephone
302-442-7012  facsimile
rlemisch@beneschlaw.com
jhoover@beneschlaw.com

- and -

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
David H. Herrington (admitted *pro hac vice*)
**CLEARY GOTTLIEB STEEN
  & HAMILTON LLP**
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

*Counsel for the Debtors and Debtors in Possession*

- 3 -

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------X
                                                        :
                                                        :       Chapter 11
                                                        :
*In re*                                                 :
                                                        :       Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                      :
                                                        :       Jointly Administered
                            Debtors.                    :
                                                        :
                                                        :       **RE: D.I. _____**
                                                        :
---------------------------------------------------------X


**ORDER APPROVING (I) SETTLEMENT AGREEMENT AMONG
NORTEL PARTIES AND COMMUNICATIONS TEST DESIGN, INC.
AND (II) RELATED SIDE AGREEMENT AMONG NORTEL PARTIES**

Upon the motion dated September 28, 2011 (the "Motion"),[2] of Nortel Networks Inc. and

its affiliated debtors, as debtors and debtors in possession in the above-captioned cases (the

"Debtors"), for entry of an order, as more fully described in the Motion, (i) that certain

Stipulation and Settlement Agreement dated as of September 26, 2011 by and among NNI,

Nortel Networks Limited ("NNL" , and together with NNI, the "Plaintiffs"), Nortel Networks

Limited ("NNC", and together with the Plaintiffs, the "Nortel Parties") and Communications

Test Design, Inc. ("CTDI" or "Defendant", and together with the Nortel Parties, the "Parties"),

and (ii) that certain Side Agreement dated as of September 26, 2011 among the Nortel Parties

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

(the "Side Agreement"), and granting the Debtors such other and further relief as the Court

deems just and proper; and adequate notice of the Motion having been given as set forth in the

Motion; and it appearing that no other or further notice is necessary; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§157

and 1334; and the Court having determined that consideration of the Motion is a core proceeding

pursuant to 28 U.S.C. §§ 157(b)(2); and the Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief requested in the Motion, and that

such relief is in the best interests of the Debtors, their estates, their creditors and the parties in

interest; and upon record in these proceedings; and after due deliberation;

IT IS HEREBY ORDERED THAT:

1. The Motion is **GRANTED**.

2. The Settlement Agreement and Side Agreement are hereby approved.

3. The Court finds that the Settlement Agreement and Side Agreement are in the

best interests of NNI, its estate, its creditors and the other parties in interest in these proceedings.

4. NNI is authorized, but not directed, to take any and all actions that may be

reasonably necessary or appropriate to perform its obligations arising under and to enforce the

terms of the Settlement Agreement and Side Agreement.

5. Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to

the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its

entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or

realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and

without further delay, take any action and perform any act authorized under this Order.

      6.       The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated: _____, 2011
        Wilmington, Delaware

                          _____

                          THE HONORABLE KEVIN GROSS
                          CHIEF UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | :    Chapter 11 |
| NORTEL NETWORKS INC., *et al.*, | :    Case No. 09-10138 (KG) |
|     Debtors. | :    Jointly Administered |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

| | |
|---|---|
| In re: | : |
| | :    Chapter 15 |
| NORTEL NETWORKS CORPORATION, *et al.*, | :    Case No. 09-10164 (KG) |
|     Foreign Applicants in Foreign Proceedings. | :    Jointly Administered |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

| | |
|---|---|
| NORTEL NETWORKS INC. and NORTEL NETWORKS LIMITED, | : |
|     Plaintiffs, | : |
| v. | :    Adversary Proceeding No. 10-53065 (KG) |
| COMMUNICATIONS TEST DESIGN, INC., | : |
|     Defendant, | :    (Jointly Administered) |
| and | : |
| COMMUNICATIONS TEST DESIGN, INC., | : |
|     Counterclaim Plaintiff, | : |
| v. | : |
| NORTEL NETWORKS INC., NORTEL NETWORKS LIMITED, and NORTEL NETWORKS CORPORATION, | : |
|     Counterclaim Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**STIPULATION AND SETTLEMENT AGREEMENT BY AND AMONG NORTEL
NETWORKS INC., NORTEL NETWORKS CORPORATION,
NORTEL NETWORKS LIMITED, AND COMMUNICATIONS TEST DESIGN, INC.**

1

This stipulation and settlement agreement (this "Stipulation") is entered into among Nortel Networks Inc. ("NNI"), Nortel Networks Limited ("NNL", and together with NNI, the "Plaintiffs"), Nortel Networks Corporation ("NNC", and together with NNI and NNL, the "Nortel Parties"), and Communications Test Design, Inc. ("CTDI" or "Defendant" and, together with Plaintiffs and NNC, the "Parties").  The Parties hereby stipulate and agree as follows:

## RECITALS

WHEREAS, on January 14, 2009 (the "Petition Date"), NNI and certain of its affiliates (collectively, the "U.S. Debtors"[1]) filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court");

WHEREAS, also on the Petition Date, NNC, NNL and certain of their Canadian affiliates (together, "Nortel Canada") filed an application with the Ontario Superior Court of Justice (the "Canadian Court", and together with the U.S. Court, the "Courts") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors;

WHEREAS, also on the Petition Date, Ernst & Young Inc., as the court-appointed monitor (the "Monitor") and authorized foreign representative for Nortel Canada commenced chapter 15 cases ancillary to the proceedings in the Canadian Court and filed with the U.S. Court petitions for recognition of foreign proceedings under chapter 15 of the Bankruptcy Code;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

WHEREAS, the Monitor's petitions for recognition were granted on February 27, 2009, and the chapter 15 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b);

WHEREAS, CTDI, Nortel Canada, and/or NNI entered into various agreements prior to the Petition Date, including without limitation the agreements set forth on Exhibit A hereto (the "Prior License Agreements");

WHEREAS, CTDI has a claim against NNL in the Canadian proceeding, Claim Reference No. 1541, as further described in that certain Notice of Disallowance with respect to Claim Reference No. 1541 dated December 15, 2010 and sent by the Monitor to Defendant, and CTDI's Notice of Dispute dated December 28, 2010 (the "Canadian Claim");

WHEREAS, on March 11, 2010, Defendant proffered, and Plaintiffs subsequently accepted without prejudice, and held in escrow while reserving in full all claims and rights, a payment in contemplation of partial settlement in the amount of ███████ (the "March 2010 Payment");

WHEREAS, on September 21, 2010, NNI instituted an adversary proceeding, Adv. Proc. No. 10-53065 (KG), by filing a complaint against Defendant CTDI (D.I. 1), alleging claims of breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, and unjust enrichment, and NNL instituted an adversary proceeding, Adv. Proc. No. 10-53066 (KG), by filing a complaint against Defendant CTDI (D.I. 1), which alleged claims of trade secret misappropriation, trademark infringement, breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, and unjust enrichment;

WHEREAS, on November 12, 2010, NNI filed its Amended Complaint (D.I. 20), alleging claims of breach of contract, fraud, breach of the implied covenant of good faith and fair

dealing, and unjust enrichment, and NNL filed its Amended Complaint (D.I. 25) (together with NNI's Amended Complaint, the "Complaints"), alleging claims of trade secret misappropriation, trademark infringement, breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, and unjust enrichment (the "Claims");

WHEREAS, on November 15, 2010, Defendant CTDI filed a motion to dismiss the Complaints (D.I. 22);

WHEREAS, on December 10, 2010, the adversary proceedings were consolidated for all purposes under Adv. Proc. No. 10-53065 (KG) (the "Adversary Proceeding") (D.I. 40);

WHEREAS, on January 3, 2011, Defendant filed Answers to the Complaints and Counterclaims (D.I. 53 and D.I. 54) in the Adversary Proceeding, denying certain allegations and asserting various defenses and asserting counterclaims against NNI, NNL and NNC (the "Counterclaims") and simultaneously moved to join NNC as a Counterclaim Defendant (D.I. 55);

WHEREAS, on January 18, 2011, NNL filed its opposition to CTDI's motion to join NNC as a Counterclaim Defendant (D.I. 65);

WHEREAS, on January 30, 2011, NNL filed its Answer to the Counterclaims, denying certain allegations and asserting various defenses (D.I. 88);

WHEREAS, on January 31, 2011, NNI and NNL moved to dismiss the Counterclaims (D.I. 96);

WHEREAS, on March 18, 2011, the U.S. Court granted CTDI's motion to join NNC as a Counterclaim Defendant (D.I. 156);

WHEREAS, on March 22, 2011, the U.S. Court issued a decision (D.I. 159) and Order (D.I. 160) denying Defendant CTDI's motion to dismiss the Complaints, denying the motions of

NNI and NNL to dismiss the Counterclaims, and holding that any recovery by CTDI pursuant to the Counterclaims would be limited to setoff against any recovery the Plaintiffs or NNC may obtain against CTDI;

WHEREAS, on March 25, 2011, CTDI served a summons and notice of pretrial conference on NNC (D.I. 165);

WHEREAS, on April 5, 2011, NNI filed its Answer to CTDI's Counterclaims, denying certain allegations and asserting various defenses (D.I. 168);

WHEREAS, on April 25, 2011, NNC filed a motion to dismiss, or in the alternative for summary judgment on CTDI's Counterclaims (D.I. 186);

WHEREAS, on May 20, 2011, the U.S. Court issued an order relating to NNC's motion to dismiss, or in the alternative for summary judgment, setting a schedule for expedited discovery (D.I. 212);

WHEREAS, the Plaintiffs and Defendant determined that it was in their respective best interests to attempt to compromise and settle the issues without further litigation, and, in furtherance thereof, the Court appointed as mediator the Hon. Raymond T. Lyons (D.I. 202);

WHEREAS, since the Complaints, Answers and Counterclaims were filed, including in connection with the mediation that took place on June 10, 2011, the Parties have engaged in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by further litigation of the Claims and Counterclaims, have agreed to settle the Adversary Proceeding on the terms set forth herein; and

WHEREAS, for the purposes of facilitating the allocation of the Settlement Amount (as defined below) among them, the Plaintiffs have agreed to a division as set forth fully and completely in a separate side-agreement (the "Side Agreement");

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is stipulated and agreed by and between the Parties, as follows:

1.     <u>Effectiveness</u>. This Stipulation shall become effective upon the entry of an order, in form and substance reasonably acceptable to the Parties, of the U.S. Court approving this Stipulation and the settlement reflected herein pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Approval Order</u>," and the date upon which the Approval Order becomes final and not subject to any pending or further appeal, the "<u>Approval Date</u>"). All Parties to this Stipulation shall cooperate and participate in good faith in connection with any notice and/or hearing or other proceeding required by the U.S. Court related to the Rule 9019 motion and/or the entry of the Approval Order, and the Nortel Parties will provide actual notice of this Stipulation, the Rule 9019 notice and proceedings to approve it to all third parties, as set forth in Exhibit B herein, who have acquired assets in these cases pursuant to Section 363 of the Bankruptcy Code. The Parties irrevocably consent to the entry of final judgment by the U.S. Court pursuant to 28 U.S.C. § 157(c)(2) upon this Stipulation and all matters addressed herein. Upon the Approval Date, this Stipulation shall be effective and binding, by its terms, upon the Parties, and their respective successors and assigns.

2.     <u>Resolution of the Claims</u>. Within five (5) business days after the Approval Date, Defendant shall remit to Plaintiffs a sum of ███████████████████████ (the "<u>Settlement Amount</u>"), less the March 2010 Payment, as follows:

   a.   <u>The Settlement Balance</u>. The difference between the Settlement Amount and the March 2010 Payment is ████████ (the "<u>Settlement Balance</u>").

b. <u>Remittance by CTDI</u>.  Defendant shall tender the Settlement Balance, which, together with the March 2010 Payment, shall be in full and final settlement and satisfaction of the Claims, as provided herein, by sending a wire transfer in the amount of the Settlement Balance to Nortel Networks Inc., ███████

████████████████████████████████████████

███████████████████████ (the "<u>Settlement Balance Payment</u>").

The date on which NNI receives the Settlement Balance Payment shall be referred to as the "<u>Settlement Date</u>."  From and after the Settlement Date, the Settlement Balance Payment shall, together with the March 2010 Payment, constitute a full and final satisfaction of all claims asserted in the Adversary Proceeding, subject to the reservations contained in Section 10 below.

c. <u>Remittance by NNI to NNL</u>.  Within three (3) business days of the Settlement Date, NNI shall remit a portion of the Settlement Amount to NNL in accordance with the Side Agreement between them.

3.  <u>Releases</u>.  The Parties agree to the following releases:

a. <u>Release of Plaintiffs</u>.  Effective upon the Settlement Date, Defendant, on behalf of itself and, to the extent permitted by law, on behalf of its directors, officers, employees, agents, attorneys and advisors, and all persons and entities controlled by or under common control with Defendant, and each of their respective, successors and assigns (collectively, the "<u>CTDI Releasors</u>"), hereby releases and forever discharges each of NNI, NNL and NNC, their past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, attorneys and advisors,

and each of their predecessors, successors and assigns, (collectively, the

"Nortel Releasees"), from any and all claims, rights, defenses, demands,

liabilities, obligations, damages, actions, suits, causes of action, and setoffs,

whether known or unknown, suspected or unsuspected, accrued or unaccrued,

matured or unmatured, past or present, fixed or contingent, liquidated or

unliquidated, that the CTDI Releasors now have, had, may have had, or

hereafter may have against any of the Nortel Releasees relating in any way to

the Counterclaims, Claims, the Adversary Proceeding, any transaction

described or referred to in the Complaints or Counterclaims in the Adversary

Proceeding, and any claim or cause of action which was asserted or could

have been asserted in the Adversary Proceeding, including, without limitation,

any claim which relates to or arises under the Prior License Agreements;

provided, however, that the foregoing release shall not apply to (i) any claims

arising under this Stipulation; and (ii) the Canadian Claim, which is hereby

fixed and liquidated in amount at $827,000 (Canadian).  For the avoidance of

doubt, CTDI hereby withdraws its Notice of Dispute, dated December 28,

2010, and abandons any further dispute to the Notice of Disallowance.  The

CTDI Releasors further covenant and agree not to assert or permit any CTDI

affiliate that they control to assert against any Nortel Releasee any claim or

cause of action which is released pursuant to this Stipulation.

b.  Release of Defendant.  Effective upon the Settlement Date, each of NNI, NNL

and NNC, on behalf of themselves and, to the extent permitted by law, on

behalf of their respective directors, officers, employees, agents, attorneys and

advisors, the other U.S. Debtors and the other Canadian Debtors, as set forth in Exhibit C herein, and each of their respective successors and assigns (collectively, the "Nortel Releasors"), hereby releases and forever discharges Defendant, its past and present parents, subsidiaries, and affiliates, as set forth in Exibit D herein, as well as Defendant's general partners, limited partners, shareholders, directors, officers, employees, agents, attorneys and advisors, and each of their predecessors, successors and assigns, (collectively, the "Defendant Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that each of the Nortel Releasors now have, had, may have had, or hereafter may have against any of the Defendant Releasees relating in any way to the Claims, the Counterclaims, the Adversary Proceeding, any transaction described or referred to in the Complaints or Counterclaims in the Adversary Proceeding, and any claim or cause of action which was asserted or could have been asserted in the Adversary Proceeding, including, without limitation, any claim which relates to or arises under the Prior License Agreements; provided, however, that the foregoing release shall not apply to any claims arising under this Stipulation.  The Nortel Releasors further covenant and agree not to assert or permit any Nortel affiliate that they control to assert against any Defendant Releasee any claim or cause of action which is released pursuant to this Stipulation.

4.    <u>Dismissal of the Adversary Proceeding</u>.  Promptly following the Settlement Date, Plaintiffs will file with the U.S. Court a notice of dismissal of the Adversary Proceeding with prejudice and Defendant will file with the U.S. Court a notice of dismissal of the Counterclaims with prejudice.

5.    <u>Applicable Law</u>.  This Stipulation shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code, and, where not inconsistent, the laws of the State of Delaware, without regard to its conflict of laws rules and jurisprudence.

6.    <u>Entire Agreement</u>.  This Stipulation constitutes the entire agreement among the Parties to the Stipulation and supersedes all prior or contemporaneous written or oral communications, understandings and agreements with respect to the subject matter hereof, and this Stipulation cannot be amended except by an authorized agreement in writing between the Parties.

7.    <u>Costs and Expenses</u>.  Each of the Parties agrees to bear its own costs, expenses and attorneys' fees incurred in connection with the Adversary Proceeding, this Stipulation and the negotiations related to and preparation of this Stipulation, not to seek from each other reimbursement of any such costs, expenses or attorneys' fees; <u>provided</u>, however, that nothing in this Stipulation shall modify or supersede any agreement among NNI, NNL and NNC concerning payment for any costs, expenses or attorneys' fees.

8.    <u>No Admissions</u>.  This Stipulation and any draft thereof shall not constitute an admission of liability or lack thereof by any of the Parties with respect to any Claim or defense asserted in the Adversary Proceeding or a concession of any Claim or legal issue or argument raised in the proceeding and shall not be admissible as evidence in any court of law or other legal

proceeding for any purpose, other than for the purpose of enforcing the Stipulation or enforcing

or relying upon a representation and warranty set forth in Section 9 below.

      9.    <u>Representations and Warranties</u>.

      a.  <u>Defendant Representations</u>:  Defendant represents and warrants the following:

      i.  Defendant has all necessary power and authority to enter into and perform under this Stipulation;

      ii.  Defendant is solvent and shall be solvent following payment to the Nortel Parties of the Settlement Amount, and payment of the Settlement Amount, including the Settlement Balance, shall not cause Defendant to become insolvent;

      iii.  Defendant is fully capable of paying the Settlement Amount, including the Settlement Balance, to the Nortel Parties in accordance with this Stipulation, and is and will be, following such payment, able to pay its debts generally as they come due;

      iv.  Defendant is not now in default under any loan, bond, indenture, lease or other financial obligation aggregating more than $3 million (a "<u>Material Financial Obligation</u>") and entry into this Stipulation or performance of the obligations hereunder, including, without limitation, the payment of the Settlement Amount, including the Settlement Balance, shall not cause or create a default under any Material Financial Obligation;

      v.  Neither Defendant, nor any of Defendant's officers or directors, are "insiders" in respect of any Nortel Party as the term "insider" is

defined in Section 101 of the Bankruptcy Code, or as otherwise used in the Bankruptcy Code;

vi. Defendant is entering into the Stipulation in good faith and without the intention of delaying, hindering or defrauding any present or future creditor of Defendant;

vii. In settling the Adversary Proceeding, Defendant is receiving at least reasonably equivalent value for the Settlement Amount;

viii. As of the date hereof, the Defendant is not owed any money or property by the Nortel Parties, under the Prior License Agreements or otherwise, other than the claims which are compromised and released in this Stipulation and the Canadian Claim;

ix. As of the date hereof, Defendant does not have any knowledge of any claim or assertion by any third party that Defendant owes money or property to such third party on account of the Counterclaims that are being settled and released in this Stipulation;

x. Entry into and performance under this Stipulation will not violate any law, rule, order, regulation, contract or other legal obligation of Defendant;

xi. Defendant has fully informed itself as to the terms, contents, and provisions of this Stipulation and is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth herein;

xii.  Defendant has had the benefit of the advice of counsel chosen and employed by it concerning this Stipulation;

xiii.  No promise or representation of any kind with respect to the Claims, Counterclaims or Adversary Proceeding has been made to Defendant or its representatives by any of the Nortel Parties or their representatives, except as expressly set forth in this Stipulation; and

xiv.  Defendant is the sole owner and holder of the claims it is releasing under this Stipulation, and none of those claims have been assigned, pledged, encumbered, or otherwise transferred, in whole or in part, to any other person or entity.

b.  Nortel Party Representations:

i.  Each Nortel Party represents and warrants that it has all necessary power and authority to enter into and perform under this Stipulation, subject only to entry of the Approval Order as to NNI.  NNL and NNC represent and warrant that neither entry of the Approval Order nor any other similar court or other approval of this Stipulation is necessary in order for them to enter into and perform under this Stipulation or to make this representation.

ii.  Each Nortel Party represents and warrants that entry into and performance under this Stipulation following entry of the Approval Order will not violate any law, rule, order, regulation, contract or other legal obligation of such Nortel Party.

iii. Each Nortel Party represents and warrants that, as of the date hereof, neither it nor any other Nortel Releasor is owed any money or property by Defendant, under the Prior License Agreements or otherwise, other than the claims which are compromised and released in this Stipulation.

iv. Each Nortel Party represents and warrants that, as of the date hereof, neither it nor any Nortel Releasor has any knowledge of any claim or assertion by any third party that Defendant owes money or property to such third party on account of the Claims that are being settled and released in this Stipulation.

v. Each Nortel Party fully has informed itself as to the terms, contents, and provisions of this Stipulation and is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth herein.

vi. Each Nortel Party has had the benefit of the advice of counsel chosen and employed by it concerning this Stipulation.

vii. In settling the Adversary Proceeding, each Nortel Party is receiving at least reasonably equivalent value for the consideration provided hereunder;

viii. No promise or representation of any kind with respect to the Claims, Counterclaims or Adversary Proceeding has been made to any of the Nortel Parties or their representatives by Defendant or its representatives, except as expressly set forth in this Stipulation.

ix.  The Nortel Parties are the sole owners and holders of the Claims they are releasing under this Stipulation, and none of those Claims have been assigned, pledged, encumbered, or otherwise transferred, in whole or in part, to any other person or entity.

c.  Survival of Representations.  The foregoing representations and warranties are a material inducement for each Party's entry into this Stipulation and shall survive the execution of this Stipulation and the closing of the transactions hereunder indefinitely.  In no event shall any Party be subject to any punitive or consequential damages for breach of this Section 9, and the Parties agree that in any action for such breach, damages shall be limited to compensatory damages.

10.    Bankruptcy.  In the event that all or any portion of this Stipulation or any payment made hereunder is set aside or voided as a preference, fraudulent conveyance or under any similar provision of the Bankruptcy Code (11 U.S.C. § 101, et seq.), including, without limitation, under Sections 544, 545, 547, 548 549 or 553 of the Bankruptcy Code, or any other bankruptcy or insolvency or creditor rights law or in any similar claim or proceeding under the laws of any jurisdiction:  (i) the Stipulation shall be, and shall be deemed to be, null and void, (ii) the Parties' rights, Claims and Counterclaims as they existed immediately  prior to the execution of this Stipulation shall be restored, and (iii) nothing herein shall constitute an admission, limitation or waiver with respect to Plaintiffs' claims against the Defendant or Defendant's claims against the Nortel Parties.

11.    Statute of Limitations Tolled.  In the event that all or any portion of this Stipulation or any payment made hereunder is set aside or voided as set forth in Section 10

above, each Party agrees that all applicable statutes of limitations, statutes of repose, notice

periods, periods of prescription, contractual periods of limitation, or any other analogous

limitations periods, time-based limitations or defenses, whether at law, in equity, under statute,

contract or otherwise (including, but not limited to the doctrines of laches or waiver, and the time

limitation set forth in sections 546 and 549 of the Bankruptcy Code), relating to the timeliness of

any claims, which might be asserted as a time bar and/or limitation to or in any action to enforce

a claim, or to the assertion of any defense, or right of setoff or recoupment in respect of any

counterclaim, under the laws of any jurisdiction, is tolled as of and from and including

September 21, 2010 for any Claim or Counterclaims asserted in the Adversary Proceeding as of

and from and including the Approval Date for any other claim, until the date that is six years

from the date the Settlement Balance is received (the "Expiration Date"). No Party shall have

either greater or fewer rights to assert any claim or any counterclaim, defense, or right of setoff

or recoupment thereto than as existed immediately prior to the execution of this Stipulation.

Nothing in this Agreement shall operate to revive or extend the time for filing or asserting any

claim, counterclaim, defense, or right of setoff or recoupment that is now time barred or barred

by any applicable statute or period of limitations, statute of repose, or other time-based limitation

or defense as of the Approval Date.

12.    Construction. This Stipulation shall be construed without regard to any

presumption or other rule requiring construction against the party causing the document to be

drafted. Each Party warrants that it has been represented and advised by counsel in connection

with the negotiation, preparation, and execution of this Stipulation and all matters covered by it.

13.    Jurisdiction. In light of the fact that the Adversary Proceeding is pending in the

U.S. Court, for any action or proceeding arising out of or related to this Stipulation of settlement

of the Adversary Proceeding, each Party hereby (a) irrevocably submits to and accepts the exclusive jurisdiction of (i) the U.S. Court, if such action or proceeding is brought prior to the entry of a final decree closing the U.S. Debtors' chapter 11 cases pending in the U.S. Court, and (ii) the U.S. District Court for the District of Delaware in New Castle County, state of Delaware, if such action or proceeding is brought after entry of a final decree closing such bankruptcy cases, and (b) waives any defense of forum non conveniens or other objection to venue in such action or proceeding.  Nothing in this provision shall, or be deemed to, determine, ratify, or adopt, or have any impact whatsoever on any issue or subject not addressed in this Stipulation, including without limitation any issue of jurisdiction relating to NNL, NNC, NNI or the allocation or distribution of the Settlement Amount (which is governed by the Side Agreement) or the allocation or distribution of any other funds or proceeds among any Nortel entities.

14.     Jury Waiver.  Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect of any litigation directly or indirectly arising out of, under or in connection with this Stipulation or any transaction contemplated hereby or thereby.  Each Party (i) certifies that no representative, agent or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties hereto have been induced to enter into this Stipulation, by, among other things, the mutual waivers and certifications in this paragraph.

15.     Signing Authority.  The Parties represent and warrant to each other that the signatories to this Stipulation on their respective behalf have full power and authority to enter into it.

16.    <u>Manner of Execution</u>.  This Stipulation may be executed in counterparts, each of which shall constitute an original, and such counterparts shall be construed together as one instrument.  Facsimile or pdf signatures shall be deemed original signatures.

*[Remainder of this page left intentionally blank]*

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed

this Stipulation.

Dated: September 26, 2011

Communications Test Design, Inc.

By _____
Name: Gerald J. Parsons
Title: Chairman & CEO

IN WITNESS WHEREOF, each of the parties hereto has caused this Stipulation to be executed on the day and year first above written.

NORTEL NETWORKS LIMITED                    NORTEL NETWORKS CORPORATION

By:_____         By:_____
Name:                                      Name:
Title:                                     Title:


By:_____         By:_____
Name:                                      Name:
Title:                                     Title:


NORTEL NETWORKS INC.

By:_____
Name:   John Ray
Title:    Principal Officer

IN WITNESS WHEREOF, each of the parties hereto has caused this Stipulation to be executed on the day and year first above written.

NORTEL NETWORKS LIMITED

By:_____
Name:  CLARKE GLASPELL
Title:  CONTROLLER

By:_____
Name:  J Doolittle
Title:  CFO

NORTEL NETWORKS CORPORATION

By:_____
Name:  CLARKE GLASPELL
Title:  CONTROLLER

By:_____
Name:  J Doolittle
Title:  CFO

NORTEL NETWORKS INC.

By:_____
Name:  John Ray
Title:   Principal Officer

## ACKNOWLEDGMENT OF MONITOR

Ernst & Young Inc., as Monitor of Nortel Canada under the *Companies' Creditors Arrangement Act* approves of NNC and NNL entering into the Stipulation and performing their obligations hereunder.

**Ernst & Young Inc., in its capacity as Monitor of Nortel Networks Corporation** *et al.* **not in its personal capacity**

Per:

Name: _Tom Ayres_

Title: _Senior President_

EXHIBIT A

PRIOR LICENSE AGREEMENTS[2]

| |
|---|
| Technical Information Agreement dated December 6, 1994 between CTDI and Northern Telecom Inc. |
| Asset Purchase Agreement among Nortel Networks Corporation, CTDI and Communications Repair Logistics Corporation dated July 22, 1999 |
| Addendum to Asset Purchase Agreement dated September 1, 1999 |
| License Agreement between Nortel Networks Corporation and CTDI dated September 1, 1999 |
| Master Contract Repair Services Agreement between Nortel Networks Corporation and CTDI dated September 1, 1999 |
| Transition Services Agreement between Nortel Networks Corporation and CTDI dated September 1, 1999 |
| Alliance Agreement between Nortel Networks Limited and CTDI dated February 22, 2006 |
| Technical Information License Agreement between Nortel Networks Limited and CTDI effective February 22, 2006 |

---

[2]    All agreements listed above includes by reference each and every exhibit, schedule, modification, or amendment to such agreement whether or not identified.  The list set forth above is intended to be comprehensive but not exclusive, and to the extent that any other agreements exist, the omission of such agreement(s) from the list set forth above is inadvertent and shall have no impact on the existence, performance, status, or enforcement of such other agreements.

EXHIBIT B

THIRD PARTIES TO BE NOTICED

| |
|---|
| Avaya Inc. |
| Baker Botts LLP |
| Blade Network Technologies, Inc. |
| Blake, Cassels & Graydon LLP |
| Cherry Petersen Landry Albert LLP |
| Ciena Corporation |
| GENBAND Inc. |
| Hitachi Communication Technologies America, Inc. |
| Hitachi, Ltd. Telecommunications & Network Systems Division |
| Kapsch CarrierCom AG |
| Kapsch CarrierCom France SAS |
| Kramer Levin Naftalis & Frankel LLP |
| Latham & Watkins |
| McCarthy Tetrault |
| Microsoft Corporation |
| Morrison & Foerster LLP |
| Paul, Weiss, Rifkind, Wharton & Garrison LLP |
| Pillar Commercial, LLC |
| Radware Ltd. |
| Rockstar Bidco, LP |
| Ropes & Gray LLP |
| Stikeman Elliott LLP |
| Telefonaktiebolaget LM Ericsson |
| Weil, Gotshal & Manges LLP |

EXHIBIT C

NORTEL DEBTOR ENTITIES

| US Debtors | US Tax ID |
|---|---|
| Architel Systems (U.S.) Corporation | 3826 |
| CoreTek, Inc. | 5722 |
| Nortel Altsystems Inc. | 9769 |
| Nortel Altsystems International inc. | 5596 |
| Nortel Networks (CALA) Inc. | 4226 |
| Nortel Networks Applications Management Solutions Inc. | 2846 |
| Nortel Networks Cable Solutions Inc. | 567 |
| Nortel Networks Capital Corporation | 9620 |
| Nortel Networks HPOCS Inc. | 3546 |
| Nortel Networks Inc. | 6332 |
| Nortel Networks International Inc. | 358 |
| Nortel Networks Optical Components Inc. | 36456 |
| Northern Telecom International Inc. | 6286 |
| Qtera Corporation | 251 |
| Sonoma Systems | 2073 |
| Xros. Inc. | 4181 |

| Canadian Debtors |
|---|
| Nortel Networks Corporation |
| Nortel Networks Global Corporation |
| Nortel Networks International Corporation |
| Nortel Networks Ltd. |

EXHIBIT D

CTDI ENTITIES TO BE RELEASED

| |
|---|
| Communications Repair Logistics Company |
| Communications Test Design Singapore, Ptd. Ltd. |
| Communications Test Design, Inc. |
| Communications Test Design, India Pvt. Ltd. |
| CTDI Asia Pacific, Inc. |
| CTDI Canada, Inc. |
| CTDI Do Brasil, Ltda. |
| CTDI GmbH |
| CTDI Kft (Hungary) |
| CTDI Korea, Ltd. |
| CTDI Ltd. (UK) |
| CTDI Mexico, S.A. de C.V. |
| CTDI S.L. (Spain) |
| CTDI s.r.l. (Italy) |
| CTDI Telecommunications Equipment (Beijing) Co. Ltd. |
| Link America, Inc., |
| Phoenix Wireless, Inc. |
| Trillion Communications Corp. |

**EXHIBIT C**

## SIDE AGREEMENT REGARDING
## CTDI ADVERSARY PROCEEDING SETTLEMENT

This SIDE AGREEMENT REGARDING CTDI ADVERSARY PROCEEDING SETTLEMENT (the "CTDI Side Agreement") is dated as of September 26, 2011, among (i) Nortel Networks Inc., a corporation organized under the laws of Delaware ("NNI"); (ii) Nortel Networks Limited, a corporation organized under the laws of Canada ("NNL"); and (iii) Nortel Networks Corporation, a corporation organized under the laws of Canada ("NNC," together with NNL, the "Canadian Entities," and together with NNI, the "Nortel Parties"); regarding the terms of settlement of an adversary proceeding pending between NNI, the Canadian Entities, and Communications Test Design, Inc. ("CTDI") in the U.S. Bankruptcy Court for the District of Delaware (the "Court").

### W I T N E S S E T H:

WHEREAS, on January 14, 2009 (the "Petition Date"), NNI and certain of its affiliates (the "U.S. Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Court;

WHEREAS, also on the Petition Date, NNC, NNL and certain of their Canadian affiliates filed an application with the Ontario Superior Court of Justice (the "Canadian Court" and together with the Court, the "Courts") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors;

WHEREAS, an Official Committee of Unsecured Creditors (the "Committee") was appointed in respect of the U.S. Debtors, and Ernst & Young Inc., was appointed by the Canadian Court as Monitor of the Canadian Entities (the "Monitor") and certain of their Canadian affiliates;

WHEREAS, on September 21, 2010, NNI instituted an adversary proceeding, Adv. Proc. No. 10-53065 (KG), by filing a complaint against Defendant CTDI (D.I. 1), and NNL instituted an adversary proceeding, Adv. Proc. No. 10-53066 (KG), by filing a complaint against Defendant CTDI (D.I. 1), which alleged claims of trade secret misappropriation, trademark infringement, breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, and unjust enrichment;

WHEREAS, on December 10, 2010, the adversary proceedings were consolidated into a single adversary proceeding, Adv. Proc. No. 10-53065 (KG) (the "Adversary Proceeding") (D.I. 40);

WHEREAS, on January 3, 2011, Defendant CTDI filed Answers to the Complaints and Counterclaims (D.I. 53 and D.I. 54) in the Adversary Proceeding, denying certain allegations and asserting various defenses and asserting counterclaims against NNI, NNL and NNC (the "Counterclaims") and simultaneously moved to join NNC as a Counterclaim Defendant (D.I. 55);

WHEREAS, on March 18, 2011, the Court granted CTDI's motion to join NNC as a Counterclaim Defendant (D.I. 156);

WHEREAS, the Nortel Parties and CTDI determined that it was in their respective best interests to attempt to compromise and settle the issues without further litigation and, in furtherance thereof, the Court appointed as mediator the Hon. Raymond T. Lyons (D.I. 202);

WHEREAS, since the Complaints, Answers and Counterclaims were filed, including in connection with the mediation that took place on June 10, 2011, CTDI, the Nortel Parties, the Monitor, and the Committee engaged in arm's-length negotiations and, to avoid the costs, risks, and burdens that further litigation of the Claims and Counterclaims would entail, CTDI and the Nortel Parties agreed to a full and final settlement of any and all Claims by any of the Nortel Parties against CTDI, and Counterclaims by CTDI against any of the Nortel Parties, that were raised in the Adversary Proceeding or of any claims or counterclaims that arise out of or relate to the facts and circumstances alleged in the Adversary Proceeding, by entering into a stipulation and settlement agreement (the "<u>Stipulation</u>"),[1] which remains subject to approval by the Court;

and

WHEREAS, for the purposes of facilitating the allocation of the Settlement Amount among the Nortel Parties, the Nortel Parties have agreed to the division of the Settlement Amount on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is stipulated and agreed by and between the Nortel Parties, as follows:

1.    Allocation of Settlement Amount; Reimbursement of Expenses.

a.    Subject to subsections 1.b., 1.c., and 1.d. below, the Nortel Parties agree that the Settlement Amount shall be distributed among the Nortel Parties, *first*, to pay and reimburse each of the Nortel Parties for their respective, reasonable legal fees and expenses (including, without limitation, the cost of document review and processing) incurred in connection with the litigation, mediation and resolution of the parties' disputes resolved by the Stipulation through the date of the entry of an order by the Court approving the Stipulation (each a "<u>CTDI Related Expense</u>"), and, *second*, any remaining Settlement Amount (the "<u>Remaining Settlement Amount</u>") shall be allocated and shared ███████████████ payable to NNI and ███████████████████ payable to NNL.

b.    Each of the Nortel Parties agrees to the final, total amounts of their respective CTDI Related Expense as follows:

(i)    The Canadian Entities' CTDI Related Expense totals ████████████

(ii)    NNI's CTDI Related Expense totals ███████████

The Settlement Amount ███████████████, *minus* the total CTDI Related Expense ████████████████, yields a Remaining Settlement Amount of ████████████.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Stipulation.

c.      Within three (3) business days after the Settlement Date, NNI shall remit to NNL, on behalf of the Canadian Entities, by wire transfer of immediately available funds (pursuant to directions provided by the Canadian entities) the amount of ▮▮▮▮▮ which is the sum of: (i) the Canadian Entities' CTDI Related Expense ▮▮▮▮▮ , *plus* (ii) USD ▮▮▮▮▮, which is the product of (A) the Remaining Settlement Amount ▮▮▮▮▮ *multiplied by* (B) ▮▮▮▮▮▮▮▮▮▮  Such payment shall be made by NNI to NNL in full without any set-off, ▮▮▮▮▮ deduction, withholding or counterclaim howsoever arising, and NNL acknowledges that NNI shall retain the remaining portion of the Settlement Amount without any claim by NNL to such remaining portion howsoever arising.

d.      Upon receipt by NNL of the payment contemplated in subsection 1.c. hereof, the Canadian Entities shall release any and all claim to, and NNI shall retain as a portion of its share of the Settlement Amount, the payment in the amount of ▮▮▮▮▮ that CTDI proffered in contemplation of partial settlement on March 11, 2010 (the "<u>March 2010 Payment</u>").

2.      <u>Cooperation</u>.  The Nortel Parties agree to support the allocation of the Settlement Amount and oppose, and to cooperate in opposing, any third party objection to the allocation of the Settlement Amount pursuant to the terms of this CTDI Side Agreement.  Each Nortel Party shall cooperate in the defense of, and use commercially reasonable efforts to defend against, such third party objections to the allocation of the Settlement Amount pursuant to this CTDI Side Agreement.

3.      <u>Jurisdiction</u>.  The Nortel Parties agree that the Courts (in a joint hearing conducted pursuant to the Amended Cross-Border Court-to-Court Protocol) shall determine any disputes among them in connection with this CTDI Side Agreement.

4.      <u>Conditions to Effectiveness</u>.  This CTDI Side Agreement shall only become effective and binding on the Nortel Parties if the Court enters an order approving the Stipulation (the "Court Approval") by no later than December 15, 2011 (the "<u>Termination Date</u>"), which Termination Date may be extended upon consent of the Canadian Entities and NNI, provided that NNI shall provide prior written notice of any such extension to the Committee.  If Court Approval does not occur on or before the Termination Date, (a) this CTDI Side Agreement, without further notice or action by any of the Nortel Parties, shall be deemed to be null and void, (b) the Nortel Parties' rights as they existed immediately prior to the execution of this CTDI Side Agreement shall be restored, and (c) nothing herein shall constitute an admission, limitation or waiver with respect to the Nortel Parties' rights or claims to any ultimate recovery from CTDI, including, without limitation, the Nortel Parties' rights or claims to recovery of any legal fees and expenses, provided that section 6 hereof shall survive indefinitely.

5.      <u>Bankruptcy</u>.  If, after the implementation of the transactions contemplated in the Stipulation, any attempt is made to set aside or void as a preference, fraudulent conveyance or under any similar provision of the Bankruptcy Code (11 U.S.C. § 101, et seq.) or any other bankruptcy or insolvency or creditor rights law or in any similar claim or proceeding under the laws of any jurisdiction, any portion of the transactions effected pursuant to the Stipulation or any transfer or payment made by CTDI thereunder (an "<u>Avoidance Action</u>"), each Nortel Party shall cooperate in the defense of, and use commercially reasonable efforts to defend against, such Avoidance Action.

6.    <u>Without Prejudice to Allocation</u>.  The allocation of the Settlement Amount agreed to herein shall not, and shall not be deemed to, determine, ratify, adopt or have any impact whatsoever on the allocation of proceeds from any sale transaction among the various Nortel entities.  The Nortel Parties agree to oppose and to cooperate in opposing the use of the Settlement Amount allocation agreed to herein by any entity before any dispute resolver(s) appointed pursuant to the Interim Sales Protocol (as defined in the Interim Funding and Settlement Agreement entered into by, among others, the Nortel Parties, on June 9, 2009), any court, or such other judicial or quasijudicial body or similar authority that may determine the allocation or distribution of such sale proceeds.

7.    <u>Governing Law</u>.  The Nortel Parties agree that this Agreement shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

8.    <u>Jury Trial Waived</u>.  Each Nortel Party hereby waives, to the fullest extent permitted by law, any right it may have to a trial by jury in respect of any litigation directly or indirectly arising out of, under or in connection with this agreement or any transaction or matter contemplated hereby.  Each party (i) certifies that no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other parties hereto have been induced to enter this agreement by, among other things, mutual waivers and certifications in this section.

9.    <u>Signing Authority</u>.  The Nortel Parties represent and warrant to each other that the signatories to the CTDI Side Agreement on their respective behalf have full power and authority to enter into it, provided, however, (i) that the power and authority of NNI is expressly subject to approval by the Court; and (ii) The Canadian Entities represent that they have the corporate authority to perform their obligations under this CTDI Side Agreement.

10.    <u>Manner of Execution</u>.  The CTDI Side Agreement may be executed in counterparts, each of which shall constitute an original, and such counterparts shall be construed together as one instrument.  Facsimile or pdf signatures shall be deemed original signatures.

IN WITNESS WHEREOF, the Nortel Parties have duly executed this CTDI Side Agreement as of the date first written above.

*[Remainder of Page Intentionally Left Blank]*

4

Dated: September ___27___, 2011

**Nortel Networks Corporation**

By:_____

    Name: _J. Doolittle_

    Title: _CFo_

By:_____

    Name: Anna Ventresca

    Title: General counsel – corporate and corporate Secretary

**Nortel Networks Limited**

By:_____

    Name: J. Doolittle

    Title: CFo

By:_____

    Name: Anna Ventresca

    Title: General counsel – corporate and Corporate Secretary

**Nortel Networks Inc.**

By:_____

    Name:

    Title:

5

Dated: Sept. 26, 2011

**Nortel Networks Corporation**

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

**Nortel Networks Limited**

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

**Nortel Networks Inc.**

By:_____
    Name: John Ray
    Title: Principal Officer

5

## ACKNOWLEDGMENT OF MONITOR

Ernst & Young Inc., as Monitor of the Canadian Entities under the *Companies' Creditors Arrangement Act* approves the CTDI Side Agreement.

**Ernst & Young Inc., in its capacity as Monitor of Nortel Networks Corporation *et al*. not in its personal capacity**

Per:

Name:  Tom Ayres
Title:    Senior Vice President

6