## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------X
                                                      :
                                                      :       Chapter 11
                                                      :
In re                                                 :
                                                      :       Case No. 09-10138 (KG)
Nortel Networks Inc., et al., [1]                     :
                                                      :       Jointly Administered
                         Debtors.                     :
                                                      :       Hearing Date: July 11, 2012, at 10:00am
                                                      :       (ET)
                                                      :       Objections Due: June 26, 2012, at 4:00pm
                                                      :       (ET)
                                                      :
------------------------------------------------------X
```

## DEBTORS' OBJECTION TO THE PROOFS OF CLAIM FILED
## BY THE NORTEL NETWORKS UK PENSION TRUST LIMITED
## (AS TRUSTEE OF THE NORTEL NETWORKS UK PENSION PLAN)
## AND THE BOARD OF THE PENSION PROTECTION FUND, AND MOTION
## FOR AN ORDER REQUIRING A MORE DEFINITE STATEMENT OF CLAIM

Nortel Networks Inc. and its affiliated debtors, as respective debtors and debtors

in possession (collectively, the "Debtors" or the "U.S. Debtors") hereby object (the "Objection")

to the proofs of claim filed against the Debtors by Nortel Networks UK Pension Trust Limited

(as trustee of the Nortel Networks UK Pension Plan) (the "U.K. Pension Trustee" or the

"Trustee") and The Board of the Pension Protection Fund (the "PPF" and together with the U.K.

Pension Trustee, "Claimants"), purportedly pursuant to the U.K. Pensions Act 1995 and 2004

(Acts of the U.K. Parliament) and associated regulations (collectively, the "U.K. Pensions Act"),

currently listed on the Debtors' claim register as claim numbers 5573, 5574, 5575, 5576, 5577,

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. ("NNI") (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. ("NN CALA") (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

5578, 5579, 5580, 5581, 5582, 5583, 5584, 5585, 5586, 5587, and 6979 (together, the "U.K.

Pension Claim," "Proofs of Claim," or the "Claims").[2]  The Debtors also move this Court (the

"Motion") pursuant to Sections 105 and 502 of Title 11 of the United States Code (the

"Bankruptcy Code") and Rules 3001, 3007, 7012 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for entry of an order directing the Claimants to file a more

definite statement of their Claims, attaching supporting documentation, by July 31, 2012; or the

Claims will be disallowed and expunged with prejudice.  In support of this Objection and

Motion, the Debtors respectfully represent as follows:

### PRELIMINARY STATEMENT

1.      By this Objection and Motion, the Debtors seek entry of an order requiring

Claimants to file a more definite statement of their claims by July 31, 2012 or, failing that, have

their Proofs of Claim and any and all prepetition claims they assert disallowed and expunged

with prejudice.  The Proofs of Claim as filed are facially invalid because they contain insufficient

facts to support the legal theories alleged.  Indeed, the Proofs of Claim provide no information.

They simply superficially and conclusorily assert that the Debtors "ha[ve] a contingent liability

and indebtedness to the Trustee and the PPF in accordance with their respective interests arising

pursuant to the Pensions Act 2004 and the Pensions Act 1995 (Acts of the UK Parliament) and

all applicable UK Regulations."  NNI Claim, Schedule A; NN CALA Claim, Schedule A.  The

---

[2]      See Declaration of Kerrin T. Klein, dated June 11, 2012 (the "Klein Decl."), submitted contemporaneously
herewith.  Exhibit 1 to the Klein Decl. is the Proof of Claim filed by Claimants against NNI (Claim No. 5573)
(without appendix) (the "NNI Claim").  Exhibit 2 to the Klein Decl. is the letter of the Pensions Regulator dated
September 25, 2009, which was attached to the NNI Claim as Item 4 ("NNI Claim Ex. 4").  Exhibit 3 to the Klein
Decl. is the Proof of Claim filed by Claimants against NN CALA (Claim No. 6979) (without appendix) (the "NN
CALA Claim").  Exhibit 4 to the Klein Decl. is the letter of the Pensions Regulator dated January 25, 2010, which
was attached to the NN CALA Claim as Item 4 ("NN CALA Claim Ex. 4").  The Proofs of Claim filed against other
Debtors are each in substantially the same form as Exhibits 1 and 3.  All Claims are available for download in full
from the claims register at http://chapter11.epiqsystems.com/nortel.

only purported factual support for that contention is the bald statement that the Nortel Networks

UK Limited ("NNUK") pension plan was "insufficiently resourced" and that the U.K. Pension

Regulator ("TPR") has concluded that grounds exist to issue Warning Notices and seek a

Financial Support Direction ("FSD") against one or more of the members of the Nortel Group,

whose members included two of the Debtors.  (See NNI Claim ¶¶ 2.4, 2.6; NN CALA Claim,

¶¶ 2.4, 2.6.)  This is entirely insufficient.[3]

        2.        Rather than set forth facts in the Proofs of Claim, Claimants purport to

rely entirely on TPR's self-serving conclusions in the uncontested U.K. Administrative

Proceedings (defined below).  None of the U.S. Debtors participated in those Proceedings.  Such

reliance runs afoul of this Court's February 26, 2010 Order enforcing the automatic stay against

Claimants with respect to the U.S. Debtors.  That Order states that the U.K. Administrative

Proceedings will have "no force and effect" in this Court.  (Order Enforcing The Automatic Stay

Against Certain Claimants With Respect To The U.K. Pension Proceedings, dated Feb. 26, 2010,

at 5 [D.I. 2576] (the "Order"), a copy of which is attached as Exhibit 5 to the Klein Decl.)[4]  The

Order has been affirmed by both the District Court and the Court of Appeals for the Third

Circuit.  Accordingly, Claimants must first demonstrate to this Court that the U.K. Pensions Act

is applicable.  If it is, Claimants must next demonstrate to this Court that the following

requirements for the issuance of an FSD and a subsequent CN (defined below) under the U.K.

Pensions Act are met:  (i) NNUK was "insufficiently resourced" on the relevant date; (ii) NNI

and NN CALA were "connected with or associates of" NNUK; and (iii) issuance of an FSD to

---

[3]      Although Warning Notices (defined below) were not even issued with respect to the other Debtors against which Proofs of Claim were filed, the Trustee and PPF have not withdrawn those Proofs of Claim.

[4]      See also Transcript of the February 26, 2010 Stay Motion Hearing (as defined herein) at 182:12-191:14 (Court's Ruling) [D.I. 2646] ("Tr."), an excerpt of which is attached hereto as Exhibit 6 of the Klein Decl.; Memorandum Opinion dated March 9, 2010 [D.I. 2664] (the "Opinion"), a copy of which is attached as Exhibit 7 to the Klein Decl.

NNI and NN CALA is "reasonable." Finally, if this Court were to find that the U.K. Pensions Act is applicable and that the requirements under the Act are met, the Court must then determine the amount of the claim that Claimants are entitled to assert under the Act against the Debtors. The Debtors reserve the right to assert all objections and defenses to the merits of the Claims, regardless of whether set forth herein.

3.    However, Claimants' Proofs of Claim contain no allegations that even address the requirements for an FSD. For example, the Proofs of Claim set forth no facts regarding the reasonableness of imposing an FSD on the Debtors to provide financial support to reduce or eliminate the alleged underfunding of the NNUK Pension Plan (as defined below), even though "reasonableness" is an essential element for liability under the U.K. Pensions Act. Additionally, the Proofs of Claim are silent as to why any of the U.S. Debtors in particular (as opposed to other, non-US Nortel affiliates) should be responsible for any of the alleged NNUK pension deficit. Having failed to assert facts to support these necessary allegations, the Proofs of Claim are legally insufficient.

4.    Although close to three years have passed since the filing of the Proofs of Claim, Claimants have made no effort to clarify the basis for their purported Claims. Their failure is even more glaring in light of the fact that they did file amended claims in the Canadian proceedings on or about November 29, 2010, setting forth the purported legal and factual bases for their claims, and attaching voluminous exhibits. There can be no dispute that Claimants are in a position to similarly amend their Proofs of Claim in this Court and it is time that they do so.

5.    Accordingly, the Debtors respectfully move this Court for an order directing Claimants to file a more definite statement of their Claims by July 31, 2012, and requiring them to attach to the amended claims all supporting documentation on which they

intend to rely.  If Claimants do not file such claims by that date, the Proofs of Claim should be disallowed and expunged with prejudice.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue over the Debtors' Chapter 11 cases and this Objection and Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are Sections 105 and 502 of the Bankruptcy Code and Rules 3001, 3007, 7012, and 9014 of the Bankruptcy Rules.

## BACKGROUND

**A.      Introduction**

8.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA,[5] filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

9.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

---

[5]      NN CALA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' Chapter 11 cases for procedural purposes [D.I. 1098].

10.     On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[6] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[7] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

11.     Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these Chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and to the information contained at http://dm.epiq11.com/nortel.

---

[6]     The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[7]     The EMEA Debtors include the following entities:  NNUK, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

B.    **The U.K. Pensions Act**

12.    Under the U.K. Pensions Act, TPR has, in relation to a pension plan, a stated pecuniary purpose:  to protect the benefits of private plan members and to reduce the risk that compensation would be required from the PPF.  (Declaration of Richard Hitchcock dated February 18, 2010 ¶ 41 [D.I. 2445] ("Hitchcock Decl."), a copy of which is attached as Exhibit 8 to the Klein Decl.)[8]  In furtherance of its pecuniary purpose, TPR may conduct an administrative process resulting in an FSD under Section 43 of the U.K. Pensions Act.

13.    An FSD may issue only where the employer funding the pension plan (the "Employer") – here, NNUK – is either (a) a service company, or (b) "insufficiently resourced."[9] (Opinion at 6; Hitchcock Decl. ¶¶ 37, 50 & Schedule 2.)

14.    An FSD, which is preceded by a warning notice, is a direction, issued to certain persons or entities following a decision of the Determinations Panel, to provide, or arrange for the provision of financial support for a pension plan.  An FSD may be issued only against a person or entity who is either the employer, or is "connected with or an associate of the employer" (the "Non-Employers").  (Hitchcock Decl. ¶ 37.3.)  The FSD specifies a certain time period during which the financial support is to be put in place, and directs that this support is to continue for as long as the pension plan is in existence.

---

[8]    The Hitchcock Declaration previously was submitted to this Court in connection with the Debtors' Motion to Enforce the Automatic Stay Against the Claimants, dated February 18, 2010.  See D.I. 2441.

[9]    Under the U.K. Pensions Act, in deciding whether the Employer is  "insufficiently resourced," which is the claim with respect to NNUK here, the test is:  (1) whether at the "relevant time" the value of the Employer was less than 50% of the estimated Section 75 debt of the pension plan (this debt is defined in Section 75 of the U.K. Pensions Act and is calculated by reference to the cost of securing all plan benefits under annuities purchased from an insurance company); and (2) whether at the relevant time there existed one or more connected and/or associated companies to the Employer whose individual or combined value was greater than the difference between the Employer's value and 50% of the estimated Section 75 debt.  (See Hitchcock Decl. ¶ 37.5 & Schedule 2 (Pensions Act § 44(3).)

7

15.    Further, an FSD may be issued only if it is reasonable to do so. (Opinion at 7; Hitchcock Decl. ¶¶ 37.3-37.4, 50 & Schedule 2.) In deciding whether it is reasonable to issue an FSD against a Non-Employer, the U.K. Pensions Act identifies the following factors as relevant: (a) the relationship between the Non-Employer and the Employer, including whether the Non-Employer controlled the Employer; (b) the value of any benefits received directly or indirectly by the Non-Employer from the Employer; (c) any connection or involvement of the Non-Employer with the pension plan; and (d) the financial circumstances of the Non-Employer. (Opinion at 7; Hitchcock Decl. ¶¶ 37.4, 50.)[10]

### C.    FSD Warning Notice Addressed To NNI And NN CALA

16.    Notwithstanding the automatic stay, by letters dated January 13, 2010 and addressed to NNI and NN CALA (along with certain non-U.S. Nortel entities), TPR purported to issue a warning notice (the "Warning Notice") initiating administrative proceedings in the U.K. (the "U.K. Administrative Proceedings") against NNI and NN CALA regarding the alleged shortfall in the funding of the pension plan maintained by NNUK (the "NNUK Pension Plan").

---

[10]    If an FSD is not complied with, a Contribution Notice (a "CN") may be issued, where reasonable, pursuant to specified procedures. (Opinion at 7; Hitchcock Decl. ¶ 43.) A CN states that the persons to whom it is issued are under a liability to pay to the trustee of the pension plan the sum specified therein. The CN may be for all or part of the amount by which the pension plan is under-funded (such underfunded amount is called the "Section 75 debt," as discussed supra at n.9). This amount is treated as a debt due to the trustee of the pension plan. (Hitchcock Decl. ¶ 46.) While TPR can exercise such powers as the trustee of the pension plan to recover the debt under the CN, during the assessment period (which the NNUK Pension Plan has been in since NNUK entered administration), only the PPF may exercise the trustee's rights and powers. (Opinion at 7-8; Hitchcock Decl. ¶¶ 5.5, 46 & Schedule 2.) In determining whether to issue a CN, the U.K. Pensions Act provides that factors to be considered include the reasonableness of imposing liability on the person to pay the sum specified in the notice. In making this reasonableness determination, the following factors are relevant: (a) whether the Non-Employer has taken reasonable steps to secure compliance with the FSD; (b) the relationship the Non-Employer has or had with the Employer, including whether the Non-Employer has or had control of the Employer; (c) the value of any benefits received directly or indirectly by the Non-Employer from the Employer; (d) the relationship that the Non-Employer has or had with the parties to any arrangements put in place in accordance with the FSD (including whether the Non-Employer has or had control of those parties); (e) any connection or involvement which the Non-Employer has or had with the Employer's pension plan; and (f) the financial circumstances of the Non-Employer. (Hitchcock Decl. ¶ 44 & Schedule 2.)

17.     Section 82 of the U.K. Pensions Act prohibits disclosure of "restricted information," which includes information obtained by TPR that is not publicly available from other sources, and imposes criminal sanctions for a violation of the statute. (Hitchcock Decl. ¶ 35.) Consequently, the Debtors have been unable to share the Warning Notice with the Committee or the Court.

**D.     The U.S. Bar Dates And The Proofs Of Claim**

18.     On August 4, 2009, this Court entered an order (the "General Bar Date Order") fixing September 30, 2009 at 4:00 p.m. (Eastern Time) as the general bar date (the "General Bar Date") for filing proofs of claim or interests against the Debtors (other than NN CALA) [D.I. 1280]. On December 3, 2009, this Court entered an order fixing January 25, 2010 at 4:00 p.m. (Eastern Time) as the general bar date (the "CALA Bar Date") for filing proofs of claim or interests against NN CALA (the "CALA Bar Date Order") [D.I. 2059].

19.     On the General Bar Date, the Claimants filed the Proofs of Claim against the Debtors, except NN CALA. On the CALA Bar Date, the Claimants jointly filed a nearly identical claim against NN CALA.

20.     The U.K. Pension Claim is based on a "contingent liability and indebtedness," supra ¶ 1, purportedly arising under U.K. law from FSD proceedings that were to be commenced by TPR. The Claim is based solely on allegations that (i) the NNUK Pension Plan is under-funded by an estimated amount alternatively stated to be £2.1 billion or $3.1 billion; and (ii) TPR may seek to require certain of the Debtors, as well as certain non-U.S. Nortel entities, to provide financial support for the NNUK Pension Plan. (Opinion at 5; see also NNI Claim ¶¶ 2.8-2.9; NN CALA Claim ¶¶ 2.8-2.9.) According to the U.K. Pension Claim, by the time it was filed, TPR had concluded that grounds existed to issue certain warning notices

and to seek an FSD against certain members of the Nortel group worldwide, including the U.S.

Debtors, as companies allegedly "connected with or associates of" NNUK. TPR had further

concluded that NNUK was "insufficiently resourced" on June 30, 2008, a date selected by TPR

for strategic reasons in an attempt to bolster its position. (See Opinion at 5; see also NNI Claim

¶¶ 2.4-2.5; NN CALA Claim ¶¶ 2.4-2.5.)

21. In addition, the U.K. Pension Claim asserts that if an FSD is issued against

any of the U.S. Nortel entities, such entity could then be required under the U.K. Pensions Act to

procure financial support for the NNUK Pension Plan, either alone or with other members of the

Nortel group. (Opinion at 6; see also NNI Claim ¶ 2.9; NN CALA Claim ¶ 2.9.) The U.K.

Pension Claim also asserts that if a U.S. Nortel entity receives an FSD, but fails to put or keep in

place the financial support for the NNUK Pension Plan directed by TPR, then TPR could also

exercise its power to issue a CN, imposing on that U.S. Nortel entity a liability to pay a specific

amount to the Trustee, which could be all or some portion of the deficit in the NNUK Pension

Plan. (See Opinion at 6; see also NNI Claim ¶ 2.10; NN CALA Claim ¶ 2.10.)

22. The Proofs of Claim purport to assert that the Debtors have "a contingent

liability and indebtedness to the Trustee and the PPF in accordance with their respective interests

arising pursuant to the Pensions Act 2004 and the Pensions Act 1995 (Acts of the UK

Parliament) and all applicable UK Regulations"; provide that the TPR "has concluded that

grounds exist to issue Warning Notices and seek a Financial Support Direction against one or

more of the members of the Nortel Group, whose members expressly include the Debtor" or that

a Warning Notice had been issued; and further purport to assert that the NNUK Pension Plan was

"insufficiently resourced." (See, e.g., NNI Claim, Schedule A, ¶¶ 2.4, 2.6; NN CALA Claim,

Schedule A, ¶¶ 2.4, 2.6.)

23.     However, Claimants offer *wholly insufficient* legal theories or factual bases for their Claims, failing to include even cursory facts showing why it would somehow be "reasonable" to direct the Debtors--none of which is either the parent company or a subsidiary of NNUK--to provide financing for the claimed NNUK Pension Plan funding shortfall.  In fact, the only time the Debtors are even mentioned in the Claims, including the exhibits,[11] is when they are identified as the "Debtor[s]," and when the Debtors are included among the Nortel entities identified as targets or potential targets of a TPR Warning Notice.  (See, e.g., NNI Claim, Schedule A; NNI Claim Ex. 4; NN CALA Claim, Schedule A; NN CALA Claim Ex. 4.)

24.     In the last section of each Proof of Claim, the Claimants reserved their right "to amend . . . or supplement [the Claim] . . . in any respect."  (See, e.g., NNI Claim; NN CALA Claim.)  Yet, close to three years later, the Claimants have not amended or supplemented the Proofs of Claim to provide any factual bases for, or change in magnitude of, their Claims.

### E.     Claimants' Claims Against The Canadian Debtors

25.     On September 30, 2009, Claimants similarly filed claims lacking in support with the Canadian Court.  On or about November 29, 2010, the Claimants filed amended proofs of claim against the Canadian Debtors with the Canadian Court, along with thousands of pages of evidence allegedly supporting their claims.   The Committee has been unable to view these exhibits fully since they were not publicly filed and contain various copies of the Warning Notice and its supporting documentation, which cannot be disclosed under penalty of U.K. criminal law.

---

[11]     The bulk of these exhibits are made up of the Trust and Deeds of the NNUK Pension Plan and hundreds of pages of print-outs of the relevant U.K. statutes.

**F.      The Debtors' Motion To Enforce The Stay Against The Trustees And PPF**

26.      On February 18, 2010, the Debtors filed a motion (the "Stay Motion") pursuant to Sections 362(a)(1) and (a)(6) of the Bankruptcy Code to enforce the automatic stay against Claimants with respect to their participation in the U.K. Administrative Proceedings against NNI and NN CALA [D.I. 2441].  The Committee filed a Joinder thereto [D.I. 2501].  On February 24, 2010, the Trustee and PPF filed an objection to the Stay Motion [D.I. 2503].

27.      After a hearing on February 26, 2010, the Court granted the Debtors' Stay Motion, issuing an Order enforcing the stay and deeming the U.K. Administrative Proceedings "void and of no force or effect" in this Court with respect to the Debtors.  (Order at 5.)  On March 9, 2010, the Court issued the Opinion.  Both at the Stay Motion Hearing and in the Opinion, the Court stressed that "[w]hat we have here are creditors who have filed claims in this Court and who are seeking to litigate those claims clear of the Court's jurisdiction and the automatic stay."  (Opinion at 15; see Tr. 182:12-186:4 (Court's Ruling)).  The Court further stated that "[c]laimants can obtain complete monetary relief in this Court at the appropriate time." (Opinion at 14; see Tr. 183:13-14.)  The Order has since been affirmed by both the District Court (on March 29, 2011) and the United States Court of Appeals for the Third Circuit (on December 29, 2011).[12]

28.      Claimants cannot liquidate their Claims through the U.K. Administrative Proceedings, as the current Proofs of Claim purport to require.  Claimants must prove their Claims *de novo* as part of the claims allowance process in this Court.  Indeed, as the Third Circuit acknowledged, by filing Proofs of Claim and subjecting themselves to the jurisdiction of

---

[12]      Claimants filed a motion for rehearing *en banc* by the Third Circuit, which was summarily denied on January 24, 2012.  On April 20, 2012, Claimants filed a Petition for a Writ of Certiorari with the United States Supreme Court.  The Petition is pending.

this Court, Claimants are not only subject to the automatic stay, and the U.K. Administrative

Proceedings "deemed void and of no force or effect" in this Court with respect to the Debtors,

but to the extent Claimants seek to rely on any aspect of the U.K. Administrative Proceedings for

any purpose in this Court against the Debtors, they do so at their own peril given that, as noted

by the Third Circuit, "none of the parties before the Bankruptcy Court participated in the U.K.

proceedings with respect to the U.S. parties." In re Nortel Networks, Inc., 669 F.3d 128, 143 (3d

Cir. 2011).[13]  Nor do the Debtors intend to participate in the U.K. Administrative Proceedings

going forward.  In light of the prior Court ruling, as affirmed by the District Court and the Third

Circuit, the Claims must be determined in this Court, and no determination can be made unless

Claimants amend their Proofs of Claim to provide the necessary facts, law and documentation to

support the Claims they purport to assert.[14]

## RELIEF REQUESTED

29.     By filing this Objection and Motion, the Debtors contest the Proofs of

Claim and seek the entry of an order:  (1) requiring Claimants to provide a more definite

statement of their claims pursuant to Rule 7012; (2) requiring Claimants to attach all supporting

documentation to their amended claims; (3) setting July 31, 2012 as the deadline for Claimants to

---

[13]     As non-participants in the U.K. Administrative Proceedings, the Debtors also have not received copies of the submissions to the Determinations Panel.

[14]     On February 17, 2010, the Monitor also filed an application with the Canadian Court seeking to stay the U.K. Administrative Proceedings with respect to the Canadian Debtors on the grounds that the proceedings violated the stay imposed by the Canadian Court's initial order, dated January 14, 2009 (the "Initial Order") (an order akin to U.S. "first-day" orders), which, inter alia, stayed all proceedings against the Canadian Debtors.  The Canadian Court conducted a hearing on that application on February 25, 2010.  One day following the hearing, the Canadian Court granted the Monitor's application (Opinion at 9), and on March 18, 2010, the Canadian Court issued a written opinion setting forth the reasons for its decision to grant the Monitor's application.  (See In re Nortel Networks Corp., [2010] ONSC 1304 (Can.) (Mar. 18, 2010) ¶¶ 42-43 (the "Canadian Opinion"), attached as Exhibit 9 to the Klein Decl.)  The Canadian Court held, inter alia, that the purported exercise of rights by TPR in the U.K. Administrative Proceedings amounted to breaches of the stay in the Initial Order, and that "for purposes of the CCAA proceedings, the actions taken by The Pensions Regulator, are null and void in Canada and are to be given no force or effect in these CCAA proceedings."  (Canadian Opinion ¶ 44.)  That decision was affirmed by the Canadian Court of Appeal and review was denied by the Canadian Supreme Court.

13

file any amended claims; and (4) directing that if Claimants do not file such claims by July 31,

2012, the Proofs of Claim shall be disallowed and expunged with prejudice.

## BASIS FOR RELIEF REQUESTED

**I.      THE COURT SHOULD APPLY RULE 12(E) TO THE PROOFS OF CLAIM AND REQUIRE A MORE DEFINITE STATEMENT OF CLAIM, INCLUDING BY ATTACHING ALL SUPPORTING DOCUMENTATION**

### A.      Bankruptcy Rule 7012 Should Be Applied To The Proofs Of Claim

30.      Under Bankruptcy Rule 9014(c), a bankruptcy court may exercise its

discretion "at any stage in a particular matter [to] direct that one . . . of the other rules in Part VII

[] apply." 900 Capital Servs., Inc. v. Cloud (In re Cloud), 214 F.3d 1350 (Table), 2000 WL

634637, at *2 (5th Cir. May 4, 2000) (internal quotation marks omitted).  In the exercise of this

discretion, courts consider whether applying a particular rule in Part VII would, *inter alia*,

promote efficient resolution of a dispute, see In re Rimsat, Ltd., 223 B.R. 345, 346 (Bankr. N.D.

Ind. 1998) (noting that "it appears that the efficient identification of the issues and facts in

dispute, as well as a prompt disposition on the merits, will be greatly enhanced if the

requirements of Rule 12(e) are applied to [the instant] proof of claim"); avoid undue delay in

administration of the estate, see In re Ephedra Prods. Liab. Litig., 329 B.R. 1, 5 (S.D.N.Y. 2005);

and provide for similarity between bankruptcy court and district court proceedings, see In re

Enron Corp., 298 B.R. 513, 521-22 (S.D.N.Y. 2003), aff'd, 419 F.3d 115 (2d Cir. 2005)

(granting Rule 9014(c) motion to apply Bankruptcy Rule 7015(c) to a proof of claim and noting

that "Part VII of the [B]ankruptcy [R]ules is based on the premise that to the extent possible

practice before the bankruptcy courts and the district court[s] should be the same") (alterations in

original) (citation omitted) (internal quotation marks omitted).

31.     Based on these considerations, the Debtors respectfully request that the Court exercise its discretion and apply Bankruptcy Rule 7012 to the Proofs of Claim.  The Claims here seek $3.1 billion, and are among the largest that have been asserted against the Debtors.  Yet Claimants provide no information to support the Claims whatsoever. Consequently, the Court's exercise of discretion is particularly appropriate here, where requiring Claimants to amend their Claims will plainly promote the efficient resolution of their Claims by allowing the Debtors to fully understand the factual basis for the Claimants' assertions, see In re Rimsat, 223 B.R. at 346; avoid undue delay in administration of their estates, In re Ephedra Prods., 329 B.R. at 5; and provide for similarity between bankruptcy court and district court proceedings, see In re Enron, 298 B.R. at 521-22.

**B.     Claimants Should Be Required To Provide A More Definite Statement Of Their Claims Pursuant To Bankruptcy Rule 7012**

**1)  Bankruptcy Rule 7012 Requires Definitive Allegations In A Proof Of Claim**

32.     Under Bankruptcy Rule 7012 and Federal Rule 12(e), "[if] a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement."  In re Rimsat, 223 B.R. at 346; see also Brown v. City of Long Branch, No. 09-2264 (JAP), 2010 WL 3168813, at *2 (D.N.J. Aug. 10, 2010) ("The prevailing standard employed by the Third Circuit is to grant a Rule 12(e) motion when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself].") (alteration in original) (internal citations omitted) (internal quotation marks omitted).[15]  These standards apply to proofs of claim.

---

[15]     The decision to grant a motion for a more definite statement is within the discretion of the court.  Watson v. Washington Twp. of Gloucester Cnty. Pub. Sch. Dist., Civ. No. 09-3650 (RBK/JS), 2010 WL 2540180, at *5 (D.N.J. June 17, 2010), aff'd, 413 Fed. App'x 466 (3d Cir. 2011).

See, e.g., In re Rimsat, 223 B.R. at 348 (noting that where a proof of claim failed to set forth the

factual basis for its allegations, the "same allegations in a complaint certainly could not survive a

motion to dismiss for failure to state a claim").

       33.    Moreover, a pleading "must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" Kwasnik v. Permahos (In re

Kwasnik), No. 09-40602 (MBK), Adv. No. 10-1312 (MBK), 2011 WL 748144, at *1 (Bankr.

D.N.J. Feb. 24, 2011) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), and Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fowler v. UPMC Shadyside, 578 F.3d

203, 211 (3d Cir. 2009) ("[A] complaint must do more than allege the plaintiff's entitlement to

relief.  A complaint has to 'show' such an entitlement with its facts."); see also In re Rimsat, 223

B.R. at 348; Running v. Olsen (In re Running), No. 91 C 20302 (PGR), 1992 WL 70329, at *1

(N.D. Ill. Mar. 2, 1992) (noting that bankruptcy court dismissed facially invalid proof of claim

under Bankruptcy Rule 7012, with leave to file an amended proof of claim).  As this Court held

in its Opinion On Joint Objections To And Motions To Dismiss Claims Of Nortel Networks UK

Limited, Nortel Networks (Ireland) Limited And Nortel Networks S.A., dated March 20, 2012, at

22 [D.I. 7403], the pleading standards established by the Supreme Court in Twombly and Iqbal

are applicable to proofs of claim and will thus be applicable to any amended proofs of claim filed

by Claimants.[16]

---

[16]     The standards governing the sufficiency of pleadings under Bankruptcy Rule 7012 are identical to the
standards governing pleadings under Federal Rules 12(b)(6) and 12(e).  See, e.g., Mullarkey v. Tamboer (In re
Mullarkey), 536 F.3d 215, 219-20 (3d Cir. 2008); In re Rimsat, 223 B.R. at 347; see also Hoffman v. Stamou (In re
Stamou), No. 07-28685 (DHS), Adv. No. 08-01231 (DHS), 2009 WL 1025161, at *2 (Bankr. D.N.J. Mar. 19, 2009)
(recognizing the applicability of the Twombly standard under Rule 12(b)(6) to Bankruptcy Rule 7012).

### 2) Claimants Must Plead Facts Establishing That The Standards For Liability Under The U.K. Pensions Act Have Been Met

34.     As set forth above, under U.K. law, the Debtors may be required to provide financial support to help fund the alleged shortfall in the NNUK Pension Plan only if, at minimum, the following factors are established:

- The Debtors were connected and/or associated with NNUK;

- At the "relevant time," NNUK was "insufficiently resourced," which also involves an assessment of whether the resources of certain affiliates of NNUK were sufficient to meet certain statutory thresholds; and

- It is reasonable to hold the Debtors liable as Non-Employers under the facts and circumstances.

(See Hitchcock Decl. ¶¶ 37.3-37.5 & Schedule 2, Part 1.)

35.     The Proofs of Claim simply assert that NNUK has incurred a pension deficit, and TPR has determined that certain of the Debtors should be liable.  Other than citing to the summary conclusions of TPR, which were reached prior to the matter even being considered by the Determinations Panel and are irrelevant to the Claims given this Court's Order, no facts are provided to establish **any of** the statutory elements.

### 3) The Proofs Of Claim Are Factually Insufficient

36.     The Proofs of Claim fail to allege facts sufficient to support any liability by Debtors to the Claimants, and therefore are vague and ambiguous within the meaning of Bankruptcy Rule 7012.  Rather than providing detailed factual allegations, the Proofs of Claim simply assert that "[t]he Debtor has a contingent liability and indebtedness to the Trustee and the PPF in accordance with their respective interests arising pursuant to the Pensions Act 2004 and

17

the Pensions Act 1995 . . . and all applicable UK Regulations."  (See, e.g., NNI Claim, Schedule A; NN CALA Claim, Schedule A.)

37.     These are nothing more than general conclusory assertions.  Such generalized allegations are insufficient to state a claim for relief.  See Iqbal, 129 S.Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting Twombly, 550 U.S. at 555, 557) (alteration in original).

38.     Moreover, the Proofs of Claim rely entirely on statements regarding TPR's conclusions that, by virtue of the Order, are "void and of no force or effect" in this Court. (Order at 5.)  For example, the NNI Proof of Claim baldly asserts that "[t]he Regulator . . . has concluded that grounds exist to issue Warning Notices and to seek a Financial Support Direction against one or more of the members of the Nortel Group, whose members expressly include the Debtor."  See NNI Claim ¶ 2.4.   In light of the Order, those conclusions are immaterial to the determination of the Claims.

39.     Furthermore, Claimants must provide specific facts supporting each element of their Claims.  See In re Marino, 90 B.R. 25, 28 (Bankr. D. Conn. 1988) (explaining that "in accordance with the rules, in order to receive the benefit of the claim's prima facie validity, . . . the proof of claim must set forth the facts necessary to support the claim") (internal quotation marks omitted); Iqbal, 129 S.Ct. at 1949 (claim only has facial plausibility if it contains "factual content that allows court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (citation omitted).  Claimants utterly fail to do so.  For example, the Proofs of Claim fail to even expressly set out the factors that comprise the

"reasonableness" test or to provide any factual allegations supporting that key element.  The

omission of any factual information regarding reasonableness – an essential element of liability

under the U.K. Pensions Act – renders the Proofs of Claim vague and legally insufficient.  <u>See</u> <u>In</u>

<u>re Marino</u>, 90 B.R. at 28; <u>Iqbal</u>, 129 S.Ct. at 1949.  There also are no factual allegations

whatsoever to suggest that the Debtors in particular, as opposed to other members of the global

Nortel group, should be required to provide financial support for the NNUK Pension Plan.  Until

such facts are alleged, the Debtors are unable to prepare a response to the Proofs of Claim.

40.     Accordingly, the Proofs of Claim are plainly insufficient.  As presently

drafted, they are so vague and ambiguous that the Debtors cannot respond to them.  A proof of

claim requires more than cursory and unsupported statements, and the remedy is a more definite

statement under Federal Rule 12.  Requiring a more definite statement under Rule 7012 is thus

appropriate in this case.  <u>See</u> <u>In re Rimsat</u>, 223 B.R. at 348 (applying Bankruptcy Rule 7012 to

require a more definite statement from the claimants so that the debtor will "ha[ve] some

information with which it can begin an investigation of the claim").  The Debtors further request

that the Claimants be required to file amended Proofs of Claim (if any) on or before July 31,

2012.  As noted above, many months ago, Claimants filed detailed claims in Canada.  They have

had more than enough time to do the same in this Court.  If, after the Court directs them to do so

by July 31, 2012, they still fail to file amended Proofs of Claim providing the legal and factual

basis for their Claims, their Proofs of Claim should be dismissed, with prejudice.

### 4)     Claimants Should Be Required To Attach Supporting Documentation To Any Amended Proofs Of Claim

41.     The unique facts and circumstances surrounding the U.K. Pension Claim

make it particularly important that the Claimants provide supporting documentation under

Bankruptcy Rule 3001(c).[17]  Claimants assert claims against the Debtors for $3.1 billion, yet confidentiality restrictions under U.K. law prevent the Debtors from sharing the Warning Notice or the attachments thereto with the Court or any other interested parties, including the Committee, without risking criminal sanctions.  (Hitchcock Decl. ¶ 35.)

42.     Meaningfully assessing the value of the claims that must be paid by the estates is an essential next step in the progression of the Debtors' restructuring process.  As fiduciaries of the Debtors' unsecured creditors, the Committee has the responsibility to investigate claims.  That duty is heightened here, where they are evaluating a $3.1 billion claim that could greatly impact creditor recoveries.  Unless all supporting documentation is attached to the amended claim and thereby made available to the Committee (and this Court), the Committee will be unable to fulfill its obligation and fully participate in the reconciliation of this enormous claim.  See In re Taylor, 363 B.R. 303, 310 (Bankr. M.D. Fla. 2007) ("[C]ourts must evaluate the adequacy of documentation on a case by case basis, and construe Bankruptcy Rule 3001(c)'s documentation requirements in such a way as 'to secure the just, speedy, and inexpensive determination of every case and proceeding' as Bankruptcy Rule 1001 instructs.  The court must balance the need to provide debtors with sufficient information to assess claims against the goal of not unduly burdening claimants.").

43.     Moreover, requiring Claimants to attach their supporting documentation would not be unduly burdensome, because they already have done so in filing their amended claims in the Canadian Proceedings.  Claimants cannot be prejudiced by providing materials to

---

[17]     The Court also has equitable powers under section 105(a) of the Bankruptcy Code to order Claimants to file documentation supporting the allegations set forth in the Claims.  See United States v. Energy Res. Co., Inc., 495 U.S. 545, 549 (1990).  Under section 105(a), bankruptcy courts have the inherent authority to issue orders they deem necessary to further the reorganization process.  See id. (noting that under Section 105(a) of the Bankruptcy Code, bankruptcy courts have "broad authority to modify creditor-debtors relationships").  In light of the magnitude and nature of Claimants' Proofs of Claim, it is critical to the Debtors' reorganization that all parties in interest be given the necessary information to assess the validity of these claims.

the Debtors and the Committee that are the same or similar to those that they have already

produced to the Canadian Debtors and the Monitor.

44.     Consequently, the Court should exercise its discretion to order the

Claimants to attach supporting documentation to any amended claim.

## II.     THE PROOFS OF CLAIM ARE NOT PRIMA FACIE VALID UNDER BANKRUPTCY RULE 3001

45.     It is no answer to the Debtors' request for a more definite statement for

Claimants to contend that the Proofs of Claim should be deemed prima facie valid under

Bankruptcy Rule 3001(f).  That Rule is of no help to Claimants here, because a proof of claim is

only entitled to such treatment if it alleges facts "sufficient to support a legal liability to the

claimant."  See In re O'Brien, 440 B.R. 654, 658 (Bankr. E.D. Pa. 2010) (quoting In re

Allegheny Int'l. Inc., 954 F.2d 167, 173-74 (3d Cir. 1992)); Fed. R. Bankr. P. 3001(f).

Additionally, "a claim must be sufficiently detailed and substantial to allow it to be considered as

prima facie evidence of its validity."  In re Rimsat, 223 B.R. at 348 (citation omitted) (internal

quotation marks omitted).  Indeed, Rule 3001(a)'s definition of a proof of claim as "a written

statement setting forth a creditor's claim" contemplates that the creditor provide the necessary

factual basis for the debtor's alleged liability.  Fed. R. Bankr. P. 3001(a); see Svenska

Taendsticks Fabrik Aktiebolaget v. Irving Trust Co. (In re Int'l Match Corp.), 69 F.2d 73, 76 (2d

Cir. 1934) (explaining that "[a] proof[] of claim should at least allege facts from which liability

on the part of the bankrupt can be seen to exist").

46.     Under these standards, the Proofs of Claim here are clearly inadequate.

They are barebones documents that contain nothing more than conclusory assertions that are

either completely unsupported by facts, or that impermissibly reference the summary conclusions

of the TPR.  They fall far short of providing the parties in interest or the Court with any factual

or legal basis to support the claims asserted therein.  See In re O'Brien, 440 B.R. at 661-64; In re Rimsat, 223 B.R. at 348.  Accordingly, the Proofs of Claim lack prima facie validity under Bankruptcy Rule 3001(f).

## RESERVATION OF RIGHTS

47.     This Objection and Motion are based on the limited information relating to the Claims known by the Debtors as of the date hereof.  The Debtors expressly reserve the right to supplement this Objection, in whole or in part, and to file additional objections and adversary proceedings, on any factual or legal basis, should additional information, facts or circumstances, including, without limitation, information provided by the Claimants concerning the basis for the Claims, become known to them.

## NOTICE

48.     Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to the Claimants; (v) counsel for the Joint Administrators for the EMEA Debtors; (vi) counsel for the Monitor in the Canadian Proceedings; and (vii) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## NO PRIOR REQUEST

49.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of page left intentionally blank.]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  June 11, 2012
         Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____*/s/ Chad A. Fights*_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
18th Floor
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*