# Exhibit 6

1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

Case No. 09-10138 (KG)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


NORTEL NETWORKS INC, et al.,


             Debtors.


- - - - - - - - - - - - - - - - - - - -x


            U.S. Bankruptcy Court

            824 North Market Street

            Wilmington, Delaware


            February 26, 2010

            12:05 AM


B E F O R E:

HON. KEVIN GROSS

U.S. BANKRUPTCY JUDGE



ECR OPERATOR:   JENNIFER PASIERB

1        THE COURT:  I've got a lot already to take into
2   consideration, and what I propose to do is, and I hate to hold
3   everyone here longer, but I do think this is something that
4   requires decision today, if not a full explanation at least a
5   ruling, and I'd like to go back and give it a little bit of
6   thought and a little bit of organization.  I think I'm talking
7   about, maybe, twenty or twenty-five minutes, and, hopefully,
8   that won't delay anybody getting home at a decent hour, but I
9   guess it's already an indecent hour for some who have to travel
10  out of town, so I'm just going to take my notes and some of the
11  documents and come up with a ruling that I think will,
12  hopefully, make sense.  Not everybody happy, but at least it
13  will advance things to a great extent.
14       MR. O'CONNOR:  Thank you, Your Honor.
15       THE COURT:  Thank you.  We'll stand in recess.  You
16  can find a cold drink somewhere or just relax for a few minutes
17  and we'll certainly give you ample notice before I come back
18  in.
19       MR. O'CONNOR:  Thank you.
20     (Recess from 5:27 p.m. until 5:56 p.m.)
21       THE CLERK:  Please rise.
22       THE COURT:  Thank you, everyone.  Please be seated.
23       Well, I know I haven't said a lot because I've been
24  listening very closely to the evidence and the arguments of
25  counsel, and this is always the tough part of the job, and

1  that's making a ruling, but I do think that a ruling at this
2  point is appropriate given the timing, and I will issue
3  something in writing explaining the ruling in greater detail.
4       But obviously we have a motion to enforce the
5  automatic stay pending before me involving the United Kingdom
6  regulatory proceedings, and I think it's certainly a
7  complicated legal issue, but, frankly, I don't think it's as
8  difficult for the Court to arrive at a decision to grant the
9  motion as might appear as first blush.  And I'm going to
10 primarily premise my ruling on the facts that the trustee and
11 the PPF are clearly subject to this Court's jurisdiction.
12 They've filed proofs of claim for their pending pre-petition
13 claim.  This is a claim which the Court, not easily but,
14 certainly, capably, can decide at the appropriate time.  And
15 also of significance to me is the fact that the outcome of the
16 pension issue is directly impacted by the allocation issues
17 which the parties are so vigorously trying to resolve.
18      The trustees and the PPF talked about comity, and the
19 Court is very sensitive to comity, but it really runs both
20 ways.  And it's a two-way street, and the debtors, in multiple
21 jurisdictions, are expending their limited resources to arrive
22 at a resolution of asset allocation.  And to some extent that
23 asset allocation puts the United Kingdom proceeding as the cart
24 before the horse, because the ultimate disposition of the
25 pension claim will require a reasonableness determination, and

1   that, in turn, requires a determination of the allocation
2   issues.
3         I also find that not to enforce the automatic stay
4   would result in a significant hardship, and hardship, I think,
5   I know that the claimants talked about the fact that resources
6   are not identified in the statute in Section 362, but, clearly,
7   hardship is something that Courts consider, and resources
8   directly impact whether or not a hardship and prejudice would
9   result to these debtors, and I find that it would.  We have
10  very limited resources, and it would require those resources to
11  be redirected away from the primary issue which the parties are
12  addressing, and that is the issue of allocation.
13        I'm also finding that the police power exception in
14  Section 362(b)(4) does not apply here.  Obviously the exception
15  is one which Courts are supposed to very narrowly apply.
16  Courts generally look to whether or not the impact relates to
17  health or welfare or morals or safety issues and not race or
18  property issues.  And, clearly, this is primarily a property
19  issue, so that the pecuniary purpose test and the public policy
20  tests both, I think, require the Court to deny the exception,
21  that the exception applies.
22        The language "moral hazard", which the Court has heard
23  much about, does not appear in the pension statute in the
24  United Kingdom, and I will note that in every case in which
25  creditors are unpaid there is a moral hazard, I suppose, and I

1  just don't think that that is the overriding concern of the
2  pension statute or the pension scheme in the United Kingdom.
3         The Sea Container case, which is certainly one that
4  the parties have discussed at great length.  You know,
5  bankruptcy decisions are often practically driven, and Chief
6  Judge Carey had before him a settlement which was arrived at
7  after the debtors had expended substantial resources and
8  settled a key issue in the case.  And to the extent that Chief
9  Judge Carey's ruling holds that proceeding with that claim in
10 the United Kingdom was not a stay violation is one where I
11 think I have to respectfully disagree with my colleague, my
12 learned colleague.  I believe that it was a stay violation, and
13 I will also say that I think in the context of the Sea
14 Container case the Court could readily have found that the
15 committee, which was objecting on the grounds that there was a
16 stay violation, had sat on its rights and that laches applied,
17 and here we don't have that situation.  We have quite the
18 reverse, and that is the debtors are act -- and the committee,
19 with the committee's support, are acting in a very proactive
20 effort to stave off a great drain, a potential drain on the
21 assets, on the resources of the debtor -- debtors, and I think
22 that to permit the regulatory proceeding to proceed would
23 greatly impact the ultimate reorganization of these debtors.
24        So, as I say, I know that that is a fairly succinct
25 ruling, but I am confident that I have arrived at an

186

1  appropriate and correct result and I will grant the motion and
2  enter the appropriate order.  I'd like to get that, if
3  possible, on the docket, given the March 1st deadline and then
4  issue something in greater detail to follow.
5          MR. O'CONNOR:  Your Honor --
6          THE COURT:  It was an excellent presentation from all
7  of the parties.
8          MR. O'CONNOR:  Thank you, Your Honor.  Just a
9  question.  As you'll see, we raised an issue in our brief.  The
10 proposed order that the debtors had drafted --
11         THE COURT:  Yes.
12         MR. O'CONNOR:  -- was so broad that it seemed to us
13 that it would purport to enjoin the trustees from appearing in
14 the U.K. proceeding even with respect to making representations
15 about non-U.S. debtors.  As you know, in that proceeding
16 they're going to be looking at the other EMEA debtors, the
17 Canadian debtors and the U.S. debtors, and if you looked at the
18 language I think it's broad enough to be read that way.  I
19 don't know if the debtors intended that or if they want to
20 clarify that, but I wouldn't think that even if Your Honor has
21 ruled that the trustees' participation with respect to the U.S.
22 debtors would constitute a stay violation, that that would
23 extend to their participation with respect to other non-U.S.
24 debtors.
25         THE COURT:  Thank you, Mr. O'Connor.  I appreciate

187

1  that, because, really, I had not focused on the precise
2  language in the order, and, perhaps, we can review that now.
3              MS. BUELL:  Yes, Your Honor.
4              THE COURT:  Yes, Ms. Buell.
5              MS. BUELL:  Focusing on paragraph 3 of the proposed
6  order, all right?
7              THE COURT:  Yes.
8              MS. BUELL:  Your Honor, I think we can add in
9  paragraph 3 "to the extent that either of the U.K. pension
10 trustee or the PPF participate in the U.K. pension proceedings
11 with respect to any U.S. debtor".  I'm sorry.  You don't have
12 it in front of you so -- sorry.
13             THE COURT:  No.  I'm --
14             MS. BUELL:  Let me --
15             THE COURT:  And we would put that at the end of the
16 first sentence, I assume.  Oh, it is one sentence.  I'm sorry.
17             MS. BUELL:  It's kind of a long sentence.
18             THE COURT:  Yes.
19             MS. BUELL:  Yes.  Comma, such participation --
20             THE COURT:  Yes.  There it is.
21             MS. BUELL:  Yes.  May I?
22             THE COURT:  Does that help, Mr. O'Connor?
23             MR. O'CONNOR:  Yes, that at least --
24             THE COURT:  Okay.
25             MR. O'CONNOR:  -- clarifies the scope of the order.

1   THE COURT: Exactly, because there's nothing that I am
2   saying here, and, in fact, the debtors made no request that I
3   impose, as I don't think I could, any restrictions upon the
4   regulator. The regulator will do as the regulator deems fit, I
5   suppose, but at least that language makes my ruling certainly
6   more concise.
7   MR. O'CONNOR: And the other issue, Your Honor --
8   THE COURT: Yes.
9   MR. O'CONNOR: With all due respect, we have, unless
10  this gets extended, the potential of needing the trustee to
11  submit representations on that March 1st deadline. I would ask
12  the Court to grant us a stay so that we can take an appeal if
13  the client seeks to do that, and we don't have the risk of
14  missing a deadline before we can get relief from the District
15  Court if the District Court is so inclined. And I ask you
16  that, Your Honor, because if I don't ask Your Honor for that
17  request --
18  THE COURT: I understand.
19  MR. O'CONNOR: -- the District Court is going to give
20  me a hard time about that.
21  THE COURT: Well, I think that one of the purposes of
22  this ruling is to protect the debtor from the March 1st
23  deadline, and to the extent I would grant a stay it would
24  really, I think, remove that protection.
25  MR. O'CONNOR: Your Honor, to a large degree it would.

189

1  THE COURT: So I think I'm going to deny the request
2  for the stay.
3  MR. O'CONNOR: Thank you, Your Honor.
4  THE COURT: But, certainly, you've made it and the
5  MR. O'CONNOR: Thank you.
6  MS. BUELL: Thank you, Your Honor. We're going to
7  look at paragraph 3 for just a couple of --
8  THE COURT: Would you please --
9  MS. BUELL: Yes.
10 THE COURT: Would you please take --
11 MS. BUELL: Yes.
12 THE COURT: Yes. Take your time. I can either step
13 out and allow the parties to discuss it and come back in a few
14 minutes when you're ready for me.
15 MS. BUELL: Yes, I think it'll take just a few
16 minutes.
17 THE COURT: All right.
18 MS. BUELL: Thank you, Your Honor. I just want to
19 make sure that we --
20 THE COURT: I will step out. When you're ready for me
21 just let me know and I'll come back in.
22 MS. BUELL: Thank you so much.
23 THE COURT: You bet.
24 (Recess from 6:09 p.m. until 6:15 p.m.)
25 THE CLERK: Please rise.

1      THE COURT:  And please be seated, and thank you.  Ms.
2  Buell?
3      MS. BUELL:  Your Honor, if I may?  We have conferred
4  among ourselves and with Mr. O'Connor, and we have a few
5  handwritten comments on paragraph 3 of the proposed order.  The
6  purpose of each proposed change is to clarify that the motion
7  is with respect to the trustee and the PPF --
8      THE COURT:  Yes.
9      MS. BUELL:  -- to the extent that the U.K. regulatory
10  proceedings address any U.S. debtor.
11      THE COURT:  Okay.
12      MS. BUELL:  If I may hand that up?
13      THE COURT:  Understood.  Yes.  Ms. Buell, thank you.
14      MS. BUELL:  Thank you.
15      THE COURT:  Mr. O'Connor, these changes meet, at least
16  as to form, with your requirements or request, I should say?
17      MR. O'CONNOR:  As to form, if not substance, Your
18  Honor.
19      THE COURT:  Yes. Understood. All right.  That's
20  fine.  I think that does help a great deal.  I will not be
21  sorry to see February leave.  It's been a tough month.  All
22  right.  I have signed the order.  We will get this docketed
23  today.
24      MS. BUELL:  Thank you so much, Your Honor.
25      THE COURT:  So that it will be in place before the

1   March 1st deadline.  Anything further?
2           MR. O'CONNOR:  I don't believe so.  Thank you, Your
3   Honor.
4           THE COURT:  Thank you.  Thank you.
5           IN UNISON:  Thank you, Your Honor.
6           THE COURT:  Thank you all.
7           And, Mr. Bromley, I'll see you next week.
8           MR. BROMLEY:  Yes.
9           THE COURT:  All right.  Good day, everyone.
10          MR. BROMLEY:  Yes, Your Honor.
11          THE COURT:  Mr. Abbott, Ms. Cordo and all, thank you.
12          MR. ABBOTT:  Thank you, Your Honor.
13          THE COURT:  Safe trip home.
14       (Proceedings concluded at 6:16 PM)