**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Nortel Networks Inc., et al.,[1] | Case No. 09-10138 (KG) |
| Debtors. | (Jointly Administered) |
| Nortel Networks Inc., | |
| Plaintiff, | |
| v. | Adv. Proc. No. _____ (KG) |
| State of Michigan Department of Treasury, | |
| Defendant. | |

**ADVERSARY COMPLAINT**

Plaintiff Nortel Networks Inc. ("NNI"), debtor and debtor in possession, by and through its undersigned counsel, hereby files this complaint (the "Complaint") against the State of Michigan Department of Treasury ("Michigan Treasury") and, in support thereof, alleges as follows:

**NATURE OF THIS ACTION**

1.     Michigan Treasury has asserted certain prepetition and postpetition claims against NNI (the "Michigan Tax Claims"). Michigan Treasury is also actively pursuing certain current

---

[1]      In addition to Nortel Networks Inc., the debtors in the Chapter 11 cases are: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA," collectively, the "Debtors"). Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

and former NNI Employees (as defined below) pursuant to a Michigan statute that purports to allow Michigan Treasury to hold the NNI Employees derivatively liable for the Michigan Tax Claims, or interest or penalties thereon (the "Derivative Claims").  Over the past six months, NNI has worked diligently in good faith to resolve the Michigan Tax Claims, which would, under Michigan law, end the ability of Michigan Treasury to pursue the NNI Employees for such claims.  Unfortunately, it has become clear to NNI that the combined bureaucracies of Michigan Treasury and the State of Michigan Department of Attorney General ("Michigan Attorney General") make it impossible to resolve the Michigan Tax Claims and protect the NNI Employees without the intervention of this Court.  Hence, with regret, NNI files this Complaint.

2.      The Michigan Tax Claims are divided into two categories – prepetition and postpetition (as defined below, the "Prepetition Michigan Tax Claim" and "Postpetition Michigan Tax Claim").  The Prepetition Michigan Tax Claim was filed, with this Court's permission, in 2011.  The claim arose because NNI had filed amended tax returns in Michigan for the years 2001 to 2005.  These amended tax returns were necessary because of the increase in NNI's income that was recorded for those years as a result of the settlement with the Internal Revenue Service ("IRS"), dated as of December 23, 2009, that, among other things, increased NNI's income for those years by $2 billion and gave rise to NNI's allowed claim of $2 billion against Nortel Networks Limited ("NNL"), a Canadian debtor and NNI's immediate corporate parent.

3.      The Postpetition Michigan Tax Claim has been asserted only very recently.  The claim was made after NNI had filed its MBT (as defined below) returns for the relevant postpetition periods and paid the full amount required by those returns, which returns were accompanied by determination notices pursuant to Section 505 of the Bankruptcy Code (as

defined below).   Because Michigan Treasury did not inform NNI of the Postpetition Michigan

Tax Claim until after the expiration of the time periods contained in Section 505(b)(2), the

Postpetition Michigan Tax Claim is time barred and, as such, invalid.

       4.      Indeed, the Postpetition Michigan Tax Claim was generated only because the

Prepetition Michigan Tax Claim was being settled.   On or about March 13, 2012, Michigan

Attorney General indicated its support for a settlement of the Michigan Prepetition Tax Claim for

an immediate payment in cash at a rate of 75% of the allowed amount of the claim (the

"Settlement").   It was only when the documentation of the Settlement highlighted the need for

the acknowledgement of no liability for postpetition claims (including the release of any

Derivative Claims relating thereto) that the Postpetition Michigan Tax Claim, and related actions

on Derivative Claims against certain NNI Employees, were initiated.   Quite unexpectedly,

Michigan Treasury and Michigan Attorney General refused to consummate the Settlement

without simultaneous satisfaction of the new – and late – Postpetition Michigan Tax Claim.

       5.      In addition to holding the Settlement hostage, Michigan Attorney General also

breached its own February 2012 representation to NNI that it would not undertake collection

efforts against the NNI Employees during the pendency of NNI's chapter 11 proceedings.   In

May, final assessment notices were sent by Michigan Treasury to one NNI Employee for

approximately $1.75 million.   These notices are not only a breach of Michigan Treasury's

February representations to NNI, but they are also in violation of the notice and due process

procedures required by Michigan law.

       6.      In light of the foregoing, NNI is left with no choice but to seek the intervention of

this Court.   By this Complaint, and the accompanying Motion for Preliminary Injunction (the

"Motion"), NNI seeks (i) injunctive relief to enjoin Michigan Treasury from pursuing any

collection efforts against NNI's current, former and future employees, including without limitation, Mr. Allen Stout and Mr. Jeffrey Wood (collectively, "NNI Employees") with respect to the Michigan Tax Claims and the Derivative Claims, (ii) in the alternative, declaratory relief extending the automatic stay to prevent Michigan from pursuing any collection attempts against NNI Employees with respect to the Michigan Tax Claims and the Derivative Claims, (iii) a determination that NNI Employees are not liable for amounts related to the Michigan Tax Claims or the Derivative Claims, and (iv) a determination that NNI has been discharged of any liability for the Michigan Postpetition Tax Claim with respect to the 2009 and 2010 tax years.[2]

## JURISDICTION AND VENUE

7.      This adversary proceeding is brought pursuant to sections 105, 362 and 505 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 7001 et seq. of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

9.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and this Court may enter a final adjudication of the merits of this Complaint.

10.     Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

11.     NNI is a corporation incorporated under the laws of the State of Delaware with its principal place of business currently located at 4001 E. Chapel Hill-Nelson Hwy., P.O. Box

---

[2]      As discussed below, NNI has paid all amounts due under its 2009 and 2010 Michigan Business Tax returns and has been discharged from any further liability by operation of section 505(b)(2) of the Bankruptcy Code.

13010, Research Triangle Park, NC 27709-3010.  On January 14, 2009 (the "<u>Petition Date</u>"), the

Debtors (with the exception of NN CALA, which filed a petition on July 14, 2009) filed

voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Cases</u>").

Since the Petition Date, NNI has sold its business units and other assets to various purchasers

and has ceased operations in Michigan.  NNI continues to operate as a debtor in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

     12.     Defendant Michigan Treasury is the state agency charged with assessing and

collecting taxes for the State of Michigan.  Michigan Treasury assessed the business and gross

receipt taxes, penalties and interest at issue in this Complaint.  Michigan Treasury's principal

place of business is located in the City of Lansing, Michigan.

<strong><u>FACTUAL BACKGROUND</u></strong>

**A.     NNI's Operations in Michigan and the Michigan Business Tax**

     13.     Prior to the Petition Date and during the 2009 and 2010 tax years, NNI was in the

business of developing, selling and servicing end-to-end networking products and solutions to

carrier and enterprise customers.  NNI's networking solutions included cable operators, wired

and wireless telecommunications service providers and Internet service providers supplied to

customers throughout the world, including multinational corporations and federal, state and local

government agencies.  During these years, NNI sold networking products and in some instances

provided services to entities located in Michigan.

     14.     The Michigan Business Tax Act requires companies to pay Michigan Business

Tax ("<u>MBT</u>") each year they operate within the state.  <u>See</u> Mich. Comp. Laws § 208.1101 <u>et.</u> <u>seq.</u>

The MBT has four tax liability components, two of which are relevant here:  (a) business income

tax and (b) modified gross receipts tax.  The business income tax is imposed on "every taxpayer

with business activity within" the state of Michigan and is calculated based on business income

5

subject to various adjustments and deductions.  See Mich. Comp. Laws § 208.1201(1)-(2).  The

modified gross receipts tax is imposed on a taxpayer with nexus to Michigan and is based on all

gross receipts less a deduction for "purchases from other firms" before apportionment under the

Michigan Business Tax Act.  See Mich. Comp. Laws § 208.1203(1), (3).  Section 205.27a(5) of

the Michigan Revenue Act purports to provide for derivative personal liability of "officers,

members, managers, or partners" of a corporation Michigan determines to have "control or

supervision of, or responsibility for, making the returns" if a corporation fails to file the required

returns or pay tax due under the statute.  Mich. Comp. Laws § 205.27a(5).

**B.      2008 Penalty and Interest Claim**

        15.      In April 2009, NNI requested an extension of time to file its 2008 MBT return.

At that time, NNI estimated its 2008 MBT liability at $613,163 and, prior to filing its 2008 MBT

return, paid a total amount of $648,168 (a portion of which was paid through certain

overpayments on previous returns) as required by section 501 of the Michigan Business Tax Act.

On December 22, 2009, NNI filed its 2008 MBT return.  However, due to an increase in NNI's

gross receipts in Michigan, NNI's 2008 MBT obligation increased to $1,022,399.  NNI paid the

difference between the estimated and actual 2008 MBT liability of $374,251 electronically on

December 22, 2009, the same date the 2008 MBT return was filed by mail.

        16.      On May 3, 2010, Michigan Treasury filed an administrative expense claim against

NNI for a total amount of $77,974.87 ($62,717.65 in penalties and $15,257.22 in interest, the

"2008 Penalty and Interest Claim") allegedly owed to Michigan Treasury as a result of the initial

underpayment of 2008 MBT (Claim No. 7242).  As a result of NNI's chapter 11 filing, NNI is

prohibited, absent permission from this Court, from paying any prepetition amount owed to

Michigan Treasury.  After NNI informed Michigan Treasury that the 2008 Penalty and Interest

Claim was precluded under section 502(b)(2) of the Bankruptcy Code as a claim for postpetition

interest and penalties accrued on a prepetition tax, Michigan Treasury withdrew the 2008 Penalty and Interest Claim on August 11, 2010 [D.I. 3771].[3]

**C.      The Prepetition Michigan Tax Claim**

17.      On or about June 1, 2010, NNI filed amended MBT returns for tax years 2001 through 2005.  The amended returns were filed because of NNI's amendment of its federal corporate income tax returns for the same years arising from the $2 billion income adjustment referenced above (the "Amended Returns").  On March 9, 2011, Michigan Treasury filed a motion to assert a late claim in the amount of $1,486,114.81 against NNI as a result of the Amended Returns [D.I. 5091].  This Court entered a modified order granting such motion on March 31, 2011, in which the Debtors reserved all rights and defenses with respect to the claim [D.I. 5190].  On April 27, 2011, Michigan Treasury filed a proof of claim against NNI in the amount of $1,486,114.81 (Claim No. 7719) (the "Prepetition Michigan Tax Claim").

**D.      Derivative Claims Against NNI Employees**

18.      On January 17, 2012, Michigan Treasury sent Mr. Allen Stout, NNI's current Vice President of Finance, a "Letter of Inquiry" asserting that Mr. Stout may be derivatively liable for a sum of the Prepetition Michigan Tax Claim and the 2008 Penalty and Interest Claim for a total of $1,718,874.59 (the "Stout Letter of Inquiry").   See Stout Letter of Inquiry, attached as Exhibit A hereto.

19.      In response to the Stout Letter of Inquiry, NNI's counsel sent a letter to Michigan Attorney General on February 16, 2012.  In the letter NNI disagreed with the assessment against Mr. Stout, but offered the allowance of the Prepetition Michigan Tax Claim in exchange for

---

[3]      In addition to Claim No. 7242, Michigan Treasury previously filed Claim Nos. 863 and 995 against NNI, asserting postpetition penalties and interest.  Michigan Treasury withdrew these claims on August 19, 2010 [D.I. 3803].

Michigan Treasury's release of the Debtors and NNI Employees for all prepetition liabilities.

<u>See</u> Letter to Michigan Attorney General dated February 16, 2012, attached as <u>Exhibit B</u> hereto.

20.    On February 23, 2012, NNI received a letter (the "<u>February 23 Letter</u>") from the Michigan Attorney General.  The letter rejected NNI's settlement proposal, but represented that:

> [D]uring the life of the Chapter 11 plan, the Treasury Department ***will not undertake collection efforts*** against any corporate officer assessed with liability for the various amounts included in claim number 7719.

<u>See</u> Letter from Michigan Attorney General dated February 23, 2012, attached as <u>Exhibit C</u> hereto (emphasis added).  In reliance on Michigan Attorney General's representation, NNI focused exclusively on documenting the Settlement.  Moreover, in reliance on this representation, NNI did not seek any relief from this Court.

21.    During the week of March 5, 2012, Michigan Attorney General sent an email to NNI's counsel outlining a settlement by which NNI would pay Michigan Treasury seventy-five percent (75%) of the Prepetition Michigan Tax Claim in full satisfaction of that claim and Michigan Treasury would deliver a release of NNI and all NNI Employees relating to the prepetition period.  <u>See</u> March 13 Email, attached as <u>Exhibit D</u> hereto.  In that email, Michigan Attorney General stated that it endorsed the Settlement and indicated that it would recommend that Michigan Treasury accept the same.  <u>Id.</u>

22.    On March 29, 2012, NNI counsel called Michigan Attorney General to finalize the Settlement and, for the first time, Michigan Attorney General raised the Postpetition Michigan Tax Claim.  On April 18, 2012, Michigan Attorney General stated that it was unwilling to consummate the Settlement without simultaneous resolution of the Postpetition Michigan Tax Claim.  <u>See</u> E-mail from Michigan Attorney General dated April 18, 2012, attached as <u>Exhibit E</u> hereto.

23.     On April 13, 2012, Michigan Treasury sent Mr. Wood, a former NNI Employee currently employed by Ernst & Young, a Letter of Inquiry asserting that Mr. Wood may be derivatively liable for the sum of the Prepetition Michigan Tax Claim and the 2008 Penalty and Interest Claim in the amount of $1,730,873.95 (the "Wood Letter of Inquiry").  See Wood Letter of Inquiry, attached as Exhibit F hereto.

24.     On May 10, 2012, Michigan Treasury sent Mr. Stout a notice of "Final Assessment" in the total amount of $1,730,873.95 asserting Mr. Stout may be liable derivatively for the Prepetition Michigan Tax Claim and the 2008 Penalty and Interest Claim (the "Stout Final Assessment").  See Stout Final Assessment, attached as Exhibit G hereto.  In particular, Michigan Treasury assessed Mr. Stout with $77,974.87 ($62,717.65 in penalties and $15,257.22 in interest) for the 2008 Penalty and Interest Claim and $1,652,899.08 ($1,135,559.00 in taxes and $517,340.08 in interest) for the Prepetition Michigan Tax Claim.  See id.

25.     In issuing this final assessment, Michigan Treasury acted in violation of its own procedures for such an assessment as set forth in the Michigan Compiled Laws (the "MCL").  MCL section 205.21b requires that Michigan Treasury give notice of an intent to assess a tax. This notice must include the amount of tax Michigan Treasury believes it is owed, the reason for the deficiency and a statement advising the taxpayer of a right to an informal conference to dispute such assessment, prior to issuing its final assessment.  Mr. Stout never received such a notice.  Rather, the only follow-up communication received by Mr. Stout was a brief form letter entitled "Determination of Corporate Officer Liability," indicating that NNI's bankruptcy was not sufficient to release and cancel the assessment against him.  See Letter from Michigan Treasury to Mr. Stout dated March 1, 2012, attached as Exhibit H hereto.  The final bills against Mr. Stout indicated that payment was due on or before June 14, 2012.  On June 12, 2012, Mr.

Stout, through his counsel, petitioned the Michigan Tax Tribunal for redetermination and cancellation of the Stout Final Assessment.

26.     After receiving the Stout Final Assessment, NNI contacted Michigan Treasury and requested that the Stout Final Assessment be withdrawn to allow the parties to consummate the Settlement.  Michigan Attorney General stated that it did not represent Michigan Treasury with respect to the Derivative Claims against NNI Employees.  Moreover, Michigan Attorney General stated that it was now unwilling to discuss resolution of the Derivative Claims against NNI Employees.

**E.     Postpetition Michigan Tax Claim**

27.     NNI filed MBT returns on or about December 17, 2010 for the 2009 tax yeam, and on or about December 7, 2011 for the 2010 tax year.  NNI remitted final payment of the tax shown on the 2009 MBT return at the time the return was filed, and paid the entire amount of the tax shown on the 2010 MBT return before the return was filed.  In order to obtain an expedited determination of its tax liability and to evaluate the impact of any such liability on its estate, NNI submitted requests for prompt determination under section 505(b)(2) of the Bankruptcy Code with each of the 2009 and 2010 MBT returns (the "Prompt Determination Requests").  Specifically, NNI attached written statements requesting determination under section 505(b)(2) to both the 2009 and 2010 MBT returns and also included language invoking section 505(b)(2) on the first page of the 2010 MBT return.[4]

28.     Pursuant to section 505(b)(2)(A) of the Bankruptcy Code, as a result of the filing of the Prompt Determination Requests, Michigan Treasury had sixty days after the requests to

---

[4]      This language reads:  "This return is being filed by a Debtor or Debtor-in-Possession under Chapter 11, Title 11, United States Code (the "Bankruptcy Code"), pursuant to case number 09-10138 filed in the Bankruptcy Court of the District of Delaware on January 14, 2009.  Pursuant to Section 505(b) of the same referenced code, taxpayer requests that you make a Determination of Tax Liability for this return."

notify NNI that it was conducting an examination of the 2009 and 2010 MBT returns.  Michigan

Treasury failed to notify NNI that either of the 2009 or 2010 MBT returns was selected for

examination within the relevant sixty day period.

29.     Notwithstanding the expiration of the sixty-day period under section 505(b)(2)(A)

of the Bankruptcy Code, Michigan Treasury has now assessed NNI for additional taxes, interest

and penalties in connection with the 2009 and 2010 MBT returns (the "Postpetition Michigan

Tax Claim").  On March 14, 2012, approximately fifteen months after the Prompt Determination

Request submitted with the 2009 MBT return, and on March 20, 2012, approximately three

months after the Prompt Determination Request submitted with the 2010 MBT return, Michigan

Treasury issued the Postpetition Michigan Tax Claim in the amounts of $1,460,000 for the 2009

MBT return and $196,478 for the 2010 MBT return.  See Postpetition Michigan Tax Claim,

attached as Exhibit I hereto.

30.     On May 11, 2012, NNI's counsel sent a letter to Michigan Attorney General,

attached as Exhibit J hereto, informing Michigan Treasury that due to its failure to comply with

the expedited timeline resulting from NNI's valid Prompt Determination Requests, NNI has been

discharged from any and all liability asserted in the Postpetition Michigan Tax Claim by

operation of section 505(b)(2) of the Bankruptcy Code.  As of the date hereof, neither Michigan

Treasury nor Michigan Attorney General has responded.

## CLAIMS FOR RELIEF

### First Claim for Relief

### (Request for Injunctive Relief - 11 U.S.C. §§ 105, 505)

31.     NNI restates and realleges the allegations of paragraphs "1" through "30" above

as if fully set forth herein.

32.      NNI seeks injunctive relief to prevent Michigan Treasury from pursuing any

collection attempts against NNI Employees with respect to the Michigan Tax Claims and

Derivative Claims.

33.      Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any

order . . . that is necessary or appropriate to carry out the provisions of this title."

11 U.S.C. § 105(a).  Pursuant to 11 U.S.C. § 505(a)(1), this Court has authority to "determine the

amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether

or not previously assessed, whether or not paid, and whether or not contested before and

adjudicated by a judicial or administrative tribunal of competent jurisdiction."

11 U.S.C. § 505(a)(1).  This authority extends to non-debtors where the determination of the tax

will affect the debtor's estate.  Taken together, sections 105 and 505 of the Bankruptcy Code

provide bankruptcy courts with authorization to issue orders concerning tax liabilities that are

necessary to administer a debtor's estate in an orderly and efficient manner and to achieve

fairness in the bankruptcy proceedings.

34.      The injunctive relief sought herein is critical for the administration of the chapter

11 proceedings.  The likelihood of irreparable harm to NNI in the absence of injunctive relief far

outweighs any harm to Michigan Treasury.  Michigan Treasury will not be harmed if its

collection efforts against NNI Employees are stayed until the conclusion of these chapter 11

proceedings.  However, if Michigan Treasury's collection efforts against NNI Employees are not

enjoined, NNI will likely suffer irreparable harm, including:

(a)      burdensome and ongoing collection actions against NNI Employees that

will distract resources from NNI's estate and frustrate its efforts to successfully conclude its

chapter 11 proceedings;

(b)      the risk that Michigan Treasury's pursuit of the Michigan Tax Claims and Derivative Claims against NNI Employees will preclude NNI from exercising its right to challenge the amount and validity of the Prepetition Michigan Tax Claim, or any future proofs of claim that Michigan Treasury may seek to file with respect to the Postpetition Michigan Tax Claim, in this Court;

(c)      the risk that pursuit of the Michigan Tax Claims and Derivative Claims against NNI Employees will result in indemnification claims against NNI that will be significantly larger than Michigan Treasury's claims against NNI because they will include both amounts in respect of postpetition interest and penalties that are barred from being directly asserted against a debtor, as well as related NNI Employee defense costs; and

(d)      the risk that Michigan Treasury's collection efforts and NNI Employees' efforts to defend themselves will result in a depletion of insurance policies and proceeds that are assets of its estate.

35.      The injunctive relief sought by NNI is necessary and proper in order to allow NNI to administer its estate in an orderly and efficient manner and to achieve fairness in its bankruptcy proceedings.  Furthermore, the injunctive relief requested herein will serve the public interest by promoting compliance with the purpose of the automatic stay and furthering NNI's efforts to complete its chapter 11 proceedings.

## Second Claim for Relief

## (Declaratory Judgment Enforcing the Automatic Stay – 11 U.S.C. § 362(a))

36.      NNI restates and realleges the allegations of paragraphs "1" through "35" above as if fully set forth herein.

37.     NNI seeks an order staying any and all of Michigan Treasury's collection attempts against NNI Employees with respect to the Michigan Tax Claims and Derivative Claims pursuant to section 362(a) of the Bankruptcy Code.

38.     Extension of the stay is warranted because continuation of Michigan Treasury's collection attempts will distract resources from NNI's estate and frustrate its efforts to successfully conclude its chapter 11 proceedings, expose NNI to significant indemnification claims by NNI Employees, and could deplete the insurance policies and proceeds that are property of NNI's estate.

39.     If Michigan's collection attempts are allowed to proceed, they will thwart the very purpose of the automatic stay, to protect a debtor from an "uncontrolled scramble" for its assets.

40.     Based on the foregoing, NNI seeks a declaratory judgment extending the stay under section 362(a) of the Bankruptcy Code to prevent Michigan Treasury's attempts to collect Michigan Tax Claims and Derivative Claims from NNI Employees.

## Third Claim for Relief

## (Determination of Tax With Respect to NNI Employees– 11 U.S.C. § 505(a))

41.     NNI restates and realleges the allegations of paragraphs "1" through "40" above as if fully set forth herein.

42.     Pursuant to section 505(a)(1) of the Bankruptcy Code, this Court has authority to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1).  This authority extends to non-debtors where the determination of the tax will affect the debtor's estate.

43.    None of the exceptions to the authority set forth in 11 U.S.C. § 505(a)(2) apply. The Michigan Tax Claims and the Derivative Claims against NNI Employees were not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the Chapter 11 Cases, within the meaning of 11 U.S.C. § 505(a)(2)(A). This Complaint does not seek a refund within the meaning of 11 U.S.C. § 505(a)(2)(B), and this Complaint does not relate to an ad valorem tax on real or personal property of the estate within the meaning of 11 U.S.C. § 505(a)(2)(C).

44.    Unlike a taxpayer that intentionally avoids its obligations to taxing authorities, NNI is legally precluded from paying amounts assessed by Michigan because of NNI's bankruptcy filing, and thus the Court should determine that neither NNI nor any other persons can be held derivatively liable for the Michigan Tax Claims during the pendency of the Chapter 11 Cases.

45.    Because the liability of a corporate officer under MCL section 205.27a(5) is strictly derivative of the corporation, an officer cannot be held liable any amount the debtor cannot legally pay.

46.    Based on the foregoing, NNI requests this Court to determine that NNI Employees are not liable for amounts related to the Michigan Tax Claims and Derivative Claims.

**Fourth Claim for Relief**

**(Determination of Tax With Respect to Postpetition Assessments – 11 U.S.C. § 505)**

47.    NNI restates and realleges the allegations of paragraphs "1" through "46" above as if fully set forth herein.

48.    Pursuant to section 505(b)(2) of the Bankruptcy Code, a debtor may request an expedited determination of tax liability incurred after the filing of a bankruptcy petition "by submitting a tax return for such tax and a request for such a determination to the governmental

unit charged with responsibility for collection or determination of such tax . . . ."

11 U.S.C. § 505(b)(2).  After a debtor requests a prompt determination, section 505(b)(2)

requires that the taxing authority notify the debtor within sixty days that the return has been

selected for further examination and complete such examination and notify the debtor of any

additional tax due within 180 days after the request.  If the taxing authority does not comply with

the statutory deadlines, the debtor is discharged from liability for any additional tax upon

payment of the tax shown on the return.  11 U.S.C. § 505(b)(2).

49.    NNI properly filed its Prompt Determination Requests in accordance with the

procedure provided by the Bankruptcy Code and the Bankruptcy Rules.  In light of the Michigan

Treasury's failure to notify NNI that either the 2009 or 2010 MBT returns were selected for

examination within sixty days, this Court must determine, as authorized by section 505(a), that

NNI has been discharged from any and all liability asserted in the Postpetition Michigan Tax

Claim by operation of section 505(b)(2) of the Bankruptcy Code.

WHEREFORE, NNI hereby respectfully requests that this Court:  (1) enjoin and

restrain Michigan Treasury from pursuing any collection attempts against NNI Employees with

respect to the Michigan Tax Claims and Derivative Claims; (2) in the alternative, enter a

declaratory judgment extending the automatic stay to prevent Michigan Treasury from pursuing

any collection attempts against NNI Employees with respect to the Michigan Tax Claims and

Derivative Claims; (3) determine that NNI Employees are not liable for tax, penalties or interest

related to the Michigan Tax Claims and Derivative Claims; (4) determine that NNI has been

discharged of any additional Michigan Business Tax liabilities with respect to the 2009 and 2010

tax years; and (5) grant such other and further relief as the Court deems just and proper.

Dated: June 15, 2012
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -


MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Donna L. Culver (No. 2983)
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*