**EXHIBIT B**

**Non-Filed Entity Settlement Agreement**

EXECUTION COPY

# ALLOCATION SETTLEMENT AGREEMENT
## (APAC/CALA)

This agreement (the **"Agreement"**) dated as of the 19th day of June, 2012 is entered into by and among the following parties:

(a) Nortel Networks Corporation (**"NNC"**), Nortel Networks Limited (**"NNL"**) and the other entities set forth in **Schedule 1** attached hereto (the **"Canadian Debtors"**),

(b) Nortel Networks Inc. (**"NNI"**) and the other entities set forth in **Schedule 2** attached hereto (the **"US Debtors"**),

(c) Nortel Networks UK Limited (In Administration) (**"NNUK"**) and the other entities set forth in **Schedule 3** attached hereto (the **"EMEA Debtors"**) which are acting by their joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP of 1 More London Place, London SE1 2AF (other than Nortel Networks (Ireland) Limited (**"NNIR"**), for which David Hughes of Ernst & Young Chartered Accountants of Harcourt Centre, Harcourt Street, Dublin 2, Ireland and Alan Robert Bloom serve as joint administrators) (the **"Joint Administrators"**), who act as agents for the EMEA Debtors without any personal liability whatsoever,

(d) Nortel Networks (Northern Ireland) Limited (in liquidation) (**"NNNIR"**) and Nortel Networks Optical Components Limited (in liquidation) (**"NNOCL"**) (the **"EMEA Liquidation Debtors"**) which in the case of NNNIR, is acting by its joint liquidators Elizabeth Anne Bingham and Kerry Lynne Trigg of Ernst & Young LLP of 1 More London Place, London SE1 2AF and in the case of NNOCL is acting by its joint liquidators Samantha Keen and Kerry Lynne Trigg of Ernst & Young LLP of 1 More London Place, London SE1 2AF (the **"Joint Liquidators"**), who act as agents for the EMEA Liquidation Debtors without any personal liability whatsoever,

(e) Nortel Networks S.A. (In Administration and *liquidation judiciare*) (**"NNSA"**), a corporation incorporated under the laws of France, represented by the Joint Administrators and Maître Cosme Rogeau, 26, avenue Hoche, 78000 Versailles as the "Liquidateur Judiciaire" (the **"NNSA Office Holder"**), who act as agents for NNSA without any personal liability whatsoever,

(f) certain non-filed affiliates of NNC as set forth in **Schedule 4** attached hereto and identified as the APAC Entities, including their respective branch offices (the **"APAC Entities"**),

(g) certain non-filed affiliates of NNC as set forth in **Schedule 5** attached hereto and identified as the CALA Entities, including their respective branch offices (the

"**CALA Entities**", and together with the APAC Entities, the "**Non-Filed Entities**"),

(h)     certain non-filed affiliates of the EMEA Debtors as set forth in **Schedule 6** hereto and identified as the EMEA NFEs (the "**EMEA NFEs**"),

(i)     the Joint Administrators,

(j)     the Joint Liquidators,

(k)     the NNSA Office Holder,

(l)     Ernst & Young Inc. in its capacity as monitor (the "**Monitor**") in the Canadian Proceedings (defined below) of the Canadian Debtors, and

(m)     The Creditors' Committee (as defined below).

The Canadian Debtors, the US Debtors, the EMEA Debtors, the EMEA Liquidation Debtors, NNSA, the Non-Filed Entities, the Joint Administrators, the Joint Liquidators, the NNSA Office Holder, the EMEA NFEs, the Monitor and the Creditors' Committee are referred to herein each as a "**Party**" and collectively as the "**Parties**". The Canadian Debtors, the US Debtors, the EMEA Debtors, the EMEA Liquidation Debtors, NNSA, the EMEA NFEs, and the Non-Filed Entities are referred to herein each as a "**Nortel Party**" and collectively as "**Nortel**" or the "**Nortel Parties**". The Joint Administrators and the Joint Liquidators, in their respective personal capacities, shall be party to this Agreement as provided in **Sections 8.5** and **8.6** respectively and solely for the purpose of obtaining the benefit of the provisions of this Agreement expressed to be conferred on or given to them and references to the Parties shall be construed accordingly.

## RECITALS:

**WHEREAS**, on January 14, 2009 (the "**Filing Date**"), the Canadian Debtors commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**") under the Companies' Creditors Arrangement Act (Canada), in connection with which Ernst & Young Inc. was appointed as Monitor (the "**Canadian Proceedings**"); and

**WHEREAS**, on the Filing Date, the US Debtors (other than Nortel Networks (CALA) Inc., whose filing date was July 14, 2009) filed petitions in the United States Bankruptcy Court for the District of Delaware (the "**US Court**" and, together with the Canadian Court, the "**Courts**") under chapter 11 of title 11 of the United States Code, (the "**US Proceedings**") and the official committee of unsecured creditors (the "**Creditors' Committee**") was appointed in such proceedings by the US Court on January 22, 2009; and

**WHEREAS**, on the Filing Date, NNUK, NNIR, NNSA and the other EMEA Debtors commenced administration proceedings before the High Court of Justice in London, England,

represented by individuals from Ernst & Young LLP, and, in the case of NNIR only, Ernst & Young Chartered Accountants, serving as administrators in such proceedings; and

**WHEREAS**, on April 28, 2010, NNNIR commenced a members' voluntary liquidation with individuals from Ernst & Young LLP serving as liquidators in such liquidation; and

**WHEREAS**, on July 29, 2011, NNOCL commenced a creditors' voluntary liquidation with individuals from Ernst & Young LLP serving as liquidators in such liquidation; and

**WHEREAS**, while the administration proceedings in respect of NNSA under the United Kingdom Insolvency Act 1986 are continuing, subsequent to the Filing Date, NNSA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which the NNSA Office Holder and Maître Franck Michel were appointed by the Versailles Commercial Court (Docket No. 2009P00492) for NNSA (the **"NNSA Secondary Proceedings"**); and

**WHEREAS**, as of the date hereof, the Non-Filed Entities and the EMEA NFEs are not subject to any insolvency, bankruptcy or other creditor protection proceedings; and

**WHEREAS**, subsequent to the Filing Date, Nortel, in consultation with its various creditor constituencies, determined to divest its various businesses and assets to third party buyers (each such sale as listed on **Schedule 7** hereof, a **"Global Sale"**); and

**WHEREAS** the Global Sales have now been completed and the net proceeds (the **"Sale Proceeds"**) of the Global Sales have been or will be deposited into various escrow accounts pursuant to various escrow agreements (the **"Global Sales Escrow Agreements"**) executed in connection with the Global Sales; and

**WHEREAS** certain of the Non-Filed Entities and the EMEA NFEs are "Sellers" under the various Global Sales and "Depositors" under certain of the Global Sales Escrow Agreements, as listed on **Schedule 8** attached hereto, (the **"Escrow Agreements"**, and the related escrow accounts the **"Escrow Accounts"**); and

**WHEREAS** various of the Parties, together with certain creditor constituencies, have entered into negotiations with respect to the resolution of the allocation of Sale Proceeds among the Sellers; and

**WHEREAS** pursuant to various settlements, all applicable escrow agreements have been amended to remove all references to each of o.o.o. Nortel Networks, Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Ltd. as Depositors, such that none of those entities shall have any further rights or obligations under such escrow agreements and/or the rights and obligations of those entities under such Escrow Agreements have been assigned to certain of the Parties; and

**WHEREAS** pursuant to an order of the Canadian Court and the US Court, any term or condition of the MEN Distribution Escrow Agreement entered into as of March 19, 2010 that

3

explicitly or implicitly requires the consent or participation of Nortel Networks de Colombia S.A. is now forever deemed not to require such consent or participation; and

**WHEREAS** the Parties wish to agree upon the aggregate allocation of Sale Proceeds attributable to the Non-Filed Entities on the terms and conditions set out herein and resolve certain other issues outstanding among them; and

**WHEREAS** the Parties further wish to settle and resolve various amounts and balances in respect of outstanding amounts owing among the Non-Filed Entities, *inter se*, or between a Non-Filed Entity and any other Nortel Party;

NOW THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED, THE PARTIES HEREBY AGREE AS FOLLOWS:

## ARTICLE I — ALLOCATION OF SALE PROCEEDS

1.1    **Allocation to the Non-Filed Entities**

(a)    In full and final settlement of the claims of the Non-Filed Entities to the allocation of any Sale Proceeds, each of the Non-Filed Entities shall be entitled to an allocation of the Sale Proceeds in the amounts set forth on **Appendix A** attached hereto (each, a **"Settlement Share"**), which amounts for all the Non-Filed Entities aggregate to US$44,900,000 (the **"Settlement Amount"**).    The Settlement Amount shall be drawn from the various Escrow Accounts as indicated on **Appendix A**.

1.2    Each Party acknowledges and agrees that, upon the Escrow Release Trigger Date (as defined below):

(a)    JPMorgan Chase Bank, N.A., in its capacity as the distribution agent for the Escrow Accounts and the Intermediate Distribution Account (as defined below) (the **"Escrow Agent"**), will be authorized and directed by the applicable Depositors and the Estate Fiduciaries (as defined in the Escrow Agreements) (the Depositors and the Estate Fiduciaries collectively, the **"Escrow Parties"**) to (i) establish a non-interest bearing intermediate distribution account (the **"Intermediate Distribution Account"**), (ii) withdraw the Settlement Amount from the Escrow Accounts in accordance with **Appendix A** and deposit it in the Intermediate Distribution Account, and (iii) disburse the Settlement Amount from the Intermediate Distribution Account to the Non-Filed Entities and those other Nortel Parties receiving Net Cash Balance Payments (as defined below) (each such entity, an **"Intercompany Creditor"** and, collectively with the Non-Filed Entities receiving distributions hereunder, the **"Settlement Payment Parties"**) in the amounts indicated on **Appendix B** attached hereto (each amount to be transmitted to a Settlement Payment Party, as may be adjusted in accordance with **Section 3.5** hereof, an **"Aggregate Settlement Share"**), which disbursements

4

shall, in the case of those made to Intercompany Creditors, satisfy the Net Cash Balance Payments.

(b)    Each Party acknowledges and agrees that withdrawals by the Escrow Agent from the Escrow Accounts and the transmission by the Escrow Agent of the Aggregate Settlement Shares shall be made in accordance with the Escrow Release Instructions described in **Sections 6.2** and **6.3** hereof.

(c)    Upon transmission by the Escrow Agent of all Aggregate Settlement Shares to each of the relevant Settlement Payment Parties (the date of such transmission, the **"Escrow Release Effective Date"**), the Escrow Agent shall have no further obligation or liability to the Parties for the allocation or division of the Settlement Amount among the Nortel Parties.

## ARTICLE II — FULL AND FINAL SETTLEMENT

2.1    The Parties hereby acknowledge and agree that **Appendix C-1** hereto lists both the pre-filing and post-filing intercompany payables and receivables among the Non-Filed Entities, inter se, and between a Non-Filed Entity and any other Nortel Party, as of September 30, 2011. The Parties further acknowledge and agree that, upon the Escrow Release Effective Date, (a) the pre-filing amounts set out in **Appendix C-1** under the heading "Net pre-filing balance as at September 30, 2011", are deemed partially or wholly satisfied to the extent paid through Net Cash Balance Payments as set forth on **Appendix C-1**, or to the extent otherwise paid under this Agreement; (b) the pre-filing amounts set out in **Appendix C-1** under the heading "Remaining Pre-filing balance", as such amounts may have been reduced by payments made after September 30, 2011, including, without limitation, the payments specified on **Appendix C-2** hereto, shall supersede (i) any amounts reflected in the schedules filed by the US Debtors in the US Proceedings with respect to pre-filing amounts owed to any Non-Filed Entity, (ii) any proofs of claim relating to a pre-filing Claim (as defined below) that have been or could have been filed by or on behalf of the Non-Filed Entities or any of their predecessors, successors and assigns, each in such capacities, in the US Proceedings, (iii) any assertion or allegation of a pre-filing Claim which any of the Non-Filed Entities or any of their predecessors, successors, and assigns, each in such capacities, may have against the Canadian Debtors whether filed pursuant to the Canadian Debtors' various claims procedures or otherwise, (iv) any assertion or allegation of a pre-filing Claim which any of the Non-Filed Entities or any of their predecessors, successors, and assigns, each in such capacities, may have against the EMEA Debtors whether filed pursuant to the EMEA Debtors' informal claims procedure or otherwise which could be the subject of a proof of claim in the administration or any subsequent insolvency process of the EMEA Debtors, and (v) any assertion or allegation of a pre-filing Claim which any of the Non-Filed Entities or any of their predecessors, successors, and assigns, each in such capacities, may have against NNSA in the administration proceedings whether filed pursuant to the EMEA Debtors' informal claims procedure or otherwise which could be the subject of a proof of claim in the administration or any subsequent insolvency process of NNSA, *provided that* any pre-filing Claim that has been or could have been filed by or on behalf of the Non-Filed Entities or any of their predecessors, successors, and assigns

in the NNSA Secondary Proceedings shall not be affected by this Agreement and shall only be admitted for proof in the NNSA Secondary Proceedings in the amount accepted by the NNSA Office Holder in the formal proof of debt process in the NNSA Secondary Proceedings (the "**NNSA Proof Process**") (as such amount may be adjusted in accordance with the applicable French law) and not to the extent any such pre-filing Claim has been rejected or disallowed or not previously filed or declared in such proceedings; (c) the post-filing amounts set out in **Appendix C-1** under the heading "Net post-filing position as at September 30, 2011", as such amounts may have been reduced by payments made after September 30, 2011, including, without limitation, the payments specified on **Appendix C-2** hereto, shall supersede (i) any proofs of claim relating to a post-filing Claim arising prior to September 30, 2011 that have been or could have been filed by or on behalf of the Non-Filed Entities or any of their predecessors, successors and assigns, each in such capacities, in the US Proceedings, (ii) any assertion or allegation of a post-filing Claim arising prior to September 30, 2011 which any of the Non-Filed Entities or any of their predecessors, successors and assigns, each in such capacities, may have against the Canadian Debtors whether filed pursuant to the Canadian Debtors' various claims procedures or otherwise, (iii) any assertion or allegation of a post-filing Claim arising prior to September 30, 2011 which any of the Non-Filed Entities or any of their predecessors, successors and assigns, each in such capacities, may have against the EMEA Debtors whether filed pursuant to the EMEA Debtors' informal claims procedure or otherwise which could be the subject of a proof of claim in the administration or any subsequent insolvency process of the EMEA Debtors and (iv) any assertion or allegation of a post-filing Claim arising prior to September 30, 2011 which any of the Non-Filed Entities or any of their predecessors, successors and assigns, each in such capacities, may have against NNSA in the administration proceeding whether filed pursuant to the EMEA Debtors' informal claims procedure or otherwise which could be the subject of a proof of claim in the administration or any subsequent insolvency process of NNSA, *provided that* any post-filing Claim that has been or could have been filed by or on behalf of the Non-Filed Entities or any of their predecessors, successors, and assigns in the NNSA Secondary Proceedings shall not be affected by this Agreement and shall only be admitted for proof in the NNSA Secondary Proceedings in the amount accepted by the NNSA Office Holder in the NNSA Proof Process (as such amount may be adjusted in accordance with applicable French law) and not to the extent any such post-filing Claim has been rejected or disallowed or not previously filed or declared in such proceedings; (d) that all such schedules, proofs of claim and allegations or assertions of such pre-filing and post-filing Claims are hereby (i) deemed amended such that they are superseded by the amounts set forth on **Appendix C-1** under the headings "Remaining pre-filing balance" and "Net post-filing position as at September 30, 2011", as the case may be, which shall be the only amounts owed by the US Debtors, the Canadian Debtors, the EMEA Debtors or NNSA to the Non-Filed Entities with respect to such Claims, and (ii) deemed (as so amended) approved, agreed, allowed or admitted (as applicable) in the amounts set forth on **Appendix C-1**, and otherwise deemed disallowed or rejected, *provided, however*, in each case, as such amounts on **Appendix C-1** are subject to reduction by payments made after September 30, 2011 including, without limitation, the payments specified on **Appendix C-2**, *provided, further, however*, in each case, that such pre-filing and post-filing Claims that

have been or could have been filed by or on behalf of the Non-Filed Entities or any of their predecessors, successors, and assigns in the NNSA Secondary Proceedings shall not be affected by this Agreement and shall only be admitted for proof in the NNSA Secondary Proceedings in the amount accepted by the NNSA Office Holder in the NNSA Proof Process (as such amount may be adjusted in accordance with applicable French law) and not to the extent any such post-filing Claim has been rejected or disallowed or not previously filed or declared in such proceedings, and *provided*, *further*, that nothing in this **Section 2.1** is intended to waive or release any Surviving Obligation (as defined below) or the US Estate Carve-Out (as defined below); and (e) that none of the Canadian Debtors, EMEA Debtors, US Debtors or other Nortel Parties will make, join or support in any objection to or rejection of all or any portion of the pre-filing and post-filing Claims in the amounts set forth on **Appendix C-1** or make, propose, file or support any plan, scheme of arrangement, or other arrangement, appeal, application, or request for relief in any court that is inconsistent with this Agreement.

2.2     In consideration of the obligations, covenants and rights of the Parties set forth in this Agreement, the Parties hereby agree that, upon transmission by the Escrow Agent of all Aggregate Settlement Shares to each of the relevant Settlement Payment Parties, this Agreement shall constitute a full and final settlement of any and all Claims (a) by the Non-Filed Entities as against the Releasees (as defined below) and (b) by each of the Parties to this Agreement as against the NFE Releasees (as defined below) in each case, up to the date of this Agreement, except for (i) the pre-filing amounts set forth on **Appendix C-1** under the heading "Remaining pre-filing balance", as such amounts may have been reduced by payments made after September 30, 2011, including, without limitation, the payments specified on **Appendix C-2** hereto, which for the avoidance of doubt constitutes only a partial and non-exhaustive listing of such payments (the **"Remaining Balances"**); (ii) the post-filing amounts set forth on **Appendix C-1** under the heading "Net post-filing position as at September 30, 2011", as such amounts may have been reduced by payments made after September 30, 2011, including, without limitation, the payments specified on **Appendix C-2** hereto, which for the avoidance of doubt constitutes only a partial and non-exhaustive listing of such payments, or increased by obligations arising in the ordinary course of business through the trading of goods or the provision of services occurring on or after October 1, 2011; (iii) obligations set forth on **Appendix C-3**; (iv) obligations arising under the APAC Restructuring Agreement (as defined below) as amended hereby; and (v) obligations arising under this Agreement ((i) through (v), collectively, the **"Surviving Obligations"**) and subject to the US Estate Carve-Out (as defined below).

## ARTICLE III — APAC RESTRUCTURING AGREEMENT AMENDMENTS AND RELATED MATTERS

3.1     Each Party hereto that is also a "Party" to the Asia Restructuring Agreement dated as of November 5, 2009 (the **"APAC Restructuring Agreement"**) among the Canadian Debtors, the US Debtors, the EMEA Debtors, NNSA, and the APAC Entities signatory thereto (collectively, the **"APAC Restructuring Agreement Parties"**) acknowledges and agrees that the APAC Restructuring Agreement shall remain in full force and effect

7

following the consummation of the transactions contemplated herein, except as expressly amended by this Agreement.

3.2     Upon transmission by the Escrow Agent of all Aggregate Settlement Shares to each of the relevant Settlement Payment Parties, the APAC Restructuring Agreement Parties acknowledge and agree that the APAC Debtors (as defined in the APAC Restructuring Agreement, the "**APAC Debtors**") have, to date, fully satisfied their obligations under **Sections 10** and **11** of the APAC Restructuring Agreement and that (i) such APAC Debtors shall have no further obligations under **Sections 10** and **11** of the APAC Restructuring Agreement, (ii) the obligations of such APAC Debtors to provide security interests in Collateral (as defined in the APAC Restructuring Agreement) in accordance with Section 13(c) of the APAC Restructuring Agreement shall be terminated and be of no further force and effect and (iii) (v) the Collateral Agency Agreement by and between the APAC Restructuring Agreement Parties, dated as of December 24, 2009, (w) the Security Agreement by and between certain APAC Entities and NNI, as Collateral Agent, dated as of December 24, 2009, (x) the Debenture by and between Nortel Networks (Asia) Limited as "Chargor" and NNI as "Chargee", dated as of December 24, 2009, (y) the Debenture by and between Nortel Networks Singapore Pte Ltd as "Chargor" and NNI as "Chargee", dated as of December 24, 2009, and (z) the General Security Deed by and between Nortel Networks New Zealand Limited and NNI as Secured Party, dated as of December 24, 2009, shall in each case be terminated and be of no further force and effect, and any and all security interests or liens on Collateral (as defined in the APAC Restructuring Agreement) pledged or granted thereunder shall be released.    In connection with the foregoing, the APAC Restructuring Agreement Parties agree to execute such documents and instruments as may be reasonably requested by any such APAC Debtor for the purpose of releasing or evidencing the termination of any security interest imposed on the assets of such APAC Debtor in accordance with Section 13(c) of the APAC Restructuring Agreement.

3.3     Each APAC Restructuring Agreement Party acknowledges and agrees that all payments as set forth under the heading "4th Estate Settlement Net Cash Balance Payments" on **Appendix C-1** and as effected through **Section 1.2(a)** hereof, as may be adjusted in accordance with **Section 3.5** hereof (such payments, collectively, the **"Net Cash Balance Payments"**), made by an APAC Debtor represents payment of Net Cash Balances (as defined in the APAC Restructuring Agreement) on account of Subsequent Payment Amounts (as defined in the APAC Restructuring Agreement) in accordance with the APAC Restructuring Agreement.    Each APAC Restructuring Agreement Party acknowledges and agrees that the intercompany balances outstanding as of September 30, 2011 and the amounts of such Net Cash Balance Payments with respect to each APAC Restructuring Agreement Party are as set forth on **Appendix C-1**.    Each APAC Restructuring Agreement Party also acknowledges and agrees that, upon receipt of the Net Cash Balance Payments, the Remaining Balances related to such APAC Debtor are the outstanding balances of Pre-Filing Intercompany Debt (as defined in the APAC Restructuring Agreement).

3.4     Each APAC Restructuring Agreement Party acknowledges and agrees that execution of this Agreement (or with respect to the Bondholder Group (as hereinafter defined), the

8

delivery of a consent thereto) shall constitute prior written consent of the APAC Restructuring Agreement Parties, the Monitor, the Creditors' Committee, the Bondholder Group and the Joint Administrators to the APAC Restructuring Agreement Parties' entry into this Agreement, the performance of their obligations hereunder and all payments made and actions taken in accordance herewith.

3.5    **Post-Execution Claims against APAC Debtors**

(a)    In the event that any APAC Debtor (a **"Designated APAC Debtor"**) making a Net Cash Balance Payment becomes aware of a claim after the date hereof but prior to the Effective Date (each such claim, a **"Post-Execution Claim"** and, collectively, the **"Post-Execution Claims"**) and (i) such Designated APAC Debtor had no knowledge of such claim prior to the date hereof, (ii) the Board of Directors of such Designated APAC Debtor determines in good faith that such Post-Execution Claim, either individually or in the aggregate with other Post-Execution Claims of such APAC Debtor, could give rise to a liability greater than the lesser of (x) US$1,000,000 and (y) ten percent (10%) of the working capital requirement reserve of such APAC Debtor as set out in the December 16, 2011 Restructuring Manager's Report, and (iii) the Board of Directors of the Designated APAC Debtor determines in good faith that a reduction of the Net Cash Balance Payment (the amount of such reduction being the **"Reduction Amount"**) to be paid by the Designated APAC Debtor to its Intercompany Creditors hereunder (each an **"Affected Creditor"**) is necessary to adequately reserve for such Post-Execution Claim(s), such Designated APAC Debtor shall (x) promptly, and in no event later than the Effective Date, provide written notice of such Post-Execution Claim to each Party, including sufficient detail regarding the nature of the Post-Execution Claim for each Party to understand the basis for the need to reserve additional funds and the quantum of the Reduction Amount and (y) use commercially reasonable efforts to mitigate the Post-Execution Claim and reduce the Reduction Amount.

(b)    Upon the delivery of such notice, the Parties agree that (i) the Reduction Amount shall not be transmitted to any Affected Creditor but shall instead be transmitted to such Designated APAC Debtor and (ii) **Appendix B** and **Appendix C-1** hereto shall be amended to reflect the changes resulting from the preceding clause (i), including (x) the decrease in the Net Cash Balance Payments by the Designated APAC Debtor to its Affected Creditors and any resulting decreases (each, an **"Echo Decrease"**) in Net Cash Balance Payments payable by an Affected Creditor that is also an APAC Debtor (an **"Affected Creditor APAC Debtor"**) to its Intercompany Creditors (an **"Echo Affected Creditor"** and, with the Affected Creditors, the **"Affected Intercompany Creditors"**), (y) the increase in the Remaining Balances owing by the Designated APAC Debtor or the Affected Creditor APAC Debtor to their respective Affected Intercompany Creditors (such increased Remaining Balances to be governed by the provisions of the APAC Restructuring Agreement, as amended hereby) and (z) the decrease in the Aggregate Settlement Share payable to an Affected Intercompany Creditor; *provided that*, to the extent any Post-Execution Claim is mitigated in whole or in

9

part, the mitigation amounts shall be included in the Designated APAC Debtor's next subsequent calculation of its Net Cash Balance and shall be treated in accordance with the provisions of the APAC Restructuring Agreement; *provided*, *further*, that any Affected Intercompany Creditor which has its Aggregate Settlement Share reduced pursuant to this **Section 3.5** by an amount that is equal to or greater than the greater of (x) $1,000,000 and (y) twenty percent (20%) of such Affected Intercompany Creditor's initial Aggregate Settlement Share shall have the right to terminate this Agreement prior to the Escrow Release Effective Date by providing written notice to each of the other Parties hereto, whereupon this Agreement shall terminate and each Party shall have no further rights or obligations hereunder. The Parties agree that the reduction in Net Cash Balance Payments resulting from any Reduction Amount or Echo Decrease shall be borne by the respective Affected Intercompany Creditors of such Designated APAC Debtor or Affected Creditor APAC Debtor on a pro rata basis based on each such Affected Intercompany Creditor's share of the total Net Cash Balance Payments to be made by the applicable Designated APAC Debtor or Affected Creditor APAC Debtor, with each Affected Intercompany Creditor's Aggregate Settlement Share being reduced accordingly.

## ARTICLE IV — RELEASES

4.1    **Release**

(a)    Upon transmission by the Escrow Agent of all Aggregate Settlement Shares to each of the relevant Settlement Payment Parties, each of the Non-Filed Entities releases each of the other Parties to this Agreement and each of their respective directors, officers, employees, agents, attorneys, advisors, predecessors, successors and assigns (collectively, the **"Releasees"**) from (x) any and all claims, rights, debts, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, whether sounding in contract, tort or otherwise (collectively, **"Claims"**), that such Non-Filed Entity now has, had, or may have against any of the Releasees up to the date of this Agreement other than the Surviving Obligations, including, without limitation, (i) in respect of Sale Proceeds, (ii) in respect of proceeds of sale arising from any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates including, without limitation, the transactions identified on **Schedule 9** hereto; (iii) obligations arising under that certain CDMA/LTE China Side Agreement entered into as of November 2, 2009 by and between Nortel Networks (China) Limited, NNL and NNI, and (iv) obligations arising under that certain Offer in connection with the payment of certain Sale Proceeds to Nortel Networks de Argentina S.A., dated as of March 19, 2010, and (y) any and all Claims in respect of any proceeds of sale of any future divestiture of assets by or on behalf of a Nortel Party or any of its affiliates other than those in which such Non-Filed Entity participates (collectively, the **"Released Claims"**) and agrees that it shall not allege, file or

otherwise assert any Released Claim against the Releasees or the Escrow Agent, or any of them, including in respect of an entitlement to or the allocation of Sale Proceeds or any other proceeds of sale in connection with any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates that has occurred or that may occur, or allege, file or otherwise assert a Claim against either the Releasees or any person which could result in a claim over or right of contribution or indemnity against any of the Releasees in respect of the Released Claims or that could otherwise impact upon a Releasee's entitlement to or the allocation of Sale Proceeds or any other proceeds of sale in connection with any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates that has occurred or that may occur; *provided, however*, that notwithstanding the foregoing, each of Nortel Networks Kabushiki Kaisha, Nortel Technology Excellence Centre Private Ltd., Nortel Networks de Guatemala, Ltda. and Nortel Trinidad and Tobago Limited (each a **"NFE US Subsidiary"**, and collectively the **"NFE US Subsidiaries"**) does not hereby release any Claims against any US Debtor other than (i) Claims in respect of Sale Proceeds, (ii) Claims in respect of any other proceeds of sale in connection with any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates and (iii) Claims which could otherwise impact a US Debtor's entitlement to or the allocation of Sale Proceeds or any other proceeds of sale in connection with any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates (such retained Claims, the **"NFE US Subsidiary Carve-out"**).  Upon transmission by the Escrow Agent of all Aggregate Settlement Shares to each of the relevant Settlement Payment Parties, each of the Non-Filed Entities agrees that it shall be prohibited from participating in any court proceeding, mediation, arbitration or other proceeding or discussion to resolve the allocation of Sale Proceeds or any other proceeds of sale in connection with any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates that has occurred or that may occur.

(b)     Upon transmission by the Escrow Agent of all Aggregate Settlement Shares to each of the relevant Settlement Payment Parties, each of the Parties to this Agreement releases each of the Non-Filed Entities and each of their respective directors, officers, employees, agents, attorneys, advisors, predecessors, successors and assigns (the **"NFE Releasees"**) from any and all Claims that such Party now has, had or may have had against any of the NFE Releasees up to the date of this Agreement other than the Surviving Obligations, including, without limitation, (i) in respect of Sale Proceeds, (ii) obligations arising under that certain CDMA/LTE China Side Agreement entered into as of November 2, 2009 by and between Nortel Networks (China) Limited, NNL and NNI, and (iii) obligations arising under that certain Offer in connection with the payment of certain Sale Proceeds to Nortel Networks de Argentina S.A., dated as of March 19, 2010; *provided, however*, that notwithstanding the foregoing, each of the US Debtors does not hereby release any Claims against any NFE US Subsidiary other than Claims in respect of Sale Proceeds (such retained Claims, the **"US Debtor Carve-out"**, and together with the NFE US Subsidiary Carve-out, the **"US Estate Carve-out"**).  For the avoidance of doubt, the release provided in this **Section 4.1(b)** shall not impact the rights of the Parties against those Non-Filed Entities of

11

which they are a holder of shares, stock, or other equity interests to the extent arising from the holding of such shares, stock or other equity interests in a Non-Filed Entity.

(c)     For the avoidance of doubt, nothing in this Agreement constitutes a waiver of the Canadian Debtors', the US Debtors', the EMEA Debtors', NNSA's, the EMEA Liquidation Debtors', the EMEA NFEs', the Joint Administrators' (as joint administrators of the EMEA Debtors and NNSA), the Joint Liquidators' or the NNSA Office Holder's right to pursue, allege, file or otherwise assert any and all Claims that such Party now has, had or may have had against any Party other than the NFE Releasees, including any claims in which the NFE Releasees may be or have been jointly, severally or concurrently liable with another Party, nor shall it constitute a waiver of any Party's right to defend, disallow or dispute any such Claims.

4.2     Notwithstanding anything to the contrary in this Agreement, each of the Non-Filed Entities covenants and agrees, if requested to do so, to enter into any license termination agreement with respect to the licenses and rights granted by other Nortel Parties for no further consideration; *provided that*, such Non-Filed Entity shall, in exchange for such license termination, receive a sublicense from the relevant Nortel Party that provides reasonably equivalent rights to the terminated licenses and rights.

## ARTICLE V — REPRESENTATIONS AND WARRANTIES

### 5.1     Representations and Warranties of the Parties

Subject to satisfaction of the Conditions (as defined below), each Party (but not, for the avoidance of doubt, the Joint Administrators, the Joint Liquidators or the NNSA Office Holder in their personal capacities) hereby severally represents and warrants to each other that, as of the date hereof:

(a)     it has the power and authority to enter into this Agreement and to carry out its obligations hereunder;

(b)     the execution of this Agreement, and the consummation of the transactions contemplated herein, have been authorized by all necessary approvals, and no other act or proceeding on its part is necessary to authorize the execution of this Agreement; and

(c)     this Agreement has been duly executed by it and constitutes a legal, valid and binding obligation of such Party that is enforceable against it under all applicable laws and regulations.

### 5.2     Representations and Warranties of the APAC Restructuring Agreement Parties

(a)     Each of the APAC Restructuring Agreement Parties (but not, for the avoidance of doubt, the Joint Administrators, the Joint Liquidators or the NNSA Office Holder

in their personal capacities) severally represents and warrants to each other and to the other Parties that, upon approval by the Canadian Court and the US Court, this Agreement will have been approved in accordance with the terms of the APAC Restructuring Agreement, and the APAC Restructuring Agreement Parties' execution of this Agreement and the performance of their obligations hereunder will not constitute a violation of any of the provisions of the APAC Restructuring Agreement.

5.3     **Representations and Warranties of the APAC Debtors**

(a)     Each of the APAC Debtors severally represents and warrants to the APAC Restructuring Agreement Parties that the Net Cash Balance Payments made by it hereunder are payments of Net Cash Balances for the purposes of the APAC Restructuring Agreement.

(b)     Each of the APAC Debtors severally represents and warrants to each other and to the other Parties that, as of the date hereof, each Net Cash Balance Payment made by it hereunder as described on **Appendix C-1** does not violate any foreign exchange control or other regulation, statute, rule or legal limitation applicable to the making of such Net Cash Balance Payment.

## ARTICLE VI — COVENANTS TO EXECUTE ESCROW AMENDMENTS AND RELEASE INSTRUCTIONS

6.1     Each of the Escrow Parties, the NNSA Office Holder, the Joint Administrators (acting on behalf of the EMEA Debtors and NNSA (as applicable)) and the Joint Liquidators (acting on behalf of the EMEA Liquidation Debtors (as applicable)) covenants and agrees to execute and deliver, no later than ten Business Days after the Effective Date (as defined below), an amendment, substantially in the form attached hereto as **Appendix E**, to each Escrow Agreement as necessary to remove all references to each of the Non-Filed Entities as a Depositor (as such term is defined in such Escrow Agreements) or otherwise, such that upon transmission by the Escrow Agent of all Aggregate Settlement Shares to each of the relevant Settlement Payment Parties none of the Non-Filed Entities shall have any further rights or obligations under such Escrow Agreement (the "**Escrow Amendments**"), and that any term or condition of an Escrow Agreement that explicitly or implicitly requires the consent or participation of a Non-Filed Entity shall be forever deemed not to require such consent or participation.  For the avoidance of doubt, the Parties agree that the Escrow Agent is authorized to take all acts requiring the unanimous direction of the Depositors under the Escrow Agreements without the consent or participation of the Non-Filed Entities.

6.2     Each of the Escrow Parties covenants and agrees, no later than ten Business Days after the Effective Date, to execute and deliver to the Escrow Agent an escrow release instruction (each an "**Escrow Account Release Instruction**"), the form of which is attached hereto as **Appendix F**, directing the Escrow Agent to withdraw the Settlement Amount from each Escrow Account relating to each Escrow Agreement to which it is a

13

party and for the Escrow Agent to deposit the Settlement Amount in the Intermediate Distribution Account.

6.3 Each of the Escrow Parties covenants and agrees, no later than ten Business Days after the Effective Date, to execute and deliver to the Escrow Agent an escrow release instruction (the "**Intermediate Distribution Account Release Instruction**" and together with the Escrow Account Release Instructions, the "**Escrow Release Instructions**"), the form of which is attached hereto as **Appendix G**, directing the Escrow Agent to transmit the Aggregate Settlement Share from the Intermediate Distribution Account to the Settlement Payment Parties in accordance with **Appendix B** attached hereto (the date on which all obligations of each of the specified Parties under **Sections 6.1, 6.2** and **6.3** have been satisfied, the "**Escrow Release Trigger Date**").

6.4 Without limiting those obligations in **Sections 6.1, 6.2,** and **6.3**, each of the Parties covenants and agrees to use commercially reasonable efforts to effect the outcomes described in **Sections 6.1, 6.2,** and **6.3** above including, without limitation, promptly executing and delivering any further documentation that may be required by the Escrow Agent.

6.5 For the purpose of this Article VI, "**Business Day**" shall mean a day that is not a Saturday, Sunday or national public holiday in Canada, the United States or any part of the United Kingdom

## ARTICLE VII — CONDITIONS TO EFFECTIVENESS

7.1 **Court Approval and Delivery of Release**

(a) No provision of this Agreement except the provisions of this **Article VII** and **Article VIII** shall be effective until the satisfaction of all of the following conditions in this **Section 7.1(a)** (each, a "**Condition**" and collectively, the "**Conditions**", and the date of the satisfaction of all Conditions, the "**Effective Date**"):

(i) the Canadian Court shall have granted an order approving the entirety of this Agreement and all provisions hereof including, without limitation, the amendments to the APAC Restructuring Agreement contemplated herein, and such order shall have become final and non-appealable;

(ii) the US Court shall have granted an order approving the entirety of this Agreement and all provisions hereof including, without limitation, the amendments to the APAC Restructuring Agreement contemplated herein, and such order shall have become final and non-appealable; and

(iii) Nortel Networks del Paraguay S.A. shall have executed and delivered (i) the Full and Final Acknowledgement and Release (Paraguay) to the Nortel Parties, the form of which is attached hereto as **Appendix H** and (ii) its signature pages to the Escrow Amendment, the Escrow Account Release

14

Instructions for the Escrow Account of which it is a Depositor and the Intermediate Distribution Account Release Instruction.

(b)  The Canadian Debtors and the US Debtors (as applicable) shall:

(i)  use commercially reasonable efforts to satisfy the Conditions set forth in **Sections 7.1(a)(i)** and **7.1(a)(ii)** above in their respective Courts as soon as possible, taking into account the availability of the respective Courts to address the matters set forth in this Agreement; and

(ii)  keep all other Parties and counsel and financial advisors to the ad hoc committee of bondholders (the "**Bondholder Group**") reasonably apprised of the progress of the satisfaction of the Conditions and provide such other information regarding the satisfaction of the Conditions as reasonably requested by other Parties.

(c)  Each Party hereto shall not oppose the reasonable participation of any other Party or the Bondholder Group in connection with any proceedings in any Court related to the satisfaction of the Conditions to the extent such entity does not already have standing.

## ARTICLE VIII — MISCELLANEOUS

### 8.1  Reservation of Rights

(a)  The Parties hereby acknowledge and agree that they are entering into this Agreement for settlement purposes only and nothing herein or the actions taken as a result hereof shall constitute an acknowledgment or admission as to the correct methodology for determining allocation of the Sale Proceeds of a particular Global Sale or the proceeds of any other transaction, including, without limitation, the sale of assets, business or intellectual property, that could be subject to allocation among any of the Parties or their affiliates, and shall not constitute an amendment, modification or waiver of rights of any Party (other than by or with respect to the Non-Filed Entities) or bar, prohibit, terminate or in any way hinder or enhance the rights of the Parties to this Agreement (other than by or with respect to the Non-Filed Entities) to present any arguments, methodologies, legal or factual theories in support of a proposed allocation of the Sale Proceeds or the proceeds of any other transaction, including, without limitation, the sale of assets, business or intellectual property, that could be subject to allocation amongst any of the Parties or their affiliates, and such presentation shall not, or otherwise be deemed to, constitute in any way a violation of a Party's rights under any existing agreement.  The Parties agree that no Party shall use as evidence, or otherwise rely upon, this Agreement or any part hereof (including, without limitation, the amount and/or payment of the Settlement Amount or a Party's Settlement Share) in any way to support its right to a particular allocation of the Sale Proceeds or any other sale proceeds.

(b)     The Parties hereby acknowledge and agree that, in the event the Escrow Release Effective Date does not occur or the Agreement is terminated pursuant to **Section 3.5**, nothing in this Agreement, including without limitation the provisions of **Section 2.1** hereof, shall constitute an acknowledgment, admission, amendment, modification or waiver of claims governed by this Agreement or any other rights or obligations of the Parties.

8.2     **Governing Law and Jurisdiction**

(a)     This Agreement shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

(b)     To the fullest extent permitted by applicable law, each Party (i) agrees to submit to the jurisdiction of the US and Canadian Courts (including for purposes of a joint hearing conducted under the cross-border insolvency protocol, as amended and as the same may be further amended, approved by the US and Canadian Courts in their respective proceedings (the "**Cross-Border Protocol**")), for purposes of all legal proceedings to the extent relating to the matters agreed in this Agreement; (ii) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever to the extent relating to the matters in this Agreement must be commenced in (v) a joint hearing of both the Canadian and US Courts conducted under the Cross-Border Protocol if such claim, action or proceeding would affect any of the Canadian Debtors and any of the US Debtors, (w) the US Court for any claim, action or proceeding if such claim, action or proceeding would affect the US Debtors and not affect the Canadian Debtors, (x) the Canadian Court if such claim, action or proceeding would affect the Canadian Debtors, but not affect the US Debtors, (y) the courts of England and Wales if such claim, action or proceeding would affect the main administration proceedings of NNSA any of the EMEA Debtors or the Joint Administrators (including as joint administrators of NNSA) and any of the EMEA Liquidation Debtors or the Joint Liquidators, but not affect the US Debtors or the Canadian Debtors, or (z) the courts of France if such claim, action or proceeding would affect the NNSA Office Holder or the NNSA Secondary Proceedings but not any of the EMEA Debtors, the Joint Administrators, the EMEA Liquidation Debtors, the Joint Liquidators, the US Debtors or the Canadian Debtors; (iii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such action brought in such a court or any claim that any such action brought in such a court has been brought in an inconvenient forum; (iv) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by law shall be valid and sufficient service thereof; and (v) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.

8.3    **Amendments**

This Agreement may be amended, by means of a written amendment signed by all Parties, which amendments, if material, must be approved by the US Court and the Canadian Court.

8.4    **Counterparts**

This Agreement may be executed in separate counterparts (which may include counterparts delivered by facsimile or other electronic transmission) and all of said counterparts taken together shall be deemed to be an original and shall be binding on the Party who signed the counterpart and all of which together shall constitute a single agreement.

8.5    **Joint Administrators and NNSA Office Holder**

(a)    The Parties agree that the Joint Administrators and the NNSA Office Holder have negotiated and are entering into this Agreement as agents for the EMEA Debtors to which they are appointed and NNSA (as applicable) and that none of the Joint Administrators or the NNSA Office Holder, their respective firms, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Party to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations.

(b)    The Joint Administrators are a Party to this Agreement:

(i)    as agents of NNSA and the respective EMEA Debtors of which they are administrators; and

(ii)    in their own capacities solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the United Kingdom Insolvency Act 1986 and for the purposes of obtaining the benefit of the provisions of this Agreement expressed to be conferred on or given to the Joint Administrators and enforcing the obligations of certain other Parties to this Agreement.

8.6    **Joint Liquidators**

(a)    The Parties agree that the Joint Liquidators have negotiated and are entering into this Agreement as agents for the EMEA Liquidation Debtors to which they are appointed and that none of the Joint Liquidators, their respective firms, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Party to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations.

(b)    The Joint Liquidators are a Party to this Agreement:

(i)      as agents of the respective EMEA Liquidation Debtors of which they are liquidators; and

(ii)      in their own capacities solely for obtaining the benefit of the provisions of this Agreement expressed to be conferred on or given to the Joint Liquidators and enforcing the obligations of certain other Parties to this Agreement.

## 8.7    Several Obligations

Except as specifically set forth in this Agreement, the obligations of each Party hereunder are several, and not joint and several.

## 8.8    Binding; Successors and Assigns

Except as otherwise expressly provided in this Agreement, all representations, warranties, covenants and agreements set forth in this Agreement by or on behalf of the Parties hereto will be binding upon and inure to the benefit of such Parties and their respective successors and permitted assigns, including, without limitation, any administrator, liquidator, trustee, receiver appointed as a successor or assign of any Party.

## 8.9    Specific Performance

The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. Accordingly, in addition to any other remedies to which the Parties are entitled at law or in equity, each of the Parties shall be entitled to equitable relief to prevent or remedy breaches of this Agreement, without the proof of actual damages, including in the form of an injunction or injunctions or orders for specific performance in respect of such breaches.

## 8.10    Entire Agreement

(a)      This Agreement constitutes the entire understanding and agreement between the signatories hereto in relation to the subject matter of this Agreement.

(b)      Each Party acknowledges that it has not entered into this Agreement in reliance wholly or partly on any representation or warranty made by or on behalf of the other Party (whether orally or in writing) other than as expressly set out in this Agreement.

(c)      The settlements contained in this Agreement are integrated and mutually dependent. In the event that any provision herein shall be illegal, invalid, or unenforceable, the entire Agreement shall be rendered null and void.

8.11    **Consent of the Creditors' Committee**

Consistent with Section 12(g)(i) of the Interim Funding and Settlement Agreement, dated June 9, 2009 among certain of the Parties, the US Debtors acknowledge that they have consulted with the Creditors' Committee and obtained its consent prior to entering into this Agreement, which consent is evidenced by the signature of the Creditors' Committee below.

**[SIGNATURE PAGES FOLLOW]**

700081299 09242174

NORTEL NETWORKS LIMITED

By:_____
Name:
Title:


By:_____
Name:
Title:


NORTEL NETWORKS INC.

By:_____
Name:  John J. Ray, III
Title:  Principal Officer


NORTEL NETWORKS CORPORATION

By:_____
Name:
Title:


By:_____
Name:
Title:


ERNST & YOUNG INC. IN ITS
CAPACITY AS THE MONITOR OF
NORTEL NETWORKS CORPORATION
ET AL.,
AND NOT IN ITS PERSONAL
CAPACITY


By: : _Shar Hamilt___.
Name: _Sharon Hamilton_
Title: _Senior Vice-President_


THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF NORTEL
NETWORKS INC., ET. AL.

By:   AKIN GUMP STRAUSS HAUER &
FELD LLP, as Counsel to the Committee
and authorized signatory and not in its
individual capacity


By:_____
Name:
Title:


S-1

*APAC/CALA Settlement Agreement –Signature Page*

NORTEL NETWORKS LIMITED

By:_____
Name:
Title:

By:_____
Name:
Title:

NORTEL NETWORKS INC.

By:_____
Name:  John J. Ray, III
Title:  Principal Officer

NORTEL NETWORKS CORPORATION

By:_____
Name:
Title:

By:_____
Name:
Title:

ERNST & YOUNG INC. IN ITS
CAPACITY AS THE MONITOR OF
NORTEL NETWORKS CORPORATION
ET AL.,
AND NOT IN ITS PERSONAL
CAPACITY

By : :_____
Name:
Title:

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF NORTEL
NETWORKS INC., ET. AL.

By:  AKIN GUMP STRAUSS HAUER &
FELD LLP, as Counsel to the Committee
and authorized signatory and not in its
individual capacity

By:_____
Name: David A. Botter
Title: Member of the Firm

S-1

*APAC/CALA Settlement Agreement –Signature Page*

NORTEL NETWORKS LIMITED

By:_____
Name:
Title:


By:_____
Name:
Title:


NORTEL NETWORKS INC.

By:_____
Name:  John J. Ray, III
Title:  Principal Officer


NORTEL NETWORKS CORPORATION

By:_____
Name:
Title:


By:_____
Name:
Title:


ERNST & YOUNG INC. IN ITS
CAPACITY AS THE MONITOR OF
NORTEL NETWORKS CORPORATION
ET AL.,
AND NOT IN ITS PERSONAL
CAPACITY


By: :_____
Name:
Title:


THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF NORTEL
NETWORKS INC., ET. AL.

By:  AKIN GUMP STRAUSS HAUER &
FELD LLP, as Counsel to the Committee
and authorized signatory and not in its
individual capacity


By:_____
Name:
Title:

*APAC/CALA Settlement Agreement –Signature Page*

NORTEL NETWORKS LIMITED

By:_____
Name:  Anna Ventresca
Title:    General Counsel-Corporate and
Corporate Secretary

By:_____
Name:  Clarke Glaspell
Title:    Controller

NORTEL NETWORKS CORPORATION

By:_____
Name:  Anna Ventresca
Title:    General Counsel-Corporate and
Corporate Secretary

By:_____
Name:  Clarke Glaspell
Title:    Controller

NORTEL NETWORKS INC.

By:_____
Name:  John J. Ray, III
Title:  Principal Officer

ERNST & YOUNG INC. IN ITS
CAPACITY AS THE MONITOR OF
NORTEL NETWORKS CORPORATION
ET AL.,
AND NOT IN ITS PERSONAL
CAPACITY




By: :_____
Name:
Title:

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF NORTEL
NETWORKS INC., ET. AL.

By:   AKIN GUMP STRAUSS HAUER &
FELD LLP, as Counsel to the Committee
and authorized signatory and not in its
individual capacity



By:_____
Name:
Title:

*APAC/CALA Settlement Agreement –Signature Page*

**NORTEL NETWORKS TECHNOLOGY CORPORATION**

By:_____
Name:   Anna Ventresca
Title:   Director and Secretary

**NORTEL NETWORKS DE MEXICO, S.A. DE C.V.**

By:_____
Name:   Allan Bifield
Title:   Legal Representative

By:_____
Name:   Anna Ventresca
Title:   Legal Representative

**NORTEL DE MEXICO, S. DE R.L. DE C.V.**

By:_____
Name:   Allan Bifield
Title:   Legal Representative

By:_____
Name:   Anna Ventresca
Title:   Legal Representative

**NORTEL NETWORKS PERU S.A.C.**

By:_____
Name:   Luis Gastañeta Alayza
Title:   Legal Representative

**NORTEL NETWORKS AUSTRALIA PTY. LIMITED**

By:_____
Name:   Allan Bifield
Title:   Director

By:_____
Name:   Anna Ventresca
Title:   Director

S-2

NORTEL NETWORKS TECHNOLOGY CORPORATION

By:_____
Name:  Anna Ventresca
Title:  Director and Secretary

NORTEL NETWORKS DE MEXICO, S.A. DE C.V.

By:_____
Name:  Allan Bifield
Title:   Legal Representative

By:_____
Name:  Anna Ventresca
Title:   Legal Representative

NORTEL DE MEXICO, S. DE R.L. DE C.V.

By:_____
Name:  Allan Bifield
Title:   Legal Representative

By:_____
Name:  Anna Ventresca
Title:   Legal Representative

NORTEL NETWORKS PERU S.A.C.

By:_____
Name:  Luis Gastañeta Alayza
Title:   Legal Representative

NORTEL NETWORKS AUSTRALIA PTY. LIMITED

By:_____
Name:  Allan Bifield
Title:   Director

By:_____
Name:  Anna Ventresca
Title:   Director

S-2

*APAC/CALA Settlement Agreement --Signature Page*

PT NORTEL NETWORKS INDONESIA

By:
Name:  Allan Bifield
Title:    Director

By:
Name:  Anna Ventresca
Title:    Director

NORTEL NETWORKS MALAYSIA SDN. BHD.

By:
Name:  Allan Bifield
Title:    Director

By:
Name:  Anna Ventresca
Title:    Director

NORTEL NETWORKS NEW ZEALAND LIMITED

By:
Name:  Allan Bifield
Title:    Director

By:
Name:  Anna Ventresca
Title:    Director

NORTEL NETWORKS SINGAPORE PTE. LIMITED

By:
Name:  Allan Bifield
Title:    Director

By:
Name:  Anna Ventresca
Title:    Director

NORTEL NETWORKS SINGAPORE PTE. LIMITED on behalf of NORTEL
NETWORKS SINGAPORE PTE. LIMITED – PHILIPPINES BRANCH

By:
Name:  Allan Bifield
Title:    Director

By:
Name:  Anna Ventresca
Title:    Director

S-3

*APAC/CALA Settlement Agreement – Signature Page*

**NORTEL NETWORKS (ASIA) LIMITED**

By:_____
Name:  Allan Bifield
Title:  Director

**NORTEL NETWORKS (ASIA) LIMITED** on behalf of **NORTEL NETWORKS (ASIA) LIMITED – PAKISTAN BRANCH**

By:_____
Name:  Allan Bifield
Title:  Director

**NORTEL NETWORKS (ASIA) LIMITED** on behalf of **NORTEL NETWORKS (ASIA) LIMITED – TAIWAN BRANCH**

By:_____
Name:  Allan Bifield
Title:  Director

**NORTEL NETWORKS (CHINA) LIMITED**

By:_____
Name:  Allan Bifield
Title:  Legal Representative

**NORTEL NETWORKS (THAILAND) LIMITED**

By:_____
Name:  Allan Bifield
Title:  Director

By:_____
Name:  Anna Ventresca
Title:  Director

**NORTEL NETWORKS KOREA LIMITED**

By:_____
Name:  Christopher Noel Vaughan John
Title:  Representative Director

S-4

*APAC/CALA Settlement Agreement – Signature Page*

**NORTEL NETWORKS (ASIA) LIMITED**

By:_____
Name:  Allan Bifield
Title:   Director

**NORTEL NETWORKS (ASIA) LIMITED** on behalf of **NORTEL NETWORKS (ASIA) LIMITED -- PAKISTAN BRANCH**

By:_____
Name:  Allan Bifield
Title:   Director

**NORTEL NETWORKS (ASIA) LIMITED** on behalf of **NORTEL NETWORKS (ASIA) LIMITED -- TAIWAN BRANCH**

By:_____
Name:  Allan Bifield
Title:   Director

**NORTEL NETWORKS (CHINA) LIMITED**

By:_____
Name:  Allan Bifield
Title:   Legal Representative

**NORTEL NETWORKS (THAILAND) LIMITED**

By:_____
Name:  Allan Bifield
Title:   Director

By:_____
Name:  Anna Ventresca
Title:   Director

**NORTEL NETWORKS KOREA LIMITED**

By:_____
Name:  Christopher Noel Vaughan John
Title:   Representative Director

S-4

*APAC/CALA Settlement Agreement --Signature Page*

**NORTEL VIETNAM LIMITED**

By:_____
Name:   Allan Bifield
Title:   General Director

**NORTEL NETWORKS (INDIA) PRIVATE LIMITED**

By:_____
Name:   Allan Bifield
Title:   Director

By:_____
Name:   Anna Ventresca
Title:   Director

**NORTEL NETWORKS TELECOMMUNICATIONS EQUIPMENT (SHANGHAI) CO. LIMITED**

By:_____
Name:   Anna Ventresca
Title:   Legal Representative

**NORTEL NETWORKS DE ARGENTINA, S.A.**

By:_____
Name:   Jorge Nuñez
Title:   Legal Representative

**NORTEL NETWORKS DEL ECUADOR, S.A.**

By:_____
Name:   Allan Bifield
Title:   General Manager

**NORTEL VIETNAM LIMITED**

By:_____
Name:  Allan Bifield
Title:   General Director

**NORTEL NETWORKS (INDIA) PRIVATE LIMITED**

By:_____
Name:  Allan Bifield
Title:   Director

By:_____
Name:  Anna Ventresca
Title:   Director

**NORTEL NETWORKS TELECOMMUNICATIONS EQUIPMENT (SHANGHAI)
CO. LIMITED**

By:_____
Name:  Anna Ventresca
Title:   Legal Representative

**NORTEL NETWORKS DE ARGENTINA, S.A.**

By:_____
Name:  Jorge Nuñez
Title:   Legal Representative

**NORTEL NETWORKS DEL ECUADOR, S.A.**

By:_____
Name:  Allan Bifield
Title:   General Manager

S-5

*APAC/CALA Settlement Agreement – Signature Page*

**NORTEL NETWORKS GLOBAL CORPORATION**

By:
Name:   Allan Bifield
Title:   Director and President

By:
Name:   Anna Ventresca
Title:   Director and Secretary

**NORTEL NETWORKS INTERNATIONAL CORPORATION**

By:
Name:   Allan Bifield
Title:   Director and President

By:
Name:   Anna Ventresca
Title:   Director and Secretary

**NORTEL NETWORKS DEL URUGUAY, S.A.**

By:
Name:   Allan Bifield
Title:   President of the Board of Directors

**NORTEL NETWORKS CHILE S.A.**

By:
Name:   Allan Bifield
Title:   Legal Representative

S-6

*APAC/CALA Settlement Agreement – Signature Page*

NORTEL NETWORKS DE GUATEMALA LTDA.

By: _____

Name: Luis-Fernando Guerra Sanz

Title: Sole Administrator and Legal Representative

NORTEL TRINIDAD & TOBAGO LIMITED

By: _____

Name: Luis-Fernando Guerra Sanz

Title: Director

NORTEL NETWORKS KABUSHIKI KAISHA

By: _____

Name: Stephen Givens

Title: Resident Director

NORTELTECHNOLOGY EXCELLENCE CENTRE PRIVATE LIMITED

By: _____

Name: Luis-Fernando Guerra Sanz

Title: Director

**NORTEL NETWORKS DE GUATEMALA LTDA.**

By:_____
Name: Luis-Fernando Guerra Sanz
Title: Sole Administrator and Legal Representative


**NORTEL TRINIDAD & TOBAGO LIMITED**

By:_____
Name: Luis-Fernando Guerra Sanz
Title: Director


**NORTEL NETWORKS KABUSHIKI KAISHA**

By:_____*Stephen Givens*_____
Name: Stephen Givens
Title: Resident Director


**NORTELTECHNOLOGY EXCELLENCE CENTRE PRIVATE LIMITED**

By:_____
Name: Luis-Fernando Guerra Sanz
Title: Director

**NORTEL NETWORKS (CALA) INC.**

By:_____
Name: John J. Ray, III
Title: Principal Officer


**QTERA CORPORATION**

By:_____
Name: John J. Ray, III
Title: Principal Officer


**XROS, INC.**

By:_____
Name: John J. Ray, III
Title: Principal Officer


**CORETEK, INC.**

By:_____
Name: John J. Ray, III
Title: Principal Officer


**ARCHITEL SYSTEMS (U.S.) CORPORATION**

By:_____
Name: John J. Ray, III
Title: Principal Officer


S-8

**NORTEL ALTSYSTEMS, INC. (previously "ALTEON WEBSYSTEMS, INC.")**

By:_____
Name: John J. Ray, III
Title: Principal Officer

**NORTEL ALTSYSTEMS INTERNATIONAL INC. (previously "ALTEON WEBSYSTEMS INTERNATIONAL, INC.")**

By:_____
Name: John J. Ray, III
Title: Principal Officer

**NORTEL NETWORKS APPLICATIONS MANAGEMENT SOLUTIONS INC.**

By:_____
Name: John J. Ray, III
Title: Principal Officer

**NORTEL NETWORKS CABLE SOLUTIONS INC.**

By:_____
Name: John J. Ray, III
Title: Principal Officer

**NORTEL NETWORKS CAPITAL CORPORATION**

By:_____
Name: John J. Ray, III
Title: Principal Officer

**NORTEL NETWORKS HPOCS INC.**

By:_____
Name: John J. Ray, III
Title: Principal Officer

S-9

*APAC/CALA Settlement Agreement –Signature Page*

**NORTEL NETWORKS INTERNATIONAL INC.**

By:_____
Name: John J. Ray, III
Title: Principal Officer

**NORTEL NETWORKS OPTICAL COMPONENTS INC.**

By:_____
Name: John J. Ray, III
Title: Principal Officer

**NORTHERN TELECOM INTERNATIONAL INC.**

By:_____
Name: John J. Ray, III
Title: Principal Officer

**SONOMA SYSTEMS**

By:_____
Name: John J. Ray, III
Title: Principal Officer

*APAC/CALA Settlement Agreement –Signature Page*

**SIGNED** for and on behalf of **Nortel Networks UK Limited** (in administration) by
_C. J. Hill_ as Joint
Administrator (acting as agent and without personal liability) in the presence of: )
)
)
)

_W. Graham_
Witness signature

Name: WILMA GRAHAM
Address:

**SIGNED** for and on behalf of **Nortel GmbH** (in administration) by
_C. J. Hill_ as Joint
Administrator (acting as agent and without personal liability) in the presence of: )
)
)

_W. Graham_
Witness signature

Name: WILMA GRAHAM
Address:

**SIGNED** for and on behalf of **Nortel Networks SpA** (in administration) by _C. J. Hill_
as Joint Administrator (acting as agent and without personal liability) in the presence of: )
)
)

_W. Graham_
Witness signature

Name: WILMA GRAHAM
Address:

S-11

*APAC/CALA Settlement Agreement –Signature Page*

**SIGNED** for and on behalf of **Nortel Networks**
**Hispania S.A.** (in administration) by )
_____C. N. Hill_____ as Joint )
Administrator (acting as agent and without )
personal liability) in the presence of:

.............................................
W. Graham
Witness signature )
)
)
Name:    WILMA    GRAHAM
Address:

**SIGNED** for and on behalf of **Nortel Networks**
**B.V.** (in administration) by ___C. N. Hill___ )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )

.............................................
W. Graham
Witness signature )
)
)
Name:    WILMA GRAHAM
Address:

**SIGNED** for and on behalf of **Nortel Networks**
**AB** (in administration) by ___C. N. Hill___ )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )

.............................................
W. Graham
Witness signature )
)
)
Name:    WILMA GRAHAM
Address:

S-12

*APAC/CALA Settlement Agreement –Signature Page*

**SIGNED** for and on behalf of **Nortel Networks**
**N.V.** (in administration) by  C.J. Hill
as Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)

.................................................
W. Galam
Witness signature

)
)
)

Name:    WILMA GRAHAM
Address:

**SIGNED** for and on behalf of **Nortel Networks**
**(Austria) GmbH** (in administration) by
_____C.J. Hill_____ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)

.................................................
W. Galam
Witness signature

)
)
)

Name:    WILMA GRAHAM
Address:

**SIGNED** for and on behalf of **Nortel Networks**
**Portugal S.A.** (in administration) by
_____C.J. Hill_____ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)

.................................................
W. Galam
Witness signature

)
)
)

Name:    WILMA GRAHAM
Address:

S-13

**SIGNED** for and on behalf of **Nortel Networks**
**s.r.o.** (in administration) by
_____C.π.Hill_____ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)

..............................................
Witness signature

Name:          WILMA  GRAHAM

Address:

)
)
)

**SIGNED** for and on behalf of **Nortel Networks**
**Polska Sp. z.o.o.** (in administration) by
_____C.π.Hill_____ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)

..............................................
Witness signature

Name:     WILMA · GRAHAM

Address:

)
)
)

S-14

*APAC/CALA Settlement Agreement –Signature Page*

**SIGNED** for and on behalf of **Nortel Networks**
**France S.A.S.** (in administration) by
acting as authorized representative for the Joint
Administrators (acting as agent and without
personal liability) in the presence of:

)
)
)

..........................................................
Witness signature

)
)
)

Name: LEISA HARKIN

Address:

**EY ERNST & YOUNG LLP**
**1 More London Place**
London
SE1 2AF
**United Kingdom**

S-15

*APAC/CALA Settlement Agreement –Signature Page*

**SIGNED** for and on behalf of **Nortel Networks Engineering Service kft** (in administration) by ___C.J. Hill___ as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)

----------------------------------------
W. Graham
Witness signature

)
)
)

Name:    WILMA GRAHAM
Address:

**SIGNED** for and on behalf of **Nortel Networks Slovensko, s.r.o.** (in administration) by C.J. Hill as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)

----------------------------------------
W. Graham
Witness signature

)
)
)

Name:    WILMA GRAHAM
Address:

**SIGNED** for and on behalf of **Nortel Networks Romania Srl** (in administration) by C.J. Hill as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)

----------------------------------------
W. Graham
Witness signature

)
)
)

Name:    WILMA GRAHAM

*APAC/CALA Settlement Agreement –Signature Page*

**SIGNED** for and on behalf of **Nortel Networks Oy** (in administration) by )
_____C.-T. Hill_____ as Joint )
Administrator (acting as agent and without )
personal liability) in the presence of:

_____W. Galan_____
Witness signature

)
)
)

Name:  WILMA GRAHAM
Address:
Address:

**SIGNED** for and on behalf of **Nortel Networks International Finance & Holding B.V.** (in )
administration) by )
_____C.-T. Hill_____ as Joint )
Administrator (acting as agent and without
personal liability) in the presence of:

_____W. Galan_____
Witness signature

)
)
)

Name:  WILMA GRAHAM
Address:

)

S-17

*APAC/CALA Settlement Agreement –Signature Page*

SIGNED for and on behalf of **Nortel Networks** )
**Optical Components Limited** (in liquidation) )
by _KERRI THISS_, as liquidator (acting as )
agent and without personal liability), in the
presence of:

............................................................
Witness signature                                     )
                                                      )
Name: LEISA HARKIN                                    )
Address:
       **ERNST & YOUNG LLP**
       **1 More** London Place
       London
       SE1 2AF
       **United Kingdom**

*APAC/CALA Settlement Agreement –Signature Page*

**SIGNED** for and on behalf of Nortel
Networks (Ireland) Limited (in

_DAVID HUGHES-_

................................................
Witness signat re

Name:      _NIAM HEVENEY_
Address:   _C/O ERNST & YOUNG_
           _HARCOURT STREET_
           _DUBLIN 2._

S-19

*APAC/CALA Settlement Agreement –Signature Page*

**SIGNED** for and on behalf of **Nortel**
**Networks (Northern Ireland) Limited** (in
liquidation) by ~~KERRY TRIGG~~ , as
liquidator (acting as agent and without personal
liability), in the presence of:

)
)
)
)

Witness signature LEISA HARKIN
)
)
)

Name:
Address:

**ERNST & YOUNG LLP**
1 More London Place
London
SE1 2AF
United Kingdom

S-20

*APAC/CALA Settlement Agreement –Signature Page*

SIGNED for and on behalf of **Nortel Networks**    )
AG by ~~DAVE QUANE~~    in the    )
presence of:    )

..........................................................
Witness signature    Parihan Yuzu

Name:    Nortel
Address:    Fleming House    )
            71 King Street    )
            Maidenhead. U.K.    )
            SL6 1DU

*APAC/CALA Settlement Agreement –Signature Page*

**SIGNED** by Alan Bloom                                                              )
                                                                                     )
In his own capacity and on behalf of the Joint                                       )
Administrators without personal liability and
solely for the benefit of the provisions of this
Agreement expressed to be conferred on or given
to the Joint Administrators:

............ W. Graham ....................................
Witness signature

Name:    WILMA  GRAHAM                                                               )
Address:                                                                             )
                                                                                     )

S-22

*APAC/CALA Settlement Agreement – Signature Page*

SIGNED by Kerry Trigg

In her own capacity and on behalf of the Joint
Liquidators without personal liability and solely
for the benefit of the provisions of this Agreement
expressed to be conferred on or given to the Joint
Liquidators:

Witness signature LEISA HARKIN

Name:

Address:        **EⱮ ERNST & YOUNG LLP**
                **1 More** London Place
                      London
                      SE1 2AF
                  United Kingdom

)
)
)

)
)
)

S-23

*APAC/CALA Settlement Agreement –Signature Page*

**SIGNED** for and on behalf of **Nortel Networks**
**AS** by ~~DAVE QUANE~~ in the
presence of:                                          )
                                                              )
                                                              )

.......................................................
Witness signature

Name:    Perihan Yazici
Address: Nortel - Fleming House          )
         71 king Street - Maidenhead    )
         SL6 7DU    U.k .                         )

**SIGNED** for and on behalf of **Nortel Networks**
**South Africa (Pty) Limited**                   )
by ~~DAVS QUAANS~~                           )
in the presence of:                                )

.......................................................
Witness signature

Name:    Perihan Yazici                    )
Address: Nortel                               )
         Fleming House                     )
         71 King Street
         Maidenhead - U.k
         SL6 7DU

S-24

*APAC/CALA Settlement Agreement –Signature Page*

**SIGNED** for and on behalf of **NORTEL NETWORKS S.A.** (in administration and secondary proceedings) by Maître Cosme Rogeau, in his capacity as French Liquidator (Mandataire Liquidateur), acting as agent and without personal liability, in the presence of:

)
)
)
)
)

..........................................
Cosme/Rogeau

Witness signature

)
)

Name: RAJEEV SHARMA FOWEER

Address: PARTNER, FTIA

1 bis avenue Foch

25116 PARIS, FRANCE

S-25

*APAC/CALA Settlement Agreement –Signature Page*

SIGNED for and on behalf of **Nortel networks** )
**S.A. (in administration and secondary** )
**proceedings)** by ___C.Z.Hill___ acting as )
authorised representative for the Joint )
Administrators (acting as agent and without )
personal liability) in the presence of:

Witness signature )
)
...............................................................  )
Name:        WILMA GRAHAM
Address:
        ERNST & YOUNG LLP
        1 More London Place
        London
        SE1 2AF
        United Kingdom

S-26

*APAC/CALA Settlement Agreement –Signature Page*

**Schedule 1**

**Canadian Debtors**

1.   Nortel Networks Corporation

2.   Nortel Networks Limited

3.   Nortel Networks Global Corporation

4.   Nortel Networks International Corporation

5.   Nortel Networks Technology Corporation

**Schedule 2**

**US Debtors**

1.  Nortel Networks Inc.

2.  Architel Systems (U.S.) Corporation

3.  CoreTek, Inc.

4.  Nortel Altsystems, Inc. (previously "Alteon WebSystems, Inc.")

5.  Nortel Altsystems International Inc. (previously "Alteon WebSystems International, Inc.")

6.  Nortel Networks Applications Management Solutions Inc.

7.  Nortel Networks Cable Solutions Inc.

8.  Nortel Networks Capital Corporation

9.  Nortel Networks (CALA) Inc.

10. Nortel Networks HPOCS Inc.

11. Nortel Networks International Inc.

12. Nortel Networks Optical Components Inc.

13. Northern Telecom International Inc.

14. Qtera Corporation

15. Sonoma Systems

16. Xros, Inc.

**Schedule 3**

**EMEA Debtors**

1.   Nortel Networks UK Limited (In Administration)

2.   Nortel Networks (Ireland) Limited (In Administration)

3.   Nortel Networks NV (In Administration)

4.   Nortel Networks SpA (In Administration)

5.   Nortel Networks BV (In Administration)

6.   Nortel Networks Polska Sp z.o.o. (In Administration)

7.   Nortel Networks Hispania, SA (In Administration)

8.   Nortel Networks (Austria) GmbH (In Administration)

9.   Nortel Networks sro (In Administration)

10.  Nortel Networks Engineering Services Kft (In Administration)

11.  Nortel Networks Portugal SA (In Administration)

12.  Nortel Networks Slovensko, sro (In Administration)

13.  Nortel Networks Romania Srl (In Administration)

14.  Nortel GmbH (In Administration)

15.  Nortel Networks Oy (In Administration)

16.  Nortel Networks AB (In Administration)

17.  Nortel Networks International Finance & Holding BV (In Administration)

18.  Nortel Networks France S.A.S. (In Administration)

## Schedule 4

## APAC Entities

1.    Nortel Networks (Asia) Limited

2.    Nortel Networks Australia Pty. Limited

3.    Nortel Networks (India) Private Limited

4.    PT Nortel Networks Indonesia

5.    Nortel Networks Japan (Japanese name is Nortel Networks Kabushiki Kaisha)

6.    Nortel Networks Korea Limited

7.    Nortel Networks Malaysia Sdn. Bhd.

8.    Nortel Networks New Zealand Limited

9.    Nortel Networks Singapore Pte Ltd

10.    Nortel Networks (Thailand) Limited

11.    Nortel Vietnam Limited

12.    Nortel Networks (China) Limited

13.    Nortel Networks Telecommunications Equipment (Shanghai) Co., Ltd

14.    Nortel Technology Excellence Centre Private Limited

**Schedule 5**

**CALA Entities**

1.  Nortel Networks de Argentina S.A.

2.  Nortel Networks Chile S.A.

3.  Nortel Networks del Ecuador S.A.

4.  Nortel Networks de Guatemala Ltda.

5.  Nortel Networks de Mexico, S.A. de C.V.

6.  Nortel Networks Perú S.A.C.

7.  Nortel Networks del Uruguay S.A.

8.  Nortel de Mexico, S. de R.L de C.V.

9.  Nortel Trinidad and Tobago Limited

**Schedule 6**

**EMEA NFEs**

1.    Nortel Networks AS

2.    Nortel Networks AG

3.    Nortel Networks South Africa (Pty) Limited

**Schedule 7**

**List of Global Sales**

Those sales pertaining to the following sale agreements and any related sale agreements entered into by any of the EMEA Debtors:

1.  The Asset Purchase Agreement entered into among certain of the Nortel Parties and Radware Ltd., as of February 19, 2009, as may have been amended from time to time until such transaction closed on April 1, 2009 (the "**Layer 4-7 Sale Agreement**")

2.  The Asset Sale Agreement entered into among certain of the Nortel Parties and Telefonaktiebolaget L M Ericsson (publ), as of July 24, 2009, as may have been amended from time to time until such transaction closed on November 13, 2009. (the "**CDMA Sale Agreement**")

3.  The Amended and Restated Asset and Share Sale Agreement entered into among certain of the Nortel Parties and Avaya Inc., as of September 14, 2009, as may have been amended from time to time until such transaction closed on December 18, 2009 (the "**Enterprise Sale Agreement**")

4.  The Asset Sale Agreement entered into among certain of the Nortel Parties and Ciena Corporation, as of November 24, 2009, as may have been amended from time to time until such transaction closed on March 31, 2010 (the "**MEN Sale Agreement**")

5.  The Asset Sale Agreement entered into among certain of the Nortel Parties and Telefonaktiebolaget L M Ericsson (publ), as of November 24, 2009, as may have been amended from time to time until such transaction closed on March 31, 2010 (the "**GSM/GSM-R Sale Agreement**")

6.  The Asset Sale Agreement entered into among certain of the Nortel Parties and Kapsch CarrierCom AG, as of November 24, 2009, as may have been amended from time to time until such transaction closed on March 31, 2010.

7.  The Asset Sale Agreement entered into among certain of the Nortel Parties and GENBAND Inc., as of December 22, 2009, as may have been amended from time to time until such transaction closed on May 28, 2010 (the "**CVAS Sale Agreement**")

8.  The Asset Sale Agreement entered into among certain of the Nortel Parties and Telefonaktiebolaget L M Ericsson (publ), as of May 11, 2010, as may have been amended from time to time until such transaction closed on June 4, 2010 (the "**GSM Retained Contracts Sale Agreement**")

9.  The Asset Sale Agreement entered into among certain of the Nortel Parties and Telefonaktiebolaget L M Ericsson (publ), as of September 24, 2010, as may have been amended from time to time until such transaction closed on March 11, 2011 (the "**MSS Sale Agreement**")

10.    The Asset Sale Agreement entered into among certain of the Nortel Parties and Rockstar Bidco, LP, as of June 30, 2011, as may have been amended from time to time until such transaction closed on July 29, 2011 (the "**Global IP Sale Agreement**")

11.    The Transaction Agreement entered into among certain of the Nortel Parties and Hitachi, Ltd., as of October 25, 2009, as may have been amended from time to time until such transaction closed on December 8, 2009 (the "**Packet Core Sale Agreement**")

700081299 09242174

## Schedule 8

### Escrow Agreements

1.  CDMA/LTE Access

    Escrow Agreement dated as November 11, 2009 by and among NNC, NNL, NNI, the EMEA Filed Entities, the Estate Fiduciaries and the Escrow Agent.

2.  Enterprise Solutions

    Escrow Agreement dated as of December 18, 2009, and as amended from time to time, by and among NNC, NNL, NNI, the other entities identified therein as Sellers, the EMEA Filed Entities, the Estate Fiduciaries and the Escrow Agent.

3.  Metro Ethernet Networks

    MEN Distribution Escrow Agreement dated as of March 19, 2010, and as amended from time to time, by and among NNC, NNL, NNI, the other entities identified therein as Sellers, the EMEA Sellers and certain of their Affiliates as identified therein, NNSA, the Estate Fiduciaries and the Escrow Agent.

4.  GSM/GSM-R

    GSM/GSM-R Distribution Escrow Agreement dated as of March 31, 2010, and as amended from time to time, by and among NNC, NNL, NNI, the other entities identified therein as Sellers, the EMEA Sellers as identified therein, NNSA, Nortel Networks (Asia) Limited, the entities identified therein as North American ALT Selling Debtors, the entities identified therein as EMEA ALT Selling Debtors, the Estate Fiduciaries and the Escrow Agent.

5.  Carrier Voice-Over IP and Application Solutions

    CVAS Distribution Escrow Agreement dated as of May 27, 2010, and as amended from time to time, by and among  NNC, NNL, NNI, the other entities identified therein as Sellers, the EMEA Sellers and certain of their Affiliates as identified therein, NNSA, the Estate Fiduciaries and the Escrow Agent.

6.  GSM Retained Contracts

    GSM Retained Contracts Distribution Escrow Agreement dated June 3, 2010, and as amended from time to time, by and among NNL, NNI, Nortel Networks (CALA) Inc., the other entities identified therein as Sellers, the Estate Fiduciaries and the Escrow Agent.

7.    Multi-Service Switch

MSS Distribution Escrow Agreement dated as of March 11, 2001, and as amended from time to time, by and among NNC, NNL, NNI, the other entities identified therein as Sellers, the EMEA Sellers and Certain of their Affiliates as identified therein, NNSA, the Israeli Company, the Estate Fiduciaries and the Escrow Agent.

8.    Layer 4-7

Escrow Agreement dated as of March 31, 2009 by and among NNI, NNL, those entities identified therein as EMEA Sellers, the Joint Administrators and the Escrow Agent.

700081299 09242174

## Schedule 9

## Other Sales

1.  The Asset Sale Agreement entered into among NNL, Nortel Networks Technology Corporation and 7522312 Canada Inc., as of June 17, 2010, as may have been amended from time to time until such transaction closed on June 30, 2010 (the "**Relay Sale Agreement**")

2.  The Share Purchase Agreement entered into between NNL and Telefonaktiebolaget L M Ericsson (publ), as of April 21, 2010, as may have been amended from time to time until such transaction closed on June 29, 2010 (the "**LG-Nortel Sale Agreement**")

3.  The Asset Sale Agreement entered into among NNL, Nortel Networks Technology Corporation and CSC Holdings, LLC, dated November 23, 2011 (the "**IP Address Cablevision Sale Agreement**")

4.  The Asset Sale Agreement entered into among NNL, Nortel Networks Technology Corporation and Salesforce.com, Inc., dated December 1, 2011 (the "**IP Address Salesforce Sale Agreement**")

5.  The Asset Sale Agreement entered into between NNI and Microsoft Cororation, as of March 16, 2011, as may have been amended from time to time until such transaction closed on May 11, 2011 (the "**US IP Address Sale Agreement**")

6.  The Asset Sale Agreement entered into among Guangdong Nortel Telecommunications Equipment Company Ltd. ("**GDNT**") and Ericsson (China) Communications Company Ltd., as of December 1, 2010, as may have been amended from time to time until such transaction closed on May 12, 2011 (the "**GDNT Sale Agreement**") [1]

7.  The Asset Sale Agreement entered into among NNL, Nortel Networks Technology Corporation and Bell Aliant Regional Communications, Limited Partnership dated January 30, 2012

8.  The Asset Sale Agreement entered into among NNL, Nortel Networks Technology Corporation and Vodafone Americas Inc. dated February 9, 2012, as amended

---

[1]  Notwithstanding the release provided in Section 4.1(a) hereof, Nortel Networks (China) Ltd does not release any claim it may have to sale proceeds arising from the GDNT Sale Agreement in its capacity as a shareholder of GDNT.

**List of Appendices**

Appendix A      -      Allocation of Sale Proceeds to Non-Filed Entities by Escrow Account

Appendix B      -      Payment of Settlement Amount to Settlement Payment Parties

Appendix C-1    -      Outstanding Balances as of September 30, 2011

Appendix C-2    -      Certain Payments Made After September 30, 2011

Appendix C-3    -      Certain Surviving Obligations

Appendix D      -      [Reserved]

Appendix E      -      Form of Amendments to Escrow Agreements

Appendix F      -      Form of Escrow Account Release Instructions

Appendix G      -      Form of Intermediate Distribution Account Release Instruction

Appendix H      -      Form of Full and Final Acknowledgement and Release (Paraguay)

## Appendix A

|  | ESCROW ACCOUNTS Fair Market Value | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Entities | Carrier Voice-Over IP and Application Solutions | Enterprise Solutions | CDMA/LTE Access | GSM/GSM-R | GSM Retained Contracts | Metro Ethernet Networks | Multi-Service Switch | Total Fair Market Value (rounded) |
| **CALA** | | | | | | | | |
| 3100 Nortel de Argentina S.A. | NA | - | NA | NA | - | 2,600,000 | NA | 2,600,000 |
| 3130 Nortel Chile S.A. | NA | 50,000 | NA | NA | NA | NA | NA | 50,000 |
| 3150 Nortel del Ecuador S.A. | NA | NA | NA | NA | NA | 50,000 | NA | 50,000 |
| 3160 Nortel de Guatemala Ltda. | - | NA | NA | NA | 400,000 | 200,000 | NA | 600,000 |
| 3170 Nortel Networks de Mexico S.A. | 300,000 | 600,000 | 200,000 | NA | - | 700,000 | - | 1,800,000 |
| 3200 Nortel Peru S.A.C. | - | - | NA | NA | NA | 200,000 | - | 200,000 |
| 3210 Nortel del Uruguay S.A. | NA | NA | NA | NA | 100,000 | NA | NA | 100,000 |
| **CALA Total** | **300,000** | **650,000** | **200,000** | **0** | **500,000** | **3,750,000** | **0** | **5,400,000** |
| | | | | | | | | |
| **APAC** | | | | | | | | |
| 6100 Nortel Networks Australia Pty | 2,700,000 | 5,000,000 | NA | NA | NA | 4,000,000 | 400,000 | 12,100,000 |
| 6120 Nortel Indonesia | - | - | NA | NA | NA | 50,000 | - | 50,000 |
| 6130 Nortel Japan | 1,200,000 | 1,100,000 | NA | NA | NA | 2,400,000 | - | 4,700,000 |
| 6160 Nortel Malaysia Sdn. Bhd. | 200,000 | - | NA | NA | NA | - | NA | 200,000 |
| 6180 Nortel New Zealand Ltd | 200,000 | 300,000 | NA | NA | NA | 400,000 | - | 900,000 |
| 6190 Nortel Asia - Pakistan Br | NA | - | NA | NA | NA | - | NA | 0 |
| 6200 Nortel Philippines Branch | 100,000 | - | NA | NA | NA | - | NA | 100,000 |
| 6210 Nortel Networks Singapore Pte | 200,000 | 4,100,000 | NA | NA | NA | 1,000,000 | 50,000 | 5,350,000 |
| 6220 Nortel (Thailand) Ltd. | - | - | NA | NA | NA | - | - | 0 |
| 7100 Nortel Networks (Asia) Limited | 350,000 | 1,750,000 | NA | 600,000 | NA | 3,400,000 | 300,000 | 6,400,000 |
| 7110 Nortel Asia - Taiwan Branch | 200,000 | 100,000 | 400,000 | 2,900,000 | NA | 100,000 | 100,000 | 3,800,000 |
| 7112 Nortel (Asia) Ltd- Offshore | 200,000 | 400,000 | NA | 4,800,000 | NA | - | NA | 5,400,000 |
| **APAC Total** | **5,350,000** | **12,750,000** | **400,000** | **8,300,000** | **0** | **11,350,000** | **850,000** | **39,000,000** |
| | | | | | | | | |
| **Total for all entities (rounded)** | **5,650,000** | **13,400,000** | **600,000** | **8,300,000** | **500,000** | **15,100,000** | **850,000** | **44,400,000** |
| | | | | | | | | |
| **Local sales agreement adjustment** | | | | | 0 | | | |
| 6111 Nortel (India) Pvt. Ltd. | (50,000) | 800,000 | NA | NA | NA | (250,000) | NA | 500,000 |
| **Total Adjustment** | **(50,000)** | **800,000** | **0** | **0** | **0** | **(250,000)** | **0** | **500,000** |
| | | | | | | | | |
| **Fair Market Value including adjustments** | **5,600,000** | **14,200,000** | **600,000** | **8,300,000** | **500,000** | **14,850,000** | **850,000** | **44,900,000** |

# Asset Sale Proceeds Allocation
## Summary of allocation

(Figures in USD)
**APPENDIX B**                                                      **DRAFT**

### 1. Entities under Debt Restructuring

| Code | Entity Name | Direct Allocation | Total |
|------|-------------|------------------:|------:|
| 6210-1 | NN Singapore Group | - | - |
| 7100-1 | NN Asia Group | - | 258,166 |
| 6100 | NN Australia | - | 296,775 |
| 6160 | NN Malaysia | - | 184,713 |
| 6111 | NN India (Pvt) | 500,000 | 500,000 |
| 6120 | NN Indonesia | 50,000 | 265,668 |
| 6130 | NN Japan | 4,700,000 | 9,246,311 |
| 6140 | NN Korea | - | 2,044,253 |
| 6180 | NN New Zealand | 900,000 | 932,371 |
| 6220 | NN Thailand | - | 447,665 |
| 6231 | NN Vietnam | - | - |
| | **Subtotal** | **6,150,000** | **14,175,923** |

### 2. Filed Entities

| Code | Entity Name | Direct Allocation | Total |
|------|-------------|------------------:|------:|
| 1002-1 | NNL Group | - | 11,352,539 |
| 1101 | NN Tech Corp | - | - |
| 1102 | NN Int'l Corp | - | 227,109 |
| 1104 | NN Global Corp | - | 52,221 |
| 2001 | NNI | - | 7,558,330 |
| 2002 | NN CALA | - | - |
| 2106 | NN AMSI | - | 328 |
| 2107 | Alteon WebSystems | - | 11 |
| 4160 | NN S.A. | - | 17,982 |
| 4162 | NN France | - | 30 |
| 4180 | NN Germany | - | - |
| 4210 | NN Ireland | - | 2,073 |
| 4220 | NN S.P.A. | - | - |
| 4240 | NN B.V. | - | 1,915,683 |
| 4260 | NN Polska | - | - |
| 4310 | NN Hispania | - | 1,949 |
| 4360 | NN UK | - | 4,195,255 |
| 5102 | NN Israel | - | - |
| 5180 | NN Dubai | - | 567 |
| | **Subtotal** | **-** | **25,324,077** |

### 2. Other Non Filed Entities

| Code | Entity Name | Direct Allocation | Total |
|------|-------------|------------------:|------:|
| 3100 | NN Argentina | 2,600,000 | 2,600,000 |
| 3130 | NN Chile | 50,000 | 50,000 |
| 3150 | NN Ecuador | 50,000 | 50,000 |
| 3160 | NN Guatemala | 600,000 | 600,000 |
| 3170 | NN Mexico | 1,800,000 | 1,800,000 |
| 3200 | NN Peru | 200,000 | 200,000 |
| 3210 | NN Uruguay | 100,000 | 100,000 |
| | **Subtotal** | **5,400,000** | **5,400,000** |
| | **TOTAL** | **11,550,000** | **44,900,000** |

**Appendix C - 1**
Inter-company balances as at September 30, 2011
in USD
Pre-filing balances using January 14, 2009 fx rates
Post-filing balances using September 30, 2011 fx rates
India Pvt. Net payable pre-filing balances per RBI approval submission (November 30, 2010 fx rates)
For Balances a positive number = Receivable and a negative number = Payable

## Singapore

| Code | Trading Partner | Legal Entity Name | Net post filing position as at September 30, 2011 | Net Pre-Filing position per ARA | Gross Initial and Subsequent Payments | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|
| **Pre-filing receivables from:** | | | | | | | | | | |
| 6210 | 1002 | NNL | 16,383 | - | - | 91,167,570 | - | 91,167,570 | - | - |
| 6210 | 1101 | NNTC | | - | - | 8,212 | - | 8,212 | - | - |
| 6210 | 1102 | Nortel Int Corp | 45,297 | - | - | - | - | - | - | - |
| 6210 | 2112 | Nortel Networks India Int | | - | - | 12,086 | - | 12,086 | - | - |
| 6210 | 6170 | Nortel Mauritius Ltd | | - | - | 49,042 | - | 49,042 | - | - |
| 6210 | 6130 | Nortel Networks Japan | 548,236 | (548,236) | | - | - | - | - | - |
| 6210 | 6180 | Nortel Networks New Zealand Limited | | 1,329,110 | (1,329,110) | | - | - | - | - |
| 6210 | 6140 | Nortel Networks Korea Limited | | 10,196,042 | (5,095,943) | 5,100,099 | - | 5,100,099 | - | - |
| 6210 | 6231 | Nortel Vietnam Ltd | 744 | 1,824,776 | | 1,824,776 | - | 1,824,776 | - | - |
| **Pre-filing payables to:** | | | | | | | | | | |
| 6210 | 2001 | NNI | 14,762 | (10,214,526) | 2,909,072 | (7,305,250) | 324,421 | (8,080,835) | - | 324,421 |
| 6210 | 2106 | Nortel Networks Appl. Man. Solutions Inc. | | (10,343) | 2,946 | (7,397) | 328 | (7,068) | - | 328 |
| 6210 | 2107 | Nortel Altsystems Inc. | | (348) | 99 | (249) | 11 | (237) | - | 11 |
| 6210 | 4160 | Nortel Networks SA (French entity) | | (83,124) | 26,522 | (56,602) | 2,958 | (53,644) | - | 2,958 |
| 6210 | 4240 | Nortel Networks BV | | (4,163) | 1,186 | (2,977) | 132 | (2,845) | - | 132 |
| 6210 | 4310 | Nortel Networks Hispania, S.A. | | (1,971) | 561 | (1,410) | 63 | (1,347) | - | 63 |
| 6210 | 4360 | Nortel Networks UK Limited | | (6,325,831) | 1,801,616 | (4,524,215) | 200,917 | (4,323,298) | - | 200,917 |
| 6210 | 6100 | Nortel Networks Australia Pty Limited | | (376,289) | 107,182 | (269,106) | 11,951 | (257,155) | - | 11,951 |
| 6210 | 6120 | PT Nortel Networks Indonesia | | (6,596,676) | 1,878,754 | (4,717,922) | 209,519 | (4,508,403) | - | 209,519 |
| 6210 | 6160 | Nortel Networks Malaysia Sdn. Bhd. | | (12,155,000) | 3,461,782 | (8,693,218) | 386,059 | (8,307,159) | - | 386,059 |
| 6210 | 6210 | Nortel Networks Singapore Pte Ltd | | (1) | 0 | (1) | 0 | (1) | - | 0 |
| 6210 | 6220 | Nortel Networks (Thailand) Ltd. | | (14,094,626) | 4,014,194 | (10,080,435) | 447,866 | (9,632,770) | - | 447,866 |
| 6210 | 7100 | NN (Asia) Ltd. - Taiwan sales (7112) | 188 | (121,719,558) | 34,666,106 | (87,053,450) | 3,865,977 | (83,187,474) | - | 3,865,977 |
| 6210 | 6111 | Nortel (India) Pvt. Ltd | 6,985,020 | | | (39,020,355) | | (39,029,335) | - | |
| 6210 | 6112 | Nortel Tech Exc Centre Pvt Ltd | | | | (11,515) | | (11,515) | - | |
| 6210 | 7120 | Nortel (China) Ltd | | | | (419,492) | | (419,492) | - | |
| 6210 | 3171 | Nortel de México | | | | (478) | | (478) | - | |
| 6210 | 7121 | Nortel Shanghai Co Ltd | 21,840 | | | | | | - | |
| **TOTAL** | | | | (171,592,256) | 48,870,000 | (162,183,080) | 5,450,000 | (156,733,060) | - | 5,450,000 |

## NN Asia

| Code | Trading Partner | Legal Entity Name | Net post filing position as at September 30, 2011 | Net Pre-Filing position per ARA | Gross Initial and Subsequent Payments | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|
| **Pre-filing receivables from:** | | | | | | | | | | |
| 7100 | 1101 | NNTC | | - | - | 176,933 | - | 176,933 | - | - |
| 7100 | 2002 | NN Cala Inc. | | - | - | 7,694 | - | 7,694 | - | - |
| 7100 | 4160 | Nortel Networks S.A. | (13,629) | - | - | 265,892 | - | 265,892 | - | - |
| 7100 | 4162 | Nortel France SAS | | - | - | 22,406 | - | 22,406 | - | - |
| 7100 | 7120 | NN China | 1,583,020 | - | - | 5,884,628 | - | 5,884,628 | - | - |
| 7100 | 7125 | Nortel Networks Communications | (8,223) | | | 13,184 | | 13,184 | - | - |
| 7100 | 6210 | Nortel Networks Singapore Pte Ltd | (189) | 121,719,556 | (34,066,108) | 87,053,450 | (3,865,977) | 83,187,474 | - | |
| 7100 | 6160 | Nortel Networks Malaysia Sdn. Bhd | | 478,805 | (386,255) | 92,549 | (24,803) | 67,746 | - | |
| 7100 | 6220 | Nortel Networks (Thailand) Ltd | | 1,156,704 | | 1,156,704 | | 1,156,704 | - | |
| 7100 | 6231 | Nortel Vietnam Ltd | 11,853 | 9,637,127 | | 9,637,127 | | 9,637,127 | - | |
| 7100 | 6111 | Nortel (India) Pvt. Ltd | 446,607 | 253,027 | | 253,027 | | 253,027 | - | |
| 7100 | 7121 | Nortel Shanghai Co Ltd | 1,737,876 | | | 3,277,335 | | 3,277,335 | - | |
| 7100 | 7124 | Guandong Nortel Telecom. | (4,829,118) | | | 3,919,863 | | | - | |
| **Pre-filing payables to:** | | | | | | | | | | |
| 7100 | 1102 | NNIC | 61,960 | (1,884,631) | 1,148,377 | (736,304) | 227,109 | (509,195) | - | 227,109 |
| 7100 | 1002 | NNL - Taiwan sales (7111) | 273,142 | (12,315,228) | 7,503,938 | (4,811,290) | 1,484,014 | (3,327,276) | - | 1,484,014 |
| 7100 | 1104 | NNGC | (443) | (433,357) | 264,054 | (169,303) | 52,221 | (117,083) | - | 52,221 |
| 7100 | 2001 | NNI | 151,055 | (40,546,244) | 28,544,442 | (18,301,802) | 5,645,084 | (12,656,718) | - | 5,645,084 |
| 7100 | 4160 | Nortel Networks S.A. | (13,629) | | | | | | - | |
| 7100 | 4220 | Nortel Networks (Ireland) Limited | (11,373) | (17,132) | 10,439 | (6,693) | 2,064 | (4,629) | - | 2,064 |
| 7100 | 4220 | Nortel Networks S.p.A. | 7,671 | | | | | | - | |
| 7100 | 4240 | Nortel Networks BV | 8,219 | (15,420,100) | 9,395,804 | (6,024,295) | 1,858,159 | (4,166,137) | (258,166) | 1,599,993 |
| 7100 | 4310 | Nortel Networks Hispania, S.A. | | (15,651) | 9,536 | (6,114) | 1,886 | (4,228) | - | 1,886 |
| 7100 | 4360 | Nortel Networks UK Limited | (51,614) | (21,094,629) | 12,853,418 | (8,241,209) | 2,541,953 | (5,699,256) | - | 2,541,953 |
| 7100 | 6100 | Nortel Networks Australia Pty Limited | | (6,568,288) | 4,002,201 | (2,566,086) | 791,494 | (1,774,592) | - | 791,494 |
| 7100 | 6120 | PT Nortel Networks Indonesia | | (51,021) | 31,076 | (19,925) | 6,146 | (13,779) | - | 6,146 |
| 7100 | 6130 | Nortel Networks Japan | | (37,724,292) | 22,986,237 | (14,738,055) | 4,545,887 | (10,192,168) | - | 4,545,887 |
| 7100 | 6140 | Nortel Networks Korea Limited | | (15,964,420) | 8,916,792 | (8,047,628) | 2,044,253 | (5,003,374) | - | 2,044,253 |
| 7100 | 6180 | Nortel Networks New Zealand Limited | | (268,633) | 163,684 | (104,949) | 32,371 | (72,578) | - | 32,371 |
| 7100 | 7100 | NN (Asia) Ltd - Taiwan sales (7112) | | (2) | 1 | (1) | 0 | (0) | - | |
| 7100 | 3171 | Nortel de México | | (77,557) | | | | (77,557) | - | |
| **TOTAL** | | | | (159,603,054) | 95,830,000 | (63,661,212) | 19,232,621 | (44,618,891) | (258,166) | 18,974,455 |

## Japan

| Code | Trading Partner | Legal Entity Name | Net post filing position as at September 30, 2011 | Net Pre-Filing position per ARA | Gross Initial and Subsequent Payments | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|
| **Pre-filing receivables from:** | | | | | | | | | | |
| 6130 | 7100 | Nortel Networks (Asia) Limited | | 37,724,292 | (22,986,237) | 14,738,055 | (4,545,887) | 10,192,168 | - | |
| 6130 | 6100 | Nortel Networks Australia Pty Limited | | 1,022 | (578) | 444 | (444) | 0 | - | |
| 6130 | 6111 | Nortel (India) Pvt. Ltd | | | | | | | - | |
| **Pre-filing payables to:** | | | | | | | | | | |
| 6130 | 1002 | NNL | (182,595) | | | | | | - | |
| 6130 | 1002 | NNL - Taiwan sales (7111) | | (10,257,869) | 10,257,860 | | | | - | |
| 6130 | 2001 | NNI | 1,466,091 | (251,511) | 251,851 | | | | - | |
| 6130 | 4240 | Nortel Networks BV | | (1,642) | 1,642 | | | | - | |
| 6130 | 4360 | Nortel Networks UK Limited | | (1,156,171) | 1,156,171 | | | | - | |
| 6130 | 6160 | Nortel Networks Malaysia Sdn. Bhd | | (4,452) | 4,452 | | | | - | |
| 6130 | 6210 | Nortel Networks Singapore Pte Ltd | | (548,236) | 548,236 | | | | - | |
| 6130 | 7120 | Nortel (China) Ltd | (26,821) | | | (47,896) | | (47,896) | - | |
| **TOTAL** | | | | (2,220,211) | 12,220,211 | (47,896) | | (47,896) | | |

**Appendix C - 1**
Inter-company balances as at September 30, 2011
*in USD*
Pre-filing balances using January 14, 2009 fx rates
Post-filing balances using September 30, 2011 fx rates
India PVt. Net payable pre-filing balances per RBI approval submission (November 30, 2010 fx rates)
For Balances a positive number = Receivable and a negative number = Payable

## New Zealand

| | Code | Trading Parter | Legal Entity Name | Net post filing position as at September 30, 2011 | Net Pre-Filing position per ARA | Gross Initial and Subsequent Payments | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-filing receivables from: | 6180 | 1002 | NNL | (17,280) | | | 3,040,612 | | 3,040,612 | - | - |
| | 6180 | 4240 | Nortel Networks B.V | (1,173) | | | 579 | | 579 | - | - |
| | 6180 | 7100 | Nortel Networks (Asia) Limited | - | 268,633 | (163,684) | 104,949 | (32,371) | 72,578 | - | - |
| | 6180 | 6220 | Nortel Networks (Thailand) Ltd | - | 452 | | 452 | | 452 | - | - |
| | 6180 | 6111 | Nortel (India) Pvt. Ltd. | 2 | 24,595 | | 24,595 | | 24,595 | - | - |
| Pre-filing payables to: | 6180 | 2001 | NNI | - | (26,333) | 26,333 | - | | - | - | - |
| | 6180 | 4360 | Nortel Networks UK Limited | - | (361,078) | 361,078 | - | | - | - | - |
| | 6180 | 6100 | Nortel Networks Australia Pty Limited | - | (53,621) | 53,621 | - | | - | - | - |
| | 6180 | 6160 | Nortel Networks Malaysia Sdn. Bhd. | - | (8,124) | 8,124 | - | | - | - | - |
| | 6180 | 6210 | Nortel Networks Singapore Pte Ltd | - | (1,329,110) | 1,329,110 | - | | - | - | - |
| | TOTAL | TOTAL | | - | (1,776,206) | 1,778,266 | - | | - | - | - |

## Australia

| | Code | Trading Parter | Legal Entity Name | Net post filing position as at September 30, 2011 | Net Pre-Filing position per ARA | Gross Initial and Subsequent Payments | Net pre-filing balance as at March 28, 2012 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-filing receivables from: | 6100 | 1102 | Nortel Int Corp | - | | | 1,480 | | 1,480 | - | - |
| | 6100 | 4210 | Nortel (Ireland) Ltd | - | | | 75 | | 75 | - | - |
| | 6100 | 4270 | 4270 Nortel Portugal S.A. | - | | | 1,749 | | 1,749 | - | - |
| | 6100 | 6101 | Nortel Networks (Photonics) Pty Ltd | - | | | 27,414,783 | | 27,414,783 | - | - |
| | 6100 | 6112 | Nortel Tech Ext Centre Pvt Ltd | - | | | 142,467 | | 142,467 | - | - |
| | 6100 | 7121 | Nortel Shanghai Co Ltd | - | | | 23,517 | | 23,517 | - | - |
| | 6100 | 6210 | Nortel Networks Singapore Pte Ltd | - | 376,269 | (107,162) | 269,106 | (11,351) | 257,155 | - | - |
| | 6100 | 7100 | Nortel Networks (Asia) Limited | - | 6,568,288 | (4,002,201) | 2,566,086 | (791,494) | 1,774,592 | - | - |
| | 6100 | 6180 | Nortel Networks New Zealand Limited | - | 53,621 | (53,621) | - | | - | - | - |
| | 6100 | 6120 | PT Nortel Networks Indonesia | - | 41,483 | (41,483) | - | | - | - | - |
| | 6100 | 6140 | Nortel Networks Korea Limited | - | 921,101 | (460,363) | 460,738 | | 460,738 | - | - |
| | 6100 | 6160 | Nortel Networks Malaysia Sdn. Bhd. | - | 2,057,572 | (1,658,858) | 397,712 | (106,590) | 291,127 | - | - |
| | 6100 | 6220 | Nortel Networks (Thailand) Ltd. | - | 3,090,059 | | 3,090,059 | | 3,090,059 | - | - |
| | 6100 | 6231 | Nortel Vietnam Ltd | - | 1,232,741 | | 1,232,741 | | 1,232,741 | - | - |
| | 6100 | 6111 | Nortel (India) Pvt. Ltd. | - | 7,127,189 | | 7,127,189 | | 7,127,189 | - | - |
| | 6100 | 7120 | Nortel (China) Ltd | - | | | 293,104 | | 293,104 | - | - |
| Pre-filing payables to: | 6100 | 1002 | NNL - Taiwan sales (7111) | (5,383) | (22,367,531) | 12,647,107 | (9,719,924) | 9,719,923 | (0) | - | 9,719,923 |
| | 6100 | 2001 | NNI | (13) | (3,376,986) | 1,909,467 | (1,467,519) | 1,467,519 | (0) | - | 1,467,519 |
| | 6100 | 4160 | Nortel Networks SA (French entity) | - | (34,574) | 19,549 | (15,025) | 15,025 | (0) | - | 15,025 |
| | 6100 | 4240 | Nortel Networks BV | - | (132,067) | 74,675 | (57,392) | 57,392 | (0) | - | 57,392 |
| | 6100 | 4360 | Nortel Networks UK Limited | - | (3,342,198) | 1,889,775 | (1,452,385) | 1,452,385 | (0) | - | 1,452,385 |
| | 6100 | 5180 | Dubai, United Arab Emirates branch | - | (1,306) | 738 | (568) | 568 | (0) | - | 568 |
| | 6100 | 6130 | Nortel Networks Japan | - | (1,022) | 578 | (444) | 444 | (0) | - | 444 |
| | 6100 | 7124 | Guandong Nortel Telecom. | - | | | - | | - | - | - |
| | 6100 | 7125 | Nortel Networks Communications | - | | | - | | - | - | - |
| | TOTAL | | | (29,255,145) | 16,541,889 | (12,713,256) | 12,713,256 | (0) | - | 12,713,256 | |

## Indonesia

| | Code | Trading Parter | Legal Entity Name | Net post filing position as at September 30, 2011 | Net Pre-Filing position per ARA | Gross Initial and Subsequent Payments | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-filing receivables from: | 6120 | 4160 | Nortel Networks S.A. | - | | | 3,966 | | 3,966 | - | - |
| | 6120 | 4210 | Nortel (Ireland) Ltd | - | | | 70 | | 70 | - | - |
| | 6120 | 6210 | Nortel Networks Singapore Pte Ltd | - | 6,596,676 | (1,878,754) | 4,717,922 | (209,519) | 4,508,403 | - | - |
| | 6120 | 7100 | Nortel Networks (Asia) Limited | - | 51,001 | (31,076) | 19,925 | (6,146) | 13,779 | - | - |
| | 6120 | 6160 | Nortel Networks Malaysia Sdn. Bhd. | - | 53 | (43) | 10 | (3) | 7 | - | - |
| | 6120 | 6231 | Nortel Vietnam Ltd | 287 | | | - | | - | - | - |
| Pre-filing payables to: | 6120 | 1002 | NNL - Taiwan sales (7111) | - | (53,202) | 53,202 | - | | - | - | - |
| | 6120 | 2001 | NNI | - | (13,992) | 13,992 | - | | - | - | - |
| | 6120 | 6100 | Nortel Networks Australia Pty Limited | - | (41,483) | 41,483 | - | | - | - | - |
| | 6120 | 6220 | Nortel Networks (Thailand) Ltd. | - | (13,920) | 13,920 | - | | - | - | - |
| | 6120 | 6111 | Nortel (India) Pvt. Ltd. | (265,245) | | | (7,381) | | (7,381) | - | - |
| | 6120 | 7120 | Nortel (China) Ltd | - | | | (25,280) | | (25,280) | - | - |
| | 6120 | 3171 | Nortel de México | - | | | (171) | | (171) | - | - |
| | TOTAL | | | | (122,598) | 122,598 | (32,832) | | (32,832) | - | - |

## Korea

| | Code | Trading Parter | Legal Entity Name | Net post filing position as at September 30, 2011 | Net Pre-Filing position per ARA | Gross Initial and Subsequent Payments | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-filing receivables from: | 6140 | 2001 | Nortel Networks Inc. | - | | | 2,166,851 | | 2,166,851 | - | - |
| | 6140 | 4360 | Nortel Networks UK Limited | - | | | 33,761 | | 33,761 | - | - |
| | 6140 | 7100 | Nortel Networks (Asia) Limited | - | 16,964,420 | (8,916,792) | 8,047,628 | (2,044,260) | 6,003,374 | - | - |
| | 6140 | 6220 | Nortel Networks (Thailand) Ltd. | - | 3,087 | | 3,087 | | 3,087 | - | - |
| Pre-filing payables to: | 6140 | 1101 | NNTC | - | (1,913) | 956 | (957) | | (957) | - | - |
| | 6140 | 1002 | Nortel Networks - Taiwan sales (7111) | - | (5,318,130) | 2,657,981 | (2,660,149) | | (2,660,149) | - | - |
| | 6140 | 4160 | Nortel Networks SA (French entity) | - | (1,871,479) | 935,358 | (936,121) | | (936,121) | - | - |
| | 6140 | 4210 | Nortel Networks (Ireland) Limited | - | (16,679) | 8,336 | (8,343) | | (8,343) | - | - |
| | 6140 | 6100 | Nortel Networks Australia Pty Limited | - | (921,101) | 460,363 | (460,738) | | (460,738) | - | - |
| | 6140 | 6160 | Nortel Networks Malaysia Sdn. Bhd. | - | (62,150) | 31,062 | (31,087) | | (31,087) | - | - |
| | 6140 | 6210 | Nortel Networks Singapore Pte Ltd | - | (10,196,042) | 5,095,943 | (5,100,099) | | (5,100,099) | - | - |
| | 6140 | 7120 | Nortel (China) Ltd | - | | | (6,006) | | (6,006) | - | - |
| | TOTAL | | | | (18,387,495) | 9,190,000 | (9,203,495) | | (9,203,495) | - | - |

Appendix C - 1
Inter-company balances as at September 30, 2011
in USD
Pre-filing balances using January 14, 2009 fx rates
Post-filing balances using September 30, 2011 fx rates)
India Pvt. Net payable pre-filing balances per RBI approval submission (November 30, 2010 fx rates)
For Balances a positive number = Receivable and a negative number = Payable

## Malaysia

| | Code | Trading Parter | Legal Entity Name | Net post filing position as at September 30, 2011 | Net Pre-Filing position per ARA | Gross Initial and Subsequent Payments | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-filing receivables from: | 6160 | 1101 | Nortel Technology Corp | | - | | 3,222 | | 3,222 | | |
| | 6160 | 3170 | Nortel Networks de Mexico S.A. | | - | | 28,793 | | 28,793 | | |
| | 6160 | 4160 | Nortel Networks S.A. | | - | | 3,035 | | 3,035 | | |
| | 6160 | 4360 | Nortel Networks UK Limited | | - | | 98,358 | | 98,358 | | |
| | 6160 | 6210 | Nortel Networks Singapore Pte Ltd | 12,155,000 | (3,461,782) | | 8,693,218 | (386,059) | 8,307,159 | | |
| | 6160 | 6130 | Nortel Networks Japan | 4,452 | (4,452) | | | | | | |
| | 6160 | 6180 | Nortel Networks New Zealand Limited | 8,124 | (8,124) | | | | | | |
| | 6160 | 6140 | Nortel Networks Korea Limited | 62,150 | (31,082) | | 31,067 | | 31,067 | | |
| | 6160 | 6220 | Nortel Networks (Thailand) Ltd. | 2,970 | | | 2,970 | | 2,970 | | |
| Pre-filing payables to: | 6160 | 1002 | NNL - Taiwan sales (7111) | (2,868,645) | 2,314,159 | | (554,487) | 148,601 | (405,886) | | 148,601 |
| | 6160 | 2001 | NNI | (2,341,718) | 1,889,082 | | (452,636) | 121,305 | (331,331) | | 121,305 |
| | 6160 | 4162 | Nortel Networks France SAS | (554) | 471 | | (113) | 30 | (83) | | 30 |
| | 6160 | 4210 | Nortel Networks (Ireland) Limited | (152) | 131 | | (31) | 8 | (23) | | 8 |
| | 6160 | 6100 | Nortel Networks Australia Pty Limited | (2,057,572) | 1,659,850 | | (397,712) | 106,586 | (291,127) | (924) | 105,962 |
| | 6160 | 6120 | PT Nortel Networks Indonesia | (53) | 43 | | (10) | 3 | (7) | | 3 |
| | 6160 | 7100 | NN (Asia) Ltd. - Taiwan sales (7112) | (478,805) | 386,255 | | (92,549) | 24,803 | (67,746) | (89) | 24,714 |
| | 6160 | 6111 | Nortel (India) Pvt. Ltd | | | | (54,035) | | (54,035) | | |
| | 6160 | 7120 | Nortel (China) Ltd | | | | (19,981) | | (19,981) | | |
| | 6160 | 3171 | Nortel de México | | | | (780) | | (780) | | |
| | TOTAL | | | (7,747,538) | 6,250,000 | | (1,572,314) | 401,336 | (1,170,978) | (713) | 400,823 |

## Thailand

| | Code | Trading Parter | Legal Entity Name | Net post filing position as at September 30, 2011 | Net Pre-Filing position per ARA | Gross Initial and Subsequent Payments | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-filing receivables from: | 6220 | 4160 | Nortel Networks S.A. | | - | | 30,095 | | 30,095 | | |
| | 6220 | 7120 | Nortel (China) Ltd | | - | | 1,572 | | 1,572 | | |
| | 6220 | 7121 | Nortel Shanghai Co Ltd | | - | | 272 | | 272 | | |
| | 6220 | 6210 | Nortel Networks Singapore Pte Ltd | 14,094,629 | (4,014,194) | | 10,080,435 | (447,664) | 9,632,770 | | |
| | 6220 | 6120 | PT Nortel Networks Indonesia | 13,920 | (13,920) | | | | | | |
| | 6220 | 6231 | Nortel Vietnam Ltd | | | | 1,221 | | 1,221 | | |
| Pre-filing payables to: | 6220 | 1002 | NNL - Taiwan sales (7111) | (3,786,560) | | | (3,786,560) | | (3,786,560) | | |
| | 6220 | 2001 | NNI | (2,454,454) | | | (2,454,454) | | (2,454,454) | | |
| | 6220 | 4360 | Nortel Networks UK Limited | (680,364) | | | (680,364) | | (680,364) | | |
| | 6220 | 6100 | Nortel Networks Australia Pty Limited | (3,090,059) | | | (3,090,059) | | (3,090,059) | | |
| | 6220 | 6140 | Nortel Networks Korea Limited | (3,087) | | | (3,087) | | (3,087) | | |
| | 6220 | 6160 | Nortel Networks Malaysia Sdn. Bhd. | (2,970) | | | (2,970) | | (2,970) | | |
| | 6220 | 6180 | Nortel Networks New Zealand Limited | (452) | | | (452) | | (452) | | |
| | 6220 | 7100 | NN (Asia) Ltd. - Taiwan sales (7112) | (1,156,704) | | | (1,156,704) | | (1,156,704) | | |
| | 6220 | 3171 | Nortel de México | | | | (503) | | (503) | | |
| | 6220 | 6111 | Nortel (India) Pvt. Ltd. | | | | (17,704) | | (17,704) | | |
| | TOTAL | | | (11,174,651) | | | (11,192,858) | | (11,192,858) | | |

## Vietnam

| | Code | Trading Parter | Legal Entity Name | Net post filing position as at September 30, 2011 | Net Pre-Filing position per ARA | Gross Initial and Subsequent Payments | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-filing receivables from: | 6231 | 1002 | Nortel Networks Limited | 73,302 | - | | | | | | |
| | 6231 | 4160 | Nortel Networks S.A. | | - | | 9,842 | | 9,842 | | |
| | 6231 | 7121 | Nortel Shanghai Co Ltd | | - | | 460 | | 460 | | |
| Pre-filing payables to: | 6231 | 2001 | NNI | (46,889) | (1,532,036) | | (1,532,036) | | (1,532,036) | | |
| | 6231 | 2002 | Nortel Networks (CALA) Inc. | | (57,939) | | (57,939) | | (57,939) | | |
| | 6231 | 4360 | Nortel Networks UK Limited | (5,179) | (191,941) | | (191,941) | | (191,941) | | |
| | 6231 | 6100 | Nortel Networks Australia Pty Limited | (1,161) | (1,232,741) | | (1,232,741) | | (1,232,741) | | |
| | 6231 | 6120 | PT Nortel Networks Indonesia | (287) | | | | | | | |
| | 6231 | 6210 | Nortel Networks Singapore Pte Ltd | (744) | (1,824,776) | | (1,824,776) | | (1,824,776) | | |
| | 6231 | 6220 | Nortel Networks (Thailand) Ltd | | (1,218) | | (1,218) | | (1,218) | | |
| | 6231 | 1002 | NNL - Taiwan sales (7111) | | (1,272,073) | | (1,272,073) | | (1,272,073) | | |
| | 6231 | 7100 | NN (Asia) Ltd. - Taiwan sales (7112) | (11,853) | (9,637,127) | | (9,637,127) | | (9,637,127) | | |
| | 6231 | 3171 | Nortel de México | (2,637) | | | (2,768) | | (2,768) | | |
| | 6231 | 7120 | Nortel (China) Ltd | | | | (976,187) | | (976,187) | | |
| | 6231 | 6111 | Nortel (India) Pvt. Ltd. | (80) | | | (815,836) | | (815,836) | | |
| | TOTAL | | | (15,749,851) | | | (17,344,643) | | (17,344,643) | | |

Appendix C - 1
Inter-company balances as at September 30, 2011
in USD
Pre-filing balances using January 14, 2009 fx rates
Post-filing balances using September 30, 2011 fx rates
India Pvt. Net payable pre-filing balances per RBI approval submission (November 30, 2010 fx rates)
For Balances a positive number = Receivable and a negative number = Payable

**India**

| | Code | Trading Parter | Legal Entity Name | Net post filing position as at September 30, 2011 | Net Pre-Filing position per RBI approval submission | | Net pre-filing balance as at November 30, 2010 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-filing receivables from: | 6111 | 2002 | NN Cala Inc. | (1,980) | - | - | 167,634 | | 167,634 | - | - |
| | 6111 | 2115 | NN Int. Inc. | - | - | - | 17,184 | | 17,184 | - | - |
| | 6111 | 4110 | Nortel Networks N.V. | 14,886 | - | - | 5,030 | | 5,030 | - | - |
| | 6111 | 4162 | Nortel France SAS | 653 | - | - | 200 | | 200 | - | - |
| | 6111 | 6210 | Nortel (Ireland) Ltd | 22,478 | - | - | 341 | | 341 | - | - |
| | 6111 | 6120 | Nortel Indonesia | 285,245 | - | - | 7,381 | | 7,381 | - | - |
| | 6111 | 6160 | Nortel Malaysia Sdn. Bhd. | | - | - | 54,035 | | 54,035 | - | - |
| | 6111 | 6210 | Nortel Networks Singapore Pte | 16,985,209 | - | - | 39,029,335 | | 39,029,335 | - | - |
| | 6111 | 6220 | Nortel (Thailand) Ltd. | | - | - | 17,704 | | 17,704 | - | - |
| | 6111 | 6231 | Nortel Vietnam Ltd | 80 | - | - | 615,838 | | 615,838 | - | - |
| Pre-filing payables to: | 6111 | 1101 | NNTC | | (14,345) | | (14,345) | | (14,345) | - | - |
| | 6111 | 2112 | NIII | (300,609) | | | (19,237,898) | | (19,237,898) | - | - |
| | 6111 | 1002 | NNL - Taiwan sales (7111) | (2,430,043) | (35,599,654) | | (35,599,654) | | (35,599,654) | - | - |
| | 6111 | 2001 | NNI | (3,232,097) | (44,195,251) | | (44,195,251) | | (44,195,251) | - | - |
| | 6111 | 4160 | Nortel Networks SA (French entity) | (968) | (3,048,477) | | (3,048,477) | | (3,048,477) | - | - |
| | 6111 | 4220 | Nortel Networks S.p.A. | 3,162 | | | | | | - | - |
| | 6111 | 4240 | Nortel Networks BV | (588,838) | (4,121,612) | | (4,121,612) | | (4,121,612) | - | - |
| | 6111 | 4290 | O.O.O. Nortel Networks | | | | | | | - | - |
| | 6111 | 4310 | Nortel Networks Hispania | 4,743 | | | | | | - | - |
| | 6111 | 4360 | Nortel Networks UK Limited | (6,369,394) | (10,182,233) | | (10,182,233) | | (10,182,233) | - | - |
| | 6111 | 5102 | NN Israel (Sales and Marketing) Limited | (21,882) | (29,289) | | (29,289) | | (29,289) | - | - |
| | 6111 | 6100 | Nortel Networks Australia Pty Limited | (514,483) | (7,127,189) | | (7,127,189) | | (7,127,189) | - | - |
| | 6111 | 6130 | NN Japan | | | | | | | - | - |
| | 6111 | 6180 | Nortel Networks New Zealand Limited | (0) | (24,595) | | (24,595) | | (24,595) | - | - |
| | 6111 | 7100 | NN (Asia) Ltd - Taiwan sales (7112) | (446,807) | (253,027) | | (253,027) | | (253,027) | - | - |
| | 6111 | 7120 | NN China | 62,402 | | | (68,961) | | (68,961) | - | - |
| | 6111 | 7124 | GDNT | 27,129 | | | (34,421) | | (34,421) | - | - |
| | 6111 | 3171 | Nortel de México | (54,729) | | | (5,486) | | (5,486) | - | - |
| | **TOTAL** | | | | (104,596,192) | - | (123,942,947) | - | (123,942,947) | - | - |

**NTEC**

| | Code | Trading Parter | Legal Entity Name | Net post filing position as at September 30, 2011 | | | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-filing receivables from. | 6112 | 2001 | Nortel Networks Inc. | (2,079) | | | 111,432 | | 111,432 | - | - |
| | 6112 | 6210 | Nortel Networks Singapore Pte | | | | 11,516 | | 11,516 | - | - |
| Pre-filing payables to: | 6112 | 1002 | Nortel Networks Limited | (448,905) | | | (40,818) | | (40,818) | - | - |
| | 6112 | 6100 | Nortel Networks Australia Pty | | | | (142,467) | | (142,467) | - | - |

**China**

| | Code | Trading Parter | Legal Entity Name | Net post filing position as at September 30, 2011 | | | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-filing receivables from: | 7120 | 1002 | Nortel Networks Limited | 9,236,258 | | | 104,218,075 | | 104,218,075 | - | - |
| | 7120 | 1102 | Nortel Int Corp | | | | 734,289 | | 734,289 | - | - |
| | 7120 | 3110 | Nortel Industrie e Comerc | | | | | | | - | - |
| | 7120 | 4360 | Nortel Networks UK Limited | (175,697) | | | 69,849 | | 69,849 | - | - |
| | 7120 | 6111 | Nortel (India) Pvt. Ltd. | (62,402) | | | 68,961 | | 68,961 | - | - |
| | 7120 | 6120 | Nortel Indonesia | | | | 25,280 | | 25,280 | - | - |
| | 7120 | 6130 | Nortel Japan | 26,821 | | | 47,896 | | 47,896 | - | - |
| | 7120 | 6140 | Nortel Korea Ltd | | | | 6,000 | | 6,000 | - | - |
| | 7120 | 6160 | Nortel Malaysia Sdn. Bhd. | | | | 19,961 | | 19,961 | - | - |
| | 7120 | 6210 | Nortel Networks Singapore Pte | | | | 419,492 | | 419,492 | - | - |
| | 7120 | 6231 | Nortel Vietnam Ltd | | | | 976,187 | | 976,187 | - | - |
| | 7120 | 7121 | Nortel Shanghai Co Ltd | (58,150) | | | 541,938 | | 541,938 | - | - |
| | 7120 | 7123 | SNTC | (33,756) | | | 31,524 | | 31,524 | - | - |
| | 7120 | 7125 | Nortel Networks Communications | (3,668,749) | | | 3,551,291 | | 3,551,291 | - | - |
| Pre-filing payables to: | 7120 | 1101 | Nortel Technology Corp | (180,234) | | | (1,441,088) | | (1,441,088) | - | - |
| | 7120 | 2001 | Nortel Networks Inc. | (180,019) | | | (7,874,695) | | (7,874,695) | - | - |
| | 7120 | 3170 | Nortel Networks de Mexico S.A. | | | | (33,798) | | (33,798) | - | - |
| | 7120 | 3171 | Nortel de México | | | | (8,203) | | (8,203) | - | - |
| | 7120 | 4160 | Nortel Networks S.A. | | | | (285,409) | | (285,409) | - | - |
| | 7120 | 4162 | Nortel France SAS | | | | (409) | | (409) | - | - |
| | 7120 | 4210 | Nortel (Ireland) Ltd | | | | (9,904) | | (9,904) | - | - |
| | 7120 | 4220 | Nortel Networks S.p.A. | | | | (60,030) | | (60,030) | - | - |
| | 7120 | 4240 | Nortel Networks B.V. | | | | (177,532) | | (177,532) | - | - |
| | 7120 | 4310 | Nortel Networks Hispania | | | | (99,286) | | (99,286) | - | - |
| | 7120 | 6100 | Nortel Networks Australia Pty | | | | (293,104) | | (293,104) | - | - |
| | 7120 | 6220 | Nortel (Thailand) Ltd. | | | | (1,572) | | (1,572) | - | - |
| | 7120 | 7100 | Nortel Networks (Asia) Limited | (1,569,820) | | | (5,884,628) | | (5,884,628) | - | - |
| | 7120 | 7124 | Guandong Nortel Telecom. | (2,211,803) | | | (115,333) | | (115,333) | - | - |

**Shanghai**

| | Code | Trading Parter | Legal Entity Name | Net post filing position as at September 30, 2011 | | | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-filing payables to: | 7121 | 1002 | Nortel Networks Limited | (277,163) | | | (599,129) | | (599,129) | - | - |
| | 7121 | 1101 | Nortel Technology Corp | | | | (74,577) | | (74,577) | - | - |
| | 7121 | 2001 | Nortel Networks Inc. | (22,782) | | | (351,187) | | (351,187) | - | - |
| | 7121 | 3171 | Nortel de México | (3,429) | | | (730) | | (730) | - | - |
| | 7121 | 4260 | Nortel Polska Sp. z o.o. | | | | (109,325) | | (189,325) | - | - |
| | 7121 | 4360 | Nortel Networks UK Limited | | | | | | | - | - |
| | 7121 | 6100 | Nortel Networks Australia Pty | | | | (23,517) | | (23,517) | - | - |
| | 7121 | 6210 | Nortel Networks Singapore Pte | (21,840) | | | | | | - | - |
| | 7121 | 6220 | Nortel (Thailand) Ltd | | | | (272) | | (272) | - | - |
| | 7121 | 6231 | Nortel Vietnam Ltd | | | | (460) | | (460) | - | - |
| | 7121 | 7100 | Nortel Networks (Asia) Limited | (1,737,376) | | | (3,277,335) | | (3,277,335) | - | - |
| | 7121 | 7120 | Nortel (China) Ltd | 58,150 | | | (541,938) | | (541,938) | - | - |
| | 7121 | 7124 | Guandong Nortel Telecom. | 527,960 | | | (352,142) | | (352,142) | - | - |
| | 7121 | 7125 | Nortel Networks Communications | 149,425 | | | (149,408) | | (149,408) | - | - |

**Appendix C - 1**
Inter-company balances as at September 30, 2011
in USD
Pre-filing balances using January 14, 2009 fx rates
Post-filing balances using September 30, 2011 fx rates
India Pvt. Net payable pre-filing balances per RBI approval submission (November 30, 2010 fx rates)
For Balances a positive number = Receivable and a negative number = Payable

## Mexico (3170)

| | Code | Trading Parter | Legal Entity Name | Net post filing position as at September 30, 2011 | | | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-filing receivables from: | 3170 | 2002 | Nortel Networks (CALA) Inc | 2,440 | | | 563,142 | | 563,142 | - | - |
| | 3170 | 3150 | Nortel del Ecuador S.A. | - | | | | | | - | - |
| | 3170 | 3160 | Nortel de Guatemala Ltda | - | | | | | | - | - |
| | 3170 | 4160 | Nortel Networks S.A. | - | | | 1,490 | | 1,490 | - | - |
| | 3170 | 7120 | Nortel (China) Ltd | - | | | 33,798 | | 33,798 | - | - |
| Pre-filing payables to: | 3170 | 1002 | Nortel Networks Limited | 154,280 | | | (11,705,861) | | (11,705,861) | - | - |
| | 3170 | 2001 | Nortel Networks Inc. | 175,313 | | | (8,834,568) | | (8,834,568) | - | - |
| | 3170 | 3100 | Nortel de Argentina S.A. | - | | | | | | - | - |
| | 3170 | 3110 | Nortel Industrie e Comerc | - | | | | | | - | - |
| | 3170 | 3130 | Nortel Chile S.A. | - | | | | | | - | - |
| | 3170 | 3140 | Nortel Networks Colombia | - | | | (120,183) | | (120,183) | - | - |
| | 3170 | 3171 | Nortel de México | 330,996 | | | | | | - | - |
| | 3170 | 4240 | Nortel Networks B.V. | - | | | (58,062) | | (58,062) | - | - |
| | 3170 | 6160 | Nortel Malaysia Sdn. Bhd. | - | | | (28,793) | | (28,793) | - | - |

## Mexico (3171)

| | Code | Trading Parter | Legal Entity Name | Net post filing position as at September 30, 2011 | | | Net pre-filing balance as at September 30, 2011 | 4th Estate Settlement Net Cash Balance Payments | Remaining pre-filing balance | Withholding tax | Net cash balance received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pre-filing receivables from: | 3171 | 1001 | Nortel Networks Corporation | - | | | 59 | | 59 | - | - |
| | 3171 | 1101 | Nortel Technology Corp | - | | | 276,176 | | 276,176 | - | - |
| | 3171 | 2001 | Nortel Networks Inc. | (3,539,478) | | | 4,658,949 | | 4,658,949 | - | - |
| | 3171 | 2002 | Nortel Networks (CALA) Inc | (2,818,249) | | | 3,045,807 | | 3,045,807 | - | - |
| | 3171 | 2107 | Alteon WebSystems, Inc. | 68 | | | 5,164 | | 5,164 | - | - |
| | 3171 | 2112 | Nortel Networks India Int | - | | | 50 | | 50 | - | - |
| | 3171 | 2115 | Nortel Int Inc. | - | | | 836 | | 836 | - | - |
| | 3171 | 3100 | Nortel de Argentina S.A. | - | | | 200 | | 200 | - | - |
| | 3171 | 3110 | Nortel Industria e Comerc | 388,804 | | | 106,957 | | - | - | - |
| | 3171 | 3130 | Nortel Chile S.A. | - | | | - | | - | - | - |
| | 3171 | 3140 | Nortel Networks Colombia | 378,444 | | | 254,159 | | 254,159 | - | - |
| | 3171 | 3150 | Nortel del Ecuador S.A. | - | | | - | | - | - | - |
| | 3171 | 3160 | Nortel de Guatemala Ltda. | - | | | - | | - | - | - |
| | 3171 | 3170 | Nortel Networks de México S.A. | (330,996) | | | - | | - | - | - |
| | 3171 | 3190 | Nortel del Paraguay | 122 | | | - | | - | - | - |
| | 3171 | 3200 | Nortel Peru S.A.C. | - | | | 200 | | 200 | - | - |
| | 3171 | 3210 | Nortel del Uruguay S.A. | - | | | - | | - | - | - |
| | 3171 | 3220 | Nortel de Venezuela | 42,328 | | | 858 | | 858 | - | - |
| | 3171 | 3280 | Nortel Trinidad and Tobago | 15,978 | | | 55 | | 55 | - | - |
| | 3171 | 4100 | Nortel (Austria) GmbH | 28 | | | 8,821 | | 8,821 | - | - |
| | 3171 | 4130 | Nortel Networks, s.r.o. | - | | | 3,813 | | 3,813 | - | - |
| | 3171 | 4162 | Nortel France SAS | - | | | 3,315 | | 3,315 | - | - |
| | 3171 | 4180 | Nortel GmbH | - | | | 29,481 | | 29,481 | - | - |
| | 3171 | 4200 | Nortel Hungary | 1,916 | | | 4,427 | | 4,427 | - | - |
| | 3171 | 4210 | Nortel (Ireland) Ltd | - | | | 4,336 | | 4,336 | - | - |
| | 3171 | 4260 | Nortel Polska Sp. z o.o. | - | | | 1,823 | | 1,823 | - | - |
| | 3171 | 4270 | 4270 Nortel Portugal S.A. | 3,405 | | | 3,103 | | 3,103 | - | - |
| | 3171 | 4280 | Nortel Networks Romania Srl | 3,476 | | | 532 | | 532 | - | - |
| | 3171 | 4290 | O.O.O. Nortel Networks | 31,451 | | | 42 | | 42 | - | - |
| | 3171 | 4340 | Nortel NETAS Tel A.S. | 927 | | | 4,909 | | 4,909 | - | - |
| | 3171 | 4350 | Nortel Ukraine Limited | - | | | - | | - | - | - |
| | 3171 | 4360 | Nortel Networks UK Limited | 804 | | | 58,159 | | 58,159 | - | - |
| | 3171 | 5102 | Nortel Israel Ltd | 10,410 | | | 18,478 | | 18,478 | - | - |
| | 3171 | 6111 | Nortel (India) Pvt. Ltd | 54,720 | | | 5,486 | | 5,486 | - | - |
| | 3171 | 6120 | Nortel Indonesia | - | | | 171 | | 171 | - | - |
| | 3171 | 6160 | Nortel Malaysia Sdn. Bhd | - | | | 780 | | 780 | - | - |
| | 3171 | 6210 | Nortel Networks Singapore Pte | - | | | 478 | | 478 | - | - |
| | 3171 | 6220 | Nortel (Thailand) Ltd. | - | | | 503 | | 503 | - | - |
| | 3171 | 6231 | Nortel Vietnam Ltd | 2,637 | | | 2,768 | | 2,768 | - | - |
| | 3171 | 7100 | Nortel Networks (Asia) Limited | 2,844 | | | 77,557 | | 77,557 | - | - |
| | 3171 | 7120 | Nortel (China) Ltd | - | | | 8,203 | | 8,203 | - | - |
| | 3171 | 7121 | Nortel Shanghai Co Ltd | 3,429 | | | 730 | | 730 | - | - |
| Pre-filing payables to: | 3171 | 1002 | Nortel Networks Limited | 235,366 | | | (8,872,616) | | (8,872,616) | - | - |
| | 3171 | 4110 | Nortel Networks N.V. | - | | | (585) | | (585) | - | - |
| | 3171 | 4140 | Nortel HPOCS Denmark A/S | - | | | (1,185) | | (1,185) | - | - |
| | 3171 | 4150 | Nortel Networks Oy | - | | | (179) | | (179) | - | - |
| | 3171 | 4160 | Nortel Networks S.A. | - | | | (4,854) | | (4,854) | - | - |
| | 3171 | 4220 | Nortel Networks S.p.A. | - | | | (1,019) | | (1,019) | - | - |
| | 3171 | 4240 | Nortel Networks B.V. | - | | | (4,200) | | (4,200) | - | - |
| | 3171 | 4310 | Nortel Networks Hispania | - | | | (12,060) | | (12,060) | - | - |
| | 3171 | 4320 | Nortel Networks AB | - | | | (377) | | (377) | - | - |
| | 3171 | 4330 | Nortel Networks AG | - | | | (1,046) | | (1,046) | - | - |

**Appendix C - 1**
Inter-company balances as at September 30, 2011
*in USD*
Pre and post filing balances using September 30, 2011 fx rates
For Balances a positive number = Receivable and a negative number = Payable

## Argentina

| Code | Legal Entity Name | Net pre-filing balance as at September 30, 2011 | Post filing position as at September 30, 2011 |
|------|-------------------|------------------------------------------------|-----------------------------------------------|
| **Receivables from:** | | | |
| 3130 | Nortel Networks Chile S.A. | 61,400 | 325,400 |
| **Payables to:** | | | |
| 1002 | Nortel Networks Limited | (4,403,400) | (636,000) |
| 2001 | Nortel Networks Inc. | (214,000) | - |
| 2002 | Nortel Networks (CALA) Inc. | (9,219,000) | 209,500 |
| 3171 | Nortel de México, S. de R.L. de C.V. | (200) | - |
| 3100 | Nortel Networks de Argentina S.A. | - | - |
| 3150 | Nortel Networks del Ecuador S.A. | - | - |
| 3160 | Nortel Networks de Guatemala Ltda. | - | - |
| 3200 | Nortel Networks Peru S.A.C. | - | - |
| 3210 | Nortel Networks del Uruguay S.A. | - | - |

## Chile

| Code | Legal Entity Name | Net pre-filing balance as at September 30, 2011 | Post filing position as at September 30, 2011 |
|------|-------------------|------------------------------------------------|-----------------------------------------------|
| **Payables to:** | | | |
| 1002 | Nortel Networks Limited | (1,900) | - |
| 2001 | Nortel Networks Inc. | | |
| 2002 | Nortel Networks (CALA) Inc. | (5,054,100) | (13,000) |
| 3100 | Nortel Networks de Argentina S.A. | (61,400) | (325,400) |
| 3130 | Nortel Networks Chile S.A. | - | - |
| 3150 | Nortel Networks del Ecuador S.A. | - | - |
| 3160 | Nortel Networks de Guatemala Ltda. | - | - |
| 3171 | Nortel de México, S. de R.L. de C.V. | - | - |
| 3200 | Nortel Networks Peru S.A.C. | - | 1,700 |
| 3210 | Nortel Networks del Uruguay S.A. | - | - |

## Ecuador

| Code | Legal Entity Name | Net pre-filing balance as at September 30, 2011 | Post filing position as at September 30, 2011 |
|------|-------------------|------------------------------------------------|-----------------------------------------------|
| **Payables to:** | | | |
| 1002 | Nortel Networks Limited | (612,700) | (394,000) |
| 2001 | Nortel Networks Inc. | - | - |
| 2002 | Nortel Networks (CALA) Inc. | (252,800) | - |
| 3100 | Nortel Networks de Argentina S.A. | - | - |
| 3130 | Nortel Networks Chile S.A. | - | - |
| 3150 | Nortel Networks del Ecuador S.A. | - | - |
| 3160 | Nortel Networks de Guatemala Ltda. | - | - |
| 3171 | Nortel de México, S. de R.L. de C.V. | - | - |
| 3200 | Nortel Networks Peru S.A.C. | - | - |
| 3210 | Nortel Networks del Uruguay S.A. | - | - |

Inter-company balances as at September 30, 2011
*in USD*
Pre and post filing balances using September 30, 2011 fx rates
For Balances a positive number = Receivable and a negative number = Payable

## Peru

| Code | Legal Entity Name | Net pre-filing balance as at September 30, 2011 | Post filing position as at September 30, 2011 |
|------|-------------------|-------------------------------------------------|-----------------------------------------------|
| Receivables from: | | | |
| 2002 | Nortel Networks (CALA) Inc. | 212,700 | (238,400) |
| Payables to: | | | |
| 1002 | Nortel Networks Limited | - | - |
| 2001 | Nortel Networks Inc. | - | - |
| 3100 | Nortel Networks de Argentina S.A. | - | - |
| 3130 | Nortel Networks Chile S.A. | - | (1,700) |
| 3150 | Nortel Networks del Ecuador S.A. | - | - |
| 3200 | Nortel Networks Peru S.A.C. | - | - |
| 3210 | Nortel Networks del Uruguay S.A. | - | - |
| 3171 | Nortel de México, S. de R.L. de C.V. | (200) | - |
| 3160 | Nortel Networks de Guatemala Ltda. | (50,000) | - |

## Uruguay

| Code | Legal Entity Name | Net pre-filing balance as at September 30, 2011 | Post filing position as at September 30, 2011 |
|------|-------------------|-------------------------------------------------|-----------------------------------------------|
| Receivables from: | | | |
| 3171 | Nortel de México, S. de R.L. de C.V. | - | - |
| Payables to: | | | |
| 1002 | Nortel Networks Limited | (2,563,700) | - |
| 2001 | Nortel Networks Inc. | - | - |
| 2002 | Nortel Networks (CALA) Inc. | (3,187,600) | - |
| 3100 | Nortel Networks de Argentina S.A. | - | - |
| 3130 | Nortel Networks Chile S.A. | - | - |
| 3150 | Nortel Networks del Ecuador S.A. | - | - |
| 3160 | Nortel Networks de Guatemala Ltda. | - | - |
| 3200 | Nortel Networks Peru S.A.C. | - | - |
| 3210 | Nortel Networks del Uruguay S.A. | - | - |

## Guatemala

| Code | Legal Entity Name | Net pre-filing balance as at September 30, 2011 | Post filing position as at September 30, 2011 |
|------|-------------------|-------------------------------------------------|-----------------------------------------------|
| Receivables from: | | | |
| 3171 | Nortel de México, S. de R.L. de C.V. | - | - |
| 3200 | Nortel Networks Peru S.A.C. | 50,000 | - |
| 3150 | Nortel Networks del Ecuador S.A. | - | - |
| 3130 | Nortel Networks Chile S.A. | - | - |
| 3100 | Nortel Networks de Argentina S.A. | - | - |
| Payables to: | | | |
| 1002 | Nortel Networks Limited | - | - |
| 2001 | Nortel Networks Inc. | - | 59,232 |
| 2002 | Nortel Networks (CALA) Inc. | (332,794) | 240,524 |
| 3160 | Nortel Networks de Guatemala Ltda. | - | - |
| 3210 | Nortel Networks del Uruguay S.A. | - | - |

Appendix C-2

**Post-filing payments**

| Payment made by: | Legal Entity Name | Payment made to: | Legal Entity Name | Amount (USD) | Date |
|---|---|---|---|---|---|
| 2001 | Nortel Networks Inc. | 6210 | Nortel Networks Singapore Pte Ltd | 14,782 | Q4 2011 |
| 2001 | Nortel Networks Inc. | 7100 | Nortel Networks (Asia) Limited | 151,055 | Q4 2011 |
| 2001 | Nortel Networks Inc. | 3170 | Nortel Networks de Mexico S.A. | 176,313 | Feb-12 |
| 6130 | Nortel Networks Japan | 1002 | Nortel Networks Limited | 182,595 | Feb-12 |
| 6130 | Nortel Networks Japan | 7120 | Nortel (China) Limited | 26,821 | Jan-12 |
| 7120 | Nortel (China) Limited | 2001 | Nortel Networks Inc. | 1,400,668 | Dec-11 |
| 6231 | Nortel Vietnam Ltd | 2001 | Nortel Networks Inc. | 46,899 | Feb-12 |

**Pre-filing payments**

| Payment made by: | Legal Entity Name | Payment made to: | Legal Entity Name | Amount (USD) | Date |
|---|---|---|---|---|---|
| 6100 | Nortel Networks Australia Pty Limited | 2001 | Nortel Networks Inc. | 323,000 | Feb-12 |
| 7120 | Nortel (China) Limited | 2001 | Nortel Networks Inc. | 2,592,125 | Dec 2011 & Jan 2012 |
| 7121 | Nortel Shanghai Co Ltd | 2001 | Nortel Networks Inc. | 207,199 | Oct-11 |

Appendix C-3 – Certain Surviving Obligations

- Ongoing obligations under the August 2011 Timeline for and Proposed Resolutions of Pending US/Canada Issues, dated September 8, 2011.

The signature pages to Appendices E (Form of Amendments to Escrow Agreements), F (Form of Escrow Account Release Instructions), G (Form of Intermediate Distribution Account Release Instruction) and H (Form of Full and Final Acknowledgement of Release (Paraguay)), together with the exhibits to Exhibit H (Form of Full and Final Acknowledgement of Release (Paraguay)) are intentionally omitted because of their voluminous nature and are available upon request of the Debtors.

**APPENDIX E**

Form of Amendments to Escrow Agreements

**THIRD AMENDMENT TO CVAS DISTRIBUTION ESCROW AGREEMENT**

This Third Amendment, dated as of [●], 2012 (this "Amendment") to the CVAS Distribution Escrow Agreement dated as of May 27, 2010 (as amended from time to time, the "Distribution Escrow Agreement"), is by and among (i) Nortel Networks Corporation ("NNC"), (ii) Nortel Networks Limited ("NNL"), (iii) Nortel Networks Inc. ("NNI," and together with NNC and NNL, the "Main Sellers"), (iv) the affiliates of the Main Sellers listed on Schedule A of the Distribution Escrow Agreement (the "Other Sellers"), (v) the entities set out in Schedule B of the Distribution Escrow Agreement (the "EMEA Sellers" and, together with the Main Sellers and the Other Sellers, the "Sellers"), which in the case of the EMEA Debtors (as defined in the Distribution Escrow Agreement) are acting by their joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators) (collectively, the "Joint Administrators") who act as agents for the EMEA Debtors without any personal liability whatsoever, (vi) Nortel Networks S.A. (in administration and liquidation judiciare) ("NNSA") acting by the French Liquidator (as defined in the Distribution Escrow Agreement), who acts as agent for NNSA without any personal liability whatsoever (NNSA, the Sellers and the EMEA Sellers, together, the "Depositors"), (vii) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with the CCAA Cases (the "Monitor"); (viii) the Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "Committee", and together with the Monitor, the "Estate Fiduciaries") , and (ix) JPMorgan Chase Bank, N.A., as escrow and distribution agent under the Distribution Escrow Agreement (the "Distribution Agent"). Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

WITNESSETH:

WHEREAS, the Depositors, the Estate Fiduciaries (collectively, the "Settlement Parties") and the Distribution Agent (together with the Settlement Payment Parties, the "Parties") desire to amend the Distribution Escrow Agreement.

WHEREAS, on June 6, 2011 and June 7, 2011, the U.S. Bankruptcy Court and the Canadian Court (collectively, the "Courts"), respectively, approved a first amendment to the Distribution Escrow Agreement, effective as of September 6, 2011, that removed all references to Nortel Networks Israel (Sales and Marketing) Ltd. ("Nortel Israel") as a "Depositor" (as defined in the Distribution Escrow Agreement) under the Distribution Escrow Agreement and provided that the consent or participation of Nortel Israel will no longer be required for any purpose thereunder.

WHEREAS, on August 23, 2011, the Courts approved a second amendment to the Distribution Escrow Agreement, effective as of September 22, 2011 (the "Second Amendment"), that removed all references to o.o.o. Nortel Networks ("Nortel Russia") as a "Depositor" (as defined in the Distribution Escrow Agreement) under the Distribution Escrow Agreement and provided that the consent of Nortel Russia will no longer be required for any purpose thereunder.

1

WHEREAS pursuant to the Second Amendment, Nortel Networks International Finance & Holding B.V. became a Depositor (as defined in the Distribution Escrow Agreement) and was added to the list of EMEA Sellers party to the Distribution Escrow Agreement as reflected on Schedule B of the Distribution Escrow Agreement.

WHEREAS, on [●], 2012 the Settlement Parties entered into that certain Allocation Settlement Agreement (APAC/CALA) (as amended, the "Settlement Agreement") pursuant to which the Distribution Agent shall be authorized to transmit Aggregate Settlement Shares (as defined in the Settlement Agreement) from the Distribution Account to certain non-debtor Nortel entities and to certain of their intercompany creditors upon satisfaction of specified conditions precedent, including the delivery of instructions (the "Release Instructions") by the Depositors and the Estate Fiduciaries to the Distribution Agent pursuant to Paragraph 5(a) of the Distribution Escrow Agreement.

WHEREAS, pursuant to the Settlement Agreement, the Distribution Escrow Agreement is to be amended to remove all references to each of the entities listed on Schedule A attached hereto (each a "Non-Filed Entity" and, collectively, the "Non-Filed Entities") as a Depositor.

WHEREAS, on [●], 2012, the Courts approved the Settlement Agreement and the Courts authorized certain of the Settlement Parties to enter into this Amendment and perform their obligations hereunder, as required under Paragraph 14(a) of the Distribution Escrow Agreement.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.    Amendment of Schedule A.  Conditioned upon, and with effect from, the transmission of all Aggregate Settlement Shares (as defined in the Settlement Agreement) by the Distribution Agent from the Intermediate Distribution Account (as defined in the Settlement Agreement) in accordance with the terms of the Settlement Agreement and the Release Instructions, Schedule A of the Distribution Escrow Agreement shall be amended to remove each of the Non-Filed Entities from the list of Other Sellers party to the Distribution Escrow Agreement.  Each Non-Filed Entity shall immediately and irrevocably cease to be a Depositor under the Distribution Escrow Agreement for any and all purposes, and the consent or participation of any of the Non-Filed Entities shall no longer be required for any purposes thereunder.

2.    Authorization.  Each Party hereto represents to the others that (a) such Party has all necessary power and authority to enter into this Amendment; (b) the execution and delivery by such Party of this Amendment has been duly authorized by all requisite corporate or other action on the part of such Party; and (c) this Amendment has been duly executed and delivered by such Party.

3.    Distribution Escrow Agreement Remains in Effect.  This Amendment and the Distribution Escrow Agreement set forth the entire agreement among the Parties with respect

2

to the matters set forth herein.  Except as amended hereby, the Distribution Escrow Agreement shall remain in full force and effect, and nothing herein shall affect any other provision of the Distribution Escrow Agreement or the rights and obligations of the Parties thereto.  This Amendment shall be governed by and interpreted and enforced in accordance with the terms of the Distribution Escrow Agreement.

4.    Counterparts.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement, it being understood that all of the Parties need not sign the same counterpart. All signatures of the parties to this Amendment may be transmitted by facsimile or other electronic means, and such facsimile or other electronic documents will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such party.

*[Signature pages follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

**THIRD AMENDMENT TO ESCROW AGREEMENT**

This Third Amendment, dated as of [●], 2012 (this "Amendment") to the Escrow Agreement dated as of December 18, 2009 (as amended, the "Distribution Escrow Agreement"), is by and among (i) Nortel Networks Corporation ("NNC"), (ii) Nortel Networks Limited ("NNL"), (iii) Nortel Networks Inc. ("NNI," and together with NNC and NNL, the "Main Sellers"), (iv) the affiliates of the Main Sellers listed on Schedule A Parts 1 and 2 of the Distribution Escrow Agreement (the "Other Sellers" and, together with the Main Sellers, the "Sellers"), (v) the companies set out in Schedule B Part 1 of the Distribution Escrow Agreement (the "EMEA Filed Entities"), which are acting by Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively the "Joint Administrators")) who act as agents for the EMEA Filed Entities without any personal liability, (vi) the companies listed in Schedule B Part 2 (the "EMEA Non-Filed Entities"); (vii) Nortel Networks S.A. (in administration and liquidation judiciare) ("NNSA", and, collectively with the EMEA Filed Entities, the EMEA Non-Filed Entities, the Main Sellers and the Other Sellers, the "Depositors") acting by Maitre Cosme Rogeau, 26, avenue Hoche, 7800 Versailles as *Liquidateur Judiciaire* of NNSA , who acts as agent for NNSA without any personal liability whatsoever, (viii) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with the CCAA Cases (the "Monitor"); (ix) the Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "Committee", and together with the Monitor, the "Estate Fiduciaries") , and (x) JPMorgan Chase Bank, N.A. as escrow and distribution agent under the Distribution Escrow Agreement and any successors appointed pursuant to the terms thereof (the "Distribution Agent").  Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

WITNESSETH:

WHEREAS, the Depositors, the Estate Fiduciaries (collectively, the "Settlement Parties") and the Distribution Agent (together with the Settlement Payment Parties, the "Parties") desire to amend the Distribution Escrow Agreement.

WHEREAS, on June 6, 2011 and June 7, 2011, the U.S. Bankruptcy Court and the Canadian Court (collectively, the "Courts"), respectively, approved a first amendment to the Distribution Escrow Agreement, effective as of September 6, 2011, that removed all references to Nortel Networks Israel (Sales and Marketing) Ltd. and Nortel Communications and Holdings (1997) Limited (collectively, "Nortel Israel") as a "Depositor" (as defined in the Distribution Escrow Agreement) under the Distribution Escrow Agreement and provided that the consent or participation of Nortel Israel will no longer be required for any purpose thereunder.

WHEREAS, on August 23, 2011, the Courts approved a second amendment to the Distribution Escrow Agreement, effective as of September 22, 2011 (the "Second Amendment"), that removed all references to o.o.o. Nortel Networks ("Nortel Russia") as a "Depositor" (as defined in the Distribution Escrow Agreement) under the Distribution Escrow Agreement and provided that the consent of Nortel Russia will no longer be required for any purpose thereunder.

WHEREAS pursuant to the Second Amendment, Nortel Networks International Finance & Holding B.V. became a Depositor (as defined in the Distribution Escrow Agreement) and was added to the list of EMEA Sellers party to the Distribution Escrow Agreement as reflected on Schedule B of the Distribution Escrow Agreement.

WHEREAS, on [●], 2012 the Settlement Parties entered into that certain Allocation Settlement Agreement (APAC/CALA) (as amended, the "Settlement Agreement") pursuant to which the Distribution Agent shall be authorized to transmit Aggregate Settlement Shares (as defined in the Settlement Agreement) from the Distribution Account to certain non-debtor Nortel entities and to certain of their intercompany creditors upon satisfaction of specified conditions precedent, including the delivery of instructions (the "Release Instructions") by the Depositors and the Estate Fiduciaries to the Distribution Agent pursuant to Paragraph 5(a) of the Distribution Escrow Agreement.

WHEREAS, pursuant to the Settlement Agreement, the Distribution Escrow Agreement is to be amended to remove all references to each of the entities listed on Schedule A attached hereto (each a "Non-Filed Entity" and, collectively, the "Non-Filed Entities") as a Depositor.

WHEREAS, on [●], 2012, the Courts approved the Settlement Agreement and the Courts authorized certain of the Settlement Parties to enter into this Amendment and perform their obligations hereunder, as required under Paragraph 15(a) of the Distribution Escrow Agreement.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.    Amendment of Schedule A.  Conditioned upon, and with effect from, the transmission of all Aggregate Settlement Shares (as defined in the Settlement Agreement) by the Distribution Agent from the Intermediate Distribution Account (as defined in the Settlement Agreement) in accordance with the terms of the Settlement Agreement and the Release Instructions, Schedule A of the Distribution Escrow Agreement shall be amended to remove each of the Non-Filed Entities from the list of Other Sellers party to the Distribution Escrow Agreement.  Each Non-Filed Entity shall immediately and irrevocably cease to be a Depositor under the Distribution Escrow Agreement for any and all purposes, and the consent or participation of any of the Non-Filed Entities shall no longer be required for any purposes thereunder.

2.    Authorization.  Each Party hereto represents to the others that (a) such party has all necessary power and authority to enter into this Amendment; (b) the execution and delivery by such Party of this Amendment has been duly authorized by all requisite corporate or other action on the part of such Party; and (c) this Amendment has been duly executed and delivered by such Party.

3.    Distribution Escrow Agreement Remains in Effect.  This Amendment and the Distribution Escrow Agreement set forth the entire agreement among the Parties with respect

to the matters set forth herein.  Except as amended hereby, the Distribution Escrow Agreement shall remain in full force and effect, and nothing herein shall affect any other provision of the Distribution Escrow Agreement or the rights and obligations of the Parties thereto.  This Amendment shall be governed by and interpreted and enforced in accordance with the terms of the Distribution Escrow Agreement.

       4.    <u>Counterparts</u>.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement, it being understood that all of the Parties need not sign the same counterpart. All signatures of the parties to this Amendment may be transmitted by facsimile or other electronic means, and such facsimile or other electronic documents will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such party.

*[Signature pages follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

## SECOND AMENDMENT TO GSM/GSM-R DISTRIBUTION ESCROW AGREEMENT

This Second Amendment, dated as of [●], 2012 (this "Amendment") to the GSM/GSM-R Distribution Escrow Agreement dated as of March 31, 2010 (as amended from time to time, the "Distribution Escrow Agreement"), is by and among (i) Nortel Networks Corporation ("NNC"), (ii) Nortel Networks Limited ("NNL"), (iii) Nortel Networks Inc. ("NNI," and together with NNC and NNL, the "Main Sellers"), (iv) the affiliates of the Main Sellers listed on Schedule A of the Distribution Escrow Agreement (the "Other Sellers"), (v) the entities set out in Schedule B of the Distribution Escrow Agreement (the "EMEA Sellers" and, together with the Main Sellers and the Other Sellers, the "Sellers"), which are, in the case of the EMEA Debtors, acting by Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively the "Joint Administrators")) who act as agents for the EMEA Debtors without any personal liability, (vi) Nortel Networks S.A. (In Administration and liquidation judiciare) ("NNSA") acting by the French Office Holders (as defined in the Distribution Escrow Agreement) who act as agents for NNSA without any personal liability whatsoever, (vii) Nortel Networks (Asia) Limited ("NN Asia"), (viii) each affiliate of the Main Sellers listed in Schedule C of the Distribution Escrow Agreement (each such entity, a "North American ALT Selling Debtor"), (ix) each affiliate of the EMEA Sellers listed in Schedule D of the Distribution Escrow Agreement (each such entity, an "EMEA ALT Selling Debtor" and together with the Sellers, NNSA, NN Asia and the North American ALT Selling Debtors, the "Depositors"), (x) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with the CCAA Cases (the "Monitor"); (xi) the Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "Committee", and together with the Monitor, the "Estate Fiduciaries")and (xii) JPMorgan Chase Bank, N.A. ("JPMorgan"), a national banking association organized and existing under the laws of the United States of America and acting through its TS/Escrow Services Division and solely in its capacity as escrow and distribution agent under the Distribution Escrow Agreement and any successors appointed pursuant to the terms thereof (JPMorgan in such capacity, the "Distribution Agent"). Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

WITNESSETH:

WHEREAS, the Depositors, the Estate Fiduciaries (collectively, the "Settlement Parties") and the Distribution Agent (together with the Settlement Payment Parties, the "Parties") desire to amend the Distribution Escrow Agreement.

WHEREAS, on August 23, 2011, the U.S. Bankruptcy Court and the Canadian Court (collectively, the "Courts") approved a first amendment to the Distribution Escrow Agreement, effective as of September 22, 2011, that removed all references to o.o.o. Nortel Networks ("Nortel Russia") as a "Depositor" (as defined in the Distribution Escrow Agreement) under the Distribution Escrow Agreement and provided that the consent of Nortel Russia will no longer be required for any purpose thereunder.

WHEREAS, on [●], 2012 the Settlement Parties entered into that certain Allocation Settlement Agreement (APAC/CALA) (as amended, the "Settlement Agreement") pursuant to which the Distribution Agent shall be authorized to transmit Aggregate Settlement Shares (as defined in the Settlement Agreement) from the Distribution Account to certain non-debtor Nortel entities and to certain of their intercompany creditors upon satisfaction of specified conditions precedent, including the delivery of instructions (the "Release Instructions") by the Depositors and the Estate Fiduciaries to the Distribution Agent pursuant to Paragraph 5(a) of the Distribution Escrow Agreement.

WHEREAS, pursuant to the Settlement Agreement, the Distribution Escrow Agreement is to be amended to remove all references to each of the entities listed on Schedule A attached hereto (together with NN Asia, each a "Non-Filed Entity" and, collectively, the "Non-Filed Entities") as a Depositor.

WHEREAS, on [●], 2012, the Courts approved the Settlement Agreement and the Courts authorized certain of the Settlement Parties to enter into this Amendment and perform their obligations hereunder, as required under Paragraph 15(a) of the Distribution Escrow Agreement.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.     Amendment.  Conditioned upon, and with effect from, the transmission of all Aggregate Settlement Shares (as defined in the Settlement Agreement) by the Distribution Agent from the Intermediate Distribution Account (as defined in the Settlement Agreement) in accordance with the terms of the Settlement Agreement and the Release Instructions, (a) Schedule A of the Distribution Escrow Agreement shall be amended to remove each of the Non-Filed Entities other than NN Asia from the list of Other Sellers party to the Distribution Escrow Agreement and (b) the Distribution Escrow Agreement shall be amended to remove all references to NN Asia as a party to or Depositor under the Distribution Escrow Agreement. Each Non-Filed Entity shall immediately and irrevocably cease to be a Depositor under, and NN Asia shall immediately and irrevocably cease to be a party to, the Distribution Escrow Agreement for any and all purposes, and the consent or participation of any of the Non-Filed Entities shall no longer be required for any purposes thereunder.

2.     Authorization.  Each Party hereto represents to the others that (a) such Party has all necessary power and authority to enter into this Amendment; (b) the execution and delivery by such Party of this Amendment has been duly authorized by all requisite corporate or other action on the part of such Party; and (c) this Amendment has been duly executed and delivered by such Party.

3.     Distribution Escrow Agreement Remains in Effect.  This Amendment and the Distribution Escrow Agreement set forth the entire agreement among the Parties with respect to the matters set forth herein.  Except as amended hereby, the Distribution Escrow Agreement shall remain in full force and effect, and nothing herein shall affect any other provision of the Distribution Escrow Agreement or the rights and obligations of the Parties thereto.  This

Amendment shall be governed by and interpreted and enforced in accordance with the terms of the Distribution Escrow Agreement.

                4.     <u>Counterparts</u>.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement, it being understood that all of the Parties need not sign the same counterpart. All signatures of the parties to this Amendment may be transmitted by facsimile or other electronic means, and such facsimile or other electronic documents will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.

*[Signature pages follow.]*

**<u>Copy to</u>**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

**AMENDMENT TO GSM RETAINED CONTRACTS DISTRIBUTION ESCROW
AGREEMENT**

This Amendment, dated as of [●], 2012 (this "Amendment") to the GSM Retained
Contracts Distribution Escrow Agreement dated as of June 3, 2010, (the "Distribution Escrow
Agreement") by and among (i) Nortel Networks Limited ("NNL"); (ii) Nortel Networks Inc.
("NNI"); and (iii) Nortel Networks (CALA) Inc. ("CALA" and, together with NNL and NNI, the
"Main Sellers"); (iv) the affiliates of the Main Sellers listed on Schedule A to the Distribution
Escrow Agreement (the "Other Sellers" and, together with the Main Sellers, the "Depositors");
(v) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection
with the CCAA Cases (the "Monitor"); (vi) the Official Committee of Unsecured Creditors as
representative for the unsecured creditors of the U.S. Debtors (the "Committee", and together
with the Monitor, the "Estate Fiduciaries"); and (vii) JPMorgan Chase Bank, N.A., a national
banking association organized and existing under the laws of the United States of America
("JPMorgan") and acting through its TS/Escrow Services Division and solely in its capacity as
escrow and distribution agent under the Distribution Escrow Agreement, and any successor
appointed pursuant to the terms of the Distribution Escrow Agreement (JPMorgan in such
capacity, the "Distribution Agent").  Capitalized terms used and not otherwise defined herein
shall have the meaning given to them in the Distribution Escrow Agreement.

WITNESSETH:

WHEREAS, the Depositors, the Estate Fiduciaries (collectively, the "Settlement
Parties") and the Distribution Agent (together with the Settlement Payment Parties, the "Parties")
desire to amend the Distribution Escrow Agreement.

WHEREAS, on [●], 2012 the Settlement Parties entered into that certain
Allocation Settlement Agreement (APAC/CALA) (as amended, the "Settlement Agreement")
pursuant to which the Distribution Agent shall be authorized to transmit Aggregate Settlement
Shares (as defined in the Settlement Agreement) from the Distribution Account to certain non-
debtor Nortel entities and to certain of their intercompany creditors upon satisfaction of specified
conditions precedent, including the delivery of instructions (the "Release Instructions") by the
Depositors and the Estate Fiduciaries to the Distribution Agent pursuant to Paragraph 5(a) of the
Distribution Escrow Agreement.

WHEREAS, pursuant to the Settlement Agreement, the Distribution Escrow
Agreement is to be amended to remove all references to each of the entities listed on Schedule A
attached hereto (each a "Non-Filed Entity" and, collectively, the "Non-Filed Entities") as a
Depositor.

WHEREAS, on [●], 2012, the U.S. Bankruptcy Court and the Canadian Court
(collectively, the "Courts") approved the Settlement Agreement and the Courts authorized
certain of the Settlement Parties to enter into this Amendment and perform their obligations
hereunder, as required under Paragraph 15(a) of the Distribution Escrow Agreement.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.    <u>Amendment of Schedule A</u>.  Conditioned upon, and with effect from, the transmission of all Aggregate Settlement Shares (as defined in the Settlement Agreement) by the Distribution Agent from the Intermediate Distribution Account (as defined in the Settlement Agreement) in accordance with the terms of the Settlement Agreement and the Release Instructions, Schedule A of the Distribution Escrow Agreement shall be amended to remove each of the Non-Filed Entities from the list of Other Sellers party to the Distribution Escrow Agreement.  Each Non-Filed Entity shall immediately and irrevocably cease to be a Depositor under the Distribution Escrow Agreement for any and all purposes, and the consent or participation of any of the Non-Filed Entities shall no longer be required for any purposes thereunder.

2.    <u>Authorization</u>.  Each Party hereto represents to the others that (a) such Party has all necessary power and authority to enter into this Amendment; (b) the execution and delivery by such Party of this Amendment has been duly authorized by all requisite corporate or other action on the part of such Party; and (c) this Amendment has been duly executed and delivered by such Party.

3.    <u>Distribution Escrow Agreement Remains in Effect</u>.  This Amendment and the Distribution Escrow Agreement set forth the entire agreement among the Parties with respect to the matters set forth herein.  Except as amended hereby, the Distribution Escrow Agreement shall remain in full force and effect, and nothing herein shall affect any other provision of the Distribution Escrow Agreement or the rights and obligations of the Parties thereto.  This Amendment shall be governed by and interpreted and enforced in accordance with the terms of the Distribution Escrow Agreement.

4.    <u>Counterparts</u>.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement, it being understood that all of the Parties need not sign the same counterpart. All signatures of the parties to this Amendment may be transmitted by facsimile or other electronic means, and such facsimile or other electronic documents will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

*[Signature pages follow.]*

**Copy to**:
The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

**THIRD AMENDMENT TO MEN DISTRIBUTION ESCROW AGREEMENT**

This Third Amendment, dated as of [●], 2012 (this "Amendment") to the MEN Distribution Escrow Agreement dated as of March 19, 2010 (as amended from time to time, the "Distribution Escrow Agreement"), is by and among (i) Nortel Networks Corporation ("NNC"), (ii) Nortel Networks Limited ("NNL"), (iii) Nortel Networks Inc. ("NNI," and together with NNC and NNL, the "Main Sellers"), (iv) the Additional U.S. Debtors (as defined in the Distribution Escrow Agreement) and the other affiliates of the Main Sellers listed on Schedule A of the Distribution Escrow Agreement, but excluding Nortel Networks de Colombia S.A. (collectively, the "Other Sellers"), (v) the companies listed on Schedule B of the Distribution Escrow Agreement (the "EMEA Sellers" and, together with the Main Sellers and the Other Sellers, the "Sellers")), acting by their joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration)), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively, the "Joint Administrators")) who act as agents for the EMEA Debtors (as defined in the Distribution Escrow Agreement), (vi) Nortel Networks S.A. (In Administration and liquidation judiciare) ("NNSA") acting by the NNSA Office Holders (as defined in the Distribution Escrow Agreement), (vii) each affiliate of the Main Sellers listed on Schedule C of the Distribution Escrow Agreement (each such entity, a "North American ALT Selling Debtor"), (viii) each affiliate of the EMEA Sellers listed on Schedule D of the Distribution Escrow Agreement (each such entity, an "EMEA ALT Selling Debtor," and together with the Sellers, NNSA and the North American ALT Selling Debtors, the "Depositors"), (ix) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with the CCAA Cases (the "Monitor"); (x) the Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "Committee", and together with the Monitor, the "Estate Fiduciaries") and (xi) JPMorgan Chase Bank, N.A., as escrow and distribution agent under the Distribution Escrow Agreement (the "Distribution Agent").  Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

WITNESSETH:

WHEREAS, the Depositors, the Estate Fiduciaries (collectively, the "Settlement Parties") and the Distribution Agent (together with the Settlement Payment Parties, the "Parties") desire to amend the Distribution Escrow Agreement.

WHEREAS, on June 6, 2011 and June 7, 2011, the U.S. Bankruptcy Court and the Canadian Court (collectively, the "Courts"), respectively, approved a first amendment to the Distribution Escrow Agreement, effective as of September 6, 2011, that removed all references to Nortel Networks Israel (Sales and Marketing) Ltd. ("Nortel Israel") as a "Depositor" (as defined in the Distribution Escrow Agreement) under the Distribution Escrow Agreement and provided that the consent or participation of Nortel Israel will no longer be required for any purpose thereunder.

WHEREAS, pursuant to orders of the Courts dated June 21, 2011, any term or condition of the Distribution Escrow Agreement that explicitly or implicitly requires the consent or participation of Nortel Networks de Colombia S.A. is now forever deemed to be not required.

1

WHEREAS, on August 23, 2011, the Courts approved a second amendment to the Distribution Escrow Agreement, effective as of September 22, 2011, that removed all references to o.o.o. Nortel Networks ("Nortel Russia") as a "Depositor" (as defined in the Distribution Escrow Agreement) under the Distribution Escrow Agreement and provided that the consent of Nortel Russia will no longer be required for any purpose thereunder.

WHEREAS, on [●], 2012 the Settlement Parties entered into that certain Allocation Settlement Agreement (APAC/CALA) (as amended, the "Settlement Agreement") pursuant to which the Distribution Agent shall be authorized to transmit Aggregate Settlement Shares (as defined in the Settlement Agreement) from the Distribution Account to certain non-debtor Nortel entities and to certain of their intercompany creditors upon satisfaction of specified conditions precedent, including the delivery of instructions (the "Release Instructions") by the Depositors and the Estate Fiduciaries to the Distribution Agent pursuant to Paragraph 5(a) of the Distribution Escrow Agreement.

WHEREAS, pursuant to the Settlement Agreement, the Distribution Escrow Agreement is to be amended to remove all references to each of the entities listed on Schedule A attached hereto (each a "Non-Filed Entity" and, collectively, the "Non-Filed Entities") as a Depositor.

WHEREAS, on [●], 2012, the Courts approved the Settlement Agreement and the Courts authorized certain of the Settlement Parties to enter into this Amendment and perform their obligations hereunder, as required under Paragraph 15(a) of the Distribution Escrow Agreement.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.     Amendment of Schedule A. Conditioned upon, and with effect from, the transmission of all Aggregate Settlement Shares (as defined in the Settlement Agreement) by the Distribution Agent from the Intermediate Distribution Account (as defined in the Settlement Agreement) in accordance with the terms of the Settlement Agreement and the Release Instructions, Schedule A of the Distribution Escrow Agreement shall be amended to remove each of the Non-Filed Entities from the list of Other Sellers party to the Distribution Escrow Agreement. Each Non-Filed Entity shall immediately and irrevocably cease to be a Depositor under the Distribution Escrow Agreement for any and all purposes, and the consent or participation of any of the Non-Filed Entities shall no longer be required for any purposes thereunder.

2.     Authorization. Each Party hereto represents to the others that (a) such Party has all necessary power and authority to enter into this Amendment; (b) the execution and delivery by such Party of this Amendment has been duly authorized by all requisite corporate or other action on the part of such Party; and (c) this Amendment has been duly executed and delivered by such Party.

3.    <u>Distribution Escrow Agreement Remains in Effect</u>.  This Amendment and the Distribution Escrow Agreement set forth the entire agreement among the Parties with respect to the matters set forth herein.  Except as amended hereby, the Distribution Escrow Agreement shall remain in full force and effect, and nothing herein shall affect any other provision of the Distribution Escrow Agreement or the rights and obligations of the Parties thereto.  This Amendment shall be governed by and interpreted and enforced in accordance with the terms of the Distribution Escrow Agreement.

4.    <u>Counterparts</u>.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement, it being understood that all of the Parties need not sign the same counterpart. All signatures of the parties to this Amendment may be transmitted by facsimile or other electronic means, and such facsimile or other electronic documents will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

*[Signature pages follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

## SECOND AMENDMENT TO MSS DISTRIBUTION ESCROW AGREEMENT

This Amendment, dated as of [●], 2012 (this "Amendment") to the MSS Distribution Escrow Agreement, dated as of March 11, 2011 (as amended from time to time, the "Distribution Escrow Agreement"), is by and among (i) Nortel Networks Corporation ("NNC"), (ii) Nortel Networks Limited ("NNL"), (iii) Nortel Networks Inc. ("NNI," and together with NNC and NNL, the "Main Sellers"), (iv) the affiliates of the Main Sellers listed on Schedule A of the Distribution Escrow Agreement (collectively, the "Other Sellers"), (v) the companies listed on Schedule B of the Distribution Escrow Agreement (the "EMEA Sellers" and, together with the Main Sellers and the Other Sellers, the "Sellers"), which in the case of the EMEA Sellers are acting by their joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively, the "Joint Administrators")) who act as agents for the EMEA Debtors (as defined in the Distribution Escrow Agreement), (vi) Nortel Networks S.A. (In Administration) ("NNSA", together with the Sellers and the EMEA Sellers, the "Depositors" ) acting by the French Liquidator (as defined in the Distribution Escrow Agreement), (vii) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with the CCAA Cases (the "Monitor"); (viii) the Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "Committee", and together with the Monitor, the "Estate Fiduciaries") , and (ix) JPMorgan Chase Bank, N.A., as escrow and distribution agent under the Distribution Escrow Agreement (the "Distribution Agent").  Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

## WITNESSETH:

WHEREAS, the Depositors, the Estate Fiduciaries (collectively, the "Settlement Parties") and the Distribution Agent (together with the Settlement Payment Parties, the "Parties") desire to amend the Distribution Escrow Agreement.

WHEREAS, on June 6, 2011 and June 7, 2011, the U.S. Bankruptcy Court and the Canadian Court (collectively, the "Courts"), respectively, approved a first amendment to the Distribution Escrow Agreement, effective as of September 6, 2011, that removed all references to Nortel Networks Israel (Sales and Marketing) Ltd. ("Nortel Israel") as a "Depositor" (as defined in the Distribution Escrow Agreement) under the Distribution Escrow Agreement and provided that the consent or participation of Nortel Israel will no longer be required for any purpose thereunder.

WHEREAS, on [●], 2012 the Settlement Parties entered into that certain Allocation Settlement Agreement (APAC/CALA) (as amended, the "Settlement Agreement") pursuant to which the Distribution Agent shall be authorized to transmit Aggregate Settlement Shares (as defined in the Settlement Agreement) from the Distribution Account to certain non-debtor Nortel entities and to certain of their intercompany creditors upon satisfaction of specified conditions precedent, including the delivery of instructions (the "Release Instructions") by the Depositors and the Estate Fiduciaries to the Distribution Agent pursuant to Paragraph 5(a) of the Distribution Escrow Agreement.

WHEREAS, pursuant to the Settlement Agreement, the Distribution Escrow Agreement is to be amended to remove all references to each of the entities listed on <u>Schedule A</u> attached hereto (each a "<u>Non-Filed Entity</u>" and, collectively, the "<u>Non-Filed Entities</u>") as a Depositor.

WHEREAS, on [●], 2012, the Courts approved the Settlement Agreement and the Courts authorized certain of the Settlement Parties to enter into this Amendment and perform their obligations hereunder, as required under Paragraph 14(a) of the Distribution Escrow Agreement.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.    <u>Amendment of Schedule A</u>.  Conditioned upon, and with effect from, the transmission of all Aggregate Settlement Shares (as defined in the Settlement Agreement) by the Distribution Agent from the Intermediate Distribution Account (as defined in the Settlement Agreement) in accordance with the terms of the Settlement Agreement and the Release Instructions, Schedule A of the Distribution Escrow Agreement shall be amended to remove each of the Non-Filed Entities from the list of Other Sellers party to the Distribution Escrow Agreement.  Each Non-Filed Entity shall immediately and irrevocably cease to be a Depositor under the Distribution Escrow Agreement for any and all purposes, and the consent or participation of any of the Non-Filed Entities shall no longer be required for any purposes thereunder.

2.    <u>Authorization</u>.  Each Party hereto represents to the others that (a) such Party has all necessary power and authority to enter into this Amendment; (b) the execution and delivery by such Party of this Amendment has been duly authorized by all requisite corporate or other action on the part of such Party; and (c) this Amendment has been duly executed and delivered by such Party.

3.    <u>Distribution Escrow Agreement Remains in Effect</u>.  This Amendment and the Distribution Escrow Agreement set forth the entire agreement among the Parties with respect to the matters set forth herein.  Except as amended hereby, the Distribution Escrow Agreement shall remain in full force and effect, and nothing herein shall affect any other provision of the Distribution Escrow Agreement or the rights and obligations of the parties thereto.  This Amendment shall be governed by and interpreted and enforced in accordance with the terms of the Distribution Escrow Agreement.

4.    <u>Counterparts</u>.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement, it being understood that all of the Parties need not sign the same counterpart. All signatures of the parties to this Amendment may be transmitted by facsimile or other electronic means, and such facsimile or other electronic documents will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

2

*[Signature pages follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

**SECOND AMENDMENT TO RADWARE ESCROW AGREEMENT**

This Amendment, dated as of [●], 2012 (this "Amendment") to the Radware Distribution Escrow Agreement dated as of March 31, 2009 (as amended from time to time, the "Distribution Escrow Agreement"), is by and among (i) Nortel Networks Inc. ("NNI"), acting on behalf of itself and on behalf of its wholly-owned subsidiary Alteon WebSystems Inc., (ii) Nortel Networks Limited ("NNL"), acting on behalf of itself and on behalf of Nortel Networks Technology Corporation and NNL's wholly-owned subsidiaries identified as Non-Debtor Nortel Networks Entities on Exhibit I of the Distribution Escrow Agreement (collectively, the "Non-Debtor Nortel Networks Entities"), those entities listed under the heading EMEA Sellers on the signature pages of the Distribution Escrow Agreement (collectively, the "Depositors" and each a "Depositor"), and A.R. Bloom, S. Harris, A. M. Hudson and C. Hill of Ernst & Young LLP, in their capacity as the joint administrators of the EMEA Sellers (other than Nortel Networks (Ireland) Limited) and A.R. Bloom and D. Hughes in their capacity as the joint administrators of Nortel Networks (Ireland) Limited (the "Joint Administrators"), and JP Morgan Chase Bank, N.A., as escrow agent ("Distribution Agent").  Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

WITNESSETH:

WHEREAS, the Depositors, the Joint Administrators (collectively, the "Settlement Parties") and the Escrow Agent (together with the Settlement Parties, the "Parties") desire to amend the Distribution Escrow Agreement.

WHEREAS, on June 6, 2011 and June 7, 2011, the U.S. Bankruptcy Court and the Canadian Court (collectively, the "Courts"), respectively, approved a first amendment to the Distribution Escrow Agreement, effective as of September 6, 2011, that removed all references to Nortel Networks Israel (Sales and Marketing) Ltd. ("Nortel Israel") as a "Depositor" (as defined in the Distribution Escrow Agreement) under the Distribution Escrow Agreement and provided that the consent or participation of Nortel Israel will no longer be required for any purpose thereunder.

WHEREAS, on [●], 2012 the Settlement Parties entered into that certain Allocation Settlement Agreement (APAC/CALA) (as amended, the "Settlement Agreement") pursuant to which the Distribution Agent shall be authorized to transmit Aggregate Settlement Shares (as defined in the Settlement Agreement) from the Distribution Account to certain non-debtor Nortel entities and to certain of their intercompany creditors upon satisfaction of specified conditions precedent, including the delivery of instructions (the "Release Instructions") by the Depositors and the Estate Fiduciaries to certain distribution escrow agreements.

WHEREAS, pursuant to the Settlement Agreement, the Distribution Escrow Agreement is to be amended to remove all references to each of the entities listed on Schedule A attached hereto (each a "Non-Filed Entity" and, collectively, the "Non-Filed Entities") as a Depositor.

WHEREAS, on [●], 2012, the Courts approved the Settlement Agreement and the Courts authorized certain of the Settlement Parties to enter into this Amendment and perform

their obligations hereunder, as required under Paragraph 15(a) of the Distribution Escrow Agreement.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.    Amendment of Exhibit 1.  Conditioned upon, and with effect from, the transmission of all Aggregate Settlement Shares (as defined in the Settlement Agreement) by the Distribution Agent from the Intermediate Distribution Account (as defined in the Settlement Agreement) in accordance with the terms of the Settlement Agreement and the Release Instructions, Exhibit 1 of the Distribution Escrow Agreement shall be amended to (a) remove each of the Non-Filed Entities from the list of entities with voting and interest allocation percentages and (b) for those entities listed on Exhibit 1 of the Distribution Escrow Agreement other than the Non-Filed Entities (each a "Remaining Entity"),  replace the values in the column entitled "Interest Allocation Percentage" with the values in the column entitled "Voting Percentage."  For avoidance of doubt, the effect of this amendment shall be that the Interest Allocation Percentage for each Remaining Entity shall be equal to its Voting Percentage.  Each Non-Filed Entity shall immediately and irrevocably cease to be a Depositor under the Distribution Escrow Agreement for any and all purposes, and the consent or participation of any of the Non-Filed Entities shall no longer be required for any purposes thereunder.

2.    Authorization.  Each Party hereto represents to the others that (a) such party has all necessary power and authority to enter into this Amendment; (b) the execution and delivery by such Party of this Amendment has been duly authorized by all requisite corporate or other action on the part of such Party; and (c) this Amendment has been duly executed and delivered by such Party.

3.    Distribution Escrow Agreement Remains in Effect.  This Amendment and the Distribution Escrow Agreement set forth the entire agreement among the Parties with respect to the matters set forth herein.  Except as amended hereby, the Distribution Escrow Agreement shall remain in full force and effect, and nothing herein shall affect any other provision of the Distribution Escrow Agreement or the rights and obligations of the Parties thereto.  This Amendment shall be governed by and interpreted and enforced in accordance with the terms of the Distribution Escrow Agreement.

4.    Counterparts.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement, it being understood that all of the Parties need not sign the same counterpart. All signatures of the parties to this Amendment may be transmitted by facsimile or other electronic means, and such facsimile or other electronic documents will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such party.

2

*[Signature pages follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

**APPENDIX F**

Form of Escrow Account Release Instructions



[●], 2012

<u>**Via Facsimile (212.623.6168)**</u>

JPMorgan Chase Bank, N.A.
TS / Escrow Services
4 New York Plaza, 21st Floor
New York, New York 10004
Attn: Andy Jacknick
Phone: 212.623.0241

> Re:    <u>Joint Instruction and Waiver of Security Procedures – CDMA/LTE Escrow
> Agreement</u>

Ladies and Gentlemen:

       Reference is made to that certain CDMA/LTE Escrow Agreement dated as of November 11, 2009 (the "<u>Distribution Escrow Agreement</u>"), by and among (i) Nortel Networks Corporation ("<u>NNC</u>"); (ii) Nortel Networks Limited ("<u>NNL</u>"); (iii) Nortel Networks Inc. ("<u>NNI</u>"); (iv) the companies set out in Schedule A to the Distribution Escrow Agreement (the "<u>EMEA Filed Entities</u>"), which are acting by Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (in administration) for which David Hughes of Ernst & Young Chartered Accountants and Allan Robert Bloom serve as joint administrators (collectively, the "<u>Joint Administrators</u>")) who act as agents of the EMEA Filed Entities (as defined in the Distribution Escrow Agreement) (the EMEA Filed Entities, collectively with NNL, NNI, and NNC, being the "<u>Depositors</u>"); (v) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with the CCAA Cases (the "<u>Monitor</u>"); (vi) the Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "<u>Committee</u>", and together with the Monitor, the "<u>Estate Fiduciaries</u>"); and (vii); JPMorgan Chase Bank, N.A. as escrow and distribution agent under the Distribution Escrow Agreement (the "<u>Distribution Agent</u>"), entered into in connection with the North American ASA and the EMEA ASA (each as defined in the Distribution Escrow Agreement).  Capitalized terms used and not otherwise defined herein shall have the meaning given to them in the Distribution Escrow Agreement.

       Reference is also made to that certain Authorization of Intermediate Distribution Account, Joint Instructions and Waiver of Security Procedures dated as of [●], 2012 (the "<u>Intermediate Distribution Account Joint Instruction</u>") executed by the Depositors, the Joint Administrators, the Estate Fiduciaries, and certain other affiliates of the Depositors, and delivered to the Distribution Agent contemporaneously with this joint instruction.

1.  <u>Waiver of Security Procedures</u>

By signing below, (i) each of the Depositors, the Estate Fiduciaries and the Joint Administrators (the "<u>Parties</u>") acknowledges and agrees that the security procedures set forth in Schedule D attached to and referenced in Section 12 of the Distribution Escrow Agreement do not require the Distribution Agent to make telephone callbacks to all the Depositors and the Estate Fiduciaries as to the joint instruction (the "<u>Instruction</u>") set forth in paragraph 2 below, (ii) the Parties authorize the Distribution Agent to perform a single telephone callback to either of the two individuals designated by the Parties as to the Instruction, and (iii) the Parties designate the following individuals to confirm the Instruction by telephone callback:

Name:  Anna Ventresca
Telephone Number:  905-863-1204, or 905-536-2604

Name:  Allan Bifield
Telephone Number:  905-863-6840, or 613-853-8077

Additionally, by signing below, each of the Depositors acknowledges and agrees that, except in the case of the Distribution Agent's gross negligence or willful misconduct, its indemnification of the Distribution Agent as set forth in Section 9 of the Distribution Escrow Agreement shall apply to the Distribution Agent following this Instruction and waiver of security procedures described herein.

2.  <u>Instructions to You as the Distribution Agent</u>

Pursuant to Section 5(a)(i) of the Distribution Escrow Agreement, the Depositors and the Estate Fiduciaries hereby instruct the Distribution Agent to immediately disburse $600,000 out of the sale proceeds to the following intermediate distribution account established by the Distribution Agent in accordance with the Intermediate Account Distribution Account Joint Instructions:

Bank: JPMorgan Chase Bank, N.A.
Bank address:  ●[1]
Account number:  ●
Routing number:  ●
Account name:  ●

The Parties hereby instruct the Distribution Agent, if required by applicable law and solely to the extent necessary to reflect the transaction contemplated hereby, to amend any tax forms the Distribution Agent has previously delivered to any of the Parties or otherwise filed with any governmental authority in accordance with Section 4(a) of the Distribution Escrow Agreement, including without limitation IRS Forms 1099 and 1042-S.

---

[1]    NTD: Should include information for intermediate JPM distribution account to be created (per JPM, account name may be assigned by Nortel).

Please acknowledge receipt of this Instruction by signing and returning the enclosed copy of this letter by email to Russell Eckenrod (reckenrod@cgsh.com) and Evan Cobb (Evan.Cobb@nortonrose.com) by [●], 2012.

Should you have any questions about this letter, please contact the Depositors at your earliest convenience.  Thank you for your assistance with this matter.

*[Signature pages to follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735



**NORTEL**

[●], 2012

<u>**Via Facsimile (212.623.6168)**</u>

JPMorgan Chase Bank, N.A.
TS / Escrow Services
4 New York Plaza, 21st Floor
New York, New York 10004
Attn: Andy Jacknick
Phone: 212.623.0241

Re:    <u>Joint Instruction and Waiver of Security Procedures – CVAS Escrow Agreement</u>

Ladies and Gentlemen:

Reference is made to that certain CVAS Distribution Escrow Agreement dated as of May 27, 2010 (as amended, the "<u>Distribution Escrow Agreement</u>"), by and among (i) Nortel Networks Corporation ("<u>NNC</u>"); (ii) Nortel Networks Limited ("<u>NNL</u>"); (iii) Nortel Networks Inc. ("<u>NNI</u>," and together with NNC and NNL, the "<u>Main Sellers</u>"); (iv) each affiliate of the Main Sellers listed on <u>Schedule A</u> of the Distribution Escrow Agreement (the "<u>Other Sellers</u>"); (v) the companies listed on <u>Schedule B</u> of the Distribution Escrow Agreement (the "<u>EMEA Sellers</u>"), acting by Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively, the "<u>Joint Administrators</u>")); (vi) Nortel Networks S.A. (in administration) ("<u>NNSA</u>") acting by the French Liquidator (as defined in the Distribution Escrow Agreement) (NNSA, together with the Main Sellers, the Other Sellers and the EMEA Sellers, the "<u>Depositors</u>"); (vii) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with the CCAA Cases (the "<u>Monitor</u>"); (viii) the Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "<u>Committee</u>," and together with the Monitor, the "<u>Estate Fiduciaries</u>"); and (ix) JPMorgan Chase Bank, N.A., as escrow and distribution agent under the Distribution Escrow Agreement (the "<u>Distribution Agent</u>"), entered into in connection with the North American ASA and the EMEA ASA (each as defined in the Distribution Escrow Agreement). Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

Reference is also made to that certain Authorization of Intermediate Distribution Account, Joint Instructions and Waiver of Security Procedures dated as of [●], 2012 (the "Intermediate Distribution Account Joint Instruction") executed by the Depositors, the Joint Administrators, the Estate Fiduciaries, and certain other affiliates of the Depositors, and delivered to the Distribution Agent contemporaneously with this joint instruction.

    1.   Waiver of Security Procedures

By signing below, (i) each of the Depositors, the Joint Administrators and the Estate Fiduciaries (the "Parties") acknowledges and agrees that the security procedures set forth in Schedule F attached to and referenced in Section 11 of the Distribution Escrow Agreement do not require the Distribution Agent to make telephone callbacks to all the Depositors and the Estate Fiduciaries as to the joint instruction (the "Instruction") set forth in paragraph 2 below, (ii) the Parties authorize the Distribution Agent to perform a single telephone callback to either of the two individuals designated by the Parties as to the Instruction, and (iii) the Parties designate the following individuals to confirm the Instruction by telephone callback:

        Name:  Anna Ventresca
        Telephone Number:  905-863-1204, or 905-536-2604

        Name:  Allan Bifield
        Telephone Number:  905-863-6840, or 613-853-8077

Additionally, by signing below, each of the Depositors acknowledges and agrees that, except in the case of the Distribution Agent's gross negligence or willful misconduct, its indemnification of the Distribution Agent as set forth in Section 9 of the Distribution Escrow Agreement shall apply to the Distribution Agent's following of this Instruction and waiver of security procedures described herein.

    2.   Instructions to You as the Distribution Agent

Pursuant to Section 5(a)(i) of the Distribution Escrow Agreement, the Depositors and the Estate Fiduciaries hereby instruct the Distribution Agent to immediately disburse $5,600,000 out of the sale proceeds to the following intermediate distribution account established by the Distribution Agent in accordance with the Intermediate Account Distribution Account Joint Instructions:

        Bank: JPMorgan Chase Bank, N.A.
        Bank address:  ●[1]
        Account number:  ●
        Routing number:  ●
        Account name:  ●

---

[1]    NTD: Should include information for intermediate JPM distribution account to be created (per JPM, account name may be assigned by Nortel).

The Parties hereby instruct the Distribution Agent, if required by applicable law and solely to the extent necessary to reflect the transaction contemplated hereby, to amend any tax forms the Distribution Agent has previously delivered to any of the Parties or otherwise filed with any governmental authority in accordance with Section 4(a) of the Distribution Escrow Agreement, including without limitation, IRS Forms 1099 and 1042-S.

Please acknowledge receipt of this Instruction by signing and returning the enclosed copy of this letter by email to Russell Eckenrod (reckenrod@cgsh.com) and Evan Cobb (Evan.Cobb@nortonrose.com) by [●], 2012.

Should you have any questions about this letter, please contact the Depositors at your earliest convenience.  Thank you for your assistance with this matter.

*[Signature pages to follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735



**NORTEL**

[●], 2012

<u>**Via Facsimile (212.623.6168)**</u>

JPMorgan Chase Bank, N.A.
TS / Escrow Services
4 New York Plaza, 21st Floor
New York, New York 10004
Attn: Andy Jacknick
Phone: 212.623.0241

      Re:    <u>Joint Instruction and Waiver of Security Procedures – Enterprise Escrow
             Agreement</u>

Ladies and Gentlemen:

      Reference is made to that certain Escrow Agreement dated as of December 18, 2009 (as
amended, the "<u>Distribution Escrow Agreement</u>"), by and among (i) Nortel Networks Corporation
("<u>NNC</u>"); (ii) Nortel Networks Limited ("<u>NNL</u>"); (iii) Nortel Networks Inc. ("<u>NNI</u>" and,
together with NNC and NNL, the "<u>Main Sellers</u>"); (iv) each affiliate of the Main Sellers listed on
<u>Schedule A</u> <u>Parts 1 and 2</u> of the Distribution Escrow Agreement (the "<u>Other Sellers</u>" and,
together with the Main Sellers, the "<u>Sellers</u>"), (v) the companies listed on <u>Schedule B</u> <u>Part 1</u> of
the Distribution Escrow Agreement (the "<u>EMEA Filed Entities</u>"), which are acting by Alan
Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill
of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration) for
which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as
joint administrators (collectively the "<u>Joint Administrators</u>")) who act as agents for the EMEA
Filed Entities (as defined in the Distribution Escrow Agreement; (vi) the companies listed on
<u>Schedule B</u> <u>Part 2</u> of the Distribution Escrow Agreement (the "<u>EMEA Non-Filed Entities</u>", and
together with the EMEA Filed Entities, the Main Sellers and the Other Sellers, the "<u>Depositors</u>");
(vii) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection
with the Canadian Cases (the "<u>Monitor</u>"); (viii) the Official Committee of Unsecured Creditors
as representative for the unsecured creditors of the U.S. Debtors (the "<u>Committee</u>", and together
with the Monitor, the "<u>Estate Fiduciaries</u>"); and (ix) JPMorgan Chase Bank, N.A.  as escrow
agent under the Distribution Escrow Agreement (the "<u>Distribution Agent</u>"), entered into in
connection with the ASSA and the EMEA ASA (each as defined in the Distribution Escrow
Agreement).  Capitalized terms used but not defined herein shall have the meanings given to
them in the Distribution Escrow Agreement.

      Reference is also made to that certain Authorization of Intermediate Distribution
Account, Joint Instructions and Waiver of Security Procedures dated as of [●], 2012 (the
"<u>Intermediate Distribution Account Joint Instruction</u>") executed by the Depositors, the Joint

Administrators, the Estate Fiduciaries, and certain other affiliates of the Depositors, and delivered to the Distribution Agent contemporaneously with this joint instruction.

    1.   Waiver of Security Procedures

By signing below, (i) each of the Depositors, the Joint Administrators and the the Estate Fiduciaries (the "Parties") acknowledges and agrees that the security procedures set forth in Schedule E attached to and referenced in Section 12 of the Distribution Escrow Agreement do not require the Distribution Agent to make telephone callbacks to all the Depositors and the Estate Fiduciaries as to the joint instruction (the "Instruction") set forth in paragraph 2 below, (ii) the Parties authorize the Distribution Agent to perform a single telephone callback to either of the individuals designated by the Parties as to the Instruction, and (iii) the Parties designate the following individuals to confirm the Instruction by telephone callback:

        Name:  Anna Ventresca
        Telephone Number:  905-863-1204, or 905-536-2604

        Name:  Allan Bifield
        Telephone Number:  905-863-6840, or 613-853-8077

Additionally, by signing below, each of the Depositors acknowledges and agrees that, except in the case of the Distribution Agent's gross negligence or willful misconduct, its indemnification of the Distribution Agent as set forth in Section 9 of the Distribution Escrow Agreement shall apply to the Distribution Agent following this Instruction and waiver of security procedures described herein.

    2.   Instructions to You as the Distribution Agent

Pursuant to Section 5(a)(i) of the Distribution Escrow Agreement, the Depositors and the Estate Fiduciaries hereby instruct the Distribution Agent to immediately disburse $14,200,000 out of the sale proceeds to the following intermediate distribution account established by the Distribution Agent in accordance with the Intermediate Account Distribution Account Joint Instructions:

        Bank: JPMorgan Chase Bank, N.A.
        Bank address:  ●[1]
        Account number:  ●
        Routing number:  ●
        Account name:  ●

The Parties hereby instruct the Distribution Agent, if required by applicable law and solely to the extent necessary to reflect the transaction contemplated hereby, to amend any tax forms the Distribution Agent has previously delivered to any of the Parties or otherwise filed

---

[1]    NTD: Should include information for intermediate JPM distribution account to be created (per JPM, account name may be assigned by Nortel).

with any governmental authority in accordance with Section 4(a) of the Distribution Escrow Agreement, including, without limitation IRS Forms 1099 and 1042-S.

Please acknowledge receipt of this Instruction by signing and returning the enclosed copy of this letter by email to Russell Eckenrod (reckenrod@cgsh.com) and Evan Cobb (Evan.Cobb@nortonrose.com) by [●], 2012.

Should you have any questions about this letter, please contact the Depositors at your earliest convenience.  Thank you for your assistance with this matter.

*[Signature pages to follow.]*

Copy to:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735



**NORTEL**

[●], 2012

<u>**Via Facsimile (212.623.6168)**</u>

JPMorgan Chase Bank, N.A.
TS / Escrow Services
4 New York Plaza, 21st Floor
New York, New York 10004
Attn: Andy Jacknick
Phone: 212.623.0241

  Re: <u>Joint Instruction and Waiver of Security Procedures – GSM/GSM-R Escrow
    Agreement</u>

Ladies and Gentlemen:

  Reference is made to that certain GSM/GSM-R Distribution Escrow Agreement, dated as
of March 31, 2010 (as amended, the "<u>Distribution Escrow Agreement</u>"), by and among (i) Nortel
Networks Corporation ("<u>NNC</u>"); (ii) Nortel Networks Limited ("<u>NNL</u>"); (iii) Nortel Networks
Inc. ("<u>NNI</u>," and together with NNC and NNL, the "<u>Main Sellers</u>"); (iv) each affiliate of the
Main Sellers listed on <u>Schedule A</u> of the Distribution Escrow Agreement (the "<u>Other Sellers</u>");
(v) the companies listed on <u>Schedule B</u> of the Distribution Escrow Agreement (the "<u>EMEA
Sellers</u>"), acting by Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and
Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland)
Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants
and Alan Robert Bloom serve as joint administrators (collectively, the "<u>Joint Administrators</u>"))
who act as agents for the EMEA Debtors (as defined in the Distribution Escrow Agreement); (vi)
Nortel Networks S.A. (In Administration) ("<u>NNSA</u>") acting by the French Office Holders (as
defined in the Distribution Escrow Agreement); (vii) Nortel Networks (Asia) Limited ("<u>NN
Asia</u>"); (viii) each affiliate of the Main Sellers listed on <u>Schedule C</u> of the Distribution Escrow
Agreement (each such entity, a "<u>North American ALT Selling Debtor</u>"); (ix) each affiliate of the
EMEA Sellers listed on <u>Schedule D</u> of the Distribution Escrow Agreement (each such entity, an
"<u>EMEA ALT Selling Debtor</u>," and together with the Main Sellers, the Other Sellers, the EMEA
Sellers, NNSA, NN Asia and the North American ALT Selling Debtors, the "<u>Depositors</u>"); (x)
Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with
the CCAA Cases (the "<u>Monitor</u>"); (xi) the Official Committee of Unsecured Creditors as
representative for the unsecured creditors of the U.S. Debtors (the "<u>Committee</u>," and together
with the Monitor, the "<u>Estate Fiduciaries</u>"); and (xii) JPMorgan Chase Bank, N.A., as escrow
and distribution agent under the Distribution Escrow Agreement (the "<u>Distribution Agent</u>"),
entered into in connection with the North American ASA and EMEA ASA (each as defined in
the Distribution Escrow Agreement).  Capitalized terms used but not defined herein shall have
the meanings given to them in the Distribution Escrow Agreement.

Reference is also made to that certain Authorization of Nortel-Intermediate Distribution Account, Joint Instructions and Waiver of Security Procedures dated as of [•], 2012 (the "Intermediate Distribution Account Joint Instruction") executed by the Depositors, the Joint Administrators, the Estate Fiduciaries, and certain other affiliates of the Depositors, and delivered to the Distribution Agent contemporaneously with this joint instruction.

1.  Waiver of Security Procedures

By signing below, (i) each of the Depositors, the Estate Fiduciaries and the Joint Administrators (the "Parties") acknowledges and agrees that the security procedures set forth in Schedule G attached to and referenced in Section 12 of the Distribution Escrow Agreement do not require the Distribution Agent to make telephone callbacks to all the Depositors and the Estate Fiduciaries as to the joint instruction (the "Instruction") set forth in paragraph 2 below, (ii) the Parties authorize the Distribution Agent to perform a single telephone callback to either of the two individuals designated by the Parties as to the Instruction, and (iii) the Parties designate the following individuals to confirm the Instruction by telephone callback:

> Name:  Anna Ventresca
> Telephone Number:  905-863-1204, or 905-536-2604
>
> Name:  Allan Bifield
> Telephone Number:  905-863-6840, or 613-853-8077

Additionally, by signing below, each of the Depositors acknowledges and agrees that, except in the case of the Distribution Agent's gross negligence or willful misconduct, its indemnification of the Distribution Agent as set forth in Section 9 of the Distribution Escrow Agreement shall apply to the Distribution Agent's following of this Instruction and waiver of security procedures described herein.

2.  Instructions to You as the Distribution Agent

Pursuant to Section 5(a)(i) of the Distribution Escrow Agreement, the Depositors and the Estate Fiduciaries hereby instruct the Distribution Agent to immediately disburse $8,300,000 out of the sale proceeds to the following intermediate distribution account established by the Distribution Agent in accordance with the Intermediate Account Distribution Account Joint Instructions:

> Bank: JPMorgan Chase Bank, N.A.
> Bank address:  ●[1]
> Account number:  ●
> Routing number:  ●
> Account name:  ●

---

[1]      NTD: Should include information for intermediate JPM distribution account to be created (per JPM, account name may be assigned by Nortel).

The Parties hereby instruct the Distribution Agent, if required by applicable law and solely to the extent necessary to reflect the transaction contemplated hereby, to amend any tax forms the Distribution Agent has previously delivered to any of the Parties or otherwise filed with any governmental authority in accordance with Section 4(a) of the Distribution Escrow Agreement, including without limitation IRS Forms 1099 and 1042-S.

Please acknowledge receipt of this Instruction by signing and returning the enclosed copy of this letter by email to Russell Eckenrod (reckenrod@cgsh.com) and Evan Cobb (Evan.Cobb@nortonrose.com) by [●], 2012.

Should you have any questions about this letter, please contact the Depositors at your earliest convenience.  Thank you for your assistance with this matter.

*[Signature pages to follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735



**NORTEL**

[●], 2012

<u>**Via Facsimile (212.623.6168)**</u>

JPMorgan Chase Bank, N.A.
TS / Escrow Services
4 New York Plaza, 21st Floor
New York, New York 10004
Attn: Andy Jacknick
Phone: 212.623.0241

  Re: <u>Joint Instruction and Waiver of Security Procedures – GSM Retained Contracts</u>
     <u>Escrow Agreement</u>

Ladies and Gentlemen:

   Reference is made to that certain GSM Retained Contracts Distribution Escrow
Agreement dated as of June 3, 2010, (the "<u>Distribution Escrow Agreement</u>") by and among (i)
Nortel Networks Limited ("<u>NNL</u>"); (ii) Nortel Networks Inc. ("<u>NNI</u>"); (iii) Nortel Networks
(CALA) Inc. ("<u>CALA</u>" and, together with NNL and NNI, the "<u>Main Sellers</u>"); (iv) each affiliate
of the Main Sellers listed on Schedule A to the Distribution Escrow Agreement (the "<u>Other
Sellers</u>" and, together with the Main Sellers, the "<u>Depositors</u>"); (v) Ernst & Young Inc. as the
court-appointed Monitor of the Canadian Debtors in connection with the CCAA Cases (the
"<u>Monitor</u>"); (vi) the Official Committee of Unsecured Creditors as representative for the
unsecured creditors of the U.S. Debtors (the "<u>Committee</u>", and together with the Monitor, the
"<u>Estate Fiduciaries</u>"); and (vii) JPMorgan Chase Bank, N.A. as escrow and distribution agent
under the Distribution Escrow Agreement (the "<u>Distribution Agent</u>").   Capitalized terms used
and not otherwise defined herein shall have the meaning given to them in the Distribution
Escrow Agreement.

   Reference is also made to that certain Authorization of Intermediate Distribution
Account, Joint Instructions and Waiver of Security Procedures dated as of [●], 2012 (the
"<u>Intermediate Distribution Account Joint Instruction</u>") executed by the Depositors, the Joint
Administrators, the Estate Fiduciaries, and certain other affiliates of the Depositors, and
delivered to the Distribution Agent contemporaneously with this joint instruction.

   1. <u>Waiver of Security Procedures</u>

   By signing below, (i) each of the Depositors, the Estate Fiduciaries and the Joint
Administrators (the "<u>Parties</u>") acknowledges and agrees that the security procedures set forth in
Schedule E attached to and referenced in Section 11 of the Distribution Escrow Agreement do
not require the Distribution Agent to make telephone callbacks to all the Depositors and the

Estate Fiduciaries as to the joint instruction (the "Instruction") set forth in paragraph 2 below, (ii) the Parties authorize the Distribution Agent to perform a single telephone callback to either of the two individuals designated by the Parties as to the Instruction, and (iii) the Parties designate the following individuals to confirm the Instruction by telephone callback:

> Name:  Anna Ventresca
> Telephone Number:  905-863-1204, or 905-536-2604
>
> Name:  Allan Bifield
> Telephone Number:  905-863-6840, or 613-853-8077

Additionally, by signing below, each of the Depositors acknowledges and agrees that, except in the case of the Distribution Agent's gross negligence or willful misconduct, its indemnification of the Distribution Agent as set forth in Section 9 of the Distribution Escrow Agreement shall apply to the Distribution Agent following this Instruction and waiver of security procedures described herein.

2.    Instructions to You as the Distribution Agent

Pursuant to Section 5(a)(i) of the Distribution Escrow Agreement, the Depositors and the Estate Fiduciaries hereby instruct the Distribution Agent to immediately disburse $500,000 out of the sale proceeds to the following intermediate distribution account established by the Distribution Agent in accordance with the Intermediate Distribution Account Joint Instructions:

> Bank: JPMorgan Chase Bank, N.A.
> Bank address:  ●[1]
> Account number:  ●
> Routing number:  ●
> Account name:  ●

The Parties hereby instruct the Distribution Agent, if required by applicable law and solely to the extent necessary to reflect the transaction contemplated hereby, to amend any tax forms the Distribution Agent has previously delivered to any of the Parties or otherwise filed with any governmental authority in accordance with Section 4(a) of the Distribution Escrow Agreement, including without limitation IRS Forms 1099 and 1042-S.

Please acknowledge receipt of this Instruction by signing and returning the enclosed copy of this letter by email to Russell Eckenrod (reckenrod@cgsh.com) and Evan Cobb (Evan.Cobb@nortonrose.com) by [●], 2012.

---

[1]    NTD: Should include information for intermediate JPM distribution account to be created (per JPM, account name may be assigned by Nortel).

2

Should you have any questions about this letter, please contact the Depositors at your earliest convenience.  Thank you for your assistance with this matter.

*[Signature pages to follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735



NØRTEL

[●], 2012

**Via Facsimile (212.623.6168)**

JPMorgan Chase Bank, N.A.
TS / Escrow Services
4 New York Plaza, 21st Floor
New York, New York 10004
Attn: Andy Jacknick
Phone: 212.623.0241

      Re:     Joint Instruction and Waiver of Security Procedures – MEN Escrow Agreement

Ladies and Gentlemen:

      Reference is made to that certain MEN Distribution Escrow Agreement dated as of March 19, 2010 (as amended, the "Distribution Escrow Agreement"), by and among (i) Nortel Networks Corporation ("NNC"); (ii) Nortel Networks Limited ("NNL"); (iii) Nortel Networks Inc. ("NNI" and, together with NNC and NNL, the "Main Sellers"); (iv) the Additional U.S. Debtors (as defined in the Distribution Escrow Agreement) and other affiliates of the Main Sellers listed on Schedule A of the Distribution Escrow Agreement but excluding Nortel Networks de Colombia S.A.[1] (collectively, the "Other Sellers"), (v) the companies listed on Schedule B of the Distribution Escrow Agreement (the "EMEA Sellers" and, together with the Main Sellers and the Other Sellers, the "Sellers"), acting by their joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively, the "Joint Administrators")) who act as agents for the EMEA Debtors (as defined in the Distribution Escrow Agreement); (vi) Nortel Networks S.A. (In Administration) ("NNSA") acting by the NNSA Office Holders (as defined in the Distribution Escrow Agreement); (vii) each affiliate of the Main Sellers listed on Schedule C of the Distribution Escrow Agreement (each such entity, a "North American ALT Selling Debtor"); (viii) each affiliate of the EMEA Sellers listed on Schedule D of the Distribution Escrow Agreement (each such entity an "EMEA ALT Selling Debtor" and, together with the Sellers, NNSA, and the North American ALT Selling Debtors, the "Depositors"); (ix) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with the CCAA Cases (the "Monitor"); (x) the Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "Committee", and together with the Monitor, the

---

[1]     Pursuant to orders of the U.S. Bankruptcy Court and the Canadian Court dated June 21, 2011, any term or condition of the Distribution Escrow Agreement that explicitly or implicitly requires the consent or participation of Nortel Networks de Colombia S.A. is now forever deemed to be not required.

"Estate Fiduciaries"); and (xi) JPMorgan Chase Bank, N.A. as escrow and distribution agent under the Distribution Escrow Agreement (the "Distribution Agent"), entered into in connection with the North American ASA and the EMEA ASA (each as defined in the Distribution Escrow Agreement).  Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

Reference is also made to that certain Authorization of Intermediate Distribution Account, Joint Instructions and Waiver of Security Procedures dated as of [●], 2012 (the "Intermediate Distribution Account Joint Instruction") executed by the Depositors, the Joint Administrators, the Estate Fiduciaries, and certain other affiliates of the Depositors, and delivered to the Distribution Agent contemporaneously with this joint instruction.

1.   Waiver of Security Procedures

By signing below, (i) each of the Depositors, the Joint Administrators and the Estate Fiduciaries (the "Parties") acknowledges and agrees that the security procedures set forth in Schedule G attached to and referenced in Section 12 of the Distribution Escrow Agreement do not require the Distribution Agent to make telephone callbacks to all the Depositors and the Estate Fiduciaries as to the joint instruction (the "Instruction") set forth in paragraph 2 below, (ii) the Parties authorize the Distribution Agent to perform a single telephone callback to either of the individuals designated by the Parties as to the Instruction, and (iii) the Parties designate the following individuals to confirm the Instruction by telephone callback:

> Name:  Anna Ventresca
> Telephone Number:  905-863-1204, or 905-536-2604
>
> Name:  Allan Bifield
> Telephone Number:  905-863-6840, or 613-853-8077

Additionally, by signing below, each of the Depositors acknowledges and agrees that, except in the case of the Distribution Agent's gross negligence or willful misconduct, its indemnification of the Distribution Agent as set forth in Section 9 of the Distribution Escrow Agreement shall apply to the Distribution Agent's following of this Instruction and waiver of security procedures described herein.

2.   Instructions to You as the Distribution Agent

Pursuant to Section 5(a)(i) of the Distribution Escrow Agreement, the Depositors and the Estate Fiduciaries hereby instruct the Distribution Agent to immediately disburse $14,850,000 out of the sale proceeds to the following intermediate distribution account established by the Distribution Agent in accordance with the Intermediate Account Distribution Account Joint Instructions:

2

Bank: JPMorgan Chase Bank, N.A.
Bank address: ●[2]
Account number: ●
Routing number: ●
Account name: ●

The Parties hereby instruct the Distribution Agent, if required by applicable law and solely to the extent necessary to reflect the transaction contemplated hereby, to amend any tax forms the Distribution Agent has previously delivered to any of the Parties or otherwise filed with any governmental authority in accordance with Section 4(a) of the Distribution Escrow Agreement, including, without limitation, IRS Forms 1099 and 1042-S.

Please acknowledge receipt of this Instruction by signing and returning the enclosed copy of this letter by email to Russell Eckenrod (reckenrod@cgsh.com) and Evan Cobb (Evan.Cobb@nortonrose.com) by [●], 2012.

Should you have any questions about this letter, please contact the Depositors at your earliest convenience.  Thank you for your assistance with this matter.

*[Signature pages follow.]*

**<u>Copy to</u>**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

---

[2]    NTD: Should include information for intermediate JPM distribution account to be created (per JPM, account name may be assigned by Nortel).



[●], 2012

<u>**Via Facsimile (212.623.6168)**</u>

JPMorgan Chase Bank, N.A.
TS / Escrow Services
4 New York Plaza, 21st Floor
New York, New York 10004
Attn: Andy Jacknick
Phone: 212.623.0241

Re:    <u>Joint Instruction and Waiver of Security Procedures – MSS Escrow Agreement</u>

Ladies and Gentlemen:

Reference is made to that certain MSS Distribution Escrow Agreement dated as of March 11, 2011 (as amended, the "<u>Distribution Escrow Agreement</u>"), by and among (i) Nortel Networks Corporation ("<u>NNC</u>"); (ii) Nortel Networks Limited ("<u>NNL</u>"); (iii) Nortel Networks Inc. ("<u>NNI</u>", and together with NNC and NNL, the "<u>Main Sellers</u>"); (iv) each affiliate of the Main Sellers listed on <u>Schedule A</u> of the Distribution Escrow Agreement (the "<u>Other Sellers</u>"); (v) the companies listed on <u>Schedule B</u> of the Distribution Escrow Agreement (the "<u>EMEA Sellers</u>"), acting by Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively, the "<u>Joint Administrators</u>")) who act as agents for the EMEA Debtors (as defined in the Distribution Escrow Agreement); (vi) Nortel Networks S.A. (in administration) ("<u>NNSA</u>") acting by the French Liquidator (as defined in the Distribution Escrow Agreement) (NNSA, together with the Main Sellers, the Other Sellers and the EMEA Sellers, the "<u>Depositors</u>"); (vii) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with the CCAA Cases (the "<u>Monitor</u>"); (viii) the Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "<u>Committee</u>," and together with the Monitor, the "<u>Estate Fiduciaries</u>"); and (ix) JPMorgan Chase Bank, N.A., as escrow and distribution agent under the Distribution Escrow Agreement (the "<u>Distribution Agent</u>"), entered into in connection with the North American ASA and the EMEA ASA (each as defined in the Distribution Escrow Agreement). Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

Reference is also made to that certain Authorization of Intermediate Distribution Account, Joint Instructions and Waiver of Security Procedures dated as of [●], 2012 (the "<u>Intermediate Distribution Account Joint Instruction</u>") executed by the Depositors, the Joint

Administrators, the Estate Fiduciaries, and certain other affiliates of the Depositors, and delivered to the Distribution Agent contemporaneously with this joint instruction.

     1.   Waiver of Security Procedures

     By signing below, (i) each of the Depositors, the Joint Administrators and the Estate Fiduciaries (the "Parties") acknowledges and agrees that the security procedures set forth in Schedule F attached to and referenced in Section 11 of the Distribution Escrow Agreement do not require the Distribution Agent to make telephone callbacks to all the Depositors and the Estate Fiduciaries as to the joint instruction (the "Instruction") set forth in paragraph 2 below, (ii) the Parties authorize the Distribution Agent to perform a single telephone callback to either of the two individuals designated by the Parties as to the Instruction, and (iii) the Parties designate the following individuals to confirm the Instruction by telephone callback:

          Name:  Anna Ventresca
          Telephone Number:  905-863-1204, or 905-536-2604

          Name:  Allan Bifield
          Telephone Number:  905-863-6840, or 613-853-8077

     Additionally, by signing below, each of the Depositors acknowledges and agrees that, except in the case of the Distribution Agent's gross negligence or willful misconduct, its indemnification of the Distribution Agent as set forth in Section 9 of the Distribution Escrow Agreement shall apply to the Distribution Agent's following of this Instruction and waiver of security procedures described herein.

     2.   Instructions to You as the Distribution Agent

     Pursuant to Section 5(a)(i) of the Distribution Escrow Agreement, the Depositors and the Estate Fiduciaries hereby instruct the Distribution Agent to immediately disburse $850,000 out of the sale proceeds to the following intermediate distribution account established by the Distribution Agent in accordance with the Intermediate Account Distribution Account Joint Instructions:

          Bank: JPMorgan Chase Bank, N.A.
          Bank address:  ●[1]
          Account number:  ●
          Routing number:  ●
          Account name:  ●

     The Parties hereby instruct the Distribution Agent, if required by applicable law and solely to the extent necessary to reflect the transaction contemplated hereby, to amend any tax forms the Distribution Agent has previously delivered to any of the Parties or otherwise filed

---

[1]     NTD: Should include information for intermediate JPM distribution account to be created (per JPM, account name may be assigned by Nortel).

with any governmental authority in accordance with Section 4(a) of the Distribution Escrow Agreement, including without limitation IRS Forms 1099 and 1042-S.

Please acknowledge receipt of this Instruction by signing and returning the enclosed copy of this letter by email to Russell Eckenrod (reckenrod@cgsh.com) and Evan Cobb (Evan.Cobb@nortonrose.com) by [●], 2012.

Should you have any questions about this letter, please contact the Depositors at your earliest convenience.  Thank you for your assistance with this matter.

*[Signature pages to follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

**APPENDIX G**

Form of Intermediate Distribution Account Release Instruction



**NORTEL**

[●], 2012

<u>**Via Facsimile (212.623.6168)**</u>

JPMorgan Chase Bank, N.A.
TS / Escrow Services
4 New York Plaza, 21st Floor
New York, New York 10004
Attn: Andy Jacknick
Phone: 212.623.0241

     Re:    <u>Authorization of Intermediate Distribution Account, Joint Instruction and Waiver of Security Procedures</u>

Ladies and Gentlemen:

     Reference is made to:

    1.  That certain MEN Distribution Escrow Agreement dated as of March 19, 2010 (as amended, the "<u>MEN Distribution Escrow Agreement</u>"), by and among (i) Nortel Networks Corporation ("<u>NNC</u>"), (ii) Nortel Networks Limited ("<u>NNL</u>"), (iii) Nortel Networks Inc. ("<u>NNI</u>" and, together with NNC and NNL, the "<u>Main Sellers</u>"), (iv) the Additional U.S. Debtors (as defined in the Distribution Escrow Agreement) and other affiliates of the Main Sellers listed on <u>Schedule A</u> of the Distribution Escrow Agreement but excluding Nortel Networks de Colombia S.A.[1] (collectively, the "<u>MEN Other Sellers</u>"), (v) the companies listed on <u>Schedule B</u> of the Distribution Escrow Agreement (the "<u>MEN EMEA Sellers</u>" and, together with the MEN Main Sellers and the MEN Other Sellers, the "<u>MEN Sellers</u>"), acting by their joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively, the "<u>Joint Administrators</u>")) who act as agents for the EMEA Debtors (as defined in the Distribution Escrow Agreement), (vi) Nortel Networks S.A. (In Administration) ("<u>NNSA</u>") acting by the NNSA Office Holders (as defined in the Distribution Escrow Agreement), (vii) each affiliate of the Main Sellers listed on <u>Schedule C</u> of the Distribution Escrow Agreement (each such entity, an "<u>MEN North American ALT Selling Debtor</u>"), (viii) each affiliate of the EMEA Sellers listed on <u>Schedule D</u> of the Distribution Escrow Agreement (each such entity an "<u>MEN EMEA ALT Selling Debtor</u>" and, together with the MEN Sellers, NNSA, and the MEN North American ALT Selling Debtors, the "<u>MEN</u>

---

[1]    Pursuant to orders of the U.S. Bankruptcy Court and the Canadian Court dated June 21, 2011, any term or condition of the Distribution Escrow Agreement that explicitly or implicitly requires the consent or participation of Nortel Networks de Colombia S.A. is now forever deemed to be not required.

Depositors"), (ix) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with the CCAA Cases (the "<u>Monitor</u>"), (x) the Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "<u>Committee</u>", and together with the Monitor, the "<u>Estate Fiduciaries</u>" and, together with the MEN Depositors, the "<u>MEN Escrow Parties</u>"), and (xi) JPMorgan Chase Bank, N.A. as escrow and distribution agent under the Distribution Escrow Agreement (the "<u>Distribution Agent</u>");

2.   That certain GSM/GSM-R Distribution Escrow Agreement , dated as of March 31, 2010 (as amended, the "<u>GSM/GSM-R Distribution Escrow Agreement</u>"), by and among (i) the Main Sellers, (ii) the affiliates of the Main Sellers listed on <u>Schedule A</u> of the GSM/GSM-R Distribution Escrow Agreement (the "<u>GSM/GSM-R Other Sellers</u>"), (iii) the companies listed on <u>Schedule B</u> of the Distribution Escrow Agreement (the "<u>GSM/GSM-R EMEA Sellers</u>"), acting by the Joint Administrators, (iv) NNSA, acting by the French Office Holders, (v) Nortel Networks (Asia) Limited ("<u>NN Asia</u>"), (vi) the affiliates of the Main Sellers listed on <u>Schedule C</u> of the Distribution Escrow Agreement (each such entity, a "<u>GSM/GSM-R North American ALT Selling Debtor</u>"), (vii) the affiliates of the EMEA Sellers listed on <u>Schedule D</u> of the Distribution Escrow Agreement (each such entity, an "<u>GSM/GSM-R EMEA ALT Selling Debtor</u>," and together with the GSM/GSM-R Main Sellers, the GSM/GSM-R Other Sellers, the GSM/GSM-R EMEA Sellers, NNSA, NN Asia and the GSM/GSM-R North American ALT Selling Debtors, the "<u>GSM/GSM-R Depositors</u>"), (viii) the Estate Fiduciaries (together with the GSM/GSM-R Depositors, the "<u>GSM/GSM-R Escrow Parties</u>"), and (x) the Distribution Agent;

3.   That certain CVAS Distribution Escrow Agreement, dated as of May 27, 2010 (as amended, the "<u>CVAS Distribution Escrow Agreement</u>"), by and among (i) the Main Sellers, (ii) the affiliates of the Main Sellers listed on <u>Schedule A</u> of the CVAS Distribution Escrow Agreement (the "<u>CVAS Other Sellers</u>"), (iii) the companies listed on <u>Schedule B</u> of the CVAS Distribution Escrow Agreement (the "<u>CVAS EMEA Sellers</u>"), acting by the Joint Administrators, (iv) NNSA, acting by the French Liquidator (as defined in the CVAS Distribution Escrow Agreement)(together with the CVAS Main Sellers, the CVAS Other Sellers and the CVAS EMEA Sellers, the "<u>CVAS Depositors</u>"), (v) the Estate Fiduciaries (together with the CVAS Depositors, the "<u>CVAS Escrow Parties</u>"), and (vi) the Distribution Agent;

4.   That certain MSS Distribution Escrow Agreement, dated as of March 11, 2011 (as amended, the "<u>MSS Distribution Escrow Agreement</u>"), by and among (i) the Main Sellers, (ii) the affiliates of the Main Sellers listed on <u>Schedule A</u> of the MSS Distribution Escrow Agreement (the "<u>MSS Other Sellers</u>"), (iii) the companies listed on <u>Schedule B</u> of the MSS Distribution Escrow Agreement (the "<u>MSS EMEA Sellers</u>"), acting by the Joint Administrators, (iv) NNSA, acting by the French Liquidator, (together with the MSS Main Sellers, the MSS Other Sellers and the MSS EMEA Sellers, the "<u>MSS Depositors</u>"), (v) the Estate Fiduciaries (together with the CVAS Depositors, the "<u>MSS Escrow Parties</u>"), and (vi) the Distribution Agent;

5.   That certain Escrow Agreement, dated as of December 18, 2009 (as amended, the "<u>Enterprise Distribution Escrow Agreement</u>"), by and among (i) the Main Sellers, (ii) the affiliates of the Main Sellers listed on <u>Schedule A</u> <u>Parts 1 and 2</u> of the Enterprise Distribution Escrow Agreement (the "<u>Enterprise Other Sellers</u>" and, together with the Main Sellers, the

"Enterprise Sellers"), (iii) the companies listed on Schedule B Part 1 of the Enterprise Distribution Escrow Agreement (the "Enterprise EMEA Filed Entities"), which are acting by the Joint Administrators, (iv) NNSA, acting by the French Liquidator, (v) the companies listed on Schedule B Part 2 of the Enterprise Distribution Escrow Agreement (the "Enterprise EMEA Non-Filed Entities", and together with the Enterprise EMEA Filed Entities, the Main Sellers and the Enterprise Other Sellers, the "Enterprise Depositors"), (v)i the Estate Fiduciaries (together with the Enterprise Depositors, the "Enterprise Escrow Parties"), and (vii) the Distribution Agent;

6.    That certain GSM Retained Contracts Distribution Escrow Agreement dated as of June 3, 2010 (as amended, the "GSM Retained Distribution Escrow Agreement"), by and among (i) NNL, (ii) NNI, and (iii) Nortel Networks (CALA) Inc. (together with NNL and NNI, the "GSM Retained Main Sellers"), (iv) the affiliates of the Main Sellers listed on Schedule A to the GSM Retained Distribution Escrow Agreement (the "GSM Retained Other Sellers" and, together with the Main Sellers, the "GSM Retained Depositors"), (v) the Estate Fiduciaries (together with the GSM Retained Depositors, the "GSM Retained Escrow Parties"), and (vi) the Distribution Agent;

7.    That certain CDMA/LTE Escrow Agreement dated as of November 11, 2009, (the "CDMA Distribution Escrow Agreement" and, together with the GSM/GSM-R Distribution Escrow Agreement, the CVAS Distribution Escrow Agreement, the MSS Distribution Escrow Agreement, the MEN Distribution Escrow Agreement, the Enterprise Distribution Escrow Agreement, and the GSM Retained Distribution Escrow Agreement, the "Distribution Escrow Agreements") by and among (i) the Main Sellers, (ii) the companies set out in Schedule A to the CDMA Distribution Escrow Agreement (the "CDMA EMEA Filed Entities"), which are acting by the Joint Administrators (the CDMA EMEA Filed Entities, collectively with the Main Sellers, being the "CDMA Depositors" and, together with the GSM/GSM-R Depositors, the CVAS Depositors, the MSS Depositors, the MEN Depositors, the Enterprise Depositors, and the GSM Retained Depositors, the "Depositors"), (iii) the Estate Fiduciaries (together with the CDMA Depositors, the "CDMA Escrow Parties" and, together with the GSM/GSM-R Escrow Parties, the CVAS Escrow Parties, the MSS Escrow Parties, the MEN Escrow Parties, the Enterprise Escrow Parties, and the GSM Escrow Parties, the "Escrow Parties")), and (iv) the Distribution Agent;

8.    That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "GSM/GSM-R Release Instruction") executed by the GSM/GSM-R Escrow Parties and delivered to the Distribution Agent contemporaneously with this Joint Instruction and Waiver of Security Procedures (the "Instruction");

9.    That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "CVAS Release Instruction") executed by the CVAS Escrow Parties and delivered to the Distribution Agent contemporaneously with this Instruction;

10. That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "MSS Release Instruction") executed by the MSS Escrow Parties and delivered to the Distribution Agent contemporaneously with this Instruction;

11. That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "<u>MEN Release Instruction</u>") executed by the MEN Escrow Parties and delivered to the Distribution Agent contemporaneously with this Instruction;

12. That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "<u>Enterprise Release Instruction</u>") executed by the Enterprise Escrow Parties and delivered to the Distribution Agent contemporaneously with this Instruction;

13. That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "<u>CDMA Release Instruction</u>") executed by the CDMA Escrow Parties and delivered to the Distribution Agent contemporaneously with this Instruction;

14. That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "<u>GSM Retained Release Instruction</u>" and, together with the GSM/GSM-R Release Instruction, the CVAS Release Instruction, the MSS Release Instruction, the MEN Release Instruction, the Enterprise Release Instruction, and the GSM Retained Release Instruction, the "<u>Release Instructions</u>") executed by the GSM Retained Escrow Parties and delivered to the Distribution Agent contemporaneously with this Instruction.

    1. <u>Authorization of Intermediate Distribution Account</u>

By signing below, each of the Depositors, the Joint Administrators and the Estate Fiduciaries (the "<u>Parties</u>") acknowledge and agree that the Distribution Agent is authorized to establish a noninterest-bearing account (the "<u>Intermediate Distribution Account</u>") and, in accordance with the terms of the Release Instructions, to deposit certain funds (the "<u>Intermediate Distribution Account Funds</u>") from the accounts corresponding to the Distribution Escrow Agreements (the "<u>Distribution Escrow Accounts</u>") into the Intermediate Distribution Account in accordance with the Release Instructions.  The Parties acknowledge and agree that the Distribution Agent is hereby authorized to establish the Intermediate Distribution Account and deposit certain funds from the Distribution Escrow Accounts into the Intermediate Distribution Account in accordance with the Release Instructions notwithstanding any provision of the Escrow Agreements, including, without limitation, with respect to commingling of escrowed funds or investment guidelines.  The Parties waive any rights to the Intermediate Distribution Account Funds, including the right to direct payment of the Intermediate Distribution Account Funds, except as provided in this Instruction.

This Instruction is provided in connection with the Allocation Settlement Agreement (APAC/CALA) (as amended, the "<u>Settlement Agreement</u>"), dated as of [●], 2012 between, among others, the Depositors, the Estate Fiduciaries and the Joint Administrators.  In the event that you receive written notice from any of the Contact Persons (as defined below) that the Settlement Agreement is terminated prior to the transmission of the Intermediate Distribution Escrow Funds from the Intermediate Distribution Account, then the Depositors and the Estate Fiduciaries hereby direct you to return the Intermediate Distribution Escrow Funds to the accounts from which they were transferred pursuant to the Release Instructions.

    2. <u>Waiver of Security Procedures</u>

4

By signing below, (i) each of the Parties acknowledges and agrees that the security procedures set forth in the applicable schedules as attached to the Distribution Escrow Agreements do not require the Distribution Agent to make telephone callbacks to all the Depositors and the Estate Fiduciaries as to this Instruction, (ii) the Parties authorize the Distribution Agent to perform a single telephone callback to any of the individuals designated by the Parties as to this Instruction, and (iii) the Parties designate the following individuals (the "Contact Persons") to confirm this Instruction by telephone callback:

> Name:  Anna Ventresca
> Telephone Number:  905-863-1204, or 905-536-2604
>
> Name:  Allan Bifield
> Telephone Number:  905-863-6840, or 613-853-8077
>
> Name: Timothy Ross
> Telephone Number:  919-905-2721

Additionally, by signing below, each of the Depositors acknowledges and agrees that, except in the case of the Distribution Agent's gross negligence or willful misconduct, its indemnification of the Distribution Agent as set forth in the applicable provisions of each Distribution Escrow Agreement to which it is a party shall apply to the Distribution Agent's following of this Instruction and the waiver of security procedures described herein.

3.   Instructions to You as the Distribution Agent

Upon the deposit of all Intermediate Distribution Account Funds from the Distribution Escrow Accounts in the Intermediate Distribution Account (which account shall be **[Insert Account Information]**), the Depositors and the Estate Fiduciaries hereby instruct the Distribution Agent to immediately disburse, out of the Intermediate Distribution Account, the following amounts[2] in accordance with the wire transfer instructions in the table below:[3]

| Recipient (Party name) | Account Information | | Dollar Amount |
|---|---|---|---|
| Nortel Networks (Asia) Limited, Taiwan Branch | Bank name:      [●]<br>Bank address:    [●]<br>Account number: [●]<br>Account name:   [●]<br>SWIFT Code:     [●] | | $[●] |
| Nortel Networks Australia | Bank name:      [●]<br>Bank address:    [●]<br>Account number: [●]<br>Account name:   [●]<br>SWIFT Code:     [●] | | $[●] |

---

2       NTD: Aggregate disbursements shall total $44,900,000.
3       NTD: Shall include the amounts and recipients as currently contained in Schedule B to the Settlement Agreement.

| | | |
|---|---|---|
| Nortel Networks Malaysia Sdn. Bhd. | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks (India) Private Limited | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| PT Nortel Networks Indonesia | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks Japan | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks New Zealand Limited | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks (Thailand) Limited | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks Limited | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks International Corporation | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks Global Corporation | Bank name: [●]<br>Bank address: [●]<br>Account number: [●] | $[●] |

6

| | Account name: [●]<br>SWIFT Code: [●] | |
|---|---|---|
| Nortel Networks Inc. | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks Application Management Solutions Inc. | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Altsystems Inc. | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks S.A. | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks France S.A.S. | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks (Ireland) Limited | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks BV | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks Hispania, SA | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks UK Limited | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●] | $[●] |

| | | |
|---|---|---|
| | SWIFT Code: [●] | |
| Nortel Networks Inc Dubai | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks de Argentina S.A. | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks Chile S.A. | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks del Ecuador S.A. | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks de Guatemala Ltda | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks de México, S.A. de C.V. | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks Perú S.A.C. | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |
| Nortel Networks del Uruguay S.A. | Bank name: [●]<br>Bank address: [●]<br>Account number: [●]<br>Account name: [●]<br>SWIFT Code: [●] | $[●] |

The Parties hereby instruct the Distribution Agent, if required by applicable law and solely to the extent necessary to reflect the transaction contemplated hereby, to amend any tax forms the Distribution Agent has previously delivered to any of the Parties or otherwise filed

with any governmental authority in accordance with Section 4(a) of the Distribution Escrow Agreement, including, without limitation, IRS Forms 1099 and 1042-S.

4. Governing Law and Jurisdiction

This Instruction shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

To the fullest extent permitted by applicable law, each Party agrees that the provisions of the Settlement Agreement relating to jurisdiction shall apply *mutatis mutandis* to this instruction.

Please acknowledge receipt of this joint instruction by signing and returning the enclosed copy of this letter by mail, email or fax to Russell Eckenrod (reckenrod@cgsh.com) and Evan Cobb (evan.cobb@nortonrose.com) by [●], 2012.

Should you have any questions about this letter, please contact the Depositors at your earliest convenience.  Thank you for your assistance with this matter.

*[Signature pages follow.]*[4]

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

---

[4]    NTD: Will include signature pages for the Depositors, the Joint Administrators and the Estate Fiduciaries implicit in definitions.

**Schedule 1**

**Canadian Debtors**

1.  Nortel Networks Corporation

2.  Nortel Networks Limited

3.  Nortel Networks Global Corporation

4.  Nortel Networks International Corporation

5.  Nortel Networks Technology Corporation

**Schedule 2**

**US Debtors**

1.  Nortel Networks Inc.

2.  Architel Systems (U.S.) Corporation

3.  CoreTek, Inc.

4.  Nortel Altsystems, Inc. (previously "Alteon WebSystems, Inc.")

5.  Nortel Altsystems International Inc. (previously "Alteon WebSystems International, Inc.")

6.  Nortel Networks Applications Management Solutions Inc.

7.  Nortel Networks Cable Solutions Inc.

8.  Nortel Networks Capital Corporation

9.  Nortel Networks (CALA) Inc.

10. Nortel Networks HPOCS Inc.

11. Nortel Networks International Inc.

12. Nortel Networks Optical Components Inc.

13. Northern Telecom International Inc.

14. Qtera Corporation

15. Sonoma Systems

16. Xros, Inc.

**Schedule 3**

**EMEA Debtors**

1.  Nortel Networks UK Limited (In Administration)

2.  Nortel Networks (Ireland) Limited (In Administration)

3.  Nortel Networks NV (In Administration)

4.  Nortel Networks SpA (In Administration)

5.  Nortel Networks BV (In Administration)

6.  Nortel Networks Polska Sp z.o.o. (In Administration)

7.  Nortel Networks Hispania, SA (In Administration)

8.  Nortel Networks (Austria) GmbH (In Administration)

9.  Nortel Networks sro (In Administration)

10. Nortel Networks Engineering Services Kft (In Administration)

11. Nortel Networks Portugal SA (In Administration)

12. Nortel Networks Slovensko, sro (In Administration)

13. Nortel Networks Romania Srl (In Administration)

14. Nortel GmbH (In Administration)

15. Nortel Networks Oy (In Administration)

16. Nortel Networks AB (In Administration)

17. Nortel Networks International Finance & Holding BV (In Administration)

18. Nortel Networks France S.A.S. (In Administration)

**APPENDIX H**

Form of Full and Final Acknowledgement and Release (Paraguay)

EXECUTION VERSION

**FULL AND FINAL ACKNOWLEDGMENT AND RELEASE**
**(PARAGUAY)**

This full and final acknowledgment and release (the "**Agreement**") dated as of the 22nd day of March, 2012 is given by Nortel Networks del Paraguay S.A. (in liquidation) ("**Nortel Paraguay**") in favour of Nortel Networks Corporation ("**NNC**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Inc. ("**NNI**"), Nortel Networks UK Limited (In Administration) ("**NNUK**") and those other parties listed on Schedule A hereto (NNC, NNL, NNI, NNUK and those parties listed on Schedule A are collectively referred to herein as the "**Nortel Parties**").

**RECITALS:**

WHEREAS, Nortel Paraguay is a majority owned subsidiary of NNL;

WHEREAS on or about December 29, 2009, Nortel Paraguay entered into liquidation proceedings and Hugo Berkemeyer was appointed as liquidator of Nortel Paraguay (the "**Liquidator**");

WHEREAS NNL, NNI, Nortel Networks (CALA) Inc. and other parties including Nortel Paraguay (the "**GSM Retained Contracts Sellers**") entered into an asset sale agreement dated as of May 11, 2010 with Telefonaktiebolaget L. M. Ericsson (Publ), as purchaser ("**Ericsson**"), for the assignment of certain contracts by the GSM Retained Contracts Sellers to Ericsson (the "**GSM Retained Contracts Sale**");

WHEREAS pursuant the GSM Retained Contracts Sale, Nortel Paraguay partially assigned certain of its rights under a bundled contract and pursuant to such assignment, Ericsson assumed the outstanding warranty obligations under such contract;

WHEREAS in connection with the GSM Retained Contracts Sale, the GSM Retained Contracts Sellers executed a deposit escrow agreement (the "**GSM Retained Contracts Escrow Agreement**") with JPMorgan Chase Bank, N.A., as distribution agent (the "**Escrow Agent**") for the deposit of the sale proceeds (the "**Sale Proceeds**") from the GSM Retained Contracts Sale;

WHEREAS Nortel Paraguay was not a party to any of the other transactions pursuant to which various of the Nortel Parties have sold their business and assets to third party buyers (the "**Global Sales**");

WHEREAS Nortel Paraguay has agreed to provide certain acknowledgements and releases set out herein in order to facilitate the settlement of certain matters relating to the allocation of sale proceeds under various of the Global Sales (the agreement reflecting such settlement, the ("**APAC/CALA Settlement Agreement**")

NOW THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED, THE PARTIES HEREBY AGREE AS FOLLOWS:

## ARTICLE I – ACKNOWLEDGEMENT RE SALE PROCEEDS

1.1    **Acknowledgement regarding Sale Proceeds**

Nortel Paraguay hereby acknowledges and agrees as follows:

(a)    Notwithstanding the fact that it was a party to the GSM Retained Contracts Sale and the GSM Retained Contracts Escrow Agreement, Nortel Paraguay has no entitlement to any of the Sale Proceeds.

(b)    Nortel Paraguay shall, simultaneously with the execution and delivery of this Agreement,  execute and deliver an amendment to the GSM Retained Contracts Escrow Agreement substantially in the form attached as **Exhibit A** hereto to remove all references to Nortel Paraguay as a Depositor (as such term is defined in the GSM Retained Contracts Escrow Agreement) or otherwise, such that upon execution of such amendment Nortel Paraguay shall immediately and irrevocably cease to be a Depositor under the GSM Retained Contracts Escrow Agreement for any and all purposes and shall have no further rights or obligations under the GSM Retained Contracts Escrow Agreement (the "**Escrow Amendment**"), and that any term or condition of the GSM Retained Contracts Escrow Agreement that explicitly or implicitly requires the consent or participation of Nortel Paraguay shall be forever deemed not to require such consent or participation.  For the avoidance of doubt, Nortel Paraguay agrees that the Escrow Agent is authorized to take all acts requiring the unanimous direction of the Depositors under the GSM Retained Contracts Escrow Agreement without the consent or participation of Nortel Paraguay.

(c)    Nortel Paraguay shall, simultaneously with the execution and delivery of this Agreement,  execute and deliver to the Escrow Agent, escrow release instructions substantially in the forms attached as **Exhibit B** hereto (the "**Escrow Release Instructions**") relating to the APAC/CALA Settlement Agreement, it being understood and agreed that Nortel Paraguay will not be receiving any amounts pursuant to such Escrow Release Instructions.

(d)    Without limiting those obligations set out herein, Nortel Paraguay covenants and agrees to use commercially reasonable efforts to effect the outcomes described herein including, without limitation, promptly executing and delivering any further documentation that may be required by the Escrow Agent.

(e)    For the purpose of this Article VI, "Business Day" shall mean a day that is not a Saturday, Sunday or national public holiday in Canada, the United States or any part of the United Kingdom.

## ARTICLE II – RELEASES

2.1   **Release**

(a)   Nortel Paraguay hereby releases each of the  Nortel Parties and each of their respective directors, officers, employees, agents, attorneys, advisors, predecessors, successors and assigns (collectively, the "**Releasees**") from (x) any and all claims, rights, debts, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, whether sounding in contract, tort or otherwise (collectively "**Claims**"), that Nortel Paraguay now has, had, or may have against any of the Releasees up to the date of this Agreement, including, without limitation, (i) in respect of Sale Proceeds, (ii) in respect of proceeds of sale arising from any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates including, without limitation, pursuant to the GSM Retained Contracts Sale; and (y) any and all Claims in respect of any proceeds of sale of any future divestiture of assets by or on behalf of a Nortel Party or any of its affiliates other than those in which Nortel Paraguay participates (collectively, the "**Released Claims**") and agrees that it shall not allege, file or otherwise assert any Released Claim against the Releasees or the Escrow Agent, or any of them, including in respect of an entitlement to or the allocation of Sale Proceeds or any other proceeds of sale in connection with any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates that has occurred or that may occur, or allege, file or otherwise assert a Claim against either the Releasees or any person which could result in a claim over or right of contribution or indemnity against any of the Releasees in respect of the Released Claims or that could otherwise impact upon a Releasee's entitlement to or the allocation of Sale Proceeds or any other proceeds of sale in connection with any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates that has occurred or that may occur.  Nortel Paraguay agrees that it is hereby prohibited from participating in any court proceeding, mediation or other proceeding or discussion to resolve the allocation of Sale Proceeds or any other proceeds of sale in connection with any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates that has occurred or that may occur.

2.2    Notwithstanding anything to the contrary in this Agreement, Nortel Paraguay covenants and agrees, if requested to do so, to enter into any license termination agreement with respect to the licenses and rights granted by other Nortel Parties for no further consideration; provided that, Nortel Paraguay shall, in exchange for such license termination, receive a sublicense from the relevant Nortel Party that provides reasonably equivalent rights to the terminated licenses and rights.

## ARTICLE III – REPRESENTATIONS AND WARRANTIES

3.1    **Representations and Warranties of the Parties**

Nortel Paraguay hereby represents and warrants, as of the date hereof:

(a)    it has the power and authority to enter into this Agreement and to carry out its obligations hereunder;

(b)    the execution of this Agreement, and the consummation of the transactions contemplated herein, have been authorized by all necessary approvals, and no other act or proceeding on its part is necessary to authorize the execution of this Agreement; and

(c)    this Agreement has been duly executed by it and constitutes a legal, valid and binding obligation of such Party that is enforceable against it under all applicable laws and regulations.

## ARTICLE IV – MISCELLANEOUS

4.1    **Governing Law and Jurisdiction**

(a)    This Agreement shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

(b)    To the fullest extent permitted by applicable law, Nortel Paraguay (i) agrees to submit to the jurisdiction of the US and Canadian Courts (including for purposes of a joint hearing conducted under the cross-border insolvency protocol, as amended and as the same may be further amended, approved by the US and Canadian Courts in their respective proceedings (the "**Cross-Border Protocol**")), for purposes of all legal proceedings to the extent relating to the matters agreed in this Agreement; (ii) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever to the extent relating to the matters in this Agreement must be commenced in (w) a joint hearing of both the Canadian and US Courts conducted under the Cross-Border Protocol if such claim, action or proceeding would affect any of the Canadian Debtors (as set out on Schedule A hereto) and any of the US Debtors (as set out on Schedule A hereto), (x) the US Court for any claim, action or proceeding if such claim, action or proceeding would affect the US Debtors and not affect the Canadian Debtors, (y) the Canadian Court if such claim, action or proceeding would affect

the Canadian Debtors, but not affect the US Debtors, or (z) the courts of England and Wales if such claim, action or proceeding would affect the EMEA Debtors (as set out on Schedule A hereto), but not affect the US Debtors or the Canadian Debtors; (iii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such action brought in such a court or any claim that any such action brought in such a court has been brought in an inconvenient forum; (iv) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by law shall be valid and sufficient service thereof; and (v) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.

4.2    **Binding; Successors and Assigns**

Except as otherwise expressly provided in this Agreement, all representations, warranties, covenants and agreements set forth in this Agreement by or on behalf of Nortel Paraguay hereto will be binding upon and inure to the benefit of Nortel Paraguay, the Liquidator and either of their successors and permitted assigns, including, without limitation, any further administrator, liquidator, trustee, receiver appointed as a successor or assign of Nortel Paraguay.

4.3    **Specific Performance**

Nortel Paraguay agrees that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. Accordingly, in addition to any other remedies to which the Nortel Parties are entitled at law or in equity, each of the Nortel Parties shall be entitled to equitable relief to prevent or remedy breaches of this Agreement, without the proof of actual damages, including in the form of an injunction or injunctions or orders for specific performance in respect of such breaches.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK]**

IN WITNESS WHEREOF, Nortel Paraguay has caused this Agreement to be duly executed and delivered as of this 22nd day of March, 2012.

NORTEL NETWORKS DEL PARAGUAY S.A.
(In Liquidation)

Per: _____
Name: Hugo T. Berkemeyer
Title: Liquidator

*SIGNATURE PAGE - FULL AND FINAL ACKNOWLEDGMENT AND RELEASE (PARAGUAY)*

## SCHEDULE A - NORTEL PARTIES

| Canadian Debtors | U.S. Debtors |
|---|---|
| 1.  Nortel Networks Corporation | 1.  Nortel Networks Inc. |
| 2.  Nortel Networks Limited | 2.  Architel Systems (U.S.) Corporation |
| 3.  Nortel Networks Global Corporation | 3.  CoreTek, Inc. |
| 4.  Nortel Networks International Corporation | 4.  Nortel Altsystems, Inc. (previously "Alteon WebSystems, Inc.") |
| 5.  Nortel Networks Technology Corporation | 5.  Nortel Altsystems International Inc. (previously "Alteon WebSystems International, Inc.") |
|  | 6.  Nortel Networks Applications Management Solutions Inc. |
|  | 7.  Nortel Networks Cable Solutions Inc. |
|  | 8.  Nortel Networks Capital Corporation |
|  | 9.  Nortel Networks (CALA) Inc. |
|  | 10. Nortel Networks HPOCS Inc. |
|  | 11. Nortel Networks International Inc. |
|  | 12. Nortel Networks Optical Components Inc. |
|  | 13. Northern Telecom International Inc. |
|  | 14. Qtera Corporation |
|  | 15. Sonoma Systems |
|  | 16. Xros, Inc. |

| EMEA Debtors | APAC Entities |
|---|---|
| 1. Nortel Networks UK Limited (In Administration) | 1. Nortel Networks (Asia) Limited |
| 2. Nortel Networks (Ireland) Limited (In Administration) | 2. Nortel Networks Australia Pty. Limited |
| 3. Nortel Networks NV (In Administration) | 3. Nortel Networks (India) Private Limited |
| 4. Nortel Networks SpA (In Administration) | 4. PT Nortel Networks Indonesia |
| 5. Nortel Networks BV (In Administration) | 5. Nortel Networks Japan (Japanese name is Nortel Networks Kabushiki Kaisha) |
| 6. Nortel Networks Polska Sp z.o.o. (In Administration) | 6. Nortel Networks Korea Limited |
| 7. Nortel Networks Hispania, SA (In Administration) | 7. Nortel Networks Malaysia Sdn. Bhd. |
| 8. Nortel Networks (Austria) GmbH (In Administration) | 8. Nortel Networks New Zealand Limited |
| 9. Nortel Networks sro (In Administration) | 9. Nortel Networks Singapore Pte Ltd |
| 10. Nortel Networks Engineering Services Kft (In Administration) | 10. Nortel Networks (Thailand) Limited |
| 11. Nortel Networks Portugal SA (In Administration) | 11. Nortel Vietnam Limited |
| 12. Nortel Networks Slovensko, sro (In Administration) | 12. Nortel Networks (China) Ltd |
| 13. Nortel Networks Romania Srl (In Administration) | 13. Nortel Networks Telecommunications Equipment (Shanghai) Co., Ltd |
| 14. Nortel GmbH (In Administration) | 14. Nortel Technology Excellence Centre Private Limited |
| 15. Nortel Networks Oy (In Administration) | |
| 16. Nortel Networks AB (In Administration) | |
| 17. Nortel Networks International Finance & Holding BV (In Administration) | |
| 18. Nortel Networks France S.A.S. (In Administration) | |
| 19. Nortel Networks S.A. (In Administration and *liquidation judiciare*) | |

| CALA Entities | EMEA NFEs |
|---|---|
| 1. Nortel Networks de Argentina S.A. | 1. Nortel Networks AS |
| 2. Nortel Networks Chile S.A. | 2. Nortel Networks AG |
| 3. Nortel Networks del Ecuador S.A. | 3. Nortel Networks South Africa (Pty) Limited |
| 4. Nortel Networks de Guatemala Ltda. | 4. Nortel Networks (Northern Ireland) Limited |
| 5. Nortel Networks de Mexico, S.A. de C.V. | 5. Nortel Networks Optical Components Limited |
| 6. Nortel Networks Perú S.A.C. | |
| 7. Nortel Networks del Uruguay S.A. | |
| 8. Nortel de Mexico, S. de R.L de C.V. | |
| 9. Nortel Trinidad and Tobago Limited | |

DOCSTOR: 2384685\1