**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------- X
                               :

*In re*                             :       Chapter 11
                               :

Nortel Networks Inc., *et al.*,[1]        :       Case No. 09-10138 (KG)
                               :

                Debtors.     :       Jointly Administered
                               :

                               :       **Hearing date:  July 11, 2012 10:00 AM (ET)**
                               :       **Objections due: July 3, 2012 4:00 PM (ET)**
------------------------------------------------------- X

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING
SETTLEMENT PROCEDURES TO RESOLVE CLAIMS OF BENEFICIARIES
OF THE NORTEL NETWORKS U.S. DEFERRED COMPENSATION PLAN**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of

an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and

363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving settlement

procedures by which the Debtors are authorized to resolve claims of beneficiaries

("Beneficiaries") related to the Nortel Networks U.S. Deferred Compensation Plan (as defined

herein).  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 363(b) and

502 of the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration

(the "English Proceedings") under the control of individuals from Ernst & Young LLP

(collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the

future may commence additional creditor protection, insolvency and dissolution proceedings

around the world.

      6.     Since the Petition Date, Nortel has sold its business units and other assets to

various purchasers.  For further information regarding these chapter 11 cases, reference may be

made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## Relief Requested

      7.     As the Court is aware, in December 2010, the Debtors filed a motion seeking the

turnover of certain assets held in a rabbi trust that, prior to the Debtors' bankruptcy, were

associated with the Debtors' Deferred Compensation Plan.  An ad hoc group of certain current

and former employees filed an objection to the settlement motion.  Over the last 16 months the

ad hoc group has been engaged in discovery and related litigation with the Debtors over the relief

sought by the Debtors and more recently, over additional related claims the ad hoc group

purports to assert on behalf of all deferred compensation claimants.  While many other

employees holding deferred compensation claims did not object to the initial relief sought by the

Debtors, which would leave such individuals with an unsecured claim against the Debtors, the

---

[4] The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel
Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks
Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel
Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks,
s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o.
and Nortel Networks International Finance & Holding B.V.

pending litigation has delayed the allowance of their claims as well.  In light of the substantial

passage of time, in order to allow individuals who either did not object or do not wish to pursue

further litigation the opportunity to monetize their deferred compensation claims, by this Motion

the Debtors seek an order, pursuant to sections 105(a), 363(b) and 502 of the Bankruptcy Code

and Bankruptcy Rule 9019 approving certain proposed procedures, as described more fully

below ("Settlement Procedures"), pursuant to which the Debtors are authorized to resolve,

compromise and settle claims of the Beneficiaries that are related to the Nortel Networks U.S.

Deferred Compensation Plan on a voluntary and individual basis, in accordance with the terms

set forth below.[5]

### Facts Relevant to this Motion

8.        NNI and certain of its U.S. affiliates established the Nortel Networks U.S.

Deferred Compensation Plan (the "Plan") on January 1, 2000, which merged and amended

certain prior existing plans.  The Plan was offered to a select group of highly compensated

employees and provided them with tax benefits by allowing participants to defer the recognition

of taxable income with respect to any compensation placed in the Plan.

9.        The Plan, which was sent to eligible employees each year in an enrollment

package, states that it is "intended to be an unfunded, deferred compensation plan, which is not

qualified under Section 401(a) of the Internal Revenue Code.  Plan participants shall have the

status of unsecured creditors of the Company with respect to the payment of Plan benefits."

Plan participants also acknowledged their unsecured status in the enrollment form they

completed each year.

---

[5]        The relief sought in this Motion is not intended to limit the Debtors' authority to settle claims granted under
any prior orders entered by this Court.

10.     In connection with the Plan, NNI established with U.S. Bank National

Association ("U.S. Bank") a discretionary grantor "rabbi"[6] trust (the "Trust"), pursuant to the

Nortel Networks U.S. Deferred Compensation Plan Trust Agreement (the "Trust Agreement"), to

which NNI is the sole beneficiary.  As of the Petition Date, the balance in the Trust was

approximately $27,970,430.  The Trust Agreement states that the participants and their

beneficiaries "have no preferred claim on, or any beneficial ownership interest in, any assets of

the Trust" and do not have superior claims to those of other general unsecured creditors of the

Debtors.  The Trust Agreement also provides that "If [NNI] is Insolvent [i.e., unable to pay its

debts as they come due or subject to a pending proceeding as a debtor under the Bankruptcy

Code], all assets in the Trust shall be subject to claims of [NNI's] general creditors under federal

and state law. . . ."  While NNI set aside funds by depositing them in the Trust from time to time,

the Beneficiaries have no direct claim, whether by contract or otherwise, to those funds.

11.     After NNI filed for bankruptcy on January 14, 2009, the Petition Date, NNI

notified the Beneficiaries they would not be able to make any further deferrals of their

compensation.  While nominal account statements were still provided to the Beneficiaries prior

to December 31, 2010, the statements made clear they were provided for informational purposes

only.  The statements sent to the Beneficiaries after the Petition Date state that "[y]ou do not

actually own any share of the investment crediting option(s) you selected or the account

balance(s) represented herein," and "[t]he amount of your unsecured claim in the bankruptcy

process may vary from the information contained in this report, and the Company reserves the

right to contest any such unsecured claim."  On December 22, 2010, the Debtors filed the Motion

---

[6]     A rabbi trust is an irrevocable trust in which a trustee holds funds away from the employer's control, but
still within the reach of and subject to the claims of the employer's general creditors in the event of insolvency or
bankruptcy.

for an Order Pursuant to 11 U.S.C. §§ 105, 541, 542 and 543 and Bankruptcy Rule 9019 (I)

Approving the Stipulation By and Between NNI and U.S. Bank National Association, (II)

Directing U.S. Bank National Association to Turn over Property to NNI, and (III) Granting

Related Relief to the Nortel Networks U.S. Deferred Compensation Plan [D.I. 4638] (the

"Turnover Motion") to approve a stipulation between NNI and U.S. Bank that provided that the

Trust Assets would be turned over to NNI as assets of NNI's estate.  Around the same time, on

December 31, 2010, the Plan was formally terminated.

12.     On February 8, 2011, Robert Horne, James Young, and the Ad Hoc Group of

Beneficiaries of the Nortel Networks U.S. Deferred Compensation Plan (the "Ad Hoc Group")

filed an objection to the Turnover Motion [D.I. 4897] one day before the Turnover Motion was

to be heard by this Court, and as a result, the hearing on the Turnover Motion was adjourned and

the Debtors agreed to provide written and document discovery.  The Debtors since have provided

extensive discovery to the Ad Hoc Group at considerable expense to the Debtors' estates.

13.     On August 23, 2011, counsel for the Ad Hoc Group advised the Court that they

intended to file an adversary proceeding in connection with the Plan and Trust.  Accordingly, for

all practical purposes, the resolution of the Turnover Motion was put on hold pending the filing

of such a proceeding.  The Ad Hoc Group did not file a complaint (the "Complaint")

commencing an adversary proceeding against the Debtors and other defendants[7] (the "Adversary

Proceeding") [D.I. 7022] until four months later, on December 23, 2011.  Among the relief

sought in the Complaint, the Complaint includes a request for turnover of all of the funds in the

Trust to the Beneficiaries of the Deferred Compensation Plan.  After discussions between the Ad

---

[7]     In addition to the Debtors, the Complaint named U.S. Bank and certain officers and directors of NNC and NNL as defendants (the "Individual Defendants").  The Ad Hoc Group has since dismissed the Adversary Proceeding as to U.S. Bank without prejudice.

Hoc Group and the Debtors, counsel for the Debtors agreed to accept service of the Complaint on behalf of the Debtors on January 31, 2012.

14.    Over the 16 months, while the Turnover Motion (and later, the Complaint) was pending, the Debtors engaged in two settlement attempts with the Ad Hoc Group.  Specifically, the Debtors engaged in a mediation session with the Ad Hoc Group on August 18, 2011, and in a settlement session with the Ad Hoc Group on May 15, 2012.  Neither of these settlement sessions was ultimately successful in reaching a settlement, and the Debtors do not believe there is any certainty they would be able to reach settlement with the Ad Hoc Group in the near future.

15.    The Debtors are confident that they will ultimately prevail on the issues presented by the Turnover Motion and the Adversary Proceeding, including, whether the Beneficiaries merely hold unsecured claims, and the proper valuation of such claims which is as of the Petition Date.  Nevertheless, the Debtors recognize the inherent risks in any litigation, as well as the substantial costs and time delays associated with continuing the ongoing litigation.  In the meantime, individual Beneficiaries have approached the Debtors, seeking to resolve their claims separate and apart from the Adversary Proceeding for the purpose of monetizing their claims by selling them to claims traders.  Transferees of certain Beneficiaries' claims similarly have expressed an interest in having certain claims finally allowed.  Given the passage of time during which this litigation has been pending and the uncertainty whether the Debtors and the Ad Hoc Group will be able to reach settlement in the near future, permitting the Debtors to enter into individual settlements with Beneficiaries would benefit both the Debtors' estates and those Beneficiaries by narrowing the ongoing litigation and allowing interested Beneficiaries to monetize their claims on a strictly voluntary basis.  Therefore, by this motion the Debtors seek to

approve Settlement Procedures by which the Debtors can settle any Beneficiary's claims that are

related to the Plan or the Trust.

16.     Specifically, the Debtors propose to implement the following Settlement

Procedures by which the Debtors may consensually resolve claims held by the Beneficiaries or

their transferees without need for further notice or Court order:

a.  The Debtors will grant each settling Beneficiary, or its transferee, (each, a "Settling Beneficiary") an allowed unsecured claim against the Debtors in the amount of the Settling Beneficiary's nominal account balance in the Trust as of the Petition Date (the "Allowed Claim") in full settlement of all of the Settling Beneficiary's Deferred Compensation Claims (as defined below).

b.  The Allowed Claim shall be granted in full settlement and satisfaction of any and all claims held by the Settling Beneficiary arising from or relating to the Plan, the Trust, and the Trust assets whether or not previously asserted, including without limitation claims related to participation in the Plan, the receipt of payments related to the Plan, the management and administration of the Plan, Trust and Trust assets, and claims arising from or relating to ownership or constructive ownership of any Trust assets (collectively, the "Deferred Compensation Claims").

c.  In exchange for being granted the Allowed Claim, the Settling Beneficiary will release and forever discharge the Debtors, the Canadian Debtors, the Individual Defendants, U.S. Bank, any administrator of the Plan, the compensation committee that functioned as the plan administrator (the "Compensation Committee") and any person who has served on the Compensation Committee at any time (collectively, the "Released Parties"), their respective past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, administrators, liquidators, directors, officers, employees, managers, agents, attorneys, solicitors and advisors, and each of their predecessors, successors and assigns, from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, whether sounding in law or equity, and in contract, tort or otherwise (collectively, "Released Claims"), that the Settling Beneficiary now has, had, may have had, or hereafter may have against any of the Released Parties concerning or relating to the Deferred Compensation Claims.  The Settling Beneficiary covenants forever not to sue or bring any Released Claims against the Released Parties concerning or relating to the Deferred Compensation Claims.

d.  Each Settling Beneficiary or its transferee shall represent that they are the sole owner of the Deferred Compensation Claims sought to be settled and released.

     e.    The Debtors reserve the right to withhold all applicable federal, state and local taxes from distributions (if any) that will be made with respect to the Deferred Compensation Claims.

17.     The Debtors believe that the implementation of the Settlement Procedures will benefit the Debtors, the Beneficiaries and the Debtors' estates generally.  Allowing the Debtors the flexibility to settle these Deferred Compensation Claims where Beneficiaries are interested in voluntarily agreeing to such settlement will save estate resources and give the Beneficiaries the opportunity to resolve their Deferred Compensation Claims expeditiously.  Those Beneficiaries who choose to accept the Debtors' offer and resolve their Deferred Compensation Claims will have the ability to monetize the resulting Allowed Claims in the claims trading market, while those Beneficiaries who choose not to accept the Debtors' settlement offer under these Settlement Procedures will not be prejudiced because their right to have their Deferred Compensation Claims resolved by the Court through the ongoing litigation of the Turnover Motion and Adversary Proceeding will be preserved to the extent it otherwise currently exists.

**<ins>Basis for Relief</ins>**

18.     The Debtors seek approval of the Settlement Procedures under sections 105, 363 and 502 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

19.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease the property of the estate outside of the ordinary course of business after notice and a hearing.  11 U.S.C. § 363.  Section 363 applies when an agreement involves the disposition of the estate's assets in such a way that it ventures beyond an ordinary course transaction.  <ins>Myers v. Martin (In re Martin)</ins>, 91 F.3d 389, 394-95 (3d Cir. 1996).

20.     The use or transfer of estate property under this provision must be supported by a sound business purpose.  Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459 JJF, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Del. & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991); Travelers Cas. & Sur. Co. v. Future Claimants Representative, Civil Action No. 07-2785 (FLW), 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008).  A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike."  In re Montgomery Ward Holding Corp., 242 B.R. at 153-54 & n.1 (quoting In re Lionel Corp., 722 F.2d at 1071).  In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided and that it is receiving fair and reasonable value in exchange.  See In re Indus., Inc., 2002 WL 32332749, at *2; In re Del. & Hudson Ry. Co., 124 B.R. at 176.

21.     Bankruptcy Rule 9019 provides, in pertinent part, that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  In re Martin, 91 F.3d at 393 (alteration in original) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement

of claims as to which there are substantial and reasonable doubts.'"  In re Penn Cent. Transp.

Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (alteration in original) (quoting Protective Comm. for

Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  And

courts in this District have recognized that the approval of a proposed compromise and

settlement is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram

Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

   22.  Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "'the compromise is fair, reasonable, and in the interest of the estate.'"  In re

Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211

B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the

need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer

Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best

possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.

Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below

the lowest point in the range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of

Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at

330.

   23.  The Third Circuit has set out four criteria for a bankruptcy court to consider when

evaluating a settlement proposal:  "(1) the probability of success in litigation; (2) the likely

difficulties in collection; (3) the complexity of the litigation involved, and the expense,

inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."

In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803

(E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159,

165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

      24.     Pursuant to Bankruptcy Rule 9019(b), the Court may authorize the Debtors to

settle certain classes of controversies without requiring separate notice and hearing with respect

to each separate controversy. Specifically, Rule 9019(b) provides that "the court may fix a class

or classes of controversies and authorize the trustee [or debtor in possession] to compromise or

settle controversies within such class or classes without further hearing or notice." Fed. R. Bank.

P. 9019(b). As stated in the 1983 Advisory Committee Notes to Rule 9019, the rule "permits the

court to deal efficiently with a case in which there may be a large number of settlements."

      25.     Claims settlement procedures similar to those requested in this Motion have been

established in this case and other chapter 11 cases in this District. See, e.g., In re Nortel

Networks Inc., Case No. 09-10138 (KG) (Bankr. D. Del. May 24, 2012); In re Nortel Networks

Inc., Case No. 09-10138 (KG) (Bankr. D. Del. Sept. 16, 2010); In re Nortel Networks Inc., Case

No. 09-10138 (KG) (Bankr. D. Del. Apr. 7, 2009); In re Aleris Int'l, Inc., Case No. 09-10478

(BLS) (Bankr. D. Del. June 23, 2009); In re Mortg. Lenders NetworkUSA, Inc., Case No. 07-

10146 (PJW) (Bankr. D. Del. Jan. 22, 2009).

      26.     The Debtors respectfully submit that the Settlement Procedures proposed in this

Motion are reasonable and in the best interests of the Debtors, their creditors and their estates.

The Debtors believe that the implementation of the Settlement Procedures is an appropriate

exercise of the authority granted to the Court under Bankruptcy Rule 9019(b).  Moreover, as

required by section 363, the Settlement Procedures are proposed as a good faith means by which

to resolve Deferred Compensation Claims on a voluntary basis.

27.     While the Debtors are prepared to litigate the issues presented in the Turnover

Motion and the Adversary Proceeding with the Ad Hoc Group and believe that they will prevail

in such litigation, litigation of these issues could be lengthy and carries with it inherent

uncertainties.  In the meantime, the Settlement Procedures would afford Beneficiaries the

opportunity to fix and monetize their Deferred Compensation Claims.  The settlement offer

proposed under the Settlement Procedures would give Settling Beneficiaries the same claim

arising from or relating to the Plan, Trust and Trust assets to which the Debtors believe the

Beneficiaries are entitled – unsecured claims for the Beneficiaries' nominal account balances as

of the Petition Date – without having to wait for the litigation to end.  Therefore, the Settlement

Procedures fairly take into account the Debtors' likelihood of success on the merits of the

Turnover Motion and the Adversary Proceeding and the benefit of resolving Deferred

Compensation Claims and permitting Settling Beneficiaries to monetize their Deferred

Compensation Claims quickly.  The Debtors have posted certain of the core pleadings from the

Turnover Motion and Adversary Proceeding on Epiq's Nortel website, which can be accessed at

http://dm.epiq11.com/nortel.  Beneficiaries considering whether to settle their Deferred

Compensation Claims are encouraged to review the various pleadings contained on this page and

the other pleadings and motions filed in the Debtors' bankruptcy cases which are also available

on Epiq's website, and consult with their own counsel if they have retained one, on the merits of

the Deferred Compensation Claims being settled to determine whether they would like to

voluntarily settle their claims.

28.     Finally, the interests of the creditors militate in favor of approval of the

Settlement Procedures.  The Debtors believe that the interests of their creditors are served by the

prompt and efficient resolution of Deferred Compensation Claims, which will be aided by the

proposed Settlement Procedures to the extent claimants wish to accept such claims.  In light of the foregoing, the Debtors respectfully seek approval of the Settlement Procedures.

## Notice

29.     Notice of the Motion has been given via first class mail, facsimile, electronic transmission, hand delivery or overnight mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) the Beneficiaries; (v) counsel to the Ad Hoc Group; (vi) counsel to the Canadian Debtors; and (vii) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

30.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  June 20, 2012
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
David H. Herrington (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

15