## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                :

*In re*                      :

Nortel Networks Inc., *et al.*,[1]     :

              Debtors.   :

------------------------------------------------------- X
                :

Nortel Networks Inc.,       :

             NNI,    :

v.                       :

AudioCodes, Inc.,         :

 and                   :

AudioCodes, Ltd.,         :

           Defendants. :

-------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

(Jointly Administered)

Adv. Proc. No. 11-52298 (KG)

**Hearing date:  July 11, 2012 at 10:00 a.m. (ET)**
**Objections due:  July 5, 2012 at 4:00 p.m. (ET)**

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY
## RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION
## OF SETTLEMENT OF AVOIDANCE CLAIMS BY AND BETWEEN
## NORTEL NETWORKS INC. AND AUDIOCODES, INC. AND AUDIOCODES, LTD.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 502,

---

[1]     In addition to Nortel Networks Inc. the Debtors in the Chapter 11 cases are:  Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc.  Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

547, and 550 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to

enter into and approving a stipulation (the "Stipulation") with AudioCodes, Inc. and

AudioCodes, Ltd. ("Defendants", and together with NNI, the "Parties"), in the form attached

hereto as **Exhibit B**, resolving the adversary proceeding entitled Nortel Networks Inc. v.

AudioCodes, Inc. and AudioCodes, Ltd., Adv. Proc. No. 11-52298 (KG) (the "Adversary

Proceeding") and granting such other and further relief as the Court (the "Court" or the

"Bankruptcy Court") deems just and proper.  In support of this Motion, the Debtors respectfully

represent as follows:

### Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 502, 547,

and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.

### Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to

operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code
on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases
for procedural purposes [D.I. 1098].

respect of the Debtors [Main D.I.s 141, 142],[3] and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be

---

[3]      Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __." Citations herein to the docket in this adversary proceeding (Adv. Pro. No. 11-52298) are in the form "Adv. D.I. __."

[4]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

made to the Monthly Operating Reports filed by the Debtors, available at

http://dm.epiq11.com/nortel.

## Relief Requested

7.       By this Motion, the Debtors seek an order, pursuant to sections 105(a), 502, 547,

and 550 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Stipulation, (ii)

authorizing but not directing the Debtors to take all actions reasonably appropriate to perform

their obligations under the Stipulation, and (iii) granting them such other and further relief as the

Bankruptcy Court deems just and proper.

## Facts Relevant to this Motion

8.       NNI and Defendants are parties to certain contracts and agreements (collectively,

the "Agreements") pursuant to which prepetition and post-petition amounts are owed to and from

each Party.  Defendants supplied media gateways and media servers to NNI under a global

supply agreement (the "Supply Agreement") and had a separate agreement with NNI to use

NNI's lab space to test new equipment (the "Testing Agreement"), which Defendants then sold

to NNI under the Supply Agreement.

9.       NNI has alleged that Defendants have both prepetition and post-petition

obligations due to NNI in the aggregate amount of $649,574.00 for testing services provided to

Defendants under the Testing Agreement and for discounts on NNI's supply orders under the

Supply Agreement that were not properly applied (the "Discounts" and together with the Testing

Services, the "AudioCodes Obligations").

10.      On or about September 30, 2009, Defendant AudioCodes, Ltd. filed general

unsecured proof of claim number 5589 against NNI in the amount of $606,770.76 with respect to

its delivery of goods to NNI ("Claim No. 5589").

4

11.     Defendants have alleged that NNI has post-petition obligations due to Defendants in the amount of $125,000.00 for development of SRTP/v150 NRE and for an agreed reduction in the Discounts (collectively with the allowable amount of Claim 5589, the "NNI Obligations").

12.     NNI's books and records indicate that within ninety (90) days prior to the Petition Date, NNI made one or more transfers of an interest in its property to or for the benefit of Defendants in the aggregate amount of $3,153,127.90  (the "Subject Transfers").

13.     On May 27, 2011, NNI filed its Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code [Adv. D.I. 1] (the "Complaint") against Defendants in this Court, pursuant to which NNI sought to avoid and recover the Subject Transfers (the "Avoidance Claim").

14.     On September 16, 2010, the Court entered an Order Authorizing and Approving Settlement Procedures to Settle Certain Prepetition Claims (the "Prepetition Claims Settlement Procedures Order") which requires the Debtors to obtain Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 before they settle certain disputed Proofs of Claim that were originally filed in an amount equal to or greater than $1,000,000 [Main D.I. 3953].

15.     On October 27, 2010, the  Court entered an Order Authorizing And Approving Settlement Procedures To Settle Certain Avoidance Claims (the "Avoidance Claims Settlement Procedures Order"), which requires the Debtors to obtain Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 before they settle certain avoidance claims where the asserted claim amount is greater than $1,000,000 [Main D.I. 4211].

16.     Since the Complaint and Answer were filed, the Parties have engaged in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by

further litigation of the Avoidance Claim, the Parties have agreed to settle the Adversary

Proceeding on the terms set forth in the Stipulation, attached hereto as **Exhibit B**.

17.     Pursuant to the Stipulation[6] and subject to the Bankruptcy Court's approval, NNI

has agreed to full and final settlement and satisfaction of the Avoidance Claim in return for (i) a

payment by Defendants to NNI in the amount of $20,000.00 (the "Settlement Amount"), (ii) the

recoupment of the AudioCodes Obligations for $649,574.00 against NNI's Obligations for

$707,024.58 (the "Offset"), which obligations arose out of an integrated transaction, after which

Offset Defendants would be left with a general unsecured claim against NNI in the amount of

$57,450.58 (the "AudioCodes Net Claim"), and (iii) Defendants' withdrawal of the AudioCodes

Net Claim and Claim No. 5589.

18.     In consideration of the mutual promises and covenants set forth in the Stipulation

and other good and valuable consideration, Defendants have agreed, subject to the Bankruptcy

Court's approval, to, *inter alia*, release and forever discharge the Debtors, their past and present

parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors,

officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns

(collectively, the "Debtor Releasees"), from any and all claims, rights, defenses, demands,

liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or

unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or

present, fixed or contingent, liquidated or unliquidated, that Defendants now have, had, may

have had, or hereafter may have against any of the Debtor Releasees from the beginning of the

world to the date of this Release, including, without limitation, those regarding any matter

relating, directly or indirectly to the Avoidance Claim, the Adversary Proceeding, and any

---

[6]     In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

transaction described or referred to in the Complaint in the Adversary Proceeding, and the NNI

Obligations, including Claim 5589 and the AudioCodes Net Claim, and the AudioCodes

Obligations (collectively, the "Released Obligations").  For the avoidance of doubt, Defendants

release any and all claims arising under section 502(h) of the Bankruptcy Code.   For the further

avoidance of doubt, Defendants do not release any claim that they hold or have asserted against

the Canadian Debtors or EMEA Debtors in the Canadian Proceedings or the English

Proceedings, respectively.

19.    In consideration of the mutual promises and covenants set forth in the Stipulation

and other good and valuable consideration, NNI has agreed, subject to the Bankruptcy Court's

approval, to, *inter alia*, release and forever discharge Defendants, their past and present parents,

subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers,

employees, agents, and attorneys, and each of their predecessors, successors and assigns

(collectively, the "Defendant Releasees"), from any and all claims, rights, defenses, demands,

liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or

unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or

present, fixed or contingent, liquidated or unliquidated, that the Debtors now have, had, may

have had, or hereafter may have against any of the Defendant Releasees from the beginning of

the world to the date of this Release, including, without limitation, those regarding any matter

relating, directly or indirectly to the Released Obligations.  For the avoidance of doubt, the

Debtors do not release any objections, rights or defenses relating to any claim held or asserted by

Defendants in the Canadian Proceedings and/or the English Proceedings.

**Basis for Relief**

20.     The Debtors seek authorization for NNI to enter into the Stipulation under

sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section

105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is

necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice

and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

21.     Citing this authority, the Third Circuit has emphasized that "[c]ompromises are

favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)

(quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health

Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally

favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'[i]n administering

reorganization proceedings in an economical and practical manner it will often be wise to

arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  In re

Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for

Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  Courts

in this District have also recognized that the approval of a proposed compromise and settlement

is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram Healthcare

Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

22.     Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re

Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211

B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the

need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

23.    The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

24.    The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation. While NNI is prepared to litigate the Avoidance Claim, Defendants have interposed certain defenses, including an ordinary course of business defense pursuant to 11 U.S.C. § 547(c)(2) based on the timing of the relevant payments and a subsequent new value defense pursuant to 11 U.S.C. § 547(c)(4). Based on the exchange of information and accompanying discussions with the Defendants, the Debtors have determined that potential value that could be obtained through a litigation of the preference action on the merits likely would be outweighed by the time, costs and risks associated with litigating the preference action. NNI

recognizes that litigation of the Avoidance Claim carries with it inherent uncertainties and there can be no assurance that litigation of the Avoidance Claim would achieve a better result than the one set forth in the Stipulation. Pursuant to the settlement reflected in the Stipulation, and upon the Settlement Date (as defined in the Stipulation), Defendants will pay NNI $20,000, withdraw Claim No. 5589 and the AudioCodes Net Claim, and waive any claim arising out of Section 502(h) of the Bankruptcy Code. This resolution fairly balances NNI's likelihood of success on the merits of the Avoidance Claim against its interest in avoiding the uncertainty of litigation.

25.    In addition, further litigation of the Avoidance Claim would result in the estate's expenditure of considerable additional legal fees. These would include fees associated with formal discovery, retention of an expert, briefing of dispositive motions and potentially conducting a trial of the Avoidance Claim. In the absence of a settlement, the estate would be burdened with the time and costs of ongoing litigation, which would be disruptive of the estate's efforts to resolve the matters that are essential to the ultimate resolution of these cases.

26.    Finally, the interests of the creditors weigh in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Avoidance Claim and the avoidance of litigation risk and substantial legal expenses that would be incurred if the Avoidance Claim were to be further litigated.

27.    In light of the foregoing, the Debtors respectfully seek authorization for NNI to enter into the Stipulation and approval of the Stipulation.

### Notice

28.    Notice of the Motion has been given via first class mail to (i) Defendants; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the

general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

29.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion, approve the Stipulation, and authorize the Debtors to enter into the Stipulation; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: June 20, 2012
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
Scott McCoy (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____*/s/ Chad A. Fights*_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Chad A. Fights (No. 5006)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

11