# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x

In re:

Nortel Networks, Inc., *et al.,*[1]

                         Debtors.

-------------------------------------------------- X

:
:
:
:
:
:
:
:
:
:
:
:
:

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: July 11, 2012 at 10:00 a.m. (ET)**

**Objections due: June 27, 2012 at 4:00 p.m. (ET)**

## RESPONSE OF THE TRUSTEE OF NORTEL NETWORKS UK PENSION PLAN AND THE BOARD OF THE PENSION PROTECTION FUND TO DEBTORS' OBJECTION TO PROOFS OF CLAIM AND MOTION FOR AN ORDER REQUIRING A MORE DEFINITE STATEMENT OF CLAIM [D.I. 7818]

The Trustee (the "Trustee") of Nortel Networks UK Pension Plan (the "Plan") and

the Board of the Pension Protection Fund (the "PPF," and, together with the Trustee, the "U.K.

Pension Claimants") hereby respectfully respond to the Debtors' *Objection to the Proofs of*

*Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel*

*Networks UK Pension Plan) and the Board of the Pension Protection Fund, and Motion For an*

*Order Requiring a More Definite Statement of Claim* (the "Motion") [D.I. 7818].  In response,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax
identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital
Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc.
(5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc.
(5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems
(U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom
International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks
(CALA) Inc. (4226).

the U.K. Pension Claimants, by and through their undersigned counsel, respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors' Motion seeks to compel the U.K. Pension Claimants to file a more definite statement of their claims previously filed against the Debtors in September 2009 and January 2010 pursuant to this Court's bar date orders (the "Claims" or "Proofs of Claim").

2.      The U.K. Pension Claimants do not oppose amending their Proofs of Claim now that they have exhausted their appeals from this Court's order enforcing the automatic stay (the "Automatic Stay Order") with respect to the U.K. Pension Claimants' participation in the regulatory proceedings commenced by the U.K. Pensions Regulator ("TPR") concerning the Debtors (the "U.K. Regulatory Procedure"). They will do so in order to plead and prove their claims in this Court.  However, they do object in two respects to the relief sought in the Motion.

3.      First, the Motion is premature because the key parties to the Nortel entities' bankruptcy process, including both the U.K. Pension Claimants and the Debtors, are currently engaged in the early stages of mediation before Chief Justice Warren Winkler, the court-appointed mediator.  The U.K. Pension Claimants remain hopeful that their Claims can be resolved through that mediation process, and, thus, prematurely accelerating potentially unnecessary litigation in this Court, as the Motion seeks to do, is unwarranted.

4.      Second, the Debtors' Motion is procedurally improper because it seeks an order from this Court compelling the U.K. Pension Claimants to comply with a cobbled hybrid of incompatible provisions under the Bankruptcy Rules.  On the one hand, the Debtors seek to have the Court apply Bankruptcy Rule 7012 to the Proofs of Claim and require that the U.K. Pension Claimants file a more definite statement of their claims.  On the other hand, the Debtors

seek to have the Court apply Bankruptcy Rule 3001 to the Proofs of Claim and require that the U.K. Pension Claimants provide "all supporting documentation" for their claims when they file a more definite statement. As demonstrated below, the Debtors cannot have it both ways. The legal sufficiency of the Proofs of Claim must be measured by either Rule 3001(c) or Rule 7012, but not both.

5.    Moreover, whether the Court applies Rule 7012 to the Proofs of Claim or, instead, Rule 3001, the Debtors' objection to the Proofs of Claim has created a contested matter and, unless the Court orders otherwise, Part VII of the Bankruptcy Rules applies, entitling the U.K. Pension Claimants to, among other things, take discovery of the Debtors. No authority exists under Rule 3001(c) or Rule 7012, and, indeed, the Debtors cite none, authorizing the one-sided discovery contemplated by the Motion.

6.    As noted, the U.K Pension Claimants do not oppose *either* filing amended Proofs of Claim under Rule 3001(c) *or* filing a more definite statement under Rule 7012. However, they respectfully request that they be permitted until October 31, 2012 to do so. Such a short extension is reasonable given the factual complexity of the Claims, that the U.K. Pension Claimants were prohibited by the Automatic Stay Order from participating in TPR's case against any U.S. Debtor in the U.K. Regulatory Procedure, and the fact that many of the U.K. Pension Claimants' principal decision makers and advisors in the U.K. will be away in July and August due to the London Olympics and scheduled vacations.

7.    Further, no prejudice will result to the Debtors from such a short extension. The Debtors waited almost three years to object to the Proofs of Claim, and they offer no explanation why the U.K. Pension Claimants should suddenly be given only until July 31 to file a more definite statement. That draconian relief is entirely unwarranted and unnecessary.

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 of the Bankruptcy Code. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. § 1408 and 1409.

## BACKGROUND

### A.    The Debtors

9.      On January 14, 2009 (the "Petition Date"), the Debtors (other than Nortel Networks (CALA) Inc. ("NN CALA")), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[2]  On January 15, 2009, this Court entered an order directing that the above-captioned chapter 11 cases be jointly administered and consolidated for procedural purposes. [D.I. 36]

10.      The filing of the Debtors' chapter 11 petitions was part of a coordinated global restructuring process that was undertaken by numerous entities across the Nortel group of companies.  On January 14, 2009, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC") and certain of its Canadian affiliates (collectively, the "Canadian Debtors") filed applications with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian

---

[2]    NN CALA filed its chapter 11 petition on July 14, 2009.  On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098], and applying to NN CALA certain orders previously entered in the Debtors' chapter 11 cases [D.I. 1099].

Court. The Canadian Court issued an order on January 14, 2009 recognizing these chapter 11 proceedings as a "foreign proceeding" under section 18.6 of the CCAA.[3]

11.    Pursuant to the Court's orders dated August 4, 2009 and December 3, 2009 (collectively, the "Bar Date Orders"), September 30, 2009 was set as the deadline for the filing of proofs of claims against the Debtors (other than NN CALA), and January 25, 2010 for filing proofs of claims against NN CALA. In compliance with the Bar Date Orders, the U.K. Pension Claimants filed proofs of claim against each of the Debtors (the "Proofs of Claim"). The U.K. Pension Claimants also filed proofs of claim in the Canadian Proceedings.

12.    The Proofs of Claim asserted that each Debtor "has a contingent liability and indebtedness to the U.K. Pension Claimants in accordance with their respective interests arising pursuant to the Pensions Act 2004 and the Pensions Act 1995 (Acts of UK Parliament) and all applicable UK regulations." (Proofs of Claim Schedule A.) The Proofs of Claim then provided a detailed explanation of who the U.K. Pension Claimants are, how the Debtors' contingent liability arose under UK law, and how the liability of the various Nortel entities worldwide would be established. (*Id.*)

13.    The Proofs of Claim explicitly noted that the U.K. Regulatory Procedure was "underway" and that the Pensions Regulator was still considering the relevant evidence necessary to "reach[] a determination of the Debtor's and the other members of the Nortel Groups' Financial Support Direction and other obligations." However, the timing of filing of the

---

[3]    On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. *See In re Nortel Networks Corp., et al.*, Case No. 09-10164 (Bankr. D. Del filed Jan. 14, 2009) [D.I. No. 40].

Proofs of Claim was dictated by this Court's Bar Date Orders, which established a cut-off date

for creditors to file proofs of claim.[4]

14.    Since the filing of the Proofs of Claim, the U.K. Regulatory Procedure

has progressed through a number of steps: the Determinations Panel held a hearing, rendered a

decision finding that the issuance of FSDs was warranted under U.K. law, and ultimately FSDs

were issued against a number of Nortel entities, including Debtors NNI and NN CALA.  The

U.K. Pension Claimants do not oppose amending their Proofs of Claim to, among other things,

take into account these developments.[5]

**B.    The Debtors' Automatic Stay Motion**

15.    On February 18, 2010, the Debtors filed their Motion For Entry of an

Order Enforcing the Automatic Stay Against Certain Claimants With Respect to the UK Pension

Proceedings (the "Automatic Stay Motion"), seeking an order enjoining the U.K. Pension

Claimants from participating in the U.K. Regulatory Procedure, on the grounds that the

proceedings and their participation therein violated the automatic stay contained in section

362(a) of the Bankruptcy Code. [D.I. 2441]  The U.K. Pension Claimants objected to the relief

sought by the Debtors. [D.I. 2503]

---

[4]    Although the Debtors characterize the Proofs of Claim as "barebones documents," (Mot. ¶ 46), the Proofs of Claim and their attachments comprised nearly 2000 pages, including relevant correspondence between the Trustee, the PPF, and the TPR; the Nortel Network UK Pension Trust's deed and rules; and the UK pension statutes under which the Debtors' contingent liability arose.  (*See* Appendix A and Appendix B to Proofs of Claim.)

[5]    The Debtors incorrectly suggest that the Automatic Stay Order prohibits the U.K. Pension Claimants from relying on developments in the U.K. Regulatory Procedure as evidence to prove their claim. (Mot. ¶ 2.)  The Automatic Stay Order plainly did not address that issue. In fact, the Third Circuit's opinion in this case acknowledged that "there is nothing now before the Bankruptcy Court that requires it to determine what effect, if any, it should accord to the estimate adopted by TPR" and "[w]e are not even at the stage at which the Bankruptcy Court must decide the admissibility of the findings emanating from the U.K. proceedings." *In re Nortel Networks, Inc.*, 669 F.3d 128, 143 (3d Cir. 2011).

16.    Following a hearing on February 26, 2010, the Bankruptcy Court granted the Debtors' Automatic Stay Motion and issued the Automatic Stay Order prohibiting the U.K. Pension Claimants from participating in the U.K. Regulatory Procedure as to any of the Debtors. [D.I. 2576] The Automatic Stay Order was affirmed by the District Court and the United States Court of Appeals for the Third Circuit. *In re Nortel Networks, Inc.*, 669 F.3d 128 (3d Cir. 2011); *In re Nortel Networks, Inc.*, No. 09-10138-KG, 2011 WL 1154225 (D. Del. March 29, 2011). On June 25, 2012 the United States Supreme Court denied the U.K. Pension Claimants' Petition for a Writ of Certiorari.

C.    **The Mediation Process**

17.    In June 2011, this Court, in coordination with Justice Morawetz of the Ontario Superior Court of Justice, ordered various parties to the Nortel entities' bankruptcy proceedings to participate in mediation, and appointed the Honourable Warren K. Winkler, Chief Justice of Ontario, as mediator. [D.I.5752, 5822]

18.    On August 9, 2011, at the request of this Court, Chief Justice Winkler postponed the mediation process pending this Court's determination of the Debtors' motions to dismiss the claims of Nortel Networks UK Limited, Nortel Networks Ireland Limited, and Nortel Networks S.A. and its French Liquidator. That decision was issued on March 20, 2012. [D.I. 7403] Accordingly, on March 26, 2012, Chief Justice Winkler announced that the mediation would begin on April 24, 2012, and instructed the parties to file mediation statements by April 16, 2012. The U.K. Pension Claimants filed their mediation statement and supporting exhibits on April 16, 2012.

19.    On April 24, 2012, various parties, including the Debtors and the U.K. Pension Claimants, participated in an initial mediation session with Chief Justice Winkler in Toronto, Canada. At that session, Chief Justice Winkler provided an overview of how the

mediation process would proceed and announced his intent to schedule further in-person meetings over the next several months with the various parties.

## ARGUMENT

### A.    The Debtors' Motion for a More Definite Statement of Claim is Premature.

20.    The principal parties to the Nortel bankruptcy proceedings, including both the Debtors and the U.K. Pension Claimants, have recently begun the court-ordered mediation process before Chief Justice Winkler.   Because the mediation is only in its earliest stages, the Motion is both unnecessary and premature.  The U.K. Pension Claimants, as good faith participants in the mediation, were encouraged by the proposed process and structure of the mediation. At this point, the parties' focus should be on advancing the mediation to a successful resolution.  The relief sought by the Motion is an unnecessary distraction from that process.

21.    Moreover, after having waited nearly a year for the mediation process to begin, it is surprising that the Debtors suddenly appear ready to abandon that course and, instead, seek to accelerate litigation over the Claims in this Court.  Indeed, the timing of the Debtors' Motion, and their request for "all supporting documentation" from the U.K. Pension Claimants, suggests that they seek to gain an undue advantage in the mediation through obtaining one-sided discovery and an inappropriate burden shift on the U.K. Pension Claimants, rather than to "promote the efficient resolution of [the] Claims by allowing the Debtors to fully understand the factual basis from the [the U.K. Pension] Claimants' assertions." (Mot. ¶ 31.)

### B.    There is No Basis for the Relief Sought by the Debtors.

22.    The Debtors request that the Court treat the Proofs of Claim as formal complaints, applying  Rule 7012 to test their legal sufficiency, and that the Court require that the U.K. Pension Claimants file a more definite statement of their claims.  (Mot. ¶¶ 32-33.) However, the Debtors also request that the Court continue to treat the Proofs of Claim as proofs

of claim under Bankruptcy Rule 3001 and require that the U.K. Pension Claimants attach "all supporting documentation" to their more definite statement of their claims. (Mot. ¶ 42.) The application of such a cobbled hodgepodge of Bankruptcy Rules to the U.K. Pension Claimants' Proofs of Claim lacks any foundation in law and should be rejected.

23.     Bankruptcy Rule 3001 governs the form and content of a proof of claim. Specifically, Rule 3001(a) provides that "[a] proof of claim is a written statement setting forth the creditor's claim" and that it "shall conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). Instruction 2 of the Official Form, titled "Basis for Claim," requires a claimant to state "the type of debt and how it was incurred." (Official Form 10 (Proof of Claim) (12/11)). Separately, Rule 3001(c) provides that, when a claim is based on a writing, the original or a duplicate shall be filed with the proof of claim. Pursuant to Rule 3001(f), a proof of claim "executed and filed in accordance with [Rule 3001] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

24.     However, where a court exercises its discretion to apply Rule 7012 to a proof of claim,[6] the sufficiency of that claim is judged not under Rule 3001, but rather Federal Rule of Civil Procedure 8, which provides that a claimant need only plead a "short and plain statement of the claim, showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[7] The pleading is intended to "give the defendant fair notice of what the plaintiff's claim is and the

---

[6]   As Bankruptcy Rule 7012 is not specifically enumerated in Bankruptcy Rule 9014(c), its application here is wholly discretionary. Fed. R. Bankr. P. 9014(c). As the Debtors' own authorities acknowledge, motions to apply Rule 7012 "are not favored." *In re Rimsat, Ltd.,* 223 B.R. 345, 347 (Bankr. N.D. Ind. 1998); *see also Friedman's Express, Inc. v. Reynolds Fasteners, Inc. (In re Friedman's Express, Inc.),* 184 B.R. 229, 230 (Bankr. E.D. Pa. 1995) (same).

[7]   Federal Rule of Civil Procedure 8 is incorporated in the Bankruptcy Code pursuant to Bankruptcy Rule 7008.

grounds upon which it rests." *Gwynne v. Credit Suisse First Boston (USA), Inc. (In re Quintas Corp.)*, 332 B.R. 110, 114 (Bankr. D. Del. 2005).[8]

25.     Significantly, and contrary to the Debtors' suggestion, neither Rule 7012 nor 3001 impose any obligation on a claimant to attach "all supporting documentation" in support of its proof of claim. (Mot. ¶ 42.)

26.     Indeed, courts in this Circuit have recognized that attempts to use motions for a more definite statement as a means of obtaining discovery, as the Motion seeks to do, "are highly disfavored since the overall scheme of the federal rules calls for relatively skeletal pleadings and places the burden on unearthing factual details on the discovery process." *Perma-Liner Indus., Inc. v. U.S. Sewer & Drain, Inc.*, 630 F. Supp. 2d 516, 526 (E.D. Pa. 2008) (quotations omitted); *see also* 10-7012 COLLIER ON BANKRUPTCY, ¶ 7012.08 (16th ed.) (Rule 7012 "should not be used as a substitute for the rules explicitly applicable to the discovery process in order to obtain the plaintiff's evidence.")[9]

---

[8]   Even if the U.K. Pension Claimants provide a more definite statement under Rule 7012(e), there is no requirement under that (or any other) rule for them to plead, as the Debtors erroneously contend, that "members of the global Nortel group" *other* than the Debtors "should be required to provide financial support for the NNUK Pension Plan." (Mot. ¶ 39.)

[9]   The Debtors' suggestion that compelling the U.K. Pension Claimants to provide all supporting documentation at this early stage "would not be unduly burdensome, because they have already done so in filing their amended claims in the Canadian Proceedings" is misconceived. (Mot. ¶ 43.) While the U.K. Pension Claimants' claims against the U.S. Debtors may share some similarities with their claims against the Canadian Debtors, those latter claims are based on, among other things, conduct of different Nortel entities occurring principally in Canada and encompass different legal theories, including claims specific to Canadian law as well as claims under guarantees issued by the Canadian entities to the Trustee. As such, the U.K. Pension Claimants could not meet their obligations under the Bankruptcy Code by simply "providing" those materials to the Debtors. (Mot. ¶ 43.). Moreover, the fact that the U.K. Pension Claimants filed amended claims in the Canadian Proceedings does not mean they "have had more than enough time to do the same in this Court." (Mot. ¶ 40.) The litigation regarding the Automatic Stay Order, which had significant impact on the content of any amended Proofs of Claim the U.K. Pension Claimants might file, remained unresolved until two days ago, on June 25, 2012.

27.     Likewise, there is no support for the Debtors' assertion that Rule 3001 entitles them to "all supporting documentation." Rule 3001(c) requires only that the original or a duplicate of a writing be attached to the proof of claim *when the claim is based on a writing*. The Proofs of Claim are based on U.K. statutory law, not on a writing within the meaning of Rule 3001(c). *See In re Catron*, 198 B.R. 905, 907 (Bankr. M.D. N.C. 1996) (Rule 3001(c) does not apply to an IRS claim for unpaid federal income taxes as the claim was not "based on a writing," but rather based on federal tax statutes). Moreover, even if the Proofs of Claim were based on a writing – which they are not – Rule 3001(c) would not entitle the Debtors to "all supporting documentation" for the Proofs of Claim. *In re Sacko*, 394 B.R. 90, 100 (Bankr. E.D. Pa. 2008) (Bankruptcy Rule 3001(c) "need not be read expansively to encompass all of the relevant documents that might be produced in ordinary civil litigation to support the claimant's entitlement . . . It appears that the claimant [must] attach the writings that give rise to the legal entitlement to the claim . . . , rather than the documents that constitute additional, supporting evidence.")

28.     Further, a failure to provide "all supporting documentation" would *not*, as the Debtors' Motion suggests, mandate that the Claims "be disallowed and expunged with prejudice." (Mot. ¶ 5.)   As noted above, the Proofs of Claim, and any amendments thereto, constitute *prima facie* evidence of the validity of the U.K. Pension Claimants' claims. The burden rests on the Debtors to rebut that *prima facie* validity with "evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).  Even assuming the Debtors were able to discharge that heavy burden, that would still not provide a basis for disallowance of the Claims. Instead, it would only mean that the Proofs of Claim had lost their *prima facie* validity,

and nothing more. *In re Alessi*, No. 11-25686 (MBK), 2012 WL 1072214, at *2 (Bankr. D. N.J.

Mar. 29, 2012). In those circumstances, "the burden of proof [would] shift[] back to the

claimant to prove its claims by a preponderance of the evidence." *In re Ahmadi*, 467 B.R. 782,

788 (Bankr. M.D. Pa. 2012).

29.    Thus, under no circumstances would the U.K. Pension Claimants have the

burden of proving the merits of their claims now by attaching "all supporting documentation" to

their amended Proofs of Claim. But that is precisely what the Debtors are asking this Court to

require the U.K. Pension Claimants to do. Tellingly, the Debtors cite no authority under either

Rule 3001 or 7012 remotely supporting the inappropriate relief they seek. Nor can the Debtors

base that relief on the Court's inherent equitable powers under Section 105(a) of the Bankruptcy

Code. (Mot. at 20 n.17.) As the Third Circuit has cautioned, "section 105(a) has a limited

scope . . . [i]t does not 'create substantive rights that would otherwise be unavailable under the

Bankruptcy Code.'" *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) (quoting

*United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992)); *In re Joubert*, 411 F.3d 452, 455

(3d Cir. 2005) (same); *see also Townsend v. M & T Mortg. Corp.*, No. 09-cv-1866, 2010 WL

2573825, at *4 (M.D. Pa. Jun 23, 2010) (same). So too here, section 105(a) cannot be utilized to

create pleading obligations that otherwise do not exist under the Bankruptcy Rules.

30.    Moreover, whether the legal sufficiency of the Proofs of Claim are tested

under Rule 3001 or under Rule 7012, the U.K. Pension Claimants are entitled to discovery *from*

the Debtors because the Debtors' objection has created a contested matter. Fed. R. Bankr. P.

9014(c) (applying portions of Rule 7026, which incorporates Fed. R. Civ. P. 26 regarding

discovery matters, to contested matters). To date, the U.K. Pension Claimants have had no

discovery from the Debtors. In contrast, although not through formal discovery, the Debtors

have already obtained substantial amounts of information about the Claims, including in the

Proofs of Claim and the TPR's Warning Notice. The Debtors' attempt to make an end-run

around the discovery process – and enhance their informational advantage – by seeking "all

supporting documentation" from the U.K. Pension Claimants under the guise of a motion for a

definite statement is improper.

**C.    The U.K. Pension Claimants Should Be Permitted Until October 31, 2012 To Amend Their Claims Or File A More Definite Statement.**

31.    In the event the Court decides to order the U.K. Pension Claimants to

amend their Proofs of Claim or file a more definite statement, they respectfully request until

October 31, 2012 to do so.

32.    Such a short extension is reasonable under the circumstances. In

particular, this Court's Automatic Stay Order enjoined the U.K. Pension Claimants from

participating in the TPR's case before the Determinations Panel for the issuance of an FSD

against any U.S. Debtor. Further, pending the U.K. Pension Claimants' appeals from the

Automatic Stay Order, the precise contours of how their claims would be pled and proved in this

Court remained unsettled. Now that the United States Supreme Court has, just days ago, denied

certiorari, the U.K. Pension Claimants acknowledge that they will have to establish their

entitlement to relief under the Pension Act 2004 in this Court, and welcome the opportunity to

further particularize their Proofs of Claim. However, that undertaking will involve significant

preparation by the U.K. Pension Claimants and their advisors given the factual complexity of the

Claims.

33.    Attempting to complete that process by the July 31 deadline proposed by

the Debtors would inflict significant prejudice on the U.K. Pension Claimants. Many of the U.K.

Pension Claimants' principal decision makers and advisors in the U.K. are scheduled to be away

from London due to, among other things, the upcoming Olympics and the traditional summer vacation period in July and August. The Debtors, on the other hand, do not articulate any prejudice that would result from such a short extension. Nor could they, as they have waited almost three years to object to the Proofs of Claim and cannot offer any credible reason why the U.K. Pension Claimants should be given only to July 31 to file a more definite statement of their Claims.

34.    Finally, as noted above, allowing the U.K. Pension Claimants additional time to amend their Claims will also facilitate the parties' recent efforts at mediation and potentially obviate the need for litigation over the Claims.

## CONCLUSION

For the reasons set forth above, the U.K. Pension Claimants respectfully request that the Court deny the relief sought by the Debtors in the Motion and Objection other than to the extent indicated herein.

Dated:    Wilmington, Delaware          BAYARD, P.A.
          June 27, 2012

                                        */s/ Justin R. Alberto*
                                        Charlene D. Davis (DE No. 2336)
                                        Justin R. Alberto (DE No. 5126)
                                        222 Delaware Avenue,
                                        Suite 900
                                        Wilmington, DE  19899
                                        Tel: (302) 655-5000
                                        Fax: (302) 658-6395

                                        -and-

                                        WILLKIE FARR & GALLAGHER LLP
                                        Marc Abrams
                                        Brian E. O'Connor
                                        Sameer Advani
                                        787 Seventh Avenue
                                        New York, New York 10019
                                        Tel: (212) 728-8000
                                        Fax: (212) 728-8111

                                        *Counsel for the Trustee of Nortel Networks UK
                                        Pension Plan and the Board of the Pension
                                        Protection Fund*

7982388