IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ------------------------------------------------------X :<br>*In re* :<br> :<br>Nortel Networks Inc., *et al.*,[1] :<br> :<br>    Debtors. :<br> :<br> :<br> :<br> :<br>------------------------------------------------------X | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>Jointly Administered<br><br>**Hearing Date:  July 11, 2012, at 10:00am (ET)**<br><br>**Re: D.I. 7818, D.I. 7819, and D.I. 7919** |

**DEBTORS' REPLY IN FURTHER SUPPORT OF THEIR OBJECTION TO THE PROOFS OF CLAIM FILED BY THE NORTEL NETWORKS UK PENSION TRUST LIMITED (AS TRUSTEE OF THE NORTEL NETWORKS UK PENSION PLAN) AND THE BOARD OF THE PENSION PROTECTION FUND, AND MOTION FOR AN ORDER REQUIRING A MORE DEFINITE STATEMENT OF CLAIM**

The Debtors[2] respectfully submit this memorandum in further support of their Objection to the Proofs of Claim filed against them by Claimants and their Motion for an Order requiring Claimants to file a more definite statement of any and all prepetition claims they purport to have against the Debtors (the "Motion"), and in reply to Claimants' Response to the Motion, dated June 27, 2012 (the "Response").

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. ("NNI") (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. ("NN CALA") (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]    Capitalized terms used herein but not otherwise defined shall have the same meaning as ascribed to them in the U.S. Debtors' Motion.

**PRELIMINARY STATEMENT**

1. Claimants object to the Debtors' request that they amend their Proofs of Claim to definitively state the basis for their Claims not because such relief is inappropriate, as they concede it is not, but purportedly because it is premature for Claimants to be compelled to file amended non-conclusory claims at this time, because it would be "improper" to compel them to attach supporting documentation, and because they need even more time to formulate their amended claims. They are simply wrong on all counts, especially where Claimants have filed $3.1 billion Claims against each of the Debtors. It is far from unreasonable, and on the contrary is rather important, that three years into these cases the Debtors have a clear understanding of the basis for such Claims and that the Claims be stated with specificity, including by reference to the documents that support them. Notwithstanding the ongoing mediation, summer vacation schedules and other similar excuses proffered by Claimants to delay filing amended claims, the Debtors are focused on advancing the resolution of their cases, including the determination of the remaining outstanding material claims asserted against them, and the amendment of the Proofs of Claim is a necessary and important part of that effort. Both the requirements sought to be imposed on Claimants and the proposed deadlines are reasonable based on applicable law and the stage of these bankruptcy proceedings, and accordingly the Motion should be granted.

**ARGUMENT**

**I. THE DEBTORS' MOTION IS NOT PREMATURE**

2. Claimants' contention that it is "premature" to require them to amend concededly inadequate Proofs of Claim has no merit. First, Claimants filed their Proofs of Claim

*nearly three years ago*, on September 30, 2009, seeking $3.1 billion,[3] yet to this day they have filed nothing that sets forth the most fundamental information: what they are claiming against the Debtors and the basis for the Claims. Their $3.1 billion Claims merely describe the TPR investigation of the NNUK Pension Plan and the FSD process, attaching the U.K. statutes and related documents.[4] It was Claimants' duty to file proper claims back in September 2009, and given the conclusory Claims they initially filed and the advanced stage of the Debtors' bankruptcy proceedings, surely Claimants cannot allege surprise at being required to amend their Claims at this time.

3. Claimants have had a long period of time to develop information necessary to amend their Claims and ample opportunity to file amended claims, yet they have chosen not to do so. These Claims are for *$3.1 billion*, and because of their size, they potentially affect every creditor of the Debtors' estates. After sitting on their hands for that long, it is not "premature" for Claimants finally to inform the Debtors of what they allege Debtors did that gave rise to these $3.1 billion Claims, and to provide supporting documentation.

4. Claimants also contend that in light of the current mediation, a process they hope will resolve their Claims, requiring them to amend now would prematurely "accelerat[e] potentially unnecessary litigation in this Court." (Response ¶ 3.) However, parties run on parallel litigation and settlement tracks all the time, and Claimants have pointed to nothing that would prevent them from doing so as well. Indeed, it was obviously contemplated

---

[3] Claimants' Proof of Claim against NN CALA, which is as inadequate as their Proofs of Claim against the other Debtors, was filed a few months later, in January 2010, approximately two and a half years ago. (Motion ¶¶ 18-19.)

[4] Claimants assert that the Proofs of Claim are not "barebones documents" because they contain "nearly 2000 pages." (Response at n.4.) However, approximately 1,400 of those pages consist of the text of the U.K. Pensions Act, and another almost 500 pages consist of the NNUK Pension Trust's deeds and rules. (See, e.g., NNI Proof of Claim, dated September 30, 2009, Claim Number 5573.) The few remaining pages do not allege facts that even put the Debtors on notice of a basis for imposing liability on them, whether under the U.K. Pensions Act, or any other source of law. (See, e.g., Motion ¶¶ 1-3, 20-24, 34-40, 46.)

in the Court's Orders directing the parties to mediate that there would be parallel proceedings in this Court as nothing in those Orders stays any part of these cases pending the outcome of the mediation. [D.I. 5822, 5943.]

5.      Moreover, the current mediation before Judge Winkler is the second attempt by the U.S., Canadian and EMEA debtors to mediate the allocation issues, and the last effort failed. While the Debtors are and will continue to work constructively and diligently to try to reach a consensual resolution with the pertinent parties in the current mediation, there are no guarantees that this time the mediation will succeed. The Debtors do not believe that they, or the other parties, have the luxury of waiting to see if this mediation will succeed before taking further steps to move the litigation forward in the event mediation, despite all efforts, does not succeed.

6.      Claimants are wrong when they assert that providing a more definite statement and supporting documents would be an "unnecessary distraction from [the mediation] process." (Response ¶ 20.) On the contrary, very little has occurred in the mediation to date and, based on the pace and scheduling of the mediation, it appears that there will be very little activity in that proceeding until the fall, providing ample opportunity for Claimants to amend their Claims. Notably Claimants present no evidence whatsoever that amending their Claims at this time will in any way distract from the mediation process, which appears to be entering a hiatus period for the summer in any event.[5]

7.      In short, Claimants' argument that the Motion is "premature" is baseless.[6]

---

[5]     The current mediation also cannot be seen to obviate the need for litigation in this proceeding, particularly where to date the Debtors have not received a copy of any mediation statement Claimants may have submitted to Judge Winkler.

[6]     Claimants' assertion that the filing of this Motion was timed to give the Debtors an "undue advantage" in the mediation through "one-sided discovery" is absurd. (Response ¶ 21.) This Motion was appropriately and timely filed after the Third Circuit denied Claimants' appeal. That the United States Supreme Court has now refused to

## II. CLAIMANTS SHOULD BE REQUIRED TO ATTACH SUPPORTING DOCUMENTATION TO THEIR AMENDED CLAIMS

8. Although Claimants argue that Bankruptcy Rules 3001 and 7012 are incompatible and the requirements of Rule 3001 should not apply (Response ¶¶ 4, 22-24), they do not, and cannot, cite any authority to support that proposition. As this Court held in its decision to dismiss certain claims of NNUK, Nortel Networks (Ireland) Limited, and Nortel Networks S.A. (the "EMEA Claims"), the pleading standards under Federal Rule 12 should apply to proofs of claim under these circumstances. (See Opinion On Joint Objections To And Motions To Dismiss Claims Of Nortel Networks UK Limited, Nortel Networks (Ireland) Limited And Nortel Networks S.A., dated March 20, 2012, at 21-22 [D.I. 7403] (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009)).) The Court also may apply Rule 12(e) to proofs of claim. See In re Rimsat, Ltd., 223 B.R. 345, 346 (Bankr. N.D. Ind. 1998) (citing the "substantial sum" claimed and the "paucity of information" in the proof of claim, and stating that "the efficient identification of the issues and facts in dispute, as well as a prompt disposition on the merits, [would] be greatly enhanced" by applying the requirements of Rule 12(e) to the claim).

9. It does not follow, however, and Claimants cite no authority to support their contention, that if the federal pleading rules apply, their Proofs of Claim should be treated as complaints and the requirements of Bankruptcy Rule 3001 should not apply. (See Response ¶¶ 22-24.) All proofs of claim must comply with the requirements of Bankruptcy Rule 3001. See, e.g., In re N. Bay Gen. Hosp., Inc., 404 B.R. 443, 464-65 (Bankr. S.D. Texas 2009).

---

grant the U.K. Pension Claimants' petition for writ of *certiorari* further supports the Debtors' position that the appropriate time for the Court to grant the relief requested in the Motion is *now*.

10. One of those requirements is that documentation supporting the claim be attached to the proof of claim. Bankruptcy Rule 3001(a) provides that a proof of claim "shall conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). Official Form 10 (Proof of Claim) instructs creditors to disclose sufficient information to allow a debtor to evaluate the basis for the claim, including "copies of any documents that support the claim." U.S. Bankr. Ct., Proof of Claim Form B10 at No. 7 (Dec. 2011), available at http://www.uscourts.gov/FormsAndFees/Forms/BankruptcyForms.aspx.[7] Furthermore, it has been uniformly held that Bankruptcy Rule 3001 requires, at a minimum, the attachment of "the writings that give rise to the legal entitlement to the claim." In re Sacko, 394 B.R. 90, 100 (Bankr. E.D. Pa. 2008) (cited by Claimants in their Response ¶ 27); see also N. Bay Gen. Hosp., 404 B.R. at 464-65 (Bankr. S.D. Texas 2009) ("[A] creditor cannot substantially comply with Form 10 by filing a proof of claim without any documentation or, at the very least, an explanation for why such documents are unavailable.").[8]

11. Claimants have not attached any such writings to their existing Proofs of Claim, which are woefully deficient. Therefore, pursuant to Bankruptcy Rule 3001, Claimants must attach supporting documentation to their amended claims. What Claimants appear to be

---

[7] Claimants cannot comply with Rule 3001 by simply relying upon the conclusions and reasoning of the Determinations Panel in the U.K. Administrative Proceedings. Although Claimants argue that they are not barred from "relying" on the U.K. Administrative Proceeding to prove their Claims (Response at n. 5), this Court's Automatic Stay Order provides that those Proceedings are "void and of no force or effect" with respect to the Debtors in this Court (Order at 5). The Third Circuit did not hold otherwise. The Third Circuit only addressed the issue of *admissibility*: "if and when there is an attempt to introduce [the findings emanating from the U.K. Administrative Proceedings] into evidence at a hearing," this Court should consider that "none of the parties before the Bankruptcy Court participated in the U.K. proceedings with respect to the U.S. parties." In re Nortel Networks, Inc., 669 F.3d 128, 143 (3d Cir. 2011).

[8] Claimants' argument that the Debtors are not entitled to supporting documentation because their Claims are not "based on a writing" pursuant to Bankruptcy Rule 3001(c) (Response ¶ 27) has no merit, particularly given the requirements of Bankruptcy Rule 3001(a) and Official Form 10 (see *supra* ¶ 10). Furthermore, their reliance on In re Catron, 198 B.R. 905, 907 (Bankr. M.D. N.C. 1996) is misplaced. Catron is inapposite. There, the court found the IRS had complied with Rule 3001 by attaching to its proof of claim an itemization of the amounts and types of taxes due as well as evidence of the recordation of a tax lien. In contrast, here Claimants have filed nothing that even shows that they have a claim, let alone documents that evidence the merits of the claim.

asking the Court for is an advisory opinion as to what documentation they must attach to the amended claims to satisfy the requirements of Rule 3001, in advance of even articulating what those amended claims are. This simply is not an appropriate request. As with any claim filed in these cases, the burden is on Claimants in the first instance, not the Court, to state the basis for their claims and determine what documentation they should attach to their amended claims that would comply with applicable law and support imposing a $3.1 billion liability on the Debtors.[9]

### III. THE DEBTORS ARE NOT SEEKING, AND CLAIMANTS ARE NOT ENTITLED TO, DISCOVERY

12. Claimants grossly mischaracterize the Debtors' request that they attach supporting documentation to their amended proofs of claim as a "means of obtaining discovery." (Response ¶ 26.) The law is to the contrary. The requirement under Bankruptcy Rule 3001 and Official Form 10 that Claimants attach supporting documents to their Proofs of Claims, as discussed *supra* ¶ 10, is not a request for discovery, but a request that Claimants comply with "a mandatory prerequisite to establishing a claim's prima facie validity." In re N. Bay Gen. Hosp., Inc., 404 B.R. at 464-65 (Claimants must attach supporting documentation "'so that a debtor can evaluate their [claims'] validity without discovery or extraordinary expense.'").

13. Equally without merit is Claimants' unsupported contention that because the Debtors have objected to their Claims there is now a contested matter that entitles them to obtain discovery from the Debtors. (Response ¶ 30.) At this point, all that Claimants have filed are barebones Proofs of Claim that do not even tell the Debtors what they did that allegedly gives rise to liability. What Claimants have filed is not entitled to *prima facie* validity, because their Proofs of Claim do not even provide the Debtors with notice of what the Claims and the alleged

---

[9] For the avoidance of doubt, the Debtors are not seeking all evidentiary materials potentially relevant to the amended claims, but rather the documents required by Rule 3001 and Official Form 10, the standards for which are discussed *supra* ¶ 10.

basis for them are. See In re O'Brien, 440 B.R. 654, 658-59 (Bankr. E.D. Pa. 2010) (a proof of claim that does not allege facts "sufficient to support a legal liability to the claimant" is not *prima facie* valid); see also cases cited in Motion ¶¶ 45-46. Until Claimants file legally sufficient claims, "[d]iscovery would serve no purpose, other than as a fishing expedition for evidence in search of a theory that has yet to be asserted." In re: Alper Holdings USA, Inc., 398 B.R. 736, 754 (S.D.N.Y. 2008) (affirming denial of discovery because "Claimants have failed, in their proofs of claim and the accompanying documents, to allege any facts that, if proved, would allow them to recover"); see KBL Corp. v. Arnouts, 646 F. Supp. 2d 335, 346 n.6 (S.D.N.Y. 2009) (improper to permit "discovery in order to piece together a claim"); Podany v. Robertson Stephens, Inc., 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (as a general matter, "discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim").

14. Claimants have filed nothing that warrants discovery, and they have no basis to even raise the issue when what they have filed is so wholly inadequate.[10] Until they file amended claims that assert allegations and set forth the grounds for those claims so that the Debtors are in a position to respond, there is nothing to take discovery about.[11] Claimants are not entitled to discovery from the Debtors.[12]

---

[10] Indeed, Claimants have not even met the minimal requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure that their pleading provide "fair notice of what . . . [their] claim is and the grounds upon which it rests." Gwynne v. Credit Suisse First Boston (USA), Inc. (In re Quintas Corp.), 332 B.R. 110, 114 (Bankr. D. Del. 2005) (cited by Claimants in their Response ¶ 24).

[11] Moreover, if, as was the case with the EMEA Claims, the Debtors respond to the amended proofs of claim by filing a motion to dismiss, the Debtors likely would seek a stay of discovery pending the outcome of that motion in any event.

[12] Claimants allege that "although not through formal discovery, the Debtors have already obtained substantial amounts of information about the Claims, including in the Proofs of Claim and the TPR's Warning Notice." (Response ¶ 30.) As demonstrated in the Debtors' Motion and *supra*, the Proofs of Claim fail to allege

### IV. CLAIMANTS' REQUEST FOR AN EXTENSION OF FOUR AND A HALF MONTHS TO FILE AMENDED CLAIMS SHOULD BE DENIED

15. While Claimants "welcome the opportunity to further particularize their Proofs of Claim," they request a "short extension" of 142 days from the date of filing of the Motion to do so. (Response ¶¶ 31-32.) Although the Debtors would not object to an extension until August 15, 2012, which is 65 days after Claimants were put on notice of the Debtors' request for amended claims by the filing of the Motion, anything longer than that is unnecessary and would be inappropriate. Indeed, Claimants do not even attempt to cite a case in which a party was given anything close to a 142 day extension to amend a proof of claim, or for that matter, any pleading. Parties are typically given 20 or 30 days; not 142. See, e.g., In re Cramer, 406 B.R. 267, 269 (Bankr. M.D. Pa. 2009) ("[D]isallow[ing] the claim but giv[ing] leave to [creditor] to file a curative amendment to their Proof of Claim within the next twenty days, setting forth the documentation necessary to support the claim and its components."); In re Henry, 311 B.R. 813, 822 (Bankr. W.D. Wash. 2004) (30 days to file amended claims that provide sufficient documentation under Bankruptcy Rule 3001); see also In re Ahmadi, 467 B.R. 782, 792 (Bankr. M.D. Pa. 2012) (14 days to amend a complaint). Such a request also is inconsistent with typical bar date practices, including those imposed on other creditors in these cases, particularly where Claimants already have been given over three years to develop the basis for their Claims.

16. Similarly, this Court's Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof, dated Aug. 4, 2009 ¶ 8 [D.I. 1280],

---

sufficient facts to support any liability by Debtors to Claimants. (See, e.g., Motion ¶¶ 35-40.) As to the Warning Notice, to the extent Claimants intend for it to serve as a basis for their Claims, the information contained therein has limited usefulness because the Debtors are prohibited from sharing that information with the Committee, or with this Court. (See Motion ¶¶ 17, 41-42.)

provides parties with 20 days to file claims after the Debtors file amendments to their Schedules. Moreover, just recently, the Court granted the EMEA claimants 61 days to amend equally barebones proofs of claim [D.I. 5402]. In that period,[13] the EMEA claimants managed to file dozens of claims against the U.S. Debtors, which together alleged hundreds of causes of action. (See Claim Numbers 7750-7787; see also Debtors' Objection to the Proofs of Claim Filed by the EMEA Claimants and Motion for an Order Requiring a More Definite Statement of Claim and Setting a Deadline for the Filing of Any Proofs of Claim by the EMEA Claimants, dated April 1, 2011 [D.I. 5200].) There is no basis for giving these Claimants more than double the time the Court granted the EMEA claimants. The 65 day period here provides more than sufficient time for Claimants to amend these Claims, particularly since they filed the Proofs of Claim over three years ago.

17.     Claimants' request for a further extension also must be weighed against their specific circumstances. Claimants suggest they need more time to develop and prepare amended claims, but they offer no credible excuse why they have not done so in the three years since the commencement of these cases. While Claimants suggest that their decisions on how to plead their claims were "unsettled" until the United States Supreme Court's recent denial of their petition for a writ of *certiorari* seeking reversal of this Court's Automatic Stay Order (Response ¶ 32), given the repeated affirmances of that Order by several intermediate appellate courts over the last two years, it strains credulity to suggest that Claimants did not plan for the possibility that they would be required to file definitive claims and prove their case before this Court at this time.

---

[13] The EMEA claimants received an extension of an additional two days, and thus their claims were filed within 63 days of the filing of the Objection and Motion. (See Order Approving Extension of Deadline for EMEA Claimants to File a More Definite Statement of Claim and to File Any Proofs of Claim dated June 3, 2011 [D.I. 5588]; Claim Numbers 7750-7787.)

18.     There was never a question that Claimants would be required to specify the allegations supporting their $3.1 billion Claims.  As Claimants themselves conceded nearly two and a half years ago and have repeatedly asserted since, regardless of the result of the U.K. Administrative Proceedings, the validity of their Claims always had to be determined by this Court.[14]  Claimants' excuse that over three years into these cases they need substantial additional time to shape the "contours" of the amended claims does not ring true.  (Response ¶ 32.)  Notably, Claimants filed amended claims with voluminous supporting documentation in Canada over a year and a half ago, in November 2010 (Motion ¶ 25), nearly two months *before* the Supreme Court of Canada summarily denied TPR's motion for leave to appeal the Canadian court's stay decision.  See U.K. Pensions Regulator v. Nortel Networks Corp. et al., 2011 CarswellOnt 303 (Can. Ont.).

19.     Moreover, while the Debtors do not concede the relevance or admissibility of the submissions or determinations related to the U.K. Administrative Proceedings, Claimants cannot point to their non-participation in those Proceedings against the U.S. Debtors as a reason to further delay the liquidation of their Claims in this Court.  The TPR Warning Notice and voluminous exhibits were sent to the targets of the U.K. Administrative Proceedings over two and one-half years ago, in January 2010.[15]  Further, in June 2010, the Determinations Panel of the TPR, after examining "evidence" presented by TPR, issued Determination Notices to NNI,

---

[14]    See Objection of the Trustee of Nortel Networks UK Pension Plan and the Board of the Pension Protection Fund to Debtors' Motion for Entry of an Order Enforcing the Automatic Stay against Certain Claimants with Respect to the U.K. Pension Proceedings, dated February 24, 2010 at ¶ 37 [D.I. 2503] ("[T]he Trustee and the PPF voluntarily submitted themselves to the jurisdiction of this Court by filing proofs of claim in these cases in compliance with the Bar Date Orders, and they fully recognize that, whatever the outcome of the U.K. Regulatory Procedure, this Court will determine whether their proofs of claim are allowed in these cases and, if so, in what amount.").

[15]    Claimants, as parties to the U.K. Administrative Proceedings with respect to non-U.S. Debtors, had access to the information in the Warning Notice.  Neither the Court nor the Committee, however, has seen the Warning Notice or the exhibits thereto in light of the secrecy provisions under Section 82 of the U.K. Pensions Act.

11

NN CALA, and other non-U.S. Nortel entities, stating that it had determined that FSDs should be issued against them, and also disclosed the reasoning for such determination. That was over two years ago. Claimants have had more than ample time to review these materials and consider other sources for formulating their amended claims against the Debtors.

20.     Claimants also contend, without any factual support, that they need 142 days because "[m]any of the U.K. Pension Claimants' principal decision makers and advisors in the U.K. are scheduled to be away from London" in July and August due to, among other things, the fact that people take vacations in the summer, and "the upcoming Olympics." (Response ¶ 33.) However, Claimants conspicuously fail to identify these people and to provide any evidence regarding their schedules in July and August. To the extent that Claimants are referring to their lawyers, who will principally prepare the amended claims, Claimants have retained three large, experienced and respected law firms, two in the U.S. and one in the United Kingdom, and it is absurd to suggest that all of the responsible attorneys for Claimants have been and will continue to be unavailable during the entirety of June, July and August to work on amending Claims that Claimants contend are worth $3.1 billion. It similarly strains credulity to believe these unidentified "decision makers and advisors" – to the extent Claimants are referring to non-lawyers – cannot find any time over the entire summer to make decisions with respect to these multi-billion dollar Claims.

21.     Finally, Claimants assert that the extraordinary extension they seek would not prejudice the Debtors. (Response ¶ 33.) However, the Debtors have an obligation to their creditors to resolve claims and they have been doing so throughout the course of these cases. Claimants have filed Claims for $3.1 billion, an amount that is so large that the extent to which the Claims are allowed, reduced or expunged will potentially have a significant effect on all

creditors and the distributions in these cases. There is simply no justification for such a lengthy extension.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Debtors' Motion, the Debtors respectfully request that this Court: (i) sustain the Objection and grant the Motion; (ii) enter the Debtors' proposed order, requiring Claimants to serve a more definite statement of their Claims and attaching the documentation required by Rule 3001, on or before August 15, 2012, and if Claimants fail to do so by that date, their Proofs of Claim and any and all prepetition claims that they may have against the Debtors will be disallowed and expunged with prejudice; and (iii) grant such other and further relief as it deems just and proper.

Dated: July 6, 2012
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Tamara K. Minott (No. 5643)
1201 North Market Street
18th Floor
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*