## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X

In re                                                    :        Chapter 11

                                                         :
Nortel Networks Inc., et al.,[1]                         :        Case No. 09-10138 (KG)

                                                         :
                                    Debtors.             :        Jointly Administered

                                                         :        **Hearing date:  July 11, 2012 10:00 AM (ET)**

                                                         :        **Re:  D.I. [7876, 7937, 7940]**
-------------------------------------------------------- X

## DEBTORS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT PROCEDURES TO RESOLVE CLAIMS OF BENEFICIARIES OF THE NORTEL NETWORKS U.S. DEFERRED COMPENSATION PLAN

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), respectfully submit this reply (the "Reply") in further support of the Debtors' *Motion for the Entry of an Order Authorizing and Approving Settlement Procedures to Resolve Claims of Beneficiaries of the Nortel Networks U.S. Deferred Compensation Plan* (the "Motion") and in response to the objection (the "Objection") to the Motion of Robert Horne, Mason James Young, Ellen Bovarnick, Charla Crisler, Bart Kohnhorst, Brian Page, Benjamin Warren and the Ad Hoc Group of Beneficiaries of the Nortel Networks U.S. Deferred Compensation Plan (collectively, the "Ad Hoc Group").[2]

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]      Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

## PRELIMINARY STATEMENT

1.      The reckless Objection filed by counsel to the Ad Hoc Group is nothing more than a distraction.   The Debtors filed this Motion to seek the Court's permission to establish a procedure for resolving the claims of participants in the Nortel Networks U.S. Deferred Compensation Plan in a manner the Debtors believe would be fair and reasonable for both those participants and other stakeholders in the estate.  The Motion is consistent with the Debtors' diligent efforts to bring these chapter 11 cases to a successful conclusion.  Under this Court's supervision and, where necessary, with the Court's approval, the Debtors have employed various means of resolving numerous remaining difficult issues, including, where appropriate, litigation, mediation or individual negotiations.  Similar to other motions filed by the Debtors with respect to other categories of claims, the Motion is merely a procedural step to establish a settlement process.

2.      If the Court approves the Motion, the Debtors can extend an offer to each Plan participant, referred to as a "Beneficiary," of an immediate unsecured claim for the full amount of his or her nominal deferred compensation account balance as of the Petition Date.  In accordance with the applicable Bankruptcy Rules and the strong bankruptcy policy of providing notice to all interested parties, the Debtors served the Motion on all known Beneficiaries and on the two law firms, Bernstein Shur and Blank Rome, that represent only some of the Beneficiaries.  A court in this District has expressly stated that such "simultaneous service" of papers on interested parties and their counsel is fully "consistent with Rule 4.2" of the Model Professional Conduct Rules, which concerns communications with parties and their counsel.

3.      The Debtors not only served the Motion on both the Beneficiaries and the Bernstein and Blank firms in accordance with the Rules of this Court, they also expressly

2

highlighted the Adversary Proceeding that the Bernstein and Blank firms have filed and

encouraged any Beneficiaries to consult with their counsel about the matter. The Motion

describes and defines both the Turnover Motion and the Adversary Proceeding and states:

> The Debtors have posted certain of the core pleadings from the
> Turnover Motion and Adversary Proceeding on Epiq's Nortel
> website, which can be accessed at http://dm.epiq11.com/nortel.
> Beneficiaries considering whether to settle their Deferred
> Compensation Claims are encouraged to review the various
> pleadings contained on this page and the other pleadings and
> motions filed in the Debtors' bankruptcy cases which are also
> available on Epiq's website, and consult with their own counsel if
> they have retained one, on the merits of the Deferred
> Compensation Claims being settled to determine whether they
> would like to voluntarily settle their claims. Motion ¶ 27.

4.        Despite this full and fair notice to Beneficiaries and their counsel, the Bernstein

and Blank firms have filed an objection in which they meritlessly contend that the simultaneous

service of the Motion on all the Beneficiaries <u>and</u> on the counsel that represents only some of the

Beneficiaries somehow violates Professional Conduct Rule 4.2. The two court decisions they

offer as purported support for this claim reveal their reckless charge to be utterly baseless: both

decisions address circumstances in which pleadings were served <u>only</u> on a party and <u>not</u> on the

parties' counsel. Objection ¶ 32 (citing *In re Grand Union Co.*, 204 B.R. 864, 875-76 (Bankr. D.

Del. 1997) (Walsh, J.); *Cooky's Island Steak Pub. Inc. v. Yorkville Elec. Co.*, 130 Misc. 2d 869,

870 (N.Y. Sup. Ct. 1986)). In fact, six months after rendering his decision in *In re Grand Union*

*Co.*, Judge Walsh expressly stated that "simultaneous service" of pleadings on counsel and

parties – exactly what occurred here – is both "consistent with Rule 4.2" and called for by the

Bankruptcy Rules. *In re Lomas Fin. Corp.*, 212 B.R. 46, 54 (Bankr. D. Del. 1997). For the

Bernstein and Blank firms to allege that a service method that Judge Walsh has stated is

"consistent with Rule 4.2" is somehow a violation of Rule 4.2 is irresponsible in the extreme.

5.      Unfortunately, these tactics form part of a pattern that has delayed the resolution of this matter for more than a year and a half and has imposed substantial burden and expense on the Debtors.  Indeed, the claims that the Bernstein and Blank firms have asserted on behalf of certain Beneficiaries depend on contradicting what every Beneficiary expressly acknowledged in order to obtain the generous tax benefits provided by the Plan:  that "[a]ny assets held by the Trust [are] subject to the claims of the Employers' general creditors . . . in the event of Insolvency" and that Beneficiaries have only "unsecured contractual rights" to their Plan benefits.  Trust Agreement at Art. 1(d).

6.      When the Debtors first filed the Turnover Motion more than a year and a half ago, in December 2010, the Bernstein and Blank firms filed objections on behalf of the so-called "Ad Hoc Group."  The objections claimed that, contrary to the express Plan agreements, the Beneficiaries are entitled to seize the Trust assets for themselves to the detriment of the Debtors's general creditors.  The Ad Hoc Group then sought discovery in connection with its objections, some of which the Debtors were able to accommodate and some of which the Debtors objected to as inappropriate.  The Ad Hoc Group brought a motion to compel further discovery, which the Court denied almost entirely.

7.      After their meritless discovery demands were rejected, the Ad Hoc Group further delayed the case from moving forward.  At the hearing on the motion to compel on August 23, 2011, counsel for the Ad Hoc Group, the Bernstein and Blank firms, advised the Court that they were likely to file an adversary proceeding in connection with the Debtors' deferred compensation plan and the rabbi trust that is the subject of the Turnover Motion.  Inexplicably, however, counsel then waited four months, until December 23, 2011, just over a year after the Debtors filed the Turnover Motion, to file the Adversary Proceeding.

4

8.      Counsel for the Ad Hoc Group created further delay by naming as defendants certain individuals who are subject to a stay of litigation under the Canadian Debtors' insolvency proceedings.  After counsel for the Canadian Debtors and the Monitor admonished counsel for the Ad Hoc Group for ignoring the stay by letter in January 2012, counsel for the Ad Hoc Group waited until March to provide a responsive letter.  The Ad Hoc Group then filed a motion with the Court seeking relief from the order recognizing the stay, to which the Court responded by directing the Ad Hoc Group to seek relief from the Canadian court, just as had been foreshadowed by counsel to the Canadian Debtors and the Monitor.  In response, on June 25, 2012, the Ad Hoc Group simply dismissed the individual defendants.

9.      As a result of these endless diversionary tactics, the Debtors are no closer to achieving the result for which the Plan and Trust documents expressly provide – making the Trust assets available to all of the Debtors' creditors – than when they first commenced the Turnover Motion in December 2010.  However, on July 9, the Debtors will be able to file a motion to dismiss the claims asserted in the Adversary Proceeding in order to begin to finally resolve this matter on the merits.[3]

10.      Against this background, the Objection should be seen for what it is:  a further and irresponsible attempt by counsel for the Ad Hoc Group to maintain control over a litigation that they have stalled for over eighteen months.  Indeed, counsel for the Ad Hoc Group has failed to even move for class certification, seven full months after the filing of the Adversary Proceeding and nearly one year after counsel for the Ad Hoc Group informed the Court that an Adversary Proceeding would be filed.

---

[3]      While this submission briefly discusses aspects of the merits of the case, Debtors will not attempt in this submission to identify and rebut every statement and allegation with which they disagree, and their silence should not be seen to reflect agreement which each remaining point.

11.     Because no class has been certified, counsel for the Ad Hoc Group has no attorney-client relationship with a large portion of the Beneficiaries, including at least 130 individuals who are not members of the Ad Hoc Group.  It certainly would not be unreasonable that some, if not all, of these individual Beneficiaries – each of whom signed a form when enrolling in the Deferred Compensation Plan each year that acknowledged that the compensation deferred would be part of the Debtors' general assets and subject to the claims of the Debtors' general creditors in the event of the Debtors' bankruptcy or insolvency – might decide voluntarily that they would prefer to fix their claim now for purposes of monetizing them in the claims trading market rather than wait any longer for the conclusion of a litigation that shows no sign of ending soon.  There is nothing misleading or coercive in the Debtors' attempt to accommodate such individual Beneficiaries by proposing a procedural mechanism by which such settlements can take place on a wholly voluntary basis.  Indeed, as noted, the Debtors have taken measures to ensure that information about the Ad Hoc Group's claims and arguments are publicly and easily accessible so that they can be evaluated by individual Beneficiaries before making any decision.

12.     The Debtors' concern for transparency and due process sharply contrasts with the manner in which counsel for the Ad Hoc Group has managed this litigation.  Though the sample engagement letter filed by counsel for the Ad Hoc Group with their Rule 2019 statement (which is attached to the Objection as Exhibit 1) has been heavily redacted – contrary to Rule 2019 and applicable law – the unredacted text demonstrates the efforts counsel for the Ad Hoc Group has taken to ensure that they have tight control over the litigation and little accountability to their clients as a whole:  counsel for the Ad Hoc Group assumes an obligation to communicate only with a Subcommittee, consisting of a very few members of the Ad Hoc Group, and disavows any

6

duty to communicate with any other Ad Hoc Group member; the attorney-client privilege is held and controlled exclusively by the Subcommittee, who can waive it at will; and the Subcommittee has the exclusive right to direct counsel for the Ad Hoc Group, with no liability to any other member of the Ad Hoc Group so long as they act on the advice of counsel.  Tellingly, at the same time, the retention agreement makes clear that the Bernstein and Blank firms do not represent the members of the Ad Hoc Group on any matter vis à vis the Debtors other than the narrowly tailored claims relating to deferred compensation.

13.    Counsel for the Ad Hoc Group has been able to maintain this tight control over the litigation for eighteen months, with almost nothing to show for it, not even signed retention letters from every purported member of their own group, and it apparently perceives any measure that may break this logjam as a threat to its power and control.  The Motion's request for permission to enable individual Beneficiaries to settle their claims apart from the litigation is plainly not an affront to due process or the attorney-client privilege, as counsel for the Ad Hoc Group speciously argues.  While the Debtors are ready to litigate the merits with the Ad Hoc Group now that the briefing deadlines are finally imminent, the Court should not permit the baseless attacks in the Objection to prevent individual Beneficiaries from voluntarily resolving their claims without further delay if they wish to do so.

**A.    The Voluntary Settlement Procedures Advance the Interests of the Debtors and the Holders of Deferred Compensation Claims**

14.    The Settlement Procedures proposed in the Motion – which were developed in consultation with and are fully supported by both the Committee and the Bondholder Group – are both appropriate and beneficial to holders of deferred compensation claims.  While the Objection indicates that the members of the Ad Hoc Group will not wish to accept the proposed settlement terms with respect to their own claims, the proposed procedures still give at least 130

7

additional individuals not represented by the Ad Hoc Group an opportunity to monetize their claims on a wholly voluntary basis.

15.     The history of the litigation with the Ad Hoc Group, and the long delays it has caused, underscore the potential benefit of the Settlement Procedures.  As noted, over eighteen months have passed since the Debtors filed the Turnover Motion, and seventeen months have passed since the Ad Hoc Group filed its objection to the Turnover Motion, raising the very same issues that continue to be in dispute today.  During this long passage of time, the Debtors have engaged in document production to the Ad Hoc Group, but the litigation has not otherwise meaningfully progressed as a result of the consistent delaying tactics employed by the Ad Hoc Group.  Rather than litigate their disputes in the context of the Turnover Motion, the Ad Hoc Group decided to file the Adversary Proceeding in December 2011, four months after proposing such a complaint.  The Ad Hoc Group has spent the last 10 months grappling with procedural issues surrounding their efforts to sue certain former directors of the Canadian Debtors named in the Adversary Proceeding – issues flagged by the Canadian Debtors and the Monitor well in advance of the filing of the Adversary Proceeding – only to dismiss the action against those individuals without prejudice on June 25, 2012.  [11-54007, D.I. 35].[4]

16.     As a result of these unnecessary and dilatory detours, the Debtors are no closer to resolving these matters today than they were in December 2010, when they first sought the turnover of the Trust assets.  The Debtors are fully prepared to litigate these disputes with the Ad Hoc Group to finality, but that litigation should not frustrate the ability of individuals who would like to monetize their claims from doing so either now or in the future.  While the Debtors hope that these matters can be resolved expeditiously, there can be no assurance the litigation will be

---

[4]     Accordingly, the Ad Hoc Group's suggestion that the Debtors have caused any litigation delays is simply wrong. *See* Objection ¶ 8 n.3.

8

finally resolved any time in the near future.  By way of comparison, prior similar litigation

brought by counsel to the Ad Hoc Group lasted over two years, including an appeal to the Third

Circuit before a settlement was reached.  *See Schroeder v. New Century Holding, Inc. (In re New*

*Century)*, Adv. No. 07-51598 (Bankr. D. Del.).

17.     The proposed Settlement Procedures also would be responsive to the inquiries the

Debtors have received from individuals who hold or have acquired deferred compensation claims

about the possibility of resolving such claims.  Rather than responding to such inquiries on an ad

hoc basis, with the attendant costs of doing so, the Debtors concluded it would be in the interests

of their estates, as well as the holders of deferred compensation claims and their creditors

generally, to seek approval of procedures that would enable the Debtors to extend offers to

resolve such deferred compensation claims on a consistent and transparent basis, without the

need to file individual motions to resolve claims.  Of course, individual claimholders – including

members of the Ad Hoc Group – are free to decline any settlement proposal and to continue to

prosecute their claims and objections, to the extent such claims and objections have been

properly preserved.

18.     The proposed procedures are intended to further the Debtors' general efforts to

resolve claims, including the many employee claims filed in these cases.  In particular, the

Debtors have filed amended schedules and established settlement procedures with respect to

certain categories of employee claims and have made significant progress in reconciling and

resolving employee claims.  Contrary to the Ad Hoc Group's assertion that the proposed

settlement terms are "illusory" because "all Beneficiaries already have an allowed claim,"

Objection ¶¶ 5, 27, deferred compensation claims are listed on the Debtors' schedules as

unliquidated claims, and the claims orders entered in these cases require the filing of proofs of

claims under such circumstances.  [D.I. 1280, 2059].  Not all Beneficiaries have filed such

claims.  By authorizing the Debtors to grant allowed claims to individual Beneficiaries, the

proposed Settlement Procedures also may facilitate the monetization of such claims (and finally

resolve claims that previously have been monetized) to the extent Beneficiaries voluntarily

choose to accept such a settlement.  As importantly, while the Objection contains a vitriolic

recitation by counsel for the Ad Hoc Group of purported reasons why the proposed settlement

terms should not be accepted, the proposed procedures are wholly voluntary.  They would simply

give individual Beneficiaries, including at least 130 individuals out of a total population of 325

who have chosen not to join the Ad Hoc Group and are not represented by their counsel, the

ability to decide whether to agree to an allowed claim if a settlement offer were made on such

terms.[5]

**B.      The Motion Was Properly Filed and Served On Both Counsel And Individual
          Members Of The Ad Hoc Group**

        19.      In what can only be seen as a desperate effort to distract its clients from the

proposed terms of the Debtors' Settlement Procedures or a misguided and self-serving effort to

prevent other Beneficiaries from resolving their own claims, counsel to the Ad Hoc Group has

raised meritless complaints about the filing and service of the Motion, including utterly

unfounded allegations about purported ethical violations and procedural lapses.

        20.      The Ad Hoc Group argues that service of the Motion – which it incorrectly

characterizes as a settlement offer rather than a motion seeking approval of settlement

procedures – on individual members of the Ad Hoc Group is prohibited under Model Rule of

---

[5]        Contrary to the Objection's mischaracterization, the Motion obviously is not itself a settlement offer but instead is a set of proposed procedures by which the Debtors would be authorized to extend settlement offers to individual Beneficiaries.

Professional Conduct 4.2,[6] despite the fact that counsel to the Ad Hoc Group was served simultaneously. *See* ECF Filing Notification, attached hereto as **Exhibit A**.[7]  The Ad Hoc Group has no legal support for that inflammatory allegation.  To the contrary, the only two decisions the Ad Hoc Group cites address instances in which court documents were served only on an individual party and <u>not</u> on its counsel.  Objection ¶ 32 (citing *In re Grand Union Co.*, 204 B.R. 864, 870-71 (Bankr. D. Del. 1997) (Walsh, J.) (service of bar date notice on claimants only and not on counsel); *Cooky's Island Steak Pub. Inc. v. Yorkville Elec. Co.*, 130 Misc. 2d 869, 870 (N.Y. Sup. Ct. 1986) (service of amended complaint on defendant and not attorney who had appeared).  That is fundamentally different from the facts here, where both counsel and interested parties were served in conformity with the applicable bankruptcy rules.  Judge Walsh, the author of the *In re Grand Union Co.* decision that the Ad Hoc Group cites, made this exact observation in *In re Lomas Financial Corp.*, 212 B.R. 46, 54 (Bankr. D. Del. 1997), stating that "simultaneous service" of court documents on counsel and parties – rather than merely service upon the party – would be both "consistent with Rule 4.2" and called for by the Bankruptcy Rules.  *In re Lomas Fin. Corp.*, 212 B.R at 53-54.

21.      The *In re Lomas* decision makes sense because Rule 4.2 aims to protect against parties being given insufficient notice by not having their counsel involved, rather than being given too much notice.  *See, e.g., In re Grand Union Co.*, 204 B.R. 864 at 875-76 (citing Annotated Model Rules of Prof'l Conduct R. 4.2 cmt. (1992)).  Further, serving an interested

---

[6]      The Local Rules for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Bankruptcy Rules</u>") actually provide that the Model Rules of Professional Conduct of the American Bar Association, and not the Delaware Rules of Professional Conduct, govern attorneys authorized to practice before the Court, but the text of Model Rule of Professional Conduct 4.2 is identical to Delaware Rule of Professional Conduct 4.2.

[7]      ECF notice constitutes service; in order to receive notifications by ECF, an entity must sign a form agreeing to accept service by ECF in lieu of paper service.  *See* ECF registration form available at http://www.deb.uscourts.gov/CMECF/cmecf_registration.pdf.

party and its counsel simultaneously does not implicate the concerns underlying Rule 4.2 by preventing counsel from providing advice to his client so as to expose the client to "overreaching by other lawyers" or by creating an "uncounselled" conversation between a party and its adversary.  Model Rules of Prof'l Conduct R. 4.2 cmt. (2010).

22.    The complaints by counsel to the Ad Hoc Group are especially weak in light of the Bankruptcy Rule's strong policy in favor of wide notice, including notice in the manner provided by the Debtors in accordance with Bankruptcy Rule 2002(g)(1) and Local Bankruptcy Rule 2002-1.  "Appearing more than 130 times in the Rules, the term 'notice' and the related procedures are a cornerstone of bankruptcy practice," and proper notice is vital "to balanc[ing] a debtor's title 11 protections against the Fifth Amendment guarantee that creditors will not be deprived of 'life, liberty or property' without 'due process of the law.'"  *In re F.A. Potts & Co.*, 86 B.R. 853, 860–61 (Bankr. E.D. Pa. 1988).  Respecting this mandate, the Debtors served the Motion widely, as authorized by the Bankruptcy Rules.  The argument by counsel to the Ad Hoc Group that Debtors provided too much notice, which included notice to counsel, is directly contrary to the fundamental rules and policy of bankruptcy practice.[8]

23.    If counsel is requesting that any future correspondence sent by the Debtors to the members of the Ad Hoc Group pursuant to the Settlement Procedures (if approved) be addressed to counsel to the Ad Hoc Group rather than the group members, the Debtors are willing to follow that request, if an offer is made and served on the members of the Ad Hoc Group, in the context of those procedures.

---

[8]    Notably, while the Ad Hoc Group complains about perceived non-compliance with rules, the Ad Hoc Group has failed to update its Rule 2019 statement since May 10, 2011, to disclose the identity of additional members who have joined over the last year.

**C.    The Class Action Rules Do Not Provide A Basis for Denying the Motion**

24.    The Ad Hoc Group's complaints about the proposed Settlement Procedures and

their service upon Beneficiaries who are <u>not</u> part of the Ad Hoc Group also lack any merit.

25.    At the outset, while the Objection raises various complaints based on

communications with class members, to date no class has been certified in the Adversary

Proceeding.  Indeed, counsel to the Ad Hoc Group (who also is plaintiffs' counsel in that

proceeding) has not even filed a motion seeking certification of a class.  Even if counsel had filed

such a motion, however, the Motion would be proper because it is well established that there is

no *per se* prohibition on communicating or settling with unrepresented putative class members

prior to certification of a class.  As explained in one of the precedents that the Objection itself

cites, "before a class action is certified, it will ordinarily not be deemed inappropriate for a

defendant to seek to settle individual claims."  *See Jenifer v. Delaware Solid Waste Auth.*, Civ.

A. 98-270 MMS/98-565 MMS, 1999 WL 117762, at *3 (D. Del. Feb. 25, 1999) (cited in

Objection ¶ 38); *see also Hinds Cty. Miss. v. Wachovia Bank, N.A.*, 790 F. Supp. 2d 125, 133

(S.D.N.Y. 2011) (cited in Objection ¶ 36) ("'[P]laintiff has no legally protected right to sue on

behalf of other potential plaintiffs who prefer to settle.'") (quoting *Weight Watchers of Phila. v.

Weight Watchers Int'l, Inc.*, 455 F.2d 770, 775 (2d Cir. 1972).[9]

26.    Here, there are at least one hundred thirty Beneficiaries who are not part of the Ad

Hoc Group, and absent class certification the Debtors are free to communicate with and settle the

---

[9]    Indeed, the courts in three of the cases the Ad Hoc Group cites actually <u>permitted</u> the defendants to settle
with putative class members or otherwise found the communications at issue to be proper.  *See Hinds Cnty., Miss. v.
Wachovia Bank, N.A.*, 790 F. Supp. 2d 125, 133 (S.D.N.Y. 2011) (finding that a court "may not prevent an
extrajudicial settlement prior to class certification"); *Wu v. Pearson Educ., Inc.*, Nos. 09 Civ. 6557(RJH)(JCF), 10
Civ. 653(RJH)(JCF), 2011 WL 2314778 at ** 7-8 (S.D.N.Y. June 7, 2011) (finding no evidence of misconduct and
denying motion to enjoin communications); *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 244-45 (E.D.
Tex. 1997) (declining to find communications with putative class members coercive or improper and denying
request to limit communications).

claims of such individuals.  The Debtors also do not concede certification of a class would be

appropriate in the Adversary Proceeding; on the contrary, the Debtors intend to vigorously

oppose a motion for class certification if and when one is filed.

27.     Recognizing that an objection to communications with individuals who are not

represented and do not belong to a certified class would fail, the Ad Hoc Group strives to

manufacture arguments as to why the Motion is purportedly misleading to putative class

members.  Each one ignores the facts.[10]  The Ad Hoc Group essentially complains that (1) the

Debtors fail to disclose the Ad Hoc Group's arguments, including their claims of ownership of

the Trust assets and the value of such claims, (2) the Debtors fail to clarify that the settlement

proposal outlined in the Motion would not be paid out immediately by the Debtors but rather

could only be monetized by selling the claims at a "substantial discount" and (3) the Debtors fail

to disclose that the Beneficiaries "already have" what the settlement proposal contemplated in

the Motion would give – an allowed claim.  None of these objections has merit.

28.     Although courts have "both the duty and the broad authority to exercise control

over a class action and to enter appropriate orders governing the conduct of counsel and parties,"

the Supreme Court has warned that "this discretion is not unlimited."  *Gulf Oil Co. v. Bernard*,

452 U.S. 89, 100 (1981).  Rather, any such order must be "justified by a likelihood of serious

abuses."  *Id.* at 104.  In *Gulf Oil*, the Supreme Court overturned an order limiting

communications with potential class members, stating that such an order "should be based on a

clear record and specific findings that reflect a weighing of the need for a limitation and the

potential interference with the rights of the parties."  *Id.* at 101.  Specifically, a court "may not

exercise the power without a specific record showing by the moving party of the particular

---

[10]     As an initial matter, the Adversary Proceeding plaintiffs have not filed a motion for relief under Rule 23(d), and there is no apparent basis for the Ad Hoc Group to request some form of relief under Rule 23(d) without filing a motion.

abuses by which it is threatened." *Id.* at 102 (quoting *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977) *cert denied*, 434 U.S. 985 (1977)).

29.     No such record is present here, and the Ad Hoc Group has failed entirely to make the necessary showing to warrant the limitation it seeks on the Debtors' right to communicate with unrepresented putative class members.[11]  Notably, the cases cited by the Ad Hoc Group that found a limitation on communications to be appropriate under Rule 23(d), did so on the basis that the offending party had engaged in secretive behavior outside of the court's purview, omitted basic information about the pending litigation and/or sought to affect the litigants' ability to continue to prosecute the litigation.  *See, e.g.*, *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1197-98 (11th Cir. 1985) (cited in Objection ¶¶ 38, 41) (defendant engaged in secretive telephone campaign during court's vacation to persuade potential class members to withdraw from class); *Pollar v. Judson Steel Corp.*, No. C 82-6833 MHP, 1984 WL 161273 (N.D. Cal. 1984) (cited in Objection ¶ 40) (notices published by defendants failed to disclose existence of law suit or nature of dispute); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1244-45 (N.D. Cal. 2000) (cited in Objection ¶ 38) (notices sent by law firms that had lost bid for lead counsel had appearance of official court notices and failed to disclose that court already had appointed another firm and party as lead counsel and lead plaintiff); *Turner v. Bernstein*, 768 A. 2d 24, 27-28 (Del. Ch. 2000) (cited in Objection ¶ 38) (defendants solicited affidavits from putative class members disavowing litigation in attempt to defeat class certification).  By contrast, the Debtors' Motion is the opposite of secretive – it was publicly filed, served on

---

[11]     Moreover, the type of relief sought by the Ad Hoc Group here – a bar on all direct contact by the Debtors to putative class members – goes well beyond *Gulf Oil*'s mandate that the relief sought should be "the narrowest possible relief which would protect the respective parties." *Gulf Oil Co.* 452 U.S. at 102 (quoting *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977)) *cert denied*, 434 U.S. 985, (1977)).

counsel to the Ad Hoc Group and seeks the Court's approval – and it provides and makes available information about the litigation with the Ad Hoc Group.[12]

30.     First, the Debtors do disclose in the Motion that the Ad Hoc Group's Complaint seeks turnover of <u>all</u> of the funds in the Trust to the Beneficiaries.  *See* Motion ¶ 13.  Moreover, as described in the Motion, rather than merely summarize the claims asserted in the Adversary Proceeding, the Debtors have posted the core pleadings from the Turnover Motion and the Adversary Proceeding on Epiq's Nortel website, prominently displayed under a heading "Deferred Compensation Pleadings."  As the Ad Hoc Group acknowledges, Objection ¶ 10, the Turnover Motion, which is included as part of the core pleadings, discloses the amount of funds held in the Trust as of the date of the Deferred Compensation Plan's termination.  The pleadings posted under "Deferred Compensation Pleadings" also include the Ad Hoc Group's objection to the Turnover Motion as well as the Complaint, both of which Beneficiaries are encouraged to review and both of which describe in detail the Ad Hoc Group's claims and defenses.

31.     While the Ad Hoc Group argues that Beneficiaries, including individuals who are not their clients, should not be allowed to consider settling their claims because they do not have access to every single document produced by the Debtors in the litigation, in fact each Beneficiary has direct knowledge of or access to information sufficient for him or her to consider whether to entertain a settlement proposal.  For example, each beneficiary knows his or her nominal deferred compensation account balances as of the Petition Date and on December 31, 2010 (the date the Plan was terminated).  The Beneficiaries can review the Complaint filed in the Adversary Proceeding, which sets forth the claims the Ad Hoc Group intends to pursue against the Debtors.  Indeed, while the Ad Hoc Group asserts that Beneficiaries cannot make an

---

[12]     The Motion is also not designed to interfere with the Ad Hoc Group's ability to continue the litigation; to the contrary, the Debtors are ready to move forward on the merits of the litigation, and voluntary settlements by individual Beneficiaries will not affect the ability of the litigation to proceed.

informed decision about a settlement proposal without access to the discovery documents produced by Debtors that are protected by a protective order, *see* Objection ¶ 39, the Ad Hoc Group acknowledges that the Complaint – which the Ad Hoc Group filed after the Debtors had completed their document production – contains allegations about the compensation levels of employees invited to participate in the Deferred Compensation Plan and also alleges that employees were allowed to participate in the Plan who failed to meet Plan thresholds and that the Debtors have insufficient compensation data as to certain plan years. *See* Objection ¶ 42. While the Debtors disagree with these allegations, they provide information that Beneficiaries can review in evaluating whether to accept any settlement proposal. Nor would access to protected documents produced by the Debtors be necessary or appropriate: as this Court previously found, the Debtors designated documents as highly confidential to protect the legitimate interests of the Debtors' employees and former employees in keeping their personal information and compensation information private. *See* Order With Respect To Motion Of Robert Horne, James Young And The Ad Hoc Group Of Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan To Compel Discovery From The Nortel Debtors [D.I. 6370].

  32.  Armed with all of this information and the ability to consult with counsel of their choosing if they so desire, individual Beneficiaries certainly may continue to be interested in entertaining the resolution of their claims through an allowed claim reflecting their nominal account balances as of the Petition Date, whether because their nominal account balances did not increase materially or at all after the Petition Date, or because they recognize that as part of participating in the Deferred Compensation Plan they acknowledged that any Trust assets would be part of the Debtors' general assets and subject to the claims of the Debtors' general creditors in the event of the Debtors bankruptcy, or because they previously monetized their claim at that

amount, or for any other reason personal to them. The Motion simply contemplates that, for such individual Beneficiaries as well as any others who are interested in fixing and monetizing their claims, the Debtors have a procedural vehicle for doing so on a voluntary basis, without prejudice to those who are not so inclined.[13]

33.    The Ad Hoc Group's argument that the Debtors fail to clarify that the Settlement Procedures will not result in the Debtors paying out claims immediately is similarly baseless. The Settlement Procedures only propose the granting of allowed claims, not the payment of such claims in cash, where such claims could then be sold on the claims trading market. *See* Motion ¶¶ 15, 17. While the Objection suggests that such claims only could be sold at "substantial discount," Objection ¶¶ 43, 47(c), individual Beneficiaries are best able to determine what amount, if any, they could obtain for an allowed claim and whether they believe any offer that reflects a discount from the face value of the claim adequately compensates them for their claims.[14] Nor was it misleading of the Debtors to assert that the ability to monetize claims by selling to claims traders would be "quick" and "expeditious." Given the fact that the litigation

---

[13]    The fact that prior settlement offers made by both sides have not been publicly disclosed similarly is a red herring. The simple fact is that mediation has not resulted in a settlement, and the Debtors have no obligation to extend any settlement offers to the Beneficiaries in the future, whether on terms that are the same, better or worse than any prior offers made to the Ad Hoc Group.

[14]    As for the Ad Hoc Group's argument that the Motion failed to disclose that Ad Hoc Group members' ability to monetize their claims would "be further reduced by contingent fees due to counsel to the Ad Hoc Group," in fact the counsel to the Ad Hoc Group – who freely casts criticisms about the Debtors' disclosures in this litigation – has filed engagement letters attached to the Rule 2019 that redact any mention of the fee arrangements and that were apparently contained in more than a full page of text and has refused to provide unredacted copies to the Debtors. *See* Exhibit 1 to Objection. Such redactions are wholly improper under Rule 2019 and applicable law. *See, e.g., Baron & Budd, P.C. v. Unsec. Asbestos Claimants Comm.*, 321 B.R. 147, 168-69 (D.N.J. 2005) (finding that fee arrangements may not be redacted under Rule 2019); *see also Montgomery Cnty. v. Microvote Corp.*, 175 F.3d 296, 304 (3d. Cir. 1999) ("The attorney-client privilege does not shield fee arrangements. . . . Furthermore, the fee agreement letter does not come within the ambit of the work-product privilege . . . and of course is not the opinion of a non-testifying expert.") (internal citations omitted); *In re Grand Jury Investigation*, 631 F.2d 17, 19 (3d Cir. 1980) ("Moreover, in the absence of unusual circumstances, the privilege does not shield the fact of retention, the identity of clients, and fee arrangements."); *In re Semel*, 411 F.2d 195, 197 (3d Cir. 1969); ("In the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship."). The Debtors reserve the right to seek production of the unredacted engagement letters at a later time.

with the Ad Hoc Group has been ongoing for nearly a year and a half and, accounting for any potential appeals could continue for months or years, it is not unreasonable, and certainly not misleading, to suggest that fixing Settling Beneficiaries' claims so that they can sell them to claims traders could be a quicker and more expeditious way of monetizing their claims than awaiting the resolution of the litigation with the Ad Hoc Group.

34.     Finally, as discussed above, the Ad Hoc Group's argument that the Beneficiaries "already have" an allowed claim, see, e.g., Objection ¶ 27, is simply not true.  As discussed above, the bar date orders entered into these cases require the filing of proofs of claims for deferred compensation claims because the Debtors designated the deferred compensation claims as unliquidated claims on their schedules filed in these cases.  Not every Beneficiary has filed such a proof of claim.  Even with respect to proofs of claims that have been filed, the claims objection and resolution process is still ongoing, and therefore, absent this Motion, each purported Beneficiary that filed a claim had no assurance that their individual claim will be allowed in the asserted amount or that any claim for deferred compensation could be monetized separately from any other claims that may have been asserted.  The Motion proposes procedures that would enable the Debtors to address these matters with Beneficiaries in a transparent and consistent manner, to the extent individual Beneficiaries so desire.

35.     In sum, given the current posture of the underlying litigation and considering the facts and circumstances regarding the litigation and the Motion in their entirety, free of the hyperbolic and baseless criticisms lodged by the Ad Hoc Group, the Motion sets forth a wholly proper proposal that is both appropriate and potentially beneficial to individual Beneficiaries, and which should be approved by the Court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant the Motion and the relief requested therein; (ii) enter the proposed order attached to the Motion; (iii) deny the Objection; and (iv) grant such other and further relief as it deems just and proper.

Dated:  July 6, 2012
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
David H. Herrington (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*