"Estate Fiduciaries"); and (xi) JPMorgan Chase Bank, N.A. as escrow and distribution agent under the Distribution Escrow Agreement (the "Distribution Agent"), entered into in connection with the North American ASA and the EMEA ASA (each as defined in the Distribution Escrow Agreement). Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

Reference is also made to that certain Authorization of Intermediate Distribution Account, Joint Instructions and Waiver of Security Procedures dated as of [●], 2012 (the "Intermediate Distribution Account Joint Instruction") executed by the Depositors, the Joint Administrators, the Estate Fiduciaries, and certain other affiliates of the Depositors, and delivered to the Distribution Agent contemporaneously with this joint instruction.

1. Waiver of Security Procedures

By signing below, (i) each of the Depositors, the Joint Administrators and the Estate Fiduciaries (the "Parties") acknowledges and agrees that the security procedures set forth in Schedule G attached to and referenced in Section 12 of the Distribution Escrow Agreement do not require the Distribution Agent to make telephone callbacks to all the Depositors and the Estate Fiduciaries as to the joint instruction (the "Instruction") set forth in paragraph 2 below, (ii) the Parties authorize the Distribution Agent to perform a single telephone callback to either of the individuals designated by the Parties as to the Instruction, and (iii) the Parties designate the following individuals to confirm the Instruction by telephone callback:

Name: Anna Ventresca
Telephone Number: 905-863-1204, or 905-536-2604

Name: Allan Bifield
Telephone Number: 905-863-6840, or 613-853-8077

Additionally, by signing below, each of the Depositors acknowledges and agrees that, except in the case of the Distribution Agent's gross negligence or willful misconduct, its indemnification of the Distribution Agent as set forth in Section 9 of the Distribution Escrow Agreement shall apply to the Distribution Agent's following of this Instruction and waiver of security procedures described herein.

2. Instructions to You as the Distribution Agent

Pursuant to Section 5(a)(i) of the Distribution Escrow Agreement, the Depositors and the Estate Fiduciaries hereby instruct the Distribution Agent to immediately disburse $14,850,000 out of the sale proceeds to the following intermediate distribution account established by the Distribution Agent in accordance with the Intermediate Account Distribution Account Joint Instructions:

2

Bank: JPMorgan Chase Bank, N.A.
Bank address: ●[2]
Account number: ●
Routing number: ●
Account name: ●

The Parties hereby instruct the Distribution Agent, if required by applicable law and solely to the extent necessary to reflect the transaction contemplated hereby, to amend any tax forms the Distribution Agent has previously delivered to any of the Parties or otherwise filed with any governmental authority in accordance with Section 4(a) of the Distribution Escrow Agreement, including, without limitation, IRS Forms 1099 and 1042-S.

Please acknowledge receipt of this Instruction by signing and returning the enclosed copy of this letter by email to Russell Eckenrod (reckenrod@cgsh.com) and Evan Cobb (Evan.Cobb@nortonrose.com) by [●], 2012.

Should you have any questions about this letter, please contact the Depositors at your earliest convenience.  Thank you for your assistance with this matter.

*[Signature pages follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

---

[2]    NTD: Should include information for intermediate JPM distribution account to be created (per JPM, account name may be assigned by Nortel).



# N**⊘**RTEL

[●], 2012

<u>**Via Facsimile (212.623.6168)**</u>

JPMorgan Chase Bank, N.A.
TS / Escrow Services
4 New York Plaza, 21st Floor
New York, New York 10004
Attn: Andy Jacknick
Phone: 212.623.0241

     Re:    <u>Joint Instruction and Waiver of Security Procedures – MSS Escrow Agreement</u>

Ladies and Gentlemen:

     Reference is made to that certain MSS Distribution Escrow Agreement dated as of March 11, 2011 (as amended, the "<u>Distribution Escrow Agreement</u>"), by and among (i) Nortel Networks Corporation ("<u>NNC</u>"); (ii) Nortel Networks Limited ("<u>NNL</u>"); (iii) Nortel Networks Inc. ("<u>NNI</u>", and together with NNC and NNL, the "<u>Main Sellers</u>"); (iv) each affiliate of the Main Sellers listed on <u>Schedule A</u> of the Distribution Escrow Agreement (the "<u>Other Sellers</u>"); (v) the companies listed on <u>Schedule B</u> of the Distribution Escrow Agreement (the "<u>EMEA Sellers</u>"), acting by Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively, the "<u>Joint Administrators</u>")) who act as agents for the EMEA Debtors (as defined in the Distribution Escrow Agreement); (vi) Nortel Networks S.A. (in administration) ("<u>NNSA</u>") acting by the French Liquidator (as defined in the Distribution Escrow Agreement) (NNSA, together with the Main Sellers, the Other Sellers and the EMEA Sellers, the "<u>Depositors</u>"); (vii) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with the CCAA Cases (the "<u>Monitor</u>"); (viii) the Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "<u>Committee</u>," and together with the Monitor, the "<u>Estate Fiduciaries</u>"); and (ix) JPMorgan Chase Bank, N.A., as escrow and distribution agent under the Distribution Escrow Agreement (the "<u>Distribution Agent</u>"), entered into in connection with the North American ASA and the EMEA ASA (each as defined in the Distribution Escrow Agreement). Capitalized terms used but not defined herein shall have the meanings given to them in the Distribution Escrow Agreement.

     Reference is also made to that certain Authorization of Intermediate Distribution Account, Joint Instructions and Waiver of Security Procedures dated as of [●], 2012 (the "<u>Intermediate Distribution Account Joint Instruction</u>") executed by the Depositors, the Joint

Administrators, the Estate Fiduciaries, and certain other affiliates of the Depositors, and delivered to the Distribution Agent contemporaneously with this joint instruction.

1. Waiver of Security Procedures

By signing below, (i) each of the Depositors, the Joint Administrators and the Estate Fiduciaries (the "Parties") acknowledges and agrees that the security procedures set forth in Schedule F attached to and referenced in Section 11 of the Distribution Escrow Agreement do not require the Distribution Agent to make telephone callbacks to all the Depositors and the Estate Fiduciaries as to the joint instruction (the "Instruction") set forth in paragraph 2 below, (ii) the Parties authorize the Distribution Agent to perform a single telephone callback to either of the two individuals designated by the Parties as to the Instruction, and (iii) the Parties designate the following individuals to confirm the Instruction by telephone callback:

> Name: Anna Ventresca
> Telephone Number: 905-863-1204, or 905-536-2604
>
> Name: Allan Bifield
> Telephone Number: 905-863-6840, or 613-853-8077

Additionally, by signing below, each of the Depositors acknowledges and agrees that, except in the case of the Distribution Agent's gross negligence or willful misconduct, its indemnification of the Distribution Agent as set forth in Section 9 of the Distribution Escrow Agreement shall apply to the Distribution Agent's following of this Instruction and waiver of security procedures described herein.

2. Instructions to You as the Distribution Agent

Pursuant to Section 5(a)(i) of the Distribution Escrow Agreement, the Depositors and the Estate Fiduciaries hereby instruct the Distribution Agent to immediately disburse $850,000 out of the sale proceeds to the following intermediate distribution account established by the Distribution Agent in accordance with the Intermediate Account Distribution Account Joint Instructions:

> Bank: JPMorgan Chase Bank, N.A.
> Bank address: ●[1]
> Account number: ●
> Routing number: ●
> Account name: ●

The Parties hereby instruct the Distribution Agent, if required by applicable law and solely to the extent necessary to reflect the transaction contemplated hereby, to amend any tax forms the Distribution Agent has previously delivered to any of the Parties or otherwise filed

---

[1]    NTD: Should include information for intermediate JPM distribution account to be created (per JPM, account name may be assigned by Nortel).

with any governmental authority in accordance with Section 4(a) of the Distribution Escrow Agreement, including without limitation IRS Forms 1099 and 1042-S.

Please acknowledge receipt of this Instruction by signing and returning the enclosed copy of this letter by email to Russell Eckenrod (reckenrod@cgsh.com) and Evan Cobb (Evan.Cobb@nortonrose.com) by [●], 2012.

Should you have any questions about this letter, please contact the Depositors at your earliest convenience.  Thank you for your assistance with this matter.

*[Signature pages to follow.]*

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

3

**APPENDIX G**

Form of Intermediate Distribution Account Release Instruction



# N⬡RTEL

[●], 2012

<u>**Via Facsimile (212.623.6168)**</u>

JPMorgan Chase Bank, N.A.
TS / Escrow Services
4 New York Plaza, 21st Floor
New York, New York 10004
Attn: Andy Jacknick
Phone: 212.623.0241

> Re:     <u>Authorization of Intermediate Distribution Account, Joint Instruction and Waiver of Security Procedures</u>

Ladies and Gentlemen:

Reference is made to:

1.  That certain MEN Distribution Escrow Agreement dated as of March 19, 2010 (as amended, the "<u>MEN Distribution Escrow Agreement</u>"), by and among (i) Nortel Networks Corporation ("<u>NNC</u>"), (ii) Nortel Networks Limited ("<u>NNL</u>"), (iii) Nortel Networks Inc. ("<u>NNI</u>" and, together with NNC and NNL, the "<u>Main Sellers</u>"), (iv) the Additional U.S. Debtors (as defined in the Distribution Escrow Agreement) and other affiliates of the Main Sellers listed on <u>Schedule A</u> of the Distribution Escrow Agreement but excluding Nortel Networks de Colombia S.A.[1] (collectively, the "<u>MEN Other Sellers</u>"), (v) the companies listed on <u>Schedule B</u> of the Distribution Escrow Agreement (the "<u>MEN EMEA Sellers</u>" and, together with the MEN Main Sellers and the MEN Other Sellers, the "<u>MEN Sellers</u>"), acting by their joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration), for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively, the "<u>Joint Administrators</u>")) who act as agents for the EMEA Debtors (as defined in the Distribution Escrow Agreement), (vi) Nortel Networks S.A. (In Administration) ("<u>NNSA</u>") acting by the NNSA Office Holders (as defined in the Distribution Escrow Agreement), (vii) each affiliate of the Main Sellers listed on <u>Schedule C</u> of the Distribution Escrow Agreement (each such entity, an "<u>MEN North American ALT Selling Debtor</u>"), (viii) each affiliate of the EMEA Sellers listed on <u>Schedule D</u> of the Distribution Escrow Agreement (each such entity an "<u>MEN EMEA ALT Selling Debtor</u>" and, together with the MEN Sellers, NNSA, and the MEN North American ALT Selling Debtors, the "<u>MEN

---

[1]     Pursuant to orders of the U.S. Bankruptcy Court and the Canadian Court dated June 21, 2011, any term or condition of the Distribution Escrow Agreement that explicitly or implicitly requires the consent or participation of Nortel Networks de Colombia S.A. is now forever deemed to be not required.

Depositors"), (ix) Ernst & Young Inc. as the court-appointed Monitor of the Canadian Debtors in connection with the CCAA Cases (the "<u>Monitor</u>"), (x) the Official Committee of Unsecured Creditors as representative for the unsecured creditors of the U.S. Debtors (the "<u>Committee</u>", and together with the Monitor, the "<u>Estate Fiduciaries</u>" and, together with the MEN Depositors, the "<u>MEN Escrow Parties</u>"), and (xi) JPMorgan Chase Bank, N.A. as escrow and distribution agent under the Distribution Escrow Agreement (the "<u>Distribution Agent</u>");

2.    That certain GSM/GSM-R Distribution Escrow Agreement , dated as of March 31, 2010 (as amended, the "<u>GSM/GSM-R Distribution Escrow Agreement</u>"), by and among (i) the Main Sellers, (ii) the affiliates of the Main Sellers listed on <u>Schedule A</u> of the GSM/GSM-R Distribution Escrow Agreement (the "<u>GSM/GSM-R Other Sellers</u>"), (iii) the companies listed on <u>Schedule B</u> of the Distribution Escrow Agreement (the "<u>GSM/GSM-R EMEA Sellers</u>"), acting by the Joint Administrators, (iv) NNSA, acting by the French Office Holders, (v) Nortel Networks (Asia) Limited ("<u>NN Asia</u>"), (vi) the affiliates of the Main Sellers listed on <u>Schedule C</u> of the Distribution Escrow Agreement (each such entity, a "<u>GSM/GSM-R North American ALT Selling Debtor</u>"), (vii) the affiliates of the EMEA Sellers listed on <u>Schedule D</u> of the Distribution Escrow Agreement (each such entity, an "<u>GSM/GSM-R EMEA ALT Selling Debtor</u>," and together with the GSM/GSM-R Main Sellers, the GSM/GSM-R Other Sellers, the GSM/GSM-R EMEA Sellers, NNSA, NN Asia and the GSM/GSM-R North American ALT Selling Debtors, the "<u>GSM/GSM-R Depositors</u>"), (viii) the Estate Fiduciaries (together with the GSM/GSM-R Depositors, the "<u>GSM/GSM-R Escrow Parties</u>"), and (x) the Distribution Agent;

3.    That certain CVAS Distribution Escrow Agreement, dated as of May 27, 2010 (as amended, the "<u>CVAS Distribution Escrow Agreement</u>"), by and among (i) the Main Sellers, (ii) the affiliates of the Main Sellers listed on <u>Schedule A</u> of the CVAS Distribution Escrow Agreement (the "<u>CVAS Other Sellers</u>"), (iii) the companies listed on <u>Schedule B</u> of the CVAS Distribution Escrow Agreement (the "<u>CVAS EMEA Sellers</u>"), acting by the Joint Administrators, (iv) NNSA, acting by the French Liquidator (as defined in the CVAS Distribution Escrow Agreement)(together with the CVAS Main Sellers, the CVAS Other Sellers and the CVAS EMEA Sellers, the "<u>CVAS Depositors</u>"), (v) the Estate Fiduciaries (together with the CVAS Depositors, the "<u>CVAS Escrow Parties</u>"), and (vi) the Distribution Agent;

4.    That certain MSS Distribution Escrow Agreement, dated as of March 11, 2011 (as amended, the "<u>MSS Distribution Escrow Agreement</u>"), by and among (i) the Main Sellers, (ii) the affiliates of the Main Sellers listed on <u>Schedule A</u> of the MSS Distribution Escrow Agreement (the "<u>MSS Other Sellers</u>"), (iii) the companies listed on <u>Schedule B</u> of the MSS Distribution Escrow Agreement (the "<u>MSS EMEA Sellers</u>"), acting by the Joint Administrators, (iv) NNSA, acting by the French Liquidator, (together with the MSS Main Sellers, the MSS Other Sellers and the MSS EMEA Sellers, the "<u>MSS Depositors</u>"), (v) the Estate Fiduciaries (together with the CVAS Depositors, the "<u>MSS Escrow Parties</u>"), and (vi) the Distribution Agent;

5.    That certain Escrow Agreement, dated as of December 18, 2009 (as amended, the "<u>Enterprise Distribution Escrow Agreement</u>"), by and among (i) the Main Sellers, (ii) the affiliates of the Main Sellers listed on <u>Schedule A</u> <u>Parts 1 and 2</u> of the Enterprise Distribution Escrow Agreement (the "<u>Enterprise Other Sellers</u>" and, together with the Main Sellers, the

2

"<u>Enterprise Sellers</u>"), (iii) the companies listed on <u>Schedule B</u> <u>Part 1</u> of the Enterprise Distribution Escrow Agreement (the "<u>Enterprise EMEA Filed Entities</u>"), which are acting by the Joint Administrators, (iv) NNSA, acting by the French Liquidator, (v) the companies listed on <u>Schedule B</u> <u>Part 2</u> of the Enterprise Distribution Escrow Agreement (the "<u>Enterprise EMEA Non-Filed Entities</u>", and together with the Enterprise EMEA Filed Entities, the Main Sellers and the Enterprise Other Sellers, the "<u>Enterprise Depositors</u>"), (v)i the Estate Fiduciaries (together with the Enterprise Depositors, the "<u>Enterprise Escrow Parties</u>"), and (vii) the Distribution Agent;

6.    That certain GSM Retained Contracts Distribution Escrow Agreement dated as of June 3, 2010 (as amended, the "<u>GSM Retained Distribution Escrow Agreement</u>"), by and among (i) NNL, (ii) NNI, and (iii) Nortel Networks (CALA) Inc. (together with NNL and NNI, the "<u>GSM Retained Main Sellers</u>"), (iv) the affiliates of the Main Sellers listed on Schedule A to the GSM Retained Distribution Escrow Agreement (the "<u>GSM Retained Other Sellers</u>" and, together with the Main Sellers, the "<u>GSM Retained Depositors</u>"), (v) the Estate Fiduciaries (together with the GSM Retained Depositors, the "<u>GSM Retained Escrow Parties</u>"), and (vi) the Distribution Agent;

7.    That certain CDMA/LTE Escrow Agreement dated as of November 11, 2009, (the "<u>CDMA Distribution Escrow Agreement</u>" and, together with the GSM/GSM-R Distribution Escrow Agreement, the CVAS Distribution Escrow Agreement, the MSS Distribution Escrow Agreement, the MEN Distribution Escrow Agreement, the Enterprise Distribution Escrow Agreement, and the GSM Retained Distribution Escrow Agreement, the "<u>Distribution Escrow Agreements</u>") by and among (i) the Main Sellers, (ii) the companies set out in Schedule A to the CDMA Distribution Escrow Agreement (the "<u>CDMA EMEA Filed Entities</u>"), which are acting by the Joint Administrators (the CDMA EMEA Filed Entities, collectively with the Main Sellers, being the "<u>CDMA Depositors</u>" and, together with the GSM/GSM-R Depositors, the CVAS Depositors, the MSS Depositors, the MEN Depositors, the Enterprise Depositors, and the GSM Retained Depositors, the "<u>Depositors</u>"), (iii) the Estate Fiduciaries (together with the CDMA Depositors, the "<u>CDMA Escrow Parties</u>" and, together with the GSM/GSM-R Escrow Parties, the CVAS Escrow Parties, the MSS Escrow Parties, the MEN Escrow Parties, the Enterprise Escrow Parties, and the GSM Escrow Parties, the "<u>Escrow Parties</u>")), and (iv) the Distribution Agent;

8.    That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "<u>GSM/GSM-R Release Instruction</u>") executed by the GSM/GSM-R Escrow Parties and delivered to the Distribution Agent contemporaneously with this Joint Instruction and Waiver of Security Procedures (the "<u>Instruction</u>");

9.    That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "<u>CVAS Release Instruction</u>") executed by the CVAS Escrow Parties and delivered to the Distribution Agent contemporaneously with this Instruction;

10. That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "<u>MSS Release Instruction</u>") executed by the MSS Escrow Parties and delivered to the Distribution Agent contemporaneously with this Instruction;

11. That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "MEN Release Instruction") executed by the MEN Escrow Parties and delivered to the Distribution Agent contemporaneously with this Instruction;

12. That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "Enterprise Release Instruction") executed by the Enterprise Escrow Parties and delivered to the Distribution Agent contemporaneously with this Instruction;

13. That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "CDMA Release Instruction") executed by the CDMA Escrow Parties and delivered to the Distribution Agent contemporaneously with this Instruction;

14. That certain Joint Instruction and Waiver of Security Procedures dated as of [●], 2012 (the "GSM Retained Release Instruction" and, together with the GSM/GSM-R Release Instruction, the CVAS Release Instruction, the MSS Release Instruction, the MEN Release Instruction, the Enterprise Release Instruction, and the GSM Retained Release Instruction, the "Release Instructions") executed by the GSM Retained Escrow Parties and delivered to the Distribution Agent contemporaneously with this Instruction.

1. Authorization of Intermediate Distribution Account

By signing below, each of the Depositors, the Joint Administrators and the Estate Fiduciaries (the "Parties") acknowledge and agree that the Distribution Agent is authorized to establish a noninterest-bearing account (the "Intermediate Distribution Account") and, in accordance with the terms of the Release Instructions, to deposit certain funds (the "Intermediate Distribution Account Funds") from the accounts corresponding to the Distribution Escrow Agreements (the "Distribution Escrow Accounts") into the Intermediate Distribution Account in accordance with the Release Instructions. The Parties acknowledge and agree that the Distribution Agent is hereby authorized to establish the Intermediate Distribution Account and deposit certain funds from the Distribution Escrow Accounts into the Intermediate Distribution Account in accordance with the Release Instructions notwithstanding any provision of the Escrow Agreements, including, without limitation, with respect to commingling of escrowed funds or investment guidelines. The Parties waive any rights to the Intermediate Distribution Account Funds, including the right to direct payment of the Intermediate Distribution Account Funds, except as provided in this Instruction.

This Instruction is provided in connection with the Allocation Settlement Agreement (APAC/CALA) (as amended, the "Settlement Agreement"), dated as of [●], 2012 between, among others, the Depositors, the Estate Fiduciaries and the Joint Administrators. In the event that you receive written notice from any of the Contact Persons (as defined below) that the Settlement Agreement is terminated prior to the transmission of the Intermediate Distribution Escrow Funds from the Intermediate Distribution Account, then the Depositors and the Estate Fiduciaries hereby direct you to return the Intermediate Distribution Escrow Funds to the accounts from which they were transferred pursuant to the Release Instructions.

2. Waiver of Security Procedures

4

By signing below, (i) each of the Parties acknowledges and agrees that the security procedures set forth in the applicable schedules as attached to the Distribution Escrow Agreements do not require the Distribution Agent to make telephone callbacks to all the Depositors and the Estate Fiduciaries as to this Instruction, (ii) the Parties authorize the Distribution Agent to perform a single telephone callback to any of the individuals designated by the Parties as to this Instruction, and (iii) the Parties designate the following individuals (the "Contact Persons") to confirm this Instruction by telephone callback:

> Name:  Anna Ventresca
> Telephone Number:  905-863-1204, or 905-536-2604

> Name:  Allan Bifield
> Telephone Number:  905-863-6840, or 613-853-8077

> Name: Timothy Ross
> Telephone Number:  919-905-2721

Additionally, by signing below, each of the Depositors acknowledges and agrees that, except in the case of the Distribution Agent's gross negligence or willful misconduct, its indemnification of the Distribution Agent as set forth in the applicable provisions of each Distribution Escrow Agreement to which it is a party shall apply to the Distribution Agent's following of this Instruction and the waiver of security procedures described herein.

3.  Instructions to You as the Distribution Agent

Upon the deposit of all Intermediate Distribution Account Funds from the Distribution Escrow Accounts in the Intermediate Distribution Account (which account shall be [**Insert Account Information**]), the Depositors and the Estate Fiduciaries hereby instruct the Distribution Agent to immediately disburse, out of the Intermediate Distribution Account, the following amounts[2] in accordance with the wire transfer instructions in the table below:[3]

| Recipient (Party name) | Account Information | Dollar Amount |
|---|---|---|
| Nortel Networks (Asia) Limited, Taiwan Branch | Bank name:      [●]<br>Bank address:    [●]<br>Account number: [●]<br>Account name:    [●]<br>SWIFT Code:    [●] | $[●] |
| Nortel Networks Australia | Bank name:      [●]<br>Bank address:    [●]<br>Account number: [●]<br>Account name:    [●]<br>SWIFT Code:    [●] | $[●] |

---

[2]      NTD: Aggregate disbursements shall total $44,900,000.
[3]      NTD: Shall include the amounts and recipients as currently contained in Schedule B to the Settlement Agreement.

5

| | | |
|---|---|---|
| Nortel Networks Malaysia Sdn. Bhd. | Bank name:       [●]<br>Bank address:     [●]<br>Account number: [●]<br>Account name:    [●]<br>SWIFT Code:      [●] | $[●] |
| Nortel Networks (India) Private Limited | Bank name:       [●]<br>Bank address:     [●]<br>Account number: [●]<br>Account name:    [●]<br>SWIFT Code:      [●] | $[●] |
| PT Nortel Networks Indonesia | Bank name:       [●]<br>Bank address:     [●]<br>Account number: [●]<br>Account name:    [●]<br>SWIFT Code:      [●] | $[●] |
| Nortel Networks Japan | Bank name:       [●]<br>Bank address:     [●]<br>Account number: [●]<br>Account name:    [●]<br>SWIFT Code:      [●] | $[●] |
| Nortel Networks New Zealand Limited | Bank name:       [●]<br>Bank address:     [●]<br>Account number: [●]<br>Account name:    [●]<br>SWIFT Code:      [●] | $[●] |
| Nortel Networks (Thailand) Limited | Bank name:       [●]<br>Bank address:     [●]<br>Account number: [●]<br>Account name:    [●]<br>SWIFT Code:      [●] | $[●] |
| Nortel Networks Limited | Bank name:       [●]<br>Bank address:     [●]<br>Account number: [●]<br>Account name:    [●]<br>SWIFT Code:      [●] | $[●] |
| Nortel Networks International Corporation | Bank name:       [●]<br>Bank address:     [●]<br>Account number: [●]<br>Account name:    [●]<br>SWIFT Code:      [●] | $[●] |
| Nortel Networks Global Corporation | Bank name:       [●]<br>Bank address:     [●]<br>Account number: [●] | $[●] |

6

| | | |
|---|---|---|
| | Account name:   [⬤] <br> SWIFT Code:   [⬤] | |
| Nortel Networks Inc. | Bank name:       [⬤] <br> Bank address:    [⬤] <br> Account number: [⬤] <br> Account name:   [⬤] <br> SWIFT Code:   [⬤] | $[⬤] |
| Nortel Networks Application Management Solutions Inc. | Bank name:       [⬤] <br> Bank address:    [⬤] <br> Account number: [⬤] <br> Account name:   [⬤] <br> SWIFT Code:   [⬤] | $[⬤] |
| Nortel Altsystems Inc. | Bank name:       [⬤] <br> Bank address:    [⬤] <br> Account number: [⬤] <br> Account name:   [⬤] <br> SWIFT Code:   [⬤] | $[⬤] |
| Nortel Networks S.A. | Bank name:       [⬤] <br> Bank address:    [⬤] <br> Account number: [⬤] <br> Account name:   [⬤] <br> SWIFT Code:   [⬤] | $[⬤] |
| Nortel Networks France S.A.S. | Bank name:       [⬤] <br> Bank address:    [⬤] <br> Account number: [⬤] <br> Account name:   [⬤] <br> SWIFT Code:   [⬤] | $[⬤] |
| Nortel Networks (Ireland) Limited | Bank name:       [⬤] <br> Bank address:    [⬤] <br> Account number: [⬤] <br> Account name:   [⬤] <br> SWIFT Code:   [⬤] | $[⬤] |
| Nortel Networks BV | Bank name:       [⬤] <br> Bank address:    [⬤] <br> Account number: [⬤] <br> Account name:   [⬤] <br> SWIFT Code:   [⬤] | $[⬤] |
| Nortel Networks Hispania, SA | Bank name:       [⬤] <br> Bank address:    [⬤] <br> Account number: [⬤] <br> Account name:   [⬤] <br> SWIFT Code:   [⬤] | $[⬤] |
| Nortel Networks UK Limited | Bank name:       [⬤] <br> Bank address:    [⬤] <br> Account number: [⬤] <br> Account name:   [⬤] | $[⬤] |

7

| | SWIFT Code: [●] | |
|---|---|---|
| Nortel Networks Inc Dubai | Bank name:     [●]<br>Bank address:   [●]<br>Account number: [●]<br>Account name:   [●]<br>SWIFT Code:    [●] | $[●] |
| Nortel Networks de Argentina S.A. | Bank name:     [●]<br>Bank address:   [●]<br>Account number: [●]<br>Account name:   [●]<br>SWIFT Code:    [●] | $[●] |
| Nortel Networks Chile S.A. | Bank name:     [●]<br>Bank address:   [●]<br>Account number: [●]<br>Account name:   [●]<br>SWIFT Code:    [●] | $[●] |
| Nortel Networks del Ecuador S.A. | Bank name:     [●]<br>Bank address:   [●]<br>Account number: [●]<br>Account name:   [●]<br>SWIFT Code:    [●] | $[●] |
| Nortel Networks de Guatemala Ltda | Bank name:     [●]<br>Bank address:   [●]<br>Account number: [●]<br>Account name:   [●]<br>SWIFT Code:    [●] | $[●] |
| Nortel Networks de México, S.A. de C.V. | Bank name:     [●]<br>Bank address:   [●]<br>Account number: [●]<br>Account name:   [●]<br>SWIFT Code:    [●] | $[●] |
| Nortel Networks Perú S.A.C. | Bank name:     [●]<br>Bank address:   [●]<br>Account number: [●]<br>Account name:   [●]<br>SWIFT Code:    [●] | $[●] |
| Nortel Networks del Uruguay S.A. | Bank name:     [●]<br>Bank address:   [●]<br>Account number: [●]<br>Account name:   [●]<br>SWIFT Code:    [●] | $[●] |

The Parties hereby instruct the Distribution Agent, if required by applicable law and solely to the extent necessary to reflect the transaction contemplated hereby, to amend any tax forms the Distribution Agent has previously delivered to any of the Parties or otherwise filed

8

with any governmental authority in accordance with Section 4(a) of the Distribution Escrow Agreement, including, without limitation, IRS Forms 1099 and 1042-S.

    4.  <u>Governing Law and Jurisdiction</u>

      This Instruction shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

      To the fullest extent permitted by applicable law, each Party agrees that the provisions of the Settlement Agreement relating to jurisdiction shall apply *mutatis mutandis* to this instruction.

      Please acknowledge receipt of this joint instruction by signing and returning the enclosed copy of this letter by mail, email or fax to Russell Eckenrod (reckenrod@cgsh.com) and Evan Cobb (evan.cobb@nortonrose.com) by [●], 2012.

      Should you have any questions about this letter, please contact the Depositors at your earliest convenience.  Thank you for your assistance with this matter.

*[Signature pages follow.]*[4]

**Copy to**:

The Bondholder Group
c/o Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Attn: Albert A. Pisa and Roland Hlawaty
Phone: 212.530.5000
Via Facsimile: 212.822.5735

---

[4]    NTD: Will include signature pages for the Depositors, the Joint Administrators and the Estate Fiduciaries implicit in definitions.

9

**Schedule 1**

**Canadian Debtors**

1.  Nortel Networks Corporation

2.  Nortel Networks Limited

3.  Nortel Networks Global Corporation

4.  Nortel Networks International Corporation

5.  Nortel Networks Technology Corporation

**Schedule 2**

**US Debtors**

1.  Nortel Networks Inc.

2.  Architel Systems (U.S.) Corporation

3.  CoreTek, Inc.

4.  Nortel Altsystems, Inc. (previously "Alteon WebSystems, Inc.")

5.  Nortel Altsystems International Inc. (previously "Alteon WebSystems International, Inc.")

6.  Nortel Networks Applications Management Solutions Inc.

7.  Nortel Networks Cable Solutions Inc.

8.  Nortel Networks Capital Corporation

9.  Nortel Networks (CALA) Inc.

10. Nortel Networks HPOCS Inc.

11. Nortel Networks International Inc.

12. Nortel Networks Optical Components Inc.

13. Northern Telecom International Inc.

14. Qtera Corporation

15. Sonoma Systems

16. Xros, Inc.

**Schedule 3**
**EMEA Debtors**

1.  Nortel Networks UK Limited (In Administration)

2.  Nortel Networks (Ireland) Limited (In Administration)

3.  Nortel Networks NV (In Administration)

4.  Nortel Networks SpA (In Administration)

5.  Nortel Networks BV (In Administration)

6.  Nortel Networks Polska Sp z.o.o. (In Administration)

7.  Nortel Networks Hispania, SA (In Administration)

8.  Nortel Networks (Austria) GmbH (In Administration)

9.  Nortel Networks sro (In Administration)

10. Nortel Networks Engineering Services Kft (In Administration)

11. Nortel Networks Portugal SA (In Administration)

12. Nortel Networks Slovensko, sro (In Administration)

13. Nortel Networks Romania Srl (In Administration)

14. Nortel GmbH (In Administration)

15. Nortel Networks Oy (In Administration)

16. Nortel Networks AB (In Administration)

17. Nortel Networks International Finance & Holding BV (In Administration)

18. Nortel Networks France S.A.S. (In Administration)

**APPENDIX H**

Form of Full and Final Acknowledgement and Release (Paraguay)

EXECUTION VERSION

## FULL AND FINAL ACKNOWLEDGMENT AND RELEASE
### (PARAGUAY)

      This full and final acknowledgment and release (the "**Agreement**") dated as of the 22nd day of March, 2012 is given by Nortel Networks del Paraguay S.A. (in liquidation) ("**Nortel Paraguay**") in favour of Nortel Networks Corporation ("**NNC**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Inc. ("**NNI**"), Nortel Networks UK Limited (In Administration) ("**NNUK**") and those other parties listed on Schedule A hereto (NNC, NNL, NNI, NNUK and those parties listed on Schedule A are collectively referred to herein as the "**Nortel Parties**").

RECITALS:

      **WHEREAS**, Nortel Paraguay is a majority owned subsidiary of NNL;

      **WHEREAS** on or about December 29, 2009, Nortel Paraguay entered into liquidation proceedings and Hugo Berkemeyer was appointed as liquidator of Nortel Paraguay (the "**Liquidator**");

      **WHEREAS** NNL, NNI, Nortel Networks (CALA) Inc. and other parties including Nortel Paraguay (the "**GSM Retained Contracts Sellers**") entered into an asset sale agreement dated as of May 11, 2010 with Telefonaktiebolaget L. M. Ericsson (Publ), as purchaser ("**Ericsson**"), for the assignment of certain contracts by the GSM Retained Contracts Sellers to Ericsson (the "**GSM Retained Contracts Sale**");

      **WHEREAS** pursuant the GSM Retained Contracts Sale, Nortel Paraguay partially assigned certain of its rights under a bundled contract and pursuant to such assignment, Ericsson assumed the outstanding warranty obligations under such contract;

      **WHEREAS** in connection with the GSM Retained Contracts Sale, the GSM Retained Contracts Sellers executed a deposit escrow agreement (the "**GSM Retained Contracts Escrow Agreement**") with JPMorgan Chase Bank, N.A., as distribution agent (the "**Escrow Agent**") for the deposit of the sale proceeds (the "Sale Proceeds") from the GSM Retained Contracts Sale;

      **WHEREAS** Nortel Paraguay was not a party to any of the other transactions pursuant to which various of the Nortel Parties have sold their business and assets to third party buyers (the "Global Sales");

      **WHEREAS** Nortel Paraguay has agreed to provide certain acknowledgements and releases set out herein in order to facilitate the settlement of certain matters relating to the allocation of sale proceeds under various of the Global Sales (the agreement reflecting such settlement, the ("**APAC/CALA Settlement Agreement**")

NOW THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED, THE PARTIES HEREBY AGREE AS FOLLOWS:

## ARTICLE I – ACKNOWLEDGEMENT RE SALE PROCEEDS

1.1     **Acknowledgement regarding Sale Proceeds**

Nortel Paraguay hereby acknowledges and agrees as follows:

    (a)     Notwithstanding the fact that it was a party to the GSM Retained Contracts Sale and the GSM Retained Contracts Escrow Agreement, Nortel Paraguay has no entitlement to any of the Sale Proceeds.

    (b)     Nortel Paraguay shall, simultaneously with the execution and delivery of this Agreement, execute and deliver an amendment to the GSM Retained Contracts Escrow Agreement substantially in the form attached as **Exhibit A** hereto to remove all references to Nortel Paraguay as a Depositor (as such term is defined in the GSM Retained Contracts Escrow Agreement) or otherwise, such that upon execution of such amendment Nortel Paraguay shall immediately and irrevocably cease to be a Depositor under the GSM Retained Contracts Escrow Agreement for any and all purposes and shall have no further rights or obligations under the GSM Retained Contracts Escrow Agreement (the "**Escrow Amendment**"), and that any term or condition of the GSM Retained Contracts Escrow Agreement that explicitly or implicitly requires the consent or participation of Nortel Paraguay shall be forever deemed not to require such consent or participation.  For the avoidance of doubt, Nortel Paraguay agrees that the Escrow Agent is authorized to take all acts requiring the unanimous direction of the Depositors under the GSM Retained Contracts Escrow Agreement without the consent or participation of Nortel Paraguay.

    (c)     Nortel Paraguay shall, simultaneously with the execution and delivery of this Agreement, execute and deliver to the Escrow Agent, escrow release instructions substantially in the forms attached as **Exhibit B** hereto (the "**Escrow Release Instructions**") relating to the APAC/CALA Settlement Agreement, it being understood and agreed that Nortel Paraguay will not be receiving any amounts pursuant to such Escrow Release Instructions.

    (d)     Without limiting those obligations set out herein, Nortel Paraguay covenants and agrees to use commercially reasonable efforts to effect the outcomes described herein including, without limitation, promptly executing and delivering any further documentation that may be required by the Escrow Agent.

    (e)     For the purpose of this Article VI, "Business Day" shall mean a day that is not a Saturday, Sunday or national public holiday in Canada, the United States or any part of the United Kingdom.

2

## ARTICLE II – RELEASES

2.1    **Release**

(a)    Nortel Paraguay hereby releases each of the  Nortel Parties and each of their respective directors, officers, employees, agents, attorneys, advisors, predecessors, successors and assigns (collectively, the "**Releasees**") from (x) any and all claims, rights, debts, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, whether sounding in contract, tort or otherwise (collectively "**Claims**"), that Nortel Paraguay now has, had, or may have against any of the Releasees up to the date of this Agreement, including, without limitation, (i) in respect of Sale Proceeds, (ii) in respect of proceeds of sale arising from any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates including, without limitation, pursuant to the GSM Retained Contracts Sale; and (y) any and all Claims in respect of any proceeds of sale of any future divestiture of assets by or on behalf of a Nortel Party or any of its affiliates other than those in which Nortel Paraguay participates (collectively, the "**Released Claims**") and agrees that it shall not allege, file or otherwise assert any Released Claim against the Releasees or the Escrow Agent, or any of them, including in respect of an entitlement to or the allocation of Sale Proceeds or any other proceeds of sale in connection with any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates that has occurred or that may occur, or allege, file or otherwise assert a Claim against either the Releasees or any person which could result in a claim over or right of contribution or indemnity against any of the Releasees in respect of the Released Claims or that could otherwise impact upon a Releasee's entitlement to or the allocation of Sale Proceeds or any other proceeds of sale in connection with any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates that has occurred or that may occur.   Nortel Paraguay agrees that it is hereby prohibited from participating in any court proceeding, mediation or other proceeding or discussion to resolve the allocation of Sale Proceeds or any other proceeds of sale in connection with any other divestiture of assets by or on behalf of a Nortel Party or any of its affiliates that has occurred or that may occur.

2.2    Notwithstanding anything to the contrary in this Agreement, Nortel Paraguay covenants and agrees, if requested to do so, to enter into any license termination agreement with respect to the licenses and rights granted by other Nortel Parties for no further consideration; provided that, Nortel Paraguay shall, in exchange for such license termination, receive a sublicense from the relevant Nortel Party that provides reasonably equivalent rights to the terminated licenses and rights.

## ARTICLE III – REPRESENTATIONS AND WARRANTIES

3.1    **Representations and Warranties of the Parties**

Nortel Paraguay hereby represents and warrants, as of the date hereof:

(a)    it has the power and authority to enter into this Agreement and to carry out its obligations hereunder;

(b)    the execution of this Agreement, and the consummation of the transactions contemplated herein, have been authorized by all necessary approvals, and no other act or proceeding on its part is necessary to authorize the execution of this Agreement; and

(c)    this Agreement has been duly executed by it and constitutes a legal, valid and binding obligation of such Party that is enforceable against it under all applicable laws and regulations.

## ARTICLE IV – MISCELLANEOUS

4.1    **Governing Law and Jurisdiction**

(a)    This Agreement shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

(b)    To the fullest extent permitted by applicable law, Nortel Paraguay (i) agrees to submit to the jurisdiction of the US and Canadian Courts (including for purposes of a joint hearing conducted under the cross-border insolvency protocol, as amended and as the same may be further amended, approved by the US and Canadian Courts in their respective proceedings (the "**Cross-Border Protocol**")), for purposes of all legal proceedings to the extent relating to the matters agreed in this Agreement; (ii) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever to the extent relating to the matters in this Agreement must be commenced in (w) a joint hearing of both the Canadian and US Courts conducted under the Cross-Border Protocol if such claim, action or proceeding would affect any of the Canadian Debtors (as set out on Schedule A hereto) and any of the US Debtors (as set out on Schedule A hereto), (x) the US Court for any claim, action or proceeding if such claim, action or proceeding would affect the US Debtors and not affect the Canadian Debtors, (y) the Canadian Court if such claim, action or proceeding would affect

the Canadian Debtors, but not affect the US Debtors, or (z) the courts of England and Wales if such claim, action or proceeding would affect the EMEA Debtors (as set out on Schedule A hereto), but not affect the US Debtors or the Canadian Debtors; (iii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such action brought in such a court or any claim that any such action brought in such a court has been brought in an inconvenient forum; (iv) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by law shall be valid and sufficient service thereof; and (v) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.

4.2     **Binding; Successors and Assigns**

Except as otherwise expressly provided in this Agreement, all representations, warranties, covenants and agreements set forth in this Agreement by or on behalf of Nortel Paraguay hereto will be binding upon and inure to the benefit of Nortel Paraguay, the Liquidator and either of their successors and permitted assigns, including, without limitation, any further administrator, liquidator, trustee, receiver appointed as a successor or assign of Nortel Paraguay.

4.3     **Specific Performance**

Nortel Paraguay agrees that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. Accordingly, in addition to any other remedies to which the Nortel Parties are entitled at law or in equity, each of the Nortel Parties shall be entitled to equitable relief to prevent or remedy breaches of this Agreement, without the proof of actual damages, including in the form of an injunction or injunctions or orders for specific performance in respect of such breaches.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK]**

IN WITNESS WHEREOF, Nortel Paraguay has caused this Agreement to be duly executed and delivered as of this 22nd day of March, 2012.

NORTEL NETWORKS DEL PARAGUAY S.A.
(In Liquidation)

Per: _____
Name: Hugo T. Berkemeyer
Title: Liquidator

*SIGNATURE PAGE - FULL AND FINAL ACKNOWLEDGMENT AND RELEASE (PARAGUAY)*