among others executed the Fourth Estate Settlement Agreement. The main terms of the Fourth Estate Settlement Agreement are as follows:[5]

- **Disbursement of Sale Proceeds.** Under the Fourth Estate Settlement Agreement, the parties agree to deliver instructions (substantially in the forms attached to the Fourth Estate Settlement Agreement as Appendix F and Appendix G)(the "Payment Instructions") to JPMorgan Chase Bank, N.A. as distribution agent for each of the Escrow Agreements (the "Distribution Agent") to release $44,900,000 in aggregate (the "Settlement Payment") from the Escrow Accounts. The Distribution Agent shall also be instructed to distribute a portion of the Settlement Payment to each Non-Filed Entity entitled to a Settlement Share, provided that, in the case of certain Non-Filed Entities that are APAC Entities, such Settlement Share shall be distributed to inter-company creditors as Net Cash Balance Payments, in each case in full satisfaction of such Non-Filed Entity's rights to the Sale Proceeds.

- **Mutual Release.** The Fourth Estate Settlement Agreement provides for the mutual release of all claims and obligations arising prior to the date of the Fourth Estate Settlement Agreement among each of the Non-Filed Entities *inter se* and between each of the Non-Filed Entities and each of the other parties to the Fourth Estate Settlement Agreement, including, but not limited to, all claims of the Non-Filed Entities to the Sale Proceeds, with the exception of certain surviving obligations including: (i) scheduled inter-company liabilities as of September 30, 2011, as may be reduced by subsequent payments (the "Surviving Intercompany Amounts"), (ii) inter-company obligations arising in the ordinary course of business through the trading of goods or the provision of services occurring on or after October 1, 2011, (iii) obligations arising under the ARA that are not otherwise terminated by the Fourth Estate Settlement Agreement, and (iv) obligations arising under the Fourth Estate Settlement Agreement itself. Certain carve outs from these mutual releases exist in respect of specified claims between the U.S. Debtors and certain of the Non-Filed Entities that are wholly or majority owned subsidiaries of the U.S. Debtors. The Surviving Intercompany Amounts, as reduced in whole or in part by the Net Cash Balance Payments and any other payments made since September 30, 2011, shall supersede the amounts of any claims or schedules filed in these proceedings, the U.S. Proceedings, and the Administration Proceedings, and shall be deemed allowed in those proceedings in such amounts.

- **Escrow Amendments.** In consideration for and as a condition to the release of the Settlement Payments and the effectiveness of the mutual release, the Non-Filed Entities shall execute and deliver amendments to each Escrow Agreement to which they are a party (such amendments to be substantially in the forms attached to the Fourth Estate Settlement Agreement as Appendix E) (the "Escrow Amendments"). The Escrow Amendments shall remove any reference

---

[5] To the extent that there are inconsistencies between the summary description of the Agreement contained herein and the terms and conditions of the Fourth Estate Settlement Agreement, the terms and conditions of the Agreement shall control.

DOCSTOR: 2435416\5

to any of the Non-Filed Entities as Depositors, terminating all rights of the Non-Filed Entities under the Escrow Agreements, including any entitlement to remaining Sale Proceeds covered under such Escrow Agreements.[6]

- **Acknowledgment Regarding Certain ARA Obligations.** Upon transmission of the Settlement Shares, those parties to the Fourth Estate Settlement Agreement that are parties to the ARA will acknowledge and agree that the APAC Debtors have fully satisfied their obligations under Sections 10 and 11 of the ARA and that (i) such APAC Debtors shall have no further obligations under Sections 10 and 11 of the ARA, (ii) the obligations of such APAC Debtors to provide security interests in Collateral (as defined in the ARA) in accordance with Section 13(c) of the ARA shall be terminated and be of no further force and effect, and (iii) those agreements providing for such security interests shall in each case be terminated and be of no further force and effect, and any and all security interests or liens on Collateral (as defined in the ARA) pledged or granted thereunder shall be released. (the "ARA Acknowledgment").

- **Reservation of Rights.** Under the Fourth Estate Settlement Agreement, the Applicants, the U.S. Debtors, the EMEA Debtors, NNSA, the Monitor and the Creditors' Committee, among others, acknowledge and agree that nothing therein or the actions taken as a result thereof shall constitute an acknowledgment or admission as to the correct methodology for determining allocation of the Sale Proceeds of a particular Sale Transaction or the proceeds of any other transaction, including, without limitation, the sale of assets, business or intellectual property, that could be subject to allocation among any of those parties or their affiliates, and shall not constitute an amendment, modification or waiver of rights of any party to the Fourth Estate Settlement Agreement (other than by or with respect to the Non-Filed Entities) or bar, prohibit, terminate or in any way hinder or enhance the rights of the parties to the Fourth Estate Settlement Agreement (other than by or with respect to the Non-Filed Entities) to present any arguments, methodologies, legal or factual theories in support of a proposed allocation of the Sale Proceeds or the proceeds of any other transaction, and such presentation shall not, or otherwise be deemed to, constitute in any way a violation of a party's rights under any existing agreement. The Applicants, the U.S. Debtors, the EMEA Debtors, NNSA, the Monitor and the Creditors Committee, among others, agree that they will not use as evidence, or otherwise rely upon, the Fourth Estate Settlement Agreement or any part thereof in any way to support a right to a particular allocation of the Sale Proceeds or any other sale proceeds.

- **Conditions to Effectiveness.** The Fourth Estate Settlement Agreement will not become effective without approval of this Court and the U.S. Court.

---

[6] No amendment is required to the Escrow Agreement governing the Escrow Account that holds the patent portfolio sale proceeds as none of the Non-Filed Entities are Depositors under that Escrow Agreement and none of the Non-Filed Entities have any rights or entitlements under that Escrow Agreement. The Fourth Estate Settlement Agreement does not provide for a distribution of any funds from the Escrow Account that holds the patent portfolio sale proceeds.

DOCSTOR: 2435416\5

## Conclusions

22. The Fourth Estate Settlement Agreement represents an important step forward in the ultimate allocation of proceeds of the Sale Transactions and winding-down of the various Nortel estates. By facilitating the timely and final payment of the Sale Proceeds to the Non-Filed Entities and crystallizing the inter-company balances between the Non-Filed Entities and other parties including the Applicants, the U.S. Debtors, the EMEA Debtors, and NNSA the Fourth Estate Settlement Agreement removes a substantial barrier to the liquidation of the Non-Filed Entities and minimizes any risks to the larger allocation negotiations posed by those liquidations. The mutual release of claims and the agreement on the Non-Filed Entities' inter-company balances also simplifies the process of settling inter-company claims for the Applicants. Furthermore, by dramatically reducing the number of parties to the Escrow Agreements and entities entitled to proceeds from the Sale Transactions, the Fourth Estate Settlement Agreement also greatly simplifies the process for future cash distributions from the Escrow Accounts as well as the future allocation negotiations among the Applicants, U.S. Debtors, the EMEA Debtors, NNSA and others. Finally, the Applicants, the U.S. Debtors, the EMEA Debtors, NNSA and others have agreed that the Fourth Estate Settlement Agreement will not be used as evidence, or otherwise relied upon in any way to support any such party's right to a particular allocation of the Sale Proceeds or any other sale proceeds. As such, the Applicants do not believe there is any prejudice to their claim to any particular allocation of Sale Proceeds by agreeing to the Fourth Estate Settlement Agreement.

SWORN BEFORE ME at the City of Mississauga, in the Province of Ontario on June 26, 2012.

_____
Commissioner for Taking Affidavits

_____
Anna Ventresca

DOCSTOR: 2435416\5

040

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
Proceeding commenced at Toronto

**AFFIDAVIT OF ANNA VENTRESCA**
**(SWORN JUNE 26, 2012)**

**NORTON ROSE CANADA** LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto ON  M5J 2Z4

**Mario Forte**  LSUC#: 27293F
Tel: 416-216-4870
Fax: 416-216-3930

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1G5

**Derrick Tay** LSUC#: 21152A
**Jennifer Stam** LSUC#: 46735J
Tel: (416) 814-5697
Fax: (416) 862-7661

Lawyers for the Applicants

DOCSTOR: 2435416\5

# TAB 3

J41

Court File No.: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | WEDNESDAY, THE 11TH |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF JULY, 2012 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

ORDER

**(Fourth Estate Settlement Agreement)**

**THIS MOTION**, made by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") for the relief set out in the Applicants' Notice of Motion dated June 27, 2012 was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of Anna Ventresca sworn June 26, 2012 (the "Ventresca Affidavit"), the Eighty-Sixth report of Ernst & Young Inc. (the "Eighty-Sixth Report") in its capacity

DOCSTOR: 2435524\4