IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
: 
*In re* : Chapter 11
: 
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
: 
           Debtors. : Jointly Administered
:
: Hearing date: August 1, 2012 at 10:00 AM (ET)
: Objections due: July 25, 2012 at 4:00 PM (ET)
---------------------------------------------------------------X

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION REGARDING CLAIM 7179 BY AND BETWEEN WELLS FARGO BANK, NATIONAL ASSOCIATION, AS SPECIAL SERVICER AND NORTEL NETWORKS INC.**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing NNI's entry into and approving a stipulation (the "Stipulation") with Wells Fargo Bank, National Association, as successor by merger to Wachovia Bank, N.A., solely in its capacity as Special Servicer, for the Nortel Networks Pass-Through Trust, Series 2001-1 ("Claimant"), attached hereto as **Exhibit B** resolving claim 7179. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions, are available at http://dm.epiq11.com/nortel.

1

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Facts Relevant to this Motion**

7.      State Street Bank and Trust Company, as owner trustee of ZSF Research Network Trust (the "Network Trust"), and NNI were parties to a certain lease dated July 27, 2001 (the "Networks Center Lease") for nonresidential real property located at 4004 E. Chapel Hill-Nelson Highway, Research Triangle Park, North Carolina 27709.  Pursuant to a certain Indenture and Servicing Agreement, also dated July 27, 2001, Claimant alleges that it possesses the authority and power to file claims against NNI for all amounts, indebtedness, liabilities, and obligations payable to the Network Trust by NNI under the Networks Center Lease.

---

[4]     The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

8. On February 26, 2010, pursuant to the *Twenty-Seventh Notice of Rejection of Executory Contract(s) and/or Nonresidential Real Property Lease(s) by Debtors and Debtors in Possession* [D.I. 2579], NNI rejected the Networks Center Lease under Section 365 of the Bankruptcy Code effective as of March 30, 2010.

9. Prior to the general bar date for claims against NNI, Claimant timely filed a Proof of Claim No. 5652. On or about March 31, 2010, Claimant filed Proof of Claim No. 7179 in the amount of $76,659,248.56[5] (the "Networks Center Claim"), which amended Proof of Claim 5652[6] and sought lease rejection damages under the Networks Center Lease. The Networks Center Claim included $293,333.29 allegedly arising from damages to the property for which Claimant claims to be entitled to an administrative expense priority under Section 503(b) of the Bankruptcy Code. NNI disputed these amounts. Thereafter, in an effort to negotiate an expeditious resolution of the dispute between the Debtors and Claimant, the parties entered into arm's-length settlement discussions.

10. Claimant has also filed claims against the Canadian Debtor in the CCAA Proceeding arising out of a guarantee of the Networks Center Lease by the Canadian Debtor (the "Canadian Claim").

11. As a result of these negotiations, the Debtors, subject to this Court's approval, have reached a compromise with Claimant resolving the Networks Center Claim such that the Networks Center Claim will be allowed as a general unsecured claim in the amount of

---

[5] As noted in footnote 2 of the Stipulation, following NNI's rejection of the Networks Center Lease, the property was sold, reducing the damages arising from the rejection of the Networks Center Lease. However, Claimant asserts that the remaining damages claim still exceeds $38,566,714.17, which does not affect the calculation under 11 U.S.C. § 502(b)(6).

[6] On August 18, 2010, the Court entered the *Order Granting Debtors' Tenth Omnibus Objection (Non-Substantive) To Certain Claims Pursuant To 11 U.S.C. Section 502, Fed. R. Bankr. P. 3007 And Del. L.R. 3007-1 (Amended; Duplicate)* [D.I. 3798] through which Proof of Claim No. 5652 was disallowed as being amended and superseded by the Networks Center Claim.

$10,662,396.00 as memorialized in the Stipulation. Claimant shall also have an allowed administrative priority claim under Section 503(b) of the Bankruptcy Code in the amount of $73,333.32. The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of the Networks Center Claim through the Stipulation is appropriate and in the best interests of both their estates and their creditors.

12. Nothing in the Stipulation or this Motion shall constitute a waiver or amendment of the Debtors' rights concerning the resolution of any other claims in these proceedings under the Cross Border Protocol on the Resolution of Claims (the "Cross Border Claims Protocol") entered into by the Debtors and the Canadian Debtors, and approved by this Court and the Canadian Court; nor shall anything in the Stipulation or this Motion have any binding or precedential effect on the resolution of any other claims in these proceedings, including other Overlapping Claims or Same-Creditor Claims (as those terms are defined in the Cross Border Claims Protocol).

### Relief Requested

13. By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing NNI's entry into and approving the Stipulation, and (ii) granting them such other and further relief as the Court deems just and proper.

### Basis for Relief

14. The Debtors seek authorization for NNI to enter into the Stipulation under sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

A. <u>NNI Should Be Authorized to Enter Into the Stipulation with Claimant</u>

5

15. Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). Further, courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

16. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

17. The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

18. The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation, and request that NNI's entry into the Stipulation be authorized under Bankruptcy Rule 9019. While the Debtors are prepared to litigate the Networks Center Claim and believe that they would prevail in such litigation, litigation carries with it inherent uncertainties and there are no assurances that such litigation would achieve a better result than the one set forth in the Stipulation. This resolution fairly balances the Debtors' likelihood of success on the merits of the Networks Center Claim against their interest in avoiding the uncertainty of litigation.

19. In addition, litigation of the Networks Center Claim would result in the estate's expenditure of legal fees, which could diminish or eviscerate the benefits to be achieved through the compromise achieved through stipulating. Finally, the interests of the creditors militate in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Networks Center Claim and the avoidance of

7

legal expenses that would be incurred if the Networks Center Claim were to be litigated. In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

## Notice

20. Notice of the Motion has been given via electronic transmission, hand delivery or first class mail to (i) counsel to Claimant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

21. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: July 11, 2012        MORRIS, NICHOLS, ARSHT & TUNNELL LLP
       Wilmington, Delaware

   /s/ Ann C. Cordo
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors and Debtors in Possession*