**EXHIBIT B**

**EXECUTION COPY**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------X
                                                           :
                                                           :      Chapter 11
                                                           :
*In re*                                                    :
                                                           :      Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                         :
                                                           :      Jointly Administered
                                      Debtors.             :
                                                           :
                                                           :
-----------------------------------------------------------X

**STIPULATION REGARDING CLAIM 7179 BY AND
BETWEEN WELLS FARGO BANK, NATIONAL ASSOCIATION,
AS SPECIAL SERVICER AND NORTEL NETWORKS INC.**

This *Stipulation Regarding Claim 7179* (the "**Stipulation**") is entered into by and

between Nortel Networks Inc. (the "**Nortel Debtor**") and Wells Fargo Bank, National

Association, as successor by merger to Wachovia Bank, N.A., solely in its capacity as Special

Servicer, for the Nortel Networks Pass-Through Trust, Series 2001-1 ("**Wells Fargo**," and

together with Nortel Debtor, collectively, the "**Parties**").  The Parties hereby stipulate and agree

as follows:

**RECITALS:**

WHEREAS, on January 14, 2009, and on July 14, 2009 (the "**Petition Dates**"), Nortel

Debtor and its affiliated debtors and debtors in possession (the "**Debtors**") filed voluntary

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

petitions for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**");

WHEREAS, on or about January 14, 2009, Nortel Networks Ltd. (the "**Canadian Debtor**"), along with certain of its Canadian affiliates, sought creditor protection under the Companies' Creditors Arrangement Act ("**CCAA**") in Canada, which case (the "**CCAA Proceeding**") is pending in the Ontario Superior Court of Justice (Court File No. 09-CL-7950) (the "**Canadian Court**");

WHEREAS, the Court established the general bar dates of September 30, 2009 (other than for claims against Nortel Networks (CALA) Inc.) and January 25, 2010 (for claims against Nortel Networks (CALA) Inc.) for filing proofs of claim in these cases;

WHEREAS, Wells Fargo timely filed a Proof of Claim No. 5652;

WHEREAS, Wells Fargo later amended Proof of Claim No. 5652 (such amended claim is now Proof of Claim No. 7179) (the "**Networks Center Claim**");

WHEREAS, pursuant to the Networks Center Claim, Wells Fargo asserted claims against the Nortel Debtor for all amounts, indebtedness, liabilities, and obligations payable to the Network Trust (defined below) by the Nortel Debtor under the Network Center Lease (defined below) (all such amounts, indebtedness, liabilities and obligations as more specifically set forth in the Network Center Lease are collectively referred to herein as the "**Network Center Obligations**").

WHEREAS, on August 18, 2010, the Court entered the Order Granting Debtors' Tenth Omnibus Objection (Non-Substantive) To Certain Claims Pursuant To 11 U.S.C. Section 502, Fed. R. Bankr. P. 3007 And Del. L.R. 3007-1 (Amended; Duplicate) [D.I. 3798] through which

Proof of Claim No. 5652 was disallowed as being amended and superseded by the Networks Center Claim;

WHEREAS, Wells Fargo also has filed claims against the Canadian Debtor in the CCAA Proceeding arising from that certain Guaranty Agreement dated July 27, 2001 (the "**Guaranty**"), pursuant to which Wells Fargo alleges that the Canadian Debtor unconditionally guaranteed the full and punctual payment (whether at stated maturity, upon acceleration, or otherwise) of all amounts payable to the Network Trust (defined below) under the Networks Center Lease (defined below) and also unconditionally guaranteed the performance of all the Network Center Obligations (all of such claims, including all amendments, supplements, and restatements, collectively, the "**Canadian Claim**");

WHEREAS, pursuant to that certain Indenture and Servicing Agreement, dated July 27, 2001, Wells Fargo alleges that it possessed the authority and power to file Proof of Claim No. 5652, the Networks Center Claim, and the Canadian Claim;

WHEREAS, the Networks Center Claim arises from that certain Lease Agreement, dated July 27, 2001, by and between State Street Bank and Trust Company, as owner trustee of ZSF Research Network Trust, as lessor (the "**Network Trust**"), and the Nortel Debtor, as lessee of certain real property located at 4004 E. Chapel Hill-Nelson Highway, Research Triangle Park, North Carolina 27709 (the "**Networks Center Lease**");

WHEREAS, the Nortel Debtor rejected the Networks Center Lease under Section 365 of the Bankruptcy Code pursuant to the *Twenty-Seventh Notice of Rejection of Executory Contract(s) and/or Nonresidential Real Property Lease(s) by Debtors and Debtors in Possession* [D.I. 2579] filed on February 26, 2010 (the "**Rejection Notice**");

WHEREAS, under the Networks Center Lease, the Nortel Debtor was obligated to pay, among other things, monthly rent through and including July 31, 2016;

WHEREAS, Wells Fargo has asserted that, as of the effective date of the Rejection Notice, the damages arising from the Nortel Debtor's rejection of the Networks Center Lease were not less than $76,659,248.56.[2]

WHEREAS, included in the amount claimed is $293,333.29 allegedly arising from damages to the property for which Wells Fargo claims to be entitled to an administrative expense priority under Section 503(b) of the Bankruptcy Code, which claim is based on the allegation that Nortel Debtor, among other things, caused damage to the property and/or negligently maintained the property after the Petition Date (the "**Potential Admin Claim**");

WHEREAS, the Nortel Debtor disputes the amount, allowance, and proposed priority of the Potential Admin Claim;

WHEREAS, the Parties have filed this Stipulation to: (i) agree on the amount of Wells Fargo's allowed rejection damages claim after applying the statutory cap under Section 502(b)(6) of the Bankruptcy Code; and (ii) resolve a dispute between the Parties relating to the Potential Admin Claim;

WHEREAS, the Parties have engaged in arm's-length negotiations in agreeing to the calculation of Wells Fargo's claim under Section 502(b)(6) of the Bankruptcy Code and, in order to avoid the cost and risk inherent in litigating the Potential Admin Claim, the Parties have agreed to this Stipulation to resolve their disputes as to the Potential Admin Claim; and

---

[2]    Following the Rejection Notice, the property was sold, which reduced the damages arising from the rejection of the Networks Center Lease. Wells Fargo asserts that the remaining damages claim still exceeds $38,566,714.17, which does not affect the calculation under 11 U.S.C. § 502(b)(6).

**NOW THEREFORE**, in consideration of the mutual promises and covenants contained herein and other valuable consideration, the receipt of which is hereby acknowledged, the Parties agree and stipulate as follows:

1.      The Networks Center Claim shall be allowed by the Nortel Debtor as a general prepetition unsecured claim against the Nortel Debtor in the amount of $10,662,396.00, which amount shall not be subject to objection, disallowance, amendment, or other defenses by the Debtors.

2.      Wells Fargo shall also have an allowed administrative priority claim under Section 503(b) of the Bankruptcy Code in the amount of $73,333.32 (the "**Allowed Admin Claim**").

3.      The Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, shall amend the claims docket to reflect that the Allowed Admin Claim is an allowed administrative expense claim against the Nortel Debtor's estate and that the Networks Center Claim is allowed as a general prepetition unsecured claim in the amount of $10,662,396.00.

4.      Subject to Paragraph 6, the allowance of the claims described in Paragraphs 1 and 2 above (the "**Allowed US Claims**") shall be granted in full satisfaction of any and all claims that have been or could have been asserted by Wells Fargo under the Networks Center Lease in these Chapter 11 cases or otherwise against the Debtors (but not as against the Canadian Debtor) and shall amend and supersede any and all claim amounts the Nortel Debtor lists on its schedules of assets and liabilities filed with the Court.

5.      Wells Fargo undertakes and agrees that it will not assert, pursue, or undertake any action or pursue any right or remedy against the Debtors in these Chapter 11 Cases, or otherwise,

in relation to the Network Center Lease and/or the Network Center Obligations, other than in relation to the Allowed US Claims as provided for in this Stipulation.

6.       Nothing in this Stipulation shall (or shall be deemed or construed to):

a.       discharge, alter, affect, waive, release, discharge, or extinguish the Network Center Obligations (but, for clarity, this Stipulation constitutes an agreement between the Parties regarding the quantification of the Network Center Claim in these Chapter 11 Cases that is being entered into by the Nortel Debtor on the basis that Wells Fargo has agreed not to pursue any other claim, right, or remedy in relation to the Network Center Obligations against the Nortel Debtor, other than in relation to the Allowed US Claims as provided for in this Stipulation);

b.       prejudice, diminish, restrict, or impair Wells Fargo's rights and remedies under the Guaranty or its ability to pursue payment of the full amount of the Network Center Obligations from Canadian Debtor;

c.       prejudice, diminish, restrict, or impair Wells Fargo's ability to prosecute and pursue the Canadian Claim;

d.       constitute an agreement, admission, or acknowledgment by Wells Fargo relating to the quantification of the Canadian Claim under the Guaranty; or

e.       constitute an agreement of Wells Fargo in relation to the quantification of Network Center Obligations for the purposes of the CCAA Proceeding or any other process or proceeding relating to the Canadian Debtor or its property; and

for the avoidance of doubt, this Stipulation calculates Wells Fargo's allowed claim after applying the rejection damages cap pursuant to 11 U.S.C. § 502(b)(6) and does not otherwise affect Wells Fargo's state law damages claim that Wells Fargo has asserted under the Guaranty against the Canadian Debtor in the CCAA Proceeding.

7.    The Parties acknowledge that Wells Fargo expressly reserves and does not (nor shall it be deemed to) waive any of rights, remedies, and interests against the Canadian Debtor in relation to the Guaranty, the Network Center Obligations and/or the Canadian Claim, including without limitation: (a) by virtue of Wells Fargo entering into this Stipulation or making the agreements provided for herein; (b) should Wells Fargo in the future vote the Allowed US Claims in favor of any plan or plans that are filed in these Chapter 11 Cases (a "**Plan**"); (c) by virtue of any payment made to Wells Fargo on account of the Allowed US Claims; or (d) as a result of any Plan that includes provisions that release, discharge, extinguish, compromise, modify, bar, or otherwise deal with the claims of Wells Fargo, specifically, or creditors of the Debtors, generally, all without the need of any further written reservation or non-waiver.

8.    On the Effective Date (defined below) of this Stipulation, Wells Fargo shall forever be barred from (i) amending the Networks Center Claim, (ii) filing or asserting any further prepetition claims against any of the Debtors in their Chapter 11 cases arising from the Networks Center Lease, the Network Center Obligations, or the Nortel Debtor's use and occupancy of the premises covered thereby or (iii) filing or asserting any further postpetition claims against any of the Debtors in their Chapter 11 cases arising from the Networks Center Lease; provided, however, that this Stipulation shall not preclude Wells Fargo from amending, supplementing, updating any proofs of claim filed in the CCAA Proceeding, or taking any other

action with respect to the Guaranty, the Network Center Obligations, and/or the Canadian Claim as solely against the Canadian Debtor.

9.      This Stipulation and the order approving the same shall be binding on any successors or assigns of the Parties, including any trustee or other estate representative appointed in the Debtors' cases.

10.     This Stipulation constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof, and this Stipulation cannot be amended except by an authorized written agreement between the Parties.

11.     Wells Fargo represents that, as of the date of this Stipulation, it has not sold, assigned, or otherwise transferred the Network Center Claim or the Potential Admin Claim or any of the claims that are the subject of this Stipulation to a third party.

12.     Each Party acknowledges and agrees that, except as expressly set forth herein concerning the allowance of the Networks Center Claim and the Allowed Admin Claim, nothing in this Stipulation constitutes an admission or concession of any legal issue raised in or relating to the Networks Center Lease, Networks Center Claim, the Network Center Obligations, or the Canadian Claim.

13.     Each Party agrees to bear its own costs, expenses, and attorneys' fees incurred in connection with the negotiations related to and preparation of this Stipulation and to not seek from each other reimbursement of any such costs, expenses, or attorneys' fees.

14.     The Court shall retain jurisdiction over the implementation of this Stipulation and any disputes arising hereunder.

15.     This Stipulation may be executed in counterparts, each of which shall be an original, and such counterparts shall be construed together as one instrument.  Facsimile or PDF signatures shall be deemed original signatures.

16.     All provisions of this Stipulation are subject to the following conditions (together, the "**Effective Date**"): (I) the entry of an order by the Court approving this Stipulation; and (II) such order becoming a final order.

IN WITNESS WHEREOF, and intending to be legally bound hereby, effective upon an order of the Court, the Parties have executed this Stipulation.

Dated this 29th day of June, 2012.


_____          _____
Tina C. McNeil, Vice President of CMS -          John Ray, Principal Officer of Nortel
Special Servicing, on behalf of Wells Fargo          Networks, Inc., and its affiliated debtors
Bank, National Association, as successor
by merger to Wachovia Bank, N.A., solely
in its capacity as Special Servicer, for the
Nortel Networks Pass-Through Trust,
Series 2001-1

- 9 -

15.    This Stipulation may be executed in counterparts, each of which shall be an original, and such counterparts shall be construed together as one instrument.  Facsimile or PDF signatures shall be deemed original signatures.

16.    All provisions of this Stipulation are subject to the following conditions (together, the "**Effective Date**"): (I) the entry of an order by the Court approving this Stipulation; and (II) such order becoming a final order.

IN WITNESS WHEREOF, and intending to be legally bound hereby, effective upon an order of the Court, the Parties have executed this Stipulation.

Dated this 10th day of July, 2012.

_____
Tina C. McNeil, Vice President of CMS - Special Servicing, on behalf of Wells Fargo Bank, National Association, as successor by merger to Wachovia Bank, N.A., solely in its capacity as Special Servicer, for the Nortel Networks Pass-Through Trust, Series 2001-1

_____
John Ray, Principal Officer of Nortel Networks, Inc., and its affiliated debtors