## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
                :

*In re*                  :      Chapter 11
                :

Nortel Networks Inc., *et al.*,[1]  :      Case No. 09-10138 (KG)
                :

           Debtors.   :      Jointly Administered
                :

                :      **Hearing Date: August 22, 2012 at 10:00 a.m. (ET)**
                :      **Objections Due: July 26, 2012 at 4:00 p.m. (ET)**

---------------------------------------------------------X

### DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION OF SETTLEMENT OF POTENTIAL AVOIDANCE CLAIMS AND INVENTORY DISPUTE BY AND BETWEEN NORTEL NETWORKS INC. AND INVENTORY <u>MANAGEMENT PARTNERS LLC</u>

Nortel Networks Inc. ("<u>NNI</u>") and certain of its affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), hereby move this Court (the "<u>Motion</u>"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 502, 547, and 550 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authorizing the Debtors to enter into and approving a stipulation (the "<u>Stipulation</u>") with Inventory Management Partners LLC ("<u>IMP</u>", and together with NNI, the "<u>Parties</u>"), in the form attached hereto as **Exhibit B**, resolving NNI's claims against IMP relating to (i) certain payments made by NNI to IMP in the ninety day period prior to NNI's bankruptcy filing and (ii) certain inventory held by IMP on the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Debtors' behalf; and granting such other and further relief as the Court (the "Court" or the "Bankruptcy Court") deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## **Relief Requested**

7.      By this Motion, the Debtors seek an order, pursuant to sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Stipulation, (ii) authorizing but not directing the Debtors to take all actions reasonably appropriate to perform their obligations under the Stipulation, and (iii) granting them such other and further relief as the Bankruptcy Court deems just and proper.

---

[3]  The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]  The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

## Facts Relevant to this Motion

8.      Prior to the Petition Date, NNI retained IMP to sell on its behalf certain of the Debtors' excess or obsolete inventory (the "Inventory").  After the Petition Date, the Debtors requested that IMP ship the Inventory to a third party, which IMP allegedly did.  The Debtors subsequently asserted claims with respect to, among other things, certain missing parts that were allegedly not shipped by IMP to a third party pursuant to the Debtors' request estimated to have a fair market value of approximately $82,000.00 (the "Inventory Dispute").

9.      NNI's books and records indicate that within ninety (90) days prior to the Petition Date, NNI made one or more transfers of an interest in its property to or for the benefit of IMP in the aggregate amount of $129,204.00 (the "Subject Transfers").

10.     By letter dated November 19, 2010, NNI demanded payment of a discounted amount on its potential claims against IMP concerning the Subject Transfers (collectively, the "Potential Avoidance Claim") so that litigation could be avoided.  IMP responded by denying liability.

11.     After engaging in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by litigation of the Potential Avoidance Claim, the Parties have agreed to settle the Potential Avoidance Claim and Inventory Dispute on the terms set forth in the Stipulation, attached hereto as **Exhibit B**.  Pursuant to the Stipulation, NNI and IMP agreed that the Stipulation would be subject to the Bankruptcy Court's approval pursuant to Bankruptcy Rule 9019.

12.     Pursuant to the Stipulation[5] and subject to the Bankruptcy Court's approval, NNI and IMP have agreed to settle the Potential Avoidance Claim and the Inventory Dispute for the

---

[5]  In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

amount of $12,504.00, to be paid by IMP to NNI (the "Settlement Consideration").  In

consideration of the mutual promises and covenants set forth in the Stipulation and other good

and valuable consideration, effective on the Settlement Date, as defined in the Stipulation, IMP

has agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release the Debtors, their

bankruptcy estates, their predecessors, successors, current and former officers, directors and

employees, affiliates, subsidiaries, parent companies, attorneys, agents, and assigns, past, present

and future from and against any and all claims, losses, liabilities, obligations, debts, contracts,

agreements, suits, demands of every kind and nature whatsoever, known or unknown, suspected

or unsuspected, fixed or contingent, matured or unmatured, which it ever had, now has, or may

have against the Debtors or their bankruptcy estates arising from or relating to the Subject

Transfers and the Inventory Dispute, including, but not limited to, any claim under section

502(h) of the Bankruptcy Code, provided, however, that notwithstanding the release or anything

else in the Stipulation, in the event that a claim is asserted against or an action is brought against

IMP with respect to the Inventory, IMP reserves the right to assert a claim or defense, for

indemnity, contribution, or otherwise, in the form of a counterclaim, cross-claim, third party

claim or otherwise, against the Debtors and/or their bankruptcy estates with respect to the

Inventory, and the release does not apply to any such claim or defense.  Nor does the release

apply to any cause of action arising from a breach of the Stipulation.

      13.    In consideration of the mutual promises and covenants set forth in the Stipulation

and other good and valuable consideration, effective on the Settlement Date, as defined in the

Stipulation, the Debtors, on behalf of themselves and their bankruptcy estates, have agreed,

subject to the Bankruptcy Court's approval, to, *inter alia*, release IMP, its predecessors,

successors, current and former officers, directors and employees, affiliates, subsidiaries, parent

companies, attorneys, agents, and assigns, past, present and future from and against any and all

claims, losses, liabilities, obligations, debts, contracts, agreements, suits, demands of every kind

and nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent,

matured or unmatured, which they ever had, now have, or may have against IMP arising from or

relating to (i) the Subject Transfers and (ii) the Inventory Dispute; provided, however, that

notwithstanding the release or anything else in the Stipulation, in the event that a claim is

asserted against or an action is brought against one or more of the Debtors and/or their

bankruptcy estates with respect to the Inventory, the Debtors and their bankruptcy estates reserve

the right to assert a claim or defense, for indemnity, contribution, or otherwise, in the form of a

counterclaim, cross-claim, third party claim or otherwise, against IMP with respect to the

Inventory, and the release does not apply to any such claim or defense.  Nor does the release

apply to any cause of action arising from a breach of the Stipulation.

## Basis for Relief

14.     The Debtors seek authorization for NNI to enter into the Stipulation under

sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section

105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is

necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice

and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

15.     Citing these provisions, the Third Circuit has emphasized that "[c]ompromises are

favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)

(quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health

Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally

favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

16.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

17.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

18.    The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation. The Debtors believe that IMP has asserted substantial defenses under the Bankruptcy Code to the Potential Avoidance Claim, as well as strong defenses with respect to the Inventory Dispute, that would require extensive litigation to address.  In light of those defenses, the Settlement Consideration represents a reasonable return for the Debtors' estates. In addition, NNI recognizes that litigation of the Potential Avoidance Claim and the Inventory Dispute carries with it inherent uncertainties and there can be no assurance that such litigation would achieve a better result than the one set forth in the Stipulation.

19.    Pursuant to the settlement reflected in the Stipulation, IMP has agreed to pay to NNI $12,504.00 and waive any and all claims arising under section 502(h) of the Bankruptcy Code to resolve the Potential Avoidance Claim and the Inventory Dispute.  This resolution fairly balances NNI's possibility of success on the merits of the Potential Avoidance Claim and the Inventory Dispute against its interest in avoiding the uncertainty and cost of initiating formal litigation.

20.    In addition, litigation of the Potential Avoidance Claim and the Inventory Dispute would result in the estate's expenditure of additional legal fees, which would be substantial relative to the amount involved in this matter.  These would include fees associated with formal discovery and litigation.  In the absence of a settlement, NNI's estate would be burdened with the

time and costs of litigation, which would be disruptive of the estate's efforts to resolve the matters that are essential to the ultimate resolution of these cases.

21.     Finally, the interests of the creditors weigh in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Potential Avoidance Claim and the Inventory Dispute and the avoidance of litigation risk and substantial legal expenses that would be incurred if the litigation were undertaken.

22.     In light of the foregoing, the Debtors respectfully seek authorization for NNI to enter into the Stipulation and approval of the Stipulation.

## Notice

23.     Notice of the Motion has been given via first class mail to (i) IMP; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

24.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  July 12, 2012          CLEARY GOTTLIEB STEEN & HAMILTON LLP
          Wilmington, Delaware

                              James L. Bromley (admitted *pro hac vice*)
                              Lisa M. Schweitzer (admitted *pro hac vice*)
                              Neil P. Forrest (admitted *pro hac vice*)
                              Jesse D.H. Sherrett (admitted *pro hac vice*)
                              One Liberty Plaza

New York, New York 10006
(212) 225-2000

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Donna L. Culver (No. 2983)
Derek C. Abbott (No. 3376)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
(302) 658-9200

*Counsel for the Debtors*
*and Debtors in Possession*