**EXHIBIT B**

## SETTLEMENT AGREEMENT

2012

THIS SETTLEMENT AGREEMENT ("Agreement") is entered into as of ~~December~~ April 2, ~~2011~~ by and between Nortel Networks Inc., Debtor-in-Possession, (the "Debtor") and its affiliated Debtors-in-Possession[1] and Inventory Management Partners LLC, (the "Creditor"). The purpose of this Agreement is the amicable resolution of a dispute between the Debtors and Creditor regarding alleged preferential payments from Debtor to Creditor and Creditor's defenses thereto, and claims among the Debtors and Creditor regarding certain inventory.

### Background

A. On January 14, 2009 (the "Petition Date"), Nortel Networks Inc. and its affiliated Debtors, with the exception of NN CALA, each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (Case No. 09-10138 (KG) (Jointly Administered)).

B. Creditor supplied goods and/or services to Debtor prior to the Petition Date. Among other things, both before and after the Petition Date, some or all of the Debtors gave Creditor certain of the Debtors' excess or obsolete inventory (the "Inventory"), and Creditor sold the Inventory on the Debtors' behalf. After the Petition Date, the Debtors requested that Creditor ship the Inventory to a third party, and Creditor did so. The Debtors subsequently asserted claims with respect to, among other things, Creditor's sale, handling and shipping of the Inventory (the "Inventory Dispute").

C. During the ninety day period prior to Debtor's bankruptcy filing (the "Preference Period"), Debtor made payments in the asserted amount of $129,204.00 to Creditor ("Preference Period Payments").

D. Creditor has asserted defenses available under the Bankruptcy Code and other applicable law to any alleged liability to Debtor for the Preference Period Payments.

E. A dispute exists between Debtor and Creditor as to whether Debtor is entitled to recover the Preference Period Payments.

F. The parties, after engaging in good faith negotiations, wish to settle any and all claims of Debtor against Creditor related to the Preference Period Payments and to settle all claims arising from the Inventory Dispute, whether arising under the Bankruptcy Code or any other applicable law.

---

[1] This includes the following affiliates and subsidiaries (listed along with the last four digits of each Debtor's tax identification number): Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. ("NN CALA") (4226) (collectively, the "Debtors"). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

G. On October 27, 2010, the Bankruptcy Court entered an Order Authorizing And Approving Settlement Procedures To Settle Certain Avoidance Claims (the "Settlement Procedures Order") authorizing the Debtors, inter alia, to settle avoidance claims where the asserted claim amount is equal to or less than $250,000 without filing or serving any advance notice of such settlement and without further notice or order of the Bankruptcy Court [D.I. 4211].

NOW, THEREFORE, in light of the foregoing and in consideration of the mutual promises, representations, and consideration, as hereinafter set forth, and subject only to the approval of the Bankruptcy Court, the parties agree as follows:

### Settlement Consideration

1. Creditor shall pay to Debtor $12,504.00 (the "Settlement Amount"), in one lump sum payment within ten (10) days after receipt by Creditor of an executed Agreement.

2. The check for the Settlement Amount shall be payable to "Nortel Networks Inc. as Debtor-in-Possession" and delivered via traceable courier to Nortel Lockbox 2937, Lockbox Operations 3rd Floor, 8430 W Bryn Mawr Ave., Chicago, IL 60631 (the "Settlement Payment").

3. The first date on which the following shall have occurred shall hereafter be referred to as the "Settlement Date": (i) Debtor shall have received the Settlement Payment; (ii) the Settlement Payment clears; and (iii) the Settlement Payment is collected.

4. Payment and collection of the Settlement Amount in accordance herewith shall constitute full payment and settlement of any claims of Debtor against Creditor with respect to Creditor's alleged receipt of the Preference Period Payments and the Inventory Dispute.

5. Except for any cause of action arising from a breach of this Agreement, effective on the Settlement Date, the Debtors, on behalf of themselves and their bankruptcy estates, forever, irrevocably and unconditionally release and discharge Creditor, its predecessors, successors, current and former officers, directors and employees, affiliates, subsidiaries, parent companies, attorneys, agents, and assigns, past, present and future from and against any and all claims, losses, liabilities, obligations, debts, contracts, agreements, suits, demands of every kind and nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, which they ever had, now have, or may have against Creditor arising from or relating to (i) the Preference Period Payments and (ii) the Inventory Dispute; provided, however, that notwithstanding this Release or anything else in this Agreement, in the event that a claim is asserted against or an action is brought against one or more of the Debtors and/or their bankruptcy estates with respect to the Inventory, the Debtors and their bankruptcy estates reserve the right to assert a claim or defense, for indemnity, contribution, or otherwise, in the form of a counterclaim, cross-claim, third party claim or otherwise, against Creditor with respect to the Inventory, and this Release does not apply to any such claim or defense.

6. Except for any cause of action arising from a breach of this Agreement, effective on the Settlement Date, Creditor fully, forever, irrevocably and unconditionally releases and

discharges the Debtors, their bankruptcy estates, their predecessors, successors, current and former officers, directors and employees, affiliates, subsidiaries, parent companies, attorneys, agents, and assigns, past, present and future from and against any and all claims, losses, liabilities, obligations, debts, contracts, agreements, suits, demands of every kind and nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, which it ever had, now has, or may have against the Debtors or their bankruptcy estates arising from or relating to the Preference Period Payments and the Inventory Dispute, including, but not limited to, any claim under section 502(h) of the Bankruptcy Code, provided, however, that notwithstanding this Release or anything else in this Agreement, in the event that a claim is asserted against or an action is brought against Creditor with respect to the Inventory, Creditor reserves the right to assert a claim or defense, for indemnity, contribution, or otherwise, in the form of a counterclaim, cross-claim, third party claim or otherwise, against the Debtors and/or their bankruptcy estates with respect to the Inventory, and this Release does not apply to any such claim or defense.

### Miscellaneous

7. The parties hereto warrant that no promise, inducement, or agreement not expressed herein has been made to them in connection with this Agreement and that this Agreement constitutes the entire Agreement between the parties with respect to the subject matter hereof. This Agreement may not be altered, amended, modified, or otherwise changed in any respect whatsoever, except by a writing duly executed by authorized representatives of the parties hereto.

8. Upon the entry of an order of the Bankruptcy Court approving this Agreement, this Agreement shall be binding upon and inure to the benefit of the parties, including, without limitation the Debtors' bankruptcy estates, and the parties' respective administrators, representatives, successors and assigns. In the event that the Bankruptcy Court does not enter an order approving this Agreement, this Agreement shall be null and void.

9. This Agreement is in settlement of a dispute between the Debtors and Creditor. No statements contained herein shall constitute an admission by either party.

10. This Agreement shall be governed by the laws of the State of Delaware.

11. A facsimile or pdf signature hereon shall be treated as an original signature. This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the effect of a signed original.

12. As soon as practicable after the execution of this Agreement, the Debtors shall file a motion with the Bankruptcy Court seeking, among other things, the approval of this Agreement.

IN WITNESS WHEREOF, authorized agents of the Debtors and Creditor have executed this Agreement on the date(s) indicated below.

April 2, 2011                           INVENTORY MANAGEMENT PARTNERS LLC

                           _[signature]_
                           Name: GREGORY Tushjian

April 2, 2011                 NORTEL NETWORKS INC.

                                 John Ray, Principal Officer

April 2, 2011                 NORTEL NETWORKS CAPITAL CORPORATION

                                 John Ray, Principal Officer

April 2, 2011                 NORTEL ALTSYSTEMS, INC.

                                 John Ray, Principal Officer

April 2, 2011                 NORTEL ALTSYSTEMS INTERNATIONAL, INC.

                                 John Ray, Principal Officer

April 2, 2011                 XROS, INC.

                                 John Ray, Principal Officer

April 2, 2011                 SONOMA SYSTEMS

                                 John Ray, Principal Officer

April 2, 2011                 QTERA CORPORATION

                                 John Ray, Principal Officer

April 2, 2011                 NORTEL NETWORKS APPLICATIONS
                                 MANAGEMENT SOLUTIONS, INC.

John Ray, Principal Officer

April 2, 2011          CORETEK, INC.

_____
John Ray, Principal Officer

April 2, 2011          NORTEL NETWORKS OPTICAL
                       COMPONENTS, INC.

_____
John Ray, Principal Officer

April 2, 2011          NORTEL NETWORKS HPOCS INC.

_____
John Ray, Principal Officer

April 2, 2011          ARCHITEL SYSTEMS (U.S.) CORPORATION

_____
John Ray, Principal Officer

April 2, 2011          NORTEL NETWORKS INTERNATIONAL, INC.

_____
John Ray, Principal Officer

April 2, 2011          NORTHERN TELECOM INTERNATIONAL, INC.

_____
John Ray, Principal Officer

April 2, 2011          NORTEL NETWORKS CABLE SOLUTIONS INC.

_____
John Ray, Principal Officer

April 2, 2011          NORTEL NETWORKS (CALA) INC.

_____
John Ray, Principal Officer