IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | ) Case No. 09-10138 (KG) |
| Debtors. | ) Jointly Administrated |
|  | ) **Objection Deadline: July 25, 2012 at 4:00 p.m.** |
|  | ) **Hearing Date: August 1, 2012 at 10:00 a.m.** |

## MOTION OF THE OFFICIAL COMMITTEE OF LONG TERM DISABILITY PARTICIPANTS FOR AN ORDER LIFTING OR, IN THE ALTERNATIVE, INCREASING THE LIMITS ON FEES

The Official Committee of Long Term Disability Participants (the "LTD Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this motion for an order lifting or, in the alternative, increasing, the cap on legal fees for LTD Committee counsel (the "Motion"). In support of this Motion, the LTD Committee respectfully represents as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for this Motion are Bankruptcy Code sections 328 and 330, and Federal Rule of Bankruptcy Procedure 2016.

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## BACKGROUND

3.  On January 14, 2009 (the "Petition Date"), each of the Debtors commenced their bankruptcy cases (the "Bankruptcy Cases") by filing voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

4.  The Debtors continue to operate their business and manage their property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.  On June 3, 2011, a significant number of LTD Plan Participants (defined below) filed the *Joinder of the Disabled Participants to Debtors' Motion for Entry of an Order Pursuant to Section 1114 of the Bankruptcy Code Appointing an Official Committee of Retired Employees* on June 3, 2011 (Docket No. 5595) (the "Appointment Motion"). Many other LTD Plan Participants who did not file the Appointment Motion filed correspondence with the Court supporting the relief sought in the Appointment Motion. (*See, e.g.* Docket Nos. 5659-61, 5670-5676, 5678-81, 5694-5701, 5703-5708, 5712-5716 and 5760-5764). On the record, counsel for certain LTD Plan Participants requested that there be a cap on fees, based upon a projection that the process of resolving issues between the Debtors, the Retirees and LTD Plan Participants would take approximately four months. *See* June 21, 2011 Hr. Tr. at 36:25-37:10.

6.  On June 22, 2011, the Court authorized the appointment of the LTD Committee (Docket No. 5790) (the "LTD Committee Appointment Order"). Pursuant to the LTD Committee Appointment Order, fees for counsel to the LTD Committee were capped at $200,000 (the "Original Cap"), "subject to the LTD Committee's right to seek, upon notice and a hearing, to increase the cap for good cause shown." LTD Committee Appointment Order at 2.

7. On August 2, 2011, (the "Retention Date") the LTD Committee was formed. The LTD Committee consists of the following members: Wendy Boswell Mann, Daniel D. David, Dianna L. Irish, Paul E. Morrison, Barbara Gallagher, Michael Stutts, and Deborah Jones. *See* Amended Notice of Appointment of Unsecured Creditors (Docket No. 6080).

8. The LTD Committee selected Elliott Greenleaf ("EG") as proposed counsel to the committee. Prior to the Retention Date, EG acted as counsel to Barbara Gallagher and 58 other disabled individuals of the approximately 250 disabled individuals ("LTD Plan Participants") who are participants in the long term disability plan (the "LTD Plan") of the Debtors.

9. On September 20, 2009, this Court entered an Order authorizing the employment and retention of EG as LTD Committee counsel, *nunc pro tunc* to August 2, 2011 (Docket No. 6415) (the "EG Retention Order").

10. On December 14, 2011 this Court entered an Order increasing the Original Cap by an additional $200,000, for an aggregate cap of $400,000 (Docket No. 6978).

11. On April 18, 2012, this Court entered an Order (Docket No. 7558) (the "LTD Cap Increase Order") increasing the cap by an additional $200,000, for an aggregate cap of $600,000 (the "Current Cap"), which included a provision that the entry of the Order "shall not prejudice the LTD Committee's right to seek, upon notice and a hearing, a further increase in the Cap." LTD Cap Increase Order at 1.

12. On March 28, 2012, the Debtors moved this Court to appoint a neutral mediator concerning the modification or termination of the Retiree Welfare Plans and the LTD Plans, and authorizing the Debtors to pay the costs of engagement of the mediator (Docket No. 7463). On April 18, 2012 this Court entered an Order appointing a neutral mediator, Richard

Levin, concerning the modification or termination of the Retiree Welfare Plans and the LTD Plans, and authorizing and directing the Debtors to pay the reasonable costs and fees related to the costs of engagement of the mediator (Docket No. 7560).

13. The Debtors have agreed to extend the Current Cap to cover the costs of mediation through and including July 19, 2012, estimating the costs would be approximately $39,000.00 for the month of July. EG has reported its estimated fees on a monthly basis via email to the Debtors. The Debtors and the LTD Committee have no further understanding as to funding of the LTD Committee's counsel.

14. As described more fully below, EG has spent considerable time compiling and analyzing documents and data necessary to properly represent the LTD Plan Participants' issues and concerns in its negotiations with the Debtors' and "Official Committee of Unsecured Creditors" (the "Creditors Committee"). EG has also followed the directions of the mediator and responded to requests by the Debtors throughout the mediation, including preparing for and attending mediation sessions and preparing a detailed position paper for the use of the Debtors and a detailed analysis for the LTD Committee.

15. EG's monthly fees since its retention are as follows:

    a. August 2011: $59,704.50

    b. September 2011: $53,242.00

    c. October 2011: $48,812.00

    d. November 2011: $49,172.50

    e. December 2011: $39,164.50

    f. January 2012: $62,379.50

    g. February 2012: $68,413.25

    h. March 2012: $61,815.50

    i. April 2012: $84,933.00

    j. May 2012: $56,073.75

    k. June 2012: $83,079.00 (estimated)

16. EG's total fees through May, 2012, are broken down as follows:

| TASK | TOTALS |
| --- | --- |
| Case Administration | $ 932.50 |
| Asset Disposition | $ 104.50 |
| Meetings of and Comm. With Creditors | $ 103,833.50 |
| EG Retention | $ 34,298.50 |
| Employment & Retention Application -Other | $ 9,113.00 |
| EG Fee Applications | $ 27,736.50 |
| EG Fee Objections | $ 3,326.00 |
| Fee Applications and Invoices -Other | $ 16,462.00 |
| Fee Objections - Others | $ 2,973.00 |
| Non-Working Travel | $ 2,684.00 |
| Claims Administration and Objections | $ 2,477.50 |
| Business Operations | $ 1,059.50 |
| Employee Benefits/Pensions | $ 210,344.00 |
| Plan and Disclosure Statement | $ 1,057.00 |
| Financing/Cash Collections | $ 67.50 |
| Court Hearings | $ 14,165.00 |
| Labor Issues | $ 350.00 |
| Litigation | $ 151,706.50 |
| Research | $ 1,020.00 |
| **Total Fees** | **$ 583,710.50 (does not include June)** |

17. EG's fees have been very lean in comparison to other professionals. A comparison of other professionals engaged in these cases for a limited purpose shows that EG's fees are on par with or lower than many of the other retained professionals who do not have caps on their fees. To be clear, EG is not challenging the reasonableness of any of the fees for any of

WLM: 23900 v1

5

the other professionals retained in these cases. Quite the opposite. Other professionals' fees listed herein serve only to illustrate that the issues—including employee benefit issues—are complex and demand considerable time and expense.

| Firm | Role | Total Fees through May 31, 2012 |
|---|---|---|
| Elliott Greenleaf | Counsel to LTD Committee | $ 666,789.50 (includes June estimate)<br>$ 215,161.75 (2/1/12 – 4/31/12) |
| McCarter & English | Local Counsel to Retiree Committee | $ 324,482.50<br>$ 72,495.50 (2/1/12 – 4/31/12) |
| Togut Segal & Segal LLP | Counsel to Retiree Committee | $ 1,832,057.00*<br>$ 497,752.50 (2/1/12 – 4/31/12) |
| Alvarez & Marsal Healthcare Industry Group, LLC | Financial Advisor to Retiree Committee and LTD Committee | $ 767,472.50*<br>$ 459,702.50 (2/1/12 – 4/31/12) |
| Chilmark Partners, LLC | Consulting Expert to Debtors Related to Allocation Process | $ 6,475,806.00*<br>$ 750,000.00 (2/1/12 – 4/31/12) |
| Mercer (US) Inc. | Employee Benefit and Compensation Specialist and Consulting Expert to Debtors | $ 1,441,805.82*<br>$ 194,496.18 (2/1/12 – 4/31/12) |
| RLKS Executive Solutions LLC | Document Management and Data Preservation Consultants to the Debtors | $ 3,514,770.00*<br>$ 1,119,757.50 (2/1/12 – 4/31/12) |
| Huron Consulting Group | Accounting and Restructuring Consultant for the Debtors | $ 6,938,585.45<br>$ 105,401.25 (2/1/12 – 4/31/12) |
| *through 4/30/12 | | |

18.    To date, no objection by any party, including the United States Trustee, has been voiced informally or formally to the reasonableness of EG's fees.

### RELIEF REQUESTED

19.    By this Motion, the LTD Committee seeks to lift the Current Cap or, in the alternative, increase the Current Cap by an additional amount to cover all fees through the end of

mediation, and to increase the amount, if necessary, to cover a response to any motion to terminate or modify the long term disabled benefits or to approve a settlement regarding the same, including any reasonable and necessary fees to execute the settlement.

## BASIS FOR RELIEF

20. "Cause" exists to increase the Current Cap. Since its retention, EG has zealously advocated on behalf of the LTD Committee and performed its duties enumerated in the EG Retention Order. The LTD Committee agreed to participate in the mediation requested by the Debtors. EG and the LTD Committee have engaged in mediation in a fully and responsive manner. EG has attended all mediation sessions and agreed to mediate without further responses to document production requests from the Debtors. Another mediation session is scheduled for July 19, 2012, as mediation is still ongoing. The Current Cap therefore, must be lifted or, alternatively, increased to allow EG to continue to represent the LTD Committee in the mediation, and, if necessary, appropriately respond to termination or modification of benefits.

21. Following the formation of the LTD Committee, it was anticipated that the LTD Committee's role would only last approximately four months. Due to the limited role of the LTD Committee, the Cap was set at $200,000 based on a calculation that EG, as LTD Committee counsel, would require approximately $50,000 in fees per month. That same calculation was used to increase the Original Cap by $200,000 for four additional months. EG has closely tracked that $50,000 per month estimate. Variances are limited and have been justified. However, the discipline that has to be applied when keeping to a budget cannot allow professionals to forsake adequately representing their client to adhere to a cap that the circumstances in the case do not justify. As will be discussed below, that unwanted consequence has been avoided by EG to date. As the LTD Committee continues its mediation and

negotiations negotiating with the Debtors and the Creditors Committee in this matter, EG's request to remove the cap is motivated by a desire to remove an unfair limitation on the LTD Committee professionals or use of the cap to limit EG's ability to execute its duties to represent the LTD Committee.

22.     Since its retention, EG has efficiently staffed its representation of the LTD Committee and zealously performed its duties as LTD Committee counsel, including, but not limited to:

a.  Regularly holding meetings and providing updates to the LTD Committee;

b.  Drafting discovery requests directed to the Debtors and analyzing the Debtors' responses;

c.  Analyzing the Debtors' long term disability plan documents;

d.  Analyzing ERISA and other long term disability issues;

e.  Preparing committee by-laws;

f.  Negotiating with and retaining Kurtzman Carlton Consultants, LLC ("KCC") as website provider for the LTD Committee;

g.  Negotiating with and retaining Alvarez & Marsal Healthcare Industry Group ("A&M") as financial advisor;

h.  Providing the LTD Committee website with content, including answers to frequently asked questions;

i.  Attending court hearings;

j.  Attending meetings with the Debtors and benefit providers;

k.  Negotiating with the Debtors, Creditors' Committee and Retiree Committee regarding the continuation, modification or termination of LTD Plan Participant benefits following the Debtors' exit from these chapter 11 cases;

l.  Preparing for contingencies if a resolution of the LTD Plan Participant issues cannot occur without the intervention of a third party neutral;

m. Interacting with the Pension Benefit Guarantee Corporation ("<u>PBGC</u>") ; and

n. Participating in the mediation ordered by this Court on April 18, 2012.

23. These cases are complex. The issues related to the Debtors, Retirees and LTD Plan Participants are intertwined. Many LTD Plan Participants will become eligible to be retirees and there are multiple plan years covering the various LTD Plan Participants. Also, with respect to benefits, different options were available to LTD Plan Participants depending on the plan year in which they became disabled. Both A&M and EG have reviewed complicated data necessary for an actuarial claims analysis, as well as constructing a template for analyzing the strengths and weaknesses of the various LTD Plan Participants' claims which is essential in any negotiation with the Debtors and the Official Committee of Unsecured Creditors.

24. In addition, the underlying data necessary to assess the offers of replacement insurance has consumed considerable time for the LTD Committee and its professionals to compile and analyze. There have also been privacy concerns raised by the Debtors resulting in two negotiated confidentiality agreements containing multiple layers of protections and precautions which delayed EG's receipt of data.

25. EG has also received many questions from LTD Plan Participants and has worked with the LTD Committee on providing answers to those questions on the LTD Committee website maintained by KCC. It is understandable that people with severe disabilities would have a greater interest on the outcome of these chapter 11 cases than most creditors. LTD Plan Participants depend on the insurance currently being funded by the Debtors to pay for their immediate medical needs including, but not limited to: hospital stays, medication, physical therapy, and other treatment for their ailments. Many of these inquiries have been addressed without charge to the estate. Recently the LTD Committee or its professionals have been contacted by long term disabled employees who have received communications from third

parties, such as claims traders who have contacted the LTD constituency. The Committee professionals have responded to the bulk of these and all other inquiries on behalf of the Committee pursuant to 11 U.S.C. § 1102 (b)

26. EG has also participated in multiple meetings with the Debtors, the Retiree Committee, and Creditors' Committee and professionals' only meetings with the Retiree Committee and the Debtors. During those meetings, data and documents were exchanged. Since the mediation began, EG has been responsive to the mediator's requests to fully prepare and present its arguments as to the claims to which the LTD constituency is entitled. EG has prepared for and attended meetings with the mediator, the Debtors, the Creditors Committee, and the ad hoc committee. These meetings have constituted "professionals only" meetings, meetings only with the mediator, and a meeting with all the interested parties and their clients. In addition, the LTD Committee has reviewed documents from various long term disability employees and EG has begun the process of providing those documents to the Debtors at their request.

27. The LTD Committee and its counsel have primarily focused on (a) issues related to employee benefits, (b) managing communications and communicating with the LTD Committee and various individual LTD Plan Participants, and (c) litigation issues.

28. As requested in prior requests for increases in the cap, the litigation issues have focused on the preparation of a Rule 2004 examination, a request for documents in the alternative that would obviate the need for a Rule 2004 examination, and the negotiation and review of both the document production received from the Debtors and data forwarded by the Debtors and analyzed by the LTD Committee's actuary and financial advisors. EG has provided legal counsel in guiding the LTD Committee's financial advisor and actuary in requesting and managing the voluminous data and document production provided by the Debtors and their

professionals, including navigating the privacy and other related healthcare law issues related to the LTD Plan Participants. Because there are many years of long term disability plans and related documents, the task has been a formidable one.

29. EG and counsel to the Debtors continue to negotiate with respect to such plans and options. Until these issues are resolved, the LTD Plan Participants need counsel representing their interests. Should negotiations prove unfruitful, the Debtors, with the support of the Creditors' Committee, have already indicated they intend to move to terminate or modify benefits. In order to complete an faithfully and fully perform its duties to the LTD Plan Participants, the LTD Committee will need to object, as necessary, and be allowed to fully exercise all its options, including but not limited to objection to the termination or modification of the benefits of its constituency and be allowed to pursue all available appellate options.

30. As noted in the past, EG would not be entitled to unlimited compensation if the cap on EG's fees were lifted. EG's fees and expenses would still be subject to the reasonableness requirements of section 330 of the Bankruptcy Code. Moreover, EG's fees and expenses would continue to be subject to the oversight of all parties in interest in these cases, including the Debtors and the U.S. Trustee, as well as the Court. Therefore, there is no reason to limit EG's fees to an artificial cap and continue to require EG to request further increases to the cap.

31. It is therefore necessary and appropriate for this Court to lift the cap and allow the LTD counsel to be judged according to the same standards as other professionals in these cases receiving fees and expenses from the estate.

## NOTICE

32.     Notice of this Motion has been provided to (a) counsel to the Debtors; (b) counsel to the Creditors' Committee; (c) counsel to the Retirees Committee; (d) the United States Trustee for the District of Delaware; and (e) all parties required to receive service under Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  The LTD Committee respectfully submits that, given the administrative nature of the relief requested, no other notice of the relief requested herein need to be given.

**WHEREFORE**, the LTD Committee respectfully requests the entry of an Order, in the form attached herewith, (i) lifting the cap or, alternatively, increasing the Current Cap, to allow the LTD Committee to complete mediation and respond to any modification or termination of its benefits or effectuate settlement, as appropriate, and (ii) granting the LTD Committee such other and further relief as is just and proper.

Dated: July 16, 2012
Wilmington, Delaware

**ELLIOTT GREENLEAF**

_____
Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Shelley A. Kinsella (DE Bar No. 4023)
Jonathan M. Stemerman (DE Bar No. 4510)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com
Email: sak@elliottgreenleaf.com
Email: jms@elliottgreenleaf.com

*Counsel to the Official Committee of Long Term Disability Participants*