IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
*In re*                                                     :  Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                          :  Case No. 09-10138 (KG)
:
                Debtors. :  Jointly Administered
:
:  **Hearing date: August 22, 2012 at 10:00 a.m. (ET)**
:  **Objections due: August 8, 2012 at 4:00 p.m. (ET)**
------------------------------------------------------------X

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE
9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION
RESOLVING CLAIMS WITH JDS UNIPHASE CORPORATION**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 502 and 503(b)(9) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing NNI's entry into and approving a stipulation (the "Stipulation") with JDS Uniphase Corporation (the "Claimant" and, together with the Debtors, the "Parties"), attached hereto as **Exhibit B**, which resolves the Claimant's claims against NNI; and (ii) granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

**Jurisdiction**

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory bases for the relief requested herein are sections 105(a), 502 and 503(b)(9) of the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

3.  On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.  On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

---

[2]  Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]  The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6. Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7. By this Motion, the Debtors seek an order, pursuant to sections 105(a), 502 and 503(b)(9) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing NNI's entry into and approving the Stipulation, and (ii) granting them such other and further relief as the Court deems just and proper.

**Facts Relevant to this Motion**

8. On or about January 16, 2009, the Claimant sent a reclamation demand notice to the Debtors asserting a reclamation demand in the amount of $5,208,860.00 (the "Reclamation Demand").

---

[4] The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

9. Consistent with paragraph 9 of the Order Establishing Procedures for Addressing Reclamation Demands Pursuant to Section 105(a), 362 and 546(c) and Rule 9019 of the Federal Rules of Bankruptcy Procedure [D.I. 336] (the "Reclamation Order"), the Debtors paid $2,034,623.00 to the Claimant for a portion of the Claimant's Reclamation Demand.

10. On or about July 27, 2009, NNI and the Claimant entered into a Stipulation of Settlement of Reclamation Demand of JDS Uniphase Corp. (the "Reclamation Settlement"), which resulted in allowance of an additional reclamation claim by the Claimant against NNI in the amount of $208,787.00. As part of the Reclamation Settlement, the Parties agreed that the Claimant had an administrative claim under 11 U.S.C. § 503(b)(9), which is entitled to priority under 11 U.S.C. § 507(a)(2), in the amount of $9,330.00 (the "Reclamation Administrative Amount").

11. On or about July 29, 2009, NNI filed a Notice of Proposed Settlement of Reclamation Demand of JDS Uniphase Corp. [D.I. 1229] regarding the Reclamation Settlement, which consistent with paragraphs 2(h) and 2(i) of the Reclamation Order was deemed approved without need for further order of the Court on August 11, 2009 upon the passage of ten days from July 29, 2009, the date on which the Notice of Proposed Settlement of Reclamation Demand of JDS Uniphase Corp. was filed with the Court, without an objection thereto.

12. On or about September 30, 2009, the Claimant filed proof of claim number 5548 for goods sold in the amount of $653,932.00 ("Claim No. 5548").

13. On or about September 30, 2009, the Claimant filed proof of claim number 5549 for goods sold in the amount of $3,009,690.00 ("Claim No. 5549").

14. On or about September 30, 2009, the Claimant filed proof of claim number 5550 in the amount of $9,330.00 as an administrative priority claim under 11 U.S.C. § 503(b)(9) to

assert the Reclamation Administrative Amount as agreed in the Reclamation Settlement ("Claim No. 5550" and, together with Claim No. 5548 and Claim No. 5549, the "Claims").

15. In an effort to negotiate an expeditious resolution of the dispute between the Debtors and the Claimant, the Parties entered into arm's-length settlement discussions.

16. As a result of these negotiations, subject to this Court's approval and conditioned upon the entry by the Claimant and the Canadian Settlement Parties (as defined below) into the JDSU Canadian Settlement (as defined below) and its acknowledgement by the Monitor that is to be delivered to the Parties, NNI has reached a compromise with the Claimant that[5]:

> (i) Claim No. 5548 should be disallowed in its entirety and expunged; and
>
> (ii) Claim No. 5549 should be allowed as a general unsecured claim in the amount of $3,009,690.00; and
>
> (iii) Claim No. 5550 should be allowed as an administrative priority claim in the amount of $9,330.00.

In consideration for the partial allowance of the Claims, the Parties have agreed, subject to this Court's approval and entry by the Claimant and the Canadian Settlement Parties into the JDSU Canadian Settlement and its acknowledgement by the Monitor, to release and forever discharge each other from any and all liability they now have or hereafter may have arising from or related to the Claims, the OEM Purchase and Sale Agreement dated effective January 1, 2006 between the Claimant and NNL (the "MPSA"), and the various purchase orders issued by the Debtors to the Claimant under the MPSA. Notwithstanding the foregoing, nothing therein releases, waives or otherwise affects the Debtors' right to take any action or pursue any claim or case against the

---

[5] This discussion is intended as a summary of the terms of the Stipulation. If any conflict arises between this overview and the Stipulation, the terms of the Stipulation shall control.

5

Claimant as provided for or allowed in Section 11, Warranties, and Section 18, Indemnity, of the MPSA.

17. The Claimant and NNC, NNL and Nortel Networks Technology Corporation ("NNTC") (collectively, the "Canadian Settlement Parties") have entered into that certain Claim Settlement Agreement dated June 27, 2012 (the "JDSU Canadian Settlement") that has been acknowledged by the Monitor, pursuant to which the Claimant and the Canadian Settlement Parties have agreed to settle the claims asserted by the Claimant against the Canadian Debtors in the Canadian Proceedings and have agreed that the Claimant shall have an allowed general unsecured claim against NNL in the amount of $243,616 plus CAD$70,006 and against NNTC in the amount of $326,860.

18. Claim No. 5548, that is to be disallowed in its entirety and expunged, is composed of invoices that are properly allocable to the Canadian Settlement Parties, and which the Canadian Settlement Parties have agreed to allow in full, to the extent included in the Canadian Settlement Parties' books and records and not previously paid, as part of the allowed general unsecured claims against NNL and NNTC in the JDSU Canadian Settlement.

19. The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of the Claims through the Stipulation is appropriate and in the best interest of both their estates and their creditors.

**Basis for Relief**

20. The Debtors seek authorization to enter into the Stipulation under sections 105(a), 502 and 503(b)(9) of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

21.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (internal quotation omitted) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

22.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants

7

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

23.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

24.     The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation, and request that NNI's entry into the Stipulation be authorized under Bankruptcy Rule 9019.  While the Debtors are prepared to litigate Claim No. 5548 and believe that they would prevail in such litigation, litigation carries with it inherent uncertainties and there is no assurance that such litigation would result in the complete disallowance of Claim No. 5548 as reflected in the settlement between the Parties.  Also, the settlement reflected in the Stipulation reduces a purported $3,672,952.00 in Claims filed by the Claimant against NNI's estate by $653,952.00 to the lesser amount of $3,019,020.00.  This resolution fairly balances the Debtors' likelihood of success on the merits of Claim No. 5548 against their interest in avoiding the uncertainty of litigation.

25.     In addition, litigation of Claim No. 5548 would result in the estate's expenditure of significant legal fees.  Finally, the interests of the creditors militate in favor of approval of the Stipulation.  The Debtors believe that the interests of their creditors are served by the prompt and

efficient resolution of the Claims and the avoidance of legal expenses that would be incurred if Claim No. 5548 were to be litigated.

26. In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

## Notice

27. Notice of the Motion has been given via electronic transmission, hand delivery or first class mail to (i) counsel to the Claimant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

28. No prior request for the relief sought herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: July 26, 2012
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*