# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------X
:
*In re*                                                                     :          Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                                :
:          Case No. 09-10138 (KG)
Debtors.                                         :
:          (Jointly Administered)
-------------------------------------------------------- X
:
Nortel Networks Inc.                                            :
:
Plaintiff,                                       :
:
v.                                                                          :          Adv. Proc. No. 10-53169 (KG)
:
CSWL, Inc.,                                                        :
Defendant.                                     :
-------------------------------------------------------- X
:
Nortel Networks Inc.                                            :
:
and                                                                      :
:          Adv. Proc. No. 10-55165 (KG)
Nortel Networks (CALA) Inc.                            :
:
Plaintiffs,                                      :
:          **Hearing date:  August 22, 2012 at 10:00 am (ET)**
v.                                                                          :          **Objections due: August 10, 2012 at 4:00 pm (ET)**
:
Telecom Network Solutions, Inc., et al.            :
:
Defendants.                                  :
:
--------------------------------------------------------X

[1]  In addition to Nortel Networks Inc. the Debtors in the Chapter 11 cases are:  Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc.  Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY
RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION
OF SETTLEMENT OF AVOIDANCE CLAIMS BY AND AMONG
NORTEL NETWORKS INC., NORTEL NETWORKS (CALA) INC., CSWL, INC. AND
CALIFORNIA SOFTWARE COMPANY LIMITED**

Nortel Networks Inc. ("NNI"), Nortel Networks (CALA) Inc. ("NN CALA") and certain of their affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 502, 547, and 550 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to enter into and approving a stipulation (the "Stipulation") with CSWL, Inc. ("Defendant") and California Software Company Limited ("Calsoft," and together with NNI, NN CALA and Defendant, the "Parties"), in the form attached hereto as **Exhibit B**, resolving the adversary proceedings entitled Nortel Networks Inc. v. CSWL, Inc., Adv. Proc. No. 10-53169 (KG) (the "Adversary Proceeding") and Nortel Networks Inc., et al. v. Telecom Network Solutions, Inc., et al., Adv. Proc. No. 10-55165 (KG) (the "Beeline Proceeding") as to Defendant only and granting such other and further relief as the Court (the "Court" or the "Bankruptcy Court") deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

**Jurisdiction**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

3.        On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA,[2]

filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are

consolidated for procedural purposes only.  The Debtors continue to operate as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.        The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [Main D.I.s 141, 142],[3] and an ad hoc group of bondholders has been

organized (the "Bondholder Group").

5.        On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

---

[2]        NN CALA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]        Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __." Citations herein to the docket in this Adversary Proceeding (Adv. Pro. No. 11-50203) is in the form "Adv. D.I. __."

[4]        The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.       Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors, available at http://dm.epiq11.com/nortel.

## Relief Requested

7.       By this Motion, the Debtors seek an order, pursuant to sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Stipulation, (ii) authorizing but not directing the Debtors to take all actions reasonably appropriate to perform their obligations under the Stipulation, and (iii) granting them such other and further relief as the Bankruptcy Court deems just and proper.

## Facts Relevant to this Motion

8.       Defendant supplied NNI with software engineering and consulting services.

9.       Defendant is a wholly owned subsidiary of Calsoft.  Calsoft is not a party in the Adversary Proceeding or the Beeline Proceeding.

---

[5]       The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

4

10.     NNI's books and records indicate that within ninety (90) days prior to the Petition Date, NNI made one or more transfers of an interest in its property to or for the benefit of Defendant in the aggregate amount of $1,651,978 (the "Subject Transfers").

11.     On October 4, 2010, NNI commenced the Adversary Proceeding by filing its Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code [Adv. D.I. 1] (the "Complaint") against Defendant in this Court, pursuant to which NNI sought to avoid and certain enumerated transfers.

12.     On November 9, 2010, NNI and NN CALA commenced the Beeline Proceeding[6] by filing a complaint against Beeline.com, Inc. ("Beeline") in this Court in which NNI and NN CALA sought to avoid and recover certain transfers of interests in their respective property to Beeline in the 90 days prior to the NNI Petition Date and the NN CALA Petition Date, as applicable.

13.     On February 23, 2011, Defendant filed an Answer to the Complaint [Adv. D.I. 23] (the "Answer") in the Adversary Proceeding, denying certain allegations and asserting various defenses, including, without limitation, an ordinary course of business defense.

14.     After the filing of the Complaint and Answer, NNI determined that (a) one of the transfers identified in the Complaint, in the amount of $466,394, was not made in the 90 days prior to the NNI Petition Date; (b) NNI had made a transfer in the amount of $122,500  to Defendant in the 90 days prior to the NNI Petition Date which was not, but should have been, included, among the transfers enumerated in the Complaint; and (c) NNI had made transfers to Beeline.com, Inc. for the benefit of Defendant in the amount of $245,438 (the "Beeline

---

[6]     The Beeline Proceeding was originally captioned Nortel Networks Inc., et al. v. Beeline.com, Inc. but is now captioned Nortel Networks Inc., et al. v. Telecom Network Solutions, Inc., et al..

Transfers"), which transfers were among those NNI and NN CALA sought to recover in the Beeline Proceeding.

15.    On June 22, 2011, NNI and NN CALA filed an amended complaint in the Beeline Proceeding naming Defendant as an additional defendant in that proceeding and seeking recovery of the Beeline Transfers from Defendant.

16.    NNI's claim against Defendant to avoid and recover alleged preferential transfers (the "Avoidance Claim") encompasses all of the Subject Transfers, consisting of (a) the transfers identified in the Complaint with the exception of the transfer in the amount of $466,394.24 that NNI later determined was not made in the 90 days prior to the Petition Date; (b) the transfer by NNI to Defendant in the amount of $122,500 not identified in the Complaint; and (c) the Beeline Transfers.

17.    On October 27, 2010, the Bankruptcy Court entered an Order Authorizing And Approving Settlement Procedures To Settle Certain Avoidance Claims (the "Avoidance Claims Settlement Procedures Order"), which requires the Debtors to obtain Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 before they settle certain avoidance claims where the asserted claim amount is greater than $1,000,000 [Main D.I. 4211].

18.    Since the Complaint and Answer were filed, the Parties have engaged in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by further litigation of the Avoidance Claim, the Parties have agreed to settle the Adversary Proceeding on the terms set forth in the Stipulation, attached hereto as **Exhibit B**.

19.    Pursuant to the Stipulation[7] and subject to the Bankruptcy Court's approval, Calsoft shall pay to NNI the sum of $100,000 (the "Settlement Amount") in full and final

---

[7]    In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

settlement and satisfaction of the Avoidance Claim.  In consideration of the mutual promises and

covenants set forth in the Stipulation and other good and valuable consideration, Defendant and

Calsoft have agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release and

forever discharge NNI and NN CALA, their past and present parents, subsidiaries, affiliates,

general partners, limited partners, shareholders, directors, officers, employees, agents, and

attorneys, and each of their predecessors, successors and assigns (collectively, the "Debtor

Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages,

actions, suits, causes of action, and setoffs, whether known or unknown, suspected or

unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent,

liquidated or unliquidated, that Defendant or Caloft now has, had, may have had, or hereafter

may have against any of the Debtor Releasees regarding the Avoidance Claim, the Adversary

Proceeding, the Beeline Proceeding, any transaction described or referred to in the Complaint,

and/or any transaction described or referred to in the Amended Beeline Complaint.  For the

avoidance of doubt, Defendant and Calsoft are releasing any and all claims arising under §

502(h) of the Bankruptcy Code.

20.     In consideration of the mutual promises and covenants set forth in the Stipulation

and other good and valuable consideration, NNI has agreed, subject to the Bankruptcy Court's

approval, to, *inter alia*, release and forever discharge Defendant, its past and present parents,

subsidiaries, affiliates (including without limitation Calsoft), general partners, limited partners,

shareholders, directors, officers, employees, agents, and attorneys, and each of their

predecessors, successors and assigns (collectively, the "Defendant Releasees"), from any and all

claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of

action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued,

7

matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that

Plaintiff now has, had, may have had, or hereafter may have against any of the Defendant

Releasees regarding the Avoidance Claim, the Adversary Proceeding, the Beeline Proceeding,

any transaction described or referred to in the Complaint, and any transaction described or

referred to in the Amended Beeline Complaint.

## Basis for Relief

21.     The Debtors seek authorization for NNI to enter into the Stipulation under

sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section

105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is

necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice

and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

22.     Citing this authority, the Third Circuit has emphasized that "[c]ompromises are

favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)

(quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health

Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally

favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'[i]n administering

reorganization proceedings in an economical and practical manner it will often be wise to

arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  In re

Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for

Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  Courts

in this District have also recognized that the approval of a proposed compromise and settlement

is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram Healthcare

Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

23.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

24.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

25.     The Debtors respectfully submit that the Martin Factors weigh heavily in favor of approving the Stipulation.  While NNI and NN CALA are prepared to litigate the Avoidance Claim, Defendant has interposed certain defenses, including an ordinary course of business defense pursuant to 11 U.S.C. § 547(c)(2) based on the timing of the relevant payments and a

subsequent new value defense pursuant to 11 U.S.C. § 547(c)(4).  Based on the exchange of

information and accompanying discussions with Defendant, and the Debtors' evaluation of

Defendant's defenses, the Debtors have determined that potential value that could be obtained

through a litigation of the Avoidance Claim on the merits likely would be outweighed by the

time, costs and risks associated therewith.

26.    The Debtors recognize that litigation of the Avoidance Claim carries with it

inherent uncertainties and there can be no assurance that litigation of the Avoidance Claim would

achieve a better result than the one set forth in the Stipulation.  Pursuant to the settlement

reflected in the Stipulation, and upon the Settlement Date (as defined in the Stipulation), Calsoft

will pay NNI $100,000 and Defendant and Calsoft will waive any claim arising out of Section

502(h) of the Bankruptcy Code.  This resolution fairly balances NNI's likelihood of success on

the merits of the Avoidance Claim against its interest in avoiding the uncertainty of litigation.

27.    In addition, further litigation of the Avoidance Claim would result in the Debtors'

expenditure of considerable additional legal fees.  These would include fees associated with

formal discovery, retention of an expert, briefing of dispositive motions and potentially

conducting a trial of the Avoidance Claim.  In the absence of a settlement, the Debtors would be

burdened with the time and costs of ongoing litigation, which would be disruptive of the estate's

efforts to resolve the matters that are essential to the ultimate resolution of these cases.

28.    Finally, the interests of the creditors weigh in favor of approval of the Stipulation.

The Debtors believe that the interests of their creditors are served by the prompt and efficient

resolution of the Avoidance Claim and the avoidance of litigation risk and substantial legal

expenses that would be incurred if the Avoidance Claim were to be further litigated.

29.     In light of the foregoing, the Debtors respectfully seek authorization for NNI and NN CALA to enter into the Stipulation and approval of the Stipulation.

## Notice

30.     Notice of the Motion has been given via first class mail to (i) Defendant and Calsoft; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

31.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion, approve the Stipulation, and authorize the Debtors to enter into the Stipulation; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: July 27, 2012
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
Matthew J. Vanek (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*