### CROSS-BORDER PROTOCOL ON THE
### RESOLUTION OF CLAIMS

This cross-border claims protocol (the "**Claims Protocol**") is intended to supplement the procedures established by each of the U.S. Court and the Canadian Court with respect to the resolution of claims filed against the U.S. Debtors and the Canadian Debtors in the Insolvency Proceedings (each as defined herein).

## PART I - BACKGROUND

*Canadian and U.S. Proceedings*

1.    On January 14, 2009, Nortel Networks Corporation and certain of its subsidiaries and affiliates (collectively, the "**Canadian Debtors**")[1] commenced reorganization proceedings (the "**Canadian Proceedings**") by filing an application under Canada's *Companies' Creditors Arrangement Act* (the "**CCAA**") with the Ontario Superior Court of Justice, Commercial List (the "**Canadian Court**") and an Order (as amended, the "**CCAA Order**") has been granted under which (a) the Canadian Debtors have been determined to be entitled to relief under the CCAA, and (b) Ernst & Young Inc. was appointed as monitor (the "**Monitor**") in the Canadian Proceedings.

2.    On January 14, 2009, Nortel Networks Inc. and certain of its subsidiaries and affiliates (collectively, the "**U.S. Debtors**")[2] commenced reorganization cases (collectively, the

---

[1]    The Canadian Debtors are:  Nortel Networks Corporation; Nortel Networks Limited; Nortel Networks Technology Corporation; Nortel Networks Global Corporation; and Nortel Networks International Corporation.

[2]    The U.S. Debtors are:  Nortel Networks Inc.; Nortel Networks Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros Inc.; Sonoma Systems; Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks Optical Components Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom

"**Chapter 11 Cases**") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**U.S. Court**"), and such cases have been consolidated (for procedural purposes only) under Case No. 09-10138 (KG). The U.S. Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases. An official committee of unsecured creditors (the "**Creditors' Committee**") was appointed by the United States Trustee (the "**U.S. Trustee**") in these Chapter 11 Cases on January 22, 2009. An ad hoc group of bondholders whose members have executed or in the future will execute confidentiality agreements with the Debtors (the "**Bondholder Group**") has also been organized.

3.      By Order dated January 15, 2009, the U.S. Court approved the U.S. Debtors' retention of Epiq Bankruptcy Solutions, LLC as the claims and noticing agent in the Chapter 11 Cases.

4.      The Monitor filed petitions and obtained an Order in the U.S. Court granting recognition of the Canadian Proceedings under chapter 15 of the Bankruptcy Code. Nortel Networks Inc. also filed an application and obtained an Order in the Canadian Court pursuant to section 18.6 of the CCAA recognizing the Chapter 11 Cases as "foreign proceedings" in Canada and giving effect to the automatic stay thereunder in Canada. None of the U.S.

International Inc.; Nortel Networks Cable Solutions Inc.; and Nortel Networks (CALA) Inc. Nortel Networks (CALA) Inc. commenced its Chapter 11 Case on July 14, 2009.

Debtors or Canadian Debtors are applicants in both the Chapter 11 Cases and Canadian Proceedings.

5.     For convenience, (i) the U.S. Debtors and the Canadian Debtors shall be referred to herein collectively as the **"Debtors"**, (ii) the Chapter 11 Cases and the Canadian Proceedings shall be referred to herein collectively as the **"Insolvency Proceedings"**, (iii) the U.S. Court and the Canadian Court shall be referred to herein collectively as the **"Courts"**, and (iv) an order of the U.S. Court or the Canadian Court is referred to herein as an **"Order"**.

*Cross-Border Insolvency Protocol*

6.     An amended Cross-Border Insolvency Protocol (the **"Insolvency Protocol"**) was approved by the U.S. Court and Canadian Court pursuant to separate Orders entered by the Courts on June 29, 2009 and June 30, 2009, respectively. Nothing herein is intended to waive any party's rights under the Insolvency Protocol. To the extent of any direct and irreconcilable conflict between the Insolvency Protocol and this Claims Protocol with respect to any matter concerning claims administration and claims adjudication procedures, the term(s) of this Claims Protocol shall govern.

7.     The purpose of this Claims Protocol is to supplement the procedures established by the Courts in the Bar Date Orders (as defined herein) and in any subsequent Orders related to claims (including the claims resolution order sought by the Canadian Debtors from the Canadian Court concurrently with such Court's approval of this Claims Protocol, the **"Claims Resolution Order"**), including Excluded Claims (as defined herein), to

3

establish an efficient and consistent procedure to address the filing and resolution of claims in the Insolvency Proceedings.

*Notice of Deadline and of Procedures for Filing Claims*

8.      By Orders dated July 30, 2009 (as has been or may be supplemented, the **"Canadian Bar Order"**) and August 4, 2009 (as has been or may be supplemented, the **"U.S. Bar Order"** and together with the Canadian Bar Order, the **"Bar Date Orders"**), the Canadian Court and U.S. Court each set a deadline of September 30, 2009 at 4:00 p.m. prevailing Eastern Time (as has been or may be supplemented, the **"Bar Date"**)[3] for the filing and receipt of claims in the Insolvency Proceedings, other than (i) certain claims that were subject to a later bar date and (ii) certain claims exempted from the provisions of the Bar Date Orders (**"Excluded Claims"**).

9.      As the Debtors' collective corporate structure includes 21 separate Debtor entities, the Debtors propose to implement this Claims Protocol to facilitate the resolution of claims that have been or may be filed in the Canadian Proceedings and the Chapter 11 Cases. Nothing in this Claims Protocol is intended to waive or modify the Bar Date or the protections afforded to the Debtors under the Bar Date Orders.  To the extent of any direct and irreconcilable conflict between the Bar Date Orders and this Claims Protocol with respect to any matter concerning Overlapping Claims or Same-Creditor Claims, the term(s) of this Claims Protocol shall govern.

---

[3]      In the case of Nortel Networks (CALA) Inc., by an Order dated December 2, 2009, the U.S. Court set a deadline of January 25, 2010 at 4:00 p.m. prevailing Eastern Time for the filing and receipt of claims against Nortel Networks (CALA) Inc. in the Chapter 11 Cases.

**PART II – SCOPE OF THIS CLAIMS PROTOCOL**

10.     This Claims Protocol establishes procedures that shall govern the coordination and resolution of Overlapping Claims and Same-Creditor Claims (each as defined below) filed in the Canadian Proceedings and the Chapter 11 Cases.

11.     For the purposes of this Claims Protocol, an "**Overlapping Claim**" is a claim or portion thereof that (i) has been filed in both the Canadian Proceedings and the Chapter 11 Cases; (ii) by the same party or by the same affiliated parties; and (iii) arises from the same underlying claim, action, liability, property, agreement, lease, debt or transaction.  For the avoidance of doubt, the definition of Overlapping Claims shall include, but not be limited to, any (i) guarantee and indemnity claims where the direct claim is filed against a debtor in one jurisdiction and the guarantee or indemnity claim is filed against a debtor in the other jurisdiction; and (ii) duplicate claims filed in both jurisdictions (claims filed in both jurisdictions by the same or affiliated party asserting the same amount and underlying liability).

12.     For the purposes of this Claims Protocol, "**Same-Creditor Claims**" are claims or portions thereof that: (i) have been filed in both the Canadian Proceedings and the Chapter 11 Cases; (ii) by the same party or by the same affiliated parties; and (iii) are not an Overlapping Claim (each such claim, a "**Same-Creditor Claim**").

13.     For the purposes of this Claims Protocol, the following categories of claims shall not constitute Overlapping Claims or Same-Creditor Claims regardless of whether they would otherwise fall within the definitions of Overlapping Claims or Same-Creditor Claims:

(a)     U.K. pension claims (including, funding guarantee claims, insolvency guarantee claims, Financial Support Direction liability claims and claims by Nortel Networks U.K. Pension Trust Limited, the U.K. Pension Protection Fund, the Pensions Regulator under *The Pensions Act 2004* (U.K.) and the joint administrators of the various EMEA Debtors related to the foregoing);

(b)     claims in respect of the determination of liabilities and funded status of the Nortel Networks Negotiated Pension Plan and the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan and in respect of the Ontario Pension Benefits Guarantee Fund; and

(c)     the following employee-related matters:

    (i)     any procedure, protocol or methodology for calculating termination and severance pay claims and any process for any resolution of disagreements regarding contract obligations and qualifications for eligibility of such claims (including the calculation of benefits or liabilities),

    (ii)     the actuarial methods and assumptions that will be used to determine non-registered pension claims, Long Term Disability claims and benefit claims and any process for any resolution of disagreements regarding the interpretation or application of plan criteria for such claims (including the calculation of benefits or liabilities),

    (iii)     the form of an order related to Compensation Claims (including, proposed procedures relating to any bar date for claims of employees and retirees),

    (iv)     deferred compensation claims relating to the Nortel Networks U.S. Deferred Compensation Plan (to the extent not otherwise addressed by the Cross-Border Claims Protocol), and

    (v)     the Calgary employee claims contemplated by the action bearing court file number 0901-10504 in the Alberta Court of Queen's Bench.

14.     For purposes of this Claims Protocol, a **"Bond Claim"** is any claim arising from or related to the Bondholder Trust Indenture (as defined in the Canadian Bar Order), including claims filed by the indenture trustees.

## PART III – COOPERATION AND CONSULTATION

15.     The Canadian Debtors, the Monitor, and the U.S. Debtors shall share information with respect to any Overlapping Claims and Same-Creditor Claims, including without limitation by meeting on a monthly basis to review these claims. The Canadian Debtors, the Monitor and the U.S. Debtors shall cooperate and coordinate the collection of information regarding Overlapping Claims and Same-Creditor Claims from the Canadian Debtors, the U.S. Debtors and the claimants.

16.     Information exchanged between the Monitor, the Canadian Debtors and the U.S. Debtors pursuant to this Claims Protocol may be shared by such parties with their respective stakeholders, subject to appropriate written confidentiality agreements, and the Monitor, the Canadian Debtors and the U.S. Debtors may consult with their respective stakeholders with respect to all such information. In the case of the U.S. Debtors, for the avoidance of doubt, such stakeholders include the Creditors' Committee and the Bondholder Group.

## PART IV – APPLICABLE PROCEDURES FOR RESOLVING CLAIMS

### *Resolution of Overlapping Claims*

17.     The following procedures shall apply with respect to the resolution of Overlapping Claims (other than the Bond Claims, to which Paragraph 17(e) shall apply):

(a)    For Overlapping Claims that either (i) assert an amount greater than $500,000 in both jurisdictions or (ii) are wholly or partially unliquidated and the Monitor and the U.S. Debtors each propose to seek to allow, stipulate or settle for an amount greater than $500,000 in their respective jurisdictions:  the Canadian Debtors, the Monitor and the U.S. Debtors shall not respond to or resolve an Overlapping Claim without first complying with the consultation procedures set forth in Paragraph 15 (and in the case of the U.S. Debtors, Paragraph 16) above.

(b)    For Overlapping Claims that either (i) assert an amount less than $1 million in both jurisdictions or (ii) are wholly or partially unliquidated and the Monitor and the U.S. Debtors each propose to seek to allow, stipulate or settle for an amount less than $1 million in their respective jurisdictions:  following satisfaction of Paragraph 17(a) above, the Monitor, the Canadian Debtors and the U.S. Debtors shall be entitled to respond to the Overlapping Claim and seek resolution of such claim in compliance with their respective claims resolution orders and procedures (including, in the case of the Canadian Debtors and the Monitor, the Claims Resolution Order).

(c)    For Overlapping Claims that either (i) assert an amount equal to or greater than $1 million in either jurisdiction or (ii) are wholly or partially unliquidated and the Monitor or the U.S. Debtors propose to seek to allow, stipulate or settle for an amount equal to or greater than $1 million in their respective jurisdictions (the "**Material Overlapping Claims**"):  if the Monitor, the Canadian Debtors and the U.S. Debtors (in the case of the U.S. Debtors, after consultation with the Creditors' Committee and the Bondholder Group) agree on the appropriate

8

resolution (in each jurisdiction) with respect to any Material Overlapping Claim, then such Material Overlapping Claim can be dealt with in accordance with the agreed-upon approach (which may include utilizing the claims resolution procedures applicable in each jurisdiction).

(d)     If the Monitor, the Canadian Debtors and the U.S. Debtors in accordance with the terms hereof cannot agree on the appropriate resolution of Material Overlapping Claims in each jurisdiction, then the Monitor, the Canadian Debtors and the U.S. Debtors shall seek joint direction from the Judges of both the Canadian Court and the U.S. Court regarding the resolution of the claims, absent other agreement by the Canadian Debtors, the Monitor and the U.S. Debtors. Written notice of the request for court resolution of such Material Overlapping Claims along with the materials in support of such relief shall be served no less than 10 calendar days prior to the proposed hearing.[4]

(e)     If the Monitor and the Canadian Debtors, on the one hand, or the U.S. Debtors, on the other hand, proposes to allow, stipulate or settle the Bond Claims (the "**Settlement**") and, after consulting with the other party with respect to such Settlement as provided in Paragraph 15 (and in the case of the U.S. Debtors, Paragraph 16), the party not proposing such Settlement does not agree with such Settlement, such party may request that the hearing to allow the Bond Claims in the Settlement be a joint hearing.

*Resolution of Same-Creditor Claims*

18.     The following procedures shall apply with respect to the resolution of Same-Creditor Claims (except with respect to the Bond Claims):

(a)     For Same-Creditor Claims that either (i) assert an amount greater than $500,000 in both jurisdictions or (ii) are wholly or partially unliquidated and the Monitor and the U.S. Debtors each propose to seek to allow, stipulate or settle for an amount greater than $500,000 in their respective jurisdictions: the Canadian Debtors, the Monitor and the U.S. Debtors shall not respond to or resolve a Same-Creditor Claim without first complying with the consultation procedures set forth in Paragraph 15 (and in the case of the U.S. Debtors, Paragraph 16) above.

(b)     For Same-Creditor Claims that either (i) assert an amount less than $1 million in both jurisdictions or (ii) are wholly or partially unliquidated and the Monitor and the U.S. Debtors each propose to seek to allow, stipulate or settle for an amount less than $1 million in their respective jurisdictions: following satisfaction of Paragraph 18(a) above, the Monitor, the Canadian Debtors and the U.S. Debtors shall be entitled to respond to the Same-Creditor Claim and seek resolution of such claim in compliance with their respective claims resolution orders and procedures (including, in the case of the Canadian Debtors and the Monitor, the Claims Resolution Order).

---

[4]     In Canada, (i) such materials shall include the Monitor's Report, if any, being filed with respect to the motion, and (ii) service shall be made on the Service List as posted on the Monitor's website (the "**Service List**") and on the party that filed the affected claim (and their counsel, if known).

(c)     For Same-Creditor Claims that either (i) assert an amount equal to or greater than $1 million in either jurisdiction or (ii) are wholly or partially unliquidated and the Monitor or the U.S. Debtors propose to seek to allow, stipulate or settle for an amount equal to or greater than $1 million in their respective jurisdictions (the "**Material Same-Creditor Claims**"):  if the Monitor, the Canadian Debtors and the U.S. Debtors (in the case of the U.S. Debtors, after consultation with the Creditors' Committee and the Bondholder Group) agree on the appropriate resolution (in each jurisdiction) with respect to any Material Same-Creditor Claim, then such claim can be dealt with in accordance with the agreed-upon approach (which may include utilizing the claims resolution procedures applicable in each jurisdiction).

(d)     If the Monitor, the Canadian Debtors and the U.S. Debtors (in the case of the U.S. Debtors, after consultation with the Creditors' Committee and the Bondholder Group) cannot agree on the appropriate resolution of Material Same-Creditor Claims in each jurisdiction, then such claims can be resolved in each jurisdiction in accordance with applicable claims resolution orders and procedures (including, in the case of the Canadian Debtors and the Monitor, the Claims Resolution Order).

## PART V – THE COURTS AND THIS CLAIMS PROTOCOL

### *Comity and Independence of the Courts*

19.     The approval and implementation of this Claims Protocol shall not divest or diminish the U.S. Court's and the Canadian Court's respective independent jurisdiction over the

subject matter of the Chapter 11 Cases and the Canadian Proceedings, respectively. By approving and implementing this Claims Protocol, none of the U.S. Court, the Canadian Court, the Debtors nor any creditor or any other party in interest shall be deemed to have approved or engaged in any infringement on the sovereignty of the United States or Canada.

## *Effectiveness; Modification*

20.    This Claims Protocol shall become effective only upon its approval by both the U.S. Court and the Canadian Court.

21.    This Claims Protocol may not be supplemented, modified, terminated or replaced in any manner except upon approval of such modifications by both the U.S. Court and the Canadian Court after appropriate notice to all parties in interest as required under the rules of the Courts and a hearing in both Courts. Notice of any legal proceeding to supplement, modify, terminate or replace this Claims Protocol shall be given in accordance with paragraph 28 of the Insolvency Protocol, provided that, the party giving notice shall provide no less than 10 calendar days prior written notice of such proceeding and its materials in support of such relief.[5]

## *Procedure for Resolving Disputes under the Claims Protocol*

22.    Disputes relating to the terms, intent or application of this Claims Protocol may be addressed by interested parties to the U.S. Court, the Canadian Court or both Courts upon notice in accordance with paragraph 28 of the Insolvency Protocol. In rendering a

---

[5]    In Canada, (i) such materials shall include the Monitor's Report, if any, being filed with respect to the motion, and (ii) service shall be made on the Service List.

decision or Order in any such dispute, the Court to which the issue is addressed: (a) shall consult with the other Court; and (b) may, in its sole and exclusive discretion, either: (i) render a binding decision or Order after such consultation; (ii) defer to the other Court by transferring the matter, in whole or in part, to such other Court; or (iii) seek a Joint Hearing of both Courts in accordance with paragraph 12 of the Insolvency Protocol. Notwithstanding the foregoing, in making a decision or Order under this paragraph, each Court shall give due consideration to the independence, comity and inherent jurisdiction of the other Court established under existing law.

## PART VI - GENERAL

### Distributions on Overlapping Claims and Same-Creditor Claims

23.   No claimant holding an Overlapping Claim or Same-Creditor Claim shall receive aggregate distributions from the Debtors on account of such claim(s) in excess of 100% of the amount of such allowed claim(s) (including any post-petition interest or other amounts permitted under applicable law).

### Rights to Appear and Be Heard

24.   The Canadian Debtors, the Monitor, the U.S. Debtors, the Creditors' Committee and the Bondholder Group shall have the right to support or object and to be heard at any hearing provided for herein in either or both of the Canadian and U.S. Courts with respect to Specific Claims (as defined in the Claims Resolution Order), Overlapping Claims or Same-Creditor Claims.

*Preservation of Rights*

25.     The resolution of an Overlapping Claim or a Same-Creditor Claim in one of the Chapter 11 Cases or the Canadian Proceedings shall be without prejudice to the rights and defenses of the Canadian Debtors, the Monitor or the U.S. Debtors with respect the Overlapping Claim or Same-Creditor Claim in the other jurisdiction (subject to any applicable limitations on distributions to which a creditor may be allowed to recover for its claim).

26.     Nothing in this Claims Protocol shall prejudice the right, if any, of any Debtor, the Monitor, the Creditors' Committee, the Bondholder Group or any other party in interest to dispute or assert set-offs or other defenses to any claim filed in the Insolvency Proceedings.

27.     Nothing in this Claims Protocol shall prejudice the right of any Debtor to seek, in compliance with any other Orders of the Courts and/or agreements between the Debtors, and after consultation with and prior notice to the U.S. Debtors in the case of relief sought by the Monitor or the Canadian Debtors and after consultation with and prior notice to the Canadian Debtors, the Creditors' Committee and Bondholder Group in the case of relief sought by the U.S. Debtors, a further Order or Orders of the applicable Courts (i) fixing a date by which holders of claims or interests not subject to the Bar Date Orders or the Bar Date established therein must file a proof of claim or interest or be barred from doing so, or (ii) establishing further claims procedures, including claims procedures relating to Excluded Claims and claims resolution procedures, *provided, however,* that any motion or application brought by any of the Debtors, the Monitor or any other party in interest, as applicable, with respect to the subject matter of (ii), shall

14

not be heard on less than ten (10) business days notice to the other Debtors, the Monitor, the Creditors' Committee and the Bondholder Group, unless otherwise ordered by the applicable Court. This Claims Protocol shall apply to all such claims unless a Court orders otherwise in accordance with the terms hereof.

28.  Nothing in this Claims Protocol shall prejudice the right of the Monitor to perform its responsibilities and obligations as required under the Canadian Proceedings, pursuant to any applicable Order of the Canadian Court including, without limitation, the Fourth Amended and Restated Initial Order dated January 14, 2009 and the Order of the Canadian Court dated August 14, 2009, or otherwise under applicable law, and the provisions of this Claims Protocol are intended by the parties and the Courts to facilitate the performance of such responsibilities and obligations by the Monitor.

29.  Except as specifically provided herein (including all deeming provisions) and except as agreed in accordance with this Claims Protocol, neither the terms of this Claims Protocol nor any actions taken pursuant to this Claims Protocol shall: (i) prejudice or affect the powers, rights, claims and defenses of the Debtors and their respective estates, the Creditors' Committee, the U.S. Trustee, the Monitor, the Bondholder Group, any of the Debtors' creditors or any of the foregoing parties' representatives or professionals under applicable law, including, without limitation, the Bankruptcy Code, the CCAA and Orders of the Courts; (ii) preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of Canada or the United States or any other applicable laws; (iii) preclude or prejudice the rights of any person (including the Debtors) to contest the validity, amount or priority of any claim, or (iv) preclude or prejudice an assertion to the Court adjudicating the claim

15

that the Court does not have jurisdiction to adjudicate the claim, or that the laws of another jurisdiction govern or affect the validity, amount or priority of a claim.

### *Discharge, Removal or Dissolution of the Creditors' Committee or the Bondholder Group*

30.     If the Creditors' Committee shall cease to exist following the effective date of a plan of reorganization and the plan does not designate a successor to the Creditors' Committee, the consent of or consultation with the Creditors' Committee shall no longer be required for any purposes under this Claims Protocol and thereafter the Creditors' Committee will no longer be entitled to receive notices under this Claims Protocol or otherwise enforce or have any rights pursuant to this Claims Protocol.

31.     If at any time, the Bondholder Group is disbanded, the consent of or consultation with the Bondholder Group shall no longer be required for any purposes under this Claims Protocol and thereafter the Bondholder Group will no longer be entitled to receive notices under this Claims Protocol, or otherwise enforce or have any rights pursuant to this Claims Protocol.

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

ORDER
(APPROVING CROSS-BORDER
CLAIMS PROTOCOL)

OGILVY RENAULT LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

File No. 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE- COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE | ) | FRIDAY, THE 14TH |
| | ) | |
| MR. JUSTICE MORAWETZ | ) | DAY OF JANUARY, 2011 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION (the "Applicants")

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

EMEA CLAIMS PROCEDURE ORDER

THIS MOTION, made by the Applicants for an Order substantially in the form included

in the Applicants' Motion Record was heard this day at 393 University Avenue, Toronto,

Ontario.

ON READING the Applicants' Notice of Motion, the affidavit of Anna Ventresca sworn

on December 20, 2010, the Fifty-Eighth report of Ernst & Young Inc. (the "Monitor") dated

December 22, 2010 (the "Fifty-Eighth Report"), the Supplemental Fifty-Eighth Report of the

Monitor dated January 13, 2011 (the "Supplemental Fifty-Eighth Report"), and the Responding

Motion Record of the Joint Administrators of Nortel Networks UK Limited et al, and on hearing

the submissions of counsel for the Applicants, the Monitor, and those other parties present, no

- 2 -

one appearing for the other parties served with the Applicants' Motion Record, although duly served as appears from the affidavit of service of Marna McGeorge sworn December 21, 2010, filed:

**SERVICE**

1.     THIS COURT ORDERS that the time for service of the Notice of Motion, the Motion Record filed by the Applicants, the Fifty-Eighth Report and the Supplemental Fifty-Eighth Report, be and it is hereby abridged and validated such that the Motion is properly returnable today.

**PURPOSE OF THIS ORDER**

2.     THIS COURT ORDERS that this Order ("this Order" or the "EMEA Claims Procedure Order") shall apply to all EMEA Claims.

3.     THIS COURT ORDERS that the purpose of this Order together with the Claims Resolution Order and the Cross-Border Claims Protocol, as applicable, is to establish a bar date and mechanisms for the filing, proving and resolution of EMEA Claims, which were Excluded Claims as defined in the Claims Procedure Order, and therefore not subject to the mechanisms therein.

**DEFINITIONS**

4.     THIS COURT ORDERS that the following terms shall have the following meanings ascribed thereto:

    (a)    "Administrators" means the Joint Administrators, the Israeli Administrators and the French Office Holders, and any reference to "Administrator" or

- 3 -

Administrators" herein shall be deemed to include any successors to the Joint Administrators, the Israeli Administrators or the French Office Holders;

(b)     "Administrators' Counsel" means counsel acting for any Administrator, including: (i) Herbert Smith LLP in its capacity as counsel to the Joint Administrators, (ii) counsel to the Israeli Administrators, (iii) counsel to the French Office Holders, and (iv) such other counsel as an Administrator may advise by written notice to the Monitor and the Applicants;

(c)     "Affected Directors and Officers" means those Directors and Officers against whom an EMEA Claim has been asserted in a Proof of Claim, and an "Affected Director or Officer" means any one of such Persons;

(d)     "Business Day" means a day, other than a Saturday or a Sunday, on which banks are generally open for business in Toronto, Ontario, Canada;

(e)     "CCAA" means *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended;

(f)     "Chapter 11 Cases" means the reorganization cases under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, commenced by the U.S. Debtors in the U.S. Court, and consolidated under Case No. 09-10138 (KG);

(g)     "Claims Procedure Order" means the Amended and Restated Claims Procedure Order dated July 30, 2009, as such Order may be further amended from time to time by Order of this Court;

- 4 -

(h)    "Claims Resolution Order" means the Claims Resolution Order dated September 16, 2010, as such Claims Resolution Order may be amended from time to time by Order of this Court;

(i)    "Court" means the Ontario Superior Court of Justice (Commercial List);

(j)    "Cross-Border Claims Protocol" means the protocol for the resolution of cross-border claims filed in these CCAA proceedings and in the Chapter 11 Cases, as approved by this Court and the U.S. Court on September 16, 2010, as such Cross-Border Claims Protocol may be amended from time to time in accordance with its terms;

(k)    "Directors" means all current and former directors of the Applicants, and "Director" means any one of them;

(l)    "Dispute Notice" means a written notice to the Monitor, in substantially the form attached as Schedule "F" hereto, delivered to the Monitor by an EMEA Creditor who has received a Notice of Disallowance, of its intention to dispute such Notice of Disallowance;

(m)    "EMEA Claim" means any Claim (as defined in the Claims Procedure Order without reference to the exclusion for Excluded Claims) of an EMEA Company, as of the Filing Date, against (i) the Applicants, or any of them, (ii) any of the Property of the Applicants, or any of them (as the term "Property" is defined in the Initial Order), or (iii) the Directors and Officers, or any of them, and "EMEA Claims" means all of such EMEA Claims;

(n)    "EMEA Claims Bar Date" means March 18, 2011;

- 5 -

(o)     "EMEA Claims Procedure Order" shall have the meaning ascribed to that term in paragraph 2 herein;

(p)     "EMEA Companies" means the entities listed in Schedule "A" hereto, and "EMEA Company" means any one of them.  For the purposes of this Order, Nortel Networks Israel (Sales and Marketing) Limited (in administration) shall be considered an EMEA Company;

(q)     "EMEA Creditor" means any of the EMEA Companies (and any person appointed in respect of such EMEA Companies) asserting an EMEA Claim;

(r)     "EMEA Creditors' Guide to Completing the Proof of Claim form" means the guide to completing the Proof of Claim form, in substantially the form attached as Schedule "D" hereto;

(s)     "EMEA Protocol Claim" means an EMEA Claim, or a portion of an EMEA Claim, that also constitutes a Same-Creditor Claim or an Overlapping Claim as such terms are defined in the Cross-Border Claims Protocol;

(t)     "Filing Date" means January 14, 2009;

(u)     "French Office Holders" means *Maître* Cosme Rogeau, in his capacity as *liquidateur judiciaire* of Nortel Networks S.A,. together with *Maître* Frank Michel, in his capacity as *administrateur judiciaire* of Nortel Networks S.A.;

(v)     "Initial Order" shall have the meaning ascribed to that term in paragraph 6 of this Order;

- 6 -

(w)    "Israeli Administrators" means Yaron Har-Zyi and Avi D. Pelossof in their capacities as Joint Israeli Administrators of Nortel Networks Israel (Sales and Marketing) Limited;

(x)    "Joint Administrators" means Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP in their capacities as administrators of various of the EMEA Companies in their administration proceedings in the United Kingdom, and David Hughes of Ernst & Young LLP Ireland and Alan Bloom in their capacities as administrators of Nortel Networks (Ireland) Limited;

(y)    "Monitor" means Ernst & Young Inc. in its capacity as monitor pursuant to the Initial Order;

(z)    "Notice of Disallowance" means a notice, in substantially the form attached as Schedule "E" hereto, advising an EMEA Creditor that the Monitor, in consultation with the Applicants and any Affected Director or Officer, has revised or disallowed all or part of such EMEA Creditor's EMEA Claim set out in the EMEA Creditor's Proof of Claim;

(aa)    "Notice to EMEA Creditors" means the notice to EMEA Creditors in substantially the form attached as Schedule "B" hereto;

(bb)    "Officers" means all current and former officers of the Applicants, and "Officer" means any one of them;

(cc)    "Person" includes any individual, partnership, joint venture, trust, corporation, unlimited liability company, unincorporated organization, government body or

- 7 -

agency or instrumentality thereof, or any other juridical entity howsoever designated or constituted;

(dd)  "Plan" means any plan of compromise and arrangement by one or more of the Applicants, if and when filed and approved by this Court, as revised, amended, modified or supplemented from time to time in accordance with its terms;

(ee)  "Proof of Claim" means the form of Proof of Claim in substantially the form attached as Schedule "C" hereto;

(ff)  "Proof of Claim Document Package" means a document package that includes a copy of the Notice to EMEA Creditors, a Proof of Claim, the EMEA Creditors' Guide to Completing the Proof of Claim form, and such other materials as the Monitor may consider appropriate or desirable;

(gg)  "Proven EMEA Claim" shall have the meaning ascribed to that term in paragraph 20 herein;

(hh)  "Secured Claim" means any EMEA Claim or portion thereof that is secured by a security interest, pledge, mortgage, lien, hypothec or charge on any property of any Applicant, or any EMEA Claim of a Secured Creditor as defined in the CCAA, but only to the extent of the value of the security in respect of the EMEA Claim;

(ii)  "U.S. Court" means the United States Bankruptcy Court for the District of Delaware, acting in the Chapter 11 Cases; and

- 8 -

(jj)     "U.S. Debtors" means Nortel Networks Inc.; Nortel Networks Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros Inc.; Sonoma Systems; Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks Optical Components Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; Nortel Networks Cable Solutions Inc.; and Nortel Networks (CALA) Inc., and "U.S. Debtor" means any one of them.

## PRIOR PROOFS OF CLAIM

5.      THIS COURT ORDERS that all prior proofs of claim filed in respect of an EMEA Claim against the Applicants, or any one of them, in response to the call for claims and claims procedures in the Claims Procedure Order, shall be deemed to have been filed pursuant to this Order and shall be governed by and proven in accordance with this Order and, as applicable, the Claims Resolution Order and the Cross-Border Claims Protocol, provided however that at any time prior to 4:00 p.m. (prevailing time in Toronto, Ontario, Canada) on the EMEA Claims Bar Date any EMEA Creditor may by notice in writing to the Monitor elect to either withdraw any prior proof of claim filed by that EMEA Creditor or amend such prior proof of claim by submitting an amended Proof of Claim in accordance with this Order.

## MONITOR'S ROLE

6.      THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and obligations pursuant to the CCAA and the Initial Order of this Court dated January 14, 2009 (as it has been or is in the future supplemented, amended, restated or varied from

- 9 -

time to time, the "Initial Order"), is hereby directed and empowered to take such other actions and fulfill such other roles as are authorized by this Order, and that in taking such other actions and in fulfilling such other roles, the Monitor shall have the protections given to it in the Initial Order, the August 14, 2009 Order made in these proceedings, and this Order, including without limitation the protections provided in paragraph 34 of this Order.

**EMEA CLAIMS**

7.     THIS COURT ORDERS that all EMEA Claims, being "Specific Claims" as defined in the Claims Resolution Order, shall be subject to the provisions of paragraphs 7, 8 and 10 of the Claims Resolution Order.

**EMEA PROTOCOL CLAIMS**

8.     THIS COURT ORDERS that with respect to EMEA Protocol Claims:

(a)     such claims shall be subject to paragraph 10 of the Claims Resolution Order;

(b)     such claims shall be finally determined in accordance with the Cross-Border Claims Protocol and this Order;

(c)     in the event of a conflict between the terms of this Order and the Cross-Border Claims Protocol, the terms of the Cross-Border Claims Protocol shall govern in all such cases; and

(d)     the provisions of this Order (including provisions applying to the determination of Proven EMEA Claims, review of Proofs of Claim, issuance of Notices of Disallowance, Dispute Notices, and the resolution of EMEA Claims), shall be

- 10 -

subject in all cases to the terms of the Cross-Border Claims Protocol and the procedures set out therein.

**PERIODIC CLAIMS REPORTING**

9.      THIS COURT ORDERS that the claims reporting required by paragraph 11 of the Claims Resolution Order shall include reporting with respect to EMEA Claims.

**NOTICE TO EMEA CREDITORS**

10.     THIS COURT ORDERS that:

      (a)     the Monitor shall no later than five (5) days following the making of this Order, post a copy of the Proof of Claim Document Package on its website at "www.ey.com/ca/nortel";

      (b)     the Monitor shall no later than fifteen (15) days following the making of this Order, send on behalf of the Applicants to the Administrators and the Administrators' Counsel a copy of the Proof of Claim Document Package; and

      (c)     the Monitor shall, provided such request is received by the Monitor prior to the EMEA Claims Bar Date, deliver as soon as reasonably possible following receipt of a request therefor a copy of the Proof of Claim Document Package to any Person claiming to be an EMEA Creditor and requesting such material.

11.     THIS COURT ORDERS that in respect of an EMEA Claim, except as provided in the Claims Resolution Order and the Cross-Border Claims Protocol, as applicable, neither the Applicants nor the Monitor are under any obligation to give notice to or deal with any Person other than the EMEA Creditor holding such an EMEA Claim, and without