Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, C. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, C. C-36, AS AMENDED

**ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**EMEA CLAIMS
PROCEDURE ORDER**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4

Derrick Tay LSUC#: 21152A
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

Jennifer Stam LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 2078480\5

# APPENDIX "F"

[Attached]

Case 09-10138-MFW    Doc 8063-7    Filed 07/30/12    Page 2 of 19

APPENDIX "F"

Appendix F

**Eligibility Requirements and Procedure with Respect to Hardship Payment Applications**

1. **Eligibility**

    (a) A former employee would be eligible for hardship payments if he or she is resident in Canada and has no available source of income, being all monies receivable by the former employee including, without limitation, employment income such as wages, salary or bonuses, consulting income, or pension or disability payments or income replacement payments ("Income"), or Income of a spouse, as of the date of the application and has no reasonable expectation of being in receipt of Income during the Application Period (referred to below) and:

    i. The former employee is unable to work due to illness or is incurring costs in excess of 25% of his or her EI payments as a result of treatment for illness or healthcare costs, or as a result of the illness of a family member who is dependent on the former employee for support; or

    ii. During the Application Period the former employee is not receiving a Nortel pension or employment insurance (EI) as a result of ineligibility for EI or exhaustion of EI benefits, and demonstrates some other significant hardship in dealing with financial obligations.

    (b) Notwithstanding 1(a) above, the following individuals would also be eligible for hardship payments:

    (i) a Nortel pensioner and/or a survivor of a Nortel pensioner:
    - who is a member of one of the defined benefit pension plans; AND
    - was subjected to the reduction in monthly pension payments announced by Morneau and effective August 2011.

    (ii) a former employee who prior to December 31, 2010 was in receipt of long term disability payments from Nortel and who despite having access to other sources of income such as; Canada Pension Plan Disability, Quebec Pension Plan Disability Payments, Ontario Disability Support Program payments, or other similar government program payments, otherwise satisfies the hardship eligibility requirements.

IN ALL CASES:

1. There must be a Monitor recognized Compensation Claim against Nortel relating to the former employee, pensioner and/or survivor of a Nortel pensioner. If an Information Statement setting out such Compensation Claim on Form A was not provided, there is no Monitor recognized Compensation Claim against Nortel and therefore there is no eligibility for hardship payments.

2. The Applicant must demonstrate urgent or immediate hardship in dealing with financial obligations.

*Eligibility Requirements updated July 2012*

Appendix F

2. **Application and Adjudication Process**

Notice of the application process will be posted on the Monitor's website, the website of the Nortel Retiree Protection Committee (NRPC) and the websites of Representative Counsel. An applicant is required to complete and submit the attached application form to the Monitor at the contact information listed below. The Monitor will make an initial determination to approve or reject the application within 21 days of receipt of the completed application. The first payment will proceed within seven business days subject to the payment parameters set out below. If not approved, the applicant has the right to be heard by an informal committee composed of one company appointee, one appointee of the Monitor and one appointee chosen by the Representatives, who will be compensated for his time on an hourly basis. A further appeal may be brought to the Court or an officer of the Court designated by the presiding judge, costs to be determined by the Court on the application.

3. **Payment Parameters**

    (a) former employees (including LTD Beneficiaries): Any successful applicant may be approved for a maximum payment of up to 8 weeks salary based on a maximum weekly salary of up to $1,200 per week payable in monthly instalments. The hardship committee will also have discretion to approve additional amounts in cases of medical and other emergencies in an amount up to $2,500.

    (b) Pensioner/Survivor: Any successful applicant may be approved for a maximum payment of $5,000. This payment will be a one-time payment made as a lump sum.

All hardship payments are subject to all applicable tax and other withholdings.

4. **Application Period** – From the date of application to October 31, 2012.

5. **Miscellaneous**

    (a) Hardship Payments are advances against distributions on Compensation Claims, and will be deducted from any payments on Compensation Claims that may be allowed in the ultimate claims process in these proceedings.

    (b) The aggregate maximum amount available for hardship payments is $1,000,000, including the $750,000 amount approved by this Court on June 30, 2009, less the total Required Funds (as defined by paragraph 4 of the February 25, 2011 Court order and by paragraph 3 of the April 8, 2011 Court Order).

Contact information for the Monitor:

**ERNST & YOUNG INC.**
Court-appointed Monitor of Nortel Networks Corporation & others
222 Bay Street, P.O. Box 251
Toronto, Ontario
Canada M5K 1J7

Attention:     Nortel Claims
Telephone:     1-416-943-4439 or 1-866-942-7177
E-mail   nortel.monitor@ca.ey.com
Fax:     1-416-943-2808

*Eligibility Requirements updated July 2012*

- 1 -

Court File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION FOR HARDSHIP PAYMENTS

**Applicant Information**
1. Name: _____
2. Address: _____
   _____
   _____
3. Telephone Number(s): _____
4. Email Address: _____
5. Nortel Global Identification Number: _____

<u>TO BE COMPLETED BY PENSIONERS/SURVIVORS:</u>

**A. Pension Reduction**
   1. Gross monthly or annual pension prior to August 2011  $_____
   2. Gross monthly or annual pension subsequent to August, 2011 reduction $_____
      You may be able to obtain information about the pension reduction from the following sources:
      - Pension remittance slips 2010 AND 2011 T4A; or
      - Copy of letter from Morneau detailing the pension reductions

**B. All other Sources of Income**

   All other sources of income (including income of a spouse living with the applicant): Provide a list of the source of income and the monthly amount:

   1. _____
   2. _____
   3. _____

*Hardship Application Updated July 2012*

## TO BE COMPLETED BY FORMER EMPLOYEES AND LTD BENEFICIARIES:

### A. Nortel Employment Information

1. Date Started Nortel Employment: _____
2. Date Left Nortel Employment: _____
3. Gross Monthly Pay: $ _____
4. Nortel Canadian Entity Which Employed You _____
5. Severance Received $ _____
6. Date Eligible to Receive Nortel Pension _____

### B. Current Sources of Income

1. Employment Insurance Monthly Amount: _____
2. Employment Insurance Actual/Expected End Date: _____
3. If NO EI or EI terminated, provide a reason/explanation: _____
   _____
4. All Other Sources of Income (including income of a spouse living with the Applicant): Provide a list of the source of income and the monthly amount:
   
   a. _____
   
   b. _____
   
   c. _____

## TO BE COMPLETED BY ALL APPLICANTS:

### Personal Circumstances Requiring Hardship Payment

(a) Medical expenses for self or dependant (including nature of expense, amount, whether can be reimbursed from another source):

_____
_____
_____
_____

*Hardship Application Updated July 2012*

- 3 -

(b) Other reason for immediate or urgent need for funds:

_____

_____

_____

_____

_____

I certify the contents hereof to be true.

_____    _____
Witness                                                    Signature

Submit this form to:
**ERNST & YOUNG INC.**
Court-appointed Monitor of Nortel Networks Corporation & others
222 Bay Street, P.O. Box 251
Toronto, Ontario
Canada M5K 1J7

Attention:     Nortel Claims
Telephone:   1-416-943-4439 or 1-866-942-7177
E-mail          nortel.monitor@ca.ey.com
Fax:             1-416-943-2808

*Hardship Application Updated July 2012*

# APPENDIX "G"

[Attached]

REQUEST
AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ETRANGER
D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE
FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at the Hague, November 15, 1965.

| Identité et adresse du requérant / Identity and address of the applicant | Adresse de l'autorité destinataire / Address of receiving authority |
|---|---|
| SCP Baumel Gras<br>16 bd de la Reine BP518<br>78000 Versailles - FRANCE | Ministry of the Attorney General<br>Ontario Courts of Justice 393 Main<br>Street PO Box 1208<br>P0J 1K0 Haileybury ONTARIO-CANADA |

Le requérant soussigné a l'honneur de faire parvenir -en double exemplaire- à l'autorité destinataire les documents ci-dessous énumérés, en la priant conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir :

The undersigned applicant has the honour to transmit -in duplicate- the documents listed below and, in conformity with article 5 of the above-mentionned Convention, requests prompt service of one copy thereof on the address, i.e,

(Identité et adresse)
(Identity and address) Société Nortel Networks Corporation
5945 Airport Road Suite 360 Mississauga - ONTARIO L4V1R9 - CANADA

a) selon les formes légales (article 5, alinéa premier, lettre a)*
a) in accordance with the provision of sub-paragraph (a) of the first paragraph of article 5 of the Convention*

b) selon la forme particulière suivante (article 5, alinéa premier, lettre b)* :
b) in accordance with the following particular method (sub-paragraph(b) of the first paragraph of article 5)* : ..............................................................
..............................................................

c) le cas échéant, par remise simple (article 5, alinéa 2)*
c) by delivery to the addresse, if he accepts it voluntary (second paragraph of article 5)*

Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte -et de ses annexes *- avec l'attestation figurant au verso.
The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes*- with a certificate as provided on the reverse side.

Enumérations des pièces
List of documents
Assignation en
anglais
Assignation en
français

Fait à Versailles, le 30 avril 2012
Done at                     , the

Signature et/ou cachet
Signature and/or stamp

* Rayer les mentions inutiles*
Delete if inappropriate

CERTIFICATE   DEVANT EFFECTUER LA NOTIFICATION

L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,
The undersigned authority has he honour to certify, in conformity with article 6 of the Convention,

1. que la demande a été exécutée*
1. that the document has been served*

    - le (date) ...........................
    - the (date) ...........................
    - à (localité, rue, numéro) ...........................
    - at (place, street, number) ...........................
    - dans une des formes suivantes prévues à l'article 5 :
    - in one of the following methods authorised by article 5 :
    a) selon les formes légales (article 5, alinéa premier, lettre a)*
        a) in accordance with the provision of sub-paragraph (a) of the first paragraph of article 5 of the Convention*
    b) selon la forme particulière suivante* :
    b) in accordance with the following particular method* :
    ~~c) par simple remise*~~
    ~~c) by delivrery to the address, who accepted it voluntarily*~~

Les documents mentionnés dans la demande ont été remis à :
The documents referred to in the request have been delivered to :

    - (identité et qualité de la personne) ...........................
    - (identity and description of person) ...........................
    - liens de parenté, de subordination ou autres, avec le destinataire de l'acte : .....
    - relationship to the address (family, business or other) : ...........................

2. que la demande n'a pas été exécutée, en raison des faits suivants* :
2. that the document has not been served, by reason of th following facts* :

...........................
...........................
...........................

Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint*.
in conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expens detailed in the attached statement*.

Annexes
Annexes

Pièces renvoyées :
Documents returned :

...........................
...........................

Le cas échéant, les documents justificatifs de l'exécution :
in appropriate cases, documents establishing the service :

...........................
...........................

                            Fait à       , le
                            Done at      , the
                            Signature et/ou cachet
                            Signature and/or stamp

\* rayer les mentions inutiles
\* delete if inappropriate

SUMMARY OF THE DOCUMENT TO BE SERVED

Convention relative à la signification et à la notification à l'étranger des actes judiciaires et extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.
Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.

(article 5, alinéa 4)
(article 5, fourth paragraph)

Nom et adresse de l'autorité requérante :
Name and address of the requesting authority :
SCP Brunel Gras
16 bd de la Reine 78000 Versailles

Identité des parties* :
Particulars of the parties* :
Maitre ROSEAU Cosme 26 rue
Hoche 78000 Versailles

### ACTE JUDICIAIRE**
### JUDICIAL DOCUMENTS**

Nature et objet de l'acte :
Nature and purpose of the document :
assignation pour insuffisance
d'actifs

Nature et objet de l'instance, le cas échéant, le montant du litige :
Nature and purpose of the proceeding and, where appropriate, the amount in dispute :
insuffisance d'actif

Date et lieu de la comparution ** :
Date and place for entering appearance** :
27 juillet 2012, Tribunal de Commerce de Versailles

Juridiction qui a rendu la décision** :
Court which has given judgement** :

Date de la décision** :
Date of judgment** :

Indication des délais figurant dans l'acte** :
Time limits stated in the document** :

### ACTE EXTRAJUDICIAIRE**
### EXTRAJUDICIAL DOCUMENT**

Nature et objet de l'acte :
Nature and purpose of the document :

Indication des délais figurant dans l'acte** :
Time and purpose in the document** :

* s'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte.
* if appropriate, identity and adress of the person interested in the transmission of the document.
** rayer les mentions inutiles
** delete if inappropriate

Identité et adresse du destinataire
*identity and address of the addressee*

```
Société Nortel Networks Corporation
5945 Airport Road Suite 360
Mississauga
Ontario - Canada L4V 1R9
```

TRÈS IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES «ELÉ-MENTS ESSENTIELS DE L'ACTE» VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MÊME DU DOCUMENT. IL PEUT ÊTRE NÉCESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITÉ D'OBTENIR L'ASSISTANCE JUDI-CIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITÉS D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSUL-TATION JURIDIQUE DANS LE PAYS D'ORIGINE DU DOCUMENT PEUVENT ÊTRE ADRESSÉES: .....

IMPORTANT

*THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.*

*IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.*

*ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO: .....*

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue ou une des langues officielles de l'Etat d'origine de l'acte. Les blancs pourraient être remplis soit dans la langue de l'Etat où le document doit être adressé, soit en langue française, soit en langue anglaise.

*It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or in one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the document is to be sent, or in English or French.*



# ASSIGNATION DEVANT LE
# TRIBUNAL DE COMMERCE DE VERSAILLES

L'An Deux Mille Douze,
Et le    TRENTE    AVRIL

<u>A la demande de</u> :

Maître Cosme ROGEAU élisant domicile aux fins des présentes en son étude sise 26 rue Hoche 78000 Versailles, agissant poursuites et diligences ès qualités de Mandataire Liquidateur de la société NORTEL NETWORKS SA, Société anonyme au capital de 136.963.426,50 €, Immatriculée au RCS Versailles sous le n° B 389 516 741, ayant son siège social au Centre d'Affaires Parc Lumière, 46 avenue des Frères Lumières, 78190 Trappes,

Désigné en cette qualité par Jugement du Tribunal de Commerce de VERSAILLES en date du 28 mai 2009

<u>Ayant pour Avocat</u> :

Maîtres Antoine TCHEKHOFF et Edouard FABRE
Avocats au Barreau de Paris
SCP Foucaud Tchekhoff Pochet & Associés
1 bis, avenue Foch – 75116 Paris
Tél. : 01 45 00 86 20    Fax : 01 45 00 86 83 - Toque P 010

J'ai, Huissier de Justice soussigné,

L'honneur d'informer

Nous, SCP Geoffroy BRUNEEL et PATRICE GRAS, Huissiers de Justice associés à la Résidence de Versailles, 16 Bld de la Reine, l'un d'eux soussigné

1. **La société Nortel Networks Corporation**
   Société de droit canadien
   5945 Airport Road Suite 360 Mississauga, Ontario Canada L4V 1R9
   Représentée par leurs représentants légaux domiciliés en cette qualité audit siège

2. **La société Nortel Networks Limited**          COMME EN FIN D'ACTE
   Société de droit canadien
   5945 Airport Road Suite 360 Mississauga, Ontario Canada L4V 1R9
   Représentée par leurs représentants légaux domiciliés en cette qualité audit siège

3. **La société Ernst &Young Inc.**               PAR ACTE SEPARE
   Ernst &Young Tower, 222 Bay Street PO Box 251 Toronto, Ontario M5K 1J7
   es-qualité de « Monitor » des sociétés Nortel Networks Corporation et Nortel Networks Limited,
   Représentée par leurs représentants légaux domiciliés en cette qualité audit siège
                                                  PAR ACTE SEPARE
4. **Monsieur Jean-Marie LESUR**
   Né le 19 août 1955 à Aubervilliers (93)
   De nationalité française
   Demeurant 29 rue de Rémusat – 75016 Paris    PAR ACTE SEPARE

5. **Monsieur Darryl EDWARDS**
   Né le 12 mai 1961 à Stoke on Trent
   De nationalité britannique                   PAR ACTE SEPARE
   Demeurant 16 Alderman Way, Weston under Wetherley, Warwickshire, CV33 9GB (Royaume-Uni)

Qu'il leur est donné assignation à comparaître le <u>27 juillet 2012 à 14 heures</u> à l'audience et par-devant le Tribunal de Commerce de Versailles, 1 place André Mignot, 78000 VERSAILLES (France)

*Il est rappelé au(x) destinataire(s), conformément aux articles 56, 853 et 861-2 du Code de Procédure Civile :*

*Que les parties se défendent elles-mêmes ou qu'elles ont la faculté de se faire assister ou représenter par toutes personnes de leur choix ; que leur représentant, s'il n'est Avocat, doit justifier d'un pouvoir spécial.*

*Que faute de comparaître ou de se faire représenter, elles s'exposent à ce qu'un jugement soit rendu contre elles sur les seuls éléments fournis par leur(s) adversaire(s)*

*Que les pièces sur lesquelles la demande est fondée sont indiquées en fin d'acte.*

*Sans préjudice des dispositions de l'article 68, la demande incidente tendant à l'octroi d'un délai de paiement en application de l'article 1244-1 du code civil peut être formée par déclaration faite, remise ou adressée au greffe, où elle est enregistrée. L'auteur de cette demande doit justifier avant l'audience que l'adversaire en a eu connaissance par lettre recommandée avec demande d'avis de réception. Les pièces que la partie invoque à l'appui de sa demande de délai de paiement sont jointes à la déclaration.*

*L'auteur de cette demande incidente peut ne pas se présenter à l'audience, conformément au second alinéa de l'article 446-1. Dans ce cas, le juge ne fait droit aux demandes présentées contre cette partie que s'il les estime régulières, recevables et bien fondées.*

*Lorsque la demande est portée devant une juridiction qui a son siège en France métropolitaine, les délais de comparution, d'appel, d'opposition, de recours en révision et de pourvoi en cassation sont augmentés de:*

1. *Un mois pour les personnes qui demeurent en Guadeloupe, en Guyane, à la Martinique, à la Réunion, à Mayotte, à Saint-Barthélemy, à Saint-Martin, à Saint-Pierre-et-Miquelon, en Polynésie française, dans les Iles Wallis et Futuna, en Nouvelle-Calédonie et dans les Terres australes et antarctiques françaises,*

2. *Deux mois pour celles qui demeurent à l'étranger.*

*En outre, il est rappelé qu'en vertu de l'article R 651-5 du Code du Commerce :*

*«Pour l'application de l'article L 651-4 du Code du Commerce, le juge désigné par le Tribunal peut se faire assister de toute personne de son choix dont les contestations sont consignées dans son rapport. Ce rapport est déposé au greffe et communiqué par le greffier au procureur de la République.*

*Le ou les dirigeants mis en cause sont avertis par le greffier qu'ils peuvent prendre connaissance du rapport et sont convoqués huit jours au moins avant leur audition en chambre du conseil, par acte d'huissier de justice ou dans les formes prévues à l'article 173».*

*Conformément à l'article précité, vous serez ultérieurement convoqué au moins huit jours à l'avance pour être entendu personnellement par le Tribunal en Chambre du Conseil, c'est-à-dire en-dehors de la présence du public. Vous devrez comparaître en personne lors de cette audience en Chambre du Conseil, éventuellement avec l'assistance d'une personne de votre choix. Si cette personne n'est pas avocat, elle doit justifier d'un pouvoir spécial.*

*L'audition des dirigeants en Chambre du Conseil étant une mesure d'information du Tribunal, la représentation par avocat pour cette seule audition n'est pas possible.*

*A la suite de votre audition personnelle, le Tribunal entendra les parties ou leurs avocats en leurs explications et plaidoiries.*

*Les pièces sur lesquelles repose la présente assignation sont listées en fin d'acte.*

## OBJET DE LA DEMANDE

Maître ROGEAU, en sa qualité de liquidateur judiciaire de la société NORTEL NETWORKS SA (ci-après désignée « NNSA »), saisit le Tribunal de céans, aux fins de solliciter la condamnation des dirigeants de droit et de fait de la société NNSA, à supporter l'insuffisance d'actif de la société NNSA, conformément aux articles L.651-1 et suivants du Code de Commerce.

A l'examen des éléments de fait (I) et de droit (II) qui seront développés ci-après, le Tribunal ne pourra en effet que faire droit à la demande de Maître ROGEAU, ès qualités, après avoir constaté que tant les dirigeants de droit de NNSA, que ses dirigeants de fait, à savoir les sociétés canadiennes NORTEL NETWORKS CORPORATION (ci-après désignée « NNC ») et NORTEL NETWORKS LIMITED (ci-après désignée « NNL ») ont commis une faute de gestion en organisant et en dirigeant NNSA sans considération de son être moral, et en négligeant son autonomie et son intérêt social.

Compte tenu de la cession globale à l'échelle mondiale des actifs de NNSA et du processus de répartition du produit de celle-ci actuellement en cours, l'existence d'une insuffisance d'actif reste à parfaire et ne peut pas être déterminée précisément à ce jour, d'autant que des instances sont toujours pendantes devant différentes juridictions et notamment, celle concernant la créance du Fonds de pension déclarée au passif de NNSA à hauteur de 2,4 milliards d'euros.

Toutefois, Maître ROGEAU, ès qualités, engage, dès à présent, l'action en responsabilité pour insuffisance d'actif afin, notamment, d'interrompre le délai de prescription qui expire le 28 mai 2012, soit trois ans après le jugement prononçant la liquidation judiciaire.

## I   RAPPEL DES FAITS

### 1.1   Présentation du Groupe Nortel et de la société NNSA

Fondé en 1895 sous le nom de Bell Telephone Company of Canada, le Groupe canadien Nortel est un fournisseur mondial de solutions de télécommunications et de réseaux informatiques, de matériel, de logiciels et de services, implanté aux Etats-Unis, au Canada, en Asie Pacifique, en Amérique latine et aux Caraïbes, et en Europe, au Moyen Orient et en Afrique (zone dite « EMEA » qui comprend NNSA)

Le Groupe a structuré ses activités autour de 4 blocs d'activités (dits « business units »), comprenant :

- L'activité «GSM et GSM-R » pour la fourniture d'équipements, maintenance des services liés à la téléphone mobile, recherche et développement de nouvelles technologies destinées à la téléphonie mobile.
- L'activité « Enterprise » concernant les prestations de support pour d'autres entités.
- L'activité « Men » (« Men Ethernet Networks ») visant les technologies développées pour la téléphonie fixe, y compris les réseaux optiques, la technologie ATM et l'amélioration de la circulation des données.
- L'activité « Global services » pour la conception et l'installation de solutions d'infrastructures vendues par les trois autres blocs d'activités du Groupe Nortel – cette activité a ensuite été intégrée aux trois autres grands blocs d'activités.

Le chiffre d'affaires mondial pour l'exercice clos le 31 décembre 2007 a atteint environ 11 milliards USD, dont 25 % ont été générés par la région EMEA.

La société canadienne NNC, société mère du Groupe Nortel, est cotée à la bourse de Toronto (Canada) et à celle de New York (USA).

Sa filiale directe, la société canadienne NNL est la principale société opérationnelle du Groupe Nortel et détient la plupart des 142 filiales du Groupe Nortel dans le monde, dont NNSA.

En effet, NNSA est l'une des filiales opérationnelles françaises du Groupe Nortel (la deuxième étant Nortel Networks France SAS – NNF), qui est détenue à 91,16 % par la société canadienne NNL et à 8,83 % par la société néerlandaise Nortel Networks International Finance Holding BV.

NNSA était l'un des centres exerçant une activité de Recherche et de Développement au profit de tout le Groupe Nortel.

NNSA exerçait également une activité commerciale : elle est responsable de l'approvisionnement de produits GSM pour l'ensemble du Groupe Nortel, c'est-à-dire, un type de technologie de téléphonie mobile qui est le standard courant pour les réseaux sans fil principalement en Europe mais également dans d'autres pays du monde.

### 1.2  L'organisation matricielle du Groupe Nortel

Le Groupe Nortel fonctionnait par branches d'activités, sans respecter les personnes morales des différentes sociétés du Groupe. C'est d'ailleurs la raison pour laquelle la cession des actifs du Groupe Nortel a été organisée, comme on le verra ci-après, globalement par types d'activités, et non pas par entités (cf.1.7).

Le Groupe Nortel a donc été géré comme une entreprise globale et intégrée, à un point tel que l'existence juridique et/ou territoriale et le statut des entités individuelles du Groupe ont été ignorés par les entités nord-américaines du Groupe.

Ainsi, la gestion de l'ensemble du Groupe et la prise de décisions stratégiques concernant le budget, les investissements, la R&D, applicables dans toutes les entités locales du Groupe, comme NNSA, étaient dans les mains des entités canadienne et anglaise.

L'objectif de ce type d'organisation était d'éviter la duplication des fonctions et d'obtenir un meilleur déploiement de la stratégie dans le monde ainsi qu'une utilisation plus efficace des fonctions de l'entreprise.

Depuis 2001 et l'éclatement de la bulle internet, le Groupe Nortel a progressivement recentré son activité sur la R&D à forte valeur ajoutée, en cédant, notamment, ses activités vieillissantes et en sous traitant de plus en plus les fonctions de distribution et de fabrication.

Les activités de R&D du Groupe Nortel étaient réalisées à travers six "Centres d'Excellence" internationaux, dont NNSA.

C'est ainsi que le Groupe Nortel est devenu principalement une entreprise de R&D et que de nouveaux accords sur les prix de transfert intragroupe, prenant en compte cette spécificité, ont été élaborés.



### 1.3 La politique des prix de transfert du Groupe Nortel : du « Cost Sharing Agreement » au « Master R&D Agreement »

A l'origine, les accords sur les prix de transferts, intitulés « Cost Sharing Agreement » (ci-après désigné « CSA »), prévoyaient le remboursement par la société canadienne NNL des sommes engagées par les entités produisant de la R&D, en contrepartie du transfert de la propriété des brevets associés à NNL.

Ces accords permettaient aux entités du Groupe Nortel de produire, sans risque, et à coût nul, de la R&D. En revanche, si une entité était conduite à utiliser un brevet issu de sa propre R&D, elle devait, néanmoins, payer une licence d'utilisation à NNL.

Dans ce schéma, NNL supportait les risques et retirait le bénéfice éventuel de la R&D du Groupe grâce aux brevets qu'elle détenait et via les licences qu'elle concédait.

Compte tenu du recentrage du Groupe Nortel sur ses activités de R&D, un nouvel accord dit « Master R&D Agreement » (ci-après désigné « MRDA ») a été conclu, le 22 décembre 2004, avec effet rétroactif au 1$^{er}$ janvier 2001, entre 6 sociétés du Groupe Nortel, à savoir les sociétés NNSA, NNL, NNInc, NNUK, Nortel Irlande et Nortel Australie (**pièce n°1**).

Cet accord prévoyaient la mise en commun des résultats issus du savoir faire des pôles d'excellence R&D en matière de propriété intellectuelle, chacune des sociétés du groupe étant propriétaire d'une quote-part de la Propriété Intellectuelle de l'ensemble du groupe.

Cette mise en commun de la Propriété Intellectuelle du groupe était gérée par NNL qui concédait des licences gratuites permettant à chacune des sociétés concernées d'utiliser les droits de propriété intellectuelle indivis de l'ensemble des sociétés du groupe.

L'accord MRDA prévoyait aussi une participation de chacune des sociétés signataires, dont NNSA, aux bénéfices et aux pertes du Groupe Nortel calculée en fonction de leur quote-part dans la Propriété Intellectuelle globale du groupe.

Ce système de partage des profits et des pertes était intitulé « Residual Profit Sharing » (ci-après désigné « RPS »).

Or, lors de la signature de ces accords en 2004, le groupe NORTEL était, depuis 2001, très largement déficitaire.

C'est ainsi que NNSA a, de 2001 à 2009, pris à sa charge les pertes du groupe Nortel pour un montant total cumulé de plus de 313 millions d'euros.

### 1.4 L'Origine des difficultés du Groupe Nortel

Bien que remontant à 2003, les difficultés du groupe Nortel se sont accentuées à partir de l'exercice 2007-2008 : sur les neuf premiers mois de l'année 2008, le Groupe Nortel a dégagé une perte nette, après impôts, de 3,7 milliards de dollars, tandis que l'exercice clos au 31 décembre 2007 s'était achevé par une perte nette, après impôts, de 1 milliard de dollars.

S'agissant de la région EMEA, les pertes nettes après impôts pour les neufs premiers mois de l'exercice 2008 se sont élevées à 261 millions de dollars, tandis que l'exercice clos au 31 décembre 2007 avait dégagé une perte nette après impôts de 134 millions de dollars.

Les difficultés du Groupe Nortel s'expliquent notamment par un marché très concurrentiel qui est en outre en pleine restructuration. Ainsi, par exemple, deux des principaux concurrents du Groupe – Alcatel et Lucent Technologies Inc. – ont fusionné en 2006, tandis que deux de ses plus importants clients – Verizon Wireless et Alltell Corporation – ont fait de même en 2008. Nortel a ainsi dû faire face à une concurrence toujours plus agressive et à une réduction de ses débouchés.

Devant faire face à une structure de coûts élevés et à des niveaux importants d'endettement (approximativement 4,2 Mds d'US$), ainsi qu'à un ralentissement de son chiffre d'affaires à la suite de retards dans les investissements de ses clients, le Groupe Nortel a subi une pression commerciale importante et a été confronté à une détérioration de sa trésorerie disponible, tant au niveau international que régional.

En conséquence, le Groupe Nortel a recherché une protection contre ses créanciers en vertu des régimes de restructuration applicables au Canada, aux États-Unis et au Royaume-Uni.

### 1.5 L'ouverture d'une procédure principale d'insolvabilité dite d'« administration » à Londres, à l'égard de chaque société du Groupe Nortel située dans la région EMEA dont NNSA

Par jugement en date du 14 janvier 2009, une procédure principale d'insolvabilité, à savoir d'« Administration » été ouverte, au visa de l'article 3 du Règlement (CE) n°1346/2000 du Conseil du 29 mai 2000 par la *Chancery Division* de la High Court of Justice de Londres, à l'égard de chaque société du groupe située dans la région EMEA dont NNSA et sa filiale NNF (pièce n°2).

En effet, la High Court of Justice de Londres a typiquement jugé que le centre des intérêts principaux (le « COMI ») des sociétés situées dans la région EMEA se trouvait en Angleterre, dans la mesure où les décisions stratégiques les intéressant étaient prises à partir du siège britannique de Maidenhead.

Des administrateurs anglais communs à savoir Messieurs Bloom, Hudson, Harris et Hill (ci-après désignés les « Joint Administrators »), membres du cabinet Ernst & Young Londres, ont été désignés pour l'ensemble des entités mises sous procédure d'administration anglaise.

A la même date, les administrateurs des entités canadiennes ont demandé la protection du Tribunal en vertu du Companies' Creditors Arrangement Act canadien (CCAA).

Dans le même temps, les entités américaines ont demandé à bénéficier de la procédure de Chapter 11 auprès des US Courts en vertu de l'US Bankruptcy Code.

L'objectif sous-tendant le déclenchement simultané de ces différentes procédures d'insolvabilité était de favoriser la recherche d'une solution globale à l'échelle du groupe.

### 1.6 L'ouverture d'une procédure secondaire de liquidation judiciaire en France à l'encontre de NNSA

Par jugement du 28 mai 2009, à la demande des Administrateurs anglais et en application du Règlement CE précité, le Tribunal de Commerce de Versailles a ouvert une procédure secondaire de liquidation judiciaire, avec autorisation de poursuite d'activité à l'égard de NNSA (pièce n°3).

Par le même jugement, Maître MICHEL a été désigné en qualité d'Administrateur Judiciaire de NNSA et Maître Cosme ROGEAU en qualité de Liquidateur Judiciaire de NNSA.

L'intégration des différentes activités à un niveau mondial rendait impossible une cession isolée société par société des activités du groupe sans une perte de valeur substantielle.

C'est ainsi que les différentes entités du groupe ainsi que leurs syndics ont décidé de conclure un accord dit « Interim Funding and Settlement Agreement » (ci-après désigné « IFSA ») **(pièce n°4)**, le 9 juin 2009 qui, afin de faciliter les cessions des actifs du groupe Nortel au niveau mondial et le processus à venir de répartition des prix de cession entre les différentes entités du groupe, prévoyait, notamment que :

- les licences liées aux activités cédées, dont bénéficie chacune des sociétés signataires du « MASTER R&D AGREEMENT » soient résiliées au profit du cessionnaire, pour les besoins et au fur et à mesure des cessions ;
- les cessions d'actifs puissent intervenir indépendamment du processus de négociation en cours sur les répartitions à intervenir entre les différentes sociétés du groupe afin d'éviter qu'un désaccord sur ces répartitions puisse bloquer une cession ;
- le prix des cessions des actifs du groupe soit déposé entre les mains d'un séquestre à charge pour ce dernier de les répartir selon l'accord de répartition à intervenir ;
- les sociétés du groupe s'engagent à négocier de bonne foi un accord permettant la répartition des prix de cession, à défaut d'un accord, de prévoir une procédure contraignante permettant de procéder à une répartition à dire d'expert.

Le 7 juillet 2009, le Juge Commissaire a autorisé les organes de la procédure secondaire de NNSA à signer l'IFSA et à prendre part aux cessions envisagées **(pièce n°5)**.

L'accord d'adhésion de NNSA à l'IFSA signé le 11 septembre 2009 a un effet rétroactif au 9 juin 2009.

C'est ainsi qu'en application de l'ISFA et de l'Ordonnance du 7 juillet 2009 précitée, la procédure secondaire de NNSA a participé aux cessions, au niveau mondial, des quatre blocs d'activités du groupe, a conclu pour NNSA les accords de résiliation de licences et de séquestre s'y rapportant qui font d'elle une partie venderesse à part entière, notamment, de ses droits de propriété intellectuelle résultant de l'accord dit MRDA.

En outre, parallèlement à la cession mondiale de l'activité GSM/GSM-R, le Tribunal de Commerce de Versailles a, le 30 mars 2010, autorisé la cession de la part de cette activité exploitée par NNSA, à Kapsch CarrierCom France **(pièce n°6)**.

Le 30 mars 2010, le Tribunal a également désigné Maître Frank MICHEL en qualité de mandataire ad hoc de NNSA (sa mission d'Administrateur Judiciaire ayant pris fin) et a ordonné à Maître Cosme ROGEAU de procéder à la liquidation des actifs résiduels de NNSA **(pièce n°6)**.
Le 7 mai 2010, NNSA a cessé ses activités.

En outre, la procédure secondaire de NNSA a également été partie à la cession des Droits et brevets résiduels du Groupe Nortel.