IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NORTEL NETWORKS INC., et al.,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | Ref. Docket Nos. 8066-8068 |

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK   )
                       ) ss.:
COUNTY OF NEW YORK   )

PETE CARIS, being duly sworn, deposes and says:

1.  I am employed as a Noticing Coordinator by Epiq Bankruptcy Solutions, LLC, located at 757 Third Avenue, New York, New York 10017.  I am over the age of eighteen years and am not a party to the above-captioned action.

2.  On July 30, 2012, I caused to be served the following:

    a.  "Notice of Debtors' Motion for Entry of an Order Terminating Retiree Benefits and Approving a Settlement Proposal Pursuant to 11 U.S.C. § 1114," dated July 30, 2012, to which was attached the "Debtors' Motion for Entry of an Order Terminating Retiree Benefits and Approving a Settlement Proposal Pursuant to 11 U.S.C. § 1114," dated July 30, 2012 [Docket No. 8066], (the "1114 Motion"),

    b.  "Notice of Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. § 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long-Term Disability Plans and The Employment of the LTD Employees," dated July 30, 2012, to which was attached the "Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. § 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long-Term Disability Plans and The Employment of the LTD Employees," dated July 30, 2012 [Docket No. 8067], (the "1108 Motion"),

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems, Inc. (9769), Nortel Altsystems International, Inc. (5596) Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

c.   "Notice of Debtors' Motion for Entry of an Order Authorizing the Debtors to File Under Seal Certificates of Service Related to LTD Employees," dated July 30, 2012, to which was attached the "Debtors' Motion for Entry of an Order Authorizing the Debtors to File Under Seal Certificates of Service Related to LTD Employees," dated July 30, 2012 [Docket No. 8068], (the "Under Seal Motion"),

d.   "Notice of Debtors' Motion for Entry of an Order Terminating Retiree Benefits and Approving a Settlement Proposal Pursuant to 11 U.S.C. § 1114," dated July 30, 2012, to which was attached the "Debtors' Motion for Entry of an Order Terminating Retiree Benefits and Approving a Settlement Proposal Pursuant to 11 U.S.C. § 1114," dated July 30, 2012, related to Docket No. 8066, annexed hereto as <u>Exhibit A</u>, (the "1114 Motion without Exhibits"), and

e.   "Notice of Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. § 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long-Term Disability Plans and The Employment of the LTD Employees," dated July 30, 2012, to which was attached the "Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. § 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long-Term Disability Plans and The Employment of the LTD Employees," dated July 30, 2012, related to Docket No. 8067, annexed hereto as <u>Exhibit B</u>, (the "1108 Motion without Exhibits"),

by causing true and correct copies of the:

i.   1114 Motion without Exhibits, 1108 Motion without Exhibits and Under Seal Motion, to be enclosed securely in separate postage pre-paid envelopes and delivered via first class mail to those parties listed on the annexed <u>Exhibit C</u>,

ii.   1114 Motion without Exhibits and 1108 Motion without Exhibits, to be enclosed securely in separate postage pre-paid envelopes and delivered via first class mail to those parties listed on the annexed <u>Exhibit D</u>,

iii.   1114 Motion without Exhibits and 1108 Motion without Exhibits, to be enclosed securely in separate postage pre-paid envelopes and delivered via first class mail to those parties listed on the annexed <u>Exhibit E</u>, (Filed Under Seal), and

iv.   1114 Motion and 1108 Motion, to be enclosed securely in separate postage pre-paid envelopes and delivered via first class mail to those parties listed on the annexed <u>Exhibit F</u>.

3. All envelopes utilized in the service of the foregoing contained the following legend: "LEGAL DOCUMENTS ENCLOSED. PLEASE DIRECT TO ATTENTION OF ADDRESSEE, PRESIDENT OR LEGAL DEPARTMENT."

Pete Caris

Sworn to before me this
3__ day of July, 2012

Notary Public

PANAGIOTA MANATAKIS
NOTARY PUBLIC STATE OF NEW YORK
QUEENS COUNTY
LIC. #01MA6221096
COMM. EXP. APRIL 26, 2014

T:\Clients\NORTEL\Affidavits\1114 Motion, 1108 Motion and Under Seal Motion_DI 8066-8068_AFF_7-30-12_UNDER SEAL.doc

**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
:
*In re*                                                 :     Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                      :     Case No. 09-10138 (KG)
:
:     (Jointly Administered)
Debtors.          :
:     **Hearing date:  To be determined**
:     **Objections due:  To be determined**
:
-------------------------------------------------------X

## NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER TERMINATING RETIREE BENEFITS AND APPROVING A SETTLEMENT PROPOSAL PURSUANT TO 11 U.S.C. § 1114

PLEASE TAKE NOTICE that the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases, have today filed the attached **Debtors' Motion for Entry of an Order Terminating Retiree Benefits and Approving a Settlement Proposal Pursuant to 11 U.S.C. § 1114** (the "Motion").

PLEASE TAKE FURTHER NOTICE that any party wishing to oppose the entry of an order approving the Motion must file a response or objection ("Objection") if any, to the Motion with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 on or before **A Date To Be Determined** (the "Objection Deadline").

At the same time, you must serve such Objection on counsel for the Debtors so as to be received by the Objection Deadline.

PLEASE TAKE FURTHER NOTICE THAT A HEARING ON THE MOTION WILL BE HELD ON **A DATE TO BE DETERMINED** BEFORE THE HONORABLE KEVIN GROSS AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, 6TH FLOOR, COURTROOM #3, WILMINGTON,

---

[1]  In addition to Nortel Networks Inc. ("NNI"), the Debtors in the Chapter 11 cases are:  Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA").   Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

DELAWARE 19801.  ONLY PARTIES WHO HAVE FILED A TIMELY OBJECTION WILL BE HEARD AT THE HEARING.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: July 30, 2012
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (*admitted pro hac vice*)
Lisa M. Schweitzer (*admitted pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____/s/ Ann C. Cordo_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors and Debtors in Possession*

6146734.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------X
                                                     :
In re                                                :     Chapter 11
                                                     :
Nortel Networks Inc., et al.,¹                       :     Case No. 09-10138 (KG)
                                                     :
                        Debtors.                     :     Jointly Administered
                                                     :
                                                     :     Hearing date: To be determined
                                                     :     Objections due: To be determined
                                                     :
------------------------------------------------------------X
```

**DEBTORS' MOTION FOR ENTRY OF AN
ORDER TERMINATING RETIREE BENEFITS AND
APPROVING A SETTLEMENT PROPOSAL PURSUANT TO 11 U.S.C. § 1114**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and

1114(g) of title 11 of the United States Code (the "Bankruptcy Code"), (i) authorizing the

Debtors to terminate the Retiree Welfare Plans (as defined herein); (ii) approving the Proposal

(as defined herein); and (iii) granting them such other and further relief as the Court deems just

and proper.  In support of this Motion, the Debtors rely upon the declaration of John Ray, dated

July 30, 2012, attached hereto as Exhibit B (the "Ray Declaration"), and respectfully represent as

follows:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

**Preliminary Statement**

1.       Since filing for chapter 11 protection over three and a half years ago, the Debtors have worked diligently to liquidate their assets, wind down operations and complete the transition services necessary to support the transfer of their business lines.  Now that the Debtors' operations have been reduced to only those most basic functions essential to the completion of the bankruptcy process, the Debtors have determined that it is necessary to seek approval for the termination of their Retiree Welfare Plans before the end of the plan year on December 31, 2012.  Recognizing the importance of the benefits provided to their retired employees under the Retiree Welfare Plans (as defined below), the Debtors have worked tirelessly since the appointment of the Retiree Committee almost one year ago to reach a consensual agreement regarding the plan termination process.  To that end, the Debtors have provided significant information to the advisors to the Retiree Committee, have exchanged multiple proposals and, in conjunction with the Bondholder Group and UCC (each, defined below), have negotiated with the Retiree Committee in good faith.  When it became clear those negotiations were not progressing, the Debtors sought the appointment of a neutral third-party Mediator (as defined below) by this Court in April.  Since that time, with the Mediators' assistance, the Debtors have continued to engage in negotiations with the Retiree Committee in an effort to push toward a mutually agreeable solution.  Indeed, despite the filing of this Motion, the Debtors remain open to reaching a settlement with the Retiree Committee on reasonable terms.  However, at this advanced stage in their restructuring process, where the Debtors have been unable to reach agreement with the Retiree Committee after a year and the end of a plan year is quickly approaching, the Debtors simply cannot allow time to continue to slip by hoping for a settlement, all the while continuing to expend substantial amounts of money providing Benefits (as defined below) to the Retirees (as defined below).

2

2.      The Debtors therefore bring this Motion seeking Court approval to terminate the Retiree Welfare Plans on the terms described herein.  The Debtors have satisfied the provisions of section 1114(g) of the Bankruptcy Code necessary for the termination of the Retiree Welfare Plans, and have the clear right to terminate the Benefits under both the law and the terms of the Retiree Welfare Plan documents themselves.  Accordingly, the Debtors submit this Motion for authorization to terminate the Retiree Welfare Plans effective as of December 31, 2012.

## Jurisdiction

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a) and 1114(g) of the Bankruptcy Code.

## Background

5.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "UCC") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

7.     On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration

(the "English Proceedings") under the control of individuals from Ernst & Young LLP

(collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the

future may commence additional creditor protection, insolvency and dissolution proceedings

around the world.

8.     Since the Petition Date, Nortel has sold its business units and other assets to

various purchasers.  For further information regarding these chapter 11 cases, reference may be

made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

### Relief Requested

9.     Although the Debtors have made every effort to agree with the Retiree Committee

on mutually acceptable terms to govern the termination of the Retiree Welfare Plans, no

---

[3]     The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]     The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A.,
Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel
Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks
B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel
Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks
Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

agreement has been reached.  Given the passage of time and the stage of the Debtors'

restructuring process, the Debtors are now compelled to seek relief from the Court in order to

ensure that the Retiree Welfare Plans are terminated effective as of the end of the year.

10.     By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 1114

of the Bankruptcy Code, (i) authorizing the Debtors to terminate the Retiree Welfare Plans

effective as of December 31, 2012; (ii) approving the Proposal (as defined herein); and (iii)

granting them such other and further relief as the Court deems just and proper.  Under the

proposed termination, the Debtors propose, among other things, to give Retirees six months to

submit claims for reimbursement of claims incurred prior to the Termination Date (as defined

herein) under the relevant Retiree Welfare Plans, starting on December 31, 2012.

<div align="center"><u>Facts Relevant to this Motion</u></div>

**A.     <u>THE RETIREE WELFARE PLANS</u>**

11.     The Debtors historically have provided a number of benefits to their retired

employees, as well as such employees' surviving spouses and eligible dependents,[5] through

various benefit plans and other programs, including (as amended from time to time) the Nortel

Networks Inc. Retiree Medical Plan, the Nortel Networks Inc. Retiree Life Insurance and Long-

Term Care Plan, predecessor plans and other formal or informal benefit plans, agreements,

arrangements or programs (including plans, agreements, arrangements or programs that are

funded through the purchase of insurance) or arrangements for current or future retired

employees, their surviving spouses and eligible dependents, including plans, arrangements,

agreements or programs for medical, surgical, or hospital care benefits, or benefits in the event of

sickness, accident, disability, or death (collectively and in each case as amended or modified

---

[5]     For purposes of this Motion, "<u>Retirees</u>" include the Debtors' retired employees, their surviving spouses and
eligible dependents, and current employees of the Debtors eligible for benefits under the Retiree Welfare Plans.

from time to time, the "Retiree Welfare Plans").[6]  During the course of these chapter 11 cases,

the Debtors have continued to provide benefits under the Retiree Welfare Plans (the "Benefits")

in the ordinary course under the plan terms, including as authorized by this Court's January 15,

2009 *Order Authorizing, But Not Directing, Debtors to Pay Certain Prepetition (I) Wages,*

*Salaries and Other Compensation, (II) Reimbursable Expenses, and (III) Medical, Retirement*

*and Similar Benefits* [D.I. 59].  There currently are over 4,500 Retirees receiving Benefits under

the Retiree Welfare Plans.

12.    The Debtors previously sought to terminate the Retiree Welfare Plans and LTD

Plans by a motion filed in June 2010 (the "Plan Termination Motion").[7]  In connection with that

proposed termination of the Retiree Welfare Plans and the LTD Plans, the Debtors had

negotiated with a health insurance provider to provide the Retirees and LTD Employees with

replacement medical coverage that is not readily available to individuals on the open market.

Shortly thereafter, the Nortel US Retirement Protection Committee, an ad hoc steering

committee of retired executives of the Debtors (the "Ad Hoc Retiree Committee"), filed a motion

seeking authorization to form a voluntary employee benefit association as an alternative option

---

[6]    The Debtors maintain separate benefits plans for their long-term disabled employees (the "LTD Employees") and other current employees, including the Nortel Networks Inc. Long-Term Disability Plan, the Nortel Networks Inc. Medical Plan, the Nortel Networks Inc. Dental, Vision, and Hearing Care Plan, the Nortel Networks Inc. Life Insurance Plan, the Nortel Networks Inc. AD&D Insurance Plan, the Nortel Networks Inc. Health Care Reimbursement Account Plan, the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan, the Nortel Networks Inc. Long-Term Investment Plan, predecessor plans and other formal or informal benefit plans, agreements, arrangements or programs (including plans, agreements, arrangements or programs that are funded through the purchase of insurance) or arrangements for disabled employees, their surviving spouses and eligible dependents, including for medical, surgical, or hospital care benefits, income continuation benefits or any other benefits in the event of sickness, accident, disability, or death (collectively, and in each case as such plans have been amended or modified from time to time, the "LTD Plans").  The modification of the LTD Plans is subject to the *Debtors' Motion for Entry of an Order Authorizing the Debtors to Terminate the Debtors' Long-Term Disability Plans and the Employment of the LTD Employees* (the "LTD Plan Termination Motion") filed contemporaneously with this Motion.

[7]    See *Debtors' Motion for Entry of an Order Authorizing Debtors to Terminate Certain Retiree and Long-Term Disability Plans*, dated June 21, 2010 [D.I. 3204].

for providing health insurance (the "VEBA Motion").[8]  Based on discussions with counsel to the

Ad Hoc Retiree Committee, their rejection of the alternative insurance and the Third Circuit's

ruling in IUE-CWA  v. Visteon Corp. (In re Visteon Corp.), 612 F.3d 210 (3d. Cir. 2010), the

Debtors ultimately withdrew the Plan Termination Motion without prejudice in July 2010 [D.I.

3651].  Thereafter, in October 2010, the Nortel US Retirement Protection Committee withdrew

the VEBA Motion without prejudice [D.I. 4104].

13.    While the Debtors historically have provided various welfare benefits to their

Retirees, they have not committed themselves under the Retiree Welfare Plans to provide such

benefits indefinitely.  On the contrary, the governing Retiree Welfare Plans specifically reserve

the Debtors' right to amend or terminate the Retiree Welfare Plans, including in circumstances

such as the Debtors now face.  For example, the 1991 Northern Telecom Inc. Retiree Medical

Plan and Retiree Life Insurance and Long-Term Care Plan provides:

> The Company hopes and expects to continue the Retiree Welfare
> Plan, but necessarily *reserves the right to amend the Retiree
> Welfare Plan from time to time or terminate the Retiree Welfare
> Plan at any time*. Any amendment to the Retiree Welfare Plan may
> reduce or eliminate benefits payable under the Retiree Welfare
> Plan to persons who are Employees or Retirees as of the effective
> date of the amendment.   1991 Northern Telecom Inc. Retiree
> Medical Plan and Retiree Life Insurance and Long-Term Care Plan
> at 14 (emphasis added), attached to the Ray Declaration as Exhibit
> 1.

By further example, the 2004 Nortel Networks Inc. Retiree Medical Plan provides:

> Although the benefits currently available (in the 2004 Plan Year)
> are described in this summary for the Company's Retiree Medical
> Plan, *the Company reserves the right to change or end the plan
> described in this summary at any time*. Any plan changes will
> result from actions taken and approved by the Company. *The*

---

[8]      See *Motion for an Order Authorizing Formation of a Voluntary Employee Benefit Association to Provide Tax Credit-Eligible Retiree Benefits*, dated July 16, 2010 [D.I. 3671].

> ***Company may adopt such changes or terminate the plan at any
> time and for any reason.*** The Company's practices, policies, and
> benefits are outlined here for your information as required by law.
> 2004 Nortel Networks Inc. Retiree Medical Plan Summary Plan
> Description at 96 (emphasis added), attached to the Ray
> Declaration as <u>Exhibit 2</u>.

While the precise language contained in the Retiree Welfare Plan documents varies slightly
across the years, the right to amend or terminate always existed.

### B.    THE WIND DOWN OF THE DEBTORS' ESTATES

14.    In the several months following the Debtors' decision to postpone seeking
termination of their Retiree Welfare Plans, the Debtors worked diligently to wind down their
remaining operations, including completion of the transition services provided to the buyers of
the various businesses.  The Debtors also undertook the sale of their patent portfolio which
closed in July 2011, and have sought to advance the resolution of the other remaining material
claims in their cases through the filing of various motions.  During this time, the Debtors also
sought to identify other possible alternative insurance arrangements for the Retirees.

15.    In June 2011, the Debtors sought the appointment of the Retiree Committee to
negotiate the termination or modification of the Retiree Welfare Plans, which committee was
appointed in August 2011.  Since that time, the Debtors have continued to wind down all other
aspects of their estates, to the point where they remain skeletal companies at best.  At the time
the bankruptcy cases were filed, the Debtors employed approximately 3,000 individuals.  Nearly
all of the Debtors' workforce (other than the LTD Employees) either took employment with the
buyers of the Debtors' businesses or were terminated by the Debtors in their various rounds of
layoffs over the last three and a half years.

16.    The Debtors currently employ only eighteen active employees, other than the
LTD Employees, and that number is expected to drop to approximately five employees by year-

end.  As a result of the divestitures and wind down, it has become increasingly difficult to

maintain and administer the Retiree Welfare Plans and, once the Debtors dissolve as

corporations, there will be no company even in name to continue the Benefits.  Moreover, while

the Retiree Welfare Plans are administered by third-party vendors, the Debtors maintain the

plans as self-insured plans and, as such, the Debtors bear the economic risk of the plans and the

claims filed thereunder.

17.      Over the last two years since July 2010, when the prior Plan Termination Motion

was withdrawn, the Debtors have continued to provide benefits under the Retiree Welfare Plans,

at an approximate cost of $25.6 million to their estates.  The current cost to the Debtors of

providing the Benefits under the Retiree Welfare Plans is between approximately $1.1 and $1.3

million per month, although the Debtors expect that the costs would go up as the current

population ages, if premiums were increased, if health care costs rise and/or if a greater number

of claims were filed.

18.      The Debtors also seek to terminate the Retiree Welfare Plans at this time in order

to be able to plan for the administrative process involved in winding down the Retiree Welfare

Plans.  The Debtors will need to allow for time to notify the Retirees regarding the

discontinuation of the Plans, to work with the various vendors to terminate the Plans and resolve

any remaining liabilities thereunder, and to process and pay for the remaining claims submitted

under the Plans that were incurred but not reported prior to the termination of the Plans.

Moreover, it is important to the Debtors to be able to terminate the Retiree Welfare Plans by year

end to avoid the additional costs and risks associated with renewal of the Retiree Welfare Plans

for an additional year.

**C. NEGOTIATIONS WITH THE RETIREE COMMITTEE**

19. On June 2, 2011, the Debtors sought the appointment of a retiree committee to engage in discussions regarding the modification or termination of the Retiree Welfare Plans by filing the *Debtors' Motion for Entry of an Order Pursuant to Section 1114 of the Bankruptcy Code Appointing an Official Committee of Retired Employees*, dated June 2, 2011 [D.I. 5568]. Thereafter, the Court issued an order directing the U.S. Trustee to appoint a retiree committee for the sole purpose of serving as the authorized representative of the Retirees in connection with their rights under section 1114 of the Bankruptcy Code and for no other purpose (the "Retiree Committee"), dated June 21, 2011 [D.I. 5783]. On August 2, 2011, the United States Trustee appointed the members of the Retiree Committee [D.I. 6074].

20. Since the appointment of the Retiree Committee last year, the Debtors have devoted significant resources and attention to negotiating in good faith with the Retiree Committee to seek the termination of the Retiree Welfare Plans and a settlement that would provide a fair and equitable resolution of any potential claims or rights held by the Retirees.

21. The Debtors also have acted diligently to provide the Retiree Committee with all of the information necessary to evaluate the Debtors' settlement proposals. On September 29, 2011, the Retiree Committee sent the Debtors initial broad requests for documents and information (the "Requests").[9] The Debtors began providing the requested documents and information to the Retiree Committee on September 29, 2011. The Debtors regularly have sent additional documents and information to the Retiree Committee over the last year. To date, the Debtors have provided the Retiree Committee with various Retiree Welfare Plan documents and other information regarding the Debtors' employees and their estates, assets and claims,

[9] Since receiving the Requests, the Debtors have received numerous additional requests from the Retiree Committee, including requests received on November 9, 2011 and December 6, 2011.

including by compiling various benefit-related information in response to the Requests.  In addition, the Debtors' professionals and the Retiree Committee's advisors have spent numerous hours on conference calls since the appointment of the Retiree Committee discussing and clarifying the data that the Debtors have produced to the Retiree Committee.[10]

22.     Although the purpose for the formation of the Retiree Committee was to facilitate the negotiation of settlements with the Debtors regarding the modification or termination of the Retire Welfare Plans, for the first six months after the appointment of the Retiree Committee, only two substantive meetings took place between the Debtors and the Retiree Committee, on October 6, 2011 and February 27, 2012.  Both meetings were at the request and insistence of the Debtors.

23.     At the October 6, 2011 meeting, the Debtors provided the Retiree Committee with substantial financial information regarding the Retiree Welfare Plans.  Representatives of a potential alternative insurer also attended the meeting and were prepared to make a presentation on the insurance program they could offer, but the Retiree Committee declined to meet with the insurer despite being informed that further delays would increase the cost of the replacement insurance because the insurance company would be unable to honor rates indefinitely.

24.     On January 19, 2012, the Debtors provided a term sheet containing a settlement proposal to the Retiree Committee and shortly thereafter sought to meet with the Retiree Committee on January 31, 2012 regarding the Debtors' proposal.  The meeting with the Retiree Committee, attended by members of the Retiree Committee and the LTD Committee, their legal and financial advisors, the Debtors' professionals and advisors of the UCC and Bondholder Group, ultimately occurred on February 27, 2012.  At the February 27, 2012 meeting, counsel to

---

[10]     Calls between the Debtors' professionals and the Retiree Committee's professionals occurred on November 15, 2011, December 12, 2011, January 19, 2012, and March 12, 2012.

the Retiree Committee stated that they were still unprepared to engage in substantive negotiations regarding the Debtors' proposals.

25.     Frustrated by the slow progress of the negotiations and concerned that alternative benefits options could become more costly or unavailable over time, on March 28, 2012, the Debtors filed a motion (the "Mediation Motion"), seeking to have a mediator appointed to facilitate settlement discussions between the Debtors and the Retiree Committee.[11]  On April 18, 2012, the Court entered an order granting the Mediation Motion and appointed Richard Levin, Esq., of Cravath, Swaine & Moore LLP, as mediator (the "Mediator").[12]  In connection with the appointment of the Mediator, the Debtors agreed to a further 60-day standstill during which they would not take any action to modify or terminate the Retiree Welfare Plans.  That standstill expired on June 18, 2012.

26.     Despite the best efforts of the Mediator, the Debtors and the Retiree Committee still have been unable to reach written agreement on a consensual termination of the Retiree Welfare Plans.  The Debtors received the first written response to the January 19, 2012 settlement proposal on May 30, 2012.  Later, on June 4, 2012, the Debtors made a further settlement proposal, substantially in the form attached as Exhibit 3 to the Ray Declaration (the "Proposal"),  in an attempt to continue to move the negotiations forward.  The Debtors met with the Retiree Committee on June 14, 2012 regarding the Debtors' June 4th proposal.  During the course of the rigorous discussions in which the Debtors engaged with the Retiree Committee and the Mediator at that meeting, the Debtors made several offers to the Retiree Committee through

---

[11]     See *Motion for Entry of an Order (I) Appointing a Neutral Mediator Concerning the Modification or Termination of the Nortel Retiree Welfare Plans and the Nortel Long-Term Disability Plans; (II) Authorizing the Debtors to Pay the Costs of Engagement; and (III) Granting Related Relief* [D.I. 7463].

[12]     See *Order (I) Appointing a Neutral Mediator Concerning the Modification or Termination of the Nortel Retiree Welfare Plans and the Nortel Long-Term Disability Plans; (II) Authorizing the Debtors to Pay the Costs of Engagement; and (III) Granting Related Relief* [D.I. 7560].

the Mediator.  The Retiree Committee responded to each offer with a substantially higher counterproposal, leaving the parties unable to reach a consensus.  A further negotiation session was held on July 19, 2012, as a final effort to reach settlement and with the intention that the parties actively engage in discussions before that date.  Although both parties made confidential, non-binding proposals and counter-proposals to each other during the July 19th meeting, again no agreement could be reached.

27.      At this time, almost a year to the day from the formation of the Retiree Committee, over 100 days after the appointment of the Mediator and after several attempts, in conjunction with the Bondholder Group and the UCC, to negotiate a consensual settlement with the Retiree Committee, the Debtors have concluded that it is necessary to seek formal termination of the Retiree Welfare Plans, in order to ensure the plans will be terminated by December 31, 2012.  While the Debtors would remain open to a settlement on reasonable terms, the Debtors have been unable to reach such an agreement despite devoting substantial time and resources in an effort to do so, and the Debtors now need certainty as to the future of the Retiree Welfare Plans.

D.      **THE PROPOSAL**

28.      As noted above, on June 14, 2012, the Debtors made the Proposal to the Retiree Committee and it was rejected.  For the reasons stated herein, the Debtors now seek approval of the termination of the Retiree Welfare Plans on the following material terms, which are consistent with the terms of the Proposal as clarified through the course of negotiations:[13]

- Termination of Retiree Welfare Plans.  The Debtors will terminate all Retiree Welfare Plans including, for the avoidance of doubt, all coverage and benefits provided

---

[13]      As explained above, the Debtors and the Retiree Committee continued to make confidential, non-binding settlement proposals to each other through the Mediator.  The Debtors would consider waiving the confidentiality of the non-binding proposals they made through the Mediator to the Retiree Committee if the Retiree Committee would agree to do the same for the counter-proposals they offered through the Mediator to the Debtors.

thereunder on December 31, 2012 (the "Termination Date").  The Debtors shall continue to pay the Retiree Benefits that arise in the ordinary course and are payable under and in accordance with the Retiree Welfare Plans until the Termination Date.

- Retiree Welfare Plans Run Off Period.  The time period for making a claim for reimbursement for benefits covered by and approved pursuant to the relevant Retiree Welfare Plans for claims incurred prior to the Termination Date shall be reduced to six months, commencing on the Termination Date.

- Retiree Claim Consideration.

  - The Retiree Payment Amount shall be equal to $40 million (the "Gross Settlement Amount"), minus all documented amounts paid by the Debtors for the purpose of providing Retiree Benefits on or after July 1, 2012 through and including December 31, 2012 (the "Retiree Benefit Expenses").

  - Within thirty (30) days of entry of an order that has become a final and non-appealable order that binds all individuals with Retiree Claims (the "Payment Date"),[14] the Debtors shall pay the Retiree Committee or its designee, which designee shall be acceptable to the Debtors,[15] an amount (the "Termination Date Payment") equal to $40 million minus (x) the Retiree Benefit Expenses paid by the Debtors on or prior to the Termination Date, and (y) the Debtors' estimated amount (the "Holdback Amount") of additional Retiree Benefit Expenses incurred but not paid by the Debtors on or prior to the Termination Date (the "Incurred Benefit Expenses").

  - The amount of the Incurred Benefit Expenses actually paid or owing by the Debtors shall be determined by the Debtors no more than nine (9) months after the Termination Date.  If the actual amount of the Incurred Benefit Expenses is less than the Holdback Amount, then the Debtors shall pay the difference to the Retiree Committee or its designee.  If the actual amount of the Incurred Benefit Expenses is greater than the Holdback, then the Retiree Committee, its agent or any trust or vehicle established to hold the Termination Date Payment shall pay or direct the payment of the difference (the "Debtor True-up Amount") to the Debtors; provided, however, that the Debtors' sole recourse for payment of the Debtor True-up Amount shall be any Retiree Payment Amount funds that remain undistributed by the Retiree Committee or its agents on the date the Retiree Committee receives written notice of the Debtor True-Up Amount.

  - The Gross Retiree Payment Amount shall constitute full and final satisfaction of any and all Retiree Claims (as defined below).

  - The Retiree Payment Amount shall be used to satisfy the Retiree Claims, where the Retiree Committee shall determine the allocation of the Retiree Payment

---

[14]    The payment terms of the Retiree Payment Amount are to be determined.

[15]    The Debtors will not consent to the use of a VEBA to administer or distribute the Retiree Payment Amount.

Amount among the Retirees and any costs to doing so shall be satisfied from the Retiree Payment Amount.

- <u>Satisfaction of Retiree Claims.</u>  The termination of the Retiree Welfare Plans and the payment of the Settlement Amount shall fully satisfy the Retiree Claims, and the Retirees shall be stopped from asserting any further Retiree Claims.  As used herein, the "<u>Retiree Claims</u>" shall include any and all actual and potential claims, demands, causes of action, debts, liabilities or obligations, whether based on any legal or equitable theory or otherwise, including, but not limited to suits in contract, tort or equity, whether arising under contract, the Employee Retirement Income Security Act of 1974 (ERISA), the Consolidated Omnibus Budget Reconciliation Act (COBRA), or any other statute, rule, regulation, common law or otherwise, and whether arising under the laws of the United States, any political subdivision thereof or the laws of any other jurisdiction, in all cases relating to:

    i. Any benefits, other obligation or other claims arising under or relating to the Retiree Welfare Plans (the "<u>Retiree Benefits</u>");

    ii. The administration of the Retiree Welfare Plans, including, but not limited to, the calculation of Retiree Benefits, the application of offsets against Retiree Benefits, the denial of Retiree Benefits, the determination of eligibility to receive Retiree Benefits, the interpretation of the Retiree Welfare Plans and the drafting of the Retiree Welfare Plans; and

    iii. The amendment, modification and/or termination of any of the Retiree Welfare Plans and/or any benefits or coverage thereunder, whether done previously or as provided for under the terms of the Proposal.

- For the avoidance of doubt, Retiree Claims shall exclude the following claims:

    o Claims arising from or relating to the Nortel Networks Severance Allowance Plan or the Nortel Networks Enhanced Severance Allowance Plans, including related fringe benefits;

    o Claims arising under or relating to the Nortel Networks U.S. Deferred Compensation Plan or the Northern Telecom Inc. Senior Management Incentive Award Program;

    o Claims for qualified pension benefits arising under or relating to the Nortel Networks Retirement Income Plan, Nortel Networks Pension Service Plan, Nortel Networks Cash Balance Plan, Northern Telecom Inc. Retirement Plan for Employees or the Nortel Networks Capital Accumulation and Retirement Program, which are properly asserted only against the Pension Benefit Guaranty Corporation;

    o Claims for non-qualified pension benefits arising under or relating to the Nortel Networks Retirement Income Plan Restoration Plan, Nortel Networks Cash Balance Restoration Plan, Northern Telecom Inc. Excess Pension Plan,

15

Nortel Networks Long-Term Investment Restoration Plan, Nortel Networks Supplementary Executive Retirement Plan, the Nortel Networks Special Pension Benefits Plan and the Nortel Networks Special Pension Credit Plan;

o   Except to the extent described above, valid claims for reimbursement for benefits covered by and approved pursuant to the Retiree Welfare Plans incurred prior to the Termination Date that are properly brought prior to the expiration of the run-off period (as amended);

o   Claims for expatriate benefits and relocation expenses;

o   Claims for the account balance currently vested in an individual's account under the Nortel Networks Long-Term Investment Plan or Northern Telecom Inc. Thrift Savings Plan; and

o   Claims directly arising under a written employment agreement between an individual Retiree and the Debtors that are wholly unrelated to life insurance, death benefits, retirement payments, medical insurance, long-term care insurance or any other Retiree Claims.

- Final Resolution.  Any and all Retiree Claims shall be enforceable only against the Settlement Amount and shall be satisfied by the amounts determined by the Retiree Committee to be paid with respect to each such claim.  The Retiree Payment Amount shall be the sole source of recourse for any and all Retiree Claims.

- Proofs of Claim.  Any and all proofs of claim filed by individual Retirees on account of Retiree Claims shall be disallowed and expunged from the Debtors' claims register as of the date an order approving the Proposal becomes final and non-appealable (the "Effective Date"), solely with respect to the portion of the proof of claim relating to Retiree Claims.

- Retirement Eligible Employees.  The Order shall not result in the loss or waiver of any right of current employees of the Debtors as of the Effective Date, including those currently receiving employer-paid long-term disability benefits (the "LTD Employees"), or former employees of the Debtors to participate in the Proposal, which right to participate and receive benefits or payments thereunder shall be based on the individual's eligibility to receive Benefits under the Retiree Welfare Plans as of the Effective Date, provided that in order to preserve any such right, such employees must make an election to participate in the Retiree Welfare Plans for which they are eligible within thirty (30) days after the Effective Date and any such election made from the Effective Date through the Termination Date shall be effective as of the Termination Date.  In order for a current employee, including an LTD Employee, to elect to receive benefits under the Retiree Welfare Plans as of the Effective Date, such employee must voluntarily terminate their employment with the Debtors (unless such employee was terminated pursuant to the LTD Plan Termination Motion) and relinquish the right to receive benefits under the plans and programs available to current employees, including, without limitation, income continuation

16

benefits pursuant to the Nortel Networks Inc. Long-Term Disability Plan, consistent with the plan terms and prior practice.

- <u>Continuation of the Retiree Committee</u>.  After the Effective Date, the Retiree Committee shall exist solely for the purpose of administering the allocation, distribution and payment of the Retiree Payment Amount to the holders of Retiree Claims, and shall cease to exist upon the date of distribution of the entire Retiree Payment Amount.[16]  The Debtors shall not be liable to pay fees, expenses or costs incurred by the Retiree Committee or its professionals, advisors or agents after the Effective Date, and any such amounts shall instead be paid out of the Retiree Payment Amount.

- <u>Final Settlement</u>.  The Proposal is being entered into, and the payment of the Retiree Payment Amount is being made in full and final satisfaction of the Retiree Claims and upon the occurrence of the Effective Date shall supersede any prior obligations of the Debtors with respect to the Retiree Welfare Plans, such that the Retiree Committee and all holders of Retiree Claims shall be forever estopped and barred from seeking further relief pursuant to section 1114(g) of the Bankruptcy Code related to the Retiree Welfare Plans, the Retiree Claims or the Proposal.

### **Basis for Relief**

29.    To date, the Retiree Committee has failed to agree to terminate the Retiree Welfare Plans on terms reasonable to the Debtors.  Given the Debtors' need for finality as they proceed with the wind down of their operations, the Debtors seek authority to terminate the Retiree Welfare Plans if no consensual resolution can be reached by the date of the hearing on this Motion.  Achieving such closure, whether voluntarily or through the Court-approved modification process, is necessary for the Debtors to successfully move their cases forward toward the approval and implementation of a plan of reorganization.

30.    As described in greater detail below, the Debtors have satisfied the legal standard for the termination of the Retiree Welfare Plans under section 1114 of the Bankruptcy Code. First, the Retirees' right to receive the Benefits is neither vested by law nor under the terms of the Retiree Welfare Plan documents.  Accordingly, the Retiree Welfare Plans are terminable at

---

[16]    Note that the Retiree Committee may be able to be disbanded on the Termination Date, where they will be superseded by the management of the new vehicle or if the money is fully distributed then.

will without liability to the Debtors beyond the length of these chapter 11 proceedings.  In

addition, the Debtors have fulfilled every element set forth in section 1114(g) of the Bankruptcy

Code for the approval of a modification or termination of retiree benefits.  Thus, the Debtors are

entitled to an order terminating the Retiree Welfare Plans.

A.    **THE RETIREE WELFARE PLANS ARE TERMINABLE AT WILL**

31.    The Retiree Welfare Plans are terminable at will by the Debtors because the

Benefits are not vested benefits.  The law is clear that benefits provided pursuant to welfare

benefit plans (including all the Benefits at issue) do not vest pursuant to the Employee

Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 <u>et seq</u>. ("<u>ERISA</u>"), except as

expressly provided under the terms of the Retiree Welfare Plans.  Here, the Debtors have

provided the Benefits to the Retirees subject to the Debtors' ***express right to unilaterally amend***

***or terminate*** the various Retiree Welfare Plans.  As described above, the Debtors specifically

reserve in the various Retiree Welfare Plan documents the Debtors' unilateral right to amend or

terminate the various Retiree Welfare Plans at any time and for any reason.  Because the Benefits

have not vested pursuant to ERISA, the Retiree Committee has the burden of proving by a

preponderance of the evidence that the terms of the Retiree Welfare Plans provide the

Beneficiaries with vested benefits.  They cannot do so.

(i)    *WELFARE BENEFITS DO NOT VEST AS A MATTER OF LAW UNDER ERISA*

32.    The Benefits have not vested pursuant to ERISA because the Retiree Welfare

Plans are "welfare benefit plans," and such plans, unlike pension plans, are not subject to the

vesting provisions of ERISA.

33.    The Supreme Court has made clear that an employer is not required under ERISA

to provide retiree welfare benefits at all.  <u>See, e.g.</u>, <u>Curtiss-Wright Corp. v. Schooneiongen</u>, 514

U.S. 73, 78 (1995) ("[W]e are mindful that ERISA does not create any substantive entitlement to

18

employer-provided health benefits or any other kind of welfare benefits.").  Accordingly, when a

company does choose to provide welfare benefits to its retirees, the law does not create a vested

entitlement to the continuation of such benefits.  The Third Circuit has specifically addressed this

issue and is clear on this point.  For example, in In re Lucent Death Benefits ERISA Litig., 541

F.3d 250, 253 (3d Cir. 2008), plaintiffs, former employees of defendant, argued that defendant

could not terminate a pensioner death benefit that had been provided to the plaintiffs.  The Third

Circuit held that because the death benefit was a welfare benefit and not a pension benefit, the

benefit had not vested pursuant to ERISA, explaining that:

> ERISA provides elaborate requirements for the vesting of pension
> benefits, but it does not provide automatic vesting of welfare
> benefits.  An accrued pension benefit is protected by ERISA's anti-
> cutback provision without any showing that it has vested.   In
> contrast, a welfare benefit is protected from elimination only if the
> plaintiff proves by a ***preponderance of the evidence*** that the plan
> provider had intended the welfare benefit to have vested (despite
> not being obligated to do so by ERISA).  Id. at 253-54 (citations
> omitted) (emphasis added).

34.     Because benefits provided under welfare benefit plans do not vest under ERISA,

they are terminable at will unless the plans specifically provide otherwise.  As the Third Circuit

explained, "an employer's commitment to vest such benefits is not to be inferred lightly and

must be stated in clear and express language" in the governing plan documents.  Int'l Union,

United Auto., Aerospace & Agric. Implement Workers of Am. v. Skinner Engine Co., 188 F.3d

130, 139 (3d Cir. 1999)(internal citations omitted);  see also, DiFelice v. Aetna U.S. Healthcare,

346 F.3d 422, 455 (3d Cir. 2003) (Becker, A., concurring) (noting that welfare benefit plans are

"exempt from the substantive vesting and funding requirements" of ERISA and that "[i]ndeed,

courts have held that the absence of a vesting provision allows employers to amend their plans

virtually at will, even in discriminatory fashion"); Int'l Union, U.A.W. v. Skinner Engine Co.,

188 F.3d at 138 (employers are "generally free . . . for any reason at any time, to adopt, modify

or terminate welfare plans' . . . [unless they agree] to relinquish their right to unilaterally terminate those benefits and provide for lifetime vesting" (quoting <u>Curtiss-Wright</u>, 514 U.S. at 78)); <u>In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.</u>, 58 F.3d 896, 901 (3d Cir. 1995) ("In rejecting the automatic vesting of welfare plans, Congress evidenced its recognition of the need for flexibility with regard to an employer's right to change medical plans").

35.     It is uncontroverted that the Retiree Welfare Plans are welfare benefit plans and not pension plans, and therefore, the Benefits did not vest as a matter of law.  Thus, in order for the Retiree Committee to prevail on their argument that the Benefits have vested, the Retiree Committee must meet their burden of proving by a preponderance of the evidence that the Debtors intended the Benefits to have vested.  As explained below, the Retiree Committee cannot meet this burden.

(ii)     *THE RETIREE WELFARE PLANS PERMIT THE WELFARE PLANS TO BE TERMINATED*

36.     The Benefits have not vested pursuant to the terms of the Retiree Welfare Plans because the plain language of the Retiree Welfare Plan documents does not provide that the Benefits were intended to vest.  To the contrary, the various Retiree Welfare Plan documents do not contain any provisions stating, or even suggesting, that any benefits provided to the Retirees are vested.  Instead, they expressly provide that the Debtors have the right to modify or terminate the Retiree Welfare Plans at any time in their sole discretion.

37.     Each Retiree Welfare Plan document expressly gives the Debtors the unilateral right to terminate the Retiree Welfare Plans at any time, using language similar to the below:

> Although the benefits currently available (in the 2004 Plan Year) are described in this summary for the Company's Retiree Medical Plan, ***the Company reserves the right to change or end the plan described in this summary at any time***. Any plan changes will result from actions taken and approved by the Company. ***The***

20

> ***Company may adopt such changes or terminate the plan at any
> time and for any reason.*** The Company's practices, policies, and
> benefits are outlined here for your information as required by law.
> 2004 Nortel Networks Inc. Retiree Medical Plan Summary Plan
> Description at 96 (emphasis added).

38.    Because a company's intent to provide vested benefits must be express, it is not

enough to show a company historically provided such benefits, or that it hoped to continue to do

so in the future.  Indeed, courts have specifically held that when a company reserves the right to

change or terminate benefits, even those benefits promised for "life" are not vested.  <u>Unisys</u>, 58

F.3d at 904 (explaining that a plan containing language both describing welfare benefits as being

provided for "life" and a reservation of rights is not ambiguous or inconsistent because, "[a]n

employer who promises lifetime medical benefits, while at the same time reserving the right to

amend the plan under which those benefits were provided, has informed plan participants of the

time period during which they will be eligible to receive benefits *provided* the plan continues to

exist.") (emphasis in original); <u>Vallone v. CNA Fin. Corp.</u>, 375 F.3d 623, 634 (7th Cir. 2004)

(holding that a health care allowance benefit provided to encourage early retirement and

described as a "lifetime" benefit was not vested because a reservation of rights clause in the plan

documents allowed amendment or modification even after retirement).  Thus, in <u>Vallone</u>, the

court notes that, "The reservation of rights clauses . . . allow CNA to *prospectively* alter or

amend its welfare benefits offered to retirees, even after retirement, and that is what it did."  <u>Id.</u>

at 638.

39.    Additionally, the Retiree Committee has suggested that the Benefits may have

vested because documents were provided to certain Retirees that were not clearly limited by an

asserted right to modify or terminate.  Although the Retiree Committee has yet to provide an

example of such a document despite the Debtors' repeated requests, whether or not such

documents exist is of no significance because such documents cannot modify the Retiree

Welfare Plans.  The Third Circuit has repeatedly held that ERISA precludes an employer from

making "oral or informal amendments" to employee benefits plans and that the only way to

effect a modification of such a plan is through a valid amendment executed "according to formal

procedures."  See Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1163 (3d Cir. 1990); Confer

v. Custom Eng'g Co., 952 F.2d 41, 43; Depenbrock v. Cigna Corp., 389 F.3d 78, 81 (3d. Cir.

2004).  Therefore, regardless of whether any such documents could be argued to exist, they

would be incapable of modifying the Retiree Welfare Plan documents in which the Debtors

clearly reserve their right to modify or terminate the Retiree Welfare Plans.

        40.      Furthermore, the Third Circuit's ruling in Visteon does not alter the application of

this rule.  Although the Visteon court held that section 1114 applies even where a retiree benefit

plan reserves the employer's right to amend or terminate the benefits provided, the court made

clear that section 1114 is a procedural right, "neither entirely nor permanently in derogation of

underlying contractual rights."  Visteon, 612 F.3d at 236.  As a result, the Visteon holding does

not vest benefits that would otherwise be terminable at will – it merely provides retirees with a

procedural right to use as a "microphone" should such changes take place during the course of a

former employer's chapter 11 proceedings.  Id.  Moreover, the law is clear that after a company

has emerged from bankruptcy, it retains any existing contractual right to terminate benefits.  See

id. ("Additionally, it must be remembered that § 1114's protections terminate upon plan

confirmation," and noting that section 1129(a)(13) does not vest benefits.).  Accordingly, the

Court has authority to approve the termination of the Retiree Welfare Plans under section 1114 at

this time.

        41.      Therefore, since the Retiree Welfare Plans do not provide that the Benefits are

vested, and the Retiree Committee has failed to produce **any** evidence, much less a

22

preponderance of evidence, that the Benefits have vested, the Benefits are not vested and thus

they are terminable at will.

**B.      MODIFICATION OF RETIREE BENEFITS IS GOVERNED BY 11 U.S.C. § 1114**

42.     Section 1114(g) of the Bankruptcy Code provides that:

> The court shall enter an order providing for modification of the payment of retiree
> benefits if the court finds that –
>
> (1)      the trustee has, prior to the hearing, made a proposal that fulfills the
> requirements of subsection (f);
>
> (2)      the authorized representative of the retirees has refused to accept such
> proposal without good cause; and
>
> (3)      such modification is necessary to permit the reorganization of the debtor
> and assures that all creditors, the debtors, and all of the affected parties are
> treated fairly and equitably, and is clearly favored by the balance of the
> equities….

11 U.S.C. § 1114(g).

43.     When the debtor demonstrates compliance with these provisions, the Court is

authorized to approve modification or termination of retiree health and life insurance benefits.

See Visteon, 612 F.3d at 217.

44.     As noted above, the first requirement of section 1114(g) is that the debtor has,

prior to the hearing, "made a proposal that fulfills the requirements of subsection (f)."  That

subsection, in turn, provides that:

> (1)      Subsequent to filing a petition and prior to filing an application seeking
> modification of the retiree benefits, the trustee shall –
>
> A.      make a proposal to the authorized representative of the retirees,
> based on the most complete and reliable information available at
> the time of such proposal, which provides for those necessary
> modifications in the retiree benefits that are necessary to permit the
> reorganization of the debtors and assures that all creditors, the
> debtors and all of the affected parties are treated fairly and
> equitable; and

B.      provide, subject to subsection (k)(3), the representative of the
        retirees with such relevant information as is necessary to evaluate
        the proposal.

(2)     During the period beginning on the date of the making of a proposal
        provided for in paragraph (1), and ending on the date of the hearing
        provided for in subsection (k)(1), the trustee shall meet, at reasonable
        times, with the authorized representative to confer in good faith in
        attempting to reach mutually satisfactory modifications of such retiree
        benefits.

11 U.S.C. § 1114.

## C.      THE DEBTORS HAVE SATISFIED THE REQUIREMENTS OF SECTION 1114

45.    Section 1114's requirements are derived from 11 U.S.C. § 1113, which permits
the court to allow a debtor to reject collective bargaining agreements.  Therefore, courts have
applied to section 1114 proceedings the same standards developed in connection with section
1113. See In re Ionosphere Clubs, Inc., 134 B.R. 515, 519-20 (Bankr. S.D.N.Y. 1991)
("[c]ompliance with § 1114 is substantively and procedurally the same as compliance with
§ 1113"); United Food & Commercial Workers Union v. Family Snacks, Inc. (In re Family
Snacks, Inc.), 257 B.R. 884, 896 (B.A.P. 8th Cir. 2001) (applying same standard to both section
1113(c) and 1114(g) requests).

46.    The Third Circuit has adopted a nine-factor test to evaluate the requirements of
section 1113(c). Wheeling-Pittsburgh Steel Corp. v. United Steelworkers of Am., 791 F.2d 1074,
1080-81 (3d. Cir. 1986); see also In re Nat'l Forge Co., 289 B.R. 803, 809-10 (Bankr. W.D. Pa.
2003); Bowen Enters., Inc. v. United Food & Commercial Workers Int'l Union (In re Bowen
Enters., Inc.), 196 B.R. 734, 741 (Bankr. W.D. Pa. 1996).  Those factors are: (1) the debtor in
possession must make a proposal to the authorized representative to modify or terminate retiree
benefits; (2) the proposal must be based on the most complete and reliable information available
at the time of the proposal; (3) the debtor must provide the authorized representative with

24

relevant information necessary to evaluate the proposal; (4) the debtor must meet at reasonable

times with the authorized representative after making the proposal but before the time of the

hearing; (5) the debtor must confer with the authorized representative in good faith in an attempt

to reach an agreement; (6) the authorized representative must have refused to accept the proposal

without good cause; (7) the proposal must be necessary for accommodating the confirmation of a

chapter 11 plan of reorganization; (8) the proposal must assure that all creditors, the debtor, and

all affected parties are treated fairly and equitably; and (9) the balance of the equities clearly

must favor modifications or termination of retiree benefits.  Wheeling-Pittsburgh Steel Corp.,

791 F.2d at 1080-81.

47.     As explained below, and as will be established at the hearing on this Motion, the

Debtors have fully complied with the requirements of section 1114 of the Bankruptcy Code.[17]

(i)     *THE DEBTORS HAVE MADE A PROPOSAL TO THE RETIREE COMMITTEE*

48.     As described above, the Debtors have made several proposals to the Retiree

Committee, including the Proposal.  The Retiree Committee rejected each of the Debtors'

proposals.  Therefore, the Debtors have satisfied the requirement that they present the Retiree

Committee with a settlement proposal.

(ii)    *THE DEBTORS' PROPOSAL IS BASED UPON THE MOST COMPLETE AND
        RELIABLE INFORMATION AVAILABLE*

49.     The Proposal is based on the most complete and reliable information available

regarding the facts of the Debtors' cases.  A debtor need not defer making a section 1114

modification until more complete or final information is developed.  7 Alan N. Resnick & Henry

J. Sommer, Collier on Bankruptcy ¶ 1114 (16th ed. 2011).  The Debtors have carefully

considered the Retiree Welfare Plan documents, the Debtors' need to terminate the Retiree

---

[17]     The Debtors intend to continue their good faith efforts to reach an agreement with the Retiree Committee in
the period before the hearing on this Motion.

Welfare Plans in order to complete the wind-down process, the treatment of other creditors –

including thousands of other employees, suppliers and customers – without a contractual right to

further claims against the Debtors and the continued cost of providing the Benefits in

formulating the Proposal.  While the Debtors maintain that the terms of the Retiree Welfare

Plans allow the Debtors to unilaterally terminate the Retiree Welfare Plans at any time and

without any liability to the Debtors, the Debtors recognize that there are always costs, devotion

of resources, and some nominal risk to any litigation, and also have taken into account the

significant monthly cost of continuing to provide the Benefits on an ongoing basis pending any

final resolution of these matters.  The Debtors have also provided the Retiree Committee

voluminous information regarding the Retiree Welfare Plans and have considered such data in

formulating the Proposal.

50.    Given the Debtors' reliance on such information and analysis, the Debtors have

satisfied this requirement because the Proposal is based on the most complete and reliable

information available.  Ass'n of Flight-Attendants-CWA, FL-CIO v. Mesaba Aviation, Inc., 350

B.R. 435, 454 (D. Minn. 2006) (applying the standard under § 1113); In re Nat'l Forge Co., 289

B.R. at 810 (applying the standard under section 1113).

(iii)    *THE DEBTORS PROVIDED THE RETIREE COMMITTEE WITH ALL*
*RELEVANT INFORMATION NECESSARY TO EVALUATE THE PROPOSAL*

51.    The Retiree Committee has been provided with all relevant information necessary

to evaluate the Settlement Agreement.

52.    Since receiving the Requests, the Debtors have worked diligently to provide the

Retiree Committee with all of the requested information in the Debtors' possession.  In addition,

substantial volumes of documents and other information were produced to the Retiree

Committees' advisors, as described above.  These materials provided the Retiree Committee with

information regarding a wide variety of issues including, but not limited to, the Debtors' assets

and liabilities, the Debtors' financial information, the Retiree Welfare Plans, the Debtors' past

practices with regard to Benefits and the Retiree population census and claims history data.

53.    Courts in this circuit have found that providing the company's current financial

information alone is sufficient to meet this requirement. See In re Sol-Sieff Produce Co., 82 B.R.

787, 794 (Bankr. W.D. Pa. 1988). Given that the Debtors have supplied not only this

information, but also all information requested by the Retiree Committee available without

undue burden, the Debtors have clearly satisfied this requirement.

      (iv)    *THE DEBTORS HAVE MET AT ALL REASONABLE TIMES WITH THE*
                *RETIREE COMMITTEE*

54.    The Debtors have met in person with the Retiree Committee on four occasions

over the course of the past year, *albeit* each time at the insistence of the Debtors. The Debtors

have been willing and available to meet with the Retiree Committee throughout the negotiations

and, also have participated in multiple telephone calls and one-off meetings with counsel to the

Retiree Committee, sometimes on less than one day's notice.  Indeed, the Debtors have never

declined a meeting with the Retiree Committee or its advisors, and would be willing to meet with

the Retiree Committee in the future if there were an expectation a reasonable settlement could be

reached.  In addition, the Debtors, the UCC and the Bondholder Group all participated in several

months of mediation with the Retiree Committee.  Given these facts, the Debtors have clearly

met and surpassed their burden to meet with the Retiree Committee at all reasonable times.

      (v)    *THE DEBTORS HAVE CONFERRED WITH THE RETIREE COMMITTEE IN*
               *GOOD FAITH*

55.    Among the factors the Debtors must satisfy, the Debtors must evince "conduct

indicating an honest purpose to arrive at an agreement as the result of the bargaining process." In

re Bowen Enters., Inc., 196 B.R. at 744 (quoting In re Walway Co., 69 B.R. 967, 973 (Bankr.

27

E.D. Mich. 1987)).  It is sufficient to find good faith to negotiate that the debtor met with the committee many times, added new information when it became available and was generally willing and able to negotiate issues.  <u>In re Matter of Sol-Sieff Produce Co.</u>, 82 BR at 794-95.

56.     As described in detail above, the Debtors have met with the Retiree Committee on several occasions and had discussions and exchanged information with the Retiree Committee since negotiation with the Retiree Committee began almost a year ago.  The Debtors attended each of these meetings ready and willing to enter into a settlement agreement.  Additionally, when it initially appeared that settlement negotiations were at a standstill, the Debtors sought the appointment of the Mediator rather than immediately seeking to terminate the Retiree Welfare Plans.  The Debtors continued to participate in mediation and negotiate with the Retiree Committee for more than a month after their agreed 60 day standstill in pursuing relief expired.  Moreover, the Debtors have provided several bona fide settlement proposals to the Retiree Committee and each has been rejected by the Retiree Committee.

57.     Because the evidence demonstrates good faith on the Debtors' part, it is the Retiree Committee's burden to establish that the Debtors' did not negotiate in good faith.  <u>See In re Carey Transportation, Inc.</u>, 50 B.R. 203, 211 (Bankr. S.D.N.Y. 1985) (noting in the context of section 1113 proceeding that "Once the debtor has shown that is has met with the Union representatives, it is incumbent on the Union to produce evidence that the debtor did not confer in good faith") (quoting <u>In re Am. Provision Co.</u>, 44 B.R. 907, 910 (Bankr. D. Minn. 1984)).  No basis exists for such a showing.

     (vi)   *THE RETIREE COMMITTEE HAS FAILED TO ACCEPT THE PROPOSAL WITHOUT GOOD CAUSE*

58.     The Retiree Committee has no good cause to reject the Proposal.  By their terms, the Retiree Welfare Plans are terminable at will without any liability to the Debtors.  Unlike

thousands of other laid-off employees, suppliers and customers, the Retirees have continued to receive Benefits (amounting to approximately $43.7 million) and protection throughout these cases. The Proposal would provide the Retirees with the cash equivalent of approximately five years of additional continued Benefits. The continuation of Benefits to year end provides the Retirees sufficient time to make arrangement for alternative benefits as needed. Similarly, the proposed cash payment would more than compensate the Retirees for any Benefits they could reasonably expected to receive during the pendency of these cases, to the extent the Retirees could even establish that Benefits should continue during these cases.

59.    The Debtors understand the importance of the Benefits to the Retirees and regret that it is not feasible to continue the Retiree Welfare Plans as in prior years. However, given the law and facts of these cases, it is clear that the Proposal is fair and that the Retiree Committee has no good cause to reject it. The burden is now on the Retiree Committee to establish good cause existed to reject the Proposal. See id., 44 B.R. at 910 ("[O]nce the debtor has shown that the [retiree representative] has refused to accept its proposal, the [retiree representative] must produce evidence that it was not without good cause").

(vii)    *TERMINATION OF THE RETIREE WELFARE PLANS IS NECESSARY TO PERMIT THE DEBTORS' REORGANIZATION .*

60.    The termination of the Retiree Welfare Plans is necessary to permit the Debtors' reorganization, even though the Debtors will not emerge from these proceedings as an operating business. Various courts, including bankruptcy courts in the district of Delaware, have permitted the termination of benefits under section 1114 by liquidating chapter 11 debtors. See, e.g., In re Fruehauf Trailer Co., Final Order Authorizing Debtors to Modify Certain Retiree Benefits Pursuant to Section 1114 of the Bankruptcy Code, (Bankr. D. Del. May 29, 1997) (No. 96-1563) D.I. 859; In re LTV Steel Co., Inc., Order Authorizing Termination of Retiree Benefits for

Certain Retirees, Pursuant to Section 1114 of the Bankruptcy Code, (Bankr. N.D. Ohio Jan. 22,

2002) (No. 00-43866) D.I. 2289; In re Penn Traffic Co., Case No. 09-14078 (PJW), 2010 Bankr.

LEXIS 5387, *20 (Bankr. D. Del. Oct. 27, 2010) (citing section 1114 in a confirmation order to

show the debtors had resolved all outstanding claims relating to the termination of their

participation in and contributions to various retiree benefit funds).  As the court pointed out in In

re Ionosphere Clubs, Inc., it would create an anomalous result to suggest that a chapter 11 debtor

must continue to pay benefits on a priority basis after deciding to liquidate, when they could

terminate such plans under chapter 7.  In re Ionosphere Clubs, Inc., 134 B.R. 515, 523 (Bankr.

S.D.N.Y. 1991).  Rather, courts have interpreted the requirement to mean a debtor must show the

modification or termination is "necessary to accommodate confirmation of a Chapter 11 plan"

when applied in the context of a liquidating chapter 11 case.  Id. at 5226 (interpreting the

standard to mean that "without modification or termination of the benefits, the retirees will

receive a maximum recovery in Chapter 11 while the other unsecured creditors will receive their

maximum recovery in Chapter 7"); In re Family Snacks, 257 B.R. at 897 (interpreting similar

language in section 1113).

        61.     It is necessary for the Debtors to terminate the Retiree Welfare Plans in order to

begin the wind down of the Retiree Welfare Plans.  The Debtors currently have only eighteen

employees and will be down to five employees by the end of the year.  As described above,

maintaining the Retiree Welfare Plans is costly and time consuming.  Furthermore, the self-

insured nature of the Retiree Welfare Plans forces the Debtors  -- and their other creditors -- to

bear the risk of large medical claims and increased costs, to the extent such benefit arrangements

continue to be available to the Debtors at all.  For these reasons, continuing to pay the Benefits

under the Retiree Welfare Plans places a disproportionate risk and expense on the Debtors'

estates given the businesses' current wound down state, and impacts the Debtors' ability to resolve the remaining claims and formulate a final chapter 11 plan, to the detriment of Nortel's other creditors who likely would recover more in a chapter 7 liquidation if the Debtors were forced to maintain the Retiree Welfare Plans in their chapter 11 cases.

62.      Termination of the Retiree Welfare Plans is also a necessary precursor to the confirmation of the Debtor's chapter 11 plan.  First, given the size of the Retiree Committee's asserted claims, the Debtors need finality in order to accurately establish plan reserves and estimate potential creditor recoveries for disclosure in the plan approval process.  Similarly, given the significant size of the claims asserted by the Retiree Committee, an accurate assessment of the value of these claims and their potential effects on other creditors' recoveries is also necessary for the Debtors to have better clarity regarding their assets and liabilities in resolving the remaining disputes pending in these cases.  Therefore, the termination of the Retiree Welfare Plans is "necessary to permit the reorganization of the Debtors."

   (viii)   *THE PROPOSAL ASSURES THAT ALL PARTIES ARE TREATED FAIRLY AND EQUITABLY*

63.      Section 1114 authorizes modifications to retiree benefits that assure "that all affected parties are treated fairly and equitably." 11 U.S.C. § 1114(f)(1)(A), (g)(3).  Thus, as courts have noted in the context of section 1113 proceedings, section 1114's standard prevents a debtor from saddling retirees with "a disproportionate share of the financial burden of avoiding liquidation."  In re Nat'l Forge Co., 289 B.R. at 811 (quoting In re Bowen Enters., Inc., 196 B.R. at 743); see Wheeling-Pittsburgh Steel Corp., 791 F.2d at 1091.  "The burden must be spread fairly and equitably among all affected parties," rather than imposed exclusively on retirees.  In re Nat'l Forge Co., 289 B.R. at 811 (quoting In re Bowen Enters., Inc., 196 B.R. at 743); Wheeling-Pittsburgh Steel Corp., 791 F.2d at 1091.  Nonetheless, the "fairness and equity"

31

element of section 1114 does not require that all parties must be treated equally in all respects. See In re Bowen Enters., Inc., 196 B.R. at 743-44; In re Sol-Sieff Produce Co., 82 B.R. at 794 (modifications appropriate where each party had been asked to sacrifice as much as they could within reason).

64.     Here, the Retirees are being treated fairly and equitably as compared to other creditors in these cases because the Proposal provides a substantial payment to the Retirees even though the Debtors maintain that they have **no** post-termination liability regarding the Retiree Welfare Plans.  Visteon, 612 F.3d at 224.  In addition to the Benefits provided to the Retirees pursuant to the Proposal, the Retirees have continued to receive full benefits through the entire course of the Debtors' chapter 11 cases, which amounts to 44 months of continued Benefits. This treatment is indeed arguably superior to other unsecured creditors, such as active employees who have been laid off without receiving any such additional benefits and customers who no longer do business with the Debtors and generally do not have claims for that lost business. Additionally, unsecured creditors have received no payments from the Debtors on account of their claims for over three and a half years and it is uncertain as to when such creditors will receive any such distributions.  Therefore, since the Retirees are treated fairly and equitably under the terms of the Proposal, this requirement is satisfied.

    (ix)    *THE BALANCE OF THE EQUITIES CLEARLY FAVORS TERMINATION OF THE RETIREE WELFARE PLANS AND THE APPROVAL OF THE PROPOSAL*

65.     In general, "bankruptcy courts have broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates." In re Kaiser Aluminum Corp., 456 F.3d at 328, 340 (3d Cir. 2006) (citing to the balancing of the equities analysis done under section 1114(g)(3) as an example of the importance of equitable principles to bankruptcy courts).  As described above, the Retirees have no vested claim for benefits under

the terms of the Retiree Welfare Plans.  Prior to the Third Circuit's ruling in Visteon, the

majority of courts found section 1114 inapplicable to the termination of retiree benefits where

the governing plans unambiguously provided the debtor company the right to modify or

terminate benefits at any time.  See, e.g., Retired W. Union Employees Ass'n v. New Valley

Corp. (In re New Valley Corp.), 1993 WL 818245 (D.N.J.); In re Delphi Corp., No. 05-44481

(RDD), 2009 WL 637315 (Bankr. S.D.N.Y. Mar. 10, 2009); LTV Steel Co. v. Conners (In re

Chateaugay Corp.), 111 B.R. 399, 404-05 (Bankr. S.D.N.Y. 1990) (holding that debtor was not

obligated to make continued payments because section 1114 was aimed at preventing unilateral

cancellation of bargained-for benefits, not the operation of contract provisions mutually agreed

upon).  The Third Circuit's ruling in Visteon, while granting all Retirees the procedural

protections of section 1114, was not intended to expand the Retirees' right to pursue a claim for

future benefits where no such right otherwise exists under the relevant contract. Visteon, 612

F.31 at 224 ("[T]he sole source of durational obligations is the underlying contractual

agreements, and if the debtor has no obligations under those agreements, as is the case here,

§ 1129(a)(13) does not require continuation of benefit payments upon the debtor's emergence

from bankruptcy.").  Based on this language, the Debtors would be able to terminate the Retiree

Welfare Plans the day after emerging from bankruptcy with no liability whatsoever.

Consequently, the Retirees cannot reasonably assert a claim in excess of their best estimate of the

length of this case.  The Debtors' Proposal offers cash now rather than an unsecured claim to be

paid at the conclusion of these cases in an amount equal to almost four years of benefits.  Yet,

the Retiree Committee seeks even more.  Denying the approval of the Proposal under

section 1114 would unfairly allow the Retirees to recover far in excess of any potential claim, to

the detriment of the Debtors' other creditors and their restructuring process as a whole.

Certainly, balancing the equities in this instance would preclude such a result.

## Notice

66.     Notice of the Motion has been given via overnight mail to (i) the U.S. Trustee;

(ii) counsel to the Retiree Committee; (iii) counsel to the LTD Committee; (iv) the LTD

Employees (v) counsel to the Bondholder Group; (vi) counsel to the UCC; and (vii) the general

service list established in these chapter 11 cases.  The Debtors submit that under the

circumstances no other or further notice is necessary.

## No Prior Request

67.     Except as described therein, no prior request for the relief sought herein has been

made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as Exhibit A hereto; (iii) authorize the Debtors to terminate, pursuant to section 1114, the Retiree Welfare Plans on the terms described in the Proposal; and (iv) grant such other and further relief as it deems just and proper.

Dated:   July 30, 2012
         Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------X
          :
          :     Chapter 11
          :
*In re*          :     Case No. 09-10138 (KG)
          :
Nortel Networks Inc., *et al.*,[1]  :     Jointly Administered
          :
      Debtors.  :
          :     **RE: D.I. _____**
          :
-------------------------------------------------------X

**ORDER GRANTING**
**DEBTORS' MOTION FOR ENTRY OF AN**
**ORDER TERMINATING RETIREE BENEFITS AND**
**APPROVING A SETTLEMENT PROPOSAL PURSUANT TO 11 U.S.C. § 1114**

Upon the motion dated July 30, 2012 (the "Motion"),[2] of Nortel Networks Inc. and

certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (the

"Debtors"), for entry of an order, as more fully described in the Motion, pursuant to sections

105(a) and 1114(g) of title 11 of the United States Code (the "Bankruptcy Code"), (i) authorizing

the Debtors to terminate the Retiree Welfare Plans; and (ii) approving the Proposal; and the

Court having reviewed and considered the Motion, and after due deliberation thereon, and good

cause appearing therefore:

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]       Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

B.      Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.      The statutory predicates for the relief sought in the Motion are sections 105(a) and 1114(g) of the Bankruptcy Code.

D.      Notice of the Motion has been provided to (i) the U.S. Trustee; (ii) counsel to the Retiree Committee; (iii) counsel to the LTD Committee; (iv) counsel to the Bondholder Group; (v) counsel to the UCC; and (vi) the general service list established in these chapter 11 cases.

E.      No further or other notice beyond that described in the forgoing Paragraph is required in connection with the Motion.

F.      The Debtors have made a Proposal to the Retiree Committee that fulfills the requirements of section 1114(f) of the Bankruptcy Code.

G.      The Proposal is based upon the most complete and reliable information available.

H.      The Debtors provided the Retiree Committee with all relevant information necessary to evaluate the Proposal.

I.      The Debtors have met and been available to meet with the Retiree Committee at all reasonable times.

J.      The Debtors have conferred with the Retiree Committee in good faith.

K.      The Retiree Committee has failed to accept the Proposal without good cause.

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

L.     Termination of the Retiree Welfare Plans is necessary to permit the reorganization of the Debtors.

M.     The Proposal assures that all parties are treated fairly and equitably.

N.     The balance of the equities clearly favors termination of the Retiree Welfare Plans and the approval of the Proposal.

O.     The Debtors have demonstrated compelling and sound business justifications for termination of the Retiree Welfare Plans.

P.     Approval of the Proposal is in the best interests of the Debtors and the Debtors' estates and creditors.

Q.     The Proposal is fair and reasonable.

R.     The Retiree Welfare Plans are terminable at will by the Debtors.

S.     The Proposal does not constitute a sub rosa plan or reorganization and the entry into and performance under the Proposal does not constitute the solicitation of a vote on a plan of reorganization.

T.     The Debtors' decision to enter into the terms of the Proposal is consistent with their fiduciary duties and does not give rise to any claim or remedy against the Debtors, except as may be expressly set forth in this Order or the Proposal; and it is therefore:

**ORDERED ADJUDGED AND DECREED THAT:**

1.     The Motion is GRANTED and any objections thereto are OVERRULED.

2.     The Proposal is approved in its entirety.

3.     This Order shall bind all holders of Retiree Claims to the terms of the Proposal.

4.     The Debtors are authorized and directed pursuant to section 1114 of the Bankruptcy Code to terminate the Retiree Welfare Plans as of December 31, 2012 according to

3

the terms of the Proposal and to take any and all action that may be reasonably necessary or appropriate to perform their obligations arising under the Proposal.

5.      The Retiree Committee is authorized and directed to take any and all action that may be reasonably necessary or appropriate to perform their obligations arising under the Proposal.

6.      The failure to specifically describe or include any particular provision of the Proposal in this Order shall not diminish or impair the effectiveness of such a provision, it being the intent of this Court that the Proposal be approved in its entirety.

7.      Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

8.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: _____, 2012
        Wilmington, Delaware          _____
                                      THE HONORABLE KEVIN GROSS
                                      CHIEF UNITED STATES BANKRUPTCY JUDGE

4

**EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------X
                                                           :
*In re*                                                    :     Chapter 11
                                                           :
Nortel Networks Inc., *et al.*,[1]                         :     Case No. 09-10138 (KG)
                                                           :
                            Debtors.                       :     Jointly Administered
                                                           :
                                                           :
                                                           :
----------------------------------------------------------- X

**DECLARATION OF JOHN J. RAY III IN SUPPORT OF
DEBTORS' MOTION FOR ENTRY OF AN
ORDER TERMINATING RETIREE BENEFITS AND
APPROVING A SETTLEMENT PROPOSAL PURSUANT TO 11 U.S.C. § 1114**

I, John J. Ray III, declare under penalty of perjury as follows:

1.      On January 6, 2010, upon the motion of Nortel Networks Inc. ("NNI") and the

other above-captioned debtors (together, the "Debtors"), I was appointed by this court as

Debtors' Principal Officer, *nunc pro tunc* to December 7, 2009.  I am also Senior Managing

Director and the sole member of Avidity Partners, LLC.

2.      Except as otherwise indicated, all facts set forth in this declaration are based

upon my personal knowledge, information supplied to me by other members of the Debtors'

management and professionals based on, among other things, a review of the Debtors' files,

books and records, or learned from my review of relevant documents or are based upon my

opinion, which is founded upon my experience and knowledge of the Debtors' operations.  If I

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

were called upon to testify, I could and would testify competently to the facts set forth herein.  I am authorized to submit this declaration.

3.      I submit this declaration in support of the Debtors' motion (the "Retiree Plan Termination Motion")[2] for an order (i) authorizing the Debtors to terminate the Retiree Welfare Plans; (ii) approving the Proposal; and (iii) granting them such other and further relief as the Court deems just and proper.

4.      True and complete copies of the following documents cited in the Retiree Plan Termination Motion are attached to this declaration:

**Exhibit 1:**      1991 Northern Telecom Inc. Retiree Medical Plan and Retiree Life Insurance and Long-Term Care Plan

**Exhibit 2:**      2004 Nortel Networks Inc. Retiree Medical Plan Summary Plan Description

**Exhibit 3:**      Nortel Retiree Committee Settlement Proposal

*[Remainder of page intentionally left blank.]*

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Retiree Plan Termination Motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true

and correct to the best of my knowledge, information and belief.

Dated:  July 30, 2012
Location:  Chicago, IL

_____
John J. Ray III

**Due to their size, the Exhibits to this declaration are available on request to counsel to the Debtors.**

**Debtors' counsel may be contacted as follows:**

**Robert Ryan, Esq.**
**Cleary Gottlieb Steen & Hamilton LLP**
**One Liberty Plaza**
**New York, New York 10006**
**212-225-2602**

**The Exhibits are also available on the Nortel case docket maintained by Epiq at:**
**http://dm.epiq11.com/nortel**

**EXHIBIT B**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
                        :      Chapter 11

*In re*                      :

                      :      Case No. 09-10138 (KG)

Nortel Networks Inc., *et al.*,[1]  :

                      :      (Jointly Administered)

           Debtors.   :

                      :      **Hearing date:  To be determined**

                      :      **Objections due:  To be determined**

                      :
---------------------------------------------------------X

## NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

        PLEASE TAKE NOTICE that the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases, have today filed the attached **Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long-Term Disability Plans and the Employment of the LTD Employees** (the "Motion").

        PLEASE TAKE FURTHER NOTICE that any party wishing to oppose the entry of an order approving the Motion must file a response or objection ("Objection") if any, to the Motion with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 on or before **A Date To Be Determined** (the "Objection Deadline").

        At the same time, you must serve such Objection on counsel for the Debtors so as to be received by the Objection Deadline.

        PLEASE TAKE FURTHER NOTICE THAT A HEARING ON THE MOTION WILL BE HELD ON **A DATE TO BE DETERMINED** BEFORE THE HONORABLE KEVIN GROSS AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT

---

[1]  In addition to Nortel Networks Inc. ("NNI"), the Debtors in the Chapter 11 cases are:  Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA").   Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

OF DELAWARE, 824 MARKET STREET, 6TH FLOOR, COURTROOM #3, WILMINGTON, DELAWARE 19801.  ONLY PARTIES WHO HAVE FILED A TIMELY OBJECTION WILL BE HEARD AT THE HEARING.

        IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: July 30, 2012
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (*admitted pro hac vice*)
Lisa M. Schweitzer (*admitted pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

       */s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors and Debtors in Possession*

6147023.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------X
                                                         :
*In re*                                                  :     Chapter 11
                                                         :
Nortel Networks Inc., *et al.*,[1]                       :     Case No. 09-10138 (KG)
                                                         :
                             Debtors.                    :     Jointly Administered
                                                         :
                                                         :     **Hearing date: To be determined**
                                                         :     **Objections due: To be determined**
--------------------------------------------------------- X


**DEBTORS' MOTION FOR ENTRY OF AN ORDER
PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE
DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM
DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a),

363(b) and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), (i) authorizing

the Debtors to terminate the LTD Plans (as defined herein) effective as of December 31, 2012 so

as to cease providing employer-paid benefits, including for long-term disability income

continuation benefits, to current and future participants as of that date, (ii) terminating the

employment of the LTD Employees (as defined herein), and (iii) granting them such other and

further relief as the Court deems just and proper.  In support of this Motion, the Debtors rely

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

upon the declaration of John Ray, dated July 30, 2012, attached hereto as <u>Exhibit B</u> (the "<u>Ray</u>

<u>Declaration</u>"), and respectfully represent as follows:

<u>**Preliminary Statement**</u>

1.        Since filing for chapter 11 protection over three and a half years ago, the Debtors

have worked diligently to liquidate their assets, wind down operations and complete the

transition services necessary to support the transfer of their business lines.  Now that the

Debtors' operations have been reduced to only those most basic functions essential to the

completion of the bankruptcy process, the Debtors have determined in an abundance of caution

to move for relief under sections 105(a), 363(b) and 1108 of the Bankruptcy Code to terminate

the employment of the LTD Employees and the LTD Plans before the end of the plan year on

December 31, 2012.  Recognizing the importance of the benefits provided to their LTD

Employees under the LTD Plans (as defined below), the Debtors have worked tirelessly since the

appointment of the LTD Committee almost one year ago to reach a consensual agreement

regarding the plan termination process.  To that end, the Debtors have provided significant

information to the advisors to the LTD Committee, have exchanged multiple proposals and, in

coordination with the Bondholder Group and UCC (each, defined below), have negotiated with

the LTD Committee in good faith.  When it became clear those negotiations were not

progressing, the Debtors sought the appointment of a neutral third-party Mediator (as defined

below) by this Court in April.  Since that time, with the mediator's assistance, the Debtors have

continued to engage in negotiations with the LTD Committee in an effort to push toward a

mutually agreeable solution.  Indeed, despite the filing of this Motion, the Debtors remain open

to reaching a settlement with the LTD Committee on reasonable terms.  However, at this

advanced stage in their restructuring process, where the Debtors have been unable to reach

agreement with the LTD Committee after a year and the end of a plan year is quickly

2

approaching, the Debtors simply cannot allow time to continue to slip by hoping for a settlement, all the while continuing to expend substantial amounts of money providing Benefits (as defined below) to the LTD Employees (as defined below).

2.      The Debtors therefore bring this Motion in an abundance of caution seeking Court approval to terminate the LTD Plans and the employment of the LTD Employees.  The Debtors have the clear right to terminate the Benefits under both the law and the terms of the LTD Plan documents themselves.  In addition, the LTD Employees are "at will" employees of the Debtors and may generally be terminated at any time without cause.  Accordingly, the Debtors submit this Motion for authorization to terminate the LTD Plans and the employment of the LTD Employees effective as of December 31, 2012.

## Jurisdiction

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 363(b) and 1108 of the Bankruptcy Code.

## Background

5.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

3

6.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "UCC") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

7.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

8.     Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

9.     By this Motion, the Debtors seek an order, pursuant to sections 105(a), 363(b) and 1108 of the Bankruptcy Code, (i) authorizing the Debtors to terminate the LTD Plans effective as of December 31, 2012 so as to cease providing employer-paid benefits, including for long-term disability income continuation benefits, for current and future participants as of that date, (ii) terminating the employment of the LTD Employees, and (iii) granting them such other and further relief as the Court deems just and proper.  Although the terms of the LTD Plans authorize the Debtors to take such actions, the Debtors seek relief from this Court in an abundance of caution.

**Facts Relevant to this Motion**

A.     **THE LTD PLANS**

10.     The Debtors historically have provided a number of benefits to their long-term disabled employees (the "LTD Employees") through benefit plans and other programs, including (as amended or modified from time to time) the Nortel Networks Inc. Long-Term Disability Plan, the Nortel Networks Inc. Medical Plan, the Nortel Networks Inc. Dental, Vision, and Hearing Care Plan, the Nortel Networks Inc. Life Insurance Plan, the Nortel Networks Inc. AD&D Insurance Plan, the Nortel Networks Inc. Health Care Reimbursement Account Plan, the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan, the Nortel Networks Inc. Long-Term Investment Plan,[5] predecessor plans and other formal or informal benefit plans,

---

[5]     The Nortel Networks Inc. Long-Term Investment Plan was terminated effective as of June 30, 2012, for all of the Debtors' employees.  The Nortel Networks Inc. Health Care Reimbursement Account Plan and the Nortel

5

agreements, arrangements or programs (including plans, agreements, arrangements or programs

that are funded through the purchase of insurance) or arrangements for disabled employees, their

surviving spouses and eligible dependents, including for medical, surgical, or hospital care

benefits, income continuation benefits or any other benefits in the event of sickness, accident,

disability, or death (collectively, and in each case as such plans have been amended or modified

from time to time, the "LTD Plans").[6]  These plans are offered to current employees of the

Debtors, and the LTD Employees are treated as current employees as a condition to their

continued eligibility to receive benefits under the LTD Plans.  During the course of these chapter

11 cases, the Debtors have continued to provide certain benefits under the LTD Plans (the

"Benefits"), including as authorized by this Court's January 15, 2009 *Order Authorizing, But Not*

*Directing, Debtors to Pay Certain Prepetition (I) Wages, Salaries and Other Compensation,*

*(II) Reimbursable Expenses, and (III) Medical, Retirement and Similar Benefits* [D.I. 59].  While

the Debtors rely on third party vendors to administer the LTD Plans, the plans are generally self-

funded by the Debtors, such that the Debtors bear the economic risk of claims filed by the LTD

Employees.

    11.    There are currently 215 LTD Employees receiving Benefits under the LTD Plans.

As an administrative matter, and consistent with the terms of the LTD Plans, the Debtors list

employees on long-term disability under the LTD Plan as "current" employees even though the

---

Networks Inc. Dependent Day Care Reimbursement Account Plan were previously terminated for all of the Debtors' employees, effective as of December 31, 2010.

[6]    For  retired employees of the Debtors (the "Retirees"), the Debtors maintain various benefit plans and other programs including (as amended or modified from time to time) the Nortel Networks Inc. Retiree Medical Plan, the Nortel Networks Inc. Retiree Life Insurance and Long-Term Care Plan, predecessor plans and other formal or informal benefit plans, agreements, arrangements or programs (including plans, agreements, arrangements or programs that are funded through the purchase of insurance) or arrangements for current or future retired employees, their surviving spouses and eligible dependents, including plans, arrangements, agreements or programs for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death (collectively and in each case as amended or modified from time to time, the "Retiree Welfare Plans").

employees are not presently actively working full-time or part-time at the Debtors.  Although

there are currently 142 LTD Employees who are eligible to elect to retire and thus receive

benefits under the Retiree Plans, those employees have not yet made such an election, which

would entitle them to benefits under the Retiree Welfare Plans but cause them to lose their

Benefits.

12.    The Benefits currently enjoyed by the LTD Employees, such as income

continuation, as well as the specific medical benefits provided under the LTD Plans, are not

available to Retirees.  In order for an individual to have been eligible to receive short-term and

long-term disability benefits (and thus be eligible to receive Benefits under the LTD Plans), he or

she would have to have been a "regular Employee working 20 or more hours per week" at the

time of the disability.  See, e.g., 2006 Nortel Networks Inc. Short-Term Disability and Long-

Term Disability Plan Summary Plan Description, at 8, attached to the Ray Declaration as Exhibit

1.  The LTD Plans further provide that the Benefits end when a person's employment is

terminated or the part of the plan providing the coverage ends.  See, e.g., 2010 Nortel Networks

Inc. Long-Term Disability Plan Summary Plan Description, at 12, attached to the Ray

Declaration as Exhibit 2.  Therefore, given the LTD Employees' status generally as "at will"

employees, the Debtors could terminate the employment of the LTD Employees at any time and

such termination would result in the termination of the LTD Employees' Benefits provided under

the LTD Plans.  However, upon termination of such employment, those LTD Employees eligible

to receive Retiree benefits could elect to become "Retirees" for purposes of the Retiree Welfare

Plans, to the extent those Retiree Welfare Plans have not been previously terminated.[7]

---

[7]    Contemporaneous with the filing of this Motion the Debtors have filed the *Debtors' Motion for Entry of an Order Terminating Retiree Benefits and Approving a Settlement Proposal Pursuant to 11 U.S.C.§ 1114*, to approve a settlement proposal (the "Proposal") with the Retirees and to seek the termination of the Retiree Welfare Plans. Under the terms of the Proposal the Debtors propose, among other things, to give LTD Employees who are eligible

Case 09-10138-MFW   Doc 8124   Filed 08/08/12   Page 62 of 108

13.     The Debtors previously sought to terminate the Retiree Welfare Plans and LTD

Plans by a motion filed in June 2010 (the "Plan Termination Motion").[8]  In connection with that

proposed termination of the Retiree Welfare Plans and the LTD Plans, the Debtors had

negotiated with a health insurance provider to provide the Retirees and LTD Employees with

replacement medical coverage options not readily available on the open market.  Shortly

thereafter, the Nortel US Retirement Protection Committee, an ad hoc steering committee of

retired executives of the Debtors (the "Ad Hoc Retiree Committee"), filed a motion seeking

authorization to form a voluntary employee benefit association as an alternative option for

providing health insurance (the "VEBA Motion").[9]  Based on discussions with counsel to the Ad

Hoc Retiree Committee, their rejection of the alternative insurance and the Third Circuit's ruling

in IUE-CWA  v. Visteon Corp. (In re Visteon Corp.), 612 F.3d 210 (3d. Cir. 2010), the Debtors

ultimately withdrew the Plan Termination Motion without prejudice in July 2010 [D.I. 3651].

Thereafter, in October 2010, the Nortel US Retirement Protection Committee withdrew the

VEBA Motion without prejudice [D.I. 4104].

14.     While the Debtors historically have provided various welfare benefits to their

LTD Employees, they have not committed themselves under the LTD Plans to provide such

benefits indefinitely.  On the contrary, the governing LTD Plans specifically reserve the Debtors'

right to amend or terminate the LTD Plans, including in circumstances such as the Debtors now

face.  For example, the 1989 Nortel Networks Inc. Group Benefits Plan provides:

---

to receive Retiree benefits the opportunity to make an election to participate in the Retiree Welfare Plans for which
they are eligible, and thus the Proposal, within thirty (30) days after the date on which an order approving the
Proposal becomes final and non-appealable (the "Effective Date").  Any such election made from the Effective Date
through December 31, 2012, shall be effective as of December 31, 2012.

[8]      See Debtors' Motion for Entry of an Order Authorizing Debtors to Terminate Certain Retiree and Long-
Term Disability Plans, dated June 21, 2010 [D.I. 3204].

[9]      See Motion for an Order Authorizing Formation of a Voluntary Employee Benefit Association to Provide
Tax Credit-Eligible Retiree Benefits, dated July 16, 2010 [D.I. 3671].

8

> While the employer intends to maintain this group benefits plan indefinitely, the employer has no obligation whatsoever to maintain the plan or to provide any benefits pursuant to the plan (including, but not limited to, medical expense benefits for retired employees) for any given length of time, and ***reserves the right to amend the plan at any time or from time to time or to terminate the plan***.  1989 Nortel Networks Inc. Group Benefits Plan at 67 (emphasis added), attached to the Ray Declaration as <u>Exhibit 3</u>.

By further example, the 2004 Nortel Networks Inc. Medical Plan provides:

> Although the benefits currently available (in the 2004 Plan Year) are described in this summary for the Company's Medical Plan, ***the Company reserves the right to change or end the plan described in this summary at any time***. Any plan changes will result from actions taken and approved by the Company. **The Company may adopt such changes or terminate the plan at any time and for any reason**.  The Company's practices, policies, and benefits are outlined here for your information as required by law. However, this does not constitute an implied or expressed contract or guarantee of employment.  2004 Nortel Networks Inc. Medical Plan Summary Plan Description at 92 (emphasis added), attached to the Ray Declaration as <u>Exhibit 4</u>.

While the precise language contained in the LTD Plan documents varies slightly across the years, the right to amend or terminate always existed.

## B.    <u>THE WIND DOWN OF THE DEBTORS' ESTATES</u>

15.    In the several months following the Debtors' decision to postpone seeking termination of their LTD Plans, the Debtors worked diligently to wind down their remaining operations, including completion of the transition services provided to the buyers of the various businesses.  The Debtors also undertook the sale of their patent portfolio which closed in July 2011, and have sought to advance the resolution of the other remaining material claims in their cases through the filing of various motions.  During this time, the Debtors also sought to identify other possible alternative insurance arrangements for the LTD Employees.

16.    The Debtors currently employ only eighteen active employees, other than the LTD Employees, and that number is expected to drop to approximately five employees by year-

end.  As a result of the divestitures and wind down, it has become increasingly difficult to

maintain and administer the LTD Plans and, once the Debtors dissolve as corporations, there will

be no company even in name to continue the Benefits.  Moreover, while the LTD Plans are

administered by third-party vendors, the Debtors maintain the plans as self-insured plans and, as

such, the Debtors bear the economic risk of the plans and the claims filed thereunder.

17.      Over the last two years since July 2010, when the prior Plan Termination Motion

was withdrawn, the Debtors have continued to provide benefits under the LTD Plans, at an

approximate cost of $21.1 million to their estates.  The current cost to the Debtors of providing

the Benefits under the LTD Plans is approximately $800,000 to $1,000,000 per month, although

the costs could go up as the current population ages, if premiums were increased, if health care

costs rise and/or if a greater number of claims were filed.

18.      The Debtors also seek to terminate their LTD Plans at this time in order to be able

to plan for the administrative process involved in winding down the LTD Plans.  The Debtors

will need to allow for time to notify the LTD Employees of the discontinuation of the LTD

Plans, to work with the various vendors to terminate the LTD Plans and resolve any remaining

liabilities thereunder, and to process and pay for the remaining claims submitted under the LTD

Plans that were incurred but not reported prior to the termination of the LTD Plans.  Moreover, it

is important to the Debtors to be able to terminate the LTD Plans by year end to avoid the

additional costs and risks associated with renewal of the LTD Plans for an additional year.

## C.      NEGOTIATIONS WITH THE LTD COMMITTEE

19.      On June 3, 2011, several LTD Employees filed the *Motion for Entry of an Order*

*Pursuant to Section 1102(a)(2) of the Bankruptcy Code Appointing an Official Committee of*

*Long-Term Disability Plan Participants* [D.I. 5595] (the "LTD Committee Motion").  Although

the Debtors believed then, as they do now, that the LTD Plans were terminable at will and that,

10

as current employees, the LTD Employees are not conferred with the protections afforded to

retired employees under Bankruptcy Code section 1114, the Debtors did not oppose the LTD

Committee Motion other than to seek to clarify the scope of the LTD Committee's appointment

so that the Debtors could engage in discussions with the LTD Employees in the hope of reaching

a consensual agreement regarding the modification or termination of their Benefits.

20.    Thereafter, the Court issued an order directing the U.S. Trustee to appoint a

committee of long-term disability participants for the sole purpose of serving as the authorized

representative of the LTD Employees in connection with negotiations regarding the modification

or termination of the LTD Plans, and for no other purpose (the "LTD Committee") [D.I. 5790].

On August 2, 2011, the U.S. Trustee appointed the members of the LTD Committee [D.I. 6073],

as amended on August 4, 2011 [D.I. 6080].

21.    Since the appointment of the LTD Committee last year, the Debtors have devoted

significant resources and attention to negotiating in good faith with the LTD Committee to seek

the termination of the LTD Plans and a settlement that would provide a fair and equitable

resolution of any potential claims or rights held by the LTD Employees.

22.    The Debtors also have acted diligently to provide the LTD Committee with all of

the information necessary to evaluate the Debtors' settlement proposals.  On September 12,

2011, the LTD Committee sent the Debtors initial broad requests for documents and information

(the "Requests").[10]  The Debtors began providing the requested documents and information to

the LTD Committee on September 16, 2011.  The Debtors regularly have sent additional

documents and information to the LTD Committee over the last year.  To date, the Debtors have

provided the LTD Committee with various LTD Plan documents and other information regarding

---

[10]    Since receiving the Requests, the Debtors have received numerous additional requests from the LTD
Committee, including requests received on November 9, 2011 and December 7, 2011.

the Debtors' employees and their estates, assets and claims, including by compiling various

benefit-related information in response to the Requests.  In addition, the Debtors' professionals

and the LTD Committees' advisors have spent numerous hours on conference calls since the

appointment of the LTD Committee discussing and clarifying the data that the Debtors have

produced to the LTD Committee.[11]

23.     Although the purpose for the formation of the LTD Committee was to facilitate

the negotiation of settlements with the Debtors regarding the modification or termination of the

LTD Plans, for the first six months after the appointment of the LTD Committee, only two

substantive meetings took place between the Debtors and the LTD Committee, on October 6,

2011 and February 27, 2012.  Both meetings were at the request and insistence of the Debtors.

24.     At the October 6, 2011 meeting, the Debtors provided the LTD Committee with

substantial financial information regarding the LTD Plans.  Representatives of a potential

alternative insurer also attended the meeting and were prepared to make a presentation on the

insurance program they could offer, but the LTD Committee declined to meet with the insurer

despite being informed that further delays would increase the cost of the replacement insurance

because the insurance company would be unable to honor rates indefinitely.

25.     On January 19, 2012, the Debtors provided a term sheet containing a settlement

proposal to the LTD Committee and shortly thereafter sought to meet with the LTD Committee

on January 31, 2012 regarding the Debtors' proposal.  The meeting with the LTD Committee,

attended by members of the LTD Committee and the Retiree Committee, their legal and financial

advisors, the Debtors' professionals and advisors of the UCC and Bondholder Group, ultimately

occurred on February 27, 2012.  At the February 27, 2012 meeting, counsel to the LTD

---

[11]     Calls between the Debtors' professionals and the LTD Committee's professionals occurred on November 15, 2011, December 12, 2011, January 19, 2012, and March 12, 2012.

Committee stated that they were still unprepared to engage in substantive negotiations regarding the Debtors' proposals.

26.     Frustrated by the slow progress of the negotiations and concerned that alternative benefit options could become more costly or unavailable over time, on March 28, 2012, the Debtors filed a motion (the "Mediation Motion"), seeking to have a mediator appointed to facilitate settlement discussions between the Debtors and the LTD Committee.[12]  On April 18, 2012, the Court entered an order granting the Mediation Motion and appointed Richard Levin, Esq., of Cravath, Swaine & Moore LLP, as mediator (the "Mediator").[13]  In connection with the appointment of the Mediator, the Debtors agreed to a further 60-day standstill during which they would not take any action to modify or terminate the Retiree Welfare Plans.  That standstill expired on June 18, 2012.

27.     Despite the best efforts of the Mediator, the Debtors and the LTD Committee still have been unable to reach an agreement on a consensual termination of the LTD Plans.  The Debtors received the first written response to the Debtors' January 19, 2012 settlement proposal on May 9, 2012.  Later, on June 4, 2012, the Debtors made a further settlement proposal in an attempt to continue to move the negotiations forward.  The LTD Committee did not attend a mediation session scheduled for June 14, 2012 that went forward with the Retiree Committee, but the Debtors ultimately met with the LTD Committee on June 27, 2012 regarding the Debtors' June 4th proposal.  Despite engaging in rigorous discussions with the Mediator and the LTD Committee at that meeting, the parties still were unable to reach a consensus.  A further

---

[12]     See *Motion for Entry of an Order (I) Appointing a Neutral Mediator Concerning the Modification or Termination of the Nortel Retiree Welfare Plans and the Nortel Long-Term Disability Plans; (II) Authorizing the Debtors to Pay the Costs of Engagement; and (III) Granting Related Relief* [D.I. 7463].

[13]     See *Order (I) Appointing a Neutral Mediator Concerning the Modification or Termination of the Nortel Retiree Welfare Plans and the Nortel Long-Term Disability Plans; (II) Authorizing the Debtors to Pay the Costs of Engagement; and (III) Granting Related Relief* [D.I. 7560].

negotiation was scheduled for July 19, 2012, as a final effort to reach settlement and with the intention that the parties actively engage in discussions before that date.  Again, no agreement could be reached at that meeting.

28.     At this time, almost a year to the day from the formation of the LTD Committee, over 100 days after the appointment of the Mediator and after several attempts, in conjunction with the Bondholder Group and the UCC, to negotiate a consensual settlement with the LTD Committee, the Debtors have concluded that it is necessary to seek formal termination of the LTD Plans, in order to ensure the plans will be terminated by December 31, 2012.  While the Debtors would remain open to a settlement on reasonable terms, the Debtors have been unable to reach such an agreement despite devoting substantial time and resources in an effort to do so, and the Debtors now need certainty as to the future of the LTD Plans.

### Basis for Relief

29.     While the Debtors recognize the importance of the Benefits provided under the LTD Plans to their LTD Employees, the Debtors have determined that it is necessary to terminate the LTD Plans at this stage in the restructuring.  Given that the LTD Employees are current employees of the Debtors, the Debtors also seek to terminate their employment in connection with the termination of the LTD Plans as of December 31, 2012.

### A.     THE LTD PLANS ARE TERMINABLE AT WILL

30.     The LTD Plans are terminable at will by the Debtors because the Benefits are not vested benefits.  The law is clear that benefits provided under welfare benefit plans (including all the Benefits at issue) do not vest pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"), except as expressly provided under the terms of the LTD Plans.  Here, the Debtors have provided the Benefits to the LTD Employees subject to the Debtors' ***express right to unilaterally amend or terminate*** the various LTD Plans.  As described

14

above, the Debtors specifically reserve in the various LTD Plan Documents the Debtors'

unilateral right to amend or terminate the various LTD Plans at any time and for any reason.

Because the Benefits have not vested pursuant to ERISA, the LTD Committee has the burden of

proving by a preponderance of the evidence that the terms of the LTD Plans provide the

Beneficiaries with vested benefits.  They cannot do so.

       (i)     *WELFARE BENEFITS DO NOT VEST AS A MATTER OF LAW UNDER ERISA*

      31.     The Benefits have not vested pursuant to ERISA because the LTD Plans are

"welfare benefit plans," and such plans, unlike pension plans, are not subject to the vesting

provisions of ERISA.

      32.     The Supreme Court has made clear that an employer is not required under ERISA

to provide employee welfare benefits at all.  See, e.g., Curtiss-Wright Corp. v. Schoonejongen,

514 U.S. 73, 78 (1995) ("[W]e are mindful that ERISA does not create any substantive

entitlement to employer-provided health benefits or any other kind of welfare benefits.").

Accordingly, when a company does choose to provide welfare benefits to its employees, the law

does not create a vested entitlement to the continuation of such benefits.  The Third Circuit has

specifically addressed this issue and is clear on this point.  For example, in In re Lucent Death

Benefits ERISA Litig., 541 F.3d 250, 253 (3d Cir. 2008), plaintiffs, who were former employees

of the defendants, argued that the defendants could not terminate a pensioner death benefit that

had been provided to the plaintiffs.  The Third Circuit held that because the death benefit was a

welfare benefit and not a pension benefit, the benefit had not vested pursuant to ERISA,

explaining that:

> ERISA provides elaborate requirements for the vesting of pension
> benefits, but it does not provide automatic vesting of welfare
> benefits.  An accrued pension benefit is protected by ERISA's anti-
> cutback provision without any showing that it has vested.  In
> contrast, a welfare benefit is protected from elimination only if the

15

plaintiff proves by a ***preponderance of the evidence*** that the plan provider had intended the welfare benefit to have vested (despite not being obligated to do so by ERISA).   *Id*. at 253-54 (emphasis added) (citations omitted).

33.     Because benefits provided under welfare benefit plans do not vest under ERISA, they are terminable at will unless the plans specifically provide otherwise.  As the Third Circuit explained, "an employer's commitment to vest such benefits is not to be inferred lightly and must be stated in clear and express language. . . [in the documents that provide] the employee welfare benefits."  Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Skinner Engine Co., 188 F.3d 130, 139 (3d Cir. 1999)(internal citations omitted).  See also, DiFelice v. Aetna U.S. Healthcare, 346 F.3d 422, 455 (3d Cir. 2003) (Becker, A., concurring) (noting that welfare benefit plans are "exempt from the substantive vesting and funding requirements" of ERISA and that "[i]ndeed, courts have held that the absence of a vesting provision allows employers to amend their plans virtually at will, even in discriminatory fashion"); Skinner, 188 F.3d at 138 (employers are "'generally free . . . for any reason at any time, to adopt, modify or terminate welfare plans' . . . [unless they agree] to relinquish their right to unilaterally terminate those benefits and provide for lifetime vesting'" (quoting Curtiss-Wright, 514 U.S. at 78); In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 58 F.3d 896, 901 (3d Cir. 1995) ("In rejecting the automatic vesting of welfare plans, Congress evidenced its recognition of  the need for flexibility with regard to an employer's right to change medical plans").

34.     It is uncontroverted that the LTD Plans are welfare benefit plans and not pension plans, and therefore, the Benefits did not vest as a matter of law.  Thus, in order for the LTD Committee to prevail on their argument that the Benefits have vested, the LTD Committee must

16

meet their burden of proving by a preponderance of the evidence that the Debtors intended the

Benefits to have vested.  As explained below, the LTD Committee cannot meet this burden.

(ii)     *THE LTD PLANS PERMIT THE LTD PLANS TO BE TERMINATED*

35.     The Benefits have not vested pursuant to the terms of the LTD Plans because the

LTD Plan documents do not contain any provisions stating, or even suggesting, that any Benefits

provided to the LTD Employees are vested or were intended to vest.  Instead, each LTD Plan

document expressly provides that the Debtors have the unilateral right to modify or terminate the

LTD Plans at any time in the Debtors' sole discretion, using language similar to the below:

> Although the benefits currently available (in the 2004 Plan Year)
> are described in this summary for the Company's Medical Plan,
> ***the Company reserves the right to change or end the plan
> described in this summary at any time***. Any plan changes will
> result from actions taken and approved by the Company. ***The
> Company may adopt such changes or terminate the plan at any
> time and for any reason***.  The Company's practices, policies, and
> benefits are outlined here for your information as required by law.
> However, this does not constitute an implied or expressed contract
> or guarantee of employment.  2004 Nortel Networks Inc. Medical
> Plan Summary Plan Description at 92 (emphasis added).

36.     Because a company's intent to provide vested benefits must be express, it is not

enough to show that a company historically provided such benefits, or that it hoped to continue

to do so in the future.  Indeed, courts have specifically held that when a company reserves the

right to change or terminate benefits, even those benefits promised for "life" are not vested.

Unisys, 58 F.3d at 904 (explaining that a plan containing language both describing welfare

benefits as being provided for "life" and a reservation of rights is not ambiguous or inconsistent

because, "[a]n employer who promises lifetime medical benefits, while at the same time

reserving the right to amend the plan under which those benefits were provided, has informed

plan participants of the time period during which they will be eligible to receive benefits

*provided* the plan continues to exist."); Vallone v. CNA Fin. Corp., 375 F.3d 623, 634 (7th Cir.

17

2004) (holding that a health care allowance benefit provided to encourage early retirement and described as a "lifetime" benefit was not vested because a reservation of rights clause in the plan documents allowed amendment or modification even after retirement).  The court notes that, "[t]he language at issue here prevented CNA from amending its retirement plan to require retirees to pay back HCA allowances already paid out, or retroactively terminating coverage for a claim to medical benefits to avoid paying such a claim.  The reservation of rights clauses, on the other hand, allow CNA to *prospectively* alter or amend its welfare benefits offered to retirees, even after retirement, and that is what it did."  Id. at 638.

37.     Additionally, the LTD Committee has suggested that the Benefits may have vested because documents were provided to certain LTD Employees that were not clearly limited by an explicit right to modify or terminate.  Whether or not such documents exist is of no significance because such documents cannot modify the LTD Plans.  The Third Circuit has repeatedly held that ERISA precludes an employer from making "oral or informal amendments" to employee benefits plans and that the only way to effect a modification of such a plan is through a valid amendment executed "according to formal procedures."  See Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1163 (3d Cir. 1990); Confer v. Custom Eng'g Co., 952 F.2d  41, 43 (3d Cir. 1991); Depenbrock v. CIGNA Corp., 389 F.3d at 78, 81 (3d Cir. 2004).  Therefore, regardless of whether any such documents exist, they would not modify the express terms of the LTD Plan documents in which the Debtors clearly reserved their right to modify or terminate the LTD Plans.

38.     Therefore, since the LTD Plans do not provide that the Benefits are vested, and the LTD Committee has failed to produce ***any*** evidence, much less a preponderance of evidence, that the Benefits have vested, the Benefits are not vested and thus they are terminable at will.

18

**B.** **SECTION 1114 OF THE BANKRUPTCY CODE IS INAPPLICABLE TO THE LTD PLANS BECAUSE THE LTD EMPLOYEES ARE NOT RETIREES**

39.     Over the last year, the Debtors have exchanged information and engaged in settlement discussions with the LTD Committee in parallel to their negotiations with the Retire Committee appointed under section 1114 of the Bankruptcy Code to represent the interests of the Retirees.  Those discussions have not resulted in an agreement, and the Debtors now seek Court authorization for the termination of the LTD Plans.  While the Debtors seek this relief in an abundance of caution, the Debtors are not required to prove compliance with the separate and additional requirements imposed by section 1114 because, simply put, the LTD Employees are current employees of the Debtors, not Retirees.  Section 1114 by its terms only applies to "retiree benefits," which is defined to mean "payments to any entity or person for the purpose of providing or reimbursement payments **for retired employees and their spouses and dependents**. . ."  11 U.S.C. § 1114(a) (emphasis added).

40.     The Debtors maintain employees on long-term disability under the LTD Plans as "current" employees under the terms of the relevant plans, including for the purpose of eligibility of employee benefits.  The Benefits currently enjoyed by the LTD Employees, such as income continuation, as well as the specific medical benefits provided under the LTD Plans, are not available to the Debtors' Retirees.  Indeed, the Retiree Welfare Plans are entirely separate and distinguishable from the LTD Plans in their terms and administration.  In fact, numerous LTD Employees who are retirement-eligible have opted to not retire and receive benefits under the Retiree Welfare Plans, but instead to remain current employees of the Debtors in order to receive the additional benefits, such as income continuation payments, available only to LTD Employees.

19

41.     In order for an individual to have been eligible to receive short-term and long-term disability benefits (and thus be eligible to receive Benefits under the LTD Plans), he or she would have to have been a "regular Employee working 20 or more hours per week" at the time of the disability.  See 2006 Nortel Networks Inc. Short-Term Disability and Long-Term Disability Plan Summary Plan Description, at 8.  Many of the LTD Plans further provide that the income continuation benefits end when a person's employment is terminated or the part of the plan providing the coverage ends.  See, e.g., 2010 Nortel Networks Inc. Long-Term Disability Plan Summary Plan Description at 12.  Therefore, the provision of Benefits under the LTD Plans is directly tied to continued status as a "current" employee of the Debtors.  Moreover, consistent with their classification as current employees, employees receiving disability benefits may actively return to work if their conditions improve and positions remain open.  LTD Employees also are asked to provide information supporting their disabled status on an ongoing basis to continue receiving income continuation benefits, as in some cases an individual's eligibility for LTD Benefits changes over time.  See, e.g., 2004 Nortel Networks Inc. Short-Term Disability and Long-Term Disability Plan Summary Plan Description at 21, attached to Ray Declaration as Exhibit 5.

42.     Accordingly, section 1114 is not applicable to the termination of the LTD Plans, because the LTD Employees are not "retired employees."[14]

---

[14]     Although the Debtors were not required to comply with section 1114, the Debtors have negotiated with and provided information to the LTD Committee to the same extent that the Debtors have done so with the Retiree Committee.  Therefore, the Debtors believe that they have met all requirements to modify the LTD Plans under section 1114 even if it were applicable, but it is not, and the Debtors expressly reserve all rights to submit supplemental evidence as to this matter.

C.    **AS AT WILL EMPLOYEES OF THE DEBTORS, THE LTD EMPLOYEES MAY BE TERMINATED.**

43.    The LTD Employees are "at will" employees of the Debtors and thus their employment may be terminated at any time and for any reason without incurring liability to the Debtors.  Indeed, to the best of the Debtors' information and belief, upon commencing employment with the Debtors, each LTD Employee signed an agreement substantially similar to those attached as Exhibits 6, 7 and 8 to the Ray Declaration, specifically acknowledging his or her status as an "at will" employee.  For example, the 2008 Nortel Employment Agreement signed by new employees required that each employee certify that: "[m]y employment with the Employer is one of employment at will and my continued employment is not for a definite period of time but instead may be terminated at any time and for any reason by the Employer or me."  See 2008 Nortel Employment Agreement ¶ 9.  To the best of their knowledge, the Debtors are unaware of any employment agreements between the Debtors and an LTD Employee defining the terms of his or her employment as anything other than an at will arrangement.

44.    It is a matter of well-established law that "at will" employment may be generally terminated at any time by either the employer or the employee for either cause or no cause at all.  An individual's employment is generally governed by the state law of the state in which the employee provides services.  Restatement (Second) of Conflict of Laws § 196 (2012).  All of the states in which the Debtors maintained their primary operations have adopted the doctrine of at-will employment.  See, e.g., Cal. Lab. Code § 2922 (West 2011) ("An employment, having no specified term, may be terminated at the will of either party on notice to the other."); Wal-Mart Stores, Inc. v. Canchola, 121S.W.3d 735, 740 (Tex. 2003) (holding that employer could terminate disabled employee who was also an "at will" employee stating "[a]s long as its reason for terminating [employee] was not illegal, Wal-Mart could have fired [employee] . . . for no

21

reason at all"); <u>Linafelt v. Bev, Inc.</u>, 662 So. 2d 986, 989 (Fla. Dist. Ct. App 1995) ("An employee may be terminated at will, without a showing of cause, where the employment contract between the parties is indefinite as to the period of employment"); <u>Folmsbee v. Tech Tool Grinding & Supply, Inc.</u>, 630 N.E.2d 586, 590 (Mass. 1994) ("The general rule is that an employment-at-will contract can be terminated at any time for any reason or for no reason at all."); <u>Roberts v. Wake Forest Univ.</u>, 286 S.E.2d 120, 123 (N.C. Ct. App. 1982) ("It is a settled rule of law in North Carolina and other jurisdictions that employment for an indefinite term is regarded as an employment at will which may be terminated at any time by either party.").  An at will employee may be terminated without liability to his or her employer for such termination. <u>See</u>, <u>e.g.</u>, <u>Folmsbee</u>, 630 N.E.2d at 590-91 (holding employer was not liable for terminating employment of "at will" employee).

45.     The Debtors are permitted by applicable law to terminate the employment of the LTD Employees at any time and the Debtors must do so at this time.  As this Court is well aware, at this stage in their restructuring, the Debtors have liquidated their operations and have already terminated virtually all of their non-LTD active employees.  As the below chart indicates, the number of non-LTD active employees of the Debtors has sharply declined, while the number of LTD Employees has remained substantially the same.

*[Remainder of the page left intentionally blank.]*



The few remaining active employees are essential to completing the remainder of the Debtors' wind down operations, including liquidation of remaining claims and completion of the Debtors' bankruptcy cases.  With all of the Debtors' businesses divested, their other employees laid off and the Debtors' relationships with their suppliers and customers long ago terminated, the Debtors can no longer justify continuing their operations solely to employ and provide Benefits to the LTD Employees.  Therefore, the Debtors should be permitted to terminate the LTD Employees not only because the LTD Employees are at will employees, but also because such terminations are necessary.

D.    **TERMINATING THE LTD PLANS AND THE LTD EMPLOYEES'
EMPLOYMENT SATISFIES THE BUSINESS JUDGMENT TEST**

46.    Section 1108 of the Bankruptcy Code authorizes the Debtors to operate their businesses.  11 U.S.C. § 1108.  Section 363(b)(1) of the Bankruptcy Code further permits a

23

debtor-in-possession to use property of the estate "other than in the ordinary course of business"

after notice and a hearing.  11 U.S.C. § 363(b)(1).  Although the Debtors believe that the exercise

of their right to terminate the LTD Plans and the employment of the LTD Employees is in the

ordinary course of their business, to the extent that such terminations are determined to be

outside the ordinary course of business such that Court approval is required, then the Court

should grant the requested relief under Section 363 of the Bankruptcy Code because the Debtors

have demonstrated a sound business justification for the proposed transaction.  See Dai-Ichi

Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward), 242 B.R.

147, 155 (D. Del. 1999).

47.     Relief is proper under section 363(b)(1) where the Debtors show a legitimate

business justification for the proposed action.  See Comm. of Equity Sec. Holders v. Lionel

Corp. (In re Lionel Corp.), 722 F.2d 1063 (2d Cir. 1983); In re Del. & Hudson Ry. Co., 124 B.R.

169, 175-76 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business

purpose" test for section 363(b)(1)).  If a valid business justification exists, the law vests a

debtor's decision to use property out of the ordinary course of business with a strong

presumption "that in making a business decision the directors of a corporation acted on an

informed basis, in good faith and in the honest belief that the action taken was in the best

interests of the company."  Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.

(In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom,

488 A.2d 858, 872 (Del. 1985)).

48.     After careful deliberation, the Debtors have determined, in the exercise of their

reasonable business judgment, that at this time they must eliminate their current and future costs

associated with non-essential wind-down personnel, including providing Benefits under the LTD

Plans in order to preserve and maximize the value of the Debtors' estates. Absent termination of the LTD Plans, the Debtors project they would spend approximately $800,000 to $1,000,000 per month providing Benefits under the LTD Plans, not including the additional costs of maintaining employees and data systems necessary to continue the administration of the LTD Plans. As discussed above, it is not at all certain that the Debtors will be able to find third-parties willing to administer the LTD Plans and, even if the Debtors could find such providers, the Debtors would face the risk of substantially increased premiums and other costs. The Debtors also would bear the economic risk of increased claims being filed in future periods, which risk becomes disproportionate when the LTD Employees predominate the Debtors' remaining workforce. Providing these benefits is a significant financial burden that does not provide any concomitant benefit to the Debtors' estates because the individuals currently receiving the benefits of such expenditures are not providing services to the Debtors. Furthermore, terminating the LTD Plans and the LTD Employees is also an important step forward in the Debtors' efforts to complete their bankruptcy cases and move closer to confirming a plan of reorganization. Given the lengthy process required to wind down the LTD Plans, as well as the uncertainty regarding the Debtors' ability to continue to provide Benefits into 2013 and beyond, the Debtors must end the LTD Plans now.

49.     In order to advance the resolution of claims submitted under the LTD Plans, the Debtors further request the time period for making a claim for reimbursement for benefits covered by and approved pursuant to the relevant LTD Plans for claims incurred prior to December 31, 2012 be reduced to six months, commencing on December 31, 2012.

50.     Thus, terminating the LTD Plans and the employment of the LTD Employees will generate significant cost savings for the Debtors. For the foregoing reasons, the Debtors submit

that the termination of the LTD Plans and the employment of the LTD Employees is appropriate and in the best interests of the Debtors, their bankruptcy estates and their creditors.

51.     Notice of the Motion has been given via overnight mail to (i) the U.S. Trustee; (ii) counsel to the LTD Committee; (iii) the LTD Employees; (iv) counsel to the Bondholder Group; (v) counsel to the UCC; and (vi) the general service list established in these chapter 11 cases.

## No Prior Request

52.     Except as described therein, no prior request for the relief sought herein has been made to this or any other court.

[*Remainder of the page left intentionally blank*.]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as <u>Exhibit A</u> hereto; (iii) authorize the Debtors to terminate the LTD Plans and the employment of the LTD Employees effective as of December 31, 2012 so as to cease providing employer-paid benefits, including for long-term disability income continuation benefits, for current and future participants as of that date; and (iv) grant such other and further relief as it deems just and proper.

Dated:  July 30, 2012
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------X
                                                       :
                                                       :     Chapter 11
                                                       :
In re                                                  :
                                                       :     Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,¹                         :
                                                       :     Jointly Administered
                    Debtors.                           :
                                                       :
                                                       :     RE: D.I. _____
                                                       :
-------------------------------------------------------X
```

**ORDER GRANTING
DEBTORS' MOTION FOR ENTRY OF AN ORDER
PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE
DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM
DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES**

Upon the motion dated July 30, 2012 (the "Motion"),[2] of Nortel Networks Inc. and

certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (the

"Debtors"), for entry of an order, as more fully described in the Motion, pursuant to sections

105(a), 363(b) and 1108 of title 11 of the United States Code (the "Bankruptcy Code"),

(i) authorizing the Debtors to terminate the LTD Plans effective as of December 31, 2012 so as

to cease providing employer-paid benefits, including for long-term disability income

continuation benefits, for current and future participants as of that date, and (ii) terminating the

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]      Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

employment of the LTD Employees; and the Court having reviewed and considered the Motion, and after due deliberation thereon, and good cause appearing therefore:

## IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

B.      Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.      The statutory predicates for the relief sought in the Motion are sections 105(a), 363(b) and 1108 of the Bankruptcy Code.

D.      Notice of the Motion has been provided to (i) the U.S. Trustee; (ii) counsel to the LTD Committee; (iii) the LTD Employees; (iv) counsel to the Bondholder Group; (v) counsel to the UCC; and (vi) the general service list established in these chapter 11 cases.

E.      No further or other notice beyond that described in the forgoing paragraph is required in connection with the Motion.

F.      The Debtors have demonstrated compelling and sound business justifications for termination of the LTD Plans, including the Benefits provided thereunder.

G.      The LTD Employees are not retired employees of the Debtors governed by section 1114 of the Bankruptcy Code.

H.      Termination of the LTD Plans, including the Benefits provided thereunder, is in the best interests of the Debtors and the Debtors' estates and creditors.

I.      The Debtors may terminate the LTD Plans and the employment of the LTD Employees in the ordinary course of business.

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

J.      The LTD Employees do not have a vested right to continue to receive the Benefits, and therefore do not have a claim for lost Benefits based on termination of the LTD Plans.

K.      The Debtors unambiguously reserved their right to amend or terminate the LTD Plans and the Benefits provided thereunder in the various LTD Plans.

L.      The LTD Employees are at will employees of the Debtors.

M.      The Debtors no longer will sponsor or provide any employee benefits, including without limitation, any health, medical or surgical benefits for employees after the termination of the LTD Plans.

N.      The LTD Plans are terminable at will by the Debtors; and it is therefore:

**ORDERED ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED and any objections thereto are OVERRULED.

2.      The Debtors are authorized to terminate the LTD Plans and, for the avoidance of doubt, all coverage and benefits thereunder, effective as of December 31, 2012.  After December 31, 2012, the Debtors will cease to sponsor or provide any Benefits under the LTD Plans, including the Nortel Networks Inc. Medical Plan, to any of their employees.

3.      Any and all proofs of claim filed by LTD Employees on account of claims arising under or relating to the LTD Plans, including, but not limited to, claims arising from the termination of the LTD Plans or for future benefits, shall be disallowed and expunged from the Debtors' claims register on or after December 31, 2012, solely with respect to the portion of the proof of claim relating to claims arising under or relating to the LTD Plans.

4.      Notwithstanding the foregoing, nothing contained herein shall: (i) waive the rights of any LTD Employee to pursue any timely filed proofs of claim in the Debtors' chapter 11 cases

3

for any matter other than an LTD Claim; or (ii) relieve the Debtors of any obligations to pay for professional fees and/or expenses of the LTD Committee's retained professionals in accordance with a final order of this Court; (iii) waive or limit defenses available against a proof of claim filed against the Debtors based on a failure to timely file such claim on or before the applicable bar date.

5.      The Debtors are authorized to terminate the employment of the LTD Employees as of December 31, 2012.

6.      This Order shall not result in the loss or waiver of any right of current employees of the Debtors as of date of this Order, including the LTD Employees, or former employees of the Debtors to participate in the Retiree Welfare Plans and/or any settlement made with respect to the termination of the Retiree Welfare Plans (whether consensual or pursuant to section 1114(g)), which right to participate and receive benefits or payments thereunder shall be based on the individual's eligibility to receive benefits under the Retiree Welfare Plans as of the date that an order regarding the termination of the Retiree Welfare Plans becomes final and non-appealable, provided that in order to preserve any such right, such employees must make an election to participate in the Retiree Welfare Plans for which they are eligible within thirty (30) days after the date that an order regarding the termination of the Retiree Welfare Plans becomes final and non-appealable.

7.      LTD Employees may submit a claim for reimbursement for benefits covered by and approved pursuant to the relevant LTD Plans for claims incurred prior to the date of this Order on or before June 30, 2013.

8.      Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its

4

entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or

realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and

without further delay, take any action and perform any act authorized under this Order.

       9.     The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated: _____, 2012
      Wilmington, Delaware

           _____
           THE HONORABLE KEVIN GROSS
           CHIEF UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
                                                           :
*In re*                                                    :    Chapter 11
                                                           :
Nortel Networks Inc., *et al.*,[1]                         :    Case No. 09-10138 (KG)
                                                           :
               Debtors.    :    Jointly Administered
                                                           :
                                                           :
                                                           :
-----------------------------------------------------------X

## DECLARATION OF JOHN J. RAY III IN SUPPORT OF
## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE
## DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM
## DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

     I, John J. Ray III, declare under penalty of perjury as follows:

     1.    On January 6, 2010, upon the motion of Nortel Networks Inc. ("NNI") and the

other above-captioned debtors (together, the "Debtors"), I was appointed by this court as

Debtors' Principal Officer, *nunc pro tunc* to December 7, 2009.  I am also Senior Managing

Director and the sole member of Avidity Partners, LLC.

     2.    Except as otherwise indicated, all facts set forth in this declaration are based

upon my personal knowledge, information supplied to me by other members of the Debtors'

management and professionals based on, among other things, a review of the Debtors' files,

books and records, or learned from my review of relevant documents or are based upon my

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

opinion, which is founded upon my experience and knowledge of the Debtors' operations.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.  I am authorized to submit this declaration.

3.      I submit this declaration in support of the Debtors' motion (the "LTD Plan Termination Motion")[2] for an order (i) authorizing the Debtors to terminate the LTD Plans effective as of December 31, 2012 so as to cease providing employer-paid benefits, including for long-term disability income continuation benefits, to current and future participants as of that date, (ii) terminating the employment of the LTD Employees, and (iii) granting them such other and further relief as the Court deems just and proper.

4.      True and complete copies of the following documents cited in the LTD Plan Termination Motion are attached to this declaration:

| | |
|---|---|
| **Exhibit 1:** | 2006 Nortel Networks Inc. Short-Term Disability and Long-Term Disability Plan Summary Plan Description |
| **Exhibit 2:** | 2010 Nortel Networks Inc. Long-Term Disability Plan Summary Plan Description |
| **Exhibit 3:** | 1989 Nortel Networks Inc. Group Benefits Plan |
| **Exhibit 4:** | 2004 Nortel Networks Inc. Medical Plan Summary Plan Description |
| **Exhibit 5:** | 2004 Nortel Networks Inc. Short-Term Disability and Long-Term Disability Plan Summary Plan Description |
| **Exhibit 6:** | 1998 Nortel Networks Inc. Employment Agreement |
| **Exhibit 7:** | 2004 Nortel Networks Inc. Employment Agreement |
| **Exhibit 8:** | 2008 Nortel Network Inc. Employment Agreement |

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the LTD Plan Termination Motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  July 30, 2012
Location:  Chicago, IL

_____
John J. Ray III

**Due to their size, the Exhibits to this declaration are available on request to counsel to the Debtors.**

**Debtors' counsel may be contacted as follows:**

**Robert Ryan, Esq.**
**Cleary Gottlieb Steen & Hamilton LLP**
**One Liberty Plaza**
**New York, New York 10006**
**212-225-2602**

**The Exhibits are also available on the Nortel case docket maintained by Epiq at:**
**http://dm.epiq11.com/nortel**

**EXHIBIT C**

| Claim Name | Address Information |
|---|---|
| ACUSHNET COMPANY | ATTN: CREDIT DEPT TITLEIST & FOOTJOY, PO BOX 965 FAIRHAVEN MA 02719 |
| AKIN GUMP STRAUSS HAUER & FELD LLP | ATTN: FRED S. HODARA ESQ.; RYAN C. JACOBS ESQ. ONE BRYANT PARK NEW YORK NY 10036 |
| ALDINE INDEPENDENT SCHOOL DISTRICT | ATTN: SUSAN R. FUERTES, ESQ. 14910 ALDINE-WESTFIELD ROAD HOUSTON TX 77032 |
| ALLEN & OVERY LLP | ATTN: KEN COLEMAN ESQ,LISA J.P. KRAIDIN. ESQ. 1221 AVENUE OF THE AMERICAS, 20TH FLOOR NEW YORK NY 10020 |
| AMPHENOL CORPORATION | ATTN: EDWARD C. WETMORE VP & GEN COUNSEL 358 HALL AVENUE WALLINGFORD CT 06492 |
| APC WORKFORCE SOLUTIONS LLC | ATTN: DOUG GOIN CFO 420 SOUTH ORANGE AVENUE, 6TH FL ORLANDO FL 32801 |
| ARCHER & GREINER PC | ATTN: JOHN V. FIORELLA ESQ. 300 DELAWARE AVE, STE 1370 WILMINGTON DE 19801 |
| ARCHER & GREINER PC | ATTN: CHARLES J. BROWN III ESQ. 300 DELAWARE AVE, STE 1370 WILMINGTON DE 19801 |
| ARDENT LAW GROUP, P.C. | ATTN: HUBERT H. KUO ESQ. 2600 MICHELSON DRIVE, SUITE 1700 IRVINE CA 92612 |
| ARNALL GOLDEN GREGORY LLP | ATTN: DARRYL S. LADDIN ESQ.,FRANK N. WHITE ESQ. 171 17TH ST NW, STE 2100 ATLANTA GA 30363-1031 |
| ASHBY & GEDDES P.A. | ATTN: WILLIAM P BOWDEN ESQ 500 DELAWARE AVE, 8TH FL WILMINGTON DE 19801 |
| ASHBY & GEDDES P.A. | ATTN: RICARDO PALACIO ESQ. 500 DELAWARE AVE WILMINGTON DE 19801 |
| ASHBY & GEDDES, P.A. | GREGORY A. TAYLOR, ESQ.; BENJAMIN W. KEENAN 500 DELAWARE AVENUE, 8TH FLOOR P.O. BOX 1150 WILMINGTON DE 19899 |
| ASSISTANT ATTORNEY GENERAL | ATTN: LAURA L. MCCLOUD ESQ. P.O. BOX 20207 NASHVILLE TN 37202 |
| BAKER BOTTS L.L.P. | JUDITH W. ROSS, ESQ. COUNSEL TO GENBAND, INC. 2001 ROSS AVENUE DALLAS TX 75201 |
| BALLARD SPAHR | ATTN: TOBEY M. DALUZ ESQ.,LESLIE HEILMAN ESQ. 919 MARKET ST, 12TH FL WILMINGTON DE 19801 |
| BALLARD SPAHR ANDREWS & INGERSOLL LLP | ATTN: DAVID L. POLLACK ESQ.,JEFFREY MEYERS ESQ. 51ST FL MELLON BANK CTR, 1735 MARKET ST PHILADELPHIA PA 19103 |
| BALLARD SPAHR LLP | ROBERT MCL. BOOTE, ESQ. COUNSEL TO WESTCHESTER FIRE INSURANCE CO. 1735 MARKET STREET, 51ST FLOOR PHILADELPHIA PA 19103-7599 |
| BALLARD SPAHR, LLP | TOBEY M. DALUZ, ESQ.; DAVID T. MAY, ESQ. COUNSEL TO WESTCHESTER FIRE INSURANCE CO. 919 N. MARKET STREET, 12TH FLOOR WILMINGTON DE 19801 |
| BARTLETT HACKETT FEINBERG P.C. | ATTN: FRANK F. MCGINN ESQ. 155 FEDERAL ST, 9TH FL BOSTON MA 02110 |
| BAYARD P.A. | ATTN: CHARLENE D DAVIS ESQ,DANIEL A O'BRIEN ESQ 222 DELAWARE AVE, STE 900 WILMINGTON DE 19801 |
| BAYARD, P.A. | CHARLENE D. DAVIS, ESQ.; JUSTIN R. ALBERTO, ESQ. 222 DELAWARE AVENUE, SUITE 900 WILMINGTON DE 19899 |
| BELL MICROPRODUCTS INC | ATTN: DAVID L. URANGA 201 MONROE STREET, SUITE 300 MONTGOMERY AL 36104 |
| BERNSTEIN, SHUR, SAWYER & NELSON | ATTN: ROBERT J. KEACH, ESQ.; PAUL MCDONALD, ESQ.; DANIEL J. MURPHY, ESQ. COUNSEL TO AD HOC COMMITTEE 100 MIDDLE STREET P.O. BOX 9729 PORTLAND ME 04104-5029 |
| BIALSON BERGEN & SCHWAB | ATTN: LAWRENCE M. SCHWAB ESQ.,THOMAS M. GAA ESQ. PATRICK M. COSTELLO ESQ. 2600 EL CAMINO REAL, STE 300 PALO ALTO CA 94306 |
| BIFFERATO LLC | ATTN: IAN CONNOR BIFFERATO,KEVIN G. COLLINS 800 N. KING STREET, FIRST FLOOR WILMINGTON DE 19801 |
| BIFFERATO LLC | IAN CONNOR BIFFERATO, ESQ.; MATTHEW DENN, ESQ; KEVIN G. COLLINS, ESQ. COUNSEL TO CREDIT SUISSE STRATEGIC PARTNERS 800 N. KING STREET, PLAZA LEVEL WILMINGTON DE 19801 |
| BIRCH HORTON BITTNER & CHEROT | ATTN: JAMES H. LISTER 1155 CONNECTICUT AVENUE NW SUITE 1200 WASHINGTON DC 20036 |
| BLANK ROME LLP | ATTN: MICHAEL DEBAECKE, ESQ. COUNSEL TO CABLE NEWS NETWORK, INC. 1201 MARKET STREET, SUITE 800 WILMINGTON DE 19801 |
| BLANK ROME LLP | ATTN: BONNIE GLANTZ FATELL, ESQ.; VICTORIA A. GUILFOYLE, ESQ. COUNSEL TO AD HOC COMMITTEE 1201 NORTH MARKET STREET, SUITE 800 WILMINGTON DE 19801 |
| BOYLAN BROWN | ATTN: DEVIN LAWTON PALMER 2400 CHASE SQUARE ROCHESTER NY 14604 |
| BRACEWELL & GUILIANI LLP | ATTN: JENNIFER FELDSHER 1251 AVENUE OF THE AMERICAS 49TH FL NEW YORK NY 10020-1104 |

| Claim Name | Address Information |
|---|---|
| BRACEWELL & GUILIANI LLP | ATTN: EVAN D. FLASCHEN,KATHERINE L. LINDSAY 225 ASYLUM STREET, SUITE 2600 HARTFORD CT 06103 |
| BROWN & CONNERY LLP | ATTN: DONALD K. LUDMAN ESQ. 6 NORTH BROAD ST, STE 1000 WOODBURY NJ 08096 |
| BROWN MCCAROLL LLP | ATTN: AFTON SANDS-PURYEAR 111 CONGRESS AVENUE, SUITE 1400 AUSTIN TX 78701 |
| BROWN MCCARROLL LLP | KELL C. MERCER; AFTON SANDS-PURYEAR 111 CONGRESS AVENUE, SUITE 1400 AUSTIN TX 78701 |
| BROWN STONE NIMEROFF LLC | ATTN: JAMI B. NIMEROFF, ESQ. COUNSEL TO MICROSOFT CORPORATION 901 N. MARKET STREET, SUITE 1300 WILMINGTON DE 19801 |
| BRYAN CAVE LLP | ATTN: MICHELLE MCMAHON ESQ. 1290 AVENUE OF THE AMERICAS NEW YORK NY 10104 |
| BRYAN CAVE LLP | ATTN: ERIC S. PREZANT ESQ. 161 N CLARK ST, STE 4300 CHICAGO IL 60601 |
| BRYAN CAVE LLP | ATTN: CULLEN K. KUHN ESQ. 211 N BROADWAY, STE 3600 ST. LOUIS MO 63102 |
| BUCHALTER NEMER | ATTN: SHAWN M. CHRISTIANSON ESQ. 55 SECOND STREET, 17TH FL SAN FRANCISCO CA 94105-3493 |
| BUCHANAN INGERSOLL & ROONEY PC | ATTN: MARY F. CALOWAY ESQ.,P.J. DUHIG ESQ. 1105 NORTH MARKET STREET, SUITE 1900 WILMINGTON DE 19801-1228 |
| CHADBOURNE & PARKE LLP | ATTN: N. THODORE ZINK JR. ESQ. 30 ROCKEFELLER PLAZA NEW YORK NY 10112 |
| COLE SCHOTZ MEISEL FORMAN & LEONARD | ATTN: NORMAN L. PERNICK,SANJAY BHATNAGAR 500 DELAWARE AVE, SUITE 1410 WILMINGTON DE 19801 |
| COMMONWEALTH OF PENNSLYVANIA | CAROL E. MOMJIAN OFFICE OF THE ATTORNEY GENERAL 21 S. 12TH STREET, 3RD FLOOR PHILADELPHIA PA 19107-3603 |
| CONNOLLY BOVE | ATTN: JEFFREY S. WISLER ESQ.,MARC J. PHILLIPS ESQ. THE NEMOURS BUILDING, 1007 N ORANGE ST WILMINGTON DE 19801 |
| COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP | SAMUEL H. RUDMAN, ESQ.; DAVID A. ROSENFELD, ESQ. 58 SOUTH SERVICE ROAD, SUITE 200 MELVILLE NY 11747 |
| COWLES & THOMPSON, PC | ATTN: STEPHEN C. STAPLETON COUNSEL TO GTCI 901 MAIN STREET, SUITE 3900 DALLAS TX 75202 |
| CROSS & SIMON, LLC | CHRISTOPHER P. SIMON, ESQ. 913 NORTH MARKET STREET, 11TH FLOOR P.O. BOX 1380 WILMINGTON DE 19899-1380 |
| CURTIS MALLET-PREVOST COLT & MOSLE LLP | ATTN: STEVEN J. REISMAN ESQ.,JAMES V. DREW ESQ. 101 PARK AVENUE NEW YORK NY 10178-0061 |
| DAVIS & KUELTHAU, S.C. | ATTN: RUSSELL S. LONG, ESQ. COUNSEL TO CORE BROOKFIELD LAKES, LLC 111 E. KILBOURN AVENUE, SUITE 1400 MILWAUKEE WI 53202 |
| DEWEY & LEBOEUF LLP | LAWRENCE E. MILLER 1301 AVENUE OF THE AMERICAS NEW YORK NY 10019-6092 |
| DEWEY & LEBOEUF, LLP | MOSHIN N. KHAMBATI, ESQ. TWO PRUDENTIAL PLAZA 180 NORTH STETSON AVENUE, SUITE 3700 CHICAGO IL 60601-6710 |
| DLA PIPER LLP (US) | ATTN: RICHARD M. KREMEN ESQ.,DALE K. CATHELL ESQ. 6225 SMITH AVENUE BALTIMORE MD 21209 |
| DUANE MORRIS LLP | MICHAEL R. LASTOWSKI, ESQ.; SUMMER L. ROSS, ESQ. COUNSEL TO GENBAND INC. 222 DELAWARE AVENUE SUITE 1600 WILMINGTON DE 19801-1659 |
| EDWARDS ANGELL PALMER & DODGE LLP | ATTN: STUART M. BROWN 919 NORTH MARKET STREET, SUITE 1500 WILMINGTON DE 19801 |
| ELLIOTT GREENLEAF | ATTN: RAFAEL X. ZAHRALDDIN-ARAVENA; SHELLY A. KINSELLA COUNSEL TO THE OFFICIAL COMMITTEE OF LONG TERM DISABILITY PLAN PARTICIPANTS 1105 N. MARKET STREET, SUITE 1700 WILMINGTON DE 19801 |
| EMC CORPORATION | RONALD ROWLAND, ESQ. C/O RECEIVABLE MANAGEMENT SERVICES 307 INTERNATIONAL CIRCLE, SUITE 270 HUNT VALLEY MD 21094 |
| EXPORT DEVELOPMENT CANADA | ATTN: DEREK AUSTIN 151 O'CONNOR STREET OTTOWA ON K1A 1K3 CANADA |
| FLEXTRONICS INTERNATIONAL | ATTN: STEVEN JACKMAN, VICE PRESIDENT 847 GIBRALTAR DRIVE MILPITAS CA 95035 |
| FOSTER PEPPER PLLC | ATTN: CHRISTOPHER M. ALSTON ESQ. 1111 3RD AVE, STE 3400 SEATTLE WA 98101-3299 |
| FPL LAW DEPARTMENT | ATTN: RACHEL S. BUDKE ESQ. 700 UNIVERSE BLVD JUNO BEACH FL 33408 |
| FRANCHISE TAX | ATTN: SECRETARY OF STATE DIVISION OF CORPORATIONS P.O. BOX 7040 DOVER DE 19903 |
| FRASER MILNER CASGRAIN LLP | ATTN: MICHAEL J. WUNDER,R. SNAYNE KUKULOWICZ RYAN C. JACOBS 1 FIRST CANADIAN PLACE -FLOOR 42, 100 KING ST WEST TORONTO ON M5X 1B2 CANADA |

| Claim Name | Address Information |
|---|---|
| FREEBORN & PETERS LLP | ATTN: AARON L. HAMMER ESQ.,DEVON J. EGGERT ESQ. 311 SOUTH WACKER DR, STE 3000 CHICAGO IL 60606 |
| FREEBORN & PETERS LLP | ATTN: DEVON J. EGGERT, ESQ. COUNSEL TO MERCER (US) INC. 311 SOUTH WACKER DRIVE, SUITE 3000 CHICAGO IL 60606 |
| FULBRIGHT & JAWORSKI LLP | ATTN: DAVID A. ROSENZWEIG 666 5TH AVE NEW YORK NY 10103-3198 |
| GAMBOURG & BORSEN LLP | ATTN: ROMAN GAMBOURG, ESQ. COUNSEL TO MERA NETOWRKS THE BRIDGE PLAZA BUILDING 2185 LEMOINE AVENUE, SUITE B4 FORT LEE NJ 07024 |
| GIBBONS P.C. | ATTN: DAVID N. CRAPO ESQ. ONE GATEWAY CENTER NEWARK NJ 07102-5310 |
| GIBSON DUNN | JANET WEISS, ESQ. COUNSEL TO CREDIT SUISSE STRATEGIC PARTNERS 200 PARK AVENUE NEW YORK NY 10166-0193 |
| GIBSON, DUNN & CRUTCHER LLP | 200 PARK AVENUE, 51ST FLOOR ATTN DAVID M FELDMAN, ESQ. MITCHELL A KARLAN, ESQ.; MATTHEW K KELSEY, ESQ. COUNSEL TO MICROSOFT CORPORATION NEW YORK NY 10166-0193 |
| GOODMANS LLP | ATTN: CHRIS ARMSTRONG 333 BAY STREET, SUITE 3400 TORONTO ON M5H 2S7 CANADA |
| GOULD & RATNER LLP | ATTN: CHRISTOPHER J. HORVAY ESQ. 222 N LASALLE ST, STE 800 CHICAGO IL 60601 |
| GOWLING LAFLEUR HENDERSON | ATTN: JENNIFER STAM; DERRICK TAY 1 FIRST CANADIAN PLACE 100 KING STREET WEST, SUITE 1600 TORONTO ON M5X 1G5 CANADA |
| HAHN LOESER & PARKS LLP | ATTN: ALAN S. KOPIT ESQ.,CHRISTOPHER W. PEER ESQ. 200 PUBLIC SQUARE, STE 2800 CLEVELAND OH 44114 |
| HERBERT SMITH | ATTN: STEPHEN GALE EXCHANGE HOUSE, PRIMROSE STREEET LONDON EC2A 2HS ENGLAND |
| HERMAN HERMAN KATZ & COTLAR | ATTN: SOREN E. GISLESON 820 O'KEEFE AVENUE NEW ORELANS LA 70113 |
| HINCKLEY ALLEN & SNYDER LLP | ATTN: JENNIFER V. DORAN ESQ. 28 STATE ST BOSTON MA 02109 |
| HITACHI COMMUNICATIONS TECHNOLOGIES LTD | MINORU INAYOSHI, GEN MGR. OMORI BELLPORT D BLDG., 26-3 MINAMI OI 6-CHROME SHINAGAWA-KU 140-0013 TOKYO JAPAN |
| HOLLAND & KNIGHT LLP | ATTN: ROD ANDERSON ESQ.,NOEL R. BOEKE ESQ. P.O. BOX 1288 TAMPA FL 33601-1288 |
| HP  COMPANY | ATTN: RAMONA NEAL ESQ. 11307 CHINDEN BLVD, MS 314 BOISE ID 83714 |
| HUGHES HUBBARD | MICHAEL LUSKIN; DEREK ADLER ONE BATTERY PARK PLAZA NEW YORK NY 10004 |
| HUNTON & WILLIAMS | ATTN: LYNNETTE R. WARMAN 1445 ROSS AVE, ROUNTAIN PLACE STE 3700 DALLAS TX 75202-2799 |
| IBM CORP. LEGAL DEPT | ATTN: R. S. STAHEL 1503 LBJ FREEWAY, 3RD FL DALLAS TX 75234 |
| IBM CORPORATION/IBM CREDIT LLC | ATTN: MARIE-JOSEE DUBE 1360 RENE-LEVESQUE W., SUITE 400 MONTREAL QC H3G 2W6 CANADA |
| INTERNAL REVENUE SERVICE | ATTN: CENTRALIZED INSOLVENCY OPERATION PO BOX 7346 PHILADELPHIA PA 19101-7346 |
| J. SCOTT DOUGLASS ESQ. | 909 FANNIN, STE 1800 HOUSTON TX 77010 |
| JD THOMPSON LAW | JUDY T. THOMPSON, ESQ. P.O. BOX 33127 CHARLOTTE NC 28233 |
| JONES DAY | ATTN: JEFFREY B. ELLMAN ESQ.,ROBBIN S. RAHMAN ESQ. 1420 PEACHTREE ST NE, STE 800 ATLANTA GA 30309 |
| KATTEN MUCHIN ROSENMAN LLP | ATTN: KENNETH E. NOBLE ESQ. 575 MADISON AVE NEW YORK NY 10022-2585 |
| KATTEN MUCHIN ROSENMAN LLP | ATTN: DUSTIN P. BRANCH ESQ. 2029 CENTURY PARK EAST, STE 2600 LOS ANGELES CA 90067-3012 |
| KELLEY DRYE & WARREN LLP | ATTN: HOWARD S. STEEL ESQ. 101 PARK AVENUE NEW YORK NY 10178 |
| KELLEY DRYE & WARREN LLP | KRISTIN S. ELLIOTT, ESQ. COUNSEL TO CYPRESS COMMUNICATIONS, INC.; TATA AMERICAN INTERNATIONAL CORP. 101 PARK AVENUE NEW YORK NY 10178 |
| KLEE TUCHIN BOGDANOFF & STERN LLP | ATTN: EDWARD T. ATTANASIO ESQ. 1999 AVENUE OF THE STARS, 39TH FL LOS ANGELES CA 90067-6049 |
| KLEHR HARRISON | ATTN: JOANNE B. WILLS ESQ. 919 MARKET ST, STE 1000 WILMINGTON DE 19801 |
| KRAMER LEVIN NAFTALIS FRANKEL LLP | ERNSEST S. WECHSLER 1177 AVENUE OF THE AMERICAS NEW YORK NY 10036 |
| L.A. COUNTY TREASURER & TAX COLLECTOR | P.O. BOX 54110 LOS ANGELES CA 90054-0110 |
| LANDIS RATH & COBB LLP | ADAM G. LANDIS, ESQ.; KERRI K. MUMFORD, ESQ.; J. LANDON ELLIS, ESQ. COUNSEL TO ASM CAPITAL III, L.P. 919 MARKET STREET, SUITE 1800 WILMINGTON DE 19801 |
| LATHAM & WATKINS LLP | ATTN: DAVID S. ALLINSON; THOMAS MALONE; ALEXANDRA CROSWELL 885 THIRD AVENUE, SUITE 100 NEW YORK NY 10022 |

| Claim Name | Address Information |
|---|---|
| LATHAM & WATKINS LLP | ATTN: ROBERT J. ROSENBERG ESQ. 885 THIRD AVENUE, STE 1000 NEW YORK NY 10022-4068 |
| LATHAM & WATKINS LLP | ATTN: MICHAEL J. RIELA ESQ. 885 THIRD AVENUE, STE 1000 NEW YORK NY 10022-4068 |
| LATHAM & WATKINS LLP | ATTN: ZACHARY N. GOLDSTEIN ESQ. 885 THIRD AVENUE, STE 1000 NEW YORK NY 10022-4068 |
| LATHROP & GAGE LLP | ATTN: STEPHEN K. DEXTER ESQ. U.S. BANK TOWER 950 SEVENTEENTH STREET, SUITE 2400 DENVER CO 80202 |
| LAW OFFICE OF VIVIAN HOUGHTON | ATTN: VIVIAN A. HOUGHTON, ESQ. COUNSEL TO MERA NETWORKS 800 WEST STREET WILMINGTON DE 19801 |
| LEWIS AND ROCA LLP | ATTN: SCOTT K. BROWN ESQ. 40 NORTH CENTRAL AVE, STE 1900 PHOENIX AZ 85004 |
| LINEBARGER GOGGAN BLAIR & SAMPSON LLP | ATTN: ELIZABETH WELLER ESQ. 2323 BRYAN STREET, STE 1600 DALLAS TX 75201 |
| LINEBARGER GOGGAN BLAIR & SAMPSON LLP | ATTN: JOHN P. DILLMAN ESQ. P.O. BOX 3064 HOUSTON TX 77253-3064 |
| LINEBARGER GOGGAN BLAIR & SAMPSON LLP | ATTN: DAVID G. AELVOET ESQ. TRAVIS BLDG SUITE 300, 711 NAVARRO SAN ANTONIO TX 78205 |
| LOWENSTEIN SANDLER PC | ATTN: VINCENT A. D'AGOSTINO ESQ. 65 LIVINGSTON AVE ROSELAND NJ 07068 |
| LOWENSTEIN SANDLER PC | JOHN SHERWOOD, ESQ.; IRA M. LEVEE, ESQ. 65 LIVINGSTON AVENUE ROSELAND NJ 07068 |
| MAGNOZZI & KYE, LLP | ATTN: AMISH R. DOSHI, ESQ. COUNSEL TO ORACLE AMERICA, INC. 23 GREEN STREET, SUITE 302 HUNTINGTON NY 11743 |
| MALEK SCHIFFRIN LLP | JAVIER SCHIFFRIN, ESQ.; KEVIN MALEK, ESQ. COUSEL TO SOLUS ALTERNATIVE ASSET MANAGEMENT LP 340 MADISON AVENUE, 19TH FLOOR NEW YORK NY 10173-1922 |
| MAYER BROWN LLP | ATTN: BRIAN TRUST, ESQ.; THOMAS M. VITALE, ESQ.; AMIT K. TREHAN, ESQ. 1675 BROADWAY NEW YORK NY 10019 |
| MAYER BROWN LLP | ATTN: MELISSA A. MICKEY 71 S. WACKER DRIVE CHICAGO IL 60604-1404 |
| MCCARTER & ENGLISH, LLP | ATTN: WILLIAM F. TAYLOR, JR., ESQ. RENAISSANCE CENTRE 405 NORTH KING STREET, 8TH FLOOR WILMINGTON DE 19801 |
| MCGUIREWOODS LLP | ATTN: JAMES E. VAN HORN 7 SAINT PAUL STREET SUITE 1000 BALTIMORE MD 21202 |
| MCGUIREWOODS LLP | ATTN: DAVID I. SWAN ESQ.,KENNETH M. MISKEN ESQ. 1750 TYSONS BLVD, STE 1800 MCLEAN VA 22102-4215 |
| MD DEPARTMENT OF LABOR LICENSING & REG. | OFFICE OF UNEMPLOYMENT INSURANCE CONTRIBUTIONS DIVISION 1100 N. EUTAW STREET, ROOM 401 SUITE 3000 BALTIMORE MD 21201 |
| MEYERS LAW GROUP P.C. | ATTN: MERLE C. MEYERS ESQ.,MICHELE THOMPSON ESQ. 44 MONTGOMERY STREET, STE 1010 SAN FRANCISCO CA 94104 |
| MILBANK TWEED HADLEY & MCCLOY LLP | ATTN: DENNIS F. DUNNE ESQ.,THOMAS R. KRELLER ESQ. ALBERT A. PISA ESQ.,ANDREW M. LEBLANC ESQ. ONE CHASE MANHATTAN PLAZA NEW YORK NY 10005 |
| MILBANK TWEED HADLEY & MCCLOY LLP | ATTN: DENNIS DUNNE ESQ. ONE CHASE MANHATTAN PLAZA NEW YORK NY 10005-1413 |
| MISSOURI DEPT OF REVENUE | ATTN: SHERYL L. MOREAU ESQ. P.O. BOX 475, BANKRUPTCY DIVISION JEFFERSON CITY MO 65105-0475 |
| MONARCH ALTERNATIVE CAPITAL LP | ATTN: ANDREW HERENSTEIN 535 MADISON AVE. NEW YORK NY 10022 |
| MONZACK MERSKY MCLAUGHLIN AND BROWDER P.A. | ATTN: RACHEL B. MERSKY ESQ. 1201 N ORANGE ST, STE 400 WILMINGTON DE 19801 |
| MORRIS JAMES LLP | ATTN: BRETT D. FALLON ESQ. 500 DELAWARE AVE, STE 1500 WILMINGTON DE 19801 |
| MORRIS JAMES LLP | ATTN: CARL N. KUNZ ESQ.,MICHAEL J. CUSTER ESQ. 500 DELAWARE AVE, STE 1500 WILMINGTON DE 19801 |
| MORRIS JAMES LLP | ATTN: STEPHEN M. MILLER; COURTNEY R. HAMILTON COUNSEL TO LAW DEBENTURE COMPANY OF NEW YORK 500 DELAWARE AVENUE, SUITE 1500 P.O. BOX 2306 WILMINGTON DE 19899-2306 |
| MOSES & SINGER LLP | ATTN: ALAN KOLOD,CHRISTOPHER CARUSO,KENT KOLBIG THE CHRYSLER BUILDING 405 LEXINGTON AVENUE NEW YORK NY 10174 |
| MUNICIPAL OPERATIONS | ATTN: MAX TAYLOR ASST. CITY ATTY. 201 W. COLFAX AVENUE, DEPT. 1207 DENVER CO 80202-5332 |
| NIXON PEABODY LLP | ATTN: LOUIS J. CISZ, III ONE EMBARCADERO CENTER, 18TH FLOOR SAN FRANCISCO CA 94111 |

| Claim Name | Address Information |
|---|---|
| NORTON ROSE | ATTN: TONY REYES ROYAL BANK PLAZA SOUTH TOWER 200 BAY ST., SUITE 3800 TORONTO ON M5J 2Z4 CANADA |
| NOSSAMAN LLP | ATTN: ROBERT S. MCWHORTER ESQ. 915 L ST, STE 1000 SACRAMENTO CA 95814 |
| OFFICE OF THE U.S. TRUSTEE | ATTN: KEVIN CALLAHAN 844 KING STREET, SUITE 2207 LOCKBOX 35 WILMINGTON DE 19801-3519 |
| OFFICE OF UNEMPLOYMENT INSURANCE | CONTRIBUTIONS DIVISION MD DEPT. OF LABOR LICENSING & REG. 1100 N. EUTAW STREET, ROOM 401 BALTIMORE MD 21201 |
| ORRICK HERRINGTON & SUTCLIFFE LLP | ATTN: RANIERO D'AVERSA JR ESQ,LAURA D METZGER ESQ WESTON T. EGUCHI ESQ. 666 FIFTH AVENUE NEW YORK NY 10103-0001 |
| PA DEPARTMENT OF LABOR & INDUSTRY | ATTN: DENISE A MERTZ, TAX AGENT READING BANKRUPTCY & COMPLIANCE UNIT 625 CHERRY STREET, ROOM 203 READING PA 19602-1184 |
| PA DEPARTMENT OF LABOR & INDUSTRY | ATTN: DENISE A. MERTZ READING BANKRUPTCY & COMPLIANCE UNIT 625 CHERRY STREET, ROOM 203 READING PA 19602-1184 |
| PA SENIOR DEPUTY ATTY GEN | ATTN: CAROL E. MOMJIAN ESQ. 21 S 12TH ST, 3RD FL PHILADELPHIA PA 19107-3603 |
| PACHULSKI STANG | ATTN: LAURA DAVIS JONES,TIMOTHY P. CAIRNS 919 N. MARKET ST. 17TH FL. WILMINGTON DE 19899-8705 |
| PARTRIDGE SNOW & HAHN LLP | ATTN: PATRICIA ANTONELLI COUNSEL TO ANNABELLE W. CAFFRY AND SUSANNAH LUND ANNABELLE W. CAFFRY 180 SOUTH MAIN STREET PROVIDENCE RI 02903 |
| PARTRIDGE SNOW & HAHN LLP | ATTN: LAUREN F. VERNI COUNSEL TO ANNABELLE W. CAFFRY AND SUSANNAH LUND 180 SOUTH MAIN STREET PROVIDENCE RI 02903 |
| PATTERSON BELKNAP WEBB & TYLER LLP | ATTN: DANIEL A. LOWENTHAL; BRIAN P. GUINEY LAW DEBENTURE TRUST COMPANY OF NEW YORK 1133 AVENUE OF THE AMERICAS NEW YORK NY 10036 |
| PATTERSON HARKAVY | 225 E WORTHINGTON AVE STE 200 CHARLOTTE NC 282034886 |
| PAUL HASTINGS JANOFSKY & WALKER LLP | ATTN: RICHARD CHESLEY COUNSEL TO IBM CORPORATION 191 N. WACKER DRIVE, 30TH FLOOR CHICAGO IL 60606 |
| PAUL WEISS RIFKIND WHARTON & GARRISON | STEPHEN J. SHIMSHAK; MARILYN SOBEL 1285 AVENUE OF THE AMERICAS NEW YORK NY 10019-6064 |
| PAUL, HASTINGS, JANOFSKY & WALKER LLP | ROBERT E. WINTER 875 15TH STREET, NW WASHINGTON DC 20005 |
| PENSION BENEFIT GUARANTY CORP | ATTN: VICENTE MATIAS MURRELL ESQ. STEPHEN D. SCHREIBER ESQ. 1200 K STREET NW WASHINGTON DC 20005-4026 |
| PEPPER HAMILTON LLP | ATTN: DAVID B STRATTON ESQ,LEIGH-ANNE M RAPORT ESQ 1313 MARKET ST, STE 5100 WILMINGTON DE 19801 |
| PEPPER HAMILTON LLP | ATTN: HENRY JAFFE ESQ. 1313 MARKET ST, STE 5100 WILMINGTON DE 19801 |
| PEPPER HAMILTON LLP | DAVID B. STRATTON, ESQ.; EVELYN J. MELTZER, ESQ. HERCULES PLAZA, SUITE 5100 1313 MARKET STREET PO BOX 1709 WILMINGTON DE 19899-1709 |
| PERDUE BRANDON FIELDER COLLINS & MOTT LLP | ATTN: ELIZABETH BANDA ESQ. 4025 WOODLAND PARK BLVD, STE 300 ARLINGTON TX 76013 |
| PINCKNEY, HARRIS & WEIDINGER, LLC | ATTN: DONNA L. HARRIS, ESQ.; KEVIN M. CAPUZZI, ESQ COUNSEL TO SOLUS ALTERNATIVE ASSET MANAGEMENT LP 1220 N. MARKET STREET, SUITE 950 WILMINGTON DE 19801 |
| POLSINELLI SHUGHART PC | ATTN: CHRISTOPHER A WARD ESQ,JUSTIN K EDELSON ESQ 222 DELAWARE AVENUE, STE 1101 WILMINGTON DE 19801 |
| POST & SCHELL P.C. | ATTN: BRIAN W. BISIGNANI ESQ. 17 N 2ND ST, 12TH FL HARRISBURG PA 17101-1601 |
| POYNER SPRUILL LLP | ATTN: SHANNON E. HOFF 301 S. COLLEGE STREET, SUITE 2300 CHARLOTTE NC 28202 |
| PRICKETT, JONES & ELLIOTT, P.A. | ATTN: BRUCE E. JAMESON, ESQ. 1310 KING STREET, BOX 1328 WILMINGTON DE 19899 |
| RAY QUINNEY & NEBEKER P.C. | ATTN: STEPHEN C. TINGEY, ESQ. 36 SOUTH STATE STREET, SUITE 1400 SALT LAKE CITY UT 84145-0385 |
| REED SMITH LLP | ATTN: KURT F. GWYNNE ESQ.,J. CORY FALGOWSKI ESQ. 1201 N MARKET ST, STE 1500 WILMINGTON DE 19801 |
| RICHARDS LAYTON & FINGER | ATTN: MARK D COLLINS ESQ,CHRISTOPHER M SAMIS ESQ ONE RODNEY SQUARE, 920 N KING ST WILMINGTON DE 19801 |
| RIDDELL WILLIAMS P.S. | ATTN: JOSEPH E. SHICKICH JR. ESQ. 1001 4TH AVE, STE 4500 SEATTLE WA 98154-1192 |
| ROBINSON BRADSHAW & HINSON P.A. | ATTN: DAVID M. SCHILLI ESQ.,TY E. SHAFFER ESQ. 101 NORTH TRYON ST, STE 1900 |

| Claim Name | Address Information |
|---|---|
| ROBINSON BRADSHAW & HINSON P.A. | CHARLOTTE NC 28246 |
| ROPES & GRAY LLP | ATTN: MARK I. BANE,ANNE H. PAK 1211 AVENUE OF THE AMERICAS NEW YORK NY 10036-8704 |
| ROPES & GRAY LLP | JAMES M. WILTON, ESQ.; PATRICIA I. CHEN, ESQ. PRUDENTIAL TOWER 800 BOYLSTON STREET BOSTON MA 02199-3600 |
| SAUL EWING LLP | ATTN: JOYCE A. KUHNS 500 E. PRATT STREET, 8TH FLOOR BALTIMORE MD 21202 |
| SEC NY REGIONAL OFFICE | ATTN: ATTN:  NATHAN FUCHS 233 BROADWAY NEW YORK NY 10279 |
| SEC NY REGIONAL OFFICE | ATTN: ALISTAR BAMBACH BANKRUPTCY DIV_STE 400 3 WORLD FINANCIAL CENTER NEW YORK NY 10281-1022 |
| SECRETARY OF STATE | DIVISION OF CORPORATIONS FRANCHISE TAX P.O. BOX 898 DOVER DE 19903 |
| SECRETARY OF TREASURY | 820 SILVERLAKE BLVD., SUITE 100 DOVER DE 19904 |
| SECURITIES & EXCHANGE COMMISSION | SECRETARY OF THE TREASURY 100 F STREET, NE WASHINGTON DC 20549 |
| SECURITIES AND EXCHANGE COMMISSION | NEW YORK REGIONAL OFFICE ATTN: GEORGE S. CANELLOS, REGIONAL DIRECTOR 3 WORLD FINANCIAL CENTER, SUITE 400 NEW YORK NY 10281-1022 |
| SHEPPARD MULLIN RICHTER & HAMPTON LLP | ATTN: CARREN B SHULMAN ESQ,KIMBERLY K SMITH ESQ 30 ROCKEFELLER PLAZA, 24TH FL NEW YORK NY 10112 |
| SIRLIN GALLOGLY & LESSER, P.C. | ATTN: DANA S. PLON ESQ. 123 SOUTH BROAD STREET, SUITE 2100 PHILADELPHIA PA 19109 |
| SKADDEN ARPS SLATE MEAGHER & FLOM LLP | ATTN: SARAH E. PIERCE ONE RODNEY SQUARE, PO BOX 636 WILMINGTON DE 19899-0636 |
| SMITH ANDERSON BLOUNT DORSETT MITCHELL & JERNIGAN | LLP, ATTN: AMOS U. PRIESTER IV ESQ. ANNA B. OSTERHOUT ESQ. P.O. BOX 2611 RALEIGH NC 27602-2611 |
| SMITH KATZENSTEIN & FURLOW | ATTN: KATHLEEN M. MILLER ESQ. 800 DELAWARE AVE., 7TH FL WILMINGTON DE 19801 |
| SPECTRUM GROUP MANAGEMENT LLC | ATTN: DAVID D.R. BULLOCK 1250 BROADWAY, 19TH FLOOR NEW YORK NY 10001 |
| STATE OF MI DEPT OF TREASURY | ATTN: DEBORAH B. WALDMEIR ESQ. 3030 W GRAND BLVD. STE. 10-200 CADILLAC PLACE DETROIT MI 48202 |
| STEMPEL BENNETT CLAMAN & HOCHBERG P.C. | ATTN: EDMOND P. O'BRIEN ESQ. 675 THIRD AVE, 31ST FL NEW YORK NY 10017 |
| STEVENS & LEE P.C. | ATTN: MARIA APRILE SAWCZUK 1105 N MARKET ST, 7TH FL WILMINGTON DE 19801 |
| SULLIVAN HAZELTINE ALLINSON LLC | ATTN: WILLIAM D. SULLIVAN ESQ. 901 N. MARKET STREET, SUITE 1300 WILMINGTON DE 19801 |
| SUMITOMO ELECTRIC | ATTN: CHRIS FINCH CREDIT MANAGER 78 ALEXANDER DRIVE, PO BOX 13445 TRIANGLE PARK NC 27709 |
| SWARTZ CAMPBELL LLC | ATTN: NICHOLAS SKILES ESQ. 300 DELAWARE AVENUE, SUITE 1410 WILMINGTON DE 19801 |
| THE INTECH GROUP INC. | ATTN: ERNIE HOLLING PRESIDENT 305 EXTON COMMONS EXTON PA 19341 |
| THE INTERPUBLIC GROUP OF COMPANIES | ATTN: NICHOLAS VIANNA 1114 AVENUE OF THE AMERICAS, 19TH FLOOR NEW YORK NY 10036 |
| TISHLER & WALK, LTD. | JEFFREY B. ROSE 200 S. WACKER DRIVE, SUITE 3000 CHICAGO IL 60606 |
| TOGUT, SEGAL & SEGAL LLP | ATTN: ALBERT TOGUT, ESQ.; NEIL BERGER, ESQ. ONE PENN PLAZA NEW YORK NY 10119 |
| TRAVELERS | ATTN: ATTN:  CHANTEL PINNOCK 1 TOWER SQUARE, 5MN HARTFORD CT 06183-4044 |
| TW TELECOM INC. | ATTN: LINDA BOYLE 10475 PARK MEADOWS DR, STE 400 LITTLETON CO 80124 |
| U.S. DEPT OF JUSTICE CIVIL DIV | ATTN: SETH B. SHAPIRO ESQ. P.O. BOX 875, BEN FRANKLIN STATION WASHINGTON DC 20044 |
| UNISYS CORPORATION | ATTN: JANET FITZPATRICK P.O. BOX 500, M/S E8-108 BLUE BELL PA 19424 |
| UNIVERSAL SERVICE ADMINISTRATIVE CO | ATTN: DAVID CAPOZZI,ACTING GENERAL COUNSEL 2000 L STREET NW, SUITE 200 WASHINGTON DC 20036 |
| US ATTORNEY'S OFFICE | DISTRICT OF DELAWARE 1007 N. ORANGE STREET WILMINGTON DE 19801 |
| VEDDER PRICE P.C. | ATTN: MICHAEL L. SCHEIN ESQ. 1633 BROADWAY, 47TH FL NEW YORK NY 10019 |
| VEDDER PRICE P.C. | COUNSEL TO MIKE ZAFIROVSKI ATTN: DOUGLAS J. LIPKE, ESQ.; ROBERT F. SIMON, ESQ 222 NORTH LASALLE STREET, SUITE 2600 CHICAGO IL 60601 |
| VONBRIESEN & ROPER S.C. | ATTN: RANDALL D. CROCKER ESQ. 411 E WISCONSIN AVE, STE 700 MILWAUKEE WI 53202 |
| VORYS, SATER, SEYMOUR AND PEASE LLP | TIFFANY STRELOW COBB, ESQ. 52 EAST GAY STREET COLUMBUS OH 43215 |
| WACHTELL, LIPTON, ROSEN & KATZ | ATTN: PHILIP MINDLIN, ESQ.; DOUGLAS K. MAYER, ESQ. BENJAMIN M. ROTH, ESQ.; GREGORY E. PESSIN, ESQ; BRIAN M. WALKER, ESQ. COUNSEL TO GOOGLE INC. AND |

| Claim Name | Address Information |
|---|---|
| WACHTELL, LIPTON, ROSEN & KATZ | RANGER INC. 51 WEST 52ND STREET NEW YORK NY 10019 |
| WEIR & PARTNERS LLP | JEFFREY S. CIANCIULLI, ESQ. COUNSEL TO ACME PACKET, INC. 824 MARKET STREET, SUITE 800 WILMINGTON DE 19801-4939 |
| WERB & SULLIVAN | ATTN: DUANE D. WERB ESQ. 300 DELAWARE AVE, 13TH FL WILMINGTON DE 19801 |
| WILLKIE FARR & GALLAGHER LLP | ATTN: ALAN J. LIPKIN ESQ.,JEREMY E. CRYSTAL ESQ. 787 7TH AVE NEW YORK NY 10019 |
| WILLKIE FARR & GALLAGHER LLP | MARC ABRAMS, ESQ.; BRIAN E. O'CONNOR, ESQ; SAMEER ADVANI, ESQ. 787 SEVENTH AVENUE NEW YORK NY 10019-6099 |
| WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP | ATTN: MARK G. LEDWIN ESQ. 3 GANNETT DR WHITE PLAINS NY 10604 |
| WOLFF & SAMSON PC | ATTN: ROBERT E. NIES ESQ. THE OFFICES AT CRYSTAL LAKE ONE BOLAND DRIVE WEST ORANGE NJ 07052 |
| WOMBLE CARLYLE SANDRIDGE & RICE, PLLC | STEVEN K. KORTANEK, ESQ.; MATTHEW P. WARD, ESQ. COUNSEL TO GOOGLE INC. AND RANGER INC. 222 DELAWARE AVENUE, SUITE 1501 WILMINGTON DE 19801 |
| XETA TECHNOLOGIES, INC. | C/O JOE M. FEARS, ESQ. BARBER & BARTZ 800 PARK CENTRE 525 SOUTH MAIN STREET TULSA OK 74103-4511 |
| YOUNG CONAWAY | ATTN: JAMES L. PATTON,EDWIN J. HARRON THE BRANDYWINE BLDG 17TH FL. 1000 WEST STREET WILMINGTON DE 19801 |

**Total Creditor count  206**

**EXHIBIT D**

| Claim Name | Address Information |
|---|---|
| ABIDI, SALMAN | 3060 BENT CREEK TER ALPHARETTA GA 30005-8703 |
| ABIDI, SALMAN | 19167 SOUTH GARDENIA AVENUE WESTON FL 33332 |
| ADAMS, DEBRA K. | 5225 HICKORY RIDGE RD. LEBANON TN 37087 |
| ANDERSON, STUART | 178 RUE ROBERT DORION EAST GATINEAU QC 69H 7A5 CANADA |
| BOURGEOIS, GEORGE H. JR. | 8713 SILVERTHORNE DR. RALEIGH NC 27612 |
| BRADSHAW, CHARLES W., JR. | 3319 MEADOW WOOD DRIVE RICHARDSON TX 75082 |
| BRANDT, KENNETH R. | 10262 HALAWA DRIVE HUNTINGTON BEACH CA 92646 |
| BROWN, SANDRA | 4655 LOWER RIVER ROAD LEWISTON NY 14092 |
| BURTON, JR. ROBERT ALLEN | 2901 CREEK VALLEY DRIVE GARLAND TX 75040 |
| CONNOLLY, JAMES | 352 ABBOTT ST NORTH ANDOVER MA 01845 |
| CORCORAN, CINDY | 820 CARDENS CREEK DR. DURHAM NC 27712 |
| DISANTO, DONALD A. | 3017 REEVES RD. WILLOUGHBY OH 44094 |
| DONATO, RICHARD A. | 308 ROSE PETAL RUN WAKE FOREST NC 27587 |
| FABRICIO, PATRICIA LARA | 14884 SW 36TH STREET DAVIE FL 33331 |
| FORD, CATHY | 3289 LEAH CT. LEBANON TN 37087 |
| FRANKEL & NEWFIELD P.C. | JASON A. NEWFIELD GARDEN CITY NY 11530 |
| GHASEMIAN, ZAHRA | 4147 EAST 139TH AVE THORNTON CO 80602 |
| GHASEMIAN, ZAHRA | 14961 JOSEPHINE ST. THORNTON CO 80602 |
| HOANG, VINH | 2200 STACIA CT. PLANO TX 75025 |
| HUDSON, JO DEE | 2471 GENITO JACK CIRCLE POWHATAN VA 23139 |
| KAEPPLEIN, MARK | 11 PALMER STREET ARLINGTON MA 02474 |
| KALSI, VISHAL | 4387 LAIRD CIRCLE SANTA CLARA CA 95054 |
| KHATRI, MADAN | 760 EASTON LANE ELK GROVE VILLAGE IL 60007 |
| LANE, ALLAN G. | 601 15TH STREET BUTNER NC 27509 |
| LAW OFFICE OF GEOFFREY V. WHITE | GEOFFREY V. WHITE SAN FRANCISCO CA 94104 |
| LYNCH, ARNOLD | 5512 NORTH HILLS DRIVE RALEIGH NC 27612 |
| MCROBERTS, CHRISTOPHER | 119 W. HALL ST. GRAPEVINE TX 76051 |
| MOORE III, JAMES V. | ASM CAPITAL, 7600 JERICHO TURNPIKE SUITE 302 WOODBURY NY 11797 |
| MOORE III, JAMES V. | 5609 N. HAWTHORNE WAY RALEIGH NC 27613 |
| MORRIS JAMES | ERIC J. MONZO WILMINGTON DE 19899-230 |
| MORRIS JAMES | ERIC J. MONZO WILMINGTON DE 19801-1494 |
| MORRIS, DON | 1609 RICHLAND DR. RICHARDSON TX 75081 |
| PARBHOO, DINESH | 5841 BERKSHIRE LN DALLAS TX 75209 |
| PATEL, SAURIN | 2613 SAGEHILL DR. FORT WORTH TX 76123 |
| RISNER, RENEA L. | 1063 FAWN TRAIL KINGSTON SPRINGS TN 37082 |
| SMITH, JAMES E. | 2285 BRIARWOOD TRAIL CUMMING GA 30041 |
| SMITH, SHELLIE B. | PO BOX 1967 COPPELL TX 75019 |
| STANULIS, ROBERT | 2312 WARRINGTON AVE. FLOWER MOUND TX 75028 |
| THOMAS, DELORIS S. | 101 EAST TIFFANY DRIVE, APT. #4 WEST PALM BEACH FL 33407 |
| VERNON, KAREN SUE | 4507 SPRINGHILL ESTATES DRIVE PARKER TX 75002 |
| ZELENACK-TERRELL, LOUISE | 3130 OLD HWY 31E WESTMORELAND TN 37186 |

**Total Creditor count  41**

**EXHIBIT E**

PERSONALIZED NOTICE PARTIES


FILED UNDER SEAL

**EXHIBIT F**

NORTEL
SERVICE LIST

| Claim Name | Address Information |
|---|---|
| MCCARTER & ENGLISH, LLP | WILLIAM F. TAYLOR, JR. RENAISSANCE CENTRE 405 N. KING STREET, 8TH FLOOR WILMINGTON DE 19801 |
| TOGUT, SEGAL & SEGAL LLP | ALBERT TOGUT ONE PENN PLAZA SUITE 3335 NEW YORK NY 10119 |
| TOGUT, SEGAL & SEGAL LLP | NEIL BERGER ONE PENN PLAZA SUITE 3335 NEW YORK NY 10119 |

**Total Creditor count  3**

NORTEL
SERVICE LIST

| Claim Name | Address Information |
| --- | --- |
| ELLIOTT GREENLEAF | RAFAEL X. ZAHRALDDIN-ARAVENA 1105 NORTH MARKET STREET SUITE 1700 WILMINGTON DE 19801 |
| ELLIOTT GREENLEAF | SHELLEY A. KINSELLA 1105 NORTH MARKET STREET SUITE 1700 WILMINGTON DE 19801 |

**Total Creditor count  2**

| Claim Name | Address Information |
|---|---|
| AKIN GUMP | FRED S. HODARA ESQ, RYAN C. JACOBS ESQ DAVID H. BOTTER ESQ ONE BRYANT PARK NEW YORK NY 10036 |
| ALLEN & OVERY LLP | KEN COLEMAN ESQ<br>LISA J.P. KRAIDIN. ESQ 1221 AVE OF THE AMERICAS 20TH FLOOR NEW YORK NY 10020 |
| BUCHANAN INGERSOLL & ROONEY | MARY F. CALOWAY 1105 NORTH MARKET STREET SUITE 1900 WILMINGTON DE 19801 |
| GOODMANS LLP | CHRIS ARMSTRONG BAY ADELAIDE CENTRE 333 BAY ST. STE 3400 TORONTO ON M5H 2S7 CANADA |
| GOWLING LAFLEUR HENDERSON | JENNIFER STAM<br>DERRICK TAY 1 FIRST CANADIAN PLACE 100 KING ST. WEST_STE. 1600 TORONTO ON M5X 1G5 CANADA |
| HERBERT SMITH | STEPHEN GALE EXCHANGE HOUSE PRIMROSE STREEET LONDON UK EC2A 2HS ENGLAND |
| MILBANK TWEED HADLEY & MCCLOY LLP | DENNIS F. DUNNE ESQ, THOMAS R. KRELLER ESQ, ALBERT A. PISA ESQ, ANDREW M. LEBLANC ESQ, ONE CHASE MANHATTAN PLAZA NEW YORK NY 10005 |
| NORTON ROSE | TONY REYES ROYAL BANK PLAZA SOUTH TOWER 200 BAY ST. STE. 3800 TORONTO ON M5J 2Z4 CANADA |
| OFFICE OF THE U.S. TRUSTEE | THOMAS P. TINKER. ESQ 844 KING ST STE 2207 LOCKBOX 35 WILMINGTON DE 19801-3519 |
| PACHULSKI STANG | LAURA DAVIS JONES<br>TIMOTHY P. CAIRNS 919 N. MARKET ST 17TH FLOOR WILMINGTON DE 19899-8705 |
| RICHARDS LAYTON & FINGER | MARK D. COLLINS ESQ, CHRISTOPHER M. SAMIS ESQ ONE RODNEY SQUARE, 920 N KING ST WILMINGTON DE 19801 |
| YOUNG CONAWAY | JAMES L. PATTON<br>EDWIN J. HARRON 1000 W. KING STREET WILMINGTON DE 19801 |

<div style="border:1px solid">

**Total Creditor count  12**

</div>