# **TAB 10**

01:12365497.1

Butterworths Company Law Cases/BCLC 1994 1/Re D'Jan of London Ltd; Copp v D'Jan - [1994] 1 BCLC 561

[1994] 1 BCLC 561

# Re D'Jan of London Ltd; Copp v D'Jan

**chancery division**

**hoffmann lj (sitting as an additional judge of the chancery division)**

**15, 17 june 1993**

*Director - Breach of duty - Whether director should be relieved - Misfeasance summons - Companies Act 1985, s 727 - Insolvency Act 1986, ss 212, 214.*

D, a director of a company, signed an insurance proposal which had been completed by another person and which he did not read. The insurers repudiated liability under the policy on the grounds that the proposal as completed contained inaccurate information. The liquidator brought an action against D alleging negligence.

**Held** - The duty of care that a director owed to a company at common law was equivalent to that in s 214(4) of the Insolvency Act 1986. In not reading the proposal before signing it, D had been negligent. Although all the shareholders could be taken to have known of the proposal, or if they had known they would have done nothing about it, they could not be taken to have in some way authorised the negligent act of D since they did not give any thought to the manner in which the proposal was completed. This was an appropriate case for the court to exercise its discretion under s 727 of the Companies Act 1985 in that the negligence of D was not gross and at the time the proposal was completed the only persons whose interests were foreseeably being put at risk were those of D and his wife. D should accordingly be only obliged to compensate the company to the amount of any sum that he would receive by way of dividend in the liquidation of the company.

### Case referred to in judgment

*Multinational Gas and Petrochemical Co v Multinational Gas and Petro-chemical Services Ltd* [1983] BCLC 461, [1983] 2 All ER 563, [1983] Ch 258, [1983] 3 WLR 492, CA.

#### Application

The applicant, Peter R Copp, liquidator of D'Jan of London Ltd (the company), applied by summons under s 212 of the Insolvency Act 1986 for a declaration that the respondent, Ogus D'Jan, a former officer and 99% shareholder in the company, should be liable to compensate the company for loss caused by his negligence and breach of duty. The facts are stated in the judgment.

*Marion Dimmons* (instructed by *Berwin Leighton*) for the applicant.

*Jonathan Russen* (instructed by *Ronald Fletcher Baker & Co*) for the respondent.

[1994] 1 BCLC 561 at 562

**17 June 1993. The following judgment was delivered.**

**HOFFMANN LJ.**

This is a summons under s 212 of the Insolvency Act 1986 by a liquidator against a former officer of the company. This is a summary procedure which used to be called a misfeasance summons but has been extended to include breaches of any duty including the duty of care. The liquidator alleges that the respondent Mr D'Jan was negligent in completing and signing a proposal form for fire insurance with Guardian Royal Exchange Assurance plc. As a result, the insurers repudiated liability for a fire at the company's premises in Cornwall which had destroyed stock said to be worth some £174,000. The company is insolvent, having a deficiency as regards unsecured creditors of about £500,000. The liquidator therefore brings these proceedings for the benefit of the unsecured creditors.

Mr D'Jan signed the insurance proposal on 18 September 1986. It was headed 'Business Insurances Proposal'. Mr D'Jan signed on the front page, under the words:

> 'I declare that to the best of my knowledge and belief all the statements and particulars made with regard to this proposal are true and I agree that this proposal shall be the basis of a contract of insurance to be expressed in the usual terms of the policy issued by Guardian Royal Exchange Assurance plc.'

On the same page the form required certain information to be filled in and also asked three specific questions, including:

> '7. Have you or any director or partner ... been director of any company which went into liquidation ... ?'

The question was answered 'No'. Mr D'Jan admits that this was wrong. In the previous year, a company called Harleyshield Ltd, of which Mr D'Jan was a director, had gone into insolvent liquidation. And there had been a couple of other insolvencies about five years earlier. The liquidator says that Mr D'Jan gave a wrong answer to another question as well, but as this involves construing the rather obscure language in which the question is phrased and as Mr Russen, who appeared for Mr D'Jan, realistically accepts that the wrong answer to question 7 was enough to entitle the insurers to repudiate, I need not say more about the other question.

Mr D'Jan says he realises - perhaps more clearly now than he did at the time - the importance of giving correct answers on insurance proposals. But he says that he did not fill in the form himself or read it before he signed. It was filled in by his insurance broker, one Tarik Shenyuz, who had been handling his personal and corporate insurance affairs for about five years. Mr D'Jan says that Mr Shenyuz had demonstrated his competence by obtaining good rates and recommending him to loss adjusters who had obtained satisfactory settlements on his claims. So he trusted Mr Shenyuz to fill in the form correctly.

Mr Shenyuz flatly contradicted this account of how the form came to be signed. He says that he simply delivered the form to Mr D'Jan's premises and took it away again, acting as no more than a messenger between the company and the firm of insurance brokers in Surrey for whom he was at the time acting as sub-agent. He says that Mr D'Jan's accountant Mr Ekrem was well versed

*[1994] 1 BCLC 561 at 563*

in insurance matters and that the company would have needed no help in filling out the form.

Both Mr D'Jan and Mr Shenyuz are highly intelligent men who gave their evidence with confidence and the conflict is not easy to resolve. But I prefer the evidence of Mr D'Jan. He did not strike me as a man who would fill in his own forms. I think he would have wanted Mr Shenyuz to earn his commission by attending to these matters and I accept that he signed in the expectation that Mr Shenyuz would have completed the form correctly.

Nevertheless I think that in failing even to read the form, Mr D'Jan was negligent. Mr Russen said that the standard of care which directors owe to their companies is not very exacting and signing forms without reading them is something a busy director might reasonably do. I accept that in real life, this often happens. But that does not mean that it is not negligent. People often take risks in circumstances in which it was not necessary or reasonable to do so. If the risk materialises, they may have to pay a penalty. I do not say that a director must always read the whole of every document which he signs. If he signs an agreement running to 60 pages of turgid legal prose on the assurance of his solicitor that it accurately reflects the board's instructions, he may well be excused from reading it all himself. But this was an extremely simple document asking a few questions which Mr D'Jan was the best person to answer. By signing the form, he accepted that he was the person who should take responsibility for its contents. In my view, the duty of care owed by a director at common law is accurately stated in s 214(4) of the Insolvency Act 1986. It is the conduct of -

> 'a reasonably diligent person having both - (*a*) the general knowledge, skill and experience that may reasonably be expected of a person carrying out the same functions as are carried out by that director in relation to the company, and (*b*) the general knowledge, skill and experience that that director has.'

Both on the objective test and, having seen Mr D'Jan, on the subjective test, I think that he did not show reasonable diligence when he signed the form. He was therefore in breach of his duty to the company.

Mr Russen said that nevertheless the company could not complain of the breach of duty because it is a principle of company law that an act authorised by all the shareholders is in law the act of the company: see *Multinational Gas and Petrochemical Co v Multinational Gas and Petrochemical Services Ltd* [1983] BCLC 461, [1983] Ch 258. Mr D'Jan held 99 of the 100 issued ordinary shares and Mrs D'Jan held the other. Mr D'Jan must be taken to have authorised the wrong answer in the proposal because he signed it himself. As for Mrs D'Jan, she had never been known to object to anything which her husband did in the management of the company. If she had known about the way he signed the form and it was too late to put the matter right the chances are that she would also have approved. She could hardly have brought a derivative action to sue her husband for negligence because he could have procured the passing of a resolution absolving himself from liability.

The difficulty is that unlike the *Multinational* case, in which the action alleged to be negligent was specifically mandated by the shareholders, neither

*[1994] 1 BCLC 561  at  564*

Mr nor Mrs D'Jan gave any thought to the way in which the proposal had been filled in. Mr D'Jan did not realise that he had given a wrong answer until the insurance company repudiated. By that time the company was in liquidation. In my judgment the *Multinational* principle requires that the shareholders should have, whether formally or informally, mandated or ratified the act in question. It is not enough that they probably would have ratified if they had known or thought about it before the liquidation removed their power to do so.

It follows that Mr D'Jan is in principle liable to compensate the company for his breach of duty. But s 727 of the Companies Act 1985 gives the court a discretionary power to relieve a director wholly or in part from liability for breaches of duty, including negligence, if the court considers that he acted honestly and reasonably and ought fairly to be excused. It may seem odd that a person found to have been guilty of negligence, which involves failing to take reasonable care, can ever satisfy a court that he acted reasonably. Nevertheless, the section clearly contemplates that he may do so and it follows that conduct may be reasonable for the purposes of s 727 despite amounting to lack of reasonable care at common law.

In my judgment, although Mr D'Jan's 99% holding of shares is not sufficient to sustain a *Multinational* defence, it is relevant to the exercise of the discretion under s 727. It may be reasonable to take a risk in relation to your own money which would be unreasonable in relation to someone else's. And although for the purposes of the law of negligence the company is a separate entity which Mr D'Jan owes a duty of care which cannot vary according to the number of shares he owns, I think that the economic realities of the case can be taken into account in exercising the discretion under s 727. His breach of duty in failing to read the form before signing was not gross. It was the kind of thing which could happen to any busy man, although, as I have said, this is not enough to excuse it. But I think it is also relevant that in 1986, with the company

solvent and indeed prosperous, the only persons whose interests he was foreseeably putting at risk by not reading the form were himself and his wife. Mr D'Jan certainly acted honestly. For the purposes of s 727 I think he acted reasonably and I think he ought fairly to be excused for some, though not all, of the liability which he would otherwise have incurred. Mr D'Jan has proved as an unsecured creditor in the sum of £102,913. He has been paid an interim dividend of 40p in the pound and the liquidator has paid a further dividend of 20p but withheld payment to Mr D'Jan pending the resolution of these proceedings. In my view, having been responsible for the additional shortfall in respect of unsecured creditors, I do not think that he should be allowed any further participation in competition with ordinary trade creditors. On the other hand, I do not think it would be fair to ask him to return what he has received or make a further contribution out of his own pocket to the company's assets. I therefore declare that Mr D'Jan is liable to compensate the company for the loss caused by his breath of duty in an amount not exceeding any unpaid dividends to which he would otherwise be entitled as an unsecured creditor.

*Order accordingly.*

Paul Magrath Esq Barrister.