# **TAB 13**

Butterworths Company Law Cases/BCLC 1988 /West Mercia Safetywear Ltd (in liq) v Dodd and another - [1988] BCLC 250

[1988] BCLC 250

## West Mercia Safetywear Ltd (in liq) v Dodd and another

**COURT OF APPEAL, CIVIL DIVISION**

**DILLON, CROOM-JOHNSON LJJ, AND CAULFIELD J**

**19 NOVEMBER 1987**

*Misfeasance - Director making a transfer by way of fraudulent preference - Company known to be insolvent - Whether director in breach of duty - Companies Act 1948, s 333 (Insolvency Act 1986, s 212(1)).*

West Mercia Safetywear Ltd (West Mercia) was a wholly-owned subsidiary of A J Dodd & Co Ltd (Dodd). D was a director of both companies. Both companies banked with the same bank. Dodd's overdraft at the bank was guaranteed personally by D. In May 1984 West Mercia owed Dodd about £30,000. At this time both companies were in financial difficulties and an accountant told D that the companies' bank accounts were not to be operated. On 21 May D transferred £4,000 from the West Mercia account to the Dodd account. In June both companies went into liquidation. The liquidator of West Mercia applied for a declaration that D was guilty of misfeasance and breach of trust and that he be ordered to repay the £4,000 transferred from West Mercia to Dodd. The judge held that although D had acted improperly he had not breached any duty to West Mercia because the transfer of £4,000 was payment in part of a debt owed by West Mercia to Dodd and was not therefore a misapplication of West Mercia's assets. The liquidator appealed.

**Held -** Once a company was insolvent the interests of the creditors overrode those of the shareholders since the company's assets belonged in a practical sense to the creditors who could displace the power of the shareholders and directors to deal with them. Since West Mercia was known by D to be insolvent when he caused £4,000 to be transferred from its account to Dodd and the transfer was a fraudulent preference made solely to relieve D of personal liability under his guarantee in disregard of the interests of the general creditors of West Mercia, D had breached his duty. Accordingly, the appeal would be allowed and the declaration sought made and D ordered to repay the £4,000 with interest. The order would be made subject to a direction that in the distribution of the assets of West Mercia to unsecured creditors the debt due from West Mercia to Dodd was to be notionally increased by £4,000 as if there had been no fraudulent preference, and any dividend attributable to that sum was to be recouped to D rather than Dodd.

### Cases referred to in judgments

*Kinsela v Russell Kinsela Pty Ltd* (*in liq*) (1986) 4 NSWLR 722, NSW CA.

*Leeds and Hanley Theatres of Varieties Ltd, Re* [1904] 2 Ch 45.

*Multinational Gas and Petrochemical Co v Multinational Gas and Petrochemical Services Ltd* [1983] BCLC 461, [1983] 2 All ER 563, [1983] Ch 258, [1983] 3 WLR 492, CA.

*Washington Diamond Mining Co, Re* [1893] 3 Ch 95, CA.

*[1988] BCLC 250  at  251*

### Appeal

Nigel Halls, the liquidator of the property of West Mercia Safetywear Ltd, appealed against the judgment of his Honour Judge Roy Ward QC given in the Worcester County Court on 29 April 1987 dismissing an application by the liquidator for (1) a declaration that the first respondent, Albert James Dodd, a director of the company, was guilty of misfeasance and breach of trust in relation to the company in obtaining and transferring the sum of £4,000 to the overdrawn account of a company called A J Dodd & Co Ltd of which he was also a director, and (2) an order for the repayment of that sum and interest. The second respondent, Peter Prescott, a co-director of West Mercia, did not take part in the appeal. The facts are set out in the judgment of Dillon LJ.

*Mark Phillips* for the liquidator.

*Timothy A Jones* for Mr Dodd.

**19 November 1987. The following judgment was delivered.**


**DILLON LJ.**


This is an appeal from a decision of his Honour Judge Roy Ward QC given in the Worcester County Court on 19 April 1987. The question he had to decide was a question concerning fraudulent preference and misfeasance arising in relation to the liquidation of a company called West Mercia Safetywear Ltd. The present appellant is the liquidator of that company. The respondent to the appeal is a Mr Albert James Dodd, who was at the material time a director of that company.

There is another company involved of which Mr Dodd was also a director, called A J Dodd & Co Ltd. The West Mercia company was, on the affidavits, a wholly-owned subsidiary of the Dodd company.

Both companies banked with Lloyds Bank. The account of the West Mercia company was in credit. The account of the Dodd company was very considerably overdrawn. The bank had a charge to secure the account of the Dodd company on the book debts of the Dodd company, and it also had a guarantee of the Dodd company's account from Mr Dodd himself. The book debts of the Dodd company included a debt which in early May 1984, the relevant time, amounted to about £30,000 due to the Dodd company from the West Mercia company.

In May 1984 both the West Mercia company and the Dodd company were in financial difficulties and, as Judge Ward found, insolvent. The directors, including Mr Dodd, called in an accountant, Mr Nigel Halls, to advise them and to take any necessary steps towards the liquidation of the companies. Mr Halls subsequently became liquidator of both companies when they were put into liquidation, and he is indeed the present appellant.

The evidence clearly establishes that Mr Halls explained very clearly to Mr Dodd and his co-director of the West Mercia company, a Mr Prescott, with whom this appeal is not concerned, that the company bank accounts of the West Mercia company were not thereafter to be operated. The judge says, and I entirely agree:

> 'I cannot believe that the directors thought that, whilst cheques were not to be drawn on either account, *transfers* of money between accounts would be permissible.'

*[1988] BCLC 250  at  252*

The necessary steps were taken to put both companies into creditors' voluntary liquidation, and the requisite

meetings to that end were held on 4 June 1984. In the meantime, however, on 21 May 1984 Mr Dodd instructed Lloyds Bank to transfer £4,000, which had just been paid in by a debtor to the West Mercia company's account, to the overdrawn account of the Dodd company. The plain and obvious intention of that was to reduce the overdraft of the Dodd company which Mr Dodd had personally guaranteed.

The liquidations proceeded. The bank refused to repay the £4,000. The Dodd company had no other assets available to repay the £4,000. Accordingly in due course, by a notice of motion issued on 30 January 1985, the liquidator of the West Mercia company applied in the Worcester County Court for a declaration that Mr Dodd was guilty of misfeasance and breach of trust in relation to the West Mercia company in obtaining and transferring the £4,000 to the Dodd company on 21 May 1984. The notice of motion asked also for an order for repayment of that sum with interest at 12% per annum from 21 May 1984.

To my mind it is quite clear that there was a fraudulent preference of the Dodd company. It follows that there was misfeasance on the part of Mr Dodd as a director who owed a fiduciary duty to the West Mercia company in making that transfer by way of fraudulent preference: see the decision of this court in *Re Washington Diamond Mining Co* [1893] 3 Ch 95 esp at 115 per Kay LJ.

The judge nevertheless felt that, although Mr Dodd had acted improperly, he had not misapplied any assets of the West Mercia company because he had used the assets merely to pay in part a debt owed by the West Mercia company to the Dodd company. He therefore concluded that he could not see that Mr Dodd had been in breach of any duty of care, fiduciary or otherwise, to the West Mercia company or in relation to that company. On that ground he held that the proceedings were misconceived. In reaching that conclusion he relied in particular on some comments I had made in the case of *Multinational Gas and Petrochemical Co v Multinational Gas and Petrochemical Services Ltd* [1983] BCLC 461, [1983] 2 All ER 563, [1983] Ch 258. The *Multinational* case was, however, a wholly different case from the present. In the present case the West Mercia company was at the relevant time insolvent to the knowledge of the directors. They had been expressly told not to deal with the company's bank account, and Mr Dodd had, in fraud of the creditors of the company, made the transfer to the Dodd company's account for his own sole benefit in relieving his own personal liability under his guarantee. In the *Multinational* case, at the time of the transaction which was in question, the company concerned was amply solvent, and what the directors had done at the bidding of the shareholders had merely been to make a business decision in good faith, and act on that decision. It subsequently turned out to be a bad decision, but the position had to be decided on the facts at the earlier stage where the company was amply solvent and the parties were acting in good faith.

We have been referred to quite a number of authorities on this topic. For my part I find helpful, and would approve, the statement of Street CJ in *Kinsela v Russell Kinsela Pty Ltd* (*in liq*) (1986) 4 NSWLR 722 at 730, where he said:

> 'In a solvent company the proprietary interests of the shareholders entitle them as a general body to be regarded as the company when questions of the duty of directors arise. If, as a general body, they authorise or ratify a particular action of the directors, there can be no

*[1988] BCLC 250  at  253*

> challenge to the validity of what the directors have done. But where a company is insolvent the interests of the creditors intrude. They become prospectively entitled, through the mechanism of liquidation, to displace the power of the shareholders and directors to deal with the company's assets. It is in a practical sense their assets and not the shareholders' assets that, through the medium of the company, are under the management of the directors pending either liquidation, return to solvency, or the imposition of some alternative administration.'

In the present case, therefore, in my judgment Mr Dodd was guilty of breach of duty when, for his own purposes, he caused the £4,000 to be transferred in disregard of the interests of the general creditors of this insolvent company. Therefore the declaration sought in the notice of motion ought to be made as against Mr Dodd.

The question then remains: what financial relief ought to be granted against him? Prima facie the relief to be granted where money of the company has been misapplied by a director for his own ends is an order that he

repay that money with interest, as in *Re Washington Diamond Mining Co*. The section in question, however, s 333 of the Companies Act 1948, provides that the court may order the delinquent director to repay or restore the money, with interest at such rate as the court thinks fit, or to contribute such sum to the assets of the company by way of compensation in respect of the misapplication as the court thinks fit. The court has a discretion over the matter of relief, and it is permissible for the delinquent director to submit that the wind should be tempered because, for instance, full repayment would produce a windfall to third parties, or, alternatively, because it would involve money going round in a circle or passing through the hands of someone else whose position is equally tainted.

In the present case counsel for Mr Dodd (Mr Jones) has taken a much bolder course. He has submitted that, on the facts of this case, the misapplication of £4,000 of the company's money for Mr Dodd's own benefit has not caused any loss either to the company or, through the company and its liquidator, to any of the creditors of the company. In the course of the trial in the court below, the liquidator put in evidence various documents, including an estimated statement of affairs of the West Mercia company as at 14 May, 1984, which was just before the transfer of the £4,000, with an accompanying deficiency account and list of preferential and unsecured creditors. These were essentially the statements prepared with a view to the liquidation of the company, probably by the liquidator himself on the information supplied by the directors, and adopted by the directors for placing before the creditors at the statutory creditors' meeting.

These were necessarily and properly put in evidence to show that the West Mercia company was indeed insolvent to the knowledge of the directors at the time Mr Dodd made the transfer of the £4,000. The liquidator did not put in evidence anything as to the actual realisation in the liquidation, and counsel for Mr Dodd accordingly submitted that, on the basis of these estimated figures, an adjustment could be made to exclude the Dodd company from receipt of any dividend until the £4,000 paid to it had been recouped and, if that was done, it would follow that there was nothing needed to be provided for the liquidator by Mr Dodd in respect of the £4,000.

*[1988] BCLC 250 at 254*

The basis of the calculation is this. The estimated total assets of the West Mercia company are shown at 14 May, 1984 as £8,018, the preferential creditors are then given as £2,696, leaving a balance after payment of the preferential creditors of £5,322. Counsel for Mr Dodd submits that that represents the sum available for payment of the general creditors because, even if £4,000 was in fact then wrongly paid out, that left £1,322 of realisations and, if £4,000 were to be repaid now, albeit without interest, that would bring the fund up to £5,322. It is then said that of that only between one-sixth and one-seventh is attributable to unsecured creditors other than the Dodd company, which makes out of £5,322 a sum somewhere in the region of £650 or £750 which is sufficiently franked by the £1,322 of uncommitted assets.

Of course, an estimated statement of affairs made over three years ago is wholly unreliable as a basis for considering the actual position in the company. Counsel for Mr Dodd did not pursue further inquiry into the actual realisations and payments of the liquidator, but the liquidator did point out in evidence that the statement of affairs made no provision for the costs and expenses of the winding up. Those costs and expenses of course rank ahead of any payment to the unsecured creditors. They would include all the necessary expenses of realisation, including the liquidator's own remuneration, and they would include the costs of litigation. It is not open to Mr Dodd to assert that these proceedings were not properly brought by the liquidator. They plainly were, since there had been a blatant fraudulent preference and misfeasance. Accordingly, all the expenses that the liquidator has incurred in this litigation and does not recover from Mr Dodd himself would have to be met out of the actual cash assets of the company, and it seems therefore in the highest degree unlikely that the £1,322 supposed estimated surplus assets, if indeed realised, would be sufficient to meet the needs for dividends to the unsecured creditors, other than the Dodd company, and payment of the expenses of the liquidation.

I take the view, notwithstanding that the judge accepted the submission of counsel for Mr Dodd that no loss to any creditor had been shown, that counsel, on whose client the onus lay, has failed to establish that there is no loss to be met by his client. Indeed, it would be surprising if there were no loss where there was such a blatant misfeasance.

The calculations of counsel for Mr Dodd follow the line which was adopted by Buckley J in the case of *Re Leeds and Hanley Theatres of Varieties Ltd* [1904] 2 Ch 45. But that was a very much simpler case, because in that case there were only two companies involved and not a further individual. It was a working out of the liabilities between the two companies, both in liquidation, where one was the creditor of the other for a sum due on debentures, and the other was the creditor of the one for the balance of a sum ordered to be paid for misfeasance. The court was concerned with the way round that should be dealt with as a matter of accounting between the two companies, and there was no question of money being sought from a third party to make good the loss from the misfeasance.

What Buckley J was seeking to do, as I follow his judgment, in the *Leeds and Hanley Theatres of Varieties* case was to apply the fair method of administration, what he called 'proper administration', in the circumstances of that particular case; not to lay down a course of administration to be followed through thick and thin in cases where the circumstances are not the same.

In the present case, if the whole amount of the £4,000 and interest is recouped

*[1988] BCLC 250  at  255*

to the liquidator by Mr Dodd and is distributed by the liquidator after payment of any outstanding expenses pro rata among the unsecured general creditors of the West Mercia company, including the preference of the £4,000, the result would be that the unsecured creditors of the West Mercia company would receive a larger dividend than they would have received if the fraudulent preference exercise had never happened. That would be unfair to Mr Dodd, but it would also be most unfair to the unsecured creditors, other than the Dodd company, if for the exoneration of Mr Dodd an arbitrary figure were to be imposed from the statement of affairs without regard to what the unsecured creditors should actually receive after the payment of the actual expenses of liquidation properly chargeable in the liquidation.

In my judgment the appropriate course of administration in the present case is to order Mr Dodd to repay the £4,000 with interest and to direct that in the distribution of the assets of the West Mercia company to unsecured creditors the debt due from the West Mercia company to the Dodd company is to be taken as notionally increased by £4,000 to what it would have been if there had not been a fraudulent preference, and then any dividend attributable to the extra £4,000 thus added back to the debt of the Dodd company is to be recouped to Mr Dodd rather than being paid to the Dodd company. That, as I see it, is a rough and ready way of achieving justice on both sides.

Accordingly, for my part I would allow the appeal, set aside the order of the judge, make the declaration sought in the notice of motion, and make the order for payment of the £4,000 and interest with the administrative directions which I have indicated.

**CROOM-JOHNSON LJ.**

I agree.

**CAULFIELD J.**

I agree.

*Appeal allowed.*

Solicitors: *Penningtons Ward Bowie*, agents for *Flint Hand*, Gloucester (for the liquidator); *Alexander & Co*, Worcester (for Mr Dodd).

Azza Abdullah Barrister.