## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------x
                                      :
In re:                                :      Chapter 11
                                      :
                                      :      Case No. 09-10138(KG)
                                      :
Nortel Networks Inc., et al.,¹        :
                                      :      (Jointly Administered)
                     Debtors.         :
                                      :
------------------------------------------------------x
```

## THE OFFICIAL COMMITTEE OF RETIRED
## EMPLOYEES' FIRST REQUEST FOR PRODUCTION
## OF DOCUMENTS DIRECTED TO THE DEBTORS

PLEASE TAKE NOTICE, pursuant to Rules 26 and 34 of the Federal Rules of

Civil Procedure, Rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy

Procedure, and the Local Rules of this Court (collectively, the "Applicable Rules"), that

the Official Committee of Retired Employees of the above-captioned debtors hereby

makes this request (the "Request") that Nortel Networks Inc. and its affiliated debtors,

as debtors and debtors in possession in the above-captioned Chapter 11 case, produce

the following documents for inspection and copying at the offices of Togut, Segal &

Segal, LLP, One Penn Plaza, Suite 3335, New York, NY 10119, and McCarter & English,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

LLP, 405 N. King Street, 8th Floor, Wilmington, DE 19801, **no later than August 24, 2012**

in accord with the Court's scheduling order dated August 1, 2012 [Docket No. 8084].

## DEFINITIONS

1.      The use of the singular form of any word includes the plural and vice versa.

2.      "All," "any," and "each" shall each be construed to include all, any, and each.

3.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a request all documents that might otherwise be construed to be outside of its scope.  "And" and "or" shall also be construed either disjunctively or conjunctively in any definition as necessary to give the definition its broadest scope.

4.      "Bondholder Group" means the ad hoc group of bondholders holding claims against certain of the Debtors that is jointly represented by the Milbank Tweed firm in the Chapter 11 case.

5.      The term "Chapter 11 Case" means the above-captioned, jointly administered chapter 11 cases.

6.      The term "Chapter 11 plan" means a plan of reorganization or liquidation approved under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*

2

7.    The term "communication" means any transmission of words, images, facts, numbers or ideas, including but not limited to any transmission in or by means of a document (as defined below), spoken word, conversation, conference, discussion, interview, audio or video recording, report or meeting, or any email, telephone, facsimile or other electronic transmission.

8.    The term "concerning" means relating to, referring to, describing, mentioning, evidencing or constituting.

9.    The terms "Debtor" and "Debtors" refer to any one or more of the debtors in the Chapter 11 Case, any of their predecessor entities, any parents, subsidiaries, members or affiliates of any of the foregoing, and any directors, officers, employees, representatives, advisors, agents, attorneys, associates or persons acting for or on behalf of any of the foregoing.

10.    The term "document" shall be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes any written, printed, typed, electronic, or other recorded matter of any type or nature, however produced or reproduced, including information recorded in paper, digital, analog, graphic, electronic or photographic form; writings; emails; drawings; graphs; tables; photographs; telephone logs and records; electronic or computerized information, data or data compilations; term sheets; pitch books; financial records and books of account; journals; ledgers; audio recordings; video recordings; transcripts; memoranda; calendars; tables; invoices; appointment books; computer databases; PowerPoint or other presentations; CDs or DVDs; pamphlets; personnel files;

3

correspondence; notes; bills; invoices; and communications of any kind. A draft or non-identical copy is a separate document within the meaning of this term.

11.    The term "identify," when used in reference to:

(a)    a person, means to state (i) his, her, or its full name; present or last known address, present or last known email address and telephone number; and (ii) if a natural person, his or her present business affiliation and position or title;

(b)    a document or communication, means to state (i) the date; (ii) the author(s), signatory or signatories; (iii) the recipient(s) or addressee(s); (iv) the type of document (i.e., correspondence, memorandum, etc.); (v) the contents with sufficient particularity to enable the propounding party to confirm the document's identification; and (vi) its present or last known custodian and location.

12.    The term "includes" means "includes but is not limited to," and "including" means "including but not limited to."

13.    The term "person" means any natural person or legal entity, including but not limited to any partnership, corporation, unincorporated association, professional association or other form of business or governmental entity or association.

14.    The term "Plan" means any agreement, plan, fund or program which offers, promises or provides "Retiree Benefits" as defined below through the purchase of insurance or otherwise, or any employee welfare benefit plan, fund or program established or maintained to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or

4

hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services.

15.    The term "Potential Retiree" means any current employee of the Debtors who (i) was age 50 or older with at least five years of service as January 1, 2006; or (ii) was not age 50 or older with at least five years of service as January 1, 2006, but (a) was hired after January 1, 2008, (b) is age 50 or older with at least five years of service as of the date of retirement, and (c) is a member of the active employees' medical plan immediately before retirement.

16.    The "Proposal" refers to the document identified as the "Proposal" in the Debtors' Termination Motion (as defined below).

17.    The term "Retiree" means (a) any former employee of the Debtors who has retired, (b) any Potential Retiree, and (c) any present or former spouse or dependent of a former employee of the Debtors who has retired or of a Potential Retiree.

18.    The term "Retiree Benefit" means any payment to any entity or person for the purpose of providing or reimbursing payments for retired employees, or their spouses or dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death.

19.    The term "Retiree Claim" means any and all actual or potential claims, demands, causes of action, debts, liabilities or obligations, whether based on any legal or equitable theory or otherwise, including, but not limited to suits in contract, tort or equity, whether arising under contract, the Employee Retirement Income Security Act

of 1974 (ERISA), the Consolidated Omnibus Budget Reconciliation Act (COBRA), or any

other statute, rule, regulation, common law or otherwise, and whether arising under the

laws of the United States, any political subdivision thereof or the laws of any other

jurisdiction, in all cases relating to:

i. Any benefits, other obligation or other claims arising under or relating to
Retiree Welfare Plans (as defined below) or Retiree Benefits;

ii. The administration of Retiree Welfare Plans, including, but not limited to, the
calculation of Retiree Benefits, the application of offsets against Retiree Benefits, the
denial of Retiree Benefits, the determination of eligibility to receive Retiree Benefits, the
interpretation of Retiree Welfare Plans and the drafting of Retiree Welfare Plans; or

iii. The past, present or future amendment, modification and/or termination of
any Retiree Welfare Plan and/or any benefits or coverage thereunder.

20.    The term "Retiree Claim Exclusions" means:

(a)    Claims arising from or relating to the Nortel Networks Severance

Allowance Plan or the Nortel Networks Enhanced Severance Allowance Plans,

including related fringe benefits;

(b)    Claims arising under or relating to the Nortel Networks U.S. Deferred

Compensation Plan or the Northern Telecom Inc. Senior Management Incentive Award

Program;

(c)    Claims for qualified pension benefits arising under or relating to the

Nortel Networks Retirement Income Plan, Nortel Networks Pension Service Plan,

Nortel Networks Cash Balance Plan, Northern Telecom Inc. Retirement Plan for

Employees or the Nortel Networks Capital Accumulation and Retirement Program,

which are properly asserted only against the Pension Benefit Guaranty Corporation;

(d)    Claims for non-qualified pension benefits arising under or relating to the

Nortel Networks Retirement Income Plan Restoration Plan, Nortel Networks Cash

Balance Restoration Plan, Northern Telecom Inc. Excess Pension Plan, Nortel Networks

Long-Term Investment Restoration Plan, Nortel Networks Supplementary Executive

Retirement Plan, the Nortel Networks Special Pension Benefits Plan and the Nortel

Networks Special Pension Credit Plan;

(e)　　Except to the extent described above, valid claims for reimbursement for

benefits covered by and approved pursuant to the Retiree Welfare Plans incurred prior

to the Termination Date that are properly brought prior to the expiration of the run-off

period (as amended);

(f)　　Claims for expatriate benefits and relocation expenses;

(g)　　Claims for the account balance currently vested in an individual's account

under the Nortel Networks Long-Term Investment Plan or Northern Telecom Inc. Thrift

Savings Plan; and

(h)　　Claims directly arising under a written employment agreement between

an individual Retiree and the Debtors that are wholly unrelated to life insurance, death

benefits, retirement payments, medical insurance, long-term care insurance or any other

Retiree Claims.

21.　　"Retiree Committee" means the Official Committee of Retired Employees

of the Debtors appointed in the Chapter 11 Case by the Office of the United States

Trustee for the District of Delaware on August 2, 2011.

22.　　The term "Retiree Welfare Plans" means the Nortel Networks Inc. Retiree

Medical Plan, the Nortel Networks Inc. Retiree Life Insurance and Long-Term Care

Plan, predecessor plans and other formal or informal benefit plans, agreements,

7

arrangements or programs (including plans, agreements, arrangements or programs

that are funded through the purchase of insurance) or arrangements for current or

future retired employees, their surviving spouses and eligible dependents, including

plans, arrangements, agreements or programs for medical, surgical, or hospital care

benefits, or benefits in the event of sickness, accident, disability, or death collectively

and in each case as amended or modified from time to time.

23.    "SPD" means "summary plan description."

24.    "Termination Motion" means the Debtors' Motion For Entry Of An Order

Terminating Retiree Benefits And Approving A Settlement Proposal Pursuant To 11

U.S.C. § 1114 dated July 30, 2012.

25.    "UCC" means the Official Committee of Unsecured Creditors appointed

in the Chapter 11 Case by the Office of the United States Trustee for the District of

Delaware on January 26, 2009.

26.    "VEBA" means a voluntary employees' beneficiary association within the

meaning of section 501(c)(9) of the Internal Revenue Code of 1986, as amended.

27.    "You" means, and "your" refers to, the Debtors.

## INSTRUCTIONS

1.    In response to each request for documents set forth below (each, a

"Document Request"), produce each responsive document in the Debtors' possession,

custody or control, including documents in the possession, custody or control of the

Debtors' affiliates and the Debtors' present or former attorneys, accountants and other

agents or representatives.

2.      If any document responsive to these requests is withheld under a claim of privilege or immunity from disclosure, furnish a list specifying each such document and setting forth the information required to be furnished by the Applicable Rules, including:

(a)      the reason for withholding the document;

(b)      a statement of the basis for the claim of privilege, work product or other basis for nondisclosure;

(c)      a brief description of the document including:

i.       the date and type of the document;

ii.      the number of pages, attachments, and appendices;

iii.     the names of the author, authors or preparers and an identification of each such person's employment title and position at the time;

iv.      the name of each person who was sent, shown, or copied on the document, who sent or received the document, or who had access to or custody of the document, together with an identification of each such person's employment title and position at the time;

v.       each present location and custodian of the document;

vi.      the number of pages of the document

vii.     a description of the subject matter and content of the document and, if the document is concerning a meeting or conversation, a description of the time, date and location of and participants in the meeting or conversation.

9

3.     If any document requested herein was formerly in the Debtors' possession, custody or control but, in whole or in part, has been lost, destroyed or otherwise disposed of, identify the document or its missing part and provide the information specified below:

(a)     the date and type of the document;

(b)     the names of the author, authors or preparers and an identification of each such person's employment title and position at the time;

(c)     the name of each person who was sent, shown, or copied on the document, who sent or received the document, or who had access to or custody of the document, together with an identification of each such person's employment title and position at the time;

(d)     each present location and custodian of the document;

(e)     the number of pages of the document;

(f)     a description of the subject matter and content of the document, and if the document is concerning a meeting or conversation, a description of the time, date and location of and participants in the meeting or conversation;

(g)     a description of the date on which the document was lost or destroyed and, if destroyed, the conditions of and reason(s) for the destruction and each person requesting, performing or having knowledge of the destruction.

4.     All documents should be produced as they are kept in the usual course of the Debtors' business or shall be organized and labeled to correspond to the categories in this Request.  A Document Request shall be deemed to include a request for any and

all file folders within which each responsive document was contained and transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

5.      Documents attached to each other should not be separated.

6.      Unless otherwise noted, each Document Request calls for documents dated, created, sent, received, reviewed or concerning any date after December 31, 1981. To the extent that any document responsive to a Document Request concerns a retiree who retired prior to January 1, 1982, that document also should be produced.

7.      Each Document Request shall be continuing, and supplemental responses shall be served in accord with Rule 26 of the Federal Rules of Civil Procedure and Rule 7026 of the Federal Rules of Bankruptcy Procedure.

## DOCUMENT REQUESTS

Please produce the following documents:

1.      All documents dated, created, sent, received or reviewed at any time after January 1, 2008 concerning whether termination of any Retiree Benefit or Retiree Welfare Plan is, was or would be necessary to permit the reorganization or orderly liquidation of the Debtors of the confirmation of a Chapter 11 plan.

2.      All documents dated, created, sent, received or reviewed at any time after January 1, 2008 concerning whether termination of any Retiree Benefit or Retiree Welfare Plan is, was or would be necessary for any reason or to accomplish any purpose or goal.

11

3.      All documents concerning whether any Retiree Benefits, Plan or Retiree Welfare Plan can or should be provided by the Debtors after December 31, 2012.

4.      All documents concerning any additional costs that the Debtors would or would be likely to incur if the Retiree Welfare Plans are not terminated on or before December 31, 2012, including any analysis of those additional costs.

5.      All documents dated, created, sent, received or reviewed at any time after January 1, 2008 concerning any cost, benefit, advantage or disadvantage, financial or otherwise, incurred, projected or expected to be incurred in connection with providing any Retiree Benefit or continuing or modifying any Plan or Retiree Welfare Plan.

6.      All documents dated, created, sent, received or reviewed at any time after January 1, 2008 concerning any cost, benefit, advantage or disadvantage, financial or otherwise, incurred, projected or expected to be incurred in connection with any Retiree Claims, excluding any Retiree Claim Exclusions.

7.      All documents dated, created, sent, received or reviewed at any time after January 1, 2008 concerning any potential cost, benefit, advantage or disadvantage, financial or otherwise, that might be incurred in connection with providing any Retiree Benefit or continuing or modifying any Plan or Retiree Welfare Plan.

8.      All documents dated, created, sent, received or reviewed at any time after January 1, 2008 concerning any potential or cost or disadvantage, financial or otherwise, that might be incurred in connection with any Retiree Claims, excluding any Retiree Claim Exclusions.

12

9.      A complete identification in excel spreadsheet form as of the date of this Request of the Debtors' Retiree Welfare Plan participants, including an identification of all individuals receiving or potentially entitled to receive Retiree Benefits under any Plan or Retiree Welfare Plan, and for each such individual, the individual's name, address, elections relevant to Retiree Benefits, and all further types of information concerning each such individual that the Debtors provided to the Retiree Committee or its professionals previously in their "census" of Retiree Benefits. The information provided should include, for each Retiree, the following: (1) sex; (2) date of birth; (3) original hire date, rehire date, and continuing service date; (4) date of termination of employment; (5) date of retirement; (6) whether deceased and, if so, the date of death; (7) monthly pension; (8) health plan selected; (9) health coverage level selected (e.g. Retiree only, Retiree plus spouse, etc.); (10) other benefit options selected upon retirement; (11) years of service at retirement; (12) Retiree Benefits provided, including the amount of any monthly subsidy toward the cost of medical Benefits being provided to the Retiree, (13) annual salary and bonus as of 12/31/90 (for those who elected option #1 of the life insurance options); (14) a unique identifier (e.g. Nortel identification number); (15) spouse gender and date of birth; (16) surviving spouse date of birth; (17) which of the previously available Capital Accumulation and Retirement Programs the retiree was a member of (i.e. Grandfathered, Traditional, Balanced or Investor); (18) whether the Retiree retired under an early retirement program; (19) whether the Retiree retired under the 1995/96 Retirement Enhancement Program, the

13

1998 Early Retirement Incentive Program, or a reduction in force as of July 1, 2001 or later.

10.    A version of excel file entitled "2011 Expanded Retiree Rate Sheet.xls" updated as of the date of this Request that reflects the Retiree's required monthly contribution toward the cost of each of the Retiree Welfare Plans based on the Retiree's retirement plan election and years of service.

11.    A version of the excel file entitled "Q211 Slide 08 - PRB.xls" updated to reflect all data through the most recent available month end.

12.    All claims filed against the Debtors, and all documents about claims filed against the Debtors, for Retiree Benefits.

13.    All claims filed against the Debtors, and all documents about claims filed against the Debtors, for Retiree Claims, excluding claims filed exclusively for Retiree Claim Exclusions.

14.    All documents concerning any potential or projected cost to the Debtors of providing Retiree Benefits at any time after January 1, 2009.

15.    All documents concerning any potential or projected cost savings as a result of termination of retiree benefits relative to the continuation of existing Retiree Welfare Plans.

16.    All documents concerning any potential or projected cost to the Debtors of paying persons not employed by the Debtors to provide services in connection with providing Retiree Benefits at any time after January 1, 2009.

14

17. All documents concerning any potential or projected costs of employing or continuing to employ employees of the Debtors to provide services in connection with Retiree Welfare Plans or the provision of Retiree Benefits at any time after January 1, 2009.

18. All documents concerning any potential or projected cost to the Debtors of paying Retiree Claims, excluding Retiree Claim Exclusions, at any time after January 1, 2009.

19. Documents sufficient to establish the value of Debtors' assets and liabilities as of the date of the Termination Motion.

20. All documents concerning, and documents sufficient to establish, the actual and projected net cost to the Debtors of continuing to provide Retiree Benefits, without modifying the Retiree Welfare Plans, after July 1, 2012.

21. Documents sufficient to establish the actual, anticipated and projected monthly cost to the Debtors of paying its administrative priority expenses from July 1, 2012 through the end of the Chapter 11 Case.

22. All documents concerning the actual, anticipated or projected cost to the Debtors of litigating the Termination Motion, including attorney's and experts' fees.

23. All documents concerning whether the Debtors' assets are likely to be sufficient, or projected to be sufficient, to enable the Debtors to consummate a Chapter 11 plan.

24. All documents concerning the Debtors' statement in the Termination Motion that, "The current cost to the Debtors of providing the Benefits under the

Retiree Welfare Plans is between approximately $1.1 and $1.3 million per month, although the Debtors expect that the costs would go up as the current population ages, if premiums were increased, if health care costs rise and/or if a greater number of claims were filed."

25.     All documents concerning any liquidation analysis of any of the Debtors.

26.     All documents concerning how long it is likely to take the Debtors to confirm a Chapter 11 plan, including any documents identifying tasks the Debtors have yet to complete that the Debtors plan or expect to complete prior to confirmation of a Chapter 11 plan.

27.     All documents concerning how long any task that the Debtors expect to complete or may be required to complete before confirming a Chapter 11 plan is likely to take.

28.     All documents concerning the likely effective date of the Debtors' Chapter 11 plan.

29.     Documents sufficient to establish the administrative costs, and the costs of providing Retiree Benefits, that the Debtors have incurred during each of the past five years.

30.     Documents sufficient to identify each of the Debtors' employees who, at any time after January 1, 2008, performed any services in connection with (a) paying or providing any Retiree Benefit or Retiree Claim, or (b) any Plan or Retiree Welfare Plan.

31.     Documents sufficient to identify, for each of the Debtors' employees who, after January 1, 2008, performed services in connection with paying or providing any

Retiree Benefit or Retiree Claim, or in connection with any Plan or Retiree Welfare Plan, (a) the services the employee performed, (b) the dates during which the employee performed the services; (c) the amount of time the employee spent performing services in connection with paying or providing any Retiree Benefit or Retiree Claim, or in connection with any Plan or Retiree Welfare Plan, and (d) any cost of the employee providing those services.

32.    All documents concerning which of the Debtors' employees will, may, or are projected to be employed at any time after July 1, 2012 to perform services (a) in connection with paying or providing Retiree Benefits or Retiree Claims, or (b) in connection with any Plan or Retiree Welfare Plan, and for any such employee, (i) the services the employee may perform, (ii) the dates during which the employee may perform the services; and (iii) any cost of the employee providing the services.

33.    All documents concerning the Debtor's need for or possible employment of any employees at any time after July 1, 2012 to perform services (a) in connection with paying or providing Retiree Benefits or Retiree Claims, or (b) in connection with any Plan or Retiree Welfare Plan, and for each such possible employee, (i) the services the employee may perform, (ii) the dates during which the employee may perform the services; and (iii) any cost of providing the services.

34.    Documents sufficient to identify each employee of the Debtors who, after January 1, 2009, provided services in connection with paying, providing, or a Plan or Retiree Welfare Plan providing, Retiree Benefits, including the name and address for each such employee.

17

35.     Documents sufficient to identify each current employee of the Debtors that the Debtors plan or expect to terminate prior to January 1, 2013 who has, at any time after January 1, 2008, performed any services in connection with (a) paying or providing any Retiree Benefit or Retiree Claim, or (b) any Plan or Retiree Welfare Plan.

36.     All documents concerning each person other than an employee that the Debtors have paid or retained at any time after January 1, 2005 in connection with (a) paying or providing any Retiree Benefit or Retiree Claim, or (b) any Plan or Retiree Welfare Plan, including each contract with each such person.

37.     All communications with or concerning any non-employee person the Debtors have paid or retained at any time after January 1, 2005 to provide services in connection with (a) paying or providing any Retiree Benefit or Retiree Claim, or (b) any Plan or Retiree Welfare Plan.

38.     For each non-employee person the Debtors have paid or retained at any time after January 1, 2005 to provide services in connection with (a) paying or providing any Retiree Benefit or Retiree Claim, or (b) any Plan or Retiree Welfare Plan, documents sufficient to identify the services the person offered or provided, any contract with the person, any communications with the person, and any documents concerning whether the person's contract with the Debtors is or was renewable.

39.     All documents concerning any person the Debtors could or might retain to provide services at any time after January 1, 2012 in connection with (a) paying or providing any Retiree Benefit or Retiree Claim, or (b) any Plan or Retiree Welfare Plan.

40.    All documents concerning any communication or contract between the Debtors and any other person after January 1, 2008 concerning the provision of services in connection with (a) paying or providing any Retiree Benefit or Retiree Claim, or (b) any Plan or Retiree Welfare Plan.

41.    All documents concerning any communications after January 1, 2008 with any insurers, reinsurers, insurance brokers, or agents or representatives of any of the foregoing, concerning Retiree Benefits, a Plan, a VEBA or a Retiree Welfare Plan.

42.    All documents concerning any change in the services that the Debtors will perform, may perform or expect to need performed at any time after January 1, 2008 in connection with (a) paying or providing any Retiree Benefit or Retiree Claim, or (b) any Plan or Retiree Welfare Plan.

43.    All documents concerning any change in the cost of the services that the Debtors will perform, may perform or expect to need performed at any time after January 1, 2008 in connection with (a) paying or providing any Retiree Benefit or Retiree Claim, or (b) any Plan or Retiree Welfare Plan.

44.    All documents concerning any cost or benefit to the Debtors of changing, or not changing, (a) the means by which they pay or provide Retiree Benefits or Retiree Claims, or (b) any Plan or Retiree Welfare Plan.

45.    All documents concerning whether the Debtors can change, or cannot change, (a) the means by which they pay or provide Retiree Benefits or Retiree Claims, or (b) any Plan or Retiree Welfare Plan.

ME1 13942985v.1

46.     All documents concerning any potential or projected savings the Debtors may or might achieve by (a) changing the means by which they pay or provide Retiree Benefits or Retiree Claims, (b) changing any Plan or Retiree Welfare Plan, or (c) terminating any Plan or Retiree Welfare Plan.

47.     All communications after January 1, 2009 between the Debtors and the Retiree Committee, the Debtors' lenders, the UCC, the Bondholders' Group or any other person concerning Retiree Benefits, Retiree Claims, Plans, Retiree Welfare Plans, or terminating or modifying any of the foregoing.

48.     All documents dated, created, sent, received, reviewed or concerning any date after January 1, 2009 concerning whether the Debtors can, may or should employ temporary employees or outside contractors to manage or provide services with respect to any aspect of (a) paying or providing Retiree Benefits or Retiree Claims, or (b) any Plan or Retiree Welfare Plan.

49.     All documents concerning any temporary employee, provider of temporary employees or outside contractor that could, might or should be retained to manage or provide services at any time after January 1, 2009 with respect to any aspect of (a) paying or providing Retiree Benefits or Retiree Claims, or (b) any Plan or Retiree Welfare Plan.

50.     All documents concerning any analysis or investigation of alternative methods by which the Debtor could, might or should provide Retiree Benefits after January 1, 2009.

ME1 13942985v.1

51.    Documents sufficient to identify the Debtors' expected distribution, both as a dollar amount and as a percentage of claim value, to general unsecured creditors of each of the Debtors currently paying Retiree Benefits.

52.    Documents sufficient to identify the Debtors' expected distribution, both as a dollar amount and as a percentage of claim value, to general unsecured creditors of each of the Debtors that is or may be liable under a Retiree Welfare Plan.

53.    Documents sufficient to identify the Debtors' expected distribution, both as a dollar amount and as a percentage of claim value, to secured creditors of each of the Debtors currently paying Retiree Benefits.

54.    Documents sufficient to identify the Debtors' expected distribution, both as a dollar amount and as a percentage of claim value, to secured creditors of each of the Debtors that is or may be liable under a Retiree Welfare Plan.

55.    Documents sufficient to identify the Debtors' expected distribution, both as a dollar amount and as a percentage of claim value, to administrative priority creditors of each of the Debtors currently paying Retiree Benefits.

56.    Documents sufficient to identify the Debtors' expected distribution, both as a dollar amount and as a percentage of claim value, to administrative priority creditors of each of the Debtors that is or may be liable under a Retiree Welfare Plan.

57.    Documents sufficient to identify the range of the Debtors' potential increases or decreases in assets or liabilities arising out of the claims asserted against the Debtors by the U.K. pension regulator, including documents sufficient to identify which Debtors' assets or liabilities may be affected.

58.    Documents sufficient to identify the range of the Debtors' potential increases or decreases in assets or liabilities arising out of the claims against the Debtors asserted by the "EMEA" entities, including documents sufficient to identify which Debtors' assets or liabilities may be affected.

59.    Documents sufficient to identify the range of the Debtors' potential increases or decreases in assets or liabilities arising out of any claims against the Debtors for more than $25 million, including documents sufficient to identify which Debtors' assets or liabilities may be affected.

60.    The Debtors' most recent filed and draft Chapter 11 plans.

61.    Documents sufficient to identify each Retiree who is currently receiving Retiree Benefits but would likely be unable to obtain individual health insurance coverage for at least some period of time after the Debtors terminate the Retiree Welfare Plans, assuming that the Retiree Welfare Plans are terminated as of December 31, 2012.

62.    Documents sufficient to identify each Retiree currently receiving Retiree Benefits who was previously receiving health and welfare benefits under Nortel's Long-Term Disability Plan immediately before his or her retirement.

63.    Documents sufficient to identify how many Retirees who are currently receiving Retiree Benefits would likely be unable to obtain individual health insurance coverage for at least some period of time after the Debtors terminate the Retiree Welfare Plans, assuming that the Retiree Welfare Plans are terminated as of December 31, 2012.

64.    Documents sufficient to identify how many Retirees who are participating in a Retiree Welfare Plan have debilitating or life-threatening health conditions.

22

65.     All documents concerning whether any Retiree participating in a Retiree Welfare Plan will or may be unable to obtain individual health insurance coverage because of a pre-existing condition.

66.     All documents concerning any Retiree's or group of Retirees' actual or potential ability to obtain group life, health or long-term care insurance.

67.     All documents concerning any Retiree's or group of Retirees' actual or potential ability to obtain individual life, health or long-term care insurance.

68.     All documents concerning the actual or potential willingness of any insurer to provide group life insurance to Retirees, including documents concerning any such potential insurance program or its cost.

69.     All documents concerning the actual or potential willingness of any insurer to provide group health insurance to Retirees, including documents concerning any such potential insurance program or its cost.

70.     All documents concerning the actual or potential willingness of any insurer to provide group long-term care insurance to Retirees, including documents concerning any such potential insurance program or its cost.

71.     All communications to, from or provided to the Debtors after January 1, 2009 concerning Retirees' insurability.

72.     All communications to, from or provided to the Debtors after January 1, 2009 concerning any potential role of a VEBA in providing Retiree Benefits.

73.     All documents concerning Retiree Claims asserted against the Debtors, excluding Retiree Claim Exclusions and claims for Retiree Benefits.

23

74.    All documents concerning any computation, discussion or analysis of any Retiree Claims asserted against the Debtors, that are not claims for Retiree Claim Exclusions and claims for Retiree Benefits.

75.    All documents concerning the actual or potential cost to the Debtors of paying or defending against any Retiree Claims, that are not claims for Retiree Claim Exclusions and claims for Retiree Benefits.

76.    All documents concerning how the Debtors or any other person could obtain facts relevant to defending against any asserted Retiree Claim, that is not a claim for a Retiree Claim Exclusion or a claim for Retiree Benefits.

77.    Documents sufficient to identify each Retiree Claim that is not a claim for a Retiree Claim Exclusion or a claim for Retiree Benefits.

78.    Documents sufficient to identify each written agreement in which the Debtors stated that they would provide life insurance, health or long-term care benefits to a Retiree in addition to or apart from any rights the Retiree might have under a Plan provided to any Retirees as a group.

79.    All documents in which the Debtors stated that they would match Retiree Benefits made available to employees of any other company.

80.    All documents concerning any computation or analysis of claims for Retiree Benefits asserted against the Debtors that are not included within the information that the Debtors caused to be provided to the Retiree Committee as the "census."

24

81.     All documents concerning the potential cost of providing Retiree Benefits to long-term disabled employees or former employees of the Debtors who are or may be eligible to claim Retiree Benefits.

82.     All documents concerning the potential cost of providing Retiree Benefits to employees of the Debtors as of the date of the Termination Motion who are or may be eligible to claim Retiree Benefits.

83.     All documents concerning the costs of retirees of the Debtors making COBRA elections after January 1, 2011, or concerning any analyses of this issue by the Debtors.

84.     All documents concerning the actual or potential amount of any offer or proposal to the Retiree Committee to pay for or provide, in whole or in part, and whether directly or indirectly, Retiree Benefits.

85.     All documents concerning any discount rate used, or that may be appropriate or inappropriate to use, in valuing Retirees' claims for Retiree Benefits.

86.     All documents concerning what discount rate should be used in valuing Retiree Benefits.

87.     All communications concerning the use of any discount rate in valuing, or the determination of an appropriate discount rate for valuing, Retiree Benefits.

88.     All documents concerning the valuation of Retirees' Benefits or Retiree Claims, excluding Retiree Claim Exclusions.

89.     All documents concerning the Retirees' possible uses for the sums offered in the Debtors' Proposal.

25

90.     All documents concerning any risks of liability for any person that may result from or in connection with the creation, establishment, maintenance or transfer of funds to a VEBA, or the payment of retirement benefits by or through a VEBA.

91.     All communications between the Debtors and the UCC, the Bondholders' Group or the Retiree Committee concerning a VEBA.

92.     All documents concerning any alternatives to the Proposal that the Debtors considered.

93.     All documents concerning means of providing Retiree Benefits to Retirees free of income tax.

94.     All documents concerning communications with the Retiree Committee or with Richard Levin.

95.     All documents concerning any offer, term sheet or proposal communicated, directly or indirectly, to the Retiree Committee.

96.     All documents concerning the Debtors' production or provision of documents to the Retiree Committee.

97.     All documents concerning each effort the Debtors made to locate documents for production or provision to the Retiree Committee.

98.     Documents sufficient to identify each place the Debtors searched for documents to provide or produce to the Retiree Committee and each search the Debtors performed.

99.     All documents concerning any cost of any search for any documents the Retiree Committee requested from the Debtors.

26

100.    All documents concerning any effort the Debtors made to obtain documents that are in the possession, custody or control of any of the Debtors' present or former affiliates in Canada concerning Retiree Benefits, Retiree Claims, Plans or Retiree Welfare Plans.

101.    All documents concerning any effort the Debtors made to obtain documents in response to the Retiree Committee's emailed requests to search for certain types of documents.

102.    All documents concerning whether any modification to Retiree Welfare Benefits or any Retiree Welfare Plan would be satisfactory to the Retirees or the Retiree Committee.

103.    Documents sufficient to disclose the compensation the Debtors have provided to each of their ten most highly compensated officers since their bankruptcy filing, or any compensation that may be provided to those officers in the future.

104.    Documents sufficient to disclose the compensation the Debtors have provided to each of their current employees since their bankruptcy filing, including any bonuses.

105.    Documents sufficient to disclose any compensation the Debtors have promised to provide, or may provide, to their current employees after July 1, 2012, including any bonuses.

106.    All documents concerning whether the Proposal is the Debtors' highest best offer.

107.    All documents concerning the Debtors' statement in their Termination Motion that, "on June 4, 2012, the Debtors made a further settlement proposal, substantially in the form attached as Exhibit 3 to the Ray Declaration."

108.    All documents concerning the Debtors' statement in their Termination Motion that, "The Proposal would provide the Retirees with the cash equivalent of approximately five years of additional continued Benefits."

109.    All documents concerning any debtor in a bankruptcy case that provided retiree benefits, or a settlement in lieu of retiree benefits, other than through a VEBA.

110.    All documents concerning the value or valuation of Retiree Benefits payable after July 1, 2012, whether or not the Retiree Welfare Plans are modified or terminated.

111.    All documents concerning the value or valuation of Retiree Claims, excluding Retiree Claim Exclusions, payable after July 1, 2012, whether or not the Retiree Welfare Plans are modified or terminated.

112.    All documents concerning the data, or the reliability of the data, available to the Debtors or provided by the Debtors to the Retiree Committee concerning Retiree Claims and Retiree Benefits, including the "census."

113.    All documents concerning any errors, omissions or inconsistencies in the data that the Debtors provided or caused to be provided to the Retiree Committee concerning Retiree Claims and Retiree Benefits, including the "census."

114.    All documents concerning any actuarial assumption used or that could be used in valuing retiree benefits or the Retirees' Retiree Benefits.

28

115.    All documents concerning any actuarial reports concerning projected Retiree medical benefit costs or the net present value thereof prepared during the last five years.

116.    Documents concerning formulas for calculating the Debtors' subsidy toward Retire Benefits under the "2007 cost sharing arrangement" referenced in the Retiree Welfare Plans.

117.    All documents concerning whether any particular actuarial assumption is appropriate or should be used in valuing retirement benefits.

118.    All documents concerning any expert analysis of Retiree Benefits or Retiree Welfare Plans.

119.    All documents concerning any document, report or analysis the Retiree Committee sent or provided to the Debtors directly or indirectly.

120.    All documents concerning whether the Debtors have the right, or stated that they have the right, to terminate or modify any Retiree Benefits or Retiree Welfare Plans.

121.    All documents concerning any reservation by the Debtors of any right to terminate or modify any Retiree Benefits or Retiree Welfare Plans.

122.    All documents concerning any Retiree Welfare Plan, SPD or modification of Retiree Benefits.

123.    All Retiree Welfare Plans, SPDs, and statements concerning modification of Retiree Benefits.

124. All communications with employees, retirees of the Debtors or Retirees concerning Retiree Benefits or any Retiree Welfare Plan.

125. All summaries, summary descriptions, summaries of material modifications, summary plan documents or SPDs concerning any Retiree Benefit or Retiree Welfare Plan.

126. All documents concerning the distribution, provision or availability of any Retiree Welfare Plan, any document concerning Retiree Benefits or any Retiree Welfare Plan, or SPD to employees or retirees.

127. All documents concerning any failure to distribute, provide or make available any Retiree Welfare Plan, any document concerning Retiree Benefits or any Retiree Welfare Plan, or SPD to employees or retirees.

128. All documents describing retiree benefits, including any document entitled "Retirement Benefits at a Glance."

129. All documents concerning any legal requirement to retain any documents concerning Retiree Benefits or Retiree Welfare Plans.

130. All documents concerning any legal requirement to prepare or distribute any documents concerning Retiree Benefits or Retiree Welfare Plans.

131. All documents concerning any exit interviews with employees at which (a) Retiree Benefits were discussed or (b) any documents concerning Retiree Benefits or any Retiree Welfare Plan were provided.

30

132.   All documents concerning any modification or termination of any Retiree Welfare Plan or Retiree Benefits, or procedures the Debtors followed or were required to follow to modify or terminate any Retiree Welfare Plan or Retiree Benefits.

133.   All documents concerning consideration or approval by any of the Debtors' boards of directors of any Plan, Retiree Welfare Plan, SPD or Retiree Benefits, including the minutes of any meeting or call during which any Plan, Retiree Welfare Plan, SPD or Retiree Benefit was discussed.

134.   All documents concerning consideration or approval by any person or any committee of any of the Debtors' boards of directors of any Plan, Retiree Welfare Plan, SPD or Retiree Benefits.

135.   All documents concerning any committee of any of the Debtors' boards of directors that considered or approved any Plan, Retiree Welfare Plan, SPD or Retiree Benefits, or any modification or termination of any of the foregoing.  In responding to this Document Request, include documents sufficient to identify each member of each such committee and the dates on which the member served on the committee.

136.   All documents maintained or formerly maintained in the Debtors' offices in Tennessee, North Carolina, or Ontario, Canada concerning any Retiree Welfare Plan, SPD or Retiree Benefits.

137.   All documents concerning any communication with any employee or Retiree about Plans, Retiree Welfare Plans or Retiree Benefits, including all documents concerning the preparation of the communication.

ME1 13942985v.1

138.    All documents concerning any SPD or brochure drafted or approved by the Human Resources department of any of the Debtors.

139.    All documents concerning any employee handbooks, benefits booklets, brochures, letters or fliers concerning retirement planning, Retiree Benefits or any Retiree Welfare Plan.

140.    All documents concerning enrollment for or selection of any Retiree Benefit, or any option concerning Retiree Benefits.

141.    All documents concerning any process or procedure for adopting, endorsing or modifying any Retiree Welfare Plan or Retiree Benefit.

142.    All documents concerning when or whether it would or might be necessary to modify or terminate any Retiree Welfare Plan or Retiree Benefit.

143.    All communications with the Internal Revenue Service or Department of Labor concerning any Retiree Welfare Plan or Retiree Benefit.

144.    All documents concerning forms or questionnaires given to or signed by retirees concerning Retiree Benefits or Retiree Welfare Plans.

145.    All documents concerning Retiree Benefits available or potentially to be provided upon selecting early retirement.

146.    All documents concerning any application or request for Retiree Benefits or participation in a retiree Welfare Plan.

147.    All documents concerning any pre-retirement or post-retirement counseling provided to persons who were employed by, or retired or retiring from, the Debtors.

32

148.    All scripts employed in pre-retirement counseling, post-retirement counseling, or exit or employment interviews, concerning Retiree Welfare Plans or Retiree Benefits.

149.    All documents concerning any changes in contributions or coverage under any Retiree Welfare Plan.

150.    Documents sufficient to identify each current recipient of Retiree Benefits, including the recipient's name, address and email address.

151.    Documents sufficient to identify each employee or long-term disabled person who is a potential recipient of Retiree Benefits, including their name and address.

152.    All documents concerning any delegation of the Debtors' right or power to adopt or modify Retiree Welfare Plans, Plans or Retiree Benefits.

153.    All documents concerning any financial statements for the Retiree Welfare Plans for the last three years.

154.    All documents concerning any factual statement in the Termination Motion.

155.    All documents that the Debtors have produced or provided to the Retiree Committee without Bates numbers to date.

156.    All documents reviewed or relied upon in responding to, or identified in any response to, the Official Committee of Retired Employees' First Set of Interrogatories directed to the Debtors dated August 10, 2012.

33

Intentionally Blank

MEI 13942985v.1

Dated: August 10, 2012
Wilmington, DE

**MCCARTER & ENGLISH, LLP**

William F. Taylor, Jr. (DE Bar I.D. #2936)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
(302) 984-6399 Facsimile
wtaylor@mccarter.com

-and-

Albert Togut, Esq.
Neil Berger, Esq.
Richard K. Milin, Esq.
Togut, Segal & Segal LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000
(212) 967-4258 Facsimile
altogut@teamtogut.com
neilberger@teamtogut.com
rmilin@teamtogut.com

*Counsel to the Official Committee of Retired
Employees*

MEI 13942985v.1