## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
                                            :
In re:                                      :        Chapter 11
                                            :
                                            :        Case No. 09-10138(KG)
Nortel Networks Inc., *et al.*,[1]          :
                                            :        (Jointly Administered)
                        Debtors.            :
                                            :
-------------------------------------------------------------x

## THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES'
## FIRST SET OF INTERROGATORIES DIRECTED TO THE DEBTORS

PLEASE TAKE NOTICE, pursuant to Rule 33 of the Federal Rules of Civil

Procedure, Rules 7026, 7033 and 9014 of the Federal Rules of Bankruptcy Procedure,

and the Local Rules of the United States Bankruptcy Court for the District of Delaware,

that the Official Committee of Retired Employees of the above-captioned Debtors

hereby requests that Nortel Networks Inc. and certain of its affiliates, as debtors and

debtors in possession, provide written responses to the first set of interrogatories below

so as to be received at the offices of Togut, Segal & Segal, LLP, One Penn Plaza, Suite

3335, New York, NY 10119, and McCarter & English, LLP, 405 N. King Street, 8th Floor,

Wilmington, DE 19801, **no later than August 24, 2012** in accord with the Court's

scheduling order dated August 1, 2012 [Docket No. 8084].

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

## DEFINITIONS

1.     The use of the singular form of any word includes the plural and vice versa.

2.     "All," "any" and "each" shall each be construed to include all, any, and each.

"And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each interrogatory all documents and information that might otherwise be construed to be outside of its scope. "And" and "or" shall also be construed either disjunctively or conjunctively in any definition as necessary to give the definition its broadest scope.

3.     "Bondholder Group" means the ad hoc group of bondholders holding claims against certain of the Debtors that is jointly represented by the Milbank Tweed firm in the Chapter 11 case.

4.     The term "Chapter 11 Case" means the above-captioned, jointly administered chapter 11 cases.

5.     The term "Chapter 11 plan" means a plan of reorganization or liquidation approved under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*

6.     The term "communication" means any transmission of words, images, facts, numbers or ideas, including but not limited to any transmission in or by means of a document (as defined below), spoken word, conversation, conference, discussion, interview, audio or video recording, report or meeting, or any email, telephone, facsimile or other electronic transmission.

2

7.    The term "concerning" means relating to, referring to, describing, mentioning, evidencing or constituting.

8.    The terms "Debtor" and "Debtors" refer to any one or more of the debtors in the Chapter 11 Case, any of their predecessor entities, any parents, subsidiaries, members or affiliates of any of the foregoing, and any directors, officers, employees, representatives, advisors, agents, attorneys, associates or persons acting for or on behalf of any of the foregoing.

9.    The term "document" shall be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes any written, printed, typed, electronic, or other recorded matter of any type or nature, however produced or reproduced, including information recorded in paper, digital, analog, graphic, electronic or photographic form; writings; emails; drawings; graphs; tables; photographs; telephone logs and records; electronic or computerized information, data or data compilations; term sheets; pitch books; financial records and books of account; journals; ledgers; audio recordings; video recordings; transcripts; memoranda; calendars; tables; invoices; appointment books; computer databases; PowerPoint or other presentations; CDs or DVDs; pamphlets; personnel files; correspondence; notes; bills; invoices; and communications of any kind.  A draft or non-identical copy is a separate document within the meaning of this term.

10.    The term "identify," when used in reference to:

(a)    a person, means to state (i) his, her, or its full name; present or last known address and telephone number; and (ii) if a natural person, his or her present business affiliation and position or title;

(b)    a document or communication, means to state (i) the date; (ii) the author(s), signatory or signatories; (iii) the recipient(s) or addressee(s); (iv) the type of document (i.e., correspondence, memorandum, etc.); (v) the contents with sufficient particularity to enable the propounding party to confirm the document's identification; and (vi) its present or last known custodian and location.

11.    The term "includes" means "includes but is not limited to," and "including" means "including but not limited to."

12.    The term "person" means any natural person or legal entity, including but not limited to any partnership, corporation, unincorporated association, professional association or other form of business or governmental entity or association.

13.    The term "Plan" means any agreement, plan, fund or program which offers, promises or provides "Retiree Benefits" as defined below through the purchase of insurance or otherwise, or any employee welfare benefit plan, fund or program established or maintained to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services.

4

14.    The term "Potential Retiree" means any current employee of the Debtors who (i) was age 50 or older with at least five years of service as January 1, 2006; or (ii) was not age 50 or older with at least five years of service as January 1, 2006, but (a) was hired after January 1, 2008, (b) is age 50 or older with at least five years of service as of the date of retirement, and (c) is a member of the active employees' medical plan immediately before retirement.

15.    The "Proposal" refers to the document identified as the "Proposal" in the Debtors' Termination Motion (as defined below).

16.    The term "Retiree" means (a) any former employee of the Debtors who has retired, (b) any Potential Retiree, and (c) any present or former spouse or dependent of a former employee of the Debtors who has retired or of a Potential Retiree.

17.    The term "Retiree Benefit" means any payment to any entity or person for the purpose of providing or reimbursing payments for retired employees, or their spouses or dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death.

18.    The term "Retiree Claim" means any and all actual or potential claims, demands, causes of action, debts, liabilities or obligations, whether based on any legal or equitable theory or otherwise, including, but not limited to suits in contract, tort or equity, whether arising under contract, the Employee Retirement Income Security Act of 1974 (ERISA), the Consolidated Omnibus Budget Reconciliation Act (COBRA), or any other statute, rule, regulation, common law or otherwise, and whether arising under the

laws of the United States, any political subdivision thereof or the laws of any other

jurisdiction, in all cases relating to:

     i.     Any benefits, other obligation or other claims arising under or relating to Retiree Welfare Plans (as defined below) or Retiree Benefits;

     ii.     The administration of Retiree Welfare Plans, including, but not limited to, the calculation of Retiree Benefits, the application of offsets against Retiree Benefits, the denial of Retiree Benefits, the determination of eligibility to receive Retiree Benefits, the interpretation of Retiree Welfare Plans and the drafting of Retiree Welfare Plans; or

     iii.     The past, present or future amendment, modification and/or termination of any Retiree Welfare Plan and/or any benefits or coverage thereunder.

     19.     The term "Retiree Claim Exclusions" means:

     (a)     Claims arising from or relating to the Nortel Networks Severance

Allowance Plan or the Nortel Networks Enhanced Severance Allowance Plans,

including related fringe benefits;

     (b)     Claims arising under or relating to the Nortel Networks U.S. Deferred

Compensation Plan or the Northern Telecom Inc. Senior Management Incentive Award

Program;

     (c)     Claims for qualified pension benefits arising under or relating to the

Nortel Networks Retirement Income Plan, Nortel Networks Pension Service Plan,

Nortel Networks Cash Balance Plan, Northern Telecom Inc. Retirement Plan for

Employees or the Nortel Networks Capital Accumulation and Retirement Program,

which are properly asserted only against the Pension Benefit Guaranty Corporation;

     (d)     Claims for non-qualified pension benefits arising under or relating to the

Nortel Networks Retirement Income Plan Restoration Plan, Nortel Networks Cash

Balance Restoration Plan, Northern Telecom Inc. Excess Pension Plan, Nortel Networks

Long-Term Investment Restoration Plan, Nortel Networks Supplementary Executive

Retirement Plan, the Nortel Networks Special Pension Benefits Plan and the Nortel

Networks Special Pension Credit Plan;

(e)     Except to the extent described above, valid claims for reimbursement for

benefits covered by and approved pursuant to the Retiree Welfare Plans incurred prior

to the Termination Date that are properly brought prior to the expiration of the run-off

period (as amended);

(f)     Claims for expatriate benefits and relocation expenses;

(g)     Claims for the account balance currently vested in an individual's account

under the Nortel Networks Long-Term Investment Plan or Northern Telecom Inc. Thrift

Savings Plan; and

(h)     Claims directly arising under a written employment agreement between

an individual Retiree and the Debtors that are wholly unrelated to life insurance, death

benefits, retirement payments, medical insurance, long-term care insurance or any other

Retiree Claims.

20.     "Retiree Committee" means the Official Committee of Retired Employees

of the Debtors appointed in the Chapter 11 Case by the Office of the United States

Trustee for the District of Delaware on August 2, 2011.

21.     The term "Retiree Welfare Plans" means the Nortel Networks Inc. Retiree

Medical Plan, the Nortel Networks Inc. Retiree Life Insurance and Long-Term Care

Plan, predecessor plans and other formal or informal benefit plans, agreements,

arrangements or programs (including plans, agreements, arrangements or programs

that are funded through the purchase of insurance) or arrangements for current or

7

future retired employees, their surviving spouses and eligible dependents, including

plans, arrangements, agreements or programs for medical, surgical, or hospital care

benefits, or benefits in the event of sickness, accident, disability, or death collectively

and in each case as amended or modified from time to time.

22.     "SPD" means "summary plan description."

23.     "Termination Motion" means the Debtors' Motion For Entry Of An Order

Terminating Retiree Benefits And Approving A Settlement Proposal Pursuant To 11

U.S.C. § 1114 dated July 30, 2012.

24.     "UCC" means the Official Committee of Unsecured Creditors appointed

in the Chapter 11 Case by the Office of the United States Trustee for the District of

Delaware on January 26, 2009.

25.     "VEBA" means a voluntary employees' beneficiary association within the

meaning of section 501(c)(9) of the Internal Revenue Code of 1986, as amended.

26.     "You" means, and "your" refers to, the Debtors.

## INSTRUCTIONS

1.     These interrogatories (each an "Interrogatory") call for all documents and

information in the Debtors' possession, custody or control, including but not limited to

all documents and information in the actual or constructive possession, custody or

control of any attorney, agent or other representative of the Debtors.

2.     If the Debtors maintain that there is any ambiguity in any Interrogatory,

definition, or instruction, the claimed ambiguity shall not be a basis for refusing to

provide a complete response to any Interrogatory, and the Debtors shall set forth as part

8

of their response the language deemed to be ambiguous and the interpretation they have used in responding to the Interrogatory.

3.      If the Debtors fail to provide a complete response to any Interrogatory or withhold any responsive information based on a claim of privilege or immunity from disclosure, furnish a list specifying each document or item of information withheld and set forth:

(a)      the reason for withholding the document or information;

(b)      a statement of the basis for the claim of privilege, work product or other basis for nondisclosure;

(c)      a brief description of the document or information withheld including:

i.      the date and type of the document or information;

ii.      the number of pages, attachments, and appendices of any document withheld;

iii.      the names of the author, authors or preparers of any document withheld and an identification of each such person's employment title and position at the time;

iv.      the name of each person who was provided with or had access to any information withheld, who transmitted or received the information withheld, or who had access to or custody of the information, together with an identification of each such person's employment title and position at the time;

v.      the name of each person who was sent, shown, or copied on any document withheld, who sent or received the document withheld, or who had access to

or custody of the document withheld, together with an identification of each such

person's employment title and position at the time;

vi.      each present location and custodian of any document withheld;

vii.     the number of pages of any document withheld; and

viii.    a description of the subject matter and content of any document withheld

and, if the document concerns a meeting or conversation, a description of the time, date

and location of and participants in the meeting or conversation.

4.      As required by Rule 33(b) of the Federal Rules of Civil Procedure and Rule

7033 of the Federal Rules of Bankruptcy Procedure, answer each interrogatory

separately and fully in writing under oath, unless objected to.

5.      If the Debtors object to an Interrogatory, answer as much of the

Interrogatory as can be answered without objection and state with specificity the

grounds for the objection, as required by Rules 33(b)(3)-(b4) of Federal Rules of Civil

Procedure and Rule 7033 of the Federal Rules of Bankruptcy Procedure.

6.      If no documents or information are responsive to any particular

Interrogatory, state that fact in response.

7.      Unless otherwise noted, each Interrogatory calls for information and

documents dated, created, sent, received, reviewed or concerning any date after

December 31, 1981.  To the extent that any documents or information responsive to an

Interrogatory concerns a Retiree who retired prior to January 1, 1982, that information

also should be provided.

8.      These Interrogatories shall be continuing, and supplemental responses shall be served in accord with Rule 26 of the Federal Rules of Civil Procedure and Rule 7026 of the Federal Rules of Bankruptcy Procedure.

## INTERROGATORIES

1.      Identify each person who has or may have knowledge or information concerning the facts, matters, communications, documents or occurrences described in the Termination Motion, including the asserted necessity of terminating, and the Debtors' asserted right to terminate, certain Retiree Benefits and Retiree Welfare Plans. For each such person, state the name, address, email address and telephone number of the person and describe in detail the knowledge you believe the person possesses.

2.      Identify each person who helped prepare or supply information for the Debtors' responses to these Interrogatories and identify the particular Interrogatory with which the person assisted.

3.      State all reasons why the Debtors maintain that it is necessary to seek or obtain approval for the termination of their Retiree Welfare Plans before the end of the plan year on December 31, 2012, including:

(a)      All reasons why it is necessary for the Debtors to pay no more than the amount offered in the Proposal to compensate Retirees for the termination of the "Retiree Welfare Plans" as defined in the Termination Motion;

(b)      All reasons why the Debtors maintain that it is necessary for them not to pay the costs of maintaining their current Retiree Welfare Plans through December 31, 2013, including a computation, together with all facts and documents supporting the

computation, of the expected amount of those costs for each three-month period from January 1, 2013 through December 31, 2013 and a computation, together with all facts and documents supporting the computation, of the Debtors' expected savings if the Retiree Welfare Plans are terminated;

(c)     All reasons why the Debtors maintain that it is necessary for them not to pay the costs of maintaining their current Retiree Welfare Plans after December 31, 2013, including a computation of the expected amount of those costs;

(d)     All reasons why the Debtors specify in the Proposal that, "The Debtors will not consent to the use of a VEBA to administer or distribute the Retiree Payment Amount.";

(e)     A description of all actions the Debtors took prior to the date of the Termination Motion to develop a Proposal that would provide group health, life and long-term care insurance for Retirees currently covered by group health, life or long-term care insurance under the Retiree Welfare Plans, including an identification of each of the Debtors' communications with any person concerning those actions, an identification of all documents concerning those actions, and an identification of each person with whom the Debtors communicated concerning those actions;

(f)     An identification of each of the Debtors' employees who has performed substantial services in connection with the Retiree Welfare Plans at anytime during the twelve months preceding the date of the Termination Motion or whom the Debtors expect to perform substantial services in connection with the Retiree Welfare Plans after the date of the Termination Motion if the Retiree Welfare Plans continue unmodified,

12

including (i) the employee's name, address, telephone number and email address; (ii) a description of the services the employee has performed in connection with the Retiree Welfare Plans during the year prior to the date of the Termination Motion, and the time the employee spent in providing those services; (iii) a description of the services the Debtors expect the employee to perform in connection with the Retiree Welfare Plans after the date of the Termination Motion if the Retiree Welfare Plans continue unmodified, and the time the Debtors expect the employee to spend in providing those services; (iv) a description of all communications between the Debtors and the employee, including a copy of all such communications, concerning the employee's employment, the Retiree Welfare Plans, Retiree Benefits, or the employee's willingness to continue providing services in connection with the Retiree Welfare Plans after December 31, 2012 in a different capacity or while employed by a different employer; and (v) a statement whether the Debtors expect to terminate the employee if the Retiree Welfare Plans are terminated and, if so, when and with what bonus, if any.

(g)     An identification of all methods of making non-taxable health, life or long-term care insurance, subsidies or Retiree Benefits available to Retirees after termination of the Retiree Welfare Plans that the Debtors considered prior to making the Termination Motion, together with a statement, if any of those methods would not be acceptable to the Debtors, why it would not be acceptable; and

(h)     An identification of all non-employee persons that currently provide services to the Debtors in connection with the Retiree Welfare Plans, including copies of

13

all contracts with them and all communications with them concerning any Retiree

Welfare Plan, Plan, Retiree Benefit or providing Retiree Benefits after January 1, 2008.

    4.    Identify and describe in detail all Retiree Claims, other than Retiree Claim

Excursions, and claims for "Retiree Benefits" as that term is defined in the Proposal that

are not for "Retiree Benefits" as that term is defined herein, and in doing so, identify all

such claims that have been filed against the Debtors; state the filed amount of each such

claim and any reduction in the amount of claim that the Debtors believe appropriate;

state any basis the Debtors are aware of to dispute the claim and, if there is such a basis,

describe it in detail; and state whether any Retiree Claims that are not claims for

"Retiree Benefits" as that term is defined in the Proposal may be filed notwithstanding

the Debtors' bar date.

    5.    Identify each Retiree Welfare Plan, each SPD for each Retiree Welfare

Plan, and each communication with any employee or former employee of the Debtors

concerning any Retiree Benefit or Retiree Welfare Plan, including information sufficient

to determine each recipient of each such communication that the Debtors made or

distributed to multiple employees or former employees.

    6.    State all bases for the Debtors' contention that they have an unrestricted

right to modify or terminate all Retiree Welfare Plans and Retiree Benefits, identifying

and providing each document the Debtors rely on in support of their contention, and

stating all reasons why the 1991 SPD annexed hereto as Exhibit A does or does not limit

the Debtors' asserted right to modify or terminate any Retiree Welfare Benefits or

Retiree Welfare Plans.

14

7.      Describe in detail the Debtors' procedure at all times after January 1, 1981 for adopting or modifying Retiree Welfare Plans and SPDs and, in doing so, identify and produce all documents stating or describing the procedure or any change in the procedure, and identify and produce all documents concerning the procedure followed each time a Retiree Welfare Plan or SPD was adopted or modified.

8.      State the present value as of the date of the Termination Motion of the cost of the Retiree Benefits that the Debtors will be required, in their view, to provide under the Retiree Welfare Plans if those Plans are not terminated, including the cost of Retiree Benefits to be provided to any current employees and employees who are receiving long-term disability benefits and will become eligible for Retiree Benefits, and in doing so:  state the source of the data the Debtors have employed and how it differs, if it does, from the data the Debtors have provided to the Retiree Committee; state and describe the actuarial assumptions the Debtors have employed, and the basis for employing those assumptions; and state and describe all discount rates the Debtors have employed, and the basis for employing those rates.

9.      Based on current information, state what percentage the Debtors expect to pay in satisfaction of each of the following: administrative priority claims against each of the Debtors that has been paying or may make payments in connection with the Retiree Welfare Plans; secured claims against each of the Debtors that has been paying or may make payments in connection with the Retiree Welfare Plans; and general unsecured claims against each of the Debtors that has been paying or may make payments in connection with the Retiree Welfare Plans.

10.    Identify and describe each of the Debtors' attempts to locate documents or information for production to the Retiree Committee prior to the date of the Termination Motion, including an identification of each person or employee with whom the Debtors communicated to request documents or information; a specification of each file the Debtors searched for documents or information, its current and former custodians, and its geographic location; an identification of each communication, each of which should be produced in response to this Interrogatory, concerning documents relevant to the Retiree Welfare Plans or Retiree Benefits, or that the Debtor requested for possible production to the Retiree Committee; and an identification of each location in which the Debtors have possession, custody or control of documents that have not been searched in response to the Retiree Committee's document requests.

11.    Describe in detail how, when and why the Debtors developed the Proposal and calculated the amount in the Proposal that the Debtors offer to pay in satisfaction of Retiree Claims and claims for Retiree Benefits, and, in doing so, (a) identify and produce all documents concerning the Proposal; (b) state whether the Proposal is the highest offer the Debtors have communicated to the Retiree Committee, directly or indirectly, and, if not, why not;  (c) state whether the Debtors determined that the Retirees will be able to obtain any group health, life or long-term care insurance if they accept the Proposal and, if so, provide all bases and documents concerning or supporting that statement; (d) state all bases for the Debtors' statement in the Termination Motion that "The Proposal would provide the Retirees with the cash equivalent of approximately five years of additional continued Benefits," and identify

16

and provide all documents concerning or supporting that statement; and (e) calculate

the amount that the Debtors expect to pay to the Retiree Committee as of December 31,

2012, specifying how much would not be subject to income tax and, if any portion of the

payment would not be subject to income tax when paid to Retirees, explain why.

Dated: August 10, 2012
      Wilmington, DE

**MCCARTER & ENGLISH, LLP**

William F. Taylor, Jr. (DE Bar I.D. #2936)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
(302) 984-6399 Facsimile
wtaylor@mccarter.com

-and-

Albert Togut, Esq.
Neil Berger, Esq.
Richard K. Milin, Esq.
Togut, Segal & Segal LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000
☐(212) 967-4258 Facsimile
altogut@teamtogut.com
neilberger@teamtogut.com
rmilin@teamtogut.com

*Counsel to the Official Committee of Retired
Employees*

17

# EXHIBIT A

# Retiree Medical Plan and
# Life Insurance and Long-Term Care Plan

E • M • P • L • O • Y • E • E



B E N E F I T S • P R O G R A M


**northern telecom**

1991

**SUMMARY PLAN DESCRIPTIONS**

**NORTHERN TELECOM INC. RETIREE MEDICAL PLAN AND NORTHERN TELECOM INC. LIFE INSURANCE AND LONG-TERM CARE PLAN**

The Northern Telecom Inc. Retiree Medical Plan is available to provide medical expense protection for you during your retirement years.  In addition the and Northern Telecom Inc. Life Insurance and Long-Term Care Plan provides a death benefit to your survivors upon your death and optional long-term care insurance to you and your eligible spouse.

## I.  MEDICAL PLAN

### Questions and Answers

1.   **Who is eligible to participate?**

If you, as an employee, retire directly from the Company, you are entitled to participate in this plan (unless you are covered by a collective bargaining agreement which does not specifically provide for participation in the Plan).

**Qualified Dependents**

You may also elect coverage for your qualified dependents if they are covered by Northern Telecom medical plan when you retire.

2.   **How do I begin participation?**

Prior to your official retirement date, you will be given information and forms to complete concerning your participation in this Plan.  You will also be given the option to choose single or dependent coverage (if eligible) at that time.

1

3. **What medical plan or plans may I choose?**

The initial medical plan you, as a retiree, may choose will be designated by the Company. For 1991 the medical plan available to retirees is the Northern Telecom Indemnity Plan administered by Prudential.

In the future the Company may designate more than one medical plan in which retirees may participate. When there is more than one plan available, retirees will be given a choice of medical plans in which to participate.

4. **What is the coverage of the Plan if I retire before age 65?**

The coverage is the same as active employees in the Northern Telecom Indemnity Plan.

5. **How does the coverage change when I reach age 65?**

At age 65 the available medical coverage is a supplement to Medicare. This coverage is a supplement to Medicare Parts A and B. With the combination of Medicare and NTI's Medicare Supplement, retirees' benefits should be equal to benefits of active employees.

6. **What is the coverage of the Plan if I retire at age 65 or later?**

The coverage is a supplement to Medicare Parts A and B. With the combination of Medicare and NTI's Medicare Supplement, retirees' benefits should be the same as active employees' benefits.

7. **How are the company contributions for this coverage determined?**

The amount of company contributions toward your retiree medical coverage premium is determined by (1) the years of vesting service recognized for you under Northern Telecom Inc Retirement Plan for Employees (or its successor plan); (2) the type of coverage you choose (single or family); and (3) whether you are eligible for Medicare.

You will be given credit for company contributions for each year of service up to a maximum of twenty years.

If you qualify for the <u>Rule of 65</u>, you will be given credit for company contributions for each year of service as if you had completed twenty



(20) years of service.  The <u>Rule of 65</u> is met if your age plus years of vesting service equal 65 on December 31, 1991.

8.  **What are the dollar amounts of company contributions?**

The chart below shows the company contribution toward your premium for each year of service for the retiree medical plan:

o  <u>Single Coverage</u>

| | |
|---|---|
| Prior to Medicare Eligibility | $10.50 |
| Medicare Eligibility | 1.00 |

o  <u>Family Coverage</u>

| | |
|---|---|
| Prior to Medicare Eligibility | $26.00 |
| Medicare Eligible | 3.00 |

To determine the Company contribution for a covered family unit whose members differ as to Medicare eligibility, group the family into sub-groups by Medicare eligibility.  If a sub-group has only one member, the single coverage company contribution table will be used.  If a sub-group has more than one member, the family coverage company contribution table will be used.

For example, if the retiree is age 63 (not Medicare eligible) and the retiree's spouse is age 66 and is covered by Medicare, the company contributions would be $10.50 per year of service for the retiree and $1.00 per year for the spouse.  When both are covered by Medicare, the company contribution would be $3.00 for each year of service.

Another example, if a retiree is age 66 (Medicare eligible) and his spouse is also age 66 (Medicare eligible) and he has two other qualified dependents who are not Medicare eligible, the Company contribution would be $26.00 per year of service for the two qualified dependents and $3.00 per year of service for the retiree and his spouse.

9.  **How are my contributions for this coverage determined?**

Your contributions for this coverage are the remaining premium cost after subtracting the company contributions.

3

**10.    How are the annual premiums established?**

The premiums are established by Northern Telecom based on historic costs plus an expected medical trend rate in accordance with standard procedures for establishing medical coverage premiums. These premiums will be established at least annually.

**Premiums**

The annual premiums for 1991 are shown below:

Single
| | |
|---|---|
| Prior to Medicare Eligibility | $210.00 |
| Medicare Eligibility | 43.00 |

Family Coverage
| | |
|---|---|
| Prior to Medicare Eligibility | $555.00 |
| Medicare Eligibility | 106.00 |

**Retiree Cost**

Your cost is the difference between the premium and the company contributions. Examples:

Retiree, age 65 with 15 years of vesting service, family coverage:

| | |
|---|---|
| Premium | $106.00 |
| Credit toward premium | |
| 15 years x $3.00 | 45.00 |
| Retiree Cost | $61.00 |

Retiree, age 62 with 20 years of vesting service, single coverage:

| | |
|---|---|
| Premium | $210.00 |
| Credit toward premium | |
| 20 years x $10.50 | 210.00 |
| Retiree Cost | -0- |

4



**11.** **If I decide not to elect any retiree medical coverage, is the company contribution converted into cash or another benefit?**

No. If you decide not to elect retiree medical coverage, the company contribution is forfeited.

**12.** **Are there any requirements for me to be eligible for Medicare supplement coverage?**

Yes. To be eligible for the Medicare supplement coverage, you must enroll for benefits under Medicare Part A and Part B.

**13.** **What happens to my qualified dependent(s) when I die?**

The company will continue to make a company contribution toward retiree medical coverage for your dependent(s) who are covered by the plan even after your death provided your dependents continue to be qualified and continue to make their required contribution.

**14.** **What happens to my required contributions if my qualified dependent(s) die first?**

You will make contribution payments only for yourself and any remaining dependents covered by the plan.

**15.** **Can I be covered under the dental and vision plans after my retirement from the Company?**

No. Dental and vision coverage ceases at your retirement date.

**16.** **How do I file claims for medical coverage?**

Claims are filed through The Prudential Insurance Company, Northern Telecom Unit, P. O. Box 10125, High Point, NC 27261

**II.** **LIFE INSURANCE AND LONG-TERM CARE PLAN**

**1.** **Who is eligible to participate?**

If you, as an employee, retire directly from the Company at normal

retirement age, you are entitled to participate in this plan (unless you are covered by a collective bargaining agreement which does not specifically provide for participation in the Plan). If you retire before age 65, you must have ten years of service in order to be eligible to participate in this plan.

### Eligible Spouse

Your spouse is also eligible for long-term care coverage if on your retirement date your spouse either is (1) covered by the Company's plan or (2) is not confined for medical care or treatment at home or in any institution.

2. **How do I begin participation?**

   Prior to your official retirement date, you will be given information and forms to complete concerning your participation in this Plan.

3. **What options for life insurance and life insurance combined with long-term care do I have?**

   You have the following options:

   1. For employees who began employment prior to January 1, 1991, life insurance equal to your base pay and commissions as of December 31, 1990. This insurance amount will be reduced by 10% of the initial amount each year for five years. After five years, the life insurance coverage shall be equal to one-half of the initial amount with a maximum amount of $50,000.

   2. $35,000 life insurance coverage

   3. $10,000 life insurance coverage plus long-term care coverage for you up to $100/day with a maximum benefit of $180,000

   4. $10,000 life insurance coverage for you plus long-term care coverage for both you and your spouse for up to $70/day with a combined maximum benefit of $125,000

4.    **What is my cost for this coverage?**

There is no cost to you for this coverage. This benefit is totally paid by Northern Telecom.

5.    **What is the coverage of the plan if I retire before age 65?**

If under the Northern Telecom Inc. Retirement Plan for Employees (or its successor) you have credit for ten years of vesting service, you are eligible to participate in this Plan.

## LONG-TERM CARE

6.    **What kind of benefits are paid under the long-term care option?**

The long-term care option is designed to pay benefits not covered by either Medicare or the NTI Retiree Medical Plan. The key coverages are:

- Nursing Home Care of a custodial nature
- Home Health Care
- Adult Day Care

7.    **Who administers the benefits of this plan?**

This plan is administered through The Prudential Insurance Company long-term care unit.

8.    **If I have chosen the long-term care option, what must happen for me or my spouse (if covered) to receive benefits?**

The following events must happen for you to receive benefits under the long-term care plan:

- An insurable event must occur. You or your covered spouse must be assessed by Prudential to be dependent in two or more of the five Activities of Daily Living:
  1. Bathing
  2. Dressing
  3. Toileting
  4. Eating
  5. Transferring from bed to chair

7

- A 60-day waiting period must be completed. This waiting period is from the date Prudential determines the insurable event occurred.

## 9.    What are the specific benefit limits for the services covered?

After coordination with other eligible payments, the specific benefits paid under this plan are as follows:

|  | Employee Only | Employee Plus Spouse |
|---|---|---|
|  | $ per day for each person | |
| Nursing home services | $100 | $70 |
| Home Health Care | 50 | 35 |
| Adult Day Care | 50 | 35 |

## 10.    Where do I file claims for the long-term care benefit?

The Prudential Insurance Company is the claims administrator.  Claims may be submitted to:

The Prudential Insurance Company
Long-Term Care Services
GHCD 1
1201 New Road
Linwood, NJ 08221

Phone: (609) 293-2532

## Plan Name and Identification Numbers

The formal names and plan numbers of the two plans are the Northern Telecom Inc. Retiree Medical Plan, plan number 517, and Northern Telecom Inc. Retiree Life Insurance and Long-Term Care Plan, plan number 518.  In any formal correspondence about the plan you should make reference to the employer identification number assigned by the Internal Revenue Service. Northern Telecom Inc.'s number is EIN: 04-2486332.

## Employer and Address:

Northern Telecom Inc.
200 Athens Way
Nashville, TN  37228-1803

8



Northern Telecom Inc. is the plan administrator.

**Claims Administrator:**

> The Prudential Insurance Company
> Long-Term Care Services
> GHCD 1
> 1201 New Road
> Linwood, NJ 08221
>
> Phone: (609) 293-2532

### Type of Plan, Plan Year, and Funding

The Northern Telecom Inc. Retiree Medical Plan, and Northern Telecom Inc. Life Insurance and Long-Term Care Plan are welfare plans. Company costs, including premiums and contributions, are paid out of current or accumulated earnings and profits. Records for the plans are maintained on a plan-year basis, from January 1 through December 31.

### Legal Process

Legal process may be served on Northern Telecom Inc., 200 Athens Way, Nashville, TN 37228-1803, as plan administrator.

### Appeal Rights:

If you make a claim for benefits under the Plans, and all or part of it are denied, you may appeal this action to the Employe Benefits Committee. The committee will notify you by certified mail of the decision reached. If the claim is denied by the committee, the communication will also tell you how to appeal this decision.

### Continuation of the Plan

The Company intends to continue the Plans indefinitely. However, to protect against unforeseen situations, changes in the law, and changes in the financial environment, the Company does reserve the right to change the Plans and, if necessary, discontinue either of the plans at any time. Amendments will be made by appropriate actions of the Company.

## Plan Documents

This description of the Northern Telecom Inc. Retiree Medical Plan and Northern Telecom Inc. Life Insurance and Long-Term Care Plan summarizes the official Plan documents. We have tried to write this summary in clear, understandable and nontechnical language. To the extent this summary conflicts with the plan documents, the plan documents will control.

## How to Request Information

Requests for information or benefits should be made to your Human Resources department. They can provide any forms you may need to complete. Remember to include your name, social security number and location on all forms. Complete information will be given to you.

## Your Rights under the Employee Retirement Income Security Act of 1974 (ERISA)

ERISA contains certain requirements about disclosing plan information to plan participants and beneficiaries who are currently receiving plan benefits. We've made sure that this summary clearly describes the Northern Telecom Inc. Retiree Medicare Plan and Northern Telecom Inc. Life Insurance and Long-Term Care Plan and contains the information required by law to be included in a summary of your Plans.

This section of your booklet contains a statement of the rights granted to plan participants by ERISA. Some of these rights have already been discussed in other sections of this booklet. We have summarized them here for your convenience.

As a participant of the Northern Telecom Inc. Retiree Medical Plan and Northern Telecom Inc. Life Insurance and Long-Term Care Plan, you are entitled to:

- Examine, without charge, copies of all Plan documents including those filed with the U. S. Department of Labor, such as detailed annual reports and Plan description. These are located at the plan administrator's office and at your Human Resources department office.
- Obtain copies of all plan documents and other plan information upon written request to the plan administrator. A reasonable charge may be made for these copies.
- Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summaryual report.

10

ERISA not only creates rights for plan participants, it also imposes duties upon the people who are responsible for operation of the Plan. These people are called "fiduciaries"; their duty is to operate the Plan prudently and in the interest of you and other plan participants and beneficiaries.

No one, including your employer, or any other person may discriminate against you in any way intended to prevent you from obtaining a plan benefit or exercising your rights under ERISA.

If your claim for a benefit is denied in whole or in part by the plan administrator, you must receive a written explanation of the reason for the denial. You have the right to have your claim reviewed.

Under ERISA, you can take steps to enforce your rights. For instance, if you ask for materials from the Plan and do not receive them within 30 days, you may file suit in federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless they were not sent for reasons beyond the control the plan administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in federal court.

The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees if, for example, it finds your claim is frivolous.

If you have any questions about the Plans, you should contact the plan administrator or your local Human Resources department. If you have any questions about your rights under ERISA, you should contact the nearest Area Office of the U. S. Labor-Management Services Administration, Department of Labor.

## Claims Administration

The Prudential Insurance Company, provides claims related administration services under the Plans.

11