

August 18, 2012

**<u>Via CM/ECF AND ELECTRONIC MAIL</u>**

The Honorable Kevin Gross
United States Bankruptcy Court
824 N. Market Street, 6th Floor
Wilmington, Delaware 19801

Re:    <u>Nortel Networks Inc., <i>et al.</i>, Case No. 09-10138 (KG)</u>

Kate Roggio Buck
Associate
T. 302.984.6323
F. 302.442.4710
kbuck@mccarter.com

McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801-3717
T. 302.984.6300
F. 302.984.6399
www.mccarter.com

Dear Judge Gross:

We write on behalf of the Official Committee of Retirees (the "Committee") of the above-referenced Debtors in opposition to the Debtors' request to strike all of the Committee's requests for admission ("RFAs") (attached to Debtors' Letter filed at D.I. 8193). The Debtors' request is without merit and inappropriate, and should be denied.

In little more than three weeks, the expedited litigation schedule that the Debtors asked the Court to impose requires the Committee to file a response to the Debtors' motion to terminate the health insurance and other benefits of thousands of retirees (the "Motion"), to designate trial witnesses, and to file expert reports. *See* attached Order ¶¶ 2-3, 15. It is therefore essential to establish the relevant facts as soon as possible, and to do so without requiring the Committee to analyze the tens of thousands of documents that the Debtors may produce on September 7, a mere four business days before the Committee's response to the Motion is due.

In these circumstances, the Committee served the Debtors with RFAs to help identify and narrow the disputed issues that the Committee must be prepared to address in its September 13 response (the "Response") to the Motion, through witnesses to be designated the next day, and at trial. For this purpose, substantially all of the RFAs seek to establish, or facilitate proof of, the following facts:

1.  The Committee maintains that the Debtors did not, as they told the Court, reserve the right to terminate all retiree benefits in their discretion. Accordingly, the Committee served RFAs to establish that the 1991 "SPD" which limited the Debtors' right to terminate is authentic, governed employees' benefits for more than a decade and was distributed to Nortel employees even though the Debtors never provided the Committee with a copy of the 1991 SPD in response to pre-Motion document requests (RFAs 3-7, 10-12). The Committee also asked the Debtors to confirm that they conducted exit interviews during which they discussed retiree benefits with departing employees (RFAs 86-88).

BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

August 18, 2012
Page 2

    2.   The Committee maintains that the Debtors cannot satisfy 11 U.S.C. § 1114(g) because terminating retiree benefits is not "necessary." As a result, the Committee served RFAs to establish that (a) the Debtors have more than enough money to continue paying benefits (RFAs 20, 24-32, 56-65), (b) the Debtors expect to pay secured and administrative claims in full as well as more than 70% in satisfaction of unsecured claims (RFAs 29-32), (c) the administrative costs of maintaining retiree benefits are relatively small (RFAs 50-52, 89-92), and (d) the Debtors have not considered whether a mechanism can be found to continue benefits despite the Debtors' plans to continue winding down (37-40, 47-49).

    3.   The Committee maintains that terminating retiree benefits is not fair and equitable as section 1114 requires both because retirees will receive a vastly lower percentage of their claims than general unsecured creditors (*see* RFAs 29-32, 93) and because the Debtors' Proposal will likely leave thousands of retirees uninsured of whom hundreds will be uninsurable (RFAs 15-19, 78-80). Further, the Debtors' Motion misrepresents the value of their Proposal, which amounts to less than $40 million in taxable cash (RFAs 13-14), will not provide five years of insurance benefits as the Motion contends (RFAs 34-36), and should be compared to the benefits the Debtors would otherwise pay by the effective date (RFAs 21-23, 33).

    4.   The Committee maintains that the Debtors cannot satisfy section 1114 because the Committee has good cause to reject their Proposal:  the Proposal is not the Debtors' highest and best offer (RFA 45-46), the settlement amount would be diminished to pay substantial claims in addition to claims for retiree benefits  (RFAs 70-76), and the Proposal is based on an unjustified refusal to establish a VEBA which would enable retirees to receive their benefits tax free (RFAs 41-44).  The Committee also disputes the Debtors' good faith for these and other reasons, including the Debtors' refusal to provide key documents and information as section 1114 requires (RFAs 6-10, 42-44, 53-55, 66-69, 73-74, 77, 81-84, 88).

    Thus, the Committee's RFAs serve exactly the "vital" purposes RFAs are intended to serve:  they narrow the issues in dispute and "facilitate proof" of disputed issues by eliminating the need for burdensome document analysis during the short period before the Committee must designate witnesses and file its Response. *See, e.g., Langer v. Monarch Ins. Co.,* 966 F.2d 786, 803 (3d Cir. 1992). The objection that RFAs are "not … a means of fact discovery" has no application here.

    The Debtors also provide no basis for their request to strike the RFAs wholesale. Their argument that they should not be required to answer before the end of discovery is contrary to Rule 36, which does not allow a party to deny knowledge until it "has made reasonable inquiry," and is patently unfair given the expedited schedule. Nor should the Debtors be heard to plead "undue burden" without specifying precisely what that burden is. Indeed, the sole case the Debtors cite that strikes RFAs required the objector to answer 91 of them. *See Marietta Materials, Inc. v. Bedford Reinforced Plastics*, 2007 WL 1300772 (W.D. Pa. May 2, 2007).

August 18, 2012
Page 3

Further, the Debtors' three specific objections to the RFAs are without merit. First, the Debtors' argument that RFAs 6, 40 and 42 do not limit the issues in dispute is incorrect. RFA 42, if admitted, justifies rejection of the Proposal by showing that the Debtors have provided no reason to limit retirees to accepting benefits in taxable form. RFA 6 will cast doubt on the Debtors' good faith and the completeness of the information they have provided by establishing the Debtors' failure to produce a key requested document. And RFA 40 will show that the Debtors did not truly investigate whether they could continue providing benefits while winding down, proving that both terminating benefits, and the Debtors' expedited litigation schedule, are unnecessary. The Debtors' related objection to "cumulative" RFAs fares no better:  the purportedly cumulative RFAs seek information about the Debtors' assets and ability to pay creditors with small but important differences, and the similarity of these RFAs merely makes them easier to answer once the facts are known.

Second, the Debtors' request to strike RFAs as "duplicative" is not a request for efficiency, but rather a request to set up roadblocks:  instead of simply admitting that the Debtors have sufficient assets to confirm a chapter 11 plan, or how much providing benefits costs, or how little the Debtors did to locate documents responsive to the Retirees' pre-Motion requests, the Debtors ask the Court to deny the Committee this information and require the Debtors to analyze the Debtors' documents.  Even this would be ineffective, moreover, because no non-privileged document is likely to detail the Debtors' document search, and even many hours of document review are unlikely to prove whether a particular document estimating assets or costs is the most recent of its type or whether the Debtors agree with it.

Finally, the Debtors' assertion that the RFAs impose an undue burden is equally flawed. The Debtors are only required to make a "reasonable inquiry" in responding to an RFA, Fed. R. Civ. P. 34(a)(4), and in discussing RFA 78 as their sole example of undue burden, the Debtors fail to mention that their actuarial expert Mercer likely has the relevant information. (*See* RFA 80.)  Further, responding to the vast majority of the RFAs would require a very limited inquiry, particularly the many RFAs concerning the Debtors' financial projections (RFAs 20, 24-32, 50-52, 56-65), authenticating documents (RFAs 1, 3 and 4), the truth of statements in the Motion (RFAs 33-36, 41-44, 46, 73-77), and the Debtors' recent actions (RFAs 5-9, 12-14, 37-44, 46-52, 54-55, 66-68, 73, 74, 76, 77, 80-84, 88).

For these reasons, the Debtors' request should be denied.  Like the Debtors' failure to provide key documents to date and their expedited litigation schedule, it is yet another attempt to deny the Committee information which it needs to defend retirees' rights – and which section 1114 requires the Debtors to provide.  Nortel's retirees – many of whom spent decades working for the company and, because they are uninsurable, may face financial disaster – deserve better.

August 18, 2012
Page 4

Respectfully Submitted,

Dated: August 18, 2012
      Wilmington, DE

**MCCARTER & ENGLISH, LLP**

*/s/ Kate Roggio Buck*
Kate Roggio Buck (DE Bar I.D. #5140)
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
(302) 984-6399 Facsimile
kbuck@mccarter.com

-and-

Albert Togut, Esq.
Neil Berger, Esq.
Richard K. Milin, Esq.
Togut, Segal & Segal LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000
(212) 967-4258 Facsimile
altogut@teamtogut.com
neilberger@teamtogut.com
rmilin@teamtogut.com

*Counsel to the Official Committee of Retired Employees*

cc:   <u>VIA ELECTRONIC MAIL</u>
      Lisa Schweitzer, Esq.
      Lisa Beckerman, Esq.
      Christopher Samis, Esq.
      Tom Matz, Esq.
      Kathleen Makowski, Esq.
      Kenneth Coleman, Esq.
      Mary Caloway, Esq.
      Ed Harron, Esq.
      Derek Adler, Esq.
      Derek Abbott, Esq.
      Annie Cordo, Esq.