## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X

In re

Nortel Networks Inc., *et al.*,[1]

                 Debtors.

-------------------------------------------------------- X

:
:
:
:
:
:
:
:
:

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: September 19, 2012 at 10:00 am (ET)**
**Objections due:  September 12, 2012 at 4:00 pm (ET)**

### DEBTORS' MOTION PURSUANT TO BANKRUPTCY
### RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE
### STIPULATION RESOLVING THE PROOFS OF CLAIMS FILED BY POLYCOM, INC.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 502,

503(b)(9) and 553 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the

Debtors' entry into and approving a stipulation (the "Stipulation") with Polycom, Inc. on behalf

of itself and its wholly-owned subsidiaries, including but not limited to SpectraLink Corporation

("Claimant," and together with the Debtors, the "Parties"), attached hereto as **Exhibit B**, which

resolves Claimant's proofs of claim against NNI as well as certain additional contested issues;

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

and granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 502, 503(b)(9) and 553 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration

(the "English Proceedings") under the control of individuals from Ernst & Young LLP

(collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the

future may commence additional creditor protection, insolvency and dissolution proceedings

around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to

various purchasers.  For further information regarding these chapter 11 cases, reference may be

made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Facts Relevant to this Motion**

7.      On or about May 11, 2009 Claimant filed proof of claim number 1154 against

NNI for goods sold within 20 days of the commencement of the estate and in the ordinary course

of the Debtor's business in the amount of $1,203,597.46, all of which it asserted was entitled to

priority as an administrative expense under 11 U.S.C. § 503(b)(9) ("Claim No. 1154").

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A.,
Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel
Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks
B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel
Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks
Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

8.      On or about May 11, 2009, Claimant filed proof of claim number 1155 against

NNI for goods sold in the amount of $1,601,424.84, $1,203,597.46 of which it asserted was

entitled to priority as an administrative expense under 11 U.S.C. § 503(b)(9) and the remainder

of which it asserted as a general unsecured claim ("Claim No. 1155").

9.      In an effort to negotiate an expeditious resolution of the disputes between the

Debtors and the Claimant, the Parties entered into settlement discussions.  As a result of these

negotiations, the Debtors, subject to this Court's approval, have reached a compromise with

Claimants with respect to the resolution of the Claims as well as the additional contested issues

set out below in paragraphs 11 – 14 (the "Additional Contested Issues").

10.     With respect to the Claims, the Parties initially agreed that the proofs of claim for

Claim Nos. 1154 and 1155 (together the "Claims") support valid claims in the following

amounts (the "Supported Claim Amounts"):  Claim No. 1154 supports a valid claim with

administrative priority under 11 U.S.C. § 503(b)(9) in the amount of $61,816.55; Claim No.

1155 supports a valid general unsecured claim in the amount of $1,307,023.12.  The Parties have

further agreed that the allowed portion of the Supported Claim Amounts set out in this paragraph

should be adjusted based on the resolution of the Additional Contested Issues as set out below.

11.     First, on or about January 14, 2009, Claimant sent NNI a letter seeking return of

all goods received by NNI, NNC and any other Nortel subsidiary or affiliate, and on or about

January 22, 2009, Claimant filed the Notice of Reclamation and Administrative and Priority

Claim of Polycom, Inc. in NNI's bankruptcy case [D.I. 104] (the "Reclamation Demand").

Pursuant to the Order Establishing Procedures for Addressing Reclamation Demands Pursuant to

Sections 105(a), 362 and 546(c) and Rule 9019 of the Federal Rules of Bankruptcy Procedure

[D. I. 336] (the "Reclamation Procedures Order"), on or about May 14, 2009, the Debtors filed

and served the Debtors' Second Reclamation Notice [D.I. 756] (the "Notice"), which proposed to treat the Reclamation Demand as invalid in its entirety on the ground that insufficient documentation had been provided by Claimant.

12.    On or about September 8, 2009, Claimant filed an Objection to the Notice [D.I. 1437] (the "Reclamation Objection").  After further discussion of the amounts at issue, the Parties have agreed that $56,872.90 of the amount asserted in the Reclamation Demand constitutes an allowable administrative priority claim (the "Reclamation Settlement"), and that the Reclamation Settlement will be given effect by increasing the allowed amount of Claim. No. 1154 by $56,872.90.

13.    Second, the Parties have agreed that Claimant owes $152,105.000 in pre-petition royalties under two TCM Interface License Agreements (the "Licensing Agreement Amount Owed"), and the Debtors and the Canadian Debtors have agreed on a methodology to apply that amount to the claims respectively filed in the Debtors' cases and in the Canadian Proceedings. As a result of the agreement between the Parties, as well as the agreement between the Debtors and the Canadian Debtors, the Parties have agreed to reduce the allowable portion of Claim No. 1155 by $101,403.30 (the "Licensing Agreement Settlement Amount"), with the remainder of the Licensing Agreement Amount Owed applied to Polycom's claim in the Canadian Proceedings.

14.    Third, the Parties have agreed that Claimant owes $111,856.00 in pre-petition rebates under a U.S. Reseller Agreement dated April 25, 2007 (the "Rebate Amount Owed"). The Parties have further agreed to resolve the Rebate Amount Owed by reducing the allowable amount of Claim No. 1155 by $111,856.00 (the "Rebate Settlement Amount").

15. The parties have therefore agreed, pursuant to the Stipulation[5] and subject to this Court's approval, that Claim No. 1154 will be an allowed administrative priority claim under 11 U.S.C. § 503(b)(9) in the amount of $118,689.45; and Claim No. 1155 will be an allowed general unsecured claim in the amount of $1,093,763.82 (the "Allowed Claims").  In consideration of the partial allowance of these Claims against NNI, Claimant has agreed, subject to this Court's approval, to release all claims against the Debtors other than the Allowed Claims. The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of the Claims through the Stipulation is appropriate and in the best interest of both their estates and their creditors.

## Relief Requested

16. By this Motion, the Debtors seek an order, pursuant to sections 105(a), 502, 503(b)(9) and 553 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing the Debtors' entry into the Stipulation and approving the Stipulation, and (ii) granting them such other and further relief as the Court deems just and proper.

## Basis for Relief

17. The Debtors seek authorization to enter into the Stipulation under sections 105, 502, 503(b)(9) and 553 of the Bankruptcy Code and Bankruptcy Rule 9019.[6] Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

---

[5] In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

[6] Although the Parties do not believe that settlement of the pre-petition Licensing Agreement Amount Owed and Rebate Amount Owed involves a setoff pursuant to section 553 of the Bankruptcy Code, out of an abundance of caution the Debtors also request approval of the Stipulation pursuant to section 553 of the Bankruptcy Code and request related relief from the automatic stay.

18.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

19.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

20.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

21.     The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation and request that their entry into the Stipulation be authorized under Bankruptcy Rule 9019.  While the Debtors are prepared to litigate the Claims and the Additional Contested Issues described herein, and believe that they would prevail in such litigation, litigation carries with it inherent uncertainties and there are no assurances that such litigation would achieve a better result than the one set forth in the Stipulation.  Also, the settlement reflected in the Stipulation reduces a purported $2,805,022.30 in claims filed by Claimant, $2,407,194.92 of which was claimed as entitled to administrative priority, to an overall allowed administrative priority claim of $118,689.45 and an overall allowed unsecured claim of $1,093,763.82.  The Stipulation also resolves the Additional Contested Issues potentially subject to litigation between the Parties.  This resolution fairly balances the Debtors' likelihood of success on the merits of the Claims and Additional Contested Issues against their interest in avoiding the uncertainty of litigation.

22.     In addition, litigation of the Claims and Additional Contested Issues would result in the estate's expenditure of legal fees, which could exceed the amounts in dispute between the Parties.  Finally, the interests of the creditors militate in favor of approval of the Stipulation.  The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Claims and the Additional Contested Issues and the avoidance of legal expenses that would be incurred if the Claims and Additional Contested Issues were to be litigated.

23.     In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

## Notice

24.     Notice of the Motion has been given via first class mail to (i) counsel to the Claimant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the Canadian Debtors; (vi) the Monitor; and (vii) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

25.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  August 29, 2012
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lisa M. Schweitzer (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*