U.S. Bankruptcy Court
RECEIVED
SEP 0 4 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JUDGE KEVIN GROSS

----------------------------------------X
In re:                                  :      Chapter 11
                                        :
                                        :      Case No. 09 – 10138 (KG)
Nortel Networks Inc., et al.,           :
                                        :      Jointly Administered
            Debtors.                    :
                                        :      RE: CLAIM #2602
----------------------------------------

Re Dkt #7620

## MOTION TO RECONSIDER

### ORDER GRANTING DEBTORS' TWENTY-SIXTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR. P. 3007 AND DEL. L.R. 3007-1 (NO-BASIS CLAIMS, MODIFY AND ALLOW CLAIMS, RECLASSIFY AND ALLOW CLAIMS, WRONG DEBTOR CLAIMS, REDUNDANT CLAIMS, AMENDED OR SUPERSEDED CLAIMS, NO-BASIS 503(B)(9) CLAIMS AND NO-BASIS PENSION CLAIMS)

I, Michael Rose (hereafter referred to as "the Claimant") hereby file this Motion to Reconsider based on Rule 60(b) of the Federal Rules of Civil Procedure.

### Background

Proof of Claim #2062 was filed illustrating that ERISA 206 § (g)(3)(B) was mistakenly applied by the Debtor and its pension Trustee (Mercer). The Debtor ceased Pension Benefit accruals as of 12/31/2007, and therefore the Exception Rule ERISA 206 § (g)(3)(D) does apply. The Claimant is legally entitled to a Lump Sum Pension distribution pre-dating the bankruptcy, the Debtor's pension termination and transfer of pension trusteeship to the PBGC. The Proof of Claim was subsequently dismissed as a "No-Basis Pension Claim", even though no comparable claim exists in the entire Omnibus Objection.

## Reason(s) For Reconsideration

(1) Reasonable diligence could not have initially discovered the full scale of fiduciary failure and the negligible probability of being made whole. At least two factors did not exist when the Proof of Claim was originally filed (Transfer of Trusteeship to the PBGC, FY 2010 and FY2011 PBGC External Audit)

(2) The Debtor's "Reason For Disallowance" is in error, because it does not address the original assertion that ERISA 206 § (g)(3)(D) applies. The Claim involves an unpaid pension request that pre-dates bankruptcy and counsel for the PBGC has subsequently indicated it will not honor the distribution request.

(3) After three years of receiving legal notices and documents that almost never applied, an individual could be excused, for not immediately locating his name on approximately page 60, of a 66 page generically mailed document that does not directly address the Claimant by name, nor the Proof of Claim itself[1]. Especially given the requirement to fully discover and address point 1 above in a timely fashion.

## Main Point of Contention

The PBGC, the Debtor, the previous pension trustee (Mercer), and the Employee Benefits Security Administration (EBSA), all have proven complicit and/or compliant in neither informing the Claimant of, nor supporting, the Claimant's <u>legal right</u> to a lump sum pension distribution. This effectively misappropriated the Claimant's legal entitlement, leaving the

---

[1] Copy of the Documentation received is filed under Docket #7505

Claimant with a new unsecured debt and as <u>newly discovered</u>, negligible probability of being made whole.

**Pension Benefit Guarantee Corporation** – On or about August 17th, 2012, the Legal Department of the PBGC informed the Claimant, the PBGC does not issue lump sum payments. After informing the legal department of the Claimant's legal position on the issue, Legal Counsel maintained its stance and spoke of the PBGC's ample legal protection of assets granted by Congress[2]. It has subsequently been discovered that the PBGC has a Pension and Lump Sum System (PLUS), which appears contradictory[3].

**Employee Benefits Security Administration (EBSA)** –The Claimant engaged the EBSA and the EBSA eventually made contact with the Nortel Pension Administrator. The EBSA employee then informed the Claimant of, and supported, Nortel's mistaken position that ERISA § 206 (g)(3)(D) applied only to the year 2005, rather than came into effect as of September 1, 2005[4].

**Original Pension Plan Trustee** – The Claimant stated his legal position to the original pension trustee's call center on several occasions. On, or about February 19th 2009, the Trustee's call center informed the Claimant of, the Trustee's requirement to behave as instructed by the Debtor.[5] This should be considered a clear violation of the Trustee's fiduciary duty, to act in the best interests of plan participants and not in the best interests of the Debtor.

---

[2] See attached Call Log #10 for approximate date
[3] http://oig.pbgc.gov/audit/2011/pdf/FA-11-82-2.pdf (document pg 7 (labeled pg 2) paragraph 7
[4] See attached Call Log #8 for date, time and actual quote
[5] See attached Call Log #4 for date, time and actual quote

**The Net Effects are:**

- The Debtor, avoids legally required lump sum payments, additional legal costs vs. the PBGC, and likely receives a larger portion of funds in bankruptcy.

- The PBGC assumes a larger than legally entitled Pension Account, avoids additional legal costs vs. the Debtor and forces the Claimant into a new unsecured creditor position.

- The Claimant's pension distribution is misappropriated in exchange for the PBGCs' "Promise to Pay", replacing the Debtor's defaulted "Promise to Pay". The end result places considerable risk on the Claimant and all of the funds with the Debtor and the PBGC.

### Additional Discovery

A discovery of the PBGC's most recent External Audit (Fiscal Years 2010 and 2011), clearly attests the PBGC cannot meet future obligations and reports an unimproved outlook to date. **PBGC Independent Auditor's Report (November 14, 2011):**

- *Opinion on Financial Statements regarding the Single-Employer and Multiemployer Programs:* "management believes that neither program at present has the resources to fully satisfy the PBGC's long-term obligations to Plan participants." [6]

- *Opinion on Internal Control regarding the Benefits Administration and Payment Department (BAPD):* "The extended time required and the lack of meaningful progress in PBGC's multiyear approach to correct previously reported deficiencies at the root cause level, introduced additional risks. ………. BAPD's

---

[6] http://oig.pbgc.gov/audit/2011/pdf/FA-11-82-1.pdf pg 6 (labeled pg 2), 1st paragraph

weak internal controls create an environment that could lead to fraud, waste, and abuse.[7] ......... This process identified significant fundamental security control weaknesses for its general support systems, many of which were reported in prior year's audits. These weaknesses remain unresolved."[8]

- The "pay later promise", creates a congressional risk. Congress could remove, or reduce, the Claimants unsecured debt based on an almost unlimited number of currently unrelated factors, including, but not limited to:
  - The Claimant's age, or other financial sources
  - The financial resources of the Claimant's spouse
  - An insolvent PBGC could be directed by congress to first fund individuals that would otherwise require government assistance such as Welfare, Medicare or other government programs.
  - Congress could only fund the PBGC deficit with borrowed/printed money, thereby deflating away the value of any future payments.

**Other Court Appointed or Sanctioned Entities** – There are several entities that by name could have potentially supported the Claimant's issue in court, such as, the Official Committee of Unsecured Creditors, the Official Committee of Retirees, or the Official Committee of Retired Employees. However, over time and discovery, the Claimant has found no additional representation in court actually exists.

---

[7] http://oig.pbgc.gov/audit/2011/pdf/FA-11-82-1.pdf pg 7 (labeled pg 3), 2nd paragraph
[8] http://oig.pbgc.gov/audit/2011/pdf/FA-11-82-1.pdf pg 7 (labeled pg 3), 5th paragraph

### Summation

There appears almost no probability the Claimant will ever be made whole, if the Claimant's Proof of Claim is never given proper consideration by the court.

Were the courts not to uphold ERISA § 206 (g)(3)(D), corporations could freeze benefit accruals, not fund existing pension obligations indefinitely, and eventually escape under cover of bankruptcy. All in violation of ERISA and more specifically the Pension Plan Protection Act of 2006.

In addition the Claimant has been unable to locate any similar claims, which suggests the possibility of a larger scale misappropriation of legally entitled funds. Given some fiduciary miscues and lacking a "legal herd", the legal complexity and financial risk of obtaining counsel presents a natural barrier for similar claimants. Given the number of transferred severance claims in this bankruptcy, the misappropriation of any pension funds, appears even more unnecessary, inequitable and unlawful.

Michael Rose, Claimant

*[signature: Mike Rose]*

2615 Merlin Drive
Lewisville TX, 75056
213-334-3591

## Call Log (Re: Proof Claim # 2602)

| Log # | Called Party | Date | Notes |
|---|---|---|---|
| 1 | Nortel Pension Service Center | 9/28/2008 | Enquired why Pension forms had not arrived. Informed "there is no hurry", my forms package should arrive before Dec 15th. |
| 2 | Nortel Pension Service Center | 12/19/2008 (@11:42 AM CST) | Spoke to Ron: My form has been received. My check should be processed on Feb 1st and a check should arrive on approximately Feb 28th or 29th, 2009 |
| 3 | Nortel Pension Service Center | 02/17/2009 (@12:16 PM CST) | Spoke to Ian: Informed that lump sum distributions will not be paid due to the Nortel bankruptcy restructuring. There will be no options, other than waiting until retirement. |
| 4 | Nortel Pension Service Center | 02/19/2009 (@12:18 PM CST) | Spoke to Antonina: Received same response. Nortel will not pay a lump sum distribution. Explained the legal code as I understand it and eventually received the response, "Well, we have to do what Nortel tells us to do." |
| 5 | Nortel Pension Service Center | 02/20/2009 (@3:50 PM CST) | Spoke to Brittany: Inquired about the date of Nortel's first bankruptcy meeting\hearing. She does not know the date. |
| 6 | PBGC Office of Legal Counsel | On or about 03/04/2009 (@9:56 AM CST) | Name currently withheld: Obtained agreement. I definitely have a legal point. However the attorney is unsure as to what court is appropriate to address the issue. |
| 7 | Nortel Pension Service Center | 03/04/2009 (@9:49 AM CST) | Enquired as to when my pension distribution check would be distributed. Told Bankruptcy story. Requested some type of written notification, since none has ever been received. **Update:** Generic, photocopied, written notification received, but it is curiously undated. |
| 8 | Employee Benefits Security Administration (EBSA) | Date Not Recorded approx. March 2009 | Valerie Olds: Reached the Nortel Plan Administrator, who stated my statute only applies to the year 2005?? Explained my understanding to Valerie. She laughed, then replied "Well that's what the law says", supporting the Nortel Administrator's version. |
| 9 | Counsel; Official Committee of Unsecured Creditors | On or about June 14th, 2012 | Spoke to Chris Samis: Learned the Official Committee of Unsecured Creditors was created to represent the interests of large Creditors as a whole. |

## Call Log (Re: Proof Claim # 2602)

| Log # | Called Party | Date | Notes |
|---|---|---|---|
| 10 | PBGC Office of Legal Counsel | Approximately on or about Aug. 17th, 2012 | Counsel Response: The PBGC does not pay Lump Sum distributions and has been given considerable legal protection by congress to protect PBGC assets. After considerable discussion legal counsel did acknowledge the PBGC has paid some lump sum distributions when the amount was only a few thousand dollars. |

## 29 USC § 1056 or ERISA § 206

**(g) Funding-based limits on benefits and benefit accruals under single-employer plans.**

(3) Limitations on accelerated benefit distributions

**(B) Bankruptcy**

A defined benefit plan which is a single-employer plan shall provide that, during any period in which the plan sponsor is a debtor in a case under title 11 or similar Federal or State law, the plan may not pay any prohibited payment. The preceding sentence shall not apply on or after the date on which the enrolled actuary of the plan certifies that the adjusted funding target attainment percentage of such plan is not less than 100 percent.

**(D) Exception**

This paragraph shall not apply to any plan for any plan year if the terms of such plan (as in effect for the period beginning on September 1, 2005, and ending with such plan year) provide for no benefit accruals with respect to any participant during such period.