**EXHIBIT 1**

# UNITED STATES BANKRUPTCY COURT

_____District of Delaware_____

In re   Nortel Networks Inc., *et. al.*,
              Debtor

**SUBPOENA IN
A CONTESTED MATTER**

Case No. * 09-10138 (KG)

Chapter    11 (Pending, U.S.B.C. De.)

To: Nortel Networks Inc. Retiree Medical Plan
    Attn: Nortel Networks Inc., as plan administrator
    4001 East Chapel Hill-Nelson Highway
    Research Triangle Park, NC 27709

☐  YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above adversary proceeding.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above adversary proceeding.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

■  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

    See Exhibit A

| PLACE | DATE AND TIME |
|---|---|
| Togut, Segal & Segal LLP<br>One Penn Plaza, Suite 3335<br>New York, NY 10119<br>c/o Richard K. Milin | October 15, 2012 at 5:00PM |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

    Any organization not a party to this adversary proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in adversary proceedings by Rule 7030, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|  |  |

| ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER |
|---|
| Richard K. Milin, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (212)594-5000 |

* If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
                    DATE                              SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
 (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction -- which may include lost earnings and reasonable attorney's fees -- on a party or attorney who fails to comply.
 (2) Command to Produce Materials or Permit Inspection.
  (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises -- or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
   (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
 (3) Quashing or Modifying a Subpoena.
  (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
   (i) fails to allow a reasonable time to comply;
   (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person -- except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
   (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   (iv) subjects a person to undue burden.
  (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
   (i) disclosing a trade secret or other confidential research, development, or commercial information;
   (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
   (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

  (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
 (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
  (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
 (2) Claiming Privilege or Protection.
  (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   (i) expressly make the claim; and
   (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

## DEFINITIONS

1.     The use of the singular form of any word includes the plural and vice versa.

2.     "All," "any," and "each" shall each be construed to include all, any, and each.

3.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a request all documents that might otherwise be construed to be outside of its scope.  "And" and "or" shall also be construed either disjunctively or conjunctively in any definition as necessary to give the definition its broadest scope.

4.     "Bondholder Group" means the ad hoc group of bondholders holding claims against certain of the Debtors that is jointly represented by the Milbank Tweed firm in the Chapter 11 case.

5.     The term "Chapter 11 Case" means the above-captioned, jointly administered chapter 11 cases.

6.     The term "Chapter 11 plan" means a plan of reorganization or liquidation approved under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

7.     The term "communication" means any transmission of words, images, facts, numbers or ideas, including but not limited to any transmission in or by means of a document (as defined below), spoken word, conversation, conference, discussion, interview, audio or video recording, report or meeting, or any email, telephone, facsimile or other electronic transmission.

8.     The term "concerning" means relating to, referring to, describing, mentioning, evidencing or constituting.

1

9.      The terms "Debtor" and "Debtors" refer to anyone or more of the debtors in the Chapter 11 Case, any of their predecessor entities, any parents, subsidiaries, members or affiliates of any of the foregoing, and any directors, officers, employees, representatives, advisors, agents, attorneys, associates or persons acting for or on behalf of any of the foregoing.

10.     The term "document" shall be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes any written, printed, typed, electronic, or other recorded matter of any type or nature, however produced or reproduced, including information recorded in paper, digital, analog, graphic, electronic or photographic form; writings; emails; drawings; graphs; tables; photographs; telephone logs and records; electronic or computerized information, data or data compilations; term sheets; pitch books; financial records and books of account; journals; ledgers; audio recordings; video recordings; transcripts; memoranda; calendars; tables; invoices; appointment books; computer databases; PowerPoint or other presentations; CDs or DVDs; pamphlets; personnel files; correspondence; notes; bills; invoices; and communications of any kind. A draft or non-identical copy is a separate document within the meaning of this term.

11.     The term "identify," when used in reference to:

a)      a person, means to state (i) his, her, or its full name; present or last known address, present or last known email address and telephone number; and (ii) if a natural person, his or her present business affiliation and position or title;

b)      a document or communication, means to state (i) the date; (ii) the author(s), signatory or signatories; (iii) the recipient(s) or addressee(s); (iv) the type of document (i.e., correspondence, memorandum, etc.); (v) the contents with sufficient particularity to enable

the propounding party to confirm the document's identification; and (vi) its present or last known custodian and location.

12.    The term "includes" means "includes but is not limited to," and "including" means "including but not limited to."

13.    The term "person" means any natural person or legal entity, including but not limited to any partnership, corporation, unincorporated association, professional association or other form of business or governmental entity or association.

14.    The term "Plan" means any agreement, plan, fund or program which offers, promises or provides "Retiree Benefits" as defined below through the purchase of insurance or otherwise, or any employee welfare benefit plan, fund or program established or maintained to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services.

15.    The term "Potential Retiree" means any current employee of the Debtors who (i) was age 50 or older with at least five years of service as January 1, 2006; or (ii) was not age 50 or older with at least five years of service as January 1, 2006, but (a) was hired after January 1, 2008, (b) is age 50 or older with at least five years of service as of the date of retirement, and (c) is a member of the active employees' medical plan immediately before retirement.

16.    The "Proposal" refers to the document identified as the "Proposal" in the Debtors' Termination Motion (as defined below).

17.    The term "Retiree" means (a) any former employee of the Debtors who has retired, (b) any Potential Retiree, and (c) any present or former spouse or dependent of a former employee of the Debtors who has retired or of a Potential Retiree.

18.    The term "Retiree Benefit" means any payment to any entity or person for the purpose of providing or reimbursing payments for retired employees, or their spouses or dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death.

19.    The term "Retiree Claim" means any and all actual or potential claims, demands, causes of action, debts, liabilities or obligations, whether based on any legal or equitable theory or otherwise, including, but not limited to suits in contract, tort or equity, whether arising under contract, the Employee Retirement Income Security Act of 1974 (ERISA), the Consolidated Omnibus Budget Reconciliation Act (COBRA), or any other statute, rule, regulation, common law or otherwise, and whether arising under the laws of the United States, any political subdivision thereof or the laws of any other jurisdiction, in all cases relating to:

i.    Any benefits, other obligation or other claims arising under or relating to Retiree Welfare Plans (as defined below) or Retiree Benefits;

ii.    The administration of Retiree Welfare Plans, including, but not limited to, the calculation of Retiree Benefits, the application of offsets against Retiree Benefits, the denial of Retiree Benefits, the determination of eligibility to receive Retiree Benefits, the interpretation of Retiree Welfare Plans and the drafting of Retiree Welfare Plans; or

iii.    The past, present or future amendment, modification and/ or termination of any Retiree Welfare Plan and/ or any benefits or coverage thereunder.

20.    The term "Retiree Claim Exclusions" means:

4

a)      Claims arising from or relating to the Nortel Networks Severance Allowance Plan or the Nortel Networks Enhanced Severance Allowance Plans, including related fringe benefits;

b)      Claims arising under or relating to the Nortel Networks U.s. Deferred Compensation Plan or the Northern Telecom Inc. Senior Management Incentive Award Program;

c)      Claims for qualified pension benefits arising under or relating to the Nortel Networks Retirement Income Plan, Nortel Networks Pension Service Plan, Nortel Networks Cash Balance Plan, Northern Telecom Inc. Retirement Plan for Employees or the Nortel Networks Capital Accumulation and Retirement Program, which are properly asserted only against the Pension Benefit Guaranty Corporation;

d)      Claims for non-qualified pension benefits arising under or relating to the Nortel Networks Retirement Income Plan Restoration Plan, Nortel Networks Cash Balance Restoration Plan, Northern Telecom Inc. Excess Pension Plan, Nortel Networks Long-Term Investment Restoration Plan, Nortel Networks Supplementary Executive Retirement Plan, the Nortel Networks Special Pension Benefits Plan and the Nortel Networks Special Pension Credit Plan;

e)      Except to the extent described above, valid claims for reimbursement for benefits covered by and approved pursuant to the Retiree Welfare Plans incurred prior to the Termination Date that are properly brought prior to the expiration of the run-off (as amended);

f)      Claims for expatriate benefits and relocation expenses;

g)      Claims for the account balance currently vested in an individual's account under the Nortel Networks Long-Term Investment Plan or Northern Telecom Inc. Thrift Savings Plan; and

h)     Claims directly arising under a written employment agreement between an individual Retiree and the Debtors that are wholly unrelated to life insurance, death benefits, retirement payments, medical insurance, long-term care insurance or any other Retiree Claims.

21.     "Retiree Committee" means the Official Committee of Retired Employees of the Debtors appointed in the Chapter 11 Case by the Office of the United States Trustee for the District of Delaware on August 2, 2011.

22.     The term "Retiree Welfare Plans" means the Nortel Networks Inc. Retiree Medical Plan, the Nortel Networks Inc. Retiree Life Insurance and Long-Term Care Plan, predecessor plans and other formal or informal benefit plans, agreements, arrangements or programs (including plans, agreements, arrangements or programs that are funded through the purchase of insurance) or arrangements for current or future retired employees, their surviving spouses and eligible dependents, including plans, arrangements, agreements or programs for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death collectively and in each case as amended or modified from time to time.

23.     "SPD" means "summary plan description."

24.     "Termination Motion" means the Debtors' Motion For Entry Of An Order Terminating Retiree Benefits And Approving A Settlement Proposal Pursuant To 11 U.S.C. § 1114 dated July 30, 2012.

25.     "UCC" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the Office of the United States Trustee for the District of Delaware on January 26, 2009.

26.     "VEBA" means a voluntary employees' beneficiary association within the meaning of section 501(c)(9) of the Internal Revenue Code of 1986, as amended.

27.    "You" means, and "your" refers to, the Nortel Networks Inc. Retiree Medical Plan and the Debtors.

## INSTRUCTIONS

1.    In response to each request for documents set forth below (each, a "Document Request"), produce each responsive document in the Debtors' possession, custody or control, including documents in the possession, custody or control of the Debtors' affiliates and the Debtors' present or former attorneys, accountants and other agents or representatives.

2.    If any document responsive to these requests is withheld under a claim of privilege or immunity from disclosure, furnish a list specifying each such document and setting forth the information required to be furnished by the Applicable Rules, including:

a)    the reason for withholding the document;

b)    a statement of the basis for the claim of privilege, work product or other basis for nondisclosure;

c)    a brief description of the document including:

i.    the date and type of the document;

ii.    the number of pages, attachments, and appendices;

iii.    the names of the author, authors or preparers and an identification of each such person's employment title and position at the time;

iv.    the name of each person who was sent, shown, or copied on the document, who sent or received the document, or who had access to or custody of the document, together with an identification of each such person's employment title and position at the time;

v.    each present location and custodian of the document;

vi.    the number of pages of the document

7

vii. a description of the subject matter and content of the document and, if the document is concerning a meeting or conversation, a description of the time, date and location of and participants in the meeting or conversation.

3. If any document requested herein was formerly in the Debtors' possession, custody or control but, in whole or in part, has been lost, destroyed or otherwise disposed of, identify the document or its missing part and provide the information specified below:

a) the date and type of the document;

b) the names of the author, authors or preparers and an identification of each such person's employment title and position at the time;

c) the name of each person who was sent, shown, or copied on the document, who sent or received the document, or who had access to or custody of the document, together with an identification of each such person's employment title and position at the time;

d) each present location and custodian of the document;

e) the number of pages of the document;

f) a description of the subject matter and content of the document, and if the document is concerning a meeting or conversation, a description of the time, date and location of and participants in the meeting or conversation;

g) a description of the date on which the document was lost or destroyed and, if destroyed, the conditions of and reason(s) for the destruction and each person requesting, performing or having knowledge of the destruction.

4. All documents should be produced as they are kept in the usual course of the Debtors' business or shall be organized and labeled to correspond to the categories in this Request. A Document Request shall be deemed to include a request for any and all file folders

8

within which each responsive document was contained and transmittal sheets, cover letters,

exhibits, enclosures, or attachments to the document in addition to the document itself.

5.      Documents attached to each other should not be separated.

6.      Unless otherwise noted, each Document Request calls for documents

dated, created, sent, received, reviewed or concerning any date after December 31, 1981.  To the

extent that any document responsive to a Document Request concerns a retiree who retired prior

to January 1, 1982, that document also should be produced.

7.      Each Document Request shall be continuing, and supplemental responses

shall be served in accord with Rule 26 of the Federal Rules of Civil Procedure and Rule 7026 of

the Federal Rules of Ban1cruptcy Procedure.

## DOCUMENT REQUESTS

Please produce the following documents:

1.      All documents concerning any additional costs that the Debtors would or

would be likely to incur if the Retiree Welfare Plans are not terminated on or before December

31, 2012, including any analysis of those additional costs.

2.      All documents dated, created, sent, received or reviewed at any time after

January 1, 2008 concerning any cost, benefit, advantage or disadvantage, financial or otherwise,

incurred, projected or expected to be incurred in connection with providing any Retiree Benefit

or continuing or modifying any Plan or Retiree Welfare Plan.

3.      All documents dated, created, sent, received or reviewed at any time after

January 1, 2008 concerning any cost, benefit, advantage or disadvantage, financial or otherwise,

incurred, projected or expected to be incurred in connection with any Retiree Claims, excluding

any Retiree Claim Exclusions.

4.      All documents dated, created, sent, received or reviewed at any time after January 1, 2008 concerning any potential cost, benefit, advantage or disadvantage, financial or otherwise, that might be incurred in connection with providing any Retiree Benefit or continuing or modifying any Plan or Retiree Welfare Plan.

5.      All documents dated, created, sent, received or reviewed at any time after January 1, 2008 concerning any potential or cost or disadvantage, financial or otherwise, that might be incurred in connection with any Retiree Claims, excluding any Retiree Claim Exclusions.

6.      A complete identification in excel spreadsheet form as of the date of this Request of the Debtors' Retiree Welfare Plan participants, including an identification of all individuals receiving or potentially entitled to receive Retiree Benefits under any Plan or Retiree Welfare Plan, and for each such individual, the individual's name, address, elections relevant to Retiree Benefits, and all further types of information concerning each such individual that the Debtors provided to the Retiree Committee or its professionals previously in their "census" of Retiree Benefits. The information provided should include, for each Retiree, the following: (1) sex; (2) date of birth; (3) original hire date, rehire date, and continuing service date; (4) date of termination of employment; (5) date of retirement; (6) whether deceased and, if so, the date of death; (7) monthly pension; (8) health plan selected; (9) health coverage level selected (e.g. Retiree only, Retiree plus spouse, etc.); (10) other benefit options selected upon retirement; (11) years of service at retirement; (12) Retiree Benefits provided, including the amount of any monthly subsidy toward the cost of medical Benefits being provided to the Retiree, (13) annual salary and bonus as of 12/31/90 (for those who elected option #1 of the life insurance options); (14) a unique identifier (e.g. Nortel identification number); (15) spouse gender and date of birth;

(16) surviving spouse date of birth; (17) which of the previously available Capital Accumulation and Retirement Programs the retiree was a member of (i.e. Grandfathered, Traditional, Balanced or Investor); (18) whether the Retiree retired under an early retirement program; (19) whether the Retiree retired under the 1995/96 Retirement Enhancement Program, the 1998 Early Retirement Incentive Program, or a reduction in force as of July 1, 2001 or later.

7.    All documents concerning any potential or projected cost to the Debtors of providing Retiree Benefits at any time after January 1, 2009.

8.    All documents concerning any potential or projected cost savings as a result of termination of retiree benefits relative to the continuation of existing Retiree Welfare Plans.

9.    All documents concerning any potential or projected cost to the Debtors of paying Retiree Claims, excluding Retiree Claim Exclusions, at any time after January 1, 2009.

10.    All documents concerning, and documents sufficient to establish, the actual and projected net cost to the Debtors of continuing to provide Retiree Benefits, without modifying the Retiree Welfare Plans, after July 1, 2012.

11.    All documents concerning the Debtors' statement in the Termination Motion that, "The current cost to the Debtors of providing the Benefits under the Retiree Welfare Plans is between approximately $1.1 and $1.3 million per month, although the Debtors expect that the costs would go up as the current population ages, if premiums were increased, if health care costs rise and/or if a greater number of claims were filed."

12.    Documents sufficient to establish the administrative costs, and the costs of providing Retiree Benefits, that the Debtors have incurred during each of the past five years.

13.    All documents concerning any communications after January 1, 2008 with any insurers, reinsurers, insurance brokers, or agents or representatives of any of the foregoing, concerning Retiree Benefits, a Plan, a VEBA or a Retiree Welfare Plan.

14.    All documents concerning any change in the cost of the services that the Debtors will perform, may perform or expect to need performed at any time after January 1, 2008 in connection with (a) paying or providing any Retiree Benefit or Retiree Claim, or (b) any Plan or Retiree Welfare Plan.

15.    All documents concerning any cost or benefit to the Debtors of changing, or not changing, (a) the means by which they pay or provide Retiree Benefits or Retiree Claims, or (b) any Plan or Retiree Welfare Plan.

16.    All documents concerning whether the Debtors can change, or cannot change, (a) the means by which they pay or provide Retiree Benefits or Retiree Claims, or (b) any Plan or Retiree Welfare Plan.

17.    All documents concerning any potential or projected savings the Debtors may or might achieve by (a) changing the means by which they pay or provide Retiree Benefits or Retiree Claims, (b) changing any Plan or Retiree Welfare Plan, or (c) terminating any Plan or Retiree Welfare Plan.

18.    Documents sufficient to identify each Retiree who is currently receiving Retiree Benefits but would likely be unable to obtain individual health insurance coverage for at least some period of time after the Debtors terminate the Retiree Welfare Plans, assuming that the Retiree Welfare Plans are terminated as of December 31, 2012.

19.     Documents sufficient to identify each Retiree currently receiving Retiree Benefits who was previously receiving health and welfare benefits under Nortel's Long-Term Disability Plan immediately before his or her retirement.

20.     Documents sufficient to identify how many Retirees who are currently receiving Retiree Benefits would likely be unable to obtain individual health insurance coverage for at least some period of time after the Debtors terminate the Retiree Welfare Plans, assuming that the Retiree Welfare Plans are terminated as of December 31, 2012.

21.     Documents sufficient to identify how many Retirees who are participating in a Retiree Welfare Plan have debilitating or life-threatening health conditions.

22.     All documents concerning whether any Retiree participating in a Retiree Welfare Plan will or may be unable to obtain individual health insurance coverage because of a pre-existing condition.

23.     All documents concerning any Retiree's or group of Retirees' actual or potential ability to obtain group life, health or long-term care insurance.

24.     All documents concerning any Retiree's or group of Retirees' actual or potential ability to obtain individual life, health or long-term care insurance.

25.     All communications to, from or provided to the Debtors after January 1, 2009 concerning Retirees' insurability.

26.     All documents concerning Retiree Claims asserted against the Debtors, excluding Retiree Claim Exclusions and claims for Retiree Benefits.

27.     All documents concerning any computation, discussion or analysis of any Retiree Claims asserted against the Debtors, that are not claims for Retiree Claim Exclusions and claims for Retiree Benefits.

28.    All documents concerning the actual or potential cost to the Debtors of paying or defending against any Retiree Claims, that are not claims for Retiree Claim Exclusions and claims for Retiree Benefits.

29.    All documents concerning how the Debtors or any other person could obtain facts relevant to defending against any asserted Retiree Claim, that is not a claim for a Retiree Claim Exclusion or a claim for Retiree Benefits.

30.    Documents sufficient to identify each Retiree Claim that is not a claim for a Retiree Claim Exclusion or a claim for Retiree Benefits.

31.    Documents sufficient to identify each written agreement in which the Debtors stated that they would provide life insurance, health or long-term care benefits to a Retiree in addition to or apart from any rights the Retiree might have under a Plan provided to any Retirees as a group.

32.    All documents in which the Debtors stated that they would match Retiree Benefits made available to employees of any other company.

33.    All documents concerning any computation or analysis of claims for Retiree Benefits asserted against the Debtors that are not included within the information that the Debtors caused to be provided to the Retiree Committee as the "census."

34.    All documents concerning the potential cost of providing Retiree Benefits to long-term disabled employees or former employees of the Debtors who are or may be eligible to claim Retiree Benefits.

35.    All documents concerning the potential cost of providing Retiree Benefits to employees of the Debtors as of the date of the Termination Motion who are or may be eligible to claim Retiree Benefits.

14

36.     All documents concerning the costs of retirees of the Debtors making COBRA elections after January 1, 2011, or concerning any analyses of this issue by the Debtors.

37.     All documents concerning the valuation of Retirees' Benefits or Retiree Claims, excluding Retiree Claim Exclusions.

38.     All documents concerning the data, or the reliability of the data, available to the Debtors or provided by the Debtors to the Retiree Committee concerning Retiree Claims and Retiree Benefits, including the "census."

39.     All documents concerning any errors, omissions or inconsistencies in the data that the Debtors provided or caused to be provided to the Retiree Committee concerning Retiree Claims and Retiree Benefits, including the "census."

40.     All documents concerning any actuarial reports concerning projected Retiree medical benefit costs or the net present value thereof prepared during the last five years.

41.     All documents concerning whether the Debtors have the right, or stated that they have the right, to terminate or modify any Retiree Benefits or Retiree Welfare Plans.

42.     All documents concerning any reservation by the Debtors of any right to terminate or modify any Retiree Benefits or Retiree Welfare Plans.

43.     All documents concerning any Retiree Welfare Plan, SPD or modification of Retiree Benefits.

44.     All Retiree Welfare Plans, SPDs, and statements concerning modification of Retiree Benefits.

45.     All communications with employees, retirees of the Debtors or Retirees concerning Retiree Benefits or any Retiree Welfare Plan.

46.     All documents concerning any exit interviews with employees at which (a) Retiree Benefits were discussed or (b) any documents concerning Retiree Benefits or any Retiree Welfare Plan were provided.

47.     All documents concerning any communication with any employee or Retiree about Plans, Retiree Welfare Plans or Retiree Benefits, including all documents concerning the preparation of the communication.

48.     All documents concerning enrollment for or selection of any Retiree Benefit, or any option concerning Retiree Benefits.

49.     All documents concerning forms or questionnaires given to or signed by retirees concerning Retiree Benefits or Retiree Welfare Plans.

50.     All documents concerning any application or request for Retiree Benefits or participation in a retiree Welfare Plan.

51.     All documents concerning any pre-retirement or post-retirement counseling provided to persons who were employed by, or retired or retiring from, the Debtors.

52.     All documents concerning any changes in contributions or coverage under any Retiree Welfare Plan.

53.     Documents sufficient to identify each current recipient of Retiree Benefits, including the recipient's name, address and email address.

54.     Documents sufficient to identify each employee or long-term disabled person who is a potential recipient of Retiree Benefits, including their name and address.

55.     All claims filed against the Debtors, and all documents about claims filed against the Debtors, for Retiree Benefits.

56.    All claims filed against the Debtors, and all documents about claims filed against the Debtors, for Retiree Claims, excluding claims filed exclusively for Retiree Claim Exclusions.

57.    All documents concerning any potential or projected cost to the Debtors of paying Retiree Claims, excluding Retiree Claim Exclusions, at any time after January 1, 2009.

58.    All documents concerning any communication or contract between the Debtors and any other person after January 1, 2008 concerning the provision of services in connection with (a) paying or providing any Retiree Benefit or Retiree Claim, or (b) any Plan or Retiree Welfare Plan.

59.    All documents concerning any analysis or investigation of alternative methods by which the Debtor could, might or should provide Retiree Benefits after January 1, 2009.

60.    All documents concerning the actual or potential willingness of any insurer to provide group life insurance to Retirees, including documents concerning any such potential insurance program or its cost.

61.    All documents concerning the actual or potential willingness of any insurer to provide group health insurance to Retirees, including documents concerning any such potential insurance program or its cost.

62.    All documents concerning the actual or potential willingness of any insurer to provide group long-term care insurance to Retirees, including documents concerning any such potential insurance program or its cost.

63.    All documents concerning communications with the Retiree Committee or with Richard Levin.

64.     All documents concerning the value or valuation of Retiree Benefits payable after July 1, 2012, whether or not the Retiree Welfare Plans are modified or terminated.

65.     All documents concerning the value or valuation of Retiree Claims, excluding Retiree Claim Exclusions, payable after July 1, 2012, whether or not the Retiree Welfare Plans are modified or terminated.

66.     Documents concerning formulas for calculating the Debtors' subsidy toward Retire Benefits under the "2007 cost sharing arrangement" referenced in the Retiree Welfare Plans.

67.     All documents maintained or formerly maintained in the Debtors' offices in Tennessee, North Carolina, or Ontario, Canada concerning any Retiree Welfare Plan, SPD or Retiree Benefits.

68.     All documents concerning any employee handbooks, benefits booklets, brochures, letters or fliers concerning retirement planning, Retiree Benefits or any Retiree Welfare Plan.

69.     All documents concerning any process or procedure for adopting, endorsing or modifying any Retiree Welfare Plan or Retiree Benefit.

70.     All documents concerning when or whether it would or might be necessary to modify or terminate any Retiree Welfare Plan or Retiree Benefit.

71.     All communications with the Internal Revenue Service or Department of Labor concerning any Retiree Welfare Plan or Retiree Benefit.

72.     All documents concerning Retiree Benefits available or potentially to be provided upon selecting early retirement.

18

73.     All scripts employed in pre-retirement counseling, post-retirement counseling, or exit or employment interviews, concerning Retiree Welfare Plans or Retiree Benefits.

74.     All documents concerning any financial statements for the Retiree Welfare Plans for the last three years.

75.     All documents reviewed or relied upon in responding to, or identified in any response to, the Official Committee of Retired Employees' First Set of Interrogatories directed to the Debtors dated August 10, 2012.