## OBJECTION TO DEBTORS MOTION TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

From    William Johnson
        2865 horsemans Ridge drive
        Clayton, NC, 27520

To:    Clerk of the Court
        United States Bankruptcy Court
        District of Delaware
        824 Market Street
        3rd Floor
        Wilmington, DE 19801

        Lisa Schewitzer,
        Cleary Gottlieb Steen Hamilton,
        One Liberty Street,
        New York, NY  10006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Nortel Networks Inc., *et al.*,[1] | ) Case No. 09-10138 (KG) |
| | ) |
| Debtors. | ) Jointly Administrated |
| | ) |
| | ) Objection Deadline: _____ at _____a.m/ p.m. |
| | ) Hearing Date: _____ at _____ a.m./ p.m. |

## OBJECTION TO DEBTORS MOTION TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

William Emory Johnson of the above-captioned debtors and debtors-in-possession, hereby submits this motion for Objection to Nortel's Motion to Terminate.  In support of this Motion, William Emory Johnson respectfully represents as follows:

The purpose of this information is to voice my Objection to Nortel's Motion to Terminate.

This action will have a tremendous negative financial and medical impact on me. I planned on Prudential insurance benefits until I turned age 65. I have enclosed a letter from Prudential stating that my benefit will continue until I am age 65. I will be 65 in October. My financial planning targets my loan payments

being completed by 2015. Any loss in income will devastate that plan. I don't know how I will make my budget work. I enclosed a Proof of Claim to show the financial impact.

As far as medical issues, I am currently under medical care for a Bone Marrow Transplant for Leukemia cancer. The actual BMT was in March of 2011. Because of my deterated condition I have to have blood transfusions as well as BMT biopsy. Due to my medical condition is no way I could get a job to supplement my income. My Short Bowel condition still disables me. I have included past letters from my doctors reflecting this.

1.     Your Honor, I will attempt to demonstrate the benefits that were offered to me as an active Nortel employee vs. the position wherein the Debtors seek to terminate the LTD plan & LTD employees and the corporate environment leading up to this.
2.     The language across the LTD summary plan description that fed the common, reliable & repeatable understanding that I was to receive LTD insurance benefits until retirement.
3.  All the communication in the process documents communicated insurance benefits to continue to age 65.  "Insurance" labeling/letterheads reflect Prudential Insurance as Nortel's administrator of this Insurance policy.


Forms and letters include:
1. Letter from Prudential Insurance Company stating my LTD benefits will continue until I am age 65
2. Proof of Claim excel worksheet
3. FMLA forms showing Nortel letterhead and reflecting TOPS handling of my claim
4. Medical history for William Johnson
5. Approval letter for receiving Short Term Disability benefits from the Insurance policy claim form Prudential Insurance Company.
6. Approval letter for receiving Long Term Disability benefits from the Insurance policy claim from Prudential Insurance Company. Page 3 reflects Prudential Insurance Company following the Nortel group LTD Plan. Prudential insurance policy claim numbers are on page 1.
7. Social Security Disability approval letter
8. Because I had to downsize my home when I was granted disability, I include a confirmation letter from my mortgage company. They accepted my income from Prudential Insurance as permanent income. I am now in contact with my mortgage banker to see if anything can be done to help me.
9. Letter from David Moran reflecting that Nortel was providing the LTD insurance benefit.
10. Letter with Nortel letterhead reversing the Termination in July 2010
11. Various Letters showing:
    a. 1) Prudential is Nortel Networks insurance claim Administrator
    b. 2) Prudential administers the Group Disability Insurance
    c. 3) Second letter from David Moran reflecting the handling of the insurance claim between Nortel and Prudential.
12. Letter from the Retirement PBGC federal department that shows my loss of income if I am forced to retire.
13. Copy of 2 pay stubs showing my LTD benefit and a FLEX benefit letter showing my present medical benefits
14. A copy of Nortel's LTD policy 2004. Please take note of pages 20-21 showing age 65 as the benefit age that LTD insurance policy will be supported.

William Johnson – Medical History

1986 – major accident going to Nortel job site, several surgeries for torn urethra and broken pelvis

1989 – Saliva gland removed due to lymphoma cancer in the neck

1990 – Colon resection due to colon cancer

1990 – Several rounds of Chemotherapy

1992 – Chemotherapy for various lymph node tumors neck and groin, COV chemo treatment,

1992 – Radiation treatment to stomach area due to major lymph node tumor

1995 – Back surgery lower back Alabama

2000 – Autologous Bone marrow transplant Lymphoma cancer around spinal cord at UNC

2000 – fusion of 2 neck vertebrae due to deteriorated disk disease

2002 – Gall bladder surgery  / blocked small bowel / Short bowel resections {# 1

Feb 2005 – Applied for Disability due to Short Bowel issues

2005 – Short bowel resections {# 2 due to complications of Gall bladder surgery, 3 months in Rex

March 2006 - Applied and received Long Term Disability from Nortel

2010 – first diagnosis of MDS / Leukemia cancer started vidaza chemotherapy treatments in Raleigh

March 1, 2011 – Allogeneic Bone marrow transplant for MDS Leukemia/ cancer at UNC cancer hospital


Each of these issues from above have taken a toll on my body and I continue to get weaker as time goes on

Proof Of Claim

## WHO IS THIS "PROOF OF CLAIM" BEING SUBMITTED FOR?

William Johnson

## WHAT IS THE NORTEL GLOBAL ID # OF THIS INDIVIDUAL?

0200211

## WHAT WAS THE FIRST DATE THAT YOU WERE OUT ON LONG-TERM DISABILITY?

March 14, 2006

## WHAT IS YOUR AGE (As Of January 1, 2012) ...

| | |
|---|---|
| Years | 61 |
| Months | 14 |
| AUTOMATICALLY CALCULATED FOR YOU - AGE IN MONTHS AS OF JANUARY 1, 2011 | 746 |
| AUTOMATICALLY CALCULATED FOR YOU - MONTHS UNTIL YOU REACH AGE "65" | 34 |

## YOUR ANNUAL SALARY PER YOUR 2011 FLEX BENEFITS STATEMENT

$ 102,960.00

## IF YOU HAD A 401K AND SIGNED UP FOR Capital Accumulation Retirement Plan (CARP) Contributions ...

WHAT WAS THE % CARP CONTRIBUTION IDENTIFIED TO YOU BY NORTEL (PLEASE ENTER 0.02 OR 0.04)?    0.04

AUTOMATICALLY CALCULATED FOR YOU - MONTHLY CONTRIBUTION BY NORTEL INTO YOUR 401K ....    $ 4,118.40    $ 11,668.80

## FROM NORTEL HR MEMO ENTITLED "TERMINATION NOTIFICATION"

SEVERANCE PERIOD    22

AUTOMATICALLY CALCULATED FOR YOU - SEVERANCE PAY    $ 1,980.00    $ 43,560.00

## FROM YOUR MOST RECENT PRUDENTIAL PAY STUB (EX. August 2012 LTD Paystub) ...

| | | |
|---|---|---|
| "GROSS" MONTHLY SICK PAY FROM PRUDENTIAL | $ 6,006.00 | $ 204,204.00 |
| SSDI MONTHLY OFFSET | $ 1,882.10 | $ 63,991.40 |
| Medicare Part B Reimbursement Per LTD Plan | $ 98.00 | $ 3,332.00 |
| AUTOMATICALLY CALCULATED FOR YOU - NET PAY | $ 4,221.90 | $ 140,212.60 |

## Estimates On What Replacement Coverage Would Cost You

| | | |
|---|---|---|
| MEDICAL CARE | $ 3,149.38 | $ 8,923.24 |
| DENTAL/VISION/HEARING CARE | $ 576.16 | $ 1,632.45 |
| HEALTH CARE REIMBURSEMENT ACCOUNT | N/A | N/A |
| DEPENDENT CARE REIMBURSEMENT | N/A | N/A |
| SHORT-TERM DISABILITY | N/A | N/A |
| LONG-TERM DISABILITY | N/A | N/A |
| CORE EMPLOYEE LIFE INSURANCE | $ 1,011.14 | $ 2,864.90 |
| OPTIONAL EMPLOYEE LIFE INSURANCE | N/A | N/A |
| DEPENDENT LIFE INSURANCE - SPOUSE | $0.00 | $0.00 |
| DEPENDENT LIFE INSURANCE - CHILD(REN) | $0.00 | $0.00 |
| LONG TERM CARE | $0.00 | $0.00 |
| ACCIDENTAL DEATH & DISMEMBERMENT | $ 49.40 | $ 1,223.82 |

CLAIM GRAND TOTAL    $ 208,861.99

Page 1

# Social Security Administration
## Retirement, Survivors and Disability Insurance
Notice of Award

Southeastern Program Service Center
2001 Twelfth Avenue, North
Birmingham, Alabama 35285-0001
Date:  October 8, 2005
Claim Number:  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HA

1804 MCS,PC3,LBI,T037,058,153

WILLIAM E JOHNSON
1509 KELTON DRIVE
RALEIGH, NC 27615-2740

900085819 93 MB    0.718



You are entitled to monthly disability benefits beginning October 2005.

**The Date You Became Disabled**

We found that you became disabled under our rules on April 11, 2005.  This is different from the date given on the application.

Also, you have to be disabled for 5 full calendar months in a row before you can be entitled to benefits.  For these reasons, your first month of entitlement to benefits is October 2005.

**What We Will Pay And When**

- You will receive $1,982.00 for October 2005 around November 16, 2005.

- After that you will receive $1,982.00 on or about the third Wednesday of each month.

- These and any future payments will go to the financial institution you selected.  Please let us know if you change your mailing address, so we can send you letters directly.

The day we make payments on this record is based on your date of birth.

**Other Social Security Benefits**

The benefit described in this letter is the only one you can receive from Social Security.  If you think that you might qualify for another kind of Social Security benefit in the future, you will have to file another application.

Enclosure(s):
Pub 05-10153
Pub 05-10058

C

See Next Page

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HA

### Things To Remember For The Future

Doctors and other trained staff decided that you are disabled under our rules. However, we must review all disability cases. Therefore, we will review your case in 5 to 7 years. We will send you a letter before we start the review. Based on that review, your benefits will continue if you are still disabled, but will end if you are no longer disabled.

### If You Want Help With Your Appeal

You can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due benefits to pay toward the fee.

### If You Have Any Questions

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-919-790-2782. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:



SOCIAL SECURITY
4701 OLD WAKE FOREST
RALEIGH, NC 27609

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

Jo Anne B. Barnhart
Commissioner
of Social Security

Proof Of Claim

**WHO IS THIS "PROOF OF CLAIM" BEING SUBMITTED FOR?**  William Johnson

**WHAT IS THE NORTEL GLOBAL ID # OF THIS INDIVIDUAL?**  0200211

**WHAT WAS THE FIRST DATE THAT YOU WERE OUT ON LONG-TERM DISABILITY?**  March 14, 2006

**WHAT IS YOUR AGE (As of January 1, 2012) ...**

| | |
|---|---|
| Years | 61 |
| Months | 14 |
| AUTOMATICALLY CALCULATED FOR YOU - AGE IN MONTHS AS OF JANUARY 1, 2011 | 746 |
| AUTOMATICALLY CALCULATED FOR YOU - MONTHS UNTIL YOU REACH AGE "65" | 34 |

**YOUR ANNUAL SALARY PER YOUR 2011 FLEX BENEFITS STATEMENT**   $  102,960.00

**IF YOU HAD A 401K AND SIGNED UP FOR Capital Accumulation Retirement Plan (CARP) Contributions ...**

WHAT WAS THE % CARP CONTRIBUTION IDENTIFIED TO YOU BY NORTEL (PLEASE ENTER 0.02 OR 0.04)?    0.04

AUTOMATICALLY CALCULATED FOR YOU - MONTHLY CONTRIBUTION BY NORTEL INTO YOUR 401K ...   $   4,118.40   $   11,668.80

**FROM NORTEL HR MEMO ENTITLED "TERMINATION NOTIFICATION"**

SEVERANCE PERIOD   22

AUTOMATICALLY CALCULATED FOR YOU - SEVERANCE PAY    $   1,980.00   $   43,560.00

**FROM YOUR MOST RECENT PRUDENTIAL PAY STUB (EX. August 2012 LTD Paystub) ...**

| | | | |
|---|---|---|---|
| "GROSS" MONTHLY SICK PAY FROM PRUDENTIAL | $ | 6,006.00 | $ | 204,204.00 |
| SSDI MONTHLY OFFSET | $ | 1,882.10 | $ | 63,991.40 |
| Medicare Part B Reimbursement Per LTD Plan | $ | 98.00 | $ | 3,332.00 |
| AUTOMATICALLY CALCULATED FOR YOU - NET PAY | $ | 4,221.90 | $ | 140,212.60 |

**Estimates On What Replacement Coverage Would Cost You**

| | | | |
|---|---|---|---|
| MEDICAL CARE | $ | 3,149.38 | $ | 8,923.24 |
| DENTAL/VISION/HEARING CARE | $ | 576.16 | $ | 1,632.45 |
| HEALTH CARE REIMBURSEMENT ACCOUNT | | N/A | | N/A |
| DEPENDENT CARE REIMBURSEMENT | | N/A | | N/A |
| SHORT-TERM DISABILITY | | N/A | | N/A |
| LONG-TERM DISABILITY | | N/A | | N/A |
| CORE EMPLOYEE LIFE INSURANCE | $ | 1,011.14 | $ | 2,864.90 |
| OPTIONAL EMPLOYEE LIFE INSURANCE | | N/A | | N/A |
| DEPENDENT LIFE INSURANCE - SPOUSE | | $0.00 | | $0.00 |
| DEPENDENT LIFE INSURANCE - CHILD(REN) | | $0.00 | | $0.00 |
| LONG TERM CARE | | $0.00 | | $0.00 |
| ACCIDENTAL DEATH & DISMEMBERMENT | $ | 49.40 | $ | 1,223.82 |

CLAIM GRAND TOTAL    $  208,861.99

*APPROVAL    FOR    STD    FROM*
*PRUDENTIAL    INS*

Claims Services Provided by

**The Prudential Insurance Company of America**

Margaret P Smith
Disability Claims Manager

The Prudential Insurance Company Of America
Disability Management Services
Po Box 13480
Philadelphia, PA 19101

*2, #9,*

Phone: (800) 842-1718 Ext: 7481
Fax: (877) 889-4885
Hours: 08:00 AM 04:35 PM

May 25, 2005

William E Johnson
1509 Kelton Drive
Raleigh, NC 27615

Claimant: William E Johnson
Control #/Br: 39900 / 0B045
Claim #: 10767061
Date of Birth: 10/11/1950

IıldIIııdıIIıııılIıldılıl

Dear Mr. Johnson:

We have completed our review of your claim for Short Term Disability (STD) benefits under the Nortel Networks, Inc. Group STD Plan. We have determined that you are eligible to receive STD benefits for the period of May 3, 2005 to June 19, 2005. This letter will explain our decision.

To be eligible to receive STD benefits, covered employees must meet all contractual requirements including the following definition of "Disability":

You are considered Totally Disabled for STD purposes when a Physician submits documentation that is approved by the Claims Administrator, Prudential, which establishes you are unable to perform the essential functions of your job. This means that you can't perform the work you were normally performing at the time of your disability with or without reasonable accommodations for the limitations resulting from your Illness or Injury. In addition, you must be under the regular care of a Physician. The proof that your Physician submits must be written proof of objective clinical documentation (i.e. lab tests, x-rays, medical reports, etc.) of your Total Disability. The Claims Administrator will approve or deny your Claim for STD benefits at its discretion. Independent Medical Evaluations (IME's) may also be required at the Company's expense in order to arrive at this final determination. Your benefit will be denied if you do not provide such objective proof of your Claim within the required time.

In addition, the Plan further states:

Disabilities due to a sickness or injury, which as determined by the Claims Administrator, are primarily based on self-reported symptoms, have a limited pay period during your lifetime. The pay period limitations are at the discretion of the Administrator and if objective medical and clinical evidence is not submitted or changes in the treatment plan or more aggressive treatment is not commenced within a reasonable period, the benefit will be terminated. Self-reported symptoms mean the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures, and clinical examinations normally accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to, headache, pain, fatigue, stiffness and soreness, ringing in the ears, dizziness, numbness and loss of energy.

Reasonable accommodations may be made for the limitations resulting from your Illness or Injury that would allow return to active work. Reasonable accommodations may include, but are not limited to:

- General Accommodations – removal of structural, communication or other barriers.
- Job Related Accommodations
  - Part-time or Modified Work Schedules
  - Home Based Work
  - Reassignment to Vacant Positions
  - Acquisition or modification of tools, equipment, and/or furniture
  - Modifications to Business Travel Schedules.

A Physician means a licensed practitioner of the healing arts acting within the scope of his or her license. When a Total Disability is caused by any condition other than a medically determinable physical impairment, a Physician means a legally qualified Physician who specializes in the practice of psychiatric medicine or has by reason of training or experiences a specialized competency in the field of psychiatric medicine sufficient to give the necessary evaluation and treatment of mental Illness.

Administratively, STD benefits will begin on the sixth consecutive working day of your disability due to Illness or Accident. The first five days are considered a waiting period (a period of illness that must occur before your STD benefit begins) to determine if you will progress to STD. If you do progress to STD, this five-day period counts towards your total period of disability as week one of your six weeks of 100% pre-disability FLEX Earnings. These benefits end when your eligibility ends, you are no longer Totally Disabled, your employment with the Employers that sponsor the Plan ends, or you have received 26 weeks of STD benefits.

The medical information submitted with your claim supports a period of Disability through June 19, 2005. Therefore, STD benefits have been authorized through this date. Should you wish to pursue benefits beyond June 19, 2005, please have your physician submit additional current documentation regarding your condition and treatment. This information should be submitted by June 17, 2005. If we do not hear from you, we will assume you have recovered and your claim will be closed.

If you have any questions, please contact me at (800) 842-1718, extension 7481.


Sincerely,

*Margaret P Smith*

Margaret P Smith
Disability Claims Manager



Claim Services Provided by

The Prudential Insurance Company of America

**David Moran**
Disability Consultant

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 5598
Fax: (877) 889-4885
Hours: 07:00 AM 03:00 PM

March 14, 2006

William E Johnson
1509 Kelton Drive
Raleigh, NC 27615

Claimant: William E Johnson
Control #/Br: 39900 / 0B055
Claim #: 10767061
Date of Birth: 10/11/1950

լսլիլիսւիլիւսթիլիլիսիսիգ

Dear Mr. Johnson:

We have completed our review of your claim for Long Term Disability (LTD) benefits under the Nortel Group LTD Plan. We have determined that you are eligible for benefits effective November 1, 2005. A benefit check for the period of November 1, 2005 through February 28, 2006 has been sent to your attorney under separate cover. Future LTD benefit checks will be sent to directly to you.

In order to receive benefits under the Nortel Group LTD Plan, covered employees must meet all contractual requirements including the following definition of Disability:

"You are considered Totally Disabled for LTD when a Physician submits documentation that is approved by the Claims Administrator as establishing that you are unable to perform the essential functions of your job. This means that you cannot perform the work you were normally performing at the time of your disability with or without reasonable accommodations for the limitations resulting from your Illness or Injury. In addition, you must be under the *regular care of the Physician who certifies your Total Disability and that Physician must have treated you personally for the Illness or Injury causing the Total Disability for at least 31 days* before making the certification. The proof that your Physician submits must be written proof of objective clinical documentation (i.e. lab tests, x-rays, medical reports, etc.) of your Total Disability. The Claims Administrator will approve or deny your Claim for LTD benefits at its discretion. Independent Medical Evaluations (IME's) may also be required at the Company's expense in order to arrive at this final determination. Your benefit will be denied if you do not provide such objective proof of your Claim within the required timeframe.

During the first 18-months of a covered Total Disability (from the first date of STD), you will be considered unable to work if you cannot perform the work you were normally performing at the time of your disability with or without reasonable accommodations for the limitations resulting from your Illness or Injury. After the first 18-months of covered Total Disability (from the first date of STD), you will be considered unable to work if you are unable to perform any reasonable occupation. A "reasonable occupation" *is any job you are or could become qualified to do with your education, training or experience.*"

2

In addition, the plan further states that:

> Disabilities due to sickness or injury, which as determined by the Claims Administrator, are primarily abased on self-reported symptoms, have limited pay period during your lifetime. The pay period limitations are at the discretion of the Administrator and if objective medical and clinical evidences not submitted or changes in the treatment plan or more aggressive treatment is not commenced within a reasonable period, the benefit will be terminated. Self-reported symptoms mean the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures, and clinical examinations normally accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to, headache, pain, fatigue, stiffness and soreness, ringing in the ears, dizziness, numbness and loss of energy.

Reasonable accommodations may be made for the limitations resulting from your Illness or Injury that would allow return to active work. Reasonable accommodations may include, but are not limited to:

- General Accommodations – removal of structural, communication or other barriers.
- *Job Related Accommodations*
    - o Part-time or Modified Work Schedules
    - o Home Based Work
    - o Reassignment to Vacant Positions
    - o Acquisition or modification of tools, equipment, and/or furniture
    - o Modifications to Business Travel Schedules.

A Physician means a licensed practitioner of the healing arts acting within the scope of his or her license. When a Total Disability is caused by any condition other than a medically determinable physical impairment, a Physician means a legally qualified Physician who specializes in the practice of psychiatric medicine or has by reason of training or experiences a specialized competency in the field of psychiatric medicine sufficient to give the necessary evaluation and treatment of mental Illness.

LTD benefits begin as soon as you have been Totally Disabled for the 26-consecutive week waiting period.

The Plan also has the following 24-month Behavioral Illness Limitation:

> For total disabilities due to mental disorders, nervous disorders or chemical dependency (as determined by the Claims Administrator), the LTD maximum benefit period is limited to 24 months if treated in an outpatient setting. However, if you are confined in a Hospital within 90 days following the date ending that 24- month period, benefits will continue during your Hospital confinement.

Prudential will be responsible for determining if your disability meets the above definitions of Disability, and has the right to require that you be examined by a Physician of our choosing.

3

Benefits will be payable on a monthly basis and have been calculated as follows:

| | |
|---|---:|
| Monthly Salary | $8,580.00 |
| Scheduled LTD Benefit  (70.00%) | $6,006.00 |
| Less Any Social Security Benefits | -$1,982.00 |
| Less Medical Insurance Premium | -$ 237.50 |
| Less Dental/Vision/Hearing Premium | -$   22.44 |
| Less Spousal Life Insurance Premium | -$   11.05 |
| Less AD&D Insurance Premium | -$     5.67 |
| | |
| Adjusted Benefit | $3,747.34 |

Please be advised that LTD benefits are issued on a monthly basis and are issued approximately 7 days prior to the end of each month.  Your LTD benefit is subject to Federal Income Tax (FIT) withholding.  Please complete and return the enclosed W-4 form.  As discussed, we will withhold FIT in accordance with your W4 selection (Married, 3 Allowances).

Under the Nortel Group LTD Plan, your LTD benefit is offset (reduced) by the income you receive from other sources.  This includes, but is not limited to, Social Security Disability Benefits (SSDB).   Please be aware that should you or any eligible family members receive or become entitled to receive any other sources of income on account of your disability an overpayment may occur on your claim that will need to be repaid.  The Prudential will expect reimbursement of this overpayment in a lump sum in accordance with the terms of the enclosed "Reimbursement Agreement."

Prudential Group Insurance is pleased to offer Electronic Funds Transfer (EFT) as our standard method of payment for disability benefits.  EFT allows your benefit checks to be electronically deposited into the checking or savings account of your choice.

Once you have completed the EFT form, attach a voided check from the bank account in which you wish to have your benefit check deposited and return the authorization form and your voided check to us.  Your request will be processed upon receipt of the authorization form and voided check.

If you have any questions, please contact our office at 1-(800) 842-1718, extension 5598.

Sincerely,

*David Moran*

David Moran
Disability Consultant

Enclosures

cc:   Andrew Whiteman, Esq.
       Nortel



**MEMORANDUM**

TO:          **Nortel Networks Employees**

SUBJECT:  **Your Rights Under The Family and Medical Leave Act of 1993**

The U.S. Department of Labor's Employment Standards Administration, Wage and Hour
Division, administers and enforces the Family and Medical Leave Act (FMLA) for all private,
state and local government employees, and some federal employees.  Most Federal and
certain congressional employees are also covered by the law and are subject to the
jurisdiction of the U.S. Office of Personnel Management or the Congress.

FMLA became effective on August 5, 1993, for most employers.  If a collective bargaining
agreement (CBA) was in effect on that date, FMLA became effective on the expiration date of
the CBA or February 5, 1994, whichever was earlier.  FMLA entitles eligible employees to take
up to 12 weeks of unpaid, job-protected leave in a 12-month period for specified family and
medical reasons.  The employer may elect to use the calendar year, a fixed 12-month leave or
fiscal year, or a 12-month period prior to or after the commencement of leave as the 12-month
period.  As provided under the Act, Nortel Networks *has elected to use the calendar year* basis
for application of FMLA.

The law contains provisions on employer coverage; employee eligibility for the law's benefits;
entitlement to leave, maintenance of health benefits during leave, and job restoration after
leave; notice and certification of the need for FMLA leave; and, protection for employees who
request or take FMLA leave.  The law also requires employers to keep certain records.

Attached are the specific and detailed provisions of the 1993 Family and Medical Leave Act.
Please direct any questions to your manager, your Human Resources Associate, or a member
of the Health Services organization.

**Attached**                                                                                                         1

# THE FAMILY AND MEDICAL LEAVE ACT OF 1993

## EMPLOYER COVERAGE
**FMLA applies to all:**
- [ ] public agencies, including state, local and federal employers, local education agencies (schools), and
- [ ] private-sector employers who employed 50 or more employees in 20 or more workweeks in the current or preceding calendar year and who are engaged in commerce or in any industry or activity affecting commerce--including joint employers and successors of covered employers.

## EMPLOYEE ELIGIBILITY
**To be eligible for FMLA benefits, an employee must:**
    (1) work for a covered employer;
    (2) have worked for the employer for a total of 12 months;
    (3) have worked at least 1,250 hours over the previous 12 months; and
    (4) work at a location in the United States or in any territory or possession of the United States where at least 50 employees are employed by the employer within 75 miles.

## LEAVE ENTITLEMENT
**A covered employer must grant an eligible employee up to a total of 12 workweeks of unpaid leave during any 12-month period for one or more of the following reasons:**
- [ ] for the birth and care of the newborn child of the employee;
- [ ] for placement with the employee of a son or daughter for adoption or foster care;
- [ ] to care for an immediate family member* (spouse, child, or parent) with a serious health condition; or
- [ ] to take medical leave when the employee is unable to work because of a serious health condition.

    Spouses employed by the same employer are jointly entitled to a combination total of 12 work-weeks of family leave for the birth and care of the newborn child, for placement of a child for adoption or foster care, and to care for a parent who has a serious health condition.

    Leave for birth and care, or placement for adoption or foster care must conclude within 12 months of the birth or placement.

    Under some circumstances, employees may take FMLA intermittently--which means taking leave in blocks of time, or by reducing their normal weekly or daily work schedule.

- [ ] If FMLA leave is for birth and care or placement for adoption or foster care, use of intermittent leave is subject to the employer's approval.
- [ ] FMLA leave may be taken intermittently whenever medically necessary to care for a seriously ill family member, or because the employee is seriously ill and unable to work.

*Nortel Networks extends "immediate family member" to include, domestic partner, grandchild, brother, sister, parent-in-law, and grandparent. Additionally, Nortel's definition of "child" is "whether biological, adopted, foster, stepchild, legal ward or a child for whom the employee is responsible on a day-to-day and financial basis"; Nortel's definition of "parent" is "whether biological or the person having day-to-day responsibility for employee during childhood."

# THE FAMILY AND MEDICAL LEAVE ACT OF 1993

Also, subject to certain conditions, employees or employers may choose to use accrued paid leave (such as sick or vacation leave) to cover some or all of the FMLA leave.

The employer is responsible for designating if an employee's use of paid leave counts as FMLA leave based on information from the employee.

"Serious health condition" means an illness, injury, impairment, or physical or mental condition that involves either:

- ☐ any period of incapacity or treatment connected with inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical-care facility, and any period of incapacity or subsequent treatment in connection with such inpatient care; or
- ☐ Continuing treatment by a health care provider which includes any period of incapacity (i.e., inability to work, attend school or perform other regular daily activities) due to:
  - (1) A health condition (including treatment therefor, or recovery therefrom) lasting more than three consecutive days, and any subsequent treatment or period of incapacity relating to the same condition, that also includes:
    - ○ treatment two or more times by or under the supervision of a health care provider; or
    - ○ one treatment by a health care provider with a continuing regimen of treatment; or
  - (2) Pregnancy or prenatal care. A visit to the health care provider is not necessary for each absence; or
  - (3) A chronic serious health condition which continues over an extended period of time, requires periodic visits to a health care provider, and may involve occasional episodes of incapacity (e.g., asthma, diabetes). A visit to a health care provider is not necessary for each absence; or
  - (4) A permanent or long-term condition for which treatment may not be effective (e.g., Alzheimer's, a severe stroke, terminal cancer). Only supervision by a health care provider is required, rather than active treatment; or
  - (5) Any absences to receive multiple treatments for restorative surgery or for a condition which would likely result in a period of incapacity of more than three days if not treated (e.g., chemotherapy or radiation treatments for cancer).

"Health care provider" means:

- ☐ doctors of medicine or osteopathy authorized to practice medicine or surgery by the state in which the doctors practice; or
- ☐ podiatrists, dentists, clinical psychologists, optometrists and chiropractors (limited to manual manipulation of the spine to correct a subluxation as demonstrated by X-ray to exist) authorized to practice, and performing within the scope of their practice, under state law; or
- ☐ nurse practitioners, nurse-midwives and clinical social workers authorized to practice, and performing within the scope of their practice, as defined under state law; or
- ☐ Christian Science practitioners listed with the First Church of Christ, Scientist in Boston, Massachusetts; or
- ☐ Any health care provider recognized by the employer's group health plan benefits manager.

# THE FAMILY AND MEDICAL LEAVE ACT OF 1993

## MAINTENANCE OF HEALTH BENEFITS

A covered employer is required to maintain group health insurance coverage for an employee on FMLA leave whenever such insurance was provided before the leave was taken and on the same terms as if the employee had continued to work. If applicable, arrangements will need to be made for employees to pay their share of health insurance premiums while on leave. In some instances, the employer may recover premiums it paid to maintain health coverage for an employee who fails to return to work from FMLA leave.

## JOB RESTORATION

Upon return from FMLA leave within the job protected period of 12 weeks (unless otherwise mandated by state regulations), an employee must be restored to the employee's original job, or to an equivalent job with equivalent pay, benefits, and other terms and conditions of employment.

In addition, an employee's use of FMLA leave cannot result in the lost of any employment benefit that the employee earned or was entitled to before using FMLA leave, nor be counted against the employee under a "no fault" attendance policy.

Under specified and limited circumstances where restoration to employment will cause substantial and grievous economic injury to its operations, an employer may refuse to reinstate certain highly-paid "key" employees after using FMLA leave during which health coverage was maintained. In order to do so, the employer must:

- [ ] notify the employee of his/her status as a "key" employee in response to the employee's notice of intent to take FMLA leave;
- [ ] notify the employee as soon as the employer decides it will deny job restoration, and explain the reasons for this decision;
- [ ] offer the employee a reasonable opportunity to return to work from FMLA leave after giving this notice; and
- [ ] make a final determination as to whether reinstatement will be denied at the end of the leave period if the employee then requests restoration.

A "key" employee is a salaried "eligible" employee who is among the highest paid ten percent of employees within 75 miles of the work site.

## NOTICE AND CERTIFICATION

Employees seeking to use FMLA leave are required to provide 30-day advance notice of the need to take FMLA leave when the need is foreseeable and such notice is practicable.

Employers may require employees to provide:

- [ ] medical certification supporting the need for leave due to a serious health condition affecting the employee or an immediate family member;
- [ ] Second or third medical opinions (at the employer's expense) and periodic recertification; and
- [ ] periodic reports during FMLA leave regarding the employee's status and intent to return to work.

# THE FAMILY AND MEDICAL LEAVE ACT OF 1993

When intermittent leave is needed to care for an immediate family member or the employee's own illness, and is for planned medical treatment, the employee must try to schedule treatment so as not to unduly disrupt the employer's operation.

Covered employers must post a notice approved by the Secretary of Labor explaining rights and responsibilities under FMLA. An employer that willfully violates this posting requirement may be subject to a fine of up to $100 for each separate offense. Also, covered employers must inform employees of their rights and responsibilities under FMLA, including giving specific written information on what is required of the employee and what might happen in certain circumstances, such as if the employee fails to return to work after FMLA leave.

## UNLAWFUL ACTS
It is unlawful for any employer to interfere with, restrain, or deny the exercise of any right provided by FMLA. It is also unlawful for an employer to discharge or discriminate against any individual for opposing any practice, or because of involvement in any proceeding, related to FMLA.

## ENFORCEMENT
The Wage and Hour Division investigates complaints. If violations cannot be satisfactorily resolved, the U.S. Department of Labor may bring action in court to compel compliance. Individuals may also bring a private civil action against an employer for violations.

## OTHER PROVISIONS
Special rules apply to employees of local education agencies. Generally, these rules provide for FMLA to be taken in blocks of time when intermittent leave is needed or the leave is required near the end of the school term.

Salaried, executive, administrative, and professional employees of covered employers who meet the Fair Labor Standards Act (FLSA) criteria for exemption from minimum wage and overtime under Regulations, 29 CFR Part 541, do not lose their FLSA-exempt status by using any unpaid FMLA leave. This special exception to the "salary basis" requirements for FLSA's exemption extends only to "eligible" employees' use of leave required by FMLA.

The FMLA does not affect any other federal or state law which prohibits discrimination, nor supersede any state or local law which provides greater family or medical leave protection. Nor does it affect an employer's obligation to provide greater leave rights under a collective bargaining agreement or employment benefit play. The FMLA also encourages employers to provide more generous leave rights.

## FURTHER INFORMATION
The final rule implementing FMLA is contained in the January 6, 1995, Federal Register. For more information, please contact the nearest office of the Wage and Hour Division, listed in most telephone directories under U.S. Government, Department of Labor.

U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division



**PBGC**
Protecting America's Pensions

Privacy Act Data

# Benefit Estimation

08/24/2010 11:45 AM
Page 1 of 2

**WILLIAM JOHNSON**

## NORTEL NETWORKS RETIREMENT INCOME PLAN

21391900
July 17, 2009

PBGC Case Number:
Date of Plan Termination:

*PBGC used the data below to compute your estimated monthly payment.*
*We will send you a formal determination of your benefit when*
*we have collected all data and reviewed all provisions of your plan.*

### YOUR BENEFIT SUMMARY

Participant's Information
-----------------------------------

| | |
|---|---|
| Name: | WILLIAM JOHNSON |
| Social Security Number: | XXX-XX-4830 |
| Gender: | Male |
| Date of Birth: | 10/11/1950 |
| Date of Hire: | 12/09/1985 |
| Last Date Benefits Earned | 12/31/2007 |
| Bankruptcy Petition Date: | 01/14/2009 |
| Date of Termination of Employment: | Actively Employed at Date of Plan Termination |
| Normal Retirement Date: | 11/01/2015 |

Beneficiary's Information
-----------------------------------

| | |
|---|---|
| Name: | MARY JOHNSON |
| Social Security Number: | UNKNOWN |
| Date of Birth: | 11/18/1952 |

Summary of Participant's Benefit
-----------------------------------

| | |
|---|---|
| Actual Retirement Date (ARD): | 07/01/2010 |

Privacy Act Data

| | |
|---|---:|
| PBGC Estimated Monthly Benefit at ARD as a Straight Life Annuity: | $1,628.95 |
| PBGC Estimated Monthly Benefit at ARD as a Joint-and-50% Survivor Annuity: | $1,448.95 |

## YOUR BENEFIT CALCULATION

Pension Information used for Benefit Calculation

------------------------------------------------------------

| | |
|---|---:|
| Years of Vesting Service: | 23 |
| Vesting Percentage: | 100% |

Your plan froze benefit accruals on 12/31/2007. This means that the size of your plan's benefits will generally not increase beyond that date, so your participation, salary and benefit service earned after 12/31/2007 were not included in the calculation of your accrued benefit. However, service from 12/31/2007 to the earlier of the date you terminate employment or your plan's Bankruptcy Petition Date is included for vesting purposes and eligibility for certain benefits.

Benefit Calculation

------------------------

| | | |
|---|---|---:|
| (1) | Pension Service Plan (PSP) Account Balance at ARD: | $240,481.63 |
| (2) | Plan's Present Value Factor for Conversion to a Straight Life Annuity at ARD: | 147.6300 |
| (3) | PBGC Estimated Monthly Benefit at ARD as a Straight Life Annuity: (1) / (2) = $240,481.63 / 147.6300 = | $1,628.95 |
| (4) | Plan's Adjustment Factor for Joint-and-50% Survivor Annuity: | 0.88950 |
| (5) | PBGC Estimated Monthly Benefit at ARD as a Joint-and-50% Survivor Annuity: (3) x (4) = $1,628.95 x 0.88950 = | $1,448.95 |

PBGC offers online services. To learn more, go to www.pbgc.gov and click on 'Workers and Retirees'. Look for the title 'Access your Pension Account' on the right side of the webpage. If you open an online account, you will be able to:

- Request a benefit payment estimate
- Apply for pension benefits
- Designate or change beneficiary information
- Change your address, telephone number, or e-mail address
- Designate or edit your Federal Tax Withholdings
- Apply for electronic direct deposit (EDD)
- Edit your existing EDD information

Si usted prefiere recibir esta información en español, por favor llame a nuestro Centro de Contacto del Cliente al 1 (800) 400-7242. Si usa el TTY/TDD, llame a **1 (800) 845-6136** y pídale a la operadora que lo conecte con el 1 (800) 400-7242.

Please keep this letter in your records for future reference.

Sincerely,

*Anne-Emilie LaForest*

Anne-Emilie LaForest
FBA Pension Benefit Analyst
Field Benefit Administration

Enclosure:
(Manual Insert) Benefit Statement



PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

Inquiry for a Benefit Estimate    305
October 12, 2010

PBGC Case Number:    21391900
Plan Name:    NORTEL NETWORKS RETIREMENT INCOME PLAN

WILLIAM JOHNSON
2865 HORSEMANS RIDGE DR
CLAYTON NC 275207203

Dear WILLIAM JOHNSON:

We are writing to you to provide the benefit estimate you requested.

<u>An Annuity Benefit Estimate</u>

The enclosed benefit statement gives an estimate of your benefit as of the starting date you requested. If you are married, it also shows the survivor benefit for your spouse. If you would like a retirement estimate for a J&S benefit with a beneficiary who is not your spouse, please contact us.

To begin receiving your PBGC benefit when you are eligible, request an application package from our Customer Contact Center at **1 (800) 400-7242,** Monday through Friday, 8:00a.m. – 7:00p.m. ET. Please call no more than four months before you want your benefit to start. If you use a TTY/TDD, call **1 (800) 877-8339**, and give the relay operator our telephone number. Or, you may write to: PBGC/Insurance Operations Department, P.O. Box 151750 , Alexandria VA 22315-1750. Please include your Social Security number, PBGC case number, 21391900, and a daytime telephone number.

We are currently reviewing all benefits provided by your pension plan. We expect to have this process completed two to three years from the date we became trustee of your plan. At that time, we will send you a formal determination of you benefit and a description of your right to appeal. Generally, if you have been paid too much, we will adjust your future benefits until the overpayment has been paid without interest. If you have been paid too little, we will pay you the difference in a single payment with interest.

This estimate is based on the information currently in our files. If the enclosed information is incorrect or if you have any questions, call our Customer Contact Center at 1 (800) 400-7242.

There is an IRS tax credit for health care insurance premiums called the Health Coverage Tax Credit (HCTC), which may apply to certain individuals who are 55 - 65 years of age and are receiving benefits from PBGC. This credit does not apply if you are entitled to coverage under Medicare Part A, enrolled in Medicare Part B or a state's Medicaid program. In cases where individuals are 65 or older and not eligible for Medicare, they may still be eligible for the credit. The HCTC is equal to 80 percent effective April 01, 2009 (previously 65 percent) of the premiums paid by you for qualified health insurance. **HCTC information is available from the IRS at its web site, www.irs.gov Keyword: HCTC, or at the HCTC toll-free number 1 (866) 628-HCTC  (TTY/TDD: 1 (866) 626-HCTC).**

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**



PBGC

Protecting America's Pensions

Privacy Act Data

# Benefit Estimation

08/24/2010 11:45 AM

**WILLIAM JOHNSON**                                                                    Page 1 of 2

---

### NORTEL NETWORKS RETIREMENT INCOME PLAN

**PBGC Case Number:**                                                                   21391900
**Date of Plan Termination:**                                                      July 17, 2009

*PBGC used the data below to compute your estimated monthly payment.*
*We will send you a formal determination of your benefit when*
*we have collected all data and reviewed all provisions of your plan.*

### YOUR BENEFIT SUMMARY

Participant's Information
------------------------------------

| | |
|---|---|
| Name: | WILLIAM JOHNSON |
| Social Security Number: | XXX-XX-4830 |
| Gender: | Male |
| Date of Birth: | 10/11/1950 |
| Date of Hire: | 12/09/1985 |
| Last Date Benefits Earned | 12/31/2007 |
| Bankruptcy Petition Date: | 01/14/2009 |
| Date of Termination of Employment: | Actively Employed at Date of Plan Termination |
| Normal Retirement Date: | 11/01/2015 |

Beneficiary's Information
----------------------------------

| | |
|---|---|
| Name: | MARY JOHNSON |
| Social Security Number: | UNKNOWN |
| Date of Birth: | 11/18/1952 |

Summary of Participant's Benefit
---------------------------------------------

| | |
|---|---|
| Actual Retirement Date (ARD): | 07/01/2010 |

**YES**



┌─────────────────────────────────────┐
│ 4. Prudential notifies via email employee's │
│ manager and Global Employee Services of │
│ employee's return to work date and status │
└─────────────────────────────────────┘



┌─────────────────────────────────────┐
│ 5. Employee contacts TOPS Leave │
│ Administrator to report 'Actual Return to │
│ Work Date' and to close the Family Care │
│ Leave. │
└─────────────────────────────────────┘



┌─────────────────────────────────────┐
│ 6. On employee's first day back at work, │
│ Manager to confirm return to work with │
│ Global Employee Services. │
└─────────────────────────────────────┘



┌─────────────────────────────────────┐
│ 7. Global Employee Services updates │
│ employee database to reflect employee's │
│ return to work │
└─────────────────────────────────────┘



┌─────────────────────────────────────┐
│ 8. Employee has 30 days to find a position │
│ in the company. If no position is available, │
│ employee terminated. │
│ │
│ If employee is appealing decision to │
│ terminate their LTD claim and no position is │
│ available, or the employee has not been │
│ released to return to work, the employee │
│ will be moved to an Unpaid Leave of │
│ Absence and billed for their benefit │
│ premiums while the decision is under │
│ appeal. Once the appeals process has been │
│ exhausted, the employee's job status will be │
│ addressed. │
└─────────────────────────────────────┘



┌─────────────────────────────────────┐
│ End │
└─────────────────────────────────────┘

*Po Box 151 750*
*Alexandria VA 2235*
*ATTN*
*Benefit Administration*
*Payment Dept*

## U.S. WebAlert #1

**To:** All Nortel U.S. Employees
**Distribution Date:** May 2007
**Subject:** CARP Changes Effective January 1, 2008
**Audience:** All Nortel U.S. Employees
**From:** CARP Benefits Administration

### Capital Accumulation and Retirement Program (CARP) Changes Effective January 1, 2008

In June 2006 Nortel announced significant CARP changes that will become effective January 1, 2008. These changes are part of Nortel's overall strategy to achieve increased competitiveness and position the company for profitability and long-term revenue growth.

You will continue to participate under the provisions of your current program through December 31, 2007. However, your benefits for service from January 1, 2008 onward will change so it is important that you understand the changes.

### U.S. CARP changes effective January 1, 2008 include:

- The Long-Term Investment Plan, which is a 401(k) plan, will be the only U.S. retirement savings vehicle for future Nortel contributions.
- Nortel will contribute up to 5% of your eligible earnings to the Long-Term Investment Plan as follows:
  - Automatic employer contributions equal to 2% of your eligible earnings, plus
  - 50% employer matching contributions on your contributions up to 6% of eligible earnings.
  - Employees already in the Long-Term Investment Plan (LTIP) will start to earn retirement benefits with the new contribution formula outlined above. Employees not currently participating in the LTIP will receive an LTIP account with the automatic employer contribution equal to 2% of your eligible earnings. If you are not participating in the LTIP, we encourage you to enroll to take full advantage of the plan (contact Hewitt at 1-800-726-0026).
- Current post-retirement healthcare benefits will no longer be subsidized by Nortel for employees who were not age 50 with five years of service on July 1, 2006. Future retirees who do not meet this age and service criteria will continue to have access to healthcare coverage at their own cost through Nortel's preferred provider, provided they meet eligibility requirements when they retire.
- The company will provide a $10,000 retiree life insurance benefit to Traditional and Balanced program members who did not meet the age 50 and 5 year service requirement as of July 1, 2006. The retiree life insurance benefit for employees who did meet the age 50 and 5 year requirement remains the same.
- Traditional Program participants' account balances will freeze and grow at 6% annually. Balanced Program participants' account balances will freeze and grow with monthly interest credits based on current criteria.

### Support Tools

For complete details about the CARP changes, including updated Frequently Asked Questions, refer to the "January 1/08 CARP Changes" folder on Services@Work:

**http://services-canada.ca.nortel.com/Livelink/livelink.exe?func=ll&objId=12451&objAction=sawbrowse**.
(Click on your current program for information relevant to you). You can also use this link to access financial education and modeling tools designed to help you plan for a financially secure retirement.

In early July, Nortel will introduce a new CARP website that will provide easy access to information about your CARP changes as well as links to related provider websites and modeling tools.

Watch for additional WebAlerts throughout the balance of the year providing further CARP updates and enrollment details.

0306235310

# Welcome

07/27/10

WILLIAM E JOHNSON

2865 HORSEMANS RIDGE
CLAYTON, NC 27520

Thank you for selecting WELLS FARGO BANK, N.A.
to finance your home. As a member of the WELLS FARGO BANK, N.A. team, I take great pride in providing my clients superior service. The enclosed commitment letter explains all your loan conditions and exactly what documents are needed to finalize your mortgage. All documentation needed prior to closing on your new loan must be in our office or processing center and approved no fewer than five business days before closing.

Our goal at WELLS FARGO BANK, N.A. is to provide excellent service by keeping our customers informed throughout the transaction. Shortly after your loan closes, you will receive a survey in the mail asking you to evaluate the level of service you received from the WELLS FARGO BANK, N.A. employees who served you. Please note that overall service is evaluated on a scale of 1 to 5, **with 5 being the highest rating**. Your comments and suggestions are important to us. We would appreciate it if you could take a few minutes after the closing to complete and return the survey.

Please contact me immediately, any time during the loan process if you have any questions, concerns or need further clarification on your loan conditions.

Again, we thank you for choosing WELLS FARGO BANK, N.A.

Sincerely,

Mortgage Specialist

(407) 622-3721

Phone

# NØRTEL

William Johnson
2865 Horsemans Ridge Drive
Clayton, NC 27520

July 20, 2010

Subject: Withdrawal of Motion to Terminate US Retiree and Long Term Disability Plans

As you are aware, on June, 21, 2010, Nortel Networks Inc. and its affiliated U.S. debtors filed a motion seeking to terminate certain retiree and long-term disability benefits effective as of August 31, 2010.

In light of certain recent developments, Nortel filed a notice of withdrawal last week with the U.S. Bankruptcy Court.   You might have already received a copy of this notice in the mail as a result of the court notification process.

What this means is your benefits under the applicable plans will **not** be discontinued on August 31, 2010. and the plans, including your monthly LTD income check and the administration of claims, are expected to continue uninterrupted.  You should disregard the Employment Termination Package and COBRA notifications you have already received as they are **no longer applicable.** Participants should continue to remit plan contributions on a timely basis consistent with past practice.

In light of this decision, Nortel has requested that UnitedHealthcare suspend its enrollment of participants, including any scheduled meetings and conference calls.  Anyone who has already enrolled and paid a premium for this alternative coverage may contact UnitedHealthcare directly at 1-877-709-0758 (65 and over) or 1-877-247-0085 (under 65) to initiate a cancellation and request a refund of premium.   As the policies are individual policies between the enrollee and UnitedHealthcare the participant must initiate the cancellation.

Although your benefits under the plans will not be terminated effective August 31, 2010 the company continues to review its various benefit programs in light of its current circumstances to determine the appropriate status of these plans now and in the future.  It is possible that the company will seek modification or termination of some or all of the benefits at a later time.

If you have any questions, please contact HR Shared Services at 1-800-676-4636.

Sincerely,

Elena King
Senior Vice President, Human Resources

**Bill Johnson**

| | |
|---|---|
| **From:** | david.moran@prudential.com |
| **Sent:** | Friday, March 17, 2006 10:09 AM |
| **To:** | Bill Johnson |
| **Subject:** | Re: question on Social Security amount |

Good morning Mr. Johnson –

No change with your Nortel benefit.  The Plan does not offset the annual
cost of living increases you will receive from the Social Security
administration.  David

```
            "Bill Johnson"
            <wejohnso@bellsou
            th.net>
                                                                    To
                            <david.moran@prudential.com>
                                                                    cc
            Fri 03/17/2006
            09:41 AM
                                                                Subject
                            question on Social Security amount
```

Hello,

I am going through my records today and see that my Social Security benefit
check was increased from
$1982 in December to $2063 in January.  This was stated as a 4.1 percent
cost of living increase for Social Security.

Will this change was Nortel disability amount ? Will I in effect lose this
cost of living increase ?

William Johnson
1509 Kelton Drive
Raleigh, NC  27615
hm # (919)845-0198
cell # (919) 210-6169

1



PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

Inquiry for a Benefit Estimate    305
June 29, 2010

PBGC Case Number:    21391900
Plan Name:            NORTEL NETWORKS RETIREMENT INCOME PLAN

WILLIAM JOHNSON
2865 HORSEMANS RIDGE DR
CLAYTON  NC 275207203

*Carol*

Dear WILLIAM JOHNSON:

We are writing to you to provide the benefit estimate you requested on June 28, 2010.

An Annuity Benefit Estimate

The enclosed benefit statement gives an estimate of your benefit as of the starting date you requested.  If you are married, it also shows the survivor benefit for your spouse.  If you would like a retirement estimate for a J&S benefit with a beneficiary who is not your spouse, please contact us.

To begin receiving your PBGC benefit when you are eligible, request an application package from our Customer Contact Center at **1 (800) 400-7242,** Monday through Friday, 8:00a.m. – 7:00p.m. ET.  Please call no more than four months before you want your benefit to start.  If you use a TTY/TDD, call **1 (800) 877-8339,** and give the relay operator our telephone number.  Or, you may write to:  PBGC/Insurance Operations Department, P.O. Box 151750 , Alexandria VA  22315-1750.  Please include your Social Security number, PBGC case number, 21391900, and a daytime telephone number.

This estimate is based on the information you provided us.  If the enclosed information is incorrect or if you have any questions, call our Customer Contact Center at 1 (800) 400-7242.

There is an IRS tax credit for health care insurance premiums called the Health Coverage Tax Credit (HCTC), which may apply to certain individuals who are 55 - 65 years of age and are receiving benefits from PBGC.  This credit does not apply if you are entitled to coverage under Medicare Part A, enrolled in Medicare Part B or a state's Medicaid program.  In cases where individuals are 65 or older and not eligible for Medicare, they may still be eligible for the credit.  The HCTC is equal to 80 percent effective April 01, 2009 (previously 65 percent) of the premiums paid by you for qualified health insurance.  **HCTC information is available from the IRS at its web site, www.irs.gov Keyword: HCTC, or at the HCTC toll-free number 1 (866) 628-HCTC  (TTY/TDD: 1 (866) 626-HCTC).**

PBGC offers online services.  To learn more, go to www.pbgc.gov and click on 'Workers and Retirees'.  Look for the title 'Access your Pension Account' on the right side of the webpage.  If you open an online account, you will be able to:

- Request a benefit payment estimate
- Apply for pension benefits

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**



**PBGC**

*Protecting America's Pensions*

Privacy Act Data

# Benefit Estimation

William Johnson

06/28/2010 02:28 PM
Page 1 of 2

## NORTEL NETWORKS RETIREMENT INCOME PLAN

**PBGC Case Number:**
**Date of Plan Termination:**

21391900
July 17, 2009

*PBGC used the data below to compute your estimated monthly payment.*
*We will send you a formal determination of your benefit when*
*we have collected all data and reviewed all provisions of your plan.*

### YOUR BENEFIT SUMMARY

Participant's Information
-----------------------------------

| | |
|---|---|
| Name: | WILLIAM JOHNSON |
| Social Security Number: | XXX-XX-4830 |
| Gender: | Male |
| Date of Birth: | 10/11/1950 |
| Date of Hire: | 12/09/1985 |
| Date of Termination of Employment: | 05/03/2005 |
| Normal Retirement Date: | 11/01/2015 |

Beneficiary's Information
-----------------------------

| | |
|---|---|
| Name: | MARY JOHNSON |
| Social Security Number: | XXX-XX-0000 |
| Date of Birth: | 11/18/1952 |

Summary of Participant's Benefit
-----------------------------------------------

| | |
|---|---|
| Actual Retirement Date (ARD): | 07/01/2010 |
| PBGC Estimated Monthly Benefit at ARD as a Straight Life Annuity: | $1,628.95 |
| PBGC Estimated Monthly Benefit at ARD as a Joint-and-50% Survivor Annuity: | $1,448.95 |

**Privacy Act Data**

**William Johnson**

06/28/2010 02:28 PM
Page 2 of 2

## YOUR BENEFIT CALCULATION

Pension Information used for Benefit Calculation
--------------------------------------------------------------

*July 2009*

Years of Vesting Service:                                                                                  19
Vesting Percentage:                                                                                      100%

Benefit Calculation
------------------------

(1)    Pension Service Plan (PSP) Account Balance at
       ARD:                                                                                       $240,481.63

(2)    Plan's Present Value Factor for Conversion to a Straight Life Annuity at
       ARD:                                                                                          147.6300

(3)    PBGC Estimated Monthly Benefit at ARD as a Straight Life Annuity:
       (1) / (2) = $240,481.63 / 147.6300 =                                                         $1,628.95

(4)    Plan's Adjustment Factor for Joint-and-50% Survivor
       Annuity:                                                                                       0.88950

(5)    PBGC Estimated Monthly Benefit at ARD as a Joint-and-50% Survivor Annuity:
       (3) x (4) = $1,628.95 x 0.88950 =                                                            $1,448.95

12/3,/20⁰⁷



**PRIVACY ACT DATA**

# Optional Benefit Form

| Plan Name: | NORTEL NETWORKS RETIREMENT INCOME PLAN |
| Plan Number: | 21391900 |

| Participant: | JOHNSON, WILLIAM | Spouse: | JOHNSON, MARY |
| SSN: | XXX–XX–4830 | Date of Birth: | November 11, 1952 |
| Cust Id: | 4288835 | Beneficiary Type: | Spouse |
| Date of Birth: | October 11, 1950 | | |
| Pension Benefits Beginning: | July 1, 2010 | | |

| | Benefit Form | Participant's Benefit | Survivor's Benefit |
|---|---|---|---|
| A: | Plan's Automatic Form for **Unmarried** Participant:<br>Straight Life Annuity | $1,628.95 | None |
| B: | Plan's Automatic Form for **Married** Participant:<br>Joint &Survivor – 50% | $1,448.95 | $724.48 |
| C: | Straight Life Annuity | $1,628.95 | None |
| D: | Joint–and–50% Survivor Annuity | $1,448.95 | $724.48 |
| E: | Joint–and–75% Survivor Annuity | $1,398.45 | $1,048.84 |
| F: | Joint–and–100% Survivor Annuity | $1,351.34 | $1,351.34 |
| G: | Joint–and–50% Survivor "Pop–up" Annuity<br>* If the beneficiary dies first, the participant's benefit<br>increases to the amount shown in Line C. | $1,426.84 | $713.42 |
| H: | 5–year Certain–and–Continuous Annuity | $1,618.80 | $1,618.80 |
| I: | 10–year Certain–and–Continuous Annuity | $1,589.00 | $1,589.00 |
| J: | 15–year Certain–and–Continuous Annuity | $1,541.85 | $1,541.85 |

Please read the information about your benefit choices that PBGC has provided with your application.
Some optional annuity forms offered by PBGC may be identical to your plan's automatic annuity forms.

| Prepared by: | Loudy Appolon |
| Date Prepared: | 06/28/2010 |



# Raleigh Medical Group, P.A.

| Raleigh Endoscopy Center | Raleigh Specialty Clinic of Wake Forest |
|---|---|
| 3521 Haworth Drive, Raleigh, NC 27609-8563 | 833-B Wake Forest Business Park, Wake Forest, NC 27587 |
| Telephone 919-783-4888   Fax 919-783-4887 | Telephone 919-562-6589 Option 1   Fax 919-562-7034 |

June 23, 2005


RE:   William Johnson

To Whom It May Concern:

Mr. William Johnson has had a long and complex history with multiple resections of his large and small bowel for malignancy.  He has also had complications of radiation enteritis and is left with a short bowel syndrome.  He is barely able to maintain nutritional and hydration status with his small bowel despite aggressive therapy with somatostatin.  He continues having disabling diarrhea, near dehydration, and crampy abdominal pain from his short bowel syndrome and should be considered completely disabled as a result.

Thanks for your attention to this matter.

Sincerely,

Ronald P. Schwarz, M.D.
RPS:dlf/D5MT/32196

---

| Michael P. Battaglino, M.D | Neeraj K. Sachdeva, M.D. | Ronald P. Schwarz, M.D. |
|---|---|---|
| Gastroenterology | Gastroenterology | Gastroenterology |
| Subhash C. Gumber, M.D., Ph.D. | Christopher J. Schwarz, M.D., Ph.D. | Sarah J. Sharpe, P.A.-C. |
| Gastroenterology | Gastroenterology | Physician Assistant |
| | | Cindy Groce |
| | | GI Administrator |



**Raleigh Medical Group, P.A.**
**Cary Medical Group**

**Internal Medicine**
Raleigh Office

Robert H. Bilbro, MD
Cardiovascular Disease

Gerald W. Blake, MD
Infectious Diseases

William M. Dunlap, MD
Hematology-Oncology

W.L. Wells Edmundson, MD

C. Allan Eure, MD

Brian H. Goldman, MD

Robert T. Harris, MD

William R. Jacobs, MD

John A. Lang, MD

John Rubino, MD
Allergy

M. Lisa Roy, PA-C
Physician Assistant

Rebecca Boettcher, ARNP
Nurse Practitioner

Mary Ann Pollock, PhD
Registered Dietician

Cary Office

Scott C. Bilbro, MD

Susan L. Crittenden, MD

James W. Jacobs, MD

Mina L. Levin, MD

Derek Q. Schroder, MD

Sylvia P. Shoffner, MD

Martin van Cleeff, MD

**Gastroenterology**
Raleigh Office

Michael P. Battaglino, MD

Subhash C. Gumber, MD, PhD

Chatargy S. Kaza, MD

Juliana Miller, MD

Neeraj K. Sachdeva, MD

Christopher J. Schwarz, MD, PhD

Ronald P. Schwarz, MD

Cary Office

Subhash C. Gumber, MD, PhD

Juliana Miller, MD

Cynthia R. Cox
Administrator

July 21, 2005

RE:     Medical Appeal
        William E. Johnson
        Claim#     10767061

To Whom It May Concern:

I am writing this appeal for Mr. William E. Johnson because of the fact that I consider the rejection of his application for disability is unjust and, having treated him for 19 years, I am in a unique position to provide additional information. I WOULD LIKE IT EMPHASIZED THAT MR. JOHNSON DID NOT ASK ME TO WRITE THIS LETTER, NOR AM I BEING REIMBURSED FOR DOING IT, I SIMPLY FEEL THAT AN UNJUST DECISION NEEDS TO BE RECONSIDERED.

Mr. Johnson has had an incredible number of medical problems since I first saw him in 1986. My letter will summarize these problems but additional records are being sent if more detail is needed. However, I would think that I am providing enough information in this summary to at least make one realize that this man truly deserves permanent disability.

His initial problem was a non-Hodgkin's lymphoma, which was initially treated in 1986 with chlorambucil and prednisone and then with intravenous chemotherapy (Cytoxan, Oncovin, and prednisone).

He had at least a partial remission for five years, but in 1992 had a recurrence in his abdomen, and at this time was given extensive radiation therapy to the abdomen. He then had a remission until 1999, when another recurrence appeared, and he was treated with intravenous Cytoxan and fludarabine from April 1999 through September 1999. He stabilized, but then had recurrence in his cervical spine, and was sent to UNC Memorial Hospital where he underwent a stem cell transplant on July 17, 2000. He has been in remission since that time, and an MRI of his neck as recently as June 2005 showed his disease to be stable.

3521 Haworth Drive • Raleigh, North Carolina 27609 • Internal Medicine 919/782-1806 • Fax 919/782-4756 • Gastroenterology 919/783-4888 • Fax 919/783-4887

216 Ashville Avenue • Cary, North Carolina 27511 • Internal Medicine/Suite 20 • 919/859-5955 • Fax 919/859-5659 • Gastroenterology/Suite 60 • 919/859-0892 • Fax 919/342-3472

He has paid a high price for his aggressive therapy. He has radiation enteritis because of the radiation therapy, and this contributes to his severe bowel problems (see below). Because of the radiation therapy to his neck, he has Lhermitte's syndrome, which sometimes causes lightening-
like pain to shoot down both arms and occasionally into his legs. He has bone marrow suppression from his extensive radiation and chemotherapy, and this is manifested by chronic anemia and thrombocytopenia. His immune system is also suppressed and he is more likely to become infected than the average person.

Because of his radiation therapy to the abdomen, he developed an enterocutaneous fistula in June 2002 after a simple exploratory laparotomy to lyse adhesions (these were probably caused by his surgery for colon cancer in 1990 [see below]), and this created a horrendous problem which took three months to heal.

In the midst of all these problems, he developed colon cancer in 1990 and required a hemicolectomy for this problem. Fortunately, there has been no recurrence, but, as noted above, I think the surgery itself contributed to the adhesions which developed in June 2000, and the adhesions may well be contributing to his current bowel problems.

If all of this was not enough, he has developed a short bowel syndrome (see extensive notes from GI consults here in Raleigh and at UNC Memorial Hospital), which is essentially the dominating medical problem at the present time. On a good day, he has 5-6 bowel movements. On an average day, he has 7-8. On his worst days, he has 12 or more.

The above information is a summary of his medical problems. In reading his letter of rejection, there are several statements which I would like to discuss. The first statement says that "available information demonstrates you were able to work with these conditions prior to going out of work." Mr. Johnson had to drag himself to work by sheer willpower for at least the last year of his employment. Just because he was able to go to work does not mean he was truly fit for work. I documented in my note of March 15, 2004, never knowing that this statement might be applicable at a later date, that he was feeling very exhausted and discouraged and was thinking about taking medical retirement. He went on to work for a long period after this. Just because he went to work does not mean that he was medically fit for work.

There is another statement that "there is no documentation to support a substantial change in your condition which would cause you to go out of work." I think over and over my notes reflect that during the past 12-18 months his health has deteriorated in many ways.

The next statement says "in regard to your diarrhea, the medical records document that a controlled diet can minimize the number of loose bowel movements that occur each day." I reviewed his records, and twice I saw notes, not by me, that said that a strict diet would limit him
to 1-2 bowel movements a day. These statements were made by other physicians who saw him on rare occasions, and I do not believe I ever heard him say he was having 1-2 bowel movements a day. I can assure you that this man would eat dirt if it would control his bowel movements.

The next statement I would like to comment on says "your sedentary position is such that you can self-accommodate to adapt to your symptoms. There is no objective medical documentation to support that the symptoms would currently preclude you from performing the material and substantial duties of your sedentary occupation." First let me say that according to his job description by his supervisor, he does not have a totally sedentary occupation and has to work on multiple floors, and having diarrhea 6-12 times a day is not the only problem, although this alone would be enough to complicate his job. Each episode of diarrhea is frequently followed by abdominal cramps, and on many occasions he does not just have a brief visit to the bathroom, he sometimes has to remain 15 minutes to make sure the diarrhea is over.

In addition to all of the above, I have not mentioned that he is depressed and has required antidepressant therapy in the past. He is now on another antidepressant, just started recently. The rejection of his appeal has certainly added to his depression.

If one looked at only one aspect of this man's multiple medical problems, perhaps rejection of his application for permanent disability might be justified, but looking at all of his medical complications combined, I do not see how anyone can say that this man does not warrant granting of disability.

Let me state again that I was not asked to write this letter nor am I being reimbursed. I simply think a major error has been made in denying this patient his disability. Again, I am basing my opinion not on a brief review of his medical history but on 19 years of following

Claims Services Provided by

**The Prudential Insurance Company of America**

**Sophie Costanza**
Disability Claim Manager

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718  Ext: 87641
Fax: (877) 889-4885
Website:  www.prudential.com/mybenefits

August 28, 2012

William E Johnson
2865 Horsemans Ridge Drive
Clayton, NC  27520

Claimant: William E Johnson
Claim No.: 10767061
Date of Birth: 10/11/1950
Control No./Br.: 39900  /  0B055

|.l.ll..l.l.l..l.lll..l.l.ll

Dear Mr. Johnson:

We are writing to you to confirm that you are receiving Long Term Disability benefits under the
Nortel Networks  Group Policy with Prudential.

You are receiving $3,470.88 per month.  This benefit will remain the same provided your income
from other sources does not change.  Your  benefits will continue through October 10, 2015,
provided you remain totally disabled as defined by the Policy and continue to meet all other
contractual requirements.

Sincerely,
**Sophie Costanza**
Sophie Costanza
Disability Claim Manager

this patient and seeing his health slowly deteriorate, especially in the last several years.

If there are further questions, do not hesitate to contact me.

Sincerely,

William M. Dunlap, M.D.
WMD:jlm/D5MT/34193d

Enclosure: Records



## FAMILY/MEDICAL LEAVE (FMLA) NOTIFICATION FORM

*Instructions: This form explains your rights under FMLA. Several states have slight variations to the federal regulations. If your leave qualifies under a state leave law, you will be notified.*

You recently notified us that you need to take a leave of absence due to a serious health condition or to care for a newborn or newly adopted child. Here's what you reported:

Employee Name: William Johnson
Your notification date: 05/03/2005

Your requested leave start date: 05/03/2005
Your requested leave end date:
Your return to work date - or
Your expected return to work date: 08/03/2005

    Please call your TOPS Leave Administrator with your actual/estimated return to work date.

Reason for your leave request:
    [ ] The care of your newborn, or the placement of a child with you for adoption or foster care
    [X] Serious health condition for which you need care
    [ ] Serious health condition affecting your [ ] spouse, [ ] child, [ ] parent, for whom you need to provide care.

Your leave will be handled by:

        TOPS - Time Off Planning Service
        MR-08-01
        215 N. Front St.
        Columbus OH 43215

        Phone:  877-NN4-TOPS (877-664-8677) option 2
        Fax:     1-877-202-5002

Please contact us at any time if you have questions.

This leave will be counted toward your annual FMLA entitlement, provided you are eligible for FMLA leave and you return the Certification of Health Care Provider as described below.

### EMPLOYEE INFORMATION - KEEP FOR YOUR RECORDS

### Important Information Regarding the Family Care Leave of Absence

You are eligible for a Family Care Leave of Absence if you are a regular full-time or part-time employee who has been employed by Nortel Networks for at least 12 months (not necessarily consecutive) and you have worked at least 1,250 hours during the 12 months immediately preceding the beginning of the leave.

The Family Care Leave of Absence is an unpaid leave. You may take any accrued and unused vacation days prior to the start of the leave. Those vacation days will not count against your leave time.

Leave will be granted for reasons covered by the US Leaves of Absence - Family Care Leave Process. In no event will Family Care Leave(s) be granted for a continuous period of absence longer than 12 months.



*Reporting Your Status Monthly.* Once a month during your leave, you will need to report your health status and intent to return to work by contacting your Supervisor. Please confirm the actual/estimated return to work date.

*Return the Certification of Health Care Provider Form or New Child Care Application.* Your leave, due to a serious health condition for which you, your spouse, child or parent needs care, is not approved until the medical certification is received and reviewed. You must provide a completed Certification of Health Care Provider Form by **05/20/2005.** The company can delay the leave start date until we receive the completed Medical Certification Form. **This Certification of Health Care Provider form does not need to be completed if this absence is part of an approved intermittent FMLA Leave or you have an approved Short-Term disability claim.** If your leave is to care for your newborn child or a child newly adopted or placed in your home for foster care, you will need to complete the Child Care Application unless we have managed your leave of absence for your pregnancy. You will need to provide the Child Care Application form by **05/20/2005.**

*If You Want to Use Paid Time Off - i.e., Vacation, During Your Leave.* If your leave is less than one month, your vacation will continue to accrue at the same rate. However, if your leave is longer than one month, your service will be interrupted and your vacation accrual will discontinue. In this case, Global Employee Services will automatically bridge your service by adjusting your service date and send you a letter with your new service date.

*If Your Circumstances Change.* If your circumstances change and you need to request a longer leave than originally approved, you must first get approval from your manager/supervisor, then call the TOPS Leave Administrator right away to request an extension. You will need to submit updated medical documentation to support the extension. If you do not obtain an approved extension when your Family Care Leave ends and you do not return to work, you will be considered to have voluntarily terminated employment, effective the first working day following the expiration of your leave.

*Returning to Work.* If you are on a leave for your own serious medical condition, i.e., short-term disability, you will be required to provide to Prudential a Release/Return to Work Statement from a health care provider before you can return to work. The TOPS Leave Administrator must also receive notification of your return to work in order to restart your pay. If you return to work after the cutoff date for payroll, you will receive your check on the next scheduled pay.

### Information Concerning Benefits during the Family Care Leave of Absence

**Medical and Dental, Vision and Hearing Care Coverage**
If your leave is 30 days or longer, you must pay employee premiums in order to continue medical and dental, vision and hearing care coverage, employee life insurance, dependent spousal and/or child(ren) life insurance benefits. You will be billed for these premiums in monthly installments through a billing service. Coverage may be canceled if premiums are not paid within 30 days of the due date. *Will be billed*

**Reimbursement Accounts**
You may choose whether or not to continue any Reimbursement Account deductions during an unpaid leave of absence. If you select to continue deductions, you will be billed monthly by a billing service. *Please note that any contributions made to these Reimbursement Accounts while on Family Care Leave will be on an after-tax basis.*

**Nortel Networks Long-Term Investment Plan (401(k))**
All Nortel Networks Long-Term Investment Plan contributions are discontinued during an unpaid leave. If you have an outstanding loan, you must contact the Nortel Networks Long-Term Savings Center at 1-800-726-0026 before your leave begins regarding payments, which must be made on the loan during your leave. When you return from leave, you must contact the Nortel Networks Long-Term Savings Center to have your contributions resumed.

*$28262*
*485⁰⁰*

**Nortel Networks Stock Purchase Plan (NNSPP)**
All Nortel Networks Stock Purchase Plan contributions are discontinued during an unpaid leave. Contributions already made during the offering period will be used to purchase shares at the end of the offering period, and your account will remain open. When you return from leave, you may re-enroll in the NNSPP by calling Mourant at ESN 560-7979 or toll free at 866-574-0331. To participate at the start of the next available offering period, you must enroll no later than 10 calendar days prior to the start of the offering period.

**Short-Term Disability (STD) and Long-Term Disability (LTD)**
All STD and LTD coverage is discontinued during the Family Care Leave of Absence. No disability benefits are in effect during the leave. Note that if you are on an unpaid Leave of Absence, you are not eligible for payment of STD benefits if a disability commences during the leave.

34

## YOUR RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT OF 1993

The U.S. Department of Labor's Employment Standards Administration, Wage and Hour Division, administers and enforces the Family and Medical Leave Act (FMLA) for all private, state and local government employees, and some federal employees. Most Federal and certain congressional employees are also covered by the law and are subject to the jurisdiction of the U.S. Office of Personnel Management or the Congress.

FMLA became effective on August 5, 1993, for most employers. If a collective bargaining agreement (CBA) was in effect on that date, FMLA became effective on the expiration date of the CBA or February 5, 1994, whichever was earlier. FMLA entitles eligible employees to take up to 12 weeks of unpaid, job-protected leave in a 12-month period for specified family and medical reasons. The employer may elect to use the calendar year, a fixed 12-month leave or fiscal year, or a 12-month period prior to or after the commencement of leave as the 12-month period. As provided under the Act, Nortel Networks has elected to use the calendar year basis for application of FMLA.

The law contains provisions on employer coverage; employee eligibility for the law's benefits; entitlement to leave, maintenance of health benefits during leave, and job restoration after leave; notice and certification of the need for FMLA leave; and, protection for employees who request or take FMLA leave. The law also requires employers to keep certain records.

The following information includes the specific and detailed provisions of the 1993 Family and Medical Leave Act. Please direct any questions to the TOPS Leave Administrator, your manager, or your Human Resources Associate.

### THE FAMILY AND MEDICAL LEAVE ACT OF 1993



## EMPLOYER COVERAGE
FMLA applies to all:
public agencies, including state, local and federal employers, local education agencies (schools), and private-sector employers who employed 50 or more employees in 20 or more workweeks in the current or preceding calendar year and who are engaged in commerce or in any industry or activity affecting commerce--including joint employers and successors of covered employers.

## EMPLOYEE ELIGIBILITY
To be eligible for FMLA benefits, an employee must:
(1)    work for a covered employer;
(2)    have worked for the employer for a total of 12 months;
(3)    have worked at least 1,250 hours over the previous 12 months; and
(4)    work at a location in the United States or in any territory or possession of the United States where at least 50 employees are employed by the employer within 75 miles.

## LEAVE ENTITLEMENT
A covered employer must grant an eligible employee up to a total of 12 work-weeks of unpaid leave during any 12-month period for one or more of the following reasons:
for the birth and care of the newborn child of the employee;
for placement with the employee of a son or daughter for adoption or foster care;
to care for an immediate family member* (spouse, child, or parent) with a serious health condition; or
to take medical leave when the employee is unable to work because of a serious health condition.

Spouses employed by the same employer are jointly entitled to a combination total of 12 work-weeks of family leave for the birth and care of the newborn child, for placement of a child for adoption or foster care, and to care for a parent who has a serious health condition. Leave for birth and care, or placement for adoption or foster care must conclude within 12 months of the birth or placement.

Under some circumstances, employees may take FMLA intermittently -- which means taking leave in blocks of time, or by reducing their normal weekly or daily work schedule. If FMLA leave is for birth and care or placement for adoption or foster care, use of intermittent leave is subject to the employer's approval. FMLA leave may be taken intermittently whenever medically necessary to care for a seriously ill family member, or because the employee is seriously ill and unable to work.

35

## DCMS

## Telephone Call Log

08/04/2005

**Claim Number :**  10767061
**Claimant SSN:**  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
**Claimant Name :**  JOHNSON

| | | | |
|---|---|---|---|
| **Reason:** | Initial Disability Report | **Direction:** | Incoming |
| **Call Date/Time:** | 05/03/2005 | **Contact Name:** | Claimant |
| **Made/Rec'd by:** | Tampa CSR, GMCD | | |

GMcD CSR Name - , WorkersCompClaimFiled - , PlannedSurgery - , ResultOfChronicHealth - 1,
BenefitOffsetDeduction - , OffsetDueToSalaryContinuation - , ClaimMedFormSentToClaimant - ,
InformCallerClaimForwardDCM - Y,
PyraClaimRefNumPhoneToCaller - Y, DateOfSurgery - , ClaimFiledBy - EE
. SHORT BOWEL SYNDROME

| | | | |
|---|---|---|---|
| **Reason:** | fdo/ldw | **Direction:** | Outgoing |
| **Call Date/Time:** | 05/04/2005 | **Contact Name:** | ER |
| **Made/Rec'd by:** | Iacovo, Joanne | | |

Disability Client Mailbox   Wednesday May 4, 2005 10:03 AM


To: STEEV@nortel.com
cc:
Subject: William E. Johnson #4830 Nortel


PLEASE FORWARD TO THE APPROPRIATE MANAGER.


Prudential is Nortel Networks Disability claim adminis
trator. We have
received a claim for the employee listed above. In order to process this
claim we must confirm the employee's last day worked (LDW) and first day
out of work (FDOOW). The employee reported the following information:

Last Day Worke
d: <05-02-2005>
First Day Out of Work: <05-03-2005>

Is this information Correct?
If the employee information is correct -- no action is required from you.
If we do not hear from you within 5 business days, we will assume this
information is correct

*Page 1*
Telephone Call Log
ClaimId = 10767061



08/04/2005

**Claim Number :** **10767061**
**Claimant SSN:** **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**
**Claimant Name :** **JOHNSON**

| | | | |
|---|---|---|---|
| **Reason:** | verified receipt of aps | **Direction:** | Incoming |
| **Call Date/Time:** | 05/20/2005 | **Contact Name:** | ee |
| **Made/Rec'd by:** | Stutz, Mary Beth | | |

advised to allow time for review

| | | | |
|---|---|---|---|
| **Reason:** | verified again/rec'd forms/will send MA | **Direction:** | Outgoing |
| **Call Date/Time:** | 05/24/2005 | **Contact Name:** | ee/rc left on vm |
| **Made/Rec'd by:** | Iacovo, Joanne | | |

He received forms again and wanted to make sure rec'd forms from ap. We recevied medical, but not MA, he will send!

| | | | |
|---|---|---|---|
| **Reason:** | approval | **Direction:** | Outgoing |
| **Call Date/Time:** | 05/25/2005 | **Contact Name:** | er |
| **Made/Rec'd by:** | Smith, Margaret | | |

Margaret P Smith
Disability Management Services
Phone Number: 1-800-842-1718
Fax Number: 973-285-8800
Wednesday May 25, 2005 02:32 PM

To: steev@nortel.com
cc: Tamara Faust/GLDI/INST/Prudential
Subject: William E. Johnson

For
Information Only - No Action Required
Prudential is Nortel Networks Disability claim administrator. We have received a short-term disability claim for your employee, William E. Johnson. This is to advise you that the employee's claim has been approved for the period from 05/03/2005 to 06/19/2005. We will keep you apprised of the status of the claim going forward.

Prudential Insurance Company
1-800-842-1718 Ext. 7481

| | | | |
|---|---|---|---|
| **Reason:** | re benefits bey 6/19/05, advised ee to have additional medic | **Direction:** | Incoming |
| **Call Date/Time:** | 06/02/2005 | **Contact Name:** | ee |
| **Made/Rec'd by:** | Smith, Margaret | | |

re ongoing tx plan. ee stated he receives shots on monthly basis for the chronic diarrhea.las shot was 5/23, next one 6/13/05. ee stated he is permanently disabled & w/n be able to rtw. advised ee to have attending physician submit updated medical doc re
permanent dis & tx plan for clinical review.
ee w/have additional medical FAXed to Prudential.

| | | | |
|---|---|---|---|
| **Reason:** | what medical is needed? | **Direction:** | Incoming |

*Page 5*
Telephone Call Log
ClaimId = 10767061


**Prudential Financial**

*DCMS - IDM reports*

## Claims Submission

| SeqNum | ControlNum | Branch | CoverageType | CompanyName | Gender | MaritalStatus |
|---|---|---|---|---|---|---|
| 33409 | 39900 | 0B045 | STD | NORTEL NETWORKS; | M | Married |

**Claimant Name** WILLIAM E JOHNSON

**SSN** 228724830

**DateOfBirth** 10/11/1950

**Residential Address** 1509 KELTON DRIVE RALEIGH, NC 27615

**Mailing Address**

**Supervisor** STEVE MCALLISTER

**Supervisor Phone** (919) 991-2235 **Ext:**

**Home Phone:** (919) 845-0198 **Ext:** **Work Phone** (919) 905-9081 **Ext:**

**Job Title:** CS / SOPS CUSTOMER T **EEID:** 0200211 **Claimant DOH** 12/09/1985

**Salary:** $1,980.00 **Salary Freq:** Bi-weekly **Last Day Worked** 05/02/2005 **Work Hrs Per Day** 8.00

**Physician Nam** WILLIAM DUNLAP **Physician Type:** Primary

**Physician Phone:** (919) 782-1806 **Physician Ph. Ext:**

**Work Related:** N **Pregnancy Related:** N **Claim. Filed By:** EE

**Expected Del. Dt:** **Clamnt. Hospitalised:** N **Hospitalization Dt:**
**Planned Surgery:** **IDM Type:** PRUD **Dt. Of Surgery:**

**Intake ID:** **MV Accident:** N **Chronic Health:** Y

**Other Accident:** N **Dt. Of Accident:**

**Expected RTW:**

**Worker's Comp Claim Filed (Y/N)** **LTD Cov Eff Date** **STD Cov Eff Date**

**Admin DCM** Iacovo, Joanne

**Claim created (Y/N):** Y **ClaimID** 10767061

**Claim Submission** 05/03/2005 **Update time** 05/04/2005  8:38:45AM

**Reason For Absence** SHORT BOWEL SYNDROME

**Comments** N/G; WORK LOCATION - NORTEL/ RTP NC;

Page : 1

**Prudential ⬙ Financial**

# Prudential  Financial

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19101
Tel: 800-842-1718   Fax: 877-889-4885
http://www.prudential.com/inst/gldi

## Group Disability Insurance Authorization

**1 Claimant's Information**

First Name: WILLIAM

MI: E

Last Name: JOHNSON

Social Security Number: 226 72 4830

Employee Phone Number: 919 845 0198

Control Number: 37900

**2 Authorization for Release of Information to Prudential Insurance Company**

This Authorization is intended to comply with the HIPAA Privacy Rule

I authorize any health plan, physician, health care professional, hospital, clinic, laboratory, pharmacy, medical facility, or other health care provider that has provided treatment, payment or services to me or on my behalf ("My Providers") to disclose my entire medical record and any other health information concerning me to the Prudential Insurance Company of America (Prudential) and its agents, employees, and representatives. This includes information on the diagnosis or treatment of Human Immunodeficiency Virus (HIV) infection and sexually transmitted diseases. This also includes information on the diagnosis and treatment of mental illness and the use of alcohol, drugs, and tobacco, but excludes psychotherapy notes.

I authorize any insurance company, employer, the Social Security Administration, or other person or institutions to provide any information, data or records relating to my Social Security, Workers' Compensation, credit, financial, earnings, activities or employment history to Prudential.

Unless limits* are shown below, this form pertains to all of the records listed above.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this authorization and I instruct My Providers to release and disclose my entire medical record without restriction.

This information is to be disclosed under this Authorization so that Prudential may: 1) administer claims and determine or fulfill responsibility for coverage and provision of benefits; 2) obtain reinsurance; 3) administer coverage; and 4) conduct other legally permissible activities that relate to any coverage I have or have applied for with Prudential.

This authorization shall remain in force for 24 months following the date of my signature below, while the coverage is in force, except to the extent that state law imposes a shorter duration. A copy of this authorization is as valid as the original. I understand that I have the right to revoke this authorization in writing, at any time, by sending a written request for revocation to Prudential at: P.O. Box 13480, Philadelphia, PA 19101. I understand that a revocation is not effective to the extent that any of My Providers has relied on this Authorization or to the extent that Prudential has a legal right to contest a claim under any insurance policy or to contest the policy itself. I understand that any information that is disclosed pursuant to this authorization may be redisclosed and no longer covered by federal rules governing privacy and confidentiality of health information.

I understand that if I refuse to sign this authorization to release the entire medical record, Prudential may not be able to process my claim for benefits and may not be able to make any benefit payments. I understand that I have the right to receive a copy of this authorization.

*Limits, if any:

x William E Johnson

Employee Signature (indicate how related if signed by other than claimant)

Date (MM DD YYYY): 05 24 2005

**NOTICE TO MONTANA RESIDENTS:** You or your authorized representative are entitled to receive a copy of this Authorization, and upon request, a record of any subsequent disclosures of personal or privileged information.

Prudential Financial and the Rock logo are registered service marks of The Prudential Insurance Company of America and its affiliates.



Claim Services Provided by

The Prudential Insurance Company of America

**David Moran**
Disability Consultant

The Prudential Insurance Company Of America
Disability Management Services
Po Box 13480
Philadelphia, PA 19101

Phone: (800) 842-1718  Ext: 5598
Fax: (877) 889-4885
Hours: 07:00 AM 03:00 PM

August 04, 2005

William E Johnson
1509 Kelton Drive
Raleigh, NC 27615

Claimant: William E Johnson
Control #/Br: 39900 / 0B045
Claim #: 10767061
Date of Birth: 10/11/1950

lılılllıılılllıııllllılılılıl

Dear Mr. Johnson:

We are writing you with regard to your appeal request to the Nortel Employee Benefit Committee
(EBC). In order for Prudential to release a copy of your claim file to the Nortel EBC, we are in
need of a signed authorization from yourself allowing us to release your claim file for
consideration of your appeal before the Nortel EBC.

Enclosed is an "authorization" form for you to sign and return to our office. Our toll free FAX
number is 1-(877) 889-4885.

If you have any questions, please contact our office at 1-(800) 842-1718, extension 5598.

Sincerely,

*David Moran*

David Moran
Disability Consultant

Enclosure

cc:   Nortel

*JOHNSON*
*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*

# Prudential Financial

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19101
Tel: 800-842-1718   Fax: 877-889-4885
http://www.prudential.com/inst/gldi

## Group Disability Insurance Authorization

**1 Claimant's Information**

First Name: W I L L I A M
MI: E
Last Name: J O H N S O N

Social Security Number: 2 2 8 7 2 4 8 3 0
Employee Phone Number: 9 1 9 8 4 5 0 1 9 8
Control Number: B R 3 9 9 0 0

**2 Authorization for Information to Prudential Insurance Company**

This Authorization is intended to comply with the HIPAA Privacy Rule

I authorize any health plan, physician, health care professional, hospital, clinic, laboratory, pharmacy, medical facility, or other health care provider that has provided treatment, payment or services to me or on my behalf ("My Providers") to disclose my entire medical record and any other health information concerning me to the Prudential Insurance Company of America (Prudential) and its agents, employees, and representatives. This includes information on the diagnosis or treatment of Human Immunodeficiency Virus (HIV) infection and sexually transmitted diseases. This also includes information on the diagnosis and treatment of mental illness and the use of alcohol, drugs, and tobacco, but excludes psychotherapy notes.

I authorize any insurance company, employer, the Social Security Administration, or other person or institutions to provide any information, data or records relating to my Social Security, Workers' Compensation, credit, financial, earnings, activities or employment history to Prudential.

Unless limits* are shown below, this form pertains to all of the records listed above.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this authorization and I instruct My Providers to release and disclose my entire medical record without restriction.

This information is to be disclosed under this Authorization so that Prudential may: 1) administer claims and determine or fulfill responsibility for coverage and provision of benefits; 2) obtain reinsurance; 3) administer coverage; and 4) conduct other legally permissible activities that relate to any coverage I have or have applied for with Prudential.

This authorization shall remain in force for 24 months following the date of my signature below, while the coverage is in force, except to the extent that state law imposes a shorter duration. A copy of this authorization is as valid as the original. I understand that I have the right to revoke this authorization in writing, at any time, by sending a written request for revocation to Prudential at: P.O. Box 13480, Philadelphia, PA 19101. I understand that a revocation is not effective to the extent that any of My Providers has relied on this Authorization or to the extent that Prudential has a legal right to contest a claim under any insurance policy or to contest the policy itself. I understand that any information that is disclosed pursuant to this authorization may be redisclosed and no longer covered by federal rules governing privacy and confidentiality of health information.

I understand that if I refuse to sign this authorization to release the entire medical record, Prudential may not be able to process my claim for benefits and may not be able to make any benefit payments. I understand that I have the right to receive a copy of this authorization.

*Limits, if any:

x _William E Johnson_
Employee Signature (indicate how related if signed by other than claimant)

Date (MM DD YYYY): 0 8 0 9 2 0 0 4

**NOTICE TO MONTANA RESIDENTS:** You or your authorized representative are entitled to receive a copy of this Authorization, and upon request, a record of any subsequent disclosures of personal or privileged information.

Prudential Financial and the Rock logo are registered service marks of The Prudential Insurance Company of America and its affiliates.

08/04/2005

**Claim Number :** **10767061**
**Claimant SSN:** **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**
**Claimant Name :** **JOHNSON**

| | | | |
|---|---|---|---|
| **Reason:** | appeal process | **Direction:** | Outgoing |
| **Call Date/Time:** | 07/20/2005 | **Contact Name:** | er-steve mccalister, ee's supervisor |
| **Made/Rec'd by:** | DeLorenzo, Carmela | | |

Good afternoon, Steve.

According to the contract Prudential has with Nortel, the second appeal is handled internally by Nortel. So Mr. Johnson will need to appeal his claim to Nortel and not Prudential. I'm not sure what information your appeal review area will need. You may want to review that with Danielle Lafountain. She has been involved in Mr. Johnson's appeal process thus far and may know where to direct you and Mr. Johnson next.

Thank you,

Carmela


"Steve McAlister" <steev@nortel.com>

Wednesday July 20, 2005 11:27 AM

To: <carmela.delorenzo@prudential.com>
cc:
Subject: Bill Johnson case # 10767061


Hi Carmela,

This is in reference to the voice mail I left you today, July 20, 2005.
Bill contact

*Page 31*
Telephone Call Log
ClaimId = 10767061



Prudential Insurance Company of America
Disability Claim Services Provider

Explanation of Benefit   L (2 of 2)
2-547-02-91-02-0-0-0-0

DISABILITY MANAGEMENT SERVICES
PO BOX 13480
PHILADELPHIA              PA   19176
800-842-1718

If you have any
questions about
this claim, please
contact

Date
August 27, 2012

BENEFITS ADMINISTRATOR
NORTEL NETWORKS, INC.
GES DISB PRIME - MS 570/02/0C2
PO BOX 13010
RESEARCH TRIANGLE PARK    NC   27709-3010

CNTRL#    0039900
CLAIM#    10767061
ID#       XXX-XX-4830

CLAIMANT   WILLIAM E JOHNSON

| DESCRIPTION | AMOUNT | FROM | TO |
|---|---|---|---|
| LTD Claim Benefits | 6,006.00 | 08/01/2012 | 08/31/2012 |
| - SSDB | 1,882.10 | BENEFIT AMOUNT | 6,006.00 |
| - Medical | 262.45 | LESS OFFSET | 1,882.10 |
| - Dental | 48.01 | ADD'L BENEFITS | 0.00 |
| - Mandatory FIT W4 | 324.83 | | 4,123.90 |
| - Free Form 1 | 13.61 | LESS ADJUSTMENTS | 0.00 |
| - Free Form 3 | 4.12 | | 4,123.90 |
| | | LESS DEDUCTIONS | 653.02 |
| | | AMOUNT PAYABLE | 3,470.88 |

For claim or payment status, call 800-842-1718 and follow the prompts or visit
us on the web at www.Prudential.com/mybenefits and select the online option.

Date:   August 27, 2012

Deposit Amount:    $3,470.88

| Direct Deposit Distribution | | |
|---|---|---|
| Account Type | Account Number | Deposit Amount |
| Checking | XXXXXXXX8463 | $3,470.88 |

To the
Accounts
of

WILLIAM JOHNSON
2865 HORSEMANS RIDGE DRIVE
CLAYTON                   NC   27520

This is not a Check                                    Not Negotiable

Disability Claim Services Provider

If you have any
questions about
this claim, please
contact

**DISABILITY MANAGEMENT SERVICES**
PO BOX 13480
PHILADELPHIA          PA   19176
800-842-1718

Date
**June 25, 2012**

CNTRL#   0039900
CLAIM#   10767061
ID#      XXX-XX-4830

BENEFITS ADMINISTRATOR
NORTEL NETWORKS, INC.
GES DISB PRIME - MS 570/02/0C2
PO BOX 13010
RESEARCH TRIANGLE PARK   NC   27709-3010

CLAIMANT   WILLIAM E JOHNSON

| DESCRIPTION | AMOUNT | FROM | TO |
|---|---|---|---|
| LTD Claim Benefits | 6,006.00 | 06/01/2012 | 06/30/2012 |
| - SSDB | 1,882.10 | BENEFIT AMOUNT | 6,006.00 |
| - Medical | 262.45 | LESS OFFSET | 1,882.10 |
| - Dental | 48.01 | ADD'L BENEFITS | 0.00 |
| - Mandatory FIT W4 | 324.83 | | 4,123.90 |
| - Free Form 1 | 13.61 | LESS ADJUSTMENTS | 0.00 |
| - Free Form 3 | 4.12 | | 4,123.90 |
| | | LESS DEDUCTIONS | 653.02 |
| | | AMOUNT PAYABLE | 3,470.88 |

For claim or payment status, call 800-842-1718 and follow the prompts or visit
us on the web at www.Prudential.com/mybenefits and select the online option.

Date:  **June 25, 2012**

Deposit Amount:    $3,470.88

| Direct Deposit Distribution | | |
|---|---|---|
| Account Type | Account Number | Deposit Amount |
| Checking | XXXXXXXX8463 | $3,470.88 |

To the
Accounts
of

WILLIAM JOHNSON
2865 HORSEMANS RIDGE DRIVE
CLAYTON              NC   27520

This is not a Check                                    Not Negotiable

Prudential Insurance Company of America
Disability Claim Services Provider

Explanation of Benefit   L (2 of 2)
019424-02-47-02-0-0-0-0

If you have any questions about this claim, please contact

**DISABILITY MANAGEMENT SERVICES**
PO BOX 13480
PHILADELPHIA            PA   19176
800-842-1718

Date
June 24, 2010

CNTRL#   0039900
CLAIM#   10767061
ID#      XXX-XX-4830

BENEFITS ADMINISTRATOR
NORTEL NETWORKS, INC.
GES DISB PRIME - MS 570/02/0C2
PO BOX 13010
RESEARCH TRIANGLE PARK   NC   27709-3010

CLAIMANT   WILLIAM E JOHNSON

| DESCRIPTION | AMOUNT | FROM | TO |
|---|---|---|---|
| LTD Claim Benefits | 6,006.00 | 06/01/2010 | 06/30/2010 |
| - SSDB | 1,871.50 | BENEFIT AMOUNT | 6,006.00 |
| - Medical | 215.38 | LESS OFFSET | 1,871.50 |
| - Dental | 40.81 | ADD'L BENEFITS | 0.00 |
| - Mandatory FIT W4 | 357.88 | | 4,134.50 |
| - Free Form 1 | 13.60 | LESS ADJUSTMENTS | 0.00 |
| - Free Form 3 | 4.12 | | 4,134.50 |
| | | LESS DEDUCTIONS | 631.79 |
| | | AMOUNT PAYABLE | 3,502.71 |

For claim or payment status, call 800-842-1718 and follow the prompts or visit us on the web at www.Prudential.com/inst/gldi and select the online option.

Date:   June 24, 2010

Deposit Amount:      $3,502.71

| Direct Deposit Distribution | | |
|---|---|---|
| Account Type | Account Number | Deposit Amount |
| Checking | XXXXXXXX8463 | $3,502.71 |

To the Accounts of

WILLIAM JOHNSON
2865 HORSEMANS RIDGE DRIVE
CLAYTON            NC   27520

This is not a Check                          Not Negotiable



**United States Benefits
Confirmation Statement**

This confirms your Benefits selections and costs, which take effect 01/01/2012. These selections remain in effect unless your eligibility changes or you make changes due to a Status Change. If any information on this Confirmation Statement is not accurate, please call HR Shared Services at ESN 355-9351, 919-905-9351 or toll-free at 1-800-676-4636 immediately.

This also confirms that, as part of your ongoing participation in Nortel's compensation and benefit programs, you agree to disclosure of personal information by Nortel and its plan and program administrators and custodians to third parites, as required, to facilitate administration and reporting.

| | |
|---|---|
| Name: | William Johnson |
| Global ID: | 0200211 |
| Date of Birth: | 10/11/1950 |
| Pay Frequency: | US Bi-weekly |
| Benefits Earnings: | $ 102960.00 |
| Event:s | Annual Enrollment |
| Event Date: | 10/28/2011 |
| Prepared On: | 11/30/2011 |

## Total Cost Summary

This summary is for Benefits that are already approved. If any coverage is pending, your costs may change later when approval is received. **Please make sure your dependent information (listed on the next page) is accurate.**

### CONFIRMED AFTER-TAX SELECTIONS

| Benefit/Option | Coverage Level | Employee Cost Per Pay Period | Employee Cost Per Year | Nortel Cost Per Year |
|---|---|---|---|---|
| **Medical Care**<br>90/70 PPO, Anthem | EE & Spouse | $ 121.13 | $3,149.38 | $8,320.78 |
| **Dental/Vision/Hearing Care**<br>PLUS | EE & Spouse | $ 22.16 | $ 576.16 | $1,214.20 |
| **Short-Term Disability**<br>66 2/3% of Coverage Amt. Shown | | $ 0.00 | $ 0.00 | $ 672.36 |
| **Long-Term Disability**<br>70% of Benefits Earnings | | $ 9.11 | $ 236.86 | $ 0.00 |
| **Total Cost of Your Before-Tax Selections:** | | $ 152.40 | $3,962.40 | 10,207.34 |

### CONFIRMED AFTER-TAX SELECTIONS

| Benefit/Option | Employee Cost Per Pay Period | Employee Cost Per Year | Nortel Cost Per Year |
|---|---|---|---|
| **Core Employee Life Insurance**<br>1x Benefits Earnings | $ 0.00 | $ 0.00 | $ 160.68 |
| **Optional Employee Life Insurance**<br>2x BENE Earnings Non-Smoker | $ 38.89 | $1,011.14 | $ 0.00 |
| **Dependent Life Insurance - Spouse/DP**<br>$50,000 | $ 6.28 | $ 163.28 | $ 0.00 |
| **Dependent Life Insurance - Child(ren)**<br>No Coverage | $ 0.00 | $ 0.00 | $ 0.00 |
| **Accidental Death & Dismemberment**<br>2x Benefits Earnings Family | $ 1.90 | $ 49.40 | $ 0.00 |
| **Total Cost of Your After-Tax Selections:** | $ 47.07 | $1,223.82 | $ 160.68 |

** If an increase was selected for Optional Life and/or Spousal/DP Life Insurance, a Health Statement must be completed and returned to the address listed on the form within 31 days of the date you made your selections. Once approved for this increased coverage, the higher cost shown will be deducted from your pay check.



**United States**
**FLEX Benefits**
**Confirmation Statement**

This confirms your FLEX selections and costs, which take effect 01/01/2008. These selections remain in effect through 12/31/2008 unless your eligibility changes or you make changes due to a Status Change. If any information on this Confirmation Statement is not accurate, please call HR Shared Services at ESN 355-9351, 919-905-9351 or toll-free at 1-800-676-4636 immediately.

This also confirms that, as part of your ongoing participation in Nortel's compensation and benefits programs, including FLEX, you agree to disclosure of personal information by Nortel and its plan and program administrators and custodians to third parites, as required, to facilitate administration and reporting.

| | |
|---|---|
| Name: | William Johnson |
| Global ID: | 0200211 |
| Date of Birth: | 10/11/1950 |
| Pay Frequency: | US Bi-weekly |
| FLEX Earnings: | $ 102960.00 |
| Event: | Annual Enrollment |
| Event Date: | 09/24/2007 |
| Prepared On: | 11/21/2007 |

## Total Cost Summary

This summary is for benefits that are already approved. If any coverage is pending, your costs may change later when approval is received. **Please make sure your dependent information (listed on the next page) is accurate.**

### CONFIRMED AFTER-TAX SELECTIONS

| Benefit/Option | Coverage Level | Employee Cost Per Pay Period | Employee Cost Per Year | Nortel Cost Per Year |
|---|---|---|---|---|
| **Medical Care** | | | | |
| 90/70 PPO, Anthem | EE & Spouse | $ 67.56 | $1,756.56 | $6,833.32 |
| **Dental/Vision/Hearing Care** | | | | |
| PLUS | EE & Spouse | $ 14.30 | $ 371.80 | $ 979.68 |
| **Health Care Reimbursement Account** | | $ 0.00 | $ 0.00 | |
| **Dependent Care Reimbursement** | | $ 0.00 | $ 0.00 | |
| **Short-Term Disability** | | | | |
| Raise-90%of Coverage Amt.Shown | | $ 5.15 | $ 133.90 | $ 0.00 |
| **Long-Term Disability** | | | | |
| 70% of Flex Earnings | | $ 9.11 | $ 236.86 | $ 0.00 |
| **Total Cost of Your Before-Tax Selections:** | | $ 96.12 | $2,499.12 | $7,813.00 |

### CONFIRMED AFTER-TAX SELECTIONS

| Benefit/Option | Employee Cost Per Pay Period | Employee Cost Per Year | Nortel Cost Per Year |
|---|---|---|---|
| **Core Employee Life Insurance** | | | |
| 1x Flex Earnings | $ 0.00 | $ 0.00 | $ 67.86 |
| **Optional Employee Life Insurance** | | | |
| 2x Flex Earnings Non-Smoker | $ 25.86 | $ 672.36 | $ 0.00 |
| **Dependent Life Insurance - Spouse/DP** | | | |
| $50,000 | $ 6.28 | $ 163.28 | $ 0.00 |
| **Dependent Life Insurance - Child(ren)** | | | |
| No Coverage | $ 0.00 | $ 0.00 | $ 0.00 |
| **Accidental Death & Dismemberment** | | | |
| 2x Flex Earnings Family | $ 1.90 | $ 49.40 | $ 0.00 |
| **Total Cost of Your After-Tax Selections:** | $ 34.04 | $ 885.04 | $ 67.86 |

** If an increase was selected for Optional Life and/or Spousal/DP Life Insurance, a Health Statement must be completed and returned to the address listed on the form within 31 days of the date you made your selections. Once approved for this increased coverage, the higher cost shown will be deducted from your pay check.

**ADP** National Account Services
Probusiness Division

006-006296 · WM-IMS

Social Security No.
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
Marital Status
**Married**
Exemptions/Allowances
Federal 3/0
State: 2/0

| | Year To Date Earnings | |
|---|---|---|
| Regular Pay | 94644.00 |
| Short Term Disability 100% | 4936.00 |
| SUCCESS | 8931.00 |
| Group Term Life > 150000 | 146.38 |

| Year To Date Deductions | |
|---|---|
| Pretax Medical Plan | 1500.76 |
| Pretax HMY Plan | 270.10 |
| Health Care Spending Account | 749.94 |
| Pretax LTD | 185.38 |
| Pretax STD | 236.66 |
| Voluntary AD&D | 67.96 |
| Life Insurance | 543.92 |
| Dependent Life Ins. Spouse | 139.96 |
| 401K Matched-Option A | 1307.46 |
| 401K Unmatched | 796.44 |
| 401K Loan | 6936.00 |
| UW Grtp Rdchtr (NY) | 130.00 |

| b Employer identification number 04-2486332 | d Employee's social security number 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 | | | |
|---|---|---|---|---|
| c Employer's name, address, and ZIP code | | 7. Social security tips | 1 Wages, tips, other compensation 105267.46 | 2 Federal income tax withheld 15666.22 |
| NORTEL NETWORKS, INC. 4001 E. Chapel Hill-Nelson Hwy Mailstop: 570/02/087 Research Triangle Park, NC 27709 | | 8 Allocated tips | 3 Social security wages 87000.00 | 4 Social security tax withheld 5449.80 |
| | | 9 Advance EIC payment | 5 Medicare wages and tips 107971.36 | 6 Medicare tax withheld 1565.58 |
| e Employee's first name and email    Last name | | 10 Dependent care benefits | 12a See instructions for box 12 146.38 C | 12b |
| WILLIAM E. JOHNSON 1509 KELTON DRIVE RALEIGH, NC 27615 | | 11 Nonqualified plans | 13 Statutory Retirement Third-party employee plan sick pay [ ] [X] [ ] | 12c D 2703.90 |
| | | | 14 Other | 12d |
| 1 Employee's address and ZIP code | | | | |
| 15 State Employer's State ID No 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
| NC 030000662 105267.46 | 7000.00 | | | |

**2004**
OMB No. 1545-0008

**Form W-2 Wage and Tax Statement**

Employee's
Copy

Copy C - For EMPLOYEE'S RECORDS. (See Notice to Employee on back.)
Department of the Treasury-Internal Revenue Service. This information is being furnished
to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty
or other sanction may be imposed on you if this income is taxable and you fail to report it.

Receive a Discount on TurboTax for the Web Software and Free W-2 Download at www.probusiness.com/turbotax