## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                           :

*In re*                               :    Chapter 11
                           :

Nortel Networks Inc., *et al.*,[1]     :    Case No. 09-10138 (KG)
                           :

               Debtors.     :    Jointly Administered
                           :

                           :    **Hearing date:  October 18, 2012 at 11:00am (ET)**
                           :    **Objections due:  October 11, 2012 at 4:00pm (ET)**
-------------------------------------------------------- X

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019
## FOR ENTRY OF AN ORDER APPROVING THE STIPULATION
## RESOLVING PROOFS OF CLAIM NOS. 2837 AND 6875
## FILED BY PACIFIC GAS AND ELECTRIC COMPANY

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing NNI to enter into and approving a stipulation (the "Stipulation") with Pacific Gas and Electric Company ("Claimant"), attached hereto as **Exhibit B**, which resolves Claimant's proofs of claim against the Debtors; and granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

## Jurisdiction

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory bases for the relief requested herein are section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.       On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc. ("NN CALA"),[2] filed voluntary petitions for relief under chapter 11 of

the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors

continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

4.       The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

5.       On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

---

[2]       NN CALA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]       The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.    Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Facts Relevant to this Motion**

7.    On or about June 2, 2006, counsel for Phoenix Solutions Inc. ("Phoenix") sent Claimant a letter contending that Claimant's voice recognition technology appeared to be covered by one or more patents that Phoenix claimed to own, and inviting Claimant to secure a license from Phoenix in order to continue using such technology.  By letter dated August 10, 2006 and in subsequent correspondence, Claimant informed NNI of Phoenix's letter of June 2, 2006 and sought indemnification from NNI for litigation expenses and any liability incurred in any litigation with Phoenix, to the extent Phoenix's claim related to products NNI had sold to Claimant.  Claimant alleged that it was entitled to such indemnity under the terms of an

---

[4]    The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

Agreement for the provision of an interactive voice response system executed between Claimant and NNI and dated December 11, 2003 (the "Agreement").

8.      On January 30, 2009, Phoenix commenced a lawsuit against Claimant in the United States District Court for the Central District of California, No. 2:09-cv-00774 (the "Litigation"), asserting claims against Claimant for infringement of five different patents that Phoenix claimed to own.

9.      On September 11, 2009, Claimant filed a proof of claim against NNI, which has been listed on the Debtors' claims register as proof of claim number 2837, in an unliquidated amount in excess of $411,597.24 (which figure allegedly represented the total fees and costs incurred by Claimant in the Litigation as of September 11, 2009), seeking indemnity from NNI on account of the Litigation ("Claim No. 2837").

10.     On January 22, 2010, Claimant filed a proof of claim against NN CALA, which has been listed on the Debtors' claims register as proof of claim number 6875, seeking to recover from NN CALA the same amounts, on the same basis, as the amounts and basis set forth in Claim No. 2837 ("Claim No. 6875," and together with Claim No. 2837, the "Claims").

11.     Thereafter, in an effort to negotiate an expeditious resolution of the dispute between Claimant and the Debtors, the parties entered into settlement discussions.  As a result of these discussions, NNI, subject to this Court's approval, has reached a compromise with Claimant, the terms of which provide for (i) the disallowance of Claim No. 6875 against NN CALA, and (ii) the reduction and allowance of Claim No. 2837 against NNI as a general unsecured claim in the reduced amount of $300,000, as memorialized in the Stipulation.  In consideration of the partial allowance of Claim No. 2837, Claimant has agreed, subject to this Court's approval, to release all claims against the Debtors arising out of or relating to the

4

Agreement or the Litigation.  The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of the Claims through the Stipulation is appropriate and in the best interest of both their estates and their creditors.

## Relief Requested

12.     By this Motion, the Debtors seek an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Stipulation, (ii) authorizing NNI to enter into the Stipulation, (iii) disallowing and expunging Claim No. 6875; (iv) reducing and allowing Claim No. 2837 as a general unsecured claim in the reduced amount of $300,000, and (iv) granting them such other and further relief as the Court deems just and proper.

## Basis for Relief

13.     The Debtors seek authorization for NNI to enter into the Stipulation under section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

14.     Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  In addition, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for

Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  And

courts in this District have recognized that the approval of a proposed compromise and

settlement is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram

Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

      15.    Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re

Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211

B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the

need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer

Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best

possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.

Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below

the lowest point in a range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of

Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at

330.

      16.    The Third Circuit has set out four criteria for a bankruptcy court to consider when

evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62

B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.),

283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

17.     The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation.  While NNI is prepared to litigate the Claims and believes that there is a reasonable likelihood it would prevail in such litigation, NNI recognizes that litigation of the Claims carries with it inherent uncertainties and there can be no assurance that it would achieve a better result than the one set forth in the Stipulation.  The resolution reflected in the Stipulation fairly balances NNI's likelihood of success on the merits of the Claims against its interest in avoiding the uncertainty of litigation.

18.     In addition, further litigation of the Claims would result in the estate's expenditure of considerable additional legal fees.  The litigation would involve highly technical issues that could require the Debtors to hire special patent counsel and retain experts.  The costs of litigating this matter would be substantial.  Moreover, such litigation would be burdensome to the estate and disruptive of the estate's efforts to resolve the matters that are essential to the ultimate resolution of these cases.

19.     Finally, the interests of the creditors militate in favor of approval of the Stipulation.  The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Claims and the avoidance of litigation risk and substantial legal expenses that would be incurred if the Claim were to be further litigated.  The settlement reflected in the Stipulation eliminates unliquidated claims against NNI and NN CALA by reducing and allowing a claim against NNI in the lesser amount of $300,000.  The Debtors consulted the Committee concerning the Stipulation prior to the filing of this Motion, and the Committee expressed no objection to the Stipulation.

20.     In light of the foregoing, the Debtors respectfully seek authorization for NNI to enter into the Stipulation and approval of the Stipulation.

## **Notice**

21.     Notice of the Motion has been given via first class mail to (i) the Claimant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## **No Prior Request**

22.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of the page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  September 24, 2011  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)  
Lisa M. Schweitzer (admitted *pro hac vice*)  
Neil P. Forrest (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone:  (212) 225-2000  
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone:  (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors*  
*and Debtors in Possession*