**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | **Hearing date: October 18, 2012 at 11:00 a.m. (ET)**<br>**Objections due: October 11, 2012 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING STIPULATION WITH EDMUND B. FITZGERALD**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "U.S. Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the U.S. Debtors' entry into and approving a stipulation attached hereto as Exhibit B (the "Stipulation") by and among NNI, Nortel Networks Limited ("NNL") and Edmund B. Fitzgerald ("Claimant", and together with NNI and NNL, the "Parties"); and granting the U.S. Debtors such other and further relief as the Court deems just and proper. In support of this Motion, the U.S. Debtors respectfully represent as follows:

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the U.S. Debtors and their petitions are available at http://dm.epiq11.com/nortel.

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3. On January 14, 2009 (the "Petition Date"), the U.S. Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The U.S. Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the U.S. Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5. On the Petition Date, the U.S. Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent NNL (NNL, together with NNC and their affiliates, including the U.S. Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other U.S. Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6. Since the Petition Date, Nortel has sold its business units and other assets to various purchasers. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the U.S. Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7. By this Motion, the U.S. Debtors seek an order, pursuant to sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing NNI's entry into the Stipulation and approving the Stipulation, and (ii) granting the U.S. Debtors such other and further relief as the Court deems just and proper.

**Facts Relevant to this Motion**

8. Claimant worked for the Nortel group, then known as Northern Telecom, from May 1980 until his retirement in July 1990. During his tenure with Nortel, Claimant held certain executive positions at Northern Telecom Inc. (now NNI) and Northern Telecom Limited (now NNL).

---

[4] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

9. On September 29, 2009, Claimant filed a proof of claim against NNI for the present value of his retirement benefits in the amount of $2,681,085.00 (U.S. Claim No. 4748), which was subsequently disallowed by the *Order Granting Debtors' First Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. § 3007-1 (Amended Claims)* [D.I. 2188]. On September 30, 2009, Claimant filed a proof of claim in the amount of $3,041,751.00 (U.S. Claim No. 5641) (the "Asserted U.S. Claim").

10. On September 30, 2009, Claimant filed a general claim against NNC in the Canadian Proceedings in the amount of $3,041,751.05, bearing reference number 17032 (the "Asserted Canadian Claim", and together with the Asserted U.S. Claim, the " Asserted Claims").

11. On July 13, 2011, Claimant filed the *Motion of Edmund B. Fitzgerald for Relief from the Automatic Stay* [D.I. 5951] (the "Stay Relief Motion") and, on September 7, 2011, the U.S. Debtors filed the *Objection to the Motion of Edmund B. Fitzgerald for Relief from the Automatic Stay* [D.I. 6322].

12. Pursuant to the Canadian Compensation Claims Process and the methodology approved by orders of the Canadian Court granted October 6, 2011 (the "Compensation Claim Orders"), NNL and the Monitor have determined that Claimant has a Compensation Claim (as defined in the Compensation Claims Orders) against NNL in the Canadian Proceedings in the amount of CAN $1,464,933.00 as set out in the Claimant's Information Statement (as defined in the Canadian Compensation Claims Orders) bearing Reference No. 11519 (the "Allowed Canadian Compensation Claim").

13. In order to avoid the cost and risk inherent in litigating the Asserted Claims and the Stay Relief Motion, the Parties engaged in arm's-length negotiation to resolve their disputes

and, subject to the approval of this Court, have agreed on the resolution memorialized in the Stipulation.

14. The Stipulation provides that, upon Claimant's withdrawal of the Stay Relief Motion and the Asserted Canadian Claim, (i) the U.S. Claim (Claim No. 5641) shall be allowed as a general unsecured claim against NNI in the amount of US $1,529,861 (the "Allowed U.S. Claim") and (ii) the Canadian Compensation Claim (Reference No. 11519) shall be allowed as a general unsecured claim against NNL in the amount of CAN $1,464,933 in accordance with and subject to the Canadian Compensation Claims Process and the Compensation Claims Orders. Except as set forth above, the Stipulation provides for a release of claims by and between Claimant, NNI and NNL relating to the Asserted Claims, the Stay Relief Motion, or any liability that could have been raised in the Asserted Claims or Stay Relief Motion.[5]

**Basis for Relief**

15. The U.S. Debtors seek authorization to enter into the Stipulation under sections 105 and 502 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

16. Bankruptcy Rule 9019 provides, in pertinent part, that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally

[5] In the event of an discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

17. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

18. The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

19. The U.S. Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation and request that NNI's entry into the Stipulation be authorized under Bankruptcy Rule 9019. While the U.S. Debtors are prepared to pursue opposition to the Stay Relief Motion and litigate to reduce the Asserted U.S. Claim – and believe that they would prevail in such litigation – litigation carries with it inherent uncertainties. There are no assurances that such litigation would achieve a better global result than the one set forth in the Stipulation. The Stipulation fairly balances the U.S. Debtors' likelihood of success in their opposition to the Asserted U.S. Claim and the Stay Relief Motion against their interest in avoiding the uncertainty of litigation. In addition, litigation of the Asserted U.S. Claim and Stay Relief Motion would result in the estates' expenditure of legal fees, which could exceed the amounts in dispute between the Parties.

20. Finally, the interests of the creditors militate in favor of approval of the Stipulation. The U.S. Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Asserted U.S. Claim and the Stay Relief Motion and the avoidance of legal expenses that would be incurred if the claim and motion were to be litigated.

21. In light of the foregoing, the U.S. Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

**Notice**

22. Notice of the Motion has been given via first class mail to (i) counsel to the Claimant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder

Group; (v) counsel to the Canadian Debtors; (vi) counsel to the Monitor; and (vii) the general service list established in these chapter 11 cases. The U.S. Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

23. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the U.S. Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: September 27, 2012
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*