**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------ X
                                                             :  Chapter 11
In re:                                                       :
                                                             :  Case No. 09-10138 (KG)
**NORTEL NETWORKS INC., et al.,**[1]                         :
                                                             :
        Debtors                                              :  Jointly Administered
                                                             :
------------------------------------------------------------ X

**FINAL FEE APPLICATION OF JEFFERIES & COMPANY, INC.,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND FOR REIMBURSEMENT OF EXPENSES AS INVESTMENT BANKER TO
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
FOR THE PERIOD FROM FEBRUARY 1, 2009 THROUGH AUGUST 31, 2012**

| | |
|---|---|
| Name of applicant: | Jefferies & Company, Inc. ("Jefferies") |
| Authorized to provide professional services to: | The Official Committee of Unsecured Creditors |
| Date of retention: | February 1, 2009 through August 31, 2012 |
| Period for which Final compensation and/or reimbursement is sought: | February 1, 2009 through August 31, 2012 |
| Amount of Final Fees Sought as Actual, Reasonable and Necessary: | $9,325,000.00 |
| Amount of Final Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $250,219.69 |
| Less: Amounts Paid to Date: | ($8,599,195.89) |
| Net Amount of Compensation Requested:[2] | **$976,023.80** |

---

[1] The Debtors in these Chapter 11 cases are: Nortel Networks Inc., Nortel Networks Capital Corporation, Alteon WebSystems, Inc., Alteon WebSystems International, Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc. and Nortel Networks Cable Solutions Inc.

[2] Includes $825,000 of outstanding Transaction Fee (gross Transaction Fee of $2.9 million, net of $2.075 million of crediting), $150,000 in monthly fees currently pending approval for August 2012, as well as $1,023.80 in outstanding expenses.

This is a: Final Application

**Monthly Fee Applications**

|  |  | Requested | | Received | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| 04/14/2009 | 02/01/09-02/28/09 | $250,000.00 | $7,605.57 | $250,000.00 | $7,605.57 |
| 05/20/2009 | 03/01/09-03/31/09 | 250,000.00 | 2,615.56 | 250,000.00 | 2,615.56 |
| 06/09/2009 | 04/01/09-04/30/09 | 250,000.00 | 12,579.89 | 250,000.00 | 12,579.89 |
| 08/24/2009 | 05/01/09-05/31/09 | 250,000.00 | 26,719.64 | 250,000.00 | 26,719.64 |
| 08/24/2009 | 06/01/09-06/30/09 | 200,000.00 | 30,053.65 | 200,000.00 | 30,053.65 |
| 09/09/2009 | 07/01/09-07/31/09 | 200,000.00 | 6,428.88 | 200,000.00 | 6,428.88 |
| 10/27/2009 | 08/01/09-08/31/09 | 200,000.00 | 13,269.60 | 200,000.00 | 13,269.60 |
| 11/04/2009 | 09/01/09-09/30/09 | 200,000.00 | 8,088.63 | 200,000.00 | 8,088.63 |
| 11/24/2009 | 10/01/09-10/31/09 | 200,000.00 | 4,391.58 | 200,000.00 | 4,391.58 |
| 01/19/2010 | 11/01/09-11/30/09 | 200,000.00 | 19,419.49 | 200,000.00 | 19,419.49 |
| 02/23/2010 | 12/01/09-12/31/09 | 200,000.00 | 8,764.14 | 200,000.00 | 8,764.14 |
| 02/23/2010 | 01/01/10-01/31/10 | 200,000.00 | 6,355.52 | 200,000.00 | 6,355.52 |
| 04/15/2010 | 02/01/10-02/28/10 | 200,000.00 | 1,136.42 | 200,000.00 | 1,136.42 |
| 05/25/2010 | 03/01/10-03/31/10 | 600,000.00 | 13,911.65 | 600,000.00 | 13,911.65 |
| 05/28/2010 | 04/01/10-04/30/10 | 200,000.00 | 6,610.33 | 200,000.00 | 6,610.33 |
| 07/06/2010 | 05/01/10-05/31/10 | 200,000.00 | 7,740.48 | 200,000.00 | 7,740.48 |
| 09/08/2010 | 06/01/10-06/30/10 | 200,000.00 | 2,494.74 | 200,000.00 | 2,494.74 |
| 09/08/2010 | 07/01/10-07/31/10 | 200,000.00 | 204.78 | 200,000.00 | 204.78 |
| 11/19/2010 | 08/01/10-08/31/10 | 200,000.00 | 2,720.07 | 200,000.00 | 2,720.07 |
| 11/19/2010 | 09/01/10-09/30/10 | 200,000.00 | 6,519.73 | 200,000.00 | 6,519.73 |
| 11/19/2010 | 10/01/10-10/31/10 | 200,000.00 | 6,564.87 | 200,000.00 | 6,564.87 |
| 03/01/2011 | 11/01/10-11/30/10 | 200,000.00 | 2,817.35 | 200,000.00 | 2,817.35 |
| 03/01/2011 | 12/01/10-12/31/10 | 200,000.00 | 8,676.78 | 200,000.00 | 8,676.78 |
| 03/01/2011 | 01/01/11-01/31/11 | 200,000.00 | 419.73 | 200,000.00 | 419.73 |
| 06/01/2011 | 02/01/11-02/28/11 | 200,000.00 | 2,182.44 | 200,000.00 | 2,182.44 |
| 06/01/2011 | 03/01/11-03/31/11 | 200,000.00 | 12,294.63 | 200,000.00 | 12,294.63 |

|  |  | Requested |  | Received |  |
| --- | --- | --- | --- | --- | --- |
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| 06/01/2011 | 04/01/11-04/30/11 | 200,000.00 | 6,586.35 | 200,000.00 | 6,586.35 |
| 08/30/2011 | 05/01/11-05/31/11 | 200,000.00 | 181.00 | 200,000.00 | 181.00 |
| 08/30/2011 | 06/01/11-06/30/11 | 200,000.00 | 386.90 | 200,000.00 | 386.90 |
| 08/30/2011 | 07/01/11-07/31/11 | 200,000.00 | 7,306.90 | 200,000.00 | 7,306.90 |
| 11/21/2011 | 08/01/11-08/31/11 | 200,000.00 | 7,209.76 | 200,000.00 | 7,209.76 |
| 11/21/2011 | 09/01/11-09/30/11 | 200,000.00 | 25.22 | 200,000.00 | 25.22 |
| 11/21/2011 | 10/01/11-10/31/11 | 200,000.00 | 466.66 | 200,000.00 | 466.66 |
| 2/29/2012 | 11/1/2011-11/30/11 | 200,000.00 | 2,370.06 | 200,000.00 | 2,370.06 |
| 02/29/2012 | 12/01/11-12/31/11 | 200,000.00 | 92.33 | 200,000.00 | 92.33 |
| 02/29/2012 | 01/01/12-01/31/12 | 50,000.00 | 939.46 | 50,000.00 | 939.46 |
| 05/30/2012 | 02/01/12-02/29/12 | 50,000.00 | 1,434.84 | 50,000.00 | 1,434.84 |
| 05/30/2012 | 03/01/12-03/31/12 | 50,000.00 | 660.14 | 50,000.00 | 660.14 |
| 05/30/2012 | 04/01/12-04/30/12 | 150,000.00 | 949.62 | 150,000.00 | 949.62 |
| 08/28/2012 | 05/01/12-05/31/12 | 150,000.00 | 0.00 | 150,000.00 | 0.00 |
| 08/28/2012 | 06/01/12-06/30/12 | 150,000.00 | 0.00 | 150,000.00 | 0.00 |
| 08/28/2012 | 07/01/12-07/31/12 | 150,000.00 | 0.00 | 150,000.00 | 0.00 |
| 09/24/2012 | 08/01/12-08/31/12 | 150,000.00 | 1,023.80 | 0.00 | 0.00 |
| 09/24/2012 | Transaction Fee (net) | 825,000.00 | -- | -- | -- |
| **Total:** | 2/1/2009-8/31/12 | **$9,325,000.00** | **$250,219.69** | **$8,350,000.00** | **$249,195.89** |

Jefferies submits this final application (the "Final Application") seeking allowance, on a final basis, of compensation and reimbursement of expenses as financial advisor for the Official Committee of Unsecured Creditors (the "Committee"), for the period commencing February 1, 2009 through and including August 31, 2012 (the "Final Period"), under Sections 327(a) and 328(a) of Title 11 of the United States Code (the "Bankruptcy Code"), seeking an order allowing, on a final basis, compensation in the amount of $9,325,000.00, for actual, reasonable

and necessary financial advisory services rendered by Jefferies to the Committee, $250,219.69 as reimbursement for its actual and necessary expenses incurred during the Final Period and payment in the amount of $976,023.80. To date, Jefferies has received $8,599,195.89. In support of this Application, Jefferies respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

*General Background*

2. On January 14, 2009, Nortel Networks Inc. and fourteen of its subsidiaries (collectively, the "Debtors") filed petitions in the United States Bankruptcy Court for the District of Delaware seeking relief under chapter 11 of the United States Bankruptcy Code.

3. On January 26, 2009, the United States Trustee appointed the Committee. On February 13, 2009, the Committee filed an application for an order authorizing it to retain Jefferies as its investment banker in connection with the above-captioned chapter 11 cases, effective as of February 1, 2009 [ECF No. 291].

4. On March 5, 2009, the Court entered that certain Order Authorizing the Official Committee of Unsecured Creditors to Retain Jefferies & Company, Inc. as Investment Banker Pursuant to 11 U.S.C. §§ 328(a) and 1103 and Bankruptcy Rule 2014(a) and Granting Waiver of Compliance with Del. Bankr. LR 2016-2(d) in Accordance with Del. Bankr. LR 2016-2(h) [ECF No. 425] (the "Original Retention Order"), which approved the retention of Jefferies as investment banker to the Committee, effective as of February 1, 2009, pursuant to the terms of

the Jefferies engagement as set forth in that certain letter agreement dated February 1, 2009 (the "Engagement Letter"). A copy of the Engagement Letter is attached hereto as Exhibit A.

5. On February 26, 2010, the Court entered that certain Order Approving an Expansion of Scope of Services and Amendment to Terms of Retention of Jefferies & Company, Inc. as Investment Banker to the Official Committee of Unsecured Creditors [ECF No. 2564] (the "Expansion Order"), which expanded Jefferies' role in these cases and added responsibilities in connection with Asset Sales (as defined below) not contemplated in the Original Retention Order.

6. On March 30, 2012, the Court entered that certain Order Approving an Amendment to Terms of Retention of Jefferies & Company, Inc. as Investment Banker to the Official Committee of Unsecured Creditors [ECF No. 7470] (the "Modification Order" and, together with the Original Retention Order and the Expansion Order, the "Jefferies Orders"), which modified the compensation terms of Jefferies' engagement to reflect the more limited role Jefferies was playing in these cases following the consummation of the Asset Sales.

*The Asset Sales*

7. Jefferies dedicated significant time and resources in an ongoing effort to maximize the recoveries for the Debtors' unsecured creditors. Because of the strength of Jefferies' industry relationships and its capital markets expertise, Jefferies has been instrumental in maximizing the proceeds from the sale transactions in these cases.

8. Specifically, as part of the extensive sale processes, the Nortel Debtors have sold their businesses and assets, including: (i) the sale of certain portions of their Layer 4-7 data portfolio to Radware Ltd. [ECF No. 539]; (ii) the sale of substantially all of their CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [ECF

No. 1205]; (iii) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. ("Avaya") [ECF No. 1514]; (iv) the sale of the assets of their Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [ECF No. 1760]; (v) the sale of substantially all the assets of their Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation ("Ciena") [ECF No. 2070]; (vi) the sale of substantially all of their GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [ECF No. 2065]; (vii) the sale of certain assets of their Carrier Voice Over IP and Application Solutions ("CVAS") business to GENBAND US LLC ("GENBAND") [ECF No. 2632]; (viii) the sale of certain assets of the Debtors' Multi-Service Switch business to Ericsson [ECF No. 4054]; (ix) the sale of the Nortel Debtors' intellectual property portfolio to a consortium comprised of Apple, EMC, Ericsson, Microsoft, Research In Motion and Sony Corporation [ECF No. 5935]; and (x) certain other sale transactions (collectively, the "Asset Sales"). The Asset Sales have resulted in sale proceeds of approximately $7.5 billion to the Nortel estates.

*Terms of Compensation*

9. By the Original Retention Order, Jefferies was retained to represent the Committee pursuant to the terms set forth in the Engagement Letter, which provided for monthly fees of $250,000 for the first four months and $200,000 thereafter, with 50% crediting of any monthly fees in excess of $2.6 million against a transaction fee in the amount of $2.9 million ("the Transaction Fee"). The Transaction Fee was deemed earned upon the substantial consummation of a chapter 11 plan of reorganization, liquidation, or sale of substantially all the assets of the Debtors pursuant to section 363 of the Bankruptcy Code. In accordance with the

Original Retention Order, Jefferies was excused from maintaining time records as set forth in Local Rule 2016 in connection with the services rendered pursuant to the Engagement Letter; instead, Jefferies was permitted to maintain summary time records in one hour increments in connection with the services to be rendered pursuant to the Engagement Letter.

10.     The Expansion Order amended the terms of Jefferies' retention, providing that monthly fees would equal $250,000 until February 1, 2010 and $200,000 thereafter. This resulted in the retroactive payment of $400,000 in fees in March 2010. Further, the crediting mechanism was altered so that only fees paid on and after August 1, 2010 would be credited 50% against the Transaction Fee.

11.     Pursuant to the Modification Order, Jefferies' retention was further amended to provide that monthly fees would equal $50,000 (without crediting against the Transaction Fee) for the period from January 2012 through March 2012, and $150,000 thereafter (with 50% crediting against the Transaction Fee).

*Termination of Engagement*

12.     Pursuant to the terms of the Engagement Letter, the Committee and Jefferies mutually agreed to terminate Jefferies' role as financial advisor to the Committee effective as of August 31, 2012.

13.     Notwithstanding the conclusion of its role as investment banker to the Committee, Jefferies has agreed that, upon the request of the Committee, Jefferies will provide additional services in connection with the Nortel cases, subject to (i) Jefferies not having accepted an engagement that would be in conflict with the requested services and Jefferies not having another conflict with the Debtors that would impede Jefferies' ability to provide such services, (ii) Jefferies and the Committee agreeing on a mutually acceptable fee (that is subsequently

approved by the Bankruptcy Court) to be paid to Jefferies, and (iii) Jefferies and the Committee entering into a written agreement governing such services (where applicable, with terms (including as to indemnification) substantially similar to the Engagement Letter; *provided*, *however*, that during these cases Jefferies will not undertake any role in connection with Nortel Networks Inc. or any of its affiliates without the prior written consent of the Committee.

## RELIEF REQUESTED

14. By this Final Application, Jefferies seeks entry of an order granting final approval of (i) compensation in the amount of $9,325,000.00 for professional services rendered during the Final Period as investment banker to the Committee in the Chapter 11 Cases, representing the sum of (a) $8,500,000.00 in monthly fees and (b) $825,000.00 of outstanding Transaction Fee (gross Transaction Fee of $2.9 million, net of $2.075 million of crediting), (ii) reimbursement of actual and necessary out-of-pocket disbursements and charges in the amount of $250,219.69 incurred in the execution of required professional services on behalf of the Committee during the Final Period, and (iii) payment in the amount of $976,023.80, which represents $825,000 of outstanding Transaction Fee (gross Transaction Fee of $2.9 million, net of $2.075 million of crediting), $150,000 in monthly fees currently pending approval for August 2012, as well as $1,023.80 in outstanding expenses.

15. Jefferies' invoices reflecting these amounts are attached as Exhibit B. A summary of the amounts payable to Jefferies for services rendered during the Final Period are set forth in Exhibit E. All services for which compensation is requested by Jefferies were performed for or on behalf of the Committee.

## BASIS FOR RELIEF

16. Jefferies submits that the financial analysis and advice that it rendered to the Committee in connection with the Chapter 11 Cases and the consummation of the Asset Sales

during the Final Period were necessary and beneficial to Nortel Networks, its creditors, and its estates. Throughout the Chapter 11 Cases, Jefferies professionals provided a high level of service to the Committee. Jefferies professionals devoted substantial time to researching, analyzing, negotiating and resolving numerous issues. Indeed, Jefferies' efforts on behalf of the Committee culminated in the consummation of the Asset Sales that will yield substantial recoveries to creditors.

17. During the Final Period, professionals of Jefferies devoted a total of 15,293.8 hours to representation of the Committee as described below.

18. The fees charged by Jefferies have been billed in accordance with the Jefferies Orders and the Engagement Letter. The fees charged by Jefferies for the services rendered by its professionals in the Chapter 11 Cases are comparable to the fees charged by Jefferies for professional services rendered in comparable non-bankruptcy related matters. Such fees are reasonable based on the customary compensation charged by similarly skilled practitioners in comparable non-bankruptcy cases in the competitive national financial advisory market.

## DESCRIPTION OF SERVICES RENDERED

19. During the period from February 1, 2009 through August 31, 2012 Jefferies performed the following significant services, among others, on behalf of the Committee:

- Became familiar with, to the extent Jefferies deemed appropriate, and analyzed the business, operations, assets, financial condition and prospects of the Debtors;

- Provided valuation analyses of the Debtors' various business segments;

- Advised the Committee on the current state of the restructuring and capital markets;

- Assisted and advised the Committee in examining and analyzing any potential or proposed strategy for restructuring, amending, redeeming or otherwise adjusting the Debtors'

outstanding indebtedness or overall capital structure, whether pursuant to a plan of reorganization, any sale under section 363 of chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), a liquidation, or otherwise (the "Restructuring"), including, where appropriate, assisted the Committee in developing its own strategy for accomplishing a Restructuring;

- Assisted and advised the Committee in evaluating and analyzing the proposed implementation of any Restructuring;

- Assisted and advised the Committee in evaluating potential financing transactions by the Debtors;

- Assisted and advised the Committee on tactics and strategies for negotiating with other stakeholders;

- Attended meetings of the Committee with respect to matters on which Jefferies was engaged to advise the Committee; and

- Rendered such other advisory services from time to time agreed upon by the Committee and Jefferies.

20. This Final Application highlights, as set forth below, the most significant services performed by Jefferies for the Committee during the Chapter 11 Cases.

(a) **Asset Sales:** Jefferies played an instrumental role in strategic value creation via asset sales. Throughout the process, Jefferies participated in numerous discussions with the Debtors' advisors regarding sale process updates and status. The Committee's counsel and members were also provided with updates pertaining to these discussions. Jefferies attended meeting with the Debtors' advisors and provided status updates to Committee members. Further, Jefferies' participation in the Asset Sales included the following:

  1. The sale of the CDMA/LTE wireless business to Ericsson, in which the stalking horse bid equaled $650 million and the final sale value was $1.13 billion. Specifically, Jefferies brought an alternative buyer to the process who actively participated in the auction, materially increasing the final transaction value.

2. The sale of Enterprise Solutions business to Avaya, in which the stalking horse bid equaled $450 million and the final sale value was $900 million. In this transaction, Jefferies leveraged its capital markets platform to provide analysis of a complex bid that included non-cash consideration, allowing for fair evaluation of all options and also brought alternative buyers into the auction, subsequently increasing the final transaction value.

3. The sale of Metro Ethernet Networks business to Ciena, in which the stalking horse bid equaled $520 million and the final sale value was $769 million. In this transaction, Jefferies' capital markets team constructed a convertible securities package that enabled the final winner to increase the value of its bid.

4. The sale of CVAS business to GENBAND, in which the stalking horse bid equaled $282 million and the final sale value was also $282 million. In this transaction, Jefferies participated in negotiations with GENBAND to increase value from its original indication of interest.

(b) **IP Sale:** In the sale of Nortel's intellectual property ("IP") portfolio to a consortium comprised of Apple, EMC, Ericsson, Microsoft, Research In Motion and Sony Corporation, Jefferies played an instrumental role in helping generate the highest sale proceeds of any Nortel asset sale, in turn driving significantly higher recoveries for unsecured creditors. The sale of Nortel's IP assets involved a competitive bidding process, following an initial stalking horse bid of $900 million. Nortel's IP asset sale included more than 6,000 patents and applications, spanning wireless, wireless 4G, data networking, optical, voice, internet, semiconductors and others. The winning bid of $4.5 billion was five times the initial stalking horse bid. Jefferies actively participated in ensuring a robust auction.

(c) **Allocation Dispute:** Jefferies provided substantial support in developing strategies and analyses regarding the Committee's position on allocation of proceeds generated by the Asset Sales. Jefferies also provided support in numerous negotiating sessions regarding allocation, including in the context of mediation.

21. The time records attached hereto as Exhibit D contain detailed descriptions of the tasks performed during the Final Period. The detail for the expenses incurred during the Final Period is attached hereto as Exhibit C.

## REIMBURSEMENT OF EXPENSES

22. Bankruptcy Code section 330(a)(1)(B) provides for reimbursement to approved professionals for all "actual, necessary expenses."

23. Consistent with the firm's policy with respect to its other clients, Jefferies is seeking reimbursement for other charges and disbursements incurred as out-of-pocket expenses in the rendition of necessary services to the Committee. These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, and other fees related to hearings.

24. A chart summarizing the expenses for the Final Period has been attached hereto as <u>Exhibit C</u>. Jefferies' policy requires all professionals to retain and submit for review receipts and/or invoices for all disbursements incurred through outside vendors. Jefferies maintains all receipts and/or invoices related to each client's disbursement account in a central storage facility, and such records can be produced upon request.

25. Jefferies has disbursed, and requests reimbursement for $250,219.69, which represents actual, necessary expenses incurred in the rendition of professional services in the Chapter 11 Cases during the Final Period.

**CERTIFICATE OF COMPLIANCE AND WAIVER**

26. Jefferies has indicated to the Committee that it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys. Jefferies' restructuring professionals, when formally retained in chapter 11 cases, and when required by local rules, do, and in the Chapter 11 Cases did, keep time records in half hour increments describing their daily activities and the identity of persons who performed such tasks. In addition, apart from the time recording practices described above, Jefferies' restructuring personnel do not maintain their time records on a "project category" basis. The Committee has been advised that to have Jefferies recreate the time entries for its restructuring personnel and require its non-restructuring personnel to record its time as prescribed by the local rules would

be, in each case, unduly burdensome and time consuming.  As such, Jefferies submits that the half hour time records that Jefferies' restructuring personnel maintained should be sufficient for any review of the time entries in connection with this Final Application.  Jefferies, therefore, requests a waiver of the requirements of Local Rule 2016-1: (a) to bill activities in one-tenths (.1) of an hour and provide or conform to a schedule of hourly rates and (b) to divide activity descriptions into general project categories of time.

## NOTICE

27.     This Application has been provided to the Notice Parties pursuant to the Interim Compensation Procedures Order.  Jefferies submits that no other or further notice need be provided.

Dated: October 3, 2012

                                      Jefferies & Company, Inc.

                                      By:  ___*/s/ Leon Szlezinger*___
                                           Leon Szlezinger
                                           Managing Director
                                           520 Madison Avenue, 7th Floor
                                           New York, NY  10022
                                           (212) 323-3918

                                           Financial Advisor to the Official
                                           Committee of Unsecured Creditors