IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | ) Case No. 09-10138 (KG) |
| Debtors. | ) Jointly Administrated |
| | ) Hearing Date: Commencing November 12, 2012 |

## OBJECTION FOR DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. 105, 363 AND 1108 AUTHROIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLAN AND THE EMPLOYMENT OF THE LTD EMPLOYEES (Docket Number 8067)

Wayne J. Schmidt, an active employee currently on Long Term Disability Leave of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this Objection for the motion of an order pursuant to the 11 U.S.C. 105, 363 and 1108 authorizing the debtors to terminate the debtors long-term disability plan, cease paying employer provided benefits including long-term disability income continuance and the employment of the LTD employees (the "Motion"). In support of this Motion, Wayne J. Schmidt respectfully represents as follows:

### BACKGROUND

1.  Wayne J. Schmidt (Mr. Schmidt) became an employee of the Debtor with a continuous service date of June 03, 1985 in Canada and was transferred to Raleigh, NC in the

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

United States of America on August 7, 1994 and became an employee of the US Corporation of the Debtor.

2. Mr. Schmidt performed various occupations as a practicing and managing engineer and other capacities for the Debtor during his employment including international and temporary assignments in Mexico based operations contributing to the development of the Debtors operations.

3. Mr. Schmidt suffered a debilitating stroke on November 29, 2007 and commenced a Long-Term Disability Leave on May 30, 2008. He is considered fully disabled and unable to return to any form of work due to physical, speech and cognitive impairments. He requires support from his parents and sibling to meet his living requirements.

4. Mr. Schmidt reached the age of 55 on August 08, 2012 and became eligible to apply for early retirement welfare benefits under the terms of the existing retirement plans provided by the Debtor. He is also eligible for the pension income benefit that is now under the control of the Pension Benefit Guarantee Corporation of America. The Debtors motion notes that many LTD Plan participants are eligible for early retirement consideration and have not moved to early retirement to reduce the cost to the Debtor for continuance of LTD Plan Benefits. Mr. Schmidt has not pursued this consideration, as it would require voluntary termination of his employment and loss of income continuance and other benefits available under the current LTD Plan to age 65. An early retirement election would also mean accepting a significant reduction of pension benefits, from a benefit program already underfunded by the Debtor, of an estimated 50% due to early retirement. Further, estimates of early retirement income benefits have been withheld by the Pension Benefit Guarantee Corporation of America on that basis that it requires a written notice of formal termination of LTD Plan benefits is before

2

they will provide an estimate of what the early retirement benefit would be. This lack of information creates a situation where the individual most impacted by the consideration is the least informed and thus unable to make an informed and appropriate planning decision.

5. Further, the Debtor has applied to the courts to terminate the retiree welfare plan benefits and we understand that this is in mediation between the Debtor and Retiree Committee. Mr. Schmidt is not currently privy to information on the progress of negotiations of the retiree committee or other information, as that committee does not represent him. Also, if a settlement is not reached the motion to terminate the retiree plans and benefits will be heard by the court prior to the hearing to determine the status of the motion to terminate the employment and benefits of the LTD employees. The timing of hearings and lack of information and clarity makes it very difficult to assess the risk or benefit of considering early retirement or continuing under his LTD status to age 65 and continuing to retirement at that time.

6. On August 02, 2011 the court issued an order directing the U.S. Trustee to appoint a committee of long-term disability participants solely for the purpose of serving as the authorized representative of the LTD Employees in connection with the negotiations regarding modification or termination of the LTD plans. The Debtors and the committee have attempted, including with the assistance of a mediator, to reach a settlement regarding the modification or termination of the LTD plans. These negotiations and mediation have not resulted in a negotiated agreement for the settlement of the modification or termination of the LTD Plans between the Debtor and the LTD Committee. During this process significant confidentiality agreements were imposed on the representatives of the LTD participants resulting in very little communication of key information that would assist Mr. Schmidt and other LTD Plan participants in understanding the issues affecting a potential settlement and any actuarial

estimates of the values associated with the LTD Plan benefits that he is receiving and expected to receive for the maximum period to age 65.

## RELIEF REQUESTED

1. That Mr. Schmidt continues to receive his full LTD plan benefits to age 65 or an equivalent financial settlement from the Debtor in the amount of $658,630.90

2. That Mr. Schmidt be eligible to gain access to the retiree welfare plan benefits at the time of his retirement or an appropriate recognition in any settlement achieved between the Debtor and the Official Committee for the Retirees or ruling established by the court relative to the retiree welfare benefits to which Mr. Schmidt will be eligible for under the current LTD and Retiree benefit programs.

3. That the LTD Committee and its legal and professional council be retained to complete the negotiations of a settlement and further independent legal council if it becomes necessary for Mr. Schmidt to file an independent claim against the Debtor with the costs for this representation paid by the Debtor.

## BASIS FOR RELIEF

1. Mr. Schmidt enrolled in the 2007 Flex Benefits Plan that included a Long-Term Disability (LTD) Plan Benefit that stated:

> "LTD Plan benefits will be paid to you for the period of time (up to the applicable maximum period) if you become Totally Disabled by an accidental bodily Injury or Illness while you are covered under the plan and if your remain Totally Disabled (as defined under the LTD Plan" (page 20 and 23 of the 2007 Disability Summary Plan Description (SPD) attached as Exhibit A)

4

Mr. Schmidt considered the annual offering of a flexible benefits package including a long-term disability benefit part of his overall compensation in a contractual agreement in exchange for his work for the Debtor. While he understood that the plans were subject to and did experience changes from year to year it was his clear expectation that a long-term disability benefit was intended to be a reliable form of protection to age 65 against and unforeseen accidental injury of illness that would prevent him from earning an income. It was clearly not his understanding nor ever explained to him that a benefit that he qualified to receive could be retracted after he no longer had the ability to consider alternate options to replace the benefit. Language in the Summary Plan Description (SPD) also indicates that the LTD benefit will be reduced by other income that may be received from other LTD benefit programs creating dissuasion from the purchase of alternate insured coverage. If the Debtor were allowed to terminate his employment and LTD benefits it would indicate that Mr. Schmidt had unknowingly relied on the information in the SPD and chose the Debtors LTD benefit offered to his detriment.

2.   The complex understanding of the legal ramifications of being considered an "at will" employee, combined with the Debtors stated ability to modify or terminate LTD Plan benefits and/or terminate an active employee on LTD Leave was not clearly explained in the documentation in a way that would allow an individual not familiar with the difference between an insured LTD benefit and a self funded LTD benefit or the intricacies of labor law and bankruptcy proceedings to understand the risk associated with their reliance on an offering of benefits from their employer. At this time due to Mr. Schmidt's existing disability he is not able to pursue an alternate form of LTD benefit or insurance. Further, the documentation received from the Debtor through the Prudential Insurance Company of America (Prudential) during the

process of Mr. Schmidt's application for LTD benefits and to support the continuance of this benefit are titled as "Group Disability Insurance" forms and continue to lead him to believe that he is protected by an insurance benefit to age 65.

See Exhibits B 1 – 6 attachments as follows:

- B-1- E-mail from David Moran, Disability Consultant, Prudential Insurance Company, March 18, 2008
- B-2 - Prudential Financial – Group Disability Insurance Authorization form, March 8, 2008
- B-3 - Prudential Financial – Group Disability Insurance Electronic Funds Transfer Authorization, March 8, 2008
- B-4 - Prudential Financial – Group Disability Insurance Reimbursement Agreement, March 8, 2008
- B-5 - Prudential Financial – Group Disability Insurance Attending Physician's Statement, November 9, 2010 and July 31, 2012
- B-6 - Prudential Financial – Group Disability Insurance Supplemental Claimant Statement, November 11, 2010 and July 23, 2012

        3.     As recently as October 12, 2012 the Prudential Insurance Company of America has represented to Mr. Schmidt in writing that his income continuance benefit will continue through August 7, 2022 (Age 65) provided that he remains totally disabled as defined in the Policy and continues to meet all other contractual requirements. It provides no indication that the benefit may be retracted in the future based on other factors. (Refer to Exhibit F

attached) This further supports Mr. Schmidt's understanding that he has an insured benefit that he can rely on until age 65.

4.  The Debtor advised Mr. Schmidt by way of the SPD that The Employee Retirement Income Security Act of 1974 (ERISA) imposed duties upon those who are responsible for the operation of his Employee benefit plan. The SPD for disability programs in 2007 stated on page 36 that:

> "The people who supervise the operation of your plans, called "fiduciaries", have the duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer or any other person, may fire you or otherwise discriminate against you in a way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA." (see page 35 and 36 of the 2007 Disability Summary Plan Description, copy attached at Exhibit C)

This statement implies two important considerations that Mr. Schmidt must be able to rely upon in this case.

First, his employment should not be considered terminable for the purposes of eliminating his ability to access a benefit program made available through his employment and enrollment in such benefit program. To do so must be considered discriminatory.

Secondly, the Debtor as employer assumed a fiduciary responsibility to operate the plans prudently and in the interests of Mr. Schmidt and other plan participants. While the company chose not to purchase third party Long-Term Disability Insurance and created a "Self-funded with contributions held in trust" funding method for the Long Term Disability Benefit Plan (see

7

page 29 of the 2007 Disability Summary Plan Description, copy attached as Exhibit D) it must be held responsible to create a funding method that can be relied upon to protect LTD plan benefit recipients, societies most vulnerable people, that will fund the income continuance benefit for their sustenance for the balance of their maximum LTD plan benefit period, in Mr. Schmidt's case to age 65. It must be seen as a fiduciary responsibility of the plan sponsor to establish this level of LTD plan benefit funding. If not, the Debtor could be seen to have selected a method of providing a benefit to employees using a self funded model that only enhanced the bottom line of the company financially while avoiding the fiduciary responsibility to protect the benefit in the event of the companies failure. To date the Debtor has not demonstrated that sufficient funding is in place to secure the income continuance and other benefits that Mr. Schmidt should be able to rely upon. As the Debtor has not met this core fiduciary responsibility, Mr. Schmidt must receive his LTD plan benefit to age 65 or an equivalent financial settlement.

5. Medical evidence provided to support his application for the LTD benefit and the continuance of this benefit have clearly indicated that he is not considered able to return to any form of work (See Exhibit B, Attending Physicians Statements). Accordingly it is reasonable to expect that the LTD plan sponsor, the Debtor, would have made appropriate financial allocations to support payment of this benefit until Mr. Schmidt reaches the age of 65.

6. Terminating the LTD plan benefits for individuals that have qualified for, are receiving and are relying on is similar to terminating an insurance benefit on a home or an automobile after an event has occurred, destroyed the property and has left the owner without the

asset or the ability to acquire suitable replacement for the coverage they were relying on. This cannot be seen as just and fair.

7. At minimum Mr. Schmidt should receive the same consideration as other unsecured creditors for a claim against the estate for the actuarial value of this LTD income continuance and other plan benefits to age 65. Mr. Schmidt's employment services were provided to the Debtor under and employment contract that included LTD and other benefits without appropriate financial security measures to protect those benefits resulting in an unsecured claim for this consideration.

Refer to Exhibits E 1-4 that provides:

- E-1 - A calculation of the value of Mr. Schmidt's benefits to age 65 that is considered as the basis for his claim of $658,630.90.
- E-2 - A copy of the September 24, 2012 disability benefit payment statement from Prudential Insurance Company of America documenting the current level of benefit and related deductions.
- E-3 - A copy of the Nortel United States Benefits Confirmation Statement that provides in indication of total cost for benefits.
- E-4 - A copy of the Prudential Insurance Company of America worksheets for cost associated with the conversion of core life insurance benefit to a personal plan.

8. The fact that Mr. Schmidt and other LTD Plan participants are permanently disabled as defined by the plan is not in dispute. We are certain that it is widely

9

accepted that these individuals now fall into the category of societies must vulnerable people. It is necessary that the court provide a level of protection for these individuals, at minimum, similar to other non-secured creditors. While full information is not available regarding the actuarial value of Mr. Schmidt's request for financial consideration or the combined total of the LTD Participants due to the strict confidentiality agreements noted earlier, it is likely that it represents a total of less than one percent of the total estate of the Debtor currently available to support claims against that estate. To allow other unsecured creditors and/or bond holders to achieve a financial gain at the expense of the vulnerable LTD employees can be considered an unjust enrichment of their settlement. We respectfully request that the Court deem it to be both just and proper to provide Mr. Schmidt and the other LTD Participants access to the Debtors estate in settlement of the proposed termination of their employment and loss of their income continuance and other benefits.

9. By virtue of timing and a lack of clear information Mr. Schmidt is not able to make a determination of the risk or benefit of selecting early an early retirement option. It is important that his access to these benefits or an appropriate share of a settlement of these benefits between the Debtor and the Official Committee for the Retirees include a provision for his share of the settlement.

10. Due to the nature of Mr. Schmidt's disability and the impact of his income reduction and potential further deterioration of his income and benefits, he is not able to hire independent legal council to represent his interests in this case. It is important that the court continue to support the ongoing funding of the legal council to the Official Committee of the LTD Employees and further independent legal council if it becomes necessary for Mr. Schmidt to file an independent claim against the Debtor.

## NOTICE

1.   Notice of this Objection has been provided to (a) counsel to the Debtors (Cleary); (b) the United States Trustee for the District of Delaware; and (c) counsel to the LTD 1102 Committee (Elliott Greenleaf) via first class mail. Other parties will receive notice through the Court's electronic filing system. Wayne J. Schmidt respectfully submits that, given the nature of the relief requested, no other notice of the relief requested herein need to be given.

**WHEREFORE**, Wayne J. Schmidt respectfully requests the entry of an Objection as stated in this document.

Dated: *October 16, 2012*

Wayne J. Schmidt
5346 South Mohave Sage Drive
Gold Canyon, AZ  85118
Telephone: 480-983-0665
Facsimile: 480-983-0665
Email: timgsteele@gmail.com

Prepared by:
Tim Steele
Power of Attorney for:
Wayne J. Schmidt
P.O. Box 374
Christopher Lake, SK  S0J 0N0
Canada
Telephone: (306) 982-4928
Facsimile: (306) 982-4928
Email: timgsteele@gmail.com

*Appearing Pro Se*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| Nortel Networks Inc., *et al.*,[2] | ) Case No. 09-10138 (KG) |
| Debtors. | ) Jointly Administrated |
| | ) **Re: Docket No.** |

### ORDER GRANTING MOTION FOR OBJECTION FOR DEBTORS MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C . 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLAN AND THE EMPLOYMENT OF THE LTD EMPLOYEES (DOCKET NUMBER 8067)

Upon consideration of the *Motion for Objection for Debtors Motion for Entry of an order pursuant to 11 U.S.C. 105, 363, and 1108 authorizing the Debtors to terminate the Debtors' Long-Term Disability Plan and the employment of the LTD employees (Docket Number 8067)* (the "Motion") and any responses thereto; and it appearing that sufficient notice of the Objection has been given; and in good cause having been shown, it is hereby

ORDERED that the relief requested in the Motion is granted as follows:

1. That the Debtor will continue to provide full LTD plan benefits to Mr. Schmidt to age 65 or an equivalent financial settlement from the Debtors in the amount $658,630.90.

---

[2] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

2. That Mr. Schmidt be eligible to gain access to the retiree welfare plan benefits at the time of his retirement or an appropriate recognition in any settlement achieved between the Debtor and the Official Committee for the Retirees or ruling established by the court relative to the retiree welfare benefits to which Mr. Schmidt will be eligible for under the current LTD and Retiree benefit programs.

3. That the LTD Committee and its legal and professional council be retained to complete the negotiations of a settlement of LTD benefits with the Debtor and that further independent legal council be provided to Mr. Schmidt if it becomes necessary for him to file an independent claim against the Debtor with the costs for this representation paid by the Debtor.

Dated: _____, 2012
Wilmington, Delaware

                                        HONORABLE KEVIN GROSS
                                        CHIEF UNITED STATES BANKRUPTCY JUDGE