IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Nortel Networks Inc., *et al.*,[1] | ) Case No. 09-10138 (KG) |
| | ) |
| Debtors. | ) Jointly Administrated |
| | ) |
| | ) Objection Deadline: Oct. 22, 2012 at 10 a.m. |
| | ) Hearing Date:      Feb. 12, 2013 at 10 a.m. |
| | ) RE:                D.I. # 8067 |

## OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

**Peter Lawrence** (the LTD Employee) of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this Objection to Debtors' Motion for entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees. In support of this Objection, Peter Lawrence respectfully represents as follows:

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## BACKGROUND

1. I started my employment with the Debtor, Nortel Networks, on May 24, 1993 and quickly aspired to an executive level within the organization as Director of Software Quality Engineering where I managed and coordinated the efforts of many engineers in a Product Development Organization driving the need for total customer satisfaction. My loyalty, dedication, and passion to perform my job function were evidenced by my promotions and by the improvement in overall quality of our end products.

2. Consistent with "good faith bargaining" in negotiating and ultimately accepting their employment offer, Nortel provided me with a complete compensation package which included a long-term disability benefit plan. I considered this to be a key component of a benefits package that would ensure a blanket of protection for me and my family in the unexpected event that I became disabled.

3. According to the terms of the LTD Plan, I would receive monetary benefits if I were ever determined to be totally disabled.

4. In October 2002, I was medically diagnosed with Alzheimer's disease. Pursuant to my health condition, I began the Short Term Disability period and was subsequently determined to be totally disabled according to the terms of the LTD Plan. My Long-Term Disability claim was validated and approved by Prudential Insurance Company (Exhibit "B") whereby Prudential recognized the effective date of my LTD claim to be April 11, 2003.

5. I not only suffer from progressive Alzheimer's disease, but my health condition is further complicated by diabetes, depression, high blood pressure, and heart arrhythmia. I was diagnosed with prostate cancer in 2009 and underwent radical prostatectomy surgery. I have undergone additional surgical procedures as a result of complications from that cancer surgery.

## RELIEF REQUESTED

6.   I am seeking an order from this Court sustaining my objection and rejecting the Debtor's motion to terminate the Long Term Disability Plan and LTD Employees.

7.   I respectfully request a judgment order for either: (a) No interruption of LTD benefits as they are currently administered until I reach age 65; or (b) Monetary compensation according to my proof of claim listed in Exhibit "A". My Total Claim is **$863,395.16.** If denied, the impact to me would be both financially and medically devastating.

## BASIS FOR RELIEF

8.   I had nearly 20 years of career experience as a Software Engineering Professional prior to my acceptance of employment with Nortel Networks. It's accurate to say that I clearly knew what I was searching for in all matters of expectation having had a fairly broad history with other employers. My employment expectations were high, and acceptance of employment was based upon several factors: (a) skills match and desirability of the position; (b) compensation in terms of salary and bonuses; (c) Benefits that would protect me and my family such as medical coverage, life insurance, accidental death insurance, and most importantly, Long-Term Disability insurance in the unforeseen event that I would become disabled and have to rely on this "safety-net" means of support.

9.   It was clear from Nortel's communication both prior to and during my employment that I was being offered LTD insurance that would provide medical coverage and income protection to me until age 65 should I ever become totally disabled. I routinely enrolled in annual "Flex-Benefit" offerings (most recent confirmations attached in Exhibit "I") and always verified my understanding with Human Resources who made presentations and

distributed relevant materials/brochures to assist their employees with their benefit selections. I paid additional premiums for extra LTD coverage, as it was my option, in order to raise my LTD insurance above the core coverage level. I truly felt through Nortel's assertions and benefits documentation that I had sufficient protection for myself and my family. I never felt the need to pursue alternative avenues for insurance due to any weaknesses or perceived "unreliability" in the plan.

10. Prudential performed their function with total precision and absolute scrutiny through the LTD claim approval process as evidenced by their letter dated December 15, 2003 (Exhibit "C") in accordance with the terms of the contract. This LTD benefit was represented as "Group Insurance" (Policy #039900) issued by Prudential Insurance Company as highlighted in Exhibit "G" where I agreed to reimburse Prudential for any SSDI award. All written communication from Prudential such as claims forms, correspondence in connection with the claim, paystubs, and W2 wage statements (Exhibit "H") all contained banners of "Prudential Insurance Company".

11. On April 22, 2003 immediately after my approval for LTD benefits by Prudential, they (Prudential Insurance Company) urged me to enlist the services of "Disability Benefits Corporation" (Exhibit "J") to assist me in obtaining Social Security Benefits. They made their service available to me at no cost as Prudential paid the entire fee. The letter states:

> "Though your Long Term Disability benefit **from Prudential** would be reduced for any Social Security Disability benefits you might receive..."

This statement clearly led me to believe that Prudential Insurance Company was the contract bearer of my disability insurance and there was no reason to believe that I would be in any jeopardy whatsoever concerning my salary continuation benefit.

12. I had face to face discussions with Nortel's Human Resources Director concerning my LTD benefits coverage after my medical diagnosis and just prior to my disability leave. It was clearly conveyed to me during those discussions that my Long Term Disability benefits were "Insured and Administered by Prudential Insurance Company and, providing my claim is accepted after the filing process, then I will continue to receive my adjusted salary (according to my benefits enrollment election) as long as I remain disabled up until age 65."

13. LTD Summary Plan Descriptions for years 1999 through 2003, attached as Exhibit "K", contain very consistent language and clearly conveyed the understanding that I would receive LTD benefits until age 65 should I ever become "permanently" disabled. Apparently, ambiguities and errors of omission exist in these documents and it is unjust for me to have my life so detrimentally impacted because of lack in clarity of communication by the Debtors.

14. In January 2010, I applied for a home loan, wherein I would purchase my current homestead located in Delray Beach, Florida. As shown in Exhibit "D", "Loan Commitment and Condition Log", the lender would not close until documentation was provided as evidence that I would be receiving my long-term disability payments, under the Nortel LTD Plan, for at least the next three (3) years. I submitted this condition log to the LTD Plan administrator, The Prudential Insurance Company of America, who operated as agent for the Debtors.

15. On February 12, 2010 the agent for the Debtors, The Prudential Insurance Company of America, issued correspondence, attached as Exhibit "E", to the lender stating:

> Please be advised that the above noted claimant is receiving Long Term Disability under the Nortel Networks plan in the amount of $4563.04 net per month. Mr. Lawrence **will continue to receive LTD benefits provided he remains totally disabled under the terms of the plan.**

---

16. While the Debtors seek termination of the existing LTD Plan, based upon the representations of the Debtors agent, my benefits shall be indefinite.

17. As a result of the correspondence attached as Exhibit "E", not only are my LTD benefits not terminable at will, but the Debtors' agent has bound the Debtors to this LTD payment as long as I remain totally disabled pursuant to the terms of the plan.

18. Most recently, I applied for refinancing of my home mortgage through a different lender in an attempt to lower my monthly mortgage obligation. The lender required "income verification" whereby Prudential Insurance Company furnished a letter stating more specifically that I will continue to receive my LTD benefits until age 65; letter attached as Exhibit "F".

19. If Nortel succeeds in their motion to terminate the LTD benefits that I receive, I will suffer irreparable harm, as I am unemployable based upon my health conditions. As a result, I will undoubtedly go to into foreclosure, lose my homestead, and have very little means to support myself. This is a matter of survival for me as I relied upon Nortel's communication of a LTD Plan and contract to protect me. It is not an option for me as a disabled person to go purchase "other" LTD insurance.

20. I hope the court will see the "Detrimental Reliance" that Nortel has placed me and so many other LTD individuals in as a result of ambiguous and deceitful communication contained in crucial plan documents that should have been more carefully worded to allow people to adequately protect themselves. I use the word "deceitful" to illustrate the character of Nortel using Exhibit "L". In Nortel's Motion to Terminate LTD Plans and Employees, they cite the fact that they fully disclosed to their employees that the LTD plan was "Self Insured" by Nortel. This is true for plan year 2010 as it states very clearly in the enrollment literature:

> "LTD benefits begin if you're still disabled after 26 weeks of an STD
> absence. LTD benefits are self-insured by Nortel; i.e., the benefits are paid

from the general assets of Nortel. The LTD plan is administered by Prudential, but not insured by them..." In the same document, a paragraph later, it continues to read:

"Consider This: Disability Benefits
• What expenses would you have to pay if you couldn't work? Would core coverage be sufficient to meet your expenses, or would you need additional coverage?
• What other sources of income would you have if you became disabled? For example, do you have a working spouse whose income would help meet your expenses?
• Do you have disability coverage available from any other source? If so, remember that your Nortel disability benefits will be reduced by any benefits you receive from certain other sources..."

The hypocrisy in this wording is appalling. Now Nortel, after filing a bankruptcy with the court in January 2009, notifies their employees in very clear wording that their LTD benefits are **insured** by Nortel Networks, and just **administered** by Prudential. Then they encourage their employees to carefully consider the importance of Disability Benefits, even though Nortel knows the benefit is essentially insolvent, but reminds their employees that if they acquire REAL insurance from another source, that Nortel disability benefits will be reduced by any other benefits received from that source, essentially making Nortel the benefactor of that insurance. I ask, who was Nortel protecting with this benefit? The all too obvious conclusion here is that Nortel is offering nothing in terms of LTD income protection, but at least it is discernible in this particular communication. This is the ultimate corporate deception, and the court should dismiss any argument that Nortel was open and honest in their communication regarding LTD coverage to their employees in the prior years.

21.     Nortel is well within their means to meet the contractual obligations with all of their LTD employees who contributed in some way to generating the Debtors assets. Fulfilling the contractual commitment to the Long Term Disabled individuals is in no way detrimental to

the ability of Nortel to "recover" as they liquidate a multi-billion dollar estate in a travesty of "Unjust Enrichment". This is life and death for so many critically ill people versus the portfolio health of investors. It is unconscionable to observe millions of dollars being spent in legal fees fighting a helpless group of people rather than providing them with their rightful award.

22. My Long Term-Disability, Health, and Retiree Benefits became a financial obligation of the Debtor as soon as my Long-Term Disability claim was approved by Prudential Insurance Company. Fiduciary obligations were not conducted in accordance with ERISA Laws when LTD plan funds were not accounted for and misappropriated rendering the plan insolvent. The Debtors have provided Financial Statements and Forms 5500 requested through fact discovery, but nowhere in any of the statements from 2003 to 2009 is there any accounting for the funding of the "LTD Group Plan". In 2010 however, there is specific mention to the plan's deficiency of net assets over benefit obligations related primarily to the long-term disability plan. I refer your honor to Exhibit "M" and ask why there is no prior mention or accounting for LTD plan funds in these financial statements leading up to 2010? I also refer your honor to the "highlighted excerpts" of Exhibit "N" and I ask the court, what did Nortel do back in April 2003 to protect my financial well-being when they learned that my illness was "long term disabling under the terms of their contract"?

23. My final argument to the court references Exhibit "O" wherein Nortel issued internal communication on October 25, 2010 to all US employees concerning "Annual Enrollment of Benefits". (Please note for the record this memo was issued shortly after Nortel's initial attempt in July 2010 to terminate the LTD and Retiree benefits). In a general announcement of the plan program for 2011, the memorandum identifies the key components of the Benefit Plan including:

> **"New fully insured long-term disability (LTD) plan**: Employees who are actively at work on January 1, 2011, and who work more than 20 hours a

> week may be eligible to participate in a new **fully** insured LTD plan. "Fully insured" means that employees who meet the eligibility requirements and go on LTD will see these benefits continue after Nortel ceases operation..."

This is a complete injustice to all present-day long-term disabled employees who trusted their employer to properly execute fiduciary obligations in all manner of accountability to them. I picture the individual who authored this memo speaking on behalf of Nortel to an audience and continuing the dialog: ..."Compared to the former insolvent LTD Plan that we offered to all those unfortunate employees who were forced onto LTD and have no protection now that we are a bankrupt company".

24. Judge, I beseech you to see the absolute embodiment of "Unjust Enrichment" and "Detrimental Reliance" that I and an entire LTD group have been imperiled by in this case. This is a moral issue just as much a legal one. It will be a sad day indeed in this great country of ours if these corporate thieves are allowed to destroy a helpless group of people who gave their best to Nortel while we were once healthy, vibrant, and productive. Now Nortel wishes to lay the LTD employees to waste while a few transition executives stand in line to collect bonuses and protect bond holders and investors with the remains of a multi-billion dollar estate; while having no contemplation for the needs of a desperate long term disabled group of individuals. Judge, you have already done so much for the LTD group by granting us committee representation and I am grateful for that. I am also thankful that I have the sovereign privilege to petition the court on matters reserved for our wisest appointed representatives. Your Honor, you have the power and the wisdom, and I pray that you exercise great jurisprudence in this case.

## NOTICE

1. Notice of this Objection has been provided to (a) counsel to the Debtors (Cleary); (b) the United States Trustee for the District of Delaware; and (c) counsel to the LTD 1102 Committee (Elliott Greenleaf) via first class mail. Other parties will receive notice through the Court's electronic filing system. Peter Lawrence respectfully submits that, given the nature of the relief requested, no other notice of the relief requested herein need to be given.

**WHEREFORE**, Peter Lawrence respectfully requests the entry of an Order, in the form attached:

1. Reject the Debtors motion to terminate the LTD Plans and LTD Employees [DI#8067].

2. Compel the Debtors to compensate Peter Lawrence in full for LTD benefits projected to age 65; Total Claim being **$863,395.16**.

3. Order that there be no interruption in disbursement of LTD benefits (or compensation for same) to Peter Lawrence.

Dated: October 15, 2012

Peter Lawrence
16295 Via Venetia W
Delray Beach, FL 33484
Telephone: 561-865-5382
Facsimile: N/A
Email: peterlaw55@comcast.net

*Appearing Pro Se*
**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| Nortel Networks Inc., *et al.*,[1] | ) Case No. 09-10138 (KG) |
|  | ) |
| Debtors. | ) Jointly Administrated |
|  | ) |
|  | ) **Re: Docket No. 8067** |

## ORDER GRANTING OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

Upon consideration of the Objection to entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees (the "Objection") and any responses thereto; and it appearing that sufficient notice of the Objection has been given; and in good cause having been shown, it is hereby

ORDERED that the Objection is granted.

Dated: _____, 2013
Wilmington, Delaware

HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.