# Exhibit A

If the Claims Administrator finds that the actual amount of Social Security and other income is different than the amount used to determine your STD benefits, these rules apply:

1. If STD benefits have been underpaid, this plan will make a lump sum payment to bring the total payments to the amount that should have been paid.

2. If STD benefits have been overpaid, this plan will require a lump sum reimbursement payment to the plan or reduce or eliminate future payments.

## Exclusions

STD benefits will not be paid for any disability resulting from:

- intentionally self-inflicted injuries, including:
  - a disability or Injury that results from the use of hallucinogenic or narcotic drugs except when legally prescribed by a Physician and taken in accordance with the Physician's direction
- your participation in the commission of an assault or felony
- war or any act of war (declared or undeclared), insurrection, rebellion or participation in a riot or civil commotion

*STD benefits will not be paid for any disability resulting from:*

- *intentionally self-inflicted injuries*
- *your participation in the commission of an assault or felony*
- *war or any act of war*

# LONG-TERM DISABILITY (LTD) BENEFITS

LTD benefits will be paid to you for a specified period of time if you become Totally Disabled by an accidental bodily Injury or Illness while you are covered under the plan.

## LTD Benefit Amount

### Core LTD Benefits

Core LTD benefits pay a monthly benefit of 60% of your gross pre-disability FLEX Earnings after you have been Totally Disabled for a period of 26 consecutive weeks (STD period). Core LTD benefits are reduced by federal and state income tax, as well as any other income you may receive (as described on

*You are considered Totally Disabled for LTD if a Physician certifies that you cannot work because of an Illness or accidental Injury, and the clinical evidence supports this opinion.*

pages 17-19), with a minimum monthly benefit of $100 or 10% of your gross disability payment (whichever is greater).

## Optional LTD Benefits

Optional LTD increases your Core LTD coverage so that the plan pays a monthly benefit of 70% of your gross pre-disability FLEX Earnings after you have been Totally Disabled for a period of 26 consecutive weeks (STD period). Optional LTD benefits are reduced by federal and state income tax, as well as any other income you may receive (as described on pages 17-19), with a minimum monthly benefit of $100 or 10% of your gross disability payment (whichever is greater).

# Definition of Disability

You are considered Totally Disabled for LTD if a Physician certifies that you cannot work because of an Illness or accidental Injury, and the clinical evidence supports this opinion. You must provide written proof of your Total Disability to the Claims Administrator, who will make the final determination of disability. You must be under the regular care of the Physician who has treated you personally for the Illness or Injury causing the Total Disability for at least 31 days. During the first 18 months of a covered Total Disability (from the first date of STD), you will be considered unable to work if you cannot perform the work you were normally performing at the time of your disability with or without reasonable accommodations for the limitations resulting from your Illness or Injury.

*During the first 18 months of a covered Total Disability (from the first date of STD) you will be considered unable to work if you cannot perform the work you were normally performing at the time of your disability.*

*After the first 18-month period of covered Total Disability...you will be considered unable to work if you are unable to perform any reasonable occupation. A "reasonable occupation" is any job you are or could become qualified to do with your education, training or experience.*

After the first 18 months of covered Total Disability (from the first date of STD), you will be considered unable to work if you are unable to perform any reasonable occupation. A "reasonable occupation" is any job you are or could become qualified to do with your education, training or experience.

A Physician means a licensed practitioner of the healing arts acting within the scope of his or her practice. When a Total Disability is caused by any condition other than a medically determinable physical impairment, a Physician means a legally qualified Physician who specializes in the practice of psychiatric medicine or has, by reason of training or experience, a specialized competency in the field of psychiatric medicine sufficient to give the necessary evaluation and treatment of mental Illness.

The Claims Administrator will be responsible for determining if your disability meets the definition of disability, and has the right to require that you be examined by a Physician of his or her choosing.

# When Benefits Begin and End

LTD benefits begin as soon as you have been Totally Disabled for the 26-consecutive week waiting period (STD), provided that you give written proof of your Total Disability satisfactory to the Claims Administrator. Paperwork to apply for LTD benefits must be submitted to the Claims Administrator within 30 days from receipt of such paperwork *and* before the end of the 26-consecutive week waiting period (STD). (Your monthly LTD benefits and any retroactive payments could be delayed based upon the date you provide written proof of your Total Disability.) If you do not provide your paperwork within 30 days after the end of your STD, you will not be entitled to LTD benefits.

Benefits end when your period of Total Disability ends, which happens when the first of the following occurs:

1. You stop being Totally Disabled or die.

2. You are able to return to work at any reasonable occupation (other than an approved rehabilitation program) after the first 12 months of LTD

3. You are no longer under the care of a Physician.

4. You fail to furnish the latest required proof of the continuance of your Total Disability or refuse to be examined by a Physician designated by the plan.

5. You reach the end of the maximum benefit period for any one period of Total Disability as shown in the chart on the following page.

*The Claims Administrator will be responsible for determining if your disability meets the definition of disability, and has the right to require that you be examined by a Physician of his or her choosing.*

*LTD benefits begin as soon as you have been Totally Disabled for the 26-consecutive week waiting period...*

## Maximum Benefit Period

The maximum length of time benefits will be paid depends on your age when your Total Disability begins, according to the following schedule:

| *If your disability begins at age:* | *LTD benefits will continue no longer than:* |
|---|---|
| under 60 | to age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 to 74 | 12 months |
| 75 or over | 6 months |

## Behavioral Illness Limitation

*For total disabilities due to mental disorders, nervous disorders or chemical dependency, the LTD maximum benefit period is limited to 24 months if treated in an outpatient setting.*

For Total Disability due to mental disorders, nervous disorders or chemical dependency, the LTD maximum benefit period is limited to 24 months if treated in an outpatient setting. However, if you are confined in a Hospital within 90 days following the date ending that 24-month period, benefits will continue during your Hospital confinement.

# If You are Disabled Again

Once a period of Total Disability has ended (i.e., you have returned to Active Work), any new or unrelated subsequent period of Total Disability will be treated as a new and separate period of disability. However, if you are disabled again after you return to Active Work, your new period of Total Disability will be considered a continuation of your first disability if:

- it has the same or related cause as the first disability and

- you were Actively at Work less than three consecutive months since your first disability.

If it is considered a continuation of your initial disability, LTD benefits are immediately payable. If it is a new disability, LTD benefits are payable only after a new 26-week waiting period.

# Waiver of Premium

While you are receiving LTD benefits, you will not be required to pay premiums for any Optional STD, Optional LTD or Optional Employee Life Insurance coverage you have selected.

# Reduction of Benefits Due to Other Income

LTD benefits will be reduced by other sources of income payable to you or your Dependents because of your disability or retirement.

For the purposes of this plan, "other income" includes:

- income received from any employer or from any occupation for compensation or profit, including self-employment

- Workers' Compensation benefits (excluding payments of legal fees incurred in the Claim process)

- disability, retirement or unemployment benefits provided under any group insurance or pension plan or any other arrangement of coverage for individuals in a group (whether on an insured or uninsured basis)

- any other disability, retirement or unemployment benefits required or provided for under any law of any government — for example:

  - unemployment compensation benefits

  - no-fault wage replacement benefits

  - statutory disability benefits

  - Social Security benefits (family offset), the Canada Pension Plan and the Quebec Pension Plan, including Dependents' benefits, but not counting any increase in benefits after STD benefit payments have started under this plan

*While you are receiving LTD benefits, you will not be required to pay premiums for any Optional STD, Optional LTD or Optional Employee Life Insurance coverage you have selected.*

For example, if your monthly LTD benefit is $800, and you are also receiving $400 a month from Workers' Compensation, then your LTD benefits will be reduced to $400 a month so that your total income equals $800 a month.

For the purposes of this plan, other income will be treated as follows:

1. Any periodic payments will be allocated to monthly periods.

2. Any single lump sum payment, including any periodic payments which you or your Dependents have elected to receive in a single lump sum will be allocated to 60 monthly periods. However, any single lump sum payment under Workers' Compensation laws will be fully offset in its entirety against any benefits otherwise payable by this plan.

3. Any periodic or single lump sum payments received as a retroactive award may be allocated retroactively.

This plan takes into account other income for which you are eligible, but may have not yet received. It is your responsibility to complete any required applications, such as for Social Security benefits, as well as undertake any necessary processes for appeal if initially denied.

In the case of Social Security, you are expected to pursue the following steps:

1. Apply for Social Security benefits.

2. Appeal at the reconsideration level, if benefits are denied.

3. Appeal at the Administrative Law Judge level, if benefits are again denied.

Until you give the plan written proof that your application for other disability benefits has been finally denied, the plan will estimate your monthly Social Security and other income and use that amount to determine your benefit under this plan.

If you sign a Reimbursement Agreement, your Social Security or other income will not be estimated while your applications and appeals are pending. To obtain a Reimbursement Agreement, contact the Claims Administrator as defined on page 8 of the Administration Information section.

If the Claims Administrator finds that the actual amount of Social Security and other income benefits is different than the amount used to determine your LTD benefits, these rules apply:

1. If LTD benefits have been underpaid, this plan will make a lump sum payment to bring the total payments to the amount that should have been paid.

2. If LTD benefits have been overpaid, this plan will either require a lump sum reimbursement payment to the plan or reduce or eliminate future payments. In this case, plan minimums will not apply.

# Social Security Disability Benefits and Medicare

Disabled employees who have been receiving Social Security Disability Income (SSDI) for at least two years are eligible for Medicare. Once you are enrolled in Medicare, Medicare will pay Claims first and the Company's plan will pay second. The Company will continue to pay for medical benefits it previously covered that are not covered by Medicare (like prescription drugs). To be protected as completely as possible, you need to accept Medicare coverage when you become eligible. (You may be contacted by a representative acting on behalf of the Company who will assist you in the Medicare enrollment process.) Coverage under Medicare Part A is free while coverage under Medicare Part B (Outpatient and Physician services) requires a monthly premium, which will be deducted from your monthly SSDI check. At the time you become entitled to Medicare Part B, the monthly LTD benefit you receive from the Company will be increased by the amount of the Medicare Part B premium (retroactive to January 1, 1997). The Medicare Part B premium is subject to increase each year.

*It is your responsibility to complete any required applications, such as for Social Security benefits...*

# Mandatory Vocational Rehabilitation Program

Effective for disabilities commencing on or after January 1, 1999, if you are deemed able to be rehabilitated while you are receiving LTD benefits, you will be required to take part in an "approved rehabilitation program" to help you get back to work. (Refusal to participate in an approved rehabilitation pro-

gram could result in termination of your LTD benefits.) An approved rehabilitation program is:

- a program of vocational rehabilitation or
- a period of part-time work with the Company for purposes of rehabilitation, recommended by your Physician, and approved by the Claims Administrator and the Plan Administrator. This period will begin when your Physician, the Claims Administrator and the Plan Administrator approve such program in writing and will end when your Physician, the Claims Administrator and the Plan Administrator withdraw their approval.

*...you may continue to receive LTD benefits for a limited time while on an approved rehabilitation program.*

Each rehabilitation program is an individually tailored, goal-oriented program designed to return you to gainful employment.

You may continue to receive LTD benefits for a limited time while on an approved rehabilitation program. During this period, your regular monthly LTD benefit will be reduced by 50% of your earnings from your rehabilitative job so that the sum of your LTD benefits and any other income you earn does not exceed 85% of your gross pre-disability FLEX Earnings. Here is an example:

*...your regular monthly LTD benefit will be reduced by 50% of your earnings from your rehabilitative job.*

| Monthly LTD Benefit From The Plan | Rehabilitative Earnings | 50% Reduction | Net LTD Benefit From The Plan |
|---|---|---|---|
| $1,600 | $300 | $150 | $1,750 |

If this plan determines that a program that should make you self-supporting is within your ability, the plan may pay certain expenses of a vocational rehabilitation program at the discretion of the Plan Administrator. If this benefit applies to you, you will be notified of the type and duration of expenses covered, and the conditions for payment, if you agree to undertake the program. The maximum payment is $10,000.

# Cost of Living Adjustment (COLA)

Prior provisions of the LTD plan (which began July 1, 1994) provide a cost of living adjustment for LTD benefits for disabilities beginning before January 1, 2000. This adjustment applies to your Core and Optional LTD benefits each year after the first year of Long-Term Disability. This adjustment increases your total LTD benefit by 60% of the annual Consumer Price Index (CPI) increase, up to 6% per year as determined by the Company. For example, if

Plan Year 2000
Pub. 6/2000

you are receiving a $2,000 LTD benefit and the CPI increases by 4%, your benefit will increase 2.4% to $2,048. This benefit becomes payable in the first calendar month following the one year anniversary date that your LTD benefit began and is increased each year thereafter (when a CPI increase applies) beginning the same calendar month of your first COLA increase.

Effective for disabilities beginning on or after January 1, 2000, the LTD plan will no longer provide a cost of living adjustment for LTD benefits.

# Exclusions

LTD benefits will not be paid for any disability that is in any way caused by the following:

- intentionally self-inflicted Injury, including:
  - a disability or Injury that results from the use of hallucinogenic or narcotic drugs except when legally prescribed by a Physician and taken in accordance with the Physician's direction
- your participation in the commission of an assault or felony
- war or any act of war (declared or undeclared), insurrection, rebellion or participation in a riot or civil commotion
- a Preexisting Condition, as described on the following page

## Preexisting Conditions Exclusion

If you are a newly hired Employee, you will not be covered for 12 months after coverage is effective for any disability caused or in any way related to a condition existing within 90 days of your coverage Effective Date.

A "Preexisting Condition" is an Illness, Injury or condition for which you:

- received treatment or services from a Physician,
- took drugs or medicines prescribed by a Physician,
- incur expenses or
- receive a diagnosis.

*LTD benefits will not be paid for any disability which is in any way caused by the following:*

- *intentionally self-inflicted injuries...*
- *your participation in the commission of an assault or felony*
- *war or any act of war*
- *a Preexisting Condition...*

# OCCUPATIONAL DISABILITY BENEFITS

*Disability benefits may also be payable to you for a Total Disability which is an Occupational Disability…*

Disability benefits may also be payable to you for a Total Disability that is an Occupational Disability as defined below. This benefit is provided on the same terms as the benefit for a non-occupational (non-employment related) disability. The amount of disability benefits payable, however, is equal to the excess of the non-occupational disability benefit over the benefits payable under any Workers' Compensation law, occupational disease law or similar legislation.

Occupational Disabilities are those caused by:

- an Injury arising out of, or in the course of, any employment for wage or profit or
- a disease covered with respect to such employment by any Workers' Compensation law, occupational disease law or similar legislation.

# WHEN COVERAGE ENDS

LTD and STD coverage will end on the earliest of the following dates:

- the date your employment ends or you stop qualifying for coverage or
- the date the part of the plan providing the coverage ends or
- the date you fail to pay the required premium or contribution or
- the date you begin an unpaid leave of absence.

For coverage purposes, your employment will end when you are no longer an active full-time or part-time Employee. However, the Company may consider you as still an active Employee during certain types of approved leaves of absence. For example, if you are on an unpaid medical leave of absence because of Injury or Illness, your coverage may be continued.

If you stop Active Work for any reason, you should contact the Company at once to determine what arrangements, if any, can be made to continue any of your coverage.

# OTHER IMPORTANT INFORMATION

## A Note About State Disability Laws

In certain locations, state mandated disability plans supersede the Company's plan. As a result, applicable state disability law may alter the provisions described in this summary.

## Limits on Assignments

Benefits under the plan may be assigned only as a gift assignment. The Claims Administrator will not:

- be responsible for determining the validity of a purported gift assignment, or
- be held to know about an assignment unless it has received a copy of it.

For more information on limits of assignments or how to assign disability benefits as a gift, contact the Claims Administrator (as defined on page 6 of the Administrative Information section).

## Errors in Payments

If the Claims Administrator determines that you have received an overpayment of benefits, you will be required to reimburse the Claims Administrator or have the overpayment deducted from subsequent benefit payments payable under this plan or any other Company welfare plan.

# ADMINISTRATIVE INFORMATION

Please see the Administrative Information section of this handbook for further administrative details about this plan, such as how to file Claims and appeal denied Claims, where to get more information, your ERISA rights and how the Company may amend the plan.

# Exhibit B

## NORTEL NETWORKS CLAIM FOR

| | | Date of birth | LTD DATE | POC or today's date | Rel. 7 |
|---|---|---|---|---|---|
| **Daniel D. David** | | 11/20/1951 | 3/6/2000 | 12/31/2012 | |
| GLOBAL ID | | 903957 | | | |
| EMPLOYEMENT START DATE | | 10/12/1998 | | | |
| YOUR ANNUAL SALARY | $ | 85,990.00 | GENR 1=M 2=F | 1 | |
| marital status Married or Single | S | | #under 18 dep | 0 | |
| Dependents over 18 at home/dorm and under 26 | | | 0 | | |
| Did you have a 401k before 12/31/2007 and signed up for CARP ? Y/N | | | y | | |
| what % did you sign for 2,4 or ? | | 4 | | | |
| AGE IN MONTHS | | 732 | TO AGE 65 | 48 MONTHS | |
| If on work comp # of payments left | | 0 | | | |
| MONTHLY SICK PAY FROM PRUDENTIAL | $ | 5,016.08 | | $ | 240,771.84 |
| ENTER SSDI MONTHLY OFFSET | $ | 1,446.50 | * minus | - | $ | 69,432.00 |
| Medicare B reimbersement | $ | 96.40 | * plus | + | $ | 4,627.20 |
| workcomp/settlement. payment * | $ | - | * minus | - | $ | - |
| workcomp. Medical payment * | $ | - | * minus | - | $ | - |
| Dependents SSDI offset from Form 2 | $ | - | * minus | - | $ | - |
| **NET PAY** | $ | 3,665.98 | | $ | 175,967.04 |

ENTER EMPLOYER'S YEARLY AMOUNT FROM FLEX BENEFIT CONFIRMATION STATEMENT    Calculation column

| | | | | | |
|---|---|---|---|---|---|
| MEDICAL INS. | $ | 4,373.20 | | $ | 17,492.80 |
| DENTAL/VISION PREMIUM | $ | 598.52 | | $ | 2,394.08 |
| CORE LIFE INS. PREMIUM | $ | 134.16 | | $ | 536.64 |
| OPTIONAL LIFE INS. | $ | 907.14 | | $ | 3,628.56 |
| A D&D INS. PREMIUM | $ | 56.68 | | $ | 226.72 |
| Dependent medical | $ | - | | $ | - |
| dependent dental/vision | $ | - | | $ | - | 0 |
| COLA- LTD f > 6/30/1994 and < 1/1/2000 increase if applicable 60% of 6 % (CPI) | $ | - | | $ | - |
| % OF SALARY TO 401K CARP program | $ | 3,439.60 | | $ | 13,758.40 |
| SEVERANCE WEEKS | | 18 | | | |
| SEVERANCE PAY IN WEEKS (calculated) | $ | 1,653.65 | | $ | 30,041.38 |

| | | | MALE | 75.5 YEARS | |
|---|---|---|---|---|---|
| LIFE EXPECTENCY FOR US FROM U.N. CENSUS | | | | | |
| RETIREE BENEFITS IN MONTHS ESTIMATES FROM mutual of omaha | | | | | |
| MEDICAL   MULTPLIER(EXPT.YRS-65) | $ | 130.52 | | $ | 16,445.52 |
| LIFE INS.   MULTPLIER(EXPT.YRS-65) | $ | 114.00 | | $ | 14,364.00 |
| LONG TERM CARE MULTP(EXPT.YRS-65) | $ | 224.00 | | $ | 28,224.00 |
| **CLAIM GRAND TOTAL** | | | | $ | **303,079.14** |

**Form 2**

| | DATE OF BIRTH | SSDI offset | | # of Mths to 18 |
|---|---|---|---|---|
| Dependents under 18 youngest one 1st | | | | |
| Dependent 1 | | $ | - | 0 |
| Dependent 2 | | $ | - | 0 |
| Dependent 3 | | $ | - | 0 |
| Dependent 4 | | $ | - | 0 |
| Dependent 5 | | $ | - | 0 |
| Dependent 6 | | $ | - | 0 |
| Dependent 7 | | $ | - | 0 |
| Dependent 8 | | $ | - | 0 |
| Dependent 9 | | $ | - | 0 |
| Dependent 10 | | $ | - | 0 |
| | | | | |
| TOTAL OFFSET TILL ALL DEPENDENTS TURN 18 | | $ | - | |

| | DATE OF BIRTH | | # of Mths to 26 |
|---|---|---|---|
| over 18 but under 26 and claimed dep. | | | |
| Dependents over 18 youngest one 1st | | | |
| Dependent 1 | | | 0 |
| Dependent 2 | | | 0 |
| Dependent 3 | | | 0 |
| Dependent 4 | | | 0 |
| Dependent 5 | | | 0 |
| Dependent 6 | | | 0 |
| Dependent 7 | | | 0 |
| Dependent 8 | | | 0 |
| Dependent 9 | | | 0 |
| Dependent 10 | | | 0 |

number of dependents UNDER 18
NUMBER OF DEPENDENTS OVER 18 BUT UNDER 26
CARP:- CAPITAL ACCUMULATIOn and RETIREMENT PROGRAM


Enter # of payment left if known else enter 0 -- this might be question for workman comp or Ins.
Monthly sick pay :- from Prudential pay stub
ssdi offset from pay stub + medicare B(if reimbersed) - work comp - work comp medical - depts ssdi
medicare B premium
monthly worker comp. payment
monthly medical payment  worker comp
automatic calculated on the completion of FORM 2
automatic calculated


ٮ


Medical ins.:- EMPLOYERS YEARLY AMOUNT FROM FLEX BENEFIT CONFIRMATION STATEMENT
Dental/vision ins.:- EMPLOYERS YEARLY AMOUNT FROM FLEX BENEFIT CONFIRMATION STATEMENT
Waived by prudential/Nortel when employee on disability enter yearly employer cost
Waived by prudential/Nortel when employee on disability enter yearly employee cost
Waived by prudential/nortel this is an expense to Nortel from employee yearly cost

dependent medical - EMPLOYERS YEARLY AMOUNT FROM FLEX BENEFIT CONFIRMATION STATEMENT
dependent dental /vision- employer yearly amount from benefit confirmation statement


automatically calculated -If your LTD date falls between 6/30/1994 and 1/1/2000
automatically calculated

SEVERANCE PAY :- if terminated - YEARS OF SERVICE + 4
automatically calculated



plan F plus plan D medicare supplement after 65 before 65 premium $312/month
$100,000 term life for 20 years
$5000/month for life after medicare stops 90/100 days

note:-Make sure these entries are not being included in ssdi offset

new law allows kids under 26 to be on parent insurance if claimed on 1040

# Exhibit C

# Statement of Financial Accounting Standards No. 112

FAS112 Status Page
FAS112 Summary

## Employers' Accounting for Postemployment Benefits

(an amendment of FASB Statement No. 5 and 43)

November 1992



**Financial Accounting Standards Board**
of the Financial Accounting Foundation
401 MERRITT 7, P.O. BOX 5116, NORWALK, CONNECTICUT 06856-5116

Copyright © 1992 by Financial Accounting Standards Board.  All rights reserved.  No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of the Financial Accounting Standards Board.

**Statement of Financial Accounting Standards No. 112**

**Employers' Accounting for Postemployment Benefits**

**an amendment of FASB Statements No. 5 and 43**

**November 1992**

## CONTENTS

|  | Paragraph Numbers |
|---|---|
| Introduction | 1–3 |
| Standards of Financial Accounting and Reporting: | |
| Scope | 4-5 |
| Accounting for Postemployment Benefits | 6 |
| Disclosures | 7 |
| Amendments to Existing Pronouncements | 8–11 |
| Effective Date and Transition | 12 |
| Appendix: Background Information and Basis for Conclusions | 13–25 |

# FAS 112:  Employers' Accounting for Postemployment Benefits an amendment of FASB Statements No. 5 and 43

## FAS 112 Summary

This Statement establishes accounting standards for employers who provide benefits to former or inactive employees after employment but before retirement (referred to in this Statement as *postemployment benefits*).  Postemployment benefits are all types of benefits provided to former or inactive employees, their beneficiaries, and covered dependents.  Those benefits include, but are not limited to, salary continuation, supplemental unemployment benefits, severance benefits, disability-related benefits (including workers' compensation), job training and counseling, and continuation of benefits such as health care benefits and life insurance coverage.

This Statement requires employers to recognize the obligation to provide postemployment benefits in accordance with FASB Statement No. 43, *Accounting for Compensated Absences,* if the obligation is attributable to employees' services already rendered, employees' rights to those benefits accumulate or vest, payment of the benefits is probable, and the amount of the benefits can be reasonably estimated.  If those four conditions are not met, the employer should account for postemployment benefits when it is probable that a liability has been incurred and the amount can be reasonably estimated in accordance with FASB Statement No. 5, *Accounting for Contingencies.*  If an obligation for postemployment benefits is not accrued in accordance with Statements 5 or 43 only because the amount cannot be reasonably estimated, the financial statements shall disclose that fact.

This Statement is effective for fiscal years beginning after December 15, 1993.

## INTRODUCTION

1.    This Statement establishes standards of financial accounting and reporting for the estimated cost of benefits provided by an employer to former or inactive employees after employment but before retirement (referred to in this Statement as *postemployment benefits*).  Postemployment benefits are all types of benefits provided to former or inactive employees, their beneficiaries,

Copyright © 1992, Financial Accounting Standards Board                              Not for redistribution

and covered dependents. Inactive employees are those who are not currently rendering service to the employer and who have not been terminated. They include those who have been laid off and those on disability leave, regardless of whether they are expected to return to active status. Postemployment benefits include, but are not limited to, salary continuation, supplemental unemployment benefits, severance benefits, disability-related benefits (including workers' compensation), job training and counseling, and continuation of benefits such as health care benefits and life insurance coverage.

2.    Prior to this Statement, employers' accounting for the cost of postemployment benefits varied. Some employers accrued the estimated cost of those benefits over the related service periods of active employees. Other employers applied a terminal accrual approach and recognized the estimated cost of those benefits at the date of the event giving rise to the payment of the benefits (for example, the death of an active employee, the temporary or permanent disability of an active employee, or the layoff of an employee). Still other employers recognized the cost of postemployment benefits when they were paid (cash basis). Some employers may have used different methods of accounting for different types of benefits.

3.    The Board concluded that postemployment benefits are part of the compensation provided to an employee in exchange for service. FASB Statement No. 43, *Accounting for Compensated Absences,* addresses amounts paid to active employees while on a compensated absence, such as for vacation, occasional sick days, and holidays. Other long-term fringe benefits and postemployment benefits, however, are specifically excluded from the scope of that Statement. In addition, all employment-related costs are excluded from the scope of FASB Statement No. 5, *Accounting for Contingencies.* This Statement affirms the Board's view that generally accepted accounting principles require recognition of the cost of postemployment benefits on an accrual basis and amends Statements 5 and 43 to include the accounting for postemployment benefits. Therefore, Statement 43 will (a) continue to specify the accounting for amounts paid to active employees while on a compensated absence, such as for vacation, occasional sick days, and holidays, (b) continue to not address other long-term fringe benefits provided to active employees, and (c) specify the accounting for postemployment benefits provided to former or inactive employees prior to retirement that meet the conditions in paragraph 6, Statement 5 will specify the accounting for postemployment benefits that are not addressed by Statement 43 or by other FASB Statements or APB Opinions.

# STANDARDS OF FINANCIAL ACCOUNTING AND REPORTING

## Scope

4.    This Statement applies to all types of postemployment benefits provided to former or inactive employees, their beneficiaries, and covered dependents after employment but before

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution

retirement, except as noted in the following paragraph. Benefits may be provided in cash or in kind and may be paid as a result of a disability, layoff, death, or other event. Benefits may be paid immediately upon cessation of active employment or over a specified period of time. Employees' rights to benefits may accumulate or vest as they render service.

5.    This Statement does not apply to:

a.   Postemployment benefits provided through a pension or postretirement benefit plan (FASB Statements No. 87, *Employers' Accounting for Pensions,* No. 88, *Employers' Accounting for Settlements and Curtailments of Defined Benefit Pension Plans and for Termination Benefits,* and No. 106, *Employers' Accounting for Postretirement Benefits Other Than Pensions,* specify the accounting for those costs.)
b.   Individual deferred compensation arrangements that are addressed by APB Opinion No. 12, *Omnibus Opinion —1967,* as amended by Statement 106
c.   Special or contractual termination benefits covered by Statements 88 and 106
d.   Stock compensation plans that are addressed by APB Opinion No. 25, *Accounting for Stock Issued to Employees.*

## Accounting for Postemployment Benefits

6.    Postemployment benefits that meet the conditions in paragraph 6 of Statement 43 shall be accounted for in accordance with that Statement. Paragraph 6 of Statement 43 states:

> An employer shall accrue a liability for employees' compensation for future absences if *all* of the following conditions are met:
>
> a.   The employer's obligation relating to employees' rights to receive compensation for future absences is attributable to employees' services already rendered,
> b.   The obligation relates to rights that vest or accumulate,
> c.   Payment of the compensation is probable, and
> d.   The amount can be reasonably estimated. [Footnote references omitted.]

Postemployment benefits that are within the scope of this Statement and that do not meet those conditions shall be accounted for in accordance with Statement 5. Paragraph 8 of Statement 5 states:

> An estimated loss from a loss contingency (as defined in paragraph 1) shall be accrued by a charge to income if *both* of the following conditions are met:
>
> a.   Information available prior to issuance of the financial statements indicates that it is probable that an asset had been impaired or a liability had been incurred at the date of the financial statements. It is implicit in this condition

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution

that it must be probable that one or more future events will occur confirming the fact of the loss.

b. The amount of loss can be reasonably estimated.   [Footnote references omitted.]

## Disclosures

7.    If an obligation for postemployment benefits is not accrued in accordance with Statements 5 or 43 only because the amount cannot be reasonably estimated, the financial statements shall disclose that fact.

## Amendments to Existing Pronouncements

8.    The following sentences are added to the end of paragraph 1 of Statement 43:

> This Statement also applies to all forms of postemployment benefits, as defined in FASB Statement No. 112, *Employers' Accounting for Postemployment Benefits,* that meet the conditions in paragraph 6 of this Statement, except as noted in the following paragraph.  Postemployment benefits that do not meet the conditions in paragraph 6 of this Statement shall be accounted for in accordance with FASB Statement No. 5, *Accounting for Contingencies,* as amended by Statement 112.  This Statement does not address the accounting for benefits paid to active employees other than compensated absences.

9.    The following paragraph replaces paragraph 2 of Statement 43:

> This Statement does not apply to:
>
> a. Postemployment benefits provided through a pension or postretirement benefit plan (FASB Statements No. 87, *Employers' Accounting for Pensions,* No. 88, *Employers' Accounting for Settlements and Curtailments of Defined Benefit Pension Plans and for Termination Benefits,* and No. 106, *Employers' Accounting for Postretirement Benefits Other Than Pensions,* specify the accounting for those costs.)
> b. Individual deferred compensation arrangements that are addressed by APB Opinion No. 12, *Omnibus Opinion—1967,* as amended by Statement 106
> c. Special or contractual termination benefits covered by Statements 88 and 106
> d. Stock compensation plans that are addressed by APB Opinion No. 25, *Accounting for Stock Issued to Employees.*
>
> This Statement does not address the allocation of costs of compensated absences to interim periods.   The cost of postemployment benefits as determined under this Statement that is directly related to the disposal of a segment of a business or a portion

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution

of a line of business shall be recognized pursuant to the requirements of APB Opinion No. 30, Reporting the Results of Operations—Reporting the Effects of Disposal of a Segment of a Business, and Extraordinary, Unusual and Infrequently Occurring Events and Transactions, and included in determining the gain or loss associated with that event.

10.    The last two sentences of paragraph 7 of Statement 5 are deleted and replaced by the following sentence:

> Accounting for other employment-related costs is also excluded from the scope of this Statement except for postemployment benefits that become subject to this Statement through application of FASB Statement No. 112, *Employers' Accounting for Postemployment Benefits.*

11.    In paragraph 8(a) of FASB Statement No. 107, *Disclosures about Fair Value of Financial Instruments, the words postemployment benefits,* are inserted after *other postretirement benefits including health care and life insurance benefits,* and No. 112, *Employers' Accounting for Postemployment Benefits,* is inserted after No. 106, *Employers' Accounting for Postretirement Benefits Other Than Pensions,* to exclude an employer's obligation for postemployment benefits from the requirements for disclosures about fair value.

**Effective Date and Transition**

12.    This Statement shall be effective for fiscal years beginning after December 15, 1993. Earlier application is encouraged.   The effect of initially applying this Statement shall be reported as the effect of a change in accounting principle in a manner similar to the cumulative effect of a change in accounting principle (APB Opinion No. 20, *Accounting Changes,* paragraph 20).   Pro forma effects of retroactive application (Opinion 20, paragraph 21) are not required. Previously issued financial statements shall not be restated.

---

**The provisions of this Statement
need not be applied to immaterial items.**

---

*This Statement was adopted by the unanimous vote of the seven members of the Financial Accounting Standards Board:*

> Dennis R. Beresford, *Chairman*
> Joseph V. Anania
> Victor H. Brown
> James J. Leisenring
> Robert H. Northcutt
> A. Clarence Sampson
> Robert J. Swieringa

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution

**Appendix**

## BACKGROUND INFORMATION AND BASIS FOR CONCLUSIONS

## CONTENTS

Paragraph
Numbers

Introduction ......................................................................................................... 13–14
Background ........................................................................................................... 15
Applicability of Other Pronouncements................................................................ 16–23
Disclosures ........................................................................................................... 24
Effective Date and Transition................................................................................ 25

# Appendix: BACKGROUND INFORMATION AND BASIS FOR CONCLUSIONS

## Introduction

13.    This appendix summarizes considerations that were deemed significant by Board members in reaching the conclusions in this Statement. It discusses reasons for accepting certain views and rejecting others. Individual Board members gave greater weight to some factors than to others.

14.    The Board issued the Exposure Draft, Employers' *Accounting for Postemployment Benefits,* for public comment on May 12, 1992. Fifty-nine comment letters were received and most respondents agreed with the Board that the cost of postemployment benefits should be accounted for on an accrual basis. The Board concluded that it could reach an informed decision on the basis of existing information without a public hearing.

## Background

15.    The project on employers' accounting for pensions and other postemployment benefits was initially added to the Board's agenda in 1979. In 1984, the Board concluded that it should address employers' accounting for postemployment benefits other than pensions as a separate project. In 1987, the Board deferred consideration of issues relating to benefits provided after employment but before retirement to focus its resources on postretirement benefits other than pensions. The Board excluded postemployment benefits from the scope of Statement 106:

> The accounting for benefits paid after employment but before retirement (for example, layoff benefits) is a separate phase of the Board's project on accounting for postemployment benefits other than pensions. The fact that this Statement does not apply to those benefits should not be construed as discouraging the use of accrual accounting for those benefits. [footnote 2]

Consequently, accounting for postemployment benefits other than retirement benefits is the final phase of the Board's project on employers' accounting for pensions and other postemployment benefits.

## Applicability of Other Pronouncements

16.    Certain postemployment benefits are covered by existing Statements or Opinions. Accounting for deferred compensation contracts is covered by Opinion 12 (as amended by Statement 106). Accounting for contractual and special termination benefits is covered by

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution

Statements 88 and 106. Accounting for the disposal of a segment of a business is covered by Opinion 30. Accounting for benefits paid after retirement is covered by Statements 87, 88, and 106. This Statement does not change the accounting for those benefits.

17.    The Board considered whether guidance is needed in addressing employers' accounting for postemployment benefits. In the Board's view, Statements 5 and 43 specify appropriate accounting for postemployment benefits. However, postemployment benefits were specifically excluded from the scope of those Statements because at the time those Statements were issued the Board had a project on its agenda to address the accounting for pensions and other postemployment benefits. Since that time, the Board issued Statements that address postretirement benefits but none that address the accounting for postemployment benefits. The Board, therefore, concluded that it is appropriate to amend Statements 5 and 43 to include the accounting for postemployment benefits.

18.    Several respondents to the Exposure Draft commented that it would be inappropriate to account for postemployment benefits by applying the criteria in Statement 43. They stated that postemployment benefits generally do not vest and if postemployment benefits do not vest, an employer does not have an obligation to provide benefits until a future event occurs. The Board considered whether an employer's liability to provide nonvesting postemployment benefits arises only when a future event, such as termination or disability, occurs. If the rights to nonvesting postemployment benefits accumulate over the service period, then the event that creates a liability and affects the amount of benefits is the rendering of service by employees. If the payment of those benefits is probable and can be reasonably estimated, then the cost of those benefits should be recognized as they are earned by the employees. The Board concluded that if postemployment benefits meet the conditions in paragraph 6 of Statement 43, then the estimated cost of those benefits should be recognized in accordance with that Statement.

19.    Some respondents noted that Statement 43 does not require employers to accrue a liability for nonvesting accumulating rights to receive sick pay benefits and questioned whether that exception would apply to nonvesting accumulating rights to receive postemployment benefits. In developing Statement 43, the Board concluded that probable payments for accumulating sick pay benefits would rarely be material unless they vest or are paid without an illness-related absence. The Board also noted that the lower degree of reliability associated with estimates of future sick pay and the cost of making and evaluating those estimates did not justify a requirement for an accrual.

20.    Unlike nonvesting sick pay, nonvesting postemployment benefits may be material for certain employers, especially in certain industries, depending on many factors including, but not limited to, the duration of benefit payments and the incidence of events giving rise to the payment of benefits. In addition, the fact that there are employers currently accruing the estimated cost of those benefits, some over applicable employee service periods and others using a terminal accrual approach, suggests that sufficient information is available to many employers on which to develop a reliable estimate without significant cost. Accordingly, the Board

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution

concluded that the exception in Statement 43 should not be extended to postemployment benefits.

21.    If postemployment benefits do not meet the conditions in paragraph 6 of Statement 43, then employers should recognize the estimated cost of those benefits in accordance with Statement 5.  Statement 5 requires recognition of a loss contingency when it is probable that an asset has been impaired or a liability has been incurred and the amount of the loss can be reasonably estimated.  Paragraph 59 of Statement 5 further clarifies the recognition of loss contingencies:

> . . . even losses that are reasonably estimable should not be accrued if it is not probable that an asset has been impaired or a liability has been incurred at the date of an enterprise's financial statements because those losses relate to a future period rather than the current or a prior period.

22.    For example, an employer may provide any former employee on permanent disability with continued medical insurance coverage until that employee meets the requirements for participation in the employer's postretirement medical plan.  If the level of benefits provided is the same for any disabled employee regardless of years of service, the cost of those benefits should be recognized when the event causing a permanent disability occurs and a reasonable estimate can be made as specified by Statement 5.

23.    Several respondents requested that this Statement provide guidance on how to measure an employer's postemployment benefit obligation.   FASB Statements 87 and 106 discuss measurement issues extensively.  To the extent that similar issues apply to postemployment benefit plans, employers may refer to those Statements for guidance in measuring their obligations in compliance with the requirements of this Statement.  Respondents also asked the Board to provide explicit guidance on the applicability and use of discounting.  Statements 5 and 43 do not provide explicit guidance and readdressing those Statements is beyond the intended scope of this project.  In addition, discounting is being addressed in the Board's existing project on present-value-based measurements. Accordingly, the Board decided not to provide explicit guidance on discounting in this Statement. As a result, the Board understands that the use of discounting in measuring postemployment benefit obligations will continue to be permitted but not required.

**Disclosures**

24.    Statements 5 and 43 require disclosure if it is probable that an obligation has been incurred but it cannot be reasonably estimated.  Statement 5 requires additional disclosures in other situations including when it is reasonably possible that a liability has been incurred.  The Board decided not to apply the additional Statement 5 disclosures to postemployment benefit obligations because it believes that the additional cost of compliance is not warranted.  Thus, this Statement requires disclosure only if an obligation for postemployment benefits is not accrued in

Copyright © 1992, Financial Accounting Standards Board                    Not for redistribution

accordance with Statements 5 or 43 solely because the amount cannot be reasonably estimated.

**Effective Date and Transition**

25.    The effect of initially applying this Statement is to be reported as the effect of a change in accounting principle.  Some respondents recommended that an option be provided to recognize that effect over future periods.    The Board considered whether a provision for delayed recognition of the transition amount was needed.  A major objective of transition is to minimize implementation costs and mitigate disruption without unduly compromising the ability of financial statements to provide useful information.  An important factor considered by the Board was the potential magnitude of the unrecorded postemployment benefit obligation.  Information made available to the Board indicated that postemployment benefits are generally not as significant as pension or other postretirement benefits.  The Board concluded that a provision for delayed recognition was not needed to mitigate the financial statement impact of immediately recognizing the transition amount when this Statement is adopted.  That provision would have added unnecessary complexity to the application of this Statement, reduced financial statement comparability, and been inconsistent with Statements 5 and 43, which do not provide for delayed recognition at transition.

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution