## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Objection Deadline: October 22, 2012** |
| | ) | **Hearing Date:        February 12, 2013** |
| | ) | **Re:                        D.I. # 8067** |

### Objection to Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors Long-Term Disability Plans and the Employment of the LTD Employees

Emily D. Cullen ("Cullen, I or me") hereby submits this Motion Objecting to Debtors' Motion for Entry of an Order Authorizing Debtors to Terminate Debtors' Long-Term Disability Plans and the Employment of the LTD Employees (the "Motion"). In support of this Motion, I respectfully represent as follows:

### RELIEF REQUESTED

1.    Deny Debtors' motion to terminate the LTD Plans and employment of the LTD Employees or in the alternative, grant Debtors' motion the with stipulation that LTD Benefits are paid in full.

---

[1]    The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## <u>RELEVANT FACTS AND BASIS FOR RELIEF</u>

2.     I was a Certified Public Accountant employed by Debtors when I became totally disabled and approved for LTD Benefits in 1997 at the age of 29.

3.     My LTD claim is governed by the 1996 LTD Summary Plan Description provided to me by Debtors attached hereto as Exhibit 1 (the "1996 SPD").

4.     In 2000 Prudential Insurance Company became the new administrator of the LTD Plan and quickly moved to wrongfully terminate my LTD Benefits.  During the appeal of this wrongful termination, we noticed that the 1996 SPD states: "The complete terms of the Short-Term and Long-Term Disability Plans can be found in the plan document.  If there is a difference between the information in the summary and the plan document, the plan document will govern."  (See Exhibit 1 at EDC165).  Based on this language, we asked Debtors for the plan document to ensure we had the precise terms governing my LTD Benefits.  Our request was sent by email to Ms. Jean Burkard at PricewaterhouseCoopers, a human resources vendor for Nortel.  Ms. Burkard forwarded the inquiry to Ms. Debbie Lorimer in Nortel Corporate Benefits who ultimately forwarded the question to Ms. Ruth Hillis, Senior Benefits Legal Counsel for Nortel.  Ms. Hillis wrote that:  "The plan document is the summary plan description.  The language [we] reference[d] is boiler plate ERISA-required language that applies if there is a separate plan document.  There is not with regard to the LTD; the SPD is the plan document."  This email exchange can be found at Exhibit 2.

5.     After appealing the wrongful termination of my LTD Benefits to the Employee Benefits Committee of Nortel, my LTD Benefits were reinstated.  In the letter notifying me of this decision, Senior Benefits Legal Counsel, Ruth Hillis, stated: "Page 15 of the

Summary Plan Description of the LTD plan, which was provided to you earlier, describes when your LTD benefit may end." (see Exhibit 3).

6.    Page 15 of the 1996 SPD lists the five instances that may terminate my LTD benefits:

> Benefits end when your period of Total Disability ends, which happens when the first of the following occurs:
>
> 1. You stop being Totally Disabled or die.
> 2. You go back to work (other than an approved rehabilitation program).
> 3. You are no longer under the care of a Physician.
> 4. You fail to furnish the latest required proof of the continuance of your Total Disability or refuse to be examined by a Physician designated by the plan.
> 5. You reach the end of the maximum benefit period for any one period of Total Disability as shown in the following chart.

The Maximum Benefit Period chart follows this section and states that if your disability begins under age 60, your LTD Benefits will continue until age 65. (See Exhibit 1 at EDC179-180).

7.    Based on the above, the 1996 SPD unquestionably governs my LTD claim.  As Senior Benefits Legal Counsel Hillis stated, Page 15 the 1996 SPD describes when my LTD Benefits may end.  As none of the five enumerated termination events has occurred, Debtors are required to provide LTD Benefits until age 65.

## A.    CULLEN'S LTD BENEFITS ARE VESTED AND THE LTD PLAN IS NOT TERMINABLE AT WILL

8.    Debtors argue they have provided Benefits to the LTD Beneficiaries subject to the Debtors' express right to unilaterally amend or terminate the various LTD plans. In fact, Debtors state that "each LTD Plan document expressly provides that the Debtors have the unilateral right to modify or terminate the LTD Plans at any time in the Debtors' sole discretion." This assertion is the foundation for Debtors' claim that the LTD Benefits are not vested.  This assertion is demonstrably false.

9.    Debtors claim they always had the right to terminate the LTD plans and cherry-picked the 2004, 2006, and 2010 Disability SPDs attached to their motion to support this assertion.  All of those SPDs indeed have a section entitled "Future of the Plan" which states "the Company reserves the right to change or end the plans described in this summary at any time." However, when this language was added to the Disability SPDs is unclear.

10.    **Critically, the 1996 SPD does not contain this language reserving the right to change or end the plan.**  There is no section entitled "Future of the Plan."  To the contrary, the 1996 SPD and Senior Legal Counsel Hillis clearly and unambiguously set forth the only conditions on when my LTD Benefits may end.  Based on the plain language of the 1996 SPD, my LTD Benefits must be paid in the absence of one of the listed termination events. Since none of those events have occurred, Debtors must pay my LTD Benefits in full.

## B.    DEBTORS CANNOT TERMINATE BENEFITS FOR EXISTING APPROVED CLAIMS

11.    Debtors claim the plan documents give them the unilateral right to amend or terminate welfare benefits, including the LTD Plans, at any time for any reason.  While this

language is not included in my 1996 SPD and therefore inapplicable to my claim, Debtors' interpretation of this language as it otherwise applies to the facts of this case is misguided. The only reasonable interpretation of this language is that it would permit Debtors to alter or terminate the "coverage" offered prospectively. That is, they can terminate coverage such that no <u>new</u> claims could be permitted, but they cannot be allowed to terminate "benefits" for existing approved claims. Allowing Debtors to terminate benefits for existing, approved claims defies the relevant law, common sense, public policy, and the plain intent of such benefits.

12.    Plans like LTD, medical, and death are essentially insurance benefits. Employees are being responsible and insuring themselves against a catastrophic event. Employees may read the language Debtors cite and understand that their employer might change these plans prospectively. If that were to occur, employees could make other arrangements to protect themselves against these catastrophic events. However, once these events happen (i.e., once a person tragically becomes disabled), she is helpless to make other arrangements to protect against this event. Therefore, the only reasonable interpretation of the language the Debtors reference is that Debtors can alter or cancel the "coverage" offered impacting only future claims, but existing claims are vested.

13.    Under the Debtors' interpretation, an employee could have surgery costing $500,000, and Debtors would be allowed to terminate the medical plan after the surgery but before paying the claim thereby dropping that entire cost on the employee. Similarly, an employee could die and Debtors would be allowed to <u>subsequently</u> terminate the death benefit before paying the claim. Again, such an interpretation would strain any reasonable understanding of the parties' intent with respect to these benefits. Our situation with existing LTD claims is no different.

14. In fact, Debtors actually agree that modifications to the Plan are prospective only and cannot be applied retroactively to existing claims. As mentioned previously, the 1996 SPD governs my claim. Under the 1996 SPD, my monthly benefit is 50% of my FLEX Earnings. That amount subsequently increased to 60% as noted in the 2004 SPD. However, that change did not apply to my claim as I was told the 1996 SPD solely governs my claim. Furthermore, upon approval of my claim for LTD Benefits, I was locked into my existing coverages for benefits like death and disability as I could not elect increased coverage. This is further evidence that once you become disabled and have an existing claim, you are locked into that claim and cannot seek other avenues to protect yourself against catastrophic loss. Again, the only reasonable interpretation of the LTD plan is that these benefits are vested once a claim is approved.

15. Finally, both Nortel and its employees treated these benefits as standard insurance benefits. The SPD documents refer to employees selecting disability "coverage" further conveying the insurance-nature of these benefits such that once you have an approved claim, that benefit is vested. Further, the SPD refers to paying "premiums" for an additional benefit amount. Many LTD Beneficiaries paid an additional premium to receive increased coverage. Yet, Debtors argue they can stop making payments on these approved claims unilaterally and without cause. No reasonable employee would have entered into that arrangement under Debtors' interpretation of this plan. Who would pay an increased premium if Nortel had no obligation to pay? If you buy something but the other party has no obligation to deliver, you do not have an enforceable agreement. This could not have been the intent of the parties here, and the rules of construction should not permit such an interpretation.

16.    Further, would we be having this argument if Nortel was not self-insured but rather had purchased the LTD benefit from an insurance company? That insurance company would be responsible for completely paying these claims according to the terms of that contract. The fact Nortel is self-insured does not change the nature of this benefit or more importantly, the intent behind it.

## C.    TERMINATING "EMPLOYEE" STATUS OF THE LTD BENEFICIARIES DOES NOT TERMINATE LTD BENEFITS

17.    Debtors are also seeking to terminate the LTD Beneficiaries' "employment" status. Debtors falsely state that:

> The LTD Plans further provide that the Benefits end when a person's employment is terminated or the part of the plan providing the coverage ends. See, e.g., 2010 Nortel Networks Inc. Long-Term Disability Plan Summary Plan Description, at 12, attached to the Ray Declaration as Exhibit 2. Therefore, given the LTD Employees' status generally as "at will" employees, the Debtors could terminate the employment of the LTD Employees at any time and such termination would result in the termination of the LTD Employees' Benefits provided under the LTD Plans. (emphasis added)

18.    First, this language does not exist in the 1996 SPD which governs my claim and is therefore inapplicable to my claim.

19.    Second, that is not what page 12 of the 2010 SPD states. Page 12 of the 2010 SPD states that an employee's "LTD Plan coverage will end…on the date your employment ends." (emphasis added). Debtors misread their own document and state that benefits end at employment termination, when in fact only the "coverage" ends. There is a

fundamental distinction between "coverage," which is protecting against a future event, and "benefits," which are received after that event occurs.

20.    This is precisely the point made above in Section B of this Motion.  The only reasonable interpretation of these documents which is consistent with public policy, common sense, and the clear intent of the parties is that Debtors can modify or terminate "coverage" prospectively, but once a claim is filed and approved under that coverage, those benefits are vested.  If an employer modifies or terminates coverage, a healthy person can seek alternative coverage.  After a disability claim is filed however, the employee is helpless to protect themselves and obtain coverage against this catastrophic event since it has already occurred.

21.    Furthermore, Debtors' classification that LTD Beneficiaries are "employees" is similarly flawed.  The LTD Beneficiaries are only treated as "employees" for Nortel's administrative ease, but they are not employees in any material or substantive sense. We did not have the same benefits as employees.  We were not allowed to elect increased coverage for disability or death benefits.  Our job was not held (and why would it be since we are totally disabled).  And most importantly, we certainly were not performing any of the duties of an employee, which Debtors admit.  This is a classic form over substance argument made by the Debtors as again no reasonable person could conclude the LTD Beneficiaries are employees in any practical or legal sense of the word.

**D.    CONCLUSION**

22.    We pray the Court not be distracted as to what these LTD benefits actually are, what the benefit documents mean, and what was the plain intent of the parties.  Both parties understood this was insurance coverage to provide some modest protection against a catastrophic

event.  As a self-insured entity, Debtors were required to put adequate funds away to pay for these very small number of events.  The 1996 SPD is clear and cannot be re-written or re-interpreted simply because Debtors are in bankruptcy.  Under these documents, my right to LTD Benefits until age 65 cannot be disputed.  In no case should Debtors be allowed to fundamentally misinterpret these documents now they are in bankruptcy to re-write the only logical interpretation of the primary intent of the LTD Benefits.

23.    Page 15 of the 1996 SPD states: "Benefits end when your period of Total Disability ends."  Logically, that is how it should be.  Since the LTD Beneficiaries are no longer able to work or otherwise protect themselves, the only instance that should permit the termination of benefits is when your period of Total Disability ends.

24.    The LTD Beneficiaries did exactly what we ask members of society to do – work hard, get a good job and get insurance to protect yourself against catastrophic events.  If the Court rules against us, we ask the Court to tell us, what should we have done?  And more importantly, what are we supposed to do now?

25.    Based on the above, I ask the Court to deny Debtors' motion to terminate LTD Benefits or in the alternative, grant Debtors' motion with the stipulation that my LTD Benefits are paid in full in the amount of $744.460.46.  My proof of claim is attached to this Motion as Exhibit 4.

## NOTICE

26.    Notice of this Motion has been provided to (a) counsel to the Debtors; (b) counsel to the Creditors' Committee; (c) counsel to the Retirees Committee; (d) the United States Trustee for the District of Delaware; and (e) all parties required to receive service under Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware through the Court's electronic filing system. Cullen respectfully submits that, given the nature of the relief requested, no other notice of the relief requested herein need to be given.

      **WHEREFORE**, I respectfully request the entry of an Order, in the form attached, denying Debtors' motion to terminate LTD Benefits or in the alternative, granting Debtors' motion with the stipulation that LTD Benefits are paid in full.

Dated:  10·15·12

Emily D. Cullen
100 Telmew Ct.
Cary, NC 27518
Telephone: 919-363-2472
Email: mcullen777@aol.com

*Appearing Pro Se*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Re: Docket No. _____** |

---

**ORDER GRANTING MOTION Objecting to Debtors' Motion for Entry of an Order**
**Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the**
**Debtors Long-Term Disability Plans and the Employment of the LTD Employees**

Upon consideration of the *Motion Objecting to Debtors' Motion for Entry of an*

*Order Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the*

*Debtors Long-Term Disability Plans and the Employment of the LTD Employees* (the "Motion")

and any responses thereto; and it appearing that sufficient notice of the Motion has been given;

and in good cause having been shown, it is hereby

ORDERED that the Motion is granted.

Dated: _____, 2013
        Wilmington, Delaware

                                    _____
                                    HONORABLE KEVIN GROSS
                                    CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[1]  The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.