# EXHIBIT A

# NORTEL NETWORKS CLAIM form

| | Date of birth | LTD DATE | POC or today's date Rel 7 | |
|---|---|---|---|---|
| Jerry Wadlow | 4/11/1961 | 4/1/2005 | 12/31/2012 | |
| GLOBAL ID | GID 04795G0 | | | C2= when you started long term disability(LTD), D2=date for proof of claim(POC) |
| EMPLOYMENT START DATE | 2/28/2000 | | | when you started your employment with Nortel |
| YOUR ANNUAL SALARY | 70,679.00 | GENR 1=M 2=F | 1 | Gender male=1 female = 2 |
| marital status Married or Single | | #under 18 dep | 0 | B6= M for married and S for single , D6=number of dependents UNDER 18 |
| Dependents over 18 at home/form and under 26 | | | 0 | NUMBER OF DEPENDENTS OVER 18 BUT UNDER 26 and Claimed on 1040 |
| Did you have a 401k before 12/31/2007 and signed up for CARP ? Y/N | | | Y | CARP:- CAPITAL ACCUMULATION and RETIREMENT PROGRAM |
| what % did you sign for 2,4 or 7 | | 4 | | If not known enter 0 |
| LIFE IN MONTHS | | 619 TO AGE 65 | 161 MONTHS | |
| on work comp # of payments left | | 0 | | Enter # of payment left if known else enter 0 -- this might be question for workman comp or ins. |

## MONTHLY PAY

| | MONTHLY PAY | POC | Calculation column |
|---|---|---|---|
| MONTHLY SICK PAY FROM PRUDENTIAL | 4,122.94 | 663,793.34 | Monthly sick pay:- from Prudential pay stub |
| ENTER SSDI MONTHLY OFFSET | 1,515.50 * minus - | 243,995.50 | ssdi offset from pay stub + medicare B(if reimbursed) - work comp - depts ssdi |
| Medicare B reimbursement | 96.40 * plus + | 15,520.40 | medicare B premium |
| Workcomp/settlement payment * | * minus - | | monthly worker comp. payment |
| workcomp. Medical payment * | * minus - | | monthly medical payment worker comp |
| dependents SSDI offset from Form 2 | * minus - | | automatic calculated on the completion of FORM 2 |
| NET PAY | 2,703.84 | 435,318.24 | automatic calculated |

## ENTER EMPLOYER'S YEARLY AMOUNT FROM FLEX BENEFIT CONFIRMATION STATEMENT

| | MONTHLY PAY | POC | Calculation column |
|---|---|---|---|
| MEDICAL INS. | 4,373.20 | 58,673.77 | Medical ins.:- EMPLOYERS YEARLY AMOUNT FROM FLEX BENEFIT CONFIRMATION STATEMENT |
| DENTAL/VISION PREMIUM | 598.52 | 8,030.14 | Dental/Vision ins.:- EMPLOYERS YEARLY AMOUNT FROM FLEX BENEFIT CONFIRMATION STATEMENT |
| CARE LIFE INS. PREMIUM | 110.76 | 1,486.03 | Waived by prudential/Nortel when employee on disability enter yearly employer cost |
| OPTIONAL LIFE INS | 265.72 | 3,565.08 | Waived by prudential/Nortel when employee on disability enter yearly employee cost |
| M&O INS. PREMIUM | 28.08 | 376.74 | Waived by prudential/nortel this is an expense to Nortel from employee yearly cost |
| monthly medical | - | - | note:- if you are single with dependents then you need to separate medical/dental/vision |
| dependent medical | - | - | dependent medical:- EMPLOYERS YEARLY AMOUNT FROM FLEX BENEFIT CONFIRMATION STATEME |
| dependent dental/vision | - | 0 | dependent dental /vision- employer yearly amount from benefit confirmation statement |
| ELA increase 3.6 % estimated for max | - | - | automatically calculated |
| applicable 60% of 6 % (CPI) each yr | 2,827.16 | 37,931.06 | automatically calculated -if your LTD date falls between 6/30/1994 and 1/1/2000 |
| 60% OF SALARY TO 401K CARP program | - | - | automatically calculated |
| qualified SEVERANCE paid WEEKS | 16 | | SEVERANCE PAY:- if terminated - YEARS OF SERVICE + 6 else enter 0 |
| SEVERANCE PAY IN WEEKS (calculated) | 1,359.21 | 21,747.38 | automatically calculated |

## LIFE EXPECTANCY FOR US FROM U.N. CENSUS — MALE — 75.5 YEARS

THREE BENEFITS IN MONTHS ESTIMATES FROM mutual of omaha

| | MONTHLY | POC | Calculation column |
|---|---|---|---|
| MEDICAL MULTIPLIER(EXPT.YRS 65) | 130.52 | 16,445.52 | plan F plus plan D medicare supplement after 65 before 65 premium $312/month |
| LIFE INS. MULTIPLIER(EXPT.YRS 65) | 114.00 | 14,364.00 | $100,000 term life for 20 years |
| LONG TERM CARE MULTIPLIER(EXPT.YRS 65) | 224.00 | 28,224.00 | $5000/month for life after medicare stops 90/100 days |
| **CLAIM GRAND TOTAL** | | **626,161.96** | |

# EXHIBIT B

Claim Services Provided by

The Prudential Insurance Company of America

**David Moran**
Disability Consultant

The Prudential Insurance Company Of America
Disability Management Services
Po Box 13480
Philadelphia, PA 19101

Phone: (800) 842-1718 Ext: 5598
Fax: (877) 889-4885
Hours: 07:00 AM 03:00 PM

March 29, 2005

Jerry L Wadlow
800 W Renner Rd Apt 2216
Richardson, TX 75080

Claimant: Jerry L Wadlow
Control #/Br: 39900 / 0B055
Claim #: 10710306
Date of Birth: 04/11/1961

Ilᵤₙᵢ.ₗᵢₗᵢᵢ.ᵢᵢ.ᵤₗ.ᵢₗᵢₗᵢₗₗᵢₗᵤᵢᵢᵢₗᵢₗ

Dear Mr. Wadlow:

We have completed our review of your claim for Long Term Disability (LTD) benefits under the
Nortel Group LTD Plan. We have determined that you are eligible for benefits effective April 01,
2005.

In order to receive benefits under the Nortel Group LTD Plan, covered employees must meet all
contractual requirements including the following definition of Disability:

> "You are considered Totally Disabled for LTD when a Physician submits documentation that is
> approved by the Claims Administrator as establishing that you are unable to perform the
> essential functions of your job. This means that you cannot perform the work you were
> normally performing at the time of your disability with or without reasonable accommodations
> for the limitations resulting from your Illness or Injury. In addition, you must be under the
> regular care of the Physician who certifies your Total Disability and that Physician must have
> treated you personally for the Illness or Injury causing the Total Disability for at least 31 days
> before making the certification. The proof that your Physician submits must be written proof of
> objective clinical documentation (i.e. lab tests, x-rays, medical reports, etc.) of your Total
> Disability. The Claims Administrator will approve or deny your Claim for LTD benefits at its
> discretion. Independent Medical Evaluations (IME's) may also be required at the Company's
> expense in order to arrive at this final determination. Your benefit will be denied if you do not
> provide such objective proof of your Claim within the required timeframe.

> · During the first 18-months of a covered Total Disability (from the first date of STD), you will
> be considered unable to work if you cannot perform the work you were normally performing at
> the time of your disability with or without reasonable accommodations for the limitations
> resulting from your Illness or Injury. After the first 18-months of covered Total Disability
> (from the first date of STD), you will be considered unable to work if you are unable to perform
> any reasonable occupation. A "reasonable occupation" is any job you are or could become
> qualified to do with your education, training or experience."

# EXHIBIT C

# Statement of Financial Accounting Standards No. 112

FAS112 Status Page
FAS112 Summary

## Employers' Accounting for Postemployment Benefits

(an amendment of FASB Statement No. 5 and 43)

November 1992



**Financial Accounting Standards Board**
of the Financial Accounting Foundation
401 MERRITT 7, P.O. BOX 5116, NORWALK, CONNECTICUT 06856-5116

Copyright © 1992 by Financial Accounting Standards Board.  All rights reserved.  No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of the Financial Accounting Standards Board.

**Statement of Financial Accounting Standards No. 112**

**Employers' Accounting for Postemployment Benefits**

**an amendment of FASB Statements No. 5 and 43**

**November 1992**

## CONTENTS

|  | Paragraph Numbers |
|---|---|
| Introduction | 1–3 |
| Standards of Financial Accounting and Reporting: | |
|     Scope | 4-5 |
|     Accounting for Postemployment Benefits | 6 |
|     Disclosures | 7 |
|     Amendments to Existing Pronouncements | 8–11 |
|     Effective Date and Transition | 12 |
| Appendix: Background Information and Basis for Conclusions | 13–25 |

# FAS 112:  Employers' Accounting for Postemployment Benefits

# an amendment of FASB Statements No. 5 and 43

## FAS 112 Summary

This Statement establishes accounting standards for employers who provide benefits to former or inactive employees after employment but before retirement (referred to in this Statement as *postemployment benefits*).  Postemployment benefits are all types of benefits provided to former or inactive employees, their beneficiaries, and covered dependents.  Those benefits include, but are not limited to, salary continuation, supplemental unemployment benefits, severance benefits, disability-related benefits (including workers' compensation), job training and counseling, and continuation of benefits such as health care benefits and life insurance coverage.

This Statement requires employers to recognize the obligation to provide postemployment benefits in accordance with FASB Statement No. 43, *Accounting for Compensated Absences,* if the obligation is attributable to employees' services already rendered, employees' rights to those benefits accumulate or vest, payment of the benefits is probable, and the amount of the benefits can be reasonably estimated.  If those four conditions are not met, the employer should account for postemployment benefits when it is probable that a liability has been incurred and the amount can be reasonably estimated in accordance with FASB Statement No. 5, *Accounting for Contingencies.*  If an obligation for postemployment benefits is not accrued in accordance with Statements 5 or 43 only because the amount cannot be reasonably estimated, the financial statements shall disclose that fact.

This Statement is effective for fiscal years beginning after December 15, 1993.

## INTRODUCTION

1.    This Statement establishes standards of financial accounting and reporting for the estimated cost of benefits provided by an employer to former or inactive employees after employment but before retirement (referred to in this Statement as *postemployment benefits*).  Postemployment benefits are all types of benefits provided to former or inactive employees, their beneficiaries,

Copyright © 1992, Financial Accounting Standards Board          Not for redistribution

and covered dependents. Inactive employees are those who are not currently rendering service to the employer and who have not been terminated. They include those who have been laid off and those on disability leave, regardless of whether they are expected to return to active status. Postemployment benefits include, but are not limited to, salary continuation, supplemental unemployment benefits, severance benefits, disability-related benefits (including workers' compensation), job training and counseling, and continuation of benefits such as health care benefits and life insurance coverage.

2.    Prior to this Statement, employers' accounting for the cost of postemployment benefits varied. Some employers accrued the estimated cost of those benefits over the related service periods of active employees. Other employers applied a terminal accrual approach and recognized the estimated cost of those benefits at the date of the event giving rise to the payment of the benefits (for example, the death of an active employee, the temporary or permanent disability of an active employee, or the layoff of an employee). Still other employers recognized the cost of postemployment benefits when they were paid (cash basis). Some employers may have used different methods of accounting for different types of benefits.

3.    The Board concluded that postemployment benefits are part of the compensation provided to an employee in exchange for service. FASB Statement No. 43, *Accounting for Compensated Absences*, addresses amounts paid to active employees while on a compensated absence, such as for vacation, occasional sick days, and holidays. Other long-term fringe benefits and postemployment benefits, however, are specifically excluded from the scope of that Statement. In addition, all employment-related costs are excluded from the scope of FASB Statement No. 5, *Accounting for Contingencies*. This Statement affirms the Board's view that generally accepted accounting principles require recognition of the cost of postemployment benefits on an accrual basis and amends Statements 5 and 43 to include the accounting for postemployment benefits. Therefore, Statement 43 will (a) continue to specify the accounting for amounts paid to active employees while on a compensated absence, such as for vacation, occasional sick days, and holidays, (b) continue to not address other long-term fringe benefits provided to active employees, and (c) specify the accounting for postemployment benefits provided to former or inactive employees prior to retirement that meet the conditions in paragraph 6, Statement 5 will specify the accounting for postemployment benefits that are not addressed by Statement 43 or by other FASB Statements or APB Opinions.

# STANDARDS OF FINANCIAL ACCOUNTING AND REPORTING

## Scope

4.    This Statement applies to all types of postemployment benefits provided to former or inactive employees, their beneficiaries, and covered dependents after employment but before

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution

retirement, except as noted in the following paragraph.  Benefits may be provided in cash or in kind and may be paid as a result of a disability, layoff, death, or other event.  Benefits may be paid immediately upon cessation of active employment or over a specified period of time. Employees' rights to benefits may accumulate or vest as they render service.

5.    This Statement does not apply to:

a.    Postemployment benefits provided through a pension or postretirement benefit plan (FASB Statements No. 87, *Employers' Accounting for Pensions*, No. 88, *Employers' Accounting for Settlements and Curtailments of Defined Benefit Pension Plans and for Termination Benefits*, and No. 106, *Employers' Accounting for Postretirement Benefits Other Than Pensions*, specify the accounting for those costs.)
b.    Individual deferred compensation arrangements that are addressed by APB Opinion No. 12, *Omnibus Opinion —1967*, as amended by Statement 106
c.    Special or contractual termination benefits covered by Statements 88 and 106
d.    Stock compensation plans that are addressed by APB Opinion No. 25, *Accounting for Stock Issued to Employees.*

## Accounting for Postemployment Benefits

6.    Postemployment benefits that meet the conditions in paragraph 6 of Statement 43 shall be accounted for in accordance with that Statement.  Paragraph 6 of Statement 43 states:

> An employer shall accrue a liability for employees' compensation for future absences if *all* of the following conditions are met:
>
> a.    The employer's obligation relating to employees' rights to receive compensation for future absences is attributable to employees'  services already rendered,
> b.    The obligation relates to rights that vest or accumulate,
> c.    Payment of the compensation is probable, and
> d.    The amount can be reasonably estimated.  [Footnote references omitted.]

Postemployment benefits that are within the scope of this Statement and that do not meet those conditions shall be accounted for in accordance with Statement  5.  Paragraph 8 of Statement 5 states:

> An estimated loss from a loss contingency (as defined in paragraph  1) shall be accrued by a charge to income if *both* of the following conditions are met:
>
> a.    Information available prior to issuance of the financial statements indicates that it is probable that an asset had been impaired or a liability had been incurred at the date of the financial statements.  It is implicit in this condition

Copyright © 1992, Financial Accounting Standards Board    Not for redistribution

that it must be probable that one or more future events will occur confirming the fact of the loss.

   b. The amount of loss can be reasonably estimated.   [Footnote references omitted.]

## Disclosures

7.    If an obligation for postemployment benefits is not accrued in accordance with Statements 5 or 43 only because the amount cannot be reasonably estimated, the financial statements shall disclose that fact.

## Amendments to Existing Pronouncements

8.    The following sentences are added to the end of paragraph 1 of Statement 43:

> This Statement also applies to all forms of postemployment benefits, as defined in FASB Statement No. 112, *Employers' Accounting for Postemployment Benefits,* that meet the conditions in paragraph 6 of this Statement, except as noted in the following paragraph. *Postemployment benefits that do not meet the conditions in paragraph 6 of this Statement shall be accounted for in accordance with FASB Statement No. 5, Accounting for Contingencies,* as amended by Statement 112. This Statement does not address the accounting for benefits paid to active employees other than compensated absences.

9.    The following paragraph replaces paragraph 2 of Statement 43:

> This Statement does not apply to:
>
> a. Postemployment benefits provided through a pension or postretirement benefit plan (FASB Statements No. 87, *Employers' Accounting for Pensions,* No. 88, *Employers' Accounting for Settlements and Curtailments of Defined Benefit Pension Plans and for Termination Benefits,* and No. 106, *Employers' Accounting for Postretirement Benefits Other Than Pensions,* specify the accounting for those costs.)
> b. Individual deferred compensation arrangements that are addressed by APB Opinion No. 12, *Omnibus Opinion—1967,* as amended by Statement 106
> c. Special or contractual termination benefits covered by Statements 88 and 106
> d. Stock compensation plans that are addressed by APB Opinion No. 25, *Accounting for Stock Issued to Employees.*
>
> This Statement does not address the allocation of costs of compensated absences to interim periods.   The cost of postemployment benefits as determined under this Statement that is directly related to the disposal of a segment of a business or a portion

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution

of a line of business shall be recognized pursuant to the requirements of APB Opinion No. 30, Reporting the Results of Operations—Reporting the Effects of Disposal of a Segment of a Business, and Extraordinary, Unusual and Infrequently Occurring Events and Transactions, and included in determining the gain or loss associated with that event.

10.   The last two sentences of paragraph 7 of Statement 5 are deleted and replaced by the following sentence:

> Accounting for other employment-related costs is also excluded from the scope of this Statement except for postemployment benefits that become subject to this Statement through application of FASB Statement No. 112, *Employers' Accounting for Postemployment Benefits.*

11.   In paragraph 8(a) of FASB Statement No. 107, *Disclosures about Fair Value of Financial Instruments, the words postemployment benefits,* are inserted after *other postretirement benefits including health care and life insurance benefits,* and No. 112, *Employers' Accounting for Postemployment Benefits,* is inserted after No. 106, *Employers' Accounting for Postretirement Benefits Other Than Pensions,* to exclude an employer's obligation for postemployment benefits from the requirements for disclosures about fair value.

**Effective Date and Transition**

12.   This Statement shall be effective for fiscal years beginning after December 15, 1993. Earlier application is encouraged.   The effect of initially applying this Statement shall be reported as the effect of a change in accounting principle in a manner similar to the cumulative effect of a change in accounting principle (APB Opinion No. 20, *Accounting Changes,* paragraph 20).   Pro forma effects of retroactive application (Opinion 20, paragraph 21) are not required. Previously issued financial statements shall not be restated.

---

**The provisions of this Statement
need not be applied to immaterial items.**

---

*This Statement was adopted by the unanimous vote of the seven members of the Financial Accounting Standards Board:*

Dennis R. Beresford, *Chairman*
Joseph V. Anania
Victor H. Brown
James J. Leisenring
Robert H. Northcutt
A. Clarence Sampson
Robert J. Swieringa

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution

**Appendix**

**BACKGROUND INFORMATION AND BASIS FOR CONCLUSIONS**

**CONTENTS**

Paragraph
Numbers

Introduction ............................................................................................................. 13–14
Background .............................................................................................................. 15
Applicability of Other Pronouncements................................................................. 16–23
Disclosures ............................................................................................................. 24
Effective Date and Transition................................................................................. 25

## Appendix: BACKGROUND INFORMATION AND BASIS FOR CONCLUSIONS

### Introduction

13.    This appendix summarizes considerations that were deemed significant by Board members in reaching the conclusions in this Statement. It discusses reasons for accepting certain views and rejecting others. Individual Board members gave greater weight to some factors than to others.

14.    The Board issued the Exposure Draft, Employers' *Accounting for Postemployment Benefits,* for public comment on May 12, 1992. Fifty-nine comment letters were received and most respondents agreed with the Board that the cost of postemployment benefits should be accounted for on an accrual basis. The Board concluded that it could reach an informed decision on the basis of existing information without a public hearing.

### Background

15.    The project on employers' accounting for pensions and other postemployment benefits was initially added to the Board's agenda in 1979. In 1984, the Board concluded that it should address employers' accounting for postemployment benefits other than pensions as a separate project. In 1987, the Board deferred consideration of issues relating to benefits provided after employment but before retirement to focus its resources on postretirement benefits other than pensions. The Board excluded postemployment benefits from the scope of Statement 106:

> The accounting for benefits paid after employment but before retirement (for example, layoff benefits) is a separate phase of the Board's project on accounting for postemployment benefits other than pensions. The fact that this Statement does not apply to those benefits should not be construed as discouraging the use of accrual accounting for those benefits. [footnote 2]

Consequently, accounting for postemployment benefits other than retirement benefits is the final phase of the Board's project on employers' accounting for pensions and other postemployment benefits.

### Applicability of Other Pronouncements

16.    Certain postemployment benefits are covered by existing Statements or Opinions. Accounting for deferred compensation contracts is covered by Opinion 12 (as amended by Statement 106). Accounting for contractual and special termination benefits is covered by

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution

Statements 88 and 106. Accounting for the disposal of a segment of a business is covered by Opinion 30. Accounting for benefits paid after retirement is covered by Statements 87, 88, and 106. This Statement does not change the accounting for those benefits.

17.     The Board considered whether guidance is needed in addressing employers' accounting for postemployment benefits. In the Board's view, Statements 5 and 43 specify appropriate accounting for postemployment benefits. However, postemployment benefits were specifically excluded from the scope of those Statements because at the time those Statements were issued the Board had a project on its agenda to address the accounting for pensions and other postemployment benefits. Since that time, the Board issued Statements that address postretirement benefits but none that address the accounting for postemployment benefits. The Board, therefore, concluded that it is appropriate to amend Statements 5 and 43 to include the accounting for postemployment benefits.

18.     Several respondents to the Exposure Draft commented that it would be inappropriate to account for postemployment benefits by applying the criteria in Statement 43. They stated that postemployment benefits generally do not vest and if postemployment benefits do not vest, an employer does not have an obligation to provide benefits until a future event occurs. The Board considered whether an employer's liability to provide nonvesting postemployment benefits arises only when a future event, such as termination or disability, occurs. If the rights to nonvesting postemployment benefits accumulate over the service period, then the event that creates a liability and affects the amount of benefits is the rendering of service by employees. If the payment of those benefits is probable and can be reasonably estimated, then the cost of those benefits should be recognized as they are earned by the employees. The Board concluded that if postemployment benefits meet the conditions in paragraph 6 of Statement 43, then the estimated cost of those benefits should be recognized in accordance with that Statement.

19.     Some respondents noted that Statement 43 does not require employers to accrue a liability for nonvesting accumulating rights to receive sick pay benefits and questioned whether that exception would apply to nonvesting accumulating rights to receive postemployment benefits. In developing Statement 43, the Board concluded that probable payments for accumulating sick pay benefits would rarely be material unless they vest or are paid without an illness-related absence. The Board also noted that the lower degree of reliability associated with estimates of future sick pay and the cost of making and evaluating those estimates did not justify a requirement for an accrual.

20.     Unlike nonvesting sick pay, nonvesting postemployment benefits may be material for certain employers, especially in certain industries, depending on many factors including, but not limited to, the duration of benefit payments and the incidence of events giving rise to the payment of benefits. In addition, the fact that there are employers currently accruing the estimated cost of those benefits, some over applicable employee service periods and others using a terminal accrual approach, suggests that sufficient information is available to many employers on which to develop a reliable estimate without significant cost. Accordingly, the Board

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution

concluded that the exception in Statement 43 should not be extended to postemployment benefits.

21.    If postemployment benefits do not meet the conditions in paragraph 6 of Statement 43, then employers should recognize the estimated cost of those benefits in accordance with Statement 5.  Statement 5 requires recognition of a loss contingency when it is probable that an asset has been impaired or a liability has been incurred and the amount of the loss can be reasonably estimated.  Paragraph 59 of Statement 5 further clarifies the recognition of loss contingencies:

> . . . even losses that are reasonably estimable should not be accrued if it is not probable that an asset has been impaired or a liability has been incurred at the date of an enterprise's financial statements because those losses relate to a future period rather than the current or a prior period.

22.    For example, an employer may provide any former employee on permanent disability with continued medical insurance coverage until that employee meets the requirements for participation in the employer's postretirement medical plan.  If the level of benefits provided is the same for any disabled employee regardless of years of service, the cost of those benefits should be recognized when the event causing a permanent disability occurs and a reasonable estimate can be made as specified by Statement 5.

23.    Several respondents requested that this Statement provide guidance on how to measure an employer's postemployment benefit obligation.  FASB Statements 87 and 106 discuss measurement issues extensively.  To the extent that similar issues apply to postemployment benefit plans, employers may refer to those Statements for guidance in measuring their obligations in compliance with the requirements of this Statement.  Respondents also asked the Board to provide explicit guidance on the applicability and use of discounting.  Statements 5 and 43 do not provide explicit guidance and readdressing those Statements is beyond the intended scope of this project.  In addition, discounting is being addressed in the Board's existing project on present-value-based measurements.  Accordingly, the Board decided not to provide explicit guidance on discounting in this Statement. As a result, the Board understands that the use of discounting in measuring postemployment benefit obligations will continue to be permitted but not required.

**Disclosures**

24.    Statements 5 and 43 require disclosure if it is probable that an obligation has been incurred but it cannot be reasonably estimated.  Statement 5 requires additional disclosures in other situations including when it is reasonably possible that a liability has been incurred.  The Board decided not to apply the additional Statement 5 disclosures to postemployment benefit obligations because it believes that the additional cost of compliance is not warranted.  Thus, this Statement requires disclosure only if an obligation for postemployment benefits is not accrued in

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution

accordance with Statements 5 or 43 solely because the amount cannot be reasonably estimated.

## Effective Date and Transition

25.    The effect of initially applying this Statement is to be reported as the effect of a change in accounting principle.  Some respondents recommended that an option be provided to recognize that effect over future periods.    The Board considered whether a provision for delayed recognition of the transition amount was needed.  A major objective of transition is to minimize implementation costs and mitigate disruption without unduly compromising the ability of financial statements to provide useful information.  An important factor considered by the Board was the potential magnitude of the unrecorded postemployment benefit obligation.  Information made available to the Board indicated that postemployment benefits are generally not as significant as pension or other postretirement benefits.  The Board concluded that a provision for delayed recognition was not needed to mitigate the financial statement impact of immediately recognizing the transition amount when this Statement is adopted.  That provision would have added unnecessary complexity to the application of this Statement, reduced financial statement comparability, and been inconsistent with Statements 5 and 43, which do not provide for delayed recognition at transition.

Copyright © 1992, Financial Accounting Standards Board

Not for redistribution

# EXHIBIT D

## NORTEL NETWORKS WELFARE BENEFITS PLAN

Notes to Financial Statements

December 31, 2010 and 2009

**(1)   The Plan**

**(a)   *Description of the Plan***

The following description of Nortel Networks (the Company or NNI) Welfare Benefits Plan (the Plan) provides only general information. Participants should refer to the Plan document for a more complete description of the Plan's provisions.

The Plan, established March 12, 1992, is a voluntary employee beneficiary association (VEBA) which qualifies under Section 501(c)(9) of the Internal Revenue Code of 1986 (the Code). The purpose of the Plan is to provide a funding vehicle for various health, life insurance and disability benefits to employees covered under any component plan, as defined in the Plan document. The Plan also provides funding for health benefits to certain retired employees. The amount of benefits payable to a participant is determined solely by the terms of each component of the Plan. The Company controls and manages the operation and administration of the Plan. Bank of America, N.A. (Trustee) serves as the trustee of the Plan. The Plan is subject to the requirements of the Employee Retirement Income Security Act of 1974, as amended (ERISA).

The Company has sole discretion in determining the amount and timing of employer contributions to the Plan. The Plan agreement provides that the Company has no obligation to make any minimum contribution and no obligation to make any contribution in any year, except for contributions necessary to enable the Plan to fund claims under the component programs of the VEBA that are incurred prior to the date of termination of the Plan. An employee may contribute specified amounts for coverage under components of the Plan, while no employee contributions are made under other components of the Plan. The components referred to above are all within the VEBA.

The Company established the Plan with the intention and expectation it would be continued indefinitely, however the Company has no obligation to maintain the Plan for any given length of time. The plan is currently funded through a VEBA Trust. The nature of the Plan allows the Company the ability to terminate the VEBA Trust for payment operations, without incurring any additional liability.

Upon a decision to terminate the VEBA Trust, the affairs of the VEBA Trust shall be wound up as soon as may be reasonably practicable. The VEBA Trust, including the liquidation proceeds of the VEBA Trust, shall be paid out and distributed by the Trustee in the following order unless a judgment or decree of a court of competent jurisdiction or any applicable law shall mandate a contrary application:

- First, to the payment of all reasonable and necessary expenses of managing and administering the Plan to the extent that the Company does not pay the expenses;

- Second, to the payment of benefits to eligible employees and their eligible qualified dependents that are payable from the Plan as the Company shall direct the Trustee in writing; and

6                                                                              (Continued)

NNI-LTD-00002889

# EXHIBIT E



## Allsup Inc.

**Social Security Innovations**

*Serving the Nation*
*Since 1984*

December 27, 2005

MR. JERRY L. WADLOW
14377 COUNTY ROAD 1550
ADA OK 74820

Dear Mr. Wadlow:

I am pleased that your Social Security disability claim has been successfully resolved.

If you have not already, you should soon be receiving a notice from Social Security giving detailed information about your benefits. At the same time or even before you receive the written notice, your Social Security benefit should be direct deposited in your bank account. Please leave these funds in this account for overpayment resolution.

Please forward a copy of that Notice of Award/Award Certificate as soon as it is received so that I can review the accuracy of the information it contains and assist with resolving any discrepancies. We will notify your disability plan administrator that your Social Security claim was approved. We will also inform them as to the amount of your retroactive benefits, your future monthly payment from Social Security, and your Medicare entitlement date.

If you have any questions regarding your Social Security claim, please do not hesitate to contact our Customer Information Center at (800) 560-1410. Also, please be sure to read the other enclosed letter that contains additional information you need to be aware of.

Sincerely,

Loretta Muckensturm
Claimant Representative

vap

# EXHIBIT F

# Social Security Administration
## Retirement, Survivors and Disability Insurance
Important Information

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date: January 31, 2006
Claim Number: ▇▇▇-7913HA

0124 T2R M04,PC7,I,BA,T153,
JERRY L WADLOW
13477 COUNTY RD 1550
ADA OK 74820-0866

00E042691 01 AB    0.317



As you requested, beginning January 2006 any Social Security payments will be sent to the financial institution you selected. In order for us to send letters to you, please let us know if your mailing address changes.

## What We Will Pay And When

- You will receive $1,692.00 for January 2006 around February 15, 2006.

- After that you will receive $1,692.00 on or about the third Wednesday of each month.

## If You Change Your Account

Please tell us if you change the financial institution or account where your payments are going. Also, you should keep the old account open until the first benefit payment is credited to your new account. It usually takes 1 to 2 months to process the change.

## If You Have Any Questions

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-580-332-8307. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
921 LONNIE ABBOTT BLVD
ADA, OK 74820

C

See Next Page

# EXHIBIT G

**HOMELAND** ®PHARMACY

**WA** You Pay: $25.00

NEW RX          1 of 2
                *Waiting*
                FRI 3:33 PM

R
E
C
E
I
P
T

RX# 2213844
WADLOW, JERRY

DOB: 04/11/1961
6640 E W 132 RD
WEWOKA, OK 74884

PT PHONE: (405) 592-9315

MEDCO HEALTH
Auth: YHHNCKX..
Filled: 10/12/12    Ins Amt: $2382.26
OXYCONTIN 80MG TB12
NDC#59011-0480-10    Mfg:PURDUE PHARMA L.P.
Qty: 180    Days Supply: 30
DR. JEFFREY WASSERMAN

---

**HOMELAND** ®PHARMACY

**WA** You Pay: $25.00

NEW RX          1 of 2
                *Waiting*
                FRI 3:33 PM

CSR

RX# 2213844
WADLOW, JERRY

DOB: 04/11/1961
6640 E W 132 RD
WEWOKA, OK 74884

PT PHONE: (405) 592-9315

MEDCO HEALTH
Auth: YHHNCKX..
Filled: 10/12/12    Ins Amt: $2382.26
OXYCONTIN 80MG TB12
NDC#59011-0480-10    Mfg:PURDUE PHARMA L
Qty: 180    Days Supply: 30
DR. JEFFREY WASSERMAN



# EXHIBIT H

Note to financial institutions: This electronic representation of Jerry L. Wadlow's paycheck was provided from NORTEL NETWORKS, INC.'s ProBusiness Payroll WorkCenter system on 3/23/2007.

Done

# NORTEL

11/12/04                     D671787

4001 E. Chapel Hill-Nelson Hwy Mailstop 570/02/0B7
Research Triangle Park NC 27709-3010

**ADVICE OF DEPOSIT**                                      $1,853.39

JERRY L. WADLOW
800 W RENNER RD
APT 1114
RICHARDSON, TX 75080                      **NON-NEGOTIABLE**

| Employee JERRY L. WADLOW | Id 534966 | Social Security ▓7913 | Status US-S / TX-M | Exemptions / Allowances US-1/0 TX-7/0 | Number D671787 |
|---|---|---|---|---|---|

| Code NN-US | Paygroup 2RI | | Division 540 | Department 6193 | Hire Date | Period Start 11/01/04 | Period.End 11/14/04 | Pay Date 11/12/04 |
|---|---|---|---|---|---|---|---|---|

| Earnings | Rate | Units | Current | YTD | Direct Deposit Accounts | | | Amount |
|---|---|---|---|---|---|---|---|---|
| Regular Pay | 33.9803 | - | - | 53621.41 | Savings - 13727913000 | | | 150.00 |
| Holiday Pay | - | - | - | 791.77 | Checking - 004795218792 | | | 1703.39 |
| Short Term Disability 100% | 33.9803 | 72.00 | 2446.58 | 8155.27 | | | Current | YTD |
| Short Term Disability 90% | 33.9803 | 8.00 | 244.66 | 244.66 | W2 Gross Wages | | 2563.86 | 61693.82 |
| SUCCESS | - | - | - | 3122.00 | | | | |
| Group Term Life > $50000 | - | - | 0.88 | 20.24 | | | | |
| Total Gross | | | 2692.12 | 65955.35 | | | | |

| Taxes | | |
|---|---|---|
| Federal Income Tax | 463.63 | 9815.92 |
| Social Security (FICA) | 163.97 | 4021.47 |
| Federal Medicare | 38.34 | 940.50 |
| Total | 665.94 | 14777.89 |

| PreTax Deductions | | |
|---|---|---|
| 401K Matched-Option B | 80.74 | 3059.83 |
| Pretax Medical Plan | 32.98 | 758.54 |
| Pretax DVH Plan | 3.72 | 85.56 |
| Pretax STD | 6.07 | 139.61 |
| Pretax LTD | 4.75 | 109.25 |
| 401K Unmatched | - | 108.74 |
| Total | 128.26 | 4261.53 |

| AfterTax Deductions | | |
|---|---|---|
| Voluntary AD&D | 1.43 | 32.89 |
| Life Insurance | 6.37 | 146.51 |
| 401K Loan | 35.85 | 466.05 |
| Group Term Life Offset | 0.88 | 20.24 |
| Total | 44.53 | 665.69 |

| Net Pay | 1853.39 |
|---|---|

NORTEL NETWORKS, INC. - 4001 E. Chapel Hill-Nelson Hwy Research Triangle Park, NC 27709

# EXHIBIT I

Copy C For EMPLOYEE'S RECORDS (See Notice on back.)

OMB No. 1545-0008

| c Employer's name, address, and ZIP code | | 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|---|---|
| PRUDENTIAL INSURANCE CO OF AMERICA PO BOX 481 LIVINGSTON NJ 07039 | | 37,106.46 | 5,747.85 |
| | | 3 Social security wages | 4 Social security tax withheld |
| | | 5 Medicare wages and tips | 6 Medicare tax withheld |

| a Control number | b Employer's ID number | d Employee's social security number | 7 Social security tips |
|---|---|---|---|
| 39900 | 22-1211670 | 7913 | |

| e Employee's name, address, and ZIP code | 12 See instrs. for box 12 |
|---|---|
| JERRY L WADLOW 13477 COUNTY ROAD 1550 ADA OK 74820 | |
| | 14 Other |

| 8 Allocated tips | 9 Advance EIC payment | 10 Dependent care benefits |
|---|---|---|
| 13 Statutory employee ☐ | | 11 Nonqualified plans |
| Retirement plan ☐ | 15 State Employer's state I.D. # | 16 State wages, tips, etc. | 17 State income tax |
| Third-party sick pay [X] | | | |

| Customer service phone # | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|
| 1-866-648-2225 | | | |

Form W-2 Wage and Tax Statement **2005**    This information is being furnished to the Internal Revenue Service.

If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

Dept. of the Treasury – Internal Revenue Service

1101633    0387642    PAGE 2 OF 3

# EXHIBIT J

Prudential Insurance Company of America                    Explanation of Benefit    L (2 of 2)
Disability Claim Services Provider

**DISABILITY MANAGEMENT SERVICES**
PO BOX 13480
PHILADELPHIA                    PA    19176
800-842-1718

If you have any
questions about
this claim, please
contact

Date
**September 24, 2012**

BENEFITS ADMINISTRATOR
NORTEL NETWORKS, INC.
GES DISB PRIME - MS 570/02/0C2
PO BOX 13010
RESEARCH TRIANGLE PARK    NC    27709-3010

| | |
|---|---|
| CNTRL# | **0039900** |
| CLAIM# | **10710306** |
| ID# | **XXX-XX-7913** |

CLAIMANT    JERRY L WADLOW

| DESCRIPTION | AMOUNT | FROM | TO |
|---|---|---|---|
| LTD Claim Benefits | 4,122.94 | 09/01/2012 | 09/30/2012 |
| - SSDB | 1,526.10 | BENEFIT AMOUNT | 4,122.94 |
| - Voluntary FIT | 139.75 | LESS OFFSET | 1,526.10 |
| - Medical | 90.74 | ADD'L BENEFITS | 0.00 |
| - Dental | 23.68 | | 2,596.84 |
| - Mandatory FIT W4 | 278.90 | LESS ADJUSTMENTS | 0.00 |
| | | | 2,596.84 |
| | | LESS DEDUCTIONS | 533.07 |
| | | AMOUNT PAYABLE | 2,063.77 |

For claim or payment status, call 800-842-1718 and follow the prompts or visit
us on the web at www.Prudential.com/mybenefits and select the online option.

Date:  **September 24, 2012**

Deposit Amount:    $2,063.77

| Direct Deposit Distribution | | |
|---|---|---|
| Account Type | Account Number | Deposit Amount |
| Checking | XX2085 | $2,063.77 |

To the
Accounts
of

JERRY WADLOW
PO BOX 79
WEWOKA                    OK    74884

**This is not a Check**                                        **Not Negotiable**