IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Nortel Networks Inc., *et al.*,[1] | ) Case No. 09-10138 (KG) |
| | ) |
| Debtors. | ) Jointly Administrated |
| | ) |
| | ) Objection Deadline: Oct. 22, 2012 at 10 a.m. |
| | ) Hearing Date:       Feb. 12, 2013 at 10 a.m. |
| | RE:                  D.I. # 8067 |

## OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

CYNTHIA ANN SCHMIDT, (the LTD employee) of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this Objection to Debtors' Motion for entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees. In support of this Objection, CYNTHIA ANN SCHMIDT respectfully represents as follows:

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## BACKGROUND

1. After having had my own network consulting business for many years, I joined Nortel Networks in late 1999 as an employee in the role of Network Engineer. This was in response to intense recruiting efforts by the new Nortel Global Professional Services group to obtain highly skilled Network Engineers from Silicon Valley. One of my reasons for taking the job was the appeal and security of an extensive benefits package. I signed up for, and paid for, health coverage, life insurance, disability insurance, 401k and was also advised of a further benefit – a deferred compensation package – to be offered the following year (2000), which I also took. In exchange for these benefits and my salary, I and my small group worked very long hours and earned revenues for Nortel in the tens of millions per year in intellectual property (patents), network designs and equipment sales. We added extensively to the value of the Company - to the very funds that are now being apportioned to creditors.

2. In 2001, after some months of failing health, I was diagnosed with Systemic Lupus Erythematosus (SLE), or Lupus, and a number of conditions secondary to it. Lupus is an incurable autoimmune disease that is both systemic and randomly organ-specific. The disease progressed very quickly and I was diagnosed by separate independent institutions with progressive organic brain damage secondary to the Lupus. This disease also has rendered me bed-ridden and unable to use my extremities for most normal tasks due to peripheral nerve damage. The Social Security Administration declared me unable to perform any job function and awarded my disability claim promptly. I went on Nortel LTD in 2001 after the mandatory STD (short-term

disability) period. I was subsequently determined by several medical facilities, and on a continuing basis to the present, to be *permanently totally disabled.*

3. Sometime before the 2009 Nortel Bankruptcy announcement, I read that Nortel may be facing dissolution and I called Nortel to inquire about the fate of my Long Term Disability insurance. I was told, by the Nortel Human Resources representative who answered, that **my LTD claim was already fully funded and could not be affected.** I believed this because that is the way insurance policies work, and I did not, therefore, become alarmed about the possible dis-continuation of my disability benefits. My understanding was that Nortel had a fiduciary responsibility to provide adequate funds for all currently disabled LTD Plan participants regardless of the fate of the company. That was clearly the understanding of the HR representative too [Call logs for this call are under request].

4. Without the Nortel LTD, I would lose everything – my house, most of my medical treatments, and the ability to hire people to assist me in daily living. It is actually unthinkable that this could have happened. I consider it to be unconscionable on the part of the Company to offer the promise implied in an insurance policy and then reneg on that promise, to their own financial benefit, without regard to the catastrophic effect that this has on the relatively small number of affected people – about 240 LTDers.

5. There are no other claimants in this bankruptcy case for whom the *loss of their claim could entail loss of life.* How can this not give one pause, Judge Gross? How can Nortel have even gotten this far with their motion to terminate our disability insurance policy?

## RELIEF REQUESTED

6. I respectfully request that the Debtor's 'Motion to Terminate the LTD Plans and LTD Employees [DI#8067]' be *rejected.*

7. I request the Debtors compensate me in full for my LTD insurance benefits to age 65 that Nortel became liable for once I became contractually 'Totally Disabled'. The present value of my claim for benefits extended to age 65 is **$949,198.86.**
   **[See Exhibit P** – Proof of Claim.]

8. I request that there be no interruption in payment of LTD benefits (or compensation for same) to CYNTHIA ANN SCHMIDT.

## BASIS FOR RELIEF

9. The Debtor's Motion to Terminate LTD Benefits (D.I. #8067) states that the *'LTD Plans are terminable at will by the Debtors'*. However, according to 'the LTD Plan' documents, this is clearly not true. Let me explain:

   In 2001, having only a Summary Plan Document binder (SPD) from the year 2000 when I joined Nortel and first initiated LTD coverage, I wrote a letter to the Plan Administrator asking for a full copy of 'the LTD Plan', as is my right under ERISA. The response from Debbie Lorimer, North American Benefits is included in full as **Exhibit A**. This excerpt from her letter shows that there is no 'the LTD Plan' other than what is included in my Summary Plan Document (SPD 2000): *"Although you may notice in the binder that it makes reference to certain plan documents contained in the binder being summary documents, that statement does not apply to all plan documents contained in the binder.* ***The documents that are enclosed for short- and long-term disability do in fact constitute the full plan documents for both benefit programs.***  *"* [See **Exhibit A** – Letter from Debbie Lorimer on 'the LTD Plan']

10. Therefore, the "LTD Plan' that the Debtor claims 'is terminable at will' is none other than 'the LTD Plan' described in my SPD 2000 (see Exhibit Q for the full SPD 2000). They are one and the same. Henceforth, when I refer to 'the LTD Plan', I will be intending my SPD 2000 binder, the one Ms. Lorimer affirmed to be the 'LTD Plan'.

11. Now that it is established what the 'LTD Plan' is, note that in this LTD Plan there are only two things that can be 'terminated':

One is *'Coverage'*, which can be terminated under 4 conditions listed in the LTD Plan:

[**See Exhibit B** - 'When Coverage Ends' – excerpt from SPD 2000, page 22.]

The other is *'LTD Benefits'* which can only be terminated according to 5 conditions that nullify the existing disability insurance contract; these are also listed in the LTD Plan:

[**See Exhibit C** – 'When Benefits Begin and End' excerpt from SPD 2000, page 15.]

1. *LTD 'Coverage'* simply refers to the status in which an employee has elected, and paid for, a specific LTD Plan, i.e. is 'covered' by it, but has not yet activated benefits by becoming disabled. In that status, the company certainly can change or end the coverage as described in Exhibit B mentioned above, and alluded to repeatedly by the Debtor in a misleading way, because LTD 'coverage' and LTD 'benefits' are not the same:

2. When an employee's status becomes 'Totally Disabled' by the definition of the LTD Plan, LTD 'Coverage' is converted to *LTD '**Benefits**'* and those benefits are governed by the requirements of a standard industry disability insurance contract administered through Prudential Insurance Company of America.

    [ **See Exhibit D** – 'Definition of Disability' excerpt from SPD 2000, page 14]

    [ **See Exhibit E** – LTD insurance contract award letter from Prudential Insurance Company of America]

When the LTD Plan is only in 'coverage' stage and has not been activated by becoming 'Totally Disabled', it may be terminable at will. However, once 'Totally Disabled' and entered into a formal disability insurance contract with Prudential Insurance Company, the terms of the insurance contract govern termination and, as in any insurance contract, *there can be no termination at will*. In fact, in my case, according to the LTD Plan itself, my benefits cannot be terminated until age 65 as long as I fulfill the contractual requirements listed in my insurance contract [already given as Exhibit E.]

[ **See Exhibit F** – 'Maximum Benefit Period' excerpt from SPD 2000, page 16]

12. Once an employee's Total Disability is accepted by Prudential ( Nortel's disability insurance agent), that insurance contract governs the fate of benefits, not the fate of the company through bankruptcy or other business failings. Rather, it can be assumed by any reasonable person that a disability insurance claim is *fully funded* for all the employees currently on LTD at any given time. Nortel is under a fiduciary responsibility to provide adequate funding to pay claims for presently disabled LTD plan beneficiaries like myself, even if Nortel may be authorized to end 'coverage' and terminate the Plan at will for those employees who are 'Covered' but not 'Totally Disabled'. This obligation is the same whether Nortel is self-funded or not. In further support of this, I repeat point #3 above:

Sometime before the 2009 Nortel Bankruptcy announcement, I read that Nortel may be facing dissolution and I called Nortel to inquire about the fate of my Long Term Disability insurance. I was told, by the Nortel Human Resources representative who answered, that *my LTD claim was already fully funded and could not be affected.* I believed this because that is the way insurance policies work, and I did not, therefore, become alarmed about the possible dis-continuation of my disability benefits. My understanding was that Nortel had a fiduciary responsibility to provide adequately funds for all currently disabled LTD Plan participants so that benefits would continue according to the insurance contract regardless of the fate of the company. That was clearly the understanding of the HR representative too.

[ **See Exhibit G:** Call logs for this call, with times and names, are under request to Debtor and will be produced at a later time].

13. Nortel has represented the LTD disability plan as an insurance policy in a variety of ways: verbally through multiple conversations with the Human Resources Department and conversations with Prudential Claim Managers, with written confirmation of these verbal conversations. As recently as October 10, 2012 – less than a week ago – my Prudential Claim Manager, Sofie Costanze, sent me a letter reaffirming the contractual nature of my disability insurance policy, stating that my benefits would continue until 2021 (age 65): *'your benefits will continue through April 18, 2021 provided you remain totally disabled and continue to meet all other contractual requirements. '.* [**See Exhibit H:** Letter from Prudential Claim Manager affirming disability benefits until age 65.]

14. In addition to all of the above, there is a marked *'preponderance of clear and direct evidence'* that the LTD disability benefits are a standard insurance policy, meaning that the policy cannot be terminated at will. There is a multitude of documents received regularly that reference 'insurance' or 'group insurance', or 'disability contractual requirements':

- One of the first documents that Prudential sends to a 'Totally Disabled' claimant is a contract to reimburse to them any Social Security payments. The first line is: '*As an employee **insured under Group Plan #39900**...*'. How could a reasonable person not know that they are insured from such repeated language and intent?
[See **Exhibit I** – Prudential Reimbursement Agreement]

- Also in the beginning, Prudential has one sign a 'Medical Authorization' to release medical records, and a 'Tax Notice' for FIT withholding. The top of the form says 'Group Disability Insurance'. The mere fact that Prudential Insurance itself is paying benefits and withholding taxes implies that they are the insurer, even if Nortel was, in fact, self-insured.
[See **Exhibit J** – Group Disability Insurance Medical Authorization and Tax Notice.]

- Periodic requests for medical records confirming 'Total Disability' are sent by 'Prudential Insurance Company of America' in the standard fashion of all disability insurance policies. Here are examples of the last two that I received and complied with fully and in a timely manner. [See **Exhibit K**]

- The form that the physician has to fill out is called '*Prudential Financial Group Disability Insurance Attending Physician's Statement.*' This again clearly indicates a 'Group Disability Insurance' policy. **[See Exhibit L]**

- The monthly 'Explanation of Benefit' from Prudential *Insurance* Company shows the Group Policy Number and disability benefits. **[See Exhibit M]**

- On the IRS W2 form, the Employer's name is stated as *Prudential Insurance Company of America Group Insurance.* Note that this indicates to me that my income is coming from the Prudential Insurance Company and not Nortel, indicating again that the disability benefits are already fully funded and are not affected by the dissolution of the company, as was also told me by the Nortel Human Resources representative referenced in point 12.
  **[ See Exhibit N** - IRS W2 form with Employer's name stated as *Prudential Insurance Company of America Group Insurance*]

15. The Debtor states that it must terminate the LTD Plan benefits *'to preserve and maximize the value of the Debtors' estates'* [ref. page 25 of Debtor's Motion]. By attempting to avoid the payout of an insurance benefit to a paid-up beneficiary who meets all requirements of the insurance contract, Nortel may be falling under the onus of both 'unjust enrichment' and 'promissory estoppel' by, respectively, taking insurance premiums without providing the benefit, and, promising a contractual benefit and then refusing to provide it.

16. For the purposes of showing possible *patterns* of 'unjust enrichment', 'promissory estoppel' and a 'buyer beware' attitude in offering benefits, I refer to another of the Debtor's ongoing actions in which I am a participant:

    [**See Exhibit O** Letter to Judge Gross on D.I. 4638 'Deferred Compensation Plan]

    Here we see a instance where I was invited by Nortel to place a portion of my own salary in a 'Deferred Compensation' retirement account – a new benefit the company was eager to offer me in 2000. The Debtor has now seized these accounts, *which are comprised solely of my own personal monies, my salary.* Nortel here again seems to demonstrate 'unjust enrichment'. I submit that this displays either a *pattern of unjust enrichment* or a *pattern of poor fiduciary responsibility* by not informing employees of risks in corporate plans offered. Benefits offered by a company to its employees as incentives cannot be on the basis of *'buyer beware'*.

    Either way - whatever the motive - I ask the court for relief from the consequences of Nortel actions that are either intentionally deceptive or tragically irresponsible under ERISA fiduciary responsibility guidelines.

17. Nortel promised disability benefits to me and I have relied on these benefits to exist. I have fulfilled all of the contractual obligations of the disability insurance policy that are required for maintaining my insurance – proof of total disability, medical exams, doctor reports etc – and sometimes at great cost. As Prudential states in the letter in Exhibit E, as long as I do this, my benefits will continue until age 65. This is a promise that is *entirely contractual in nature* and obligated to be kept, regardless of Nortel's bankruptcy status.

## **EXHIBITS**

A – Letter from Debbie Lorimer on 'the LTD Plan', stating that it is the same as the SPD 2000

B – 'When Coverage Ends' – excerpt from SPD 2000, page 22

C – 'When Benefits Begin and End' excerpt from SPD 2000, page 15

D – 'Definition of Disability' excerpt from SPD 2000, page 14

E – LTD insurance contract award letter from Prudential Insurance Company

F – 'Maximum Benefit Period' excerpt from SPD 2000, page 16

G – Call logs for calls to Human Resources, with times and names, are under request to Debtor and will be produced at a later time

H – Letter from Prudential Claim Manager affirming disability benefits until age 65

I – Prudential Reimbursement Agreement

J – Group Disability Insurance Medical Authorization and Tax Notice

K – Periodic requests from Prudential Insurance for medical records confirming 'Total Disability'

L – Prudential Financial *Group Disability Insurance* Attending Physician's Statement

M – Monthly 'Explanation of Benefit' from Prudential *Insurance* Company

N – IRS W2 form with Employer's name stated as *Prudential Insurance Company of America Group Insurance.*

O – Letter to Judge Gross on D.I. 4638 'Deferred Compensation Plan

P – Proof of Claim

Q – Year 2000 LTD Summary Plan Description (SPD)

---

## NOTICE

1. Notice of this Objection has been provided to (a) counsel to the Debtors (Cleary); (b) the United States Trustee for the District of Delaware; and (c) counsel to the LTD 1102 Committee (Elliott Greenleaf) via first class mail. Other parties will receive notice through the Court's electronic filing system. CYNTHIA ANN SCHMIDT respectfully submits that, given the nature of the relief requested, no other notice of the relief requested herein need to be given.

**WHEREFORE**, CYNTHIA ANN SCHMIDT respectfully requests the entry of an Order, in the form attached:

1. **Reject** the Debtors motion to Terminate the LTD Plans and LTD Employees [DI#8067].

2. Compel the Debtors to compensate CYNTHIA ANN SCHMIDT in full for LTD benefits projected to age 65; Total Claim being **$949,198.86.**

3. Order that there is no interruption in disbursement of LTD benefit (or compensation for same) to CYNTHIA ANN SCHMIDT.

Dated: October 16, 2012

*[signature]*
Cynthia Ann Schmidt
P.O. Box 119
Oregon House, CA 95962
Telephone: 530-692-1299
Facsimile: N/A
Email: cschmidt@lostsierra.com

*Appearing Pro Se*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Re: Docket No. 8067** |

## ORDER GRANTING OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

Upon consideration of the Objection to entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees (the "Objection") and any responses thereto; and it appearing that sufficient notice of the Objection has been given; and in good cause having been shown, it is hereby

ORDERED that the Objection is granted.

Dated: _____, 2013
    Wilmington, Delaware

                                    _____
                                    HONORABLE KEVIN GROSS
                                    CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.