## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
|  | ) |  |
| Debtors. | ) | Jointly Administrated |
|  | ) |  |
|  | ) | **Objection Deadline:** Oct. 22, 2012 at 10 a.m |
|  | ) | **Hearing Date:**  Feb. 12, 2013 at 10 a.m. |
|  | ) | **RE:**  D.I. #8067 |

## OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENTOF THE LTD EMPLOYEES

Michael Stutts, a disabled participant in the Debtors' LTD plan (the "LTD Employee"), hereby submits this Objection to Debtors' Motion for entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees (the "Objection"). In support of this Objection, the LTD Employee respectfully represents as follows:

### BACKGROUND

1.     The LTD Employee was hired fresh out of school in 1987. The LTD Employee held increasingly responsible positions in several Debtor marketing organizations within multiple technologies and business units in North Carolina and Texas.

---

[1]   The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

2.      The LTD Employee paid insurance premiums including premiums for greater long-term disability benefits should the unthinkable happen.

3.      The LTD Employee was a Director in one of the Debtors' contracts management shops on October 29, 2000 when the unthinkable happened.  A motor vehicle accident while on a fossil hunting trip with his children left the LTD Employee without the use of his arms and legs when he woke in the hospital 2 months later.

4.      The LTD Employee moved into long-term disability status April 29, 2001 after six months for short-term disability status.

5.      The Prudential Insurance Company of America – Disability Management Services, Debtors' agent, confirmed the LTD Employee met the requirements for eligibility for LTD benefits and was totally disabled.  See last paragraph, page 1 of the letter dated 2/4/2002 (Exhibit K).

6.      Between thirty and forty surgeries and twelve years later, the LTD Employee is 53 years old and has multiple severe, permanent and obvious physical disabilities by federal standards. Physical disabilities include: a) left leg above knee amputee with prosthesis; b) non-functioning right hand: nonunion and failed hardware; and c) nerve damage in all extremities: no functioning opposable thumbs, significantly reduced fine motor skills, significantly decreased to zero sensation in all extremities.  The children are scarred but thriving.

7.      Debtors' disability management vendor, Prudential, validates the LTD Employee's disability status from time to time in accordance with their standard practices with Comprehensive Claimant Statements and Attending Physician's Statements.

8.      As the Court is aware, on July 30, the Debtors filed a motion with the Court seeking termination of the benefit plans provided to long-term disabled employees and

2

termination of the employment of the remaining long-term disabled employees.

9.     The LTD Employee is a current appointee to the Long Term Disability Committee entering a personal objection.

## RELIEF REQUESTED

10.     The LTD Employee respectfully requests that the Court deny Debtors' Motion for entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees until the LTD Employee reaches 65.  Alternatively, the LTD Employee respectfully requests that the Court compel Debtors to compensate the LTD Employee for the present value of the LTD Employee's future benefits, discounted at a rate of 3% per year.  Such compensation shall include consideration for LTD income benefits, medical/dental/life/AD&D insurance, 401k contribution and severance.

## BASIS FOR RELIEF

11.     The Debtors provided 60% of income replacement coverage.  The LTD Employee paid premiums to increase the benefit to 70% of base salary. The attached 2011 Benefits Confirmation Statement indicates pre-disability coverage selections (Exhibit J).

12.     The Prudential letter referenced above states "We have determined you are totally disabled as required. Benefits will continue provided that you remain totally disabled under the terms of the Nortel Networks Group LTD Plan" (last paragraph, page 1, Exhibit K).

13.     The Debtors' disclaimers in many of the LTD documents state that they can modify and terminate LTD benefits as the Debtors deem appropriate.  That may be a reasonable position for benefits changes that predate an employee attaining LTD status.  Prior to the Debtors' first motion to terminate LTD benefits on June 21, 2010 (later withdrawn), few

3

probably ever contemplated that the disclaimers could mean terminating benefits that had initiated prior to the applicable benefit change. The Debtors' language does not state that the Debtor can turn back the hands of time and undo a commitment to their end of a bargain that was effectively agreed to with the LTD Employee on 4/29/2001 – LTD initiated.

14.    The Debtors tacitly admit as much by their historical implementations of benefit changes that may have had a negative impact on then current recipients. It was common practice to modify the terms of the benefit plans for future claims. Termination of LTD COLAs and percent of base salary payout for LTD income are two such well-known changes. These were not applied to employees with LTD status that predated the change(s) in LTD plans.

15.    The Debtors' always represented that the LTD benefits would continue until the LTD Employee reached age 65, prior to the Debtors' first motion to terminate LTD benefits. The possibility that benefit changes or termination would be applied to LTD benefits that initiated before such a change or termination seemed even more remote when considered with some of the documents examined below.

16.    The LTD summary plan description (SPD) in place for an LTD employee whose LTD status began 4/29/2001 is Plan Year 2000, Pub. 6/2000 (Exhibit A). Pages numbered 15 and 16 of the Short-Term and Long-Term Disability Plan section (NNI-LTD-00004717 & 4718) address when benefits end. Benefits end when total disability ends which happens when the first of the following occurs: 1.) You stop being totally disabled or die. 2) You are able to return to work at any reasonable occupation. 3.) You are no longer under the care of a Physician. 4.) You fail to furnish proof of your total disability or refuse to be examined by a physician designated by the plan. 5.) You reach the end of the maximum benefit period. LTD benefits will continue no longer than to age 65 if your disability began under age 60.

4

17.    The disclaimer language below from page 23 of the SPD Administrative

Information section (NNI-LTD-00004781) is silent on plan changes and terminations with

respect to employees with LTD status that predates a plan change or termination:

PLAN DOCUMENTS

"In accordance with the disclosure requirements of ERISA, this guide serves as a
summary plan description of all the Company's employee benefit plans. As such, this
information is a summary of your benefit plans; it does not replace the official plan documents or
insurance contracts, which govern in all cases."

FUTURE OF THE PLANS

"Although the benefits currently available are described here, the Company reserves the
right to change or end the plans at any time. Any plan changes will result from actions taken and
approved by the Company. The Company's decision to change or end the plans may be due to
changes in federal or state laws governing welfare benefits, the requirements of the Internal
Revenue Service Code or ERISA, the provisions of a contract or a policy involving an insurance
company, or any other reason.

The Company's practices, policies and benefits are outlined here for your information as
required by law. However, this is not a legal document and does not constitute an implied or
expressed contract or guarantee of employment."

18.    NOTE: The Administrative Information section was intended to apply to all

benefit sections (Medical Plan; Dental, Vision and Hearing Plan; Health Care and Dependent

Day Care Reimbursement Account Plan; Short-Term and Long-Term Disability Plan; Life

Insurance and AD&D Insurance Plan; plus other sections updated in other years).

19.    The SPD references a controlling "plan" document in the event of conflicting

terms: Exhibit A, FLEX Overview section, page1, paragraph 5 (NNI-LTD-00004561) and the

Short-Term and Long-Term Disability Plan section INTRODUCTION, page 1, paragraph 3,

(NNI-LTD-00004703).

20.    The SPD merely supplements and does not contradict the next older plan

5

document. The 1992 WEEKLY DISABILITY AND LONG TERM DISABILITY PLAN

(Exhibit B) does not purport to be a summary. This document could be construed as the

document referenced as the controlling document in the SPD. The LTD section begins on page 7

(Exhibit B, NNI-LTD-000012). The plan's Plan Changes and Termination language is on page

number 17, (NNI-LTD-000022):

"Plan Changes and Termination
The Company expects to continue this Plan, but necessarily reserves the right to amend
this Plan from time to time or terminate this Plan at any time. Any amendment to this Plan may
reduce or eliminate benefits payable under the Plan to persons who are Employees as of the
effective date of the amendment."

21.    The cover page of the 1992 LONG-TERM INVESTMENT PLAN is attached

(Exhibit C) to support the dating of the 1992 WEEKLY DISABILITY AND LONG TERM

DISABILITY PLAN whose date has been obscured through years of poor duplicating. The two

documents share the same cover art, a common practice for Debtor documents published

contemporaneously.

22.    The Debtors mailed a Personalized 3D Rewards Statement to the LTD Employee

in the late 1990s under signature of the CEO (Exhibit D). "The statement details the financial

benefits accrued to you as of May 1,1998." is printed three quarters of the way down page

number 3.

23.    The language and general tenor of the document would cause any reasonable

person to rely on the words and not seek out alternate coverage because they believed it was the

intent of the Debtors' to take care of the employee as outlined in the 3D Rewards Statement.

The 3D Rewards Statement was even more believable because it mirrored the benefits offered in

the LTD SPD and other plan documents.

The 3D Rewards Statement goes further:

6

- Page 9, 2nd paragraph: "A commitment to conducting business honestly and ethically is the fundamental underpinning of our relationship with employees…"

- Page 14, 1st paragraph: "The following summarizes your FLEX coverage and government benefits under programs designed to provide income protection should illness or injury prevent you from working." The Highlights box at the bottom of the page states "as long as your disability continues up to age 65". There is nothing ambiguous there in spite of the disclaimer on page 23:

"The Future of Benefits and Plans
Northern Telecom Limited reserves the right to change or discontinue any of the benefits, plans and programs described in this statement at any time. Participation in these benefits, plans and programs does not guarantee employment. The actual benefits you receive depend on your actual compensation, service and benefit elections. The benefits, plans and programs are not conditions of employment, nor do they imply, create or constitute an employment contract."

24.     In 2003 and for some years after, the Debtors included an insert in the annual benefit enrollment paperwork. The four-page insert was For Employees Not Actively at Work (Exhibit E). The last page contains a note about LTD disability coverage without any disclaimer: "… you'll continue to receive disability benefits … until you return to work."

25.     Debtors' HR Shared Services provided the LTD Employee a verification of employment letter dated 11/15/2011 for mortgage refinancing purposes. The letter states "benefits are expected to continue through age 65 … the company reserves the right to change or end the plan at any time" (Exhibit F). The letter's intent was clear enough to secure refinancing.

26.     Prudential Insurance Company of America, Debtors' agent, provided the LTD Employee a verification of LTD benefits letter dated 9/27/2012. The letter sets forth the monthly net income benefit and states the benefit will continue until the day before the LTD Employee's 65 birthday with no disclaimer (Exhibit G).

27.     Not present in any of the Debtors' communications to the LTD Employee is language stating the Debtor has the right to liquidate assets to increase yields, ROI's and bonuses for third parties at the expense of the disabled. The Debtors are attempting to pervert the spirit

7

and intent of the LTD benefit and the ERISA statutes by seeking to profit from ambiguities in their own language.

28.     The Debtors are attempting to renege on a bargain struck with the LTD Employee 4/29/2001. They should be required to keep their end of the bargain as the LTD Employee performed services, paid premiums and relied on representations that were pervasive throughout the chain of command in making purchase decisions to protect self and family. The LTD Employee and family will suffer significant financial hardship in the event the Debtors' Motion is granted.

29.     The Debtor's estate has sufficient funds to pay the LTD Employee's benefits as well as all other LTD benefits thanks to a value the marketplace gave to the estate's intellectual property. The LTD benefits are immaterial from a perspective concerned with possible dilution of the estate's value. However, the benefit provided would be profound to the LTDs. There is no going concern reorganization in the future for the Debtor. That might require an adjustment in LTD benefits to fund the reorganization. The division and disbursement of Debtors liquidated assets should not be funded by reduced or terminated LTD benefits.

30.     The Debtors' intention to provide severance is set forth in the 1999 Severance Allowance Plan (Exhibit H). That is four weeks of base salary plus one additional week of base salary for each year of service. The Debtors' 2010 Termination Notice (8/31/2010 effective date) shows the Debtors' expected the LTDs to be part of some severance process upon termination in 2010 (Exhibit I).

## EXHIBITS

The following exhibits are attached to and incorporated in this Objection.

Exhibit A - Summary plan document Plan Year 2000, Pub. 6/2000
Exhibit B - 1992 WEEKLY DISABILITY AND LONG TERM DISABILITY PLAN

Exhibit C - 1992 LONG-TERM INVESTMENT PLAN cover page
Exhibit D - Personalized 3D Rewards Statement
Exhibit E – 2003 For Employees Not Actively at Work
Exhibit F – Verification of employment letter dated 11/15/2011
Exhibit G - Verification of LTD benefits letter dated 9/27/2012
Exhibit H - 1999 Severance Allowance Plan
Exhibit I - 2010 Termination Notice
Exhibit J – 2011-12 Benefits Confirmation Statement
Exhibit K – Disability Confirmation, Prudential

### NOTICE

31.    Notice of this Objection has been provided to (a) counsel to the Debtors; (b)

counsel to the Creditors' Committee; (c) counsel to the Retirees Committee; (d) the United States

Trustee for the District of Delaware; and (e) all parties required to receive service under Rule

2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware through the Court's electronic filing system. The

LTD Employee respectfully submits that, given the nature of the relief requested, no other notice

of the relief requested herein need to be given.

**WHEREFORE**, the LTD Employee, respectfully requests the entry of an Order, in the

form attached:

1.    Deny Debtors' Motion for entry of an order authorizing the Debtors to terminate the

Debtors' Long-Term Disability Plans and the employment of the LTD employees until

the LTD Employee reaches 65 [DI#8067]. OR,

2.    Compel the Debtors to compensate the LTD Employee for the present value of the

LTD Employee's future benefits, discounted at a rate of 3% per year.

Dated: 10/15/2012

Michael Stutts
1616 Hastings Bluff
McKinney, TX 75070
972-540-6444
Facsimile: N/A
Email: michaelstutts@sbcglobal.net

*Appearing Pro Se*

10

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| Nortel Networks Inc., *et al.*,[2] | ) Case No. 09-10138 (KG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Re: Docket No. 8067** |

### ORDER GRANTING OBJECTION TO DEBTORS' MOTION FOR ORDER AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

Upon consideration of the Objection filed herein by Michael Stutts, and any

responses thereto; and it appearing that sufficient notice of the Objection has been given; and in

good cause having been shown, it is hereby

ORDERED that the Objection is granted.

ORDERED that the debtor will pay the LTD Employee's benefits until age 65 or

pay the present value of such benefits.

Dated: _____, 2012

        Wilmington, Delaware                    _____

                                       HONORABLE KEVIN GROSS
                                         CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[2]   The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.