## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | **Objection Deadline:** Oct. 22, 2012 at 10 a.m. |
| | **Hearing Date:** Feb. 12, 2013 at 10 a.m. |
| | **RE:** D.I. # 8067 |

## OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

Marilyn Day, a fulltime Nortel employee on long term disability (LTD), of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this Objection to Debtors' Motion for entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees and all the LTD benefits and rights as employees and entitlements including full Nortel retirement and its benefits. In support of this Objection, I, Marilyn Day, humbly and gratefully present the following:

---

[1]  The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## PREFACE

Since I am not an attorney, I must, as all United States attorneys should, base this objection on the principles of what our founding fathers started this nation on ….*We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness….laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness. Prudence,…. the most wholesome and necessary for the public good.*

John Locke's "Second Treatise of Government" published in 1690., "Rights of the Colonists of Men" was written when Samuel Adams in 1772, "The Declaration of Independence" in 1776 by Thomas Jefferson

Jefferson himself minimized the Declaration's contribution to political philosophy. In a letter that he wrote in 1825, 50 years after the Declaration was signed, he described the document as "an appeal to the tribunal of the world." Its object, he wrote, was not to find out new principles or new arguments, never before thought of, not merely to say things which had never been said before; but to place before mankind the common sense of the subject, in terms so plain and firm as to command their assent, and to justify ourselves in the independent stand we are compelled to take. Neither aiming at originality of principle or sentiment, nor yet copied from any particular and previous writing, it was intended to be an expression of the American mind, and to give to that expression the proper tone and spirit called for by the occasion. …Properly understood, therefore, when John Locke, Samuel Johnson, and Thomas Jefferson wrote of *"the pursuit of happiness,"* they were invoking the Greek and Roman philosophical tradition in which happiness is bound up with the civic virtues of courage, moderation, and justice.

*Civil Liberty* is the exemption from the arbitrary will of others, which exemption is secured by established laws, which restrain every man from injuring or controlling another, An American dictionary of the English language 1828.

*Life:* the present state of existence from birth to death; condition, course of living, in regard to happiness and misery; the enjoyments or blessings of present life, An American dictionary of the English language 1828.

The United States Constitution which says *"We the People  of the United States, in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America…*

*General Welfare:*
*General:* Public; common; relating to or comprehending the whole community; as the general interest or safety of a nation.

***Welfare***: Exemption from misfortune, sickness, calamity or evil; the enjoyment of health and the common blessings of life; prosperity; happiness; applied to persons. Exemption from any unusual evil or calamity; the enjoyment of peace and prosperity, or the ordinary blessings of society and civil government; applied to states. Noah Webster's 1828 American Dictionary

***BLESSING***: Any means of happiness; a gift, benefit or advantage; that which promotes temporal prosperity and welfare, or secures immortal felicity. A just and pious magistrate is a public blessing. The divine favor is the greatest blessing. Noah Webster's 1828 American Dictionary

***Disabled***: Deprived of competent power, corporeal or intellectual; rendered incapable; deprived of means. Noah Webster's 1828 American Dictionary,
which the Debtors, Nortel Networks Inc., intents to do myself, my family and every Nortel employee on Long Term Disability.

I would like to thank your Honor, for responding to the letters of the people on Long term Disability (LTD), forming the LTD committee and the Retiree Committee, and now allowing us to file objections to Nortel Networks Inc. third motion to terminate everyone on LTD and all their rights as employees and benefits. I thank you for reading my objection as you stated in court on July 11, 2012 when several Nortel employees on LTD wrote you letters and Daniel David spoke to the court. I appreciate this opportunity.

I will try to be as accurate and correct from memory as possible because my objection is not as complete or as thorough as it should be because:
**My Request for Discovery to Nortel that was supposed to be available by Sept 27, 2012, and the date is October 12, 2012 and still missing much of what I requested and I have just received it in the past three days.**
AND One of children is having surgery tomorrow October 16, 2012.

Undue duress has been placed upon me, because of Nortel's failure to honor their commitment to follow the Plan's obligation to the LTD to age 65 and my Retiree Benefits.

1. In January, 2009, I called Nortel's HRShared Services and the following months after that…I was told I might have benefits for two weeks, so here this has been dragging on for almost four years now.
2. It has affected my health negatively.
3. My children have not gotten braces although a dental benefit, because I did not want to get stuck with the bill if Nortel stopped pay and benefits the next month.
4. I am now must become an "expert" in 5500 plans, trusts, disability law, bankruptcy laws. I never knew what an SPD (summary plan description) was until this year.
5. Nortel has now subpoenaed me for 21 requests of Discovery. We were required to sign a confidential agreement to work at Nortel.

## BACKGROUND

**Employment:**

I was a contractor at Northern Telecom in the late 1980s, three plus years and some in early 1990s, and then became a fulltime employee in 1994. My choice to work for Nortel was based on career opportunities and stability in the company- it was the Telephone Company of Canada, a 120+ year old, a worldwide company operating in every continent except Antarctica. It offered innovative projects with new facets of development in the Research and Development side of the business as products were launched to achieve better, cleaner and faster medias of communications. I loved my job, worked with "cream of the crop co-workers", and am dearly sadden to see such a great company to be in a state of dismay.

I brought to the company my expertise from other corporations in IT, Telephony (all aspects), Telecommunications, Networking, project management, intense deadlines, and long hours and could crank out the work/products as the pressure mounted, thrived in Research and Development environment. My job was challenging and intellectually stimulating.

ISO9000 Auditor (a series of standards, developed and published by the International Organization for Standardization (ISO), that define, establish, and maintain an effective quality assurance system for manufacturing and service industries.)
In 1994, 1995, 1996, one of my capacities as an employee on both the Northern Telecom Business side and the Northern Telecom Research and Development side was to participate and make the departments I was involved with, ISO9000 certification, ISO9000 compliant. At Northern Telecom request, I was a certified ISO9000 auditor. Nortel Networks Ltd. adheres to TL 9000 for the telecommunication industry.

Nortel Networks Inc. Benefits
1. Cigna (provider of medical insurance, dental and hearing insurance for myself as employee, retiree, and my dependents (spouse and children until age 26 per Federal laws of Healthcare)

2. Medco (provider of prescription drug plan benefit)

3. Prudential (provider of life insurance for myself as employee, retiree, and my dependents (spouse and children per benefits until we die.)

4. Accidental and Dismemberment insurance provider for myself as employee, retiree, and my dependents (spouse and children per benefits until we die.)

5. Prudential (manager of long term disability and short term disability claims and disability review requests for claimant and claimant's physician and disability monthly pay (per benefits until age 65) and receiver of lump sum payment from Social Security Administration Commission Medical Disability Claim Approval during periods of 2000 - present).

6. Cigna: Policy 205900501350 001011 address 12225 Greenville Avenue Suite 655, LB179 Dallas, TX 75243-9382 phone 972-907-6500, 1-800-352-0611 year 1998 (manager of long term disability (per benefits until age 65) and short term disability claims and disability review

requests for claimant and claimant's physician and disability monthly pay and lump sum payment from Social Security Administration Commission Medical Disability Claim Approval during periods of 1994 – 2000).

7. 401K. Previously Bankers Life, and Hewitt, and now has to be transferred.

8. Long term care with Retirement.

9. Severance Pay

10. Vested years of service for Pension now covered by PBGC.

**Disability:**

I am deemed medically disabled by the Social Security Administration. I never expected to become unable to work. But the results from this health issue have residual effects and have caused more complications and lead to other health issues. This one event totally has changed my life over and over again. No longer am I learning the newest beta releases in technology, I am as a baby growing up, learning the basic skills of living and then I have to start all over again another or new complication.

Example: I lost most of my 401K funds because; I could NOT understand the telephone prompts to talk to a representative at Bankers Trust to move my money. HRShared services and Health services did not seem to understand that I could not comprehend what the telephone prompts were saying and which option I was supposed to push to reach a "live" person.

Through these daily challenges, perseverance and endurance have become my strengths. I live with an attitude of gratefulness – to the fact that I figured out how to brush my teeth. I am thankful that God blessed me with good doctors, new innovations in medicine; I was working for Nortel when this happened, I and my family have medical coverage, and Nortel was always going to be in business.

## RELIEF REQUESTED

A. I request that the Debtors Motion to terminate the LTD Plans and LTD Employees [DI#8067] be rejected.

B. I request the Nortel Networks Inc. compensate me in full for my LTD benefits to age 65. As the Plan agreement stated, therefore is obligated and liable as it was determined by Nortel, I met and meet the terms of Long Term Disability.
My Total Claim is $301,729.46. Note: this does not include the replacement cost of life insurance for my dependents or spouse or the rising cost of increased Medical premiums in future years.

C. I request due to medical and financial necessity, no interruption in the disbursement of my LTD benefits or its compensation.

## BASIS FOR RELIEF

### I.   Bankruptcy Court rules in favor for Disability employees

**Title VII of the Civil Rights Act of 1964** to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII, the Americans with Disabilities Act of 1990, and section 501 of the Rehabilitation Act of 1973.

> SEC. 2000e. [Section 701]For the purposes of this subchapter-(a)The term "person" includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-¬stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11 [**originally, bankruptcy** ], or receivers.

EXAMPLE: Awards for disabled against bankruptcy companies:
Buffets Holdings, Inc. and all of its subsidiaries 2008; United Airlines, Inc. 2009

### II.  Medicare insurance only vs. Private insurance

I need private insurance for myself and my family. My dependents are entitled under our Healthcare for coverage for nine more years. They are NOT Medicare eligible. Due to our health issues, it is necessary that we receive the same coverage as we receive now with Nortel: Medical, Mental Health, Prescription Coverage, Dental, Vision, Hearing, Life, and AD&D.

In 2007, every doctor's office or medical facility I visited, signs were posted for patients to read, stating to contact your Congress, because of changes in Medicare. I personally was told by several of my specialists that I would be the exception to the rule, since I was an existing patient, but they would not take Medicare patients. I have been to other doctors and not accepted as their patient because I had Medicare as primary insurance.

In 2012, I have been sent to hospitals for tests and sent home, because Medicare did not approve it or it was certain labs, blood work that several specials ordered that Medicare would not guarantee to pay. I found out after the fact after 10 different injections that Medicare did not pay for those, but Nortel's Medical Insurance Cigna paid part of it.

Being on disability, and listening to the Vice-Presidential debates about Medicare and the current National Healthcare expected cuts in medical coverage for the disabled and elderly on Medicare, plus the increase in Medicare premiums according to Wall Street Journal July, 2012 ..."*The per person Medicare insurance premium will increase from the present monthly fee of $96.40 to $104.20 in 2012, $120.20 in 2013 AND $247.00 IN 2014. ..These are the Provisions incorporated in the Obama care Legislation, purposely delayed so as not to confuse the 2012 Re-election Campaign... The 2013 and 2014 Part B premiums haven't been decided yet....*

## III. Medical Insurance Premiums:

*Dallas Morning News,* Business *Section, and Oct. 2, 2012*: "Pricewaterhousecoopers Health Research Institute ....Typically about 70 percent of the cost of these policies is paid by the employer with tax-deductible dollars. Faced with premium increases averaging 7 to 8 percent a year...."

## IV. Northern Telecom/Nortel/Nortel Networks, Inc.- Customs, Tradition and Common Knowledge

A. Has the current Debtors have changed their name over the years, the customary tradition of policy had not. It was common knowledge for Northern professionals to know of their benefits, since each year in October a meeting was held to discuss benefits, the options and how they worked.

B. At the Richardson Campus, Health Services, (the nurses and disability staff) were available.

C. National HR was a phone call away.

D. Every manager was versed in Benefits.

## V. LTD until age 65

A. I needed plans for 1996 and 1997 both short term and long term disability. On Richardson, TX campus, I requested these plans numerous times for several years from Health Services, Tracy Love, HR local rep., and HR Shared Services. Office of Paula Holden, 5500 plan administrator. In 2012 for four months, I have requested my 1997 SPD from HRShared Services; I was never given a copy. Only this week have I seen it on the Nortel/LTD Discovery Web site.

B. From the phone conversations of personnel of Richardson campus Health Services, HR Shared Services, Cigna LTD Plan Administration Claim Representatives, Prudential LTD Plan Administration Claim Representatives, my staff meetings discussing Annual Enrollment of Benefits by my managers, I base my knowledge of LTD until age 65.

## EXAMPLE: Life Insurance paid for death of my child.

During my employment at Nortel, my child died. I had enrolled for life insurance for dependent children. Nortel through Prudential sent me as the Beneficiary, the insured amount, which helped covered the cost of the funeral expenses. I then received another Beneficiary amount because the cause of death was accidental. I did not know that there was an accidental clause in the policy, because I never saw it. BUT Nortel did honor their Plan. I did not have to prove it, as is the case now with LTD.

---

C.   I did not know Nortel was self-insured. During staff employee meetings, it was always referred to as insurance. Now after reading 1996 SPD, Administration Section apparently Northern Telecom was self-insured.

## VI.   Nortel Guidelines

A.   In 1994, when I transitioned from contract to full time employee, I took approximately $23,000 pay cut to receive Nortel benefits.

B.   According to the closest year (1996 LTD SPD guidelines) under which my **LTD claim** was approved, my **LTD claim** could NOT terminated prior to age 65 except: (Exhibit xx)

C.   According to the 1996 SPD, (Exhibit xx) Benefits end when your period of Total Disability ends, which happens when the first of the following occurs:

1.   You stop being Totally Disabled or die
2.   You go back to work (other than an approved rehabilitation program).
3.   You are no longer under the care of a physician.
4.   You fail to furnish the latest required proof of the continuance of your total disability or refuse to be examined by a physician designated by the plan.
5.   You reach the end of the maximum benefit period for any one period of total disability as shown in the chart (under age 60 equals age 65).

## VII.   Financial Prudency by Nortel

I would assume that Nortel being financially prudent would have reserved money in Trusts and Funds for the Disabled as included to all Nortel employees as long as they were employed…. per the report from the Social Security Administration, Trends in the Social Security and Supplemental Security Income Disability Programs Report, **"The percentage of awards of SSI payments for disability has been fairly constant for men and women: women aged 18–64 represent roughly half of all awards, varying between 49 percent and just under 53 percent from 1976 to 2003.**

http://www.ssa.gov/policy/docs/chartbooks/disability_trends/sect02.html

## VIII.   Requirements for Health Plans

I have highlighted some key points to demonstrate Nortel Networks, Inc. failure to follow the guidelines of providing me with my SPD and **requirements by the Federal Government to have a TRUST FUND if more than 100 employees**.. I have underlined what I thought were pertinent to my objection and Nortel's invalidity to terminate me on disability. My resource is:

**A.    U.S. Department of Labor publication**:  <u>Understanding Your Fiduciary Responsibilities Under A Group Health Plan</u> excerpts:

**What Are The Essential Elements Of A Plan?**

<u>Each plan has certain key elements. These include:</u>

- <u>A written plan that describes the benefit structure and guides day-to-day operations;</u>
- <u>A trust fund to hold the plan's assets;</u>[']
- <u>A recordkeeping system to track contribution and benefit payments, maintain participant and beneficiary information, and to accurately prepare reporting documents; and</u>
- <u>Documents to provide plan information to employees participating in the plan and to the government.</u>

Employers often hire outside professionals (sometimes called third-party service providers) or, if applicable, use an internal administrative committee or human resources department to manage some or all of a plan's day-to-day operations. Indeed, there may be one or a number of officials with discretion over the plan. These are the plan's fiduciaries.

**Employee Contributions**

If a plan provides for salary reductions from employees' paychecks for contribution to the plan or participants make payments directly, such as the payment of COBRA premiums, <u>then the employer must deposit the contributions in a plan trust in a timely manner</u> The law requires that participant *contributions be deposited in the plan as soon as it is reasonably possible to segregate them from the company's assets*, but no later than 90 days from the date on which the participant contributions are withheld or received by the employer.

**Hiring A Service Provider**

An employer should document its selection (and monitoring) process, and, when using an internal administrative committee, should educate committee members on their roles and responsibilities. Read, understand, and <u>keep a copy of all contracts.</u>

How Do Employees Get Information About The Plan? How Are Employers Required To Report Plan Activities?

ERISA requires plan administrators to furnish plan information to participants and beneficiaries and to submit reports to government agencies.

**Informing Participants And Beneficiaries**

The following documents must be automatically furnished to participants and beneficiaries.

The **Summary Plan Description (SPD)** -- the basic descriptive document -- is a plain language explanation of the plan and must be comprehensive enough to apprise participants of their rights and responsibilities under the plan. It also informs participants about the plan features and what to expect of the plan. Among other things, the SPD must include basic information such as:

- Plan name, address, and contact information;
- What the plan benefits are;
- How to get the benefits; and
- Duties of the plan and/or employee.

More specific information must also be provided, including:

- The plan's claims procedure (either in the document or as separate attachment);
- A participant's basic rights and responsibilities under ERISA (model language is provided in the SPD rules);
- Information on any applicable premiums, cost-sharing, deductibles, co-payments, etc.;
- Any caps (annual or lifetime) on benefits;
- Procedures for using network providers (if PPO/HMO) and composition of network;
- Conditions regarding pre-certification;
- A description of plan procedures governing Qualified Medical Child Support Orders (see below); and
- Notices and descriptions of certain rights under the Health Insurance Portability and Accountability Act (HIPAA) and other health coverage laws, described below.

This document is given to employees within 90 days after they are covered by the plan. SPDs must also be redistributed every 5th year and provided within 30 days of a request. The SPD must be current within 120 days.

The Summary of Material Modification (SMM) apprises participants and beneficiaries of material changes to the plan or to the information required to be in the SPD. The SMM or an updated SPD for a group health plan must be furnished automatically to participants within 210 days after the end of the plan year in which such material change was adopted. However, if the changes to the plan or changes to the required information in the SPD result in a material reduction in covered services or benefits, then the SMM must be distributed no later than 60 days from the date the

change was adopted. <u>A material reduction is any plan change that eliminates benefits, reduces benefits payable, increases premiums, deductibles, coinsurance or co-payments, reduces the service area covered by an HMO, or establishes new conditions or requirements (such as pre-authorization) for obtaining services or benefits.</u>
A **Summary Annual Report (SAR)** outlines in narrative form the financial information in the plan's Annual Report, the Form 5500 (see below for those plans required to file this report), and is furnished annually to participants in plans that are required to file the Form 5500.

**Reporting To The Government**

<u>Plan administrators generally are required to file a Form 5500 Annual Return/Report with the Federal Government. The Form 5500 reports information about the plan, its finances, and its operation. This information is used by the U.S. Department of Labor, the Internal Revenue Service (IRS), other government agencies, organizations, and the public. Participants and beneficiaries can receive a copy of the Form 5500 upon request from the plan.</u>

<u>http://www.dol.gov/ebsa/publications/ghpfiduciaryresponsibilities.html</u>

**B.    1992 Northern Telecom Health & Welfare Benefits Trust**

Page 17 Section 10.2 (last sentence) states that "However, under *no condition shall the* termination of the Trust result in a distribution to the Corporation of any portion of the Trust Fund.

**C.    Form 5500 for year 2003**

Page 2 states in Section 9a and 9b is Insurance and Trust
page 47 *Accountant's Opinion* Did the accountant perform a limited scope audit pursuant to 29 CFR 2520.103-8 and/or 103-12(d)? Answer YES Deloitte & Touche LLP

## IX. <u>Invalidity of Motion to Terminate</u>

A.  Nortel is in Chapter 11 bankruptcy, (which I understand to be the restructuring Chapter not "give up completely" Chapter, which NEVER represented the Nortel employees' attitude.). So why is it even valid for Nortel to motion to terminate us? – The American Disabilities Act comes into question?

B.  Before Nortel's petition for bankruptcy, and the Nortel I worked for, there was no question of my approved contractual LTD Claim. Now distortion of accepted Plan agreement and breach of contract are the Debtors targets.

**C.** On page 5 paragraph 9 of the Nortel motion [D.I. 8067] the debtor is asking the Court not only to terminate the plan but also terminate current outstanding **Approved LTD Claims and terminate the LTD Claim holder's employment thereafter.**

1. The Termination of LTD plan cannot take place unless all the incurred obligations for current LTD Claims are cleared from the books or financial statement as stated in item (4) below.

2. In order to take the LTD Claims obligation off the books, Nortel is asking you, the deciding judge, **to terminate the LTD Claims holder's employment, which per 1996 SPD is grounds for ending/terminating my LTD claim rather than paying the approved LTD Claims outright and then terminating the plan.**

3. The debtors are not acting in good faith by not meeting their contractual obligations and are purposefully misleading the court to accomplish their purpose.

4. Therefore breaking the Department of Labor's Rules and regulations schedule **(29 CFR2520.103-10)** and also according to statement made by KPMG auditors in Nortel **Form 5500 – 2010 report**. The report states on page 6 or VDR page NNI-LTD-00002889 paragraph 3: **The Plan agreement provides that the Company has no obligation to make any minimum contribution and no obligation to make any contribution in any year, except for contributions necessary to enable the Plan to fund claims under the component programs of the VEBA that are incurred prior to the date of termination of the Plan.**

5. The LTD obligation incurred for me on March 18, 1997 – the date the LTD participant went on disability.

**D.** Nortel has sufficient funds to satisfy my Claim, shown in **Exhibit xx**.

**E.** According to FASB- **FAS 112** statement: **Exhibit xxx**

**ERISA and FASB Reporting Requirements**

ERISA and the Financial Accounting Standards Board ("FASB") have specific financial reporting requirements that pertain to filing the 5500 and the audits of the financial statements of employee benefit plans.

Paragraph 1.

1. This Statement establishes standards of financial accounting and reporting for the estimated cost of benefits provided by an employer to former or **inactive employees** after employment but before retirement (referred to in this Statement as *postemployment benefits*). Postemployment benefits are all types of benefits provided to former or inactive employees, their beneficiaries, and covered dependents. Inactive employees are those who are not currently rendering service to the employer and who have not been terminated. They include those who have been laid off and those on **disability leave,**

**regardless of whether they are expected to return to active status.** Postemployment benefits include, but are not limited to, salary continuation, supplemental unemployment benefits, severance benefits, **disability-related benefits** (including workers' compensation), job training and counseling, and continuation of benefits such as health care benefits and life insurance coverage.

Paragraph 6.

**Accounting for Postemployment Benefits**
6. Postemployment benefits that meet the conditions in paragraph 6 of Statement 43 shall be accounted for in accordance with that Statement. Paragraph 6 of Statement 43 states: An employer shall accrue a liability for employees' compensation for future absences if *all* of the following conditions are met:

   a.   The employer's **obligation relating to employees'** rights to receive compensation for future absences is attributable to **employees' services already rendered,**
   b.   The obligation relates to rights that vest or accumulate,
   c.   Payment of the compensation is probable, and
   d.   The amount can be reasonably estimated.

Postemployment benefits that are within the scope of this Statement and that do not meet those conditions shall be accounted for in accordance with Statement 5. Paragraph 8 of Statement 5 states:
An estimated loss from a loss contingency (as defined in paragraph 1) shall be accrued by a charge to income if *both* of the following conditions are met:

   a.   Information available prior to issuance of the financial statements indicates that it is probable that an asset had been impaired or a liability had been incurred at the date of the financial statements. It is implicit in this condition that it must be probable that one or more future events will occur confirming the fact of the loss.
   b.   The amount of loss can be reasonably estimated.

F.   Nortel admits the obligation as vested for my LTD Claim in their VEBA financial statement according to FAS 112 as reported in **Financial Statement and Form 5500 - 2010** under schedules required by **29CFR 2520.103-10** of the **Department of Labor** Rules and Regulations reporting and Disclosure under ERISA.

G.   Nortel admits of the obligation in a letter prepared by Cigna Insurance Company (a representative of Nortel Networks Inc.) for approval of my disability claim in **Exhibit xxx.**

H.   Nortel admits of the obligation in a letter prepared by Prudential Insurance Company (a representative of Nortel Networks Inc.) for approval of my disability claim in **Exhibit xxx.**

**I.** Fiduciary obligations are not served when an essentially insolvent benefit is offered; nor when the same agent seeks to **terminate my employment to expressly deny my LTD Claim.**

**J.** Nortel is seeking to breach of contract that they had with me and should be required to honor their obligation  as I honored mine by working numerous hours of overtime, meeting unrealistic deadlines, providing  my expertise and services to them in good faith, paid insurance premiums, etc.

**K.** The U. S. Social Security Administration has approved my disability. **Exhibit xxx**

**L.** My current Medical SPD (summary plan description) - 2012 states in the **Extension of Health Care Protection** that I will be covered as long as I am disabled under the LTD claim. **Exhibit xxx**

**M.** My CARP 401K plan was terminated prematurely. **Exhibit xxx**

**N.** According to section one of retirement medical plan - 2012 DVR page NNI-LTD-00003731 I am also eligible for medical, life and long term care benefits after age 65. **Exhibit xxx**

As a Nortel employee, I felt proud to work for this company: innovative technology, a high caliber of people with a strong work ethic, who put out a product that made me proud to be associated with this company and proud to be produced in the United States. We gave products to the world that improved the quality of life and technology that saved lives.

I now come to you seeking Justice (The virtue which consists in giving to everyone what is his due; practical conformity to the laws and to principles of rectitude in the dealings of men with each other; honesty; integrity in commerce or mutual intercourse. Justice is distributive or commutative. Distributive justice belongs to magistrates or rulers, and consists in distributing to every man that right or equity which the laws and the principles of equity require; or in deciding controversies according to the laws and to principles of equity) and desiring Welfare (exemption from misfortune, sickness, calamity or evil; the enjoyment of health and the common blessings of life; prosperity; happiness; applied to persons. Exemption from any unusual evil or calamity; the enjoyment of peace and prosperity, or the ordinary blessings of society) for myself and my family.

I thank you for your time in reviewing this case. And please excuse me if I get a little patriotic, but I am thankful for the justice system established in this country, where I as an individual can offer my petitions to the court and you, Your Honor, are graciously allowing me to present them.

## EXHIBITS

NOTE: I will have to submit later due to family illness and need for access to Discovery Database.

A – 1996 LTD SPD

B – Claim Form.

C - FASB - FAS 112 statement

D - Cigna LTD approval letter

E - Prudential LTD approval letter

F - Social Security disability Award

G - Continuing Coverage – Extension of Health Care Protection - 2012

H - CARP Program

## NOTICE

1. Notice of this Objection has been provided to (a) counsel to the Debtors; (b) the United States Trustee for the District of Delaware; (c) counsel to the LTD 1102 Committee; and (d) all parties required to receive service under Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware through the Court's electronic filing system. Marilyn Day respectfully submits that, given the nature of the relief requested, no other notice of the relief requested herein need to be given.

**WHEREFORE**, Marilyn Day respectfully requests the entry of an Order, in the form attached:

1. Reject the Debtors motion to Terminate the LTD Plans and LTD Employees [DI#8067] as is.

2. Compel the Debtors to compensate Marilyn Day in full for LTD benefits projected to age 65; Total Claim being $301,729.46.

3. Order that there is no interruption in disbursement of LTD benefit (or compensation for same) to Marilyn Day.

Dated: October 16, 2012

Marilyn Day
2020 Fox Glen Dr.
Allen, TX. 75013
Telephone: 469-675-3612
Facsimile: N/A
Email: mardiday@yahoo.com

*Appearing Pro Se*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Re: Docket No. 8067** |

### ORDER GRANTING OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

Upon consideration of the Objection filed by Marilyn Day, and any responses thereto; and it appearing that sufficient notice of the Objection has been given; and in good cause having been shown, it is hereby

ORDERED that the Objection is granted.

ORDERED that Nortel provide Marilyn Day an allowed claim in the amount of $301,729.46.

Dated: _____, 2012
    Wilmington, Delaware

                                      HONORABLE KEVIN GROSS
                                       CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.