## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Nortel Networks Inc., *et al.*,[1] | ) Case No. 09-10138 (KG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Objection Deadline:** Oct. 22, 2012 at 10 a.m. |
| | ) **Hearing Date:** Feb. 13, 2012 at 10 a.m. |
| | ) **RE:** D.I. # 8067 |

## OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

Mark R Janis (the "[Define Party]") of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this **OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES.** In support of this Objection, Mark R Janis respectfully represents as follows:

---

[1]    The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226).    Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Mark R. Janis

## **BACKGROUND**

1. May 1999, I was hired by Clarify Inc., as the Western Regional Director of the Professional Services Organization. [See Exhibit A -- Job Offer Letter] At that time I relocated my family from the Chicago area to San Jose, CA where Clarify was headquartered. In my position at Clarify, I was responsible for all billable consulting services delivered to our clients in the Western third of the United States. I was responsible for the delivery of those services through approximately 200 software engineers spread across five offices in four cities.

2. In October 1999, it was announced that Clarify Inc. would be acquired by the Nortel Networks Corporation under a merger agreement through an exchange of common stock. [See Exhibit B -- Clarify Merger Announcement] The sale was concluded in March 2000 and at that point I became a Nortel Networks employee with no loss of seniority. As a new employee, I attended multiple meetings where Clarify executives and Nortel executives assured us that our benefits were improved and much more stable since we were now part of a much larger corporation. We were informed about new and better benefits programs such as the Nortel Deferred Compensation Program, the ability to choose between a traditional Pension plan and an "Investor Plan" more commonly known as a 401K, and other new benefit offerings.

3. October 2000, I was notified that I would be receiving a "Top Talent" award for the significant contribution I made in the first half of the year 2000. This award is reserved for the top 1% of employees, was signed by John A. Roth, President and CEO of Nortel Networks. [See Exhibit C – Top Talent Award]

4. In October 2001, I went on Short Term Disability due to the problems I was having as a result of my Multiple Sclerosis.

5. In April 2002 I was moved from Short Term Disability to Long Term Disability. I was similarly approved to receive Social Security Disability Benefits for myself and my daughter, who at the time was under 18 years of age.

6. At this juncture, pretty much all contact with Nortel Networks ceased, other that periodic mailings, statements, and annual benefits enrollment forms. In fact the Annual Benefits Enrollment forms were for the most part optional. While being on LTD one was not permitted to increase any existing coverage. One could only reduce it or cancel coverage and once it was so reduced or eliminated it could not be reinstated or increased until one returned to work as a regular full time working employee. At this point my benefits were locked in and based entirely upon the plan year documents of when I went out on disability. See Exhibit D – 2001 and 2003 U.S. FLEX Benefits annual Enrollment Worksheet. One can see the differences in the enrollment worksheets. Starting on Page 2 of the 2003 Worksheet, since I am at that point receiving LTD Benefits, my only option is to reduce or retain the optional employee life insurance, dependent life insurance coverage, and AD&D insurance coverage.

7. January 2009, Nortel Networks filed for bankruptcy protection under Chapter 11. Under this form of Bankruptcy, it allows a company or individual to reorganize their business so that the business can continue to function and emerge out of bankruptcy a healthier and more viable business. This however was not the course that the bankruptcy took, since then, the corporation has sold off all operating companies and intellectual property to other interested parties.

8.  June 2010, a Motion was filed to terminate the LTD PLAN, Docket #3024, effective August 31, 2010

9.  July 15, 2010. The Motion to terminate the LTD Plan was withdrawn. Docket #3651

10. June 22, 2011 the Official Committee of Long-Term Disability Participants was approved. Docket #5790

11. July 30, 2012 the Motion to terminate the LTD Plan, and for me to be terminated as an "Active" employee and to deny my all future benefits which I expected to receive.

## RELIEF REQUESTED

12. I request that the Debtor's Motion to terminate the LTD Plan, and other benefits including, Income Continuation, Health Insurance, Life Insurance, Dental and Vision Insurance, be denied. I would request that the court order the Debtors to maintain these plans until such time that the bankruptcy proceeding are concluded and at that time a Unsecured Claim be authorized to cover any shortfall if this should happen before I reach age 65 and retire.

13. In the alternative, I request an annuity be purchased, and/or a trust fund be established to safely ensure that I receive my benefits until age 65.

14. Alternatively, if neither of the two requests can be accomplished, I would request that the Net Present Value of all future benefits plus the additional cost to acquire private insurance be awarded as a lump paid from the operating capital of the corporation as a current expense for early termination of the Plans.

## BASIS FOR RELIEF

15. The Debtors are not under any financial pressure to terminate the LTD Plans at this time. The Debtors should be congratulated on their ability to raise an amazing amount of cash from the sale of the operating companies and the intellectual property in the form of patents. At the start of the bankruptcy process, Nortel had approximately $1 Billion in cash in the operating company. As of August 31, 2012, the company still holds in excess of $1,017,600,000.00 in operating capital. [See Docket #8268] Furthermore, through the asset sales that have taken place, an additional $7,278,800,000.00 is being held in escrow for a grand total of $8,296,400,000.00. This amount of money placed in an interest bearing account yielding a 1% return would generate about $83 million per year which is far greater than the current cost to maintain the plans which according to the Debtors Motion at a cost of $800,000.00 to $1,000,000.00 per month. So I see no immediate need to terminate the plans at this time other than convenience for the Debtors.

16. At the time I joined Nortel, I was led to believe that Nortel was a benevolent employer. After all, they acquired my former employer at a very generous price. Nortel had approximately 90,000 employees and a market capitalization of almost $400,000,000,000. They offered competitive salaries and benefits as any major company with the size and stature of Nortel would. I believed that the LTD Plans as well as all other plans were covered by an insurance policy and that if I became disabled I would continue to receive my benefits until age 65. At which point, I would retire and continue to collect benefits as a retiree.

17. I did buy additional STD coverage raising my coverage level from the standard 70% to the 90% level. I elected to buy additional LTD coverage raising my coverage from the standard 60% to the 70% level. There were additional premiums for this added coverage which led me to believe that there was an underlying insurance policy. I never in my wildest imaginings thought that these benefits could be modified or terminated based upon company whim. While in practice, benefit plans were subject to change from one year to the next, and the amount one was expected to pay could also change, it was never conceived that the coverage could be terminated or even reduced, once a claim had been approved. Unfortunately, once I became disabled, there is no longer any opportunity to go out and buy my own private policy for disability coverage. Evidence of why I was lead to believe that I was covered under a Disability Insurance Policy:

   a.  As part of my new employee orientation, we were each given a three ring binder titled Nortel Employee Benefits and Programs dated 6/2000 [See Exhibit E] This Exhibit an excerpt from the binder that is the Cover Page, and the entire section on Disability. The entire binder is over 253 pages in length, so I elected to include only the relevant section. On Page 15 it clearly states the following:

   *Benefits end when your period of Total Disability ends, which happens when the first of the following occurs:*

   *a.  You stop being Totally Disabled or die.*

   *b.  You are able to return to work at any reasonable occupation (other than an approved rehabilitation program) after the first 12 months of LTD.*

   *c.  You are no longer under the care of a physician.*

    d.  *You fail to furnish the latest required proof of continuance of your Total Disability or refuse to be examined by a Physician designated by the plan.*

    e.  *You reach the end of the maximum benefit period for any one period of Total Disability as shown in the chart on the following page.*

The chart shown on Page 16 titled Maximum Benefit Period states that if my disability begins prior to age 60, LTD benefits will continue no longer than to age 65.

b.  Exhibit F - Letter from E. Reese, RN Regional Case Manager dated October 4, 2001 and STD Checklist. Note that STD Checklist page 2, point 9 states:

*For complete information regarding benefits, refer to Employee Benefits and Programs notebook.*

c.  Exhibit G - Letter from Prudential <u>Insurance</u> Company of America, Barbara Allu, Disability Claim Manager, dated July 3, 2002, states as follows:

*We have completed our review of your claim for Long Term Disability (LTD) benefits under the <u>Group Plan #39900</u> issued to Nortel Networks, Inc. and have determined that you are eligible for benefits effective April 3, 2002.*

This letter indicated to me that there is a LTD Insurance Policy #39900 that is covering my LTD benefits.

d.  Exhibit H – Letter dated March 12, 2002, Nortel Networks, Twyla Cole, RN, Disability Case Manager and accompanying package of LTD Employee Check List and forms. Included in this packet are a number of forms from Prudential Financial:

    i.  Prudential Financial – **<u>Group Disability Insurance</u>** Employee Statement.

ii.  Prudential Financial – **Group Disability Insurance** Electronic Funds Transfer Authorization.

iii.  Prudential Financial – **Group Disability Insurance** Medical Authorization and Tax Notice.

iv.  Prudential Financial – **Group Disability Insurance** Claim Instructions .

v.  Reimbursement Agreement – States the following:

*As an **employee insured under Group Plan #39900**, I have filed a claim for Disability (Short Term and/or Long Term Disability) benefits.*

(Emphasis added)

See paragraph 8:

*If any benefits under the Social Security Act are awarded retroactively, I agree to repay Prudential immediately the amount paid to me under this agreement in excess of the amount to which I would have been entitled under the terms of the Plan.*

My interpretation of these statements leads me to conclude that since I am to reimburse Prudential these amounts that they are the insurance company paying under policy #39900 rather than reimbursing the money to Nortel.

vi.  Benefit Entitlement – Page 2, Point 8b – Sentence 3

*For employees who are disabled before age 61, benefits may be paid for a maximum period ending the day prior to the 65th birthday.*

e.  Exhibit I – W2 Forms. In 2002, I was still receiving a W2 from Nortel and was now receiving a W2 from Prudential Insurance.  After 2002, I only received a W2 from Prudential Insurance Company of America and a 1099 from Social Security.

f.  Exhibit J – Letter dated December 3, 2002, Employee Services, and enclosure: Frequently Asked Questions. I was asked to complete a W4 form for Prudential unless I was satisfied with a withholding amount of 27%. On the Frequently Asked Questions page 1, A1:

*Your disability insurance plan* is financed by Nortel Networks through a financial instrument known as a Voluntary Employee Benefits Association (VEBA) trust. (Emphasis added)  My interpretation of this statement is that there is an insurance plan and the VEBA trust makes the premium payments.

g.  Exhibit K – Four letters from Prudential addressed to me referencing Group Policy #039900, dated February 29, 2004; March 15, 2005; June 17, 2008; June 4, 2012

18. I do not believe that a current on-going disability claim can be canceled at the discretion of the company. The Debtors state that they have the ability to cancel all existing claims and yet I know of no insurance policy that can do that. If I crash my car, and I take it to my insurance company, and they give me an estimate for repairs, and I bring that estimate to my mechanic and he starts work on the car, the insurance company cannot simply invalidate the claim based upon the fact that claims are costing them too much money. Likewise if the roof blows off of my house in a storm, and the insurance adjuster comes out and approves the claim, and work begins on the repair, they cannot simply terminate the claim because it is inconvenient for them. Yet this is exactly what the Debtors would like to do. This notion needs to be rejected.

19. Nortel as the Plan sponsors under ERISA, had a fiduciary responsibility to manage the financial risk of the plans. As such, they knew very early on that I was permanently disabled with no hope of ever returning to work. Therefore they should have taken precautions by

either setting aside funds in a trust for my future benefits or they should have bought an annuity that would cover my Income Continuation at a minimum. Nortel Networks failed in its fiduciary responsibilities to properly manage the plan and its associated risks.

Please see Exhibit L – Prudential Financial – Group Disability Insurance Attending Physician's Statements dated 2/14/2003, 7/7/2008, 5/10/2010, 6/25/2012. These documents confirm the fact that Prudential knew that I was permanently disabled without any prospect of returning to work. On this basis, under fiduciary responsibilities, funds should have been set aside and risks should have been mitigated.

From 2003: Cognitive impairment and extreme fatigue prevent any type of occupation. Cognitive impairment and extreme fatigue prevent any return to work. No treatment available to improve cognitive impairment.

From 2008: Mr. Janis has a chronic progressive disease, cognitive dysfunction impairs his ability to function in his occupation. Significant daily fatigue – needs frequent rests/naps, peripheral neuropathy, cognitive impairments related to disease process.

From 2010: Mr. Janis has been unable to work since 2002. It is very unlikely he will improve to the point of being ever able to work again.

From 2012: Multiple Sclerosis is a chronic and progressive disease with no cure. Needs frequent periods of rest/naps, no lifting over 10 pounds, must change positions frequently due to sensory changes.

20. The LTD Plan should be covered under Section 1114 of the Bankruptcy Code. The language states:

(a) For purposes of this section, the term ''retiree benefits'' means payments to any entity or

person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, **_or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title._** (Emphasis added)

Therefore, I am part of the protected group and that I should be treated as a type of Retiree and the benefits I receive are protected under Section 1114 of the Bankruptcy code.

21. I believe that termination of the LTD Plan and its associated benefits would constitute Unjust Enrichment of the Debtors. As stated above in Point #15, there is no undue pressure on the Debtors to terminate the plan at this time or in the way that they propose. I have come to rely on my disability income payments in order to survive. When I first became disabled, I went through a major adjustment process where I needed to scale back my lifestyle, my expenses, and learn to live on 70% of my former salary. Furthermore, I needed to learn to live on a fixed income for the duration of my life. I restructured my finances, first refinancing my home while on LTD, and then later, selling that home in order to buy a different home in which I could live out my life. If the Debtors are able to terminate my income it will have a catastrophic effect on my life. First it will reduce my personal income by 84%. I have no idea how I am supposed to live on roughly 16% of my current income while at the same time buying my own medical coverage. My prescription coverage alone, which is currently paid by Nortel through Medco costs at the retail level $49, 258.44 per year. This alone is more than double the amount of money I receive in Social Security Benefits. I am in a position of Detrimental Reliance upon my benefits with potentially Catastrophic Results if they are discontinued or terminated without any financial relief forthcoming. See Exhibit M –

Prescription Claims Summary for 2012 YTD Prescription Claims and most recent payroll statement from Prudential Insurance.

## NOTICE

1.      Notice of this Objection has been provided to (a) counsel to the Debtors (Cleary); (b) the United States Trustee for the District of Delaware; and (c) counsel to the LTD 1102 Committee (Elliott Greenleaf) via first class mail.  Other parties will receive notice through the Court's electronic filing system.   Mark R. Janis respectfully submits that, given the nature of the relief requested, no other notice of the relief requested herein need to be given.


**WHEREFORE**, Mark R. Janis respectfully requests that the Debtors Motion be denied and that benefits continue uninterrupted.


Dated:  October 16, 2012                    Mark R. Janis
                                            193 Via Soderini
                                            Aptos, CA 95003
                                            Telephone: 831-684-1760
                                            Email: mjanis@comcast.net

                                            *Appearing Pro Se*