# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Objection Deadline:** Oct. 22, 2012 at 10 a.m. |
|  | ) | **Hearing Date:**       Feb. 12, 2013 at 10 a.m. |
|  | ) | **RE:**                        D.I. # 8067 |

## OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

Fred S. Lindow (the "[Define Party]") of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this Objection to Debtors' Motion for entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees. In support of this Objection, Fred S. Lindow respectfully represents as follows:

## BACKGROUND

---

[1]  The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

### 1.) I incurred $29,693 lawyer fees

Nortel denied my LTD on January 9, 2008. At the same time they terminated my Short-term Disability effective December 31, 2011, a week short of the allowable 180 days.

My family and I were without Nortel income from January 2008 through March 2009. For 15 months we drained our savings while borrowing money to pay bills and put food on the table for our family.

The lawyer for my first appeal cost us $1,150. Again Nortel denied my LTD benefits. The second appeal required an *ERISA lawyer costing us $28,043*. Most recently I paid $500 to the LTD Committee to obtain council in our final fight against Nortel.

### 2.) Social Security approved my disability benefits in 2 months

I applied for Social Security Disability Benefits on 6/16/2008 and was approved 2 months later on 8/18/2008. *Social Security did not request further neurological assessments or doctor reports.* They accepted what was submitted on the application for benefits. Nortel received the same supporting documentation. When we confronted Nortel with SSDB approval they responded with: "we have a different set of requirements".

Although Social Security recognized the severity of my disability, Nortel forced me to hire two lawyers and struggle for 15 months before approving my benefits. *I believe Nortel's strategy was to harass me until I gave up the fight and walked away.*

### 3.) I lost $805,801 in projected 401K retirement value

My "Your Total Compensation Report" from Nortel dated August 1, 1995 (2 years before the start of my disability) stated:

"Using your current salary and assuming continuous employment with the Company to age 55 or 65, the estimated balance at retirement will be:" $858,553 at age 65.

*My entire 401K was invested in Nortel stock.* This summer I rolled-over my Nortel 401K valued at $4,752 for an overall loss of $805,801.

### 4.) I lost $484,826 in projected monthly Retirement money

My "Your Total Compensation Report" from Nortel dated August 1, 1995 (2 years before the start of my disability) stated:

"Using your current salary and assuming continuous employment with the Company to age 55 or 65, the estimated benefit payable for the remainder of your life will be:" $1,973 per month at Age 65.

***The current PBGC retirement benefit is $239/month at age 65.*** According to Social Security my life expectancy is 83.3 years. These 23.3 years of lost benefits equates to $484,826.

### 5.) I will lose $145,453 sick pay

I am currently receiving $4,407.68 from Nortel for LTD benefits. There are 33 months between January 1, 2013 and my 65 birthday on September 6, 2016. When Nortel stops payment ***my family will lose 2/3 of our monthly cash*** flow totaling $145,453.

### 6.) I will incur $690,461 cost replacing health care benefits

The loss of medical benefits will destroy the possibility of a peaceful retirement for my wife and I. The financial impact of this will overflow into the lives of our children and grandchild. ***Because of my potential termination from Nortel my wife was forced to seek employment.***

Our projected costs are based on the Social Security web site for predicting EOL. I am currently 62 years old and will live to an age of 83.3 while my 60 year old wife will live until the age of to 85.3. The calculation of benefits cost include: monthly insurance premiums of medical, prescription drugs and dental, out-of-pocket expense for co-pays and deductibles, vision care and loss of Employee Assistance Program. Assuming no inflation and no increase in future worth of money the cost of lost benefits will be $690,461.

### 7.) My wife and I are both uninsurable

My brain disorder and its unknown long term prognosis have put me into the "no one wants to take the risk" category of obtaining insurance. Although I am on Medicare, secondary insurance is unattainable at reasonable rates.

Because of my wife's fight against breast cancer (2001) the side effects of chemotherapy diminished her overall health. She is now diabetic and her body chemistry has yet to return to normal. She is currently on diabetic medication, thyroid medication and hormone treatment..

As a result of our medical conditions, without insurance ***our medical and pharmaceutical expenditures will be our largest household budgeted item.*** Without my anti-seizure medication the brain seizures and migraines will keep me bed ridden, as I was at the start of my disability.

My career with Nortel started in 1986. Although my starting salary was better than average, the dominate reason for staying with Nortel was the robust benefit package.

My wife and I understood the long term value and choose Nortel's compensation package because of the great medical coverage and benefits.

## 8.) I can no longer work anywhere

The Vocational Expert report states:

> *"Mr. Lindow is not employable in any capacity and is not able to sustain even the simplest of work..."*

The early diagnosis was Alzheimer's disease and migraines. More recently the diagnosis is ongoing brain seizures causing the migraines and loss of cognitive think and memory.

With this disability my wife is heavily involved in managing my life. She attends my doctor appointments and other social interactions with me. *I am unable to focus or retain most of what is discussed in our LTD status meetings.*

After nearly 20 years of productive employment with Nortel I held the position of Program Manager for their high-tech internet products. Those days are over. All my life I have refined my workshop in hopes of a retirement hobby. Now there are days when I am forbidden to turn on power tools. *I went from high tech software to low tech sawdust.*

My last day of active employment was Nortel was July 11, 2007 when my brain malfunction reached critical level. On that day I literally called my boss and informed him that I was on medical leave. No previous warning, no rumors nor indications that I was not going to be in work the next day.

**I am at the mercy of the court in determining the future of my family's life.**

## RELIEF REQUESTED

1. I request that the Debtors motion to Terminate the LTD Plans and LTD Employees [DI#8067] be rejected.

2. I request the Debtors compensate me in full for my LTD benefits to age 65 that Nortel became liable for once I became totally disabled, my Total Claim is $223,876.

3. I request the Debtors compensate me in full for the cost of lost benefits and lost monies due to bankruptcy of Debtors, my Total Claim is $1,641,452.

4. I request that there is no interruption in disbursement of LTD benefit (or compensation of same) as the impact to me would be both financially and medically devastating.

## EXHIBITS

1. Letter from the Law Offices of Silver and Tube (2 pages)

2. Nortel's "Your Total Compensation Report" for 1995 (4 pages)

3. PBGC Optional Benefit Form (1 page)

4. Social Security Approval of Benefits (1 page)

5. Application for Social Security Benefits (1 page)

6. Vocational Expert Report ( 11 pages)

7. Proof of Claim – LTD spreadsheet (1 page)

8. Summary of Personal Losses (3 pages)

9. Phone Log dated 4/3/09 (1 page)

10. 2007 STD & LTD Summary Plan (41 pages)

## NOTICE

2.    Notice of this Objection has been provided to (a) counsel to the Debtors; (b) the United States Trustee for the District of Delaware; (c) counsel to the LTD 1102 Committee; and (d) all parties required to receive service under Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware through the Court's electronic filing system. Fred S. Lindow respectfully submits that, given the nature of the relief requested, no other notice of the relief requested herein need to be given.

**WHEREFORE**, Fred respectfully requests the entry of an Order, in the form attached:

1. I request that the Debtors motion to Terminate the LTD Plans and LTD Employees [DI#8067] be rejected.

2. I request the Debtors compensate Fred S. Lindow in full for my LTD benefits to age 65 that Nortel became liable for once I became totally disabled, my Total Claim is $223,876.

3. I request the Debtors compensate Fred in full for the cost of lost benefits and lost monies due to bankruptcy of Debtors, my Total Claim is $1,641,452.

4. I request that there is no interruption in disbursement of LTD benefit (or compensation of same) as the impact to me would be both financially and medically devastating.

5. Order that there is no interruption in disbursement of LTD benefits (or compensation for same) to Fred S. Lindow

Dated: October 19, 2012

Fred S. Lindow
PO Box 33206
Los Gatos, CA 95031
Telephone: 408-691-4169
Facsimile: N/A
Email: flindow@jafre.com

*Appearing Pro Se*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Re: Docket No. 8067** |

## ORDER GRANTING OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

Upon consideration of the Objection to entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees (the "Objection") and any responses thereto; and it appearing that sufficient notice of the Objection has been given; and in good cause having been shown, it is hereby

ORDERED that the Objection is granted.

---

[1]   The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Dated: _____, 2013
Wilmington, Delaware

_____

HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

================= Law Offices of =================

1339 Pauline Drive
Sunnyvale, California 94087

## Silver & Taube

(408) 737-2313
Facsimile (408) 737-2937

==================================================

February 27, 2009

Fred Lindow
4821 Clydelle Avenue
San Jose, CA 95124

Re:    LTD Claim with Nortel Networks

Dear Mr. Lindow:

At long last, your check from Prudential has arrived. Please note the deductions for medical, dental, Social Security Disability etc. I've enclosed a copy of our fee agreement and a disbursement account. Please note that our fee agreement is dated July 14, 2009 and the SSDI award is dated August 18, 2008. Therefore, our fee was initially calculated without inclusion of the SSDI award. However, since the award came so closely upon our fee agreement, I have credited one half of the SSDI award against the fee calculation adjusting our fee downward by $4956.55. Please call me if you have any questions. Future benefits should be electronically deposited into your bank account. I will send you your files in a few months after everything is going well. It was and will be a pleasure to work with you.

Very Truly Yours,

Melvyn D. Silver

February 27, 2009

FRED LINDOW v. NORTEL
LTD CLAIM

Gross Settlement
1/9/08 - 2/28/09                                     $81,835.54

COSTS

| 9/16/08  | Dr. Scopp          | $2600.00  |
| 11/13/08 | Dr. Abeliuk        | $4600.00  |
| 11/13/08 | Mr. Beeman         | $1362.50  |
| 10/29/08 | UPS to Prudential  | $  19.56  |

        TOTAL                                       $8582.06

ATTORNEYS FEE (1/3 after costs)

    1/3 x $73253.48                                 $24417.82 (adjusted
                                                    to $19461.27

    Net to Client                                   $48,835.66
    Less: SSDI                                      $29415.24
    Other deductions                                $ 8,897.81
    (See check stub)

    Net to client                                   $10522.61
    Fee adjustment:                                 $4956.55

    NET TO CLIENT                                   $15479.16

Pg 2/2



# Your Total Compensation Report

NORTEL

Pa 1/4

# Total Compensation = Pay + Benefits

Northern Telecom spends $1,409,341,700 annually in employee salaries and benefits.

In addition to your regular paycheck, Northern Telecom contributes a significant amount to the cost of your benefits. In fact, in 1995, the Company will contribute $ 17,939 on an annual basis toward the cost of your benefits. The chart below illustrates just how much Northern Telecom's contributions add to your annual salary.



## Your Total Compensation

| | |
|---|---|
| Government Required: FICA, Unemployment, Workers' Compensation, etc. | $   6,632 |
| Health and Welfare | $   6,382 |
| Retirement/ Survivor | $   4,925 |
| Annual Salary | $  67,468 |
| Your Total Compensation | $  85,407 |

# Flex Plan and Other Benefits

Northern Telecom provides FLEX Benefits which offers you a choice among different types and levels of benefits. You may choose from the following benefits to design a program that is best for you and your family: Medical, Dental, Vision and Hearing Care, Employee Life Insurance, Dependent Life Insurance, Short-Term Disability and Long-Term Disability coverage, Health and Dependent Care Reimbursement Accounts.

The Company gives you $ 806 annually in Flex Credits to put toward your choices for your FLEX Benefit program.

Pg 2/4

# Looking Toward the Future

To help provide for your financial security in your retirement years, the Company provides two benefit plans (the Long-Term Investment Plan and the Retirement Plan). These two plans, along with Social Security benefits, can be combined to provide income for your retirement.

## Long-Term Investment Plan

The Long-Term Investment Plan offers you an opportunity to accumulate personal savings for retirement. For every dollar you invest in the plan, up to 6% of your pay, the Company will contribute 60 cents.

As a participant in the Long-Term Investment Plan, your account balance on July 31, 1995, is:

| | |
|---|---:|
| Fixed Income Investment Fund .................................................$ | 0 |
| Northern Telecom Limited Stock Fund .........................$ | 25,090 |
| Large Capitalization Equity Index Fund ..........................$ | 107,740 |
| Capital Appreciation Fund .............................................$ | 0 |
| Asset Management Fund ................................................$ | 0 |
| **Total Account Balance** ...............................................$ | **132,830** |
| **Your Vested Account Balance =** | **$ 132,830** |

Your investment in the Long-Term Investment Plan is always 100% vested. However, the Company's contribution to the plan on your behalf becomes fully vested only after you complete 5 years of service. Your vested account balance is the amount you would be entitled to receive if your employment ended on July 31, 1995.

Using your current salary, current contribution rates, and assuming continuous employment with the Company to age 55 or 65, your estimated balance at retirement will be:

| Estimated Long-Term Investment Plan Balance at: | |
|:---:|:---:|
| Age 55 | Age 65 |
| $  371,142 | $   856,553 |

(Assumes 7.5% earnings per year.)

## Retirement Plan

After completing 5 years of service, you are fully vested in the Retirement Plan. Vested participants are entitled to receive a monthly benefit at age 65 or as early as age 55 in a reduced amount.

Using your current salary and assuming continuous employment with the Company to age 55 or 65, the estimated retirement benefit payable for the remainder of your life will be:

| Estimated Monthly Retirement Benefit at: | |
|:---:|:---:|
| Age 55 | Age 65 |
| $   736 | $   1,973 |

If you are married when you retire, you will automatically receive a joint and survivor annuity unless your spouse waives the option. This monthly benefit is less than the monthly retirement benefit shown above which is payable for your life only, however it provides continuing lifetime income to your spouse following your death.

## Social Security

The Company matches the contribution you make to the Social Security system every paycheck. Assuming continuous employment to age 65 and continuation of your current salary, your estimated Social Security benefit will be:

**Monthly Social Security benefit at age 65**                                   $    1,318

Pg 3/4

# How Your Retirement Income Adds Up

Your estimated total retirement income as a percent of your current pay is shown on the graph below based on assumptions and projections from the previous page.

Most people need at least 70% of their final pay to maintain their lifestyle at retirement. Using estimates based on your Long-Term Investment Plan, Retirement Plan and Social Security, the chart below shows how close you may come to that target. Additional savings could help provide an extra cushion.



# Information About Your Statement

This total compensation report is your own personal benefit summary as of August 1, 1995. The amounts contained in your total compensation report are estimates designed to give you a general idea of the value of your benefits based on your current earnings and current benefit plan formulas. Your actual benefits will be based on your actual eligible earnings, employment history and benefit plan formulas at the time of your retirement. Other factors may also affect your final benefit, such as court orders giving former spouses or children rights to a portion of your benefits. These estimates should not be the basis for major personal and financial decisions. For example, if you are considering retirement, you should first contact the Human Resources Information Center so that precise retirement benefit information can be provided to you. You may also want to contact your local Social Security office to obtain your specific Social Security benefit amount. It is important for you to make an informed decision based on correct and complete information.

While every effort has been made to report this benefit information accurately, your actual benefits will be calculated in accordance with the controlling legal documents (plan documents). To the extent that this total compensation report or any written or oral statement or communication is inconsistent with the benefit calculated in accordance with the applicable plan document, the plan document will always control. Nothing in this total compensation report is intended to constitute a contract between the Company and its employees concerning duration of employment or the actual amount of benefits payable under the plans or to limit the right of the Company to amend or discontinue any employee benefit plan at any time.

If you have any questions about your total compensation report or about your benefits, please contact the Human Resources Information Center at 1-800-676-4636 or ESN 255-4636.



SCL / 523 / 3020
FRED S LINDOW
4821 CLYDELLE
SAN JOSE CA 95124

019870

Pg 4/4



## PRIVACY ACT DATA

# Optional Benefit Form

| Plan Name: | NORTEL NETWORKS RETIREMENT INCOME PLAN |
|---|---|
| Plan Number: | 21391900 |

| Participant: | LINDOW, FRED | Spouse: | JANICE LINDOW |
|---|---|---|---|
| SSN: | XXX–XX–7762 | Date of Birth: | May 10, 1952 |
| Cust Id: | 4293766 | Beneficiary Type: | Spouse |
| Date of Birth: | September 6, 1950 | | |
| Pension Benefits Beginning: | August 1, 2010 | | |

| | Benefit Form | Participant's Benefit | Survivor's Benefit |
|---|---|---|---|
| A: | Plan's Automatic Form for **Unmarried** Participant: Straight Life Annuity | $253.19 | None |
| B: | Plan's Automatic Form for **Married** Participant: Joint &Survivor – 50% | $225.76 | $112.88 |
| C: | Straight Life Annuity | $253.19 | None |
| D: | Joint–and–50% Survivor Annuity | $225.76 | $112.88 |
| E: | Joint–and–75% Survivor Annuity | $217.89 | $163.42 |
| F: | Joint–and–100% Survivor Annuity | $210.55 | $210.55 |
| G: | Joint–and–50% Survivor "Pop–up" Annuity * If the beneficiary dies first, the participant's benefit increases to the amount shown in Line C. | $222.39 | $111.20 |
| H: | 5–year Certain–and–Continuous Annuity | $251.61 | $251.61 |
| I: | 10–year Certain–and–Continuous Annuity | $246.98 | $246.98 |
| J: | 15–year Certain–and–Continuous Annuity | $239.65 | $239.65 |

Please read the information about your benefit choices that PBGC has provided with your application.
Some optional annuity forms offered by PBGC may be identical to your plan's automatic annuity forms.

| Prepared by: | Suzie Charles |
|---|---|
| Date Prepared: | 07/07/2010 |

Manually–keyed Report



*Approval*

# Social Security Administration
## Retirement, Survivors and Disability Insurance
Notice of Award

Great Lakes Program Service Center
600 West Madison Street
Chicago, Illinois 60661-2474
Date: August 18, 2008
Claim Number: 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HA

000117 MCSM74 N3  2.100

FRED S LINDOW
4821 CLYDELLE AVE
SAN JOSE, CA 95124-4902

We have approved your application for disability benefits. Your entitlement date
is January 2008.

Any future payments will be based on your current monthly benefit rate of
$2,136.70.

## Why We Are Delaying Your Social Security Payments

We have determined that you need help managing your payments. We will be
selecting a qualified person to receive your payments. We call this person a
representative payee. It will be your payee's duty to manage your Social
Security payments for you and use them for your needs.

## What You Need To Do

If you know someone who can be your payee, please call us at either of the
telephone numbers shown at the end of this letter. We will consider this person
for your payee. Also, call us within the next 30 days if you do not hear from us.
You may be able to get some payments directly while we make our decision.

## When We Begin Your Payments

When we begin your Social Security payments, you will be paid all money that is
due you. When we make a decision about your payee, we will send you another
letter. This letter will explain what you can do if you disagree with our payee
decision.

## Other Social Security Benefits

The benefit described in this letter is the only one you can receive from Social
Security. If you think that you might qualify for another kind of Social Security
benefit in the future, you will have to file another application.

Enclosure(s):
Pub 05-10153
Pub 05-10058

C

See Next Page

B 1/1

# Application for SSDB

## Benefit Results

 

Based on the information you gave, you could get the benefits listed below now or later in addition to any benefits you're already getting. These results are based on the answers you entered below.

WARNING! You cannot come back to this page once you leave it, so for your own records, print or save this page before you leave it or use any of the helpful links below.

### Social Security Disability Insurance Benefits

[Hide Details]

These benefits are paid to people who have earned enough Social Security credits and who are unable to work because of a disability that has lasted or will last for at least 12 months or end in death.

You could get Social Security disability benefits if:

- you have enough work credits.
- you have enough recent work and
- your medical condition meets our disability rules.

If you worked for a Federal, State, or local government and only paid the Medicare portion of the Social Security tax, contact us.

If you'd like to get an estimate of how much your monthly benefit might be, use the link below to request a Social Security Statement. If you have a Statement, use the link to our Benefits Calculators.

### Would you like more information about disability benefits?

Use the link below to our Publications Home Page and review our publication "Disability," Social Security Publication Number 05-10029.

You can apply for disability benefits by choosing "Contact Us" to make an appointment.

### What We Mean By "Disability"

Social Security's definition of disability is different than that of other programs. We pay only for total disability we do not pay for partial disability or for short-term disability.

Social Security's disability definition is based on your inability to work. We consider you disabled under Social Security rules if:

- you cannot do work that you did before.
- we decide that you cannot adjust to other work because of your medical condition(s), and
- your disability lasts or is expected to last for at least one year or to result in death.

### What should I do

REMEMBER: This screening tool is NOT an application.

You must complete application before v know for sure if you qualify for any bene When you apply we ask you for addition information that will help us decide if yo really could get any benefits. Contact us right away so you w not lose any benefit

### Need to change yo answers?



Pg 1/(



*VIA E-MAIL AND U.S. MAIL*
(mdsrst@cs.com)

October 24, 2008

Melvyn D. Silver, Esq.
Silver & Taube
1339 Pauline Drive
Sunnyvale, CA 94087

Jeff Beeman, M. Ed.
C.R.C., N.C.C. C.D.M.S.

V O C A T I O N A L
E X P E R T

Re:    Claimant:    Fred Lindow
       Claim No:    10978418 - Long Term Disability
       DOB:         9/6/50
       SSN:         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

## VOCATIONAL EXPERT REPORT

**Primary Issue**: Melvyn D. Silver, attorney for Fred Lindow, in correspondence 10/18/08, along with enclosed enumerated records reviewed No. 1-10, requests a vocational analysis in lieu of Mr. Lindow's denial of Long Term Disability ("LTD") benefits by Prudential Financial 1/9/08 and 6/9/08. Attorney Silver requests a vocational analysis to include an interview with Mr. Lindow. This analysis is to address whether Mr. Lindow can perform the material and substantial duties of his occupation and whether Mr. Lindow is employable.

David Moran, Disability Consultant from Prudential Insurance, in correspondence 1/9/08 to Fred Lindow, summarizes, "We have completed our review of your claim for Long Term Disability... After careful review we have determined that you are no longer eligible for Short Term Disability (STD) benefits and are not eligible for Long Term Disability (LTD) benefits." Mr. Moran, in his 1/8/08 denial letter, continues, "You are considered Totally Disabled for LTD ... if ...you are unable to perform the essential functions of your job. This means that you cannot perform the work you were normally performing at the time of your disability with or without reasonable accommodations..." Mr. Moran states, "Information provided to us from your physicians and yourself for review included:

P.O. Box 1360

Soquel, CA 95073

Phone (831) 476-1151

Fax (831) 476-9632

- Dr. Rumore (psychiatrist) for a period of 11/8/07 – 12/14/07;
- Dr. Sachdev (psychiatry and neurology) for the period of 10/11/07- 11/8/07;

Pg 1/u

Melvyn D. Silver, Esq.
October 24, 2008
Page 2

- Dr. Rossen (cardiologist) for the period of 9/12/07 (hypertension); and
- "Activities of Daily Living Questionnaire" completed 12/31/07.

Mr. Moran, continuing with LTD denial letter, states, "Based on review of the above medical information, it appears that you treat approximately once a month with psychiatrist for your complaints of depression, anxiety, and memory problems." Mr. Moran states, "Dr. Sachdev has noted that you have difficulty multi-tasking and recall was 2 out of 3." Mr. Moran, in his 1/9/08 denial letter, goes on to say, "… Based on review of the above medical information it does not appear that you suffer from significant medical impairment(s)."

Joseph Walles, Senior Appeals Analyst from Prudential Insurance, in correspondence to Fred Lindow 6/9/08, states, "We have completed our review of your request for reconsideration of short and long term disability… We have determined that our decision is to terminate the short term disability claim effective 12/31/07 and to disallow… pending LTD claim… decision has been upheld… Robert E. Greeley, Mr. Lindow's attorney, has submitted an appeal of the 1/9/08 denial in correspondence 3/7/08. Mr. Walles, in his 6/9/08 denial of short term and LTD benefits for Mr. Lindow, states under history, "Mr. Lindow ceased working on 7/11/07 due to symptoms of memory loss and peripheral vertigo. Short term disability benefits were approved for the period of 7/11/07-12/30/07… Subsequent medical documentation did not support Mr. Lindow was cognitively or functionally impaired from performing the duties of his occupation and his STD claim was terminated effective 12/31/07." Mr. Walles refers to neuropsychological evaluation by Dr. Nasmeh, which, "…documented performance on memory testing was an area of substantial deficit relative to premorbid expectations." Mr. Walles further states, "…It was further opined that the examination did not include adequate symptom validity testing, targeted memory test performance." (Dr. Nasmeh, neuropsychological testing January, February, 2008). Continuing, Mr. Walles states, "It was opined that consideration should be given to obtaining a repeat neuropsychological exam." Mr. Walles, under Psychiatric Medical Review, summarizes in the 6/9/08 denial letter, "It was noted that opinion of the board certified neuropsychologist, (insured consultant, Dr. Mark Williams, Ph.D.) who reviewed Mr. Lindow's neuropsychological testing, opined that Mr. Lindow's performance on the memory testing was an area of substantial deficit relative to premorbid expectation." The examination was noted to have not included adequate symptom validity testing, targeting memory in tests. "Based upon review of the available information on file, it was opined that Mr. Lindow does not have any evidence of psychological impairment from 12/31/07 through the present. … Medical evidence on file does not support that Mr. Lindow experiences any psychological or cognitive impairment. … "We have upheld the decision to terminate his claim for short term disability and long term disability benefits."

I have worked as a contract vocational expert for the Social Security Administration-Office of Disability Adjudication and Review (ODAR) for the past 12 years. I am currently providing vocational expert testimony to a federal administrative law judge hearing in San Francisco for the San Francisco ODAR office, along with the Oakland and San Rafael ODAR offices. I have provided testimony at approximately 4,500 Social Security Administration hearings over the past 12 years, addressing issues of employability and transferable skills. I have also provided

P.g 2/11

Melvyn D. Silver, Esq.
October 24, 2008
Page 3

extensive vocational analysis in the LTD arena, including transferable skills analyses, labor market surveys and return-to-work/job search services for both carrier and plaintiff. For the past seven years I have also completed comprehensive vocational analyses in Monterey and Santa Cruz County Superior Courts/Family Law, and have provided case management vocational plan developments, job analyses, labor market surveys for California injured workers, federal workers, and California teachers throughout the past 27 years.

As part of the preparation, research and compilation of this Vocational Expert Report, I interviewed Fred Lindow for over an hour on 10/24/08. Sources utilized doing this vocational analysis included the O*Net Dictionary of Occupational Titles, referencing engineering managers and industrial engineers, along with the various records reviewed below.

## Records Reviewed:

- Fred Lindow Job Description-"Nortel Product Manager"
- Harmeet S. Sachdev, M.D. – Neurological Consultation 7/9/07 (consultation for memory impairment)
- 11/8/07 analysis letter to Darryl Hein M.D. (Sachdev is Diplomate of American Board of Psychiatry and Neurology)
- Fred Lindow-"Activities of Daily Living Questionnaire" 12/31/07, "Typical Day at Work", "My Lifestyle: (Activities of Daily Living)"
- Prudential Financial (Attending Physician Information 7/30/07 of Harmeet Sachdev, M.D. re Fred Lindow: "Memory dysfunction-loss of concentration, unable to return to work,"
- Telephone Note 12/14/07-Dave Moran, and First Claim Denial-David Moran-Disability Consultant 1/9/08,
- Second Claim Denial-6/9/08; Joseph Walles, Sr. Appeals Analyst
- Social Security Administration-Disability Insurance –SSA approves disability benefits January 2008 (determines that Mr. Lindow needs help managing SSA payments).
- Alfred Scopp, Ph.D.-Neuropsychological Evaluation Exam 8/7/08-report 8/12/08.
- Robert E. Greeley, Esq. appeal for Fred S. Lindow LTD
- Frank Rumore, M.D., Psychiatry. Letter 2/25/08. Concurs with Dr. Nasmeh. Fred Lindow unable to perform essential functions of his job.
- Doris A. Nasmeh, Ph.D. Neuropsychological Evaluation 1/28/08, 2/1/08 and 2/4/08
- Prudential Medical Review-Marcus T. Goldman, M.D. "5/27/08-Independent Peer Review Report
- Mark A. Williams, Ph.D., Neuropsychological Review
- Oscar N. Abeliuk, M.D., neurologist. Comprehensive Neurological Consultation Evaluation/Exam 9/17/08, Report-9/30/08
- Jeff Beeman, Vocational Expert, interviews Fred Lindow 10/24/08 and Jan Lindow (Fred's wife): Fred's abilities (Restrictions and Limitations (4 pages)-February 2008.

Pg 3/11

Melvyn D. Silver, Esq.
October 24, 2008
Page 4

## Medical History - Restrictions and Limitations/Residual Functional Capacity

### Social Security Administration

In correspondence 8/18/08 from the Social Security Administration-Retirement, Survivors, and Disability Insurance, ("SSA") states, "We have approved your application for disability benefits. Your entitlement date is January 2008 -- we have determined that you need help managing your payments. We will be selecting a qualified person to receive your payments. (Subsequent interview with Mr. Lindow 10/24/08. His wife, Jan, was identified as the payee for Social Security Disability benefits.) In interviewing Fred Lindow, 8/24/08, his wife, Jan, also shared a conference line to assist Mr. Lindow with clarification as needed. Mrs. Lindow stated that Mr. Lindow's disability benefits for Social Security were awarded effective from July 2007, at which time Mr. Lindow was 56 years old, that SSA based approval of "disability benefits strictly on a review of medical reports/records, which included neuropsychological exam by Dr. Doris Nasmeh, Ph.D., records from Frank Rumore, M.D., treating pharmaceutical psychiatrist, and records from Harmeet S. Sachdev, M.D., Psychiatry and Neurology, treating neurologist.

Under Social Security, Mr. Lindow would need to be assessed with a "severe impairment" which means that if the impairment prevents basic work activity and the individual is not capable of basic, routine work, for example working 40 hours/week earning minimum wage. The Social Security Administration would also have looked closely at Mr. Lindow's former job, transferable skills, and various work, even unskilled, at the lightest of jobs.

Based on the totality of medical records, various neuropsychological evaluations with Dr. Nasmeh, Dr. Scopp, neurological consultation with Dr. Abeliuk, neurologist Sachdev, correspondence from Dr. Rumore, insurer neuropsychological review with Dr. Williams, medical review with insurer psychiatrist Dr. Goldman, review of Mr. Lindow's activities of daily living 12/31/07, my October 2008, interview with Mr. Lindow 10/24/08 and Social Security, along with the LTD documents/records review I summarized above, Mr. Lindow is not employable in any capacity in the United States. Mr. Lindow clearly cannot perform the material and substantial duties of his own occupation. Mr. Lindow is not employable in any capacity, skilled or unskilled, even at a sedentary or light exertional capacity.

### Oscar N. Abeliuk, M.D.

Oscar N. Abeliuk, M.D., neurologist, 9/30/08, Comprehensive Neurological Consultation report, follows an evaluation with Mr. Lindow at his office 9/17/08. Dr. Abeliuk states, "Mr. Lindow was employed as a Project Manager at Nortel. From late 2006 to July 2007, he began to experience difficulties with his memory and concentration. I have been asked to render an opinion regarding this patient's progressive difficulties with memory and concentration that resulted in his inability to return to his usual occupation. A recent comprehensive neuropsychological assessment performed by Dr. Alfred Scopp confirmed that the patient has progressive memory loss that is organic in nature." Dr. Abeliuk continues, "From late 2006 to July 2007, (Mr. Lindow's) difficulties worsened. Dr. Sachdev issued a repot 11/8/07 that Mr.

Pg 4/11

Melvyn D. Silver, Esq.
October 24, 2008
Page 5

Lindow was experiencing symptoms of memory impairment -- in addition to his memory difficulties, the patient complained of fatigue -- Dr. Sachdev indicated that Mr. Lindow has not been able to work <u>as a result of his total inability to concentrate</u>." Dr. Abeliuk continues, "I have reviewed the report of the transcranial Doppler study, performed by Dr. Sachdev on 8/31/07. <u>It was consistent with small vessel disease</u>. On July 18, 2007, an MRI scan of the brain was obtained. It was read by Dr. Stuart Mass as revealing several tiny areas of increased T2 signal in the subcortical and deep white matter of each cerebral hemisphere." Dr. Abeliuk references Dr, Nasmeh, a psychologist, administered several tests. Patient reported that he had begun to encounter difficulty remembering things -- described having difficulty following discussion and was under treatment by Dr. Frank Rumore, a psychiatrist, for depression and anxiety.

Dr. Abeliuk, in his 9/30/08, report, references Dr. Nasmeh's results of tests administered 1/28//08 and 2/4/08, were indicative of a <u>cognitive decline, making him incapable of reassuming the duties of his job at Nortel.</u>[1] Dr. Abeliuk summarizes Dr. Nasmeh's diagnosis of major depression, generalized anxiety disorder, hypertension and enlarged heart, occupational problems and GAF=50 (severe symptoms). The global assessment of functioning coinciding to a score of 50 states, "serious symptoms." My experience as Vocational Expert Contract Expert with various psychiatrists and psychologists is that with a score of 50 or below, I would assess the individual as not capable of working, or not employable.

Dr. Abeliuk continuing with his 9/30/08 neurological consultation, states that Dr. Rumore has provided treatment for the patient's depression and anxiety that "had apparently been noted that he had some lesion in the brain and that Mr. Lindow indicated that he was quite fatigued after performing work that was mentally challenging." Dr. Abeliuk references the insurer medical reviewer and psychiatrist, Dr. Marcus Goldman, 5/27/08, and neuropsychological review by Dr. Williams, Ph.D. 4/17/08. Dr. Abeliuk summarized that both insurer doctors reviewed the medical records but did not examine the patient. Dr. Abeliuk does state, "It should be noted, however, that Dr. Williams agreed that <u>testing of the patient's memory represented a performance that was below expectation, and he agreed with the finding of cognitive impairment.</u>" Dr. Abeliuk references that insurance reviewer, Dr. Williams, did suggest a repeat neuropsychological evaluation that was performed by Dr. Alfred Scopp, 8/7/08. Dr. Abeliuk references the testing by Dr. Alfred Scopp, "Revealed evidence of a rapid, progressive loss of memory. The patient's Memory Assessment Scale Global Memory Scale score was found to be in the ninth percentile. There had been worsening of his memory as compared to the time the testing was performed by Dr. Nasmeh. It was noted that his current verbal memory was in the seriously impaired zone, in the second percentile. The malingering Memory Test indicated a complete absence of malingering or faking. His testing suggested a diagnosis of Alzheimer's disease. The most impaired area was his <u>cognitive functioning</u>. He was considered (by Dr. Scopp) to be '<u>permanently and completely unemployable from any work with such grievous verbal and memory loss.</u>'" Dr. Abeliuk states, according to Dr. Scopp, "Any educated person experiencing such a rapid loss of cognitive memory would be expected to be depressed, anxious and concerned about their health. Mr. Lindow was considered <u>to have a true neurocognitive</u>

---

[1] Mr. Lindow's Project Manager experience required 6-10 years of experience.

Pg 5/11

Melvyn D. Silver, Esq.
October 24, 2008
Page 6

impairment that was not the result of emotional-related issues. The patient was permanently and completely disabled from returning to his former line of work. His memory decline has been relatively rapid." Dr. Scopp summarizes under Current Complaints, "Mr. Lindow has significant memory dysfunction that causes him to continue to be unable to retain information. Therefore, he is unable to perform his usual work duties. This results in frustration and anger as well as frequent headaches. Headaches are present behind both eyes and brought on by any mental activity." Dr. Abeliuk states, (Mr. Lindow) "has become more reclusive and less social as a result of his forgetfulness – limited in group discussions, stating, 'I normally end up with stammered speech.'"

Dr. Abeliuk, under Diagnosis, gives history of progressive, cognitive decline, consistent with dementing process. (The anxiety and depression he has been noted to have represent secondary phenomena that are not unusual in patients who have developed the early stages of a dementing illness such as Alzheimer's disease.) Dr. Abeliuk states, "According to testing by Dr. Scopp on 8/12/08, it is clear that he (Mr. Lindow) is unable to return to work at his usual and customary job. He reports an inability to engage in social activities the majority of the time. He tends to stammer and has difficulty communicating." Dr. Abeliuk summarizes, "I firmly believe that the prognosis for recovery during the next 24 months is very poor. It is likely he will need to be absent from work more than four times per month as a result of his memory impairment, and he will not be able to perform his usual tasks on a daily basis – I anticipate that in the foreseeable future the patient will continue to be disabled from his usual occupation as well as any occupation that his education, training and experience would reasonably allow."

Alfred Scopp, Ph.D.

Alfred Scopp, Ph.D. Neuropsychological Exam 8/7/08, Report 8/12/08. Dr. Scopp states, "Mr. Lindow began noticing problems with memory at work and at home one and a half to two years ago." "He gave a poor history and relied on his wife frequently for the names of doctors, medications -- he paused a long time before answering anything -- when asked to elaborate he became vague, paused a long time." Dr. Scopp summarizes that as a Project Manager Mr. Lindow managed a project team to meet specific deadlines, reporting to the CEO, a job that required a high level of written and verbal communication/complex technology reports, demonstrating leadership, management qualities, influencing people, effective leveraging, managing of high performance, cross-functional teams to reach and stretch goals. Dr. Scopp's test results included "Memory Assessment Scale Global Memory Scale score of 80 is clear, overwhelming evidence of substantial, mild cognitive impairment. Mild cognitive impairment means that there was substantial memory loss sufficient to cause inability to work in any profession requiring more than simple repetition. Dr. Scopp also summarizes Mr. Lindow with a low score, Digit Span, which "substantiates his own self-report of difficulty paying attention and remembering simple conversations at work – there is evidence of diminished speed of information processing with a digit symbol." Dr. Scopp, under testing memory, states, "There is clear, overwhelming evidence of a substantial memory loss. The Memory Assessment Scale results confirm Mr. Lindow's reports of repeating questions several times during business meetings because he cannot remember that the question was asked or an answer given… He also

PS 6/11

Melvyn D. Silver, Esq.
October 24, 2008
Page 7

reports going away from meetings or written communication from others without remembering the critical thing – while there is a greater loss of verbal memory than visual memory, there is also substantial loss of visual memory." Dr. Scopp summarizes, "Thus, Mr. Lindow has a disastrous loss of memory, especially of verbal memory, now in the second percentile. He would be unable to remember conversations or <u>even simple written materials shortly thereafter and</u> <u>would have difficulties comprehending simple e-mails or written reports. He would have great</u> <u>difficulty generating intelligent, organized, relevant e-mails and written or oral presentations.</u> …Mr. Lindow has a rapid, progressive loss of memory, especially verbal. Mr. Lindow would have great difficulty performing his job, which would be obviously apparent to others." Dr. Scopp, Ph.D., states, "Mr. Lindow's rapid decline of broad memory, and especially verbal memory, critical for his career, would be expected to cause deep anxiety, depression, and worry about health concerns."

The test results are completely valid – test results fit the profile of someone with substantial mild cognitive impairment. Dr. Scopp summarizes, "mild cognitive impairment <u>means impairment to</u> <u>cause one to be completely disabled from any work.</u> Mr. Lindow currently cannot <u>remember</u> <u>simple conversations, when asked about them, immediately thereafter, he cannot be expected to</u> <u>remember simple written material as well.</u>" Dr. Scopp again summarizes that Mr. Lindow "is permanently and completely unemployable from any work with such grievous verbal and memory loss. Any educated person experiencing such rapid loss of cognitive memory would be expected to be depressed, anxious and concerned about their health. Currently, Mr. Lindow narrowly misses a diagnosis of Alzheimer's dementia."

<u>Doris Nasmeh, Ph.D.</u>

Neuropsychological Evaluation of Dr. Doris Nasmeh, Ph.D., 1/28/08, 2/1/08 and 2/4/08. Referral Source and Questions. Dr. Nasmeh states, "He has been experiencing extreme fatigue, lack of comprehension in reading and memory problems." History: Dr. Nasmeh states, "Previously been able to perform at high level of productivity/Project Manager. Requires 6-10 years experience, Bachelors degree engineering. About a year ago began to have trouble remembering things and concentrating as well as making decisions." Dr. Nasmeh states, (Mr. Lindow ) "does suffer from hypertension and there are some small areas of his brain that appear to have ceased functioning… Has trouble following a discussion and then becomes agitated." States that, " when focusing on a task, <u>any interruption throws him off</u> – has been taking 3 naps in the afternoon – nonetheless, is very easily fatigued." Test Behavior: Dr. Nasmeh states after testing, wife stated, "Came home afterwards very fatigued and slept for 14 hours. Test results did show difficulties on items requiring memory such as recalling numbers and sequencing numbers. Wechsler Memory Scale-III-scores are indicative of loss from a previously attained level." Under Summary, Dr. Nasmeh states that, "cognitive decline as can be seen by the results of his memory testing. The results of the Luria do not indicate that he has a brain malfunction. Nonetheless, he is obviously incapable of assuming the duties of his former job. He experiences great fatigue and <u>his functioning is greatly slowed.</u>" Dr. Nasmeh's diagnosis is major depression, generalized anxiety disorder and GAF 50 -- severe symptoms as discussed. Report would place Mr. Lindow as not employable.

Melvyn D. Silver, Esq.
October 24, 2008
Page 8

Frank Rumore, M.D.,

Dr. Rumore, treating pharmaceutical psychiatrist, in his 2/25/08 correspondence, addressing his review of Dr. Nasmeh's neuropsychological exam, states, "I agree with the conclusions in Dr. Nasmeh's report. This patient is unable to perform the essential functions of his job."

Harmeet S. Sachdev, M.D.,

Treating psychologist, Diplomate of American Board of Psychiatry and Neurology, Harmeet S. Sachdev, M.D., states in his 11/8/07 correspondence to Dr. Hein, "This 56- year old man was evaluated in this office at your kind referral for symptoms of memory impairment. There was a question at times of him feeling totally inattentive to the ongoing surrounding issues. MRI scan was done and was shown to have several small areas of high intensity signals." Dr. Sachdev concludes, "The patient is not able to work due to total inability to concentrate. The further disability can be looked into by the psychiatric and neuropsychological evaluation." On the Prudential Financial Attending Physician Information form, Dr. Sachdev states, under medical obstacles to return to work, "Memory dysfunction, loss of concentration." Dr. Sachdev, on 7/9/07 Neurological Consultation, states reason for consultation -- memory impairment. Under Present Medical History -- difficulties in concentrating – has to write down notices. Difficulty doing the same job now. Has to have questions asked again and again. Can't remember, glared off. No recall of events. Diagnosis analysis: moderate memory impairment.

Dr. Marcus Goldman, 5/27/08, Insurer Psychiatrist/Medical Review:

Dr. Goldman recommends, "potential for cognitive dysfunction would best be reviewed by an expert in neuropsychology or neuropsychiatry. Dr. Goldman states, "Based on review of the data, the information does not adequately support psychiatric function impairment from 12/31 through the present." Dr. Goldman's assessment is based on record review.

Dr. Mark Williams, Ph.D., Insurer Neuropsychological Review 4/17/08:

Dr. Williams agreed that testing of the patient's memory represented a performance that was below expectation. He agreed with the finding of cognitive impairment.

Question No. 1: Can Mr. Lindow perform the material and substantial duties of his own occupation? In my interview with Mr. Lindow on 8/24/08, he provided a posting of his job description as Project Manager at Nortel for the person that is going to replace him. Key responsibilities outlined as (a)-(r) reflect a high level of supervising, troubleshooting, management, multi-tasking, operations analysis, troubleshooting, systems analysis, quality control analysis, written expression, originality, deductive reasoning, organizing, planning, prioritizing, analyzing data, communicating with lead supervisory management team, including hardware, software, product management, engineering, manufacturing, quality control, sales, marketing, customer support, training and technical support. Mr. Lindow's Project Manager responsibilities included being a team leader catalyst, coordinating, facilitating and motivating above team members. Mr. Lindow was responsible for writing, formatting technical reports,

Pg 8/11

Melvyn D. Silver, Esq.
October 24, 2008
Page 9

updating data base and status of report, working 8-10 hour days, easily 5 hours on the phone, computer, multi-tasking, supervising, troubleshooting, supporting other management and staff/team continually through the day, reporting, updating reports via e-mail, phone, texting, typically going to the site physically, troubleshooting, coordinating various departments, team members helping him to stay on task, working back and forth with quality assurance engineers. The prementioned Nortel job description summarizes, managed the operation of the integrated project team, manage track and report status against project contract, manage project risk, negotiate and obtain timing and deliverable commitment, conduct regularly scheduled IPT meetings. Nortel job description is reflective of Mr. Lindow's job. Key deliverables of the Project Manager are: (a) Project Management Plan; (b) Risk Management Plan; (c) Quality Plan; (d) Lessons Learned and Applied; and (e) Integrated Project Schedule. The successful candidate should demonstrate leadership qualities, people management, influencing skills, effective leveraging and experience in development and management of high performance cross-functional teams to reach stretch goals with tight "Time To Market" schedules. Qualifications for the Nortel Project Manager include 6-10 years experience, Bachelors degree (technical/business or related field) or equivalent experience, can manage independently and efficiently, responsible for mentoring outside organization, business prime roles, roles that act as a spokesperson for PMO, etc. Under functional knowledge and organizational knowledge, all moderate to advanced qualifications needed. Under conflict resolution, includes proactively diffuses situations to prevent conflict situations. Is effective and expeditious in resolving inter- and intra- group conflicts independently in most situations. Under judgment and decisiveness, makes decisions quickly and effectively. Judges alternatives rationally and objectively, based on a wide and accurate assessment of the facts. Prepared to commit and stick to decisions. Under business acumen, has good understanding of business principles and terms. Understands how to control costs and produce profit.

Mr. Lindow, summarizing his typical day of work in his Program Manager position for Nortel: Involves New Product Introduction Process within Research and Development arena for high-tech telecommunication/internet technology products. Summarizes staff meetings and training sessions up to 8 hours per week. Weekly project meeting -- all functional groups were present. Marketing, product line development, software development, product quality, test verification. Mr. Lindow further states his job required accurate and copious note taking. Daily e-mails sent to team and management. Separate meetings to resolve issues and work out details. Micromanagement of team leaders, 3-4 functional groups. Continuous multi-tasking. Resolving issues and conflicts. Daily updates for corporate. Constant attention and dedication to maintaining accuracy. His role was to eliminate problems which were at risk to the success of the project. In depth product knowledge, average 75-100 e-mails/day.

Mr. Lindow's own occupation required remembering written and verbal communication, leadership qualities, people management, influencing skills, effective leveraging and experience in development and management of high performance, cross-functional teams.

The various neurological reports and consultations of Dr. Sachdev, Dr. Scopp and neurological consultation with Dr. Abeliuk clearly assess Mr. Lindow as being incapable of performing the

Melvyn D. Silver, Esq.
October 24, 2008
Page 10

material and substantial duties of his own occupation. Mr. Lindow's global assessment functioning score of 50 reflect a serious occupational impairment. In the thousands of cases in which I have testified for Social Security as a vocational expert, medical experts, psychiatrists and psychologists all have stated that a person with a GAF score of 50 or below is not employable.

In interviewing Mr. Lindow 8/25/08, even with his wife, Jan's help, I summarized consistent problems since June 2007 to present in cognitive areas, focus, remembering problems dating back even to 2005 at work, as far as "fessing up" about not formatting reports correctly, not updating status reports, problems with fatigue, stamina, exhaustion after mental activities, problems dealing with groups, even as small as 2-3. Continuing problems with Group members, up to his last days worked in July of 2007, with following conversations in person or over the phone, sustaining memory, concentration, focus. Presently throughout his home are note pads, whiteboards, calendars, to-do lists. He has problems doing more than one thing at a time. Even for simple clerical, after about an hour, needs to rest, lie down, sit upright. Needs to do activities not requiring mental cognitive ability. Easily distracted. On bad days often starts stammering. Has headaches, fatigue.

Question No. 2: Is Mr. Lindow employable for any job in the workplace? Based on the totality of the medical records reviewed, including neurologist Oscar Abeliuk's 9/30/08 Report, Neuropsychological Evaluation of Alfred Scopp, Ph.D., a December 2008 Report of Nneuropsychological Exam by Doris S. Nasmeh, Ph.D., testing 1/28, 2/1 and 2/4/08 in correspondence from pharmaceutical psychiatrist Frank Rumore of 2/25/08, records from Harmeet Sachdev, M.D., psychiatry and neurology, Insurer Neuropsychological Review of Dr. Williams of 4/17/08, my interview with Mr. Lindow 8/24/08, additional records of Activities of Daily Living, 12/31/07, records from Jan Lindow addressing Mr. Lindow's problems, for example, headaches, confusion, disorientation, lack of concentration, irritability around groups of people after even simple clerical activity, easily distracted, and disoriented dealing with other people over the phone and in person, mental disconnect, staring, lack of focus – and again referring to the totality of medical records, neuropsychological evaluation and consults – reflect Mr. Lindow as not capable of performing even simple routine activity. Dr. Abeliuk, neurologist, describes Mr. Lindow, "disabled from his usual occupation as well as any occupation – result of memory impairment, not able to perform his usual tasks on a daily basis." Dr. Scopp describes Mr. Lindow, "permanently and completely unemployable for any work with such grievous verbal and memory loss."

PS 10/11

Melvyn D. Silver, Esq.
October 24, 2008
Page 11

The totality of medical records reflect that Mr. Lindow is not capable of maintaining concentration with persistence, pace, focus, in literally any type of work. Mr. Lindow is not employable in any capacity and is not able to sustain even the simplest work with any reasonable continuity, whether skilled or unskilled, even at the lightest sedentary capacity. Mr. Lindow cannot perform skilled or unskilled work. He is not employable.

Respectfully,

Jeff Beeman, M.Ed, CRC, CDMS, NCC
Vocational Rehabilitation Counselor/Expert

JB:ek

Proof Of Claim

**WHO IS THIS "PROOF OF CLAIM" BEING SUBMITTED FOR?**
**WHAT IS THE NORTEL GLOBAL ID # OF THIS INDIVIDUAL?**

Fred S. Lindow
O195774

**WHAT WAS THE FIRST DATE THAT YOU WERE OUT ON LONG-TERM DISABILITY?**

7/11/2009

**CALCULATION OF MONTHS UNTIL CLIENT REACHES AGE "65"**
WHAT IS THE MONTH AND YEAR OF YOUR BIRTH?
WHAT IS THE STARTING DATE THAT THIS POC IS TO BE BASED UPON
AUTOMATICALLY CALCULATED FOR YOU - # OF MONTHS PAST BETWEEN POC START DATE AND YOUR BIF
AUTOMATICALLY CALCULATED FOR YOU - MONTHS UNTIL YOU REACH AGE "65"

9/1/1950
1/1/2013
747
33

**YOUR ANNUAL SALARY PER YOUR 2011 FLEX BENEFITS STATEMENT**

$   116,000.00

**IF YOU HAD A 401K AND SIGNED UP FOR CONTINUED Capital Accumulation Retirement Plan (CARP) ...**
WHAT WAS THE % CARP CONTRIBUTION IDENTIFIED TO YOU BY NORTEL (PLEASE ENTER 0.02 OR 0.04)?
AUTOMATICALLY CALCULATED FOR YOU - MONTHLY CONTRIBUTION BY NORTEL INTO YOUR 401K ...

0.04

**FROM NORTEL HR MEMO ENTITLED "TERMINATION NOTIFICATION"**
SEVERANCE PERIOD
AUTOMATICALLY CALCULATED FOR YOU - SEVERANCE PAY

$    4,640.00 | $    12,760.00 |

22
$    2,230.77 | $    49,076.92 |

**FROM YOUR FEBRUARY 2011 PRUDENTIAL PAY STUB ...**
LTD CLAIM BENEFIT
LESS OFFSET
AUTOMATICALLY CALCULATED FOR YOU - NET PAY

$   6,444.48
$   2,026.20
$   4,418.28 | $   212,667.84
$    66,864.60
$   145,803.24 |

**FROM YOUR 2011 FLEX BENEFITS STATEMENT, ENTER THE "NORTEL COST PER YEAR" FOR THE FOLLOW**
MEDICAL CARE
DENTAL/VISION/HEARING CARE
HEALTH CARE REIMBURSEMENT ACCOUNT
DEPENDENT CARE REIMBURSEMENT
SHORT-TERM DISABILITY
LONG-TERM DISABILITY
CORE EMPLOYEE LIFE INSURANCE
OPTIONAL EMPLOYEE LIFE INSURANCE
DEPENDENT LIFE INSURANCE - SPOUSE
DEPENDENT LIFE INSURANCE - CHILD(REN)
LONG TERM CARE
ACCIDENTAL DEATH & DISMEMBERMENT

$   4,858.36
$    864.50
N/A
N/A
N/A
N/A
$    180.96
N/A
N/A
N/A
N/A
N/A

$   13,360.49
$    2,377.38
N/A
N/A
N/A
N/A
$    497.64
N/A
N/A
N/A
N/A
N/A

**CLAIM GRAND TOTAL**

$   223,875.67

Page 1/3

# Summary of Personal Loss
## Project Cost of Lost Medical Benefits for Fred & Jan Lindow
and
### Lost Monies due to Bankruptcy of Nortel Networks
for
### Fred & Jan Lindow

| | |
|---|---|
| Lawyer fees | $29,693 |
| 401K | $805,801 |
| Retirement | $484,826 |
| Health Care | $545,008 |
| | $1,865,328 |
| Less POC Amount | $223,876 |
| Total | $1,641,452 |

Note - Health Care is for wife and projected retirement cost for both

Pg 2/3

## Projected cost of lost benefits for Jan (spouse)

| Month | Cobra Health Insurance | Out-of-Pocket Health Ins. | Medicare AARP | Out-of-Pocket Medicare | Cobra Dental | Out-of-Pocket Dental | Vision | Prescription Coverage | Out-of-Pocket Prescription |
|---|---|---|---|---|---|---|---|---|---|
| **Monthly** | **1,200.00** | | | | **152.19** | | | **96.10** | |
| **Yearly** | **14,400.00** | **3,500.00** | **2,516.04** | **1,500.00** | **1,826.28** | **400.00** | **700.00** | **1,153.20** | **3,000.00** |
| Jan 2013 | 14,400.00 | 3,500.00 | | | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2014 | 14,400.00 | 3,500.00 | | | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2015 | 14,400.00 | 3,500.00 | | | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2016 | 14,400.00 | 3,500.00 | | | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2017 | 14,400.00 | 3,500.00 | | | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2018 (Start Medicare) | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2019 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2020 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2021 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2022 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2023 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2024 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2025 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2026 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2027 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2028 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2029 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2030 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2031 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2032 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2033 | | | 2,516.04 | 1,500.00 | 1,826.23 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2034 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2035 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2036 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| Jan 2037 | | | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 |
| **257,307.80** | **72,000.00** | **17,500.00** | **50,320.80** | **30,000.00** | **45,657.00** | **10,000.00** | **17,500.00** | **28,830.00** | **75,000.00** |

Pg 3/3

## Projected cost of lost benefits for Fred (Nortel employee)

| | Medicare Monthly | Medicare AARP | Out-of-Pocket Medicare | Cobra Dental | Out-of-Pocket Dental | Vision | Prescription Coverage | Out-of-Pocket Prescription | EAP | Life Insurance |
|---|---|---|---|---|---|---|---|---|---|---|
| Monthly | 99.90 | 209.67 | 1,500.00 | 152.19 | 400.00 | 700.00 | 96.10 | | 2.89 | 5487.3 |
| Yearly | | | | | | | | | | |
| Jan 2013 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | 5487.3 |
| Jan 2014 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | 5,487.30 |
| Jan 2015 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | 5,487.30 |
| Jan 2016 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | 5,487.30 |
| Jan 2017 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2018 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2019 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2020 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2021 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2022 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2023 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2024 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2025 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2026 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2027 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2028 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2029 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2030 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2031 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2032 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2033 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| Jan 2034 | 1,198.80 | 2,516.04 | 1,500.00 | 1,826.28 | 400.00 | 700.00 | 1,153.20 | 3,000.00 | 34.68 | |
| | 287,699.90 | | | | | | | | | |
| | 26,373.60 | 55,352.88 | 33,000.00 | 40,178.16 | 8,800.00 | 15,400.00 | 25,370.40 | 66,000.00 | 762.96 | 16,461.90 |

Monthly Medicare is the portion Nortel is currently paying

- Clinician is still telling me to Medical/Dental
Ticket # 2958294

- Status of 1 week STD
Ticket # 2955978 - Still open being ~~made~~ worke

- WageWorks : ($150⁰⁰) 2008
Ticket# 2958306

_____

3/27/09  Call from Prudential - forget Ladies name
- Social security deduction is based on
first year of benefit. They do not
care about Cost of Living increases.
- They have recalc the correct salary adjustment
& they are mailing me a check

4/3/09  Nortel HR Shared Service
Woman → Marina — #2955978 → ~~approved~~
Still under review as of April 1st.
- No information on whether we would
lose medical if Nortel goes out of
bsn, but we would more than
likely not loose Prudential Money.
We are done with Nortel ~~exept too~~
medical.

4/15/09  HR - Audry - ~~No new message on~~
1 wk STD pay. Danielle is gone
& Natalie is leaving

Pg 1/1

# Nortel Networks Inc. Short-Term Disability Plan and Long-Term Disability Plan

# Summary Plan Description 2007

# IN THIS SUMMARY PLAN DESCRIPTION

ABOUT THIS SUMMARY PLAN DESCRIPTION................................................................5

# SECTION ONE - SHORT-TERM DISABILITY PLAN AND LONG-TERM DISABILITY PLAN BENEFITS

INTRODUCTION TO SHORT-TERM DISABILITY PLAN AND LONG-TERM DISABILITY PLAN BENEFITS...6

Claims Administrator Information Used in Claim Determinations ........................................6

PLAN HIGHLIGHTS................................................................

WHO IS ELIGIBLE ................................................................ 7

You...................................................................8

HOW TO ENROLL ................................................................8

If You are on Disability During an Annual Enrollment Period................................8

Short-Term Disability Plan and Long-Term Disability Plan Options under FLEX................9

WHEN COVERAGE BEGINS.....................................................10

Core Short-Term Disability Plan and Long-Term Disability Plan Benefits.................10

Optional Short-Term Disability Plan and Long-Term Disability Plan Benefits...............10

During the New Hire Enrollment Period.................................................11

During the Annual Enrollment Period..................................................11

Delay of Effective Date.................................................................11

Changing Your Selections...............................................................12

WHEN COVERAGE ENDS...................................................... 12

For You .................................................................. 13

WHAT COVERAGE COSTS.................................................... 13

WHEN CONTRIBUTIONS BEGIN.............................................. 13

FLEX EARNINGS............................................................. 13

SHORT-TERM DISABILITY BENEFITS........................................... 14

STD Benefit Amount.................................................... 14

Definition of Disability for STD Purposes ...............................15

Reasonable Accommodations........................................... 16

When Benefits Begin and End...........................................16

Reduction of STD Benefits Due to Other Income.........................17................18

Applying for Social Security Benefits................................................................................................19

Exclusions....................................................................................................................................19


LONG-TERM DISABIITY BENEFITS ...................................................................................20

LTD Benefit Amount.................................................................................................................20

Definition of Disability for LTD Purposes .............................................................. ..20

Reasonable Accommodations..................................................................................................20

When Benefits Begin and End.................................................................................................21

Waiver of Premium..................................................................................................................21

Reduction of LTD Benefits Due to Other Income..................................................................23

Applying for Social Security Benefits.....................................................................................24

Social Security Disability Benefits and Medicare...................................................................25

Mandatory Vocational Rehabilitation Program.......................................................................25

Cost-of-Living Adjustment......................................................................................................26

Exclusions................................................................................................................................27

Preexisting Conditions Exclusion...........................................................................................27

OCCUPATIONAL DISABILITY BENEFITS................................................................................27

OTHER IMPORTANT INFORMATION.......................................................................................28

A Note about State Disability Laws.........................................................................................28

................................................................................................................................................28

# SECTION TWO - ADMINISTRATIVE INFORMATION

IDENTIFYING INFORMATION........................................................................................................30

CONTACT INFORMATION FOR CLAIMS FILING AND APPEAL REVIEW.......................................31

Claims Administrator Contact Information...............................................................................31

Final Appeal Reviewer Contact Information............................................................................31

Filing Claims............................................................................................................................31

Determination of Short-Term Disability Benefits and Long-Term Disability Benefits by the Claims
Administrator......................................................................................................................32

Appealing a Denied Short-Term Disability Claim or Long-Term Disability Claim to the Claims
Administrator......................................................................................................................33

Appealing a Denied Short-Term Disability Claim or Long-Term Disability Claim to the Nortel Networks
Employee Benefits Committee............................................................................................34

Final Note on Short-Term Disability Plan and Long-Term Disability Plan Claim Appeals .................................. 36

YOUR RIGHTS UNDER ERISA ............................................................................................................................ 36

FUTURE OF THE PLAN ........................................................................................................................................ 37

# SECTION THREE - GLOSSARY

# ABOUT THIS SUMMARY PLAN DESCRIPTION

This is the Summary Plan Description (SPD) that describes the provisions of the Nortel Networks Short-Term Disability Plan and the Long-Term Disability Plan that are in effect for the 2007 Calendar Year. It is designed to provide you with a comprehensive resource providing detailed information about your short-term and long-term disability benefits and connecting you to other sources of information that could not be described fully in this SPD. It is divided into the following sections:

- **SECTION ONE – SHORT-TERM DISABILITY PLAN AND LONG-TERM DISABILITY PLAN BENEFITS** describes the provisions of the Short-Term Disability Plan and the Long-Term Disability Plan that determine your benefits.

- **SECTION TWO – ADMINISTRATIVE INFORMATION** includes administrative details about the Short-Term Disability Plan and the Long-Term Disability Plan, such as how to file Claims and appeal denied Claims, where to get more information, your ERISA rights and how the Company may amend the plan.

- **SECTION THREE – GLOSSARY** contains brief descriptions of terms used in this SPD.

In no case does this document indicate or guarantee any right of future employment.

Please note that certain key words in this document are capitalized. You can find these words defined in the applicable sections of this SPD or in the Glossary section at the end of this document.  References to "you" throughout this document are references to the enrolled Employee.

# SECTION ONE – SHORT-TERM DISABILITY PLAN AND LONG-TERM DISABILITY PLAN BENEFITS

This section describes the provisions of the Short-Term Disability Plan and the Long-Term Disability Plan, including who is eligible, how participation is elected, what benefits are paid, and when participation ends.

## Introduction to Short-Term Disability Plan and Long-Term Disability Plan Benefits

The Short-Term Disability Plan and the Long-Term Disability Plan are two parts of the Nortel Networks FLEX Program. The FLEX Program is a flexible benefits or "cafeteria" plan that offers you a choice among different types and levels of benefits. FLEX offers two kinds of benefits: "Core" and "Optional". Under FLEX, you may choose among various Core and Optional FLEX Program benefits to create your own customized benefits package. Under the Short-Term Disability Plan and the Long-Term Disability Plan, you are provided short-term and long-term disability coverage as part of your Core FLEX Benefits and, as part of your Optional FLEX Benefits, you can choose optional short-term and optional long-term disability coverage for yourself. Or you may decline optional coverage.

Your disability benefits are designed to continue all of your income for a period of time and a portion of your income for an additional period if you are unable to work due to Illness or Injury and meet specific definitions of "Disabled" under the plans. The Company has chosen The Prudential Insurance Company of America (Prudential) to administer the Short-Term and Long-Term Disability Plans.

The information contained in this document is a summary plan description (SPD) under the terms of the Employee Retirement Income Security Act of 1974 (ERISA). The complete terms of the Short-Term Disability Plan and the Long-Term Disability Plan  consist of:

- this SPD, as well as
- subsequent information that is provided to you about plan changes from year-to-year, and
- certain information developed and used by the Claims Administrator in evaluating your Claims.

Such information includes the resources listed below.

## Claims Administrator Information Used In Claim Determinations

In connection with the appointment of Prudential as the Claims Administrator of the Long-Term Disability Plan and the Short Term Disability Plan (the "Disability Plans"), the Plan Administrator delegated the exclusive authority to interpret and administer the provisions of the Disability Plans, including discretionary authority to:

§   construe and interpret the terms of the Disability Plans,

§   determine the validity of charges submitted under the Disability Plans, and

§   make final, binding determinations concerning the availability of benefits under the Disability Plans.

In addition to the standards described in this SPD, when Prudential makes a claims decision they also rely on standard texts and Prudential policies concerning medical conditions, disabling conditions, and physical and mental requirements for the performance of different occupations.

In connection with the determination of your Claim, you may request, free of charge, reasonable access to, and copies of all documents, records, and other information relevant to your Claim--including any written standards that were relevant other than this SPD. For this purpose, a document, record, or other information is treated as "relevant" to your Claim if it:

(1) was relied upon in making the determination on your Claim;

(2) was submitted, considered, or generated in the course of making the determination on your Claim, regardless of whether such document, record, or other information was relied upon in making the determination;

(3) demonstrates compliance with the administrative processes and safeguards required in making the determination on your Claim; or

(4) constitutes a statement of policy or guidance with respect to the Long-Term Disability Plan, regardless of whether such statement was relied upon in making the determination on your Claim.

To request a document, record, or other information described above in determination of your Claim, send a written request to Prudential at the following address:

Prudential Insurance Company of America
2 Ravinia Drive
Suite 1650
Atlanta, GA 30346

# PLAN HIGHLIGHTS

## Short-Term Disability (STD)

| Core STD Benefit | Optional STD Benefit |
|---|---|
| 100% of your pre-disability FLEX Earnings for up to 6 weeks, then 66 2/3%* of your pre-disability FLEX Earnings up through the next 20 weeks | Increase core coverage from 66 2/3% to 90% of your pre-disability FLEX Earnings for the 7th week through the 26th week |

## Long-Term Disability (STD)

| Core LTD Benefit | Optional LTD Benefit |
|---|---|
| 55%* of your pre-disability FLEX Earnings after you have been disabled and receiving benefits from the Nortel STD Plan for 26 consecutive weeks | Increase your core coverage from55% to 66 2/3% of your pre-disability FLEX Earnings after you have been disabled and receiving benefits from the Nortel STD Plan for 26 consecutive weeks |

*Or statutory minimum (if greater)

STD and LTD benefits are mutually exclusive and the determination of whether each option pays benefits is independent of the decision made under the other. However, you must receive benefits for the maximum period of 26 weeks under the STD Plan to be eligible for benefits under the LTD Plan. Under no circumstances will STD and LTD benefits be paid concurrently.

# WHO IS ELIGIBLE

You are eligible to participate in the Short-Term Disability Plan and the Long-Term Disability Plan if you are a regular Employee working 20 or more hours per week.

If you are a member of a bargaining unit, you are not eligible for the Short-Term Disability Plan and the Long-Term Disability Plan unless specified in the collective bargaining agreement. If you are a non-payrolled worker or independent contractor you are not eligible for the Short-Term Disability Plan and the Long-Term Disability Plan.

# HOW TO ENROLL

You are automatically enrolled in the portion of the Short-Term Disability Plan and the Long-Term Disability Plan that provides the Core STD Benefits and the Core LTD Benefits (as described under "Plan Highlights" above. You may choose to enroll for **optional** short-term disability and/or **optional** long-term disability plan benefits:

- Within 31 days of your Hire Date or the date you become eligible if you are not eligible on your Hire Date,
- During an Annual Enrollment Period, or
- When you experience a Status Change (see "Changing Your Selections" on page 12 for more information on status changes).

To enroll, you must complete the enrollment process and pay the applicable Employee contributions. The Short-Term Disability Plan and the Long-Term Disability Plan options you are eligible to choose from and your costs for these options are shown on the FLEX online enrollment tool (or your Personalized Enrollment Worksheet if you do not have intranet access). You will automatically be provided with materials to help you make your decision when you are hired and prior to the Annual Enrollment Period. However, you must contact HR Shared Services and report your Status Change to receive information and make new elections following a Status Change. To report a Status Change or to obtain information about enrollment in the Short-Term Disability Plan and the Long-Term Disability Plan upon your hire or during the Annual Enrollment Period, contact HR Shared Services at: 1-800-676-4636. You may not enroll in the Short-Term Disability Plan and the Long-Term Disability Plan or change your coverage by contacting any of the Claims Administrators that process benefit Claims under the Plan; you must contact HR Shared Services to do that.

# If You are on Disability During an Annual Enrollment Period

## STD

If you are receiving STD Plan benefits during an Annual Enrollment Period, and you are still receiving such benefits when your newly selected coverage is supposed to begin, the following provisions will apply:

- You will receive FLEX Credits and may select new choices for your FLEX Benefits, including optional STD and/or optional LTD. However, your new choices will not affect the benefits you are currently receiving, as explained further below.

- You will continue to be eligible for STD benefits under the selections you were enrolled in at the time your STD began. Should you become eligible for LTD, your benefits would be paid under the provisions of the selections you were enrolled in during your STD as well.

- Once you return to Active Work for two consecutive weeks, you will be covered under your new selections (your choices at the Annual Enrollment Period), and any Payroll Deductions for the new coverage will begin.

## LTD

If you are receiving LTD Plan benefits during an Annual Enrollment Period, you will not be eligible to enroll in STD or change your current LTD selection. (However, medical, dental/vision/hearing care, life insurance, and AD&D benefits will continue to be available to you.) In addition, the following provisions will apply:

- You may change your medical and/or dental/vision/hearing care selections.

- You may not increase optional life insurance or optional AD&D insurance coverage for yourself or your eligible Dependents. However, you may decrease or drop this coverage.

- You will continue to be eligible for LTD benefits under the selection in which you were enrolled when your LTD began.

- Once you return to Active Work for 30 days, you may change your enrollment selections, since this is considered a Status Change. For more information on status changes, refer to page 12.

# Short-Term Disability Plan and Long-Term Disability Plan Options under FLEX

## Core FLEX Benefits

You are eligible for core STD and core LTD coverage on your Hire Date. You do not need to enroll for core STD and core LTD coverage in order to participate. The amount of core STD and core LTD coverage available is described on pages 7, 14 and 19.

## Optional FLEX Benefits

You may select from the following options for disability plan benefits under the FLEX Program:
- No Coverage
- Optional Short-Term Disability
- Optional Long-Term Disability

If you choose to enroll in optional benefits, you may select coverage as follows:
- You only

The amount of optional short-term and optional long-term disability coverage available is described on pages 7, 15 and 20.

# WHEN COVERAGE BEGINS

## Core Short-Term Disability Plan and Long-Term Disability Plan Benefits

Core Short-Term and Long-Term Disability Plan coverage is automatically effective on your date of hire as a new Employee. Refer to "Plan Highlights" on page 7 for more information about this coverage.

## Optional Short-Term Disability Plan and Long-Term Disability Plan Benefits

If you select any optional Short-Term or Long-Term Disability Plan coverage during your election of FLEX Benefits, your coverage will begin as follows:

| If you enroll and pay the required contribution ... | Your coverage will be effective on ... |
|---|---|
| As a new Employee within 31 days after your Hire Date | The day HR Shared Services receives your selections. |
| Within 31 days of a Status Change event | The date the Status Change event occurs. |
| During the Annual Enrollment Period | The first day of the next Plan Year, normally January 1 |

If you do not enroll under any of the above circumstances, you will be covered under core STD and core LTD plans only, and you must wait until the next Annual Enrollment Period (or experience an applicable Status Change) to select optional STD or optional LTD coverage.

# During the New Hire Enrollment Period

You have 31 days from your Hire Date to enroll in the optional benefits provided under the Short-Term Disability Plan and the Long-Term Disability Plan. If you enroll within 31 days of your Hire Date, your optional Short-Term Disability Plan and the Long-Term Disability Plan coverage will be effective on the date HR Shared Services receives your selections. You will not have coverage under any optional Short-Term Disability Plan or Long-Term Disability Plan benefits until you enroll in the Plan. The Effective Date of the enrollment is explained above.

## If You Do Not Enroll

If you do not enroll under any of the above circumstances, you will be covered under core Short-Term and Long-Term Disability Plan coverage only. (Information about the core benefits is provided on page 7.) YOU WILL HAVE NO OPTIONAL COVERAGE until the next Plan Year (if you elect such optional coverage during the next Annual Enrollment Period) or until you elect optional coverage following an applicable Status Change.

# During the Annual Enrollment Period

Each year during the Annual Enrollment Period (generally in the fall), you will make your FLEX selections, including your choices among the Short-Term Disability Plan and the Long-Term Disability Plan options, for the next Plan Year. Before the Annual Enrollment Period begins, you will receive materials to help you make your decisions, as well as instructions on how to enroll. The FLEX selections you make during the Annual Enrollment Period will go into effect on the first day of the following Plan Year and remain in effect through the end of the Plan Year unless you make a new selection due to a Status Change. The Effective Date of the enrollment is explained under "Changing your Selections During the Plan Year" on page 12.

## If You Do Not Enroll

If you do not enroll during the Annual Enrollment Period the Short-Term Disability Plan and Long-Term Disability Plan option and coverage level in which you were enrolled in 2006 continue in 2007.

# Delay of Effective Date

If you are not Actively at Work on the day your enrollment or change in coverage would otherwise be effective, the Effective Date will be delayed until you return to Active Work status, regardless of the reason for your absence.

# Changing Your Selections During the Plan Year

Your FLEX Benefits selections for your Short-Term Disability Plan and Long-Term Disability Plan remain in effect through the end of the Plan Year (December 31st). You generally cannot change your selections until the next Annual Enrollment Period, unless you experience a Status Change that permits it.

You can make certain changes in your FLEX Benefits choices during the 31-day period after you experience one of the following Status Changes. The list of Status Changes includes but is not limited to:

- Marriage,
- Divorce, annulment, or legal separation,
- Rescinded divorce,
- Birth, adoption, placement for adoption or change in legal custody of a Dependent child,
- Death of a spouse,
- Death of Dependent Child
- Change in your employment status affecting benefit eligibility (such as from or to part-time or full-time),
- Change in your spouse's employment status affecting benefits eligibility (such as from or to part-time or full-time),
- Beginning or end of your spouse's employment.

If you make changes to your benefit selections due to a Status Change, the change must be consistent with the Status Change. For example, if you experience the birth of a Dependent child, you may wish to add additional optional STD and LTD because of your new added responsibilities as a parent..

To make a change to your benefit selections, you must contact HR Shared Services within 31 days of the Status Change and indicate that you wish to make FLEX enrollment changes due to the Status Change. HR Shared Services will initiate the Status Change in the FLEX online enrollment tool, which will allow you to go online to make your benefit changes. Changes submitted within 31days of the Status Change event will be effective the date of the event.

Alternatively, you may ask to change your benefit selections by fax or mail. Contact HR Shared Services for a Personalized Enrollment Worksheet and an affidavit, which you must complete and return to HR Shared Services within 31 days of the Status Change.

When you request to change your benefit selections due to a Status Change, HR Shared Services may ask you to provide supporting documentation (such as a marriage or birth certificate, or a divorce decree). Such a request may either be made at the time you report your Status Change or at a later date for audit purposes.

If you submit your changes (either online or by notarized affidavit) more than 31 days after the date your Status Change occurred, you cannot change any FLEX Benefit Program options (e.g., adding optional Short-Term Disability Plan coverage) until the next Annual Enrollment Period.

# WHEN COVERAGE ENDS

Your core and optional STD and LTD Plan coverage will end on the earliest of:
- the date your employment ends, or
- the date you stop qualifying for coverage, or
- the date the part of the plan providing the coverage ends, or
- the date you fail to pay any required premium contribution.

For coverage purposes, your employment will end when you are no longer Actively at Work as an eligible full-time or part-time Employee. However, the Company may consider you as still Actively at Work during certain types of approved leaves of absence from work.

If you stop Active Work for any reason, you should contact HR Shared Services at once to determine what arrangements, if any, can be made to continue any of your coverage.

# WHAT COVERAGE COSTS

Core STD and Core LTD coverage are provided at no cost to you. You pay the full cost of optional STD and optional LTD coverage. The cost of coverage is determined by the Company each year. The Company reserves the right to change your cost of coverage as necessary.

If you select optional STD or LTD coverage, your Employee contributions are deducted from your paycheck each pay period on a Before-Tax basis or you may be able to use FLEX Credits to pay some of the cost if you do not use your FLEX Credits to pay for other benefits. The Company makes available FLEX Credits which may be used to pay for Optional FLEX Benefits under the FLEX Program. (More information about FLEX Credits is provided in the FLEX Overview SPD, located on Services@Work.) All full-time and part-time Employees who are eligible to participate in the Plan receive the same number of FLEX Credits. The amount of FLEX Credits you receive as well as your cost for each of the options available under FLEX is shown on the FLEX online enrollment tool or your Personalized Enrollment Worksheet (if you don't have intranet access). The Amount of FLEX Credits may also be changed by the Company.

# WHEN CONTRIBUTIONS BEGIN

Contributions for the optional Short-Term Disability Plan and the optional Long-Term Disability Plan benefits begin with the first full pay cycle following the Effective Date of your coverage. Effective Dates are described under " When Coverage Begins " on page 10.

Core STD and Core LTD coverage is provided at no cost to you. You will pay for optional STD and LTD coverage with before-tax dollars. Contributions are deducted from your paycheck each pay period.

# FLEX EARNINGS

FLEX Earnings are the basis on which your STD benefits are calculated. For example, under Core STD, the benefit is 100% of your pre-disability FLEX Earnings for six weeks and then 66 2/3 % of your pre-disability FLEX earnings up through the next 20 weeks. FLEX Earnings generally equal your base salary. However, if you are eligible for sales incentives, your FLEX Earnings include your target incentives, as defined each year by the Company (excluding bonuses). Your FLEX Earnings are determined on the following dates:

| If you are enrolling: | Your FLEX Earnings are your base salary as of: |
|---|---|
| For 2007 annual enrollment As a new hire | January 1, 2007 Your Hire Date |
| Part-time to full-time or vice versa | Effective Date of employment Status Change |

FLEX Earnings do not include:
- overtime pay,
- shift differentials,
- relocation payments or
- bonuses.

If your FLEX Earnings and FLEX Credits change during the Calendar Year (except due to an employment Status Change - e.g., full-time to part-time), related FLEX Payroll Deductions and Credits will not change during the year since these deductions are based on your FLEX Earnings as of the administrative preparation period just prior to the Annual Enrollment Period of the preceding year. If your FLEX Earnings *increase* during the year, pay-related benefits (e.g., disability, term life insurance, etc.) will be based on your FLEX Earnings at the time of your disability.. However, if your FLEX Earnings *decrease* during the year (except due to an employment Status Change - e.g., full-time to part-time), pay-related benefits will be based on your FLEX Earnings as of the administrative preparation period just prior to the Annual Enrollment Period of the preceding year.

FLEX Earnings are generally your annual base salary. However, if you are eligible for sales incentives, your FLEX Earnings include your base salary and target incentives as defined each year by the Company (excluding bonuses).

# SHORT-TERM DISABILITY PLAN (STD) BENEFITS

STD benefits will be paid to you for up through 26 weeks if you become Totally Disabled by an Injury or Illness while you are covered under the plan. To be eligible to receive STD benefits, the Claims Administrator must receive the required paperwork from your physician within 15 days of the first day you are absent from work. If required paperwork is not received by the Claims Administrator within the 15-day deadline it may result in a denial of STD benefits. On receipt of the required paperwork, the Claims Administrator will review the information to determine if you qualify for STD benefits. The discretion to make the decision about your qualification for the STD benefit has been delegated to the Claims Administrator.

STD applications are reviewed for concurrent Family Medical Leave eligibility. STD benefits will apply toward meeting the total leave entitlement required under the Family and Medical Leave Act of 1993 or similar state laws if applicable.

# STD Benefit Amount

## Core STD Benefit

Before STD benefits can begin, you must be Ill or Injured for five consecutive days. These five days constitute the "waiting period." If you are subsequently approved for STD, the five-day waiting period is treated as week one of your STD benefit period. The STD plan pays a weekly benefit of 100% of your pre-disability FLEX Earnings for up through six weeks of your disability. After the first six weeks of disability, the core STD Plan pays 66 2/3% of your pre-disability FLEX Earnings for up through the next 20 weeks. Core STD benefits are reduced by federal and state income tax, as well as other income you may receive, as described under the "Reduction of STD Benefits Due to Other Income" section on page 18.

## Optional STD Benefit

If you elected optional STD coverage, it increases your coverage so that after the first six weeks of disability, the plan pays 90% of your pre-disability FLEX Earnings for up through the next 20 weeks. Optional STD benefits are reduced by federal and state income tax, as well as other income you may receive, as described under the "Reduction of STD Benefits Due to Other Income" section on page 18.

## STD Benefits for Part-Time Employees

: If you are a part-time Employee and work 20 hours or more per week, the number of hours you are regularly scheduled to work will be used to determine the amount of your disability benefit.

If you work less than 20 hours a week:

- Your medical leave of absence will be unpaid, unless otherwise required by applicable state law.

- You are eligible for a medical leave of absence only if you have been Actively at Work for at least 1,250 hours during the 12 months immediately prior to the beginning of the period of disability.

You may request a personal leave of absence if you are not eligible for a medical leave of absence but you are medically unable to work.

## Extension of Benefits Due to Part-Time Employment

If your Physician and the Company approve your return to work (for any company) on a part-time basis during the first six weeks that you are receiving STD benefits, you will receive all of your earned wages for the period that you work plus a reduced STD benefit for the period you receive disability benefits.

Because your return to work on a part-time basis will decrease the amount of STD benefits you receive, the resulting savings will be used to extend the number of weeks that you are eligible to receive benefits at 100% of your pre-disability FLEX Earnings.

# Definition of "Disability" for STD Plan Purposes

You are entitled to benefits from the STD Plan only if you are considered "Totally Disabled". You are considered Totally Disabled only when the Claims Administrator determines that you are unable to perform the essential functions of your job and this finding is supported by documentation from your Physician. This means that you cannot perform the work you were normally performing at the time of your disability, with or without reasonable accommodations, due to the limitations resulting from your Illness or Injury. In addition, you must be under the regular care of a Physician at all times during the period when you claim to be Totally Disabled to receive a benefit from the STD Plan.

A "Physician" means a licensed practitioner of the healing arts acting within the scope of his or her license. When a Total Disability is caused by any condition other than a medically determinable physical impairment, a "Physician" means a legally qualified Physician who specializes in the practice of psychiatric medicine or has, by reason of training or experience, a specialized competency in the field of psychiatric medicine sufficient to give the necessary evaluation and treatment of mental Illness.

The proof that your Physician submits must be written proof of objective clinical documentation (i.e., lab tests, x-rays, medical reports, etc.) of your Total Disability. The Claims Administrator will approve or deny your Claim for STD benefits at its discretion. Independent Medical Evaluations (IMEs) (either additional physical examinations and medical testing or file reviews of existing medical records) may also be required, at the Company's expense, in order to arrive at this final determination. Your benefit will be denied if you do not provide such objective proof of your Claim within the required time.

Disabilities due to an Illness or Injury that, as determined by the Claims Administrator, are primarily based on self-reported symptoms, have a limited pay period during your lifetime. "Self-reported symptoms" means the manifestations of your condition you share with your Doctor which are not verifiable using tests, procedures, and clinical examinations normally accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to, headache, pain, fatigue, stiffness and soreness, ringing in the ears, dizziness, numbness, and loss of energy. The pay period limitations are at the discretion of the Claims Administrator. If objective medical and clinical evidence is not submitted or changes in the treatment plan or more aggressive treatment is not commenced within a reasonable period, the benefit will be terminated.

# Reasonable Accommodations

Reasonable accommodations may be made for the limitations resulting from your Illness or Injury which would allow you to return to active work. If a reasonable accommodation has been identified, but you choose not to accept the accommodation, your STD benefit may be discontinued. If the Company is unable to accommodate limitations resulting from your Illness or Injury, your benefit will not be affected. Reasonable accommodations may include, but are not limited to:

- General accommodations — the removal of structural, communication, or other barriers, and

- Job-related accommodations, such as:

  o Part-time or modified work schedules,

  o Home-based work,

  o Reassignment to vacant positions,

  o Acquisition or modification of tools, equipment, and/or furniture, and

  o Modifications to business travel schedules.

# When Benefits Begin and End

Administratively, STD Plan benefits will begin on the sixth consecutive working day of your disability. At the onset of your disability, if you are a full-time employee working part-time (due to your disability)and on partial disability the remainder of the time, STD benefits will not begin until your absence satisfies the equivalent of five full-time work days, e.g., 10 part-time work days. If you begin to receive STD benefits, the five-day waiting period will count toward your total period of disability.
If you begin to receive STD benefits, the five-day waiting period will count toward your total period of disability benefit payments.

STD benefits end when:

- Your eligibility ends,

- You are no longer Totally Disabled,

- Your employment with the Company ends, or

- You have received 26 weeks of STD benefits.

# If You Are Disabled Again

You must be an active Employee at the time an Illness or Injury occurs to qualify for STD benefits. Therefore, once a period of Total Disability has ended (by your recovery, a finding by the Claims Administrator that benefits are no longer payable to you, or by payment of the maximum STD benefit), you will have no STD coverage until you return to Active Work status.

If, after you return to Active Work, you become Totally Disabled again, your new period of Total Disability will be considered a continuation of your first disability if:

- It has the same cause as the first disability, or a related cause, *and*

- You were Actively at Work less than 30 consecutive days since you were Totally Disabled, *or*

- You have not returned for one full day of full-time Active Work between the two disability periods.

You will be considered Actively at Work on any of the Company's scheduled workdays if you are performing the regular duties of your job on that day in accordance with your regularly scheduled hours, either at the Company's place of business or at some location to which you are required to travel for Company business.

Here are some examples of how this provision works:

- You have received STD benefits for 10 weeks, and you return to Active Work for one week before the same Illness requires you to stay at home again. In this case, STD benefits continue under the previous Claim for the rest of the 26-week period (if you are determined to be Totally Disabled under the STD plan provisions).

- You have received STD benefits for 10 weeks, and you return to Active Work for 30 consecutive days.. Then, the same Illness requires you to stay at home again. In this case, you will have to file a new Claim and are eligible for STD benefits for a new 26-week period (if you are determined to be Totally Disabled under the STD plan provisions).

- You have received STD benefits for 10 weeks, and you return to Active Work for one day. Then, a different Illness requires you to stay at home again. In this case, you will have to file a new Claim

and are eligible for STD benefits for a new 26-week period (if you are determined to be Totally Disabled under the STD plan provisions).

- You have received STD benefits for 10 weeks and are released to return to work. You do not return to work and a different (or the same) Illness or Accident prevents you from working. In this case, you are not eligible for STD benefits under a new or previous claim as you did not return to Active Work (i.e., you must be an active Employee at the time an Illness or Injury occurs to qualify for STD benefits).

# Reduction of STD Benefits Due to Other Income

STD benefits will be reduced by any other income payable to you or your Dependents as a result of your disability or retirement, so that the sum of your STD benefits and any other income will not exceed the maximum benefit level for which you are eligible. The plan also takes into account other income for which you are eligible but which you may not have yet received.

For the purposes of this plan, "other income" includes:

- Income received from any employer or from any occupation for compensation or profit, including self-employment,

- Workers' Compensation benefits (excluding payments of legal fees incurred in the Claim process),

- Disability, retirement, or unemployment benefits provided under any group insurance or pension plan or any other arrangement of coverage for individuals in a group (whether on an insured or uninsured basis), and

- Any other disability, retirement, or unemployment benefits required or provided for under any law of any government, including, but not limited to:

  - Unemployment compensation benefits,

  - No-fault wage replacement benefits,

  - Statutory disability benefits, and

  - Social Security benefits (if a family offset is applicable, the family offset will be applied against your STD benefit – regardless of whether or not a Dependent lives with you and is or is not considered a Dependent for tax purposes) and

  - the Canada Pension Plan, and the Quebec Pension Plan, including Dependents' benefits, but not counting any increase in benefits after STD benefit payments have started under this plan,

For example, if your weekly STD benefit is $200, and you are also receiving $100 a week from Workers' Compensation, then your STD benefits will be reduced to $100 a week so that your total income equals $200 a week.

For the purposes of this plan, other income will be treated as follows:

- Any periodic payments will be allocated to weekly periods,

- Any single lump-sum payment, including any periodic payments that you or your Dependents have elected to receive in a single lump sum will be allocated to weekly periods. However, any

single lump-sum payment under Workers' Compensation laws will be fully offset in its entirety against any benefits otherwise payable by this plan, or

- Any periodic or single lump-sum payments received as a retroactive award may be allocated retroactively.

It is your responsibility to complete any required applications, such as for Social Security benefits, as well as undertake any necessary processes for appeal if initially denied.

If the Claims Administrator finds that the actual amount of Social Security and other income that you receive is different from the amount used to determine your STD benefits, the following rules apply:

- If STD benefits have been underpaid, this plan will be required to make a lump-sum payment to bring the total payments to the amount that should have been paid.

- If STD benefits have been overpaid, you will be required to make a lump-sum reimbursement payment to the plan. Failure to comply with this requirement of the plan will be considered grounds for immediate termination of your STD claim, your other Nortel benefit programs, and your employment. It may also result in any and all further action legally available to Nortel, including but not limited to reporting this unpaid debt to credit reporting agencies, pursuing collection through collection agencies and taking legal action to recover the amount due to the plan.

# Applying for Social Security Benefits

If you anticipate that your Illness or Injury will be long term or will result in a permanent disability, you must apply for Social Security Disability benefits in a timely and diligent manner.

While your application for Social Security or other sources of disability income is pending, the plan may estimate your income from these sources and use that amount to determine your benefit under this plan. Before your Social Security benefits or other sources of disability income begin, you may choose to sign a Reimbursement Agreement to reimburse the plan for the amount of the excess payment that you receive as an STD benefit. If you sign this agreement, your Social Security benefit or other income will not be taken into consideration for your STD benefit while your applications, and any subsequent appeals, are pending. However, you will have to pay that amount back immediately when your Social Security benefit begins.

If your claim for Social Security disability benefits is denied, you must appeal at the Reconsideration level. If benefits are denied again, you must appeal at the Administrative Law Judge level.

If you do not give the STD plan written proof that your application for other disability benefits has been denied, the plan may estimate your weekly Social Security benefits and other income, and use that amount to determine your benefit under this plan.

# Exclusions

STD benefits will not be paid for any disability resulting from:

- Intentionally self-inflicted injuries, including a disability or an Injury that results from the use of hallucinogenic or narcotic drugs, except when legally prescribed by a Physician and taken in accordance with the Physician's direction,

- Your participation in the commission of an assault or felony, or

- War or any act of war (declared or undeclared), insurrection, or rebellion, or your participation in a riot or civil commotion.

# LONG-TERM DISABILITY (LTD) PLAN BENEFITS

LTD Plan benefits will be paid to you for a period of time (up to the applicable maximum period) if you become Totally Disabled by an accidental bodily Injury or Illness while you are covered under the plan and if you remain Totally Disabled (as defined under the LTD Plan).

## LTD Benefit Amount

### Core LTD Benefit

Core LTD coverage pays a monthly benefit of 55% of your pre-disability FLEX Earnings after you have been Totally Disabled and have received benefits from the STD Plan for 26 consecutive weeks. The minimum monthly benefit is $100 or 10% of your Gross Disability Payment whichever is greater.

Core LTD benefits are reduced by federal and state income tax, as well as by any other income you may receive, as described under the "Reduction of LTD Benefits Due to Other Income" section on page 24.

### Optional LTD Benefit

Optional LTD coverage increases your coverage so that the LTD plan pays a monthly benefit of 66 2/3% of your pre-disability FLEX Earnings when you qualify for LTD Plan benefits. The minimum monthly benefit is $100 or 10% of your Gross Disability Payment, whichever is greater.

Optional LTD benefits are reduced by federal and state income tax, as well as by any other income you may receive, as described under the "Reduction of LTD Benefits Due to Other Income" section on page 24.

## Definition of "Disability" for LTD Plan Purposes

You are entitled to benefits from the LTD Plan only if you are considered "Totally Disabled". You are considered Totally Disabled initially when the Claims Administrator determines that you are unable to perform the essential functions of your job and this finding is supported by documentation from your Physician. This means that you cannot perform the work you were normally performing at the time of your disability, with or without reasonable accommodations, due to the limitations resulting from your Illness or Injury. In addition, you must be under the regular care of a Physician who certifies your Total Disability and who must have treated you personally for the Illness or Injury causing the Total Disability for at least 31 days before making the certification. You must continue to be under the regular care of a Physician who certifies your Total Disability throughout the period when you claim to be Totally Disabled to receive a benefit from the LTD Plan. The Claims Administrator has the discretion to make the decision regarding whether you are Totally Disabled—not your Physician.

The proof that your Physician submits must be written proof of objective clinical documentation (i.e., lab tests, x-rays, medical reports, etc.) of your Total Disability. The Claims Administrator will approve or deny your Claim for LTD benefits at its discretion. Independent Medical Evaluations (IMEs) may also be required (either additional physical examinations and medical testing or file reviews of existing medical records), at the Company's expense, in order to arrive at this final determination. Your benefit will be denied if you do not provide such objective proof of your Claim within the required timeframe.

During the first 18 months of a covered Total Disability (from the first day of STD), you will be considered unable to work if you cannot perform the work you were normally performing at the time of your disability, with or without reasonable accommodations, due to the limitations resulting from your Illness or Injury.

After the first 18 months of covered Total Disability (from the first day of STD), you will be considered unable to work if you are unable to perform any reasonable occupation. A "reasonable occupation" is any job you are or could become qualified to do with your education, training, or experience.

Disabilities due to an Illness or Injury that, as determined by the Claims Administrator, are primarily based on self-reported symptoms, have a limited pay period during your lifetime. The pay period limitations are at the discretion of the Claims Administrator. If objective medical and clinical evidence is not submitted or changes in the treatment plan or more aggressive treatment is not commenced within a reasonable period, the benefit will be terminated.

# Reasonable Accommodations

Reasonable accommodations may be made for the limitations resulting from your Illness or Injury which would allow you to return to active work  If a reasonable accommodation has been identified, but you choose not to accept the accommodation, your STD benefit may be discontinued.  If the Company is unable to accommodate limitations resulting from your Illness or Injury, your benefit will not be affected.  . Reasonable accommodations may include, but are not limited to:

- General accommodations — the removal of structural, communication, or other barriers, and

- Job-related accommodations, such as:

    o   Part-time or modified work schedules,

    o   Home-based work,

    o   Reassignment to vacant positions,

    o   Acquisition or modification of tools, equipment, and/or furniture, and

    o   Modifications to business travel schedules.

# When Benefits Begin and End

You are eligible for LTD Plan benefits after you have been Totally Disabled and have received STD Plan benefits for 26 consecutive weeks, provided you give written proof of the continuation of your Total Disability beyond 26 weeks within the required timeframe and that proof is satisfactory to the Claims Administrator. The Claims Administrator remains in frequent contact with you during STD. Towards the end of your STD the Claims Administer will contact you and conduct a clinical review of your condition. If additional medical documentation is required to approve LTD, the Claims Administrator will request it  from treating physicians and/or request you to submit. If medical documentation is not received by the Claims Administrator within 30 days your monthly LTD benefits and any retroactive payments could be delayed   If Claims Administrator

approves continued disability, your claim will be automatically transitioned from STD to LTD and you will be notified of change.

Benefits end when your period of Total Disability ends. This happens when the first of the following occurs:

- You are no longer Totally Disabled,

- You die,

- You are no longer under the care of a Physician,

- You fail to furnish the latest required proof of the continuance of your Total Disability to the Claims Administrator or refuse to be examined by a Physician designated by the plan,

- You reach the end of the maximum benefit period for any one period of Total Disability as shown in the chart under Maximum Benefit Period, or

- Your employment with the Company ends.

## Maximum Benefit Period

The maximum length of time LTD benefits will be paid depends on your age when your Total Disability begins, according to the following schedule:

| If your disability begins at age: | LTD benefits will continue no longer than: |
|---|---|
| under 60 | to age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 through 74 | 12 months |
| 75 or over | 6 months |

## Behavioral Illness Limitation

For Total Disabilities that are due in whole or in part to mental disorders, nervous disorders, or chemical dependency (as determined by the Claims Administrator), the maximum LTD benefit period is limited to 24 months if you are treated in an outpatient setting. However, if you are confined in a Hospital within 90 days following the end of that 24-month period, LTD benefits will continue during your Hospital confinement.

## If You Are Disabled Again

Once a period of Total Disability has ended and you have returned to Active Work, any new or unrelated subsequent period of Total Disability will be treated as a new and separate period of disability. However, if you are disabled again after you return to Active Work, your new period of Total Disability will be considered a continuation of your first disability if:

- It has the same cause as the first disability, or a related cause, and

You were Actively at Work less than three consecutive months since your first disability.

If your disability is considered a continuation of your initial disability, LTD benefits are immediately payable. If your disability is a new disability, LTD benefits are payable only after you complete a new 26-week waiting period during which you are paid benefits from the STD Plan.

You must be an active Employee at the time an Illness or Injury occurs to qualify for STD benefits. Therefore, once a period of Total Disability has ended (by your recovery, a finding by the Claims Administrator that benefits are no longer payable to you, or by payment of the maximum LTD benefit), you will have no LTD coverage and no STD coverage until you return to Active Work. You will be considered Actively at Work on any of the Company's scheduled work days if you are performing the regular duties of your job on that day, in accordance with your regularly scheduled hours, either at the Company's place of business or at some location to which you are required to travel for Company business.

## Waiver of Premium

While you are receiving LTD benefits (either full or partial), you will not be required to pay premiums for any optional STD, optional LTD, or optional employee life insurance coverage you have selected. You

will be required to pay premiums for optional child and/or optional spouse life insurance coverage you have selected.

# Reduction of LTD Plan Benefits Due to Other Income

LTD benefits will be reduced by other sources of income payable to you or your Dependents as a result of your disability or retirement, so that the sum of your LTD benefits and any other income will not exceed the maximum benefit level for which you are eligible. The plan also takes into account other income for which you are eligible but which you may not yet have received.

For the purposes of this plan, "other income" includes:

- Income received from any employer or from any occupation for compensation or profit, including self-employment,

- Workers' Compensation benefits (excluding payments of legal fees incurred in the Claim process),

- Disability, retirement, or unemployment benefits provided under any group insurance or pension plan or any other arrangement of coverage for individuals in a group (whether on an insured or uninsured basis), and

- Any other disability, retirement, or unemployment benefits required or provided for under any law of any government, including, but not limited to:

  o   Unemployment compensation benefits,

  o   No-fault wage replacement benefits,

  o   Statutory disability benefits,

  o   Social Security benefits (if a family offset is applicable, the family offset will be applied against your LTD benefit – regardless of whether or not a Dependent lives with you and is or is not considered a Dependent for tax purposes) and,

  o   the Canada Pension Plan, and the Quebec Pension Plan, including Dependents' benefits, but not counting any increase in benefits after STD benefit payments have started under this plan.

For example, if your monthly LTD benefit is $800, and you are also receiving $400 a month from Workers' Compensation, then your LTD benefits will be reduced to $400 a month so that your total income equals $800 a month.

For the purposes of this plan, other income will be treated as follows:

- Any periodic payments will be allocated to monthly periods,

- Any single lump-sum payment, including any periodic payments that you or your Dependents have elected to receive in a single lump sum, will be allocated to 60 monthly periods. However, any single lump-sum payment under Workers' Compensation laws will be fully offset in its entirety against any benefits otherwise payable by this plan, or

- Any periodic or single lump-sum payments received as a retroactive award may be allocated retroactively.

It is your responsibility to complete any required applications, such as for Social Security benefits, as well as undertake any necessary processes for appeal if initially denied.

If the Claims Administrator finds that the actual amount of Social Security and other income benefits is different from the amount used to determine your LTD benefits, the following rules apply:

- If LTD benefits have been underpaid, this plan will be required to make a lump-sum payment to bring the total payments to the amount that should have been paid.

- If LTD benefits have been overpaid, you will be required to make a lump-sum reimbursement payment to the plan. Failure to comply with this requirement of the plan will be considered grounds for immediate termination of your LTD claim, your other Nortel benefit programs, and your employment. It may also result in any and all further action legally available to Nortel, including but not limited to reporting this unpaid debt to credit reporting agencies, pursuing collection through collection agencies and taking legal action to recover the amount due to the plan.

# Applying for Social Security Benefits

If you anticipate that recovery from your Illness or Injury will be long term or will result in a permanent disability, you must apply for Social Security disability benefits in a timely and diligent manner.

While your application for Social Security or other sources of disability income is pending, the plan may estimate your income from these sources and use that amount to determine your benefit under this plan. Before your Social Security benefits or other sources of disability income begin, you must sign a Reimbursement Agreement to reimburse the plan for the amount of the excess payment that you receive as an LTD benefit. If you sign this agreement, your Social Security benefit or other income will not be taken into consideration for your LTD benefits while your applications, and any subsequent appeals, are pending. However, you will have to pay the full amount of your Social Security disability benefits award or other income award (up to the amount of LTD Plan benefits that have been paid to you) to the Claims Administrator immediately on receipt of the award. The Claims Administrator will provide you with a Reimbursement Agreement during your transition from STD to LTD.

If your claim for Social Security disability benefits is denied, you must appeal at the Reconsideration level. If benefits are denied again, you must appeal at the Administrative Law Judge level.

If you do not give the plan written proof that your application for other disability benefits has been denied, the plan may estimate your weekly Social Security benefits and other income, and use that amount to determine your benefit under this plan.

# Social Security Disability Benefits and Medicare

Disabled Employees who have been receiving Social Security Disability Income (SSDI) for at least two years are eligible for Medicare. To be protected as completely as possible, you need to accept Medicare coverage (Part A and Part B) when you become eligible. You may be contacted by a representative, acting on behalf of the Company, who will assist you in the Medicare enrollment process.

Coverage under Medicare Part A is free, while coverage under Medicare Part B (Outpatient and Physician services) requires a monthly premium, which will be deducted from your monthly SSDI check. At the time you become entitled to Medicare Part B, the monthly LTD benefits you receive from the Company will be

increased by the amount of the Medicare Part B premium (retroactive to January 1, 1997). The Medicare Part B premium is subject to increase each year.

Once you are enrolled in Medicare, Medicare will pay medical Claims first and the Company's medical plan will pay second. The Company will continue to pay for medical benefits it previously covered that are not covered by Medicare (such as prescription drugs).

# Mandatory Vocational Rehabilitation Program

For disabilities beginning on or after January 1, 1999, you will be required to take part in an "approved rehabilitation program" to help you get back to work if you are deemed able to be rehabilitated while you are receiving LTD benefits. (Refusal to participate in an approved rehabilitation program could result in termination of your LTD benefits.)

An approved rehabilitation program is:

- A program of vocational rehabilitation, or

- A period of part-time work with the Company for purposes of rehabilitation which is recommended by your Physician and approved by the Claims Administrator and the Plan Administrator. This period will begin when your Physician, the Claims Administrator, and the Plan Administrator approve such a program in writing and will end when your Physician, the Claims Administrator, and the Plan Administrator withdraw their approval.

Each rehabilitation program is an individually tailored, goal-oriented program designed to return you to gainful employment.

You may continue to receive LTD benefits for a limited time while in an approved rehabilitation program. During this period, your regular monthly LTD benefits will be reduced by 50% of your earnings from your rehabilitative job so that the sum of your LTD benefits and any other income you earn does not exceed 85% of your pre-disability FLEX Earnings.

Here is an example:

| Monthly LTD Benefits From the Plan | $1,600 |
|---|---|
| Rehabilitative Earnings | $300 |
| 50% Reduction | $150 |
| Net LTD Benefits From the Plan | $1,750 |

If the plan determines that it is within your ability to become self-supporting through a rehabilitation program, the plan may pay certain expenses of such a program, at the discretion of the Plan Administrator. The maximum payment is $10,000.

If this applies to you, you will be notified of the type and duration of expenses covered, and the conditions for payment, if you agree to undertake the program.

# Cost-of-Living Adjustment

For disabilities beginning on or after July 1, 1994 but before January 1, 2000, prior plan provisions provide a cost-of-living adjustment (COLA) for LTD benefits. This adjustment applies to your core and optional LTD benefits each year after the first year of LTD. This adjustment increases your total LTD benefits by 60% of the annual Consumer Price Index (CPI) increase, up to 6% per year as determined by the Company. For example, if you are receiving a $2,000 LTD benefit and the CPI increases by 4%, your benefit will increase by 2.4% to $2,048. This benefit becomes payable in the first calendar month following the one-year anniversary date that your LTD benefits began and is increased each year thereafter (when a CPI increase applies), beginning the same calendar month as your first COLA increase.

The LTD plan does not provide a COLA increase for LTD benefits for disabilities beginning on or after January 1, 2000.

# Exclusions

LTD benefits will not be paid for any disability that is in any way caused by any of the following:

- Intentionally self-inflicted Injury, including a disability or Injury that results from the use of hallucinogenic or narcotic drugs, except when legally prescribed by a Physician and taken in accordance with the Physician's direction,

- Your participation in the commission of an assault or felony,

- War or any act of war (declared or undeclared), insurrection, or rebellion, or your participation in a riot or civil commotion,

- A Preexisting Condition (as described below),

- A disability or Injury that occurs while you are on a personal leave of absence, a military leave of absence, or while not Actively at Work, or

- A disability or Injury that occurs after a period of Total Disability has ended, but prior to your returning to Active Work.

# Preexisting Conditions Exclusion

If you are a newly hired Employee, you will not be covered for LTD benefits if a Total Disability occurs within 12 months after your LTD Plan coverage is initially effective, and if the disability is caused by or in any way related to a "Preexisting Condition" that existed within 90 days of your coverage Effective Date. A "Preexisting Condition" is an Illness, Injury, or condition for which you:

- Received treatment or services from a Physician,

- Took drugs or medicines prescribed by a Physician,

- Incurred expenses, or

- Received a diagnosis.

A "Preexisting Condition" is also a disability or Injury that occurs:

- While on a personal leave of absence, a military leave of absence, or while not Actively at Work, or
- After a period of Total Disability has ended, but prior to your returning to Active Work.

The Preexisting Condition exclusion will not apply to Employees who become covered under the Nortel Networks FLEX program due to the acquisition of their employer by the Company and their employer's subsequent election to cover its Employees under the LTD plan as an Affiliate.

# OCCUPATIONAL DISABILITY BENEFITS

Disability benefits may be payable to you for an occupational disability. Occupational disabilities are those caused by:

- An Injury arising out of, or in the course of, any employment for wage or profit, or
- A disease covered with respect to such employment by any Workers' Compensation law, occupational disease law, or similar legislation.

This benefit is provided on the same terms as the benefit for a non-occupational disability. (See Reduction of STD Benefits Due to Other Income on page 18 or Reduction of LTD Benefits Due to Other Income on page 24.) STD benefits are provided as a supplement to your Worker's Compensation pay. Total disability benefits paid will not exceed the applicable STD and LTD benefit amounts.

# OTHER IMPORTANT INFORMATION

## A Note about State Disability Laws

In certain locations, state-mandated disability plans supersede the Company's plans. As a result, applicable state disability law may alter the provisions described in this summary.

## Limits on Assignments

Benefits under the plans may be assigned only as a gift assignment. The Claims Administrator will not:

- Be responsible for determining the validity of a purported gift assignment, or
- Be held to know about an assignment unless it has received a copy of it.

For more information on limits of assignments or how to assign disability benefits as a gift, contact the Claims Administrator (as listed on page 31).

## Errors in Payments

If the Claims Administrator determines that you have received an overpayment of benefits due to an error, you will be required to reimburse the Claims Administrator or have the overpayment deducted from

subsequent benefit payments payable under the STD plan, the LTD plan, or any other Company welfare plan.

# SECTION TWO –
# ADMINISTRATIVE INFORMATION

This Administrative Information section provides further administrative details about this plan, such as identifying information about the Plan that is required under ERISA, how to file Claims and appeal denied Claims, where to get more information, your ERISA rights and how the Company may amend the plan.

## Identifying Information

Plan Type under ERISA:  Welfare Plan

Plan Number:  509

Funding Method:  Self-funded with contributions held in trust

Contribution Source:  the Companies that sponsor the Plan pay the full cost of the core STD and core LTD plan coverage and participating Employees contribute to the cost of the optional STD and optional LTD plan coverages.

Companies that Sponsor the Plan: Nortel Networks Inc. (employer identification number 04-2486332) and certain other related companies sponsor this Plan for their eligible Employees. For a current list of sponsoring companies, please contact HR Shared Services at 1-800-676-4636.

The address for Nortel Networks Inc. is:  Nortel Networks Inc.
220 Athens Way, Suite 300
Nashville, TN 37228

Agent for Service of Legal Process:   Attn: Lynn Egan
Nortel Networks Inc.
220 Athens Way, Suite 300
Nashville, TN 37228-1397
615-432-4787

Legal Process may also be served upon the trustee of a trust that funds benefits under the Plan.

Trustee of the Nortel Networks Inc. Health & Welfare Benefits Trust (which funds benefits under the Plan):
Retirement Services Group
Bank of America
213 South LaSalle Street
Chicago, IL 60697
312-828-2345

# CONTACT INFORMATION FOR CLAIMS FILING AND APPEAL REVIEW

The chart below provides addresses and phone numbers both for filing Claims and appealing denials of Claims for each of the listed benefits. Call HR Shared Services at 1-800-676-4636 if you cannot locate the information you need in the list that follows.

The entities responsible for each type of Claim and Appeal of denied Claims under the Short-Term Disability Plan and the Long-Term Disability Plan are noted in the list below.

## Claims Administrators

### Short-Term Disability Plan and Long-Term Disability Plan -

| | | |
|---|---|---|
| Initial Claims for payment of STD and LTD benefits and first level appeals of denied claims for payment of STD and LTD benefits as described in this Summary Plan Description: | The Prudential Insurance Company of America<br>PO Box 13480<br>Philadelphia, PA 19101 | 1-800-842-1718 |
| Initial Claims regarding eligibility to participate in the plan; coverage option elected; Effective Date of enrollment and cost of coverage | HR Shared Services<br>Nortel Networks<br>PO Box 13010,<br>Research Triangle Park, NC 27709-3010 | 1-800-676-4636<br>Direct: 919-905-9351<br>ESN: 355-9351 |

## Final Appeal Reviewer

| | | |
|---|---|---|
| All second/final level appeals of denied STD and LTD benefit claims; and first/final appeals of denied claims regarding Eligibility to participate in the plan, coverage option elected effective date of enrollment and cost of coverage | Employee Benefits Committee<br>Nortel Networks<br>220 Athens Way, Suite 300<br>Nashville, TN 37228 | 615-432-4787 |

# FILING CLAIMS AND APPEALS

This section outlines the procedures and applicable time limits for filing Claims and filing appeals of denied Claims and other benefit determinations under the Short-Term Disability Plan and the Long-Term Disability Plan. These procedures are intended to comply with the requirements of ERISA and will be interpreted in accordance with ERISA requirements.

In order to properly process your request, please refer to the "Contact Information for Claims Filing and Appeal Review" chart above for a complete list of all Claims Administrators, their respective addresses and phone numbers.

## A. Short-Term Disability Plan and Long-Term Disability Plan Benefit Claims and Appeals

### 1. Filing a Claim for payment of a benefit under the Short-Term Disability Plan:

The process for requesting a Short-Term Disability Plan benefit is as follows:

a. Contact the TOPS Leave Administrator at 877-664-8677 to initiate the process. An agent will conduct an interview to obtain all necessary information for your Short-Term Disability claim.

b. , Prudential will contact your treating physician(s) to obtain all medical information. Once obtained, Prudential will review all documentation and notify you of the decision to approve or deny your request for Short-Term Disability Plan benefits. If Prudential is unable to reach the physician, s/he will communicate to you and send necessary forms by regular mail to you for your physician to complete. To avoid delay in processing the claim, you may also download the necessary forms Medical Release and Attending Physicians Statement from S@W and send to Prudential. (If Prudential does not receive the completed medical forms within **15 calendar days of last day worked, your pay will be suspended.**)

### 2. Filing a Claim for payment of a benefit under the Long-Term Disability Plan:

Towards the end of your STD the Claims Administer will contact you and conduct a clinical review of your condition. If additional medical documentation is required to approve LTD, the Claims Administrator will request from treating physicians and/or request you to submit. If medical documentation is not received by the Claims Administrator within 15 days your monthly LTD benefits and any retroactive payments could be delayed  If Claims Administrator approves continued disability, your claim will be automatically transitioned from STD to LTD and you will be notified of change.

### 3. Decision Regarding An Initial Claim for Short-Term Disability Plan Benefits or Long-Term Disability Plan Benefits by Prudential

Prudential [I don't remember when the contract changed. will notify you of the Claim decision on your Short-Term Disability Plan claim or your Long-Term Disability Plan claim (as applicable) within 45 days of the receipt of your Claim. This period may be extended by 30 days if such an extension is necessary due to matters beyond the control of the plan. A written notice of the extension, the reason for the extension and the date by which the plan expects to decide your Claim, will be furnished to you within the initial 45-day period. This period may be extended for an additional 30 days beyond the original 30-day extension if necessary due to matters beyond the control of the plan. A written notice of the additional extension, the reason for the additional extension and the date by which Prudential expects to decide on your Claim, will be furnished to you within the first 30-day extension period if an additional extension of time is needed. However, if a period of time is extended due to your failure to submit information necessary to decide the Claim, the period for making the benefit determination by Prudential will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If your Claim for benefits is denied, in whole or in part, you or your authorized representative will receive a written notice from Prudential of your denial. The notice will be written in a manner calculated to be understood by you and will include:

a.  the specific reason(s) for the denial,
b.  references to the specific plan provisions on which the benefit determination was based,
c.  a description of any additional material or information necessary for you to perfect a Claim and an explanation of why such information is necessary,
d.  a description of Prudential's appeals procedures and applicable time limits, including a statement of your right to bring a civil action under section 502(a) of ERISA following your appeals, and
e.  if an adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment for the determination will be provided free of charge upon request.

## 4. Appealing a Denied Short-Term Disability Plan Claim or Long-Term Disability Plan Claim to Prudential –First Level Appeal To Prudential

If your Claim for benefits under the Short-Term Disability Plan or the Long-Term Disability Plan is denied or if you do not receive a response to your Claim within the appropriate time frame (in which case the Claim for benefits is deemed to have been denied), you or your representative may appeal your denied Claim in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date the Claim is denied. See the "Claims Administrators" chart above for contact information. You may submit with your appeal any written comments, documents, records and any other information relating to your Claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your Claim free of charge.

A full review of the information in the Claim file and any new information submitted to support the appeal will be conducted by the Prudential Appeals Review Unit. The Claim decision will be made by a member of the Prudential Claims Management Team. The Prudential Appeals Review Unit and Claims Management Team members are made up of individuals not involved in the initial benefit determination. This review will not give any deference to the initial benefit determination.

The Prudential Appeals Review Unit will make a determination on your Claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to 90 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date that the Prudential Appeals Review Unit expects to render a decision will be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If the Claim on appeal is denied in whole or in part, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and will include:

(a) the specific reason(s) for the adverse determination,
(b) references to the specific plan provisions on which the determination was based,
(c) a statement that you are entitled to receive upon request and free of charge reasonable access to, and make copies of, all records, documents and other information relevant to your benefit Claim upon request,
(d) a description of Prudential's review procedures and applicable time limits,
(e) a statement that you have the right to obtain upon request and free of charge, a copy of internal rules or guidelines relied upon in making this determination, and
(f) your right to appeal the decision to Nortel Networks Employee Benefits Committee as well as a description of the Nortel Networks Employee Benefits Committee's appeal procedures, applicable time limits, and how to contact the Nortel Networks Employee Benefits Committee and
(g) your right to bring a civil suit under section 502(a) of ERISA following the conclusion of all of your appeals.

If a decision on appeal is not furnished to you within the time frames mentioned above, the Claim will be deemed denied on appeal.

If you are not satisfied with the first level appeal decision of Prudential, you have the right to request a second level appeal from the Employee Benefits Committee, the claims fiduciary of this type of appeal. Your second level appeal request must be submitted to the Employee Benefits Committee within 60 days from receipt of the first level appeal decision. See below for a description of procedures for the second level appeal conducted by the Employee Benefits Committee.

---

## 5. Appealing a Denied Short-Term Disability Plan Claim or Long-Term Disability Plan Claim to the Nortel Networks Employee Benefits Committee –Final Appeal Level for Denied Claims

If a Short-Term Disability Plan or Long-Term Disability Plan benefit Claim appeal is denied by the Claims Administrator (see item "4" above) or if an eligibility to participate or a coverage level Claim is denied by HR Shared Services(see item "6" below) the Employee Benefits Committee reviews any additional appeal request that you file, i.e. they make the decision concerning your final appeal.

If your Claim or appeal of a Claim under item "4" or item "6" is denied or if you do not receive a response to such Claim or appeal within the appropriate time frame (in which case the Claim or appeal is deemed to have been denied), you or your representative may appeal your denied Claim or appeal in writing to the Employee Benefits Committee (EBC). See the "Claims Administrators" chart above for contact information.  Your final appeal must be submitted within 180 days of your receipt of the written notice of denial or 180 days from the date such Claim is denied. You may submit with your appeal any written comments, documents, records and any other information relating to your Claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your Claim free of charge.

You have the right to:

1. Submit written comments, documents, records and other information relating to the participation appeal.
2. Request free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your participation appeal. For this purpose, a document, record or other information is treated as "relevant" to your participation appeal if it:
    o   Was relied upon in making the benefit determination
    o   Was submitted, considered or generated in the course of making the benefit determination, regardless of whether such document, record or other information was relied upon in making the benefit determination
    o   Demonstrates compliance with the administrative processes and safeguards required in making the benefit determination.
3. A review that takes into account all comments, documents, records and other information submitted by you relating to the appeal, regardless of whether such information was submitted or considered in the prior appeal determination.
4. A review that does not defer to the prior adverse appeal determination and that is conducted by the Plan Administrator of the plan who is neither the individual who made the adverse determination nor that person's subordinate.
5. If the appeal involved an adverse benefit determination based in whole, or in part, on a medical judgment, you have the right to require the Plan Administrator to consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment and who was neither consulted in connection with the prior adverse benefit determination nor the subordinate of any such individual.
6. The identification of medical or vocational experts whose advice was obtained in connection with the adverse benefit determination.

The EBC will make a decision on your appeal of a denial of your participation Claim under the plan no later 45 days of the receipt of your appeal request. This period may be extended by up to 90 days if the EBC determines that special circumstances require an extension of time. If such an extension of time for review is required because of special circumstances, the EBC will provide you with written notice of the extension, describing the special circumstances and the date as of which the benefit determination will be made, prior to the commencement of the extension

In the event an extension is necessary due to your failure to submit necessary information, the plan's timeframe for making a benefit determination on review stops on the date the EBC sends you the extension notification until the date you respond to the request for additional information. The EBC will notify you of the benefit determination as soon as possible, but not later than five (5) days after the benefit determination is made.

The EBC's notice of an adverse benefit determination on your final appeal will contain all of the following information:

1. The specific reason(s) for the adverse appeal determination.
2. Reference to the specific plan provisions on which the appeal determination is based.
3. A statement that you are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your appeal.
4. Any internal rule, guideline, protocol or other similar criterion relied upon in making the adverse appeal determination or notice that a copy of the rule, guideline, protocol or other similar criterion relied upon in making the adverse determination will be provided free of charge to you upon request.
5. A statement of your right to bring an action under ERISA.

# 6. Filing a Claim Regarding Participation/Coverage Levels and Decision on Review of Claim by HR SHARED SERVICES

Claims regarding eligibility to participate in the LTD Plan or the STD Plan and elections regarding coverage levels under those Plans (such as whether you had a Status Change that would entitle you to change your coverage level or whether you elected Optional Short or Long-Term Disability Plan coverage) must be made in writing to HR Shared Services. See the "Claims Administrators" chart above for contact information. Your Claim should include an explanation of the eligibility to participate or coverage level issue, the facts surrounding the request, and any documentation that will support the request for the approval of eligibility or coverage level including a copy of the applicable enrollment confirmation form, proof of status change date, or documentation supporting the request for eligibility outside the enrollment periods for Annual Enrollment, New Hire enrollment, or Status Change deadlines. HR Shared Services will review the information and review enrollment files, call center tickets, and refer to the plan document for the particular eligibility or coverage change being requested.

HR Shared Services will notify you of the Claim decision on your participation or coverage level issue under the Short-Term Disability Plan claim or your Long-Term Disability Plan claim (as applicable) within 45 days of the receipt of your Claim. This period may be extended by 30 days if such an extension is necessary due to matters beyond the control of the plan. A written notice of the extension, the reason for the extension and the date by which the plan expects to decide your Claim, will be furnished to you within the initial 45-day period. This period may be extended for an additional 30 days beyond the original 30-day extension if necessary due to matters beyond the control of the plan. A written notice of the additional extension, the reason for the additional extension and the date by which HR Shared Servicesexpects to decide on your Claim, will be furnished to you within the first 30-day extension period if an additional extension of time is needed. However, if a period of time is extended due to your failure to submit information necessary to decide the Claim, the period for making the benefit determination by HR Shared Services will be stopped from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If your Claim for benefits is denied, in whole or in part, you or your authorized representative will receive a written notice from HR Shared Services of your denial. The notice will be written in a manner calculated to be understood by you and will include:
a. the specific reason(s) for the denial,
b. references to the specific plan provisions on which the benefit determination was based,
c. a description of any additional material or information necessary for you to perfect a Claim and an explanation of why such information is necessary,
d. a description of your final appeal rights to file and appeal with the Employee Benefits Committee (as explained under item "5" above, the appeals procedures and applicable time limits, including a statement of your right to bring a civil action under section 502(a) of ERISA following the conclusion of your appeals,

## Final Note on Short-Term Disability Plan and Long-Term Disability Plan Claim Appeals

Following a final adverse benefit decision, you have the right to bring a civil action under ERISA section 502(a). You and the Plan representatives may have other voluntary alternative options, such as mediation. One way to find out what may be available to you is to contact your local U.S. Department of Labor Office.

# YOUR RIGHTS UNDER ERISA

As a participant in the Company's Employee benefit plan, you have certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that, as a plan participant, you will be entitled to:

## Receive Information about Your Plan and Benefits

- Examine, without charge, at the Plan Administrator's office or your work location, during normal working hours, all plan documents governing the plan, including insurance contracts (if any), and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration (EBSA).
- Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the plan, including insurance contracts (if any), and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Plan Administrator may request a reasonable charge for the copies.
- Receive a summary of the plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a summary of this annual report.

## Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties upon those who are responsible for the operation of your Employee benefit plan.

The people who supervise the operation of your plans, called "fiduciaries," have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

## Enforce Your Rights

If your Claim for a welfare benefit is denied in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a Claim for benefits that is denied or ignored, in whole or in part, you may file suit in Federal or state court.

If it should happen that a plan fiduciary misuses the plan's money or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor or file suit in Federal court.

In the event of legal action, the court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees; for example, if the court finds your Claim is frivolous.

## Assistance with Your Questions

If you have questions about your plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator you should contact the nearest office of the Employee Benefits Security Administration (EBSA), U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration (EBSA), U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration (EBSA).

# FUTURE OF THE PLAN

Although the benefits currently available (in the 2007 Plan Year) are described in this summary for the Company's Short-Term Disability Plan and the Long-Term Disability Plan, the Company reserves the right to change or end the plans described in this summary at any time. Any plan changes will result from actions taken and approved by the Company. The Company may adopt such changes or terminate the plan at any time and for any reason.

The Company's practices, polices, and benefits are outlined here for your information as required by law. However, this does not constitute an implied or expressed contract or guarantee of employment.

# SECTION THREE – GLOSSARY

If a different definition of any of the following words is provided in the section describing a particular benefit plan, that definition applies instead of the definition listed below.

*Sometimes, to describe a benefit plan accurately, some technical terms must be used. Here, to help you understand them, are brief definitions in alphabetical order.*

**Accident/Accidental**
An unexpected event resulting in bodily Injury by an external trauma.

**Active Work, Actively at Work**
You will be considered Actively at Work on any of the Company's scheduled work days if you are performing the regular duties of your job on that day in accordance with your regularly scheduled hours, either at a Company defined place of business or at some location to which you are required to travel for Company business.

**Affiliates**
Subsidiaries of, or other companies related to, Nortel Networks Inc. (NNI), that have been authorized by the Board of Directors of NNI to provide coverage for their employees under the Company's Short-Term Disability Plan and Long-Term Disability Plan and have adopted those programs.

**Annual Enrollment Period**
The period during which you may enroll yourself and/or your eligible Dependents in benefits for the coming year. The FLEX Annual Enrollment Period is held each fall. Benefits selected during the Annual Enrollment Period are generally effective the following January 1.

**Before-Tax Contribution**
A contribution for benefits coverage that is deducted from your pay before federal income, FICA (Social Security), and most state and local income taxes are deducted, reducing your taxable income and saving you money in taxes.

**Behavioral Illness**
A mental, psychoneurotic or personality disorder, or chemical dependency (alcohol and substance abuse).

**Calendar Year**
January 1 through December 31. This period is also known as the Plan Year.

**Children**
Dependents who are:
- your natural Children,
- Children legally adopted by you or placed with you for adoption,
- your stepchildren,
- your legal foster Children,
- your responsibility as a legal guardian,
- Children of your Domestic Partner (Children of a Domestic Partner are not eligible for coverage under Optional Dependent Life Insurance, Optional Family AD&D Insurance or the Health Care and Dependent Day Care Reimbursement Accounts), or
- Children for whom you are required to provide health coverage, as specified by a Qualified Medical Child Support Order (QMCSO). A QMCSO is an order of judgment from a court that directs a plan administrator to cover a child for benefits under a health care plan.

To be eligible for coverage, stepchildren, legally authorized foster Children, Children for whom you are the legal guardian and Children of your Domestic Partner must depend on you for support and maintenance and live with you at least six months of the Calendar Year in a regular parent-child relationship.

**Claim**
A request by a covered person for a benefit under a specific plan.

**Claims Administrator**
The company or third party administrators responsible for processing and paying benefit Claims and other various administrative services.

Company – Nortel Networks Inc.

**Core FLEX Benefits**
Benefits fully paid by the Company. You are automatically enrolled in the following core coverage and have no choices to make in order to have coverage in these benefits:
- Short-Term Disability coverage at 100% of your pre-disability base salary (called FLEX Earnings - see this glossary for more on what is and isn't included in this amount) for six weeks, then 66 /3% of your pre-disability FLEX Earnings for up to 20 additional weeks,
- Long-Term Disability coverage at 55% of your pre-disability FLEX Earnings after you have been disabled for 26 consecutive weeks,
- Employee Life Insurance equal to one times your FLEX Earnings,
- Employee Assistance Program provides free confidential counseling for up through the first 8 visits.

You can supplement your Core FLEX Benefits by purchasing Optional FLEX Benefits with FLEX Credits provided by the Company and with Before-Tax and After-Tax Contributions.

**Dependent**
For the purpose of Status Changes, Dependents include:
- your spouse, including your common-law spouse as recognized by applicable state law,
- your qualified Domestic Partner, (see definition of Domestic Partner),
- your unmarried Children and your Domestic Partner's unmarried Children under the age of 19, (see definition of Children),
- your unmarried Children and your Domestic Partner's unmarried Children between the ages 19 and 25 who are full-time students at an accredited school and are primarily supported by you, and
- your unmarried Children and your Domestic Partner's unmarried Children of any age who have a mental or physical disability that began before age 19 (or age 25 if they are a full-time student) and who are Wholly Dependent on you for support and maintenance and became dependent before age 19 (or age 25 if a full-time student).

For the purpose of a reduction in STD or LTD benefits due to other income (i.e., application of the family offset), a Dependent includes:
- any Dependent receiving Social Security Disability Benefits due to your disability regardless of whether or not that Dependent is living with you and is or is not considered a Dependent for tax purposes.

**Doctor**
A licensed practitioner of the healing arts acting within the scope of the license.

**Effective Date**
The date coverage goes into effect under the plan.

**Employee**
A person employed by the Company or any of its Affiliates on a permanent basis; the term also applies to that person for any rights after coverage ends. The term specifically excludes independent contractors and all other workers providing services to the Company or an Affiliate who are not recorded as employees on the payroll records of the Company or an Affiliate, including any such individual who is subsequently reclassified by a court of law or a regulatory body as a common law employee of an Employer.

**Enrollment Period**
See "Annual Enrollment." The FLEX Benefits may be selected during a 31-day enrollment period when you first become eligible for benefits as a new employee or after you experience a Status Change.

**FLEX Benefits**
One of the Company's benefit programs, which offers you the flexibility to choose from different types and levels of benefits. Through FLEX Benefits you can design the benefits program that is best for you and your family.

**FLEX Credits**
Company-provided benefit dollars you may use to purchase Optional FLEX Benefits.

**FLEX Earnings**
Generally, your base salary. FLEX Earnings do not include other types of pay, including but not limited to, overtime, shift differentials, relocation payments or bonuses. However, if you are eligible for sales incentives, your FLEX Earnings include your base salary and target incentives, as defined each year by the Company (excluding bonuses). Part-time employees' premium calculations under the FLEX Disability, Life and AD&D plans are based on a 25-hour work week if the employee regularly works 20-34.5 hours per week, and on a 40-hour work week if the employee regularly works more than 35 hours per week. Claim calculations on these benefits are based on the number of hours worked that a part-time employee has averaged over the 12 weeks immediately preceding the event which caused a claim for benefits to be filed. If you are a part-time employee and work 20 hours or more per week, the number of hours you are regularly scheduled to work each week will be the number of hours you will receive each week for your disability benefit.

**Gross Disability Payment**
60% of pre disability FLEX Earnings before any deductions are taken for Core Short Term Disability
66 2/3% of pre-disability FLEX Earnings before any deductions are taken for Optional Long Term Disability

**Hire Date**
The date your employment with the Company begins.

**HR Shared Services**
The service center for the Company's benefit plans. By contacting HR Shared Services, you can ask questions about any of the plans, request needed forms or change your employee information, such as your home address.

**Illness**
Any disorder of the body or mind of a covered person, but not an Injury or pregnancy, including abortion, miscarriage or childbirth.

**Injury**
A condition that results in damage to the covered person's body, independently of Illness.

**Medicaid**
Title XIX (Grants to States for Medical Assistance Programs) of the Federal Social Security Act, as amended from time to time.

**Medical Plan**
A plan that provides medical benefits for you and your enrolled Dependents.

**Medicare**

Title XVIII (Health Coverage for the Aged and Disabled) of the Federal Social Security Act, as amended from time to time.

**Optional FLEX Benefits**
Benefits you pay for with FLEX Credits, Before-Tax Contributions or After-Tax Contributions. Optional FLEX Benefits supplement Company paid Core FLEX Benefits. You can apply FLEX Credits or make Before-Tax Contributions to the following options:

- Medical coverage for yourself or yourself and your enrolled Dependents (you have sufficient FLEX Credits to buy medical coverage for yourself only under the Preferred Provider Organization, or Out-of-Area Comprehensive option if you don't live within a Network Area, but you may waive medical coverage if you choose),
- Dental, Vision and Hearing Care coverage for yourself or yourself and your eligible dependents,
- Optional Short-Term Disability coverage that increases your Core benefit to 90% of your pre-disability FLEX Earnings for up to 20 weeks after the first six weeks of disability,
- Optional Long-Term Disability coverage that increases your Core benefit to 66 2/3% of your pre-disability FLEX Earnings when you have been disabled for 26 consecutive weeks, and/or
- Health Care and/or Dependent Day Care Reimbursement Accounts

You can apply FLEX Credits or make After-Tax Contributions to the following options:
- Additional life insurance for yourself,
- Dependent life insurance for your spouse and/or Children, and
- Optional AD&D insurance for your spouse and/or Children.

**Payroll Deduction**
Contributions taken from your pay either before or after federal income, FICA (Social Security) and most state and local income taxes are deducted.

**Physician**
See "Doctor."

**Plan Administrator**
Nortel Networks Inc. (NNI) acting by and through its Board of Directors.

**Plan Year**
January 1 to December 31. The Plan Year may change from time to time as determined by the Plan Administrator prior to the first day of the Plan Year.

**Preexisting Condition**
Any condition for which you:
- receive treatment or services,
- incur expense,
- receive diagnosis, or
- take prescribed medication

before coverage begins.

**Sickness**
See "Illness."

**Status Change**
You can make certain changes in your FLEX Benefits choices during the 31-day period after you experience one of the following Status Changes. Other than the Annual Enrollment Period, the occurrence of a Status Change is the only time you can change your FLEX choices. The list of Status Changes includes but is not limited to:
- Marriage,
- Domestic Partner relationship becoming qualified for eligibility and verified by HR Shared Services
- Divorce, annulment or legal separation,

- Rescinded divorce,
- Birth, adoption, placement for adoption or change in legal custody of a Dependent child,
- Disability of a spouse, enrolled Domestic Partner or Dependent child,
- Death of a spouse, enrolled Domestic Partner or Dependent child,
- Change in employment status affecting benefit eligibility for you, your spouse or enrolled Domestic Partner or Dependent Child (such as from or to part- time or full-time or a paid leave of absence),
- Change in your spouse's, enrolled Domestic Partner's or Dependent Child's employment status affecting benefits eligibility (such as from or to part- time or full-time or a paid leave of absence),
- Beginning or end of your spouse's or enrolled Domestic Partner's employment,
- You, your spouse or enrolled Domestic Partner take an unpaid leave of absence,
- Relocations affecting a Medical Plan network availability,
- Covered child's loss of Dependent status (e.g., no longer a full-time student)
- Dependent child becomes eligible (e.g., becomes a full-time student),
- Termination of your relationship with an enrolled Domestic Partner,
- Loss of spouse's or Domestic Partner's medical or dental, vision and hearing care coverage,
- You, your spouse or enrolled Domestic Partner become eligible for Medicare or Medicaid,
- Shift change,
- Loss of other group health plan coverage (for the employee who declined coverage due to having other coverage but not due to failure to pay premiums on a timely basis, voluntary disenrollment or termination for cause),
- Loss of the employer contribution toward other group health plan coverage (for the employee who declined coverage due to having other coverage),
- Loss of other group health plan coverage when the other coverage was COBRA and the maximum COBRA coverage period ends,
- Benefits plan year of a spouse's or domestic partner's plan differs from Nortel Networks' plan year,
- For Dependent Day Care Reimbursement Account participants - dependent child turns 13, or
- For Dependent Day Care Reimbursement Account participants - certain cost changes that occur related to dependent child's day care provider. The costs should increase or decrease a minimum of 5% to warrant a change to your Reimbursement Account.

The benefit selections you may make must be consistent with the Status Change. For example, if you have a baby, you may add coverage for the child under your Medical, Dental, Vision and Hearing Care plans, select Optional Dependent Life Insurance for your child, increase your Optional Employee Life Insurance and/or change your contribution to your Health Care and/or Dependent Day Care Reimbursement Accounts.

You must contact HR Shared Services and make your selection within 31 days of the Status Change. HR Shared Services will initiate the Status Change in the FLEX Benefits system that will allow you to go online to make your benefits changes. If you prefer you may request to make your selections by fax or mail. Contact HR Shared Services and they will send you a Personalized Enrollment Worksheet and an affidavit which must be completed and returned within 31 days of the Status Change. Employees must be able to provide supporting documentation (such as a marriage or birth certificate or divorce decree) at such time as may be requested by HR Shared Services for audit purposes.

If you submit your changes (either online or by notarized affidavit) more than 31 days after your event occurred:
- the plan does not permit you to change any FLEX Benefit options (e.g., medical, life or disability coverage) until the next Annual Enrollment period
- you may change your medical and dental, vision and hearing care dependent coverage level (e.g., employee and spouse, employee and child) by requesting the addition or deletion of Dependent coverage under your current medical or dental, vision and hearing care option and
- your dependent coverage level change will be effective the date all documents are received (i.e., via fax or mail)or via online affidavit in HR Shared Services.

Note: most HMOs do not allow Dependent additions after 31 days of the event.

**Termination Date**
The last day you work for the Company.

**Total Disability, Totally Disabled**
For the Short-Term Disability plan, the inability to perform the work you normally perform due to Illness or accidental Injury, as certified by a Physician.
For the Long-Term Disability plan, during the first 12 months, the inability to perform the work you normally perform. After the first 12-month period, you will be considered Totally Disabled if you are unable to perform any job you are or could become qualified to do with your education, training or experience.

**Wholly Dependent**
Complete dependency for the full care, support and maintenance of a physically or mentally disabled individual, including services necessary to maintain life, such as Room and Board, health and comfort of the Dependent.

**Workers' Compensation Benefits**
Benefits covered under Workers' Compensation law.