## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Nortel Networks Inc., *et al.*,[1] | ) Case No. 09-10138 (KG) |
| | ) |
| Debtors. | ) Jointly Administrated |
| | ) |
| | ) Objection Deadline: Oct. 22, 2012 at 10 a.m. |
| | ) Hearing Date:        Feb. 13, 2012 at 10 a.m. |
| | RE:                D.I. # 8067 ? |

## OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

LYNETTE SEYMOUR hereby submits this Objection to Debtors' Motion for entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees. In support of this Objection, LYNETTE SEYMOUR respectfully represents as follows:

### BACKGROUND

1.    I was hired as a Sales Engineer by Nortel Networks in 2000.

2.    As an engineer for Nortel, I worked extremely hard, willingly working many, many, many hours to get the job done because I had pride in my company and its products. I was proud to represent Nortel and I enjoyed providing solutions for our customers.

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

3.    I excelled at my job. I was repeatedly selected as Team Leader due to my ability to get things done.    After Carpal Tunnel surgery, I even drove to customer sites (literally one-handed) before my doctor had released me to return to work, because they needed my help and I was committed to my customers and my team. When downsizing began in 2001 – 2002, I was one of only two people NOT to be laid off from a team of 20.

4.    I went out on LTD in 2004 due to bilateral Thoracic Outlet Syndrome, a condition in which nerves of the upper extremities are compressed and damaged, causing disabling pain and loss of function in the upper extremities.

5.    The employee handbooks, LTD Summary Plan Descriptions, and communications from Prudential and Nortel HR all indicated LTD benefits would continue to age 65.

6.    The Debtors committed fatal errors of omission for many years. From the year I was hired until the year I became disabled, the Flex Benefits Enrollment Guide describing the LTD plan did not disclose that the plan was self-funded. The Debtors did not make clear that Nortel was the Insurer; all documents implied that Prudential was the Insurer. The enrollment guide also did not instruct me to read the Summary Plan Description for crucial plan information, nor did it indicate where I could find the Summary Plan Description.

## RELIEF REQUESTED

7.    I respectfully request that the Court deny the Debtors' motion to terminate Long Term Disability benefits for those Plan Participants who are currently disabled.

8.    I respectfully request the Court to require the Debtors to either continue funding the LTD income payments and medical/life insurance benefits for those currently disabled, or,

2

alternatively, require the Debtors to provide a cash settlement equivalent to the replacement value of those benefits that would have been paid, as promised, to age 65.

9.      I also respectfully request the Court to require the Debtors to arrange for a group medical plan, funded by the Debtors or through a cash settlement, to provide continued Medical coverage for those LTDers (or their dependents) who may not currently be covered by Medicare, and who would not be able to obtain coverage otherwise, due to pre-existing conditions AND the prohibitive cost of an individual policy.

10.      If this case does result in a cash settlement for LTD recipients, I request that the Court allow recipients to have the option of electing a structured settlement to minimize potential tax consequences.

11.      My total claim is $2,453,807, which is a projection to age 65 for replacement of LTD benefits. (Please see Exhibit E.)

## BASIS FOR RELIEF

### (A) Contractual Obligations

12.      As an engineer for Nortel, I worked extremely hard, willingly working many hours to get the job done because I had pride in my company and its products. I was proud to represent Nortel and I enjoyed providing solutions for our customers.

13.      I fulfilled my end of the bargain by showing up to work every day and working very hard without hesitation, for the good of the Company. The work I did directly translated into sales of Nortel products; I provided value to the Company. I expected Nortel to fulfill their end of the bargain by honoring their obligation to pay my long-term disability benefits.

14. Nortel offered long-term disability insurance as part of its employee benefit package. The concept of an insurance policy, by its very nature and design, is to pay compensation in the event of a claim. No one expects to become seriously ill or disabled, but it does happen, and the long-term disability insurance is there to provide replacement income in case disaster strikes and an employee is not able to work.

15. I did become disabled, and had to exercise my Long-Term Disability benefit. I filed an LTD claim, it was approved, and I began receiving LTD income – just as the system is designed. I thank God the LTD policy was there, because the condition I have is incurable and, due to unrelenting pain and dysfunctional arms and hands, I am completely unable to work to earn a living. Imagine my surprise and horror when I learned that Nortel says it may terminate my LTD plan – and the benefits being paid for my long-approved claim – at any time, for any reason. How does this make sense? Let's say I purchase a Homeowners Policy from State Farm. One day my house burns down, I file a claim, and the claim is accepted. However, State Farm calls and tells me that they're not going to pay the amount they owe me. Of course this would be an egregious breach of contract! We had a deal – I pay my premiums on time, and they pay if my house burns down. They can't decide NOT to pay the accepted claim; the triggering event has already happened. Likewise, I am ALREADY DISABLED, and my LTD claim HAS ALREADY BEEN ACCEPTED. The triggering event has already occurred. The Plan "vested," if you will, at the moment of disability. It makes no sense to offer an LTD policy that can stop paying on an existing claim, at the will of the Insurer. Surely this is an Abuse of Discretion.

16. If this is indeed how the Nortel LTD policy works – as nonsensical as it is – it certainly was never disclosed as such in any document available to plan participants. If it had

4

been disclosed, who in their right mind would rely on such a policy? To compound matters, I paid a part of the premiums for increased LTD coverage. How can a policy for which I partially paid premiums be canceled and/or fail to pay benefits for an approved claim – through no fault of mine? If I had been aware that this is how the LTD policy worked – that it was essentially unreliable and useless in time of need – I absolutely would have bought a third-party disability policy. I certainly would not have wasted my money paying for the optional increased coverage; I would have instead put that money towards a real policy. All of these facts taken together surely constitute an Abuse of Discretion and breach of Fiduciary Duty by the Debtors.

17.    The Debtors maintain that LTDers are "at-will" employees who could be terminated at any time, and that "participation in the plans and the benefits under the plans do not create an employment contract with Nortel." (Excerpted from 2007 Enrollment Guide.) Once again, it is NOT CLEARLY STATED in any enrollment guide or SPD that Nortel could choose to terminate an LTD employee, or that such termination would also terminate payment of an approved LTD claim. And while the Plans do not create an employment contract, the offering of disability insurance does imply an obligation to pay claims as promised, should they occur.

18.    Once I became disabled, I also held up my and of the bargain by submitting all the required medical documentation to verify my continued disability. I consistently met all of the conditions to remain qualified as an LTD recipient. Each time that I called Prudential to check on my status, I was consistently told I would continue to receive benefits until I reached 65, so long as I remained disabled.

5

19.    I fulfilled my end of the bargain as an employee and as an LTDer. The Debtors need to fulfill their end of the bargain as well, by paying the benefits I was promised. Failure to do so would be a reprehensible Breach of Contract.

## (B) Breach of Fiduciary Duty

12.    As the sponsor of the LTD plan, the Debtors had an obligation under ERISA to act in the best interest of the plan participants and to provide clear, accurate, and current information about the plan, and yet they failed to do so in a number of significant ways.

13.    The fact that the LTD plan is self-funded is an absolutely vital piece of information with great potential impact (as we are now seeing). The Debtors, however, failed to take the most basic measures to inform employees that the plan was self-funded. From the year I was hired until the year I was forced to go onto LTD (and for several additional years even), the Flex Benefits Enrollment Guide – the only document employees are given describing the benefit plans and selection options – never mentioned that the plan was self-funded, or the consequences thereof. Instead, it merely stated that the plan was "administered by the Prudential Insurance Company of America." This important omission led me to conclude that the LTD plan was a third-party policy *ISSUED* by Prudential. If the Debtors had made clear that the plan was self-funded rather than a third-party policy, and that benefits would be subject to cancellation in certain circumstances, I absolutely would have purchased my own external third-party disability insurance. Being a single woman with no children and no one to help support me, I knew the importance of disability insurance and thought I was doing the smart thing by electing to purchase the optional increased coverage available through the Debtors' plan. Based on the information made available to me, I was led to conclude that the LTD coverage being provided

6

by "Prudential" was sufficient and that purchasing an additional policy was unnecessary. **I relied on the information provided by the Debtors to my great detriment. By the time I learned the truth, it was too late: I was disabled, could not work, AND would never be able to buy a new disability policy.**

14.     In later years – 2010, for instance – the Enrollment Guides did in fact clearly state that the LTD plan was self-funded. (Please see Exhibit C.) This indicates that at some point the Debtors realized their liability and error in not disclosing this information; at some point they realized they did have a fiduciary duty to make it very clear. This was too little, too late for me and for the rest of us who were already disabled.

15.     To further emphasize this point, a memo summarizing Nortel's 2011 Benefits announces:

**New fully insured long-term disability (LTD) plan:** Employees who are actively at work on January 1, 2011, and who work more than 20 hours a week may be eligible to participate in a new fully insured LTD plan. <u>**"Fully insured" means that employees who meet the eligibility requirements and go on LTD will see these benefits continue after Nortel ceases operation.**</u> The LTD payments would be 50% of pre-disability earnings to a maximum of $5,000/month. This program is provided at no cost to the employee and there is no buy-up option.

16.     That's right – in 2011 a memo specifically points out that the new LTD plan is fully insured, and goes so far as to spell out that "fully insured" means that LTD benefits would continue after Nortel ceases operation. (Please see Exhibit D.) Obviously by 2011 the Debtors realized that the continuation of LTD benefits after bankruptcy might be of some importance to employees. Back in 2004 - before I was disabled and could have taken action – it sure would have been nice to know that the LTD plan was NOT FULLY INSURED and that LTD benefits

7

WOULD NOT CONTINUE if Nortel ceased to exist. It would also have been extremely nice to know that Nortel could terminate my employment while I was disabled AND LTD benefits would be discontinued in that case. It is unfathomable that they did not make this abundantly clear. Through their Errors of Omission, they robbed us of the opportunity to make an informed decision - a decision which literally could have saved our lives. This is a clear breach of fiduciary duty.

17.    Under ERISA, the Debtors also had a duty to make the Summary Plan Description (SPD) available to all plan participants. In order to read the Summary Plan Description, however, one must first know that the document even exists! The Debtors did not take reasonable care to make employees aware of the SPD – let alone the *importance* of the SPD – and how to access it. As recently as the 2007 Enrollment Guide, I could not even find the term "Summary Plan Description" anywhere in the Guide! The inside cover merely states "If there are any discrepancies between the information in this document and the applicable Nortel benefits plan, the actual plan document shall ......... govern the details of the benefit coverage and the plan administration..."; but it makes no mention of where to find the "plan documents," nor their importance. Likewise, the ONLY other reference is in the LTD section, which reads: "Refer to your SPD for information on qualification requirements for LTD coverage." That's it! It doesn't even define what SPD is, or indicate where to find it. It certainly does not state anything about the plan being self-funded or the fact that someone who is on LTD could have their benefits terminated at any time for any reason - even in the section entitled "Consumer Tips." (Please see Exhibit A.) This certainly qualifies as failure to take reasonable care. It wasn't until I was already on Short Term Disability that I became aware of the SPD, after being directed by Human Resources to a copy on the internal website.

8

18.     Even the Summary Plan Description itself does not make vital aspects of the Plan abundantly clear.  Here is the introduction and table of contents from the 2004 SPD (my LTD year):

"This is the Summary Plan Description (SPD) that describes the provisions of the Nortel Networks Short-Term Disability Plan and the Long-Term Disability Plan that are in effect for the 2004 Calendar Year. It is designed to provide you with a comprehensive resource providing detailed information about your shortterm

and long-term disability benefits and connecting you to other sources of information that could not be described fully in this SPD. It is divided into the following sections:

□ **SECTION ONE – SHORT-TERM DISABILITY PLAN AND LONG-TERM DISABILITY PLAN BENEFITS** describes the provisions of the Short-Term Disability Plan and the Long-Term Disability Plan that determine your benefits.

└ **SECTION TWO – ADMINISTRATIVE INFORMATION** includes administrative details about the Short-Term Disability Plan and the Long-Term Disability Plan, such as how to file Claims and appeal denied Claims, where to get more information, your ERISA rights and how the Company may amend the plan.

□ **SECTION THREE – GLOSSARY** contains brief descriptions of terms used in this SPD."

19.     As one can see, based on this table of contents and section descriptions, a plan participant looking for information about disability benefits and plan features would naturally turn to Section One. Any reasonable person might expect this section to contain vital information such as the facts that the plan is self-funded, that it is not a third party policy, that an employee could be terminated from the company while out on LTD and then lose their disability benefits, or that benefits could end if the company went bankrupt. This section, however, mentions none of these facts! Instead, the section repeatedly refers to Prudential, further fostering the impression that it is a Prudential policy.

9

20.    It is only in the "Administrative" section – a section most participants would not ordinarily read – that the Debtors disclose the plan is self-funded. Even then, though, the Debtors do not take care to define what this means or state the ramifications. (Please see Exhibit B.) They take care to include a glossary, but don't even clarify these key concepts there. The glossary includes terms such as "Illness," "Plan Year," and "Claim," but the Debtors don't find it necessary to define the vital terms "Self-Funded" or "Plan Sponsor". A definition for "Claims Administrator" actually serves to reinforce the idea that Prudential owns the policies by stating that the Claims Administrator is responsible for "paying benefit Claims."

**21.    These errors of omission by the Debtors caused me irreparable harm. I relied on the information they provided (or lack thereof) and, as a consequence, did not purchase 3rd Party Disability Insurance that I otherwise would have purchased. As a result, I am disabled, cannot work, and cannot purchase a new disability policy at this point. I relied on the Debtors' documents and statements to my great detriment.**

22.    Apparently, I am not the only employee who made this incorrect conclusion; in fact, every single LTDer (to my knowledge) also came to the same conclusion. This proves just how misleading the documents were. Even Our Honorable Judge originally assumed our LTD claims were against Prudential, not Nortel. That speaks volumes.

23.    In the Debtors' Motion to Terminate, they repeatedly assert that they act "in an abundance of caution." **Where was this abundance of caution when it came to informing employees & plan participants of absolutely critical information?    Where was this abundance of caution when they failed to tell us that the LTD policy was not ISSUED by Prudential, or where to find the Summary Plan Description, or when they failed to define**

key terms in the SPD?  They clearly breached their Fiduciary Duty to act in the best interest of plan participants.

## C) Ambiguity of Plans

24.    The language of the LTD Summary Plan Description is ambiguous in many ways, within a single Plan Year and especially across multiple Plan Years.

25.    The Debtors assert that the Plans could be terminated at any time.  The language of the SPDs, however, are not clear.  The 2004 SPD (my LTD year) states:

> "Although the benefits currently available (in the 2004 Plan Year) are described in this summary for theCompany's Short-Term Disability Plan and the Long-Term Disability Plan, the Company reserves the rightto **change or end the *plans*** described in this summary at any time. Any plan changes will result from actions taken and approved by the Company. The Company may adopt such **changes or terminate the *plan*** at any time and for any reason."

26.    Note the use of the word "plan" in this reservations clause. This does not make it clear whether the plan itself may terminate, benefits under the plan may be terminated, or both. Does "terminating the plan" mean that disability coverage for an able bodied, active worker may be terminated, while disability benefits for an existing, approved LTD claim will continue to be paid? Or does "terminating the plan" mean that coverage for active workers will be discontinued AND payment of existing, approved LTD claims will also be discontinued? It is not clear. If the debtors had intended to say "payment of existing LTD claims may be terminated at any time for any reason," they should have clearly stated it as such.  The language used is ambiguous and open to different interpretations.

27.    Likewise, in the section of the SPD entitled "When Coverage Ends," reads:

11

"Your core and optional STD and LTD Plan *coverage* will end on the earliest of:

    the date your employment ends, or

    the date you stop qualifying for coverage, or

    the date the part of the plan providing the coverage ends, or

    the date you fail to pay any required premium contribution."

28.    Again, note use of the term **"Coverage"** as opposed to the term **"benefits"**. The difference is subtle but crucial. As written, this implies that **"Coverage" refers to eligibility for LTD benefits, rather than payment of LTD benefits for an existing claim**. The terms "Plan", "Coverage", and "Benefit" are not defined anywhere in the 2004 SPD or Glossary.

29.    The language of the plans across different years changes significantly. And yet it is never made clear which plan is the ruling document for a specific employee – is it the SPD in effect the year he was hired, or the SPD in effect the year he became disabled, or the current SPD? This is not defined.

**30.**    ERISA requires that plan participants be notified of changes to the SPD. The Nortel STD/LTD Summary Plan Description changed numerous times between 2000 (my year of hire) and today, and yet **I was NEVER notified of changes in the SPD, even when I was receiving benefits pursuant to that SPD.**

31.    As mentioned in the Fiduciary Duty section, the Glossary of the SPD – by definition, a section intended to provide clarity – is even ambiguous. It unhelpfully defines "Plan Administrator" as "Nortel Networks Inc. acting through and by its Board of Directors," rather than providing an explanation of how "Plan Administrator" is differentiated from "Claims Administrator". Clarity could have been greatly improved (and misinterpretations diminished) by

12

defining other key terms such as "Self-Funded", "Contributions Held in Trust", "Plan Sponsor", and so on. Instead we are left with a series of inconsistent documents with ambiguous language.

## (D) We Are Essentially Medically Retires

32.    The Debtors argue that LTDers do not merit the Section 1114 protections afforded retirees. In point of fact, LTDers more closely match the definition of *"retiree"* than *"active employee"* in every practical sense.

33.    In the landmark Visteon ruling of 2010 (*Visteon Corporation, et al. v., (3rd Cir. 2010)*), Chief Judge McKEE stresses in his opinion the necessity for examining the plain language of 11 U.S.C. § 1114(a). This section defines retiree benefits as follows (emphasis mine):

   a. "payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or **benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor** prior to filing a petition commencing a case under this title."

34.    I am not an attorney, but I would argue that "benefits in the event of sickness, accident, disability" **plainly refers to such benefits paid to *any entity or person***, not solely such benefits paid to *retired* employees. The structure of the paragraph allows the second main clause – "or benefits in the event of sickness", etc. to stand alone as a separate criterion, rather than acting as a modifier of the first clause. Long-term disability payments are certainly benefits in the event of sickness or disability under a plan maintained or established by the Debtor (Nortel)

13

prior to filing for bankruptcy. Furthermore, quoting from Chief McKee's opinion, "section 1114 could hardly be clearer. It restricts a debtor's ability to modify *any* payments to *any* entity or person under *any* plan, fund, or program in existence when the debtor files for Chapter 11 bankruptcy." Thus, based on this plain reading of the code, disability payments fall within the definition of "retiree benefits" and consequently should be afforded the same protections. Regardless of whether Nortel could have terminated disability benefits prior to Chapter 11 filing, a plain reading of the code says that they must now follow the procedures outlined in § 1114.

35.    This outcome appears to be consistent with legislative intent. The express purpose of the Senate's Fair Weather Promise Report was to address their concern for those individuals most vulnerable during corporate bankruptcy proceedings – those whose lives would be devastated because they had no ability to replace the benefits being suddenly terminated. We LTDers find ourselves in exactly the same plight the Senators were attempting to correct.

36.    We LTDers are also more like retirees then active workers in these respects:

- We do NOT pay FICA tax
- We are NOT eligible for unemployment benefits
- We cannot change certain benefit selections
- Some of us receive Medicare and Social Security benefits

37.    In one crucial way, however, LTDers are in fact even *more* vulnerable than retirees: many retirees have the ability to return to the workforce if absolutely necessary, to try to make up for lost income and benefits – but we LTDers don't even have that option. **We are disabled and CANNOT RETURN TO THE WORKFORCE.**

14

38.    Nortel claims that we LTDers are considered active employees. Within their own Summary Plan Description and other documents, however, this assertion is completely contradicted. For instance, the 2004 LTD SPD Glossary defines "Active Work, Actively at Work" as:

> **"Active Work, Actively at Work**
>
> You will be considered Actively at Work on any of the Company's scheduled work days if you are performing the regular duties of your job on that day in accordance with your regularly scheduled hours, either at a Company defined place of business or at some location to which you are required to travel for Company business."

39.    Certainly, being out on medical leave for eight years – doing absolutely no work during that time – does not meet the definition of "performing the regular duties of your job on that day in accordance with your regularly scheduled hours." Also, the front cover of my 2007 Flex Benefits Enrollment Guide is clearly labeled in very large print as "For U.S. Flex Participants Not Actively Working." (Please see Exhibit A). Their language is inconsistent, ambiguous, and contradictory. It's obvious that Nortel considers us active employees when it is to their advantage for administrative convenience, but do not consider us active employees when it's inconvenient to them - such as in allowing us to change our Flex benefit options, or in matching our 401K contributions..

## (E) Fairness

40.    The debtors are not emerging from bankruptcy, they are closing their doors forever. In this case benefits are not being terminated in order to slash expenses and become "leaner and meaner," allowing Nortel to emerge from bankruptcy and return to profitability. There is no balancing act required to weigh the interests of the various parties against the

interests of the surviving company. Instead, it is simply a matter of carving up the remaining assets in a fair and equitable way.

41.    The bankruptcy code requires the fair and equitable treatment of all parties when it comes to a settlement plan. Surely it does not seem "fair and equitable" to repay banks and bondholders while reneging on obligations made to disabled individuals who have no other recourse. Unlike banks and other financial creditors, we LTDers did not know we were at risk to lose our income and benefits, and we are unable to make up for the losses by making another deal or by passing along the losses to other customers. For us, these LTD benefits are everything. They are literally our lifeline. It would not be fair and equitable to repay others at our expense.

42.    Nortel made a lot of money by selling their assets, including their immense patent portfolio. We LTDers, prior to our disabilities, worked hard and contributed to the success of this company. We did not contribute to its downfall. We deserve a seat at the table when Nortel's large pie is divvied up.

## (F) Impact of LTD Benefits Being Terminated

43.    If my disability benefits are terminated or severely altered, it would be absolutely devastating to my life and health.

44.    I have been receiving LTD benefits in September 2004, when I became unable to perform my duties as Sales Engineer due to Thoracic Outlet Syndrome (TOS). TOS is a condition in which nerves of the upper extremities are compressed and damaged, causing intense chronic pain and restricting function of the arms and hands. It is not a life-threatening illness, but it is a life of intense pain and minimal functionality. I have difficulty doing simple things that

16

most people take for granted, such as driving, typing an email, writing, washing dishes, or holding up a book to read. This is a chronic condition which is not curable but does require ongoing medical treatment in order to manage symptoms and enable me to do basic activities of daily living. **If Nortel discontinues its LTD benefits, there is no question that I will not be able to afford the treatments and medications I need to make life bearable.**

45.    Unlike some retirees and LTD recipients, I do at least have Medicare parts A & B plus a small amount of Social Security income. However, my Social Security income is not even enough to pay for my medical costs, let alone the rest of my living expense. I depend on my Nortel LTD income to pay for housing, groceries, to pay all of my out of pocket medical costs including doctor bills and prescription drug co-pays, and other necessities. Also, I heavily rely on my Nortel medical and prescription drug insurance. Medicare currently covers only a small fraction of my actual medical costs; the majority of my medical costs are paid by my Nortel medical plan (Blue Cross Blue Shield).

46.    I have required seven surgeries during the past eight years. I have required months and months of physical therapy. In the past five months alone, I have had four cortisone injections to relieve severe pain and restore some level of function to various areas. All of this is in addition to the many medications I take every day. I could never have afforded any of these essential treatments if I had to rely on just Medicare without the additional coverage from Nortel's plan. I could certainly never have afforded these treatments with just my Social Security income, without my LTD income! **I thank God that I did have Nortel benefits so that I could have the surgeries and continuing procedures that I needed - otherwise I really don't know how I could have endured.**

17

47.    Over the past two years, my doctors' bills have averaged over $900 a month, of which roughly 80% was paid by Nortel's plan. My prescription drug costs have averaged $860 a month, of which Nortel's plan covered 78%. Without my LTD income and insurance, my out of pocket medical and prescription drug costs will skyrocket, and yet my income will decrease by 70%. I would not be able to afford the costs out-of-pocket, and I also could not afford a supplemental Medicare medical and prescription plan. (I don't even know whether I would be eligible for a supplemental Medicare plan in light of my existing condition.)  I am a single woman with no children and no family members living within 2000 miles; I have no one on whom to depend for financial assistance to help with these costs if necessary.

48.    **What that means is that if my Nortel LTD benefits are discontinued, it will be a catastrophic loss for me because I will have no way to regain the lost income and lost insurance benefits** because my condition is chronic, incurable, and **I will never be able to work again.** This is especially devastating because, like the other LTD recipients, I was completely unaware that this situation could ever happen.

49.    Plan documents, Nortel, and Prudential personnel all stated that I would receive LTD income and benefits until age 65. **It is imperative that Nortel fulfill their obligation so that we LTD years can afford our essential medical treatments and cost of living.  We have no other options.**

18

## EXHIBITS

A – Excerpts from Nortel 2007 Flex Benefits Enrollment Guide

B – Excerpts from Nortel 2004 STD/LTD Summary Plan Description (SPD)

C – Excerpts from Nortel 2007 Flex Benefits Enrollment Guide

D – Nortel HR Memo Regarding 2011 Benefits Changes

E – Proof Of Claim Calculation

## NOTICE

1.       Notice of this Objection has been provided to (a) counsel to the Debtors (Cleary); (b) the United States Trustee for the District of Delaware; and (c) counsel to the LTD 1102 Committee (Elliott Greenleaf) via first class mail. Other parties will receive notice through the Court's electronic filing system.  Lynette Seymour respectfully submits that, given the nature of the relief requested, no other notice of the relief requested herein need to be given.

**WHEREFORE,** Lynette Seymour respectfully requests the entry of an Order, in the form attached, providing for the Debtors to pay the FULL claims of all presently disabled LTD Plan participants, including myself.

Dated: Oct. 15 2012

Lynette Seymour
16711 Rivendell Lane
Austin, TX 78737
Telephone: 512.829.5158

*Appearing Pro Se*

19

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | ) |
|  | ) Case No. 09-10138 (KG) |
| Debtors. | ) |
|  | ) Jointly Administered |
|  | ) |
|  | ) **Re: Docket No. _____** |

## ORDER GRANTING MOTION FOR [_____]

Upon consideration of the *Motion for* _____ (the "Motion") and any responses thereto; and it appearing that sufficient notice of the Motion has been given; and in good cause having been shown, it is hereby

ORDERED that the Motion is granted.

Dated: _____, 2012
        Wilmington, Delaware

_____
HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.