## EXHIBIT E
## INDEX

E)  Summary Plan Description (SPD), 1993                    21 pages

.

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"



WEEKLY DISABILITY AND
LONG TERM DISABILITY PLAN

# BENEFITS CONNECTION

Exhibit E  Page 1 of 21

(Janette M Head) "Objection to Nortel Motion to Terminate LTD Plan & Employees"

# WEEKLY DISABILITY AND LONG TERM DISABILITY PLAN

(Janette M Head) "Objection to Nortel Motion to Terminate LTD Plan & Employees"

# TABLE OF CONTENTS

Page

Eligibility and Effective Date…………………………………………………...….…………1

Weekly Disability Benefits……………………………………………………..…..…….... 2

    Non-Occupational Disability Benefit……………………………………….…………….. 2

    Occupational Disability Benefit…………………………………………….…………….. 3

Long Term Disability Benefits……………………………………………………….…….. 7

Benefit Modification for Third Party Liability…………………………………….…………13

Termination of Coverage…………………………………………….…………….…………15

ERISA Information………………………………………………….….……………………..16

(Janette M Head) "Objection to Nortel Motion to Terminate LTD Plan & Employees"

i

## ELIGIBILITY AND EFFECTIVE DATE

If you are a regular full-time non-union employee of Northern Telecom Inc., BNR or a participating affiliate ("Company"), you will become covered for Weekly Disability and Long Term Disability benefits under this coverage on your first day of employment provided you have enrolled for the coverage.

If you are both disabled and away from work on the date you would otherwise become covered, your coverage will not start until you return to active work.

The Company pays the entire cost for Weekly Disability and Long Term Disability Benefits.

(Janette M Head) "Objection to Nortel Motion to Terminate LTD Plan & Employees"

## WEEKLY DISABILITY BENEFITS

Weekly Disability benefits will be paid to you for a specified period of time if you become totally disabled by an accidental bodily injury or disease while covered. Benefits commence on the sixth consecutive working day of total disability due to sickness or accident.

## Non-Occupational Disability Benefit

You are considered totally disabled when:

(1) you cannot work because of sickness or accidental injury,

(2) you are under the regular care of a physician, and

(3) the Company has received satisfactory proof of your total disability. No benefits will be payable for any day on which you are doing any work, anywhere, for pay or profit other than part-time work for the Company which has been approved by the Company and your physician.

For purposes of weekly disability coverage, the term "physician" has the same meaning as defined in the Long Term Disability coverage section on page 10.

While you are totally disabled, benefits will continue for up to the Maximum Period of Payments shown for any one period of total disability.

Successive periods of total disability separated by less than two consecutive weeks of full-time, active work will be considered one period of disability, unless the subsequent period of disability results from causes unrelated to the causes of the earlier period and you have returned to one day of full-time active work between the periods.

This Non-Occupational Disability benefit is only paid for disabilities which are not Occupational Disabilities. Occupational Disabilities are those caused by:

(1) an injury arising out of or in the course of, any employment for wage or profit, or

(2) a disease covered with respect to such employment, by any workers' compensation law, occupational disease law or similar legislation.

You may receive benefits for an Occupational Disability as described on the following page.

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

# Occupational Disability Benefit

Weekly Disability benefits may also be payable to you for a total disability which is an Occupational Disability as defined on the previous page. This benefit is provided on the same terms as the benefit for non-occupational disability. The amount of Weekly Disability benefit payable, however, is equal to the excess of the Non-Occupational Weekly Disability benefit over the benefits payable under any workers' compensation law, occupational disease law, or similar legislation.

## Amount of Weekly Disability Benefit

The amount of Weekly Disability benefits is determined according to your length of credited service with the Company, as follows:

| Service | 100% of your Weekly Basic Earnings are paid for the following number of weeks: | 60% of your Weekly Basic Earnings are paid for the following number of weeks: |
|---|---|---|
| Less than 6 months | 0 weeks | 26 weeks |
| 6 months | 1 | 25 |
| 1 year(s) | 2 | 24 |
| 2 | 4 | 22 |
| 3 | 6 | 20 |
| 4 | 8 | 18 |
| 5 | 10 | 16 |
| 6 | 12 | 14 |
| 7 | 14 | 12 |
| 8 | 16 | 10 |
| 9 | 18 | 8 |
| 10 | 20 | 6 |
| 11 | 22 | 4 |
| 12 | 24 | 2 |
| 13 | 26 | 0 |

If your physician and the Company approve your return to work on a part-time basis while you are still eligible for Weekly Disability benefits equal to 100% of your Weekly Basic Earnings, the amount of your Weekly Disability benefits will be reduced by the amount of your part-time wages and the benefit savings which result will be used to extend the number of weeks for which you are eligible for a 100% benefit.

During the weeks that your benefit would be 60% of your Weekly Basic Earnings, the amount of your benefit will be reduced by the amount of your part-time wages. However, the benefit savings you accumulated while you were eligible for a `100$% benefit will be used to increase your benefit to 100% of your Weekly Basic Earnings until all the savings are exhausted.

If any of your accumulated benefit savings remain at the end of the maximum period of payments, the maximum period will be extended until all of the benefit savings are used ("Extension Period").

At any time that Federal Social Security, Workers' Compensation benefits or any other statutory disability benefits are payable to you, the amount of Weekly benefits will be reduced to the extent necessary so that the sum of such Weekly benefits and any benefit payable to you under the Federal Social Security Act, Workers' Compensation Law or any other statutory disability benefits will not exceed 100% or 60% (as applicable pursuant to the above chart) of your Weekly Basic Earnings.

The word "payable" is not limited to the other statutory disability benefits described above usually received by you, but includes such other statutory disability benefits which would have been available is you had complied with the provision for making claim for such benefits.

This benefit is reduced by any "other income benefits" you receive for that week, or which you would be entitled to receive if timely claim for them had been made by you.

**Other Income Benefits**

This Plan defines "other income benefits" as:

  (1)  income received from any employer or from any occupation for compensation or profit.

  (2)  any disability, retirement, or unemployment benefits required of provided for under any law of any government – for example:

     (a)  employment compensation benefits,

     (b)  no-fault wage replacement benefits,

     (c)  statutory disability benefits, or

     (d)  benefits under Federal Social Security Act, the Canada Pension Plan, and the Quebec Pension plan, including dependents benefits, but not counting any increase in benefits

(3) disability, retirement or unemployment benefits provided under any group insurance or pension plan or any other arrangement of coverage for individuals in a group (whether on an insured or uninsured bases), and

(4) any benefits received under workers' compensation law or any other similar law, excluding payments received for legal fees incurred in the claim process.

Benefits of the type listed above which are payable to you or any of your or dependents because of your disability or retirement are included as "other income benefits".

For the purposes of this Plan, "Other income benefits" will be treated as follows:

(1) any periodic payments will be allocated to weekly periods,

(2) any single lump sum payment including any periodic payments which you or your dependents have elected to receive in a single lump sum will be allocated to weekly periods with the exception of workers' compensation benefits. Any single lump sum payment under workers' compensation laws will be fully offset in its entirety against any benefits otherwise payable by this Plan, and

(3) any periodic or single lump sum payments received as a retroactive award may be allocated retroactively.

## Estimated Other Income Benefits

"Other income benefits" also include benefits that would be payable if timely claim for them had been made by you. In the case of Social Security benefits under the Federal Social Security Act, this includes timely and diligent pursuit of benefits through each of these steps:

(1) application for such benefits,

(2) appeal at the reconsideration level, if benefits are denied, and

(3) appeal at the Administrative Law Judge level, if benefits are again denied.

Until you give this Plan written proof that you have completed the application process for other income benefits, and benefits are finally denied, this Plan may:

(1) estimate your weekly Social Security and other income benefits, and

(2) use that amount to determine your weekly benefit.

Your Social Security or other income benefits will not be estimated while your application and appeals are pending if you sign a Reimbursement Agreement on a form satisfactory to the Claims Administrator.

If the Claims Administrator finds that the amount of other income benefits that should have been used to determine your Weekly Disability Benefit differs from the amount actually used, these rules apply:

(1) if Weekly Disability Benefits have been underpaid, this Plan will make a lump sum payment to bring the total payments to the amount that should have been paid.

(2) if Weekly Benefits have been overpaid, this Plan may either require a lump sum reimbursement payment to this Plan, or at its option, reduce or eliminate future payments.

## Maximum Period of Payments

The maximum period of payment is twenty-six (26) weeks, subject to any Extension Period.

## Weekly Basic Earnings

Your Weekly Basic Earnings are determined as described below:

For all regular hourly and salaried employees – your Weekly Basic Earnings shall be you basic weekly pay rate in effect for the last complete payroll period before the start of the period of total disability, excluding bonuses, overtime pay or any other form of compensation. If you are a piece worker, your average weekly piece-work earnings over your basic weekly pay rate for the three (3) weeks before the start of the period of total disability will be added to your weekly basic earnings.

For an Employee in a Sales Compensation Program – your weekly Basic Earnings shall be one fifty-secondth of your total basic income consisting of base salary and commissions, but excluding bonuses or any other form of compensation for the last full calendar year just before the start of the period of total disability. If you have not been employed for a full calendar year prior to the commencement of the period of total disability, your weekly Basic Earnings shall be your total basic income for your actual period of employment divided by the number of weeks of such employment.

### Exclusions

You are not covered for any disability which is in any way caused by any of the following:

1. intentionally self-inflicted injuries,

2. your participation in the commission of an assault or felony, and

3. war or any act of war (whether war is declared or not), insurrection, rebellion, or participation in a riot or civil commotion.

# LONG TERM DISABILITY BENEFITS

Monthly Income Benefits are payable to you after you have been totally disabled due to an accidental bodily injury or disease for at least the Benefit Waiting Period of six (6) months.

## Total Disability

You are considered totally disabled if you are unable to work because of a disease or injury.

During the first twenty-four (24) months of a period of a covered total disability (after your completion of the six (6) month Benefit Waiting Period), you will be considered unable to work if you cannot perform the work you normally perform.

After the first twenty-four (24) month period of covered total disability (after your completion of the six (6) month Benefit Waiting Period), you will be considered unable to work if you are unable to work at any reasonable occupation. A reasonable occupation is any gainful activity for which you are fitted by your education, training or experience, or for which you could reasonable become fitted.

## Monthly Income Benefit

The Plan will pay you 70% of your "Monthly Basic Earnings" before you become totally disabled, but in no event more than the Maximum Monthly Benefit, 47,000. This benefit is reduced by any "other income benefits" you receive for that month, or which you would be entitled to receive if timely claim for them had been made by you, but in no event shall this benefit be less than the Minimum Monthly Benefit, $50.

## When Benefits Begin

Your Monthly Income benefits will start as soon as you complete the requisite six (60 month Benefit Waiting Period, provided that written proof of your total disability satisfactory to the Claims Administrator is furnished within six (6) months following completion of the waiting period. Otherwise Monthly Income benefits will commence on the day six (6) months following the date written proof of your total disability is furnished.

## How Long Benefits are Paid

You will continue to receive Monthly Income Benefits while you remain totally disabled, up to the end of the Maximum Benefit Period shown.

Maximum Benefit Period for any one period of total disability:

| Age at Commencement of Disability | Your Maximum Benefit Period |
|---|---|
| "Under age 61" | "To Age 65 but not less than 60 months" |
| Age 61 | 60 months |
| Age 62 | 60 months |
| Age 63 | 60 months |
| Age 64 | 60 months |
| Age 65 | To Age 70 |
| Age 66 | To Age 70 |
| Age 67 | To Age 70 |
| Age 68 | To Age 70 |
| Age 69-74 | 12 months |
| Age 75 and over | 6 months |

**Period of Total Disability**

Since benefits are payable only during a period of total disability, it is important that you understand when this period begins and ends.

Each period of total disability will start as soon as you are both totally disabled and under the care of a physician. You will not be considered to be under the care of a physician until he has been seen and treated you personally for the disease of injury causing the total disability for at least thirty-one (31) days. The Claims Administrator shall have the right to require that you be examined by a physician of his or her choosing.

Your benefit period during total disability will end when the first of the following occurs:

1. You cease to be totally disabled or die; or as otherwise provided for in this booklet, or

2. You actually start working at the type of occupation in which you normally engage or at any reasonable occupation. (Work at an Approved Rehabilitation Program as defined below will not count as work at the type of occupation in which you normally engage or at a reasonable occupation), or

3. You cease to be under the care of a physician, or

4. You fail to furnish the latest required proof of the continuance of your total disability or refuse to be examined by a physician designated by the Plan.

Once a period of total disability has ended, any new period of total disability will be treated separately. However, if you return to work for less than three (3) consecutive months, and then become disabled again due to the same or a related illness or injury, monthly benefits will begin as a continuation of the

This combining of two periods of total disability into one period will also apply to any successive additional periods of total disability resulting from the same or relating causes separated by less than three (3) months. Two periods will not be combined unless you were covered for this benefit at the start of the earlier period.

**Other Income Benefits**
This Plan defines "other income benefits" as:

(1) income received from any employer or from any occupation for compensation or profit

(2) any disability, retirement, or unemployment benefits required of provided for under any law of any government – for example:

(a) unemployment compensation benefits,

(b) no-fault wage replacement benefits,

(c) statutory disability benefits, or

(d) benefits under Federal Social Security Act, the Canada Pension Plan, and the Quebec Pension plan, including dependents benefits, but not counting any increase in benefits enacted after the Weekly Disability Benefit payments have started under this Plan.

(3) disability, retirement or unemployment benefits provided under any group insurance or pension plan or any other arrangement of coverage for individuals in a group (whether on an insured or uninsured bases), and

(4) any benefits received under workers' compensation law or any other similar law, excluding payments received for legal fees incurred in the claim process.

Benefits of the type listed above which are payable to you or any of your or dependents because of your disability or retirement are included as "other income benefits".

For the purposes of this Plan, "Other income benefits" will be treated as follows:

(1) any periodic payments will be allocated to weekly periods,

(2) any single lump sum payment including any periodic payments which you or your dependents have elected to receive in a single lump sum will be allocated to weekly periods with the exception of workers' compensation benefits. Any single lump sum payment under workers' compensation laws will be fully offset in its entirety against any benefits otherwise payable by this Plan, and

(3) any periodic or single lump sum payments received as a retroactive award may be allocated

## Estimated Other Income Benefits

"Other income benefits" also include benefits that would be payable if timely claim for them had been made by you. In the case of Social Security benefits under the Federal Social Security Act, this includes timely and diligent pursuit of benefits through each of these steps:

(1) application for such benefits,

(2) appeal at the reconsideration level, if benefits are denied, and

(3) appeal at the Administrative Law Judge level, if benefits are again denied.

Until you give this Plan written proof that you have completed the application process for other income benefits, and benefits are finally denied, this Plan may:

(1) estimate your weekly Social Security and other income benefits, and

(2) use that amount to determine your weekly benefit.

Your Social Security or other income benefits will not be estimated while your application and appeals are pending if you sign a Reimbursement Agreement on a form satisfactory to the Claims Administrator.

If the Claims Administrator finds that the amount of other income benefits that should have been used to determine your Weekly Disability Benefit differs from the amount actually used, these rules apply:

(1) if Monthly Income Benefits have been underpaid, this Plan will make a lump sum payment to bring the total payments to the amount that should have been paid.

(2) if Monthly Income Benefits have been overpaid, this Plan may either require a lump sum reimbursement payment to this Plan, or at its option, reduce or eliminate future payments. If this Plan reduces or eliminates future payments, the Minimum Monthly benefit of $50 will not apply.

## Monthly Rate of Basic Earnings

Your Monthly Basic Earnings will be determined by using provisions which follow separately, for each period of total disability. A change in your earnings will be considered to take effect on the date the new rate is determined.

For all regular hourly and salaried employees – your Monthly Basic Earnings shall be your basic monthly pay rate in effect for the last complete payroll period before the start of the period of total disability, excluding bonuses, overtime pay or any other form of compensation. If you are a piece worker, your average monthly piece-work earnings over your basic monthly pay rate for the three (3) months before the start of the period of total disability will be added to your monthly basic earnings.

For an Employee in a Sales Compensation Program – your Monthly Basic Earnings shall be one twelfth of your total basic income consisting of base salary and commissions, but excluding bonuses or any other form of compensation for the last full calendar year just before the start of the period of total disability. If you have not been employed for a full calendar year prior to the commencement of the period of total disability, your Monthly Basic Earnings shall be your total basic income for your actual period of employment divided by the number of months of such employment.

## Approved Rehabilitation Program

An "approved rehabilitation program" means:

    (1) a program of vocational rehabilitation, or

    (2) a period of part-time work with the Company for purposes of rehabilitation, which will be considered to begin only when the Claims Administrator approves such program, in writing, and to end when the Claims Administrator withdraws its approval.

This Plan includes this rehabilitation program to help you get back to work. With the Claims Administrator's approval, you may continue receiving Long Term Disability benefits for a limited time while on an approved rehabilitation program. Thus, you may get back into a gainful occupation with the assurance that for a specified period you will not lose your eligibility for benefits. During this period, your Monthly Income Benefit will be your regular Monthly Incomer Benefit payment less 80% of your earnings from the rehabilitative job.

| Example | | | |
|---|---|---|---|
| Monthly Income Benefit from the Plan | Monthly Earnings While You are Disabled | 80% Reduction | Net Monthly Benefit from the Plan |
| $1,600 | $300 | $240 | $1,360 |

Also, certain expenses of a vocational rehabilitation program may be paid by this Plan at the discretion of the Plan Administrator. If this Plan determines that a program that should make you self-supporting is within your ability, you will be notified of the type and duration of the expenses covered, and the conditions for payment. If you agree to undertake the program, the chargers for the approved covered expenses will be paid, up to a maximum benefit of $10,000

## Physician

"Physician" means a licensed practitioner of the healing arts acting within the scope of his practice; except that with respect to a period of total disability, or any portion thereof, during which total disability is caused by any condition other than a medically determinable physical impairment, "physician" shall mean a legally qualified physician who either specializes in the practice of psychiatric medicine or has, by reason of training or experience, a specialized competency in the field of psychiatric medicine sufficient to render the necessary evaluation and treatment of mental illness.

## Mental Illness Limitation

For total disabilities due to mental or nervous disorders, the benefit period will be limited to twenty-four (24) months; however, if hospital confinement exists, or commences within ninety (90) days following the date ending that twenty-four (24) month period, benefits will continue for the duration of the hospital confinement (subject to the Maximum Benefit Period described in page 6).

## Pre-Existing Condition Exclusion

No monthly benefits will be payable for any disability caused or contributed to by, or resulting from, a pre-existing condition. This limitation will not apply if your disability starts after you have been covered by the plan for twelve (12) months.

The term "pre-existing condition" means any condition for which you:

>    (1)  receive treatment,
>
>    (2)  incur expenses,
>
>    (3)  receive a diagnosis, or
>
>    (4)  take prescribed medication within ninety (90) days prior to the effective date of your insurance.

## Other Exclusions

You are not covered for any disability which is in any way accused by any of the following:

>    1.    intentionally self-inflicted injuries,
>
>    2.    Your participation in the commission of an assault or felony, or
>
>    3.    War or any act of war (whether war is declared or not, insurrection, rebellion, or participation in a riot or civil commotion.

Summary Plan Description  Page 12 of 18                    Exhibit E  Page 15 of 21
[Janette M Head) "Objection to Nortel Motion to Terminate LTD Plan & Employees"

# BENEFIT MODIFICATION FOR THIRD PARTY LIABILITY

## Third Party Liability

In the event that you (claimant") suffer an injury or illness covered by this Plan which injury or illness is caused b y a third party, that is, by a person, corporation or other legal entity other than the Claimant ("Responsible Third Party"), you agree in good faith to pursue a claim against such Responsible Third Party for recovery of the value of the benefits paid by this Plan in connection with such injury or illness.

To the extent payments for lost wages or the like resulting from such injury or illness are made to a Claimant or his/her legal representative, or may be made to a Claimant or his/her legal representative in the future, by or for the Responsible Third Party (as a result of a legal judgment, settlement or in any other manner), such expenses are excluded from the Claimant's coverage under this Plan.

When a Claimant files a claim for benefits under this Plan which benefits would be payable but for the above exclusion, this Plan will pay such benefits provided:

> (1) that payment for such benefits has not yet been made to the Claimant or his/her representative by or for the Responsible Third Party, and

> (2) that the claimant (or, if incapable, his/her legal representative) agrees in writing, using a form designated by this Plan, to promptly pay back to this Plan the amounts of any benefits paid by this Plan in connection with such injury or illness to the extent of any payments made to the Claimant or his representative by or for the Responsible Third Party. This agreement shall apply:

>> (a) whether or not liability for the injury or illness is admitted by the Responsible Third Party, and

>> (b) whether or not the payments from the Responsible Third Party itemize what they are for. A reasonable apportionment of the fees and costs incurred by the Claimant in pursuing a recovery from the Responsible Third Party may be deducted from amounts to be repaid to this Plan

When any payments are made to a Claimant or his representative by or for a Responsible Third Party, such payments shall first be applied to reimburse this Plan for benefits previously paid by this Plan in connection with the injury or illness. To the extent such payments to a Claimant or his representative by the Responsible Third Party exceed such reimbursable amount, the future benefits payable under this Plan in connection with the injury or illness shall be predetermined by reducing the amount of such benefits by the amount of the payments made or to be made to the Claimant or his representative by or for the Responsible Third Party.

The Claimant agrees that amounts reimbursable to this Plan in accordance with the above may, as payments are received by the Claimant or his representative from or for the Responsible Third Party, be deducted from other benefits payable by the Plan to the Claimant.

When a final judgment or settlement payment is received from or for the Responsible Third Party by the Claimant or his representative such that no future or additional payments will be received from or for the Responsible Third Party and when, based on such final payment from or for the Responsible Third Party, reimbursement to this Plan and a redetermination of benefits payable by the Plan as to Known future treatment of the Claimant in connection with the injury or illness have been made, the Claimant agrees to and shall continue to be obligated to reimburse the Plan, from any remaining portion of the payments from the Responsible Third Party previously retained by the Claimant or his representative, for any subsequent benefits paid by this Plan for the injury or illness occurring within twenty-four (24) months after the redetermination of benefits made at the time of the final judgment or settlement and not included in such redetermination.

Each Claimant or his/her representative shall promptly notify the Plan of the name of any Responsible Third Party involved in an injury or illness for which the Claimant seeks to receive benefits under this Plan. Each Claimant shall keep the Plan fully informed of all actions being taken by the Claimant to Obtain a recovery from the Responsible Third Party, including informing this Plan of any payments received from the Responsible Third Party, including informing this Plan of any payments received from the Responsible Third Party, any final judgment recovered against the Responsible Third Party or any discussions with the Responsible Third Party concerning settlement of the claim.

This Plan shall have the right to review ay proposed settlement of the Claimant's claim for recovery from the Responsible Third Party and this Plan shall have the express right, at its option, to reject any such settlement which does not adequately provide for the recovery from the Responsible Third Party of benefits paid or to be paid by this Plan to the Claimant in connection with the injury or illness. The Claimant agrees not to enter into any settlement with the Responsible Third Party which has been reasonably ejected by this Plan as provided for above.

**Limits on Assignments**

Benefits under the Plan may be assigned only as a gift assignment. The Claims Administrator will not be responsible for determining the validity of a purported assignment. The Claims Administrator will not be held to have knowledge of an assignment unless it has received a copy thereof.

**Errors in Payment of Benefits**

If the Claims Administrator determines that benefits previously paid to you were incorrectly paid, the Claims Administrator may seek reimbursement of such incorrect benefit payment by either requesting that you reimburse the Claims Administrator or by deducting the amount of incorrect benefit payments from subsequent benefit payments payable to you by this Plan or any other welfare plan maintained by the Company.

# TERMINATION OF COVERAGE

Your benefits under the Weekly Disability and Long Term Disability Plan will end on the earliest of the following dates:

- the date your employment ends or you cease to qualify for the coverage, or

- the date the part of the Plan providing the coverage ends

For coverage purposes, your employment will end when you are no longer a full-time, active Employee. If you are on an unpaid medical leave of absence because of injury or sickness, your coverage may be continued.

If you stop active, full-time work for any reason, you should contact the Company at once to determine what arrangements, in any, have been made to continue any of your coverage.

## ERISA INFORMATION

| | |
|---|---|
| ***Plan Name*** | The Northern Telecom Inc.<br>Weekly Disability and Long Term Disability Plan |
| ***Employer Identification Number*** | 04-2486332 |
| ***Plan Number*** | 509 |
| ***Plan Sponsor*** | Northern Telecom Inc.<br>200 Athens Way<br>Nashville, TN 37228 |
| ***Type of Plan*** | Welfare |
| ***Plan Year*** | January 1 to December 31 |
| ***Plan Administrator*** | Northern Telecom, Inc.<br>200 Athens Way<br>Nashville, TN 37228<br>Tel: (615) 734-4000 |
| ***Agent for Service of Legal Process*** | Plan Administrator |
| ***Claims Administrator for Long Term Disability Plan*** | CIGNA<br>Hartford, CT 06152 |

Benefits under this Plan are provided by Northern Telecom Inc. Company costs are paid out of current or accumulated earnings and profits.

**Plan Changes and Termination**

The Company expects to continue this Plan, but necessarily reserves the right to amend this Plan from time to time or terminate this Plan at any time. Any amendment to this Plan may reduce or eliminate benefits payable under the Plan to persons who are Employees as of the effective date of the amendment

**Claims**

This booklet contains information on reporting claims. Forms for submitting claims may be obtained from your Human Resources Department.

If your claim is denied in whole or in part, you will receive a written notice of the denial explaining the reason for the denial.

You may request a review of the denied claim. The request must be submitted, in writing, within sixty (60) days after you receive the notice. Include your reasons for requesting the review and submit your request to the same office to which you submitted your claim. Your claim will be reviewed, and you will ordinarily be notified of the final decision within sixty (60) days of the receipt of your request for review. The final decision will be made by CIGNA which is providing claim services under this Plan.

**Your Rights under ERISA**

As a participant in this Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA provides that all Plan participants shall be entitled to:

Examine, without charge, at the Plan Administrator's office and at other specified locations, such as work sites and union halls, all Plan documents, including insurance contracts, collective bargaining agreements, and copies of all documents filed by this Plan with the U.S. Department of Labor, such as detailed annual reports and plan descriptions.

Obtain copies of all Plan documents and other Plan information upon written request to the Plan Administrator. The Plan Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of this Plan. The people who operate this Plan, called "fiduciaries" of the Plan, have a duty to so prudently and in the interest of you and the other Plan participants and beneficiaries. No one, including the Company, your union, or any other person, may terminate you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA. If your claim for a welfare benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial. You have the4 right to have your claim reviewed. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from this Plan and do not receive them within thirty (390) days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay the court costs and legal fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous. If you have any questions about this Plan, you should contact the Plan Administrator, your Director of Hu8man Resources, or the Director of Benefits for Northern Telecom Inc. If you have any questions about this statement or about your rights under ERISA you should contact the nearest Area Office of the U.S. Labor-Management Services Administration, Department of Labor5.

The Plan Administrator shall have discretionary authority to determine the benefits owing under this Plan, to otherwise interpret the provisions of this Plan and to make any necessary factual determinations hereunder.

# Exhibit F

## EXHIBIT F
## INDEX

F) Documents supporting belief that Cigna actual Insurance                4 pages
   Carrier

  a.  Letters from Cigna on Cigna letterhead, with
   insurance wordage like "Cigna Group Insurance",
   Policy #, Claimant Name, etc.

      i.  July 24, 1995, SSA award reimbursement        1 page
   (page 1 of 4)

      ii.  August 15, 1995,  Confirmed balance due        1 page
   (page 2 of 4)

      iii.  August 30, 1995, Monthly Amount Verified     1 page
   (page 3 of 4)

  b.  Cigna Group Insurance calculation form determining    1 page
   amount of SSA reimbursement to be paid by claimant
   to Cigna  (page 4 of 4)

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

July 24, 1995

CIGNA Group Insurance
Life · Accident · Disability

Janette M. Head
7420 Winterwood Lane
Dallas, TX  75248

12225 Greenville Avenue
Suite 655, LB179
Dallas, TX 75243-9384
Telephone 214.907.6500
1.800.352.0611

Re:    Claimant:    Janette M. Head
       SS#     :
       Employer:    Northern Telecom Inc.
       Policy #:    2059005
       Connecticut General Life Insurance Company

Dear Ms. Head:

We appreciate receipt of a copy of your Social Security award notice.

Under the terms of your policy, we must reduce your Long Term Disability by the amount you have been awarded. We have recalculated your benefit and the new amount you will receive j              The new amount is effective beginning with your next payment after the full overpayment is recovered.

As a result of the retroactive award, an overpayment in the amount of :              as occurred. Attached is a copy of the Reimbursement Agreement which you signed stating your agreement to reimburse us once your award was granted.

Please promptly send us a check in the amount of              nade payable to Northern Telecom. Once we have processed your check, we will reinstate your new monthly benefit. Please forward your certified check, personal check or money order, and return it to us in the next 21 days.

If you should have any questions, please do not hesitate to contact this office. Your cooperation is appreciated.

Sincerely,

Andy Gaither
Senior Benefit Analyst
1.800.352.0611, Ext. 174
Dallas Claim Services

AG.head.ds

cc:    Karen Deen,  Overpayment Coordinator
       Northern Telecom

Exhibit F  Page 1 of 4

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

Life Insurance Company of North America
Connecticut General Life Insurance Company
Insurance Company of North America
INA Life Insurance Company of New York
Subsidiaries of CIGNA Corporation



CIGNA Group Insurance
Life · Accident · Disability

12225 Greenville Avenue
Suite 655, LB179
Dallas, TX 75243-9384
Telephone 214.907.6500
1.800.352.0611

AUGUST 15, 1995

MAIL: JANETTE M HEAD

TO:    JANETTE M HEAD

RE:    CLAIMANT       :   JANETTE M HEAD
       CERTHOLDER     :
       POLICY KEYS    :   205900501350   001011
       ACCOUNT NAME   :   NORTHERN TELECOM INC
       COMPANY NAME   :   CONNECTICUT GENERAL LIFE INSURANCE COMPANY

YOUR PAYMENT OF $26378.08 HAS BEEN RECEIVED, REDUCING THE OUTSTANDING
OVERPAYMENT BALANCE FROM $29610.08 TO $64.85.

BECAUSE WE PAID YOUR PREMIUMS FOR JULY TO NORTHERN TELECOM, THE BALANCE OF THE
OVERPAYMENT IS $64.85, WHICH WILL BE DEDUCTED FROM YOUR AUGUST BENEFIT.

THANK YOU VERY MUCH FOR YOUR COOPERATION.  SHOULD YOU HAVE ANY QUESTIONS, PLEASE
FEEL FREE TO CONTACT ME.

SINCERELY,

KAREN DEEN
CLAIM CONSULTANT

Exhibit F  Page 2 of 4

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

Life Insurance Company of North America
Connecticut General Life Insurance Company
Insurance Company of North America
INA Life Insurance Company of New York
Subsidiaries of CIGNA Corporation

CIGNA Group Insurance
Life · Accident · Disability

12225 Greenville Avenue
Suite 655, LB179
Dallas, TX 75243-9384
Telephone 214.907.6500
1.800.352.0611

**AUGUST 30, 1995**

MAIL: **JANETTE M HEAD**
      **7420 WINTERWOOD LANE**
      **DALLAS, TX 75248**

TO:   **JANETTE M HEAD**
      **7420 WINTERWOOD LANE**
      **DALLAS, TX 75248**

RE:   **CLAIMANT**       :   **JANETTE M HEAD**
      **CERTHOLDER**     :
      **POLICY KEYS**    :   **205900501350   001011**
      **ACCOUNT NAME**   :   **NORTHERN TELECOM INC**
      **COMPANY NAME**   :   **CONNECTICUT GENERAL LIFE INSURANCE COMPANY**

AS YOU ARE AWARE, WE HAVE BEEN RECOVERING AN OVERPAYMENT ON YOUR CLAIM.

THE ORIGINAL OVERPAYMENT OF            HAS BEEN RECOVERED IN FULL AS
OF 08-31-1995.  YOUR BENEFITS WILL RESUME AT         ) PER MONTH BEGINNING WITH
THE PERIOD OF 09-01-1995 THROUGH 09-30-1995.

PLEASE BE ADVISED THAT BASED ON THE INFORMATION WE HAVE IN OUR  FILE, WE WILL
DEDUCT       0 FROM YOUR BENEFIT FOR FEDERAL  INCOME TAX WITHHOLDING AS
ADVISED.  IF YOU WISH TO CHANGE THIS  WITHHOLDING, PLEASE COMPLETE A NEW W-4S.
ONE IS ENCLOSED FOR YOUR  CONVENIENCE.

THANK YOU VERY MUCH FOR YOUR COOPERATION.  SHOULD YOU HAVE ANY QUESTIONS, PLEASE
FEEL FREE TO CONTACT ME.

SINCERELY,

ANDY GAITHER
SENIOR BENEFIT ANALYST

CC: NORTHERN TELECOM

Exhibit F  Page 3 of 4

(Janette M Head) "Objection to Nortel Motion to Terminate LTD Plan & Employees"

Life Insurance Company of North America
Connecticut General Life Insurance Company
Insurance Company of North America
INA Life Insurance Company of New York
Subsidiaries of CIGNA Corporation

# CIGNA Group Insurance


**CIGNA**

Life Insurance Company of North America
Connecticut General Life Insurance Company

| ...SURED: *Muell M Head* | POLICYHOLDER: *Nortben Telecom* | ACCOUNT #: *ZD5180 5* |
|---|---|---|
| Social Security No.: | | |

Date of Disability: *1-6-93*

Duration of Waiting Period: *26 wks*

Benefits Begin: *7-6-93*

## LTD BENEFIT COMPUTATION - Direct Offset

Benefit Levels for This Case -    (A) Maximum $_____    (B) Minimum $_____

1. LTD % - Not to Exceed Maximum Shown Above

   *70* % of Basic Monthly Salary of $_____    $_____

2. Other Income Benefits from "Code Section Below

| | Code | Benefit |
|---|---|---|
| | *D(STD)* | |
| | *A* | |
| | | |

3. Item 1 Minus Item 2 =  $_____    MONTHLY PAYMENT AMOUNT    $_____

4. Daily Rate (Amount on Line 3 divided by 30 days)  $_____

5. AMOUNT OF LTD PAYABLE FOR THE PERIOD FROM *7-6-93* THROUGH *7-13-93*    $_____
   *8 DAYS*

### CODE

A. Approved/Estimated Federal Social Security Disability
B. Approved/Estimated Federal Social Security Old Age Benefits
C. Workmen's Compensation or Similar Law
D. State Disability or any Employer Sponsored Income Benefit Plan
   Other - Refer to Comments

*6/29*
**A. GAITHER**

Exhibit F  Page 4 of 4

L21 (rev. 4/11/94)

(Janette M Head) "Objection to Nortel Motion to Terminate LTD Plan & Employees"

# Exhibit H

## EXHIBIT H
## INDEX

H) Pending Discovery from Debtor:

Pay stubs with payroll deductions for purchase of LTD insurance

# **EXHIBIT H**

Page Marker

Pay Stubs with Payroll Deductions for LTD

# Exhibit I

# EXHIBIT I
## INDEX

I)   Documents exhibiting changing from Cigna to Prudential              3 pages
with no reference to changes in coverage or policy

     a.   Notification From Prudential,  January 1, 2000,          1 page
     assuming responsibilities from Cigna  (page 1 of 3)

     b.   Pay stubs December, 1999 and January 2000,            2 pages
     indicating only change in payments  (pages 2-3 of 3)

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

Claim Services Provided by

The Prudential Insurance Company of America

Address all correspondence to
Claim Services Provider:

**Patricia Daugherty**
**Team Leader**
**Prudential Disability Group Insurance**
Phone: 1-800-842-1718 ext. 8779
Fax: 973-285-8800



Janette M. Head

Dear Sir or Madam:

Effective January 1, 2000, The Prudential Insurance Company of America has assumed all responsibility for Nortel Networks Long Term Disability (LTD) claims.

Prudential has a proud history of providing group disability coverage and is firmly committed to meeting your needs as a premier Disability Management Services provider.

Prudential has a dedicated team of individuals who will service the Nortel Networks account and all of its employees. You may be contacted by Prudential in the future to discuss your Long Term Disability claim.

If you have any questions regarding your claim, you may reach a Prudential representative by calling our free number at (800) 842-1718 between the hours of 8:00 a.m. to 5:00 p.m. Eastern Standard Time. Please be sure to identify yourself as a Nortel Network associate and state that you would like to be transferred to either myself, or another available member of my staff.

Sincerely,

Patricia Daugherty
Team Manager
Prudential Disability Group Insurance

**Exhibit I  Page 1 of 3**

**(Janette M Head) "Objection to Nortel Motion to Terminate LTD Plan & Employees"**

If you have any
que    's about **DISABILITY MANAGEMENT SERVICES**
th     , please **PO BOX 2300**
co......    **PARSIPPANY          NJ   07054**
**800-842-1718**

Date **January 20, 2000**

CNTRL#     **0039900**
CLAIM#
ID#

**FAYE STUDEMIRE**
**NORTEL NETWORKS**
**4307 EMPEROR BLVD.**
**RESEARCH TRIANGLE PARK    NC   27709**

CLAIMANT   **JANETTE M HEAD**

| DESCRIPTION | AMOUNT | FROM 01/01/2000 | TO 01/31/2000 |
|---|---|---|---|
| LTD Claim Benefits | | | |
| SSDB | | BENEFIT AMOUNT | |
| Voluntary FIT | | LESS OFFSET | |
| Medical | | | |
| Dental | | LESS ADJUSTMENTS | |
| Free Form 1 | | | |
| | | LESS DEDUCTIONS | |
| | | AMOUNT PAYABLE | |

Exhibit I  Page 2 of 3

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

CIGNA-CORP Class
255 EAST AVENUE-2ND FLOOR
ROCHESTER     NY   14604-2624       Page     1

NORTHERN TELECOM INC

MICHELLE L GAMBLE
800-532-9288   EXT   1752
Please direct any questions to the above analyst.
Be sure to provide your account and ID numbers
in all letters and telephone calls.

Certholder:    JANETTE M HEAD
Claimant:     JANETTE M HEAD
ID#:               Special ID#:
Account Name:   NORTHERN TELECOM INC

Account#: 2059005
Policy :   01          Div:     001

 JANETTE M HEAD

H238

| Benefit Type | Payment Period | Duration | Benefit Rate | Benefit Payable | Less Deduction |
|---|---|---|---|---|---|
| DISABILITY INCOME | 12/01/1999 - 12/31/1999 | 30 DAYS | | | |

Deductions:
FEDERAL INCOME TAX
PREMIUM REDUCTION

TOTAL PAYMENT $

Messages:

Payments Issued:    12/02/1999
JANETTE M HEAD
NORTHERN TELECOM INC.

Total amount paid to date, including taxes, for this claim is $          for the period    07/06/1993 thru      12/31/1999

Exhibit I   Page 3 of 3

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

# **Exhibit J**

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

## EXHIBIT J
## INDEX

J) Mortgage paperwork showing reliance on LTD income            3 pages

   Cover letter, February 13, 2002  (page 1 of 3)            1 page

   Residential Loan Application with monthly salary            2 pages

   (pages 2-3 of 3)

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

# Guaranty



73 South River Road Suite 1
edford, NH  03110
603/668-7600

February 13, 2002

MORTGAGOR(S):  James Head, Janette Head

PROPERTY: ████████████Bedford NH  03110

LOAN #: ████████

Congratulations, your application for a first mortgage loan on the above premises has been approved for the following terms:

Loan Type:    X    Conventional    _____    FHA    _____    VA

              X    Fixed            _____    Adjustable    _____    Balloon

Loan  Amount: $   252,000.00                    TERM:    30   YEARS

If this is checked your loan amount includes the following:
_____ FHA Mortgage insurance premium of $
_____ VA Funding Fee of $

The Purpose of this loan is:
_____ Purchase the above referenced property for a sales price of $ _____
        (Any changes to your sales contract must be approved by GRL.)
_____ Refinance with cash proceeds to you.
  X    Refinance with no cash proceeds to you.
_____ Construction to Permanent Financing Loan

The Interest Rate and Discount Points:
_____ You have elected to lock-in your rate at _____ % and total points of _____ %.
        This rate will expire on _____. Please refer to your Lock-In agreement.
  X    You have elected not to lock in your rate at this time. You need to lock in your rate at least three (3)
        days prior to your loan closing. The maximum interest rate that you are qualified for   7.0   %.

The estimated monthly mortgage payment is as follows:

| | |
|---|---|
| Principal and Interest: | $  1,676.57 (Based on 7.0% int. rate) |
| Tax Payment: | $   341.67 |
| Hazard Insurance Premium: | $    33.33 |
| Mortgage Insurance Premium: | $     0.00 |
| 2nd Mortgage: | $   392.00 |
| Total Estimated Payment: | $  2,443.57 |

The Mortgage provides that Guaranty Residential Lending may elect to escrow sufficient funds for Hazard Insurance and/or real estate taxes; accordingly, you will be required to pay 1/12th of your estimated Hazard Insurance and/or real estate taxes to Guaranty Residential Lending monthly.       Exhibit J  Page 1 of 3 ___

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

Page 1 of 4

# Uniform Residential Loan Application

This application is designed to be completed by the applicant with the lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, or the Borrower is relying on other ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification, or ☐ located in a community property state as a basis for repayment of the loan.

## TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA   ☒ Conventional   ☐ Other | Agency Case Number | Lender Case Number 77481068 |
| | ☐ FHA   ☐ FmHA | | |

| Amount $254,500.00 | Note Rate 7.000% | No. of Months 360 | Amortization Type | ☒ Fixed Rate   ☐ Other (explain) ☐ GPM   ☐ ARM (type) |

## PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, zip code)  16 Gleneagle Dr.   Bedford, NH 03110        No. of Units 1

Legal Description of Subject Property (attach description if necessary)  See Preliminary Title Report        Year Built 1990

| Purpose of Loan | ☐ Purchase   ☐ Construction   ☐ Other (explain) ☒ Refinance   ☐ Construction-Permanent | Property will be ☒ Primary Residence   ☐ Secondary Residence   ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $0.00 | Amount Existing Liens $0.00 | (a) Present Value of Lot $0.00 | (b) Cost of Improvements $0.00 | Total (a + b) $0.00 |

Complete this line if this is a refinance loan.

| Year Lot Acquired 1999 | Original Cost $275,000.00 | Present Existing Liens $249,530.00 | Purpose of Refinance No Cash-Out rate/Term - $100 max | Describe Improvements ☐ made ☐ to be made   Cost $0.00 |

Title will be held in what Name(s)  James S Head, Janette M Head

Manner in which Title will be held  Joint Tenants with Rights of Survivorship

Estate will be held in ☒ Fee Simple   ☐ Leasehold

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)  Equity from Subject Property

## BORROWER INFORMATION

| | Borrower | Co-Borrower |
| Borrower's Name (include Jr. or Sr. if applicable)  James S Head | Co-Borrower's Name (include Jr. or Sr. if applicable)  Janette M Head |
| Social Security Number 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   Home Phone (incl. area code) (603) 626-6936   Age 48   Yrs. School 16 | Social Security Number 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   Home Phone (incl. area code) (603) 626-6936   Age 46   Yrs. School 16 |
| ☒ Married   ☐ Unmarried   ☐ Separated   Dependents (not listed by Co-Borrower) no. 0   ages | ☒ Married   ☐ Unmarried   ☐ Separated   Dependents (not listed by Borrower) no. 0   ages |
| Present Address (street, city, state, zip code)  ☒ Own ☐ Rent  1 Yrs. 6 Gleneagle Dr. | Present Address (street, city, state, zip code)  ☒ Own ☐ Rent  1 Yrs. 16 Gleneagle Dr. |
| Bedford, NH 03110 | Bedford, NH 03110 |
| Former Address (street, city, state, zip code)  ☐ Own ☒ Rent  1 Yrs. 50 Park Row West #429 | Former Address (street, city, state, zip code)  ☐ Own ☒ Rent  Yrs. 50 Park Row West #429 |
| Providence, RI | Providence, RI |
| Former Address (street, city, state, zip code)  ☐ Own ☐ Rent  Yrs. | Former Address (street, city, state, zip code)  ☐ Own ☐ Rent  Yrs. |

## EMPLOYER INFORMATION

| | Borrower | Co-Borrower |
| Name & Address of Employer  Lightship  ONEEXEC PARK DR  Bedford, NH 03110 | ☐ Self Employed   Yrs. on this job 2   Yrs. employed in this line of work/profession 42-25 | Name & Address of Employer  Prudential Securities  Northe Networks  200 ATHENS WAY  NASHVILLE, TN 37228  PO BOX 481  Livingston, NJ 07039 | ☐ Self Employed   Yrs. on this job ± 19   Yrs. employed in this line of work/profession ±2 25 |
| Position/Title/Type of Business  CO President   TELECOM | Business Phone (incl. area code) 603 894 2460 | Position/Title/Type of Business  disability | Business Phone (incl. area code) |
| Name & Address of Employer  Los En AMERICA  on todditown Tower  PROVIDENCE RI | ☐ Self Employed   Dates (from-to) 9-1997-2000   Monthly Income 10,000.00 | Name & Address of Employer | ☐ Self Employed   Dates (from-to)   Monthly Income |

Exhibit J  Page 2 of 3

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Monthly Income | Borrower | Co-Borrower | Total | Combined Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Empl. Income | $10,416.00 | $3,282.00 | $13,698.00 | Rent | | |
| | $0.00 | $0.00 | $0.00 | First Mortgage (P&I) | | |
| | $0.00 | $0.00 | $0.00 | Other Financing (P&I) | | |
| Commissions | $0.00 | $0.00 | $0.00 | Hazard Insurance | | |
| Divid.      nt | $0.00 | $0.00 | $0.00 | Real Estate Taxes | | |
| Net Rental Income | $0.00 | $0.00 | $0.00 | Mortgage Insurance | | |
| Other (before completing, see the notice in "Describe Other Income" below) | $0.00 | $0.00 | $0.00 | Homeowner Assn. Dues Other | | |
| Total | $10,416.00 | $3,282.00 | $13,698.00 | Total | | |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

| Assets | Cash or Market Value |
|---|---|
| Description Cash deposit toward purchase held by | |

Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property.

| LIABILITIES | Mo. Pmt. & Mos. to Pay | Unpaid Balance |
|---|---|---|
| List checking and savings accounts below | | |
| Name and address of Bank, S&L, or Credit Union **Bank of NH** — **Both** **CHK** | Name and address of Company **FIFTH THIRD** | See Schedule REO | |
| Acct. no. | Acct. no. 7265291316 ✓ | | |
| $15,000.00 | | | |
| Name and address of Bank, S&L, or Credit Union **Fidelity 401K** — **B** **401K** | Name and address of Company **FIFTH THIRD** | See Schedule REO | |
| Acct. no. | Acct. no. 7265291321 ✓ | | |
| $25,000.00 | | | |
| Name and address of Bank, S&L, or Credit Union | Name and address of Company **CITI** | | |
| Acct. no. | Acct. no. 549010614125 ✓ | | |
| $0.00 | | | |
| Name and address of Bank, S&L, or Credit Union | Name and address of Company **FUSA NA** | | |
| Acct. no. | Acct. no. 441712660315 ✓ | | |
| $0.00 | | | |
| Stocks & Bonds (Company name/number & description) | Name and address of Company **BANK ONE** | | |
| $0.00 | Acct. no. 571130000001718 ✓ | | |
| Life insurance net cash value Face amount: | Name and address of Company **CITI** | $0.00 | |
| Subtotal Liquid Assets | | | |
| Real estate owned (enter market value from Schedule of Real Estate Owned) | Acct. no. 427138207135 | | |
| Vested interest in retirement fund | Name and address of Company **CITI** | $0.00 | |
| Net worth of business(es) owned (attach financial statement) | | | |
| Automobiles owned (make and year) | | | |
| 2001 BMW X5 | | | |
| 1999 Volvo S80 | | | |

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

# Exhibit K

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

**EXHIBIT K**

**INDEX**

K) Pending Discovery from Debtor:

    Documentation supporting mortgage approvals through age 65

## **EXHIBIT K**

Page Marker

Mortgage Approval Documentation

# Exhibit L

## EXHIBIT L
## INDEX

L) Pending Discovery from Debtor:

    Approval letters from qualification of STD and LTD benefits

# **EXHIBIT L**

Page Marker

Disability Approval Letter

# Exhibit M

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

## EXHIBIT M
### INDEX

M) Correspondence between myself and the Debtor regarding          5 pages
Issues and disconnects in implementation of LTD coverage

    a.  Cigna letter assigning attorney, March 29, 1994          1 page
        (page 1 of 5)

    b.  Debtor notification of problems with issuance of W2          1 page
        forms, indicating information pending from Cigna
        February 3, 1994  (page 2 of 5)

    c.  Cigna letter to Medicare Administration alerting          2 pages
        incorrect application of primary vs. secondary claim
        Payments between Cigna and Medicare.  October 21, 1996
        Effective August 10, 1993  (pages 3-4 of 5)

    d.  Allsup Inc. letter re:  Debtor request to audit medical          1 page
        claims to correct prior mismanagement of claim payments
        July 28, 1998  (page 5 of 5)

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

March 29, 1994

CIGNA Group Insurance
Life · Accident · Disability

Janette Markes Head

█████████████

Dallas, TX  75248

12225 Greenville Avenue
Suite 655, LB179
Dallas, TX  75243-9384
Telephone 214.907.6500
1.800.352.0611

Re:    Claimant        : Janette Markes-Head
       SS #
       Employer        : Northern Telecom
       Policy #        : 2059005
       Connecticut General Life Insurance Company

Dear Mrs. Markes-Head

This letter is in reference to your above-mentioned Long Term Disability claim.

With your approval, we have retained the services of an attorney who, at our expense will represent you in your appeal for Social Security Disability Benefits.  The attorney is:

            Stanley Denman, Attorney at Law
            7502 Greenville Avenue
            Suite 460, LB    301
            Dallas, TX  75231-3828

            (214) 750-1133

The attorney will call you to arrange for an initial consultation.  _If you do not hear from the attorney within 2 weeks_ from the date of this letter, please give the attorney a call.  Also, if you are notified of your actual hearing date before contact with the attorney, please advise me immediately.  (Please disregard if you have already notified us of the hearing date.)

Please feel free to contact me should there be any questions.

Sincerely,

_Robert Willis_

Robert Willis
Social Security Specialist
1-800-352-0611, Ext. 126
Dallas Claim Services

RW/dhg

cc:    Stanley Denman, Attorney at Law
       Northern Telecom
       File
       (Janette M Head) "Objection to Nortel Motion to Terminate LTD Plan & Employees"

Exhibit M  Page 1 of 5

Y:\USERDATA\RW\HEAD.2LT

Life Insurance Company of North America
Connecticut General Life Insurance Company
Insurance Company of North America
INA Life Insurance Company of New York
Subsidiaries of CIGNA Corporation



## MEMORANDUM

February 3, 1994

TO:         Long Term Disability Participants

FROM:       Bobbie Hall

CC:         Eddie Vincent

SUBJECT:    Revised W2   Forms

You recently received your W2 form from Northern Telecom for your
Long Term Disability leave.   We learned yesterday that they are
incorrect.   We are working very closely with Cigna to get the correct
information to payroll as soon as possible.   Cigna will overnight the
information to payroll today February 3rd, and once payroll receives
the information, they will need 7 days to reissue new W2 forms.   You
should be receiving your revised W2 forms within 2 weeks.

I apologize for any inconvenience this may have caused you.   If you
have any questions, please call the HR Info Center at 800-676-4636
and ask for me or Robin Newton.


*Bobbie Hall*

Bobbie Hall
Benefits Specialist

(Janette M Head) "Objection to Nortel Motion to Terminate LTD Plan & Employees"

**Connecticut General Life Insurance Company**
a CIGNA company

Medicare Administration
P. O. Box 1465
Nashville, TN 37202

October 21, 1996

**CIGNA**

Tim Meeker
Allsup Inc
300 Allsup Place
Belleville, IL 62223-8626

Dear Tim,

You recently identified Medicare disabled beneficiaries who, on or after August 10, 1993, do not have large group health plan coverage based on their own or a family member's current employment status. You requested that Medicare be the primary payer of health benefits for these disabled beneficiaries for services provided on or after (August 10, 1993 or later date requested by employer). Based on the information you provided, Medicare will be the primary payer for services provided as of that date. However, any party that you may request to bill Medicare for primary payment should understand that the time period for an authorized party to bill Medicare for services provided prior to October 1, 1994 has expired and that Medicare will not honor initial claims for such services. You should also be aware that there will be circumstances where Medicare will not pay a timely filed claim nor reopen a claim previously paid as a secondary payer by Medicare because of agreements reached with certain insurers and third party administrators (TPAs). If you request a provider, supplier, or beneficiary to bill Medicare for services for which your group health plan had previously paid primary, you must advise that entity of the insurer or TPA which had previously paid primary.

We have enclosed a list of the names of those individuals for whom Medicare will be the primary payer of benefits. Our decision pertains only to the beneficiaries whose names appear on the enclosed list. It is important that you notify each Medicare beneficiary in writing of the date Medicare will become the primary payer and when the LGHP will begin to pay secondary to Medicare. If the beneficiary is not enrolled in Medicare Part B and wishes to do so, advise the beneficiary to contact his/her local Social Security Administration (SSA) district office as soon as possible. You must provide each affected beneficiary with a copy of this cover letter. Do not include the attached list of beneficiary names and HIC numbers. Inclusion of the list in a letter to a beneficiary would be a violation of Federal Law.

The beneficiary must take both your notice and this letter (without enclosure) to his/her local SSA district office if the beneficiary wishes to enroll in Medicare Part B so that SSA knows that the beneficiary is entitled to a special enrollment period. The beneficiary will not be able to enroll in Medicare during the special enrollment period related to this change in the law without this documentation.

Exhibit M  Page 3 of 5

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

If you have any other questions, please contact <u>Brenda Bryson</u> in our MSP unit for assistance at <u>615-782-4500 ext 26502.</u>

Sincerely,

Brenda Bryson

Brenda Bryson
MSP Department

Enclosure

(Janette M Head) "Objection to Nortel Motion to Terminate LTD Plan & Employees"

Allsup Inc.

July 28, 1998

JANETTE HEAD

DALLAS TX  75248

Dear Ms. Head:

Northern Telecom has requested Allsup Inc. to review your recent medical claims to identify appropriate use of Medicare and your group health insurance coverage(s). Through this analysis, it is our understanding Medicare should have been the primary payer of one or more of these claims. Confirmation has been received from Medicare, and your file has now been properly updated to show Medicare as your primary payer.

Effective immediately, please advise all providers of medical services to begin submitting medical claims as follows:

- First, to Medicare for primary payment; and

- Second, to Northern Telecom's medical plan for secondary payment.

This will ensure that proper claims filing procedures will be followed by your health care providers.

We are in the process of re-submitting the claims Northern Telecom's medical plan paid as primary on your behalf to Medicare for reprocessing. This will not result in additional out-of-pocket expenses for you. You may receive explanation of benefits statements or checks. If you receive a check from Medicare or a provider, please call us immediately so we can discuss the appropriate steps that should be taken.

If you have any questions, please contact Allsup Inc.'s Benefits Information Center at 1-800-883-6650.

Sincerely,

ALLSUP INC.
BENEFITS INFORMATION CENTER

Exhibit M  Page 5 of 5
(Janette M Head) "Objection to Nortel Motion to Terminate LTD Plan & Employees"

# **Exhibit N**

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

## EXHIBIT N
## INDEX

N) Order Granting Objection to Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long-Term Disability Plans and the Employment of the LTD Employees.

[Janette M Head] "Objection to Nortel Motion to Terminate LTD Plan & Employees"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
|  | RE:          D.I. # 8067 |

### ORDER GRANTING OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

Upon consideration of the Objection to entry of an order authorizing the Debtors to

terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees

(the "Objection") and any responses thereto; and it appearing that sufficient notice of the

Objection has been given; and in good cause having been shown, it is hereby

ORDERED that the Objection is granted.

Dated:_____, 2013
       Wilmington, Delaware

_____
HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[1]  The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.