IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Nortel Networks Inc., *et al.*,[1] | ) Case No. 09-10138 (KG) |
| | ) |
| Debtors. | ) Jointly Administrated |
| | ) |
| | ) Objection Deadline: Oct. 22, 2012 at 10 a.m. |
| | ) Hearing Date:      Feb. 12, 2013 at 10 a.m. |
| | ) RE:                D.I. # 8067 |

## CARLSEN'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

Roger G Carlsen (the LTD Employee) of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this Objection to Debtors' Motion for entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees. In support of this Objection, Roger G Carlsen respectfully represents as follows:

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## INTRODUCTION

1. The Nortel bankruptcy has been a very de-humanizing journey. This document is written to be a chronological representation of my "Nortel experience" and how the journey has impacted my life. As Nortel prepared for and entered Bankruptcy, I hoped to be treated with respect and appreciation. Nortel's current value exists first and foremost because of employee creativity, sacrifices, and countless man years of hard work.

2. My benefits were provided to *"protect you from medical and financial catastrophe...to help in times of personal or family crisis"*. The content and duration of my LTD benefits was touted, explained, and restated to me by Nortel year after year, on innumerable occasions, via live presentations, web pages, and printed documentation.

- **Duration of Benefits** - LTD benefits are payable as long as clinical evidence supports total disability up to age 65 or for the Maximum Benefit Period if you are age 60 or over.

3. The duration of my benefits was also "verified" and clearly stated by the Prudential Insurance Company three times. First verbally on September 25, 2009, and two other times years apart, by letter. *"Your benefits will continue through XXX XX, 2020, provided you remain totally disabled as defined by the Policy, and continue to meet all other contractual requirements"*. I have met my "other contractual requirements" as attested by the voluminous file that has been created by Prudential on my behalf.

4. Our LTD income and benefits give us a small measure of dignity and provide us with necessary resources to deal with our disabilities and the resultant physical, emotional, and financial crisis they have caused. The Debtors, in a naked attempt to enrich themselves at our expense, hope to terminate all claimants and strip away our benefits, regardless of dire individual economic and health consequences. I am asking for just and equitable compensation for our benefits. If ever there were a case for "equity and good conscience restitution", this should be it.

## BACKGROUND

a. **JOINING NORTEL VIA ACQUISITION**

3. In 1996 I began working for Rapid City, a small startup that developed a new industry class of routers that were over 1000 times faster than most existing routers. The Gigabit Switch Routers were a game changer in the quickly growing world of internet connectivity.

4. On June 1997 Rapid City was acquired by Bay Networks.

5. On June 1998 Nortel acquired Bay Networks; I was assimilated into Nortel.

b. **NORTEL ACQUIRES COMPANY AFTER COMPANY**

6. The 1998 Bay Networks acquisition was by far the largest Nortel had ever attempted, and in such a competitive environment, there was much to be gained in retaining the newly acquired employees. Nortel presented extensive presentations to the thousands of Bay Network employees, and touted the quantity and quality of the Nortel benefits. The benefits were presented as "world class" and "exceeding industry standards" and "second to none". Nortel sold me on the breadth and comprehensive nature of their benefits. Nortel's *New Benefits for the 1990s*, stated it well, the benefits were to: **"protect you from medical and financial catastrophe...to help in times of personal or family crisis"** (see D-1).

7. Perhaps during the presentation, one slide was skipped. The slide that said something like: After accepting your claim and demonstrating its validity by honoring it for years, sometime prior to age 65, Nortel will attempt to terminate your benefits and pay you nothing... this will not be done as an unfortunate necessity to rebuild the company, but as an attempt to enrich certain Debtors. At the benefit sales job, such a slide would have evoked an interesting discussion.

8. Nortel has not supplied any 1998 employee benefits documents or SPDs (see E)

9. My Discovery request for any and all Bay Networks documentation is under dispute.

10. From 1998 to 2002, Nortel experiences unprecedented growth, and using stock swaps, acquires company after company: Broadband networks, Aptis, Kanata, Bay Networks, Qtera, Clarify,...Alteon (see F).

c. **FIDUCIARY RESPONSIBILITIES, SPDs AND PERCEPTIONS**

11. In 1998 in an effort to change the perception of Nortel being an old "telephone" company," Nortel changed their name from Northern Telecom to Nortel Networks.

12. During this time of historic pressure to hire/acquire/retain employees, I question whether Nortel also tried to manipulate perceptions regarding their benefit plans. E.g. in 1996, 1999, and 2000, the historically used term "self-funded" is removed from all employee benefit documents

13. In 2002, neither terms "self-funded or "self-insured" appears in SPD documents (see X).

14. In 2002, Nortel removes all definitions of ERISA and ERISA rights from all SPDs (see X ).

15. The term "self funded" returns in the 2002 Administrative Information document. ERISA, and ERISA rights are included in this separate document.

d. **NORTEL CONSISTETLY "LOCKS IN" EXISTING CLAIM BENEFITS**

16. By the year 2000, Nortel grows to more than 90,000 employees world wide. By the year 2002, 60,000 employees are laid off (see F and G).

17. Through all the ups and downs, Nortel was totally consistent with its policy towards changing benefits. Major LTD benefit changes were announced in 1994, 1999, 2006, and 2010. Each time a benefit such as Cost of Living Adjustment (see X page 21 COLA), or a salary % (see Y 66 %), or insurance type changed, the changes were applied to future claims only. Also, all pre-existing claims were grandfathered as per the original date of the claim.

18. Even the November 9, 2010 resolution to "freeze" the existing plan and adopt a new "fully-insured" plan with Met Life Insurance Company followed this consistent pattern (see U).

19. Over a period of nearly 2 decades, Nortel has time after time reinforced this pattern of behavior. Nortel consistently honored all existing claims at the benefit level appropriate to the original date of the claim. Therefore, the Debtors' proposed plan to terminate ongoing benefits and not honor existing claims contradicts this long established pattern of behavior.

e. **CREATING VALUE FOR THE ENTERPRISE DIVISION OF NORTEL**

20. For more than a decade, I gave my time, experience, knowledge, and total dedication to the Enterprise Division of Nortel. As a Senior Principle HW Engineer and System Architect, I was responsible for the hardware system development of a number of product lines. First the re-branding of the Rapid City/Bay Networks Accelar Switch Routers. Second the ERS 8600/ERS 8800 core routing switch. Third, the ERS 8300 edge router. Fourth, the VSP 9000, an ultra-reliable Terabit Routing Switch (J). These became core products of the Enterprise Division, were installed world wide, are currently found in innumerable critical installations, created billions in sales for Nortel, and continue to be sold today by Avaya.

f. **PRUDENTIAL INSURANCE RESPONSIBLE FOR "CRISIS" BENEFITS**

21. On Nov 22, 2004 I applied to Prudential Insurance Company of America in order to increase my group life insurance policy. Prudential approved.

22. On May 9, 2005 Mark Green from HR provided my manager the URL for the U.S. – LEAVES OF ABSENCE – MEDICAL LEAVE OF ABSENCE PROCESS just prior to my back operation. In this procedural document, Prudential is referred to 27 times (see K). Over the years, I consistently relied of the veracity of Nortel's benefit information, and all information pointed to Prudential Insurance providing Nortel's "family crisis" coverage. E.g. As my physics teacher used to say, "it is intuitively obvious to the most casual observer" that Prudential was Nortel's company

of choice, and "issued" insurance policies to Nortel employees. As asserted on the 2006 FLEX Benefits web page 2 of 2 (see L bottom): "The Basic Term Life, Optional Term Life, Dependant Term Life, Accidental Death and Dismemberment, Short-Term Disability and Long-Term Disability coverages are issued by The Prudential Insurance Company of America...."

23. It was true that four of these benefits were issued by The Prudential Insurance Company of America. The STD and LTD were not "issued" by Prudential, but were "managed" by Prudential. Taking the Nortel web page at face value I had no reason to question my "safety net".

24. As per the *Medical leave of Absence Process* document (see K), Prudential handled everything; the endless correspondence and interfaces with doctors, SS, "paying" for Alsup, SS help (see Q), return of overpayments (see R), W-4s, W-2s (Prudential is listed as employer!) (see P). All correspondence letters carried the banner name of Prudential Insurance Company of America (see A,N,R).

25. With an interesting twist of fate, the paragraph just prior to paragraph quoted above, was titled **Disclaimer** (see L) The disclaimer reads: "If there are any discrepancies between the information in this FLEX 2006 Benefits Site..". When do "discrepancies" become misinformation?

g. **FORCED INTO LTD ON AUGUST 16, 2007**

26. On July 14, 2005, having became totally crippled from progressive Degenerative Disc Disease (DDD), I underwent surgery in Germany to insert 2 artificial discs (see M). The surgery was only partially successful. In 2006, to go along with the DDD and the Failed Back Syndrome, I developed CRPS, an incurable neurological autoimmune disease, which I am can be more painful than dying from cancer...except you do not die (see O).

27. In August 16, 2007, with the combination of DDD, Failed Back Syndrome, and CRPS, I was forced onto LTD and my wonderfully active, creative, and intellectually stimulating life was shattered into tiny pieces (see N).

28. As I sank further into the depths of disability, my contact with Nortel was limited to the yearly Flex Benefits enrollment. I could not bear to follow the news concerning the unfortunate decline of Nortel.

### h. **NORTEL SEEKS BANKRUPCY PROTECTION**

29. On January 14, 2009 Nortel Networks Inc. filled voluntary petitions for relief under the Chapter 11.

30. In 2009 Nortel publishes *Nortel Networks Welfare Benefits Plan* (see T). This is the first time I can find the term "fully-insured" ever used in a Debtor provided document. Nortel Finally, provided a "plain language", all in one place, description of what the Nortel Welfare benefit plan is. A bit late for the tens of thousands of employees who had gone before.

31. On Sept 14, 2009 Avaya was announced as the successful bidder to the buy the Enterprise Division of Nortel (sees), of which I had been a member, for 900 million dollars.

32. Sept 24, 2009 I heard that the final filing date for Nortel POCs was Sept. 30 2009.

33. Sept 25, 2009 call to Prudential Insurance Company (see B). The Prudential Insurance disability representative assured me that as long as I remained disabled, I had a valid claim up to age 65. As the abbreviated Prudential call log states:

Rec'd by: Rafiah Muhammad

ee called to find out if Nortel going out of business will affect clm

adv ee no

With relief, I believed the Prudential Insurance representative that my claim was secure.

34. On Dec 21, 2009 Avaya completes purchase of the Nortel Enterprise Division for 900 million dollars plus 15 million for employee retention (see S).

i. **DEBTORS' INITIAL TERMINATION MOTION**

35. Nortel historically have provided various welfare benefits to their retirees. They also have provided certain benefits to the employees that have claims pursuant to the Long-Term Care Plan.

36. On June 21, 2010, the Debtors filed a motion to terminate, among other things, the Retiree Welfare Plans effective August 31, 2010.

37. On June 21, 2010, the Debtors filed a motion to terminate, the LTD Plan effective as of December 31, 2010.

38. Dated June 28, 2010, Nortel sent out the "Employment termination information package" Informing employees of The Debtors intent to terminate the existing LTD plan, and all benefits.

39. Having up to this time: a) assumed Prudential Insurance held our policy, and b) and believed the Prudential representative on Sept. 25, 2009 that claim was accepted and valid through the year 2020; my family and I were stunned. The Debtors viewpoint was clear; we had become annoying red ink on the company ledger.

40. On July 15, 2010, the Debtors withdrew the Initial Termination Motion (V).

41. . In desperation on Sept 30 2010, (claim number 7444), I submitted my first POC. In hind, site, you could ask, how could I not know the LTD program was not "fully-insured" ?

42. My confusion, and many other employees' confusion over who actually "insured" our claims, or what situations could affect our claims, is a sad testament to the apparent success of perception over reality.

43. I suppose you could ask with even greater incredulity, how could the Prudential representative flat out state that my claim was safe, that he beloved it could not be affected by a

Nortel bankruptcy (see B)? With a final touch of irony, on November 9, 2010, Julie Graffam requested the Board of Directors to adopt a new "fully-insured" plan for 2011 (see U).

> To: Board of Directors of Nortel Networks, Inc.
> From: Julie Graffam
>
> Re: Approval for Amendments to Nortel Networks Long Term Disability Plan
> Your approval is requested on resolutions for adoption of the following actions regarding the US Nortel Networks Long Term Disability Plan effective December 31, 2010 and a new fully-insured long-term disability plan effective January 1, 2011:

### j. DEBTORS' RENEWED TERMINATION MOTION

44. On July 30, 2012, the Debtors filed a motion, among other things, to terminate all retiree welfare benefits.

45. On July 30, 2012 the Debtors filed a motion, among other things, to terminate all LTD employees, and benefits under the LTD Plan.

46. In a just world, I would hope a company with means and no expectation of emerging from bankruptcy would willingly restructure in order to honor existing employee claims. It is inconceivable to me that a company, under the law, could be allowed to terminate ongoing valid claims with impunity. I hope I am correct. However, if it is so ruled, the result would be crystal clear. The value of each individual's valid LTD claim would be "taken" directly from the pockets of the LTD employees and transferred into the bank accounts of the Debtors. If that were to happen, the Debtors should be held liable for restitution under a ruling of 'unjust enrichment'.

## **RELIEF REQUESTED**

47.  I request that the Debtors motion to terminate the LTD Employees and the LTD Plans as presented be denied.

48.  I request the Debtors compensate me in full for my LTD benefits to age 65 that Nortel became liable for once I became totally disabled; my Total Claim is $754,460.65.

49.  If it is ruled that there was no binding contract, I request the Debtors to be held liable for restitution for my LTD Benefits to age 65 based on a ruling of "unjust enrichment", my Restitution Total by definition is the same as my Total Claim.

## BASIS FOR RELIEF

50. I respectfully reserve the right to amend this Objection. My personal Documents were put on DVR at last moment). My Bay Networks presentation and documents were objected to by Debtors, and are presently in dispute. 1998 is the year I became a Nortel employee. I can find no 1998 benefit documents or SPDs on the DVR. The Debtors have not supplied my discovery request on this either.

51. As can be seen in my Rapid City offer letter (see C), and then again in the Bay Networks U.S. Benefits Program (see D), superior benefits were important company differentiators, and often the acquired company made demands to the buyer, to at least equal current benefits.

52. I have felt the humanity has been removed from the process. I have felt that there has been an effort to characterize me as opportunistic fake, an annoying pimple to be popped, trying to claim disability to gain a free ride at the expense of Nortel, an unfair bill to be paid, a hole sinking the monetary boat, or as monetary parisites living on the decaying corpse of Nortel.

53. From LTD SPD 2005 "The people who supervise the operation of your plans, called "fiduciaries," have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA."

54. October 2008 Dept of Labor document (see H), *Understanding Your Fiduciary Responsibilities Under a Group Health Plan*, the number one responsibility under ERISA :

   a) Acting solely in the interest of the plan participants and their beneficiaries and with the exclusive purpose of providing benefits to them.

    b)    Carrying out their duties prudently.

    c)    Following the plan documents (unless inconsistent with ERISA);

    d)    Holding plan assets (if the plan has any) in trust; and paying only reasonable plan expenses.

## **EXHIBITS**

A – Sept 20, 2012 Prudential Benefit Verification letter.

B – Dec 17, 2008 Prudential Phone log

C – Rapid City Job Offer

D – Bay Networks Benefts

E – Bay Networks Benefts

F – Nortel History

D – Bay Networks Benefts

E – Bay Networks Benefts

F – Nortel History.

D – Bay Networks Benefts

E – Bay Networks Benefts

F – Nortel History

G – Nortel Timeline

H – Fiduciary Responsibilities

I – Job Description

J – My Nortel Designs bought by Avaya

K – Medical LOA process


L – 2006 Flex Benefit page 2 of 2

M – Letter from surgeon

N – Prudential LTD approved

O – CRPS

P – Prudential W-2

Q – Allsup letter

R – Prudential overpayment letter

S – Avaya buys Enterprise Division

T – Nortel Welfare Benefits Plan

U – Letter to Board of Directors "freeze" and "fully-insured"

V – Nortel withdraws motion – Avaya buys Enterprise Division

W – Proof of Claim

X – 2002 COLA info etc.

Y – Flex Benefit 2 of 2

Z – 2007 Nortel STD and LTD Plan

## NOTICE

55 X.   Notice of this Motion has been provided to (a) counsel to the Debtors; (b) counsel to the Creditors' Committee; (c) counsel to the Retirees Committee; (d) the United States Trustee for the District of Delaware; and (e) all parties required to receive service under Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware through the Court's electronic filing system. [Insert defined name of party] respectfully submits that, given the nature of the relief requested, no other notice of the relief requested herein need to be given.

**WHEREFORE**, Roger G Carlsen respectfully requests the entry of an Order, in the form attached:

1. Reject the Debtors Motion to terminate the LTD Plans and LTD Employees as [DI#8067].

2. Compel the Debtors to compensate or pay restitution to Roger G. Carlsen in full for LTD benefits projected to age 65; Total Claim being $754,460.65.

3. Order that there is no interruption in disbursement of LTD benefit (or compensation for same) to Roger G Carlsen.

Dated: October 17, 2012

_____
Roger G Carlsen
390 E Paseo Celestial
Sahuarita, AZ 85629
Telephone: 520-468-8287
Facsimile: N/A
Email: rcarlsen@gmail.com

*Appearing Pro Se*

Case 09-10138-MFW    Doc 8814    Filed 10/24/12    Page 15 of 15

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | ) Case No. 09-10138 (KG) |
| Debtors. | ) Jointly Administrated |
| | ) **Re: Docket No. _____** |

### ORDER GRANTING CARLSEN'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO U.S.C. S 105,363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG=TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

Upon consideration of the Objection to entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees (the "Objection)" and any responses thereto; and it appearing that sufficient notice of the Objection has been given; and in good cause having been shown, it is hereby

ORDERED that the Objection is granted.

Dated: _____, 2012
Wilmington, Delaware

                                              HONORABLE KEVIN GROSS
                                              CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.