## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administrated |

### NOTICE OF APPEARANCE AND REQUEST FOR NOTICES

**PLEASE TAKE NOTICE THAT** Deborah Faircloth, hereby appears in the matter hereby enters [his/her] appearance pursuant to §1109(b) of Title 11 of the United States Code and Rules 2002(g) and Rule 9010(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Deborah Faircloth hereby requests, pursuant to Bankruptcy Rules 2002, 3017 and 9007 and Sections 342 and 1109(b) of the Bankruptcy Code, that copies of all notices and pleadings given or filed in these Cases be given and served upon them at the following:

> Deborah Faircloth
> 115 Winchester Lane
> Rocky Point, NC 28457
> Telephone: 910-675-3549
> Facsimile: N/A
> Email: N/A

---

[1]    The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## JOINT DEFENSE AND COMMON INTEREST AGREEMENT

**WHEREAS,** the undersigned is a Long Term Disability Plan Participant ("LTDPP") of one or more of the debtors in *In re Nortel Networks, Inc.*, *et al.*, No, 09-10138 (KG), pending the United States Bankruptcy Court for the District of Delaware (hereinafter the "Bankruptcy Cases") or are counsel to the Official Committee of Long Term Disability Plan Participants (the "LTD Committee) in the Bankruptcy Cases; and

**WHEREAS,** the undersigned agree and have agreed since that in pursuing their several defenses and/or in protecting their legal rights in the Bankruptcy Cases there are various issues in which they have a common interest; and

**WHEREAS,** the undersigned agreed and continue to agree that a joint effort by the undersigned, the LTD Committee and its counsel to develop work-product regarding issues of common interest will create cost savings, allow a more efficient allocation of resources and promote the just adjudication of this matter; and

**WHEREAS,** the undersigned have jointly pursued and intend jointly to pursue various interests, including the formation of this Agreement and now its embodiment to writing, where those interests are shared in common and wish to make clear that the protections of the work-product doctrine and related privileges are not waived by actions and communications taken in pursuit of such interests;

**NOW THEREFORE,** the undersigned (hereinafter the "Members of the Joint Defense Group" or "Members"), each believing that participation will further the interests of the LTDD PP and LTD Committee and enable the more efficient and cost effective conduct of in the Bankruptcy Cases, knowingly and voluntarily entered into and now embody to writing this Joint

Defense and Common Interest Agreement (hereinafter, "the Agreement"), and thereby agreed and agree as follows:

1.    Members of the Joint Defense Group are entitled voluntarily to pursue, communicate and/or share, to the extent that each Member, sees fit, work-product regarding the issues of common interest that they may identify from time to time.  Subject to Paragraph 5 below, any communication between and/or among members of the joint defense group made in the course of developing attorney work-product; and/or any communication between any member of the group and any consultants retained by the group's members; and/or all information, data, documents, memoranda, reports, legal research, and/or analyses, including without limitation, information containing mental impressions or other work-product, information subject to the attorney-client privilege and any work-product created by such consultants for the benefit of the group (hereinafter, individually and collectively, "communication regarding an issue of common interest"), is each and all are confidential and each is and all are protected from disclosure to any third-party by the attorney work-product doctrine.

2.    An issue of common interest is any matter relevant to defending the interests of LTDPPs or the LTD Committee and/or protecting the legal interests of the Members in the Bankruptcy Cases that Members of the Joint Defense Group agree can and should be investigated, explored, analyzed, researched, discussed and/or otherwise pursued together.

3.    All communications regarding an issue of common interest shall be conducted and protected pursuant to legal principles sometimes referred to as the "joint defense" or "common interest" doctrines.

4.      All Members of the Joint Defense Group, and consultants or advisors for purposes of the Bankruptcy Cases, are not third parties within the meaning of this Agreement, and disclosure by a member to his or her client(s) or such consultants or advisors conforms to this Agreement, and is contemplated by the Members of the Joint Defense Group.  Similarly, the employees, agents, outside contractors, experts and consultants of a Member are not third parties within the meaning of this Agreement (hereinafter referred to as "Authorized Persons"), and disclosure by a Member to those individuals or entities conforms with this Agreement and is contemplated by the Members of the Joint Defense Group.

5.      Nothing in this Agreement shall be construed to prevent any Member from making use of the underlying facts, concepts and ideas discovered and/or developed through the work-product that may be generated through this Agreement, related to the Bankruptcy Cases. It is expressly understood that, absent agreement of all Members, any such use shall not include disclosure in Court filings or otherwise of the following: (a) the actual "communications regarding an issue of common interest" (as this term in defined in Paragraph No. 1 hereof); (b) any written work-product generated by or through such communication(s); (c) the identity of consultants or experts retained through this Agreement; and (d) the proffering or use as a witness of any consultants or experts retained through this Agreement.

6.      The Members of the Joint Defense Group acknowledge that each Member may undertake separate efforts of any kind in the Bankruptcy Cases, independent of the other members.  Any Member undertaking such separate efforts is free to disclose any information obtained pursuant to those efforts to any person or to use the information in any manner which that Member desires, consistent with otherwise applicable legal obligations, without the consent of any other Member of the Joint Defense Group.

7.     If any other person or entity requests or demands, by discovery requests, subpoena, or otherwise, any privileged or work-product materials regarding an issue of common interest from any party or Authorized Person, the party receiving such request or demand will: (i) immediately notify counsel for the other parties to this Agreement; and (ii) assert all available privileges with respect to the requested materials, unless the privileges are waived in writing (and then, only to the extent waived) by the party (or parties) who originally provided the requested materials.  Each party will take all steps necessary to permit the assertion of all applicable privileges with respect to the materials and shall cooperate fully with the other parties in any proceedings relating to the disclosure of any materials.

8.     A Member of the Joint Defense Group will withdraw from the joint defense group if it is determined, by that member or by all other members in a unanimous writing that the interest of that member diverges from the interest of any other member of the joint defense group regarding an issue of common interest.  A Member of the Joint Defense Group may withdraw from the joint defense group for any other reason, at any time, upon giving ten days (10) written notification to all other members of the joint defense group.

9.     Upon withdrawing from the joint defense group, the former Member shall not accept or request communication regarding an issue of common interest from any member of the joint defense group.  Following withdrawal, this Agreement shall continue to protect all communication(s) regarding issues of common interest disclosed by or to the former member prior to that former member's withdrawal.

10.     Should a Member of the Joint Defense Group withdraw from this Agreement for whatever reason, nothing in this Agreement shall prevent the withdrawing party from using any work-product resulting from this Agreement that was created prior to the date of

the member's withdrawal in the same manner that the remaining parties may use that work-product.

11.          Prior to entering into this Agreement, Member had the opportunity to consult with counsel regarding the possible consequences of this Agreement, including that other Members who have benefited from this Agreement may later become witnesses against the other Members or hold a position adverse to the other Members.  As a condition precedent to the receipt of communication(s) regarding an issue of common interest, each Member of the Joint Defense Group agrees that they will not assert any future claim that any attorney who is bound by this Agreement is barred from continuing his or her representation in the Bankruptcy Cases based upon participation of that attorney in communication(s) regarding an issue of common interest.

12.          Each Member waives any claim of conflict of interest which might arise from participation by counsel to the LTD Committee in this Agreement, and any right to seek the disqualification of counsel based upon receipt or making by that counsel of communication(s) regarding an issue of common interest.

13.          Modification of this Agreement shall be made only by an amendment in writing, signed by an authorized representative of each Member of the Joint Defense Group. Other persons whose interests coincide with the interests of the Members of the Joint Defense Group on issues of common interest may become a Member of the Joint Defense Group with the consent of all pre-existing members of the joint defense group by such written amendment that also bears the signature of a representative of such other persons.

.14.        This Agreement and any amendments hereto may be executed in counterparts with the same force and effect as if executed in one complete document by all Members of the Joint Defense Group.

15.        Each signatory to this Agreement represents that he or she is expressly authorized to execute this Agreement on behalf of the Member for which they are executing the Agreement or behalf of the law firm representing the LTD Committee.


For the Committee: _____

For the Long Term Disability Plan Participant: _Deborah B. Faudeth_____